09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-md-02543-JMF Document 1352 Filed 09/25/15 Page 501 of 1249
Complaint - Part 2 of 2    Pg 1 of 743

information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception  either would have paid less for their vehicles or would not have purchased or leased

them at all.  For Plaintiffs who purchased Old GM Defective Ignition Switch Vehicles that were

sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would

not have purchased them but for New GM's violations of the Connecticut UTPA.

1702.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Connecticut UTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the

form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and

practices made in the course of New GM's business.

1703.   New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

1704.   As a direct and proximate result of New GM's violations of the Connecticut

UTPA, Plaintiffs and the Connecticut Class have suffered injury-in-fact and/or actual damage.

1705.   Plaintiffs and the Class are entitled to recover their actual damages, punitive

damages, and attorneys' fees pursuant to CONN. GEN. STAT. § 42-110g.

1706.   New GM acted with a reckless indifference to another's rights or wanton or
intentional violation to another's rights and otherwise engaged in conduct amounting to a
particularly aggravated, deliberate disregard of the rights and safety of others.

## COUNT II

## FRAUDULENT CONCEALMENT

1707.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

1708.   This claim is brought on behalf of Nationwide Class Members who are
Connecticut residents (the "Connecticut Class").

1709.   New GM concealed and suppressed material facts concerning the quality of its
vehicles and the GM brand.

1710.   New GM concealed and suppressed material facts concerning the culture of New
GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety
issues, and a shoddy design process.

1711.   New GM concealed and suppressed material facts concerning the many serious
defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps
to ensure that its employees did not reveal known safety defects to regulators or consumers.

1712.   New GM did so in order to boost confidence in its vehicles and falsely assure
purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was
a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles
are safe and reliable. The false representations were material to consumers, both because they
concerned the quality and safety of the Affected Vehicles and because the representations played
a significant role in the value of the vehicles.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 3 of 743
Case 1:14-md-02543-JMF    Document 1395    Filed 09/25/15    Page 303 of 1249

1713.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Connecticut Class.  New GM also had a duty to disclose

because it made many general affirmative representations about the safety, quality, and lack of

defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete

without the disclosure of the additional facts set forth above regarding its actual safety record,

safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered

to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Connecticut Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

1714.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Connecticut Class.

1715.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Connecticut Class and conceal material

information regarding defects that exist in GM-branded vehicles.

1716.   Plaintiffs and the Connecticut Class were unaware of these omitted material facts

and would not have acted as they did if they had known of the concealed and/or suppressed facts,

in that they would not have purchased cars manufactured by New GM; and/or they would not

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 4 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/05/15   Page 304 of 1249

have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Connecticut Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Connecticut Class.

1717.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Connecticut Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

1718.   The value of all Connecticut Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1719.   Accordingly, New GM is liable to the Connecticut Class for damages in an amount to be proven at trial.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 505 of 1249
Complaint - Part 2 of 2    Pg 5 of 743

1720.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Connecticut Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

1721.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1722.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Connecticut residents **and** who owned their Old GM Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Connecticut Pre-Sale ISD Subclass").

1723.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

1724.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

010440-11  789697 V1

1725.   The Connecticut Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

1726.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

1727.   Because New GM concealed its knowledge of the ignition switch defect, the Connecticut Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

1728.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

1729.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

1730.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

- 474 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-md-02543-JMF Document 1352 Filed 09/25/15 Page 8 of 1249
Complaint - Part 2 of 2 Pg 7 of 743

1731.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

1732.   As of September 30, 2014,  the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

1733.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

1734.   But for New GM's fraudulent concealment of the ignition switch defects, the Connecticut Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

1735.   Had the Connecticut Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

1736.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 8 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 508 of 1249

1737.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

1738.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Connecticut Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Connecticut Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

1739.   Plaintiffs and the Connecticut Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Connecticut Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Connecticut Pre-Sale ISD Subclass.

1740.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Connecticut Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-3MF    Document 135    Filed 09/25/15    Page 9 of 1249
Complaint - Part 2 of 2    Pg 9 of 743

1741.   Accordingly, New GM is liable to the Connecticut Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

1742.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Connecticut Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV
## THIRD-PARTY BENEFICIARY CLAIM

1743.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1744.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Connecticut residents (the "Connecticut Pre-Sale ISD Subclass").

1745.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

1746.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

1747.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

- 477 -

to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

1748.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

1749.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

1750.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale

- 478 -

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

1751.   New GM breached its covenant to comply with the TREAD Act with respect to the Old GM Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

1752.   Plaintiffs and the Connecticut Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Old GM Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

1753.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1754.   This claim is brought on behalf of members of the Connecticut Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Connecticut Unjust Enrichment Class").

1755.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

1756.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 12 of 743
Case 1:14-mc-02543-JMF    Document 1135    Filed 09/25/15    Page 812 of 1249

1757.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

1758.   Thus, all Connecticut Unjust Enrichment Class Members conferred a benefit on New GM.

1759.   It is inequitable for New GM to retain these benefits.

1760.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

1761.   New GM knowingly accepted the benefits of its unjust conduct.

1762.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## DELAWARE

## COUNT I

## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT

### (6 DEL. CODE § 2513, *et seq.*)

1763.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1764.   This claim is brought only on behalf of Nationwide Class Members who are Delaware residents (the "Delaware Class").

1765.   New GM is a "person" within the meaning of 6 DEL. CODE § 2511(7).

1766.   The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise,

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/25/15 Page 13 of 743
Complaint - Part 2 of 2 Pg 13 of 743

misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby."  6 DEL. CODE § 2513(a).

1767.   New GM participated in deceptive trade practices that violated the Delaware CFA as described herein.  In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1768.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

1769.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-3MF    Document 135    Filed 09/25/15    Page 14 of 1243
Complaint - Part 2 of 2    Pg 14 of 743

1770.  According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

1771.  By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Delaware CFA.

1772.  In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

1773.  New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

1774.  New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Delaware Class.

1775.  New GM knew or should have known that its conduct violated the Delaware CFA.

1776.  As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

1777. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

    a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1778. Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished. In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

1779. New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Delaware Class. A vehicle

made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedying them.

1780. Plaintiffs and the Delaware Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

information. Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 16 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/05/15   Page 16 of 143

them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were

sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would

not have purchased them but for New GM's violations of the Delaware CFA.

1781.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Delaware CFA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the

form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and

practices made in the course of New GM's business.

1782.  New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

1783.  As a direct and proximate result of New GM's violations of the Delaware CFA,

Plaintiffs and the Delaware Class have suffered injury-in-fact and/or actual damage.

1784.  Plaintiffs seek damages under the Delaware CFA for injury resulting from the

direct and natural consequences of New GM's unlawful conduct.  *See*, *e.g.*, *Stephenson v.

Capano Dev.*, *Inc.*, 462 A.2d 1069, 1077 (Del. 1983).  Plaintiffs also seek an order enjoining

New GM's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and

any other just and proper relief available under the Delaware CFA.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 17 of 1249
Complaint - Part 2 of 2    Pg 17 of 743

1785.   New GM engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

## COUNT II

## FRAUD BY CONCEALMENT

1786.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1787.   This claim is brought on behalf of Nationwide Class Members who are Delaware residents (the "Delaware Class").

1788.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

1789.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

1790.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

1791.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

1792.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as

- 485 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/25/15    Page 318 of 1249
Complaint - Part 2 of 2    Pg 18 of 743

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Delaware Class.  New GM also had a duty to disclose because

it made many general affirmative representations about the safety, quality, and lack of defects in

its vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Delaware Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

1793.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Delaware Class.

1794.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Delaware Class and conceal material

information regarding defects that exist in GM-branded vehicles.

1795.   Plaintiffs and the Delaware Class were unaware of these omitted material facts

and would not have acted as they did if they had known of the concealed and/or suppressed facts,

in that they would not have purchased cars manufactured by New GM; and/or they would not

have purchased cars manufactured by Old GM in the time after New GM had come into

existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 819 of 1249
Complaint - Part 2 of 2    Pg 19 of 743

vehicles; and/or would not have continued to drive their vehicles or would have taken other

affirmative steps.  Plaintiffs' and the Delaware Class's actions were justified.  New GM was in

exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or

the Delaware Class.

1796.   Because of the concealment and/or suppression of the facts, Plaintiffs and the

Delaware Class sustained damage because they own vehicles that diminished in value as a result

of New GM's concealment of, and failure to timely disclose, the serious defects in millions of

GM-branded vehicles and the serious safety and quality issues engendered by New GM's

corporate policies.  Had they been aware of the many defects that existed in GM-branded

vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or

Certified Previously Owned vehicles after New GM came into existence either would have paid

less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs

regardless of time of purchase or lease would have maintained their vehicles.

1797.   The value of all Delaware Class Members' vehicles has diminished as a result of

New GM's fraudulent concealment of the many defects and its systemic safety issues which have

greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of

the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

vehicles.

1798.   Accordingly, New GM is liable to the Delaware Class for damages in an amount

to be proven at trial.

1799.   New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the Delaware Class's rights and well-being to

enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount

sufficient to deter such conduct in the future, which amount is to be determined according to

proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (6 DEL. CODE § 2-314)

1800.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

1801.   This claim is brought only on behalf of Delaware residents who are members of

the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Delaware Post-Sale ISD

Subclass").

1802.   New GM was a merchant with respect to motor vehicles within the meaning of 6

DEL. CODE § 2-104(1).

1803.   Under 6 DEL. CODE § 2-314, a warranty that the Defective Ignition Switch

Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs

purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11,

2009.

1804.   These vehicles, when sold and at all times thereafter, were not merchantable and

are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition

Switch Vehicles are inherently defective in that there are defects in the ignition switch systems

that permit sudden unintended shutdown to occur, with the attendant shut down of power

steering and power brakes and the nondeployment of airbags in the event of a collision.

1805.   New GM was provided notice of these issues by numerous complaints filed

against it, internal investigations, and by numerous individual letters and communications sent

010440-11  789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 21 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/05/15    Page 521 of 1249

by Plaintiffs and the Delaware Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

1806.   As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Delaware Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**

**FRAUD BY CONCEALMENT OF THE RIGHT
TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

1807.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1808.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Delaware residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Delaware Pre-Sale ISD Subclass").

1809.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

1810.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 22 of 743
Case 1:14-md-02543-JMF    Document 1135    Filed 07/09/15    Page 22 of 1249

1811.   The Delaware Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

1812.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

1813.   Because New GM concealed its knowledge of the ignition switch defect, the Delaware Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

1814.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

1815.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

1816.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/25/15 Page 23 of 1249
Complaint - Part 2 of 2 Pg 23 of 743

1817.  As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

1818.  As of September 30, 2014,  the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

1819.  The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

1820.  But for New GM's fraudulent concealment of the ignition switch defects, the Delaware Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

1821.  Had the Delaware Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

1822.  Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2   Pg 24 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 24 of 243

1823. New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

1824. New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Delaware Pre-Sale ISD Subclass. These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Delaware Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

1825. Plaintiffs and the Delaware Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Delaware Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Delaware Pre-Sale ISD Subclass.

1826. Because of the concealment and/or suppression of the facts, Plaintiffs and the Delaware Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

010440-11 789697 V1

1827.   Accordingly, New GM is liable to the Delaware Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

1828.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Delaware Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V

## THIRD-PARTY BENEFICIARY CLAIM

1829.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1830.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Delaware residents (the "Delaware Pre-Sale ISD Subclass").

1831.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

1832.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

010440-11  789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 26 of 1249
Complaint - Part 2 of 2    Pg 26 of 743

1833.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

1834.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

1835.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

1836.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/05/15    Page 8 of 124
Complaint - Part 2 of 2    Pg 27 of 743

can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

1837.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

1838.   Plaintiffs and the Delaware Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Old GM Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

1839.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1840.   This claim is brought on behalf of members of the Delaware Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Delaware Unjust Enrichment Class").

1841.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

1842.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 07/09/15   Page 28 of 149
Complaint - Part 2 of 2   Pg 28 of 743

systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

1843.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

1844.   Thus, all Delaware Unjust Enrichment Class Members conferred a benefit on New GM.

1845.   It is inequitable for New GM to retain these benefits.

1846.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

1847.   New GM knowingly accepted the benefits of its unjust conduct.

1848.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## DISTRICT OF COLUMBIA

### COUNT I

### VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT

### (D.C. CODE § 28-3901, *et seq*.)

1849.   Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

1850.   This claim is brought only on behalf of Nationwide Class Members who are District of Columbia residents (the "District of Columbia Class").

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-3MF Document 135 Filed 09/25/15 Page 29 of 143
Complaint - Part 2 of 2    Pg 29 of 743

1851.   New GM is a "person" under the Consumer Protection Procedures Act ("District of Columbia CPPA"), D.C. CODE § 28-3901(a)(1).

1852.   Class Members are "consumers," as defined by D.C. CODE § 28-3901(1)(2), who purchased or leased one or more Affected Vehicles.

1853.   New GM's actions as set forth herein constitute "trade practices" under D.C. CODE § 28-3901.

1854.   New GM participated in unfair or deceptive acts or practices that violated the District of Columbia CPPA.  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in unfair or deceptive practices prohibited by the District of Columbia CPPA, D.C. CODE § 28-3901, *et seq.*, including:  (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Affected Vehicles with the intent not to sell them as advertised; (4) representing that the subject of a transaction involving the Affected Vehicles has been supplied in accordance with a previous representation when it has not; (5) misrepresenting as to a material fact which has a tendency to mislead; and (6) failing to state a material fact when such failure tends to mislead.

1855.   In the course of its business in trade or commerce, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that

- 497 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-3MF   Document 1135   Filed 09/25/15   Page 30 of 1249
Complaint - Part 2 of 2    Pg 30 of 743

others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1856.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

1857.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

1858.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

1859.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the District of Columbia CPPA.

1860.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed

- 498 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-3MF Document 135 Filed 09/25/15 Page 31 of 743
Complaint - Part 2 of 2    Pg 31 of 743

above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

1861.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

1862.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the District of Columbia Class.

1863.   New GM knew or should have known that its conduct violated the District of Columbia CPPA.

1864.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

1865.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

  a.  Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

  b.  Intentionally concealed the foregoing from Plaintiffs; and/or

  c.  Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch  and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Complaint - Part 2 of 2 Pg 32 of 743
Case 1:14-mc-02543-JMF Document 135 Filed 09/05/15 Page 32 of 1249

1866.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

1867.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the District of Columbia Class. A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

1868.   Plaintiffs and the District of Columbia Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the District of Columbia CPPA.

1869.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle

- 500 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-MF    Document 135    Filed 09/25/15    Page 33 of 1249
Complaint - Part 2 of 2    Pg 33 of 743

manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the District of Columbia CPPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

1870.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

1871.   As a direct and proximate result of New GM's violations of the District of Columbia CPPA, Plaintiffs and the District of Columbia Class have suffered injury-in-fact and/or actual damage.

1872.   Plaintiff and the District of Columbia Class are entitled to recover treble damages or $1,500, whichever is greater, punitive damages, reasonable attorneys' fees, and any other relief the Court deems proper, under D.C. CODE § 28-3901.

1873.   Plaintiffs seek punitive damages against New GM because New GM's conduct evidences malice and/or egregious conduct.  New GM maliciously and egregiously misrepresented the safety and reliability of the Affected Vehicles, deceived Class Members on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting deadly flaws in vehicles and repeatedly promised Class Members that all vehicles were safe.  New GM's unlawful conduct constitutes malice warranting punitive damages.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 33 of 1249
Complaint - Part 2 of 2    Pg 34 of 743

## COUNT II

## FRAUD BY CONCEALMENT

1874.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1875.   This claim is brought on behalf of Nationwide Class Members who are District of Columbia residents (the "District of Columbia Class").

1876.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

1877.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

1878.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

1879.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

1880.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably

- 502 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 35 of 1249
Complaint - Part 2 of 2   Pg 35 of 743

discoverable by Plaintiffs and the District of Columbia Class. New GM also had a duty to

disclose because it made many general affirmative representations about the safety, quality, and

lack of defects in its vehicles, as set forth above, which were misleading, deceptive and

incomplete without the disclosure of the additional facts set forth above regarding its actual

safety record, safety philosophy, and practices and the actual safety defects in its vehicles.

Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the

partial truth, but the entire truth. These omitted and concealed facts were material because they

directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the

District of Columbia Class. Whether a manufacturer's products are safe and reliable, and

whether that manufacturer stands behind its products, are material concerns to a consumer.

    1881.  New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the District of Columbia Class.

    1882.  On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the District of Columbia Class and conceal

material information regarding defects that exist in GM-branded vehicles.

    1883.  Plaintiffs and the District of Columbia Class were unaware of these omitted

material facts and would not have acted as they did if they had known of the concealed and/or

suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or

they would not have purchased cars manufactured by Old GM in the time after New GM had

come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts

about the vehicles; and/or would not have continued to drive their vehicles or would have taken

other affirmative steps. Plaintiffs' and the District of Columbia Class's actions were justified.

Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 36 of 1249

New GM was in exclusive control of the material facts and such facts were not known to the

public, Plaintiffs, or the District of Columbia Class.

1884.   Because of the concealment and/or suppression of the facts, Plaintiffs and the

District of Columbia Class sustained damage because they own vehicles that diminished in value

as a result of New GM's concealment of, and failure to timely disclose, the serious defects in

millions of GM-branded vehicles and the serious safety and quality issues engendered by New

GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded

vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or

Certified Previously Owned vehicles after New GM came into existence either would have paid

less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs

regardless of time of purchase or lease would have maintained their vehicles.

1885.   The value of all District of Columbia Class Members' vehicles has diminished as

a result of New GM's fraudulent concealment of the many defects and its systemic safety issues

which have greatly tarnished the GM brand and made any reasonable consumer reluctant to

purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market

value for the vehicles.

1886.   Accordingly, New GM is liable to the District of Columbia Class for damages in

an amount to be proven at trial.

1887.   New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the District of Columbia Class's rights and

well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages

in an amount sufficient to deter such conduct in the future, which amount is to be determined

according to proof.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 37 of 743
Complaint - Part 2 of 2    Pg 37 of 743

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## (D.C. CODE § 28:2-314)

1888.  Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

1889.  This claim is brought only on behalf of District of Columbia residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "D.C. Post-Sale ISD Subclass").

1890.  New GM was a merchant with respect to motor vehicles within the meaning of D.C. CODE § 28:2-104(1).

1891.  Under D.C. CODE § 28:2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

1892.  These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

1893.  New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the D.C. Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recalls and the allegations of vehicle defects became public.

- 505 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/05/15 Page 538 of 1249
Complaint - Part 2 of 2 Pg 38 of 743

1894.    As a direct and proximate result of New GM's breach of the implied warranty of

merchantability, Plaintiffs and the D.C. Post-Sale ISD Subclass members have been damaged in

an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

1895.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

1896.    This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass

members who are District of Columbia residents *and* who owned their Pre-Sale Defective

Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November

30, 2009 (for the purposes of this claim only, the "District of Columbia Pre-Sale ISD Subclass").

1897.    New GM was aware of the ignition switch defects in millions of vehicles sold by

Old GM from the moment it came into existence upon entry of the Sale Order And Sale

Agreement by which New GM acquired substantially all the assets of Old GM.

1898.    As the bankruptcy court found, "As of June 2009, when the entry of the Sale

Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required

… to send out mailed recall notices to owners of affected Old GM vehicles." New GM

necessarily had this same knowledge from day one of its existence, as the bankruptcy court

found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition

Switch Defect prior to the Sale Motion."

1899.    The District of Columbia Pre-Sale ISD Subclass did not receive notice of the

ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the

<div align="center">- 506 -</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 39 of 743
Case 1:14-mc-02543-3MF   Document 135   Filed 07/15/15   Page 539 of 1249

direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

1900.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

1901.   Because New GM concealed its knowledge of the ignition switch defect, the District of Columbia Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

1902.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

1903.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

1904.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 40 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 540 of 1249

1905.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

1906.   As of September 30, 2014,  the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

1907.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

1908.   But for New GM's fraudulent concealment of the ignition switch defects, the District of Columbia Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

1909.   Had the District of Columbia Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

1910.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 41 of 743
Complaint - Part 2 of 2    Pg 41 of 743

1911.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

1912.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the District of Columbia Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the District of Columbia Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

1913.   Plaintiffs and the District of Columbia Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the District of Columbia Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the District of Columbia Pre-Sale ISD Subclass.

1914.   Because of the concealment and/or suppression of the facts, Plaintiffs and the District of Columbia Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 07/09/15   Page 542 of 1249
Complaint - Part 2 of 2   Pg 42 of 743

vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC
Trust.

1915.   Accordingly, New GM is liable to the District of Columbia Pre-Sale ISD Subclass
members for their damages in an amount to be proven at trial.

1916.   New GM's acts were done maliciously, oppressively, deliberately, with intent to
defraud, and in reckless disregard of Plaintiffs' and the District of Columbia Pre-Sale ISD
Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment
of punitive damages in an amount sufficient to deter such conduct in the future, which amount is
to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

1917.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

1918.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass
members who are District of Columbia residents (the "District of Columbia Pre-Sale ISD
Subclass").

1919.   In the Sales Agreement through which New GM acquired substantially all of the
assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the
> certification, reporting and recall requirements of the National
> Traffic and Motor Vehicle and Motor Vehicle Safety Act, the
> Transportation Recall Enhancement, Accountability and
> Documentation Act, the Clean Air Act, the California Health and
> Safety Code and similar Laws, in each case, to the extent
> applicable in respect of vehicles and vehicle parts manufactured or
> distributed by [Old GM].

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Complaint - Part 2 of 2 Pg 43 of 743
Case 1:14-mc-02543-JMF Document 135 Filed 09/25/15 Page 843 of 1249

1920. With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

1921. But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

1922. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

1923. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 44 of 1243
Complaint - Part 2 of 2    Pg 44 of 743

1924.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

1925.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

1926.   Plaintiffs and the District of Columbia Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

1927.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1928.   This claim is brought on behalf of members of the District of Columbia Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "District of Columbia Unjust Enrichment Class").

- 512 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2   Pg 45 of 743
Case 914-md-02543-3MF   Document 135   Filed 09/09/15   Page 545 of 1249

1929.   New GM has received and retained a benefit from the Plaintiffs and inequity has

resulted.

1930.   New GM has benefitted from selling and leasing defective cars, including

Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of

systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and

Plaintiffs have overpaid for the cars and been forced to pay other costs.

1931.   With respect to the Defective Ignition Switch Vehicles purchased before New

GM came into existence that were still on the road after New GM came into existence and as to

which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by

avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about

the success of New GM.

1932.   Thus, all District of Columbia Unjust Enrichment Class Members conferred a

benefit on New GM.

1933.   It is inequitable for New GM to retain these benefits.

1934.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did

not benefit from GM's conduct.

1935.   New GM knowingly accepted the benefits of its unjust conduct.

1936.   As a result of New GM's conduct, the amount of its unjust enrichment should be

disgorged, in an amount according to proof.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 546 of 1249
Complaint - Part 2 of 2    Pg 46 of 743

# FLORIDA

## COUNT I

## VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT

### (FLA. STAT. § 501.201, *et seq.*)

1937.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1938.   This claim is brought only on behalf of Nationwide Class Members who are Florida residents (the "Florida Class").

1939.   Plaintiffs are "consumers" within the meaning of Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), FLA. STAT. § 501.203(7).

1940.   New GM engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

1941.   FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" FLA. STAT. § 501.204(1).  New GM participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

1942.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

- 514 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/25/15   Page 347 of 1249
Complaint - Part 2 of 2    Pg 47 of 743

1943.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

1944.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

1945.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

1946.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair, unconscionable, and deceptive business practices in violation of the FUDTPA.

1947.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 548 of 1249
Complaint - Part 2 of 2    Pg 48 of 743

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

1948.   New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

1949.   New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with an intent to mislead Plaintiffs and the Florida Class.

1950.   New GM knew or should have known that its conduct violated the FUDTPA.

1951.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles and the GM brand that were either false or misleading.

1952.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

    a.    Possessed exclusive knowledge that it valued cost-cutting
over safety, selected parts from the cheapest supplier
regardless of quality, and actively discouraged employees
from finding and flagging known safety defects, and that
this approach would necessarily cause the existence of
more defects in the vehicles it designed and manufactured;

    b.    Intentionally concealed the foregoing from Plaintiffs;
and/or

    c.    Made incomplete representations about the safety and
reliability of the Affected Vehicles generally, and the
ignition switch and other defects in particular, while
purposefully withholding material facts from Plaintiffs that
contradicted these representations.

1953.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 49 of 743
Case 1:14-mc-02543-3MF    Document 135    Filed 09/05/15    Page 549 of 1249

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

1954.    New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Florida Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

1955.    Plaintiffs and the Florida Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the FUDTPA.

1956.    Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the FUDTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of diminished value of their vehicles

- 517 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-3MF Document 135 Filed 09/25/15 Page 50 of 1249
Complaint - Part 2 of 2 Pg 50 of 743

as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

1957.   Plaintiffs and Florida Class Members risk irreparable injury as a result of New GM's act and omissions in violation of the FUDTPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

1958.   As a direct and proximate result of New GM's violations of the FUDTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual damage.

1959.   Plaintiffs and the Florida Class are entitled to recover their actual damages under FLA. STAT. § 501.211(2) and attorneys' fees under FLA. STAT. § 501.2105(1).

1960.   Plaintiffs also seek an order enjoining New GM's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

## COUNT II

### FRAUD BY CONCEALMENT

1961.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1962.   This claim is brought on behalf of Nationwide Class Members who are Florida residents (the "Florida Class").

1963.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

1964.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

- 518 -

1965.   New GM concealed and suppressed material facts concerning the many serious defects plaguing ==GM-branded vehicles,== and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

1966.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

1967.   New GM had a duty to disclose the many defects in ==GM-branded vehicles== because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Florida Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. ==Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.==  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Florida Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

010440-11  789697 V1

1968.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Florida Class.

1969.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Florida Class and conceal material information regarding defects that exist in GM-branded vehicles.

1970.   Plaintiffs and the Florida Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Florida Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Florida Class.

1971.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Florida Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

1972.   The value of all Florida Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1973.   Accordingly, New GM is liable to the Florida Class for damages in an amount to be proven at trial.

1974.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Florida Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT III**

**FRAUD BY CONCEALMENT OF THE RIGHT
TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

1975.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1976.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Florida residents ***and*** who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Florida Pre-Sale ISD Subclass").

1977.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

<div align="center">

- 521 -

</div>

09-50026-mg  Doc 13469-3  Filed 09/25/15  Entered 09/25/15 15:34:58  Marked MDL
Complaint - Part 2 of 2    Pg 54 of 743
Case 1:14-mc-02543-JMF  Document 135  Filed 09/25/15  Page 54 of 1249

1978.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

1979.   The Florida Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

1980.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

1981.   Because New GM concealed its knowledge of the ignition switch defect, the Florida Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

1982.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 55 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/25/15   Page 55 of 124

1983.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

1984.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

1985.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

1986.   As of September 30, 2014,  the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

1987.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

1988.   But for New GM's fraudulent concealment of the ignition switch defects, the Florida Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

1989.   Had the Florida Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

1990.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

1991.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

1992.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Florida Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Florida Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

1993.   Plaintiffs and the Florida Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Florida Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Florida Pre-Sale ISD Subclass.

1994.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Florida Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

1995.   Accordingly, New GM is liable to the Florida Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

1996.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Florida Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV

## THIRD-PARTY BENEFICIARY CLAIM

1997.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1998.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Florida residents (the "Florida Pre-Sale ISD Subclass").

1999.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and

- 525 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-3MF    Document 3135    Filed 09/09/15    Page 558 of 1249
Complaint - Part 2 of 2    Pg 58 of 743

Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

2000.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

2001.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

2002.  Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2003.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer

- 526 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 59 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 06/05/15    Page 559 of 1249

responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

2004.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2005.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2006.   Plaintiffs and the Florida Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

2007.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2008.   This claim is brought on behalf of members of the Florida Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time

- 527 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 360 of 1249
Complaint - Part 2 of 2    Pg 60 of 743

period before New GM came into existence, which cars were still on the road after New GM

came into existence (the "Florida Unjust Enrichment Class").

2009.   New GM has received and retained a benefit from the Plaintiffs and inequity has

resulted.

2010.   New GM has benefitted from selling and leasing defective cars, including

Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of

systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and

Plaintiffs have overpaid for the cars and been forced to pay other costs.

2011.   With respect to the Defective Ignition Switch Vehicles purchased before New

GM came into existence that were still on the road after New GM came into existence and as to

which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by

avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about

the success of New GM.

2012.   Thus, all Florida Unjust Enrichment Class Members conferred a benefit on New

GM.

2013.   It is inequitable for New GM to retain these benefits.

2014.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did

not benefit from GM's conduct.

2015.   New GM knowingly accepted the benefits of its unjust conduct.

2016.   As a result of New GM's conduct, the amount of its unjust enrichment should be

disgorged, in an amount according to proof.

010440-11  789697 V1

# GEORGIA

## COUNT I

## VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT

### (GA. CODE ANN. § 10-1-390, *et seq*.)

2017.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2018.   This claim is brought only on behalf of Nationwide Class Members who are Georgia residents (the "Georgia Class").

2019.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE. ANN. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," GA. CODE. ANN. § 10-1-393(b).

2020.   By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in unfair or deceptive practices prohibited by the FBPA, including:  (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not; and (3) advertising the Affected Vehicles with the intent not to sell them as advertised.  New GM participated in unfair or deceptive acts or practices that violated the Georgia FBPA.

010440-11 789697 V1

2021.   In the course of its business, New GM systematically devalued safety and
concealed a plethora of defects in GM-branded vehicles as described herein and otherwise
engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful
trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or
concealment, suppression or omission of any material fact with intent that others rely upon such
concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2022.   From the date of its inception on July 11, 2009, New GM knew of many serious
defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge
of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and
notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD
Act obligations, as discussed above.  New GM became aware of other serious defects and
systemic safety issues years ago, but concealed all of that information until recently.

2023.   New GM was also aware that it valued cost-cutting over safety, selected parts
from the cheapest supplier regardless of quality, and actively discouraged employees from
finding and flagging known safety defects, and that this approach would necessarily cause the
existence of more defects in the vehicles it designed and manufactured and the failure to disclose
and remedy defects in all GM -branded vehicles.  New GM concealed this information as well.

2024.   According to one report from the Center for Auto Safety, some 2,004 deaths and
injuries are connected with recently recalled GM-branded vehicles, and New GM should have
recalled the vehicles years ago.

2025.   By failing to disclose and by actively concealing the many defects in GM-branded
vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 63 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 63 of 143

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Georgia FBPA.

2026.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

2027.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

2028.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Georgia Class.

2029.   New GM knew or should have known that its conduct violated the Georgia FBPA.

2030.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2031.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

  a.   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

  b.   Intentionally concealed the foregoing from Plaintiffs; and/or

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 364 of 1249
Complaint - Part 2 of 2    Pg 64 of 743

c.    Made incomplete representations about the safety and
reliability of the Affected Vehicles generally, and the
ignition switch  and other defects in particular, while
purposefully withholding material facts from Plaintiffs that
contradicted these representations.

2032.  Because New GM fraudulently concealed the many defects in <mark>GM-branded</mark>

<mark>vehicles,</mark> resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

2033.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in <mark>GM-branded vehicles</mark> were material to Plaintiffs and the Georgia Class.  A vehicle

made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedying them.

2034.   Plaintiffs and the Georgia Class suffered ascertainable loss caused by New GM's

misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs

who purchased <mark>GM-branded vehicles</mark> after the date of New GM's inception either would have

paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who

purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned,"

they too either would have paid less for their vehicles or would not have purchased them but for

New GM's violations of the Georgia FBPA.

2035.   <mark>Regardless of time of purchase or lease,</mark> no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct no Plaintiffs

would have maintained and continued to drive their vehicles had they been aware of New GM's

misconduct had they been aware of New GM's misconduct.  By contractually assuming TREAD

- 532 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 65 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/05/15    Page 565 of 743

Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of

manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle

manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners

to refrain from unfair and deceptive acts or practices under the Georgia FBPA.  And, in any

event, all GM vehicle owners suffered ascertainable loss in the form of diminished value of their

vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of

New GM's business.

2036.   New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

2037.   As a direct and proximate result of New GM's violations of the Georgia FBPA,

Plaintiffs and the Georgia Class have suffered injury-in-fact and/or actual damage.

2038.   Plaintiff and the Georgia Class are entitled to recover damages and exemplary

damages (for intentional violations) per GA. CODE. ANN § 10-1-399(a).

2039.   Plaintiffs also seek an order enjoining New GM's unfair, unlawful, and/or

deceptive practices, attorneys' fees, and any other just and proper relief available under the

Georgia FBPA per GA. CODE. ANN § 10-1-399.

2040.   On October 8, 2014, certain Plaintiffs sent a letter complying with GA. CODE.

ANN § 10-1-399(b).  Because New GM failed to remedy its unlawful conduct within the requisite

time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Georgia Class are

entitled.

<center>COUNT II</center>

<center>**VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT**</center>

<center>(GA. CODE ANN. § 10-1-370, *et seq.*)</center>

2041.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2042.   This claim is brought only on behalf of Nationwide Class Members who are Georgia residents (the "Georgia Class").

2043.   New GM, Plaintiffs, and the Georgia Class are "persons' within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE. ANN § 10-1-371(5).

2044.   The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE. ANN § 10-1-372(a).  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in deceptive trade practices prohibited by the Georgia UDTPA.

2045.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2046.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

<center>- 534 -</center>

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and
notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD
Act obligations, as discussed above.  New GM became aware of other serious defects and
systemic safety issues years ago, but concealed all of that information until recently.

2047.   New GM was also aware that it valued cost-cutting over safety, selected parts
from the cheapest supplier regardless of quality, and actively discouraged employees from
finding and flagging known safety defects, and that this approach would necessarily cause the
existence of more defects in the vehicles it designed and manufactured and the failure to disclose
and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

2048.   According to one report from the Center for Auto Safety, some 2,004 deaths and
injuries are connected with recently recalled GM-branded vehicles, and New GM should have
recalled the vehicles years ago.

2049.   By failing to disclose and by actively concealing the many defects in GM-branded
vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself
as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,
New GM engaged in deceptive business practices in violation of the Georgia UDTPA.

2050.   In the course of New GM's business, it willfully failed to disclose and actively
concealed the dangerous risk posed by the many safety issues and serious defects discussed
above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles
were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that
valued safety and stood behind its vehicles once they are on the road.

2051.   New GM's unfair or deceptive acts or practices were likely to and did in fact
deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 68 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 568 of 1249

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

2052.   New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with an intent to mislead Plaintiffs and the Georgia Class.

2053.   New GM knew or should have known that its conduct violated the Georgia

UDTPA.

2054.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2055.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.    Possessed exclusive knowledge that it valued cost-cutting
> over safety, selected parts from the cheapest supplier
> regardless of quality, and actively discouraged employees
> from finding and flagging known safety defects, and that
> this approach would necessarily cause the existence of
> more defects in the vehicles it designed and manufactured;
>
> b.    Intentionally concealed the foregoing from Plaintiffs;
> and/or
>
> c.    Made incomplete representations about the safety and
> reliability of the Affected Vehicles generally, and the
> ignition switch  and other defects in particular, while
> purposefully withholding material facts from Plaintiffs that
> contradicted these representations.

2056.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

- 536 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 69 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 569 of 1243

2057.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Georgia Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

2058.   Plaintiffs and the Georgia Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Georgia UDTPA.

2059.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Georgia UDTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 70 of 743
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 870 of 1249

2060.   New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

2061.   As a direct and proximate result of New GM's violations of the Georgia UDTPA,

Plaintiffs and the Georgia Class have suffered injury-in-fact and/or actual damage.

2062.   Plaintiffs seek an order enjoining New GM's unfair, unlawful, and/or deceptive

practices, attorneys' fees, and any other just and proper relief available under the Georgia

UDTPA per GA. CODE. ANN § 10-1-373.

## COUNT III

## FRAUD BY CONCEALMENT

2063.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2064.   This claim is brought on behalf of Nationwide Class Members who are

Georgia residents (the "Georgia Class").

2065.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

2066.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

2067.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

2068.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-3MF Document 135 Filed 09/25/15 Page 571 of 1243
Complaint - Part 2 of 2    Pg 71 of 743

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

2069.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Georgia Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Georgia Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

2070.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Georgia Class.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/25/15   Page 872 of 1249
Complaint - Part 2 of 2    Pg 72 of 743

2071.   On information and belief, New GM has still not made full and adequate
disclosure and continues to defraud Plaintiffs and the Georgia Class and conceal material
information regarding defects that exist in GM-branded vehicles.

2072.   Plaintiffs and the Georgia Class were unaware of these omitted material facts and
would not have acted as they did if they had known of the concealed and/or suppressed facts, in
that they would not have purchased cars manufactured by New GM; and/or they would not have
purchased cars manufactured by Old GM in the time after New GM had come into existence and
had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or
would not have continued to drive their vehicles or would have taken other affirmative steps.
Plaintiffs' and the Georgia Class's actions were justified.  New GM was in exclusive control of
the material facts and such facts were not known to the public, Plaintiffs, or the Georgia Class.

2073.   Because of the concealment and/or suppression of the facts, Plaintiffs and the
Georgia Class sustained damage because they own vehicles that diminished in value as a result
of New GM's concealment of, and failure to timely disclose, the serious defects in millions of
GM-branded vehicles and the serious safety and quality issues engendered by New GM's
corporate policies.  Had they been aware of the many defects that existed in GM-branded
vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or
Certified Previously Owned vehicles after New GM came into existence either would have paid
less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs
regardless of time of purchase or lease would have maintained their vehicles.

2074.   The value of all Georgia Class Members' vehicles has diminished as a result of
New GM's fraudulent concealment of the many defects and its systemic safety issues which have
greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of

- 540 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 07/15/15 Page 873 of 1249
Complaint - Part 2 of 2 Pg 73 of 743

the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2075.   Accordingly, New GM is liable to the Georgia Class for damages in an amount to be proven at trial.

2076.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Georgia Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT IV**

**FRAUD BY CONCEALMENT OF THE RIGHT
TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

2077.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2078.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Georgia residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Georgia Pre-Sale ISD Subclass").

2079.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

2080.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

Case 1:14-mc-02543-JMF    Document 135    Filed 09/05/15    Page 574 of 1249

necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

2081.   The Georgia Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

2082.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

2083.   Because New GM concealed its knowledge of the ignition switch defect, the Georgia Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

2084.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2085.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

2086.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

2087.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2088.   As of September 30, 2014,  the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2089.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2090.   But for New GM's fraudulent concealment of the ignition switch defects, the Georgia Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2091.   Had the Georgia Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/25/15 Page 876 of 1249
Complaint - Part 2 of 2 Pg 76 of 743

2092.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

2093.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2094.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Georgia Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Georgia Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

2095.   Plaintiffs and the Georgia Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Georgia Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Georgia Pre-Sale ISD Subclass.

2096.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Georgia Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the

010440-11 789697 V1

accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

2097.   Accordingly, New GM is liable to the Georgia Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2098.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Georgia Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V

## THIRD-PARTY BENEFICIARY CLAIM

2099.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2100.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Georgia residents (the "Georgia Pre-Sale ISD Subclass").

2101.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2   Pg 78 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 578 of 1249

2102.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

2103.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

2104.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2105.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 579 of 1249
Complaint - Part 2 of 2   Pg 79 of 743

2106.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2107.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2108.   Plaintiffs and the Georgia Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

<div align="center">

**COUNT VI**

**UNJUST ENRICHMENT**

</div>

2109.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2110.   This claim is brought on behalf of members of the Georgia Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Georgia Unjust Enrichment Class").

<div align="center">

- 547 -

</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 07/09/15   Page 580 of 1249
Complaint - Part 2 of 2    Pg 80 of 743

2111.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2112.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

2113.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2114.   Thus, all Georgia Unjust Enrichment Class Members conferred a benefit on New GM.

2115.   It is inequitable for New GM to retain these benefits.

2116.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

2117.   New GM knowingly accepted the benefits of its unjust conduct.

2118.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-3MF Document 135 Filed 09/25/15 Page 81 of 1249
Complaint - Part 2 of 2    Pg 81 of 743

# HAWAII

## COUNT I

### UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW

#### (Haw. Rev. Stat. § 480, *et seq.*)

2119.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2120.   This claim is brought only on behalf of Nationwide Class Members who are Hawaii residents (the "Hawaii Class").

2121.   New GM is a "person" under Haw. Rev. Stat. § 480-1.

2122.   Class Members are "consumer[s]" as defined by Haw. Rev. Stat. § 480-1, who purchased or leased one or more Affected Vehicles.

2123.   New GM's acts or practices as set forth above occurred in the conduct of trade or commerce.

2124.   The Hawaii Act § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.…"  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in unfair and deceptive trade practices prohibited by the Hawaii Act.

2125.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2126.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

2127.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

2128.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

2129.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Hawaii Act.

2130.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 83 of 143
Complaint - Part 2 of 2    Pg 83 of 743

2131.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

2132.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Hawaii Class.

2133.   New GM knew or should have known that its conduct violated the Hawaii Act.

2134.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2135.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

     a.     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

     b.     Intentionally concealed the foregoing from Plaintiffs; and/or

     c.     Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

2136.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/05/15   Page 584 of 1249
Complaint - Part 2 of 2    Pg 84 of 743

2137.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Hawaii Class.  A vehicle

made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedying them.

2138.   Plaintiffs and the Hawaii Class suffered ascertainable loss caused by New GM's

misrepresentations and its concealment of and failure to disclose material information.  ,

Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either

would have paid less for their vehicles or would not have purchased or leased them at all.  For

Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as

"Certified Pre-Owned," they too either would have paid less for their vehicles or would not have

purchased them but for New GM's violations of the Hawaii UDTPA.

2139.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Hawaii UDTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the

form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and

practices made in the course of New GM's business

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/25/15 Page 85 of 1249
Complaint - Part 2 of 2    Pg 85 of 743

.2140.  New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

2141.  As a direct and proximate result of New GM's violations of the Hawaii Act, Plaintiffs and the Hawaii Class have suffered injury-in-fact and/or actual damage.

2142.  Pursuant to HAW. REV. STAT. § 480-13, Plaintiffs and the Hawaii Class seek monetary relief against New GM measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

2143.  Under HAW. REV. STAT. § 480-13.5, Plaintiffs seek an additional award against New GM of up to $10,000 for each violation directed at a Hawaiian elder.  New GM knew or should have known that its conduct was directed to one or more Class Members who are elders.  New GM's conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder.  One or more Hawaii Class Members who are elders are substantially more vulnerable to New GM's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from New GM's conduct.

## COUNT II

## FRAUD BY CONCEALMENT

2144.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2145.  This claim is brought on behalf of Nationwide Class Members who are Hawaii residents (the "Hawaii Class").

- 553 -

09-50026-mg  Doc 13469-3  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-3MF  Document 135  Filed 09/25/15  Page 586 of 1249
Complaint - Part 2 of 2    Pg 86 of 743

2146.   New GM concealed and suppressed material facts concerning the quality of its
vehicles and the GM brand.

2147.   New GM concealed and suppressed material facts concerning the culture of New
GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety
issues, and a shoddy design process.

2148.   New GM concealed and suppressed material facts concerning the many serious
defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps
to ensure that its employees did not reveal known safety defects to regulators or consumers.

2149.   New GM did so in order to boost confidence in its vehicles and falsely assure
purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was
a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles
are safe and reliable. The false representations were material to consumers, both because they
concerned the quality and safety of the Affected Vehicles and because the representations played
a significant role in the value of the vehicles.

2150.   New GM had a duty to disclose the many defects in GM-branded vehicles
because they were known and/or accessible only to New GM, were in fact known to New GM as
of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge
and access to the facts, and New GM knew the facts were not known to or reasonably
discoverable by Plaintiffs and the Hawaii Class.  New GM also had a duty to disclose because it
made many general affirmative representations about the safety, quality, and lack of defects in its
vehicles, as set forth above, which were misleading, deceptive and incomplete without the
disclosure of the additional facts set forth above regarding its actual safety record, safety
philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/05/15   Page 87 of 743
Complaint - Part 2 of 2    Pg 87 of 743

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Hawaii Class.  Whether

a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its

products, are material concerns to a consumer.

2151.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Hawaii Class.

2152.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Hawaii Class and conceal material

information regarding defects that exist in GM-branded vehicles.

2153.   Plaintiffs and the Hawaii Class were unaware of these omitted material facts and

would not have acted as they did if they had known of the concealed and/or suppressed facts, in

that they would not have purchased cars manufactured by New GM; and/or they would not have

purchased cars manufactured by Old GM in the time after New GM had come into existence and

had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or

would not have continued to drive their vehicles or would have taken other affirmative steps.

Plaintiffs' and the Hawaii Class's actions were justified.  New GM was in exclusive control of

the material facts and such facts were not known to the public, Plaintiffs, or the Hawaii Class.

2154.   Because of the concealment and/or suppression of the facts, Plaintiffs and the

Hawaii Class sustained damage because they own vehicles that diminished in value as a result of

New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-

branded vehicles and the serious safety and quality issues engendered by New GM's corporate

- 555 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/05/15    Page 588 of 1249
Complaint - Part 2 of 2    Pg 88 of 743

policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the

company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously

Owned vehicles after New GM came into existence either would have paid less for their vehicles

or would not have purchased or leased them at all; and no Plaintiffs regardless of time of

purchase or lease would have maintained their vehicles.

2155.   The value of all Hawaii Class Members' vehicles has diminished as a result of

New GM's fraudulent concealment of the many defects and its systemic safety issues which have

greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of

the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

vehicles.

2156.   Accordingly, New GM is liable to the Hawaii Class for damages in an amount to

be proven at trial.

2157.   New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the Hawaii Class's rights and well-being to

enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount

sufficient to deter such conduct in the future, which amount is to be determined according to

proof.

<div align="center">

**COUNT III**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(HAW. REV. STAT. § 490:2-314)**

</div>

2158.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2159.   This claim is brought only on behalf of Hawaii residents who are members of the

Nationwide Post-Sale Ignition Switch Defect Subclass (the "Hawaii Post-Sale ISD Subclass").

<div align="center">- 556 -</div>

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 589 of 1243
Complaint - Part 2 of 2    Pg 89 of 743

2160.   New GM was a merchant with respect to motor vehicles within the meaning of HAW. REV. STAT. § 490:2-104(1).

2161.   Under HAW. REV. STAT. § 490:2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

2162.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

2163.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Hawaii Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

2164.   As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Hawaii Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

## COUNT IV
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

2165.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2166.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Hawaii residents *and* who owned their Pre-Sale Defective Ignition Switch

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-3MF    Document 3135    Filed 09/25/15    Page 90 of 1249
Complaint - Part 2 of 2    Pg 90 of 743

Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Hawaii Pre-Sale ISD Subclass").

2167.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

2168.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

2169.   The Hawaii Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

2170.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

2171.   Because New GM concealed its knowledge of the ignition switch defect, the Hawaii Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the

- 558 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2   Pg 91 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/25/15   Page 591 of 1249

publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

2172.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2173.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

2174.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

2175.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2176.   As of September 30, 2014,  the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2177.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners

- 559 -

may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2178.   But for New GM's fraudulent concealment of the ignition switch defects, the Hawaii Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2179.   Had the Hawaii Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

2180.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

2181.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2182.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Hawaii Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Hawaii Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

- 560 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 93 of 743
Case 14-mc-02543-3MF    Document 135    Filed 09/25/15    Page 593 of 1249

2183.  Plaintiffs and the Hawaii Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Hawaii Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Hawaii Pre-Sale ISD Subclass.

2184.  Because of the concealment and/or suppression of the facts, Plaintiffs and the Hawaii Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

2185.  Accordingly, New GM is liable to the Hawaii Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2186.  New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Hawaii Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

2187.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2188.  This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Hawaii residents (the "Hawaii Pre-Sale ISD Subclass").

- 561 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 94 of 123
Complaint - Part 2 of 2    Pg 94 of 743

2189.    In the Sales Agreement through which New GM acquired substantially all of the

assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the
> certification, reporting and recall requirements of the National
> Traffic and Motor Vehicle and Motor Vehicle Safety Act, the
> Transportation Recall Enhancement, Accountability and
> Documentation Act, the Clean Air Act, the California Health and
> Safety Code and similar Laws, in each case, to the extent
> applicable in respect of vehicles and vehicle parts manufactured or
> distributed by [Old GM].

2190.    With the exception of the portion of the agreement that purports to immunize New

GM from its own independent misconduct with respect to cars and parts made by Old GM, the

Sales Agreement is a valid and binding contract.

2191.    But for New GM's covenant to comply with the TREAD Act with respect to cars

and parts made by Old GM, the TREAD Act would have no application to New GM with respect

to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall

obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

2192.    Because New GM agreed to comply with the TREAD Act with respect to vehicles

manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly

submissions to NHTSA of "early warning reporting" data, including incidents involving death,

injury, or property damage, warranty claims, consumer complaints, and field reports concerning

failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. §

30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the

early warning reports are based and all records containing information on malfunctions that may

be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate*

remedial action if it knows or should know that a safety defect exists – including notifying

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/25/15 Page 95 of 1249
Complaint - Part 2 of 2    Pg 95 of 743

NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R.
§ 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2193.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM,
are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.
Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer
responsible for monitoring the safety of their Old GM vehicles and making certain that any
known safety defects would be promptly remedied.

2194.   Although the Sale Order which consummated New GM's purchase of Old GM
purported to give New GM immunity from claims concerning vehicles or parts made by Old
GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM
can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made
by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale
Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on
New GM's post-sale breaches of the promise it made in the Sale Agreement.

2195.   New GM breached its covenant to comply with the TREAD Act with respect to
the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the
Ignition Switch Defect until 2014 when it finally issued a recall.

2196.   Plaintiffs and the Hawaii Pre-Sale ISD Subclass were damaged as a result of New
GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the
value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be
determined at trial.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/05/15   Page 896 of 1249
Complaint - Part 2 of 2   Pg 96 of 743

## COUNT VI

## UNJUST ENRICHMENT

2197.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2198.   This claim is brought on behalf of members of the Hawaii Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Hawaii Unjust Enrichment Class").

2199.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2200.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

2201.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2202.   Thus, all Hawaii Unjust Enrichment Class Members conferred a benefit on New GM.

2203.   It is inequitable for New GM to retain these benefits.

010440-11  789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 597 of 1249
Complaint - Part 2 of 2    Pg 97 of 743

2204.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did

not benefit from GM's conduct.

2205.   New GM knowingly accepted the benefits of its unjust conduct.

2206.   As a result of New GM's conduct, the amount of its unjust enrichment should be

disgorged, in an amount according to proof.

## IDAHO

## COUNT I

## VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT

### (IDAHO CIV. CODE § 48-601, *et seq.*)

2207.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2208.   This claim is brought only on behalf of Class Members who are Idaho residents

(the "Idaho Class").

2209.   New GM is a "person" under the Idaho Consumer Protection Act ("Idaho CPA"),

IDAHO CIV. CODE § 48-602(1).

2210.   New GM's acts or practices as set forth above occurred in the conduct of "trade"

or "commerce" under IDAHO CIV. CODE § 48-602(2).

2211.   New GM participated in misleading, false, or deceptive acts that violated the

Idaho CPA.  By systematically devaluing safety and concealing a plethora of defects in GM-

branded vehicles, New GM engaged in deceptive business practices prohibited by the Idaho

CPA, including:  (1) representing that the Affected Vehicles have characteristics, uses, and

benefits which they do not have; (2) representing that the Affected Vehicles are of a particular

standard, quality, and grade when they are not; (3) advertising the Affected Vehicles with the

intent not to sell them as advertised; (4) engaging in acts or practices which are otherwise

- 565 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 598 of 1243
Complaint - Part 2 of 2    Pg 98 of 743

misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce.  *See* IDAHO CIV. CODE § 48-603.

2212.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2213.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

2214.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

2215.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 599 of 1249
Complaint - Part 2 of 2    Pg 99 of 743

2216.   By failing to disclose and by actively concealing the many defects in GM-branded
vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself
as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,
New GM engaged in deceptive business practices in violation of the Idaho CPA.

2217.   In the course of New GM's business, it willfully failed to disclose and actively
concealed the dangerous risk posed by the many safety issues and serious defects discussed
above.  New GM compounded the deception by repeatedly asserting that GM –branded vehicles
were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that
valued safety and stood behind its vehicles once they are on the road.

2218.   New GM's unfair or deceptive acts or practices were likely to and did in fact
deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-
branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true
value of the Affected Vehicles.

2219.   New GM intentionally and knowingly misrepresented material facts regarding the
Affected Vehicles with an intent to mislead Plaintiffs and the Idaho Class.

2220.   New GM knew or should have known that its conduct violated the Idaho CPA.

2221.   As alleged above, New GM made material statements about the safety and
reliability of the Affected Vehicles  and the GM brand that were either false or misleading.

2222.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the
Affected Vehicles and the devaluing of safety at New GM, because New GM:

     a.     Possessed exclusive knowledge that it valued cost-cutting
over safety, selected parts from the cheapest supplier
regardless of quality, and actively discouraged employees
from finding and flagging known safety defects, and that
this approach would necessarily cause the existence of
more defects in the vehicles it designed and manufactured;

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Complaint - Part 2 of 2 Pg 100 of 743
Case 1:14-mc-02543-3MF Document 135 Filed 09/09/15 Page 800 of 1249

      b.      Intentionally concealed the foregoing from Plaintiffs; and/or

      c.      Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

2223.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

2224.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Idaho Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

2225.   Plaintiffs and the Idaho Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.   Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Idaho CPA.

2226.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 101 of 743
Case 1:14-mc-02543-3MF    Document 3135    Filed 09/09/15    Page 801 of 1249

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Idaho CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the Illinois

form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts

and practices made in the course of New GM's business.

2227.   New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

2228.   As a direct and proximate result of New GM's violations of the Idaho CPA,

Plaintiffs and the Idaho Class have suffered injury-in-fact and/or actual damage.

2229.   Pursuant to IDAHO CODE § 48-608, Plaintiffs and the Idaho Class seek monetary

relief against New GM measured as the greater of (a) actual damages in an amount to be

determined at trial and (b) statutory damages in the amount of $1,000 for each Plaintiff and each

Idaho Class member.

2230.   Plaintiffs also seek an order enjoining New GM's unfair, unlawful, and/or

deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho

CPA.

2231.   Plaintiffs and Idaho Class Members also seek punitive damages against New GM

because New GM's conduct evidences an extreme deviation from reasonable standards.

New GM flagrantly, maliciously, and fraudulently misrepresented the safety and reliability of the

Affected Vehicles, deceived Class Members on life-or-death matters, and concealed material

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 802 of 1249
Complaint - Part 2 of 2    Pg 102 of 743

facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in vehicles it repeatedly promised Class Members were safe. New GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II

## FRAUD BY CONCEALMENT

2232.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2233.   This claim is brought on behalf of Nationwide Class Members who are Idaho residents (the "Idaho Class").

2234.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

2235.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

2236.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

2237.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

- 570 -

010440-11 789697 V1

2238.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Idaho Class.  New GM also had a duty to disclose because it

made many general affirmative representations about the safety, quality, and lack of defects in its

vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Idaho Class.  Whether a

manufacturer's products are safe and reliable, and whether that manufacturer stands behind its

products, are material concerns to a consumer.

2239.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Idaho Class.

2240.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Idaho Class and conceal material

information regarding defects that exist in GM-branded vehicles.

2241.   Plaintiffs and the Idaho Class were unaware of these omitted material facts and

would not have acted as they did if they had known of the concealed and/or suppressed facts, in

that they would not have purchased cars manufactured by New GM; and/or they would not have

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/05/15   Page 304 of 1249
Complaint - Part 2 of 2    Pg 104 of 743

purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Idaho Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Idaho Class.

2242.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Idaho Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

2243.   The value of all Idaho Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2244.   Accordingly, New GM is liable to the Idaho Class for damages in an amount to be proven at trial.

2245.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Idaho Class's rights and well-being to

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked
Case 1:14-mc-02543-3MF    Document 1135    Filed 09/09/15    Page 305 of 1249
Complaint - Part 2 of 2    Pg 105 of 743

enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount

sufficient to deter such conduct in the future, which amount is to be determined according to

proof.

<div align="center">

**COUNT III**

**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

2246.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2247.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass

members who are Idaho residents *and* who owned their Pre-Sale Defective Ignition Switch

Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the

purposes of this claim only, the "Idaho Pre-Sale ISD Subclass").

2248.   New GM was aware of the ignition switch defects in millions of vehicles sold by

Old GM from the moment it came into existence upon entry of the Sale Order And Sale

Agreement by which New GM acquired substantially all the assets of Old GM.

2249.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale

Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required

… to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

necessarily had this same knowledge from day one of its existence, as the bankruptcy court

found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition

Switch Defect prior to the Sale Motion."

2250.   The Idaho Pre-Sale ISD Subclass did not receive notice of the ignition switch

defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice

<div align="center">- 573 -</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-3MF   Document 5135   Filed 09/09/15   Page 306 of 1249
Complaint - Part 2 of 2    Pg 106 of 743

nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

2251.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

2252.   Because New GM concealed its knowledge of the ignition switch defect, the Idaho Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

2253.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2254.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

2255.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/09/15 Page 607 of 1249
Complaint - Part 2 of 2 Pg 107 of 743

2256.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2257.   As of September 30, 2014,  the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2258.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2259.   But for New GM's fraudulent concealment of the ignition switch defects, the Idaho Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2260.   Had the Idaho Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

2261.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 308 of 1249
Complaint - Part 2 of 2 Pg 108 of 743

2262. New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2263. New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Idaho Pre-Sale ISD Subclass. These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Idaho Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

2264. Plaintiffs and the Idaho Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Idaho Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Idaho Pre-Sale ISD Subclass.

2265. Because of the concealment and/or suppression of the facts, Plaintiffs and the Idaho Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 109 of 743
Case 1:14-md-02543-JMF    Document 1139    Filed 09/09/15    Page 309 of 1249

2266.   Accordingly, New GM is liable to the Idaho Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2267.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Idaho Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT IV
### THIRD-PARTY BENEFICIARY CLAIM

2268.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2269.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Idaho residents (the "Idaho Pre-Sale ISD Subclass").

2270.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

2271.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

2272.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

2273. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2274. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

2275. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 111 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 811 of 1249

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2276.    New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2277.    Plaintiffs and the Idaho Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

2278.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2279.    This claim is brought on behalf of members of the Idaho Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Idaho Unjust Enrichment Class").

2280.    New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2281.    New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 812 of 1249
Complaint - Part 2 of 2   Pg 112 of 743

2282.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2283.   Thus, all Idaho Unjust Enrichment Class Members conferred a benefit on New GM.

2284.   It is inequitable for New GM to retain these benefits.

2285.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

2286.   New GM knowingly accepted the benefits of its unjust conduct.

2287.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

<div align="center">

**ILLINOIS**

**COUNT I**

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT**

**(815 ILCS 505/1, *et seq*. and 720 ILCS 295/1A)**

</div>

2288.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2289.   This claim is brought only on behalf of Nationwide Class Members who are Illinois residents (the "Illinois Class").

2290.   New GM is a "person" as that term is defined in 815 ILCS 505/1(c).

<div align="center">

- 580 -

</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 813 of 1249
Complaint - Part 2 of 2    Pg 113 of 743

2291.   Plaintiff and the Illinois Class are "consumers" as that term is defined in 815

ILCS 505/1(e).

2292.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois

CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or

employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact . . . in the conduct of trade or

commerce . . . whether any person has in fact been misled, deceived or damaged thereby."  815

ILCS 505/2.

2293.   New GM participated in misleading, false, or deceptive acts that violated the

Illinois CFA.  By systematically devaluing safety and concealing a plethora of defects in GM-

branded vehicles, New GM engaged in deceptive business practices prohibited by the Illinois

CFA.

2294.   In the course of its business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2295.   From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 114 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 314 of 1249

Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

2296.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

2297.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

2298.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Illinois CFA.

2299.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

2300.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 115 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 07/15/15   Page 615 of 743

2301.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Illinois Class.

2302.   New GM knew or should have known that its conduct violated the Illinois CFA.

2303.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2304.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

   a.   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

   b.   Intentionally concealed the foregoing from Plaintiffs; and/or

   c.   Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

2305.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

2306.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Illinois Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 116 of 743
Case 14-mc-02543-JMF    Document 1135    Filed 09/05/15    Page 616 of 1243

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedying them.

2307.   Plaintiffs and the Illinois Class suffered ascertainable loss caused by New GM's

misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs

who purchased GM-branded vehicles after the date of New GM's inception either would have

paid less for their vehicles or would not have purchased or leased them at all.  .  For Plaintiffs

who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-

Owned," they too either would have paid less for their vehicles or would not have purchased

them but for New GM's violations of the Illinois CFA.

2308.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Illinois CFA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form

of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and

practices made in the course of New GM's business.

2309.   New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

2310.   As a direct and proximate result of New GM's violations of the Illinois CFA,

Plaintiffs and the Illinois Class have suffered injury-in-fact and/or actual damage.

2311.   Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Illinois Class seek monetary

relief against New GM in the amount of actual damages, as well as punitive damages because

New GM acted with fraud and/or malice and/or was grossly negligent.

2312.   Plaintiffs also seek an order enjoining New GM's unfair and/or deceptive acts or

practices, punitive damages, and attorneys' fees, and any other just and proper relief available

under 815 ILCS § 505/1 *et seq*.

<div align="center">

**COUNT II**

**FRAUD BY CONCEALMENT**

</div>

2313.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2314.   This claim is brought on behalf of Nationwide Class Members who are

Illinois residents (the "Illinois Class").

2315.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

2316.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

2317.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

2318.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

<div align="center">

- 585 -

</div>

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

2319.  New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Illinois Class.  New GM also had a duty to disclose because it

made many general affirmative representations about the safety, quality, and lack of defects in its

vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Illinois Class.  Whether

a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its

products, are material concerns to a consumer.

2320.  New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Illinois Class.

2321.  On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Illinois Class and conceal material

information regarding defects that exist in GM-branded vehicles.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-3MF   Document 135   Filed 09/25/15   Page 319 of 1249
Complaint - Part 2 of 2    Pg 119 of 743

2322.   Plaintiffs and the Illinois Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Illinois Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Illinois Class.

2323.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Illinois Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

2324.   The value of all Illinois Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

09-50026-mg  Doc 13469-3  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-md-02543-JMF  Document 1139  Filed 09/25/15  Page 620 of 1249
Complaint - Part 2 of 2  Pg 120 of 743

2325.  Accordingly, New GM is liable to the Illinois Class for damages in an amount to be proven at trial.

2326.  New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Illinois Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT III**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

2327.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2328.  This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Illinois residents ***and*** who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Illinois Pre-Sale ISD Subclass").

2329.  New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

2330.  As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

<div align="center">

- 588 -

</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 821 of 1249
Complaint - Part 2 of 2    Pg 121 of 743

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition

Switch Defect prior to the Sale Motion."

2331.   The Illinois Pre-Sale ISD Subclass did not receive notice of the ignition switch

defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice

nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch

defect.

2332.   In September of 2009, the bankruptcy court entered the Bar Date Order,

establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed

against Old GM.

2333.   Because New GM concealed its knowledge of the ignition switch defect, the

Illinois Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the

passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the

publication notice sent in connection with the Bar Date Order mentioned the ignition switch

defects.

2334.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the

General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the

bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2335.   The out-of-pocket consideration provided by New GM for its acquisition of Old

GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two

series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively,

the "New GM Securities").

2336.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it

would provide additional consideration if the aggregate amount of allowed general unsecured

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 122 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 07/09/15   Page 622 of 1249

claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

2337.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2338.   As of September 30, 2014,  the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2339.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2340.   But for New GM's fraudulent concealment of the ignition switch defects, the Illinois Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2341.   Had the Illinois Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

2342.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have

been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

2343.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2344.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Illinois Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Illinois Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

2345.   Plaintiffs and the Illinois Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Illinois Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Illinois Pre-Sale ISD Subclass.

2346.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Illinois Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 124 of 1249
Complaint - Part 2 of 2 Pg 124 of 743

vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

2347.   Accordingly, New GM is liable to the Illinois Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2348.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Illinois Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV
## THIRD-PARTY BENEFICIARY CLAIM

2349.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2350.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Illinois residents (the "Illinois Pre-Sale ISD Subclass").

2351.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

2352.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

- 592 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 825 of 1249
Complaint - Part 2 of 2    Pg 125 of 743

2353.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

2354.  Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2355.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

2356.  Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM

can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2357.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2358.   Plaintiffs and the Illinois Pre-Sale ISD Subclass were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

2359.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2360.   This claim is brought on behalf of members of the Illinois Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Illinois Unjust Enrichment Class").

2361.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2362.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of

- 594 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 827 of 1249
Complaint - Part 2 of 2    Pg 127 of 743

systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

2363.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2364.   Thus, all Illinois Unjust Enrichment Class Members conferred a benefit on New GM.

2365.   It is inequitable for New GM to retain these benefits.

2366.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

2367.   New GM knowingly accepted the benefits of its unjust conduct.

2368.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## INDIANA

### COUNT I

### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

#### (IND. CODE § 24-5-0.5-3)

2369.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2370.   This claim is brought only on behalf of Nationwide Class Members who are Indiana residents (the "Indiana Class").

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/05/15   Page 528 of 1249
Complaint - Part 2 of 2   Pg 128 of 743

2371.   New GM is a "person" within the meaning of IND. CODE § 24-5-0.5-2(2) and a "supplier" within the meaning of IND. CODE § 24-5-.05-2(a)(3).

2372.   Plaintiffs' and Indiana Class Members' purchases of the Affected Vehicles are "consumer transactions" within the meaning of IND. CODE § 24-5-.05-2(a)(1).

2373.   Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive trade practice," which includes representing:  "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false."

2374.   New GM participated in misleading, false, or deceptive acts that violated the Indiana DCSA.  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in deceptive business practices prohibited by the Indiana DCSA.  New GM also engaged in unlawful trade practices by:  (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2)

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 129 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/05/15    Page 829 of 1249

representing that the Affected Vehicles are of a particular standard and quality when they are not; (3) advertising the Affected Vehicles with the intent not to sell them as advertised; and (4) otherwise engaging in conduct likely to deceive.

2375.   New GM's actions as set forth above occurred in the conduct of trade or commerce.

2376.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2377.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

2378.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

- 597 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/15/15   Page 630 of 1249
Complaint - Part 2 of 2    Pg 130 of 743

2379.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

2380.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Indiana DCSA.

2381.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

2382.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

2383.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Indiana Class.

2384.   New GM knew or should have known that its conduct violated the Indiana DCSA.

2385.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2386.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/05/15    Page 831 of 1249
Complaint - Part 2 of 2    Pg 131 of 743

a.      Possessed exclusive knowledge that it valued cost-cutting
over safety, selected parts from the cheapest supplier
regardless of quality, and actively discouraged employees
from finding and flagging known safety defects, and that
this approach would necessarily cause the existence of
more defects in the vehicles it designed and manufactured;

b.      Intentionally concealed the foregoing from Plaintiffs;
and/or

c.      Made incomplete representations about the safety and
reliability of the Affected Vehicles generally, and the
ignition switch  and other defects in particular, while
purposefully withholding material facts from Plaintiffs that
contradicted these representations.

2387.   Because New GM fraudulently concealed the many defects in GM-branded
vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,
the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to
those vehicles by New GM's conduct, they are now worth significantly less than they otherwise
would be.

2388.   New GM's systemic devaluation of safety and its concealment of a plethora of
defects in GM-branded vehicles were material to Plaintiffs and the Indiana Class.  A vehicle
made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise
comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects
rather than promptly remedying them.

2389.   Plaintiffs and the Indiana Class suffered ascertainable loss caused by New GM's
misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs
who purchased GM-branded vehicles after the date of New GM's inception either would have
paid less for their vehicles or would not have purchased or leased them at all.  .  For Plaintiffs
who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-

- 599 -

Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Indiana DCSA.

2390.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Indiana DCSA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

2391.  New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

2392.  As a direct and proximate result of New GM's violations of the Indiana DCSA, Plaintiffs and the Indiana Class have suffered injury-in-fact and/or actual damage.

2393.  Pursuant to IND. CODE § 24-5-0.5-4, Plaintiffs and the Indiana Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff and each Indiana Class member, including treble damages up to $1,000 for New GM's willfully deceptive acts.

2394.  Plaintiff also seeks punitive damages based on the outrageousness and recklessness of the New GM's conduct and New GM's high net worth.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 833 of 1249
Complaint - Part 2 of 2    Pg 133 of 743

2395.   On October 8, 2014, certain Plaintiffs sent a letter complying with IND. CODE

§ 24-5-0.5-5(a).  Because New GM failed to remedy its unlawful conduct within the requisite

time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Indiana Class are

entitled.

<div align="center">

**COUNT II**

**FRAUD BY CONCEALMENT**

</div>

2396.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2397.   This claim is brought on behalf of Nationwide Class Members who are

Indiana residents (the "Indiana Class").

2398.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

2399.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

2400.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

2401.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

<div align="center">

- 601 -

</div>

2402.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Indiana Class.  New GM also had a duty to disclose because it

made many general affirmative representations about the safety, quality, and lack of defects in its

vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Indiana Class.  Whether

a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its

products, are material concerns to a consumer.

2403.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Indiana Class.

2404.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Indiana Class and conceal material

information regarding defects that exist in GM-branded vehicles.

2405.   Plaintiffs and the Indiana Class were unaware of these omitted material facts and

would not have acted as they did if they had known of the concealed and/or suppressed facts, in

that they would not have purchased cars manufactured by New GM; and/or they would not have

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-3MF    Document 131    Filed 09/05/15    Page 635 of 1249
Complaint - Part 2 of 2    Pg 135 of 743

purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Indiana Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Indiana Class.

2406.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Indiana Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

2407.   The value of all Indiana Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2408.   Accordingly, New GM is liable to the Indiana Class for damages in an amount to be proven at trial.

2409.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Indiana Class's rights and well-being to

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 136 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 836 of 1249

enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (IND. CODE § 26-1-2-314)

2410.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2411.   This claim is brought only on behalf of Indiana residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Indiana Post-Sale ISD Subclass").

2412.   New GM was a merchant with respect to motor vehicles within the meaning of IND. CODE § 26-1-2-104(1).

2413.   Under IND. CODE § 26-1-2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

2414.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

2415.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent

- 604 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 637 of 1249
Complaint - Part 2 of 2    Pg 137 of 743

by Plaintiffs and the Indiana Post-Sale ISD Subclass before or within a reasonable amount of

time after New GM issued the recall and the allegations of vehicle defects became public.

2416.   As a direct and proximate result of New GM's breach of the implied warranty of

merchantability, Plaintiffs and the Indiana Post-Sale ISD Subclass members have been damaged

in an amount to be proven at trial.

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

2417.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2418.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass

members who are Indiana residents ***and*** who owned their Pre-Sale Defective Ignition Switch

Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the

purposes of this claim only, the "Indiana Pre-Sale ISD Subclass").

2419.   New GM was aware of the ignition switch defects in millions of vehicles sold by

Old GM from the moment it came into existence upon entry of the Sale Order And Sale

Agreement by which New GM acquired substantially all the assets of Old GM.

2420.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale

Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required

… to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

necessarily had this same knowledge from day one of its existence, as the bankruptcy court

found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition

Switch Defect prior to the Sale Motion."

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 138 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 638 of 1249

2421.   The Indiana Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

2422.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

2423.   Because New GM concealed its knowledge of the ignition switch defect, the Indiana Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

2424.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2425.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

2426.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-3MF Document 1135 Filed 09/09/15 Page 139 of 1249
Complaint - Part 2 of 2    Pg 139 of 743

2427.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2428.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2429.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2430.   But for New GM's fraudulent concealment of the ignition switch defects, the Indiana Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2431.   Had the Indiana Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

2432.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 140 of 743
Case 1:14-mc-02543-3MF    Document 3138    Filed 09/09/15    Page 840 of 1249

2433.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2434.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Indiana Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Indiana Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

2435.   Plaintiffs and the Indiana Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Indiana Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Indiana Pre-Sale ISD Subclass.

2436.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Indiana Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Complaint - Part 2 of 2 Pg 141 of 743
Case 1:14-md-02543-JMF Document 1139 Filed 07/09/15 Page 641 of 1249

2437.   Accordingly, New GM is liable to the Indiana Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2438.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Indiana Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT V

### THIRD-PARTY BENEFICIARY CLAIM

2439.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2440.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Indiana residents (the "Indiana Pre-Sale ISD Subclass").

2441.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

2442.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

- 609 -

2443.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

2444.  Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2445.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

2446.  Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM

- 610 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 143 of 743
Complaint - Part 2 of 2 Pg 143 of 743

can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2447. New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2448. Plaintiffs and the Indiana Pre-Sale ISD Subclass were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

2449. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2450. This claim is brought on behalf of members of the Indiana Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Indiana Unjust Enrichment Class").

2451. New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2452. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of

- 611 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-3MF   Document 135   Filed 09/09/15   Page 844 of 1249
Complaint - Part 2 of 2    Pg 144 of 743

systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

2453.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2454.   Thus, all Indiana Unjust Enrichment Class Members conferred a benefit on New GM.

2455.   It is inequitable for New GM to retain these benefits.

2456.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

2457.   New GM knowingly accepted the benefits of its unjust conduct.

2458.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## IOWA

## COUNT I

## VIOLATIONS OF THE PRIVATE RIGHT OF ACTION
## FOR CONSUMER FRAUDS ACT

### (IOWA CODE § 714H.1, *et seq.*)

2459.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2460.   This claim is brought only on behalf of Nationwide Class Members who are Iowa residents (the "Iowa Class").

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 145 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 845 of 1249

2461.   New GM is "person" under IOWA CODE § 714H.2(7).

2462.   Plaintiff and the Iowa Class are "consumers," as defined by IOWA CODE
§ 714H.2(3), who purchased or leased one or more Affected Vehicles.

2463.   The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA")
prohibits any "practice or act the person knows or reasonably should know is an unfair practice,
deception, fraud, false pretense, or false promise, or the misrepresentation, concealment,
suppression, or omission of a material fact, with the intent that others rely upon the unfair
practice, deception, fraud, false pretense, false promise, misrepresentation, concealment,
suppression, or omission in connection with the advertisement, sale, or lease of consumer
merchandise." IOWA CODE § 714H.3.  New GM participated in misleading, false, or deceptive
acts that violated the Iowa CFA.  By systematically devaluing safety and concealing a plethora of
defects in GM-branded vehicles, New GM engaged in deceptive business practices prohibited by
the Iowa CFA.

2464.   New GM's actions as set forth above occurred in the conduct of trade or
commerce.

2465.   In the course of its business, New GM systematically devalued safety and
concealed a plethora of defects in GM-branded vehicles as described herein and otherwise
engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful
trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or
concealment, suppression or omission of any material fact with intent that others rely upon such
concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2466.   From the date of its inception on July 11, 2009, New GM knew of many serious
defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

- 613 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 846 of 1249
Complaint - Part 2 of 2    Pg 146 of 743

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

2467.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

2468.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

2469.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Iowa CFA.

2470.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

2471.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 847 of 1249
Complaint - Part 2 of 2    Pg 147 of 743

branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

2472.    New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Iowa Class.

2473.    New GM knew or should have known that its conduct violated the Iowa CFA.

2474.    As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2475.    New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

>    a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

>    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

>    c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

2476.    Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

2477.    New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Iowa Class.  A vehicle made

- 615 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 848 of 1249
Complaint - Part 2 of 2    Pg 148 of 743

by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedying them.

2478.    Plaintiffs and the Iowa Class suffered ascertainable loss caused by New GM's

misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs

who purchased GM-branded vehicles after the date of New GM's inception either would have

paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who

purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned,"

they too either would have paid less for their vehicles or would not have purchased them but for

New GM's violations of the Iowa CFA.

2479.    Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Iowa CFA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of

the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and

practices made in the course of New GM's business.

2480.    New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 113   Filed 09/09/15   Page 149 of 1243
Complaint - Part 2 of 2    Pg 149 of 743

2481.   As a direct and proximate result of New GM's violations of the Iowa CFA,

Plaintiffs and the Iowa Class have suffered injury-in-fact and/or actual damage.

2482.   Pursuant to IOWA CODE § 714H.5, Plaintiffs seek an order enjoining New GM's

unfair and/or deceptive acts or practices; actual damages; in addition to an award of actual

damages, statutory damages up to three times the amount of actual damages awarded as a result

of New GM's willful and wanton disregard for the rights or safety of others; attorneys' fees; and

such other equitable relief as the Court deems necessary to protect the public from further

violations of the Iowa CFA.

<div align="center">

**COUNT II**

**FRAUD BY CONCEALMENT**

</div>

2483.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2484.   This claim is brought on behalf of Nationwide Class Members who are

Iowa residents (the "Iowa Class").

2485.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

2486.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

2487.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

2488.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

<div align="center">

- 617 -

</div>

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Complaint - Part 2 of 2 Pg 150 of 743
Case 1:14-mc-02543-3MF Document 1135 Filed 09/09/15 Page 650 of 1243

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

2489.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Iowa Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Iowa Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

2490.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Iowa Class.

- 618 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 651 of 1249
Complaint - Part 2 of 2 Pg 151 of 743

2491.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Iowa Class and conceal material information regarding defects that exist in GM-branded vehicles.

2492.   Plaintiffs and the Iowa Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Iowa Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Iowa Class.

2493.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Iowa Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

2494.   The value of all Iowa Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of

- 619 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 07/05/15 Page 852 of 1249
Complaint - Part 2 of 2 Pg 152 of 743

the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2495.   Accordingly, New GM is liable to the Iowa Class for damages in an amount to be proven at trial.

2496.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Iowa Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT III

### FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

2497.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2498.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Iowa residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Iowa Pre-Sale ISD Subclass").

2499.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

2500.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 153 of 743
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/09/15   Page 653 of 1249

necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

2501.   The Iowa Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

2502.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

2503.   Because New GM concealed its knowledge of the ignition switch defect, the Iowa Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

2504.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2505.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 654 of 1249
Complaint - Part 2 of 2    Pg 154 of 743

2506.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

2507.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2508.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2509.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2510.   But for New GM's fraudulent concealment of the ignition switch defects, the Iowa Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2511.   Had the Iowa Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 155 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 655 of 1249

2512. Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

2513. New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2514. New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Iowa Pre-Sale ISD Subclass. These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Iowa Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

2515. Plaintiffs and the Iowa Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Iowa Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Iowa Pre-Sale ISD Subclass.

2516. Because of the concealment and/or suppression of the facts, Plaintiffs and the Iowa Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 656 of 1249
Complaint - Part 2 of 2    Pg 156 of 743

accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

2517.   Accordingly, New GM is liable to the Iowa Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2518.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Iowa Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV

### THIRD-PARTY BENEFICIARY CLAIM

2519.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2520.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Iowa residents (the "Iowa Pre-Sale ISD Subclass").

2521.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1139   Filed 09/09/15   Page 657 of 1243
Complaint - Part 2 of 2    Pg 157 of 743

2522.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

2523.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

2524.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2525.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

- 625 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/09/15   Page 358 of 1249
Complaint - Part 2 of 2    Pg 158 of 743

2526.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2527.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2528.   Plaintiffs and the Iowa Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

2529.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2530.   This claim is brought on behalf of members of the Iowa Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Iowa Unjust Enrichment Class").

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 159 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 07/09/15    Page 659 of 1249

2531.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2532.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

2533.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2534.   Thus, all Iowa Unjust Enrichment Class Members conferred a benefit on New GM.

2535.   It is inequitable for New GM to retain these benefits.

2536.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

2537.   New GM knowingly accepted the benefits of its unjust conduct.

2538.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

# KANSAS

## COUNT I

## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT

### (KAN. STAT. ANN. § 50-623, *et seq.*)

2539.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2540.   This claim is brought only on behalf of Nationwide Class Members who are Kansas residents (the "Kansas Class").

2541.   New GM is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), KAN. STAT. ANN. § 50-624(l).

2542.   Kansas Class Members are "consumers," within the meaning of KAN. STAT. ANN. § 50-624(b), who purchased or leased one or more Affected Vehicles.

2543.   The sale of the Affected Vehicles to the Kansas Class Members was a "consumer transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

2544.   The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," KAN. STAT. ANN. § 50-626(a), and that deceptive acts or practices include:  (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact."

- 628 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Complaint - Part 2 of 2 Pg 161 of 743
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 361 of 1249

The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." KAN. STAT. ANN. § 50-627(a).

2545. New GM participated in misleading, false, or deceptive acts that violated the Kansas CPA. By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in deceptive business practices prohibited by the Kansas CPA. New GM also engaged in unlawful trade practices by: (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Affected Vehicles are of a particular standard and quality when they are not; (3) advertising the Affected Vehicles with the intent not to sell them as advertised; (4) willfully using, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; (5) willfully failing to state a material fact, or the willfully concealing, suppressing or omitting a material fact; and (6) otherwise engaging in an unconscionable act or practice in connection with a consumer transaction.

2546. New GM's actions as set forth above occurred in the conduct of trade or commerce.

2547. In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2548. From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

- 629 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 162 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 02/05/15   Page 362 of 1249

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

2549. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

2550. According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

2551. By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Kansas CPA.

2552. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

2553. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 863 of 1249
Complaint - Part 2 of 2    Pg 163 of 743

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

2554.   New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with an intent to mislead Plaintiffs and the Kansas Class.

2555.   New GM knew or should have known that its conduct violated the Kansas CPA.

2556.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2557.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.   Possessed exclusive knowledge that it valued cost-cutting
> over safety, selected parts from the cheapest supplier
> regardless of quality, and actively discouraged employees
> from finding and flagging known safety defects, and that
> this approach would necessarily cause the existence of
> more defects in the vehicles it designed and manufactured;

> b.   Intentionally concealed the foregoing from Plaintiffs;
> and/or

> c.   Made incomplete representations about the safety and
> reliability of the Affected Vehicles generally, and the
> ignition switch  and other defects in particular, while
> purposefully withholding material facts from Plaintiffs that
> contradicted these representations.

2558.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

2559.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Kansas Class.  A vehicle

- 631 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 164 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 664 of 1249

made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable

vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than

promptly remedying them.

2560.    Plaintiffs and the Kansas Class suffered ascertainable loss caused by New GM's

misrepresentations and its concealment of and failure to disclose material information.  ,

Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either

would have paid less for their vehicles or would not have purchased or leased them at all.   For

Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as

"Certified Pre-Owned," they too either would have paid less for their vehicles or would not have

purchased them but for New GM's violations of the Kansas CPA.

2561.    Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Kansas CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form

of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and

practices made in the course of New GM's business.

2562.    New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

2563. As a direct and proximate result of New GM's violations of the Kansas CPA, Plaintiffs and the Kansas Class have suffered injury-in-fact and/or actual damage.

2564. Pursuant to KAN. STAT. ANN. § 50-634, Plaintiffs and the Kansas Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Plaintiff and each Kansas Class member

2565. Plaintiff also seeks an order enjoining New GM's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under KAN. STAT. ANN § 50-623 *et seq*.

## COUNT II

## FRAUD BY CONCEALMENT

2566. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2567. This claim is brought on behalf of Nationwide Class Members who are Kansas residents (the "Kansas Class").

2568. New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

2569. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

2570. New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

- 633 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 166 of 743
Case 1:14-md-02543-JMF   Document 1139   Filed 09/09/15   Page 366 of 1249

2571.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

2572.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Kansas Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Kansas Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

2573.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Kansas Class.

- 634 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-cv-02543-3MF   Document 135   Filed 09/25/15   Page 867 of 1249
Complaint - Part 2 of 2    Pg 167 of 743

2574.   On information and belief, New GM has still not made full and adequate
disclosure and continues to defraud Plaintiffs and the Kansas Class and conceal material
information regarding defects that exist in GM-branded vehicles.

2575.   Plaintiffs and the Kansas Class were unaware of these omitted material facts and
would not have acted as they did if they had known of the concealed and/or suppressed facts, in
that they would not have purchased cars manufactured by New GM; and/or they would not have
purchased cars manufactured by Old GM in the time after New GM had come into existence and
had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or
would not have continued to drive their vehicles or would have taken other affirmative steps.
Plaintiffs' and the Kansas Class's actions were justified.  New GM was in exclusive control of
the material facts and such facts were not known to the public, Plaintiffs, or the Kansas Class.

2576.   Because of the concealment and/or suppression of the facts, Plaintiffs and the
Kansas Class sustained damage because they own vehicles that diminished in value as a result of
New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-
branded vehicles and the serious safety and quality issues engendered by New GM's corporate
policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the
company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously
Owned vehicles after New GM came into existence either would have paid less for their vehicles
or would not have purchased or leased them at all; and no Plaintiffs regardless of time of
purchase or lease would have maintained their vehicles.

2577.   The value of all Kansas Class Members' vehicles has diminished as a result of
New GM's fraudulent concealment of the many defects and its systemic safety issues which have
greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 168 of 743
Case 1:14-mc-02543-3MF    Document 135    Filed 09/09/15    Page 668 of 1249

the Affected Vehicles, let alone pay what otherwise would have been fair market value for the
vehicles.

2578.   Accordingly, New GM is liable to the Kansas Class for damages in an amount to
be proven at trial.

2579.   New GM's acts were done maliciously, oppressively, deliberately, with intent to
defraud, and in reckless disregard of Plaintiffs' and the Kansas Class's rights and well-being to
enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount
sufficient to deter such conduct in the future, which amount is to be determined according to
proof.

### COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (KAN. STAT. ANN. § 84-2-314)

2580.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

2581.   This claim is brought only on behalf of Kansas residents who are members of the
Nationwide Post-Sale Ignition Switch Defect Subclass (the "Kansas Post-Sale ISD Subclass").

2582.   New GM was a merchant with respect to motor vehicles within the meaning of
KAN. STAT. ANN. § 84-2-104(1).

2583.   Under KAN. STAT. ANN. § 84-2-314, a warranty that the Defective Ignition
Switch Vehicles were in merchantable condition was implied by law in the transactions when
Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after
July 11, 2009.

2584.   These vehicles, when sold and at all times thereafter, were not merchantable and
are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 869 of 1249
Complaint - Part 2 of 2    Pg 169 of 743

Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

2585.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Kansas Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

2586.   As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Kansas Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

2587.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2588.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Kansas residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Kansas Pre-Sale ISD Subclass").

2589.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

2590.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

<div align="center">

- 637 -

</div>

necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

2591.   The Kansas Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

2592.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

2593.   Because New GM concealed its knowledge of the ignition switch defect, the Kansas Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

2594.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2595.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 171 of 743
Case 1:14-md-02543-JMF    Document 1135    Filed 09/25/15    Page 871 of 1249

2596.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

2597.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2598.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2599.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2600.   But for New GM's fraudulent concealment of the ignition switch defects, the Kansas Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2601.   Had the Kansas Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 5135    Filed 09/09/15    Page 672 of 1249
Complaint - Part 2 of 2    Pg 172 of 743

2602.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

2603.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2604.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Kansas Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Kansas Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

2605.   Plaintiffs and the Kansas Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Kansas Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Kansas Pre-Sale ISD Subclass.

2606.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Kansas Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 173 of 743
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/09/15   Page 873 of 1249

accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

2607.   Accordingly, New GM is liable to the Kansas Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2608.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Kansas Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

2609.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2610.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Kansas residents (the "Kansas Pre-Sale ISD Subclass").

2611.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

- 641 -

2612.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

2613.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

2614.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2615.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 675 of 1249
Complaint - Part 2 of 2    Pg 175 of 743

2616.  Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2617.  New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2618.  Plaintiffs and the Kansas Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

<div align="center">

**COUNT VI**

**UNJUST ENRICHMENT**

</div>

2619.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2620.  This claim is brought on behalf of members of the Kansas Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Kansas Unjust Enrichment Class").

<div align="center">

- 643 -

</div>

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 876 of 1249
Complaint - Part 2 of 2 Pg 176 of 743

2621.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2622.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

2623.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2624.   Thus, all Kansas Unjust Enrichment Class Members conferred a benefit on New GM.

2625.   It is inequitable for New GM to retain these benefits.

2626.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

2627.   New GM knowingly accepted the benefits of its unjust conduct.

2628.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## KENTUCKY

## COUNT I

## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT

### (KY. REV. STAT. § 367.110, *et seq.*)

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 177 of 743
Case 1:14-md-02543-JMF    Document 1135    Filed 09/25/15    Page 877 of 1249

2629.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2630.   This claim is brought only on behalf of Nationwide Class Members who are Kentucky residents (the "Kentucky Class").

2631.   New GM, Plaintiffs, and the Kentucky Class are "persons" within the meaning of the KY. REV. STAT. § 367.110(1).

2632.   New GM engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. § 367.110(2).

2633.   The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce …."  KY. REV. STAT. § 367.170(1).  Old GM and New GM both participated in misleading, false, or deceptive acts that violated the Kentucky CPA.  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in deceptive business practices prohibited by the Kentucky CPA.

2634.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2635.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

- 645 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 678 of 1249
Complaint - Part 2 of 2    Pg 178 of 743

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

2636.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

2637.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

2638.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Kentucky CPA.

2639.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

2640.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

- 646 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Complaint - Part 2 of 2 Pg 179 of 743
Case 1:14-md-02543-MF Document 1135 Filed 09/09/15 Page 679 of 1249

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

2641.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Kentucky Class.

2642.   New GM knew or should have known that its conduct violated the Kentucky CPA.

2643.   New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2644.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

   a.   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

   b.   Intentionally concealed the foregoing from Plaintiffs; and/or

   c.   Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

2645.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 680 of 1249
Complaint - Part 2 of 2    Pg 180 of 743

2646.   New GM's systemic devaluation of safety and its concealment of a plethora of
defects in GM-branded vehicles were material to Plaintiffs and the Kentucky Class.  A vehicle
made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise
comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects
rather than promptly remedying them.

2647.   Plaintiffs and the Kentucky Class suffered ascertainable loss caused by
New GM's misrepresentations and its concealment of and failure to disclose material
information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's
inception either would have paid less for their vehicles or would not have purchased or leased
them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were
sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would
not have purchased them but for New GM's violations of the Kentucky CPA.

2648.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and
continued to drive their vehicles had they been aware of New GM's misconduct.  By
contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM
effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its
face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing
duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the
Kentucky CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the
form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts
and practices made in the course of New GM's business

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 181 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 681 of 1249

2649.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

2650.   As a direct and proximate result of New GM's violations of the Kentucky CPA, Plaintiffs and the Kentucky Class have suffered injury-in-fact and/or actual damage.

2651.   Pursuant to KY. REV. STAT. ANN. § 367.220, Plaintiffs and the Kentucky Class seek to recover actual damages in an amount to be determined at trial; an order enjoining New GM's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under KY. REV. STAT. ANN. § 367.220.

## COUNT II

## FRAUD BY CONCEALMENT

2652.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2653.   This claim is brought on behalf of Nationwide Class Members who are Kentucky residents (the "Kentucky Class").

2654.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

2655.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

2656.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

- 649 -

Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 882 of 1249

2657.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

2658.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Kentucky Class.  New GM also had a duty to disclose because

it made many general affirmative representations about the safety, quality, and lack of defects in

its vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Kentucky Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

2659.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Kentucky Class.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-3MF Document 135 Filed 09/09/15 Page 383 of 1249
Complaint - Part 2 of 2 Pg 183 of 743

2660. On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Kentucky Class and conceal material information regarding defects that exist in GM-branded vehicles.

2661. Plaintiffs and the Kentucky Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Kentucky Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Kentucky Class.

2662. Because of the concealment and/or suppression of the facts, Plaintiffs and the Kentucky Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies. Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

2663. The value of all Kentucky Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1135    Filed 09/09/15    Page 884 of 1249
Complaint - Part 2 of 2    Pg 184 of 743

greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of
the Affected Vehicles, let alone pay what otherwise would have been fair market value for the
vehicles.

2664.    Accordingly, New GM is liable to the Kentucky Class for damages in an amount
to be proven at trial.

2665.    New GM's acts were done maliciously, oppressively, deliberately, with intent to
defraud, and in reckless disregard of Plaintiffs' and the Kentucky Class's rights and well-being
to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an
amount sufficient to deter such conduct in the future, which amount is to be determined
according to proof.

<div align="center">

**COUNT III**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

2666.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

2667.    This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass
members who are Kentucky residents *and* who owned their Pre-Sale Defective Ignition Switch
Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the
purposes of this claim only, the "Kentucky Pre-Sale ISD Subclass").

2668.    New GM was aware of the ignition switch defects in millions of vehicles sold by
Old GM from the moment it came into existence upon entry of the Sale Order And Sale
Agreement by which New GM acquired substantially all the assets of Old GM.

2669.    As the bankruptcy court found, "As of June 2009, when the entry of the Sale
Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required
… to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

<div align="center">

- 652 -

</div>

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 185 of 743
Case 1:14-md-02543-JMF    Document 1139    Filed 09/09/15    Page 685 of 1249

necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

2670.   The Kentucky Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

2671.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

2672.   Because New GM concealed its knowledge of the ignition switch defect, the Kentucky Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

2673.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2674.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

- 653 -

2675.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

2676.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2677.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2678.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2679.   But for New GM's fraudulent concealment of the ignition switch defects, the Kentucky Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2680.   Had the Kentucky Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-3MF   Document 5135   Filed 09/09/15   Page 887 of 1249
Complaint - Part 2 of 2    Pg 187 of 743

2681.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

2682.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2683.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Kentucky Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Kentucky Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

2684.   Plaintiffs and the Kentucky Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Kentucky Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Kentucky Pre-Sale ISD Subclass.

2685.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Kentucky Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the

- 655 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 888 of 1249
Complaint - Part 2 of 2    Pg 188 of 743

accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

2686.   Accordingly, New GM is liable to the Kentucky Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2687.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Kentucky Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT IV**
**THIRD-PARTY BENEFICIARY CLAIM**

2688.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2689.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Kentucky residents (the "Kentucky Pre-Sale ISD Subclass").

2690.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

- 656 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 189 of 743
Case 1:14-mc-02543-JMF   Document 3135   Filed 09/09/15   Page 889 of 1249

2691.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

2692.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

2693.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2694.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

- 657 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/09/15   Page 690 of 1249
Complaint - Part 2 of 2    Pg 190 of 743

2695.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2696.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2697.   Plaintiffs and the Kentucky Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

2698.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2699.   This claim is brought on behalf of members of the Kentucky Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Kentucky Unjust Enrichment Class").

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 191 of 743
Case 1:14-mc-02543-3MF   Document 135   Filed 07/09/15   Page 691 of 1249

2700.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2701.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

2702.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2703.   Thus, all Kentucky Unjust Enrichment Class Members conferred a benefit on New GM.

2704.   It is inequitable for New GM to retain these benefits.

2705.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

2706.   New GM knowingly accepted the benefits of its unjust conduct.

2707.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-3MF    Document 135    Filed 09/09/15    Page 892 of 1249
Complaint - Part 2 of 2    Pg 192 of 743

# LOUISIANA

## COUNT I

### VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### (LA. REV. STAT. § 51:1401, *et seq*.)

2708.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2709.    This claim is brought only on behalf of Nationwide Class Members who are Louisiana residents (the "Louisiana Class").

2710.    New GM, Plaintiffs, and the Louisiana Class are "persons" within the meaning of the LA. REV. STAT. § 51:1402(8).

2711.    Plaintiffs and the Louisiana Class are "consumers" within the meaning of LA. REV. STAT. § 51:1402(1).

2712.    New GM engaged in "trade" or "commerce" within the meaning of LA. REV. STAT. § 51:1402(9).

2713.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405(A).  New GM both participated in misleading, false, or deceptive acts that violated the Louisiana CPL.  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in deceptive business practices prohibited by the Louisiana CPL.

2714.    In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2715.   From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

Act obligations, as discussed above.  New GM became aware of other serious defects and

systemic safety issues years ago, but concealed all of that information until recently.

2716.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

2717.   According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles, and New GM should have

recalled the vehicles years ago.

2718.   By failing to disclose and by actively concealing the many defects in GM-branded

vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in deceptive business practices in violation of the Louisiana CPL.

2719.   In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

2720.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

2721.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Louisiana Class.

2722.   New GM knew or should have known that its conduct violated the Louisiana CPL.

2723.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2724.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

    a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

- 662 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 195 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 895 of 1249

2725.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

2726.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Louisiana Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

2727.   Plaintiffs and the Louisiana Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.   Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Louisiana CPL.

2728.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 696 of 1249
Complaint - Part 2 of 2 Pg 196 of 743

Louisiana CPL. And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business

2729. New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

2730. As a direct and proximate result of New GM's violations of the Louisiana CPL, Plaintiffs and the Louisiana Class have suffered injury-in-fact and/or actual damage.

2731. Pursuant to LA. REV. STAT. § 51:1409, Plaintiffs and the Louisiana Class seek to recover actual damages in an amount to be determined at trial; treble damages for New GM's knowing violations of the Louisiana CPL; an order enjoining New GM's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under LA. REV. STAT. § 51:1409.

## COUNT II

## FRAUD BY CONCEALMENT

2732. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2733. This claim is brought on behalf of Nationwide Class Members who are Louisiana residents (the "Louisiana Class").

2734. New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

2735. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

010440-11 789697 V1

2736.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

2737.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

2738.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Louisiana Class.  New GM also had a duty to disclose because

it made many general affirmative representations about the safety, quality, and lack of defects in

its vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Louisiana Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 898 of 1249
Complaint - Part 2 of 2    Pg 198 of 743

2739.  New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Louisiana Class.

2740.  On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Louisiana Class and conceal material information regarding defects that exist in GM-branded vehicles.

2741.  Plaintiffs and the Louisiana Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Louisiana Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Louisiana Class.

2742.  Because of the concealment and/or suppression of the facts, Plaintiffs and the Louisiana Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 899 of 1249
Complaint - Part 2 of 2    Pg 199 of 743

less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

2743.   The value of all Louisiana Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2744.   Accordingly, New GM is liable to the Louisiana Class for damages in an amount to be proven at trial.

2745.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Louisiana Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/ WARRANTY AGAINST REDHIBITORY DEFECTS

### (LA. CIV. CODE ART. 2520, 2524)

2746.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2747.   This claim is brought only on behalf of Louisiana residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Louisiana Post-Sale ISD Subclass").

010440-11  789697 V1

2748.   At the time Plaintiffs and the Louisiana Post-Sale ISD Subclass acquired their

Defective Ignition Switch Vehicles, those vehicles had a redhibitory defect within the meaning

of LA. CIV. CODE ART. 2520, in that (a) the defective ignition switches rendered the use of the

Defective Ignition Switch Vehicles so inconvenient that Plaintiffs either would not have

purchased the Defective Ignition Switch Vehicles had they known of the defect, or, because the

defective ignition switches so diminished the usefulness and/or value of the Defective Ignition

Switch Vehicles such that it must be presumed that the Plaintiffs would have purchased the

Defective Ignition Switch Vehicles, but for a lesser price.

2749.   No notice of the defect is required under LA. CIV. CODE ART. 2520, since New

GM had knowledge of a redhibitory defect in the Defective Ignition Switch Vehicles at the time

they were sold to Plaintiffs and the Louisiana Post-Sale ISD Subclass.

2750.   Under LA. CIV. CODE ART. 2524, a warranty that the Defective Ignition Switch

Vehicles were in merchantable condition, or fit for ordinary use, was implied by law in the

transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from

New GM on or after July 11, 2009.

2751.   These vehicles, when sold and at all times thereafter, were not merchantable and

are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition

Switch Vehicles are inherently defective in that there are defects in the ignition switch systems

that permit sudden unintended shutdown to occur, with the attendant shut down of power

steering and power brakes and the nondeployment of airbags in the event of a collision.

2752.   New GM was provided notice of these issues by numerous complaints filed

against it, internal investigations, and by numerous individual letters and communications sent

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1138    Filed 09/09/15    Page 201 of 1249
Complaint - Part 2 of 2    Pg 201 of 743

by Plaintiffs and the Louisiana Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

2753.   As a direct and proximate result of New GM's sale of vehicles with redhibitory defects, and in violation of the implied warranty that the Defective Ignition Switch Vehicles were fit for ordinary use, Plaintiffs and the Louisiana Post-Sale ISD Subclass are entitled to either rescission or damages in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

2754.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2755.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Louisiana residents ***and*** who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Louisiana Pre-Sale ISD Subclass").

2756.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

2757.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-3MF   Document 3138   Filed 09/09/15   Page 702 of 1249
Complaint - Part 2 of 2   Pg 202 of 743

2758.   The Louisiana Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

2759.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

2760.   Because New GM concealed its knowledge of the ignition switch defect, the Louisiana  Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

2761.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2762.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

2763.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

010440-11  789697 V1

Case 14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 203 of 1249

2764.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2765.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2766.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2767.   But for New GM's fraudulent concealment of the ignition switch defects, the Louisiana  Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2768.   Had the Louisiana Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

2769.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 204 of 743
Case 1:14-mc-02543-JMF    Document 1135    Filed 09/09/15    Page 204 of 1249

2770.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2771.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Louisiana Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Louisiana Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

2772.   Plaintiffs and the Louisiana Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Louisiana Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Louisiana Pre-Sale ISD Subclass.

2773.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Louisiana Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 205 of 1249
Complaint - Part 2 of 2    Pg 205 of 743

2774.   Accordingly, New GM is liable to the Louisiana Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2775.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Louisiana Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

2776.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2777.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Louisiana residents (the "Louisiana Pre-Sale ISD Subclass").

2778.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

2779.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

2780.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

- 673 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 206 of 743
Case 14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 706 of 1249

to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

2781.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2782.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

2783.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale

- 674 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 707 of 1249
Complaint - Part 2 of 2 Pg 207 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2784. New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2785. Plaintiffs and the Louisiana Pre-Sale ISD Subclass were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

2786. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2787. This claim is brought on behalf of members of the Louisiana Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Louisiana Unjust Enrichment Class").

2788. New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2789. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

- 675 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 708 of 1249
Complaint - Part 2 of 2   Pg 208 of 743

2790.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2791.   Thus, all Louisiana Unjust Enrichment Class Members conferred a benefit on New GM.

2792.   It is inequitable for New GM to retain these benefits.

2793.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

2794.   New GM knowingly accepted the benefits of its unjust conduct.

2795.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## MAINE

## COUNT I

## VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT

### (ME. REV. STAT. ANN. TIT. 5 § 205-A, *et seq*.)

2796.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2797.   This claim is brought only on behalf of Nationwide Class Members who are Maine residents (the "Maine Class").

2798.   New GM, Plaintiffs, and the Maine Class are "persons" within the meaning of ME. REV. STAT. ANN. TIT. § 206(2).

- 676 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 209 of 1249
Complaint - Part 2 of 2    Pg 209 of 743

2799.   New GM is engaged in "trade" or "commerce" within the meaning of ME. REV.
STAT. ANN. TIT. § 206(3).

2800.   The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair
methods of competition and unfair or deceptive acts or practices in the conduct of any trade or
commerce…."  ME. REV. STAT. ANN. TIT. 5 § 207.  In the course of New GM's business,
New GM engaged in unfair or deceptive acts or practices by systematically devaluing safety and
concealing a plethora of defects in GM-branded vehicles.  New GM participated in misleading,
false, or deceptive acts that violated the Maine UTPA.

2801.   In the course of its business, New GM systematically devalued safety and
concealed a plethora of defects in GM-branded vehicles as described herein and otherwise
engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful
trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or
concealment, suppression or omission of any material fact with intent that others rely upon such
concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2802.   From the date of its inception on July 11, 2009, New GM knew of many serious
defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge
of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and
notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD
Act obligations, as discussed above.  New GM became aware of other serious defects and
systemic safety issues years ago, but concealed all of that information until recently.

2803.   New GM was also aware that it valued cost-cutting over safety, selected parts
from the cheapest supplier regardless of quality, and actively discouraged employees from
finding and flagging known safety defects, and that this approach would necessarily cause the

- 677 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/09/15 Page 3 of 124
Complaint - Part 2 of 2 Pg 210 of 743

existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

2804. According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

2805. By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Maine UTPA.

2806. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

2807. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

2808. New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Maine Class.

2809. New GM knew or should have known that its conduct violated the Maine UTPA.

2810. As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 311 of 1249
Complaint - Part 2 of 2    Pg 211 of 743

2811.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.    Possessed exclusive knowledge that it valued cost-cutting
> over safety, selected parts from the cheapest supplier
> regardless of quality, and actively discouraged employees
> from finding and flagging known safety defects, and that
> this approach would necessarily cause the existence of
> more defects in the vehicles it designed and manufactured;
>
> b.    Intentionally concealed the foregoing from Plaintiffs;
> and/or
>
> c.    Made incomplete representations about the safety and
> reliability of the Affected Vehicles generally, and the
> ignition switch and other defects in particular, while
> purposefully withholding material facts from Plaintiffs that
> contradicted these representations.

2812.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

2813.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Maine Class.  A vehicle made

by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

2814.   Plaintiffs and the Maine Class suffered ascertainable loss caused by New GM's

misrepresentations and its concealment of and failure to disclose material information.  ,

Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either

would have paid less for their vehicles or would not have purchased or leased them at all.  .  For

- 679 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 212 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 212 of 1249

Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as

"Certified Pre-Owned," they too either would have paid less for their vehicles or would not have

purchased them but for New GM's violations of the Maine UTPA.

2815.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Maine UTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form

of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and

practices made in the course of New GM's business.

2816.   New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

2817.   As a direct and proximate result of New GM's violations of the Maine UTPA,

Plaintiffs and the Maine Class have suffered injury-in-fact and/or actual damage.

2818.   Pursuant to ME. REV. STAT. ANN. TIT. 5 § 213, Plaintiffs and the Maine Class seek

an order enjoining New GM's unfair and/or deceptive acts or practices, damages, punitive

damages, and attorneys' fees, costs, and any other just and proper relief available under the

Maine UTPA.

2819.   On October 8, 2014, certain Plaintiffs sent a letter complying with ME. REV.

STAT. ANN. TIT. 5, § 213(1-A).  Because New GM failed to remedy its unlawful conduct within

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-3MF   Document 135   Filed 09/25/15   Page 3 of 1249
Complaint - Part 2 of 2    Pg 213 of 743

the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Maine

Class are entitled.

<p style="text-align:center">COUNT II</p>

<p style="text-align:center">FRAUD BY CONCEALMENT</p>

2820.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2821.   This claim is brought on behalf of Nationwide Class Members who are

Maine residents (the "Maine Class").

2822.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

2823.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

2824.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

2825.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

2826.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

<p style="text-align:center">- 681 -</p>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 214 of 743
Case 1:14-mc-02543-3MF   Document 135   Filed 09/09/15   Page 3 of 144

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Maine Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Maine Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

2827.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Maine Class.

2828.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Maine Class and conceal material information regarding defects that exist in GM-branded vehicles.

2829.   Plaintiffs and the Maine Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 215 of 1243
Complaint - Part 2 of 2    Pg 215 of 743

would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Maine Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Maine Class.

2830.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Maine Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

2831.   The value of all Maine Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2832.   Accordingly, New GM is liable to the Maine Class for damages in an amount to be proven at trial.

2833.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Maine Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount

010440-11  789697 V1

sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (ME. REV. STAT. ANN. TIT. 11 § 2-314)

2834.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2835.   This claim is brought only on behalf of Maine residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Maine Post-Sale ISD Subclass").

2836.   New GM was a merchant with respect to motor vehicles within the meaning of ME. REV. STAT. ANN. TIT. 11 § 2-104(1).

2837.   Under ME. REV. STAT. ANN. TIT. 11 § 2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

2838.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

2839.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Maine Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

- 684 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 217 of 1249
Complaint - Part 2 of 2    Pg 217 of 743

2840.    As a direct and proximate result of New GM's breach of the implied warranty of merchantability,  Plaintiffs and the Maine Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

2841.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2842.    This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Maine residents **and** who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Maine Pre-Sale ISD Subclass").

2843.    New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

2844.    As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

2845.    The Maine Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice

<div align="center">

- 685 -

</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-3MF   Document 1135   Filed 09/09/15   Page 218 of 1249
Complaint - Part 2 of 2    Pg 218 of 743

nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

2846.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

2847.   Because New GM concealed its knowledge of the ignition switch defect, the Maine Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

2848.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2849.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

2850.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

- 686 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 219 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 319 of 1249

2851.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2852.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2853.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2854.   But for New GM's fraudulent concealment of the ignition switch defects, the Maine Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2855.   Had the Maine Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

2856.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 220 of 743
Case 1:14-mc-02543-3MF   Document 1135   Filed 09/09/15   Page 220 of 1249

2857.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2858.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Maine Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Maine Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

2859.   Plaintiffs and the Maine Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Maine Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Maine Pre-Sale ISD Subclass.

2860.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Maine Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 221 of 743
Case 1:14-mc-02543-JMF    Document 3135    Filed 09/09/15    Page 221 of 1249

2861.   Accordingly, New GM is liable to the Maine Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2862.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Maine Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT V**
**THIRD-PARTY BENEFICIARY CLAIM**

2863.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2864.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Maine residents (the "Maine Pre-Sale ISD Subclass").

2865.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

2866.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

2867.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

010440-11 789697 V1

to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

2868.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2869.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

2870.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale

- 690 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 223 of 1249
Complaint - Part 2 of 2   Pg 223 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2871.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2872.   Plaintiffs and the Maine Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

2873.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2874.   This claim is brought on behalf of members of the Maine Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Maine Unjust Enrichment Class").

2875.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2876.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

2877.    With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2878.    Thus, all Maine Unjust Enrichment Class Members conferred a benefit on New GM.

2879.    It is inequitable for New GM to retain these benefits.

2880.    Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

2881.    New GM knowingly accepted the benefits of its unjust conduct.

2882.    As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## MARYLAND

## COUNT I

## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT

### (MD. CODE COM. LAW § 13-101, *et seq.*)

2883.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2884.    This claim is brought only on behalf of Nationwide Class Members who are Maryland residents.

2885.    New GM, Plaintiffs, and the Maryland Class are "persons" within the meaning of MD. CODE COM. LAW § 13-101(h).

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 225 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 725 of 1249

2886.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a
person may not engage in any unfair or deceptive trade practice in the sale of any consumer
good.  MD. COM. LAW CODE § 13-303.  New GM participated in misleading, false, or deceptive
acts that violated the Maryland CPA.  By systematically devaluing safety and concealing a
plethora of defects in GM-branded vehicles, New GM engaged in deceptive business practices
prohibited by the Maryland CPA.

2887.   New GM's actions as set forth above occurred in the conduct of trade or
commerce.

2888.   In the course of its business, New GM systematically devalued safety and
concealed a plethora of defects in GM-branded vehicles as described herein and otherwise
engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful
trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or
concealment, suppression or omission of any material fact with intent that others rely upon such
concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2889.   From the date of its inception on July 11, 2009, New GM knew of many serious
defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge
of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and
notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD
Act obligations, as discussed above.  New GM became aware of other serious defects and
systemic safety issues years ago, but concealed all of that information until recently.

2890.   New GM was also aware that it valued cost-cutting over safety, selected parts
from the cheapest supplier regardless of quality, and actively discouraged employees from
finding and flagging known safety defects, and that this approach would necessarily cause the

- 693 -

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

2891.   According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles, and New GM should have

recalled the vehicles years ago.

2892.   By failing to disclose and by actively concealing the many defects in GM-branded

vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in unfair and deceptive business practices in violation of the Maryland CPA.

2893.   In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

2894.   New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the

true value of the Affected Vehicles.

2895.   New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with an intent to mislead Plaintiffs and the Maryland Class.

2896.   New GM knew or should have known that its conduct violated the Maryland

CPA.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 227 of 249
Complaint - Part 2 of 2    Pg 227 of 743

2897.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2898.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

      a.      Possessed exclusive knowledge that it valued cost-cutting
over safety, selected parts from the cheapest supplier
regardless of quality, and actively discouraged employees
from finding and flagging known safety defects, and that
this approach would necessarily cause the existence of
more defects in the vehicles it designed and manufactured;

      b.      Intentionally concealed the foregoing from Plaintiffs;
and/or

      c.      Made incomplete representations about the safety and
reliability of the Affected Vehicles generally, and the
ignition switch and other defects in particular, while
purposefully withholding material facts from Plaintiffs that
contradicted these representations.

2899.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

2900.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Maryland Class.  A vehicle

made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

2901.   Plaintiffs and the Maryland Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 228 of 743
Case 114-md-02543-JMF   Document 1135   Filed 09/09/15   Page 728 of 1249

information.  , Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

them at all.  .  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that

were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or

would not have purchased them but for New GM's violations of the Maryland CPA.

2902.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Maryland CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the

form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts

and practices made in the course of New GM's business.

2903.  New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

2904.  As a direct and proximate result of New GM's violations of the Maryland CPA,

Plaintiffs and the Maryland Class have suffered injury-in-fact and/or actual damage.

2905.  Pursuant to MD. CODE COM. LAW § 13-408, Plaintiffs and the Maryland Class

seek actual damages, attorneys' fees, and any other just and proper relief available under the

Maryland CPA.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1135    Filed 09/09/15    Page 229 of 1249
Complaint - Part 2 of 2    Pg 229 of 743

## COUNT II

## FRAUD BY CONCEALMENT

2906.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

2907.    This claim is brought on behalf of Nationwide Class Members who are
Maryland residents (the "Maryland Class").

2908.    New GM concealed and suppressed material facts concerning the quality of its
vehicles and the GM brand.

2909.    New GM concealed and suppressed material facts concerning the culture of New
GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety
issues, and a shoddy design process.

2910.    New GM concealed and suppressed material facts concerning the many serious
defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps
to ensure that its employees did not reveal known safety defects to regulators or consumers.

2911.    New GM did so in order to boost confidence in its vehicles and falsely assure
purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was
a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles
are safe and reliable. The false representations were material to consumers, both because they
concerned the quality and safety of the Affected Vehicles and because the representations played
a significant role in the value of the vehicles.

2912.    New GM had a duty to disclose the many defects in GM-branded vehicles
because they were known and/or accessible only to New GM, were in fact known to New GM as
of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge
and access to the facts, and New GM knew the facts were not known to or reasonably

- 697 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 530 of 1243
Complaint - Part 2 of 2   Pg 230 of 743

discoverable by Plaintiffs and the Maryland Class.  New GM also had a duty to disclose because

it made many general affirmative representations about the safety, quality, and lack of defects in

its vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Maryland Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

    2913.  New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Maryland Class.

    2914.  On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Maryland Class and conceal material

information regarding defects that exist in GM-branded vehicles.

    2915.  Plaintiffs and the Maryland Class were unaware of these omitted material facts

and would not have acted as they did if they had known of the concealed and/or suppressed facts,

in that they would not have purchased cars manufactured by New GM; and/or they would not

have purchased cars manufactured by Old GM in the time after New GM had come into

existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the

vehicles; and/or would not have continued to drive their vehicles or would have taken other

affirmative steps.  Plaintiffs' and the Maryland Class's actions were justified.  New GM was in

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 07/09/15   Page 731 of 1249
Complaint - Part 2 of 2    Pg 231 of 743

exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Maryland Class.

2916.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Maryland Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

2917.   The value of all Maryland Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2918.   Accordingly, New GM is liable to the Maryland Class for damages in an amount to be proven at trial.

2919.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Maryland Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 232 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 02/09/15    Page 732 of 1249

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (MD. CODE COM. LAW § 2-314)

2920.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2921.   This claim is brought only on behalf of Maryland residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Maryland Post-Sale ISD Subclass").

2922.   New GM was a merchant with respect to motor vehicles within the meaning of MD. COM. LAW § 2-104(1).

2923.   Under MD. COM. LAW § 2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

2924.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

2925.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Maryland Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/09/15   Page 733 of 1249
Complaint - Part 2 of 2   Pg 233 of 743

2926.   As a direct and proximate result of New GM's breach of the implied warranty of

merchantability, Plaintiffs and the Maryland Post-Sale ISD Subclass members have been

damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

2927.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2928.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass

members who are Maryland residents *and* who owned their Pre-Sale Defective Ignition Switch

Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the

purposes of this claim only, the "Maryland Pre-Sale ISD Subclass").

2929.   New GM was aware of the ignition switch defects in millions of vehicles sold by

Old GM from the moment it came into existence upon entry of the Sale Order And Sale

Agreement by which New GM acquired substantially all the assets of Old GM.

2930.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale

Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required

… to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

necessarily had this same knowledge from day one of its existence, as the bankruptcy court

found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition

Switch Defect prior to the Sale Motion."

2931.   The Maryland Pre-Sale ISD Subclass did not receive notice of the ignition switch

defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice

<div align="center">- 701 -</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 234 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 734 of 1249

nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

2932.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

2933.   Because New GM concealed its knowledge of the ignition switch defect, the Maryland Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

2934.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

2935.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

2936.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 735 of 1249
Complaint - Part 2 of 2    Pg 235 of 743

2937.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

2938.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

2939.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

2940.   But for New GM's fraudulent concealment of the ignition switch defects, the Maryland Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

2941.   Had the Maryland Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

2942.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 3135    Filed 09/09/15    Page 736 of 1249
Complaint - Part 2 of 2    Pg 236 of 743

2943.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

2944.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Maryland Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Maryland Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

2945.   Plaintiffs and the Maryland Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Maryland Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Maryland Pre-Sale ISD Subclass.

2946.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Maryland Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 237 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 337 of 1249

2947.   Accordingly, New GM is liable to the Maryland Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

2948.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Maryland Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

2949.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2950.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Maryland residents (the "Maryland Pre-Sale ISD Subclass").

2951.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

2952.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

2953.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

- 705 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1135    Filed 09/09/15    Page 738 of 1249
Complaint - Part 2 of 2    Pg 238 of 743

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

2954. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2955. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

2956. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/05/15   Page 239 of 1249
Complaint - Part 2 of 2    Pg 239 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

2957.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

2958.   Plaintiffs and the Maryland Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

2959.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2960.   This claim is brought on behalf of members of the Maryland Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Maryland Unjust Enrichment Class").

2961.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

2962.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 240 of 1249
Complaint - Part 2 of 2    Pg 240 of 743

2963.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

2964.   Thus, all Maryland Unjust Enrichment Class Members conferred a benefit on New GM.

2965.   It is inequitable for New GM to retain these benefits.

2966.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

2967.   New GM knowingly accepted the benefits of its unjust conduct.

2968.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## MASSACHUSETTS

## COUNT I

## DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW

### (MASS. GEN. LAWS CH. 93A, § 1, *et seq.*)

2969.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2970.   This claim is brought only on behalf of Nationwide Class Members who are Massachusetts residents (the "Massachusetts Class").

2971.   New GM, Plaintiffs, and the Massachusetts Class are "persons" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(a).

010440-11 789697 V1

Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 741 of 1249

2972.   New GM engaged in "trade" or "commerce" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(b).

2973.   Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  MASS. GEN. LAWS ch. 93A, § 2. New GM both participated in misleading, false, or deceptive acts that violated the Massachusetts Act.  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in deceptive business practices prohibited by the Massachusetts Act.

2974.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

2975.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

2976.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

2977.  According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles, and New GM should have

recalled the vehicles years ago.

2978.  By failing to disclose and by actively concealing the many defects in GM-branded

vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in unfair and deceptive business practices in violation of the Massachusetts

Act.

2979.  In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

2980.  New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

2981.  New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with an intent to mislead Plaintiffs and the Massachusetts Class.

2982.  New GM knew or should have known that its conduct violated the Massachusetts

Act.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 743 of 1249
Complaint - Part 2 of 2    Pg 243 of 743

2983.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles and the GM brand that were either false or misleading.

2984.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

a.    Possessed exclusive knowledge that it valued cost-cutting
over safety, selected parts from the cheapest supplier
regardless of quality, and actively discouraged employees
from finding and flagging known safety defects, and that
this approach would necessarily cause the existence of
more defects in the vehicles it designed and manufactured;

b.    Intentionally concealed the foregoing from Plaintiffs;
and/or

c.    Made incomplete representations about the safety and
reliability of the Affected Vehicles generally, and the
ignition switch and other defects in particular, while
purposefully withholding material facts from Plaintiffs that
contradicted these representations.

2985.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

2986.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Massachusetts Class.  A

vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an

otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that

conceals defects rather than promptly remedies them.

2987.   Plaintiffs and the Massachusetts Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

information.  , Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

them at all.  .  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that

were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or

would not have purchased them but for New GM's violations of the Massachusetts Act.

2988.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Massachusetts Act.  And, in any event, all GM vehicle owners suffered ascertainable loss in the

form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts

and practices made in the course of New GM's business.

2989.  New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

2990.  As a direct and proximate result of New GM's violations of the Massachusetts

Act, Plaintiffs and the Massachusetts Class have suffered injury-in-fact and/or actual damage.

2991.  Pursuant to MASS. GEN. LAWS ch. 93A, § 9, Plaintiffs and the Massachusetts

Class seek monetary relief against New GM measured as the greater of (a) actual damages in an

amount to be determined at trial and (b) statutory damages in the amount of $25 for each

Plaintiff and each Massachusetts Class member.  Because New GM's conduct was committed

09-50026-mg  Doc 13469-3  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 135  Filed 09/09/15  Page 745 of 1249
Complaint - Part 2 of 2    Pg 245 of 743

willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff and each

Massachusetts Class member, up to three times actual damages, but no less than two times actual

damages.

2992.   Plaintiffs also seek an order enjoining New GM's unfair and/or deceptive acts or

practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief

available under the Massachusetts Act.

2993.   On October 8, 2014, certain Plaintiffs sent a letter complying with MASS. GEN.

LAWS ch. 93A, § 9(3).  Because New GM failed to remedy its unlawful conduct within the

requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the

Massachusetts Class are entitled.

<div align="center">

### COUNT II

### FRAUD BY CONCEALMENT

</div>

2994.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

2995.   This claim is brought on behalf of Nationwide Class Members who are

Massachusetts residents (the "Massachusetts Class").

2996.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

2997.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

2998.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

<div align="center">- 713 -</div>

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 07/09/15 Page 746 of 1249
Complaint - Part 2 of 2    Pg 246 of 743

2999.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

3000.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Massachusetts Class.  New GM also had a duty to disclose

because it made many general affirmative representations about the safety, quality, and lack of

defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete

without the disclosure of the additional facts set forth above regarding its actual safety record,

safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered

to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Massachusetts Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

3001.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Massachusetts Class.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Complaint - Part 2 of 2 Pg 247 of 743
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 747 of 1249

3002.  On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Massachusetts Class and conceal material information regarding defects that exist in GM-branded vehicles.

3003.  Plaintiffs and the Massachusetts Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Massachusetts Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Massachusetts Class.

3004.  Because of the concealment and/or suppression of the facts, Plaintiffs and the Massachusetts Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

3005.  The value of all Massachusetts Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Complaint - Part 2 of 2 Pg 248 of 743
Case 1:14-mc-02543-3MF Document 135 Filed 09/05/15 Page 748 of 1249

which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3006.   Accordingly, New GM is liable to the Massachusetts Class for damages in an amount to be proven at trial.

3007.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Massachusetts Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(ALM GL. Ch. 106, § 2-314)**

</div>

3008.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3009.   This claim is brought only on behalf of Massachusetts residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Massachusetts Post-Sale ISD Subclass").

3010.   New GM was a merchant with respect to motor vehicles within the meaning of ALM GL Ch. 106, § 2-104(1).

3011.   Under ALM GL Ch. 106, § 2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

<div align="center">

- 716 -

</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 749 of 1243
Complaint - Part 2 of 2    Pg 249 of 743

3012.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

3013.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Massachusetts Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

3014.   As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Massachusetts Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

3015.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3016.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Massachusetts residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Massachusetts Pre-Sale ISD Subclass").

3017.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

<div align="center">

- 717 -

</div>

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 5135 Filed 09/09/15 Page 250 of 1249
Complaint - Part 2 of 2    Pg 250 of 743

3018.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

3019.   The Massachusetts Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

3020.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3021.   Because New GM concealed its knowledge of the ignition switch defect, the Massachusetts Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3022.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 251 of 743
Case 1:14-mc-02543-JMF   Document 3135   Filed 09/25/15   Page 251 of 1245

3023.   The out-of-pocket consideration provided by New GM for its acquisition of Old
GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two
series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively,
the "New GM Securities").

3024.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it
would provide additional consideration if the aggregate amount of allowed general unsecured
claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares
of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

3025.   As of September 30, 2014, the total amount of Allowed Claims was
approximately $31.854 billion, and the total amount of Disputed Claims was approximately
$79.5 million.

3026.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the
New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC
Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the
GUC Trust's expenses and existing beneficiaries of the Trust.

3027.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass
members were deprived of Due Process because they did not receive notice of the ignition switch
defects prior to the passage of the Bar Date.  While the court found that these vehicle owners
may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-
Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3028.   But for New GM's fraudulent concealment of the ignition switch defects, the
Massachusetts Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass
members from every state) would have filed claims against Old GM before the Bar Date.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 252 of 743
Case 1:14-md-02543-JMF    Document 1135    Filed 02/05/15    Page 752 of 1249

3029.   Had the Massachusetts Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

3030.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

3031.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

3032.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Massachusetts Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Massachusetts Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3033.   Plaintiffs and the Massachusetts Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Massachusetts Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Massachusetts Pre-Sale ISD Subclass.

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 253 of 743
Case 1:14-md-02543-JMF    Document 1139    Filed 09/09/15    Page 753 of 1249

3034.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Massachusetts Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

3035.   Accordingly, New GM is liable to the Massachusetts Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

3036.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Massachusetts Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

3037.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3038.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Massachusetts residents (the "Massachusetts Pre-Sale ISD Subclass").

3039.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent

- 721 -

applicable in respect of vehicles and vehicle parts manufactured or
distributed by [Old GM].

3040.  With the exception of the portion of the agreement that purports to immunize New
GM from its own independent misconduct with respect to cars and parts made by Old GM, the
Sales Agreement is a valid and binding contract.

3041.  But for New GM's covenant to comply with the TREAD Act with respect to cars
and parts made by Old GM, the TREAD Act would have no application to New GM with respect
to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall
obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

3042.   Because New GM agreed to comply with the TREAD Act with respect to vehicles
manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly
submissions to NHTSA of "early warning reporting" data, including incidents involving death,
injury, or property damage, warranty claims, consumer complaints, and field reports concerning
failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. §
30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the
early warning reports are based and all records containing information on malfunctions that may
be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate*
remedial action if it knows or should know that a safety defect exists – including notifying
NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R.
§ 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3043.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM,
are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.
Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 255 of 1249
Complaint - Part 2 of 2    Pg 255 of 743

responsible for monitoring the safety of their Old GM vehicles and making certain that any

known safety defects would be promptly remedied.

3044.   Although the Sale Order which consummated New GM's purchase of Old GM

purported to give New GM immunity from claims concerning vehicles or parts made by Old

GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM

can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made

by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on

New GM's post-sale breaches of the promise it made in the Sale Agreement.

3045.   New GM breached its covenant to comply with the TREAD Act with respect to

the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the

Ignition Switch Defect until 2014 when it finally issued a recall.

3046.   Plaintiffs and the Massachusetts Pre-Sale ISD Subclass were damaged as a result

of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect,

the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be

determined at trial.

<div align="center">

**COUNT VI**

**UNJUST ENRICHMENT**

</div>

3047.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

3048.   This claim is brought on behalf of members of the Massachusetts Class who

purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New

GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 256 of 1249
Complaint - Part 2 of 2   Pg 256 of 743

time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Massachusetts Unjust Enrichment Class").

3049.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

3050.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

3051.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

3052.   Thus, all Massachusetts Unjust Enrichment Class Members conferred a benefit on New GM.

3053.   It is inequitable for New GM to retain these benefits.

3054.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

3055.   New GM knowingly accepted the benefits of its unjust conduct.

3056.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 257 of 1249
Complaint - Part 2 of 2    Pg 257 of 743

# MICHIGAN

## COUNT I

## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

### (MICH. COMP. LAWS § 445.903, *et seq.*)

3057.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3058.   This claim is brought only on behalf of Nationwide Class Members who are Michigan residents (the "Michigan Class").

3059.   Plaintiffs and the Michigan Class Members were "person[s]" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

3060.   At all relevant times hereto, New GM was a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and (g).

3061.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce …."  MICH. COMP. LAWS § 445.903(1).  New GM engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including:  "(c) Representing that goods or services have . . . characteristics . . . that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of

- 725 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 258 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 758 of 1249

representations of fact made in a positive manner."  MICH. COMP. LAWS § 445.903(1).  By

systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles,

New GM participated in unfair, deceptive, and unconscionable acts that violated the Michigan

CPA.

     3062.   In the course of its business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

     3063.   From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

Act obligations, as discussed above.  New GM became aware of other serious defects and

systemic safety issues years ago, but concealed all of that information until recently.

     3064.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

3065.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

3066.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair, unconscionable, and deceptive business practices in violation of the Michigan CPA.

3067.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

3068.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

3069.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Michigan Class.

3070.   New GM knew or should have known that its conduct violated the Michigan CPA.

3071.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1138   Filed 09/09/15   Page 760 of 1249
Complaint - Part 2 of 2   Pg 260 of 743

3072.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

> b.   Intentionally concealed the foregoing from Plaintiffs; and/or

> c.   Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

3073.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

3074.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Michigan Class.  A vehicle

made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

3075.   Plaintiffs and the Michigan Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

information.  , Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/05/13   Page 361 of 1249
Complaint - Part 2 of 2   Pg 261 of 743

them at all.  .  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that

were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or

would not have purchased them but for New GM's violations of the Michigan CPA.

3076.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Michigan CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the

form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts

and practices made in the course of New GM's business.

3077.  New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

3078.  As a direct and proximate result of New GM's violations of the Michigan CPA,

Plaintiffs and the Michigan Class have suffered injury-in-fact and/or actual damage.

3079.  Plaintiffs seek injunctive relief to enjoin New GM from continuing its unfair and

deceptive acts; monetary relief against New GM measured as the greater of (a) actual damages in

an amount to be determined at trial and (b) statutory damages in the amount of $250 for

Plaintiffs and each Michigan Class member; reasonable attorneys' fees; and any other just and

proper relief available under MICH. COMP. LAWS § 445.911.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/09/15 Page 762 of 1249
Complaint - Part 2 of 2 Pg 262 of 743

3080.   Plaintiffs also seek punitive damages against New GM because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others. New GM intentionally and willfully misrepresented the safety and reliability of the Affected Vehicles, deceived Plaintiffs and Michigan Class Members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in vehicles it repeatedly promised Plaintiffs and Michigan Class Members were safe.  New GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II

## FRAUD BY CONCEALMENT

3081.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3082.   This claim is brought on behalf of Nationwide Class Members who are Michigan residents (the "Michigan Class").

3083.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

3084.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

3085.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

3086.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-3MF Document 5135 Filed 09/09/15 Page 763 of 1249
Complaint - Part 2 of 2    Pg 263 of 743

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

3087.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Michigan Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Michigan Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

3088.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Michigan Class.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-mc-02543-3MF Document 135 Filed 09/09/15 Page 364 of 1249
Complaint - Part 2 of 2    Pg 264 of 743

3089.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Michigan Class and conceal material information regarding defects that exist in GM-branded vehicles.

3090.   Plaintiffs and the Michigan Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Michigan Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Michigan Class.

3091.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Michigan Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

3092.   The value of all Michigan Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 265 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 765 of 1249

greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3093.   Accordingly, New GM is liable to the Michigan Class for damages in an amount to be proven at trial.

3094.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Michigan Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div style="text-align:center">

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(MICH. COMP. LAWS § 440.2314)**

</div>

3095.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3096.   This claim is brought only on behalf of Michigan residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Michigan Post-Sale ISD Subclass").

3097.   New GM was a merchant with respect to motor vehicles within the meaning of MICH. COMP. LAWS § 440.2314(1).

3098.   Under MICH. COMP. LAWS § 440.2314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased  or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

<div style="text-align:center">- 733 -</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1138   Filed 06/05/15   Page 766 of 1249
Complaint - Part 2 of 2   Pg 266 of 743

3099.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

3100.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Michigan Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

3101.   As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Michigan Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

## COUNT IV
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

3102.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3103.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Michigan residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Michigan Pre-Sale ISD Subclass").

3104.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2     Pg 267 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 267 of 1249

3105.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

3106.   The Michigan Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

3107.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3108.   Because New GM concealed its knowledge of the ignition switch defect, the Michigan Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3109.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1138 Filed 09/25/15 Page 768 of 1249
Complaint - Part 2 of 2 Pg 268 of 743

3110.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

3111.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

3112.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3113.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3114.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3115.   But for New GM's fraudulent concealment of the ignition switch defects, the Michigan Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 369 of 1249
Complaint - Part 2 of 2    Pg 269 of 743

3116.   Had the Michigan Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

3117.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

3118.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

3119.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Michigan Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Michigan Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3120.   Plaintiffs and the Michigan Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Michigan Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Michigan Pre-Sale ISD Subclass.

010440-11  789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1135    Filed 09/09/15    Page 370 of 1249
Complaint - Part 2 of 2    Pg 270 of 743

3121.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Michigan Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

3122.   Accordingly, New GM is liable to the Michigan Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

3123.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Michigan Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

3124.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3125.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Michigan residents (the "Michigan Pre-Sale ISD Subclass").

3126.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent

Case 1:14-md-02543-JMF   Document 1139   Filed 09/09/15   Page 371 of 1249

applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

3127.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

3128.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

3129.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3130.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 5139    Filed 09/09/15    Page 272 of 1249
Complaint - Part 2 of 2    Pg 272 of 743

responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

3131.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

3132.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

3133.   Plaintiffs and the Michigan Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

3134.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3135.   This claim is brought on behalf of members of the Michigan Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Entered 09/09/15 Page 273 of 1249
Complaint - Part 2 of 2 Pg 273 of 743

period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Michigan Unjust Enrichment Class").

3136. New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

3137. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

3138. With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

3139. Thus, all Michigan Unjust Enrichment Class Members conferred a benefit on New GM.

3140. It is inequitable for New GM to retain these benefits.

3141. Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

3142. New GM knowingly accepted the benefits of its unjust conduct.

3143. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1135 Filed 09/09/15 Page 374 of 1249
Complaint - Part 2 of 2 Pg 274 of 743

**MINNESOTA**

**COUNT I**

**VIOLATION OF MINNESOTA PREVENTION
OF CONSUMER FRAUD ACT**

(MINN. STAT. § 325F.68, *et seq.*)

3144.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3145.   This claim is brought only on behalf of Nationwide Class Members who are Minnesota residents (the "Minnesota Class").

3146.   The Affected Vehicles constitute "merchandise" within the meaning of MINN. STAT. § 325F.68(2).

3147.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . ." MINN. STAT. § 325F.69(1).  New GM participated in misleading, false, or deceptive acts that violated the Minnesota CFA.  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in deceptive business practices prohibited by the Minnesota CFA.

3148.   New GM's actions as set forth above occurred in the conduct of trade or commerce.

3149.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

- 742 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 375 of 1243
Complaint - Part 2 of 2    Pg 275 of 743

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

3150.   From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

Act obligations, as discussed above.  New GM became aware of other serious defects and

systemic safety issues years ago, but concealed all of that information until recently.

3151.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

3152.   According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles, and New GM should have

recalled the vehicles years ago.

3153.   By failing to disclose and by actively concealing the many defects in GM-branded

vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in deceptive business practices in violation of the Minnesota CFA.

3154.   In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

3155. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

3156. New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Minnesota Class.

3157. New GM knew or should have known that its conduct violated the Minnesota CFA.

3158. As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

3159. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

    a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 377 of 1249
Complaint - Part 2 of 2    Pg 277 of 743

3160.   Because New GM fraudulently concealed the many defects in <mark>GM-branded</mark> <mark>vehicles,</mark> resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

3161.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in <mark>GM-branded vehicles</mark> were material to Plaintiffs and the Minnesota Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

3162.   Plaintiffs and the Minnesota Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased <mark>GM-branded vehicles</mark> after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Minnesota CFA.

3163.   <mark>Regardless of time of purchase or lease,</mark> no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to <mark>all GM vehicle owners</mark> to refrain from unfair and deceptive acts or practices under the

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 133   Filed 09/09/15   Page 278 of 1249
Complaint - Part 2 of 2    Pg 278 of 743

Minnesota CFA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

3164.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

3165.   As a direct and proximate result of New GM's violations of the Minnesota CFA, Plaintiffs and the Minnesota Class have suffered injury-in-fact and/or actual damage.

3166.   Pursuant to MINN. STAT. § 8.31(3a), Plaintiffs and the Minnesota Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

3167.   Plaintiffs also seek punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that New GM's acts show deliberate disregard for the rights or safety of others.

### COUNT II

### VIOLATION OF MINNESOTA UNIFORM
### DECEPTIVE TRADE PRACTICES ACT

### (MINN. STAT. § 325D.43-48, *et seq.*)

3168.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3169.   This claim is brought only on behalf of Nationwide Class Members who are Minnesota residents (the "Minnesota Class").

3170.   The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 379 of 1249
Complaint - Part 2 of 2    Pg 279 of 743

sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not

have or that a person has a sponsorship, approval, status, affiliation, or connection that the person

does not have;" "(7) represents that goods or services are of a particular standard, quality, or

grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises

goods or services with intent not to sell them as advertised."  MINN. STAT. § 325D.44.  In the

course of the New GM's business, it systematically devalued safety and concealed a plethora of

defects in GM-branded vehicles and engaged in deceptive practices by representing that Affected

Vehicles have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that

they do not have; representing that Affected Vehicles are of a particular standard, quality, or

grade, or that goods are of a particular style or model, if they are of another; and advertising

Affected Vehicles with intent not to sell them as advertised.  New GM participated in

misleading, false, or deceptive acts that violated the Minnesota DTPA.  By systematically

devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM

engaged in deceptive business practices prohibited by the Minnesota DTPA.

3171.   New GM's actions as set forth above occurred in the conduct of trade or

commerce.

3172.   In the course of its business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 280 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/05/15   Page 780 of 1249

3173.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, both because of the knowledge of Old GM personnel who remained at New GM continuous reports, investigations, and notifications from regulatory authorities.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

3174.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

3175.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

3176.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Minnesota DTPA.

3177.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that the Affected Vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1513 Filed 09/09/15 Page 281 of 1249
Complaint - Part 2 of 2 Pg 281 of 743

3178.   New GM's unfair or deceptive acts or practices were likely to and did in fact
deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-
branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the
true value of the Affected Vehicles.

3179.   New GM intentionally and knowingly misrepresented material facts regarding the
Affected Vehicles with an intent to mislead Plaintiffs and the Minnesota Class.

3180.   New GM knew or should have known that its conduct violated the Minnesota
DTPA.

3181.   As alleged above, New GM made material statements about the safety and
reliability of the Affected Vehicles that were either false or misleading.

3182.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the
Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.   Possessed exclusive knowledge that it valued cost-cutting
> over safety, selected parts from the cheapest supplier
> regardless of quality, and actively discouraged employees
> from finding and flagging known safety defects, and that
> this approach would necessarily cause the existence of
> more defects in the vehicles it designed and manufactured;
>
> b.   Intentionally concealed the foregoing from Plaintiffs;
> and/or
>
> c.   Made incomplete representations about the safety and
> reliability of the Affected Vehicles generally, and the
> ignition switch and other defects in particular, while
> purposefully withholding material facts from Plaintiffs that
> contradicted these representations.

3183.   Because New GM fraudulently concealed the many defects in GM-branded
vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,
the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

- 749 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 282 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 02/05/15   Page 282 of 1249

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

3184.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Minnesota Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

3185.   Plaintiffs and the Minnesota Class suffered ascertainable loss caused by New GM's misrepresentations and its failure to disclose material information.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

3186.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

3187.   As a direct and proximate result of New GM's violations of the Minnesota DTPA, Plaintiffs and the Minnesota Class have suffered injury-in-fact and/or actual damage.

3188.   Pursuant to MINN. STAT. § 8.31(3a) and 325D.45, Plaintiffs and the Minnesota Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-3MF Document 135 Filed 09/09/15 Page 783 of 1243
Complaint - Part 2 of 2    Pg 283 of 743

3189.   Plaintiffs also seek punitive damages under MINN. STAT. § 549.20(1)(a) give the

clear and convincing evidence that New GM's acts show deliberate disregard for the rights or

safety of others.

<div align="center">

**COUNT III**

**FRAUD BY CONCEALMENT**

</div>

3190.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

3191.   This claim is brought on behalf of Nationwide Class Members who are

Minnesota residents (the "Minnesota Class").

3192.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

3193.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

3194.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

3195.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its new vehicles and Certified Previously Owned vehicles that New

GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its

vehicles are safe and reliable. The false representations were material to consumers, both

because they concerned the quality and safety of the Affected Vehicles and because the

representations played a significant role in the value of the vehicles.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 284 of 743
Case 14-mc-02543-3MF   Document 13   Filed 07/05/15   Page 784 of 1249

3196.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Minnesota Class.  New GM also had a duty to disclose because

it made many general affirmative representations about the safety, quality, and lack of defects in

its vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Minnesota Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

3197.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Minnesota Class.

3198.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Minnesota Class and conceal material

information regarding defects that exist in GM-branded vehicles.

3199.   Plaintiffs and the Minnesota Class were unaware of these omitted material facts

and would not have acted as they did if they had known of the concealed and/or suppressed facts,

in that they would not have purchased cars manufactured by New GM; and/or they would not

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 285 of 743
Case 14-mc-02543-3MF   Document 135   Filed 09/09/15   Page 785 of 1249

have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Minnesota Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Minnesota Class.

3200.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Minnesota Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

3201.   The value of all Minnesota Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3202.   Accordingly, New GM is liable to the Minnesota Class for damages in an amount to be proven at trial.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 286 of 743
Case 1:14-md-02543-JMF    Document 135    Filed 07/09/15    Page 786 of 1249

3203.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Minnesota Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (MINN. STAT. § 336.2-314)

3204.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3205.   This claim is brought only on behalf of Minnesota residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Minnesota Post-Sale ISD Subclass").

3206.   New GM was a merchant with respect to motor vehicles within the meaning of MINN. STAT. § 336.2-104(1).

3207.   Under MINN. STAT. § 336.2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

3208.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

09-50026-mg  Doc 13469-3  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 5135  Filed 09/09/15  Page 787 of 1249
Complaint - Part 2 of 2    Pg 287 of 743

3209.   New GM was provided notice of these issues by numerous complaints filed

against it, internal investigations, and by numerous individual letters and communications sent

by Plaintiffs and the Minnesota Post-Sale ISD Subclass before or within a reasonable amount of

time after New GM issued the recall and the allegations of vehicle defects became public.

3210.   As a direct and proximate result of New GM's breach of the implied warranty of

merchantability, Plaintiffs and the Minnesota Post-Sale ISD Subclass members have been

damaged in an amount to be proven at trial.

<div align="center">

**COUNT V**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

3211.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

3212.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass

members who are Minnesota residents **and** who owned their Pre-Sale Defective Ignition Switch

Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the

purposes of this claim only, the "Minnesota Pre-Sale ISD Subclass").

3213.   New GM was aware of the ignition switch defects in millions of vehicles sold by

Old GM from the moment it came into existence upon entry of the Sale Order And Sale

Agreement by which New GM acquired substantially all the assets of Old GM.

3214.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale

Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required

… to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

necessarily had this same knowledge from day one of its existence, as the bankruptcy court

found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

<div align="center">

- 755 -

</div>

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 788 of 1249
Complaint - Part 2 of 2 Pg 288 of 743

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

3215.   The Minnesota Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

3216.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3217.   Because New GM concealed its knowledge of the ignition switch defect, the Minnesota Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3218.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

3219.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

3220.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured

- 756 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 289 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 789 of 1249

claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

3221.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3222.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3223.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3224.   But for New GM's fraudulent concealment of the ignition switch defects, the Minnesota Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

3225.   Had the Minnesota Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

3226.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have

- 757 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-md-02543-3MF    Document 1135    Filed 09/25/15    Page 290 of 1249
Complaint - Part 2 of 2    Pg 290 of 743

been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

3227.    New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

3228.    New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Minnesota Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Minnesota Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3229.    Plaintiffs and the Minnesota Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Minnesota Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Minnesota Pre-Sale ISD Subclass.

3230.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Minnesota Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 791 of 1249
Complaint - Part 2 of 2    Pg 291 of 743

vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC
Trust.

3231.   Accordingly, New GM is liable to the Minnesota Pre-Sale ISD Subclass members
for their damages in an amount to be proven at trial.

3232.   New GM's acts were done maliciously, oppressively, deliberately, with intent to
defraud, and in reckless disregard of Plaintiffs' and the Minnesota Pre-Sale ISD Subclass's rights
and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive
damages in an amount sufficient to deter such conduct in the future, which amount is to be
determined according to proof.

### COUNT VI
### THIRD-PARTY BENEFICIARY CLAIM

3233.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

3234.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass
members who are Minnesota residents (the "Minnesota Pre-Sale ISD Subclass").

3235.   In the Sales Agreement through which New GM acquired substantially all of the
assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the
> certification, reporting and recall requirements of the National
> Traffic and Motor Vehicle and Motor Vehicle Safety Act, the
> Transportation Recall Enhancement, Accountability and
> Documentation Act, the Clean Air Act, the California Health and
> Safety Code and similar Laws, in each case, to the extent
> applicable in respect of vehicles and vehicle parts manufactured or
> distributed by [Old GM].

3236.   With the exception of the portion of the agreement that purports to immunize New
GM from its own independent misconduct with respect to cars and parts made by Old GM, the
Sales Agreement is a valid and binding contract.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 292 of 1249
Complaint - Part 2 of 2    Pg 292 of 743

3237.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

3238.  Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3239.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

3240.  Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM

can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

3241.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

3242.   Plaintiffs and the Minnesota Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VII

## UNJUST ENRICHMENT

3243.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3244.   This claim is brought on behalf of members of the Minnesota Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Minnesota Unjust Enrichment Class").

3245.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

3246.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of

- 761 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-mc-02543-3MF    Document 1135    Filed 09/09/15    Page 394 of 1249
Complaint - Part 2 of 2    Pg 294 of 743

systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and
Plaintiffs have overpaid for the cars and been forced to pay other costs.

3247.   With respect to the Defective Ignition Switch Vehicles purchased before New
GM came into existence that were still on the road after New GM came into existence and as to
which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by
avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about
the success of New GM.

3248.   Thus, all Minnesota Unjust Enrichment Class Members conferred a benefit on
New GM.

3249.   It is inequitable for New GM to retain these benefits.

3250.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did
not benefit from GM's conduct.

3251.   New GM knowingly accepted the benefits of its unjust conduct.

3252.   As a result of New GM's conduct, the amount of its unjust enrichment should be
disgorged, in an amount according to proof.

**MISSISSIPPI**

**COUNT I**

**VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT**

**(MISS. CODE. ANN. § 75-24-1, *et seq.*)**

3253.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

3254.   This claim is brought only on behalf of Nationwide Class Members who are
Mississippi residents (the "Mississippi Class").

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 295 of 1249
Complaint - Part 2 of 2    Pg 295 of 743

3255.   The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair

or deceptive trade practices in or affecting commerce." MISS. CODE. ANN. § 75-24-5(1).  Unfair

or deceptive practices include, but are not limited to, "(e) Representing that goods or services

have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do

not have or that a person has a sponsorship, approval, status, affiliation, or connection that he

does not have;" "(g) Representing that goods or services are of a particular standard, quality, or

grade, or that goods are of a particular style or model, if they are of another;" and "(i)

Advertising goods or services with intent not to sell them as advertised."  New GM participated

in deceptive trade practices that violated the Mississippi CPA as described herein, including

representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they

do not have; representing that Affected Vehicles are of a particular standard and quality when

they are not; and advertising Affected Vehicles with the intent not to sell them as advertised.

3256.   In the course of its  business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

3257.   From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 396 of 1249
Complaint - Part 2 of 2    Pg 296 of 743

Act obligations, as discussed above.  New GM became aware of other serious defects and

systemic safety issues years ago, but concealed all of that information until recently.

3258.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

3259.   According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles, and New GM should have

recalled the vehicles years ago.

3260.   By failing to disclose and by actively concealing the many defects in GM-branded

vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in unfair and deceptive business practices in violation of the Mississippi CPA.

3261.   In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

3262.   New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the

true value of the Affected Vehicles.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 297 of 1243
Complaint - Part 2 of 2    Pg 297 of 743

3263.   New GM intentionally and knowingly misrepresented material facts regarding the
Affected Vehicles with an intent to mislead Plaintiffs and the Mississippi Class.

3264.   New GM knew or should have known that its conduct violated the Mississippi
CPA.

3265.   As alleged above, New GM made material statements about the safety and
reliability of the Affected Vehicles and the GM brand that were either false or misleading.

3266.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the
Affected Vehicles and the devaluing of safety at New GM, because New GM:

   a.   Possessed exclusive knowledge that it valued cost-cutting
        over safety, selected parts from the cheapest supplier
        regardless of quality, and actively discouraged employees
        from finding and flagging known safety defects, and that
        this approach would necessarily cause the existence of
        more defects in the vehicles it designed and manufactured;

   b.   Intentionally concealed the foregoing from Plaintiffs;
        and/or

   c.   Made incomplete representations about the safety and
        reliability of the Affected Vehicles generally, and the
        ignition switch and other defects in particular, while
        purposefully withholding material facts from Plaintiffs that
        contradicted these representations.

3267.   Because New GM fraudulently concealed the many defects in GM-branded
vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,
the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to
those vehicles by New GM's conduct, they are now worth significantly less than they otherwise
would be.

3268.   New GM's systemic devaluation of safety and its concealment of a plethora of
defects in GM-branded vehicles were material to Plaintiffs and the Mississippi Class.  A vehicle
made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 298 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 03/09/15   Page 798 of 1249

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

3269.   Plaintiffs and the Mississippi Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Mississippi CPA.

3270.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Mississippi CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

3271.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

3272.   As a direct and proximate result of New GM's violations of the Mississippi CPA, Plaintiffs and the Mississippi Class have suffered injury-in-fact and/or actual damage.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-3MF   Document 135   Filed 09/09/15   Page 799 of 1249
Complaint - Part 2 of 2   Pg 299 of 743

3273.   Plaintiffs' actual damages in an amount to be determined at trial any other just
and proper relief available under the Mississippi CPA.

<div align="center">COUNT II</div>

<div align="center">**FRAUD BY CONCEALMENT**</div>

3274.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

3275.   This claim is brought on behalf of Nationwide Class Members who are
Mississippi residents (the "Mississippi Class").

3276.   New GM concealed and suppressed material facts concerning the quality of its
vehicles and the GM brand.

3277.   New GM concealed and suppressed material facts concerning the culture of New
GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety
issues, and a shoddy design process.

3278.   New GM concealed and suppressed material facts concerning the many serious
defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps
to ensure that its employees did not reveal known safety defects to regulators or consumers.

3279.   New GM did so in order to boost confidence in its vehicles and falsely assure
purchasers and lessors of its new vehicles and Certified Previously Owned vehicles that New
GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its
vehicles are safe and reliable. The false representations were material to consumers, both
because they concerned the quality and safety of the Affected Vehicles and because the
representations played a significant role in the value of the vehicles.

3280.   New GM had a duty to disclose the many defects in GM-branded vehicles
because they were known and/or accessible only to New GM, were in fact known to New GM as

<div align="center">- 767 -</div>

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 300 of 1249
Complaint - Part 2 of 2 Pg 300 of 743

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge
and access to the facts, and New GM knew the facts were not known to or reasonably
discoverable by Plaintiffs and the Mississippi Class.  New GM also had a duty to disclose
because it made many general affirmative representations about the safety, quality, and lack of
defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete
without the disclosure of the additional facts set forth above regarding its actual safety record,
safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered
to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the
entire truth.  These omitted and concealed facts were material because they directly impact the
value of the Affected Vehicles purchased or leased by Plaintiffs and the Mississippi Class.
Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands
behind its products, are material concerns to a consumer.

3281.   New GM actively concealed and/or suppressed these material facts, in whole or in
part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM
money, and it did so at the expense of Plaintiffs and the Mississippi Class.

3282.   On information and belief, New GM has still not made full and adequate
disclosure and continues to defraud Plaintiffs and the Mississippi Class and conceal material
information regarding defects that exist in GM-branded vehicles.

3283.   Plaintiffs and the Mississippi Class were unaware of these omitted material facts
and would not have acted as they did if they had known of the concealed and/or suppressed facts,
in that they would not have purchased cars manufactured by New GM; and/or they would not
have purchased cars manufactured by Old GM in the time after New GM had come into
existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the

- 768 -

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 301 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 301 of 1249

vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Mississippi Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Mississippi Class.

3284.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Mississippi Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

3285.   The value of all Mississippi Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3286.   Accordingly, New GM is liable to the Mississippi Class for damages in an amount to be proven at trial.

3287.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Mississippi Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (MISS. CODE ANN. § 75-2-314)

3288.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3289.  This claim is brought only on behalf of Mississippi residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Mississippi Post-Sale ISD Subclass").

3290.  New GM was a merchant with respect to motor vehicles within the meaning of MISS. CODE ANN. § 75-2-104(1).

3291.  Under MISS. CODE ANN. § 75-2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

3292.  These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

3293.  New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent

- 770 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 303 of 1249
Complaint - Part 2 of 2    Pg 303 of 743

by Plaintiffs and the Mississippi Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

3294.   As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Mississippi Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

3295.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3296.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Mississippi residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Mississippi Pre-Sale ISD Subclass").

3297.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

3298.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 5135   Filed 09/25/15   Page 304 of 743
Complaint - Part 2 of 2    Pg 304 of 743

3299.   The Mississippi Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

3300.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3301.   Because New GM concealed its knowledge of the ignition switch defect, the Mississippi Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3302.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

3303.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

3304.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

010440-11 789697 V1

3305.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3306.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3307.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3308.   But for New GM's fraudulent concealment of the ignition switch defects, the Mississippi Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

3309.   Had the Mississippi Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

3310.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 3135   Filed 09/09/15   Page 306 of 1243
Complaint - Part 2 of 2    Pg 306 of 743

3311.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

3312.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Mississippi Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Mississippi Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3313.   Plaintiffs and the Mississippi Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Mississippi Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Mississippi Pre-Sale ISD Subclass.

3314.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Mississippi Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 5135   Filed 09/09/15   Page 307 of 1249
Complaint - Part 2 of 2    Pg 307 of 743

3315.   Accordingly, New GM is liable to the Mississippi Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

3316.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Mississippi Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

3317.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3318.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Mississippi residents (the "Mississippi Pre-Sale ISD Subclass").

3319.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

3320.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

3321.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

- 775 -

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

3322.    Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3323.    Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

3324.    Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 309 of 1249
Complaint - Part 2 of 2 Pg 309 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

3325. New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

3326. Plaintiffs and the Mississippi Pre-Sale ISD Subclass were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## MISSOURI

## COUNT I

## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT

### (MO. REV. STAT. § 407.010, *et seq.*)

3327. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3328. This claim is brought only on behalf of Nationwide Class Members who are Missouri residents (the "Missouri Class").

3329. New GM, Plaintiffs and the Missouri Class are "persons" within the meaning of MO. REV. STAT. § 407.010(5).

3330. New GM engaged in "trade" or "commerce" in the State of Missouri within the meaning of MO. REV. STAT. § 407.010(7).

3331. The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 310 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 310 of 1249

fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. §

407.020.

3332.    In the course of its business, New GM systematically devalued safety and,

omitted, suppressed, and concealed a plethora of defects in GM-branded vehicles as described

herein.  By failing to disclose these defects or facts about the defects described herein known to

it or that were available to New GM upon reasonable inquiry, New GM deprived consumers of

all material facts about the safety and functionality of their vehicle.  By failing to release material

facts about the defect, New GM curtailed or reduced the ability of consumers to take notice of

material facts about their vehicle, and/or it affirmatively operated to hide or keep those facts

from consumers.  15 MO. CODE OF SERV. REG. § 60-9.110.  Moreover, New GM has otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations,

unfair practices, and/or concealment, suppression or omission of any material fact with intent

that others rely upon such concealment, suppression or omission, in connection with the sale of

Affected Vehicles.

3333.    From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

Act obligations, as discussed above.  New GM became aware of other serious defects and

systemic safety issues years ago, but suppressed and/or concealed all of that information until

recently.

3334.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM omitted, suppressed, and/or concealed this information as well.

3335.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.  Failure to do so has been part of New GM's method, act, use, and/or practice to hide, keep, curtail, and/or reduce consumers' access to material facts.

3336.   By failing to disclose and by actively concealing, suppressing, or omitting the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and/or deceptive business practices and concealed, suppressed, and/or omitted material facts from consumers in connection with the purchase of their vehicles – all in violation of the Missouri MPA.

3337.   In the course of New GM's business, it willfully failed to disclose and actively concealed, suppressed, and omitted the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

3338.   New GM's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Complaint - Part 2 of 2 Pg 312 of 743
Case 14-md-02543-JMF Document 1135 Filed 09/09/15 Page 312 of 1249

create a false impression in consumers, and did in fact deceive reasonable consumers, including

Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM

brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

3339.   New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with an intent to mislead Plaintiffs and the Missouri Class, including without

limitation by failing to disclose the defects in light of circumstances under which the omitted

facts were necessary in order to correct the assumptions, inferences or representations being

made by New GM about the safety or reliability of its vehicles. Consequently, the failure to

disclose such facts amounts to misleading statements pursuant to 15 MO. CODE OF SERV. REG. §

60-9.090.

3340.   Because New GM knew or believed that its statements regarding safety and

reliability of its vehicles were not in accord with the facts and/or had no reasonable basis for

such statements in light of its knowledge of these defects, New GM engaged in fraudulent

misrepresentations pursuant to 15 MO. CODE OF SERV. REG. 60-9.100.

3341.   New GM's conduct as described herein is unethical, oppressive, or unscrupulous

and/or it presented a risk of substantial injury to consumers whose vehicles were prone to fail at

times and under circumstances that could have resulted in death.  Such acts are unfair practices

in violation of 15 MO. CODE OF SERV. REG. 60-8.020.

3342.   New GM knew or should have known that its conduct violated the Missouri

MPA.

3343.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles and the GM brand that were either false, misleading, and/or

half-truths in violation of the Missouri MPA.

3344.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

     a.     Possessed exclusive knowledge that it valued cost-cutting
over safety, selected parts from the cheapest supplier
regardless of quality, and actively discouraged employees
from finding and flagging known safety defects, and that
this approach would necessarily cause the existence of
more defects in the vehicles it designed and manufactured;

     b.     Intentionally concealed the foregoing from Plaintiffs;
and/or

     c.     Made incomplete representations about the safety and
reliability of the Affected Vehicles generally, and the
ignition switch and other defects in particular, while
purposefully withholding material facts from Plaintiffs that
contradicted these representations.

3345.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, and committed these other unlawful acts in violation of the Missouri MPA, resulting in

a raft of negative publicity once the defects finally began to be disclosed, the value of the

Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by

New GM's conduct, they are now worth significantly less than they otherwise would be.

3346.   New GM's systemic devaluation of safety and its misleading statements,

deception, and/or concealment, suppression, or omission of a plethora of defects in GM-branded

vehicles were material to Plaintiffs and the Missouri Class.  A vehicle made by a reputable

manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle

made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than

promptly remedies them.

3347.   Plaintiffs and the Missouri Class suffered ascertainable loss caused by New GM's

misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs

who purchased GM-branded vehicles after the date of New GM's inception either would have

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 314 of 1249
Complaint - Part 2 of 2    Pg 314 of 743

paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who

purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned,"

they too either would have paid less for their vehicles or would not have purchased them but for

New GM's violations of the Missouri MPA.

3348.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Missouri MPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form

of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and

practices made in the course of New GM's business.

3349.  New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

3350.  As a direct and proximate result of New GM's violations of the Missouri MPA,

Plaintiffs and the Missouri Class have suffered injury-in-fact and/or actual damage.

3351.  New GM is liable to Plaintiffs and the Missouri Class for damages in amounts to

be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive

relief enjoining New GM's unfair and deceptive practices, and any other just and proper relief

under MO. REV. STAT. § 407.025.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 315 of 1249
Complaint - Part 2 of 2 Pg 315 of 743

## COUNT II

## FRAUD BY CONCEALMENT

3352. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3353. This claim is brought on behalf of Nationwide Class Members who are Missouri residents (the "Missouri Class").

3354. New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

3355. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

3356. New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

3357. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

3358. New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably

- 783 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 316 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 816 of 1249

discoverable by Plaintiffs and the Missouri Class.  New GM also had a duty to disclose because

it made many general affirmative representations about the safety, quality, and lack of defects in

its vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Missouri Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

3359.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Missouri Class.

3360.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Missouri Class and conceal material

information regarding defects that exist in GM-branded vehicles.

3361.   Plaintiffs and the Missouri Class were unaware of these omitted material facts and

would not have acted as they did if they had known of the concealed and/or suppressed facts, in

that they would not have purchased cars manufactured by New GM; and/or they would not have

purchased cars manufactured by Old GM in the time after New GM had come into existence and

had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or

would not have continued to drive their vehicles or would have taken other affirmative steps.

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 317 of 1249
Complaint - Part 2 of 2    Pg 317 of 743

Plaintiffs' and the Missouri Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Missouri Class.

3362.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Missouri Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

3363.   The value of all Missouri Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3364.   Accordingly, New GM is liable to the Missouri Class for damages in an amount to be proven at trial.

3365.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Missouri Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## (MO. REV. STAT. § 400.2-314)

3366.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3367.   This claim is brought only on behalf of Missouri residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Missouri Post-Sale ISD Subclass").

3368.   New GM was a merchant with respect to motor vehicles within the meaning of MO. REV. STAT. § 400.2-314(1).

3369.   Under MO. REV. STAT. § 400.2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

3370.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

3371.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Missouri Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

- 786 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 319 of 1249
Complaint - Part 2 of 2    Pg 319 of 743

3372.    As a direct and proximate result of New GM's breach of the warranties of

merchantability, Plaintiffs and the Missouri Post-Sale ISD Subclass members have been

damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

3373.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

3374.    This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass

members who are Missouri residents *and* who owned their Pre-Sale Defective Ignition Switch

Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the

purposes of this claim only, the "Missouri Pre-Sale ISD Subclass").

3375.    New GM was aware of the ignition switch defects in millions of vehicles sold by

Old GM from the moment it came into existence upon entry of the Sale Order And Sale

Agreement by which New GM acquired substantially all the assets of Old GM.

3376.    As the bankruptcy court found, "As of June 2009, when the entry of the Sale

Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required

… to send out mailed recall notices to owners of affected Old GM vehicles." New GM

necessarily had this same knowledge from day one of its existence, as the bankruptcy court

found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition

Switch Defect prior to the Sale Motion."

3377.    The Missouri Pre-Sale ISD Subclass did not receive notice of the ignition switch

defect prior to the entry of the Sale Order. No recall occurred, and neither the direct mail notice

<div align="center">

- 787 -

</div>

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/09/15 Page 320 of 1249
Complaint - Part 2 of 2    Pg 320 of 743

nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

3378. In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3379. Because New GM concealed its knowledge of the ignition switch defect, the Missouri Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date. No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3380. In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

3381. The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

3382. Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion. In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 14-md-02543-JMF    Document 1135    Filed 09/29/15    Page 321 of 1249
Complaint - Part 2 of 2    Pg 321 of 743

3383.    As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3384.    As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3385.    The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3386.    But for New GM's fraudulent concealment of the ignition switch defects, the Missouri Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

3387.    Had the Missouri Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

3388.    Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11  789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 322 of 743
Case 14-mc-02543-JMF    Document 135    Filed 02/05/15    Page 822 of 1249

3389.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

3390.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Missouri Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Missouri Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3391.   Plaintiffs and the Missouri Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Missouri Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Missouri Pre-Sale ISD Subclass.

3392.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Missouri Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 323 of 743
Case 1:14-md-02543-JMF   Document 1139   Filed 09/09/15   Page 823 of 1249

3393.   Accordingly, New GM is liable to the Missouri Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

3394.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Missouri Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT V
### THIRD-PARTY BENEFICIARY CLAIM

3395.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3396.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Missouri residents (the "Missouri Pre-Sale ISD Subclass").

3397.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

3398.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

3399.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 324 of 1249
Complaint - Part 2 of 2 Pg 324 of 743

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

3400. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3401. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

3402. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 325 of 1249
Complaint - Part 2 of 2    Pg 325 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

3403.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

3404.   Plaintiffs and the Missouri Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

3405.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3406.   This claim is brought on behalf of members of the Missouri Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Missouri Unjust Enrichment Class").

3407.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

3408.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

- 793 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 14-mc-02543-3MF   Document 135   Filed 09/09/15   Page 326 of 743
Complaint - Part 2 of 2   Pg 326 of 743

3409.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

3410.   Thus, all Missouri Unjust Enrichment Class Members conferred a benefit on New GM.

3411.   It is inequitable for New GM to retain these benefits.

3412.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

3413.   New GM knowingly accepted the benefits of its unjust conduct.

3414.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## MONTANA

## COUNT I

### VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973

### (MONT. CODE ANN. § 30-14-101, *et seq.*)

3415.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3416.   This claim is brought only on behalf of Nationwide Class Members who are Montana residents (the "Montana Class").

3417.   New GM, Plaintiffs and the Montana Class are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 327 of 743
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 827 of 1249

3418.   Montana Class Members are "consumer[s]" under Mont. Code Ann. § 30-14-102(1).

3419.   The sale or lease of the Affected Vehicles to Montana Class Members occurred within "trade and commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and New GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

3420.   The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mont. Code Ann. § 30-14-103.  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in unfair and deceptive acts or practices in violation of the Montana CPA.

3421.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

3422.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

- 795 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 328 of 1249
Complaint - Part 2 of 2    Pg 328 of 743

3423.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

3424.   According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles, and New GM should have

recalled the vehicles years ago.

3425.   By failing to disclose and by actively concealing the many defects in GM-branded

vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in unfair and deceptive business practices in violation of the Montana CPA.

3426.   In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

3427.   New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

3428.   New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles and the GM brand with an intent to mislead Plaintiffs and the Montana Class.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Complaint - Part 2 of 2 Pg 329 of 743
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 829 of 1249

3429.   New GM knew or should have known that its conduct violated the Montana CPA.

3430.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles that were either false or misleading.

3431.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.      Possessed exclusive knowledge that it valued cost-cutting
>         over safety, selected parts from the cheapest supplier
>         regardless of quality, and actively discouraged employees
>         from finding and flagging known safety defects, and that
>         this approach would necessarily cause the existence of
>         more defects in the vehicles it designed and manufactured;
>
> b.      Intentionally concealed the foregoing from Plaintiffs;
>         and/or
>
> c.      Made incomplete representations about the safety and
>         reliability of the Affected Vehicles generally, and the
>         ignition switch and other defects in particular, while
>         purposefully withholding material facts from Plaintiffs that
>         contradicted these representations.

3432.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

3433.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Montana Class.  A vehicle

made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 330 of 743
Case 1:14-md-02543-JMF   Document 1139   Filed 09/05/15   Page 830 of 1249

3434.   Plaintiffs and the Montana Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Montana CPA.

3435.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Montana CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

3436.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

3437.   As a direct and proximate result of New GM's violations of the Montana CPA, Plaintiffs and the Montana Class have suffered injury-in-fact and/or actual damage.

3438.   Because the New GM's unlawful methods, acts, and practices have caused Montana Class Members to suffer an ascertainable loss of money and property, the Montana

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 331 of 1249
Complaint - Part 2 of 2 Pg 331 of 743

Class seeks from New GM actual damages or $500, whichever is greater, discretionary treble damages, reasonable attorneys' fees, an order enjoining New GM's unfair, unlawful, and/or deceptive practices, and any other relief the Court considers necessary or proper, under MONT. CODE ANN. § 30-14-133.

## COUNT II

## FRAUD BY CONCEALMENT

3439.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3440.   This claim is brought on behalf of Nationwide Class Members who are Montana residents (the "Montana Class").

3441.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

3442.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

3443.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

3444.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-md-02543-JMF   Document 1513   Filed 09/09/15   Page 332 of 1249
Complaint - Part 2 of 2    Pg 332 of 743

3445.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Montana Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Montana Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

3446.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Montana Class.

3447.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Montana Class and conceal material information regarding defects that exist in GM-branded vehicles.

3448.   Plaintiffs and the Montana Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have

purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Montana Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Montana Class.

Because of the concealment and/or suppression of the facts, Plaintiffs and the Montana Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

3449.  The value of all Montana Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3450.  Accordingly, New GM is liable to the Montana Class for damages in an amount to be proven at trial.

3451.  New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Montana Class's rights and well-being to

enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount

sufficient to deter such conduct in the future, which amount is to be determined according to

proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MONT. CODE § 30-2-314)

3452.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

3453.   This claim is brought only on behalf of Montana residents who are members of

the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Montana Post-Sale ISD

Subclass").

3454.   New GM was a merchant with respect to motor vehicles under MONT. CODE § 30-

2-104(1) .

3455.   Under MONT. CODE § 30-2-314, a warranty that the Defective Ignition Switch

Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs

purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11,

2009.

3456.   These vehicles, when sold and at all times thereafter, were not merchantable and

are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition

Switch Vehicles are inherently defective in that there are defects in the ignition switch systems

that permit sudden unintended shutdown to occur, with the attendant shut down of power

steering and power brakes and the nondeployment of airbags in the event of a collision.

3457.   New GM  was provided notice of these issues by numerous complaints filed

against it, internal investigations, and by numerous individual letters and communications sent

- 802 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 835 of 1249
Complaint - Part 2 of 2 Pg 335 of 743

by Plaintiffs and the Montana Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

3458. As a direct and proximate result of New GM's breach of the warranties of merchantability, Plaintiffs and the Montana Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

3459. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3460. This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Montana residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Montana Pre-Sale ISD Subclass").

3461. New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

3462. As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles." New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

3463.   The Montana Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

3464.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3465.   Because New GM concealed its knowledge of the ignition switch defect, the Montana Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3466.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

3467.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

3468.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

3469.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3470.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3471.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3472.   But for New GM's fraudulent concealment of the ignition switch defects, the Montana Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

3473.   Had the Montana Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

3474.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-3MF Document 1135 Filed 09/09/15 Page 838 of 1249
Complaint - Part 2 of 2 Pg 338 of 743

3475. New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

3476. New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Montana Pre-Sale ISD Subclass. These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Montana Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3477. Plaintiffs and the Montana Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Montana Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Montana Pre-Sale ISD Subclass.

3478. Because of the concealment and/or suppression of the facts, Plaintiffs and the Montana Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 339 of 1249
Complaint - Part 2 of 2    Pg 339 of 743

3479.   Accordingly, New GM is liable to the Montana Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

3480.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Montana Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT V**
**THIRD-PARTY BENEFICIARY CLAIM**

3481.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3482.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Montana residents (the "Montana Pre-Sale ISD Subclass").

3483.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

3484.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

3485.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

- 807 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-md-02543-JMF Document 1138 Filed 09/09/15 Page 340 of 1249
Complaint - Part 2 of 2 Pg 340 of 743

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

3486. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3487. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

3488. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 841 of 1249
Complaint - Part 2 of 2    Pg 341 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

3489.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

3490.   Plaintiffs and the Montana Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

<div align="center">

## COUNT VI

## UNJUST ENRICHMENT

</div>

3491.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3492.   This claim is brought on behalf of members of the Montana Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Montana Unjust Enrichment Class").

3493.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

3494.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

<div align="center">

- 809 -

</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 342 of 1249
Complaint - Part 2 of 2    Pg 342 of 743

3495.  With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

3496.   Thus, all Montana Unjust Enrichment Class Members conferred a benefit on New GM.

3497.   It is inequitable for New GM to retain these benefits.

3498.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

3499.   New GM knowingly accepted the benefits of its unjust conduct.

3500.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## NEBRASKA

## COUNT I

## VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT

### (NEB. REV. STAT. § 59-1601, *et seq.*)

3501.   Plaintiff incorporates by reference all preceding and succeeding paragraphs as if set forth fully herein.

3502.   This claim is brought only on behalf of Nationwide Class Members who are Nebraska residents (the "Nebraska Class").

3503.   New GM, Plaintiffs and Nebraska Class Members are "person[s]" under the Nebraska Consumer Protection Act ("Nebraska CPA"), NEB. REV. STAT. § 59-1601(1).

3504.   New GM's actions as set forth herein occurred in the conduct of trade or
commerce as defined under NEB. REV. STAT. § 59-1601(2).

3505.   The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct
of any trade or commerce."  NEB. REV. STAT. § 59-1602.  The conduct New GM as set forth
herein constitutes unfair or deceptive acts or practices.

3506.   In the course of its business, New GM systematically devalued safety and
concealed a plethora of defects in GM-branded vehicles as described herein and otherwise
engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful
trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or
concealment, suppression or omission of any material fact with intent that others rely upon such
concealment, suppression or omission, in connection with the sale of Affected Vehicles.

3507.   From the date of its inception on July 11, 2009, New GM knew of many serious
defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge
of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and
notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD
Act obligations, as discussed above.  New GM became aware of other serious defects and
systemic safety issues years ago, but concealed all of that information until recently.

3508.   New GM was also aware that it valued cost-cutting over safety, selected parts
from the cheapest supplier regardless of quality, and actively discouraged employees from
finding and flagging known safety defects, and that this approach would necessarily cause the
existence of more defects in the vehicles it designed and manufactured and the failure to disclose
and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-3MF    Document 135    Filed 09/09/15    Page 844 of 1249
Complaint - Part 2 of 2    Pg 344 of 743

3509.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

3510.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Nebraska CPA.

3511.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

3512.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

3513.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Nebraska Class.

3514.   New GM knew or should have known that its conduct violated the Nebraska CPA.

3515.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-3MF Document 1135 Filed 09/09/15 Page 345 of 1149
Complaint - Part 2 of 2    Pg 345 of 743

3516.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

      a.      Possessed exclusive knowledge that it valued cost-cutting
over safety, selected parts from the cheapest supplier
regardless of quality, and actively discouraged employees
from finding and flagging known safety defects, and that
this approach would necessarily cause the existence of
more defects in the vehicles it designed and manufactured;

      b.      Intentionally concealed the foregoing from Plaintiffs;
and/or

      c.      Made incomplete representations about the safety and
reliability of the Affected Vehicles generally, and the
ignition switch and other defects in particular, while
purposefully withholding material facts from Plaintiffs that
contradicted these representations.

3517.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

3518.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Nebraska Class.  A vehicle

made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

3519.   Plaintiffs and the Nebraska Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were

sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would

not have purchased them but for New GM's violations of the Nebraska CPA.

3520.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Nebraska CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form

of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and

practices made in the course of New GM's business.3520.   New GM's violations present a

continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and

practices complained of herein affect the public interest.

3521.   As a direct and proximate result of New GM's violations of the Nebraska CPA,

Plaintiffs and the Nebraska Class have suffered injury-in-fact and/or actual damage.

3522.   Because New GM's conduct caused injury to Class Members' property through

violations of the Nebraska CPA, the Nebraska Class seeks recovery of actual damages, as well as

enhanced damages up to $1,000, an order enjoining New GM's unfair or deceptive acts and

practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available

under NEB. REV. STAT. § 59-1609.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/09/15 Page 847 of 1249
Complaint - Part 2 of 2    Pg 347 of 743

## COUNT II

### FRAUD BY CONCEALMENT

3523.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3524.   This claim is brought on behalf of Nationwide Class Members who are Nebraska residents (the "Nebraska Class").

3525.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

3526.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

3527.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

3528.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

3529.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably

- 815 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2   Pg 348 of 743
Case 1:14-mc-02543-3MF   Document 5135   Filed 09/09/15   Page 848 of 1249

discoverable by Plaintiffs and the Nebraska Class.  New GM also had a duty to disclose because
it made many general affirmative representations about the safety, quality, and lack of defects in
its vehicles, as set forth above, which were misleading, deceptive and incomplete without the
disclosure of the additional facts set forth above regarding its actual safety record, safety
philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to
provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the
entire truth.  These omitted and concealed facts were material because they directly impact the
value of the Affected Vehicles purchased or leased by Plaintiffs and the Nebraska Class.
Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands
behind its products, are material concerns to a consumer.

3530.   New GM actively concealed and/or suppressed these material facts, in whole or in
part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM
money, and it did so at the expense of Plaintiffs and the Nebraska Class.

3531.   On information and belief, New GM has still not made full and adequate
disclosure and continues to defraud Plaintiffs and the Nebraska Class and conceal material
information regarding defects that exist in GM-branded vehicles.

3532.   Plaintiffs and the Nebraska Class were unaware of these omitted material facts
and would not have acted as they did if they had known of the concealed and/or suppressed facts,
in that they would not have purchased cars manufactured by New GM; and/or they would not
have purchased cars manufactured by Old GM in the time after New GM had come into
existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the
vehicles; and/or would not have continued to drive their vehicles or would have taken other
affirmative steps.  Plaintiffs' and the Nebraska Class's actions were justified.  New GM was in

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-3MF   Document 135   Filed 09/09/15   Page 349 of 743
Complaint - Part 2 of 2    Pg 349 of 743

exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Nebraska Class.

3533.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Nebraska Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

3534.   The value of all Nebraska Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3535.   Accordingly, New GM is liable to the Nebraska Class for damages in an amount to be proven at trial.

3536.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Nebraska Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 350 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/05/15   Page 850 of 1249

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (NEB. REV. STAT. NEB. § 2-314)

3537.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3538.   This claim is brought only on behalf of Nebraska residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Nebraska Post-Sale ISD Subclass").

3539.   New GM was a merchant with respect to motor vehicles within the meaning of NEB. REV. STAT. § 2-104(1).

3540.   A warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law under NEB. REV. STAT. § 2-314 in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles.

3541.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

3542.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Nebraska Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/09/15   Page 351 of 1249
Complaint - Part 2 of 2    Pg 351 of 743

3543.   As a direct and proximate result of New GM's breach of the warranties of merchantability, Plaintiffs and the Nebraska New GM  ISD Subclass have been damaged in an amount to be proven at trial.

## COUNT IV
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

3544.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3545.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Nebraska residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Nebraska Pre-Sale ISD Subclass").

3546.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

3547.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

3548.   The Nebraska Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 352 of 743
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 852 of 1249

nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

3549.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3550.   Because New GM concealed its knowledge of the ignition switch defect, the Nebraska Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3551.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

3552.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

3553.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

010440-11  789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-3MF Document 1135 Filed 09/09/15 Page 353 of 1249
Complaint - Part 2 of 2 Pg 353 of 743

3554. As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3555. As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities. After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3556. The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date. While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3557. But for New GM's fraudulent concealment of the ignition switch defects, the Nebraska Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

3558. Had the Nebraska Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

3559. Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 07/09/15 Page 354 of 1249
Complaint - Part 2 of 2 Pg 354 of 743

3560.  New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

3561.  New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Nebraska Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Nebraska Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3562.  Plaintiffs and the Nebraska Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Nebraska Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Nebraska Pre-Sale ISD Subclass.

3563.  Because of the concealment and/or suppression of the facts, Plaintiffs and the Nebraska Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 355 of 1249
Complaint - Part 2 of 2    Pg 355 of 743

3564.   Accordingly, New GM is liable to the Nebraska Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

3565.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Nebraska Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

3566.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3567.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Nebraska residents (the "Nebraska Pre-Sale ISD Subclass").

3568.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

3569.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

3570.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

- 823 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 356 of 1249
Complaint - Part 2 of 2    Pg 356 of 743

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

3571. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3572. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

3573. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

3574.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

3575.   Plaintiffs and the Nebraska Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

3576.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3577.   This claim is brought on behalf of members of the Nebraska Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Nebraska Unjust Enrichment Class").

3578.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

3579.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 14-mc-02543-3MF    Document 135    Filed 09/09/15    Page 358 of 1249
Complaint - Part 2 of 2    Pg 358 of 743

3580.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

3581.   Thus, all Nebraska Unjust Enrichment Class Members conferred a benefit on New GM.

3582.   It is inequitable for New GM to retain these benefits.

3583.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

3584.   New GM knowingly accepted the benefits of its unjust conduct.

3585.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

<div align="center">

**NEVADA**

**COUNT I**

**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**

**(NEV. REV. STAT. § 598.0903, *et seq*.)**

</div>

3586.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3587.   This claim is brought only on behalf of Nationwide Class Members who are Nevada residents (the "Nevada Class").

3588.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), NEV. REV. STAT. § 598.0903, *et seq.* prohibits deceptive trade practices.  NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation,

<div align="center">

- 826 -

</div>

the person:  "5.  Knowingly makes a false representation as to the characteristics, ingredients,

uses, benefits, alterations or quantities of goods or services for sale or lease or a false

representation as to the sponsorship, approval, status, affiliation or connection of a person

therewith"; "7.  Represents that goods or services for sale or lease are of a particular standard,

quality or grade, or that such goods are of a particular style or model, if he or she knows or

should know that they are of another standard, quality, grade, style or model"; "9.  Advertises

goods or services with intent not to sell or lease them as advertised"; or "15.  Knowingly makes

any other false representation in a transaction."

3589.   New GM engaged in deceptive trade practices that violated the Nevada DTPA,

including:  knowingly representing that Affected Vehicles have uses and benefits which they do

not have; representing that Affected Vehicles are of a particular standard, quality, and grade

when they are not; advertising Affected Vehicles with the intent not to sell or lease them as

advertised; representing that the subject of a transaction involving Affected Vehicles has been

supplied in accordance with a previous representation when it has not; and knowingly making

other false representations in a transaction.

3590.   New GM's actions as set forth above occurred in the conduct of trade or

commerce.

3591.   In the course of its business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2   Pg 360 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 360 of 1249

3592.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

3593.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

3594.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

3595.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Nevada DTPA.

3596.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

3597.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

3598.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Nevada Class.

3599.   New GM knew or should have known that its conduct violated the Nevada DTPA.

3600.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

3601.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a. Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;
>
> b. Intentionally concealed the foregoing from Plaintiffs; and/or
>
> c. Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

3602.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

- 829 -

3603.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Nevada Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

3604.   Plaintiffs and the Nevada Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Nevada DTPA.

3605.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Nevada DTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 363 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 363 of 1249

3606.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

3607.   As a direct and proximate result of New GM's violations of the Nevada DTPA, Plaintiffs and the Nevada Class have suffered injury-in-fact and/or actual damage.

3608.   Accordingly, Plaintiffs and the Nevada Class seek their actual damages, punitive damages, an order enjoining New GM's deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act.  NEV. REV. STAT. § 41.600.

## COUNT II

## FRAUD BY CONCEALMENT

3609.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3610.   This claim is brought on behalf of Nationwide Class Members who are Nevada residents (the "Nevada Class").

3611.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

3612.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

3613.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

- 831 -

3614.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

3615.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Nevada Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Nevada Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

3616.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Nevada Class.

- 832 -

3617.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Nevada Class and conceal material information regarding defects that exist in GM-branded vehicles.

3618.   Plaintiffs and the Nevada Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Nevada Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Nevada Class.

3619.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Nevada Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

3620.   The value of all Nevada Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of

the Affected Vehicles, let alone pay what otherwise would have been fair market value for the
vehicles.

3621.   Accordingly, New GM is liable to the Nevada Class for damages in an amount to
be proven at trial.

3622.   New GM's acts were done maliciously, oppressively, deliberately, with intent to
defraud, and in reckless disregard of Plaintiffs' and the Nevada Class's rights and well-being to
enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount
sufficient to deter such conduct in the future, which amount is to be determined according to
proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (NEV. REV. STAT. § 104.2314)

3623.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

3624.   This claim is brought only on behalf of Nevada residents who are members of the
Nationwide Post-Sale Ignition Switch Defect Subclass (the "Nevada Post-Sale ISD Subclass").

3625.   New GM was a merchant with respect to motor vehicles within the meaning of
NEV. REV. STAT. § 104.2104(1).

3626.   A warranty that the Defective Ignition Switch Vehicles were in merchantable
condition was implied by law in the transactions when Plaintiffs purchased or leased their
Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

3627.   These vehicles, when sold and at all times thereafter, were not merchantable and
are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition
Switch Vehicles are inherently defective in that there are defects in the ignition switch systems

- 834 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-mc-02543-3MF    Document 5135    Filed 09/25/15    Page 367 of 1249
Complaint - Part 2 of 2    Pg 367 of 743

that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

3628.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Nevada Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

3629.   As a direct and proximate result of New GM's breach of the warranties of merchantability, Plaintiffs and the Nevada Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

## COUNT IV
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

3630.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3631.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Nevada residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Nevada Pre-Sale ISD Subclass").

3632.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

3633.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court

- 835 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 368 of 1249
Complaint - Part 2 of 2   Pg 368 of 743

found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

3634.   The Nevada Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

3635.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3636.   Because New GM concealed its knowledge of the ignition switch defect, the Nevada Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3637.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

3638.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1135    Filed 09/05/15    Page 369 of 1249
Complaint - Part 2 of 2    Pg 369 of 743

3639.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

3640.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3641.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3642.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3643.   But for New GM's fraudulent concealment of the ignition switch defects, the Nevada Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

3644.   Had the Nevada Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 5135   Filed 09/09/15   Page 370 of 1249
Complaint - Part 2 of 2    Pg 370 of 743

3645.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

3646.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

3647.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Nevada Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Nevada Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3648.   Plaintiffs and the Nevada Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Nevada Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Nevada Pre-Sale ISD Subclass.

3649.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Nevada Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 371 of 1249
Complaint - Part 2 of 2 Pg 371 of 743

accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

3650. Accordingly, New GM is liable to the Nevada Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

3651. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Nevada Pre-Sale ISD Subclass's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

3652. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3653. This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Nevada residents (the "Nevada Pre-Sale ISD Subclass").

3654. In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

3655.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

3656.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

3657.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3658.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

3659.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

3660.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

3661.   Plaintiffs and the Nevada Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

3662.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3663.   This claim is brought on behalf of members of the Nevada Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Nevada Unjust Enrichment Class").

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 874 of 1249
Complaint - Part 2 of 2    Pg 374 of 743

3664.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

3665.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

3666.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

3667.   Thus, all Nevada Unjust Enrichment Class Members conferred a benefit on New GM.

3668.   It is inequitable for New GM to retain these benefits.

3669.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

3670.   New GM knowingly accepted the benefits of its unjust conduct.

3671.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

010440-11  789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Complaint - Part 2 of 2 Pg 375 of 743
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 875 of 1249

# NEW HAMPSHIRE

## COUNT I

## VIOLATION OF N.H. CONSUMER PROTECTION ACT

### (N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*)

3672.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3673.   This claim is brought only on behalf of Nationwide Class Members who are New Hampshire residents (the "New Hampshire Class").

3674.   Plaintiffs, the New Hampshire Class, and New GM are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

3675.   New GM's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

3676.   The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: . . . (V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised."  N.H. Rev. Stat. § 358-A:2.

3677.   New GM participated in unfair or deceptive acts or practices that violated the New Hampshire CPA as described above and below.  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in deceptive business practices prohibited by the CPA, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard, quality, and grade when they are not; advertising Affected

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 876 of 1249
Complaint - Part 2 of 2    Pg 376 of 743

Vehicles with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving Affected Vehicles has been supplied in accordance with a previous representation when it has not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.

3678.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

3679.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

3680.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

- 844 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/25/15    Page 377 of 1249
Complaint - Part 2 of 2    Pg 377 of 743

3681.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

3682.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the New Hampshire CPA.

3683.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

3684.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

3685.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the New Hampshire Class.

3686.   New GM knew or should have known that its conduct violated the New Hampshire CPA.

3687.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 378 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 378 of 1249

3688.    New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.    Possessed exclusive knowledge that it valued cost-cutting
> over safety, selected parts from the cheapest supplier
> regardless of quality, and actively discouraged employees
> from finding and flagging known safety defects, and that
> this approach would necessarily cause the existence of
> more defects in the vehicles it designed and manufactured;
>
> b.    Intentionally concealed the foregoing from Plaintiffs;
> and/or
>
> c.    Made incomplete representations about the safety and
> reliability of the Affected Vehicles generally, and the
> ignition switch and other defects in particular, while
> purposefully withholding material facts from Plaintiffs that
> contradicted these representations.

3689.    Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

3690.    New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the New Hampshire Class.  A

vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an

otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that

conceals defects rather than promptly remedies them.

3691.    Plaintiffs and the New Hampshire Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were

sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would

not have purchased them but for New GM's violations of the New Hampshire CPA.

3692.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

New Hampshire CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in

the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair

acts and practices that occurred in the course of New GM's business.

3693.   New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

3694.   As a direct and proximate result of New GM's violations of the New Hampshire

CPA, Plaintiffs and the New Hampshire Class have suffered injury-in-fact and/or actual damage.

3695.   Because New GM's willful conduct caused injury to New Hampshire Class

Members' property through violations of the New Hampshire CPA, the New Hampshire Class

seeks recovery of actual damages or $1,000, whichever is greater, treble damages, costs and

reasonable attorneys' fees, an order enjoining New GM's unfair and/or deceptive acts and

practices, and any other just and proper relief under N.H. REV. STAT. § 358-A:10.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-3MF   Document 1135   Filed 09/05/15   Page 880 of 1243
Complaint - Part 2 of 2    Pg 380 of 743

## COUNT II

## FRAUD BY CONCEALMENT

3696.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3697.   This claim is brought on behalf of Nationwide Class Members who are New Hampshire residents (the "New Hampshire Class").

3698.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

3699.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

3700.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

3701.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

3702.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably

- 848 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 381 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/29/15    Page 381 of 1249

discoverable by Plaintiffs and the New Hampshire Class.  New GM also had a duty to disclose

because it made many general affirmative representations about the safety, quality, and lack of

defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete

without the disclosure of the additional facts set forth above regarding its actual safety record,

safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered

to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the New Hampshire Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

3703.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the New Hampshire Class.

3704.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the New Hampshire Class and conceal material

information regarding defects that exist in GM-branded vehicles.

3705.   Plaintiffs and the New Hampshire Class were unaware of these omitted material

facts and would not have acted as they did if they had known of the concealed and/or suppressed

facts, in that they would not have purchased cars manufactured by New GM; and/or they would

not have purchased cars manufactured by Old GM in the time after New GM had come into

existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the

vehicles; and/or would not have continued to drive their vehicles or would have taken other

affirmative steps.  Plaintiffs' and the New Hampshire Class's actions were justified.  New GM

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 02/09/15 Page 382 of 1249
Complaint - Part 2 of 2 Pg 382 of 743

was in exclusive control of the material facts and such facts were not known to the public,

Plaintiffs, or the New Hampshire Class.

3706.   Because of the concealment and/or suppression of the facts, Plaintiffs and the

New Hampshire Class sustained damage because they own vehicles that diminished in value as a

result of New GM's concealment of, and failure to timely disclose, the serious defects in millions

of GM-branded vehicles and the serious safety and quality issues engendered by New GM's

corporate policies.  Had they been aware of the many defects that existed in GM-branded

vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or

Certified Previously Owned vehicles after New GM came into existence either would have paid

less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs

regardless of time of purchase or lease would have maintained their vehicles.

3707.   The value of all New Hampshire Class Members' vehicles has diminished as a

result of New GM's fraudulent concealment of the many defects and its systemic safety issues

which have greatly tarnished the GM brand and made any reasonable consumer reluctant to

purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market

value for the vehicles.

3708.   Accordingly, New GM is liable to the New Hampshire Class for damages in an

amount to be proven at trial.

3709.   New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the New Hampshire Class's rights and well-

being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined

according to proof.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 383 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 383 of 1249

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

## (N.H. Rev. Stat. Ann. § 382-A:2-314)

3710.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3711.   This claim is brought only on behalf of New Hampshire residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "New Hampshire Post-Sale ISD Subclass").

3712.   New GM was a merchant with respect to motor vehicles within the meaning of N.H. Rev. Stat. Ann. § 382-A:2-104(1).

3713.   A warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law under N.H. Rev. Stat. Ann. § 382-A:2-314 in the transactions when Plaintiffs purchased their Defective Ignition Switch Vehicles.

3714.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

3715.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the New Hampshire Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/09/15   Page 884 of 1249
Complaint - Part 2 of 2    Pg 384 of 743

3716.   As a direct and proximate result of New GM's breach of the warranties of
merchantability, Plaintiffs and the New Hampshire Post-Sale ISD Subclass members have been
damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

3717.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

3718.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass
members who are New Hampshire residents **and** who owned their Pre-Sale Defective Ignition
Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009
(for the purposes of this claim only, the "New Hampshire Pre-Sale ISD Subclass").

3719.   New GM was aware of the ignition switch defects in millions of vehicles sold by
Old GM from the moment it came into existence upon entry of the Sale Order And Sale
Agreement by which New GM acquired substantially all the assets of Old GM.

3720.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale
Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required
… to send out mailed recall notices to owners of affected Old GM vehicles."  New GM
necessarily had this same knowledge from day one of its existence, as the bankruptcy court
found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including
engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition
Switch Defect prior to the Sale Motion."

3721.   The New Hampshire Pre-Sale ISD Subclass did not receive notice of the ignition
switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 385 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 07/09/15   Page 885 of 1249

notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

3722.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3723.  Because New GM concealed its knowledge of the ignition switch defect, the New Hampshire Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3724.  In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

3725.  The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

3726.  Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

3727.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3728.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3729.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3730.   But for New GM's fraudulent concealment of the ignition switch defects, the New Hampshire Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

3731.   Had the New Hampshire Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

3732.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-mc-02543-JMF Document 5135 Filed 09/09/15 Page 387 of 1249
Complaint - Part 2 of 2 Pg 387 of 743

3733.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

3734.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the New Hampshire Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the New Hampshire Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3735.   Plaintiffs and the New Hampshire Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the New Hampshire Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the New Hampshire Pre-Sale ISD Subclass.

3736.   Because of the concealment and/or suppression of the facts, Plaintiffs and the New Hampshire Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2    Pg 388 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/05/15   Page 388 of 1249

3737.   Accordingly, New GM is liable to the New Hampshire Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

3738.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the New Hampshire Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

3739.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3740.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are New Hampshire residents (the "New Hampshire Pre-Sale ISD Subclass").

3741.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

3742.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

3743.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

- 856 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Case 1:14-mc-02543-JMF   Document 113   Filed 07/09/15   Page 389 of 1249
Complaint - Part 2 of 2    Pg 389 of 743

to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

3744.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3745.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

3746.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale

- 857 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:58   Marked MDL
Complaint - Part 2 of 2   Pg 390 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 890 of 1249

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

3747.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

3748.   Plaintiffs and the New Hampshire Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

3749.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3750.   This claim is brought on behalf of members of the New Hampshire Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "New Hampshire Unjust Enrichment Class").

3751.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

3752.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 391 of 743
Complaint - Part 2 of 2    Pg 391 of 743

3753.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

3754.   Thus, all New Hampshire Unjust Enrichment Class Members conferred a benefit on New GM.

3755.   It is inequitable for New GM to retain these benefits.

3756.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

3757.   New GM knowingly accepted the benefits of its unjust conduct.

3758.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

<div align="center">

**NEW JERSEY**

**COUNT I**

**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**

**(N.J. STAT. ANN. § 56:8-1, *et seq.*)**

</div>

3759.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3760.   This claim is brought only on behalf of Nationwide Class Members who are New Jersey residents (the "New Jersey Class").

3761.   Plaintiffs, the New Jersey Class, and New GM are or were "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 392 of 743
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 892 of 1249

3762.   New GM engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

3763.   The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…"  N.J. STAT. ANN. § 56:8-2. New GM engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Class Members rely upon their acts, concealment, suppression or omissions.

3764.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

3765.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

- 860 -

Act obligations, as discussed above.  New GM became aware of other serious defects and

systemic safety issues years ago, but concealed all of that information until recently.

3766.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

3767.   According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles, and New GM should have

recalled the vehicles years ago.

3768.   By failing to disclose and by actively concealing the many defects in GM-branded

vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in deceptive business practices in violation of the New Jersey CFA.

3769.   In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

3770.   New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 394 of 743
Case 1:14-mc-02543-JMF    Document 135    Filed 07/15/15    Page 894 of 1249

3771.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the New Jersey Class.

3772.   New GM knew or should have known that its conduct violated the New Jersey CFA.

3773.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

3774.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

   a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

   b.    Intentionally concealed the foregoing from Plaintiffs; and/or

   c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

3775.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

3776.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the New Jersey Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

- 862 -

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

3777.  Plaintiffs and the New Jersey Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were

sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would

not have purchased them but for New GM's violations of the New Jersey CFA.

3778.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

New Jersey CFA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the

form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts

and practices that occurred in the course of New GM's business.

3779.  New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

3780.  As a direct and proximate result of New GM's violations of the New Jersey CFA,

Plaintiffs and the New Jersey Class have suffered injury-in-fact and/or actual damage.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-3MF    Document 135    Filed 09/09/15    Page 396 of 1243
Complaint - Part 2 of 2    Pg 396 of 743

3781.   Plaintiffs and the New Jersey Class are entitled to recover legal and/or equitable
relief including an order enjoining New GM's unlawful conduct, treble damages, costs and
reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19, and any other just and
appropriate relief.

<div align="center">

**COUNT II**

**FRAUD BY CONCEALMENT**

</div>

3782.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

3783.   This claim is brought on behalf of Nationwide Class Members who are New
Jersey residents (the "New Jersey Class").

3784.   New GM concealed and suppressed material facts concerning the quality of its
vehicles and the GM brand.

3785.   New GM concealed and suppressed material facts concerning the culture of New
GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety
issues, and a shoddy design process.

3786.   New GM concealed and suppressed material facts concerning the many serious
defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps
to ensure that its employees did not reveal known safety defects to regulators or consumers.

3787.   New GM did so in order to boost confidence in its vehicles and falsely assure
purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was
a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles
are safe and reliable. The false representations were material to consumers, both because they
concerned the quality and safety of the Affected Vehicles and because the representations played
a significant role in the value of the vehicles.

<div align="center">

- 864 -

</div>

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:58 Marked MDL
Case 1:14-md-02543-JMF Document 1319 Filed 09/05/15 Page 397 of 743
Complaint - Part 2 of 2    Pg 397 of 743

3788.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the New Jersey Class.  New GM also had a duty to disclose

because it made many general affirmative representations about the safety, quality, and lack of

defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete

without the disclosure of the additional facts set forth above regarding its actual safety record,

safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered

to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the New Jersey Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

3789.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the New Jersey Class.

3790.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the New Jersey Class and conceal material

information regarding defects that exist in GM-branded vehicles.

3791.   Plaintiffs and the New Jersey Class were unaware of these omitted material facts

and would not have acted as they did if they had known of the concealed and/or suppressed facts,

in that they would not have purchased cars manufactured by New GM; and/or they would not

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 398 of 1249
Complaint - Part 2 of 2    Pg 398 of 743

have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the New Jersey Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the New Jersey Class.

3792.   Because of the concealment and/or suppression of the facts, Plaintiffs and the New Jersey Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies. Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

3793.   The value of all New Jersey Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3794.   Accordingly, New GM is liable to the New Jersey Class for damages in an amount to be proven at trial.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:58    Marked MDL
Complaint - Part 2 of 2    Pg 399 of 743
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 399 of 743

3795.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the New Jersey Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (N.J. STAT. ANN. § 12A:2-314)

3796.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3797.   This claim is brought only on behalf of New Jersey residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "New Jersey Post-Sale ISD Subclass").

3798.   New GM was a merchant with respect to motor vehicles within the meaning of N.J. STAT. ANN. § 12A:2-104(1).

3799.   A warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law under N.J. STAT. ANN. § 12A:2-104(1) in the transactions when Plaintiffs purchased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

3800.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

- 867 -

3801.   New GM was provided notice of these issues by numerous complaints filed
against it, internal investigations, and by numerous individual letters and communications sent
by Plaintiffs and the New Jersey Post-Sale ISD Subclass before or within a reasonable amount of
time after New GM issued the recall and the allegations of vehicle defects became public.

3802.   As a direct and proximate result of New GM's breach of the warranties of
merchantability, Plaintiffs and the New Jersey Post-Sale ISD Subclass members have been
damaged in an amount to be proven at trial.

## COUNT IV
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

3803.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

3804.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass
members who are New Jersey residents *and* who owned their Pre-Sale Defective Ignition Switch
Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the
purposes of this claim only, the "New Jersey Pre-Sale ISD Subclass").

3805.   New GM was aware of the ignition switch defects in millions of vehicles sold by
Old GM from the moment it came into existence upon entry of the Sale Order And Sale
Agreement by which New GM acquired substantially all the assets of Old GM.

3806.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale
Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required
… to send out mailed recall notices to owners of affected Old GM vehicles."  New GM
necessarily had this same knowledge from day one of its existence, as the bankruptcy court
found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

- 868 -

Case 1:14-mc-02543-JMF    Document 1135    Filed 09/09/15    Page 301 of 1249

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition
Switch Defect prior to the Sale Motion."

3807.   The New Jersey Pre-Sale ISD Subclass did not receive notice of the ignition
switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail
notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition
switch defect.

3808.  In September of 2009, the bankruptcy court entered the Bar Date Order,
establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed
against Old GM.

3809.   Because New GM concealed its knowledge of the ignition switch defect, the New
Jersey Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the
passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the
publication notice sent in connection with the Bar Date Order mentioned the ignition switch
defects.

3810.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the
General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the
bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

3811.   The out-of-pocket consideration provided by New GM for its acquisition of Old
GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two
series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively,
the "New GM Securities").

3812.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it
would provide additional consideration if the aggregate amount of allowed general unsecured

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 902 of 1249
Complaint - Part 2 of 2 Pg 402 of 743

claims exceeded $35 billion. In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

3813. As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3814. As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities. After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3815. The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date. While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3816. But for New GM's fraudulent concealment of the ignition switch defects, the New Jersey Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

3817. Had the New Jersey Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

3818. Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 303 of 1249
Complaint - Part 2 of 2    Pg 403 of 743

been required to contribute additional New GM Securities to the GUC Trust for the benefit of the
Pre-Sale Ignition Switch Defect Subclass.

3819.   New GM's concealment and suppression of the material fact of the ignition
switch defect over the first several months of its existence served to prevent the filing of claims
by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the
accordion-feature payments it would otherwise have had to make.

3820.   New GM had a duty to disclose the ignition switch defect because the information
was known and/or accessible only to New GM who had superior knowledge and access to the
facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs
and the New Jersey Pre-Sale ISD Subclass.  These omitted and concealed facts were material
because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles
purchased or leased by Plaintiffs and the New Jersey Pre-Sale ISD Subclass, who had a limited
period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3821.   Plaintiffs and the New Jersey Pre-Sale ISD Subclass were unaware of these
omitted material facts and would not have acted as they did if they had known of the concealed
and/or suppressed facts.  Plaintiffs' and the New Jersey Pre-Sale ISD Subclass's actions were
justified.  New GM was in exclusive control of the material facts and such facts were not known
to the public, Plaintiffs, or the New Jersey Pre-Sale ISD Subclass.

3822.   Because of the concealment and/or suppression of the facts, Plaintiffs and the
New Jersey Pre-Sale ISD Subclass sustained damage because they lost their chance to file a
claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by
the accordion feature). Had they been aware of the ignition switch defects that existed in their

- 871 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 07/09/15    Page 304 of 1249
Complaint - Part 2 of 2    Pg 404 of 743

vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

3823.   Accordingly, New GM is liable to the New Jersey Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

3824.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the New Jersey Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT V**
**THIRD-PARTY BENEFICIARY CLAIM**

3825.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3826.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are New Jersey residents (the "New Jersey Pre-Sale ISD Subclass").

3827.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

3828.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

- 872 -

3829.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

3830.  Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3831.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

3832.  Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-md-02543-3MF    Document 1135    Filed 09/09/15    Page 306 of 1249
Complaint - Part 2 of 2    Pg 406 of 743

can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

3833.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

3834.   Plaintiffs and the New Jersey Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

3835.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3836.   This claim is brought on behalf of members of the New Jersey Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "New Jersey Unjust Enrichment Class").

3837.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

3838.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of

- 874 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 307 of 1249
Complaint - Part 2 of 2    Pg 407 of 743

systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

3839.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

3840.   Thus, all New Jersey Unjust Enrichment Class Members conferred a benefit on New GM.

3841.   It is inequitable for New GM to retain these benefits.

3842.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

3843.   New GM knowingly accepted the benefits of its unjust conduct.

3844.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

# NEW MEXICO

## COUNT I

### VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

#### (N.M. STAT. ANN. §§ 57-12-1, *et seq.*)

3845.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3846.   This claim is brought only on behalf of Nationwide Class Members who are New Mexico residents (the "New Mexico Class").

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 308 of 1249
Complaint - Part 2 of 2    Pg 408 of 743

3847.   New GM, Plaintiffs and New Mexico Class Members are or were "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. STAT. ANN. § 57-12-2.

3848.   New GM's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

3849.   The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive."  N.M. STAT. ANN. § 57-12-2(D).  New GM's acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. STAT. ANN. § 57-12-2(D).  In addition, New GM's actions constitute unconscionable actions under N.M. STAT. ANN. § 57-12-2(E), since they took advantage of the lack of knowledge, ability, experience, and capacity of the New Mexico Class Members to a grossly unfair degree.

3850.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

3851.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

- 876 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/05/15    Page 909 of 1249
Complaint - Part 2 of 2    Pg 409 of 743

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

3852.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

3853.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

3854.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the New Mexico UTPA.

3855.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

3856.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 410 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 810 of 1249

branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

3857.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the New Mexico Class.

3858.   New GM knew or should have known that its conduct violated the New Mexico UTPA.

3859.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

3860.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a. Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

> b. Intentionally concealed the foregoing from Plaintiffs; and/or

> c. Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

3861.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

- 878 -

3862.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the New Mexico Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

3863.   Plaintiffs and the New Mexico Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the New Mexico UTPA.

3864.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the New Mexico UTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/05/15    Page 312 of 1249
Complaint - Part 2 of 2    Pg 412 of 743

3865.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

3866.   As a direct and proximate result of New GM's violations of the New Mexico UTPA, Plaintiffs and the New Mexico Class have suffered injury-in-fact and/or actual damage.

3867.   New Mexico Class Members seek punitive damages against New GM because New GM's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith. New GM fraudulently and willfully misrepresented the safety and reliability of GM-branded vehicles, deceived New Mexico Class Members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting the myriad flaws in the GM-branded vehicles that New GM repeatedly promised New Mexico Class Members were safe.  Because New GM's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith, it warrants punitive damages.

3868.   Because New GM's unconscionable, willful conduct caused actual harm to New Mexico Class Members, the New Mexico Class seeks recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. STAT. ANN. § 57-12-10.

## COUNT II

## FRAUD BY CONCEALMENT

3869.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3870.   This claim is brought on behalf of Nationwide Class Members who are New Mexico residents (the "New Mexico Class").

- 880 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 413 of 743
Case 1:14-mc-02543-JMF   Document 135   Entered 09/09/15   Page 913 of 1249

3871.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

3872.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

3873.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

3874.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

3875.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the New Mexico Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-MF    Document 1135    Filed 09/09/15    Page 314 of 1248
Complaint - Part 2 of 2    Pg 414 of 743

to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the New Mexico Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

3876. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the New Mexico Class.

3877. On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the New Mexico Class and conceal material information regarding defects that exist in GM-branded vehicles.

3878. Plaintiffs and the New Mexico Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the New Mexico Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the New Mexico Class.

3879. Because of the concealment and/or suppression of the facts, Plaintiffs and the New Mexico Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 415 of 1249
Complaint - Part 2 of 2    Pg 415 of 743

of GM-branded vehicles and the serious safety and quality issues engendered by New GM's

corporate policies.  Had they been aware of the many defects that existed in GM-branded

vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or

Certified Previously Owned vehicles after New GM came into existence either would have paid

less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs

regardless of time of purchase or lease would have maintained their vehicles.

3880.   The value of all New Mexico Class Members' vehicles has diminished as a result

of New GM's fraudulent concealment of the many defects and its systemic safety issues which

have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase

any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for

the vehicles.

3881.   Accordingly, New GM is liable to the New Mexico Class for damages in an

amount to be proven at trial.

3882.   New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the New Mexico Class's rights and well-

being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined

according to proof.

<div align="center">

### COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (N.M. Stat. Ann. § 55-2-314)

</div>

3883.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

<div align="center">- 883 -</div>

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 316 of 743
Complaint - Part 2 of 2    Pg 416 of 743

3884.   This claim is brought only on behalf of New Mexico residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "New Mexico Post-Sale ISD Subclass").

3885.   New GM was a merchant with respect to motor vehicles within the meaning of N.M. STAT. ANN. § 55-2-104(1).

3886.   A warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law under N.M. STAT. ANN. § 55-2-314 in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

3887.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

3888.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the New Mexico Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

3889.   As a direct and proximate result of New GM's breach of the warranties of merchantability, Plaintiffs and the New Mexico Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 3135 Filed 09/25/15 Page 317 of 1249
Complaint - Part 2 of 2    Pg 417 of 743

## COUNT IV
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

3890.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3891.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are New Mexico residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "New Mexico Pre-Sale ISD Subclass").

3892.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

3893.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

3894.   The New Mexico Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/09/15   Page 318 of 1249
Complaint - Part 2 of 2    Pg 418 of 743

3895.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3896.  Because New GM concealed its knowledge of the ignition switch defect, the New Mexico Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3897.  In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

3898.  The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

3899.  Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

3900.  As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3901.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3902.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

3903.   But for New GM's fraudulent concealment of the ignition switch defects, the New Mexico Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

3904.   Had the New Mexico Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

3905.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

3906.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

- 887 -

3907.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the New Mexico Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the New Mexico Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

3908.   Plaintiffs and the New Mexico Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the New Mexico Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the New Mexico Pre-Sale ISD Subclass.

3909.   Because of the concealment and/or suppression of the facts, Plaintiffs and the New Mexico Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

3910.   Accordingly, New GM is liable to the New Mexico Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

3911.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the New Mexico Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
### THIRD-PARTY BENEFICIARY CLAIM

3912. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3913. This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are New Mexico residents (the "New Mexico Pre-Sale ISD Subclass").

3914. In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

3915. With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

3916. But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

3917. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death,

- 889 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 5113 Filed 02/05/15 Page 3 of 1249
Complaint - Part 2 of 2 Pg 422 of 743

injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

3918.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

3919.  Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

3920.  New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 323 of 1249
Complaint - Part 2 of 2   Pg 423 of 743

3921.   Plaintiffs and the New Mexico Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

3922.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3923.   This claim is brought on behalf of members of the New Mexico Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "New Mexico Unjust Enrichment Class").

3924.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

3925.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

3926.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/05/15   Page 324 of 1249
Complaint - Part 2 of 2    Pg 424 of 743

3927.   Thus, all New Mexico Unjust Enrichment Class Members conferred a benefit on New GM.

3928.   It is inequitable for New GM to retain these benefits.

3929.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

3930.   New GM knowingly accepted the benefits of its unjust conduct.

3931.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## NEW YORK

## COUNT I

## DECEPTIVE ACTS OR PRACTICES

### (N.Y. GEN. BUS. LAW § 349 and 350)

3932.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3933.   This claim is brought only on behalf of Class Members who are New York residents (the "New York Class").

3934.   Plaintiffs and New York Class Members are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. GEN. BUS. LAW § 349(h).

3935.   New GM is a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. BUS. LAW § 349.

3936.   The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. GEN. BUS. LAW § 349.  New GM's conduct, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL.  Furthermore, New GM's deceptive acts and practices, which were intended to

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 425 of 743
Case 1:14-mc-02543-3MF   Document 135   Filed 09/09/15   Page 325 of 1249

mislead consumers who were in the process of purchasing and/or leasing the Affected Vehicles, was conduct directed at consumers.

3937.   New GM's actions as set forth above occurred in the conduct of trade or commerce.

3938.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

3939.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

3940.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/05/15   Page 826 of 1249
Complaint - Part 2 of 2   Pg 426 of 743

3941.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

3942.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the New York GBL.

3943.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

3944.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

3945.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the New York Class.

3946.   New GM knew or should have known that its conduct violated the New York GBL.

3947.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 827 of 1249
Complaint - Part 2 of 2    Pg 427 of 743

3948.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

    a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

3949.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

3950.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the New York Class.  A vehicle

made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

3951.   Plaintiffs and the New York Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 328 of 1249
Complaint - Part 2 of 2    Pg 428 of 743

them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the New York GBL.

3952.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the New York GBL.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

3953.  New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

3954.  As a direct and proximate result of New GM's violations of the New York GBL, Plaintiffs and the New York Class have suffered injury-in-fact and/or actual damage.

3955.  New York Class Members seek punitive damages against New GM because New GM's conduct was egregious.  New GM misrepresented the safety and reliability of millions of GM-branded vehicles, concealed myriad defects in millions of GM-branded vehicles and the systemic safety issues plaguing the company, deceived Class Members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public

- 896 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 829 of 1249
Complaint - Part 2 of 2   Pg 429 of 743

relations nightmare of correcting the serious flaw in its culture and in millions of ==GM-branded==
==vehicles.== New GM's egregious conduct warrants punitive damages.

3956.   Because New GM's willful and knowing conduct caused injury to Class
Members, the New York Class seeks recovery of actual damages or $50, whichever is greater,
discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and
costs, an order enjoining New GM's deceptive conduct, and any other just and proper relief
available under N.Y. GEN. BUS. LAW § 349.

## COUNT II

## FRAUD BY CONCEALMENT

3957.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

3958.   This claim is brought on behalf of Nationwide Class Members who are New
York residents (the "New York Class").

3959.   New GM concealed and suppressed material facts concerning the quality of its
vehicles and ==the GM brand.==

3960.   New GM concealed and suppressed material facts concerning the culture of New
GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety
issues, and a shoddy design process.

3961.   New GM concealed and suppressed material facts concerning the many serious
defects plaguing ==GM-branded vehicles,== and that it valued cost-cutting over safety and took steps
to ensure that its employees did not reveal known safety defects to regulators or consumers.

3962.   New GM did so in order to boost confidence in its vehicles and falsely assure
purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was
a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

- 897 -

Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 530 of 1249

are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

3963.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the New York Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the New York Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

3964.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the New York Class.

3965.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the New York Class and conceal material information regarding defects that exist in GM-branded vehicles.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 331 of 1249
Complaint - Part 2 of 2    Pg 431 of 743

3966.   Plaintiffs and the New York Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the New York Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the New York Class.

3967.   Because of the concealment and/or suppression of the facts, Plaintiffs and the New York Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

3968.   The value of all New York Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 02/05/15   Page 932 of 1249
Complaint - Part 2 of 2    Pg 432 of 743

3969.   Accordingly, New GM is liable to the New York Class for damages in an amount to be proven at trial.

3970.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the New York Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(N.Y. U.C.C. § 2-314)**

</div>

3971.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3972.   This claim is brought only on behalf of New York residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "New York Post-Sale ISD Subclass").

3973.   New GM was a merchant with respect to motor vehicles within the meaning of N.Y. U.C.C. § 2-104(1).

3974.   A warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law under N.Y. U.C.C. § 2-314 in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

3975.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems

<div align="center">- 900 -</div>

that permit sudden unintended shutdown to occur, with the attendant shut down of power
steering and power brakes and the nondeployment of airbags in the event of a collision.

3976.   New GM was provided notice of these issues by numerous complaints filed
against it, internal investigations, and by numerous individual letters and communications sent
by Plaintiffs and the New York Post-Sale ISD Subclass before or within a reasonable amount of
time after New GM issued the recall and the allegations of vehicle defects became public.

3977.   As a direct and proximate result of New GM's breach of the warranties of
merchantability, Plaintiffs and the New York Post-Sale ISD Subclass members have been
damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**

**VIOLATION OF NEW YORK'S FALSE ADVERTISING ACT**

**(N.Y. GEN. BUS. LAW § 350)**

</div>

3978.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

3979.   This claim is brought only on behalf of Class Members who are New York
residents (the "New York Class").

3980.   New GM was and is engaged in the "conduct of business, trade or commerce"
within the meaning of N.Y. GEN. BUS. LAW § 350.

3981.   N.Y. GEN. BUS. LAW § 350 makes unlawful "[f]alse advertising in the conduct of
any business, trade or commerce."  False advertising includes "advertising, including labeling, of
a commodity . . . if such advertising is misleading in a material respect," taking into account "the
extent to which the advertising fails to reveal facts material in light of … representations [made]
with respect to the commodity …."  N.Y. GEN. BUS. LAW § 350-a.

010440-11 789697 V1

3982.   New GM caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to New GM, to be untrue and misleading to consumers and the New York Class.

3983.   New GM has violated § 350 because the misrepresentations and omissions regarding the defects, and New GM's systemic devaluation of safety, as set forth above, were material and likely to deceive a reasonable consumer.

3984.   New York Class Members have suffered an injury, including the loss of money or property, as a result of New GM's false advertising.  In purchasing or leasing their vehicles, New York Plaintiffs and the New York Class relied on the misrepresentations and/or omissions of New GM with respect to the safety and reliability of the Affected Vehicles.  New GM's representations were false and/or misleading because the concealed defects and safety issues seriously undermine the value of the Affected Vehicles.  Had Plaintiffs and the New York Class known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.

3985.   Pursuant to N.Y. GEN. BUS. LAW § 350 e, the New York Class seeks monetary relief against New GM  measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for New York Class member.  Because New GM's conduct was committed willfully and knowingly, New York members are entitled to recover three times actual damages, up to $10,000, for each New York Class member.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1135    Filed 09/09/15    Page 835 of 1249
Complaint - Part 2 of 2    Pg 435 of 743

3986.   The New York Class also seeks an order enjoining New GM's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under General Business Law §§ 349–350.

<div style="text-align:center">

**COUNT V**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

3987.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3988.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are New York residents ***and*** who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "New York Pre-Sale ISD Subclass").

3989.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

3990.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

3991.   The New York Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice

<div style="text-align:center">- 903 -</div>

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 2135    Filed 09/09/15    Page 936 of 1249
Complaint - Part 2 of 2    Pg 436 of 743

nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

3992.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

3993.   Because New GM concealed its knowledge of the ignition switch defect, the New York Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

3994.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

3995.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

3996.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 437 of 1249
Complaint - Part 2 of 2    Pg 437 of 743

3997.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

3998.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

3999.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4000.   But for New GM's fraudulent concealment of the ignition switch defects, the New York Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4001.   Had the New York Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4002.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

4003.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4004.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the New York Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the New York Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4005.   Plaintiffs and the New York Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the New York Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the New York Pre-Sale ISD Subclass.

4006.   Because of the concealment and/or suppression of the facts, Plaintiffs and the New York Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 939 of 1249
Complaint - Part 2 of 2    Pg 439 of 743

4007.   Accordingly, New GM is liable to the New York Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4008.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the New York Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT VI
### THIRD-PARTY BENEFICIARY CLAIM

4009.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4010.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are New York residents (the "New York Pre-Sale ISD Subclass").

4011.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

4012.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4013.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

- 907 -

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 440 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 340 of 1249

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

4014. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4015. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

4016. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 341 of 1249
Complaint - Part 2 of 2 Pg 441 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4017.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4018.   Plaintiffs and the New York Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VII

## UNJUST ENRICHMENT

4019.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4020.   This claim is brought on behalf of members of the New York Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "New York Unjust Enrichment Class").

4021.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4022.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 442 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 342 of 1249

4023.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4024.   Thus, all New York Unjust Enrichment Class Members conferred a benefit on New GM.

4025.   It is inequitable for New GM to retain these benefits.

4026.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

4027.   New GM knowingly accepted the benefits of its unjust conduct.

4028.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## NORTH CAROLINA

## COUNT I

### VIOLATION OF NORTH CAROLINA'S UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT

### (N.C. GEN. STAT. § 75-1.1, *et seq.*)

4029.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4030.   This claim is brought only on behalf of Nationwide Class Members who are North Carolina residents (the "North Carolina Class").

4031.   New GM engaged in "commerce" within the meaning of N.C. GEN. STAT. § 75-1.1(b).

4032.   The North Carolina Act broadly prohibits "unfair or deceptive acts or practices in or affecting commerce."  N.C. GEN. STAT. § 75-1.1(a).  As alleged above and below, New GM willfully committed unfair or deceptive acts or practices in violation of the North Carolina Act.

4033.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

4034.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

4035.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

4036.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

4037.   By failing to disclose and by actively concealing the many defects in ==GM-branded== ==vehicles,== by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the North Carolina Act.

4038.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that ==GM-branded vehicles== were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

4039.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

4040.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the North Carolina Class.

4041.   New GM knew or should have known that its conduct violated the North Carolina Act.

4042.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and ==the GM brand== that were either false or misleading.

4043.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

       a.     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 445 of 743
Case 1:14-mc-02543-3MF    Document 135    Filed 09/09/15    Page 345 of 1249

regardless of quality, and actively discouraged employees
from finding and flagging known safety defects, and that
this approach would necessarily cause the existence of
more defects in the vehicles it designed and manufactured;

b.    Intentionally concealed the foregoing from Plaintiffs;
and/or

c.    Made incomplete representations about the safety and
reliability of the Affected Vehicles generally, and the
ignition switch and other defects in particular, while
purposefully withholding material facts from Plaintiffs that
contradicted these representations.

4044.    Because New GM fraudulently concealed the many defects in GM-branded
vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,
the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to
those vehicles by New GM's conduct, they are now worth significantly less than they otherwise
would be.

4045.    New GM's systemic devaluation of safety and its concealment of a plethora of
defects in GM-branded vehicles were material to Plaintiffs and the North Carolina Class.  A
vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an
otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that
conceals defects rather than promptly remedies them.

4046.    Plaintiffs and the North Carolina Class suffered ascertainable loss caused by
New GM's misrepresentations and its concealment of and failure to disclose material
information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's
inception either would have paid less for their vehicles or would not have purchased or leased
them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were
sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would
not have purchased them but for New GM's violations of the North Carolina Act.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 346 of 1249
Complaint - Part 2 of 2    Pg 446 of 743

4047.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

North Carolina Act Dakota.  And, in any event, all GM vehicle owners suffered ascertainable

loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and

unfair acts and practices that occurred in the course of New GM's business.

4048.   New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

4049.   As a direct and proximate result of New GM's violations of the North Carolina

Act, Plaintiffs and the North Carolina Class have suffered injury-in-fact and/or actual damage.

4050.   North Carolina Class Members seek punitive damages against New GM because

New GM's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

New GM fraudulently and willfully misrepresented the safety and reliability of GM-branded

vehicles, deceived North Carolina Class Members on life-or-death matters, and concealed

material facts that only they knew, all to avoid the expense and public relations nightmare of

correcting the myriad flaws in the GM-branded vehicles it repeatedly promised Class Members

were safe.  Because New GM's conduct was malicious, willful, reckless, wanton, fraudulent and

in bad faith, it warrants punitive damages.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1513    Filed 09/09/15    Page 347 of 1249
Complaint - Part 2 of 2    Pg 447 of 743

4051.   Plaintiffs seek an order for treble their actual damages, an order enjoining
New GM's unlawful acts, costs of Court, attorney's fees, and any other just and proper relief
available under the North Carolina Act, N.C. GEN. STAT. § 75-16.

<div align="center">

**COUNT II**

**FRAUD BY CONCEALMENT**

</div>

4052.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

4053.   This claim is brought on behalf of Nationwide Class Members who are North
Carolina residents (the "North Carolina Class").

4054.   New GM concealed and suppressed material facts concerning the quality of its
vehicles and the GM brand.

4055.   New GM concealed and suppressed material facts concerning the culture of New
GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety
issues, and a shoddy design process.

4056.   New GM concealed and suppressed material facts concerning the many serious
defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps
to ensure that its employees did not reveal known safety defects to regulators or consumers.

4057.   New GM did so in order to boost confidence in its vehicles and falsely assure
purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was
a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles
are safe and reliable. The false representations were material to consumers, both because they
concerned the quality and safety of the Affected Vehicles and because the representations played
a significant role in the value of the vehicles.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Complaint - Part 2 of 2 Pg 448 of 743
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 348 of 1249

4058.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the North Carolina Class.  New GM also had a duty to disclose

because it made many general affirmative representations about the safety, quality, and lack of

defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete

without the disclosure of the additional facts set forth above regarding its actual safety record,

safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered

to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the North Carolina Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

New GM actively concealed and/or suppressed these material facts, in whole or in part, to

protect its profits and avoid recalls that would hurt the brand's image and cost New GM money,

and it did so at the expense of Plaintiffs and the North Carolina Class.

4059.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the North Carolina Class and conceal material

information regarding defects that exist in GM-branded vehicles.

Plaintiffs and the North Carolina Class were unaware of these omitted material facts and

would not have acted as they did if they had known of the concealed and/or suppressed facts, in

that they would not have purchased cars manufactured by New GM; and/or they would not have

- 916 -

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Complaint - Part 2 of 2 Pg 449 of 743
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 349 of 1249

purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the North Carolina Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the North Carolina Class.

Because of the concealment and/or suppression of the facts, Plaintiffs and the North Carolina Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies. Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

4060. The value of all North Carolina Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4061. Accordingly, New GM is liable to the North Carolina Class for damages in an amount to be proven at trial.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 350 of 1249
Complaint - Part 2 of 2    Pg 450 of 743

4062.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the North Carolina Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(N.C. GEN. STAT. § 25-2-314)**

</div>

4063.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4064.   This claim is brought only on behalf of North Carolina residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "North Carolina Post-Sale ISD Subclass").

4065.   New GM was a merchant with respect to motor vehicles within the meaning of N.C. GEN. STAT. § 25-2-104(1).

4066.   A warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law under N.C. GEN. STAT. § 25-2-314 in the transactions when Plaintiffs purchased their Defective Ignition Switch Vehicles.

4067.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

<div align="center">

- 918 -

</div>

4068.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the North Carolina Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

4069.   As a direct and proximate result of New GM's breach of the warranty of merchantability, Plaintiffs and the North Carolina Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

4070.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4071.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are North Carolina residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "North Carolina Pre-Sale ISD Subclass").

4072.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

4073.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition

Switch Defect prior to the Sale Motion."

4074.   The North Carolina Pre-Sale ISD Subclass did not receive notice of the ignition

switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail

notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition

switch defect.

4075.  In September of 2009, the bankruptcy court entered the Bar Date Order,

establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed

against Old GM.

4076.   Because New GM concealed its knowledge of the ignition switch defect, the

North Carolina Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior

to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the

publication notice sent in connection with the Bar Date Order mentioned the ignition switch

defects.

4077.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the

General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the

bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4078.   The out-of-pocket consideration provided by New GM for its acquisition of Old

GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two

series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively,

the "New GM Securities").

4079.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it

would provide additional consideration if the aggregate amount of allowed general unsecured

- 920 -

claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

4080.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4081.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4082.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4083.   But for New GM's fraudulent concealment of the ignition switch defects, the North Carolina Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4084.   Had the North Carolina Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4085.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 354 of 1243
Complaint - Part 2 of 2    Pg 454 of 743

been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

4086.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4087.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the North Carolina Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the North Carolina Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4088.   Plaintiffs and the North Carolina Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the North Carolina Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the North Carolina Pre-Sale ISD Subclass.

4089.   Because of the concealment and/or suppression of the facts, Plaintiffs and the North Carolina Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 955 of 1249
Complaint - Part 2 of 2     Pg 455 of 743

vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

4090.   Accordingly, New GM is liable to the North Carolina Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4091.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the North Carolina Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

4092.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4093.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are North Carolina residents (the "North Carolina Pre-Sale ISD Subclass").

4094.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

4095.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4096. But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

4097. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4098. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

4099. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM

- 924 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 135 Filed 09/09/15 Page 957 of 1243
Complaint - Part 2 of 2 Pg 457 of 743

can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4100.  New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4101.  Plaintiffs and the North Carolina Pre-Sale ISD Subclass were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

4102.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4103.  This claim is brought on behalf of members of the North Carolina Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "North Carolina Unjust Enrichment Class").

4104.  New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4105.  New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of

- 925 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 958 of 1249
Complaint - Part 2 of 2   Pg 458 of 743

systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

4106.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4107.   Thus, all North Carolina Unjust Enrichment Class Members conferred a benefit on New GM.

4108.   It is inequitable for New GM to retain these benefits.

4109.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

4110.   New GM knowingly accepted the benefits of its unjust conduct.

4111.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**NORTH DAKOTA**

**COUNT I**

**VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT**

**(N.D. CENT. CODE § 51-15-02)**

4112.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4113.   This claim is brought only on behalf of Nationwide Class Members who are North Dakota residents (the "North Dakota Class").

010440-11 789697 V1

4114.   Plaintiffs, the North Dakota Class Members, and New GM are "persons" within the meaning of N.D. CENT. CODE § 51-15-02(4).

4115.   New GM engaged in the "sale" of "merchandise" within the meaning of N.D. CENT. CODE § 51-15-02(3), (5).

4116.   The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise…." N.D. CENT. CODE § 51-15-02. As set forth above and below, New GM committed deceptive acts or practices, with the intent that Class Members rely thereon in connection with their purchase or lease of the Affected Vehicles.

4117.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

4118.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

- 927 -

09-50026-mg  Doc 13469-3  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-3MF  Document 5135  Filed 09/25/13  Page 360 of 1249
Complaint - Part 2 of 2    Pg 460 of 743

4119.   New GM was also aware that it valued cost-cutting over safety, selected parts
from the cheapest supplier regardless of quality, and actively discouraged employees from
finding and flagging known safety defects, and that this approach would necessarily cause the
existence of more defects in the vehicles it designed and manufactured and the failure to disclose
and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

4120.   According to one report from the Center for Auto Safety, some 2,004 deaths and
injuries are connected with recently recalled GM-branded vehicles, and New GM should have
recalled the vehicles years ago.

4121.   By failing to disclose and by actively concealing the many defects in GM-branded
vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself
as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,
New GM engaged in deceptive business practices in violation of the North Dakota CFA.

4122.   In the course of New GM's business, it willfully failed to disclose and actively
concealed the dangerous risk posed by the many safety issues and serious defects discussed
above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles
were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that
valued safety and stood behind its vehicles once they are on the road.

4123.   New GM's unfair or deceptive acts or practices were likely to and did in fact
deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-
branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the
true value of the Affected Vehicles.

4124.   New GM intentionally and knowingly misrepresented material facts regarding the
Affected Vehicles with an intent to mislead Plaintiffs and the North Dakota Class.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 361 of 1249
Complaint - Part 2 of 2   Pg 461 of 743

4125.   New GM knew or should have known that its conduct violated the North Dakota CFA.

4126.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

4127.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

a.   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

4128.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

4129.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the North Dakota Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

- 929 -

4130.   Plaintiffs and the North Dakota Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the North Dakota CFA.

4131.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the North Dakota CFA.  And, in any event, they suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

4132.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

4133.   As a direct and proximate result of New GM's violations of the North Dakota CFA, Plaintiffs and the North Dakota Class have suffered injury-in-fact and/or actual damage.

4134.   North Dakota Class Members seek punitive damages against New GM because New GM's conduct was egregious.  New GM misrepresented the safety and reliability of

millions of GM-branded vehicles, concealed myriad defects in millions of GM-branded vehicles and the systemic safety issues plaguing the company, deceived North Dakota Class Members on life-or-death matters, and concealed material facts that only New GM knew, all to avoid the expense and public relations nightmare of correcting the serious flaw in its culture and in millions of GM-branded vehicles. New GM's egregious conduct warrants punitive damages.

4135.   Further, New GM knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, New GM is liable to Plaintiffs and the North Dakota Class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements.  Plaintiffs further seek an order enjoining New GM's unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

## COUNT II

## FRAUD BY CONCEALMENT

4136.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4137.   This claim is brought on behalf of Nationwide Class Members who are North Dakota residents (the "North Dakota Class").

4138.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

4139.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

4140.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 464 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 09/05/15   Page 964 of 1249

4141.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

4142.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the North Dakota Class.  New GM also had a duty to disclose

because it made many general affirmative representations about the safety, quality, and lack of

defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete

without the disclosure of the additional facts set forth above regarding its actual safety record,

safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered

to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the North Dakota Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

4143.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the North Dakota Class.

4144.   On information and belief, New GM has still not made full and adequate
disclosure and continues to defraud Plaintiffs and the North Dakota Class and conceal material
information regarding defects that exist in GM-branded vehicles.

4145.   Plaintiffs and the North Dakota Class were unaware of these omitted material
facts and would not have acted as they did if they had known of the concealed and/or suppressed
facts, in that they would not have purchased cars manufactured by New GM; and/or they would
not have purchased cars manufactured by Old GM in the time after New GM had come into
existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the
vehicles; and/or would not have continued to drive their vehicles or would have taken other
affirmative steps.  Plaintiffs' and the North Dakota Class's actions were justified.  New GM was
in exclusive control of the material facts and such facts were not known to the public, Plaintiffs,
or the North Dakota Class.

4146.   Because of the concealment and/or suppression of the facts, Plaintiffs and the
North Dakota Class sustained damage because they own vehicles that diminished in value as a
result of New GM's concealment of, and failure to timely disclose, the serious defects in millions
of GM-branded vehicles and the serious safety and quality issues engendered by New GM's
corporate policies.  Had they been aware of the many defects that existed in GM-branded
vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or
Certified Previously Owned vehicles after New GM came into existence either would have paid
less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs
regardless of time of purchase or lease would have maintained their vehicles.

4147.   The value of all North Dakota Class Members' vehicles has diminished as a result
of New GM's fraudulent concealment of the many defects and its systemic safety issues which

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 466 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 966 of 1249

have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4148.   Accordingly, New GM is liable to the North Dakota Class for damages in an amount to be proven at trial.

4149.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the North Dakota Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

#### (N.D. CENT. CODE § 41-02-31)

4150.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4151.   This claim is brought only on behalf of North Dakota residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "North Dakota Post-Sale ISD Subclass").

4152.   New GM was a merchant with respect to motor vehicles.

4153.   A warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

4154.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-3MF   Document 135   Filed 09/09/15   Page 967 of 1249
Complaint - Part 2 of 2    Pg 467 of 743

Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

4155.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the North Dakota Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

4156.   As a direct and proximate result of New GM's breach of the warranties of merchantability, Plaintiffs and the North Dakota Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

4157.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4158.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are North Dakota residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "North Dakota Pre-Sale ISD Subclass").

4159.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

4160.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 968 of 1249
Complaint - Part 2 of 2    Pg 468 of 743

necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

4161.   The North Dakota Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

4162.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

4163.   Because New GM concealed its knowledge of the ignition switch defect, the North Dakota Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

4164.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4165.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

4166.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

4167.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4168.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4169.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4170.   But for New GM's fraudulent concealment of the ignition switch defects, the North Dakota Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4171.   Had the North Dakota Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

010440-11  789697 V1

4172.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

4173.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4174.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the North Dakota Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the North Dakota Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4175.   Plaintiffs and the North Dakota Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the North Dakota Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the North Dakota Pre-Sale ISD Subclass.

4176.   Because of the concealment and/or suppression of the facts, Plaintiffs and the North Dakota Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by

the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

4177.   Accordingly, New GM is liable to the North Dakota Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4178.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the North Dakota Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

4179.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4180.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are North Dakota residents (the "North Dakota Pre-Sale ISD Subclass").

4181.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

- 939 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 472 of 743
Case 1:14-mc-02543-JMF    Document 1135    Filed 02/09/15    Page 872 of 1249

4182.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4183.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

4184.  Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4185.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

- 940 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 473 of 743
Case 1:14-mc-02543-JMF   Document 3135   Filed 09/09/15   Page 373 of 1249

4186.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4187.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4188.   Plaintiffs and the North Dakota Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

<div align="center">

**COUNT VI**

**UNJUST ENRICHMENT**

</div>

4189.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4190.   This claim is brought on behalf of members of the North Dakota Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "North Dakota Unjust Enrichment Class").

<div align="center">

- 941 -

</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 474 of 743
Case 14-1-mc-02543-3MF   Document 5135   Entered 09/09/15   Page 374 of 1249

4191.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4192.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

4193.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4194.   Thus, all North Dakota Unjust Enrichment Class Members conferred a benefit on New GM.

4195.   It is inequitable for New GM to retain these benefits.

4196.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

4197.   New GM knowingly accepted the benefits of its unjust conduct.

4198.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 375 of 1249
Complaint - Part 2 of 2    Pg 475 of 743

# OHIO

## COUNT I

## VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT

### (OHIO REV. CODE ANN. § 1345.01, *et seq.*)

4199.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4200.   This claim is brought only on behalf of Nationwide Class Members who are Ohio residents (the "Ohio Class").

4201.   New GM is a "supplier" as that term is defined in OHIO REV. CODE § 1345.01(C).

4202.   Plaintiffs and the Ohio Class are "consumers" as that term is defined in OHIO REV. CODE § 1345.01(D), and their purchases and leases of the Affected Vehicles are "consumer transactions" within the meaning of OHIO REV. CODE § 1345.01(A).

4203.   The Ohio Consumer Sales Practices Act ("Ohio CSPA"), OHIO REV. CODE § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade they are not; and (iii) the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.  *Id.*  New GM's conduct as alleged above and below constitutes unfair and/or deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02.

4204.   By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in deceptive business practices prohibited by the Ohio CSPA, including:  representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard,

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/09/15   Page 876 of 1249
Complaint - Part 2 of 2    Pg 476 of 743

quality, and grade when they are not; representing that the subject of a transaction involving

Affected Vehicles has been supplied in accordance with a previous representation when it has

not; and engaging in other unfair or deceptive acts or practices.

4205.   New GM's actions as set forth above occurred in the conduct of trade or

commerce.

4206.   In the course of its business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

4207.   From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

Act obligations, as discussed above.  New GM became aware of other serious defects and

systemic safety issues years ago, but concealed all of that information until recently.

4208.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 377 of 1249
Complaint - Part 2 of 2   Pg 477 of 743

4209.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

4210.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Ohio CSPA.

4211.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

4212.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

4213.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Ohio Class.

4214.   New GM knew or should have known that its conduct violated the Ohio CSPA.

4215.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

4216.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

- 945 -

  a.  Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

  b.  Intentionally concealed the foregoing from Plaintiffs; and/or

  c.  Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

4217. Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

4218. New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Ohio Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

4219. Plaintiffs and the Ohio Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned,"

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-3MF   Document 135   Filed 09/09/15   Page 379 of 1249
Complaint - Part 2 of 2    Pg 479 of 743

they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Ohio CSPA.

4220.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Ohio CSPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

4221.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

4222.   As a direct and proximate result of New GM's violations of the Ohio CSPA, Plaintiffs and the Ohio Class have suffered injury-in-fact and/or actual damage.

4223.   Ohio Class Members seek punitive damages against New GM because New GM's conduct was egregious.  New GM misrepresented the safety and reliability of millions of GM-branded vehicles, concealed myriad defects in millions of GM-branded vehicles and the systemic safety issues plaguing New GM, deceived Class Members on life-or-death matters, and concealed material facts that only New GM knew, all to avoid the expense and public relations nightmare of correcting the serious flaw in its culture and in millions of GM-branded vehicles.  New GM's egregious conduct warrants punitive damages.

010440-11 789697 V1

4224.   Plaintiffs and the Ohio Class specifically do not allege herein a claim for violation of OHIO REV. CODE § 1345.72.

4225.   New GM was on notice pursuant to OHIO REV. CODE § 1345.09(B) that its actions constituted unfair, deceptive, and unconscionable practices by, for example, *Mason v. Mercedes-Benz USA, LLC*, 2005 Ohio App. LEXIS 3911, at *33 (S.D. Ohio Aug. 18, 2005), and *Lilly v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 22114, at *17-18 (S.D. Ohio Apr. 21, 2006). Further, New GM's conduct as alleged above constitutes an act or practice previously declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 and previously determined by Ohio courts to violate Ohio's Consumer Sales Practices Act and was committed after the decisions containing these determinations were made available for public inspection under division (A)(3) of O.R.C. § 1345.05.  The applicable rule and Ohio court opinions include, but are not limited to:  OAC 109:4-3-16; *Mason v. Mercedes-Benz USA, LLC*, 2005 Ohio 4296 (Ohio Ct. App. 2005); *Khouri v. Lewis*, Cuyahoga Common Pleas No. 342098 (2001); *State ex rel. Montgomery v. Canterbury*, Franklin App. No. 98CVH054085 (2000); and *Fribourg v. Vandemark* (July 26, 1999), Clermont App. No CA99-02-017, unreported (PIF # 10001874).

4226.   As a result of the foregoing wrongful conduct of New GM, Plaintiffs and the Ohio Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining New GM's deceptive and unfair conduct, treble damages, court costs and reasonable attorneys' fees, pursuant to OHIO REV. CODE § 1345.09, *et seq*.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1135 Filed 09/09/15 Page 381 of 1249
Complaint - Part 2 of 2 Pg 481 of 743

## COUNT II

## FRAUD BY CONCEALMENT

4227.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4228.   This claim is brought on behalf of Nationwide Class Members who are Ohio residents (the "Ohio Class").

4229.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

4230.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

4231.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

4232.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

4233.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably

- 949 -

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 482 of 743
Case 14-mc-02543-JMF   Document 135   Filed 09/29/15   Page 382 of 1249

discoverable by Plaintiffs and the Ohio Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Ohio Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

4234.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Ohio Class.

4235.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Ohio Class and conceal material information regarding defects that exist in GM-branded vehicles.

4236.   Plaintiffs and the Ohio Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 483 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 07/09/15   Page 383 of 1249

Plaintiffs' and the Ohio Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Ohio Class.

4237.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Ohio Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

4238.   The value of all Ohio Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4239.   Accordingly, New GM is liable to the Ohio Class for damages in an amount to be proven at trial.

4240.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Ohio Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## IMPLIED WARRANTY IN TORT

4241. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4242. Plaintiffs bring this claim only on behalf of Ohio residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Ohio Post-Sale ISD Subclass").

4243. The Defective Ignition Switch Vehicles sold or leased by New GM on or after July 11, 2009 contained a design defect, namely, a faulty ignition system that fails under reasonably foreseeable use, resulting in stalling, loss of brakes, power steering, and airbags, among other safety issues, as detailed herein more fully.

4244. The design, manufacturing, and/or assembly defects existed at the time the Defective Ignition Switch Vehicles containing the defective ignition systems left the possession or control of New GM.

4245. Based upon the dangerous product defects, New GM failed to meet the expectations of a reasonable consumer. The Defective Ignition Switch Vehicles failed their ordinary, intended use because the ignition systems in the vehicles do not function as a reasonable consumer would expect. Moreover, the defect presents a serious danger to Plaintiffs and the other members of the Ohio Post-Sale ISD Subclass that cannot be eliminated without significant cost.

4246. The design defects in the vehicles were the direct and proximate cause of economic damages to Plaintiffs, as well as damages incurred or to be incurred by each of the Ohio Post-Sale ISD Subclass members.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 3135 Filed 09/09/15 Page 385 of 1249
Complaint - Part 2 of 2 Pg 485 of 743

## COUNT IV
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

4247.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4248.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Ohio residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Ohio Pre-Sale ISD Subclass").

4249.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

4250.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

4251.   The Ohio Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 486 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 986 of 1249

4252.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

4253.   Because New GM concealed its knowledge of the ignition switch defect, the Ohio Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

4254.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4255.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

4256.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

4257.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4258.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC

- 954 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 487 of 743
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 987 of 1249

Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4259.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4260.   But for New GM's fraudulent concealment of the ignition switch defects, the Ohio Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4261.   Had the Ohio Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4262.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

4263.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4264.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the

010440-11  789697 V1

facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Ohio Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Ohio Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4265.   Plaintiffs and the Ohio Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Ohio Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Ohio Pre-Sale ISD Subclass.

4266.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Ohio Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

4267.   Accordingly, New GM is liable to the Ohio Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4268.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Ohio Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/09/15    Page 389 of 1249
Complaint - Part 2 of 2    Pg 489 of 743

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

4269.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4270.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Ohio residents (the "Ohio Pre-Sale ISD Subclass").

4271.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

4272.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4273.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

4274.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. §

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2     Pg 490 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/09/15   Page 590 of 1249

30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4275.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

4276.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4277.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4278.   Plaintiffs and the Ohio Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the

- 958 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1139    Filed 09/09/15    Page 591 of 1249
Complaint - Part 2 of 2    Pg 491 of 743

value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be
determined at trial.

## COUNT VI

### UNJUST ENRICHMENT

4279.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4280.   This claim is brought on behalf of members of the Ohio Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Ohio Unjust Enrichment Class").

4281.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4282.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

4283.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4284.   Thus, all Ohio Unjust Enrichment Class Members conferred a benefit on New GM.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 492 of 743
Case 1:14-mc-02543-JMF   Document 135   Filed 02/05/15   Page 592 of 1243

4285.   It is inequitable for New GM to retain these benefits.

4286.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did
not benefit from GM's conduct.

4287.   New GM knowingly accepted the benefits of its unjust conduct.

4288.   As a result of New GM's conduct, the amount of its unjust enrichment should be
disgorged, in an amount according to proof.

### OKLAHOMA

### COUNT I

### VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT

### (OKLA. STAT. TIT. 15 § 751, *et seq.*)

4289.    Plaintiffs reallege and incorporate by reference each paragraph as if set forth
fully herein.

4290.   This claim is brought only on behalf of Nationwide Class Members who are
Oklahoma residents (the "Oklahoma Class").

4291.   Plaintiffs and Oklahoma Class Members are "persons" under the Oklahoma
Consumer Protection Act ("Oklahoma CPA"), OKLA. STAT. TIT. 15 § 752.

4292.   New GM is a "person," "corporation," or "association" within the meaning of
OKLA. STAT. TIT. 15 § 15-751(1).

4293.   The sale or lease of the Affected Vehicles to the Oklahoma Class Members was a
"consumer transaction" within the meaning of OKLA. STAT. TIT. 15 § 752, and New GM's
actions as set forth herein occurred in the conduct of trade or commerce.

4294.   The Oklahoma CPA declares unlawful, *inter alia*, the following acts or practices
when committed in the course of business:  "mak[ing] a false or misleading representation,
knowingly or with reason to know, as to the characteristics …, uses, [or] benefits, of the subject

- 960 -

of a consumer transaction," or making a false representation, "knowingly or with reason to

know, that the subject of a consumer transaction is of a particular standard, style or model, if it is

of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer

transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or

deceptive trade practice." *See* OKLA. STAT. TIT. 15, § 753.

4295.   By systematically devaluing safety and concealing a plethora of defects in GM-

branded vehicles, New GM engaged in unfair and deceptive business practices prohibited by the

Oklahoma CPA, including:  representing that Affected Vehicles have characteristics, uses,

benefits, and qualities which they do not have; representing that Affected Vehicles are of a

particular standard, quality, and grade when they are not; and advertising Affected Vehicles with

the intent not to sell or lease them as advertised; misrepresenting, omitting and engaging in other

practices that have deceived or could reasonably be expected to deceive or mislead; and

engaging in practices which offend established public policy or are immoral, unethical,

oppressive, unscrupulous or substantially injurious to consumers.

4296.   In the course of its business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

4297.   From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Complaint - Part 2 of 2 Pg 494 of 743
Case 1:14-mc-02543-JMF Document 1135 Filed 09/09/15 Page 594 of 1249

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

4298. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

4299. According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

4300. By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive trade practices in violation of the Oklahoma CPA.

4301. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

4302. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/09/15   Page 595 of 1249
Complaint - Part 2 of 2    Pg 495 of 743

branded vehicles, the quality of ==the GM brand,== the devaluing of safety at New GM, and the true value of the Affected Vehicles.

4303.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Oklahoma Class.

4304.   New GM knew or should have known that its conduct violated the Oklahoma CPA.

4305.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and ==the GM brand== that were either false or misleading.

4306.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;
>
> b.   Intentionally concealed the foregoing from Plaintiffs; and/or
>
> c.   Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

4307.   Because New GM fraudulently concealed the many defects in ==GM-branded vehicles,== resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

010440-11  789697 V1

4308.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Oklahoma Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

4309.   Plaintiffs and the Oklahoma Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Oklahoma CPA.

4310.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Oklahoma CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2    Pg 497 of 743
Case 1:14-md-02543-JMF   Document 1135   Filed 09/05/15   Page 597 of 1249

4311.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

4312.   As a direct and proximate result of New GM's violations of the Oklahoma CPA, Plaintiffs and the Oklahoma Class have suffered injury-in-fact and/or actual damage.

4313.   Oklahoma Class Members seek punitive damages against New GM because New GM's conduct was egregious.  New GM misrepresented the safety and reliability of millions of GM-branded vehicles, concealed myriad defects in millions of GM-branded vehicles and the systemic safety issues plaguing New GM, deceived Oklahoma Class Members on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting the serious flaw in its culture and in millions of GM-branded vehicles.  New GM's egregious conduct warrants punitive damages.

4314.   New GM's conduct as alleged herein was unconscionable because (1) New GM, knowingly or with reason to know, took advantage of consumers reasonably unable to protect their interests because of their age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) at the time the consumer transaction was entered into, New GM knew or had reason to know that price grossly exceeded the price at which similar vehicles were readily obtainable in similar transactions by like consumers; and (3) New GM knew or had reason to know that the transaction New GM induced the consumer to enter into was excessively one-sided in favor of New GM.

4315.   Because New GM's unconscionable conduct caused injury to Oklahoma Class Members, the Oklahoma Class seeks recovery of actual damages, discretionary penalties up to $2,000 per violation, and reasonable attorneys' fees, under OKLA. STAT. TIT. 15 § 761.1.  The

- 965 -

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/09/15    Page 398 of 1249
Complaint - Part 2 of 2    Pg 498 of 743

Oklahoma Class further seeks an order enjoining New GM's unfair and/or deceptive acts or

practices, and any other just and proper relief available under the Oklahoma CPA.

<div align="center">

## COUNT II

### FRAUD BY CONCEALMENT

</div>

4316.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

4317.   This claim is brought on behalf of Nationwide Class Members who are

Oklahoma residents (the "Oklahoma Class").

4318.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

4319.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

4320.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

4321.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

4322.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

<div align="center">- 966 -</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/05/15   Page 599 of 743
Complaint - Part 2 of 2    Pg 499 of 743

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Oklahoma Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Oklahoma Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

4323.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Oklahoma Class.

4324.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Oklahoma Class and conceal material information regarding defects that exist in GM-branded vehicles.

4325.   Plaintiffs and the Oklahoma Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the

- 967 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 500 of 1248
Complaint - Part 2 of 2    Pg 500 of 743

vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Oklahoma Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Oklahoma Class.

4326. Because of the concealment and/or suppression of the facts, Plaintiffs and the Oklahoma Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies. Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

4327. The value of all Oklahoma Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4328. Accordingly, New GM is liable to the Oklahoma Class for damages in an amount to be proven at trial.

4329. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Oklahoma Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 501 of 1248
Complaint - Part 2 of 2    Pg 501 of 743

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (12A OKLA. STAT. ANN. § 2-314)

4330.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4331.   This claim is brought only on behalf of Oklahoma residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Oklahoma Post-Sale ISD Subclass").

4332.   New GM was a merchant with respect to motor vehicles.

4333.   A warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

4334.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

4335.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Oklahoma Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

010440-11 789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 502 of 1248
Complaint - Part 2 of 2    Pg 502 of 743

4336.   As a direct and proximate result of New GM's breach of the warranties of merchantability, Plaintiffs and the Oklahoma Post-Sale ISD Subclass have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

4337.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4338.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Oklahoma residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Oklahoma Pre-Sale ISD Subclass").

4339.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

4340.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

4341.   The Oklahoma Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice

<div align="center">- 970 -</div>

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/25/15   Page 503 of 1248
Complaint - Part 2 of 2   Pg 503 of 743

nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

4342.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

4343.   Because New GM concealed its knowledge of the ignition switch defect, the Oklahoma Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

4344.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4345.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

4346.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 5004 of 1248
Complaint - Part 2 of 2    Pg 504 of 743

4347.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4348.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4349.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4350.   But for New GM's fraudulent concealment of the ignition switch defects, the Oklahoma Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4351.   Had the Oklahoma Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4352.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

4353.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4354.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Oklahoma Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Oklahoma Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4355.   Plaintiffs and the Oklahoma Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Oklahoma Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Oklahoma Pre-Sale ISD Subclass.

4356.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Oklahoma Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 506 of 1248
Complaint - Part 2 of 2   Pg 506 of 743

4357.   Accordingly, New GM is liable to the Oklahoma Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4358.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Oklahoma Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT V
### THIRD-PARTY BENEFICIARY CLAIM

4359.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4360.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Oklahoma residents (the "Oklahoma Pre-Sale ISD Subclass").

4361.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

4362.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4363.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

- 974 -

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

4364. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4365. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

4366. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 139  Filed 09/25/15  Page 508 of 743
Complaint - Part 2 of 2    Pg 508 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4367.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4368.   Plaintiffs and the Oklahoma Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

4369.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4370.   This claim is brought on behalf of members of the Oklahoma Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Oklahoma Unjust Enrichment Class").

4371.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4372.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 509 of 1248
Complaint - Part 2 of 2   Pg 509 of 743

4373.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4374.   Thus, all Oklahoma Unjust Enrichment Class Members conferred a benefit on New GM.

4375.   It is inequitable for New GM to retain these benefits.

4376.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

4377.   New GM knowingly accepted the benefits of its unjust conduct.

4378.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## OREGON

## COUNT I

## VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT

### (OR. REV. STAT. §§ 646.605, *et seq.*)

4379.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4380.   This claim is brought only on behalf of Nationwide Class Members who are Oregon residents (the "Oregon Class").

4381.   New GM is a person within the meaning of OR. REV. STAT. § 646.605(4).

4382.   The Affected Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 139 Filed 09/25/15 Page 510 of 1248
Complaint - Part 2 of 2 Pg 510 of 743

4383. The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular standard [or] quality … if they are of another; (i) Advertis[ing] … goods or services with intent not to provide them as advertised;" and "(u) engag[ing] in any other unfair or deceptive conduct in trade or commerce." OR. REV. STAT. § 646.608(1).

4384. New GM engaged in unlawful trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and engaging in other unfair or deceptive acts.

4385. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

4386. New GM's actions as set forth above occurred in the conduct of trade or commerce.

4387. From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

- 978 -

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 511 of 1248
Complaint - Part 2 of 2    Pg 511 of 743

Act obligations, as discussed above. New GM became aware of other serious defects and

systemic safety issues years ago, but concealed all of that information until recently.

4388.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

4389.   According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles, and New GM should have

recalled the vehicles years ago.

4390.   By failing to disclose and by actively concealing the many defects in GM-branded

vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in deceptive business practices in violation of the Oregon UTPA.

4391.   In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

4392.   New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

- 979 -

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 512 of 1248
Complaint - Part 2 of 2   Pg 512 of 743

4393.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Oregon Class.

4394.   New GM knew or should have known that its conduct violated the Oregon UTPA.

4395.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles that were either false or misleading.

4396.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles, and the devaluing of safety at New GM, because New GM:

   a.   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

   b.   Intentionally concealed the foregoing from Plaintiffs; and/or

   c.   Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

4397.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

4398.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Oregon Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

- 980 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 513 of 1248
Complaint - Part 2 of 2    Pg 513 of 743

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

4399.    Plaintiffs and the Oregon Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Oregon UTPA.

4400.    Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Oregon UTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

4401.    New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

4402.    As a direct and proximate result of New GM's violations of the Oregon UTPA, Plaintiffs and the Oregon Class have suffered injury-in-fact and/or actual damage.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1014 of 1248
Complaint - Part 2 of 2    Pg 514 of 743

4403.   Plaintiffs and the Oregon Class are entitled to recover the greater of actual

damages or $200 pursuant to OR. REV. STAT. § 646.638(1).  Plaintiffs and the Oregon Class are

also entitled to punitive damages because New GM engaged in conduct amounting to a

particularly aggravated, deliberate disregard of the rights of others.

<div align="center">

## COUNT II

### FRAUD BY CONCEALMENT

</div>

4404.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

4405.   This claim is brought on behalf of Nationwide Class Members who are

Oregon residents (the "Oregon Class").

4406.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

4407.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

4408.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

4409.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

<div align="center">

- 982 -

</div>

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 515 of 743
Complaint - Part 2 of 2   Pg 515 of 743

4410.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Oregon Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Oregon Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

4411.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Oregon Class.

4412.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Oregon Class and conceal material information regarding defects that exist in GM-branded vehicles.

4413.   Plaintiffs and the Oregon Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have

- 983 -

purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Oregon Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Oregon Class.

4414. Because of the concealment and/or suppression of the facts, Plaintiffs and the Oregon Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies. Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

4415. The value of all Oregon Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4416. Accordingly, New GM is liable to the Oregon Class for damages in an amount to be proven at trial.

4417. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Oregon Class's rights and well-being to

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1139 Filed 09/25/15 Page 517 of 1248
Complaint - Part 2 of 2    Pg 517 of 743

enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT III
### FRAUD BY CONCEALMENT OF THE RIGHT
### TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

4418.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4419.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Oregon residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Oregon Pre-Sale ISD Subclass").

4420.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

4421.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

4422.   The Oregon Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice

010440-11 789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1018 of 1243
Complaint - Part 2 of 2    Pg 518 of 743

nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

4423.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

4424.   Because New GM concealed its knowledge of the ignition switch defect, the Oregon Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

4425.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4426.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

4427.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

4428.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4429.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4430.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4431.   But for New GM's fraudulent concealment of the ignition switch defects, the Oregon Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4432.   Had the Oregon Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4433.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11  789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 3020 of 1248
Complaint - Part 2 of 2    Pg 520 of 743

4434.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4435.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Oregon Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Oregon Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4436.   Plaintiffs and the Oregon Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Oregon Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Oregon Pre-Sale ISD Subclass.

4437.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Oregon Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 521 of 1248
Complaint - Part 2 of 2 Pg 521 of 743

4438. Accordingly, New GM is liable to the Oregon Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4439. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Oregon Pre-Sale ISD Subclass's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT IV
### THIRD-PARTY BENEFICIARY CLAIM

4440. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4441. This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Oregon residents (the "Oregon Pre-Sale ISD Subclass").

4442. In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

4443. With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4444. But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall

obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

4445.   Because New GM agreed to comply with the TREAD Act with respect to vehicles

manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly

submissions to NHTSA of "early warning reporting" data, including incidents involving death,

injury, or property damage, warranty claims, consumer complaints, and field reports concerning

failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. §

30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the

early warning reports are based and all records containing information on malfunctions that may

be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate*

remedial action if it knows or should know that a safety defect exists – including notifying

NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R.

§ 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4446.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM,

are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.

Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer

responsible for monitoring the safety of their Old GM vehicles and making certain that any

known safety defects would be promptly remedied.

4447.   Although the Sale Order which consummated New GM's purchase of Old GM

purported to give New GM immunity from claims concerning vehicles or parts made by Old

GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM

can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made

by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/25/15   Page 1023 of 1248
Complaint - Part 2 of 2    Pg 523 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4448.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4449.   Plaintiffs and the Oregon Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

4450.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4451.   This claim is brought on behalf of members of the Oregon Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Oregon Unjust Enrichment Class").

4452.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4453.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 135  Filed 09/25/15  Page 1024 of 1248
Complaint - Part 2 of 2  Pg 524 of 743

4454.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4455.   Thus, all Oregon Unjust Enrichment Class Members conferred a benefit on New GM.

4456.   It is inequitable for New GM to retain these benefits.

4457.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

4458.   New GM knowingly accepted the benefits of its unjust conduct.

4459.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

### PENNSYLVANIA

### COUNT I

### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### (73 P.S. § 201-1, *et seq.*)

4460.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4461.   This claim is brought only on behalf of Nationwide Class Members who are Pennsylvania residents (the "Pennsylvania Class").

4462.   Plaintiffs purchased or leased their Affected Vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

- 992 -

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 1139  Filed 09/25/15  Page 525 of 743
Complaint - Part 2 of 2    Pg 525 of 743

4463.   All of the acts complained of herein were perpetrated by New GM in the course

of trade or commerce within the meaning of 73 P.S. § 201-2(3).

4464.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law

("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:  (i)

"Representing that goods or services have … characteristics, ….  Benefits or qualities that they

do not have;" (ii) "Representing that goods or services are of a particular standard, quality or

grade … if they are of another;:" (iii) "Advertising goods or services with intent not to sell them

as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a

likelihood of confusion or misunderstanding."  73 P.S. § 201-2(4).

4465.   New GM engaged in unlawful trade practices, including representing that

Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have;

representing that Affected Vehicles are of a particular standard and quality when they are not;

advertising Affected Vehicles with the intent not to sell them as advertised; and engaging in any

other fraudulent or deceptive conduct which creates a likelihood of confusion or of

misunderstanding.

4466.   In the course of its business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

4467.   From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

4468.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

4469.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

4470.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Pennsylvania CPL.

4471.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

- 994 -

4472.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

4473.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Pennsylvania Class.

4474.   New GM knew or should have known that its conduct violated the Pennsylvania CPL.

4475.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

4476.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

    a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

4477.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

- 995 -

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 1139  Filed 09/25/15  Page 528 of 743
Complaint - Part 2 of 2    Pg 528 of 743

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

4478.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Pennsylvania Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

4479.   Plaintiffs and the Pennsylvania Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Pennsylvania CPL.

4480.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Pennsylvania CPL.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

- 996 -

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/15/15    Page 1029 of 1248
Complaint - Part 2 of 2    Pg 529 of 743

4481.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

4482.   As a direct and proximate result of New GM's violations of the Pennsylvania CPL, Plaintiffs and the Pennsylvania Class have suffered injury-in-fact and/or actual damage.

4483.   New GM is liable to Plaintiffs and the Pennsylvania Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs.  73 P.S. § 201-9.2(a). Plaintiffs and the Pennsylvania Class are also entitled to an award of punitive damages given that New GM's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT II

## FRAUD BY CONCEALMENT

4484.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4485.   This claim is brought on behalf of Nationwide Class Members who are Pennsylvania residents (the "Pennsylvania Class").

4486.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

4487.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

4488.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1030 of 1248

4489.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

4490.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Pennsylvania Class.  New GM also had a duty to disclose

because it made many general affirmative representations about the safety, quality, and lack of

defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete

without the disclosure of the additional facts set forth above regarding its actual safety record,

safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered

to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Pennsylvania Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

4491.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Pennsylvania Class.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 531 of 1248
Complaint - Part 2 of 2    Pg 531 of 743

4492.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Pennsylvania Class and conceal material information regarding defects that exist in GM-branded vehicles.

4493.   Plaintiffs and the Pennsylvania Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Pennsylvania Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Pennsylvania Class.

4494.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Pennsylvania Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

4495.   The value of all Pennsylvania Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which

- 999 -

09-50026-mg  Doc 13469-3  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 1139  Filed 09/25/15  Page 532 of 743
Complaint - Part 2 of 2    Pg 532 of 743

have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase

any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for

the vehicles.

4496.   Accordingly, New GM is liable to the Pennsylvania Class for damages in an

amount to be proven at trial.

4497.   New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the Pennsylvania Class's rights and well-

being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined

according to proof.

<div align="center">

**COUNT III**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(13 PA. CONS. STAT. ANN. § 2314)**

</div>

4498.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

4499.   This claim is brought only on behalf of Pennsylvania residents who are members

of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Pennsylvania Post-Sale ISD

Subclass").

4500.   New GM is s a merchant with respect to motor vehicles.

4501.   A warranty that the Defective Ignition Switch Vehicles were in merchantable

condition was implied by law when New GM sold or leased the Defective Ignition Switch

Vehicles to Plaintiffs and the Pennsylvania Ignition Switch Defect Subclass on or after July 11,

2009.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1033 of 1248
Complaint - Part 2 of 2    Pg 533 of 743

4502.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended stalling to occur during ordinary driving conditions; when the vehicles stall, the power brakes and power steering become inoperable and the vehicles' airbags will not deploy,

4503.   New GM was provided notice of these issues by numerous complaints filed against it, by its own internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Pennsylvania Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

4504.   As a direct and proximate result of New GM's breach of the warranties of merchantability, Plaintiffs and the Pennsylvania Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

4505.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4506.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Pennsylvania residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Pennsylvania Pre-Sale ISD Subclass").

010440-11 789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1034 of 1248
Complaint - Part 2 of 2    Pg 534 of 743

4507.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

4508.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

4509.   The Pennsylvania Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

4510.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

4511.   Because New GM concealed its knowledge of the ignition switch defect, the Pennsylvania Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1035 of 1243
Complaint - Part 2 of 2    Pg 535 of 743

4512.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4513.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

4514.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

4515.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4516.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4517.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

010440-11 789697 V1

4518.   But for New GM's fraudulent concealment of the ignition switch defects, the Pennsylvania Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4519.   Had the Pennsylvania Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4520.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

4521.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4522.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Pennsylvania Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Pennsylvania Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4523.   Plaintiffs and the Pennsylvania Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 537 of 1248
Complaint - Part 2 of 2    Pg 537 of 743

and/or suppressed facts. Plaintiffs' and the Pennsylvania Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Pennsylvania Pre-Sale ISD Subclass.

4524. Because of the concealment and/or suppression of the facts, Plaintiffs and the Pennsylvania Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

4525. Accordingly, New GM is liable to the Pennsylvania Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4526. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Pennsylvania Pre-Sale ISD Subclass's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

4527. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4528. This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Pennsylvania residents (the "Pennsylvania Pre-Sale ISD Subclass").

4529. In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1038 of 1248
Complaint - Part 2 of 2    Pg 538 of 743

From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

4530.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4531.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

4532.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 1039 of 1248
Complaint - Part 2 of 2    Pg 539 of 743

4533.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

4534.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4535.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4536.   Plaintiffs and the Pennsylvania Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

4537.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1040 of 1248
Complaint - Part 2 of 2    Pg 540 of 743

4538.   This claim is brought on behalf of members of the Pennsylvania Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Pennsylvania Unjust Enrichment Class").

4539.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4540.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

4541.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4542.   Thus, all Pennsylvania Unjust Enrichment Class Members conferred a benefit on New GM.

4543.   It is inequitable for New GM to retain these benefits.

4544.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

4545.   New GM knowingly accepted the benefits of its unjust conduct.

09-50026-mg  Doc 13469-3  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 139  Filed 09/25/15  Page 1041 of 1248
Complaint - Part 2 of 2    Pg 541 of 743

4546.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## RHODE ISLAND

## COUNT I

### VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

### (R.I. GEN. LAWS § 6-13.1, *et seq.*)

4547.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4548.   This claim is brought only on behalf of Nationwide Class Members who are Rhode Island residents (the "Rhode Island Class").

4549.   Plaintiffs are persons who purchased or leased one or more Affected Vehicles primarily for personal, family, or household purposes within the meaning of R.I. GEN. LAWS § 6-13.1-5.2(a).

4550.   Rhode Island's Unfair Trade Practices and Consumer Protection Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including:  "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) Representing that goods or services are of a particular standard, quality, or grade …, if they are of another"; "(ix) Advertising goods or services with intent not to sell them as advertised"; "(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding"; "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer"; and "(xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect."  R.I. GEN. LAWS § 6-13.1-1(6).

010440-11 789697 V1

4551.    New GM engaged in unlawful trade practices, including: (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Affected Vehicles are of a particular standard and quality when they are not; (3) advertising the Affected Vehicles with the intent not to sell them as advertised; and (4) otherwise engaging in conduct that is unfair or deceptive and likely to deceive.

4552.    New GM's actions as set forth above occurred in the conduct of trade or commerce.

4553.    In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

4554.    From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

4555.    New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the

- 1010 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1043 of 1248
Complaint - Part 2 of 2    Pg 543 of 743

existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

4556.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

4557.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Rhode Island CPA.

4558.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

4559.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

4560.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Rhode Island Class.

4561.   New GM knew or should have known that its conduct violated the Rhode Island CPA.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 544 of 1248
Complaint - Part 2 of 2    Pg 544 of 743

4562.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles and the GM brand that were either false or misleading.

4563.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.   Possessed exclusive knowledge that it valued cost-cutting
>       over safety, selected parts from the cheapest supplier
>       regardless of quality, and actively discouraged employees
>       from finding and flagging known safety defects, and that
>       this approach would necessarily cause the existence of
>       more defects in the vehicles it designed and manufactured;
>
> b.   Intentionally concealed the foregoing from Plaintiffs;
>       and/or
>
> c.   Made incomplete representations about the safety and
>       reliability of the Affected Vehicles generally, and the
>       ignition switch and other defects in particular, while
>       purposefully withholding material facts from Plaintiffs that
>       contradicted these representations.

4564.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

4565.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Rhode Island Class.  A

vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an

otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that

conceals defects rather than promptly remedies them.

4566.   Plaintiffs and the Rhode Island Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

010440-11 789697 V1

information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were

sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would

not have purchased them but for New GM's violations of the Rhode Island CPA.

4567.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Rhode Island CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the

form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts

and practices that occurred in the course of New GM's business.

4568.   New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

4569.   As a direct and proximate result of New GM's violations of the Rhode Island

CPA, Plaintiffs and the Rhode Island Class have suffered injury-in-fact and/or actual damage.

4570.   Plaintiffs and the Rhode Island Class are entitled to recover the greater of actual

damages or $200 pursuant to R.I. GEN. LAWS § 6-13.1-5.2(a).  Plaintiffs also seek punitive

damages in the discretion of the Court because of New GM's egregious disregard of consumer

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1046 of 1248
Complaint - Part 2 of 2    Pg 546 of 743

and public safety and its long-running concealment of the serious safety defects and their tragic

consequences.

## COUNT II

## FRAUD BY CONCEALMENT

4571.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

4572.   This claim is brought on behalf of Nationwide Class Members who are Rhode

Island residents (the "Rhode Island Class").

4573.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

4574.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

4575.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

4576.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

4577.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1047 of 1248
Complaint - Part 2 of 2    Pg 547 of 743

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Rhode Island Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Rhode Island Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

4578.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Rhode Island Class.

4579.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Rhode Island Class and conceal material information regarding defects that exist in GM-branded vehicles.

4580.   Plaintiffs and the Rhode Island Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 139 Filed 09/25/15 Page 1048 of 1248
Complaint - Part 2 of 2    Pg 548 of 743

vehicles; and/or would not have continued to drive their vehicles or would have taken other

affirmative steps.  Plaintiffs' and the Rhode Island Class's actions were justified.  New GM was

in exclusive control of the material facts and such facts were not known to the public, Plaintiffs,

or the Rhode Island Class.

4581.   Because of the concealment and/or suppression of the facts, Plaintiffs and the

Rhode Island Class sustained damage because they own vehicles that diminished in value as a

result of New GM's concealment of, and failure to timely disclose, the serious defects in millions

of GM-branded vehicles and the serious safety and quality issues engendered by New GM's

corporate policies.  Had they been aware of the many defects that existed in GM-branded

vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or

Certified Previously Owned vehicles after New GM came into existence either would have paid

less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs

regardless of time of purchase or lease would have maintained their vehicles.

4582.   The value of all Rhode Island Class Members' vehicles has diminished as a result

of New GM's fraudulent concealment of the many defects and its systemic safety issues which

have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase

any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for

the vehicles.

4583.   Accordingly, New GM is liable to the Rhode Island Class for damages in an

amount to be proven at trial.

4584.   New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the Rhode Island Class's rights and well-

being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 1049 of 1248
Complaint - Part 2 of 2    Pg 549 of 743

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (R.I. GEN. LAWS § 6A-2-314)

4585.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4586.   This claim is brought only on behalf of Rhode Island residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Rhode Island Post-Sale ISD Subclass").

4587.   New GM was a merchant with respect to motor vehicles.

4588.   A warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law when Plaintiffs and the Class purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

4589.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended stalling to occur during ordinary driving conditions; when the vehicles stall, the power brakes and power steering become inoperable and the vehicles' airbags will not deploy.

4590.   New GM was provided notice of these issues by numerous complaints filed against it, by its own internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Rhode Island Post-Sale ISD Subclass before or within

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 550 of 1248
Complaint - Part 2 of 2   Pg 550 of 743

a reasonable amount of time after New GM issued the recall and the allegations of vehicle

defects became public.

4591.   As a direct and proximate result of New GM's breach of the warranties of

merchantability, Plaintiffs and the Rhode Island Post-Sale ISD Subclass have been damaged in

an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

4592.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

4593.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass

members who are Rhode Island residents *and* who owned their Pre-Sale Defective Ignition

Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009

(for the purposes of this claim only, the "Rhode Island Pre-Sale ISD Subclass").

4594.   New GM was aware of the ignition switch defects in millions of vehicles sold by

Old GM from the moment it came into existence upon entry of the Sale Order And Sale

Agreement by which New GM acquired substantially all the assets of Old GM.

4595.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale

Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required

… to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

necessarily had this same knowledge from day one of its existence, as the bankruptcy court

found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition

Switch Defect prior to the Sale Motion."

Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1051 of 1248

4596.   The Rhode Island Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

4597.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

4598.   Because New GM concealed its knowledge of the ignition switch defect, the Rhode Island Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

4599.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4600.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

4601.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 552 of 1248
Complaint - Part 2 of 2    Pg 552 of 743

4602.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4603.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4604.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4605.   But for New GM's fraudulent concealment of the ignition switch defects, the Rhode Island Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4606.   Had the Rhode Island Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4607.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1053 of 1248
Complaint - Part 2 of 2     Pg 553 of 743

4608.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4609.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Rhode Island Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Rhode Island Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4610.   Plaintiffs and the Rhode Island Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Rhode Island Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Rhode Island Pre-Sale ISD Subclass.

4611.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Rhode Island Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

010440-11 789697 V1

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1054 of 1248
Complaint - Part 2 of 2 Pg 554 of 743

4612.   Accordingly, New GM is liable to the Rhode Island Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4613.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Rhode Island Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT V**
**THIRD-PARTY BENEFICIARY CLAIM**

4614.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4615.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Rhode Island residents (the "Rhode Island Pre-Sale ISD Subclass").

4616.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

4617.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4618.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

- 1022 -

010440-11 789697 V1

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1055 of 1248
Complaint - Part 2 of 2    Pg 555 of 743

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

4619. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4620. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

4621. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1056 of 1248
Complaint - Part 2 of 2    Pg 556 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4622.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4623.   Plaintiffs and the Rhode Island Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

4624.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4625.   This claim is brought on behalf of members of the Rhode Island Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Rhode Island Unjust Enrichment Class").

4626.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4627.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

- 1024 -

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 1057 of 1248
Complaint - Part 2 of 2    Pg 557 of 743

4628.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4629.   Thus, all Rhode Island Unjust Enrichment Class Members conferred a benefit on New GM.

4630.   It is inequitable for New GM to retain these benefits.

4631.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

4632.   New GM knowingly accepted the benefits of its unjust conduct.

4633.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

<div align="center">

**SOUTH CAROLINA**

**COUNT I**

**VIOLATIONS OF THE SOUTH CAROLINA
UNFAIR TRADE PRACTICES ACT**

**(S.C. CODE ANN. § 39-5-10, *et seq.*)**

</div>

4634.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4635.   This claim is brought only on behalf of Nationwide Class Members who are South Carolina residents (the "South Carolina Class").

4636.   New GM is a "person" under S.C. CODE ANN. § 39-5-10.

<div align="center">

- 1025 -

</div>

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 558 of 1248
Complaint - Part 2 of 2    Pg 558 of 743

4637.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA")

prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."

S.C. CODE ANN. § 39-5-20(a).  New GM engaged in unfair and deceptive acts or practices and

violated the South Carolina UTPA by systematically devaluing safety and concealing a plethora

of defects in GM-branded vehicles.

4638.   New GM's actions as set forth above occurred in the conduct of trade or

commerce.

4639.   In the course of its business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

4640.   From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

Act obligations, as discussed above.  New GM became aware of other serious defects and

systemic safety issues years ago, but concealed all of that information until recently.

4641.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 559 of 743
Case 1:14-mc-02543-JMF    Document 1135    Filed 09/25/15    Page 1059 of 1248

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all <mark>GM-branded vehicles.</mark>  New GM concealed this information as well.

4642.  <mark>According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles,</mark> and New GM should have

recalled the vehicles years ago.

4643.  By failing to disclose and by actively concealing the many defects in <mark>GM-branded

vehicles,</mark> by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in unfair and deceptive business practices in violation of the South Carolina

UTPA.

4644.  In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above.  New GM compounded the deception by repeatedly asserting that <mark>GM-branded vehicles</mark>

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

4645.  New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of <mark>the GM brand,</mark> the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

4646.  New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with an intent to mislead Plaintiffs and the South Carolina Class.

4647.  New GM knew or should have known that its conduct violated the South Carolina

UTPA.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 560 of 1248
Complaint - Part 2 of 2    Pg 560 of 743

4648.   As alleged above, New GM made material statements about the safety and
reliability of the Affected Vehicles and the GM brand that were either false or misleading.

4649.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the
Affected Vehicles and the devaluing of safety at New GM, because New GM:

     a.    Possessed exclusive knowledge that it valued cost-cutting
over safety, selected parts from the cheapest supplier
regardless of quality, and actively discouraged employees
from finding and flagging known safety defects, and that
this approach would necessarily cause the existence of
more defects in the vehicles it designed and manufactured;

     b.    Intentionally concealed the foregoing from Plaintiff; and/or

     c.    Made incomplete representations about the safety and
reliability of the Affected Vehicles, while purposefully
withholding material facts from Plaintiffs and the Class that
contradicted these representations.

4650.   Because New GM fraudulently concealed the many defects in GM-branded
vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,
the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to
those vehicles by New GM's conduct, they are now worth significantly less than they otherwise
would be.

4651.   New GM's systemic devaluation of safety and its concealment of a plethora of
defects in GM-branded vehicles were material to Plaintiffs and the South Carolina Class.  A
vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an
otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that
conceals defects rather than promptly remedies them.

4652.   Plaintiffs and the South Carolina Class suffered ascertainable loss caused by
New GM's misrepresentations and its concealment of and failure to disclose material
information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's

010440-11 789697 V1

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/03/15 Page 1061 of 1248
Complaint - Part 2 of 2    Pg 561 of 743

inception either would have paid less for their vehicles or would not have purchased or leased

them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were

sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would

not have purchased them but for New GM's violations of the South Carolina UTPA.

4653.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

South Carolina UTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in

the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair

acts and practices that occurred in the course of New GM's business.

4654.  New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

4655.  As a direct and proximate result of New GM's violations of the South Carolina

UTPA, Plaintiffs and the South Carolina Class have suffered injury-in-fact and/or actual damage.

4656.  Pursuant to S.C. CODE ANN. § 39-5-140(a), Plaintiffs seek monetary relief against

New GM to recover for their economic losses.  Because New GM's actions were willful and

knowing, Plaintiffs' damages should be trebled.  *Id.*

4657.  Plaintiffs further allege that New GM's malicious and deliberate conduct warrants

an assessment of punitive damages because New GM carried out despicable conduct with willful

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 562 of 1248
Complaint - Part 2 of 2    Pg 562 of 743

and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the Class to cruel and unjust hardship as a result.  New GM's intentionally and willfully misrepresented the safety and reliability of the Affected Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only New GM knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in vehicles New GM repeatedly promised Plaintiffs was safe.  New GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

4658.   Plaintiffs further seek an order enjoining New GM's unfair or deceptive acts or practices.

## COUNT II

## VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT

### (S.C. CODE ANN. § 56-15-10, *et seq.*)

4659.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4660.   In the event the Court declines to certify a Nationwide Class under Michigan law, this claim is brought only on behalf of Nationwide Class Members who are South Carolina residents (the "South Carolina Class").

4661.   New GM was a "manufacturer" as set forth in S.C. CODE ANN. § 56-15-10, as it was engaged in the business of manufacturing or assembling new and unused motor vehicles.

4662.   New GM committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. CODE ANN. § 56-15-30.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1063 of 1248
Complaint - Part 2 of 2    Pg 563 of 743

4663.   New GM engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiffs, the South Carolina Class, and to the public.

4664.   New GM's bad faith and unconscionable actions include, but are not limited to: (1) representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Affected Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Affected Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Affected Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Affected Vehicles has been supplied in accordance with a previous representation when it has not.

4665.   New GM resorted to and used false and misleading advertisements in connection with its business.  As alleged above, New GM made numerous material statements about the safety and reliability of the Affected Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of New GM's unlawful advertising and representations as a whole.

4666.   Pursuant to S.C. CODE ANN. § 56-15-110(2), Plaintiffs bring this action on behalf of themselves and the South Carolina Class, as the action is one of common or general interest to many persons and the parties are too numerous to bring them all before the court.

4667.   Plaintiffs and the  South Carolina Class are entitled to double their actual damages, the cost of the suit, attorney's fees pursuant to S.C. CODE ANN. § 56-15-110.  Plaintiffs also seek injunctive relief under S.C. CODE ANN. § 56-15-110.  Plaintiffs also seek treble damages because New GM acted maliciously.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (S.C. CODE § 36-2-314)

4668.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4669.   This claim is brought only on behalf of South Carolina residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "South Carolina Post-Sale  ISD Subclass").

4670.   New GM was a merchant with respect to motor vehicles under S.C. CODE § 36-2-314.

4671.   Under S.C. CODE § 36-2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law when Plaintiffs and the South Carolina Post-Sale ISD Subclass purchased or leased the vehicles from New GM on or after July 11, 2009.

4672.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended stalling to occur during ordinary driving conditions; when the vehicles stall, the power brakes and power steering become inoperable and the vehicles' airbags will not deploy.

4673.   New GM was provided notice of these issues by numerous complaints filed against it, its own internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the South Carolina Post-Sale ISD Subclass before or

010440-11 789697 V1

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1065 of 1248
Complaint - Part 2 of 2    Pg 565 of 743

within a reasonable amount of time after New GM  issued the recall and the allegations of

vehicle defects became public.

4674.   As a direct and proximate result of New GM's breach of the warranty of

merchantability,  Plaintiffs and the South Carolina Post-Sale ISD Subclass members have been

damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**

**FRAUD BY CONCEALMENT**

</div>

4675.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

4676.   This claim is brought on behalf of Nationwide Class Members who are South

Carolina residents (the "South Carolina Class").

4677.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

4678.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

4679.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

4680.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

<div align="center">

- 1033 -

</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1066 of 1248
Complaint - Part 2 of 2   Pg 566 of 743

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

4681.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the South Carolina Class.  New GM also had a duty to disclose

because it made many general affirmative representations about the safety, quality, and lack of

defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete

without the disclosure of the additional facts set forth above regarding its actual safety record,

safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered

to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the South Carolina Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

4682.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the South Carolina Class.

4683.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the South Carolina Class and conceal material

information regarding defects that exist in GM-branded vehicles.

010440-11  789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15   15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 567 of 1248
Complaint - Part 2 of 2   Pg 567 of 743

4684.   Plaintiffs and the South Carolina Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the South Carolina Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the South Carolina Class.

4685.   Because of the concealment and/or suppression of the facts, Plaintiffs and the South Carolina Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

4686.   The value of all South Carolina Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1068 of 1248
Complaint - Part 2 of 2   Pg 568 of 743

4687.   Accordingly, New GM is liable to the South Carolina Class for damages in an amount to be proven at trial.

4688.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the South Carolina Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT V**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

4689.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4690.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are South Carolina residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "South Carolina Pre-Sale ISD Subclass").

4691.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

4692.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1069 of 1248
Complaint - Part 2 of 2    Pg 569 of 743

engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition

Switch Defect prior to the Sale Motion."

4693.   The South Carolina Pre-Sale ISD Subclass did not receive notice of the ignition

switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail

notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition

switch defect.

4694.  In September of 2009, the bankruptcy court entered the Bar Date Order,

establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed

against Old GM.

4695.   Because New GM concealed its knowledge of the ignition switch defect, the

South Carolina Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior

to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the

publication notice sent in connection with the Bar Date Order mentioned the ignition switch

defects.

4696.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the

General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the

bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4697.   The out-of-pocket consideration provided by New GM for its acquisition of Old

GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two

series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively,

the "New GM Securities").

4698.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it

would provide additional consideration if the aggregate amount of allowed general unsecured

- 1037 -

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/25/15 Page 570 of 1248
Complaint - Part 2 of 2    Pg 570 of 743

claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

4699.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4700.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4701.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4702.   But for New GM's fraudulent concealment of the ignition switch defects, the South Carolina Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4703.   Had the South Carolina Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4704.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1135    Filed 09/25/15    Page 1071 of 1248
Complaint - Part 2 of 2    Pg 571 of 743

been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

4705.  New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4706.  New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the South Carolina Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the South Carolina Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4707.  Plaintiffs and the South Carolina Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the South Carolina Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the South Carolina Pre-Sale ISD Subclass.

4708.  Because of the concealment and/or suppression of the facts, Plaintiffs and the South Carolina Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 1072 of 1248
Complaint - Part 2 of 2    Pg 572 of 743

vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC

Trust.

4709.   Accordingly, New GM is liable to the South Carolina Pre-Sale ISD Subclass

members for their damages in an amount to be proven at trial.

4710.   New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the South Carolina Pre-Sale ISD Subclass's

rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, which amount is to

be determined according to proof.

### COUNT VI
### THIRD-PARTY BENEFICIARY CLAIM

4711.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

4712.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass

members who are South Carolina residents (the "South Carolina Pre-Sale ISD Subclass").

4713.   In the Sales Agreement through which New GM acquired substantially all of the

assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the
> certification, reporting and recall requirements of the National
> Traffic and Motor Vehicle and Motor Vehicle Safety Act, the
> Transportation Recall Enhancement, Accountability and
> Documentation Act, the Clean Air Act, the California Health and
> Safety Code and similar Laws, in each case, to the extent
> applicable in respect of vehicles and vehicle parts manufactured or
> distributed by [Old GM].

4714.   With the exception of the portion of the agreement that purports to immunize New

GM from its own independent misconduct with respect to cars and parts made by Old GM, the

Sales Agreement is a valid and binding contract.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/25/15 Page 573 of 1248
Complaint - Part 2 of 2 Pg 573 of 743

4715.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

4716.  Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4717.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

4718.  Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1074 of 1248
Complaint - Part 2 of 2    Pg 574 of 743

can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4719.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4720.   Plaintiffs and the South Carolina Pre-Sale ISD Subclass were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

<div align="center">

### COUNT VII

### UNJUST ENRICHMENT

</div>

4721.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4722.   This claim is brought on behalf of members of the South Carolina Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "South Carolina Unjust Enrichment Class").

4723.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4724.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of

<div align="center">

- 1042 -

</div>

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1075 of 1248
Complaint - Part 2 of 2    Pg 575 of 743

systemic safety issues that plagued ==the GM brand,== for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

4725.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4726.   Thus, all South Carolina Unjust Enrichment Class Members conferred a benefit on New GM.

4727.   It is inequitable for New GM to retain these benefits.

4728.   Plaintiffs were not aware about the true facts about ==GM-branded vehicles,== and did not benefit from GM's conduct.

4729.   New GM knowingly accepted the benefits of its unjust conduct.

4730.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

### SOUTH DAKOTA

### COUNT I

### VIOLATION OF THE SOUTH DAKOTA
### DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW

### (S.D. CODIFIED LAWS § 37-24-6)

4731.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4732.   This claim is brought only on behalf of Nationwide Class Members who are South Dakota residents (the "South Dakota Class").

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1076 of 1248
Complaint - Part 2 of 2 Pg 576 of 743

4733. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant purposes to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby [.]" S.D. CODIFIED LAWS § 37-24-6(1). The conduct of New GM as set forth herein constitutes deceptive acts or practices, fraud, false promises, misrepresentation, concealment, suppression and omission of material facts in violation of S.D. Codified Laws § 37-24-6 and 37-24-31, including, but not limited to, New GM's misrepresentations and omissions regarding the safety and reliability of the Affected Vehicles, and New GM's misrepresentations concerning a host of other defects and safety issues.

4734. New GM's actions as set forth above occurred in the conduct of trade or commerce.

4735. In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Affected Vehicles.

4736. From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

010440-11 789697 V1

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 577 of 1243
Complaint - Part 2 of 2    Pg 577 of 743

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

4737.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

4738.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

4739.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the South Dakota CPL.

4740.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

4741.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

- 1045 -

branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

4742.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the South Dakota Class.

4743.   New GM knew or should have known that its conduct violated the South Dakota CPL.

4744.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

4745.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

    a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

4746.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

- 1046 -

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1079 of 1248
Complaint - Part 2 of 2    Pg 579 of 743

4747.    New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the South Dakota Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

4748.    Plaintiffs and the South Dakota Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the South Dakota CPL.

4749.    Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the South Dakota CPL.  And, in any event, they suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 580 of 1248
Complaint - Part 2 of 2    Pg 580 of 743

4750.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

4751.   As a direct and proximate result of New GM's violations of the South Dakota CPL, Plaintiffs and the South Dakota Class have suffered injury-in-fact and/or actual damage.

4752.   Under S.D. CODIFIED LAWS § 37-24-31, Plaintiffs and the South Dakota Class are entitled to a recovery of their actual damages suffered as a result of New GM's acts and practices.

<div align="center">

**COUNT II**

**FRAUD BY CONCEALMENT**

</div>

4753.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4754.   This claim is brought on behalf of Nationwide Class Members who are South Dakota residents (the "South Dakota Class").

4755.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

4756.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

4757.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

4758.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

<div align="center">- 1048 -</div>

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 581 of 743
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1081 of 1248

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

4759.   New GM had a duty to disclose the many defects in <mark>GM-branded vehicles</mark> because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the South Dakota Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  <mark>Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.</mark>  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the South Dakota Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

4760.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the South Dakota Class.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1082 of 1248
Complaint - Part 2 of 2    Pg 582 of 743

4761.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the South Dakota Class and conceal material information regarding defects that exist in GM-branded vehicles.

4762.   Plaintiffs and the South Dakota Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the South Dakota Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the South Dakota Class.

4763.   Because of the concealment and/or suppression of the facts, Plaintiffs and the South Dakota Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

4764.   The value of all South Dakota Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which

- 1050 -

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1083 of 1248
Complaint - Part 2 of 2    Pg 583 of 743

have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase

any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for

the vehicles.

4765.  Accordingly, New GM is liable to the South Dakota Class for damages in an

amount to be proven at trial.

4766.  New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the South Dakota Class's rights and well-

being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined

according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (S.D. CODIFIED LAWS § 57A-2-314)

4767.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

4768.  This claim is brought only on behalf of South Dakota residents who are members

of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "South Dakota Post-Sale ISD

Subclass").

4769..  New GM was a merchant with respect to motor vehicles.

4770.  South Dakota law imposed a warranty that the Defective Ignition Switch Vehicles

were merchantable when Plaintiffs and the South Dakota Post-Sale ISD Subclass purchased or

leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

4771.  These vehicles, when sold and at all times thereafter, were not merchantable and

are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 1084 of 1248
Complaint - Part 2 of 2    Pg 584 of 743

Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

4772.   As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the South Dakota Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

**COUNT IV
FRAUD BY CONCEALMENT OF THE RIGHT
TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

4773.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4774.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are South Dakota residents ***and*** who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "South Dakota Pre-Sale ISD Subclass").

4775.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

4776.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 1085 of 1248
Complaint - Part 2 of 2    Pg 585 of 743

4777.   The South Dakota Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

4778.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

4779.   Because New GM concealed its knowledge of the ignition switch defect, the South Dakota Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

4780.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4781.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

4782.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

010440-11  789697 V1

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 586 of 1248
Complaint - Part 2 of 2    Pg 586 of 743

4783.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4784.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4785.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4786.   But for New GM's fraudulent concealment of the ignition switch defects, the South Dakota Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4787.   Had the South Dakota Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4788.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

4789.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4790.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the South Dakota Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the South Dakota Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4791.   Plaintiffs and the South Dakota Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the South Dakota Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the South Dakota Pre-Sale ISD Subclass.

4792.   Because of the concealment and/or suppression of the facts, Plaintiffs and the South Dakota Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

010440-11 789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1088 of 1248
Complaint - Part 2 of 2   Pg 588 of 743

4793.   Accordingly, New GM is liable to the South Dakota Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4794.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the South Dakota Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

4795.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4796.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are South Dakota residents (the "South Dakota Pre-Sale ISD Subclass").

4797.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

4798.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4799.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1089 of 1243
Complaint - Part 2 of 2    Pg 589 of 743

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

4800. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4801. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

4802. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 590 of 1248
Complaint - Part 2 of 2    Pg 590 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4803.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4804.   Plaintiffs and the South Dakota Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

4805.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4806.   This claim is brought on behalf of members of the South Dakota Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "South Dakota Unjust Enrichment Class").

4807.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4808.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

010440-11  789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1091 of 1243
Complaint - Part 2 of 2    Pg 591 of 743

4809.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4810.   Thus, all South Dakota Unjust Enrichment Class Members conferred a benefit on New GM.

4811.   It is inequitable for New GM to retain these benefits.

4812.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

4813.   New GM knowingly accepted the benefits of its unjust conduct.

4814.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## TENNESSEE

## COUNT I

## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

### (TENN. CODE ANN. § 47-18-101, *et seq.*)

4815.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4816.   This claim is brought only on behalf of Nationwide Class Members who are Tennessee residents (the "Tennessee Class").

4817.   Plaintiffs and the Tennessee Class are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(2).

4818.   New GM is a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1092 of 1248
Complaint - Part 2 of 2    Pg 592 of 743

4819.   New GM's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

4820.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to:  "Representing that goods or services have … characteristics, [or] … benefits … that they do not have…;" "Representing that goods or services are of a particular standard, quality or grade… if they are of another;" and "Advertising goods or services with intent not to sell them as advertised."  TENN. CODE ANN. § 47-18-104.  New GM violated the Tennessee CPA by engaging in unfair or deceptive acts, including representing that Affected Vehicles have characteristics or benefits that they did not have; representing that Affected Vehicles are of a particular standard, quality, or grade when they are of another; and advertising Affected Vehicles with intent not to sell them as advertised.

4821.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

4822.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 593 of 1248
Complaint - Part 2 of 2    Pg 593 of 743

Act obligations, as discussed above. New GM became aware of other serious defects and

systemic safety issues years ago, but concealed all of that information until recently.

4823.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

4824.   According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles, and New GM should have

recalled the vehicles years ago.

4825.   By failing to disclose and by actively concealing the many defects in GM-branded

vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in unfair and deceptive business practices in violation of the Tennessee CPA.

4826.   In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

4827.   New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 594 of 1248
Complaint - Part 2 of 2    Pg 594 of 743

4828.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Tennessee Class.

4829.   New GM knew or should have known that its conduct violated the Tennessee CPA.

4830.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

4831.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

   a.   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

   b.   Intentionally concealed the foregoing from Plaintiffs; and/or

   c.   Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

4832.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

4833.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Tennessee Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

4834. Plaintiffs and the Tennessee Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Tennessee CPA.

4835. Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Tennessee CPA. And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

4836. New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

4837. As a direct and proximate result of New GM's violations of the Tennessee CPA, Plaintiffs and the Tennessee Class have suffered injury-in-fact and/or actual damage.

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 596 of 1248
Complaint - Part 2 of 2    Pg 596 of 743

4838.   Pursuant to TENN. CODE § 47-18-109(a), Plaintiffs and the Tennessee Class seek

monetary relief against New GM measured as actual damages in an amount to be determined at

trial, treble damages as a result of New GM's willful or knowing violations, and any other just

and proper relief available under the Tennessee CPA.

<div align="center">

### COUNT II

### FRAUD BY CONCEALMENT

</div>

4839.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

4840.   This claim is brought on behalf of Nationwide Class Members who are

Tennessee residents (the "Tennessee Class").

4841.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

4842.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

4843.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

4844.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

<div align="center">

- 1064 -

</div>

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1097 of 1248
Complaint - Part 2 of 2   Pg 597 of 743

4845.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Tennessee Class.  New GM also had a duty to disclose because

it made many general affirmative representations about the safety, quality, and lack of defects in

its vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Tennessee Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

4846.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Tennessee Class.

4847.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Tennessee Class and conceal material

information regarding defects that exist in GM-branded vehicles.

4848.   Plaintiffs and the Tennessee Class were unaware of these omitted material facts

and would not have acted as they did if they had known of the concealed and/or suppressed facts,

in that they would not have purchased cars manufactured by New GM; and/or they would not

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1098 of 1248
Complaint - Part 2 of 2    Pg 598 of 743

have purchased cars manufactured by Old GM in the time after New GM had come into
existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the
vehicles; and/or would not have continued to drive their vehicles or would have taken other
affirmative steps.  Plaintiffs' and the Tennessee Class's actions were justified.  New GM was in
exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or
the Tennessee Class.

4849.   Because of the concealment and/or suppression of the facts, Plaintiffs and the
Tennessee Class sustained damage because they own vehicles that diminished in value as a result
of New GM's concealment of, and failure to timely disclose, the serious defects in millions of
GM-branded vehicles and the serious safety and quality issues engendered by New GM's
corporate policies.  Had they been aware of the many defects that existed in GM-branded
vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or
Certified Previously Owned vehicles after New GM came into existence either would have paid
less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs
regardless of time of purchase or lease would have maintained their vehicles.

4850.   The value of all Tennessee Class Members' vehicles has diminished as a result of
New GM's fraudulent concealment of the many defects and its systemic safety issues which have
greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of
the Affected Vehicles, let alone pay what otherwise would have been fair market value for the
vehicles.

4851.   Accordingly, New GM is liable to the Tennessee Class for damages in an amount
to be proven at trial.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 599 of 1248
Complaint - Part 2 of 2    Pg 599 of 743

4852.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Tennessee Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

4853.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4854.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Tennessee residents **and** who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Tennessee Pre-Sale ISD Subclass").

4855.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

4856.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

- 1067 -

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1100 of 1248
Complaint - Part 2 of 2    Pg 600 of 743

4857.   The Tennessee Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

4858.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

4859.   Because New GM concealed its knowledge of the ignition switch defect, the Tennessee Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

4860.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4861.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

4862.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

4863.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4864.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4865.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4866.   But for New GM's fraudulent concealment of the ignition switch defects, the Tennessee Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4867.   Had the Tennessee Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4868.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

Case 14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 1102 of 1248

4869.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4870.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Tennessee Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Tennessee Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4871.   Plaintiffs and the Tennessee Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Tennessee Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Tennessee Pre-Sale ISD Subclass.

4872.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Tennessee Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 1103 of 1248
Complaint - Part 2 of 2   Pg 603 of 743

4873.   Accordingly, New GM is liable to the Tennessee Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4874.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Tennessee Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV
## THIRD-PARTY BENEFICIARY CLAIM

4875.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4876.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Tennessee residents (the "Tennessee Pre-Sale ISD Subclass").

4877.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

4878.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4879.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

010440-11  789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 104 of 248
Complaint - Part 2 of 2    Pg 604 of 743

to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

4880.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4881.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

4882.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 105 of 243
Complaint - Part 2 of 2    Pg 605 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4883.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4884.   Plaintiffs and the Tennessee Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

4885.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4886.   This claim is brought on behalf of members of the Tennessee Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Tennessee Unjust Enrichment Class").

4887.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4888.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

010440-11 789697 V1

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1106 of 1248
Complaint - Part 2 of 2    Pg 606 of 743

4889.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4890.   Thus, all Tennessee Unjust Enrichment Class Members conferred a benefit on New GM.

4891.   It is inequitable for New GM to retain these benefits.

4892.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

4893.   New GM knowingly accepted the benefits of its unjust conduct.

4894.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## TEXAS

## COUNT I

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT

### (TEX. BUS. & COM. CODE §§ 17.41, *et seq.*)

4895.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4896.   This claim is brought only on behalf of Nationwide Class members who are Texas residents (the "Texas Class").

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 107 of 128
Complaint - Part 2 of 2    Pg 607 of 743

4897.    Plaintiffs and the Texas Class are individuals, partnerships and corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets).  *See* TEX. BUS. & COM. CODE § 17.41.

4898.    The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of either (i) the use of false, misleading or deceptive act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b); (ii) "breach of an express or implied warranty" or (iii) "an unconscionable action or course of action by any person."  TEX. BUS. & COM. CODE § 17.50(a)(2) & (3).

4899.    An "unconscionable action or course of action," means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5).  As detailed herein, New GM has engaged in an unconscionable action or course of action and thereby caused economic damages to the Texas Class.

4900.    New GM has also breached the implied warranty of merchantability with respect to the Texas Post-Sale Ignition Switch Defect Subclass, as set forth in Texas Count III below.

4901.    New GM has also violated the specifically enumerated provisions of TEX. BUS. & COM. CODE § 17.46(b) by, at a minimum:  (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Affected Vehicles with the intent not to sell them as advertised; (4) failing to disclose information concerning the Affected Vehicles with the intent to induce consumers to purchase or lease the Affected Vehicles.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 108 of 128
Complaint - Part 2 of 2    Pg 608 of 743

4902.  In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Affected Vehicles.

4903.  From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

4904.  New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

4905.  According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

4906.  By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1109 of 1248
Complaint - Part 2 of 2    Pg 609 of 743

New GM engaged in deceptive and unconscionable business practices in violation of the Texas DTPA.

4907.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

4908.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

4909.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with the intent to mislead Plaintiffs and the Texas Class.

4910.   New GM knew or should have known that its conduct violated the Texas DTPA.

4911.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

4912.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.      Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

> b.      Intentionally concealed the foregoing from Plaintiffs; and/or

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15  15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 1139  Filed 09/25/15  Page 1110 of 1248
Complaint - Part 2 of 2    Pg 610 of 743

    c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

4913.  Because New GM fraudulently concealed the many defects in <mark>GM-branded vehicles,</mark> resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

4914.  New GM's systemic devaluation of safety and its concealment of a plethora of defects in <mark>GM-branded vehicles</mark> were material to Plaintiffs and the Texas Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

4915.  As the foregoing allegations demonstrate, New GM, by its misrepresentations and failure to disclose material facts about the safety and quality of its vehicles, which resulted in the deaths and injuries of hundreds, and economically injured millions more. New GM thereby engaged in acts or practices which, to the detriment of Plaintiffs and the Texas Class, took advantage of their lack of knowledge, ability, experience, and capacity to a grossly unfair degree. In other words, New GM engaged in unconscionable actions or an unconscionable course of action as to Plaintiffs and the Texas Class.

4916.  Plaintiffs and the Texas Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  As the result of New GM's performance deceptive practices, and of unconscionable actions and an unconscionable course of action, as set forth in detail above, Plaintiffs who purchased GM-

branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Old GM Defective Ignition Switch vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Texas DTPA.  Under TEX. BUS. & COM. CODE § 17.50(b)(1), Plaintiffs are entitled to recover such economic damages.

4917.   As set forth above and in Texas Count III below, New GM breached of the implied warranty of merchantability with respect to the Texas Post-Sale Ignition Switch Defect Subclass, and engaged in that unconscionable actions and unconscionable course of action "knowingly," which means it did so with "actual awareness of the fact of the act, practice, condition, defect or failure constituting the breach of warranty" and with "actual awareness, at the time of the act or practice complained of, of the falsity, deception or unfairness of the act or practice giving rise to the consumer's claim…."  TEX. BUS. & COM. CODE § 17.45(9). Accordingly, pursuant to TEX. BUS. COM. CODE § 17.50(b)(1), Members of the Texas Post-Sale Ignition Switch Defect Subclass are entitled to additional damages in an amount up to three times the amount of economic damages.

4918.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles.   By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Texas DTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of

010440-11 789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1112 of 1248
Complaint - Part 2 of 2    Pg 612 of 743

New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

4919.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

4920.   Pursuant to TEX. BUS. & COM. CODE § 17.50(a)(1) and (b), Plaintiffs and the Texas Class seek monetary relief against New GM measured as actual damages in an amount to be determined at trial, treble damages for New GM's knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

4921.   Alternatively, or additionally, pursuant to TEX. BUS. & COM. CODE § 17.50(b)(3) & (4), Plaintiffs and the Texas Post-Sale Switch Defect Subclass and all other Texas Class members who purchased vehicles from New GM on or after July 11, 2009 are entitled to disgorgement or to rescission or to any other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA or which the Court deems proper.

4922.   The Texas Plaintiffs and the Texas Class also are also entitled to recover court costs and reasonable and necessary attorneys' fees under § 17.50(d) of the Texas DTPA.

4923.   On October 8, 2014, certain Plaintiffs sent a letter complying with TEX. BUS. & COM. CODE § 17.505(a).


## COUNT II

## FRAUD BY CONCEALMENT

4924.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

010440-11 789697 V1

4925.   This claim is brought on behalf of Nationwide Class Members who are

Texas residents (the "Texas Class").

4926.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

4927.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

4928.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

4929.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

4930.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Texas Class.  New GM also had a duty to disclose because it

made many general affirmative representations about the safety, quality, and lack of defects in its

vehicles, as set forth above, which were misleading, deceptive and incomplete without the

- 1081 -

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 114 of 128
Complaint - Part 2 of 2    Pg 614 of 743

disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. ==Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.== These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Texas Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

4931. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Texas Class.

4932. On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Texas Class and conceal material information regarding defects that exist in ==GM-branded vehicles.==

4933. Plaintiffs and the Texas Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; ==and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles;== and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Texas Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Texas Class.

4934. Because of the concealment and/or suppression of the facts, Plaintiffs and the Texas Class sustained damage because they own vehicles that diminished in value as a result of

- 1082 -

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1115 of 1248
Complaint - Part 2 of 2    Pg 615 of 743

New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

4935.   The value of all Texas Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4936.   Accordingly, New GM is liable to the Texas Class for damages in an amount to be proven at trial.

4937.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Texas Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT III

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (TEX. BUS. & COM. CODE § 2.314)

4938.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1116 of 1248
Complaint - Part 2 of 2    Pg 616 of 743

4939.   This claim is brought only on behalf of Texas residents who are members of the

Post-Sale Ignition Switch Defect Subclass (the "Texas Post-Sale ISD Subclass").

4940.   New GM was a merchant with respect to motor vehicles under TEX. BUS. & COM.

CODE § 2.104.

4941.   Under TEX. BUS. & COM. CODE § 2.314, a warranty that the Defective Ignition

Switch Vehicles were in merchantable condition was implied by law in the transaction in which

Plaintiffs and the Texas Post-Sale ISD Subclass purchased or leased their Defective Ignition

Switch Vehicles from New GM on or after July 11, 2009.

4942.   New GM impliedly warranted that the vehicles were of good and merchantable

quality and fit, and safe for their ordinary intended use – transporting the driver and passengers

in reasonable safety during normal operation, and without unduly endangering them or members

of the public.

4943.   These vehicles, when sold and at all times thereafter, were not merchantable and

are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition

Switch Vehicles are inherently defective in that there are defects in the ignition switch systems

that permit sudden unintended shutdown to occur, with the attendant shut down of power

steering and power brakes and the nondeployment of airbags in the event of a collision.

4944.   As a direct and proximate result of New GM's breach of the implied warranty of

merchantability, Plaintiffs and the Texas Post-Sale ISD Subclass have been damaged in an

amount to be proven at trial.

<div align="center">

**COUNT IV**

**FRAUD BY CONCEALMENT OF THE RIGHT
TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

4945.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

010440-11 789697 V1

4946.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Texas residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Texas Pre-Sale ISD Subclass").

4947.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

4948.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

4949.   The Texas Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

4950.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

4951.   Because New GM concealed its knowledge of the ignition switch defect, the Texas Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 118 of 243
Complaint - Part 2 of 2    Pg 618 of 743

passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

4952.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

4953.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

4954.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

4955.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

4956.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

4957.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch

010440-11 789697 V1

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 139  Filed 09/25/15  Page 1119 of 1268
Complaint - Part 2 of 2    Pg 619 of 743

defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

4958.  But for New GM's fraudulent concealment of the ignition switch defects, the Texas Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

4959.  Had the Texas Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

4960.  Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

4961.  New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

4962.  New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Texas Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles

010440-11 789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1120 of 1248
Complaint - Part 2 of 2    Pg 620 of 743

purchased or leased by Plaintiffs and the Texas Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

4963.   Plaintiffs and the Texas Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Texas Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Texas Pre-Sale ISD Subclass.

4964.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Texas Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

4965.   Accordingly, New GM is liable to the Texas Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

4966.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Texas Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

4967.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1121 of 1248
Complaint - Part 2 of 2    Pg 621 of 743

4968.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Texas residents (the "Texas Pre-Sale ISD Subclass").

4969.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

4970.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

4971.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

4972.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate*

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/25/15   Page 1122 of 1248
Complaint - Part 2 of 2    Pg 622 of 743

remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4973.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

4974.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

4975.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

4976.   Plaintiffs and the Texas Pre-Sale ISD Subclass were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

010440-11  789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1123 of 1248
Complaint - Part 2 of 2    Pg 623 of 743

## COUNT VI

## UNJUST ENRICHMENT

4977.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4978.   This claim is brought on behalf of members of the Texas Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Texas Unjust Enrichment Class").

4979.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

4980.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

4981.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

4982.   Thus, all Texas Unjust Enrichment Class Members conferred a benefit on New GM.

4983.   It is inequitable for New GM to retain these benefits.

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 124 of 248
Complaint - Part 2 of 2    Pg 624 of 743

4984.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

4985.   New GM knowingly accepted the benefits of its unjust conduct.

4986.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## UTAH

## COUNT I

## VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT

### (UTAH CODE ANN. § 13-11-1, *et seq.*)

4987.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

4988.   This claim is brought only on behalf of Nationwide Class Members who are Utah residents (the "Utah Class").

4989.   New GM is a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"), UTAH CODE ANN. § 13-11-3.

4990.   Utah Class Members are "persons" under UTAH CODE ANN. § 13-11-3.

4991.   The sale of the Affected Vehicles to the Utah Class Members was a "consumer transaction" within the meaning of UTAH CODE ANN. § 13-11-3.

4992.   The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under UTAH CODE ANN. § 13-11-4.  Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally:  (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not."

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 135    Filed 09/25/15    Page 625 of 1268
Complaint - Part 2 of 2    Pg 625 of 743

UTAH CODE ANN. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. UTAH CODE ANN. § 13-11-5.

4993. New GM committed deceptive acts or practices in the conduct of trade or commerce, by, among other things, engaging in unconscionable acts, representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; and representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not

4994. In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

4995. From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

4996. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/25/15   Page 126 of 128
Complaint - Part 2 of 2    Pg 626 of 743

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

4997.  According to one report from the Center for Auto Safety, some 2,004 deaths and

injuries are connected with recently recalled GM-branded vehicles, and New GM should have

recalled the vehicles years ago.

4998.  By failing to disclose and by actively concealing the many defects in GM-branded

vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself

as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold,

New GM engaged in deceptive business practices in violation of the Utah CSPA.

4999.  In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

5000.  New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the

true value of the Affected Vehicles.

5001.  New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with an intent to mislead Plaintiffs and the Utah Class.

5002.  New GM knew or should have known that its conduct violated the Utah CSPA.

5003.  As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles and the GM brand that were either false or misleading.

5004.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

    a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

5005.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

5006.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Utah Class.  A vehicle made

by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

5007.   Plaintiffs and the Utah Class suffered ascertainable loss caused by New GM's

misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs

who purchased GM-branded vehicles after the date of New GM's inception either would have

paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who

purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned,"
they too either would have paid less for their vehicles or would not have purchased them but for
New GM's violations of the Utah CSPA.

5008.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and
continued to drive their vehicles had they been aware of New GM's misconduct.  By
contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM
effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its
face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing
duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the
Utah CSPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of
the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and
practices that occurred in the course of New GM's business.

5009.   New GM's violations present a continuing risk to Plaintiffs as well as to the
general public.  New GM's unlawful acts and practices complained of herein affect the public
interest.

5010.   As a direct and proximate result of New GM's violations of the Utah CSPA,
Plaintiffs and the Utah Class have suffered injury-in-fact and/or actual damage.

5011.   Pursuant to UTAH CODE ANN. § 13-11-4, Plaintiffs and the Utah Class seek
monetary relief against New GM measured as the greater of (a) actual damages in an amount to
be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiff and
each Utah Class member, reasonable attorneys' fees, and any other just and proper relief
available under the Utah CSPA.

010440-11 789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 129 of 243
Complaint - Part 2 of 2    Pg 629 of 743

## COUNT II

## FRAUD BY CONCEALMENT

5012.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5013.   This claim is brought on behalf of Nationwide Class Members who are Utah residents (the "Utah Class").

5014.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

5015.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

5016.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

5017.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

5018.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably

- 1097 -

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 1130 of 1248
Complaint - Part 2 of 2    Pg 630 of 743

discoverable by Plaintiffs and the Utah Class.  New GM also had a duty to disclose because it

made many general affirmative representations about the safety, quality, and lack of defects in its

vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Utah Class.  Whether a

manufacturer's products are safe and reliable, and whether that manufacturer stands behind its

products, are material concerns to a consumer.

5019.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Utah Class.

5020.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Utah Class and conceal material

information regarding defects that exist in GM-branded vehicles.

5021.   Plaintiffs and the Utah Class were unaware of these omitted material facts and

would not have acted as they did if they had known of the concealed and/or suppressed facts, in

that they would not have purchased cars manufactured by New GM; and/or they would not have

purchased cars manufactured by Old GM in the time after New GM had come into existence and

had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or

would not have continued to drive their vehicles or would have taken other affirmative steps.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 131 of 243
Complaint - Part 2 of 2     Pg 631 of 743

Plaintiffs' and the Utah Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Utah Class.

5022.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Utah Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

5023.   The value of all Utah Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

5024.   Accordingly, New GM is liable to the Utah Class for damages in an amount to be proven at trial.

5025.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Utah Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 1132 of 1248
Complaint - Part 2 of 2    Pg 632 of 743

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (UTAH CODE ANN. § 70A-2-314)

5026.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5027.   This claim is brought only on behalf of Utah residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Utah Post-Sale ISD Subclass").

5028.   New GM was at all relevant times a merchant with respect to motor vehicles.

5029.   New GM impliedly warranted that its vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

5030.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

5031.   As a direct and proximate result of the New GM's breach of the implied warranty of merchantability,  Plaintiffs and the Utah Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

## COUNT IV
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

5032.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5033.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Utah residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Utah Pre-Sale ISD Subclass").

5034.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

5035.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

5036.   The Utah Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

5037.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

5038.   Because New GM concealed its knowledge of the ignition switch defect, the Utah Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of

- 1101 -

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 134 of 1248
Complaint - Part 2 of 2    Pg 634 of 743

the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice

sent in connection with the Bar Date Order mentioned the ignition switch defects.

5039.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the

General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the

bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

5040.   The out-of-pocket consideration provided by New GM for its acquisition of Old

GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two

series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively,

the "New GM Securities").

5041.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it

would provide additional consideration if the aggregate amount of allowed general unsecured

claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares

of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

5042.   As of September 30, 2014, the total amount of Allowed Claims was

approximately $31.854 billion, and the total amount of Disputed Claims was approximately

$79.5 million.

5043.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the

New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC

Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the

GUC Trust's expenses and existing beneficiaries of the Trust.

5044.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass

members were deprived of Due Process because they did not receive notice of the ignition switch

defects prior to the passage of the Bar Date.  While the court found that these vehicle owners

010440-11 789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1135 of 1248
Complaint - Part 2 of 2    Pg 635 of 743

may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

5045.   But for New GM's fraudulent concealment of the ignition switch defects, the Utah Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

5046.   Had the Utah Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

5047.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

5048.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

5049.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Utah Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Utah Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 1136 of 1248
Complaint - Part 2 of 2    Pg 636 of 743

5050.   Plaintiffs and the Utah Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Utah Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Utah Pre-Sale ISD Subclass.

5051.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Utah Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

5052.   Accordingly, New GM is liable to the Utah Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

5053.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Utah Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT V**
**THIRD-PARTY BENEFICIARY CLAIM**

5054.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5055.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Utah residents (the "Utah Pre-Sale ISD Subclass").

09-50026-mg  Doc 13469-3  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 139  Filed 09/25/15  Page 1137 of 1248
Complaint - Part 2 of 2    Pg 637 of 743

5056.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

5057.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

5058.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

5059.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying

- 1105 -

NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

5060.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

5061.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

5062.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

5063.   Plaintiffs and the Utah Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 1139 of 1248
Complaint - Part 2 of 2    Pg 639 of 743

## COUNT VI

## UNJUST ENRICHMENT

5064.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5065.    This claim is brought on behalf of members of the Utah Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Utah Unjust Enrichment Class").

5066.    New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

5067.    New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

5068.    With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

5069.    Thus, all Utah Unjust Enrichment Class Members conferred a benefit on New GM.

5070.    It is inequitable for New GM to retain these benefits.

- 1107 -

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1140 of 1248
Complaint - Part 2 of 2    Pg 640 of 743

5071.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did

not benefit from GM's conduct.

5072.   New GM knowingly accepted the benefits of its unjust conduct.

5073.   As a result of New GM's conduct, the amount of its unjust enrichment should be

disgorged, in an amount according to proof.

<div align="center">

**VERMONT**

**COUNT I**

**VIOLATION OF VERMONT CONSUMER FRAUD ACT**

**(VT. STAT. ANN. TIT. 9, § 2451 *et seq.*)**

</div>

5074.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

5075.   This claim is brought only on behalf of Nationwide Class Members who are

Vermont residents (the "Vermont Class").

5076.   New GM is a seller within the meaning of VT. STAT. ANN. TIT. 9, § 2451(a)(c).

5077.   The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair

methods of competition in commerce, and unfair or deceptive acts or practices in commerce.…"

VT. STAT. ANN. TIT. 9, § 2453(a).  New GM engaged in unfair and deceptive acts or practices in

trade or commerce in violation of the Vermont CFA by systematically devaluing safety and

concealing a plethora of defects in GM-branded vehicles.

5078.   In the course of its business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

<div align="center">- 1108 -</div>

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 11 of 128
Complaint - Part 2 of 2    Pg 641 of 743

concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

5079.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

5080.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

5081.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

5082.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Vermont CFA.

5083.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles

- 1109 -

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1142 of 1243
Complaint - Part 2 of 2    Pg 642 of 743

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

5084.   New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

5085.   New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with an intent to mislead Plaintiffs and the Vermont Class.

5086.   New GM knew or should have known that its conduct violated the Vermont CFA.

5087.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles and the GM brand that were either false or misleading.

5088.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.    Possessed exclusive knowledge that it valued cost-cutting
> over safety, selected parts from the cheapest supplier
> regardless of quality, and actively discouraged employees
> from finding and flagging known safety defects, and that
> this approach would necessarily cause the existence of
> more defects in the vehicles it designed and manufactured;
>
> b.    Intentionally concealed the foregoing from Plaintiffs;
> and/or
>
> c.    Made incomplete representations about the safety and
> reliability of the Affected Vehicles generally, and the
> ignition switch and other defects in particular, while
> purposefully withholding material facts from Plaintiffs that
> contradicted these representations.

5089.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 643 of 743
Case 14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 1143 of 1248

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

5090.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Vermont Class.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

5091.   Plaintiffs and the Vermont Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Vermont CFA.

5092.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Vermont CFA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1144 of 1248
Complaint - Part 2 of 2   Pg 644 of 743

5093.   New GM's violations present a continuing risk to Plaintiffs as well as to the
general public.  New GM's unlawful acts and practices complained of herein affect the public
interest.

5094.   As a direct and proximate result of New GM's violations of the Vermont CFA,
Plaintiffs and the Vermont Class have suffered injury-in-fact and/or actual damage.

5095.   Plaintiffs and the Vermont Class are entitled to recover "appropriate equitable
relief" and "the amount of [their] damages, or the consideration or the value of the consideration
given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times
the value of the consideration given by [them]" pursuant to VT. STAT. ANN. TIT. 9, § 2461(b).

## COUNT II

## FRAUD BY CONCEALMENT

5096.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

5097.   This claim is brought on behalf of Nationwide Class Members who are
Vermont residents (the "Vermont Class").

5098.   New GM concealed and suppressed material facts concerning the quality of its
vehicles and the GM brand.

5099.   New GM concealed and suppressed material facts concerning the culture of New
GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety
issues, and a shoddy design process.

5100.   New GM concealed and suppressed material facts concerning the many serious
defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps
to ensure that its employees did not reveal known safety defects to regulators or consumers.

5101.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

5102.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Vermont Class.  New GM also had a duty to disclose because

it made many general affirmative representations about the safety, quality, and lack of defects in

its vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Vermont Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

5103.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Vermont Class.

010440-11 789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 146 of 1248
Complaint - Part 2 of 2    Pg 646 of 743

5104.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Vermont Class and conceal material information regarding defects that exist in GM-branded vehicles.

5105.   Plaintiffs and the Vermont Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Vermont Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Vermont Class.

5106.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Vermont Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

5107.   The value of all Vermont Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1147 of 1248
Complaint - Part 2 of 2    Pg 647 of 743

the Affected Vehicles, let alone pay what otherwise would have been fair market value for the
vehicles.

5108.   Accordingly, New GM is liable to the Vermont Class for damages in an amount
to be proven at trial.

5109.   New GM's acts were done maliciously, oppressively, deliberately, with intent to
defraud, and in reckless disregard of Plaintiffs' and the Vermont Class's rights and well-being to
enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount
sufficient to deter such conduct in the future, which amount is to be determined according to
proof.

### COUNT III
### FRAUD BY CONCEALMENT OF THE RIGHT
### TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

5110.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

5111.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass
members who are Vermont residents *and* who owned their Pre-Sale Defective Ignition Switch
Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the
purposes of this claim only, the "Vermont Pre-Sale ISD Subclass").

5112.   New GM was aware of the ignition switch defects in millions of vehicles sold by
Old GM from the moment it came into existence upon entry of the Sale Order And Sale
Agreement by which New GM acquired substantially all the assets of Old GM.

5113.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale
Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required
… to send out mailed recall notices to owners of affected Old GM vehicles."  New GM
necessarily had this same knowledge from day one of its existence, as the bankruptcy court

found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

5114.   The Vermont Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

5115.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

5116.  Because New GM concealed its knowledge of the ignition switch defect, the Vermont Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

5117.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

5118.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1149 of 1248
Complaint - Part 2 of 2    Pg 649 of 743

5119.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded \$35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

5120.   As of September 30, 2014, the total amount of Allowed Claims was approximately \$31.854 billion, and the total amount of Disputed Claims was approximately \$79.5 million.

5121.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately \$773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

5122.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

5123.   But for New GM's fraudulent concealment of the ignition switch defects, the Vermont Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

5124.   Had the Vermont Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1135    Filed 09/25/15    Page 1150 of 1248
Complaint - Part 2 of 2    Pg 650 of 743

5125.    Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

5126.    New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

5127.    New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Vermont Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Vermont Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

5128.    Plaintiffs and the Vermont Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Vermont Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Vermont Pre-Sale ISD Subclass.

5129.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Vermont Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Complaint - Part 2 of 2    Pg 651 of 743
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1151 of 1248

accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

5130.   Accordingly, New GM is liable to the Vermont Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

5131.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Vermont Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV
## THIRD-PARTY BENEFICIARY CLAIM

5132.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5133.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Vermont residents (the "Vermont Pre-Sale ISD Subclass").

5134.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

09-50026-mg  Doc 13469-3  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 139  Filed 09/25/15  Page 152 of 243
Complaint - Part 2 of 2    Pg 652 of 743

5135.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

5136.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

5137.  Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

5138.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1153 of 1248
Complaint - Part 2 of 2     Pg 653 of 743

5139.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

5140.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

5141.   Plaintiffs and the Vermont Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

5142.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5143.   This claim is brought on behalf of members of the Vermont Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Vermont Unjust Enrichment Class").

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1154 of 1248
Complaint - Part 2 of 2    Pg 654 of 743

5144.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

5145.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

5146.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

5147.   Thus, all Vermont Unjust Enrichment Class Members conferred a benefit on New GM.

5148.   It is inequitable for New GM to retain these benefits.

5149.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

5150.   New GM knowingly accepted the benefits of its unjust conduct.

5151.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 155 of 243
Complaint - Part 2 of 2    Pg 655 of 743

# VIRGINIA

## COUNT I

## VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT

### (VA. CODE ANN. 15 §§ 59.1-196, *et seq.*)

5152.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5153.   This claim is brought only on behalf of Nationwide Class Members who are Virginia residents (the "Virginia Class").

5154.   New GM is a "supplier" under VA. CODE ANN. § 59.1-198.

5155.   The sale of the Affected Vehicles to the Class Members was a "consumer transaction" within the meaning of VA. CODE ANN. § 59.1-198.

5156.   The Virginia Consumer Protection Act ("Virginia CPA") lists prohibited "practices" which include:  "5. Misrepresenting that good or services have certain characteristics;" "6. Misrepresenting that goods or services are of a particular standard, quality, grade style, or model;" "8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;" "9.  Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "14. Using any other deception, fraud, or misrepresentation in connection with a consumer transaction."  VA. CODE ANN. § 59.1-200.  New GM violated the Virginia CPA by misrepresenting that Affected Vehicles had certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that Affected Vehicles were of a particular standard, quality, grade, style, or model when they were another; advertising Affected Vehicles with intent not to sell them as advertised; and otherwise "using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 156 of 1248
Complaint - Part 2 of 2    Pg 656 of 743

5157.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

5158.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, both because of the knowledge of Old GM personnel who remained at New GM continuous reports, investigations, and notifications from regulatory authorities.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

5159.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

5160.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

5161.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Virginia CPA.

- 1124 -

5162.   In the course of New GM's business, it willfully failed to disclose and actively

concealed the dangerous risk posed by the many safety issues and serious defects discussed

above.  New GM compounded the deception by repeatedly asserting that the Affected Vehicles

were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that

valued safety and stood behind its vehicles once they are on the road.

5163.   New GM's unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-

branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true

value of the Affected Vehicles.

5164.   New GM intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with an intent to mislead Plaintiffs and the Virginia Class.

5165.   New GM knew or should have known that its conduct violated the Virginia CPA.

5166.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles that were either false or misleading.

5167.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.    Possessed exclusive knowledge that it valued cost-cutting
> over safety, selected parts from the cheapest supplier
> regardless of quality, and actively discouraged employees
> from finding and flagging known safety defects, and that
> this approach would necessarily cause the existence of
> more defects in the vehicles it designed and manufactured;
>
> b.    Intentionally concealed foregoing from Plaintiffs; and/or
>
> c.    Made incomplete representations about the safety and
> reliability of the Affected Vehicles generally, and the
> ignition switch and other defects in particular, while
> purposefully withholding material facts from Plaintiffs that
> contradicted these representations.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1158 of 1248
Complaint - Part 2 of 2    Pg 658 of 743

5168.   Because New GM fraudulently concealed the many defects in GM-branded vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

5169.   New GM's systemic devaluation of safety and its concealment of a plethora of defects in GM-branded vehicles were material to Plaintiffs and the Virginia Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

5170.   Plaintiffs and the Virginia Class suffered ascertainable loss caused by New GM's misrepresentations and its failure to disclose material information.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

5171.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

5172.   As a direct and proximate result of New GM's violations of the Virginia CPA, Plaintiffs and the Virginia Class have suffered injury-in-fact and/or actual damage.

5173.   Pursuant to VA. CODE ANN. § 59.1-204, Plaintiffs and the Virginia Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 139  Filed 09/25/15  Page 159 of 243
Complaint - Part 2 of 2    Pg 659 of 743

be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff and

each Virginia Class member.  Because New GM's conduct was committed willfully and

knowingly, Plaintiffs are entitled to recover, for each Plaintiff and each Virginia Class member,

the greater of (a) three times actual damages or (b) $1,000.

5174.   Plaintiffs also seek an order enjoining New GM's unfair and/or deceptive acts or

practices, punitive damages, and attorneys' fees, and any other just and proper relief available

under General Business Law § 59.1-204, *et seq*.

## COUNT II

## FRAUD BY CONCEALMENT

5175.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

5176.   This claim is brought on behalf of Nationwide Class Members who are

Virginia residents (the "Virginia Class").

5177.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

5178.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

5179.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

5180.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

010440-11 789697 V1

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 160 of 1248
Complaint - Part 2 of 2   Pg 660 of 743

are safe and reliable. The false representations were material to consumers, both because they

concerned the quality and safety of the Affected Vehicles and because the representations played

a significant role in the value of the vehicles.

5181.   New GM had a duty to disclose the many defects in GM-branded vehicles

because they were known and/or accessible only to New GM, were in fact known to New GM as

of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge

and access to the facts, and New GM knew the facts were not known to or reasonably

discoverable by Plaintiffs and the Virginia Class.  New GM also had a duty to disclose because it

made many general affirmative representations about the safety, quality, and lack of defects in its

vehicles, as set forth above, which were misleading, deceptive and incomplete without the

disclosure of the additional facts set forth above regarding its actual safety record, safety

philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to

provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the

entire truth.  These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and the Virginia Class.  Whether

a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its

products, are material concerns to a consumer.

5182.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the Virginia Class.

5183.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the Virginia Class and conceal material

information regarding defects that exist in GM-branded vehicles.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1161 of 1208
Complaint - Part 2 of 2    Pg 661 of 743

5184.   Plaintiffs and the Virginia Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Virginia Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Virginia Class.

5185.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Virginia Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

5186.   The value of all Virginia Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1162 of 1248
Complaint - Part 2 of 2    Pg 662 of 743

5187.   Accordingly, New GM is liable to the Virginia Class for damages in an amount to be proven at trial.

5188.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Virginia Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (VA. CODE ANN. § 8.2-314)

5189.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5190.   This claim is brought only on behalf of Virginia residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Virginia Post-Sale ISD Subclass").

5191.   New GM was at all relevant times a merchant with respect to motor vehicles.

5192.   New GM impliedly warranted that its vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

5193.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

- 1130 -

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 663 of 1248
Complaint - Part 2 of 2    Pg 663 of 743

5194.   As a direct and proximate result of the New GM's breach of the implied warranty of merchantability, Plaintiffs and the Virginia Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

### COUNT IV
### FRAUD BY CONCEALMENT OF THE RIGHT
### TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

5195.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5196.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Virginia residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Virginia Pre-Sale ISD Subclass").

5197.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

5198.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

5199.   The Virginia Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice

010440-11 789697 V1

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1164 of 1248
Complaint - Part 2 of 2    Pg 664 of 743

nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

5200.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

5201.  Because New GM concealed its knowledge of the ignition switch defect, the Virginia Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

5202.  In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

5203.  The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

5204.  Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1165 of 1248
Complaint - Part 2 of 2    Pg 665 of 743

5205.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

5206.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

5207.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

5208.   But for New GM's fraudulent concealment of the ignition switch defects, the Virginia Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

5209.   Had the Virginia Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

5210.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

010440-11 789697 V1

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 3166 of 1268
Complaint - Part 2 of 2    Pg 666 of 743

5211.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

5212.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Virginia Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Virginia Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

5213.   Plaintiffs and the Virginia Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Virginia Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Virginia Pre-Sale ISD Subclass.

5214.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Virginia Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1167 of 1248
Complaint - Part 2 of 2    Pg 667 of 743

5215.   Accordingly, New GM is liable to the Virginia Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

5216.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Virginia Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT V**
**THIRD-PARTY BENEFICIARY CLAIM**

5217.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5218.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Virginia residents (the "Virginia Pre-Sale ISD Subclass").

5219.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

5220.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

5221.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 3168 of 4248
Complaint - Part 2 of 2   Pg 668 of 743

to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

5222. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

5223. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

5224. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1169 of 1248
Complaint - Part 2 of 2    Pg 669 of 743

Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

5225.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

5226.   Plaintiffs and the Virginia Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

5227.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5228.   This claim is brought on behalf of members of the Virginia Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Virginia Unjust Enrichment Class").

5229.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

5230.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

010440-11  789697 V1

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1170 of 1248
Complaint - Part 2 of 2    Pg 670 of 743

5231.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

5232.   Thus, all Virginia Unjust Enrichment Class Members conferred a benefit on New GM.

5233.   It is inequitable for New GM to retain these benefits.

5234.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

5235.   New GM knowingly accepted the benefits of its unjust conduct.

5236.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

<div align="center">

**WASHINGTON**

**COUNT I**

**VIOLATION OF THE CONSUMER PROTECTION ACT**

**(REV. CODE WASH. ANN. §§ 19.86.010, *et seq*.)**

</div>

5237.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5238.   This claim is brought only on behalf of Nationwide Class Members who are Washington residents (the "Washington Class").

5239.   New GM committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of WASH. REV. CODE. WASH. ANN. § 19.96.010.

<div align="center">

- 1138 -

</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 3171 of 1248
Complaint - Part 2 of 2    Pg 671 of 743

5240.   The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." WASH. REV. CODE. WASH. ANN. § 19.96.010.  New GM engaged in unfair and deceptive acts and practices and violated the Washington CPA by systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles.

5241.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

5242.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

5243.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 3172 of 1248
Complaint - Part 2 of 2    Pg 672 of 743

5244.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

5245.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Washington CPA.

5246.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

5247.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

5248.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Washington Class.

5249.   New GM knew or should have known that its conduct violated the Washington CPA.

5250.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1173 of 1248
Complaint - Part 2 of 2    Pg 673 of 743

5251.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

    a.    Possessed exclusive knowledge that it valued cost-cutting
          over safety, selected parts from the cheapest supplier
          regardless of quality, and actively discouraged employees
          from finding and flagging known safety defects, and that
          this approach would necessarily cause the existence of
          more defects in the vehicles it designed and manufactured;

    b.    Intentionally concealed the foregoing from Plaintiffs;
          and/or

    c.    Made incomplete representations about the safety and
          reliability of the Affected Vehicles generally, and the
          ignition switch and other defects in particular, while
          purposefully withholding material facts from Plaintiffs that
          contradicted these representations.

5252.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

5253.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Washington Class.  A vehicle

made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

5254.   Plaintiffs and the Washington Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 174 of 243
Complaint - Part 2 of 2    Pg 674 of 743

them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were

sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would

not have purchased them but for New GM's violations of the Washington CPA.

5255.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct.  By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

Washington CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the

form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts

and practices that occurred in the course of New GM's business.

5256.  New GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  New GM's unlawful acts and practices complained of herein affect the public

interest.

5257.  As a direct and proximate result of New GM's violations of the Washington Act,

Plaintiffs and the Washington Class have suffered injury-in-fact and/or actual damage.

5258.  New GM is liable to Plaintiffs and the Class for damages in amounts to be proven

at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the

Court may deem appropriate under REV. CODE. WASH. ANN. § 19.86.090.

## COUNT II

## FRAUD BY CONCEALMENT

5259.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1175 of 1248
Complaint - Part 2 of 2    Pg 675 of 743

5260.   This claim is brought on behalf of Nationwide Class Members who are Washington residents (the "Washington Class").

5261.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

5262.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

5263.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

5264.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

5265.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Washington Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1176 of 1248
Complaint - Part 2 of 2    Pg 676 of 743

without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Washington Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

5266.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Washington Class.

5267.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Washington Class and conceal material information regarding defects that exist in GM-branded vehicles.

5268.   Plaintiffs and the Washington Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Washington Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Washington Class.

5269.    Because of the concealment and/or suppression of the facts, Plaintiffs and the

Washington Class sustained damage because they own vehicles that diminished in value as a

result of New GM's concealment of, and failure to timely disclose, the serious defects in millions

of GM-branded vehicles and the serious safety and quality issues engendered by New GM's

corporate policies.  Had they been aware of the many defects that existed in GM-branded

vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or

Certified Previously Owned vehicles after New GM came into existence either would have paid

less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs

regardless of time of purchase or lease would have maintained their vehicles.

5270.    The value of all Washington Class Members' vehicles has diminished as a result

of New GM's fraudulent concealment of the many defects and its systemic safety issues which

have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase

any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for

the vehicles.

5271.    Accordingly, New GM is liable to the Washington Class for damages in an

amount to be proven at trial.

5272.    New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the Washington Class's rights and well-being

to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined

according to proof.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 178 of 1248
Complaint - Part 2 of 2    Pg 678 of 743

## COUNT III
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

5273.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5274.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Washington residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Washington Pre-Sale ISD Subclass").

5275.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

5276.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

5277.   The Washington Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

010440-11 789697 V1

5278.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

5279.  Because New GM concealed its knowledge of the ignition switch defect, the Washington Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

5280.  In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

5281.  The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

5282.  Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

5283.  As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

010440-11 789697 V1

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 139  Filed 09/25/15  Page 1180 of 1248
Complaint - Part 2 of 2    Pg 680 of 743

5284.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

5285.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

5286.   But for New GM's fraudulent concealment of the ignition switch defects, the Washington Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

5287.   Had the Washington Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

5288.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

5289.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

010440-11 789697 V1

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1181 of 1248
Complaint - Part 2 of 2    Pg 681 of 743

5290.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Washington Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Washington Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

5291.   Plaintiffs and the Washington Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Washington Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Washington Pre-Sale ISD Subclass.

5292.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Washington Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

5293.   Accordingly, New GM is liable to the Washington Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

5294.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Washington Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of

010440-11 789697 V1

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/25/15 Page 182 of 1248
Complaint - Part 2 of 2   Pg 682 of 743

punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT IV**
**THIRD-PARTY BENEFICIARY CLAIM**

5295.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5296.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Washington residents (the "Washington Pre-Sale ISD Subclass").

5297.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

5298.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

5299.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

5300.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death,

- 1150 -

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 3183 of 1248
Complaint - Part 2 of 2    Pg 683 of 743

injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

5301.    Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

5302.    Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

5303.    New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1184 of 1243
Complaint - Part 2 of 2    Pg 684 of 743

5304.   Plaintiffs and the Washington Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

5305.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5306.   This claim is brought on behalf of members of the Washington Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Washington Unjust Enrichment Class").

5307.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

5308.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

5309.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

010440-11 789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1135   Filed 09/25/15   Page 1185 of 1243
Complaint - Part 2 of 2    Pg 685 of 743

5310.   Thus, all Washington Unjust Enrichment Class Members conferred a benefit on New GM.

5311.   It is inequitable for New GM to retain these benefits.

5312.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

5313.   New GM knowingly accepted the benefits of its unjust conduct.

5314.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## WEST VIRGINIA

## COUNT I

## VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT

### (W. VA. CODE § 46A-1-101, *et seq.*)

5315.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5316.   This claim is brought only on behalf of Nationwide Class Members who are West Virginia residents (the "West Virginia Class").

5317.   New GM is a "person" under W.VA. CODE § 46A-1-102(31).

5318.   Plaintiff and the  West Virginia Class are "consumers," as defined by W.VA. CODE §§ and 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Affected Vehicles.

5319.   New GM engaged in trade or commerce as defined by W. VA. CODE § 46A-6-102(6).

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 186 of 243
Complaint - Part 2 of 2    Pg 686 of 743

5320.   The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA")

prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …."

W. VA. CODE § 46A-6-104.  Without limitation, "unfair or deceptive" acts or practices include:

> (I)    Advertising goods or services with intent not to sell
> them as advertised;

> (K)    Making false or misleading statements of fact
> concerning the reasons for, existence of or amounts
> of price reductions;

> (L)    Engaging in any other conduct which similarly
> creates a likelihood of confusion or of
> misunderstanding;

> (M)    The act, use or employment by any person of any
> deception, fraud, false pretense, false promise or
> misrepresentation, or the concealment, suppression
> or omission of any material fact with intent that
> others rely upon such concealment, suppression or
> omission, in connection with the sale or
> advertisement of any goods or services, whether or
> not any person has in fact been misled, deceived or
> damaged thereby;

> (N)    Advertising, printing, displaying, publishing,
> distributing or broadcasting, or causing to be
> advertised, printed, displayed, published, distributed
> or broadcast in any manner, any statement or
> representation with regard to the sale of goods or
> the extension of consumer credit including the rates,
> terms or conditions for the sale of such goods or the
> extension of such credit, which is false, misleading
> or deceptive or which omits to state material
> information which is necessary to make the
> statements therein not false, misleading or
> deceptive;

W. VA. CODE § 46A-6-102(7).

5321.   By systematically devaluing safety and concealing a plethora of defects in GM-

branded vehicles, New GM engaged in deceptive business practices prohibited by the West

Virginia CCPA, including:  (1) representing that the Affected Vehicles have characteristics, uses,

010440-11 789697 V1

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1135 Filed 09/25/15 Page 3187 of 4048
Complaint - Part 2 of 2    Pg 687 of 743

benefits, and qualities which they do not have; (2) representing that the Affected Vehicles are of

a particular standard, quality, and grade when they are not; (3) advertising the Affected Vehicles

with the intent not to sell them as advertised; (4) representing that a transaction involving the

Affected Vehicles confers or involves rights, remedies, and obligations which it does not; and

(5) representing that the subject of a transaction involving the Affected Vehicles has been

supplied in accordance with a previous representation when it has not.

5322.   In the course of its business, New GM systematically devalued safety and

concealed a plethora of defects in GM-branded vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected Vehicles.

5323.   From the date of its inception on July 11, 2009, New GM knew of many serious

defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge

of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and

notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD

Act obligations, as discussed above.  New GM became aware of other serious defects and

systemic safety issues years ago, but concealed all of that information until recently.

5324.   New GM was also aware that it valued cost-cutting over safety, selected parts

from the cheapest supplier regardless of quality, and actively discouraged employees from

finding and flagging known safety defects, and that this approach would necessarily cause the

existence of more defects in the vehicles it designed and manufactured and the failure to disclose

and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

- 1155 -

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15  15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 1139  Filed 09/25/15  Page 1188 of 1243
Complaint - Part 2 of 2    Pg 688 of 743

5325.  According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

5326.  By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the West Virginia CCPA.

5327.  In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

5328.  New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

5329.  New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the West Virginia Class.

5330.  New GM knew or should have known that its conduct violated the West Virginia Act.

5331.  As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1189 of 1248
Complaint - Part 2 of 2    Pg 689 of 743

5332.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

    a.    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the safety and reliability of the Affected Vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

5333.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

5334.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the West Virginia Class.  A

vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an

otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that

conceals defects rather than promptly remedies them.

5335.   Plaintiffs and the West Virginia Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

them at all. For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were

sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would

not have purchased them but for New GM's violations of the West Virginia CCPA.

5336.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and

continued to drive their vehicles had they been aware of New GM's misconduct. By

contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM

effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its

face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing

duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the

West Virginia CCPA. And, in any event, all GM vehicle owners suffered ascertainable loss in

the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair

acts and practices that occurred in the course of New GM's business.

5337.   New GM's violations present a continuing risk to Plaintiffs as well as to the

general public. New GM's unlawful acts and practices complained of herein affect the public

interest.

5338.   As a direct and proximate result of New GM's violations of the West Virginia

CCPA, Plaintiffs and the West Virginia Class have suffered injury-in-fact and/or actual damage.

5339.   Pursuant to W. Va. Code § 46A-6-106, Plaintiffs seek monetary relief against

New GM measured as the greater of (a) actual damages in an amount to be determined at trial

and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for

each Plaintiff and each member of the West Virginia Class they seek to represent.

5340.   Plaintiffs also seek punitive damages against New GM because New GM carried

out despicable conduct with willful and conscious disregard of the rights and safety of others,

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 5191 of 1248
Complaint - Part 2 of 2    Pg 691 of 743

subjecting Plaintiffs to cruel and unjust hardship as a result.  New GM intentionally and willfully

misrepresented the safety and reliability of the Affected Vehicles, deceived Plaintiffs on life-or-

death matters, and concealed material facts that only New GM knew, all to avoid the expense

and public relations nightmare of correcting a deadly flaw in the vehicles New GM repeatedly

promised Plaintiffs were safe.  New GM's unlawful conduct constitutes malice, oppression, and

fraud warranting punitive damages.

5341.   Plaintiffs further seek an order enjoining New GM's unfair or deceptive acts or

practices, restitution, punitive damages, costs of Court, attorney's fees under W. VA. CODE

§ 46A-5-101, *et seq.*, and any other just and proper relief available under the West Virginia

CCPA.

5342.   On October 8, 2014, certain Plaintiffs sent a letter complying with W. VA. CODE

§ 46A-6-106(b).  Because New GM failed to remedy its unlawful conduct within the requisite

time period, Plaintiffs seek all damages and relief to which Plaintiffs and the West Virginia Class

are entitled.

COUNT II

**FRAUD BY CONCEALMENT**

5343.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

5344.   This claim is brought on behalf of Nationwide Class Members who are West

Virginia residents (the "West Virginia Class").

5345.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

- 1159 -

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1192 of 1248
Complaint - Part 2 of 2    Pg 692 of 743

5346.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

5347.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

5348.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

5349.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the West Virginia Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1193 of 1248
Complaint - Part 2 of 2   Pg 693 of 743

value of the Affected Vehicles purchased or leased by Plaintiffs and the West Virginia Class.

Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands

behind its products, are material concerns to a consumer.

5350.   New GM actively concealed and/or suppressed these material facts, in whole or in

part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM

money, and it did so at the expense of Plaintiffs and the West Virginia Class.

5351.   On information and belief, New GM has still not made full and adequate

disclosure and continues to defraud Plaintiffs and the West Virginia Class and conceal material

information regarding defects that exist in GM-branded vehicles.

5352.   Plaintiffs and the West Virginia Class were unaware of these omitted material

facts and would not have acted as they did if they had known of the concealed and/or suppressed

facts, in that they would not have purchased cars manufactured by New GM; and/or they would

not have purchased cars manufactured by Old GM in the time after New GM had come into

existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the

vehicles; and/or would not have continued to drive their vehicles or would have taken other

affirmative steps.  Plaintiffs' and the West Virginia Class's actions were justified.  New GM was

in exclusive control of the material facts and such facts were not known to the public, Plaintiffs,

or the West Virginia Class.

5353.   Because of the concealment and/or suppression of the facts, Plaintiffs and the

West Virginia Class sustained damage because they own vehicles that diminished in value as a

result of New GM's concealment of, and failure to timely disclose, the serious defects in millions

of GM-branded vehicles and the serious safety and quality issues engendered by New GM's

corporate policies.  Had they been aware of the many defects that existed in GM-branded

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 5194 of 1248
Complaint - Part 2 of 2    Pg 694 of 743

vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or

Certified Previously Owned vehicles after New GM came into existence either would have paid

less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs

regardless of time of purchase or lease would have maintained their vehicles.

5354.   The value of all West Virginia Class Members' vehicles has diminished as a

result of New GM's fraudulent concealment of the many defects and its systemic safety issues

which have greatly tarnished the GM brand and made any reasonable consumer reluctant to

purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market

value for the vehicles.

5355.   Accordingly, New GM is liable to the West Virginia Class for damages in an

amount to be proven at trial.

5356.   New GM's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the West Virginia Class's rights and well-

being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined

according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (W. VA. CODE § 46-2-314)

5357.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

5358.   This claim is brought only on behalf of West Virginia residents who are members

of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "West Virginia Post-Sale ISD

Subclass").

- 1162 -

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1195 of 1248
Complaint - Part 2 of 2    Pg 695 of 743

5359.   New GM was at all relevant times a seller of motor vehicles under W. VA. CODE § 46-2-314, and was also a "merchant" as the term is used in W. VA. CODE § 46A-6-107 and § 46-2-314.

5360.   Under W. VA. CODE § 46-2-314, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied by law when Plaintiffs and the West Virginia Post-Sale ISD Subclass purchased  or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

5361.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision.

5362.   New GM was provided notice of these issues by numerous complaints filed against it, its own internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the West Virginia Post-Sale ISD Subclass before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

5363.   As a direct and proximate result of New GM's breach of the warranty of merchantability,  Plaintiffs and the West Virginia Post-Sale ISD Subclass members have been damaged in an amount to be proven at trial.

010440-11 789697 V1

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 1196 of 1248
Complaint - Part 2 of 2    Pg 696 of 743

## COUNT IV
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

5364.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5365.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are West Virginia residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "West Virginia Pre-Sale ISD Subclass").

5366.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

5367.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

5368.   The West Virginia Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Complaint - Part 2 of 2   Pg 697 of 743
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1197 of 1248

5369.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

5370.   Because New GM concealed its knowledge of the ignition switch defect, the West Virginia Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

5371.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

5372.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

5373.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

5374.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

- 1165 -

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/25/15   Page 3198 of 1248
Complaint - Part 2 of 2   Pg 698 of 743

5375.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

5376.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

5377.   But for New GM's fraudulent concealment of the ignition switch defects, the West Virginia Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

5378.   Had the West Virginia Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

5379.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

5380.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 199 of 1248
Complaint - Part 2 of 2 Pg 699 of 743

5381. New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the West Virginia Pre-Sale ISD Subclass. These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the West Virginia Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

5382. Plaintiffs and the West Virginia Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the West Virginia Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the West Virginia Pre-Sale ISD Subclass.

5383. Because of the concealment and/or suppression of the facts, Plaintiffs and the West Virginia Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

5384. Accordingly, New GM is liable to the West Virginia Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

5385. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the West Virginia Pre-Sale ISD Subclass's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of

010440-11 789697 V1

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 1200 of 1243
Complaint - Part 2 of 2    Pg 700 of 743

punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

5386.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5387.    This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are West Virginia residents (the "West Virginia Pre-Sale ISD Subclass").

5388.    In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

5389.    With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

5390.    But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

5391.    Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death,

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 32 of 126
Complaint - Part 2 of 2    Pg 701 of 743

injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

5392.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

5393.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

5394.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1202 of 1248
Complaint - Part 2 of 2    Pg 702 of 743

5395.   Plaintiffs and the West Virginia Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

5396.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5397.   This claim is brought on behalf of members of the West Virginia Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "West Virginia Unjust Enrichment Class").

5398.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

5399.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

5400.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1203 of 1248
Complaint - Part 2 of 2    Pg 703 of 743

5401.   Thus, all West Virginia Unjust Enrichment Class Members conferred a benefit on New GM.

5402.   It is inequitable for New GM to retain these benefits.

5403.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

5404.   New GM knowingly accepted the benefits of its unjust conduct.

5405.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## WISCONSIN

## COUNT I

## VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT

### (WIS. STAT. § 110.18)

5406.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5407.   This claim is brought only on behalf of Nationwide Class Members who are Wisconsin residents (the "Wisconsin Class").

5408.   New GM is a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

5409.   Plaintiffs and Wisconsin Class Members are members of "the public" within the meaning of WIS. STAT. § 100.18(1).  Plaintiffs and Wisconsin Class Members purchased or leased one or more Affected Vehicles.

5410.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading."  WIS. STAT.

- 1171 -

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 139  Filed 09/25/15  Page 1204 of 1248
Complaint - Part 2 of 2    Pg 704 of 743

§ 100.18(1).  By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles, New GM engaged in unfair and deceptive acts and practices and violated the Wisconsin DTPA.

5411.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

5412.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

5413.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

5414.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 14-md-02543-JMF  Document 1139  Filed 09/25/15  Page 1205 of 1248
Complaint - Part 2 of 2    Pg 705 of 743

5415.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Wisconsin DTPA.

5416.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

5417.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

5418.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Wisconsin Class.

5419.   New GM knew or should have known that its conduct violated the Wisconsin DTPA.

5420.   As alleged above, New GM made material statements about the safety and reliability of the Affected Vehicles and the GM brand that were either false or misleading.

5421.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the Affected Vehicles and the devaluing of safety at New GM, because New GM:

      a.     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1206 of 1248
Complaint - Part 2 of 2    Pg 706 of 743

      this approach would necessarily cause the existence of
more defects in the vehicles it designed and manufactured;

    b.     Intentionally concealed the foregoing from Plaintiffs;
and/or

    c.     Made incomplete representations about the safety and
reliability of the Affected Vehicles generally, and the
ignition switch and other defects in particular, while
purposefully withholding material facts from Plaintiffs that
contradicted these representations.

5422.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

5423.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Wisconsin Class.  A vehicle

made by a reputable manufacturer of safe vehicles safer and  is worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

5424.   Plaintiffs and the Wisconsin Class suffered ascertainable loss caused by

New GM's misrepresentations and its concealment of and failure to disclose material

information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's

inception either would have paid less for their vehicles or would not have purchased or leased

them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were

sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would

not have purchased them but for New GM's violations of the Wisconsin DTPA.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1135 Filed 09/25/15 Page 1207 of 1248
Complaint - Part 2 of 2 Pg 707 of 743

5425.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and
continued to drive their vehicles had they been aware of New GM's misconduct.  By
contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM
effectively assume the role of manufacturer of those vehicles because the TREAD Act on its face
only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to
all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Wisconsin
DTPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the
diminished value of their vehicles as a result of New GM's deceptive and unfair acts and
practices that occurred in the course of New GM's business.

5426.   New GM' violations present a continuing risk to Plaintiffs as well as to the
general public.  New GM's unlawful acts and practices complained of herein affect the public
interest.

5427.   As a direct and proximate result of New GM's violations of the Wisconsin DTPA,
Plaintiffs and the Wisconsin Class have suffered injury-in-fact and/or actual damage.

5428.   Plaintiffs and the Wisconsin Class are entitled to damages and other relief
provided for under WIS. STAT. § 100.18(11)(b)(2).  Because New GM's conduct was committed
knowingly and/or intentionally, Plaintiffs` and the Wisconsin Class are entitled to treble
damages.

5429.   Plaintiffs and the Wisconsin Class also seek court costs and attorneys' fees under
WIS. STAT. § 110.18(11)(b)(2).

## COUNT II

## FRAUD BY CONCEALMENT

5430.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

- 1175 -

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 139 Filed 09/25/15 Page 1208 of 1248
Complaint - Part 2 of 2    Pg 708 of 743

5431.   This claim is brought on behalf of Nationwide Class Members who are Wisconsin residents (the "Wisconsin Class").

5432.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

5433.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

5434.   New GM concealed and suppressed material facts concerning the many serious defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

5435.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

5436.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Wisconsin Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 14-md-02543-JMF  Document 1139  Filed 09/25/15  Page 1209 of 1248
Complaint - Part 2 of 2    Pg 709 of 743

disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Wisconsin Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

5437.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Wisconsin Class.

5438.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Wisconsin Class and conceal material information regarding defects that exist in GM-branded vehicles.

5439.   Plaintiffs and the Wisconsin Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Wisconsin Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Wisconsin Class.

010440-11  789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 135   Filed 09/25/15   Page 1210 of 1248
Complaint - Part 2 of 2    Pg 710 of 743

5440.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Wisconsin Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

5441.   The value of all Wisconsin Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

5442.   Accordingly, New GM is liable to the Wisconsin Class for damages in an amount to be proven at trial.

5443.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Wisconsin Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Complaint - Part 2 of 2    Pg 711 of 743
Case 1:14-md-02543-JMF    Document 1139    Filed 09/25/15    Page 1211 of 1248

## COUNT III
## FRAUD BY CONCEALMENT OF THE RIGHT
## TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY

5444.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5445.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Wisconsin residents *and* who owned their Pre-Sale Defective Ignition Switch Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the purposes of this claim only, the "Wisconsin Pre-Sale ISD Subclass").

5446.   New GM was aware of the ignition switch defects in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

5447.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles."  New GM necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

5448.   The Wisconsin Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

010440-11 789697 V1

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1212 of 1248
Complaint - Part 2 of 2    Pg 712 of 743

5449.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

5450.  Because New GM concealed its knowledge of the ignition switch defect, the Wisconsin Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

5451.  In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

5452.  The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

5453.  Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

5454.  As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

010440-11 789697 V1

5455.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

5456.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

5457.   But for New GM's fraudulent concealment of the ignition switch defects, the Wisconsin Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

5458.   Had the Wisconsin Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

5459.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

5460.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

010440-11  789697 V1

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1214 of 1248
Complaint - Part 2 of 2    Pg 714 of 743

5461.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Wisconsin Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Wisconsin Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

5462.   Plaintiffs and the Wisconsin Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Wisconsin Pre-Sale ISD Subclass's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Wisconsin Pre-Sale ISD Subclass.

5463.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Wisconsin Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

5464.   Accordingly, New GM is liable to the Wisconsin Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

5465.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Wisconsin Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive

010440-11 789697 V1

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1215 of 1243
Complaint - Part 2 of 2    Pg 715 of 743

damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV
## THIRD-PARTY BENEFICIARY CLAIM

5466.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5467.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Wisconsin residents (the "Wisconsin Pre-Sale ISD Subclass").

5468.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

5469.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

5470.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

5471.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death,

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1216 of 1248
Complaint - Part 2 of 2    Pg 716 of 743

injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

5472.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

5473.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

5474.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1217 of 1243
Complaint - Part 2 of 2    Pg 717 of 743

5475.   Plaintiffs and the Wisconsin Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

<div align="center">

**COUNT V**

**UNJUST ENRICHMENT**

</div>

5476.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5477.   This claim is brought on behalf of members of the Wisconsin Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Wisconsin Unjust Enrichment Class").

5478.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

5479.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

5480.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

<div align="center">

- 1185 -

</div>

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1218 of 1243
Complaint - Part 2 of 2    Pg 718 of 743

5481.   Thus, all Wisconsin Unjust Enrichment Class Members conferred a benefit on New GM.

5482.   It is inequitable for New GM to retain these benefits.

5483.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

5484.   New GM knowingly accepted the benefits of its unjust conduct.

5485.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

<div align="center">

**WYOMING**

**COUNT I**

**VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT**

**(WYO. STAT. §§ 40-12-105 *et seq.*)**

</div>

5486.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5487.   This claim is brought only on behalf of Nationwide Class Members who are Wyoming residents (the "Wyoming Class").

5488.   Plaintiffs, Wyoming Class Members, and New GM are "persons" within the meaning of WYO. STAT. § 40-12-102(a)(i).

5489.   The sales of the Affected Vehicles to Plaintiffs and the Wyoming Class were "consumer transactions" within the meaning of WYO. STAT. § 40-12-105.

5490.   Under the Wyoming Consumer Protection Act ("Wyoming CPA"), a person engages in a deceptive trade practice when, in the course of its business and in connection with a consumer transaction it knowingly:  "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not"; "(v) Represents that merchandise has been supplied in

<div align="center">- 1186 -</div>

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 139 Filed 09/25/15 Page 1219 of 1248
Complaint - Part 2 of 2    Pg 719 of 743

accordance with a previous representation, if it has not…"; "(viii) Represents that a consumer transaction involves a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies or obligations if the representation is false"; "(x) Advertises merchandise with intent not to sell it as advertised"; or  "(xv) Engages in unfair or deceptive acts or practices." WYO. STAT. § 45-12-105.

5491.   By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles as described above, New GM violated the Wyoming CPA.  New GM engaged in deceptive trade practices, including (among other things) representing that the Affected Vehicles are of a particular standard and grade, which they are not; advertising the Affected Vehicles with the intent not to sell them as advertised; and overall engaging in unfair and deceptive acts or practices.

5492.   In the course of its business, New GM systematically devalued safety and concealed a plethora of defects in GM-branded vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

5493.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information until recently.

010440-11 789697 V1

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 1220 of 1243
Complaint - Part 2 of 2    Pg 720 of 743

5494.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles.  New GM concealed this information as well.

5495.   According to one report from the Center for Auto Safety, some 2,004 deaths and injuries are connected with recently recalled GM-branded vehicles, and New GM should have recalled the vehicles years ago.

5496.   By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Wyoming CPA.

5497.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

5498.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the Affected Vehicles.

5499.   New GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Wyoming Class.

09-50026-mg   Doc 13469-3   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1221 of 1243
Complaint - Part 2 of 2    Pg 721 of 743

5500.   New GM knew or should have known that its conduct violated the Wyoming

CPA.

5501.   As alleged above, New GM made material statements about the safety and

reliability of the Affected Vehicles and the GM brand that were either false or misleading.

5502.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the

Affected Vehicles and the devaluing of safety at New GM, because New GM:

> a.   Possessed exclusive knowledge that it valued cost-cutting
>      over safety, selected parts from the cheapest supplier
>      regardless of quality, and actively discouraged employees
>      from finding and flagging known safety defects, and that
>      this approach would necessarily cause the existence of
>      more defects in the vehicles it designed and manufactured;
>
> b.   Intentionally concealed the foregoing from Plaintiffs;
>      and/or
>
> c.   Made incomplete representations about the safety and
>      reliability of the Affected Vehicles generally, and the
>      ignition switch and other defects in particular, while
>      purposefully withholding material facts from Plaintiffs that
>      contradicted these representations.

5503.   Because New GM fraudulently concealed the many defects in GM-branded

vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed,

the value of the Affected Vehicles has greatly diminished.  In light of the stigma attached to

those vehicles by New GM's conduct, they are now worth significantly less than they otherwise

would be.

5504.   New GM's systemic devaluation of safety and its concealment of a plethora of

defects in GM-branded vehicles were material to Plaintiffs and the Wyoming Class.  A vehicle

made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects

rather than promptly remedies them.

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 1:14-mc-02543-JMF Document 1139 Filed 09/25/15 Page 1222 of 1248
Complaint - Part 2 of 2    Pg 722 of 743

5505.   Plaintiffs and the Wyoming Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased GM-branded vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Wyoming CPA.

5506.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct.  By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assume the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Wyoming CPA.  And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

5507.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public.  New GM's unlawful acts and practices complained of herein affect the public interest.

5508.   As a direct and proximate result of New GM's violations of the Wyoming CPA, Plaintiffs and the Wyoming Class have suffered injury-in-fact and/or actual damage.

5509.   Pursuant to WYO. STAT. § 40-12-108(a), Plaintiffs and the Wyoming Class seek

monetary relief against New GM measured as actual damages in an amount to be determined at

trial, in addition to any other just and proper relief available under the Wyoming CPA.

5510.   On October 8, 2014, certain Plaintiffs sent a letter complying with WYO. STAT. §§

45-12-109.  Because New GM failed to remedy its unlawful conduct within the requisite time

period, Plaintiffs seek all damages and relief to which Plaintiffs and the Wyoming Class are

entitled.

<p style="text-align:center"><strong>COUNT II</strong></p>

<p style="text-align:center"><strong>FRAUD BY CONCEALMENT</strong></p>

5511.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

forth herein.

5512.   This claim is brought on behalf of Nationwide Class Members who are

Wyoming residents (the "Wyoming Class").

5513.   New GM concealed and suppressed material facts concerning the quality of its

vehicles and the GM brand.

5514.   New GM concealed and suppressed material facts concerning the culture of New

GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety

issues, and a shoddy design process.

5515.   New GM concealed and suppressed material facts concerning the many serious

defects plaguing GM-branded vehicles, and that it valued cost-cutting over safety and took steps

to ensure that its employees did not reveal known safety defects to regulators or consumers.

5516.   New GM did so in order to boost confidence in its vehicles and falsely assure

purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was

a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

<p style="text-align:center">- 1191 -</p>

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 724 of 1248
Complaint - Part 2 of 2    Pg 724 of 743

are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the Affected Vehicles and because the representations played a significant role in the value of the vehicles.

5517.   New GM had a duty to disclose the many defects in GM-branded vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Wyoming Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and the Wyoming Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

5518.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Wyoming Class.

5519.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Wyoming Class and conceal material information regarding defects that exist in GM-branded vehicles.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1139   Filed 09/25/15   Page 1225 of 1248
Complaint - Part 2 of 2    Pg 725 of 743

5520.   Plaintiffs and the Wyoming Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Wyoming Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Wyoming Class.

5521.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Wyoming Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in millions of GM-branded vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the many defects that existed in GM-branded vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

5522.   The value of all Wyoming Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

09-50026-mg Doc 13469-3 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1226 of 1248
Complaint - Part 2 of 2 Pg 726 of 743

5523.   Accordingly, New GM is liable to the Wyoming Class for damages in an amount to be proven at trial.

5524.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Wyoming Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

## (WYO. STAT. §§ 34.1-2-314)

5525.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5526.   This claim is brought only on behalf of Wyoming residents who are members of the Nationwide Post-Sale Ignition Switch Defect Subclass (the "Wyoming Post-Sale ISD Subclass").

5527.   New GM was at all relevant times a merchant with respect to motor vehicles.

5528.   Under Wyoming law, a warranty that the Defective Ignition Switch Vehicles were in merchantable condition was implied when Wyoming Post-Sale ISD Subclass members purchased or leased their Defective Ignition Switch Vehicles from New GM on or after July 11, 2009.

5529.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that permit sudden unintended shutdown to occur, with the attendant shut

- 1194 -

09-50026-mg    Doc 13469-3    Filed 09/25/15    Entered 09/25/15 15:34:53    Marked MDL
Case 1:14-mc-02543-JMF    Document 139    Filed 09/25/15    Page 1227 of 1248
Complaint - Part 2 of 2    Pg 727 of 743

down of power steering and power brakes and the nondeployment of airbags in the event of a
collision.

5530.   New GM was provided notice of these issues by numerous complaints filed
against it, its own internal investigations, and by numerous individual letters and
communications sent by Plaintiffs and the Wyoming Post-Sale ISD Subclass before or within a
reasonable amount of time after New GM issued the recall and the allegations of vehicle defects
became public.

5531.   As a direct and proximate result of New GM's breach of the warranty of
merchantability,  Plaintiffs and the Wyoming Post-Sale ISD Subclass members have been
damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**
**FRAUD BY CONCEALMENT OF THE RIGHT**
**TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

</div>

5532.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set
forth herein.

5533.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass
members who are Wyoming residents *and* who owned their Pre-Sale Defective Ignition Switch
Vehicle for at least some period of time between July 11, 2009 and November 30, 2009 (for the
purposes of this claim only, the "Wyoming Pre-Sale ISD Subclass").

5534.   New GM was aware of the ignition switch defects in millions of vehicles sold by
Old GM from the moment it came into existence upon entry of the Sale Order And Sale
Agreement by which New GM acquired substantially all the assets of Old GM.

5535.   As the bankruptcy court found, "As of June 2009, when the entry of the Sale
Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required
… to send out mailed recall notices to owners of affected Old GM vehicles."  New GM

<div align="center">

- 1195 -

</div>

necessarily had this same knowledge from day one of its existence, as the bankruptcy court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the Ignition Switch Defect prior to the Sale Motion."

5536.   The Wyoming Pre-Sale ISD Subclass did not receive notice of the ignition switch defect prior to the entry of the Sale Order.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the ignition switch defect.

5537.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

5538.   Because New GM concealed its knowledge of the ignition switch defect, the Wyoming Pre-Sale ISD Subclass did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the ignition switch defects.

5539.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

5540.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

010440-11 789697 V1

5541.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion.  In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

5542.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

5543.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities.  After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

5544.   The bankruptcy court found that the Pre-Sale Ignition Switch Defect Subclass members were deprived of Due Process because they did not receive notice of the ignition switch defects prior to the passage of the Bar Date.  While the court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars the Pre-Sale Ignition Switch Defect Subclass from tapping into the GUC Trust assets.

5545.   But for New GM's fraudulent concealment of the ignition switch defects, the Wyoming Pre-Sale ISD Subclass (and the Pre-Sale Ignition Switch Defect Subclass members from every state) would have filed claims against Old GM before the Bar Date.

5546.   Had the Wyoming Pre-Sale ISD Subclass filed timely claims before the Bar Date, the claims would have been allowed, as would have the claims of the entire Pre-Sale Ignition Switch Defect Subclass.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 1135   Filed 09/25/15   Page 1230 of 1248
Complaint - Part 2 of 2   Pg 730 of 743

5547.   Had the claims of the Pre-Sale Ignition Switch Defect Subclass been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of the Pre-Sale Ignition Switch Defect Subclass.

5548.   New GM's concealment and suppression of the material fact of the ignition switch defect over the first several months of its existence served to prevent the filing of claims by the Pre-Sale Ignition Switch Defect Subclass and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

5549.   New GM had a duty to disclose the ignition switch defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Wyoming Pre-Sale ISD Subclass.  These omitted and concealed facts were material because they directly impacted the safety and the value of the Defective Ignition Switch Vehicles purchased or leased by Plaintiffs and the Wyoming Pre-Sale ISD Subclass, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

5550.   Plaintiffs and the Wyoming Pre-Sale ISD Subclass were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Wyoming Pre-Sale ISD Subclass's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Wyoming Pre-Sale ISD Subclass.

5551.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Wyoming Pre-Sale ISD Subclass sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the

010440-11  789697 V1

09-50026-mg  Doc 13469-2  Filed 09/25/15  Entered 09/25/15 15:34:53  Marked MDL
Case 1:14-mc-02543-JMF  Document 139  Filed 09/25/15  Page 1231 of 1248
Complaint - Part 2 of 2    Pg 731 of 743

accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

5552.   Accordingly, New GM is liable to the Wyoming Pre-Sale ISD Subclass members for their damages in an amount to be proven at trial.

5553.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Wyoming Pre-Sale ISD Subclass's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## THIRD-PARTY BENEFICIARY CLAIM

5554.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5555.   This claim is brought only on behalf of Pre-Sale Ignition Switch Defect Subclass members who are Wyoming residents (the "Wyoming Pre-Sale ISD Subclass").

5556.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1232 of 1248
Complaint - Part 2 of 2    Pg 732 of 743

5557.  With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

5558.  But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts.  That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle.  49 U.S.C. § 30118(c).

5559.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving death, injury, or property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  *See* 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  *See* 49 C.F.R. §§ 576.5 to 576.6; and (c) take *immediate* remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

5560.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known safety defects would be promptly remedied.

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 1:14-mc-02543-JMF   Document 139   Filed 09/25/15   Page 1233 of 1248
Complaint - Part 2 of 2    Pg 733 of 743

5561.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM.  Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

5562.   New GM breached its covenant to comply with the TREAD Act with respect to the Pre-Sale Defective Ignition Switch Vehicles, as it failed to take action to remediate the Ignition Switch Defect until 2014 when it finally issued a recall.

5563.   Plaintiffs and the Wyoming Pre-Sale ISD Subclass were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the ignition switch defect, the value of Pre-Sale Defective Ignition Switch Vehicles has diminished in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

5564.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

5565.   This claim is brought on behalf of members of the Wyoming Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased Defective Ignition Switch Vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Wyoming Unjust Enrichment Class").

- 1201 -

5566.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

5567.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the GM brand, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

5568.   With respect to the Defective Ignition Switch Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

5569.   Thus, all Wyoming Unjust Enrichment Class Members conferred a benefit on New GM.

5570.   It is inequitable for New GM to retain these benefits.

5571.   Plaintiffs were not aware about the true facts about GM-branded vehicles, and did not benefit from GM's conduct.

5572.   New GM knowingly accepted the benefits of its unjust conduct.

5573.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf all others similarly situated, respectfully request that this Court enter a judgment against New GM and in favor of Plaintiffs and the Classes and Subclasses, and grant the following relief:

- 1202 -

A.      Determine that this action may be maintained as a class action and certify it as such under Rule 23(b)(2) and/or 23(b)(3), or alternatively certify all issues and claims that are appropriately certified under Rule 23(c)(4); and designate and appoint Plaintiffs as Class Representatives and Plaintiffs' chosen counsel as Class Counsel;

B.      Declare, adjudge, and decree the conduct of New GM as alleged herein to be unlawful, unfair, and/or deceptive and otherwise in violation of law, enjoin any such future conduct, and issue an injunction under which the Court will monitor New GM's response to problems with the recalls and efforts to improve its safety processes, and will establish by Court decree and administration under Court supervision a program funded by New GM under which claims can be made and paid for Ignition Switch Defect Subclass members' out-of-pocket expenses and costs;

C.      Award Plaintiffs and Class Members actual, compensatory damages or, in the alternative, statutory damages, as proven at trial;

D.      Award Plaintiffs and the Class Members exemplary damages in such amount as proven;

E.      Award damages and other remedies, including, but not limited to, statutory penalties, as allowed by any applicable law, such as the consumer laws of the various states;

F.      Award Plaintiffs and the Class Members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest;

G.      Declare, adjudge and decree that Defendant violated 18 U.S.C. §§ 1962(c) and (d) by conducting the affairs of the RICO Enterprise through a pattern of racketeering activity and conspiring to do so;

Case 14-md-02543-JMF   Document 1135   Filed 09/25/15   Page 1236 of 1243

H.    Award Plaintiff and the nation-wide Class Members treble damages pursuant to

18 U.S.C. § 1964(c);

I.    Award Plaintiffs and Class Members restitution and/or disgorgement of New

GM's ill-gotten gains relating to the conduct described in this Complaint; and

J.    Award Plaintiffs and the Class Members such other further and different relief as

the case may require or as determined to be just, equitable, and proper by this Court.

010440-11  789697 V1

DATED:  June 12, 2015                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                         By: _____ */s/ Steve W. Berman*_____
                                                 Steve W. Berman
                                         *steve@hbsslaw.com*
                                         Sean R. Matt
                                         *sean@hbsslaw.com*
                                         Andrew M. Volk
                                         *andrew@hbsslaw.com*
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1918 Eighth Avenue, Suite 3300
                                         Seattle, WA  98101
                                         Telephone:  (206) 623-7292
                                         Facsimile:  (206) 623-0594


DATED:  June 12, 2015                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                                         By: _____ */s/ Elizabeth J. Cabraser*_____
                                                 Elizabeth J. Cabraser
                                         *ecabraser@lchb.com*
                                         Steven E. Fineman
                                         *sfineman@lchb.com*
                                         Rachel Geman
                                         *rgeman@lchb.com*
                                         Annika K. Martin
                                         *akmartin@lchb.com*
                                         275 Battery St., 29th Floor
                                         San Francisco, CA 94111
                                         Telephone:  (415) 956-1000
                                         Facsimile:  (415) 956-1008


                                         *Co-Lead Counsel with Primary Focus on Economic*
                                         *Loss Cases*

DATED:  June 12, 2015                    HILLIARD MUÑOZ GONZALES L.L.P.


                                         By: _____ */s/ Robert Hilliard*_____
                                                 Robert Hilliard
                                         *bobh@hmglawfirm.com*
                                         719 S Shoreline Blvd, Suite #500
                                         Corpus Christi, TX 78401
                                         Telephone:  (361) 882-1612
                                         Facsimile:  (361) 882-3015


                                         *Co-Lead Counsel with Primary Focus on Personal*
                                         *Injury Cases*

09-50026-mg    Doc 13469-2    Filed 09/25/15    Entered 09/25/15  15:34:53    Marked MDL
Case 14-mc-02543-JMF    Document 1139    Filed 09/25/15    Page 1238 of 1243
Complaint - Part 2 of 2    Pg 738 of 743

WEITZ & LUXENBERG, PC
Robin L. Greenwald
James J. Bilsborrow
700 Broadway
New York, NY 10003
Telephone:  (212) 558-5500

*Liaison Counsel*

BOIES, SCHILLER & FLEXNER LLP
David Boies
333 Main Street
Armonk, NY  10504
Telephone:  (914) 749-8200

THE COOPER FIRM
Lance A. Cooper
531 Roselane St., Suite 200
Marietta, GA 30060
Telephone:  (770) 427-5588

OTTERBOURG, STEINDLER, HOUSTON & ROSEN
Melanie Cyganowski
230 Park Avenue
New York, NY 10169-0075
Telephone:  (212) 661-9100

GRANT & EISENHOFER, P.A.
Adam J. Levitt
John Tangren
30 N. LaSalle Street, Suite 1200
Chicago, IL  60602
Telephone:  (312) 214-0000

NAST LAW LLC
Dianne M. Nast
1101 Market St., Suite 2801
Philadelphia, PA 19107
Telephone:  (215) 923-9300

010440-11  789697 V1

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1239 of 1248
Complaint - Part 2 of 2    Pg 739 of 743

PODHURST ORSECK, P.A.
Peter Prieto
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone:  (305) 358-2800

COTCHETT, PITRE & MCCARTHY, LLP
Frank Pitre
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000

MOTLEY RICE LLC
Joseph F. Rice
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone:  (843) 216-9159

ROBINSON CALCAGNIE ROBINSON
 SHAPIRO DAVIS, INC.
Mark P. Robinson, Jr.
19 Corporate Plaza
Newport Beach, CA 92660
Telephone:  (949) 720-1288

SUSMAN GODFREY, L.L.P.
Marc M. Seltzer
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067
Telephone:  (310) 789-3102

*Executive Committee*

BARRIOS, KINGSDORF & CASTEIX, LLP
Dawn M. Barrios
701 Poydras St., Suite 3650
New Orleans, LA 70139
Telephone:  (504) 524-3300

*Federal / State Liaison Counsel*

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1135 Filed 09/25/15 Page 1240 of 1248
Complaint - Part 2 of 2 Pg 740 of 743

BARON & BUDD, PC
Mark Philip Pifko
Roland K. Tellis
15910 Ventura Boulevard
Encino Plaza, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333

BARRETT LAW GROUP, PA
Don Barrett
404 Court Square
Lexington, MS 39095
Telephone: 662-834-2488

BEASLEY, ALLEN, CROW, METHVIN, PORTIS &
MILES, P.C.
W. Daniel "Dee" Miles
Jere L. Beasley
J. Cole Portis
D. Michael Andrews
Benjamin E. Baker
218 Commerce Street
Montgomery, AL 36104
Telephone: (800) 898-2034

BLOCK & LEVITON, LLP
Joel A. Fleming
155 Federal Street, Suite 1303
Boston, MA 02110
Telephone: 617-398-5600

CARNEY BATES & PULLIAM, PLLC
David Slade
James Allen Carney, Jr.
Joseph Henry Bates, III
Randall Keith Pulliam
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Telephone: 501-312-8500

09-50026-mg   Doc 13469-2   Filed 09/25/15   Entered 09/25/15 15:34:53   Marked MDL
Case 14-md-02543-JMF   Document 1139   Filed 09/25/15   Page 1241 of 1248
Complaint - Part 2 of 2   Pg 741 of 743

CLIFFORD LAW OFFICES
Robert A. Clifford
Shannon M. McNulty
Kristofer S. Riddle
120 N. LaSalle, Suite 3100
Chicago, IL 60602
Telephone: 312-899-9090

CUNEO GILBERT & LADUCA LLP
Jonathan W. Cuneo
Pamela Gilbert
507 C Street NE
Washington, DC 20002
Telephone: 202-789-3960

EDWARD L. WHITE, PC
Edward L. White
853 E. 33rd Street
Edmond, OK  73013
Telephone: 405-810-8188

FINKELSTEIN BLANKINSHIP FREI-PEARSON &
GARBER
Douglas Gregory Blankinship
1311 Mamaroneck Avenue, Suite 220
White Plains, NY 10605
Telephone: 914-298-3281

GRAY RITTER & GRAHAM
Don M. Downing
701 Market Street, Suite 800
St. Louis, MO  63101
Telephone: 314-241-5620

HAZZARD LAW, LLC
Brent Hazzard
P.O. Box 24382
Jackson, MS 39225
Telephone: 601-977-5253
mailto:ed@edwhitelaw.com

LACKEY HERSHMAN, LLP
Roger L. Mandel
3102 Oak Lawn Avenue, Suite 777
Dallas, TX  75219
Telephone: 214-560-2238

STUEVE SIEGEL HANSON, LLP
Patrick J. Stueve
Todd E. Hilton
Bradley T. Wilders
460 Nichols Road, Suite 200
Kansas City, MO  64112
Telephone:  816-714-7100

STUEVE SIEGEL HANSON, LLP
Jason S. Hartley
Jason M. Lindner
550 W. C Street, Suite 1750
San Diego, CA 92101
Telephone:  619-400-5822

*Counsel to Certain Plaintiffs*

09-50026-mg Doc 13469-2 Filed 09/25/15 Entered 09/25/15 15:34:53 Marked MDL
Case 14-md-02543-JMF Document 1139 Filed 09/25/15 Page 1243 of 1248
Complaint - Part 2 of 2 Pg 743 of 743

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorneys of record for each other party through the Court's electronic filing service on July 9, 2015, which will send notification of such filing to the e-mail addresses registered.


 *s/ Steve W. Berman*
Steve W. Berman

010440-11 789697 V1