**GOODWIN | PROCTER**

William P Weintraub
212.813.8839
WWeintraub@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
The New York Times Building
620 Eighth Avenue
New York, NY 10018
T: 212.813.8800
F: 212.355.3333

September 28, 2015

**VIA E-MAIL TRANSMISSION
AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

Re:   *In re Motors Liquidation Co., et al.* **(Case No. 09-50026 (REG)):**
       **Response to New GM Bellwether Letter and Marked Bellwether Complaints**

Dear Judge Gerber:

The plaintiffs in the Bellwether Cases (the "Bellwether Plaintiffs") believe that, rather than annotating each complaint, the most helpful approach to responding to the marked pleadings submitted by New GM would be to provide numbered responses that can be keyed to New GM's color coding.[1] There are nine (9) standard numbered responses that are attached as Appendix A.  The responses are intended to be self-explanatory and are consistent with the positions taken by the Bellwether Plaintiffs and other plaintiffs in the briefing on punitive damages and "imputation."  Each color used by New GM to mark the specific grounds for its objections/requests to strike is addressed by the following applicable number(s), which the Bellwether Plaintiffs believe aptly respond to New GM's contentions.

- **Pink**:  9; 1; 5; and 7 or 8, as applicable, depending on the date the Bellwether Plaintiff acquired the subject vehicle.[2]
- **Orange**:  1; 5; 2, 3 or 4, as applicable for Independent Claims; and 7 or 8, as applicable, depending on the date the Bellwether Plaintiff acquired the subject vehicle.
- **Blue**:  1; 2; 4 (to the extent applicable); 5; 6; and 7 or 8, as applicable, depending on the date the Bellwether Plaintiff acquired the subject vehicle.
- **Green**:  1; 2; 3; 4; 5; 6; 7; 8; and 9.  With respect to 7 and 8, as applicable, depending on the date the plaintiff acquired the subject vehicle.
- **Yellow**:  1; 2; 3; 4; 5; 6; 7; 8; and 9.  With respect to 7 and 8, as applicable, depending on the date the plaintiff acquired the subject vehicle.

In addition, rather than repeat the arguments already briefed to the Court, the Bellwether Plaintiffs make the following points in response to New GM's letter.

---

[1] The Bellwether Plaintiffs do not concede that New GM has properly characterized the Complaints or particular allegations or claims in the Complaints.

[2] Of the six Bellwether Cases, four involve situations where the plaintiff acquired the subject vehicle after the closing of the 363 Sale:  the *Yingling*, *Norville*, *Reid*, and *Barthelemy* actions.

ACTIVE/83754002.3

GOODWIN | PROCTER

Honorable Robert E. Gerber

September 28, 2015
Page 2

1. New GM is the *de facto* "successor" to Old GM for the "Product Liabilities" that New GM assumed under Section 2.3(a)(ix) of the Sale Agreement. Therefore, references to successor liability in the Complaints is not improper. In addition, to the extent the Independent Claims against New GM rely upon knowledge or information inherited from Old GM, or information relating to Old GM, regardless of how that information was obtained by New GM, use of the colloquial terminology "successor" in the Complaints is not barred or improper, so long as the underlying claim is an Independent Claim. And, lastly, under this Court's rulings, New GM can be the "successor" to Old GM if the Bellwether Plaintiffs' due process rights were violated at the time of the 363 Sale and they were prejudiced as a result, which means the "free and clear" barrier to successor liability would not be applicable to these plaintiffs.[3]

2. If punitive damages are an Assumed Liability, then so are claims and allegations supporting an award of punitive damages, such as gross negligence, recklessness, or willful misconduct. Provided there is a causal connection between each of these supporting claims, the subject vehicle, and the incident or accident in which the plaintiff was injured, pursuant to the language of Section 2.3(a)(ix) of the Sale Agreement, the liability for the resulting damages would be among the Liabilities assumed by New GM. But for the conduct, there would not be any compensatory damages, and without compensatory damages, there could be no punitive damages. Indeed, each of these claims can support a claim for compensatory damages for product liability, and therefore, Old GM's conduct can be assessed in light of its negligence, gross negligence or willful misconduct. Likewise, if New GM has liability for Independent Claims based on its post-Sale conduct, all of the supporting claims are in play.

3. The so-called "imputation" argument is a red herring. Indeed, "imputation" is a misnomer. The Independent Claims are based on New GM's admitted knowledge of the long concealed safety defect, regardless of how such information was acquired by New GM. New GM acquired a wealth of knowledge when it purchase the assets of Old GM. Whether the inherited knowledge was widespread enough to become part of New GM's "consciousness" is for a trial court or jury to decide.

4. Liability for failure to warn is not limited to (or even solely based on) a private right of action for violation of the Safety Act. Rather, the issue is whether there is a duty to warn that is derived from common or statutory law or that can be implied from other duties applicable to New GM once it can be shown the New GM had knowledge of the Ignition Switch Defect. If so, such claims would be Independent Claims, regardless of whether the requisite knowledge was inherited from Old GM or separately developed by New GM post-Sale.

---

[3] The Court has already made the requisite findings to support the due process violation for vehicles with the Ignition Switch Defect.

# GOODWIN | PROCTER

Honorable Robert E. Gerber

September 28, 2015
Page 3

5. With respect to Assumed Liabilities for Product Liabilities, as a general matter, liability for defective products (other than strict liability) is often based on the seller's conduct. The seller's manufacturing of the vehicle is part of its conduct, as are the seller's representations regarding the safety of the vehicle. The injury suffered by the plaintiff is the result of the seller's conduct. New GM's hyper-technical argument that the injury must be caused by the vehicle ignores the self-evident fact that the claims are against the seller for its negligence and other wrongful conduct, not against the car. The triggering and/or contributing and/or supporting conduct of the defendant is at the root of causation -- whether that conduct is negligence, misrepresentation, or failure to warn -- and such conduct cannot be banished from consideration.

6. Similarly, contrary to what New GM argues in its letter, claims based on "alleged representations or omissions – such as fraud, negligent misrepresentation, duty to warn after the vehicle sale, or violations of consumer protection statutes" do, indeed, fall within the definition of the assumed "Product Liabilities." This is because those failures and omissions by Old GM lulled drivers into thinking they were driving safe and non-defective vehicles thereby leaving these unsuspecting drivers vulnerable to the very incidents and accidents that harmed them. These failures and omissions are indisputably proper elements of a case for "product liability" and are properly pled by the Plaintiffs for purposes of establishing the underlying predicate liability for the "Liabilities" of Old GM that were assumed as "Product Liabilities." The resulting harm is among the damage that New GM is liable for as an Assumed Liability. Of course, New GM also has its own liability for any Independent Claims based upon such failures and omissions that are attributable to post-closing conduct by New GM -- regardless of whether inherited knowledge is an element of such claim. The harm caused by New GM's post-Sale conduct is not a Retained Liability; the liability for such conduct is squarely New GM's responsibility.

For the reasons already set forth in the submitted briefing, there are three "paths" to punitive damages for the Bellwether Plaintiffs. There are also the due process issues of whether post-closing accident victims can be bound by the "free and clear" aspects of the Sale Order under the findings already made in the Decision and the status of some of the Bellwether Plaintiffs as true "future" claimants at the time of the Sale. For these reasons, the Bellwether Plaintiffs continue to believe that their complaints comport with this Court's rulings and do not require amendment.

# GOODWIN | PROCTER

Honorable Robert E. Gerber

September 28, 2015
Page 4

                                                        *Respectfully submitted,*

                                                        */s/ William P. Weintraub*
                                                        *William P. Weintraub*

cc:     Arthur Steinberg
         Scott Davidson
         Richard C. Godfrey
         Andrew B. Bloomer
         Edward S. Weisfelner
         Howard Steel
         Sander L. Esserman
         Jonathan L. Flaxer
         S. Preston Ricardo
         Matthew J. Williams
         Lisa H. Rubin
         Keith Martorana
         Daniel Golden
         Deborah J. Newman
         Jamison Diehl
         Gregory W. Fox
         Steve W. Berman
         Elizabeth J. Cabraser
         Robert C. Hilliard
         Victor Pribanic
         Gary Peller

ACTIVE/83754002.3

**GOODWIN | PROCTER**

William P Weintraub
212.813.8839
WWeintraub@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
The New York Times Building
620 Eighth Avenue
New York, NY 10018
T: 212.813.8800
F: 212.355.3333

## Appendix A - Legend

1. Assumed Liability:  Means that the highlighted claim or cause of action, or the underlying liability asserted against New GM based upon the highlighted allegation, is an Assumed Liability under the Sale Agreement because it is among the "Liabilities" for "Product Liabilities" that are within the scope of amended Section 2.3(a)(ix) of the Sale Agreement.  Such "Product Liability" includes any predicate action or inaction that is an element of causation or that contributed to the incident or accident that harmed the Plaintiff.

2. Independent Claim:  Means that the highlighted claim or cause of action, or the underlying liability asserted against New GM based upon the highlighted allegation, is a claim against New GM that is based solely on its post-closing actions or inactions that permissibly take into account knowledge inherited by New GM from Old GM at the time of the closing of the Sale when New GM acquired the books, records, files, reports and databases maintained by Old GM, and also acquired the transferred employees and all of the knowledge and memory of those employees.

3. Independent Claim:  Means that the highlighted claim or cause of action, or the underlying liability asserted against New GM based upon the highlighted allegation, is a claim against New GM that is based solely upon its post-closing actions or inactions that permissibly take into account knowledge first developed by New GM after the closing of the Sale.

4. Independent Claim:  Means that the highlighted claim or cause of action, or the underlying liability asserted against New GM based upon the highlighted allegation, is a claim against New GM that is based solely upon its post-closing actions or inactions that permissibly take into account knowledge that combines aspects of #2 and #3.

5. Informative Conduct/Informative Knowledge for Assumed Liabilities:  Means the actions taken or not taken by Old GM, and the knowledge held by Old GM, that are probative of awareness, state of mind, recklessness, gross negligence, bad intent, or callousness, that are predicates to the incident or accident such as misrepresentations of the safety of the vehicle or the failure to warn, or that are aspects or are indicative of reprehensible conduct, that, in each instance, are elements that the Bellwether Plaintiffs allege should properly be considered by a judge or jury in connection with determining the "Assumed Liabilities" of New GM for "Product Liability," including liability for punitive damages.

6. Informative Conduct/Informative Knowledge for Independent Claims:  Means the actions taken or not taken by New GM, and the knowledge by New GM, however and whenever acquired by it, that are probative of awareness, state of mind, recklessness, gross negligence, bad intent, or callousness, that are predicates to the incident or accident such as misrepresentations of the safety of the vehicle or the failure to warn, or that are aspects or are indicative of reprehensible conduct, that, in each instance, are elements that the Bellwether Plaintiffs allege should properly be considered by a judge or jury in connection with determining the liability of New GM for Independent Claims, including liability for punitive damages.

ACTIVE/83754002.3

GOODWIN | PROCTER

Honorable Robert E. Gerber

September 28, 2015
Page ii

7. <u>Due Process Violation Pre-Closing Vehicle Purchase</u>:  Means that any restriction on successor liability does not apply to this Bellwether Plaintiff because he or she was a known creditor at the time of the Sale, was given constitutionally insufficient notice of the sale free and clear, and was prejudiced as a result because the incident or accident involving this Bellwether Plaintiff was avoidable but for (i) Old GM's initial (pre-closing) non-disclosure and failure or refusal to conduct a timely recall and/or warn this Bellwether Plaintiff and/or (ii) New GM's subsequent (post-closing) non-disclosure and failure or refusal to conduct a timely recall and/or warn this Bellwether Plaintiff, which, in the case of both (i) and (ii), caused this Bellwether Plaintiff to continue to operate the subject vehicle unaware of the safety defect.  Consequently, New GM can be liable for all damages suffered by the Bellwether Plaintiff in the incident or accident involving the subject vehicle in which the Bellwether Plaintiff was injured or killed, including punitive damages.

8. <u>Due Process Violation Post-Closing Vehicle Purchase</u>:  Means that any restriction on successor liability does not apply to this Bellwether Plaintiff because he or she was a future creditor at the time of the Sale, was not given constitutionally sufficient notice of the sale free and clear of successor liability claims, and, under applicable law, cannot be bound by any order purporting to bind parties with no connection with Old GM at the time of the Sale.  Consequently, New GM can be liable for all damages suffered by the Bellwether Plaintiff in the incident or accident involving the subject vehicle in which the Bellwether Plaintiff was injured or killed, including punitive damages.

9. <u>Successor Liability</u>:  Means that, as a practical matter, one or more of the following: (i) New GM is effectively the successor of Old GM because it has contractually assumed liability for the subject liability as "Liability" for "Product Liability," (ii) New GM is liable as a successor to Old GM for the reason set forth in #7, and/or (iii) New GM is liable as a successor to Old GM for the reason set forth in #8.