**Hearing Date:  October 14, 2015, at 9:45 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
In re                                              :     Chapter 11
                                                   :
MOTORS LIQUIDATION COMPANY, *et al.*,              :     Case No.:  09-50026 (REG)
    f/k/a General Motors Corp., *et al.*           :
                                                   :
                    Debtors.                       :     (Jointly Administered)
                                                   :
------------------------------------------------------------x

**REPLY BRIEF BY GENERAL MOTORS LLC WITH RESPECT
TO WHETHER PLAINTIFFS CAN AUTOMATICALLY IMPUTE TO
NEW GM KNOWLEDGE OF THE EVENTS THAT TOOK PLACE AT
<u>OLD GM AND/OR AS REFLECTED IN OLD GM'S BOOKS AND RECORDS</u>**

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ...............................................................................................1

**ARGUMENT** .............................................................................................................................3

    A.  The Source of the Alleged Transferred Employee Knowledge Is Relevant ..................3

    B.  The Alleged Knowledge to be Transferred Must Relate to a Valid Claim Against New GM ................................................................6

        1.  Third-Party Beneficiary Claims .................................................................................8

        2.  Fraudulent Concealment............................................................................................8

        3.  State Consumer Protection Statutes..........................................................................9

        4.  Unjust Enrichment....................................................................................................9

        5.  Failure to File A Proof of Claim ..............................................................................10

**CONCLUSION** .......................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                **Page(s)**

*Allard v. Arthur Andersen & Co. (USA)*,
   924 F. Supp. 488 (S.D.N.Y. 1996) .................................................................................... 5

*Burton v. Chrysler Group*,
   492 B.R. 392 (Bankr. S.D.N.Y. 2013) ................................................................................ 7

*Chamberlain Group, Inc. v. Nassimi*,
   2010 WL 1875923 (W.D. Wash. May 10, 2010) ................................................................ 3

*Forest Labs, Inc. v. The Pillsbury Co.*,
   452 F.2d 621 (7th Cir. 1971) .............................................................................................. 3

*Fridena v. Evans*,
   622 P.2d 463 (Ariz. 1980) .................................................................................................. 5

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015) ................................................................................ 2

*In re Motors Liquidation Co.*,
   531 B.R. 354 (Bankr. S.D.N.Y. 2015) ................................................................................ 2

*In re Motors Liquidation Co.*,
   534 B.R. 538 (Bankr. S.D.N.Y. 2015) ................................................................................ 1

*Interstate Power Co. v Kansas Power & Light Co.*,
   909 F. Supp. 1241 (N.D. Iowa 1993) ................................................................................. 3

*O'Riordan v. Federal Kemper Life Assurance Co.*,
   114 P.3d 753 (Cal. 2005) ................................................................................................... 5

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. Cal. 2012) .................................................................................... 9

**Statutes**

CAL. BUS. & PROF. CODE § 17500 *et seq.* ................................................................................ 9

General Motors LLC ("**New GM**") submits this Reply Brief[1] to show, *inter alia*, that plaintiffs in lawsuits filed against General Motors LLC ("**New GM**") cannot automatically impute to New GM (i) knowledge of events that took place at Motors Liquidation Co. (f/k/a General Motors Corporation) ("**Old GM**"), and/or (ii) information reflected in Old GM's books and records that were transferred to New GM as part of the 363 Sale[2] ("**Imputation Issue**").

## PRELIMINARY STATEMENT

New GM agrees with plaintiffs that there may be circumstances where the knowledge acquired by a New GM employee while working for Old GM could be relevant to a claim or defense in the MDL, the State Actions, the Bellwether Actions, or the Other Actions. The Court's two examples in *Bledsoe*,[3] describing theoretical, affirmative New GM conduct of (i) knowingly installing a defective part manufactured by Old GM, or (ii) knowingly failing to make a necessary repair, are illustrative of this proposition. But these discrete hypotheticals are a far cry from the wholesale adoption of hundreds of allegations of Old GM conduct from the MDL Pre-Sale Consolidated Complaint into the MDL Complaint, as plaintiffs have done. As noted in *Bledsoe*, while "mention (without anything materially more) of Old GM and of the 363 Sale would be proper," courts need to be wary of reliance on facts ostensibly introduced as "background" "when they were in fact attempts to paint New GM with Old GM acts." *Id.*

In its Opening Brief on the Imputation Issue, New GM cited to the Court's prior ruling[4] that plaintiffs cannot impute to New GM knowledge of events that took place at Old GM,

---

[1] This Reply Brief responds to the *Opening Brief On Imputation Issue* filed on behalf of various plaintiffs, dated September 18, 2015 ("**Plaintiffs' Imputation Brief**") [Dkt. No. 13454 (Filed Under Seal)].

[2] Terms used herein and not otherwise defined shall have the meanings ascribed to them in New GM's Opening Brief on the Imputation Issue, dated September 18, 2015 [Dkt. No. 13451].

[3] *In re Motors Liquidation Co.*, 534 B.R. 538, 543 n.16 (Bankr. S.D.N.Y. 2015) ("**Bledsoe**").

[4] In the April 15, 2015 decision ("**Decision**"), the Court addressed imputed knowledge by concluding that certain plaintiffs were known creditors "based not on any kind of automatic or mechanical imputation drawn from

1

automatically, and on a wholesale basis. In Plaintiffs' Imputation Brief, they did not address this ruling because their complaints do precisely what that ruling holds they should not do. Essentially, plaintiffs have filed an "across the board," prolix presentation of Old GM events, without any analysis of what specific facts were known to New GM, and how those facts would be relevant to distinct claims against New GM. This shotgun approach ignored the Court's explicit admonition not to proceed this way.[5] Pleading in this "broad brush" fashion was purposeful and goes well beyond providing "necessary background." Rather, it was a transparent attempt to obscure the separate identities of Old GM and New GM.[6] By presenting their claims in this muddled fashion, plaintiffs are essentially making a successor liability claim that is barred by the Sale Order. As demonstrated below, plaintiffs cannot stretch the "transfer of employee knowledge" imputation principle—that may have application in certain limited circumstances, generally not present here—into an "across the board" principle that is true in all circumstances.[7]

Plaintiffs' attempt to impute Old GM knowledge to New GM with regard to Old GM sold vehicles is particularly improper. In short, plaintiffs fail to allege Independent Claims related to Old GM-sold vehicles to which imputation would be relevant.[8] Put another way, an allegation of

---

agency doctrine (which the Court would find of doubtful wisdom)." *In re Motors Liquidation Co.*, 529 B.R. 510, 528 (Bankr. S.D.N.Y. 2015).

[5] *See In re Motors Liquidation Co.*, 531 B.R. 354, 358 (Bankr. S.D.N.Y. 2015) (noting that the Arizona and California Complaints impermissibly contained, respectively, 60 and 18 paragraphs alleging pre-363 Sale conduct).

[6] Use of the term "GM brand" to mean both Old GM and New GM produced vehicles is another example of plaintiffs' attempt to muddle the separate identities and obligations of Old GM and New GM.

[7] The Bellwether plaintiffs have characterized the imputation argument as a "red herring." Letter to Court, dated September 28, 2015 [Dkt. No. 13475], at p. 2. They, at least, recognize that knowledge cannot be imputed automatically or wholesale; rather, there needs to be additional analysis to show, among other things, whether the transferred knowledge of individual employees was widespread enough to constitute the knowledge of New GM itself.

[8] The one possible Independent Claim relates to certified used Old GM manufactured vehicles that were then sold by dealers after the 363 Sale, for which New GM issued a new limited warranty. Of the approximately 70 million vehicles that are the subject of the MDL Complaint, there are about 800 certified used vehicles

Old GM knowledge imputed to New GM can only be relevant if: (a) there is a claim based solely on New GM conduct and for which New GM may be held liable; (b) the alleged knowledge is an element of such claim; and (c) the alleged knowledge, even if known by an Old GM employee who was then hired by New GM, can be imputed to New GM. Nowhere in either the MDL Complaint or their Imputation Brief do plaintiffs attempt to make such a particularized showing; to the contrary, as detailed below, plaintiffs fail to state Independent Claims against New GM and, therefore, the Imputation Issue is never reached for such Claims.

## ARGUMENT

A. **The Source of the Alleged Transferred Employee Knowledge Is Relevant**

Plaintiffs assert that the "source of the employee transferred knowledge" to be imputed to New GM is irrelevant.[9] But that clearly is not true, and plaintiffs have apparently recognized the contrary view when they tried (but did not succeed) in distinguishing New GM's cases that criticize automatic, wholesale, imputation. For example, plaintiffs acknowledge that in *Chamberlain Group, Inc. v. Nassimi*, 2010 WL 1875923 (W.D. Wash. May 10, 2010), the employee's knowledge was not imputed to the purchaser because he acquired it before being hired by the purchaser. Plaintiffs also acknowledge that, in *Forest Labs, Inc. v. The Pillsbury Co.*, 452 F.2d 621 (7th Cir. 1971), the seller's employees' knowledge was not imputed to the purchaser just because they went to work for the purchaser. Plaintiffs make the same concession about *Interstate Power Co. v Kansas Power & Light Co.*, 909 F. Supp. 1241 (N.D. Iowa 1993): "the decision indeed rejected the argument that 'the knowledge of [the seller's] employees … should be imputed to [the purchaser].'"[10] In attempting to distinguish these cases, plaintiffs have

---

        manufactured by Old GM (*See* Statement of Facts discussed *infra,* at ¶ 114), or less than .0012% of the alleged Affected Vehicles.

[9]    Plaintiffs' Imputation Brief, at 3-4.
[10]  Plaintiffs' Imputation Brief, at 19.

3

essentially acknowledged that the "source" of the alleged knowledge is relevant to whether knowledge should be imputed. This concession highlights plaintiffs' error in failing to specify in their complaints which employee's knowledge should be imputed for which purportedly viable New GM claim.

Plaintiffs attempt to salvage their defective pleading by referring generically to the group of Old GM employees that New GM allegedly stipulated[11] had knowledge of the ignition switch defect as of the filing of the Sale Motion. Plaintiffs fail to assert which of those 24 employees had what specific knowledge to support which specific claim against New GM. Plaintiffs refer to the Deferred Prosecution Agreement recently entered into by New GM to support their position. But, plaintiffs ignore footnote 1 of the Statement of Facts, which provides:

> For the purposes of this Statement of Facts, to the extent any conduct, statement, actions, or documents occurred on or are dated before July 10, 2009, references to "GM" shall mean and are intended to mean solely "Motors Liquidation Company," previously known as General Motors Corporation ("Old GM"). Although New GM in this Statement of Facts admits certain facts about Old GM's acts, conduct or knowledge prior to July 10, 2009 based on New GM's current knowledge, ***New GM does not intend those admissions to imply or suggest that New GM is responsible for any acts, conduct or knowledge of Old GM, or that such acts, conduct and knowledge of Old GM can be imputed to New GM. This Statement of Facts is not intended to alter, modify, expand or otherwise affect any provision of the July 5, 2009 Sale Order that was issued by the U.S. Bankruptcy Court for the Southern District of New York, or the rights, protections and responsibilities of New GM under the Sale Order.*** (emphasis supplied).[12]

And even if the Deferred Prosecution Agreement supported plaintiffs' argument, which it does not, the purported knowledge of the 24 employees relating to the ignition switch defect does not and cannot say anything about any employees' knowledge of purported claims asserted by *Non-*

---

[11] New GM is challenging on appeal that it stipulated, as part of the Court's determination of the Four Threshold Issues, that Old GM personnel knew of the ignition switch defect and the need to conduct a safety recall.

[12] The same footnote 1 is in the Deferred Prosecution Agreement. A copy of the Deferred Prosecution Agreement is attached to the Plaintiffs' Imputation Brief as Exhibit "1." The Statement of Facts is Exhibit "C" to the Deferred Prosecution Agreement.

4

*Ignition Switch Plaintiffs*. Plaintiffs also fail to point out that the Statement of Facts in the Deferred Prosecution Agreement does not say Old GM knew prior to the 363 Sale, or New GM knew the day after the 363 Sale, that there was a safety defect for the ignition switch. Rather, the Statement of Facts states that certain New GM personnel knew "in the spring of 2012" (approximately three years *after* the closing of the 363 Sale) that the ignition switch presented a safety defect.

Plaintiffs also assert that "employees' knowledge within the scope of their employment is imputed to the corporation even if it is never communicated to others within the corporation because courts impose a conclusive presumption that the agent has discharged his duty to impart to the principal all the knowledge which is necessary for the principal's protection or guidance."[13] That assumption breaks down in the circumstance presented here, when a seller (Old GM) and a purchaser (the entity created by the U.S. Government that would eventually become New GM) are contractual adversaries. Plaintiffs have not cited any cases suggesting there is a presumption that the knowledge obtained while an employee worked for the seller will automatically be disclosed to the purchaser when the employee starts work for the purchaser.

Moreover, the concept of disclosure by an agent to a principal is based on what the agent actually knew, as compared to what the agent should have known. Thus, when an employee is hired by the purchaser, the concept of disclosure from an agent to its principal must be based on what that employee actually knew when hired, as contrasted to what the employee should have

---

[13] Plaintiffs Imputation Brief, at 15. The cases cited by plaintiffs stand for the unremarkable proposition that, as a general rule, an agent has a duty to disclose material information to its principal, and that knowledge of the agent can be imputed to the principal. *See Fridena v. Evans*, 622 P.2d 463, 466 (Ariz. 1980); *O'Riordan v. Federal Kemper Life Assurance Co.*, 114 P.3d 753, 757 (Cal. 2005); *Allard v. Arthur Andersen & Co. (USA)*, 924 F. Supp. 488, 494-95 (S.D.N.Y. 1996). None of plaintiffs' cases discuss the situation here, where there was a 363 sale of assets, free and clear of liabilities, and the purchaser was expressly found not to be a successor of the seller.

5

known while working for the seller. Failing to plead these issues with the specificity required only obscures the Court's analysis of whether plaintiffs' claims are barred by the Sale Order.

### B. The Alleged Knowledge to be Transferred Must Relate to a Valid Claim Against New GM

Plaintiffs concede that they are asserting claims on behalf of Old GM vehicle owners. Indeed, 63 named plaintiffs in the MDL Complaint purchased vehicles manufactured by Old GM. Another 50 named plaintiffs purchased Old GM vehicles after the 363 Sale from third parties with no apparent connection to Old GM. In short, an overwhelming majority of the named plaintiffs in the MDL Complaint are Old GM vehicle owners.

Moreover, plaintiffs' damage theory seeks to recover perceived economic losses for *every Old GM vehicle owner*, even those owners who did not have a vehicle with the recalled defective ignition switch or, for that matter, *did not have a vehicle that was ever recalled*.

What is more, this Court modified the Sale Order only to allow the Ignition Switch Plaintiffs—not other plaintiffs—to assert Independent Claims (assuming there was a valid basis to do so) against New GM that would otherwise be barred by the Sale Order. Thus, the relevant threshold question (before the Imputation Issue is addressed) is what *new* obligations did New GM incur to Ignition Switch Plaintiffs for vehicles sold by Old GM[14] after it had bought assets in a 363 Sale, free and clear of Old GM's Retained Liabilities. Put another way, what Independent Claims, if any, for Old GM sold vehicles, are there for Ignition Switch Plaintiffs to pursue against New GM? Except possibly for the relatively few Old GM certified used vehicles sold by dealers after the 363 Sale with a New GM warranty, there are none.

---

[14] New GM asserts that it did not have any new obligations for Retained Liabilities relating to vehicles sold by Old GM.

6

Plaintiffs argue that it is not for this Court, but for Judge Furman, or other judges in the forums where plaintiffs improperly brought lawsuits, to make merits rulings.[15] New GM is not asking this Court to weigh evidence and make ultimate rulings on the merits of disputed factual issues. Rather, this Court's "gate-keeping" function[16] requires it to determine, as it has done in the past, whether the claims asserted against New GM are Retained Liabilities. This same judicial review was conducted by Judge Bernstein in *Burton* when he determined that a post-sale failure to warn claim in an economic loss case was not valid as a matter of non-bankruptcy law and, in reality, was a dressed-up successor liability claim barred by the Chrysler sale order. *See Burton v. Chrysler Group*, 492 B.R. 392 (Bankr. S.D.N.Y. 2013).

To determine whether plaintiffs have asserted an Independent Claim, it is important to examine: (i) plaintiffs' own statements in this regard, and (ii) the express provisions of the Sale Agreement and the Sale Order. Plaintiffs recognize that they have no private right of action to sue for violations of the Safety Act.[17] They also do not contest that: (a) New GM has no liability for warranty obligations for Old GM vehicles;[18] (b) the Sale Agreement provides that New GM is not liable to third parties for economic loss claims "based upon Contract, tort or any other basis" (*see* Sale Agreement § 2.3(b)(xi)), for any "implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty," or for any

---

[15]  Plaintiffs' Imputation Brief, at 4-5.
[16]  *See, e.g.*, Hr'g Tr., August 31, 2015, at 14:4-9 ("[I]t seems to me that my role in life is as kind of a gatekeeper on pleadings, to ascertain the extent to which certain kinds of claims are or are not permissible under the judgment and under bankruptcy law, after which Jesse Furman would decide whether whatever passes the gatekeeper is or is not actionable as a matter of non-bankruptcy law[.]").
[17]  Plaintiffs' Opening Brief, at 7, n.18 (admitting that not a single count in any of plaintiffs' complaints is based on a private right of action for a breach of the Safety Act).
[18]  Plaintiffs are not asserting a glove box warranty claim or a lemon law claim, which are Assumed Liabilities. Post-363 Sale accident plaintiffs can assert certain personal injury claims, including implied warranty claims, relating directly to the accident/incident. For purposes hereof, the term "**economic loss claims**" is used to mean all claims against New GM that are *not* caused by a post-363 Sale accident/incident to an Old GM vehicle; economic loss claims are included in the Bellwether Complaints, the MDL Complaint, the States Complaints, and the Other Plaintiffs' Complaints.

"allegation, statement or writing by or attributable to" Old GM (*id.*, § 2.3(b)(xvi); and (c) the Sale Order provides that New GM is not liable for any economic loss claim (i) based on Old GM conduct (Paragraph AA), (ii) relating to the operation of Old GM's business (Paragraph 7), (iii) relating to the production of Old GM's vehicles (Paragraph 46), (iv) that is a Retained Liability (Paragraph 48), and (v) based on customer communications, owner's manuals, advertisements, or other promotional materials, catalogs and point of purchase materials relating to an Old GM manufactured/sold vehicle (Paragraph 56). Viewed against these undisputable facts, it is clear that economic loss plaintiffs have not asserted valid claims against New GM, and, thus, the Imputation Issue is never reached. In particular:

1. **Third-Party Beneficiary Claims**: Plaintiffs assert in the MDL Complaint that they are third-party beneficiaries of the Recall Covenant in the Sale Agreement. But Section 9.11 of the Sale Agreement expressly bars third-party beneficiary claims.[19] New GM's failure to comply with the Safety Act for Old GM vehicles was a breach of an obligation owed to a federal agency (NHTSA)—not to plaintiffs (or to the States making similar allegations). The Recall Covenant was not an Assumed Liability, and New GM had no ongoing obligations for Retained Liabilities (which included every Old GM Liability that was not an Assumed Liability). As a result, the Imputation Issue is not implicated for this claim because it is barred by the Sale Order.

2. **Fraudulent Concealment**: Plaintiffs also assert that New GM fraudulently concealed defects from them relating to vehicles sold by Old GM, and by third parties unrelated to New GM. Plaintiffs tacitly recognize that New GM is not liable for the defects in their Old GM sold vehicles; instead, they premise their claims solely on the Recall Covenant and New

---

[19] Section 9.11 provides: "Nothing express or implied in this [Sale] Agreement is intended or shall be construed to confer upon or give to any Person, other than the Parties, their Affiliates and their respective permitted successors or assigns, any legal or equitable Claims, benefits, rights or remedies of any nature whatsoever under or by reason of this Agreement."

8

GM's alleged breach thereof. As noted, however, New GM had no obligation to them under the Recall Covenant and, thus, the Imputation Issue is never reached.[20] The *Burton* case cited in New GM's Opening Imputation Brief (*see* pp. 3, 14-15 thereof) is on point, and plaintiffs cannot avoid its holding.

       3.     **<u>State Consumer Protection Statutes</u>**: Plaintiffs in the MDL Complaint (and also in the States Actions) assert that New GM violated state consumer protection statutes relating to Old GM vehicles. These claims are Retained Liabilities. As a matter of law, consumer fraud claims must relate to conduct at the point-of-sale, meaning Old GM conduct related to the first sale of the Old GM vehicle.[21] Paragraph 48 of the Sale Order explicitly states that plaintiffs cannot assert Retained Liabilities against New GM. And, New GM had no ongoing duties with respect to Retained Liabilities. The purpose of the "free and clear" sale was for New GM not to have any ongoing obligation for Liabilities staying with Old GM. Since the claims based on a violation of the state consumer protection statutes fail as a matter of law because they are barred by the Sale Order, the Imputation Issue is never reached.[22]

       4.     **<u>Unjust Enrichment</u>**: Plaintiffs argue that New GM was somehow unjustly enriched. But this contention could not be relevant to Old GM vehicles already sold by Old GM. Nor could it be relevant to Used Car Purchasers of Old GM vehicles from third parties unrelated

---

[20] Plaintiffs' transparent attempt to repackage claims that are barred by the Sale Order is futile. New GM did not become the manufacturer of an Old GM manufactured vehicle just because it agreed to the Recall Covenant. And, New GM did not become the successor corporation to Old GM just because it assumed certain Old GM liabilities. Plaintiffs' complaints make these unsustainable linkages in an improper attempt to "dress up" what otherwise is, and remained, solely an Old GM liability.

[21] *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146 (9th Cir. Cal. 2012) (state consumer protection statutes with intent elements require plaintiffs to show that defendant "was aware of the alleged defect at the time the [products] were sold").

[22] To the extent the California State Complaint purports to allege a breach of that State's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.*, the State cannot explain how New GM could be held liable to consumers who purchased used Old GM vehicles from third parties or how New GM advertising for New GM vehicles could have induced such purchases.

to New GM (*e.g.*, individual owners, independent used car dealers).[23]  New GM did not obtain any sale proceeds from those transactions.  Since these claims are barred by the Sale Order, the Imputation Issue is never reached.

**5.**     **Failure to File A Proof of Claim**:  Plaintiffs argue that New GM is liable for their failure to file a proof of claim with the Old GM bankruptcy estate.  Plaintiffs never explain how New GM had a duty to them with respect to their Old GM claims.  Old GM sought approval of the Bar Date notice and it was solely Old GM conduct that related to the claims resolution process.  Nor do plaintiffs say which New GM employee had what knowledge to support a purported claim based on an alleged duty relating to the Old GM claims process.  That omission is not surprising since New GM did not have any duty to plaintiffs with respect to their claims against Old GM.  This is the quintessential successor liability that is barred by the Sale Order.

## CONCLUSION

There is no automatic imputation of Old GM's knowledge to New GM.  Plaintiffs are required to demonstrate what specific Old GM knowledge from which employee can be imputed to New GM, and what claim it supports.  Further, since plaintiffs failed to allege valid Independent Claims, as a practical matter, the Imputation Issue is never reached for such claims.

WHEREFORE, New GM respectfully requests that this Court (a) hold that wholesale imputation of allegations based on Old GM conduct are barred, and that plaintiffs have failed to allege claims for which Old GM knowledge can properly be imputed, and (b) direct plaintiffs to strike such allegations from their complaints.

---

[23]  As a general matter, "unjust enrichment" claims can never be properly maintained against a remote manufacturer like New GM. It is dealers, not New GM, that contract directly with customers and "receive" the purchase price of the vehicle.

10

Dated: New York, New York
September 30, 2015

Respectfully submitted,

    /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Attorneys for General Motors LLC*

11