**Hearing Date and Time:  October 14, 2015 at 9:45 a.m. (ET)**

Steve W. Berman
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  206-623-7292

*Co-Lead Counsel in the MDL Proceeding for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs; and Counsel for the People of the State of California, acting by and through Orange County District Attorney Tony Rackauckas and the State of Arizona*

Edward S. Weisfelner
eweisfelner@brownrudnick.com
Howard S. Steel
hsteel@brownrudnick.com
**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800

*Designated Counsel in the Bankruptcy Proceeding for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs*

*[Additional Counsel on Signature Page]*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | No. 09-50026 (REG) |
| f/k/a GENERAL MOTORS CORP., *et al.*, | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY BRIEF ON IMPUTATION ISSUE ON BEHALF OF THE IGNITION SWITCH PLAINTIFFS, THE NON-IGNITION SWITCH PLAINTIFFS, THE STATE OF ARIZONA, THE PEOPLE OF THE STATE OF CALIFORNIA, THE POST-CLOSING IGNITION SWITCH ACCIDENT PLAINTIFFS AND THE ADAMS PLAINTIFFS**

010440-11 809803 V1

**TABLE OF CONTENTS**

**<u>Page</u>**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT......................................................................................................................2

    A. If the Plaintiffs are able to prove New GM's knowledge of pre-Sale events in the courts adjudicating their Complaints, nothing in the Sale Order prohibits them from doing so..........................................................2

    B. New GM's merits-based attacks on claims in Plaintiffs' Complaints are not relevant to any of the issues before this Court, and are misplaced in any event. ...........................................................................5

    C. This Court has found that charging New GM with knowledge of pre-Sale events does not run afoul of the Sale Order............................................9

III. CONCLUSION.................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Athey Prods. Corp. v. Harris Bank Roselle*,
  89 F.3d 430 (7th Cir. 1996) ...................................................................................................6

*Ayres v. General Motors Corp.*,
  234 F.3d 514 (11th Cir. 2000) ................................................................................................8

*Burton*: *Holland v. FCA US LLC*,
  2015 U.S. Dist. LEXIS 117643 (N.D. Ohio Sept. 3, 2015) ..............................................4, 5

*Burton v. Chrysler Group (In re Old Carco LLC)*,
  492 B.R. 392 (Bankr. S.D.N.Y. 2013) ................................................................................3, 4

*Group Health Plan, Inc. v. Philip Morris, Inc.*,
  621 N.W.2d 2 (Minn. 2001) ...................................................................................................7

*Hall v. Walter*,
  969 P.2d 224 (Colo. 1998) .....................................................................................................6

*James D. Hinson Elec. Contracting Co. v. Bellsouth Telecomms., Inc.*,
  2008 U.S. Dist. LEXIS 9464 (M.D. Fla. Feb. 8, 2008) .........................................................6

*Maillet v. ATF-Davidson Co.*,
  552 N.E.2d 95 (Mass. 1990) ..................................................................................................7

*McCollough v. Johnson, Rodenberg & Lauinger*,
  610 F. Supp. 2d 1247 (D. Mont. 2009) ..................................................................................7

*In re Motors Liquidation Co.*,
  2015 Bankr. LEXIS 2406 (Bankr. S.D.N.Y. July 22, 2015) ..............................................2, 9

*Vitolo v. Dow Corning Corp.*,
  634 N.Y.S. 2d 362 (N.Y. Sup. Ct. 1995) ...............................................................................7

## I.    INTRODUCTION[1]

After entering a Deferred Prosecution Agreement with the Department of Justice, New GM now cannot dispute that *it* committed misconduct in connection with the Ignition Switch Defect. In that agreement, New GM admitted that *it* had knowledge of the "deadly safety defect,"[2]—knowledge that arose from ***both*** pre- and post-Sale events—[3] and that it "falsely represented to consumers that vehicles containing the defect posed no safety concern."[4] Just as the Department of Justice believed that New GM's independent post-Sale conduct subjected New GM to forfeiture liability for wire fraud based in part on its knowledge of (and failure to act on) pre-Sale events,[5] the Plaintiffs seek to hold New GM liable for its post-Sale violations of a plethora of State and federal laws based in part on New GM's concealment of (and failure to act on) its knowledge of a myriad of safety issues infecting GM-branded vehicles. That some of the knowledge New GM had was of pre-Sale events cannot and should not provide immunity to New GM.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Opening Brief on Imputation Issue on Behalf of the Ignition Switch Plaintiffs, the Non-Ignition Switch Plaintiffs, the State of Arizona, the People of the State of California, the Post-Closing Ignition Switch Accident Plaintiffs and the Adams Plaintiffs (Sept. 18, 2015) ("Plaintiffs' Opening Brief").

[2] Exhibit C to Deferred Prosecution Agreement, ¶ 3 (Exhibit 1 to Plaintiffs' Opening Brief).

[3] *Id.* at ¶¶ 1-115.

[4] *Id.* at ¶ 3.

[5] *See* Verified Complaint in *United States of America v. $900,000 in United States Currency*, Case No. 1:15:cv-07342 (Sept. 9, 2015) (Exhibit 1 to Plaintiffs' Opening Brief).

New GM cannot support its claim that any mention of pre-Sale events violates the Sale Order.[6] Instead, New GM simply assumes that the Plaintiffs' claims are impermissibly based on Old GM's conduct, and argues that "automatic" imputation cannot save those claims. New GM's Opening Brief at 1-2. But there is a difference between claims based on the ***conduct*** of Old GM (which are barred) and claims based in part on ***knowledge*** of pre-Sale events (about which the Sale Order says nothing and which, as this Court has recognized, are "fair game").[7]

Apart from its failed effort to conflate knowledge of pre-Sale events with pre-Sale conduct, New GM offers little else in its effort to scrub all references to pre-Sale events from the Plaintiffs' Complaints. Instead, New GM offers a scattershot attack on the merits of certain of the Plaintiffs' claims, arguing that the Plaintiffs may not be able to prove New GM's knowledge of pre-Sale events under the law of certain jurisdictions[8] and that the Plaintiffs may not be able to prove the requisite elements of their causes of action.[9] These arguments remain wholly irrelevant to the imputation issue—or to any issue that is properly before this Court.

## II.    ARGUMENT

**A.    If the Plaintiffs are able to prove New GM's knowledge of pre-Sale events in the courts adjudicating their Complaints, nothing in the Sale Order prohibits them from doing so.**

New GM suggests that no Plaintiffs' Complaint may make any reference to any pre-Sale events unless and until this Court finds (on an allegation-by-allegation basis) that the "allegation

---

[6] *See* Opening Brief by General Motors LLC with Respect to Whether Plaintiffs can Automatically Impute to New GM Knowledge of the Events that Took Place at Old GM and/or As Reflected in Old GM's Books and Records (ECF No. 13451) ("New GM's Opening Brief.")

[7] *In re Motors Liquidation Co.*, 2015 Bankr. LEXIS 2406, at *9 n.16 (Bankr. S.D.N.Y. July 22, 2015).

[8] New GM Opening Brief at 12-14.

[9] New GM Opening Brief at 15-19.

meets the standard for imputed knowledge" under the laws of each governing jurisdiction. New GM's Opening Brief at 12. But such a task is outside the gatekeeping role of this Court. Once again, the issue now before this Court is whether the Sale Order bars allegations that New GM had knowledge of pre-Sale events, *not* whether the Plaintiffs will ultimately be able to prove that New GM had that knowledge (whether through imputation, a "critical mass" theory, or otherwise).

Nonetheless, as the Plaintiffs demonstrated in their Opening Brief, the factual record and relevant precedent suggests that they will, indeed, be able to prove that New GM had knowledge of key pre-Sale events—including the Ignition Switch Defect. Plaintiffs' Opening Brief at 5-15. Indeed, it cannot be disputed that the same key employees with knowledge of pre-Sale facts performed the very same duties for New GM after the Sale—and had the same obligations to act on those facts for New GM. This Court cannot credit New GM's assertion that there are no "supporting facts" for Plaintiffs' allegations that New GM had knowledge of pre-Sale events. New GM's Opening Brief at 4.

Contrary to New GM's argument, the *Burton* decision it cites does *not* "squarely address[]" the imputation issue before this Court. New GM Opening Brief at 14 (citing *Burton v. Chrysler Group (In re Old Carco LLC)*, 492 B.R. 392 (Bankr. S.D.N.Y. 2013)). In fact, *Burton* did not turn on (or even discuss) whether "New Chrysler" could be held liable for failing to act on knowledge of pre-sale events. Instead, the *Burton* court based its holding that the plaintiffs' claim was barred on its finding that "New Chrysler's failure to warn [plaintiffs] that they purchased a defective vehicle manufactured by Old [Chrysler] did not *proximately cause* their economic injury, and each plaintiff's failure to warn claim 'is a typical successor liability case

dressed up to look like something else, and is prohibited by the plain language of the bankruptcy court's Order.'" *Id.* at 405. Regardless of the correctness of the *Burton* decision, it is of no moment here since the decision does not discuss imputation, the *Burton* plaintiffs did not allege diminished value caused by New Chrysler's own post-sale misconduct and the case did not arise against the backdrop of a Consent Order with NHTSA and a Deferred Prosecution Agreement with the Department of Justice based on New Chrysler's post-sale misconduct.

More relevant to the issues before this Court is a decision that followed *Burton*: *Holland v. FCA US LLC*, 2015 U.S. Dist. LEXIS 117643 (N.D. Ohio Sept. 3, 2015). Like *Burton*, *Holland* was a suit brought against Chrysler after the company emerged from bankruptcy. Like the *Burton* court, the *Holland* court was called upon to decide whether a claim against Chrysler concerning a pre-bankruptcy sale vehicle was barred by the "free and clear" provisions of the sale order. Similar to New GM's argument here that the mere mention of Old GM renders the Plaintiffs' Complaints in violation of the Sale Order, Chrysler argued in *Holland* that the mere mention of the word "successor" meant that the complaint at issue was barred by prohibitions on successor liability claims—but the *Holland* court rejected the argument:

> Plaintiffs raise claims for failure to warn/failure to address defect; negligent misrepresentation and fraud. An important component of Plaintiffs' case is the fact that FCA [Fiat Chrysler Automobiles] issued [Technical Service Bulletins] regarding the rusting on the Chrysler Pacificas, first acknowledging there was an issue, and later limiting warranty coverage to only a small portion of vehicles. As explained in *Burton*, such claims are not barred by the Sale Order.
>
> FCA's argument in support of transfer [to the bankruptcy court] rests upon Plaintiffs' mixed use of the terms successor liability and independent duty. While Plaintiffs use the phrase "successor liability," Plaintiffs have expressly stated that the question in this case is "whether FCA established a sufficient relationship with

- 4 -

> pre-Bankruptcy Pacifica owners such that State law imposed an independent duty to address the engine cradle defect." (Opposition Brief, Docket #27-1, at p. 5.) ***Therefore, this case is not one that argues liability simply because FCA is a successor to Old Chrysler, but rather whether FCA had a duty to act based [upon] knowledge it acquired and actions it took post- Sale Order relative to the alleged rusting on the Pacificas at issue.***

*Id.* at *13-14 (emphasis added). The same is true here, where all of the claims in the Plaintiffs' Complaints are based on New GM's own knowledge, actions and inactions *after* the Sale Order. Stated differently, it is not enough for New GM to simply point to the mention of a pre-Sale event in a given complaint. Rather, it is incumbent on New GM to show that a particular claim in a particular case is based upon the *conduct* of Old GM (as opposed to New GM's knowledge of pre-Sale facts). Because New GM has not done so with respect to the Plaintiffs' Complaints, those Complaints should proceed unimpeded by the Sale Order.

**B.    New GM's merits-based attacks on claims in Plaintiffs' Complaints are not relevant to any of the issues before this Court, and are misplaced in any event.**

New GM claims that "the seminal question is whether valid claims have been asserted against New GM." New GM's Opening Brief at 14. But *that* question, again, is for the courts adjudicating the Plaintiffs' claims—and is irrelevant to the issues before this Court, which all go to whether the Sale Order bars the Plaintiffs' allegations and/or claims.

Given that New GM has chosen to spend much of its brief mischaracterizing certain of Plaintiffs' claims and the law governing them, Plaintiffs will respond briefly to some of New GM's more glaring misstatements.[10] Plaintiffs dispute New GM's major premise, that it had "no duty to Old GM vehicle owners other than what was specifically assumed under the Sale

---

[10] At the appropriate time, in the proper courts, the Plaintiffs will of course respond to whatever motions to dismiss New GM chooses to file.

- 5 -

Agreement." New GM's Opening Brief at 17.  That statement is somewhat inconsistent with this Court's holding that New GM may be liable for "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct."[11]  The statement is also illogical:  Surely, even New GM would concede that it retained the basic duty to refrain from unlawfully harming Old GM vehicle owners.  For example, imagine if a New GM driver crashed a New GM test vehicle into a vehicle parked on the street.  New GM would be responsible to pay that vehicle's owner for the damage, even if that vehicle happened to be an Old GM vehicle.  It would be absurd for New GM to get off scot-free because it had not "specifically assumed" any duties to the owner of the Old GM vehicle.

     New GM is also incorrect in its assertion that, in order to bring a claim under a state consumer protection statute, the plaintiff must be a consumer who purchased from the defendant-seller. *See* New GM's Opening Brief at 16-18.  In fact, many state consumer statutes provide claims for plaintiffs who purchased nothing from the defendant—so long as the plaintiff was harmed by the defendant's violation of the statute. *See, e.g., Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998) (Colorado Consumer Protection Act permits claims for plaintiffs who suffered injury-in-fact as a result of defendant's violation of the statute); *James D. Hinson Elec. Contracting Co. v. Bellsouth Telecomms., Inc.*, 2008 U.S. Dist. LEXIS 9464 (M.D. Fla. Feb. 8, 2008) (Florida's Unfair and Deceptive Practices Act does not require that the plaintiff be a consumer, and does not require that the misconduct occur in a consumer transaction); *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996) (Illinois Consumer

---

[11] Judgment, ¶ 4 (ECF No. 13177).

- 6 -

Fraud and Deceptive Business Practices Act provides cause of action for non-consumers); *Maillet v. ATF-Davidson Co.*, 552 N.E.2d 95, 98 (Mass. 1990) (under Massachusetts Gen. Laws ch. 93A, § 9, one need not be a consumer or in privity with defendant to bring a claim, since the statute provides a cause of action for "[a]ny person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful" under the statute); *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 8 (Minn. 2001) (under the Minnesota Prevention of Consumer Fraud Act, "[n]either the private remedies statute nor the substantive statutes contains any language restricting those who may sue to purchasers or consumers"); *McCollough v. Johnson, Rodenberg & Lauinger*, 610 F. Supp. 2d 1247, 1252 (D. Mont. 2009) (Given the liberal construction afforded the Montana Unfair Trade Practices and Consumer Protection Act by Montana courts, there is no requirement that plaintiff have a consumer relationship with the defendant.); *Vitolo v. Dow Corning Corp.*, 634 N.Y.S. 2d 362, 366 (N.Y. Sup. Ct. 1995) (*accord Phifer v. Home Savers Consulting Corp.*, 2007 U.S. Dist. LEXIS 6290 at *18-19 (E.D.N.Y. Jan. 30, 2007)) (a plaintiff under New York General Business Law § 349 need not be a "consumer" in order to sue, since "the statute, by its terms, gives *any person* who has been injured … the right to bring an action") (emphasis in original). Under these statutes—and those of many other states—a defendant whose actions in the course of its business cause the diminution of the value of vehicles on the road can be liable to the owners of those vehicles.

New GM also claims that the Plaintiffs cannot prevail on the claim that New GM breached its covenant to monitor and repair Old GM vehicles set forth in § 6.15 of the Sales Agreement. *See* New GM's Opening Brief at 17. Here, New GM argues that "a claimed breach

- 7 -

of the Safety Act does not provide for an individual cause of action." *Id.* at 18.  But none of the Plaintiffs bring private causes of action for breach of the Safety Act.  Instead, the Plaintiffs properly allege that New GM's concealment of known defects and associated misrepresentations about New GM's commitment to safety violated a host of state and federal laws.[12]  And, while New GM correctly notes that, in the Sale Agreement, it disclaimed third-party liability for its own breaches, this Court has already found that portion of the agreement void with respect to the Ignition Switch Plaintiffs (the ***only*** plaintiffs in the relevant state-law counts of the Second Amended Consolidated Complaint in the MDL).  *See* Judgment, ¶ 4 (Sale Order "modified to permit the assertion of Independent Claims" against New GM for claims "involving Old GM vehicles or parts").

Finally, still further afield of the imputation issue, New GM argues that certain post-Sale personal injury claims at issue in the bellwether cases in MDL 2543 do not fall within the definition of Product Liability Claims assumed by New GM in the Sale Agreement because they sound in fraud.  New GM Opening Brief at 8.  In fact, those plaintiffs do not seek to "impute" pre-Sale knowledge to New GM for the purposes of their personal injury claims.  Because those claims are for "death, personal injury, or other injury to Persons or damage to properly caused by motor vehicles … manufactured, sold or delivered by sellers … which arise out of accidents … that happen[ed] on or after the Closing Date and arise from such motor vehicles' operation or performance," Sale Agreement, § 2.3(a)(ix), they are Assumed Liabilities.  Allegations that the

---

[12] *See, e.g., Ayres v. General Motors Corp.*, 234 F.3d 514, 524 n.19 (11th Cir. 2000) ("[t]he lake of a private right of action under the Safety Act does not preclude [the plaintiffs from] acting under a state law cause of action").

plaintiffs were defrauded into driving the defective vehicles does not take their personal injury claims outside the Sale Agreement's definition of Product Liability Claims.

None of New GM's merits-based attacks can obscure the simple fact that the Sale Order does not bar charging New GM with knowledge of pre-Sale facts.

**C.      This Court has found that charging New GM with knowledge of pre-Sale events does not run afoul of the Sale Order.**

New GM argues that this "Court's *Bledsoe* decision did not decide the imputation issue."[13] New GM is wrong, since this Court plainly stated that "knowledge New GM personnel had when acting for New GM (even if those personnel acquired that knowledge while acting for Old GM) would be fair game" in cases against New GM. *In re Motors Liquidation Co.*, 2015 Bankr. LEXIS 2406, at *9 n.16. This Court provided examples of certain misconduct for which New GM could properly be charged notwithstanding the Sale Order—including knowingly installing defective parts made by Old GM and "refusing to make a repair that New GM knew had to be made, ***no matter when its personnel acquired the requisite knowledge.***" *Id.* (emphasis added). New GM is wrong to suggest that those examples are somehow exclusive. *See* New GM's Opening Brief at 19. In fact, as the Plaintiffs' Complaints allege, New GM's concealment, actions and failures to act breached a host of duties under federal and state law—and harmed millions of car owners who are saddled with cars that are worth less as a result of New GM's misconduct.

New GM cannot use the imputation issue to provide it with immunity for its own, independent post-Sale misconduct.

---

[13] New GM's Opening Brief at 19. New GM's reference to the "*Bledsoe* Decision" is to this Court's ruling in *In re Motors Liquidation Co.*, 2015 Bankr. LEXIS 2406 (Bankr. S.D.N.Y. July 22, 2015).

### III.   CONCLUSION

For the reasons stated above and in their Opening Brief, Plaintiffs respectfully submit that the knowledge of New GM employees can be charged to New GM without violating the Sale Order, regardless of whether that knowledge was gained while working for Old GM, reviewing Old GM records while working at New GM, or independently acquired at New GM.

Dated:  September 30, 2015                                   **HAGENS BERMAN SOBOL SHAPIRO LLP**


*/s/ Steve W. Berman*
Steve W. Berman
steve@hbsslaw.com
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  206-623-7292

*Co-Lead Counsel in the MDL Proceeding for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs; and Counsel for the People of the State of California, acting by and through Orange County District Attorney Tony Rackauckas and the State of Arizona*

-and-

Elizabeth J. Cabraser
ecabraser@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: 414-956-1000

*Co-Lead Counsel in the MDL Proceeding for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs*

-and-

Mark P. Robinson Jr.
mrobinson@rcrlaw.net
**ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.**
19 Corporate Plaza Drive
Newport Beach, California 92660
Telephone: 949-720-1288

*Counsel for the People of the State of California, acting by and through Orange County District Attorney Tony Rackauckas*

-and-

Edward S. Weisfelner
eweisfelner@brownrudnick.com
Howard S. Steel
hsteel@brownrudnick.com
**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800

-and-

Sander L. Esserman
esserman@sbep-law.com
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, A PROFESSIONAL CORPORATION**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: 214-969-4900

*Designated Counsel in the Bankruptcy Proceeding for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs*

-and-

William P. Weintraub  
wweintraub@goodwinprocter.com  
**GOODWIN PROCTER LLP**  
The New York Times Building  
620 Eighth Avenue  
New York, NY 10018  
Telephone: 212-813-8800  

*Counsel for Post-Closing Accident Switch Plaintiffs and the Adams Plaintiffs*

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2015, I caused the foregoing to be filed and served upon all parties receiving notice via the Court's ECF system.

| | |
|---|---|
| Dated: September 30, 2015 | */s/ Steve W. Berman* |
| | Steve W. Berman (*pro hac vice*) |
| | HAGENS BERMAN SOBOL SHAPIRO LLP |
| | 1918 Eighth Avenue, Suite 3300 |
| | Seattle, Washington 98101 |
| | Tel.: 206-623-7292 |
| | steve@hbsslaw.com |