# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------------------X

IN RE:
**GENERAL MOTORS LLC IGNITION SWITCH LITIGATION**        **14-MD-2543 (JMF)**

*This Document Relates to:*                                **Case No.**
                                                          **1:14-cv-05881-JMF**
-----------------------------------------------------------------------------------X

**BRENDA DUNCAN**
        **PLAINTIFF,**
**V.**

**GENERAL MOTORS, LLC,**
        **DEFENDANT**
-----------------------------------------------------------------------------------X

## MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

COMES NOW Plaintiff, by counsel, and hereby moves the Court for leave to file her First
Amended Complaint in order to comply with rulings of the Bankruptcy Court. As grounds for this
Motion, Plaintiff states as follows:

1. Plaintiff's original Complaint, included claims for damages potentially related to pre-
   bankruptcy conduct of "Old GM," among other claims.

2. On June 1, 2015, and as amended by a September 3, 2015 scheduling order, the United
   States Bankruptcy Court for the Southern District of New York has determined that certain
   claims, related to vehicles manufactured by Motors Liquidation Company (Old GM),
   cannot be maintained against General Motors LLC (New GM). *See, In re: MOTORS
   LIQUIDATION COMPANY, et al., f/k/a General Motors Corp., et al.,* Case No. 09-50026
   (REG)

3. On September 24, 2015, this Court entered Order No. 81 to streamline the amendment
   process. In accordance with this order, Plaintiff has attached hereto a redline version of the
   original complaint as Exhibit A and a Proposed Amended Petition as Exhibit B.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order directing the filing of
tendered Proposed Amended Petition.

Dated: September 30, 2015

Respectfully submitted,

**THE POTTS LAW FIRM, LLP**

By: */s/ Eric G. Jensen* _____
      Eric G. Jensen      MO# 43094
      Derek H. Potts      NY #44882
      The Potts Law Firm, LLP
      1901 W. 47th Place, Suite 210
      Westwood, KS 66205
      (816) 931-2230 (telephone)
      (816) 817-0478 (facsimile)

**ATTORNEYS FOR PLAINTIFFS**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## KANSAS CITY DIVISION

| | | |
|---|---|---|
| BRENDA DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-00597 |
| | ) | |
| GENERAL MOTORS LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Serve at: | ) | |
| CSC of St. Louis County, Inc. | ) | |
| 130 South Bemiston Avenue, Suite 303 | ) | |
| Clayton, MO 63105. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff BRENDA DUNCAN and for her claims and causes of action against Defendant GENERAL MOTORS LLC, states:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff BRENDA DUNCAN is now and was at all times relevant a citizen and resident of the state of Missouri.

2.    Defendant GENERAL MOTORS LLC ("New GM" or "Defendant") is not a citizen of Missouri. General Motors LLC is (and was at the time this lawsuit was filed) a Delaware limited liability company with its principal place of business in Michigan. General Motors LLC's sole member and 100 percent owner is General Motors Holdings LLC, which is also a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member and 100 percent owner is

Defendant General Motors Company, which is (and was at the time this lawsuit was filed) a publicly traded Delaware corporation with its principal place of business in Michigan, making General Motors LLC a citizen and resident of Delaware and Michigan.  General Motors LLC may be served with process by serving its registered agent for service, CSC of St. Louis County, Inc., 130 South Bemiston Avenue, Suite 303 Clayton, MO 63105.

3.      With respect to the facts alleged and claims asserted in this Complaint, New GM is the corporate successor of General Motors Corporation ("Old GM"), which filed a voluntary Petition for relief under Chapter 11 of the U.S. Bankruptcy Code on June 1, 2009.  (General Motors Corporation and General Motors LLC will be collectively referred to as "GM").  On or about July 10, 2009, New GM acquired substantially all of the assets and assumed certain liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code.  Plaintiff's causes of action in this lawsuit are brought against New GM, and Plaintiff does not assert any causes of action against Old GM.  Although this Complaint references facts against Old GM, it is for background and reference purposes only.  At all times relevant to the claims in this lawsuit, GM has been in the business of developing, manufacturing, and marketing cars throughout the State of Missouri.  New GM has a network of authorized retailers that sells New GM vehicles and parts throughout Missouri and the United States.

4.      Complete diversity exists between Plaintiff and Defendant.  Plaintiff is seeking damages in excess of $75,000.00, exclusive of interest and costs.  Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.

5.      Defendant is subject to personal jurisdiction in this U.S. District Court for

Western District of Missouri as Defendant systematically and continually conducts business in this District and conducts business throughout the United States.

6.      Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Western District of Missouri as it is a judicial district in which Defendant resides for purposes of venue and is a district in which a substantial part of the events or omissions giving rise to the claim occurred.

## BACKGROUND FACTS

7.      Brenda Duncan owned a 2007 Chevrolet Impala ("Plaintiff's Vehicle" or "2007 Chevrolet Impala") (Vehicle Identification Number ("VIN"): 2G1WB55K279181591), which she purchased in 2008. Brenda Duncan purchased the 2007 Chevrolet Impala because of the vehicle's advertised quality, reliability, and safety features.

8.      On February 15, 2014, Brenda Duncan was driving the 2007 Chevrolet Impala on Interstate 435 in Kansas City, Missouri in a reasonable and customary manner. As Plaintiff was travelling northbound, she suddenly lost the ability to steer or control Plaintiff's Vehicle. Plaintiff's Vehicle then left the roadway and struck the side of a bridge. Upon information and belief, Plaintiff's driver's side frontal airbag did not deploy.

9.      As a result of the loss of control and subsequent collision, and failure of her airbag to deploy, Plaintiff sustained serious personal injuries and damages.

10.     Unbeknownst to Plaintiff, her 2007 Chevrolet Impala had a serious and unreasonably dangerous defect with the ignition switch. Specifically, the ignition switch had the ability to change from the "Run" position to the "Accessory" position while the

vehicle was moving, thereby causing the engine to lose power with a resultant loss of power to the steering, brakes, air bags, and other essential safety functions of the car. This defective condition directly resulted in a loss of power exactly at the time and place where Plaintiff most needed these essential functions to avoid this collision and/or lessen the impact of the collision.

11.     The problem with Plaintiff's vehicle was not unique. Plaintiff's vehicle was one of many vehicles subject to recent recall(s) relating to a large number of GM vehicles' ignition switches. A recall notice was issued by New GM for certain of its vehicles, including Brenda Duncan's 2007 Chevrolet Impala, approximately four months after her crash, on or about June 16, 2014. At or about that that time, New GM issued a notice to the National Highway Traffic Safety Administration ("NHTSA"), notifying it of a recall to include 2005-2009 Buick Lacrosses, 2006-2011 Buick Lucernes, 2000-2005 Cadillac Devilles, 2006-2011 Cadillac DTSs, 2006-2014 Chevrolet Impalas, and 2006-2007 Chevrolet Monte Carlos ("Subject Vehicles"), with the number of vehicles affected by the recall being 3,141,731.

12.     As part of the recall made on or about June 16, 2014, New GM admitted that if the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally move the key away from the "Run" position.

13.     As part of the recall made on or about June 16, 2014, New GM further admitted that if this occurred, engine power, power steering, and power braking will be affected, increasing the risk of a crash.

14.     As part of the recall sent on or about June 16, 2014, New GM admitted that

the timing of the key movement out of the "Run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.

15.    In addition, as early as 2005, GM knew that a key hole design modification that would require a piece price increase of $0.50 per vehicle could prevent certain movements in the ignition switch of certain GM vehicles with the same or similar ignition switches.

16.    GM began installing defective ignition switches beginning as early as 2000 in certain GM vehicle models. Upon information and belief, GM knew the ignition switches were defectively designed, but nonetheless continued to manufacture and sell defective ignition switches with the knowledge that they would be used in GM vehicles, including the Subject Vehicles.

1.    As background, and not as a basis for damages, the recently published "Report to the Board of Directors of General Motors Company Regarding Ignition Switch Recalls" authored by Anton R. Valukas ("The Valukas Report"), provides that GM made a conscious decision, in the fall of 2002, to use the defective ignition switch in the Subject Vehicles "that was so far below GM's own specifications that it failed to keep the car powered on in circumstances that drivers would encounter." GM knew of, and approved, the final version of the Ignition Switch that was installed in millions of cars despite knowing that the force required to disengage the ignition switch was far below minimum specifications.

Case 1:14-md-02543-JMF    Document 1432-1    Filed 09/30/15    Page 6 of 30

2.      As background, and not as a basis for damages, according to documents obtained by a United States House of Representatives committee during an investigation into the Defective Ignition Switches, GM opened an opened an engineering inquiry about the defective Ignition Switch in 2004 after customers complained that the Subject Vehicles could be turned off while driving.

3.      As background, and not as a basis for damages, in addition, as early as 2005, GM knew that a key hole design modification that would require a piece price increase of $0.50 per vehicle could prevent certain movements in the ignition switch of certain GM vehicles with the same or similar ignition switches. Yet GM found that the part was too expensive and the change would take too much time.

17.     Because of defects in their design, the ignition switches installed in the Subject Vehicles are, by their nature, loose and/or improperly positioned and are susceptible to failure during normal and expected conditions.  The key sold with the 2007 Chevrolet Impala has a slot design which allows the key fob or chain to hang lower on the key and increases the chance of the key inadvertently moving from the "Run" to "Accessory" or "Off" position during ordinary driving maneuvers (the "Ignition Switch Defect"). When this ignition switch failure occurs, the motor engine and certain electrical components such as power-assisted steering and anti-lock brakes are turned off, thereby endangering the vehicle occupants and compromising the safety airbag system.

18.     The Ignition Switch Defect can occur at any time during normal and proper

Case 1:14-md-02543-JMF    Document 1432-1    Filed 09/30/15    Page 7 of 30

operation of the Subject Vehicles, meaning the ignition can suddenly switch off while it is moving at 70 mph on the freeway, leaving the driver unable to control the vehicle, and vulnerable to a nonfunctioning safety airbag system.

19.    The Ignition Switch Defect precludes drivers and owners of the Subject Vehicles, such as Plaintiff Brenda Duncan, from proper and safe use of their vehicles, reduces vehicle occupant protection, and endangers them and other vehicle occupants. However, no driver or owner of the Subject Vehicles, including Plaintiff Brenda Duncan, knew, or could reasonably have discovered, the Ignition Switch Defect, prior to it manifesting in a sudden and dangerous failure.

20.    Upon information and belief, prior to the sale of the Subject Vehicles, GM knew of the Ignition Switch Defect through sources such as pre-release design, manufacturing, and field testing data; in-warranty repair data; early consumer complaints made directly to GM, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI") and/or posted on public online vehicle owner forums; field testing done in response to those complaints; aggregate data from GM dealers; and accident data.  Despite this knowledge, GM failed to disclose and actively concealed the defects in the ignition switch from Plaintiff Brenda Duncan and the public, and continued to market and advertise the Subject Vehicles as reliable and safe vehicles, which they are not.

21.    As a result of GM's misconduct, Plaintiff Brenda Duncan was harmed and suffered actual damages and personal injuries, in that the Subject Vehicles are unsafe, unfit for their ordinary and intended use, and have manifested, or are at unreasonable risk of

manifesting, the Ignition Switch Defect by way of a sudden and dangerous failure that puts them and others at serious risk of injury or death. Drivers and owners of the Subject Vehicles, including Plaintiff Brenda Duncan, did not receive the benefit of their bargain as purchasers and/or lessees, received vehicles that were of a lesser standard, grade, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations. Drivers and owners of the Subject Vehicles, including Plaintiff Brenda Duncan, did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided, as GM knew but did not disclose, through the use of non-defective ignition parts.

## COUNT I: STRICT LIABILITY – MANUFACTURING DEFECT

22.     Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

23.     Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, and component parts thereof, including but not limited to, equipping them with an ignition switch with design, manufacturing, and/or marketing defects, more particularly set forth herein.

24.     Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the 2007 Chevrolet Impala, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of

occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

25.     At all times relevant herein, the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, and component parts thereof, including the ignition switch, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

26.     It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the 2007 Chevrolet Impala to Plaintiff, and used in the manner for which they were intended by the Defendant.

27.     At all times relevant herein, the Subject Vehicles were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time they were placed in the stream of commerce in ways which include, but are not limited to, one or more of the following:

    (a)    the Subject Vehicles, including their component parts, which includes their ignition switches, contained manufacturing defects;

    (b)    the ignition switches in the Subject Vehicles were inadequately manufactured; and/or

    (c)    the Subject Vehicles, including their component parts, which includes their ignition switches, were not made in accordance with Defendant's specifications or performance standards.

28.     The manufacturing defects of the Subject Vehicles, including the 2007

Chevrolet Impala, occurred while the product was in the possession and control of the Defendant.

29.     The manufacturing defects of the Subject Vehicles, including the 2007 Chevrolet Impala, existed before they left the control of Defendant.

30.     It was foreseeable to Defendant that the Subject Vehicles and their component parts, including the ignition switch, which were manufactured, designed, inspected, tested, assembled, equipped, distributed, and/or sold or otherwise placed into the stream of commerce would fail and cause users and consumers like Plaintiff Brenda Duncan to be unable to control said vehicles and be involved in a collision.

31.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries.  She has endured, and will continue to endure, substantial pain and suffering.  She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Her injuries and damages are permanent and will continue into the future.  Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count I against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT II: STRICT LIABILITY - DESIGN DEFECT

32.     Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

33.     Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, and component parts thereof, including but not limited to, equipping them with an ignition switch with design, manufacturing, and/or marketing defects, more particularly set forth herein.

34.     Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the 2007 Chevrolet Impala, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

35.     At all times relevant herein, the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, and component parts thereof, including the ignition switch, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

36.     It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the 2007 Chevrolet Impala to Plaintiff, and used in the manner for which they were intended by the Defendant.

37.     At all times relevant herein, the Subject Vehicles were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time they were placed

in the stream of commerce in ways which include, but are not limited to, one or more of the following:

    (a)    having an ignition switch that is inadequately designed and located, which may result in the key moving from the "Run" to "Accessory" or "Off" position during normal driving maneuvers;

    (b)    having an ignition switch that allows the 2007 Chevrolet Impala to stall or lose engine power, and steering and/or full braking ability while driving;

    (c)    having frontal airbags that do not deploy when the key is in the accessory/off position; and

    (d)    failing to adequately warn Plaintiff Brenda Duncan, other consumers, or the public in general, about the unsafe and defective condition and design of the vehicle known to GM, so that individuals like Plaintiff Brenda Duncan could make informed and prudent decisions regarding the purchase and use of such vehicles.

    38.    When placed in the stream of commerce, the Subject Vehicles were defective in design, in that they were not reasonably fit, suitable, or safe for their intended purpose and/or their foreseeable risks exceed the benefits associated with their design, making the use of the Subject Vehicles more dangerous than an ordinary consumer would expect, and more dangerous than risks associated with alternatives.

    39.    In addition, at the time the Subject Vehicles left the control of the Defendant, there were practical and feasible alternative designs of the Subject Vehicles and their component parts, including the ignition switches that would have prevented and/or

significantly reduced the risk of Plaintiff's injuries without impairing the reasonably anticipated or intended function of the Subject Vehicles. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the Subject Vehicle's utility.

40.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries. She has endured, and will continue to endure, substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Her injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count II against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT III: STRICT LIABILITY - FAILURE TO WARN

41.     Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

42.    Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, and component parts thereof, including but not limited to, equipping them with an ignition switch with design, manufacturing, and/or marketing defects, more particularly set forth herein.

43.    Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the 2007 Chevrolet Impala, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

44.    At all times relevant herein, the Subject Vehicles were expected to reach, and in fact did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

45.    At all times relevant herein, the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala and component parts thereof, including the ignition switch system, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

46.    It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the 2007 Chevrolet Impala to Plaintiff, and used in the manner for which they were intended by the Defendant.

14

47.    At all times relevant herein, the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, were defective and unreasonably dangerous when they left the possession of Defendant in that they contained warnings insufficient to alert consumers, including Plaintiff herein, of the dangerous risks associated with the defective condition of the Subject Vehicles, notwithstanding Defendant's knowledge of the dangerous risks, including but not limited to the following:

(a)    having an ignition switch that is inadequately designed, constructed, and/or located, which may result in the key moving from the "Run" to "Accessory" or "Off" position during normal driving maneuvers;

(b)    having an ignition switch that allows the 2007 Chevrolet Impala to stall or lose engine power, and steering and/or full braking ability while driving;

(c)    having frontal airbags that do not deploy when the key is in the accessory/off position; and

(d)    failing to adequately warn Plaintiff Brenda Duncan, other consumers, or the public in general, about the unsafe and defective condition and design of the Subject Vehicles known to GM, so that individuals like Plaintiff Brenda Duncan could make informed and prudent decisions regarding the purchase and use of such vehicles.

48.    Plaintiff could not, by the exercise of reasonable care, have discovered the defects herein mentioned and perceived their danger.

49.    Defendant knew or should have known of the risks of the defective condition of the Subject Vehicles and their component parts.

50.     Additionally, Defendant, as manufacturer, designer, distributor, and/or seller of the Subject Vehicles is held to the level of knowledge of an expert in the field.

51.     Plaintiff reasonably relied upon the skill, superior knowledge and/or judgment of Defendant.

52.     Defendant had a duty to warn Plaintiff and consumers of the dangers associated with the Subject Vehicles and their component parts, including the ignition switch.

53.     Despite Defendant's knowledge of the risks of the defective condition of the Subject Vehicles and their component parts, Defendant failed to adequately warn Plaintiff and consumers of those risks.

54.     Had Plaintiff received adequate warnings regarding the unsafe and defective condition of the Subject Vehicles and their risks, she would not have purchased and/or used such vehicle.

55.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries.  She has endured, and will continue to endure, substantial pain and suffering.  She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Her injuries and damages are permanent and will continue into the future.  Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count III against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT IV: NEGLIGENCE

56.    Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

57.    Defendant was negligent in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the 2007 Chevrolet Impala.

58.    Defendant had a duty to individuals, including Plaintiff, to use reasonable care in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the 2007 Chevrolet Impala.

59.    Defendant was negligent in failing to use reasonable care as described here in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the 2007 Chevrolet Impala.  Defendant breached its aforementioned duty by:

Case 1:14-md-02543-JMF   Document 1432   Filed 09/30/15   Page 18 of 30

(a)     Failing to design the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants, including Plaintiff, of the Subject Vehicles, including the 2007 Chevrolet Impala;

(b)     Failing to manufacture the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the 2007 Chevrolet Impala, including Plaintiff;

(c)     Failing to use reasonable care in the testing of the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the 2007 Chevrolet Impala, including Plaintiff;

(d)     Failing to use reasonable care in inspecting the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the 2007 Chevrolet Impala, including Plaintiff; and

(e)     Otherwise negligently or carelessly designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the 2007 Chevrolet Impala.

60.     Defendant also negligently failed to warn or instruct Plaintiff and/or others that the ignition switch which was selected and installed in the Subject Vehicles, including the 2007 Chevrolet Impala, had an unsafe and defective condition and design which was known to Defendant.

61.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff

suffered severe and permanent physical injuries. She has endured, and will continue to endure, substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Her injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count IV against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## ~~COUNT V: BREACH OF EXPRESS WARRANTY~~

~~62.    Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.~~

~~63.    Defendant made assurances as described herein to the general public that the Subject Vehicles, including the 2007 Chevrolet Impala, were safe and reasonably fit for their intended purposes.~~

~~64.    Plaintiff chose to purchase the 2007 Chevrolet Impala described herein based upon Defendant's warranties and representations as described herein regarding the safety and fitness of the 2007 Chevrolet Impala.~~

~~65.    Plaintiff reasonably relied upon Defendant's express warranties and~~

guarantees that the 2007 Chevrolet Impala was safe, merchantable, and reasonably fit for its intended purposes.

66.    Defendant breached these express warranties because the ignition switch in the 2007 Chevrolet Impala was unreasonably dangerous and defective as described herein and not as Defendant had represented.

67.    Defendant's breach of its express warranties resulted in Plaintiff's use of an unreasonably dangerous and defective product, placing said Plaintiff's health and safety in jeopardy.

68.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries.  She has endured, and will continue to endure, substantial pain and suffering.  She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Her injuries and damages are permanent and will continue into the future.  Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count V against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

**COUNT VI: BREACH OF IMPLIED WARRANTY**



69.     Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

70.     Defendant impliedly warranted that the Subject Vehicles, including the 2007 Chevrolet Impala, were merchantable and were fit for the ordinary purposes for which they were intended.

71.     When Plaintiff was driving the 2007 Chevrolet Impala, it was being used for the ordinary purpose for which it was intended.

72.     Plaintiff relied upon Defendant's implied warranties of merchantability in purchasing and operating the 2007 Chevrolet Impala.

73.     Defendant breached these implied warranties of merchantability because the 2007 Chevrolet Impala was neither merchantable nor suited for its intended use as warranted.

74.     Defendant's breach of its implied warranties resulted in Plaintiff's use of an unreasonably dangerous and defective product, placing said Plaintiff's health and safety in jeopardy.

75.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries.  She has endured, and will continue to endure, substantial pain and suffering.  She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Her injuries and damages are permanent and will continue into the

future.  Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count VI against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT VII: FRAUDULENT MISREPRESENTATION

76.    Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

77.    Defendant falsely and fraudulently represented to consumers, and to Plaintiff, that the Subject Vehicles were safe and fit for their intended purposes and use.

78.    The representations made by Defendant were, in fact, false.

79.    When said representations were made by Defendant, it knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

80.    These representations were made by Defendant with the intent of defrauding and deceiving Plaintiff and the public in general, and were made with the intent of inducing the public in general to purchase the Subject Vehicles, which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff and the general public.

81.    At the time the aforesaid representations were made by Defendant and, at the time Plaintiff purchased the 2007 Chevrolet Impala, the Plaintiff was unaware of the falsity

of said representations and reasonably believed them to be true.

82.    In reliance upon said representations, Plaintiff was induced to and did purchase and use the 2007 Chevrolet Impala.

83.    Defendant knew and was aware or should have been aware that the Subject Vehicles, including the 2007 Chevrolet Impala, were defective in nature in that they had the Ignition Switch Defect and/or that it lacked adequate and/or sufficient warnings.

84.    Defendant knew or should have known that the Subject Vehicles had the potential to, could, and would cause severe and grievous injury to the users of said products, and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

85.    Defendant brought the Subject Vehicles to the market, and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff.

86.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries. She has endured, and will continue to endure, substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Her injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count VII against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and

~~reasonable, costs herein expended, punitive damages to punish and deter any such conduct~~

~~in the future and such other relief as the Court deems just and proper under the~~

~~circumstances.~~

## COUNT VIII: FRAUDULENT CONCEALMENT

87.    Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

88.    At all times during the course of dealing between Defendant and Plaintiff and the general public, Defendant misrepresented the safety of the Subject Vehicles, including the 2007 Chevrolet Impala, for their intended use.

89.    Defendant knew or was reckless in not knowing that its representations were, in fact, false.

90.    In representations to Plaintiff and the general public, Defendant fraudulently concealed and intentionally omitted material information, including but not limited to, the fact that:

(a)    the Subject Vehicles were manufactured and/or designed negligently, defectively, and/or improperly in that the ignition switches installed in the Subject Vehicles are, by their nature, loose and/or improperly positioned and are susceptible to failure during normal and expected conditions;

(b)    the keys sold with the Subject Vehicles have a slot design which allows the key fob or chain to hang lower on the key and increases the chance of the key inadvertently moving from the "Run" to "Accessory" or "Off" position during ordinary driving maneuvers (the "Ignition Switch Defect"); and

(c)     when this ignition switch failure occurs, the motor engine and certain electrical components such as power-assisted steering and anti-lock brakes are turned off, thereby endangering the vehicle occupants and compromising the safety airbag system.

91.     Defendant was under a duty to disclose to Plaintiff and consumers the defective nature of the Subject Vehicles, including, but not limited to, the Ignition Switch Defect.

92.     Defendant had sole access to material facts concerning the defective nature of the Subject Vehicles and its propensity to cause serious and dangerous side effects, and hence cause damage to persons who used the Subject Vehicles, including Plaintiff in particular.

93.     Defendant's concealment and omissions of material facts concerning, inter alia, the safety of the Subject Vehicles was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff and consumers into reliance on the use of the Subject Vehicles, and to cause them to purchase and/or use the product.

94.     Defendant knew that consumers, including Plaintiff, had no way to determine the truth behind Defendant's concealment and omissions, as set forth herein.

95.     Plaintiff reasonably relied on facts revealed which negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

96.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries.  She has endured, and will continue to endure, substantial pain and suffering.  She has incurred significant expenses for medical

care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost

past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will

continue to suffer economic loss, and has otherwise been physically, emotionally and

economically injured. Her injuries and damages are permanent and will continue into the

future. Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count VIII against Defendant for

damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and

reasonable, costs herein expended, punitive damages to punish and deter any such conduct

in the future and such other relief as the Court deems just and proper under the

circumstances.

### ~~COUNT IX: NEGLIGENT MISREPRESENTATION~~

~~97.    Plaintiff hereby incorporates by reference each and every paragraph set forth
in this Complaint as if fully copied and set forth at length herein.~~

~~98.    Defendant had a duty to represent and did represent to consumers, and to
Plaintiff, that the Subject Vehicles, including the 2007 Chevrolet Impala, were safe for their
intended use.~~

~~99.    The representations made by Defendant were, in fact, false.~~

~~100.    Defendant failed to exercise ordinary care in the representation of the Subject
Vehicles, while involved in its manufacture, sale, testing, quality assurance, quality control,
and/or distribution of said products into interstate commerce in that Defendant negligently
misrepresented the Subject Vehicles were safe for their intended use.~~

~~101.    Defendant breached its duty in misrepresenting the safety of the Subject~~

Vehicles for their intended use to consumers and to the Plaintiff.

102.   As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries.  She has endured, and will continue to endure, substantial pain and suffering.  She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Her injuries and damages are permanent and will continue into the future.  Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count IX against Defendant for damages in excess of Seventy Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT X: PUNITIVE DAMAGES

103.   Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

104. While New GM expressly accepted responsibility for accident occurring on or after July 10, 2009, it also acquired knowledge of Old GM's activities generally, and the existence of the defective ignition switches in place in millions of vehicles specifically. New GM acquired personnel, documents, and electronic data from Old GM, including but not limited to, top leadership personnel,

27

executives, members of the Board of Directors, internal legal counsel, engineers and quality control personnel. Most importantly, New GM retained the engineer in charge of designing and approving the manufacturing specifications of the defective ignition switch. The employees retained by New GM carried with them the knowledge they gained at Old GM. New GM also acquired knowledge about the issues with the ignition switch, moving stalls and airbag non-deployment through the chief engineer, design and manufacturing documents, internal memorandum, and reports to the Board of Directors. New GM continued to service – and to receive complaints about – vehicles manufactured on Old GM's watch.

105. New GM also acquired certain duties with regard to vehicles in production and on the road at the time of the Sale and Purchase Agreement – duties it breached egregiously – as has been well-publicized and for which it has been justifiably criticized. These duties included, but are not limited to, those arising under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § and the Transportation Recall Enhancement, Accountability and Documentation Act, 49 U.S.C. §§ 30101-30170. GM was fined $35 Million by NTSHA for its delayed reporting of the ignition switch problem and violating federal safety laws.

106. New GM's liability for damages is attributable to its own post-sale conduct and failure to timely remedy and/or recall vehicles it knew had deadly defects, even with regard to vehicles manufactured and sold prior to the Sale and Purchase Agreement.

107.Defendant sold the Subject Vehicles, including the 2007 Chevrolet Impala, to consumers without doing adequate testing to ensure that the Subject Vehicles were reasonably safe for their use and intended purposes.

105.    Defendant sold the 2007 Chevrolet Impala in spite of its knowledge that the ignition switches can unexpectedly and suddenly move from the "On" or "Run" position while the vehicle is in operation to the "Off" or "Accessory" position, thereby causing severe and debilitating injuries suffered by Plaintiff and numerous other individuals.

106.    Defendant ignored reports of consumers, which began as early as 2004, regarding the ignition switch of certain GM vehicles with the same or similar ignition switches throughout the United States and elsewhere of the products' failures to perform as intended, which led to the severe and debilitating injuries suffered by Plaintiff and numerous other individuals.

107.    Defendant knew of the Subject Vehicles' defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell the products so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff.

108.    Defendant, through its conduct in designing, testing, manufacturing, assembling, marketing, selling, and failing to adequately repair the 2007 Chevrolet Impala purchased by Plaintiff, demonstrated wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifferent to consequences, thereby justifying an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests that in addition to actual damages,

she be awarded an additional amount as and for punitive damages in her favor and against

Defendant, and each of them, in an amount which will serve to punish Defendant and deter

Defendant and others from like conduct in the future.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

 /s/  Derek H. Potts

Derek H. Potts          MO# 44882
Timothy L. Sifers     MO# 49386
Brandon L. Corl       MO# 58725
THE POTTS LAW FIRM, LLP
908 Broadway, 3rd Floor
Kansas City, Missouri  64105
Phone:  (816) 931-2230
Fax:  (816) 931-7030
*Attorneys for the Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------------------x

IN RE:
**GENERAL MOTORS LLC IGNITION SWITCH LITIGATION**          **14-MD-2543 (JMF)**

*This Document Relates to:*                               **Case No.**
                                                          **1:14-cv-05881-JMF**
-----------------------------------------------------------------------------------x

**BRENDA DUNCAN**
          **PLAINTIFF,**
**V.**

**GENERAL MOTORS, LLC,**
          **DEFENDANT**
-----------------------------------------------------------------------------------x

## AMENDED COMPLAINT

       COMES NOW Plaintiff BRENDA DUNCAN and for her claims and causes of

action against Defendant GENERAL MOTORS LLC, states:

### PARTIES, JURISDICTION, AND VENUE

       1.       Plaintiff BRENDA DUNCAN is now and was at all times relevant a citizen

and resident of the state of Missouri.

       2.       Defendant GENERAL MOTORS LLC ("New GM" or "Defendant") is not a

citizen of Missouri. General Motors LLC is (and was at the time this lawsuit was filed) a

Delaware limited liability company with its principal place of business in Michigan.

General Motors LLC's sole member and 100 percent owner is General Motors Holdings

LLC, which is also a Delaware limited liability company with its principal place of business

in Michigan. General Motors Holdings LLC's sole member and 100 percent owner is

Defendant General Motors Company, which is (and was at the time this lawsuit was filed)

a publicly traded Delaware corporation with its principal place of business in Michigan, making General Motors LLC a citizen and resident of Delaware and Michigan.  General Motors LLC may be served with process by serving its registered agent for service, CSC of St. Louis County, Inc., 130 South Bemiston Avenue, Suite 303 Clayton, MO 63105.

3.    With respect to the facts alleged and claims asserted in this Complaint, New GM is the corporate successor of General Motors Corporation ("Old GM"), which filed a voluntary Petition for relief under Chapter 11 of the U.S. Bankruptcy Code on June 1, 2009.  (General Motors Corporation and General Motors LLC will be collectively referred to as "GM").  On or about July 10, 2009, New GM acquired substantially all of the  assets and assumed certain liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code.  Plaintiff's causes of action in this lawsuit are brought against New GM, and Plaintiff does not assert any causes of action against Old GM.  Although this Complaint references  facts against Old GM, it  is  for background and reference purposes only.  At all times relevant to the claims in this lawsuit, GM has been in the business of developing, manufacturing, and marketing cars throughout the State of Missouri.  New GM has a network of authorized retailers that sells New GM vehicles and parts throughout Missouri and the United States.

4.    Complete diversity exists between Plaintiff and Defendant.  Plaintiff is seeking damages in excess of $75,000.00, exclusive of interest and costs.  Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.

5.    Defendant is subject to personal jurisdiction in this U.S. District Court for Western District of Missouri as Defendant systematically and continually conducts

business in this District and conducts business throughout the United States.

6.     Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Western District of

Missouri as it is a judicial district in which Defendant resides for purposes of venue and is

a district in which a substantial part of the events or omissions giving rise to the claim

occurred.

## BACKGROUND FACTS

7.     Brenda Duncan owned a 2007 Chevrolet Impala ("Plaintiff's Vehicle" or

"2007    Chevrolet    Impala")    (Vehicle    Identification    Number    ("VIN"):

2G1WB55K279181591),  which she purchased in 2008.  Brenda Duncan purchased the

2007 Chevrolet Impala because of the vehicle's advertised quality, reliability, and safety

features.

8.     On February 15, 2014, Brenda Duncan was driving the 2007 Chevrolet

Impala on Interstate 435 in Kansas City, Missouri in a reasonable and customary manner.

As Plaintiff was travelling northbound, she suddenly lost the ability to steer or control

Plaintiff's Vehicle.  Plaintiff's Vehicle then left the roadway and struck the side of a bridge.

Upon information and belief, Plaintiff's driver's side frontal airbag did not deploy.

9.     As a result of the loss of control and subsequent collision, and failure of her

airbag to deploy, Plaintiff sustained serious personal injuries and damages.

10.     Unbeknownst to Plaintiff, her 2007 Chevrolet Impala had a serious and

unreasonably dangerous defect with the ignition switch. Specifically, the ignition switch

had the ability to change from the "Run" position to the "Accessory" position while the

vehicle was moving, thereby causing the engine to lose power with a resultant loss of power

to the steering, brakes, air bags, and other essential safety functions of the car.  This defective condition directly resulted in a loss of power exactly at the time and place where Plaintiff most needed these essential functions to avoid this collision and/or lessen the impact of the collision.

11.    The problem with Plaintiff's vehicle was not unique.  Plaintiff's vehicle was one of many vehicles subject to recent recall(s) relating to a large number of GM vehicles' ignition switches.  A recall notice was issued by New GM for certain of its vehicles, including Brenda Duncan's 2007 Chevrolet Impala, approximately four months after her crash, on or about June 16, 2014.  At or about that that time, New GM issued a notice to the National Highway Traffic Safety Administration ("NHTSA"), notifying it of a recall to include 2005-2009 Buick Lacrosses, 2006-2011 Buick Lucernes, 2000-2005 Cadillac Devilles, 2006-2011 Cadillac DTSs, 2006-2014 Chevrolet Impalas, and 2006-2007 Chevrolet Monte Carlos ("Subject Vehicles"), with the number of vehicles affected by the recall being 3,141,731.

12.    As part of the recall made on or about June 16, 2014, New GM admitted that if the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally move the key away from the "Run" position.

13.    As part of the recall made on or about June 16, 2014, New GM further admitted that if this occurred, engine power, power steering, and power braking will be affected, increasing the risk of a crash.

14.    As part of the recall sent on or about June 16, 2014, New GM admitted that the timing of the key movement out of the "Run" position, relative to the activation of the

4

Case 1:14-md-02543-JMF   Document 1432   Filed 09/30/15   Page 5 of 28

sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.

15.    In addition, as early as 2005, GM knew that a key hole design modification that would require a piece price increase of $0.50 per vehicle could prevent certain movements in the ignition switch of certain GM vehicles with the same or similar ignition switches.

16.    GM began installing defective ignition switches beginning as early as 2000 in certain GM vehicle models. Upon information and belief, GM knew the ignition switches were defectively designed, but nonetheless continued to manufacture and sell defective ignition switches with the knowledge that they would be used in GM vehicles, including the Subject Vehicles.

17.    Because of defects in their design, the ignition switches installed in the Subject Vehicles are, by their nature, loose and/or improperly positioned and are susceptible to failure during normal and expected conditions.  The key sold with the 2007 Chevrolet Impala has a slot design which allows the key fob or chain to hang lower on the key and increases the chance of the key inadvertently moving from the "Run" to "Accessory" or "Off" position during ordinary driving maneuvers (the "Ignition Switch Defect"). When this ignition switch failure occurs, the motor engine and certain electrical components such as power-assisted steering and anti-lock brakes are turned off, thereby endangering the vehicle occupants and compromising the safety airbag system.

18.    The Ignition Switch Defect can occur at any time during normal and proper operation of the Subject Vehicles, meaning the ignition can suddenly switch off while it is

Case 1:14-md-02543-JMF Document 1432 Filed 09/30/15 Page 6 of 28

moving at 70 mph on the freeway, leaving the driver unable to control the vehicle, and vulnerable to a nonfunctioning safety airbag system.

19.    The Ignition Switch Defect precludes drivers and owners of the Subject Vehicles, such as Plaintiff Brenda Duncan, from proper and safe use of their vehicles, reduces vehicle occupant protection, and endangers them and other vehicle occupants. However, no driver or owner of the Subject Vehicles, including Plaintiff Brenda Duncan, knew, or could reasonably have discovered, the Ignition Switch Defect, prior to it manifesting in a sudden and dangerous failure.

20.    Upon information and belief, prior to the sale of the Subject Vehicles, GM knew of the Ignition Switch Defect through sources such as pre-release design, manufacturing, and field testing data; in-warranty repair data; early consumer complaints made directly to GM, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI") and/or posted on public online vehicle owner forums; field testing done in response to those complaints; aggregate data from GM dealers; and accident data.  Despite this knowledge, GM failed to disclose and actively concealed the defects in the ignition switch from Plaintiff Brenda Duncan and the public, and continued to market and advertise the Subject Vehicles as reliable and safe vehicles, which they are not.

21.    As a result of GM's misconduct, Plaintiff Brenda Duncan was harmed and suffered actual damages and personal injuries, in that the Subject Vehicles are unsafe, unfit for their ordinary and intended use, and have manifested, or are at unreasonable risk of manifesting, the Ignition Switch Defect by way of a sudden and dangerous failure that puts

them and others at serious risk of injury or death. Drivers and owners of the Subject Vehicles, including Plaintiff Brenda Duncan, did not receive the benefit of their bargain as purchasers and/or lessees, received vehicles that were of a lesser standard, grade, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations. Drivers and owners of the Subject Vehicles, including Plaintiff Brenda Duncan, did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided, as GM knew but did not disclose, through the use of non-defective ignition parts.

## COUNT I: STRICT LIABILITY – MANUFACTURING DEFECT

22.    Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

23.    Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, and component parts thereof, including but not limited to, equipping them with an ignition switch with design, manufacturing, and/or marketing defects, more particularly set forth herein.

24.    Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the 2007 Chevrolet Impala, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its

expected use.

25.     At all times relevant herein, the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, and component parts thereof, including the ignition switch, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

26.     It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the 2007 Chevrolet Impala to Plaintiff, and used in the manner for which they were intended by the Defendant.

27.     At all times relevant herein, the Subject Vehicles were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time they were placed in the stream of commerce in ways which include, but are not limited to, one or more of the following:

(a)     the Subject Vehicles, including their component parts, which includes their ignition switches, contained manufacturing defects;

(b)     the ignition switches in the Subject Vehicles were inadequately manufactured; and/or

(c)     the Subject Vehicles, including their component parts, which includes their ignition switches, were not made in accordance with Defendant's specifications or performance standards.

28.     The manufacturing defects of the Subject Vehicles, including the 2007 Chevrolet Impala, occurred while the product was in the possession and control of the

Defendant.

29.    The manufacturing defects of the Subject Vehicles, including the 2007 Chevrolet Impala, existed before they left the control of Defendant.

30.    It was foreseeable to Defendant that the Subject Vehicles and their component parts, including the ignition switch, which were manufactured, designed, inspected, tested, assembled, equipped, distributed, and/or sold or otherwise placed into the stream of commerce would fail and cause users and consumers like Plaintiff Brenda Duncan to be unable to control said vehicles and be involved in a collision.

31.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries. She has endured, and will continue to endure, substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Her injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count I against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

Case 1:14-md-02543-JMF    Document 1532    Filed 09/30/15    Page 10 of 26

## COUNT II: STRICT LIABILITY - DESIGN DEFECT

32.    Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

33.    Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, and component parts thereof, including but not limited to, equipping them with an ignition switch with design, manufacturing, and/or marketing defects, more particularly set forth herein.

34.    Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the 2007 Chevrolet Impala, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

35.    At all times relevant herein, the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, and component parts thereof, including the ignition switch, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

36.    It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the 2007 Chevrolet Impala to Plaintiff, and used in the manner for which they were intended by the Defendant.

37.    At all times relevant herein, the Subject Vehicles were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time they were placed

Case 1:14-md-02543-JMF    Document 1532    Filed 09/30/15    Page 11 of 20

in the stream of commerce in ways which include, but are not limited to, one or more of the following:

    (a)    having an ignition switch that is inadequately designed and located, which may result in the key moving from the "Run" to "Accessory" or "Off" position during normal driving maneuvers;

    (b)    having an ignition switch that allows the 2007 Chevrolet Impala to stall or lose engine power, and steering and/or full braking ability while driving;

    (c)    having frontal airbags that do not deploy when the key is in the accessory/off position; and

    (d)    failing to adequately warn Plaintiff Brenda Duncan, other consumers, or the public in general, about the unsafe and defective condition and design of the vehicle known to GM, so that individuals like Plaintiff Brenda Duncan could make informed and prudent decisions regarding the purchase and use of such vehicles.

38.    When placed in the stream of commerce, the Subject Vehicles were defective in design, in that they were not reasonably fit, suitable, or safe for their intended purpose and/or their foreseeable risks exceed the benefits associated with their design, making the use of the Subject Vehicles more dangerous than an ordinary consumer would expect, and more dangerous than risks associated with alternatives.

39.    In addition, at the time the Subject Vehicles left the control of the Defendant, there were practical and feasible alternative designs of the Subject Vehicles and their component parts, including the ignition switches that would have prevented and/or

significantly reduced the risk of Plaintiff's injuries without impairing the reasonably anticipated or intended function of the Subject Vehicles. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the Subject Vehicle's utility.

40.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries. She has endured, and will continue to endure, substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Her injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count II against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT III: STRICT LIABILITY - FAILURE TO WARN

41.     Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

42.     Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, and component parts thereof, including but not limited to, equipping them with an ignition switch with design, manufacturing, and/or marketing defects, more particularly set forth herein.

43.     Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the 2007 Chevrolet Impala, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

44.     At all times relevant herein, the Subject Vehicles were expected to reach, and in fact did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

45.     At all times relevant herein, the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala and component parts thereof, including the ignition switch system, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

46.     It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the 2007 Chevrolet Impala to Plaintiff, and used in the manner for which they were intended by the Defendant.

13

47.    At all times relevant herein, the Subject Vehicles, including Plaintiff's 2007 Chevrolet Impala, were defective and unreasonably dangerous when they left the possession of Defendant in that they contained warnings insufficient to alert consumers, including Plaintiff herein, of the dangerous risks associated with the defective condition of the Subject Vehicles, notwithstanding Defendant's knowledge of the dangerous risks, including but not limited to the following:

(a)    having an ignition switch that is inadequately designed, constructed, and/or located, which may result in the key moving from the "Run" to "Accessory" or "Off" position during normal driving maneuvers;

(b)    having an ignition switch that allows the 2007 Chevrolet Impala to stall or lose engine power, and steering and/or full braking ability while driving;

(c)    having frontal airbags that do not deploy when the key is in the accessory/off position; and

(d)    failing to adequately warn Plaintiff Brenda Duncan, other consumers, or the public in general, about the unsafe and defective condition and design of the Subject Vehicles known to GM, so that individuals like Plaintiff Brenda Duncan could make informed and prudent decisions regarding the purchase and use of such vehicles.

48.    Plaintiff could not, by the exercise of reasonable care, have discovered the defects herein mentioned and perceived their danger.

49.    Defendant knew or should have known of the risks of the defective condition of the Subject Vehicles and their component parts.

50.     Additionally, Defendant, as manufacturer, designer, distributor, and/or seller of the Subject Vehicles is held to the level of knowledge of an expert in the field.

51.     Plaintiff reasonably relied upon the skill, superior knowledge and/or judgment of Defendant.

52.     Defendant had a duty to warn Plaintiff and consumers of the dangers associated with the Subject Vehicles and their component parts, including the ignition switch.

53.     Despite Defendant's knowledge of the risks of the defective condition of the Subject Vehicles and their component parts, Defendant failed to adequately warn Plaintiff and consumers of those risks.

54.     Had Plaintiff received adequate warnings regarding the unsafe and defective condition of the Subject Vehicles and their risks, she would not have purchased and/or used such vehicle.

55.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries.  She has endured, and will continue to endure, substantial pain and suffering.  She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Her injuries and damages are permanent and will continue into the future.  Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count III against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT IV: NEGLIGENCE

56.    Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

57.    Defendant was negligent in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the 2007 Chevrolet Impala.

58.    Defendant had a duty to individuals, including Plaintiff, to use reasonable care in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the 2007 Chevrolet Impala.

59.    Defendant was negligent in failing to use reasonable care as described here in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the 2007 Chevrolet Impala.  Defendant breached its aforementioned duty by:

(a)     Failing to design the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants, including Plaintiff, of the Subject Vehicles, including the 2007 Chevrolet Impala;

(b)     Failing to manufacture the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the 2007 Chevrolet Impala, including Plaintiff;

(c)     Failing to use reasonable care in the testing of the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the 2007 Chevrolet Impala, including Plaintiff;

(d)     Failing to use reasonable care in inspecting the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the 2007 Chevrolet Impala, including Plaintiff; and

(e)     Otherwise negligently or carelessly designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the 2007 Chevrolet Impala.

60.     Defendant also negligently failed to warn or instruct Plaintiff and/or others that the ignition switch which was selected and installed in the Subject Vehicles, including the 2007 Chevrolet Impala, had an unsafe and defective condition and design which was known to Defendant.

61.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff

suffered severe and permanent physical injuries. She has endured, and will continue to endure, substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Her injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count IV against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT V: BREACH OF EXPRESS WARRANTY

62.    Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

63.    Defendant made assurances as described herein to the general public that the Subject Vehicles, including the 2007 Chevrolet Impala, were safe and reasonably fit for their intended purposes.

64.    Plaintiff chose to purchase the 2007 Chevrolet Impala described herein based upon Defendant's warranties and representations as described herein regarding the safety and fitness of the 2007 Chevrolet Impala.

65.    Plaintiff reasonably relied upon Defendant's express warranties and

guarantees that the 2007 Chevrolet Impala was safe, merchantable, and reasonably fit for its intended purposes.

66.    Defendant breached these express warranties because the ignition switch in the 2007 Chevrolet Impala was unreasonably dangerous and defective as described herein and not as Defendant had represented.

67.    Defendant's breach of its express warranties resulted in Plaintiff's use of an unreasonably dangerous and defective product, placing said Plaintiff's health and safety in jeopardy.

68.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries. She has endured, and will continue to endure, substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Her injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count V against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT VI: BREACH OF IMPLIED WARRANTY

69.     Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

70.     Defendant impliedly warranted that the Subject Vehicles, including the 2007 Chevrolet Impala, were merchantable and were fit for the ordinary purposes for which they were intended.

71.     When Plaintiff was driving the 2007 Chevrolet Impala, it was being used for the ordinary purpose for which it was intended.

72.     Plaintiff relied upon Defendant's implied warranties of merchantability in purchasing and operating the 2007 Chevrolet Impala.

73.     Defendant breached these implied warranties of merchantability because the 2007 Chevrolet Impala was neither merchantable nor suited for its intended use as warranted.

74.     Defendant's breach of its implied warranties resulted in Plaintiff's use of an unreasonably dangerous and defective product, placing said Plaintiff's health and safety in jeopardy.

75.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries.  She has endured, and will continue to endure, substantial pain and suffering.  She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and

Case 1:14-md-02543-JMF    Document 1532    Filed 09/30/15    Page 21 of 26

economically injured.  Her injuries and damages are permanent and will continue into the future.  Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count VI against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

### COUNT VII: FRAUDULENT MISREPRESENTATION

76.    Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

77.    Defendant falsely and fraudulently represented to consumers, and to Plaintiff, that the Subject Vehicles were safe and fit for their intended purposes and use.

78.    The representations made by Defendant were, in fact, false.

79.    When said representations were made by Defendant, it knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

80.    These representations were made by Defendant with the intent of defrauding and deceiving Plaintiff and the public in general, and were made with the intent of inducing the public in general to purchase the Subject Vehicles, which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff and the general public.

81.    At the time the aforesaid representations were made by Defendant and, at the

time Plaintiff purchased the 2007 Chevrolet Impala, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

82.    In reliance upon said representations, Plaintiff was induced to and did purchase and use the 2007 Chevrolet Impala.

83.    Defendant knew and was aware or should have been aware that the Subject Vehicles, including the 2007 Chevrolet Impala, were defective in nature in that they had the Ignition Switch Defect and/or that it lacked adequate and/or sufficient warnings.

84.    Defendant knew or should have known that the Subject Vehicles had the potential to, could, and would cause severe and grievous injury to the users of said products, and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

85.    Defendant brought the Subject Vehicles to the market, and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff.

86.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries.  She has endured, and will continue to endure, substantial pain and suffering.  She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Her injuries and damages are permanent and will continue into the future.  Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count VII against Defendant for

damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

### COUNT VIII: FRAUDULENT CONCEALMENT

87.     Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

88.     At all times during the course of dealing between Defendant and Plaintiff and the general public, Defendant misrepresented the safety of the Subject Vehicles, including the 2007 Chevrolet Impala, for their intended use.

89.     Defendant knew or was reckless in not knowing that its representations were, in fact, false.

90.     In representations to Plaintiff and the general public, Defendant fraudulently concealed and intentionally omitted material information, including but not limited to, the fact that:

(a)     the Subject Vehicles were manufactured and/or designed negligently, defectively, and/or improperly in that the ignition switches installed in the Subject Vehicles are, by their nature, loose and/or improperly positioned and are susceptible to failure during normal and expected conditions;

(b)     the keys sold with the Subject Vehicles have a slot design which allows the key fob or chain to hang lower on the key and increases the chance of the key inadvertently moving from the "Run" to "Accessory" or "Off" position

during ordinary driving maneuvers (the "Ignition Switch Defect"); and

(c)     when this ignition switch failure occurs, the motor engine and certain
electrical components such as power-assisted steering and anti-lock brakes
are turned off, thereby endangering the vehicle occupants and compromising
the safety airbag system.

91.     Defendant was under a duty to disclose to Plaintiff and consumers the
defective nature of the Subject Vehicles, including, but not limited to, the Ignition Switch
Defect.

92.     Defendant had sole access to material facts concerning the defective nature
of the Subject Vehicles and its propensity to cause serious and dangerous side effects, and
hence cause damage to persons who used the Subject Vehicles, including Plaintiff in
particular.

93.     Defendant's concealment and omissions of material facts concerning, inter
alia, the safety of the Subject Vehicles was made purposefully, willfully, wantonly, and/or
recklessly, to mislead Plaintiff and consumers into reliance on the use of the Subject
Vehicles, and to cause them to purchase and/or use the product.

94.     Defendant knew that consumers, including Plaintiff, had no way to determine
the truth behind Defendant's concealment and omissions, as set forth herein.

95.     Plaintiff reasonably relied on facts revealed which negligently, fraudulently,
and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

96.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff
suffered severe and permanent physical injuries.  She has endured, and will continue to

endure, substantial pain and suffering.  She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Her injuries and damages are permanent and will continue into the future.  Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count VIII against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT IX: NEGLIGENT MISREPRESENTATION

97.    Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

98.    Defendant had a duty to represent and did represent to consumers, and to Plaintiff, that the Subject Vehicles, including the 2007 Chevrolet Impala, were safe for their intended use.

99.    The representations made by Defendant were, in fact, false.

100.    Defendant failed to exercise ordinary care in the representation of the Subject Vehicles, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said products into interstate commerce in that Defendant negligently misrepresented the Subject Vehicles were safe for their intended use.

101.   Defendant breached its duty in misrepresenting the safety of the Subject Vehicles for their intended use to consumers and to the Plaintiff.

102.   As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries.  She has endured, and will continue to endure, substantial pain and suffering.  She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Her injuries and damages are permanent and will continue into the future.  Plaintiff seeks actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiff prays for judgment in Count IX against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT X: PUNITIVE DAMAGES

103.   Plaintiff hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

104.   Defendant sold the Subject Vehicles, including the 2007 Chevrolet Impala, to consumers without doing adequate testing to ensure that the Subject Vehicles were reasonably safe for their use and intended purposes.

105.   Defendant sold the 2007 Chevrolet Impala in spite of its knowledge that the

ignition switches can unexpectedly and suddenly move from the "On" or "Run" position while the vehicle is in operation to the "Off" or "Accessory" position, thereby causing severe and debilitating injuries suffered by Plaintiff and numerous other individuals.

106. Defendant ignored reports of consumers, which began as early as 2004, regarding the ignition switch of certain GM vehicles with the same or similar ignition switches throughout the United States and elsewhere of the products' failures to perform as intended, which led to the severe and debilitating injuries suffered by Plaintiff and numerous other individuals.

107. Defendant knew of the Subject Vehicles' defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell the products so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff.

108. Defendant, through its conduct in designing, testing, manufacturing, assembling, marketing, selling, and failing to adequately repair the 2007 Chevrolet Impala purchased by Plaintiff, demonstrated wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifferent to consequences, thereby justifying an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests that in addition to actual damages, she be awarded an additional amount as and for punitive damages in her favor and against Defendant, and each of them, in an amount which will serve to punish Defendant and deter Defendant and others from like conduct in the future.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: September 30, 2015

Respectfully submitted,

**THE POTTS LAW FIRM, LLP**

By: */s/ Eric G. Jensen*  _____
      Eric G. Jensen     MO# 43094
      Derek H. Potts     NY #44882
      The Potts Law Firm, LLP
      1901 W. 47th Place, Suite 210
      Westwood, KS 66205
      (816) 931-2230 (telephone)
      (816) 817-0478 (facsimile)

**ATTORNEYS FOR PLAINTIFFS**