

October 9, 2015

**VIA E-MAIL AND ECF**

The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

      **RE:**    **In re Motors Liquidation Company,** *et al.*
               **Case No. 09-50026 (REG)**

              **Response to New GM's Marked MDL Complaint and
              Explanatory Letter**

Dear Judge Gerber:

      The Ignition Switch and Non-Ignition Switch Plaintiffs (**"Plaintiffs"**) submit this letter in response to New GM's marked Second Amended Consolidated Complaint (**"SACC"**) and Explanatory Letter regarding same. Dkt. No. 13469. New GM's arguments fail because *all* of the claims in the SACC arise solely from New GM's independent, actionable conduct.

      As an initial matter, this Court has already rejected New GM's primary argument in its attempt to shield itself from liability for its own misconduct. Dkt. No. 13313 (7/22/2015), at 6, n.16 (noting knowledge of New GM personnel acquired while at Old GM "fair game" in the MDL and that New GM cannot knowingly install defective car parts regardless of when manufactured; clarifying that the mere mention of Old GM does not serve to defeat viable claims against New GM).

      Yet despite this Court's statements and the recent Deferred Prosecution Agreement in which New GM admitted to key facts showing its own culpability for keeping unsafe cars on the road,[1] New GM seeks to strike all portions of the SACC that (a) mention Old GM, (b) involve any Old GM car parts (or could be read to possibly

---

[1] *See* Ex. 1 to Dkt. No. 13452, at 52 (New GM's admission that "[b]y approximately the spring of 2012, certain GM personnel knew that the Defective Switch could cause frontal airbag non-deployment in at least some model years of the Cobalt, and were aware of several fatal incidents and serious injuries that occurred as a result of accidents in which the Defective Switch may have caused or contributed to airbag non-deployment. This knowledge extended well above the ranks of investigating engineers to certain supervisors and attorneys at the company—including GM's Safety Director and the GM Safety Attorney. Yet, GM overshot the five-day regulatory reporting requirement for safety defects by approximately 20 months. And throughout this 20-month period, GM failed to correct its 2005 statement that the Defective Switch posed no 'safety' problem.")

involve an Old GM car part), (c) discuss how certain New GM personnel acquired knowledge first at Old GM, and then retained it at New GM, and (d) describe New GM's *own* misrepresentations about safety and assertions of trustworthiness.

So extreme is New GM's over-reaching that it seeks to strike language about *New GM's* advertisements and other representations to stakeholders in the *New GM* era made to *New GM* prospective customers and others about *New GM-manufactured cars* if, in counsel's view, such advertisements invoke the specter of Old GM's problems via suggestive advertising. *See, e.g.*, SACC ¶ 174 (New GM's representation that its *new* products will "improve safety"); SACC ¶ 190 (language in the *2013* Annual Report – *four years after the Sale Order*– that "[n]othing is more important than the safety of our customers"); SACC ¶ 585 (core allegation that "[f]rom its inception in 2009, New GM knew about an ever-growing list of serious safety defects in millions of GM-branded vehicles, but concealed them from consumers and regulators in order to cut costs, boost sales, and avoid the publicity of recalls").

New GM's attempt to strike examples of recent New GM representations, while a small part of the total markings, reveals New GM's objective to weaken the case against it from a consumer law perspective on the *merits*. This (and other markings directed at pure New GM-era events) have nothing to do with the bankruptcy or Sale Order, and everything to do with the specificity and falsity of New GM's representations about its own cars and its active choice, continually re-ratified day after day, to hide known defects in cars on the road and/or purchased in the New GM era.

Relatedly, the parties have a fundamental disagreement, to be determined in the MDL action but having nothing to do with the Sale Order, as to what New GM's obligations were to the driving public *in the period between late 2009 and early 2014 relating to cars known to be defective*.[2]

Of course, not all of New GM's markings are so clearly limited to New GM; most of New GM's markings include references to Old GM. While the SACC contains detailed allegations about the extent and bases of the knowledge of the Old GM personnel who went from being Old GM to New GM employees and of the access to information New GM had (allegations that comprise the vast majority of the markings in the factual sections, s*ee, e.g.,* SACC IV(C)(1) ("New GM was aware of the defective ignition switch problem from the date of its inception") (¶¶ 235-241 and 246-251); IV(C)(2)(a) ("New GM was long aware of the defect") (¶¶ 251-304)), this is unremarkable and does not run

---

[2] For example, suppose that another car company (ABC) sold a fleet of cars to New GM, told New GM the cars had deadly defects, and also told New GM the cars it had sold to New GM for New GM to then sell to the public were identical to other defective cars ABC had recently sold to the public and that were still on the road. Then suppose ABC went out of business, with all principals disappearing (or coming to work for New GM). No one could dispute New GM's liability for knowingly selling the defective ABC manufactured cars. There might be a dispute as to New GM's liability for failing to disclose what it knew about the defective ABC cars it had not sold but that it knew were defective and on the road (in the interests of protecting its new ABC brand), but that dispute would involve questions of intentional tort law or statutory fraud to be resolved by the court considering the claim on the merits.

The Honorable Robert E. Gerber
October 9, 2015
Page 3

afoul of the Sale Order.[3]  These are relevant facts to demonstrate that there is simply no way for relevant, high-level New GM employees to disavow knowledge of the defects.

And, contrary to New GM's suggestion that Plaintiffs are hanging their hat on Old GM-related facts, the discussion of problems at Old GM known to people at New GM is surrounded in the SACC by *equally (if not more) fulsome and lengthy discussions of ongoing knowledge corroborated and gained in the New GM era, sections that even New GM did not challenge*. In fact, aside from New GM's improper flag of every mention of "GM-branded vehicles," Plaintiffs submit that the Court may wish to peruse ¶¶ 171-982, if only to appreciate by what degree the unmarked paragraphs outnumber the marked ones. The point is not that New GM was cautious (to the contrary, as shown above, it was over-reaching), but that this is clearly a case arising from New GM's independent conduct. New GM's implicit concession as to most of the factual allegations shows that this is not a case of Plaintiffs attempting to paint New GM with Old GM conduct.

In essence, New GM's grievance is that the SACC is detailed and long; not that it runs afoul of the Sale Order (particularly not in *factual allegations*, which are in no way proscribed by the Sale Order).[4]  New GM has not shown that any discussion of Old GM in the SACC *substitutes for*, rather than simply contextualizes, claims for relief against New GM.

Against this backdrop, Plaintiffs address New GM's categories:

### 1.  **Response to Blue Coding.**

New GM directs its "blue coded" markings to (a) plaintiffs who purchased cars in the Old GM era who still owned those cars after New GM came into existence (including class allegations that include these individuals as class members[5] or any pre-Sale cars), (b) elements of claims for relief that cover pre-Sale cars (*e.g.*, all references to cars purchased pre-Sale that are still on the road post-Sale), and (c) the negligent failure to recall claim under California law, only insofar as such claim is brought on behalf of the Pre-Sale Ignition Switch Defect Subclass (SACC ¶ 1546).

With respect to (a) (and by extension (b)), the fact that the claims involve Old GM parts/cars does not make the *claims* about Old GM's *conduct*. These are all cars that

---

[3] New GM criticizes Plaintiffs for using the introductory language in many paragraphs that "New GM knew that…" but this criticism makes no sense; that a particular paragraph says "New GM" fewer times than "Old GM" means nothing because the crucial point is what *New GM* knew.

[4] Plaintiffs incorporate the discussion in the *Response to New GM Marked State Complaints, and Explanatory Letter*, also filed today, that explains how the Sale Order only proscribed *claims*, not *facts*.

[5] New GM is internally inconsistent in its treatment of the class allegations. Putting aside the core dispute over the Pre-Sale Ignition Switch Subclasses (SACC ¶¶ 998, 1003), New GM rightly acknowledges that the Nationwide RICO Class is appropriate (SACC ¶ 992). But New GM challenges the similarly-structured Nationwide Dealer Class (SACC ¶ 995), the Statewide Classes (SACC ¶ 1000), and even the Post-Sale Ignition Switch Subclasses that exclusively involve New GM cars (SACC ¶¶ 996, 1001).  It may be that New GM intended to mark even the RICO Class; in any event, the fact that New GM's argument as to the Pre-Sale Classes is wrong disposes of New GM's entire challenge to the class allegations.

The Honorable Robert E. Gerber
October 9, 2015
Page 4

were on the road in the post-Sale era that New GM knew were defective and yet failed to do anything about, whether the source of that obligation to disclosure was under tort, equity, or statute (and Plaintiffs allege all).

New GM's particular treatment of (c) (negligent failure to recall) as a separate category from other claims involving cars made by Old GM is based on New GM's misleading and incorrect argument that this claim is premised on the Safety Act. In fact, the claim is brought under California common law, and does not depend on (or cite) the Safety Act. *See California Civil Jury Instructions*, 1-1200 CACI 1223 (2014) (citing cases under negligent failure to recall).

### 2. Response to Yellow Coding.

The yellow coded allegations, according to New GM, involve factual allegations involving Old GM, as well as references to "GM-branded" cars. The first category was addressed in the introductory section: to repeat, New GM's extreme argument that the mention of Old GM is a proxy for an improper claim completely fails not only because the allegations are directed at facts not claims, but more fundamentally because the facts are relevant (and are carefully detailed) to show New GM's knowledge and to contextualize the perfidy and unlawfulness of its conduct.

With respect to the "GM-branded" references, to the extent this includes pre-Sale cars, such references do not mean the claims are based on the conduct of Old GM. The relevant conduct associated with references to the "GM brand" to the extent this includes pre-Sale cars is that New GM concealed its knowledge of the defects and misrepresented itself as committed to safety.

### 3. Response to Pink Coding.

New GM misleadingly argues that Plaintiffs' claims for Fraud by Concealment of the Right to File a Claim Against Old GM in Bankruptcy (*see, e.g.*, SACC ¶¶ 1642-1663) is a claim against Old GM. Not so. This claim is expressly limited in time to the four-month period *after* New GM came into existence, but *before* the Bar Date for claims, and only involves car owners in that period. This is the logical (and fair) result of at least two of this Court's rulings: (a) the holding that "[a]s of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required . . . to send out mailed recall notices to owners of affected Old GM vehicles" (*In re Motors Liquidation Co.*, 529 B.R. 510, 524 (Bankr. S.D.N.Y. 2015)), and (b) the holding that 24 New GM personnel who had been at Old GM had knowledge of the defect. Like all of the claims in the SACC, this claim targets New GM's conduct—in this case, concealing the known Ignition Switch Defect from the owners of vehicles with the defect.

### 4. Response to Orange Coding.

Finally, New GM has moved to strike Third-Party Beneficiary Claims (*see, e.g.*, SACC ¶¶ 1664-1673), arguing that the Sale Order disclaims third party beneficiary status and that no private right of action attaches to Safety Act claims. Yet whether or not they are part of a third-party beneficiary claim for breaching a covenant to comply with the Safety Act, New GM's ongoing, acknowledged violations of its express obligations under the Safety Act are relevant to and/or are predicates for various claims in the case. The violations are appropriate predicates for consumer protection claims that are based on New GM's unlawful conduct towards the Pre-Sale Subclasses. Indeed, even the case that New GM has relied on in making its Safety Act arguments confirms that "the lack of a

010440-11 820504 V1

private right of action under the Safety Act does not preclude [the plaintiffs from] acting under a state law cause of action." A*yres v. General Motors Corp.*, 234 F.3d 514, 524, n.19 (11th Cir. 2000). Here, the same conduct that gives rise to the Safety Act violations also and independently gives rise to common-law concealment claims, and to third party beneficiary claims. Plaintiffs do not assert a private cause of action under the Safety Act.

For the reasons set forth above, and in prior submissions,[6] New GM's attempt to shield itself from its own independent misconduct and to selectively excise appropriate pleadings in the SACC should be rejected. Each and every one of Plaintiffs' claims in the SACC is properly asserted against New GM only based solely on New GM's own actions and failures to act.

Respectfully submitted,

 /s/ Steve W. Berman
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101

*Co-Lead Counsel in the MDL Proceeding for the Ignition Switch and Non-Ignition Switch Plaintiffs*

 /s/ Edward S. Weisfelner
Edward S. Weisfelner
BROWN RUDNICK LLP
7 Times Square
New York, New York 10036

*Designated Counsel for the Ignition Switch and Non-Ignition Switch Plaintiffs*

 /s/ Elizabeth J. Cabraser
Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111

*Co-Lead Counsel in the MDL Proceeding for the Ignition Switch and Non-Ignition Switch Plaintiffs*

 /s/ Sander L. Esserman
Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.
2323 Bryan Street, Suite 2200
Dallas, Texas 75201

*Designated Counsel for the Ignition Switch and Non-Ignition Switch Plaintiffs*

cc:    Arthur Steinberg
       Scott Davidson
       Richard C. Godfrey
       Andrew B. Bloomer
       Robert Hilliard
       Jonathan Flaxer

---

[6] *See, e.g., Opening Brief on Imputation Issue on Behalf of the Ignition Switch Plaintiffs, the Non-Ignition Switch Plaintiffs, the State of Arizona, the People of the State of California, the Post-Closing Ignition Switch Accident Plaintiffs, and the Adams Plaintiffs* (September 18, 2015) (Dkt. No. 13452) and reply on same issue (September 30, 2015) (Dkt. No. 13483). *See also Ignition Switch Plaintiffs' No-Strike Pleading with Regard to the Second Amended Consolidated Complaint, and the Non-Ignition Switch Plaintiffs' (1) Objection Pleading with Regard to the Second Amended Consolidated Complaint, and (2) GUC Trust Asset Pleading* (June 24, 2015) (Dkt. No. 13247).

    Matt Williams
    Lisa Rubin
    Daniel Golden
    Deborah Newman
    William P. Weintraub
    Greg Fox

## CERTIFICATE OF SERVICE

  I hereby certify that on October 9, 2015, I caused the foregoing to be filed and served upon all parties receiving notice via the Court's ECF system.

Dated:  October 9, 2015      */s/ Steve W. Berman*
               Steve W. Berman (*pro hac vice*)
               HAGENS BERMAN SOBOL SHAPIRO LLP
               1918 Eighth Avenue, Suite 3300
               Seattle, Washington  98101
               Tel.:  206-623-7292
               steve@hbsslaw.com