# EXHIBIT G

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| KAISER ALUMINUM CORPORATION, | : | Case No. 02-10429 (JKF) |
| a Delaware Corporation, et al., | : | |
| | : | Hearing Date: January 10, 2006 at |
| | : | 9:00 a.m. |
| Debtors. | : | Response Deadline: January 9, 2006 at |
| | : | 10:00 a.m. |

### NOTICE OF MOTION

TO THE PARTIES ON THE ATTACHED SERVICE LIST:

PLEASE TAKE NOTICE that on January 3, 2006, Law Debenture Trust

Company of New York has filed the attached Motion for Continuation of Stay Pending

Appeal (The "Motion).

You are required to file a response to the attached Motion on or before

**JANUARY 9, 2006 AT 10:00 A.M.**[1]

At the same time, you must also serve a copy of the response upon movant's
attorney:

Francis A. Monaco, Jr., Esquire
Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 656-8162

Evan D. Flaschen, Esq.
Gregory W. Nye, Esq.
Bingham McCutchen, LLP
One State Street
Hartford, CT 06103
Telephone: (860) 240-2700

---

[1] The hearing date was set by the Court's "Order Confirming (I) The Third Amended Joint Plan of
Liquidation for Kaiser Alumina Australia Corporation and Kaiser Finance Corporation and (II) The Third
Amended Joint Plan of Liquidation for Alpart Jamaica Inc and Kaiser Jamaica Corporation, " at Section 5,
docketed December 20, 2005 [D.I. 7983]. The response deadline corresponds with the response deadline
ordered by the Court for Law Debenture Trust Company of New York's "Motion for Reconsideration,"
also scheduled by the Court for hearing on January 10, 2006.

Docket No. 8049 / Filed: 1/3/06

HEARING ON THE MOTION WILL BE HELD ON **JANUARY 10, 2006 AT 9:00 A.M.**

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OF HEARING.

**MONZACK AND MONACO, P.A.**

Francis A. Monaco, Jr. (#2078)
1201 North Orange Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 656-8162
Telecopy: (302) 656-2769

and

Evan D. Flaschen (ct10660)
Gregory W. Nye (ct 06028)
Bingham McCutchen LLP
One State Street
Hartford, CT 06103-3178

Attorneys for Law Debenture Trust Company of New York

DATED: January 3, 2006

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| KAISER ALUMINUM CORPORATION, et al., | : | Case No. 02-10429 (JKF) |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | Hearing Date: January 10, 2006 |
| | : | Objections Due: January 9, 2006 at 10:00 |
| | : | a.m. |
| | : | |
| | : | Related to D.I. 8008 and 8009 |

## MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK
## FOR CONTINUATION OF STAY PENDING APPEAL

Law Debenture Trust Company of New York ("**LDTC**") the Indenture Trustee[1] under an Indenture

dated as of February 1, 1993 (the "**1993 Indenture**"), by and through its undersigned counsel, hereby moves

this Court pursuant to Rules 7062(d) and 8011 of the Federal Rules of Bankruptcy Procedure, for the entry of

an order continuing the stay (the "**Stay**"[2]) of this Court's Order Overruling Objections to Plan Confirmation

(the "**Guaranty Decision**"[3]). LDTC is appealing the Guaranty Decision (the "**Appeal**") and seeks

continuation of the Stay pending completion of that Appeal.

The Guaranty Decision determines the plan treatment of Class 3A and Class 3B under two separate

plans of liquidation for certain subsidiaries of Kaiser Aluminum & Chemical Corporation (the "**Company**"),

---

[1] LDTC is the successor indenture trustee to State Street Bank and Trust Company which was, in turn, the successor to First National Bank of Boston.

[2] The Stay was entered as part of the Confirmation Order (defined above) until the conclusion of a hearing on January 10, 2006, to consider, among other things, whether to continue the Stay during the pendency of an appeal of Guaranty Decision by LDTC.

[3] The Guaranty Decision includes the "Order Overruling Objections to Plan Confirmation by Law Debenture Trust Company of New York and by Liverpool Limited Partnership" [D.I. 8009] and the Memorandum of Decision referenced therein, both dated December 22, 2005 [D.I. 8008]. A copy of the Order and Memorandum of Decision are attached hereto as Exhibits A and B respectively.

both of which plans (the "**Subsidiary Plans**"[4]) were confirmed by this Court's Order dated December 20, 2005 (the "**Confirmation Order**").[5]  The Guaranty Decision includes, among other rulings, rulings on LDTC's Objection to subordination of the 1993 Note Guarantees (the "**Subordination Objection**") and LDTC's Objection to subordination of its fees and expenses (the "**Fee Objection**").[6]  LDTC is filing, simultaneously with this Motion, a Motion To Reconsider that portion of the Guaranty Decision that overrules the Fee Objection.

In further support of this Motion, LDTC respectfully represents as follows:

## BACKGROUND

Pursuant to the 1993 Indenture, the Company issued certain notes (the "**1993 Notes**") and various subsidiaries of the Company (the "**Subsidiary Guarantors**" or the "**Debtors**") guaranteed the obligations of the 1993 Notes (the "**1993 Note Guarantees**").  The Company and the Subsidiary Guarantors filed Chapter 11 cases in this Court on February 12, 2002, or January 14, 2003 (as the case may be).  On February 25, 2005, the Debtors filed the Subsidiary Plans.

The Subsidiary Plans, among other things, provide for the distribution of liquidated assets to the Indenture Trustees for (a) holders of 9-7/8% Notes issued in 1994 by the Company (the "**1994 Notes**") and

---

[4]  The Subsidiary Plans are captioned (a) "The Third Amended Joint Plan of Liquidation for Kaiser Alumina Australia Corporation and Kaiser Finance Corporation" [D.I. 6265]; and (b) "The Third Amended Joint Plan of Liquidation for Alpart Jamaica Inc. and Kaiser Jamaica Corporation." [D.I. 6261].

[5]  The Confirmation Order is captioned "Order Confirming (I) The Third Amended Joint Plan of Liquidation for Kaiser Alumina Australia Corporation and Kaiser Finance Corporation and (II) The Third Amended Joint Plan of Liquidation for Alpart Jamaica Inc. and Kaiser Jamaica Corporation. [D.I. 7983].

[6]  The Subordination Objections is captioned "Objection of Law Debenture Trust Company of New York to Subordination of 1993 Note Guarantees Pursuant to (A) the Third Amended Joint Plan of Liquidation for Alpart Jamaica, Inc. and Kaiser Jamaica Corporation dated February 25, 2005, and (B) the Third Amended Joint Plan of Liquidation for Kaiser Alumina Australia Corporation and Kaiser Finance Corporation, dated February 25, 2005" [D.I. 6504].  The Fee Objection is captioned "Objection of Law Debenture Trust Company of New York to (I) Subordination of Indenture Trustee Fees and Expenses under (A) the Third Amended Joint Plan of Liquidation for Alpart Jamaica, Inc. and Kaiser Jamaica Corporation dated February 25, 2005, and (B) the Third Amended Joint Plan of Liquidation for Kaiser Alumina Australia Corporation and Kaiser Finance Corporation, and to (II) Proposed Settlement of 7 ¾% SWD Revenue Bond Dispute" [D.I. 6505].

guaranteed by the Subsidiary Guarantors (the "**1994 Note Guarantees**"); and (b) holders of two series of 10-7/8% Notes issued in 1996 by the Company (the "**1996 Notes**") and guaranteed by the Subsidiary Guarantors in 1996 (the "**1996 Note Guarantees**"). The Subsidiary Plans provided that no distributions would be made to LDTC in its capacity as trustee for the holders of the 1993 Note Guarantees.

As permitted by this Court, on March 15, 2005, the Debtors, the 1994/96 Indenture Trustees, an ad hoc group of 1994/96 Noteholders, the Official Committee of Unsecured Creditors, as well as the trustee and holders of certain "Gramercy Bonds" issued by the Company,[7] (collectively, the "**1994/96 Parties**"), all filed Briefs in support of the Subsidiary Plans' treatment of LDTC's claims under the 1993 Note Guarantees as fully subordinated to the claims of the holders of the 1994/96 Note Guarantees.

On April 5, 2005, LDTC filed Objections to the Subsidiary Plans (the Subordination Objection and the Fee Objection, collectively, the "**LDTC Objections**"). The LDTC Objections asserted that, pursuant to the plain language of the 1993 Indenture, the 1993 Note Guarantees were not subordinated to the 1994/96 Note Guarantees, that distributions available to holders of Subsidiary Guarantees therefore ought to be shared equally (or "*pari-passu*") by **all** holders of Subsidiary Guarantees; and in any event, the fees and expenses incurred by LDTC were not subordinated to payment in full to the holders of the 1994/96 Note Guarantees.

Following plan confirmation hearings and various modifications to the Subsidiary Plans, on December 20, 2005, this Court issued its Confirmation Order. Pursuant to Section 3 of the Confirmation Order, all objections by LDTC (including the Subordination Objection and the Fee Objection) were to be ruled upon in the separate Guaranty Decision. Each of the confirmed Subsidiary Plans, as modified, provides [in Section 2.4c)(ii)(B)] that the Disputed Funds should be held by the "Distribution Trustee" (established pursuant to the Subsidiary Plans) in an "Unsecured Claims Trust Account," pending entry of the Guaranty Decision. Pursuant to the Subsidiary Plans, Article VIII, the Distribution Trustee is required to preserve,

---

[7] The "Gramercy" Trustee and Bondholders apparently sought to protect a settlement with the Company whereby they would be paid monies from the recoveries obtained by the holders of the 1994/96 Note guarantees. This settlement put to rest litigation whereby the Gramercy bondholders claimed entitlement to assets of the Subsidiary Guarantors, notwithstanding the fact that they held no guarantees or other debt instruments issued by the Subsidiary Guarantors. Although LDTC objected, in part, to the foregoing settlement, such objection is not the subject of LDTC's Appeal.

manage and invest the "Distribution Trust Assets," including the Disputed Funds, and provide reports of its activities.

Pursuant to Section 5 of the Confirmation Order, this Court entered the Stay through January 10, 2006, provided a motion to continue the stay pending appeal was filed within 10 days of the docketing of the Guaranty Decision. Accordingly, the Disputed Funds are currently set aside, fully protected and earning interest.

Following the entry of the Confirmation Order, on December 22, 2005, the Guaranty Decision was entered on the Court's docket. The Guaranty Decision finds that the 1993 Indenture "unambiguously" subordinated the 1993 Note Guarantees to the 1994/96 Note Guarantees. This determination of "seniority status" for the holders of the 1994/96 Note Guarantees was based upon (a) construction of a public Indenture, drafted by the Company, in such a way as to take an expansive view of the subordination of the 1993 Guarantees; and (b) consideration of extrinsic evidence to "confirm" the construed intent of the public indenture. Both of these bases for the Guaranty Decision are matters of first impression as applied to non-boilerplate provisions of a public indenture, which presents circumstances very different from typical bilateral contracts.[8]

LDTC is not appealing from the Confirmation Order, and substantially all distributions of undisputed monies have already occurred, including, but not limited to, distributions of over $200 million to 1994/96 Indenture Trustees. All other aspects of the Confirmation Order, including implementation of various settlements, can, and will, proceed under the Confirmation Order, notwithstanding LDTC's Appeal. This Court has previously indicated that a stay, under such circumstances, would be appropriate. (*See* Tr. of Hr'g before Hon. Judith K. Fitzgerald, Feb. 23, 2005, at 36-37, 42.) [D.I. 6305][9]

---

[8] The Court, in its Memorandum of Decision [D.I. 8008 at pages 16-17], cites eleven cases (including parenthetical cites) to support its conclusion that, under New York law, it is appropriate to consider extrinsic evidence to "confirm" the construed intent of a public indenture. None of those cases, however, involve construction of a public indenture. All of the cited cased involve typical bilateral contracts.

[9] When the issue of distribution of the funds at issue prior to a determination on appeal was raised, this Court commented: "Well, I think the issue, though – with respect to the sub-debt – is only part of the plan. . . . And it seems to me that plan proponents, if they choose to waive the final order requirements, so

4

## RELIEF REQUESTED

1.      LDTC respectfully requests that the Court enter an Order that (a) the Stay shall be continued pending LDTC's Appeal; and (b) the Disputed Funds shall continue to be held by the Distribution Trustee pending resolution of the Appeal and further order of this Court.

## BASIS FOR RELIEF

2.      This Court has jurisdiction over LDTC's Motion for Continuation of Stay Pending Appeal pursuant to Rules 7062(d)[10] and 8005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      The facts of the current case weigh in favor of a stay pending the Appeal.  Absent continuation of the Stay, the Distribution Trustee will distribute the Disputed Funds to the Indenture Trustees (the "**1994/96 Indenture Trustees**") for the 1994 Notes and 1996 Notes.  If the Disputed Funds stay with the 1994/96 Indenture Trustees in interest-bearing accounts, then the Disputed Funds will be easily recoverable by LDTC in the event of a reversal on appeal.  However, the 1994/96 Indenture Trustees have not provided any assurances that they will retain possession of the Disputed Funds.  If, instead, the 1994/96 Indenture

---

that the plan can 'go effective' – even though they can't make the distribution on the sub-debt, because that issue is still subject to appeal – is not improper. . . . I think the appropriate way to address that is to request a stay, pending appeal, with respect to the sub-debt issue; not to say that the whole plan either can or can't go effective, depending on the way the debtor chooses to do it." (Tr. of Hr'g before Hon. Judith K. Fitzgerald, Feb. 23, 2005, at 36-37.)  At the same hearing, the following exchange also took place:

> Mr. Shaffer:  . . . [M]y concern, Your Honor, is there is a materially higher risk for my client [The Liverpool Limited Partnership] and for the Law Debenture client, that we will be facing delays in getting our distributions if we win, because the debtor has the ability to impose the final order requirement.

> The Court:  Yes.  But it has that ability, by asking to have the distribution stayed, pending their appeal, anyway.  And as I said already, I'd probably grant that, regardless of who's going to ask it – under these circumstances that we're talking about now, without having heard the evidence – because it affects who gets the distributions.  And I'm not going to have the people get a distribution, that then, the debtor has to go back and recover – without knowing who those entities are – until some Court decides that I've done it right or not.

*Id.* at 42.

[10]    Pursuant to Fed.R.Bankr. P. 9014, the Court has discretion to apply Fed.R.Bankr.P. 7062(d) to contested matters.  *See* Fed.R.Bankr. P. 9014 Advisory Committee's Note.

Trustees make further distributions of the Disputed Funds to the holders of the 1994 Notes and 1996 Notes, many of whom are retail customers and other varied and widespread parties, then it may be more difficult to recover the monies in the event of a reversal on appeal. LDTC will seek recovery directly from the 1994/96 Indenture Trustees as the parties who received the Disputed Funds from the Debtors' estates, but the 1994/96 Indenture Trustees may seek to assert that LDTC must pursue its recoveries directly against the persons to whom the 1994/96 Indenture Trustees made further distributions. If the 1994/96 Indenture Trustees are successful in this assertion, then it will be virtually impossible for LDTC to obtain a full recovery should this Court's Guaranty Decision be reversed on appeal. On the other hand, should this Court continue the Stay pending resolution of the Appeal, all parties will be protected by maintaining the Disputed Funds with the Distribution Trustee in the existing interest-bearing account.

4.    As set forth more fully in the accompanying Memorandum of Law, a continued Stay pending the Appeal ought to issue without bond under Bankruptcy Rule 7062(d) because the Disputed Funds are not at risk and will continue to be held in an interest-bearing account, fully protecting all parties in interest.

5.    Alternatively, as set forth more fully in the accompanying Memorandum of Law, a continued Stay pending the Appeal ought to issue without bond under Bankruptcy Rule 8005, because (a) the Guaranty Decision presents a matter of first impression and LDTC has shown sufficient likelihood of success on the Appeal; (b) LDTC will be irreparably harmed upon distributions of the Disputed Funds to various and unknown parties; (c) the continuation of the Stay pending the Appeal would not harm the 1994/96 Parties; and (c) the continuation of the Stay pending the Appeal would serve the public interest.

WHEREFORE, LDTC respectfully requests that this Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: January 3, 2006

LAW DEBENTURE TRUST COMPANY OF
NEW YORK

Francis A. Monaco, Jr. (#2078)
Joseph J. Bodnar (#2512)
MONZACK AND MONACO, P.A.
P.O. Box 2031
1201 North Orange Street, Suite 400
Wilmington, DE 19899-2031
Tel.    (302) 656-8162

and

Evan D. Flaschen (ct10660)
Gregory W. Nye (ct06028)
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT  06103-3178

# EXHIBIT "A"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

IN RE:

Kaiser Aluminum Corporation, *et al.*          Bankruptcy No. 02-10429-JKF

      Debtor(s)          Chapter 11

                                **Related to Dkt. Nos. 6261, 6265, 6504, 6505, 6508, 6520, 6546.**

## ORDER OVERRULING OBJECTIONS TO PLAN CONFIRMATION BY LAW DEBENTURE TRUST COMPANY OF NEW YORK AND BY LIVERPOOL LIMITED PARTNERSHIP

    **AND NOW**, this 22nd day of **December, 2005**, for the reasons set forth in the foregoing Memorandum Opinion the objections to the joint plans of reorganization of Alpart Jamaica, Inc., and Kaiser Jamaica Corporation, (plan at Dkt. No. 6261), and the joint plan of Kaiser Alumina Australia Corporation, and Kaiser Finance Corporation, (plan at Dkt. No. 6265) filed on behalf of Law Debenture Trust Company of New York and the objections filed on behalf of Liverpool Limited Partnership are **OVERRULED**.

    It is **FURTHER ORDERED** that if a motion for reconsideration is filed by Law Debenture Trust Company of New York within ten days hereof with respect to the issue of its fees and expenses, responses shall be filed by January 9 at 10 A.M. and argument on the motion will be heard on January 10, 2006, at 10:00 a.m., Courtroom A, 54th Floor, U.S. Steel Building, 600 Grant Street, Pittsburgh, Pennsylvania.

                               *Judith K. Fitzgerald*
                               Judith K. Fitzgerald
                               United States Bankruptcy Judge

# APPENDIX A

**DOCKET NUMBER**                           **DOCKET TEXT**

| DOCKET NUMBER | DOCKET TEXT |
|---|---|
| 6261 | Third Amended Joint Plan of Liquidation for Alpart Jamaica, Inc., Bankr. No. 03-10144, and Kaiser Jamaica Corporation, Bankr. No. 03-10151, jointly administered at 02-10429 |
| 6265 | Third Amended Joint Plan of Liquidation for Kaiser Alumina Australia Corporation, Bankr. No. 02-10432, and Kaiser Finance Corporation, Bankr. No. 02-10438, jointly administered at 02-10429 |
| 6504 | Objection of Law Debenture Trust Company of New York to Subordination of 1993 Note Guarantees Pursuant to (A) the Third Amended Joint Plan of Liquidation for Alpart Jamaica, Inc., and Kaiser Jamaica Corporation Dated February 25, 2005, and (B) The Third Amended Joint Plan of Liquidation for Kaiser Alumina Australia Corporation and Kaiser Finance Corporation, Dated February25, 2005 |
| 6505 | Objection of Law Debenture Trust Company of New York to (I) Subordination of Indenture Trustee Fees and Expenses Under (A) The Third Amended Joint Plan of Liquidation for Alpart Jamaica, Inc. and Kaiser Jamaica Corporation Dated February 25, 2005, and (B) The Third Amended Joint Plan of Liquidation for Kaiser Alumina Australia Corporation and Kaiser Finance Corporation, Dated February 25, 2005 and to (II) Proposed Settlement of $7^{3/4}$ % SWD Revenue Bond Dispute |
| 6508 | The Liverpool Limited Partnership's Objection to Confirmation of the Plans of Reorganization Proposed By The Subsidiary Guarantors |
| 6520 | Objection of Law Debenture Trust Company of New York to Subordination Issues Raised by Liverpool in Connection with (A) The Third Amended Joint Plan of Liquidation for Alpart Jamaica, Inc., and Kaiser Jamaica Corporation, Dated February 25, 2005 and (B) The Third Amended Joint Plan of Liquidation for Kaiser Alumina Australia Corporation and Kaiser Finance Corporation, Dated February 25, 2005. |

# APPENDIX B – APPEARANCES

1

Gregory M. Gordon, Esquire, Richard Chesley, Esquire, Daniel P. Winikka, Esquire, Michelle Miller, Esquire, Daniel DeFranceschi, Esquire, Edward Huff, Esquire, George Davis, Esquire, for Debtors

Lisa G. Beckerman, Esquire, Brian Kilmer, Esquire, William P. Bowden, Esquire, for Creditors' Committee

Alain Baudry, Esquire, Clark T. Whitmore, Esquire, for U.S. Bank, N.A.

Diane Harvey, Esquire, George A. Davis, Esquire, for Ad Hoc Group of Senior Noteholders

E. Evans Wohlforth, Esquire, Anthony Callaghan, Esquire, James Gereghty, Esquire, David Crapo, Esquire, for Bear Stearns & Co., Citadel Equity Fund, Ltd., and Citadel Credit Trading, Ltd.

Evan D. Flaschen, Esquire, Gregory Nye, Esquire, Kate Simon, Esquire, Tina Moss, Esquire, Sally Siconolfi, Esquire, for Law Debenture Trust Company of New York

K. John Shaffer, Esquire, Margreta Sunderlin, Esquire, David J. Baldwin, Esquire, for The Liverpool Partnership

Brad A. Berish, Esquire, for Allstate Insurance Company

Peter B. Ackerman, Esquire, for London Market Insurers

William S. McMahon, Esquire, for St. Paul's Surplus Lines Insurance Company

Jason J. DeJonker, Esquire, for CNA Service Mart Companies

Leonard Goldberger, Esquire, for Century Indemnity Company, *et al.*

Mark F. Hebbeln, Esquire, Kristin Going, Esquire, Carl N. Kunz, III, Esquire, for Deutsche Bank Trust Company National Association

James Eggeman, Esquire, for the Pension Benefit Guaranty Corporation

Mark T. Hurford for the Asbestos Creditors Committee

Sharon M. Zieg, Esquire, and Donald Brown, Esquire, for the Asbestos Futures Representative

David Klauder, Esquire for the U.S. Trustee

2

Michael Aiken, Esquire, for Noise Induced Hearing Loss Claimants

Peter C. D'Apice, Esquire, Jacob Newton, Esquire, for Silica Future Representative

Ronald E. Reinsel, Esquire, for Personal Injury Committee

Marc S. Casarino, Esquire, for ACE Insurance Company

Elizabeth Jones Futrell, Esquire, for J.P. Morgan Trust

3

## APPENDIX C

## Definition of "Senior Indebtedness"

The definition of "Senior Indebtedness provides, in full:

Senior Indebtedness:  The term "Senior Indebtedness" shall mean with respect to any Person[35] (whether heretofore Incurred or provided for or Incurred after the date hereof):

(i) (A) the Obligations of such Person under the Credit Agreement[36] and (B) penalties, fees, premiums, expense reimbursements, indemnity obligations and all other monetary obligations (other than monetary Obligations referred to in clause (i)(A) above) of such Person under the Credit Agreement, and

(ii) to the extent (x) incurred by such Person from a Person that is a Bank (or an affiliate of a Bank) at the time of such incurrence or (y) designated in writing by the Company as Senior Indebtedness in a notice to the Trustee pursuant to the terms of this Indenture, which notice shall indicate the amount of such Senior Indebtedness and the trustee or representative thereof.

(A)(1) the principal of, premium, if any, and interest on all indebtedness of such Person for money borrowed (including all such indebtedness evidenced by notes, debentures or other securities issued for money, whether issued or assumed by such Person); (2) all indebtedness incurred by such Person in the acquisition (whether by way of purchase, merger, consolidation or otherwise and whether by such Person or another Person) of any business Capital Stock, real property or other assets (except assets acquired in the ordinary course of business); (3) all lease obligations of such Person whether or not capitalized on the books of such Person in accordance with GAAP; (4) all reimbursement obligations of such Person with

---

[35] "Person" is defined as "any individual, corporation, partnership, joint venture association, joint-stock company, trust, unincorporated organization or government or other agency or political subdivision thereof." Trial Exh. D-4, 1993 Indenture at Section 1.01 at 25.

[36] The 1989 Credit Agreement which was in effect when the 1993 Indenture was created.

1

respect to letters of credit and letter of credit fees in connection therewith and bankers' acceptances and fees and commissions in connection therewith; (5) all guarantees by such Person of any indebtedness referred to in this clause (ii)(A) of any Subsidiary of such Person or any Non-Affiliate Joint Venture of such Person; (6) all obligations of such Person in connection with the sale of its receivable; and (7) all obligations of such Person in connection with the issuance of industrial revenue bonds.

(B) all Currency Hedging Obligations of such Person;

(C) all Interest Hedging Obligations of such Person;

(D) all penalties, fees, premiums, expenses, reimbursements, indemnity obligations and all other monetary obligations of such Person in respect of any Indebtedness, obligation or guarantee described in this clause (ii), and

(E) any renewals, extensions, refundings, replacements, restructurings, refinancings, amendments and modifications by such Person of any such indebtedness, obligation or guarantee described in clauses (i) and (ii) (in each case, in whole or in part).

Senior Indebtedness of a Person shall also include interest on Senior Indebtedness fo such Person, and any renewals, extensions, refundings, replacements, restructurings, refinancings, amendments and modifications thereof, that would accrue but for the filing of a bankruptcy or similar proceeding at the rate specified in the instrument governing such Senior Indebtedness, whether or not such interest is an allowable claim in such proceeding. The obligations of any Person described in clause (i) of this definition, the obligations of such Person under or in connection with any Refinancing Indebtedness that serves to Refinance any obligations of such Person described in clause (i) of this definition and all other monetary obligations of such Person under any agreements governing or securing such Refinancing Indebtedness and any renewals, extensions, refundings, replacements, restructurings, refinancings, amendments and modifications of any of the foregoing, shall constitute, and the obligations under the Credit Agreement are hereby expressly designated as Senior Indebtedness of such Person for all purposes of this Indenture (except as provided in

2

the next sentence below) and the subordination provisions of this Indenture shall continue to apply to such Senior Indebtedness notwithstanding that any such obligations (or any portion thereof) are subordinated to any other claims against such Person as a fraudulent transfer or fraudulent conveyance under any bankruptcy, insolvency, fraudulent conveyance or similar law.

Notwithstanding the foregoing, "Senior Indebtedness" shall not include:

(a) any Indebtedness (other than Indebtedness and obligations referred to in clause (i) of this definition and any Refinancings thereof to the extent that any such Refinancings do not violate Section 5.10(b)(vi) incurred by such Person in violation of the covenants of this Indenture (but notwithstanding the foregoing, such Indebtedness (including any additional Indebtedness that may be borrowed or received thereunder at a future time) shall constitute Senior Indebtedness fi the original holder thereof relied in good faith, after being provided with a copy of this Indenture, upon an Officer's Certificate of such Person to the effect that the incurrence fo such Indebtedness (including any additional Indebtedness that may be borrowed or received thereunder at a future time) did not (or would not if then borrowed or received in the case of such additional Indebtedness) violate the covenants of this Indenture).

(b) any Indebtedness of such Person that by its terms or the terms of the instrument creating or evidencing it expressly provides that such Indebtedness is not Senior Indebtedness under this Indenture or provides that it is subordinated to or pari passu with the Notes or any Subsidiary Guarantor's obligation under its Guarantee, as the case may be.

(c) any Indebtedness of such Person to a Subsidiary of such Person or an Affiliate of such Person (provided that no holder of any Senior Indebtedness describe in clause (i) of this definition or incurred by such Person from a Person that is a Bank (or an affiliate of a Bank) at the time of such incurrence, or any renewals, extensions, refundings, replacements, restructurings, refinancings, amendments or modifications thereof, shall be deemed to be an Affiliate of such Person solely as a result of such holding).

3

(d) any trade payables, even if overdue, and

(e) any Redeemable Stock of such Person.

Trial Exh. D-4, definition of "Senior Indebtedness" at Section 1.01. at 27-29.

4

# EXHIBIT "B"

**IN THE UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE**

IN RE:

Kaiser Aluminum Corporation, *et al.*        Bankruptcy No. 02-10429-JKF

       Debtor(s)        Chapter 11

                             **Related to Dkt. Nos. 6261, 6265, 6504, 6505,
6508, 6520, 6546.** *See Appendix A.*

Appearances of Counsel – *See Appendix B*

**MEMORANDUM OPINION[1]**

    Before the court are objections filed by Law Debenture Trust Company of New York

("LDTC") and Liverpool Limited Partnership[2] to the confirmation of the Third Amended

Joint Plans of Liquidation of four subsidiaries of Kaiser Aluminum Corporation ("KAC"):

(1) the joint plan of Alpart Jamaica, Inc. ("AJI") and Kaiser Jamaica Corporation ("KJC"),

(plan at Dkt. No. 6261), and (2) the joint plan of Kaiser Alumina Australia Corporation

("KAAC") and Kaiser Finance Corporation ("KFC"), (plan at Dkt. No. 6265). LDTC is the

Indenture Trustee under an Indenture dated February 1, 1993 (the "1993 Indenture"). Kaiser

Aluminum & Chemical Corporation ("KACC" or "the Company"), a subsidiary of KAC, is

the issuer of the "1993 Notes" (also known as the $12\frac{3}{4}$% Notes) and various debtor

subsidiaries of KACC are guarantors of these Notes (the "Subsidiary Guarantors"). LDTC

---

    [1]The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

    [2]By agreement of the parties, an order confirming the liquidating plans was entered, reserving jurisdiction over these objections, which address entitlement to certain distributions under the plans.

objected to both joint plans with respect to subordination of the 1993 Note Guarantees to the 1994 Note Guarantees of the $9^{7/8}$% Senior Notes and the 1996 Note Guarantees of the $10^{7/8}$% Senior Notes.[3]

LDTC also filed an objection with respect to certain subordination issues raised by The Liverpool Limited Partnership (*see* Dkt. No. 6520) and an objection with respect to the joint plans' treatment of LDTC's fees and expenses and its claim for indemnification (*see* Dkt. No. 6506).[4] The plan confirmation order was entered on December 20, 2005, so as to save the estate $4 million in certain taxes that would otherwise be due, but preserving these objections.[5]

---

[3]LDTC asserts that the plan proponents must commence an adversary proceeding in order to assert subordination. Inasmuch as this is simply a dispute over the meaning of contract terms, no adversary proceeding is necessary. To the extent an adversary is required, one was commenced at Adv. No. 04-55115 by the 1994/96 Indenture Trustee and the 1994/96 Ad Hoc Group of Senior Noteholders (U.S. National Bank Association and Ad Hoc Group of Senior Noteholders v. KACC, *et al.*). The adversary complaint seeks a declaratory judgment that the 1994/96 Senior Notes and related guarantees are senior to the 1993 Senior Subordinated Notes. The issue with respect to subordination is identical. This Memorandum Opinion will resolve both LDTC's objection to the plans and the adversary. The adversary was stayed until completion of the plan confirmation process by order dated April 18, 2005. *See* Adv. 04-55115 at Dkt. No. 40. Prosecution of the adversary will be mooted by this outcome. An Order will be entered at the Adversary.

[4]LDTC also objected to Debtors' proposed settlement with the Parish of St. James, State of Louisiana, Solid Waste Disposal Revenue Bonds (the "$7^{3/4}$ % SWD Revenue Bonds") ("Gramercy Bonds"). *See* Motion . . . for an Order (A) Approving Settlement . . .", Dkt. No. 6290. An order approving that settlement was entered on June 2, 2005, at Dkt. No. 6865. *See also* Adv. 04-51165, Dkt. No. 70. No appeal was taken from this order.

[5]LDTC filed an appeal from this court's order of January 24, 2005, Bankr. Dkt. No. 6006, which denied with prejudice LDTC's motion for reconsideration of a stay of its objection to certain proofs of claim filed by PBGC. This appeal is pending in the District Court for the District of Delaware at case number 1:05-cv-00135-JJF and was consolidated with 1:05-cv-00136-JJF by order of the District Court dated May 3, 2005. *See* 1:05-cv-

(continued...)

2

## Subordination of 1993 Note Guarantees

The crux of the dispute is the interpretation of certain language in the 1993 Indenture

which Debtors contend subordinates the 1993 Notes and Guarantees in right of payment to

later incurred obligations of KACC that qualify as "Senior Indebtedness of the Company" in

accordance with the terms of the 1993 Indenture. *See* Trial Exh. D-4, 1993 Indenture, Section

3.01, at 36. There is also a dispute as to whether extrinsic evidence is admissible to explain

---

[5](...continued)
00136-JJF at Dkt. No. 8. Case #1:05-cv-00136 is an appeal of this court's order of January
24, 2005, at Bankr. Dkt. No. 6005, which approved a settlement between the Debtors and the
PBGC and dismissed LDTC's objection to the PBGC's proofs of claim. The PBGC filed an
appeal from the February 5, 2004, order entered by this court in the District Court for the
District of Delaware. *See* 1:04-cv-145. The District Court's order
approving distress termination of the Debtors' plans and authorizing a replacement plan. The
PBGC appealed to the Court of Appeals and that appeal is pending. *See* CA 05-2695.
LDTC also filed an Emergency motion to Stay Pending Appeal with respect to the
PBGC settlement. Dkt. No. 6464. We heard argument on that motion at the plan
confirmation hearing and indicated that if there had not been a ruling on the appeal by the
time a plan confirmation order issued we would address the stay issue. We did so at a hearing
on December 19, 2005. By way of background, at the April 27, 2005, hearing counsel for the
PBGC stated that a number of the settlement provisions had been implemented. *See* Tr.
4/27/05 at 100, Bankr. Dkt. No. 6857. During the December 19, 2005, hearing, Debtors'
counsel articulated the significant steps already taken to implement settlement. Other than
distribution on the PBGC's settled and reduced claim through the plans, all other steps
required by the settlement have been concluded, including, *inter alia,* Debtors' retention of
several pension plans and a $5 million contribution to same which cannot be recovered by the
estates, PBGC's assumption of the largest of Debtors' pension plans, etc. In addition, we
previously found that LDTC's objection on the ground that the settlement would affect the
source of its recovery on its claims was not an appropriate basis for staying the PBGC
settlement which we found was in the best interests of creditors and the estate. We reiterated
these finding at the December 19, 2005, hearing. A transcript of that hearing is not yet
available. Previously, we also held that LDTC did not have a substantive right on the merits
with respect to another creditor's (PBGC) claim, although it had a right to appear and be
heard, Tr. 1/18/05 at 34-35, Bankr. Dkt. No. 6099, particularly because, if LDTC was
successful on appeal, PBGC would be subject to disgorgement, if applicable. In addition, at
the time the PBGC settlement was under consideration negotiation with respect to an
Intercreditor Settlement Agreement was also taking place. The two settlements were
interdependent and both have been approved.

the 1993 Indenture and a dispute as to what constitutes "extrinsic evidence" under applicable New York law.[6]

LDTC objects to confirmation of the joint plans asserting, *inter alia*, that the plans impermissibly subordinate payment of the 1993 Note Guarantees. In LDTC's view, the 1993 Note Guarantees rank equally with all other obligations of the Subsidiary Guarantors except those that are "Senior Indebtedness." Debtors and KACC dispute LDTC's contentions. Hearings on the confirmation of the plans were held on April 13, April 27, and May 2, 2005. The plan confirmation order was entered on December 20, 2005. Dkt. No. 7983.

**The 1993 Indenture**

Article Three of the 1993 Indenture is entitled "Subordination of Notes" and constitutes an agreement to subordinate the 1993 Notes to those obligations of the Company that qualify as "Senior Indebtedness of the Company" to the extent and in the manner set forth in other provisions of Article Three. Trial Exh. D-4, 1993 Indenture, Section 3.01, at 36. Sections 3.02[7] and 3.03[8] describe events that trigger Section 3.01 subordination and the

---

[6]In addition, Liverpool Limited Partnership filed a motion to strike declarations of John T. La Duc and Theodore Sands, among others. Dkt. No. 6497. To the extent that that motion is based on an argument that extrinsic evidence cannot be considered the motion is denied. For the reasons expressed hereafter, we find that extrinsic evidence that explains circumstances surrounding creation of the document is admissible. The deposition and declaration of Kenneth D. Gartrell was not admitted. At the hearing on April 27, 2005, the court ultimately concluded that they were irrelevant inasmuch as the testimony concerned how the bonds traded in 2004 based on pricing in 1993. Tr. 4/27/05, Dkt. No. 6857, at 193.

[7]Section 3.02 contains the "x clause," which provides that, under certain circumstances, subordinated noteholders will receive reorganization securities. The x clause is qualified, however, so that any such payments or distributions may not cause the Subordinated Notes or any Guarantees associated therewith to be treated in, *inter alia*, a "case or proceeding" "as part of the same class of claims as the Senior Indebtedness of (KACC) or
(continued...)

4

mechanics of effectuating the subordination once a triggering event occurs. *Id.* at 36-40.

Section 3.03 describes the mechanics of subordination if there is a nonbankruptcy default.

Unless one of the triggering events described in Sections 3.02 occurs, including the filing of

a bankruptcy petition, the Indenture prescribes that the 1993 Notes will not be subordinated.

Article Sixteen, entitled "Guarantee of Notes," concerns the 1993 Note Guarantees

rather than the Notes themselves. *Id.* at 103-14. The Subsidiary Guarantors, which include

the Subsidiary Debtors, issued these Guarantees. Section 16.01 sets forth operative terms and

---

[7](...continued)
any Subsidiary Guarantor that is a debtor in any such case, proceeding . . . ." The rest of this
section, in further pertinent part, provides:

> (a) the holders of all Senior Indebtedness . . . shall be entitled to
> receive payment in full . . . before the holders of the Notes or
> the Trustee on behalf of the noteholders shall be entitled to
> receive any direct or indirect payment or distribution on or with
> respect to the Notes . . . . provided, however, that payments or
> distributions pursuant to this parenthetical clause or any other
> reference in this Indenture to Reorganization Distributions shall
> be permitted only so long as such payments or distributions do
> not cause the Notes or any Guarantee to be treated in any case
> or proceeding or similar event . . . as part of the same class of
> claims as the Senior Indebtedness of the Company or any
> Subsidiary Guarantor that is a debtor in any such case,
> proceeding or similar event, or any class of claims on a parity
> with or senior to such Senior Indebtedness . . . .

Trial Exh. D-4 at Section 3.02(a) at 37.

> [8]Section. 3.03, titled "Default on Senior Indebtedness," provides, in part:
> No direct or indirect payments or distributions by or on behalf
> of the Company on or with respect to the Notes, whether
> pursuant to the terms of the Notes, or upon acceleration or
> otherwise . . . other than Reorganization Distributions, shall be
> made if, at the time of such payment or distribution, there exists
> a default in the payment of all or any portion of any Senior
> Indebtedness of the Company . . . .

Trial Exh. D-4, 1993 Indenture at Section 3.03, at 39.

5

Section 16.02 constitutes the agreement by the Subsidiary Guarantors, the Trustee and the noteholders to subordinate the 1993 Note Guarantees "for the benefit of all present and future holders of Senior Indebtedness of each Subsidiary Guarantor" and is an agreement that all payments pursuant to the guarantees by the Subordinated Guarantors are "hereby expressly subordinated . . in right of payment to the prior payment in full . . . of all Senior Indebtedness of such Subsidiary Guarantor."[9] Trial Exh. D-4 at 104.

The 1993 Note Guarantees are subordinated only to the "Senior Indebtedness" of each Subsidiary Guarantor and then only to the extent and manner set forth in the rest of Article Sixteen. *Id.* Section 16.03 provides that when there is direct or indirect payment or distribution of assets or securities of any Subsidiary Guarantor upon dissolution, liquidation or reorganization of a Subsidiary Guarantor, holders of Senior Indebtedness of the Subsidiary Guarantor shall be paid in full. Section 16.04 provides that there will be no direct or indirect payments by or on behalf of any Subsidiary Guarantor or with respect to the Guarantee (other than Guarantor Reorganization Distributions) if there is default in payment of Senior Indebtedness of "such Subsidiary Guarantor." *Id.* at 107. Section 16.04 is inapplicable to any payment to which Section 16.03 applies. *Id.* at 108.

---

[9] "Subsidiary Guarantor" is defined as follows:
> The term . . . shall mean the Persons from time to time named as Subsidiary Guarantors in this Indenture or that become Subsidiary Guarantors hereunder, and each of their respective successors, provided, however, that in the event that a Subsidiary Guarantor is released form its Guarantee in accordance with the terms of this Indenture, such Subsidiary Guarantor shall without any further action no longer be a Subsidiary Guarantor for any purpose of this Indenture or the Notes.

Trial Exh. D-4 at 30.

6

The term "Senior Indebtedness" is defined in Article One at Section 1.01. *See* Appendix C. "Senior Indebtedness" refers to "the obligations" of "[any] Person under the Credit Agreement." *Id.* at 27-28. (The Credit Agreement referred to is that of 1989. *Id.* at 15.) Clause (ii) of the definition provides that other debt will also qualify as Senior Indebtedness if incurred from a bank or if a written notice to that effect is delivered by the Company to the 1993 Indenture Trustee when such debt is issued. The parties agree that the required Notices were delivered with respect to the 1994 and the 1996 Notes.[10]

Clause (ii)(A)(1) designates indebtedness "for money borrowed" as Senior Indebtedness. Clause (ii)(A)(5) is broader and provides that Senior Indebtedness includes all guarantees of "any indebtedness referred to in this clause (ii)(A) of any Subsidiary of such Person." *Id.* at 28. "[S]uch Person," under the definition of "Senior Indebtedness" means "any Person." *Id.* at 27. Further, Senior Indebtedness constitutes "(i)(A) the Obligations of such Person under the Credit Agreement . . . and (ii) to the extent . . . designated in writing by the Company as Senior Indebtedness in a notice to the Trustee . . . ." *Id.* at 28. The reference in (ii)(A)(5) is not limited to money borrowed as LDTC contends; rather, it renders all downstream guarantees of any indebtedness covered by clause (ii)(A) as Senior Indebtedness.

Section 3.01 of the 1993 Indenture provides:

> Agreement to subordinate. The Company, for itself, its
> successors and assigns, covenants and agrees, and the Trustee

---

[10]At the hearing there was argument over the significance, if any, of capital "I" Indebtedness versus lower case "i" indebtedness. In light of the many instances in which "Indebtedness" is used and other places in the document in which "indebtedness" is used, we find that lower case "i" indebtedness is not a defined term. This view is illustrated not just by the contexts in which the two terms are used but by the fact that certain types of debt are excluded by the very terms of the definition of "Senior Indebtedness."

> and each holder of Notes, by his acceptance hereof, likewise
> covenants and agrees, for the benefit of all present, and future
> holders of Senior Indebtedness of the Company, that all direct
> and indirect payments or distributions on or with respect to the
> Notes, whether pursuant to the terms of the Notes or upon
> acceleration or otherwise . . ., is hereby expressly subordinated,
> to the extent and in the manner hereinafter set forth, in right of
> payment to the prior payment in full . . . of all Senior
> Indebtedness of the Company.

*Id.* at 18.

Section 3.01 of the 1993 Indenture is clear that the parties (KACC, the 1993 Indenture

Trustee and Subordinated Noteholders) agreed that all direct or indirect payments with

respect to the 1993 Notes could be subordinated to holders of indebtedness that did not exist

in 1993. Section 3.01 provides that subordination will be "to the extent and in the manner

hereinafter set forth." Falling under that proviso is an agreement by the holders of the

Subordinated Notes that, in the event that KACC filed bankruptcy, the notcholders would not

receive direct or indirect payments or distributions until holders of Senior Indebtedness of

KACC are paid in full.[11]

Section 16.02 contains provisions similar to Section 3.01 but with respect to

Subsidiary Guarantors. That is, Subsidiary Guarantors, the Trustee and Subordinated

Noteholders agree "for the benefit of all present and future holders of Senior Indebtedness of

such Subsidiary Guarantors . . . that all payments pursuant to the Guarantee by such

Subsidiary Guarantor are hereby expressly subordinated to the extent and in the manner

---

[11]Section 3.02 contains an "x clause," *see* note 7, *supra*, which permits limited
distributions in a reorganization proceeding as long as they do not cause the Subordinated
Notes or any Guarantee to be treated as part of the class of claims of the Senior Indebtedness
or any debtor Subsidiary Guarantor. Such distribution may not occur inasmuch as there are
probably insufficient funds to accomplish it. Section 16.03 also contains an x-clause.

8

hereinafter set forth, in right of payment to the prior payment in full . . . of all Senior

Indebtedness of such Subsidiary Guarantor." *Id.*, Section 16.02 at 104.[12] As will be

illustrated below, it is clear from the documents, and the court finds, that the purpose of the

Indenture was to subordinate all payments with respect to the Subordinated Notes regardless

of source, including payments on the Subordinated Guarantees, to any "Senior Indebtedness"

of KACC or the Subsidiary Guarantors outstanding then or in the future.

The Guarantees of the Senior Notes under the 1993 Indenture were designated as

"Senior Indebtedness" of the Subsidiary Guarantors, pursuant to the terms of the 1993

Indenture, when the notices with respect to the 1994 and 1996 Indentures were sent. The

1994 Notice provided, in part, that:

> Reference is made to the Indenture, dated as of February 1,
> 1993, . . .
> This letter constitutes notice to the Trustee, as contemplated
> by the definition of the term "Senior Indebtedness" under the
> Indenture, that (i) the Company hereby designates the payment
> of the principal of, premium, if any, and interest on
> $225,000,000 aggregate principal amount of its $9^{7/8}$% Senior
> Notes . . . as "Senior Indebtedness" under the terms, and for all
> purposes, of the Indenture and (ii) each Subsidiary Guarantor
> hereby expressly designates the Guarantee (as defined in the
> Senior Note Indenture (as defined)) in respect of the payment of
> the principal of, premium, if any, and interest on the Senior
> Notes as "Senior Indebtedness" of such Subsidiary Guarantor
> under the terms, and for all purposes, of the Indenture. The
> Senior Notes have been issued, in an aggregate principal
> amount of $225,000,000, under an Indenture dated as of

---

[12]Section 5.05 provides that the Company is not required to continue the corporate
existence of any Subsidiary other than a Subsidiary Guarantor, as long as the subsidiary is a
Subsidiary Guarantor. However, Subsidiary Guarantors are permitted to merge or consolidate
with or into the Company, any other Subsidiary Guarantor, or "any other Person." Subsidiary
Guarantors are also permitted to transfer all or substantially all of their property to the
Company, any other Subsidiary Guarantor, or "any other Person." *Id.* at 51.

9

February 17, 1994 (the "Senior Note Indenture") . . ..

Trial Exh. D-14, Notice Dated February 17, 1994.  Two notices were issued with respect to

the 1996 Indenture and are substantially similar in their content.  The notice dated October

23, 1996, states:

> Notice is hereby given . . . that Senior Indebtedness, as
> defined in the Indenture, dated as of February 1, 1993,
> governing the Company's $12^{3/4}$% Senior Subordinated Notes
> due 2003 . . . includes the principal of, premium, if any, and
> interest on the Company's $10^{7/8}$% Senior Notes . . . and the
> related guarantees thereof . . . of each of the Subsidiary
> Guarantors under the 1996 Indenture . . . .
>
> . . . . The principal of, premium, if any, and interest on the
> $9^{7/8}$% Senior Notes . . . and the related guarantees thereof of
> each of the Subsidiary Guarantors under the 1994 Indenture
> also constitute Senior Indebtedness, as defined in the 1993
> Indenture.  The Subsidiary Guarantors under the 1994 Indenture
> are the same as the Subsidiary Guarantors under the 1996
> Indenture.

Trial Exh. D-12, Letter of October 13, 1996.  *See also* Trial Exh. D-13, Letter of December

23, 1996.

It is LDTC's position that Senior Indebtedness includes only "money borrowed" and,

therefore, because the subsidiaries did not themselves borrow, the Subsidiary Guarantees

cannot be Senior Indebtedness.  However, clause (ii) of the definition provides that

"Obligations"[13] shall constitute Senior Indebtedness when, *inter alia*, so designated in writing

---

[13]"Obligations" is also a defined term and refers to "all obligations for principal" and
other financial commitments that arise under the 1989 Credit Agreement.  Trial Exh. D-4 at
21.  The term is broad enough to include guarantees.  Further, because guarantors promise to
pay the obligor's debt, guarantors are liable for payment of the principal and interest, etc., on
the obligor's debt.  LDTC and Liverpool argue that a guarantee cannot fall within the
definition of "Senior Indebtedness" because it is not an "assumption of debt."  Assumption of
debt is the function of a guarantee.  A guarantee *is* a debt.  *See, e.g., In re Gibralter*

(continued...)

10

by the Company. Trial Exh. D-4 at 28. This is what occurred when the 1994 and 1996 Notices were issued, as will be discussed below.

"Senior Indebtedness" is defined "with respect to any Person (whether heretofore incurred or provided for or incurred after the date hereof)" and, *inter alia*, "to the extent . . . designated in writing by the Company [KACC] as Senior Indebtedness in a notice to the Trustee pursuant to the terms of this Indenture"[14] Trial Exh. D-4 at 27-28. The term includes

> (ii)(A)(1) the principal of, premium, if any, and interest on all indebtedness of such Person for money borrowed (including all such indebtedness evidenced by notes, debentures or other securities issued for money, whether issued or assumed by such Person)

*id.* at 28, as well as

> (D) all penalties, fees, premiums, expenses, reimbursements, indemnity obligations and all other monetary obligations of such Person in respect of any Indebtedness, obligation or guarantee described in [ii] . . .

*Id.* The definition of "Person" includes a corporation, *id.* at 25; and "Indebtedness" includes, with respect to any "Person," "all Indebtedness of others guaranteed by such Person." *Id.* at 17, ¶ (f). The definition of "Senior Indebtedness" contains certain exclusions, none of which are guarantees of KACC obligations by KACC subsidiaries. *Id.* at 29.

---

[13](...continued)
*Amusements, Ltd.*, 187 F.Supp. 931, 935 (E.D.N.Y. 1960), *affirmed* 291 F.2d 22 (2d Cir.), *cert. denied* 368 U.S. 925 (1961)(liability on a guarantee is a non-contingent liquidated debt provable in bankruptcy). The argument is devoid of merit.

[14]LDTC argues that the notices referred to cannot be admitted into evidence inasmuch as they constitute extrinsic evidence violative of the parol evidence rule. We held at the hearing that the notices are part and parcel of the Indentures and so overruled LDTC's objection on this basis.

11

Reading the Indenture as a whole, it is abundantly clear that the hybrid financial structure of subordinated treatment of the Subordinated Notes at the parent level and *pari passu* treatment of the Subordinated Guarantees at the Subsidiary Guarantor level as suggested by LDTC was not created by the Indenture. The Indenture refers to the Subordinated Notes as subordinated. The Subordinated Notes themselves do so as well and further provide that their payment "is guaranteed on a senior subordinated basis by" these subsidiaries. *Id.* at 3. There is no reference therein that indicates that the Subordinated Guarantees are to be treated on a par with the Subsidiary Guarantors' guarantee of Senior Indebtedness of the Company.

Article Three is captioned "Subordination of Notes." Section 3.01 of the Indenture captioned "Agreement to subordinate" states that the Subordinated Note Indenture Trustee and each holder of the Subordinated Notes

> . . . covenants and agrees, for the benefit of all present and future holders of Senior Indebtedness of the Company, that all direct or indirect payments or distributions on or with respect to the Notes . . . is hereby expressly subordinated . . . in right of payment to the prior payment in full . . . of all Senior Indebtedness of the Company.".

*Id.* at 36.[15] Payments, whether pursuant to the terms of the Subordinated Notes or, *inter alia*, on account of a "Claim"[16] are "expressly subordinated, to the extent and in the manner

---

[15]With respect to Senior Indebtedness as defined in clause (i) of the same definition, the "prior payment in full" must be "in cash or Cash Equivalents." *See* Section 3.01 at 36. *See also* definition of "Senior Indebtedness" at 28.

[16]"Claim" is defined as "any claim against the Company *or any of its Subsidiaries* for rescission of the purchase of the Notes or for monetary damages from, or in connection with, the purchase of the notes, or for reimbursement or contribution on account of such a claim."

(continued...)

12

hereinafter set forth, in right of payment to the prior payment in full . . . of all Senior

Indebtedness of the Company." *Id.* at Section 3.01, at 36. Upon reorganization or

receivership, holders of Senior Indebtedness are entitled to be paid in full before holders of

the Subordinated Notes or the Subordinated Note Trustee on behalf of the noteholders can be

paid directly or indirectly. *Id.* at Section 3.02 at 36-37.[17]

Article Sixteen, captioned "Guarantee of Notes," provides in Section 16.02 that each

of the Subsidiary Guarantors, the Subordinated Note Indenture Trustee, and each holder of

Subordinated Notes

> . . . covenants and agrees, for the benefit of all present and
> future holders of Senior Indebtedness of such Subsidiary
> Guarantor, that all payments pursuant to the Guarantee by such
> Subsidiary Guarantor are hereby expressly subordinated to the
> extent and in the manner hereinafter set forth, in right of
> payment to the prior payment in full . . . of all Senior
> Indebtedness of such Subsidiary Guarantor.

*Id.* at Section 16.02 at 104.[18] Under Section 16.03, holders of Senior Indebtedness are entitled

---

[16](...continued)
*Id.* at 12. (Emphasis added.)

[17]LDTC also argues that Section 3.01 (the specific section that provides that holders of
Senior Indebtedness of the Company are entitled to payment in full before noteholders of the
trustee receive any payment or distribution) applies only to direct or indirect payment or
distribution of the Company's assets or securities. This is a misreading of Section 3.02 which
provides simply that when the Company's assets or securities are distributed through, *inter
alia*, bankruptcy, Senior Indebtedness is paid in full first. The Company, KACC, filed
bankruptcy. That the Subordinated Noteholders are not to receive payment on their claims
until Senior Indebtedness is paid in full is further clarified by Section 3.02 which contains an
x-clause, applicable in a bankruptcy case, providing that the Subordinated Notes and
Subordinated Guarantees cannot be in the same class of claims as Senior Indebtedness of the
Company or the Subsidiary Guarantors that are debtors. *Id.* at Section 3.02(a), at 37.

[18]With respect to Senior Indebtedness as defined in clause (i) of the definition of same
(at 28), the "prior payment in full" must be "in cash or Cash Equivalents." *See* Section 16.02
(continued...)

13

to payment in full first in the event of "dissolution, liquidation and reorganization" of a Subsidiary Guarantor. *Id.* That section also contains an x-clause permitting certain limited distributions in a reorganization proceeding on the same basis as provided in Section 3.02(a). *Id.* at 37, 104. Section 5.05 permits Subsidiary Guarantors to merge or consolidate with or into KACC or any other Subsidiary Guarantor or to transfer assets to any of them.[19] Article Sixteen tracks the language of Article Three for the most part, except that references in Article Three to "the Company" are replaced in Article Sixteen with references to "Subsidiary Guarantors." In other words, the Indenture contains two separate Articles – one with respect to subordination in connection with KACC's obligations on the Notes and the other in connection with its subsidiaries' guarantee of KACC's obligations on the Notes. Section 3.01 of Article Three and Section 16.02 of Article Sixteen refer to different groups: Section 3.01 to holders of Senior Indebtedness of KACC and Section 16.02 to holders of Senior Indebtedness of the Subsidiary Guarantors. Section 16.02 also provides that "all payments pursuant to the Guarantee by such Subsidiary Guarantor are expressly subordinated . . . in right of payment to the prior payment in full of . . . Senior Indebtedness."

Moreover, as will be discussed below, the 1994 Notice specifically provided that each

---

[18](...continued)
at 104.

[19] Section 16.03(c) also provides that consolidation of any Subsidiary Guarantor with, or the merger of any Subsidiary Guarantor into, another corporation or the liquidation or dissolution of any Subsidiary Guarantor following a sale or conveyance of all or substantially all of its assets "shall not be deemed a . . . reorganization" of the Subsidiary Guarantor for purposes of Article Sixteen if that other corporation complies with Section 16.12 as part of the merger or conveyance. Section 16.12 provides for, *inter alia*, assumption of certain obligations under the Indenture and contains net worth requirements, depending on the circumstances.

Subsidiary Guarantor expressly designated the Guarantee as Senior Indebtedness of the

Subsidiary Guarantor. Trial Exh. D-14. There is, therefore, no merit to LDTC's attack on the

provisions of the Indenture.

**Extrinsic Evidence**

LDTC also argues that extrinsic evidence should not be admitted inasmuch as the

1993 Indenture is clear and unambiguous on its face. As part of this argument LDTC asserts

that the prospectuses with respect to the 1993, 1994 and 1996 Indentures are irrelevant.

However, this court ruled at trial that the prospectuses and the Notices issued regarding the

various Indentures were admissible, at least insofar as they provide historical context for the

dispute. The 1989 Credit Agreement was admitted for the same limited purpose. The Notices

with respect to the 1994 and 1996 Indentures were admitted on the same basis.

With respect to admission into evidence of the declarations and depositions of John La

Duc, Theodore Sands, and Martin Balsam, we overrule the objections, inasmuch as the

testimony describes the circumstances and purpose to be served by the documents.[20] Their

testimony does not contradict the documents themselves. Under New York law, a court

construing language of a contract "should accord that language its plain meaning giving due

consideration to 'the surrounding circumstances [and] apparent purpose which the parties

sought to accomplish.'" *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000), quoting

---

[20]At trial the depositions and declarations were conditionally admitted on this basis
and insofar as they served to explain the surrounding circumstances concerning the 1993
Indenture. *See also* note 21, *infra*. We also admitted, on the same basis, prospectuses for the
1993 (Trial Exh. D-5), 1994 (Trial Exh. D-7), and 1996 Notes (Trial Exhs. D-9, D-11) and the
1994 (Trial Exh. D-6) and 1996 Indentures (Trial Exhs. D-8, D-10), and the 1989 Credit
Agreement (Trial Exh. D-15). Other exhibits also were conditionally admitted on the same
bases. We now admit these documents for the stated purpose.

15

*William C. Atwater & Co. v. Panama R. Co.*, 159 N.E. 418, 419 (N.Y. 1927). That is, the contract must be interpreted to give effect to the parties' intent as expressed in the contract itself. *Id.* Under New York law "[t]he parol evidence rule does not apply when the evidence sought to be introduced does not contradict the express terms of the written agreement in question." *See. e.g., In re Thomson McKinnon Securities, Inc.*, 139 B.R. 267, 273 (S.D.N.Y. 1992), citing *Marine Midland Bank-Southern v. Thurlow*, 425 N.E.2d 805, 808 (N.Y. 1981). The evidence that was offered at trial in this matter did not contradict the plain language of the 1993 Indenture but rather served to explain it and the context in which it was formulated.

New York law further provides that "[c]ontracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions, without regard to the surrounding circumstances, or the apparent purpose which the parties sought to accomplish." *Robertson v. Ongley Electric Co.*, 40 N. E. 390, 391 (N.Y. 1895), cited in *William C. Atwater & Co. v. Panama R. Co.*, 159 N.E. 418 (N.Y. 1927). That principle is still applied as New York law. *See In re Estate of Stravinsky*, 770 N.Y.S.2d 40, 45 (N.Y. App. Dist. 1st Dept.), *affirmed* 2003 WL 23028345 (N.Y. App. Dist. 1st Dept. 2003); *South Road Associates, LLC v. International Business Machines Corp.*, 770 N.Y.S.2d 126, 130 (N.Y. App. Dist. 2d Dept., 2003), *affirmed* 826 N.E.2d 806 (N.Y. 2005).

New York law, which the parties agree controls, permits extrinsic evidence to the extent it is of circumstances surrounding formation of a contract when that evidence explains the contract and does not contradict the plain meaning of the document. The ambiguity of a document is determined by looking only within its four corners. *See, e.g., Kass v. Kass*, 696 N.E.2d 174, 181 (N.Y. 1998). All agree that the 1993 Indenture is unambiguous. The

16

evidence admitted here merely is explanatory and so is admissible. *See William C. Atwater &*

*Co., Inc. v. Panama R. Co.*, 159 N.E. 418 (N.Y. 1927). *See also Eternity Global Master Fund*

*Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168 (2d Cir. 2004).

In *Atwater* the court said:

> Contracts are not to be interpreted by giving a strict and rigid
> meaning to general words or expressions without regard to the
> surrounding circumstances or the apparent purpose which the
> parties sought to accomplish. . . . The court should examine
> the entire contract and consider the relation of the parties and
> the circumstances under which it was executed. Particular
> words should be considered, not as if isolated from the context,
> but in the light of the obligation as a whole and the intention of
> the parties as manifested thereby.

*Atwater, supra*, 246 N.Y. at 524. New York law remains consistent with the pronouncement

in *Atwater. See, e.g., Sargent v. Halsey*, 348 N.Y.S.2d 661, 664 (N.Y.S. 1973), *affirmed* 348

N.Y.S.2d 160 (N.Y. App. Dist. 2d Dept. 1973); citing *Wack v. Wack*, 74 N.Y.S.2d 435, 437

(N.Y.S. 1947)("[t]o interpret the meaning of the agreement, at the time and place it was made,

all the surrounding circumstances at that time necessarily throw light upon it, and this rule

applies to an unambiguous writing as to an ambiguous one"). "[T]he parol evidence rule does

not prevent the introduction of extrinsic evidence to aid in interpretation of the contract. The

rule excludes 'only evidence of prior understandings and negotiations which contradicts the

unambiguous meaning of a writing which *completely* and *accurately* integrates the agreement

of the parties.'" *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988)

(emphasis in original) (citation omitted).

To the extent that deposition testimony and declarations of John La Duc, Theodore

Sands and Martin Balsam are consistent with the language of the Indentures and serve to

17

explain the circumstances surrounding the 1993 Indenture, they are admissible.[21] This testimony is likewise consistent with Debtors' interpretation of the subordinated debt structure. Furthermore, the parties do not dispute that for the past ten years trading has been conducted in a manner consistent with the Debtors' interpretation which is supported by the structure under which the obligations were created.

The video deposition of Theodore Sands of March 17, 2005, Trial Exh. 2, is credible and particularly illustrative. At the time of the 1993, 1994, and 1996 Indentures Mr. Sands was employed by Merrill Lynch Capital Markets,[22] the lead underwriter on several issues of both stocks and bonds for the Kaiser Group and as to the public debt offerings represented by the 1993, 1994 and 1996 Notes. He was the senior investment banker with respect to these offerings and Merrill Lynch, as the lead underwriter, had the primary responsibility for due diligence and negotiation of the indenture as well as for the marketing of the issues.

Mr. Sands testified that Kaiser's structure was somewhat complicated. Kaiser Aluminum Corporation ("KAC") issued equity securities and KACC (the Company) was a

---

[21]The court had conditionally admitted deposition testimony at the hearing on April 27, 2005. We find that, because the testimony therein merely explains and does not alter the clear language of the 1993 Indenture, the deposition testimony is properly admitted. Furthermore, deposition testimony can be admitted if the witness is outside the court's subpoena powers. Fed.R.Civ.P 32. No one disagreed with Debtors' counsel's statement that the witnesses whose deposition testimony was admitted were, in fact, unavailable and outside this court's subpoena powers. We had ordered parties to submit declarations with the witnesses available for cross-examination at trial. However, some if not all of the witnesses were unavailable and not subject to the court's jurisdiction, so they were deposed. At that time counsel for the objecting parties had the opportunity to cross-examine the deponents and to object to their testimony. Counsel's objections were limited to the form of certain questions.

[22]This was the predecessor of Merrill Lynch & Co. Tr. of Sands Deposition of March 17, 2005, Deposition at 37.

subsidiary and the issuer of the debt. KACC functioned as an operating company but was also a holding company of sorts, as was KAC. The subsidiary guarantors were subsidiaries of KACC. Mr. Sands testified that the structure for the 1993, 1994 and 1996 offerings was used because of the structure of the initial transactions when KAC was purchased in a leveraged buyout.[23] He testified that "the banks were offered KACC and their debt was guaranteed by the subsidiaries, and so if we wanted to issue debt securities, we had to do it there and we couldn't do it up at KAC." Tr. of Sands Deposition, March 17, 2005, Deposition at 15. Some of the securities that were issued in the leveraged buyout were maturing in the time period leading up to the 1993 Indenture. Because Kaiser has "long-term assets" and lenders' terms generally are five to seven years, it was necessary that the debt be "stretched out." The interest rate on the subordinated debt before the 1993 transaction was at $14^{1/4}$ percent. That interest rate was replaced with the $12^{3/4}$% Notes which extended the maturity and brought

---

[23]MAXXAM, Inc. acquired KAC's predecessor, KaiserTech Limited, in 1988 and the transaction was financed by the issuance of increasing rate notes by KaiserTech which were in two tranches. The notes carried high initial interest rates which were scheduled to increase quarterly. Their maturity was three years, a very short time for a company that had very long-term assets. Therefore, after the acquisition, a refinancing was achieved resulting in the 1989 Credit Agreement and issuance of $350 million in $14^{1/4}$% Subordinated Notes. Because KACC held most of the Debtors' assets, the lenders required that KACC be the primary obligor, obtained mortgages against KACC's domestic fixed assets and certain of its subsidiaries. In addition, certain subsidiaries, including AJI, KJC, and KAAC, guaranteed KACC's obligations under that Credit Agreement. The guarantees of the $14^{1/4}$% Notes were on a subordinated basis inasmuch as significant assets and operations of KACC were owned by AJI, KJC, and KAAC. These Notes were issued as subordinated and not senior because KACC was not able to issue additional senior debt under the terms of the 1989 Credit Agreement. The $14^{1/4}$% Notes had a six year term and expired in 1995; the 1989 Credit Agreement expired in five years, in 1994. *See* Deposition of John La Duc. The 1993 debt was subordinated due to restrictions in the 1989 Credit Agreement. As Mr. Sands testified, it was anticipated that in the future KACC would issue senior debt in the form of public notes and it had to preserve its ability to do so.

19

down the interest rate. Mr. Sands repeated that KACC's position as issuer was set before the 1993 transaction. The debt bearing $14^{1/4}$ % was due in 1995. Kaiser was not an investment grade issuer and its business was cyclical due to aluminum price fluctuations so when the opportunity to refinance arose, it was taken. The $14^{1/4}$ % Notes were part of the borrowing base and certain ratios had to be maintained among the borrowing base, the equity, subdebt and senior debt. Therefore, the only choice was to "do subdebt". *Id.* at 21. In order to provide financial flexibility so that Kaiser could continue to extend maturities, a subordinated debt issue was the only option.[24]

Mr. Sands testified that when the 1993 Subordinated Notes were issued it was anticipated that senior Notes would be issued some time in the future. Furthermore, if subordinated debt was to be issued, it would have to be subordinated not only at the issuer but also at the guarantor level. Otherwise the result would be what he described as a "hybrid security" (such as what LDTC suggested was the case) which, to his knowledge, does not exist and which the bond markets would not accept. Subordinated debt holders get a higher interest rate to compensate for the subordinated status. The pricing indicates that the Notes are fully subordinated, i.e., at the parent and guarantor levels. *Id.* at 25. He testified that he had never heard of subordinating notes at the issuer level but not at the guarantor level and, in light of his experience with Kaiser in these matters, the 1993 Subordinated Notes and Guarantees were "absolutely" subordinated to the 1994 and 1996 Senior Notes and Guarantees. *Id.* at 26. Furthermore, a hybrid structure in which subsidiary guarantees would

---

[24]Mr. Sands testified that issuance of senior debt would have been preferred but to provide flexibility and in light of the existing structure, subordinated debt had to be issued.

rank equally to subsidiary guarantees of future senior notes would be considered novel and
buyers would be confused, although such a structure could, in theory, be possible. *Id.* at 27-
28.

Mr. Sands further testified that the statement in the 1994 and 1996 prospectuses that
the subsidiary guarantees of the senior notes would rank senior to the subsidiary guarantees of
the subordinated notes is consistent with his understanding of the structure. *Id.* at 28-30. He
reiterated that the 1993 notes were subordinated and subsequent notes were senior. *Id.* at 33.
He testified that the theory of notes subordinated with respect to payments at the KACC level
but not with respect to payments from the guarantors was not supported in practice - a
security would not be designed that way. *Id.* at 46. Mr. Sands repeated that the 12¾% issue
had to be subordinated because of the way the pre-existing covenants and capital structure
worked. *Id.* at 47. The court accepts Mr. Sands' testimony and finds that there was no
evidence at all that the guarantees of the Subordinated Notes were *pari passu* with the
guarantees of future senior notes. All the evidence, including that of the 1993 Indenture
itself, is, in fact, clearly to the contrary.

In other words, in 1993, senior debt in the form of the Credit Agreement existed and
there was no public debt offering at that time. The 1994 and subsequent issues were used to
pay down the Credit Agreement.[25] At the time of the leveraged buyout there was significant
bank debt plus the subdebt and a relatively small amount of equity, as was standard at the
time in a leveraged buyout. However, in light of the nature of the assets, carrying that amount
of debt in a short-term bank facility was inappropriate. The goal, therefore, was to extend

---

[25]At some point the Credit Agreement was renegotiated and re-extended. *Id.* at 57.

21

maturities of senior debt because the average loan duration was three or four years but Kaiser

had 25-year assets.[26] *Id.* at 56-57. Subordinated debt must have a longer duration than senior

debt when capitalization is restructured – subordinated debt has to be paid after senior debt.[27]

Because interest rates were decreasing, the subordinated debt issues were accomplished in

tranches to take care of the term of the senior debt. *Id.* at 58-59. This, Mr. Sands testified, is

standard financing. *Id.* at 60. His knowledge was attained through training and experience

during his career.[28]

Although, he testified, a single issuer is preferred, because of the structure of Kaiser's

bank agreement and because that structure had been used with the 14¼ % issue (i.e., issued at

the KACC level and not at the parent), the 1993 and subsequent issues had to be done the

same way. *Id.* at 72. The bottom line was that the 1993 issue was "a subordinated deal" at all

levels. *Id.* at 93, 91. The structure was such that if the market existed for it a subsequent

senior debt issue would be made. Circumstances were such that this hoped for goal was

accomplished. *Id.* at 98.

The primary objective was to extend the maturity of KAC's subordinated debt. To

meet that goal, it was necessary to have the parent as the issuer and the subsidiary as

---

[26]This meant utilizing senior notes which could have a ten year term as opposed to five to seven years, with an average loan life of three or four years.

[27]When the maturity of the subdebt was extended, the maturity of the senior debt could be extended, requiring that "we . . . start at the bottom of the capital and move up . . . ." *Id.* at 88.

[28]At the time of his deposition Mr. Sands was the president of HAAS Capital LLC, a financial advisory and investment company. He started his career with Merrill Lynch's predecessor, remained with Merrill Lynch when it acquired the predecessor, and worked for the firm until 1999.

guarantor because the original transaction was so structured. Extension of the term enabled the issuance of senior debt of longer duration. *Id.* at 96-97. That is, "[t]he commercial objective was to issue longer term subordinated debt which would permit you the option, if market conditions were appropriate, at some later date to issue senior debt." *Id.* at 112.

We further note that the testimony of others involved in the 1993, 1994 and 1996 transactions (Mr. La Duc and Mr. Balsam) was consistent with that expressed by Mr. Sands. *See, e.g.,* Deposition of John La Duc, March 24, 2005, at 13-40 (Trial Exh. 1); Deposition of Martin Balsam, April 4, 2005, at 14-53 (Trial Exh. 3).

This court initially determined that extrinsic evidence, whether in the form of deposition transcripts or other documents, would be inadmissible to explain the 1993 Indenture if it was unambiguous. *See* Tr. of 4/13/05 at 224, Dkt. No. 6722. However, our research has established that New York law, which the parties agree is the governing authority with respect to this matter, provides that only that parol evidence which contradicts an unambiguous contract is inadmissible. *See generally In re Thomson McKinnon Securities, Inc.,* 139 B.R. 267, 273 (S.D.N.Y. 1992). The parol evidence rule does not apply when the evidence proffered does not contradict the terms of the agreement. *Id. See also* discussion at 15-17, *supra.*

Although based on the documents alone the court finds that it is clear that the Debtors' view of the structure of the transactions and of what constitutes Senior Indebtedness is correct, the evidence adduced at trial of the surrounding circumstances supports Debtors' position as well. *See, e.g.,* Trial Exhs. D-12, D-13, D-14. The 1994 Notice provided, in part as follows:

> . . . each Subsidiary Guarantor hereby expressly designates the
> Guarantee (as defined in the Senior Note Indenture []as defined)
> in respect of the payment of the principal of, premium, if any,
> and interest on the Senior Notes as "Senior Indebtedness" of
> such Subsidiary Guarantor under terms, and for all purposes, of
> the Indenture to the extent that such Subsidiary Guarantor is a
> guarantor under the Indenture.

Notice of Incurrence of Senior Indebtedness dated February 17, 1994, Trial Exh. D-14.

LDTC conceded at the April 13, 2005, hearing that the Notices were timely sent. Tr. of

4/13/05 at 191-92. Despite acknowledging that the Notices were sent as required, LDTC

argues that the Notices were not public documents and that all indenture trustees do when

they receive such documents is file them once they make sure the Notice is signed.[29]  *Id.* at

---

[29]Section 3.06 and Section 16.07 captioned "Notice to Trustee" state that
neither the Trustee nor any paying agent (other than the
Company) shall be charged with knowledge of any event which
would prohibit the making of any payment . . . to or by the
Trustee or such paying agent, unless and until the Trustee or
such paying agent shall have received . . . written notice thereof
from the Company or from the holder of any Senior
Indebtedness of the Company or from the Bank Agent or the
trustee for any such Senior Indebtedness of the Company . . . .
Section 3.06, Trial Exh. D-4 at 41,

Section 16.07 provides:
. . . neither the Trustee nor any paying agent (other than a
Subsidiary Guarantor) shall be charged with knowledge of any
event which would prohibit the making of any payment . . . to
or by the Trustee or such paying agent, unless and until the
Trustee or such paying agent shall have received . . . written
notice thereof from such Subsidiary Guarantor or from the
holder of any Senior Indebtedness of such Subsidiary Guarantor
or from the Bank Agent or the trustee for any such Senior
Indebtedness of such Subsidiary Guarantor . . . .
*Id.* at 109.

24

192-94. The Notices,[30] however, clearly state, and we noted at the argument, that "this is

senior sub debt and it's subordinated." *Id.* at 195.[31]

_____

[30]For example, the Notice dated February 17, 1994, Trial Exh. D-14, regarding the 1994 Senior Notes states:

> This letter constitutes notice to the Trustee, as contemplated by the definition of the term "Senior Indebtedness" under the [1993] Indenture, that (i) the Company hereby designates the payment of the principal of ,m premium, if any, and interest on [a certain amount of the principal] of its 9⁷⁄₈ % Senior Notes . . . as "Senior Indebtedness" under the terms, and for all purposes, of the Indenture and (ii) each Subsidiary Guarantor hereby expressly designates the Guarantee . . . in respect of the payment of the principal of, premium, if any, and interest on the senior Notes as "Senior Indebtedness" of such Subsidiary Guarantor under the terms, and for all purposes, of the Indenture to the extent that such Subsidiary Guarantor is a guarantor under the Indenture.

*See also* Trial Exhs. D-12, D-13 with respect to the 1996 Senior Notes.

[31]Furthermore, in addition to Notices, which informed the Indenture Trustee of the issuance of Senior Indebtedness, the prospectus(es) that went to investors clearly state that the debt is senior and subordinated. In this regard, *see* Trial Exh. D-5, 1993 Prospectus, which provides, in part, as follows:

> . . . . The Notes will be effectively subordinated to claims of creditors of the Company's subsidiaries, except to the extent that the holders of Notes may be creditors of such subsidiaries pursuant to a subsidiary guarantee. . .

*Id.* at 1. Further,

> The Notes are subordinate in right of payment to the Company's obligations under the Credit Agreement and all other present and future Senior Indebtedness . . . . See "Investment Considerations – Ranking of the Notes; Subordination; Debt Service."

*Id.* at 4. Under "Investment Considerations" the prospectus provides:
> **Ranking of the Notes; Subordination; Debt Service**
> The payment of the principal . . . and interest on the Notes is

(continued...)

25

[11](...continued)
> subordinated in right of payment, as set forth in the Indenture,
> to the payment when due of the Company's obligations under
> the Credit Agreement and all other present and future Senior
> Indebtedness (as defined) of the Company.

*Id.* at 6. Trial Exh. D-7, the 1994 Prospectus, provides in part as follows:
> The Notes will represent senior, unsecured obligations of the
> Company, ranking senior in right and priority of payment to all
> Indebtedness of the Company that by its terms is expressly
> subordinated to the Notes. The Notes will also be guaranteed
> on a senior, unsecured basis by certain subsidiaries of the
> Company. The Notes, however, will be effectively
> subordinated to secured Indebtedness of the Company and its
> subsidiaries that are guarantors of the Notes with respect to the
> assets securing such Indebtedness. The Notes will also be
> effectively subordinated to claims of creditors of the
> Company's subsidiaries, except to the extent that the holders of
> Notes may be creditors fo such subsidiaries pursuant to a
> subsidiary guarantee.

Trial Exh. D-7 at 1. Under the heading "Risk Factors" is the subheading "Ranking of the
Notes; Subordination." That section states:
> *Ranking of the Notes.* The Notes will represent senior,
> unsecured obligations of the Company, ranking senior in right
> and priority of payment to all Indebtedness of the Company that
> by its terms is expressly subordinated to the Notes. . . . As of
> December 31, 1993, the Company's total consolidated
> indebtedness was $760.9 million (of which $431.5 million was
> expressly subordinated in right and priority of payment to the
> Notes).

Under the subheading "Subordination" is the following
> The obligations of the Company with respect to the Notes
> will be guaranteed, jointly and severally, on a senior, unsecured
> basis by certain Subsidiaries (as defined) of the Company. Any
> obligations of the Company's Subsidiaries will be effectively
> senior to the claims of the holders of te Notes with respect to
> the assets of such Subsidiaries, except to the extent that the
> holders of the Notes may be creditors of a Subsidiary pursuant
> to a subsidiary guarantee. . . . The rights of the Company and its
> creditors, including holders to eh Notes, to realize upon the

(continued...)

26

The issuance of the Notices was a prerequisite to creating Senior Indebtedness. LDTC agrees with this, *id.* at 191, but argues here that the Notices did not create Senior Indebtedness as that term is defined in the Indenture. LDTC asserts that only the Company, KACC, and not the Subsidiary Guarantors agreed to subordination subject to prior payment in full of Senior Indebtedness under the Indenture. This argument does not comport with the 1993 Notes or the 1993 Note Guarantees or the Notices themselves. Moreover, the noteholders themselves have agreed to the subordination of their payments, and that is what is at stake in this proceeding.

LDTC contends that because payments under the plans at bench are from the Subsidiary Guarantors' liquidation proceeding, the subordination agreement under the 1993 Indenture does not apply because Section 3.02 concerns distributions if the Company files a reorganization proceeding. LDTC's view that all payments must come from the Company is incorrect. LDTC argues that if Article Three and Article Sixteen of the 1993 Indenture are construed properly, the 1993 Noteholders are subordinated only through Article Three and only if the Company, not a Subsidiary, is distributing assets through a dissolution, liquidation or reorganization. *See* Trial Exh. D-4 at Section 3.02 at 36. LDTC argues that Article

---

[31](...continued)
assets of any Subsidiary upon such Subsidiary's liquidation or reorganization (and the consequent rights of holders of the Notes to participate in those assets) will be subject to the prior claims of such Subsidiary's creditors, except to the extent that the Company may itself be a creditor with recognized claims against such Subsidiary or to the extent that the holders of the Not may be creditors with recognized claims against such Subsidiary pursuant to the terms of a subsidiary guarantee . . .
*Id.* at 9-10. Trial Exhibit D-9 which is the 1996 Prospectus is consistent. *See id.* at 17.

Sixteen operates to subordinate only debts of the Subsidiary Guarantors. However, even if

LDTC is correct that distributions through the subsidiaries' reorganization is not an indirect

payment as to the Company, the payment of Senior Indebtedness still is required to be made

by the Subsidiary Guarantors under Article Sixteen. Section 16.03 provides that on direct or

indirect distribution of the assets (or securities) of any Subsidiary Guarantor upon

reorganization of the Subsidiary Guarantor the holders of Senior Indebtedness of the

Subsidiary Guarantor are entitled to payment in full. The Notices designated the Guarantees

to be Senior Indebtedness of the Subsidiary Guarantors. See text, *supra*, and Trial Exh. D-14.

LDTC's argument is not well founded.

Section 16.02 is substantially the same as Section 3.01 and Section 16.03 is

substantially the same as Section 3.02 but Article Three applies to the Company and Article

Sixteen applies to the Subsidiary Guarantors. Both set forth obligations to pay Senior

Indebtedness first upon dissolution, liquidation or reorganization. Therefore, even if Article

Three does not apply, Article Sixteen does and LDTC's objections are overruled.

We find that the documents themselves, as well as the admissible evidence of the

circumstances surrounding the transactions at issue clearly evidence an intent that the

Subordinated Guarantees be subordinated to the Senior Guarantees.

**Liverpool Limited Partnership's objections to the joint plans**

The Liverpool Limited Partnership objected to confirmation stating:

> The Plans cannot be confirmed unless the distributions
> proposed therein account for the following:
> (i) The Subsidiary Guarantors' guarantees of the 1993
> Notes generally are not subordinated to their guarantees of the
> 1994 Notes and of KACC's $10^{7/8}$ % notes (1996 Notes"). The
> plain language of the indenture that governs the 1993 Notes . . .

28

expressly provides that the Subsidiary Guarantors' guarantees of the 1993 Notes are subordinated to downstream guarantees of their own subsidiaries' obligations, but not to upstream guarantees of their parent's (KACC's) obligations. Thus, the Subsidiary Guarantors upstream guarantees of the 1993 Notes generally are *pari passu* with the upstream guarantees of the 1994 and 1996 Notes.

(ii) Although the Subsidiary Guarantors' guarantees of the 1993, 1994, and 1996 Notes are generally *pari passu*, their guarantees of the 1994 Notes are senior to a limited extent – specifically, to the extent that the 1994 Notes were used to refinance the Debtors' then pre-existing obligations under a 1989 bank credit agreement . . . because the 1993 Indenture expressly provides that the guarantees of the 1993 Notes are subordinated to such refinancing indebtedness, and "all guarantees thereof." Thus, although the guarantees of the 1993 Notes generally are not subordinated to other upstream guarantees of KACC's obligations (including generally to the upstream guarantees of the 1994 and 1996 Notes), there is an express subordination in the 1993 Indenture to upstream guarantees of "refinancing" indebtedness.[32]

The Liverpool Limited Partnership's Objection to Confirmation of the Plans of Reorganization Proposed by the Subsidiary Guarantors, Dkt. No. 6508, at 1. However, it is clear from the documents that in 1993 it was contemplated that later issues of senior debt would be made. Mr. Sands' testimony, consistent with that of La Duc and Balsam in this regard, explains why this was so. *See* discussion of deposition of Theodore Sands, *supra*.[33]

_____

[32]Liverpool's argument regarding the unambiguous nature of the 1993 Indenture and its assertion that New York law bars consideration of extrinsic evidence when a document is unambiguous are the same as those raised by LDTC and they are likewise overruled. As we noted *supra*, New York law does not bar consideration of evidence concerning circumstances surrounding creation of unambiguous contracts. Likewise, we reject the argument that the evidence of surrounding circumstances does not support the plan proponents' view.

[33]LDTC and Liverpool also argue that a guarantee cannot fall within the definition of "Senior Indebtedness" because it is not an "assumption of debt." Assumption of debt is the function of a guarantee. The argument is devoid of merit.

The arguments raised by Liverpool are essentially the same as those relied on by LDTC. Liverpool notes that the plan proponents agree that clause (ii)(A)(5) ("all guarantees by such Person of any indebtedness referred to in this clause (ii)(A) of any Subsidiary of such Person or any Non-Affiliate Joint Venture of such Person") of the definition of Senior Indebtedness refers only to downstream guarantees but disputes the meaning of clause (ii)(A)(1) ("the principal of, premium, if any, and interest on all indebtedness of such Person for money borrowed (including all such indebtedness evidenced by notes, debentures or other securities issued for money, whether issued or assumed by such Person)"). Liverpool's position is that the reference to "indebtedness . . . for money borrowed" refers to all guarantees, denies that a guarantee of an obligation is an "assumption" of that obligation and points to the fact that there is no reference to guarantee in (ii)(A)(1). Liverpool is wrong. A guarantee of a debt is an assumption of the payment due on that obligation. A classic definition of "guarantee" is "[t]o assume responsibility for the . . . execution of." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 552 (1984). "Assume" is defined as "[t]o take upon oneself" and the example given is "*assume* the payments." *Id.* at 132 (emphasis in original). A document must be read as a whole and the court cannot take separate clauses out of context and assign a meaning thereto. *See generally ABS Partnership v. AirTran Airways, Inc.*, 765 N.Y.S.2d 616, 619 (N.Y. App. Div. 1st Dept.), *affirmed* 2003 WL 22391014 (N.Y. App. Div. 1st Dept. 2003).

Liverpool, as does LDTC, asserts that (ii)(A)(5) extends "Senior Indebtedness" only to certain types of guarantees by affiliates, i.e., downstream guarantees of subsidiaries and certain joint ventures, but argue that (ii)(A)(1) has no restrictions with respect to affiliation

30

with Debtors. This broad interpretation of clause (ii)(A)(1) would negate the specific limitations of (ii)(A)(5), the objectors contend. The reference in Section 3.01 to "all direct or indirect payments or distributions on or with respect to the Notes" and the reference in Section 16.02 to "all payments pursuant to the guaranty by each Subsidiary Guarantor" are not mutually exclusive in that Section 3.01 applies to the Company and Section 16.02 applies to subsidiaries. The term "Senior Indebtedness" applies specifically to "any Person" whether the debt is "heretofore Incurred or provided for or Incurred after the date hereof". "Person" is defined broadly and could include not only the Company but its subsidiaries and others.

### LDTC's objections to subordination issues raised by Liverpool

LDTC's position is consistent with Liverpool's in that they both assert that the 1994 Note Guarantees are not Senior Indebtedness. However, LDTC disagrees with Liverpool's assertion that $100 million of the 1994 Note Guarantees is senior to the 1993 Note Guarantees under the definition of "Senior Indebtedness" to the extent that definition includes "renewals, extensions, refundings, replacements, restructurings, refinancings, amendments and modifications." *See* Trial Exh. D-4, definition of "Senior Indebtedness" at ¶ (ii)(E) at Section 1.01. at 27-29. Liverpool asserts that because a Credit Agreement in 1994[34] replaced the 1989 Credit Agreement and because the revolving credit facility under the 1994 Credit Agreement was $100 million less than the commitment under the 1989 Credit Agreement, the Subsidiary Guarantors' exposure was reduced by $100 million. Consequently, in Liverpool's view, the 1994 guarantees constituted a refinancing of $100 million. That is, Liverpool agrees with

---

[34]We admitted the 1994 Credit Agreement, Trial Exh. D-16, for the limited purpose of completing the history of the credit financing. Tr. 4/27/05, Dkt. No. 6857, at 173-74.

LDTC except with respect to this $100 million. *See* Objection of [LDTC] to Subordination
Issues Raised by Liverpool . . ., Dkt. No. 6520, at 3. At the hearing on April 27, 2005,
Liverpool acknowledged that this issue would not be addressed unless the court ruled in
LDTC's favor. Tr. 4/27/05, Dkt. No. 6857, at 229. However, we address it briefly to make
clear that the 1994 Credit Agreement by its terms replaced the 1989 Credit agreement. At the
hearing we concluded that Liverpool's position was not supported – the 1994 Credit
Agreement replaced the 1989 Credit Agreement. It did nothing to the notes or guarantees.
*See* Tr. 4/27/05 at 256 (refinance issue is not part of subordination issue); *id.* at 264-65 ("the
[1994] credit agreement replaced the [1989] credit agreement"); *id.* at 266-67.

## LDTC's Fees and Expenses

LDTC also objected to the joint plans at issue because of the treatment provided
therein for its fees and expenses. However, the plans were amended to provide for payment of
the fees prior to distributions to noteholders, and at a hearing on December 19, 2005, the
parties submitted a consensual plan confirmation order which appears to resolve this issue.
The plan confirmation order was entered on December 20, 2005. *See* Dkt. No. 7983. To the
extent any remaining issues with respect to the fees and expenses of LDTC remain
unresolved, within ten days from the date of the order accompanying this Memorandum
Opinion, LDTC shall file a motion for reconsideration. If such a motion is filed it will be
heard at the hearing scheduled for January 10, 2006, at 9:00 a.m. in Pittsburgh, Pennsylvania.

For the foregoing reasons, we will sustain the plan proponents' position and overrule

the objections with respect to the subordination issues.  An appropriate order will be issued.

DATE: ___December 22, 2005___          *Judith K. Fitzgerald*

                                       Judith K. Fitzgerald
                                       United States Bankruptcy Judge

33

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re                                            :    Chapter 11
KAISER ALUMINUM CORPORATION, et al.,            :    Case No. 02-10429 (JKF)
Debtors.                                         :    Jointly Administered
                                                 :
                                                 :    Hearing Date: January 10, 2006
                                                 :
                                                 :    Related to D.I. 8008 and 8009
                                                 :

## ORDER GRANTING STAY PENDING APPEAL

Upon consideration of the Motion of Law Debenture Trust Company of New York for Continuation

of Stay Pending Appeal and for good cause shown, it is hereby

**ORDERED,** that (a) the Guaranty Decision[1] is hereby stayed pending resolution of LDTC's Appeal

thereof; and (b) the Disputed Funds shall continue to be held by the Distribution Trustee pending resolution

of the Appeal and further order of this Court.

**SO ORDERED** this ___ day of _____, 2006.


_____
The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge


---

[1]   All capitalized terms herein used above are defined in the Motion of Law Debenture Trust
Company of New York for Continuation of Stay Pending Appeal.

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br>KAISER ALUMINUM<br>CORPORATION,<br>　　　　　　Debtors. | ) Chapter 11<br>)<br>) Case No. 02-10429 (JKF)<br>)<br>)<br>) Hearing: January 10, 2005, at 9:00 a.m.<br>) **Related to: Docket No. 8049**<br>)<br>) |

## RESPONSE OF THE LIVERPOOL LIMITED PARTNERSHIP IN SUPPORT OF MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR CONTINUATION OF STAY PENDING APPEAL

The Liverpool Limited Partnership ("Liverpool")[1] supports the relief requested in the Motion of Law Debenture Trust Company of New York for Continuation of Stay Pending Appeal (the "Stay Motion"). Liverpool agrees that the stay should remain in effect for the reasons stated by Law Debenture.

This Court previously recognized that a premature distribution of disputed funds should not be allowed to "prejudice somebody else's rights to a distribution." Transcript of February 23, 2005 Hearing ("2/23/05 Transcript"), at 34. As this Court made clear:

> In all probability, if I'm the person who's doing the trial, I'm not going to permit an order – that may be subject to appeal – to moot out the rights of the parties to the distribution. I mean, that doesn't make a lot of sense. But, I'm not sure that that means that the whole plan can't go effective. It just means that the distributions on the sub-debt would have to be withheld, pending appeal . . . .

2/23/05 Transcript at 35-36.

---

[1] Liverpool holds 12-3/4% notes ("1993 Notes") and 9-7/8% notes that were issued by Kaiser Aluminum & Chemical Corporation and guaranteed by the debtors that have confirmed their plans of reorganization (the "Liquidating Debtors").

Liverpool concurs. The plans have gone (or will soon go) effective, and the *undisputed* funds can be distributed. However, the distribution of *disputed* funds should not occur until all appeals of the Guaranty Decision are resolved. "[O]therwise, the debtor would be making the distribution to parties that have not been determined, by way of a final order on the litigation, to be entitled to the distribution." 2/23/05 Transcript at 38. Withholding distribution of the disputed funds will ensure a full and fair appellate review of this Court's decision.

Distribution of the disputed funds before a final order is entered could lead to additional time-consuming and costly litigation. Were there to be a modification or reversal on appeal, the Liquidating Debtors would be forced to recover funds. Retaining the disputed funds in the estates, by contrast, would ensure that those funds are kept safe and would be available for distribution in accordance with whatever decision an appellate court may render. It is for this reason that plans of reorganization (including the Liquidating Debtors' own plans) routinely provide that no distributions will be made on account of a disputed claim until such time as the claim is allowed by a final order, including the completion of all appeals.

2

**WHEREFORE,** Liverpool respectfully requests that this Court grant the relief requested in the Stay Motion filed by Law Debenture Trust Company of New York, and such other and further relief as is just and proper.

POTTER ANDERSON & CORROON LLP

By *Rebecca S. Beste*

David J. Baldwin (No. 1010)
Rebecca S. Beste (No. 4154)
1313 North Market Street, 6th Floor
Hercules Building
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

Dated:  January 6, 2006

AND

**STUTMAN, TREISTER & GLATT, P.C.**
Isaac M. Pachulski
K. John Shaffer
Margreta M. Sundelin
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788

*Attorneys for The Liverpool Limited Partnership*

713836v 1

## CERTIFICATE OF SERVICE

I, Rebecca S. Beste, hereby certify that I am not less than 18 years of age and that service

of the below named pleading was made on January 6, 2006, upon the parties listed below, in the

manner indicated and upon the parties on the attached service list by electronic mail:

**RESPONSE OF THE LIVERPOOL LIMITED PARTNERSHIP IN SUPPORT OF
MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR
CONTINUATION OF STAY PENDING APPEAL**

**HAND DELIVERY**

Francis A. Monaco, Jr., Esq.
Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE  19801

**FACSIMILE & FIRST-CLASS MAIL**

Evan D. Flaschen, Esq.
Gregory W. Nye, Esq.
Bingham McCutchen, LLP
One State Street
Hartford, CT  06103

Under penalty of perjury, I declare that the forgoing is true and correct.

_Rebecca S. Beste_

Rebecca S. Beste, Esquire

713863

Kaiser Aluminum Corporation, et al., 02-10429 (JKF)
Bankruptcy Rule 2002 Service List as of December 8, 2005

Representing CII Carbon, L.L.C.
Karen C. Bifferato
Connolly Bove Lodge & Hutz LLP
P.O. Box 2207
The Nemours Building, 1007 North Orange
Street
Wilmington, DE 19801 USA
kbifferato@cblh.com

Representing Local Counsel for the Official
Committee of Unsecured Creditors
William P. Bowden
Ashby & Geddes
P.O. Box 1150
222 Delaware Ave.
Wilmington, DE 19899 USA
wbowden@ashby-geddes.com

Representing Microsoft Corporation and
Hydro Aluminum Jamaica
Noel C. Burnham
Montgomery, McCracken, Walker &
Rhoads, LLP
300 Delaware Avenue. Ste 750
Wilmington, DE 19801-6600 USA
nburnham@mmwr.com

Representing Pechiney World Trade USA,
Corp.
Tobey M. Daluz
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street 17th Floor
Wilmington, DE 19801
daluzt@ballardspahr.com

Representing Noranda Aluminum, Inc.
Michael D. DeBaecke
Blank Rome
1201 Market Street, Suite 800
Wilmington, DE 19801 USA
debaecke@blankrome.com

Representing Official Committee of
Asbestos Claimants
Marla R. Eskin
Mark T. Hurford
Campbell & Levine, LLC
800 King Street, Suite 300
Wilmington, DE 19801 USA
mre@camlev.com
mth@camlev.com

Gregg M. Galardi
Skadden Arps Slate Meagher & Flom
P.O. Box 636
One Rodney Square
Wilmington, DE 19899
mblanton@skadden.com

Representing AllState Insurance Company
f/k/a Northbrook Insurance Company
R. Karl Hill
SEITZ, VAN OGTROP & GREEN, P.A.
222 Delaware Ave.
Wilmington, DE 19899
khill@svglaw.com

Robert Jacobs
Jacobs & Crumplar, P.A.
P.O. Box 1271
2 East 7th Street
Wilmington, DE 19899
smaurer@dca.net

David Klauder
Richard M. Schepacarter
Office of the United States Trustee
844 King Street, Suite 2313 Lockbox 35
Wilmington, DE 19801 USA
david.klauder@usdoj.gov
Richard.Schepacarter@usdoj.gov

Representing Ronald Adams Contractors,
General Electric Capital Corporation
Kathleen M. Miller
Smith Katzenstein & Furlow LLP
P.O. Box 410
800 Delaware Avenue, 7th Floor
Wilmington, DE 19801 USA
kmiller@skfdelaware.com

Representing Law Debenture Trust
Company of New York
Francis A. Monaco
Monzack and Monaco, P.A.
P.O. Box 2031
1201 N. Orange Street, Suite 400
Wilmington, DE 19899
fmonaco@monlaw.com

Jami B. Nimeroff
Buchana Ingersoll PC
The Nemours Building, 1007 N. Oranage
Street, Suite 1110
Wilmington, DE 19801-1236
nimeroffjb@bipc.com

Representing Official Committee of Retired
Salaried Employees and Public Utility
District No. 1 of Clark County and
Affiliated FM Insurance Company
Frederick B. Rosner
Jaspan Schlesinger Hoffman LLP
913 N. Market Street, 12th Floor
Wilmington, DE 19801
frosner@jshllp-de.com

Ellen W. Slights
U.S. Attorney's Office
P.O. Box 2046
1201 Market Street, Suite 1100
Wilmington, DE 19899 USA
USADE.ecfbankruptcy@usdoj.gov

Representing Martin J. Murphy
Sharon Zieg
Timothy P. Cairns
Erin D. Edwards
Young Conaway Stargatt & Taylor
P.O. Box 391
The Brandywine Building, 1000 West St.,
17th Floor
Wilmington, DE 19801-0391 USA
szieg@ycst.com
tcairns@ycst.com
eedwards@ycst.com

John Donnan
Kaiser Aluminum Corporation
27422 Portola Parkway, Suite 350
Foothill Ranch, CA 92610-2831
john.donnan@kaiseraluminum.com

Representing Ancel Abadie, et al.
Julie A. Adroin
c/o Daniel Lawless
The Murray Law Firm
909 Poydras Street, Suite 2550
New Orleans, LA 70112-4000
dlawless@murray-lawfirm.com

Greg Badura
The CIT Group/Business Credit, Inc.
300 South Grand Avenue, Third Floor
Los Angeles, CA 90071
greg.badura@cit.com

Representing The Liverpool Limited
Partnership
David J. Baldwin
Laurie Selber Silverstein
Potter Anderson & Corroon LLP
P.O. Box 951
1313 N. Market Strett, 6th Floor
Wilmington, DE 19899
dbaldwin@potteranderson.com

Gary L. Barnhart
Missouri Dept. of Revenue
P.O. Box 475
301 West High Street, Room 670
Jefferson City, MO 65105-0475
deecf@dor.mo.gov

Representing Creditors' Committee
Lisa Beckerman
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
590 Madison Ave.
New York, NY 10022 USA
lbeckerman@akingump.com

Representing AllState Insurance Company,
as Sucessor in Interest to Northbrook Excess
and Surplus Company, f/ka Northbrook
Insurance Company
Brad A. Berish
Chad H. Gettleman
Adelman & Gettleman Ltd
53 West Jackson Blvd.
Chicago, IL 60604
bberish@ag-ltd.com

Kenneth S. Blumenthal
Rourke & Blumentahl
495 South Hight Street
Columbus, OH 43215
kblumenthal@randbllp.com

Nick Bowen
Jones Day
2727 N. Harwood St.
Dallas, TX 75201 USA
nbowen@jonesday.com

Representing Asbestos Plaintiffs
Alan R. Brayton
Christina C. Skubic
Brayton Purcell
222 Rush Landing Road
Novato, CA 94945 USA
bankruptcy@braytonlaw.com
bankruptcy@braytonlaw.com

Representing Century Indemnity Company,
Pacific Employers Insurance Company, and
Central National Insurance Company of
Omaha
Guy Cellucci
White and Williams, LLP
1800 One Liberty Plaza
Philadelphia, PA 19103-7395
celluccig@whiteandwilliams.com

Representing Transcontinental Insurance
Company
David C. Christian, II
Mohsin N. Khambati
Jason J. DeJoinker
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL 60606-5096 USA
dchristian@mwe.com
mkhambati@mwe.com
jdejonker@mwe.com

Representing Union Industrial Gas &
Supply d/b/a/ Doussan Industrial Gas &
Supply
D. Wade Cloud, Jr.
R. Mills
Hiersche, Hayward, Drakeley & Urbach,
P.C.
5303 Dallas Parkway, Suite 700
Addison, TX 75001 USA
wcloud@hhdulaw.com
rmills@hhdulaw.com

Jacob C. Cohn
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
jcohn@cozen.com

Securities & Exchange Commission
15th & Pennsylvania Avenue, N.W.
Washington, DC 20020
chairmanoffice@sec.gov

Representing Evanston Insurance Company
and Associated International Insurance
Company
Kevin J. Connors
Marshall, Dennehey, Warner,
Coleman & Goggin
P.O. Box 8888
1220 North Market Street, 5th Floor
Wilmington, DE 19899-8888
kconnors@mdwcg.com

Representing Bear, Stearns & Co., Inc.,
Citadel Equity Fund Ltd. and Citadel Credit
Trading Ltd.
David N. Crapo
Gibbons, Del Deo, Dolan, Griffinger &
Vecchione
One Riverfront Plaza
Newark, NJ 07102
Dcrapo@gibbonslaw.com

Representing National Union Fire Insurance
Company of Pittsburgh, PA
Michael S. Davis
Zeichner Ellman & Krause
575 Lexington Ave.
New York, NY 10022 USA
mdavis@zeklaw.com

Representing Debtors
Daniel J. DeFranceschi
Kimberly D. Newmarch
Richards, Layton & Finger, P.A.
P.O. Box 551
One Rodney Square
Wilmington, DE 19801 USA
defranceschi@rlf.com
newmarch@rlf.com

Katherine M. Determan
Phelps Dunbar LLP
Canal Place, Suite 2000 365 Canal Street
New Orleans, LA 70130-6534 USA
determak@phelps.com

Representing Harris County, City of
Houston, Houston ISD
John P. Dillman
Linebarger Goggan Blair
Pena & Sampson, LLP
P.O. Box 17428
1949 South I.H. 35 (78741)
Austin, TX 78760-7428 USA
houston_bankruptcy@publicans.com

Carl A. Eklund
Ballard Spahr Andrews & Ingersoll LLP
1225 17th Street, Suite 2300
Denver, CO 80202
eklundc@ballardspahr.com

Christopher G. Emch
C. Hick
Foster Pepper & Shefelman PLLC
1111 Third Avenue, Suite 3400
Seattle, WA 98101-3299 USA
emchc@foster.com
hickc@foster.com

Representing General Electric Company
Michael R. Enright
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103 USA
menright@rc.com

Representing Legal Representative for
Future Silica Claimants
Sander L. Esserman
Peter C. D'Apice
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street, Suite 2200
Dallas, TX 75201
esserman@sbep-law.com
dapice@sbep-law.com

Representing MAXXAM Inc.
Lisa Hill Fenning
Dewey Ballantine LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071 USA
lfenning@dbllp.com

Anne M. Ferazzi
Legal Representative for Future Silica
Claimants
11923 Winwood
Houston, TX 77024
ferazzi@mindspring.com

Janet Fitzpatrick
Unisys Corporation
P.O. Box 500, M/S E8-108
Unisys Way
Blue Bell, PA 19424
janet.fitzpatrick@unisys.com

Representing Law Debenture Trust
Company of New York
Evan D. Flaschen
Gregory W. Nye
Bingham McCutchen LLP
One State Street
Hartford, CT 06103
evan.flaschen@bingham.com
gregory.nye@bingham.com

Ryan A. Foster
Niki Rhodes
The Foster Law Firm P.L.L.C.
440 Louisiana, Suite 2100
Houston, TX 77002 USA
nikim@rfosterlaw.com

Representing Bank One Trust Company,
N.A.
Elizabeth J. Futrell
Jones, Walker, Waechter, Poitevent, Carrere
& Denegre, L.L.C.
201 St. Charles Avenue - 49th Floor
New Orleans, LA 70170 USA
efutrell@joneswalker.com

Representing The Bank of New York
James Gadsden
Carter, Ledyard & Milburn
2 Wall Street
New York, NY 10005-2072 USA
bankruptcy@clm.com

Representing International Union, United
Automobile Aerospace and Agricultural
Implement Workers of America
Niraj R. Ganatra
International Union, UAW
8000 E. Jefferson Avenue
Detroit, MI 48214 USA
Nganatra@uaw.net

Representing Bear, Stearns & Co., Inc.
James G. Gereghty
Bear, Stearns & Co., Inc.
383 Madison Avenue
New York, NY 10179 USA
jgereghty@bear.com

Representing Asbestos Plaintiffs
Charles E. Gibson, III
Attorney at Law
620 North Street, Suite 100
Jackson, MS 39202 USA
charles@cegibsonlawfirm.com

Representing Deutsche Bank Trust
Company, National Association
Kristin K. Going
Gardner Carton & Douglas LLP
1301 K Street, N.W., Suite 900, East Tower
Washington, DC 20005
kgoing@gcd.com

Representing Century Indemnity Company,
Pacific Employers Insurance Company, and
Centeral National Insurance Company of
Omaha and Ace Insurance Companies
Leonard P. Goldberger
Stevens & Lee
1818 Market Street, 29th Floor
Philadelphia, PA 19103 USA
lpg@stevenslee.com

Representing Attorney for the Debtor
Gregory M. Gordon
Jones Day
2727 North Harwood St.
Dallas, TX 75201 USA
gmgordon@jonesday.com

Representing MAXXAM Inc.
Alan Gover
Dewey Ballantine LLP
700 Louisiana, Suite 1900
Houston, TX 77002 USA
agover@dbllp.com

Representing Clark Public Utilities
Christopher Graham
Louis A. Curcio
Michael Muller
Thacher Proffitt
Two World Financial Center
New York, NY 10281
cgraham@tpwlaw.com
lcurcio@tpwlaw.com
mmuller@tpwlaw.com

Representing Avista Development
Corporation
Joel Gross
Arnold & Porter, LLP
555 Twelfth Street, N.W.
Washington, DC 20004
joel_gross@aporter.com

Representing Applera Corporation
Charles Heinzer
Coporate Counsel
Applera Corporation
301 Merritt 7
Norwalk, Co 06851-1070
heinzecj@applera.com

Representing Representative for Future
Silica Claimants
Daniel K. Hogan
1311 Delaware Avenue
Wilmington, DE 19806
dkhogan@dkhogan.com

Representing Official Committee of Retired
Employees
Frederick D. Holden, Jr.
Orrick, Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105-2669
fholden@orrick.com

Edwdard F. Houff
Leigh Ann Clifford
Jennifer Kane
Emergence Strategies LLC
1200 Smith Street, Suite 1600
Houston, TX 77002 USA
leighann.clifford@kaiseraluminum.com
jj.kane@kaiseraluminum.com

John Huige
Unisys Corporation
35550 Jeffers Court
Harrison Twp, MI 48045
john.huige@unisys.com

Representing Asbestos Plaintiffs
James F. Humphreys
J. David Cecil
James F. Humphreys & Associates, L.C.
United Center, Suite 800 500 Virginia
Street, East
Charleston, WV 25301
law@jfhumphreys.com
law@jfhumphreys.com

Jay Hurst
Assistant Attorney General, Office of the
Texas Attorney General, Bankruptcy &
Collections Division
P.O. Box 12548
300 West 15th Street, 8th Floor
Austin, TX 78701 USA
jay.hurst@oag.state.tx.us

Representing Official Committee of
Asbestos Claimants
Elihu Inselbuch
Rita Tobin
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
ei@capdale.com

Representing Deutsche Bank Trust
Company, National Association
Harold L. Kaplan
Mark F. Hebbeln
Gardner Carton & Douglas LLP
191 North Wacker Drive, Suite 3700
Chicago, IL 60606
hkaplan@gcd.com
mhebbeln@gcd.com

Representing United Steelworkers of
America
Susan E. Kaufman
Heiman, Gouge & Kaufman, LLP
800 King Street, Suite 303
Wilmington, De 19801
skaufman@hgkde.com

Representing Official Committee of
Unsecured Creditors
Brian A. Kilmer
Akin Gump Straus Hauer & Feld LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002-2720
bkilmer@akingump.com

Robert Dale Klein
Wharton Levin Ehrmantraut & Klein, P.A.
P.O. Box 551
104 West Street
Annapolis, MD 21404-0551
rdk@wlekn.com

Representing The Valspar Corporation
Faye Knowles
Fredrikson & Byron, P.A.
4000 Pillsbury Center 200 South St.
Minneapolis, MN 55402
fknowles@fredlaw.com

Darryl T. Landwehr
Landwehr & Hof
225 Baronne Street, Suite 2116
New Orleans, LA 70112
dtlandwehr@aol.com

Representing Certain Persons with Asbestos
Related Injuries
Keith Langston
Nix, Patterson & Roach, L.L.P.
205 Linda Drive
Daingerfield, TX 75638 USA
klangston@nixlawfirm.com

Linda S. Law
The City of Portland, City Attorney's Office
P.O. Box 0
1221 SW 4th Avenue, Room 430
Portland, OR 97204
llaw@ci.portland.or.us

Representing International Insurance
Company
Harry Lee
John F. O'Connor
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036
hlee@steptoe.com
joconnor@steptoe.com

Ari Lefkovits
Lazard Freres & Company LLC
30 Rockefeller Plaza, 61st Floor
New York, NY 10020
ari.lefkovits@lazard.com

Representing CII Carbon, L.L.C.
Dennis Leuer
Bancroft & McAlister LLP
555 California Street, Suite 5150
San Francisco, CA 94104-1716
dleuer@bamlaw.com

Representing Asbestos Plaintiffs
Peter Van N. Lockwood
Ronald R. Reinsel
Caplin & Drysdale, Chartered
One Thomas Circle, N.W., 1201 N.W.
Washington, DC 20005-5802
pvnl@capdale.com
rer@capdale.com

Representing Claims Agent
Kathleen M. Logan
Logan and Company
546 Valley Road
Upper Montclair, NJ 07043
klogan@loganandco.com

Representing Pechiney World Trade USA,
Corp.
Shelley Malinowski
Jenner & Block, LLC
One IBM Plaza
Chicago, IL 60611
smalinowski@jenner.com

Representing Houghton International
Glenn A. Manochi
Lightman, Manochi & Christensen
1520 Locust Street, Twelfth Floor
Philadelphia, PA 19102-4401
gmanochi@lightmanlaw.com

Representing Asbestos Plaintiffs
Paul M. Matheny
The Law Office of Peter G. Angelos, P.C.
5905 Harford Road
Baltimore, MD 21214
pmm@lawpga.com

Representing Certain Underwriters at
Lloyd's, London and Certain London Market
Insurers
Philip R. Matthews
Hancock Rothert & Bunshoft LLP
4 Embarcadero Center, Suite 300
San Francisco, CA 94111
PMATTHEWS@HRBLAW.COM

Representing Commissioner of Revenue for
the State of Tennessee
William McCormick
Attn: TN Attorney General's Office,
Bankruptcy Division
Office of the Attorney General
P.O. Box 20207
Nasville, TN 37202-0207
william.mccormick@state.tn.us

Representing Government Agency
Michael C. Miller
James L. Eggeman
Pension Benefits Guaranty Corporation,
Office of General Counsel
1200 K Street, N.W., Suite 340
Washington, DC 20005-4026
efile@pbgc.gov
eggeman.james@pbgc.gov

Representing Affiliated FM Insurance
Company
Robert B. Millner
Sonnenschein, Nath & Rosenthal
8000 Sears Tower
Chicago, IL 60606
rmillner@sonnenschein.com

Jon Molendo
PricewaterhouseCoopers LLP
19 Cornwall Court
Birmingham, B3 2DT England
jon.molendo@uk.pwc.com

B. Richard Moore, Jr.
Lemle & Kelleher, L.L.P.
Pan American Life Ctr., 601 Poydras Street,
21st Floor
New Orleans, LA 70130-6097
rmoore@lemle.com

Representing Hartford Accident & Idemnity
Company
Duane D. Morse
Wilmer Cutler Pickering LLP
1600 Tysons Blvd., 10th Floor
Tysons Corner, VA 22102 USA
duane.morse@wilmerhale.com

Representing Law Debenture Trust
Company of New York
Tina Niehold Moss
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue
New York, NY 10022-4441
tmoss@pryorcashman.com

Martin J. Murphy
Davis & Young
1700 Midland Blvd. 101 Prospect Ave.
Cleveland, OH 44115-1027
mmurphy@davisyoung.com

Representing Commonwealth of
Pennsylvania, Department of Environmental
Protection
Gail A. Myers
Assistant Counsel
Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222-4745
gaimyers@state.pa.us

Mike Nienstedt
Witherspoon, Kelley, Davenport & Toole
1100 US Bank Bldg., 422 West Riverside
Spokane, WA 99201-0300
mfn@wkdtlaw.com

Representing Certain asbestos claimants
Deidre W. Pacheco
Wilentz, Goldman & Spitzer
P.O. Box 10
90 Woodbridge Center Drive
Woodbridge, NJ 07095
dpacheco@wilentz.com

Representing The Liverpool Limited
Partnership
Isaac M. Pachulski
K. John Shaffer
Gina M. Najolia
Stutman, Treister & Glatt, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Ipachulski@Stutman.com
Jshaffer@Stutman.com

Representing Alcan International
Liz Freedman
Alcan Inc
1188 Sherbrooke Street West
Montreal, Quebec, -- Canada H3A3G2
liz.freedman@alcan.com

Representing Quality Machine
Manufacturing, Inc.
Kirk A. Patrick, III
Crawford Lewis, P.L.L.C.
P.O. Box 3656
450 Laurel Street
Baton Rouge, LA 70821-3656
kpatrick@d-plaw.com

Tracie Patton
Waters & Kraus, LLP
3219 McKinney Avenue, Suite 3000
Dallas, TX 75204
tpatton@awpk.com

Representing JPMorgan Chase, National
Association
Timothy R. Pohl
Chris L. Dickerson
Skadden, Arps, Slate, Meagher & Flom
333 West Wacker Drive
Chicago, IL 60606-1285
tpohl@skadden.com
cdickers@skadden.com

Representing Asbestos Plaintiffs
Timothy W. Porter
Patrick C. Malouf
Porter & Malouf, P.A.
P.O. Box 12768
4670 McWillie Drive
Jackson, MS 39236-2768
Jean@portermalouf.com
Jean@portermalouf.com

Representing Glencore LTD
Steven J. Reisman
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178-0061
sreisman@cm-p.com

Representing Certain Persons with
Asbestos-related injuries
Alan B. Rich
Baron & Budd, PC
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
arich@baronbudd.com

Representing International Association of
Machinists and Aerospace Workers
(IAMAW)
Marianne Goldstein Robbins
Previant, Goldberg, Uelmen, Grantz, Miller
& Brueggeman, S.C.
P.O. Box 12993
1555 N. RiverCenter Drive, Suite 202
Milwaukee, WI 53212
MGR@previant.com

Charles C. Robinson
Garvey Schubert & Barer
1191 2nd Avenue, 18th Floor
Seattle, WA 98101 USA
crobinson@gsblaw.com

Amy Sapp
Red Man Pipe & Supply Company
P.O. Box 35632
8023 East 63rd Place
Tulsa, OK 74153
amy.rinner@red-man.com

Representing MAXAAM
Eric D. Schwartz
Morris, Nichols Arsht & Tunnell
P.O. Box 1347
1201 N. Market Street
Wilimington, DE 19899
eschwartz@mnat.com

Representing United Steelworkers of
America
Richard M. Seltzer
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, NY 10036-6976
rseltzer@cwsny.com

Representing CII Carbon, LLC
Mark P. Seyler
Barkley & Thompson, L.C.
1515 Poydras Street, Suite 2350
New Orleans, LA 70112
mseyler@barkleythompson.com

Scott Howard Siegel
The CIT Group / Business Credit, Inc.
300 South Grand Avenue, 10th Floor
Los Angeles, CA 90071
scott.siegel@cit.com

Abby Propis Simms
Laura Bandini
National Labor Relations Board, Special
Litigation Branch
1099 14th St., N.W. Suite 8600
Washington, DC 20570
abby.simms@nlrb.gov
laura.bandini@nlrb.gov

Representing Fee Auditor
Warren H. Smith
Steve Bossay
Warren H. Smith & Associates, P.C.
Republic Center, 325 N. Saint Paul, Suite
1275
Dallas, TX 75201
feeaudit@whsmithlaw.com
slbossay@whsmithlaw.com

Representing Creditor
Walter Stickley
PQ Corporation
1200 W. Swedes Ford Road
Berwyn, PA 19312
kaiserbankruptcy@pqcorp.com

Walter A. Stringfellow
Stringfellow & Associates
444 South Flower St., 30th Floor
Los Angeles, CA 90071-2901
wstringfellow@stringlaw.com

Representing HSBC Bank USA
Debra SuDock
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
dsudock@kelleydrye.com

Representing PQ Corporation
Judy D. Thompson
Anna S. Gorman
Poyner & Spruill LLP
301 South College Street, Suite 2300
Charlotte, NC 28202
jdthompson@poynerspruill.com
agorman@poynerspruill.com

Representing Bonneville Power
Adminstration
Matthew J. Troy
United States Department of Justice Civil
Division
P.O. Box 875
1100 L Street, N.W., Room 10006 Ben
Franklin Station
Washington, DC 20044-0875
matthew.troy@usdoj.gov

Representing Vista Metals Corp.
Kaye E. Tucker
Tucker Law Firm
9440 Santa Monica Blvd., Suite 504
Beverly Hills, CA 90210
kaye@tuckerfirm.com

Representing Top 50 Unsecured Creditors
David M. Unseth
Bryan Cave LLP
One Metropolitan Square 2111 N.
Broadway, Suite 3600
St. Louis, MO 63102-2750
dmunseth@bryancave.com

Representing National Union Fire Insurance
Company of Pittsburgh, PA
Donald L Uttrich
Jackson & Campbell, P.C.
1120 20th Street, N.W. South Tower
Washington, DC 20036-3437
duttrich@jackscamp.com

Representing Top 50 Unsecured Creditors
Todd Ware
Producers Gas Sales, Inc.
P.O. Box 430
1500 Grandeville Road
Newark, OH 43055
tware@theenergycoop.com

W.G. Watkins
Jessica DeGroote
Forman Perry Watkins Krutz & Tardy LLP
200 One Jackson Place, 188 East Capitol St.
Jackson, MS 39201-2131
wwatkins@fpwk.com
jdegroote@fpwk.com

Representing Bear, Stearns & Co., Inc.,
Citadel Equity Fund Ltd. and Citadel Credit
Trading Ltd.
Duane D. Werb
Jennifer H. Unhoch
Werb & Sullivan
P.O. Box 25046
300 Delaware Avenue, 13th Floor
Wilmington, DE 19899
dwerb@werbsullivan.com

Representing Asbestos Creditors
Scott W. Wert
Foster & Sear, L.L.P.
524 E. Lamar Blvd., Suite 200
Arlington, TX 76011
swert@fostersear.com

Representing ACE Companies
Thomas G. Whalen, Jr.
Stevens & Lee, P.C.
1105 N. Market Street, 7th Floor
Wilmington, DE 19801
tgw@stevenslee.com

Clark T. Whitmore
Alain M. Baudry
Maslon Edelman Borman & Brand LLP
3300 Wells Fargo Center, 90 South Seventh
Street
Minneapolis, MN 55402
clark.whitmore@maslon.com
alain.baudry@maslon.com

Representing Alcoa Inc.
John M. Wilson
Alcoa, Inc.
390 Park Avenue
New York, NY 10022-4602
john.m.wilson@alcoa.com

Representing Attorney for the Debtor
Daniel P. Winikka
Jones Day
2727 North Harwood St.
Dallas, TX 75201
dpwinikka@jonesday.com

Representing Top 50 Unsecured Creditors
Mike Woods
IMCO Recycling of Idaho, Inc.
Central Tower at Williams Square 5215
North O'Connor Blvd., Suite 1500
Irving, TX 75039
mwoods@imcorecycling.com

Representing Daiichi Chuo Kisen Kaisha
Peter A. Zisser
Holland & Knight LLP
195 Broadway
New York, NY 10007
peter.zisser@hklaw.com

Representing Representative for Future
Silica Claimants
Steven A. Buxbaum, Esq.
Haynes & Boone, LLP
One Houston Center
1221 McKinney, Suite 2100
Houston TX 77010
steven.buxbaum@haynesboone.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 02-10429 (JKF) |
|  | ) | Chapter 11 |
| KAISER ALUMINUM CORPORATION, | ) | Jointly Administered |
| a Delaware corporation, et al., | ) |  |
|  | ) | **Relates to Docket No. 8049** |
| Debtors. | ) | **Hearing Date: 1/10/2006 at 10:00 a.m.** |
|  | ) | **Objection Deadline: 1/9/2006 at 10:00 a.m.** |

### STATEMENT OF DEUTSCHE BANK TRUST COMPANY, N.A., AS SUCCESSOR TRUSTEE, ON MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR CONTINUATION OF STAY PENDING APPEAL

Deutsche Bank Trust Company, National Association ("Deutsche Bank") serves as the successor indenture trustee under that certain Indenture dated as of February 17, 1994, as supplemented, by and between Kaiser Aluminum & Chemical Corporation ("KACC") and U.S. Bank National Association, as Trustee, pursuant to which KACC issued those certain 9-7/8% Senior Notes due 2002 (the "9-7/8% Senior Notes").[1]  Deutsche Bank files this statement (the "Statement") with respect to the Motion of Law Debenture Trust Company of New York for Continuation of Stay Pending Appeal (the "Motion").[2]  In support hereof, Deutsche Bank respectfully represents as follows:

---

[1]      U.S. Bank National Association ("U.S. Bank" and, collectively with Deutsche Bank, the "Senior Indenture Trustees") serves as indenture trustee for KACC's 10-7/8% Senior Notes due 2006 (the "10-7/8% Senior Notes" and, collectively with the 9-7/8% Senior Notes, the "Senior Notes").

[2]      LDTC serves as indenture trustee for KACC's 12-3/4% Senior Subordinated Notes (the "Subordinated Notes").

## I.    PRELIMINARY STATEMENT

In the Motion, LDTC[3] requests that this Court delay the distribution of over $200 million to holders of the Senior Notes to allow LDTC the opportunity to appeal this Court's decision on the Priority Dispute (as defined below).    Deutsche Bank understands that the Debtors, the Committee and U.S. Bank are filing objections to the Motion. Deutsche Bank, therefore, files this Statement to address certain matters raised in the Motion beyond the initial question of whether a stay should be granted.    In particular, if this Court grants the Motion and imposes a stay, Deutsche Bank submits that, contrary to LDTC's suggestion, Deutsche Bank, as indenture trustee, is both willing and able to hold the Disputed Funds in reserve and that it is in the interest of all parties, including in particular the holders of the Senior Notes as the prevailing parties in the Priority Dispute, that distributions should be held by the Senior Indenture Trustees pending further court order. On the other hand, if the Court denies the Motion and refuses to impose a stay, Deutsche Bank submits that any order denying the Motion should contain explicit direction to the Distribution Agent and the Senior Indenture Trustees with respect to distributions to holders of the Senior Notes.

## II.    BACKGROUND

On February 12, 2002, KACC and fourteen subsidiaries filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.    On March 15, 2002 and January 14, 2003 additional subsidiaries filed voluntary chapter 11 petitions (all debtors collectively, the "Debtors").    On February 11, 2005, the Subsidiary Guarantors filed their liquidating chapter 11 plans (the "Liquidating Plans").    On the same day supporting disclosure statements for the Plans were filed.

---

[3]      Capitalized terms used but not defined herein shall have the definitions ascribed to them in the Law Debenture Motion.

On February 28, 2005, this Court entered an order approving the disclosure statements for the Liquidating Plans.

LDTC filed an objection to confirmation of the Liquidating Plans, arguing, among other things, that the guarantees on the Subordinated Notes were not subordinated to the guarantees on the Senior Notes (the "Priority Dispute"). On December 20, 2005, the Court entered an order confirming the Liquidating Plans, as amended (the "Confirmation Order"). The Confirmation Order states that "the respective entitlement of the holders of Allowed Senior Note Claims to the [amounts in dispute in the Priority Dispute] shall be determined pursuant to, and subject to the entry on the docket of, a separate decision (the "Guaranty Decision") of the Court setting forth the Court's legal conclusions and findings concerning the [Priority Dispute] . . ." On December 22, 2005, the Court entered its Guaranty Decision and related Order, overruling the objections of LDTC to the Liquidating Plans and ruling in favor of the Senior Noteholders in the Priority Dispute. On January 3, 2006, LDTC filed the Motion, along with a Notice of Appeal of the Guaranty Decision. In the Motion, LDTC requests that, absent assurances by the Senior Indenture Trustees that the Disputed Funds will be held by them in interest bearing accounts, this Court order that the Disputed Funds be held by the Distribution Trustee pending resolution of LDTC's appeal of the Order.[4]

## III.    ARGUMENT

### A.    If the Court Grants the Motion, It Should Order that Distributions of the Disputed Funds be Made to the Senior Indenture Trustees and Held by the Senior Indenture Trustees Pending Further Court Order.

In the Motion, LDTC requests that the Court order that the distributions not be made to the Senior Indenture Trustees because they "have not provided any assurances that they will

---

[4]    The Liverpool Limited Partnership ("Liverpool") filed a response to the Motion on January 6, 2006, in which it expressed support for the relief sought in the Motion.

retain possession of the Disputed Funds." See Motion, p. 5. LDTC's fear is that the Senior Indenture Trustees will "make further distributions of the Disputed Funds to the holders of the [Senior Notes], many of whom are retail customers and other varied and widespread parties" and that a distribution to those holders may make it "more difficult to recover the monies in the event of a reversal on appeal." Id.

LDTC's concerns are unfounded. First, Deutsche Bank is willing to commit and hereby does commit to hold and not distribute to the holders of the 9-7/8% Senior Notes the share of the Disputed Funds allocable to the holders of the 9-7/8% Senior Notes absent a further court order. Thus, LDTC's fear that a distribution to Deutsche Bank would result in an automatic further distribution to the holders of the 9-7/8% Senior Notes without any further notice to LDTC has been addressed.

Second, permitting distribution to Deutsche Bank is appropriate under Rule 8005 of the Federal Rules of Bankruptcy Procedure. Rule 8005 provides, in part, that "the bankruptcy judge may . . . make any . . . appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Fed. R. Bankr. P. 8005. Deutsche Bank submits that permitting distributions to the Senior Indenture Trustees best serves to "protect the rights of all parties in interest." LDTC and its noteholders will not be prejudiced by such a distribution, as Deutsche Bank has agreed to hold the distributions until a further court order is entered authorizing such distributions. Furthermore, permitting distributions to the Senior Indenture Trustees will allow the Senior Noteholders to monitor how the Disputed Funds are invested by the Senior Indenture Trustees. As the prevailing parties in the Priority Dispute, the Senior Indenture Trustees, in consultation with known Senior Noteholders (and in particular the ad hoc committee of Senior Noteholders and Liverpool), should be afforded the ability to assure

4

reasonable investment decisions with respect to the Disputed Funds, particularly as those parties will be the ultimate beneficiaries of the return on the investments, absent a reversal of this Court's decision on appeal. Thus, Deutsche Bank submits that if the Court grants the Motion, distributions should be made to the Senior Indenture Trustees to be held and invested in investment vehicles chosen by the Senior Indenture Trustees after consultation with holders of the Senior Notes, pending further court order.

**B.     If this Court Denies the Motion, the Order Denying the Motion Should Contain Explicit Direction with Respect to the Distribution of the Disputed Funds.**

In the event this Court denies the Motion, the Court order denying the Motion should contain explicit direction to all parties with respect to further distributions. For example, the order should, at a minimum, explicitly authorize and direct the Distribution Trustee to make distributions to the Senior Indenture Trustees and authorize and direct the Senior Indenture Trustees to make further distributions to the holders of the Senior Notes. Providing explicit direction to all parties will further any Court order denying a stay and facilitate distributions to the ultimate beneficial holders of the Senior Notes. This direction to and the Distribution Trustee and Senior Indenture Trustees would be particularly important, as LDTC indicated in the Motion its intention to seek recovery of any amounts distributed to holders of the Senior Notes from the Senior Indenture Trustees if LDTC is ultimately successful on appeal. See Motion, p. 6 ("LDTC will seek recovery directly from the [Senior Indenture Trustees] as the parties who received the Disputed Funds from the Debtors' estates. . .").

5

## IV.    CONCLUSION

For the foregoing reasons, Deutsche Bank requests that (i) if the Court grants the Motion, it order that distributions be made to the Senior Indenture Trustees, on the conditions stated above, and (ii) if the Court denies the Motion, the order denying the Motion contain the explicit directions suggested above with respect to distributions to beneficial holders of the Senior Notes.

Dated: January 9, 2006

Carl N. Kunz, III (#3201)
MORRIS, JAMES HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Telephone:  (302) 888-6811
Facsimile: (302) 571-1750
Email:    ckunz@morrisjames.com

Harold L. Kaplan (Illinois Bar No. 3125293)
Mark F. Hebbeln (Illinois Bar No. 6272385)
GARDNER CARTON & DOUGLAS LLP
191 North Wacker Drive, Suite 3700
Chicago, IL  60606-1698
Telephone: (312) 569-1000
Facsimile: (312) 569-3000
Email:    hkaplan@gcd.com
Email:    mhebbeln@gcd.com

-- and --

Kristin K. Going (D.C. Bar No. 485070)
GARDNER CARTON & DOUGLAS LLP
1301 K Street, N.W.
Suite 900, East Tower
Washington, D.C. 20005
Telephone: (202) 230-5177
Facsimile: (202) 230-5377
Email:    kgoing@gcd.com

**Counsel to Deutsche Bank Trust Company,
National Association, as Successor Trustee
for the 9-7/8% Notes**