Thomas M. Kennedy
Susan M. Jennik
Serge Ambroise
Kennedy, Jennik & Murray, P.C.
113 University Place, 7th floor
New York, NY 10003
Tel. (212) 358-1500
Fax: (212) 358-0207
*Counsel for Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re: Chapter 11

MOTORS LIQUIDATION COMPANY,                                          Case No. 09-50026 (REG)

Debtor
-----------------------------------------------------------------X
IUE-CWA, Industrial Division of the
Communication Workers of America, AFL-CIO and
Larry E. Short, Leslie Cash, and Gary Robinson on
behalf of themselves, and all others similarly situated,

                     Plaintiffs,          **CLASS ACTION COMPLAINT**
                                                                   Adv. Pro. No. 15-_____ (REG)
      -v-

GENERAL MOTORS CO.,

                     Defendant.
-----------------------------------------------------------------X

## INTRODUCTION

1.      IUE-CWA, the Industrial Division of the Communication Workers of America, AFL-CIO ("IUE-CWA"), and Larry E. Short, Leslie Cash, and Gary Robinson, as Individual Plaintiffs, bring this action by their attorneys, Kennedy, Jennik and Murray, P.C., to:

        (a) enforce the terms of a Settlement Agreement reached on September 1, 2009 between IUE-CWA, Motors Liquidation Company and General Motors Co. ("GM") in this Chapter 11 proceeding pursuant to Section 301 of the Labor Management Relations

Act, 29 U.S.C. 185, which Settlement Agreement was approved by this Court on November 12, 2009;

(b) enforce the terms of an employee benefit plan ("the Plan") pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.,* that was established by and pursuant to the 2009 Settlement Agreement;

(c) obtain money damages based on the violations of the 2009 Settlement Agreement;

(d) obtain equitable relief to reform the Plan and to pay to Plan participants the benefits which should have been available to them if the Plan were maintained pursuant to the terms of the 2009 Settlement Agreement; and

(e) to recover the costs and attorneys' fees expended by the Plaintiffs in litigating this proceeding.

## **NATURE OF THE ADVERSARY PROCEEDING**

2.     The GM bankruptcy proceedings resulted in the closure of GM facilities employing thousands of workers that were represented by IUE-CWA for purposes of collective bargaining. As a result, thousands of IUE-CWA members lost well-paying jobs in the automobile industry and were forced to retire, in many cases before they reached age 65 and were eligible for Medicare.

3.     In the bankruptcy proceeding, IUE-CWA and GM negotiated a lengthy agreement entitled "Settlement Agreement Between and Among GMCo/MLC-IUE-CWA and USW Regarding Retiree Health Care, Life Insurance, Pension Top-Up, and Modification and GMCO Assumption Of MLC-IUE-CWA CBA" (Exhibit A of Dkt. No. 4241, which is Exhibit A of this Complaint) ("2009 Settlement Agreement"), which provided assorted severance, pension and

insurance benefits to partially ameliorate the significant suffering these proceedings imposed upon the affected IUE-CWA members. The 2009 Settlement Agreement was approved by the Court on November 12, 2009 (Dkt No. 4433).

4. A centerpiece of the 2009 Settlement Agreement was a plan for providing post-retirement health insurance benefits to pre-65 retired IUE-CWA members until they reached the eligibility age for Medicare. Given that these workers were typically at least age 55, it was understood by all parties to the 2009 Settlement Agreement, that without the coverage provided by the Plan, these individuals and their families would be deprived of the retirement medical insurance coverage they had worked for decades to obtain.

5. Paragraph 5 of the 2009 Settlement Agreement establishes the Plan for medical benefits for pre-65 GM retirees. The Plan has been in operation since 2009. GM has, however, made recent changes in the participant's share of the cost of that coverage that flatly violate the terms of the 2009 Settlement Agreement and render the Plan in many cases unaffordable. In simple terms, GM has stolen the benefit of a key element of the bargain that IUE-CWA struck with GM in the 2009 Settlement Agreement that was approved by this Court.

6. The 2009 Settlement Agreement stated that the Net Present Value of the GM commitment to fund the Plan was $467 million. When setting the economic terms of the Plan for participants, GM is required by the Settlement Agreement to "<u>deliver the Aggregate Net Present Value to participants over time</u>". This GM has failed and refused to do.

7. The hourly retiree plan design for the participating unions shows a dramatic decrease in benefits starting in 2014 and accelerating in 2016. For example:

    (a) The Family monthly premium required to be paid by participants went from $72 per month in 2015 to $133 per month in 2016.

3

(b) The Family annual deductible went from $2,500 in 2014 to $5,000 in 2015 and 2016.

(c) The Family out of pocket maximum went from $3,500 in 2013 to $7,000 in 2014 and 2015 and to $8,000 in 2016.

8. As a result of these Plan changes unilaterally instituted by GM, a participant with family coverage in the Plan in 2016 will be required to pay annual premiums of $1,596 to participate in the Plan, will be required to satisfy an annual deductible of $5,000 and will be required to pay co-pays for benefits until he or she hits a total of $8,000 for a total annual financial exposure under the Plan of $14,596. In 2013, the same calculation for family coverage under the Plan included premium costs of $1,260 for premiums, $2,500 in annual deductible and $3,500 in out of pocket limits for a total financial exposure under the Plan of $7,260. The costs GM has imposed on participants with family coverage under the Plan have doubled since 2013 to a now unaffordable level.

9. On information and belief, GM now projects that as currently constituted, the Plan is projected to leave unspent $95 million of the $467 million that was required to be delivered to participants in the Plan. GM is failing and refusing to provide these participants the benefits to which GM has agreed and, unless this Complaint provides relief, will continue to do so in the future in at least the present value amount of $95,000,000.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the Complaint pursuant to 28 U.S.C. §§ 1334(b) and 2201.

11. This adversary proceeding is related to *In re Motors Liquidation Co.*, 09-50026 (REG), Chapter 11, in the United States Bankruptcy Court, Southern District of New York.

12. The 2009 Settlement Agreement provides, at paragraph 14, that "Any controversy or dispute arising out of or relating to, or involving the enforcement, implementation, application or interpretation of this Settlement Agreement may be asserted only by GMCo, MLC, IUE-CWA or USW. The Order approving this Settlement Agreement will provide that the Bankruptcy Court will retain jurisdiction to resolve any disputes regarding the enforcement, implementation, application or interpretation of this Settlement Agreement." (Dkt. No. 4241, Exhibit A at p.12.)

13. The November 12, 2009 Order approving the 2009 Settlement Agreement provided in its un-numbered final decretal paragraph that the Court would retain jurisdiction to resolve any disputes concerning the 2009 Settlement Agreement. (Dkt. No. 4433.) This Court retains the power to enter all orders necessary to administer this estate under Bankruptcy Rule 3020(d).

14. This Complaint is brought pursuant to Fed. R. Bankr. P. 7001 (1), (7), and (9), and is a core proceeding under 28 U.S.C. 157(b)(2), including subsections (A), (N), and (O) thereof.

15. Venue of the Complaint in the Southern District of New York is proper pursuant to 28 U.S.C. § 1409(a).

**PARTIES**

16. IUE-CWA is a labor organization affiliated with the Communication Workers of America, AFL-CIO. IUE-CWA is located at 2701 Dryden Avenue, Dayton, Ohio 45439.

17. Individual Plaintiff Larry E. Short resides at 146 Lake Forest Dr., West Carrollton, OH 45449 and is a participant in the Plan.

18. Individual Plaintiff Leslie Cash resides at 1441 Newton Ave., Dayton, OH 45406 and is a participant in the Plan.

19.     Individual Plaintiff Gary Robinson resides at 8 Hathaway Commons Dr., Lebanon, OH 45036 and is a participant in the Plan.

20.     Defendant General Motors Co. ("GM") is a corporation formed under the laws of Delaware with its principal place of business located at 300 Renaissance Center, Detroit, Michigan 48243. GM was incorporated in 2009 and, on July 10, 2009, acquired substantially all assets and assumed certain liabilities of General Motors Corporation through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code.

## CLASS ACTION ALLEGATIONS

21.     The Individual Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), as incorporated by Fed. R. Bankr. P. 7023 (the "Bankruptcy Rules"). Plaintiffs seek to represent a class initially defined as: "All participants in the GM Pre-65 Retiree Medical Plan established pursuant to the 2009 Settlement Agreement at any time since January 1, 2013."

22.     The Class consists of more than 5,000 Plan participants and is so numerous that joinder of all members is impracticable.

23.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because all of the participants in the Plan have the same basis for their claims for relief.

24.     The Class Representatives' claims are typical of the claims of the Class. As alleged herein, the Class Representatives and members of the Class ("Class Members") all sustained damages arising out of GM's course of conduct, applying to all of them, of failing and refusing to implement Plan premium rates, deductibles and out of pocket limits so as to fully expend the $467 million that GM is required to deliver to participants in the Plan.

25.     There are questions of law and fact common to the Class, including but not

limited to:

    (a)    Whether GM has violated the terms of the 2009 Settlement Agreement by implementing Plan premium rates, deductibles and out of pocket limits which will not result in participants receiving the full Net Aggregate Present Value of $467 million dollars which is required by the 2009 Settlement Agreement;

    (b)    Whether GM has breached its fiduciary obligations under ERISA by establishing Plan premium rates, deductibles and out-of-pocket limits for participants in the Plan in a manner that will deprive those participants of the benefits of the Net Aggregate Present Value of $467 million dollars;

    (c)    Whether the Plan should be reformed to provide to participants of the Plan premium rates, deductibles and out-of-pocket limits that over time will deliver to Participants the Net Aggregate Present Value of $467 million dollars required by the 2009 Settlement Agreement.

26.    The Class Members have a high degree of similarity and are cohesive. The Class representatives were members of the IUE-CWA and support its efforts to secure compliance with the 2009 Settlement Agreement. The Class Representatives anticipate no difficulty in the management of this matter as a class action and will fairly and adequately represent the interests of the Class.

27.    Class action status is also warranted under Fed. R. Civ. P. 23(b)(2) and Fed. R. Bankr. P. 7023 because GM has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**FACTUAL BACKGROUND**

28.     The 2009 Settlement Agreement was reached after extensive negotiations between IUE-CWA, Motors Liquidation and GM to address the loss of thousands of jobs held by employees represented by IUE-CWA caused by the GM bankruptcy.  The 2009 Settlement Agreement resolves complicated issues relating to: (a) topping up the pensions for employees of Delphi Corp. who were subject to a GM guarantee of their pensions to reflect lower PBGC replacement pensions; (b) allowing continued accrual of GM pension credit for Delphi Corp. employees subject to the GM guarantee; (c) allowing a $1,000,000,000 claim to IUE-CWA (and other unions) as compensation for GM and Delphi Post-65 retirees who lost retiree health and life insurance benefits for themselves and their surviving spouses and dependents; and (d) establishing a retiree health care plan to be effective initially from July 10, 2009 to December 31, 2009 and then going forward on and after January 1, 2010.

29.     The text of paragraph 5 of the 2009 Settlement Agreement creates a retiree benefits plan to be effective January 1, 2010 and provides that the total value of health care benefits under this Settlement Agreement "is limited to an aggregate net present benefit value of $467 million ("Aggregate Net Present Value") with respect to all eligible IUE-CWA, USW and Splinter Union participants..."  But the text is also clear that GM is obligated to deliver to Plan participants the full value of the $467 million Aggregate Net Present Value of GM's mandatory contribution to the Plan: "GMCo <u>shall deliver</u> the Aggregate Net Present Value to participants over time reduced on a proportionate basis with respect to Splinter Unions that elect not to participate and by amounts paid in accordance with Paragraph 5(f) ("Adjusted Value")." (Dkt. No. 4241, Exhibit A paragraph 5(b) at p.7.) (Emphasis added.)

30. To be sure, the 2009 Settlement Agreement establishes yearly caps on the per capita contribution that GM is obligated to make to fund the Plan and a process for adjusting the Plan's financial terms to re-coup expenditures by GM in excess of those adjusted yearly caps. (Dkt. No. 4241, Exhibit A paragraph 5(b) at p.7.) But GM is not adjusting those yearly caps on per participant contributions to take account of its obligation to "deliver the aggregate net present value to participants over time" as required by the 2009 Settlement Agreement.

31. Since the Plan was implemented on January 1, 2010, GM has made changes each year in the terms of the Plan. GM has unilaterally implemented changes to the monthly premiums required to participate in the Plan, deductibles that must first be paid before the Plan begins paying benefits and out-of-pocket limits on participant costs that have rendered the Plan unaffordable to GM retirees.

32. The design for the Plan for the participating unions shows a dramatic increase in the cost to participants in the Plan starting in 2014 and accelerating in 2016. For example:

    (a) The Family monthly premium went from $72 per month in 2015 to $133 per month in 2016.

    (b) The Family annual deductible went from $2,500 in 2014 to $5,000 in 2015 and 2016.

    (c) The Family out of pocket maximum went from $3,500 in 2013 to $7,000 in 2014 and 2015 and to $8,000 in 2016.

33. As a result of these Plan changes unilaterally instituted by GM, a participant with family coverage in the Plan will be required to pay annual premiums of $1,596 to participate in the Plan, will be required to satisfy an annual deductible of $5,000 and will be required to pay co-pays for benefits until he or she hits a total of $8,000 for a total annual financial exposure

9

under the Plan of $14,596. In 2013, the same calculation for family coverage under the Plan included premium costs of $1,260 for premiums, $2,500 in annual deductible, and $3,500 in out of pocket limits for a total financial exposure under the Plan of $7,260. The GM-imposed cost to participants with family coverage under the Plan has doubled since 2013 to a now unaffordable level.

34. The key Plan provisions that govern Plan cost to participants have steadily gotten more onerous since 2013. The chart below identifies the plan term and the year in which it was effective:

| Plan term | Category of Coverage | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|
| Monthly contributions | Single | $35 | $35 | $24 | $44 |
|  | 2 Party | $70 | $70 | $48 | $88 |
|  | Family | $105 | $105 | $72 | $133 |
| Annual Deductible | Single | $1,250 | $2,500 | $2,500 | $3,000 |
|  | 2 Party | $2,500 | $5,000 | $5,000 | $6,000 |
|  | Family | $2,500 | $5,000 | $5,000 | $6,000 |
| Co-Insurance | In Network | 10% | 20% | 20% | 20% |
|  | Out of Network | 20% | 40% | 40% | 40% |
| Out of Pocket Maximum | Single | $1,750 | $3,500 | $3,500 | $4,000 |
|  | 2 Party | $3,500 | $7,000 | $7,000 | $8,000 |
|  | Family | $7,000 | $7,000 | $7,000 | $8,000 |

35. GM is rendering the critical contractual language that "GM shall deliver the Aggregate Net Present Value to participants" over time a nullity by relying upon the yearly cap formula to drive Plan costs upward each year to create an actuarial death spiral in which only the sicker and more medically needy participants will continue in the Plan, forcing higher and higher participant costs each year. GM's current projections will leave unspent $95 million dollars of the $467 million dollars GM was obligated by the 2009 Settlement Agreement to deliver to participants over time.

10

36. Paragraph 5(e) of the 2009 Settlement Agreement entitles the IUE-CWA and other unions to be members of a consultative committee with GM concerning the terms of the Plan. The 2009 Settlement Agreement severely limits the ability of this committee to impact GM's decisions regarding Plan terms:

> If created, GMCo will advise the advisory committee reasonably prior to the implementation of any such adjustments of anticipated plan design adjustments deemed necessary to maintain benefit coverages within the Cap along with its rationale for any such adjustments. The advisory committee may provide advice and counsel with respect to any such adjustments, provided that GMCo may in its sole discretion accept or reject any such advice and that the process of involving the advisory committee shall not delay the ordinary and customary implementation of plan design alterations deemed necessary by GMCo to reflect the constraints of the Cap.
> (Dkt. No. 4241, Exhibit A paragraph 5(e) at p.8).

37. As a consequence, although IUE-CWA has expressed its opposition to GM regarding these unilaterally adopted Plan changes, it cannot prevent these changes to the terms of the Plan other than by this action to enforce the terms of the 2009 Settlement Agreement and the Plan.

38. The lack of full transparency by GM in connection with the Plan has violated the 2009 Settlement Agreement and damaged the Participants in other ways as well. Paragraph 5(d) of the 2009 Settlement Agreement states that "GMCo will bear all costs of plan administration" and the parties intended by that statement that administrative costs for the Plan would not be charged against the $467 million dollar Aggregate Net Present Value that GM is required to deliver to Plan participants.

39. From 2009 to 2014, however, GM actuaries charged GM's costs of plan administration against the yearly Aggregate Net Present Value calculations. While in 2015, it appears that this plain error was remedied by removing the costs of Plan administration from the Aggregate Net Present Value of the Plan for the years 2010 through 2014, the GM actuaries are

11

continuing to deduct from the Aggregate Net Present Value of the Plan GM's cost of administering the Plan for the period July 1, 2009 through December 31, 2009.

40. The Net Aggregate Present Remaining Value of the Plan was $223.5 million as of December 31, 2014, an estimated $210.3 million as of December 31, 2015 and an estimated $200.3 million as of December 31, 2016.

## FIRST CAUSE OF ACTION

### (LABOR MANAGEMENT RELATIONS ACT SECTION 301) (ENFORCEMENT OF THE COLLECTIVE BARGAINING AGREEMENT)

41. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 39, as though fully set forth herein.

42. The IUE-CWA has a right to enforce the 2009 Settlement Agreement under Section 301 of the LMRA, 29 U.S.C. § 185.

43. GM has breached the 2009 Settlement Agreement by failing and refusing to establish the Plan premium rates, deductibles and out-of-pocket limits at rates that will cause GM to deliver to participants the full $467 million Net Aggregate Present Value established by the 2009 Settlement Agreement as GM's contribution to fund these benefits.

44. The IUE-CWA-represented retirees have been damaged by this breach by being required to pay unnecessarily high monthly premiums for coverage, by being required to satisfy unnecessarily high deductibles to obtain coverage under the Plan and by being required to meet unnecessarily high out of pocket limits before the Plan covers 100% of the cost of covered medical expenses.

## SECOND CAUSE OF ACTION

### (EMPLOYEE RETIREMENT INCOME SECURITY ACT) (ENFORCEMENT AND CLARIFICATION OF THE TERMS OF THE PLAN)

12

45. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 43, as though fully set forth herein.

46. The Individual Plaintiffs on their own behalf and on behalf of the Class they represent, have a right to enforce the terms of the Plan under ERISA at 29 U.S.C. § 1132(a)(1)(b), to recover benefits due to them under the terms of the Plan, to enforce their rights under the terms of the Plan, and to clarify their rights to future benefits under the terms of the Plan.

47. The Individual Plaintiffs, on their own behalf and on behalf of the Class they represent, have a right to enforce their rights under the terms of the Plan and to recover from GM the value of the Plan benefits including the premiums, deductibles and out of pocket limits that would have been established for the Plan since January 1, 2013 if GM had been fulfilling its obligation to deliver to Plan participants over time the $467 million Net Aggregate Present Value of its commitment to fund the Plan.

48. The Individual Participants, on their own behalf and on behalf of the Class they represent, have a right to clarify the terms of the Plan, and to recover from GM the value of the Plan benefits, including the premiums, deductibles and out-of-pocket limits for the Plan that should have been established in the past and will be established in the future so as to cause GM to deliver to Plan participants over time the $467 million Net Aggregate Present Value of GM's commitment to fund the Plan.

### THIRD CAUSE OF ACTION

**(EMPLOYEE RETIREMENT INCOME SECURITY ACT)**
**(REFORMATION OF THE PLAN)**

49. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 47, as though fully set forth herein.

50. The Individual Plaintiffs, on their own behalf and on behalf of the Class they represent, demand, pursuant to 29 U.S.C. § 1132 (a)(1) and (3), appropriate equitable relief to reform the terms of the Plan including the premiums, deductibles and out-of-pocket limits for the Plan so as to cause GM to deliver to Plan participants over time the $467 million Net Aggregate Present Value of its commitment to fund the Plan.

51. The Individual Plaintiffs, on their own behalf and on behalf of the Class they represent, also demand reformation of the terms of the Plan, pursuant to U.S.C. § 1132 (a)(1) and (3), to prevent GM from again imposing onerous and unnecessary costs on participants by requiring that GM refrain from imposing any additional costs upon participants after the reformation proposed in paragraph 49, by requiring that prior to imposing any changes in Plan benefits GM obtain a ruling from a neutral arbitrator, in a proceeding in which the IUE-CWA shall have a full opportunity to participate as a party to protect the interests of the participants, confirming that any changes to Plan terms, including administration costs, benefits, premiums, deductibles, and out of pocket limits for the Plan, will cause GM to deliver to Plan participants over time the $467 million Net Aggregate Present Value of its commitment to fund the Plan.

## FOURTH CAUSE OF ACTION

### (LMRA SECTION 301 AND ERISA SECTION 502(A)(3))
### (UNJUST ENRICHMENT)

52. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 50, as though fully set forth herein.

53. GM is a fiduciary of the Plan within the meaning of ERISA Section 1001(16). GM has a fiduciary obligation to deliver to participants the full $467 million Net Aggregate

14

Present Value established by the 2009 Settlement Agreement as GM's contribution to fund these benefits.

54. GM has a contractual obligation under the 2009 Settlement Agreement to deliver to participants the full $467 million Net Aggregate Present Value established by the 2009 Settlement Agreement as GM's contribution to fund these benefits.

55. GM is planning on keeping for itself and not delivering to Plan participants at least $95.2 million of the $467 million Net Aggregate Present Value established by the 2009 Settlement Agreement.

56. GM is being unjustly enriched by its retention of the projected $95.2 million dollars that it was required to deliver to Plan participants.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Bankruptcy Court enter judgment against GM and award the following relief:

1. On the first cause of action under the Collective Bargaining Agreement, damages to all IUE-CWA-represented retirees that have been damaged by GM's failure and refusal to determine Plan terms, including the Plan premiums, deductibles, and out-of-pocket limits, so as to cause GM to deliver to Plan participants over time the $467 million Net Aggregate Present Value of its commitment to fund the Plan;

2. On the second cause of action under ERISA, (i) damages to all Plan participants that have been damaged by GM's failure and refusal to establish Plan terms, including the Plan premiums, deductibles, and out-of-pocket limits, so as to cause GM to deliver to Plan participants over time the $467 million Net Aggregate Present Value of its commitment to fund the Plan; and (ii) a clarification that the terms of the Plan, including the

premiums, deductibles, and out-of-pocket limits for the Plan, must be established so as to cause GM to deliver to Plan participants over time the $467 million Net Aggregate Present Value of its commitment to fund the Plan;

    3.    On the third cause of action under ERISA for appropriate equitable relief, (i) an Order reforming the terms of the Plan, including the premiums, deductibles, and out-of-pocket limits for the Plan, so as to cause GM to deliver to Plan participants over time the $467 million Net Aggregate Present Value of its commitment to fund the Plan; and (ii) reformation of the terms of the Plan to prevent GM from again imposing onerous and unnecessary costs on Participants by requiring that GM obtain a ruling from a neutral arbitrator, in a proceeding in which the IUE-CWA shall have a full opportunity to participate as a party, with its costs of such participation being paid by GM, to protect the interests of the Participants, prior to imposing any changes in Plan benefits, confirming that any changes to Plan terms, including the premiums, deductibles, and out-of-pocket limits for the Plan, will cause GM to deliver to Plan participants over time the $467 million Net Aggregate Present Value of its commitment to fund the Plan.

    4.    On the fourth cause of action, a judgment in favor of the IUE-CWA and the Individual Plaintiffs, on their own behalf and on behalf of the Class they represent, and against GM for at least $95.2 million dollars as disgorgement of the amount GM is currently planning on withholding from Plan participants.

    5.    Awarding to Plaintiffs the costs of this action, including reasonable attorneys' fees.

    6.    On all claims, awarding such other, further or different relief as is just and proper.

Dated: New York, New York
October 30, 2015

      Respectfully submitted,
      Kennedy, Jennik & Murray, P.C.
      *Counsel for Plaintiffs*


      By: <u>/s/ Thomas M. Kennedy</u>
          Thomas M. Kennedy
          Susan M. Jennik
          Serge Ambroise
      113 University Place, 7th floor
      New York, NY 10003
      Tel. (212) 358-1500
      Fax: (212) 358-0207
      tkennedy@kjmlabor.com
      sjennik@kjmlabor.com
      sambroise@kjmlabor.com