Daryl Dunsmore
AD6237 C3A 150
Box 32200
Stockton Ca 95213.

UNITED STATES BANKRUPTY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE                                    Case 09-50026 (REG)

Motors Liquidation
Company etol

IGNITION switch litigation

Daryl Dunsmore
Plaintiff

          V

New GMC Et al
Defendants

                    Motion for Relief
                    from stay 362(a)
                    (11 USCS 362 (a)
                    Right to intervene
                    Rule 2018 and
                    order to protect
                    My Rights Rule 8007 (E)(2)

     Plaintiff Motions for Relief from stay
362(e) which such stay is violating plaintiffs

                                        1 of 2

1  Due process rights and Moves This
2  Court to issue appropriate order to protect
3  My rights under Rule 8007 (e)(2) as a
4  real party in interest

6  To be heard and obtain Constitutionally
7  Mandated Discovery for production in
8  Plaintiff writ of Habeas concerning actual
9  innocence of which The Defendants have
10  knowledge of and Concealing by using
11  this court as a platform for immunity
12  of Criminal actions against a Defendant
13  adult

25  I Declare under penalty of perjury under
26  The Laws of The State of California
27                          11/17/15  Da/ D e

                                    2 of 2

Daryl Dunsmore
AO6237  CJA 150
Box 32200
Stockton Ca 95213

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

W RE
Motors Liquidation
Company et al
IGNition Switch litigation

Daryl Dunsmore
Plaintiff
        V
New GMC et al
Defendants

Case 09-50026 (REG)

Table of Contents
and Authorities in
support of objection
or reply Brief

Penal code 368 (a),(b)(1),(f)    — — —    1, 2
                Contents
motion — — —    — — —    — 4 pages
memorandum — —    — — — —    2 pages
                Lodgments
Exhibit A
Disability Certificates — — — —    — 3 pages
Brief Reply — — — — —    — 7 pages

11/17/15  DD
1 of 1

1  Darryl Dunsmore
2  AD6237 C3A 150
3  Box 32200
4  Stockton Ca 95213

8  UNITED STATES BANKRUPTCY COURT
9  SOUTHERN DISTRICT of NEW YORK
10  IN RE
11  Motors Liquidation                    Case 09-50026 REG
12  Company et al
13  Ignition Switch litigation
14  Darryl Dunsmore
15  Plaintiff
16          V
17  NEW GMC et al
18  Defendants

20  Objection To
21  General Motors
22  Reply Brief Concerning
23  Punitive Damage awards
24  for Plaintiffs

25  This plaintiff individually and
26  independantly objects To Defendants

1 of 4

Reply Brief arguments concerning
punitive Damage awards

First off New GMC as They refer
to them selfs are attempting to use This
Court as a platform for immunity of
Their present and Past Criminal activities
Since the Sale turned (The 363 sale)

This plaintiffs complaint Case FCS045638
Solano Superior Court Ca Complains That
if The Defendants had not Concealed The
acts of old GMC as They Continue
to do as of Date; plaintiff would
not have been wrongly Convicted in
2010 after The 363 sale
Yet Defendants at this very moment
are using This court and The Superior
Court of Solano To Conceal Exculpatory
Evidence That will exonerate plaintiff
Having been informed of pending proceedings
in the federal Southern District of Ca
plaintiffs writ of Habeas 001193 BPC PCC
Continue To Deprive plaintiff of
Constitutionally Mandated Discovery and
use These Courts as a platform for

2 of 4

1  immunity of Those criminal acts
2  in Violation of California Penal Code
3  133, 134, 135

5    Defendants arguments fail and Liability
6  protections were Voided The Moment They
7  decided To Conceal and abet The
8  principles Criminal actions and Misconduct
9  of old GMC

11    If They are no part of GMC actions
12  (old GMC) why are They providing Them
13  with Legal protection and argument

15    For New GMC Argue in its Brief
16  Page 10 Sec (2) That it cant be responsible
17  for knowledge for purported events That
18  took place at old GMC is unbelievable

20    So The Defendants claim here is
21  basically That if They new a Murder
22  occurred at old GMC and didnt tell
23  any one but was later caught and
24  found out to have knowledge Their
25  not criminally liable for not telling
26  any one

                                    3of4

That's the biggest hogwash argument
I have ever heard

New GMC is responsible period They
day They became aware of The issues
They need to step up and take responsibility
for every moment They continue to Conceal
and with hold Constitutionally Mandated
Discovery from This plaintiff They
should not only pay punitive Damages
to This plaintiff They should pay
Trebble as well from This day forward
as This plaintiff is informing Them he
is an independant adult within The
meaning of Penal Code 368 of California

I Declare under The penalty of perjury
under The Laws of The State of California
is true

11/17/15          D-t-De

4 of 4

1  Darryl Dunsmor
2  AD6277  C3A 150
3  Box 32200
4  Stockton Ca 95213
5
6
7
8  UNITED STATES BANKRUPTCY COURT
9  SOUTHERN DISTRICT OF NEW YORK
10 IN RE                          Case 09-50026 (REG)
11 Motors Liquidation
12 Company et al
13 IGNItion Switch Litigation
14 Darryl Dunsmor
15 Plaintiff
16      V
17 New GMC et al
18 Defendants
19            Memorandum of Points
20            and Authorities in
21            Support of Objection
22            of Defendants Reply
23            Brief on Punitive
24            Damages
25    California Penal Code 368(a)(The Legislature
26 finds and Declares That crimes against
27 elders and Dependant adults are Deserving
28 of special Consideration and protection

1 of 2

1  California Penal Code 368 (b)(1) (any Person
2  who willfully causes to Suffer or inflicts
3  unjustifiable physical pain and Mental Suffering)
4  (or to be place in situation where health
5  is endangered) (is punishable by imprisonment
6  for 2,3,4 years)

7

8  California Penal Code 368 (f) (any Person
9  who Commits The false imprisonment of an
10 elder or Dependant adult by use of fraud
11 or Deceit is punishable by imprisonment
12 for 2,3,4 years

13

14 The Defendants Consistantly Declare They
15 know about The fraud, Deceit of old
16 GMC with in The meaning of penal code
17 175 They've been Directly informed
18 of that it is to be produced in an
19 inquiry of writ of Habeas Through filings
20 of This Court by plaintiff and his
21 Complaint
22    Yet Continue to violate The law
23 and use This court as a platform to
24 do so causing The false imprisonment
25 of The plaintiff a Dependant adult
26  I Declare under penalty of perjury
27 under The laws of The state of California
28 is True                          DJD
                              11/17/15  20f2

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.:  09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-----------------------------------------------------------x

## REPLY BRIEF BY GENERAL MOTORS LLC WITH RESPECT TO WHETHER PLAINTIFFS MAY SEEK PUNITIVE DAMAGES FROM GENERAL MOTORS LLC BASED ON THE CONDUCT OF GENERAL MOTORS CORPORATION

## TABLE OF CONTENTS

**Page**

**ARGUMENT** ..................................................................................................................1

   **A.**  **Plaintiffs Have Not Shown That Section 2.3(a)(ix) Unambiguously Provides
For Payment of Punitive Damages Relating to Post-Sale Accidents/Incidents**............1

   **B.**  **The Qualitative Differences Between Compensatory and Punitive Damages
Demonstrate that Section 2.3(a)(ix) is Limited to Compensatory Damages**................4

   **C.**  **Section 2.3(a)(ix) Must Be Interpreted in the Context
Of the Entire Sale Agreement, and the Sale Order** ......................................................6

   **D.**  **Extrinsic Evidence Is Important Context For Construing Section 2.3(a)(ix)** ..............7

   **E.**  **New GM Cannot Be Assessed Punitive Damages for Retained Liabilities**................10

DMSLIBRARY01\21600\162081\27080310.v2-9/22/15

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Banxcorp v. Costco Wholesale Corp.,*
   723 F.Supp.2d 596 (S.D.N.Y. 2010) ...................................................................... 5

*Barbagallo v. Marcum LLP,*
   820 F.Supp.2d 429 (E.D.N.Y. 2011) ...................................................................... 5

*BMW of N. Am., Inc. v. Gore,*
   517 U.S. 559 (1996) ............................................................................................ 4

*Engquist v Oregon Dep't of Agriculture,*
   478 F.3d 985, 1002 (9th Cir. 2007) .................................................................. 4, 5

*Fabiano v. Philip Morris Inc.,*
   54 A.D.3d 146,150-51, 862 N.Y.S.2d 487 (2008) ................................................ 5

*Hillside Metro Assoc., LLC v. JP Morgan Chase Bank,*
   No. 10–cv–1772, 2011 WL 5008368 (E.D.N.Y. Oct, 20, 2011) ............................. 6

*Holland v. FCA US LLC,*
   1015 U.S. Dist. LEXIS 117643 (N.D. Ohio Sept. 3, 2015) ................................... 10

*Home Ins. Co. v. Am. Home Prods. Corp.,*
   75 N.Y.2d 196 (N.Y. 1990) ............................................................................ 4, 9

*Metz v. U.S. Life Ins. Co.,*
   No. 09–cv–10250, 2010 WL 3703810 (S.D.N.Y. Sept 21, 2010) ........................... 6

*Soto v. State Farm Ins. Co.,*
   83 N.Y.2d 718 (N.Y. 1994) ................................................................................. 9

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
   538 U.S. 408 (2003) ............................................................................................ 4

*Terwilliger v. Terwilliger,*
   206 F.3d 240 (2d Cir. 2000) ................................................................................. 6


**Statutes**

N.Y. Pattern Jury Instr., Civil § 2:278 ........................................................................ 5

DMSLIBRARY01\21600\162081\27080310.v2-9/22/15

General Motors LLC ("**New GM**") submits this reply brief to show that the Sale Order[1]

bars plaintiffs from asserting punitive damage claims against it based on the conduct of Motors

Liquidation Co. (f/k/a General Motors Corporation) ("**Old GM**").[2]

## ARGUMENT

**A.   Plaintiffs Have Not Shown That Section 2.3(a)(ix) Unambiguously Provides
For Payment of Punitive Damages Relating to Post-Sale Accidents/Incidents**

Plaintiffs assert that Section 2.3(a)(ix) of the Sale Agreement, addressing Assumed

Liabilities for post-363 Sale accidents/incidents, is unambiguous because it does not specifically

exclude the term "punitive damages."   In fact, the opposite is true; Section 2.3(a)(ix) is

*ambiguous*, in the context of plaintiffs' argument concerning damages, precisely because there is

no specific mention of punitive damages.   A negative implication argument (the omission of a

specific term such as punitive damages) rarely demonstrates unambiguity.   It certainly does not

show unambiguity here since the generalized term—damages—is not even used in Section

2.3(a)(ix).   In that circumstance, the Court is required to review the entirety of the Sale

Agreement to confirm that plaintiffs' proposed interpretation is consistent with the overall

Agreement and the parties' intent.   Extrinsic evidence concerning the reason why the provision

was specifically amended also is relevant in these circumstances, as are the inherent differences

(including treatment in bankruptcy and public policy objectives) between compensatory damages

and punitive damages.

---

[1]   Terms used herein and not otherwise defined shall have the meanings ascribed to them in New GM's Opening Brief on the Punitive Damages Issue, dated September 13, 2015 [Dkt. No. 13437].

[2]   This Reply Brief is filed in response to (i) the *Post-Closing Ignition Switch Accident Plaintiffs' Memorandum of Law with Respect to Punitive Damages Issues*, dated September 13, 2015 [Dkt. No. 13434] ("**Post Closing Accident Plaintiffs' Brief**"), (ii) the *Joinder of the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs to the Post-Closing Ignition Switch Accident Plaintiffs' Memorandum of Law with Respect to Punitive Damages Issues*, dated September 13, 2015 [Dkt. No. 13436] ("**Plaintiffs' Joinder**"), and (iii) the *Brief of Plaintiffs Regarding Punitive Damages Issue*, dated September 13, 2015 (filed by the *Moore* Plaintiffs).

1

Plaintiffs alternatively argue that the Sale Agreement is unambiguous because the parties knew how to draft an exclusion for punitive damages, as they did in excluding punitive damages from the definition of "Damages" in Section 1.1 of the Sale Agreement. If anything, however, the express exclusion of punitive damages from Section 1.1 further demonstrates the parties' generalized contractual intent to exclude punitive damages caused by Old GM's conduct from the liabilities assumed by New GM. The text of the Sale Agreement, therefore, supports New GM because, if the parties had intended for New GM to assume punitive damages in connection with Assumed Liabilities, they would have expressly said so.

Indeed, in making their counter-textual argument, Plaintiffs ignore the sequence of the drafting of the respective Sale Agreement provisions. The "Damages" definition, which was intended to and did exclude punitive damages, never changed from the original version filed with the Sale Motion. Section 2.3(a)(ix) of the Sale Agreement, however, was modified just prior to the Sale Hearing for the narrow purpose of specifically addressing objections that owners of Old GM vehicles, who may become involved in post-363 Sale accidents, would not be compensated for damages arising from such accidents. Significantly, no interested party asked New GM to assume punitive damages relating to post-363 Sale accidents, and Section 2.3(a)(ix) was amended specifically to resolve the filed objections.

Plaintiffs next argue that unambiguity is shown by the defined term "Liabilities." But that term does not use the word "damages," much less "punitive damages." Even more important, the term "Liabilities" is not used as a standalone term in Section 2.3(a)(ix); it is one part of the definition "Product Liabilities." The original version of the Sale Agreement filed with the Sale Motion defined "Product Liabilities" in Section 2.3(a)(ix) as follows:

> All Liabilities (including Liabilities for negligence, strict liability, design defect, manufacturing defect, failure to warn or breach of express or implied warranties

2

of merchantability or fitness for a particular purpose) to third parties for death, personal injury, other injury to Persons or damage to property.[3]

In the version of the Sale Agreement approved by the Court, the definition of "Product Liabilities" in Section 2.3(a)(ix) changed as follows:

> All Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property *caused by motor vehicles designed* for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers ("Product Liabilities"). . . (emphasis supplied)

For purpose of the punitive damages issue, the key difference between the two definitions of "Product Liability" is that the final version added the clause "caused by motor vehicles." Plaintiffs do not analyze this clause, which was intended to limit the scope of product liability claims to those where the vehicle itself was the direct cause of the alleged injury—*i.e.*, primarily as in the case of a motor vehicle accident—rather than more broadly to claims arising from the general conduct of Old GM, such as purportedly false misrepresentations giving rise to a fraud claim. Unambiguity cannot be established by an incomplete analysis which ignores a newly added clause.

The remainder of the revised Section 2.3(a)(ix), after defining "Product Liabilities," also is critically important to the scope of Product Liabilities assumed by New GM. This additional language limits Product Liabilities to those "which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date and arising from such motor vehicles' operation or performance . . . ." The word *directly* and the phrase *caused by accidents or incidents* (both of which are express limitations) were added after the newly defined term "Product Liabilities;" these mean that the injury from the Product Liability must be *directly* caused by the motor vehicle and *the*

---

[3]    In the original version, assumed Product Liabilities only related to vehicles sold by New GM.

DMSLIBRARY01\21600\162081\27080310.v2-9/22/15

*accident/incident*. Then, another clause of limitation, *arise from such motor vehicles' operation or performance* was also added. Read together, the section means that an assumed Product Liability Claim is limited to the circumstance when an injury/damage to property is *(a) directly caused by the motor vehicle, (b) directly caused by the accident/incident, and (c) directly arises from such motor vehicle's performance/operation*. As shown in the next section, that is the essence of compensatory damages—not punitive damages.

### B. The Qualitative Differences Between Compensatory and Punitive Damages Demonstrate that Section 2.3(a)(ix) is Limited to Compensatory Damages

Compensatory damages are "intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citing Restatement (Second) of Torts § 903 (1979)). By contrast, punitive damages are imposed to serve two policy objectives: punishing unlawful conduct and deterring its repetition. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996). A punitive damage award does not serve any compensatory goals. *Engquist v Oregon Dep't of Agriculture*, 478 F.3d 985, 1002, 1004 (9th Cir. 2007); *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 200 (1990) (punitive damages are a windfall for the plaintiff who has been made whole by compensatory damages).[4] As the Supreme Court has repeatedly cautioned: "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm*, 538 U.S. at 418.

Compensatory damages are a property right subject to due process protections. Punitive damages are not. *See Engquist*, 478 F.3d at 1002 (because punitive damages are a discretionary,

---

[4]    The Sale Agreement (§ 9.12) provides that New York law governs if the Bankruptcy Code is not applicable.

4

moral judgment, a plaintiff's interest in punitive damages is too speculative to constitute property under the Takings Clause). As the Ninth Circuit put it: "punitive damages do not follow compensatory damages, as interest follows principal." *Id.* at 1003. Punitive damages are "never awarded as of right, no matter how egregious the defendant's conduct," in contrast to compensatory damages, which "are mandatory, once liability is found . . . ." *Id.* (citing *Smith v. Wade*, 461 U.S. 30, 52 (1983)).

Plaintiffs misconstrue the word "directly" in Section 2.3(a)(ix) of the Sale Agreement by claiming punitive damages arise directly from the injury. While it is true that if there are no compensatory damages, then there can be no punitive damages, that is as far as plaintiffs' argument can be extended.[5] Punitive damages "must be shown to be emblematic of much more than individually sustained wrong. It must be shown to reflect pervasive and grave misconduct affecting the public generally." *Fabiano v. Philip Morris Inc.*, 54 A.D.3d 146,150-51, 862 N.Y.S.2d 487, 490-91 (2008); *see also Banxcorp v. Costco Wholesale Corp.*, 723 F.Supp.2d 596, 621 (S.D.N.Y. 2010) (citing *Fabiano*); *Barbagallo v. Marcum LLP*, 820 F.Supp.2d 429, 448-49 (E.D.N.Y. 2011) (same). In other words, punitive damages are not directly tied to the injury caused by a motor vehicle accident. They address a different policy objective (punishment and deterrence) and, thus, their focus is on other issues *beyond the specific vehicle accident*.[6] Because, in contrast, Section 2.3(a)(ix) of the Sale Agreement is expressly limited to direct injuries caused by the particular operation of the motor vehicle specific to the accident or incident alleged, punitive damages cannot be included within this narrow definition.

---

[5]   Indeed, that is precisely New GM's point regarding punitive damage demands for what plaintiffs assert are Independent Claims but, in reality, are Retained Liabilities.

[6]   New York's Pattern Jury Instructions illustrate this distinction. Juries are instructed that they may consider the wrongdoer's similar conduct in other situations in order to determine the extent to which defendant's conduct was reprehensible. N.Y. Pattern Jury Instr., Civil § 2:278. Juries may also consider the wrongdoer's financial condition in determining the amount of punitive damages. *Id.*

5

**C.    Section 2.3(a)(ix) Must Be Interpreted in the Context
Of the Entire Sale Agreement, and the Sale Order**

As the Second Circuit cautioned in *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir.

2000), "the entire contract must be considered, and all parts of it reconciled, if possible, in order

to avoid an inconsistency." *See also Hillside Metro Assoc., LLC v. JP Morgan Chase Bank*, No.

10–cv–1772, 2011 WL 5008368, at *9 (E.D.N.Y. Oct, 20, 2011); *Metz v. U.S. Life Ins. Co.*, No.

09–cv–10250, 2010 WL 3703810, at *3 (S.D.N.Y. Sept 21, 2010).    Section 2.3(a)(ix) must

therefore be given a meaning consistent with the other provisions of the Sale Agreement.    In that

regard, Section 9.19 of the Sale Agreement is particularly relevant.    It provides:

> Except where expressly prohibited under applicable Law or otherwise expressly
> ordered by the Bankruptcy Court, upon the Closing, neither Purchaser nor any of
> its Affiliates or stockholders shall be deemed to (a) be the successor of Sellers; (b)
> have, de facto, or otherwise, merged with or into Sellers; (c) be a mere
> continuation or substantial continuation of Sellers or the enterprise(s) of Sellers;
> or (d) *other than as set forth in this Agreement, be liable for any acts or
> omission of Seller in the conduct of Sellers' business or arising under or related
> to the Purchased Assets.* Without limiting the generality of the foregoing, and
> except as otherwise provided in this Agreement, neither Purchaser nor any of its
> Affiliates or stockholders *shall be liable for any Claims against Sellers* or any of
> their predecessors or Affiliates, and neither Purchaser nor any of its Affiliates or
> stockholders shall have any successor, transferee or vicarious Liability of any
> kind or character *whether known or unknown* at the Closing, whether now
> existing or *hereafter arising*, whether fixed or contingent, *with respect to Sellers'
> business or any obligations of Sellers arising prior to the Closing* . . . (emphasis
> supplied).

This provision reflects the generalized contractual intent of the parties; that New GM was

not assuming liabilities relating to Old GM's conduct except as narrowly and explicitly set forth

in the Sale Agreement.    The failure to expressly mention punitive damages, a liability measured

by Old GM's conduct, and whose sole purpose is to punish the wrongdoer-seller and deter its

future wrongdoing, is therefore significant.    The absence of language explicitly including

punitive damages in the scope of Assumed Liabilities must be read consistently with the

contractual intent reflected by the other provisions of the Sale Agreement, which demonstrate

DMSLIBRARY01\21600\162081\27080310.v2-9/22/15

that New GM assumed liabilities that were as narrow and limited as commercially necessary for its' business. As shown in the next section, it would also be against public policy to do so. Plaintiffs here do not have standing to complain about this result; they are not third party beneficiaries under the plain terms of the Sale Agreement.[7]

### D.    Extrinsic Evidence Is Important Context For Construing Section 2.3(a)(ix)

If the Court were to determine that the plain language of Section 2.3(a)(ix) and the agreement as a whole do not unambiguously exclude punitive damages, then extrinsic evidence is relevant to determining the parties' intent. Here, the extrinsic evidence is clear that New GM never agreed to assume punitive damages. *First*, it was not commercially necessary to assume that type of obligation. *Second*, Section 2.3(a)(ix) was amended to address certain objections to the 363 Sale, and no objector sought this type of relief. *Third*, punitive damages, as a subordinated claim, would never have been paid by Old GM and, thus, there was no compelling reason for Old GM to seek such a provision in the Sale Agreement, no compelling reason for the creditors who would be the future equity holders of New GM to do so, and no compelling reason for New GM to agree to pay for such an obligation.

As described in New GM's Opening Brief (*see* p. 8 n.7), this Court has repeatedly found that New GM only agreed to assume those liabilities that were commercially necessary for the operation of its new business. New GM had no reason to, and never agreed to, pay for non-compensatory awards designed to punish Old GM for its misconduct or to provide plaintiffs with a windfall recovery. Punishing New GM for Old GM conduct would have been of no

---

[7]    Section 9.11 of the Sale Agreement provides: "This Agreement shall be binding upon and inure solely to the benefit of each Party hereto, and their respective permitted successors and assigns. ... Subject to the preceding sentence, nothing express or implied in this Agreement is intended or shall be construed to confer upon or give to any Person, other than the Parties, their Affiliates, and their respective permitted successors or assigns, any legal or equitable Claims, benefits, rights or remedies of any nature whatsoever under or by reason of this Agreement."

7

commercial benefit to New GM, nor would paying plaintiffs after they had been made whole through compensatory damages. Plaintiffs have not presented any evidence that New GM intended to assume this type of obligation.

Section 2.3(a)(ix) was amended to address specific objections made to the 363 Sale by objectors that discussed the necessity of paying compensatory damages to future accident victims relating to Old GM vehicles. The objectors argued[8] that people who have not yet suffered injury or loss because of Old GM's misconduct are not creditors. Injury or loss, in that context, meant compensatory damages, not punitive damages. The objectors also argued they had a due process right to be compensated for injury or loss. Again, that meant compensatory damages, not punitive damages. No objector asserted that New GM should pay punitive damages, and Section 2.3(a)(ix) was amended to address only the specific objections that were made.

At the time of the 363 Sale, it was known to all parties that, based on the purchase price and the amount of undisputed claims against Old GM, unsecured creditors would not be paid in full and subordinated claims, such as punitive damage awards, would not be paid *anything*. There was nothing speculative about this result. These facts are all relevant to the proper interpretation of Section 2.3(a)(ix). Because claims for punitive damages would never have been paid by Old GM, New GM would have no logical reason to assume them.

Moreover, the policy objectives of punishment and deterrence are not served if Section 2.3(a)(ix) is construed to provide for New GM's assumption of punitive damages. New GM should not be punished for acts committed before it came into existence. Courts applying New York law have held that imposing punitive damages on a party who did not commit the wrongful conduct is against public policy. Specifically, New York's "public policy precludes

---

[8]    *See* New GM Opening Brief on Punitive Damages, at p. 6 n.6.

8

indemnification for punitive damages." *Soto v. State Farm Ins. Co.*, 83 N.Y.2d 718, 724 (N.Y. 1994); *see also Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 200 (N.Y. 1990) ("There is no question that the general rule, as articulated in two of our recent decisions, is that New York public policy precludes insurance indemnification for punitive damage awards, whether the punitive damages are based on intentional actions or actions which, while not intentional, amount to 'gross negligence, recklessness, or wantonness'")(citations omitted)).

In *Soto*, an insured sought to make its insurer indemnify it for punitive damages awarded in a motor vehicle accident lawsuit after the insurer refused to settle before trial. While the insurer was responsible for compensatory damages in excess of the policy limits, the New York Court of Appeals found that the insurer was not responsible for punitive damages:

> We conclude that a rule permitting recovery for excess civil judgments attributable to punitive damage awards would be unsound public policy. We have previously endorsed the "'fundamental principle that no one shall be permitted to take advantage of his own wrong.'" [citations omitted]   This principle is not vitiated by the existence of an entirely separate and analytically distinct wrong on the part of the insurer. [citations omitted] . . .

*Soto*, 613 N.Y.S.2d at 724-25; *see also Home Ins. Co.*, 75 N.Y.2d at 203 ("allowing coverage serves no useful purpose since such damages are a windfall for the plaintiff who, by hypothesis, has been made whole by the award of compensatory damages'" (citations omitted)).

The assumption of liabilities in a 363 sale is analogous to an insurer's agreement to indemnify its insured. In both cases, there is an agreement on the part of a third party to be liable for claims based on the actions of another. Allowing punitive damages to be shifted from the wrongdoer to a third party nullifies the policy objectives of punitive damages and is, thus, contrary to New York public policy.

9

E.    **New GM Cannot Be Assessed Punitive Damages for Retained Liabilities**

Plaintiffs' other two arguments for punitive damages related to New GM conduct are already covered in other New GM submissions.   New GM's opening imputation brief specifically addresses why New GM cannot be liable for punitive damages based on New GM's knowledge of purported events that took place at Old GM.   And the marked pleadings and accompanying letters will demonstrate that plaintiffs' alleged "Independent Claims" are actually Retained Liabilities, which plaintiffs concede are not subject to punitive damages.[9]

WHEREFORE, New GM respectfully requests that this Court: (i) find that any request for punitive damages against New GM based on Old GM conduct is barred by the Sale Order, and cannot be maintained against New GM; and (ii) direct plaintiffs in lawsuits that seek punitive damages against New GM based on Old GM conduct to withdraw their request for punitive damages.

Dated:  New York, New York
        September 22, 2015

                                        Respectfully submitted,

                                        ____/s/ Arthur Steinberg____
                                        Arthur Steinberg
                                        Scott Davidson
                                        KING & SPALDING LLP
                                        1185 Avenue of the Americas
                                        New York, New York  10036
                                        Telephone:    (212) 556-2100
                                        Facsimile:    (212) 556-2222

                                        -and-

---

[9]  Plaintiffs cite to *Holland v. FCA US LLC*, 1015 U.S. Dist. LEXIS 117643 (N.D. Ohio Sept. 3, 2015), in support of their Independent Claim argument.  But *Holland* is inapposite.  There, the plaintiffs framed the issue as to whether New Chrysler established a sufficient relationship with Old Chrysler vehicle owners such that state law imposed an independent duty.  The alleged new conduct included events that took place after the sale to New Chrysler, including: (i) New Chrysler extending warranty coverage (akin to the glove box warranty), and (ii) New Chrysler issuing technical service bulletins alerting dealers and vehicle owners about vehicle issues.  The Court did not decide any substantive issue, but determined it would not transfer the case to the bankruptcy court.  Other than using the words "Independent Conduct," plaintiffs have not made any of the "new conduct" allegations set forth in *Holland*.

10

DMSLIBRARY01\21600\162081\27080310.v2-9/22/15

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Attorneys for General Motors LLC*

11

*Exhibit B*



**Employment Development Department**
**State of California**

## Claim for Disability Insurance Benefits – Doctor's Certificate

TYPE or PRINT with BLACK INK.

| 34. PATIENT'S FILE NUMBER | 35. PATIENT'S SOCIAL SECURITY NO. | 36. PATIENT'S LAST NAME |
|---|---|---|
| 483 5901 | 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 | Dunsmore |

| 37. DOCTOR'S NAME AS SHOWN ON LICENSE | 38. DOCTOR'S TELEPHONE NUMBER | 39. DOCTOR'S STATE LICENSE NO. |
|---|---|---|
| Dalia Amezcuita Hunt | (858) 2790925 | A60602 |

**40. DOCTOR'S ADDRESS – NUMBER AND STREET, CITY, STATE, COUNTRY (IF NOT USA), ZIP CODE. POST OFFICE BOX NUMBER IS NOT ACCEPTED AS THE SOLE ADDRESS**
6973 Linda Vista Rd
San Diego, CA 92111

**41. THIS PATIENT HAS BEEN UNDER MY CARE AND TREATMENT FOR THIS MEDICAL PROBLEM**
FROM 12/10/04 TO present day 3/11/05 AT INTERVALS OF ☐ DAILY ☐ WEEKLY ☐ MONTHLY ☒ AS NEEDED

| 42. AT ANY TIME DURING YOUR ATTENDANCE FOR THIS MEDICAL PROBLEM, HAS THE PATIENT BEEN INCAPABLE OF PERFORMING HIS/HER REGULAR OR CUSTOMARY WORK? | 43. DATE YOU RELEASED OR ANTICIPATE RELEASING PATIENT TO RETURN TO HIS/HER REGULAR / CUSTOMARY WORK ("UNKNOWN," "INDEFINITE," ETC., NOT ACCEPTED.) |
|---|---|
| ☐ NO – SKIP TO THE DOCTOR'S CERTIFICATION SECTION   ☒ YES – ENTER DATE DISABILITY BEGAN: 11/10/04 | 9/1/05 |

| 44. ICD9 DISEASE CODE, PRIMARY (REQUIRED UNLESS DIAGNOSIS NOT YET OBTAINED) | 45. ICD9 DISEASE CODE(S), SECONDARY |
|---|---|
| 724.9 | |

**46. DIAGNOSIS (REQUIRED) – IF NO DIAGNOSIS HAS BEEN DETERMINED, ENTER OBJECTIVE FINDINGS OR A DETAILED STATEMENT OF SYMPTOMS**
Ankylosing spondylitis

**47. FINDINGS – STATE NATURE, SEVERITY, AND EXTENT OF THE INCAPACITATING DISEASE OR INJURY. INCLUDE ANY OTHER DISABLING CONDITIONS**
per ortho evaluation: significant limitations - see report

| 48. TYPE OF TREATMENT / MEDICATION RENDERED TO PATIENT | 49. IF PATIENT WAS HOSPITALIZED, PROVIDE DATES OF ENTRY AND DISCHARGE |
|---|---|
| NSAIDs | __/__/__ to __/__/__ |

| 50. DATE AND TYPE OF SURGERY / PROCEDURE PERFORMED OR TO BE PERFORMED | ICD9 PROCEDURE CODE(S) |
|---|---|
| __/__/__ | |

| 51. IF PATIENT IS NOW PREGNANT OR HAS BEEN PREGNANT, WHAT DATE DID PREGNANCY TERMINATE OR WHAT DATE DO YOU EXPECT DELIVERY? | 52. IF PREGNANCY IS / WAS ABNORMAL, STATE THE ABNORMAL AND INVOLUNTARY COMPLICATION CAUSING MATERNAL DISABILITY |
|---|---|
| __/__/__ | |

| 53. BASED ON YOUR EXAMINATION OF PATIENT, IS THIS DISABILITY THE RESULT OF "OCCUPATION," EITHER AS AN "INDUSTRIAL ACCIDENT" OR AS AN "OCCUPATIONAL DISEASE"? (INCLUDE SITUATIONS WHERE PATIENT'S OCCUPATION HAS AGGRAVATED PRE-EXISTING CONDITIONS.) | 54. ARE YOU COMPLETING THIS FORM FOR THE SOLE PURPOSE OF REFERRAL / RECOMMENDATION TO AN ALCOHOLIC RECOVERY HOME OR DRUG-FREE RESIDENTIAL FACILITY AS INDICATED BY THE PATIENT IN QUESTION 23? | 55. WOULD DISCLOSURE OF THIS INFORMATION TO YOUR PATIENT BE MEDICALLY OR PSYCHOLOGICALLY DETRIMENTAL? |
|---|---|---|
| ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO |

**Doctor's Certification and Signature (REQUIRED):** Having considered the patient's regular or customary work, I certify under penalty of perjury that, based on my examination, this Doctor's Certificate truly describes the patient's disability (if any) and the estimated duration thereof.

I further certify that I am a _Medical_ _Internal med_ licensed to practice in the State of _California_
(TYPE OF DOCTOR)        (SPECIALTY, IF ANY)

► _Dalia Hunt, MD_
ORIGINAL SIGNATURE OF ATTENDING DOCTOR – RUBBER STAMP IS NOT ACCEPTABLE

**Linda Vista Health Care Center**
6973 Linda Vista Rd.
San Diego, CA 92111
T.(858) 279-0925
F.(858) 279-2119

3/11/05
DATE SIGNED

Under sections 2116 and 2122 of the California Unemployment Insurance Code, it is a violation for any individual who, with intent to defraud, falsely certifies the medical condition of any person in order to obtain disability insurance benefits, whether for the maker or for any other person, and is punishable by imprisonment and/or a fine not exceeding $20,000. Section 1143 requires additional administrative penalties.

*Page 65 of 184*

STATE OF CALIFORNIA
DISABILITY PLACEMENT PROGRAM VERIFICATION (DPPV)
CDCR 1845 (Rev. 2/14)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 1 of 1
Instructions: Page 2

Exam/observation and eUHR Review are both required prior to completion of this form

## SECTION A: DISABILITY VERIFICATION (for use with permanent disabilities lasting six months or longer)

- [x] DISABILITY CONFIRMED (see below)
- [ ] CHANGE IN DPP CODE: Previous code(s)
- [ ] ADDITIONAL DPP CODE: Current code(s)
- [ ] REMOVAL FROM A DPP CODE: Previous code(s)
- [ ] DISABILITY DOES NOT IMPACT PLACEMENT
- [ ] NO DISABILITY

### SECTION B: DISABILITY DESIGNATION

**Disability Type: Mobility**

| Disability Code Definitions | Criteria | Code |
|---|---|---|
| Individual has severe mobility restrictions and requires a **Full Time Wheelchair** accommodation to ambulate in and out of cell/bed area. | • Full Time Wheelchair prescribed for use.<br>• Wheelchair accessible housing and path of travel required | [ ] DPW |
| Individual has severe mobility restrictions but only uses a **Wheelchair Intermittently** as an accommodation to ambulate outside of cell/bed area. | • Intermittent Wheelchair prescribed for use outside of cell/housing.<br>• Wheelchair accessible cell not required / Wheelchair can be kept outside of cell. | [x] DPO |
| Individual has severe mobility restrictions and uses an **assistive device** other than a wheelchair to ambulate, and cannot walk up or down stairs because of the disability. | • No Wheelchair, but uses other assistive device (walker, cane, etc.).<br>• Generally no steps/stairs in regular path of travel. | [ ] DPM |
| Individual requires a relatively level terrain/path of travel accommodation to ambulate due to mobility or health concerns | • May or may not use a walking device for assistance.<br>• Can walk up/down at least 6 steps/stairs (but not an entire flight of stairs). | [ ] DLT |
| Individual may or may not require an **assistive device** accommodation to ambulate because of a disability, but the disability is not severe enough to require special housing or level terrain. | • Assistive device may be prescribed for ambulation needs.<br>• Impairment of major life activity must exist.<br>• May have special needs outside housing placement.<br>• Can walk up or down steps/stairs. | [ ] DNM |

**Disability Type: Hearing**

| | | |
|---|---|---|
| Individual is deaf or severely hearing impaired and requires **written notes, sign language, or lip reading accommodation** to achieve effective communication. | • Hearing Impaired Vest is required while outside of cell/bed area.<br>• May or may not use a sign language interpreter. | [ ] DPH |
| Individual has a hearing impairment and uses an **assistive hearing device** to achieve effective communication. | • Assistive hearing device prescribed.<br>• Hearing Impaired Vest is required while outside of cell/bed area when hearing device(s) are not in use. | [ ] DNH |

**Disability Type: Vision**

| | | |
|---|---|---|
| Individual has severe vision impairment which is not correctable to better than 20/200 with corrective lenses in at least one eye. | • Vision Impaired Vest is required while outside of cell/bed area. | [ ] DPV |

**Disability Type: Speech**

| | | |
|---|---|---|
| Individual does not communicate effectively when speaking due to permanent speech impairments. | • Ensure that primary means of communication is documented. | [ ] DPS |

**Disability Type: Kidney**

| | | |
|---|---|---|
| Individual has a kidney disease or other chronic illness. | • Requires Dialysis | [ ] DKD |

### SECTION C: RELATED FORMS

- [x] I have completed a new CDCR 7410, Comprehensive Accommodation Chrono, to document physical limitations for a verified disability.

- [ ] I have completed a new CDCR 128 C-3, Medical Classification Chrono, to document medical limitations for a verified disability.

### SECTION D: COMMENTS

| Clinician Name/Title:<br>Haile, Bethlehem@CDCR | Clinician Signature:<br>Digitally Authenticated | Verification/Form date:<br>7/15/2015 |
|---|---|---|
| CME or Designee Name:<br>CME or Designee Signature:<br>Review date: | CDCR#: ad6237<br>Last Name: DUNSMORE<br>First Name: DARRYL    MI: L<br>DOB:   9/12/1967 | |

**DISTRIBUTION:** Original to medical record. **Copy** to Chrono Section of C-File; C&PR/RC CC-III; CC-I; and Inmate

**Forward a copy of this form and any Accommodation Chronos to the C&PR within 72 hours.**

This form has been approved electronically by Haile, Bethlehem@CDCR on 2015-07-15 12:07:21.





**DRAFT**

# REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

RAP Meeting Date: 9/02/2015        Date IAC Received 1824: 8/31/2015        1824 Log Number: CHCF-C-15-02227

Inmate's Name: DUNSMORE, DARRYL        CDCR #: AD6237        Housing: FAC C3A-115

RAP Staff Present:        ADA Coordinator    J.A. Zamora,  Custody Appeals Coordinator A. Infante,  Doctor G. Williams, Health Care Appeals Representative, L. Donnelly,  Registered Nurse  M. Lowe

Inmate Interviewed:    ☐ No    ☒ Yes        DPM, CCCMS

---

Disability Access or Discrimination Issue: SUBJECT STATES THAT HE IS HAVING DIFFICULTY IN TRANSFERRING, DRESSING OR ALTERATION OF CLOTHES WITH BUTTONS DUE TO HIS MEDICAL CONDITION.

---

Interim Accommodations Needs Reviewed:

☒    Interim Accommodation provided (List accommodation and date provided):

ON 8/31/15, MEDICAL STAFF TO ASSIST SUBJECT ON AS NEEDED BASIS FOR TRANSFERRING/DRESSING/OBTAINING ITEMS.

---

Summary of Inmate's 1824 Request:  THE SUBJECT IS REQUESTING ASSISTANCE IN TRANSFERRING, DRESSING OR ALTERATION OF CLOTHES WITH BUTTONS, ASSISTANCE WITH PLACING SOCKS ON AND A THREE TIER SHELF.

☒    RAP is able to render a final decision.

APPROVE WITH MODIFICATION

ON 9/02/15, THE REASONABLE ACCOMODATION PANEL (RAP) HAS REVIEWED YOUR REQUEST. YOU HAVE BEEN APPROVED FOR A WHEELCHAIR ACCESSIBLE LOCKER.

ON 8/31/15, THE CHCF APPEALS COORDINATOR INTERVIEWED YOU, IN WHICH YOU REQUESTED ASISSTANCE WITH PULLOVER SHIRTS, REACHING DOWN TO PLACE SOCKS AND SHOES ON AND GETTING ITEMS FROM THE FLOOR/SHELF. YOU FURTHER STATED WHEN YOU WARM UP, YOU GET BETTER MOVEMENT BUT IN THE MORNING AND AT NIGHT IT BECOMES MORE DIFICULT TO MOVE. YOU STATED THAT THE OFFICERS DO ASSIST YOU AND THAT YOU ARE ABLE TO ACCESS PROGRAMS AND SERVICES WITHOUT CONCERN.

ON 8/31/15, THE CHCF APPEALS COORDINATOR INTERVIEWED CNA MOFOR. MOFOR STATED SHE ASSISTS YOU ON AN AS NEEDED BASIS. SHE HAS OBSERVED YOU MOVE IN OTHER ACTIVITIES SUCH AS FEEDING YOURSELF. SHE FURTHER STATED THAT SHE WILL INFORM OTHER STAFF TO ASSIST YOU IN THE INTERIM ON AN AS NEEDED BASIS.

---

Additional information/instruction: THE SUBJECT IS ABLE TO SAFELY ACCESS ALL PROGRAMS, SERVICES AND ACTIVITIES.

---

If you disagree with a health care decision made prior to or during the CDCR 1824 process, complete a CDCR 602-HC. If you disagree with any other RAP decision, complete a CDCR 602. Be sure to attach this document along with your CDCR 1824.

| | | |
|---|---|---|
| J.A. Zamora | Signature | Date sent to inmate: 9/2/2015 |
| ADA Coordinator | | |

Staff processing instructions:  Does delivery of response meet criteria to establish effective communication? No

☒    Accommodation Order required.

☐    Request alleges non-compliance of the Armstrong or Clark Remedial Plans. Allegation logged on Accountability Log.

Distribution: Original – Inmate        Copy – 1824 File        Copy – Miscellaneous Section of C-File        Copy – Medical/Mental Health St

Page 1 of 1

POS-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Daryl Dinsmore  AD6237 C3A-150
Box 32200 Stockton CA 95213

TELEPHONE NO.:                           FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

DISTRICT COURT OF NEW YORK
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PETITIONER/PLAINTIFF: Daryl Dinsmore

RESPONDENT/DEFENDANT: New GMC Etal

RECEIVED
NOV 25 2015
U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

PROOF OF PERSONAL SERVICE—CIVIL

CASE NUMBER:
09-50026-REG

**(Do not use this Proof of Service to show service of a Summons and Complaint.)**

1. I am over 18 years of age and **not a party to this action.**

2. I served the following **documents** *(specify)*: Motion For Relief From Stay
Objection to Reply Brief

☐ The documents are listed in the *Attachment to Proof of Personal Service—Civil (Documents Served)* (form POS-020(D)).

3. I personally served the following **persons** at the address, date, and time stated:
    a. Name: King + Spalding LLP 1185 Ave of The Americas 10036-4003
    b. Address:                                                                                    New York NY
    c. Date: 11/17/15
    d. Time: 7 PM
    ☐ The persons are listed in the *Attachment to Proof of Personal Service—Civil (Persons Served)* (form POS-020(P)).

4. I am
    a. ☒ not a registered California process server.
    b. ☐ a registered California process server.
    c. ☐ an employee or independent contractor of a registered California process server.
    d. ☐ exempt from registration under Business & Professions Code section 22350(b).

5. My name, address, telephone number, and, if applicable, county of registration and number are *(specify)*:
David Richards   Box 32200   Stockton CA 95213

6. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

7. ☐ I am a California sheriff or marshal and certify that the foregoing is true and correct.

Date: 11/17/15

David Richards                               ▶ David Richards
(TYPE OR PRINT NAME OF PERSON WHO SERVED THE PAPERS)          (SIGNATURE OF PERSON WHO SERVED THE PAPERS)

Form Approved for Optional Use
Judicial Council of California
POS-020 [New January 1, 2005]

**PROOF OF PERSONAL SERVICE—CIVIL**

Code of Civil Procedure, § 1011
www.courtinfo.ca.gov