# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
In re                                          :    Chapter 11
                                               :
MOTORS LIQUIDATION COMPANY, et al.,            :    Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., et al.     :
                                               :    (Jointly Administered)
                    Debtors.                   :
                                               :
------------------------------------------------------------ x
```

JUDGMENT ON IMPUTATION,
PUNITIVE DAMAGES, AND OTHER
NO-STRIKE AND NO-DISMISSAL
PLEADINGS ISSUES

For the reasons set forth in the Court's *Decision on Imputation, Punitive Damages, and Other No-Strike and No-Dismissal Pleadings Issues*, entered on November 9, 2015 ("**Decision**"),[1] it is hereby ADJUDGED as follows:

1.    Knowledge of New GM personnel, whenever acquired, may be imputed to New GM consistent with nonbankruptcy law. *See* Decision at 2. But knowledge of Old GM personnel may not be imputed to New GM except on assumed Product Liabilities Claims or to the extent that it can be shown (*e.g.*, because it is the knowledge of the same employee or because it was communicated to a New GM employee) that New GM had such knowledge too. *See* Decision at 2-3; 15-16. Documents in New GM's files may be utilized as a predicate for such knowledge, even if they first came into being before the sale from Old GM to New GM. *See* Decision at 3, 65. Allegations of that knowledge or notice, even if alleged in general terms, can be asserted by the plaintiffs with nonbankruptcy courts determining the extent to which such allegations have been alleged sufficiently specifically to warrant findings of imputation. *See*

---

[1]    Unless otherwise defined herein, capitalized terms shall have the meanings assigned to them in the Decision.

Decision at 3.

2.      Any acts by New GM personnel, or knowledge of New GM personnel (including knowledge that any of them might have acquired while previously working at Old GM) may, consistent with the April Decision and Judgment, be imputed to New GM to the extent such is appropriate under applicable nonbankruptcy law.  *See* Decision at 65.  Likewise, to the extent, as a matter of nonbankruptcy law, knowledge may be imputed as a consequence of documents in a company's files, documents in New GM's files may be utilized as a predicate for such knowledge, even if they first came into existence before the sale from Old GM to New GM.  *See* Decision at 65.  Those general principles may be applied in courts other than this one in the context of particular allegations that rely on those principles—without the need for the bankruptcy court to engage in further examination of particular allegations beyond the extent to which it has done so in the Decision.  *See* Decision at 65.

3.      The propriety of imputation turns on the specifics of the situation.  *See* Decision at 15.  Imputation must be found in the context of the imputation of identified individuals or identified documents, for particular purposes.  *See* Decision at 15.  New GM may not be saddled with imputation of Old GM knowledge by successorship alone as a substitute for showing that a fact was actually known to a New GM employee or could be ascertained from New GM's files.  *See* Decision at 15-16.  In actions alleging Product Liabilities Claims and Independent Claims, New GM's knowledge may be imputed to it starting with the first day of its existence. Plaintiffs asserting such Claims may make allegations starting with "New GM knew . . ." or "New GM was on notice that . . . ."  *See* Decision at 16.

4.      Punitive damages with respect to Product Liabilities Claims or Economic Loss claims involving Old GM manufactured vehicles may be sought against New GM to the extent—

but only to the extent—they rely solely on New GM knowledge or conduct. *See* Decision at 65. Those claims may not be based on Old GM knowledge or conduct. *See* Decision at 65, 29, 32. But they may be based on knowledge of New GM employees that was "inherited" from their tenure at Old GM (or documents inherited from Old GM), and may be based on knowledge acquired after the 363 Sale by New GM. *See* Decision at 65-66, 29, 32-34.

5.      New GM may be held liable for compensatory damages on Product Liabilities Claims based on Old GM conduct, New GM conduct or both. *See* Decision at 27. However, Post-Closing Accident Plaintiffs can base their claims for punitive damages only on New GM conduct or knowledge. *See* Decision at 27.

6.      Independent Claims against New GM cannot be based, for either compensatory or punitive damages purposes, on Old GM knowledge and conduct. Damages of any character on Independent Claims must be based solely on New GM's knowledge and conduct. *See* Decision at 27.

7.      In actions alleging Product Liabilities Claims and Independent Claims, New GM may be held responsible, on claims for both compensatory and punitive damages, for its own knowledge and conduct. *See* Decision at 27. New GM might have acquired relevant knowledge when former Old GM employees came over to New GM or New GM took custody of what previously were Old GM records. *See* Decision at 27. Reliance on that, for punitive damages purposes, is permissible.[2] *See* Decision at 27.

8.      To the extent New GM employees actually had knowledge relevant to post-Sale accident claims or Independent Claims (even if it was inherited) that was acquired in fact rather than by operation of law (such as any kind of successorship theory), plaintiffs in actions

---

[2]      Knowledge New GM might have acquired in this manner is referred to herein as "inherited" information.

asserting such Claims are free to base punitive damages claims on evidence of such knowledge to the extent nonbankruptcy law permits. *See* Decision at 28.

9.　　Information obtained by New GM after the Sale may be used for punitive damages purposes as well. *See* Decision at 28. The extent to which such after-acquired information is relevant to punitive damages claims is a matter of nonbankruptcy law, as to which the Court expresses no view. *See* Decision at 28. Evidence of information obtained by New GM after the sale may be relied upon, for punitive damages purposes, to the extent otherwise appropriate in the underlying actions. *See* Decision at 28.

10.　　To the extent Economic Loss plaintiffs (or, for that matter, State Cases Plaintiffs) make allegations based upon inherited information or information obtained by New GM after the Sale, evidence introduced using those pathways is permissible, but it is up to the judges hearing those cases to decide the propriety of reliance on such evidence to punitive damages claims. *See* Decision at 28 n.56.

New GM's Four Contexts

　1)　　*Personal Injuries in Post-Sale Accidents Involving Vehicles Manufactured by Old GM*

11.　　Product Liabilities compensatory damages claims involving vehicles manufactured by Old GM were contractually assumed by New GM (and thus are permissible under the Sale Order, April Decision, and Judgment); punitive damages claims were not assumed by New GM. *See* Decision at 29. Thus punitive damages in such actions may not be premised on anything Old GM knew or did. *See* Decision at 29.

12.　　Nevertheless, punitive damages may still be sought in actions based on post-Sale accidents involving vehicles manufactured by Old GM to the extent the punitive damages claims are premised on New GM action or inaction after it was on notice of information

"inherited" by New GM or information developed by New GM post-Sale. *See* Decision at 29.

  2) *Personal Injuries in Post-Sale Accidents Involving Vehicles Manufactured by New GM*

13. Personal injury compensatory damages claims against New GM involving vehicles manufactured by New GM never were foreclosed under the Sale Order and remain permissible under the April Decision and Judgment. *See* Decision at 29.

14. Claims against New GM for punitive damages involving New GM manufactured vehicles likewise were never foreclosed under the Sale Order, and likewise remain permissible under the April Decision and Judgment. *See* Decision at 29.

15. The underlying allegations and evidence used to support punitive damages claims involving New GM manufactured cars can be anything appropriate under nonbankruptcy law—including, if otherwise appropriate, not just information "inherited" by New GM or developed by New GM post-Sale, but also evidence of Old GM's pre-Sale knowledge and conduct. *See* Decision at 30. The Sale Order never professed to affect claims against New GM with respect to New GM manufactured cars in any way. *See* Decision at 30.

  3) *Non-Product Liabilities Claims (in both personal injury and economic loss complaints) Involving Vehicles Manufactured by Old GM "and/or" New GM*

   (a)(i) *Personal Injury Actions-Old GM Manufactured Vehicles*

16. Because only Product Liabilities claims were assumed by New GM, other claims involving Old GM manufactured vehicles—including claims for compensatory damages on other causes of action and, as discussed above, for punitive damages—are Retained Liabilities. *See* Decision at 31. New GM is not responsible for them except to the extent that they are premised solely on its own conduct. *See* Decision at 31.

17. With respect to post-Sale Non-Product Liabilities claims asserted in actions

involving personal injuries suffered in vehicles manufactured by Old GM, punitive damages may be assessed to the extent, but only the extent, they are premised on New GM knowledge and conduct.  *See* Decision at 31.  Plaintiffs may refer to inherited knowledge and to knowledge acquired after the 363 Sale with respect to post-Sale Non-Product Liabilities claims.  *See* Decision at 31.  But punitive damages sought as an adjunct to claims in this category may not rely on the conduct of Old GM and this is true, as always, with respect to both allegations in pleadings and any evidence of such.  *See* Decision at 31.

### (a)(ii)   *Personal Injury Actions-New GM Manufactured Vehicles*

18.   For claims involving vehicles manufactured by New GM, plaintiffs do not need the Court's permission to assert claims for Non-Product Liabilities compensatory damages claims any more than they need the Court's permission to assert claims for Product Liabilities compensatory damages claims.  *See* Decision at 31.  The Sale Order did not foreclose claims against New GM involving New GM manufactured vehicles, and compensatory damage claims (on whatever theory) with respect to New GM manufactured vehicles may proceed against New GM without interference from this Court.  *See* Decision at 31-32.  Nor, do plaintiffs need the Court's permission to assert punitive damages claims incident to Non-Product Liabilities Claims involving New GM manufactured vehicles.  *See* Decision at 32.

19.   With respect to the evidence used to support punitive damages claims in actions involving New GM manufactured vehicles, evidence of inherited knowledge and knowledge acquired after the 363 Sale may be asserted and used; that is simply knowledge New GM had before the accident took place.  *See* Decision at 19.  Relevant evidence of Old GM knowledge and conduct may be asserted and used, as well.  *See* Decision at 18-19.

### (b)(i)   *Economic Loss Actions-Old GM Manufactured Vehicles*

20.   Because claims only for Product Liabilities were assumed by New GM, other

claims involving Old GM manufactured vehicles are Retained Liabilities.  *See* Decision at 31.
New GM is not responsible for those other claims except to the extent that they are premised
solely on New GM's own conduct, and hence may be regarded as Independent Claims.  *See*
Decision at 32.  The same is true for punitive damages claims just as it is for compensatory
damages claims—and for both the assertion of claims for punitive damages and the evidence
that might support them.  *Id.*

21.    Thus claims for punitive damages arising from Economic Loss actions involving
Old GM manufactured vehicles cannot be asserted except for any that might be recoverable in
connection with Independent Claims, and then based only on New GM knowledge and conduct.
*See* Decision at 31.  The same is true with respect to the evidence that might be offered to
support those punitive damages claims.  *Id.*

22.    For vehicles already manufactured and sold before New GM came into existence,
whether Independent Claims for Economic Loss can be asserted against New GM is matter of
nonbankruptcy law, and not for this Court to decide.  *See* Decision at 31.  This question is better
decided by the judge(s) hearing the nonbankruptcy claims that have passed through the
bankruptcy court gate.  *See* Decision at 32

*(b)(ii)   Economic Loss Actions-New GM Manufactured Vehicles*

23.    Economic Loss Claims with respect to New GM manufactured vehicles—which
by definition were manufactured after New GM came into being—are not proscribed by the
Sale Order.  *See* Decision at 33.  Nor does the Sale Order proscribe punitive damages claims
sought in actions against New GM for Economic Loss involving New GM vehicles.  *Id.*

24.    The evidence used to support such punitive damages claims may include
evidence of inherited knowledge; of knowledge acquired after the 363 Sale; and, if
nonbankruptcy courts regard such as appropriate, any relevant Old GM knowledge and conduct

as well.  *See* Decision at 33.  With respect to any punitive damages claims in Economic Loss

actions involving New GM vehicles, those claims may be asserted against New GM.  *See*

Decision at 33-34.

4)    *Assertedly Independent Claims that Are In Reality
Retained Liabilities of Old GM*

25.    To the extent that any claims against New GM involving Old GM manufactured

vehicles are for Product Liabilities Claims or genuinely Independent Claims, claims for punitive

damages against New GM may be sought in connection with them, but the evidence supporting

such claims can be based only on New GM's knowledge and acts.  *See* Decision at 34.  That

evidence can include inherited knowledge and knowledge acquired after the 363 Sale, but not

any acts, or non-inherited knowledge, of Old GM.  *Id.*  This issue does not arise in connection

with claims against New GM involving vehicles New GM itself manufactured.  *Id.*

26.    Plaintiffs cannot proceed with "purportedly Independent Claims" that really are

"Retained Liabilities of Old GM."  *See* Decision at 34.  To the extent particular claims or

allegations have not yet been brought to this Court's attention, but New GM wishes objections

to such to be heard, those objections can be heard by the judges hearing the nonbankruptcy

cases.  *See* Decision at 35.

Particular Allegations in Marked Pleadings

A.    *The Bellwether Actions Complaints*

27.    New GM identified five categories of allegations in the Bellwether Marked

Complaints, highlighted by color, that New GM contended were violative of the Sale Order, the

April Decision, the Judgment, or some combination of them.  *See* Decision at 35.  Taking them

by color and by New GM's stated objection to them, the Court rules as follows:

1)    *Pink—"Allegations that wrongly assert New GM is the
successor of Old GM"*

28.    Allegations referring to New GM as "successor" and, especially, as a "mere

continuation," must be stricken or removed, and the affected complaints remain stayed unless

and until they are amended consistent with this Court's rulings. *See* Decision at 36.

29.    Likewise, allegations that do not distinguish between Old GM and New GM, and

that continue to refer to "General Motors" or "GM" must be stricken or revised so that it is clear

whether the reference is to Old GM or New GM. *See* Decision at 36. Complaints using that

generic formulation of "General Motors" or "GM" will remain stayed unless and until they are

amended to cure violations of that character. *Id.*

30.    Allegations that New GM engaged in activities before the closing of the 363 Sale

(*i.e.*, that New GM designed a vehicle that was manufactured and sold by Old GM) must be

stricken or revised, and complaints that contain this type of allegation will remain stayed unless

and until they are amended to cure violations of that character. *See* Decision at 36.

31.    As noted in the April Decision, plaintiffs' complaints may say, *inter alia*, that

New GM purchased the assets of Old GM; that New GM assumed product liability claims from

Old GM; and that New GM acquired specified knowledge from Old GM. *See* Decision at 37.

2)    *Orange—"Allegations related to punitive damages, which
were not assumed by New GM"*

32.    Claims against New GM for punitive damages with respect to Old GM

manufactured vehicles—even where compensatory damages might legitimately be sought for

Product Liabilities Claims—were not assumed. *See* Decision at 37. Thus, punitive damages in

such cases cannot be based on pre-Sale Old GM conduct, or evidence of such. *Id.*

33.    But New GM may still be liable for punitive damages based on knowledge it

inherited from Old GM, and any knowledge it developed after the 363 Sale. Punitive damages

may be sought against New GM for post-closing accident cases involving Old GM manufactured vehicles to the extent the factual allegations and evidence supporting the punitive damages claims are consistent with this Court's rulings herein and in the Decision.  *See* Decision at 37.

> 3) **Blue—"[A]llegations seeking to impute wholesale Old GM's knowledge to New GM"**

34.    Imputation is context specific, but this Court assumes that under the nonbankruptcy law which will be applied in the actions pending against New GM, the acts and knowledge of employees will often be imputed to the principal.  *See* Decision at 38.  This Court also assumes that likewise to be true with respect to notice of documents within a company's files.  *Id.*  But these nonbankruptcy law issues are inappropriate for this Court's determination. *Id.*

35.    This Court also holds that allegations of imputation to New GM premised on the knowledge of New GM employees, or documents in New GM's files, may be asserted against New GM.  After that, issues as to the propriety of imputation in particular contexts in particular cases are up to the judges hearing those cases.  *See* Decision at 38.

> 4) **Green—"[A]llegations involving Claims that are Old GM Retained Liabilities"**

36.    With respect to claims involving vehicles manufactured by Old GM other than Product Liabilities claims, such as fraud, negligent representation, duty to warn after the vehicle's sale, and violation of consumer protection statutes at the time of sale, insofar as Old GM manufactured vehicles are concerned, New GM is liable for Product Liabilities only.  *See* Decision at 38.

37.    However, if Old GM had a duty, under nonbankruptcy law, to warn of the danger of driving a motor vehicle with a known defect, the violation of that duty to warn, when coupled

with subsequent death or injury, might reasonably be argued to have had a causal effect on any death or personal injury that could have been avoided by the warning.  *See* Decision at 39. Violations of any duty to warn by Old GM could be said to provide further support for any claims for death or personal injury that would be actionable even as classic Product Liabilities Claims.  *See* Decision at 40.  This Court expresses no view as to whether, as a matter of nonbankruptcy law, failures to warn are actionable, or whether the requisite duties exist.  But these allegations may be asserted against New GM as an assumed Product Liability Claim, and it will be up to the Judge hearing the case to determine whether it is a viable claim.  *Id.*

38.    In addition, some allegations highlighted in green are not subject to the above analysis because they charge New GM with violations of alleged duties that they assert New GM had to purchasers of earlier purchased vehicles.  New GM can argue before other courts that such duties do not exist (or assert any other merits-based defenses to these allegations), but claims of this character that are based on New GM's own conduct and knowledge may be asserted against New GM and it will be up to the Judge hearing the case to determine whether it is a viable claim.  *See* Decision at 40.

   5)    *Yellow—"[A]llegations based on New GM's conduct relating to a supposed failure to warn after the vehicle sale"*

39.    Here, the allegations concern alleged failures to warn by New GM prior to any accidents, as contrasted to alleged failures by Old GM.  *See* Decision at 40.  The Court does not need to determine whether such claims were assumed, as they rest on conduct allegedly on the part of New GM itself.  *See* Decision at 41.  This issue is one of nonbankruptcy law—whether New GM, as an entity that did not manufacture or sell the vehicle, had a duty, enforceable in damages to vehicle owners, to notify people who had previously purchased Old GM vehicles of the Ignition Switch Defect.  *Id.*  The Court does not decide this issue of nonbankruptcy law

either, and does not block the claim based on predictions as to how another court might decide it. *Id.* This Court leaves the issue to the court hearing the Bellwether actions. *Id.*

40.     New GM agreed to comply with the Motor Vehicle Safety Act under Section 6.15(a) of the Sale Agreement.  New GM notes properly that this covenant was not an Assumed Liability, and that vehicle owners were not third party beneficiaries of the Sale Agreement. But Plaintiffs nevertheless argue that they have a state law right of action for conduct of that character.  Here too the Court leaves this issue to the judge or judges hearing the underlying claims. *See* Decision at 41 & n.67.

B.      *The MDL Complaint*

    1)      *Blue—"[N]amed plaintiffs and plaintiff classes/subclasses
        asserting claims based on Old GM vehicles"*

41.     The Economic Loss Claims in the MDL Complaint asserted by the Ignition Switch Plaintiffs that once appeared in the Pre-Sale Consolidated Complaint may be asserted against New GM so long as they are genuinely Independent Claims[3]—and where they then will be subject, of course, to determinations in the MDL as to the nature and extent of New GM duties to purchasers of Old GM manufactured vehicles, and whether MDL plaintiffs state causes of action under applicable nonbankruptcy law. *See* Decision at 42-43.

42.     With respect to vehicles manufactured by Old GM, the Ignition Switch Plaintiffs recognize that they cannot premise their claims on anything done by Old GM.  Plaintiffs allege claims crafted on the premise that New GM still had duties to owners of cars manufactured by Old GM.  To the extent New GM had the requisite duties, the Claims are in fact Independent Claims.  This Court does not rule on this issue and defers on such nonbankruptcy matters to the

---

[3]     Independent Claims include, but may not be limited to, claims against New GM for violations of the Safety Act; of other statutory or common law requirements imposing a duty to recall; of consumer protection statutes; for fraud; for breach of implied warranties of merchantability and violations of the Magnuson Moss Warranty Act; and for unjust enrichment. *See* Decision at 44 n. 72.

MDL Court.  *See* Decision at 44.

> 2)      *Yellow—"[A]llegations based on Old GM conduct that supported claims for Retained Liabilities"*

43.     The claims and allegations asserted in the MDL Complaint containing references to "GM" alone that merge references to Old GM and New GM are not permitted.  *See* Decision at 45.  However, the MDL Complaint may refer to "GM-branded vehicles" when the context is clear that they can refer only to New GM—and where they do not, by words or implication, blend the periods during which vehicles were manufactured by Old GM, on the one hand, and New GM, on the other. *See* Decision at 45.

44.     New GM's objection to allegations by which conduct of Old GM employees is imputed, "automatically and wholesale," into the MDL Complaint is overruled from a bankruptcy perspective.  The Court agrees with New GM that imputation matters must be determined in context, and if imputation is to be found, it must be found in the context of the imputation of identified individuals or identified documents for particular purposes.  *See* Decision at 45-46.  But the Court decided that there is nothing wrong with another court deciding imputation matters, and that other courts will have a better sense of imputation's propriety in context than this Court would.  *See* Decision at 46.

45.     Plaintiffs' claims in the MDL Complaint may include allegations of Old GM conduct prefaced by words like "New GM knew that . . ." because those four words are of critical importance, and, if proven, transform the basis for imposing liability from successorship to knowledge that is one of the predicates to imposition of liability.  *See* Decision at 46.  Those four words, which now require a showing of New GM knowledge, are essential to establishing New GM's culpability—all apart, of course, from establishing any necessary duties, private rights of action, and any other requirements for stating causes of action against New GM for cars

manufactured by Old GM.  *See* Decision at 46-47.

> *3)*  *Pink—"[C]laims alleging that New GM committed fraud*
> *in connection with Old GM's bankruptcy"*

46.    The claims in the MDL and Adams Complaints seeking to hold New GM responsible for Old GM's failure to give plaintiffs notice in the Old GM chapter 11 case cannot proceed under the April Decision and Injunction because they seek to impose liability based, in material part, on Old GM conduct, and assert forbidden successor liability claims dressed up to look like something else. And they rest on duties that do not exist under bankruptcy law. *See* Decision at 47 & n.76.

47.    As stated in the April Decision, plaintiffs could assert otherwise viable claims against New GM for any causes of action that might exist "arising solely out of New GM's own, independent, post-Closing acts, so long as those plaintiffs' claims do not in any way rely on any acts or conduct by Old GM." *See* Decision at 48.

48.    The prohibited claims and allegations are deemed stricken and/or inoperative so the prosecution of the affected actions may continue.  *Cf.* Decision at 4, 66.

> *4)*  *Orange—"[C]laims alleging plaintiffs are entitled to contractual damages as*
> *third-party beneficiaries of the Sale Agreement."*

49.    The plaintiffs' potential claims under the Safety Act may proceed against New GM in the MDL Complaint. *See* Decision at 52-53.  The basis of such causes of action calls for a determination of nonbankruptcy law and this Court does not rule on the extent to which claims of this character are actionable as a matter of nonbankruptcy law.  *See* Decision at 52-53. However, the asserted rights of action under the Safety Act are Independent Claims and may proceed for determination by the MDL Court.  *See* Decision at 53.

C.    *The State Complaints*

    1)    *Yellow—Allegations based on Old GM conduct*

    50.    Allegations in the State Complaints may impute to New GM knowledge inherited from Old GM and knowledge developed by New GM, to New GM to the extent permissible under nonbankruptcy law.  *See* Decision at 54.  The Court's rulings as to Imputation in other actions apply to the States Cases, as well.  *See* Decision at 53-54.

    51.    New GM's objection to allegations of pre-Sale conduct in the State Complaints, blending allegations relating to both Old GM and New GM without distinction, and referring to "GM-branded vehicles" are sustained. *See* Decision at 53-55, 54 n. 93

    52.    In the California complaint, the use of the catch-all "GM-branded vehicles" is impermissible.  *See* Decision at 54.  The allegations contained in the following paragraphs impermissibly allege Old GM conduct:  paragraphs 46 (speaking of acts in 2001), 47 (speaking of DeGiorgio's alleged concealment "while working for Old GM"), 48-54, 58-60, 71, 95-96, 112-114, 189-190, and 200-202.  *See* Decision at 54.  Additionally the following paragraphs contain impermissible blending of Old GM and New GM conduct, and must be clarified; they will pass through the bankruptcy gate only to the extent they intended to make reference to New GM:  paragraphs 192, 195, 196, 198, 199, 203-206, and 211.  *See* Decision at 54 n. 93. However, the following paragraphs which allege that New GM knew of safety issues (even if from the time of its inception), acquired inherited knowledge of such, or gained new knowledge of such, are benign and thus permissible:  paragraphs 9, 11, 16, 18, 22, 32, 43, 44, and 45.  *See* Decision at 54.

    53.    In the Arizona complaint, which includes many identical allegations to those contained in the California complaint, allegations which make reference to plainly Old GM conduct are not permissible.  *See* Decision at 54.  The following paragraphs which include

allegations of Old GM conduct are not permissible:  paragraphs 92, 93, and 357; *see* Decision at 54-55; as are the paragraphs which make it impossible to tell whether it is Old GM or New GM conduct which is alleged:  paragraphs 136, 139-180 and 289-310.  *See* Decision at 55 n. 95. However, the Arizona complaint's allegations that New GM knew of matters (even if from the date of its inception) are benign and thus permissible, including paragraphs:  19, 81, 135, 137, 138, 139, 335, and 499.  *See* Decision at 54.

54.    Thus the State Complaints may proceed if, but only if, they are amended to fix the deficiencies in the Yellow Category noted above; but remain stayed only until such amendments occur.  *See* Decision at 55.

2)    *Blue—Allegations relating to vehicles manufactured by Old GM*

55.    The claims in the State Complaints regarding vehicles manufactured by Old GM may proceed to the extent to which New GM can be held liable under nonbankruptcy law for acts or omissions after the 363 Sale—*i.e.*, after sales of vehicles to consumers. *See* Decision at 56. Although this Court defers this determination to the courts hearing such cases, to the extent nonbankruptcy law imposes duties at the time of a vehicle's sale only, and the relevant vehicle sales took place when New GM had not yet been formed and only Old GM was in existence, claims premised on any breaches of such duties are barred by the Sale Order, the April Decision, and the Judgment.  *See* Decision at 56.

D.    *The Elliott, Sesay and Bledsoe Complaints*

1)    *Blue—Allegations Involving Old GM manufactured vehicles*

56.    The economic loss claims asserted in the *Elliott*, *Sesay*, and *Bledsoe* Complaints are Independent Claims.  *See* Decision at 58. New GM's objections are overruled with respect to ignition switch claims and sustained with respect to non-ignition switch claims.  *See* Decision at 59.

     2)     *Green—Claims Premised on Old GM conduct*

57.     The successor liability claim in the *Bledsoe* complaint violates the Sale Order and may not proceed. *See* Decision at 59.

58.     References to conduct by Old GM, and references to "New GM" as "GM" violate the Sale Order. *See* Decision at 59-60.

     3)     *Yellow—Claims Seeking "to automatically impute" Old GM's knowledge to New GM*

59.     Allegations in *Elliott*, *Sesay* and *Bledsoe* Complaints may impute to New GM knowledge inherited from Old GM and knowledge developed by New GM, to the extent permissible under nonbankruptcy law. *See* Decision at 54, 60. The Court's rulings as to imputation in other actions apply to these cases, as well. *See* Decision at 60.

     4)     *Pink—Claims Seeking Punitive Damages from New GM with respect to Old GM manufactured vehicles.*

60.     Allegations in *Elliott* and *Sesay* Complaints for punitive damages are permissible to the extent that they are asserted in connection with Independent or retained Product Liability claims. *See* Decision 29-34, 60. Such allegations related to non-ignition switch claims violate the Sale Order. *See* Decision at 42 n.70, 59, 60.

     5)     *Other claims*

61.     Allegations in the *Elliott*, *Sesay* and *Bledsoe* Complaints relating to Independent Claims against New GM for negligent infliction of economic loss, negligent infliction of increased risk of personal injury, breach of duty to warn, civil conspiracy, and joint action depend on whether New GM had such duties under nonbankruptcy law and the Court leaves such issues to the nonbankruptcy court hearing these cases. *See* Decision at 58, 62-63.

62.     The *Elliott*, *Sesay* and *Bledsoe* Complaints will remain stayed until they are amended in accordance with this Order. *See* Decision at 59, 60.

E.     *Other Complaints*

   1)     *"Failure to Recall/Retrofit Vehicles"*

63.     Obligations, if any, that New GM had to recall or retrofit Old GM vehicles were not Assumed Liabilities, and New GM is not responsible for any failures of Old GM to do so. *See* Decision at 61.  But whether New GM had a duty to recall or retrofit previously sold Old GM vehicles that New GM did not manufacture is a question of nonbankruptcy law.  *Id.*  The Court does not decide whether there is the requisite duty under nonbankruptcy law, but allows this claim to be asserted by the plaintiffs, as it has been asserted by the plaintiff in Moore v. Ross, leaving determination of the duty issue to the court hearing this action. *Id.*

   2)     *"Negligent Failure to Identify Defects or Respond to Notice of a Defect"*

64.     Whether New GM had a duty to identify or respond to defects in previously sold Old GM vehicles that New GM did not manufacture is a question of nonbankruptcy law.  *See* Decision at 62.   The Court does not decide whether there is the requisite duty under nonbankruptcy law, and allows this claim to be asserted by plaintiffs, leaving that issue to the court hearing that action.  *See* Decision at 62.

   3)     *"Negligent Infliction of Economic Loss and Increased Risk"*

65.     Claims that New GM had a duty to warn consumers owning Old GM manufactured vehicles of the Ignition Switch Defect but instead concealed it, and by doing so, the economic value of the plaintiffs' vehicles was diminished are permissible to the extent, but only the extent, that New GM had an independent "duty to warn" owners of Old GM manufactured cars of the defect, as relevant to situations in which no one is alleged to have been injured by that failure, but where the vehicles involved are alleged to have lost value as a result. *See* Decision at 62.  This is a question of nonbankruptcy law, which the Court leaves to the nonbankruptcy court(s) hearing the underlying actions. *Id.*

4)      *"Civil Conspiracy"*

66.     *De Los Santos v. Ortega*, in Texas state court, and the Peller Complaints in the District of Columbia, involve claims that New GM was involved "in a civil conspiracy with others to conceal the alleged ignition switch defect." *See* Decision at 62-63. Claims of this character were not Assumed Liabilities. *See* Decision at 63. The extent to which they might constitute Independent Claims requires a determination of nonbankruptcy law, beyond that, the Court leaves the determination of the nonbankruptcy issue as to whether claims of this sort are actionable, with respect to vehicles previously manufactured and sold by a different entity, to the nonbankruptcy court hearing the underlying action. *Id.*

5)      *"Section 402B—Misrepresentation by Seller"*

67.     Claims based on "Section 402B-Misrepresentation by Seller" fall within the definition of assumed Product Liabilities, and such claims may be asserted against New GM, *provided however*, whether New GM is liable for such claims shall be determined by the nonbankruptcy courts overseeing such lawsuits. *See* Decision at 64.

6)      *Claims Based on Pre-Sale Accidents*

68.     Claims based on *pre*-Sale accidents, like the Coleman action in the Eastern District of Louisiana, involving, by definition, Old GM manufactured vehicles should be dismissed, or should at least be stayed pending the resolution of the appeal of the April Decision and Judgment. *See* Decision at 64-65. These cases are currently impermissible under the Sale Order, April Decision and Judgment, and cannot proceed. *See* Decision at 65.

7) *Amended Complaints*

69.     For the avoidance of any doubt, complaints amended in compliance with this Judgment may be filed in the non-bankruptcy courts with jurisdiction over them, without

violating any automatic stay or injunction or necessitating further Bankruptcy Court approval to

file same.  *See e.g.*, Decision at 14, 17 and 43.

Dated: New York, New York
          December __, 2015

_____
UNITED STATES BANKRUPTCY JUDGE