# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------- x
In re                                          :    Chapter 11
                                               :
MOTORS LIQUIDATION COMPANY, et al.,            :    Case No.: 09-50026 (REG)
          f/k/a General Motors Corp., et al.   :
                                               :    (Jointly Administered)
                             Debtors.          :
                                               :
---------------------------------------------------------------- x
```

JUDGMENT ON IMPUTATION,
PUNITIVE DAMAGES, AND OTHER
NO-STRIKE AND NO-DISMISSAL
PLEADINGS ISSUES

For the reasons set forth in the Court's *Decision on Imputation, Punitive Damages, and Other No-Strike and No-Dismissal Pleadings Issues*, entered on November 9, 2015 ("**Decision**"),[1] it is hereby ADJUDGED as follows:

1.      Knowledge of New GM personnel, whenever acquired, may be imputed to New GM consistent with nonbankruptcy law.  But knowledge of Old GM personnel may not be imputed to New GM except (a) on assumed Product Liabilities Claims (to the extent consistent with nonbankruptcy law), or (b) to the extent that, after such Old GM personnel were hired by New GM if it can be shown (*e.g.*, because it is the knowledge of the same employee or because it was communicated to a New GM employee) that New GM had such knowledge too as a matter of nonbankruptcy law.  Further, to the extent, as a matter of nonbankruptcy law, the knowledge may be imputed as a consequence of documents in a company's files, Ddocuments in New GM's files may be utilized as a predicate for such knowledge, even if they first came into being before the sale from Old GM to New GM.  Allegations of that knowledge or notice, even if alleged in

---

[1]      Unless otherwise defined herein, capitalized terms shall have the meanings assigned to them in the Decision.

1

**Comment [SA1]:** The insertion of this clause here and in the following two sentences in this paragraph is intended to remind other courts that imputation between an employee and its employer is not automatic and must be permitted under nonbankruptcy law.

general terms, can be asserted by the plaintiffs with nonbankruptcy courts determining the extent to which such allegations have been alleged with sufficiently specificity ~~specifically~~ to warrant findings of imputation.

2.    Any acts by New GM personnel, or knowledge of New GM personnel (including knowledge that any of them might have acquired while previously working at Old GM) may, consistent with the April Decision and Judgment, be imputed to New GM to the extent such is appropriate under applicable nonbankruptcy law.  Likewise, to the extent, as a matter of nonbankruptcy law, knowledge may be imputed as a consequence of documents in a company's files, documents in New GM's files may be utilized as a predicate for such knowledge, even if they first came into existence before the sale from Old GM to New GM.  Those general principles may be applied in courts other than this one in the context of particular allegations that rely on those principles—without the need for the bankruptcy court to engage in further examination of particular allegations beyond the extent to which it has done so in the Decision.

3.    The propriety of imputation turns on the specifics of the situation.  Imputation must be found in the context of the imputation of identified individuals or identified documents, for particular purposes.  New GM may not be saddled with imputation of Old GM knowledge by successorship alone, as a substitute for showing that a fact was actually known to a New GM employee or could be ascertained from New GM's files.  In actions alleging Product Liabilities Claims and Independent Claims, allegations that New GM's knowledge may be imputed to it starting with the first day of its existence may be asserted, with the ultimate determination being made by the court hearing the case.  Plaintiffs asserting such Claims may make allegations starting with "New GM knew . . ." or "New GM was on notice that . . . ."

4.    Punitive damages with respect to Product Liabilities ~~Claims~~ or Economic Loss

**Comment [SA2]:** Added to show that knowledge is relevant only if it is an element of a viable Independent Claim and that this Court was not deciding whether the so-called Independent Claims asserted against New GM after the entry of the Sale Order(as modified by the April 15 Decision) were viable under nonbankruptcy law.

2

claims involving Old GM manufactured vehicles may be sought against New GM to the extent—
but only to the extent—they rely solely on New GM knowledge or conduct.  Those claims may
not be based on Old GM knowledge or conduct.  But they may be based on knowledge of New
GM employees that was "inherited" from their tenure at Old GM (or documents inherited from
Old GM), and may be based on knowledge acquired after the 363 Sale by New GM personnel, to
the extent otherwise permitted under nonbankruptcy law.

5.      New GM may be held liable for compensatory damages on Product Liabilities
Claims based on Old GM conduct, New GM conduct or both.  However, Post-Closing Accident
Plaintiffs in Old GM Vehicles with the Ignition Switch Defect (as defined in the April Decision)
can base their claims for punitive damages only on New GM conduct or knowledge.

> **Comment [DS3]:** The only modification to the Sale Order for Old GM vehicles are those with the Ignition Switch Defect.  These are the Independent Claims.

6.      Independent Claims against New GM cannot be based, for either compensatory or
punitive damages purposes, on Old GM knowledge and conduct.  Damages of any character on
Independent Claims must be based solely on New GM's knowledge and conduct.

7.      In actions alleging Product Liabilities Claims with the Ignition Switch Defect and
Independent Claims with the Ignition Switch Defect, New GM may be held responsible, on
claims for both compensatory and punitive damages, for its own knowledge and conduct.  New
GM might have acquired relevant knowledge when former Old GM employees came over to
New GM or New GM took custody of what previously were Old GM records.  Reliance on that,
for punitive damages purposes, is permissible.[2]

8.      To the extent New GM employees actually had knowledge relevant to post-Sale
accident claims or Independent Claims (even if it was inherited) that was acquired in fact rather
than by operation of law (such as any kind of successorship theory), plaintiffs in actions

---

[2]    Knowledge New GM might have acquired in this manner is referred to herein as "inherited" information.

asserting such Claims are free to base punitive damages claims on evidence of such knowledge to the extent nonbankruptcy law permits.

9.      Information obtained by New GM after the Sale may be used for punitive damages purposes as well.  The extent to which such after-acquired information is relevant to punitive damages claims is a matter of nonbankruptcy law, as to which the Court expresses no view.  Evidence of information obtained by New GM after the sale may be relied upon, for punitive damages purposes, to the extent otherwise appropriate in the underlying actions.

10.     To the extent Ignition Switch~~Economic Loss~~ Pp~~l~~aintiffs (or, for that matter, State Cases Plaintiffs alleging the Ignition Switch Defect) make allegations based upon inherited information or information obtained by New GM after the Sale, evidence introduced using those pathways is permissible, but it is up to the judges hearing those cases to decide the propriety of reliance on such evidence to punitive damage claims.

<u>New GM's Four Contexts</u>

*1)     Personal Injuries in Post-Sale Accidents Involving Vehicles
        Manufactured by Old GM*

11.     Product Liabilities compensatory damages claims involving vehicles manufactured by Old GM were contractually assumed by New GM (and thus are permissible under the Sale Order, April Decision, and Judgment); punitive damages claims were not assumed by New GM.  Thus punitive damages in such actions may not be premised on anything Old GM knew or did.

12.     Nevertheless, punitive damages may still be sought in actions based on post-Sale accidents involving vehicles manufactured by Old GM with the Ignition Switch Defect to the extent the punitive damages claims are premised on New GM action or inaction after it was on notice of information "inherited" by New GM or information developed by New GM post-Sale.

4

2)    *Personal Injuries in Post-Sale Accidents Involving Vehicles Manufactured by New GM*

13.    Personal injury compensatory damages claims against New GM involving vehicles manufactured by New GM never were foreclosed under the Sale Order and remain permissible under the April Decision and Judgment.

14.    Claims against New GM for punitive damages involving New GM manufactured vehicles likewise were never foreclosed under the Sale Order and likewise remain permissible under the April Decision and Judgment.

15.    The underlying allegations and evidence used to support punitive damages claims involving New GM manufactured cars can be anything appropriate under nonbankruptcy law—including, if otherwise appropriate, not just information "inherited" by New GM or developed by New GM post-Sale, but also evidence of Old GM's pre-Sale knowledge and conduct. Except as provided in the June Judgment and the April Decision on which it was based, the provisions in the Sale Order shall remain unmodified and in full force and effect, including without limitation paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for Old GM's actions or inactions (*i.e.,* Old GM conduct). The Sale Order never professed to affect claims against New GM with respect to New GM manufactured cars in any way.

**Comment [DS4]:** This addition is intended to demonstrate that paragraph AA of the Sale Order was not amended by the previous statement.

3)    Non-Product Liabilities Claims (in both personal injury and economic loss complaints) *I*nvolving *V*ehicles *M*anufactured by Old GM "and/or" New GM

(a)(i)   *Personal Injury Actions-Old GM Manufactured Vehicles*

16.    Because only Product Liabilities claims were assumed by New GM, other claims involving Old GM manufactured vehicles—including claims for compensatory damages on other causes of action and, as discussed above, for punitive damages—are Retained Liabilities.

5

New GM is not responsible for Retained Liabilities. New GM is only liable for viable Independent Claims. ~~them except to the extent that they are premised solely on its own conduct.~~

> **Comment [SA5]:** Retained Liabilities are by definition not New GM liabilities. The only liabilities that certain plaintiffs can assert against New GM with respect to Old GM Vehicles after the Sale Order are viable Independent Claims under nonbankruptcy law.

17.    With respect to post-Sale Non-Product Liabilities claims asserted in actions involving personal injuries suffered in vehicles manufactured by Old GM with the Ignition Switch Defect, punitive damages may be assessed to the extent, but only the extent, they are premised on New GM knowledge and conduct. Plaintiffs may refer to inherited knowledge and to knowledge acquired after the 363 Sale with respect to post-Sale Non-Product Liabilities claims. But punitive damages sought as an adjunct to claims in this category may not rely on the conduct of Old GM and this is true, as always, with respect to both allegations in pleadings and any evidence of such.

*(a)(ii)   Personal Injury Actions-New GM Manufactured Vehicles*

18.    For claims involving vehicles manufactured by New GM, plaintiffs do not need the Court's permission to assert claims for Non-Product Liabilities compensatory damages claims any more than they need the Court's permission to assert claims for Product Liabilities compensatory damages claims. The Sale Order did not foreclose claims against New GM involving New GM manufactured vehicles, and compensatory damage claims (on whatever theory) with respect to New GM manufactured vehicles may proceed against New GM without interference from this Court. Nor, do plaintiffs need the Court's permission to assert punitive damages claims incident to Non-Product Liabilities Claims involving New GM manufactured vehicles.

19.    With respect to the evidence used to support punitive damages claims in actions involving New GM manufactured vehicles, evidence of inherited knowledge and knowledge acquired after the 363 Sale may be asserted and used; that is simply knowledge New GM had before the accident took place. Relevant evidence of Old GM knowledge and conduct may be

asserted and used, as well.  Except as provided in the June Judgment and the April Decision on which it was based, the provisions in the Sale Order shall remain unmodified and in full force and effect, including without limitation paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for Old GM's actions or inactions (*i.e.*, Old GM conduct).

*(b)(i)  Economic Loss Actions-Old GM Manufactured Vehicles*

20.    Because claims only for Product Liabilities were assumed by New GM, other claims involving Old GM manufactured vehicles are Retained Liabilities.  New GM is not responsible for those other claims that are Retained Liabilities.  except tTo the extent that such claimsthey relating to vehicles manufactured by Old GM with the Ignition Switch Defect are premised solely on New GM's own conduct, theyand hence may be regarded as Independent Claims.  The same is true for punitive damages claims just as it is for compensatory damages claims—and for both the assertion of claims for punitive damages and the evidence that might support them.

21.    Thus claims for punitive damages arising from Economic Loss actions involving Old GM manufactured vehicles with the Ignition Switch Defect cannot be asserted except for any that might be recoverable in connection with Independent Claims, and then based only on New GM knowledge and conduct.  The same is true with respect to the evidence that might be offered to support those punitive damages claims.

22.    For vehicles already manufactured and sold before New GM came into existence, whether Independent Claims for Economic Loss relating to the Ignition Switch Defect can be asserted against New GM is matter of nonbankruptcy law, and not for this Court to decide.  This question is better decided by the judge(s) hearing the nonbankruptcy claims that have passed through the bankruptcy court gate..

*(b)(ii)   Economic Loss Actions-New GM Manufactured Vehicles*

23.     Economic Loss Claims with respect to New GM manufactured vehicles—which by definition were manufactured after New GM came into being—are not proscribed by the Sale Order.  Nor does the Sale Order proscribe punitive damages claims sought in actions against New GM for Economic Loss involving New GM vehicles.

24.     The evidence used to support such punitive damages claims may include evidence of inherited knowledge; of knowledge acquired after the 363 Sale; and, if nonbankruptcy courts regard such as appropriate, any relevant Old GM knowledge and conduct, as well.  <u>Except as provided in the June Judgment and the April Decision on which it was based, the provisions in the Sale Order shall remain unmodified and in full force and effect, including without limitation paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for Old GM's actions or inactions (*i.e.*, Old GM conduct.</u>  With respect to any punitive damages claims in Economic Loss actions involving New GM vehicles, those claims may be asserted against New GM.

*4)     Assertedly Independent Claims that Are In Reality Retained Liabilities of Old GM*

25.     To the extent that any claims against New GM involving Old GM manufactured vehicles are for Product Liabilities Claims <u>involving the Ignition Switch Defect</u> or genuinely Independent Claims <u>involving the Ignition Switch Defect</u>, claims for punitive damages against New GM may be sought in connection with them, but the evidence supporting such claims can be based only on New GM's knowledge and acts.  That evidence can include inherited knowledge and knowledge acquired after the 363 Sale, but not any acts, or non-inherited knowledge, of Old GM.  This issue does not arise in connection with claims against New GM involving vehicles New GM itself manufactured.

26.     Plaintiffs cannot proceed with "purportedly Independent Claims" that really are "Retained Liabilities" of Old GM.  To the extent particular claims or allegations have not yet been brought to this Court's attention, but New GM wishes objections to such to be heard, those objections can be heard by the judges hearing the nonbankruptcy cases.

<u>Particular Allegations in Marked Pleadings</u>

A.    *The Bellwether Actions Complaints*

27.     New GM identified five categories of allegations in the Bellwether Marked Complaints, highlighted by color, that New GM contended were violative of the Sale Order, the April Decision, the Judgment, or some combination of them.  Taking them by color and by New GM's stated objection to them, the Court rules as follows:

> *1)*     *Pink—"Allegations that wrongly assert New GM is the successor of Old GM"*

28.     Allegations referring to New GM as "successor", de facto successor and, especially, as a "mere continuation," must be stricken or removed, and the affected complaints remain stayed unless and until they are amended consistent with this Court's rulings.

> **Comment [SA6]:** November Decision at p. 36, n 62

29.     Likewise, allegations that do not distinguish between Old GM and New GM, and that continue to refer to "General Motors" or "GM" must be stricken or revised so that it is clear whether the reference is to Old GM or New GM.  Complaints using that generic formulation of "General Motors" or "GM" will remain stayed unless and until they are amended to cure violations of that character.

30.     Allegations that New GM engaged in activities before the closing of the 363 Sale (*i.e.*, that New GM designed a vehicle that was manufactured and sold by Old GM) must be stricken or revised, and complaints that contain this type of allegation will remain stayed unless and until they are amended to cure violations of that character.

9

31.    As noted in the April Decision, plaintiffs' complaints may say, *inter alia*, that New GM purchased the assets of Old GM; that New GM assumed product liability claims from Old GM; and that New GM acquired specified knowledge from Old GM.

   2)   *Orange—"Allegations related to punitive damages, which*
        *were not assumed by New GM"*

32.    Claims against New GM for punitive damages with respect to Old GM manufactured vehicles—even where compensatory damages might legitimately be sought for Product Liabilities Claims—were not assumed.  Thus, punitive damages in such cases cannot be based on pre-Sale Old GM conduct, or evidence of such.

33.    But New GM may still be liable for punitive damages based on knowledge it inherited from Old GM, and any knowledge it developed after the 363 Sale.  Punitive damages may be sought against New GM for post-closing accident cases involving Old GM manufactured vehicles with the Ignition Switch Defect to the extent the factual allegations and evidence supporting the punitive damages claims are consistent with this Court's rulings herein and in the Decision.

   3)   *Blue—"[A]llegations seeking to impute wholesale Old GM's*
        *knowledge to New GM"*

34.    Imputation is context specific, but this Court assumes that under nonbankruptcy law which will be applied in the actions pending against New GM, the acts and knowledge of employees will often be imputed to the principal.  This Court also assumes that likewise to be true with respect to notice of documents within a company's files.  But these nonbankruptcy law issues are inappropriate for this Court's determination.

35.    This Court also holds that allegations of imputation to New GM premised on the knowledge of New GM employees, or documents in New GM's files, may be asserted against New GM.  After that, issues as to the propriety of imputation in particular contexts in particular

10

cases are up to the judges hearing those cases.

    *4)*     *Green—"[A]llegations involving Claims that are Old GM Retained Liabilities"*

36.    With respect to claims involving vehicles manufactured by Old GM other than Product Liabilities claims, such as fraud, negligent representation, duty to warn after the vehicle's sale, and violation of consumer protection statutes at the time of sale, insofar as Old GM manufactured vehicles are concerned, New GM did not assume such claims. New GM is liable for Product Liabilities only.

> **Comment [SA7]:** Intended to make the ruling explicit and clear.

37.    However, if Old GM had a duty, under nonbankruptcy law, to warn of the danger of driving a motor vehicle with a known defect, the violation of that duty to warn, when coupled with subsequent death or injury, might reasonably be argued to have had a causal effect on any death or personal injury that could have been avoided by the warning. Violations of any duty to warn by Old GM could be said to provide further support for any claims for death or personal injury that would be actionable even as classic Product Liabilities Claims. This Court expresses no view as whether, as a matter of nonbankruptcy law, failures to warn are actionable, or whether the requisite duties exist. But these allegations may be asserted against New GM as an assumed Product Liability Claim, and it will be up to the Judge hearing the case to determine whether it is a viable claim.

38.    In addition, some allegations highlighted in green are not subject to the above analysis because they charge New GM with violations of alleged duties that they assert New GM had to purchasers of earlier purchased vehicles with the Ignition Switch Defect. New GM can argue before other courts that such duties do not exist (or assert any other merits-based defenses to these allegations), but claims of this character that are based on New GM's own conduct and knowledge may be asserted against New GM and it will be up to the Judge hearing

the case to determine whether it is a viable claim.

> 5)    *Yellow—"[A]llegations based on New GM's conduct*
> *relating to a supposed failure to warn after the vehicle sale"*

39.    Here, the allegations concern alleged failures to warn by New GM prior to any accidents, as contrasted to alleged failures by Old GM.  The Court does not need to determine whether such claims were assumed, as they rest on conduct allegedly on the part of New GM itself.  This issue is one of nonbankruptcy law—whether New GM, as an entity that did not manufacture or sell the vehicle, had a duty, enforceable in damages to vehicle owners, to notify people who had previously purchased Old GM vehicles of the Ignition Switch Defect.   The Court does not decide this issue of nonbankruptcy law either, and does not block the claim based on predictions as to how another court might decide it.  This Court leaves the issue to the court hearing the Bellwether actions.

40.    New GM agreed to comply with the Motor Vehicle Safety Act under Section 6.15(a) of the Sale Agreement.  New GM notes properly that this covenant was not an Assumed Liability, and that vehicle owners were not third party beneficiaries of the Sale Agreement. But Plaintiffs nevertheless argue, though without any support in this Court, that they have a state law right of action for conduct of that character.  Here too the Court leaves this issue to the judge or judges hearing the underlying claims.

B.    *The MDL Complaint*

> 1)    *Blue—"[N]amed plaintiffs and plaintiff classes/subclasses asserting claims based*
> *on Old GM vehicles"*

41.    The Economic Loss Claims in the MDL Complaint asserted by the Ignition Switch Plaintiffs that once appeared in the Pre-Sale Consolidated Complaint may be asserted

12

**Comment [SA8]:** Language omitted from the November Decision. See page 41, n67. Provides context.

against New GM so long as they are genuinely Independent Claims[3]—and where they then will be subject, of course, to determination in the MDL Proceeding as to the nature and extent of New GM duties to purchasers of Old GM manufactured vehicles, and whether MDL plaintiffs state causes of action under applicable nonbankruptcy laws.

42.    With respect to vehicles manufactured by Old GM, the Ignition Switch Plaintiffs recognize that they cannot premise their claims on anything done by Old GM.  Plaintiffs allege claims crafted on the premise that, after the 363 Sale Order,  New GM still had duties to owners of cars manufactured by Old GM.  To the extent New GM had the requisite duties, the claims are in fact Independent Claims.  This Court does not rule on this issue and defers on such nonbankruptcy matters to the MDL Court.

   *2)    Yellow—"[A]llegations based on Old GM conduct that supported claims for Retained Liabilities"*

43.    The claims and allegations asserted in the MDL Complaint containing references to "GM" alone that merge references to Old GM and New GM are not permitted.  However, the MDL Complaint may refer to "GM-branded vehicles" when the context is clear that they can refer only to New GM—and where they do not, by words or implication, blend the periods during which vehicles were manufactured by Old GM, on the one hand, and New GM, on the other.

44.    New GM's objection to allegations by which conduct of Old GM employees is imputed, "automatically and wholesale," into the MDL Complaint is overruled from a bankruptcy perspective.  The Court agrees with New GM that imputation matters must be

---

[3]    Claims against New GM that involve the determination of the existence of duties under state and federal law, like claims Independent Claims include, but may not be limited to, claims against New GM for violations of the Safety Act; of other statutory or common law requirements imposing a duty to recall; of consumer protection statutes; for fraud; for breach of implied warranties of merchantability and violations of the Magnuson Moss Warranty Act; and for unjust enrichmentenrichment are nonbankruptcy issues and the Court defers to the MDL Court to decide these issues.

**Comment [SA9]:** Footnote 3 language, as modified herein,  is taken from the November Decision at page 44, n72.  The Court did not rule those causes of action were Independent Claims. Rather, it held that those causes of action are nonbankruptcy matters and the viability of such claims under nonbankruptcy law should be made by the MDL court.
Plaintiffs language implies that the Court had ruled that such causes of action were viable Independent Claims under nonbankruptcy law, which is contrary to the November Decision.

**Comment [SA10]:** Intended to clearly provide that New GM acquired assets through a "free and clear" Sale Order, and plaintiffs so-called Independent Claims must be viewed through that bankruptcy prism.

determined in context, and if imputation is to be found, it must be found in the context of the imputation of identified individuals or identified documents for particular purposes. But the Court decided that there is nothing wrong with another court deciding imputation matters, and that other courts will have a better sense of imputation's propriety in context than this Court would.

45.     Plaintiffs' claims in the MDL Complaint may include allegations of Old GM conduct prefaced by words like "New GM knew that . . ." because those four words are of critical importance, and, if proven, transform the basis for imposing liability from successorship to knowledge that is one of the predicates to imposition of liability.  Those four words, which now require a showing of New GM knowledge, are essential to establishing New GM's culpability—all apart, of course, from establishing any necessary duties, private rights of action, and any other requirements for stating causes of action against New GM for cars manufactured by Old GM.  As a condition subsequent to getting through the gate, the plaintiffs will have to prove the New GM knowledge they allege, on the part of identified human beings, and by identified documents, to the satisfaction of the MDL court or any other court hearing these claims, and by competent proof, not on theories that New GM was a "successor" to Old GM. But that is a matter best handled by other courts.

**Comment [SA11]:** November Decision p47. The omitted language from the Decision provides relevant context.

> 3)     *Pink—"[C]laims alleging that New GM committed fraud in connection with Old GM's bankruptcy"*

46.     The claims in the MDL and Adams Complaints seeking to hold New GM responsible for Old GM's failure to give plaintiffs notice in the Old GM chapter 11 case cannot proceed under the April Decision and Injunction because they seek to impose liability based, in material part, on Old GM conduct, and assert forbidden successor liability claims dressed up to look like something else. And they rest on duties that do not exist under bankruptcy law.

14

47.    ~~As stated in the April Decision, plaintiffs could assert otherwise viable claims against New GM for any causes of action that might exist "arising solely out of New GM's own, independent, post-Closing acts, so long as those plaintiffs' claims do not in any way rely on any acts or conduct by Old GM.~~    This Court makes clear that the plaintiffs, who have missed the claims bar date are enjoined from looking for their recovery for that to New GM.

~~48.~~47.  The prohibited claims and allegations are deemed stricken before ~~and/or inoperative so the prosecution of~~ the affected actions may continue.

4)    *Orange—"[C]laims alleging plaintiffs are entitled to contractual damages as third-party beneficiaries of the Sale Agreement."*

~~49.~~48.  The Sale Agreement provides that plaintiffs are not third party beneficiaries of the Sale Agreement.  Plaintiffs do not dispute that. Plaintiffs further agree they are not asserting a private right of action under the Safety Act. Nevertheless, plaintiffs' assert they have potential claims under state law relating to the Safety Act. Though Plaintiffs have not told the Court the basis for such a cause of action, their contention, if true, calls for a determination of nonbankruptcy law which shall be done ~~may proceed against New GM in the MDL Complaint. The basis of such causes of action calls for a determination of nonbankruptcy law and this Court does not rule on the extent to which claims of this character are actionable as a matter of nonbankruptcy law.    However, the asserted rights of action under the Safety Act are Independent Claims and may proceed for determination~~ by the MDL Court.

C.    *The State Complaints*

1)    *Yellow—Allegations based on Old GM conduct*

50.    ~~Allegations in the State Complaints may impute to New GM knowledge inherited from Old GM and knowledge developed by New GM, to New GM to the extent permissible under nonbankruptcy law.    The~~ Court's rulings as to Imputation in other actions

15

**Comment [SA12]:** New GM's language is a summary of the Court's ruling from p52 of the November Decision. The Adams lawsuit was improperly premised on the language from the April Decision (the stricken language).  Plaintiffs reference to a proposition rejected by the Court is intended to lay the predicate for reasserting this claim once their case leaves the bankruptcy gate. The Court should provide for the dismissal with prejudice of this type of claim.

**Comment [SA13]:** Since the Adams type claim was also included in the Second Amended Complaint in MDL 2543, this additional paragraph which refers to deleting a cause of action (as contrasted to the dismissal of the Adams lawsuit relating to Pre-Sale Accident Claims) is included.

**Comment [SA14]:** This is more aligned to the Court's statements from the November Decision at pages 52-53.
Significantly, the Court did not rule that asserted rights under the Safety Act were viable Independent Claims which is what plaintiffs proposed language suggests. The ambiguity raised by their language must be eliminated by adhering much more closely to the language of the November Decision.

**Comment [SA15]:** A cross –reference eliminates any ambiguity created by trying to short-hand the Court's  imputation ruling into one sentence.

apply to the States Cases, as well.

51.      New GM's objection to allegations of pre-Sale conduct in the State Complaints, blending allegations relating to both Old GM and New GM without distinction, and referring to "GM-branded vehicles" are sustained.

52.      In the California complaint, the use of the catch-all "GM-branded vehicles" is impermissible.  The allegations contained in the following paragraphs impermissibly allege Old GM conduct: paragraphs 46 (speaking of acts in 2001), 47 (speaking of DeGiorgio's alleged concealment "while working for Old GM"), 48-54, 58-60, 71, 95-96, 112-114, 189-190, and 200-202.  Additionally the following paragraphs contain impermissible blending of Old GM and New GM conduct, and must be clarified; they will pass through the bankruptcy gate only to the extent they intended to make reference to New GM: paragraphs 192, 195, 196, 198, 199, 203-206, and 211.  However, the following paragraphs which allege that New GM knew of safety issues (even if from the time of its inception), acquired inherited knowledge of such, or gained new knowledge of such, are benign and thus permissible: paragraphs 9, 11, 16, 18, 22, 32, 43, 44, and 45.

53.      In the Arizona complaint, which includes many identical allegations to those contained in the California complaint, allegations which make reference to plainly Old GM conduct are not permissible.  The following paragraphs which include allegations of Old GM conduct are not permissible: paragraphs 92, 93, and 357; as are the paragraphs which make it impossible to tell whether it is Old GM or New GM conduct which is alleged: paragraphs 136, 139-180 and 289-310.  However, the Arizona complaint's allegations that New GM knew of matters (even if from its inception) are benign and thus permissible, including paragraphs: 19, 81, 135, 137, 138, 139, 335, and 499.

54.     Thus the State Complaints may proceed if, but only if, they are amended to fix the deficiencies in the Yellow Category noted above; but remain stayed only until such amendments occur.

*2)    Blue—Allegations relating to vehicles manufactured by Old GM*

55.     New GM cannot be held monetarily liable to the States (any more than it could be held liable to any other plaintiffs) for any violations (necessarily by Old GM) that took place before the 363 Sale. The extent to which New GM can be held liable under nonbankruptcy law for an Old GM manufactured vehicle with the Ignition Switch Defect for acts or omissions after the 363 Sale (which by definition is after the vehicle sale to the consumer) is a matter of ~~The claims in the State Complaints regarding vehicles manufactured by Old GM may proceed to the extent to which New GM can be held liable under~~ nonbankruptcy law which the Court leaves to the courts hearing the cases to decide. ~~for acts or omissions after the 363 Sale—*i.e.*, after sales of vehicles to consumers.~~ Although this Court defers this determination to the courts hearing such cases, to the extent nonbankruptcy law imposes duties at the time of a vehicle's sale only, and the relevant vehicle sales took place when New GM had not yet been formed and only Old GM was in existence, claims premised on any breaches of such duties are barred by the Sale Order, the April Decision, and the Judgment.

**Comment [SA16]:** Omitted language from page 56 of the November Decision that provides proper context.

D.      *The Elliott, Sesay and Bledsoe Complaints*

    1)      *Blue—Allegations Involving Old GM  manufactured vehicles*

    56.     The economic loss claims asserted in the *Elliott*, *Sesay*, and *Bledsoe* Complaints are not a model of clarity. To the extent they are actionable as matters of nonbankruptcy law, those claims asserted by Ignition Switch Plaintiffs are Independent Claims. The Court leaves this issue to nonbankruptcy courts after these complaints are amended to address their more egregious violations.

> **Comment [SA17]:** Language from p57-58 of the November Decision.

    57.     The claims of Ignition Switch Plaintiffs who purchased used Old GM manufactured vehicles after the closing of the 363 Sale are barred in the same manner as Ignition Switch Plaintiffs who purchased Old GM vehicles before the 363 Sale. To the extent there is an issue as to whether Independent Claims have been asserted by them against New GM, that matter will be decided by other courts.

> **Comment [SA18]:** The Court's ruling from p58 of the November Decision which was omitted from the Plaintiffs Proposed Judgment.

    56.58.  Non-Ignition Switch Plaintiffs are barred from asserting Independent Claims with respect to Old GM Vehicles. Until those deficiencies are cured, the Peller Complaints remained stayed. To the extent the Peller complaints allege claims for non-Ignition Switch matters against New GM for New GM manufactured vehicles, the Sale Order, April Decision and Judgment do not forbid them. ~~New GM's objections are overruled with respect to ignition switch claims and sustained with respect to non-ignition switch claims.~~

> **Comment [SA19]:** The Court's ruling from page 59 of the November Decision is made explicit so other courts and plaintiffs can more readily understand and follow.

    2)      *Green—Claims Premised on Old GM conduct*

    57.59.  The successor liability claim in the *Bledsoe* complaint violates the Sale Order and may not proceed. The Peller complaints will remain stayed until they are amended to unambiguously remove any reliance on wrongdoing of Old GM.

> **Comment [SA20]:** Part of the Court's ruling from page 59 of the November Decision.

    58.60.  References to conduct by Old GM, and references to "New GM" as "GM" violate the Sale Order. Plaintiffs may not rely on Old GM conduct as a predicate for claims against New

GM. Until these provisions are removed from the Peller complaints, the Peller actions remain stayed.

> Comment [SA21]: Part of the Court's ruling from page 60 of the November Decision.

3)    *Yellow—Claims Seeking "to automatically impute" Old GM's knowledge to New GM*

59.61.    Allegations in *Elliott*, *Sesay* and *Bledsoe* Complaints may impute to New GM knowledge inherited from Old GM and knowledge developed by New GM, to the extent permissible under nonbankruptcy law.    The Court's rulings as to imputation in other actions apply to these cases, as well.

4)    *Pink—Claims Seeking Punitive Damages from New GM with respect to Old GM manufactured vehicles.*

60.62.    Allegations in *Elliott* and *Sesay* Complaints for punitive damages are to be dealt with consistent with the principles set forth in this judgment. permissible to the extent that they are asserted in connection with Independent or retained Product Liability claims. Such allegations related to non-ignition switch claims violate the Sale Order.

> Comment [SA22]: Where cross-referencing makes sense, it eliminates the need to summarize a lengthier ruling, thus avoiding ambiguity.

5)    *Other claims*

61.    Allegations in the *Elliott*, *Sesay* and *Bledsoe* Complaints relating to Independent Claims against New GM for negligent infliction of economic loss, negligent infliction of increased risk of personal injury, breach of duty to warn, civil conspiracy, and joint action depend on whether New GM had such duties under nonbankruptcy law and the Court leaves such issues to the nonbankruptcy court hearing these cases.

> Formatted: Indent: Left: 0.5", No bullets or numbering

62.    The *Elliott*, *Sesay* and *Bledsoe* Complaints will remain stayed until they are amended in accordance with this Order.

> Comment [SA23]: This is in the Other Complaints section of the Plaintiffs Proposed Judgment.

E.    *Other Complaints*

1)    *"Failure to Recall/Retrofit Vehicles"*

63.   Obligations, if any, that New GM had to recall or retrofit Old GM vehicles were not Assumed Liabilities, *and New GM is not a successor to Old GM and New GM is not responsible for any failures of Old GM to do so.* But whether New GM had an independent duty to recall or retrofit previously sold Old GM vehicles with the Ignition Switch Defect that New GM did not manufacture is a question of nonbankruptcy law. The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law for such Old GM vehicles, but allows this claim to be asserted by the Ignition Switch pPlaintiffs and the Post-Closing Accident Plaintiffs (such as has been asserted by the plaintiff in *Moore v. Ross*) with the Ignition Switch Defect, leaving determination of whether this is a viable Independent Claim the duty issue to the court hearing this action. For the avoidance of doubt, claims referred to in this section may not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

   *2)   "Negligent Failure to Identify Defects or Respond to Notice of a Defect"*

64.   Obligations, if any, that New GM had to identify or respond to defects in previously sold Old GM Vehicles were not Assumed Liabilities, and New GM is not a successor to Old GM and is not responsible for any failures of Old GM to do so. But Wwhether New GM had an independent duty to identify or respond to defects in previously sold Old GM vehicles that New GM did not manufacture is a question of nonbankruptcy law. The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law for such Old GM Vehicles, and allows this claim to be asserted by the Ignition Switch pPlaintiffs and Post-Closing Accident Plaintiffs with the Ignition Switch Defect, leaving determination of whether this is a viable Indpendent Claim that issue to the court hearing that action. For the avoidance of

Comment [SA24]: Language is intended to show that New GM got the benefit of this finding from the Sale Order and that Plaintiffs so-called Independent Claims must ultimately not circumvent this provision. The Court stated this proposition on page 47 of the November Decision when it discussed, as a condition subsequent for getting through the bankruptcy gate, that successor liability claims dressed up to look like something else cannot be asserted against New GM.

Formatted: Font: Italic
Formatted: Font: Italic
Formatted: Font: Italic
Formatted: Font: Italic
Formatted: Font: Not Italic

Comment [SA25]: This is inserted to make explicit the Court's ruling as to who can assert an Independent Claim, and who cannot. See page 42, n70. Helps other courts and plaintiffs synthesize the Court's rulings.

Formatted: Font: Not Italic

Comment [SA26]: The Court incorporated by reference the findings it made on Failure to Recall cause of action. See page 61-62 of the November Decision.

Formatted: Font: Not Italic

doubt, claims referred to in this section may not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-closing Accident Plaintiffs against New GM.

   3)    *"Negligent Infliction of Economic Loss and Increased Risk"*

   65.    Claims that New GM had a duty to warn consumers owning Old GM manufactured vehicles of the Ignition Switch Defect but instead concealed it, and by doing so, the economic value of the plaintiffs' vehicles was diminished (such as been raised by the plaintiffs in *Elliott* and *Sesay*) were not Assumed Liabilities, and New GM is not a successor to Old GM and is not responsible for any failures of Old GM to do so. But whether are permissible to the extent, but only the extent, that New GM had an independent "duty to warn" consumers owners of previously sold Old GM manufactured cars of the defect is a matter of nonbankruptcy law. The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law to warn for such Old GM Vehicles with the Ignition Switch Defect, and allows this claim to be asserted by the Ignition Switch Plaintiffs to the extent, but only the extent, that New GM had an independent "duty to warn" owners of Old GM Vehicles of the Ignition Switch Defect

(as relevant to situations *in which no one is alleged to have been injured* by that failure, but where the vehicles involved are alleged to have lost value as a result). This is a question of nonbankruptcy law. Determination of whether this is a viable Independent Claim will be left which the Court leaves to the nonbankruptcy court(s) hearing the underlying actions. For the avoidance of doubt, claims referred to in this section may not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

**Formatted:** Font: Italic

**Comment [SA27]:** The language makes explicit that the Court's ruling for this cause of action is similar to how it treated the failure to recall cause of action.

64.66.

   *4)*   *"Civil Conspiracy"*

*De Los Santos v. Ortega*, in Texas state court, and the Peller Complaints in the District of Columbia, involve claims that New GM was involved "in a civil conspiracy with others to conceal the alleged ignition switch defect." Claims of this character were not Assumed Liabilities. The extent to which they might constitute Independent Claims requires a determination of nonbankruptcy law., beyond that, tThe Court leaves the determination of the nonbankruptcy issue as to whether claims of this sort are actionable, with respect to vehicles previously manufactured and sold by a different entity, to the nonbankruptcy court hearing the underlying action. For the avoidance of doubt, claims referred to in this section may not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

65.67.

   *5)*   *"Section 402B—Misrepresentation by Seller"*

66.68. Claims based on "Section 402B-Misrepresentation by Seller" fall within the definition of assumed Product Liabilities, and such claims may be asserted against New GM, *provided however*, whether New GM is liable for such claims shall be determined by the non-bankruptcy courts overseeing such lawsuits.

   *6)*   *Claims Based on Pre-Sale Accidents*

   69.   All Cclaims brought by Pre-Closing Accident Plaintiffsased on *pre* Sale accidents, (like the *Coleman* action in the Eastern District of Louisiana), involving, by definition, Old GM manufactured vehicles should have been dismissed, or should at least be stayed pending

22

the resolution of the appeal of the April Decision and June Judgment.  These cases are currently impermissible under the Sale Order, April Decision and June Judgment, and cannot proceed.

67.70.  Jurisdiction.  The Court shall retain exclusive jurisdiction to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment and/or the Decision on which it was based. The Judgment shall not be collaterally attacked, or otherwise subject to review or modification, in any Court other than this Court or any court exercising appellate authority over this Court.

> **Comment [SA28]:** This provision was in the Court's June 1 Judgment and should be included in the Judgment relating to the November Decision..

7)    *Amended Complaints*

68.71.  For the avoidance of any doubt, complaints amended in compliance with this Judgment may be filed in the non-bankruptcy courts with jurisdiction over them, without violating any automatic stay or injunction or necessitating further Bankruptcy Court approval to file same.  It will be up to the other courts (including the MDL court which has stayed many actions) to decide when it would be appropriate to file such amendments.

> **Comment [SA29]:** Many cases are stayed by MDL 2543 and this clause is intended to let those courts control their docket as to when amendments should be permitted.

Dated: New York, New York
        December __, 2015

_____
UNITED STATES BANKRUPTCY JUDGE