# Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                    :        Chapter 11
                                         :
MOTORS LIQUIDATION COMPANY, *et al.*,    :        Case No.: 09-50026 (REG)
    f/k/a General Motors Corp., *et al.*      :
                                         :
              Debtors.      :        (Jointly Administered)

---------------------------------------------------------------x

## JUDGMENT

      For the reasons set forth in the Court's *Decision on Imputation, Punitive Damages, and Other No-Strike and No-Dismissal Pleadings Issues*, entered on November 9, 2015 [Dkt. No. 13533] ("**Decision**");[1] and pursuant to the Court's "gatekeeper" role deciding what claims and allegations may be asserted by plaintiffs under the Sale Order, April Decision and June Judgment, deciding issues of bankruptcy law, but minimizing its role in deciding issues better decided by the nonbankruptcy courts adjudicating plaintiffs' claims, it is hereby ORDERED AND ADJUDGED as follows:[2]

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision. For purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt. No. 12826], at 3); (ii) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM Vehicle (as herein defined); (iii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that first occurred prior to the closing of the 363 Sale; and (iv) "**Post-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred after the closing of the 363 Sale.

The term "**Economic Loss Plaintiffs**" as used on page 7 of the Decision shall be changed to "Ignition Switch Plaintiffs."

[2]   Any ruling set forth in this Judgment that refers to a particular lawsuit, complaint and/or plaintiff shall apply equally to all lawsuits, complaints and plaintiffs where such ruling may be applicable.

09-50026-reg   Doc 13565   Filed 12/04/15   Entered 12/04/15 13:57:31   Main Document
Pg 2 of 13

## A.    <u>Imputation</u>

1.    Knowledge of New GM personnel, whenever acquired, may be imputed to New GM if permitted under nonbankruptcy law.

2.    Knowledge of Old GM personnel may not be imputed to New GM based on any type of successorship theory.

3.    With respect to Product Liability Claims assumed by New GM under the Sale Order, to the extent knowledge of Old GM personnel is permitted to be imputed to Old GM under nonbankruptcy law, such knowledge may be imputed to New GM.

4.    With respect to Independent Claims,[3] knowledge of Old GM may be imputed to New GM, if permitted by nonbankruptcy law, to the extent such knowledge was "inherited" from Old GM if such information (a) was actually known to a New GM employee (*e.g.*, because it is the knowledge of the same employee or because it was communicated to a New GM employee), or (b) could be ascertained from New GM's books and records, even if such books and records were transferred by Old GM to New GM as part of the 363 Sale and, therefore, first came into existence before the 363 Sale.  Accordingly, allegations in pleadings starting with "New GM knew…" or "New GM was on notice that…" are permissible. For causes of action where nonbankruptcy law permits imputation of knowledge to New GM using the above principles, it is possible for such knowledge, depending on the specific circumstances, to be imputed to New GM as early as the first day of its existence.

5.    Imputation of knowledge to New GM turns on application of applicable nonbankruptcy law to the specifics and context of the factual situation and the particular purpose

---

[3]    "Independent Claim" shall mean a claim or cause of action asserted against New GM that is based solely on New GM's own independent post-Closing acts or conduct.  Independent Claims do not include (a) Assumed Liabilities, or (b) Retained Liabilities, which are any Liabilities that Old GM had prior to the closing of the 363 Sale that are not Assumed Liabilities.

for which imputation is sought, and it must be based on identified individuals or identified documents. The extent to which plaintiffs must identify specific matters alleged to be known, by whom and by what means, and the legal ground rules necessary to establish imputation as a matter of nonbankruptcy law are questions for the nonbankruptcy courts hearing plaintiffs' claims and allegations to decide. By reason of this Court's limited gatekeeper role, this Court will not engage in further examination of whether particular allegations may be imputed to New GM, beyond the extent to which it has done so in the Decision and this Judgment. The application of the general principles included in this Judgment and the Decision to determine the propriety of imputation in particular contexts in particular cases is up to the judges hearing those cases.

**B.**    **Punitive Damages and Related Issues**

6.    New GM did not contractually assume liability for punitive damages from Old GM. Nor is New GM liable for punitive damages based on Old GM conduct under any other theories, such as by operation of law. Therefore, punitive damages may not be premised on Old GM knowledge or conduct, or anything else that took place at Old GM.

7.    A claim for punitive damages with respect to a post-Sale accident involving vehicles manufactured by Old GM with the Ignition Switch Defect may be asserted against New GM to the extent—but only to the extent—it relates to an otherwise viable Independent Claim and is based solely on New GM conduct or knowledge, including (a) knowledge that can be imputed to New GM under the principles set forth in the Decision and this Judgment (and under nonbankruptcy law), and (b) information obtained by New GM after the 363 Sale. The extent to which any such claim is "viable" shall be determined under nonbankruptcy law by the

nonbankruptcy court presiding over that action.  Except as expressly stated in this Judgment, this Court expresses no view as to whether any claim is viable.

8.     Claims for punitive damages may be asserted in actions based on post-Sale accidents involving vehicles manufactured by Old GM with the Ignition Switch Defect to the extent the claim is premised on New GM action or inaction after it was on notice of information "inherited" by New GM, or information developed by New GM post-Sale.

9.     Claims for punitive damages involving New GM manufactured vehicles were never foreclosed under the Sale Order, and remain permissible.  The underlying allegations and evidence used to support such claims for punitive damages are subject only to the limitations, if any, provided by nonbankruptcy law.

10.    Claims for punitive damages relating to post-Sale Non-Product Liabilities actions involving personal injuries suffered in vehicles manufactured by Old GM with the Ignition Switch Defect may be asserted to the extent, but only the extent, they are premised on New GM knowledge and conduct, including "inherited" knowledge and knowledge acquired after the Sale.

11.    Claims for punitive damages relating to post-Sale Non-Product Liabilities actions involving personal injuries suffered in vehicles manufactured by New GM are not subject to the Sale Order and may proceed.  The underlying allegations and evidence used to support such claims for punitive damages are subject only to the limitations, if any, provided by nonbankruptcy law.

12.    Claims for punitive damages asserted in economic loss actions involving vehicles manufactured by Old GM with the Ignition Switch Defect cannot be asserted except for any that might be recoverable in connection with Independent Claims, and then based only on New GM knowledge and conduct.   The determination whether such an Independent Claim can be

adequately pled is a question of nonbankruptcy law and is left to the nonbankruptcy judge(s) hearing the claims.

13.    Claims for punitive damages asserted in economic loss actions involving vehicles manufactured by New GM are not subject to the Sale Order and may proceed.  The underlying allegations and evidence used to support such claims for punitive damages are subject only to the limitations, if any, provided by nonbankruptcy law.

C.    **Particular Allegations, Claims and Causes of Actions in Complaints**

14.    Plaintiffs of two types—1) plaintiffs whose claims arise in connection with vehicles without the Ignition Switch Defect, and 2) Pre-Closing Accident Plaintiffs—are not entitled to assert Independent Claims against New GM with respect to vehicles manufactured and first sold by Old GM (an "**Old GM Vehicle**").  To the extent such Plaintiffs have attempted to assert an Independent Claim against New GM in a pre-existing lawsuit with respect to an Old GM Vehicle, such claims are proscribed by the Sale Order, April Decision and the Judgment dated June 1, 2015 [Dkt. No. 13177] ("**June Judgment**").

15.    Claims of any type against New GM that are based on vehicles manufactured by New GM are not affected by the Sale Order and may proceed in the nonbankruptcy court where they were brought.

16.    Allegations that speak of New GM as the successor of Old GM (e.g. allegations that refer to New GM as the "successor of," a "mere continuation of," or a "de facto successor of" of Old GM) are proscribed by the Sale Order, April Decision and June Judgment, and complaints that contain such allegations are and remain stayed, unless and until they are amended consistent with the Decision and this Judgment.

17.     Allegations that do not distinguish between Old GM and New GM (*e.g.*, referring to "GM" or "General Motors"), or between Old GM vehicles and New GM vehicles (*e.g., referring to "GM-branded vehicles"*), or that assert that New GM "was not born innocent" (or any substantially similar phrase or language) are proscribed by the Sale Order, April Decision and June Judgment, and complaints containing such allegations are and remain stayed, unless and until they are amended consistent with the Decision and this Judgment.  Notwithstanding the foregoing, (i) references to "GM-branded vehicles" may be used when the context is clear that the reference can only refer to New GM, and does not blend the periods during which vehicles were manufactured by Old GM and New GM; and (ii) complaints may say, without using code words as euphemisms for imposing successor liability, or muddying the distinctions between Old GM and New GM, that New GM purchased the assets of Old GM; that New GM assumed *Product Liabilities* from Old GM; and that New GM acquired specified knowledge from Old GM.

18.     Allegations that allege or suggest that New GM manufactured or designed an Old GM Vehicle, or performed other conduct relating to an Old GM Vehicle before the Sale Order, are proscribed by the Sale Order, April Decision and June Judgment, and complaints containing such allegations are and remain stayed, unless and until they are amended consistent with the Decision and this Judgment.

## D.    Claims in the Bellwether Complaints and MDL 2543

19.     Claims with respect to Old GM Vehicles that are based on fraud (including, but not limited to, actual fraud, constructive fraud, fraudulent concealment, fraudulent misrepresentation, or negligent misrepresentation) or consumer protection statutes are not included within the definition of Product Liabilities, and therefore do not constitute Assumed

Liabilities, because (a) they are not for "death" or "personal injury", and their nexus to any death or personal injury that might thereafter follow is too tangential, and (b) they are not "caused by motor vehicles."  The Court expresses no view whether such claims may, however, constitute viable Independent Claims against New GM if they are based on New GM knowledge or conduct.

20.     The Court expresses no view as to whether, as a matter of nonbankruptcy law, failure to warn claims in connection with Old GM Vehicles are actionable against New GM, or whether New GM has a duty related thereto.  A court other than this Court can make that determination for Post-Closing Accident Claims.

21.     A duty to recall or retrofit is not an Assumed Liability, and New GM is not responsible for any failures of Old GM to do so.  But whether an Independent Claim can be asserted that New GM had a duty to recall or retrofit an Old GM Vehicle with the Ignition Switch Defect is a question of nonbankruptcy law that can be determined by a court other than this Court.

22.     Whether New GM had a duty, enforceable in damages to vehicle owners, to notify people who had previously purchased Old GM Vehicles of the Ignition Switch Defect is an issue to be determined by a court other than this Court.

23.     Under the principles in this Judgment and the Decision, the determination of whether claims asserted in complaints filed by Ignition Switch Plaintiffs (including the MDL Consolidated Complaint filed in MDL 2543), or complaints filed by Post-Closing Accident Plaintiffs (including the Bellwether Complaints filed in MDL 2543) with the Ignition Switch Defect, are Independent Claims that may properly be asserted against New GM, or Retained Liabilities of Old GM, can be made by nonbankruptcy courts overseeing such lawsuits, *provided*

*however*, such plaintiffs may not assert allegations of Old GM knowledge or seek to introduce evidence of Old GM's knowledge in support of such Independent Claims (except to the extent the Imputation principles set forth in the Decision and this Judgment are applicable).

**E.     Claims in Complaints Alleging New GM is Liable for Vehicle
Owners' Failure to File Proofs of Claim Against Old GM**

24.     Claims that allege that New GM is liable in connection with vehicle owners' failure to file proofs of claim in the Old GM bankruptcy case are barred and enjoined by the Sale Order, April Decision and June Judgment, and shall not be asserted against New GM.

**F.     The States Complaints**

25.     New GM shall not be liable to the States for any violations of consumer protection statutes that took place before the 363 Sale.   Whether New GM can be held liable to the States for New GM's sale of vehicles that post-date the 363 Sale is a matter of nonbankruptcy law that may be decided by nonbankruptcy courts overseeing such cases.   To the extent nonbankruptcy law imposes duties at the time of a vehicle's sale, and a claim relates to the sale of an Old GM Vehicle other than one sold as "certified" after the 363 Sale, claims premised on a breach of such duties are barred by the Sale Order, April Decision and June Judgment as against New GM.

26.     With respect to the California complaint, the rulings included in this Judgment and the Decision apply.   By way of example, the allegations relating to Old GM conduct in paragraphs 46-54, 58-60, 71, 95-96, 112-114, 189-190 and 200-201 violate the Sale Order, April Decision and June Judgment.   Paragraphs 192, 195, 196, 198, 199, 203-206 and 211 do not say whether they make reference to Old GM or New GM and must be clarified.   However, allegations contained in paragraphs 9, 11, 16, 18, 22, 32, 43, 44 and 45, for example, are benign.

The California Action shall remain stayed until the complaint is amended to be consistent with the Decision and this Judgment.

27.     With respect to the Arizona complaint, the rulings included in this Judgment and the Decision apply.  By way of example, (i) the allegation in paragraph 19 that New GM "was not born innocent" is impermissible and violates the Sale Order, April Decision and June Judgment; (ii) the allegations relating solely to Old GM conduct in paragraphs 92, 93, and 357 violate the Sale Order, April Decision and June Judgment; (iii) the allegations that do not clearly relate solely to New GM conduct in paragraphs 140-180, 289, 290-310 violate the Sale Order, April Decision and June Judgment; and (iv) the allegation in paragraph 136 that knowledge of Old GM is "directly attributable" to New GM violates the Sale Order, April Decision and June Judgment (and is false as a matter of law).  Nevertheless, the allegations in paragraphs 19 (other than as described above), 81, 135, 137, 138, 139, 335 and 499, for example, are benign.  The Arizona Action shall remain stayed until the complaint is amended to be consistent with the Decision and this Judgment.

**G.     The Peller Complaints**

28.     With respect to the Peller Complaints, the Ignition Switch Plaintiffs may assert claims based on alleged duties of New GM relating to post-Sale events relating to Old GM Vehicles  to the extent they are actionable as matters of nonbankruptcy law (to be decided by nonbankruptcy courts), *provided however*, the Peller Complaints shall remain stayed unless and until they are amended (i) to remove claims that rely on Old GM conduct as the predicate for claims against New GM, (ii) to comply with the applicable provisions of the Decision and this Judgment (including those with respect to claims that fail to distinguish between Old GM and New GM), and (iii) to strike any purported Independent Claims by Non-Ignition Switch

Plaintiffs.  To the extent the Peller Complaints assert claims against New GM based on New GM manufactured vehicles, such claims are not proscribed by the Sale Order, April Decision and June Judgment.

**H.    Other Complaints**

    *(1)    "Failure to Recall/Retrofit Vehicles"*

29.    Obligations, if any, that New GM had to recall or retrofit Old GM Vehicles were not Assumed Liabilities, and New GM is not responsible for any failures of Old GM to do so. But whether New GM had an independent duty to recall or retrofit previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law that may be decided by the nonbankruptcy court hearing that action.

30.    The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law for such Old GM Vehicles, but allows this claim to be asserted by the Ignition Switch Plaintiffs and the Post-Closing Accident Plaintiffs (such as has been asserted by the plaintiff in *Moore v. Ross*) with the Ignition Switch Defect, leaving determination of whether there is the requisite duty under nonbankruptcy law to the nonbankruptcy court hearing that action.

    *(2)    "Negligent Failure to Identify Defects or Respond to Notice of a Defect"*

31.    Obligations, if any, that New GM had to identify or respond to defects in previously sold Old GM Vehicles were not Assumed Liabilities, and New GM is not responsible for any failures of Old GM to do so.  But whether New GM had an independent duty to identify or respond to defects in previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law that may be decided by the nonbankruptcy court hearing that action.

32.     The Court does not decide whether there is the requisite duty for New GM under

nonbankruptcy law for such Old GM Vehicles, and allows this claim to be asserted by the

Ignition Switch Plaintiffs and the Post-Closing Accident Plaintiffs with the Ignition Switch

Defect, leaving determination of whether there is the requisite duty under nonbankruptcy law to

the court hearing that action.

    *(3)     "Negligent Infliction of Economic Loss and Increased Risk"*

33.     Claims that New GM had a duty to warn consumers owning Old GM Vehicles of

the Ignition Switch Defect but instead concealed it, and by doing so, the economic value of the

Ignition Switch Plaintiffs' vehicles was diminished (such as been raised by the plaintiffs in

*Elliott* and *Sesay*) were not Assumed Liabilities, and New GM is not responsible for any failures

of Old GM to do so.  But whether New GM had an independent duty to warn consumers owning

previously sold Old GM Vehicles that New GM did not manufacture of the Ignition Switch

Defect is a question of nonbankruptcy law to be decided by the nonbankruptcy court hearing the

underlying action.  The Court does not decide whether there is the requisite duty on the part of

New GM under nonbankruptcy law to warn for such Old GM Vehicles with the Ignition Switch

Defect.  Thus, the Court allows this claim to be asserted by the Ignition Switch Plaintiffs to the

extent, but only the extent, that New GM had an independent "duty to warn" owners of Old GM

Vehicles of the Ignition Switch Defect, as relevant to situations *in which no one is alleged to

have been injured* by that failure, but where the Old GM Vehicles involved are alleged to have

lost value as a result. Determination of whether there is the requisite duty is left to the court

hearing the underlying actions.

    *(4)     "Civil Conspiracy"*

11

34.     Claims that New GM was involved "in a civil conspiracy with others to conceal the alleged ignition switch defect" were not Assumed Liabilities.  The extent to which they might constitute Independent Claims requires a determination of nonbankruptcy law, which determination this Court leaves, with respect to vehicles previously manufactured and sold by a different entity, to the nonbankruptcy court hearing the underlying action.

*(5)     "Section 402B—Misrepresentation by Seller"*

35.     Claims based on "Section 402B-Misrepresentation by Seller" fall within the definition of assumed Product Liabilities, and such claims may be asserted against New GM.

*(6)     Claims Based on Pre-Closing Accidents*

36.     All claims brought by Pre-Closing Accident Plaintiffs (like the *Coleman* action in the Eastern District of Louisiana) seeking to hold New GM liable, under any theory of liability, for accidents or incidents that first occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order, April Decision and June Judgment. The Pre-Closing Accident Plaintiffs shall not assert or maintain such claims against New GM.

**I.     Jurisdiction**

37.     The Court shall retain jurisdiction, to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment, and the Decision on which it was based; *provided, however*, that the nonbankruptcy courts hearing the plaintiffs' claims shall have the authority to construe and implement the Decision and this Judgment, and to apply the principles laid out in the Decision and this Judgment, with respect to the particular cases before them.  This Judgment shall not be collaterally attacked, or otherwise subjected to review or modification, in any Court other than this Court or any court exercising appellate authority over this Court.

**J.     Amended Complaints**

12

38.     For the avoidance of any doubt, complaints amended in compliance with this Judgment may be filed in the non-bankruptcy courts with jurisdiction over them, without violating any automatic stay or injunction or necessitating further Bankruptcy Court approval to file same.

## K.     Prior Orders

39.     For the avoidance of doubt, except as provided in the June Judgment and the April Decision, the provisions of the Sale Order shall remain unmodified and in full force and effect, including, without limitation, paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for the actions or inactions of Old GM.

## L.     Earlier Decisions as Interpretive Aids

40.     To the extent, if any, that this Judgment fails, in whole or in part, to address an issue or is ambiguous, the Court's statements in the April Decision and the Decision may be used as interpretive aids.


Dated: New York, New York                       _s/Robert E. Gerber_____
            December 4, 2015                          United States Bankruptcy Judge