**OBJECTION DEADLINE:  February 5, 2016 at 5:00 p.m. (Eastern Time)**
**HEARING DATE AND TIME:  February 17, 2016 at 2:00 p.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Telephone: (310) 316-1990
Facsimile: (310) 316-1330
Gregory R. Oxford (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
In re:                                  :        Chapter 11
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :        Case No.: 09-50026 (MG)
        f/k/a General Motors Corp., et al.  :
                                        :        (Jointly Administered)
                Debtors.                :
------------------------------------------------------------x
```

**NOTICE OF MOTION OF GENERAL MOTORS LLC PURSUANT
TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE BANKRUPTCY
COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION, AND THE
BANKRUPTCY COURT'S RULINGS IN CONNECTION THEREWITH**

**(PILGRIM PUTATIVE CLASS ACTION)**

PLEASE TAKE NOTICE that upon the annexed Motion, dated January 19, 2016 (the

"**Motion**"),[1] of General Motors LLC ("**New GM**"), pursuant to Sections 105 and 363 of the

Bankruptcy Code, seeking the entry of an order to enforce the Sale Order and Injunction, entered

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

by the Bankruptcy Court on July 5, 2009, and the Bankruptcy Court's rulings in connection

therewith, a hearing will be held before the Honorable Martin Glenn, United States Bankruptcy

Judge, in Room 501 of the United States Bankruptcy Court for the Southern District of New

York, One Bowling Green, New York, New York 10004, on **February 17**, **2016 at 2:00 p.m.**

**(Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion

must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local

Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in

accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by

registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest,

on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other

Windows-based word processing format (with a hard copy delivered directly to Chambers), in

accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and

served in accordance with General Order M-242, and on (i) King & Spalding LLP, 1185 Avenue

of the Americas, New York, New York 10036 (Attn:  Arthur Steinberg and Scott Davidson), and

(ii) Isaacs Clouse Crose & Oxford LLP, 21515 Hawthorne Boulevard, Suite 950, Torrance,

California 90503 (Attn:  Gregory R. Oxford), so as to be received no later than **February 5,**

**2016, at 5:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no responses or objections are timely filed

and served with respect to the Motion, New GM may, on or after the Objection Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated: New York, New York
       January 19, 2016

Respectfully submitted,

___/s/ Arthur Steinberg____
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222

Gregory R. Oxford (admitted *pro hac vice*)
ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Telephone: (310) 316-1990
Facsimile: (310) 316-1330

*Attorneys for General Motors LLC*

**OBJECTION DEADLINE: February 5, 2016 at 5:00 P.M. (Eastern Time)**
**HEARING DATE AND TIME:  February 17, 2016 at 2:00 P.M. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Telephone: (310) 316-1990
Facsimile: (310) 316-1330
Gregory R. Oxford (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.:  09-50026 (MG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x


**MOTION OF GENERAL MOTORS LLC PURSUANT TO**
**11 U.S.C. §§ 105 AND 363 TO ENFORCE THE BANKRUPTCY**
**COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION, AND THE**
**BANKRUPTCY COURT'S RULINGS IN CONNECTION THEREWITH**

**(PILGRIM PUTATIVE CLASS ACTION)**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND FACTS ................................................................................... 4

    A.    The Sale Order and Injunction and Sale Agreement ............................... 4

    B.    The Motions to Enforce ........................................................................ 9

    C.    The April Decision and June Judgment .................................................. 9

    D.    The November Decision and December Judgment ............................... 11

    E.    The MDL and the MDL Economic Loss
            Plaintiffs' Third Amended Consolidated Complaint ........................... 13

    F.    The Pilgrim Lawsuit ........................................................................... 15

ARGUMENT .................................................................................................. 17

    A.    Claims Based on Old GM Vehicles in the Amended
            Pilgrim Complaint are Not Independent Claims and,
            Thus, They Cannot be Asserted Against New GM ............................... 18

    B.    None of the Claims Asserted in the Amended Pilgrim Complaint, as
            They Relate to Old GM Vehicles, Are Assumed Liabilities of New GM ........... 19

    C.    Any Requests for Exemplary Damages with Respect
            To Claims based on Old GM Vehicles are Barred ............................... 23

    D.    The Amended Pilgrim Complaint Violates Other
            Aspects of the November Decision and December Judgment ............................. 24

NOTICE AND POTENTIAL FUTURE REQUEST FOR INTERIM RELIEF ................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Burton v. Chrysler Group, LLC (In re Old Carco)*,
    492 B.R. 392 (Bankr. S.D.N.Y. 2013) ............................................................. 22, 23

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995) ............................................................................ 4, 17, 18

*In re Gen. Motors Corp.*,
    407 B.R. 463 (Bankr. S.D.N.Y. 2009) ........................................................... 4

*In re Motors Liquidation Co.*,
    513 B.R. 467 (Bankr. S.D.N.Y. 2014) ........................................................ 16, 18

*In re Motors Liquidation Co.*,
    529 B.R. 510 (Bankr. S.D.N.Y 2015) ................................................. 9, 10, 20, 21

*In re Motors Liquidation Co.*,
    531 B.R. 354 (Bankr. S.D.N.Y. 2015) ........................................................... 11

*In re Motors Liquidation Co.*,
    541 B.R. 104 (Bankr. S.D.N.Y. 2015) ............................................ 8, 9, 12, 21, 22, 24

*Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*,
    Adv. Proc. No. 09–09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013). .................. 5, 7

## Statutes

11 U.S.C. § 105 ....................................................................................... 1

11 U.S.C. § 363 ....................................................................................... 1

## Treatises

*Punitive Damages*, BLACK'S LAW DICTIONARY (10th ed. 2014) ................................. 24

General Motors LLC ("**New GM**"), by its undersigned counsel, respectfully submits this motion ("**Pilgrim Motion to Enforce**"), pursuant to 11 U.S.C. §§ 105 and 363, to enforce the Bankruptcy Court's Order entered on July 5, 2009 ("**Sale Order and Injunction**") approving the sale of assets from Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**") to New GM,[1] and the decisions and judgments entered by the Bankruptcy Court in connection therewith, by (a) directing the plaintiffs ("**Pilgrim Plaintiffs**") in the lawsuit ("**Pilgrim Lawsuit**") captioned *William D. Pilgrim, et al. v. General Motors LLC, et al.* pending in the United States District Court for the Central District of California ("**California District Court**"), Case No. CV 15-8047-JFW, to cease and desist from further prosecuting against New GM claims arising from vehicles ("**Old GM Vehicles**") manufactured by Old GM, and (b) directing the Pilgrim Plaintiffs to dismiss those claims. In support of the Pilgrim Motion to Enforce, New GM respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    The Pilgrim Lawsuit concerns Old GM Vehicles and vehicles manufactured by New GM ("**New GM Vehicles**"). In the Pilgrim Motion to Enforce, New GM seeks an order directing the Pilgrim Plaintiffs to dismiss those claims that arise from Old GM Vehicles. To the extent the Pilgrim Lawsuit asserts claims that arise solely from New GM Vehicles based on New GM conduct, such claims are not implicated by the Pilgrim Motion to Enforce.[2]

---

[1]    The full title of the Sale Order and Injunction is *Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief*. A copy of the Sale Order and Injunction, and the accompanying Sale Agreement (as defined herein), is annexed hereto as **Exhibit "A."**

[2]    New GM disputes that it is liable to any plaintiff in connection with claims in the Pilgrim Lawsuit.

1

2.      The Amended Pilgrim Complaint (as herein defined)[3] is a putative class action that seeks economic losses (*e.g.*, the diminution in value of their vehicles) solely based on an alleged engine valve defect in Chevrolet Corvettes manufactured (by Old GM and, after the Sale Order and Injunction, by New GM) between 2006 and 2014.  The Amended Pilgrim Complaint asserts causes of action based on alleged violations of RICO and state consumer protection statutes, and also on unjust enrichment, fraudulent concealment and third party beneficiary theories of recovery.

3.      Since the Sale Order and Injunction was entered, the Bankruptcy Court has addressed numerous issues with respect to the interpretation and enforcement of the Sale Order and Injunction, and the agreement ("**Sale Agreement**") that it approved.  In particular, the Bankruptcy Court has ruled on what types of claims may be asserted against New GM that concern Old GM Vehicles, what allegations can be made in complaints that assert such claims, and who may bring such claims.  Specifically, the Bankruptcy Court has held that the Sale Order and Injunction remains in full force and effect, and bars lawsuits relating to Old GM Vehicles, except for (a) Independent Claims, which may be brought solely by Ignition Switch Plaintiffs;[4] and (b) Assumed Liabilities.  *See* Judgment entered by the Bankruptcy Court on June 1, 2015 [Dkt. No. 13177] ("**June Judgment**"),[5] ¶¶ 4, 5; Judgment entered by the Bankruptcy Court on December 4, 2015 [Dkt. No. 13563] ("**December Judgment**"),[6] ¶¶ 14, 39.

---

[3]     A copy of the Amended Pilgrim Complaint is annexed hereto as **Exhibit "B."**

[4]     The term "Independent Claims" was defined as "claims or causes of action *asserted by Ignition Switch Plaintiffs* against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct."  June Judgment (as defined herein), ¶ 4 (emphasis added).

[5]     A copy of the June Judgment is annexed hereto as **Exhibit "C."**

[6]     A copy of the December Judgment is annexed hereto as **Exhibit "D."**

4.       The June Judgment defines the term Ignition Switch Plaintiffs as those plaintiffs who are asserting claims against New GM based on the first two ignition switch recalls issued in February/March 2014.  *See* June Judgment, at 1 n.1.  The Pilgrim Plaintiffs are not "Ignition Switch Plaintiffs;" instead, their grievance relates to an alleged engine valve defect that has nothing to do with ignition switches.  Thus, the Pilgrim Plaintiffs are "Non-Ignition Switch Plaintiffs" who, under the June Judgment, *are barred from bringing any claim against New GM with respect to Old GM Vehicles unless it is based on an Assumed Liability*.  *See* December Judgment, ¶ 14.

5.       The term "Assumed Liabilities" is defined in Section 2.3(b) of the Sale Agreement.  As will be demonstrated in Section B of the Argument, *infra*, none of the Pilgrim Plaintiffs' claims regarding Old GM Vehicles falls within the definition of Assumed Liabilities. Thus, all of their claims relating to Old GM Vehicles are barred by the Sale Order and Injunction.

6.       Despite these explicit rulings by the Bankruptcy Court, the Pilgrim Plaintiffs are still going forward in the California District Court as if these rulings somehow had never been made.  This violation of the Sale Order and Injunction has necessitated this Pilgrim Motion to Enforce.

7.       New GM's counsel has put the Pilgrim Plaintiffs on notice of the Sale Order and Injunction, and all of the Bankruptcy Court's rulings.  Their attempt to amend the Original Pilgrim Complaint (as herein defined) to conform with these rulings does not come close to doing so.

8.       Worse, despite New GM's repeated warnings, the Pilgrim Plaintiffs have failed to seek relief from this Court, which issued the Sale Order and Injunction they are violating, and

which retains exclusive jurisdiction to construe and enforce it.  The law is settled that a party subject to a Court's injunction does not have the option simply to proceed in another court as if the injunction had not been issued.  As the United States Supreme Court explained in *Celotex Corp. v. Edwards*, the rule is "well-established" that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'"  514 U.S. 300, 306 (1995).

9.      For all of these reasons, and as further explained below, New GM respectfully requests that the Court grant the Pilgrim Motion to Enforce.

## BACKGROUND FACTS

### A.      The Sale Order and Injunction and Sale Agreement

10.      On June 1, 2009, Old GM commenced a case under Chapter 11 of the Bankruptcy Code in this Court ("**Bankruptcy Court**" or "**Court**").  On that same day, it filed a motion seeking approval of the original version of the Sale Agreement, pursuant to which substantially all of Old GM's assets were to be sold to New GM.  *See In re Gen. Motors Corp.*, 407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009).  The Sale Order and Injunction was entered on July 5, 2009, and the sale ("**363 Sale**") closed on July 10, 2009.

11.      Liabilities resulting from claims against Old GM were expressly allocated in the Sale Agreement into two categories.  Thus, claims asserted by Non-Ignition Switch Plaintiffs (*i.e.*, the Pilgrim Plaintiffs) arising from or based on Old GM Vehicles are either Assumed Liabilities*, i.e.*, an obligation of New GM, or Retained Liabilities that stayed with Old GM.  *See generally* Sale Agreement § 2.3.

12.      New GM assumed only three categories of liabilities for Old GM Vehicles: (a) claims arising out of post-sale accidents that caused personal injury, loss of life or property damage; (b) claims for repairs under the "glove box warranty"— a specific written warranty, of

4

limited duration, that only covers repairs and replacement of parts (and not monetary damages); and (c) violations of Lemon Laws,[7] tied essentially to the failure to honor the glove box warranty. *See* Sale Agreement, § 2.3(a). All other liabilities relating to Old GM Vehicles are "Retained Liabilities" of Old GM. *See* Sale Agreement § 2.3(b). The Pilgrim Plaintiffs' economic loss claims for Old GM Vehicles clearly do not fall within the definition of Assumed Liabilities. They do not arise from accidents, the limited repair liability associated with the now-expired glove box warranty, or alleged lemon law violations; they are unquestionably Retained Liabilities of Old GM for which New GM has no responsibility whatsoever.

13.     For the avoidance of doubt, Section 2.3(b) of the Sale Agreement provides a non-exclusive list of Retained Liabilities. The Sale Order and Injunction also discussed which claims were Retained Liabilities of Old GM. Claims asserted by the Pilgrim Plaintiffs with respect to Old GM Vehicles fit within the following Retained Liabilities categories:

i.      Liabilities "arising out of, relating to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers." Sale Agreement § 2.3(b)(xvi); *see also* Sale Agreement, ¶ 6.15(a).

ii.     All liabilities of Old GM to third parties based upon contract, tort or any other basis. Sale Agreement, § 2.3(b)(xi).

iii.    All liabilities relating to Old GM Vehicles with a design defect.[8]

iv.     All Liabilities based on the conduct of Old GM, including any allegation, statement or writing attributable to Old GM. This covers fraudulent concealment type claims, consumer protection statute claims, and any punitive damage remedy predicated on Old GM's conduct. *See* Sale Order and Injunction, ¶¶ AA, 56.

---

[7]     *See* Sale Agreement § 1.1, at p. 11 (defining "Lemon Laws" as "a state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined in the applicable statute.").

[8]     *See* Sale Order and Injunction, ¶ AA; *see also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013). A copy of the Trusky decision is annexed hereto as **Exhibit "E."**

5

   v.  All claims based on the doctrine of "successor liability."  *See, e.g.* Sale Order and Injunction, ¶ 46.

  14.  The Sale Order and Injunction contains the following paragraphs that clearly provide that the Pilgrim Plaintiffs' claims regarding Old GM Vehicles are Retained Liabilities:

> Except for the Assumed Liabilities expressly set forth in the [Sale Agreement] . . . [New GM] . . . shall [not] have any liability for any claim that arose prior to the Closing Date, ***relates to the production of vehicles prior to the Closing Date***, or otherwise is assertable against [Old GM] . . . prior to the Closing Date . . . . Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity . . . and products . . . liability, ***whether known or unknown as of the Closing***, ***now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated***.

Sale Order and Injunction, ¶ 46 (emphasis added); *see also id.* ¶ 9(a) ("(i) no claims other than Assumed Liabilities, will be assertable against the Purchaser . . .; (ii) the Purchased Assets [are] transferred to the Purchaser free and clear of all claims (other than Permitted Encumbrances) . . ."); and *id.* ¶ 8 ("[A]ll persons and entities . . . holding claims against [Old GM] or the Purchased Assets . . . arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, ***the operation of the Purchased Assets prior to the Closing*** . . . are forever barred, estopped, and permanently enjoined . . . from asserting [such claims] against [New GM]. . . .") (emphasis added).

  15.  Anticipating the possibility of wrongful claims against New GM based on Retained Liabilities, the Sale Order and Injunction permanently enjoins such claims:

> [A]ll persons and entities . . . holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, ***matured or unmatured, contingent or noncontingent***, senior or subordinated), ***arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing*** . . . ***are forever barred, estopped, and permanently enjoined*** . . . ***from asserting against [New GM]*** . . .

> *such persons' or entities' liens, claims, encumbrances, and other interests,*
> *including rights or claims based on any successor or transferee liability.*

Sale Order and Injunction, ¶ 8 (emphasis added); *see also id.* ¶ 47.

16.    The Sale Order and Injunction specifically holds that its provisions, as well as the

Sale Agreement, are binding on all creditors, ***known and unknown*** alike.  *See* Sale Order and

Injunction, ¶ 6 ("This [Sale] Order and [Sale Agreement] "shall be binding in all respects upon

the Debtors, their affiliates, all known and unknown creditors of, and holders of equity security

interests in, any Debtor, including any holders of liens, claims, encumbrances, or other interests,

including rights or claims based on any successor or transferee liability . . . ." (emphasis added));

*see also id.* ¶ 46.  In short, except for Assumed Liabilities, claims made by entities like the

Pilgrim Plaintiffs based on Old GM Vehicles remain the exclusive responsibility of Old GM.

17.    The Sale Order and Injunction is equally clear that, except for Assumed

Liabilities, New GM is not liable for any claims arising in any way from any acts, or failures to

act of Old GM, whether known or unknown, contingent or otherwise, whether arising before or

after Old GM's bankruptcy, including claims arising under doctrines of successor or transferee

liabilities.  Sale Order and Injunction, ¶ AA.  This provision makes it evident that "New GM is

not liable for Old GM's conduct . . . ."  *Trusky*, 2013 WL 620281, at *2.

18.    Under the Sale Agreement, New GM covenanted to comply with the recall

requirement of the National Traffic and Motor Vehicle Safety Act.  This covenant, however, is

not an Assumed Liability.  Assumed Liabilities are set forth in Section 2.3(a) of the Sale

Agreement.  The recall covenant is in Section 6.15 of the Sale Agreement.  The Sale Order and

Injunction (¶ 7) is clear that New GM acquired the Purchased Assets free and clear of all claims.

The *only* exceptions are the contractually defined categories of "Assumed Liabilities" which do

not include alleged breaches of the recall covenant.  The Bankruptcy Court has so found.  *See In*

*re Motors Liquidation Co.*, 541 B.R. 104, 129 n.67 (Bankr. S.D.N.Y. 2015) ("**November Decision**")[9] ("New GM notes, properly, that this [recall] covenant was not an Assumed Liability.").

19.    There were no third party beneficiary rights granted under the Sale Agreement with respect to the recall covenant or otherwise. *See* Sale Agreement § 9.11. The Bankruptcy Court has so found. *See* November Decision, 541 B.R. at 129 n.67 ("New GM notes, properly . . . that vehicle owners were not third party beneficiaries of the Sale Agreement.").

20.    Finally, paragraph 71 of the Sale Order and Injunction makes this Court the gatekeeper to enforce its provisions. It provides for this Court's exclusive jurisdiction over matters and claims regarding the 363 Sale, including jurisdiction to protect New GM against claims based on Retained Liabilities of Old GM:

> ***This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement], all amendments thereto***, any waivers and consents thereunder, and each of the agreements executed in connection therewith, . . ., in all respects, including, but not limited to, retaining jurisdiction to . . . (c) resolve any disputes arising under or related to the [Sale Agreement], except as otherwise provided therein, (d) ***interpret, implement, and enforce the provisions of this Order***, (e) ***protect the Purchaser against any of the Retained Liabilities*** or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets . . . .

Sale Order and Injunction, ¶ 71 (emphasis added).

---

[9]    A copy of the November Decision is annexed hereto as **Exhibit "F."**

B.    **The Motions to Enforce**[10]

21.    In 2014, New GM announced a number of recalls relating to Old GM Vehicles and New GM Vehicles.  Thereafter, lawsuits were filed around the country seeking to hold New GM liable in connection with, among other things, Old GM Vehicles. New GM filed three motions to enforce the Bankruptcy Court's Sale Order and Injunction.  The central question before the Bankruptcy Court in the Motions to Enforce was whether the claims asserted against New GM violated the Sale Order and Injunction.

C.    **The April Decision and June Judgment**

22.    In connection with the Motions to Enforce, the parties thereto and the Court agreed to address four threshold issues.[11]  After extensive briefing and a two-day oral argument, the Court rendered its *Decision on Motion to Enforce Sale Order* on April 15, 2015 ("**April Decision**"),[12] and thereafter entered the June Judgment.  The June Judgment held that all plaintiffs except the Ignition Switch Plaintiffs ("**Non-Ignition Switch Plaintiffs**") had not demonstrated that Old GM had violated their due process rights in connection with the

---

[10]    The three motions to enforce the Sale Order and Injunction filed by New GM were (i) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [Dkt. No. 12620], (ii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 [Dkt. No. 12808]; and (iii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [Dkt. No. 12807] (collectively, "**Motions to Enforce**").

[11]    The four threshold issues were: (1) whether plaintiffs' procedural due process rights were violated in connection with the Sale Agreement and the Sale Order and Injunction, or alternatively, whether plaintiffs' procedural due process rights would be violated if the Sale Order and Injunction is enforced against them; (2) if procedural due process was violated, whether a remedy can or should be fashioned as a result of such violation and, if so, against whom; (3) whether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust); and (4) if any or all of the claims asserted in the Ignition Switch Actions are or could be claims against the Old GM bankruptcy estate (and/or the GUC Trust), should such claims or the actions asserting such claims nevertheless be disallowed/dismissed on grounds of equitable mootness.

[12]    The April Decision is published as *In re Motors Liquidation Co.*, 529 B.R. 510, 526 n.14 (Bankr. S.D.N.Y 2015). A copy of the April Decision is annexed hereto as **Exhibit "G."**

Bankruptcy Court's approval of the Sale Agreement and Sale Order and Injunction and, therefore, these plaintiffs could not assert any claims against New GM. Once again, the Pilgrim Plaintiffs are Non-Ignition Switch Plaintiffs and therefore cannot assert any claims against New GM regarding Old GM Vehicles unless such claims are Assumed Liabilities.

23.    The April Decision also addressed whether plaintiffs who had purchased used Old GM Vehicles after the 363 Sale should be treated differently than the original owners of such vehicles. The Court found that they should not be treated any differently. *See* April Decision, 529 B.R. at 526 n.14 ("Used Car Purchasers"[13] can "have no greater rights than the original owners of their cars had.").[14] The Bankruptcy Court did not distinguish between types of Used Car Purchasers (*e.g.*, individual owners, subsequent owners, used car dealers, rental companies, *etc.*).

24.    Finally, the Bankruptcy Court held that the rulings in the June Judgment and April Decision that "***proscribe claims and actions being taken against New GM*** shall apply to . . . any other plaintiffs in these proceedings . . . , subject to [the filing of] any objection ('Objection Pleading.')." June Judgment, ¶ 13(a) (emphasis added). Although the April Decision reserved judgment on the Motion to Enforce with respect to claims by Non-Ignition Switch Plaintiffs, the

---

[13] Used Car Purchasers were defined in the April Decision as "a subset of Economic Loss Plaintiffs (the '**Used Car Purchasers**') who acquired cars manufactured by Old GM in the aftermarket after the 363 Sale (*e.g.*, from their original owners, or used car dealers)." April Decision, 529 B.R. at 526 n.14 (emphasis in original).

[14] *See also* April Decision, 529 B.R. at 572 ("As New GM argues, with considerable force, 'an owner of an Old GM vehicle should not be able to 'end-run' the applicability of the Sale Order and Injunction by merely selling that vehicle after the closing of the 363 Sale ... if the Sale Order and Injunction would have applied to the original owner who purchased the vehicle prior to the 363 Sale, it equally applies to the current owner who purchased the vehicle after the 363 Sale.' There is no basis in logic or fairness for a different result." [footnote omitted]).

Court held that the April Decision was "stare decisis" with respect to those claims.  *See In re Motors Liquidation Co.*, 531 B.R. 354, 360 (Bankr. S.D.N.Y. 2015).[15]

25.    Except as expressly modified by the April Decision and June Judgment, the Sale Order and Injunction remains fully operative.  *See* June Judgment, ¶ 5 ("Except for the modification to permit the assertion of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect.").

26.    The June Judgment has been appealed directly from the Bankruptcy Court to the Second Circuit.  Briefing of that appeal should conclude by late February 2016.

### D.    The November Decision and December Judgment

27.    After entry of the April Decision and June Judgment, various parties filed pleadings with the Bankruptcy Court ("**June Judgment Pleadings**") asserting that they should not be bound by the rulings of the Bankruptcy Court.  Thereafter, on August 19, 2015, the Bankruptcy Court entered a Case Management Order [Dkt. No. 13383][16] "[t]o facilitate consideration of the matters yet to be determined in this Court with respect to" the June Judgment Pleadings and related matters.  Case Management Order, ¶ 1.  The Case Management Order directed parties in interest to submit to the Bankruptcy Court their views on how best to address the remaining issues concerning the Motions to Enforce, the June Judgment Pleadings and other related matters.

28.    After a hearing before the Bankruptcy Court on August 31, 2015 with respect to the Case Management Order and the responses filed in connection thereto, the Bankruptcy Court entered a Scheduling Order on September 3, 2015 [Dkt. No. 13416] ("**September 3 Scheduling**

---

[15]    In the December Judgment, the Bankruptcy Court entered further explicit rulings relating to Non-Ignition Switch Plaintiffs asserting economic loss claims relating to Old GM Vehicles.  It held that they cannot assert Independent Claims against New GM.  *See* December Judgment, ¶ 14.

[16]    A copy of the August 19, 2015 Case Management Order is annexed hereto as **Exhibit "H."**

**Order**")[17] which set forth briefing schedules to address (i) whether plaintiffs may request punitive/special/exemplary damages against New GM based in any way on the conduct of Old GM, and (ii) whether causes of action in complaints filed against New GM relating to Old GM Vehicles based on the knowledge Old GM employees gained while working for Old GM and/or as reflected in Old GM's books and records transferred to New GM can be imputed to New GM. The September 3 Scheduling Order also established a schedule by which (a) New GM was to file marked pleadings and explanatory letters with respect to various complaints in lawsuits filed against New GM that implicated the Sale Order and Injunction, the April Decision and the June Judgment, and (b) plaintiffs involved in such lawsuits could respond to New GM's marked pleadings and explanatory letters. The Court held a hearing on all matters set forth in the September 3 Scheduling Order on October 14, 2015.

29.    The Pilgrim Lawsuit was filed on October 14, 2015, notwithstanding the June Judgment, and while the matter relating to the September 3 Scheduling Order was *sub judice* in the Bankruptcy Court.

30.    On November 9, 2015, the Bankruptcy Court entered its November Decision with respect to the matters identified in the September 3 Scheduling Order. *See generally* November Decision, 541 B.R. 104. On December 4, 2015, the Bankruptcy Court entered its December Judgment, memorializing the rulings set forth in the November Decision. Conclusively, for economic loss claims based on Old GM Vehicles for Non-Ignition Switch Plaintiffs, the December Judgment held as follows:

> [P]laintiffs whose claims arise in connection with vehicles ***without*** the Ignition Switch Defect . . . ***are not entitled to assert Independent Claims*** against New GM with respect to vehicles manufactured and first sold by Old GM (an "Old GM Vehicle"). To the extent such Plaintiffs have attempted to assert an Independent

---

[17]    A copy of the September 3 Scheduling Order is annexed hereto as **Exhibit "I."**

Claim against New GM in a pre-existing lawsuit with respect to an Old GM Vehicle, *such claims are proscribed by the Sale Order, April Decision and the Judgment dated June 1, 2015* [Dkt. No. 13177]. . . .

December Judgment, ¶ 14 (emphasis added).

31.     The December Judgment holds that, except as modified by the June Judgment and April Decision, the Sale Order and Injunction remained "unmodified and in full force and effect, including, without limitation, paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for the actions or inactions of Old GM." *Id.* ¶ 39. Thus, even with respect to claims based on New GM Vehicles, the Pilgrim Plaintiffs cannot rely on any conduct of Old GM.

32.     The December Judgment was appealed but not with respect to the Bankruptcy Court's rulings that Non-Ignition Switch Plaintiffs could not assert Independent Claims with respect to Old GM Vehicles.

**E.     The MDL and the MDL Economic Loss
         Plaintiffs' Third Amended Consolidated Complaint**

33.     On June 9, 2014, the Judicial Panel on Multidistrict Litigation established Multi-District Litigation ("**MDL**") 2543 (*In re: General Motors LLC Ignition Switch Litigation* (S.D.N.Y.)), and designated the United States District Court for the Southern District of New York as the MDL court, assigning the Honorable Jesse M. Furman to conduct coordinated or consolidated proceedings for the actions assigned to the MDL. More than 250 cases are pending in MDL 2543. The Pilgrim Lawsuit is not in the MDL. However, a review of the amended complaints filed by plaintiffs in the MDL should assist the Court in the resolution of this Pilgrim Motion to Enforce. Many of the lawsuits in the MDL involve economic loss claims based on Old GM Vehicles with allegedly defective parts, and some involve claims for personal injuries. Both Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs are involved in the MDL.

34.    On October 14, 2014, Lead Plaintiffs in MDL 2543 ("**MDL Plaintiffs**") filed two consolidated complaints against New GM, one on behalf of plaintiffs who asserted economic loss claims for vehicles purchased prior to the closing of the 363 Sale, and the other on behalf of plaintiffs who asserted economic loss claims for vehicles purchased after the closing of the 363 Sale.

35.    In response to the April Decision and June Judgment, the MDL Plaintiffs filed a Second Amended Consolidated Complaint on June 12, 2015 (and a corrected version on July 9, 2015), which "amend[ed] and supersed[ed] the Pre-Sale and Post Sale Complaints." The MDL Second Amended Consolidated Complaint sought economic damages on behalf of, among others, plaintiffs who owned or leased both Old GM Vehicles and New GM Vehicles, and asserted the following causes of action:

- violation of RICO, fraudulent concealment, unjust enrichment, breach of implied warranty of merchantability, and violation of state consumer protection statutes;

- violation of the Magnuson-Moss Warranty Act and negligence (post-sale Ignition Switch Defect Subclass);

- fraudulent concealment of the right to file claims against Old GM and violation of the TREAD Act (Pre-Sale Ignition Switch Defect Subclass).

The causes of action contained in the Original Pilgrim Complaint were patterned off of and copied from the MDL Second Amended Consolidated Complaint.

36.    On December 16, 2015, the MDL Plaintiffs filed a Third Amended Consolidated Complaint, attempting to comply with the November Decision and December Judgment. In addition to other modifications, significantly for purposes herein, the MDL Plaintiffs modified the class of plaintiffs who sought relief in the Third Amended Consolidated Complaint, limiting them as follows: (i) owners of New GM vehicles sold or leased on or after July 11, 2009; (ii) owners of New GM Vehicles and Old GM Vehicles sold or leased as a "Certified Pre-

Owned" vehicle on or after July 11, 2009; and (iii) Ignition Switch Plaintiffs.  Importantly, Non-Ignition Switch Plaintiffs were omitted from the Third Amended Complaint.  The MDL Plaintiffs thus recognized that claims by Non-Ignition Switch Plaintiffs relating to Old GM Vehicles (*i.e.*, like those asserted in the Amended Pilgrim Complaint) are barred by the Sale Order and Injunction and the other rulings of this Court.

## F.    The Pilgrim Lawsuit

37.    On October 14, 2015, the original complaint ("**Original Pilgrim Complaint**")[18] was filed in the Pilgrim Lawsuit on behalf of 18 individual plaintiffs and purportedly on behalf of others similar situated, asserting economic loss claims in connection with an alleged "engine valve guide" defect in certain Chevrolet Corvettes manufactured between 2006 and 2014 ("**Pilgrim Subject Vehicles**").  None of the named plaintiffs in the Original Pilgrim Complaint owned a Pilgrim Subject Vehicle that was a New GM Vehicle; all were Old GM Vehicles.

38.    As noted above, the Original Pilgrim Complaint was modeled after, and in many respects copied verbatim from, the MDL Second Amended Consolidated Complaint (except with significantly fewer factual allegations).[19]  On October 28, 2015, after being served with the Original Pilgrim Complaint, New GM informed counsel for the Pilgrim Plaintiffs that the Original Pilgrim Complaint made allegations and asserted claims against New GM that violated the Sale Order and Injunction, and the April Decision and June Judgment.[20]  New GM stated that

---

[18]    A copy of the Original Pilgrim Complaint is attached hereto as **Exhibit "J."**

[19]    The Pilgrim Plaintiffs continued to copy from the MDL complaint, even with respect to matters that are irrelevant to the claims in the Amended Pilgrim Complaint.  For example, the Pilgrim Plaintiffs copy verbatim from the MDL complaint with respect to the criminal investigation of New GM with respect to the ignition switch defect (*see* Amended Pilgrim Complaint, ¶ 86) even though the ignition switch defect has nothing to do with the Pilgrim Lawsuit.

[20]    *See* Letter to Andre E. Jardini, Esq. from Scott Davidson, Esq., dated October 28, 2015 ("**October 28 Letter**") (without exhibits), a copy of which is attached hereto as **Exhibit "K."**  Copies of the April Decision and June Judgment were annexed as exhibits to the October 28 Letter.

the Original Pilgrim Complaint should be amended so that it was consistent with the Sale Order,

April Decision and June Judgment, or stayed pending the rulings by the Bankruptcy Court with

respect to the matters set forth in the September 3 Scheduling Order.

39.    Thereafter, after the November Decision, counsel for New GM and the Pilgrim

Plaintiffs met and conferred on how best to proceed.  Pursuant to a stipulation ("**Stipulation**")

entered into by the parties and approved by the California District Court on December 1, 2015

("**California Order**"),[21] it was agreed that the Pilgrim Plaintiffs would amend the Original

Pilgrim Complaint by December 23, 2015, and that New GM would have 45 days to answer,

move or otherwise respond to the amended complaint.

40.    On December 15, 2015, prior to the deadline for the Pilgrim Plaintiffs to file an

amended complaint, New GM sent their counsel a letter enclosing copies of the December

Judgment (a copy of the November Decision had previously been provided to them).[22]  In the

December 15 Letter, New GM specifically informed the Pilgrim Plaintiffs that "[o]nly Ignition

Switch Plaintiffs can assert Independent Claims" and that, as the plaintiffs in the Original

Pilgrim Complaint were not Ignition Switch Plaintiffs, they could not assert Independent Claims

against New GM with respect to Old GM Vehicles.  New GM cautioned the Pilgrim Plaintiffs to

"consider the [December] Judgment very carefully in determining whether your complaint can

---

[21]    Copies of the Stipulation and California Order are collectively attached hereto as **Exhibit "L."**  The Pilgrim
Plaintiffs acknowledged in the Stipulation that this Court retained exclusive jurisdiction to interpret the
provisions of the Sale Order and Injunction.  *See* Stipulation, at 3.  The Pilgrim Plaintiffs contended that,
"despite th[e] reservation of jurisdiction, the Bankruptcy Court has specifically permitted certain types of claims
and issues to be decided by non-bankruptcy courts." *Id.*  However, while this Court did hold that non-
bankruptcy courts can determine if certain claims constitute Independent Claims, since none of the Pilgrim
Plaintiffs' claims can be Independent Claims, it is for this Court to interpret and enforce the Sale Order and
Injunction.  *See, e.g., In re Motors Liquidation Co.*, 513 B.R. 467, 477 (Bankr. S.D.N.Y. 2014) (and the cases
cited therein) ("And it need hardly be said that I have jurisdiction to interpret and enforce my own orders, just
as I've previously done, repeatedly, with respect to the very Sale Order here." (footnote omitted)).

[22]    *See* Letter to Andre E. Jardini, Esq. from Greg Oxford, Esq., dated December 15, 2015 ("**December 15
Letter**"), a copy of which is attached hereto as **Exhibit "M."**

be amended without violating the injunctive provisions" contained in the Sale Order and Injunction.

41.     On December 22, 2015, the Pilgrim Plaintiffs filed an amended complaint ("**Amended Pilgrim Complaint**").  Twenty-two additional plaintiffs were added, *three* of which claim to own a New GM Vehicle; the remaining Pilgrim Plaintiffs own Old GM Vehicles.  While the Amended Pilgrim Complaint deleted a cause of action relating to the Pilgrim Plaintiffs' failure to file a claim in the Old GM bankruptcy case, and certain other changes were made, the Amended Pilgrim Complaint continued to assert claims against New GM on behalf of owners of Old GM Vehicles.

42.     After reviewing the Amended Pilgrim Complaint, by letter dated December 24, 2015 ("**December 24 Letter**"),[23] New GM sent the Pilgrim Plaintiffs a copy of the MDL Third Amended Consolidated Complaint, informing them that the MDL Plaintiffs had deleted all Non-Ignition Switch Plaintiffs from that complaint, and asking the Pilgrim Plaintiffs to remove all plaintiffs who claim to own Old GM Vehicles (as well as all claims relating to Old GM Vehicles).  They have not done so, necessitating the filing of this Pilgrim Motion to Enforce.

## ARGUMENT

43.     The Pilgrim Plaintiffs do not have the choice of simply ignoring the Court's Sale Order and Injunction and its multiple rulings addressing its effect on lawsuits filed against New GM.  As the Supreme Court expressed in its *Celotex* decision:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done. . . .  Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law.

---

[23]    A copy of the December 24 Letter is attached hereto as **Exhibit "N."**

514 U.S. at 313; *see also Gen. Motors*, 513 B.R. at 478 ("As the Supreme Court held in *Celotex,* persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." (footnote omitted)).   These settled principles bind the Pilgrim Plaintiffs who purchased Old GM Vehicles.  They are subject to the Sale Order and Injunction and therefore are barred from suing New GM on account of Old GM's Retained Liabilities.

44.   Despite being on notice of the Sale Order and Injunction, and the Bankruptcy Court's rulings in the April Decision, June Judgment, November Decision and December Judgment, the Pilgrim Plaintiffs nevertheless ignore them to the extent they are proceeding in the California District Court as if they are somehow different from all other Non-Ignition Switch Plaintiffs.  But they are not.  They are bound by the injunction contained in the Sale Order and Injunction, and that portion of the Amended Pilgrim Complaint that asserts claims against New GM based on Old GM Vehicles must be dismissed.[24]

**A.     Claims Based on Old GM Vehicles in the Amended
        Pilgrim Complaint are Not Independent Claims and,
        Thus, They Cannot be Asserted Against New GM**

45.   While the Pilgrim Plaintiffs crib much of their allegations and causes of action from the MDL Second Amended Consolidated Complaint, the Pilgrim Plaintiffs fail to acknowledge that the MDL Plaintiffs recently amended their complaint and omitted all Non-Ignition Switch Plaintiffs therefrom.  Based on the Bankruptcy Court's prior rulings, the Pilgrim Plaintiffs should be directed to remove from the Amended Pilgrim Complaint all plaintiffs who claim to own Old GM Vehicles (as well as all claims relating to Old GM Vehicles), and they should be enjoined from proceeding to litigate the Pilgrim Lawsuit until they do so.

---

[24]   Alternatively, the Amended Pilgrim Complaint should be stayed pending the appellate rulings in the Second Circuit with respect to the April Decision and June Judgment.

46.     The following facts cannot be disputed: (i) only Ignition Switch Plaintiffs can assert Independent Claims against New GM (*see* June Judgment, ¶ 4; December Judgment, ¶ 14); (ii) none of the Pilgrim Plaintiffs are Ignition Switch Plaintiffs; (iii) the Pilgrim Plaintiffs fall within the definition of Non-Ignition Switch Plaintiffs, and (iv) Non-Ignition Switch Plaintiffs cannot assert Independent Claims against New GM (December Judgment, ¶ 14). Given these undeniable facts, those claims asserted by the Pilgrim Plaintiffs against New GM that are based on Old GM Vehicles (and any claims by any putative class of such plaintiffs) cannot be maintained under the Bankruptcy Court's rulings.

47.     Both the June Judgment and December Judgment held that, except for the modification of the Sale Order and Injunction concerning Ignition Switch Plaintiffs, the Sale Order and Injunction remains unmodified and in full force and effect. *See* June Judgment, ¶ 5; December Judgment, ¶ 39. Thus, the Pilgrim Plaintiffs can only assert claims concerning Old GM Vehicles if they are Assumed Liabilities of New GM. *See* December Judgment, at 2 n.3. As detailed in the next section, New GM did not assume any of the claims asserted in the Amended Pilgrim Complaint that relate to Old GM Vehicles; they therefore are all Retained Liabilities of Old GM, and, accordingly, are barred by the Sale Order and Injunction.

**B.    None of the Claims Asserted in the Amended Pilgrim Complaint, as
       They Relate to Old GM Vehicles, Are Assumed Liabilities of New GM**

48.     The Sale Order and Injunction expressly provides that, except for contractually defined "Assumed Liabilities," New GM shall have no liability for claims arising from or based upon vehicles manufactured by Old GM. *See* Sale Order and Injunction, ¶ 46. The Sale Order and Injunction also provides that except as expressly permitted under the Sale Agreement or the Sale Order and Injunction, all persons and entities, including litigation claimants (such as the Pilgrim Plaintiffs), holding claims against Old GM, contingent or otherwise, arising under, out

of, in connection with, or in any way relating to Old GM and the operation of its business prior to 363 Sale, are barred from asserting such claims against New GM.  *Id.* ¶ 8.

49.    In addition, the Sale Order and Injunction states that, except for Assumed Liabilities, all claims arising in connection with Old GM's actions or omissions (*i.e.*, Old GM's conduct) may not be asserted against New GM.  *See id.* ¶ AA.  Based on these provisions of the Sale Order and Injunction, with respect to Old GM Vehicles, whether they were sold by Old GM before the 363 Sale, or by a third party after the 363 Sale, all economic loss claims arising therefrom are obligations of Old GM (and not New GM).

50.    As noted, the Pilgrim Plaintiffs' claims do not fall within any of the three categories of Assumed Liabilities relating to Old GM vehicles: (i) they are not based on post-363 Sale accidents; (ii) they are not based on the already expired glove box warranty for Old GM Vehicles; and (iii) they are not based on any violations of Lemon Laws (as defined in the Sale Agreement).  Therefore, the Pilgrim Plaintiffs' claims relating to Old GM Vehicles are not Assumed Liabilities.

51.    It is also clear that all claims based on the doctrine of "successor liability" are barred by the Sale Order and Injunction.  *See, e.g.*, Sale Order and Injunction, ¶ 46; April Decision, 529 B.R. at 528 ("But it is plain that to the extent the Plaintiffs seek to impose successor liability, or to rely, in suits against New GM, on any wrongful conduct by Old GM, these are actually claims against Old GM, and not New GM."); June Judgment, ¶ 9 ("Except for Independent Claims and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined

pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment."); November Decision, 541 B.R. at 140 ("That is the paradigm of a successor liability claim, impermissible under each of the Sale Order, April Decision, and Judgment."). All of the Pilgrim Plaintiffs' claims, as they relate to Old GM Vehicles are a species of successor liability "dressed up to look like something else." April Decision, 529 B.R. at 528. They, thus, are Retained Liabilities of Old GM that cannot be asserted against New GM.

52.    Specifically, Retained Liabilities for Old GM Vehicles include (i) all liabilities related to implied warranty or other implied obligation arising under statutory or common law; (ii) allegation, statement or writing by or attributable to Old GM. *See* Sale Agreement § 2.3(b)(xvi). This would include the Pilgrim Plaintiffs' claims based on implied warranty of merchantability and state consumer protection statutes.

53.    In addition, Retained Liabilities include all liabilities of Old GM to third parties based upon contract, tort or any other basis. *See id.* § 2.3(b)(xi). This category covers claims asserted by the Pilgrim Plaintiffs that are based on negligence, state consumer protection statutes, fraudulent concealment and unjust enrichment.

54.    Moreover, New GM cannot be held liable for claims based on the conduct of Old GM, including any allegation, statement or writing attributable to Old GM. This would cover fraudulent concealment type claims predicated on Old GM's conduct. *See* Sale Order and Injunction, ¶¶ AA, 56.

55.    Claims based on an alleged failure to recall also are not included within any category of Assumed Liabilities. *See* December Judgment, ¶ 21 ("A duty to recall or retrofit is not an Assumed Liability, and New GM is not responsible for any failures of Old GM to do so."); *see also id.* ¶ 29 ("Obligations, if any, that New GM had to recall or retrofit Old GM

Vehicles were not Assumed Liabilities, and New GM is not responsible for any failures of Old GM to do so.").

56.     With respect to the Pilgrim Plaintiffs' "third-party beneficiary claim," such claim has been expressly rejected by the Bankruptcy Court. *See* November Decision, 541 B.R. at 129 n.67.

57.     New GM assumed no claims concerning any "duty to warn" about Old GM Vehicles as advanced by the Pilgrim Plaintiffs. Thus, any duty to warn claims asserted by the Pilgrim Plaintiffs are barred by the Sale Order and Injunction.

58.     In a case directly on point, the bankruptcy court in *Burton v. Chrysler Group, LLC (In re Old Carco)*, 492 B.R. 392 (Bankr. S.D.N.Y. 2013) ("***Burton***") reviewed whether New Chrysler assumed Old Chrysler's duty to warn its customers as to a "fuel spit back" defect. 492 B.R. at 405. While a recall was not initiated, New Chrysler issued technical services bulletins to its dealers alerting them to the defect in certain models. *Id.* at 406. A class action was commenced, after the Chrysler sale order, by customers who owned vehicles subject to the defect. In finding that the sale order in *Burton* (which is substantially similar to the Sale Order and Injunction) barred the customers' claims, the bankruptcy court first found that plaintiffs had not properly asserted a "duty to warn" case. Typically, "duty to warn" cases involve a plaintiff who sustained a personal injury because someone failed to warn him about a dangerous product, and the failure to warn proximately caused his subsequent injury. *Id.* at 405. The plaintiffs in *Old Carco* (like the Pilgrim Plaintiffs) did not allege subsequent personal injuries, and thus, in an economic loss case, there was no common-law duty to warn. *Id.*

59.     Judge Bernstein properly analyzed the *Burton* case as one (like the Pilgrim Lawsuit) where the plaintiffs alleged that they purchased defective vehicles manufactured by Old

Carco that require more servicing and were worth less money. The Court found that New Chrysler's conduct did not proximately cause economic loss to the plaintiffs. Any loss occurred when the vehicle was sold by Old Carco. The alleged failure to disclose "is a typical successor liability case dressed up to look like something else, and is prohibited by the plain language of the bankruptcy court's Order." *Burton*, 492 B.R. at 405 (internal citations omitted). As the *Burton* court found, "[a]nyone who owns a car contemplates that it will need to be repaired . . . ." *Id.* at 403.

60.    Here, the Pilgrim Plaintiffs are contending that, upon purchasing the assets from Old GM, New GM also acquired (and instantaneously became liable for breaching) a brand new duty to warn the Pilgrim Plaintiffs about alleged defects with the engine values in their Old GM Vehicles. However, as the *Burton* case held, this theory is nothing more than a "dressed up" successor liability claim, and is barred by the Sale Order and Injunction. *Id.* at 406. In other words, for a Non-Ignition Switch Plaintiff (like the Pilgrim Plaintiffs here) suing over an Old GM Vehicle, if the claim is not an Assumed Liability New GM has no obligation to the vehicle owner. It is not more complicated than that.

61.    Based on the foregoing, it is clear that none of the Pilgrim Plaintiffs' claims are Assumed Liabilities of New GM. As none of them can be Independent Claims, they are all Retained Liabilities of Old GM that are barred by the Sale Order and Injunction and the other rulings by the Bankruptcy Court.

## C.    Any Requests for Exemplary Damages with Respect To Claims based on Old GM Vehicles are Barred

62.    In the December Judgment, the Bankruptcy Court held as follows:

Claims for punitive damages asserted in economic loss actions involving vehicles manufactured by Old GM with the Ignition Switch Defect cannot be asserted except for any that might be recoverable in connection with Independent Claims, and then based only on New GM knowledge and conduct.

23

December Judgment, ¶ 12.

63.    While the Amended Pilgrim Complaint seeks "exemplary damages," they are the same as punitive damages.  *See Punitive Damages*, BLACK'S LAW DICTIONARY (10th ed. 2014) (punitive damages "[a]lso termed *exemplary damages*").  As the Pilgrim Plaintiffs cannot assert any Independent Claims against New GM, they cannot seek punitive or exemplary damages from New GM except with respect to claims based solely on New GM Vehicles and New GM conduct.  *See* December Judgment, ¶ 13;  *id.* ¶ 39 ("For the avoidance of doubt, except as provided in the June Judgment and the April Decision, the provisions of the Sale Order shall remain unmodified and in full force and effect, including, without limitation, paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for the actions or inactions of Old GM.").

> ### D.    The Amended Pilgrim Complaint Violates Other Aspects of the November Decision and December Judgment

64.    While the Pilgrim Plaintiffs were provided with the November Decision and December Judgment prior to the deadline to file the Amended Pilgrim Complaint, they still included in the Amended Pilgrim Complaint various allegations that violate the provisions of the December Judgment.  The December Judgment clearly provides as follows:

> Allegations that do not distinguish between Old GM and New GM (e.g., referring to "GM" or "General Motors"), or between Old GM vehicles and New GM vehicles (*e.g.*, referring to "GM-branded vehicles") . . . are proscribed by the Sale Order, April Decision and June Judgment, and complaints containing such allegations are and remain stayed, unless and until they are amended consistent with the Decision and this Judgment.

December Judgment, ¶ 17; *see also* November Decision, 541 B.R. at 132 ("[T]he Court easily sustains New GM's objections to the allegations that muddy the distinctions between Old GM and New GM . . . .").

65.    While the Amended Pilgrim Complaint did attempt to define "New GM" and "Old GM," it also refers to New GM as "GM," and, at times, muddies the distinction between Old GM and New GM.  For example, the Amended Pilgrim Complaint concerns both Old GM Vehicles and New GM Vehicles, yet the Pilgrim Plaintiffs assert that "*GM* widely advertised the 7.0 liter V8 engine which was used in the Chevrolet Corvette 427 and Chevrolet Corvette Z06 vehicle from 2006 through 2014 as being of the highest quality and durability."  Amended Pilgrim Complaint, ¶ 2 (emphasis added); *see also id.* ¶ 111 ("There was unequal bargaining power between *GM* and the plaintiffs and the other class members as, at all times of purchase and lease, plaintiffs and the other class members had no other option for purchasing warranty coverage other than directly from GM." (emphasis added)).  Old GM generally advertised the Old GM Vehicles at issue, and New GM did not sell the Old GM Vehicles to any plaintiff.

66.    In addition, the December Judgment provides as follows:

> Allegations that allege or suggest that New GM manufactured or designed an Old GM Vehicle, or performed other conduct relating to an Old GM Vehicle before the Sale Order, are proscribed by the Sale Order, April Decision and June Judgment, and complaints containing such allegations are and remain stayed, unless and until they are amended consistent with the Decision and this Judgment.

December Judgment, ¶ 18.

67.    Despite this clear and unambiguous pronouncement, the Amended Pilgrim Complaint continues to assert that "*GM* has designed, manufactured, sold or otherwise placed in the stream of commerce class vehicles which are defective, as set forth above."  Amended Pilgrim Complaint, ¶ 118 (emphasis added); *see also e.g., id.* ¶¶ 119-121.

68.    Presumably, once all claims with respect to Old GM Vehicles are stricken from the Amended Pilgrim Complaint, the above allegations will similarly be stricken or modified to relate only to New GM Vehicles.

## NOTICE AND POTENTIAL FUTURE REQUEST FOR INTERIM RELIEF

69.    Notice of this Pilgrim Motion to Enforce has been provided to counsel for the Pilgrim Plaintiffs, and all entities that receive electronic notice from the Court's ECF system. New GM submits that such notice is sufficient and no other or further notice need be provided.

70.    No prior request for the relief sought in this Pilgrim Motion to Enforce has been made to this or any other Court.

71.    Significantly, the deadline for New GM to answer or otherwise move with respect to the Amended Pilgrim Complaint is currently February 3, 2016 ("**Amended Pilgrim Complaint Response Date**"), "subject to any stay that may be issued pending action by the Bankruptcy Court."    Stipulation, ¶ 2.    Immediately after service of this Pilgrim Motion to Enforce, counsel for New GM will request that the Pilgrim Plaintiffs enter into a voluntary stay of the Pilgrim Lawsuit pending a resolution of this Pilgrim Motion to Enforce.    There is no legitimate reason why the Pilgrim Plaintiffs should not agree to this request since, as demonstrated herein, the Pilgrim lawsuit is a violation of the Bankruptcy Court's Sale Order and Injunction, and the Bankruptcy Court has exclusive jurisdiction to interpret and enforce its own orders.    *See* Sale Order and Injunction, ¶ 71.

72.    Nevertheless, to the extent the Pilgrim Plaintiffs will not agree to a voluntary stay of the Pilgrim Lawsuit, New GM intends, prior to the Amended Pilgrim Complaint Response Date, to seek immediate relief from this Court in the form of an order enjoining the Pilgrim Plaintiffs from proceeding further in the Pilgrim Lawsuit pending a resolution of this Pilgrim Motion to Enforce.

WHEREFORE, New GM respectfully requests that this Court: (i) enter an order substantially in the form attached hereto as **Exhibit "O,"** granting the relief sought herein, and such other relief as the Court may deem just and proper.

Dated: New York, New York
January 19, 2016

Respectfully submitted,

_____/s/ Arthur Steinberg_____
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Gregory R. Oxford (admitted *pro hac vice*)
ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Telephone: (310) 316-1990
Facsimile: (310) 316-1330

*Attorneys for General Motors LLC*