# Exhibit  B

1 | André E. Jardini, Bar No. 71335
aej@kpclegal.com
2 | K.L. Myles, Bar No. 243272
klm@kpclegal.com
3 | KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
4 | Glendale, California 91203-1922
Telephone: (818) 547-5000
5 | Facsimile: (818) 547-5329

6 | Attorneys for Plaintiffs
WILLIAM D. PILGRIM, WALTER GOETZMAN,
7 | CHAD REESE, JEROME E. PEDERSON,
AHMED J. CANNON, MICHAEL FERNANDEZ,
8 | ROY HALEEN, HOWARD KOPEL, ROBERT C.
MURPHY, MIKE PETERS, MARC ADAMS,
9 | KALEB ISLEY, KAI QIAN, MARK ROWE,
DALLAS WICKER, MIGUEL QUEZADA,
10 | CHRISTOPHER CONSTANTINE, BRADLEY
GRANT, JOHN PARSONS, ROBERT L. BRIGGS,
11 | ROBERT EDGAR, ROGER L. BROWNING,
LYLE DUNAHOO, AARON CLARK, ALAN
12 | PELLETIER, EDWIN WILLIAM KRAUSE,
FRANK JUZSWIK, S. GARRETT BECK, DAVID
13 | SHELDON, JAN ENGWIS, ADAM BALDUCCI,
ALAN FERRER, JARED KILEY, JEFF
14 | KOLODZI, DEREK VAN DEN TOP, MORRIS
SMITH, ANDRES FREY, SHAWN BAIN,
15 | JEFFREY M. MILLSLAGLE, ROBERT GEISS,
individuals, on behalf of themselves and all others
16 | similarly situated

17 | UNITED STATES DISTRICT COURT

18 | CENTRAL DISTRICT OF CALIFORNIA

19 | WILLIAM D. PILGRIM, WALTER
GOETZMAN, CHAD REESE, JEROME
20 | E. PEDERSON, AHMED J. CANNON,
MICHAEL FERNANDEZ, ROY
21 | HALEEN, HOWARD KOPEL, ROBERT
C. MURPHY, MIKE PETERS, MARC
22 | ADAMS, KALEB ISLEY, KAI QIAN,
MARK ROWE, DALLAS WICKER,
23 | MIGUEL QUEZADA, CHRISTOPHER
CONSTANTINE, BRADLEY GRANT,
24 | JOHN PARSONS, ROBERT L. BRIGGS,
ROBERT EDGAR, ROGER L.
25 | BROWNING, LYLE DUNAHOO,
AARON CLARK, ALAN PELLETIER,
26 | EDWIN WILLIAM KRAUSE, FRANK
JUZSWIK, S. GARRETT BECK, DAVID
27 | SHELDON, JAN ENGWIS, ADAM
BALDUCCI, ALAN FERRER, JARED
28 | KILEY, JEFF KOLODZI, DEREK VAN
DEN TOP, MORRIS SMITH, ANDRES

NO.   CV 15-8047-JFW (Ex)

Dept:                                      16

Judge:  The Honorable John F. Walter

FIRST AMENDED CLASS ACTION
COMPLAINT FOR DEFECTIVE
VEHICLES

DEMAND FOR JURY TRIAL

KNAPP,
PETERSEN
& CLARKE

-1-

1  FREY, SHAWN BAIN, JEFFREY M.  )
   MILLSLAGLE, ROBERT GEISS,      )
2  individuals, on behalf of themselves and  )
   all others similarly situated,  )
3                                  )
                                    )
          Plaintiffs,              )
4      v.                          )
                                    )
5  GENERAL MOTORS LLC and DOES 1   )
   through 50, inclusive,          )
6                                  )
          Defendants.              )
7  _____  )

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

KNAPP,
PETERSEN
& CLARKE

28

2411127.1  08000/01006

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................3

PARTIES ...............................................................................................5

Plaintiffs ...............................................................................................5

JURISDICTION ..................................................................................13

VENUE ...............................................................................................13

CLASS ALLEGATIONS .....................................................................14

A.    The Nationwide Class....................................................................14

B.    State Law Classes ..........................................................................14

C.    The Classes and Subclasses Meet Rule 23 Requirements .............15

CLAIMS FOR RELIEF .......................................................................18

COUNT I
      VIOLATION OF RACKETEER INFLUENCED AND
      CORRUPT ORGANIZATIONS ACT ("RICO") 18 U.S.C.
      Section 1961, et seq .................................................................18

COUNT II
      VIOLATION OF THE MAGNUSON-MOSS WARRANTY
      ACT  (15 U.S.C. Section 2301, et seq.) .........................................22

COUNT III
      NEGLIGENCE ..............................................................................25

COUNT IV
      VIOLATION OF ALABAMA DECEPTIVE TRADE
      PRACTICES ACT (ALA. CODE § 8-19-1, et seq.).......................27

COUNT V
      FRAUD BY CONCEALMENT....................................................31

COUNT VI
      THIRD-PARTY BENEFICIARY CLAIM ....................................33

COUNT VII
      UNJUST ENRICHMENT ..............................................................35

COUNT VIII
      VIOLATIONS OF THE CONSUMER FRAUD ACT (Arizona
      Rev. Stat. § 44-1521, et seq.) .......................................................37

COUNT IX
      FRAUD BY CONCEALMENT....................................................41

-i-

KNAPP,
PETERSEN
& CLARKE

## TABLE OF CONTENTS (cont.)

**Page**

COUNT X
    THIRD-PARTY BENEFICIARY CLAIM ..................................................43

COUNT XI
    UNJUST ENRICHMENT ..........................................................................45

COUNT XII
    VIOLATIONS OF THE CONSUMER LEGAL REMEDIES
    ACT  (Cal. Civ. Code § 1750, et seq.) ............................................46

COUNT XIII
    VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION
    LAW (Cal. Bus. & Prof. Code § 17200, et seq.)............................51

COUNT XIV
    FRAUD BY CONCEALMENT ..................................................................55

COUNT XV
    VIOLATION OF SONG-BEVERLY CONSUMER
    WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY
    OF MERCHANTABILITY (Cal. Civ. Code §§ 1791.1 & 1792)................58

COUNT XVI
    NEGLIGENT FAILURE TO RECALL ....................................................60

COUNT XVII
    THIRD-PARTY BENEFICIARY CLAIM ..................................................61

COUNT XVIII
    UNJUST ENRICHMENT ..........................................................................63

COUNT XIX
    VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE
    TRADE PRACTICES ACT (FLA. STAT. § 501.201, et seq.) ....................64

COUNT XX
    FRAUD BY CONCEALMENT ..................................................................68

COUNT XXI
    THIRD-PARTY BENEFICIARY CLAIM ..................................................70

COUNT XXII
    UNJUST ENRICHMENT ..........................................................................72

COUNT XXIII
    VIOLATION OF ILLINOIS CONSUMER FRAUD AND
    DECEPTIVE BUSINESS PRACTICES ACT
    (815 ILCS 505/1, et seq. and 720 ILCS 295/1A)............................73

COUNT XXIV
    FRAUD BY CONCEALMENT ..................................................................77

KNAPP,
PETERSEN
& CLARKE

-ii-

# TABLE OF CONTENTS (cont.)

**Page**

COUNT XV
    THIRD-PARTY BENEFICIARY CLAIM .................................................80

COUNT XXVI
    UNJUST ENRICHMENT ...........................................................................82

COUNT XXVII
    VIOLATION OF THE INDIANA DECEPTIVE CONSUMER
    SALES ACT (IND. CODE § 24-5-0.5-3) ......................................................83

COUNT XXVIII
    FRAUD BY CONCEALMENT ....................................................................87

COUNT XXIX
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (IND. CODE § 26-1-2-314)....................................90

COUNT XXX
    THIRD-PARTY BENEFICIARY CLAIM .................................................91

COUNT XXXI
    UNJUST ENRICHMENT ...........................................................................93

COUNT XXXII
    DECEPTIVE ACTS OR PRACTICES PROHIBITED BY
    MASSACHUSETTS LAW (MASS. GEN. LAWS CH. 93A, § 1,
    et seq.)..........................................................................................................94

COUNT XXXIII
    FRAUD BY CONCEALMENT ....................................................................98

COUNT XXXIV
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (ALM GL. CH. 106, § 2-314)...............................101

COUNT XXXV
    THIRD-PARTY BENEFICIARY CLAIM .................................................102

COUNT XXXVI
    UNJUST ENRICHMENT ...........................................................................104

COUNT XXXVII
    VIOLATION OF THE MICHIGAN CONSUMER
    PROTECTION ACT (MICH. COMP. LAWS § 445.903, et seq.).............105

COUNT XXXVIII
    FRAUD BY CONCEALMENT ..................................................................109

COUNT XXXIX
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MICH. COMP. LAWS § 440.2314) ...................112

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

## <u>TABLE OF CONTENTS (cont.)</u>

<u>Page</u>

COUNT XL
THIRD-PARTY BENEFICIARY CLAIM .................................................113

COUNT XLI
UNJUST ENRICHMENT .........................................................................115

COUNT XLII
VIOLATION OF MONTANA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION ACT OF 1973
(MONT. CODE ANN. § 30-14-101, et seq.) .............................................116

COUNT XLIII
FRAUD BY CONCEALMENT ................................................................120

COUNT XLIV
BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (MONT. CODE § 30-2-314) ...............................122

COUNT XLV
THIRD-PARTY BENEFICIARY CLAIM .................................................123

COUNT XLVI
UNJUST ENRICHMENT .........................................................................125

COUNT XLVII
VIOLATION OF NEW JERSEY CONSUMER FRAUD
ACT(N.J. STAT. ANN. § 56 ....................................................................126

COUNT XLVIII
FRAUD BY CONCEALMENT ................................................................130

COUNT XLIX
BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.J. STAT. ANN. § 12A)....................................133

COUNT L
THIRD-PARTY BENEFICIARY CLAIM .................................................134

COUNT LI
UNJUST ENRICHMENT .........................................................................136

COUNT LII
VIOLATION OF OHIO CONSUMER SALES PRACTICES
ACT (OHIO REV. CODE ANN. § 1345.01, et seq.) .................................137

COUNT LIII
FRAUD BY CONCEALMENT ................................................................142

COUNT LIV
IMPLIED WARRANTY IN TORT ...........................................................145

KNAPP,
PETERSEN
& CLARKE

-iv-

2411127.1  08000/01006

## TABLE OF CONTENTS (cont.)

**Page**

COUNT LV
    THIRD-PARTY BENEFICIARY CLAIM ................................................. 145

COUNT LVI
    UNJUST ENRICHMENT .......................................................................... 147

COUNT LVII
    VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
    PRACTICES AND CONSUMER PROTECTION LAW
    (73 P.S. § 201-1, et seq.) ......................................................................... 149

COUNT LVIII
    FRAUD BY CONCEALMENT ................................................................ 153

COUNT LIX
    BREACH OF THE IMPLIED WARRANTY OF
    MERCHANTABILITY (13 PA. CONS. STAT. ANN. § 2314) ................ 155

COUNT LX
    THIRD-PARTY BENEFICIARY CLAIM ................................................. 156

COUNT LXI
    UNJUST ENRICHMENT .......................................................................... 158

COUNT LXII
    VIOLATION OF THE SOUTH DAKOTA
    DECEPTIVE TRADE PRACTICES AND CONSUMER
    PROTECTION LAW(S.D. CODIFIED LAWS § 37-24-6) ........................ 159

COUNT LXIII
    FRAUD BY CONCEALMENT ................................................................ 163

COUNT LXIV
    BREACH OF THE IMPLIED WARRANTY OF
    MERCHANTABILITY (S.D. CODIFIED LAWS § 57A-2-314) .............. 166

COUNT LXV
    THIRD-PARTY BENEFICIARY CLAIM ................................................. 167

COUNT LXVI
    UNJUST ENRICHMENT .......................................................................... 169

COUNT LXVII
    VIOLATION OF TENNESSEE CONSUMER PROTECTION
    ACT (TENN. CODE ANN. § 47-18-101, et seq.) ...................................... 170

COUNT LXVIII
    FRAUD BY CONCEALMENT ................................................................ 174

COUNT LXIX
    THIRD-PARTY BENEFICIARY CLAIM ................................................. 176

**KNAPP,**
**PETERSEN**
**& CLARKE**

-v-

# <u>TABLE OF CONTENTS (cont.)</u>

<u>Page</u>

COUNT LXX
    UNJUST ENRICHMENT ........................................................................178

COUNT LXXI
    VIOLATIONS OF THE TEXAS DECEPTIVE TRADE
    PRACTICES –CONSUMER PROTECTION ACT
    (TEX. BUS. & COM. CODE §§ 17.41, et seq.) ...........................................179

COUNT LXXII
    FRAUD BY CONCEALMENT ...............................................................184

COUNT LXXIII
    BREACH OF THE IMPLIED WARRANTY OF
    MERCHANTABILITY (TEX. BUS. & COM. CODE § 2.314) .................187

COUNT LXXIV
    THIRD-PARTY BENEFICIARY CLAIM ...............................................188

COUNT LXXV
    UNJUST ENRICHMENT ........................................................................190

PRAYER FOR RELIEF .........................................................................................191

DEMAND FOR JURY TRIAL ..............................................................................193

**KNAPP,**
**PETERSEN**
**& CLARKE**

-vi-

2411127.1  08000/01006

This **first amended** complaint is brought by plaintiffs herein as a class action complaint concerning purchasers or lessees of Corvette vehicles equipped with the LS7 7.0LV8 engine concerning model years 2006 to 2013. Those vehicles have exhibited excessive valve guide wear which has led to engine failures and inspections and repairs.

## **INTRODUCTION**

1.    Plaintiffs bring this action for themselves and on behalf of all persons in the United States, and in selected states, who purchased or leased Chevrolet Corvette 427 or Chevrolet Corvette Z06 vehicles ("class vehicles) which were manufactured, distributed and sold by defendant General Motors LLC (hereinafter "defendant" "New GM" or "GM"), **or manufactured, distributed or sold by General Motors Corporation (also known as Motors Liquidation Company) ("Old GM").**

2.    GM widely advertised the 7.0 liter V8 engine which was used in the Chevrolet Corvette 427 and Chevrolet Corvette Z06 vehicle from 2006 through 2014 as being of the highest quality and durability.

3.    The above engine in the class vehicles was subject to excessive valve guide wear, a condition which was well-known **by Old GM and was and is known** by GM.

4.    Because of defects in the design manufacture and assembly of these subject engines installed in the class vehicles, the class vehicles, and their engines, are by their nature susceptible to frequent mechanical failure, which has occurred.

5.    **The subject engines, when they fail, present a dire and significant safety danger to the operator as oil leak suddenly and in volume underneath the vehicle, under the rear tires which can lose traction, and subject to ignition, which engulfs the vehicle in flames, all while depriving the operator of poor brakes and power steering.**

6.    Because of the defects in the design manufacture and assembly of the subject engines installed in the class vehicles, owners and lessees of the class vehicles have or will incur significant expense for inspection and/or repair of the

**KNAPP,
PETERSEN
& CLARKE**

-3-

1 class vehicles.

2      7.     Despite knowledge of the propensity of the subject engine to excessive

3 valve guide wear, ==and the significant danger in operating the class vehicles,== GM has

4 not issued a recall so that the class vehicles may be tested and repaired. ==This failure==

5 ==to recall these defective and dangerous vehicles for this known defect has occurred==

6 ==despite the recall by GM of all subject vehicles from 2006 to 2014, for at least two==

7 ==other, less serious, defects.==

8      8.     The defects which cause excessive valve guide wear are well-known

9 and have been actively discussed by GM and owners or lessees of the class vehicles.

10 Yet, GM has taken no steps to correct the deficiencies in the subject engine.

11      9.     Despite GM's repeated assurances to members of the class of owners

12 that the subject engines were performing as designed, the engines fail at a high rate.

13      10.     Even extremely low mileage class vehicles have measured valve guide

14 clearances far beyond service limits resulting in repairs at significant costs. Using

15 the test specified by GM, a high proportion of owners or lessees of class vehicles had

16 out of specification valve guides on class vehicles built from 2006 to 2014.

17      11.     When confronted by multiple complaints concerning the above-

18 described defects, GM deflected complaints by insisting that "valve train noise" was

19 an inherent feature of the subject engine, and that the subject engines are not

20 defective.

21      12.     Further, GM attempted to minimize the extent of any problems by

22 falsely asserting that the problems arose from a single supplier and were limited to a

23 short period of time from July 2008 to March 2009. Even then, GM maintained that

24 the condition was not truly an out of specification condition and that the condition

25 had been remedied.

26      13.     As a result of customer complaints concerning the subject engines in the

27 class vehicles, GM implemented an investigation technique known as the "wiggle

28 method," as a method to determine whether the valve guides were out of

KNAPP,
PETERSEN
& CLARKE

-4-

2411127.1  08000/01006

1  specification.

2      14.    When GM determined that its adopted test would lead to more repairs

3  and investigations than it wished to perform, the test was summarily ==and==

4  ==unreasonably r==ejected.

5      15.    In dealing with multiple complaints concerning the subject engine in the

6  class vehicles, GM acted, at all times, to deflect criticisms, defer investigations and

7  repairs, and minimize the extent of the problems.

8      16.    During the time that GM has temporized, minimizing the extent of the

9  defect in the subject engines, class members have continued to suffer excessive valve

10 train noise, out of specification valve guides and ==catastrophic== engine failures.

11     17.    As a result of GM's misconduct alleged herein, plaintiffs and the other

12 owners and lessees of class vehicles have been harmed and have suffered actual

13 damages, in that the class vehicles continue to experience mechanical failure due to

14 the engine defect, and GM has not come up with a permanent remedy for this defect;

15 ==nor has GM instituted a recall of these vehicles.==  Furthermore, owners and lessees of

16 class vehicles have incurred, and will continue to incur, out-of-pocket unreimbursed

17 costs and expenses relating to the engine defect.

18                                    **PARTIES**

19 **Plaintiffs**

20     18.    Plaintiff William D. Pilgrim (hereinafter "Pilgrim") resides in the State

21 of Arizona.  Plaintiff Pilgrim owns a 2008 Corvette Z06 vehicle with a 7.0L 427

22 engine.  The vehicle was purchased on January 29, 2014.  The vehicle has exhibited

23 excessive valve train noise.  The vehicle failed GM's wiggle test.  Pilgrim has

24 incurred repair costs and other harm due to the engine defect in this vehicle.

25     19.    Plaintiff Walter Goetzman (hereinafter "Goetzman") is a resident of

26 Alabama.  Plaintiff Goetzman has owned a 2007 Corvette Z06 vehicle.

27     20.    ==Plaintiff Chad Reese (hereinafter "Reese") is a resident of Alabama.==

28 ==Plaintiff Reese owns a Corvette 2006 Z06 automobile.  The vehicle has an LS7==

KNAPP,
PETERSEN
& CLARKE

-5-

1  engine. The vehicle was purchased in October of 2014. The vehicle suffered a

2  catastrophic engine failure when the engine dropped the valve. This vehicle is

3  defective and subject to excessive valve guide wear.

4      21.    Plaintiff Jerome E. Pederson (hereinafter "Pederson") is a resident of

5  Arizona. Plaintiff Pederson owns a 2009 Corvette Z06 vehicle with a 7.0 LV8

6  engine. This vehicle was purchased in July of 2013. This vehicle is defective and

7  subject to excessive valve guide wear.

8      22.    Ahmed J. Cannon (hereinafter "Cannon") is a resident of Arizona.

9  Plaintiff Cannon owns a 2006 Corvette Z06 with a 427 c.i. LS7 engine. The vehicle

10  was purchased on December 8, 2008, and was covered by a GM factory warranty.

11  No repairs have been made by GM. The vehicle has exhibited signs of excessive

12  valve guide wear including ticking sound noises which are increasing.

13      23.    Plaintiff Cannon is also the owner of a 2012 Camaro SS with a 7.0 liter

14  427 cubic inch LS7 engine. The engine suffered a failure. The engine has suffered a

15  catastrophic failure due to the defects.

16      24.    Plaintiff Michael Fernandez (hereinafter "Fernandez") is a resident of

17  California. Plaintiff Fernandez owns a 2008 Corvette Z06 vehicle with a 7.0L V8

18  engine purchased May 24, 2013. All valve clearances on the vehicle were inspected

19  and found to be outside the manufacturer's allowable tolerance range. Inspection

20  expenses were incurred.

21      25.    Plaintiff Roy Haleen (hereinafter "Haleen") is a resident of California.

22  Plaintiff Haleen owns a 2008 Corvette Z06 vehicle with a 7.0L 427 engine. Valves

23  on the vehicle were inspected and found to be out of specification. Expense for

24  inspection and repair was incurred.

25      26.    Plaintiff Howard Kopel (hereinafter "Kopel") is a resident of California.

26  Plaintiff Kopel has owned two class vehicles, a 2008 Corvette C6 and a 2006

27  Corvette Z06. Both vehicles suffered from excessive valve guide wear and

28  underwent inspection and repair. Mr. Kopel has incurred expense due to the

KNAPP,
PETERSEN
& CLARKE

-6-

2411127.1  08000/01006

1 | described defect.

2 | 27. Plaintiff Robert C. Murphy (hereinafter "Murphy") is a resident of

3 | California. Plaintiff Murphy owns a 2006 Corvette Z06 vehicle, with a 7.0L LS7

4 | engine. The vehicle has exhibited excessive valve train noise and has failed the

5 | wiggle test.

6 | 28. Plaintiff Mike Peters (hereinafter "Peters") is a resident of California.

7 | Plaintiff Peters has owned a 2009 Corvette Z06 vehicle with a 7.0L 427 c.i. engine.

8 | This vehicle was purchased in April of 2012. This vehicle is defective and subject to

9 | excessive valve guide wear.

10 | 29. Plaintiff Marc Adams (hereinafter "Adams") is a resident of California.

11 | Plaintiff Adams owns a 2006 Corvette Z06 vehicle with a 7.0 liter engine. The

12 | vehicle was purchased in December of 2012. The vehicle is exhibiting signs of

13 | excessive wear several times what would be considered normal, including excessive

14 | "valve train noise." GM has represented to Adams that these defects were normal.

15 | The vehicle is defective and has experienced excessive valve guide wear.

16 | 30. Plaintiff Kaleb Isley (hereinafter "Isley") is a resident of California.

17 | Plaintiff Isley is the owner of a 2008 Corvette Z06 with a 427 cubic inch (7.0 liter)

18 | engine. The vehicle was purchased on December 1, 2014. The vehicle exhibited

19 | noise believed to be excessive valve guide wear and thereafter, suffered a

20 | catastrophic failure.

21 | 31. Plaintiff Kai Qian (hereinafter "Qian") is a resident of California.

22 | Plaintiff Qian is the owner of a 2006 Z06 Corvette with a 7 liter V-8 engine. The

23 | vehicle was purchased on September 1, 2015. The vehicle exhibits signs of a worn

24 | valve guide. This vehicle is defective and subject to excessive valve guide wear.

25 | 32. Plaintiff Mark Rowe (hereinafter "Rowe") is a resident of California.

26 | Plaintiff Rowe owns a 2007 Z06 Corvette. The vehicle has a 7.0 liter 427 engine.

27 | The vehicle was purchased on August 3, 2015. The engine has experienced

28 | excessive noise reflective of excessive valve guide wear. This vehicle is defective

KNAPP,
PETERSEN
& CLARKE

-7-

1  and subject to excessive valve guide wear.

2      33.    The previous owner of the vehicle replaced the original motor after a

3  catastrophic failure caused by excessive valve guide wear.

4      34.    Plaintiff Dallas Wicker (hereinafter "Wicker") is a resident of

5  California.  Plaintiff Wicker is the owner of a 2007 Corvette Z06 vehicle.  The

6  vehicle has a 7.0 liter 427 cubic inch engine.  The vehicle was purchased on June 27,

7  2014.  The engine in the vehicle has been inspected and the valve guides are out of

8  specification which could result in a catastrophic engine failure if they were not

9  repaired.  This vehicle is defective and subject to excessive valve guide wear.

10     35.    Plaintiff Miguel Quezada (hereinafter "Quezada") is a resident of

11  California.  Plaintiff Quezada is the owner of a Chevy Corvette Z06 vehicle, model

12  year 2006.  The vehicle has a LS7 7.0 liter 427 cubic inch engine.  The vehicle was

13  purchased in August 2013.  The engine suffered a malfunction caused by excessive

14  valve guide wear in January 2015.  This vehicle is defective and subject to excessive

15  valve guide wear.

16     36.    Plaintiff Christopher Constantine (hereinafter "Constantine") is a

17  resident of Florida.  Plaintiff Constantine owns a 2006 Corvette Z06 vehicle with a

18  7.0L LS7 engine.  This vehicle was purchased in December 2010.  The valve guides

19  were subject to excessive wear and were repaired in 2013, causing expense to be

20  incurred.

21     37.    Plaintiff Bradley Grant (hereinafter "Grant") is a resident of Florida.

22  Plaintiff Grant owns a 2008 Corvette Z06 vehicle with a 7.0 liter engine.  A GM

23  protection plan expired on September 30, 2015, without necessary repairs having

24  been made by GM.  The vehicle has valve guides which are subject to excessive

25  wear.

26     38.    Plaintiff John Parsons (hereinafter "Parsons") is a resident of Florida.

27  Plaintiff Parsons has owned a class vehicle.  This vehicle suffers from the described

28  defect and expense has been incurred for inspection and repair.

KNAPP,
PETERSEN
& CLARKE

-8-

2411127.1  08000/01006

39.    Plaintiff Robert L. Briggs (hereinafter "Briggs") is a resident of Florida. Plaintiff Briggs owns a 2007 Corvette Z06. The vehicle has a 7.0 liter engine. The vehicle was purchased in July of 2006. The vehicle was inspected and the inspection verified that the valves were out of speculation and repairs were necessary. This vehicle is defective and subject to excessive valve guide wear.

40.    Plaintiff Robert Edgar (hereinafter "Edgar") is a resident of Georgia. Plaintiff Edgar owns a 2007 Corvette Z06. The vehicle has a 7.0 liter V8 engine. The vehicle was purchased on December 4, 2014. The vehicle is exhibiting signs of excessive valve guide wear.

41.    Plaintiff Roger L. Browning (hereinafter "Browning") is a resident of Georgia. Plaintiff Browning owns a 2008 Corvette Z06 vehicle with a 7.0 liter V8 engine purchased on October 26, 2008 The vehicle has been inspected and the inspection verified that the valve guides were excessively warn, such that repairs were necessary. This vehicle is defective and subject to excessive valve guide wear.

42.    Plaintiff Lyle Dunahoo (hereinafter "Dunahoo") is a resident of Illinois. Plaintiff Dunahoo owns a 2009 Corvette Z06 vehicle with a 7.0 engine. This vehicle was purchased in January of 2012. The vehicle has out of specification findings as to valve guide clearances on eight intake valves and eight exhaust valves.

43.    Plaintiff Aaron Clark ("Clark") is a resident of Indiana. Plaintiff Clark has owned a 2008 Corvette Z06 vehicle, with a 7.0 liter LS7 engine. This vehicle is defective and subject to excessive valve guide wear.

44.    Plaintiff Alan Pelletier (hereinafter "Pelletier") is a resident of Massachusetts. Plaintiff Pelletier is the owner of a 60th Anniversary 427 Convertible Corvette automobile, manufactured in 2013. The vehicle has a 7.0 liter 427 cubic inch engine. The vehicle has experienced excessive valve train noise caused by excessive valve guide wear. This vehicle is defective and subject to excessive valve guide wear.

45.    Plaintiff Edwin William Krause (hereinafter "Krause") is a resident of

KNAPP,
PETERSEN
& CLARKE

-9-

1   Michigan.  Plaintiff Krause has owned a 2009 Corvette Z06 vehicle purchased in

2   April 2014.  This vehicle is defective and subject to excessive valve guide wear.

3         46.    Plaintiff Frank Juzswik (hereinafter "Juzswik") is a resident of

4   Michigan.  Plaintiff Juzswik owns a 2009 Corvette Z06.  The vehicle has a 7.0 liter

5   engine.  The vehicle was purchased at a Chevrolet dealer in Owensboro, Kentucky.

6   The car was purchased in 2009, and traded back to the dealer at a loss in May, 2015.

7   The engine was inspected and the valves were out of specifications.  This vehicle is

8   defective and subject to excessive valve guide wear.

9         47.    Plaintiff S. Garrett Beck (hereinafter "Beck") is a resident of Michigan.

10  Plaintiff Beck owns a 2013 427 Corvette convertible, with a 427 cubic inch V8

11  engine.  The vehicle was purchased on January 2013.  The valve guides were

12  inspected and found to have excessive wear.  This vehicle is defective and subject to

13  excessive valve guide wear.

14        48.    Plaintiff David Sheldon (hereinafter "Sheldon") is a resident of

15  Montana.  Plaintiff Sheldon owns a 2009 Corvette Z06 with a 7.0L engine.  The

16  vehicle was purchased on October 15, 2012.  Valve guides were inspected and were

17  out of specification, resulting in costly repairs.  This vehicle is defective and subject

18  to excessive valve guide wear.

19        49.    Plaintiff Jan Engwis ("hereinafter "Engwis") is a resident of Montana.

20  Plaintiff Engwis owns a 2007 Corvette Z06.  The vehicle has an LS 700 liter 505

21  horsepower engine.  The car was purchased on August 5, 2006.  The car was covered

22  by a five year, 100,000 mile GM original engine power train warranty.  The vehicle

23  suffered a catastrophic engine failure due to valve failure.  This vehicle is defective

24  and subject to excessive valve guide wear.

25        50.    Plaintiff Adam Balducci (hereinafter "Balducci") is a resident of New

26  Jersey.  Plaintiff Balducci is the owner of a 2007 Corvette Z06 vehicle.  The vehicle

27  has a 427 cubic inch V8 engine.  The vehicle was purchased in November of 2006,

28  and covered by a five year, 50,000 mile warranty.  The vehicle suffered a

1  catastrophic engine failure which was repaired in late 2009.  This vehicle is defective

2  and subject to excessive valve guide wear.

3      51.    Plaintiff Alan Ferrer (herein "Ferrer") is a resident of New Jersey.

4  Plaintiff Ferrer is the owner of a 2006 Corvette Z06.  The vehicle has a 7.0 liter

5  engine.  The vehicle was purchased on August 2, 2015.  This vehicle is defective and

6  subject to excess valve guide wear.

7      52.    Plaintiff Jared Kiley (hereinafter "Kiley") is a resident of Mason, Ohio.

8  Plaintiff Kiley owns a 2006 Corvette Z06 vehicle with a 7.0L engine.  This vehicle

9  was purchased on August 11, 2014.  The vehicle's guides were measured and found

10  to be significantly out of specification.  Expense was incurred for inspection and

11  repair of the engine.  This vehicle is defective and subject to excessive valve guide

12  wear.

13      53.    Plaintiff Jeff Kolodzi (hereinafter "Kolodzi") is a resident of

14  Pennsylvania.  Plaintiff Kolodzi owns a 2008 Corvette Z06 vehicle with a 427 c.i.

15  engine.  The vehicle was purchased in January 2013.  Valves were inspected and

16  found to be out of specification resulting in expenses incurred.

17      54.    Plaintiff Derek Van Den Top (hereinafter "Van Den Top") is a resident

18  of South Dakota.  Plaintiff Van Den Top is the owner of a 2006 Corvette Z06.  The

19  vehicle has a 7.0 liter LS7 engine.  The vehicle was purchased on March 27, 2008.

20  The vehicle was covered at the time of purchase by a GM warranty.  The vehicle

21  suffered a total engine failure in 2012, requiring a new engine.  This vehicle is

22  defective and subject to excessive valve guide wear.

23      55.    Plaintiff Morris Smith (hereinafter "Smith") is a resident of Tennessee.

24  Plaintiff Smith has owned a 2009 Corvette Z06 vehicle purchased in 2010.  This

25  vehicle is defective and subject to excessive valve guide wear.

26      56.    Plaintiff Andres Frey (hereinafter "Frey") is a resident of Texas.

27  Plaintiff Frey owns a 2008 Corvette Z06 vehicle with a 7.0L 427 c.i. engine.  Valve

28  guides were found on inspection to be significantly out of specification, resulting in

KNAPP,
PETERSEN
& CLARKE

-11-

1    expensive repairs.

2         57.    Plaintiff Shawn Bain (hereinafter "Bain") is a resident of Texas.

3    Plaintiff Bain owns a 2007 Corvette Z06.  The vehicle has a 7.0LS7 427 engine.  The

4    vehicle was purchased on May 30, 2015.  The engine in the vehicle suffered a

5    catastrophic failure caused when the engine dropped a valve and blew up.  This

6    vehicle is defective and subject to excessive valve guide wear.

7         58.    Plaintiff Jeffrey M. Millslagle (hereinafter "Millslagle" is a resident of

8    Texas.  Plaintiff Millslagle is the owner of a 2008 Z06 Corvette vehicle.  The vehicle

9    has a 7.0 liter 427 cubic inch engine.  The vehicle was purchased in July 2014.  The

10   suffered a catastrophic engine failure when a valve exploded through the head and

11   engine block resulting in total engine failure.  This vehicle is defective and subject to

12   excessive valve guide wear.

13        59.    Plaintiff Robert Geiss (hereinafter "Geiss") is a resident of Texas.

14   Plaintiff Geiss is the owner of a 2008 Chevrolet Corvette Z06.  The vehicle has a 427

15   cubic inch 7 liter engine.  The vehicle was purchased on August 15, 2011.  The

16   vehicle suffered a catastrophic engine failure on April 10, 2014, which destroyed the

17   engine.  This vehicle is defective and subject to excessive valve guide wear.

18        60.    Defendant General Motors LLC ("new GM, GM, or defendant") is a

19   Delaware limited liability company with its principal place of business located at 300

20   Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and

21   Michigan.  The sole member and owner of General Motors LLC is General Motors

22   Holding LLC.  General Motors Holding LLC is a Delaware limited liability company

23   with its principal place of business in the State of Michigan.  The sole member and

24   owner of General Motors Holding LLC is General Motors Company, which is a

25   Delaware corporation with its principal place in the State of Michigan, and is a

26   citizen of the States of Delaware and Michigan.

27        61.    New GM was incorporated in 2009 and, effective on July 11, 2009,

28   acquired substantially all assets and assumed certain liabilities of General Motors

KNAPP,
PETERSEN
& CLARKE

-12-

2411127.1  08000/01006

1  Corporation ("Old GM") through a section 363 sale under Chapter 11 of the U.S.
2  Bankruptcy Code.

3      62.    It is undisputed that new GM had express obligations, as well as
4  obligations by law, to comply with the certification, reporting and recall
5  requirements of the National Traffic and Motor Vehicle Act and the Transportation
6  Recall Enhancement Accountability and Documentation Act.

7                              **JURISDICTION**

8      63.    This is a class action.

9      64.    Plaintiffs, other than Krause and Juzswik, are citizens of states different
10 from the home state of defendant. Members of the plaintiff class are citizens of
11 states different than defendant.

12     65.    The number of class members from the State of California in the
13 aggregate is substantially larger than the number of class members who are citizens
14 of any other state.

15     66.    On information and belief, aggregate claims of individual class
16 members exceed $5,000,000, inclusive of interest and costs.

17     67.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. section
18 1332(d).

19                              **VENUE**

20     68.    GM, as new GM, has engaged in unfair business practices directed at/or
21 causing harm to persons residing, located or doing business in this district and in the
22 United States.

23     69.    Defendant through its business of distributing, selling and leasing its
24 vehicles has established sufficient contacts in this district such that it is subject to
25 personal jurisdiction here. Defendant is deemed to reside in this district pursuant to
26 28 U.S.C. section 1391(a).

27     70.    In addition, a substantial part of the events or omissions giving rise to
28 these claims and a substantial part of the property that is a subject of this action are in

KNAPP,
PETERSEN
& CLARKE

-13-

1  this district.

2      71.    Venue is proper in this Court pursuant to 20 U.S.C. 1391(a).

3  <div align="center">**CLASS ALLEGATIONS**</div>

4  **A.    The Nationwide Class**

5      72.    Under Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of

6  Civil Procedure, plaintiffs bring this action on behalf of themselves and a class

7  initially defined as follows.  For the assertion of claims under the Racketeer

8  Influence and Corrupt Organizations Act ("RICO" and/or "the Nationwide Class")

9      All persons in the United States who purchased or leased a class

10  vehicle at any time from 2006 to the present and who (1) still own or

11  lease a class vehicle or (2) sold a class vehicle at any time from July

12  2009 to the present.  Class vehicles include all Chevrolet Corvette 427

13  or Corvette Z06 vehicles equipped with 7.0 liter engines.  Excluded

14  from the nationwide class are new GM, its employees, co-conspirators

15  or officers, directors, legal representatives, heirs, successors, and wholly

16  or partly owned subsidiaries or affiliates of new GM, new GM dealers,

17  class counsel and their employees; and the judicial officers and their

18  immediate family members and associated court staff assigned to this

19  case, and all persons within the third degree of relationship of any such

20  persons.

21  **B.    State Law Classes**

22      73.    Plaintiffs allege claims, under the laws of each state and the District of

23  Columbia, for the following state-wide classes:

24      All persons who purchased or leased a class vehicle at any time

25  from 2006 to the present, and who (1) still own or lease a class vehicle

26  or (2) sold a class vehicle at any time from July 2009 to the present.

27  Class vehicles include all Chevrolet Corvette 427 or Corvette Z06

28  vehicles equipped with 7.0 liter engines..  Excluded from each of the

KNAPP,
PETERSEN
& CLARKE

<div align="center">-14-</div>

class and subclasses are new GM, its employees co-conspirators or officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of new GM, new GM dealers, class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship of any such persons.

A subclass in each described state for persons who (1) still own or lease a class vehicle or (2) sold a class vehicle at any time from July 2009 to the present.

**C.    The Classes and Subclasses Meet Rule 23 Requirements**

74.    Plaintiffs are informed and believe that there are approximately 28,000 class vehicles nationwide and such vehicles exist in each state. Individual joinder of all class members is impracticable.

75.    The class can be readily identified using registration records, sales records, production records, and other information kept by GM or third parties in the usual course of business within their control.

76.    Questions of law and fact are common to each of the classes and subclasses and predominate over questions affecting only individual members, including the following:

(a)    Whether Chevrolet Corvette 427 and Corvette Z06 class vehicles equipped with 7.0 liter V8 engines suffer from engine valve guide defects.

(b)    Whether GM was aware of the defects, and concealed the defects from regulators, plaintiffs, and the class;

(c)    Whether GM misrepresented to class vehicle purchasers that the class vehicles are safe, reliable and of high quality;

(d)    Whether GM misrepresented itself as a reputable manufacturer that valves quality in its vehicles and stands behind its vehicles after they are sold;

KNAPP,
PETERSEN
& CLARKE

-15-

2411127.1  08000/01006

1        (e)    Whether GM actively encouraged the concealment of known

2 defects from regulators and consumers;

3        (f)    Whether GM engaged in fraudulent concealment;

4        (g)    Whether GM engaged in unfair, deceptive, unlawful and/or

5 fraudulent acts or practices in trade or commerce by failing to disclose that the class

6 vehicles had serious defects.

7        (h)    Whether GM violated various state consumer protection statutes.

8        (i)    Whether the 7.0 liter V8 engines contained within the class

9 vehicles were unfit for the ordinary purposes for which they were used in violation of

10 the implied warranty of merchantability;

11        (j)    Whether GM's unlawful, unfair, fraudulent and/or deceptive

12 practices harmed plaintiffs and the members of the class

13        (k)    Whether GM has been unjustly enriched;

14        (l)    Whether GM formed an enterprise with others within the meaning

15 of RICO for improper purpose with the effect of suppressing the defects,

16 misrepresenting the safety and quality of the class vehicles, and/or avoiding or

17 delaying necessary recall.

18        (m)    Whether the nationwide class members lost money and/or a

19 property within the meaning of RICO;

20        (n)    Whether plaintiffs and the members of the class are entitled to

21 equitable and/or injunctive relief;

22        (o)    What aggregate amounts of statutory penalties, as available under

23 the laws of certain states, are sufficient to punish and deter GM and to vindicate

24 statutory and public policy, and how such policies should most equitably be

25 distributed among class members; and

26        (p)    Whether any and all applicable limitation periods are tolled by

27 acts of fraudulent concealment.

28        (q)    Whether GM has a duty to inspect and repair class vehicles due to

KNAPP,
PETERSEN
& CLARKE

-16-

1    significant and continuing safety concerns; and

2               (r)    Whether GM has a duty to recall class vehicles based on

3    significant and continuing safety concerns.

4        77.    Plaintiffs' claims are typical of the claims of the class members and

5    arise from the same course of conduct by GM.  The relief plaintiffs seek is typical of

6    the relief sought for the absent class members.

7        78.    Plaintiffs' claims are typical of the claims of the class members and

8    arise from the same course of conduct by GM.  The relief plaintiffs seek is typical of

9    the relief sought for the absent class members.

10       79.    Plaintiffs will fairly and adequately represent and protect the interests of

11   all absent class members.  Plaintiffs are represented by counsel competent and

12   experienced in product liability, consumer protection, and class action litigation.

13       80.    A class is superior to other available methods for the fair and efficient

14   adjudication of this controversy since joinder of all the individual class members is

15   impracticable because the damages suffered by each individual class member may be

16   relatively small.  The expense and burden of individual litigation would make it very

17   difficult or impossible for individual class members to redress the wrongs done to

18   each of them individually, and the burden imposed on the judicial system would be

19   enormous.  Rule 23 provides the Court with authority and flexibility to maximize the

20   benefits of the class mechanism and reduce management challenges.  The Court may,

21   on motion of plaintiffs or on its own determination, utilize the processes of Rule

22   23(c)(4) and or (c)(5) to certify common questions of fact or law and to designate

23   subclasses.

24       81.    The prosecution of separate actions by the individual class members

25   would create a risk of inconsistent or varying adjudications for individual class

26   members, which would establish incompatible standards of conduct for GM.  The

27   conduct of this action is a class action presents far fewer management difficulties,

28   conserves judicial resources and the parties' resources, and protects the right of each

**KNAPP,
PETERSEN
& CLARKE**

-17-

1  class member.

2      82.    Plaintiffs are not aware of any obstacles likely to be encountered in the
3  management of this action that would preclude its maintenance as a class action.
4  Plaintiffs anticipate providing appropriate notice to be approved by the Court after
5  discovery into the size and nature of the class.  Absent a class action, most class
6  members would likely find the cost of litigating their claims prohibitively high, and
7  would therefore have no effective remedy at law.  Because of the relatively small
8  size of the individual class members claims, it is likely that only a few class members
9  could afford to seek legal redress for GM's misconduct.  Absent a class action, class
10  members will continue to incur damages and GM's misconduct will continue without
11  remedy.

12  **CLAIMS FOR RELIEF**

13  <div align="center">**COUNT I**</div>

14  <div align="center">**VIOLATION OF RACKETEER INFLUENCED AND CORRUPT**</div>
15  <div align="center">**ORGANIZATIONS ACT ("RICO") 18 U.S.C. Section 1961, et seq.**</div>

16      83.    Plaintiffs hereby incorporate by reference the allegations contained in
17  the proceeding paragraphs of this complaint.

18      84.    This claim is brought on behalf of the nationwide class against
19  defendant GM for actual damages and treble damages and equitable relief under 18
20  U.S.C. section 1964.  Members of the nationwide class are referred to herein
21  collectively as "class members."

22      85.    GM, the Enterprise member, plaintiffs and the class members are
23  "persons" within the meaning of 18 U.S.C. section 1961(3).

24      86.    On May 24, 2015, the United States Department of Justice announced it
25  had found evidence of criminal wrongdoing by GM, including repeated acts of fraud
26  for its failure to disclose defects in its products.  GM committed both criminal and
27  civil fraud and, as set forth in this complaint, did not act alone.

28      87.    From the inception of new GM onwards, new GM conducted an

KNAPP,
PETERSEN
& CLARKE

<div align="center">-18-</div>

enterprise of associated in fact entities ("the Enterprise"), which was designed to conceal information regarding the true nature and scope of defects to its automobile products from the public, the federal government and its agencies, its customers, and the owners and lessees of class vehicles, including the defective vehicles at issue herein; and to affirmatively misrepresent the quality of the class vehicles in order to (a) fraudulently induce plaintiffs and other class members to purchase or lease the subject vehicles, and (b) avoid the cost of fixing the defects which existed in the class vehicles and to avoid undermining GM's brand image concerning class vehicles owned by plaintiffs and class members.

88.　New GM was associated with the illegal enterprise and conducted and participated in the enterprise's affairs through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications to execute a scheme to defraud, all in violation of 18 U.S.C. section 1962(c).

89.　The RICO Enterprise which engaged in, and whose activities affected, interstate and foreign commerce, is an association in fact enterprise within the meaning of 18 U.S.C. 1961(4) and consists of "persons" associated together for the common purpose of employing the multiple deceptive , abusive, and fraudulent acts described herein.

90.　At all times, the enterprise consisted of at least new GM, Esis, Inc. (hereinafter "Esis") and Hib Hilberson (hereinafter "Hilberson").

91.　Esis is a company that offers "risk management products and services." It is part of the Ace Group, headed by Ace Limited, and is separate and distinct from the other enterprise constituents. During the duration of the enterprise, Esis served as new GM's claims administrator, routinely investigating, analyzing and resolving claims involving defects in GM vehicles, including the defects alleged herein. Product liability claims forwarded Esis for investigation and review included, among others, those involving engine failures and costs of inspection and repair. Esis

KNAPP,
PETERSEN
& CLARKE

-19-

2411127.1　08000/01006

1  knowingly collaborated with new GM to fraudulently conceal information about the

2  defects from claimants, the government and its agencies, and the public, which

3  scheme was furthered by Esis's mailings and wire communications with the

4  Enterprise and claimants.

5      92.    Esis was at all times well aware of the excessive valve guide wear in the

6  class vehicles.

7      93.    Hilberson is a GM employee who has actively and fraudulently

8  defended the subject vehicles in social media, including consumer forums, in

9  furtherance of the GM scheme.

10      94.    The RICO enterprise is an ongoing organization with an ascertainable

11  structure, and a framework for making an carrying out decisions, that functions as a

12  continuing unit with established duties, and that is separate and distinct from the

13  pattern of racketeering activity in which enterprise members have engaged and are

14  engaging.  The enterprise was and is used by new GM as a tool to effectuate the

15  pattern of racketeering activity.

16      95.    New GM, Esis and Hilberson are entities separate and distinct from each

17  other, and from the enterprise.  All of the enterprise constituents are independent

18  legal entities with the authority and responsibility to act independently of the

19  enterprise and of the other enterprise members.

20      96.    The members of the enterprise all had a common purpose:  To

21  misrepresent the quality of class vehicles and/or to conceal information regarding the

22  nature and scope of the defects, including the engine defect as alleged herein, from

23  the government, its agencies, the public, and the class.  For new GM, the purpose of

24  the scheme to defraud was to conceal the true scope and nature of the defects in order

25  to sell at least more vehicles, as well as to avoid incurring the cost and responsibility

26  of repairing or replacing class vehicles, initiating a recall.  By concealing the scope

27  and nature of the defects, new GM maintained and boosted consumer confidence in

28  the GM brand, sold more GM vehicles, and avoided remediation costs and negative

**KNAPP,
PETERSEN
& CLARKE**

-20-

1    publicity associated with the defects and recalls.

2       97.    New GM conducted and participated in the affairs of the enterprise

3 through a pattern of racketeering activity that lasted many years, commencing from

4 or shortly after new GM's inception as an entity in 2009, continuing through at least

5 2014. This pattern consisted of numerous and repeated violations of the federal mail

6 and wire fraud statutes – namely 18 U.S.C. sections 1341 and 1343 – that prohibit

7 the use of any interstate or foreign mail or wire facility for the purpose of executing a

8 scheme to defraud. These mailings and wirings were executed in furtherance of the

9 enterprise's scheme to defraud the class and caused injury to the property of class

10 members.

11       98.    To further the scheme to defraud, new GM routinely issued technical

12 service bulletins to the dealers and/or letters to consumers and/or responses in

13 internet forums as a stop gap half measure designed to avoid costly recalls.

14       99.    As part of its obligations under the TREAD Act, new GM was required

15 to submit to NHTSA, its monthly and quarterly reports regarding potential product

16 defects and complaints involving potential defects. To further the scheme to defraud,

17 and in order to escape investigation and costs associated with recalls, new GM

18 systematically under reported and omitted relevant information about the nature of

19 the defects and the number of defect-related incidents and complaints from these

20 reports, which new GM transmitted or caused to be transmitted from its offices in

21 Michigan to federal regulators in Washington, D.C.

22       100.    The conduct of new GM, Esis ==and Hilberson== in furtherance of this

23 scheme was intentional. Plaintiffs and class members were harmed by new GM's

24 conduct and, as a result, purchased or leased defective class vehicles after new GM

25 was created for significantly more money than they would have paid absent the

26 scheme to defraud, and/or remain in possession of vehicles of diminished value that

27 new GM otherwise would have repaired or replaced, and/or sold class vehicles after

28 revelations of defects for a loss. In addition, plaintiffs and class members were

KNAPP,
PETERSEN
& CLARKE

-21-

2411127.1  08000/01006

harmed by undertaking the costs of investigations and repairs caused by the defects.
New GM unfairly reaped millions of dollars in excessive sales revenue as a result of
this scheme and its conduct in furtherance of this scheme.

## COUNT II

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

## (15 U.S.C. Section 2301, et seq.)

101.   Plaintiffs reallege and incorporate by reference all paragraphs as though
fully set forth herein.

102.   Plaintiffs bring this Count on behalf of members of the nationwide class
who are residents of the following states:  Alaska, Arkansas, California, Colorado,
Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine,
Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana,
Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North
Carolina, North Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina,
South Dakota, Texas, Utah, Virginia, West Virginia, and Wyoming (the class for the
purposes of this Count).

103.   This Court has jurisdiction to decide claims brought under 15 U.S.C.
2301 by virtue of 28 U.S.C. section 1332(a) – (d).

104.   The class vehicles are "consumer products" within the meaning of the
Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(1).

105.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss
Warranty Act, 15 U.S.C. section 2301(3).  They are consumers because they are
persons entitled under applicable state law to enforce against the warrantor the
obligations of its implied warranties.

106.   GM is a "supplier" and "warrantor" within the meaning of the
Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(4) – (5).

107.   15 U.S.C. section 2310(d)(1) provides a cause of action for any
consumer who is damaged by the failure of a warrantor to comply with an implied

KNAPP,
PETERSEN
& CLARKE

-22-

2411127.1  08000/01006

1  warranty.

2  108.   GM provided plaintiffs and the other class members with an implied

3  warranty of merchantability in connection with the purchase or lease of their vehicles

4  on or after July 11, 2009, that is an "implied warranty" within the meaning of the

5  Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(7).   As a part of the implied

6  warranty of merchantability, GM warranted that the class vehicles were fit for their

7  ordinary purpose as safe passenger motor vehicles, would pass without objection in

8  the trade as designed, manufactured and marketed and packaged and labeled.

9  109.   GM breached its implied warranties as described in more detail above

10  and is therefore, liable to plaintiffs and the class pursuant to 15 U.S.C. section

11  2310(d)(1).   Without limitation, the class vehicles share common design defects in

12  that they are defectively designed and manufactured to permit excessive valve wear

13  which results in sudden failure during ordinary operation, leaving occupants of the

14  class vehicles vulnerable to crashes, serious injury, and death.

15  110.   In its capacity as a warrantor, GM had knowledge of the inherent

16  defects in the class vehicles.   Any effort by GM to limit the implied warranties in a

17  manner that would exclude coverage of the class vehicles is unconscionable, and any

18  such effort to disclaim, or otherwise limit, liability for the class vehicles is null and

19  void.

20  111.   Any limitations GM might seek to impose on its warranties are

21  procedurally unconscionable.   There was unequal bargaining power between GM and

22  the plaintiffs and the other class members as, at all times of purchase and lease,

23  plaintiffs and the other class members had no other options for purchasing warranty

24  coverage other than directly from GM.

25  112.   Any limitations GM might seek to impose on its warranties are

26  substantively unconscionable.   GM knew that the class vehicles were defective and

27  would continue to pose risks after the warranties purportedly expired.   GM failed to

28  disclose these defects to plaintiffs and the other class members.   Thus, GM's

**KNAPP,
PETERSEN
& CLARKE**

-23-

1 enforcement of the durational limitations on those warranties is harsh and shocks the

2 conscience.

3     113. Plaintiffs and each of the other class members have had sufficiently

4 direct dealings with either GM or its agents (dealerships) to establish a privity of

5 contract between GM on the one hand, and plaintiffs and each of the other class

6 members, on the other hand. Nonetheless, privity is not required here because

7 plaintiffs and each of the other class members are intended third party beneficiaries

8 of contracts between GM and its dealers, and specifically, of GM's implied

9 warranties. The dealers were not intended to be the ultimate consumers of the class

10 vehicles and have no rights under the warranty agreements provided with the class

11 vehicles; the warranty agreements were designed for and intended to benefit

12 consumers. Finally, privity is also not required because the class vehicles are

13 dangerous instrumentalities due to the aforementioned defects and non-conformities.

14     114. Pursuant to 15 U.S.C. section 2310(e), plaintiffs are entitled to bring this

15 class action and are not required to give GM notice and an opportunity to cure until

16 such time as the Court determines the representative capacity of plaintiffs pursuant to

17 Rule 23 of the Federal Rules of Civil Procedure.

18     115. The amount in controversy of plaintiffs' individual claims meets or

19 exceeds the sum of $25. The amount in controversy of this action exceeds the sum

20 of $50,000, exclusive of interest and costs, computed on the basis of all claims to be

21 determined in this lawsuit. Plaintiffs, individually and on behalf of the other class

22 members, seek all damages permitted by law, including diminution in value of their

23 vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C.

24 2310(d)(2), plaintiffs and other class members are entitled to recover a sum equal to

25 the aggregate amount of costs and expenses (including attorneys' fees based on

26 actual time expended) determined by the Court to have reasonably been incurred by

27 plaintiffs and the other class members in connection with the commencement and

28 prosecution of this action.

**KNAPP,
PETERSEN
& CLARKE**

-24-

1    116.   Further, plaintiffs and the class are also entitled to equitable relief under

2    15 U.S.C. section 2310(d)(1).  Based on GM's continuing failures to fix the known

3    defects, plaintiffs seek a declaration that GM has not adequately implemented its

4    recall commitments and requirements and general commitments to fix its failed

5    processes, and injunctive relief in the form of judicial supervision over the recall

6    process is warranted.  Plaintiffs also seek and a determination that GM is obligated to

7    provide warranty services beyond the time specified in said warranties, based on the

8    facts as alleged herein.  Plaintiffs also seek the establishment of a GM funded

9    program for plaintiffs and class members to recover out-of-pocket costs incurred in

10   attempting to rectify the defects in their vehicles.

## COUNT III

## NEGLIGENCE

13   117.   Plaintiffs bring this Count on behalf of members of the nationwide class

14   who reside in Arkansas, Maryland, Louisiana, Maryland and Ohio (negligence

15   subclasses).

16   118.   GM has designed, manufactured, sold or otherwise placed in the stream

17   of commerce class vehicles which are defective, as set forth above.

18   119.   GM had a duty to design and manufacture a product that would be

19   useful for its intended and foreseeable uses and users, including the use to which its

20   products were put by plaintiffs and other members of the negligence subclasses.

21   120.   GM breached its duties to plaintiffs and the other members of the

22   negligence subclasses because GM was negligent in the design, development and

23   manufacture and testing of the class vehicles, and GM is responsible for this

24   negligence.

25   121.   GM was negligent in the design, development, manufacture and testing

26   of the class vehicles because it knew, or in the exercise of reasonable care should

27   have known, that the vehicles equipped with a 7.0 liter V8 engine were defective and

28   posed an unreasonable risk of catastrophic engine failure with a risk of death or

**KNAPP,
PETERSEN
& CLARKE**

-25-

2411127.1  08000/01006

1  seriously bodily injury to plaintiffs and other members of the negligent subclasses,

2  passengers, other motorists, pedestrians and the public at large.

3      122.   Plaintiffs, individually and on behalf of the other members of the

4  negligence subclasses, rely upon Restatement (second) of Torts section 395.

5      123.   GM further breached it duties to plaintiffs and the other members of the

6  negligence subclasses by supplying directly or through a third persons defective

7  vehicles to be used by such foreseeable persons as plaintiffs and the other members

8  of negligence subclasses.

9      124.   GM knew, or had reason to know, that the vehicles were likely to suffer

10  a catastrophic engine failure and were likely dangerous for the use to which they

11  were supplied.

12      125.   GM failed to exercise reasonable care to inform customers of the

13  dangerous condition or of the facts under which the vehicles are likely to be

14  dangerous.

15      126.   GM had a continuing duty to warn and instruct the intended foreseeable

16  users of its vehicles, including plaintiffs and the other members of the negligence

17  subclasses, of the defective condition of the vehicles and the risk attended to using

18  the vehicles.  Plaintiffs and other members of the negligence subclass were entitled

19  to know that the vehicles, in their ordinary operation, were not reasonably safe for

20  their intended and ordinary purposes and uses.

21      127.   GM knew or should have known of the defects described herein.  GM

22  breached it duty to plaintiffs and other members of the negligence subclasses because

23  it failed to warn and instruct the intended foreseeable users of its vehicles of the

24  defective conditions of the vehicles, and the risk attended to using the vehicles.

25      128.   As a direct and proximate result of GM's negligence, plaintiffs and the

26  other members of the negligence subclasses suffered damages.

27  ////

28  ////

**KNAPP,
PETERSEN
& CLARKE**

-26-

**Alabama**

<div align="center">

**COUNT IV**

**VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT**

**(ALA. CODE § 8-19-1, et seq.)**

</div>

129.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

130.   This claim is brought solely on behalf of Nationwide Class Members who are Alabama residents (the "Alabama Class").

131.   Plaintiffs and the Alabama Class are "consumers" within the meaning of ALA. CODE § 8-19-3(2).

132.   Plaintiffs, the Alabama Class, and New GM are "persons" within the meaning of ALA. CODE § 8-19-3(5).

133.   The class vehicles are "goods" within the meaning of ALA. CODE § 8-19-3(3).

134.   New GM was and is engaged in "trade or commerce" within the meaning of ALA. CODE § 8-19-3(8).

135.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5. New GM engaged in deceptive business practices prohibited by the Alabama DTPA, including: representing that class vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that class vehicles are of a particular standard, quality, and grade when they are not; advertising class vehicles with the intent not to sell or lease them as advertised;

KNAPP,
PETERSEN
& CLARKE

<div align="center">-27-</div>

1 representing that the subject of a transaction involving class vehicles has been
2 supplied in accordance with a previous representation when it has not; and engaging
3 in other unconscionable, false, misleading, or deceptive act or practice in the conduct
4 of trade or commerce.

5      136.   New GM also engaged in unlawful trade practices by employing
6 deception, deceptive acts or practices, fraud, misrepresentations, or concealment,
7 suppression or omission of any material fact with intent that others rely upon such
8 concealment, suppression or omission, in connection with the sale of class vehicles
9 old on or after July 11, 2009.

10      137.   From the date of its inception on July 11, 2009, New GM knew of many
11 serious defects affecting many models and years of class vehicles, because of (i) the
12 knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,
13 investigations, and notifications from regulatory authorities; and (iii) ongoing
14 performance of New GM's TREAD Act obligations. New GM became aware of
15 other serious defects and systemic safety issues years ago, but concealed all of that
16 information.

17      138.   New GM was also aware that it valued cost-cutting over safety, selected
18 parts from the cheapest supplier regardless of quality, and actively discouraged
19 employees from finding and flagging known defects, and that this approach would
20 necessarily cause the existence of more defects in the vehicles it designed and
21 manufactured and the failure to disclose and remedy defects in all class vehicles.
22 New GM concealed this information as well.

23      139.   By failing to disclose and by actively concealing the many defects in
24 class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by
25 presenting itself as a reputable manufacturer that valued safety and stood behind its
26 vehicles after they were sold, New GM engaged in deceptive business practices in
27 violation of the Alabama DTPA.

28      140.   In the course of New GM's business, it willfully failed to disclose and

**KNAPP,
PETERSEN
& CLARKE**

-28-

1 actively concealed the dangerous risk posed by the defects discussed above. New

2 GM compounded the deception by repeatedly asserting that class vehicles were safe,

3 reliable, and of high quality, and by claiming to be a reputable manufacturer that

4 valued safety and stood behind its vehicles once they are on the road.

5     141.    New GM's unfair or deceptive acts or practices were likely to and did in

6 fact deceive reasonable consumers, including Plaintiffs, about the true safety and

7 reliability of Class vehicles, the quality of the GM brand, the devaluing of safety at

8 New GM, and the true value of the class vehicles.

9     142.    New GM intentionally and knowingly misrepresented material facts

10 regarding the class vehicles with an intent to mislead Plaintiffs and the Alabama

11 Class.

12     143.    New GM knew or should have known that its conduct violated the

13 Alabama DTPA.

14     144.    As alleged above, New GM made material statements about the safety

15 and reliability of the class vehicles and the GM brand that were either false or

16 misleading.

17     145.    New GM owed Plaintiffs a duty to disclose the true safety and reliability

18 of the class vehicles and the devaluing of safety at New GM, because New GM:

19         (a)     Possessed exclusive knowledge that it valued cost-cutting over

20 safety, selected parts from the cheapest supplier regardless of quality, and actively

21 discouraged employees from finding and flagging known safety defects, and that this

22 approach would necessarily cause the existence of more defects in the vehicles it

23 designed and manufactured;

24         (b)     Intentionally concealed the foregoing from Plaintiffs; and/or

25         (c)     Made incomplete representations about the safety and reliability

26 of the class vehicles generally, and the valve guide defects in particular, while

27 purposefully withholding material facts from Plaintiffs that contradicted these

28 representations.

**KNAPP,**
**PETERSEN**
**& CLARKE**

-29-

146.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

147.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Alabama Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

148.   Plaintiffs and the Alabama Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

149.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Alabama DTPA. And, in any event, all class vehicle owners suffered ascertainable loss in the form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

150.   As a direct and proximate result of New GM's violations of the Alabama DTPA, Plaintiffs and the Alabama Class have suffered injury-in-fact and/or actual damage.

**KNAPP,
PETERSEN
& CLARKE**

-30-

151.   Pursuant to ALA. CODE § 8-19-10, Plaintiffs and the Alabama Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff and each Alabama Class member.

152.   Plaintiffs also seek an order enjoining New GM's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the ALA. CODE § 8-19-1, et seq.

## COUNT V
## FRAUD BY CONCEALMENT

153.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

154.   This claim is brought on behalf of Nationwide Class Members who are Alabama residents (the "Alabama Class").

155.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

156.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

157.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

158.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of

KNAPP,
PETERSEN
& CLARKE

-31-

1   the vehicles.

2        159.   New GM had a duty to disclose the defects in the class vehicles because
3   they were known and/or accessible only to New GM, were in fact known to New
4   GM as of the time of its creation in 2009 and at every point thereafter, New GM had
5   superior knowledge and access to the facts, and New GM knew the facts were not
6   known to or reasonably discoverable by Plaintiffs and the Alabama Class. New GM
7   also had a duty to disclose because it made many general affirmative representations
8   about the safety, quality, and lack of defects in its vehicles, as set forth above, which
9   were misleading, deceptive and incomplete without the disclosure of the additional
10  facts set forth above regarding defects in the class vehicles. Having volunteered to
11  provide information to Plaintiffs, GM had the duty to disclose not just the partial
12  truth, but the entire truth. These omitted and concealed facts were material because
13  they directly impact the value of the class vehicles purchased or leased by Plaintiffs
14  and the Alabama Class.

15       160.   New GM actively concealed and/or suppressed these material facts, in
16  whole or in part, to protect its profits and avoid recalls that would hurt the brand's
17  image and cost New GM money, and it did so at the expense of Plaintiffs and the
18  Alabama Class.

19       161.   On information and belief, New GM has still not made full and adequate
20  disclosure and continues to defraud Plaintiffs and the Alabama Class and conceal
21  material information regarding defects that exist in the class vehicles.

22       162.   Plaintiffs and the Alabama Class were unaware of these omitted
23  material facts and would not have acted as they did if they had known of the
24  concealed and/or suppressed facts, in that they would not have purchased cars
25  manufactured by New GM; and/or they would not have purchased cars manufactured
26  by Old GM in the time after New GM had come into existence and had fraudulently
27  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would
28  not have continued to drive their vehicles or would have taken other affirmative

KNAPP,
PETERSEN
& CLARKE

-32-

2411127.1  08000/01006

1  steps. Plaintiffs' and the Alabama Class's actions were justified. New GM was in

2  exclusive control of the material facts and such facts were not known to the public,

3  Plaintiffs, or the Alabama Class.

4  163.  Because of the concealment and/or suppression of the facts, Plaintiffs

5  and the Alabama Class sustained damage because they own vehicles that diminished

6  in value as a result of New GM's concealment of, and failure to timely disclose, the

7  defects in the class vehicles and the quality issues engendered by New GM's

8  corporate policies. Had they been aware of the defects that existed in the class

9  vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

10  New GM came into existence either would have paid less for their vehicles or would

11  not have purchased or leased them at all; and no Plaintiffs regardless of time of

12  purchase or lease would have maintained their vehicles.

13  164.  The value of all Alabama Class Members' vehicles has diminished as a

14  result of New GM's fraudulent concealment of the defects which have tarnished the

15  Corvette brand and made any reasonable consumer reluctant to purchase any of the

16  class vehicles, let alone pay what otherwise would have been fair market value for

17  the vehicles.

18  165.  Accordingly, New GM is liable to the Alabama Class for damages in an

19  amount to be proven at trial.

20  166.  New GM's acts were done maliciously, oppressively, deliberately, with

21  intent to defraud, and in reckless disregard of Plaintiffs' and the Alabama Class's

22  rights and well-being to enrich New GM. New GM's conduct warrants an assessment

23  of punitive damages in an amount sufficient to deter such conduct in the future,

24  which amount is to be determined according to proof.

25  ## COUNT VI

26  ## THIRD-PARTY BENEFICIARY CLAIM

27  167.  Plaintiffs reallege and incorporate by reference all paragraphs as though

28  fully set forth herein.

**KNAPP,
PETERSEN
& CLARKE**

-33-

1    168.   This claim is brought only on behalf of Class members who are

2  Alabama residents (the "Alabama Class").

3    169.   In the Sales Agreement through which New GM acquired substantially

4  all of the assets of New GM, New GM explicitly agreed as follows:

5        From and after the Closing, [New GM] shall comply with the

6        certification, reporting and recall requirements of the National Traffic

7        and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

8        Recall Enhancement, Accountability and Documentation Act, the Clean

9        Air Act, the California Health and Safety Code and similar Laws, in

10        each case, to the extent applicable in respect of vehicles and vehicle

11        parts manufactured or distributed by [Old GM].

12    170.   With the exception of the portion of the agreement that purports to

13  immunize New GM from its own independent misconduct with respect to cars and

14  parts made by New GM, the Sales Agreement is a valid and binding contract.

15    171.   But for New GM's covenant to comply with the TREAD Act with

16  respect to cars and parts made by Old GM, the TREAD Act would have no

17  application to New GM with respect to those cars and parts. That is because the

18  TREAD Act on its face imposes reporting and recall obligations only on the

19  "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

20    172.   Because New GM agreed to comply with the TREAD Act with respect

21  to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

22  make quarterly submissions to NHTSA of "early warning reporting" data, including

23  incidents involving property damage, warranty claims, consumer complaints, and

24  field reports concerning failure, malfunction, lack of durability or other performance

25  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

26  underlying records on which the early warning reports are based and all records

27  containing information on malfunctions that may be related to motor vehicle safety.

28  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

KNAPP,
PETERSEN
& CLARKE

-34-

1  or should know that a safety defect exists – including notifying NHTSA and

2  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

3  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4    173.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

5  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

6  with the TREAD Act. Under the Sales Agreement, Plaintiffs were to receive the

7  benefit of having a manufacturer responsible for monitoring the safety of their Old

8  GM vehicles and making certain that any known defects would be promptly

9  remedied.

10    174.   Although the Sale Order which consummated New GM's purchase of

11  Old GM purported to give New GM immunity for claims concerning vehicles or

12  parts made by Old GM, the bankruptcy court recently ruled that provision to be

13  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

14  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

15  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

16  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

17  breaches of the promise it made in the Sales Agreement.

18    175.   New GM breached its covenant to comply with the TREAD Act with

19  respect to class vehicles, as it failed to take action to remediate the defects at any

20  time, up to the present.

21    176.   Plaintiffs and the Alabama Class were damaged as a result of New

22  GM's breach. Because of New GM's failure to timely remedy the defect in the class

23  vehicles, the value of Old GM class vehicles has diminished in an amount to be

24  determined at trial.

25                            **COUNT VII**

26                       **UNJUST ENRICHMENT**

27    177.   Plaintiffs reallege and incorporate by reference all paragraphs as though

28  fully set forth herein.

**KNAPP,
PETERSEN
& CLARKE**

-35-

178.   This claim is brought on behalf of members of the Alabama Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Alabama Unjust Enrichment Class").

179.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

180.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

181.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

182.   Thus, all Alabama Unjust Enrichment Class Members conferred a benefit on New GM.

183.   It is inequitable for New GM to retain these benefits.

184.   Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

185.   New GM knowingly accepted the benefits of its unjust conduct.

186.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

////

////

////

**KNAPP,**
**PETERSEN**
**& CLARKE**

-36-

2411127.1   08000/01006

**Arizona**

## COUNT VIII

### VIOLATIONS OF THE CONSUMER FRAUD ACT

### (Arizona Rev. Stat. § 44-1521, et seq.)

187. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

188. This claim is brought only on behalf of Class Members who are Arizona residents (the "Arizona Class").

189. Plaintiffs, the Arizona Class and New GM are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), ARIZ. REV. STAT. § 44-1521(6).

190. The class vehicles are "merchandise" within the meaning of ARIZ. REV. STAT. § 44-1521(5).

191. The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522(A).

192. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles sold on or after July 11, 2009.

193. From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

KNAPP,
PETERSEN
& CLARKE

-37-

investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

194. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

195. By failing to disclose and by actively concealing the many defects in class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Arizona CFA.

196. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

197. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

198. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Arizona Class.

199. New GM knew or should have known that its conduct violated the

KNAPP,
PETERSEN
& CLARKE

-38-

1   Arizona CFA.

2   200. As alleged above, New GM made material statements about the safety

3   and reliability of the class vehicles and the GM brand that were either false or

4   misleading.

5   201. New GM owed Plaintiffs a duty to disclose the true safety and reliability

6   of the class vehicles and the devaluing of safety at New GM, because New GM:

7   (a) Possessed exclusive knowledge that it valued cost-cutting over

8   safety, selected parts from the cheapest supplier regardless of quality, and actively

9   discouraged employees from finding and flagging known safety defects, and that this

10  approach would necessarily cause the existence of more defects in the vehicles it

11  designed and manufactured;

12  (b) Intentionally concealed the foregoing from Plaintiffs; and/or

13  (c) Made incomplete representations about the safety and reliability

14  of the class vehicles generally, and the valve guide defects in particular, while

15  purposefully withholding material facts from Plaintiffs that contradicted these

16  representations.

17  202. Because New GM fraudulently concealed the defects in the class

18  vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

19  attached to those vehicles by New GM's conduct, they are now worth significantly

20  less than they otherwise would be.

21  203. New GM's systemic devaluation of safety and its concealment of the

22  defects in the class vehicles were material to Plaintiffs and the Arizona Class. A

23  vehicle made by a reputable manufacturer of vehicles is worth more than an

24  otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

25  conceals defects rather than promptly remedies them.

26  204. Plaintiffs and the Arizona Class suffered ascertainable loss caused by

27  New GM's misrepresentations and its concealment of and failure to disclose material

28  information. Plaintiffs who purchased class vehicles after the date of New GM's

KNAPP,
PETERSEN
& CLARKE

-39-

2411127.1 08000/01006

1 inception either would have paid less for their vehicles or would not have purchased

2 or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result

3 of New GM's misconduct.

4     205. Regardless of time of purchase or lease, no Plaintiffs would have

5 maintained and continued to drive their vehicles had they been aware of New GM's

6 misconduct. By contractually assuming TREAD Act responsibilities with respect to

7 Old GM class vehicles, New GM effectively assumed the role of manufacturer of

8 those vehicles because the TREAD Act on its face only applies to vehicle

9 manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

10 vehicle owners to refrain from unfair and deceptive acts or practices under the

11 Arizona CFA. And, in any event, all class vehicle owners suffered ascertainable loss

12 in the form of diminished value of their vehicles as a result of New GM's deceptive

13 and unfair acts and practices made in the course of New GM's business.

14     206. The recalls and repairs instituted by New GM have not been adequate.

15     207. As a direct and proximate result of New GM's violations of the Arizona

16 CFA, Plaintiffs and the Arizona Class have suffered injury-in-fact and/or actual

17 damage.

18     208. Plaintiffs and the Arizona Class seek monetary relief against New GM

19 as the greater of (a) actual damages in an amount to be determined at trial and (b)

20 statutory in the amount of $100 for each Plaintiff and each Arizona Class Member.

21 Plaintiffs and the Arizona Class also seek punitive damages because New GM

22 engaged in aggravated and outrageous conduct with an evil mind.

23     209. Plaintiffs also seek an order enjoining New GM's unfair, unlawful,

24 and/or deceptive practices, attorneys' fees, and any other just and proper relief

25 available under the Arizona CFA.

26 ////

27 ////

28 ////

KNAPP,
PETERSEN
& CLARKE

-40-

## COUNT IX

## FRAUD BY CONCEALMENT

210.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

211.   This claim is brought on behalf of Nationwide Class Members who are Arizona residents (the "Arizona Class").

212.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

213.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

214.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

215.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

216.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Arizona Class.  New GM also had a duty to disclose because it made many general affirmative representations

-41-

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Arizona Class.

217. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Arizona Class.

218. On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Arizona Class and conceal material information regarding defects that exist in the class vehicles.

219. Plaintiffs and the Arizona Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Arizona Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Arizona Class.

220. Because of the concealment and/or suppression of the facts, Plaintiffs and the Arizona Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's

corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

221. The value of all Arizona Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

222. Accordingly, New GM is liable to the Arizona Class for damages in an amount to be proven at trial.

223. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Arizona Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT X

### THIRD-PARTY BENEFICIARY CLAIM

224. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

225. This claim is brought only on behalf of Class members who are Arizona residents (the "Arizona Class").

226. In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

KNAPP,
PETERSEN
& CLARKE

-43-

2411127.1  08000/01006

Recall Enhancement, Accountability and Documentation Act, the Clean

Air Act, the California Health and Safety Code and similar Laws, in

each case, to the extent applicable in respect of vehicles and vehicle

parts manufactured or distributed by [Old GM].

227.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

228.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

229.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary.  See 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

230.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old

**KNAPP,
PETERSEN
& CLARKE**

-44-

1  GM vehicles and making certain that any known defects would be promptly

2  remedied.

3      231.   Although the Sale Order which consummated New GM's purchase of

4  Old GM purported to give New GM immunity from claims concerning vehicles or

5  parts made by Old GM, the bankruptcy court recently ruled that provision to be

6  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

7  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

8  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

9  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

10  breaches of the promise it made in the Sale Agreement.

11      232.   New GM breached its covenant to comply with the TREAD Act with

12  respect to class vehicles, as it failed to take action to remediate defects at any time,

13  up to the present.

14      233.   Plaintiffs and the Arizona Class were damaged as a result of New GM's

15  breach. Because of New GM's failure to timely remedy the defect in class vehicles,

16  the value of Old GM class vehicles has diminished in an amount to be determined at

17  trial.

18  <div align="center">**COUNT XI**</div>

19  <div align="center">**UNJUST ENRICHMENT**</div>

20      234.   Plaintiffs reallege and incorporate by reference all paragraphs as though

21  fully set forth herein.

22      235.   This claim is brought on behalf of members of the Arizona Class who

23  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

24  after New GM came into existence, and who purchased or leased class vehicles in the

25  time period before New GM came into existence, which cars were still on the road

26  after New GM came into existence (the "Arizona Unjust Enrichment Class").

27      236.   New GM has received and retained a benefit from the Plaintiffs and

28  inequity has resulted.

**KNAPP,
PETERSEN
& CLARKE**

-45-

237.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

238.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

239.   Thus, all Arizona Unjust Enrichment Class Members conferred a benefit on New GM.

240.   It is inequitable for New GM to retain these benefits.

241.   Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

242.   New GM knowingly accepted the benefits of its unjust conduct.

243.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**California**

<div align="center">

**COUNT XII**

**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**

**(Cal. Civ. Code § 1750, et seq.)**

</div>

244.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

245.   This claim is brought only on behalf of Nationwide Class Members who are California residents (the "California Class").

246.   New GM is a "person" under Cal. Civ. Code § 1761(c).

247.   Plaintiffs and the California Class are "consumers," as defined by CAL.

KNAPP,
PETERSEN
& CLARKE

-46-

2411127.1  08000/01006

CIVIL CODE § 1761(d), who purchased or leased one or more class vehicles.

248.   The California Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).  New GM has engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code § 1750, et seq., as described above and below, by among other things, representing that class vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that class vehicles are of a particular standard, quality, and grade when they are not; advertising class vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving class vehicles has been supplied in accordance with a previous representation when it has not.

249.   In the course of its business, New GM systematically devalued safety and concealed defects in class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of case vehicles.

250.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

251.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged

**KNAPP,
PETERSEN
& CLARKE**

-47-

1  employees from finding and flagging known safety defects, and that this approach

2  would necessarily cause the existence of more defects in the vehicles it designed and

3  manufactured and the failure to disclose and remedy defects in all class vehicles.

4  New GM concealed this information as well.

5  252.  By failing to disclose and by actively concealing the many defects in

6  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

7  presenting itself as a reputable manufacturer that valued safety and stood behind its

8  vehicles after they were sold, New GM engaged in unfair and deceptive business

9  practices in violation of the CLRA.

10  253.  In the course of New GM's business, it willfully failed to disclose and

11  actively concealed the dangerous risk posed by the defects discussed above.  New

12  GM compounded the deception by repeatedly asserting that class vehicles were safe,

13  reliable, and of high quality, and by claiming to be a reputable manufacturer that

14  valued safety and stood behind its vehicles once they are on the road.

15  254.  New GM's unfair or deceptive acts or practices were likely to and did in

16  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

17  reliability of class vehicles, the quality of the GM brand, the devaluing of safety at

18  New GM, and the true value of the class vehicles.

19  255.  New GM intentionally and knowingly misrepresented material facts

20  regarding the class vehicles with an intent to mislead Plaintiffs and the California

21  Class.

22  256.  New GM knew or should have known that its conduct violated the

23  CLRA.

24  257.  As alleged above, New GM made material statements about the safety

25  and reliability of the class vehicles and the GM brand that were either false or

26  misleading.

27  258.  New GM owed Plaintiffs a duty to disclose the true safety and reliability

28  of the class vehicles and the devaluing of safety at New GM, because New GM:

**KNAPP,
PETERSEN
& CLARKE**

-48-

2411127.1  08000/01006

(a) Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b) Intentionally concealed the foregoing from Plaintiffs; and/or

(c) Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

259. Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

260. New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the California Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

261. Plaintiffs and the California Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

262. Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to

KNAPP,
PETERSEN
& CLARKE

-49-

1 Old GM class vehicles, New GM effectively assumed the role of manufacturer of

2 those vehicles because the TREAD Act on its face only applies to vehicle

3 manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

4 vehicle owners to refrain from unfair and deceptive acts or practices under the

5 CLRA. And, in any event, all class vehicle owners suffered ascertainable loss of the

6 diminished value of their vehicles as a result of New GM's deceptive and unfair acts

7 and practices made in the course of New GM's business.

8     263. As a direct and proximate result of New GM's violations of the CLRA,

9 Plaintiffs and the California Class have suffered injury-in-fact and/or actual damage.

10     264. Under Cal. Civ. Code § 1780(a), Plaintiffs and the California Class seek

11 monetary relief against New GM measured as the diminution of the value of their

12 vehicles caused by New GM's violations of the CLRA as alleged herein.

13     265. Under Cal. Civ. Code § 1780(b), Plaintiffs seek an additional award

14 against New GM of up to $5,000 for each California Class member who qualifies as

15 a "senior citizen" or "disabled person" under the CLRA. New GM knew or should

16 have known that its conduct was directed to one or more California Class Members

17 who are senior citizens or disabled persons. New GM's conduct caused one or more

18 of these senior citizens or disabled persons to suffer a substantial loss of property set

19 aside for retirement or for personal or family care and maintenance, or assets

20 essential to the health or welfare of the senior citizen or disabled person. One or

21 more California Class Members who are senior citizens or disabled persons are

22 substantially more vulnerable to New GM's conduct because of age, poor health or

23 infirmity, impaired understanding, restricted mobility, or disability, and each of them

24 suffered substantial physical, emotional, or economic damage resulting from New

25 GM's conduct.

26     266. Plaintiffs also seek punitive damages against New GM because it

27 carried out reprehensible conduct with willful and conscious disregard of the rights

28 and safety of others, subjecting Plaintiffs and the California Class to potential cruel

**KNAPP,**
**PETERSEN**
**& CLARKE**

-50-

2411127.1  08000/01006

and unjust hardship as a result. New GM intentionally and willfully deceived Plaintiffs on life-or-death matters, and concealed material facts that only New GM knew. New GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under Cal. Civ. Code § 3294.

267. Plaintiffs further seek an order enjoining New GM's unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

## COUNT XIII

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, et seq.)

268. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

269. This claim is brought only on behalf of Nationwide Class Members who are California residents (the "California Class").

270. California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." New GM has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

271. New GM violated the unlawful prong of § 17200 by the following:

(a)    violations of the CLRA, Cal. Civ. Code § 1750, et seq., as set forth in California Count I by the acts and practices set forth in this Complaint.

(b)    violation of the common-law claim of negligent failure to recall, in that New GM knew or should have known the defects in class vehicles were dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner; New GM became aware of the attendant risks after the class vehicles were sold; continued to gain information further corroborating the defects; and failed to adequately recall the class vehicles, which failure was a substantial factor in causing Plaintiffs and the Class harm, including diminished value and out-of-pocket costs.

KNAPP,
PETERSEN
& CLARKE

-51-

2411127.1  08000/01006

1        (c)    violation of the National Traffic and Motor Vehicle Safety Act of

2    1996, codified at 49 U.S.C. §§ 30101-30170, and its regulations. Federal Motor

3    Vehicle Safety Standard ("FMVSS") 573 governs a motor vehicle manufacturer's

4    responsibility to notify NHTSA of a motor vehicle defect within five days of

5    determining that the defect is safety related. See 49 C.F.R. § 573.6. New GM

6    violated these reporting requirements by failing to report the myriad defects

7    discussed herein within the required time, and failing to timely recall all impacted

8    vehicles, despite its explicit promise in § 6.15 of the Sales Agreement to comply with

9    the Safety Act obligations of a "manufacturer" of Old GM vehicles.

10        272.  New GM also violated the unfair and fraudulent prong of section 17200

11    by systematically devaluing safety and concealing defects in the class vehicles,

12    information that was material to a reasonable consumer.

13        273.  New GM also violated the unfair prong of section 17200 because the

14    acts and practices set forth in the Complaint, including systematically devaluing

15    safety and concealing defects in the class vehicles, offend established public policy,

16    and also because the harm New GM caused consumers greatly outweighs any

17    benefits associated with those practices. New GM's conduct has also impaired

18    competition within the automotive vehicles market and has prevented Plaintiffs and

19    the California Class from making fully informed decisions about whether to lease,

20    purchase and/or retain the class vehicles.

21        274.  From the date of its inception on July 11, 2009, New GM knew of many

22    serious defects the vehicles, because of (i) the knowledge of Old GM personnel who

23    remained at New GM; (ii) continuous reports, investigations, and notifications from

24    regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act

25    obligations, as discussed above. New GM became aware of other serious defects and

26    systemic safety issues years ago, but concealed all of that information.

27        275.  New GM was also aware that it valued cost-cutting over safety, selected

28    parts from the cheapest supplier regardless of quality, and actively discouraged

**KNAPP,**
**PETERSEN**
**& CLARKE**

-52-

1  employees from finding and flagging known safety defects, and that this approach

2  would necessarily cause the existence of more defects in the vehicles it designed and

3  manufactured and the failure to disclose and remedy defects in all the class vehicles.

4  New GM concealed this information as well.

5       276.  By failing to disclose and by actively concealing the many defects in

6  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

7  presenting itself as a reputable manufacturer that valued safety and stood behind its

8  vehicles after they were sold, New GM engaged in unlawful, unfair, or fraudulent

9  business acts or practices in violation of the UCL.

10       277.  In the course of New GM's business, it willfully failed to disclose and

11  actively concealed the dangerous risk posed by the defects discussed above. New

12  GM compounded the deception by repeatedly asserting that the class vehicles were

13  safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

14  that valued safety and stood behind its vehicles once they are on the road.

15       278.  New GM's unfair or deceptive acts or practices were likely to and did in

16  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

17  reliability of the class vehicles, and the true value of the class vehicles.

18       279.  New GM intentionally and knowingly misrepresented material facts

19  regarding the class vehicles with an intent to mislead Plaintiffs and the California

20  Class.

21       280.  New GM knew or should have known that its conduct violated the UCL.

22       281.  As alleged above, New GM made material statements about the safety

23  and reliability of the class vehicles and the GM brand that were either false or

24  misleading.

25       282.  New GM owed Plaintiffs a duty to disclose the true safety and reliability

26  of the class vehicles and the devaluing of safety at New GM, because New GM:

27            (a)    Possessed exclusive knowledge that it valued cost-cutting over

28  safety, selected parts from the cheapest supplier regardless of quality, and actively

**KNAPP,
PETERSEN
& CLARKE**

-53-

2411127.1  08000/01006

1    discouraged employees from finding and flagging known safety defects, and that this

2    approach would necessarily cause the existence of more defects in the vehicles it

3    designed and manufactured;

4              (b)      Intentionally concealed the foregoing from Plaintiffs; and/or

5              (c)      Made incomplete representations about the safety and reliability

6    of the class vehicles generally, and the valve guide defects in particular, while

7    purposefully withholding material facts from Plaintiffs that contradicted these

8    representations.

9         283.   Because New GM fraudulently concealed the defects in the class

10   vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma

11   attached to those vehicles by New GM's conduct, they are now worth significantly

12   less than they otherwise would be.

13        284.   New GM's systemic devaluation of safety and its concealment of the

14   defects in GM the class vehicles were material to Plaintiffs and the California Class.

15   A vehicle made by a reputable manufacturer of vehicles is worth more than an

16   otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

17   conceals defects rather than promptly remedying them.

18        285.   Plaintiffs and the California Class suffered ascertainable loss caused by

19   New GM's misrepresentations and its concealment of and failure to disclose material

20   information. Plaintiffs who purchased class vehicles after the date of New GM's

21   inception either would have paid less for their vehicles or would not have purchased

22   or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

23   of New GM's misconduct.

24        286.   Regardless of time of purchase or lease, no Plaintiffs would have

25   maintained and continued to drive their vehicles had they been aware of New GM's

26   misconduct. By contractually assuming TREAD Act responsibilities with respect to

27   Old GM class vehicles, New GM effectively assumed the role of manufacturer of

28   those vehicles because the TREAD Act on its face only applies to vehicle

**KNAPP,
PETERSEN
& CLARKE**

-54-

2411127.1  08000/01006

1   manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

2   vehicle owners to refrain from unfair and deceptive acts or practices under the UCL.

3   And, in any event, all class vehicle owners suffered ascertainable loss in the form of

4   diminished value of their vehicles as a result of New GM's deceptive and unfair acts

5   and practices made in the course of New GM's business.

6       287.  As a direct and proximate result of New GM's violations of the UCL,

7   Plaintiffs and the California Class have suffered injury-in-fact and/or actual damage.

8       288.  Plaintiffs request that this Court enter such orders or judgments as may

9   be necessary, including a declaratory judgment that New GM has violated the UCL;

10  an order enjoining New GM from continuing its unfair, unlawful, and/or deceptive

11  practices; an order supervising the recalls; an order and judgment restoring to the

12  California Class Members any money lost as the result of New GM's unfair,

13  unlawful, and deceptive trade practices, including restitution and disgorgement of

14  any profits New GM received as a result of its unfair, unlawful, and/or deceptive

15  practices, as provided in Cal. Bus. & Prof. Code § 17203, Cal Civ. Proc. § 384 and

16  Cal. Civ. Code § 3345; and for such other relief as may be just and proper.

17                          **COUNT XIV**

18                    **FRAUD BY CONCEALMENT**

19      289.  Plaintiffs reallege and incorporate by reference all paragraphs as though

20  fully set forth herein.

21      290.  This claim is brought on behalf of Nationwide Class Members who are

22  California residents (the "California Class").

23      291.  New GM concealed and suppressed material facts concerning the

24  quality of the class vehicles.

25      292.  New GM concealed and suppressed material facts concerning the

26  culture of New GM – a culture characterized by an emphasis on cost-cutting, the

27  studious avoidance of quality issues, and a shoddy design process.

28      293.  New GM concealed and suppressed material facts concerning the

KNAPP,
PETERSEN
& CLARKE

-55-

2411127.1  08000/01006

1  defects in the class vehicles, and that it valued cost-cutting over quality and took

2  steps to ensure that its employees did not reveal known defects to regulators or

3  consumers.

4      294.  New GM did so in order to boost confidence in its vehicles and falsely

5  assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

6  that New GM was a reputable manufacturer that stands behind its vehicles after they

7  are sold and that its vehicles are safe and reliable.  The false representations were

8  material to consumers, both because they concerned the quality and safety of the

9  class vehicles and because the representations played a significant role in the value of

10  the vehicles.

11      295.  New GM had a duty to disclose the defects in the class vehicles because

12  they were known and/or accessible only to New GM, were in fact known to New

13  GM as of the time of its creation in 2009 and at every point thereafter, New GM had

14  superior knowledge and access to the facts, and New GM knew the facts were not

15  known to or reasonably discoverable by Plaintiffs and the California Class.  New

16  GM also had a duty to disclose because it made many general affirmative

17  representations about the safety, quality, and lack of defects in its vehicles, as set

18  forth above, which were misleading, deceptive and incomplete without the disclosure

19  of the additional facts set forth above regarding defects in the class vehicles. Having

20  volunteered to provide information to Plaintiffs, GM had the duty to disclose not just

21  the partial truth, but the entire truth. These omitted and concealed facts were material

22  because they directly impact the value of the class vehicles purchased or leased by

23  Plaintiffs and the California Class.

24      296.  New GM actively concealed and/or suppressed these material facts, in

25  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

26  image and cost New GM money, and it did so at the expense of Plaintiffs and the

27  California Class.

28      297.  On information and belief, New GM has still not made full and adequate

KNAPP,
PETERSEN
& CLARKE

-56-

disclosure and continues to defraud Plaintiffs and the California Class and conceal material information regarding defects that exist in the class vehicles.

298. Plaintiffs and the California Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the California Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the California Class.

299. Because of the concealment and/or suppression of the facts, Plaintiffs and the California Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

300. The value of all California Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

301. Accordingly, New GM is liable to the California Class for damages in an amount to be proven at trial.

-57-

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

302. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the California Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<u>**COUNT XV**</u>

<u>**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR**</u>
<u>**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**</u>
<u>**(Cal. Civ. Code §§ 1791.1 & 1792)**</u>

303. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

304. This claim is brought only on behalf of California residents who are members of the Nationwide Class ("California Class").

305. Plaintiffs are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

306. The class vehicles are "consumer goods" within the meaning of Civ. Code § 1791(a).

307. New GM was a "manufacturer" of the class vehicles within the meaning of Cal. Civ. Code § 1791(j).

308. New GM impliedly warranted to Plaintiffs and the California Class that its class vehicles sold or leased on or after July 11, 2009 were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the class vehicles do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

309. 1536. Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

KNAPP,
PETERSEN
& CLARKE

-58-

1         (2)    Are fit for the ordinary purposes for which such

2 goods are used.

3         (3)    Are adequately contained, packaged, and labeled.

4         (4)    Conform to the promises or affirmations of fact

5 made on the container or label.

6    310.   The class vehicles would not pass without objection in the automotive

7 trade because of the defects that cause the class vehicles to suffer unusual and early

8 engine wear and failure.

9    311.   Because of these defects, the class vehicles are not reliable to drive and

10 thus not fit for ordinary purposes.

11    312.   The class vehicles are not adequately labeled because the labeling fails

12 to disclose the defects. New GM failed to warn about the defects in the class

13 vehicles.

14    313.   New GM breached the implied warranty of merchantability by selling

15 class vehicles containing defects. These defects have deprived Plaintiffs and the

16 California Class of the benefit of their bargain and have caused the class vehicles to

17 depreciate in value.

18    314.   Notice of breach is not required because Plaintiffs and California Class

19 members did not purchase their automobiles directly from New GM.

20    315.   As a direct and proximate result of New GM's breach of its duties under

21 California's law, Plaintiffs and California Class members received goods whose

22 defective condition substantially impairs their value. Plaintiffs and the California

23 Class members have been damaged by the diminished value of their vehicles, the

24 product's malfunctioning, and the loss of use of their class vehicles.

25    316.   Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and California

26 Class members are entitled to damages and other legal and equitable relief including,

27 at their election, the purchase price of their class vehicles, or the overpayment or

28 diminution in value of their class vehicles.

**KNAPP,**
**PETERSEN**
**& CLARKE**

2411127.1  08000/01006

317. Under Cal. Civ. Code § 1794, Plaintiffs and California Class members are entitled to costs and attorneys' fees.

<div align="center">

**COUNT XVI**

**NEGLIGENT FAILURE TO RECALL**

</div>

318. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

319. This claim is brought only on behalf of California residents who are members of the Nationwide Class (the "California Class").

320. New GM manufactured, distributed, and sold class vehicles.

321. New GM knew or reasonably should have known that the class vehicles were dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner.

322. New GM either knew of the defects before the vehicles were sold, or became aware of the defects and their attendant risks after the vehicles were sold.

323. New GM continued to gain information further corroborating the defects and their risks from its inception until this year.

324. New GM failed to adequately recall the class vehicles in a timely manner.

325. Purchasers of the class vehicles, including the California Class, were harmed by New GM's failure to adequately recall all the class vehicles in a timely manner and have suffered damages, including, without limitation, damage to other components of the class vehicles caused by the defects, the diminished value of the class vehicles, the cost of modification of the defective systems, and the costs associated with the loss of use of the class vehicles.

326. New GM's failure to timely and adequately recall the class vehicles was a substantial factor in causing the purchasers' harm, including that of Plaintiffs and the California Class.

////

KNAPP,
PETERSEN
& CLARKE

<div align="center">

**COUNT XVII**

**THIRD-PARTY BENEFICIARY CLAIM**

</div>

327.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

328.   This claim is brought only on behalf of Class members who are California residents (the "California Class").

329.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

330.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

331.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

332.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance

<div align="center">-61-</div>

KNAPP,
PETERSEN
& CLARKE

2411127.1   08000/01006

1  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

2  underlying records on which the early warning reports are based and all records

3  containing information on malfunctions that may be related to motor vehicle safety.

4  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

5  or should know that a safety defect exists – including notifying NHTSA and

6  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

7  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

8       333.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by

9  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

10  with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the

11  benefit of having a manufacturer responsible for monitoring the safety of their Old

12  GM vehicles and making certain that any known defects would be promptly

13  remedied.

14       334.  Although the Sale Order which consummated New GM's purchase of

15  Old GM purported to give New GM immunity from claims concerning vehicles or

16  parts made by Old GM, the bankruptcy court recently ruled that provision to be

17  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

18  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

19  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

20  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

21  breaches of the promise it made in the Sale Agreement.

22       335.  New GM breached its covenant to comply with the TREAD Act with

23  respect to the class vehicles, as it failed to take action to remediate the defects at any

24  time, up to the present.

25       336.  Plaintiffs and the California Class were damaged as a result of New

26  GM's breach. Because of New GM's failure to timely remedy the defect in class

27  vehicles, the value of Old GM class vehicles has diminished in an amount to be

28  determined at trial.

KNAPP,
PETERSEN
& CLARKE

-62-

2411127.1  08000/01006

# COUNT XVIII

# UNJUST ENRICHMENT

337. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

338. This claim is brought on behalf of members of the California Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "California Unjust Enrichment Class").

339. New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

340. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

341. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

342. Thus, all California Unjust Enrichment Class Members conferred a benefit on New GM.

343. It is inequitable for New GM to retain these benefits.

344. Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

345. New GM knowingly accepted the benefits of its unjust conduct.

346. As a result of New GM's conduct, the amount of its unjust enrichment

KNAPP,
PETERSEN
& CLARKE

-63-

1  should be disgorged, in an amount according to proof.

2  **Florida**

3  ### COUNT XIX

4  ### VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE

5  ### TRADE PRACTICES ACT

6  ### (FLA. STAT. § 501.201, et seq.)

7  347.   Plaintiffs reallege and incorporate by reference all paragraphs as though

8  fully set forth herein.

9  348.   This claim is brought only on behalf of Nationwide Class Members who

10  are Florida residents (the "Florida Class").

11  349.   Plaintiffs are "consumers" within the meaning of the  Florida Unfair and

12  Deceptive Trade Practices Act ("FUDTPA"), FLA. STAT. § 501.203(7).

13  350.   New GM engaged in "trade or commerce" within the meaning of FLA.

14  STAT. § 501.203(8).

15  351.   FUDTPA prohibits "[u]nfair methods of competition, unconscionable

16  acts or practices, and unfair or deceptive acts or practices in the conduct of any trade

17  or commerce ..." FLA. STAT. § 501.204(1). New GM participated in unfair and

18  deceptive trade practices that violated the FUDTPA as described herein.

19  352.   In the course of its business, New GM systematically devalued safety

20  and concealed the defects in class vehicles as described herein and otherwise

21  engaged in activities with a tendency or capacity to deceive.  New GM also engaged

22  in unlawful trade practices by employing deception, deceptive acts or practices,

23  fraud, misrepresentations, or concealment, suppression or omission of any material

24  fact with intent that others rely upon such concealment, suppression or omission, in

25  connection with the sale of class vehicles.

26  353.   From the date of its inception on July 11, 2009, New GM knew of many

27  serious defects affecting many models and years of the class vehicles, because of (i)

28  the knowledge of Old GM personnel who remained at New GM; (ii) continuous

KNAPP,
PETERSEN
& CLARKE

-64-

2411127.1  08000/01006

1 reports, investigations, and notifications from regulatory authorities; and (iii)

2 ongoing performance of New GM's TREAD Act obligations. New GM became

3 aware of other serious defects and systemic safety issues years ago, but concealed all

4 of that information.

5     354. New GM was also aware that it valued cost-cutting over safety, selected

6 parts from the cheapest supplier regardless of quality, and actively discouraged

7 employees from finding and flagging known safety defects, and that this approach

8 would necessarily cause the existence of more defects in the vehicles it designed and

9 manufactured and the failure to disclose and remedy defects in all class vehicles.

10 New GM concealed this information as well.

11     355. By failing to disclose and by actively concealing the many defects in

12 class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

13 presenting itself as a reputable manufacturer that valued safety and stood behind its

14 vehicles after they were sold, New GM engaged in unfair, unconscionable, and

15 deceptive business practices in violation of the FUDTPA.

16     356. In the course of New GM's business, it willfully failed to disclose and

17 actively concealed the dangerous risk posed by the defects discussed above. New

18 GM compounded the deception by repeatedly asserting that class vehicles were safe,

19 reliable, and of high quality, and by claiming to be a reputable manufacturer that

20 valued safety and stood behind its vehicles once they are on the road.

21     357. New GM's unfair or deceptive acts or practices were likely to and did in

22 fact deceive reasonable consumers, including Plaintiffs, about the true safety and

23 reliability of class vehicles, the quality of the GM brand, the devaluing of safety at

24 New GM, and the true value of the class vehicles.

25     358. New GM intentionally and knowingly misrepresented material facts

26 regarding the class vehicles with an intent to mislead Plaintiffs and the Florida Class.

27     359. New GM knew or should have known that its conduct violated the

28 FUDTPA.

**KNAPP,**
**PETERSEN**
**& CLARKE**

-65-

360. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

361. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

      (a)    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

      (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

      (c)    Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defect in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

362. Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

363. New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Florida Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

364. Plaintiffs and the Florida Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased the class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased

KNAPP,
PETERSEN
& CLARKE

-66-

or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

365. Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the FUDTPA. And, in any event, all class vehicle owners suffered ascertainable loss in the form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

366. Plaintiffs and Florida Class Members risk irreparable injury as a result of New GM's act and omissions in violation of the FUDTPA.

367. As a direct and proximate result of New GM's violations of the FUDTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual damage.

368. Plaintiffs and the Florida Class are entitled to recover their actual damages under FLA. STAT. § 501.211(2) and attorneys' fees under FLA. STAT. § 501.2105(1).

369. Plaintiffs also seek an order enjoining New GM's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

////

////

////

**KNAPP,**
**PETERSEN**
**& CLARKE**

-67-

2411127.1  08000/01006

## COUNT XX

## FRAUD BY CONCEALMENT

370. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

371. This claim is brought on behalf of Nationwide Class Members who are Florida residents (the "Florida Class").

372. New GM concealed and suppressed material facts concerning the quality of the class vehicles.

373. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

374. New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

375. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

376. New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Florida Class. New GM also had a duty to disclose because it made many general affirmative representations

KNAPP,
PETERSEN
& CLARKE

-68-

about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Florida Class.

377. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Florida Class.

378. On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Florida Class and conceal material information regarding defects that exist in the class vehicles.

379. Plaintiffs and the Florida Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Florida Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Florida Class.

380. Because of the concealment and/or suppression of the facts, Plaintiffs and the Florida Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's

KNAPP,
PETERSEN
& CLARKE

-69-

1   corporate policies. Had they been aware of the defects that existed in the class

2   vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

3   New GM came into existence either would have paid less for their vehicles or would

4   not have purchased or leased them at all; and no Plaintiffs regardless of time of

5   purchase or lease would have maintained their vehicles.

6        381. The value of all Florida Class Members' vehicles has diminished as a

7   result of New GM's fraudulent concealment of the defects which have tarnished the

8   Corvette brand and made any reasonable consumer reluctant to purchase any of the

9   class vehicles, let alone pay what otherwise would have been fair market value for

10   the vehicles.

11        382. Accordingly, New GM is liable to the Florida Class for damages in an

12   amount to be proven at trial.

13        383. New GM's acts were done maliciously, oppressively, deliberately, with

14   intent to defraud, and in reckless disregard of Plaintiffs' and the Florida Class's

15   rights and well-being to enrich New GM. New GM's conduct warrants an assessment

16   of punitive damages in an amount sufficient to deter such conduct in the future,

17   which amount is to be determined according to proof.

18                           **COUNT XXI**

19            **THIRD-PARTY BENEFICIARY CLAIM**

20        384. Plaintiffs reallege and incorporate by reference all paragraphs as though

21   fully set forth herein.

22        385. This claim is brought only on behalf of Class members who are Florida

23   residents (the "Florida Class").

24        386. In the Sales Agreement through which New GM acquired substantially

25   all of the assets of New GM, New GM explicitly agreed as follows:

26           From and after the Closing, [New GM] shall comply with the

27           certification, reporting and recall requirements of the National Traffic

28           and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

**KNAPP,
PETERSEN
& CLARKE**

Recall Enhancement, Accountability and Documentation Act, the Clean
Air Act, the California Health and Safety Code and similar Laws, in
each case, to the extent applicable in respect of vehicles and vehicle
parts manufactured or distributed by [Old GM].

387. With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

388. But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

389. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

390. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old

**KNAPP,
PETERSEN
& CLARKE**

-71-

Case 2:13-cv-09064-PJW-E    Document 18    Filed 12/12/13    Page 78 of 109    Page ID #:335

1   GM vehicles and making certain that any known defects would be promptly

2   remedied.

3       391.   Although the Sale Order which consummated New GM's purchase of

4   Old GM purported to give New GM immunity from claims concerning vehicles or

5   parts made by Old GM, the bankruptcy court recently ruled that provision to be

6   unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

7   conduct with respect to cars and parts made by Old GM. Therefore, that provision of

8   the Sale Order and related provisions of the Sale Agreement cannot be read to bar

9   Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

10  breaches of the promise it made in the Sale Agreement.

11      392.   New GM breached its covenant to comply with the TREAD Act with

12  respect to the class vehicles, as it failed to take action to remediate the defects at any

13  time, up to the present.

14      393.   Plaintiffs and the Florida Class were damaged as a result of New GM's

15  breach. Because of New GM's failure to timely remedy the defect in class vehicles,

16  the value of class vehicles has diminished in an amount to be determined at trial.

17                         **COUNT XXII**

18                     **UNJUST ENRICHMENT**

19      394.   Plaintiffs reallege and incorporate by reference all paragraphs as though

20  fully set forth herein.

21      395.   This claim is brought on behalf of members of the Florida Class who

22  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

23  after New GM came into existence, and who purchased or leased class vehicles in the

24  time period before New GM came into existence, which cars were still on the road

25  after New GM came into existence (the "Florida Unjust Enrichment Class").

26      396.   New GM has received and retained a benefit from the Plaintiffs and

27  inequity has resulted.

28      397.   New GM has benefitted from selling and leasing defective cars,

KNAPP,
PETERSEN
& CLARKE

-72-

2411127.1   08000/01006

including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued the class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

398. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

399. Thus, all Florida Unjust Enrichment Class Members conferred a benefit on New GM.

400. It is inequitable for New GM to retain these benefits.

401. Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

402. New GM knowingly accepted the benefits of its unjust conduct.

403. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Illinois**

## **COUNT XXIII**

## **VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

## **(815 ILCS 505/1, et seq. and 720 ILCS 295/1A)**

404. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

405. This claim is brought only on behalf of Nationwide Class Members who are Illinois residents (the "Illinois Class").

406. New GM is a "person" as that term is defined in 815 ILCS 505/1(c).

407. Plaintiff and the Illinois Class are "consumers" as that term is defined in

KNAPP,
PETERSEN
& CLARKE

-73-

2411127.1  08000/01006

815 ILCS 505/1(e).

408. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

409. New GM participated in misleading, false, or deceptive acts that violated the Illinois CFA. New GM engaged in deceptive business practices prohibited by the Illinois CFA.

410. In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

411. From the date of its inception on July 11, 2009, New GM knew of many defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

412. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach

**KNAPP, PETERSEN & CLARKE**

-74-

2411127.1  08000/01006

would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

413. By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Illinois CFA.

414. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

415. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

416. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Illinois Class.

417. New GM knew or should have known that its conduct violated the Illinois CFA.

418. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

419. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a) Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively

KNAPP,
PETERSEN
& CLARKE

-75-

2411127.1 08000/01006

1   discouraged employees from finding and flagging known safety defects, and that this

2   approach would necessarily cause the existence of more defects in the vehicles it

3   designed and manufactured;

4           (b)     Intentionally concealed the foregoing from Plaintiffs; and/or

5           (c)     Made incomplete representations about the safety and reliability

6   of the class vehicles generally, and the valve guide defects in particular, while

7   purposefully withholding material facts from Plaintiffs that contradicted these

8   representations.

9       420.   Because New GM fraudulently concealed the defects in the class

10  vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

11  attached to those vehicles by New GM's conduct, they are now worth significantly

12  less than they otherwise would be.

13      421.   New GM's systemic devaluation of safety and its concealment of the

14  defects in the class vehicles were material to Plaintiffs and the Illinois Class.  A

15  vehicle made by a reputable manufacturer of vehicles is worth more than an

16  otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

17  conceals defects rather than promptly remedying them.

18      422.   Plaintiffs and the Illinois Class suffered ascertainable loss caused by

19  New GM's misrepresentations and its concealment of and failure to disclose material

20  information.  Plaintiffs who purchased class vehicles after the date of New GM's

21  inception either would have paid less for their vehicles or would not have purchased

22  or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

23  of New GM's misconduct.

24      423.   Regardless of time of purchase or lease, no Plaintiffs would have

25  maintained and continued to drive their vehicles had they been aware of New GM's

26  misconduct. By contractually assuming TREAD Act responsibilities with respect to

27  Old GM class vehicles, New GM effectively assumed the role of manufacturer of

28  those vehicles because the TREAD Act on its face only applies to vehicle

**KNAPP,
PETERSEN
& CLARKE**

-76-

1   manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

2   vehicle owners to refrain from unfair and deceptive acts or practices under the

3   Illinois CFA.  And, in any event, all class vehicle owners suffered ascertainable loss

4   in the form of the diminished value of their vehicles as a result of New GM's

5   deceptive and unfair acts and practices made in the course of New GM's business.

6       424.   As a direct and proximate result of New GM's violations of the Illinois

7   CFA, Plaintiffs and the Illinois Class have suffered injury-in-fact and/or actual

8   damage.

9       425.   Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Illinois Class seek

10   monetary relief against New GM in the amount of actual damages, as well as

11   punitive damages because New GM acted with fraud and/or malice and/or was

12   grossly negligent.

13       426.   Plaintiffs also seek an order enjoining New GM's unfair and/or

14   deceptive acts or practices, punitive damages, and attorneys' fees, and any other just

15   and proper relief available under 815 ILCS § 505/1 et seq.

16 <div align="center">**COUNT XXIV**</div>

17 <div align="center">**FRAUD BY CONCEALMENT**</div>

18       427.   Plaintiffs reallege and incorporate by reference all paragraphs as though

19   fully set forth herein.

20       428.   This claim is brought on behalf of Nationwide Class Members who are

21   Illinois residents (the "Illinois Class").

22       429.   New GM concealed and suppressed material facts concerning the

23   quality of the class vehicles.

24       430.   New GM concealed and suppressed material facts concerning the

25   culture of New GM – a culture characterized by an emphasis on cost-cutting, the

26   studious avoidance of quality issues, and a shoddy design process.

27       431.   New GM concealed and suppressed material facts concerning the

28   defects in the class vehicles, and that it valued cost-cutting over quality and took

KNAPP,
PETERSEN
& CLARKE

-77-

1 steps to ensure that its employees did not reveal known defects to regulators or

2 consumers.

3     432. New GM did so in order to boost confidence in its vehicles and falsely

4 assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

5 that New GM was a reputable manufacturer that stands behind its vehicles after they

6 are sold and that its vehicles are safe and reliable. The false representations were

7 material to consumers, both because they concerned the quality and safety of the

8 class vehicles and because the representations played a significant role in the value of

9 the vehicles.

10     433. New GM had a duty to disclose the many defects in the class vehicles

11 because they were known and/or accessible only to New GM, were in fact known to

12 New GM as of the time of its creation in 2009 and at every point thereafter, New GM

13 had superior knowledge and access to the facts, and New GM knew the facts were

14 not known to or reasonably discoverable by Plaintiffs and the Illinois Class. New

15 GM also had a duty to disclose because it made many general affirmative

16 representations about the safety, quality, and lack of defects in its vehicles, as set

17 forth above, which were misleading, deceptive and incomplete without the disclosure

18 of the additional facts set forth above regarding defects in the class vehicles. Having

19 volunteered to provide information to Plaintiffs, GM had the duty to disclose not just

20 the partial truth, but the entire truth. These omitted and concealed facts were material

21 because they directly impact the value of the class vehicles purchased or leased by

22 Plaintiffs and the Illinois Class.

23     434. New GM actively concealed and/or suppressed these material facts, in

24 whole or in part, to protect its profits and avoid recalls that would hurt the brand's

25 image and cost New GM money, and it did so at the expense of Plaintiffs and the

26 Illinois Class.

27     435. On information and belief, New GM has still not made full and adequate

28 disclosure and continues to defraud Plaintiffs and the Illinois Class and conceal

**KNAPP,
PETERSEN
& CLARKE**

-78-

1 material information regarding defects that exist in the class vehicles.

2     436. Plaintiffs and the Illinois Class were unaware of these omitted material
3 facts and would not have acted as they did if they had known of the concealed and/or
4 suppressed facts, in that they would not have purchased cars manufactured by New
5 GM; and/or they would not have purchased cars manufactured by Old GM in the
6 time after New GM had come into existence and had fraudulently opted to conceal,
7 and to misrepresent, the true facts about the vehicles; and/or would not have
8 continued to drive their vehicles or would have taken other affirmative steps.
9 Plaintiffs' and the Illinois Class's actions were justified. New GM was in exclusive
10 control of the material facts and such facts were not known to the public, Plaintiffs,
11 or the Illinois Class.

12     437. Because of the concealment and/or suppression of the facts, Plaintiffs
13 and the Illinois Class sustained damage because they own vehicles that diminished in
14 value as a result of New GM's concealment of, and failure to timely disclose, the
15 defects in the class vehicles and the quality issues engendered by New GM's
16 corporate policies. Had they been aware of the defects that existed in the class
17 vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after
18 New GM came into existence either would have paid less for their vehicles or would
19 not have purchased or leased them at all; and no Plaintiffs regardless of time of
20 purchase or lease would have maintained their vehicles.

21     438. The value of all Illinois Class Members' vehicles has diminished as a
22 result of New GM's fraudulent concealment of the defects which have tarnished the
23 Corvette brand and made any reasonable consumer reluctant to purchase any of the
24 class vehicles, let alone pay what otherwise would have been fair market value for
25 the vehicles.

26     439. Accordingly, New GM is liable to the Illinois Class for damages in an
27 amount to be proven at trial.

28     440. New GM's acts were done maliciously, oppressively, deliberately, with

KNAPP,
PETERSEN
& CLARKE

-79-

1  intent to defraud, and in reckless disregard of Plaintiffs' and the Illinois Class's

2  rights and well-being to enrich New GM. New GM's conduct warrants an assessment

3  of punitive damages in an amount sufficient to deter such conduct in the future,

4  which amount is to be determined according to proof.

### COUNT XV

### THIRD-PARTY BENEFICIARY CLAIM

7      441.   Plaintiffs reallege and incorporate by reference all paragraphs as though

8  fully set forth herein.

9      442.   This claim is brought only on behalf of Class members who are Illinois

10  residents (the "Illinois Class").

11      443.   In the Sales Agreement through which New GM acquired substantially

12  all of the assets of New GM, New GM explicitly agreed as follows:

13          From and after the Closing, [New GM] shall comply with the

14          certification, reporting and recall requirements of the National Traffic

15          and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

16          Recall Enhancement, Accountability and Documentation Act, the Clean

17          Air Act, the California Health and Safety Code and similar Laws, in

18          each case, to the extent applicable in respect of vehicles and vehicle

19          parts manufactured or distributed by [Old GM].

20      444.   With the exception of the portion of the agreement that purports to

21  immunize New GM from its own independent misconduct with respect to cars and

22  parts made by Old GM, the Sales Agreement is a valid and binding contract.

23      445.   But for New GM's covenant to comply with the TREAD Act with respect

24  to cars and parts made by Old GM, the TREAD Act would have no

25  application to New GM with respect to those cars and parts. That is because the

26  TREAD Act on its face imposes reporting and recall obligations only on the

27  "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

28      446.   Because New GM agreed to comply with the TREAD Act with respect

KNAPP,
PETERSEN
& CLARKE

-80-

1   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

2   make quarterly submissions to NHTSA of "early warning reporting" data, including

3   incidents involving property damage, warranty claims, consumer complaints, and

4   field reports concerning failure, malfunction, lack of durability or other performance

5   issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

6   underlying records on which the early warning reports are based and all records

7   containing information on malfunctions that may be related to motor vehicle safety.

8   See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

9   or should know that a safety defect exists – including notifying NHTSA and

10   consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

11   573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

12       447.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

13   Old GM, are the clear intended beneficiaries of New GM's agreement to comply

14   with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

15   benefit of having a manufacturer responsible for monitoring the safety of their Old

16   GM vehicles and making certain that any known defects would be promptly

17   remedied.

18       448.   Although the Sale Order which consummated New GM's purchase of

19   Old GM purported to give New GM immunity from claims concerning vehicles or

20   parts made by Old GM, the bankruptcy court recently ruled that provision to be

21   unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

22   conduct with respect to cars and parts made by Old GM. Therefore, that provision of

23   the Sale Order and related provisions of the Sale Agreement cannot be read to bar

24   Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

25   breaches of the promise it made in the Sale Agreement.

26       449.   New GM breached its covenant to comply with the TREAD Act with

27   respect to the class vehicles, as it failed to take action to remediate the defects at any

28   time, up to the present.

**KNAPP, PETERSEN & CLARKE**

-81-

450.   Plaintiffs and the Illinois Class were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the defect in class vehicles, the value of Old GM class vehicles has diminished in an amount to be determined at trial.

<div align="center">

### COUNT XXVI

### UNJUST ENRICHMENT

</div>

451.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

452.   This claim is brought on behalf of members of the Illinois Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Illinois Unjust Enrichment Class").

453.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

454.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

455.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

456.   Thus, all Illinois Unjust Enrichment Class Members conferred a benefit on New GM.

457.   It is inequitable for New GM to retain these benefits.

KNAPP,
PETERSEN
& CLARKE

-82-

2411127.1  08000/01006

458.   Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

459.   New GM knowingly accepted the benefits of its unjust conduct.

460.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Indiana**

## COUNT XXVII

## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
## (IND. CODE § 24-5-0.5-3)

461.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

462.   This claim is brought only on behalf of Nationwide Class Members who are Indiana residents (the "Indiana Class").

463.   New GM is a "person" within the meaning of IND. CODE § 24-5-0.5-2(2) and a "supplier" within the meaning of IND. CODE § 24-5-.05-2(a)(3).

464.   Plaintiffs' and Indiana Class Members' purchases of the class vehicles are "consumer transactions" within the meaning of IND. CODE § 24-5-.05-2(a)(1).

465.   Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive trade practice," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; ... (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; ... (b) Any representations on or within a product or its packaging or in advertising or

KNAPP,
PETERSEN
& CLARKE

-83-

1    promotional materials which would constitute a deceptive act shall be the deceptive

2    act both of the supplier who places such a representation thereon or therein, or who

3    authored such materials, and such suppliers who shall state orally or in writing that

4    such representation is true if such other supplier shall know or have reason to know

5    that such representation was false."

6         466.   New GM participated in misleading, false, or deceptive acts that

7    violated the Indiana DCSA.  By systematically devaluing safety and concealing

8    defects in class vehicles, New GM engaged in deceptive business practices

9    prohibited by the Indiana DCSA.  New GM also engaged in unlawful trade practices

10   by: (1) representing that the class vehicles have characteristics, uses, benefits, and

11   qualities which they do not have; (2) representing that the class vehicles are of a

12   particular standard and quality when they are not; (3) advertising the class vehicles

13   with the intent not to sell them as advertised; and (4) otherwise engaging in conduct

14   likely to deceive.

15        467.   New GM's actions as set forth above occurred in the conduct of trade or

16   commerce.

17        468.   In the course of its business, New GM systematically devalued safety

18   and concealed defects in the class vehicles as described herein and otherwise

19   engaged in activities with a tendency or capacity to deceive.  New GM also engaged

20   in unlawful trade practices by employing deception, deceptive acts or practices,

21   fraud, misrepresentations, or concealment, suppression or omission of any material

22   fact with intent that others rely upon such concealment, suppression or omission, in

23   connection with the sale of class vehicles.

24        469.   From the date of its inception on July 11, 2009, New GM knew of many

25   serious defects affecting many models and years of class vehicles, because of (i) the

26   knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

27   investigations, and notifications from regulatory authorities; and (iii) ongoing

28   performance of New GM's TREAD Act obligations.  New GM became aware of

KNAPP,
PETERSEN
& CLARKE

-84-

other serious defects and systemic safety issues years ago, but concealed all of that information.

470. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

471. By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Indiana DCSA.

472. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that the class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

473. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

474. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Indiana Class.

475. New GM knew or should have known that its conduct violated the Indiana DCSA.

476. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or

KNAPP,
PETERSEN
& CLARKE

-85-

2411127.1  08000/01006

misleading.

477.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

478.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

479.   New GM's systemic devaluation of safety and its concealment of  the defects in the class vehicles were material to Plaintiffs and the Indiana Class.  A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedying them.

480.   Plaintiffs and the Indiana Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

**KNAPP,
PETERSEN
& CLARKE**

-86-

481.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Indiana DCSA. And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

482.   As a direct and proximate result of New GM's violations of the Indiana DCSA, Plaintiffs and the Indiana Class have suffered injury-in-fact and/or actual damage.

483.   Pursuant to IND. CODE § 24-5-0.5-4, Plaintiffs and the Indiana Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff and each Indiana Class member, including treble damages up to $1,000 for New GM's willfully deceptive acts.

484.   Plaintiff also seeks punitive damages based on the outrageousness and recklessness of the New GM's conduct and New GM's high net worth.

## COUNT XXVIII
## FRAUD BY CONCEALMENT

485.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

486.   This claim is brought on behalf of Nationwide Class Members who are Indiana residents (the "Indiana Class").

487.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

KNAPP,
PETERSEN
& CLARKE

-87-

2411127.1  08000/01006

488.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

489.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

490.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

491.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Indiana Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Indiana Class.

492.   New GM actively concealed and/or suppressed these material facts, in

-88-

KNAPP,
PETERSEN
& CLARKE

1 whole or in part, to protect its profits and avoid recalls that would hurt the brand's

2 image and cost New GM money, and it did so at the expense of Plaintiffs and the

3 Indiana Class.

4     493.  On information and belief, New GM has still not made full and adequate

5 disclosure and continues to defraud Plaintiffs and the Indiana Class and conceal

6 material information regarding defects that exist in the class vehicles.

7     494.  Plaintiffs and the Indiana Class were unaware of these omitted material

8 facts and would not have acted as they did if they had known of the concealed and/or

9 suppressed facts, in that they would not have purchased cars manufactured by New

10 GM; and/or they would not have purchased cars manufactured by Old GM in the

11 time after New GM had come into existence and had fraudulently opted to conceal,

12 and to misrepresent, the true facts about the vehicles; and/or would not have

13 continued to drive their vehicles or would have taken other affirmative steps.

14 Plaintiffs' and the Indiana Class's actions were justified. New GM was in exclusive

15 control of the material facts and such facts were not known to the public, Plaintiffs,

16 or the Indiana Class.

17     495.  Because of the concealment and/or suppression of the facts, Plaintiffs

18 and the Indiana Class sustained damage because they own vehicles that diminished

19 in value as a result of New GM's concealment of, and failure to timely disclose, the

20 defects in the class vehicles and the quality issues engendered by New GM's

21 corporate policies.  Had they been aware of the defects that existed in the class

22 vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

23 New GM came into existence either would have paid less for their vehicles or would

24 not have purchased or leased them at all; and no Plaintiffs regardless of time of

25 purchase or lease would have maintained their vehicles.

26     496.  The value of all Indiana Class Members' vehicles has diminished as a

27 result of New GM's fraudulent concealment of the defects which have tarnished the

28 Corvette brand and made any reasonable consumer reluctant to purchase any of the

KNAPP,
PETERSEN
& CLARKE

-89-

1   class vehicles, let alone pay what otherwise would have been fair market value for

2   the vehicles.

3       497.   Accordingly, New GM is liable to the Indiana Class for damages in an

4   amount to be proven at trial.

5       498.   New GM's acts were done maliciously, oppressively, deliberately, with

6   intent to defraud, and in reckless disregard of Plaintiffs' and the Indiana Class's

7   rights and well-being to enrich New GM. New GM's conduct warrants an assessment

8   of punitive damages in an amount sufficient to deter such conduct in the future,

9   which amount is to be determined according to proof.

10                          **COUNT XXIX**

11     **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

12                  **(IND. CODE § 26-1-2-314)**

13     499.   Plaintiffs reallege and incorporate by reference all paragraphs as though

14   fully set forth herein.

15     500.   This claim is brought only on behalf of Indiana residents who are

16   members of the Nationwide Class (the "Indiana Class").

17     501.   New GM was a merchant with respect to motor vehicles within the

18   meaning of IND. CODE § 26-1-2-104(1).

19     502.   Under IND. CODE § 26-1-2-314, a warranty that the class vehicles

20   were in merchantable condition was implied by law in the transactions when

21   Plaintiffs purchased or leased their class vehicles from New GM on or after July 11,

22   2009.

23     503.   These vehicles, when sold and at all times thereafter, were not

24   merchantable and are not fit for the ordinary purpose for which cars are used.

25   Specifically, the class vehicles are inherently defective in that there are defects which

26   cause inordinate and unusual early wear and failure of engines.

27     504.   New GM was provided notice of these issues by numerous complaints

28   filed against it, internal investigations, and by numerous individual letters and

**KNAPP,
PETERSEN
& CLARKE**

-90-

1   communications sent by Plaintiffs and the Indiana Class.

2      505.   As a direct and proximate result of New GM's breach of the implied

3   warranty of merchantability, Plaintiffs and the Indiana Class members have been

4   damaged in an amount to be proven at trial.

5   <div align="center">**COUNT XXX**</div>

6   <div align="center">**THIRD-PARTY BENEFICIARY CLAIM**</div>

7      506.   Plaintiffs reallege and incorporate by reference all paragraphs as though

8   fully set forth herein.

9      507.   This claim is brought only on behalf of Class members who are Indiana

10   residents (the "Indiana Class").

11      508.   In the Sales Agreement through which New GM acquired substantially

12   all of the assets of New GM, New GM explicitly agreed as follows:

13         From and after the Closing, [New GM] shall comply with the

14         certification, reporting and recall requirements of the National Traffic

15         and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

16         Recall Enhancement, Accountability and Documentation Act, the Clean

17         Air Act, the California Health and Safety Code and similar Laws, in

18         each case, to the extent applicable in respect of vehicles and vehicle

19         parts manufactured or distributed by [Old GM].

20      509.   With the exception of the portion of the agreement that purports to

21   immunize New GM from its own independent misconduct with respect to cars and

22   parts made by Old GM, the Sales Agreement is a valid and binding contract.

23      510.   But for New GM's covenant to comply with the TREAD Act with

24   respect to cars and parts made by Old GM, the TREAD Act would have no

25   application to New GM with respect to those cars and parts. That is because the

26   TREAD Act on its face imposes reporting and recall obligations only on the

27   "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

28      511.   Because New GM agreed to comply with the TREAD Act with respect

**KNAPP,
PETERSEN
& CLARKE**

<div align="center">-91-</div>

1 to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

2 make quarterly submissions to NHTSA of "early warning reporting" data, including

3 incidents involving property damage, warranty claims, consumer complaints, and

4 field reports concerning failure, malfunction, lack of durability or other performance

5 issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

6 underlying records on which the early warning reports are based and all records

7 containing information on malfunctions that may be related to motor vehicle safety.

8 See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

9 or should know that a safety defect exists – including notifying NHTSA and

10 consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

11 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

12  512. Plaintiffs, as owners and lessors of vehicles and parts manufactured by

13 Old GM, are the clear intended beneficiaries of New GM's agreement to comply

14 with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

15 benefit of having a manufacturer responsible for monitoring the safety of their Old

16 GM vehicles and making certain that any known defects would be promptly

17 remedied.

18  513. Although the Sale Order which consummated New GM's purchase of

19 Old GM purported to give New GM immunity from claims concerning vehicles or

20 parts made by Old GM, the bankruptcy court recently ruled that provision to be

21 unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

22 conduct with respect to cars and parts made by Old GM. Therefore, that provision of

23 the Sale Order and related provisions of the Sale Agreement cannot be read to bar

24 Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

25 breaches of the promise it made in the Sale Agreement.

26  514. New GM breached its covenant to comply with the TREAD Act with

27 respect to the class vehicles, as it failed to take action to remediate the defect at any

28 time, up to the present.

**KNAPP,**
**PETERSEN**
**& CLARKE**

2411127.1  08000/01006

515. Plaintiffs and the Indiana Class were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the defect in class vehicles, the value of Old GM class vehicles has diminished in an amount to be determined at trial.

## COUNT XXXI

## UNJUST ENRICHMENT

516. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

517. This claim is brought on behalf of members of the Indiana Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Indiana Unjust Enrichment Class").

518. New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

519. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

520. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

521. Thus, all Indiana Unjust Enrichment Class Members conferred a benefit on New GM.

522. It is inequitable for New GM to retain these benefits.

KNAPP,
PETERSEN
& CLARKE

-93-

523.   Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

524.   New GM knowingly accepted the benefits of its unjust conduct.

525.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Massachusetts**

**COUNT XXXII**

**DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW (MASS. GEN. LAWS CH. 93A, § 1, et seq.)**

526.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

527.   This claim is brought only on behalf of Nationwide Class Members who are Massachusetts residents (the "Massachusetts Class").

528.   New GM, Plaintiffs, and the Massachusetts Class are "persons" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(a).

529.   New GM engaged in "trade" or "commerce" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(b).

530.   Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS ch. 93A, § 2. New GM both participated in misleading, false, or deceptive acts that violated the Massachusetts Act. By systematically devaluing safety and concealing defects in the class vehicles, New GM engaged in deceptive business practices prohibited by the Massachusetts Act.

531.   In the course of its business, New GM systematically devalued safety and concealed defects in class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact

1   with intent that others rely upon such concealment, suppression or omission, in

2   connection with the sale of class vehicles.

3        532.   From the date of its inception on July 11, 2009, New GM knew of many

4   serious defects affecting many models and years of class vehicles, because of (i) the

5   knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

6   investigations, and notifications from regulatory authorities; and (iii) ongoing

7   performance of New GM's TREAD Act obligations, as discussed above. New GM

8   became aware of other serious defects and systemic safety issues years ago, but

9   concealed all of that information.

10        533.   New GM was also aware that it valued cost-cutting over safety, selected

11   parts from the cheapest supplier regardless of quality, and actively discouraged

12   employees from finding and flagging known safety defects, and that this approach

13   would necessarily cause the existence of more defects in the vehicles it designed and

14   manufactured and the failure to disclose and remedy defects in all class vehicles.

15   New GM concealed this information as well.

16        534.   By failing to disclose and by actively concealing the many defects in

17   class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

18   presenting itself as a reputable manufacturer that valued safety and stood behind its

19   vehicles after they were sold, New GM engaged in unfair and deceptive business

20   practices in violation of the Massachusetts Act.

21        535.   In the course of New GM's business, it willfully failed to disclose and

22   actively concealed the dangerous risk posed by the many safety issues and serious

23   defects discussed above. New GM compounded the deception by repeatedly

24   asserting that class vehicles were safe, reliable, and of high quality, and by claiming

25   to be a reputable manufacturer that valued safety and stood behind its vehicles once

26   they are on the road.

27        536.   New GM's unfair or deceptive acts or practices were likely to and did in

28   fact deceive reasonable consumers, including Plaintiffs, about the true safety and

**KNAPP,
PETERSEN
& CLARKE**

-95-

reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

537.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Massachusetts Class.

538.   New GM knew or should have known that its conduct violated the Massachusetts Act.

539.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

540.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)    Intentionally concealed the foregoing from Plaintiffs; and/or

(c)    Made incomplete representations about the safety and reliability of the class vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

541.   Because New GM fraudulently concealed the many defects in the class vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

542.   New GM's systemic devaluation of safety and its concealment of

KNAPP,
PETERSEN
& CLARKE

-96-

defects in class vehicles were material to Plaintiffs and the Massachusetts Class. A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

543.   Plaintiffs and the Massachusetts Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. . For Plaintiffs who purchased Pre-Sale Defective Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the Massachusetts Act.

544.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Massachusetts Act. And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

545.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

546.   As a direct and proximate result of New GM's violations of the Massachusetts Act, Plaintiffs and the Massachusetts Class have suffered injury-in-fact and/or actual damage.

KNAPP,
PETERSEN
& CLARKE

2411127.1   08000/01006

547.   Pursuant to MASS. GEN. LAWS ch. 93A, § 9, Plaintiffs and the Massachusetts Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiff and each Massachusetts Class member. Because New GM's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff and each Massachusetts Class member, up to three times actual damages, but no less than two times actual damages.

548.   Plaintiffs also seek an order enjoining New GM's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

549.   On October 8, 2014, certain Plaintiffs sent a letter complying with MASS. GEN. LAWS ch. 93A, § 9(3). Because New GM failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Massachusetts Class are entitled.

## COUNT XXXIII

## FRAUD BY CONCEALMENT

550.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

551.   This claim is brought on behalf of Nationwide Class Members who are Massachusetts residents (the "Massachusetts Class").

552.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

553.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

554.   New GM concealed and suppressed material facts concerning the many serious defects plaguing class vehicles, and that it valued cost-cutting over safety and

KNAPP,
PETERSEN
& CLARKE

-98-

1   took steps to ensure that its employees did not reveal known safety defects to

2   regulators or consumers.

3      555.   New GM did so in order to boost confidence in its vehicles and falsely

4   assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

5   that New GM was a reputable manufacturer that stands behind its vehicles after they

6   are sold and that its vehicles are safe and reliable. The false representations were

7   material to consumers, both because they concerned the quality and safety of the

8   class vehicles and because the representations played a significant role in the value of

9   the vehicles.

10      556.   New GM had a duty to disclose the many defects in class vehicles

11   because they were known and/or accessible only to New GM, were in fact known to

12   New GM as of the time of its creation in 2009 and at every point thereafter, New GM

13   had superior knowledge and access to the facts, and New GM knew the facts were

14   not known to or reasonably discoverable by Plaintiffs and the Massachusetts Class.

15   New GM also had a duty to disclose because it made many general affirmative

16   representations about the safety, quality, and lack of defects in its vehicles, as set

17   forth above, which were misleading, deceptive and incomplete without the disclosure

18   of the additional facts set forth above regarding its actual safety record, safety

19   philosophy, and practices and the actual safety defects in its vehicles. Having

20   volunteered to provide information to Plaintiffs, GM had the duty to disclose not just

21   the partial truth, but the entire truth. These omitted and concealed facts were material

22   because they directly impact the value of the class vehicles purchased or leased by

23   Plaintiffs and the Massachusetts Class. Whether a manufacturer's products are safe

24   and reliable, and whether that manufacturer stands behind its products, are material

25   concerns to a consumer.

26      557.   New GM actively concealed and/or suppressed these material facts, in

27   whole or in part, to protect its profits and avoid recalls that would hurt the brand's

28   image and cost New GM money, and it did so at the expense of Plaintiffs and the

KNAPP,
PETERSEN
& CLARKE

2411127.1   08000/01006

1   Massachusetts Class.

2       558.    On information and belief, New GM has still not made full and adequate

3   disclosure and continues to defraud Plaintiffs and the Massachusetts Class and

4   conceal material information regarding defects that exist in class vehicles.

5       559.    Plaintiffs and the Massachusetts Class were unaware of these omitted

6   material facts and would not have acted as they did if they had known of the

7   concealed and/or suppressed facts, in that they would not have purchased cars

8   manufactured by New GM; and/or they would not have purchased cars manufactured

9   by Old GM in the time after New GM had come into existence and had fraudulently

10  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

11  not have continued to drive their vehicles or would have taken other affirmative

12  steps. Plaintiffs' and the Massachusetts Class's actions were justified. New GM was

13  in exclusive control of the material facts and such facts were not known to the public,

14  Plaintiffs, or the Massachusetts Class.

15      560.    Because of the concealment and/or suppression of the facts, Plaintiffs

16  and the Massachusetts Class sustained damage because they own vehicles that

17  diminished in value as a result of New GM's concealment of, and failure to timely

18  disclose, the serious defects in the class vehicles and the serious safety and quality

19  issues engendered by New GM's corporate policies. Had they been aware of the

20  many defects that existed in class vehicles, and the company's callous disregard for

21  safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after

22  New GM came into existence either would have paid less for their vehicles or would

23  not have purchased or leased them at all; and no Plaintiffs regardless of time of

24  purchase or lease would have maintained their vehicles.

25      561.    The value of all Massachusetts Class Members' vehicles has diminished

26  as a result of New GM's fraudulent concealment of the many defects and its systemic

27  safety issues which have greatly tarnished the GM brand and made any reasonable

28  consumer reluctant to purchase any of the class vehicles, let alone pay what

KNAPP,
PETERSEN
& CLARKE

-100-

2411127.1  08000/01006

1 | otherwise would have been fair market value for the vehicles.

2 |     562.   Accordingly, New GM is liable to the Massachusetts Class for damages

3 | in an amount to be proven at trial.

4 |     563.   New GM's acts were done maliciously, oppressively, deliberately, with

5 | intent to defraud, and in reckless disregard of Plaintiffs' and the Massachusetts

6 | Class's rights and well-being to enrich New GM. New GM's conduct warrants an

7 | assessment of punitive damages in an amount sufficient to deter such conduct in the

8 | future, which amount is to be determined according to proof.

9 | <div align="center">**COUNT XXXIV**</div>

10 | <div align="center">**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**</div>

11 | <div align="center">**(ALM GL. CH. 106, § 2-314)**</div>

12 |     564.   Plaintiffs reallege and incorporate by reference all paragraphs as though

13 | fully set forth herein.

14 |     565.   New GM was a merchant with respect to motor vehicles within the

15 | meaning of ALM GL CH. 106, § 2-104(1).

16 |     566.   Under ALM GL CH. 106, § 2-314, a warranty that the class vehicles

17 | were in merchantable condition was implied by law in the transactions when

18 | Plaintiffs purchased or leased their class vehicles from New GM on or after July 11,

19 | 2009.

20 |     567.   These vehicles, when sold and at all times thereafter, were not

21 | merchantable and are not fit for the ordinary purpose for which cars are used.

22 | Specifically, the class vehicles are inherently defective in that there are defects which

23 | cause inordinate and unusual early wear and failure of engines.

24 |     568.   New GM was provided notice of these issues by numerous complaints

25 | filed against it, internal investigations, and by numerous individual letters and

26 | communications sent by Plaintiffs and the Massachusetts Class.

27 |     569.   As a direct and proximate result of New GM's breach of the implied

28 | warranty of merchantability, Plaintiffs and the Massachusetts Class members have

**KNAPP,
PETERSEN
& CLARKE**

1 been damaged in an amount to be proven at trial.

2 **COUNT XXXV**

3 **THIRD-PARTY BENEFICIARY CLAIM**

4     570.   Plaintiffs reallege and incorporate by reference all paragraphs as though

5 fully set forth herein.

6     571.   This claim is brought only on behalf of Class members who are

7 Massachusetts residents (the "Massachusetts Class").

8     572.   In the Sales Agreement through which New GM acquired substantially

9 all of the assets of New GM, New GM explicitly agreed as follows:

10         From and after the Closing, [New GM] shall comply with the

11         certification, reporting and recall requirements of the National Traffic

12         and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

13         Recall Enhancement, Accountability and Documentation Act, the Clean

14         Air Act, the California Health and Safety Code and similar Laws, in

15         each case, to the extent applicable in respect of vehicles and vehicle

16         parts manufactured or distributed by [Old GM].

17     573.   With the exception of the portion of the agreement that purports to

18 immunize New GM from its own independent misconduct with respect to cars and

19 parts made by Old GM, the Sales Agreement is a valid and binding contract.

20     574.   But for New GM's covenant to comply with the TREAD Act with

21 respect to cars and parts made by Old GM, the TREAD Act would have no

22 application to New GM with respect to those cars and parts. That is because the

23 TREAD Act on its face imposes reporting and recall obligations only on the

24 "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

25     575.   Because New GM agreed to comply with the TREAD Act with respect

26 to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

27 make quarterly submissions to NHTSA of "early warning reporting" data, including

28 incidents involving death, injury, or property damage, warranty claims, consumer

KNAPP,
PETERSEN
& CLARKE

-102-

1  complaints, and field reports concerning failure, malfunction, lack of durability or

2  other performance issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b)

3  retain for five years all underlying records on which the early warning reports are

4  based and all records containing information on malfunctions that may be related to

5  motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate

6  remedial action if it knows or should know that a safety defect exists – including

7  notifying NHTSA and consumers and ordering a recall if necessary. See 49 U.S.C. §

8  30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

9       576.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

10  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

11  with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

12  benefit of having a manufacturer responsible for monitoring the safety of their Old

13  GM vehicles and making certain that any known safety defects would be promptly

14  remedied.

15       577.   Although the Sale Order which consummated New GM's purchase of

16  Old GM purported to give New GM immunity from claims concerning vehicles or

17  parts made by Old GM, the bankruptcy court recently ruled that provision to be

18  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

19  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

20  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

21  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

22  breaches of the promise it made in the Sale Agreement.

23       578.   New GM breached its covenant to comply with the TREAD Act with

24  respect to the class vehicles, as it failed to take action to remediate the defect at any

25  time, up to the present.

26       579.   Plaintiffs and the Massachusetts were damaged as a result of New GM's

27  breach. Because of New GM's failure to timely remedy the defect in class vehicles,

28  the value of Old GM class vehicles has diminished in an amount to be determined at

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

trial.

## **COUNT XXXVI**

### **UNJUST ENRICHMENT**

580.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

581.    This claim is brought on behalf of members of the Massachusetts Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Massachusetts Unjust Enrichment Class").

582.    New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

583.    New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the class vehicle, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

584.    With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

585.    Thus, all Massachusetts Unjust Enrichment Class Members conferred a benefit on New GM.

586.    It is inequitable for New GM to retain these benefits.

587.    Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

KNAPP,
PETERSEN
& CLARKE

-104-

588.   New GM knowingly accepted the benefits of its unjust conduct.

589.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Michigan**

<div align="center">

**COUNT XXXVII**

**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**

**(MICH. COMP. LAWS § 445.903, et seq.)**

</div>

590.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

591.   This claim is brought only on behalf of Nationwide Class Members who are Michigan residents (the "Michigan Class").

592.   Plaintiffs and the Michigan Class Members were "person[s]" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

593.   At all relevant times hereto, New GM was a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and (g).

594.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce ...." MICH. COMP. LAWS § 445.903(1). New GM engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested

<div align="center">

-105-

</div>

1  state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are

2  material to the transaction in light of representations of fact made in a positive

3  manner." MICH. COMP. LAWS § 445.903(1). By systematically devaluing safety

4  and concealing defects in the class vehicles, New GM participated in unfair,

5  deceptive, and unconscionable acts that violated the Michigan CPA.

6  595. In the course of its business, New GM systematically devalued safety

7  and concealed defects in the class vehicles as described herein and otherwise

8  engaged in activities with a tendency or capacity to deceive. New GM also engaged

9  in unlawful trade practices by employing deception, deceptive acts or practices,

10  fraud, misrepresentations, or concealment, suppression or omission of any material

11  fact with intent that others rely upon such concealment, suppression or omission, in

12  connection with the sale of class vehicles.

13  596. From the date of its inception on July 11, 2009, New GM knew of many

14  serious defects affecting many models and years of class vehicles, because of (i) the

15  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

16  investigations, and notifications from regulatory authorities; and (iii) ongoing

17  performance of New GM's TREAD Act obligations. New GM became aware of

18  other serious defects and systemic safety issues years ago, but concealed all of that

19  information.

20  597. New GM was also aware that it valued cost-cutting over safety, selected

21  parts from the cheapest supplier regardless of quality, and actively discouraged

22  employees from finding and flagging known safety defects, and that this approach

23  would necessarily cause the existence of more defects in the vehicles it designed and

24  manufactured and the failure to disclose and remedy defects in all the class vehicles.

25  New GM concealed this information as well.

26  598. By failing to disclose and by actively concealing the many defects in

27  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

28  presenting itself as a reputable manufacturer that valued safety and stood behind its

KNAPP,
PETERSEN
& CLARKE

-106-

2411127.1  08000/01006

1 vehicles after they were sold, New GM engaged in unfair, unconscionable, and

2 deceptive business practices in violation of the Michigan CPA.

3     599.   In the course of New GM's business, it willfully failed to disclose and

4 actively concealed the dangerous risk posed by the defects discussed above. New

5 GM compounded the deception by repeatedly asserting that class vehicles were safe,

6 reliable, and of high quality, and by claiming to be a reputable manufacturer that

7 valued safety and stood behind its vehicles once they are on the road.

8     600.   New GM's unfair or deceptive acts or practices were likely to and did in

9 fact deceive reasonable consumers, including Plaintiffs, about the true safety and

10 reliability of class vehicles, the quality of the GM brand, the devaluing of safety at

11 New GM, and the true value of the class vehicles.

12     601.   New GM intentionally and knowingly misrepresented material facts

13 regarding the class vehicles with an intent to mislead Plaintiffs and the Michigan

14 Class.

15     602.   New GM knew or should have known that its conduct violated the

16 Michigan CPA.

17     603.   As alleged above, New GM made material statements about the safety

18 and reliability of the class vehicles and the GM brand that were either false or

19 misleading.

20     604.   New GM owed Plaintiffs a duty to disclose the true safety and reliability

21 of the class vehicles and the devaluing of safety at New GM, because New GM:

22     (a)    Possessed exclusive knowledge that it valued cost-cutting over

23 safety, selected parts from the cheapest supplier regardless of quality, and actively

24 discouraged employees from finding and flagging known safety defects, and that this

25 approach would necessarily cause the existence of more defects in the vehicles it

26 designed and manufactured;

27     (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

28     (c)    Made incomplete representations about the safety and reliability

**KNAPP,
PETERSEN
& CLARKE**

-107-

of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

605.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

606.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Michigan Class.  A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

607.   Plaintiffs and the Michigan Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

608.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Michigan CPA.  And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

KNAPP,
PETERSEN
& CLARKE

-108-

1  As a direct and proximate result of New GM's violations of the Michigan CPA,

2  Plaintiffs and the Michigan Class have suffered injury-in-fact and/or actual damage.

3      609.   Plaintiffs seek injunctive relief to enjoin New GM from continuing its

4  unfair and deceptive acts; monetary relief against New GM measured as the greater

5  of (a) actual damages in an amount to be determined at trial and (b) statutory

6  damages in the amount of $250 for Plaintiffs and each Michigan Class member;

7  reasonable attorneys' fees; and any other just and proper relief available under

8  MICH. COMP. LAWS § 445.911.

9      610.   Plaintiffs also seek punitive damages against New GM because it

10  carried out despicable conduct with willful and conscious disregard of the rights and

11  safety of others.  New GM intentionally and willfully misrepresented the safety and

12  reliability of the class vehicles, deceived Plaintiffs and Michigan Class Members on

13  life-or-death matters, and concealed material facts that only they knew, all to avoid

14  the expense and public relations nightmare of correcting a deadly flaw in vehicles it

15  repeatedly promised Plaintiffs and Michigan Class Members were safe. New GM's

16  unlawful conduct constitutes malice, oppression, and fraud warranting punitive

17  damages.

18  <div align="center">**COUNT XXXVIII**</div>

19  <div align="center">**FRAUD BY CONCEALMENT**</div>

20      611.   Plaintiffs reallege and incorporate by reference all paragraphs as though

21  fully set forth herein.

22      612.   This claim is brought on behalf of Nationwide Class Members who are

23  Michigan residents (the "Michigan Class").

24      613.   New GM concealed and suppressed material facts concerning the

25  quality of the class vehicles.

26      614.   New GM concealed and suppressed material facts concerning the

27  culture of New GM – a culture characterized by an emphasis on cost-cutting, the

28  studious avoidance of quality issues, and a shoddy design process.

**KNAPP,
PETERSEN
& CLARKE**

-109-

2411127.1  08000/01006

615.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

616.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

617.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Michigan Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Michigan Class.

618.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Michigan Class.

KNAPP,
PETERSEN
& CLARKE

-110-

619.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Michigan Class and conceal material information regarding defects that exist in the class vehicles.

620.   Plaintiffs and the Michigan Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Michigan Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Michigan Class.

621.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Michigan Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies.  Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

622.   The value of all Michigan Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

623.   Accordingly, New GM is liable to the Michigan Class for damages in an

**KNAPP,
PETERSEN
& CLARKE**

-111-

2411127.1  08000/01006

1  amount to be proven at trial.

2  624. New GM's acts were done maliciously, oppressively, deliberately, with

3  intent to defraud, and in reckless disregard of Plaintiffs' and the Michigan Class's

4  rights and well-being to enrich New GM. New GM's conduct warrants an assessment

5  of punitive damages in an amount sufficient to deter such conduct in the future,

6  which amount is to be determined according to proof.

7  **COUNT XXXIX**

8  **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

9  **(MICH. COMP. LAWS § 440.2314)**

10  625. Plaintiffs reallege and incorporate by reference all paragraphs as though

11  fully set forth herein.

12  626. This claim is brought only on behalf of the Michigan Class.

13  627. New GM was a merchant with respect to motor vehicles within the

14  meaning of MICH. COMP. LAWS § 440.2314(1).

15  628. Under MICH. COMP. LAWS § 440.2314, a warranty that the class

16  vehicles were in merchantable condition was implied by law in the transactions when

17  Plaintiffs purchased or leased their class vehicles from New GM on or after July 11,

18  2009.

19  629. These vehicles, when sold and at all times thereafter, were not

20  merchantable and are not fit for the ordinary purpose for which cars are used.

21  Specifically, the class vehicles are inherently defective in that engines are subject to

22  unusual premature wear and catastrophic failure.

23  630. New GM was provided notice of these issues by numerous complaints

24  filed against it, internal investigations, and by numerous individual letters and

25  communications sent by Plaintiffs and the Michigan Class before or within a

26  reasonable amount of time after New GM issued the recall and the allegations of

27  vehicle defects became public.

28  631. As a direct and proximate result of New GM's breach of the implied

-112-

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

1 warranty of merchantability, Plaintiffs and the Michigan Class members have been

2 damaged in an amount to be proven at trial.

3 <div align="center">**COUNT XL**</div>

4 <div align="center">**THIRD-PARTY BENEFICIARY CLAIM**</div>

5 632. Plaintiffs reallege and incorporate by reference all paragraphs as though

6 fully set forth herein.

7 633. This claim is brought only on behalf of Class members who are

8 Michigan residents (the "Michigan Class").

9 634. In the Sales Agreement through which New GM acquired substantially

10 all of the assets of New GM, New GM explicitly agreed as follows:

11 From and after the Closing, [New GM] shall comply with the

12 certification, reporting and recall requirements of the National Traffic

13 and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

14 Recall Enhancement, Accountability and Documentation Act, the Clean

15 Air Act, the California Health and Safety Code and similar Laws, in

16 each case, to the extent applicable in respect of vehicles and vehicle

17 parts manufactured or distributed by [Old GM].

18 635. With the exception of the portion of the agreement that purports to

19 immunize New GM from its own independent misconduct with respect to cars and

20 parts made by Old GM, the Sales Agreement is a valid and binding contract.

21 636. But for New GM's covenant to comply with the TREAD Act with

22 respect to cars and parts made by Old GM, the TREAD Act would have no

23 application to New GM with respect to those cars and parts. That is because the

24 TREAD Act on its face imposes reporting and recall obligations only on the

25 "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

26 637. Because New GM agreed to comply with the TREAD Act with respect

27 to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

28 make quarterly submissions to NHTSA of "early warning reporting" data, including

**KNAPP,
PETERSEN
& CLARKE**

<div align="center">-113-</div>

1  incidents involving property damage, warranty claims, consumer complaints, and

2  field reports concerning failure, malfunction, lack of durability or other performance

3  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

4  underlying records on which the early warning reports are based and all records

5  containing information on malfunctions that may be related to motor vehicle safety.

6  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

7  or should know that a safety defect exists – including notifying NHTSA and

8  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

9  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

10  638.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by

11  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

12  with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

13  benefit of having a manufacturer responsible for monitoring the safety of their Old

14  GM vehicles and making certain that any known defects would be promptly

15  remedied.

16  639.  Although the Sale Order which consummated New GM's purchase of

17  Old GM purported to give New GM immunity from claims concerning vehicles or

18  parts made by Old GM, the bankruptcy court recently ruled that provision to be

19  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

20  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

21  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

22  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

23  breaches of the promise it made in the Sale Agreement.

24  640.  New GM breached its covenant to comply with the TREAD Act with

25  respect to the class vehicles, as it failed to take action to remediate the defects at any

26  time, up to the present.

27  641.  Plaintiffs and the Michigan Class were damaged as a result of New

28  GM's breach.  Because of New GM's failure to timely remedy the defect in class

**KNAPP,
PETERSEN
& CLARKE**

-114-

vehicles, the value of Old GM class vehicles has diminished in an amount to be determined at trial.

## COUNT XLI

### UNJUST ENRICHMENT

642. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

643. This claim is brought on behalf of members of the Michigan Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Michigan Unjust Enrichment Class").

644. New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

645. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued the class vehicles for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

646. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

647. Thus, all Michigan Unjust Enrichment Class Members conferred a benefit on New GM.

648. It is inequitable for New GM to retain these benefits.

649. Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

KNAPP,
PETERSEN
& CLARKE

-115-

2411127.1   08000/01006

650. New GM knowingly accepted the benefits of its unjust conduct. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Montana**

<div align="center">

**COUNT XLII**

**VIOLATION OF MONTANA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION ACT OF 1973**
**(MONT. CODE ANN. § 30-14-101, et seq.)**

</div>

651. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

652. This claim is brought only on behalf of Nationwide Class Members who are Montana residents (the "Montana Class").

653. New GM, Plaintiffs and the Montana Class are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

654. Montana Class Members are "consumer[s]" under MONT. CODE ANN. § 30-14- 102(1).

655. The sale or lease of the class vehicles to Montana Class Members occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and New GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

656. The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103. By systematically devaluing safety and concealing defects in the class vehicles, New GM engaged in unfair and deceptive acts or practices in violation of the Montana CPA.

657. In the course of its business, New GM systematically devalued safety and concealed defects in class vehicles as described herein and otherwise engaged in

2411127.1  08000/01006

1   activities with a tendency or capacity to deceive. New GM also engaged in unlawful

2   trade practices by employing deception, deceptive acts or practices, fraud,

3   misrepresentations, or concealment, suppression or omission of any material fact

4   with intent that others rely upon such concealment, suppression or omission, in

5   connection with the sale of the class vehicles.

6       658. From the date of its inception on July 11, 2009, New GM knew of many

7   serious defects affecting many models and years of the class vehicles, because of (i)

8   the knowledge of Old GM personnel who remained at New GM; (ii) continuous

9   reports, investigations, and notifications from regulatory authorities; and (iii)

10  ongoing performance of New GM's TREAD Act obligations. New GM became

11  aware of other serious defects and systemic safety issues years ago, but concealed all

12  of that information.

13      659. New GM was also aware that it valued cost-cutting over safety, selected

14  parts from the cheapest supplier regardless of quality, and actively discouraged

15  employees from finding and flagging known safety defects, and that this approach

16  would necessarily cause the existence of more defects in the vehicles it designed and

17  manufactured and the failure to disclose and remedy defects in all the class vehicles.

18  New GM concealed this information as well.

19      660. By failing to disclose and by actively concealing the many defects in the

20  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

21  presenting itself as a reputable manufacturer that valued safety and stood behind its

22  vehicles after they were sold, New GM engaged in unfair and deceptive business

23  practices in violation of the Montana CPA.

24      661. In the course of New GM's business, it willfully failed to disclose and

25  actively concealed the dangerous risk posed by the defects discussed above. New

26  GM compounded the deception by repeatedly asserting that the class vehicles were

27  safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

28  that valued safety and stood behind its vehicles once they are on the road.

**KNAPP,
PETERSEN
& CLARKE**

-117-

662. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

663. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles and the GM brand with an intent to mislead Plaintiffs and the Montana Class.

664. New GM knew or should have known that its conduct violated the Montana CPA.

665. As alleged above, New GM made material statements about the safety and reliability of the class vehicles that were either false or misleading.

666. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a) Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b) Intentionally concealed the foregoing from Plaintiffs; and/or

(c) Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

667. Because New GM fraudulently concealed the many defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

668. New GM's systemic devaluation of safety and its concealment of the

KNAPP,
PETERSEN
& CLARKE

-118-

1    defects in the class vehicles were material to Plaintiffs and the Montana Class. A

2    vehicle made by a reputable manufacturer of vehicles is worth more than an

3    otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

4    conceals defects rather than promptly remedies them.

5        669.  Plaintiffs and the Montana Class suffered ascertainable loss caused by

6    New GM's misrepresentations and its concealment of and failure to disclose material

7    information. Plaintiffs who purchased the class vehicles after the date of New GM's

8    inception either would have paid less for their vehicles or would not have purchased

9    or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result

10   of New GM's misconduct.

11       670.  Regardless of time of purchase or lease, no Plaintiffs would have

12   maintained and continued to drive their vehicles had they been aware of New GM's

13   misconduct. By contractually assuming TREAD Act responsibilities with respect to

14   Old GM class vehicles, New GM effectively assumed the role of manufacturer of

15   those vehicles because the TREAD Act on its face only applies to vehicle

16   manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

17   vehicle owners to refrain from unfair and deceptive acts or practices under the

18   Montana CPA. And, in any event, all class vehicle owners suffered ascertainable

19   loss in the form of the diminished value of their vehicles as a result of New GM's

20   deceptive and unfair acts and practices made in the course of New GM's business.

21       671.  As a direct and proximate result of New GM's violations of the

22   Montana CPA, Plaintiffs and the Montana Class have suffered injury-in-fact and/or

23   actual damage.

24       672.  Because the New GM's unlawful methods, acts, and practices have

25   caused Montana Class Members to suffer an ascertainable loss of money and

26   property, the Montana Class seeks from New GM actual damages or $500,

27   whichever is greater, discretionary treble damages, reasonable attorneys' fees, an

28   order enjoining New GM's unfair, unlawful, and/or deceptive practices, and any

**KNAPP,
PETERSEN
& CLARKE**

-119-

1 other relief the Court considers necessary or proper, under MONT. CODE ANN. §

2 30-14-133.

3 <div align="center">**COUNT XLIII**</div>

4 <div align="center">**FRAUD BY CONCEALMENT**</div>

5   673. Plaintiffs reallege and incorporate by reference all paragraphs as though

6 fully set forth herein.

7   674. This claim is brought on behalf of Nationwide Class Members who are

8 Montana residents (the "Montana Class").

9   675. New GM concealed and suppressed material facts concerning the

10 quality of the class vehicles.

11   676. New GM concealed and suppressed material facts concerning the

12 culture of New GM – a culture characterized by an emphasis on cost-cutting, the

13 studious avoidance of quality issues, and a shoddy design process.

14   677. New GM concealed and suppressed material facts concerning the

15 defects in the class vehicles, and that it valued cost-cutting over quality and took

16 steps to ensure that its employees did not reveal known defects to regulators or

17 consumers.

18   678. New GM did so in order to boost confidence in its vehicles and falsely

19 assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

20 that New GM was a reputable manufacturer that stands behind its vehicles after they

21 are sold and that its vehicles are safe and reliable.  The false representations were

22 material to consumers, both because they concerned the quality and safety of the

23 class vehicles and because the representations played a significant role in the value of

24 the vehicles.

25   679. New GM had a duty to disclose the defects in the class vehicles because

26 they were known and/or accessible only to New GM, were in fact known to New

27 GM as of the time of its creation in 2009 and at every point thereafter, New GM had

28 superior knowledge and access to the facts, and New GM knew the facts were not

**KNAPP,
PETERSEN
& CLARKE**

<div align="center">-120-</div>

known to or reasonably discoverable by Plaintiffs and the Montana Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Montana Class.

680. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Montana Class.

681. On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Montana Class and conceal material information regarding defects that exist in the class vehicles.

682. Plaintiffs and the Montana Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Montana Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Montana Class.

683. Because of the concealment and/or suppression of the facts, Plaintiffs and the Montana Class sustained damage because they own vehicles that diminished

-121-

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

684.   The value of all Montana Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

685.   Accordingly, New GM is liable to the Montana Class for damages in an amount to be proven at trial.

686.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Montana Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XLIV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MONT. CODE § 30-2-314)

687.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

688.   This claim is brought only on behalf of the Montana Class.

689.   New GM was a merchant with respect to motor vehicles under MONT. CODE § 30- 2-104(1).

690.   Under MONT. CODE § 30-2-314, a warranty that the class vehicles

KNAPP,
PETERSEN
& CLARKE

-122-

2411127.1  08000/01006

1   were in merchantable condition was implied by law in the transactions when
2   Plaintiffs purchased or leased their class vehicles from New GM on or after July 11,
3   2009.

4          691.   These vehicles, when sold and at all times thereafter, were not
5   merchantable and are not fit for the ordinary purpose for which cars are used.
6   Specifically, the class vehicles are inherently defective in that engines are subject to
7   unusual premature wear and catastrophic failure.

8          692.   New GM was provided notice of these issues by numerous complaints
9   filed against it, internal investigations, and by numerous individual letters and
10  communications sent by Plaintiffs and the Montana Class before or within a
11  reasonable amount of time after New GM issued the recall and the allegations of
12  vehicle defects became public.

13         693.   As a direct and proximate result of New GM's breach of the warranties
14  of merchantability, Plaintiffs and the Montana Class members have been damaged in
15  an amount to be proven at trial.

## COUNT XLV

## THIRD-PARTY BENEFICIARY CLAIM

18         694.   Plaintiffs reallege and incorporate by reference all paragraphs as though
19  fully set forth herein.

20         695.   This claim is brought only on behalf of Class members who are
21  Montana residents (the "Montana Class").

22         696.   In the Sales Agreement through which New GM acquired substantially
23  all of the assets of New GM, New GM explicitly agreed as follows:

24              From and after the Closing, [New GM] shall comply with the
25         certification, reporting and recall requirements of the National Traffic
26         and Motor Vehicle and Motor Vehicle Safety Act, the Transportation
27         Recall Enhancement, Accountability and Documentation Act, the Clean
28         Air Act, the California Health and Safety Code and similar Laws, in

KNAPP,
PETERSEN
& CLARKE

-123-

2411127.1   08000/01006

1   each case, to the extent applicable in respect of vehicles and vehicle

2   parts manufactured or distributed by [Old GM].

3   697.   With the exception of the portion of the agreement that purports to

4   immunize New GM from its own independent misconduct with respect to cars and

5   parts made by Old GM, the Sales Agreement is a valid and binding contract.

6   698.   But for New GM's covenant to comply with the TREAD Act with

7   respect to cars and parts made by Old GM, the TREAD Act would have no

8   application to New GM with respect to those cars and parts. That is because the

9   TREAD Act on its face imposes reporting and recall obligations only on the

10   "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

11   699.   Because New GM agreed to comply with the TREAD Act with respect

12   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

13   make quarterly submissions to NHTSA of "early warning reporting" data, including

14   incidents involving property damage, warranty claims, consumer complaints, and

15   field reports concerning failure, malfunction, lack of durability or other performance

16   issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

17   underlying records on which the early warning reports are based and all records

18   containing information on malfunctions that may be related to motor vehicle safety.

19   See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

20   or should know that a safety defect exists – including notifying NHTSA and

21   consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

22   573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

23   700.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

24   Old GM, are the clear intended beneficiaries of New GM's agreement to comply

25   with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

26   benefit of having a manufacturer responsible for monitoring the safety of their Old

27   GM vehicles and making certain that any known defects would be promptly

28   remedied.

KNAPP,
PETERSEN
& CLARKE

-124-

701.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

702.   New GM breached its covenant to comply with the TREAD Act with respect to class vehicles, as it failed to take action to remediate the defects at any time, up to the present.

703.   Plaintiffs and the Montana Class were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the defect in class vehicles, the value of the Old GM vehicles has diminished in an amount to be determined at trial.

## COUNT XLVI
## UNJUST ENRICHMENT

704.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

705.   This claim is brought on behalf of members of the Montana Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Montana Unjust Enrichment Class").

706.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

707.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New

**KNAPP, PETERSEN & CLARKE**

-125-

GM's concealment of defect issues that plagued the class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

708.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

709.   Thus, all Montana Unjust Enrichment Class Members conferred a benefit on New GM.

710.   It is inequitable for New GM to retain these benefits.

711.   Plaintiffs were not aware about the true facts about the class vehicles, and did not benefit from GM's conduct.

712.   New GM knowingly accepted the benefits of its unjust conduct.

713.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

New Jersey

COUNT XLVII

VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT

(N.J. STAT. ANN. § 56:8-1, et seq.)

714.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

715.   This claim is brought only on behalf of Nationwide Class Members who are New Jersey residents (the "New Jersey Class").

716.   Plaintiffs, the New Jersey Class, and New GM are or were "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

717.   New GM engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

KNAPP,
PETERSEN
& CLARKE

-126-

718.   The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby..." N.J. STAT. ANN. § 56:8-2. New GM engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Class Members rely upon their acts, concealment, suppression or omissions.

719.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

720.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD.

721.   Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

722.   New GM was also aware that it valued cost-cutting over safety, selected

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

723. By failing to disclose and by actively concealing the many defects in class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the New Jersey CFA.

724. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that the class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

725. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

726. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the New Jersey Class.

727. New GM knew or should have known that its conduct violated the New Jersey CFA.

728. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

KNAPP,
PETERSEN
& CLARKE

-128-

2411127.1  08000/01006

729.    New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)    Intentionally concealed the foregoing from Plaintiffs; and/or

(c)    Made incomplete representations about the safety and reliability of the class vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

730.    Because New GM fraudulently concealed the many defects in the class vehicles, resulting in negative publicity once the defects finally began to be disclosed, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

731.    New GM's systemic devaluation of safety and its concealment of defects in class vehicles were material to Plaintiffs and the New Jersey Class. A vehicle made by a reputable manufacturer is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

732.    Plaintiffs and the New Jersey Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased class vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their

1   vehicles or would not have purchased them but for New GM's violations of the New

2   Jersey CFA.

3       733.   Regardless of time of purchase or lease, no Plaintiffs would have

4   maintained and continued to drive their vehicles had they been aware of New GM's

5   misconduct. By contractually assuming TREAD Act responsibilities with respect to

6   Old GM vehicles, New GM effectively assumed the role of manufacturer of those

7   vehicles because the TREAD Act on its face only applies to vehicle manufacturers.

8   49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to

9   refrain from unfair and deceptive acts or practices under the New Jersey CFA. And,

10  in any event, all GM vehicle owners suffered ascertainable loss in the form of the

11  diminished value of their vehicles as a result of New GM's deceptive and unfair acts

12  and practices that occurred in the course of New GM's business.

13      734.   New GM's violations present a continuing risk to Plaintiffs as well as to

14  the general public. New GM's unlawful acts and practices complained of herein

15  affect the public interest.

16      735.   As a direct and proximate result of New GM's violations of the New

17  Jersey CFA, Plaintiffs and the New Jersey Class have suffered injury-in-fact and/or

18  actual damage.

19      736.   Plaintiffs and the New Jersey Class are entitled to recover legal and/or

20  equitable relief including an order enjoining New GM's unlawful conduct, treble

21  damages, costs and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-

22  19, and any other just and appropriate relief.

23                          **COUNT XLVIII**

24                      **FRAUD BY CONCEALMENT**

25      737.   Plaintiffs reallege and incorporate by reference all paragraphs as though

26  fully set forth herein.

27      738.   This claim is brought on behalf of Nationwide Class Members who are

28  New Jersey residents (the "New Jersey Class").

KNAPP,
PETERSEN
& CLARKE

-130-

2411127.1  08000/01006

739.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the class vehicles.

740.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

741.   New GM concealed and suppressed material facts concerning the many serious defects plaguing class vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

742.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

743.   New GM had a duty to disclose the many defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the New Jersey Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

1  because they directly impact the value of the class vehicles purchased or leased by

2  Plaintiffs and the New Jersey Class. Whether a manufacturer's products are safe and

3  reliable, and whether that manufacturer stands behind its products, are material

4  concerns to a consumer.

5      744.   New GM actively concealed and/or suppressed these material facts, in

6  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

7  image and cost New GM money, and it did so at the expense of Plaintiffs and the

8  New Jersey Class.

9      745.   On information and belief, New GM has still not made full and adequate

10  disclosure and continues to defraud Plaintiffs and the New Jersey Class and conceal

11  material information regarding defects that exist in the class vehicles.

12      746.   Plaintiffs and the New Jersey Class were unaware of these omitted

13  material facts and would not have acted as they did if they had known of the

14  concealed and/or suppressed facts, in that they would not have purchased cars

15  manufactured by New GM; and/or they would not have purchased cars manufactured

16  by Old GM in the time after New GM had come into existence and had fraudulently

17  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

18  not have continued to drive their vehicles or would have taken other affirmative

19  steps. Plaintiffs' and the New Jersey Class's actions were justified. New GM was in

20  exclusive control of the material facts and such facts were not known to the public,

21  Plaintiffs, or the New Jersey Class.

22      747.   Because of the concealment and/or suppression of the facts, Plaintiffs

23  and the New Jersey Class sustained damage because they own vehicles that

24  diminished in value as a result of New GM's concealment of, and failure to timely

25  disclose, the serious defects in the class vehicles and the serious safety and quality

26  issues engendered by New GM's corporate policies. Had they been aware of the

27  many defects that existed in the class vehicles, Plaintiffs who purchased new or

28  Certified Previously Owned vehicles after New GM came into existence either would

KNAPP,
PETERSEN
& CLARKE

-132-

have paid less for their vehicles or would not have purchased or leased them at all;

and no Plaintiffs regardless of time of purchase or lease would have maintained their

vehicles.

748.   The value of all New Jersey Class Members' vehicles has diminished as

a result of New GM's fraudulent concealment of the many defects and its systemic

safety issues which have greatly tarnished the class vehicles and made any

reasonable consumer reluctant to purchase any of the class vehicles, let alone pay

what otherwise would have been fair market value for the vehicles.

749.   Accordingly, New GM is liable to the New Jersey Class for damages in

an amount to be proven at trial.

750.   New GM's acts were done maliciously, oppressively, deliberately, with

intent to defraud, and in reckless disregard of Plaintiffs' and the New Jersey Class's

rights and well-being to enrich New GM. New GM's conduct warrants an assessment

of punitive damages in an amount sufficient to deter such conduct in the future,

which amount is to be determined according to proof.

**COUNT XLIX**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(N.J. STAT. ANN. § 12A:2-314)**

751.   Plaintiffs reallege and incorporate by reference all paragraphs as though

fully set forth herein.

752.   This claim is brought only on behalf of New Jersey Class.

753.   New GM was a merchant with respect to motor vehicles within the

meaning of N.J. STAT. ANN. § 12A:2-104(1).

754.   A warranty that the class vehicles were in merchantable condition was

implied by law under N.J. STAT. ANN. § 12A:2-104(1) in the transactions when

Plaintiffs purchased their class vehicles from New GM on or after July 11, 2009.

755.   These vehicles, when sold and at all times thereafter, were not

merchantable and are not fit for the ordinary purpose for which cars are used.

KNAPP,
PETERSEN
& CLARKE

-133-

1    Specifically, the class vehicles are inherently defective in that there are defects which

2    cause inordinate and unusual early wear and failure of engines.

3        756.   New GM was provided notice of these issues by numerous complaints

4    filed against it, internal investigations, and by numerous individual letters and

5    communications sent by Plaintiffs and the New Jersey Class.

6        757.   As a direct and proximate result of New GM's breach of the warranties

7    of merchantability, Plaintiffs and the New Jersey Class members have been damaged

8    in an amount to be proven at trial.

9                              **COUNT L**

10                  **THIRD-PARTY BENEFICIARY CLAIM**

11       758.   Plaintiffs reallege and incorporate by reference all paragraphs as though

12   fully set forth herein.

13       759.   This claim is brought only on behalf of Class members who are New

14   Jersey residents (the "New Jersey Class").

15       760.   In the Sales Agreement through which New GM acquired substantially

16   all of the assets of New GM, New GM explicitly agreed as follows:

17           From and after the Closing, [New GM] shall comply with the

18           certification, reporting and recall requirements of the National Traffic

19           and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

20           Recall Enhancement, Accountability and Documentation Act, the Clean

21           Air Act, the California Health and Safety Code and similar Laws, in

22           each case, to the extent applicable in respect of vehicles and vehicle

23           parts manufactured or distributed by [Old GM].

24       761.   With the exception of the portion of the agreement that purports to

25   immunize New GM from its own independent misconduct with respect to cars and

26   parts made by Old GM, the Sales Agreement is a valid and binding contract.

27       762.   But for New GM's covenant to comply with the TREAD Act with

28   respect to cars and parts made by Old GM, the TREAD Act would have no

KNAPP,
PETERSEN
& CLARKE

-134-

2411127.1  08000/01006

1   application to New GM with respect to those cars and parts. That is because the

2   TREAD Act on its face imposes reporting and recall obligations only on the

3   "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

4       763.   Because New GM agreed to comply with the TREAD Act with respect

5   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

6   make quarterly submissions to NHTSA of "early warning reporting" data, including

7   incidents involving death, injury, or property damage, warranty claims, consumer

8   complaints, and field reports concerning failure, malfunction, lack of durability or

9   other performance issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b)

10  retain for five years all underlying records on which the early warning reports are

11  based and all records containing information on malfunctions that may be related to

12  motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate

13  remedial action if it knows or should know that a safety defect exists – including

14  notifying NHTSA and consumers and ordering a recall if necessary. See 49 U.S.C. §

15  30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

16      764.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

17  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

18  with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

19  benefit of having a manufacturer responsible for monitoring the safety of their Old

20  GM vehicles and making certain that any known safety defects would be promptly

21  remedied.

22      765.   New GM breached its covenant to comply with the TREAD Act with

23  respect to the class vehicles, as it failed to take action to remediate the defect at any

24  time, up to the present.

25      766.   Although the Sale Order which consummated New GM's purchase of

26  Old GM purported to give New GM immunity from claims concerning vehicles or

27  parts made by Old GM, the bankruptcy court recently ruled that provision to be

28  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

KNAPP,
PETERSEN
& CLARKE

-135-

conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

767.   Plaintiffs and the Class members were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the defect in class vehicles, the value of Old GM class vehicles has diminished in an amount to be determined at trial.

<div align="center">

**COUNT LI**

**UNJUST ENRICHMENT**

</div>

768.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

769.   This claim is brought on behalf of members of the New Jersey Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "New Jersey Unjust Enrichment Class").

770.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

771.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

772.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM

1    benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

2    from its statements about the success of New GM.

3        773.    Thus, all New Jersey Unjust Enrichment Class Members conferred a

4    benefit on New GM.

5        774.    It is inequitable for New GM to retain these benefits.

6        775.    Plaintiffs were not aware about the true facts about the class vehicles,

7    and did not benefit from GM's conduct.

8        776.    New GM knowingly accepted the benefits of its unjust conduct.

9        777.    As a result of New GM's conduct, the amount of its unjust enrichment

10    should be disgorged, in an amount according to proof.

11    **Ohio**

12                              **COUNT LII**

13        **VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT**

14              **(OHIO REV. CODE ANN. § 1345.01, et seq.)**

15        778.    Plaintiffs reallege and incorporate by reference all paragraphs as though

16    fully set forth herein.

17        779.    This claim is brought only on behalf of Nationwide Class Members who

18    are Ohio residents (the "Ohio Class").

19        780.    New GM is a "supplier" as that term is defined in OHIO REV. CODE §

20    1345.01(C).

21        781.    Plaintiffs and the Ohio Class are "consumers" as that term is defined in

22    OHIO REV. CODE § 1345.01(D), and their purchases and leases of the class

23    vehicles are "consumer transactions" within the meaning of OHIO REV. CODE §

24    1345.01(A).

25        782.    The Ohio Consumer Sales Practices Act ("Ohio CSPA"), OHIO REV.

26    CODE § 1345.02, broadly prohibits unfair or deceptive acts or practices in

27    connection with a consumer transaction. Specifically, and without limitation of the

28    broad prohibition, the Act prohibits suppliers from representing (i) that goods have

KNAPP,
PETERSEN
& CLARKE

-137-

1     characteristics or uses or benefits which they do not have; (ii) that their goods are of

2     a particular quality or grade they are not; and (iii) the subject of a consumer

3     transaction has been supplied in accordance with a previous representation, if it has

4     not. *Id.* New GM's conduct as alleged above and below constitutes unfair and/or

5     deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02.

6          783.   By systematically devaluing safety and concealing defects in the class

7     vehicles, New GM engaged in deceptive business practices prohibited by the Ohio

8     CSPA, including: representing that class vehicles have characteristics, uses, benefits,

9     and qualities which they do not have; representing that class vehicles are of a

10    particular standard, quality, and grade when they are not; representing that the

11    subject of a transaction involving class vehicles has been supplied in accordance with

12    a previous representation when it has not; and engaging in other unfair or deceptive

13    acts or practices.

14          784.   New GM's actions as set forth above occurred in the conduct of trade or

15    commerce.

16          785.   In the course of its business, New GM systematically devalued safety

17    and concealed defects in the class vehicles as described herein and otherwise

18    engaged in activities with a tendency or capacity to deceive. New GM also engaged

19    in unlawful trade practices by employing deception, deceptive acts or practices,

20    fraud, misrepresentations, or concealment, suppression or omission of any material

21    fact with intent that others rely upon such concealment, suppression or omission, in

22    connection with the sale of class vehicles.

23          786.   From the date of its inception on July 11, 2009, New GM knew of many

24    serious defects affecting many models and years of the class vehicles, because of (i)

25    the knowledge of Old GM personnel who remained at New GM; (ii) continuous

26    reports, investigations, and notifications from regulatory authorities; and (iii)

27    ongoing performance of New GM's TREAD Act obligations. New GM became

28    aware of other serious defects and systemic safety issues years ago, but concealed all

**KNAPP,
PETERSEN
& CLARKE**

-138-

1  of that information.

2      787.  New GM was also aware that it valued cost-cutting over safety, selected

3  parts from the cheapest supplier regardless of quality, and actively discouraged

4  employees from finding and flagging known safety defects, and that this approach

5  would necessarily cause the existence of more defects in the vehicles it designed and

6  manufactured and the failure to disclose and remedy defects in all class vehicles.

7  New GM concealed this information as well.

8      788.  By failing to disclose and by actively concealing the many defects in the

9  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

10  presenting itself as a reputable manufacturer that valued safety and stood behind its

11  vehicles after they were sold, New GM engaged in unfair and deceptive business

12  practices in violation of the Ohio CSPA.

13      789.  In the course of New GM's business, it willfully failed to disclose and

14  actively concealed the dangerous risk posed by the defects discussed above.  New

15  GM compounded the deception by repeatedly asserting that the class vehicles were

16  safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

17  that valued safety and stood behind its vehicles once they are on the road.

18      790.  New GM's unfair or deceptive acts or practices were likely to and did in

19  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

20  reliability of class vehicles, the quality of the GM brand, the devaluing of safety at

21  New GM, and the true value of the class vehicles.

22      791.  New GM intentionally and knowingly misrepresented material facts

23  regarding the class vehicles with an intent to mislead Plaintiffs and the Ohio Class.

24      792.  New GM knew or should have known that its conduct violated the Ohio

25  CSPA.

26      793.  As alleged above, New GM made material statements about the safety

27  and reliability of the class vehicles and the GM brand that were either false or

28  misleading.

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

794.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

795.   Because New GM fraudulently concealed the many defects in the class vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

796.   New GM's systemic devaluation of safety and its concealment of defects in the class vehicles were material to Plaintiffs and the Ohio Class.  A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

797.   Plaintiffs and the Ohio Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

798.   Regardless of time of purchase or lease, no Plaintiffs would have

-140-

1   maintained and continued to drive their vehicles had they been aware of New GM's

2   misconduct. By contractually assuming TREAD Act responsibilities with respect to

3   Old GM class vehicles, New GM effectively assumed the role of manufacturer of

4   those vehicles because the TREAD Act on its face only applies to vehicle

5   manufacturers. 49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM

6   vehicle owners to refrain from unfair and deceptive acts or practices under the Ohio

7   CSPA.  And, in any event, all class vehicle owners suffered ascertainable loss in the

8   form of the diminished value of their vehicles as a result of New GM's deceptive and

9   unfair acts and practices that occurred in the course of New GM's business.

10      799.   As a direct and proximate result of New GM's violations of the Ohio

11   CSPA, Plaintiffs and the Ohio Class have suffered injury-in-fact and/or actual

12   damage.

13      800.   Ohio Class Members seek punitive damages against New GM because

14   New GM's conduct was egregious.  New GM misrepresented the safety and

15   reliability of class vehicles, concealed myriad defects in the class vehicles and the

16   systemic safety issues plaguing New GM, deceived Class Members on life-or-death

17   matters, and concealed material facts that only New GM knew, all to avoid the

18   expense and public relations nightmare of correcting the serious flaw in its culture

19   and in the class vehicles.  New GM's egregious conduct warrants punitive damages.

20      801.   Plaintiffs and the Ohio Class specifically do not allege herein a claim for

21   violation of OHIO REV. CODE § 1345.72.

22      802.   New GM was on notice pursuant to OHIO REV. CODE § 1345.09(B)

23   that its actions constituted unfair, deceptive, and unconscionable practices by, for

24   example, *Mason v. Mercedes-Benz USA, LLC*, 2005 Ohio App. LEXIS 3911, at *33

25   (S.D. Ohio Aug. 18, 2005), and *Lilly v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS

26   22114, at *17-18 (S.D. Ohio Apr. 21, 2006).  Further, New GM's conduct as alleged

27   above constitutes an act or practice previously declared to be deceptive or

28   unconscionable by rule adopted under division (B)(2) of section 1345.05 and

KNAPP,
PETERSEN
& CLARKE

-141-

2411127.1  08000/01006

1  previously determined by Ohio courts to violate Ohio's Consumer Sales Practices

2  Act and was committed after the decisions containing these determinations were

3  made available for public inspection under division (A)(3) of O.R.C. § 1345.05. The

4  applicable rule and Ohio court opinions include, but are not limited to: OAC 109:4-

5  3-16; *Mason v. Mercedes-Benz USA, LLC*, 2005 Ohio 4296 (Ohio Ct. App. 2005);

6  *Khouri v. Lewis*, Cuyahoga Common Pleas No. 342098 (2001); State ex rel.

7  *Montgomery v. Canterbury*, Franklin App. No. 98CVH054085 (2000); and

8  *Fribourg v. Vandemark* (July 26, 1999), Clermont App. No CA99-02-017,

9  unreported (PIF # 10001874).

10      803.   As a result of the foregoing wrongful conduct of New GM, Plaintiffs

11  and the Ohio Class have been damaged in an amount to be proven at trial, and seek

12  all just and proper remedies, including, but not limited to, actual and statutory

13  damages, an order enjoining New GM's deceptive and unfair conduct, treble

14  damages, court costs and reasonable attorneys' fees, pursuant to OHIO REV. CODE

15  § 1345.09, et seq.

16  <div align="center">**COUNT LIII**</div>

17  <div align="center">**FRAUD BY CONCEALMENT**</div>

18      804.   Plaintiffs reallege and incorporate by reference all paragraphs as though

19  fully set forth herein.

20      805.   This claim is brought on behalf of Nationwide Class Members who are

21  Ohio residents (the "Ohio Class").

22      806.   New GM concealed and suppressed material facts concerning the

23  quality of the class vehicles.

24      807.   New GM concealed and suppressed material facts concerning the

25  culture of New GM – a culture characterized by an emphasis on cost-cutting, the

26  studious avoidance of quality issues, and a shoddy design process.

27      808.   New GM concealed and suppressed material facts concerning the

28  defects in the class vehicles, and that it valued cost-cutting over quality and took

**KNAPP,
PETERSEN
& CLARKE**

<div align="center">-142-</div>

1 steps to ensure that its employees did not reveal known defects to regulators or

2 consumers.

3     809. New GM did so in order to boost confidence in its vehicles and falsely

4 assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

5 that New GM was a reputable manufacturer that stands behind its vehicles after they

6 are sold and that its vehicles are safe and reliable. The false representations were

7 material to consumers, both because they concerned the quality and safety of the

8 class vehicles and because the representations played a significant role in the value of

9 the vehicles.

10     810. New GM had a duty to disclose the defects in the class vehicles because

11 they were known and/or accessible only to New GM, were in fact known to New

12 GM as of the time of its creation in 2009 and at every point thereafter, New GM had

13 superior knowledge and access to the facts, and New GM knew the facts were not

14 known to or reasonably discoverable by Plaintiffs and the Ohio Class. New GM also

15 had a duty to disclose because it made many general affirmative representations

16 about the safety, quality, and lack of defects in its vehicles, as set forth above, which

17 were misleading, deceptive and incomplete without the disclosure of the additional

18 facts set forth above regarding defects in the class vehicles. Having volunteered to

19 provide information to Plaintiffs, GM had the duty to disclose not just the partial

20 truth, but the entire truth. These omitted and concealed facts were material because

21 they directly impact the value of the class vehicles purchased or leased by Plaintiffs

22 and the Ohio Class.

23     811. New GM actively concealed and/or suppressed these material facts, in

24 whole or in part, to protect its profits and avoid recalls that would hurt the brand's

25 image and cost New GM money, and it did so at the expense of Plaintiffs and the

26 Ohio Class.

27     812. On information and belief, New GM has still not made full and adequate

28 disclosure and continues to defraud Plaintiffs and the Ohio Class and conceal

**KNAPP,
PETERSEN
& CLARKE**

-143-

1    material information regarding defects that exist in the class vehicles.

2        813.   Plaintiffs and the Ohio Class were unaware of these omitted material

3 facts and would not have acted as they did if they had known of the concealed and/or

4 suppressed facts, in that they would not have purchased cars manufactured by New

5 GM; and/or they would not have purchased cars manufactured by Old GM in the

6 time after New GM had come into existence and had fraudulently opted to conceal,

7 and to misrepresent, the true facts about the vehicles; and/or would not have

8 continued to drive their vehicles or would have taken other affirmative steps.

9 Plaintiffs' and the Ohio Class's actions were justified. New GM was in exclusive

10 control of the material facts and such facts were not known to the public, Plaintiffs,

11 or the Ohio Class.

12        814.   Because of the concealment and/or suppression of the facts, Plaintiffs

13 and the Ohio Class sustained damage because they own vehicles that diminished in

14 value as a result of New GM's concealment of, and failure to timely disclose, the

15 defects in the class vehicles and the quality issues engendered by New GM's

16 corporate policies. Had they been aware of the defects that existed in the class

17 vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

18 New GM came into existence either would have paid less for their vehicles or would

19 not have purchased or leased them at all; and no Plaintiffs regardless of time of

20 purchase or lease would have maintained their vehicles.

21        815.   The value of all Ohio Class Members' vehicles has diminished as a

22 result of New GM's fraudulent concealment of the many defects which have

23 tarnished the Corvette brand and made any reasonable consumer reluctant to

24 purchase any of the class vehicles, let alone pay what otherwise would have been fair

25 market value for the vehicles.

26        816.   Accordingly, New GM is liable to the Ohio Class for damages in an

27 amount to be proven at trial.

28        817.   New GM's acts were done maliciously, oppressively, deliberately, with

**KNAPP,
PETERSEN
& CLARKE**

-144-

2411127.1  08000/01006

1  intent to defraud, and in reckless disregard of Plaintiffs' and the Ohio Class's rights

2  and well-being to enrich New GM. New GM's conduct warrants an assessment of

3  punitive damages in an amount sufficient to deter such conduct in the future, which

4  amount is to be determined according to proof.

### COUNT LIV

### IMPLIED WARRANTY IN TORT

7  818. Plaintiffs reallege and incorporate by reference all paragraphs as though

8  fully set forth herein.

9  819. Plaintiffs bring this claim only on behalf of the Ohio Class members.

10  820. The class vehicles sold or leased by New GM on or after July 11, 2009

11  contained a design defect, namely, a defective engine subject to premature wear and

12  catastrophic failure.

13  821. The design, manufacturing, and/or assembly defects existed at the time

14  the class vehicles containing the defective engine left the possession or control of

15  New GM.

16  822. Based upon the dangerous product defects, New GM failed to meet the

17  expectations of a reasonable consumer. The class vehicles failed their ordinary,

18  intended use because the engine is subject to premature unusual wear and

19  catastrophic failure.

20  823. The design defects in the vehicles were the direct and proximate cause

21  of economic damages to Plaintiffs, as well as damages incurred or to be incurred by

22  each of the Ohio Class members.

### COUNT LV

### THIRD-PARTY BENEFICIARY CLAIM

25  824. Plaintiffs reallege and incorporate by reference all paragraphs as though

26  fully set forth herein.

27  825. This claim is brought only on behalf of Class members who are Ohio

28  residents (the "Ohio Class").

826.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

827.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

828.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

829.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

**KNAPP, PETERSEN & CLARKE**

-146-

1    573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2    830.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

3 Old GM, are the clear intended beneficiaries of New GM's agreement to comply

4 with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

5 benefit of having a manufacturer responsible for monitoring the safety of their Old

6 GM vehicles and making certain that any known defects would be promptly

7 remedied.

8    831.   Although the Sale Order which consummated New GM's purchase of

9 Old GM purported to give New GM immunity from claims concerning vehicles or

10 parts made by Old GM, the bankruptcy court recently ruled that provision to be

11 unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

12 conduct with respect to cars and parts made by Old GM. Therefore, that provision of

13 the Sale Order and related provisions of the Sale Agreement cannot be read to bar

14 Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

15 breaches of the promise it made in the Sale Agreement.

16    832.   New GM breached its covenant to comply with the TREAD Act with

17 respect to the class vehicles, as it failed to take action to remediate the defects at any

18 time, up to the present.

19    833.   Plaintiffs and the Ohio Class were damaged as a result of New GM's

20 breach.  Because of New GM's failure to timely remedy the defect in the class

21 vehicles, the value of Old GM class vehicles has diminished in an amount to be

22 determined at trial.

23 <div align="center">**COUNT LVI**</div>

24 <div align="center">**UNJUST ENRICHMENT**</div>

25    834.   Plaintiffs reallege and incorporate by reference all paragraphs as though

26 fully set forth herein.

27    835.   This claim is brought on behalf of members of the Ohio Class who

28 purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

KNAPP,
PETERSEN
& CLARKE

1  after New GM came into existence, and who purchased or leased class vehicles in the

2  time period before New GM came into existence, which cars were still on the road

3  after New GM came into existence (the "Ohio Unjust Enrichment Class").

4     836.   New GM has received and retained a benefit from the Plaintiffs and

5  inequity has resulted.

6     837.   New GM has benefitted from selling and leasing defective cars,

7  including Certified Pre-Owned cars, whose value was artificially inflated by New

8  GM's concealment of defect issues that plagued class vehicles for more than they

9  were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

10  pay other costs.

11     838.   With respect to the class vehicles purchased before New GM came into

12  existence that were still on the road after New GM came into existence and as to

13  which New GM had unjustly and unlawfully determined not to recall, New GM

14  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

15  from its statements about the success of New GM.

16     839.   Thus, all Ohio Unjust Enrichment Class Members conferred a benefit on

17  New GM.

18     840.   It is inequitable for New GM to retain these benefits.

19     841.   Plaintiffs were not aware about the true facts about class vehicles, and

20  did not benefit from GM's conduct.

21     842.   New GM knowingly accepted the benefits of its unjust conduct.

22  As a result of New GM's conduct, the amount of its unjust enrichment should be

23  disgorged, in an amount according to proof.

24  ////

25  ////

26  ////

27  ////

28  ////

KNAPP,
PETERSEN
& CLARKE

-148-

2411127.1  08000/01006

**Pennsylvania**

### COUNT LVII

### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### (73 P.S. § 201-1, et seq.)

843.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

844.   This claim is brought only on behalf of Nationwide Class Members who are Pennsylvania residents (the "Pennsylvania Class").

845.   Plaintiffs purchased or leased their class vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

846.   All of the acts complained of herein were perpetrated by New GM in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

847.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have ... characteristics, .... Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade ... if they are of another;:" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

848.   New GM engaged in unlawful trade practices, including representing that class vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that class vehicles are of a particular standard and quality when they are not; advertising class vehicles with the intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

849.   In the course of its business, New GM systematically devalued safety

KNAPP,
PETERSEN
& CLARKE

1  and concealed defects in the class vehicles as described herein and otherwise

2  engaged in activities with a tendency or capacity to deceive. New GM also engaged

3  in unlawful trade practices by employing deception, deceptive acts or practices,

4  fraud, misrepresentations, or concealment, suppression or omission of any material

5  fact with intent that others rely upon such concealment, suppression or omission, in

6  connection with the sale of class vehicles.

7      850.  From the date of its inception on July 11, 2009, New GM knew of many

8  serious defects affecting many models and years of class vehicles, because of (i) the

9  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

10  investigations, and notifications from regulatory authorities; and (iii) ongoing

11  performance of New GM's TREAD Act obligations.  New GM became aware of

12  other serious defects and systemic safety issues years ago, but concealed all of that

13  information.

14      851.  New GM was also aware that it valued cost-cutting over safety, selected

15  parts from the cheapest supplier regardless of quality, and actively discouraged

16  employees from finding and flagging known safety defects, and that this approach

17  would necessarily cause the existence of more defects in the vehicles it designed and

18  manufactured and the failure to disclose and remedy defects in all class vehicles.

19  New GM concealed this information as well.

20      852.  By failing to disclose and by actively concealing the many defects in the

21  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

22  presenting itself as a reputable manufacturer that valued safety and stood behind its

23  vehicles after they were sold, New GM engaged in unfair and deceptive business

24  practices in violation of the Pennsylvania CPL.

25      853.  In the course of New GM's business, it willfully failed to disclose and

26  actively concealed the dangerous risk posed by the defects discussed above. New

27  GM compounded the deception by repeatedly asserting that the class vehicles were

28  safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

KNAPP,
PETERSEN
& CLARKE

-150-

2411127.1  08000/01006

1   that valued safety and stood behind its vehicles once they are on the road.

2       854. New GM's unfair or deceptive acts or practices were likely to and did in

3   fact deceive reasonable consumers, including Plaintiffs, about the true safety and

4   reliability of the class vehicles, the quality of the GM brand, the devaluing of safety

5   at New GM, and the true value of the class vehicles.

6       855. New GM intentionally and knowingly misrepresented material facts

7   regarding the class vehicles with an intent to mislead Plaintiffs and the Pennsylvania

8   Class.

9       856. New GM knew or should have known that its conduct violated the

10  Pennsylvania CPL.

11      857. As alleged above, New GM made material statements about the safety

12  and reliability of the class vehicles and the GM brand that were either false or

13  misleading.

14      858. New GM owed Plaintiffs a duty to disclose the true safety and reliability

15  of the class vehicles and the devaluing of safety at New GM, because New GM:

16          (a)     Possessed exclusive knowledge that it valued cost-cutting over

17  safety, selected parts from the cheapest supplier regardless of quality, and actively

18  discouraged employees from finding and flagging known safety defects, and that this

19  approach would necessarily cause the existence of more defects in the vehicles it

20  designed and manufactured;

21          (b)     Intentionally concealed the foregoing from Plaintiffs; and/or

22          (c)     Made incomplete representations about the safety and reliability

23  of the class vehicles generally, and the valve guide defects in particular, while

24  purposefully withholding material facts from Plaintiffs that contradicted these

25  representations.

26      859. Because New GM fraudulently concealed the defects in the class

27  vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

28  attached to those vehicles by New GM's conduct, they are now worth significantly

**KNAPP, PETERSEN & CLARKE**

-151-

1  less than they otherwise would be.

2  860.  New GM's systemic devaluation of safety and its concealment of the

3  defects in the class vehicles were material to Plaintiffs and the Pennsylvania Class.

4  A vehicle made by a reputable manufacturer of vehicles is worth more than an

5  otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

6  conceals defects rather than promptly remedies them.

7  861.  Plaintiffs and the Pennsylvania Class suffered ascertainable loss caused

8  by New GM's misrepresentations and its concealment of and failure to disclose

9  material information. Plaintiffs who purchased class vehicles after the date of New

10  GM's inception either would have paid less for their vehicles or would not have

11  purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain

12  as a result of New GM's misconduct.

13  862.  Regardless of time of purchase or lease, no Plaintiffs would have

14  maintained and continued to drive their vehicles had they been aware of New GM's

15  misconduct. By contractually assuming TREAD Act responsibilities with respect to

16  Old GM class vehicles, New GM effectively assumed the role of manufacturer of

17  those vehicles because the TREAD Act on its face only applies to vehicle

18  manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

19  vehicle owners to refrain from unfair and deceptive acts or practices under the

20  Pennsylvania CPL.  And, in any event, all class vehicle owners suffered ascertainable

21  loss in the form of the diminished value of their vehicles as a result of New GM's

22  deceptive and unfair acts and practices that occurred in the course of New GM's

23  business.

24  863.  As a direct and proximate result of New GM's violations of the

25  Pennsylvania CPL, Plaintiffs and the Pennsylvania Class have suffered injury-in-fact

26  and/or actual damage.

27  864.  New GM is liable to Plaintiffs and the Pennsylvania Class for treble

28  their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73

KNAPP,
PETERSEN
& CLARKE

-152-

1 P.S. § 201-9.2(a). Plaintiffs and the Pennsylvania Class are also entitled to an award

2 of punitive damages given that New GM's conduct was malicious, wanton, willful,

3 oppressive, or exhibited a reckless indifference to the rights of others.

4 <div align="center">**COUNT LVIII**</div>

5 <div align="center">**FRAUD BY CONCEALMENT**</div>

6 865. Plaintiffs reallege and incorporate by reference all paragraphs as though

7 fully set forth herein.

8 866. This claim is brought on behalf of Nationwide Class Members who are

9 Pennsylvania residents (the "Pennsylvania Class").

10 867. New GM concealed and suppressed material facts concerning the

11 quality of the class vehicles.

12 868. New GM concealed and suppressed material facts concerning the

13 culture of New GM - a culture characterized by an emphasis on cost-cutting, the

14 studious avoidance of quality issues, and a shoddy design process.

15 869. New GM concealed and suppressed material facts concerning the

16 defects in the class vehicles, and that it valued cost-cutting over quality and took

17 steps to ensure that its employees did not reveal known defects to regulators or

18 consumers.

19 870. New GM did so in order to boost confidence in its vehicles and falsely

20 assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

21 that New GM was a reputable manufacturer that stands behind its vehicles after they

22 are sold and that its vehicles are safe and reliable. The false representations were

23 material to consumers, both because they concerned the quality and safety of the

24 class vehicles and because the representations played a significant role in the value of

25 the vehicles.

26 871. New GM had a duty to disclose the defects in the class vehicles because

27 they were known and/or accessible only to New GM, were in fact known to New

28 GM as of the time of its creation in 2009 and at every point thereafter, New GM had

KNAPP,
PETERSEN
& CLARKE

-153-

2411127.1 08000/01006

superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Pennsylvania Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Pennsylvania Class.

872. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Pennsylvania Class.

873. On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Pennsylvania Class and conceal material information regarding defects that exist in the class vehicles.

874. Plaintiffs and the Pennsylvania Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Pennsylvania Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Pennsylvania Class.

875. Because of the concealment and/or suppression of the facts, Plaintiffs

KNAPP,
PETERSEN
& CLARKE

-154-

2411127.1  08000/01006

1   and the Pennsylvania Class sustained damage because they own vehicles that
2   diminished in value as a result of New GM's concealment of, and failure to timely
3   disclose, the defects in the class vehicles and the quality issues engendered by New
4   GM's corporate policies.  Had they been aware of the defects that existed in the class
5   vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after
6   New GM came into existence either would have paid less for their vehicles or would
7   not have purchased or leased them at all; and no Plaintiffs regardless of time of
8   purchase or lease would have maintained their vehicles.

9       876.   The value of all Pennsylvania Class Members' vehicles has diminished
10  as a result of New GM's fraudulent concealment of the defects which have tarnished
11  the Corvette brand and made any reasonable consumer reluctant to purchase any of
12  the class vehicles, let alone pay what otherwise would have been fair market value
13  for the vehicles.

14      877.   Accordingly, New GM is liable to the Pennsylvania Class for damages
15  in an amount to be proven at trial.

16      878.   New GM's acts were done maliciously, oppressively, deliberately, with
17  intent to defraud, and in reckless disregard of Plaintiffs' and the Pennsylvania Class's
18  rights and well-being to enrich New GM. New GM's conduct warrants an assessment
19  of punitive damages in an amount sufficient to deter such conduct in the future,
20  which amount is to be determined according to proof.

21                          **COUNT LIX**
22      **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
23              **(13 PA. CONS. STAT. ANN. § 2314)**

24      879.   Plaintiffs reallege and incorporate by reference all paragraphs as though
25  fully set forth herein.

26      880.   This claim is brought only on behalf of the Pennsylvania Class.

27      881.   New GM is s a merchant with respect to motor vehicles.

28      882.   A warranty that the class vehicles were in merchantable condition was

**KNAPP,**
**PETERSEN**
**& CLARKE**

-155-

1  implied by law when New GM sold or leased the class vehicles to Plaintiffs and the

2  Pennsylvania Class on or after July 11, 2009.

3      883.   These vehicles, when sold and at all times thereafter, were not in

4  merchantable condition and are not fit for the ordinary purpose for which cars are

5  used. Specifically, the class vehicles are inherently defective in that there are defects

6  in the engine which result in premature unusual wear and catastrophic failure.

7      884.   New GM was provided notice of these issues by numerous complaints

8  filed against it, by its own internal investigations, and by numerous individual letters

9  and communications sent by Plaintiffs and the Pennsylvania Class before or within a

10  reasonable amount of time after New GM issued the recall and the allegations of

11  vehicle defects became public.

12      885.   As a direct and proximate result of New GM's breach of the warranties

13  of merchantability, Plaintiffs and the Pennsylvania Class members have been

14  damaged in an amount to be proven at trial.

15  <div align="center">**COUNT LX**</div>

16  <div align="center">**THIRD-PARTY BENEFICIARY CLAIM**</div>

17      886.   Plaintiffs reallege and incorporate by reference all paragraphs as though

18  fully set forth herein.

19      887.   This claim is brought only on behalf of Class members who are

20  Pennsylvania residents (the "Pennsylvania Class").

21      888.   In the Sales Agreement through which New GM acquired substantially

22  all of the assets of New GM, New GM explicitly agreed as follows:

23      From and after the Closing, [New GM] shall comply with the

24      certification, reporting and recall requirements of the National Traffic

25      and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

26      Recall Enhancement, Accountability and Documentation Act, the Clean

27      Air Act, the California Health and Safety Code and similar Laws, in

28      each case, to the extent applicable in respect of vehicles and vehicle

KNAPP,
PETERSEN
& CLARKE

<div align="center">-156-</div>

2411127.1  08000/01006

1    parts manufactured or distributed by [Old GM].

2    889.   With the exception of the portion of the agreement that purports to

3    immunize New GM from its own independent misconduct with respect to cars and

4    parts made by Old GM, the Sales Agreement is a valid and binding contract.

5    890.   But for New GM's covenant to comply with the TREAD Act with

6    respect to cars and parts made by Old GM, the TREAD Act would have no

7    application to New GM with respect to those cars and parts. That is because the

8    TREAD Act on its face imposes reporting and recall obligations only on the

9    "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

10   891.   Because New GM agreed to comply with the TREAD Act with respect

11   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

12   make quarterly submissions to NHTSA of "early warning reporting" data, including

13   incidents involving property damage, warranty claims, consumer complaints, and

14   field reports concerning failure, malfunction, lack of durability or other performance

15   issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

16   underlying records on which the early warning reports are based and all records

17   containing information on malfunctions that may be related to motor vehicle safety.

18   See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

19   or should know that a safety defect exists - including notifying NHTSA and

20   consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

21   573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

22   892.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

23   Old GM, are the clear intended beneficiaries of New GM's agreement to comply

24   with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

25   benefit of having a manufacturer responsible for monitoring the safety of their Old

26   GM vehicles and making certain that any known defects would be promptly

27   remedied.

28   893.   Although the Sale Order which consummated New GM's purchase of

**KNAPP,
PETERSEN
& CLARKE**

-157-

1  Old GM purported to give New GM immunity from claims concerning vehicles or

2  parts made by Old GM, the bankruptcy court recently ruled that provision to be

3  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

4  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

5  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

6  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

7  breaches of the promise it made in the Sale Agreement.

8  894.  New GM breached its covenant to comply with the TREAD Act with

9  respect to the class vehicles, as it failed to take action to remediate the defects at any

10  time, up to the present.

11  895.  Plaintiffs and the Pennsylvania Class were damaged as a result of New

12  GM's breach.  Because of New GM's failure to timely remedy the defect in class

13  vehicles, the value of Old GM class vehicles has diminished in an amount to be

14  determined at trial.

### COUNT LXI

### UNJUST ENRICHMENT

17  896.  Plaintiffs reallege and incorporate by reference all paragraphs as though

18  fully set forth herein.

19  897.  This claim is brought on behalf of members of the Pennsylvania Class

20  who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time

21  period after New GM came into existence, and who purchased or leased class

22  vehicles in the time period before New GM came into existence, which cars were

23  still on the road after New GM came into existence (the "Pennsylvania Unjust

24  Enrichment Class").

25  898.  New GM has received and retained a benefit from the Plaintiffs and

26  inequity has resulted.

27  899.  New GM has benefitted from selling and leasing defective cars,

28  including Certified Pre-Owned cars, whose value was artificially inflated by New

**KNAPP,
PETERSEN
& CLARKE**

-158-

1  GM's concealment of defect issues that plagued class vehicles, for more than they

2  were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

3  pay other costs.

4      900.   With respect to the class vehicles purchased before New GM came into

5  existence that were still on the road after New GM came into existence and as to

6  which New GM had unjustly and unlawfully determined not to recall, New GM

7  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

8  from its statements about the success of New GM.

9      901.   Thus, all Pennsylvania Unjust Enrichment Class Members conferred a

10  benefit on New GM.

11      902.   It is inequitable for New GM to retain these benefits.

12      903.   Plaintiffs were not aware about the true facts about class vehicles, and

13  did not benefit from GM's conduct.

14      904.   New GM knowingly accepted the benefits of its unjust conduct.

15      905.   As a result of New GM's conduct, the amount of its unjust enrichment

16  should be disgorged, in an amount according to proof.

17  **South Dakota**

18  **COUNT LXII**

19  **VIOLATION OF THE SOUTH DAKOTA**

20  **DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW**

21  **(S.D. CODIFIED LAWS § 37-24-6)**

22      906.   Plaintiffs reallege and incorporate by reference all paragraphs as though

23  fully set forth herein.

24      907.   This claim is brought only on behalf of Nationwide Class Members who

25  are South Dakota residents (the "South Dakota Class").

26      908.   The South Dakota Deceptive Trade Practices and Consumer Protection

27  Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined

28  for relevant purposes to include "[k]nowingly and intentionally act, use, or employ

KNAPP,
PETERSEN
& CLARKE

-159-

1  any deceptive act or practice, fraud, false pretense, false promises, or

2  misrepresentation or to conceal, suppress, or omit any material fact in connection

3  with the sale or advertisement of any merchandise, regardless of whether any person

4  has in fact been misled, deceived, or damaged thereby [1" S.D. CODIFIED LAWS §

5  37-24-6(1). The conduct of New GM as set forth herein constitutes deceptive acts or

6  practices, fraud, false promises, misrepresentation, concealment, suppression and

7  omission of material facts in violation of S.D. Codified Laws § 37-24-6 and 37-24-

8  31, including, but not limited to, New GM's misrepresentations and omissions

9  regarding the safety and reliability of the class vehicles, and New GM's

10  misrepresentations concerning a host of other defects and safety issues.

11      909.   New GM's actions as set forth above occurred in the conduct of trade or

12  commerce.

13      910.   In the course of its business, New GM systematically devalued safety

14  and concealed defects in the class vehicles as described herein and otherwise

15  engaged in activities with a tendency or capacity to deceive. New GM also engaged

16  in unlawful trade practices by employing deception, deceptive acts or practices,

17  fraud, misrepresentations, or concealment, suppression or omission of any material

18  fact with intent that others rely upon such concealment, suppression or omission, in

19  connection with the sale of the class vehicles.

20      911.   From the date of its inception on July 11, 2009, New GM knew of many

21  defects affecting many models and years of the class vehicles, because of (i) the

22  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

23  investigations, and notifications from regulatory authorities; and (iii) ongoing

24  performance of New GM's TREAD Act obligations.   New GM became aware of

25  other serious defects and systemic safety issues years ago, but concealed all of that

26  information.

27      912.   New GM was also aware that it valued cost-cutting over safety, selected

28  parts from the cheapest supplier regardless of quality, and actively discouraged

KNAPP,
PETERSEN
& CLARKE

-160-

2411127.1  08000/01006

employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

913. By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the South Dakota CPL.

914. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many defects. New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

915. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

916. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the South Dakota Class.

917. New GM knew or should have known that its conduct violated the South Dakota CPL.

918. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

919. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

KNAPP,
PETERSEN
& CLARKE

-161-

(a)      Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)      Intentionally concealed the foregoing from Plaintiffs; and/or

(c)      Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

920.   Because New GM fraudulently concealed the many defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

921.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the South Dakota Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedying them.

922.   Plaintiffs and the South Dakota Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's conduct.

923.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to

Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the South Dakota CPL. And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

924.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

925.   As a direct and proximate result of New GM's violations of the South Dakota CPL, Plaintiffs and the South Dakota Class have suffered injury-in-fact and/or actual damage.

926.   Under S.D. CODIFIED LAWS § 37-24-31, Plaintiffs and the South Dakota Class are entitled to a recovery of their actual damages suffered as a result of New GM's acts and practices.

## COUNT LXIII
## FRAUD BY CONCEALMENT

927.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

928.   This claim is brought on behalf of Nationwide Class Members who are South Dakota residents (the "South Dakota Class").

929.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

930.   New GM concealed and suppressed material facts concerning the culture of New GM — a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

931.   New GM concealed and suppressed material facts concerning the many

1   serious defects plaguing the class vehicles, and that it valued cost-cutting over safety

2   and took steps to ensure that its employees did not reveal known safety defects to

3   regulators or consumers.

4   932.   New GM did so in order to boost confidence in its vehicles and falsely

5   assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

6   that New GM was a reputable manufacturer that stands behind its vehicles after they

7   are sold and that its vehicles are safe and reliable. The false representations were

8   material to consumers, both because they concerned the quality and safety of the

9   class vehicles and because the representations played a significant role in the value of

10   the vehicles.

11   933.   New GM had a duty to disclose the many defects in the class vehicles

12   because they were known and/or accessible only to New GM, were in fact known to

13   New GM as of the time of its creation in 2009 and at every point thereafter, New GM

14   had superior knowledge and access to the facts, and New GM knew the facts were

15   not known to or reasonably discoverable by Plaintiffs and the South Dakota Class.

16   New GM also had a duty to disclose because it made many general affirmative

17   representations about the safety, quality, and lack of defects in its vehicles, as set

18   forth above, which were misleading, deceptive and incomplete without the disclosure

19   of the additional facts set forth above regarding defects in the class vehicles. Having

20   volunteered to provide information to Plaintiffs, GM had the duty to disclose not just

21   the partial truth, but the entire truth. These omitted and concealed facts were material

22   because they directly impact the value of the class vehicles purchased or leased by

23   Plaintiffs and the South Dakota Class.  Whether a manufacturer's products are safe

24   and reliable, and whether that manufacturer stands behind its products, are material

25   concerns to a consumer.

26   934.   New GM actively concealed and/or suppressed these material facts, in

27   whole or in part, to protect its profits and avoid recalls that would hurt the brand's

28   image and cost New GM money, and it did so at the expense of Plaintiffs and the

KNAPP,
PETERSEN
& CLARKE

-164-

2411127.1  08000/01006

1   South Dakota Class.

2   935.   On information and belief, New GM has still not made full and adequate

3   disclosure and continues to defraud Plaintiffs and the South Dakota Class and

4   conceal material information regarding defects that exist in the class vehicles.

5   936.   Plaintiffs and the South Dakota Class were unaware of these omitted

6   material facts and would not have acted as they did if they had known of the

7   concealed and/or suppressed facts, in that they would not have purchased cars

8   manufactured by New GM; and/or they would not have purchased cars manufactured

9   by Old GM in the time after New GM had come into existence and had fraudulently

10  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

11  not have continued to drive their vehicles or would have taken other affirmative

12  steps. Plaintiffs' and the South Dakota Class's actions were justified. New GM was

13  in exclusive control of the material facts and such facts were not known to the public,

14  Plaintiffs, or the South Dakota Class.

15  937.   Because of the concealment and/or suppression of the facts, Plaintiffs

16  and the South Dakota Class sustained damage because they own vehicles that

17  diminished in value as a result of New GM's concealment of, and failure to timely

18  disclose, the serious defects in the class vehicles and the quality issues engendered

19  by New GM's corporate policies. Had they been aware of the defects that existed in

20  the class vehicles, Plaintiffs who purchased new or Certified Previously Owned

21  vehicles after New GM came into existence either would have paid less for their

22  vehicles or would not have purchased or leased them at all; and no Plaintiffs

23  regardless of time of purchase or lease would have maintained their vehicles.

24  938.   The value of all South Dakota Class Members' vehicles has diminished

25  as a result of New GM's fraudulent concealment of the defects which have greatly

26  tarnished the Corvette brand and made any reasonable consumer reluctant to

27  purchase any of the class vehicles, let alone pay what otherwise would have been fair

28  market value for the vehicles.

KNAPP,
PETERSEN
& CLARKE

-165-

1    939.   Accordingly, New GM is liable to the South Dakota Class for damages

2    in an amount to be proven at trial.

3    940.   New GM's acts were done maliciously, oppressively, deliberately, with

4    intent to defraud, and in reckless disregard of Plaintiffs' and the South Dakota

5    Class's rights and well-being to enrich New GM. New GM's conduct warrants an

6    assessment of punitive damages in an amount sufficient to deter such conduct in the

7    future, which amount is to be determined according to proof.

8    **COUNT LXIV**

9    **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (S.D.**

10   **CODIFIED LAWS § 57A-2-314)**

11   941.   Plaintiffs reallege and incorporate by reference all paragraphs as though

12   fully set forth herein.

13   942.   This claim is brought only on behalf of South Dakota residents who are

14   members of the Nationwide Class (the "South Dakota Class").

15   943.   New GM was a merchant with respect to motor vehicles.

16   944.   South Dakota law imposed a warranty that the class vehicles were in

17   merchantable condition when Plaintiffs and the South Dakota Class purchased or

18   leased their class vehicles from New GM on or after July 11, 2009.

19   945.   These vehicles, when sold and at all times thereafter, were not

20   merchantable and are not fit for the ordinary purpose for which cars are used.

21   Specifically, the class vehicles are inherently defective in that there are defects which

22   cause inordinate and unusual early wear and failure of engines.

23   946.   As a direct and proximate result of New GM's breach of the implied

24   warranty of merchantability, Plaintiffs and the South Dakota Class members have

25   been damaged in an amount to be proven at trial.

26   ////

27   ///

28   ////

KNAPP,
PETERSEN
& CLARKE

-166-

2411127.1   08000/01006

## COUNT LXV

## THIRD-PARTY BENEFICIARY CLAIM

947.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

948.   This claim is brought only on behalf of the Class members who are South Dakota residents (the "South Dakota Class").

949.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

950.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

951.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

952.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. See

KNAPP,
PETERSEN
& CLARKE

-167-

1  49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying

2  records on which the early warning reports are based and all records containing

3  information on malfunctions that may be related to motor vehicle safety. See 49

4  C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows or

5  should know that a safety defect exists — including notifying NHTSA and

6  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

7  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

8      953.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

9  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

10  with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the

11  benefit of having a manufacturer responsible for monitoring the safety of their Old

12  GM vehicles and making certain that any known safety defects would be promptly

13  remedied.

14      954.   Although the Sale Order which consummated New GM's purchase of

15  Old GM purported to give New GM immunity from claims concerning vehicles or

16  parts made by Old GM, the bankruptcy court recently ruled that provision to be

17  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

18  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

19  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

20  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

21  breaches of the promise it made in the Sale Agreement.

22      955.   New GM breached its covenant to comply with the TREAD Act with

23  respect to the class vehicles, as it failed to take action to remediate the defects at any

24  time, up to the present.

25      956.   Plaintiffs and the South Dakota Class were damaged as a result of New

26  GM's breach. Because of New GM's failure to timely remedy the defects in class

27  vehicle, the value of Old GM class vehicles has diminished in an amount to be

28  determined at trial.

KNAPP,
PETERSEN
& CLARKE

2411127.1   08000/01006

## COUNT LXVI

## UNJUST ENRICHMENT

957.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

958.   This claim is brought on behalf of members of the South Dakota Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "South Dakota Unjust Enrichment Class").

959.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

960.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued the class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

961.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

962.   Thus, all South Dakota Unjust Enrichment Class Members conferred a benefit on New GM.

963.   It is inequitable for New GM to retain these benefits.

964.   Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

965.   New GM knowingly accepted the benefits of its unjust conduct.

KNAPP,
PETERSEN
& CLARKE

-169-

966.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Tennessee**

<div align="center">

**COUNT LXVII**

**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT**

**(TENN. CODE ANN. § 47-18-101, et seq.)**

</div>

967.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

968.   This claim is brought only on behalf of Nationwide Class Members who are Tennessee residents (the "Tennessee Class").

969.   Plaintiffs and the Tennessee Class are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(2).

970.   New GM is a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

971.   New GM's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

972.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "Representing that goods or services have ... characteristics, [or] ... benefits ... that they do not have...;" "Representing that goods or services are of a particular standard, quality or grade... if they are of another;" and "Advertising goods or services with intent not to sell them as advertised." TENN. CODE ANN. § 47-18-104. New GM violated the Tennessee CPA by engaging in unfair or deceptive acts, including representing that class vehicles have characteristics or benefits that they did not have; representing that class vehicles are of a particular standard, quality, or grade when they are of another; and advertising class vehicles with intent not to sell them as advertised.

973.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

974.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

975.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all the class vehicles. New GM concealed this information as well.

976.   By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Tennessee CPA.

977.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above.  New GM compounded the deception by repeatedly asserting that the class vehicles were

KNAPP,
PETERSEN
& CLARKE

-171-

safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

978. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

979. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Tennessee Class.

980. New GM knew or should have known that its conduct violated the Tennessee CPA.

981. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

982. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a) Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b) Intentionally concealed the foregoing from Plaintiffs; and/or

(c) Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

983. Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

KNAPP,
PETERSEN
& CLARKE

-172-

attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

984.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Tennessee Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

985.   Plaintiffs and the Tennessee Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

986.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Tennessee CPA.  And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

987.   As a direct and proximate result of New GM's violations of the Tennessee CPA, Plaintiffs and the Tennessee Class have suffered injury-in-fact and/or actual damage.

988.   Pursuant to TENN. CODE § 47-18-109(a), Plaintiffs and the Tennessee

Class seek monetary relief against New GM measured as actual damages in an amount to be determined at trial, treble damages as a result of New GM's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

<p style="text-align:center"><b><u>COUNT LXVIII</u></b></p>

<p style="text-align:center"><b><u>FRAUD BY CONCEALMENT</u></b></p>

989.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

990.   This claim is brought on behalf of Nationwide Class Members who are Tennessee residents (the "Tennessee Class").

991.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

992.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

993.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

994.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable.  The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

995.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New

1   GM as of the time of its creation in 2009 and at every point thereafter, New GM had

2   superior knowledge and access to the facts, and New GM knew the facts were not

3   known to or reasonably discoverable by Plaintiffs and the Tennessee Class. New GM

4   also had a duty to disclose because it made many general affirmative representations

5   about the safety, quality, and lack of defects in its vehicles, as set forth above, which

6   were misleading, deceptive and incomplete without the disclosure of the additional

7   facts set forth above regarding defects in the class vehicles.  Having volunteered to

8   provide information to Plaintiffs, GM had the duty to disclose not just the partial

9   truth, but the entire truth. These omitted and concealed facts were material because

10  they directly impact the value of the class vehicles purchased or leased by Plaintiffs

11  and the Tennessee Class.

12      996.   New GM actively concealed and/or suppressed these material facts, in

13  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

14  image and cost New GM money, and it did so at the expense of Plaintiffs and the

15  Tennessee Class.

16      997.   On information and belief, New GM has still not made full and adequate

17  disclosure and continues to defraud Plaintiffs and the Tennessee Class and conceal

18  material information regarding defects that exist in the class vehicles.

19      998.   Plaintiffs and the Tennessee Class were unaware of these omitted

20  material facts and would not have acted as they did if they had known of the

21  concealed and/or suppressed facts, in that they would not have purchased cars

22  manufactured by New GM; and/or they would not have purchased cars manufactured

23  by Old GM in the time after New GM had come into existence and had fraudulently

24  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

25  not have continued to drive their vehicles or would have taken other affirmative

26  steps. Plaintiffs' and the Tennessee Class's actions were justified. New GM was in

27  exclusive control of the material facts and such facts were not known to the public,

28  Plaintiffs, or the Tennessee Class.

KNAPP,
PETERSEN
& CLARKE

-175-

2411127.1  08000/01006

999. Because of the concealment and/or suppression of the facts, Plaintiffs and the Tennessee Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

1000. The value of all Tennessee Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1001. Accordingly, New GM is liable to the Tennessee Class for damages in an amount to be proven at trial.

1002. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Tennessee Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT LXIX

## THIRD-PARTY BENEFICIARY CLAIM

1003. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1004. This claim is brought only on behalf of Class members who are Tennessee residents (the "Tennessee Class").

1005. In the Sales Agreement through which New GM acquired substantially

KNAPP,
PETERSEN
& CLARKE

-176-

2411127.1  08000/01006

1　all of the assets of New GM, New GM explicitly agreed as follows:

2　　　　From and after the Closing, [New GM] shall comply with the

3　　　certification, reporting and recall requirements of the National Traffic

4　　　and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

5　　　Recall Enhancement, Accountability and Documentation Act, the Clean

6　　　Air Act, the California Health and Safety Code and similar Laws, in

7　　　each case, to the extent applicable in respect of vehicles and vehicle

8　　　parts manufactured or distributed by [Old GM].

9　　1006. With the exception of the portion of the agreement that purports to

10　immunize New GM from its own independent misconduct with respect to cars and

11　parts made by Old GM, the Sales Agreement is a valid and binding contract.

12　　1007. But for New GM's covenant to comply with the TREAD Act with

13　respect to cars and parts made by Old GM, the TREAD Act would have no

14　application to New GM with respect to those cars and parts. That is because the

15　TREAD Act on its face imposes reporting and recall obligations only on the

16　"manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

17　　1008. Because New GM agreed to comply with the TREAD Act with respect

18　to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

19　make quarterly submissions to NHTSA of "early warning reporting" data, including

20　incidents involving property damage, warranty claims, consumer complaints, and

21　field reports concerning failure, malfunction, lack of durability or other performance

22　issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

23　underlying records on which the early warning reports are based and all records

24　containing information on malfunctions that may be related to motor vehicle safety.

25　See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

26　or should know that a safety defect exists – including notifying NHTSA and

27　consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

28　573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

KNAPP,
PETERSEN
& CLARKE

-177-

1009. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known defects would be promptly remedied.

1010. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

1011. New GM breached its covenant to comply with the TREAD Act with respect to the class vehicles, as it failed to take action to remediate the defects at any time, up to the present.

1012. Plaintiffs and the Tennessee Class were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the defect in class vehicles, the value of the Old GM class vehicles has diminished in an amount to be determined at trial.

**COUNT LXX**

**UNJUST ENRICHMENT**

1013. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1014. This claim is brought on behalf of members of the Tennessee Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the

KNAPP,
PETERSEN
& CLARKE

-178-

2411127.1  08000/01006

1 time period before New GM came into existence, which cars were still on the road

2 after New GM came into existence (the "Tennessee Unjust Enrichment Class").

3    1015. New GM has received and retained a benefit from the Plaintiffs and

4 inequity has resulted.

5    1016. New GM has benefitted from selling and leasing defective cars,

6 including Certified Pre-Owned cars, whose value was artificially inflated by New

7 GM's concealment of defect issues that plagued class vehicles, for more than they

8 were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

9 pay other costs.

10    1017. With respect to the class vehicles purchased before New GM came into

11 existence that were still on the road after New GM came into existence and as to

12 which New GM had unjustly and unlawfully determined not to recall, New GM

13 benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

14 from its statements about the success of New GM.

15    1018. Thus, all Tennessee Unjust Enrichment Class Members conferred a

16 benefit on New GM.

17    1019. It is inequitable for New GM to retain these benefits.

18    1020. Plaintiffs were not aware about the true facts about class vehicles, and

19 did not benefit from GM's conduct.

20    1021. New GM knowingly accepted the benefits of its unjust conduct.

21    1022. As a result of New GM's conduct, the amount of its unjust enrichment

22 should be disgorged, in an amount according to proof.

23 **Texas**

24                    **COUNT LXXI**

25 **VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES –**

26                    **CONSUMER PROTECTION ACT**

27            **(TEX. BUS. & COM. CODE §§ 17.41, et seq.)**

28    1023. Plaintiffs reallege and incorporate by reference all paragraphs as though

KNAPP,
PETERSEN
& CLARKE

-179-

1  fully set forth herein.

2       1024. This claim is brought only on behalf of Nationwide Class members who

3  are Texas residents (the "Texas Class").

4       1025. Plaintiffs and the Texas Class are individuals, partnerships and

5  corporations with assets of less than $25 million (or are controlled by corporations or

6  entities with less than $25 million in assets). See TEX. BUS. & COM. CODE §

7  17.41.

8       1026. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas

9  DTPA") provides a private right of action to a consumer where the consumer suffers

10  economic damage as the result of either (i) the use of false, misleading or deceptive

11  act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b);

12  (ii) "breach of an express or implied warranty" or (iii) "an unconscionable action or

13  course of action by any person." TEX. BUS. & COM. CODE § 17.50(a)(2) & (3).

14       1027. An "unconscionable action or course of action," means "an act or

15  practice which, to a consumer's detriment, takes advantage of the lack of knowledge,

16  ability, experience, or capacity of the consumer to a grossly unfair degree." TEX.

17  BUS. & COM. CODE § 17.45(5). As detailed herein, New GM has engaged in an

18  unconscionable action or course of action and thereby caused economic damages to

19  the Texas Class.

20       1028. New GM has also breached the implied warranty of merchantability

21  with respect to the Texas Class, as set forth in Texas Count III below.

22       1029. New GM has also violated the specifically enumerated provisions of

23  TEX. BUS. & COM. CODE § 17.46(b) by, at a minimum: (1) representing that the

24  class vehicles have characteristics, uses, benefits, and qualities which they do not

25  have; (2) representing that the class vehicles are of a particular standard, quality, and

26  grade when they are not; (3) advertising the class vehicles with the intent not to sell

27  them as advertised; (4) failing to disclose information concerning the class vehicles

28  with the intent to induce consumers to purchase or lease the class vehicles.

KNAPP,
PETERSEN
& CLARKE

-180-

2411127.1  08000/01006

1030. In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the class vehicles.

1031. From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

1032. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all the class vehicles. New GM concealed this information as well.

1033. By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive and unconscionable business practices in violation of the Texas DTPA.

1034. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that the class vehicles were

**KNAPP,**
**PETERSEN**
**& CLARKE**

-181-

1  safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

2  that valued safety and stood behind its vehicles once they are on the road.

3      1035. New GM's unfair or deceptive acts or practices were likely to and did in

4  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

5  reliability of the class vehicles, the quality of the GM brand, the devaluing of safety

6  at New GM, and the true value of the class vehicles.

7      1036. New GM intentionally and knowingly misrepresented material facts

8  regarding the class vehicles with the intent to mislead Plaintiffs and the Texas Class.

9      1037. New GM knew or should have known that its conduct violated the

10  Texas DTPA.

11      1038. As alleged above, New GM made material statements about the safety

12  and reliability of the class vehicles and the GM brand that were either false or

13  misleading.

14      1039. New GM owed Plaintiffs a duty to disclose the true safety and reliability

15  of the class vehicles and the devaluing of safety at New GM, because New GM:

16          (a)    Possessed exclusive knowledge that it valued cost-cutting over

17  safety, selected parts from the cheapest supplier regardless of quality, and actively

18  discouraged employees from finding and flagging known safety defects, and that this

19  approach would necessarily cause the existence of more defects in the vehicles it

20  designed and manufactured;

21          (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

22          (c)    Made incomplete representations about the safety and reliability

23  of the class vehicles generally, and the valve guide defects in particular, while

24  purposefully withholding material facts from Plaintiffs that contradicted these

25  representations.

26      1040. Because New GM fraudulently concealed the defects in the class

27  vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

28  attached to those vehicles by New GM's conduct, they are now worth significantly

KNAPP,
PETERSEN
& CLARKE

-182-

2411127.1  08000/01006

1  less than they otherwise would be.

2      1041. New GM's systemic devaluation of safety and its concealment of the

3  defects in the class vehicles were material to Plaintiffs and the Texas Class. A

4  vehicle made by a reputable manufacturer of vehicles is worth more than an

5  otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

6  conceals defects rather than promptly remedying them.

7      1042. Plaintiffs and the Texas Class suffered ascertainable loss caused by New

8  GM's misrepresentations and its concealment of and failure to disclose material

9  information. Plaintiffs who purchased class vehicles after the date of New GM's

10  inception either would have paid less for their vehicles or would not have purchased

11  or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result

12  of New GM's misconduct. Under TEX. BUS. & COM. CODE § 17.50(b)(1),

13  Plaintiffs are entitled to recover such economic damages.

14      1043. As set forth above and in Texas Count III below, New GM breached of

15  the implied warranty of merchantability with respect to the Texas Class, and engaged

16  in that unconscionable actions and unconscionable course of action "knowingly,"

17  which means it did so with "actual awareness of the fact of the act, practice,

18  condition, defect or failure constituting the breach of warranty" and with "actual

19  awareness, at the time of the act or practice complained of, of the falsity, deception

20  or unfairness of the act or practice giving rise to the consumer's claim...." TEX.

21  BUS. & COM. CODE § 17.45(9). Accordingly, pursuant to TEX. BUS. COM.

22  CODE § 17.50(b)(1), Members of the Texas Class are entitled to additional damages

23  in an amount up to three times the amount of economic damages.

24      1044. Regardless of time of purchase or lease, no Plaintiffs would have

25  maintained and continued to drive their vehicles. By contractually assuming TREAD

26  Act responsibilities with respect to Old GM class vehicles, New GM effectively

27  assumed the role of manufacturer of those vehicles because the TREAD Act on its

28  face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an

**KNAPP,
PETERSEN
& CLARKE**

-183-

1  ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or

2  practices under the Texas DTPA. And, in any event, all class vehicle owners

3  suffered ascertainable loss in the form of the diminished value of their vehicles as a

4  result of New GM's deceptive and unfair acts and practices that occurred in the

5  course of New GM's business.

6      1045. Pursuant to TEX. BUS. & COM. CODE § 17.50(a)(1) and (b), Plaintiffs

7  and the Texas Class seek monetary relief against New GM measured as actual

8  damages in an amount to be determined at trial, treble damages for New GM's

9  knowing violations of the Texas DTPA, and any other just and proper relief available

10  under the Texas DTPA.

11     1046. Alternatively, or additionally, pursuant to TEX. BUS. & COM. CODE §

12  17.50(b)(3) & (4), Plaintiffs and the Texas Class and all other Texas Class members

13  who purchased vehicles from New GM on or after July 11, 2009 are entitled to

14  disgorgement or to rescission or to any other relief necessary to restore any money or

15  property that was acquired from them based on violations of the Texas DTPA or

16  which the Court deems proper.

17     1047. The Texas Plaintiffs and the Texas Class also are also entitled to recover

18  court costs and reasonable and necessary attorneys' fees under § 17.50(d) of the

19  Texas DTPA.

20              **COUNT LXXII**

21           **FRAUD BY CONCEALMENT**

22     1048. Plaintiffs reallege and incorporate by reference all paragraphs as though

23  fully set forth herein.

24     1049. This claim is brought on behalf of Nationwide Class Members who are

25  Texas residents (the "Texas Class").

26     1050. New GM concealed and suppressed material facts concerning the

27  quality of the class vehicles.

28     1051. New GM concealed and suppressed material facts concerning the

KNAPP,
PETERSEN
& CLARKE

-184-

1  culture of New GM – a culture characterized by an emphasis on cost-cutting, the

2  studious avoidance of quality issues, and a shoddy design process.

3      1052. New GM concealed and suppressed material facts concerning the

4  defects in the class vehicles, and that it valued cost-cutting over quality and took

5  steps to ensure that its employees did not reveal known defects to regulators or

6  consumers.

7      1053. New GM did so in order to boost confidence in its vehicles and falsely

8  assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

9  that New GM was a reputable manufacturer that stands behind its vehicles after they

10 are sold and that its vehicles are safe and reliable. The false representations were

11 material to consumers, both because they concerned the quality and safety of the

12 class vehicles and because the representations played a significant role in the value of

13 the vehicles.

14     1054. New GM had a duty to disclose the defects in the class vehicles because

15 they were known and/or accessible only to New GM, were in fact known to New

16 GM as of the time of its creation in 2009 and at every point thereafter, New GM had

17 superior knowledge and access to the facts, and New GM knew the facts were not

18 known to or reasonably discoverable by Plaintiffs and the Texas Class. New GM also

19 had a duty to disclose because it made many general affirmative representations

20 about the safety, quality, and lack of defects in its vehicles, as set forth above, which

21 were misleading, deceptive and incomplete without the disclosure of the additional

22 facts set forth above regarding defects in the class vehicles. Having volunteered to

23 provide information to Plaintiffs, GM had the duty to disclose not just the partial

24 truth, but the entire truth. These omitted and concealed facts were material because

25 they directly impact the value of the class vehicles purchased or leased by Plaintiffs

26 and the Texas Class.

27     1055. New GM actively concealed and/or suppressed these material facts, in

28 whole or in part, to protect its profits and avoid recalls that would hurt the brand's

**KNAPP,
PETERSEN
& CLARKE**

-185-

2411127.1  08000/01006

1 image and cost New GM money, and it did so at the expense of Plaintiffs and the
2 Texas Class.

3      1056. On information and belief, New GM has still not made full and adequate
4 disclosure and continues to defraud Plaintiffs and the Texas Class and conceal
5 material information regarding defects that exist in the class vehicles.

6      1057. Plaintiffs and the Texas Class were unaware of these omitted material
7 facts and would not have acted as they did if they had known of the concealed and/or
8 suppressed facts, in that they would not have purchased cars manufactured by New
9 GM; and/or they would not have purchased cars manufactured by Old GM in the
10 time after New GM had come into existence and had fraudulently opted to conceal,
11 and to misrepresent, the true facts about the vehicles; and/or would not have
12 continued to drive their vehicles or would have taken other affirmative steps.
13 Plaintiffs' and the Texas Class's actions were justified. New GM was in exclusive
14 control of the material facts and such facts were not known to the public, Plaintiffs,
15 or the Texas Class.

16      1058. Because of the concealment and/or suppression of the facts, Plaintiffs
17 and the Texas Class sustained damage because they own vehicles that diminished in
18 value as a result of New GM's concealment of, and failure to timely disclose, the
19 defects in the class vehicles and the quality issues engendered by New GM's
20 corporate policies. Had they been aware of the defects that existed in the class
21 vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after
22 New GM came into existence either would have paid less for their vehicles or would
23 not have purchased or leased them at all; and no Plaintiffs regardless of time of
24 purchase or lease would have maintained their vehicles.

25      1059. The value of all Texas Class Members' vehicles has diminished as a
26 result of New GM's fraudulent concealment of the defects which have tarnished the
27 Corvette brand and made any reasonable consumer reluctant to purchase any of the
28 class vehicles, let alone pay what otherwise would have been fair market value for

KNAPP,
PETERSEN
& CLARKE

-186-

1 the vehicles.

2     1060. Accordingly, New GM is liable to the Texas Class for damages in an

3 amount to be proven at trial.

4     1061. New GM's acts were done maliciously, oppressively, deliberately, with

5 intent to defraud, and in reckless disregard of Plaintiffs' and the Texas Class's rights

6 and well-being to enrich New GM. New GM's conduct warrants an assessment of

7 punitive damages in an amount sufficient to deter such conduct in the future, which

8 amount is to be determined according to proof.

9 <div align="center">**COUNT LXXIII**</div>

10 <div align="center">**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**</div>

11 <div align="center">**(TEX. BUS. & COM. CODE § 2.314)**</div>

12     1062. Plaintiffs reallege and incorporate by reference all paragraphs as though

13 fully set forth herein.

14     1063. This claim is brought only on behalf of the Texas Class.

15     1064. New GM was a merchant with respect to motor vehicles under TEX.

16 BUS. & COM. CODE § 2.104.

17     1065. Under TEX. BUS. & COM. CODE § 2.314, a warranty that the class

18 vehicles were in merchantable condition was implied by law in the transaction in

19 which Plaintiffs and the Texas Class purchased or leased their class vehicles from

20 New GM on or after July 11, 2009.

21     1066. New GM impliedly warranted that the vehicles were of good and

22 merchantable quality and fit, and safe for their ordinary intended use – transporting

23 the driver and passengers in reasonable safety during normal operation, and without

24 unduly endangering them or members of the public.

25     1067. These vehicles, when sold and at all times thereafter, were not

26 merchantable and are not fit for the ordinary purpose for which cars are used.

27 Specifically, the class vehicles are inherently defective in that there are defects in the

28 engine that result in premature unusual wear and catastrophic failure.

**KNAPP, PETERSEN & CLARKE**

<div align="center">-187-</div>

1068. As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Texas Class have been damaged in an amount to be proven at trial.

## COUNT LXXIV
## THIRD-PARTY BENEFICIARY CLAIM

1069. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1070. This claim is brought only on behalf of Texas Class.

1071. In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

1072. With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

1073. But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

1074. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

1 | incidents involving property damage, warranty claims, consumer complaints, and
2 | field reports concerning failure, malfunction, lack of durability or other performance
3 | issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all
4 | underlying records on which the early warning reports are based and all records
5 | containing information on malfunctions that may be related to motor vehicle safety.
6 | See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows
7 | or should know that a safety defect exists – including notifying NHTSA and
8 | consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §
9 | 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

10 | 1075. Plaintiffs, as owners and lessors of vehicles and parts manufactured by
11 | Old GM, are the clear intended beneficiaries of New GM's agreement to comply
12 | with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the
13 | benefit of having a manufacturer responsible for monitoring the safety of their Old
14 | GM vehicles and making certain that any known defects would be promptly
15 | remedied.

16 | 1076. Although the Sale Order which consummated New GM's purchase of
17 | Old GM purported to give New GM immunity from claims concerning vehicles or
18 | parts made by Old GM, the bankruptcy court recently ruled that provision to be
19 | unenforceable, and that New GM can be held liable for its own post-bankruptcy sale
20 | conduct with respect to cars and parts made by Old GM. Therefore, that provision of
21 | the Sale Order and related provisions of the Sale Agreement cannot be read to bar
22 | Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale
23 | breaches of the promise it made in the Sale Agreement.

24 | 1077. New GM breached its covenant to comply with the TREAD Act with
25 | respect to the class vehicles, as it failed to take action to remediate the defects at any
26 | time, up to the present.

27 | 1078. Plaintiffs and the Texas Class were damaged as a result of New GM's
28 | breach.  Because of New GM's failure to timely remedy the defect in the class

KNAPP,
PETERSEN
& CLARKE

-189-

vehicles, the value of Old GM class vehicles has diminished in an amount to be
determined at trial.

## COUNT LXXV
## UNJUST ENRICHMENT

1079. Plaintiffs reallege and incorporate by reference all paragraphs as though
fully set forth herein.

1080. This claim is brought on behalf of members of the Texas Class who
purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period
after New GM came into existence, and who purchased or leased class vehicles in the
time period before New GM came into existence, which cars were still on the road
after New GM came into existence.

1081. New GM has received and retained a benefit from the Plaintiffs and
inequity has resulted.

1082. New GM has benefitted from selling and leasing defective cars,
including Certified Pre-Owned cars, whose value was artificially inflated by New
GM's concealment of defect issues that plagued class vehicles, for more than they
were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to
pay other costs.

1083. With respect to the class vehicles purchased before New GM came into
existence that were still on the road after New GM came into existence and as to
which New GM had unjustly and unlawfully determined not to recall, New GM
benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted
from its statements about the success of New GM.

1084. Thus, Texas Class members conferred a benefit on New GM.

1085. It is inequitable for New GM to retain these benefits.

1086. Plaintiffs were not aware about the true facts about class vehicles, and
did not benefit from GM's conduct.

1087. New GM knowingly accepted the benefits of its unjust conduct.

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

1088. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, Plaintiffs, individually and on behalf all others similarly situated, respectfully request that this Court enter a judgment against New GM and in favor of Plaintiffs and the Class, and grant the following relief:

1.     Determine that this action may be maintained as a class action and certify it as such under Rule 23(b)(2) and/or 23(b)(3), or alternatively certify all issues and claims that are appropriately certified under Rule 23(c)(4); and designate and appoint Plaintiffs as Class Representatives and Plaintiffs' chosen counsel as Class Counsel;

2.     Declare, adjudge, and decree the conduct of New GM as alleged herein to be unlawful, unfair, and/or deceptive and otherwise in violation of law, enjoin any such future conduct;

3.     Award Plaintiffs and Class Members actual, compensatory damages or, in the alternative, statutory damages, as proven at trial;

4.     Award Plaintiffs and the Class Members exemplary damages in such amount as proven;

5.     Award damages and other remedies, including, but not limited to, statutory penalties, as allowed by any applicable law, such as the consumer laws of the various states;

6.     Award Plaintiffs and the Class Members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest;

7.     Declare, adjudge and decree that Defendant violated 18 U.S.C. §§ 1962(c) and (d) by conducting the affairs of the RICO Enterprise through a pattern of racketeering activity and conspiring to do so;

8.     Award Plaintiffs and the nation-wide Class Members treble damages pursuant to 18 U.S.C. § 1964(c);

KNAPP,
PETERSEN
& CLARKE

<div align="center">

-191-

</div>

2411127.1  08000/01006

1       9.     Award Plaintiffs and Class Members restitution and/or disgorgement of

2  New GM's ill-gotten gains relating to the conduct described in this Complaint; and

3       10.    Award Plaintiffs and the Class Members such other further and different

4  relief as the case may require or as determined to be just, equitable, and proper by

5  this Court.

6

7  Dated:  December 22, 2015           KNAPP, PETERSEN & CLARKE

8

9                               By:  /s/ André E. Jardini

10                                André E. Jardini

                                 K.L. Myles

11                                 Attorneys for Plaintiffs

                                 WILLIAM D. PILGRIM, WALTER

12                                 GOETZMAN, CHAD REESE,

                                 JEROME E. PEDERSON, AHMED

13                                 J. CANNON,  MICHAEL

                                 FERNANDEZ, ROY HALEEN,

14                                 HOWARD KOPEL, ROBERT C.

                                 MURPHY, MIKE PETERS, MARC

15                                 ADAMS, KALEB ISLEY, KAI

                                 QIAN, MARK ROWE, DALLAS

16                                 WICKER, MIGUEL QUEZADA,

                                 CHRISTOPHER CONSTANTINE,

17                                 BRADLEY GRANT, JOHN

                                 PARSONS, ROBERT L. BRIGGS,

18                                 ROBERT EDGAR, ROGER L.

                                 BROWNING, LYLE DUNAHOO,

19                                 AARON CLARK, ALAN

                                 PELLETIER, EDWIN WILLIAM

20                                 KRAUSE, FRANK JUZSWIK, S.

                                 GARRETT BECK, DAVID

21                                 SHELDON, JAN ENGWIS, ADAM

                                 BALDUCCI, ALAN FERRER,

22                                 JARED KILEY, JEFF KOLODZI,

                                 DEREK VAN DEN TOP, MORRIS

23                                 SMITH, ANDRES FREY, SHAWN

                                 BAIN, JEFFREY M.

24                                 MILLSLAGLE, ROBERT GEISS,

                                 individuals, on behalf of themselves

25                                 and all others similarly situated

26

27  ////

28  ////

2411127.1  08000/01006

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in the above-captioned matter.

Dated:  December 22, 2015                     KNAPP, PETERSEN & CLARKE


By:  /s/ André E. Jardini
     André E. Jardini
     K.L. Myles
     Attorneys for Plaintiffs
     WILLIAM D. PILGRIM, WALTER
     GOETZMAN, CHAD REESE,
     JEROME E. PEDERSON, AHMED
     J. CANNON,  MICHAEL
     FERNANDEZ, ROY HALEEN,
     HOWARD KOPEL, ROBERT C.
     MURPHY, MIKE PETERS, MARC
     ADAMS, KALEB ISLEY, KAI
     QIAN, MARK ROWE, DALLAS
     WICKER, MIGUEL QUEZADA,
     CHRISTOPHER CONSTANTINE,
     BRADLEY GRANT, JOHN
     PARSONS, ROBERT L. BRIGGS,
     ROBERT EDGAR, ROGER L.
     BROWNING, LYLE DUNAHOO,
     AARON CLARK, ALAN
     PELLETIER, EDWIN WILLIAM
     KRAUSE, FRANK JUZSWIK, S.
     GARRETT BECK, DAVID
     SHELDON, JAN ENGWIS, ADAM
     BALDUCCI, ALAN FERRER,
     JARED KILEY, JEFF KOLODZI,
     DEREK VAN DEN TOP, MORRIS
     SMITH, ANDRES FREY, SHAWN
     BAIN, JEFFREY M.
     MILLSLAGLE, ROBERT GEISS,
     individuals, on behalf of themselves
     and all others similarly situated

KNAPP,
PETERSEN
& CLARKE

-193-

2411127.1   08000/01006