# Exhibit  J-1

AO 446 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

WILLIAM D. PILGRIM, (SEE ATTACHED SHEET FOR ADDITIONAL PLAINTIFFS)

*Plaintiff(s)*

v.

Civil Action No. 2:15-cv-08047 JFW(Ex)

GENERAL MOTORS COMPANY LLC, and DOES 1 THROUGH 50, INCLUSIVE

*Defendant(s)*

## SUMMONS IN A CIVIL ACTION

> **GM-LEGAL**
>
> OCT 2 3 2015
>
> **SERVICE OF PROCESS**
> RENAISSANCE CENTER-DETROIT

To: *(Defendant's name and address)*
GENERAL MOTORS COMPANY LLC
300 Renaissance Center
Detroit, MI 48265

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Andre E. Jardini, Esq.
KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
Glendale, CA 91203

L. J. HOFFMAN
Authorized Agent For Process
General Motors - Detroit
By Lisa Hoffman

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 10/14/2015

*Signature of Clerk or Deputy Clerk*





American LegalNet, Inc.
www.FormsWorkFlow.com

2:15-cv-08047 JFW(Ex)

Attachment to:

United States District Court, Central District Of California
**SUMMONS IN A CIVIL ACTION**

List of Plaintiffs (continued from first page)

WALTER GOETZMAN, JEROME E. PEDERSON, MICHAEL FERNANDEZ,
ROY HALEEN, HOWARD KOPEL, ROBERT C. MURPHY, MIKE PETERS,
CHRISTOPHER CONSTANTINE, JOHN PARSONS, LYLE DUNAHOO,
AARON CLARK, EDWIN WILLIAM KRAUSE, DAVID SHELDON, JARED
KILEY, JEFF KOLODZI, MORRIS SMITH, ANDRES FREY, individuals, on
behalf of themselves and all others similarly situated

1  André E. Jardini, Bar No. 71335
   aej@kpclegal.com
2  K.L. Myles, Bar No. 243272
   klm@kpclegal.com
3  KNAPP, PETERSEN & CLARKE
   550 North Brand Boulevard, Suite 1500
4  Glendale, California 91203-1922
   Telephone: (818) 547-5000
5  Facsimile: (818) 547-5329

6  Attorneys for Plaintiffs
   WILLIAM D. PILGRIM, WALTER GOETZMAN,
7  JEROME E. PEDERSON, MICHAEL
   FERNANDEZ, ROY HALEEN, HOWARD
8  KOPEL, ROBERT C. MURPHY, MIKE PETERS,
   CHRISTOPHER CONSTANTINE, JOHN
9  PARSONS, LYLE DUNAHOO, AARON CLARK,
   EDWIN WILLIAM KRAUSE, DAVID
10 SHELDON, JARED KILEY, JEFF KOLODZI,
   MORRIS SMITH, ANDRES FREY, individuals, on
11 behalf of themselves and all others similarly situated

12                  UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15 WILLIAM D. PILGRIM, WALTER          ) NO.
   GOETZMAN, JEROME E. PEDERSON,       )
16 MICHAEL FERNANDEZ, ROY              ) CLASS ACTION COMPLAINT FOR
   HALEEN, HOWARD KOPEL, ROBERT        ) DEFECTIVE VEHICLES
17 C. MURPHY, MIKE PETERS,             )
   CHRISTOPHER CONSTANTINE, JOHN       ) DEMAND FOR JURY TRIAL
18 PARSONS, LYLE DUNAHOO, AARON        )
   CLARK, EDWIN WILLIAM KRAUSE,        )
19 DAVID SHELDON, JARED KILEY,         )
   JEFF KOLODZI, MORRIS SMITH,         )
20 ANDRES FREY, individuals, on behalf of )
   themselves and all others similarly    )
21 situated,                           )
                                        )
22              Plaintiffs,            )
            v.                          )
23                                      )
   GENERAL MOTORS COMPANY LLC          )
24 and DOES 1 through 50, inclusive,   )
                                        )
25              Defendants.            )
                                        )
26

27

KNAPP,
PETERSEN
& CLARKE  28

                              -1-

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 2

PARTIES ............................................................................................................ 4

    Plaintiffs ........................................................................................................ 4

JURISDICTION ................................................................................................. 8

VENUE .............................................................................................................. 8

CLASS ALLEGATIONS .................................................................................... 8

    A.    The Nationwide Class ................................................................... 8

    B.    State Law Classes ......................................................................... 9

    C.    The Classes and Subclasses Meet Rule 23 Requirements .................. 10

CLAIMS FOR RELIEF ..................................................................................... 12

COUNT I
    VIOLATION OF RACKETEER INFLUENCED AND
    CORRUPT ORGANIZATIONS ACT ("RICO") 18 U.S.C.
    Section 1961, et seq. .................................................................................. 12

COUNT II
    VIOLATION OF THE MAGNUSON-MOSS WARRANTY
    ACT (15 U.S.C. Section 2301, et seq.) ..................................................... 16

COUNT III
    NEGLIGENCE ........................................................................................... 19

COUNT IV
    VIOLATION OF ALABAMA DECEPTIVE TRADE
    PRACTICES ACT (ALA. CODE § 8-19-1, et seq.) .................................... 21

COUNT V
    FRAUD BY CONCEALMENT ................................................................... 25

COUNT VI
    FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
    CLAIM AGAINST OLD GM IN BANKRUPTCY ..................................... 28

COUNT VII
    THIRD-PARTY BENEFICIARY CLAIM ................................................. 31

COUNT VIII
    UNJUST ENRICHMENT ........................................................................... 33

KNAPP,
PETERSEN
& CLARKE

# TABLE OF CONTENTS (cont.)

Page

COUNT NO. IX
VIOLATIONS OF THE CONSUMER FRAUD ACT (Arizona
Rev. Stat. § 44-1521, et seq.)............................................................ 34

COUNT X
FRAUD BY CONCEALMENT ........................................................ 38

COUNT XI
FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
CLAIM AGAINST OLD GM IN BANKRUPTCY................................. 40

COUNT XII
THIRD-PARTY BENEFICIARY CLAIM ...................................... 43

COUNT XIII
UNJUST ENRICHMENT .............................................................. 45

COUNT XIV
VIOLATIONS OF THE CONSUMER LEGAL REMEDIES
ACT (Cal. Civ. Code § 1750, et seq.)............................................ 46

COUNT XV
VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION
LAW (Cal. Bus. & Prof. Code § 17200, et seq.) ............................ 51

COUNT XVI
FRAUD BY CONCEALMENT ........................................................ 55

COUNT XVII
VIOLATION OF SONG-BEVERLY CONSUMER
WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY
OF MERCHANTABILITY (Cal. Civ. Code §§ 1791.1 & 1792)................. 58

COUNT XVIII
NEGLIGENT FAILURE TO RECALL ........................................... 60

COUNT XIX
FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
CLAIM AGAINST OLD GM IN BANKRUPTCY................................. 61

COUNT XX
THIRD-PARTY BENEFICIARY CLAIM ...................................... 63

COUNT. XXI
UNJUST ENRICHMENT .............................................................. 65

COUNT XXII
VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE
TRADE PRACTICES ACT (FLA. STAT. § 501.201, et seq.).................. 66

COUNT XXIII
FRAUD BY CONCEALMENT ........................................................ 70

KNAPP,
PETERSEN
& CLARKE

# TABLE OF CONTENTS (cont.)

Page

COUNT NO. XXIV
    FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
    CLAIM AGAINST OLD GM IN BANKRUPTCY ..................................... 73

COUNT XXV
    THIRD-PARTY BENEFICIARY CLAIM ............................................. 75

COUNT XXVI
    UNJUST ENRICHMENT ................................................................. 77

COUNT XXVII
    VIOLATION OF ILLINOIS CONSUMER FRAUD AND
    DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1,
    et seq. and 720 ILCS 295/1A) ..................................................... 79

COUNT XXVIII
    FRAUD BY CONCEALMENT ......................................................... 83

COUNT XXIX
    FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
    CLAIM AGAINST OLD GM IN BANKRUPTCY ..................................... 85

COUNT XXX
    THIRD-PARTY BENEFICIARY CLAIM ............................................. 88

COUNT XXXI
    UNJUST ENRICHMENT ................................................................. 90

COUNT XXXII
    VIOLATION OF THE INDIANA DECEPTIVE CONSUMER
    SALES ACT (IND. CODE § 24-5-0.5-3) ....................................... 91

COUNT XXXIII
    FRAUD BY CONCEALMENT ......................................................... 95

COUNT XXXIV
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (IND. CODE § 26-1-2-314) ............................ 98

COUNT XXXV
    FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
    CLAIM AGAINST OLD GM IN BANKRUPTCY ..................................... 99

COUNT XXXVI
    THIRD-PARTY BENEFICIARY CLAIM ............................................ 101

COUNT XXXVII
    UNJUST ENRICHMENT ................................................................ 103

COUNT XXXVIII
    VIOLATION OF THE MICHIGAN CONSUMER
    PROTECTION ACT (MICH. COMP. LAWS § 445.903, et seq.) ............. 105

KNAPP,
PETERSEN
& CLARKE

-iii-

## <u>TABLE OF CONTENTS (cont.)</u>

Page

COUNT XXXIX
    FRAUD BY CONCEALMENT .................................................................. 109

COUNT XL
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MICH. COMP. LAWS § 440.2314) ................... 112

COUNT XLI
    FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
    CLAIM AGAINST OLD GM IN BANKRUPTCY ..................................... 113

COUNT XLII
    THIRD-PARTY BENEFICIARY CLAIM ................................................. 115

COUNT XLIII
    UNJUST ENRICHMENT ........................................................................ 117

COUNT XLIV
    VIOLATION OF MONTANA UNFAIR TRADE PRACTICES
    AND CONSUMER PROTECTION ACT OF 1973 (MONT.
    CODE ANN. § 30-14-101, et seq.) ......................................................... 119

COUNT XLV
    FRAUD BY CONCEALMENT .................................................................. 123

COUNT XLVI
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MONT. CODE § 30-2-314) .............................. 125

COUNT XLVII
    FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
    CLAIM AGAINST OLD GM IN BANKRUPTCY ..................................... 126

COUNT XLVIII
    THIRD-PARTY BENEFICIARY CLAIM ................................................. 129

COUNT XLIX
    UNJUST ENRICHMENT ........................................................................ 131

COUNT L
    VIOLATION OF OHIO CONSUMER SALES PRACTICES
    ACT (OHIO REV. CODE ANN. § 1345.01, et seq.) .............................. 132

COUNT LI
    FRAUD BY CONCEALMENT .................................................................. 137

COUNT LII
    IMPLIED WARRANTY IN TORT .......................................................... 140

COUNT LIII
    FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
    CLAIM AGAINST OLD GM IN BANKRUPTCY ..................................... 140

KNAPP,
PETERSEN
& CLARKE

-iv-

# TABLE OF CONTENTS (cont.)

Page

COUNT LIV
    THIRD-PARTY BENEFICIARY CLAIM ................................................. 143

COUNT LV
    UNJUST ENRICHMENT ........................................................................ 145

COUNT LVI
    VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
    PRACTICES AND CONSUMER PROTECTION LAW (73 P.S.
    § 201-1, et seq.)...................................................................................... 146

COUNT LVII
    FRAUD BY CONCEALMENT ................................................................. 150

COUNT LVIII
    BREACH OF THE IMPLIED WARRANTY OF
    MERCHANTABILITY (13 PA. CONS. STAT. ANN. § 2314)................. 153

COUNT LIX
    FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
    CLAIM AGAINST OLD GM IN BANKRUPTCY ..................................... 154

COUNT LX
    THIRD-PARTY BENEFICIARY CLAIM ................................................. 156

COUNT LXI
    UNJUST ENRICHMENT ........................................................................ 158

COUNT LXII
    VIOLATION OF TENNESSEE CONSUMER PROTECTION
    ACT (TENN. CODE ANN. § 47-18-101, et seq.) ..................................... 159

COUNT LXIII
    FRAUD BY CONCEALMENT ................................................................. 163

COUNT LXIV
    FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
    CLAIM AGAINST OLD GM IN BANKRUPTCY ..................................... 166

COUNT LXV
    THIRD-PARTY BENEFICIARY CLAIM ................................................. 169

COUNT LXVI
    UNJUST ENRICHMENT ........................................................................ 171

COUNT LXVII
    VIOLATIONS OF THE TEXAS DECEPTIVE TRADE
    PRACTICES –CONSUMER PROTECTION ACT (TEX. BUS.
    & COM. CODE §§ 17.41, et seq.)............................................................ 172

COUNT LXVIII
    FRAUD BY CONCEALMENT ................................................................. 177

KNAPP,
PETERSEN
& CLARKE

## TABLE OF CONTENTS (cont.)

                                                                    **Page**

COUNT LXIX
   BREACH OF THE IMPLIED WARRANTY OF
   MERCHANTABILITY (TEX. BUS. & COM. CODE § 2.314) ................ 180

COUNT LXX
   FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A
   CLAIM AGAINST OLD GM IN BANKRUPTCY ................................... 180

COUNT LXXI
   THIRD-PARTY BENEFICIARY CLAIM ................................................. 183

COUNT LXXII
   UNJUST ENRICHMENT .................................................................... 185

PRAYER FOR RELIEF ............................................................................. 186

DEMAND FOR JURY TRIAL ................................................................... 188

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KNAPP,
PETERSEN
& CLARKE

1        This complaint is brought by plaintiffs herein as a class action complaint

2    concerning purchasers or lessees of Corvette vehicles equipped with the LS7 7.0LV8

3    engine concerning model years 2006 to 2013.  Those vehicles have exhibited

4    excessive valve guide wear which has led to engine failures and inspections and

5    repairs.

6                        **INTRODUCTION**

7        1.    Plaintiffs bring this action for themselves and on behalf of all persons in

8    the United States, and in selected states, who purchased or leased Chevrolet Corvette

9    427 or Chevrolet Corvette Z06 vehicles ("class vehicles) which were manufactured,

10   distributed and sold by defendant General Motors Company LLC (hereinafter

11   "GM").

12       2.    GM widely advertised the 7.0 liter V8 engine which was used in the

13   Chevrolet Corvette 427 and Chevrolet Corvette Z06 vehicle from 2006 through 2014

14   as being of the highest quality and durability.

15       3.    The above engine in the class vehicles was subject to excessive valve

16   guide wear, a condition which was well-known by GM.

17       4.    Because of defects in the design manufacture and assembly of these

18   subject engines installed in the class vehicles, the class vehicles, and their engines,

19   are by their nature susceptible to frequent mechanical failure, which has occurred.

20       5.    Because of the defects in the design manufacture and assembly of the

21   subject engines installed in the class vehicles, owners and lessees of the class

22   vehicles have or will incur significant expense for inspection and/or repair of the

23   class vehicles.

24       6.    Despite knowledge of the propensity of the subject engine to excessive

25   valve guide wear, GM has not issued a recall so that the class vehicles may be tested

26   and repaired.

27       7.    The defects which cause excessive valve guide wear are well-known

28   and have been actively discussed by GM and owners or lessees of the class vehicles.

KNAPP,
PETERSEN
& CLARKE

-2-

1   Yet, GM has taken no steps to correct the deficiencies in the subject engine. Despite

2   GM's repeated assurances that the subject engines were performing as designed, the

3   engines fail at a high rate.

4        8.    Even extremely low mileage class vehicles have measured valve guide

5   clearances far beyond service limits resulting in repairs at significant costs. Using

6   the test specified by GM, a high proportion of owners or lessees of class vehicles had

7   out of specification valve guides on class vehicles built from 2006 to 2014.

8        9.    When confronted by multiple complaints concerning the above-

9   described defects, GM deflected complaints by insisting that "valve train noise" was

10   an inherent feature of the subject engine, and that the subject engines are not

11   defective.

12       10.    Further, GM attempted to minimize the extent of any problems by

13   falsely asserting that the problems arose from a single supplier and were limited to a

14   short period of time from July 2008 to March 2009. Even then, GM maintained that

15   the condition was not truly an out of specification condition and that the condition

16   had been remedied.

17       11.    As a result of customer complaints concerning the subject engines in the

18   class vehicles, GM developed and implemented an investigation technique known as

19   the "wiggle method," as a method to determine whether the valve guides were out of

20   specification.

21       12.    When GM determined that its adopted test would lead to more repairs

22   and investigations than it wished to perform, the test was summarily rejected.

23       13.    In dealing with multiple complaints concerning the subject engine in the

24   class vehicles, GM acted, at all times, to deflect criticisms, defer investigations and

25   repairs, and minimized the extent of the problems.

26       14.    During the time that GM has temporized, minimizing the extent of the

27   defect in the subject engines, class members have continued to suffer excessive valve

28   train noise, out of specification valve guides and engine failures.

KNAPP,
PETERSEN
& CLARKE

-3-

15.    As a result of GM's misconduct alleged herein, plaintiffs and the other owners and lessees of class vehicles have been harmed and have suffered actual damages, in that the class vehicles continue to experience mechanical failure due to the engine defect, and GM has not come up with a permanent remedy for this defect. Furthermore, owners and lessees of class vehicles have incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the engine defect.

## PARTIES

### Plaintiffs

16.    Plaintiff William D. Pilgrim (hereinafter "Pilgrim") resides in the State of Arizona. Pilgrim owns a 2008 Corvette Z06 vehicle with a 7.0L 427 engine. The vehicle was purchased on January 29, 2014. This vehicle was manufactured, sold, distributed, advertised, marketed and warranted by GM. The vehicle has exhibited excessive valve train noise. The vehicle failed GM's wiggle test. Pilgrim has incurred repair costs and other harm due to the engine defect in this vehicle.

17.    Plaintiff Walter Goetzman (hereinafter "Goetzman") is a resident of Alabama. Goetzman has owned a 2007 Corvette Z06 vehicle. This vehicle was manufactured, sold, distributed, advertised, marketed and warranted by GM.

18.    Plaintiff Jerome E. Pederson (hereinafter "Pederson") is a resident of the Arizona. Pederson owns a 2009 Corvette Z06 vehicle with a 7.0l V8 engine. This vehicle was purchased in July of 2013. This vehicle was manufactured, sold, distributed, advertised, marketed and warranted by GM. This vehicle is defective and subject to excessive value guide wear.

19.    Plaintiff Michael Fernandez (hereinafter "Fernandez") is a resident of California. Fernandez owns a 2008 Corvette Z06 vehicle with a 7.0L V8 engine purchased May 24, 2013. This vehicle was manufactured, sold, distributed, advertised, marketed and warranted by GM. All valve clearances on the vehicle were inspected and found to be outside the manufacturer's allowable tolerance range. Inspection expenses were incurred.

KNAPP,
PETERSEN
& CLARKE

-4-

1      20.    Plaintiff Roy Haleen (hereinafter "Haleen") is a resident of California.

2  Haleen owns a 2008 Corvette Z06 vehicle with a 7.0L 427 engine. This vehicle was

3  manufactured, sold, distributed, advertised, marketed and warranted by GM. Valves

4  on the vehicle were inspected and found to be out of specification. Expense for

5  inspection and repair was incurred.

6      21.    Plaintiff Howard Kopel (hereinafter "Kopel") is a resident of California.

7  Kopel has owned two class vehicles, a 2008 Corvette C6 and a 2006 Corvette Z06.

8  These vehicles was manufactured, sold, distributed, advertised, marketed and

9  warranted by GM. Both vehicles suffered from excessive valve guide wear and

10  underwent inspection and repair. Mr. Kopel has incurred expense due to the

11  described defect.

12      22.    Plaintiff Robert C. Murphy (hereinafter "Murphy") is a resident of

13  California. Murphy owns a 2006 Corvette Z06 vehicle, with a 7.0L LS7 engine. The

14  vehicle was purchased on January 27, 2014. This vehicle was manufactured, sold,

15  distributed, advertised, marketed and warranted by GM. The vehicle has exhibited

16  excessive value train noise and has failed the wiggle test.

17      23.    Plaintiff Mike Peters (hereinafter "Peters") is a resident of California.

18  Mr. Peters has owned a 2009 Corvette Z06 vehicle with a 7.0L 427 c.i. engine. This

19  vehicle was purchased in April of 2012. This vehicle was manufactured, sold,

20  distributed, advertised, marketed and warranted by GM. This vehicle is defective

21  and subject to excessive valve guide wear.

22      24.    Plaintiff Christopher Constantine (hereinafter "Constantine") is a

23  resident of Florida. Constantine owns a 2006 Corvette Z06 vehicle with a 7.0L LS7

24  engine. This vehicle was purchased in December 2010. This vehicle was

25  manufactured, sold, distributed, advertised, marketed and warranted by GM. The

26  valve guides were subject to excessive wear and were repaired in 2013, causing

27  expense to be incurred.

KNAPP,
PETERSEN
& CLARKE  28  ////

1    25.    Plaintiff John Parsons (hereinafter "Parsons") is a resident of Florida.

2  Parsons has owned a class vehicle. This vehicle was manufactured, sold, distributed

3  advertised, marketed and warranted by GM. This vehicle suffers from the described

4  defect and expense has been incurred for inspection and repair.

5    26.    Plaintiff Lyle Dunahoo (hereinafter "Dunahoo") is a resident of Illinois

6  Dunahoo owns a 2009 Corvette Z06 vehicle with a 7.0 engine. This vehicle was

7  purchased in January of 2012. This vehicle was manufactured, sold, distributed,

8  advertised, marketed and warranted by GM. The vehicle has out of specification

9  findings as to valve guide clearances on eight intake values and eight exhaust valves

10    27.    Plaintiff Aaron Clark ("Clark") is a resident of Indiana. Clark has

11  owned a 2008 Corvette Z06 vehicle, with a 7.0 liter LS7 engine. This vehicle was

12  manufactured, sold, distributed, advertised, marketed and warranted by GM.

13    28.    Plaintiff Edwin William Krause (hereinafter "Krause") is a resident of

14  Michigan. Krause has owned a 2009 Corvette Z06 vehicle purchased in April 2014.

15  This vehicle was manufactured, sold, distributed, advertised, marketed and warrante

16  by GM.

17    29.    Plaintiff David Sheldon (hereinafter "Sheldon") is a resident of

18  Montana. Sheldon owns a 2009 Corvette Z06 with a 7.0L engine. The vehicle was

19  purchased on October 15, 2012. This vehicle was manufactured, sold, distributed,

20  advertised, marketed and warranted by GM. Valve guides were inspected and were

21  out of specification, resulting in costly repairs.

22    30.    Plaintiff Jared Kiley (hereinafter "Kiley") is a resident of Mason, Ohio.

23  Kiley owns a 2006 Corvette Z06 vehicle with a 7.0L engine. This vehicle was

24  purchased on August 11, 2014. This vehicle was manufactured, sold, distributed,

25  advertised, marketed and warranted by GM. The vehicle's guides were measured

26  and found to be significantly out of specification. Expense was incurred for

27  inspection and repair of the engine.

KNAPP,
PETERSEN
& CLARKE   28  ////

-6-

1    31.   Plaintiff Jeff Kolodzi (hereinafter "Kolodzi") is a resident of

2  Pennsylvania. Kolodzi owns a 2008 Corvette Z06 vehicle with a 427 c.i. engine.

3  The vehicle was purchased in January 2013. This vehicle was manufactured, sold,

4  distributed, advertised, marketed and warranted by GM. Valves were inspected and

5  found to be out of specification resulting in expenses incurred.

6    32.   Plaintiff Morris Smith (hereinafter "Smith") is a resident of Tennessee.

7  Smith has owned a 2009 Corvette Z06 vehicle purchased in 2010. This vehicle was

8  manufactured, sold, distributed, advertised, marketed and warranted by GM.

9    33.   Plaintiff Andres Frey (hereinafter "Frey") is a resident of Texas. Frey

10  owns a 2008 Corvette Z06 vehicle with a 7.0L 427 c.i. engine. This vehicle was

11  manufactured, sold, distributed, advertised, marketed and warranted by GM. Valve

12  guides were found on inspection to be significantly out of specification, resulting in

13  expensive repairs.

14    34.   Defendant General Motors LLC ("new GM, GM, or defendant") is a

15  Delaware limited liability company with its principal place of business located at 30

16  Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and

17  Michigan. The sole member and owner of General Motors LLC is General Motors

18  Holding LLC. General Motors Holding LLC is a Delaware limited liability compan

19  with its principal place of business in the State of Michigan. The sole member and

20  owner of General Motors Holding LLC is General Motors Company, which is a

21  Delaware corporation with its principal place in the State of Michigan, and is a

22  citizen of the States of Delaware and Michigan.

23    35.   New GM was incorporated in 2009 and, effective on July 11, 2009,

24  acquired substantially all assets and assumed certain liabilities of General Motors

25  Corporation through a section 363 sale under Chapter 11 of the U.S. Bankruptcy

26  Code. It is undisputed that new GM had express obligations, as well as obligations

27  by law, to comply with the certification, reporting and recall requirements of the

28  National Traffic and Motor Vehicle Act and the Transportation Recall Enhancement

KNAPP,
PETERSEN
& CLARKE

-7-

1  Accountability and Documentation Act.

2  **JURISDICTION**

3     36.   This is a class action.

4     37.   Members of the proposed plaintiff class are citizens of states different

5  from the home state of defendant.

6     38.   On information and belief, aggregate claims of individual class

7  members exceed $5,000,000, inclusive of interest and costs.

8     39.   Jurisdiction is proper in this Court pursuant to 28 U.S.C. section

9  1332(d).

10  **VENUE**

11     40.   GM, as new GM has engaged in unfair business practices directed at/or

12  causing to persons residing, located or doing business in this district and in the

13  United States.

14     41.   Defendant through its business of distributing, selling and leasing its

15  vehicles has established sufficient contacts in this district such that it is subject to

16  personal jurisdiction here.  Defendant is deemed to reside in this district pursuant to

17  28 U.S.C. section 1391(a).

18     42.   In addition, a substantial part of the events or omissions giving rise to

19  these claims and a substantial part of the property that is a subject of this action are i

20  this district.

21     43.   Venue is proper in this Court pursuant to 20 U.S.C. 1391(a).

22  **CLASS ALLEGATIONS**

23  A.   <u>The Nationwide Class</u>

24     44.   Under Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of

25  Civil Procedure, plaintiffs bring this action on behalf of themselves and a class

26  initially defined as follows.  For the assertion of claims under the Racketeer

27  Influence and Corrupt Organizations Act ("RICO" and/or "the Nationwide Class")

28  ////

KNAPP,
PETERSEN
& CLARKE

-8-

1        All persons in the United States who purchased or leased a class

2    vehicle at any time from 2006 to the present and who (1) still own or

3    lease a class vehicle or (2) sold a class vehicle at any time from 2006 to

4    the present.  Class vehicles include all Chevrolet Corvette 427 or

5    Corvette Z06 vehicles equipped with 7.0 liter engines.  Excluded from

6    the nationwide class are new GM, its employees, co-conspirators or

7    officers, directors, legal representatives, heirs, successors, and wholly or

8    partly owned subsidiaries or affiliates of new GM, new GM dealers,

9    class counsel and their employees; and the judicial officers and their

10    immediate family members and associated court staff assigned to this

11    case, and all persons within the third degree of relationship of any such

12    persons.

13 **B.**    **State Law Classes**

14    45.    Plaintiffs allege claims, under the laws of each state and the District of

15 Columbia, for the following state-wide classes:

16        All persons who purchased or leased a class vehicle at any time

17    from 2006 to the present.  Excluded from each of the class and

18    subclasses are new GM, its employees co-conspirators or officers,

19    directors, legal representatives, heirs, successors, and wholly or partly

20    owned subsidiaries or affiliates of new GM, new GM dealers, class

21    counsel and their employees; and the judicial officers and their

22    immediate family members and associated court staff assigned to this

23    case, and all persons within the third degree of relationship of any such

24    persons.

25        A subclass in each described state for persons who purchased or

26    leased a class vehicle before July 2009.

27 ////

KNAPP,
PETERSEN
& CLARKE
28 ////

-9-

1    **C.**    <u>**The Classes and Subclasses Meet Rule 23 Requirements**</u>

2        46.     Plaintiffs are informed and believe that there are approximately 28,000

3 class vehicles nationwide and such vehicles exist in each state. Individual joinder of

4 all class members is impracticable.

5        47.     The class can be readily identified using registration records, sales

6 records, production records, and other information kept by GM or third parties in the

7 usual course of business within their control.

8        48.     Questions of law and fact are common to each of the classes and

9 subclasses and predominate over questions affecting only individual members,

10 including the following:

11            (a)     Whether Chevrolet Corvette 427 and Corvette Z06 vehicles

12 equipped with 7.0 liter V8 engines suffer from engine valve guide defects.

13            (b)     Whether GM was aware of the defects, and concealed the defects

14 from regulators, plaintiffs, and the class;

15            (c)     Whether GM misrepresented to class vehicle purchasers that GM

16 branded vehicles are safe, reliable and of high quality;

17            (d)     Whether GM misrepresented itself as a reputable manufacturer

18 that values quality in its vehicles and stands behind its vehicles after they are sold;

19            (e)     Whether GM actively encouraged the concealment of known

20 defects from regulators and consumers;

21            (f)     Whether GM engaged in fraudulent concealment;

22            (g)     Whether GM engaged in unfair, deceptive, unlawful and/or

23 fraudulent acts or practices in trade or commerce by failing to disclose that the class

24 vehicles had serious defects.

25            (h)     Whether GM violated various state consumer protection statutes.

26            (i)     Whether the 7.0 liter V8 engines contained within the class

27 vehicles were unfit for the ordinary purposes for which they were used in violation of

28 the implied warranty of merchantability;

KNAPP,
PETERSEN
& CLARKE

-10-

1    (j) Whether GM's unlawful, unfair, fraudulent and/or deceptive

2 practices harmed plaintiffs and the members of the class

3    (k) Whether GM has been unjustly enriched;

4    (l) Whether GM formed an enterprise with others within the meaning

5 of RICO for improper purpose with the effect of suppressing the defects,

6 misrepresenting the safety and quality of the class vehicles, and/or avoiding or

7 delaying necessary recall.

8    (m) Whether the nationwide class members lost money and/or a

9 property within the meaning of RICO;

10    (n) Whether plaintiffs and the members of the class are entitled to

11 equitable and/or injunctive relief;

12    (o) What aggregate amounts of statutory penalties, as available under

13 the laws of certain states, are sufficient to punish and deter GM and to vindicate

14 statutory and public policy, and how such policies should most equitably be

15 distributed among class members; and

16    (p) Whether any and all applicable limitation periods are tolled by

17 acts of fraudulent concealment.

18  49. Plaintiffs' claims are typical of the claims of the class members and

19 arise from the same course of conduct by GM.  The relief plaintiffs seek is typical of

20 the relief sought for the absent class members.

21  50. Plaintiffs will fairly and adequately represent and protect the interests o

22 all absent class members.  Plaintiffs are represented by counsel competent and

23 experienced in product liability, consumer protection, and class action litigation.

24  51. A class is superior to other available methods for the fair and efficient

25 adjudication of this controversy since joinder of all the individual class members is

26 impracticable because the damages suffered by each individual class member may be

27 relatively small.  The expense and burden of individual litigation would make it very

28 difficult or impossible for individual class members to redress the wrongs done to

KNAPP,
PETERSEN
& CLARKE

-11-

1  each of them individually, and the burden imposed on the judicial system would be

2  enormous.   Rule 23 provides the Court with authority and flexibility to maximize th

3  benefits of the class mechanism and reduce management challenges.   The Court may

4  on motion of plaintiffs or on its own determination, utilize the processes of Rule

5  23(c)(4) and or (c)(5) to certify common questions of fact or law and to designate

6  subclasses.

7     52.   The prosecution of separate actions by the individual class members

8  would create a risk of inconsistent or varying adjudications for individual class

9  members, which would establish incompatible standards of conduct for GM.   The

10  conduct of this action is a class action presents far fewer management difficulties,

11  conserves judicial resources and the parties' resources, and protects the right of each

12  class member.

13     53.   Plaintiffs are not aware of any obstacles likely to be encountered in the

14  management of this action that would preclude its maintenance as a class action.

15  Plaintiffs anticipate providing appropriate notice to be approved by the Court after

16  discovery into the size and nature of the class.   Absent a class action, most class

17  members would likely find the cost of litigating their claims prohibitively high, and

18  would therefore have no effective remedy at law.   Because of the relatively small

19  size of the individual class members claims, it is likely that only a few class member

20  could afford to seek legal redress for GM's misconduct.   Absent a class action, class

21  members will continue to incur damages and GM's misconduct will continue withou

22  remedy.

23              **CLAIMS FOR RELIEF**

24                **COUNT I**

25     **VIOLATION OF RACKETEER INFLUENCED AND CORRUPT**

26     **ORGANIZATIONS ACT ("RICO") 18 U.S.C. Section 1961, et seq.**

27     54.   Plaintiffs hereby incorporate by reference the allegations contained in

28  the proceeding paragraphs of this complaint.

KNAPP,
PETERSEN
& CLARKE

-12-

1    55.    This claim is brought on behalf of the nationwide class against

2    defendant GM for actual damages and treble damages and equitable relief under 18

3    U.S.C. section 1964. Members of the nationwide class are referred to herein

4    collectively as "class members."

5    56.    GM, the Enterprise member, plaintiffs and the class members are

6    "persons" within the meaning of 18 U.S.C. section 1961(3).

7    57.    On May 24, 2015, the United States Department of Justice announced i

8    had found evidence of criminal wrongdoing by GM, including repeated acts of fraud

9    for its failure to disclose defects in its products. GM committed both criminal and

10    civil fraud and, as set forth in this complaint, did not act alone.

11    58.    From the inception of new GM onwards, new GM conducted an

12    enterprise of associated in fact entities ("the Enterprise"), which was designed to

13    conceal information regarding the true nature and scope of defects to its automobile

14    products from the public, the federal government and its agencies, its customers, and

15    the owners and lessees of GM-branded vehicles, including the defective vehicles at

16    issue herein; and to affirmatively misrepresent the quality of GM branded vehicles ii

17    order to (a) fraudulently induce plaintiffs and other class members to purchase or

18    lease the subject vehicles, and (b) avoid the cost of fixing the defects which existed

19    in the class vehicles and to avoid undermining GM's brand image concerning class

20    vehicles owned by plaintiffs and class members.

21    59.    New GM was associated with the illegal enterprise and conducted and

22    participated in the enterprise's affairs through a pattern of racketeering activity

23    consisting of numerous and repeated uses of the interstate mails and wire

24    communications to execute a scheme to defraud, all in violation of 18 U.S.C. section

25    1962(c).

26    60.    The RICO Enterprise which engaged in, and whose activities affected,

27    interstate and foreign commerce, is an association in fact enterprise within the

28    meaning of 18 U.S.C. 1961(4) and consists of "persons" associated together for the

KNAPP,
PETERSEN
& CLARKE

-13-

1  common purpose of employing the multiple deceptive , abusive, and fraudulent acts

2  described herein.

3      61.    At all times, the enterprise consisted of at least new GM and Esis, Inc.

4  (hereinafter "Esis").

5      62.    Esis is a company that offers "risk management products and services."

6  It is part of the Ace Group, headed by Ace Limited, and is separate and distinct from

7  the other enterprise constituents. During the duration of the enterprise, Esis served a

8  new GM's claims administrator, routinely investigating, analyzing and resolving

9  claims involving defects in GM vehicles, including the defects alleged herein.

10  Product liability claims forwarded Esis for investigation and review included, among

11  others, those involving engine failures and costs of inspection and repair. Esis

12  knowingly collaborated with new GM to fraudulently conceal information about the

13  defects from claimants, the government and its agencies, and the public, which

14  scheme was furthered by Esis's mailings and wire communications with the

15  Enterprise and claimants.

16      63.    Esis was at all times well aware of the excessive valve guide wear in the

17  class vehicles.

18      64.    The RICO enterprise is an ongoing organization with an ascertainable

19  structure, and a framework for making an carrying out decisions, that functions as a

20  continuing unit with established duties, and that is separate and distinct from the

21  pattern of racketeering activity in which enterprise members have engaged and are

22  engaging.  The enterprise was and is used by new GM as a tool to effectuate the

23  pattern of racketeering activity.

24      65.    New GM and Esis are entities separate and distinct from each other, and

25  from the enterprise.  All of the enterprise constituents are independent legal entities

26  with the authority and responsibility to act independently of the enterprise and of the

27  other enterprise members.

KNAPP,
PETERSEN
& CLARKE  28  ////

-14-

66.     The members of the enterprise all had a common purpose:  To
misrepresent the quality of GM-branded vehicles and/or to conceal information
regarding the nature and scope of the defects, including the engine defect as alleged
herein, from the government, its agencies, the public, and the class.  For new GM,
the purpose of the scheme to defraud was to conceal the true scope and nature of the
defects in order to sell at least more vehicles, as well as avoid incurring the cost and
responsibility of repairing or replacing class vehicles.  By concealing the scope and
nature of the defects, new GM maintained and boosted consumer confidence in the
GM brand, sold more GM vehicles, and avoided remediation costs and negative
publicity associated with the defects and recalls.

67.     New GM conducted and participated in the affairs of the enterprise
through a pattern of racketeering activity that lasted many years, commencing from
or shortly after new GM's inception as an entity in 2009, continuing through at least
2014.  This pattern consisted of numerous and repeated violations of the federal mai
and wire fraud statutes – namely 18 U.S.C. sections 1341 and 1343 – that prohibit
the use of any interstate or foreign mail or wire facility for the purpose of executing
scheme to defraud.  These mailings and wirings were executed in furtherance of the
enterprise's scheme to defraud the class and caused injury to the property of class
members.

68.     To further the scheme to defraud, new GM routinely issued technical
service bulletins to the dealers and/or letters to consumers and/or responses in
internet forums as a stop gap half measure designed to avoid costly recalls.

69.     As part of its obligations under the TREAD Act, new GM was required
to submit to NHTSA, its monthly and quarterly reports regarding potential product
defects and complaints involving potential defects.  To further the scheme to defrau
and in order to escape investigation and costs associated with recalls, new GM
systematically under reported and omitted relevant information about the nature of
the defects and the number of defect-related incidents and complaints from these

KNAPP,
PETERSEN
& CLARKE

-15-

1   reports, which new GM transmitted or caused to be transmitted from its offices in

2   Michigan to federal regulators in Washington, D.C.

3        70.   The conduct of new GM and Esis in furtherance of this scheme was

4   intentional.  Plaintiffs and class members were harmed by new GM's conduct and, a

5   a result, purchased or leased defective class vehicles after new GM was created for

6   significantly more money than they would have paid absent the scheme to defraud,

7   and/or remain in possession of vehicles of diminished value that new GM otherwise

8   would have repaired or replaced, and/or sold class vehicles after revelations of

9   defects for a loss.  In addition, plaintiffs and class members were harmed by

10   undertaking the costs of investigations and repairs caused by the defects.  New GM

11   unfairly reaped millions of dollars in excessive sales revenue as a result of this

12   scheme and its conduct in furtherance of this scheme.

13                              **COUNT II**

14        **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

15                     **(15 U.S.C. Section 2301, et seq.)**

16        71.   Plaintiffs reallege and incorporate by reference all paragraphs as though

17   fully set forth herein.

18        72.   Plaintiffs bring this Count on behalf of members of the nationwide class

19   who are residents of the following states:  Alaska, Arkansas, California, Colorado,

20   Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine,

21   Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana,

22   Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North

23   Carolina, North Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina,

24   South Dakota, Texas, Utah, Virginia, West Virginia, and Wyoming (the class for the

25   purposes of this Count).

26        73.   This Court has jurisdiction to decide claims brought under 15 U.S.C.

27   2301 by virtue of 28 U.S.C. section 1332(a) – (d).

28   ////

KNAPP,
PETERSEN
& CLARKE

1       74.    The class vehicles are "consumer products" within the meaning of the

2    Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(1).

3       75.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss

4    Warranty Act, 15 U.S.C. section 2301(3).   They are consumers because they are

5    persons entitled under applicable state law to enforce against the warrantor the

6    obligations of its implied warranties.

7       76.    GM is a "supplier" and "warrantor" within the meaning of the

8    Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(4) – (5).

9       77.    15 U.S.C. section 2310(d)(1) provides a cause of action for any

10   consumer who is damaged by the failure of a warrantor to comply with an implied

11   warranty.

12      78.    GM provided plaintiffs and the other class members with an implied

13   warranty of merchantability in connection with the purchase or lease of their vehicle

14   on or after July 11, 2009, that is an "implied warranty" within the meaning of the

15   Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(7).   As a part of the implied

16   warranty of merchantability, GM warranted that the class vehicles were fit for their

17   ordinary purpose as safe passenger motor vehicles, would pass without objection in

18   the trade as designed, manufactured and marketed and packaged and labeled.

19      79.    GM breached its implied warranties as described in more detail above

20   and is therefore, liable to plaintiffs and the class pursuant to 15 U.S.C. section

21   2310(d)(1).   Without limitation, the class vehicles share common design defects in

22   that they are defectively designed and manufactured to permit excessive valve wear

23   which results in sudden failure during ordinary operation, leaving occupants of the

24   class vehicles vulnerable to crashes, serious injury, and death.

25   ////

26   ////

27   ////

28   ////

KNAPP,
PETERSEN
& CLARKE

-17-

1      80.    In its capacity as a warrantor, GM had knowledge of the inherent

2  defects in the class vehicles.  Any effort by GM to limit the implied warranties in a

3  manner that would exclude coverage of the class vehicles is unconscionable, and any

4  such effort to disclaim, or otherwise limit, liability for the class vehicles is null and

5  void.

6      81.    Any limitations GM might seek to impose on its warranties are

7  procedurally unconscionable.  There was unequal bargaining power between GM an

8  the plaintiffs and the other class members as, at all times of purchase and lease,

9  plaintiffs and the other class members had no other options for purchasing warranty

10  coverage other than directly from GM.

11      82.    Any limitations might seek to impose on its warranties are substantively

12  unconscionable.  GM knew that the class vehicles were defective and would continu

13  to pose risks after the warranties purportedly expired.  GM failed to disclose these

14  defects to plaintiffs and the other class members.  Thus, GM's enforcement of the

15  durational limitations on those warranties is harsh and shocks the conscience.

16      83.    Plaintiffs and each of the other class members have had sufficiently

17  direct dealings with either GM or its agents (dealerships) to establish a privity of

18  contract between GM on the one hand, and plaintiffs and each of the other class

19  members, on the other hand.  Nonetheless, privity is not required here because

20  plaintiffs and each of the other class members are intended third party beneficiaries

21  of contracts between GM and its dealers, and specifically, of GM's implied

22  warranties.  The dealers were not intended to be the ultimate consumers of the class

23  vehicles and have no rights under the warranty agreements provided with the class

24  vehicles; the warranty agreements were designed for and intended to benefit

25  consumers.  Finally, privity is also not required because the class vehicles are

26  dangerous instrumentalities due to the aforementioned defects and non-conformities

27      84.    Pursuant to 15 U.S.C. section 2310(e), plaintiffs are entitled to bring thi

28  class action and are not required to give GM notice and an opportunity to cure until

KNAPP,
PETERSEN
& CLARKE

-18-

1   such time as the Court determines the representative capacity of plaintiffs pursuant to

2   Rule 23 of the Federal Rules of Civil Procedure.

3        85.    The amount in controversy of plaintiffs' individual claims meets or

4   exceeds the sum of $25.  The amount in controversy of this action exceeds the sum

5   of $50,000, exclusive of interest and costs, computed on the basis of all claims to be

6   determined in this lawsuit.  Plaintiffs, individually and on behalf of the other class

7   members, seek all damages permitted by law, including diminution in value of their

8   vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C.

9   2310(d)(2), plaintiffs and other class members are entitled to recover a sum equal to

10  the aggregate amount of costs and expenses (including attorneys' fees based on

11  actual time expended) determined by the Court to have reasonably been incurred by

12  plaintiffs and the other class members in connection with the commencement and

13  prosecution of this action.

14       86.    Further, plaintiffs and the class are also entitled to equitable relief under

15  15 U.S.C. section 2310(d)(1).  Based on GM's continuing failures to fix the known

16  defects, plaintiffs seek a declaration that GM has not adequately implemented its

17  recall commitments and requirements and general commitments to fix its failed

18  processes, and injunctive relief in the form of judicial supervision over the recall

19  process is warranted.  Plaintiffs also seek and a determination that GM is obligated to

20  provide warranty services beyond the time specified in said warranties, based on the

21  facts as alleged herein.  Plaintiffs also seek the establishment of a GM funded

22  program for plaintiffs and class members to recover out-of-pocket costs incurred in

23  attempting to rectify the defects in their vehicles.

24                          **COUNT III**

25                       **NEGLIGENCE**

26       87.    Plaintiffs bring this Count on behalf of members of the nationwide class

27  who reside in Arkansas, Maryland, Louisiana, Maryland and Ohio (negligence

28  subclasses).

KNAPP,
PETERSEN
& CLARKE

88.    GM has designed, manufactured, sold or otherwise placed in the stream of commerce class vehicles which are defective, as set forth above.

89.    GM had a duty to design and manufacture a product that would be useful for its intended and foreseeable uses and users, including the use to which its products were put by plaintiffs and other members of the negligence subclasses.

90.    GM breached its duties to plaintiffs and the other members of the negligence subclasses because GM was negligent in the design, development and manufacture and testing of the class vehicles, and GM is responsible for this negligence.

91.    GM was negligent in the design, development, manufacture and testing of the class vehicles because it knew, or in the exercise of reasonable care should have known, that the vehicles equipped with a 7.0 liter V8 engine were defective and posed an unreasonable risk of catastrophic engine failure with a risk of death or seriously bodily injury to plaintiffs and other members of the negligent subclasses, passengers, other motorists, pedestrians and the public at large.

92.    Plaintiffs, individually and on behalf of the other members of the negligence subclasses, rely upon Restatement (second) of Torts section 395.

93.    GM further breached it duties to plaintiffs and the other members of the negligence subclasses by supplying directly or through a third person defective vehicles to be used by such foreseeable persons as plaintiffs and the other members of negligence subclasses.

94.    GM knew, or had reason to know, that the vehicles were likely to suffer a catastrophic engine failure and were likely dangerous for the use to which they were supplied.

95.    GM failed to exercise reasonable care to inform customers of the dangerous condition or of the facts under which the vehicles are likely to be dangerous.

KNAPP,
PETERSEN
& CLARKE

////

-20-

1    96.    GM had a continuing duty to warn and instruct the intended foreseeable

2   users of its vehicles, including plaintiffs and the other members of the negligence

3   subclasses, of the defective condition of the vehicles and the risk attended to using

4   the vehicles.  Plaintiffs and other members of the negligence subclass were entitled

5   to know that the vehicles, in their ordinary operation, were not reasonably safe for

6   their intended and ordinary purposes and uses.

7    97.    GM knew or should have known of the defects described herein.  GM

8   breached it duty to plaintiffs and other members of the negligence subclasses because

9   it failed to warn and instruct the intended foreseeable users of its vehicles of the

10   defective conditions of the vehicles, and the risk attended to using the vehicles.

11    98.    As a direct and proximate result of GM's negligence, plaintiffs and the

12   other members of the negligence subclasses suffered damages.

13   **Alabama**

14                         **COUNT IV**

15   **VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT**

16                    **(ALA. CODE § 8-19-1, et seq.)**

17    99.    Plaintiffs reallege and incorporate by reference all paragraphs as though

18   fully set forth herein.

19    100.   This claim is brought solely on behalf of Nationwide Class Members

20   who are Alabama residents (the "Alabama Class").

21    101.   Plaintiffs and the Alabama Class are "consumers" within the meaning o

22   ALA. CODE § 8-19-3(2).

23    102.   Plaintiffs, the Alabama Class, and New GM are "persons" within the

24   meaning of ALA. CODE § 8-19-3(5).

25    103.   The class vehicles are "goods" within the meaning of ALA. CODE § 8-

26   19-3(3).

27    104.   New GM was and is engaged in "trade or commerce" within the

28   meaning of ALA. CODE § 8-19-3(8).

KNAPP,
PETERSEN
& CLARKE

1          105.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA")

2   declares several specific actions to be unlawful, including: "(5) Representing that

3   goods or services have sponsorship, approval, characteristics, ingredients, uses,

4   benefits, or qualities that they do not have," "(7) Representing that goods or services

5   are of a particular standard, quality, or grade, or that goods are of a particular style or

6   model, if they are of another," and "(27) Engaging in any other unconscionable,

7   false, misleading, or deceptive act or practice in the conduct of trade or commerce."

8   ALA. CODE § 8-19-5. New GM engaged in deceptive business practices prohibited

9   by the Alabama DTPA, including: representing that class vehicles have

10  characteristics, uses, benefits, and qualities which they do not have; representing that

11  class vehicles are of a particular standard, quality, and grade when they are not;

12  advertising class vehicles with the intent not to sell or lease them as advertised;

13  representing that the subject of a transaction involving class vehicles has been

14  supplied in accordance with a previous representation when it has not; and engaging

15  in other unconscionable, false, misleading, or deceptive act or practice in the conduct

16  of trade or commerce.

17         106.   New GM also engaged in unlawful trade practices by employing

18  deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

19  suppression or omission of any material fact with intent that others rely upon such

20  concealment, suppression or omission, in connection with the sale of class vehicles

21  old on or after July 11, 2009.

22         107.   From the date of its inception on July 11, 2009, New GM knew of many

23  serious defects affecting many models and years of class vehicles, because of (i) the

24  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

25  investigations, and notifications from regulatory authorities; and (iii) ongoing

26  performance of New GM's TREAD Act obligations.  New GM became aware of

27  ////

28  ////

KNAPP,
PETERSEN
& CLARKE

1  other serious defects and systemic safety issues years ago, but concealed all of that

2  information.

3      108.  New GM was also aware that it valued cost-cutting over safety, selected

4  parts from the cheapest supplier regardless of quality, and actively discouraged

5  employees from finding and flagging known defects, and that this approach would

6  necessarily cause the existence of more defects in the vehicles it designed and

7  manufactured and the failure to disclose and remedy defects in all GM-branded

8  vehicles. New GM concealed this information as well.

9      109.  By failing to disclose and by actively concealing the many defects in

10  GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality

11  and by presenting itself as a reputable manufacturer that valued safety and stood

12  behind its vehicles after they were sold, New GM engaged in deceptive business

13  practices in violation of the Alabama DTPA.

14      110.  In the course of New GM's business, it willfully failed to disclose and

15  actively concealed the dangerous risk posed by the defects discussed above. New

16  GM compounded the deception by repeatedly asserting that GM-branded vehicles

17  were safe, reliable, and of high quality, and by claiming to be a reputable

18  manufacturer that valued safety and stood behind its vehicles once they are on the

19  road.

20      111.  New GM's unfair or deceptive acts or practices were likely to and did in

21  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

22  reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of

23  safety at New GM, and the true value of the class vehicles.

24      112.  New GM intentionally and knowingly misrepresented material facts

25  regarding the class vehicles with an intent to mislead Plaintiffs and the Alabama

26  Class.

27      113.  New GM knew or should have known that its conduct violated the

28  Alabama DTPA.

KNAPP,
PETERSEN
& CLARKE

-23-

1       114.   As alleged above, New GM made material statements about the safety

2   and reliability of the class vehicles and the GM brand that were either false or

3   misleading.

4       115.   New GM owed Plaintiffs a duty to disclose the true safety and reliability

5   of the class vehicles and the devaluing of safety at New GM, because New GM:

6           (a)   Possessed exclusive knowledge that it valued cost-cutting over

7   safety, selected parts from the cheapest supplier regardless of quality, and actively

8   discouraged employees from finding and flagging known safety defects, and that this

9   approach would necessarily cause the existence of more defects in the vehicles it

10   designed and manufactured;

11           (b)   Intentionally concealed the foregoing from Plaintiffs; and/or

12           (c)   Made incomplete representations about the safety and reliability

13   of the class vehicles generally, and the valve guide defects in particular, while

14   purposefully withholding material facts from Plaintiffs that contradicted these

15   representations.

16       116.   Because New GM fraudulently concealed the defects in the class

17   vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

18   attached to those vehicles by New GM's conduct, they are now worth significantly

19   less than they otherwise would be.

20       117.   New GM's systemic devaluation of safety and its concealment of the

21   defects in the class vehicles were material to Plaintiffs and the Alabama Class. A

22   vehicle made by a reputable manufacturer of vehicles is worth more than an

23   otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

24   conceals defects rather than promptly remedies them.

25       118.   Plaintiffs and the Alabama Class suffered ascertainable loss caused by

26   New GM's misrepresentations and its concealment of and failure to disclose material

27   information. Plaintiffs who purchased class vehicles after the date of New GM's

28   inception either would have paid less for their vehicles or would not have purchased

KNAPP,
PETERSEN
& CLARKE

-24-

1    or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result

2    of New GM's misconduct.

3        119.    Regardless of time of purchase or lease, no Plaintiffs would have

4    maintained and continued to drive their vehicles had they been aware of New GM's

5    misconduct. By contractually assuming TREAD Act responsibilities with respect to

6    Old GM class vehicles, New GM effectively assumed the role of manufacturer of

7    those vehicles because the TREAD Act on its face only applies to vehicle

8    manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

9    vehicle owners to refrain from unfair and deceptive acts or practices under the

10   Alabama DTPA. And, in any event, all class vehicle owners suffered ascertainable

11   loss in the form of diminished value of their vehicles as a result of New GM's

12   deceptive and unfair acts and practices made in the course of New GM's business.

13       120.    As a direct and proximate result of New GM's violations of the

14   Alabama DTPA, Plaintiffs and the Alabama Class have suffered injury-in-fact and/o

15   actual damage.

16       121.    Pursuant to ALA. CODE § 8-19-10, Plaintiffs and the Alabama Class

17   seek monetary relief against New GM measured as the greater of (a) actual damages

18   in an amount to be determined at trial and (b) statutory damages in the amount of

19   $100 for each Plaintiff and each Alabama Class member.

20       122.    Plaintiffs also seek an order enjoining New GM's unfair, unlawful,

21   and/or deceptive practices, attorneys' fees, and any other just and proper relief

22   available under the ALA. CODE § 8-19-1, et seq.

23                            **COUNT V**

24                    **FRAUD BY CONCEALMENT**

25       123.    Plaintiffs reallege and incorporate by reference all paragraphs as though

26   fully set forth herein.

27       124.    This claim is brought on behalf of Nationwide Class Members who are

28   Alabama residents (the "Alabama Class").

KNAPP,
PETERSEN
& CLARKE

-25-

1    125.    New GM concealed and suppressed material facts concerning the

2    quality of the class vehicles.

3    126.    New GM concealed and suppressed material facts concerning the

4    culture of New GM – a culture characterized by an emphasis on cost-cutting, the

5    studious avoidance of quality issues, and a shoddy design process.

6    127.    New GM concealed and suppressed material facts concerning the

7    defects in the class vehicles, and that it valued cost-cutting over quality and took

8    steps to ensure that its employees did not reveal known defects to regulators or

9    consumers.

10    128.    New GM did so in order to boost confidence in its vehicles and falsely

11    assure purchasers and lessors of its vehicles and Certified Previously Owned vehicle

12    that New GM was a reputable manufacturer that stands behind its vehicles after they

13    are sold and that its vehicles are safe and reliable. The false representations were

14    material to consumers, both because they concerned the quality and safety of the

15    class vehicles and because the representations played a significant role in the value c

16    the vehicles.

17    129.    New GM had a duty to disclose the defects in the class vehicles because

18    they were known and/or accessible only to New GM, were in fact known to New

19    GM as of the time of its creation in 2009 and at every point thereafter, New GM had

20    superior knowledge and access to the facts, and New GM knew the facts were not

21    known to or reasonably discoverable by Plaintiffs and the Alabama Class. New GM

22    also had a duty to disclose because it made many general affirmative representations

23    about the safety, quality, and lack of defects in its vehicles, as set forth above, which

24    were misleading, deceptive and incomplete without the disclosure of the additional

25    facts set forth above regarding defects in the class vehicles. Having volunteered to

26    provide information to Plaintiffs, GM had the duty to disclose not just the partial

27    truth, but the entire truth. These omitted and concealed facts were material because

28    they directly impact the value of the class vehicles purchased or leased by Plaintiffs

KNAPP,
PETERSEN
& CLARKE

-26-

1 | and the Alabama Class.

2 |     130.  New GM actively concealed and/or suppressed these material facts, in

3 | whole or in part, to protect its profits and avoid recalls that would hurt the brand's

4 | image and cost New GM money, and it did so at the expense of Plaintiffs and the

5 | Alabama Class.

6 |     131.  On information and belief, New GM has still not made full and adequat

7 | disclosure and continues to defraud Plaintiffs and the Alabama Class and conceal

8 | material information regarding defects that exist in the class vehicles.

9 |     132.  Plaintiffs and the Alabama Class were unaware of these omitted

10 | material facts and would not have acted as they did if they had known of the

11 | concealed and/or suppressed facts, in that they would not have purchased cars

12 | manufactured by New GM; and/or they would not have purchased cars manufacture

13 | by Old GM in the time after New GM had come into existence and had fraudulently

14 | opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

15 | not have continued to drive their vehicles or would have taken other affirmative

16 | steps. Plaintiffs' and the Alabama Class's actions were justified. New GM was in

17 | exclusive control of the material facts and such facts were not known to the public,

18 | Plaintiffs, or the Alabama Class.

19 |     133.  Because of the concealment and/or suppression of the facts, Plaintiffs

20 | and the Alabama Class sustained damage because they own vehicles that diminished

21 | in value as a result of New GM's concealment of, and failure to timely disclose, the

22 | defects in the class vehicles and the quality issues engendered by New GM's

23 | corporate policies. Had they been aware of the defects that existed in the class

24 | vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

25 | New GM came into existence either would have paid less for their vehicles or would

26 | not have purchased or leased them at all; and no Plaintiffs regardless of time of

27 | purchase or lease would have maintained their vehicles.

KNAPP,
PETERSEN
& CLARKE

28 | ////

1    134.    The value of all Alabama Class Members' vehicles has diminished as a

2    result of New GM's fraudulent concealment of the defects which have tarnished the

3    Corvette brand and made any reasonable consumer reluctant to purchase any of the

4    class vehicles, let alone pay what otherwise would have been fair market value for

5    the vehicles.

6    135.    Accordingly, New GM is liable to the Alabama Class for damages in an

7    amount to be proven at trial.

8    136.    New GM's acts were done maliciously, oppressively, deliberately, with

9    intent to defraud, and in reckless disregard of Plaintiffs' and the Alabama Class's

10    rights and well-being to enrich New GM. New GM's conduct warrants an assessment

11    of punitive damages in an amount sufficient to deter such conduct in the future,

12    which amount is to be determined according to proof.

13                                    **COUNT VI**

14        **FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM**

15                   **AGAINST OLD GM IN BANKRUPTCY**

16    137.    Plaintiffs reallege and incorporate by reference all paragraphs as though

17    fully set forth herein.

18    138.    This claim is brought only on behalf of Alabama Class members who

19    are Alabama residents.

20    139.    New GM was aware of the defects in class vehicles sold by Old GM

21    from the moment it came into existence upon entry of the Sale Order And Sale

22    Agreement by which New GM acquired substantially all the assets of Old GM.

23    140.    The Alabama Class did not receive notice of the defect in the class

24    vehicles prior to the entry of the Sale Order. No recall occurred.

25    141.    In September of 2009, the bankruptcy court entered the Bar Date Order

26    establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims

27    to be filed against Old GM.

KNAPP,
PETERSEN
& CLARKE    28    ////

-28-

142. Because New GM concealed its knowledge of the defect in the class vehicles, the Alabama Class did not receive notice of the defect prior to the passage of the Bar Date. No recall occurred.

143. In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

144. The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

145. Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion. In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

146. As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

147. As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities. After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

148. But for New GM's fraudulent concealment of the defects, the Alabama Class would have filed claims against Old GM before the Bar Date.

149. Had the Alabama Class filed timely claims before the Bar Date, the claims would have been allowed.

KNAPP,
PETERSEN
& CLARKE

-29-

150. New GM's concealment and suppression of the material fact of the defect in the class vehicles over the first several months of its existence served to prevent the filing of claims by the Class.

151. New GM had a duty to disclose in the class vehicles defects because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Alabama Class. These omitted and concealed facts were material because they directly impacted the safety and the value of the class vehicles purchased or leased by Plaintiffs and the Alabama Class, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

152. Plaintiffs and the Alabama Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Alabama Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Alabama Class.

153. Because of the concealment and/or suppression of the facts, Plaintiffs and the Alabama Class sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust. Had they been aware of the defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

154. Accordingly, New GM is liable to the Alabama Class members for their damages in an amount to be proven at trial.

155. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Alabama Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

KNAPP,
PETERSEN
& CLARKE

-30-

1    **COUNT VII**

2    **THIRD-PARTY BENEFICIARY CLAIM**

3    156.  Plaintiffs reallege and incorporate by reference all paragraphs as though

4    fully set forth herein.

5    157.  This claim is brought only on behalf of Class members who are

6    Alabama residents (the "Alabama Class").

7    158.  In the Sales Agreement through which New GM acquired substantially

8    all of the assets of New GM, New GM explicitly agreed as follows:

9    From and after the Closing, [New GM] shall comply with the

10    certification, reporting and recall requirements of the National Traffic

11    and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

12    Recall Enhancement, Accountability and Documentation Act, the Clean

13    Air Act, the California Health and Safety Code and similar Laws, in

14    each case, to the extent applicable in respect of vehicles and vehicle

15    parts manufactured or distributed by [Old GM].

16    159.  With the exception of the portion of the agreement that purports to

17    immunize New GM from its own independent misconduct with respect to cars and

18    parts made by New GM, the Sales Agreement is a valid and binding contract.

19    160.  But for New GM's covenant to comply with the TREAD Act with

20    respect to cars and parts made by Old GM, the TREAD Act would have no

21    application to New GM with respect to those cars and parts. That is because the

22    TREAD Act on its face imposes reporting and recall obligations only on the

23    "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

24    161.  Because New GM agreed to comply with the TREAD Act with respect

25    to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

26    make quarterly submissions to NHTSA of "early warning reporting" data, including

27    incidents involving property damage, warranty claims, consumer complaints, and

28    field reports concerning failure, malfunction, lack of durability or other performance

KNAPP,
PETERSEN
& CLARKE

-31-

1   issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

2   underlying records on which the early warning reports are based and all records

3   containing information on malfunctions that may be related to motor vehicle safety.

4   See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

5   or should know that a safety defect exists -- including notifying NHTSA and

6   consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

7   573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

8      162.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

9   Old GM, are the clear intended beneficiaries of New GM's agreement to comply

10  with the TREAD Act. Under the Sales Agreement, Plaintiffs were to receive the

11  benefit of having a manufacturer responsible for monitoring the safety of their Old

12  GM vehicles and making certain that any known defects would be promptly

13  remedied.

14     163.   Although the Sale Order which consummated New GM's purchase of

15  Old GM purported to give New GM immunity for claims concerning vehicles or

16  parts made by Old GM, the bankruptcy court recently ruled that provision to be

17  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

18  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

19  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

20  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

21  breaches of the promise it made in the Sales Agreement.

22     164.   New GM breached its covenant to comply with the TREAD Act with

23  respect to class vehicles, as it failed to take action to remediate the defects at any

24  time, up to the present.

25     165.   Plaintiffs and the Alabama Class were damaged as a result of New

26  GM's breach. Because of New GM's failure to timely remedy the defect in the class

27  vehicles, the value of Old GM class vehicles has diminished in an amount to be

28  determined at trial.

KNAPP,
PETERSEN
& CLARKE

-32-

**COUNT VIII**

**UNJUST ENRICHMENT**

166.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

167.    This claim is brought on behalf of members of the Alabama Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Alabama Unjust Enrichment Class").

168.    New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

169.    New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

170.    With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

171.    Thus, all Alabama Unjust Enrichment Class Members conferred a benefit on New GM.

172.    It is inequitable for New GM to retain these benefits.

173.    Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

174.    New GM knowingly accepted the benefits of its unjust conduct.

////

KNAPP,
PETERSEN
& CLARKE

-33-

1    175.   As a result of New GM's conduct, the amount of its unjust enrichment

2  should be disgorged, in an amount according to proof.

3  **Arizona**

4                    **COUNT NO. IX**

5           **VIOLATIONS OF THE CONSUMER FRAUD ACT**

6                 **(Arizona Rev. Stat. § 44-1521, et seq.)**

7    176.   Plaintiffs reallege and incorporate by reference all paragraphs as though

8  fully set forth herein.

9    177.   This claim is brought only on behalf of Class Members who are Arizona

10  residents (the "Arizona Class").

11    178.   Plaintiffs, the Arizona Class and New GM are "persons" within the

12  meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), ARIZ. REV. STAT.

13  § 44-1521(6).

14    179.   The class vehicles are "merchandise" within the meaning of ARIZ.

15  REV. STAT. § 44-1521(5).

16    180.   The Arizona CFA provides that "[t]he act, use or employment by any

17  person of any deception, deceptive act or practice, fraud, . . . misrepresentation, or

18  concealment, suppression or omission of any material fact with intent that others rely

19  upon such concealment, suppression or omission, in connection with the sale . . of

20  any merchandise whether or not any person has in fact been misled, deceived or

21  damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-

22  1522(A).

23    181.   New GM also engaged in unlawful trade practices by employing

24  deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

25  suppression or omission of any material fact with intent that others rely upon such

26  concealment, suppression or omission, in connection with the sale of class vehicles

27  sold on or after July 11, 2009.

KNAPP,
PETERSEN
& CLARKE  28  ////

1    182.   From the date of its inception on July 11, 2009, New GM knew of many

2  serious defects affecting many models and years of class vehicles, because of (i) the

3  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

4  investigations, and notifications from regulatory authorities; and (iii) ongoing

5  performance of New GM's TREAD Act obligations. New GM became aware of

6  other serious defects and systemic safety issues years ago, but concealed all of that

7  information.

8    183.   New GM was also aware that it valued cost-cutting over safety, selected

9  parts from the cheapest supplier regardless of quality, and actively discouraged

10  employees from finding and flagging known safety defects, and that this approach

11  would necessarily cause the existence of more defects in the vehicles it designed and

12  manufactured and the failure to disclose and remedy defects in all GM-branded

13  vehicles. New GM concealed this information as well.

14    184.   By failing to disclose and by actively concealing the many defects in

15  GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality

16  and by presenting itself as a reputable manufacturer that valued safety and stood

17  behind its vehicles after they were sold, New GM engaged in deceptive business

18  practices in violation of the Arizona CFA.

19    185.   In the course of New GM's business, it willfully failed to disclose and

20  actively concealed the dangerous risk posed by the defects discussed above. New

21  GM compounded the deception by repeatedly asserting that GM-branded vehicles

22  were safe, reliable, and of high quality, and by claiming to be a reputable

23  manufacturer that valued safety and stood behind its vehicles once they are on the

24  road.

25    186.   New GM's unfair or deceptive acts or practices were likely to and did in

26  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

27  reliability of GM-branded vehicles, the quality of the New GM brand, the devaluing

28  of safety at New GM, and the true value of the class vehicles.

KNAPP,
PETERSEN
& CLARKE

-35-

1       187.  New GM intentionally and knowingly misrepresented material facts

2  regarding the class vehicles with an intent to mislead Plaintiffs and the Arizona

3  Class.

4       188.  New GM knew or should have known that its conduct violated the

5  Arizona CFA.

6       189.  As alleged above, New GM made material statements about the safety

7  and reliability of the class vehicles and the GM brand that were either false or

8  misleading.

9       190.  New GM owed Plaintiffs a duty to disclose the true safety and reliability

10  of the class vehicles and the devaluing of safety at New GM, because New GM:

11       (a)    Possessed exclusive knowledge that it valued cost-cutting over

12  safety, selected parts from the cheapest supplier regardless of quality, and actively

13  discouraged employees from finding and flagging known safety defects, and that this

14  approach would necessarily cause the existence of more defects in the vehicles it

15  designed and manufactured;

16       (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

17       (c)    Made incomplete representations about the safety and reliability

18  of the class vehicles generally, and the valve guide defects in particular, while

19  purposefully withholding material facts from Plaintiffs that contradicted these

20  representations.

21       191.  Because New GM fraudulently concealed the defects in the class

22  vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

23  attached to those vehicles by New GM's conduct, they are now worth significantly

24  less than they otherwise would be.

25  ////

26  ////

27  ////

28  ////

KNAPP,
PETERSEN
& CLARKE

1      192.  New GM's systemic devaluation of safety and its concealment of the

2  defects in the class vehicles were material to Plaintiffs and the Arizona Class. A

3  vehicle made by a reputable manufacturer of vehicles is worth more than an

4  otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

5  conceals defects rather than promptly remedies them.

6      193.  Plaintiffs and the Arizona Class suffered ascertainable loss caused by

7  New GM's misrepresentations and its concealment of and failure to disclose materia

8  information. Plaintiffs who purchased class vehicles after the date of New GM's

9  inception either would have paid less for their vehicles or would not have purchased

10  or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result

11  of New GM's misconduct.

12      194.  Regardless of time of purchase or lease, no Plaintiffs would have

13  maintained and continued to drive their vehicles had they been aware of New GM's

14  misconduct. By contractually assuming TREAD Act responsibilities with respect to

15  Old GM class vehicles, New GM effectively assumed the role of manufacturer of

16  those vehicles because the TREAD Act on its face only applies to vehicle

17  manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

18  vehicle owners to refrain from unfair and deceptive acts or practices under the

19  Arizona CFA. And, in any event, all class vehicle owners suffered ascertainable loss

20  in the form of diminished value of their vehicles as a result of New GM's deceptive

21  and unfair acts and practices made in the course of New GM's business.

22      195.  The recalls and repairs instituted by New GM have not been adequate.

23      196.  As a direct and proximate result of New GM's violations of the Arizona

24  CFA, Plaintiffs and the Arizona Class have suffered injury-in-fact and/or actual

25  damage.

26      197.  Plaintiffs and the Arizona Class seek monetary relief against New GM

27  as the greater of (a) actual damages in an amount to be determined at trial and (b)

28  statutory in the amount of $100 for each Plaintiff and each Arizona Class Member.

KNAPP,
PETERSEN
& CLARKE

1    Plaintiffs and the Arizona Class also seek punitive damages because New GM

2    engaged in aggravated and outrageous conduct with an evil mind.

3         198.    Plaintiffs also seek an order enjoining New GM's unfair, unlawful,

4    and/or deceptive practices, attorneys' fees, and any other just and proper relief

5    available under the Arizona CFA.

**COUNT X**

**FRAUD BY CONCEALMENT**

8         199.    Plaintiffs reallege and incorporate by reference all paragraphs as though

9    fully set forth herein.

10         200.    This claim is brought on behalf of Nationwide Class Members who are

11    Arizona residents (the "Arizona Class").

12         201.    New GM concealed and suppressed material facts concerning the

13    quality of the class vehicles.

14         202.    New GM concealed and suppressed material facts concerning the

15    culture of New GM – a culture characterized by an emphasis on cost-cutting, the

16    studious avoidance of quality issues, and a shoddy design process.

17         203.    New GM concealed and suppressed material facts concerning the

18    defects in the class vehicles, and that it valued cost-cutting over quality and took

19    steps to ensure that its employees did not reveal known defects to regulators or

20    consumers.

21         204.    New GM did so in order to boost confidence in its vehicles and falsely

22    assure purchasers and lessors of its vehicles and Certified Previously Owned vehicle

23    that New GM was a reputable manufacturer that stands behind its vehicles after they

24    are sold and that its vehicles are safe and reliable. The false representations were

25    material to consumers, both because they concerned the quality and safety of the

26    class vehicles and because the representations played a significant role in the value c

27    the vehicles.

KNAPP,
PETERSEN
& CLARKE        28    ////

1    205.   New GM had a duty to disclose the defects in the class vehicles because

2   they were known and/or accessible only to New GM, were in fact known to New

3   GM as of the time of its creation in 2009 and at every point thereafter, New GM had

4   superior knowledge and access to the facts, and New GM knew the facts were not

5   known to or reasonably discoverable by Plaintiffs and the Arizona Class.  New GM

6   also had a duty to disclose because it made many general affirmative representations

7   about the safety, quality, and lack of defects in its vehicles, as set forth above, which

8   were misleading, deceptive and incomplete without the disclosure of the additional

9   facts set forth above regarding defects in the class vehicles.  Having volunteered to

10  provide information to Plaintiffs, GM had the duty to disclose not just the partial

11  truth, but the entire truth. These omitted and concealed facts were material because

12  they directly impact the value of the class vehicles purchased or leased by Plaintiffs

13  and the Arizona Class.

14    206.   New GM actively concealed and/or suppressed these material facts, in

15  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

16  image and cost New GM money, and it did so at the expense of Plaintiffs and the

17  Arizona Class.

18    207.   On information and belief, New GM has still not made full and adequat

19  disclosure and continues to defraud Plaintiffs and the Arizona Class and conceal

20  material information regarding defects that exist in the class vehicles.

21    208.   Plaintiffs and the Arizona Class were unaware of these omitted materia

22  facts and would not have acted as they did if they had known of the concealed and/o

23  suppressed facts, in that they would not have purchased cars manufactured by New

24  GM; and/or they would not have purchased cars manufactured by Old GM in the

25  time after New GM had come into existence and had fraudulently opted to conceal,

26  and to misrepresent, the true facts about the vehicles; and/or would not have

27  continued to drive their vehicles or would have taken other affirmative steps.

28  Plaintiffs' and the Arizona Class's actions were justified.  New GM was in exclusive

KNAPP,
PETERSEN
& CLARKE

-39-

1 control of the material facts and such facts were not known to the public, Plaintiffs,

2 or the Arizona Class.

3    209.   Because of the concealment and/or suppression of the facts, Plaintiffs

4 and the Arizona Class sustained damage because they own vehicles that diminished

5 in value as a result of New GM's concealment of, and failure to timely disclose, the

6 defects in the class vehicles and the quality issues engendered by New GM's

7 corporate policies.  Had they been aware of the defects that existed in the class

8 vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

9 New GM came into existence either would have paid less for their vehicles or would

10 not have purchased or leased them at all; and no Plaintiffs regardless of time of

11 purchase or lease would have maintained their vehicles.

12    210.   The value of all Arizona Class Members' vehicles has diminished as a

13 result of New GM's fraudulent concealment of the defects which have tarnished the

14 Corvette brand and made any reasonable consumer reluctant to purchase any of the

15 class vehicles, let alone pay what otherwise would have been fair market value for

16 the vehicles.

17    211.   Accordingly, New GM is liable to the Arizona Class for damages in an

18 amount to be proven at trial.

19    212.   New GM's acts were done maliciously, oppressively, deliberately, with

20 intent to defraud, and in reckless disregard of Plaintiffs' and the Arizona Class's

21 rights and well-being to enrich New GM. New GM's conduct warrants an assessmer

22 of punitive damages in an amount sufficient to deter such conduct in the future,

23 which amount is to be determined according to proof.

### COUNT XI

### FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM

### AGAINST OLD GM IN BANKRUPTCY

27    213.   Plaintiffs reallege and incorporate by reference all paragraphs as though

28 fully set forth herein.

KNAPP,
PETERSEN
& CLARKE

-40-

1      214.   This claim is brought only on behalf of Arizona Class members who are

2 Arizona residents (the "Arizona Class").

3      215.   New GM was aware of the defects in class vehicles sold by Old GM

4 from the moment it came into existence upon entry of the Sale Order And Sale

5 Agreement by which New GM acquired substantially all the assets of Old GM.

6      216.   The Arizona Class did not receive notice of the defect in the class

7 vehicles prior to the entry of the Sale Order. No recall occurred.

8      217.   In September of 2009, the bankruptcy court entered the Bar Date Order,

9 establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims

10 to be filed against Old GM.

11      218.   Because New GM concealed its knowledge of the defect in class

12 vehicles, the Arizona Class did not receive notice of defect prior to the passage of the

13 Bar Date. No recall occurred.

14      219.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which

15 the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds

16 of the bankruptcy sale to, among others, the holders of claims that were ultimately

17 allowed.

18      220.   The out-of-pocket consideration provided by New GM for its

19 acquisition of Old GM consisted of 10% of the post-closing outstanding shares of

20 New GM common stock and two series of warrants, each to purchase 7.5% of the

21 post-closing shares of New GM (collectively, the "New GM Securities").

22      221.   Through an "accordion feature" in the Sale Agreement, New GM agreed

23 that it would provide additional consideration if the aggregate amount of allowed

24 general unsecured claims exceeded $35 billion. In that event, New GM would be

25 required to issue additional shares of New GM Common Stock for the benefit of the

26 GUC Trust's beneficiaries.

27 ////

28 ////

KNAPP,
PETERSEN
& CLARKE

1      222.   As of September 30, 2014, the total amount of Allowed Claims was

2   approximately $31.854 billion, and the total amount of Disputed Claims was

3   approximately $79.5 million.

4      223.   As of September 30, 2014, the GUC Trust had distributed more than

5   89% of the New GM Securities. After a subsequent November 12 distribution, the

6   total assets of the GUC Trust were approximately $773.7 million – all or nearly all o

7   which is already slated to pay the GUC Trust's expenses and existing beneficiaries o

8   the Trust.

9      224.   But for New GM's fraudulent concealment of the defects, the Arizona

10   Class would have filed claims against Old GM before the Bar Date.

11      225.   Had the Arizona Class filed timely claims before the Bar Date, the

12   claims would have been allowed.

13      226.   New GM's concealment and suppression of the material fact of the

14   defect in class vehicles over the first several months of its existence served to preven

15   the filing of claims by the Class.

16      227.   New GM had a duty to disclose the defect in class vehicles because the

17   information was known and/or accessible only to New GM who had superior

18   knowledge and access to the facts, and New GM knew the facts were not known to

19   or reasonably discoverable by Plaintiffs and the Arizona Class. These omitted and

20   concealed facts were material because they directly impacted the safety and the valu

21   of the class vehicles purchased or leased by Plaintiffs and the Arizona Class, who

22   had a limited period of time in which to file a claim against the manufacturer of the

23   vehicles, Old GM.

24      228.   Plaintiffs and the Arizona Class were unaware of these omitted material

25   facts and would not have acted as they did if they had known of the concealed and/o

26   suppressed facts. Plaintiffs' and the Arizona Class's actions were justified. New GM

27   was in exclusive control of the material facts and such facts were not known to the

28   public, Plaintiffs, or the Arizona Class.

KNAPP,
PETERSEN
& CLARKE

-42-

1      229.  Because of the concealment and/or suppression of the facts, Plaintiffs
2  and the Arizona Class sustained damage because they lost their chance to file a claim
3  against Old GM and seek payment from the GUC Trust. Had they been aware of the
4  defect that existed in their vehicles, Plaintiffs would have timely filed claims and
5  would have recovered from the GUC Trust.

6      230.  Accordingly, New GM is liable to the Arizona Class members for their
7  damages in an amount to be proven at trial.

8      231.  New GM's acts were done maliciously, oppressively, deliberately, with
9  intent to defraud, and in reckless disregard of Plaintiffs' and the Arizona Class's
10  rights and well-being to enrich New GM. New GM's conduct warrants an
11  assessment of punitive damages in an amount sufficient to deter such conduct in the
12  future, which amount is to be determined according to proof.

13                          **COUNT XII**

14            **THIRD-PARTY BENEFICIARY CLAIM**

15      232.  Plaintiffs reallege and incorporate by reference all paragraphs as though
16  fully set forth herein.

17      233.  This claim is brought only on behalf of Class members who are Arizona
18  residents (the "Arizona Class").

19      234.  In the Sales Agreement through which New GM acquired substantially
20  all of the assets of New GM, New GM explicitly agreed as follows:

21         From and after the Closing, [New GM] shall comply with the
22         certification, reporting and recall requirements of the National Traffic
23         and Motor Vehicle and Motor Vehicle Safety Act, the Transportation
24         Recall Enhancement, Accountability and Documentation Act, the Clean
25         Air Act, the California Health and Safety Code and similar Laws, in
26         each case, to the extent applicable in respect of vehicles and vehicle
27         parts manufactured or distributed by [Old GM].

KNAPP,
PETERSEN
& CLARKE   28  ////

1        235.   With the exception of the portion of the agreement that purports to

2   immunize New GM from its own independent misconduct with respect to cars and

3   parts made by Old GM, the Sales Agreement is a valid and binding contract.

4        236.   But for New GM's covenant to comply with the TREAD Act with

5   respect to cars and parts made by Old GM, the TREAD Act would have no

6   application to New GM with respect to those cars and parts. That is because the

7   TREAD Act on its face imposes reporting and recall obligations only on the

8   "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

9        237.   Because New GM agreed to comply with the TREAD Act with respect

10  to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

11  make quarterly submissions to NHTSA of "early warning reporting" data, including

12  incidents involving property damage, warranty claims, consumer complaints, and

13  field reports concerning failure, malfunction, lack of durability or other performance

14  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

15  underlying records on which the early warning reports are based and all records

16  containing information on malfunctions that may be related to motor vehicle safety.

17  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

18  or should know that a safety defect exists -- including notifying NHTSA and

19  consumers and ordering a recall if necessary.  See 49 U.S.C. § 30118(c); 49 C.F.R. §

20  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

21       238.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

22  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

23  with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the

24  benefit of having a manufacturer responsible for monitoring the safety of their Old

25  GM vehicles and making certain that any known defects would be promptly

26  remedied.

27       239.   Although the Sale Order which consummated New GM's purchase of

28  Old GM purported to give New GM immunity from claims concerning vehicles or

KNAPP,
PETERSEN
& CLARKE

1   parts made by Old GM, the bankruptcy court recently ruled that provision to be

2   unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

3   conduct with respect to cars and parts made by Old GM. Therefore, that provision of

4   the Sale Order and related provisions of the Sale Agreement cannot be read to bar

5   Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

6   breaches of the promise it made in the Sale Agreement.

7       240.   New GM breached its covenant to comply with the TREAD Act with

8   respect to class vehicles, as it failed to take action to remediate defects at any time,

9   up to the present.

10      241.   Plaintiffs and the Arizona Class were damaged as a result of New GM's

11  breach. Because of New GM's failure to timely remedy the defect in class vehicles,

12  the value of Old GM class vehicles has diminished in an amount to be determined at

13  trial.

14                              **COUNT XIII**

15                          **UNJUST ENRICHMENT**

16      242.   Plaintiffs reallege and incorporate by reference all paragraphs as though

17  fully set forth herein.

18      243.   This claim is brought on behalf of members of the Arizona Class who

19  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

20  after New GM came into existence, and who purchased or leased class vehicles in the

21  time period before New GM came into existence, which cars were still on the road

22  after New GM came into existence (the "Arizona Unjust Enrichment Class").

23      244.   New GM has received and retained a benefit from the Plaintiffs and

24  inequity has resulted.

25      245.   New GM has benefitted from selling and leasing defective cars,

26  including Certified Pre-Owned cars, whose value was artificially inflated by New

27  GM's concealment of defect issues that plagued class vehicles, for more than they

28  were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

KNAPP,
PETERSEN
& CLARKE

-45-

1    pay other costs.

2    246.   With respect to the class vehicles purchased before New GM came into

3    existence that were still on the road after New GM came into existence and as to

4    which New GM had unjustly and unlawfully determined not to recall, New GM

5    benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

6    from its statements about the success of New GM.

7    247.   Thus, all Arizona Unjust Enrichment Class Members conferred a benefi

8    on New GM.

9    248.   It is inequitable for New GM to retain these benefits.

10    249.   Plaintiffs were not aware about the true facts about class vehicles, and

11    did not benefit from GM's conduct.

12    250.   New GM knowingly accepted the benefits of its unjust conduct.

13    251.   As a result of New GM's conduct, the amount of its unjust enrichment

14    should be disgorged, in an amount according to proof.

15    **California**

16    **COUNT XIV**

17    **VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**

18    **(Cal. Civ. Code § 1750, et seq.)**

19    252.   Plaintiffs reallege and incorporate by reference all paragraphs as though

20    fully set forth herein.

21    253.   This claim is brought only on behalf of Nationwide Class Members who

22    are California residents (the "California Class").

23    254.   New GM is a "person" under Cal. Civ. Code § 1761(c).

24    255.   Plaintiffs and the California Class are "consumers," as defined by CAL.

25    CIVIL CODE § 1761(d), who purchased or leased one or more class vehicles.

26    256.   The California Legal Remedies Act ("CLRA") prohibits "unfair or

27    deceptive acts or practices undertaken by any person in a transaction intended to

28    result or which results in the sale or lease of goods or services to any consumer[.]"

KNAPP,
PETERSEN
& CLARKE

-46-

1  Cal. Civ. Code § 1770(a). New GM has engaged in unfair or deceptive acts or

2  practices that violated Cal. Civ. Code § 1750, et seq., as described above and below,

3  by among other things, representing that class vehicles have characteristics, uses,

4  benefits, and qualities which they do not have; representing that class vehicles are of

5  a particular standard, quality, and grade when they are not; advertising class vehicles

6  with the intent not to sell or lease them as advertised; and representing that the

7  subject of a transaction involving class vehicles has been supplied in accordance with

8  a previous representation when it has not.

9        257.  In the course of its business, New GM systematically devalued safety

10  and concealed defects in class vehicles as described herein and otherwise engaged in

11  activities with a tendency or capacity to deceive. New GM also engaged in unlawful

12  trade practices by employing deception, deceptive acts or practices, fraud,

13  misrepresentations, or concealment, suppression or omission of any material fact

14  with intent that others rely upon such concealment, suppression or omission, in

15  connection with the sale of case vehicles.

16        258.  From the date of its inception on July 11, 2009, New GM knew of many

17  serious defects affecting many models and years of class vehicles, because of (i) the

18  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

19  investigations, and notifications from regulatory authorities; and (iii) ongoing

20  performance of New GM's TREAD Act obligations. New GM became aware of

21  other serious defects and systemic safety issues years ago, but concealed all of that

22  information.

23        259.  New GM was also aware that it valued cost-cutting over safety, selected

24  parts from the cheapest supplier regardless of quality, and actively discouraged

25  employees from finding and flagging known safety defects, and that this approach

26  would necessarily cause the existence of more defects in the vehicles it designed and

27  manufactured and the failure to disclose and remedy defects in all class vehicles.

28  New GM concealed this information as well.

KNAPP,
PETERSEN
& CLARKE

-47-

260.  By failing to disclose and by actively concealing the many defects in GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the CLRA.

261.  In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above.  New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

262.  New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

263.  New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the California Class.

264.  New GM knew or should have known that its conduct violated the CLRA.

265.  As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

266.  New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)  Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this

KNAPP, PETERSEN & CLARKE

-48-

1   approach would necessarily cause the existence of more defects in the vehicles it

2   designed and manufactured;

3          (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

4          (c)    Made incomplete representations about the safety and reliability

5   of the class vehicles generally, and the valve guide defects in particular, while

6   purposefully withholding material facts from Plaintiffs that contradicted these

7   representations.

8       267.   Because New GM fraudulently concealed the defects in the class

9   vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

10  attached to those vehicles by New GM's conduct, they are now worth significantly

11  less than they otherwise would be.

12      268.   New GM's systemic devaluation of safety and its concealment of the

13  defects in the class vehicles were material to Plaintiffs and the California Class. A

14  vehicle made by a reputable manufacturer of vehicles is worth more than an

15  otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

16  conceals defects rather than promptly remedies them.

17      269.   Plaintiffs and the California Class suffered ascertainable loss caused by

18  New GM's misrepresentations and its concealment of and failure to disclose materia

19  information. Plaintiffs who purchased class vehicles after the date of New GM's

20  inception either would have paid less for their vehicles or would not have purchased

21  or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result

22  of New GM's misconduct.

23      270.   Regardless of time of purchase or lease, no Plaintiffs would have

24  maintained and continued to drive their vehicles had they been aware of New GM's

25  misconduct. By contractually assuming TREAD Act responsibilities with respect to

26  Old GM class vehicles, New GM effectively assumed the role of manufacturer of

27  those vehicles because the TREAD Act on its face only applies to vehicle

28  manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

KNAPP,
PETERSEN
& CLARKE

-49-