# Exhibit  J-2

1    vehicle owners to refrain from unfair and deceptive acts or practices under the

2    CLRA. And, in any event, all class vehicle owners suffered ascertainable loss of the

3    diminished value of their vehicles as a result of New GM's deceptive and unfair acts

4    and practices made in the course of New GM's business.

5        271.    As a direct and proximate result of New GM's violations of the CLRA,

6    Plaintiffs and the California Class have suffered injury-in-fact and/or actual damage.

7        272.    Under Cal. Civ. Code § 1780(a), Plaintiffs and the California Class seek

8    monetary relief against New GM measured as the diminution of the value of their

9    vehicles caused by New GM's violations of the CLRA as alleged herein.

10       273.    Under Cal. Civ. Code § 1780(b), Plaintiffs seek an additional award

11   against New GM of up to $5,000 for each California Class member who qualifies as

12   a "senior citizen" or "disabled person" under the CLRA. New GM knew or should

13   have known that its conduct was directed to one or more California Class Members

14   who are senior citizens or disabled persons. New GM's conduct caused one or more

15   of these senior citizens or disabled persons to suffer a substantial loss of property set

16   aside for retirement or for personal or family care and maintenance, or assets

17   essential to the health or welfare of the senior citizen or disabled person. One or

18   more California Class Members who are senior citizens or disabled persons are

19   substantially more vulnerable to New GM's conduct because of age, poor health or

20   infirmity, impaired understanding, restricted mobility, or disability, and each of them

21   suffered substantial physical, emotional, or economic damage resulting from New

22   GM's conduct.

23       274.    Plaintiffs also seek punitive damages against New GM because it

24   carried out reprehensible conduct with willful and conscious disregard of the rights

25   and safety of others, subjecting Plaintiffs and the California Class to potential cruel

26   and unjust hardship as a result. New GM intentionally and willfully deceived

27   ////

28   ////

KNAPP,
PETERSEN
& CLARKE

1 Plaintiffs on life-or-death matters, and concealed material facts that only New GM

2 knew. New GM's unlawful conduct constitutes malice, oppression, and fraud

3 warranting punitive damages under Cal. Civ. Code § 3294.

4     275. Plaintiffs further seek an order enjoining New GM's unfair or deceptive

5 acts or practices, restitution, punitive damages, costs of court, attorneys' fees under

6 Cal. Civ. Code § 1780(e), and any other just and proper relief available under the

7 CLRA.

8 **COUNT XV**

9 **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (Cal.**

10 **Bus. & Prof. Code § 17200, et seq.)**

11     276. Plaintiffs reallege and incorporate by reference all paragraphs as though

12 fully set forth herein.

13     277. This claim is brought only on behalf of Nationwide Class Members who

14 are California residents (the "California Class").

15     278. California Business and Professions Code § 17200 prohibits any

16 "unlawful, unfair, or fraudulent business act or practices." New GM has engaged in

17 unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

18     279. New GM violated the unlawful prong of § 17200 by the following:

19     (a) violations of the CLRA, Cal. Civ. Code § 1750, et seq., as set

20 forth in California Count I by the acts and practices set forth in this Complaint.

21     (b) violation of the common-law claim of negligent failure to recall,

22 in that New GM knew or should have known the defects in class vehicles were

23 dangerous and/or were likely to be dangerous when used in a reasonably foreseeable

24 manner; New GM became aware of the attendant risks after the class vehicles were

25 sold; continued to gain information further corroborating the defects; and failed to

26 adequately recall the class vehicles, which failure was a substantial factor in causing

27 Plaintiffs and the Class harm, including diminished value and out-of-pocket costs.

28 ////

KNAPP,
PETERSEN
& CLARKE

1       (c)    violation of the National Traffic and Motor Vehicle Safety Act of

2 1996, codified at 49 U.S.C. §§ 30101-30170, and its regulations. Federal Motor

3 Vehicle Safety Standard ("FMVSS") 573 governs a motor vehicle manufacturer's

4 responsibility to notify NHTSA of a motor vehicle defect within five days of

5 determining that the defect is safety related.  See 49 C.F.R. § 573.6. New GM

6 violated these reporting requirements by failing to report the myriad defects

7 discussed herein within the required time, and failing to timely recall all impacted

8 vehicles, despite its explicit promise in § 6.15 of the Sales Agreement to comply with

9 the Safety Act obligations of a "manufacturer" of Old GM vehicles.

10     280.   New GM also violated the unfair and fraudulent prong of section 17200

11 by systematically devaluing safety and concealing defects in the class vehicles,

12 information that was material to a reasonable consumer.

13     281.   New GM also violated the unfair prong of section 17200 because the

14 acts and practices set forth in the Complaint, including systematically devaluing

15 safety and concealing defects in the class vehicles, offend established public policy,

16 and also because the harm New GM caused consumers greatly outweighs any

17 benefits associated with those practices. New GM's conduct has also impaired

18 competition within the automotive vehicles market and has prevented Plaintiffs and

19 the California Class from making fully informed decisions about whether to lease,

20 purchase and/or retain the class vehicles.

21     282.   From the date of its inception on July 11, 2009, New GM knew of many

22 serious defects the vehicles, because of (i) the knowledge of Old GM personnel who

23 remained at New GM; (ii) continuous reports, investigations, and notifications from

24 regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act

25 obligations, as discussed above. New GM became aware of other serious defects and

26 systemic safety issues years ago, but concealed all of that information.

27     283.   New GM was also aware that it valued cost-cutting over safety, selected

28 parts from the cheapest supplier regardless of quality, and actively discouraged

KNAPP,
PETERSEN
& CLARKE

1   employees from finding and flagging known safety defects, and that this approach

2   would necessarily cause the existence of more defects in the vehicles it designed and

3   manufactured and the failure to disclose and remedy defects in all the class vehicles.

4   New GM concealed this information as well.

5    284. By failing to disclose and by actively concealing the many defects in

6   GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality

7   and by presenting itself as a reputable manufacturer that valued safety and stood

8   behind its vehicles after they were sold, New GM engaged in unlawful, unfair, or

9   fraudulent business acts or practices in violation of the UCL.

10    285. In the course of New GM's business, it willfully failed to disclose and

11   actively concealed the dangerous risk posed by the defects discussed above. New

12   GM compounded the deception by repeatedly asserting that the class vehicles were

13   safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

14   that valued safety and stood behind its vehicles once they are on the road.

15    286. New GM's unfair or deceptive acts or practices were likely to and did i

16   fact deceive reasonable consumers, including Plaintiffs, about the true safety and

17   reliability of the class vehicles, and the true value of the class vehicles.

18    287. New GM intentionally and knowingly misrepresented material facts

19   regarding the class vehicles with an intent to mislead Plaintiffs and the California

20   Class.

21    288. New GM knew or should have known that its conduct violated the UCl

22    289. As alleged above, New GM made material statements about the safety

23   and reliability of the class vehicles and the GM brand that were either false or

24   misleading.

25    290. New GM owed Plaintiffs a duty to disclose the true safety and reliabili

26   of the class vehicles and the devaluing of safety at New GM, because New GM:

27    (a) Possessed exclusive knowledge that it valued cost-cutting over

28   safety, selected parts from the cheapest supplier regardless of quality, and actively

KNAPP,
PETERSEN
& CLARKE

-53-

1   discouraged employees from finding and flagging known safety defects, and that this

2   approach would necessarily cause the existence of more defects in the vehicles it

3   designed and manufactured;

4           (b)     Intentionally concealed the foregoing from Plaintiffs; and/or

5           (c)     Made incomplete representations about the safety and reliability

6   of the class vehicles generally, and the valve guide defects in particular, while

7   purposefully withholding material facts from Plaintiffs that contradicted these

8   representations.

9       291.   Because New GM fraudulently concealed the defects in the class

10   vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma

11   attached to those vehicles by New GM's conduct, they are now worth significantly

12   less than they otherwise would be.

13       292.   New GM's systemic devaluation of safety and its concealment of the

14   defects in GM the class vehicles were material to Plaintiffs and the California Class.

15   A vehicle made by a reputable manufacturer of vehicles is worth more than an

16   otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

17   conceals defects rather than promptly remedying them.

18       293.   Plaintiffs and the California Class suffered ascertainable loss caused by

19   New GM's misrepresentations and its concealment of and failure to disclose material

20   information. Plaintiffs who purchased class vehicles after the date of New GM's

21   inception either would have paid less for their vehicles or would not have purchased

22   or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

23   of New GM's misconduct.

24       294.   Regardless of time of purchase or lease, no Plaintiffs would have

25   maintained and continued to drive their vehicles had they been aware of New GM's

26   misconduct. By contractually assuming TREAD Act responsibilities with respect to

27   Old GM class vehicles, New GM effectively assumed the role of manufacturer of

28   those vehicles because the TREAD Act on its face only applies to vehicle

KNAPP,
PETERSEN
& CLARKE

-54-

1 | manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

2 | vehicle owners to refrain from unfair and deceptive acts or practices under the UCL.

3 | And, in any event, all class vehicle owners suffered ascertainable loss in the form of

4 | diminished value of their vehicles as a result of New GM's deceptive and unfair acts

5 | and practices made in the course of New GM's business.

6 |     295.    As a direct and proximate result of New GM's violations of the UCL,

7 | Plaintiffs and the California Class have suffered injury-in-fact and/or actual damage.

8 |     296.    Plaintiffs request that this Court enter such orders or judgments as may

9 | be necessary, including a declaratory judgment that New GM has violated the UCL;

10 | an order enjoining New GM from continuing its unfair, unlawful, and/or deceptive

11 | practices; an order supervising the recalls; an order and judgment restoring to the

12 | California Class Members any money lost as the result of New GM's unfair,

13 | unlawful, and deceptive trade practices, including restitution and disgorgement of

14 | any profits New GM received as a result of its unfair, unlawful, and/or deceptive

15 | practices, as provided in Cal. Bus. & Prof. Code § 17203, Cal Civ. Proc. § 384 and

16 | Cal. Civ. Code § 3345; and for such other relief as may be just and proper.

17 |                                  **COUNT XVI**

18 |                          **FRAUD BY CONCEALMENT**

19 |     297.    Plaintiffs reallege and incorporate by reference all paragraphs as though

20 | fully set forth herein.

21 |     298.    This claim is brought on behalf of Nationwide Class Members who are

22 | California residents (the "California Class").

23 |     299.    New GM concealed and suppressed material facts concerning the

24 | quality of the class vehicles.

25 |     300.    New GM concealed and suppressed material facts concerning the

26 | culture of New GM -- a culture characterized by an emphasis on cost-cutting, the

27 | studious avoidance of quality issues, and a shoddy design process.

KNAPP,
PETERSEN
& CLARKE    28 | ////

1      301.  New GM concealed and suppressed material facts concerning the

2  defects in the class vehicles, and that it valued cost-cutting over quality and took

3  steps to ensure that its employees did not reveal known defects to regulators or

4  consumers.

5      302.  New GM did so in order to boost confidence in its vehicles and falsely

6  assure purchasers and lessors of its vehicles and Certified Previously Owned vehicle

7  that New GM was a reputable manufacturer that stands behind its vehicles after they

8  are sold and that its vehicles are safe and reliable.  The false representations were

9  material to consumers, both because they concerned the quality and safety of the

10  class vehicles and because the representations played a significant role in the value c

11  the vehicles.

12      303.  New GM had a duty to disclose the defects in the class vehicles because

13  they were known and/or accessible only to New GM, were in fact known to New

14  GM as of the time of its creation in 2009 and at every point thereafter, New GM had

15  superior knowledge and access to the facts, and New GM knew the facts were not

16  known to or reasonably discoverable by Plaintiffs and the California Class.  New

17  GM also had a duty to disclose because it made many general affirmative

18  representations about the safety, quality, and lack of defects in its vehicles, as set

19  forth above, which were misleading, deceptive and incomplete without the disclosur

20  of the additional facts set forth above regarding defects in the class vehicles. Having

21  volunteered to provide information to Plaintiffs, GM had the duty to disclose not jus

22  the partial truth, but the entire truth. These omitted and concealed facts were materia

23  because they directly impact the value of the class vehicles purchased or leased by

24  Plaintiffs and the California Class.

25      304.  New GM actively concealed and/or suppressed these material facts, in

26  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

27  image and cost New GM money, and it did so at the expense of Plaintiffs and the

28  California Class.

KNAPP,
PETERSEN
& CLARKE

1    305.  On information and belief, New GM has still not made full and adequat

2  disclosure and continues to defraud Plaintiffs and the California Class and conceal

3  material information regarding defects that exist in the class vehicles.

4    306.  Plaintiffs and the California Class were unaware of these omitted

5  material facts and would not have acted as they did if they had known of the

6  concealed and/or suppressed facts, in that they would not have purchased cars

7  manufactured by New GM; and/or they would not have purchased cars manufactured

8  by Old GM in the time after New GM had come into existence and had fraudulently

9  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

10  not have continued to drive their vehicles or would have taken other affirmative

11  steps. Plaintiffs' and the California Class's actions were justified. New GM was in

12  exclusive control of the material facts and such facts were not known to the public,

13  Plaintiffs, or the California Class.

14    307.  Because of the concealment and/or suppression of the facts, Plaintiffs

15  and the California Class sustained damage because they own vehicles that

16  diminished in value as a result of New GM's concealment of, and failure to timely

17  disclose, the defects in the class vehicles and the quality issues engendered by New

18  GM's corporate policies.  Had they been aware of the defects that existed in the class

19  vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

20  New GM came into existence either would have paid less for their vehicles or would

21  not have purchased or leased them at all; and no Plaintiffs regardless of time of

22  purchase or lease would have maintained their vehicles.

23    308.  The value of all California Class Members' vehicles has diminished as a

24  result of New GM's fraudulent concealment of the defects which have tarnished the

25  Corvette brand and made any reasonable consumer reluctant to purchase any of the

26  class vehicles, let alone pay what otherwise would have been fair market value for

27  the vehicles.

28  ////

KNAPP,
PETERSEN
& CLARKE

1    309.   Accordingly, New GM is liable to the California Class for damages in

2  an amount to be proven at trial.

3    310.   New GM's acts were done maliciously, oppressively, deliberately, with

4  intent to defraud, and in reckless disregard of Plaintiffs' and the California Class's

5  rights and well-being to enrich New GM. New GM's conduct warrants an assessmer

6  of punitive damages in an amount sufficient to deter such conduct in the future,

7  which amount is to be determined according to proof.

8                            **COUNT XVII**

9  **VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR**

10    **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

11                    **(Cal. Civ. Code §§ 1791.1 & 1792)**

12    311.   Plaintiffs reallege and incorporate by reference all paragraphs as though

13  fully set forth herein.

14    312.   This claim is brought only on behalf of California residents who are

15  members of the Nationwide Class ("California Class").

16    313.   Plaintiffs are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

17    314.   The class vehicles are "consumer goods" within the meaning of Civ.

18  Code § 1791(a).

19    315.   New GM was a "manufacturer" of the class vehicles within the meanin;

20  of Cal. Civ. Code § 1791(j).

21    316.   New GM impliedly warranted to Plaintiffs and the California Class that

22  its class vehicles sold or leased on or after July 11, 2009 were "merchantable" within

23  the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the class vehicles do

24  not have the quality that a buyer would reasonably expect, and were therefore not

25  merchantable.

26    317.   1536. Cal. Civ. Code § 1791.1(a) states:

27    "Implied warranty of merchantability" or "implied warranty that goods are

28  merchantable" means that the consumer goods meet each of the following:

KNAPP,
PETERSEN
& CLARKE

1      (1)  Pass without objection in the trade under the contract

2 description.

3      (2)  Are fit for the ordinary purposes for which such

4 goods are used.

5      (3)  Are adequately contained, packaged, and labeled.

6      (4)  Conform to the promises or affirmations of fact

7 made on the container or label.

8   318. The class vehicles would not pass without objection in the automotive

9 trade because of the defects that cause the class vehicles to suffer unusual and early

10 engine wear and failure.

11   319. Because of these defects, the class vehicles are not reliable to drive and

12 thus not fit for ordinary purposes.

13   320. The class vehicles are not adequately labeled because the labeling fails

14 to disclose the defects. New GM failed to warn about the defects in the class

15 vehicles.

16   321. New GM breached the implied warranty of merchantability by selling

17 class vehicles containing defects. These defects have deprived Plaintiffs and the

18 California Class of the benefit of their bargain and have caused the class vehicles to

19 depreciate in value.

20   322. Notice of breach is not required because Plaintiffs and California Class

21 members did not purchase their automobiles directly from New GM.

22   323. As a direct and proximate result of New GM's breach of its duties under

23 California's law, Plaintiffs and California Class members received goods whose

24 defective condition substantially impairs their value. Plaintiffs and the California

25 Class members have been damaged by the diminished value of their vehicles, the

26 product's malfunctioning, and the loss of use of their class vehicles.

27   324. Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and California

28 Class members are entitled to damages and other legal and equitable relief including

KNAPP,
PETERSEN
& CLARKE

-59-

1  at their election, the purchase price of their class vehicles, or the overpayment or

2  diminution in value of their class vehicles.

3      325.  Under Cal. Civ. Code § 1794, Plaintiffs and California Class members

4  are entitled to costs and attorneys' fees.

5                          **COUNT XVIII**

6                  **NEGLIGENT FAILURE TO RECALL**

7      326.  Plaintiffs reallege and incorporate by reference all paragraphs as though

8  fully set forth herein.

9      327.  This claim is brought only on behalf of California residents who are

10  members of the Nationwide Class (the "California Class").

11      328.  New GM manufactured, distributed, and sold class vehicles.

12      329.  New GM knew or reasonably should have known that the class vehicles

13  were dangerous and/or were likely to be dangerous when used in a reasonably

14  foreseeable manner.

15      330.  New GM either knew of the defects before the vehicles were sold, or

16  became aware of the defects and their attendant risks after the vehicles were sold.

17      331.  New GM continued to gain information further corroborating the

18  defects and their risks from its inception until this year.

19      332.  New GM failed to adequately recall the class vehicles in a timely

20  manner.

21      333.  Purchasers of the class vehicles, including the California Class, were

22  harmed by New GM's failure to adequately recall all the class vehicles in a timely

23  manner and have suffered damages, including, without limitation, damage to other

24  components of the class vehicles caused by the defects, the diminished value of the

25  class vehicles, the cost of modification of the defective systems, and the costs

26  associated with the loss of use of the class vehicles.

27      334.  New GM's failure to timely and adequately recall the class vehicles wa

28  a substantial factor in causing the purchasers' harm, including that of Plaintiffs and

KNAPP,
PETERSEN
& CLARKE

1　the California Class.

**COUNT XIX**

**FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM**

**AGAINST OLD GM IN BANKRUPTCY**

5　　335.   Plaintiffs reallege and incorporate by reference all paragraphs as though

6　fully set forth herein.

7　　336.   This claim is brought only on behalf of Class members who are

8　California residents (the "California Class").

9　　337.   New GM was aware of the defects in class vehicles sold by Old GM

10　from the moment it came into existence upon entry of the Sale Order And Sale

11　Agreement by which New GM acquired substantially all the assets of Old GM.

12　　338.   The California Class did not receive notice of the defect in class

13　vehicles prior to the entry of the Sale Order.　No recall occurred.

14　　339.   In September of 2009, the bankruptcy court entered the Bar Date Order

15　establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claim

16　to be filed against Old GM.

17　　340.   Because New GM concealed its knowledge of the defect in class

18　vehicles, the California Class did not receive notice of the defect prior to the passage

19　of the Bar Date.　No recall occurred.

20　　341.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which

21　the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds

22　of the bankruptcy sale to, among others, the holders of claims that were ultimately

23　allowed.

24　　342.   The out-of-pocket consideration provided by New GM for its

25　acquisition of Old GM consisted of 10% of the post-closing outstanding shares of

26　New GM common stock and two series of warrants, each to purchase 7.5% of the

27　post-closing shares of New GM (collectively, the "New GM Securities").

KNAPP,
PETERSEN
& CLARKE　28　////

-61-

1     343.   Through an "accordion feature" in the Sale Agreement, New GM agreed

2  that it would provide additional consideration if the aggregate amount of allowed

3  general unsecured claims exceeded $35 billion. In that event, New GM would be

4  required to issue additional shares of New GM Common Stock for the benefit of the

5  GUC Trust's beneficiaries.

6     344.   As of September 30, 2014, the total amount of Allowed Claims was

7  approximately $31.854 billion, and the total amount of Disputed Claims was

8  approximately $79.5 million.

9     345.   As of September 30, 2014, the GUC Trust had distributed more than

10  89% of the New GM Securities. After a subsequent November 12 distribution, the

11  total assets of the GUC Trust were approximately $773.7 million -- all or nearly all of

12  which is already slated to pay the GUC Trust's expenses and existing beneficiaries of

13  the Trust.

14     346.   But for New GM's fraudulent concealment of the defects, the California

15  Class would have filed claims against Old GM before the Bar Date.

16     347.   Had the California Class filed timely claims before the Bar Date, the

17  claims would have been allowed.

18     348.   New GM's concealment and suppression of the material fact of the

19  defect in class vehicles over the first several months of its existence served to prevent

20  the filing of claims by the Class.

21     349.   New GM had a duty to disclose the defects in class vehicles because the

22  information was known and/or accessible only to New GM who had superior

23  knowledge and access to the facts, and New GM knew the facts were not known to

24  or reasonably discoverable by Plaintiffs and the California Class. These omitted and

25  concealed facts were material because they directly impacted the safety and the value

26  of the class vehicles purchased or leased by Plaintiffs and the California Class, who

27  had a limited period of time in which to file a claim against the manufacturer of the

28  vehicles, Old GM.

KNAPP,
PETERSEN
& CLARKE

-62-

1       350.   Plaintiffs and the California Class were unaware of these omitted

2  material facts and would not have acted as they did if they had known of the

3  concealed and/or suppressed facts.  Plaintiffs' and the California Class's actions were

4  justified.  New GM was in exclusive control of the material facts and such facts were

5  not known to the public, Plaintiffs, or the California Class.

6       351.   Because of the concealment and/or suppression of the facts, Plaintiffs

7  and the California Class sustained damage because they lost their chance to file a

8  claim against Old GM and seek payment from the GUC Trust.  Had they been aware

9  of the defects that existed in their vehicles, Plaintiffs would have timely filed claims

10  and would have recovered from the GUC Trust.

11       352.   Accordingly, New GM is liable to the California Class members for

12  their damages in an amount to be proven at trial.

13       353.   New GM's acts were done maliciously, oppressively, deliberately, with

14  intent to defraud, and in reckless disregard of Plaintiffs' and the California Class's

15  rights and well-being to enrich New GM. New GM's conduct warrants an assessmen

16  of punitive damages in an amount sufficient to deter such conduct in the future,

17  which amount is to be determined according to proof.

18                **COUNT XX**

19      **THIRD-PARTY BENEFICIARY CLAIM**

20       354.   Plaintiffs reallege and incorporate by reference all paragraphs as though

21  fully set forth herein.

22       355.   This claim is brought only on behalf of Class members who are

23  California residents (the "California Class").

24       356.   In the Sales Agreement through which New GM acquired substantially

25  all of the assets of New GM, New GM explicitly agreed as follows:

26          From and after the Closing, [New GM] shall comply with the

27  certification, reporting and recall requirements of the National Traffic

28  and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

KNAPP,
PETERSEN
& CLARKE

-63-

1    Recall Enhancement, Accountability and Documentation Act, the Clean

2    Air Act, the California Health and Safety Code and similar Laws, in

3    each case, to the extent applicable in respect of vehicles and vehicle

4    parts manufactured or distributed by [Old GM].

5    357.   With the exception of the portion of the agreement that purports to

6    immunize New GM from its own independent misconduct with respect to cars and

7    parts made by Old GM, the Sales Agreement is a valid and binding contract.

8    358.   But for New GM's covenant to comply with the TREAD Act with

9    respect to cars and parts made by Old GM, the TREAD Act would have no

10    application to New GM with respect to those cars and parts. That is because the

11    TREAD Act on its face imposes reporting and recall obligations only on the

12    "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

13    359.   Because New GM agreed to comply with the TREAD Act with respect

14    to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

15    make quarterly submissions to NHTSA of "early warning reporting" data, including

16    incidents involving property damage, warranty claims, consumer complaints, and

17    field reports concerning failure, malfunction, lack of durability or other performance

18    issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

19    underlying records on which the early warning reports are based and all records

20    containing information on malfunctions that may be related to motor vehicle safety.

21    See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

22    or should know that a safety defect exists – including notifying NHTSA and

23    consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

24    573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

25    360.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

26    Old GM, are the clear intended beneficiaries of New GM's agreement to comply

27    with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

28    benefit of having a manufacturer responsible for monitoring the safety of their Old

KNAPP,
PETERSEN
& CLARKE

-64-

1   GM vehicles and making certain that any known defects would be promptly

2   remedied.

3       361.   Although the Sale Order which consummated New GM's purchase of

4   Old GM purported to give New GM immunity from claims concerning vehicles or

5   parts made by Old GM, the bankruptcy court recently ruled that provision to be

6   unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

7   conduct with respect to cars and parts made by Old GM. Therefore, that provision of

8   the Sale Order and related provisions of the Sale Agreement cannot be read to bar

9   Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

10  breaches of the promise it made in the Sale Agreement.

11      362.   New GM breached its covenant to comply with the TREAD Act with

12  respect to the class vehicles, as it failed to take action to remediate the defects at any

13  time, up to the present.

14      363.   Plaintiffs and the California Class were damaged as a result of New

15  GM's breach. Because of New GM's failure to timely remedy the defect in class

16  vehicles, the value of Old GM class vehicles has diminished in an amount to be

17  determined at trial.

18                    **COUNT. XXI**

19                   **UNJUST ENRICHMENT**

20      364.   Plaintiffs reallege and incorporate by reference all paragraphs as though

21  fully set forth herein.

22      365.   This claim is brought on behalf of members of the California Class who

23  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time perioc

24  after New GM came into existence, and who purchased or leased class vehicles in th

25  time period before New GM came into existence, which cars were still on the road

26  after New GM came into existence (the "California Unjust Enrichment Class").

27      366.   New GM has received and retained a benefit from the Plaintiffs and

28  inequity has resulted.

KNAPP,
PETERSEN
& CLARKE

367. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

368. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

369. Thus, all California Unjust Enrichment Class Members conferred a benefit on New GM.

370. It is inequitable for New GM to retain these benefits.

371. Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

372. New GM knowingly accepted the benefits of its unjust conduct.

373. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Florida**

**COUNT XXII**

**VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE**

**TRADE PRACTICES ACT**

**(FLA. STAT. § 501.201, et seq.)**

374. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

375. This claim is brought only on behalf of Nationwide Class Members who are Florida residents (the "Florida Class").

////

KNAPP,
PETERSEN
& CLARKE

376.   Plaintiffs are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), FLA. STAT. § 501.203(7).

377.   New GM engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

378.   FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce ..." FLA. STAT. § 501.204(1). New GM participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

379.   In the course of its business, New GM systematically devalued safety and concealed the defects in class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

380.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

381.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all GM-branded vehicles. New GM concealed this information as well.

KNAPP,
PETERSEN
& CLARKE

-67-

1    382.   By failing to disclose and by actively concealing the many defects in

2  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

3  presenting itself as a reputable manufacturer that valued safety and stood behind its

4  vehicles after they were sold, New GM engaged in unfair, unconscionable, and

5  deceptive business practices in violation of the FUDTPA.

6    383.   In the course of New GM's business, it willfully failed to disclose and

7  actively concealed the dangerous risk posed by the defects discussed above.  New

8  GM compounded the deception by repeatedly asserting that GM-branded vehicles

9  were safe, reliable, and of high quality, and by claiming to be a reputable

10  manufacturer that valued safety and stood behind its vehicles once they are on the

11  road.

12    384.   New GM's unfair or deceptive acts or practices were likely to and did in

13  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

14  reliability of class vehicles, the quality of the GM brand, the devaluing of safety at

15  New GM, and the true value of the class vehicles.

16    385.   New GM intentionally and knowingly misrepresented material facts

17  regarding the class vehicles with an intent to mislead Plaintiffs and the Florida Class.

18    386.   New GM knew or should have known that its conduct violated the

19  FUDTPA.

20    387.   As alleged above, New GM made material statements about the safety

21  and reliability of the class vehicles and the GM brand that were either false or

22  misleading.

23    388.   New GM owed Plaintiffs a duty to disclose the true safety and reliability

24  of the class vehicles and the devaluing of safety at New GM, because New GM:

25    (a)   Possessed exclusive knowledge that it valued cost-cutting over

26  safety, selected parts from the cheapest supplier regardless of quality, and actively

27  discouraged employees from finding and flagging known safety defects, and that this

28  approach would necessarily cause the existence of more defects in the vehicles it

KNAPP,
PETERSEN
& CLARKE

-68-

1    designed and manufactured;

2              (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

3              (c)    Made incomplete representations about the safety and reliability

4    of the class vehicles generally, and the valve guide defect in particular, while

5    purposefully withholding material facts from Plaintiffs that contradicted these

6    representations.

7        389.    Because New GM fraudulently concealed the defects in the class

8    vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma

9    attached to those vehicles by New GM's conduct, they are now worth significantly

10    less than they otherwise would be.

11        390.    New GM's systemic devaluation of safety and its concealment of the

12    defects in the class vehicles were material to Plaintiffs and the Florida Class.  A

13    vehicle made by a reputable manufacturer of vehicles is worth more than an

14    otherwise comparable vehicle made by a disreputable manufacturer of unsafe

15    vehicles that conceals defects rather than promptly remedying them.

16        391.    Plaintiffs and the Florida Class suffered ascertainable loss caused by

17    New GM's misrepresentations and its concealment of and failure to disclose material

18    information.  Plaintiffs who purchased the class vehicles after the date of New GM's

19    inception either would have paid less for their vehicles or would not have purchased

20    or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

21    of New GM's misconduct.

22        392.    Regardless of time of purchase or lease, no Plaintiffs would have

23    maintained and continued to drive their vehicles had they been aware of New GM's

24    misconduct no Plaintiffs would have maintained and continued to drive their vehicle:

25    had they been aware of New GM's misconduct had they been aware of New GM's

26    misconduct.  By contractually assuming TREAD Act responsibilities with respect to

27    Old GM class vehicles, New GM effectively assumed the role of manufacturer of

28    those vehicles because the TREAD Act on its face only applies to vehicle

KNARP,
PETERSEN
& CLARKE

1   manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

2   vehicle owners to refrain from unfair and deceptive acts or practices under the

3   FUDTPA. And, in any event, all class vehicle owners suffered ascertainable loss in

4   the form of diminished value of their vehicles as a result of New GM's deceptive and

5   unfair acts and practices made in the course of New GM's business.

6        393.   Plaintiffs and Florida Class Members risk irreparable injury as a result

7   of New GM's act and omissions in violation of the FUDTPA.

8        394.   As a direct and proximate result of New GM's violations of the

9   FUDTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual

10   damage.

11        395.   Plaintiffs and the Florida Class are entitled to recover their actual

12   damages under FLA. STAT. § 501.211(2) and attorneys' fees under FLA. STAT. §

13   501.2105(1).

14        396.   Plaintiffs also seek an order enjoining New GM's unfair, unlawful,

15   and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and

16   proper relief available under the FUDTPA.

17                   **COUNT XXIII**

18             **FRAUD BY CONCEALMENT**

19        397.   Plaintiffs reallege and incorporate by reference all paragraphs as though

20   fully set forth herein.

21        398.   This claim is brought on behalf of Nationwide Class Members who are

22   Florida residents (the "Florida Class").

23        399.   New GM concealed and suppressed material facts concerning the

24   quality of the class vehicles.

25        400.   New GM concealed and suppressed material facts concerning the

26   culture of New GM – a culture characterized by an emphasis on cost-cutting, the

27   studious avoidance of quality issues, and a shoddy design process.

KNAPP,
PETERSEN
& CLARKE  28   ////

401.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

402.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

403.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Florida Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Florida Class.

404.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Florida Class.

KNAPP,
PETERSEN
& CLARKE

-71-

1    405.   On information and belief, New GM has still not made full and adequate

2 disclosure and continues to defraud Plaintiffs and the Florida Class and conceal

3 material information regarding defects that exist in the class vehicles.

4    406.   Plaintiffs and the Florida Class were unaware of these omitted material

5 facts and would not have acted as they did if they had known of the concealed and/or

6 suppressed facts, in that they would not have purchased cars manufactured by New

7 GM; and/or they would not have purchased cars manufactured by Old GM in the

8 time after New GM had come into existence and had fraudulently opted to conceal,

9 and to misrepresent, the true facts about the vehicles; and/or would not have

10 continued to drive their vehicles or would have taken other affirmative steps.

11 Plaintiffs' and the Florida Class's actions were justified.  New GM was in exclusive

12 control of the material facts and such facts were not known to the public, Plaintiffs,

13 or the Florida Class.

14    407.   Because of the concealment and/or suppression of the facts, Plaintiffs

15 and the Florida Class sustained damage because they own vehicles that diminished in

16 value as a result of New GM's concealment of, and failure to timely disclose, the

17 defects in the class vehicles and the quality issues engendered by New GM's

18 corporate policies.  Had they been aware of the defects that existed in the class

19 vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

20 New GM came into existence either would have paid less for their vehicles or would

21 not have purchased or leased them at all; and no Plaintiffs regardless of time of

22 purchase or lease would have maintained their vehicles.

23    408.   The value of all Florida Class Members' vehicles has diminished as a

24 result of New GM's fraudulent concealment of the defects which have tarnished the

25 Corvette brand and made any reasonable consumer reluctant to purchase any of the

26 class vehicles, let alone pay what otherwise would have been fair market value for

27 the vehicles.

KNAPP,
PETERSEN
& CLARKE   28 ////

1      409.   Accordingly, New GM is liable to the Florida Class for damages in an

2  amount to be proven at trial.

3      410.   New GM's acts were done maliciously, oppressively, deliberately, with

4  intent to defraud, and in reckless disregard of Plaintiffs' and the Florida Class's

5  rights and well-being to enrich New GM. New GM's conduct warrants an assessmen

6  of punitive damages in an amount sufficient to deter such conduct in the future,

7  which amount is to be determined according to proof.

8                           **COUNT NO. XXIV**

9    **FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM**

10             **AGAINST OLD GM IN BANKRUPTCY**

11      411.   Plaintiffs reallege and incorporate by reference all paragraphs as though

12  fully set forth herein.

13      412.   This claim is brought only on behalf of the Florida Class.

14      413.   New GM was aware of the defects in class vehicles sold by Old GM

15  from the moment it came into existence upon entry of the Sale Order And Sale

16  Agreement by which New GM acquired substantially all the assets of Old GM.

17      414.   The Florida Class did not receive notice of the defect prior in class

18  vehicles to the entry of the Sale Order.  No recall occurred.

19      415.   In September of 2009, the bankruptcy court entered the Bar Date Order,

20  establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claim

21  to be filed against Old GM.

22      416.   Because New GM concealed its knowledge of the defect in class

23  vehicles, the Florida Class did not receive notice of the defect prior to the passage of

24  the Bar Date.  No recall occurred.

25      417.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which

26  the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceed

27  of the bankruptcy sale to, among others, the holders of claims that were ultimately

28  allowed.

KNAPP,
PETERSEN
& CLARKE

418.    The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

419.    Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion. In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

420.    As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

421.    As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities. After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all o which is already slated to pay the GUC Trust's expenses and existing beneficiaries o the Trust.

422.    But for New GM's fraudulent concealment of the defects, the Florida Class would have filed claims against Old GM before the Bar Date.

423.    Had the Florida Class filed timely claims before the Bar Date, the claims would have been allowed.

424.    New GM's concealment and suppression of the material fact of the defect in class vehicles over the first several months of its existence served to preven the filing of claims by the Florida Class.

425.    New GM had a duty to disclose the defects in class vehicles because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Florida Class. These omitted and

KNAPP,
PETERSEN
& CLARKE

-74-

1   concealed facts were material because they directly impacted the safety and the value

2   of the class vehicles purchased or leased by Plaintiffs and the Florida Class, who had

3   a limited period of time in which to file a claim against the manufacturer of the

4   vehicles, Old GM.

5      426.   Plaintiffs and the Florida Class were unaware of these omitted material

6   facts and would not have acted as they did if they had known of the concealed and/or

7   suppressed facts. Plaintiffs' and the Florida Class's actions were justified. New GM

8   was in exclusive control of the material facts and such facts were not known to the

9   public, Plaintiffs, or the Florida Class.

10     427.   Because of the concealment and/or suppression of the facts, Plaintiffs

11  and the Florida Class sustained damage because they lost their chance to file a claim

12  against Old GM and seek payment from the GUC Trust.  Had they been aware of the

13  defects that existed in their vehicles, Plaintiffs would have timely filed claims and

14  would have recovered from the GUC Trust.

15     428.   Accordingly, New GM is liable to the Florida Class members for their

16  damages in an amount to be proven at trial.

17     429.   New GM's acts were done maliciously, oppressively, deliberately, with

18  intent to defraud, and in reckless disregard of Plaintiffs' and the Florida Class's

19  rights and well-being to enrich New GM. New GM's conduct warrants an assessmen

20  of punitive damages in an amount sufficient to deter such conduct in the future,

21  which amount is to be determined according to proof.

22                            **COUNT XXV**

23                  **THIRD-PARTY BENEFICIARY CLAIM**

24     430.   Plaintiffs reallege and incorporate by reference all paragraphs as though

25  fully set forth herein.

26     431.   This claim is brought only on behalf of Class members who are Florida

27  residents (the "Florida Class").

28  ////

KNAPP,
PETERSEN
& CLARKE

-75-

432.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

433.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

434.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

435.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

KNAPP,
PETERSEN
& CLARKE

1  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

2      436.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

3  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

4  with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

5  benefit of having a manufacturer responsible for monitoring the safety of their Old

6  GM vehicles and making certain that any known defects would be promptly

7  remedied.

8      437.   Although the Sale Order which consummated New GM's purchase of

9  Old GM purported to give New GM immunity from claims concerning vehicles or

10  parts made by Old GM, the bankruptcy court recently ruled that provision to be

11  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

12  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

13  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

14  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

15  breaches of the promise it made in the Sale Agreement.

16      438.   New GM breached its covenant to comply with the TREAD Act with

17  respect to the class vehicles, as it failed to take action to remediate the defects at any

18  time, up to the present.

19      439.   Plaintiffs and the Florida Class were damaged as a result of New GM's

20  breach. Because of New GM's failure to timely remedy the defect in class vehicles,

21  the value of class vehicles has diminished in an amount to be determined at trial.

22                          **COUNT XXVI**

23                     **UNJUST ENRICHMENT**

24      440.   Plaintiffs reallege and incorporate by reference all paragraphs as though

25  fully set forth herein.

26      441.   This claim is brought on behalf of members of the Florida Class who

27  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

28  after New GM came into existence, and who purchased or leased class vehicles in the

KNAPP,
PETERSEN
& CLARKE

1    time period before New GM came into existence, which cars were still on the road

2    after New GM came into existence (the "Florida Unjust Enrichment Class").

3        442.   New GM has received and retained a benefit from the Plaintiffs and

4    inequity has resulted.

5        443.   New GM has benefitted from selling and leasing defective cars,

6    including Certified Pre-Owned cars, whose value was artificially inflated by New

7    GM's concealment of defect issues that plagued the class vehicles, for more than

8    they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced

9    to pay other costs.

10        444.   With respect to the class vehicles purchased before New GM came into

11    existence that were still on the road after New GM came into existence and as to

12    which New GM had unjustly and unlawfully determined not to recall, New GM

13    benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

14    from its statements about the success of New GM.

15        445.   Thus, all Florida Unjust Enrichment Class Members conferred a benefit

16    on New GM.

17        446.   It is inequitable for New GM to retain these benefits.

18        447.   Plaintiffs were not aware about the true facts about class vehicles, and

19    did not benefit from GM's conduct.

20        448.   New GM knowingly accepted the benefits of its unjust conduct.

21        449.   As a result of New GM's conduct, the amount of its unjust enrichment

22    should be disgorged, in an amount according to proof.

23    ////

24    ////

25    ////

26    ////

27    ////

28    ////

KNAPP,
PETERSEN
& CLARKE

1 <u>Illinois</u>

2 **COUNT XXVII**

3 **VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE**

4 **BUSINESS PRACTICES ACT**

5 **(815 ILCS 505/1, et seq. and 720 ILCS 295/1A)**

6 450.    Plaintiffs reallege and incorporate by reference all paragraphs as though

7 fully set forth herein.

8 451.    This claim is brought only on behalf of Nationwide Class Members who

9 are Illinois residents (the "Illinois Class").

10 452.    New GM is a "person" as that term is defined in 815 ILCS 505/1(c).

11 453.    Plaintiff and the Illinois Class are "consumers" as that term is defined in

12 815 ILCS 505/1(e).

13 454.    The Illinois Consumer Fraud and Deceptive Business Practices Act

14 ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not

15 limited to the use or employment of any deception, fraud, false pretense, false

16 promise, misrepresentation or the concealment, suppression or omission of any

17 material fact, with intent that others rely upon the concealment, suppression or

18 omission of such material fact . . . in the conduct of trade or commerce . . . whether

19 any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

20 455.    New GM participated in misleading, false, or deceptive acts that

21 violated the Illinois CFA.  New GM engaged in deceptive business practices

22 prohibited by the Illinois CFA.

23 456.    In the course of its business, New GM systematically devalued safety

24 and concealed defects in the class vehicles as described herein and otherwise

25 engaged in activities with a tendency or capacity to deceive.  New GM also engaged

26 in unlawful trade practices by employing deception, deceptive acts or practices,

27 fraud, misrepresentations, or concealment, suppression or omission of any material

28 fact with intent that others rely upon such concealment, suppression or omission, in

KNAPP,
PETERSEN
& CLARKE

-79-

1  connection with the sale of class vehicles.

2      457.   From the date of its inception on July 11, 2009, New GM knew of many

3  defects affecting many models and years of the class vehicles, because of (i) the

4  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

5  investigations, and notifications from regulatory authorities; and (iii) ongoing

6  performance of New GM's TREAD Act obligations.  New GM became aware of

7  other serious defects and systemic safety issues years ago, but concealed all of that

8  information.

9      458.   New GM was also aware that it valued cost-cutting over safety, selected

10 parts from the cheapest supplier regardless of quality, and actively discouraged

11 employees from finding and flagging known safety defects, and that this approach

12 would necessarily cause the existence of more defects in the vehicles it designed and

13 manufactured and the failure to disclose and remedy defects in all class vehicles.

14 New GM concealed this information as well.

15      459.   By failing to disclose and by actively concealing the many defects in the

16 class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

17 presenting itself as a reputable manufacturer that valued safety and stood behind its

18 vehicles after they were sold, New GM engaged in unfair and deceptive business

19 practices in violation of the Illinois CFA.

20      460.   In the course of New GM's business, it willfully failed to disclose and

21 actively concealed the dangerous risk posed by the defects discussed above.  New

22 GM compounded the deception by repeatedly asserting that class vehicles were safe,

23 reliable, and of high quality, and by claiming to be a reputable manufacturer that

24 valued safety and stood behind its vehicles once they are on the road.

25      461.   New GM's unfair or deceptive acts or practices were likely to and did in

26 fact deceive reasonable consumers, including Plaintiffs, about the true safety and

27 reliability of the class vehicles, the quality of the GM brand, the devaluing of safety

28 at New GM, and the true value of the class vehicles.

KNAPP,
PETERSEN
& CLARKE

-80-

462.    New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Illinois Class.

463.    New GM knew or should have known that its conduct violated the Illinois CFA.

464.    As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

465.    New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)    Intentionally concealed the foregoing from Plaintiffs; and/or

(c)    Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

466.    Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

467.    New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Illinois Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedying them.

KNAPP,
PETERSEN
& CLARKE

-81-

468.  Plaintiffs and the Illinois Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

469.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Illinois CFA.  And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

470.  As a direct and proximate result of New GM's violations of the Illinois CFA, Plaintiffs and the Illinois Class have suffered injury-in-fact and/or actual damage.

471.  Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Illinois Class seek monetary relief against New GM in the amount of actual damages, as well as punitive damages because New GM acted with fraud and/or malice and/or was grossly negligent.

472.  Plaintiffs also seek an order enjoining New GM's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 et seq.

////

////

KNAPP,
PETERSEN
& CLARKE

## COUNT XXVIII

### FRAUD BY CONCEALMENT

473.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

474.   This claim is brought on behalf of Nationwide Class Members who are Illinois residents (the "Illinois Class").

475.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

476.   New GM concealed and suppressed material facts concerning the culture of New GM -- a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

477.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

478.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicle that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value o the vehicles.

479.   New GM had a duty to disclose the many defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Illinois Class.  New GM also had a duty to disclose because it made many general affirmative

KNAPP,
PETERSEN
& CLARKE

-83-

1  representations about the safety, quality, and lack of defects in its vehicles, as set

2  forth above, which were misleading, deceptive and incomplete without the disclosure

3  of the additional facts set forth above regarding defects in the class vehicles. Having

4  volunteered to provide information to Plaintiffs, GM had the duty to disclose not just

5  the partial truth, but the entire truth. These omitted and concealed facts were material

6  because they directly impact the value of the class vehicles purchased or leased by

7  Plaintiffs and the Illinois Class.

8       480.   New GM actively concealed and/or suppressed these material facts, in

9  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

10  image and cost New GM money, and it did so at the expense of Plaintiffs and the

11  Illinois Class.

12       481.   On information and belief, New GM has still not made full and adequate

13  disclosure and continues to defraud Plaintiffs and the Illinois Class and conceal

14  material information regarding defects that exist in the class vehicles.

15       482.   Plaintiffs and the Illinois Class were unaware of these omitted material

16  facts and would not have acted as they did if they had known of the concealed and/or

17  suppressed facts, in that they would not have purchased cars manufactured by New

18  GM; and/or they would not have purchased cars manufactured by Old GM in the

19  time after New GM had come into existence and had fraudulently opted to conceal,

20  and to misrepresent, the true facts about the vehicles; and/or would not have

21  continued to drive their vehicles or would have taken other affirmative steps.

22  Plaintiffs' and the Illinois Class's actions were justified. New GM was in exclusive

23  control of the material facts and such facts were not known to the public, Plaintiffs,

24  or the Illinois Class.

25       483.   Because of the concealment and/or suppression of the facts, Plaintiffs

26  and the Illinois Class sustained damage because they own vehicles that diminished in

27  value as a result of New GM's concealment of, and failure to timely disclose, the

28  defects in the class vehicles and the quality issues engendered by New GM's

KNAPP,
PETERSEN
& CLARKE

-84-

1  corporate policies.  Had they been aware of the defects that existed in the class

2  vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

3  New GM came into existence either would have paid less for their vehicles or would

4  not have purchased or leased them at all; and no Plaintiffs regardless of time of

5  purchase or lease would have maintained their vehicles.

6      484.  The value of all Illinois Class Members' vehicles has diminished as a

7  result of New GM's fraudulent concealment of the defects which have tarnished the

8  Corvette brand and made any reasonable consumer reluctant to purchase any of the

9  class vehicles, let alone pay what otherwise would have been fair market value for

10  the vehicles.

11      485.  Accordingly, New GM is liable to the Illinois Class for damages in an

12  amount to be proven at trial.

13      486.  New GM's acts were done maliciously, oppressively, deliberately, with

14  intent to defraud, and in reckless disregard of Plaintiffs' and the Illinois Class's

15  rights and well-being to enrich New GM. New GM's conduct warrants an assessmen

16  of punitive damages in an amount sufficient to deter such conduct in the future,

17  which amount is to be determined according to proof.

18                **COUNT. XXIX**

19       **FRAUD BY CONCEALMENT OF THE RIGHT**

20   **TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

21      487.  Plaintiffs reallege and incorporate by reference all paragraphs as though

22  fully set forth herein.

23      488.  This claim is brought only on behalf of Class members who are Illinois

24  residents and who owned their class vehicle for at least some period of time between

25  July 11, 2009 and November 30, 2009.

26      489.  New GM was aware of the defects in class vehicles sold by Old GM

27  from the moment it came into existence upon entry of the Sale Order And Sale

28  Agreement by which New GM acquired substantially all the assets of Old GM.

KNAPP,
PETERSEN
& CLARKE

490.  The Illinois Class did not receive notice of the defect in the class vehicles prior to the entry of the Sale Order. No recall occurred.

491.  In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

492.  Because New GM concealed its knowledge of the defect in the class vehicles, the Illinois Class did not receive notice of the defect prior to the passage of the Bar Date.  No recall occurred.

493.  In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

494.  The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

495.  Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion. In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

496.  As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

497.  As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities. After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million -- all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of

1 the Trust.

2    498.   But for New GM's fraudulent concealment of the defects, the Illinois

3 Class would have filed claims against Old GM before the Bar Date.

4    499.   Had the Illinois Class filed timely claims before the Bar Date, the claims

5 would have been allowed.

6    500.   New GM's concealment and suppression of the material fact of the

7 defect in class vehicles over the first several months of its existence served to prevent

8 the filing of claims by the Class.

9    501.   New GM had a duty to disclose the defects in class vehicles because the

10 information was known and/or accessible only to New GM who had superior

11 knowledge and access to the facts, and New GM knew the facts were not known to

12 or reasonably discoverable by Plaintiffs and the Illinois Class. These omitted and

13 concealed facts were material because they directly impacted the safety and the value

14 of the class vehicles purchased or leased by Plaintiffs and the Illinois Class, who had

15 a limited period of time in which to file a claim against the manufacturer of the

16 vehicles, Old GM.

17    502.   Plaintiffs and the Illinois Class were unaware of these omitted material

18 facts and would not have acted as they did if they had known of the concealed and/or

19 suppressed facts. Plaintiffs' and the Illinois Class's actions were justified. New GM

20 was in exclusive control of the material facts and such facts were not known to the

21 public, Plaintiffs, or the Illinois Class.

22    503.   Because of the concealment and/or suppression of the facts, Plaintiffs

23 and the Illinois Class sustained damage because they lost their chance to file a claim

24 against Old GM and seek payment from the GUC Trust. Had they been aware of the

25 defects that existed in their vehicles, Plaintiffs would have timely filed claims and

26 would have recovered from the GUC Trust.

27    504.   Accordingly, New GM is liable to the Illinois Class members for their

28 damages in an amount to be proven at trial.

KNAPP,
PETERSEN
& CLARKE

-87-

505.    New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Illinois Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XXX

### THIRD-PARTY BENEFICIARY CLAIM

506.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

507.    This claim is brought only on behalf of Class members who are Illinois residents (the "Illinois Class").

508.    In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

509.    With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

510.    But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

KNAPP,
PETERSEN
& CLARKE

-88-

1    511.    Because New GM agreed to comply with the TREAD Act with respect

2    to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

3    make quarterly submissions to NHTSA of "early warning reporting" data, including

4    incidents involving property damage, warranty claims, consumer complaints, and

5    field reports concerning failure, malfunction, lack of durability or other performance

6    issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

7    underlying records on which the early warning reports are based and all records

8    containing information on malfunctions that may be related to motor vehicle safety.

9    See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

10    or should know that a safety defect exists – including notifying NHTSA and

11    consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

12    573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

13    512.    Plaintiffs, as owners and lessors of vehicles and parts manufactured by

14    Old GM, are the clear intended beneficiaries of New GM's agreement to comply

15    with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

16    benefit of having a manufacturer responsible for monitoring the safety of their Old

17    GM vehicles and making certain that any known defects would be promptly

18    remedied.

19    513.    Although the Sale Order which consummated New GM's purchase of

20    Old GM purported to give New GM immunity from claims concerning vehicles or

21    parts made by Old GM, the bankruptcy court recently ruled that provision to be

22    unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

23    conduct with respect to cars and parts made by Old GM. Therefore, that provision of

24    the Sale Order and related provisions of the Sale Agreement cannot be read to bar

25    Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

26    breaches of the promise it made in the Sale Agreement.

27    514.    New GM breached its covenant to comply with the TREAD Act with

28    respect to the class vehicles, as it failed to take action to remediate the defects at any

KNAPP,
PETERSEN
& CLARKE

-89-

1   time, up to the present.

2       515.   Plaintiffs and the Illinois Class were damaged as a result of New GM's

3   breach.  Because of New GM's failure to timely remedy the defect in class vehicles,

4   the value of Old GM class vehicles has diminished in an amount to be determined at

5   trial.

6                            **COUNT XXXI**

7                         **UNJUST ENRICHMENT**

8       516.   Plaintiffs reallege and incorporate by reference all paragraphs as though

9   fully set forth herein.

10      517.   This claim is brought on behalf of members of the Illinois Class who

11  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

12  after New GM came into existence, and who purchased or leased class vehicles in the

13  time period before New GM came into existence, which cars were still on the road

14  after New GM came into existence (the "Illinois Unjust Enrichment Class").

15      518.   New GM has received and retained a benefit from the Plaintiffs and

16  inequity has resulted.

17      519.   New GM has benefitted from selling and leasing defective cars,

18  including Certified Pre-Owned cars, whose value was artificially inflated by New

19  GM's concealment of defect issues that plagued class vehicles, for more than they

20  were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

21  pay other costs.

22      520.   With respect to the class vehicles purchased before New GM came into

23  existence that were still on the road after New GM came into existence and as to

24  which New GM had unjustly and unlawfully determined not to recall, New GM

25  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

26  from its statements about the success of New GM.

27      521.   Thus, all Illinois Unjust Enrichment Class Members conferred a benefit

28  on New GM.

KNAPP,
PETERSEN
& CLARKE

522.    It is inequitable for New GM to retain these benefits.

523.    Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

524.    New GM knowingly accepted the benefits of its unjust conduct.

525.    As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Indiana**

## COUNT XXXII

## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

## (IND. CODE § 24-5-0.5-3)

526.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

527.    This claim is brought only on behalf of Nationwide Class Members who are Indiana residents (the "Indiana Class").

528.    New GM is a "person" within the meaning of IND. CODE § 24-5-0.5-2(2) and a "supplier" within the meaning of IND. CODE § 24-5-.05-2(a)(3).

529.    Plaintiffs' and Indiana Class Members' purchases of the class vehicles are "consumer transactions" within the meaning of IND. CODE § 24-5-.05-2(a)(1).

530.    Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive trade practice," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; ... (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; ... (b)

KNAPP,
PETERSEN
& CLARKE

-91-

1    Any representations on or within a product or its packaging or in advertising or

2    promotional materials which would constitute a deceptive act shall be the deceptive

3    act both of the supplier who places such a representation thereon or therein, or who

4    authored such materials, and such suppliers who shall state orally or in writing that

5    such representation is true if such other supplier shall know or have reason to know

6    that such representation was false."

7        531.   New GM participated in misleading, false, or deceptive acts that

8    violated the Indiana DCSA.  By systematically devaluing safety and concealing

9    defects in class vehicles, New GM engaged in deceptive business practices

10    prohibited by the Indiana DCSA.  New GM also engaged in unlawful trade practices

11    by: (1) representing that the class vehicles have characteristics, uses, benefits, and

12    qualities which they do not have; (2) representing that the class vehicles are of a

13    particular standard and quality when they are not; (3) advertising the class vehicles

14    with the intent not to sell them as advertised; and (4) otherwise engaging in conduct

15    likely to deceive.

16        532.   New GM's actions as set forth above occurred in the conduct of trade or

17    commerce.

18        533.   In the course of its business, New GM systematically devalued safety

19    and concealed defects in the class vehicles as described herein and otherwise

20    engaged in activities with a tendency or capacity to deceive.  New GM also engaged

21    in unlawful trade practices by employing deception, deceptive acts or practices,

22    fraud, misrepresentations, or concealment, suppression or omission of any material

23    fact with intent that others rely upon such concealment, suppression or omission, in

24    connection with the sale of class vehicles.

25        534.   From the date of its inception on July 11, 2009, New GM knew of many

26    serious defects affecting many models and years of GM-branded vehicles, because of

27    (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous

28    reports, investigations, and notifications from regulatory authorities; and (iii)

KNAPP,
PETERSEN
& CLARKE

1   ongoing performance of New GM's TREAD Act obligations. New GM became

2   aware of other serious defects and systemic safety issues years ago, but concealed all

3   of that information.

4       535.   New GM was also aware that it valued cost-cutting over safety, selected

5   parts from the cheapest supplier regardless of quality, and actively discouraged

6   employees from finding and flagging known safety defects, and that this approach

7   would necessarily cause the existence of more defects in the vehicles it designed and

8   manufactured and the failure to disclose and remedy defects in all GM-branded

9   vehicles. New GM concealed this information as well.

10      536.   By failing to disclose and by actively concealing the many defects in the

11  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

12  presenting itself as a reputable manufacturer that valued safety and stood behind its

13  vehicles after they were sold, New GM engaged in deceptive business practices in

14  violation of the Indiana DCSA.

15      537.   In the course of New GM's business, it willfully failed to disclose and

16  actively concealed the dangerous risk posed by the defects discussed above. New

17  GM compounded the deception by repeatedly asserting that the class vehicles were

18  safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

19  that valued safety and stood behind its vehicles once they are on the road.

20      538.   New GM's unfair or deceptive acts or practices were likely to and did in

21  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

22  reliability of GM-branded vehicles, the quality of the New GM brand, the devaluing

23  of safety at New GM, and the true value of the class vehicles.

24      539.   New GM intentionally and knowingly misrepresented material facts

25  regarding the class vehicles with an intent to mislead Plaintiffs and the Indiana Class.

26      540.   New GM knew or should have known that its conduct violated the

27  Indiana DCSA.

28  ////

KNAPP,
PETERSEN
& CLARKE

-93-

541.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

542.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)    Intentionally concealed the foregoing from Plaintiffs; and/or

(c)    Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

543.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

544.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Indiana Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedying them.

545.   Plaintiffs and the Indiana Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased

KNAPP,
PETERSEN
& CLARKE

-94-

1 | or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result
2 | of New GM's misconduct.

3 |     546.   Regardless of time of purchase or lease, no Plaintiffs would have
4 | maintained and continued to drive their vehicles had they been aware of New GM's
5 | misconduct. By contractually assuming TREAD Act responsibilities with respect to
6 | Old GM class vehicles, New GM effectively assumed the role of manufacturer of
7 | those vehicles because the TREAD Act on its face only applies to vehicle
8 | manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM
9 | vehicle owners to refrain from unfair and deceptive acts or practices under the
10 | Indiana DCSA. And, in any event, all class vehicle owners suffered ascertainable
11 | loss in the form of the diminished value of their vehicles as a result of New GM's
12 | deceptive and unfair acts and practices made in the course of New GM's business.

13 |     547.   As a direct and proximate result of New GM's violations of the Indiana
14 | DCSA, Plaintiffs and the Indiana Class have suffered injury-in-fact and/or actual
15 | damage.

16 |     548.   Pursuant to IND. CODE § 24-5-0.5-4, Plaintiffs and the Indiana Class
17 | seek monetary relief against New GM measured as the greater of (a) actual damages
18 | in an amount to be determined at trial and (b) statutory damages in the amount of
19 | $500 for each Plaintiff and each Indiana Class member, including treble damages up
20 | to $1,000 for New GM's willfully deceptive acts.

21 |     549.   Plaintiff also seeks punitive damages based on the outrageousness and
22 | recklessness of the New GM's conduct and New GM's high net worth.

23 | **COUNT XXXIII**

24 | **FRAUD BY CONCEALMENT**

25 |     550.   Plaintiffs reallege and incorporate by reference all paragraphs as though
26 | fully set forth herein.

27 |     551.   This claim is brought on behalf of Nationwide Class Members who are
28 | Indiana residents (the "Indiana Class").

KNAPP,
PETERSEN
& CLARKE

1       552.   New GM concealed and suppressed material facts concerning the

2   quality of the class vehicles.

3       553.   New GM concealed and suppressed material facts concerning the

4   culture of New GM – a culture characterized by an emphasis on cost-cutting, the

5   studious avoidance of quality issues, and a shoddy design process.

6       554.   New GM concealed and suppressed material facts concerning the

7   defects in the class vehicles, and that it valued cost-cutting over quality and took

8   steps to ensure that its employees did not reveal known defects to regulators or

9   consumers.

10      555.   New GM did so in order to boost confidence in its vehicles and falsely

11  assure purchasers and lessors of its vehicles and Certified Previously Owned vehicle:

12  that New GM was a reputable manufacturer that stands behind its vehicles after they

13  are sold and that its vehicles are safe and reliable. The false representations were

14  material to consumers, both because they concerned the quality and safety of the

15  class vehicles and because the representations played a significant role in the value o

16  the vehicles.

17      556.   New GM had a duty to disclose the defects in the class vehicles because

18  they were known and/or accessible only to New GM, were in fact known to New

19  GM as of the time of its creation in 2009 and at every point thereafter, New GM had

20  superior knowledge and access to the facts, and New GM knew the facts were not

21  known to or reasonably discoverable by Plaintiffs and the Indiana Class. New GM

22  also had a duty to disclose because it made many general affirmative representations

23  about the safety, quality, and lack of defects in its vehicles, as set forth above, which

24  were misleading, deceptive and incomplete without the disclosure of the additional

25  facts set forth above regarding defects in the class vehicles. Having volunteered to

26  provide information to Plaintiffs, GM had the duty to disclose not just the partial

27  truth, but the entire truth. These omitted and concealed facts were material because

28  they directly impact the value of the class vehicles purchased or leased by Plaintiffs

KNAPP,
PETERSEN
& CLARKE

-96-

1  and the Indiana Class.

2      557.   New GM actively concealed and/or suppressed these material facts, in

3  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

4  image and cost New GM money, and it did so at the expense of Plaintiffs and the

5  Indiana Class.

6      558.   On information and belief, New GM has still not made full and adequat·

7  disclosure and continues to defraud Plaintiffs and the Indiana Class and conceal

8  material information regarding defects that exist in the class vehicles.

9      559.   Plaintiffs and the Indiana Class were unaware of these omitted material

10 facts and would not have acted as they did if they had known of the concealed and/or

11 suppressed facts, in that they would not have purchased cars manufactured by New

12 GM; and/or they would not have purchased cars manufactured by Old GM in the

13 time after New GM had come into existence and had fraudulently opted to conceal,

14 and to misrepresent, the true facts about the vehicles; and/or would not have

15 continued to drive their vehicles or would have taken other affirmative steps.

16 Plaintiffs' and the Indiana Class's actions were justified. New GM was in exclusive

17 control of the material facts and such facts were not known to the public, Plaintiffs,

18 or the Indiana Class.

19     560.   Because of the concealment and/or suppression of the facts, Plaintiffs

20 and the Indiana Class sustained damage because they own vehicles that diminished

21 in value as a result of New GM's concealment of, and failure to timely disclose, the

22 defects in the class vehicles and the quality issues engendered by New GM's

23 corporate policies.  Had they been aware of the defects that existed in the class

24 vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

25 New GM came into existence either would have paid less for their vehicles or would

26 not have purchased or leased them at all; and no Plaintiffs regardless of time of

27 purchase or lease would have maintained their vehicles.

KNAPP,
PETERSEN
& CLARKE  28  ////

-97-

1       561.   The value of all Indiana Class Members' vehicles has diminished as a

2  result of New GM's fraudulent concealment of the defects which have tarnished the

3  Corvette brand and made any reasonable consumer reluctant to purchase any of the

4  class vehicles, let alone pay what otherwise would have been fair market value for

5  the vehicles.

6       562.   Accordingly, New GM is liable to the Indiana Class for damages in an

7  amount to be proven at trial.

8       563.   New GM's acts were done maliciously, oppressively, deliberately, with

9  intent to defraud, and in reckless disregard of Plaintiffs' and the Indiana Class's

10  rights and well-being to enrich New GM. New GM's conduct warrants an assessment

11  of punitive damages in an amount sufficient to deter such conduct in the future,

12  which amount is to be determined according to proof.

13              **COUNT XXXIV**

14    **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

15            **(IND. CODE § 26-1-2-314)**

16       564.   Plaintiffs reallege and incorporate by reference all paragraphs as though

17  fully set forth herein.

18       565.   This claim is brought only on behalf of Indiana residents who are

19  members of the Nationwide Class (the "Indiana Class").

20       566.   New GM was a merchant with respect to motor vehicles within the

21  meaning of IND. CODE § 26-1-2-104(1).

22       567.   Under IND. CODE § 26-1-2-314, a warranty that the class vehicles

23  were in merchantable condition was implied by law in the transactions when

24  Plaintiffs purchased or leased their class vehicles from New GM on or after July 11,

25  2009.

26       568.   These vehicles, when sold and at all times thereafter, were not

27  merchantable and are not fit for the ordinary purpose for which cars are used.

28  Specifically, the class vehicles are inherently defective in that there are defects which

KNAPP,
PETERSEN
& CLARKE

1   cause inordinate and unusual early wear and failure of engines.

2   569.   New GM was provided notice of these issues by numerous complaints

3   filed against it, internal investigations, and by numerous individual letters and

4   communications sent by Plaintiffs and the Indiana Class.

5   570.   As a direct and proximate result of New GM's breach of the implied

6   warranty of merchantability, Plaintiffs and the Indiana Class members have been

7   damaged in an amount to be proven at trial.

8                                    **COUNT XXXV**

9   **FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM**

10                    **AGAINST OLD GM IN BANKRUPTCY**

11   571.   Plaintiffs reallege and incorporate by reference all paragraphs as though

12   fully set forth herein.

13   572.   This claim is brought only on behalf of Class members who are Indiana

14   residents and who owned their class vehicle for at least some period of time between

15   July 11, 2009 and November 30, 2009.

16   573.   New GM was aware of the defects in class vehicles sold by Old GM

17   from the moment it came into existence upon entry of the Sale Order And Sale

18   Agreement by which New GM acquired substantially all the assets of Old GM.

19   574.   The Indiana Class did not receive notice of the defect in class vehicles

20   prior to the entry of the Sale Order.  No recall occurred.

21   575.   In September of 2009, the bankruptcy court entered the Bar Date Order,

22   establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims

23   to be filed against Old GM.

24   576.   Because New GM concealed its knowledge of the defect in class

25   vehicles, the Indiana Class did not receive notice of the defects prior to the passage

26   of the Bar Date. No recall occurred.

27   577.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which

28   the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds

KNAPP,
PETERSEN
& CLARKE

-99-

1    of the bankruptcy sale to, among others, the holders of claims that were ultimately

2    allowed.

3         578.    The out-of-pocket consideration provided by New GM for its

4    acquisition of Old GM consisted of 10% of the post-closing outstanding shares of

5    New GM common stock and two series of warrants, each to purchase 7.5% of the

6    post-closing shares of New GM (collectively, the "New GM Securities").

7         579.    Through an "accordion feature" in the Sale Agreement, New GM agreed

8    that it would provide additional consideration if the aggregate amount of allowed

9    general unsecured claims exceeded $35 billion. In that event, New GM would be

10   required to issue additional shares of New GM Common Stock for the benefit of the

11   GUC Trust's beneficiaries.

12        580.    As of September 30, 2014, the total amount of Allowed Claims was

13   approximately $31.854 billion, and the total amount of Disputed Claims was

14   approximately $79.5 million.

15        581.    As of September 30, 2014, the GUC Trust had distributed more than

16   89% of the New GM Securities. After a subsequent November 12 distribution, the

17   total assets of the GUC Trust were approximately $773.7 million – all or nearly all of

18   which is already slated to pay the GUC Trust's expenses and existing beneficiaries of

19   the Trust.

20        582.    But for New GM's fraudulent concealment of the defects, the Indiana

21   Class would have filed claims against Old GM before the Bar Date.

22        583.    Had the Indiana Class filed timely claims before the Bar Date, the

23   claims would have been allowed.

24        584.    New GM's concealment and suppression of the material fact of the

25   defect in class vehicles over the first several months of its existence served to prevent

26   the filing of claims by the Class.

27        585.    New GM had a duty to disclose the defect in class vehicles because the

28   information was known and/or accessible only to New GM who had superior

KNAPP,
PETERSEN
& CLARKE

-100-

1    knowledge and access to the facts, and New GM knew the facts were not known to

2    or reasonably discoverable by Plaintiffs and the Indiana Class. These omitted and

3    concealed facts were material because they directly impacted the safety and the value

4    of the class vehicles purchased or leased by Plaintiffs and the Indiana Class, who had

5    a limited period of time in which to file a claim against the manufacturer of the

6    vehicles, Old GM.

7        586.    Plaintiffs and the Indiana Class were unaware of these omitted material

8    facts and would not have acted as they did if they had known of the concealed and/or

9    suppressed facts. Plaintiffs' and the Indiana Class's actions were justified. New GM

10   was in exclusive control of the material facts and such facts were not known to the

11   public, Plaintiffs, or the Indiana Class.

12       587.    Because of the concealment and/or suppression of the facts, Plaintiffs

13   and the Indiana Class sustained damage because they lost their chance to file a claim

14   against Old GM and seek payment from the GUC Trust. Had they been aware of the

15   defects that existed in their vehicles, Plaintiffs would have timely filed claims and

16   would have recovered from the GUC Trust.

17       588.    Accordingly, New GM is liable to the Indiana Class members for their

18   damages in an amount to be proven at trial.

19       589.    New GM's acts were done maliciously, oppressively, deliberately, with

20   intent to defraud, and in reckless disregard of Plaintiffs' and the Indiana Class's

21   rights and well-being to enrich New GM. New GM's conduct warrants an

22   assessment of punitive damages in an amount sufficient to deter such conduct in the

23   future, which amount is to be determined according to proof.

### COUNT XXXVI

### THIRD-PARTY BENEFICIARY CLAIM

26       590.    Plaintiffs reallege and incorporate by reference all paragraphs as though

27   fully set forth herein.

28   ////

KNAPP,
PETERSEN
& CLARKE

-101-

591.    This claim is brought only on behalf of Class members who are Indiana residents (the "Indiana Class").

592.    In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

593.    With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

594.    But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

595.    Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

KNAPP,
PETERSEN
& CLARKE

1    or should know that a safety defect exists – including notifying NHTSA and

2    consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

3    573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4        596.    Plaintiffs, as owners and lessors of vehicles and parts manufactured by

5    Old GM, are the clear intended beneficiaries of New GM's agreement to comply

6    with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

7    benefit of having a manufacturer responsible for monitoring the safety of their Old

8    GM vehicles and making certain that any known defects would be promptly

9    remedied.

10        597.    Although the Sale Order which consummated New GM's purchase of

11    Old GM purported to give New GM immunity from claims concerning vehicles or

12    parts made by Old GM, the bankruptcy court recently ruled that provision to be

13    unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

14    conduct with respect to cars and parts made by Old GM. Therefore, that provision of

15    the Sale Order and related provisions of the Sale Agreement cannot be read to bar

16    Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

17    breaches of the promise it made in the Sale Agreement.

18        598.    New GM breached its covenant to comply with the TREAD Act with

19    respect to the class vehicles, as it failed to take action to remediate the defect at any

20    time, up to the present.

21        599.    Plaintiffs and the Indiana Class were damaged as a result of New GM's

22    breach.  Because of New GM's failure to timely remedy the defect in class vehicles,

23    the value of Old GM class vehicles has diminished in an amount to be determined at

24    trial.

25                        **COUNT XXXVII**

26                        **UNJUST ENRICHMENT**

27        600.    Plaintiffs reallege and incorporate by reference all paragraphs as though

28    fully set forth herein.

KNAPP,
PETERSEN
& CLARKE

-103-

1  601.  This claim is brought on behalf of members of the Indiana Class who

2  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

3  after New GM came into existence, and who purchased or leased class vehicles in the

4  time period before New GM came into existence, which cars were still on the road

5  after New GM came into existence (the "Indiana Unjust Enrichment Class").

6  602.  New GM has received and retained a benefit from the Plaintiffs and

7  inequity has resulted.

8  603.  New GM has benefitted from selling and leasing defective cars,

9  including Certified Pre-Owned cars, whose value was artificially inflated by New

10  GM's concealment of defect issues that plagued class vehicles, for more than they

11  were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

12  pay other costs.

13  604.  With respect to the class vehicles purchased before New GM came into

14  existence that were still on the road after New GM came into existence and as to

15  which New GM had unjustly and unlawfully determined not to recall, New GM

16  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

17  from its statements about the success of New GM.

18  605.  Thus, all Indiana Unjust Enrichment Class Members conferred a benefit

19  on New GM.

20  606.  It is inequitable for New GM to retain these benefits.

21  607.  Plaintiffs were not aware about the true facts about class vehicles, and

22  did not benefit from GM's conduct.

23  608.  New GM knowingly accepted the benefits of its unjust conduct.

24  609.  As a result of New GM's conduct, the amount of its unjust enrichment

25  should be disgorged, in an amount according to proof.

26  ////

27  ////

28  ////

KNAPP,
PETERSEN
& CLARKE

1   **Michigan**

2   COUNT XXXVIII

3   VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

4   (MICH. COMP. LAWS § 445.903, et seq.)

5   610.   Plaintiffs reallege and incorporate by reference all paragraphs as though

6   fully set forth herein.

7   611.   This claim is brought only on behalf of Nationwide Class Members who

8   are Michigan residents (the "Michigan Class").

9   612.   Plaintiffs and the Michigan Class Members were "person[s]" within the

10   meaning of the MICH. COMP. LAWS § 445.902(1)(d).

11   613.   At all relevant times hereto, New GM was a "person" engaged in "trade

12   or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and

13   (g).

14   614.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits

15   "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of

16   trade or commerce ...." MICH. COMP. LAWS § 445.903(1). New GM engaged in

17   unfair, unconscionable, or deceptive methods, acts or practices prohibited by the

18   Michigan CPA, including: "(c) Representing that goods or services have . . .

19   characteristics . . . that they do not have . . . .;" "(e) Representing that goods or

20   services are of a particular standard . . . if they are of another;" "(i) Making false or

21   misleading statements of fact concerning the reasons for, existence of, or amounts of

22   price reductions;" "(s) Failing to reveal a material fact, the omission of which tends

23   to mislead or deceive the consumer, and which fact could not reasonably be known

24   by the consumer;" "(bb) Making a representation of fact or statement of fact material

25   to the transaction such that a person reasonably believes the represented or suggested

26   state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are

27   material to the transaction in light of representations of fact made in a positive

28   manner." MICH. COMP. LAWS § 445.903(1). By systematically devaluing safety

KNAPP,
PETERSEN
& CLARKE

-105-

1  and concealing defects in the class vehicles, New GM participated in unfair,

2  deceptive, and unconscionable acts that violated the Michigan CPA.

3      615.  In the course of its business, New GM systematically devalued safety

4  and concealed defects in the class vehicles as described herein and otherwise

5  engaged in activities with a tendency or capacity to deceive.  New GM also engaged

6  in unlawful trade practices by employing deception, deceptive acts or practices,

7  fraud, misrepresentations, or concealment, suppression or omission of any material

8  fact with intent that others rely upon such concealment, suppression or omission, in

9  connection with the sale of class vehicles.

10      616.  From the date of its inception on July 11, 2009, New GM knew of many

11  serious defects affecting many models and years of GM-branded vehicles, because of

12  (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous

13  reports, investigations, and notifications from regulatory authorities; and (iii)

14  ongoing performance of New GM's TREAD Act obligations.  New GM became

15  aware of other serious defects and systemic safety issues years ago, but concealed all

16  of that information.

17      617.  New GM was also aware that it valued cost-cutting over safety, selected

18  parts from the cheapest supplier regardless of quality, and actively discouraged

19  employees from finding and flagging known safety defects, and that this approach

20  would necessarily cause the existence of more defects in the vehicles it designed and

21  manufactured and the failure to disclose and remedy defects in all GM-branded

22  vehicles. New GM concealed this information as well.

23      618.  By failing to disclose and by actively concealing the many defects in

24  GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality,

25  and by presenting itself as a reputable manufacturer that valued safety and stood

26  behind its vehicles after they were sold, New GM engaged in unfair, unconscionable,

27  and deceptive business practices in violation of the Michigan CPA.

28  ////

KNAPP,
PETERSEN
& CLARKE