# Exhibit  J-3

619. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that GM-branded vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

620. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

621. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Michigan Class.

622. New GM knew or should have known that its conduct violated the Michigan CPA.

623. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

624. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)  Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)  Intentionally concealed the foregoing from Plaintiffs; and/or

(c)  Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while

KNAPP,
PETERSEN
& CLARKE

-107-

1  purposefully withholding material facts from Plaintiffs that contradicted these

2  representations.

3      625.  Because New GM fraudulently concealed the defects in the class

4  vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

5  attached to those vehicles by New GM's conduct, they are now worth significantly

6  less than they otherwise would be.

7      626.  New GM's systemic devaluation of safety and its concealment of the

8  defects in the class vehicles were material to Plaintiffs and the Michigan Class. A

9  vehicle made by a reputable manufacturer of vehicles is worth more than an

10  otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

11  conceals defects rather than promptly remedies them.

12      627.  Plaintiffs and the Michigan Class suffered ascertainable loss caused by

13  New GM's misrepresentations and its concealment of and failure to disclose material

14  information.  Plaintiffs who purchased class vehicles after the date of New GM's

15  inception either would have paid less for their vehicles or would not have purchased

16  or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

17  of New GM's misconduct.

18      628.  Regardless of time of purchase or lease, no Plaintiffs would have

19  maintained and continued to drive their vehicles had they been aware of New GM's

20  misconduct. By contractually assuming TREAD Act responsibilities with respect to

21  Old GM class vehicles, New GM effectively assumed the role of manufacturer of

22  those vehicles because the TREAD Act on its face only applies to vehicle

23  manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

24  vehicle owners to refrain from unfair and deceptive acts or practices under the

25  Michigan CPA.  And, in any event, all class vehicle owners suffered ascertainable

26  loss in the form of the diminished value of their vehicles as a result of New GM's

27  deceptive and unfair acts and practices made in the course of New GM's business.

28  ////

KNAPP,
PETERSEN
& CLARKE

108

629.   As a direct and proximate result of New GM's violations of the Michigan CPA, Plaintiffs and the Michigan Class have suffered injury-in-fact and/or actual damage.

630.   Plaintiffs seek injunctive relief to enjoin New GM from continuing its unfair and deceptive acts; monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiffs and each Michigan Class member; reasonable attorneys' fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

631.   Plaintiffs also seek punitive damages against New GM because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others.  New GM intentionally and willfully misrepresented the safety and reliability of the class vehicles, deceived Plaintiffs and Michigan Class Members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in vehicles it repeatedly promised Plaintiffs and Michigan Class Members were safe. New GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT XXXIX

## FRAUD BY CONCEALMENT

632.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

633.   This claim is brought on behalf of Nationwide Class Members who are Michigan residents (the "Michigan Class").

634.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

635.   New GM concealed and suppressed material facts concerning the culture of New GM -- a culture characterized by an emphasis on cost-cutting, the

KNAPP,
PETERSEN
& CLARKE

-109-

1  studious avoidance of quality issues, and a shoddy design process.

2      636.   New GM concealed and suppressed material facts concerning the

3  defects in the class vehicles, and that it valued cost-cutting over quality and took

4  steps to ensure that its employees did not reveal known defects to regulators or

5  consumers.

6      637.   New GM did so in order to boost confidence in its vehicles and falsely

7  assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

8  that New GM was a reputable manufacturer that stands behind its vehicles after they

9  are sold and that its vehicles are safe and reliable. The false representations were

10  material to consumers, both because they concerned the quality and safety of the

11  class vehicles and because the representations played a significant role in the value of

12  the vehicles.

13      638.   New GM had a duty to disclose the defects in the class vehicles because

14  they were known and/or accessible only to New GM, were in fact known to New

15  GM as of the time of its creation in 2009 and at every point thereafter, New GM had

16  superior knowledge and access to the facts, and New GM knew the facts were not

17  known to or reasonably discoverable by Plaintiffs and the Michigan Class. New GM

18  also had a duty to disclose because it made many general affirmative representations

19  about the safety, quality, and lack of defects in its vehicles, as set forth above, which

20  were misleading, deceptive and incomplete without the disclosure of the additional

21  facts set forth above regarding defects in the class vehicles. Having volunteered to

22  provide information to Plaintiffs, GM had the duty to disclose not just the partial

23  truth, but the entire truth. These omitted and concealed facts were material because

24  they directly impact the value of the class vehicles purchased or leased by Plaintiffs

25  and the Michigan Class.

26      639.   New GM actively concealed and/or suppressed these material facts, in

27  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

28  image and cost New GM money, and it did so at the expense of Plaintiffs and the

KNAPP,
PETERSEN
& CLARKE

-110-

1   Michigan Class.

2      640.   On information and belief, New GM has still not made full and adequate

3   disclosure and continues to defraud Plaintiffs and the Michigan Class and conceal

4   material information regarding defects that exist in the class vehicles.

5      641.   Plaintiffs and the Michigan Class were unaware of these omitted

6   material facts and would not have acted as they did if they had known of the

7   concealed and/or suppressed facts, in that they would not have purchased cars

8   manufactured by New GM; and/or they would not have purchased cars manufactured

9   by Old GM in the time after New GM had come into existence and had fraudulently

10  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

11  not have continued to drive their vehicles or would have taken other affirmative

12  steps. Plaintiffs' and the Michigan Class's actions were justified. New GM was in

13  exclusive control of the material facts and such facts were not known to the public,

14  Plaintiffs, or the Michigan Class.

15     642.   Because of the concealment and/or suppression of the facts, Plaintiffs

16  and the Michigan Class sustained damage because they own vehicles that diminished

17  in value as a result of New GM's concealment of, and failure to timely disclose, the

18  defects in the class vehicles and the quality issues engendered by New GM's

19  corporate policies.  Had they been aware of the defects that existed in the class

20  vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

21  New GM came into existence either would have paid less for their vehicles or would

22  not have purchased or leased them at all; and no Plaintiffs regardless of time of

23  purchase or lease would have maintained their vehicles.

24     643.   The value of all Michigan Class Members' vehicles has diminished as a

25  result of New GM's fraudulent concealment of the defects which have tarnished the

26  Corvette brand and made any reasonable consumer reluctant to purchase any of the

27  class vehicles, let alone pay what otherwise would have been fair market value for

28  the vehicles.

KNAPP,
PETERSEN
& CLARKE

-111-

644. Accordingly, New GM is liable to the Michigan Class for damages in an amount to be proven at trial.

645. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Michigan Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XL

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MICH. COMP. LAWS § 440.2314)

646. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

647. This claim is brought only on behalf of the Michigan Class.

648. New GM was a merchant with respect to motor vehicles within the meaning of MICH. COMP. LAWS § 440.2314(1).

649. Under MICH. COMP. LAWS § 440.2314, a warranty that the class vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their class vehicles from New GM on or after July 11, 2009.

650. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the class vehicles are inherently defective in that engines are subject to unusual premature wear and catastrophic failure.

651. New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Michigan Class before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

KNAPP,
PETERSEN
& CLARKE

1    652.  As a direct and proximate result of New GM's breach of the implied

2  warranty of merchantability, Plaintiffs and the Michigan Class members have been

3  damaged in an amount to be proven at trial.

4                                COUNT XLI

5        FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM

6                    AGAINST OLD GM IN BANKRUPTCY

7    653.  Plaintiffs reallege and incorporate by reference all paragraphs as though

8  fully set forth herein.

9    654.  This claim is brought only on behalf of Class members who are

10  Michigan residents and who owned their class vehicle for at least some period of

11  time between July 11, 2009 and November 30, 2009.

12    655.  New GM was aware of the defects in class vehicles sold by Old GM

13  from the moment it came into existence upon entry of the Sale Order And Sale

14  Agreement by which New GM acquired substantially all the assets of Old GM.

15    656.  The Michigan Class did not receive notice of the defect in class vehicles

16  prior to the entry of the Sale Order.  No recall occurred.

17    657.  In September of 2009, the bankruptcy court entered the Bar Date Order,

18  establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims

19  to be filed against Old GM.

20    658.  Because New GM concealed its knowledge of the defect in the class

21  vehicles, the Michigan Class did not receive notice of the defect prior to the passage

22  of the Bar Date. No recall occurred.

23    659.  In 2011, the bankruptcy court approved a Chapter 11 Plan under which

24  the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds

25  of the bankruptcy sale to, among others, the holders of claims that were ultimately

26  allowed.

27    660.  The out-of-pocket consideration provided by New GM for its

28  acquisition of Old GM consisted of 10% of the post-closing outstanding shares of

KNAPP,
PETERSEN
& CLARKE

-113-

1  New GM common stock and two series of warrants, each to purchase 7.5% of the
2  post-closing shares of New GM (collectively, the "New GM Securities").

3      661.  Through an "accordion feature" in the Sale Agreement, New GM agreed
4  that it would provide additional consideration if the aggregate amount of allowed
5  general unsecured claims exceeded $35 billion. In that event, New GM would be
6  required to issue additional shares of New GM Common Stock for the benefit of the
7  GUC Trust's beneficiaries.

8      662.  As of September 30, 2014, the total amount of Allowed Claims was
9  approximately $31.854 billion, and the total amount of Disputed Claims was
10 approximately $79.5 million.

11     663.  As of September 30, 2014, the GUC Trust had distributed more than
12 89% of the New GM Securities. After a subsequent November 12 distribution, the
13 total assets of the GUC Trust were approximately $773.7 million – all or nearly all of
14 which is already slated to pay the GUC Trust's expenses and existing beneficiaries of
15 the Trust.

16     664.  But for New GM's fraudulent concealment of the defects, the Michigan
17 Class would have filed claims against Old GM before the Bar Date.

18     665.  Had the Michigan Class filed timely claims before the Bar Date, the
19 claims would have been allowed.

20     666.  New GM's concealment and suppression of the material fact of the
21 defect in class vehicles over the first several months of its existence served to prevent
22 the filing of claims by the Class.

23     667.  New GM had a duty to disclose the defect because in class vehicles the
24 information was known and/or accessible only to New GM who had superior
25 knowledge and access to the facts, and New GM knew the facts were not known to
26 or reasonably discoverable by Plaintiffs and the Michigan Class. These omitted and
27 concealed facts were material because they directly impacted the safety and the value
28 of the class vehicles purchased or leased by Plaintiffs and the Michigan Class, who

KNAPP,
PETERSEN
& CLARKE

1   had a limited period of time in which to file a claim against the manufacturer of the

2   vehicles, Old GM.

3       668.   Plaintiffs and the Michigan Class were unaware of these omitted

4   material facts and would not have acted as they did if they had known of the

5   concealed and/or suppressed facts. Plaintiffs' and the Michigan Class's actions were

6   justified. New GM was in exclusive control of the material facts and such facts were

7   not known to the public, Plaintiffs, or the Michigan Class.

8       669.   Because of the concealment and/or suppression of the facts, Plaintiffs

9   and the Michigan Class sustained damage because they lost their chance to file a

10   claim against Old GM and seek payment from the GUC Trust. Had they been aware

11   of the defects that existed in their vehicles, Plaintiffs would have timely filed claims

12   and would have recovered from the GUC Trust.

13       670.   Accordingly, New GM is liable to the Michigan Class members for their

14   damages in an amount to be proven at trial.

15       671.   New GM's acts were done maliciously, oppressively, deliberately, with

16   intent to defraud, and in reckless disregard of Plaintiffs' and the Michigan Class's

17   rights and well-being to enrich New GM. New GM's conduct warrants an assessment

18   of punitive damages in an amount sufficient to deter such conduct in the future,

19   which amount is to be determined according to proof.

20                 **COUNT XLII**

21          **THIRD-PARTY BENEFICIARY CLAIM**

22       672.   Plaintiffs reallege and incorporate by reference all paragraphs as though

23   fully set forth herein.

24       673.   This claim is brought only on behalf of Class members who are

25   Michigan residents (the "Michigan Class").

26       674.   In the Sales Agreement through which New GM acquired substantially

27   all of the assets of New GM, New GM explicitly agreed as follows:

**KNAPP,
PETERSEN
& CLARKE** 28   ////

1       From and after the Closing, [New GM] shall comply with the

2    certification, reporting and recall requirements of the National Traffic

3    and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

4    Recall Enhancement, Accountability and Documentation Act, the Clean

5    Air Act, the California Health and Safety Code and similar Laws, in

6    each case, to the extent applicable in respect of vehicles and vehicle

7    parts manufactured or distributed by [Old GM].

8       675.  With the exception of the portion of the agreement that purports to

9  immunize New GM from its own independent misconduct with respect to cars and

10  parts made by Old GM, the Sales Agreement is a valid and binding contract.

11       676.  But for New GM's covenant to comply with the TREAD Act with respect

12  to cars and parts made by Old GM, the TREAD Act would have no

13  application to New GM with respect to those cars and parts. That is because the

14  TREAD Act on its face imposes reporting and recall obligations only on the

15  "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

16       677.  Because New GM agreed to comply with the TREAD Act with respect

17  to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

18  make quarterly submissions to NHTSA of "early warning reporting" data, including

19  incidents involving property damage, warranty claims, consumer complaints, and

20  field reports concerning failure, malfunction, lack of durability or other performance

21  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

22  underlying records on which the early warning reports are based and all records

23  containing information on malfunctions that may be related to motor vehicle safety.

24  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

25  or should know that a safety defect exists – including notifying NHTSA and

26  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

27  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

28  ////

**KNAPP,**
**PETERSEN**
**& CLARKE**

1       678.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by

2  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

3  with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

4  benefit of having a manufacturer responsible for monitoring the safety of their Old

5  GM vehicles and making certain that any known defects would be promptly

6  remedied.

7       679.  Although the Sale Order which consummated New GM's purchase of

8  Old GM purported to give New GM immunity from claims concerning vehicles or

9  parts made by Old GM, the bankruptcy court recently ruled that provision to be

10  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

11  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

12  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

13  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

14  breaches of the promise it made in the Sale Agreement.

15       680.  New GM breached its covenant to comply with the TREAD Act with

16  respect to the class vehicles, as it failed to take action to remediate the defects at any

17  time, up to the present.

18       681.  Plaintiffs and the Michigan Class were damaged as a result of New

19  GM's breach.  Because of New GM's failure to timely remedy the defect in class

20  vehicles, the value of Old GM class vehicles has diminished in an amount to be

21  determined at trial.

22                   **COUNT XLIII**

23               **UNJUST ENRICHMENT**

24       682.  Plaintiffs reallege and incorporate by reference all paragraphs as though

25  fully set forth herein.

26       683.  This claim is brought on behalf of members of the Michigan Class who

27  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

28  after New GM came into existence, and who purchased or leased class vehicles in the

KNAPP,
PETERSEN
& CLARKE

1   time period before New GM came into existence, which cars were still on the road

2   after New GM came into existence (the "Michigan Unjust Enrichment Class").

3       684.   New GM has received and retained a benefit from the Plaintiffs and

4   inequity has resulted.

5       685.   New GM has benefitted from selling and leasing defective cars,

6   including Certified Pre-Owned cars, whose value was artificially inflated by New

7   GM's concealment of defect issues that plagued the class vehicles for more than they

8   were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

9   pay other costs.

10      686.   With respect to the class vehicles purchased before New GM came into

11  existence that were still on the road after New GM came into existence and as to

12  which New GM had unjustly and unlawfully determined not to recall, New GM

13  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

14  from its statements about the success of New GM.

15      687.   Thus, all Michigan Unjust Enrichment Class Members conferred a

16  benefit on New GM.

17      688.   It is inequitable for New GM to retain these benefits.

18      689.   Plaintiffs were not aware about the true facts about class vehicles, and

19  did not benefit from GM's conduct.

20      690.   New GM knowingly accepted the benefits of its unjust conduct.

21  As a result of New GM's conduct, the amount of its unjust enrichment should be

22  disgorged, in an amount according to proof.

23  ////

24  ////

25  ////

26  ////

27  ////

28  ////

KNAPP,
PETERSEN
& CLARKE

**Montana**

**COUNT XLIV**

**VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND**

**CONSUMER PROTECTION ACT OF 1973**

**(MONT. CODE ANN. § 30-14-101, et seq.)**

691.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

692.   This claim is brought only on behalf of Nationwide Class Members who are Montana residents (the "Montana Class").

693.   New GM, Plaintiffs and the Montana Class are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

694.   Montana Class Members are "consumer[s]" under MONT. CODE ANN. § 30-14- 102(1).

695.   The sale or lease of the class vehicles to Montana Class Members occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and New GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

696.   The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.  By systematically devaluing safety and concealing defects in the class vehicles, New GM engaged in unfair and deceptive acts or practices in violation of the Montana CPA.

697.   In the course of its business, New GM systematically devalued safety and concealed defects in class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact

KNAPP,
PETERSEN
& CLARKE

-119-

1    with intent that others rely upon such concealment, suppression or omission, in

2    connection with the sale of the class vehicles.

3       698.  From the date of its inception on July 11, 2009, New GM knew of many

4    serious defects affecting many models and years of the class vehicles, because of (i)

5    the knowledge of Old GM personnel who remained at New GM; (ii) continuous

6    reports, investigations, and notifications from regulatory authorities; and (iii)

7    ongoing performance of New GM's TREAD Act obligations.  New GM became

8    aware of other serious defects and systemic safety issues years ago, but concealed all

9    of that information.

10      699.  New GM was also aware that it valued cost-cutting over safety, selected

11    parts from the cheapest supplier regardless of quality, and actively discouraged

12    employees from finding and flagging known safety defects, and that this approach

13    would necessarily cause the existence of more defects in the vehicles it designed and

14    manufactured and the failure to disclose and remedy defects in all the class vehicles.

15    New GM concealed this information as well.

16      700.  By failing to disclose and by actively concealing the many defects in the

17    class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

18    presenting itself as a reputable manufacturer that valued safety and stood behind its

19    vehicles after they were sold, New GM engaged in unfair and deceptive business

20    practices in violation of the Montana CPA.

21      701.  In the course of New GM's business, it willfully failed to disclose and

22    actively concealed the dangerous risk posed by the defects discussed above.  New

23    GM compounded the deception by repeatedly asserting that the class vehicles were

24    safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

25    that valued safety and stood behind its vehicles once they are on the road.

26      702.  New GM's unfair or deceptive acts or practices were likely to and did in

27    fact deceive reasonable consumers, including Plaintiffs, about the true safety and

28    reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of

**KNAPP,
PETERSEN
& CLARKE**

-120-

1    safety at New GM, and the true value of the class vehicles.

2    703.    New GM intentionally and knowingly misrepresented material facts

3    regarding the class vehicles and the GM brand with an intent to mislead Plaintiffs

4    and the Montana Class.

5    704.    New GM knew or should have known that its conduct violated the

6    Montana CPA.

7    705.    As alleged above, New GM made material statements about the safety

8    and reliability of the class vehicles that were either false or misleading.

9    706.    New GM owed Plaintiffs a duty to disclose the true safety and reliability

10    of the class vehicles and the devaluing of safety at New GM, because New GM:

11    (a)    Possessed exclusive knowledge that it valued cost-cutting over

12    safety, selected parts from the cheapest supplier regardless of quality, and actively

13    discouraged employees from finding and flagging known safety defects, and that this

14    approach would necessarily cause the existence of more defects in the vehicles it

15    designed and manufactured;

16    (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

17    (c)    Made incomplete representations about the safety and reliability

18    of the class vehicles generally, and the valve guide defects in particular, while

19    purposefully withholding material facts from Plaintiffs that contradicted these

20    representations.

21    707.    Because New GM fraudulently concealed the many defects in the class

22    vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma

23    attached to those vehicles by New GM's conduct, they are now worth significantly

24    less than they otherwise would be.

25    708.    New GM's systemic devaluation of safety and its concealment of the

26    defects in the class vehicles were material to Plaintiffs and the Montana Class.  A

27    vehicle made by a reputable manufacturer of vehicles is worth more than an

28    otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

KNAPP,
PETERSEN
& CLARKE

-121-

1 conceals defects rather than promptly remedies them.

2  709. Plaintiffs and the Montana Class suffered ascertainable loss caused by

3 New GM's misrepresentations and its concealment of and failure to disclose material

4 information.  Plaintiffs who purchased the class vehicles after the date of New GM's

5 inception either would have paid less for their vehicles or would not have purchased

6 or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

7 of New GM's misconduct.

8  710. Regardless of time of purchase or lease, no Plaintiffs would have

9 maintained and continued to drive their vehicles had they been aware of New GM's

10 misconduct. By contractually assuming TREAD Act responsibilities with respect to

11 Old GM class vehicles, New GM effectively assumed the role of manufacturer of

12 those vehicles because the TREAD Act on its face only applies to vehicle

13 manufacturers. 49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM

14 vehicle owners to refrain from unfair and deceptive acts or practices under the

15 Montana CPA.  And, in any event, all class vehicle owners suffered ascertainable

16 loss in the form of the diminished value of their vehicles as a result of New GM's

17 deceptive and unfair acts and practices made in the course of New GM's business.

18  711. As a direct and proximate result of New GM's violations of the

19 Montana CPA, Plaintiffs and the Montana Class have suffered injury-in-fact and/or

20 actual damage.

21  712. Because the New GM's unlawful methods, acts, and practices have

22 caused Montana Class Members to suffer an ascertainable loss of money and

23 property, the Montana Class seeks from New GM actual damages or $500,

24 whichever is greater, discretionary treble damages, reasonable attorneys' fees, an

25 order enjoining New GM's unfair, unlawful, and/or deceptive practices, and any

26 other relief the Court considers necessary or proper, under MONT. CODE ANN. §

27 30-14-133.

28 ////

KNAPP,
PETERSEN
& CLARKE

## COUNT XLV

### FRAUD BY CONCEALMENT

713. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

714. This claim is brought on behalf of Nationwide Class Members who are Montana residents (the "Montana Class").

715. New GM concealed and suppressed material facts concerning the quality of the class vehicles.

716. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

717. New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

718. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

719. New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Montana Class. New GM also had a duty to disclose because it made many general affirmative representations

KNAPP,
PETERSEN
& CLARKE

1   about the safety, quality, and lack of defects in its vehicles, as set forth above, which

2   were misleading, deceptive and incomplete without the disclosure of the additional

3   facts set forth above regarding defects in the class vehicles.  Having volunteered to

4   provide information to Plaintiffs, GM had the duty to disclose not just the partial

5   truth, but the entire truth.  These omitted and concealed facts were material because

6   they directly impact the value of the class vehicles purchased or leased by Plaintiffs

7   and the Montana Class.

8       720.   New GM actively concealed and/or suppressed these material facts, in

9   whole or in part, to protect its profits and avoid recalls that would hurt the brand's

10  image and cost New GM money, and it did so at the expense of Plaintiffs and the

11  Montana Class.

12      721.   On information and belief, New GM has still not made full and adequat

13  disclosure and continues to defraud Plaintiffs and the Montana Class and conceal

14  material information regarding defects that exist in the class vehicles.

15      722.   Plaintiffs and the Montana Class were unaware of these omitted materia

16  facts and would not have acted as they did if they had known of the concealed and/o

17  suppressed facts, in that they would not have purchased cars manufactured by New

18  GM; and/or they would not have purchased cars manufactured by Old GM in the

19  time after New GM had come into existence and had fraudulently opted to conceal,

20  and to misrepresent, the true facts about the vehicles; and/or would not have

21  continued to drive their vehicles or would have taken other affirmative steps.

22  Plaintiffs' and the Montana Class's actions were justified. New GM was in exclusive

23  control of the material facts and such facts were not known to the public, Plaintiffs,

24  or the Montana Class.

25      723.   Because of the concealment and/or suppression of the facts, Plaintiffs

26  and the Montana Class sustained damage because they own vehicles that diminished

27  in value as a result of New GM's concealment of, and failure to timely disclose, the

28  defects in the class vehicles and the quality issues engendered by New GM's

KNAPP,
PETERSEN
& CLARKE

-124-

1  corporate policies. Had they been aware of the defects that existed in the class

2  vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

3  New GM came into existence either would have paid less for their vehicles or would

4  not have purchased or leased them at all; and no Plaintiffs regardless of time of

5  purchase or lease would have maintained their vehicles.

6       724.  The value of all Montana Class Members' vehicles has diminished as a

7  result of New GM's fraudulent concealment of the defects which have tarnished the

8  Corvette brand and made any reasonable consumer reluctant to purchase any of the

9  class vehicles, let alone pay what otherwise would have been fair market value for

10  the vehicles.

11       725.  Accordingly, New GM is liable to the Montana Class for damages in an

12  amount to be proven at trial.

13       726.  New GM's acts were done maliciously, oppressively, deliberately, with

14  intent to defraud, and in reckless disregard of Plaintiffs' and the Montana Class's

15  rights and well-being to enrich New GM. New GM's conduct warrants an assessment

16  of punitive damages in an amount sufficient to deter such conduct in the future,

17  which amount is to be determined according to proof.

18               **COUNT XLVI**

19    **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

20          **(MONT. CODE § 30-2-314)**

21       727.  Plaintiffs reallege and incorporate by reference all paragraphs as though

22  fully set forth herein.

23       728.  This claim is brought only on behalf of the Montana Class.

24       729.  New GM was a merchant with respect to motor vehicles under MONT.

25  CODE § 30- 2-104(1).

26       730.  Under MONT. CODE § 30-2-314, a warranty that the class vehicles

27  were in merchantable condition was implied by law in the transactions when

28  Plaintiffs purchased or leased their class vehicles from New GM on or after July 11,

KNAPP,
PETERSEN
& CLARKE

-125-

1  2009.

2      731.   These vehicles, when sold and at all times thereafter, were not

3  merchantable and are not fit for the ordinary purpose for which cars are used.

4  Specifically, the class vehicles are inherently defective in that engines are subject to

5  unusual premature wear and catastrophic failure.

6      732.   New GM was provided notice of these issues by numerous complaints

7  filed against it, internal investigations, and by numerous individual letters and

8  communications sent by Plaintiffs and the Montana Class before or within a

9  reasonable amount of time after New GM issued the recall and the allegations of

10 vehicle defects became public.

11     733.   As a direct and proximate result of New GM's breach of the warranties

12 of merchantability, Plaintiffs and the Montana Class members have been damaged in

13 an amount to be proven at trial.

14                          **COUNT XLVII**

15    **FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM**

16                 **AGAINST OLD GM IN BANKRUPTCY**

17     734.   Plaintiffs reallege and incorporate by reference all paragraphs as though

18 fully set forth herein.

19     735.   This claim is brought only on behalf of Class members who are

20 Montana residents and who owned their class vehicle for at least some period of time

21 between July 11, 2009 and November 30, 2009.

22     736.   New GM was aware of the defects in class vehicles sold by Old GM

23 from the moment it came into existence upon entry of the Sale Order And Sale

24 Agreement by which New GM acquired substantially all the assets of Old GM.

25     737.   The Montana Class did not receive notice of the defect in class vehicles

26 prior to the entry of the Sale Order. No recall occurred.

27     738.   In September of 2009, the bankruptcy court entered the Bar Date Order

28 establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claim

KNAPP,
PETERSEN
& CLARKE

1 | to be filed against Old GM.

2 |     739.  Because New GM concealed its knowledge of the defect in class

3 | vehicles, the Montana Class did not receive notice of the defect prior to the passage

4 | of the Bar Date. No recall occurred.

5 |     740.  In 2011, the bankruptcy court approved a Chapter 11 Plan under which

6 | the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds

7 | of the bankruptcy sale to, among others, the holders of claims that were ultimately

8 | allowed.

9 |     741.  The out-of-pocket consideration provided by New GM for its

10 | acquisition of Old GM consisted of 10% of the post-closing outstanding shares of

11 | New GM common stock and two series of warrants, each to purchase 7.5% of the

12 | post-closing shares of New GM (collectively, the "New GM Securities").

13 |     742.  Through an "accordion feature" in the Sale Agreement, New GM agreed

14 | that it would provide additional consideration if the aggregate amount of allowed

15 | general unsecured claims exceeded $35 billion. In that event, New GM would be

16 | required to issue additional shares of New GM Common Stock for the benefit of the

17 | GUC Trust's beneficiaries.

18 |     743.  As of September 30, 2014, the total amount of Allowed Claims was

19 | approximately $31.854 billion, and the total amount of Disputed Claims was

20 | approximately $79.5 million.

21 |     744.  As of September 30, 2014, the GUC Trust had distributed more than

22 | 89% of the New GM Securities. After a subsequent November 12 distribution, the

23 | total assets of the GUC Trust were approximately $773.7 million – all or nearly all of

24 | which is already slated to pay the GUC Trust's expenses and existing beneficiaries of

25 | the Trust.

26 |     745.  But for New GM's fraudulent concealment of the defects, the Montana

27 | Class would have filed claims against Old GM before the Bar Date.

KNAPP,
PETERSEN
& CLARKE

28 | ////

-127-

746. Had the Montana Class filed timely claims before the Bar Date, the claims would have been allowed.

747. New GM's concealment and suppression of the material fact of the defect in class vehicles over the first several months of its existence served to prevent the filing of claims by the Class.

748. New GM had a duty to disclose the defect in class vehicles because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Montana Class. These omitted and concealed facts were material because they directly impacted the safety and the value of the class vehicles purchased or leased by Plaintiffs and the Montana Class, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

749. Plaintiffs and the Montana Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Montana Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Montana Class.

750. Because of the concealment and/or suppression of the facts, Plaintiffs and the Montana Class sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust. Had they been aware of the defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

751. Accordingly, New GM is liable to the Montana Class members for their damages in an amount to be proven at trial.

752. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Montana Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment

KNAPP,
PETERSEN
& CLARKE

-128-

1   of punitive damages in an amount sufficient to deter such conduct in the future,

2   which amount is to be determined according to proof.

3                     **COUNT XLVIII**

4          **THIRD-PARTY BENEFICIARY CLAIM**

5      753.  Plaintiffs reallege and incorporate by reference all paragraphs as though

6   fully set forth herein.

7      754.  This claim is brought only on behalf of Class members who are

8   Montana residents (the "Montana Class").

9      755.  In the Sales Agreement through which New GM acquired substantially

10   all of the assets of New GM, New GM explicitly agreed as follows:

11           From and after the Closing, [New GM] shall comply with the

12           certification, reporting and recall requirements of the National Traffic

13           and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

14           Recall Enhancement, Accountability and Documentation Act, the Clean

15           Air Act, the California Health and Safety Code and similar Laws, in

16           each case, to the extent applicable in respect of vehicles and vehicle

17           parts manufactured or distributed by [Old GM].

18      756.  With the exception of the portion of the agreement that purports to

19   immunize New GM from its own independent misconduct with respect to cars and

20   parts made by Old GM, the Sales Agreement is a valid and binding contract.

21      757.  But for New GM's covenant to comply with the TREAD Act with

22   respect to cars and parts made by Old GM, the TREAD Act would have no

23   application to New GM with respect to those cars and parts. That is because the

24   TREAD Act on its face imposes reporting and recall obligations only on the

25   "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

26      758.  Because New GM agreed to comply with the TREAD Act with respect

27   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

28   make quarterly submissions to NHTSA of "early warning reporting" data, including

KNAPP,
PETERSEN
& CLARKE

-129-

1    incidents involving property damage, warranty claims, consumer complaints, and

2    field reports concerning failure, malfunction, lack of durability or other performance

3    issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

4    underlying records on which the early warning reports are based and all records

5    containing information on malfunctions that may be related to motor vehicle safety.

6    See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

7    or should know that a safety defect exists – including notifying NHTSA and

8    consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

9    573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

10       759.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

11   Old GM, are the clear intended beneficiaries of New GM's agreement to comply

12   with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

13   benefit of having a manufacturer responsible for monitoring the safety of their Old

14   GM vehicles and making certain that any known defects would be promptly

15   remedied.

16       760.   Although the Sale Order which consummated New GM's purchase of

17   Old GM purported to give New GM immunity from claims concerning vehicles or

18   parts made by Old GM, the bankruptcy court recently ruled that provision to be

19   unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

20   conduct with respect to cars and parts made by Old GM. Therefore, that provision of

21   the Sale Order and related provisions of the Sale Agreement cannot be read to bar

22   Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

23   breaches of the promise it made in the Sale Agreement.

24       761.   New GM breached its covenant to comply with the TREAD Act with

25   respect to class vehicles, as it failed to take action to remediate the defects at any

26   time, up to the present.

27       762.   Plaintiffs and the Montana Class were damaged as a result of New

28   GM's breach. Because of New GM's failure to timely remedy the defect in class

KNAPP,
PETERSEN
& CLARKE

-130-

1  vehicles, the value of the Old GM vehicles has diminished in an amount to be

2  determined at trial.

### COUNT XLIX

### UNJUST ENRICHMENT

5  763.   Plaintiffs reallege and incorporate by reference all paragraphs as though

6  fully set forth herein.

7  764.   This claim is brought on behalf of members of the Montana Class who

8  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

9  after New GM came into existence, and who purchased or leased class vehicles in the

10  time period before New GM came into existence, which cars were still on the road

11  after New GM came into existence (the "Montana Unjust Enrichment Class").

12  765.   New GM has received and retained a benefit from the Plaintiffs and

13  inequity has resulted.

14  766.   New GM has benefitted from selling and leasing defective cars,

15  including Certified Pre-Owned cars, whose value was artificially inflated by New

16  GM's concealment of defect issues that plagued the class vehicles, for more than

17  they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced

18  to pay other costs.

19  767.   With respect to the class vehicles purchased before New GM came into

20  existence that were still on the road after New GM came into existence and as to

21  which New GM had unjustly and unlawfully determined not to recall, New GM

22  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

23  from its statements about the success of New GM.

24  768.   Thus, all Montana Unjust Enrichment Class Members conferred a

25  benefit on New GM.

26  769.   It is inequitable for New GM to retain these benefits.

27  770.   Plaintiffs were not aware about the true facts about the class vehicles,

28  and did not benefit from GM's conduct.

KNAPP,
PETERSEN
& CLARKE

-131-

1    771.  New GM knowingly accepted the benefits of its unjust conduct.

2    772.  As a result of New GM's conduct, the amount of its unjust enrichment

3    should be disgorged, in an amount according to proof.

4    **Ohio**

5                              **COUNT L**

6        **VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT**

7              **(OHIO REV. CODE ANN. § 1345.01, et seq.)**

8    773.  Plaintiffs reallege and incorporate by reference all paragraphs as though

9    fully set forth herein.

10    774.  This claim is brought only on behalf of Nationwide Class Members who

11    are Ohio residents (the "Ohio Class").

12    775.  New GM is a "supplier" as that term is defined in OHIO REV. CODE §

13    1345.01(C).

14    776.  Plaintiffs and the Ohio Class are "consumers" as that term is defined in

15    OHIO REV. CODE § 1345.01(D), and their purchases and leases of the class

16    vehicles are "consumer transactions" within the meaning of OHIO REV. CODE §

17    1345.01(A).

18    777.  The Ohio Consumer Sales Practices Act ("Ohio CSPA"), OHIO REV.

19    CODE § 1345.02, broadly prohibits unfair or deceptive acts or practices in

20    connection with a consumer transaction. Specifically, and without limitation of the

21    broad prohibition, the Act prohibits suppliers from representing (i) that goods have

22    characteristics or uses or benefits which they do not have; (ii) that their goods are of

23    a particular quality or grade they are not; and (iii) the subject of a consumer

24    transaction has been supplied in accordance with a previous representation, if it has

25    not. *Id.* New GM's conduct as alleged above and below constitutes unfair and/or

26    deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02.

27    778.  By systematically devaluing safety and concealing defects in the class

28    vehicles, New GM engaged in deceptive business practices prohibited by the Ohio

KNAPP,
PETERSEN
& CLARKE

-132-

CSPA, including: representing that class vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that class vehicles are of a particular standard, quality, and grade when they are not; representing that the subject of a transaction involving class vehicles has been supplied in accordance with a previous representation when it has not; and engaging in other unfair or deceptive acts or practices.

779.    New GM's actions as set forth above occurred in the conduct of trade or commerce.

780.    In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

781.    From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

782.    New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

KNAPP,
PETERSEN
& CLARKE

-133-

783.   By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Ohio CSPA.

784.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that the class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

785.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

786.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Ohio Class.

787.   New GM knew or should have known that its conduct violated the Ohio CSPA.

788.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

789.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

KNAPP,
PETERSEN
& CLARKE

1         (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

2         (c)    Made incomplete representations about the safety and reliability

3 of the class vehicles generally, and the valve guide defects in particular, while

4 purposefully withholding material facts from Plaintiffs that contradicted these

5 representations.

6      790.   Because New GM fraudulently concealed the many defects in the class

7 vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

8 attached to those vehicles by New GM's conduct, they are now worth significantly

9 less than they otherwise would be.

10     791.   New GM's systemic devaluation of safety and its concealment of

11 defects in the class vehicles were material to Plaintiffs and the Ohio Class. A vehicle

12 made by a reputable manufacturer of vehicles is worth more than an otherwise

13 comparable vehicle made by a disreputable manufacturer of vehicles that conceals

14 defects rather than promptly remedies them.

15     792.   Plaintiffs and the Ohio Class suffered ascertainable loss caused by New

16 GM's misrepresentations and its concealment of and failure to disclose material

17 information. Plaintiffs who purchased class vehicles after the date of New GM's

18 inception either would have paid less for their vehicles or would not have purchased

19 or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result

20 of New GM's misconduct.

21     793.   Regardless of time of purchase or lease, no Plaintiffs would have

22 maintained and continued to drive their vehicles had they been aware of New GM's

23 misconduct. By contractually assuming TREAD Act responsibilities with respect to

24 Old GM class vehicles, New GM effectively assumed the role of manufacturer of

25 those vehicles because the TREAD Act on its face only applies to vehicle

26 manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

27 vehicle owners to refrain from unfair and deceptive acts or practices under the Ohio

28 CSPA. And, in any event, all class vehicle owners suffered ascertainable loss in the

KNAPP,
PETERSEN
& CLARKE

-135-

1  form of the diminished value of their vehicles as a result of New GM's deceptive and

2  unfair acts and practices that occurred in the course of New GM's business.

3      794.   As a direct and proximate result of New GM's violations of the Ohio

4  CSPA, Plaintiffs and the Ohio Class have suffered injury-in-fact and/or actual

5  damage.

6      795.   Ohio Class Members seek punitive damages against New GM because

7  New GM's conduct was egregious.  New GM misrepresented the safety and

8  reliability of class vehicles, concealed myriad defects in millions of GM-branded

9  vehicles and the systemic safety issues plaguing New GM, deceived Class Members

10  on life-or-death matters, and concealed material facts that only New GM knew, all to

11  avoid the expense and public relations nightmare of correcting the serious flaw in its

12  culture and in millions of GM-branded vehicles.  New GM's egregious conduct

13  warrants punitive damages.

14      796.   Plaintiffs and the Ohio Class specifically do not allege herein a claim for

15  violation of OHIO REV. CODE § 1345.72.

16      797.   New GM was on notice pursuant to OHIO REV. CODE § 1345.09(B)

17  that its actions constituted unfair, deceptive, and unconscionable practices by, for

18  example, *Mason v. Mercedes-Benz USA, LLC*, 2005 Ohio App. LEXIS 3911, at *33

19  (S.D. Ohio Aug. 18, 2005), and *Lilly v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS

20  22114, at *17-18 (S.D. Ohio Apr. 21, 2006).  Further, New GM's conduct as alleged

21  above constitutes an act or practice previously declared to be deceptive or

22  unconscionable by rule adopted under division (B)(2) of section 1345.05 and

23  previously determined by Ohio courts to violate Ohio's Consumer Sales Practices

24  Act and was committed after the decisions containing these determinations were

25  made available for public inspection under division (A)(3) of O.R.C. § 1345.05. The

26  applicable rule and Ohio court opinions include, but are not limited to: OAC 109:4-

27  3-16; *Mason v. Mercedes-Benz USA, LLC*, 2005 Ohio 4296 (Ohio Ct. App. 2005);

28  *Khouri v. Lewis*, Cuyahoga Common Pleas No. 342098 (2001); State ex rel.

KNAPP,
PETERSEN
& CLARKE

1   *Montgomery v. Canterbury*, Franklin App. No. 98CVH054085 (2000); and

2   *Fribourg v. Vandemark* (July 26, 1999), Clermont App. No CA99-02-017,

3   unreported (PIF # 10001874).

4        798.   As a result of the foregoing wrongful conduct of New GM, Plaintiffs

5   and the Ohio Class have been damaged in an amount to be proven at trial, and seek

6   all just and proper remedies, including, but not limited to, actual and statutory

7   damages, an order enjoining New GM's deceptive and unfair conduct, treble

8   damages, court costs and reasonable attorneys' fees, pursuant to OHIO REV. CODE

9   § 1345.09, et seq.

10                            **COUNT LI**

11                    **FRAUD BY CONCEALMENT**

12        799.   Plaintiffs reallege and incorporate by reference all paragraphs as though

13   fully set forth herein.

14        800.   This claim is brought on behalf of Nationwide Class Members who are

15   Ohio residents (the "Ohio Class").

16        801.   New GM concealed and suppressed material facts concerning the

17   quality of the class vehicles.

18        802.   New GM concealed and suppressed material facts concerning the

19   culture of New GM — a culture characterized by an emphasis on cost-cutting, the

20   studious avoidance of quality issues, and a shoddy design process.

21        803.   New GM concealed and suppressed material facts concerning the

22   defects in the class vehicles, and that it valued cost-cutting over quality and took

23   steps to ensure that its employees did not reveal known defects to regulators or

24   consumers.

25        804.   New GM did so in order to boost confidence in its vehicles and falsely

26   assure purchasers and lessors of its vehicles and Certified Previously Owned vehicle

27   that New GM was a reputable manufacturer that stands behind its vehicles after they

28   are sold and that its vehicles are safe and reliable. The false representations were

KNAPP,
PETERSEN
& CLARKE

1   material to consumers, both because they concerned the quality and safety of the

2   class vehicles and because the representations played a significant role in the value of

3   the vehicles.

4        805.  New GM had a duty to disclose the defects in the class vehicles because

5   they were known and/or accessible only to New GM, were in fact known to New

6   GM as of the time of its creation in 2009 and at every point thereafter, New GM had

7   superior knowledge and access to the facts, and New GM knew the facts were not

8   known to or reasonably discoverable by Plaintiffs and the Ohio Class. New GM also

9   had a duty to disclose because it made many general affirmative representations

10   about the safety, quality, and lack of defects in its vehicles, as set forth above, which

11   were misleading, deceptive and incomplete without the disclosure of the additional

12   facts set forth above regarding defects in the class vehicles. Having volunteered to

13   provide information to Plaintiffs, GM had the duty to disclose not just the partial

14   truth, but the entire truth.  These omitted and concealed facts were material because

15   they directly impact the value of the class vehicles purchased or leased by Plaintiffs

16   and the Ohio Class.

17        806.  New GM actively concealed and/or suppressed these material facts, in

18   whole or in part, to protect its profits and avoid recalls that would hurt the brand's

19   image and cost New GM money, and it did so at the expense of Plaintiffs and the

20   Ohio Class.

21        807.  On information and belief, New GM has still not made full and adequate

22   disclosure and continues to defraud Plaintiffs and the Ohio Class and conceal

23   material information regarding defects that exist in the class vehicles.

24        808.  Plaintiffs and the Ohio Class were unaware of these omitted material

25   facts and would not have acted as they did if they had known of the concealed and/or

26   suppressed facts, in that they would not have purchased cars manufactured by New

27   GM; and/or they would not have purchased cars manufactured by Old GM in the

28   time after New GM had come into existence and had fraudulently opted to conceal,

KNAPP,
PETERSEN
& CLARKE

1    and to misrepresent, the true facts about the vehicles; and/or would not have

2    continued to drive their vehicles or would have taken other affirmative steps.

3    Plaintiffs' and the Ohio Class's actions were justified. New GM was in exclusive

4    control of the material facts and such facts were not known to the public, Plaintiffs,

5    or the Ohio Class.

6        809.    Because of the concealment and/or suppression of the facts, Plaintiffs

7    and the Ohio Class sustained damage because they own vehicles that diminished in

8    value as a result of New GM's concealment of, and failure to timely disclose, the

9    defects in the class vehicles and the quality issues engendered by New GM's

10   corporate policies.  Had they been aware of the defects that existed in the class

11   vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

12   New GM came into existence either would have paid less for their vehicles or would

13   not have purchased or leased them at all; and no Plaintiffs regardless of time of

14   purchase or lease would have maintained their vehicles.

15       810.    The value of all Ohio Class Members' vehicles has diminished as a

16   result of New GM's fraudulent concealment of the many defects which have

17   tarnished the Corvette brand and made any reasonable consumer reluctant to

18   purchase any of the class vehicles, let alone pay what otherwise would have been fai

19   market value for the vehicles.

20       811.    Accordingly, New GM is liable to the Ohio Class for damages in an

21   amount to be proven at trial.

22       812.    New GM's acts were done maliciously, oppressively, deliberately, with

23   intent to defraud, and in reckless disregard of Plaintiffs' and the Ohio Class's rights

24   and well-being to enrich New GM. New GM's conduct warrants an assessment of

25   punitive damages in an amount sufficient to deter such conduct in the future, which

26   amount is to be determined according to proof.

27   ////

28   ////

KNAPP,
PETERSEN
& CLARKE

**COUNT LII**

**IMPLIED WARRANTY IN TORT**

813.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

814.   Plaintiffs bring this claim only on behalf of the Ohio Class members.

815.   The class vehicles sold or leased by New GM on or after July 11, 2009 contained a design defect, namely, a defective engine subject to premature wear and catastrophic failure.

816.   The design, manufacturing, and/or assembly defects existed at the time the class vehicles containing the defective engine left the possession or control of New GM.

817.   Based upon the dangerous product defects, New GM failed to meet the expectations of a reasonable consumer. The class vehicles failed their ordinary, intended use because the engine is subject to premature unusual wear and catastrophic failure.

818.   The design defects in the vehicles were the direct and proximate cause of economic damages to Plaintiffs, as well as damages incurred or to be incurred by each of the Ohio Class members.

**COUNT LIII**

**FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM**

**AGAINST OLD GM IN BANKRUPTCY**

819.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

820.   This claim is brought only on behalf of Class members who are Ohio residents and who owned their class vehicle for at least some period of time between July 11, 2009 and November 30, 2009.

821.   New GM was aware of the defects in class vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale

KNAPP,
PETERSEN
& CLARKE

-140-

1   Agreement by which New GM acquired substantially all the assets of Old GM.

2       822.   The Ohio Class did not receive notice of the defect in class vehicles

3   prior to the entry of the Sale Order.  No recall occurred.

4       823.   In September of 2009, the bankruptcy court entered the Bar Date Order,

5   establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims

6   to be filed against Old GM.

7       824.   Because New GM concealed its knowledge of the defect in class

8   vehicles, the Ohio Class did not receive notice of the defect prior to the passage of

9   the Bar Date. No recall occurred.

10       825.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which

11   the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds

12   of the bankruptcy sale to, among others, the holders of claims that were ultimately

13   allowed.

14       826.   The out-of-pocket consideration provided by New GM for its

15   acquisition of Old GM consisted of 10% of the post-closing outstanding shares of

16   New GM common stock and two series of warrants, each to purchase 7.5% of the

17   post-closing shares of New GM (collectively, the "New GM Securities").

18       827.   Through an "accordion feature" in the Sale Agreement, New GM agreed

19   that it would provide additional consideration if the aggregate amount of allowed

20   general unsecured claims exceeded $35 billion. In that event, New GM would be

21   required to issue additional shares of New GM Common Stock for the benefit of the

22   GUC Trust's beneficiaries.

23       828.   As of September 30, 2014, the total amount of Allowed Claims was

24   approximately $31.854 billion, and the total amount of Disputed Claims was

25   approximately $79.5 million.

26       829.   As of September 30, 2014, the GUC Trust had distributed more than

27   89% of the New GM Securities. After a subsequent November 12 distribution, the

28   total assets of the GUC Trust were approximately $773.7 million – all or nearly all o

KNAPP,
PETERSEN
& CLARKE

-141-

1   which is already slated to pay the GUC Trust's expenses and existing beneficiaries o
2   the Trust.

3        830.   But for New GM's fraudulent concealment of the defects, the Ohio
4   Class would have filed claims against Old GM before the Bar Date.

5        831.   Had the Ohio Class filed timely claims before the Bar Date, the claims
6   would have been allowed.

7        832.   New GM's concealment and suppression of the material fact of the
8   defect in class vehicles over the first several months of its existence served to preven
9   the filing of claims by the Class.

10        833.   New GM had a duty to disclose the defect in class vehicles because the
11   information was known and/or accessible only to New GM who had superior
12   knowledge and access to the facts, and New GM knew the facts were not known to
13   or reasonably discoverable by Plaintiffs and the Ohio Class.  These omitted and
14   concealed facts were material because they directly impacted the safety and the valu
15   of the class vehicles purchased or leased by Plaintiffs and the Ohio Class, who had a
16   limited period of time in which to file a claim against the manufacturer of the
17   vehicles, Old GM.

18        834.   Plaintiffs and the Ohio Class were unaware of these omitted material
19   facts and would not have acted as they did if they had known of the concealed and/or
20   suppressed facts. Plaintiffs' and the Ohio Class's actions were justified. New GM
21   was in exclusive control of the material facts and such facts were not known to the
22   public, Plaintiffs, or the Ohio Class.

23        835.   Because of the concealment and/or suppression of the facts, Plaintiffs
24   and the Ohio Class sustained damage because they lost their chance to file a claim
25   against Old GM and seek payment from the GUC Trust.  Had they been aware of the
26   defects that existed in their vehicles, Plaintiffs would have timely filed claims and
27   would have recovered from the GUC Trust.

28   ////

KNAPP,
PETERSEN
& CLARKE

1   836.   Accordingly, New GM is liable to the Ohio Class members for their

2   damages in an amount to be proven at trial.

3   837.   New GM's acts were done maliciously, oppressively, deliberately, with

4   intent to defraud, and in reckless disregard of Plaintiffs' and the Ohio Class's rights

5   and well-being to enrich New GM.  New GM's conduct warrants an assessment of

6   punitive damages in an amount sufficient to deter such conduct in the future, which

7   amount is to be determined according to proof.

8   **COUNT LIV**

9   **THIRD-PARTY BENEFICIARY CLAIM**

10   838.   Plaintiffs reallege and incorporate by reference all paragraphs as though

11   fully set forth herein.

12   839.   This claim is brought only on behalf of Class members who are Ohio

13   residents (the "Ohio Class").

14   840.   In the Sales Agreement through which New GM acquired substantially

15   all of the assets of New GM, New GM explicitly agreed as follows:

16   From and after the Closing, [New GM] shall comply with the

17   certification, reporting and recall requirements of the National Traffic

18   and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

19   Recall Enhancement, Accountability and Documentation Act, the Clean

20   Air Act, the California Health and Safety Code and similar Laws, in

21   each case, to the extent applicable in respect of vehicles and vehicle

22   parts manufactured or distributed by [Old GM].

23   841.   With the exception of the portion of the agreement that purports to

24   immunize New GM from its own independent misconduct with respect to cars and

25   parts made by Old GM, the Sales Agreement is a valid and binding contract.

26   842.   But for New GM's covenant to comply with the TREAD Act with

27   respect to cars and parts made by Old GM, the TREAD Act would have no

28   application to New GM with respect to those cars and parts. That is because the

KNAPP,
PETERSEN
& CLARKE

-143-

1   TREAD Act on its face imposes reporting and recall obligations only on the

2   "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

3       843.  Because New GM agreed to comply with the TREAD Act with respect

4   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

5   make quarterly submissions to NHTSA of "early warning reporting" data, including

6   incidents involving property damage, warranty claims, consumer complaints, and

7   field reports concerning failure, malfunction, lack of durability or other performance

8   issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

9   underlying records on which the early warning reports are based and all records

10   containing information on malfunctions that may be related to motor vehicle safety.

11   See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

12   or should know that a safety defect exists – including notifying NHTSA and

13   consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

14   573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

15       844.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by

16   Old GM, are the clear intended beneficiaries of New GM's agreement to comply

17   with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

18   benefit of having a manufacturer responsible for monitoring the safety of their Old

19   GM vehicles and making certain that any known defects would be promptly

20   remedied.

21       845.  Although the Sale Order which consummated New GM's purchase of

22   Old GM purported to give New GM immunity from claims concerning vehicles or

23   parts made by Old GM, the bankruptcy court recently ruled that provision to be

24   unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

25   conduct with respect to cars and parts made by Old GM. Therefore, that provision of

26   the Sale Order and related provisions of the Sale Agreement cannot be read to bar

27   Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

28   breaches of the promise it made in the Sale Agreement.

KNAPP,
PETERSEN
& CLARKE

846.   New GM breached its covenant to comply with the TREAD Act with respect to the class vehicles, as it failed to take action to remediate the defects at any time, up to the present.

847.   Plaintiffs and the Ohio Class were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the defect in the class vehicles, the value of Old GM class vehicles has diminished in an amount to be determined at trial.

**COUNT LV**

**UNJUST ENRICHMENT**

848.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

849.   This claim is brought on behalf of members of the Ohio Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Ohio Unjust Enrichment Class").

850.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

851.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

852.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

KNAPP,
PETERSEN
& CLARKE

853.   Thus, all Ohio Unjust Enrichment Class Members conferred a benefit on New GM.

854.   It is inequitable for New GM to retain these benefits.

855.   Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

856.   New GM knowingly accepted the benefits of its unjust conduct. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Pennsylvania**

## COUNT LVI

### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES

### AND CONSUMER PROTECTION LAW

### (73 P.S. § 201-1, et seq.)

857.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

858.   This claim is brought only on behalf of Nationwide Class Members who are Pennsylvania residents (the "Pennsylvania Class").

859.   Plaintiffs purchased or leased their class vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

860.   All of the acts complained of herein were perpetrated by New GM in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

861.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have ... characteristics, .... Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade ... if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or

KNAPP,
PETERSEN
& CLARKE

-146-

1   misunderstanding." 73 P.S. § 201-2(4).

2        862.    New GM engaged in unlawful trade practices, including representing

3   that class vehicles have characteristics, uses, benefits, and qualities which they do no

4   have; representing that class vehicles are of a particular standard and quality when

5   they are not; advertising class vehicles with the intent not to sell them as advertised;

6   and engaging in any other fraudulent or deceptive conduct which creates a likelihood

7   of confusion or of misunderstanding.

8        863.    In the course of its business, New GM systematically devalued safety

9   and concealed defects in the class vehicles as described herein and otherwise

10  engaged in activities with a tendency or capacity to deceive. New GM also engaged

11  in unlawful trade practices by employing deception, deceptive acts or practices,

12  fraud, misrepresentations, or concealment, suppression or omission of any material

13  fact with intent that others rely upon such concealment, suppression or omission, in

14  connection with the sale of class vehicles.

15       864.    From the date of its inception on July 11, 2009, New GM knew of many

16  serious defects affecting many models and years of GM-branded vehicles, because o

17  (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous

18  reports, investigations, and notifications from regulatory authorities; and (iii)

19  ongoing performance of New GM's TREAD Act obligations.  New GM became

20  aware of other serious defects and systemic safety issues years ago, but concealed all

21  of that information.

22       865.    New GM was also aware that it valued cost-cutting over safety, selected

23  parts from the cheapest supplier regardless of quality, and actively discouraged

24  employees from finding and flagging known safety defects, and that this approach

25  would necessarily cause the existence of more defects in the vehicles it designed and

26  manufactured and the failure to disclose and remedy defects in all class vehicles.

27  New GM concealed this information as well.

28  ////

KNAPP,
PETERSEN
& CLARKE

1    866.   By failing to disclose and by actively concealing the many defects in the

2    class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

3    presenting itself as a reputable manufacturer that valued safety and stood behind its

4    vehicles after they were sold, New GM engaged in unfair and deceptive business

5    practices in violation of the Pennsylvania CPL.

6    867.   In the course of New GM's business, it willfully failed to disclose and

7    actively concealed the dangerous risk posed by the defects discussed above. New

8    GM compounded the deception by repeatedly asserting that GM-branded vehicles

9    were safe, reliable, and of high quality, and by claiming to be a reputable

10    manufacturer that valued safety and stood behind its vehicles once they are on the

11    road.

12    868.   New GM's unfair or deceptive acts or practices were likely to and did in

13    fact deceive reasonable consumers, including Plaintiffs, about the true safety and

14    reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of

15    safety at New GM, and the true value of the class vehicles.

16    869.   New GM intentionally and knowingly misrepresented material facts

17    regarding the class vehicles with an intent to mislead Plaintiffs and the Pennsylvania

18    Class.

19    870.   New GM knew or should have known that its conduct violated the

20    Pennsylvania CPL.

21    871.   As alleged above, New GM made material statements about the safety

22    and reliability of the class vehicles and the GM brand that were either false or

23    misleading.

24    872.   New GM owed Plaintiffs a duty to disclose the true safety and reliability

25    of the class vehicles and the devaluing of safety at New GM, because New GM:

26    (a)    Possessed exclusive knowledge that it valued cost-cutting over

27    safety, selected parts from the cheapest supplier regardless of quality, and actively

28    discouraged employees from finding and flagging known safety defects, and that this

KNAPP,
PETERSEN
& CLARKE

1    approach would necessarily cause the existence of more defects in the vehicles it

2    designed and manufactured;

3           (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

4           (c)     Made incomplete representations about the safety and reliability

5    of the class vehicles generally, and the valve guide defects in particular, while

6    purposefully withholding material facts from Plaintiffs that contradicted these

7    representations.

8       873.   Because New GM fraudulently concealed the defects in the class

9    vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

10    attached to those vehicles by New GM's conduct, they are now worth significantly

11    less than they otherwise would be.

12       874.   New GM's systemic devaluation of safety and its concealment of the

13    defects in the class vehicles were material to Plaintiffs and the Pennsylvania Class.

14    A vehicle made by a reputable manufacturer of vehicles is worth more than an

15    otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

16    conceals defects rather than promptly remedies them.

17       875.   Plaintiffs and the Pennsylvania Class suffered ascertainable loss caused

18    by New GM's misrepresentations and its concealment of and failure to disclose

19    material information. Plaintiffs who purchased class vehicles after the date of New

20    GM's inception either would have paid less for their vehicles or would not have

21    purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain

22    as a result of New GM's misconduct.

23       876.   Regardless of time of purchase or lease, no Plaintiffs would have

24    maintained and continued to drive their vehicles had they been aware of New GM's

25    misconduct. By contractually assuming TREAD Act responsibilities with respect to

26    Old GM class vehicles, New GM effectively assumed the role of manufacturer of

27    those vehicles because the TREAD Act on its face only applies to vehicle

28    manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

KNAPP,
PETERSEN
& CLARKE

1  vehicle owners to refrain from unfair and deceptive acts or practices under the

2  Pennsylvania CPL. And, in any event, all class vehicle owners suffered ascertainable

3  loss in the form of the diminished value of their vehicles as a result of New GM's

4  deceptive and unfair acts and practices that occurred in the course of New GM's

5  business.

6      877.  As a direct and proximate result of New GM's violations of the

7  Pennsylvania CPL, Plaintiffs and the Pennsylvania Class have suffered injury-in-fact

8  and/or actual damage.

9      878.  New GM is liable to Plaintiffs and the Pennsylvania Class for treble

10  their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73

11  P.S. § 201-9.2(a). Plaintiffs and the Pennsylvania Class are also entitled to an award

12  of punitive damages given that New GM's conduct was malicious, wanton, willful,

13  oppressive, or exhibited a reckless indifference to the rights of others.

14                          **COUNT LVII**

15                  **FRAUD BY CONCEALMENT**

16      879.  Plaintiffs reallege and incorporate by reference all paragraphs as though

17  fully set forth herein.

18      880.  This claim is brought on behalf of Nationwide Class Members who are

19  Pennsylvania residents (the "Pennsylvania Class").

20      881.  New GM concealed and suppressed material facts concerning the

21  quality of the class vehicles.

22      882.  New GM concealed and suppressed material facts concerning the

23  culture of New GM - a culture characterized by an emphasis on cost-cutting, the

24  studious avoidance of quality issues, and a shoddy design process.

25      883.  New GM concealed and suppressed material facts concerning the

26  defects in the class vehicles, and that it valued cost-cutting over quality and took

27  steps to ensure that its employees did not reveal known defects to regulators or

28  consumers.

KNAPP,
PETERSEN
& CLARKE

884.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable.  The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

885.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Pennsylvania Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Pennsylvania Class.

886.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Pennsylvania Class.

887.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Pennsylvania Class and conceal material information regarding defects that exist in the class vehicles.

////

KNAPP,
PETERSEN
& CLARKE

-151-

888. Plaintiffs and the Pennsylvania Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Pennsylvania Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public Plaintiffs, or the Pennsylvania Class.

889. Because of the concealment and/or suppression of the facts, Plaintiffs and the Pennsylvania Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

890. The value of all Pennsylvania Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

891. Accordingly, New GM is liable to the Pennsylvania Class for damages in an amount to be proven at trial.

892. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Pennsylvania Class'

KNAPP,
PETERSEN
& CLARKE

1 rights and well-being to enrich New GM. New GM's conduct warrants an assessmen

2 of punitive damages in an amount sufficient to deter such conduct in the future,

3 which amount is to be determined according to proof.

### COUNT LVIII

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (13 PA. CONS. STAT. ANN. § 2314)

7     893. Plaintiffs reallege and incorporate by reference all paragraphs as though

8 fully set forth herein.

9     894. This claim is brought only on behalf of the Pennsylvania Class.

10     895. New GM is s a merchant with respect to motor vehicles.

11     896. A warranty that the class vehicles were in merchantable condition was

12 implied by law when New GM sold or leased the class vehicles to Plaintiffs and the

13 Pennsylvania Class on or after July 11, 2009.

14     897. These vehicles, when sold and at all times thereafter, were not in

15 merchantable condition and are not fit for the ordinary purpose for which cars are

16 used. Specifically, the class vehicles are inherently defective in that there are defects

17 in the engine which result in premature unusual wear and catastrophic failure.

18     898. New GM was provided notice of these issues by numerous complaints

19 filed against it, by its own internal investigations, and by numerous individual letters

20 and communications sent by Plaintiffs and the Pennsylvania Class before or within a

21 reasonable amount of time after New GM issued the recall and the allegations of

22 vehicle defects became public.

23     899. As a direct and proximate result of New GM's breach of the warranties

24 of merchantability, Plaintiffs and the Pennsylvania Class members have been

25 damaged in an amount to be proven at trial.

26 ////

27 ////

28 ////

KNAPP,
PETERSEN
& CLARKE

-153-

COUNT LIX

FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM
AGAINST OLD GM IN BANKRUPTCY

900.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

901.   This claim is brought only on behalf of Class members who are Pennsylvania residents and who owned their class vehicle for at least some period of time between July 11, 2009 and November 30, 2009.

902.   New GM was aware of the defects in class vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order And Sale Agreement by which New GM acquired substantially all the assets of Old GM.

903.   The Pennsylvania Class did not receive notice of the defect in class vehicles prior to the entry of the Sale Order. No recall occurred.

904.   In September of 2009, the bankruptcy court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

905.   Because New GM concealed its knowledge of the defect in class vehicles, the Pennsylvania Class did not receive notice of the defect prior to the passage of the Bar Date. No recall occurred.

906.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

907.   The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

////

KNAPP,
PETERSEN
& CLARKE

-154-

908.   Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion. In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

909.   As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

910.   As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities. After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million - all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

911.   But for New GM's fraudulent concealment of the defects, the Pennsylvania Class would have filed claims against Old GM before the Bar Date.

912.   Had the Pennsylvania Class filed timely claims before the Bar Date, the claims would have been allowed.

913.   New GM's concealment and suppression of the material fact of the defect in class vehicles over the first several months of its existence served to prevent the filing of claims by the Class.

914.   New GM had a duty to disclose the defects in class vehicles because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Pennsylvania Class.  These omitted and concealed facts were material because they directly impacted the safety and the value of the class vehicles purchased or leased by Plaintiffs and the Pennsylvania Class, who had a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

KNAPP,
PETERSEN
& CLARKE

-155-

915.   Plaintiffs and the Pennsylvania Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Pennsylvania Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Pennsylvania Class.

916.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Pennsylvania Class sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust. Had they been aware of the defects that existed in their vehicles, Plaintiffs would have timely filed claims and would have recovered from the GUC Trust.

917.   Accordingly, New GM is liable to the Pennsylvania Class members for their damages in an amount to be proven at trial.

918.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Pennsylvania Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessmen of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT LX

### THIRD-PARTY BENEFICIARY CLAIM

919.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

920.   This claim is brought only on behalf of Class members who are Pennsylvania residents (the "Pennsylvania Class").

921.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

KNAPP,
PETERSEN
& CLARKE

1  Recall Enhancement, Accountability and Documentation Act, the Clean

2  Air Act, the California Health and Safety Code and similar Laws, in

3  each case, to the extent applicable in respect of vehicles and vehicle

4  parts manufactured or distributed by [Old GM].

5  922. With the exception of the portion of the agreement that purports to

6 immunize New GM from its own independent misconduct with respect to cars and

7 parts made by Old GM, the Sales Agreement is a valid and binding contract.

8  923. But for New GM's covenant to comply with the TREAD Act with

9 respect to cars and parts made by Old GM, the TREAD Act would have no

10 application to New GM with respect to those cars and parts. That is because the

11 TREAD Act on its face imposes reporting and recall obligations only on the

12 "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

13  924. Because New GM agreed to comply with the TREAD Act with respect

14 to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

15 make quarterly submissions to NHTSA of "early warning reporting" data, including

16 incidents involving property damage, warranty claims, consumer complaints, and

17 field reports concerning failure, malfunction, lack of durability or other performance

18 issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

19 underlying records on which the early warning reports are based and all records

20 containing information on malfunctions that may be related to motor vehicle safety.

21 See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

22 or should know that a safety defect exists - including notifying NHTSA and

23 consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

24 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

25  925. Plaintiffs, as owners and lessors of vehicles and parts manufactured by

26 Old GM, are the clear intended beneficiaries of New GM's agreement to comply

27 with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

28 benefit of having a manufacturer responsible for monitoring the safety of their Old

KNAPP,
PETERSEN
& CLARKE

1   GM vehicles and making certain that any known defects would be promptly

2   remedied.

3       926.   Although the Sale Order which consummated New GM's purchase of

4   Old GM purported to give New GM immunity from claims concerning vehicles or

5   parts made by Old GM, the bankruptcy court recently ruled that provision to be

6   unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

7   conduct with respect to cars and parts made by Old GM. Therefore, that provision of

8   the Sale Order and related provisions of the Sale Agreement cannot be read to bar

9   Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

10   breaches of the promise it made in the Sale Agreement.

11       927.   New GM breached its covenant to comply with the TREAD Act with

12   respect to the class vehicles, as it failed to take action to remediate the defects at any

13   time, up to the present.

14       928.   Plaintiffs and the Pennsylvania Class were damaged as a result of New

15   GM's breach.  Because of New GM's failure to timely remedy the defect in class

16   vehicles, the value of Old GM class vehicles has diminished in an amount to be

17   determined at trial.

18   **COUNT LXI**

19   **UNJUST ENRICHMENT**

20       929.   Plaintiffs reallege and incorporate by reference all paragraphs as though

21   fully set forth herein.

22       930.   This claim is brought on behalf of members of the Pennsylvania Class

23   who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time

24   period after New GM came into existence, and who purchased or leased class

25   vehicles in the time period before New GM came into existence, which cars were

26   still on the road after New GM came into existence (the "Pennsylvania Unjust

27   Enrichment Class").

**KNAPP,
PETERSEN
& CLARKE**

28   ////

-158-

931.  New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

932.  New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

933.  With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

934.  Thus, all Pennsylvania Unjust Enrichment Class Members conferred a benefit on New GM.

935.  It is inequitable for New GM to retain these benefits.

936.  Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

937.  New GM knowingly accepted the benefits of its unjust conduct.

938.  As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Tennessee**

## COUNT LXII

## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

## (TENN. CODE ANN. § 47-18-101, et seq.)

939.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

940.  This claim is brought only on behalf of Nationwide Class Members who are Tennessee residents (the "Tennessee Class").

KNAPP,
PETERSEN
& CLARKE

941.   Plaintiffs and the Tennessee Class are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(2).

942.   New GM is a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

943.   New GM's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

944.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "Representing that goods or services have ... characteristics, [or] ... benefits ... that they do not have...;" "Representing that goods or services are of a particular standard, quality or grade... if they are of another;" and "Advertising goods or services with intent not to sell them as advertised." TENN. CODE ANN. § 47-18-104. New GM violated the Tennessee CPA by engaging in unfair or deceptive acts, including representing that class vehicles have characteristics or benefits that they did not have; representing that class vehicles are of a particular standard, quality, or grade when they are of another; and advertising class vehicles with intent not to sell them as advertised.

945.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

946.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous

KNAPP,
PETERSEN
& CLARKE

-160-

1   reports, investigations, and notifications from regulatory authorities; and (iii)

2   ongoing performance of New GM's TREAD Act obligations, as discussed above.

3   New GM became aware of other serious defects and systemic safety issues years

4   ago, but concealed all of that information.

5      947.   New GM was also aware that it valued cost-cutting over safety, selected

6   parts from the cheapest supplier regardless of quality, and actively discouraged

7   employees from finding and flagging known safety defects, and that this approach

8   would necessarily cause the existence of more defects in the vehicles it designed and

9   manufactured and the failure to disclose and remedy defects in all GM-branded

10  vehicles. New GM concealed this information as well.

11     948.   By failing to disclose and by actively concealing the many defects in

12  GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality,

13  and by presenting itself as a reputable manufacturer that valued safety and stood

14  behind its vehicles after they were sold, New GM engaged in unfair and deceptive

15  business practices in violation of the Tennessee CPA.

16     949.   In the course of New GM's business, it willfully failed to disclose and

17  actively concealed the dangerous risk posed by the defects discussed above.  New

18  GM compounded the deception by repeatedly asserting that GM-branded vehicles

19  were safe, reliable, and of high quality, and by claiming to be a reputable

20  manufacturer that valued safety and stood behind its vehicles once they are on the

21  road.

22     950.   New GM's unfair or deceptive acts or practices were likely to and did in

23  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

24  reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of

25  safety at New GM, and the true value of the class vehicles.

26     951.   New GM intentionally and knowingly misrepresented material facts

27  regarding the class vehicles with an intent to mislead Plaintiffs and the Tennessee

28  Class.

KNAPP,
PETERSEN
& CLARKE

952.   New GM knew or should have known that its conduct violated the Tennessee CPA.

953.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

954.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

955.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

956.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Tennessee Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

957.   Plaintiffs and the Tennessee Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material

1  information. Plaintiffs who purchased class vehicles after the date of New GM's

2  inception either would have paid less for their vehicles or would not have purchased

3  or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

4  of New GM's misconduct.

5      958.   Regardless of time of purchase or lease, no Plaintiffs would have

6  maintained and continued to drive their vehicles had they been aware of New GM's

7  misconduct. By contractually assuming TREAD Act responsibilities with respect to

8  Old GM class vehicles, New GM effectively assumed the role of manufacturer of

9  those vehicles because the TREAD Act on its face only applies to vehicle

10  manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

11  vehicle owners to refrain from unfair and deceptive acts or practices under the

12  Tennessee CPA.  And, in any event, all class vehicle owners suffered ascertainable

13  loss in the form of the diminished value of their vehicles as a result of New GM's

14  deceptive and unfair acts and practices that occurred in the course of New GM's

15  business.

16      959.   As a direct and proximate result of New GM's violations of the

17  Tennessee CPA, Plaintiffs and the Tennessee Class have suffered injury-in-fact

18  and/or actual damage.

19      960.   Pursuant to TENN. CODE § 47-18-109(a), Plaintiffs and the Tennessee

20  Class seek monetary relief against New GM measured as actual damages in an

21  amount to be determined at trial, treble damages as a result of New GM's willful or

22  knowing violations, and any other just and proper relief available under the

23  Tennessee CPA.

24                          **COUNT LXIII**

25                      **FRAUD BY CONCEALMENT**

26      961.   Plaintiffs reallege and incorporate by reference all paragraphs as though

27  fully set forth herein.

28  ////

KNAPP,
PETERSEN
& CLARKE

-163-