# Exhibit  J-4

962.    This claim is brought on behalf of Nationwide Class Members who are Tennessee residents (the "Tennessee Class").

963.    New GM concealed and suppressed material facts concerning the quality of the class vehicles.

964.    New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

965.    New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

966.    New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable.  The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

967.    New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Tennessee Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial

1   truth, but the entire truth. These omitted and concealed facts were material because

2   they directly impact the value of the class vehicles purchased or leased by Plaintiffs

3   and the Tennessee Class.

4        968.   New GM actively concealed and/or suppressed these material facts, in

5   whole or in part, to protect its profits and avoid recalls that would hurt the brand's

6   image and cost New GM money, and it did so at the expense of Plaintiffs and the

7   Tennessee Class.

8        969.   On information and belief, New GM has still not made full and adequate

9   disclosure and continues to defraud Plaintiffs and the Tennessee Class and conceal

10  material information regarding defects that exist in the class vehicles.

11       970.   Plaintiffs and the Tennessee Class were unaware of these omitted

12  material facts and would not have acted as they did if they had known of the

13  concealed and/or suppressed facts, in that they would not have purchased cars

14  manufactured by New GM; and/or they would not have purchased cars manufactured

15  by Old GM in the time after New GM had come into existence and had fraudulently

16  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

17  not have continued to drive their vehicles or would have taken other affirmative

18  steps. Plaintiffs' and the Tennessee Class's actions were justified. New GM was in

19  exclusive control of the material facts and such facts were not known to the public,

20  Plaintiffs, or the Tennessee Class.

21       971.   Because of the concealment and/or suppression of the facts, Plaintiffs

22  and the Tennessee Class sustained damage because they own vehicles that

23  diminished in value as a result of New GM's concealment of, and failure to timely

24  disclose, the defects in the class vehicles and the quality issues engendered by New

25  GM's corporate policies. Had they been aware of the defects that existed in the class

26  vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

27  New GM came into existence either would have paid less for their vehicles or would

28  not have purchased or leased them at all; and no Plaintiffs regardless of time of

KNAPP,
PETERSEN
& CLARKE

1   purchase or lease would have maintained their vehicles.

2   972.   The value of all Tennessee Class Members' vehicles has diminished as

3   result of New GM's fraudulent concealment of the defects which have tarnished the

4   Corvette brand and made any reasonable consumer reluctant to purchase any of the

5   class vehicles, let alone pay what otherwise would have been fair market value for

6   the vehicles.

7   973.   Accordingly, New GM is liable to the Tennessee Class for damages in

8   an amount to be proven at trial.

9   974.   New GM's acts were done maliciously, oppressively, deliberately, with

10   intent to defraud, and in reckless disregard of Plaintiffs' and the Tennessee Class's

11   rights and well-being to enrich New GM. New GM's conduct warrants an assessmen

12   of punitive damages in an amount sufficient to deter such conduct in the future,

13   which amount is to be determined according to proof.

14   ### COUNT LXIV

15   ### FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM

16   ### AGAINST OLD GM IN BANKRUPTCY

17   975.   Plaintiffs reallege and incorporate by reference all paragraphs as though

18   fully set forth herein.

19   976.   This claim is brought only on behalf of Class members who are

20   Tennessee residents and who owned their class vehicle for at least some period of

21   time between July 11, 2009 and November 30, 2009.

22   977.   New GM was aware of the defects in class vehicles sold by Old GM

23   from the moment it came into existence upon entry of the Sale Order And Sale

24   Agreement by which New GM acquired substantially all the assets of Old GM.

25   978.   The Tennessee Class did not receive notice of the defect in the class

26   vehicles prior to the entry of the Sale Order. No recall occurred.

27   979.   In September of 2009, the bankruptcy court entered the Bar Date Order,

28   establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims

**KNAPP,
PETERSEN
& CLARKE**

1  to be filed against Old GM.

2      980.   Because New GM concealed its knowledge of defect in the class

3  vehicles, the Tennessee Class did not receive notice of the defect in the class vehicle

4  prior to the passage of the Bar Date.  No recall occurred.

5      981.   In 2011, the bankruptcy court approved a Chapter 11 Plan under which

6  the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceed

7  of the bankruptcy sale to, among others, the holders of claims that were ultimately

8  allowed.

9      982.   The out-of-pocket consideration provided by New GM for its

10  acquisition of Old GM consisted of 10% of the post-closing outstanding shares of

11  New GM common stock and two series of warrants, each to purchase 7.5% of the

12  post-closing shares of New GM (collectively, the "New GM Securities").

13      983.   Through an "accordion feature" in the Sale Agreement, New GM agree

14  that it would provide additional consideration if the aggregate amount of allowed

15  general unsecured claims exceeded $35 billion. In that event, New GM would be

16  required to issue additional shares of New GM Common Stock for the benefit of the

17  GUC Trust's beneficiaries.

18      984.   As of September 30, 2014, the total amount of Allowed Claims was

19  approximately $31.854 billion, and the total amount of Disputed Claims was

20  approximately $79.5 million.

21      985.   As of September 30, 2014, the GUC Trust had distributed more than

22  89% of the New GM Securities. After a subsequent November 12 distribution, the

23  total assets of the GUC Trust were approximately $773.7 million – all or nearly all o

24  which is already slated to pay the GUC Trust's expenses and existing beneficiaries o

25  the Trust.

26      986.   But for New GM's fraudulent concealment of the defects, the Tennessee

27  Class would have filed claims against Old GM before the Bar Date.

28  ////

KNAPP,
PETERSEN
& CLARKE

1    987.    Had the Tennessee Class filed timely claims before the Bar Date, the

2    claims would have been allowed.

3    988.    New GM's concealment and suppression of the material fact of the

4    defect in the class vehicle over the first several months of its existence served to

5    prevent the filing of claims by the Class.

6    989.    New GM had a duty to disclose the defects in the class vehicles because

7    the information was known and/or accessible only to New GM who had superior

8    knowledge and access to the facts, and New GM knew the facts were not known to

9    or reasonably discoverable by Plaintiffs and the Tennessee Class. These omitted and

10    concealed facts were material because they directly impacted the safety and the value

11    of the class vehicles purchased or leased by Plaintiffs and the Tennessee Class, who

12    had a limited period of time in which to file a claim against the manufacturer of the

13    vehicles, Old GM.

14    990.    Plaintiffs and the Tennessee Class were unaware of these omitted

15    material facts and would not have acted as they did if they had known of the

16    concealed and/or suppressed facts. Plaintiffs' and the Tennessee Class's actions were

17    justified. New GM was in exclusive control of the material facts and such facts were

18    not known to the public, Plaintiffs, or the Tennessee Class.

19    991.    Because of the concealment and/or suppression of the facts, Plaintiffs

20    and the Tennessee Class sustained damage because they lost their chance to file a

21    claim against Old GM and seek payment from the GUC Trust.  Had they been aware

22    of the defects that existed in their vehicles, Plaintiffs would have timely filed claims

23    and would have recovered from the GUC Trust.

24    992.    Accordingly, New GM is liable to the Tennessee Class members for

25    their damages in an amount to be proven at trial.

26    993.    New GM's acts were done maliciously, oppressively, deliberately, with

27    intent to defraud, and in reckless disregard of Plaintiffs' and the Tennessee Class's

28    rights and well-being to enrich New GM. New GM's conduct warrants an assessmen

KNAPP,
PETERSEN
& CLARKE

-168-

1    of punitive damages in an amount sufficient to deter such conduct in the future,

2    which amount is to be determined according to proof.

3                                    COUNT LXV

4                        THIRD-PARTY BENEFICIARY CLAIM

5        994.   Plaintiffs reallege and incorporate by reference all paragraphs as though

6    fully set forth herein.

7        995.   This claim is brought only on behalf of Class members who are

8    Tennessee residents (the "Tennessee Class").

9        996.   In the Sales Agreement through which New GM acquired substantially

10   all of the assets of New GM, New GM explicitly agreed as follows:

11              From and after the Closing, [New GM] shall comply with the

12              certification, reporting and recall requirements of the National Traffic

13              and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

14              Recall Enhancement, Accountability and Documentation Act, the Clean

15              Air Act, the California Health and Safety Code and similar Laws, in

16              each case, to the extent applicable in respect of vehicles and vehicle

17              parts manufactured or distributed by [Old GM].

18       997.   With the exception of the portion of the agreement that purports to

19   immunize New GM from its own independent misconduct with respect to cars and

20   parts made by Old GM, the Sales Agreement is a valid and binding contract.

21       998.   But for New GM's covenant to comply with the TREAD Act with

22   respect to cars and parts made by Old GM, the TREAD Act would have no

23   application to New GM with respect to those cars and parts. That is because the

24   TREAD Act on its face imposes reporting and recall obligations only on the

25   "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

26       999.   Because New GM agreed to comply with the TREAD Act with respect

27   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

28   make quarterly submissions to NHTSA of "early warning reporting" data, including

KNAPP,
PETERSEN
& CLARKE

                                      -169-

1    incidents involving property damage, warranty claims, consumer complaints, and

2    field reports concerning failure, malfunction, lack of durability or other performance

3    issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

4    underlying records on which the early warning reports are based and all records

5    containing information on malfunctions that may be related to motor vehicle safety.

6    See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

7    or should know that a safety defect exists – including notifying NHTSA and

8    consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

9    573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

10    1000. Plaintiffs, as owners and lessors of vehicles and parts manufactured by

11    Old GM, are the clear intended beneficiaries of New GM's agreement to comply

12    with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the

13    benefit of having a manufacturer responsible for monitoring the safety of their Old

14    GM vehicles and making certain that any known defects would be promptly

15    remedied.

16    1001. Although the Sale Order which consummated New GM's purchase of

17    Old GM purported to give New GM immunity from claims concerning vehicles or

18    parts made by Old GM, the bankruptcy court recently ruled that provision to be

19    unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

20    conduct with respect to cars and parts made by Old GM.  Therefore, that provision o

21    the Sale Order and related provisions of the Sale Agreement cannot be read to bar

22    Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

23    breaches of the promise it made in the Sale Agreement.

24    1002. New GM breached its covenant to comply with the TREAD Act with

25    respect to the class vehicles, as it failed to take action to remediate the defects at any

26    time, up to the present.

27    1003. Plaintiffs and the Tennessee Class were damaged as a result of New

28    GM's breach.  Because of New GM's failure to timely remedy the defect in class

KNAPP,
PETERSEN
& CLARKE

-170-

1   vehicles, the value of the Old GM class vehicles has diminished in an amount to be

2   determined at trial.

### COUNT LXVI

### UNJUST ENRICHMENT

5   1004. Plaintiffs reallege and incorporate by reference all paragraphs as though

6   fully set forth herein.

7   1005. This claim is brought on behalf of members of the Tennessee Class who

8   purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

9   after New GM came into existence, and who purchased or leased class vehicles in the

10   time period before New GM came into existence, which cars were still on the road

11   after New GM came into existence (the "Tennessee Unjust Enrichment Class").

12   1006. New GM has received and retained a benefit from the Plaintiffs and

13   inequity has resulted.

14   1007. New GM has benefitted from selling and leasing defective cars,

15   including Certified Pre-Owned cars, whose value was artificially inflated by New

16   GM's concealment of defect issues that plagued class vehicles, for more than they

17   were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

18   pay other costs.

19   1008. With respect to the class vehicles purchased before New GM came into

20   existence that were still on the road after New GM came into existence and as to

21   which New GM had unjustly and unlawfully determined not to recall, New GM

22   benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

23   from its statements about the success of New GM.

24   1009. Thus, all Tennessee Unjust Enrichment Class Members conferred a

25   benefit on New GM.

26   1010. It is inequitable for New GM to retain these benefits.

27   1011. Plaintiffs were not aware about the true facts about class vehicles, and

28   did not benefit from GM's conduct.

KNAPP,
PETERSEN
& CLARKE

-171-

1    1012. New GM knowingly accepted the benefits of its unjust conduct.

2    1013. As a result of New GM's conduct, the amount of its unjust enrichment

3    should be disgorged, in an amount according to proof.

4    **Texas**

5    ### COUNT LXVII

6    ### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES –

7    ### CONSUMER PROTECTION ACT

8    ### (TEX. BUS. & COM. CODE §§ 17.41, et seq.)

9    1014. Plaintiffs reallege and incorporate by reference all paragraphs as though

10   fully set forth herein.

11   1015. This claim is brought only on behalf of Nationwide Class members who

12   are Texas residents (the "Texas Class").

13   1016. Plaintiffs and the Texas Class are individuals, partnerships and

14   corporations with assets of less than $25 million (or are controlled by corporations or

15   entities with less than $25 million in assets). See TEX. BUS. & COM. CODE §

16   17.41.

17   1017. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas

18   DTPA") provides a private right of action to a consumer where the consumer suffers

19   economic damage as the result of either (i) the use of false, misleading or deceptive

20   act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b);

21   (ii) "breach of an express or implied warranty" or (iii) "an unconscionable action or

22   course of action by any person." TEX. BUS. & COM. CODE § 17.50(a)(2) & (3).

23   1018. An "unconscionable action or course of action," means "an act or

24   practice which, to a consumer's detriment, takes advantage of the lack of knowledge,

25   ability, experience, or capacity of the consumer to a grossly unfair degree." TEX.

26   BUS. & COM. CODE § 17.45(5). As detailed herein, New GM has engaged in an

27   unconscionable action or course of action and thereby caused economic damages to

28   the Texas Class.

KNAPP,
PETERSEN
& CLARKE

-172-

1     1019. New GM has also breached the implied warranty of merchantability

2  with respect to the Texas Class, as set forth in Texas Count III below.

3     1020. New GM has also violated the specifically enumerated provisions of

4  TEX. BUS. & COM. CODE § 17.46(b) by, at a minimum: (1) representing that the

5  class vehicles have characteristics, uses, benefits, and qualities which they do not

6  have; (2) representing that the class vehicles are of a particular standard, quality, and

7  grade when they are not; (3) advertising the class vehicles with the intent not to sell

8  them as advertised; (4) failing to disclose information concerning the class vehicles

9  with the intent to induce consumers to purchase or lease the class vehicles.

10     1021. In the course of its business, New GM systematically devalued safety

11  and concealed defects in the class vehicles as described herein and otherwise

12  engaged in activities with a tendency or capacity to deceive. New GM also engaged

13  in unlawful trade practices by employing deception, deceptive acts or practices,

14  fraud, misrepresentations, or concealment, suppression or omission of any material

15  fact with intent that others rely upon such concealment, suppression or omission, in

16  connection with the sale of the class vehicles.

17     1022. From the date of its inception on July 11, 2009, New GM knew of many

18  serious defects affecting many models and years of GM-branded vehicles, because o

19  (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous

20  reports, investigations, and notifications from regulatory authorities; and (iii)

21  ongoing performance of New GM's TREAD Act obligations. New GM became

22  aware of other serious defects and systemic safety issues years ago, but concealed all

23  of that information.

24     1023. New GM was also aware that it valued cost-cutting over safety, selected

25  parts from the cheapest supplier regardless of quality, and actively discouraged

26  employees from finding and flagging known safety defects, and that this approach

27  would necessarily cause the existence of more defects in the vehicles it designed and

28  manufactured and the failure to disclose and remedy defects in all GM-branded

KNAPP,
PETERSEN
& CLARKE

-173-

1    vehicles. New GM concealed this information as well.

2        1024. By failing to disclose and by actively concealing the many defects in

3    GM-branded vehicles, by marketing its vehicles as safe, reliable, and of high quality,

4    and by presenting itself as a reputable manufacturer that valued safety and stood

5    behind its vehicles after they were sold, New GM engaged in deceptive and

6    unconscionable business practices in violation of the Texas DTPA.

7        1025. In the course of New GM's business, it willfully failed to disclose and

8    actively concealed the dangerous risk posed by the defects discussed above. New

9    GM compounded the deception by repeatedly asserting that GM-branded vehicles

10   were safe, reliable, and of high quality, and by claiming to be a reputable

11   manufacturer that valued safety and stood behind its vehicles once they are on the

12   road.

13       1026. New GM's unfair or deceptive acts or practices were likely to and did in

14   fact deceive reasonable consumers, including Plaintiffs, about the true safety and

15   reliability of GM-branded vehicles, the quality of the GM brand, the devaluing of

16   safety at New GM, and the true value of the class vehicles.

17       1027. New GM intentionally and knowingly misrepresented material facts

18   regarding the class vehicles with the intent to mislead Plaintiffs and the Texas Class.

19       1028. New GM knew or should have known that its conduct violated the

20   Texas DTPA.

21       1029. As alleged above, New GM made material statements about the safety

22   and reliability of the class vehicles and the GM brand that were either false or

23   misleading.

24       1030. New GM owed Plaintiffs a duty to disclose the true safety and reliability

25   of the class vehicles and the devaluing of safety at New GM, because New GM:

26       (a)    Possessed exclusive knowledge that it valued cost-cutting over

27   safety, selected parts from the cheapest supplier regardless of quality, and actively

28   discouraged employees from finding and flagging known safety defects, and that this

KNAPP,
PETERSEN
& CLARKE

-174-

1  approach would necessarily cause the existence of more defects in the vehicles it

2  designed and manufactured;

3             (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

4             (c)    Made incomplete representations about the safety and reliability

5  of the class vehicles generally, and the valve guide defects in particular, while

6  purposefully withholding material facts from Plaintiffs that contradicted these

7  representations.

8       1031. Because New GM fraudulently concealed the defects in the class

9  vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma

10 attached to those vehicles by New GM's conduct, they are now worth significantly

11 less than they otherwise would be.

12      1032. New GM's systemic devaluation of safety and its concealment of the

13 defects in the class vehicles were material to Plaintiffs and the Texas Class.  A

14 vehicle made by a reputable manufacturer of vehicles is worth more than an

15 otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

16 conceals defects rather than promptly remedying them.

17      1033. As the foregoing allegations demonstrate, New GM, by its

18 misrepresentations and failure to disclose material facts about the safety and quality

19 of its vehicles, which resulted in the deaths and injuries of hundreds, and

20 economically injured millions more. New GM thereby engaged in acts or practices

21 which, to the detriment of Plaintiffs and the Texas Class, took advantage of their lack

22 of knowledge, ability, experience, and capacity to a grossly unfair degree. In other

23 words, New GM engaged in unconscionable actions or an unconscionable course of

24 action as to Plaintiffs and the Texas Class.

25      1034. Plaintiffs and the Texas Class suffered ascertainable loss caused by New

26 GM's misrepresentations and its concealment of and failure to disclose material

27 information.  Plaintiffs who purchased class vehicles after the date of New GM's

28 inception either would have paid less for their vehicles or would not have purchased

KNAPP,
PETERSEN
& CLARKE

-175-

1  or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

2  of New GM's misconduct.  Under TEX. BUS. & COM. CODE § 17.50(b)(1),

3  Plaintiffs are entitled to recover such economic damages.

4      1035. As set forth above and in Texas Count III below, New GM breached of

5  the implied warranty of merchantability with respect to the Texas Class, and engaged

6  in that unconscionable actions and unconscionable course of action "knowingly,"

7  which means it did so with "actual awareness of the fact of the act, practice,

8  condition, defect or failure constituting the breach of warranty" and with "actual

9  awareness, at the time of the act or practice complained of, of the falsity, deception

10  or unfairness of the act or practice giving rise to the consumer's claim...." TEX.

11  BUS. & COM. CODE § 17.45(9). Accordingly, pursuant to TEX. BUS. COM.

12  CODE § 17.50(b)(1), Members of the Texas Class are entitled to additional damages

13  in an amount up to three times the amount of economic damages.

14      1036. Regardless of time of purchase or lease, no Plaintiffs would have

15  maintained and continued to drive their vehicles. By contractually assuming TREAD

16  Act responsibilities with respect to Old GM class vehicles, New GM effectively

17  assumed the role of manufacturer of those vehicles because the TREAD Act on its

18  face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an

19  ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or

20  practices under the Texas DTPA. And, in any event, all class vehicle owners

21  suffered ascertainable loss in the form of the diminished value of their vehicles as a

22  result of New GM's deceptive and unfair acts and practices that occurred in the

23  course of New GM's business.

24      1037. Pursuant to TEX. BUS. & COM. CODE § 17.50(a)(1) and (b), Plaintiffs

25  and the Texas Class seek monetary relief against New GM measured as actual

26  damages in an amount to be determined at trial, treble damages for New GM's

27  knowing violations of the Texas DTPA, and any other just and proper relief available

28  under the Texas DTPA.

KNAPP,
PETERSEN
& CLARKE

-176-

1        1038. Alternatively, or additionally, pursuant to TEX. BUS. & COM. CODE §

2   17.50(b)(3) & (4), Plaintiffs and the Texas Class and all other Texas Class members

3   who purchased vehicles from New GM on or after July 11, 2009 are entitled to

4   disgorgement or to rescission or to any other relief necessary to restore any money or

5   property that was acquired from them based on violations of the Texas DTPA or

6   which the Court deems proper.

7        1039. The Texas Plaintiffs and the Texas Class also are also entitled to recove

8   court costs and reasonable and necessary attorneys' fees under § 17.50(d) of the

9   Texas DTPA.

10                              **COUNT LXVIII**

11                          **FRAUD BY CONCEALMENT**

12        1040. Plaintiffs reallege and incorporate by reference all paragraphs as though

13   fully set forth herein.

14        1041. This claim is brought on behalf of Nationwide Class Members who are

15   Texas residents (the "Texas Class").

16        1042. New GM concealed and suppressed material facts concerning the

17   quality of the class vehicles.

18        1043. New GM concealed and suppressed material facts concerning the

19   culture of New GM – a culture characterized by an emphasis on cost-cutting, the

20   studious avoidance of quality issues, and a shoddy design process.

21        1044. New GM concealed and suppressed material facts concerning the

22   defects in the class vehicles, and that it valued cost-cutting over quality and took

23   steps to ensure that its employees did not reveal known defects to regulators or

24   consumers.

25        1045. New GM did so in order to boost confidence in its vehicles and falsely

26   assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

27   that New GM was a reputable manufacturer that stands behind its vehicles after they

28   are sold and that its vehicles are safe and reliable. The false representations were

KNAPP,
PETERSEN
& CLARKE

-177-

1   material to consumers, both because they concerned the quality and safety of the

2   class vehicles and because the representations played a significant role in the value of

3   the vehicles.

4        1046. New GM had a duty to disclose the defects in the class vehicles because

5   they were known and/or accessible only to New GM, were in fact known to New

6   GM as of the time of its creation in 2009 and at every point thereafter, New GM had

7   superior knowledge and access to the facts, and New GM knew the facts were not

8   known to or reasonably discoverable by Plaintiffs and the Texas Class. New GM also

9   had a duty to disclose because it made many general affirmative representations

10  about the safety, quality, and lack of defects in its vehicles, as set forth above, which

11  were misleading, deceptive and incomplete without the disclosure of the additional

12  facts set forth above regarding defects in the class vehicles. Having volunteered to

13  provide information to Plaintiffs, GM had the duty to disclose not just the partial

14  truth, but the entire truth. These omitted and concealed facts were material because

15  they directly impact the value of the class vehicles purchased or leased by Plaintiffs

16  and the Texas Class.

17       1047. New GM actively concealed and/or suppressed these material facts, in

18  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

19  image and cost New GM money, and it did so at the expense of Plaintiffs and the

20  Texas Class.

21       1048. On information and belief, New GM has still not made full and adequate

22  disclosure and continues to defraud Plaintiffs and the Texas Class and conceal

23  material information regarding defects that exist in the class vehicles.

24       1049. Plaintiffs and the Texas Class were unaware of these omitted material

25  facts and would not have acted as they did if they had known of the concealed and/or

26  suppressed facts, in that they would not have purchased cars manufactured by New

27  GM; and/or they would not have purchased cars manufactured by Old GM in the

28  time after New GM had come into existence and had fraudulently opted to conceal,

KNAPP,
PETERSEN
& CLARKE

1   and to misrepresent, the true facts about the vehicles; and/or would not have

2   continued to drive their vehicles or would have taken other affirmative steps.

3   Plaintiffs' and the Texas Class's actions were justified. New GM was in exclusive

4   control of the material facts and such facts were not known to the public, Plaintiffs,

5   or the Texas Class.

6        1050. Because of the concealment and/or suppression of the facts, Plaintiffs

7   and the Texas Class sustained damage because they own vehicles that diminished in

8   value as a result of New GM's concealment of, and failure to timely disclose, the

9   defects in the class vehicles and the quality issues engendered by New GM's

10  corporate policies. Had they been aware of the defects that existed in the class

11  vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

12  New GM came into existence either would have paid less for their vehicles or would

13  not have purchased or leased them at all; and no Plaintiffs regardless of time of

14  purchase or lease would have maintained their vehicles.

15       1051. The value of all Texas Class Members' vehicles has diminished as a

16  result of New GM's fraudulent concealment of the defects which have tarnished the

17  Corvette brand and made any reasonable consumer reluctant to purchase any of the

18  class vehicles, let alone pay what otherwise would have been fair market value for

19  the vehicles.

20       1052. Accordingly, New GM is liable to the Texas Class for damages in an

21  amount to be proven at trial.

22       1053. New GM's acts were done maliciously, oppressively, deliberately, with

23  intent to defraud, and in reckless disregard of Plaintiffs' and the Texas Class's rights

24  and well-being to enrich New GM. New GM's conduct warrants an assessment of

25  punitive damages in an amount sufficient to deter such conduct in the future, which

26  amount is to be determined according to proof.

27  ////

28  ////

KNAPP,
PETERSEN
& CLARKE

-179-

## COUNT LXIX

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

## (TEX. BUS. & COM. CODE § 2.314)

1054. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1055. This claim is brought only on behalf of the Texas Class.

1056. New GM was a merchant with respect to motor vehicles under TEX. BUS. & COM. CODE § 2.104.

1057. Under TEX. BUS. & COM. CODE § 2.314, a warranty that the class vehicles were in merchantable condition was implied by law in the transaction in which Plaintiffs and the Texas Class purchased or leased their class vehicles from New GM on or after July 11, 2009.

1058. New GM impliedly warranted that the vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

1059. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the class vehicles are inherently defective in that there are defects in the engine that result in premature unusual wear and catastrophic failure.

1060. As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Texas Class have been damaged in an amount to be proven at trial.

## COUNT LXX

## FRAUD BY CONCEALMENT OF THE RIGHT TO FILE A CLAIM

## AGAINST OLD GM IN BANKRUPTCY

1061. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

KNAPP,
PETERSEN
& CLARKE

-180-

1    1062. This claim is brought only on behalf of the Texas Class and, who owned

2    their class vehicle for at least some period of time between July 11, 2009 and

3    November 30, 2009.

4    1063. New GM was aware of the defects in class vehicles sold by Old GM

5    from the moment it came into existence upon entry of the Sale Order And Sale

6    Agreement by which New GM acquired substantially all the assets of Old GM.

7    1064. The Texas Class did not receive notice of the defect in the class vehicle

8    prior to the entry of the Sale Order. No recall occurred.

9    1065. In September of 2009, the bankruptcy court entered the Bar Date Order

10   establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims

11   to be filed against Old GM.

12   1066. Because New GM concealed its knowledge of the defect in class

13   vehicles, the Texas Class did not receive notice of the defect prior to the passage of

14   the Bar Date. No recall occurred.

15   1067. In 2011, the bankruptcy court approved a Chapter 11 Plan under which

16   the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds

17   of the bankruptcy sale to, among others, the holders of claims that were ultimately

18   allowed.

19   1068. The out-of-pocket consideration provided by New GM for its

20   acquisition of Old GM consisted of 10% of the post-closing outstanding shares of

21   New GM common stock and two series of warrants, each to purchase 7.5% of the

22   post-closing shares of New GM (collectively, the "New GM Securities").

23   1069. Through an "accordion feature" in the Sale Agreement, New GM agreed

24   that it would provide additional consideration if the aggregate amount of allowed

25   general unsecured claims exceeded $35 billion. In that event, New GM would be

26   required to issue additional shares of New GM Common Stock for the benefit of the

27   GUC Trust's beneficiaries.

KNAPP,
PETERSEN
& CLARKE   28   ////

-181-

1070. As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

1071. As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities. After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million – all or nearly all o which is already slated to pay the GUC Trust's expenses and existing beneficiaries o the Trust.

1072. But for New GM's fraudulent concealment of the defects, the Texas Class would have filed claims against Old GM before the Bar Date.

1073. Had the Texas Class filed timely claims before the Bar Date, the claims would have been allowed.

1074. New GM's concealment and suppression of the material fact of the defect in class vehicles over the first several months of its existence served to preven the filing of claims by the Texas Class.

1075. New GM had a duty to disclose the defect in class vehicles because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Texas Class. These omitted and concealed facts were material because they directly impacted the safety and the valu of the class vehicles purchased or leased by Plaintiffs and the Texas Class, who had ; limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM.

1076. Plaintiffs and the Texas Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Texas Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Texas Class.

KNAPP,
PETERSEN
& CLARKE

-182-

1    1077. Because of the concealment and/or suppression of the facts, Plaintiffs

2    and the Texas Class sustained damage because they lost their chance to file a claim

3    against Old GM and seek payment from the GUC Trust.  Had they been aware of the

4    defects that existed in their vehicles, Plaintiffs would have timely filed claims and

5    would have recovered from the GUC Trust.

6    1078. Accordingly, New GM is liable to the Texas Class members for their

7    damages in an amount to be proven at trial.

8    1079. New GM's acts were done maliciously, oppressively, deliberately, with

9    intent to defraud, and in reckless disregard of Plaintiffs' and the Texas Class's rights

10   and well-being to enrich New GM.  New GM's conduct warrants an assessment of

11   punitive damages in an amount sufficient to deter such conduct in the future, which

12   amount is to be determined according to proof.

13                                    **COUNT LXXI**

14                          **THIRD-PARTY BENEFICIARY CLAIM**

15   1080. Plaintiffs reallege and incorporate by reference all paragraphs as though

16   fully set forth herein.

17   1081. This claim is brought only on behalf of Texas Class.

18   1082. In the Sales Agreement through which New GM acquired substantially

19   all of the assets of New GM, New GM explicitly agreed as follows:

20          From and after the Closing, [New GM] shall comply with the

21          certification, reporting and recall requirements of the National Traffic

22          and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

23          Recall Enhancement, Accountability and Documentation Act, the Clean

24          Air Act, the California Health and Safety Code and similar Laws, in

25          each case, to the extent applicable in respect of vehicles and vehicle

26          parts manufactured or distributed by [Old GM].

27   1083. With the exception of the portion of the agreement that purports to

28   immunize New GM from its own independent misconduct with respect to cars and

KNAPP,
PETERSEN
& CLARKE

-183-

1   parts made by Old GM, the Sales Agreement is a valid and binding contract.

2        1084. But for New GM's covenant to comply with the TREAD Act with

3   respect to cars and parts made by Old GM, the TREAD Act would have no

4   application to New GM with respect to those cars and parts. That is because the

5   TREAD Act on its face imposes reporting and recall obligations only on the

6   "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

7        1085. Because New GM agreed to comply with the TREAD Act with respect

8   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

9   make quarterly submissions to NHTSA of "early warning reporting" data, including

10  incidents involving property damage, warranty claims, consumer complaints, and

11  field reports concerning failure, malfunction, lack of durability or other performance

12  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

13  underlying records on which the early warning reports are based and all records

14  containing information on malfunctions that may be related to motor vehicle safety.

15  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

16  or should know that a safety defect exists – including notifying NHTSA and

17  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

18  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

19       1086. Plaintiffs, as owners and lessors of vehicles and parts manufactured by

20  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

21  with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

22  benefit of having a manufacturer responsible for monitoring the safety of their Old

23  GM vehicles and making certain that any known defects would be promptly

24  remedied.

25       1087. Although the Sale Order which consummated New GM's purchase of

26  Old GM purported to give New GM immunity from claims concerning vehicles or

27  parts made by Old GM, the bankruptcy court recently ruled that provision to be

28  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

KNAPP,
PETERSEN
& CLARKE

-184-

1  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

2  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

3  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

4  breaches of the promise it made in the Sale Agreement.

5      1088. New GM breached its covenant to comply with the TREAD Act with

6  respect to the class vehicles, as it failed to take action to remediate the defects at any

7  time, up to the present.

8      1089. Plaintiffs and the Texas Class were damaged as a result of New GM's

9  breach.  Because of New GM's failure to timely remedy the defect in the class

10  vehicles, the value of Old GM class vehicles has diminished in an amount to be

11  determined at trial.

12                          **COUNT LXXII**

13                     **UNJUST ENRICHMENT**

14      1090. Plaintiffs reallege and incorporate by reference all paragraphs as though

15  fully set forth herein.

16      1091. This claim is brought on behalf of members of the Texas Class who

17  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

18  after New GM came into existence, and who purchased or leased class vehicles in the

19  time period before New GM came into existence, which cars were still on the road

20  after New GM came into existence.

21      1092. New GM has received and retained a benefit from the Plaintiffs and

22  inequity has resulted.

23      1093. New GM has benefitted from selling and leasing defective cars,

24  including Certified Pre-Owned cars, whose value was artificially inflated by New

25  GM's concealment of defect issues that plagued class vehicles, for more than they

26  were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

27  pay other costs.

KNAPP,
PETERSEN
& CLARKE

28  ////

1094. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

1095. Thus, Texas Class members conferred a benefit on New GM.

1096. It is inequitable for New GM to retain these benefits.

1097. Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

1098. New GM knowingly accepted the benefits of its unjust conduct.

1099. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf all others similarly situated, respectfully request that this Court enter a judgment against New GM and in favor of Plaintiffs and the Class, and grant the following relief:

1.     Determine that this action may be maintained as a class action and certify it as such under Rule 23(b)(2) and/or 23(b)(3), or alternatively certify all issues and claims that are appropriately certified under Rule 23(c)(4); and designate and appoint Plaintiffs as Class Representatives and Plaintiffs' chosen counsel as Class Counsel;

2.     Declare, adjudge, and decree the conduct of New GM as alleged herein to be unlawful, unfair, and/or deceptive and otherwise in violation of law, enjoin any such future conduct;

3.     Award Plaintiffs and Class Members actual, compensatory damages or, in the alternative, statutory damages, as proven at trial;

4.     Award Plaintiffs and the Class Members exemplary damages in such amount as proven;

KNAPP,
PETERSEN
& CLARKE

-186-

5.    Award damages and other remedies, including, but not limited to, statutory penalties, as allowed by any applicable law, such as the consumer laws of the various states;

6.    Award Plaintiffs and the Class Members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest;

7.    Declare, adjudge and decree that Defendant violated 18 U.S.C. §§ 1962(c) and (d) by conducting the affairs of the RICO Enterprise through a pattern o racketeering activity and conspiring to do so;

8.    Award Plaintiffs and the nation-wide Class Members treble damages pursuant to 18 U.S.C. § 1964(c);

9.    Award Plaintiffs and Class Members restitution and/or disgorgement of New GM's ill-gotten gains relating to the conduct described in this Complaint; and

10.    Award Plaintiffs and the Class Members such other further and differen relief as the case may require or as determined to be just, equitable, and proper by this Court.

Dated: October 14, 2015                    KNAPP, PETERSEN & CLARKE

By: /s/ André E. Jardini
    André E. Jardini
    K.L. Myles
    Attorneys for Plaintiffs
    WILLIAM D. PILGRIM, WALTER
    GOETZMAN, JEROME E.
    PEDERSON, MICHAEL
    FERNANDEZ, ROY HALEEN,
    HOWARD KOPEL, ROBERT C.
    MURPHY, MIKE PETERS,
    CHRISTOPHER CONSTANTINE,
    JOHN PARSONS, LYLE
    DUNAHOO, AARON CLARK,
    EDWIN WILLIAM KRAUSE,
    DAVID SHELDON, JARED
    KILEY, JEFF KOLODZI, MORRIS
    SMITH, ANDRES FREY,
    individuals, on behalf of themselves
    and all others similarly situated

KNAPP,
PETERSEN
& CLARKE

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in the above-captioned matter.

Dated: October 14, 2015                KNAPP, PETERSEN & CLARKE


                                       By: /s/ André E. Jardini
                                           André E. Jardini
                                           K.L. Myles
                                           Attorneys for Plaintiffs
                                           WILLIAM D. PILGRIM, WALTER
                                           GOETZMAN, JEROME E.
                                           PEDERSON, MICHAEL
                                           FERNANDEZ, ROY HALEEN,
                                           HOWARD KOPEL, ROBERT C.
                                           MURPHY, MIKE PETERS,
                                           CHRISTOPHER CONSTANTINE,
                                           JOHN PARSONS, LYLE
                                           DUNAHOO, AARON CLARK,
                                           EDWIN WILLIAM KRAUSE,
                                           DAVID SHELDON, JARED
                                           KILEY, JEFF KOLODZI, MORRIS
                                           SMITH, ANDRES FREY,
                                           individuals, on behalf of themselves
                                           and all others similarly situated

KNAPP,
PETERSEN
& CLARKE

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS    ( Check box if you are representing yourself ☐ ) |
|---|---|
| WILLIAM D. PILGRIM, (Additional Plaintiffs Listed on Attached Sheet) | GENERAL MOTORS COMPANY, LLC |

| (b) County of Residence of First Listed Plaintiff  Yavapai County, Arizona | County of Residence of First Listed Defendant |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |

| (c) Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. | Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. |
|---|---|
| Andre E. Jardini, Esq. KNAPP, PETERSEN & CLARKE 550 North Brand Boulevard, Suite 1500 Glendale, CA 91203 Telephone: (818) 547-5000 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | | |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

FORMCHECKBOX 5

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No    (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No    ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint for defective vehicles.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☒ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | | |
|---|---|---|---|
| CV-71 (10/14) | | CIVIL COVER SHEET | Page 1 of 3 |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No | [ ] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1.  Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* → | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there.<br>[X] NO. Continue to Question B.2. |
|---|---|---|
| [ ] Yes  [X] No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2.  Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* → | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there.<br>[X] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1.  Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* → | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there.<br>[X] NO. Continue to Question C.2. |
|---|---|---|
| [ ] Yes  [X] No<br><br>If "no, " skip to Question D. If "yes," answer Question C.1, at right. | C.2.  Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* → | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there.<br>[X] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino county | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo county |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |

| D.1.  Is there at least one answer in Column A? | D.2.  Is there at least one answer in Column B? |
|---|---|
| [ ] Yes  [X] No | [ ] Yes  [X] No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. → | If "yes," your case will initially be assigned to the EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ↓ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: → | Central District, Western Division |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | | [ ] Yes  [X] No |

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed in this court?    ☒ NO    ☐ YES

If yes, list case number(s): _____

Civil cases are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

A civil forfeiture case and a criminal case are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** /s/ Andre E. Jardini    DATE: October 14, 2015

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com

Attachment to:

United States District Court, Central District Of California
CIVIL COVER SHEET

I.        (a)  Plaintiffs (continued from first page)

WALTER GOETZMAN, JEROME E. PEDERSON, MICHAEL FERNANDEZ,
ROY HALEEN, HOWARD KOPEL, ROBERT C. MURPHY, MIKE PETERS,
CHRISTOPHER CONSTANTINE, JOHN PARSONS, LYLE DUNAHOO,
AARON CLARK, EDWIN WILLIAM KRAUSE, DAVID SHELDON, JARED
KILEY, JEFF KOLODZI, MORRIS SMITH, ANDRES FREY, individuals, on
behalf of themselves and all others similarly situated

NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY(S)
OR OF PARTY APPEARING IN PRO PER
Andre E. Jardini
KNAPP, PETERSEN & CLARKE.
550 North Brand Boulevard, Suite 1500
Glendale, CA 91203
Email: aej@kpclegal.com
(818) 547-5000

ATTORNEY(S) FOR: Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| WILLIAM D. PILGRIM, ETC., ET AL. | CASE NUMBER: |
|---|---|
| Plaintiff(s), | 15-08047 |
| v. | |
| GENERAL MOTORS COMPANY LLC | AMENDED CERTIFICATION AND NOTICE OF INTERESTED PARTIES (Local Rule 7.1-1) |
| Defendant(s) | |

TO:    THE COURT AND ALL PARTIES OF RECORD:

The undersigned, counsel of record for  Plaintiffs
or party appearing in pro per, certifies that the following listed party (or parties) may have a pecuniary interest in the outcome of this case. These representations are made to enable the Court to evaluate possible disqualification or recusal.

(List the names of all such parties and identify their connection and interest. Use additional sheet if necessary.)

| PARTY | CONNECTION / INTEREST |
|---|---|
| WILLIAM D. PILGRIM | Plaintiff |
| WALTER GOETZMAN, | Plaintiff |
| JEROME E. PEDERSON | Plaintiff |
| MICHAEL FERNANDEZ | Plaintiff |
| ROY HALEEN | Plaintiff |
| HOWARD KOPEL | Plaintiff |
| ROBERT C. MURPHY | Plaintiff |
| MIKE PETERS | Plaintiff |
| CHRISTOPHER CONSTANTINE | Plaintiff |
| SEE PAGE 2 FOR ADDITIONAL NAMES | |

October 14, 2015
Date

/s/ Andre E. Jardini
Signature
ANDRE E. JARDINI

Attorney of record for (or name of party appearing in pro per):

CV-30 (05/13)                NOTICE OF INTERESTED PARTIES



Page 2

Attachment to:

United States District Court, Central District Of California

**CERTIFICATION AND NOTICE OF INTERESTED PARTIES**

| PARTY | CONNECTION/INTEREST |
|---|---|
| LYLE DUNAHOO | Plaintiff |
| AARON CLARK | Plaintiff |
| EDWIN WILLIAM KRAUSE | Plaintiff |
| DAVID SHELDON | Plaintiff |
| JARED KILEY | Plaintiff |
| JEFF KOLODZI | Plaintiff |
| MORRIS SMITH | Plaintiff |
| ANDRES FREY | Plaintiff |
| GENERAL MOTORS COMPANY LLC. | Defendant |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to:

District Judge **John F. Walter**
Magistrate Judge **Charles F. Eick**

The case number on all documents filed with the Court should read as follows:

### 2:15–cv–08047 JFW(Ex)

Most district judges in the Central District of California refer all discovery-related motions to the assigned magistrate judge pursuant to General Order No. 05-07. If this case has been assigned to either Judge Manuel L. Real or Judge Robert J. Timlin, discovery-related motions should generally be noticed for hearing before the assigned district judge. Otherwise, discovery-related motions should generally be noticed for hearing before the assigned magistrate judge. Please refer to the assigned judges' Procedures and Schedules, available on the Court's website at www.cacd.uscourts. gov/judges-requirements, for additional information.

Clerk, U.S. District Court

__October 14, 2015__
Date

By _/s/ Edwin Sambrano_
Deputy Clerk

## ATTENTION

*The party that filed the case-initiating document in this case (for example, the complaint or the notice of removal) must serve a copy of this Notice on all parties served with the case-initiating document. In addition, if the case-initiating document in this case was electronically filed, the party that filed it must, upon receipt of this Notice, promptly deliver mandatory chambers copies of all previously filed documents to the newly assigned district judge. See L.R. 5-4.5. A copy of this Notice should be attached to the first page of the mandatory chambers copy of the case-initiating document.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WILLIAM D. PILGRIM, et al.<br><br>Plaintiff(s)<br><br>v.<br><br>GENERAL MOTORS COMPANY LLC, et al.<br><br>Defendant(s). | CASE NUMBER:<br><br>2:15-cv-08047-JFW-E<br><br><br>NOTICE TO PARTIES OF<br>COURT-DIRECTED ADR PROGRAM |

## NOTICE TO PARTIES:

It is the policy of this Court to encourage settlement of civil litigation when such is in the best interest of the parties. The Court favors any reasonable means, including alternative dispute resolution (ADR), to accomplish this goal. *See* Civil L.R. 16-15. Unless exempted by the trial judge, parties in all civil cases must participate in an ADR process before trial. *See* Civil L.R. 16-15.1.

The district judge to whom the above-referenced case has been assigned is participating in an ADR Program that presumptively directs this case to either the Court Mediation Panel or to private mediation. *See* General Order No. 11-10, §5. For more information about the Mediation Panel, visit the Court website, www.cacd.uscourts.gov, under "ADR."

Pursuant to Civil L.R. 26-1(c), counsel are directed to furnish and discuss with their clients the attached ADR Notice To Parties *before* the conference of the parties mandated by Fed.R.Civ.P. 26(f). Based upon the consultation with their clients and discussion with opposing counsel, counsel must indicate the following in their Joint 26(f) Report: 1) whether the case is best suited for mediation with a neutral from the Court Mediation Panel or private mediation; and 2) when the mediation should occur. *See* Civil L.R. 26-1(c).

At the initial scheduling conference, counsel should be fully prepared to discuss their preference for referral to the Court Mediation Panel or to private mediation and when the mediation should occur. The Court will enter an Order/Referral to ADR at or around the time of the scheduling conference.

Clerk, U.S. District Court

By  */s/ Edwin Sambrano*
Deputy Clerk

_October 14, 2015_
Date

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE TO PARTIES: COURT POLICY ON SETTLEMENT
### AND USE OF ALTERNATIVE DISPUTE RESOLUTION (ADR)
### Counsel are required to furnish and discuss this Notice with their clients.

Despite the efforts of the courts to achieve a fair, timely and just outcome in all cases, litigation has become an often lengthy and expensive process. For this reason, it is this Court's policy to encourage parties to attempt to settle their disputes, whenever possible, through alternative dispute resolution (ADR).

ADR can reduce both the time it takes to resolve a case and the costs of litigation, which can be substantial. ADR options include mediation, arbitration (binding or non–binding),neutral evaluation (NE), conciliation, mini–trial and fact–finding. ADR can be either Court–directed or privately conducted.

The Court's ADR Program offers mediation through a panel of qualified and impartial attorneys who will encourage the fair, speedy and economic resolution of civil actions. Panel Mediators each have at least ten years of legal experience and are appointed by the Court. They volunteer their preparation time and the first three hours of a mediation session. This is a cost–effective way for parties to explore potential avenues of resolution.

This Court requires that counsel discuss with their clients the ADR options available and instructs them to come prepared to discuss the parties' choice of ADR option (settlement conference before a magistrate judge; Court Mediation Panel; private mediation) at the initial scheduling conference. Counsel are also required to indicate the client's choice of ADR option in advance of that conference. *See* Civil L.R. 26–1(c) and Fed.R.Civ.P. 26(f).

Clients and their counsel should carefully consider the anticipated expense of litigation, the uncertainties as to outcome, the time it will take to get to trial, the time an appeal will take if a decision is appealed, the burdens on a client's time, and the costs and expenses of litigation in relation to the amounts or stakes involved.

With more than 15,000 civil cases filed in the District in 2012, less than 1 percent actually went to trial. Most cases are settled between the parties; voluntarily dismissed; resolved through Courtdirected or other forms of ADR; or dismissed by the Court as lacking in merit or for other reasons provided by law.

For more information about the Court's ADR Program, the Mediation Panel, and the profiles of mediators, visit the Court website, www.cacd.uscourts.gov, under "ADR."

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   William D. Pilgrim, et al., ) Case No. **CV 15-8047-JFW (Ex)**
                                  )
12                   Plaintiff,   ) **STANDING ORDER**
                                  )
13        v.                      )
                                  )
14   General Motors Company,      )
                                  )
15                   Defendants.  )
                                  )
16   ─────────────────────────────

17       **READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE AND**

18   **DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

19       This action has been assigned to the calendar of Judge

20   John F. Walter.  Both the Court and counsel bear

21   responsibility for the progress of litigation in Federal

22   Court.  To secure the just, speedy, and inexpensive

23   determination of every action, all counsel are ordered to

24   familiarize themselves with the Federal Rules of Civil

25   Procedure, the Local Rules of the Central District of

26   California, the General Orders of the Central District and

27   the Judge's Procedures and Schedules found on the website

28   / / /

for the United States District Court for the Central District
of California (www.cacd.uscourts.gov).

1.   **Service of the Complaint**:

The plaintiff shall promptly serve the Complaint in
accordance with Fed.R.Civ.P. 4 and shall file the proof(s) of
service pursuant to the Local Rules.  **The plaintiff is hereby
notified that failure to serve the Complaint within 120 days
as required by Fed.R.Civ.P. 4(m) will result in the dismissal
of the Complaint against the unserved defendant(s).**

2.   **Presence of Lead Counsel**:

Lead trial counsel shall attend all proceedings before
this Court, including all scheduling, status, and settlement
conferences.  Only ONE attorney for a party may be designated
as lead trial counsel unless otherwise permitted by the
Court.

3.   **Electronic Filing and Courtesy Copies**:

(a) Within ten days of a party's initial appearance, lead
trial counsel shall file a declaration entitled, "Declaration
of Lead Trial Counsel re: Compliance with Local Rules
Governing Electronic Filing" which shall notify the Court
that counsel has registered as an "ECF User."  The
declaration shall include counsel's "E-Mail Address of
Record" and shall state whether counsel has consented or
elected not to consent to service and receipt of filed
documents by electronic means.

If counsel has not consented to the service and receipt
of filed documents by electronic means, counsel shall
immediately file and serve via U.S. Postal Service on all

2

1  parties who have appeared in the action a Notice advising all

2  parties that counsel has elected not to consent to electronic

3  service of documents in this action.

4      (b) All documents that are required to be filed in an

5  electronic format pursuant to the Local Rules shall be filed

6  electronically no later than 4:00 p.m. on the date due unless

7  otherwise ordered by the Court.  Any documents filed

8  electronically after 4:00 p.m. on the date due will be

9  considered late and may be stricken by the Court.  Any

10 documents which counsel attempt to file electronically which

11 are improperly filed will not be accepted by the Court.

12     (c) Counsel are ORDERED to deliver **2 copies** of all

13 documents filed electronically in this action to Chambers.

14 For each document filed electronically, one copy shall be

15 marked "CHAMBERS COPY" and the other copy shall be marked

16 "COURTESY COPY."  The "CHAMBERS COPY" and "COURTESY COPY" are

17 collectively referred to herein as "Courtesy Copies." The

18 Courtesy Copies of each electronically filed document must

19 include on each page the running header created by the ECF

20 system.  In addition, on the first page of each Courtesy

21 Copy, in the space between lines 1 - 7 to the right of the

22 center, counsel shall include the date the document was

23 e-filed and the document number.  The Courtesy Copies shall

24 be delivered to Chambers no later than 10:00 a.m. on the next

25 business day after the document was electronically filed.

26 All documents must be stapled or bound by a two prong

27 fastener, the electronic proof of service must be attached as

28 the last page of each document, and the exhibits attached to

3

1  any document must be tabbed.  Counsel shall not staple the

2  "COURTESY COPY" and "CHAMBERS COPY" together. The "COURTESY

3  COPY" of all documents must be three-hole punched at the left

4  margin with oversized 13/32" hole size, not the standard

5  9/32" hole size.

6      (d) For any document that is not required to be filed

7  electronically, counsel are ORDERED to deliver 1 conformed

8  copy of the document, which shall be marked "COURTESY COPY,"

9  to Chambers **at the time of filing.**

10     (e)  If the Court has granted an application to file

11  documents under seal, the Court's Courtesy Copies shall

12  include a complete version of the documents including any

13  sealed documents with an appropriate notation identifying

14  that portion of the document that has been filed under seal.

15  For example, if the Court orders Ex. A to a Declaration filed

16  under seal, the Court's Courtesy Copies of the Declaration

17  should include Ex. A as an attachment with a notation that it

18  has been filed under seal pursuant to the Court's order.

19     (f)  In the unlikely event counsel finds it necessary to

20  file a Notice of Errata: (1) the Notice of Errata shall

21  specifically identify each error by page and line number and

22  set forth the correction; and (2) a corrected version of the

23  document in its entirety shall be attached to the Notice of

24  Errata.

25     (g) When a proposed order accompanies an electronic

26  filing, a WordPerfect or Word copy of the proposed order,

27  along with a copy of the PDF electronically filed main

28  document shall be e-mailed to JFW_Chambers@cacd.uscourts.gov.

1 The subject line of the e-mail shall be in the following

2 format: court's divisional office, year, case type, case

3 number, document control number assigned to the main document

4 at the time of filing, judge's initials and filer (party)

5 name.   Failure to comply with this requirement may result in

6 the denial or striking of the request or the Court may

7 withhold ruling on the request until the Court receives the

8 required documents.

9 **4.   Discovery:**

10     (a) All discovery matters have been referred to a United

11 States Magistrate Judge.   (The Magistrate Judge's initials

12 follow the Judge's initials next to the case number.)   All

13 discovery documents must include the words "DISCOVERY MATTER"

14 in the caption to ensure proper routing.   Counsel are

15 directed to contact the Magistrate Judge's Courtroom Deputy

16 to schedule matters for hearing.

17     All decisions of the Magistrate Judge shall be final,

18 subject to modification by the District Court only where it

19 is shown that the Magistrate Judge's Order is clearly

20 erroneous or contrary to law.   Any party may file and serve a

21 motion for review and reconsideration before this Court.   The

22 moving party must file and serve the motion within fourteen

23 calendar days of service of a written ruling or within

24 fourteen calendar days of an oral ruling that the Magistrate

25 Judge states will not be followed by a written ruling.   The

26 motion must specify which portions of the ruling are clearly

27 erroneous or contrary to law and support the contention with

28 a memorandum of points and authorities.   Counsel shall

1 | deliver a courtesy copy of the moving papers and responses to
2 | the Magistrate Judge.

3 | (b) Counsel shall begin to actively conduct discovery
4 | before the Fed.R.Civ.P. 26(f) conference because at the
5 | Scheduling Conference the Court will impose tight deadlines
6 | to complete discovery.

7 | **5.** **Motions**:

8 | (a) **Time for Filing and Hearing Motions:**

9 | Motions shall be filed in accordance with the Local
10 | Rules.  This Court hears motions on **Mondays commencing at**
11 | **1:30 p.m.**  Once a party has noticed a motion for hearing on a
12 | particular date, the hearing shall not be continued without
13 | leave of Court.  No supplemental briefs shall be filed
14 | without leave of Court.  Courtesy Copies shall be provided to
15 | the Court in accordance with paragraph 3 of this Order.  No
16 | motion shall be noticed for hearing for more than 35 calendar
17 | days after service of the motion unless otherwise ordered by
18 | the Court.  Documents not filed in compliance with the
19 | Court's requirements will be stricken and will not be
20 | considered by the Court.

21 | (b) **Local Rule 7-3:**

22 | Among other things, Local Rule 7-3 requires counsel to
23 | engage in a pre-filing conference "to discuss thoroughly,
24 | *preferably in person*, the substance of the contemplated
25 | motion and any potential resolution." Counsel should discuss
26 | the issues with sufficient detail so that if a motion is
27 | still necessary, the briefing may be directed to those
28 | substantive issues requiring resolution by the Court.

1    Many motions to dismiss or to strike could be avoided if

2   the parties confer in good faith especially for perceived

3   defects in a Complaint, Answer, or Counterclaim which could

4   be corrected by amendment.  *See, e.g., Eminence Capital, LLC*

5   *v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)(where a

6   motion to dismiss is granted, a district court should provide

7   leave to amend unless it is clear that the Complaint could

8   not be saved by any amendment).  The Ninth Circuit requires

9   that this policy favoring amendment be applied with "extreme

10  liberality."  *Morongo Band of Mission Indians v. Rose*, 893

11  F.2d 1074, 1079 (9th Cir. 1990).

12   These principles require counsel for the plaintiff to

13  carefully evaluate the defendant's contentions as to the

14  deficiencies in the Complaint, and in most instances, the

15  moving party should agree to any amendment that would cure a

16  curable defect.  Counsel should, at the very least, resolve

17  minor procedural or other nonsubstantive matters during the

18  conference.

19   All 7-3 conferences shall be conducted by lead counsel

20  and shall take place via a communication method that, at a

21  minimum, allows all parties to be in realtime communication

22  (letters and e-mail, for example, do not constitute a proper

23  7-3 conference).  Notwithstanding the exception for

24  preliminary injunction motions in Local Rule 7-3, counsel

25  contemplating filing a preliminary injunction motion shall

26  comply with Local Rule 7-3 and meet and confer at least five

27  days prior to the filing of such a motion.

28  / / /

1   Within three days of the conference, counsel shall file a
2   joint statement indicating the date, duration, and
3   communication method of the conference and the participants
4   in the conference.   In addition, the joint statement shall
5   detail the issues discussed and resolved during the
6   conference and the issues remaining.   Any motion filed prior
7   to the filing of the joint statement will be stricken.

8       **(c) Length and Format of Motion Papers:**

9       **Memoranda of Points and Authorities in support of or in**
10  **opposition to motions shall not exceed 25 pages.   Replies**
11  **shall not exceed 12 pages.**   Only in rare instances and for
12  good cause shown will the Court grant an application to
13  extend these page limitations.   Courtesy Copies of all
14  evidence in support of or in opposition to a motion,
15  including declarations and exhibits to declarations, shall be
16  separated by a tab divider on the bottom of the page.   If
17  evidence in support of or in opposition to a motion exceeds
18  twenty pages, the Courtesy Copies of the evidence shall be
19  placed in separately bound volumes and include a Table of
20  Contents.   If such evidence exceeds fifty pages, the Court's
21  Courtesy Copies of such evidence shall be placed in a slant
22  D-ring binder with each item of evidence separated by a tab
23  divider on the right side.   All documents contained in the
24  binder must be three hole punched with the oversized 13/32"
25  hole size, not the standard 9/32" hole size.   The binder
26  shall include a Table of Contents and the spine of the binder
27  shall be labeled with its contents.
28  / / /

1       Typeface shall comply with the Local Rules. NOTE: If

2   Times Roman is used, the font size must be no less than 14;

3   if Courier is used, the font size must be no less than 12.

4   Footnotes shall be in the same typeface and font size as the

5   text and shall be used sparingly.

6       Documents which do not conform to the Local Rules and

7   this Order will not be considered.

8       **(d) Citations to Case Law:**

9       Citations to case law **must** identify not only the case

10  being cited, but the specific page referenced. In the event

11  it is necessary to cite to Westlaw or Lexis, the Court

12  prefers that counsel cite to Westlaw.  Hyperlinks to case

13  citations must be included.

14      **(e) Citations to Other Sources:**

15      Statutory references should identify, with specificity,

16  which sections and subsections are being referenced (*e.g.*,

17  Jurisdiction over this claim for relief may appropriately be

18  found in 47 U.S.C. § 33, which grants the district courts

19  jurisdiction over all offenses of the Submarine Cable Act,

20  whether the infraction occurred within the territorial waters

21  of the United States or on board a vessel of the United

22  States outside said waters).  Statutory references which do

23  not specifically indicate the appropriate section and

24  subsection (*e.g.*, Plaintiffs allege conduct in violation of

25  the Federal Electronic Communication Privacy Act, 18 U.S.C. §

26  2511, *et seq.*) are to be **avoided**.  Citations to treatises,

27  manuals, and other materials should similarly include the

28  volume and the section referenced.

(f)  **Proposed Orders:**

Each party filing or opposing a motion or seeking the determination of any matter shall prepare and submit to the Court a separate Proposed Order in accordance with the Local Rules.  The Proposed Order shall set forth the relief or action sought and a brief statement of the rationale for the decision with appropriate citations.

(g) **Opposing Papers**

Within the deadline prescribed by the Local Rules, a party opposing a motion shall file: (1) an Opposition; or (2) a Notice of Non-Opposition.  If a party files a Notice of Non-Opposition to a motion under Federal Rule of Civil Procedure 12(b), (e), or (f), that party shall state whether it intends to file an amended complaint in accordance with Federal Rule of Civil Procedure 15(a)(1).

**Failure to timely respond to any motion shall be deemed by the Court as consent to the granting of the motion.** *See* **Local Rules.**

(h)  **Amended Pleadings**

In the event the Court grants a motion to dismiss without prejudice to filing an amended complaint, the plaintiff shall file an amended complaint within the time period specified by the Court.  If no time period is specified by the Court, the plaintiff shall file an amended complaint within fourteen calendar days of the date of the order granting the plaintiff leave to file an amended complaint.  Failure to file an amended complaint within the time allotted will result in the dismissal of the action with prejudice.

1    Whenever a plaintiff files an amended pleading, a

2    redlined version of the amended pleading shall be delivered

3    to Chambers indicating all additions and deletions to the

4    prior version of that pleading.

5    In addition to the requirements of the Local Rules, all

6    motions to amend the pleadings shall: (1) state the effect of

7    the amendment; (2) be serially numbered to differentiate the

8    amendment from previous amendments; and (3) state the page,

9    line number(s), and wording of any proposed change or

10    addition of material.  The parties shall deliver to Chambers

11    a redlined version of the proposed amended pleading

12    indicating all additions and/or deletions of material.  .

13    **6.    Ex Parte Applications:**

14    Ex parte applications are solely for extraordinary

15    relief.  *See Mission Power Eng'g Co. v. Continental Cas. Co.,*

16    883 F. Supp. 488 (C.D. Cal. 1995).  Applications that fail to

17    conform with the Local Rules, including a statement of

18    opposing counsel's position, will not be considered.  In

19    addition to electronic service, the moving party shall

20    immediately serve the opposing party by fax or hand service

21    and shall notify the opposing party that any opposition must

22    be filed not later than twenty-four hours after the filing of

23    the ex parte application.  If counsel does not intend to

24    oppose the ex parte application, counsel shall immediately

25    inform the Courtroom Deputy by e-mail and immediately file a

26    Notice of Non-Opposition.  The Court considers ex parte

27    applications on the papers and usually does not set the

28    matters for hearing.  Courtesy Copies of all moving,

11

1 opposition, or non-opposition papers shall be provided to the

2 Court in accordance with paragraph 3 of this Order.   The

3 Courtroom Deputy will notify counsel of the Court's ruling or

4 a hearing date and time, if the Court determines a hearing is

5 necessary.

6 **7.   <u>Applications or Stipulations to Extend the Time to File</u>**

7 **<u>any Required Document or to Continue Any Date</u>**:

8     No applications or stipulations extending the time to

9 file any required document or to continue any date are

10 effective until and unless the Court approves them.

11 Applications and/or stipulations to extend the time to file

12 any required document or to continue any hearing, Pre-Trial

13 date, or the Trial date, must set forth the following:

14     (a)   the existing due date or hearing date, as well as

15 all dates set by the Court, including the discovery cut-off

16 date, the Pre-Trial Conference date, and the Trial date;

17     (b) the new dates proposed by the parties;

18     (c) specific, concrete reasons supporting good cause for

19 granting the extension; and

20     (d) whether there have been prior requests for extensions

21 by any party, and whether those requests were granted or

22 denied by the Court.

23     All applications and stipulations must be accompanied by

24 a separate and independent proposed order which must be

25 submitted to the Court in accordance with the Local Rules.

26 Failure to submit a separate proposed order may result in the

27 denial of the application or stipulation or the Court may

28 / / /

1 withhold ruling on the application or stipulation until the

2 Court receives a separate proposed order.

3 **8.   Temporary Restraining Orders and Injunctions:**

4 **(a)  Documentation Required:**

5 Parties seeking emergency or provisional relief shall

6 comply with Fed.R.Civ.P.65 and the Local Rules.   An ex parte

7 application for a temporary restraining order must be

8 accompanied by:   (1) a copy of the complaint; (2) a separate

9 memorandum of points and authorities in support of the

10 application; (3) the proposed temporary restraining order and

11 a proposed order to show cause why a preliminary injunction

12 should not issue; and (4) such other documents in support of

13 the application which the party wishes the Court to consider.

14 **(b)  Notice of Ex Parte Applications:**

15 Unless relieved by order of the Court for good cause

16 shown, on or before the day counsel files an ex parte

17 application for a temporary restraining order, counsel must

18 personally serve notice and all documents in support of the

19 ex parte application and a copy of the Court's Standing Order

20 on opposing counsel or party.   Counsel shall also notify the

21 opposing party that any opposition must be filed no later

22 than twenty-four hours after the service of the ex parte

23 application.   Counsel shall immediately file a Proof of

24 Service.

25 If counsel does not intend to oppose the ex parte

26 application, counsel shall immediately inform the Courtroom

27 Deputy by e-mail and immediately file a Notice of Non-

28 Opposition.   The Court considers ex parte applications on the

1   papers and usually does not set the matter for hearing.

2   Courtesy Copies of all moving, opposition, or non-opposition

3   papers shall be provided to the Court in accordance with

4   paragraph 3 of this Order.  The Courtroom Deputy will notify

5   counsel of the Court's ruling or a hearing date and time, if

6   the Court determines a hearing is necessary.

7   9.   **Proposed Protective Orders and Filings Under Seal**:

8        Protective orders pertaining to discovery must be

9   submitted to the assigned Magistrate Judge.  Proposed

10  protective orders should not purport to allow, without

11  further order of Court, the filing under seal of pleadings or

12  documents filed in connection with a hearing or trial before

13  the Court.  The existence of a protective order does not

14  alone justify the filing of pleadings or other documents

15  under seal, in whole or in part.

16       An application to file documents under seal must meet the

17  requirements of the Local Rules and shall be limited to three

18  documents by a party, unless otherwise ordered by the Court.

19  The application to file documents under seal should not be

20  filed under seal.  There is a strong presumption of the

21  public's right of access to judicial proceedings and records

22  in civil cases.  In order to overcome the presumption in

23  favor of access, the movant must demonstrate compelling

24  reasons (as opposed to good cause) for the sealing if the

25  sealing is requested in connection with a dispositive motion

26  or trial, and the relief sought shall be narrowly tailored to

27  serve the specific interest sought to be protected.  *Pintos*

28  / / /

14

1    *v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010),

2    *Kamakana v. City and County of* Honolulu, 447 F.3d 1172 (9th

3    Cir. 2006), *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d

4    1122, 1135 (9th Cir. 2003).

5         For each document or other type of information sought to

6    be filed under seal, the party seeking protection must

7    articulate compelling reasons supported by specific facts or

8    legal justification that the document or type of information

9    should be protected.  The facts supporting the application to

10   file documents under seal must be provided by a declaration.

11   Documents that are not confidential or privileged in their

12   entirety will not be filed under seal if the confidential

13   portions can be redacted and filed separately.  The

14   application to file documents under seal should include an

15   explanation of why redaction is not feasible.

16        If a party wishes to file a document that has been

17   designated confidential by another party, the submitting

18   party must give any designating party five calendar days

19   notice of intent to file.  If the designating party objects,

20   it should notify the submitting party and file an application

21   to file documents under seal within two court days.

22        If the parties anticipate requesting the Court to file

23   more than three documents under seal in connection with any

24   motion, they shall identify all such documents that will be

25   required to support and oppose the motion during the Local

26   Rule 7-3 conference.  The parties shall then meet and confer

27   in order to determine if the documents satisfy the

28   "compelling need" standard for "sealing" each document.

1    Thereafter, the parties shall file a joint application and

2    lodge a proposed order to file under seal all such documents

3    with the required showing as to each document.  The joint

4    application shall be filed promptly so that the Court may

5    rule on the application before the filing date for the

6    motion.  The parties shall not file any pleadings containing

7    documents they have requested the Court to file under seal

8    until the Court acts on the application to file under seal.

9         If an application to file documents under seal is denied

10   in part or in full, the lodged documents will not be filed.

11   The Courtroom Deputy will notify the submitting party, and

12   hold the lodged documents for three court days to allow the

13   submitting party to retrieve the documents.  If the documents

14   are not retrieved, the Courtroom Deputy will dispose of the

15   documents.

16        A redacted version for public viewing, omitting only such

17   portions as the Court has ordered filed under seal shall be

18   promptly filed by the parties after the Court's Order sealing

19   the documents.  Should counsel fail to file a redacted

20   version of the documents, the Court will strike any motion

21   that relies on or relates to the document and/or file the

22   document in the public record.

23        If the Court grants an application to file documents

24   under seal, the Court's Courtesy Copies shall include a

25   complete version of the documents with an appropriate

26   notation identifying the document or the portion of the

27   document that has been filed under seal.

28   / / /

16

10. <u>**Cases Removed From State Court**</u>:

All documents filed in state court, including documents attached to the Complaint, Answer(s), and Motion(s), must be re-filed in this Court as a separate supplement to the Notice of Removal. The supplement must be in a separately bound volume and shall include a Table of Contents. If the defendant has not yet answered or moved, the Answer or responsive pleading filed in this Court must comply with the Federal Rules of Civil Procedure and the Local Rules of the Central District. If before the case was removed a motion was pending in state court, it must be re-noticed in accordance with the Local Rules.

11. <u>**Actions Transferred From Another District**</u>

Counsel shall file, within ten days of transfer, a Joint Report summarizing the status of the action which shall include a description of all motions filed in the action and the transferor court's ruling on the motions. In addition, counsel shall deliver (but not file) one courtesy copy to Chambers of each document on the docket of the transferor court. On the first page of each courtesy copy, in the space between lines 1 - 7, to the right of the center, counsel shall include the date the document was filed and the document number. The courtesy copies shall be placed in a slant D-ring binder in chronological order with each document separated by a tab divider on the right side. All documents contained in the binder must be three hole punched with the oversized 13/32" hole size, not the standard 9/32" hole size. The binder shall include a Table of Contents and the spine of

17

1   each binder shall be labeled with its contents.  The courtesy

2   copies shall be delivered to Chambers within ten days of the

3   transfer.

4   12.  **Status of Fictitiously Named Defendants**:

5       This Court adheres to the following procedures when a

6   matter is removed to this Court on diversity grounds with

7   fictitiously named defendants referred to in the Complaint:

8       (a) Plaintiff shall ascertain the identity of and serve

9   any fictitiously named defendants within 120 days of the date

10  that the Complaint was filed in State Court.

11      (b) If plaintiff believes (by reason of the necessity for

12  discovery or otherwise) that fictitiously named defendants

13  cannot be fully identified within the 120-day period, an ex

14  parte application requesting permission to extend the period

15  to effectuate service may be filed with the Court.  Such

16  application shall state the reasons therefore, and will be

17  granted only upon a showing of good cause.  The ex parte

18  application shall be served upon all appearing parties, and

19  shall state that appearing parties may respond within seven

20  calendar days of the filing of the ex parte application.

21      (c) If plaintiff desires to substitute a named defendant

22  for one of the fictitiously named defendants, plaintiff shall

23  first seek the consent of counsel for all defendants (and

24  counsel for the fictitiously named party, if that party has

25  separate counsel). If consent is withheld or denied,

26  plaintiff shall file an ex parte application requesting such

27  amendment, with notice to all appearing parties.  Each party

28  shall have seven calendar days to respond.  The ex parte

18

1   application and any response should comment not only on the

2   substitution of the named party for a fictitiously named

3   defendant, but on the question of whether the matter should

4   thereafter be remanded to the Superior Court if diversity of

5   citizenship is destroyed by the addition of the new

6   substituted party.

7   **13.  Bankruptcy Appeals**:

8          Counsel shall comply with the Notice Regarding Appeal

9   From Bankruptcy Court issued at the time the appeal is filed

10  in the District Court.  Counsel are ordered to notify the

11  Court in a joint report if the Certificate of Readiness has

12  not been prepared by the Clerk of the Bankruptcy Court and

13  submitted to the Clerk of the District Court within 90 days

14  of the date of this Order.

15         The matter is considered submitted upon the filing of the

16  final brief.  No oral argument is held unless ordered by the

17  Court.

18  **14.  Communications with Chambers**:

19         Counsel shall not attempt to contact the Court or its

20  Chambers staff by telephone or by any other ex parte means,

21  although counsel may contact the Courtroom Deputy at

22  shannon_reilly@cacd.uscourts.gov with appropriate inquiries.

23  To facilitate communication with the Courtroom Deputy,

24  counsel should list their facsimile transmission numbers and

25  e-mail address along with their telephone numbers on all

26  papers.

27  / / /

28  / / /

19

15. <u>Notice of This Order</u>:

Counsel for plaintiff shall immediately serve this Order on all parties, including any new parties to the action. If this case came to the Court by noticed removal, defendant shall serve this Order on all other parties.

<u>Caveat</u>:  If counsel fail to cooperate in the preparation of the required Joint Rule 26 Report or fail to file the required Joint Rule 26 Report, or if counsel fail to appear at the Scheduling Conference, the Pre-Trial Conference and/or any other proceeding scheduled by the Court, and such failure is not otherwise satisfactorily explained to the Court: (a) the cause shall stand dismissed for failure to prosecute, if such failure occurs on the part of the plaintiff; (b) default judgment shall be entered if such failure occurs on the part of the defendant; or (c) the Court may take such action as it deems appropriate.


IT IS SO ORDERED.


DATED: October 14, 2015          _____
                                 JOHN F. WALTER
                                 UNITED STATES DISTRICT JUDGE