**OBJECTION DEADLINE:  February 5, 2016 at 5:00 p.m. (Eastern Time)**
**HEARING DATE AND TIME:  February 17, 2016, at 2:00 p.m. (Eastern Time)**

KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
Telephone:  (818) 547-5000
Facsimile:  (818) 54705329
André E. Jardini, Esq. (*admitted pro hac vice*)

POLSINELLI P.C.
900 Third Avenue, 21st Floor
New York, New York 10022
Telephone: (212) 684-0199
Facsimile:   (212) 684-0917
Jeremy Johnson, Esq.
David Barrack, Esq.

*Attorneys for Plaintiffs William D. Pilgrim, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------ <br> In re: <br><br> MOTORS LIQUIDATION COMPANY, *et al.,* <br>      f/k/a General Motors Corp., *et al.,* <br><br>                              Debtors <br> ------------------------------------------------------ | Chapter 11 <br><br> Case No.: 09-50026 (MG) <br><br> (Jointly Administered) |

**REPLY OF PILGRIM PLAINTIFFS TO**
**MOTION OF GENERAL MOTORS LLC PURSUANT**
**TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE BANKRUPTCY**
**COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION, AND THE**
**BANKRUPTCY COURT'S RULINGS IN CONNECTION THEREWITH**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 2

BACKGROUND RELATED TO THE PILGRIM CLASS ACTION ........................................ 3

OBJECTION ................................................................................................................. 6

OLD GM DEPRIVED THE PILGRIM PLAINTIFFS OF CONSTITUTIONAL DUE
        PROCESS ........................................................................................................ 8

CONCLUSION ............................................................................................................. 13

2441619.1 8000-1006\PLD

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Armstrong v. Manzo,*
  380 U.S. 545 (1965) ................................................................................8fn.

*Chemetron Corp. v. Jones,*
  72 F.3d 341 (3d Cir. 1995) ......................................................................9fn.

*City of New York v. New York, New Haven & Hartford R.R. Co.,*
  344 U.S. 293 (1953) ................................................................................8fn.

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.,*
  747 F.3d 145 (2d Cir. 2014) ....................................................................9fn.

*Evergreen Solar, Inc. v. Barclays BLC, et al., (In re Lehman Bros. Holdings, Inc.)*
  No. 08-13555 JMP, 2011 WL 722582, *5 (Bankr. SDNY Feb. 22, 2011) ...........8fn.

*In re Arch Wireless,*
  534 F.3d 76 (1st Cir. 2008).......................................................................9fn.

*In re Emons Indus., Inc.,*
  220 B.R. 182 (Bankr. S.D.N.Y. 1998)......................................................13fn.

*In re Johns-Manville Corp.,*
  600 F.3d 135 (2d Cir. 2010) ....................................................................9fn.

*In re Trans World Airlines, Inc.,*
  96 F.3d 687 (3d Cir. 1996) ......................................................................9fn.

*In re XO Commc'ns, Inc.,*
  301 B.R. 782 (Bankr. S.D.N.Y. 2003).......................................................9fn.

*Jones v. Chemetron Corp.,*
  517 U.S. 1137 (1997) ..............................................................................9fn.

*Morgan Olson LLC v. Frederico (In re Grumman Olson Industries, Inc.),*
  467 B.R. 694 (S.D.N.Y. 2012) ......................................................... 8fn., 9fn.

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) ................................................................................9fn.

*Reliable Electro Co., Inc., v. Olson Construction Company,*
  726 F.2d 620 (10th Cir. 1984) ..................................................................8fn.

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

STATUTES

11 U.S.C. § 105 ............................................................................................................2

11 U.S.C. § 363 ............................................................................................................2

28 U.S.C. § 18(d)(2)(A)...........................................................................................7fn.

National Highway Traffic Safety Administration Act (Safety Act)...................................5, 10, 12

Transportation Recall Enhancement, Accountability, and Documentation Act
    (TREAD Act) (2000)............................................................................................5

MISCELLANEOUS

https://www.youtube.com/watch?v=ZLT7DjnKvnY .................................................4fn.

2441619.1 8000-1006\PLD

TO:    THE HONORABLE MARTIN GLENN,
       UNITED STATES BANKRUPTCY JUDGE

William D. Pilgrim, et al. (individually and collectively, as putative class representatives on behalf of all similarly situated persons, the "Pilgrim Plaintiffs"),[1] are plaintiffs in the lawsuit captioned *William D. Pilgrim, et al. v. General Motors LLC, et al.*, pending in the United States District Court for the Central District of California ("California District Court"), Case No. CV 15-8047-JFW (the "Pilgrim Class Action") and, by and through their undersigned counsel, respectively submit this reply (the "Reply") to the Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Bankruptcy Court's July 5, 2009 Sale Order and Injunction, and the Bankruptcy Court's Rulings in Connection Therewith (the "Motion").[2]  In support of the Reply, Pilgrim Plaintiffs respectfully represent as follows:

## PRELIMINARY STATEMENT

On October 14, 2015, the Pilgrim Plaintiffs filed the Pilgrim Class Action, which is further described below.  The Pilgrim Class Action, as amended, includes claims from creditors related to vehicles manufactured and sold by both Old GM and New GM.  The Pilgrim Plaintiffs are seeking the opportunity to establish their claims against Old GM consistent with the prior orders of this Court in these cases.

New GM inappropriately seeks to mischaracterize the Pilgrim Plaintiffs as "Non-Ignition Switch Plaintiffs" and force this square peg into a round hole to achieve their desired result,

---

[1] Plaintiffs are 40 owners of Corvette Z06 automobiles as follows:  William D. Pilgrim, Walter Goetzman, Chad Reese, Jerome E. Pederson, Ahmed J. Cannon, Michael Fernandez, Roy Haleen, Howard Kopel, Robert C. Murphy, Mike Peters, Marc Adams, Kaleb Isley, Kai Qian, Mark Rowe, Dallas Wicker, Miguel Quezada, Christopher Constantine, Bradley Grant, John Parsons, Robert L. Briggs, Robert Edgar, Roger L. Browning, Lyle Dunahoo, Aaron Clark, Alan Pelletier, Edwin William Krause, Frank Juzswik, S. Garrett Beck, David Sheldon, Jan Engwis, Adam Balducci, Alan Ferrer, Jared Kiley, Jeff Kolodzi, Derek Van Den Top, Morris Smith, Andres Frey, Shawn Bain, Jeffrey M. Millslagle, Robert Geiss.

[2] All capitalized terms used but not defined herein shall have the meanings provided in the Motion.

2

dismissal of the Pilgrim Class Action. As a procedural matter, the Motion is inappropriate as it seeks injunctive relief by motion, as opposed to an adversary proceeding.

Even if the Court is inclined to permit New GM to proceed with the Motion, as a contested matter, the Pilgrim Plaintiffs request the opportunity to engage in preliminary discovery to establish facts that support their arguments set forth herein that they should be categorized similarly to the Ignition Switch Plaintiffs. In light of the appellate posture of the April Decision, June Judgment, November Decision and December Judgment, permitting some preliminary discovery would not prejudice New GM or Old GM. Similarly, given the potential outcomes of the appellate process, the Pilgrim Plaintiffs respectfully suggest that it is inappropriate to grant the proposed relief in the Motion at this time and it should be adjourned pending such appellate rulings.

The Pilgrim Class Action has been effectively stayed since the Motion was filed. The Pilgrim Plaintiffs respectfully suggest to this Court that they have not had their day in court and are entitled the opportunity to investigate whether the claims are entitled to similar treatment to the Ignition Switch Plaintiffs.

## BACKGROUND RELATED TO THE PILGRIM CLASS ACTION

1.    The Pilgrim Class Action was filed on behalf of a class of vehicle owners who own a high performance Corvette Z06 model automobile with a LS7 or 427 cubic inch engine manufactured and sold by both Old GM and New GM during model years 2006 to 2013. The Corvette Z06 engine suffers from a dangerous valve manufacturing defect that first results in excessive engine valve noise, and then, in catastrophic engine failure, even on cars with very few miles on the odometer.[3]

---

[3] See Declaration of Chad Reese ("Reese Decl.") ¶ 4, attached as Exhibit A; Declaration of William D. Pilgrim ("Pilgrim Decl.") ¶ 12, attached as Exhibit B; Declaration of David Marcarian ("Marcarian Decl.") ¶¶ 4, 7, attached

52322675.4

2.      Most Corvette Z06 vehicles manufactured by Old GM and New GM from 2006 to 2013 have this defect.[4]

3.      The catastrophic engine failure which results from this defect[5] results in a mechanical breakdown within the engine which can blow a hole in the engine up to six inches in diameter.[6] This sudden explosive event results in an immediate loss of power and compromises the steering and braking of the vehicle.[7] Also, the engine oil immediately gushes out of the engine and under the rear tires resulting in potential loss of traction and control of the vehicle.[8] In one instance, caught on video, the discharged oil caught fire, engulfing the automobile.[9] This sequence of events caused by this engine defect has caused injury to at least one driver.[10]

4.      Old GM knew of this defect.[11] In 2008, Old GM directed its dealers to make certain repairs to Z06 vehicles, but only if a customer complained of catastrophic engine failure.[12] Discovery is expected to further show that this defect was known to Old GM before its Bankruptcy.

---

as Exhibit C; Declaration of Richard Reyman ("Reyman Decl.") ¶ 9, attached as Exhibit D; Declaration of André E. Jardini ("Jardini Decl.") ¶ 5(a), attached as Exhibit E.

[4] Reyman Decl. ¶¶ 6, 11; Pilgrim Decl. ¶ 12, Ex. 9.

[5] 13 of the 40 *Pilgrim* plaintiffs have suffered a catastrophic engine failure. Reese Decl. ¶¶ 5, 6, Ex. 10; Jardini Decl. ¶ 11.

[6] Reese Decl. ¶¶ 5, 6; Ex. 10.

[7] Marcarian Decl. ¶¶ 4, 5.

[8] Videos of such engine failures exist. Jardini Decl. ¶ 13.

[9] A video of this event can be found at https://www.youtube.com/watch?v=ZLT7DjnKvnY. Jardini Decl. ¶ 13.

[10] Marcarian Decl. ¶ 5,

[11] Marcarian Decl. ¶¶ 6, 7.

[12] Jardini Decl. ¶¶ 5(b), 6 – 10, Exs. 1, 2.

52322675.4

5.    Discovery will also aid the Pilgrim Plaintiff's in determining that New GM also knew of this defect prior to this lawsuit.[13]

6.    The Pilgrim Plaintiffs believe they will be able to show that they did not get the required due process notice of known claims and they should be able to pursue New GM for its own acts and conduct, even as to Old GM vehicles and parts.

7.    Despite the knowledge by Old GM and New GM about the defect, and its danger to Corvette Z06 drivers, no recall of these vehicles for this defect has occurred.

8.    New GM retained the obligation to recall vehicles with dangerous defects under the assumed liabilities accepted by it on purchase under the Sale Order, specifically listing under those assumed liabilities recalls under the National Highway Traffic Safety Administration Act ("Safety Act") and compliance with the Transportation Recall Enhancement, Accountability, and Documentation Act ("TREAD Act").

9.    Other lesser defects in these vehicles have resulted in recalls by New GM for Corvette Z06 models, even those before the 2009 model year.[14]

10.    Both Old GM and New GM had complete information concerning the identity and location of owners of Corvette Z06 automobiles from 2006 to 2013.  The recalls which have been made for other defects on these Z06 vehicles clearly demonstrate this fact.

11.    Despite the existence of this Corvette Z06 engine defect, and knowledge by Old GM of the defect, and the fact that Old GM knew the names and addresses of all Corvette Z06 owners, no actual notice was provided concerning the potential for a claim based on this defect in this bankruptcy proceeding before the Sale Order.[15]

---

[13] Reyman Decl. ¶ 8; Pilgrim Decl. ¶¶ 5-10, Exs. 3-8.
[14] Jardini Decl. ¶ 12.
[15] Jardini Decl. ¶ 5.

12.    The required remedy for this Corvette Z06 defect is a substantial rebuild of the subject engine, with a cost upwards of $15,000.[16]

13.    There are 30,546 Corvette Z06 or 427 vehicles which have been manufactured between 2006 and 2013. This limited number of vehicles makes actual notice readily practicable.

14.    Since filing the complaint initiating the Pilgrim Class Action, the Pilgrim Plaintiffs have had no opportunity to conduct any discovery in the California District Court pending this Court's consideration of the Motion.[17]

## OBJECTION

15.    By the Motion, New GM is attempting to deprive the Pilgrim Plaintiffs, and the class they represent, of their due process rights, as afforded to similarly-situated parties before this Court in previous cases.

16.    The Pilgrim Plaintiffs are not similar to this Court's described Non-Ignition Switch Plaintiffs. The Non-Ignition Switch Plaintiffs sought recovery for diminution in value caused by an ignition switch defect in other GM vehicles, causing harm to the overall brand.[18] The Pilgrim Plaintiffs allege a specific dangerous endemic defect, not economic harm due to damage to the GM brand. The Pilgrim Plaintiffs cannot fairly be considered to be, and treated as, Non-Ignition Switch Plaintiffs. Instead, the Pilgrim Plaintiffs are directly akin to and should be treated as the Economic Loss Plaintiffs described in the April Decision.[19]

17.    Because the circumstances of the claims of the *Pilgrim* Plaintiffs are substantially similar to the claims and circumstances of the Economic Loss Plaintiffs as described in the April

---

[16] Reyman Decl. ¶ 10; Reese Decl. ¶ 7.
[17] Jardini Decl. ¶ 14.
[18] Decision, at p. 522.
[19] Decision, at p. 521.

52322675.4

Decision, the same ruling should apply. Accordingly, the Court should conclude that the due process rights of the Pilgrim Plaintiffs were violated, that they suffered prejudice thereby, that the Sale Order as to them is overbroad and that they should be permitted to bring "Independent Claims" as described in the April Decision.[20]

18.    If the Pilgrim Plaintiffs are afforded the same rights as the Economic Loss Plaintiffs, as described in the April Decision, then claims should be permitted as to Old GM manufactured parts and vehicles against New GM, for the conduct of New GM.[21]

19.    For the purposes of preserving their rights, pending the appeal presently pending in the Second Circuit brought by the Ignition Switch Plaintiffs, the Pilgrim Plaintiffs contend that the denial of due process which they suffered should result in the Sale Order not being enforceable against them.

20.    The Pilgrim Plaintiffs alternatively request that the determination on this Motion be certified for direct review by the Second Circuit.[22] This will permit these parties to participate in presently pending proceedings there raising the same issues discussed here.

21.    Consistent with this Court's previous rulings, the Pilgrim Plaintiffs should be permitted to bring claims against New GM on the same terms as permitted to the Economic Loss Plaintiffs. The Court is asked to independently assess the Pilgrim Plaintiffs' claims and not simply to categorize them as Non-Ignition Switch Plaintiffs, as requested by New GM.

22.    As stated, the Pilgrim Plaintiffs have not had an opportunity to do discovery; nor, as occurred in the Ignition Switch cases is there a set of stipulated facts. If the Court determines that additional facts are necessary to decide the defect, due process and prejudice issues raised

---

[20] Decision, at p. 526-527.
[21] Decision, at p. 598.
[22] 28 U.S.C. § 18(d)(2)(A).

52322675.4

herein, the Pilgrim Plaintiffs request the opportunity to solicit stipulated facts from New GM

and/or to conduct discovery.

23.    If the Court believes it has a sufficient record to rule on the motion, the Pilgrim

Plaintiffs request that they be permitted to bring Independent Claims,[23] that is, claims or causes

of action asserted by them against New GM (whether or not involving Old GM vehicles or parts)

that are based solely on New GM's own, independent, post-Closing acts or conduct.

**OLD GM DEPRIVED THE PILGRIM
PLAINTIFFS OF CONSTITUTIONAL DUE PROCESS**

24.    "As courts have long recognized, the requirement of notice is the cornerstone

underpinning Bankruptcy Code procedure."[24]    Notice requirements of bankruptcy are "founded

in the fundamental notions of procedural due process."[25]    "The statutory command for notice

embodies a basic principle of justice -- that a reasonable opportunity to be heard must precede

judicial denial of a party's claimed rights."[26]    Failure to give proper notice violates "the most

rudimentary demands of due process law."[27]    Consequently, "a party that did not receive

---

[23] June 4, 2015 Judgment (June Judgment) ¶ 4.
[24] See *Morgan Olson LLC v. Frederico (In re Grumman Olson Industries, Inc.)*, 467 B.R. 694, 706 (S.D.N.Y. 2012) *(internal quotations and citation omitted)*.
[25] See *ID.* (quoting *Western Auto Supply Company v. Savage Arms, Inc. (In re Savage Industries, Inc.)*, 43 Fed.3d 714, 721 (First Circuit. 1994); *Evergreen Solar, Inc. v. Barclays BLC, et al.*, *(In re Lehman Bros. Holdings, Inc.)*, No. 08-13555 JMP, 2011 WL 722582, *5 (Bankr. S.D.N.Y. Feb. 22, 2011) (Peck, J.).

[26] See *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 297 (1953) (holding that where creditor was not listed as a known creditor and did not receive notice of the debtors' bankruptcy filing or bar order, the creditor's liens on the debtors' real estate were not discharged); *Reliable Electro Co., Inc., v. Olson Construction Company*, 726 F.2d 620, 623 (10th Cir. 1984) ("A fundamental right guaranteed by the constitution is the opportunity to be heard when a property interest is at stake. Specifically, the reorganization process depends upon all creditors and interested parties being properly notified of all vital steps in the proceeding so they may have the opportunity to protect their interests ....").

[27] See *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) "A fundamental requirement of due process is 'the opportunity to be heard.' It is an opportunity which must be granted at a meaningful time and in a meaningful manner.") (quoting *Grannis v. Ordean* 234 U.S. 385, 394 (1914)).

-8-

adequate notice of bankruptcy proceedings [cannot] be bound by orders issued during those proceedings."[28]

25.    It has been long held that creditors must be afforded notice "reasonably calculated, under all the circumstances, to apprise" them of the pendency of any proceeding that may affect their rights.[29]    Whether a creditor was provided with notice sufficient to satisfy due process requirements "often turns on what the debtor or the claimant knew about the claim or, with reasonable diligence, should have known."[30]

26.    For known creditors, due process requires actual notice.[31]

27.    As detailed above, Old GM had ample knowledge to "reasonably ascertain" that the *Pilgrim* Plaintiffs are known creditors with claims arising from defects in their Corvette Z06 vehicles.    In 2008, prior to the Sale Order, Old GM had directed its dealers to provide certain repairs to those Corvette Z06 owners who had suffered an engine failure.    GM had the clear ability to provide notice to all Corvette Z6 owners.    That ability is established conclusively by

---

[28] See *In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010) ("We hold that [the creditor] was not adequately represented in the proceedings that led to the bankruptcy court's approval of [the settlement agreement and plan], and that it did not receive adequate notice of the [orders approving the same].... [The creditor] is therefore not bound by the terms of the [orders]."); *In re Arch Wireless, Inc.*, 534 F.3d 76 (1st Cir. 2008) (holding that known creditor who did not receive notice of plan was not bound by plan injunction precluding creditors from asserting pre-confirmation claims against the debtor); *In re Trans World Airlines, Inc.*, 96 F.3d 687 (3d Cir. 1996) (holding that requirements of due process dictate that if a potential claimant lacks sufficient notice of a bankruptcy proceeding, his or her claim cannot be discharged by an order confirming a plan of reorganization); *Grumman*, 467 B.R. at 706 ("Enforcing the sale order against the [plaintiffs] to take away their right to seek redress under a state law theory of successor liability when they did not have notice or an opportunity to participate in the proceedings that resulted in that order would deprive them of due process."); see also 8 COLLIER ON BANKRUPTCY ¶1141.02[4][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2011) ("If the debtor knows the identity of the creditor, the confirmation order and any third party release will be binding on the creditor only if the creditor was given proper notice of the case.").

[29] See *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

[30] See *DPWN Holdings (USA), Incorporated v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014).

[31] A "known" creditor is a creditor whose identity is actually known or "reasonably ascertainable" to the debtor. See *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995), cert. denied *Jones v. Chemetron Corp.*, 517 U.S. 1137 (1997); *In re XO Commc'ns, Inc.*, 301 B.R. 782, 793 (Bankr. S.D.N.Y. 2003) (known creditors include "both a claimant whose identity is actually known to the debtor or a claimant whose identity is 'reasonably ascertainable' by the debtor.")

the fact that New GM actually sent recall notices to Corvette Z06 owners (for several other lesser problems) directly by mail as part of the recall process.

28.     This Court held in its April Decision that knowledge by Old GM of a defect in GM vehicles that created a safety hazard, along with knowledge of names and addresses of owners of the defective cars, serves to make the owners of these vehicles "known creditors" to whom the debtor-manufacturer had a due process obligation to provide actual notice.[32]

29.     If New GM disputes this knowledge requiring actual notice, discovery should be permitted. In the Court's Decision concerning Ignition Switch Claims, New GM did not dispute that Old GM personnel knew as of the time of the bankruptcy filing that Old GM would have been obligated under the Safety Act to conduct a recall of those vehicles. The facts here support a similar conclusion.

30.     New GM made the same or similar arguments against the Ignition Switch cases as are made in the present motion. The Court in its Decision states in this regard: "New GM here seeks to enforce the Sale Order's provisions, quoted below, blocking economic loss lawsuits against New GM on claims involving vehicles and parts manufactured by Old GM." See April Decision p 521.

31.     This is the crux of GM's position here. The Court described the issue before it as limited "only to economic losses allegedly sustained with respect to Old GM vehicles or parts." See April Decision, footnote 4. In the Judgment issued pursuant to the Court's April Decision, claims by Ignition Switch Plaintiffs (Economic Loss claims) were permitted against New GM for its conduct, even relating to Old GM vehicles.[33]

---

[32] Decision, at p. 525.
[33] June Judgment, ¶ 4.

-10-

52322675.4

32.    The Court in the April Decision discussed the only other category of non-injury claims before it at that time as follows:

> The other category of Plaintiffs later coming into the picture ("Non-Ignition Switch Plaintiffs") brought actions asserting Economic Loss claims as to GM branded cars that *did not have* Ignition Switch Defects, including cars made by New GM and Old GM alike. In fact, most of their cars did not have defects, and/or were not the subject of recalls, at all. But they contend, in substance, that the Ignition Switch Defect caused damage to "the brand", resulting in Economic Loss to them. (At p. 522; emphasis added.)[34]

33.    The Pilgrim Plaintiffs do not base their case on damage to the" GM brand" created by the Ignition Switch Defect. Rather, a completely different, substantial, dangerous, known defect is alleged which causes catastrophic engine failure in Corvette Z06 vehicles, with attendant safety concerns.

34.    It is a false dichotomy to limit the universe of claims for potentially dangerous defects in GM cars to "Ignition-Switch Plaintiffs" and "Non-Ignition Switch Plaintiffs." Plainly, this Court could not have been precluding all future defect claims regardless of the circumstances, by these defined categories. The categories were the only ones before the Court. Corvette Z06 Plaintiffs' claims were not considered or defined at the time the April Decision was published and the Judgment handed down.

35.    The demarcation between Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs in the Court's April Decision is not an important distinction concerning new cases for known defects based on economic loss caused by the defect.

36.    The Court discussed its conclusion in the April Decision as to the notice required to those whose claims involved defects known by Old GM, as follows:

> Notice must be provided in bankruptcy cases, as in plenary litigation, that is "reasonably calculated, under all the circumstances" to apprise people of the pendency of any proceeding that may result in their being deprived of any

---

[34] See also, Decision, at footnote 6, discussing these claims as alleging damage to "the GM brand."

52322675.4

property, and to "afford them an opportunity to present their objections." (Footnote omitted.) The Second Circuit, like many other courts, has held that "the Due Process Clause requires the best notice practicable under the circumstances" (footnote omitted). But "actual" (i.e. personalized) notice is required for "known" creditors – those whose names and addresses are "reasonably ascertainable." (footnote omitted.) (At p. 523-524.)

37.    There, as here, Old GM had enough knowledge of the defect to be required under the Safety Act to send out mailed recall notices to all owners of affected Old GM vehicles. In fact, here, far fewer vehicles are involved; 30,546 vehicles, not 24,000,000 vehicles, nor 10,000,000 vehicles.

38.    The Court concluded in the April Decision that the publication notice given was insufficient, "because from Old GM's perspective, the facts that gave rise to its recall obligation resulted in 'known' claims as that expression is used in due process jurisprudence." (At p. 525.) There, because owners of cars with the defect received neither the notice required under the Safety Act nor any reasonable substitute, they were found to have been denied the notice that due process requires.

39.    The failure to give actual notice resulted in prejudice. The Court in its April Decision stated in this regard:

> But the Economic Loss plaintiffs were prejudiced in one respect. Nobody else had argued a point that they argue now that the proposed Sale Order was overly broad, and that it should have allowed them to assert claims involving Old GM vehicles and parts so long as they were basing their claims *solely on New GM conduct*, and not based on any kind of successor liability or any other act by Old GM. (At p. 526-527.)

40.    The Economic Loss plaintiffs subject to the Court's April Decision are in the same position as the *Pilgrim* Plaintiffs, as neither group were furnished the opportunity to make the overbreadth argument back in 2009, and in that respect they were prejudiced.

52322675.4

41.    Principles of fairness require that creditors with identical claims be treated uniformly.[35]

42.    The prejudice, described by the Court in the April Decision, led the Court to adopt certain remedies.

43.    The Court carefully fashioned effective, but limited, relief. The Court did not allow the Economic Loss Plaintiffs to be exempted from the Sales Order's Free and Clear Provisions barring the assertion of claims for successor liability. However, Economic Loss Plaintiffs were permitted to assert otherwise viable claims against New GM for any causes of action that might exist solely out of New GM's own, independent, post-Closing acts, so long as those Plaintiffs' claims did not in any way rely on acts or conduct by Old GM.[36]

44.    These determinations were certified for early decision by the Second Circuit Court of Appeals.[37]

## CONCLUSION

45.    The Pilgrim Plaintiffs request that this Court deny the Motion and permit the Pilgrim Plaintiffs to pursue discovery with respect to their claims.

46.    Alternatively, the Court is requested to permit the Pilgrim Plaintiffs to pursue their claims against New GM, based on parts and vehicles manufactured by Old GM, limited to New GM conduct, as was permitted in the April Decision for Economic Loss Plaintiffs.

---

[35] *See, e.g., In re Emons Indus., Inc.*, 220 B.R. 182, 194 (Bankr. S.D.N.Y. 1998) (approving distributions to subsequent claimants to achieve "the uniform treatment of creditors of the Debtor who assert identical claims").

[36] Decision, at p. 598.

[37] Decision, at pps. 597-598.

52322675.4

47.     These Plaintiffs preserve their argument that the Sales Order should be set aside

for violation of due process, but recognize that the Court has already carefully considered this

issue and it is on appeal.  This issue is raised here simply to preserve it as to these Plaintiffs.

48.     Plaintiffs request certification for direct review by the Second Circuit of the

Court's ruling on the Motion.

Dated: February 5, 2016
       New York, New York

       Respectfully submitted,


       /s/ Jeremy Johnson
       Jeremy Johnson, Esq.
       David Barrack, Esq.
       POLSINELLI P.C.
       900 Third Avenue, 21st Floor
       New York, New York 10022
       Telephone: (212) 684-0199
       Facsimile:  (212) 684-0917


       /s/ André E. Jardini
       André E. Jardini
       (Appearing *Pro Hac Vice*)
       KNAPP, PETERSEN & CLARKE
       550 North Brand Boulevard
       Suite 1500
       Glendale, California 91203
       Telephone:  (818) 547-5000
       Facsimile:  (818) 547-5329

52322675.4