KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re                                                          :    Chapter 11
                                                               :
MOTORS LIQUIDATION COMPANY, *et al.*,                          :    Case No.: 09-50026 (MG)
           f/k/a General Motors Corp., *et al.*                :
                                                               :
                              Debtors.                         :    (Jointly Administered)
---------------------------------------------------------------x

# OBJECTION BY GENERAL MOTORS LLC
# TO THE MOTION FOR LEAVE TO APPEAL FILED
# BY MARLOS L. CHENAULT AND SHAYRIKA L. CHENAULT

**TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ........................................................................................................................... 1

**PROCEDURAL HISTORY** ........................................................................................................... 3

**ARGUMENT** ................................................................................................................................. 6

    A.    The Bankruptcy Court Plainly Has Jurisdiction to
Interpret and Enforce the Sale Order and Injunction. ......................................................... 8

    B.    The Bankruptcy Court Appropriately and
Correctly Interpreted the Sale Order and Injunction. ......................................................... 10

    C.    Movants Have Failed to Demonstrate Exceptional Circumstances. ................................. 11

**CONCLUSION** ............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
  757 F.2d 523 (2d Cir. 1985)) ............................................................................................... 11

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
  428 B.R. 43 (S.D.N.Y. 2010) ............................................................................................ 9, 10

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) .............................................................................................................. 9

*Douglas v Stamco*,
  363 Fed. App'x 100 (2d Cir. 2010) ....................................................................................... 9

*Ellsworth v. Myers (In re Cross Media Mktg. Corp.)*,
  No. 03-13901(BRL), 2007 WL 2743577 (S.D.N.Y. Sept. 19, 2007) .................................... 7

*Enron Corp. v. Avenue Special Situations Fund II, L.P. (In re Enron Corp.)*,
  Adv. 05-010, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ........................................ 6, 7, 11

*Hachamovitch v. DeBuono*,
  159 F.3d 687 (2d Cir. 1998) ................................................................................................ 10

*In re Futter Lumber Corp.*,
  473 B.R. 20 (E.D.N.Y. 2012) ................................................................................................ 6

*In re Motors Liquidation Co.*,
  514 B.R. 377 (Bankr. S.D.N.Y 2014) ................................................................................ 2, 9

*Khawaja v. Lane Co.*,
  239 Ga. App. 93 (1999) ......................................................................................................... 2

*Koehler v. Bank of Bermuda Ltd.*,
  101 F.3d 863 (2d Cir. 1996) .................................................................................................. 7

*Liebert v. Levine (In re Levine)*,
  No. 94-44257, 2004 WL 764709 (S.D.N.Y. Apr. 9, 2004) ................................................... 7

*N. Fork Bank v. Abelson*,
  207 B.R. 382 (E.D.N.Y. 1997) ........................................................................................... 6, 7

*Official Comm. Of Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP*,
  322 F.3d 147 (2d Cir. 2003) ................................................................................................ 11

*Plaza at Latham Assoc. v. Citicorp N.A., Inc.*,
    150 B.R. 507 (N.D.N.Y. 1993) ........................................................................................... 10

*Travelers Indemn. Co. v. Bailey*,
    557 U.S. 137 (2009) ........................................................................................................... 9

*United National Ins. Co. v. Waterfront N.Y. Realty Corp.*,
    907 F. Supp. 663 (S.D.N.Y. 1995) ................................................................................... 10

### **Statutes**

28 U.S.C. § 1292 .......................................................................................................................... 6

General Motors LLC ("**New GM**"), by and through its undersigned counsel, hereby submits this objection to the *Motion for Leave to Appeal* ("**Motion**") [Bankr. Dkt. No. 13625] filed by Marlos L. Chenault and Shayrika L. Chenault ("**Movants**") in connection with the *Memorandum Opinion and Order Determining that the Automatic Stay Applies to State Court Action* ("**BC Order**"),[1] entered by the United States Bankruptcy Court for the Southern District of New York on April 15, 2016 [Bankr. Dkt. No. 13618]. In support of this Objection, New GM respectfully represents as follows:

## INTRODUCTION

1. In issuing the BC Order, the Bankruptcy Court responded to a state court's request for guidance on issues implicating the Bankruptcy Court's Orders in the bankruptcy case of Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**"). Movants' request for leave to appeal the BC Order should be denied because Movants have not and cannot show a "substantial ground for difference of opinion" as to whether the Bankruptcy Court has jurisdiction to interpret its own Orders, or whether the Bankruptcy Court properly interpreted its Orders. Movants have also failed to assert, let alone demonstrate, that exceptional circumstances warrant the extraordinary relief of an interlocutory appeal.

2. In its September 28, 2015 Order ("**Directional Order**"),[2] the State Court of Fulton County, Georgia ("**State Court**") sought the Bankruptcy Court's guidance after concluding that the issues that Movants raised were "for the Bankruptcy Court to determine, because resolution would involve an analysis of that Court's own orders and rulings, as well as a

---

[1] A copy of the BC Order is attached as **Exhibit "A."**
[2] A copy of the Directional Order is attached as **Exhibit "B."**

detailed review of the proceedings and the transfer of assets/liabilities from [Old GM] to [New GM]." Directional Order, at 2.

3. In answering the questions posed and issuing the BC Order, the Bankruptcy Court did precisely what the State Court requested—it interpreted and applied its own Orders. Specifically, the Bankruptcy Court concluded that (a) Movants were prohibited from asserting that New GM was Old GM's successor-in-interest, (b) New GM did not assume as liabilities the claims that Movants alleged in their State Court Complaint ("**Complaint**"),[3] and (c) the allegations and claims in Movants' Complaint against Old GM violated the bankruptcy automatic stay. The State Court now has what it requested and needed to rule on a pending motion. Movants do not challenge—nor could they—the Bankruptcy Court's finding that New GM is not the successor in interest to Old GM. The pending motion in the State Court can be decided on this finding alone.[4] Thus, granting the Motion will only further delay these proceedings.

4. In their Motion, Movants identify two grounds for seeking leave to appeal the BC Order: (a) the Bankruptcy Court lacked jurisdiction to enter the BC Order; and (b) New GM assumed the type of liabilities set forth in Movants' Complaint. Neither claim has merit. The Bankruptcy Court plainly has jurisdiction to interpret its own orders,[5] particularly in situations where, as here, a court has specifically asked the Bankruptcy Court to interpret its own Orders. Indeed, Movants invoked the Bankruptcy Court's jurisdiction by filing the motion that resulted in the BC Order. The second issue—whether New GM assumed the alleged liability to

---

[3] A copy of the Complaint is attached as **Exhibit "C."**

[4] Under Georgia law, "correction of a misnomer involves no substitution of parties and does not add a new and distinct party." *Khawaja v. Lane Co.*, 239 Ga. App. 93, 94 (1999) (internal citation omitted). Movants' misnomer theory is predicated on Old GM and New GM *not* being separate and distinct parties. Such an argument is directly contrary to the Bankruptcy Court's finding, which is not challenged by Movants.

[5] *In re Motors Liquidation Co.*, 514 B.R. 377, 379-80 (Bankr. S.D.N.Y 2014).

2

Movants—was an issue that Movants specifically raised in their motion to the Bankruptcy Court. They cannot cite the Bankruptcy Court's answer to their own question as grounds for an interlocutory appeal and, in any event, their legal position is without merit.

## PROCEDURAL HISTORY

5.      In October 2012, Movants filed a product liability action in the State Court against a tire manufacturer (Continental), a tire shop (Brown Tire), and Old GM (not New GM). In their Complaint, Movants alleged that a defect in a 2004 Continental tire that they purchased from Brown Tire and installed on their 2005 GMC Envoy Denali (a vehicle manufactured by Old GM) caused a tread separation that resulted in a crash on January 29, 2011.

6.      Significantly, Movants did not allege that the Subject Tire (as defined in the Complaint) was manufactured or sold by Old GM, or that it was delivered by Old GM with the Envoy (or any other vehicle); they alleged that the Subject Tire was "designed, manufactured, tested, marketed and distributed by the Continental Defendants" and "purchased from Defendant Brown Tire prior [sic] the subject incident." (Complaint, ¶¶ 13, 15.) As to Old GM, Movants alleged only that the Subject Tire was "designed in part" by Old GM. (*Id.*, ¶¶ 12, 34.)

7.      Movants named only Old GM (not New GM) as a defendant in both the caption and body of their Complaint. They did not identify or reference New GM anywhere in their pleading. Contrary to their arguments in this Motion, Movants' Complaint was directed solely at Old GM. It referred to Old GM only as the entity that allegedly designed, in part, the Subject Tire. (*See id.*, at ¶¶ 34, 36.) Putting aside the inaccuracy of that allegation—Old GM did not actually design the Subject Tire at all—Movants could not have been referring to New GM as the designer (in part) of the Subject Tire because any design-related conduct concerning a tire manufactured in 2004 occurred well before the 363 Sale in 2009.

3

8.      A summons ("**Summons**")[6] was issued on October 18, 2012, for "*General Motors Corporation*" only (*i.e.*, Old GM). According to the Affidavit of Service[7] filed on April 3, 2013, Movants did not try to serve Old GM. Instead, they delivered the Summons and Complaint to New GM's registered agent, Corporation Service Company ("**CSC**"), on October 22, 2012. Because CSC was not the registered agent for the named defendant—Old GM—CSC rejected service and sent Movants a "Rejection of Service of Process" letter ("**Service Rejection Letter**")[8] that same day. In that letter, CSC advised Movants that service of process for the named defendant—Old GM—would not be forwarded. *Id.* Despite being sent the Service Rejection Letter, Movants did not serve Old GM properly or otherwise amend their complaint to name New GM as a defendant and re-serve New GM. Instead, they vigorously pursued and ultimately settled their claims against Continental.

9.      While pursuing their claims against Continental, Movants—not once, but twice—filed Motions for Default Judgment against *Old GM*, both times erroneously asserting that New GM was "the successor in interest" of Old GM. The State Court did not grant either motion.

10.     Almost three years after filing their Complaint, and after settling their claims against Continental, Movants sought a default judgment against *New GM*. In their *Motion for Entry of Judgment and for Correction of Misnomer* ("**Default & Misnomer Motion**"),[9] Movants claimed—for the first time—that they had *mistakenly* named Old GM instead of New GM as a defendant. Movants asked the State Court to enter a default judgment against New GM because, according to Movants, New GM was the "successor in interest" to Old GM, and Old GM was a

---

[6]     A copy of the Summons is attached as **Exhibit "D."**
[7]     A copy of the Affidavit of Service is attached as **Exhibit "E."**
[8]     A copy of the Service Rejection Letter is attached as **Exhibit "F."**
[9]     A copy of the Default & Misnomer Motion is attached as **Exhibit "G."**

4

mere misnomer for New GM. New GM opposed Movants' motion, arguing that the relief sought violated the Bankruptcy Court's Orders. In particular, the Bankruptcy Court's Sale Order and Injunction,[10] a final and non-appealable order binding on Movants, unequivocally states that New GM is not the successor in interest to Old GM. Old GM had also previously advised the State Court that Movants' case against Old GM violated the Bankruptcy Court's Orders.[11]

11. In response, the State Court issued the Directional Order requiring Movants to obtain guidance from the Bankruptcy Court regarding: (1) "the nature of the relationship between [Old GM] and [New GM]" (specifically "whether or not these two companies are interrelated sufficiently so that one is a mere misnomer of the other"); (2) "whether or not the claims [alleged] against General Motors Corporation [Old GM] are barred in [the underlying] case;" and (3) "whether or not the bankruptcy stay applies" to their claims against Old GM.

12. After Movants filed their motion in the Bankruptcy Court pursuant to the Directional Order ("**Directional Motion**"),[12] New GM filed its objection ("**Directional Motion Objection**").[13]

13. At the hearing on the Directional Motion, the Bankruptcy Court specifically asked whether Movants agreed that the Subject Tire was not manufactured by Old GM, and was purchased from a third party; Movants unequivocally agreed. *See* Transcript of April 13, 2016 Hearing ("**April 13 Transcript**"), at 3:6-24.[14] The Bankruptcy Court focused on a key issue in determining whether the claims are barred by the bankruptcy stay, asking Movants' counsel "to

---

[10] The "**Sale Order and Injunction**" refers to the Bankruptcy Court's Order entered on July 5, 2009 approving the sale of assets from Old GM to New GM, a copy of which (along with the Sale Agreement that it approved), is attached as **Exhibit "H."**

[11] A copy of the Letter from the GUC Trust is attached as **Exhibit "I."**

[12] A copy of the Directional Motion is attached as **Exhibit "J."**

[13] A copy of the Directional Motion Objection (without exhibits) is attached as **Exhibit "K."**

[14] A copy of the April 13 Transcript is attached as **Exhibit "L."**

5

point me to the specific language that you believe shows that New GM assumed liability for your client's claim." *Id.*, at 5:2-4. Movants' counsel could not do so. *Id.*, at 5:5. The Bankruptcy Court also observed that Movants were asking different questions from those the State Court asked in the Directional Order. *See id.* 5:16-18 ("I've seen what the judge asked you to get, and it looks like you were looking for something different than what she asked."); *see also id.*, at 5:24-25 ("I read what she asked. It's not the same thing that you styled in your motion.").

14. On April 15, 2016, the Bankruptcy Court entered the BC Order, answering the State Court's questions and denying Movants' Directional Motion: "New GM is *not* a successor in interest to [Old GM]; it is a completely separate legal entity from Old GM. The filing of Plaintiffs' State Court Claims against Old GM violated the automatic stay. And, New GM did *not* assume liability for Plaintiffs' claims." BC Order, at 2 (emphasis in original).

## ARGUMENT

15. "[I]nterlocutory appeals from bankruptcy courts' decisions are 'disfavored' in the Second Circuit." *Enron Corp. v. Avenue Special Situations Fund II, L.P. (In re Enron Corp.)*, Adv. 05-010, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006) "In order to permit an interlocutory appeal pursuant to section 1292(b), the order being appealed must '(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion,' and the movant must also show that '(3) an immediate appeal would materially advance the ultimate termination of the litigation.'" *Id.* at *3 (quoting 28 U.S.C. § 1292(b)). Each of these requirements "must be met for a Court to grant leave to appeal." *In re Futter Lumber Corp.*, 473 B.R. 20, 26-27 (E.D.N.Y. 2012); *see also N. Fork Bank v. Abelson*, 207 B.R. 382, 390 (E.D.N.Y. 1997) ("Because Abelson's appeal meets only two of the three requirements as enunciated in 28 U.S.C. § 1292(b), the Court declines to grant leave to bring an Interlocutory Appeal.").

6

16. For there to be a substantial ground for difference of opinion, Movants must show that there is genuine doubt as to the correct applicable legal standard relied upon by the bankruptcy court in denying a motion, *Ellsworth v. Myers (In re Cross Media Mktg. Corp.)*, No. 03-13901(BRL), 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007), involving more than strong disagreement between the adversarial parties. *See N. Fork Bank*, 207 B.R. at 390. "Merely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion." *Ellsworth*, 2007 WL 2743577, at *2.

17. Furthermore, "leave to appeal is warranted only when the movant demonstrates the existence of 'exceptional circumstances' to overcome the 'general aversion to piecemeal litigation' and to 'justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Enron*, 2006 WL 2548592, at *3; *see also Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (an interlocutory appeal is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals"); *Liebert v. Levine (In re Levine)*, No. 94-44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) ("The Second Circuit has repeatedly 'urged the district courts to exercise great care in making a § 1292(b) certification.'"(internal citation omitted)).

18. Movants have not and cannot show a "substantial ground for difference of opinion" about whether the Bankruptcy Court had jurisdiction to interpret its own Orders, or whether the Bankruptcy Court properly interpreted its own Orders.[15] Movants, likewise, cannot show that exceptional circumstances justify the extraordinary relief that they seek. Accordingly, the Motion should be denied.

---

[15] Movants do not even try to demonstrate a substantial ground for a difference of opinion on these issues. They merely state their argument as if it was an undisputed fact. The Motion should be denied on that basis alone.

7

**A.    The Bankruptcy Court Plainly has Jurisdiction to
       Interpret and Enforce the Sale Order and Injunction.**

19.    There is no "substantial ground for difference of opinion" as to the Bankruptcy Court's jurisdiction to enter the BC Order. Movants never challenged the Bankruptcy Court's jurisdiction to resolve the questions put to it by the State Court; they actually sought the very rulings that they now argue the Bankruptcy Court lacked jurisdiction to make. Given that their Directional Motion invoked the Bankruptcy Court's jurisdiction, they cannot reverse course simply because they do not like the result.

20.    Nor is there any doubt as to whether the Bankruptcy Court was within its jurisdiction when entering the BC Order. In addressing the issues directed to it by the State Court, the Bankruptcy Court reviewed the Sale Order and Injunction and other rulings interpreting same, and it enforced those rulings as they applied to Movants' claims—a task the Bankruptcy Court has undertaken multiple times with respect to other offending lawsuits. The Bankruptcy Court unquestionably has jurisdiction to interpret and enforce prior Orders, and Movants have cited no authority suggesting otherwise. Nor could they. The Supreme Court has unequivocally held that a bankruptcy court has jurisdiction to interpret and enforce its prior orders:

> Given the Clarifying Order's correct reading of the 1986 Orders, the only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order. ***The answer here is easy***: as the Second Circuit recognized, and respondents do not dispute, ***the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders***. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S. Ct. 695, 78 L. Ed. 1230 (1934). ***What is more, when the Bankruptcy Court issued the 1986 Orders it explicitly retained jurisdiction to enforce its injunctions***.

8

*Travelers Indemn. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (emphasis added); *accord Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (stating litigants cannot be permitted to collaterally attack preexisting court orders "without seriously undercutting the orderly process of the law").[16]

22.     In another matter before the Bankruptcy Court concerning the interpretation of the Sale Order and Injunction, the Bankruptcy Court cited numerous cases from the Supreme Court, the Second Circuit, this District Court, and the Bankruptcy Court—all establishing that it has jurisdiction to interpret and, if appropriate, enforce the Sale Order and Injunction. *See Motors Liquidation Co.*, 514 B.R. 377, 379-80 (Bankr. S.D.N.Y 2014). Any argument to the contrary is "***frivolous***." *Id.* at 380 (emphasis added).

23.     This District Court in *In re General Motors LLC Ignition Switch Litigation*, 14-MD-2543 (JMF) ("**MDL**"), previously agreed that the Bankruptcy Court should rule on issues related to its own orders. *See* MDL Order No. 7, at 3 ("the Court is inclined to believe that the Bankruptcy Court should rule, in the first instance, on matters relating to its prior orders and the bankruptcy generally").

24.     Likewise, claims like those advanced by Movants here were rejected in *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43 (S.D.N.Y. 2010) (Buchwald, J.)—a prior appeal from the Sale Order and Injunction:

---

[16] The Second Circuit has also rejected the argument that a bankruptcy court lacks authority to enforce "free and clear" provisions in a sale agreement in favor of a purchaser of a debtor's assets. In *Douglas v Stamco*, 363 Fed. App'x 100 (2d Cir. 2010), the Second Circuit recognized that enforcement of such free and clear provisions affects the bankruptcy estate:

> [T]o the extent that the "free and clear" nature of the sale (as provided for in the Asset Purchase Agreement ("APA") and § 363(f)) was a crucial inducement in the sale's successful transaction, it is evident that the potential chilling effect of allowing a tort claim subsequent to the sale would run counter to a core aim of the Bankruptcy Code, which is to maximize the value of the assets and thereby maximize potential recovery to the creditors.

*Id.* at 102-03.

9

> The jurisdictional issue here, if any, is the Bankruptcy Court's "core" or "arising under" jurisdiction to approve the 363 Transaction and issue the Sale Order. It is well-settled that bankruptcy courts have core jurisdiction to approve section 363 sales, *see* 28 U.S.C. § 157(b)(2)(N) ("[C]ore proceedings include ... orders approving the sale of property."), and corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a); *cf. also* 28 U.S.C. § 1651 ("All Writs Act"). Moreover, courts have characterized the injunctive authority of bankruptcy courts as "core" when the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code, such as the "free and clear" authority of section 363(f).

428 B.R. at 56-57 (collecting cases).[17]

25. As demonstrated above, there is no ground for a difference of opinion, much less "a substantial ground," on whether the Bankruptcy Court had jurisdiction to enter the BC Order. Movant's motion for leave to appeal the BC Order on this basis should be denied.

**B.    The Bankruptcy Court Appropriately and Correctly Interpreted the Sale Order and Injunction.**

26. Nor is there "substantial ground for difference of opinion" as to the Bankruptcy Court's conclusion that the claims pled in Movants' Complaint were not among the Old GM liabilities that New GM assumed. They may disagree with the Bankruptcy Court's analysis, but Movants have failed to cite any facts or law to question the legal standard that the Bankruptcy Court applied to find that New GM did not assume responsibility for Movants' claims.

27. Specifically, whether the liabilities were "assumed" by New GM is governed by the express terms of the Sale Agreement. The Bankruptcy Court reviewed the language in the Sale Agreement, reviewed Movants' allegations, and determined that, on the facts alleged in the

---

[17] Cases cited by Movants to support their argument that the Bankruptcy Court lacked jurisdiction are inapposite. None of those cases concern a situation like that present here where the Bankruptcy Court is called upon—indeed has been specifically asked by a another court—to interpret its prior orders. *See Plaza at Latham Assoc. v. Citicorp N.A., Inc.*, 150 B.R. 507 (N.D.N.Y. 1993) (bankruptcy court had jurisdiction to hear request for approval of a settlement agreement, and to enter an order approving the settlement); *United National Ins. Co. v. Waterfront N.Y. Realty Corp.*, 907 F. Supp. 663 (S.D.N.Y. 1995) (court had diversity jurisdiction to determine insurance coverage dispute); *Hachamovitch v. DeBuono*, 159 F.3d 687 (2d Cir. 1998) (application of *Rooker-Feldman* doctrine in Section 1983 action).

10

Complaint and Movants' admissions, no claim exists against New GM. This determination is correct because (a) the Sale Agreement provides that New GM only agreed to assume Product Liabilities in connection with component parts of motor vehicles "manufactured, sold or delivered by" Old GM, and (b) Movants' Complaint clearly alleges that entities ***other than Old GM*** (Continental and Brown Tire) manufactured, sold or delivered the Subject Tire.[18] Movants are bound by the allegations in their Complaint. *See Official Comm. Of Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are 'judicial admissions' by which Color Tile Committee was bound throughout the course of the proceeding" (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985))).

28.    Thus, based on the clear language in the Sale Agreement, there is no ground for a difference of opinion on whether New GM assumed the claims alleged in Movants' Complaint (it clearly did not). Their dissatisfaction with the Bankruptcy Court's conclusion does not create a "substantial ground for a difference of opinion" to grant Movants leave to appeal the BC Order.

C.    **Movants Have Failed to Demonstrate Exceptional Circumstances.**

29.    Finally, Movants completely ignore their obligation to show exceptional circumstances to justify an interlocutory appeal. *See Enron*, 2006 WL 2548592, at *3 ("[L]eave to appeal is warranted only when the movant demonstrates the existence of 'exceptional circumstances' . . . ."). This oversight is not surprising because there are no exceptional circumstances here.

---

[18] As to Old GM, Movants' Complaint asserted only that the Subject Tire was "designed in part" by Old GM. *See* Complaint, ¶¶ 12, 34. Whether a tire was "designed in part" by Old GM is completely irrelevant to whether the claim at issue constitutes an Assumed Liability under the Sale Agreement. Indeed, at the hearing on the Directional Motion, Movants' counsel could not "point [the Bankruptcy Court] to the specific language that you believe shows that New GM assumed liability for your client's claim." *See* April 13 Transcript, at 5:2-4.

11

30. Movants filed the Directional Motion in the Bankruptcy Court because they were ordered to do so by the State Court, and the Bankruptcy Court denied their Motion. Now that the State Court has the necessary guidance requested from the Bankruptcy Court, the State Court should be in position to rule on Movants' Default & Misnomer Motion. Regardless, this case does not present exceptional circumstances for an interlocutory appeal.

## CONCLUSION

31. Based on the foregoing, Movants have failed to satisfy the requirements necessary for the extraordinary relief of an interlocutory appeal. Accordingly, their Motion seeking leave to appeal the BC Order should be denied.

WHEREFORE, New GM respectfully requests that the Court (i) deny the relief requested in the Motion and (ii) grant it such other and further relief as is just and proper.

Dated: New York, New York
      May 13, 2016               KING & SPALDING LLP

By: /s/ Arthur Steinberg
    Arthur Steinberg
    Scott Davidson
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Counsel to General Motors LLC*

12