# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.,*<br><br>f/k/a General Motors Corp., *et al.,*<br><br>Debtors. | FOR PUBLICATION<br><br>Case No. 09-50026 (MG)<br><br>(Jointly Administered) |

**MEMORANDUM OPINION AND ORDER DETERMINING THAT THE
AUTOMATIC STAY APPLIES TO STATE COURT ACTION**

*A P P E A R A N C E S:*

HARRIS PENN LOWRY LLP
*Attorneys for Marlos L. Chenault and Shayrika L. Chenault*
400 Colony Square
1201 Peachtree Street NE Suite 900
Atlanta, GA 30361
By:  Jeffrey R. Harris, Esq. (admitted *pro hac vice*)
      Madeline McNeeley, Esq. (admitted *pro hac vice*)

KING & SPALDING LLP
*Attorneys for General Motors LLC*
1185 Avenue of the Americas
New York, NY 10036
By:  Arthur J. Steinberg, Esq.
      Scott I. Davidson, Esq.

      and

KIRKLAND & ELLIS LLP
*Attorneys for General Motors LLC*
300 North LaSalle
Chicago, IL 60654
By:  Richard C. Godfrey, Esq. (admitted *pro hac vice*)
      Andrew B. Bloomer, Esq. (admitted *pro hac vice*)

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Marlos L. Chenault and Shayrika L. Chenault (the "Plaintiffs") filed a *Motion for Determination of Applicability of Automatic Stay* (the "Motion," ECF Doc. # 13611). General

Motors LLC ("New GM") filed the *Objection by General Motors LLC to Motion for Determination of Applicability of Automatic Stay Filed by Marlos L. Chenault and Shayrika L. Chenault* (the "Objection," ECF Doc. # 13612). The Plaintiffs filed a reply in support of the Motion (the "Reply," ECF Doc. # 13617).

The Plaintiffs seek an order determining that the automatic stay does not apply to product liability claims (the "State Court Claims") that they are asserting against New GM in the case styled *Chenault v. Continental AG, et al.*, No. 12EV016009J (the "State Court Action"), State Court of Fulton County, Georgia (the "State Court").

For the reasons explained below, the Plaintiffs' Motion is **DENIED**. New GM is *not* a successor in interest to General Motors Corporation ("Old GM"); it is a completely separate legal entity from Old GM. The filing of Plaintiffs' State Court Claims against Old GM violated the automatic stay. And, New GM did *not* assume liability for Plaintiffs' claims.

## I. BACKGROUND

### A. State Court Action

On October 18, 2012, the Plaintiffs initiated the State Court Action by filing a complaint (the "Complaint," Reply Ex. B), naming Old GM and a tire manufacturer, among others, as defendants. (Obj. ¶ 7.) The Complaint alleges that a defect in a tire they purchased from a tire shop and placed on their 2005 GMC Envoy Denali (a vehicle manufactured by Old GM) caused the tire to have a tread separation that resulted in a crash on January 29, 2011. (*Id.* (citing Compl. ¶ 10).) The Plaintiffs do not allege that Old GM sold the tire with the vehicle, only that the defective tire was designed in part by Old GM as a component part for Old GM manufactured light passenger trucks. (Compl. ¶ 12.) New GM, however, disputes this fact, contending that Old GM did not design the tire. (Obj. ¶ 7.)

2

In both the caption and body of the Complaint, the Plaintiffs name Old GM as a defendant. (*Id.*) New GM was not identified or referred to anywhere in the Complaint. (*Id.*) On October 18, 2012, a summons (the "Summons," Obj. Ex. D) was issued identifying "General Motors Corporation" as the named defendant. (*Id.* ¶ 8.) On October 22, 2012, the Plaintiffs attempted service of the Summons and the Complaint. (*Id.* ¶ 9.) An affidavit of service (Obj. Ex. E) filed in the State Court Action on April 3, 2013 indicates that service was not attempted on the registered agent for process identified in the Complaint. (*Id.*) Instead, New GM contends that the Summons and Complaint were improperly delivered to Corporation Service Company ("CSC") of Cobb County, New GM's registered agent. (*Id.*)

CSC rejected Plaintiffs' attempted service and sent a "Rejection of Service of Process" notification letter (Obj. Ex. F) to Plaintiffs on October 22, 2012, indicating that service of process for the party served, Old GM, would not be forwarded. (*Id.* ¶ 10.) New GM contends that it was not served with process or otherwise notified of this action at any time within the statute of limitations. (*Id.*)

On April 3, 2013, the Plaintiffs filed a motion for entry of default judgment against Old GM. (the "First Motion for Default," Obj. Ex. G.) New GM contends that the First Motion for Default erroneously stated that "the Summons and Complaint were served upon the registered agent for [New GM], the successor in interest of [Old GM]" and that "Defendant [Old GM] failed to Answer Plaintiffs' Complaint within thirty (30) days within service thereof." (Obj. ¶ 11.) New GM maintains that the First Motion for Default was not served on New GM. (*Id.*) On the same day, the State Court denied the First Motion for Default, holding Old GM was not yet in default. (Obj. Ex. H.)

3

On May 23, 2013, the Plaintiffs filed a second motion for entry of default judgment against Old GM. (the "Second Motion for Default," Obj. Ex. I.) The Second Motion for Default remains outstanding; New GM maintains that it was never served with a copy of the Second Motion for Default. (Obj. ¶ 12.)

On November 10, 2014, counsel for the Motors Liquidation Company GUC Trust, responsible for the administration of the remaining assets of Old GM, wrote a letter (Obj. Ex. J) to the State Court arguing that the Plaintiffs' claims against Old GM were enjoined and requesting that Old GM be dismissed from the State Court Action. (*Id.* ¶ 13.) On July 24, 2015, the Plaintiffs filed with the State Court their *Motion for Entry of Judgment and for Correction of Misnomer*. (the "Default and Misnomer Motion," Obj. Ex. K.) In this motion, the Plaintiffs asked the State Court to enter a default judgment against New GM. (*Id.*) New GM contends that the Default and Misnomer Motion wrongly asserts that the Plaintiffs have a claim against New GM as the "successor-in-interest" to Old GM. (Obj. ¶ 14.) Additionally, New GM contends that the Default and Misnomer Motion claims that the Complaint "mistakenly referred to New GM by the misnomer 'General Motors Corporation' instead of its actual name 'General Motors LLC,'" and asked the State Court to correct this misnomer and enter a default judgment against New GM. (*Id.*) New GM was served with a copy of the Default and Misnomer Motion by regular mail through its registered agent in Delaware on July 28, 2015. (*Id.*)

On August 14, 2015, New GM filed an opposition (Obj. Ex. M) to the Default and Misnomer Motion in the State Court, arguing that New GM was never a named defendant in the Complaint, was never properly served in the State Court Action, and was never in default in the State Court Action. (Obj. ¶ 15.) New GM further contended that the entry of default against it

4

would violate its due process rights and orders of this Court because New GM is a completely separate and distinct legal entity from Old GM. (*Id.*)

### B. State Court Directional Order

On September 28, 2015, the State Court issued a directional order (the "Directional Order," Mot. Ex. A), instructing the Plaintiffs to seek a ruling from this Court regarding (1) "the nature of the relationship between [Old GM] and [New GM]," (2) "whether or not the claims herein survive or are barred for any reason," and (3) "whether or not the bankruptcy stay applies in this case." (Directional Order at 2.)

### C. Sale Order and Sale Agreement

On June 1, 2009, Old GM commenced its bankruptcy case in this Court. (Obj. ¶ 18.) On the same day, it filed a motion seeking approval of the original version of the sale agreement (the "Sale Agreement") that would sell substantially all of its assets to New GM's predecessor (the "Sale"). (*Id.*) The Sale Agreement was amended and the Court entered the Sale Order approving the Sale on July 5, 2009. (*Id.*) The Sale closed on July 10, 2009 (the "Closing Date"). (*Id.*)

In the decision approving the Sale Agreement and authorizing the Sale, the Court found that the ownership of New GM would be different from that of Old GM. *See In re Gen. Motors Corp.*, 407 B.R. 463, 482 (Bankr. S.D.N.Y. 2009). Additionally, the order authorizing the Sale (the "Sale Order," ECF Doc. # 2968) provided that "[t]he Purchaser is a newly-formed Delaware corporation that, as of the date of the Sale Hearing, is wholly-owned by the U.S. Treasury." (Sale Order ¶ R.)

5

The Court held that Old GM had the legal basis under section 363(f) of the Bankruptcy Code to sell its assets "free and clear" of successor liability claims. *See Gen. Motors Corp.*, 407 B.R. at 505–06. Additionally, the Sale Order provides:

> The Purchaser shall not be deemed, as a result of any action taken in connection with the MPA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, to: (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Purchased Assets from and after the Closing); (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted, or unasserted, fixed or contingent, liquidated or unliquidated.

(Sale Order ¶ 46.)

The Sale Order also contained an injunction to prevent assertion of successor liability claims against New GM:

> [A]ll persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against or in a Seller or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Sellers, the Purchased Assets, the operation of the Purchased Assets prior to the Closing, or the 363 Transaction, are forever barred, estopped, and permanently enjoined (with respect to future claims or demands based on exposure to asbestos, to the fullest extent constitutionally permissible) from asserting against the Purchaser, its successors or assigns, its property, or the

6

> Purchased Assets, such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.

(*Id.* ¶ 8; *see also id.* ¶ 47.)

The Court also found that the purchaser would not have consummated the Sale Agreement without the no successor liability finding. (*See* Sale Order ¶ DD.)

### D.     Automatic Stay and Confirmation Order

As of June 1, 2009, the automatic stay of the Bankruptcy Code stayed any new or further action against Old GM. The order confirming Old GM's chapter 11 plan (the "Confirmation Order," ECF Doc. # 9941) provides that all injunctions or stays arising under or entered during Old GM's chapter 11 case under sections 105 or 362 of the Bankruptcy Code, or otherwise, remain in place until the closing of the chapter 11 case. (Confirmation Order ¶ 53.) The chapter 11 case of Old GM is still open. (Obj. ¶ 27.)

## II.     PARTIES' POSITIONS

### A.     Plaintiffs' Position

The Plaintiffs request that the Court enter an order determining that the automatic stay does not apply to their claims against New GM in the State Court Action. (Mot. at 4.) The Plaintiffs argue that because the subject vehicle (the vehicle involved in the car crash) was manufactured by Old GM before the Closing Date, but the Plaintiffs' claims did not arise until January 29, 2011, after the closing date, Plaintiffs have valid claims against New GM, which is Old GM's successor-in-interest insofar as the claims are concerned. (*Id.* at 6.) The Plaintiffs state that they do not purport to have a claim against Old GM.

The Plaintiffs were aware that Old GM filed a voluntary bankruptcy petition in this Court and sold substantially all of its assets to New GM. (*Id.* at 5.) Plaintiffs argue that, as part of the

sale, New GM assumed liability to third parties for all product liability claims arising after the Closing Date for products manufactured before the Closing Date and that this assumption of liability includes their Claims against New GM in the State Court Action. (*Id.*)

The Plaintiffs argue that (1) they are not potential creditors of Old GM, (2) Old GM has no interest in the State Court Action, (3) the State Court Action has no connection to these bankruptcy proceedings, and (4) the State Court Action does not implicate the assets of Old GM. (*Id.* at 6.) Therefore, the Plaintiffs argue that the automatic stay has no bearing on suits against New GM, including the State Court Action. (*Id.*) The Plaintiffs assert that they sought to name New GM as a defendant in the State Court Action. (*Id.*) However, the Plaintiffs contend that the Complaint mistakenly refers to New GM by the "misnomer" of "General Motors Corporation," instead of "General Motors Company" or "General Motors LLC." (*Id.*) The Plaintiffs argue that the State Court has expressed "concern" whether the Plaintiffs' claims exist against Old GM or New GM and whether the instant bankruptcy proceedings involving Old GM bar or stay Plaintiffs' claims. (*Id.* at 6–7.)

### B. New GM's Position

New GM argues that (i) it is not the successor to Old GM since they are separate and distinct entitles; (ii) the Complaint against Old GM violated the automatic stay, rendering it void *ab initio*; and (iii) the automatic stay applies to the State Court Action.

First, New GM contends that it is not the successor-in-interest to Old GM. (Obj. ¶ 30.) New GM argues that this Court has repeatedly made clear that New GM is not the successor-in-interest to Old GM and that the two entities are separate and distinct. (*Id.*) New GM cites, among other things, to the Sale Order and previous decisions of this Court. (*Id.* ¶¶ 30–33.)

Second, New GM contends that the Complaint violated the automatic stay, rending it void *ab initio*, because the automatic stay was in effect when the Plaintiffs filed the claims against Old GM. (*Id.* ¶¶ 39–42.)

Third, New GM contends that the automatic stay applies to the State Court Action. It urges the Court to enter an order holding that as of this date, the chapter 11 case for Old GM is still open, the automatic stay is in effect and would have at all times been applicable to the claims alleged against Old GM in the Complaint. (Obj. ¶ 46.)

### III. DISCUSSION

The Plaintiffs are attempting to bring a product liability claim against New GM as the successor to Old GM on the theory that New GM expressly assumed certain product liability claims in the Sale. Addressing the questions posed by the State Court, first, the record in this bankruptcy case and the prior decisions of this Court make it abundantly clear that New GM is *not* a successor in interest to Old GM. *See In re Motors Liquidation Co.*, 541 B.R. 104, 126 (Bankr. S.D.N.Y. 2015) (finding "offensive" allegations that assert that New GM is the successor to Old GM). New GM is a completely separate legal entity from Old GM. *See In re Gen. Motors Corp.*, 407 B.R. 463, 482 (Bankr. S.D.N.Y. 2009)). New GM acquired the assets of Old GM "free and clear" of successor liability claims. *Id.* at 505–06. The Sale Order bars and permanently enjoins anyone "***from asserting against [New GM] . . . such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.***" (Sale Order ¶ 8 (emphasis added).) Indeed, the Court has prohibited plaintiffs from alleging that New GM is the successor to Old GM. (*See* Judgement, entered December 4, 2015, ECF Doc. # 13,563 ¶ 16 (stating that "[a]llegations that speak of New GM as the successor of Old GM (e.g., allegations that refer to New GM as the 'successor of,' a

9

09-50026-mg Doc 13618 Filed 04/15/16 Entered 04/15/16 08:07:26 Main Document Pg 10 of 11

'mere continuation of,' or a 'de facto successor of' of Old GM) are proscribed by the Sale Order, April Decision and June Judgment"); *see id.* ¶ 17 (stating that "[a]llegations that do not distinguish between Old GM and New GM (*e.g.*, referring to 'GM' or 'General Motors'), or between Old GM vehicles and New GM vehicles (*e.g.*, referring to 'GM-branded vehicles') . . . are proscribed by the Sale Order, April Decision and June Judgment").)

Second, the assertion of Plaintiffs' claims in the State Court Action against Old GM violated the automatic stay, which remains in effect. The Confirmation Order provides that all injunctions or stays arising under or entered during Old GM's chapter 11 case under sections 105 or 362 of the Bankruptcy Code, or otherwise, remain in full force and effect until the closing of the chapter 11 case. (*See* Confirmation Order ¶ 53.)

Third, New GM did *not* assume liability for Plaintiffs' claims. Based on the allegations in the Complaint, the allegedly defective tire was not manufactured, sold or delivered by Old GM, prerequisites for assumed product liabilities. The Plaintiffs allege that because Old GM manufactured the subject vehicle before the Closing Date, but the Plaintiffs' claims did not arise until January 29, 2011, after the Closing Date, Plaintiffs have valid claims against New GM. The Sale Order expressly provides that, *except for the Assumed Liabilities* (as defined in the Sale Order and Sale Agreement), the purchaser assumed no liabilities that (i) arose before the Closing Date, (ii) related to the production of vehicles prior to the closing date, (iii) were otherwise assertable against the Debtors, or (iv) related to the purchased assets prior to the Closing Date. (*See* Sale Order ¶ 46.) The Assumed Liabilities include certain Product Liabilities (as defined in the Sale Agreement), but the Plaintiffs do *not* assert such a claim. Product Liabilities are defined as, among other things, liabilities to third parties for component parts of motor vehicles "manufactured, sold or delivered by Sellers." (Sale Agreement § 2.3(a)(ix).) Here, while the

10

Plaintiffs allege that the tire that caused the accident was designed by Old GM—which New GM disputes—the Plaintiffs do not allege that the tire was "manufactured, sold or delivered by" Old GM. (*See* Compl. ¶ 12.) Instead, the Plaintiffs allege that the tire was purchased from Defendant Hayward Brown. (Compl. ¶ 15.) As such, the Plaintiffs' claims against New GM in the State Court Action (to the extent that the Plaintiffs can do so) do not raise Product Liabilities assumed by New GM. Accordingly, successor liability claims are barred by the Sale Order. (*See* Sale Order ¶ 8.)

### IV. CONCLUSION

For the reasons explained above, the Plaintiffs' Motion is **DENIED.** New GM is not the successor to Old GM. New GM did not assume liability for Plaintiffs' claims. The Plaintiffs' State Court Action violated the automatic stay, which continues in force, and applies to the State Court Action.

**IT IS SO ORDERED.**

Dated:   April 15, 2016
         New York, New York

                                        *Martin Glenn*
                                        MARTIN GLENN
                                        United States Bankruptcy Judge

11