# Exhibit K

**Hearing Date: April 13, 2016 at 10:00 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur J. Steinberg
Scott I. Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                              :
                                                    :  Chapter 11
                                                    :
MOTORS LIQUIDATION COMPANY, *et al.*,               :  Case No. 09-50026 (MG)
      f/k/a General Motors Corp., *et al*.      :
                                                    :  (Jointly Administered)
                                                    :
            Debtors.                                :
---------------------------------------------------------------x

**OBJECTION BY GENERAL MOTORS LLC TO MOTION FOR
DETERMINATION OF APPLICABILITY OF AUTOMATIC STAY
<u>FILED BY MARLOS L. CHENAULT AND SHAYRIKA L. CHENAULT</u>**

DMSLIBRARY01\28583275.v1

# TABLE OF CONTENTS

| | | Page |
|---|---|---:|
| **PRELIMINARY STATEMENT** | | 1 |
| **BACKGROUND** | | 4 |
| A. | Movants' State Court Case | 4 |
| B. | State Court Directional Order and the Instant Motion | 7 |
| C. | The Sale Order and Injunction and Sale Agreement | 8 |
| D. | The December 2015 Judgment | 9 |
| E. | The Automatic Stay, the Confirmation Order and the Bar Date Order | 10 |
| **OBJECTION** | | 11 |
| A. | The Sale Order and Injunction, as Confirmed by Recent Judgments And Decisions, Conclusively Demonstrates that New GM is Not the Successor to Old GM and that They are Separate and Distinct Entities, not a Mere Misnomer | 11 |
| B. | Movants' Complaint Against Old GM Violated the Automatic Stay Rendering the Complaint Void *Ab Initio* | 14 |
| C. | The Bankruptcy Stay Applies in the Underlying Action. | 15 |

DMSLIBRARY01\28583275.v1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Gen. Motors Corp.*,
  407 B.R. 463 (Bankr. S.D.N.Y. 2009) ................................................................................... 8

*In re Motors Liquidation Co.*,
  541 B.R. 104 (Bankr. S.D.N.Y. 2015) ................................................................................. 12

*Khawaja v. Lane Co.*,
  239 Ga. App. 93 (1999) ....................................................................................................... 13

*Miller v. Lomax*,
  2015 Ga. App. LEXIS 390 (Ga. Ct. App. July 6, 2015) ...................................................... 14

*Odion v. Varon*,
  312 Ga. App. 242 (2011) ..................................................................................................... 14

*Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*,
  Adv. Proc. No. 09–09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) ................. 12

**Statutes**

11 U.S.C. § 362 ............................................................................................................................. 3

DMSLIBRARY01\28583275.v1

General Motors LLC ("**New GM**"), by and through its undersigned counsel, hereby submits this objection ("**Objection**") to the *Motion for Determination of Applicability of Automatic Stay*, filed by Marlos L. Chenault and Shayrika L. Chenault (collectively, "**Movants**"), dated March 2, 2016 ("**Motion**")[1] and, in support thereof, represents as follows:

## PRELIMINARY STATEMENT

1. In October 2012, Movants commenced a product liability action ("**Complaint**")[2] in a Georgia state court ("**State Court**") against General Motors Corporation ("**Old GM**") and a tire manufacturer alleging that a defective tire (not manufactured by Old GM) that they purchased from a tire shop (unrelated to Old GM) and placed on their 2005 GMC Envoy Denali (a vehicle manufactured by Old GM) caused the tire to have a tread separation that resulted in a crash on January 29, 2011. Almost three years later, and after settling their claims against the manufacturer of the alleged defective tire, Movants sought a default judgment in the State Court against *New GM*. In their motion for default, Movants claimed for the first time that they had *mistakenly* named Old GM instead of New GM as a defendant in their Complaint. Movants asked the State Court to enter a default judgment against New GM on the basis that New GM was the "successor in interest" to Old GM, and that Old GM was a mere misnomer for New GM.

2. New GM opposed the motion for default, arguing, among other things, that the relief sought by Movants violated the Bankruptcy Court's Sale Order and Injunction[3]—a final

---

[1] Movants are seeking declaratory relief which should have been requested through an adversary proceeding. However, since the Bankruptcy Court has already addressed the issues raised in the Motion numerous times, New GM does not object to Movants proceeding by way of motion instead of a complaint.

[2] A copy of the Complaint is annexed hereto as **Exhibit "A."**

[3] The "**Sale Order and Injunction**" refers to the Bankruptcy Court's Order entered on July 5, 2009 approving the sale of assets from Old GM to New GM. The full title of the Sale Order and Injunction is *Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief*. A copy of the Sale Order and Injunction, and the accompanying Sale Agreement (as defined herein), is annexed hereto as **Exhibit "B."**

1

and non-appealable order binding on Movants—which unequivocally states that New GM is not the successor in interest to Old GM.

3. By Order dated September 28, 2015 ("**Directional Order**"), the State Court directed Movants to seek a ruling from this Court regarding: (1) "the nature of the relationship between [Old GM] and [New GM]" (specifically "whether or not these two companies are interrelated sufficiently so that one is a mere misnomer of the other"); (2) "whether or not the claims [alleged] against General Motors Corporation [Old GM] are barred in [the underlying] case;" and (3) "whether or not the bankruptcy stay applies" to the claims asserted against Old GM in the underlying case. Directional Order (attached as Exhibit "A" to Movants' Motion), at 2.

4. The Motion does not seek a ruling on the issues directed by the State Court. Instead, Movants attempt to have this Court resolve three different, self-serving, hypothetical questions: (1) whether Movants could have alleged product liability claims against New GM in October 2012 had they named New GM, instead of Old GM, as a defendant in their Complaint; (2) whether the Bankruptcy Court's prior Orders would have barred such claims, or other unspecified claims, had New GM, instead of Old GM, been named as a defendant in the Complaint; and (3) whether the automatic stay would have applied if Movants had named New GM, instead of Old GM, as a defendant in the Complaint.

5. Movants have attempted to re-frame the issues to be decided because they know that the answers to the State Court's questions would bar their meritless attempt to recover from New GM. The State Court asked whether Old GM and New GM were the same entity for purposes of determining whether the defendant defaulted by not answering the Complaint. It did not ask Movants' question as to which of the two separate entities might ultimately be liable for

2

the claims asserted in the Complaint. The procedural context as to how this issue arose in the State Court illustrates the point. Movants sought to have a default judgment entered against New GM even though New GM is named nowhere in the Complaint, and has never been a party in the lawsuit during the three-and-a-half years it has been pending. Movants requested relief is based on a "successor liability" legal predicate that the Bankruptcy Court has expressly rejected on multiple occasions. The entry of a default judgment against New GM under these circumstances would not only violate due process, it would also violate several of the Bankruptcy Court's prior Orders, Decisions and Judgments. Movants apparently understand what they have done in the State Court is wrong on multiple levels. Hence, they have transparently avoided asking the Bankruptcy Court to answer the questions posed by the State Court. For those reasons, and as more fully set forth below, Movants should be prohibited from proceeding in any manner with such arguments.

6. New GM requests that this Court deny the Motion and enforce the Bankruptcy Court's prior Orders by entering the proposed order attached hereto as **Exhibit "C,"** which addresses the three issues raised by the State Court:

(i) New GM is not a successor in interest to Old GM, and "General Motors Corporation" is not a mere misnomer for "General Motors LLC." Rather, New GM is a completely separate and distinct legal entity from Old GM. Accordingly, Movants are barred, estopped, and permanently enjoined from asserting that New GM is the successor in interest to Old GM.

(ii) The alleged claims Movants asserted against Old GM in their Complaint violated the automatic stay provision of Section 362 of the Bankruptcy Code. Accordingly, the alleged claims against Old GM in the Complaint were void *ab initio*.

(iii) As of this date, the Chapter 11 case for Old GM's bankruptcy is still open, and therefore the automatic stay as to Old GM remains in effect and would have at all times been applicable to any claims asserted against Old GM in the Complaint.

3

DMSLIBRARY01\28583275.v1

## BACKGROUND

A. **Movants' State Court Case**

7. On October 18, 2012, Movants filed a lawsuit in the State Court naming Old GM (not New GM) as one of the Defendants ("**Chenault Lawsuit**"). Movants' Complaint alleges, among other things, that a defect in a tire that they purchased from a tire shop and placed on their 2005 GMC Envoy Denali (a vehicle manufactured by Old GM) caused the tire to have a tread separation that resulted in a crash on January 29, 2011.[4] Complaint, ¶ 10. Significantly, the tire at issue was not sold by Old GM with the vehicle, but was subsequently purchased from a third party unrelated to Old GM or New GM. Movants named only Old GM (and not New GM) as a defendant in both the caption and body of their Complaint.

8. New GM was not identified or referred to anywhere in the Complaint. In contrast, the Complaint was clearly directed at Old GM. It referred to Old GM as the entity that allegedly designed the subject tire. *See* Complaint, at ¶¶ 34, 36. While that statement is not true (the tire was not "designed" by Old GM), it is undeniable that Movants could not have been referring to New GM since the alleged "design" conduct occurred well before the 363 Sale. A summons ("**Summons**")[5] was issued on October 18, 2012 that identified "***General Motors Corporation***" (*i.e.*, Old GM) as the named defendant.

9. On October 22, 2012, Movants attempted service of the Summons and Complaint. An Affidavit of Service,[6] which was filed by Movants on April 3, 2013 in the State Court, indicated that service was not attempted on the registered agent for process identified in the

---

[4] Movants also asserted a claim against the manufacturer of the allegedly defective tire. At no time while Movants were vigorously pursuing their claims against the tire manufacturer did they move to add New GM as a defendant in this case. This appears to have been strategic. Movants waited until after they had settled their claims against the tire manufacturer before seeking any relief against New GM in the State Court. That litigation tactic has backfired on them since the statute of limitations expired with respect to claims against New GM.
[5] A copy of the Summons is attached hereto as **Exhibit "D."**
[6] A copy of the Affidavit of Service is annexed hereto as **Exhibit "E."**

4

DMSLIBRARY01\28583275.v1

Complaint. Instead, the Summons and Complaint were improperly delivered to Corporation Service Company ("**CSC**") of Cobb County, New GM's registered agent.

10. Because CSC was not the registered agent for Old GM (the named defendant), CSC rejected Movants' attempted service and sent a "Rejection of Service of Process" notification letter ("**Service Rejection Letter**")[7] to Movants on that same day, October 22, 2012. CSC's letter informed Movants' counsel that service of process for the party served—Old GM— would not be forwarded. Because it was not named as a defendant, New GM was not served with process or otherwise notified of this action at any time within the statute of limitations.

11. Although Movants' counsel was immediately informed that their attempted service had been rejected, Movants made no effort to amend their Complaint or otherwise properly effectuate service.[8] Instead, Movants eventually filed a Motion for Entry of Default Judgment against Old GM on April 3, 2013 ("**First Motion for Default**").[9] The First Motion for Default, among other things, erroneously stated that "the Summons and Complaint were served upon the registered agent for [New GM], *the successor in interest of* [Old GM]" and that "Defendant [Old GM] failed to Answer Plaintiffs' Complaint within thirty (30) days within service thereof." *Id.* (emphasis added)]. The First Motion for Default was not served on New GM.

12. By order dated April 3, 2013 ("**First Motion Order**"),[10] the State Court denied Movants' First Motion for Default against Old GM. On May 23, 2013, Movants filed a second Motion for Entry of Default Judgment ("**Second Motion for Default**")[11] against Defendant Old

---

[7] A copy of the Service Rejection Letter is annexed hereto as **Exhibit "F."**
[8] Movants have provided no evidence that they ever attempted to serve Old GM's registered agent for service of process with a copy of their Complaint.
[9] A copy of the First Motion for Default is annexed hereto as **Exhibit "G."**
[10] A copy of the First Motion Order is annexed hereto as **Exhibit "H."**
[11] A copy of the Second Motion for Default is annexed hereto as **Exhibit "I."**

5

GM, again erroneously asserting the same reasons as set forth in the First Motion for Default—that the Summons and Complaint were served upon the registered agent for New GM, the *successor in interest* of Old GM. The Second Motion for Default was also not served on New GM.[12]

13. On or about November 10, 2014, counsel representing the Motors Liquidation Company GUC Trust, which is responsible for administering the remaining assets of Old GM, wrote a letter ("**November 10, 2014 GUC Trust Letter**")[13] to the State Court explaining that Movants' claims against Old GM were enjoined and requesting that Old GM be dismissed from the action.

14. Eight months later, on July 24, 2015, Movants filed with the State Court their *Motion for Entry of Judgment and for Correction of Misnomer* ("**Default & Misnomer Motion**").[14] In this motion, Movants for the first time asked the State Court to enter a default judgment against Non-Party New GM—not Old GM. The Default & Misnomer Motion wrongly asserts that Movants have a claim against New GM *as the "successor-in-interest" to Old GM*. The Default & Misnomer Motion also claims that their Complaint "mistakenly referred to New GM by the misnomer '**General Motors Corporation**' instead of its actual name 'General Motors LLC,'" and asked the State Court to correct the alleged "misnomer" and enter a default judgment against New GM. New GM was served with a copy of the Default & Misnomer Motion by regular mail through its registered agent, not in Georgia, but in the State of Delaware on July 28, 2015. *See* Affidavit of New GM Service Coordinator, ¶ 6.[15]

---

[12] The Second Motion for Default remains outstanding.
[13] A copy of the November 10, 2014 GUC Trust Letter is annexed hereto as **Exhibit "J."**
[14] A copy of the Default & Misnomer Motion is annexed hereto as **Exhibit "K."**
[15] A copy of the Affidavit of New GM Service Coordinator is annexed hereto as **Exhibit "L."**

6

15. On August 14, 2015, New GM filed its *Non-Party General Motors LLC'S Opposition to Plaintiffs' Motion for Entry of Judgment and for Correction of Misnomer* ("**New GM Opposition**")[16] in the State Court, challenging the Default & Misnomer Motion by arguing, among other things, that New GM was never named as a defendant in the Chenault Complaint, was never properly served in the Chenault Lawsuit, and was not and never had been in default in the Chenault Lawsuit. New GM also argued that the entry of default against it would violate its due process rights and Orders of the Bankruptcy Court because New GM is a completely separate and distinct legal entity from Old GM. *See id.* ¶ 8.

B. **State Court Directional Order and the Instant Motion**

16. On September 28, 2015, the State Court issued the Directional Order, instructing Movants to seek a ruling from this Court regarding (1) "the nature of the relationship between [Old GM] and [New GM]" (specifically "whether or not these two companies are interrelated sufficiently so that one is a mere misnomer of the other"); (2) "whether or not the claims [alleged] against General Motors Corporation [Old GM] are barred in [the underlying] case;" and (3) "whether or not the bankruptcy stay applies in [the underlying] case" to the claims asserted against Old GM. *See* Directional Order, at 2.

17. Five months later, Movants filed the instant Motion mischaracterizing the State Court's Directional Order, and asking this Court to rule on three irrelevant, self-serving and hypothetical questions regarding what impact the Bankruptcy Court's Sale Order and Injunction would have had on Movants' claims had Movants named New GM, instead of Old GM, as a defendant in their Complaint.

---

[16] A copy of the New GM Opposition (without exhibits) is annexed hereto as **Exhibit "M."**

7

DMSLIBRARY01\28583275.v1

**C.    The Sale Order and Injunction and Sale Agreement**

18.    On June 1, 2009, Old GM commenced its bankruptcy case in the Bankruptcy Court. On that same day, it filed a motion seeking approval of the original version of the sale agreement ("**Sale Agreement**"), pursuant to which substantially all of Old GM's assets were to be sold to New GM's predecessor ("**363 Sale**"). The Sale Agreement was subsequently amended, and the Sale Order and Injunction was entered on July 5, 2009; the 363 Sale closed on July 10, 2009.

19.    In its Sale Decision approving the Sale Agreement and authorizing the 363 Sale (published at *In re Gen. Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009)), the Bankruptcy Court found that the ownership of New GM would be totally different from that of Old GM. *Id.* at 482. Similarly, the Sale Order and Injunction found that "[t]he Purchaser is a newly-formed Delaware corporation that, as of the date of the Sale Hearing, is wholly-owned by the U.S. Treasury." Sale Order and Injunction, ¶ R.

20.    With respect to claims based on successor liability, the Bankruptcy Court held that Old GM had the legal basis under section 363(f) of the Bankruptcy Code to sell its assets *"free and clear" of successor liability claims*. *See Gen. Motors Corp.*, 407 B.R. at 505-06 (emphasis added). In this regard, the Sale Order and Injunction provides as follows:

> The Purchaser shall not be deemed, as a result of any action taken in connection with the MPA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, *to: (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Purchased Assets from and after the Closing); (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors*. *Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities* of any kind or character for any claims, *including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity* . . . and products . . . liability, whether known or unknown as of the

8

Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order and Injunction, ¶ 46 (emphasis added).

21. Anticipating the possibility of wrongful claims being made against New GM, the Sale Order and Injunction further states:

> [A]ll persons and entities . . . holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including ***rights or claims based on any successor or transferee liability***, ***against [Old GM]*** or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing . . . ***are forever barred, estopped, and permanently enjoined . . . from asserting against [New GM] . . . such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.***

Sale Order and Injunction, ¶ 8 (emphasis added); *see also id.* ¶ 47.

22. Importantly, the Bankruptcy Court also found that the purchaser would not have consummated the Sale Agreement without the "no successor liability" finding. *See* Sale Order and Injunction, ¶ DD. Movants, as owners of an Old GM vehicle at the time of the 363 Sale, were bound by the "no successor liability" finding in the Sale Order and Injunction. They were also required to abide by the injunction in the Sale Order and Injunction. They willfully violated the injunction when they made the successor liability allegation in, among other things, their Default & Misnomer Motion.

D. **The December 2015 Judgment**

23. More recently, in its December 4, 2015 Judgment [Dkt. No. 13563] ("**December Judgment**"), the Bankruptcy Court described what types of allegations cannot be asserted by plaintiffs in pleadings asserting claims against New GM. Under that Judgment, plaintiffs, like Movants, are prohibited from making allegations: (i) that New GM is the successor of Old GM (no matter how phrased) (*see* December Judgment, ¶ 16); (ii) that do not distinguish between Old

9

GM and New GM (*see id.* ¶ 17); and (iii) that allege or suggest that New GM manufactured or designed an Old GM vehicle, or performed other conduct relating to an Old GM vehicle before the entry of the Sale Order and Injunction (*i.e.*, July 10, 2009) (*see id.* ¶ 18).[17]

24. Specifically, the December Judgment clearly provides as follows:

> ***Allegations that speak of New GM as the successor of Old GM (e.g. allegations that refer to New GM as the "successor of," a "mere continuation of," or a "de facto successor of" of Old GM)*** are proscribed by the Sale Order, April Decision and June Judgment, and complaints that contain such allegations **are and remain stayed,** unless and until they are amended consistent with the Decision and this Judgment.

December Judgment, ¶ 16 (emphasis added).

25. The December Judgment also holds:

> ***Allegations that do not distinguish between Old GM and New GM (e.g., referring to "GM" or "General Motors"), or between Old GM vehicles and New GM vehicles (e.g., referring to "GM-branded vehicles")*** . . . are proscribed by the Sale Order, April Decision and June Judgment, and complaints containing such allegations are and remain stayed, unless and until they are amended consistent with the Decision and this Judgment.

*Id.*, ¶ 17.

### E. The Automatic Stay, the Confirmation Order and the Bar Date Order

26. As of June 1, 2009, any new or further action against Old GM was stayed pursuant to the "automatic stay" provision of the Bankruptcy Code.

27. The Bankruptcy Court's Plan Confirmation Order held that all injunctions or stays arising under or entered during Old GM's Chapter 11 case under sections 105 or 362 of the Bankruptcy Code, or otherwise, were to remain in full force and effect until the closing of the Chapter 11 case. *See* Confirmation Order, ¶ 53. As of this date, the Chapter 11 case for Old

---

[17] Complaints containing allegations highlighted in paragraphs 16-18 of the December Judgment "are and remain stayed, unless and until they are amended consistent with the [November] Decision and this Judgment." December Judgment, ¶¶ 16, 17, 18.

10

GM's bankruptcy is still open, and therefore the automatic stay remains in effect and has been in effect at all times since June 1, 2009.

28. The Order approving the bar date for filing proofs of claim GM ("**Bar Date Order**") set November 30, 2009 as the bar date for filing proofs of claim against New York. The Bar Date Order further provided as follows:

> any holder of a Claim against the Debtors that is required but fails to file a Proof of Claim in accordance with this Bar Date Order on or before the applicable Bar Date shall be forever barred, estopped and enjoined from asserting such Claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect thereto), and each of the Debtors and their respective chapter 11 estates, successors, and property shall be forever discharged from any and all indebtedness or liability with respect to such Claim, and such holder shall not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of such Claim, or receive further notices with respect to any of the Debtors' chapter 11 cases[.]

Bar Date Order, at 5.

29. Movants never filed a proof of claim before the bar date. At no time have Movants ever sought authorization to file a late proof of claim in the Bankruptcy Court.

**OBJECTION**

**A. The Sale Order and Injunction, as Confirmed by Recent Judgments And Decisions, Conclusively Demonstrates that New GM is Not the Successor to Old GM and that They are Separate and Distinct Entities, not a Mere Misnomer**

30. The first issue raised by the State Court in its Directional Order is "(1) the nature of the relationship between [Old GM] and [New GM]," specifically "whether or not these two companies are interrelated sufficiently so that one is a mere misnomer of the other." The Bankruptcy Court has repeatedly made it clear that New GM is not the successor-in-interest to Old GM and that New GM and Old GM are separate and distinct legal entities.

31. The Sale Order and Injunction provides that New GM, at the time of the 363 Sale, was "a newly-formed Delaware corporation that, as of the date of the Sale Hearing, is wholly-

11

DMSLIBRARY01\28583275.v1

09-50026-mg Doc 13612-6 Filed 05/23/16 Entered 05/23/16 16:46:09 Main Document Pg 15 of 19

owned by the U.S. Treasury" and that it (and not Old GM) "determined its ownership composition and capital structure." Sale Order and Injunction, ¶¶ R, U.

32. Moreover, the Sale Order and Injunction makes clear that New GM would not be liable for successor or transferee liability claims. *See id.*, ¶¶ AA, BB, DD, 6, 7, 8, 10 and 47. Critically, paragraph 46 of the Sale Order and Injunction unambiguously finds that New GM shall not: ***"(i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Purchased Assets from and after the Closing); (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors."*** (emphasis added).

33. Later decisions and judgments by the Bankruptcy Court reinforce the findings and rulings in the Sale Order and Injunction. *See, e.g.*, *In re Motors Liquidation Co.*, 541 B.R. 104, 126 (Bankr. S.D.N.Y. 2015) ("**November Decision**") (finding "offensive" allegations that assert that New GM is the successor to Old GM); December Judgment, ¶ 16 ("[a]llegations that speak of New GM as the successor of Old GM (*e.g.* allegations that refer to New GM as the "successor of," a "mere continuation of," or a "de facto successor of" of Old GM) are proscribed by the Sale Order, April Decision and June Judgment"); *see id.*, ¶ 17 ("[a]llegations that do not distinguish between Old GM and New GM (*e.g.*, referring to 'GM' or 'General Motors'), or between Old GM vehicles and New GM vehicles (*e.g.*, referring to 'GM-branded vehicles') . . . are proscribed by the Sale Order, April Decision and June Judgment"); *see also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *8 (Bankr. S.D.N.Y. Feb. 19, 2013) ("The Sale Order, by which I approved the Sale Agreement, further ensured that New GM would acquire the assets free and clear of successor or transferee liability.").

12

34. Indeed, Movants have specifically acknowledged in this Court and in pleadings filed in the State Court that Old GM is a separate and distinct entity from New GM. *See* Motion, at 5 ("Plaintiffs further understand that Motors Liquidation Company then sold substantially all of its assets to ***a new entity, New GM***, which was then called General Motors Company and is now known as General Motors LLC." (emphasis added)); Default & Misnomer Motion, at 2 ("Old General Motors then changed its name to Motors Liquidation Company and sold substantially all of its assets to a ***new, independent entity*** subsequently called General Motors Company and now known as General Motors LLC ('New GM').").

35. The Sale Order and Injunction entered by the Bankruptcy Court in July 2009, together with the Bankruptcy Court's more recent rulings, leave no doubt that New GM is not the successor to Old GM, that the two entities are separate and distinct, and that New GM cannot be held liable under any type of successor liability theory, including Movants' "successor in interest" and "misnomer" theories.

36. Movants' argument that New GM agreed to assume product liability claims under the Sale Agreement has nothing to do with the fundamental question asked by the State Court: whether New GM and Old GM were the same entity for purposes of being named as a party in a lawsuit. The answer to that question is that they clearly are not the same entity.

37. Under Georgia law, "correction of a misnomer involves no substitution of parties and does not add a new and distinct party." *Khawaja v. Lane Co.*, 239 Ga. App. 93, 94 (1999) (internal citation omitted). Thus, allowing Movants to proceed on their misnomer theory would be tantamount to holding that Old GM and New GM are ***not***, in fact, separate and distinct parties but are instead one party, a continuation of the other. Such an argument flies in the face of the

13

Bankruptcy Court's repeated rulings to the contrary and cannot be allowed to proceed in any manner—especially the indefensible consequence of a default judgment against New GM.

38. To answer the question raised by the State Court as to the relationship between New GM and Old GM, this Court should enter an Order confirming what already has been found on numerous prior occasions: that New GM is not a successor in interest to Old GM and, rather, that New GM is a completely separate and distinct legal entity from Old GM and that "General Motors Corporation" is not a mere misnomer for "General Motors LLC." Given Movants' repeated assertions to the contrary, and their blatant and continued violations of Orders from the Bankruptcy Court, this Court should also include in the Order a provision specifically enforcing the existing injunction that bars and enjoins Movants from asserting any type of claim against New GM based on a theory of successor liability.

**B. Movants' Complaint Against Old GM Violated the
   <u>Automatic Stay Rendering the Complaint Void *Ab Initio*</u>**

39. The State Court's Directional Order also instructed Movants to seek an Order from this Court regarding "whether or not the claims against General Motors Corporation are barred in [the underlying] case." Directional Order, at 2.

40. The automatic stay in Old GM's bankruptcy case remains in effect. *See* Confirmation Order, ¶ 53.

41. Under governing federal and Georgia law, Movants' Complaint asserting these barred claims against Old GM in violation of the automatic stay were "void," "without effect," and an "absolute nullity." *Miller v. Lomax*, 2015 Ga. App. LEXIS 390, *5 (Ga. Ct. App. July 6, 2015); *Odion v. Varon*, 312 Ga. App. 242, 242 (2011) ("[A]ctions filed in violation of a federal bankruptcy stay are considered void ab initio in Georgia.").

14

42. As noted above, Movants' counsel were advised that their assertion of claims against Old GM were improper by the November 10, 2014 GUC Trust Letter.

43. Therefore, to address the second issue raised by the State Court regarding whether the claims against Old GM in the underlying case were barred for any reason, this Court should enter an Order finding that Movants' alleged claims against Old GM violated the automatic stay provision of the Bankruptcy Code, and were thus void *ab initio*.[18]

## C. The Bankruptcy Stay Applies in the Underlying Action

44. The final issue in the Directional Order was "whether or not the bankruptcy stay applies in [the underlying] case" to the claims alleged against Old GM.

45. The automatic stay imposed in the Old GM bankruptcy case has been in effect since June 1, 2009, and remains in effect because the bankruptcy case remains open. Pursuant to Section 10.4 of the *Debtors' Second Amended Joint Chapter 11 Plan* [Dkt. No. 9836], "[u]nless otherwise expressly provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or

---

[18] New GM voluntarily assumed liability for certain claims arising out of post-sale accidents involving Old GM vehicles that caused personal injury, loss of life or property damage. But, Movants have not asserted in the State Court a product liability claim (as defined in the Sale Agreement) that was assumed by New GM. The reason being is that the tire at issue, which is the basis of the Complaint, was not "manufactured, sold or delivered" by Old GM to Movants. In any event, having elected to sue Old GM and not New GM and then having let the statute of limitations expire on their claims, Movants cannot now seek to substitute New GM as a defendant for purposes of seeking a default judgment or otherwise.

Moreover, even if Movants' claims had been timely asserted against New GM, and even assuming that the at least some of the claims were "assumed" by New GM, several of the allegations in their Complaint would have violated orders, judgments and decisions of the Bankruptcy Court. Specifically, any claim by Movants for punitive damages against New GM and Paragraphs 12, 34, 35, 36, 40, 41 and 42 of their Complaint would violate the terms of the December Judgment.

Additionally, Movants are Non-Ignition Switch Plaintiffs within the meaning of the December Judgment. As such, they are barred from and cannot asserting Independent Claims (a defined in the December Judgment) against New GM. In the event this action somehow proceed against New GM, which it should not, New GM reserves all of its rights.

15

DMSLIBRARY01\28583275.v1

otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases."

46. Therefore, with respect to the third issue raised by the State Court, this Court should enter an Order holding that as of this date, the Chapter 11 case for Old GM's bankruptcy is still open, and therefore the automatic stay as to Old GM remains in effect and would have at all times been applicable to any alleged claims asserted against Old GM in Movants' Complaint.

WHEREFORE, for the foregoing reasons, New GM respectfully requests that the Court enter the Proposed Order attached as **Exhibit "C,"** and grant it such other and further relief as is appropriate.

Dated: New York, New York
       March 23, 2016

                                          KING & SPALDING LLP


                                          ____/s/ Arthur Steinberg_____
                                          Arthur Steinberg
                                          Scott Davidson
                                          1185 Avenue of the Americas
                                          New York, New York 10036
                                          Telephone:   (212) 556-2100
                                          Facsimile:   (212) 556-2222

                                          -and-

                                          Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                                          Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                                          KIRKLAND & ELLIS LLP
                                          300 North LaSalle
                                          Chicago, IL 60654
                                          Telephone:   (312) 862-2000
                                          Facsimile:   (312) 862-2200

                                          *Attorneys for General Motors LLC*

16

DMSLIBRARY01\28583275.v1