```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK


                                    .    Case No. 09-50026-mg
IN RE:                              .    Chapter 11
                                    .
MOTORS LIQUIDATION COMPANY,         .    (Jointly administered)
et al., f/k/a GENERAL               .
MOTORS CORP., et al,                .    One Bowling Green
                                    .    New York, NY 10004
          Debtors.                  .
                                    .    Wednesday, April 13, 2016
. . . . . . . . . . . . . . . .     .    10:03 a.m.


     TRANSCRIPT OF MOTION TO CONFIRM TERMINATION OR ABSENCE OF
         STAY DETERMINATION OF APPLICABILITY OF STAY
                    (CC: Doc #13611,13612)
              BEFORE THE HONORABLE MARTIN GLENN
              UNITED STATES BANKRUPTCY COURT JUDGE
```

APPEARANCES:

For the Debtor:           King & Spalding LLP
                          By:  ARTHUR JAY STEINBERG, ESQ.
                               SCOTT I. DAVIDSON, ESQ.
                          1185 Avenue of the Americas
                          New York, New York 10036
                          (212)556-2100

For Marlos Chenault:      Harris Penn Lowry
                          By:  MADELINE E. MC NEELEY, ESQ.
                          1201 Peachtree Street NE, Suite 900
                          Atlanta, Georgia 30361
                          (404) 961-7650




Audio Operator:           Frances Ferguson, ECR


Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
 1         (Proceedings commence at 10:03 a.m.)
 2             THE COURT:  Please be seated.  We are in Motors
 3  Liquidation Company, 09-50026.  All right.  Who's going to
 4  argue for Chenault?
 5             MS. MC NEELEY:  Madeline McNeeley, Your Honor, with
 6  Harris Penn Lowry.
 7             THE COURT:  Okay.  Tell me your last name again.  I'm
 8  sorry.
 9             MS. MC NEELEY:  McNeeley.
10             THE COURT:  Okay.
11             MS. MC NEELEY:  Your Honor, the reason we're here is
12  because we filed a state court complaint alleging a product
13  defect in an Old GM product.  Our understanding is that New GM
14  assumed liability for those products liability claims when they
15  purchased Old GM's assets.  So --
16             THE COURT:  What do you assume that?
17             MS. MC NEELEY:  Well, they're -- well, I shouldn't
18  say I assume.  That's our understanding based on our reading of
19  the sale documents.  They assumed liability for those claims as
20  part of the purchase.
21             THE COURT:  But I thought that the assumed
22  liabilities -- the product liabilities that they assumed were
23  defined as liabilities to third person -- third parties for
24  component parts of motor vehicles, and then, "manufactured,
25  sold, or delivered by sellers."
```

1     MS. MC NEELEY:  And --

2     THE COURT:  And that doesn't apply to the tire that
3  you're complaining.

4     MS. MC NEELEY:  The tire here was manufactured as
5  original equipment for the vehicle.

6     THE COURT:  It was not manufactured by GM.  You agree
7  with that, correct?

8     MS. MC NEELEY:  Right.  It was just --

9     THE COURT:  In fact, you sued the manufacturer.

10    MS. MC NEELEY:  Right.  Our understanding is that --

11    THE COURT:  But you agree that the tire that
12 allegedly was defective was not manufactured, sold or delivered
13 by sellers, by Old GM, correct?

14    MS. MC NEELEY:  It may have been delivered by Old GM.

15    THE COURT:  You -- there is no allegation about that,
16 not one.

17    MS. MC NEELEY:  I'm --

18    THE COURT:  The tire was purchased from some third
19 party --

20    MS. MC NEELEY:  Okay.

21    THE COURT:  -- vendor.

22    MS. MC NEELEY:  I'm sorry, I misunderstood.  No --

23    THE COURT:  Don't you agree with that?

24    MS. MC NEELEY:  Yes.

25    THE COURT:  Okay.

```
 1              MS. MC NEELEY:  It was -- our clients did not
 2   purchase it.  And our reading of it was that the tire, because
 3   it was designed in part by Old GM, what -- so --
 4              THE COURT:  Let's go back to the -- Old GM.  New GM
 5   assumed certain product liabilities, okay, as defined in the
 6   sale order and only those.
 7              MS. MC NEELEY:  Okay.
 8              THE COURT:  You acknowledge that?
 9              MS. MC NEELEY:  Yes.
10              THE COURT:  Okay.  And so the question here is
11   whether, based on the allegations in the complaint, this
12   product liability claim fits specifically within the definition
13   of the assumed liabilities in the sale order, correct?
14              MS. MC NEELEY:  Yes.
15              THE COURT:  Okay.  Go ahead.
16              MS. MC NEELEY:  So our reading of it had been that
17   this was a claim on which New GM would be liable.
18              THE COURT:  Show me the language.
19              MS. MC NEELEY:  And --
20              THE COURT:  Show me the language that --
21              MS. MC NEELEY:  And --
22              THE COURT:  Wait a minute.  Show me the specific
23   language on which you relied that this is a claim that was
24   assumed by New GM.
25              MS. MC NEELEY:  Well, and if we're wrong about that,
```

1  then --
2         THE COURT: Can you answer my question? I want you
3  to point me to the specific language that you believe shows
4  that New GM assumed liability for your client's claim.
5         MS. MC NEELEY: I can't do that --
6         THE COURT: Okay.
7         MS. MC NEELEY: -- at this time, Your Honor. So --
8         THE COURT: Well, I don't know when you think you're
9  going to do that. That's why this motion -- you filed the
10 motion.
11        MS. MC NEELEY: And I apologize if we have
12 misunderstood what this assumption of liability related to.
13        THE COURT: All right.
14        MS. MC NEELEY: We're here because Judge Bessen asked
15 us to come here to get information from Your Honor about --
16        THE COURT: Well, you -- yeah, I've seen what the
17 judge asked you to get, and it looks like you were looking for
18 something different than what she asked.
19        MS. MC NEELEY: I don't think we are. I think what
20 she has asked is for information relating to how New GM and Old
21 GM are related and what claims survived the bankruptcy.
22        THE COURT: Well, I read what she asked.
23        MS. MC NEELEY: And --
24        THE COURT: I read what she asked. It's not the same
25 thing that you styled in your motion. It's not --

1    MS. MC NEELEY:  I'm sorry?

2    THE COURT:  It -- I read what she asked, and it's not
3 the same thing that you have put in your motion.

4    MS. MC NEELEY:  Well, I think her -- her order did
5 ask for a determination of the relationship between New GM and
6 Old GM.

7    THE COURT:  Okay.  Go ahead.

8    MS. MC NEELEY:  And so we just are here to try to get
9 her questions answered, and I think that the relationship
10 between New GM and Old GM is that New GM assumed liability for
11 at least some products liability claims and that --

12    THE COURT:  That's true.

13    MS. MC NEELEY:  Yes.  And that the claims that they
14 assumed liability for would not be subject to the bankruptcy
15 stay.

16    THE COURT:  Well, that's the issue.

17    MS. MC NEELEY:  And that is the issue.

18    THE COURT:  Okay, all right.  Anything else you want
19 to say?

20    MS. MC NEELEY:  No.

21    THE COURT:  Go ahead, Mr. Steinberg.

22    MR. STEINBERG:  Your Honor, Arthur Steinberg from
23 King & Spalding on behalf of New General Motors.  I take from
24 Your Honor's questions, you have grasped the argument that we
25 have made, but I wanted to sort of explain this motion in the

1  context of what is going on outside of the bankruptcy court.
2         There are a number of outstanding lawsuits that are
3  asserted against New General Motors under the theory that we
4  have assumed liabilities.  And putting aside for the moment the
5  specific issue that this lawsuit relates to a tire that was not
6  -- neither manufactured, sold or delivered by Old GM to the
7  vehicle owner and was actually put on by somebody totally
8  different.
9         The issue that is asserted in many of these
10 complaints are people who are basically saying that Old GM is
11 New GM, that they're -- New GM is the successor in interest to
12 Old GM, and we have continuously tried to rebut that.  And if
13 Your Honor is familiar with some of Judge Gerber's ruling,
14 including the December 2015 ruling, he specifically said that
15 for all of these complaints, anybody who asserts that New GM is
16 the successor in interest to Old GM, they have to strike their
17 pleadings in the other court.  Otherwise, their actions are
18 stayed.
19        So when we said that Chenault was doing what they
20 were doing, we thought that it was an important issue just to
21 raise as a general matter anyway, that you can't go around
22 saying that New GM is the successor in interest as, in effect,
23 a successor liability to Old GM.  And what they did was not
24 accidental, and what they did was not a confusion on their
25 part.  They got caught.  They got caught doing what they were

1   not supposed to do in a state court.  Specifically, in order to
2   answer Judge Bessen's questions that she had asked Your Honor
3   to rule upon, you need to at least understand the context of
4   the procedural history of this case.
5            And in the procedural history of this case, there was
6   an accident in 2011 relating to a tire, and then in 2012, there
7   was a lawsuit that was brought in Georgia Court.  There's a
8   two-year statute of limitations for these lawsuits, so after
9   the two-year statute of limitations expired --
10           THE COURT:  So your first position is they sued the
11  wrong party.
12           MR. STEINBERG:  That's correct.
13           THE COURT:  If they wanted to sue New GM, they had to
14  sue New GM.
15           MR. STEINBERG:  But they sued --
16           THE COURT:  They didn't do that --
17           MR. STEINBERG:  But they sued --
18           THE COURT:  -- and you say it's too late even if they
19  wanted to try now.
20           MR. STEINBERG:  That's correct.  But they --
21           THE COURT:  Basically, you say this is not -- this
22  was not -- the claim that they're asserting is not a product
23  liability that was assumed by New GM in any event.
24           MR. STEINBERG:  That's correct.  That is correct,
25  Your Honor.  But they sued Old GM, and they meant to sue Old

1  GM.

2          THE COURT:  I don't know if they meant to --

3          MR. STEINBERG:  Why, I don't know --

4          THE COURT:  -- but they did.

5          MR. STEINBERG:  -- but they meant to sue Old GM
6  because if you look at the complaint, they talk about that the
7  tire was designed in part by Old GM.  New GM could not have
8  designed the tire, so the allegation as against the party that
9  they sued was specific to Old GM.  They say that Old GM was a
10 foreign corporation.  That is true for Old GM.  It's not true
11 for New GM.  New GM is a limited liability company.  So they
12 purposely sued Old GM for whatever their reason was.

13         When they realized what they did, they tried to do
14 what I would consider some funny stuff in the state court.
15 They actually moved for a default as against Old GM.  I know in
16 their reply, they said, "We never moved to sue against Old GM."
17 That is belied by actually what they did.  They sued Old GM,
18 and the language that they used was that since New GM is the
19 successor in interest to Old GM.  It asked for a default
20 against Old GM, and it did not serve New GM with any of the
21 stuff.

22         So the only way they can get to New GM is by
23 basically saying they're the same entity, and that's why they
24 used the successor in interest, and that is why when Judge
25 Bessen asked you for an explanation of the relationship, it

1  wasn't with regard to actually the claims, which was some of
2  Your Honor's questions, but it's with respect to the parties.
3  And Judge Gerber, in his decisions, was absolutely clear.  And
4  even they actually say that New GM is different than Old GM,
5  and that's the finding that we think needs to go back to Judge
6  Bessen.  New GM is not the successor.  New GM is an independent
7  party.  And we put the specific language, which is all cribbed
8  from Judge Gerber's prior orders in the case.
9         The -- when they moved for the misnomer complaint
10 before Judge Bessen, which triggered the directional order,
11 they said -- they asked for a judgment against Defendant Old
12 GM, properly known as New GM.  Now, that is language that
13 clearly violates the sale order and clearly is improper.  And
14 they also said that New GM is the successor in interest to Old
15 GM.  And in response to that, New GM filed a pleading and said
16 that if you sued Old GM, you violated the automatic stay
17 because Old GM was in bankruptcy at the time and the automatic
18 stay continued post-confirmation.
19         So the Judge, when she entered her directional order,
20 on Page 2, says:
21         "Determination of whether or not GMC, which is Old
22          GM, is a misnomer for General Motors, LLC, which is
23          New GM, and that service upon the LLC was proper
24          rests almost exclusively on issues raised in events
25          within the bankruptcy action."

1          And then, after two sentences, she says:
2          "Pretermitting the question of service, which is
3          whether New GM was properly served when they only had
4          named Old GM, whether or not these two companies are
5          interrelated sufficiently so that there's" --
6          So that one is a mere misnomer of the other and
7 whether or not the claims against General Motors Corporation,
8 which is Old GM, are barred in this case are issues for the
9 bankruptcy court to determine.
10         So it's clear what the first issue was.  She wants to
11 know what the relationship is between Old GM and New GM,
12 whether they're the same entity, because the concept of
13 misnomer is that if I sued a corporation and it had a trade
14 name by -- it was -- it was offering to buy a trade name, then
15 the concept of misnomer, it's the same entity, it may allow the
16 lawsuit to go forward.  But the law in Georgia -- and I'm not
17 asking you to rule on this, I'm just trying to give you some
18 context.  The law in Georgia is clear that it's a totally
19 different party, that that's not a misnomer.  You can't use the
20 misnomer doctrine to do that.  So the second question that the
21 judge asked was whether claims against Old GM were barred.  And
22 then, the third question was whether or not the bankruptcy stay
23 applies in this case to claims against Old GM, and that's what
24 we had answered in our answer.  And what they want to do --
25         THE COURT:  Yeah, the automatic stay remains in place

1  at least until the case is closed --

2          MR. STEINBERG:  That's right.

3          THE COURT:  -- and there are other provisions that --

4          MR. STEINBERG:  And that their action was void ab
5  initio because they had sued.  And so that is what we think is
6  the proper answers to the question.  I think that if those were
7  the questions that were asked, they would agree that the
8  automatic stay applies and they would agree that they shouldn't
9  have sued Old GM, and then they would agree that the automatic
10 stay was in effect.  They don't disagree with the answers.
11 They just don't like those were the questions that were asked.
12 So, Your Honor, in sum, I think you have a limited role, and it
13 may be that in future cases, you'll have a bigger role of these
14 types of issues.  But --

15         THE COURT:  When I get the future cases, I'll deal
16 with the future cases.

17         MR. STEINBERG:  I -- thank you.

18         THE COURT:  Okay, thank you.  All right.  I'm going
19 to take it under submission.  Thanks very much.  Okay, we're
20 adjourned.

21         (Concluded at 10:17 a.m.)

22                         * * * * *

23

24

25

13

**C E R T I F I C A T I O N**

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____
ALICIA JARRETT, AAERT NO. 428    DATE:  April 13, 2016
ACCESS TRANSCRIPTS, LLC

**C E R T I F I C A T I O N**

I, Lisa Luciano, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____
LISA LUCIANO, AAERT NO. 327    DATE:
ACCESS TRANSCRIPTS, LLC