**OBJECTION DEADLINE: June 20, 2016 at 4:00 p.m. (Eastern Time)**
**HEARING DATE AND TIME:  June 27, 2016 at 11:00 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **Case No.:  09-50026 (MG)** |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

**MOTION BY GENERAL MOTORS LLC PURSUANT TO**
**11 U.S.C. §§ 105 AND 363 TO ENFORCE THE BANKRUPTCY**
**COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION,**
**AND THE RULINGS IN CONNECTION THEREWITH**

**VERONICA ALAINE FOX**
**CLAUDIA LEMUS**
**TAMMIE CHAPMAN**
**CONSTANCE HAYNES-TIBBETTS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 2

BACKGROUND FACTS ....................................................................................... 4

    A.    The Sale Order and Injunction and Sale Agreement ............................... 4

    B.    The 2014 Motions to Enforce ................................................ 6

    C.    The April 2015 Decision and June 2015 Judgment ................................ 6

    D.    The November 2015 Decision and December 2015 Judgment ............................ 7

        *1.*    *Non-Ignition Switch Plaintiffs Cannot Assert Independent Claims or Seek Punitive Damages Against New GM* ............................ 8

        *2.*    *Non-Ignition Switch Plaintiffs Cannot Assert Duty to Warn Claims as Independent Claims* ............................ 9

        *3.*    *Failure to Recall and/or Retrofit Claims Were Not Assumed By New GM* ............................ 10

        *4.*    *Failure to Identify Defects Were not Assumed By New GM* .................. 10

        *5.*    *Certain Allegations Cannot Be Made Against New GM* ...................... 11

    E.    The Fox Lawsuit ................................................ 12

    F.    The Turner Lawsuits ................................................ 15

BASIS FOR RELIEF ....................................................................................... 17

    A.    The State Court Plaintiffs Are Non-Ignition Switch Plaintiffs, And They Cannot Assert Independent Claims Against New GM ...................... 18

    B.    "Duty to Warn" Claims Asserted As Independent Claims Are Barred By the December 2015 Judgment ......................... 19

    C.    Claims Based On A Failure To Recall Or Failure to Identify Defects Are Not Assumed Liabilities .................... 19

    D.    The State Court Plaintiffs Cannot Seek Punitive Damages Against New GM ........................................ 20

    E.    The Turner Complaints Contain Allegations That Are Expressly Barred by the December 2015 Judgment ...................... 21

**NOTICE**........................................................................................................................................ **22**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) .......................................................................................................... 4, 17

*In re Gen. Motors Corp.*,
  407 B.R. 463 (Bankr. S.D.N.Y. 2009) ...................................................................................... 4

*In re Lehman Bros. Holdings, Inc.*,
  No. 15-149-BR, 2016 WL 1212079 (2d Cir. Mar. 29, 2016) ...................................................... 4

*In re Motors Liquidation Co.*,
  513 B.R. 467 (Bankr. S.D.N.Y. 2014) ...................................................................................... 17

*In re Motors Liquidation Co.*,
  541 B.R. 104 (Bankr. S.D.N.Y 2015) ...................................................................... 8, 9, 19, 20

## Statutes

11 U.S.C. § 105 ................................................................................................................................ 1

11 U.S.C. § 363 ................................................................................................................................ 1

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this motion ("**Motion to Enforce**") pursuant to 11 U.S.C. §§ 105 and 363, to enforce the Bankruptcy Court's Order entered on July 5, 2009 ("**Sale Order and Injunction**") approving the sale of assets from Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**") to New GM,[1] and the decisions and judgments entered by the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**" or "**Court**") in connection therewith, by

(i)  directing the plaintiff ("**Fox Plaintiff**") and her counsel in the lawsuit ("**Fox Lawsuit**") captioned *Veronica Alaine Fox v. General Motors LLC, et al.* pending in the State Court of Cobb County, State of Georgia ("**Georgia State Court**"), Case No. 14A 3468-4, to amend her *Recast & Amended Complaint for Damages* ("**Fox Amended Complaint**")[2] so that it complies with the Sale Order and Injunction and the other Bankruptcy Court rulings;

(ii)  directing the plaintiff ("**Lemus Plaintiff**") and her counsel in the lawsuit ("**Lemus Lawsuit**") captioned *Claudia Lemus v. General Motors LLC, et al.* pending in a Judicial District in New Mexico ("**New Mexico State Court**"), Case No. D-191-CV-2013-03270, to amend her Complaint ("**Lemus Complaint**")[3] so that it complies with the Sale Order and Injunction and the other Bankruptcy Court rulings;

(iii)  directing the plaintiff ("**Chapman Plaintiff**") and her counsel in the lawsuit ("**Chapman Lawsuit**") captioned *Tammie Chapman v. General Motors LLC, et al.* pending in the Circuit Court of Pulaski County, Arkansas ("**Arkansas State Court**"), Case No. 60CV-15-3292, to amend her Complaint ("**Chapman Complaint**")[4] so that it complies with the Sale Order and Injunction and the other Bankruptcy Court rulings; and

(iv)  directing the plaintiff ("**Tibbetts Plaintiff**") and her counsel in the lawsuit ("**Tibbetts Lawsuit**") captioned *Constance Haynes-Tibbetts v. Armando Saenz, et al.*, pending in the New Mexico State Court, Case No. D-292-CV-2015-04918, to

---

[1]  The full title of the Sale Order and Injunction is *Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief.* A copy of the Sale Order and Injunction, and the accompanying Sale Agreement (as defined herein), is contained in the accompanying compendium of exhibits as **Exhibit "A."**

[2]  A copy of the Fox Amended Complaint is contained in the compendium of exhibits as **Exhibit "B."**

[3]  A copy of the Lemus Complaint is contained in the compendium of exhibits as **Exhibit "C."**

[4]  A copy of the Chapman Complaint is contained in the compendium of exhibits as **Exhibit "D."**

1

amend her Complaint ("**Tibbetts Complaint**")[5] so that it complies with the Sale Order and Injunction and the other Bankruptcy Court rulings.[6]

## PRELIMINARY STATEMENT

1.      The continued prosecution of the State Court Lawsuits, in their present form, violate the Sale Order and Injunction, and the other applicable Bankruptcy Court rulings.   Under these rulings, the State Court Plaintiffs are Non-Ignition Switch Plaintiffs[7] asserting Assumed Liabilities (in the form of negligence, strict liability and/or breach of warranty claims predicated on Old GM's conduct) under state law based on accidents involving Old GM vehicles (*i.e.*, (i) a 2004 Cadillac SRX (Fox Plaintiff), (ii) a 2008 GMC truck (Lemus Plaintiff), (iii) a 2004 Silverado C1500 pickup truck (Chapman Plaintiff), and (iv) a 2005 Cadillac SRX (Tibbetts Plaintiff)).[8]   Significantly, the State Court Plaintiffs are also asserting Independent Claims against New GM, either as duty to warn claims, or as failure to recall and/or identify defect claims, for which they are seeking compensatory and punitive damages.   The December 2015 Judgment, however, is clear that Non-Ignition Switch Plaintiffs like the State Court Plaintiffs may not assert Independent Claims for post-sale accidents involving Old GM vehicles. New GM did not assume punitive damages in connection with Assumed Liabilities.   Despite these clear

---

[5]     A copy of the Tibbetts Complaint is contained in the compendium of exhibits as **Exhibit "E."**

[6]     The Lemus Plaintiff, the Chapman Plaintiff and the Tibbetts Plaintiff are all represented by the same counsel, and each of the complaints contains similar issues.   These three plaintiffs will be collectively referred to herein as the "**Turner Plaintiffs**," and their lawsuits will be collectively referred to herein as the "**Turner Lawsuits.**" Where applicable, the Fox Plaintiff and the Turner Plaintiffs will be referred to herein as the "**State Court Plaintiffs**," and the Fox Lawsuit and the Turner Lawsuits will collectively be referred to as the "**State Court Lawsuits**."   The four complaints at issue in the State Court Lawsuits will collectively be referred to herein as the "**Complaints**" where applicable.

[7]     Capitalized terms not otherwise defined in this Preliminary Statement are defined in later sections of this Motion to Enforce.

[8]     New GM disputes that it is liable to any of the State Court Plaintiffs for any claims asserted in their Complaints.

rulings, counsel for the State Court Plaintiffs have refused to amend their Complaints to comply with the Bankruptcy Court's rulings.[9]

2.      In addition to the foregoing, in the Turner Lawsuits, the Turner Plaintiffs are asserting allegations in their complaints that are expressly prohibited by the December 2015 Judgment.

3.      New GM first notified each of the State Court Plaintiffs of their failure to comply with the Sale Order and Injunction and other Bankruptcy Court rulings in August/September 2015.  Following the December 2015 Judgment, New GM again notified each of the State Court Plaintiffs of their failure to comply with the controlling rulings of the Bankruptcy Court.

4.      In response to New GM's latest demand for compliance with the Bankruptcy Court's rulings, counsel for the Fox Plaintiff accused New GM of raising bankruptcy issues as a tactic to delay the September 2016 trial of the Fox Lawsuit.  He requested to take New GM's bankruptcy counsel's deposition in Georgia.   New GM rejects these "sharp" litigation tactics; indeed, New GM urges this Court to decide the Motion to Enforce with all deliberate speed and to enforce compliance with the controlling Bankruptcy Court rulings.[10]

5.      The Turner Plaintiffs have each refused to accept the rulings set forth in the December 2015 Judgment (and other Bankruptcy Court rulings) and have refused to appropriately amend their complaints.

---

[9]     In the Fox Lawsuit, counsel for the Fox Plaintiff has unequivocally stated his intention to proceed unabated to trial in Georgia State Court in September 2016.

[10]    In response to New GM's requests following the December 2015 Judgment, many Non-Ignition Switch Plaintiffs are amending their complaints. Discussions with other plaintiffs are in process to determine if they will change their views or narrow issues in dispute.  At this time, New GM expects that if additional enforcement motions for Non-Ignition Switch claims are necessary, they will be filed over the next few months in a consolidated matter, if practicable, to further the efficient administration of justice.

This Motion to Enforce is made now because a clear impasse has been reached with counsel for the State Court Plaintiffs.  Moreover, the Fox Plaintiff has wrongfully accused New GM of seeking compliance with Bankruptcy Court rulings as a dilatory litigation tactic to delay an approaching trial date.

6.      The law is settled that a party subject to a Court's injunction does not have the option simply to proceed in another court as if the injunction had not been issued.  As the United States Supreme Court explained in *Celotex Corp. v. Edwards*, the rule is "well-established" that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'"  514 U.S. 300, 306 (1995).  The State Court Plaintiffs' decisions to go forward in the State Courts as if the Bankruptcy Court's rulings do not apply to them are clear violations of the Sale Order and Injunction and the other controlling Bankruptcy Court rulings.[11]

7.      As further explained below, this Court should direct the State Court Plaintiffs to amend their Complaints so that they are in full compliance with the controlling Bankruptcy Court rulings.

## BACKGROUND FACTS

### A.      The Sale Order and Injunction and Sale Agreement

8.      On June 1, 2009, Old GM commenced a case under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  On that same day, it filed a motion seeking approval of the original version of the Sale Agreement, pursuant to which substantially all of Old GM's assets were to be sold to New GM.  *See In re Gen. Motors Corp.*, 407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009).  The Sale Order and Injunction was entered on July 5, 2009, and the sale ("**363 Sale**") closed on July 10, 2009.

---

[11]    New GM reserves all of its rights in connection with improper actions taken by the State Court Plaintiffs.  *See In re Lehman Bros. Holdings, Inc.,* No. 15-149-BR, 2016 WL 1212079 (2d Cir. Mar. 29, 2016) (upholding a bankruptcy court order that imposed sanctions on a plaintiff who violated a bankruptcy sale order by commencing and continuing to prosecute a lawsuit against the purchaser of a debtor's assets where the purchaser bought the debtor's assets free and clear of claims and liens).

9.      The Sale Agreement expressly allocated liabilities resulting from claims against Old GM into two categories.[12]  Thus, claims asserted by Non-Ignition Switch Plaintiffs (*i.e.*, the State Court Plaintiffs) based on an Old GM vehicle are either Assumed Liabilities, *i.e.*, an obligation of New GM, or Retained Liabilities that stayed with Old GM.  *See generally* Sale Agreement § 2.3.

10.     New GM assumed certain categories of liabilities for Old GM vehicles, including claims arising out of post-sale accidents that caused personal injury, loss of life or property damage, defined in the Sale Agreement (as amended) as "Product Liabilities."  *See* Sale Agreement, § 2.3(a) (as amended by the First Amendment to the Sale Agreement).  Certain of the State Court Plaintiffs' claims in the State Court Lawsuits fall within the definition of assumed Product Liabilities.

11.     Paragraph 71 of the Sale Order and Injunction makes the Bankruptcy Court the gatekeeper to enforce its' terms by providing for this Court's exclusive jurisdiction over matters and claims regarding the 363 Sale, including jurisdiction to protect New GM against improper claims:

> This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement], all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, . . ., in all respects, including, but not limited to, retaining jurisdiction to . . . (c) resolve any disputes arising under or related to the [Sale Agreement], except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Retained Liabilities or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets . . . . (Emphasis added.)[13]

---

[12]  As explained, *infra*, the June Judgment introduced a third category of Liabilities -- "Independent Claims." However, that category is limited to Ignition Switch Plaintiffs; *none* of the State Court Plaintiffs are Ignition Switch Plaintiffs.

[13]  The December 2015 Judgment provided that certain claims asserted by Ignition Switch Plaintiffs "made it through the gate" so that a court other than the Bankruptcy Court could decide whether a viable Independent

## B.    The 2014 Motions to Enforce[14]

12.    In 2014, New GM announced a number of recalls relating to Old GM vehicles
and New GM Vehicles.  Thereafter, lawsuits were filed around the country seeking to hold New
GM liable in connection with, among other things, personal injury and economic loss claims
allegedly arising from defects in Old GM vehicles. New GM filed three motions to enforce the
Bankruptcy Court's Sale Order and Injunction.  The overriding question before the Bankruptcy
Court in the 2014 Motions to Enforce was whether the claims asserted against New GM violated
the Sale Order and Injunction.

## C.    The April 2015 Decision and June 2015 Judgment

13.    Since the Sale Order and Injunction was entered, the Bankruptcy Court has
addressed numerous issues with respect to the interpretation and enforcement of the Sale Order
and Injunction, and the Sale Agreement that it approved.  In particular, the Bankruptcy Court has
ruled on what types of claims may be asserted against New GM that concern Old GM vehicles,
what allegations can be made in complaints that assert such claims, who may bring such claims,
and what type of damages may be sought.  Specifically, the Bankruptcy Court has held that the
Sale Order and Injunction remains in full force and effect, and bars lawsuits relating to Old GM
vehicles, except for (a) Independent Claims, which may be brought **solely** by Ignition Switch

---

Claim had been asserted against New GM.  Claims asserted as Independent Claims by Non-Ignition Switch
Plaintiffs never "made it through the gate."  They were barred by the December 2015 Judgment, and the
Bankruptcy Court expressly reserved jurisdiction to enforce its' Order. *See* December 2015 Judgment, ¶ 37.

[14]    The three motions to enforce the Sale Order and Injunction filed by New GM were (i) *Motion of General
Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and
Injunction*, dated April 21, 2014 [Dkt. No. 12620], (ii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§
105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other
Than Ignition Switch Actions)*, dated August 1, 2014 [Dkt. No. 12808]; and (iii) *Motion of General Motors LLC
Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction Against
Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [Dkt. No. 12807] (collectively, the "**2014
Motions to Enforce**").

Plaintiffs;[15] and (b) Assumed Liabilities.  *See* Judgment entered by the Bankruptcy Court on June 1, 2015 [Dkt. No. 13177] ("**June 2015 Judgment**"),[16] ¶¶ 4, 5; Judgment entered by the Bankruptcy Court on December 4, 2015 [Dkt. No. 13563] ("**December 2015 Judgment**"),[17] ¶¶ 14, 39.

14.    The Sale Order and Injunction was modified in the June 2015 Judgment because the Bankruptcy Court found that Ignition Switch Plaintiffs (as defined below) (but not any other group of plaintiffs) established a due process violation (and were prejudiced) in connection with Old GM's notice of the 363 Sale.  The Sale Order and Injunction was modified solely to allow Ignition Switch Plaintiffs to assert Independent Claims (if viable under non-bankruptcy law) against New GM.

15.    The June 2015 Judgment defines the term Ignition Switch Plaintiffs as those plaintiffs who assert claims against New GM based on the first three ignition switch recalls issued in February/March 2014.  *See* June 2015 Judgment, at 1 n.1.  The State Court Plaintiffs are not "Ignition Switch Plaintiffs;" instead, their claims relate to vehicles that were not subject to the applicable recalls, and the alleged issues with their vehicles that have nothing to do with ignition switches.

**D.    The November 2015 Decision and December 2015 Judgment**

16.    After entry of the June 2015 Judgment, various parties filed pleadings with the Bankruptcy Court ("**June Judgment Pleadings**") asserting that they should not be bound by the Bankruptcy Court rulings.  Thereafter, on August 19, 2015, the Bankruptcy Court entered a Case

---

[15]    The term "Independent Claims" is defined as "claims or causes of action *asserted by Ignition Switch Plaintiffs* against New GM (whether or not involving Old GM Vehicles) that are based solely on New GM's own, independent, post-Closing acts or conduct."  June 2015 Judgment (as defined herein), ¶ 4 (emphasis added).

[16]    A copy of the June 2015 Judgment is contained in the compendium of exhibits as **Exhibit "F."**

[17]    A copy of the December 2015 Judgment is contained in the compendium of exhibits as **Exhibit "G."**

Management Order [Dkt. No. 13383][18] that directed parties in interest to submit their views on how best to address the remaining issues. After a hearing before the Bankruptcy Court on August 31, 2015, the Bankruptcy Court entered a Scheduling Order on September 3, 2015 [Dkt. No. 13416] ("**September 3 Scheduling Order**")[19] which set forth a briefing schedule to address, among other things, (i) whether plaintiffs may request punitive damages against New GM with respect to Old GM vehicles, and (ii) whether certain causes of action or allegations in complaints filed against New GM relating to Old GM vehicles were barred by the Sale Order and Injunction.

17.    The September 3 Scheduling Order provided that "nothing in this Order is intended to nor shall preclude any other plaintiff's counsel (or *pro se* plaintiff), affected by the issues being resolved by this Court, from taking a position in connection with any such matters[.]" September 3 Scheduling Order, at p. 5. The Bankruptcy Court held a hearing on all matters set forth in the September 3 Scheduling Order on October 14, 2015.

1.    *Non-Ignition Switch Plaintiffs Cannot Assert Independent Claims or Seek Punitive Damages Against New GM*

18.    On November 9, 2015, the Bankruptcy Court entered its Decision ("**November 2015 Decision**")[20] with respect to the matters identified in the September 3 Scheduling Order. *See generally* November 2015 Decision, 541 B.R. 104. On December 4, 2015, the Bankruptcy Court entered its December 2015 Judgment, memorializing the rulings set forth in the November 2015 Decision. For claims based on Old GM vehicles for Non-Ignition Switch Plaintiffs (like the State Court Plaintiffs), the December 2015 Judgment conclusively held as follows:

---

[18]    A copy of the August 19, 2015 Case Management Order is contained in the compendium of exhibits as **Exhibit "H."**

[19]    A copy of the September 3 Scheduling Order is contained in the compendium of exhibits as **Exhibit "I."**

[20]    The November 2015 Decision is published as *In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y 2015).

plaintiffs whose claims arise in connection with vehicles *without* the Ignition Switch Defect . . . *are not entitled to assert Independent Claims* against New GM with respect to vehicles manufactured and first sold by Old GM (an "Old GM Vehicle"). To the extent such Plaintiffs have attempted to assert an Independent Claim against New GM in a pre-existing lawsuit with respect to an Old GM Vehicle, *such claims are proscribed by the Sale Order, April Decision and the Judgment dated June 1, 2015* [Dkt. No. 13177].

December 2015 Judgment, ¶ 14 (emphasis added).

19.    The December 2015 Judgment also specifically found that:

New GM *did not contractually assume liability for punitive damages* from Old GM. Nor is New GM liable for punitive damages based on Old GM conduct under any other theories, such as by operation of law. Therefore, punitive damages may not be premised on Old GM knowledge or conduct, or anything else that took place at Old GM.

A claim for punitive damages with respect to a post-Sale accident *involving vehicles manufactured by Old GM with the Ignition Switch Defect may be asserted against New GM to the extent—but only to the extent—it relates to an otherwise viable Independent Claim and is based solely on New GM conduct or knowledge* . . . .

December 2015 Judgment, ¶¶ 6-7 (emphasis added).

20.    Accordingly, Non-Ignition Switch Plaintiffs, like each of the State Court Plaintiffs, cannot assert Independent Claims against New GM and may not seek punitive damages against New GM.

> 2.    *Non-Ignition Switch Plaintiffs Cannot Assert Duty to Warn Claims as Independent Claims*

21.    The November 2015 Decision and December 2015 Judgment also addressed a plaintiff's ability to assert a "duty to warn" claim against New GM, finding that in a case brought by a Non-Ignition Switch Plaintiff, a duty to warn claim could *only* be brought as an Assumed Liability (assuming such claim is viable under applicable non-bankruptcy law), but not as an Independent Claim, because Independent Claims can only be brought by Ignition Switch Plaintiffs. *See Motors Liquidation Co.*, 541 B.R. at 128-29; December 2015 Judgment, ¶ 20. Both the Fox Plaintiff and the Chapman Plaintiff assert a duty to warn claim; as neither of them

9

is an Ignition Switch Plaintiff, they cannot assert an Independent Claim based on a duty to warn against New GM.[21]

### 3.    *Failure to Recall and/or Retrofit Claims Were Not Assumed By New GM*

22.    The December 2015 Judgment also found that claims based on a failure to recall or retrofit an Old GM vehicle are not Assumed Liabilities.  *See* December 2015 Judgment, ¶ 21 ("A duty to recall or retrofit is not an Assumed Liability, and New GM is not responsible for any failures of Old GM to do so."); *see also id.* ¶ 29 (same).  Paragraph 30 of the Fox Amended Complaint makes an allegation which suggests a failure to recall and/or remedy the vehicle.  This allegation is not specifically set forth in any Count in the Fox Amended Complaint.  To the extent the Fox Plaintiff is asserting a failure to recall or remedy her vehicle, such claim is also barred as a Retained Liability of Old GM.  The Lemus and Tibbetts Complaints assert failure to recall claims, which are barred.  As noted, as Non-Ignition Switch Plaintiffs, the Fox, Lemus and Tibbetts Plaintiffs may not assert a failure to recall or remedy their vehicle as an Independent Claim.

### 4.    *Failure to Identify Defects Were not Assumed By New GM*

23.    The December 2015 Judgment further found that "[o]bligations, if any, that New GM had to identify or respond to defects in previously sold Old GM Vehicles were not Assumed Liabilities, and New GM is not responsible for any failures of Old GM to do so."  December 2015 Judgment, ¶ 31.  The Turner Complaints contain these prohibited claims.  Again, as noted, Non-Ignition Switch Plaintiffs like the Turner Plaintiffs may not assert a failure to identify defects in their Old GM vehicle as an Independent Claim.

---

[21]    The Fox Amended Complaint seeks to assert a duty to warn claim against New GM as an Independent Claim, not as an Assumed Liability.  The Chapman Complaint is unclear as to whether the duty to warn claim is being asserted as an Independent Claim or as an Assumed Liability (which is permitted, if viable under non-bankruptcy law); the Chapman Plaintiff should be directed to amend the Chapman Complaint to make clear that the duty to warn claim is not an Independent Claim.

>    5.    *Certain Allegations Cannot Be Made Against New GM*

24.    In the December 2015 Judgment, the Bankruptcy Court described what types of allegations cannot be asserted by plaintiffs in pleadings with claims against New GM.  Under the December 2015 Judgment, plaintiffs (like the Turner Plaintiffs) are prohibited from making allegations: (i) that New GM is the successor of Old GM (no matter how phrased) (*see* December 2015 Judgment, ¶ 16); (ii) that do not distinguish between Old GM and New GM (*see id.* ¶ 17); and (iii) that allege or suggest that New GM manufactured or designed an Old GM vehicle, or performed other conduct relating to an Old GM vehicle before the entry of the Sale Order and Injunction (*i.e.*, July 10, 2009) (*see id.* ¶ 18).

25.    Specifically, the December 2015 Judgment provides:

> Allegations that speak of New GM as the successor of Old GM (e.g. allegations that refer to New GM as the "successor of," a "mere continuation of," or a "de facto successor of" of Old GM) are proscribed by the Sale Order, April Decision and June Judgment, and complaints that contain such allegations are and remain stayed, unless and until they are amended consistent with the Decision and this Judgment.

December 2015 Judgment, ¶ 16.

26.    Moreover, the December 2015 Judgment provides:

> Allegations that do not distinguish between Old GM and New GM (e.g., referring to "GM" or "General Motors"), or between Old GM vehicles and New GM vehicles (e.g., referring to "GM-branded vehicles") . . . are proscribed by the Sale Order, April Decision and June Judgment, and complaints containing such allegations are and remain stayed, unless and until they are amended consistent with the Decision and this Judgment.

*Id.*, ¶ 17.

27.    In addition, the December 2015 Judgment holds:

> Allegations that allege or suggest that New GM manufactured or designed an Old GM Vehicle, or performed other conduct relating to an Old GM Vehicle before the Sale Order, are proscribed by the Sale Order, April Decision and June Judgment . . . .

*Id.*, ¶ 18.

28.    Complaints containing allegations highlighted in paragraphs 16, 17 and 18 of the December 2015 Judgment "are and remain stayed, unless and until they are amended consistent with the [November] Decision and this Judgment." December 2015 Judgment, ¶¶ 16, 17, 18.

29.    The December 2015 Judgment further provides that, except as modified by the June 2015 Judgment and April 2015 Decision, the Sale Order and Injunction remained "unmodified and in full force and effect, including, without limitation, paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for the actions or inactions of Old GM." *Id.*, ¶ 39.

30.    The December 2015 Judgment was appealed but not with respect to the Bankruptcy Court's rulings (i) regarding Independent Claims, (ii) limiting punitive damages requests, and (iii) regarding improper allegations.

31.    In sharp contrast to the State Court Plaintiffs, as a result of the December 2015 Judgment, the Lead Counsel (who litigated the issues resolved by the December 2015 Judgment in the Bankruptcy Court) in the Ignition Switch Multi-District Litigation ("**MDL**") amended their complaint in MDL-2543 pending before United States District Judge Furman to remove all Independent Claims relating to Non-Ignition Switch Plaintiffs that owned Old GM vehicles as of the 363 Sale.  Clearly, Lead Counsel understood the impact of the December 2015 Judgment  on Non-Ignition Switch Plaintiffs, and unlike the State Court Plaintiffs, modified their complaint as requested by the controlling Bankruptcy Court rulings.

E.    **The Fox Lawsuit**

32.    On December 23, 2014, the Fox Plaintiff commenced the Fox Lawsuit in the Georgia State Court.  The Fox Plaintiff's vehicle (a 2004 Cadillac SRX) was manufactured, sold and delivered by Old GM (not New GM).  The Fox Amended Complaint names, among others,

New GM as a defendant.  The counts in the Fox Amended Complaint against New GM are (i)

Negligence, (ii) Strict Liability, (iii) Failure to Warn, and (iv) Punitive Damages.  The Fox

Lawsuit relates to an allegedly defective roof structure.

33.    The Fox Plaintiff was notified of the proceedings before the November 2015

Decision and the December 2015 Judgment.  New GM sent counsel for the Fox Plaintiff a letter

in September 2015 ("**New GM/Fox 2015 Letter**"),[22] explaining, among other things, that her

request for punitive damages violated the Bankruptcy Court's rulings.  Accompanying the New

GM/Fox 2015 Letter was a copy of the September 3 Scheduling Order.  The New GM/Fox 2015

Letter notified the Fox Plaintiff that:

> If you have any objection to the procedures set forth in the Scheduling Order, you
> must file such objection in writing with the Bankruptcy Court within three (3)
> business days of receipt of this demand letter ("**Objection**").  Otherwise, you will
> be bound by the terms of the Scheduling Order and the determinations made
> pursuant thereto. If you believe there are issues that should be presented to the
> Bankruptcy Court relating to your lawsuit that will not otherwise be briefed and
> argued in accordance with the Scheduling Order, you must set forth that position,
> with specificity, in your Objection. The Bankruptcy Court will decide whether a
> hearing is required with respect to any Objection timely filed and, if so, will,
> promptly notify the parties involved.

New GM/Fox 2015 Letter, p. 3.

34.    In response to the New GM/Fox 2015 Letter, the Fox Plaintiff sent New GM a

letter dated September 9, 2015 ("**Fox/New GM 2015 Letter**"),[23] asserting that the September 3

Scheduling Order did not apply to the Fox Lawsuit, and "asking" several  questions.  New GM

replied by e-mail transmission dated September 11, 2015 ("**New GM/Fox 2015 E-Mail**"),[24]

informing the Fox Plaintiff that the issues raised in the Fox/New GM 2015 Letter would be

---

[22]    A copy of the New GM/Fox 2015 Letter (without exhibits) is contained in the compendium of exhibits as **Exhibit "J."**

[23]    A copy of the Fox/New GM 2015 Letter is contained in the compendium of exhibits as **Exhibit "K."**

[24]    A copy of the New GM/Fox 2015 E-Mail is contained in the compendium of exhibits as **Exhibit "L."**

addressed by the Bankruptcy Court pursuant to the September 3 Scheduling Order, and that the Fox Plaintiff could participate in that proceeding if she chose to.

35.     Thereafter, counsel for the Fox Plaintiff was served with all pleadings the New GM filed by New GM in connection with the issues set forth in the September 3 Scheduling Order.[25]  When counsel for the Fox Plaintiff questioned why he was receiving these pleadings, New GM again informed the Fox Plaintiff of the September 3 Scheduling Order, that certain issues would be decided by the Bankruptcy Court that would affect pending lawsuits (including the Fox Lawsuit), and that the Fox Plaintiff was being served with all pleadings so that she was fully informed about these proceedings in the Bankruptcy Court.[26]  The Fox Plaintiff did not file any pleading in response to the September 3 Scheduling Order or the issues raised therein, and did not appear at the hearing, and did not appeal the December 2015 Judgment.

36.     The Fox Plaintiff did not comply with the New GM/Fox 2015 Letter, or the November 2015 Decision or the December 2015 Judgment.  On May 16, 2016, New GM sent the Fox Plaintiff another letter, explaining that the complaint contained certain allegations, claims and damage requests that violate the Bankruptcy Court rulings.  The Fox Plaintiff responded by stating that he would revise the complaint, but demanded that New GM's counsel provide dates for his deposition.  The Fox Plaintiff thereafter amended the complaint to address certain allegations therein but did not address the claims and damages request that violate the Bankruptcy Court rulings.  Copies of the letters and e-mails relating to the foregoing exchanges are contained in the compendium of exhibits collectively as **Exhibit "O."**

---

[25]     Copies of relevant affidavits of service are contained in the compendium of exhibits as **Exhibit "M."**

[26]     A copy of an e-mail string, dated from September 23, 2015 through September 28, 2015 is contained in the compendium of exhibits as **Exhibit "N."**

### F.    The Turner Lawsuits

37.    On December 30, 2013, the Lemus Plaintiff commenced the Lemus Lawsuit in the New Mexico State Court.    The Lemus Plaintiff's vehicle (a 2008 GMC truck) was manufactured, sold and delivered by Old GM (not New GM).    The Lemus Complaint names, among others, New GM as a defendant.    The counts in the Lemus Complaint against New GM are (i) Negligence (which includes a claim based on a failure to recall or a failure to notify the Lemus Plaintiff of a defect), (ii) Strict Liability, and (iii) Breach of Warranty.    The Lemus Plaintiff seeks punitive damages from New GM.    The Lemus Lawsuit relates to an alleged defective roof structure and seat belt system.

38.    On July 21, 2015, the Chapman Plaintiff commenced the Chapman Lawsuit in the Arkansas State Court.    The Chapman Plaintiff's vehicle (a 2004 Silverado C1500 pickup truck) was manufactured, sold and delivered by Old GM (not New GM).    The Chapman Complaint names, among others, New GM as a defendant.    The counts in the Chapman Complaint against New GM are (i) Negligence (which includes a claim based on an alleged duty to warn and an alleged failure to notify the Chapman Plaintiff of a defect), and (ii) Strict Liability.    The Chapman Plaintiff seeks punitive damages from New GM. The Chapman Lawsuit relates to allegedly defective tire and safety belt systems.

39.    On June 9, 2015, the Tibbetts Plaintiff commenced the Tibbetts Lawsuit in the New Mexico State Court.    The Tibbetts Plaintiff's vehicle (a 2005 Cadillac SRX) was manufactured, sold and delivered by Old GM (not New GM).    The Tibbetts Complaint names, among others, New GM as a defendant.    The counts in the Tibbetts Complaint against New GM are (i) Negligence (which includes a claim based on an alleged failure to identify a defect and recall the subject vehicle), (ii) Strict Liability, and (iii) Breach of Warranty.    The Tibbetts

Plaintiff seeks punitive damages from New GM. The Tibbetts Lawsuit relates to allegedly defective steering, handling and controllability features.

40.    As with respect to the Fox Plaintiff, each of the Turner Plaintiffs was notified of the proceedings leading to the November 2015 Decision and the December 2015 Judgment. New GM sent counsel for the Turner Plaintiffs letters in August/September 2015 ("**New GM/Turner 2015 Letters**"),[27] explaining, among other things, that the Turner Plaintiffs' requests for punitive damages violated the Bankruptcy Court's rulings, and that if they disputed New GM's assertions, they should file a pleading with the Bankruptcy Court.  Counsel for the Turner Plaintiffs responded by a letter in September 2015 ("**Turner/New GM 2015 Letter**"),[28] asserting that requests for punitive damages against New GM were not barred.  In its response,[29] New GM explained the purpose of the September 3 Scheduling Order and informed the Turner Plaintiffs that they could participate in the briefing schedule set forth in the September 3 Scheduling Order.

41.    The Turner Plaintiffs were served with a copy of the September 3 Scheduling Order, and all pleadings that New GM filed in connection with the issues set forth in the September 3 Scheduling Order.[30]   The Turner Plaintiffs did not file any pleading in response to the September 3 Scheduling Order or the issues raised therein, did not appear at the hearing, and did not appeal the December 2015 Judgment.

---

[27]    Copies of the New GM/Turner 2015 Letters (without exhibits) are contained in the compendium of exhibits collectively as **Exhibit "P."**

[28]    A copy of the Turner/New GM 2015 Letter is contained in the compendium of exhibits as **Exhibit "Q."**

[29]    A copy of New GM's response to the Turner/New GM 2015 Letter is contained in the compendium of exhibits as **Exhibit "R."**

[30]    Copies of relevant affidavits of service are contained in the compendium of exhibits as Exhibit "M."

42.     The Turner Plaintiffs did not comply with the New GM/Turner 2015 Letter, or the November 2015 Decision or the December 2015 Judgment.  On May 10, 2016, May 16, 2016 and May 18, 2016, New GM sent the Turner Plaintiffs additional letters, explaining that the Turner Complaints contained certain allegations, claims and damage requests that violate the Bankruptcy Court rulings.  The Turner Plaintiffs responded, disputing all of New GM's assertions and claiming that Non-Ignition Switch Plaintiffs could assert Independent Claims against New GM.  After New GM further explained its position in a subsequent letter, counsel for the Turner Plaintiffs responded, again disputing New GM's view of the December 2015 Judgment and the Bankruptcy Court's other rulings.  Copies of the 2016 correspondence between counsel for New GM and counsel for the Turner Plaintiffs are contained in the compendium of exhibits collectively as **Exhibit "S."**

43.     The State Court Plaintiffs' strident refusal to comply with the controlling Bankruptcy Court rulings, and the upcoming trial dates in certain of the State Court Lawsuits, necessitated this motion.

**<u>BASIS FOR RELIEF</u>**

44.     The State Court Plaintiffs do not have the choice of simply ignoring the Bankruptcy Court's Sale Order and Injunction and its multiple rulings addressing its effect on lawsuits filed against New GM.  As the Supreme Court held in *Celotex*:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done. . . .  Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law.

514 U.S. at 313; *see also In re Motors Liquidation Co*., 513 B.R. 467, 478 (Bankr. S.D.N.Y. 2014) ("As the Supreme Court held in *Celotex,* persons subject to an injunctive order issued by a

court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." (footnote omitted)).  These settled principles bind the State Court Plaintiffs.  They are subject to the Sale Order and Injunction and the Bankruptcy Court's other rulings, and are required to comply with them.

45.    Despite being on notice of the Sale Order and Injunction, and the Bankruptcy Court's rulings in the April 2015 Decision, June 2015 Judgment, November 2015 Decision and December 2015 Judgment, the State Court Plaintiffs are ignoring specific provisions contained therein, and are proceeding in state court as though they are exempted from the rulings of the Bankruptcy Court.

**A.    The State Court Plaintiffs Are Non-Ignition Switch Plaintiffs,
And They Cannot Assert Independent Claims Against New GM**

46.    None of the State Court Plaintiffs are "Ignition Switch Plaintiffs."  The June 2015 Judgment defines the term "Ignition Switch Plaintiffs" as those plaintiffs who assert claims against New GM based on the first three ignition switch recalls issued in February/March 2014. *See* June 2015 Judgment, at 1 n.1.  Each of the State Court Lawsuits relates to a vehicle that is not subject to the applicable recalls, and the alleged issue with the vehicle has nothing to do with the ignition switch.

47.    Only Ignition Switch Plaintiffs can assert "Independent Claims" against New GM.  The Bankruptcy Court defined the term "Independent Claims" as "claims or causes of action *asserted by Ignition Switch Plaintiffs* against New GM (whether or not involving Old GM Vehicles) that are based solely on New GM's own, independent, post-Closing acts or conduct."  June 2015 Judgment, ¶ 4 (emphasis added).

48.     The December 2015 Judgment also makes clear that Non-Ignition Switch Plaintiffs—like the State Court Plaintiffs—cannot assert Independent Claims against New GM. *See* December 2015 Judgment, ¶ 14.

49.     Accordingly, as the State Court Plaintiffs are Non-Ignition Switch Plaintiffs, they are prohibited from asserting (except for Assumed Liabilities) any claims against New GM, including Independent Claims.

**B.      "Duty to Warn" Claims Asserted As Independent
          Claims Are Barred By the December 2015 Judgment**

50.     In the November 2015 Decision, the Bankruptcy Court found that a duty to warn claim could be brought against New GM as an Assumed Liability or, if the plaintiff is an Ignition Switch Plaintiff, an Independent Claim  *See Motors Liquidation Co.*, 541 B.R. at 128-29.

51.     Count Three in the Fox Amended Complaint is expressly based on New GM Conduct, and New GM's purported failure to warn the Fox Plaintiff.  *See* Fox Amended Complaint, ¶¶ 49-52.  Essentially, the Fox Plaintiff has attempted to plead her duty to warn claim as an Independent Claim, in a misguided effort to seek punitive damages against New GM. However, since the Fox Plaintiff is not an Ignition Switch Plaintiff, she cannot assert an Independent Claim based on a duty to warn against New GM, and it should be stricken from the Fox Amended Complaint.

52.     Similarly, to the extent the Chapman Plaintiff is asserting her duty to warn claim as an Independent Claim, such claim should be stricken from the Chapman Complaint.

**C.      Claims Based On A Failure To Recall Or
          Failure to Identify Defects Are Not Assumed Liabilities**

53.     In the December 2015 Judgment, the Bankruptcy Court found that claims based on a failure to recall and/or a failure to identify defects are not Assumed Liabilities of New GM and, only Ignition Switch Plaintiffs can assert such claims against New GM as Independent

Claims.  *See* December 2015 Judgment, ¶¶ 21, 29-32.  The Turner Complaints contain these

prohibited claims, and should be amended to strike same.

### D.    The State Court Plaintiffs Cannot Seek Punitive Damages Against New GM

54.    Under the December 2015 Judgment, punitive damages against New GM arising

from an Old GM vehicle can only be sought in connection with an Independent Claim, not an

Assumed Liability.  As demonstrated above, the State Court Plaintiffs cannot assert Independent

Claims against New GM, and any request for punitive damages necessarily fails.

55.    The State Court Plaintiffs' claims that are Assumed Liabilities also cannot form

the basis for punitive damages against New GM.  The Bankruptcy Court conclusively ruled that

New GM did not assume punitive damages relating to Product Liabilities (as defined in the Sale

Agreement).  *See* December 2015 Judgment, ¶ 6.[31]  Moreover, paragraph 7 of the December

2015 Judgment provides that only Ignition Switch Plaintiffs can assert Independent Claims and

thus, they are the only plaintiffs that can seek punitive damages against New GM on account of

Independent Claims.

56.    Accordingly, based on the Bankruptcy Court's explicit rulings in the November

2015 Decision and December 2015 Judgment, New GM did not assume punitive damages in

connection with Product Liabilities, and the State Court Plaintiffs are prohibited from seeking

punitive damages from New GM in connection with any of their claims.

---

[31]    As more fully discussed in the November 2015 Decision:

> The Post–Closing Accident Plaintiffs first argue that New GM contractually assumed claims for
> punitive damages. The Court finds that contention unpersuasive. It can't agree with the Post–
> Closing Accident Plaintiffs' contention that the Sale Agreement unambiguously so provides. And
> once it looks at the totality of the contractual language, and extrinsic evidence, and employs
> common sense, it must agree with New GM's contention that New GM neither agreed to, nor did,
> contractually take on Old GM's punitive damages liability.

*Id.*, 541 B.R. at 117.

E.     **The Turner Complaints Contain Allegations That
Are Expressly Barred by the December 2015 Judgment**

57.     In the December 2015 Judgment, the Bankruptcy Court expressly set forth what types of allegations Plaintiffs cannot assert against New GM.  Specifically, the Turner Plaintiffs are prohibited from making allegations: (i) that New GM is the successor to Old GM (no matter how phrased) (December 2015 Judgment, ¶ 16); (ii) that do not distinguish between Old GM and New GM (*see id.* ¶ 17); and (iii) that allege or suggest that New GM manufactured or designed an Old GM vehicle, or performed other conduct relating to an Old GM vehicle before the entry of the Sale Order and Injunction (*i.e.*, July 10, 2009) (*see id.* ¶ 18).  The Turner Complaints contain allegations that directly violate these provisions of the December 2015 Judgment.

58.     Specifically, paragraph 3 of the Chapman Complaint states, in part, that "Defendant, General Motors, LLC ('GM-LLC') is a Delaware Limited Liability Company ***and the successor to GM*.'  . . .   Prior to June 1, 2009, General Motors Corporation (n/k/a Motors Liquidation Company 'MLC') *and now known as* GM-LLC . . . . [emphasis added]."  In the Tibbetts Complaint, paragraph 5 contains the exact same language as in the Chapman Complaint. Paragraph 3 in the Lemus Complaint similarly asserts that "[p]rior to June 1, 2009, General Motors Corporation (n/k/a Motors Liquidation Company 'MLC') *and now known as* GM-LLC . . . ." (emphasis added).  Each of these allegations are barred by paragraph 16 of the December 2015 Judgment.

59.     Moreover, the Turner Complaints contain allegations that simply refer to "GM" in a context that could be read as Old GM or New GM. *See* Lemus Complaint, ¶ 3; Chapman Complaint, ¶¶ 3, 4, 9, 10, 12, 15; Tibbetts Complaint, ¶¶ 5, 10.  The term "GM" is not defined in any of the Turner Complaints.  The Turner Complaints should be made clear which entity the term "GM" is referring to.

60.    Each of the Turner Complaints also contains allegations that violate paragraph 18 of the December 2015 Judgment.  An example from each complaint highlighting these prohibited allegations are:

(a)    Lemus Complaint, ¶ 12:  "The defective vehicle which forms the basis for this suit is a 2008 GMC truck designed, tested, manufactured, assembled, and/or distributed by GM-LLC."  New GM was not in existence at the time the subject vehicle was "designed, tested, manufactured, assembled, and/or distributed . . . ."

(b)    Chapman Complaint, ¶ 14:  This paragraph references the "defendants" and asserts, numerous times they (which includes New GM) "negligently designed the vehicle . . . ."  Again, New GM was not in existence at the time the subject vehicle was "designed".

(c)    Tibbetts Complaint, ¶ 10:  "The defective 2005 Cadillac SRX . . . which forms the basis for this suit, was designed, tested, manufactured, marketed, assembled, and/or distributed by Defendant GM-LLC."  Once again, New GM was not in existence at the time the subject vehicle was "designed, tested, manufactured, marketed, assembled, and/or distributed . . . ."

61.    The Turner Complaints contain other paragraphs that violate paragraph 18 of the December 2015 Judgment.  *See* Lemus Complaint, ¶¶ 3, 14, 16, 19, 23-25, 27; Chapman Complaint, ¶¶ 3, 4, 8-11, 15; Tibbetts Complaint, ¶¶ 5, 35, 37, 38-44, 48, 52, 55, 56.[32]

62.    Each of the paragraphs identified above must be amended because they are expressly prohibited by the December 2015 Judgment.  Until appropriately amended, the Turner Lawsuits should be stayed pursuant to the express rulings in the December 2015 Judgment.

## NOTICE

63.    Notice of this Motion to Enforce has been provided to counsel for the State Court Plaintiffs, and all entities that receive electronic notice from the Court's ECF system.  New GM submits that such notice is sufficient and no other or further notice need be provided.

---

[32]    Marked up versions of each of the Complaints, which highlight the offending provisions, are contained in the compendium of exhibits as **Exhibits "T", "U", "V" and "W."**

64.    No prior request for the relief sought in this Motion to Enforce has been made to this or any other Court.

WHEREFORE, New GM respectfully requests that this Court enter an order, substantially in the form contained in the compendium of exhibits as **Exhibit "X,"** granting the relief sought herein, and for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      June  1, 2016

Respectfully submitted,

    /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Attorneys for General Motors LLC*