# Exhibit D

ELECTRONICALLY FILED
2015-Jul-21 15:23:55
60CV-15-3292
C06D17 : 9 Pages

## CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

| | |
|---|---|
| TAMMIE CHAPMAN, Personal Representative of the Estate of AUBREY CHAPMAN, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL MOTORS, LLC; NABHOLZ, INC.; RUSSELL CHEVROLET COMPANY<br><br>Defendants. | **Civil Action:** _____ |

## ORIGINAL COMPLAINT

Plaintiff, TAMMIE CHAPMAN, Personal Representative of the Estate of AUBREY CHAPMAN, Deceased, submits the following Complaint against Defendants, stating:

1.

This is a products liability, negligence, and wrongful death action brought pursuant to Arkansas law. The single vehicle rollover crash that forms the subject of this litigation occurred on July 26, 2012, while the Decedent was traveling through Colorado. The subject vehicle, including the safety system, was placed into the chain of commerce, distributed, and maintained in Pulaski County, Arkansas.

2.

Plaintiff TAMMIE CHAPMAN is a citizen and resident of Hot Spring County, Arkansas, and the former spouse of the Decedent. She is the duly-appointed Administratrix and Personal Representative of the Estate of AUBREY CHAPMAN, Deceased. AUBREY CHAPMAN was a citizen and resident of Hot Spring County, Arkansas at the time of his death with his residence in Bismarck, Arkansas.

3.

Defendant General Motors, LLC ("GM-LLC") is a Delaware Limited Liability Company and the successor to GM. On July 10, 2009, GM's continuing operational assets were transferred to "Acquisition Holdings LLC", which assumed the name "General Motors Company LLC". As part of a reorganization plan agreed to with the U.S., Canadian and Ontario governments, and the company's unions, GM filed for Chapter 11 Bankruptcy protection in a Manhattan court in New York on June 1, 2009. GM filed for a government-assisted Chapter 11 bankruptcy protection on June 1, 2009, with a plan to re-emerge as a less debt-burdened organization. The filing reported $82.29 billion in assets. The "new GM," or "GM-LLC" was formed from the purchase of the desirable assets of "old GM" by an entity called "NGMCO Inc." via the bankruptcy process. NGMCO Inc. was renamed to "General Motors Company" upon purchase of the assets and trade name from "old GM," with the claims of former stakeholders to be handled by the "Motors Liquidation Company." The purchase was supported by $50 billion in U.S. Treasury loans, giving the U.S. government a 60.8% stake in GM. The Queen of Canada, in right of both Canada and Ontario, holds 11.7% and the United Auto Workers, through its health-care trust (VEBA), holds a further 17.5%. The remaining 10% is held by unsecured creditors. On July 10, 2009, a new entity, NGMCO Inc. purchased the ongoing operations and trademarks from GM. The purchasing company in turn changed its name from NGMCO Inc. to General Motors Company, marking the emergence of a new operation from the "pre-packaged" Chapter 11 reorganization. Under the reorganization process, termed a 363 sale (for Section 363 which is located in Title 11, Chapter 3, Subchapter IV of the United States Code, a part of the Bankruptcy Code), the purchaser of the assets of a company in bankruptcy proceedings is able to obtain approval for the purchase from the court prior to the submission of a re-organization plan, free of liens and other claims. The U.S. Treasury financed a new company to purchase the operating assets of the old GM in bankruptcy proceedings in the 'pre-packaged' Chapter 11 reorganization in July, 2009. At all times relevant to the complaint, GM-LLC formally accepted responsibility for the design, manufacture, assembly, marketing and distribution of the subject vehicle, including financial responsibility for damages associated with defects in the subject vehicle. Prior to June 1, 2009, General Motors Corporation (n/k/a Motors Liquidation Company "MLC"), and now known as GM-LLC, was and is authorized to conduct business in Arkansas, owns property in Arkansas, conducts business in

Arkansas and derives significant revenue from its activities in Arkansas, and is therefore subject to be sued in Arkansas courts. At all times relevant to the complaint, GM-LLC was in the business of designing, developing, testing, manufacturing, marketing and distributing automobiles, including the defective truck that forms the subject matter of this litigation. GM conducts business in Arkansas and is subject to jurisdiction in Arkansas. GM may be served with process through its registered agent, Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas, 72201.

4.

At all times relevant to the subject complaint, *GM* was in the business of designing, developing, testing, assembling, manufacturing, marketing, and distributing automobiles, including the subject 2004 model Silverado C1500 pickup truck, worldwide.

5.

Defendant NABHOLZ, INC. (hereinafter "*Nabholz*") is an Arkansas for profit corporation whose business address includes offices at 3000 W. 68th Street, Little Rock, Arkansas. *NABHOLZ* was authorized to conduct business in Arkansas, conducted business in Arkansas, had agents in Arkansas, and derived economic profit from Arkansas. As such, *NABHOLZ* is subject to personal jurisdiction in Arkansas and may be served with process through its agent, Greg Williams, 612 Garland, Conway, Arkansas 72032.

6.

RUSSELL CHEVROLET COMPANY (hereinafter *Russell*) is an Arkansas corporation whose primary business is located at 6100 Landers Road, North Little Rock, Pulaski County, Arkansas. *Russell* is an authorized GM dealership, providing inventory of new and used cars and SUVs for the consuming public. *Russell* placed the vehicle in question into the stream of commerce in a defective and unreasonably dangerous condition and provided service and maintenance. *Russell* may be served with process through its registered agent, Bob Russell at 6100 Landers Road, Sherwood, Arkansas, 72120.

7.

**JURISDICTION AND VENUE**

Venue is appropriate in Pulaski County, Arkansas, because this is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, and the county of defendant's residence. The amount in controversy exceeds the jurisdictional limits of the court.

8.

**FACTUAL BACKGROUND**

This is a products liability, negligence, and wrongful death action brought pursuant to Arkansas law. The single vehicle rollover crash that forms the subject of this litigation occurred on July 26, 2012, while the Decedent was traveling through Colorado. The subject vehicle, including the safety system, was placed into the chain of commerce, distributed, and maintained in Pulaski County, Arkansas. At all times relevant to the Complaint, Defendants were in the business of designing, developing, assembling, testing, manufacturing, and distributing vehicles and tires for use by consumers.

9.

The 2004 model GM pickup was designed, manufactured, marketed, distributed and sold by *GM and Russell*. The truck was designed and marketed for use on the freeways as a safe and stable passenger-carrying vehicle.

10.

The GM truck was equipped with a safety belt system that was designed, tested, manufactured and distributed, individually and jointly, by *GM* and suppliers. *GM* created all design and performance specifications, including the choice of restraints and safety systems to be designed into the vehicle. At all times relevant to the complaint, the restraint system, including the buckle, were defective and unreasonably dangerous.

11.
**COUNT I**
**(Strict Liability/Products Liability – Design Defect)**
**GM-RUSSELL**

At all times relevant to the complaint, the defendants were in the business (for profit) of designing, manufacturing, assembling, marketing, and distributing automobiles and auto components, including tires and safety belt systems. The products in question – the GM truck, and the occupant safety equipment (belt-roof-glazing), all contained design defects at the time the product was manufactured, all of

which combined to cause, proximately cause, and result in the producing cause of the damage, injuries, enhanced injuries, and damages alleged herein. The referenced design defects in the products are and were conditions of the products that rendered the products unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in use. At all times relevant to the Complaint, "safer alternative designs" existed, other than the ones actually used for the vehicle and tire, that in reasonable probability would have prevented or significantly reduced the risk of the occurrence or injury in question without substantially impairing the product's utility; and were economically and technologically feasible at the time the products left the control of the defendants by the application of existing or reasonably achievable scientific knowledge.

12.

The defective nature of the design of the truck included defects in design, stability, handling, marketing, instructions, warning, crashworthiness, rollover resistance and controllability, including the tendency to skate. The defective nature of the vehicle includes the following:

- The truck is defective in that the design of the "package," which includes the combination of track width and vertical center of gravity height, creates an unreasonable risk of loss of control and rollover given the uses for which the vehicle was marketed;

- The truck is defective from a handling standpoint because it has an unreasonable tendency to get sideways in emergency turning maneuvers and does not remain controllable under all operating conditions as required by *GM* guidelines, including the tendency to overseer and skate in foreseeable turning maneuvers;

- The truck is unreasonably dangerous from a stability standpoint because it rolls over instead of slides when loss of control does occur on relatively flat level surfaces during foreseeable steering maneuvers;

- The truck is defective from a handling standpoint because it has an unreasonable tendency to get oversteer, skate and get sideways in emergency situations, and does not remain controllable under all operating conditions as required by *GM* guidelines;

- The combination of the foregoing creates an extreme risk of rollover that is both beyond the reasonable expectations of consumers and creates a risk that far outweighs any benefit associated with the design given the uses for which the vehicle was marketed;

- The vehicle is unreasonably dangerous because it performs in an unsafe manner when operated in foreseeable turning maneuvers that are consistent with *GM's* effort to market the vehicle as a passenger-carrying vehicle at freeway speeds, which *GM* had both actual and constructive knowledge would lead to rollover crashes. *GM's* knowledge included both actual knowledge based on its test history with trucks and SUVs; its research and knowledge of rollover in foreseeable turning maneuvers;

- The vehicle was defectively marketed in that consumers were led to believe that the vehicle was safe and stable and could be safely used as a passenger-carrying vehicle when defendants knew that this was untrue;

- The risk of operating the vehicle as designed outweighed any benefits associated with the design and the defendants knew of these risks; knew that the risk, if it materialized, would lead to rollover crashes and severe injuries; and knew that rollover crashes were particularly dangerous;

- The defendants knew that this type vehicle—a light truck—was not reasonably safe for inexperienced and untrained drivers and knew that the vehicle was not sufficiently capable of maneuvering in emergency conditions that consumers would face on freeways at freeway speeds;

- The truck was likewise unreasonably dangerous from a crash protection standpoint in that the vehicle was not equipped with an occupant protection system—roof, safety belt system, and glazing design—that would effectively provide reasonable protection in the event of a rollover. GM knew that the belt system would not effectively and reasonably restrain occupants involved in freeway-speed rollovers, including actual knowledge learned from suppliers in the industry as early as 1996, and *GM* knew of the risk that the roof was not sufficiently strong to provide a safety cage for the occupants. Despite knowledge of these risks, and the availability of alternative safer designs, including safety features tied to roll sensing—such as pretensioners and side airbags or curtains—*GM* intentionally marketed the vehicle to consumers for use as a freeway, passenger-carrying vehicle, and intentionally led consumers to believe that it was safe, stable, and would provide state of the art protection to occupants;

- The defendants had both actual and constructive knowledge of the existence of safer, alternative designs from both a stability and crash protection standpoint, including roll sensing, roll curtains, electronic stability control, roll stability control, and other safety features that were technologically feasible and available;

- The defendants willfully, wantonly, and consciously marketed the truck for the aforementioned uses with full knowledge of the risks inherent in the vehicle design, yet misled consumers and withheld critical information about the unsafe nature of the vehicle in conscious disregard for the public, including information about vehicle failures worldwide;

- *GM* failed to act appropriately to take reasonable steps to protect occupants in the event of a rollover. GM's conscious disregard for known facts surrounding available technology and the performance of the truck constitutes malicious conduct under applicable law.

13.

The defective nature of the truck was a proximate and producing cause of the crash and injuries and damages suffered by Plaintiffs. The products were in the substantially the same condition on the date of the crash as they were at the time of manufacture. The Defendants are therefore strictly liable for supplying a defective and unreasonably dangerous product(s) that resulted in plaintiffs' personal injury and property damage.

14.

### COUNT II
### NEGLIGENCE

At all times relevant to the Complaint, defendant GM was in the business of supplying motor vehicles, components, and safety equipment for use on the public roadways in Arkansas. The defendant held themselves out to the public as having specialized knowledge in the industry, especially with respect to trucks, SUVs and safety components. As such, the defendant, individually and jointly, owed consumers, including the plaintiffs, a duty to use reasonable care in the design, manufacture, preparation, testing, instructing, and warnings surrounding the truck and safety equipment. The defendant violated this duty by negligently supplying a vehicle that were defective, unreasonably dangerous, and knowingly harmful to consumers when used as marketed. The negligent acts include but are not limited to the following acts or omissions:

- Negligently designing the vehicle from a handling and stability standpoint given the manner in which it was marketed;

- Negligently designing the vehicle with poor rollover resistance given the manner in which it was marketed;

- Negligently designing and testing the vehicle so as to assure its controllability;

- Negligently testing of the vehicle from a handling and stability standpoint, including negligent failure to appropriately test and evaluate the design approved for use on the truck;

- Negligently failing to test the vehicle to ensure the design provides reasonable occupant protection in the event of a rollover;

- Failing to adequately train and assist dealers in the dangers associated with the vehicle and tires when used as marketed;

- Negligently marketing the vehicle as a safe and stable passenger vehicle given the uses for which it was marketed;

- Failure to meet or exceed internal corporate guidelines;

- Negligently advertising the vehicle as safe and stable family vehicle;

- Failing to inform the consumer, including the plaintiffs, of the information the defendants knew about rollover risk and specifically the truck, thus depriving plaintiffs of the right to make a conscious and free choice, and also in failing to disclose known problems in foreign countries in an effort to conceal problems that the defendants knew about the truck;

- Failing to comply with the state of the art in the automotive industry insofar as providing reasonable occupant protection in a rollover, including the use of safe retractors, latch plates, roll sensing, ESC, pretensioners, side air bag and curtain technology, and integrated seating technology;

- Failing to comply with applicable and necessary Federal Motor Vehicle Safety Standards with respect to occupant protection and/or failing to test appropriately to ensure compliance;

- Failing to notify consumers, as required by law, that a defect exists in the vehicle that relates to public safety;

- Negligent failure to warn of aging problems associated with the safety equipment.

*Nabholz* was generally negligent in failing to maintain the vehicle for itself and for permissive users such as Plaintiff, and breaching its legal duty owed to Decedent. *Nabholz* negligence was a proximate cause of the crash, death and damages. These acts of negligence of all defendants combined as a proximate and producing cause of the incident in question and the injuries and damages sustained by Plaintiffs.

15.

During all relevant time periods, defendants GM had actual and constructive knowledge of the dangers associated with the failure of the truck, and in particular the failure of the combination of vehicle and safety equipment. Despite such knowledge, the defendant GM acted in their own interests, with an "evil mind," in a willful, wanton

and malicious manner, having reason to know, and consciously disregarding, a substantial risk that their conduct might significantly injure or kill others. The defendant had both objective and subjective knowledge of the dangers and risks associated with their products in the hands of consumers and, as such, should be punished in the form of punitive or exemplary damages.

16.

Plaintiffs are seeking monetary damages from the defendants, jointly and severally, as found to be reasonable by the jury after consideration of all evidence. The plaintiffs are seeking recovery for the following types of injuries and damages:

- Conscious pain and suffering in the past and in the future;
- Past medical and funeral expense;
- Past and future mental and emotional anguish;
- Past and future loss of earnings;
- Loss of life and the value of life;
- Loss of society and companionship;
- Punitive or exemplary damages;
- For costs incurred herein, including attorneys fees;
- For pre-judgment interest at the maximum rate allowed by law;
- For post-judgment interest at the maximum rate allowed by law;
- For such other and further relief as the Court may deem just and proper.

DATED this 21st day of July, 2015.

/s/ C. TAB TURNER
Tab Turner
Bar #85158
**TURNER & ASSOCIATES, P.A.**
4705 Somers Ave, Suite 100
North little Rock, AR, 72116
501-791-2277 – Phone
501-791-1251 – Fax
tab@tturner.com

*Attorneys for the Plaintiff*