# Exhibit U

FILED IN MY OFFICE
DISTRICT COURT CLERK
12/30/2013 11:14:36 AM
STEPHEN T. PACHECO
byh

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

THE WRONGFUL DEATH ESTATE
OF CLAUDIA LEMUS, Deceased,
by and through, DAVID P. GARCIA,
as Personal Representative,

                    Plaintiff,

v.                                      No. D-101-CV-2013-03270

GENERAL MOTORS, LLC and
PERFORMANCE CHEVROLET, PERFORMANCE BUICK GMC,
and HI-COUNTRY CHEVROLET, INC.

                    Defendants.

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, by and through her counsel, Carter & Valle Law Firm, P.C., (Richard J. Valle), Emeterio L. Rudolfo, and TURNER & ASSOCIATES, P.A. (*pro hac vice pending*) and bring the following action against Defendants pursuant to applicable New Mexico law:

## PARTIES

1. Plaintiff David P. Garcia is an appropriate person to serve as personal representative for purposes of presenting the Estate's claims herein. Mr. Garcia is a practicing attorney licensed in the State of New Mexico located in Santa Fe, New Mexico.

2. Plaintiff requests that the Court appoint David P. Garcia as the wrongful death Personal Representative as provided under New Mexico law.

3. Defendant General Motors, LLC ("GM-LLC") is a Delaware Limited Liability Company ~~and the successor to GM~~. On July 10, 2009, ~~GM's~~ Old GM's continuing operational assets were

transferred to "Acquisition Holdings LLC", which assumed the name "General Motors Company LLC". As part of a reorganization plan agreed to with the U.S., Canadian and Ontario governments, and the company's unions, ~~GM~~ [Old GM] filed for Chapter 11 Bankruptcy protection in a Manhattan court in New York on June 1, 2009. ~~GM~~ [Old GM] filed for a government-assisted Chapter 11 bankruptcy protection on June 1, 2009~~, with a plan to re-emerge as a less debt-burdened organization~~. The filing reported $82.29 billion in assets. The "new GM," or "GM-LLC" was formed from the purchase of the desirable assets of "old GM" by an entity called "NGMCO Inc." via the bankruptcy process. NGMCO Inc. was renamed to "General Motors Company" upon purchase of the assets and trade name from "old GM," with the claims of former stakeholders to be handled by the "Motors Liquidation Company." The purchase was supported by $50 billion in U.S. Treasury loans, giving the U.S. government a 60.8% stake in ~~GM~~ [New GM]. The Queen of Canada, in right of both Canada and Ontario, holds 11.7% and the United Auto Workers, through its health-care trust (VEBA), holds a further 17.5%. The remaining 10% is held by unsecured creditors. On July 10, 2009, a new entity, NGMCO Inc. purchased the ongoing operations and trademarks from ~~GM~~ [Old GM]. The purchasing company in turn changed its name from NGMCO Inc. to General Motors Company~~, marking the emergence of a new operation from the "pre-packaged" Chapter 11 reorganization~~. Under the reorganization process, termed a 363 sale (for Section 363 which is located in Title 11, Chapter 3, Subchapter IV of the United States Code, a part of the Bankruptcy Code), the purchaser of the assets of a company in bankruptcy proceedings is able to obtain approval for the purchase from the court prior to the submission of a re-organization plan, free of liens and other claims. The U.S. Treasury financed a new company to purchase the operating assets of the old GM in bankruptcy proceedings in the 'pre-packaged' Chapter 11 reorganization in July, 2009. At all times relevant to the complaint, GM-LLC formally accepted

responsibility for the design, manufacture, assembly, marketing and distribution of the subject vehicle, including financial responsibility for damages associated with defects in the subject vehicle. ~~Prior to June 1, 2009, General Motors Corporation (n/k/a Motors Liquidation Company "MLC"), and now known as~~ GM-LLC, ~~was and~~ is authorized to conduct business in New Mexico, owns property in New Mexico, conducts business in New Mexico and derives significant revenue from its activities in New Mexico, and is therefore subject to be sued in New Mexico courts. Since July 10, 2009, ~~At all times relevant to the complaint,~~ GM-LLC was in the business of designing, developing, testing, manufacturing, marketing and distributing automobiles~~, including the defective truck that forms the subject matter of this litigation~~. The GM agent for service of process resides in New Mexico.

4.   Defendant PERFORMANCE CHEVROLET is a New Mexico corporation that sold the vehicle at issue. Defendants PERFORMANCE BUICK GMC, and HI-COUNTRY CHEVROLET, INC. are on information and belief the successors in interest to PERFORMANCE CHEVROLET and are collectively referred to as "Dealer" or "Dealers."

### JURISDICTION AND VENUE

5.   All of the material acts and/or omissions complained of herein occurred in San Juan County, State of New Mexico.

6.   This Court has original jurisdiction over Plaintiff's claims pursuant to NMSA 1978 § 41-4-18.

7.   Venue is properly laid in this district pursuant to NMSA 1978 § 38-3-1(F) and § 41-4-18(B).

3

## FACTS COMMON TO ALL CAUSES OF ACTION

8.  At approximately 9:55 p.m. on February 20, 2013, decedent Lemus was driving her 2008 GMC pickup on Highway 550 at a safe and reasonable speed given the surrounding conditions.

9.  As decedent Lemus approached mile marker 115, undetectable icy conditions on the roadway caused the vehicle to begin to skid. The vehicle crossed over the center median and into other traffic lanes before rolling over and coming to rest on its roof.

10. As the vehicle rolled, and despite wearing her safety belt at all times, decedent Lemus died as a result of fatal injuries caused and/or enhanced by the crash.

11. Decedent Lemus endured intense physical pain and suffering, emotional distress and fear during the course of the incident described above until her death.

12. The defective vehicle which forms the basis for this suit is a 2008 GMC truck designed, tested, manufactured, assembled, and/or distributed by ~~GM LLC~~ Old GM.

## COUNT I
## STRICT LIABILITY

13. Plaintiff incorporates all prior allegations as if fully set forth herein.

14. The subject pickup truck is defective and unreasonably dangerous by design when used as marketed by ~~GM LLC~~ Old GM. The inherent defects in the design were present at the time the vehicle was manufactured and distributed. The defects in the vehicle were a proximate and producing cause of the enhanced injuries, death and damages. At all times relevant to the Complaint, ~~GM LLC~~ Old GM was in the business of designing, manufacturing or otherwise distributing automobiles. The defective nature of the design of the truck included defects in design; stability;

4

handling; marketing; instructions; warning; crashworthiness; rollover resistance and controllability. The defective nature of the vehicle includes the following

    A. The truck is defective from a handling standpoint because it has an unreasonable tendency to get sideways in emergency situations, both alone and in towing combinations, and does not remain controllable under all operating conditions as required by ~~GM-LLC~~ **Old GM** guidelines, including the tendency to oversteer and skate;

    B. The combination of the conditions described in subparagraphs (a) through (b) above creates an extreme risk of rollover that is both beyond the reasonable expectations of consumers and creates a risk that far outweighs any benefit associated with the design given the uses for which the vehicle was marketed;

    C. The vehicle is unreasonably dangerous because it performs in an unsafe manner when operated in foreseeable emergency situations, including towing situations, and maneuvers, which ~~GM-LLC~~* had both actual and constructive knowledge would lead to rollover crashes. ~~GM-LLC~~*'s knowledge included both actual knowledge based on its test history with SUVs; its research and knowledge of rollover in foreseeable turning maneuvers; and given its corporate history with respect to truck-type product designs;

*replace: Old GM

    D. The risk of operating the vehicle as designed outweighed any benefits associated with the design and ~~GM-LLC~~* knew of these risks; knew that the risk, if it materialized, would lead to rollover crashes and severe injuries; and knew that rollover crashes were particularly dangerous;

*replace: Old GM

    E. ~~GM-LLC~~ **Old GM** knew that this type vehicle was not reasonably safe for inexperienced and untrained drivers and knew that the vehicle was not sufficiently capable of maneuvering in emergency conditions that consumers would face on freeways at freeway speeds, including while towing;

    F. The truck was likewise unreasonably dangerous from a crash protection standpoint in that the vehicle was not equipped with an occupant protection system – roof, safety belt system, and glazing design – that would effectively provide reasonable protection in the event of a rollover. ~~GM-LLC~~* knew that the belt system would not effectively and reasonably restrain occupants involved in freeway-speed rollovers and ~~GM-LLC~~* knew of the risk that the roof was not sufficiently strong to provide a safety cage for the occupants, and that countermeasures for rollover resistance and rollover occupants protection were both technologically and economically feasible at the time of manufacture, and that these features (roll stability control; ESC; pretensioning; safety canopies and integrated belts) were necessary and reasonable features to protect occupants, keep them inside the safety zone, and keep the safety zone from collapsing. Despite knowledge of these risks, and the availability of alternative safer designs,

*replace: Old GM

5

~~GM-LLC~~ [Old GM] intentionally marketed the vehicle to consumers for use as a freeway, passenger-carrying vehicle, and intentionally led consumers to believe that it was safe, stable, and would provide state of the art protection to occupants in rollovers despite clear knowledge that key safety technology was not incorporated into the product;

G. ~~GM-LLC~~ [Old GM] knew that the vehicle was not sufficiently equipped with restraints (including buckles) that were designed to perform safely in rollovers, despite the fact that GMC marketed the vehicle for freeway use while towing;

H. ~~GM-LLC~~ [Old GM] had both actual and constructive knowledge of the existence of safer, alternative designs from both a stability and crash protection standpoint, and that the alternatives were technologically feasible and available;

I. ~~GM-LLC~~ [Old GM] ~~willfully, wantonly, and consciously~~ marketed the truck for the aforementioned uses with full knowledge of the risks inherent in the vehicle design, yet misled consumers and withheld critical information about the unsafe nature of the vehicle in conscious disregard for the public.

15. The defective nature of the vehicle was a proximate and producing cause of the accident, injuries, death of decedent Lemus and damages suffered by the Plaintiffs. GM-LLC is therefore strictly liable for supplying a defective and unreasonably dangerous product that resulted in personal injury, death and property damage.

16. A safer alternative design was economically and technologically feasible at the time the product left the control of ~~GM-LLC~~ [Old GM], both with respect to handling and rollover propensity and crash protection.

17. Dealers are liable as provided under New Mexico Law for their distribution of the defective vehicle.

## COUNT II
## NEGLIGENCE (GM-LLC)

18. Plaintiff incorporates all prior allegations as if fully set forth herein.

19. At all times relevant to this Complaint, ~~GM-LLC~~ [Old GM] was in the business of supplying motor vehicles for use on the public roadways. ~~GM-LLC~~ [Old GM] held themselves out to

6

the public as having specialized knowledge in the industry, especially with respect to truck products with towing capability. As such, ~~GM-LLC~~ *Old GM* owed consumers, including the Plaintiff, a duty to use reasonable care in the design, manufacture, preparation, testing, instructing, and warnings surrounding the truck. ~~GM-LLC~~ *Old GM* violated this duty by negligently supplying a vehicle that was defective and not reasonably safe for the uses for which it was marketed. The negligent acts* include but are not limited to the following acts or omissions: *insert: "of Old GM"

  a. Negligently designing the vehicle from a handling and stability standpoint given the manner in which it was marketed;

  b. Negligently designing the vehicle with poor rollover resistance given the manner in which it was marketed;

  c. Negligently designing and testing the vehicle from an occupant protection standpoint;

  d. Negligently testing of the vehicle from a handling and stability standpoint when towing;

  e. Negligently failing to test the vehicle to ensure the design provides reasonable occupant protection in the event of a rollover, and to ensure that towing capability was reasonably safe;

  f. Failing to adequately train and assist dealers in the dangers associated with the vehicle when used as marketed;

  g. Failing to disclose known defects, dangers, and problems to both dealers and the public;

  h. Negligently marketing the vehicle as a safe and stable passenger vehicle given the uses for which it was marketed;

  i. Failure to meet or exceed internal corporate guidelines;

  j. Negligently advertising the vehicle as safe and stable towing vehicle;

  k. Failing to comply with the state of the art in the automotive industry insofar as providing reasonable occupant protection in a rollover, including the use of roll sensing, pretensioners, side air bags (canopies) and curtain technology, including ejection reduction, and integrated seating technology;

7

l. Failing to comply with applicable and necessary Federal Motor Vehicle Safety Standards with respect to occupant protection and/or failing to test appropriately to ensure compliance;

m. ~~Failing to notify consumers, as required by law, that a defect exists in the vehicle that relates to public safety;~~

n. ~~Failing to recall the vehicle or; alternatively, retrofitting the vehicle to enhance safety.~~

20. These acts of negligence were a proximate and producing cause of the accident, injuries, death and damages suffered by the Plaintiff. The dangers referenced earlier were reasonably foreseeable or scientifically discoverable at the time of exposure.

## COUNT III
## BREACH OF WARRANTY

21. Plaintiff incorporates all prior allegations as if fully set forth herein.

22. At all times relevant to the complaint, ~~Defendant GM-LLC~~ [Old GM] was a "merchant" in the business of supplying "goods". The truck was a "good" and/or "product" sold for consumer usage under applicable New Mexico law.

23. Prior to the sale of the truck, and release of the truck into the marketplace, ~~GM-LLC~~ [Old GM] had reason to know the purpose for which Lemus specifically - and as a general consumer of the products which were designed, manufactured, and marketed by ~~GM-LLC~~ [Old GM], individually and/or in tandem - bought the truck.

24. ~~GM-LLC~~ [Old GM] had reason to know that decedent Lemus was relying on GM-LLC's skill or judgment to design, manufacture, market, and select goods suitable for the purpose for which they were sold.

25. Decedent Lemus relied on ~~GM-LLC~~ [Old GM] to design, manufacture, market, and select the appropriate goods.

8

26. As such, ~~GM-LLC~~ **Old GM** breached the warranties of merchantability and fitness for a particular purpose in that the truck in question was not fit for ordinary use or for the intended use for which it was purchased.

27. ~~GM-LLC's~~ **Old GM's** warranties extended to Plaintiff.

28. These breaches of warranty proximately resulted in the accident, injuries, death and damages suffered by the Plaintiff.

29. Notice has been provided as required by law.

## DAMAGES

30. Plaintiff incorporates all prior allegations as if fully set forth herein.

31. As a direct and proximate result of negligence of the Defendants as set forth herein, Plaintiffs incurred and seek the following general and special damages, including damages for wrongful death:

   A. Wrongful death damages for the Estate of decedent Lemus;
   B. Pain and suffering and emotional distress, past and future;
   C. Funeral and burial expenses;
   D. Reasonable and necessary medical and non-medical care, treatment and services;
   E. The nature, extent, and duration of Plaintiffs' injuries;
   F. Loss of guidance and counseling for the minor children who have survived the death of their mother;
   G. Physical impairment;
   H. The aggravating circumstances attending the wrongful acts and omissions of the Defendant;
   I. Any appropriate punitive damages.* *insert: ", as against Defendants other than New GM."

32. ~~As discussed in the aforementioned paragraphs, and pursuant to UJI 13-1827 on punitive damages, the conduct of Defendant GM-LLC was willful, reckless, and/or wanton and gives rise to punitive damages as outlined above~~.

**WHEREFORE**, Plaintiff requests the following relief:

   a. Awards of general and special compensatory damages as set forth above;

9

b. Their costs of action herein;

c. Interest as allowed by law;

*insert: ", as against Defendants other than New GM."

d. Any appropriate punitive damages*; and,

e. Such other and further relief as the Court may deem appropriate under the circumstances.

Respectfully submitted,

CARTER & VALLE LAW FIRM, P.C.

/s/ Richard J. Valle
Richard J. Valle
8012 Pennsylvania Circle NE
Albuquerque, New Mexico 87110
(505) 888-4357

Emeterio L. Rudolfo, Esq.
2713 East 20th Street, Suite D
Farmington NM  87402
(505) 325-8242

&

Tab Turner
Turner & Associates, P.A.
4705 Somers Avenue
North Little Rock, AR 72116
(501) 791-2277

*Attorneys for Plaintiff*