**Objection Deadline: June 20, 2016 at 4:00 p.m. (ET)**
**Hearing Date and Time: June 27, 2016 at 11:00 a.m. (ET)**

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
T: 212-813-8800
E: wweintraub@goodwinprocter.com
E: gfox@goodwinprocter.com

*Counsel for Turner & Associates, P.A. and*
*Butler Wooten & Peak LLP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
In re:                                                      :          Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                         :          Case No.: 09-50026 (MG)
        f/k/a General Motors Corp., et al.,                 :
                                                            :
                                     Debtors.               :          (Jointly Administered)
------------------------------------------------------------X

**OBJECTION BY STATE COURT PLAINTIFFS TO MOTION BY
GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO
ENFORCE THE BANKRUPTCY COURT'S JULY 5, 2009 SALE ORDER
<u>AND INJUNCTION, AND THE RULINGS INCONNECTION THEREWITH</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

OBJECTION...............................................................................................................................4

I.  THIS COURT'S PRIOR RULINGS PERMIT THE STATE COURT PLAINTIFFS
    TO ASSERT INDEPENDENT CLAIMS AGAINST NEW GM IF THEY CAN
    SHOW A DUE PROCESS VIOLATION IN CONNECTION WITH THE 363
    SALE (AN ISSUE THAT WAS NEVER BEFORE THIS COURT) .............................4

    A.  The 2014 Motions to Enforce and April 2015 Decision.........................................5
    B.  The June 2015 Judgment and September 3 Scheduling Order ..............................10
    C.  The November 2015 Decision and December 2015 Judgment ............................15

II. BECAUSE THEIR ACCIDENTS HAD NOT YET OCCURRED AT THE TIME
    OF THE 363 SALE, THE STATE COURT PLAINTIFFS WERE NEVER GIVEN
    DUE PROCESS AND AN OPPORTUNITY TO PROTECT THEMSELVES
    FROM THE ENTRY OF AN OVERBROAD SALE ORDER THAT BARRED
    THEM FROM SUING NEW GM FOR NEW GM'S OWN POST-SALE
    CONDUCT ..................................................................................................................19

III. UNDER SECOND CIRCUIT PRECEDENT, THE COURT LACKED SUBJECT
     MATTER JURISDICTION TO BAR THE STATE COURT PLAINTIFFS'
     IN PERSONAM CLAIMS AGAINST NEW GM FOR ITS OWN POST-SALE
     CONDUCT ..................................................................................................................23

IV. CONCLUSION...........................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Chrysler LLC*, 576 F.3d 108 (2d Cir. 2009)........................................................................21

*In re Motors Liquidation Co.*,
　　529 B.R. 510 (Bankr. S.D.N.Y. 2015)............................................................................ *passim*

*In re Motors Liquidation Co.*,
　　541 B.R. 104 (Bankr. S.D.N.Y. 2015)............................................................................ *passim*

*Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*,
　　445 B.R. 243 (Bankr. S.D.N.Y. 2011)..................................................................................21

*Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*,
　　467 B.R. 694 (S.D.N.Y. 2012)........................................................................................ *passim*

*Mullane v. Cent. Hanover Bank & Trust Co.*,
　　339 U.S. 306 (1950).....................................................................................................19, 20

*Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,
　　517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds*, *Travelers Indem. Co. v.
　　Bailey*, 557 U.S. 137 (2009)................................................................................25, 26, 27, 28

*Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,
　　600 F.3d 135 (2d Cir. 2010)....................................................................................25, 27, 28

STATUTES

28 U.S.C. § 1334.........................................................................................................................23

Turner & Associates, P.A. (the "**Turner Firm**"), as counsel to the plaintiffs in the Chapman Lawsuit[1] pending in the Arkansas State Court and the Tibbetts Lawsuit pending in the New Mexico State Court,[2] and Butler Wooten & Peak LLP ("**BW&P**"), as counsel to the plaintiff in the Fox Lawsuit pending in the Georgia State Court, by and through undersigned counsel hereby respectfully submit this objection (the "**Objection**") to the *Motion by General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363  to Enforce the Bankruptcy Court's July 5, 2009 Sale Order and Injunction, and the Rulings In Connection Therewith*, which was filed on June 1, 2016 [Docket No. 13634] (the "**Motion**").  In support of this Objection, the Turner Firm and BW&P (together, the "**Objecting Firms**") respectfully state as follows:

## PRELIMINARY STATEMENT

The Objecting Firms represent the State Court Plaintiffs, each of whom were injured or killed <u>after</u> the July 10, 2009 closing of the 363 Sale in incidents involving vehicles manufactured by Old GM.  None of the vehicles at issue in the State Court Lawsuits were among the models of vehicles containing the "Ignition Switch Defect"[3] and none of the State Court

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion (defined below).

[2] The Turner Firm also represents the Plaintiff in the Lemus Lawsuit pending before the New Mexico State Court, which was referenced in New GM's Motion.  As of the date hereof, the Lemus Lawsuit has been settled and is no longer at issue in these proceedings.  Moreover, after meeting and conferring with counsel to New GM, the Turner Firm has filed amended complaints in the Tibbetts Lawsuit and the Chapman Lawsuit to assuage New GM's concerns regarding certain wording in those complaints expressed in paragraphs 57 through 62 of the Motion.  Those revised complaints are attached hereto as **Exhibit A**.  BW&P, as Plaintiff's counsel in the Fox Lawsuit pending in Georgia State Court, has likewise been conferring with counsel to New GM, have filed a First Recast & Amended Complaint, to which counsel for New GM has commented, and have offered to file a Second Recast & Amended Complaint.  Those discussions continue.  Accordingly, this Objection shall only focus on New GM's argument that the State Court Plaintiffs cannot pursue punitive damages or Independent Claims (defined below).

[3] The term "Ignition Switch Defect" was defined in Judge Gerber's April 2015 Decision as follows: "In March 2014, New GM announced to the public, for the first time, serious defects in ignition switches that had been installed in Chevy Cobalts and HHRs, Pontiac G5s and Solstices,

1

Plaintiffs' complaints seeks to hold New GM liable for acts of Old GM on a theory of successor

liability. To the contrary, the claims the State Court Plaintiffs assert against New GM all

constitute (i) "Product Liabilities"[4] that New GM expressly assumed under the Sale Agreement

approved by this Court on July 5, 2009 or (ii) claims seeking to hold New GM liable on theories

of negligence and failure to warn/recall for <u>New GM's own actions and inactions</u> following its

acquisition of Old GM's assets, employees, and books and records upon the closing of the 363

Sale (*i.e.*, "**Independent Claims**").[5]  In connection with their Independent Claims against New

GM, the State Court Plaintiffs seek punitive damages (in addition to compensatory damages)

from New GM.[6]

        As explained below, this Court ruled in 2015 that the 2009 Sale Order was never meant

to absolve New GM from its <u>own</u> wrongful post-sale conduct, even if such conduct related to

vehicles manufactured by Old GM.  This Court also ruled in 2015 that parties denied due process

in 2009 in connection with the 363 Sale could pursue Independent Claims against New GM

---

and Saturn Ions and Skys (the "**Ignition Switch Defect**"), going back to the 2005 model year."
*In re Motors Liquidation Co.*, 529 B.R. 510, 521 (Bankr. S.D.N.Y. 2015).

[4] As defined in the Sale Agreement, "Products Liability" means "all Liabilities to third parties for
death, personal injury, or other injury to Persons or damage to property caused by motor vehicles
designed for operation on public roadways or by the component parts of such motor vehicles
and, in each case, manufactured, sold or delivered by [Old GM] ("**Product Liabilities**"), which
arise directly out of death, personal injury or other injury to Persons or damage to property
caused by accidents or incidents first occurring on or after the Closing Date and arising from
such motor vehicles' operation or performance."  *See* Motion at Ex. A (Sale Order), at First
Amendment to Sale Agreement, dated as of June 30, 2009 at § 2.3(a)(ix).

[5] As defined in the December 2015 Judgment, an "Independent Claim" is "a claim or cause of
action asserted against New GM that is based solely on New GM's own independent post-
Closing acts or conduct" and does not include "(a) Assumed Liabilities, or (b) Retained
Liabilities, which are any Liabilities that Old GM had prior to the closing of the 363 Sale that are
not Assumed Liabilities."  December 15 Judgment at ¶ 4 n.3.

[6] BW&P and counsel to New GM are currently in discussions regarding additional potential
revisions to the Fox Complaint that may include dropping any punitive damages claim.  If any
changes to the Fox Complaint are made, counsel will alert the Court prior to the hearing on the
Motion and provide a copy of the amended complaint (and a redline).

notwithstanding language in the Sale Order that purportedly gave New GM sanctuary from its own <u>future</u> post-sale misconduct.  Indeed, this Court recognized in 2015 that it had overstepped its bounds in 2009 by (arguably) giving New GM prospective immunity from laws and obligations that would otherwise apply to it.  Thus, this Court held in its April 2015 Decision on the "four threshold issues" that Independent Claims could be asserted by certain plaintiffs whose vehicles were manufactured with the Ignition Switch Defect.  In so ruling, Judge Gerber agreed that the language he used in the Sale Order was "flawed" and "overbroad."  *Motors Liquidation*, 529 B.R. at 575

Just as Judge Gerber held for the only parties before him at the time he issued the April 2015 Decision and associated June 2015 Judgment, the State Court Plaintiffs were also denied due process in connection with the 363 Sale under either (or both) of the *Manville* line and/or *Grumman* line of cases because these plaintiffs were not given the opportunity to object to the overboard language of the Sale Order at the time of its entry.[7]

Significantly, the issue of whether due process failures occurred in 2009 as to claimants with post-sale personal injury claims against New GM involving vehicles manufactured by Old GM that did not contain the Ignition Switch was never before the Court, has not yet been adjudicated, and Judge Gerber's prior opinions and judgments expressly contemplate a future opportunity for such plaintiffs to raise their due process arguments.  The State Court Plaintiffs oppose the Motion and request that, consistent with Judge Gerber's prior rulings, they be treated no differently than the economic damage and post-sale personal injury plaintiffs whose vehicles

---

[7] The April 2015 Decision and the June 2015 Judgment only addressed the claims of two specific groups of plaintiffs whose vehicles contained the Ignition Switch Defect:  those asserting economic loss due to the Ignition Switch Defect; and Ignition Switch Pre-Closing Accident Plaintiffs.  The State Court Plaintiffs, who did not yet hold claims and, therefore, were future claimants in 2009, have sued New GM for damages relating to defects <u>other</u> <u>than</u> the Ignition Switch Defect.

had the Ignition Switch Defect and further request that their Independent Claims against New

GM (including punitive damage claims) be allowed proceed in state court.

## OBJECTION

I.    **THIS COURT'S PRIOR RULINGS PERMIT THE STATE COURT PLAINTIFFS TO ASSERT INDEPENDENT CLAIMS AGAINST NEW GM IF THEY CAN SHOW A DUE PROCESS VIOLATION IN CONNECTION WITH THE 363 SALE (AN ISSUE THAT WAS NEVER BEFORE THIS COURT)**

This Court has already ruled that a plaintiff may assert an Independent Claim against

New GM for New GM's own post-sale conduct if the plaintiff can show it was denied due

process in connection with the entry of the Sale Order. The proceedings that were held in 2015

on New GM's first two Motions to Enforce were limited as to scope (*i.e.*, limited to the "four

threshold issues") and affected only a subset of plaintiffs (*i.e.*, Ignition Switch Economic Loss

Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs (each defined below and, in each

case, limited to vehicles with the Ignition Switch Defect)).

Even in those limited proceedings, the Court ruled that certain plaintiffs were denied due

process in connection with the 363 Sale and could assert Independent Claims against New GM

relating to vehicles manufactured by Old GM; namely, plaintiffs asserting Independent Claims

against New GM for economic damages relating to the Ignition Switch Defect. Moreover, in

those proceedings, and in subsequent proceedings that were held in late 2015, the Court did not

foreclose the possibility that others could prove a due process violation and likewise pursue

Independent Claims against New GM relating to vehicles manufactured by Old GM. Indeed, the

Court's opinions and judgments contemplate future proceedings to permit plaintiffs such as the

State Court Plaintiffs their day in court.[8]

---

[8] As will be shown below in Section II below, as "future claimants" whose Independent Claims had not yet arisen as of the entry of the Sale Order, the State Court Plaintiffs were not provided due process of the Sale Hearing. Accordingly, under this Court's prior rulings, the State Court

A.        <u>The 2014 Motions to Enforce and April 2015 Decision</u>

In 2014, five years after the closing of the 363 Sale, New GM announced a series of recalls of millions of vehicles manufactured by Old GM with the Ignition Switch Defect embedded in each of the vehicles.  This startling revelation resulted in hundreds of lawsuits seeking to hold New GM responsible for personal injuries and wrongful deaths resulting from Ignition Switch Defect-related car wrecks and economic damages allegedly suffered by owners of Old GM vehicles as a result of the Ignition Switch Defect and the associated recalls.[9]

In response to these lawsuits, New GM filed its 2014 Motions to Enforce.[10]  New GM contended that the claims asserted against it violated the free and clear provisions of the Sale Orders which, according to New GM, barred claims against it for (i) economic damages, and (ii) personal injuries suffered in pre-sale crashes.[11]  In order to attempt to resolve the 2014 Motions to Enforce in an expeditious manner without unduly interfering with the prerogatives of the many trial courts involved or the multi-district litigation (the "<u>MDL</u>") pending in the United States District Court for the Southern District of New York (the "<u>District Court</u>"), this Court

_____

Plaintiffs should not be bound by the overbroad language of the Sale Order and should be allowed to pursue their Independent Claims against New GM in state court.

[9] Generally speaking, vehicle owners that had not had a crash sued New GM to be compensated for the devaluation of their vehicles.  These are sometimes referred to as the "economic loss" plaintiffs.

[10] *See* (i) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [Docket No. 12620], (ii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 [Docket No.12808]; and (iii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [Docket No. 12807].

[11] As New GM acknowledges, the Sale Agreement this Court approved in 2009 provided that New GM would assume liabilities for post-sale car crashes that caused personal injury, loss of life or property damage (*i.e.*, Product Liabilities).

established a limited procedure to address "four threshold issues" on a stipulated set of facts and

without discovery. *Motors Liquidation Co.*, 529 B.R. at 529 n.17, 539-40. These issues were

briefed and argued between November 2014 and February 2015. Notably, the proceedings were

targeted at a specific set of plaintiffs: those asserting due process violations relating to the non-

disclosure or concealment of the Ignition Switch Defect.

The claims at issue in connection with New GM's 2014 Motions to Enforce were the

following:

> (i)    "**Ignition Switch Plaintiffs**" … plaintiffs that …
> commenced a lawsuit against New GM ***asserting economic
> losses based on or arising from the Ignition Switch in the
> Subject Vehicles*** (each term as defined in the Agreed and
> Disputed Stipulations of Fact Pursuant to the Court's
> Supplemental Scheduling Order, Dated July 11, 2014, filed
> on August 8, 2014 [Dkt. No. 12826], at 3);[12]

> (ii)   "**Pre-Closing Accident Plaintiffs**" … plaintiffs that …
> commenced a lawsuit against New GM based on an
> accident or incident that ***occurred prior to the closing of
> the 363 Sale***;

> (iii)  "**Ignition Switch Pre-Closing Accident Plaintiffs**" … that
> subset of the Pre-Closing Accident Plaintiffs that had the
> Ignition Switch in their Subject Vehicles;

> (iv)   "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**"
> …that subset of Pre-Closing Accident Plaintiffs that are not
> Ignition Switch Pre-Closing Accident Plaintiffs; and

> (v)    "**Non-Ignition Switch Plaintiffs**"…plaintiffs that have
> commenced a lawsuit against New GM ***asserting economic***

---

[12] Judge Gerber used the defined term "Economic Loss Plaintiffs" to describe the "Ignition
Switch Plaintiffs" in his April 2015 Decision. *See Motors Liquidation Co.*, 529 B.R. at 521.
This Objection shall refer to these plaintiffs by the fully-descriptive term "**Ignition Switch
Economic Loss Plaintiffs**". These plaintiffs had not been involved in crashes and only sought to
recover for loss in resale value of their vehicles.

> **<u>*losses based on or arising from an alleged defect, other
> than the Ignition Switch*</u>**, in an Old GM vehicle.[13]

June 2015 Judgment at 1 n.1 (emphasis added).

Independent Claims by <u>post</u>-sale accident victims such as the State Court Plaintiffs were never part of those proceedings. Judge Gerber made this abundantly clear when he wrote:

> There may be misunderstandings as to the matters now before the Court. New GM has already undertaken to satisfy claims for death, personal injury, and property damage in accidents occurring after the 363 Sale—involving vehicles manufactured by New GM and Old GM alike. Except for the *pre*-Sale accidents that are the subject of the Pre-Closing Accident Plaintiffs' contentions, addressed below (where those plaintiffs wish to sue New GM in lieu of Old GM), **<u>this controversy does not involve death, personal injury, or property damage arising in accidents</u>**. Instead it involves only *economic losses* allegedly sustained with respect to Old GM vehicles or parts.

*Motors Liquidation*, 529 B.R. at 521 n.4 (italics in original; underscoring added). Thus, the case and controversy before the Court that resulted in the April 2015 Decision and the June 2015 Judgment did not include the State Court Plaintiffs' Independent Claims.

The relevant case and controversy raised by the 2014 Motions to Enforce was whether Ignition Switch Pre-Closing Accident Plaintiffs and/or the Ignition Switch Economic Loss Plaintiffs could pursue successor liability claims against New GM notwithstanding the Sale Order's bar on such claims. Generally speaking, the issue under consideration was whether these plaintiffs were denied due process in connection with the 363 Sale as a result of defective notice of the 363 Sale and the failure to disclose the existence of the Ignition Switch Defect to the owners of affected vehicles. *Id.* at 523 ("In this Court, the first two groups of Plaintiffs [*i.e.*, the

---

[13] This Objection shall refer to these plaintiffs by the fully-descriptive term "**<u>Non-Ignition Switch Economic Loss Plaintiffs</u>**" to avoid confusion with plaintiffs (such as the State Court Plaintiffs) who assert claims against New GM for personal injury (not economic loss) suffered in car crashes that did not involve the Ignition Switch Defect.

Ignition Switch Economic Loss Plaintiffs and the Ignition Switch Pre-Closing Accident

Plaintiffs], whose issues the Court could consider on a common set of stipulated facts and is in

major respects considering together, contend that by reason of Old GM's failure to send out

recall notices, they never learned of the Ignition Switch Defect, and that the Sale Order is

unenforceable against them.").

Based on the stipulated record before it, the Court held that the Ignition Switch Economic

Loss Plaintiffs and the Ignition Switch Pre-Closing Accident Plaintiffs were deprived of

constitutionally sufficient notice of the 363 Sale because of the failure to disclose the existence

of the Ignition Switch Defect.  *Id.* at 525 ("Because owners of cars with Ignition Switch Defects

received neither the notice required under the Safety Act nor any reasonable substitute … they

were denied the notice that due process requires.").   That said, Judge Gerber ruled these affected

parties were only entitled to relief from the "free and clear" provisions of the Sale Order to the

extent such deprivation of constitutionally sufficient notice prejudiced them.  *Id.* at 565 ("even

where inadequate notice has been given, prejudice is an essential element for vacating or

modifying an order implementing a 363 sale").

A specific area where the Court identified demonstrable prejudice was the inability of the

Ignition Switch Economic Loss Plaintiffs to object to the breadth and scope of the Sale Order

prior to its entry.

In particular, Judge Gerber stated at the outset of oral argument on the 2014 Motions to

Enforce:

> [I]f we had a do-over, I'd likely have to consider whether a
> free-and-clear order in the form that I just issued it was over-broad.

> And, in this respect, the economic loss plaintiffs, though not Mr. Weintraub's guys,[14] would have the upper hand.
>
> This order, as I read it, not only blocks successor liability, but also blocks claims based on wholly post-sale events that involved Old GM or Old GM parts. This is one of the issues, if not the issue, that bothers me the most. And the issue is whether what I should have done, or would have done if the argument had been made to me then, was to add a new order that was narrower and said that people couldn't sue based on anything Old GM had done, but they could sue if it was based on what New GM had done, so long as … New GM wasn't blamed for Old GM's acts.

Tr. of Oral Arg. on Feb. 17, 2015 at 20:11-22:3 (relevant excerpt attached hereto as **Exhibit B**).

In his April 2015 Decision, Judge Gerber stayed with his initial inclination and acknowledged that he had made a mistake in the Sale Order by including overbroad language that could be argued to protect New GM from claims for its own acts following the closing of the 363 Sale:

> Here the Sale Order, in addition to barring successor liability (which for reasons discussed above, remains fully appropriate), also proscribed any claims involving vehicles and parts manufactured by Old GM, even if the claims might rely solely on wrongful conduct by New GM alone.  By not having the opportunity to argue that such was inappropriate here (and to seek a proviso similar to the ones granted in *MagCorp* and for the environmental objectors here), the Economic Loss Plaintiffs were prejudiced.  They thus established an actionable denial of due process with respect to Sale Order overbreadth.

*        *        *

---

[14] Judge Gerber's reference to "Mr. Weintraub's guys" is to the Ignition Switch Pre-Closing Accident Plaintiffs, whom Goodwin Procter represented in those proceedings as "designated counsel" (selected by the Co-Leads in the MDL to address the "four threshold issues" with respect to pre-closing accidents involving vehicles containing the Ignition Switch Defect). Because plaintiffs in this group were injured in car crashes that occurred prior to the existence of New GM, these plaintiffs did not have Independent Claims against New GM for New GM's post-sale conduct (other than claims against New GM for its failure to inform them of the Ignition Switch Defect prior to the Old GM bar date).  The "bar date" claims (which are not relevant to the post-sale personal injury plaintiffs) were enjoined in the December 2015 Judgment and are currently on appeal to the District Court.

But on the Plaintiffs' second principal matter of concern--the overbreadth of the Sale Order--the situation is different. There is a flaw in the order, protecting New GM from liability on claims that, while they involve Old GM vehicles or Old GM parts, do not rest on successor liability, and instead rely on New GM's alleged wrongful conduct alone. The Plaintiffs could have made overbreadth arguments if given appropriate notice before the 363 Sale hearing, and to that extent they were prejudiced. And for that the Plaintiffs should be entitled to remedial relief to the extent the law otherwise permits.

\*      \*      \*

What the Court would have done in the face of a Sale Order overbreadth objection is likewise not subject to speculation. The Court follows its own precedent. If the Plaintiffs had been heard to make the argument back in 2009 that they are making now -- that they should have the right to allege claims based on wrongful conduct by New GM alone, without any reliance on anything that Old GM might have done -- the Court would have entered a narrower order, as it did in similar situations. In this respect, the Economic Loss Plaintiffs were prejudiced.

*Id.* at 570, 575. *See also* June 2015 Judgment at ¶¶ 4-5.

Broadly speaking, Judge Gerber acknowledged that the Sale Order was never meant to protect New GM from Independent Claims for its own post-sale wrongful conduct and that, if this obvious flaw in the Sale Order had been brought to his attention in July 2009, he would not have approved a provision such as the one contained in the Sale Order. The State Court Plaintiffs contend that, as parties that also lacked constitutionally sufficient notice of the 363 Sale and the purported bar against their assertion of Independent Claims, they are in the same constitutional boat as the Economic Loss Ignition Switch Plaintiffs and likewise should not be bound by the overbroad language of the Sale Order.

B.      <u>The June 2015 Judgment and September 3 Scheduling Order</u>

As contemplated under the Federal Rules of Civil Procedure, the Court entered the June 2015 Judgment to reflect the essential holdings contained in the April 2015 Decision. The

June 2015 Judgment established procedures for determining how the Court's rulings on the 2014

Motions to Enforce would impact existing litigation against New GM.  The June 2015 Judgment

generally tracked the defined terms used in the April 2015 Decision and on its face identified the

universe of impacted plaintiffs, which did not include post-sale personal injury plaintiffs such as

the State Court Plaintiffs.  *See* June 2015 Judgment at 1 n.1.  Moreover, none of the State Court

Lawsuits were identified on the schedules to the June 2015 Judgment.

The June 2015 Judgment authorized New GM to serve the June 2015 Judgment and the

April 2015 Decision on parties it believed were pursuing litigation violative of the Court's

rulings in connection with the 2014 Motions to Enforce in order to afford such parties an

opportunity to either amend their complaints to remove offending language or file a pleading

with this Court to obtain a ruling that the language was not violative of the Court's rulings.  *See*

June 2015 Judgment at ¶¶ 8-18.  After the Court entered its June 2015 Judgment, New GM sent

letters to numerous plaintiffs under the procedures set forth in the June 2015 Judgment

demanding amendments to their complaints and certain of those plaintiffs filed pleadings in this

Court seeking resolution of the allegations by New GM that their complaints violated this

Court's Rulings.

To consolidate these proceedings, the Court entered a Case Management Order on

August 19, 2015 [Docket No. 13383] (the "**August 19 Case Management Order**") (*see* Motion

at Ex. H) and, following a hearing on August 31, 2015, entered its September 3 Scheduling

Order [Docket No. 13416] (*see* Motion at Ex. I).  The September 3 Scheduling Order provided

that "for all plaintiffs that have received a demand letter from New GM where the time period to

file a No Strike, No Stay, and No Dismissal Pleading as set forth in the Judgment ("**Judgment**

**Pleading**") had not expired as of the August 31 Conference, the briefing schedule set forth

11

herein shall supersede the requirement to file such Judgment Pleadings."  September 3 Scheduling Order at 6.

Just like the June 2015 Judgment, the September 3 Scheduling Order did not mention or purport to address personal injury claims by plaintiffs injured in post-sale accidents unrelated to the Ignition Switch Defect ("**Non-ISD Post Sale Accident Plaintiffs**").  Instead, the Scheduling Order focused on (i) punitive damages, (ii) imputation of knowledge from Old GM to new GM, (iii) the complaints filed by the plaintiffs in the "Bellwether Cases" (*i.e.*, post-sale Ignition Switch Defect accident cases then pending before the District Court), (iv) the Second Amended Consolidated Complaint filed in the MDL by plaintiffs seeking economic damages from New GM, and (v) complaints filed by the states of California and Arizona seeking economic damages from New GM.  *See* September 3 Scheduling Order at 1-4.[15]  The September 3 Scheduling Order also authorized New GM to send a copy of the September 3 Scheduling Order "on plaintiffs in any lawsuit where New GM has previously sent a demand letter as authorized by the [June 2015] Judgment" with a cover note explaining the issues to be briefed and argued to the Court pursuant to the September 3 Scheduling Order.  Finally, the September 3 Scheduling Order also provided that:

> in the event New GM believe [sic] there are issues to be decided by the Court in actions that received a demand letter that are not covered in paragraphs 1-5 above, New GM shall file with the Court and serve on counsel of record in such representative case(s) on or before September 23, 2015 (i) a marked-up version of their complaints ("**Other Plaintiffs' Complaints**"), showing which portions thereof New GM contends violate the Judgment, the Decision and/or the Sale Order and Injunction, and (ii) a letter, not to exceed three (3) single-spaced pages for the Other Plaintiffs' Complaints, setting forth New GM's position with respect to the

---

[15] In addition, certain "one-off" plaintiffs, including those represented by Gary Peller, whom had been active litigants since New GM filed its 2014 Motions to Enforce, submitted briefs on the issues identified in the September 3 Scheduling Order.

Marked Other Plaintiffs' Complaints ("**New GM Marked Other Plaintiffs' Complaints Letter**").

September 3 Scheduling Order at 5.

Notwithstanding the fact that New GM had never previously sent a demand letter to counsel to the Fox Plaintiff prior to the entry of the September 3 Scheduling Order, New GM sent BW&P a demand letter on September 4, 2015 (the "**Fox September 4 Demand Letter**"). *See* Motion at Ex. J. In the Fox September 4 Demand Letter, New GM (misleadingly) stated that the September 3 Scheduling Order applied to the Fox Lawsuit and that, unless BW&P filed an objection in three days' time, it would be bound by the September 3 Scheduling Order. Appropriately confused by New GM's letter and demands, BW&P asked New GM to explain how the procedures set forth in the September 3 Scheduling Order applied to lawsuits by Non-ISD Post Sale Accident Plaintiffs for which no previous demand letter was sent. *See* Motion at Exs. K, L, and N. Rather than directly respond to these questions, counsel to New GM simply repeated the incorrect refrain that the September 3 Scheduling Order applied to the Fox Lawsuit and that "the Bankruptcy Court directed New GM to send a copy of the Scheduling Order as well as a specific cover note to plaintiffs or their counsel who received demand letters **(like yourself)**." *See* Motion at Ex. N (emphasis added) (email from Arthur Steinberg dated Sept. 28, 2015). Unconvinced that the September 3 Scheduling Order applied to the Fox Lawsuit, BW&P did not participate in the briefing or argument contemplated under that order.

New GM did send the Turner Firm demand letters in August 2015 with respect to the Chapman Lawsuit and the Tibbetts Lawsuit (*see* Motion at Ex. P).[16] In response to those letters, the Turner Firm asked counsel to New GM why they believed the complaints at issue sought

---

[16] Because none of the time periods set forth in the demand letters New GM had sent to the Turner Firm had expired as of August 31, 2015, the September 3 Scheduling Order superseded those letters by its express terms.

punitive damages from New GM based on Old GM conduct – which they did not – and to

provide specific reference to the allegedly offensive portions of the complaint.  *See* Motion at

Ex. Q.  Rather than respond directly to these legitimate questions, counsel to New GM merely

served the Turner Firm with a copy of the September 3 Scheduling Order and told them that they

could participate in these proceedings if they wished.  *See* Motion at Ex. R.  Having received no

response on its inquiry about the specific ways in which New GM contended that the Turner

Firm's complaints violated this Court's prior rulings and similarly unconvinced that the June

2015 Judgment or the procedures set forth in the September 3 Scheduling Order applied to

Independent Claims by Non-ISD Post Sale Accident Plaintiffs, the Turner Firm also did not

participate in the briefing or argument contemplated under the September 3 Scheduling Order.

It is also worth noting that prior to the completion of the proceedings contemplated under

the September 3 Scheduling Order, New GM never served marked complaints on any of the

State Court Plaintiffs or their counsel evidencing how those complaints purportedly violated this

Court's prior rulings – even though this step was specifically required by this Court in both the

August 19 Case Management Order (*see* ¶ 1(c), (d)) and the September 3 Scheduling Order (*see*

p.5).  Indeed, New GM did not serve a marked complaint reflecting its requested changes to the

State Court Plaintiffs' complaints <u>until May 2016, approximately 8 months after New GM's</u>

<u>deadline to do so under the September 3 Scheduling order and almost 7 months after issuance of</u>

<u>the November 2015 Decision</u>.  *See* Motion at Exs. S, T, V, and W.[17]  Thus, New GM never

---

[17] New GM's filing of this Motion as to the Fox Plaintiff appears to be a litigation tactic aimed at delaying trial before the Georgia State Court.  The original complaint in the Fox Lawsuit was filed on December 23, 2014, thus, the Fox Lawsuit has been pending against New GM for 19 months, fact discovery is complete, and the trial is set to commence on September 13, 2016. New GM agreed to that special trial setting on December 15, 2015.  Despite its longstanding knowledge of the existence of the Fox Lawsuit and the claims asserted by the Fox Plaintiff, New GM only recently began communicating with BW&P about the issues raised in the Motion.  The

joined the additional issue of whether the June 2015 Judgment applied to Independent Claims

brought by the State Court Plaintiffs against New GM for <u>post-sale</u> personal injuries suffered in

vehicles without the Ignition Switch Defect.  It bears repeating that the non-ISD Post-Sale

Accident Plaintiff was a category of plaintiff that, by design, was not covered in the April 2015

Decision, the June 2015 Judgment, or the September 3 Scheduling Order. [18]

### C.    <u>The November 2015 Decision and December 2015 Judgment</u>

Following briefing and oral argument on the issues set forth in the September 3 Scheduling

Order, on November 9, 2015, this Court issued its November 2015 Decision.  In that decision,

the Court ruled in relevant part that personal injury plaintiffs with post-sale accidents relating to

the Ignition Switch Defect (*i.e.*, the "Bellwether Plaintiffs") and Ignition Switch Economic Loss

Plaintiffs could pursue Independent Claims and punitive damages against New GM for New

GM's own post-sale conduct based on knowledge it "inherited" from Old GM (through the

minds of transferred employees or the contents of the books and records transferred to New GM

as part of the 363 Sale) and knowledge it acquired after the closing of the sale.  *In re Motors*

*Liquidation Co.*, 541 B.R. 104, 124 (Bankr. S.D.N.Y. 2015).  In ruling that the Bellwether

Plaintiffs could pursue Products Liability Claims (which New GM expressly assumed) <u>and</u>

---

only apparent reason New GM has filed the Motion as to the Fox Plaintiff is because the Fox
Lawsuit is specially set for trial on September 13, 2016.  BW&P has filed four other lawsuits
against New GM since the Old GM bankruptcy, seeking punitive damages in each of them.  New
GM has sent no letters complaining of alleged "violations" of this Court's orders with respect to
any of those four cases.  *Hinton-Jones v. New GM*, Superior Court of Muscogee County,
Georgia, filed 2/15/2011; *Williams v. New GM*, United States District Court, Northern District of
Georgia, filed 9/10/2014; *Eason v. New GM*, State Court of Cobb County, Georgia, filed
8/12/2015; *Reichwaldt v. NEW GM*, State Court of Cobb County, Georgia, filed 5/19/2016.  Two
of those cases were filed *before Fox v. New GM* was filed on 12/23/2014.

[18] It is also noteworthy that, to the extent the State Court Plaintiffs are an "Additional Party"
under Paragraph 18(a) of the June 2015 Judgment (which the State Court Plaintiffs do not
concede), the "remedy" is dismissal of the "offending claims" <u>without</u> <u>prejudice</u>.  June 2015
Judgment at Paragraph 18(a).

Independent Claims against New GM for its post-sale conduct based on knowledge inherited

from Old GM, the Court stated the following:

> On Product Liabilities Claims, the analysis is a little different, but
> the bottom line result is the same.  New GM assumed liability for
> Product Liabilities claims, which (by definition) arose from
> accidents or incidents taking place after the Sale, and thereby
> became liable for compensatory damages for any Product
> Liabilities resulting from Old GM's action.  And by the time any
> such accidents or incidents occurred, New GM already was in
> existence, and allegations that the post-Sale accident could have
> been avoided (or any resulting injury would have been reduced) if
> New GM had taken action based on any knowledge its employees
> had would also pass through the gate. Either way, it would not
> matter if that knowledge had first come into existence prior to the
> Sale—because it was still knowledge in fact of employees of New
> GM, and because New GM assumed responsibility for Product
> Liabilities Claims, which would make it liable for compensatory
> damages based on anything that even Old GM had done.

*Id.* at 115 n.30.  Thus, the Court held in this context that the Bellwether Plaintiffs (all of whom

had post-sale crashes involving the Ignition Switch Defect) could pursue Independent Claims

and punitive damages against New GM for its failures of duties to warn and to recall – which are

the same claims and theories the State Court Plaintiffs assert with respect to their non-Ignition

Switch Defect post-sale personal injury claims.  *Id.* at 127, 129.

   For Non-Ignition Switch Economic Loss Plaintiffs, the Court ruled that such plaintiffs

could not pursue Independent Claims against New GM unless and until they demonstrated a due

process violation in connection with the Sale Order.  Specifically, the Court wrote:

> [Ignition Switch Economic Loss Plaintiffs] may assert them, to the
> extent they are Independent Claims, under the April 15 Decision
> and Judgment.  [Non-Ignition Switch Economic Loss Plaintiffs[19]]
> cannot.  The latter could have tried to show the Court that they had

---

[19] In its November 2015 Decision, the Court used the defined term "Non-Ignition Switch
Plaintiffs" as defined in the April 2015 Decision.  *See id.* at 107 n.2.  Again, this defined term
was by its express terms limited to plaintiffs asserting economic damages claims, not personal
injury claims.

"known claims" and were denied due process back in 2009, but they have not done so.  The Court ruled on this expressly in the Form of Judgment Decision.  It then held:

> The [Non-Ignition Switch Economic Loss Plaintiffs'] claims remain stayed, and properly so; those Plaintiffs have not shown yet, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of a due process violation with respect to them.  And <u>unless and until they do so</u>, the provisions of the Sale Order, including its injunctive provisions, remain in effect.
>
> That ruling stands.  In the April Decision and resulting Judgment, the Court modified a Sale Order under which the buyer had a justifiable right to rely because a higher priority—a denial of due process, which was of Constitutional dimension—necessitated that.  But without a showing of a denial of due process—and the [Non-Ignition Switch Economic Loss Plaintiffs] have not shown that they were victims of a denial of due process—the critically important interests of finality (in each of the 2009 Sale Order and the 2015 Form of Judgment Decision and Judgment) and predictability must be respected, especially now, more than 6 years after entry of the Sale Order.

*Id.* at 130 n.70 (internal citation omitted; emphasis added).  In its December 2105 Judgment, the Court memorialized this ruling.  *See* December 2015 Judgment at ¶ 14.

What the Court held in November and December 2015 was that the parties before it – who had previously been given the opportunity to successfully establish a due process violation as part of the litigation over the "four threshold issues" relating to the Ignition Switch Defect – were not bound by the overbroad language in the Sale Order that purported to absolve New GM for its own post-sale conduct.  For plaintiffs whose claims were not based upon the Ignition Switch Defect (including those few who actively participated in the proceedings), the Court merely held that they would continue to be barred by the Sale Order's overbroad language <u>until</u> they could prove a due process violation in connection with the entry of the Sale Order.

17

Nowhere in the November 2015 Decision did the Court state that plaintiffs seeking to pursue Independent Claims and punitive damages against New GM were required to participate in the proceedings that resulted in the November 2015 Decision or the December 2015 Judgment in order to be able to attempt to prove a due process violation in connection with the 363 Sale. Similarly, the Court did not hold that any parties other than those with the Ignition Switch Defect ever had an opportunity to brief the due process issues determined in 2015. Nor did the Court anywhere hold that the Non-ISD Post-Sale Accident Plaintiffs had previously been given an appropriate opportunity to prove a due process violation. Indeed, the Court's June 2015 Judgment explicitly contemplates future proceedings in this Court if, as, and when Non-ISD Post Sale Accident Plaintiffs seek to establish a due process violation for purposes of pursuing claims against New GM. *See* June 2015 Judgment at ¶ 13(a). In sum, nowhere in the June 2015 Judgment, the September 3 Scheduling Order, the November 2015 Decision, the December 2015 Judgment, or otherwise, did the Court order that plaintiffs injured or killed in post-sale car crashes unrelated to the Ignition Switch Defect must assert that they were deprived of due process in connection with the 363 Sale as part of the proceedings scheduled by the September 3 Scheduling Order or be forever barred from doing so in the future.[20]

Based upon the foregoing, it is abundantly clear that the State Court Plaintiffs and all other Non-ISD Post Sale Accident Plaintiffs retain the ability to establish a due process violation and obtain relief from the Sale Order to pursue Independent Claims and punitive damages against New GM for New GM's own post-sale actions and inactions. As set forth below, whether viewed as parties that have retained the right to challenge the subject matter jurisdiction

---

[20] Indeed, as noted in footnote 18, above, the June 2015 Judgment provided that "Additional Parties" that did not respond to New GM's demands within the 17 day deadline would only have the allegedly non-compliant claims dismissed **without** **prejudice**.

of the Court to bar Independent Claims, or as "future claimants" at the time of the 363 Sale, the

State Court Plaintiffs and those similarly situated were not provided due process of the

proceeding that in July 2009 culminated in the entry of a "flawed" and "overbroad" Sale Order

that impaired their future litigation rights. *Motors Liquidation*, 529 B.R. at 575.

## II.    BECAUSE THEIR ACCIDENTS HAD NOT YET OCCURRED AT THE TIME OF THE 363 SALE, THE STATE COURT PLAINTIFFS WERE NEVER GIVEN DUE PROCESS AND AN OPPORTUNITY TO PROTECT THEMSELVES FROM THE ENTRY OF AN OVERBROAD SALE ORDER THAT BARRED THEM FROM SUING NEW GM FOR NEW GM'S OWN POST-SALE CONDUCT

When a bankruptcy debtor seeks relief against third parties, due process requires "notice

reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Mullane v. Cent.*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "[F]or due process reasons, a party that

did not receive adequate notice of bankruptcy proceedings [can] not be bound by orders issued

during those proceedings." *Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus.,*

*Inc.)*, 467 B.R. 694, 706 (S.D.N.Y. 2012) ("***Grumman II***") (citing *Travelers Cas. & Sur. Co. v.*

*Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135 (2d Cir. 2010) ("***Manville***

***2010***").  Due process has two components:  the method of delivery and the content of the notice.

*Mullane*, 339 U.S. at 314 ("The notice must be of such nature as reasonably to convey the

required information").  Each are important.  Here, as to the State Court Plaintiffs and their

Independent Claims, the notice used by Old GM of the 363 Sale and the overbroad reach of the

Sale Order flunked both requirements.  The Sale Notice did not properly apprise future claimants

such as the State Court Plaintiffs that their *in personam* claims against New GM were "at issue"

at the Sale Hearing.  Thus, The Sale Order was entered without any opportunity for them to be

heard.  *Id.* at 313 ("Many controversies have raged about the cryptic and abstract words of the

Due Process Clause but there can be no doubt that at a minimum they require that deprivation of

life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.").

As explained above, this Court held in its April 2015 Decision and June 2015 Judgment that the Ignition Switch Economic Loss Plaintiffs were denied the due process required under *Mullane* and its progeny in connection with the 363 Sale. Because the Court found that these plaintiffs were prejudiced as a result of the due process violation and the entry of a flawed and overbroad order that impaired their rights to sue New GM for New GM's own post-sale conduct, the Court ruled that those provisions of the Sale Order did not apply to those plaintiffs and they could pursue Independent Claims and punitive damages against New GM for New GM's own post-sale conduct. As part of the subsequent briefing under the September 3 Scheduling Order, the Court extended this ruling to personal injury plaintiffs injured in vehicles containing the Ignition Switch Defect. *In re Motors Liquidation Co.*, 541 B.R. at 123, 124.[21]

The State Court Plaintiffs are identically situated to the post-sale Ignition Switch Defect personal injury plaintiffs and similarly should be freed to pursue Independent Claims and punitive damages against New GM for New GM's own post-sale conduct. All of the State Court Plaintiffs were injured or killed in car wrecks that occurred years after the closing of the 363 Sale involving vehicles manufactured by Old GM.[22] Thus, at the time of the 363 Sale, the State Court Plaintiffs were "future claimants" and had no way of being notified of or knowing that there was a bankruptcy sale process that would purport to bar their future rights to sue the purchaser of Old

---

[21] In permitting post-sale Ignition Switch Defect personal injury plaintiffs to pursue Independent Claims and punitive damages against New GM for its own conduct, the Court did not analyze whether such plaintiffs suffered a due process violation or prejudice.

[22] The 363 Sale closed in July 2009. The Fox Plaintiff was injured on November 12, 2013. *See* Motion at Ex. B (Fox Complaint), at 1. The Chapman Plaintiff was injured on July 26, 2012. *See* Motion at Ex. D (Chapman Complaint), at 1. The Tibbetts Plaintiff was injured and killed on July 23, 2012. *See* Motion at Ex. E (Tibbetts Complaint), at 1.

GM's assets in the event the purchaser subsequently breached some duty owed to them or

otherwise damaged them.  Nothing in the Sale Notice was targeted to these future claimants and,

in the unlikely and implausible event there was a hidden intention to target these future plaintiffs

in order to bind them, the form of notice used was constitutionally inadequate to bind the State

Court Plaintiffs.  As uninjured parties, assuming arguendo the Sale Notice was sent to these

plaintiffs by first class mail (it was not) or published in a newspaper these plaintiffs might have

read, there was nothing in the form of Sale Notice that would have alerted the State Court

Plaintiffs to any effort to bar <u>future</u> Independent Claims. [23]

Consequently, as future claimants, the State Court Plaintiffs cannot be bound by any

aspect of the Sale Order that supposedly limits their ability to pursue Independent Claims and

seek punitive damages from New GM for its own post-sale conduct.

The issue of whether a 363 sale order can strip away rights from future creditors was

thoroughly addressed in the *Grumman* cases.  *See Morgan Olson L.L.C. v. Frederico (In re*

*Grumman Olson Indus., Inc.)*, 445 B.R. 243 (Bankr. S.D.N.Y. 2011) ("***Grumman I***" and,

together with *Grumman II*, "***Grumman***"), *aff'd* 467 B.R. 694 (S.D.N.Y. 2012).[24]  *Grumman*

---

[23] The published Sale Notice said nothing about independent claims or punitive damages against New GM being impacted by the 363 Sale.  *See Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, and 6006 (I) Approving Procedures for Sale of Debtors' Assets Pursuant to Master Sale and Purchase Agreement With Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV) Fixing Notice Procedures and Approving Form of Notice*, entered on June 2, 2009 [Docket No. 274], at Exhs. B (Form of Sale Notice served by mail) and C (Form of Publication Notice) (attached hereto as **Exhibit C**).

[24] Prior to the *Grumman* cases, the Second Circuit declined to address this issue.  *See In re Chrysler LLC*, 576 F.3d 108, 127 (2d Cir. 2009), *vacated as moot sub. nom. Ind. State Police Pension Tr. v. Chrysler LLC*, 558 U.S. 1087, 130 S. Ct. 1015, 175 L. Ed. 2d 614 (2009) ("we decline to delineate the scope of the bankruptcy court's authority to extinguish future claims, until such time as we are presented with an actual claim for an injury that is caused by Old Chrysler, that occurs after the Sale, and that is cognizable under state successor liability law.").

involved a truck parts manufacturer that filed chapter 11 in this district and then sold its assets

through a 363 "free and clear" sale. Years after the sale closed, a driver of a truck containing

parts manufactured by the debtor was injured in a crash and brought suit against the purchaser of

the debtor's assets on a successor liability theory. The purchaser commenced an adversary

proceeding seeking to bar the lawsuit as violative of the court's sale order, which barred

successor liability claims against the purchaser. On due process grounds, Bankruptcy Judge

Bernstein and, on appeal, District Judge Oetken each denied the relief the purchaser requested.

In declining to enforce the sale order's free and clear language to these claims, the

*Grumman* courts found that, because the plaintiff had not yet been injured as of the 363 sale, no

notice could have been provided to her at the time of the sale to inform her that her rights to

pursue claims against the purchaser for her future injuries were being taken away from her.

Specifically, the district court held:

> The [personal injury plaintiffs] did not receive adequate notice of
> their potential claim in the Grumman bankruptcy proceedings
> because, at the time of the bankruptcy, there was no way for
> anyone to know that the [personal injury plaintiffs] ever would
> have a claim. Enforcing the Sale Order against the [personal injury
> plaintiffs] to take away their right to seek redress under a state law
> theory of successor liability when they did not have notice or an
> opportunity to participate in the proceedings that resulted in that
> order would deprive them of due process.

*Grumman II*, 467 B.R. at 708-09 (citing *Schwinn Cycling & Fitness Inc. v. Benonis*, 217 B.R.

790 (N.D. Ill. 1997) ("Allowing the provisions of the Bankruptcy Court's orders to limit the

rights of injured parties . . . who had no notice, and no reason at the time, to present an interest in

the bankruptcy proceedings or to take action in response to the threatened deprivation of their

rights, would violate due process and bankruptcy notice concerns.")). Notably, Judge Gerber

cited the *Grumman* cases favorably in the April 2015 Decision to support his determination that

the Ignition Switch Economic Loss Plaintiffs were not bound by the overbroad language of the

Sale Order purportedly limiting claims against New GM for its own conduct.  *See Motors Liquidation*, 529 B.R. at 580, 582-83.

Unlike the plaintiff in *Grumman*, the State Court Plaintiffs are not seeking to hold New GM liable for acts of Old GM on a successor liability theory.  Instead, they are seeking to hold New GM liable for Products Liability Claims that New GM expressly assumed as part of the 363 Sale and Independent Claims for New GM's own post-sale actions and inactions.  Holding New GM liable for its own conduct presents an even stronger case than seeking to hold it liable for its predecessor's conduct.  Just like the plaintiff in *Grumman* (and the post-sale Ignition Switch Defect personal injury claimants in this case), the State Court Plaintiffs had no way of being informed in 2009 that their future rights to sue New GM for Independent Claims and ability to seek punitive damages were being stripped away as part of the 363 Sale.  Using the same logic that Judge Gerber used in the April 2015 Decision, for due process reasons, the overbroad and improper language of the Sale Order should not apply to the State Court Plaintiffs.

**III.  UNDER SECOND CIRCUIT PRECEDENT, THE COURT LACKED SUBJECT MATTER JURISDICTION TO BAR THE STATE COURT PLAINTIFFS' *IN PERSONAM* CLAIMS AGAINST NEW GM FOR ITS OWN POST-SALE CONDUCT**

Distilled to its essence, New GM is asking this Court to release New GM (a non-debtor) for its own post-sale tortious conduct towards the State Court Plaintiffs (also non-debtors).  This "request" (if indeed made in 2009 as part of the 363 Sale) exceeds the subject matter jurisdiction of the bankruptcy court.  The <u>future</u> post-sale misconduct of New GM does not (and in 2009, did not) involve a matter or proceeding that arises under or in, or that relates to, Old GM's chapter 11 case.  28 U.S.C. §1334.  Try as it might, New GM cannot sustain credible argument that

23

Independent Claims relate to or could have any effect upon Old GM's bankruptcy estate. Any argument to the contrary is specious. [25]

Taken to its logical conclusion, New GM's position is that, even if New GM learned from the transferred employees or the books and records it acquired from Old GM that all of the vehicles manufactured by Old GM were set to explode at midnight on December 31, 2016, New GM could never be held liable to those injured or killed in the explosions for its own failure to warn them of the coming tragedy because this Court prospectively immunized New GM from any obligation to do so in 2009. As this Court recognized in its prior rulings, the question of whether New GM can be sued for its own post-sale actions and inactions is something that should get through the bankruptcy "gate" and the question of whether New GM is in fact liable or not should be determined by the non-bankruptcy court overseeing the lawsuit. *Motors Liquidation*, 541 B.R. at 123. The trigger for whether that "gate" should be opened for the assertion of an Independent Claim should not depend on whether the plaintiff can first prove that

---

[25] New GM has argued that claims fall into one of two buckets: "Assumed Liabilities" or "Retained Liabilities." New GM has further argued that unless a claim is an Assumed Liability, it must be a Retained Liability. From this faulty premise, New GM has argued that Independent Claims must be Retained Liabilities. This contention is illogical for two reasons. First, Judge Gerber implicitly (if not explicitly) recognized a third category of claims, namely Independent claims, in his April 2015 Decision and June 2015 Judgment. Second, an Independent Claim cannot logically be a Retained Liability because Retained Liabilities are nothing more than claims against Old GM. Thoughtlessly lumping Independent Claims into the category of Retained Liabilities arguably would make Old GM liable for New GM's post-sale conduct. The unsecured creditors would not have permitted such dilution at the time of the 363 Sale, or ever. Nor would the argument that Independent Claims are Assumed Liabilities make any sense. This is because the common denominator between Assumed Liabilities and Retained Liabilities is that each is a claim against Old GM, unlike Independent Claims that are, by Judge Gerber's definition, claims against New GM.

Old GM knew of the particular defect at issue at the time of the sale.  Rather, the gate should be

open because the 2009 Sale Order did not effectively or properly shut it in the first place[26]

It is well-established under the binding Second Circuit precedent that this Court did not

have subject matter jurisdiction to grant New GM the third party release it now contends it was

granted in 2009.  Because the State Court Plaintiffs did not receive constitutionally sufficient

notice that such release was being given, they are not bound by any purported (yet mistaken)

assertion of subject matter jurisdiction by the Court and can challenge such jurisdiction now --

which they do.

The Second Circuit held in the *Manville* line of cases that the bankruptcy court lacks

subject matter jurisdiction to enjoin a non-debtor's *in personam* claims against another non-

debtor predicated on the defendant's alleged independent misconduct.  *See Travelers Cas. & Sur.

Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52, 68 (2d Cir. 2008)

("**_Manville 2008_**"), *rev'd on other grounds*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009)

("**_Bailey_**").

In the *Manville* case, the bankruptcy court entered orders in 1986 as part of a settlement

among Manville, certain of its insurers, and certain asbestos claimants that enjoined claims

against the settling insurers, including Travelers Indemnity Company ("**_Travelers_**").  *Id.* at 57.

As part of the settlement, Travelers contributed hundreds of millions of dollars to the debtor's

estate in exchange for immunity from lawsuits relating to Manville and Manville's liability to

---

[26] In addition to the "future claimant" due process issue set forth above, although the State Court Plaintiffs strongly dispute that they need to demonstrate anything other than a due process violation as to the overbroad provisions of the Sale Order, the State Court Plaintiffs reserve all rights to, if necessary, take discovery and litigate whether Old GM knew of defects in their vehicles at the time it gave notice of the 363 Sale for purposes of establishing a due process violation based on being "known creditors" at the time such notice was provided.

persons injured by exposure to asbestos.[27]  Years after entry of the 1986 orders, Travelers sought

entry of a "clarifying order" to clarify that "direct" claims (i.e., "independent" claims) were

among the claims against Travelers that were barred by the 1986 orders.  Chubb Indemnity

Insurance Co. ("**Chubb**"), one of the parties that Travelers contended was subject to the 1986

injunction, opposed entry of the "clarifying order" and argued that the bankruptcy court (and the

district court that approved the orders) lacked subject matter jurisdiction to enjoin Chubb's *in

personam* claims against Travelers.  *Id.* at 60.  The Second Circuit agreed with Chubb and

reversed the bankruptcy court and the district court.  The Second Circuit held that "the district

court lacked subject matter jurisdiction to enjoin claims against Travelers that were predicated,

as a matter of state law, on Travelers' own alleged misconduct and were unrelated to Manville's

insurance policy proceeds and the res of the Manville estate."  *Id.* at 68.

The United States Supreme Court in *Bailey* reversed *Manville 2008* on *res judicata*

grounds (not on the grounds that the Second Circuit was incorrect that the lower courts lacked

subject matter jurisdiction to bar Chubb's *in personam* claims against Travelers).  In its reversal,

the Supreme Court stated:

> [O]nce the 1986 Orders became final on direct review (whether or
> not proper exercises of bankruptcy court jurisdiction and power),
> they became res judicata to the "'parties and those in privity with
> them, not only as to every matter which was offered and received
> to sustain or defeat the claim or demand, but as to any other

---

[27] Almost two decades after entry of the 1986 orders, following the commencement of litigation against Travelers upon "direct" claims, Travelers returned to the bankruptcy court and argued that "direct" claims by plaintiffs against non-debtor insurance carriers such as Travelers for their independent wrongdoing (as opposed to claims derivative of the debtor's conduct and arising from its rights as an insured) were settled years ago as part of the 1986 orders.  The gravamen of the "direct" claims was that insurers such as Travelers mislead the public about the dangers of asbestos.  These direct claims were not based upon any policy of insurance issued by Travelers to Manville.  The 2004 "clarifying order" was required under a further settlement with Travelers and was intended to confirm that the 1986 orders resolved and barred these direct claims.  *Id.*

> admissible matter which might have been offered for that
> purpose.'"
> …
> So long as respondents or those in privity with them were parties to
> the Manville bankruptcy proceeding, and were given a fair chance
> to challenge the Bankruptcy Court's subject-matter jurisdiction,
> they cannot challenge it now by resisting enforcement of the 1986
> Orders.

*Bailey*, 557 U.S. at 153 (internal citations omitted).  The Supreme Court remanded the case to the

Second Circuit to determine whether Chubb was provided due process in connection with entry

of the bankruptcy court's injunctions.  *Id.* at 155.

On remand, the Second Circuit determined that Chubb was indeed denied due process in

connection with the entry of the 1986 orders that purported to bar its *in personam* claims against

Travelers.  The Second Circuit wrote:

> Under the unique circumstances of this case, there can be little
> doubt that the publication notice employed by the bankruptcy court
> in 1984 was insufficient to bind Chubb to the 2004 interpretation
> of the 1986 Orders.
>
> The bankruptcy court's August 2, 1984 Notice of Hearing to
> Consider Approval of Compromise and Settlement of Insurance
> Litigation indicated that the parties to the Manville Chapter 11
> proceedings were seeking an order enjoining all claims, "whether
> or not presently known," against the Settling Insurers "based upon,
> arising out of or relating to any or all of the insurance policies" that
> the Settling Insurers had issued to Manville.  **In order to
> comprehend that the contemplated channeling injunction
> would bar Chubb's *in personam*, non-derivative claims against
> Travelers, the recipient of this Notice would have to predict
> that the bankruptcy court would exceed its in rem jurisdiction
> in entering the 1986 Orders … [W]e cannot attribute to Chubb
> the sort of prescience that these predictions would have
> required, and the August 2, 1984 Notice was insufficient to
> communicate these issues.**

*Manville 2010*, 600 F.3d at 157 (emphasis added).  In other words, in *Manville* 2010, the Second

Circuit determined that it was correct in *Manville 2008* when it held that the bankruptcy court

lacked jurisdiction to bar Chubb's *in personam* claims.  In *Manville 2010* the Second Circuit also

held that, because Chubb received unconstitutionally inadequate notice of the proceedings that purported to bar Chubb's claims, those claims could proceed notwithstanding the Supreme Court's ruling in *Bailey* on *res judicata*.[28]

The *Manville* line of cases is directly on point. The Independent Claims are *in personam* claims. Just as in *Manville 2008* (as confirmed in *Manville 2010*), this Court lacked jurisdiction in 2009 to bar the State Court Plaintiffs' *in personam* claims against New GM as part of the Sale Order. Judge Gerber essentially acknowledged this to be the case in his April 2015 Decision by relieving certain plaintiffs from the "flawed" and "overbroad" provision of the order. The State Court Plaintiffs had no personal injury claims against Old GM or New GM at the time of the sale in July 2009 and the published notice of the 363 Sale gave no hint that this Court would exceed its jurisdiction and bar *in personam* claims against New GM for its own post-sale conduct. Thus, as was the case for Chubb in *Manville*, the State Court Plaintiffs were denied the opportunity to be heard in 2009 on the question of the bankruptcy's court's subject matter jurisdiction to bar Independent Claims and were likewise deprived of the opportunity in 2009 to oppose the overbroad provision of the Sale Order. The Sale Order cannot be applied to the State Court Plaintiffs on both jurisdictional and due process grounds.

---

[28] Having found that the notice given at time of the settlement approved by the 1986 orders was constitutionally inadequate to bind Chubb to the bankruptcy court's erroneous assertion of suspect matter jurisdiction, the Second Circuit held quite succinctly that:

> Chubb is therefore not bound by the terms of the 1986 Orders. Consequently, it may attack the Orders collaterally as jurisdictionally void. And, as we held in [Manville 2008], that attack is meritorious.

600 F.3d at 158.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Objectors respectfully request that this Court deny the

relief New GM seeks in its Motion and permit them to prosecute the Fox Lawsuit, the Chapman

Lawsuit, and the Tibbetts Lawsuit without requiring any further amendments to the complaints

filed in those actions.

Dated: June 20, 2016                                Respectfully submitted,

                                                    /s/ *William P. Weintraub*
                                                    William P. Weintraub
                                                    Gregory W. Fox
                                                    GOODWIN PROCTER LLP
                                                    The New York Times Building
                                                    620 Eighth Avenue
                                                    New York, NY 10018
                                                    Tel.: 212.813.8800
                                                    Fax:  212.355.3333
                                                    wweintraub@goodwinprocter.com
                                                    gfox@goodwinprocter.com

                                                    *Counsel for Turner & Associates, P.A. and*
                                                    *Butler Wooten & Peak LLP*

## <u>CERTIFICATE OF SERVICE</u>

I, William P. Weintraub, hereby certify that a copy of the foregoing Objection by State

Court Plaintiffs to Motion by General Motors LLC to Enforce the Bankruptcy Court July 5, 2009

Sale Order and Injunction, filed through the CM/ECF System, will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing (NEF) on June 20, 2016.


 /s/ *William P. Weintraub*