**HEARING DATE AND TIME:  June 27, 2016 at 11:00 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | Case No.:  09-50026 (MG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

--------------------------------------------------------------x

**REPLY BY GENERAL MOTORS LLC TO OBJECTION AND**
**RESPONSE TO MOTION BY GENERAL MOTORS LLC**
**PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE**
**BANKRUPTCY COURT'S JULY 5, 2009 SALE ORDER AND**
**INJUNCTION, AND THE RULINGS IN CONNECTION THEREWITH**

**VERONICA ALAINE FOX**
**CLAUDIA LEMUS**
**TAMMIE CHAPMAN**
**CONSTANCE HAYNES-TIBBETTS**

29091500

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................. 1

REPLY ............................................................................................................ 4

    I.    The Bankruptcy Court Ruled On the State Court
Plaintiffs' Issues in  Connection with the November 2015 Decision
and December 2015 Judgment............................................................ 4

    II.    The Bankruptcy Court Intended that Its
Rulings Would be Binding on the State Court Plaintiffs. ................. 8

    III.    The State Court Plaintiffs Cannot Willfully Violate
the Bankruptcy Court Rulings Regarding Independent Claims
Simply Because They Disagree With Those Rulings ....................... 12

    IV.    *Grumman Olson* Is Not Applicable.................................................... 14

    V.    The State Court Plaintiffs' Subject Matter Jurisdiction
Objection Rehash Arguments Previously Made and
Rejected by the Bankruptcy Court .................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
   428 B.R. 43 (S.D.N.Y. 2010) ............................................................................ 17, 18

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995) ................................................................................................. 3

*In re Grumman Olson Indus., Inc.*,
   445 B.R. 243 (Bankr. S.D.N.Y. 2011),
   *aff'd*, 467 B.R. 694 (S.D.N.Y. 2012) ................................................................ 14, 15

*In re Grumman Olson Indus., Inc.*,
   467 B.R. 694 (S.D.N.Y. 2012) .............................................................................. 16

*In re Motors Liquidation Co.*,
   513 B.R. 467 (Bankr. S.D.N.Y. 2014) ..................................................................... 3

*In re Motors Liquidation Co.*,
   534 B.R. 538 (Bankr. S.D.N.Y. 2015) .............................................................. 18, 19

*In re Motors Liquidation Co.*,
   541 B.R. 104 (Bankr. S.D.N.Y. 2015) ................................................................... 13

*Marvel Characters, Inc. v. Simon*,
   310 F.3d 280 (2d Cir. 2002) ................................................................................... 11

*Travelers Casualty & Surety Co. v. Chubb Indemnity Insurance Co.*
   (*In re Johns-Manville Corp.*), 600 F.3d 135 (2d Cir. 2010),
   *cert. denied*, 131 S.Ct. 644 (2010) ....................................................................... 17

*Travelers Indemnity Co. v. Bailey*,
   557 U.S. 137 (2009) ......................................................................................... 14, 19

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this reply ("**Reply**") to the *Objection By State Court Plaintiffs To Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction, And The Rulings In Connection Therewith* [Dkt. No. 13642] ("**State Court Plaintiffs Objection**"), filed by the State Court Plaintiffs[1] on June 20, 2016.[2]  In support of this Reply, New GM states as follows:

### PRELIMINARY STATEMENT

The State Court Plaintiffs (who are Post-Closing Accident Plaintiffs without the Ignition Switch Defect) are intentionally violating the Bankruptcy Court's November 2015 Decision and December 2015 Judgment, which expressly provide that "plaintiffs whose claims rise in connection with vehicles without the Ignition Switch Defect"[3] cannot assert Independent Claims[4] against New GM (with respect to an Old GM Vehicle), and punitive damages for such Claims.

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings scribed to them in the *Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction, And The Rulings In Connection Therewith*, filed by New GM on June 1, 2016 [Dkt No. 13634-1] ("**Motion to Enforce**").

[2]  In addition to the State Court Plaintiffs Objection, there was also a filed response entitled *Lead And Designated Counsel's Response To Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction, And The Rulings In Connection Therewith* [Dkt. No. 13643].  This Response was filed solely to reiterate a legal position that New GM has already rebutted in pleadings before the Second Circuit in the pending appeal of the April 2015 Decision and the June 2015 Judgment.  In short, the MDL Class Plaintiffs (as defined in the Lead Counsel Response) never appealed the April 2015 Decision and the June 2015 Judgment on behalf of Non-Ignition Switch Plaintiffs.  The MDL Class Plaintiffs' *Notice of Appeal*, dated June 2, 2016 [Dkt. No. 13185], and *Appellants' Statement of Issues on Appeal and Designation of Items to be Included in the Record on Appeal*, dated June 16, 2016 [Dkt. No. 13219] were made on behalf of the Ignition Switch Plaintiffs only.  The briefs filed by MDL Class Plaintiffs were captioned and submitted on behalf of the Ignition Switch Plaintiffs only.  The only Non-Ignition Switch Plaintiffs who appealed the April 2015 Decision and the June 2015 Judgment were the handful of plaintiffs represented by counsel Gary Peller, Esq., who did so on their behalf only.

[3]  December 2015 Judgment, ¶14. To be clear, for purposes of the Motion to Enforce and this Reply, "Post-Closing Accident Plaintiffs" includes plaintiffs, like the State Court Plaintiffs, that commenced lawsuits against New GM asserting claims for personal injury arising from accidents involving Old GM vehicles that took place after the closing of the 363 Sale.  Contrary to the State Court Plaintiffs' assertion, their claims have already been decided by the Bankruptcy Court, as discussed herein.

1

The State Court Plaintiffs' belated excuses for their willful violation of the Bankruptcy Court's rulings fall flat.[5]  As shown in *Part I*, the Bankruptcy Court intended to rule on the issues raised by the State Court Plaintiffs in connection with the November 2015 Decision and December 2015 Judgment.  In *Part II*, we show that the Bankruptcy Court intended that its rulings would be binding on Post Closing Accident Plaintiffs such as the State Court Plaintiffs.  In *Part III*, we demonstrate that the State Court Plaintiffs cannot willfully violate the November 2015 Decision and December 2015 Judgment because they unilaterally decide (as if they were an appellate court) that the Bankruptcy Court was wrong in not providing them with the same relief that the Ignition Switch Plaintiffs were given.  The burden was on the State Court Plaintiffs to file a motion in the Bankruptcy Court pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure for a modification of the Sale Order and Injunction if they reasonably believed there was a basis to do so (on due process grounds or otherwise).  They have not done so (let alone establish that there was a due process violation as to them).  And, since they never appealed the December 2015 Judgment which was binding on them, it is too late for them now to raise due process issues.  In *Part IV*, we show that *Grumman Olson* is distinguishable since, among other things, Product Liabilities were assumed under the Sale Agreement so the State Court Plaintiffs have a remedy.  And, in *Part V*, we demonstrate that *Manville IV*, a subject matter jurisdiction case, is inapplicable to the enforcement of New GM's rights under the Sale Order and Injunction. The Bankruptcy Court and the District Court have already so ruled.  In any event, as a result of

---

[4]     Whether the Bankruptcy Court had the authority to create in the June 2015 Judgment the concept of "Independent Claims"—a new category of liabilities associated with Old GM vehicles—is one of the issues that New GM has raised on appeal in the Second Circuit.

[5]     The State Court Plaintiffs Objection states that the Fox Plaintiff "offered to file a Second Recast & Amended Complaint" (State Court Plaintiffs Objection, at 1 n.2).  This afternoon, a Second Recast & Amended Complaint was filed, wherein the punitive damages request was deleted.  The Fox Plaintiff also offered to strike its Independent Claim (duty to warn), subject to a condition that has not been agreed to at this point.

the December 2015 Judgment which is binding on the State Court Plaintiffs, it is now too late for the State Court Plaintiffs to raise a jurisdiction defense.

It is well-established by this Court, in the context of interpreting and enforcing the Sale Order and Injunction, that parties like the State Court Plaintiffs cannot prosecute their state court actions in violation of existing rulings of the Bankruptcy Court. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995) ("persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order); *see also In re Motors Liquidation Co.*, 513 B.R. 467, 478 (Bankr. S.D.N.Y. 2014) (citing *Celotex*). That is especially true where, as here, the State Court Plaintiffs had notice of, and the right to participate in, the proceedings leading to the November 2015 Decision and the December 2015 Judgment, and never appealed those Bankruptcy Court rulings. To be clear, New GM's position is that all of these issues have been fully litigated, the State Court Plaintiffs are bound by principles of collateral estoppel to those rulings, and this is not an opportunity for the State Court Plaintiffs to have a "second bite of the apple," or to use their violation of the November 2015 Decision and the December 2015 Judgment as a back door opportunity to re-litigate issues, or to create new appeal opportunities, for matters that have been already been finally determined by this Court.

## REPLY

**I.    The Bankruptcy Court Ruled On the State Court Plaintiffs' Issues in Connection with the November 2015 Decision and December 2015 Judgment.**

The Bankruptcy Court's Case Management Order dated August 19, 2015 [Dkt. No. 13383] ("**August CMO**"),[6] explicitly asked the parties to inform the Court if "any other matters . . . need to be addressed by this Court" in connection with the pleadings filed after the entry of the June 2015 Judgment. August CMO, ¶ 1(g). Importantly, the Bankruptcy Court stated that it was "in particular need of information with respect to the ***Non-Ignition Switch Plaintiffs' claims (whether for injury or death or economic loss)***, and pending and future matters affecting them, but so long as such claims are satisfactorily covered in the letter(s) to come, they can be addressed in connection with other claims to the extent appropriate." *Id.* ¶ 2 (emphasis added).[7] It is thus abundantly evident that, as part of the proceedings leading to the November 2015 Decision and the December 2015 Judgment, the Bankruptcy Court intended to resolve all bankruptcy-related issues associated with the lawsuits filed by Post-Closing Accident Plaintiffs asserting personal injury claims relating to Old GM Vehicles (like the State Court Plaintiffs).[8]

An issue identified by New GM to be addressed by the Bankruptcy Court was whether "requests for punitive/special damages against New GM based in any way on Old GM conduct,

---

[6]    A copy of the August CMO is contained in the compendium of exhibits filed with the Motion to Enforce as Exhibit "H."

[7]    After the June 2015 Judgment, plaintiff Dolly Walton filed a No Strike Motion [Dkt. 13228] in connection with a post-363 Sale accident involving her Old GM vehicle without the Ignition Switch Defect, seeking the right to assert punitive damages against New GM. Ultimately, Ms. Walton withdraw her punitive damage request, but this underlying *Walton* controversy was extant at the time of the August CMO.

[8]    The State Court Plaintiffs incorrectly argue that the April 2015 Decision and June 2015 Judgment only applied to Ignition Switch Plaintiffs, and not Non-Ignition Switch Plaintiffs. They build on that false premise and argue incorrectly that the November 2015 Decision and the December 2015 Judgment similarly did not deal with Old GM Vehicle Owners without the Ignition Switch Defect. As demonstrated by their own brief at page 6, the original premise about the April 2015 Decision and June 2015 Judgment was wrong, and, as demonstrated in this section, the State Court Plaintiffs were equally wrong about Post-Closing Accident Plaintiffs without the Ignition Switch Defect not being covered by the November 2015 Decision and the December 2015 Judgment.

including but not limited to post-363 Sale accidents of Old GM vehicles" were barred by the Bankruptcy Court's rulings. *See* Letter by New GM to Bankruptcy Court, dated August 26, 2016 [Dkt. No. 13390] ("**New GM August 26 Letter**"),[9] at 4. The identified punitive damage issue specifically referred to post-363 Sale accidents; there was no distinction between Old GM Vehicles with the Ignition Switch Defect, and those, like the State Court Plaintiffs, without the Ignition Switch Defect. In the end, the Bankruptcy Court resolved the punitive damage issue in the November 2015 Decision and the December 2015 Judgment on behalf of all Post-Closing Accident Plaintiffs, including plaintiffs like the State Court Plaintiffs.

Another issue identified in the New GM August 26 Letter to be addressed by the Bankruptcy Court was whether certain causes of action asserted by plaintiffs (including the State Court Plaintiffs) were assumed by New GM when it assumed Product Liabilities under the Sale Agreement. The Bankruptcy Court agreed with New GM's request to rule on certain reoccurring claims, and the November 2015 Decision and the December 2015 Judgment made numerous rulings in this regard, some of which are relevant and dispositive of issues in dispute herein.

To facilitate the review and consideration of improper claims and allegations that were being asserted against New GM by plaintiffs (including plaintiffs like the State Court Plaintiffs), the Bankruptcy Court requested that marked pleadings be filed to illustrate the issues in dispute. New GM, in turn, suggested that representative complaints be filed, and issues categorized, because the MDL complaint itself was over 1,000 pages, and the aggregate number of pages involved in all of the pertinent complaints was a high multiple of that page number. New GM's approach was adopted by the Bankruptcy Court in the September 3 Scheduling Order.[10]

---

[9]     A copy of the New GM August 26 Letter is annexed hereto as **Exhibit "A."**

[10]    The State Court Plaintiffs assertion that the September 3 Scheduling Order *required* that New GM mark-up *all* of the complaints of *all* Post-Closing Accident Plaintiffs to show how such complaints violated the Bankruptcy Court's ruling is wrong. The September 3 Scheduling Order provided:

At the hearing held in connection with the August CMO, Edward Weisfelner from Brown Rudnick, Lead Bankruptcy Counsel for the plaintiffs asserting claims against New GM, raised certain issues where there was not agreement among the parties, including those concerning plaintiffs without the Ignition Switch Defect. He stated:

> if a non-ignition switch defect claimant, whether would start an independent claim against New GM, would that non-ignition switch plaintiff be successful, vis-a-vis Your Honor as a gatekeeper. New GM's contention is that, aha, wait a second, the non-ignition switch plaintiff cannot assert an independent claim against New GM unless and until that non-ignition switch plaintiff demonstrates that back in '09, its due process rights were violated. Because Your Honor you determined that independent claims were permissible having first determined that the ignition switch plaintiffs' due process rights were violated with prejudice because they didn't have an opportunity to argue over breadth of the injunction.

Transcript of Hearing held August 31, 2015 ("**8/31/15 Hr'g Tr.**"), at 27:12-23.[11] After raising this issue, the Bankruptcy Court asked if Mr. Weisfelner was "now going to be kind of designated counsel for non-ignition switch plaintiffs . . . ." *Id.*, at 38:9-10. The following colloquy then took place:

> MR. WEISFELNER: ". . . yes, we perceive ourselves as having taken the mantel of preserving and protecting the rights of non-ignition switch plaintiffs in this court."

---

that in the event New GM believe there are issues to be decided by the Court in actions that received a demand letter that are not covered in paragraphs 1-5 above, New GM shall file with the Court and serve on counsel of record *in such representative case(s) on or before September 23, 2015* (i) a marked-up version of their complaints ("Other Plaintiffs' Complaints"), showing which portions thereof New GM contends violate the Judgment, the Decision and/or the Sale Order and Injunction, and (ii) a letter, not to exceed three (3) single-spaced pages for the Other Plaintiffs' Complaints, setting forth New GM's position with respect to the Marked Other Plaintiffs' Complaints ("New GM Marked Other Plaintiffs' Complaints Letter"); September 3 Scheduling Order, at 5 (emphasis added).

In the New GM Marked Other Plaintiffs' Complaint Letter, dated September 23, 2015 [Dkt. No. 13466] (a copy of which, without exhibits, is annexed hereto as **Exhibit "B"**), New GM specifically stated that "[t]he issues raised by the Other Plaintiffs' Complaints are found in multiple cases filed against New GM. Pursuant to the Scheduling Order, New GM was permitted to identify 'representative cases' that raise these issues. New GM's arguments are applicable to all such cases, and any rulings by the Court should be binding on all plaintiffs in such cases." The State Court Plaintiffs were served with the New GM Marked Other Plaintiffs' Complaint Letter. *See* Motion to Enforce, Compendium of Exhibits, Exh. "M."

[11]  A copy of the relevant portions of the August 31, 2015 Transcript is annexed hereto as **Exhibit "C."**

THE COURT: So I don't have to worry about them not having been heard if I listen to you.

MR. WEISFELNER: I think that's a correct conclusion, especially in light of Your Honor's procedures in the judgment itself.

*Id.* at 38:17-24.

Later on at the hearing, the Bankruptcy Court noted that "the non-ignition switch plaintiffs' inability or inaction to have yet established a due process violation to give them the benefits that the remainder of your constituency got is, in my view, a big issue." 8/31/15 Hr'g Tr., at 80:21-25. While the Bankruptcy Court noted that he had not decided this issue, it was nonetheless an issue that needed to be addressed with finality. Mr. Weisfelner responded, saying that "[t]o the extent that that remains an issue, then in term of triaging things, it seems to me that we need to get that issue teed up quickly because to the extent that people, either New GM or us, depending on who loses, needs to appeal that decision, they ought to get started." *Id.* at 81:22-82:2.[12]

In addition to the participation of Lead Bankruptcy Counsel, as part of the proceedings leading to the November 2015 Decision and the December 2015 Judgment, the claims of plaintiffs with Old GM Vehicles without the Ignition Switch Defect (which included Post-Closing Accident Plaintiffs) were addressed by the Bankruptcy Court in connection with pleadings filed by counsel Gary Peller.[13]

Moreover, in the New GM Marked Other Plaintiffs' Complaint Letter, New GM specifically identified as representative samples of barred claims, certain complaints filed by

---

[12]   The concern raised by Mr. Weisfelner about teeing up an appeal related to coordinating the already pending appeal of the April 2015 Decision and the June 2015 Judgment; briefs were yet to be filed in the Second Circuit when that statement was made.

[13]   *See New GM Peller Clients Marked Complaints Letter*, dated October 30, 2015 [Dkt. No. 13523], at 2 n.3. Two of these plaintiffs (Kanu and Mitchell) were involved in post-363 sale accidents of Old GM Vehicles without the Ignition Switch Defect (*i.e.*, Chevrolet Impalas). A copy of the New GM Peller Clients Marked Complaints Letter, without exhibits, is annexed hereto as **Exhibit "D."**

plaintiffs involved in post-363 Sale accidents that concerned Old GM Vehicles without the Ignition Switch Defect. For example, the New GM Marked Other Plaintiffs' Complaint Letter requested that the Bankruptcy Court find that (i) claims based on a failure to recall or retrofit a vehicle are not Assumed Liabilities, using a representative complaint that concerned a post-363 accident involving a 1996 GMC pick-up truck, (ii) claims based on a failure to identify defects or respond to a notice of defect are not Assumed Liabilities, using a representative complaint that concerned a post-363 accident involving a 2005 Chevrolet Malibu, and (iii) claims based on Section 402B – Misrepresentation by Seller, using a representative complaint that concerned a post-363 accident involving a 2002 Chevrolet S-10 pickup truck.

In sum, the Bankruptcy Court clearly stated its intention to rule on Post-Closing Accident Plaintiff (both Old GM vehicles with the Ignition Switch Defect, and those without the Ignition Switch Defect) issues as part of the November 2015 Decision and the December 2015 Judgment, and their interests were represented by Lead Bankruptcy Counsel and other plaintiffs' counsel. As shown in the next section, State Court Plaintiffs were notified of the proceedings leading to the November 2015 Decision and the December 2015 Judgment, and were given standing to participate therein (which they chose not to do).

## II.    The Bankruptcy Court Intended that Its Rulings Would be Binding on the State Court Plaintiffs.

The State Court Plaintiffs acknowledge that they were on notice of the proceedings leading to the entry of the November 2015 Decision and the December 2015, but chose not to participate. *See* State Court Plaintiffs Objection, at 13-14.  Their explanation as to why they did not feel compelled to participate does not withstand scrutiny.

As part of the New GM August 26 Letter, New GM informed the Bankruptcy Court that it recently sent out demand letters to plaintiffs involved in other lawsuits pursuant to the

procedures set forth in the June 2015 Judgment.  Attached to the New GM August 26 Letter was

an exhibit which listed the lawsuits where a demand letter had been sent.  One of those lawsuits

was the Tibbetts Lawsuit, which is subject of the Motion to Enforce.  Counsel for the Tibbetts

Plaintiff also represents the Chapman Plaintiff in the Chapman Lawsuit, another case that is

subject to the Motion to Enforce.[14]  A demand letter was also sent to counsel for the Chapman

Plaintiffs on September 1, 2015, before the entry of the September 3 Scheduling Order.

In the New GM August 26 Letter, New GM specifically stated that it

> believes that the issues raised by these lawsuits can be resolved at one time in the
> context of the procedures described herein.  It should be noted that many of the
> demand letters were recently sent out by New GM so that affected parties would
> be bound by Your Honor's rulings on the issues to be determined as set forth in
> this letter. In other words, affected parties would be subject to principles of
> collateral estoppel for these issues and not simply stare decisis.

*Id.* at 2.  New GM also reserved "the right to send out demand letters on any lawsuit (currently

pending against New GM or that will be filed in the future) if it believes such lawsuit violates the

Judgment, April 15 Decision (as herein defined) or the Sale Order and Injunction."  *Id.* at 2 n. 2.

The Bankruptcy Court ultimately entered the September 3 Scheduling Order, which

authorized New GM to serve that Order on parties who previously received demand letters with

the following Court-approved cover note:

> General Motors LLC ("New GM") previously served on you a demand letter
> ("Demand Letter") in connection with a lawsuit commenced by you against New
> GM which set forth certain deadlines for filings pleadings with the Bankruptcy
> Court (as defined in the Demand Letter). The attachment is a Scheduling Order
> entered by the Bankruptcy Court on September 3, 2015 ("Scheduling Order").

> Please review the Scheduling Order as it modifies the time periods set forth in the
> Demand Letter for filing certain pleadings with the Bankruptcy Court, including
> without limitation, the 17 business days to respond to the Demand Letter. If you
> have any objection to the procedures set forth in the Scheduling Order, you must
> file such objection in writing with the Bankruptcy Court within three (3) business

---

[14] As noted in the State Court Plaintiffs Objection, a settlement was reached in the Lemus Lawsuit and, therefore, that lawsuit is no longer subject to the Motion to Enforce.

days of receipt of this notice ("Objection"). ***Otherwise, you will be bound by the terms of the Scheduling Order and the determinations made pursuant thereto.*** If you believe there are issues that should be presented to the Court relating to your lawsuit that will not otherwise be briefed and argued in accordance with the Scheduling Order, you must set forth that position, with specificity in your Objection. The Court will decide whether a hearing is required with respect to any Objection timely filed and, if so, will, promptly notify the parties involved.

September 3 Scheduling Order, at 4 (emphasis added).

Prior to entry of the September 3 Scheduling Order, this Court-approved note was discussed at the August 31 hearing; and the Bankruptcy Court noted that such process "sound[ed] sensible . . . ." 8/31/15 Hr'g Tr., at 118:13. Counsel for the parties at the August 31 hearing (including Goodwin Procter, counsel now for the State Court Plaintiffs) reviewed and approved the form of the September 3 Scheduling Order.

As noted in the Motion to Enforce, New GM timely served counsel for the Tibbetts Plaintiff and the Chapman Plaintiff with the September 3 Scheduling Order, and the Court-approved note (as well as pleadings filed by New GM in connection therewith). While the Tibbetts Plaintiff and Chapman Plaintiff were not ***required*** to participate in the proceedings leading up to the November 2015 Decision and the December 2015 Judgment, they were put on notice that if they did not, they would be bound by the Bankruptcy Court's rulings.

Moreover, the September 3 Scheduling Order provided:

nothing in this Order is intended to nor shall preclude any other plaintiff's counsel (or pro se plaintiff), affected by the issues being resolved by this Court, from taking a position in connection with any such matters; provided, however, that such affected other plaintiffs' counsel who wishes to file a separate pleading with respect such matter(s) shall timely file a letter with the Court seeking permission to do so.

*Id.* at 5.

The Fox Plaintiff received her demand letter and a copy of the September 3 Scheduling Order a few days after entry of the September 3 Scheduling Order. Accordingly, the Fox Plaintiff

was in the exact same position as the Tibbetts Plaintiff and the Chapman Plaintiff. Since New GM reserved the right to send out additional demand letters, and the September 3 Scheduling Order allowed all plaintiffs to participate in the proceedings, the Fox Plaintiff should be bound on collateral estoppel grounds by the Bankruptcy Court's rulings in the same way that the Tibbetts Plaintiff and the Chapman Plaintiff are bound.[15]

Collateral estoppel applies when the following requirements are met: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002). Here, all of the collateral estoppel requirement are met to bind the State Court Plaintiffs to the November 2015 Decision and the December 2015 Judgment.

In sum, the Bankruptcy Court intended that the November 2015 Decision and December 2015 Judgment would be binding on all Post-Closing Accident Plaintiffs without the Ignition Switch Defect, such as the State Court Plaintiffs.[16] They are bound on collateral estoppel grounds to those rulings.

---

[15] The Fox Plaintiff asserts that the filing of the Motion to Enforce is a "litigation tactic aimed at delaying the trial in the Georgia State Court." State Court Plaintiffs Objection, at 14 n.17. That obviously is not the case. New GM filed the Motion to Enforce at this time to give the Court an appropriate amount of time to resolve the issues raised therein so as to not interfere with the trial scheduled in September 2016. As noted in the Motion to Enforce, New GM is currently working with other plaintiffs' counsel in connection with pleadings in other lawsuits. Ideally, New GM would have preferred to wait to file the Motion to Enforce to include other plaintiffs that are not complying with the Bankruptcy Court rulings. However, given the upcoming September 2016 trial date in the Fox Lawsuit, New GM was compelled to file the Motion to Enforce earlier than it would have otherwise.

[16] As noted in the Lead Counsel Response, MDL Class Plaintiffs have recognized that based on the November 2015 Decision and the December 2015 Judgment, Non-Ignition Switch Plaintiffs were required to amend their complaints to strike Independent Claims against New GM (which they have done). *See* Lead Counsel Response, ¶ 1.

### III.    The State Court Plaintiffs Cannot Willfully Violate the Bankruptcy Court Rulings Regarding Independent Claims Simply Because They Disagree With Those Rulings

The State Court Plaintiffs have never filed a motion in this Court, let alone proven, that the Sale Order and Injunction should be modified for them to assert Independent Claims based on an alleged due process violation. In essence, they are proceeding in State Court as if they won a motion they never filed. The reality is that the State Court Plaintiffs are willfully violating the November 2015 Decision and the 2015 December Judgment, which are binding on them.[17] According to those Bankruptcy Court rulings, the State Court Plaintiffs are prohibited from asserting Independent Claims and punitive damages against New GM.

The State Court Plaintiffs' argument that Post-Closing Accident Plaintiffs without the Ignition Switch Defect have not been given an opportunity to prove a due process violation is meritless. Bankruptcy enforcement proceedings on these issues commenced in 2014, over two years ago. The State Court Plaintiffs could have teed up the due process issue in the Bankruptcy Court during such time. Moreover, the State Court Plaintiffs were forewarned that they would be barred from asserting Independent Claims by the April 2015 Decision and the June 2015 Judgment. In those rulings, the Bankruptcy Court held that only Ignitions Switch Plaintiffs (and not Non-Ignition Switch Plaintiffs) could assert Independent Claims against New GM. The State Court Plaintiffs did nothing after the April 2015 Decision and the June 2015 Judgment, or before the November 2015 Decision and the December 2015 Judgment, to raise a due process issue in the Bankruptcy Court. This failure to act is glaring, considering the Bankruptcy Court told Post-Closing Accident Plaintiffs without the Ignition Switch Defect that if they wanted to raise a due

---

[17]    The only appeal filed in connection with the November 2015 Decision and the December 2015 Judgment relates to whether New GM is responsible for plaintiffs' failure to file proofs of claim against Old GM. It has nothing to do with the ability of Post-Closing Accident Plaintiffs without the Ignition Switch Defect to assert Independent Claims.

process issue, they should do so in connection with the proceedings relating to the November

2015 Decision and the December 2015 Judgment.

In the November 2015 Decision, in holding that Non-Ignition Switch Plaintiffs could not

assert Independent Claims against New GM, the Bankruptcy Court noted that Non-Ignition

Switch Plaintiffs:

> could have tried to show the Court that they had "known claims" and were denied
> due process back in 2009, but they have not done so. The Court ruled on this
> expressly in the Form of Judgment Decision [relating to the June Judgment]. It
> then held:
>
>> The Non–Ignition Switch Plaintiffs' claims remain stayed, and properly
>> so; those Plaintiffs have not shown yet, if they ever will, that they were
>> known claimants at the time of the 363 Sale, and that there was any kind
>> of a due process violation with respect to them. And unless and until they
>> do so, the provisions of the Sale Order, including its injunctive provisions,
>> remain in effect.
>
> 531 B.R. at 360. That ruling stands. In the April Decision and resulting Judgment,
> the Court modified a Sale Order under which the buyer had a justifiable right to
> rely because a higher priority—a denial of due process, which was of
> Constitutional dimension—necessitated that. But without a showing of a denial of
> due process—and the Non–Ignition Switch Plaintiffs have not shown that they
> were victims of a denial of due process—the critically important interests of
> finality (in each of the 2009 Sale Order and the 2015 Form of Judgment Decision
> and Judgment) and predictability must be respected, especially now, more than 6
> years after entry of the Sale Order.

*In re Motors Liquidation Co.*, 541 B.R. 104, 130 n. 70 (Bankr. S.D.N.Y. 2015); *see also id*. at

140 (in connection with claims asserted by plaintiffs represented by Gary Peller, some of which

concerned post-sale accidents involving Old GM Vehicles without the Ignition Switch Defect,

the Bankruptcy Court held that the "third type of Blue Category objection concerns claims

asserted on behalf of Non–Ignition Switch Plaintiffs. This objection is sustained, in full, with

respect to all assertedly Independent Claims for reasons discussed in n.70 above").

Clearly, the time to raise due process issues relating to the Sale Order and Injunction was

in connection with the proceedings relating to the November 2015 Decision and the December

2015 Judgment. It is now too late for the State Court Plaintiffs to raise due process issues after the November 2015 Decision and December 2015 Judgment is final as to them.[18]

The State Court Plaintiffs want the same modification to the Sale Order and Injunction as provided to the Ignition Switch Plaintiffs even though they recognize that they have not sought to prove (let alone proven) that they were known creditors of Old GM as of the 363 Sale and, therefore, entitled to receive the 363 Sale notice by direct mail (instead of publication). Without a due process violation, there is no basis under the April 2015 Decision and June 2015 Judgment to modify the Sale Order and Injunction.

## IV.    *Grumman Olson* **Is Not Applicable**

In addition to not filing a motion to modify the Sale Order and Injunction, or actually demonstrating a due process violation and any resulting prejudice, a critical difference between the State Court Plaintiffs and the *Grumman Olson* case is that New GM *agreed* to assume Product Liabilities. Therefore, this case is *not* about a plaintiff who has *no* redress for its claims relating to an allegedly defective product manufactured by a debtor. This important distinction was noted by the bankruptcy court in *Grumman Olson*, who clearly understood that the *GM* case presented a different situation: "To the contrary, the buyer in GM assumed 'all product liability claims arising from accidents or other discrete incidents arising from operation of GM vehicles occurring subsequent to the closing of the 363 Transaction, *regardless of when the product was purchased.*'" *In re Grumman Olson Indus., Inc.*, 445 B.R. 243, 255-56 (Bankr. S.D.N.Y. 2011),

---

[18]    *See Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 152 (2009) ("On direct appeal of the 1986 Orders, anyone who objected was free to argue that the Bankruptcy Court had exceeded its jurisdiction, and the District Court or Court of Appeals could have raised such concerns *sua sponte*. . . . But once the 1986 Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the 'parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" (citations omitted)).

*aff'd*, 467 B.R. 694 (S.D.N.Y. 2012) (quoting *In re General Motors Corp.*, 407 B.R. 463, 482 (Bankr. S.D.N.Y. 2009)) (emphasis in original).

Moreover, this case is not a situation where post-363 Sale accidents were not contemplated or considered by Old GM, New GM or the Bankruptcy Court. In fact, post-363 Sale accidents were a significant focus of the parties in June 2009. Initially, New GM agreed to assume liabilities associated with accidents that occurred after the closing of the 363 Sale, but only if the vehicle was *sold* after the 363 Sale. After negotiations among various parties in June 2009, this provision of the Sale Agreement was changed such that New GM agreed to assume Product Liabilities in connection with accidents that occurred after the closing of the 363 Sale, regardless of when the vehicle was first sold. Accordingly, unlike *Grumman Olson*, this liability was specifically addressed in the Sale Agreement and the Sale Order and Injunction.

Additionally, *Grumman Olson* is construed to be an exception to the "no successor liability finding" in a 363 sale order. The underlying premise is that post-363 sale plaintiffs should be given a remedy for product liability claims, and if the debtor/seller is otherwise defunct, the asset purchaser may be liable for the debtor/seller's liability. Here, the State Court Plaintiffs acknowledge that they are not seeking to hold New GM liable under a successor liability theory. *See* State Court Plaintiffs Response, at 23. Thus, *Grumman Olson* is distinguishable on this basis as well.

Indeed, the dispute in this case relates to the State Court Plaintiffs desire to allege an Independent Claim against New GM. By definition, Independent Claims are not predicated on an Assumed Liability or a Retained Liability. *See* December 2015 Judgment, at 1 n.2. In other words, an Independent Claim must be based solely on an independent duty that New GM acquired after the 363 Sale (unrelated to a duty that Old GM had) that is established solely by

New GM's own independent post-Closing acts or conduct. *Id*. In this regard, New GM's alleged duty relating to an Independent Claim must be assessed (a) in its capacity as a non-manufacturer and non-seller of the Old GM vehicle, (b) without regard to any obligations New GM incurred under the Sale Agreement, and (c) in its capacity as a non-successor in interest to Old GM. Those distinctions make this a different case than *Grumman Olson*. As the District Court in *Grumman Olson* noted: "This case ultimately turns on the potential reach of section 363 'free and clear' sale order to extinguish a claim against a purchaser that is based on ***pre-bankruptcy conduct of the debtor*** . . . ." *In re Grumman Olson Indus., Inc.*, 467 B.R. 694, 703 (S.D.N.Y. 2012) (emphasis added). In other words, the antithesis of an Independent Claim.

The reality is that the so-called Independent Claims asserted by the State Court Plaintiffs are either Assumed Liabilities or Retained Liabilities anyway. In *Tibbetts*, the plaintiff frames her Independent Claim for duty to warn as something that New GM "assumed". *See* Tibbets First Amended Complaint, ¶ 37; *see also id.* ¶ 38 ("New GM assumed the responsibility to act reasonably and responsibly post-sale"); *id.* ¶ 39 (New GM assumed responsibility to use reasonable care in the warnings). The *Chapman* case, by the same attorney, follows the same pattern. *See* Chapman First Amended Complaint, ¶ 13 (Independent claims were based on New GM "accepting legal responsibility for certain assumed liabilities….).[19]   In the *Fox* case, the State Court Plaintiff alleges a New GM duty to warn which emanates from the same alleged Old GM duty to warn.

Significantly, counsel for the State Court Plaintiffs actually raised the due process/*Grumman Olson* argument at the hearing on the issues set forth in the September 3 Scheduling Order, arguing that New GM should be liable on a successor liability theory for

---

[19]   *Tibbetts* and *Chapman* both seek punitive damages for Assumed Liabilities which is proscribed by the November 2015 Decision and the December 2015 Judgment.

punitive damages.  *See* Transcript of Hearing held October 14, 2015, at 22:2-13.[20]  In the

December 2015 Judgment, however, the Bankruptcy Court held that allegations alleging that

New GM is a successor to Old GM are barred (*id.* ¶ 18), and that New GM did not assume

punitive damages (*id.* ¶ 6).

In short, *Grumman Olson* is not applicable to this case.

## V.    The State Court Plaintiffs' Subject Matter Jurisdiction Objection Rehash Arguments Previously Made and Rejected by the Bankruptcy Court

After recognizing that the Bankruptcy Court limited the assertion of Independent Claims

against New GM to Ignition Switch Plaintiffs, the State Court Plaintiffs, like other plaintiffs

before it, fall back on the now familiar refrain that the Bankruptcy Court lacked subject matter

jurisdiction to bar claims against the purchaser of the debtor's assets arising from Old GM

Vehicles.  The State Court Plaintiffs (like the plaintiffs who argued, and lost, in connection with

the Four Threshold Issues) attempt to draw a distinction between *in rem* claims and *in personam*

claims, relying on the Second Circuit's decision in *Travelers Casualty & Surety Co. v. Chubb*

*Indemnity Insurance Co*. (*In re Johns-Manville Corp*.), 600 F.3d 135 (2d Cir. 2010), *cert. denied*,

131 S. Ct. 644 (2010).

The argument the State Court Plaintiffs now make was in fact raised by product liability

claimants at the Sale Hearing (and rejected), and again in their appeal of the Sale Order and

Injunction (also rejected).  In particular, in the appeal of the Sale Order and Injunction, the

District Court found in *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428

B.R. 43 (S.D.N.Y. 2010):

> Appellants challenge the Bankruptcy Court's "colorable" jurisdiction on the
> grounds that the Bankruptcy Court lacked authority to enjoin their in personam
> successor liability claims under section 363(f). However, at the time the Sale

---

[20]    A copy of the relevant portions of the October 14, 2015 Transcript is annexed hereto as **Exhibit "E."**

> Opinion and Order were issued, the Bankruptcy Court's interpretation and exercise of its authority under section 363(f) was consistent with the opinions of at least three Second Circuit judges—whose ranks have since expanded to include a panel of three different judges who also affirmed the proposition that section 363(f) authorizes the sale of assets "free and clear" of successor tort liability, another Bankruptcy Judge in this District, as well as panels of judges in other circuits including the Third and Fourth Circuits.

*Id.* at 57-58. The District Court ultimately held that:

> In light of the foregoing historic and immediate precedent finding bankruptcy courts possessed of such authority pursuant to section 363(f), it is clear that the Bankruptcy Court had more than "colorable" jurisdiction to issue the Sale Order's injunctive provisions providing that the Purchased Assets would be transferred "free and clear of all liens, claims, encumbrances, and other interests ... including rights or claims based on any successor or transferee liability." Sale Order ¶ 7. Indeed, to contend otherwise is simply not a "colorable" argument.

*Id.* at 59.

This same issue was again raised in connection with the resolution of the Four Threshold Issues, and rejected by the Bankruptcy Court. In the April 2015 Decision and June 2015 Decision, the Bankruptcy Court found that the Sale Order and Injunction remained in full force and effect, except to the extent that it was modified by those rulings (which permitted the assertion of Independent Claims by only Ignition Switch Plaintiffs). *See* June 2015 Judgment, ¶ 5 ("Except for the modification to permit the assertion of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect.").

After entry of the June 2015 Judgment, a group of plaintiffs sought re-argument in connection with the rulings set forth therein. As the Bankruptcy Court explained, this group of plaintiffs (which included plaintiffs with claims based on post-363 sale accidents involving Non-Ignition Switch Vehicles) "contend[ed] that the Court committed 'manifest error' by not understanding the difference between *in rem* and *in personam* jurisdiction." *In re Motors Liquidation Co.*, 534 B.R. 538, 552 (Bankr. S.D.N.Y. 2015). In response, the Bankruptcy Court found as follows:

> Finally, Peller's perception that the Court fails to understand the difference between *in rem* and *in personam* jurisdiction, aside from being incorrect in its premise, is of no moment. He devotes a full 10 pages of his brief to discussion of the distinction between *in rem* and *in personam* claims. But the reason for that lengthy discussion is unclear. If it is to argue that successor liability claims can still be asserted, notwithstanding the Court's extensive analysis and conclusions to the contrary, that is not a matter the Court overlooked; it is a matter for appeal. If, as seems to be the case, it is to suggest that genuinely Independent Claims can still be asserted, he already has won on that, so long as he limits his future claims to genuinely Independent Claims. Here too, there is no basis for reargument or reconsideration.

*Id.* at 552-53.  Put simply, the Bankruptcy Court (and District Court) have previously addressed the Bankruptcy Court's subject matter jurisdiction to enter the Sale Order and Injunction, and have consistently enforced the provisions of that Order.

Finally, the Sale Order and Injunction has been a final order for almost seven years and it is no longer subject to attack.  Thus, any argument regarding subject matter jurisdiction can no longer be asserted by the State Court Plaintiffs.  *See Travelers*, 557 U.S. at 152.  While the State Court Plaintiffs recognize this (*see* State Court Plaintiffs Objection, at 26-27), they again lapse into their due process argument.  But whether there was a due process violation is a different question from whether the Bankruptcy Court had subject matter jurisdiction to enter the Sale Order and Injunction.  As discussed, *supra*, the State Court Plaintiffs' argument regarding due process are not well founded, and should be rejected.  They had the chance to appear in connection with the proceedings leading to the November 2015 Decision and the December 2015 Judgment and decided not to do so.  The November 2015 Decision and the December 2015 Judgment have not been appealed by them, and they are now final as to the State Court Plaintiffs.

Accordingly, the Bankruptcy Court had subject matter jurisdiction to enjoin claims against New GM that are based on Old GM Vehicles.

WHEREFORE, for all of the foregoing reasons, and as set forth in the Motion to Enforce, New GM respectfully requests that this Court enter an order, substantially in the form contained in the compendium of exhibits filed with the Motion to Enforce as **Exhibit "X,"** granting the relief sought in the Motion to Enforce, and for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      June 23, 2016

          Respectfully submitted,


             /s/ Arthur Steinberg
          Arthur Steinberg
          Scott Davidson
          KING & SPALDING LLP
          1185 Avenue of the Americas
          New York, New York  10036
          Telephone:    (212) 556-2100
          Facsimile:    (212) 556-2222

          Richard C. Godfrey, P.C. (admitted *pro hac vice*)
          Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
          KIRKLAND & ELLIS LLP
          300 North LaSalle
          Chicago, IL 60654
          Telephone:    (312) 862-2000
          Facsimile:    (312) 862-2200

          *Attorneys for General Motors LLC*