# **<u>Exhibit A</u>**

09-50026-reg    Doc 13390    Filed 08/26/15    Entered 08/26/15 16:31:10    Main Document
                          Pg 2 of 58

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel:  (212) 556-2100
Fax:  (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial:  212-556-2158
asteinberg@kslaw.com

August 26, 2015

**VIA E-MAIL TRANSMISSION**
**AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York  10004

Re:    **In re Motors Liquidation Company,** *et al.*
         **Case No. 09-50026 (REG)**

         **Letter In Response to Case**
         **Management Order, dated August 19, 2015**

Dear Judge Gerber:

      King & Spalding LLP is co-counsel with Kirkland & Ellis LLP for General Motors LLC ("**New GM**") in the above-referenced matter.  New GM has had two "meet and confers" with Designated Counsel and counsel for the GUC Trust/Unitholders (each of whom is copied on this correspondence) with respect to Your Honor's *Case Management Order Re No-Strike, No Stay, Objection, and GUC Trust Asset Pleadings*, entered by the Court on August 19, 2015 [ECF No. 13383].  While we were able to reach agreement on certain issues with Designated Counsel (subject to Your Honor's approval), we were not able to reach an agreement on all issues.  We were able to reach an agreement with the GUC Trust/Unit holders on their issues. This letter will set forth where there is consensus among the parties, and New GM's position on the disputed issues.

      1.    The individual complaints that already are the subject of pleadings filed with the Court pursuant to the Judgment, dated June 1, 2015 [ECF No. 13177] ("**Judgment**"), are those filed in the following lawsuits:

Honorable Robert E. Gerber
August 26, 2015
Page 2

     a.     The Second Amended Consolidated Complaint filed in *In re General Motors LLC Ignition Switch Litigation*; Case No. 14-MD-2543 (S.D.N.Y.) ("**No Strike SACC Pleading**");

     b.     *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) ("**California No Strike Pleading**");

     c.     *State of Arizona v. General Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.) ("**Arizona No Strike Pleading**," and with the California No Strike Pleading, the "**States No Strike Pleadings**"); and

     d.     *Adams v. General Motors LLC*; Case No. 15-5528 (S.D.N.Y.).[1]

New GM notes that, while formal pleadings have not yet been filed with the Court, New GM has sent demand letters to plaintiffs involved in other lawsuits—including but not limited to six bellwether personal injury complaints filed in MDL 2543, the first of which is scheduled for trial in January 2016—pursuant to the procedures set forth in the Judgment. It is anticipated that pleadings may eventually be filed in response to some (or all) of these demand letters. Attached hereto as **Exhibit "A"** is a list of lawsuits where demand letters have been sent by New GM as of the date hereof, but the deadline to amend or dismiss a complaint, or file a pleading pursuant to the Judgment has not yet occurred.[2] Although there are a number of lawsuits listed on Exhibit "A," many of them can be grouped together, and raise the same common issue. New GM believes that the issues raised by these lawsuits can be resolved at one time in the context of the procedures described herein.[3] It should be noted that many of the demand letters were recently sent out by New GM so that affected parties would be bound by Your Honor's rulings on the issues to be determined as set forth in this letter. In other words, affected parties would be subject to principles of collateral estoppel for these issues and not simply *stare decisis*.

It is further noted that New GM did not send out new demand letters for lawsuits that are already listed on the Exhibits to the Judgment. Such plaintiffs already received notice of the Judgment from New GM pursuant to the procedures set forth in the Judgment. To the extent such plaintiffs  (a) did not amend their complaints to be fully compliant with the Judgment (in New

---

[1]    Mr. Peller believes that Your Honor did not address all of the issues raised in his No Stay/No Strike/No Dismissal Pleading in *Bledsoe*, but New GM believes the Court has done so.

[2]    Lawsuits against New GM based on Old GM vehicles continue to be filed against New GM. New GM believes that there may be other pending lawsuits against New GM, or future lawsuits filed against New GM, that may also warrant a demand letter. Accordingly, New GM reserves the right to send out demand letters on any lawsuit (currently pending against New GM or that will be filed in the future) if it believes such lawsuit violates the Judgment, April 15 Decision (as herein defined) or the Sale Order and Injunction. New GM will endeavor to do so before September 21, 2015 (the suggested time for it to submit the Marked Pleadings (as defined herein)), and will timely supplement Exhibit "A" and file and serve the relevant Marked Pleadings as described in paragraph 4.

[3]    New GM believes that the procedures set forth herein should supplement the procedures set forth in the Judgment such that, for plaintiffs who receive a demand letter from New GM and the deadline to file a No Strike/No Dismissal Pleading has not yet expired, they should file a Supplemental Pleading in accordance with the deadlines set forth herein, in lieu of a No Strike/No Dismissal Pleading.

Honorable Robert E. Gerber
August 26, 2015
Page 3

GM's view), or (b) did not file No Strike/No Dismissal pleadings, the Judgment provides, among other things, for New GM to file a pleading in this Court so that such disputed issues could be determined. New GM believes that the procedures set forth in this Letter are intended to do just that—present the issues disputed by the parties (in these and other lawsuits) relating to the Judgment for this Court's determination.

2.      Subject to paragraph 3 below, additional pleadings with respect to the complaints listed in paragraph 1(a) through (c) above are not expected, as all pleadings authorized by the Judgment have been filed with the Court.  With respect to the complaint referenced in paragraph 1(d) above, New GM's response to the Adams No Dismissal Pleading is due to be filed on or before September 3, 2015.  The Adams Omnibus Complaint concerns Pre-Sale Accident Plaintiffs who seek damages against New GM for their failure to file a proof of claim by the Bar Date.

3.      The accelerated briefing schedule for the Punitive Damages Issue (as herein defined), as suggested by New GM in paragraph 5(a)(i) below, has not been agreed to by the parties.

4.      New GM believes that, except for the Punitive Damages Issue, there is an agreement with Designated Counsel regarding the timing of the following pleading submissions (subject to Your Honor's approval).  New GM will submit to the Court by September 21, 2015 marked pleadings ("**Marked Pleadings**") with respect to each complaint that is set forth in paragraph 1 above and representative examples of the other complaints listed on Exhibit "A" (as may be amended), that highlight the issues to be decided by the Court.  In addition, the parties believe that an appropriate briefing schedule for supplemental pleadings ("**Supplemental Pleadings**") with respect to, among other things, (i) the issues identified in pleadings already filed with the Court pursuant to the Judgment ("**Current Pleadings**," and with the Supplemental Pleadings, the "**Pleadings**"), and (ii) the issues set forth in paragraph 5 below, is as follows:

    a.      Simultaneously with filing the Marked Pleadings, New GM will file its supplemental brief ("**New GM Supplemental Brief**") with the Court, which will be 50 pages or less.

    b.      With respect to Marked Pleadings, Designated Counsel, and any other plaintiff counsel involved in a lawsuit affected by the Marked Pleadings submitted by New GM, shall filed a response to the Marked Pleading on or before October 12, 2015.

    c.      Designated Counsel and/or any other party that has filed a Current Pleading or is subject to a demand letter sent by New GM, may file a response (collectively, "**Responses**") to the New GM Supplemental Brief on or before October 19, 2015. So as to avoid duplication and, as has been the past practice, and in an effort to limit the number of Responses filed with the Court, to the extent reasonably practicable, Designated Counsel will consult and coordinate with other counsel who may wish to respond to the New GM Supplemental Brief. Assuming there will be only one Response brief, it shall be 50 pages or less. If coordination

Honorable Robert E. Gerber
August 26, 2015
Page 4

becomes difficult, Designated Counsel and/or other plaintiff's counsel should
inform the Court who would then set a page limit for each of those parties
wishing to file a Response pleading. It should be noted that Designated Counsel
requested the extra week for responding to New GM's Supplemental Brief in
order to coordinate their response with others to minimize the number of
responding briefs to be filed with this Court.

d.      New GM shall file an omnibus reply ("**New GM Reply**") to all Responses on or
before November 2, 2015, that will be 30 pages or less.

e.      The parties agree that no further submissions or oral argument is necessary with
respect to the GUC Trust Asset Pleading, and that the GUC Trust Asset Pleading
may be decided separately from the other issues referenced herein.

f.      The parties request that the Court schedule oral argument on all remaining issues
raised in the Pleadings at its earliest convenience after the New GM Reply is
filed.

5.      New GM believes that matters that the Court should address and which are the
subject of Current Pleadings, or will be the subject of the Supplemental Pleadings, are the
following:

a.      Whether the following claims, causes of action or requests for damages are barred
by the Judgment, April 15 Decision, Sale Order and Injunction, and/or any other
rulings by the Court:

i.      requests for punitive/special damages against New GM based in any way
on Old GM conduct, including but not limited to post-363 Sale accidents
of Old GM vehicles ("**Punitive Damages Issue**").

**Proposed Briefing Schedule for Punitive Damages Issue:**   As the
Punitive Damages Issue is raised in certain lawsuits that are coming up for
trial in the very near term, New GM requests an expedited briefing
schedule on this issue.  As the Court may recall, this issue was raised in
the *Walton* No Strike Pleading (which was fully briefed), and New GM
believed that *Walton* would have resolved the issue.  However, *Walton*
agreed to voluntarily dismiss the punitive damages claim, thus leaving the
issue still ripe for determination.  Because of its briefing in *Walton*, New
GM can promptly file the opening brief on this issue.  New GM suggests
the following briefing schedule be established: (A) New GM will file its
opening brief on the Punitive Damages Issue (not to exceed 20 pages) on
or before September 4, 2015; (B) Designated Counsel and other parties
that are affected by the Punitive Damages Issue shall file any response
(not to exceed 20 pages) by September 18, 2015; and (C) New GM shall
file any reply (not to exceed 10 pages) by September 29, 2015.  The Court

09-50026-reg  Doc 13368-1  Filed 08/26/15  Entered 08/26/15 16:31:16  Main Document
                                        through F  Pg 6 of 58
09-50026-reg  Doc 13368-1  Filed 08/26/15  Entered 08/26/15 17:30:23  Exhibits A
                                        through F  Pg 6 of 58

Honorable Robert E. Gerber
August 26, 2015
Page 5

will schedule a hearing on the Punitive Damages Issue if it believes one is necessary.

ii.    economic loss causes of action arising in cases that concern post-363 Sale accidents/incidents of an Old GM vehicle. (These are in the Hybrid Lawsuits referred to in the Judgment.)

iii.   causes of action based on the timing of New GM recalling Old GM vehicles which allegedly prevented plaintiffs from timely filing proofs of claim in Old GM's bankruptcy case. (This issue is raised in Designated Counsel's No Strike SACC Pleading and in the Adams No Dismissal Pleading);

iv.    causes of action based on state law consumer protection statutes relating to Old GM vehicles/parts. (This issue is raised in the No Strike SACC Pleading, the States No Strike Pleadings, and in certain of the Hybrid Lawsuits);

v.     causes of action based on a failure to warn/duty to recall an Old GM vehicle (This issue is raised in the No Strike SACC Pleading, and in certain of the Hybrid Lawsuits); and

vi.    other causes of action that are based on Old GM conduct, where New GM did not assume such liabilities. (This issue is raised in, among other lawsuits, the No Strike SACC Pleading.)

b.    Whether there are proper causes of action against New GM relating to Old GM vehicles/parts that are based on the knowledge Old GM employees gained while working for Old GM? Assuming plaintiffs identify such proper causes of action, can that knowledge be imputed to New GM at the time such employees were hired by New GM? (This issue is generally raised in Designated Counsel's No Strike SACC Pleading and in the Adams No Dismissal Pleading).

c.    Whether plaintiffs are misusing the findings in the April 15 Decision regarding the purported knowledge of 24 Old GM employees, and Old GM's knowledge as of July 2009, in violation of the terms of the Judgment, which expressly provides that "the findings of fact in the Decision shall apply only for the purpose of this Court's resolution of the Four Threshold Issues, and shall have no force or applicability in any other legal proceeding or matter, including without limitation, MDL 2543" (Judgment, ¶ 15(d))? (This issue is raised in certain lawsuits recently filed.)

d.    Whether plaintiffs named in the Second Amended Consolidated Complaint filed in MDL 2543 who were named Plaintiffs in the Pre-Sale Consolidated Complaint (*i.e.*, those Plaintiffs that purchased Old GM vehicles either (i) new and prior to

Honorable Robert E. Gerber
August 26, 2015
Page 6

> the closing of the 363 Sale, or (ii) used from a third party either prior to or after the closing of the 363 Sale), should be stricken and/or dismissed from the Second Amended Consolidated Complaint? (This issue is raised in the No Strike SACC Pleading.).

> e.     Whether the plaintiffs in MDL 2543 can seek economic loss damages for all owners of all Old GM vehicles, including those Old GM vehicle owners that never had a vehicle recalled? (This issue is raised in the No Strike SACC Pleading.)

6.     With respect to Non-Ignition Switch Plaintiffs (*i.e.,* plaintiffs that are involved in both pre-363 Sale accident cases and economic loss cases), based on the April 15 Decision and the Judgment, such plaintiffs may not assert against New GM claims based on Old GM vehicles/parts, including any claims that are allegedly based on New GM's independent conduct that would otherwise be barred by the Sale Order and Injunction, because Non-Ignition Switch Plaintiffs have not established a due process violation with respect to the 363 Sale.  New GM is not certain whether any such independent claims, otherwise barred by the Sale Order and Injunction, exist, and Non-Ignition Switch Plaintiffs have never identified this category of claims.  In MDL 2543, New GM already has produced over 1.7 million documents, totaling 12.5 million pages, and at least 219 depositions have been taken.  Non-Ignition Switch Plaintiffs (who are also represented by Lead counsel in MDL 2543) have had the benefit of such discovery. They should set forth in their Supplemental Pleading whether they have Independent Claims that would otherwise be barred by the Sale Order and Injunction, and, if so, what they are and how and when they intend to establish any due process violation arising from the 363 Sale.

Other issues with respect to the Non-Ignition Switch Plaintiffs are (a) whether the "no prejudice" finding relating to the Due Process Threshold Issue as to Ignition Switch Plaintiffs should also be binding on them, and (b) whether the ruling on equitable mootness for Ignition Switch Plaintiffs should be binding on them.  The Judgment required that the parties brief those issues, which has been done.  No oral argument is requested by New GM or the GUC Trust on the issues identified in this paragraph.[4]

*****

---

[4]     The Court has scheduled a hearing for September 22, 2015 on Designated Counsel's request to enjoin further distributions from the GUC Trust.

Honorable Robert E. Gerber
August 26, 2015
Page 7

   To facilitate the implementation of the foregoing procedures, the parties request that the Court schedule a status conference at its earliest convenience so that any remaining issues can be addressed and the necessary procedures finalized.

         Respectfully submitted,

         */s/ Arthur Steinberg*

         Arthur Steinberg

cc:  Richard C. Godfrey, P.C.
    Andrew B. Bloomer, P.C.
    Edward S. Weisfelner
    Howard Steel
    Sander L. Esserman
    Jonathan L. Flaxer
    S. Preston Ricardo
    Matthew J. Williams
    Lisa H. Rubin
    Keith Martorana
    Daniel Golden
    Deborah J. Newman
    William P. Weintraub
    Eamonn O'Hagan
    Gregory W. Fox
    Steve W. Berman
    Elizabeth J. Cabraser
    Robert C. Hilliard

# Exhibit A

## EXHIBIT A

**Category 1:  Lawsuits that Raise the Punitive Damages Issue Only**

- Alexander v. General Motors LLC, et al.
  Case No.: 2013-29761 (Dist. Ct., Harris County, Texas)

- Ballard v. General Motors LLC
  Case No.: 14-CI-00162 (Barren Co. Cir. Ct, KY)

- Barbot v. General Motors LLC, et al.
  Case No.: 2015-07436 (Dist. Ct. Parish of Orleans, LA)

- C. Grant v. General Motors LLC
  Case No.: 6:14-cv-2132 (United States District Court, M.D. Fla.)

- Callahan v. General Motors LLC
  Case No.: 13-CI-00387 (Carter Circuit Court, KY)

- Collins et al. v. General Motors LLC, et al
  Case No.: 1322-CC09999 (Cir. Ct. St. Louis, Missouri)

- Curtis v. General Motors LLC, et al.
  Case No.: CV2014-053479 (Sup. Ct. Arizona)

- Fain v. General Motors LLC, et al.
  Case No.: 15BA-CV01733 (Cir. Ct. Boone Cty., MO)

- Flor Aguero-Fraire v. General Motors LLC, et al.
  Case No.: 2015DCV1065

- Flores v. General Motors LLC
  Case No.: BC545589 (Sup. Ct. of California)

- Howell v. General Motors LLC
  Case No.: 1:15-CV-0398 (N.D. Ga.)

- Kelley et al. v. General Motors LLC et al.
  Case No.:  CIV26294 (411th Dist. Ct., Polk Cty., TX

- Lai v. General Motors LLC
  Case No.: CJ-14-77 (Dist. Ct. Murray Cty., OK)

- Lebron v. General Motors LLC, et al.
  Case No.: 2015-25589 (Harris Cty. Dist. Ct., TX)

## Category 1:  Lawsuits that Raise the Punitive Damages Issue Only (Cont'd)

- Little et al. v. General Motors LLC
  Case No.: 14-CI-00926 (Floyd Cty., KY)

- McGrath v. General Motors Company et al.
  Case No.: BC560375 (L.A. Sup. Ct., CA)

- McNeil v. General Motors LLC, et al.
  Case No.: 2014-CP-15-91 (Ct. of Common Pleas, S.C.)

- Meisel v. General Motors LLC, et al.
  Case No.: BC511453 (Superior Court, California)

- Meza et al. v. General Motors LLC, et al.
  Case No.: 30-2015-00786518-CU-PL-CXC (Orange Cty. Sup. Ct.)

- Michael Bavlsik and Kathleen Skelly v. General Motors LLC
  Case No. 4:13-cv-00509-DDN (USDC, E.D. of Missouri, Eastern Division)

- Miller v. General Motors LLC, et al.
  Case No.: 257,917-B (Dist. Ct. Bell Cty., TX)

- Minard v. General Motors LLC, et al.
  Case No.: 39-2013-00298477-CU-PL-STK (Sup. Ct of California)

- Morris v. General Motors LLC, et al.
  Case No.: 15-C-566 (Circuit Court for Davidson Cty, TN)

- Moss v. General Motors LLC
  Case No.: 3:15-cv-00200 (U.S. Dist. Ct., E.D. Ark.)

- Neal v. General Motors LLC
  Case No.: 2:14-CV-633 (U.S.D.C.  N. Div. M.D. AL)

- Nunez v. General Motors LLC et al.
  Case No.: 14SL-CC01787 (St. Louis Cty. MO)

- Perez v. General Motors LLC, et al.
  Case No.: 1:15-cv-240 (N.D.N.Y.)

- Peterson v. General Motors LLC, et al.
  Case No.: 2:15-cv-01108-SPL (D Az.)

- Phillips v. General Motors LLC, et al.
  Case No.: 2014CCV-61957-3 (County Court, Nueces County, Texas)

## Category 1:  Lawsuits that Raise the Punitive Damages Issue Only (Cont'd)

- Pitterman et al. v. General Motors LLC
  Case No.: 3:14-cv-00967 (JCH) (U.S.D.C. D. Conn.)

- Roberts v. General Motors LLC
  Case No.: 4:13-cv-00541-CAS (U.S.D.C. E.D. MO)

- Rone, et al. v. General Motors LLC, et al.
  Case No.: 14C1474-202 (Dist. Ct. Bowie County, Texas)

- Rooney v. General Motors LLC
  Case No.: 15-2247-NP (Circuit Court for Macomb County, MI)

- Schrader v. General Motors LLC, et al.
  Case No.: 15SL-CC01853 (St. Louis Cty. MO)

- Sevilla et al. v. General Motors LLC, et al.
  Case No.: 34-2015-00175939 (Super. Ct. Sacramento Cty., CA)

- Sixkiller v. General Motors LLC, et al.
  Case No.: CJ-15-105 (Dist Ct. Mayes County, Oklahoma)

- Smith, et al., v. General Motors LLC, et al.
  Case No.: CV2015-051753 (Super. Ct. Maricopa Cty., AZ)

- Stevens et al. v. General Motors LLC, et al.
  Case No.: 2015-04442 (Dist. Ct. of Harris County, Texas)

- Tafoya, et al. v. General Motors LLC, et al.
  Case No.: D-412-CV-2012-00055 (4th J.D., San Miguel Cty., NM)

- Tibbetts v. General Motors LLC, et al.
  Case No.: D-202-CV-2015-04918 (Dist. Ct., Bernalillo Cty., NM)

- Vaughan v. General Motors LLC, et al.
  Case No.: S-1500-cv-284626 (Sup. Ct. of California)

- Vieira v. General Motors LLC
  Case No.: C-14-00775 (Sup. Ct. of California)

- Wilson, et al. v. General Motors LLC, et al.
  Case No.: 2014CVC01003 (Court of Common Pleas, Clermont County, Ohio)

- Worthington v. General Motors LLC, et al.
  Case No.: 14-A-3063-3 (Cobb Cty. Super. Ct., GA)

## Category 2:  Lawsuits that Concern Post Sale Accidents and Allege Claims That Should Be Barred and Seek Punitive Damages

- Alden et al. v. General Motors LLC
  Case No.: 1522-CC09842 (Cir. Ct. of St. Louis, MO, Division I)

- Barragan, et al. v. General Motors LLC
  Case No.: P-14-CV-093

- Barthelemy v. General Motors LLC
  Case No.: 1:14-cv-05810 (S.D.N.Y.)

- Blood, at al. v. General Motors LLC[1]
  Case No.: 1:15-cv-06578 (S.D.N.Y.)

- Broderson v. General Motors LLC, et al.
  Case No.: 49Civ11-001627 (2nd J.C., Cir. Ct., Minnehaha Cty., S.D.)

- Carl Hand  v. General Motors LLC
  Case No.: 2014-308 (Smith County Circuit Court, MS)

- Cockram v. General Motors LLC
  Case No.: 1:14-cv-08176 (S.D.N.Y.)

- Cull, et al. v. General Motors LLC, et al.
  Case No.: 10C02-1404-CT060 (Circuit Court, Clark County, Indiana)

- De Los Santos v. General Motors LLC, et al.
  Case No.: 2014CCV-6078802 (County Court, Nueces County, Texas)

- Dean, et al. v. General Motors LLC, et al.
  Case No.: 14-C-1693 (Cir. Ct. Kanawha Cty., WV)

- Dewalt v. General Motors LLC
  Case No.: 5:15-cv-00708-EGS (E.D. Pa.)

- Dunleavy v. General Motors LLC, et al.
  Case No.: 13-011278 (C.P. Allegheny Cty., PA)

---

[1] While the Blood Lawsuit was filed on behalf of numerous plaintiffs who were allegedly involved in accidents that occurred after the closing of the 363-Sale ("**Post-Sale Accident Plaintiffs**"), a few plaintiffs named in the Blood Lawsuit were involved in accidents that occurred prior to the closing of the 363 Sale ("**Pre-Sale Accident Plaintiffs**").  Accordingly, in addition to improperly alleging claims and seeking punitive damages on behalf of Post-Sale Accident Plaintiffs (which should be barred), the Blood Lawsuit also improperly asserts claims on behalf of Pre-Sale Accident Plaintiffs in violation of the Judgment, April 15 Decision and Sale Order and Injunction.

**Category 2:  Lawsuits that Concern Post Sale Accidents and Allege Claims
That Should Be Barred and Seek Punitive Damages (Cont'd)**

- Gilbert v. General Motors LLC
  Case No.: 00140 (Ct of Common Pleas, Philadelphia County)

- Green v. General Motors LLC, et al.
  Case No.: 2015-24496 (Dist. Ct. Harris County, Texas)

- Grey v. General Motors LLC
  Case No.: 5:15-cv-00227-KKC (E.D. KY)

- Grier v. General Motors LLC
  Case No.: CV-2014-385-1 (Cir. Ct. White Cty. AK)

- Grindle v. General Motors LLC, et al.
  Case No.: 15-C-83 (Circuit Court of Randolph County, WV)

- Hafen v. General Motors LLC, et al.
  Case No.: A-14-696746-C (Dept. No. XIX, Dist. Ct. Clark Cty., NV)

- Hague, et al. v. General Motors Company
  Case No.: CGC-11-514543 (Super. Ct., San Francisco Cty., CA)

- Jacobs v. General Motors LLC
  Case No.: 7:14-cv-00257 (E.D. N.C.)

- Jarvis, et al. v. General Motors LLC, et al.
  Case No.: [Pending] (Circuit Court for Macomb County, MI)

- Lowe v. General Motors LLC, et al.
  Case No.: 14-A-523395 (DeKalb Cty., GA)

- Melhorn v. General Motors LLC, et al.
  Case No.: GD-12-000362 (Allegheny County, PA)

- Minx v. GM Motors et al.
  Cause No.: 15-04-77819-C (Dist. Ct. Victoria Cty, TX)

- Nelson et al. v. General Motors LLC, et al.
  Case No.: 2-138-15 (Circuit Ct for Knox County, TN)

- Norville v. General Motors LLC
  Case No.: 1:14-cv-08176 (S.D.N.Y.)

- Pelletier v. General Motors Co., et al.
  Case No.: 2012-CP-10-7438 (Ct. of Common Pleas, Charleston Cty., SC)

## Category 2:  Lawsuits that Concern Post Sale Accidents and Allege Claims
## That Should Be Barred and Seek Punitive Damages (Cont'd)

- Reid v. General Motors LLC
  Case No.: 1:14-cv-05810 (S.D.N.Y.)

- Salazar vs. GM, LLC, et al
  Case No.: BC487984 (Superior Court, Los Angeles Cty., CA)

- Scheuer v. General Motors LLC
  Case No.: 1:14-cv-08176 (S.D.N.Y.)

- Solomon v. General Motors LLC, et al.
  Case No.: 14-C-1694 (Cir. Ct. Kanawha Cty., WV)

- Tarver v. G.M.C. Corp. et al.
  Cause No.: C-1430282 and 2014-65837 (TX MDL)

- Terrell v. General Motors LLC, et al.
  Case No.: 15-CV-877 (Ct. of Common Please, Mahoning Cty., OH)

- Vaughn v. General Motors LLC, et al.
  Case No.: S-1500-CV-284626 (Super. Ct. Kern Cty., CA)

- Williams v. General Motors LLC
  Case No.: 1:15cv249 HSO-JCG (U.S. Dist. Ct., S.D. Miss.)

- Wilson v. General Motors LLC, et al.
  Cause No.: 2014-51871 (Dist. Ct. Harris County, Texas)

- Yingling v. General Motors LLC
  Case No.: 1:14-cv-05336 (S.D.N.Y.)

09-50026-reg    Doc 13390-1    Filed 09/23/15    Entered 09/23/15 17:30:23    Exhibits A
through F    Pg 8 of 16
09-50026-reg    Doc 13390-1    Filed 09/23/15    Entered 09/23/15 16:51:18    Exhibits A
through F    Pg 16 of 58

## Category 3:  Lawsuits that Concern Post Sale Accidents and Allege Claims That Should Be Barred (But Do Not Seek Punitive Damages)

- Benbow v. General Motors LLC, et al.
  Case No.: 14-789 (Superior Court, Massachusetts)

- Gore v. General Motors LLC,  et al.
  Case No.: 623,410 (19th J.D.C., Parsh of Baton Rouge, LA)

- J.Williams v. General Motors LLC, et al.
  Case No.: 14-CI-027 (Magoffin Circuit Court, KY)

- Lowe, et al. v. General Motors LLC, et al.
  Case No.: 3:15-cv-00532 (M.D. LA)

- Ratcliff v. General Motors LLC
  Case No.: 21-C-13-047954 (Circuit Court for Washington Cty, MD)

- Rickard v. General Motors LLC et al.
  Case No.: GD-14-020549 (Ct. of Common Pleas, Allegheny Cty., PA)

- Thacker v. General Motors LLC
  Case No.: 7:15-cv-00015-ART-EBA (E.D. KY)

- Varney et al. v. General Motors LLC
  Case No.: 3:15-cv-10129-MGM

## Category 4:  Lawsuits that Concern Economic Loss Claims That Should Be Barred

- Christenberry v. General Motors LLC
  Case No.: 2014-016 (Blount County Chancery Ct., TN)

- Duba v. General Motors LLC, et al.
  Case No.: 13-C-235 (Logan County Circuit Ct., WV)

- Figley, et al., v. General Motors LLC et al.
  Case No.: 2015-32887 (190th Judicial Dist. Ct. of Harris County, TX)

- Medlin v. General Motors LLC
  Case No.: 15SL-AC20440 (Circuit Ct. of St. Louis Co., MO)

- Roussel v. General Motors LLC, et al.
  Case No.: 2008-16334-E (22nd Jud. Dist. Ct. St. Tammany Parrish, LA)

- Wright v. General Motors LLC, et al.
  Case No.: SU-14-CV-627-68 (Super. Ct. Muscogee Cty., GA)

- Russell v. General Motors LLC
  Case No.: 13-C-62 (Wyoming County Circuit Ct., WV)

# **Exhibit B**

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel:  (212) 556-2100
Fax:  (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial:  212-556-2158
asteinberg@kslaw.com

September 23, 2015

**VIA E-MAIL TRANSMISSION**
**AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

> **Re:**   **In re Motors Liquidation Company**, *et al.*
>         **Case No. 09-50026 (REG)**

Dear Judge Gerber:

Pursuant to page 5 of Your Honor's September 3, 2015 *Scheduling Order* (Dkt. No. 13416), we submit this Letter regarding the claims made in Other Plaintiffs' Complaints against New GM that violate the Sale Order and Judgment, but are not raised by the Bellwether Complaints, the MDL Complaint or the States' Complaints (collectively, the "**Main Cases**").[1]  Because of the large volume of papers already submitted (and to be submitted) to the Court pursuant to the Scheduling Order, for efficiency purposes, New GM is only identifying at this time the specific claims in the Other Plaintiffs' Complaints that violate the Sale Order and Judgment.  New GM believes that submitting marked-up versions of the Other Plaintiffs' Complaints is not necessary for the Court to rule on the issues raised in this Letter.  If the Court decides it would be helpful to have marked-up versions of the Other Plaintiffs' Complaints, we will promptly submit them.

Set forth below are claims in Other Plaintiffs' Complaints that violate the Sale Order and Judgment, with an explanation of New GM's position and references to representative cases where the issue is raised.[2]

---

[1] The issues raised by the Other Plaintiffs' Complaints are found in multiple cases filed against New GM.  Pursuant to the Scheduling Order, New GM was permitted to identify "representative cases" that raise these issues. New GM's arguments are applicable to all such cases, and any rulings by the Court should be binding on all plaintiffs in such cases.

[2] New GM reserves the right to supplement this Letter if it becomes aware of other claims, not in the Main Cases or referenced in this Letter, that violate the Sale Order and Judgment.

***Failure to Recall / Retrofit Vehicles*** (*e.g. Moore v. Ross, et al.*, No. 2011-CP-42-3625, 4th Am. Complaint at p. 3 ¶¶ f, g (S.C. 7th Cir. Ct. Com. Pl.) (**Exh. "A" hereto**)): These claims allege that New GM had a duty to recall or retrofit Old GM vehicles. But such claims, if they exist as a matter of law at all, are Retained Liabilities. Once New GM purchased Old GM's assets free and clear of claims and obligations relating to Old GM vehicles, New GM (an entity that did not manufacture or sell the Old GM vehicles at issue) did not have any ongoing duties to Old GM vehicle owners (other than specific Assumed Liabilities). Although New GM had obligations under the Motor Vehicle Safety Act and to the U.S. Government based on a covenant in the Sale Agreement ("**Recall Covenant**"), this covenant was not an Assumed Liability. Vehicle owners were not third party beneficiaries under the Sale Agreement, and did not have a private right of action relating to any breach of the Recall Covenant. *See New GM's Opening Brief With Respect to the Imputation Issue*, Dkt. No. 13451 at 17-18; *New GM's Letter Brief re Bellwether Complaints*, Dkt. No. 13456, at 3. Thus, claims for failure to recall or retrofit the vehicles violate the Sale Order.

***Negligent Failure to Identify Defects Or Respond To Notice of a Defect*** (*e.g., Benbow v. Medeiros Williams, Inc., et al.*, No. 14 789, Complaint ¶ 16 (Mass. Hampden Cty. Super. Ct.) (**Exh. "B" hereto**)): These claims purport to allege that New GM should have identified the defect earlier and taken some sort of action in response. These are Retained Liabilities for the same reasons as the claims based on an alleged failure to recall or retrofit Old GM vehicles. Such duties with respect to Old GM vehicles remained with Old GM.

***Negligent Infliction of Economic Loss and Increased Risk*** (*e.g., Elliott v. General Motors LLC*, No. 1:14-cv-00691, 1st Am. Complaint ("***Elliott* Complaint**") ¶¶ 79-86 (D.D.C.) (**Exh. "C" hereto**)):[3] This claim alleges that New GM had a duty to warn consumers about the alleged defect but instead concealed it, and by doing so, the economic value of plaintiffs' vehicles was diminished. This claim violates the Sale Order for the reasons set forth in New GM's Bellwether Complaints letter relating to post-vehicle failure-to-warn claims and fraud claims. Dkt. No. 13456 at 2-3; *see also* the forthcoming *New GM Marked MDL Letter*. Such claims are economic loss claims that relate to Old GM conduct at the time the vehicle was sold. They do not "arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents," and are not otherwise Assumed Liabilities.

***Civil Conspiracy*** (*e.g., De Los Santos v. Ortega, et al.*, No. 2014CCV-6078802, 1st Am. Petition ¶¶ 50-51 (Tex. Nueces Cty. Ct.) (**Exh. "D" hereto**)):[4] These claims allege that New GM was involved in a civil conspiracy with others to conceal the alleged ignition switch defect. Such claims are based on representations, omissions, or other alleged acts relating to the supposed concealment rather than, as set forth in the Sale Agreement, being "caused by motor vehicles," "aris[ing] directly out of" personal injury or property damages, and being "caused by accidents or incidents." *See also* Dkt. No. 13451 at 18-19; Dkt. No. 13456, at 2-3. As such, these claims are not Product Liabilities, and thus not Assumed Liabilities under the Sale Agreement.

---

[3] The same claim is asserted in *Sesay et al. v. General Motors LLC*, No. 1:14-md-02543, Complaint ("***Sesay* Complaint**") ¶¶ (69-76).

[4] Claims for "Civil Conspiracy, Joint Action or Aiding and Abetting" are also asserted in the *Elliott* Complaint (¶¶ 114-123), *Sesay* Complaint (¶¶ 85-94), and the complaint filed in *Bledsoe v. General Motors LLC*, No. 1:14-cv-07631 (S.D.N.Y.), ¶¶ 115-121.

Honorable Robert E. Gerber
September 23, 2015
Page 3

     **Section 402B – Misrepresentation by Seller** (*e.g.*, *Rickard v. Walsh Const. Co. et al.*, No. GD-14-020549, Am. Complaint ¶¶ 73aaa-73ccc (Pa. Allegheny Cty Ct. Com. Pleas) (**Exh. "E" hereto**)):[5]   These types of claims are based on alleged representations or omissions, and do not satisfy the definition of Product Liabilities because such claims are not "caused by motor vehicles," but are instead caused by statements or omissions.  They also do not "arise directly out of" personal injuries or property damages and are not "caused by accident or incidents."  Instead, they arise from and are caused by statements, omissions or other Old GM conduct.  Such representation or omission-based claims were not assumed by New GM.

     **Claims Based on Pre-Sale Accidents** (*e.g.*, *Coleman v. General Motors LLC, et al.*, No. 1:15-cv-03961, Complaint (E.D. La.) (**Exh. "F" hereto**)):  The Judgment authorized New GM to send letters to plaintiffs who filed lawsuits asserting claims based on accidents that occurred prior to the 363 Sale, and set forth procedures with respect to such letters and potential responses.  The Scheduling Order superseded certain procedures in the Judgment.  As a result, New GM includes herein a representative example of complaints that assert claims based on pre-363 Sale accidents.  For the reasons set forth in the Sale Agreement, the Decision and the Judgment, New GM is not liable for claims based on accidents that occurred prior to the closing of the 363 Sale.  The Sale Agreement is clear that Retained Liabilities (as defined in Section 2.3(b) of the Sale Agreement) of Old GM specifically include "all Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date[.]"  Sale Agreement, § 2.3(b)(ix); *see also Judgment*, ¶ 7.  Thus, lawsuits filed against New GM that are based on accidents or incidents occurring prior to the closing of the 363 Sale should be dismissed as provided by the Judgment.

                             Respectfully submitted,

                             */s/ Arthur Steinberg*

                             Arthur Steinberg

AJS/sd

cc:    Edward S. Weisfelner
       Howard Steel
       Sander L. Esserman
       Jonathan L. Flaxer
       S. Preston Ricardo
       Matthew J. Williams
       Lisa H. Rubin
       Keith Martorana
       Daniel Golden

---

[5] Plaintiff filed with this Court a *No Dismissal Pleading Of Carolyn Rickard, Administratrix Of The Estate Of William J. Rickard, Deceased*, dated September 4, 2015 [Dkt. No. 13423].  This letter, and New GM's other letters and pleadings filed pursuant to the Scheduling Order should be deemed its response to the *Rickard* No Dismissal Pleading.

09-50026-mg   Doc 13648-1   Filed 06/23/16   Entered 06/23/16 17:30:23   Exhibits A
Pg 4 of 4

Honorable Robert E. Gerber
September 23, 2015
Page 4

    Deborah J. Newman

    Jamison Diehl

    William Weintraub

    Steve W. Berman

    Elizabeth J. Cabraser

    Robert C. Hilliard

    Gary Peller

# **Exhibit C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 09-50026-reg |
|  | . | Chapter 11 |
|  | . |  |
| MOTORS LIQUIDATION COMPANY, | . | (Jointly administered) |
| et al., f/k/a GENERAL | . |  |
| MOTORS CORP., et al, | . | One Bowling Green |
|  | . | New York, NY 10004 |
| Debtors. | . |  |
|  | . | Monday, August 31, 2015 |
| . . . . . . . . . . . . . . . . . . | . | 9:48 a.m. |

TRANSCRIPT OF NOTICE OF HEARING/NOTICE OF STATUS CONFERENCE TO
BE HELD IN CONNECTION WITH THE COURT'S CASE MANAGEMENT ORDER,
DATED AUGUST 19, 2015 [Dkt. No. 13383], AND THE LETTERS FILED
IN RESPONSE THERETO (RELATED DOCUMENT(S) 13383) [13396]
**BEFORE THE HONORABLE ROBERT E. GERBER**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtor:            King & Spalding LLP
                           By:  ARTHUR STEINBERG, ESQ.
                                SCOTT DAVIDSON, ESQ.
                           1185 Avenue of the Americas
                           New York, New York 10036-4003
                           (212) 556-2158

For General Motors on
behalf of participating
unit holders:              Akin Gump Strauss Hauer & Feld LLP
                           By:  NAOMI MOSS, ESQ.
                           One Bryant Park
                           New York, NY 10036-6745
                           (212) 872-1000

APPEARANCES CONTINUED.

Audio Operator:            Frances Ferguson, ECR

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

APPEARANCES (Continued):

For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs:                    Brown Rudnick LLP
                              By:   EDWARD S. WEISFELNER, ESQ.
                                    HOWARD S. STEEL, ESQ.
                              7 Times Square
                              New York, New York 10036
                              (212) 209-4917

For the GUC Trust
Administrator:                Gibson, Dunn & Crutcher LLP
                              By:   LISA RUBIN, ESQ.
                                    MATTHEW J. WILLIAMS, ESQ.
                              200 Park Avenue
                              New York, New York 10166-0193
                              (212) 351-4000

For Sesay, Bledsoe
and Elliott:                  GARY PELLER, ESQ.
                              600 New Jersey Ave., NW
                              Washington, DC 20001
                              (202) 662-9122

For Personal Injury
Accident Plaintiffs:          Goodwin Procter LLP
                              By:   WILLIAM P. WEINTRAUB, ESQ.
                              The New York Times Building
                              620 Eighth Avenue
                              New York, NY 10018-1405
                              (212) 813-8839

For Interested Party
Watershed Asset
Management:                   Watershed Asset Management, LLC
                              By:   MICHELE F. KYROUZ
                              1 Maritime Plaza, #1525
                              San Francisco, CA  94111
                              (415) 391-8900

For Interested Party
Amer Tiwana:                  CRT Capital Group, LLC
                              By:   AMER TIWANA
                              262 Harbor Drive, #101
                              Stamford, CT  06902
                              (203) 569-6400

TELEPHONIC APPEARANCES:

For the Ignition Switch
Plaintiffs:                    Hagens Berman Sobol Shapiro LLP
                               By:  STEVE W. BERMAN, ESQ.
                               1918 Eighth Avenue, Suite 3300
                               Seattle, WA 98101
                               (206) 623-7292

                               Lieff, Cabraser, Heimann & Bernstein
                               By:  ELIZABETH J. CABRASER, ESQ.
                               275 Battery Street, 29th Floor
                               San Francisco, CA 94111-3339
                               (415) 956-1000

For Participating
Unit Holders:                  Akin Gump Strauss Hauer & Feld LLP
                               By:  NAOMI MOSS, ESQ.
                                    DANIEL H. GOLDEN, ESQ.
                               One Bryant Park
                               New York, NY 10036-6745
                               (212) 827-8010

For the Debtor:                Hanson Bolkcom Law Group, LTD.
                               By:  MARY E. BOLKCOM, ESQ.
                               527 Marquette Avenue, Suite 2300
                               Minneapolis, MN  55402
                               (612) 342-2880

For The Bavlsik
Plaintiffs:                    The Simon Law Firm, P.C.
                               By:  KEVIN M. CARNIE, ESQ.
                               800 Market Street, Suite 1700
                               St. Louis, MO  63101
                               (314) 241-2029

For Designated Counsel:        Stutzman, Bromberg, Esserman & Plifka
                               By:  BRIANA L. CIONI, ESQ.
                                    DAVID J. PARSONS, ESQ.
                               2323 Bryan Street, Suite 2200
                               Dallas, TX  75201
                               (214) 969-4986

For Interested Party
Reorg Research, Inc.:          Reorg Research, Inc.
                               By:  KENT COLLIER
                               1140 Broadway
                               New York, NY  10001
                               (212) 257-4383

4

TELEPHONIC APPEARANCES:   (Continued)

For Doris Phillips:        Josh Davis Law Firm
                          By:  JOSHUA P. DAVIS, ESQ.
                          101 Lamar, Suite 200
                          Houston, TX  77002
                          (713) 337-4100

For Law Debenture
Trust Company of
New York:                 Kelley Drye & Warren LLP
                          By:  BENJAMIN D. FEDER, ESQ.
                          101 Park Avenue
                          New York, NY  10178
                          (212) 808-7974

For MDL Plaintiffs:       Hilliard Munoz & Gonzales LLP
                          By:  ROBERT C. HILLIARD, ESQ.
                          719 Shoreline Blvd., #500
                          Corpus Christi, TX  78401
                          (361) 882-1612

5

1      (Proceedings commence at 9:48 a.m.)

2      THE COURT:  I think I know all of you.  There's no

3 need for you to make appearances in advance, but when you come

4 up to the mike, the main lectern to speak, please identify

5 yourselves for the record.

6      I've read all of your letters and the attachments to

7 the extent that I haven't read them previously.  I have

8 problems with both sides' positions, especially vis-a-vis

9 proposals on timing, but also vis-a-vis matters of substance.

10 It seems to me that neither side acknowledges -- and I'm

11 pushing the GUC Trust and the indentured trustee off to the

12 side for the time being.  It seems to me that neither side

13 acknowledges that it is subject to the jurisdiction and rulings

14 of two separate judges and that anything Jesse Furman says

15 counts, as far as I'm concerned, and I would have thought that

16 anything that I say counts insofar as proceedings in the

17 district court is concerned.  And what I need from each of you

18 is realistic proposals in terms of prioritization of matters so

19 that I can get Jesse Furman the rulings he needs so that the

20 bellwether trial or trials are not delayed.

21      It seems to me, subject to your rights to be heard,

22 that by far the most important of the matters that we need to

23 address are the matter of punitives.  And I will also decide

24 preliminarily, to the extent that it's necessary, the matter of

25 imputation, but I thought I had already made my views on

ACCESS TRANSCRIPTS, LLC     1-855-USE-ACCESS (873-2223)

09-50026-mg    Doc 13648-1    Filed 06/23/16    Entered 06/23/16 17:30:23    Exhibits A
through E    Pg 29 of 58
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 26 of 122

26

1  mootness finding, which, subject to appeal, basically tells all

2  of us that we will not be able to go back and claw back, for

3  lack of a better term, against the existing GUC Trust

4  beneficiaries.  So what the complaints say is, your failure to

5  give us the information that was in your exclusive possession,

6  causing us not to file proofs of claim, damaged us to the

7  extent that we were not lined up with every other plaintiff as

8  part of -- or every other claimant as part of the proof of

9  claim universe, that we were denied the opportunity to

10  participate from dollar one in the GUC Trust.

11          Now, that's a claim that Your Honor is, I guess,

12  being asked to determine, and we think it's a failure

13  straightforward question.  Is that a claim against Old GM or is

14  it a claim against New GM?  We assert that it's a claim against

15  New GM.  We're saying that New GM's failure -- from the time it

16  became New GM up through and including the bar date is the

17  focus of our attention -- is a claim solely against New GM.

18  The beginning and the end of the allegations is New GM knew on

19  the date it came into existence that there was an ignition

20  switch defect, what its potential was, that it needed to be

21  recalled as a matter of federal law, that it failed to do so

22  and it failed to do so purposefully, thus preventing the

23  plaintiffs from filing proofs of claim.  And a court can

24  determine whether or not that's a cognizable claim, and if it

25  is, what the element of damages ought to be.

27

1            THE COURT:  Now, pause again.  When you said the

2   court in that last context, you were talking about Judge Furman

3   after I have done my gatekeeping.

4            MR. WEISFELNER:  Correct.  Or in the case of the

5   state claims, the relevant courts that those state claims are

6   currently pending in.

7            THE COURT:  And how would a state have standing to

8   assert a claim of that character?

9            MR. WEISFELNER:  Well, again, to the extent that --

10  and I guess I've misspoke.  To my knowledge, neither the State

11  of California nor the State of Arizona had that allegation

12  within their complaint.  It's only a second amended

13  consolidated complaint.

14           THE COURT:  Okay.  But you're talking about in your

15  constituency, your vehicle owners, and their contention is that

16  if the recall had taken place in the gap period between the

17  sale and the bar date, your guys could have filed claims and

18  then they would have gotten the 25 or 30 cents, whatever

19  unsecureds got in the case.

20           MR. WEISFELNER:  Precisely.  That's exactly right.

21           THE COURT:  All right.

22           MR. WEISFELNER:  And again, Your Honor, to the extent

23  that New GM contends that somehow that claim isn't an

24  independent claim, is instead a disguised successor liability

25  claim, to the extent Your Honor needs briefing on that topic, I

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

1  guess we'll brief it.  We'll comply with whatever Your Honor's

2  desires are in that regard.  But it seems to me, again, a

3  gating issue is what part of the second amended consolidated

4  complaint, including this particular cause of action, do you

5  believe fails to satisfy independent claim status and why.

6        Next issue in Mr. Steinberg's letter was the

7  contention that state law consumer protection statutes related

8  to Old GM vehicles and parts are somehow improper.  And Your

9  Honor, it's our contention that, again, as a gatekeeper, if you

10 determine that the claims, based on state law consumer

11 protection statutes or otherwise, relate to New GM and what New

12 GM did or failed to do as opposed to what Old GM did or failed

13 to do, that depending on the particular state consumer

14 protection statutes, they either give rise to a claim or cause

15 of action to be determined by the trial court or they don't.

16 And the role of the gatekeeper, Your Honor, is to determine

17 whether or not those particular allegations relying on state

18 consumer protection laws do or do not constitute independent

19 claims versus disguised successor liability claims.

20        Likewise, the next issue, failure to warn and duty to

21 recall an Old GM vehicle.  It is New GM's position, which we

22 believe is a blatant attempt to re-litigate what Your Honor has

23 already decided, but it's New GM's apparent position now that

24 an allegation against New GM sounding in the nature of a

25 failure to warn or a breached duty to recall, if it involves an

37

1  itself because we believe that New GM, in fact, engaged in bad

2  faith.  It's one of the issues we will pursue on appeal.  It's

3  one of the reasons why we think the bar against successor

4  liability ought not be enforced.

5      But putting aside good faith or bad faith, the

6  question is if you have a purchaser in a 363 sale, may the

7  bankruptcy court that approves that sale and gives the buyer

8  free and clear protections, including successor liability,

9  nevertheless afford the buyer prospective protection for its

10  own independent tortious conduct?  And we think that the clear

11  answer to that proposition is no.

12      So again, if a non-ignition switch defect claimant,

13  whether would start an independent claim against New GM, would

14  that non-ignition switch plaintiff be successful, vis-a-vis

15  Your Honor as a gatekeeper.  New GM's contention is that, aha,

16  wait a second, the non-ignition switch plaintiff cannot assert

17  an independent claim against New GM unless and until that

18  non-ignition switch plaintiff demonstrates that back in '09,

19  its due process rights were violated.  Because Your Honor only

20  determined that independent claims were permissible having

21  first determined that the ignition switch plaintiffs' due

22  process rights were violated with prejudice because they didn't

23  have an opportunity to argue over breadth of the injunction.

24      So that's the last issue I can think of where we have

25  a marked disagreement between Mr. Steinberg and I.  It's my

09-50026-mg    Doc 13648-1    Filed 06/23/16    Entered 06/23/16 17:30:23    Exhibits A
through E    Pg 33 of 58
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 38 of 122

38

1  belief that Your Honor's determination that the law in the

2  Second Circuit, that the law across this country is uniform,

3  and that is that a buyer in a 363 sale, putting aside whether

4  or not it's acting in good faith, does not obtain a

5  get-out-of-jail-free card for its own post-sale tortious

6  conduct, bad actions, fraudulent concealment.

7           THE COURT:  I understand the issue.  Pause.  If you

8  said this before in baby talk, I don't remember it.  Are you

9  now going to be kind of a designated counsel for non-ignition

10 switch plaintiffs, as well --

11          MR. WEISFELNER:  Your Honor --

12          THE COURT:  -- or did they have separate counsel?

13          MR. WEISFELNER:  They do not have separate counsel,

14 and to the extent that their rights need to be preserved, since

15 co-lead counsel in the MDL does have actions pending on their

16 behalf, subject, of course, to subsequent certification of

17 classes and that sort of thing, yes, we perceive ourselves as

18 having taken on the mantel of preserving and protecting the

19 rights of non-ignition switch plaintiffs in this court.

20          THE COURT:  So I don't have to worry about them not

21 having been heard if I listen to you.

22          MR. WEISFELNER:  I think that's a correct conclusion,

23 especially in light of Your Honor's procedures in the judgment

24 itself.

25          THE COURT:  Okay.  Continue or were you done now?

09-50026-mg    Doc 13648-1    Filed 06/23/16    Entered 06/23/16 17:30:23    Exhibits A
through E    Pg 34 of 58
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 39 of 122

39

1           MR. WEISFELNER:  Your Honor, subject to whatever

2   questions or concerns you have, I'd be done.  I just want to

3   make sure that neither of my overseers, Mr. Berman or Ms.

4   Cabraser, have any further comments that they'd like to make.

5           THE COURT:  Is Mr. Berman on the phone?

6           MR. WEISFELNER:  I believe so.

7           MR. BERMAN:  (Telephonically)  Yes, Your Honor.  I'm

8   on the phone.  I think that he did a great job covering our

9   interests here.

10          THE COURT:  I'm sorry, you're not very audible.  Can

11  you say it slower and louder, please?

12          MR. BERMAN:  I think that he's covered everything

13  well and I have nothing to add.

14          THE COURT:  Okay.  Mr. Stein --

15          MS. CABRASER:  (Telephonically)  Your Honor,

16  Elizabeth Cabraser.

17          THE COURT:  Wait, I'm sorry.  Before you come up,

18  Mr. Steinberg, I thought I heard something on the phone after

19  Mr. Berman said he had nothing to add.

20          MS. CABRASER:  Your Honor, Elizabeth Cabraser,

21  co-lead for the economic loss plaintiffs.  You heard me.  I

22  apologize for not speaking more slowly.  I'm simply concurring,

23  as is Mr. Berman, subject to Your Honor's (indiscernible).  I

24  have nothing to add at this point.

25          THE COURT:  Okay.  I asked my questions as we went

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

79

1          And courts of competent jurisdiction are amply able

2    to ultimately determine whether or not imputation, under the

3    law of whatever jurisdiction will govern -- I presume there may

4    be some differences on imputation.  It's not necessarily

5    federal common law, I don't know, but it's not something that I

6    think the Bankruptcy Court rightfully ought to be focused on,

7    and I don't think it's what Judge Furman had in mind in terms

8    of triaging issues.

9          Now, the other thing that Mr. Steinberg then slipped

10   in when he talked about what he wants to triage, he talked

11   about punitives because you can't get away from what Judge

12   Furman said about that.  He talked about imputation, and I

13   think, quite frankly, he's banging his head against the wall,

14   but he wants to see what happens.  Maybe Your Honor will bite

15   on it.

16         The third thing he talked about is other causes of

17   action proscribed by the sale order and original injunction and

18   causes of action that are still proscribed based on Your

19   Honor's sale order and injunction.  Well, that's a whole

20   another reargument again.  I went through carefully a list of

21   the issues in his letter, and I think I made it clear that in

22   terms of the way we should be going forward by way of a

23   schedule and what we ought to be triaging, and in an effort to

24   make our next meet and confer reasonable, Judge, we need some

25   direction beyond the triage that Judge Furman says he needs --

09-50026-mg   Doc 13648-1   Filed 06/23/16   Entered 06/23/16 17:30:23   Exhibits A
through E   Pg 36 of 58
09-50026-mg   Doc 13438   Filed 09/15/15   Entered 09/15/15 09:59:48   Main Document
Pg 80 of 122

80

1          THE COURT:  Well, I can give you a little more

2    direction that may help your meet and confer, and it ties into

3    one of the very few -- well, perhaps very few is an

4    overstatement -- what I consider to be one of the closer

5    questions that you guys were arguing about, which is that when

6    people have not shown a due process violation yet, that being

7    the subset of your larger constituency with non-ignition switch

8    issues, where they have not shown that 24 people or even one

9    person at New GM had enough knowledge to make them knowing

10   plaintiffs -- or knowing claimants, excuse me -- whether they

11   should get benefits that the remainder of your constituency won

12   in the last go-around.  And Mr. Steinberg's position, as I

13   understand it, is that even if it is so, that if I were ruling

14   on a clean slate with the ability to be heard back in 2009,

15   that what I ultimately ruled with respect to environmental

16   claimants and narrow view of economic loss claimants, vis-à-vis

17   ignition switches, whether they should or should not be

18   beneficiaries of that ruling, then they haven't established a

19   due process violation.  That was the context in which I said

20   what I was saying.

21          Now, hopefully that's not too cryptic, but the

22   non-ignition switch plaintiffs' inability or inaction to have

23   yet established a due process violation to give them the

24   benefits that the remainder of your constituency got is, in my

25   view, a big issue.

09-50026-mg   Doc 13648-1   Filed 06/23/16   Entered 06/23/16 17:30:23   Exhibits A
through E   Pg 37 of 58
09-50026-mg   Doc 13438   Filed 09/15/15   Entered 09/15/15 09:59:48   Main Document
Pg 81 of 122

81

1          MR. WEISFELNER:  Okay.  I mean, again, just as a

2   matter of fact, discovery with regard to the non-ignition

3   switch defects that are at issue are ongoing.  And while --

4          THE COURT:  I understood that, and it certainly was

5   ongoing back on April 15th --

6          MR. WEISFELNER:  Right.

7          THE COURT:  -- which is why the opinion didn't cover

8   them.

9          MR. WEISFELNER:  Right.  But, Your Honor, look, it

10  still seems to me that, you know, one could argue that whether

11  or not you're the beneficiary of a due process violation

12  because you were a known creditor, nevertheless, Your Honor's

13  sale order could not as a matter of constitutional law, Second

14  Circuit law, have provided New GM with a get out of jail free

15  card with regard to its post-sale independent acts and conduct.

16  I just don't think that the --

17         THE COURT:  I understand that's the argument you're

18  going to make.  You had telegraphed that before.  My guess is

19  that Mr. Steinberg is going to have a different view, and

20  that's why I called it an issue rather than something that I've

21  decided.

22         MR. WEISFELNER:  Okay.  To the extent that that

23  remains an issue, then in terms of triaging things, it seems to

24  me that we need to get that issue teed up quickly because to

25  the extent that people, either New GM or us, depending on who

09-50026-mg    Doc 13648-1    Filed 06/23/16    Entered 06/23/16 17:30:23    Exhibits A
through E    Pg 38 of 58
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 82 of 122

82

1  loses, needs to appeal that decision, they ought to get

2  started.  But again, in terms of triaging the remaining issue,

3  what frustrates us on the plaintiffs' side is every opportunity

4  that New GM can take, it does take in an effort to try and

5  reinterpret, redefine, cut down on, narrow the scope of the

6  definition of independent claims.

7        And they're not all, as Mr. Steinberg indicated,

8  briefed in the no strike/no stay pleading because we didn't see

9  any of these issues emanating from New GM, frankly, until after

10 Judge Furman denied the motions to withdraw the reference.  And

11 I think that emboldened New GM to try and take another bite at

12 the apple.

13        And, Your Honor, I think maybe the right thing to do

14 is, with your guidance, send us back to the drawing board.  We

15 will try desperately hard again to come up with an appropriate

16 scheduling order with the right issues.  But again, to the

17 extent that New GM insists on having Your Honor act as a

18 gatekeeper on issues that we believe are more properly resolved

19 in the context of trial because we don't think it impacts Your

20 Honor's role as a gatekeeper -- we think the gatekeeper role is

21 tell us if this is an independent claim or not an independent

22 claim.  And Mr. Steinberg can tell you there are 60 pages of

23 allegations with regard to Old GM, and our point is you can

24 have 600 pages of allegations with regard to Old GM.  Focus on

25 the claim and cause of action.  Focus on what it is that you

1   want recovery for.  Focus in on what it is you're asking the

2   jury to decide based on instructions from the judge.

3          And you will see that the liability we assert is New

4   GM's liability, that the allegations regarding Old GM are of

5   necessity background information.  You don't start a story, if

6   you will, about New GM -- I'm sorry, GM manufacturing cars with

7   known defective components beginning in '03 and '04, going

8   through all sorts of evaluations, tests, and accumulation of

9   information that the ignition switch defect, in fact, presented

10  a known safety defect that was killing people throughout the

11  country, that it chooses not to bring to the attention of the

12  Court during its bankruptcy proceeding, that New GM remains

13  completely well aware of from the date it's born and maintains

14  that cone of silence throughout the period from 2009 through

15  2014.

16         And I'm here today to assess liability -- I'm talking

17  to a prospective jury -- against New GM because Old GM's gone

18  and Old GM isn't here and Old GM can't pay for this, and New GM

19  shouldn't be made to pay for something that was an Old GM bad

20  act or bad conduct.  Now, I'm going to argue to the jury the

21  facts.  I don't want to start the case by saying as of some

22  date in 2009, New GM was born.

23         THE COURT:  I know that you don't want to start your

24  case that way, but you are going to start the case within the

25  constraints of what the law requires.

09-50026-mg    Doc 13648-1    Filed 06/23/16    Entered 06/23/16 17:30:23    Exhibits A
                                        through E    Pg 40 of 58
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
                                        Pg 117 of 122

117

1          THE COURT:  And I told that to Mr. Peller, and it
2  would apply to the other guys, too.  Just see if you can talk
3  to them to see if they can minimize the duplication.
4          MR. WEINTRAUB:  I will, Your Honor.
5          THE COURT:  But I cannot and will not deny anybody
6  the right to file a brief.
7          MR. WEINTRAUB:  No, I understand, Your Honor.  I just
8  don't want to be constrained in a three-page letter if I'm
9  sharing it with 87 people.
10          THE COURT:  Oh, you're concerned about security of
11  circulating your draft or something?
12          MR. WEINTRAUB:  No, constrained in terms of space.
13  If I'm sharing three pages --
14          THE COURT:  I don't expect you to make 87 guys -- I
15  assume you're mainly going to be talking concepts with some
16  discussion of how it applies to your six guys.
17          MR. WEINTRAUB:  That's right, Your Honor, but I'd be
18  -- I presume I'd be responding specifically to what was marked
19  in the six specific pleadings.
20          THE COURT:  You don't have a duty to anybody other
21  than your own constituency.
22          MR. WEINTRAUB:  That's right, Your Honor.
23          THE COURT:  I understand that.  Okay.
24          Mr. Steinberg?
25          MR. STEINBERG:  Your Honor, I think that perhaps the

118

 1  most efficient way is to deal with it as we dealt with it in

 2  the GUC Trust asset pleading.  I would ask that we try to

 3  capture that in a proposed order which would be the scheduling

 4  order because I -- these people have gotten demand letters.  So

 5  I'd like to be able to write them a note saying that you don't

 6  have to respond in 17 business days, these issues are teed up

 7  in the context of the bellwether cases and will be presented

 8  there.

 9          This is the briefing schedule and if you believe that

10  you're entitled to or would like to, you know, file a brief,

11  you should indicate so to the Court or something to that so

12  then Your Honor could then decide, but --

13          THE COURT:  What you said sounds sensible, and I'm

14  not sure if the people in the room would disagree with you.

15  What about due process for the people who aren't in the room in

16  terms of me endorsing your idea?

17          MR. STEINBERG:  I think, Your Honor, I will settle

18  the order on those people.  The goal is to draft an order today

19  which would be acceptable to the people in the room.  And I

20  guess, Your Honor, we can then ask Your Honor to sign it, and

21  if anybody has an issue with regard to that, we can give them a

22  short window to object to it as it pertains to them.  And then

23  Your Honor could see how many of them emerge from that process,

24  but they will have then had the due process to have a further

25  argument because they were not in the room right now.

09-50026-mg   Doc 13648-1   Filed 06/23/16   Entered 06/23/16 17:30:23   Exhibits A
through E   Pg 42 of 58
09-50026-mg   Doc 13438   Filed 09/15/15   Entered 09/15/15 09:59:48   Main Document
Pg 119 of 122

119

1           THE COURT:  Anybody in this room object to that idea?

2   Okay.  That seems to make sense.  Did I not give you enough

3   time to respond?

4           MR. WEINTRAUB:  I'm sorry, Your Honor.  I didn't hear

5   the question.  I was asking --

6           THE COURT:  Mr. Steinberg was talking about working

7   out something consensual with the people in this room and then

8   settling it on the much larger universe.  And then giving them

9   also a couple of days to file something in case they don't like

10  what the procedures order says.

11          MR. WEINTRAUB:  I think that's fine, Your Honor.  I

12  thought we did work out that anyone who wanted to file their

13  own brief could.  And with respect to the marked pleadings and

14  the bellwethers, I don't have to share three pages with anybody

15  else.

16          THE COURT:  I think I did say that, but I didn't see

17  those as inconsistent.

18          MR. WEINTRAUB:  No, I don't --

19          THE COURT:  Don't be diplomatic.  If you think I am

20  inconsistent, tell me that.

21          MR. WEINTRAUB:  No.  I said I thought we agreed to

22  that.  I'm not sure what else I'm supposed to agree with --

23          MR. STEINBERG:  Well, let me see --

24          THE COURT:  Well, I think the main problem is

25  Mr. Steinberg thinks that if he puts in -- or I'm guessing you

# **Exhibit D**

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel:  (212) 556-2100
Fax:  (212) 556-2222
www.kslaw.com
Arthur Steinberg
Direct Dial:  212-556-2158
asteinberg@kslaw.com

October 30, 2015

**VIA E-MAIL TRANSMISSION AND ECF FILING**

The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

> Re:   In re Motors Liquidation Company, *et al.*
>       **Case No. 09-50026 (REG)**
>       **Explanatory Letter With Respect to Peller Clients Complaints**

Dear Judge Gerber:

Pursuant to Your Honor's October 19, 2015 Endorsed Order [Dkt. No. 13506], General Motors LLC ("**New GM**") submits this letter setting forth its position with respect to the Marked Peller Client Complaints (as defined in the Endorsed Order), attached hereto as Exhibits "A" through "C."[1]  Initially, New GM notes that the *Elliott*, *Sesay* and *Bledsoe* lawsuits are currently stayed in MDL 2543, and the Peller Client Complaints raise substantially similar issues as those addressed by New GM in the Marked MDL Complaint and its accompanying explanatory letter. In this regard, just like the MDL Complaint, the Peller Client Complaints include parties, factual allegations and claims that violate this Court's Judgment, Decision, and Sale Order,[2] and are highlighted with different colors as follows:   (1) blue, for named plaintiffs and plaintiff classes/subclasses asserting claims based on Old GM vehicles; (2) green, for allegations based on Old GM conduct that support claims for Retained Liabilities; (3) yellow, for allegations seeking to impute wholesale Old GM's knowledge to New GM, and (4) pink, for allegations related to punitive damages, which were not assumed by New GM.

---

[1] New GM incorporates by reference (i) its Opening and Reply Briefs regarding the Punitive Damages Issue, dated September 13, 2015 and September 22, 2015, respectively [Dkt. Nos. 13437 and 13460]; (ii) its Opening and Reply Briefs regarding the Imputation Issue, dated September 18, 2015 and September 30, 2015, respectively [Dkt. No. 13451 and 13482]; and (iii) its explanatory letters regarding other marked complaints (*see* Dkt. Nos. 13456, 13466, 13469 and 13470).

[2] Judgment, entered on June 1, 2015 ("**Judgment**"); *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015) ("**Decision**"); and Order, dated July 5, 2009 ("**Sale Order**").

Honorable Robert E. Gerber
October 30, 2015
Page 2

        If the Court agrees with New GM's arguments, all Old GM vehicle plaintiffs and all Old
GM conduct allegations and corresponding causes of action will be stricken.[3]  *Every* cause of
action in the Peller Client Complaints asserted by Old GM vehicle plaintiffs and/or arising from
Old GM conduct—including but not limited to (a) violations of RICO, (b) fraud, (c) negligent
infliction of economic loss and increased risk under common law, (d) violations of consumer
protection statutes, (e) breach of implied warranty of merchantability, and (f) civil conspiracy
and joint action or aiding and abetting—are Retained Liabilities and should be stricken.
Therefore, assuming New GM's arguments prevail, the Peller Client Complaints will be properly
narrowed to address only New GM vehicle plaintiffs, New GM conduct allegations, and
corresponding causes of action.

        ***Blue Coded Allegations:***  The Peller Client Complaints identify named plaintiffs and
proposed classes of plaintiffs who purchased vehicles manufactured and sold by Old GM before
the 363 Sale.[4]  Although plaintiffs assert that the Peller Client Complaints do not include
successor liability claims, that is not the case.  The Judgment held that "all claims and/or causes
of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM
vehicle or part seeking to impose liability or damages based in whole or in part on Old GM
conduct (including, without limitation, on any successor liability theory of recovery) are barred
and enjoined pursuant to the Sale Order."  Judgment, ¶ 9; *see also In re Motors Liquidation Co*,
534 B.R. 542, 553 (Bankr. S.D.N.Y. 2015) (stating, in connection with the *Bledsoe* Plaintiffs'
motion to amend the Judgment, "[i]f it is to argue that successor liability claims can still be
asserted, notwithstanding the Court's extensive analysis and conclusions to the contrary, that is
not a matter the Court overlooked; it is a matter for appeal." (footnote omitted)).

        Further, certain of the Peller Client Complaints identify named plaintiffs and portions of
proposed classes who purchased used Old GM vehicles after the closing of the 363 Sale from
third parties with no connection to New GM.  The inclusion of such plaintiffs' claims violates
the Decision, which held that "if the Sale Order and Injunction would have applied to the
original owner who purchased the vehicle prior to the 363 Sale, it equally applies to the current
owner who purchased the vehicle after the 363 Sale."  Decision, 529 B.R. at 572.  The claims of
plaintiffs who purchased Old GM vehicles from Old GM or from a third party unrelated to New
GM—whether before or after the closing of the 363 Sale—should be stricken.

        This is particularly true with regard to Non-Ignition Switch Plaintiffs in the Peller Client
Complaints.  The Court held that with respect to Non-Ignition Switch Plaintiffs, the Sale Order
prohibits all claims against New GM that are not Assumed Liabilities.  In other words, the Sale
Order was modified to allow only Ignition Switch Plaintiffs (not Non-Ignition Switch Plaintiffs)

---

[3] The *Bledsoe* complaint appears to assert, among others, product liability claims resulting from accidents that took
place before and after the closing of the sale from Old GM to New GM.  New GM assumed "Product Liabilities" (as
defined in the Sale Agreement) for post-363 Sale accidents.  As such, to the extent the *Bledsoe* complaint asserts
assumed Product Liabilities, those claims would not be barred by the Sale Order.  Note, however, that New GM
disputes any and all liability for such claims.

[4] New GM did not mark every reference to "Plaintiffs", "Class members", "Class members' vehicle" and the like
because it would have made the marked complaints overly cumbersome to review.  Nonetheless, because such terms
include Old GM vehicle owners and Old GM vehicles, such terms should be deemed to be marked.

Honorable Robert E. Gerber
October 30, 2015
Page 3

to assert Independent Claims that would otherwise be barred by the Sale Order.[5]  In the absence of any exclusion for Independent Claims, there is no theory pursuant to which the Non-Ignition Switch Plaintiffs can pursue any claim premised on any Old GM vehicle.

*Green Coded Allegations:* The Peller Client Complaints identify numerous paragraphs containing improper allegations of Old GM conduct that are the basis for their Retained Liabilities claims.[6]  The Court unequivocally ruled that "[c]laims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand." Decision, 529 B.R. at 528; *see also* Judgment, ¶ 9.[7]  Furthermore, the Peller Client Complaints identify allegations containing improper references to GM—for example, "GM," "GM vehicles" and "Class Vehicles."  Plaintiffs' merging of Old GM and New GM in their defined terms was purposeful and violated the Court's prior rulings.  *See In re Motors Liquidation Co.*, 514 B.R. 377, 382 n.24 (Bankr. S.D.N.Y. 2014).  Ambiguous references to "GM" in the Peller Client Complaints should be modified to specify the proper entity.[8]

*Yellow Coded Allegations:*  The Peller Client Complaints seek to automatically impute Old GM's knowledge to New GM.  For the reasons described in New GM's Opening and Reply Briefs on the Imputation Issue, plaintiffs' attempt to impute to New GM, on a wholesale basis, knowledge of events that took place at Old GM, or information contained in Old GM's books and records, violates the Sale Order.

*Pink Coded Allegations:* The Peller Client Complaints seek punitive damages from New GM.  For the reasons described in New GM's Opening and Reply Briefs on the Punitive Damages Issue, all requests for punitive damages based on Old GM conduct violate the Sale Order, and cannot be maintained against New GM.

---

[5] *See In re Motors Liquidation Co.*, 531 B.R. 354, 360 (Bank. S.D.N.Y. 2015) ("The Non–Ignition Switch Plaintiffs' claims remain stayed, and properly so; those Plaintiffs have not shown yet, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of a due process violation with respect to them. ***And unless and until they do so, the provisions of the Sale Order, including its injunctive provisions, remain in effect.***") (emphasis added)).

[6] This Court has already found that the *Elliott* and *Sesay* complaints impermissibly contain allegations of Old GM conduct.  *See In re Motors Liquidation Co.*, 514 B.R. 377, 383 (Bankr. S.D.N.Y. 2015) ("And while the Elliott Plaintiffs' brief disclaims reliance on Old GM acts, their complaint doesn't bear that out."); *In re Motors Liquidation Co.*, 522 B.R. 13, 19 (Bankr. S.D.N.Y. 2015) ("The Sesay Plaintiffs' allegations concerned model years ranging from 2003 to 2011—addressing, significantly, both Old GM and New GM vehicles, and bringing their claims within the express coverage of the Sale Order.").

[7] *See also In re Motors Liquidation Co.*, 533 B.R. 46, 51 n. 10 (Bankr. S.D.N.Y. 2015) ("Presumably her counsel envisioned a theory based on a species of successor liability or other theory under which New GM would be responsible for Old GM's acts.  But theories of this character cannot be asserted under the Court's recent opinions . . . .").

[8] The Peller Client Complaints' class definitions, and concomitant causes of action, include both plaintiffs who purchased Old GM vehicles from Old GM (or an unrelated third party), and those that purchased New GM vehicles from New GM.  New GM did not mark entire causes of action that might relate to both Old GM vehicle owner plaintiffs and New GM vehicle owner plaintiffs.  If it had, almost every cause of action would have been marked.

Honorable Robert E. Gerber
October 30, 2015
Page 4

Respectfully submitted,

*/s/ Arthur Steinberg*

Arthur Steinberg

AJS/sd

cc:     Gary Peller
        Edward S. Weisfelner
        Howard Steel
        Sander L. Esserman
        Jonathan L. Flaxer
        S. Preston Ricardo
        Matthew J. Williams
        Lisa H. Rubin
        Keith Martorana
        Daniel Golden
        Deborah J. Newman
        William Weintraub
        Steve W. Berman
        Elizabeth J. Cabraser
        Robert C. Hilliard

# **<u>Exhibit E</u>**

```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK


                                  .  Case No. 09-50026-reg
IN RE:                            .  Chapter 11
                                  .
MOTORS LIQUIDATION COMPANY,       .  (Jointly administered)
et al., f/k/a GENERAL             .
MOTORS CORP., et al,              .  One Bowling Green
                                  .  New York, NY 10004
                 Debtors.         .
                                  .  Wednesday, October 14, 2015
. . . . . . . . . . . . . . . . . .  9:46 a.m.
```

  TRANSCRIPT OF ORAL ARGUMENT RE: SCHEDULING ORDER SIGNED ON
   9/3/15 REGARDING CASE MANAGEMENT ORDER RE: NO-STRIKE, NO
    STAY, OBJECTION, AND GUC TRUST ASSET PLEADING [13416];
         MEMORANDUM ENDORSED ORDER SIGNED ON 9/3/15
              REGARDING SCHEDULING ORDER [13417];
 LETTER REGARDING PUNITIVE DAMAGES ISSUE, DATED 9/13/15, FILED
     BY GARY PELLER ON BEHALF OF SHARON BLEDSOE [13432];
 POST-CLOSING IGNITION SWITCH ACCIDENT PLAINTIFF'S MEMORANDUM
 OF LAW WITH RESPECT TO PUNITIVE DAMAGES ISSUE, DATED 9/13/15,
    FILED BY WILLIAM P. WEINTRAUB ON BEHALF OF HILLIARD MUNOZ
   GONZALEZ LLP AND THOMAS J. HENRY INJURY ATTORNEY [13434];
  JOINDER OF THE IGNITION SWITCH PLAINTIFFS AND NON-IGNITION
    SWITCH PLAINTIFFS TO THE POST-CLOSING IGNITION SWITCH
   ACCIDENT PLAINTIFFS' MEMORANDUM OF LAW WITH RESPECT TO
  PUNITIVE DAMAGES, DATED SEPTEMBER 13, 2015, FILED BY STEVE
        BERMAN ON BEHALF OF IGNITION SWITCH PLAINTIFFS,
             NON-IGNITION SWITCH PLAINTIFFS [13436];
     OPENING BRIEF BY GENERAL MOTORS LLC WITH RESPECT TO
     WHETHER PLAINTIFFS MAY SEEK PUNITIVE DAMAGES FROM
 GENERAL MOTORS LLC BASED ON THE CONDUCT OF GENERAL MOTORS
        CORPORATION, DATED SEPTEMBER 13,2015, FILED BY
 ARTHUR JAY STEINBERG ON BEHALF OF GENERAL MOTORS LLC [13437];
                         (CONTINUED)
           **BEFORE THE HONORABLE ROBERT E. GERBER**
           **UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES CONTINUED.

Audio Operator:          Karen/Julio, ECR


Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46038
                         (855) 873-2223
                         www.accesstranscripts.com

       Proceedings recorded by electronic sound recording,
         transcript produced by transcription service.

09-50026-mg    Doc 13648-1    Filed 06/23/16    Entered 06/23/16 17:30:23    Exhibits A
through E    Pg 50 of 58
09-50026-mg    Doc 13508    Filed 10/19/15    Entered 10/20/15 11:21:58    Main Document
Pg 2 of 129

2

TRANSCRIPT OF: (CONTINUED)
POST-CLOSING IGNITION SWITCH ACCIDENT PLAINTIFFS' REPLY WITH
RESPECT TO PUNITIVE DAMAGES ISSUE, DATED 9/22/15, FILED BY
WILLIAM P. WEINTRAUB ON BEHALF OF POST-CLOSING
IGNITION SWITCH ACCIDENT PLAINTIFFS [13459];
REPLY BRIEF BY GENERAL MOTORS LLC WITH RESPECT TO WHETHER
PLAINTIFFS MAY SEEK PUNITIVE DAMAGES FROM GENERAL MOTORS LLC
BASED ON THE CONDUCT OF GENERAL MOTORS CORPORATION, DATED
SEPTEMBER 22, 2015, FILED BY ARTHUR JAY STEINBERG
ON BEHALF OF GENERAL MOTORS LLC [13460];
JOINDER OF THE IGNITION SWITCH PLAINTIFFS AND NON-IGNITION
SWITCH PLAINTIFFS TO THE POST-CLOSING IGNITION SWITCH ACCIDENT
PLAINTIFFS' REPLY WITH RESPECT TO PUNITIVE DAMAGES ISSUE, DATED
SEPTEMBER 22,2015, FILED BY STEVE BERMAN ON BEHALF OF IGNITION
SWITCH PLAINTIFFS, NON-IGNITION SWITCH PLAINTIFFS [13461];
BRIEF OF MOORE PLAINTIFFS REGARDING PUNITIVE
DAMAGES ISSUE, DATED 9/13/15;
LETTER ELLIOTT, SESAY, AND BLEDSOE PLAINTIFFS JOINING
THE BRIEF OF OTHER PARTIES ON IMPUTATION ISSUE, DATED 9/18/15,
FILED BY GARY PELLER ON BEHALF OF SHARON BLEDSOE [13448];
OPENING BRIEF BY GENERAL MOTORS LLC WITH RESPECT TO WHETHER
PLAINTIFFS CAN AUTOMATICALLY IMPUTE TO NEW GM KNOWLEDGE OF
THE EVENTS THAT TOOK PLACE AT OLD GM AND/OR AS REFLECTED IN
OLD GM'S BOOKS AND RECORDS, DATED 9/18/15, FILED BY
ARTHUR JAY STEINBERG ON BEHALF OF GENERAL MOTORS LLC [13451];
OPENING BRIEF ON IMPUTATION ISSUE, 9/18/15, FILED BY STEVE
BERMAN ON BEHALF OF IGNITION SWITCH PLAINTIFFS, NON-IGNITION
SWITCH PLAINTIFFS, STATE OF ARIZONA EX REL. MARK BRNOVICH,
THE ATTORNEY GENERAL, THE ADAMS PLAINTIFFS, THE PEOPLE OF
THE STATE OF CALIFORNIA, ACTING BY AND THROUGH ORANGE COUNTY
DISTRICT ATTORNEY TONY RACKAUCKAS, THE POST-CLOSING
IGNITION SWITCH ACCIDENT PLAINTIFFS [13452];
DOCUMENT FILED UNDER SEAL OPENING BRIEF ON IMPUTATION ISSUE
ON BEHALF OF THE IGNITION SWITCH PLAINTIFFS, THE NON-IGNITION
SWITCH PLAINTIFFS, THE STATE OF ARIZONA, THE PEOPLE OF THE
STATE OF CALIFORNIA, THE POST-CLOSING IGNITION SWITCH
ACCIDENT PLAINTIFFS AND THE ADAMS PLAINTIFFS, DATED 9/21/15,
FILED BY STEVE BERMAN ON BEHALF OF THE ADAMS PLAINTIFFS, THE
POST-CLOSING IGNITION SWITCH ACCIDENT PLAINTIFFS, IGNITION
SWITCH PLAINTIFFS, NON-IGNITION SWITCH PLAINTIFFS, STATE OF
ARIZONA EX REL. MARK BRNOVICH, THE ATTORNEY GENERAL, THE PEOPLE
OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH
ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS [13454];

ACCESS TRANSCRIPTS, LLC       1-855-USE-ACCESS (873-2223)

TRANSCRIPT OF: (CONTINUED)
REPLY BRIEF BY GENERAL MOTORS LLC WITH RESPECT TO WHETHER
PLAINTIFFS CAN AUTOMATICALLY IMPUTE TO NEW GM KNOWLEDGE OF THE
EVENTS THAT TOOK PLACE AT OLD GM AND/OR AS REFLECTED IN OLD
GM'S BOOKS AND RECORDS, DATED SEPTEMBER 30, 2015, FILED BY
ARTHUR JAY STEINBERG ON BEHALF OF GENERAL MOTORS LLC [13482];
REPLY BRIEF ON IMPUTATION ISSUE ON BEHALF OF THE IGNITION
SWITCH PLAINTIFFS, THE NON-IGNITION SWITCH PLAINTIFFS, THE
STATE OF ARIZONA, THE PEOPLE OF THE STATE OF CALIFORNIA, THE
POST-CLOSING IGNITION SWITCH ACCIDENT PLAINTIFFS AND THE ADAMS
PLAINTIFFS, DATED 9/30/15, FILED BY STEVE BERMAN ON BEHALF OF
IGNITION SWITCH PLAINTIFFS, NON-IGNITION SWITCH PLAINTIFFS,
STATE OF ARIZONA EX REL. MARK BRNOVICH, THE ATTORNEY GENERAL,
THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH
ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS [13483];
NEW GM BELLWETHER LETTER, WITH MARKED BELLWETHER COMPLAINTS,
PURSUANT TO SCHEDULING ORDER DATED 9/3/15, DATED 9/21/15,
FILED BY ARTHUR JAY STEINBERG ON BEHALF OF
GENERAL MOTORS LLC [13456];
LETTER FILED ON BEHALF OF GENERAL MOTORS LLC REGARDING OTHER
PLAINTIFFS' COMPLAINTS, DATED 9/23/15, FILED BY ARTHUR JAY
STEINBERG ON BEHALF OF GENERAL MOTORS LLC [13466];
NEW GM MDL COMPLAINT LETTER, WITH MARKED MDL COMPLAINT,
PURSUANT TO SCHEDULING ORDER DATED 9/3/15, DATED 9/25/15,
FILED BY ARTHUR JAY STEINBERG ON BEHALF OF
GENERAL MOTORS LLC [13469];
NEW GM STATES COMPLAINTS LETTER, WITH MARKED STATES
COMPLAINTS, PURSUANT TO SCHEDULING ORDER DATED 9/3/15,
DATED 9/25/15, FILED BY ARTHUR JAY STEINBERG
ON BEHALF OF GENERAL MOTORS LLC [13470];
LETTER DATED 9/28/15 TO JUDGE GERBER FROM WILLIAM P. WEINTRAUB
RE: RESPONSE TO NEW GM BELLWETHER LETTER AND MARKED BELLWETHER
COMPLAINTS, DATED 9/28/15, FILED BY WILLIAM P. WEINTRAUB ON
BEHALF OF HILLIARD MUNOZ GONZALES LLP AND
THOMAS J. HENRY INJURY ATTORNEY [13475];
LETTER ON BEHALF OF CAROLYN RICKARD, ADM'X. OF THE
ESTATE OF WILLIAM RICKARD, DECEASED, IN RESPONSE TO
GENERAL MOTORS, LLC'S LETTER REGARDING OTHER PLAINTIFFS'
COMPLAINTS, DATED 9/29/15, FILED BY JULIANNE CUTRUZZULA
BEIL ON BEHALF OF CAROLYN RICKARD [13478];
LETTER ON BEHALF OF THE ELLIOTT, SESAY AND BLEDSOE PLAINTIFFS
REGARDING NEW GM'S MARKED PLEADINGS LETTER, DATED 9/29/15,
FILED BY GARY PELLER ON BEHALF OF SHARON BLEDSOE [13479];
RESPONSIVE LETTER FROM MOORE PLAINTIFFS REGARDING
OTHER PLAINTIFFS' COMPLAINT, DATED 9/30/15;
LETTER RESPONSE TO NEW GM MARKED STATE COMPLAINTS [13470];



09-50026-mg   Doc 13648-1   Filed 06/23/16   Entered 06/23/16 17:30:23   Exhibits A
through E   Pg 52 of 58
09-50026-mg   Doc 13508   Filed 10/19/15   Entered 10/20/15 11:21:58   Main Document
Pg 4 of 129

4

TRANSCRIPT OF: (CONTINUED)
EXPLANATORY LETTER, DATED 10/9/15, FILED BY STEVE BERMAN ON
BEHALF OF STATE OF ARIZONA EX REI. MARK BRNOVICH, THE
ATTORNEY GENERAL, THE PEOPLE OF THE STATE OF CALIFORNIA,
ACTING BY AND THROUGH ORANGE COUNTY DISTRICT
ATTORNEY TONY RACKAUCKAS [13494];
LETTER RESPONSE TO NEW GM'S MARKED MDL COMPLAINT [13469];
EXPLANATORY LETTER, DATED OCTOBER 9, 2015, FILED BY STEVE
BERMAN ON BEHALF OF IGNITION SWITCH PLAINTIFFS,
NON-IGNITION SWITCH PLAINTIFFS [13495];
PEOPLE OF THE STATE OF CALIFORNIA'S "NO STRIKE" PLEADING,
DATED JUNE 16, 2015, FILED BY STEVE BERMAN ON BEHALF OF
THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY
AND THROUGH ORANGE COUNTY DISTRICT ATTORNEY
TONY RACKAUCKAS [13210];
STATE OF ARIZONA'S "NO STRIKE" PLEADING, DATED 6/16/15,
FILED BY STEVE BERMAN ON BEHALF OF STATE OF ARIZONA EX REL.
MARK BRNOVICH, THE ATTORNEY GENERAL [13211];
THE IGNITION SWITCH PLAINTIFFS' NO STRIKE PLEADING WITH
REGARD TO THE SECOND AMENDED CONSOLIDATED COMPLAINT; AND THE
NON-IGNITION SWITCH PLAINTIFFS' (I) OBJECTION PLEADING WITH
REGARD TO THE SECOND AMENDED CONSOLIDATED COMPLAINT
AND (II) GUC TRUST ASSET PLEADING, DATED 6/24/15, FILED BY
EDWARD WEISFELNER ON BEHALF OF DESIGNATED COUNSEL
FOR THE IGNITION SWITCH PLAINTIFFS & CERTAIN
NON-IGNITION SWITCH PLAINTIFFS [13247];
OMNIBUS RESPONSE BY GENERAL MOTORS LLC TO THE NO STRIKE
PLEADINGS FILED BY THE STATES OF ARIZONA AND CALIFORNIA,
DATED 7/10/15, FILED BY ARTHUR JAY STEINBERG
ON BEHALF OF GENERAL MOTORS LLC [13286];
RESPONSE BY GENERAL MOTORS LLC TO THE IGNITION SWITCH
PLAINTIFFS' NO STRIKE PLEADING WITH REGARD TO THE SECOND
AMENDED CONSOLIDATED COMPLAINT; AND THE NON-IGNITION SWITCH
PLAINTIFFS' OBJECTION PLEADING WITH REGARD TO THE SECOND
AMENDED CONSOLIDATED COMPLAINT, DATED 7/23/15, FILED BY
ARTHUR JAY STEINBERG ON BEHALF OF GENERAL MOTORS LLC [13316];
ADAMS PLAINTIFFS' NO DISMISSAL PLEADING, DATED 8/11/15,
FILED BY GREGORY W. FOX ON BEHALF OF HILLIARD MUNOZ GONZALES
LLP AND THOMAS J. HENRY INJURY ATTORNEY [13359];
RESPONSE BY GENERAL MOTORS LLC TO ADAMS PLAINTIFFS'
NO DISMISSAL PLEADING, DATED 9/30/15, FILED BY ARTHUR
JAY STEINBERG ON BEHALF OF GENERAL MOTORS LLC [13422];
STATEMENT OF GOOD FAITH FILING, DATED 9/4/15,
FILED BY JULIANNE CUTRUZZULA BEIL
ON BEHALF OF CAROLYN RICKARD [13423]

5

APPEARANCES:

For the Debtor:                King & Spalding LLP
                              By:  ARTHUR STEINBERG, ESQ.
                              1185 Avenue of the Americas
                              New York, New York 10036-4003
                              (212) 556-2158


For the Ignition Switch
Pre-closing Accident
plaintiffs:                   Goodwin Procter LLP
                              By:  GREGORY FOX, ESQ.
                              By:  WILLIAM P. WEINTRAUB, ESQ.
                              The New York Times Building
                              620 Eighth Avenue
                              New York, New York 10018
                              (212) 459-7348


For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs:                   Brown Rudnick LLP
                              By:  EDWARD S. WEISFELNER, ESQ.
                              By:  HOWARD S. STEEL, ESQ.
                              7 Times Square
                              New York, New York 10036
                              (212) 209-4917

For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs and states
of California and
Arizona:                      Hagens Berman Sobol Shapiro LLP
                              By:  STEVE W. BERMAN, ESQ.
                              1918 Eighth Ave.
                              Suite 3300
                              Seattle, Washington 98101
                              (206) 623-7292


ACCESS TRANSCRIPTS, LLC      1-855-USE-ACCESS (873-2223)

09-50026-mg   Doc 13648-1   Filed 06/23/16   Entered 06/23/16 17:30:23   Exhibits A
09-50026-mg   Doc 13508   Filed 10/19/15   Entered 10/20/15 11:21:58   Main Document
Pg 6 of 129

6

TELEPHONIC APPEARANCES:

For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs and states
of California and
Arizona:                    Hagens Berman Sobol Shapiro LLP
                            By:  ANDREW M. VOLK, ESQ.
                            1918 Eighth Ave.
                            Suite 3300
                            Seattle, Washington 98101
                            (206) 623-7292

For Law Debenture Trust
Company of New York:        Kelley Drye & Warren LLP
                            BY:  BENJAMIN D. FEDER, ESQ.
                            101 Park Avenue
                            New York, NY 10178
                            (212) 808-7800

09-50026-mg   Doc 13648-1   Filed 06/23/16   Entered 06/23/16 17:30:23   Exhibits A
through E   Pg 55 of 58
09-50026-mg   Doc 13508   Filed 10/19/15   Entered 10/20/15 11:21:58   Main Document
Pg 7 of 129

7

1          (Proceedings commence at 9:46 a.m.)

2          THE COURT:  Good morning.  Have seats, please.  I

3    think I know most of the people who've been speaking before.

4    If anybody else expects to be heard, I'll provide that

5    opportunity.  I do have some preliminary remarks.

6          First, I heard just as I was walking in, quite to my

7    surprise, that there had been some request for breakout loans

8    and contemplation that we'd be here all day.  That's not my

9    concept of what we're here for today.  We're going to focus on

10   some just gradations, and I would expect that we'd be done by

11   11:30 or something in that range.

12         I want you folks to spend most of your time on

13   punitives, and in particular whether punitives are going to

14   assume liability or not.  I don't need much help on imputation,

15   and although I'm not going to put a sock in your mouth on that,

16   I think the briefs are pretty clear and I understand the issues

17   on imputation.

18         On the matter of punitive damages, I want you to talk

19   principally about whether there is assumed liability for

20   punitives under the sale agreement, and if not, whether

21   plaintiffs can still rely on Old GM conduct as either a

22   predicate for punitives or for increasing punitives that are

23   otherwise awarded.  I'm not sure why there might be a

24   distinction on the latter issue, but if you think there is, you

25   can tell me.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

 1  liability for people of the character you just described --

 2            MR. WEINTRAUB:  Yes.

 3            THE COURT:  -- who were in post-sale accidents.  And

 4  your point is that New GM should not be immune from punitives

 5  to people who were injured or killed or the survivors of such

 6  for those post-sale accidents.

 7            MR. WEINTRAUB:  Exactly, Your Honor.

 8            THE COURT:  That much I understand, but I'm less

 9  clear on whether you're saying that the premise for the

10  punitives for the post-sale accident victim should be pre-sale

11  conduct as well as post-sale knowledge and conduct.

12            MR. WEINTRAUB:  I think it could be both, Your Honor,

13  but with respect to this particular argument, the point of this

14  argument is if the Court rules that 2.3(a)(9) bars punitive

15  damages with respect to these post-sale accident victims, with

16  respect to this subcategory of post-sale accident victims,

17  those who owned the vehicle at the time of the sale,

18  notwithstanding the fact that 2.3(a)(9) might bar punitive

19  damages, which we dispute, this due process issue would say

20  that New GM can be a successor for purposes of punitive damages

21  based upon the pre-sale conduct of Old GM.  We also think that

22  because New GM delayed the recall, as admitted, up until past

23  the time that these people were injured, that its conduct,

24  independently would give it liability for punitive damages.  So

25  it's both, Your Honor, as this --

09-50026-mg   Doc 13648-1   Filed 06/23/16   Entered 06/23/16 17:30:23   Exhibits A
through E   Pg 57 of 58
09-50026-mg   Doc 13508   Filed 10/15/15   Entered 10/20/15 11:21:58   Main Document
Pg 22 of 129

22

1              THE COURT:  Okay.

2              MR. WEINTRAUB:  Now, with respect to the second

3    category of claimant, those who did not own their vehicles at

4    the time of the sale but acquired them later, we think that

5    those are the archetypal future claimants talked about in

6    Grumman Olson.  Those are the people that could not possibly

7    have been given meaningful notice because they had no

8    connection with the debtor at the time of the sale.  And just

9    like in Grumman Olson, we believe that there should be

10   successor liability for these purely future claimants, and

11   there would be no bar on punitive damages by those claimants if

12   they can demonstrate that the conduct to them was

13   reprehensible.

14             THE COURT:  Uh-huh, okay.

15             MR. WEINTRAUB:  If I could just take a minute, Your

16   Honor.  As usual, you took me right out of my presentation, and

17   I want to make sure --

18             THE COURT:  Check your notes.  Sure, go ahead.

19             MR. WEINTRAUB:  -- make sure that I hit everything

20   that I did -- I wanted to hit.  Yeah, there are a couple things

21   I -- a couple points I'd like to make, Your Honor.

22             One of the cases that we cite is the Virgilio (ph)

23   case, and we think that that's a highly instructive case.  In

24   the Virgilio case, the statute enacting the 9/11 victims fund

25   provided that by opting into the fund, the claimant waived all

09-50026-mg    Doc 13648-1    Filed 06/23/16    Entered 06/23/16 17:30:23    Exhibits A
through E    Pg 58 of 58
09-50026-mg    Doc 13508    Filed 10/19/15    Entered 10/20/15 11:21:58    Main Document
Pg 23 of 129

23

1 claims for recovery of damages against anyone other than the

2 terrorists.  The estates of certain firefighters in that case

3 that died in the Twin Towers when they collapsed who had opted

4 into the victims' fund wanted to sue Motorola and the City of

5 New York for providing defective radios that didn't work within

6 the concrete structure of the tower, and therefore those

7 firefighters couldn't be told to evacuate the tower because it

8 was collapsing.

9           The plaintiffs argued that, per the statute, when

10 they opted into the fund, they only waived compensatory

11 damages, but could still sue for punitive damages.  In other

12 words, their position was we could sue for just punitive

13 damages.  The Second Circuit rejected the plaintiffs' argument

14 and affirmed the district court's ruling that the claim was

15 barred.  The Second Circuit held that because of the parasitic

16 relationship between compensatory damages and punitive damages,

17 once the compensatory damages were waived, there was no path

18 for punitive damages, so those were effectively waived, too.

19           In this case, Your Honor, we've got the converse

20 which would also be true.  There is no limitation in this

21 agreement to just compensatory damages.  Because of the

22 parasitic relationship between compensatory damages and

23 punitive damages, if there's a claim for compensatory damages,

24 then the parasite, punitive damages travels along with it and

25 would only be barred if expressly excluded.  And as we said