**HEARING DATE AND TIME: July 18, 2016 at 10:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: July 11, 2016 at 4:00 p.m. (Eastern Time)**

Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
BINDER & SCHWARTZ LLP
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008

*Attorneys for the Motors Liquidation Company*
*Avoidance Action Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                                        Debtors.

-------------------------------------------------------------------------x

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

**MOTION OF MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION
TRUST FOR ENTRY OF ORDER PURSUANT TO SECTIONS 105 AND 1142
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3020(d)
<u>APPROVING LITIGATION FUNDING AGREEMENT</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ii

JURISDICTION AND VENUE ......................................................................................1

PRELIMINARY STATEMENT .....................................................................................2

BACKGROUND ...........................................................................................................3

    A.  Old GM Files for Bankruptcy, the Term Loan Is Paid Off, and the Committee
        Commences the Term Loan Avoidance Action...............................................3

    B.  The Plan Is Confirmed, and the Committee Transfers Prosecution of the Term Loan
        Avoidance Action to the Avoidance Action Trust.............................................5

    C.  The Term Loan Avoidance Action May Not Be Fully and Finally Resolved For Years,
        and the Avoidance Action Trust Does Not Have Sufficient Funds to Prosecute the
        Litigation to Completion................................................................................7

    D.  The Avoidance Action Trust Undertook a Competitive Bidding Process to Obtain
        Required Funding......................................................................................... 10

    E.  The Litigation Funding Agreement ............................................................... 12

BASIS FOR REQUESTED RELIEF........................................................................... 14

NOTICE.................................................................................................................... 16

CONCLUSION......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                        **Page(s)**

*Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
    7 F.3d 32 (2d Cir. 1993)...................................................................................15

*LTV Corp. v. Back (In re Chateaugay Corp.),*
    201 B.R. 48 (Bankr. S.D.N.Y. 1996), *aff'd in part,* 213 B.R. 633 (S.D.N.Y. 1997) ....................................................................................................................15

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A.,*
    103 A.3d 1010 (Del. 2014) ..................................................................................8

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.),*
    755 F.3d 78 (2d Cir. 2014)....................................................................................8

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.),*
    777 F.3d 100 (2d Cir. 2015)...........................................................................3, 4, 8

*Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.),*
    Adv. Pro. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009)..................................3, 5

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. U.S. Dep't of Treasury (In re Motors Liquidation Co.),*
    Adv. Pro. No. 11-09406 (Bankr. S.D.N.Y. June 6, 2011) ......................................6

*Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.),*
    335 B.R. 66 (Bankr. S.D.N.Y. 2005)...................................................................15

*In re Petition of Bd. of Dirs. of Hopewell Int'l Ins., Ltd.,*
    272 B.R 396 (Bankr. S.D.N.Y. 2002)..................................................................15

*U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.,*
    475 B.R. 347 (S.D.N.Y. 2012)..............................................................................6

**Statutes**

28 U.S.C. § 157 ............................................................................................................... 1

28 U.S.C. § 1409 ............................................................................................................. 2

11 U.S.C. § 105 ......................................................................................... 1, 2, 15, 16

11 U.S.C. § 547 ............................................................................................................. 9

11 U.S.C. § 549 ............................................................................................................. 9

11 U.S.C. § 550 ............................................................................................................. 9

11 U.S.C. § 1142 ................................................................................. 1, 2, 14, 15, 16

**Other Authorities**

Fed. R. Bankr. P. Rule 3020 ................................................................... 1, 2, 16

TO:    **THE HONORABLE MARTIN GLENN**
       **UNITED STATES BANKRUPTCY JUDGE**

Wilmington Trust Company, solely in its capacity as trust administrator and trustee (the "**Avoidance Action Trust Administrator**") of the Motors Liquidation Company Avoidance Action Trust (the "**Avoidance Action Trust**"), as established under the Debtors' Second Amended Joint Chapter 11 Plan dated as of March 18, 2011 [Bankr. Dkt. No. 9836] (as confirmed, the "**Plan**") of the above-captioned post-effective date debtors (the "**Debtors**"), submits this motion (the "**Motion**"), pursuant to sections 105 and 1142 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3020(d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an order, substantially in the form attached hereto as Exhibit A (the "**Approval Order**"), (i) approving the litigation funding agreement attached hereto as Exhibit B (the "**Litigation Funding Agreement**"), (ii) authorizing the Avoidance Action Trust to take all actions necessary or appropriate to effectuate the Litigation Funding Agreement, including the granting of a lien on the Term Loan Avoidance Action (as defined below) and other specified property of the Avoidance Action Trust; and (iii) granting such other and further relief as may be necessary.  In support of the foregoing, the Avoidance Action Trust Administrator respectfully states as follows:

<u>**JURISDICTION AND VENUE**</u>

1.    The Bankruptcy Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334, paragraph II of the order of the Bankruptcy Court dated as of March 29, 2011, confirming the Plan [Bankr. Dkt. No. 9941], Article XI of the Plan, and Sections 6.1(b), 8.1 and 13.13 of the Amended and Restated Motors Liquidation Company Avoidance Action Trust Agreement, dated as of May 11, 2012, attached hereto as Exhibit C (the "**Avoidance Action Trust Agreement**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before

this Court pursuant to 28 U.S.C. § 1409.   The statutory predicates for the relief requested are

sections 105 and 1142 of the Bankruptcy Code and Bankruptcy Rule 3020.

## PRELIMINARY STATEMENT

2.      The Litigation Funding Agreement resolves the funding needs of the Avoidance

Action Trust to continue prosecuting the Avoidance Action Trust's $1.5 billion action against

JPMorgan Bank, N.A. ("**JPMorgan**"), and hundreds of other defendants (collectively, the "**Term**

**Loan Defendants**").   Since its formation, the Avoidance Action Trust has been prosecuting the

action with the goal of maximizing its value and distributing that value to the Avoidance Action

Trust's beneficiaries.  Absent a substantial infusion of funds, the Avoidance Action Trust will run

out of money to prosecute the $1.5 billion Term Loan Avoidance Action against the Term Loan

Defendants.  Under the current litigation schedule, the earliest possible adjudicated resolution of

the action by this Court would not be until 2017 with possible appeals and follow-on collection

litigation in different jurisdictions well beyond 2017, perhaps even several years beyond 2017.

3.      The Avoidance Action Trust explored resolution of its funding needs through an

agreement with the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), but such

negotiations ultimately proved unsuccessful.   The Avoidance Action Trust then undertook a

competitive bidding process with private funders that resulted in the current Litigation Funding

Agreement with U.S. Bank National Association, as administrative agent and collateral agent, and

the Investors as defined in the Litigation Funding Agreement ("**Funder**").  This Litigation Funding

Agreement should be approved because it provides the Avoidance Action Trust with the financial

means to prosecute the Term Loan Avoidance Action (as defined below) and maximize the value

of the Avoidance Action Trust's assets for its beneficiaries.

# BACKGROUND

**A.  Old GM Files for Bankruptcy, the Term Loan Is Paid Off, and the Committee Commences the Term Loan Avoidance Action**

4.     General Motors Corporation ("**Old GM**") obtained a syndicated secured term loan (the "**Term Loan**") of approximately $1.5 billion pursuant to a term loan agreement, dated as of November 29, 2006, as amended on March 4, 2009 (the "**Term Loan Agreement**").  *Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 777 F.3d 100, 101 (2d Cir. 2015) ("***Second Circuit 2015 Decision***").[1] To secure repayment of the Term Loan, the Term Loan Lenders took security interests in a large number of Old GM's assets, including all of the equipment and fixtures at Old GM's facilities throughout the United States (the "**Collateral**").  *Id.*  JPMorgan, as administrative agent of the Term Loan, caused the filing of twenty-eight UCC-1 financing statements throughout the United States to perfect the Term Loan Lenders' security interests in the Collateral.  *Id.*  One of the twenty-eight UCC-1 financing statements covered all the equipment and fixtures at the forty-two Old GM facilities and was filed with the Delaware Secretary of State and designated as file number 6416808 4 (the "**Main Lien**").  *Id.*

5.     In connection with its bankruptcy filing, Old GM sought the authority from the Court to use a portion of the $33 billion in post-petition financing (the "**DIP Financing**") from the United States Department of the Treasury ("**Treasury**") and Export Development Canada ("**EDC**") (Treasury and EDC collectively referred to as the "**DIP Lenders**") to repay the Term Loan in full.  Bankr. Dkt. No. 64 ¶¶ 75-78.  Old GM repaid the Term Loan Lenders in full, ahead

---

[1]     All references to the Bankruptcy Docket are to *In re: Motors Liquidation Company f/k/a General Motors Corporation*, Case No. 09-50026.  All references to the Adversary Docket are to *Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*, Adv. Pro. No. 09-00504.

of other creditors of Old GM, on the assumption that their claims arising under the Term Loan Agreement were fully secured.  Bankr. Dkt. No. 2529 ¶ 19.

6.      However, days before entry of the *Final Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (A) Approving a DIP Credit Facility and Authorizing the Debtors to Obtain Post-Petition Financing Pursuant Thereto, (B) Granting Related Liens and Super-Priority Status, (C) Authorizing the Use of Cash Collateral and (D) Granting Adequate Protection to Certain Pre-Petition Secured Parties* (the "**DIP Order**") [Bankr. Dkt. No. 2529], which provided for the final approval of the DIP Financing, the Official Committee of Unsecured Creditors of Motors Liquidation Company f/k/a General Motors Corporation (the "**Committee**") learned that the Term Loan Lenders' security interests, in fact, may not all have been perfected as of the date that Old GM filed for bankruptcy on June 1, 2009 (the "**Petition Date**") due to the filing of a termination statement relating to the Main Lien (the "**2008 Termination Statement**") months before the Petition Date.  *Second Circuit 2015 Decision*, 777 F.3d at 102.  Therefore, the DIP Order, while conditionally approving Old GM's repayment of the Term Loan, expressly preserved the right of the Committee to investigate and bring actions based upon the purported perfection of the security interests related to the Term Loan.  Bankr. Dkt. No. 2529 ¶ 19(d).

7.      Following its investigation, the Committee determined that JPMorgan had authorized the filing of the 2008 Termination Statement, and that, as a result, the Term Loan Lenders' security interest with respect to the collateral secured by the Main Lien was not perfected as of the Petition Date; and, therefore, according to the Committee, the claims of the Term Loan Lenders arising under the Term Loan Agreement were substantially undersecured.  *Second Circuit 2015 Decision*, 777 F.3d at 102-3.  In order to recover amounts alleged to have been improperly

4

paid by Old GM to the Term Loan Lenders after the Petition Date (and during the ninety-day prepetition preference period) (the "**Transfers**"), based on the erroneous assumption that the Term Loan Lenders' security interests were perfected, and their claims fully secured, the Committee filed the adversary proceeding captioned *Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.), Adv. Pro. No. 09-00504* (Bankr. S.D.N.Y. July 31, 2009) (the "**Term Loan Avoidance Action**").  Adv. Pro. Dkt. No. 1.

> **B.     The Plan Is Confirmed, and the Committee Transfers Prosecution of the Term Loan Avoidance Action to the Avoidance Action Trust**

8.     As explained above, the Term Loan Avoidance Action was commenced by the Committee on July 31, 2009.  Adv. Pro. Dkt. No. 1.  JPMorgan, as Administrative Agent for the Term Loan Lenders, and the Committee, agreed to litigate the issue of whether the 2008 Termination Statement terminated the security interest in the Collateral covered by the Main Lien ("**Phase I**"), before litigating any other issues in the case.  The Bankruptcy Court approved this bifurcation of the case and entered three orders, extending the time of the Avoidance Action Trust Administrator to serve the summons and complaint on the non-JPMorgan defendants until after the conclusion of the Term Loan Avoidance Action Phase I.  *See, e.g.*, Adv. Pro. Dkt. Nos. 10, 17 and 82.  Notwithstanding the Bankruptcy Court's approval of the bifurcation and extension of time to serve the summons and complaint, several Term Loan Defendants have filed pending motions to dismiss the Amended Complaint (as defined below), and for judgment on the pleadings, asserting, *inter alia*, that the Bankruptcy Court orders were not based upon sound exercises of discretion and/or violated the Term Loan Defendants' due process rights.  *See* Adv. Pro. Dkt. Nos. 226, 262, 309, 392, 377.  The Term Loan Defendants' motions are still pending.

9.      By August 2010, approximately one year after commencement of the Term Loan

Avoidance Action, the Avoidance Action Trust and JPMorgan had completed discovery, and fully

briefed cross-motions for summary judgment, in connection with Phase I of the Avoidance Action.

*See* Adv. Pro. Dkt. Nos. 17, 20, 23.

10.     On March 29, 2011, the Bankruptcy Court entered an order (the "**Confirmation**

**Order**") confirming the Plan.  Bankr. Dkt. No. 9941.  The effective date of the Plan (the "**Effective**

**Date**") was March 31, 2011.   The Plan provided for, among other things, the creation of the

Avoidance Action Trust, which was established to liquidate and distribute its non-administrative

assets, which consist entirely of the proceeds, if any, of the Term Loan Avoidance Action.  Bankr.

Dkt. No. 9836 § 6.5 (Plan).[2]  Thereafter the Committee was dissolved, and on December 15, 2011,

while the cross-motions for summary judgment relating to Phase I were pending, prosecution of

the Term Loan Avoidance Action was transferred to the Avoidance Action Trust.   *See id.* § 6.5

(Plan); Ex. C (Avoidance Action Trust Agreement).

---

[2]      The proper beneficiaries of the proceeds of the Term Loan Avoidance Action, if any, is a matter
that is currently in dispute, with both the DIP Lenders and the Committee, on behalf of the holders of
Allowed General Unsecured Claims, claiming sole rights to such proceeds.  On June 6, 2011, the Committee
commenced a separate adversary proceeding seeking a declaratory judgment that: (i) the DIP Lenders are
not entitled to any proceeds of the Term Loan Avoidance Action and have no interests in the Avoidance
Action Trust, and (ii) the holders of Allowed General Unsecured Claims have the exclusive right to receive
any and all proceeds of the Term Loan Avoidance Action, and are the exclusive beneficiaries of the
Avoidance Action Trust.  *Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. U.S. Dep't
of Treasury (In re Motors Liquidation Co.)*, Adv. Pro. No. 11-09406, Dkt. No. 1 (Bankr. S.D.N.Y. June 6,
2011).  On December 2, 2011, the Bankruptcy Court entered an order in favor of the Committee, denying
DIP Lenders' motion to dismiss and for summary judgment. *Id.* ¶¶ 28-29.  On December 16, 2011, the DIP
Lenders appealed this and other related rulings and decisions of the Bankruptcy Court.  *Id.* ¶ 31.  On July
3, 2012, the district court for the Southern District of New York vacated the Bankruptcy Court's judgment
and remanded the case to the Bankruptcy Court, with instructions for the Bankruptcy Court judge to dismiss
the Committee's complaint without prejudice for want of subject matter jurisdiction because the dispute
was not yet ripe.  *U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation
Co.*, 475 B.R. 347, 367 (S.D.N.Y. 2012).

### C.    The Term Loan Avoidance Action May Not Be Fully and Finally Resolved For Years, and the Avoidance Action Trust Does Not Have Sufficient Funds to Prosecute the Litigation to Completion

11.    The initial administrative assets of the Avoidance Action Trust consisted of approximately $1.6 million in cash to be held and maintained by the Avoidance Action Trust Administrator for fees and expenses in connection with trust administration and prosecution of the Term Loan Avoidance Action (the "**Avoidance Action Trust Administrative Cash**").  Bankr. Dkt No. 11330 ¶ 18.[3]

12.    The $1.6 million of Avoidance Action Trust Administrative Cash set aside under the Plan proved to be insufficient to fund litigation costs related to the Term Loan Avoidance Action and to satisfy the Avoidance Action Trust's general administrative costs.  *Id.* ¶¶ 18-21. Accordingly, on January 20, 2012, the GUC Trust filed a motion seeking, *inter alia*, to liquidate securities to fund additional Avoidance Action Trust fees, costs and expenses primarily related to the prosecution of the Term Loan Avoidance Action.  *See generally id.*  The Court granted the GUC Trust's motion and entered an Order, which, among other things, allocated an additional $13,714,000 to the Avoidance Action Trust to satisfy the Avoidance Action Trust's estimated fees, costs and expenses for 2012, 2013, and 2014 (the "**GUC Trust Supplemental Cash**").  Bankr. Dkt. No. 11507.

13.    On March 1, 2013, the Bankruptcy Court denied the Committee's motion for partial summary judgment and granted summary judgment in favor of JPMorgan, ruling that the filing of

---

[3]    The Avoidance Action Trust also received $500,000 of Avoidance Action Trust SEC Reporting Cash to be used solely for SEC Reporting Costs to the extent there is no other available source of funds to pay such costs.  Bankr. Dkt. No. 11330 ¶ 18.  Any unused portion of the Avoidance Action Trust SEC Reporting Cash will be returned to the GUC Trust.  Ex. C § 2.3(e) (Avoidance Action Trust Agreement).

the 2008 Termination Statement was not effective and that the security interest covered by the Main Lien was therefore perfected as of the Petition Date.  Adv. Pro. Dkt. No. 71.

14.     The Avoidance Action Trust filed a motion seeking a direct, expedited appeal to the Second Circuit, which was granted.  The Avoidance Action Trust then timely appealed to the Second Circuit.  Adv. Pro. Dkt. 74.  A little less than two years later, on January 21, 2015, after receiving an answer to a Delaware UCC question that it certified to the Delaware Supreme Court, *see Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 755 F.3d 78, 86 (2d Cir. 2014) and *Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A.*, 103 A.3d 1010 (Del. 2014), the Second Circuit reversed the Bankruptcy Court's grant of summary judgment and remanded the matter to the Bankruptcy Court with instructions to enter partial summary judgment in favor of plaintiff, the Avoidance Action Trust.  *Second Circuit 2015 Decision*, 777 F.3d at 101. On February 4, 2015, JPMorgan filed a petition for rehearing en banc (2d Cir. Docket No. 149), which the Second Circuit subsequently denied on April 13, 2015 (2d Cir. Docket No. 179).

15.     On June 12, 2015, following issuance of the Second Circuit's mandate, the Bankruptcy Court entered partial summary judgment in favor of the Avoidance Action Trust as to the termination of the Main Lien.  Adv. Pro. Dkt. No. 96.  Thereafter, the Avoidance Action Trust filed an amended complaint (the "**Amended Complaint**") and served it upon all the Term Loan Lenders (with the exception of two foreign defendants as to which the Avoidance Action Trust continues to pursue service abroad).  Adv. Pro. Dkt. Nos. 91, 94, 95, 163, 164.  At the heart of the current phase of the Term Loan Avoidance Action is the Avoidance Action Trust's contention that, because the perfected security interest with respect to the Main Lien was terminated, the Term Loan Lenders should not have been paid as fully secured creditors, and the value of the Transfers

8

in excess of the value of any surviving collateral should be avoided and recovered for the benefit

of the estate under Bankruptcy Code sections 547, 549 and 550.

16.      The second phase of the litigation will primarily involve classification and

valuation of the remaining collateral related to the Term Loan that was secured and perfected by

filings other than the Main Lien (the "**Surviving Collateral**").[4]  The overall discovery schedule in

place for the Term Loan Avoidance Action contemplates: July 31, 2016, as the deadline for fact

discovery (including depositions and plant inspections); October 31, 2016, as the deadline for the

completion of expert discovery; and November 15, 2016, as the deadline for the filing of summary

judgment motions (or letter requests for dispositive motions, if required).  Adv. Pro. Dkt. No. 153.

17.      In addition, on May 4, 2016, the Court entered an *Order Amending the August 17,*

*2015 'Order Regarding Discovery and Scheduling' to Provide for Proceedings Concerning*

*Characterization and Valuation of Representative Assets* (the "**May 4, 2016 Order**"), which

provides for a schedule to streamline proceedings regarding fixture classification and valuation

issues with regard to a total of forty representative assets to be selected by the parties.  Adv. Pro.

Dkt. No. 547.  The May 4, 2016 Order culminates in the submission of pre-trial briefs to the Court

on November 18, 2016, with a trial on the representative assets to take place thereafter on a date

to be set by the Court.  *Id.*

18.      The Avoidance Action Trust projects that as of June 30, 2016, the Avoidance

Action Trust will have less than $700,000 to fund the fees and costs associated with prosecution

---

[4]      In addition to their contention that, even after termination of the Main Lien, the Term Loan remains
secured by valuable collateral, the Term Loan Defendants have asserted other defenses.  Further, various
Term Loan Defendants have filed cross-claims against JPMorgan based upon the filing of the Termination
Statement.  Such cross-claims are governed by a separate discovery schedule, which culminates in the
submission of summary judgment motions on March 15, 2017.  *See* Adv. Pro. Dkt. No. 442.  Further, the
Court recently entered an order extending the deadlines for discovery concerning the circumstances of the
filling of the Termination Statement to be consistent with the discovery schedule for the cross-claims.  Adv.
Pro. Dkt. No. 634.

of the Term Loan Avoidance Action, the administrative expenses of the Avoidance Action Trust, and the fees of the Trust Administrator and trust monitor (the "**Avoidance Action Trust Monitor**").  Declaration of Arthur J. Gonzalez, dated June 24, 2016 (the "**Gonzalez Declaration**") ¶ 4.  This amount is insufficient to fund the Term Loan Avoidance Action to its conclusion.  In addition to litigating to final resolution the Term Loan Avoidance Action against the hundreds of Term Loan Defendants, including any appeals, the Avoidance Action Trust has also commenced two proceedings in Delaware seeking to nullify certificates of cancellation of two entities named as Defendants in the Term Loan Avoidance Action based on their failure to wind up and distribute their assets in accordance with Delaware law so that the Avoidance Action Trust can prosecute the Term Loan Avoidance Action against the reconstituted entities.

19.    Accordingly, the final resolution of the Term Loan Avoidance Action could take years, and the Avoidance Action Trust does not have sufficient funds to prosecute the Term Loan Avoidance Action to completion absent additional funding.

> **D.    The Avoidance Action Trust Undertook a Competitive Bidding Process to Obtain Required Funding**

20.    Pursuant to the Avoidance Action Trust Agreement, the Avoidance Action Trust Administrator "shall at all times, to the extent practicable, retain . . . sufficient Avoidance Action Trust Administrative Cash and Supplemental Avoidance Action Trust Cash as the Trust Administrator shall determine, with the approval of the Trust Monitor and subject to the Budget, is necessary (x) to pay the reasonable incurred or anticipated fees and expenses of the Trust . . . and (y) to satisfy other liabilities incurred or anticipated by the Trust in accordance with the Plan, the Confirmation Order and this Trust Agreement."  Ex. C § 5.5(b) (Avoidance Action Trust Agreement).

21.    The Avoidance Action Trust Agreement specifically sets forth a mechanism for the Avoidance Action Trust to seek additional funding in the event that the Avoidance Action Trust Administrative Cash and the GUC Trust Supplemental Cash "is not reasonably likely to be adequate to satisfy the current and projected future fees, costs and expenses" of the Avoidance Action Trust. *Id*. § 6.1(d).

22.    Specifically, the Avoidance Action Trust Agreement permits, upon approval of the Bankruptcy Court, the granting of a lien on the Term Loan Avoidance Action or other property of the Avoidance Action Trust in exchange for proceeds that may be used to satisfy the fees, costs and expenses of the Avoidance Action Trust (the "**Other Supplemental Cash**"). *Id*.

23.    In accordance with its obligations under the Avoidance Action Trust Agreement, the Avoidance Action Trust Administrator, in consultation with the Avoidance Action Trust Monitor, made a determination that the cash available to the Avoidance Action Trust was not sufficient to meet its projected fees and expenses. *See* Gonzalez Decl. ¶ 4. After initially exploring a potential transaction with the GUC Trust as a path to addressing the Trust's need for supplemental cash, the Avoidance Action Trust Administrator, through counsel, commenced a competitive bidding process by soliciting litigation funding proposals from four potential third-party funders in order to obtain Other Supplemental Cash for the Avoidance Action Trust. *See id.* ¶¶ 4-5.

24.    After receipt of the litigation funding proposals, the Avoidance Action Trust, through counsel and with the active participation of the Avoidance Action Trust Administrator and the Avoidance Action Trust Monitor, engaged in negotiations with each of the potential funders in order to obtain an agreement on terms that would ensure adequate litigation funding for the Avoidance Action Trust on the best economic terms. *Id.*

11

25.     Ultimately, after approximately three months of negotiations, the parties arrived at the Litigation Funding Agreement that is the subject of this motion.[5]

### E.     The Litigation Funding Agreement

26.     The Litigation Funding Agreement provides that the Funder will commit up to $15 million to the Avoidance Action Trust to cover all Trust Expenses, which include the costs of litigation as well as the costs and expenses of the Avoidance Action Trust.  The Avoidance Action Trust is required to draw $5 million of that committed funding and may draw the remaining $10 million at its discretion.  The full terms of the Litigation Funding Agreement are set out in Exhibit B.

27.     Critically, the Litigation Funding Agreement provides that the Funder has no rights with respect to oversight of the Avoidance Action Trust's prosecution of the Term Loan Avoidance or any other action, nor does the Funder have any rights with respect to any decision whether or not to settle any action. Ex. B § 2.7(a) (Litigation Funding Agreement).

28.     The key terms of the Litigation Funding Agreement, all of which are consistent with Section 6.1(d) of the Avoidance Action Trust Agreement, are as follows:

- On the Effective Date, following, *inter alia*, this Court's approval of the Litigation Funding Agreement, the Funder shall deposit $15 million into an investment account (*id*. § 2.1(a));

- Thereafter, the Avoidance Action Trust must transfer a minimum of $5 million from the investment account to an operating account to fund the payment of Trust Expenses; any advancement of additional funds from the investment account beyond the $5 million is in the discretion of the Avoidance Action Trust (all funds advanced from the investment account to the Avoidance Action Trust's operating account are collectively referred to as the "**Investments**") (*id*. § 2.1);

- "Trust Expenses" means the costs and expenses of the Term Loan Avoidance Action, the Oaktree Action (as defined in the Litigation Funding Agreement), any

---

[5]     To the extent there is any conflict between this summary and the Litigation Funding Agreement, the Litigation Funding Agreement will govern in all respects.

other action commenced by the Avoidance Action Trust, and other costs and expenses of the Avoidance Action Trust (including, but not limited to, administrative expenses and any tax liabilities, but expressly excluding distributions to beneficiaries or repayment of amounts owed to DIP Lenders), all as determined by the Avoidance Action Trust Administrator in its sole discretion (*id.* § 6.6; § 1.1 at 8 (Definitions));

- In exchange for the $15 million financial commitment, the Avoidance Action Trust agrees to grant a security interest and lien to the Funder on all tangible and intangible property and assets of the Avoidance Action Trust (with the exception of: (i) the Avoidance Action Trust SEC Reporting Cash; (ii) the GUC Trust Supplemental Cash; (iii) Distributable Other Debtor Residual Trust Cash; (iv) Avoidance Action Trust Administrative Cash and Other Debtor Residual Trust Administrative Cash; and (v) any deposit account into which solely any of the foregoing is deposited and maintained)) (*id.* § 3.1); and

- The Funder shall be entitled to a return calculated as the greater of (i) 4.75% of the aggregate Proceeds of the Term Loan Avoidance Action or (ii) a multiple of invested capital equal to two and one-quarter times (2.25:1) the aggregate amount of all Investments; such fee shall be payable from the Proceeds of the Avoidance Action Trust ahead of all other obligations and beneficiaries of, or investors in, the Avoidance Action Trust (*id.* § 1.1 at 5, 6 (Definitions)).

29.    In addition to the key terms summarized above, the Litigation Funding Agreement contains other provisions, including but not limited to, those concerning conditions to consummating the Agreement; and termination events, rights, and procedures. The Litigation Funding Agreement also acknowledges that though the Avoidance Action Trust must use cash in the operating account for all Trust Expenses, it will enter into a contingency fee arrangement with Lead Counsel in the Term Loan Avoidance Action whereby Lead Counsel's fees to be paid by the Avoidance Action Trust are reduced by 30% and Lead Counsel will receive a contingency fee of 1% of the Proceeds of the Term Loan Avoidance Action. Ex. B § 1.1 at 10-11 (Definitions) (Litigation Funding Agreement).

30.    In order to thoroughly explore all potential sources of additional funds for the Avoidance Action Trust, the Avoidance Action Trust kept the DIP Lenders apprised of the negotiations with potential funders throughout this competitive bidding process. On April 4, 2016,

the date the Avoidance Action Trust reached an agreement in principle with the Funder, it shared

a copy of the initial term sheet with the DIP Lenders and, on May 19, 2016, provided the DIP

Lenders a copy of the executed Litigation Funding Agreement.  Finally, the Avoidance Action

Trust negotiated the following provision in the Litigation Funding Agreement that permits the

Avoidance Action Trust to terminate the Litigation Funding Agreement within a certain period of

time in the event that the DIP Lenders agreed to provide funding to the Avoidance Action Trust:

> "Permitted Alternative Funding Event" means the occurrence, on or before the
> earlier of (x) July 20, 2016; and (y) the originally-scheduled hearing date
> established by the Bankruptcy Court to consider the motion required pursuant to
> Section 5.1(f) (without regard to any adjournment thereof), of either: (i) any
> submission to the Bankruptcy Court of a motion seeking the approval of any
> agreement or arrangement, including, without limitation, the approval of any
> stipulation, with one or more DIP Lenders to provide funding for the Trust's
> prosecution of the Term Loan Avoidance Action, the Oaktree Action, and any other
> action brought by the Trust; or (ii) the Trust's entry into an agreement or
> arrangement with one or more DIP Lenders pursuant to which such DIP Lenders
> will provide funding for the Trust's prosecution of the Term Loan Avoidance
> Action, the Oaktree Action, and any other action brought by the Trust, in any such
> case on terms materially more favorable to the Trust than those provided by the
> Investors under this Agreement.

Ex. B § 1.1 at 6 (Litigation Funding Agreement).

31.    As required by Section 6.1(d)(ii) of the Avoidance Action Trust Agreement, the

Avoidance Action Trust Monitor has submitted a Declaration herewith setting forth his approval

the Litigation Funding Agreement.  *See* Gonzalez Decl. ¶ 6.

## **BASIS FOR REQUESTED RELIEF**

32.    This Court has the authority to enter the proposed order approving the Litigation

Funding Agreement, attached hereto as Exhibit B, under the terms of the Plan and under section

1142(b) of the Bankruptcy Code.

33.    The Plan specifies that the Bankruptcy Court retains exclusive jurisdiction "of all

matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to,

14

and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code" and for, *inter alia*, the following purposes: (1) "ensure that distributions to holders of Allowed Claims are accomplished as provided herein"; (2) "hear and determine disputes arising in connection with or related to the interpretation, implementation, or enforcement of the Plan, . . . the Avoidance Action Trust, . . . and the Avoidance Action Trust Agreement . . . ."; and (3) "take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan to maintain the integrity of the Plan following consummation." Bankr. Dkt. No. 9836 §§ 11.1(c), (i), (j) (Plan).

34.    Further, section 1142(b) of the Bankruptcy Code authorizes the Court to "direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b); *see also Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (finding that bankruptcy courts retain postconfirmation jurisdiction in chapter 11 proceedings to the extent provided by the plan); *Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) (finding that bankruptcy courts retain post-confirmation jurisdiction to matters related to the implementation of a plan); *In re Petition of Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 272 B.R 396, 407 n.11 (Bankr. S.D.N.Y. 2002) ("[T]he Court may direct parties to perform any act necessary to consummate the plan.") (citing 11 U.S.C. § 1142(b)); *LTV Corp. v. Back* (*In re Chateaugay Corp.*), 201 B.R. 48, 66 (Bankr. S.D.N.Y. 1996), *aff'd in part,* 213 B.R. 633 (S.D.N.Y. 1997) ("The clear intent of Section 1142(b) of the Bankruptcy Code is to assure that the terms and provisions of a confirmed chapter 11 plan are carried out until the plan is completed and the final decree is entered closing

the case."). In addition, Bankruptcy Rule 3020(d) provides that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." Fed. R. Bankr. P. 3020(d).

35.    Here, the Litigation Funding Agreement allows the Avoidance Action Trust to fulfill its basic purpose under the Plan. The Plan specifies that the "sole purpose" of the Avoidance Action Trust is to liquidate and distribute its assets, which consist of the Term Loan Avoidance Action. Bankr. Dkt. No. 9836 §§ 1.23, 6.5 (Plan). The Litigation Funding Agreement promotes this goal.

36.    Approval of the Litigation Funding Agreement will provide necessary funding to the Avoidance Action Trust to prosecute the Term Loan Avoidance Action, in order to maximize its value for the Avoidance Action Trust's beneficiaries.

37.    In sum, the Litigation Funding Agreement, which was the result of a competitive bidding process and good faith, arm's-length negotiations between the parties, resolves significant funding issues of the Avoidance Action Trust, fulfills the goals of the Plan, and benefits all affected parties. Accordingly, it should be approved.

## NOTICE

38.    The Avoidance Action Trust has provided notice of this Motion to (a) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004; (b) the DIP Lenders; (c) the other parties in interest in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May 5, 2011 [Docket No. 10183]; (d) JPMorgan and each of the Term Loan Defendants, and (e) any other required notice

parties under Section 6.1(b)(ii) of the Avoidance Action Trust Agreement.[6] The Avoidance Action

Trust submits that such notice is sufficient and no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Avoidance Action Trust respectfully requests that the Court enter an

Order: (i) approving the Litigation Funding Agreement attached hereto as Exhibit B; (ii)

authorizing the Avoidance Action Trust to take all actions necessary or appropriate to effectuate

the Litigation Funding Agreement, including the granting of a lien on the Term Loan Avoidance

Action and other specified property of the Avoidance Action Trust; and (iii) granting such other

and further relief as may be necessary.

---

[6]    The Avoidance Action Trust Agreement requires notice to "the Trust Monitor, the holders of Units and the holders of Disputed General Unsecured Claims." Ex. C § 6.1(d)(ii) (Avoidance Action Trust Agreement). However, because of the dispute over who is entitled to the proceeds of the Term Loan Avoidance Action (*see supra* p. 6, n.2), no Units have been issued, and there are no holders of Units. Accordingly, notice has been provided to all potential Unit holders and/or beneficiaries of the Avoidance Action Trust and other interested parties, including the DIP Lenders; the Committee; the holders of Motors Liquidation Company (f/k/a General Motors Company) debentures and notes with the following CUSIP Nos.: 370ESCAN5; 370ESCAJ4; 370ESCAR6; 370ESCAG3; 370ESCAS7; 370ESCAT2; 370ESCAU9; 370ESCAV7; 370ESCAZ8; 370ESCBB0; 370ESCBQ7; 370ESCBT1; 370ESCBW4; 370ESCBS3; 370ESC816; 370ESC774; 370ESC766; 370ESC758; 370ESC741; 370ESC733; 370ESC725; 370ESC717; 370ESC121; 370ESC691; 616ESC AA2; 616ESC AB0; 349ESC AT1; 677ESC AU2; 677ESC BC2; 455ESC AB8; 594ESC AQ6; XS0171942757; XS0171943649; CH0008769264 (served through the Depository Trust Company (DTC)); the non-bondholder holders of Allowed General Unsecured Claims (as defined in the Avoidance Action Trust Agreement); and any holders of disputed General Unsecured Claims.

Dated:  June 23, 2016
       New York, New York

      Respectfully submitted,

      **BINDER & SCHWARTZ LLP**

      /s/ Eric B. Fisher
      Eric B. Fisher
      Neil S. Binder
      Lindsay A. Bush
      Lauren K. Handelsman
      366 Madison Avenue, 6th Floor
      New York, New York 10017
      Tel: (212) 510-7008

      *Attorneys for the Motors Liquidation*
      *Company Avoidance Action Trust*