# EXHBIT B

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

VERONICA ALAINE FOX,       *

                             *

    Plaintiff,              *

                             *

v.                         *     CIVIL ACTION FILE

                             *

                             *     NO. 14A 3468-4

GENERAL MOTORS LLC and     *

ATLANTA AUTO BROKERS, INC.,   *

                             *

    Defendants.          *

## **SECOND RECAST & AMENDED COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Veronica Fox and files this her Second Recast & Amended

Complaint for Damages against Defendants General Motors LLC ("GM LLC") and Atlanta Auto

Brokers, Inc. ("AAB"), and respectfully shows the following:("AAB"), to amend the Complaint

initially filed in this action as indicated below.  Plaintiff Fox hereby waives jury trial and

requests that the trial of this action proceed before this Honorable Court as fact-finder as

presently scheduled, on September 13, 2016.

## **INTRODUCTION**

a.    On November 12, 2013, Plaintiff Veronica Fox was rendered quadriplegic in a rollover

        wreck in the General Motors 2004 Cadillac SRX she was driving.  She was properly

        restrained in the vehicle.  When the Cadillac SRX rolled over, the top of the roof literally

        came off the vehicle, and the remaining roof structure buckled and collapsed on top of

        her.  Her injuries were caused by the resulting roof crush that occurred during the

        rollover.  Her injuries were entirely preventable.  Her injuries would not have happened

had General Motors Corporation ("GM Corp.") designed the 2004-2009 Cadillac SRX to provide proper protection for the occupants in a foreseeable rollover wreck. ~~They would not have happened if General Motors LLC ("GM LLC") would have warned her of the dangers of the roof design.~~[1]

b.   GM Corp. ~~and GM LLC~~ knew and expected that its vehicles **would be** involved in rollovers.  Conrad 3/18/16 Dep. at 23/21-24/3.2  GM LLC knew and knows that rollover wrecks can cause injuries and deaths.  Craig 4/20/16 Dep. at 87/17-23.

c.   GM Corp., like other automakers such as GM LLC, had the resources to design and manufacture automobiles that would provide proper protection to the occupants in a rollover.

d.   But GM Corp. designed the 2004-2009 Cadillac SRX with a roof structure that *it knew* would utterly fail to provide such protection:  the roof panel was made almost entirely of glass; the roof was secured to the vehicle by nothing but glue, with no welds or other mechanical fasteners; predictably, the entire, glued-on roof came off during the rollover, leaving a gaping hole in the top of the vehicle and depriving the roof system of the support the top of the roof should provide; there was little to no lateral support going

---

[1] GM Corp. and GM LLC referred to the subject GM Cadillac SRX design internally as the "GMT 265 program" vehicle.  Conrad 3/18/16 Dep. at 7/23-8/19.
[2] Conrad was lead engineer for upper structure of the GMT 265 vehicle – the 2004-2009 Cadillac SRX.  *Conrad* 3/18/16 Dep. 7/23-8/3.  He was employed by GM Corp. and also by GM LLC after the bankruptcy and government bail-out; nothing about the bankruptcy and bail-out affected his knowledge of the design of the 2004 SRX or his access to GM Corp.'s books and records.  *Id.* 8/4-19.

across the roof to help support the sides of the vehicle when the roof panel came off

during the roll; and the remaining roof structure was so inadequate, it buckled and

crushed onto Veronica Fox's ~~head~~neck and shoulders, catastrophically and permanently

injuring her.  ~~GM LLC knew all these facts.  Yet, it chose not to warn Veronica Fox, or~~

~~anyone else, of the dangerous design of the 2004 SRX.~~

e.    GM LLC itself knew all the foregoing facts prior to Plaintiff suffering catastrophic

injuries on November 12, 2013.  GM LLC 5/31/16 8th Supplemental Responses to

Plaintiff's First Interrogatories, "Amended Prefatory Statement."[3]  Conrad Dep. 8/12-19.

f.    The roof of the Cadillac SRX remained unchanged from 2004 through 2009.  Craig

4/20/16 Dep. at 9/19-25.

g.    GM LLC *itself also* continued to sell that same subject GM Cadillac SRX design through

2009, *and after* the June 2009 bankruptcy sale.  GM LLC 5/31/16 8th Supplemental

Responses to Plaintiff's First Interrogatories, "Amended Prefatory Statement;"[4] *id.* at

response to Interrogatory 1.[5]  GM LLC itself sold 648 of the subject Cadillac SRX

---

[3] "GM LLC did not design, develop, test, manufacture or assemble the subject 2004 Cadillac
SRX. However, GM LLC has acquired documents and other information from Motors
Liquidation Company, f/k/a General Motors Corporation, regarding the design and development
of the subject 2004 Cadillac SRX."
[4] "The roof structure and sunroof glass/glazing that is substantially similar to the 2004 Cadillac
SRX was introduced on the GMT265 platform for the 2004 model year and continued in
production through the 2009 model year."
[5] "In 2010, GM LLC introduced a redesigned new generation of crossover sport utility vehicle
based off the Epsilon and Theta architecture, known internally at GM as the GMT166 program."

vehicles (2004-2009 models) in July 2009 – after the bankruptcy sale.[6]   The 2010 model year Cadillac SRX, which replaced the subject vehicle, did not come to market until after the bankruptcy sale.[7]   The 2010 model year Cadillac SRX had a roof three times as strong as the 2004-09 models.

h.    GM Corp. knew precisely the danger that caused Plaintiff's injuries, because a virtually identical rollover wreck involving the very same Cadillac SRX with glass roof had occurred at the GM Proving Grounds on December 16, 2004, when the vehicle was driven by a GM engineer with two other GM engineers as passengers.  Craig Dep. at 10/1-12/10, 13/1-3, 60/4-9, 61/19-24.  The Cadillac SRX involved in that rollover slid sideways, rolled several times, the glass roof flew off, and the remaining roof structure buckled and deformed into the occupant compartment – just as happened to Plaintiff on November 12, 2013.   One GM engineer was taken to the hospital by ambulance.  Two of the GM engineers were admitted to the hospital.  Blood splattered all over the inside of the car.  By the Grace of God and good luck, no one was injured as badly as was Veronica.  But GM's Legal Department investigated that wreck at GM's own proving grounds, and had the wreck professionally reconstructed.  That was *nine years* before Ms. Fox's wreck: a rollover at GM's own proving grounds, the same car, with the same roof, producing virtually identical damage to the roof and roof structure.

---

[6] *See* Exhibit 1 hereto (GM LLC press release dated 8/03/09).
[7] *See* Exhibit 2 hereto (GM LLC press release dated 8/11/09 stating that the new SRX was "coming to market this month").

i.      After the bankruptcy sale in June, 2009, all those engineers continued to be employed by GM LLC, as did others with knowledge of that December 16, 2004 wreck at GM's own Proving Grounds.  GM LLC possesses all the knowledge regarding that proving grounds wreck previously possessed by GM. Corp., ~~files~~including all the documentary evidence previously possessed by GM Corp.  GM LLC has, in fact, itself produced some of that evidence to Plaintiff in this case.[8]

j.      As early as 2006 GM Corp. was already redesigning the roof to make it stronger – an effort that GM LLC continued after the bankruptcy sale, resulting in the 2010 model year Cadillac SRX roof that was three times stronger.  McLean 5/4/16 Dep. at 12/4-13/25.  That redesign work was completed by GM LLC after the bankruptcy sale, using the same engineers and other employees who had started that work when employed by GM Corp. and using the same facilities.

k.      GM LLC concedes that it "assumed liability" for defects in the 2004-2009 Cadillac SRX as part of the sale agreement it entered in 2009.

l.      The 2004 Cadillac SRX that caused Plaintiff's injuries was first sold more than 10 years prior to Plaintiff's injuries on November 12, 2013, and so this action is subject to ~~recover~~

---

[8] There were, in fact, five rollover wrecks involving the subject car at GM's own proving grounds – the 2004-2009 Cadillac SRX.  (GM referred to that car as the "GMT 265" vehicle.) GM's own engineer, Lou Conrad, who was "lead engineer" for the roof of the GMT 265 car (Conrad 3/18/16 Dep. at 7/23-8/3), has testified under oath that in his 30 years with GM he'd never heard of any other GM vehicle that rolled five times at GM's own proving grounds.  *Id*. at 28/15-22.

for the injuries caused by GM Corp.'s decisionGeorgia's "statute of repose." *See* O.C.G.A. §51-1-11.

m.    That statute of repose applies to adopt"manufacturers" of an unreasonably dangerous roof design,item "sold as new property" (O.C.G.A. §51-1-11(b)(1)) and forprovides a "limitation" on the "manufacturer's" liability if the product is more than ten years old (O.C.G.A. §51-1-11(b)(2)), subject to four explicit exceptions.  (O.C.G.A. §51-1-11(c)).  The statute of repose is available to GM Corp., as the "manufacturer."  But GM LLC contends it is not a "manufacturer" with respect to the subject product.  GM LLC may assert the statute of repose only on behalf of GM Corp., in an effort to escape GM LLC's and Atlanta Auto Broker Inc.'s ("AAB") election notassumption of liability.

n.    Of the four exceptions to the "limitation" to a "manufacturer's" liability for products over ten years old, three apply to this case.  The statute of repose excepts from the ten-year "limitation" on liability those actions "arising out of conduct which manifests a . . . reckless, *or* wanton disregard for life of property"[9] *or* a "manufacturer's" failure "to warn citizens including Plaintiff Fox of theof a danger arising from use of the product once that danger becomes known to the manufacturer."  O.C.G.A. §51-1-11(c).

o.    The conduct of GM Corp. in manufacturing the subject product was both "reckless" and "wanton."

---

[9] The statute also refers to "willful" conduct.  Plaintiff does not contend that the application of the statute of repose is defeated by "willful" conduct.

p.        The dangers ~~of the 2004 SRX.~~posed by the subject product were known to GM Corp.

Those dangers were also known to GM LLC.  After the bankruptcy, GM LLC continued

to employ the same persons who had knowledge of the dangers of the subject product;

GM LLC took possession of all documents previously possessed by GM Corp. regarding

those dangers; GM LLC continued the work started by GM Corp. to strengthen the roof

of the Cadillac SRX; GM LLC continued to sell the subject Cadillac SRX after the

bankruptcy sale.  In sum, at all times from June 26, 2009 until November 12, 2013 when

Plaintiff's injuries were sustained, GM LLC possessed all the same knowledge previously

possessed by GM Corp.  Neither GM Corp. nor GM LLC warned of those dangers.  That

negligent failure was itself both "reckless" and "wanton."

q.        ~~————~~As to Defendant GM LLC, this lawsuit involves a pre-bankruptcy vehicle that

GM LLC continued to sell post-bankruptcy with knowledge that it had a dangerously

weak roof, and a post-bankruptcy crash.  GM LLC is the only "General Motors"

defendant being sued because GM Corp. ("Old GM") no longer exists. Consistent with

Bankruptcy Court rulings, Plaintiffs make no allegations whatsoever that GM LLC is

liable as a "successor" of Old GM.


### I.  PARTIES, JURISDICTION, VENUE, & SERVICE OF PROCESS

1.

Plaintiff Veronica Fox is a citizen and resident of the State of Georgia.  Plaintiff is subject to the jurisdiction of this Court.

2.

Defendant GM LLC is a foreign corporation organized and incorporated under the laws of Delaware, with its principal place of business located at 300 Renaissance Center, Detroit, Michigan 48265.  GM LLC, like GM Corp., is engaged in the business of designing, manufacturing, marketing, promoting, advertising, distributing, and selling automobiles, trucks, SUVs, and other types of vehicles in the State of Georgia, throughout the United States, and elsewhere.

3.

GM LLC is subject to the jurisdiction of this Court because it transacts business in this State and maintains a registered agent in this State:  CSC of Cobb County, Inc., 192 Anderson Street S.E., Suite 125, Marietta, Georgia 30060.  GM LLC may be served with legal process there.

4.

Venue is proper in Cobb County as to Defendant GM LLC under O.C.G.A. § 14-2-510 and GA. CONST. art. VI, § 2, ¶ VI, because Cobb County is where Defendant GM LLC maintains a registered agent.

5.

Defendant AAB is a domestic corporation organized and incorporated under the laws of Georgia, with its principal place of business located at P.O. Box 3262, Alpharetta, Georgia

30023.  AAB is engaged in the business of buying, selling, and inspecting used automobiles in the State of Georgia.

6.

Defendant AAB is subject to the jurisdiction of this Court because it is incorporated in this State, it transacts business in this State, and maintains a registered agent in this State:  Joe Milligan, 487 Cobb Parkway, SE, Marietta, Georgia 30060.  AAB may be served with legal process there.

7.

Venue is proper in Cobb County as to Defendant AAB under O.C.G.A. § 14-2-510 and GA. CONST. art. VI, § 2, ¶ VI, because Cobb County is where Defendant AAB maintains a registered agent and under GA. CONST. art. 6, § 2, ¶ IV because it is a joint tortfeasor with Defendant GM LLC.

## II.  OPERATIVE FACTS

8.

On November 12, 2013, at around 2:00 a.m., Veronica Alaine Fox was the restrained driver of a 2004 Cadillac SRX designed, manufactured, and sold by GM Corp. (VIN: 1GYDE63A740113793) ("the subject SRX" or "subject vehicle").  Carl Coward was a restrained passenger in the front right seat.  The subject Cadillac SRX was traveling north on I-285, past the intersection with Martin Luther King Dr.

9.

Plaintiff Veronica Fox was properly seated in the driver's seat, wearing her seat belt.

9

10.

While traveling down the highway, the Cadillac SRX left the roadway.  The SRX rolled over and came to rest off the shoulder north of Martin Luther King Dr.

11.

GM Corp. manufactured, designed, marketed, and distributed the subject vehicle with a defective roof which was unable to withstand the forces of this foreseeable and survivable event. As the direct and proximate result of the defects in the roof structure of the subject vehicle, the roof panel came completely off during the wreck and the remaining structure crushed down on Plaintiff Veronica Fox during this incident, rendering her a quadriplegic.

12.

Defendant AAB inspected the vehicle and sold it to Plaintiff shortly before the wreck occurred.  Defendant AAB had a duty to warn Veronica Fox of the danger posed by the Cadillac SRX roof.  AAB breached that duty.  That breach was negligence.

13.

The defects and failures of the subject vehicle, combined with the acts and omissions of GM Corp., GM LLC, and AAB, caused Veronica Fox's injuries.

14.

As a direct and proximate result of the subject vehicle's defects and failures and the tortious acts and omissions of GM Corp., GM LLC, and AAB, Plaintiff Veronica Fox endured, continues to endure, and will endure in the future physical and emotional pain and suffering.

15.

GM Corp. designed, tested, manufactured, marketed, distributed, and sold the subject

10

Cadillac SRX, thereby placing it into the stream of commerce.

16.

The subject Cadillac SRX was defective, unreasonably dangerous, and not fit for its ordinary use when manufactured as well as at the time of the subject incident because (a) the design GM Corp. chose for the roof structure did not offer proper protection to occupants in foreseeable crashes; (b) the risks of GM Corp.'s chosen design outweighed the utility of the design; and (c) GM Corp. did not implement safer, feasible, and practicable alternative designs that would have prevented Plaintiff Veronica Fox's injuries.

17.

GM Corp. could have reasonably foreseen and did, in fact, foresee the occurrence of rollovers such as the one described in this Complaint.

18.

But for GM Corp.'s negligent and defective design of the Cadillac SRX, and the vehicle's failure to offer proper crash protection to occupants in foreseeable wrecks, Veronica Fox would not have been seriously injured in this wreck.

19.

At the time the subject Cadillac SRX was manufactured and at all times since then, GM Corp. has had actual knowledge from, among other things, its notice of real-world incidents involving its vehicles, its own testing, and the laws of physics, that when a roof lacks sufficient structural crashworthiness, occupants are highly vulnerable to being injured, paralyzed, or killed in a rollover.

11

20.

Despite its knowledge set forth above, GM Corp. consciously designed the 2004 ~~SRX, and other GM Corp. vehicles equipped with the same or similar performing roofs,~~ 2009 Cadillac SRX so that occupants would be subject to injury from roof crush.

21.

Despite knowing at the time the subject Cadillac SRX was manufactured that safer alternative designs were technologically feasible, economically practicable, and fundamentally safer, GM Corp. ~~wantonly and~~ recklessly and wantonly chose not to implement any of those alternative designs in the subject Cadillac SRX and instead chose a design GM Corp. knew would result in preventable injuries and deaths in foreseeable wrecks.

22.

GM Corp.'s reckless and wanton conduct constituted disregard for the life and safety of Veronica Fox, and the lives and safety of the motoring public generally. ~~GM Corp.'s reckless and wanton conduct also manifests a conscious indifference to the foreseeable consequences of that conduct to motorists like Veronica Fox.~~

23.

In 2009, after GM Corp. filed for Chapter 11 bankruptcy protection, Defendant GM LLC purchased ~~the~~ assets of GM Corp., including GM Corp.'s books and records.

24.

~~As~~ Defendant GM LLC concedes that as part of its 2009 purchase of GM Corp., ~~Defendant~~ GM LLC expressly assumed liability for product liability claims against GM Corp.

12

that arose after the bankruptcy sale., as set forth in the Sale Agreement and rulings by the
Bankruptcy Court.

25.

After the bankruptcy sale, Defendant GM LLC employed theitself continued to employ
engineers who designed the roof for the 2004-2009 Cadillac SRX roof, and GM LLCothers with
knowledge of that design, its defects, and its dangers.  Conrad 3/18/16 Dep. at 7/18-8/19.  After
the bankruptcy sale, Defendant GM LLC continued to employ those persons with specific
knowledge of the very similar rollover wreck that occurred at GM's own Proving Grounds on
December 16, 2004, including the GM engineer who was driving the same car with glass roof
during that wreck, and others, including those from GM's Legal Department who investigated
that wreck.  *See, e.g.,* Craig 4/20/16 Dep. at 7/16-25.  Defendant GM LLC has admitted that after
the bankruptcy sale it possessed all relevant knowledge, books, and records regarding the 2004-
2009 Cadillac SRX roof design. GM LLC 5-31-16 8th Supplemental Responses to Plaintiff's First
Interrogatories, "Amended Prefatory Statement (*see* n.2, *supra*).  In shortsum, GM LLC acquired
all knowledge regarding the 2004 SRX'sdefective roof from of the 2004-2009 Cadillac SRX and its
dangers previously possessed by GM Corp.  After the 2009 bankruptcy sale Defendant GM LLC
itself continued to sell the 2004-2009 Cadillac SRX with the subject defective roof.  GM LLC 5-
31-16 8th Supplemental Responses to Plaintiff's First Interrogatories, "Amended Prefatory
Statement;" *Id.* Response to Interrogatory 1.

26.

For the foregoing reasons, based on its own knowledge, Defendant GM LLC not only
could have reasonably foreseen and, but did, in fact, foresee, the occurrence of rollovers with

13

roof crush such as the one described in this Complaint.that caused catastrophic injuries to Plaintiff on November 12, 2013.

27.

27.Since the bankruptcy sale, Defendant GM LLC, like GM Corp., has had actual knowledge from, among other things, the knowledge of its engineers, the records and books it acquired from GM Corp., its notice of real-world incidents involving its and GM Corp.'s vehicles, its and GM Corp.'s testing, GM LLC's decision to substantially strengthen the roof in the 2010 SRX, and the laws of physics,

In addition to the foregoing, Defendant GM LLC has had actual knowledge that when a roof lacks sufficient structural crashworthiness, occupants are highly vulnerable to being injured, paralyzed, or killed in a rollover as a result of its own modification to the Cadillac SRX roof and its own testing and analysis of the Cadillac SRX roof.

28.

SinceIn addition to the bankruptcy saleforegoing, Defendant GM LLC, like GM Corp., has had actual knowledge from, among other things, the knowledge of its engineers, the records and books it acquired from GM Corp., its notice of real-world incidents involving its and GM Corp.'s vehicles, its and GM Corp.'s testing, GM LLC's decision to substantially strengthen the roof in the 2010 SRX, and the lawsthat the roof of physics, that the 2004 -2009 Cadillac SRX roofwas unreasonably dangerous and defective as a result of its own testing and analysis of the Cadillac SRX roof.

28.

14

29.1.

Despite GM LLC's assumed the responsibility and duty to warn and dealers, consumers, and the motoring public regarding defects in vehicles manufactured by GM Corp. In fact, GM LLC sent a letter to Plaintiff Fox warning her that her Cadillac SRX had a defective ignition switch.  Plaintiff Fox did not received that letter until after she was injured on November 12, 2013.

29.

Because of its own knowledge of a need, the notice to it described above, and GM's decision to undertake the duty to warn dealers, consumers, and the motoring public regarding defects in vehicles manufactured by GM Corp., GM LLC had a legal duty after the bankruptcy sale to warn *of that danger known to GM LLC* – the danger that the roof of a 2004-2009 Cadillac SRX with glass roof would collapse in a foreseeable rollover and cause injury or death to occupants.

30.

Despite the public the foregoing knowledge and notice, Defendant GM LLC failed at the time of the bankruptcy sale—and all times since—to adequately warn the consuming public, and Plaintiff in particular, of the dangers in a reasonably foreseeable wreck presented by the designto warn Plaintiff and others of the SRX roof.a known danger.  That failure was negligent.

30.31.

Despite the knowledge set forth in the paragraphs above, Defendant GM LLC and GM Corp. wantonly and recklessly continued to sell the vehicle to the consuming public and

15

~~maintained it in the stream of commerce without a warning, recall, or remedy of the vehicle's~~

~~defects.~~

~~31.~~

Defendant GM LLC's ~~and GM Corp.'s~~failure to warn of a known danger was itself also reckless and wanton conduct ~~constituted~~in disregard for the life and safety of the public, including Veronica Fox~~, and the lives and safety of the motoring public generally.  GM LLC's reckless and wanton conduct also manifests a conscious indifference to the foreseeable consequences of that conduct to motorists like Veronica Fox.~~.

32.

But for the ~~tortious conduct~~defects in the roof of ~~GM Corp.~~the 2004 Cadillac SRX and ~~GM LLC~~the failures to warn referenced herein, Plaintiff Veronica Fox would not have been seriously injured in this wreck.

33.

As a direct and proximate result of defects in the roof of the 2004 Cadillac SRX~~GM Corp.~~ and ~~GM LLC's tortious conduct~~the failures to warn referenced herein, Plaintiff Veronica Fox endured, continues to endure, and will endure ~~in the future~~ physical and emotional pain and suffering and disability for the rest of her life.

34.

No person other than Defendant GM LLC and Defendant AAB is liable for the injuries and damages sustained by Veronica Fox.

16

35.

## STATUTE OF REPOSE

(a)     The 2004 Cadillac SRX that caused Plaintiff's injuries was first sold more than 10 years prior to Plaintiff's injuries on November 12, 2013, and damages were proximately caused by the tortious acts and omissionsso this action is subject to the "limitation" stated in Georgia's "statute of repose. OCGA §51-1-11(b)(2).

(b)     However, the statute of repose four express exceptions to the "limitation" on liability provided in that statute. Three of those exceptions apply to this case.

1.     The statute of repose excepts from the ten-year "limitation" on liability actions "arising out of conduct which manifests a . . . reckless *or* wanton disregard for life of property."[10]

2.     The statute of repose also excepts from the ten-year "limitation" on liability a "manufacturer's" failure "to warn of a danger arising from use of the product once that danger becomes known to the manufacturer." OCGA §51-1-11(c).

(c)     The conduct of GM Corp., GM LLC,. in manufacturing and AAB. The tortious actsselling the subject product was both "reckless" and omissions"wanton."

(d)     The dangers of the weak roof in the 2004-2009 Cadillac SRX vehicles were well known to GM Corp., for all the reasons stated in the foregoing paragraphs. GM

---

[10] The statute also refers to "willful" conduct. Plaintiff does not contend that the application of the statute of repose is defeated by "willful" conduct.

Corp.~~GM LLC, and AAB that caused the personal injuries to Veronica Fox are described more fully~~ breached its duty to warn of those dangers, and that breach renders the "limitation" stated in the statute of repose unavailable to Defendant GM LLC as a defense to this action.

(e)      Because GM LLC denies it is a "manufacturer" of the subject product, the statute of repose is not available to it.

(f)      In the event GM LLC attempts to withdraw its denial that it is the "manufacturer" of the subject product and attempts to assert the "limitation" provided by the statute of repose, the dangers of the weak roof in the 2004-2009 Cadillac SRX were also well known to GM LLC after the bankruptcy sale, for all the reasons stated in the foregoing paragraphs.  GM LLC also breached its own duty to warn of those dangers, and that breach renders the statute of repose unavailable to GM LLC as a defense to this action.

(g)      GM LLC's failure to warn of a known danger, based on knowledge of and notice to GM LLC after the bankruptcy sale, was itself reckless and wanton.

(h)      For the foregoing reasons, the Georgia statute of repose does not bar Plaintiff's claims.

(i)      Plaintiff specifically ~~in the paragraphs below.~~requests that Special Interrogatories be addressed by the Court as fact-finder, as follows:

1.      "Do you find that GM Corp. acted with reckless or wanton disregard for human life in the design or sale of the 2004 GM Cadillac SRX and that such conduct was a proximate cause for which Plaintiff may recover?"

18

2.    "Do you find that GM Corp. had a duty to warn and failed to warn of a hazard associated with the use of the 2004 GM Cadillac SRX and that such failure to warn was a proximate cause for which the Plaintiff may recover?"[11]

3.    Do you find that GM LLC. acted with reckless or wanton disregard for human life in the design or sale of the 2004 GM Cadillac SRX and that such conduct was a proximate cause for which Plaintiff may recover?"

4.    "Do you find that GM LLC. had a duty to warn and failed to warn of a hazard associated with the use of the 2004 GM Cadillac SRX and that such failure to warn was a proximate cause for which the Plaintiff may recover?"

## III.  SPECIFIC COUNTS

## COUNT ONE

### Strict Liability of General Motors LLC

36.

Plaintiff incorporates as if re-alleged herein in full paragraphs 1 through 35 of this Complaint.

---

[11] Both those special interrogatories were submitted by the trial court to the jury in *Walden v. Chrysler*, a case tried in Decatur Co., Ga., Superior Court resulting in a verdict on April 2, 2015. FCA has appealed the final judgment in that case.  FCA has not claimed error with respect to those special interrogatories.  FCA has not claimed it is not liable for the breach by its predecessor, Chrysler Group LLC, of a duty to warn.

37.

GM Corp. is strictly liable to Plaintiff under O.C.G.A. § 51-1-11 and other applicable law because the risks inherent in the design of the roof structure in the 2004-2009 Cadillac SRX outweighed any utility of the chosen design, thereby rendering the vehicle defective, unreasonably dangerous, and not reasonably suited to the use for which it was intended.  The defects in the Cadillac SRX include, but are not limited to, the following:

    a.    The roof structure in the Cadillac SRX failed to offer proper protection to occupants like Veronica Fox during foreseeable rollover events;

    b.    The roof panel was made almost entirely of glass with a narrow rim of fiber glass;

    c.    The roof panel was attached to the vehicle by nothing but glue;

    d.    During the rollover, the entire roof panel came completely off the vehicle, leaving a gaping hole in the roof of the vehicle;

    e.    GM Corp. knew that the glued-on glass roof would not protect occupants in a rollover;

    f.    Despite this knowledge, GM Corp. did not design the remaining structure to protect occupants in a rollover;

    g.    GM Corp. designed the 2004-2009 Cadillac SRX with a strength-to-weight ratio of 1.9, which earned it the lowest possible rating for roof strength by the Insurance Institute for Highway Safety.  *See* Exhibit A3, IIHS Website, http://www.iihs.org/iihs/ratings/ratings-info/roof-strength-test (last visited May 19, 2016).  According to IIHS, a strength-to-weight

ratio of 1.9 is not "good," "acceptable," or even "marginal"—it is "**poor**."

*Id.*;

h.    GM Corp. did not adequately test the performance of the Cadillac SRX's

roof structure to determine whether prospective owners, users, and

occupants of the 2004 -2009.  Cadillac SRX would be exposed to an

unreasonable risk of physical harm during rollover events;

i.    GM Corp. knew, or should have known, from the testing that was

performed on the Cadillac SRX and other GM Corp. vehicles with the

same or similar roofs, from real world incidents, and from the laws of

physics, that the Cadillac SRX roof would fail, and GM Corp. knew that

serious injury to vehicle occupants could result;

j.    The Cadillac SRX does not contain, and is not accompanied by, warnings

to prospective owners, users, or occupants, including Plaintiff, either at the

time of sale or post-sale, of the unreasonable risk of physical harm

associated with the design of the roof structure of the 2004 -2009  Cadillac

SRX;

k.    The Cadillac SRX does not contain, and is not accompanied by, adequate

warnings to prospective owners, users, or occupants, including Plaintiff,

either at the time of sale or post sale, of the unreasonable risk of physical

harm associated with the design of the roof structure of the 2004 -2009

Cadillac SRX.; and

21

l.        At no point did GM Corp. ever notify car dealers (either new or used) of

the unreasonable risk of physical harm posed by design of the roof

structure of the 2004 - 2009 Cadillac SRX so that information could be

conveyed to potential and actual buyers of the 2004 - 2009 Cadillac SRX.

38.

Defendant GM LLC assumed liability for product liability claims against GM Corp. that

arose after the bankruptcy sale., as set forth in the Sale Agreement and rulings by the Bankruptcy

Court. Plaintiff's strict liability claims against GM Corp. are properly asserted against GM LLC.

39.

The defects in the 2004 Cadillac SRX, in concert with the acts and omissions of

Defendants GM LLC and AAB, proximately caused Plaintiff's injuries and damages.

40.

Defendants are liable for the injuries and damages Plaintiff suffered.

## COUNT TWO

### Negligence of General Motors LLC

41.

Plaintiff incorporates as if re-alleged herein in full paragraphs 1 through 40 of this

Complaint.

42.

GM Corp. owed a duty to the consuming public in general, and Plaintiff in particular, to

exercise reasonable care to design, test, manufacture, inspect, market, and distribute a product

free of unreasonable risk of harm to owners, users, and occupants.

22

43.

At the time GM Corp. manufactured, marketed, distributed, and sold the 2004 Cadillac SRX, GM Corp. could reasonably have foreseen and did, in fact, foresee the occurrence of rollover events such as the one described in this Complaint.

44.

GM Corp. breached its duty to exercise reasonable care as set forth in the paragraphs above.

45.

In concert with the acts and omissions of Defendant AAB and GM LLC, GM Corp.'sThe negligence of GM Corp. and AAB proximately caused Plaintiff's injuries and damages.

46.

Defendant GM LLC assumed liability for product liability claims against GM Corp. that arose after the bankruptcy sale., as set forth in the Sale Agreement and rulings by the Bankruptcy Court. Plaintiff's negligence claims against GM Corp. are properly asserted against GM LLC.

47.

Defendants are liable for the injuries and damages suffered by Plaintiff.

**<u>COUNT THREE</u>**

**General Motors LLC's Failure to Warn**

48.

Plaintiff incorporates as if re-alleged herein in full paragraphs 1 through 47 of this Complaint.

49.

~~GM LLC could reasonably have foreseen and~~ did, in fact, foresee the occurrence of rollover events such as the one described in this Complaint.

GM LLC did, in fact, foresee, based upon its own knowledge after the bankruptcy sale, the occurrence of rollover events such as the one described in this Complaint.

50.

Based upon its own knowledge after the bankruptcy sale, GM LLC owed a duty to the consuming public in general, and to Plaintiff in particular, to warn of the dangers arising from the roof design of the 2004-2009 Cadillac SRX.

51.

GM LLC knew after the bankruptcy sale about the danger of the roof of the 2004-2009 Cadillac SRX, but chose not to warn the public or Plaintiff about that danger.  That failure was negligence.

52.

~~In concert with the acts and omissions of Defendant AAB and GM Corp.,~~ GM LLC's failure to warn proximately caused Plaintiff's injuries and damages.

53.

~~Defendants are~~ Defendant GM LLC is liable for the injuries and damages Plaintiff suffered.

**COUNT FOUR**

**GM Corp.'s Failure to Warn**

24

54.

Plaintiff incorporates as if re-alleged herein in full paragraphs 1 through 53 of this Complaint.

55.

GM Corp. did, in fact, foresee the occurrence of rollover events such as the one described in this Complaint.

**COUNT FOUR**

**Punitive Damages**

54.

Plaintiff incorporates as if re-alleged herein in full paragraphs 1 through 53 of this Complaint.

55.

56.

GM Corp. knew about the danger of the roof of the 2004-2009 Cadillac SRX, but chose not to warn the public or Plaintiff about that danger.

57.

GM Corp. owed a duty to the consuming public in general, and to Plaintiff in particular, to warn of the dangers arising from the roof design of the 2004-2009 Cadillac SRX. GM Corp.'s failure to warn was negligence.

58.

GM Corp.'s failure to warn proximately caused Plaintiff's injuries and damages.

59.

GM LLC acted with conscious indifference to the safety and well-being of the public in failing to effectively repair or warn about the dangers of the 2004 SRX. GM LLC knew or should have known of those dangers. GM LLC purchased all GM Corp.'s books and records revealing the defective and dangerous design of the 2004 SRX roof. GM LLC employed the same engineers who designed and knew about the defective and dangerous design of the 2004 SRX roof. Despite knowing of the dangers posed by the 2004 SRX, GM LLC acted wantonly and with conscious indifference to the safety and well being of the public, as defined by O.C.G.A. § 51-12-5.1, in failing to repair or warn about the dangers of the 2004 SRX.

56.

Defendant GM LLC's own failure to warn, which occurred after the June 2009 bankruptcy sale, was so egregious that it rises to the level of conscious indifference to the safety and well-being of the public under O.C.G.A. § 51-12-5.1. Such misconduct warrants the imposition of punitive damages against GM LLC.

Defendant GM LLC assumed the liability for GM Corp.'s failure to warn, and is therefore liable for the injuries and damages Plaintiff suffered.

**COUNT FIVE**

Statute of Repose

57.

Plaintiff incorporates as if re-alleged herein in full paragraphs 1 through 56 of this Complaint.

26

58.

The willful and wanton misconduct by GM Corp. and GM LLC referenced in this Complaint precludes the application of any statute of repose as a defense.  Georgia's statute of repose does not bar claims when the defendant acted with willful and wanton disregard of the dangers of its conduct.

59.

GM LLC's failure to warn of the dangers referenced in this Complaint precludes the application of any statute of repose as a defense.  Georgia's statute of repose does not bar claims when the defendant failed to warn of the dangers which were known to or should have been known to the defendant.

### COUNT SIX

**Atlanta Auto Brokers, Inc.'s Failure to Warn**

60.

Plaintiff incorporates as if re-alleged herein in full paragraphs 1 through 59 of this Complaint.

61.

Defendant AAB sold the subject 2004 Cadillac SRX to Plaintiff Veronica Fox on or about September 27, 2013, less than two months before the wreck that is the subject of this Complaint.

27

62.

AAB is in the business of buying, selling, and inspecting cars.  It has been in that business for over 20 years.  As a result of this extensive experience, AAB has specialized in and has superior knowledge about cars, car repair and parts, vehicle safety, and vehicle quality.

63.

Before selling the vehicle to Plaintiff, Defendant AAB undertook to inspect the vehicle for Plaintiff's benefit.  It therefore had a duty to conduct its inspection non-negligently.

64.

Plaintiff originally sought to purchase a Chevrolet Suburban at AAB, but AAB's inspection had revealed the Suburban needed repairs.  AAB therefore discouraged Plaintiff from purchasing that vehicle.  AAB told Plaintiff that the Cadillac SRX had passed its inspection. AAB therefore encouraged her to choose the Cadillac SRX instead of the Suburban.  Plaintiff relied upon AAB's inspection and its statements about the inspection when she chose to purchase the subject Cadillac SRX.

65.

AAB also detailed the car before selling it Plaintiff.  AAB's inspection and detail of the vehicle either did or should have revealed the dangers of the Cadillac SRX roof, including but not limited to the fact that the roof was made almost entirely of glass and was attached by nothing but glue.  A lay person like Plaintiff would not know that the roof was made almost entirely of glass because the rear panels of glass were concealed from the inside by the headliner. Plaintiff, in fact, did not know that the roof was made almost entirely of glass until after the wreck occurred.

28

66.

Defendant AAB encouraged Plaintiff to purchase the Cadillac SRX because of the sunroof.  AAB repeatedly emphasized the sunroof as a selling feature because it extended to the second row of seats.  AAB's statements about the sunroof were incomplete and misleading because AAB did not inform Plaintiff that the glass actually extended almost the entire length of the vehicle and because the structure of the roof was itself a deadly design defect.

67.

AAB provided safety warnings to Plaintiff about the use of the sunroof, advising her not to allow passengers to "hang out of the sunroof."  AAB's warnings were incomplete and misleading because they suggested that the only danger associated with the roof was the danger of passengers being injured as a result of a decision to "hang out of the sunroof."

68.

Defendant AAB knew or should have known that the Cadillac SRX roof would not protect occupants in the event of a rollover wreck and therefore had a duty to warn Plaintiff about the dangers created by the Cadillac SRX roof.  AAB's actual or constructive knowledge was a result of its superior knowledge of vehicle parts, quality, and safety, generally—and the Cadillac SRX's parts, quality, and safety, specifically; its inspection of the vehicle; and its knowledge about the Cadillac SRX roof and sunroof.

69.

Defendant AAB knew or reasonably should have known that the Cadillac SRX roof was dangerous and could result in serious or catastrophic injury or death in foreseeable rollover wrecks.  Despite that knowledge, AAB failed to warn Plaintiff of the danger.  That failure was

29

negligence.

70.

Plaintiff would not have purchased the Cadillac SRX had she been informed of and known about the dangers of the roof.

71.

In concert with the acts and omissions of GM Corp. and GM LLC, Defendant AAB's failure to warn proximately caused Plaintiff's injuries and damages.

72.

Defendant AAB is liable for the injuries and damages Plaintiff suffered.

**DAMAGES & PRAYER FOR RELIEF**

73.

Plaintiff incorporates as if re-alleged herein in full paragraphs 1 through 72 of this Complaint.

74.

As a direct result of the defective condition of the 2004 SRX, Cadillac SRXGM Corp.'s negligence, GM LLC's failure to remedy or give appropriate warnings about the vehicle, and AAB's failure to warn about the vehicle, Plaintiff Veronica Fox has suffered severe and permanent personal injuries, including quadriplegia.

75.

Plaintiff Veronica Fox seeks damages from Defendants in an amount to be determined by the enlightened conscience of the juryCourt as fact-finder and as demonstrated by the evidence,

30

for all elements of compensatory damages allowed by Georgia law. Plaintiff's injuries are

permanent, and damages sought include the following:

a.      all components of the mental and physical pain and suffering Veronica Fox

endured upon impact and up until the present time;

b.      all components of the mental and physical pain and suffering Veronica Fox will

endure in the future;

c.      past and future loss of enjoyment of life; and

d.      all past and future economic losses, including lost income, medical bills, medical

expenses, other necessary expenses for the care and treatment of Veronica Fox,

including household services.

e.      Punitive damages against Defendant GM LLC, pursuant to O.C.G.A. § 51-12-5.1,

in an amount to be determined by the enlightened conscience of the jury to be

sufficient to punish GM LLC for the harm caused to them and to deter GM LLC

from similar misconduct.

76.

WHEREFORE, Plaintiff prays for the following relief:

a.      a.      That summons issue and service be perfected upon Defendants

requiring them to appear before this Court and answer this Complaint for

Damages;

b.      b.      That That the Special Interrogatories referenced in ¶35(i) be addressed by

the Court as fact-finder;

b.      That final judgment be entered against Defendants;

31

c.      That Plaintiff Veronica Fox recovers all elements of compensatory damages,

including general and special damages, against Defendants;

d.      ~~That Plaintiff Veronica Fox recovers punitive damages against Defendant GM~~

~~LLC;~~

e.      That all costs be cast against Defendants; and

f.      That Plaintiff has such other and further relief as this Court deems just and proper.

This ~~20th~~23rd day of ~~May~~June, 2016.

Respectfully submitted,

BUTLER WOOTEN ~~& CHEELEY~~ & PEAK LLP

BY: _____

     JAMES E. BUTLER, JR.
      Georgia Bar No.099625
     TEDRA L. CANNELLA
      Georgia Bar No. 881085
     ROBERT H. SNYDER
      Georgia Bar No. 404522

2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700

KENNETH S. NUGENT PC

BY: _____

     WILLIAM G. HAMMILL
      Georgia Bar No. 943334
     *Signed with Express Permission*
     *~~by Tedra C. Hobson~~*
     *By Robert H. Snyder*

4227 Pleasant Hill Road
Building 11, Suite 300
Duluth, GA 30096

32

1.    (404) 885-1983

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel of record with a copy of the foregoing pleading by depositing it in the United States Mail with adequate postage affixed thereon and addressed as follows:

Kevin J. Malloy, Esq.
Bowman and Brooke LLP
1441 Main Street, Suite 1200
Columbia, SC 29201

Thomas M. Klein, Esq.
C. Megan Fischer, Esq.
Bowman and Brooke LLP
2901 N. Central Avenue, Suite 1600
Phoenix, AZ 85012

C. Bradford Marsh, Esq.
Swift, Currie, McGhee & Hiers, LLP
1355 Peachtree St., N.E., Suite 300
Atlanta, GA 30309

Carrie L. Christie, Esq.
Robert H. Burke, Esq.
Rutherford & Christie LLP
225 Peachtree Street NE
South Tower, Suite 1750
Atlanta, GA 30303

William T. Casey, Jr., Esq.
Erica L. Morton, Esq.
Hicks, Casey & Morton, P.C.
136 North Fairground Street, N.E.
Marietta, GA 30060-1533

This ~~20th~~23rd day of ~~May~~June, 2016.

BUTLER WOOTEN ~~CHEELEY~~ & PEAK LLP

BY: _____
JAMES E. BUTLER, JR.
 Georgia Bar No. 099625
TEDRA L. CANNELLA
 Georgia Bar No. 881085
ROBERT H. SNYDER
 Georgia Bar No. 404522