**OBJECTION DEADLINE: July 8, 2016 at 4:00 p.m. (Eastern Time)**
**HEARING DATE AND TIME:  July 18, 2016 at 10:00 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **Case No.:  09-50026 (MG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------------x

**MOTION BY GENERAL MOTORS LLC PURSUANT TO**
**11 U.S.C. §§ 105 AND 363 TO ENFORCE THE BANKRUPTCY**
**COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION, AND**
**THE RULINGS IN CONNECTION THEREWITH, WITH RESPECT**
<u>**TO PLAINTIFFS IDENTIFIED ON SCHEDULE "1" ATTACHED HERETO**</u>

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ............................................................................................... 1

**BACKGROUND FACTS** ....................................................................................................... 4

    A.    Events Leading to the Entry of the November
            2015 Decision and the December 2015 Judgment.................................................. 5

    B.    The November 2015 Decision and December 2015 Judgment ............................. 9

    C.    The PI Lawsuits .................................................................................................. 11

**BASIS FOR RELIEF** .......................................................................................................... 13

    A.    The PI Plaintiffs Are Collaterally Estopped From
            Re-Litigating Issues Previously Decided by the Bankruptcy Court .................... 13

    B.    The PI Plaintiffs Cannot Assert Independent Claims Against New GM.............. 14

    C.    "Duty to Warn" Claims Asserted As Independent
            Claims Are Barred By the December 2015 Judgment.......................................... 15

    D.    Fraud-Based Claims and Claims Based on Violations
            Of Consumer Protection Acts Are Not Assumed Liabilities ............................... 15

    E.    Claims Based On A Failure To Recall Or
            Retrofit a Vehicle, Are Not Assumed Liabilities.................................................. 16

    F.    Claims Based On A Failure to Identify Defects
            Are Not Assumed Liabilities ............................................................................... 17

    G.    The PI Plaintiffs Cannot Seek Punitive Damages Against New GM ................... 17

            1.    As PI Plaintiffs Cannot Assert Independent Claims Against
                   New GM, They Cannot Seek Punitive Damages Against
                   New GM on Such Claims ............................................................. 17

            2.    PI Plaintiffs Cannot Seek Punitive Damages
                   Against New GM In Connection With Assumed Liabilities ........ 18

    H.    The PI Pleadings Contain Allegations That
            Are Expressly Barred by the December 2015 Judgment ..................................... 19

**NOTICE**.............................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ......................................................................... 3, 13

*In re Lehman Bros. Holdings, Inc.,*
   No. 15-149-BR, 2016 WL 1212079 (2d Cir. Mar. 29, 2016) .................................................... 3

*In re Motors Liquidation Co.,*
   513 B.R. 467 (Bankr. S.D.N.Y. 2014) ..................................................................................... 13

*In re Motors Liquidation Co.,*
   541 B.R. 104 (Bankr. S.D.N.Y 2015) ........................................................................... 3, 15, 19

*Marvel Characters, Inc. v. Simon*,
   310 F.3d 280 (2d Cir. 2002) .................................................................................................... 14

**Statutes**

**11 U.S.C. § 105** .......................................................................................................................... 1

**11 U.S.C. § 363** .......................................................................................................................... 1

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this motion ("**Second June 2016 Motion to Enforce**") pursuant to 11 U.S.C. §§ 105 and 363, to enforce the Bankruptcy Court's Order entered on July 5, 2009 ("**Sale Order and Injunction**") approving the sale of assets from Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**") to New GM,[1] and the decisions and judgments entered by the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**" or "**Court**") in connection therewith, by directing plaintiffs ("**PI Plaintiffs**") identified on **Schedule "1"** attached hereto (and their counsel) to amend their pleadings ("**PI Pleadings**") filed in personal injury lawsuits ("**PI Lawsuits**") commenced against New GM so that they comply with the Sale Order and Injunction and the other Bankruptcy Court rulings.

## PRELIMINARY STATEMENT

1.    The continued prosecution of the PI Lawsuits, in their present form, violate the Sale Order and Injunction, and the other applicable Bankruptcy Court rulings.[2] The PI Plaintiffs are Post-Closing Accident Plaintiffs without the Ignition Switch Defect.[3] To be clear, New GM is not seeking any relief in this Second June 2016 Motion to Enforce against PI Plaintiffs to the

---

[1]    The full title of the Sale Order and Injunction is *Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief*. A copy of the Sale Order and Injunction, and the accompanying Sale Agreement (as defined herein), is contained in the accompanying compendium of exhibits as **Exhibit "A."**

[2]    After the entry of the December 2015 Judgment, New GM has filed other motions to enforce with this Court. *See* (i) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Bankruptcy Courts July 5, 2009 Sale Order and Injunction, and the Bankruptcy Courts Rulings in Connection Therewith (Pilgrim Putative Class Action)*, filed January 19, 2016 [Dkt. No. 13585], and (ii) *Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Courts July 5, 2009 Sale Order And Injunction, and The Rulings in Connection Therewith (Veronica Alaine Fox, Claudia Lemus, Tammie Chapman and Constance Haynes-Tibbetts)*, filed June 1, 2016 [Dkt. No. 13634] ("**June 2016 Motion to Enforce**"). A copy of the June 2016 Motion to Enforce, without Exhibits, is contained in the compendium of exhibits as **Exhibit "B."**

[3]    Capitalized terms not otherwise defined in this Preliminary Statement are defined in (i) later sections of this Second June 2016 Motion to Enforce, or (ii) in the "Background Facts" section of the June 2016 Motion to Enforce.

extent they are asserting assumed Product Liabilities (in the form of, *inter alia*, negligence, strict liability and/or breach of warranty claims predicated on Old GM's conduct) under state law based on post-363 Sale accidents involving Old GM vehicles.[4]

2.      Significantly, however, the PI Plaintiffs are also asserting purported Independent Claims[5] against New GM, either as duty to warn claims, failure to recall and/or identify defect claims, fraud claims and/or consumer protection act claims.

3.      The Bankruptcy Court held that PI Plaintiffs can seek compensatory damages, but not punitive damages, with respect to assumed Product Liabilities.[6]  The Bankruptcy Court separately held that (a) Post-Closing Accident Plaintiffs without the Ignition Switch Defect cannot assert Independent Claims against New GM because they have not established a due process violation with respect to the Sale Order and Injunction, and, therefore, the unmodified Sale Order and Injunction applied to them, and (b) under the unmodified Sale Order and Injunction, New GM purchased assets free and clear of all claims held by Post-Closing Accident Plaintiffs without the Ignition Switch Defect, other than Assumed Liabilities.

4.      This dispute is primarily about the PI Plaintiffs' attempts to carve out a path for punitive damages.  The only way to obtain punitive damages against New GM is to circumvent the Bankruptcy Court's clear ruling prohibiting punitive damages for Assumed Liabilities by

---

[4]    New GM disputes that it is liable to any of the PI Plaintiffs for any claims asserted in the PI Pleadings.

[5]    Independent Claims cannot be based on Assumed Liabilities, or Old GM conduct, or obligations/duties owed by Old GM to Old GM Vehicle owners. As such, when reviewing the merits of an Independent Claim, New GM's legal obligation/duty, if any, must be based on it being a non-manufacturer/non-seller of the Old GM vehicle, and a non-successor-in-interest to Old GM's obligations to the Old GM vehicle owner.

[6]    *See* Judgment, dated December 4, 2015 ("**December 2015 Judgment**"), ¶ 6.  A copy of the December 2015 Judgment is contained in the compendium of exhibits as **Exhibit "C."**

asserting the causes of action in dispute as Independent Claims.  But the December 2015

Judgment is also explicit that the PI Plaintiffs may not assert Independent Claims.[7]

5.      In addition, many of the PI Plaintiffs are asserting allegations in their PI Pleadings

that are expressly prohibited by the Decision entered by the Bankruptcy Court on November 9,

2015 ("**November 2015 Decision**")[8] and/or the December 2015 Judgment.

6.      New GM first notified each of the PI Plaintiffs, by letter, of their failure to

comply with the Sale Order and Injunction and other Bankruptcy Court rulings in

August/September 2015 ("**New GM 2015 Letters**").  Following the December 2015 Judgment,

New GM again notified each of the PI Plaintiffs of their failure to comply with the controlling

rulings of the Bankruptcy Court.  The PI Plaintiffs have each refused to accept (either in whole

or in part) the rulings set forth in the November 2015 Decision and December 2015 Judgment

(and other Bankruptcy Court rulings) and have refused to appropriately amend the PI Pleadings.

7.      The law is settled that a party subject to a Court's injunction does not have the

option simply to proceed in another court as if the injunction does not exist.  As the United States

Supreme Court explained in *Celotex Corp. v. Edwards*, the rule is "well-established" that

"'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey

that decree until it is modified or reversed, even if they have proper grounds to object to the

order.'"  514 U.S. 300, 306 (1995).  The PI Plaintiffs' decision to go forward in non-bankruptcy

courts as if the Bankruptcy Court's rulings do not apply to them are clear violations of the Sale

Order and Injunction and the other controlling Bankruptcy Court rulings.[9]

---

[7]      In reality, the so-called Independent Claims that PI Plaintiffs have asserted are not Independent Claims anyway instead, they are either Assumed Liabilities or Retained Liabilities.

[8]      The November 2015 Decision is published as *In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y 2015).

[9]      New GM reserves all of its rights in connection with improper actions taken by the PI Plaintiffs.  *See In re Lehman Bros. Holdings, Inc.*, No. 15-149-BR, 2016 WL 1212079 (2d Cir. Mar. 29, 2016) (upholding a

8.      To put this Second June 2016 Motion to Enforce in proper context, the PI Plaintiffs are violating the injunction contained in the Bankruptcy Court's Sale Order and Injunction.   The PI Plaintiffs have ignored demand letters notifying them of their non-compliance with the Sale Order and Injunction.   The PI Plaintiffs were notified, in advance, of the proceedings that resulted in the November 2015 Decision and the December 2015 Judgment; those rulings (which were never appealed by the PI Plaintiffs) definitively resolved the issues in dispute as discussed herein.   Thus, this Second June 2016 Motion to Enforce is made not to re-litigate issues already resolved by the Bankruptcy Court, but to enforce, on collateral estoppel grounds, such final and non-appealable rulings against PI Plaintiffs.   Simply put, the PI Plaintiffs are not entitled to have a "second bite of the apple," or to use their violation of the November 2015 Decision and the December 2015 Judgment as a back door opportunity to re-litigate issues, or to create new appeal opportunities, for matters that have already been finally determined by this Court.

9.      Unlike the PI Plaintiffs, the clear majority of Post-Closing Accident Plaintiffs without the Ignition Switch Defect has complied with the Bankruptcy Court rulings, and are not flouting them in other courts.

10.      As further explained below, this Court should direct the PI Plaintiffs to amend the PI Pleadings so that they are in full compliance with the controlling Bankruptcy Court rulings.[10]

## **BACKGROUND FACTS**

11.      Much of the relevant background facts for this Second June 2016 Motion to Enforce are contained in the June 2016 Motion to Enforce previously filed with this Court, and

---

bankruptcy court order that imposed sanctions on a plaintiff who violated a bankruptcy sale order by commencing and continuing to prosecute a lawsuit against the purchaser of a debtor's assets where the purchaser bought the debtor's assets free and clear of claims and liens).

[10]      Pending the hearing on this Second June 2016 Motion to Enforce, New GM will continue to work with counsel for the PI Plaintiffs to address and resolve as many bankruptcy-related issues as possible.

such background facts, where relevant, are incorporated herein by reference.  Additional relevant

background facts are set forth below.

**A.      Events Leading to the Entry of the November
2015 Decision and the December 2015 Judgment**

12.      On August 19, 2015, the Bankruptcy Court entered its Case Management Order

[Dkt. No. 13383] ("**August 2015 CMO**"),[11] explicitly asking the parties to inform the Court if

"any other matters . . . need to be addressed by this Court" in connection with the pleadings filed

after the entry of the Bankruptcy Court's June 1, 2015 Judgment ("**June 2015 Judgment**").[12]

August 2015 CMO, ¶ 1(g).  Importantly, the Bankruptcy Court stated that it was "in particular

need of information with respect to the ***Non-Ignition Switch Plaintiffs' claims (whether for***

***injury or death or economic loss***[[13]]), and pending and future matters affecting them, but so long

as such claims are satisfactorily covered in the letter(s) to come, they can be addressed in

connection with other claims to the extent appropriate."  *Id.* ¶ 2 (emphasis added).  Thus, as part

of the proceedings leading to the November 2015 Decision and the December 2015 Judgment,

the Bankruptcy Court intended to resolve all bankruptcy-related issues associated with the

lawsuits filed by Post-Closing Accident Plaintiffs (including Old GM Vehicle Owners without

the Ignition Switch Defect such as the PI Plaintiffs).

13.      In response to the August 2015 CMO, New GM filed a letter with the Bankruptcy

Court, dated August 26, 2015 [Dkt. No. 13390] ("**New GM August 26 Letter**"),[14] which

informed the Bankruptcy Court that it recently sent out demand letters to plaintiffs involved in

---

[11]      A copy of the August 2015 CMO is contained in the compendium of exhibits as **Exhibit "D."**

[12]      A copy of the June 2015 Judgment is contained in the compendium of exhibits as **Exhibit "E."**

[13]      In these August proceedings, the parties and the Bankruptcy Court used the term Non-Ignition Switch Plaintiffs
as shorthand to include both Post-Closing Accident Plaintiffs without the Ignition Switch Defect, and Old GM
Vehicle Owners without the Ignition Switch Defect asserting economic losses.

[14]      A copy of the New GM August 26 Letter is contained in the compendium of exhibits as **Exhibit "F."**

other lawsuits pursuant to the procedures set forth in the June 2015 Judgment.  Attached to the

New GM August 26 Letter was an exhibit which listed the lawsuits where a demand letter was

sent.

14.    An issue identified by New GM to be addressed by the Bankruptcy Court was

whether "requests for punitive/special damages against New GM based in any way on Old GM

conduct, including but not limited to post-363 Sale accidents of Old GM vehicles" were barred

by the Bankruptcy Court's rulings.  *See* New GM August 26 Letter, at 4.  The punitive damage

issue specifically referred to post-363 Sale accidents and resulting lawsuits involving Old GM

Vehicle Owners without the Ignition Switch Defect.  In the end, the Bankruptcy Court resolved

the punitive damage issue in the November 2015 Decision and the December 2015 Judgment on

behalf of all plaintiffs, including the PI Plaintiffs.

15.    Another issue identified in the New GM August 26 Letter to be addressed by the

Bankruptcy Court was whether certain causes of action asserted by plaintiffs were assumed by

New GM when it assumed Product Liability claims under the Sale Agreement.  *See* New GM

August 26 Letter, at 5.  The Bankruptcy Court agreed with New GM's suggestion, and the

November 2015 Decision and the December 2015 Judgment made numerous rulings in this

regard.

16.    Moreover, in the New GM August 26 Letter, New GM specifically stated that it

believes that the issues raised by these lawsuits can be resolved at one time in the
context of the procedures described herein.  It should be noted that many of the
demand letters were recently sent out by New GM so that affected parties would
be bound by Your Honor's rulings on the issues to be determined as set forth in
this letter. In other words, affected parties would be subject to principles of
collateral estoppel for these issues and not simply stare decisis.

*Id.* at 2.  New GM also reserved "the right to send out demand letters on any lawsuit (currently pending against New GM or that will be filed in the future) if it believes such lawsuit violates the Judgment, April 15 Decision (as herein defined) or the Sale Order and Injunction."  *Id.* at 2 n. 2.

17.     At the August 31, 2015 hearing held in connection with the August CMO, Edward Weisfelner from Brown Rudnick, Lead Bankruptcy Counsel, raised certain issues where there was not agreement among the parties, including those concerning Old GM Vehicle Owners without the Ignition Switch Defect.  He stated:

> if a non-ignition switch defect claimant, whether would start an independent claim against New GM, would that non-ignition switch plaintiff be successful, vis-a-vis Your Honor as a gatekeeper.  New GM's contention is that, aha, wait a second, the non-ignition switch plaintiff cannot assert an independent claim against New GM unless and until that non-ignition switch plaintiff demonstrates that back in '09, its due process rights were violated.  Because Your Honor only determined that independent claims were permissible having first determined that the ignition switch plaintiffs' due process rights were violated with prejudice because they didn't have an opportunity to argue over breadth of the injunction.

Transcript of Hearing held August 31, 2015 ("**8/31/15 Hr'g Tr.**"), at 37:12-23.[15]

18.     After raising this issue, the Bankruptcy Court asked if Mr. Weisfelner was "now going to be kind of designated counsel for non-ignition switch plaintiffs . . . ." *Id.*, at 38:9-10. The following colloquy then took place:

> MR. WEISFELNER: ". . . yes, we perceive ourselves as having taken the mantel of preserving and protecting the rights of non-ignition switch plaintiffs in this court."

> THE COURT: So I don't have to worry about them not having been heard if I listen to you.

> MR. WEISFELNER: I think that's a correct conclusion, especially in light of Your Honor's procedures in the judgment itself.

---

[15]   A copy of the relevant portions of the August 31, 2015 Transcript is contained in the compendium of exhibits as **Exhibit "G."**

*Id.* at 38:17-24.   Later on at the hearing, the Bankruptcy Court noted that "the non-ignition switch plaintiffs' inability or inaction to have yet established a due process violation to give them the benefits that the remainder of your constituency got is, in my view, a big issue." 8/31/15 Hr'g Tr., at 80:21-25.   While the Bankruptcy Court noted that he had not decided this issue, it was nonetheless an issue that needed to be addressed with finality.  Mr. Weisfelner responded, saying that "[t]o the extent that that remains an issue, then in term of triaging things, it seems to me that we need to get that issue teed up quickly because to the extent that people, either New GM or us, depending on who loses, needs to appeal that decision, they ought to get started."  Id. at  81:22-82:2.[16]

19.    The Bankruptcy Court entered the Scheduling Order on September 3, 2015 [Dkt. No. 13416] ("**September 3 Scheduling Order**"),[17] which set forth a briefing schedule to address, among other things, (i) whether plaintiffs may request punitive damages against New GM with respect to Old GM vehicles, and (ii) whether certain causes of action or allegations in complaints filed against New GM relating to Old GM vehicles were barred by the Sale Order and Injunction.

20.    The September 3 Scheduling Order also provided that New GM could serve that Order on parties who previously received demand letters with the following Court-approved cover note:

> General Motors LLC ("New GM") previously served on you a demand letter ("Demand Letter") in connection with a lawsuit commenced by you against New GM which set forth certain deadlines for filings pleadings with the Bankruptcy Court (as defined in the Demand Letter). The attachment is a Scheduling Order entered by the Bankruptcy Court on September 3, 2015 ("Scheduling Order").

---

[16]    The concern raised by Mr. Weisfelner about teeing up an appeal related to coordinating the already pending appeal of the April 2015 Decision and the June 2015 Judgment; briefs were yet to be filed in the Second Circuit when that statement was made.

[17]    A copy of the September 3 Scheduling Order is contained in the compendium of exhibits as **Exhibit "H."**

Please review the Scheduling Order as it modifies the time periods set forth in the Demand Letter for filing certain pleadings with the Bankruptcy Court, including without limitation, the 17 business days to respond to the Demand Letter. If you have any objection to the procedures set forth in the Scheduling Order, you must file such objection in writing with the Bankruptcy Court within three (3) business days of receipt of this notice ("Objection"). ***Otherwise, you will be bound by the terms of the Scheduling Order and the determinations made pursuant thereto***. If you believe there are issues that should be presented to the Court relating to your lawsuit that will not otherwise be briefed and argued in accordance with the Scheduling Order, you must set forth that position, with specificity in your Objection. The Court will decide whether a hearing is required with respect to any Objection timely filed and, if so, will, promptly notify the parties involved.

September 3 Scheduling Order, at 4 (emphasis added).

21.    Moreover, the September 3 Scheduling Order provided:

nothing in this Order is intended to nor shall preclude any other plaintiff's counsel (or pro se plaintiff), affected by the issues being resolved by this Court, from taking a position in connection with any such matters; provided, however, that such affected other plaintiffs' counsel who wishes to file a separate pleading with respect such matter(s) shall timely file a letter with the Court seeking permission to do so.

*Id.* at 5.

22.    To facilitate the Bankruptcy Court's review of New GM's arguments that improper claims were being asserted against it by plaintiffs (including the Post-Closing Accident Plaintiffs without the Ignition Switch Defect), and that improper allegations were being made in complaints filed against it, New GM suggested that representative complaints be filed, and this approach was adopted by the Bankruptcy Court in the September 3 Scheduling Order. *See* September 3 Scheduling Order, at p.5.

**B.    The November 2015 Decision and December 2015 Judgment**

23.    On November 9, 2015, the Bankruptcy Court entered the November 2015 Decision with respect to the matters identified in the September 3 Scheduling Order. On December 4, 2015, the Bankruptcy Court entered the December 2015 Judgment, memorializing the rulings set forth in the November 2015 Decision.

24.    For claims asserted by Post-Closing Accident Plaintiffs without the Ignition

Switch Defect (like the PI Plaintiffs), the December 2015 Judgment conclusively held as follows:

> plaintiffs whose claims arise in connection with vehicles **without** the Ignition
> Switch Defect . . . **are not entitled to assert Independent Claims** against New GM
> with respect to vehicles manufactured and first sold by Old GM (an "Old GM
> Vehicle"). To the extent such Plaintiffs have attempted to assert an Independent
> Claim against New GM in a pre-existing lawsuit with respect to an Old GM
> Vehicle, **such claims are proscribed by the Sale Order, April Decision and the
> Judgment dated June 1, 2015** [Dkt. No. 13177].

December 2015 Judgment, ¶ 14 (emphasis added).

25.    The December 2015 Judgment also specifically found that:

> New GM **did not contractually assume liability for punitive damages** from Old GM. Nor
> is New GM liable for punitive damages based on Old GM conduct under any other
> theories, such as by operation of law. Therefore, punitive damages may not be premised
> on Old GM knowledge or conduct, or anything else that took place at Old GM.
>
> A claim for punitive damages with respect to a post-Sale accident **involving vehicles
> manufactured by Old GM with the Ignition Switch Defect may be asserted against New
> GM to the extent—but only to the extent—it relates to an otherwise viable Independent
> Claim and is based solely on New GM conduct or knowledge** . . . .

December 2015 Judgment, ¶¶ 6-7 (emphasis added).    Accordingly, Post-Closing Accident

Plaintiffs without the Ignition Switch Defect cannot assert Independent Claims against New GM

(with respect to an Old GM Vehicle), and thus cannot seek or obtain punitive damages for such

Claims.

26.    As discussed in the Argument section below, the November 2015 Decision and

December 2015 Judgment also addressed plaintiffs' ability to assert various claims against New

GM, and their ability to make certain allegations against New GM.

27.    The December 2015 Judgment further provides that, except as modified by the

June 2015 Judgment and April 2015 Decision, the Sale Order and Injunction remained

"unmodified and in full force and effect, including, without limitation, paragraph AA of the Sale

Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for the actions or inactions of Old GM." *Id.* ¶ 39.

28.    The December 2015 Judgment was appealed but not with respect to the Bankruptcy Court's rulings (i) regarding the inability of Old GM Vehicle Owners without the Ignition Switch Defect to assert Independent Claims, (ii) limiting punitive damages requests, and (iii) regarding improper allegations.[18]

29.    Unlike the PI Plaintiffs, as a result of the December 2015 Judgment, Lead Counsel for the plaintiffs in the Multidistrict Litigation ("**MDL**") (who litigated the issues resolved by the December 2015 Judgment in the Bankruptcy Court) amended their complaint in MDL-2543 pending before United States District Judge Furman to remove all Independent Claims relating to Old GM Vehicle Owners without the Ignition Switch Defect.  Clearly, Lead Counsel understood the requirements of the December 2015 Judgment, and unlike the PI Plaintiffs, modified their complaint as mandated by the controlling Bankruptcy Court rulings.

**C.    The PI Lawsuits**

30.    Each of the PI Lawsuits concerns a post-363 Sale accident involving an Old GM Vehicle that is not subject to the first three ignition switch recalls issued in February/March 2014 by New GM ("**IS Recalls**").   As noted, each of the PI Plaintiffs can assert claims against New GM that fall within the definition of assumed Product Liabilities.  However, each of the PI Pleadings also contain allegations, claims and/or punitive damages requests that are barred by the Bankruptcy Court's rulings.  Schedule "1" attached hereto sets forth: (i) each PI Plaintiff's names; (ii) the subject vehicle at issue in the PI Lawsuit; (iii) whether the PI Pleading contains allegations that are barred by the Bankruptcy Court's rulings and, if so, which allegations in the

---

[18]    Copies the three statement of issues on appeal with respect to the December 2015 Judgment are contained in the compendium of exhibits, collectively, as **Exhibit "I."**

PI Pleading are barred, with citations to paragraph number(s) in the PI Pleading; (iv) whether the PI Pleading contains claims that are barred by the Bankruptcy Court's rulings and, if so, which claims in the PI Pleading are barred, with citations to paragraph number(s) in the PI Pleading; and (v) whether the PI Plaintiff is seeking punitive damages against New GM.

31.      As also noted, in the New GM 2015 Letters, each of the PI Plaintiffs were notified of the proceedings before the November 2015 Decision and the December 2015 Judgment. Certain PI Plaintiffs responded to the New GM 2015 Letters; others did not.  Regardless of whether a response was received or not, each of the PI Plaintiffs were served with pleadings filed by New GM in connection with the issues set forth in the September 3 Scheduling Order.[19] Except for the Moore Plaintiffs, none of the PI Plaintiffs filed a pleading in response to the September 3 Scheduling Order or the issues raised therein.  Moreover, none of the PI Plaintiffs appeared at the hearing or, as noted, appealed the December 2015 Judgment.

32.      The PI Plaintiffs have not complied with the November 2015 Decision or the December 2015 Judgment.  In May, 2016, New GM sent each of the PI Plaintiffs another letter ("**New GM 2016 Letters**"), explaining that the PI Pleadings contained certain allegations, claims and/or damage requests that violate the Bankruptcy Court rulings.  Despite correspondence and conversations with many of the PI Plaintiffs, and efforts to resolve the issues raised in the New GM 2016 Letters, the PI Pleadings have not been amended to fully comply with the Bankruptcy Court rulings and continue to violate those rulings.

33.      The PI Plaintiffs' refusal to comply with the controlling Bankruptcy Court rulings necessitated this Second June 2016 Motion to Enforce.

---

[19]    Copies of relevant affidavits of service are contained in the compendium of exhibits as **Exhibit "J."**

## BASIS FOR RELIEF

34.     The PI Plaintiffs do not have the choice of simply ignoring the Bankruptcy Court's Sale Order and Injunction and its multiple rulings addressing its effect on lawsuits filed against New GM.  As the Supreme Court held in *Celotex*:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done. . . .  Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law.

514 U.S. at 313; *see also In re Motors Liquidation Co*., 513 B.R. 467, 478 (Bankr. S.D.N.Y. 2014) (citing to *Celotex*).  These settled principles bind the PI Plaintiffs.  They are subject to the Sale Order and Injunction and the Bankruptcy Court's other rulings, and are required to comply with them.

**A.     The PI Plaintiffs Are Collaterally Estopped From
Re-Litigating Issues Previously Decided by the Bankruptcy Court**

35.     New GM timely served counsel for the PI Plaintiffs with the September 3 Scheduling Order and the Court-approved note (as well as pleadings filed by New GM in connection therewith).   The Court-approved note clearly provided that the PI Plaintiffs were required to file any objections to the procedures set forth in the September 3 Scheduling Order. "Otherwise, [they would] *be bound by the terms of the Scheduling Order and the determinations made pursuant thereto*."  September 3 Scheduling Order, at 4 (emphasis added). While the PI Plaintiffs were not *required* to participate in the proceedings leading up to the November 2015 Decision and the December 2015 Judgment, they were put on notice that if they did not, they would be bound by the Bankruptcy Court's rulings.  *See* September 3 Scheduling Order, at 4.

36.    Collateral estoppel applies when the following requirements are met: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002).  Here, all of the collateral estoppel requirements are met to bind the PI Plaintiffs to the November 2015 Decision and the December 2015 Judgment.

**B.    The PI Plaintiffs Cannot Assert Independent Claims Against New GM**

37.    None of the PI Plaintiffs are "Ignition Switch Plaintiffs."  The June 2015 Judgment defines the term "Ignition Switch Plaintiffs" as those plaintiffs who assert claims against New GM based on the IS Recalls.  *See* June 2015 Judgment, at 1 n.1.  Each of the PI Lawsuits relates to a vehicle that is not subject to the IS Recalls, and the alleged issue with the vehicle has nothing to do with the ignition switch identified in the IS Recalls.

38.    Under the Bankruptcy Court's rulings, only Ignition Switch Plaintiffs can assert "Independent Claims" against New GM.  The Bankruptcy Court defined the term "Independent Claims" as "claims or causes of action ***asserted by Ignition Switch Plaintiffs*** against New GM (whether or not involving Old GM Vehicles) that are based solely on New GM's own, independent, post-Closing acts or conduct."  June 2015 Judgment, ¶ 4 (emphasis added).

39.    The December 2015 Judgment also makes clear that Post-Closing Accident Plaintiffs without the Ignition Switch Defect—like the PI Plaintiffs—cannot assert Independent Claims against New GM.  *See* December 2015 Judgment, ¶ 14.  Accordingly, the PI Plaintiffs are prohibited from asserting (except for Assumed Liabilities) any claims against New GM, including Independent Claims.

**C.     "Duty to Warn" Claims Asserted As Independent
Claims Are Barred By the December 2015 Judgment**

40.     The November 2015 Decision and December 2015 Judgment also addressed a

plaintiff's ability to assert a "duty to warn" claim against New GM, finding that in a case brought

by a Post-Closing Accident Plaintiff without the Ignition Switch Defect, a duty to warn claim

could only be brought as an Assumed Liability (assuming such claim is viable under applicable

non-bankruptcy law), but not as an Independent Claim, because Independent Claims can only be

brought by Ignition Switch Plaintiffs.  *See Motors Liquidation Co.*, 541 B.R. at 128-29;

December 2015 Judgment, ¶ 20.  The PI Plaintiffs that appear to assert duty to warn claims as

Independent Claims are:  (i) Barbot, (ii) Black, (iii) Boker, (iv) Minard, (v) J.W. Moore, (vi) J.R.

Moore, and (vii) Pitterman.  Their PI Pleadings should be amended accordingly to remove any

such claims.

**D.     Fraud-Based Claims and Claims Based on Violations
Of Consumer Protection Acts Are Not Assumed Liabilities**

41.     Paragraph 19 of the December 2015 Judgment holds as follows:

Claims with respect to Old GM Vehicles that are based on fraud (including, but
not limited to, actual fraud, constructive fraud, fraudulent concealment, fraudulent
misrepresentation, or negligent misrepresentation) or consumer protection statutes
are not included within the definition of Product Liabilities, and therefore do not
constitute Assumed Liabilities, because (a) they are not for "death" or "personal
injury", and their nexus to any death or personal injury that might thereafter
follow is too tangential, and (b) they are not "caused by motor vehicles."

42.     Accordingly, the Bankruptcy Court expressly ruled that fraud-based claims and

consumer protection act claims are not included within assumed Product Liabilities, and

therefore are not Assumed Liabilities that can be asserted against New GM; only Ignition Switch

Plaintiffs can assert such claims against New GM as Independent Claims.

43.     The Pope Plaintiffs have asserted a consumer protection act claim against New

GM.  Their PI Pleading should be amended accordingly.

**E.      Claims Based On A Failure To Recall Or
         Retrofit a Vehicle, Are Not Assumed Liabilities**

44.      The December 2015 Judgment also found that claims based on a failure to recall or retrofit an Old GM vehicle are not Assumed Liabilities.  *See* December 2015 Judgment, ¶ 21 ("A duty to recall or retrofit is not an Assumed Liability, and New GM is not responsible for any failures of Old GM to do so."); *see also id.* ¶ 29 (same).  The PI Plaintiffs asserting barred claims based on a failure to recall or retrofit an Old GM vehicle are: (i) Black, (ii) Boker, (iii) J.W. Moore, (iv) J.R. Moore, and (v) Pitterman.  Their PI Pleadings should be amended accordingly.

45.      With respect to the Moore Plaintiffs, the December 2015 Judgment referred to the Moore Lawsuit as an example of a failure to recall or retrofit a vehicle claim and proceeded to find that this claim was not an Assumed Liability, and that the only plaintiffs that could assert such a claim as an Independent Claim was Ignition Switch Plaintiffs.  Paragraph 30 of the December 2015 Judgment holds as follows:

> The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law for such Old GM Vehicles, ***but allows this claim to be asserted by the Ignition Switch Plaintiffs and the Post-Closing Accident Plaintiffs (such as has been asserted by the plaintiff in Moore v. Ross) with the Ignition Switch Defect***, leaving determination of whether there is the requisite duty under nonbankruptcy law to the nonbankruptcy court hearing that action. [Emphasis added]

The language of paragraph 30 is clear that this ***type*** of claim (*i.e.*, a failure to recall or retrofit a vehicle) can only be asserted by "Ignition Switch Plaintiffs" or "Post-Closing Accident Plaintiffs . . . ***with the Ignition Switch Defect*.**"  (emphasis added).  The Moore Plaintiffs are neither  and, just like all other Old GM Vehicle Owners without the Ignition Switch Defect, are prohibited from asserting these types of claims against New GM.

**F.**     **Claims Based On A Failure to Identify Defects Are Not Assumed Liabilities**

46.     The December 2015 Judgment further found that "[o]bligations, if any, that New GM had to identify or respond to defects in previously sold Old GM Vehicles were not Assumed Liabilities, and New GM is not responsible for any failures of Old GM to do so." December 2015 Judgment, ¶ 31. The Boker Plaintiff and Pope Plaintiffs are asserting barred claims based on a failure to identify defects. Their PI Pleadings should be amended accordingly to remove any such claims.

**G.**     **The PI Plaintiffs Cannot Seek Punitive Damages Against New GM**

*1.*     *As PI Plaintiffs Cannot Assert Independent Claims Against New GM, They Cannot Seek Punitive Damages Against New GM on Such Claims*

47.     Under the December 2015 Judgment, punitive damages against New GM arising from an Old GM vehicle can only be sought in connection with an Independent Claim, not an Assumed Liability. As demonstrated above, the PI Plaintiffs cannot assert Independent Claims against New GM, and thus any request for punitive damages necessarily fails.

48.     Before entering the December 2015 Judgment, the Bankruptcy Court asked the parties to meet and confer on a proposed form of judgment, or, if one could not be agreed upon, to submit a proposed form of judgment with a letter brief. In New GM's letter brief [Dkt. No. 13559] ("**New GM Judgment Letter Brief**"),[20] New GM noted that plaintiffs had taken the position that assumed Product Liabilities could result in categories of damages other than compensatory damages, as long as they were not punitive damages. New GM pointed out that this was contrary to the November 2015 Decision. *See* New GM Judgment Letter Brief, at 3-4. Importantly, New GM also argued that

---

[20]    A copy of the New GM Judgment Letter Brief is contained in the compendium of exhibits as **Exhibit "K."**

Under the Sale Agreement, June Judgment, and November Decision, there are only three categories of claims that can be asserted with respect to Old GM Vehicles: (a) Assumed Liabilities; (b) Retained Liabilities; and (c) Independent Claims. The November Decision is clear that there can be no punitive damages imposed against New GM for either Assumed Liabilities (specifically, Product Liabilities) or, necessarily, Retained Liabilities. ***Thus, the only category of claim where punitive damages could be asserted against New GM for an Old GM Vehicle is an "Independent Claim." And, the only plaintiffs that can bring an Independent Claim against New GM with respect to an Old GM Vehicle based on the Sale Order, as modified by the June Judgment, are (i) owners of vehicles with the Ignition Switch Defect bringing economic loss claims (i.e., the Ignition Switch Plaintiffs) and (ii) Post-Closing Accident Plaintiffs who owned a vehicle with the Ignition Switch Defect.***

New GM Judgment Letter Brief, at 4 (emphasis added). The Bankruptcy Court agreed with New GM, and included paragraphs 6 and 7 in the December 2015 Judgment.[21] Accordingly, it is clear that, with respect to lawsuits based on accidents involving Old GM vehicles, only Ignition Switch Plaintiffs can assert Independent Claims, and punitive damages can only be sought against New GM in connection with Independent Claims. As a result, PI Plaintiffs cannot assert Independent Claims against New GM (with respect to an Old GM Vehicle), nor can they seek to obtain punitive damages for such Claims. *See* December 2015 Judgment, ¶¶ 7, 14.

> 2.  *PI Plaintiffs Cannot Seek Punitive Damages Against New GM In Connection With Assumed Liabilities*

49.    The PI Plaintiffs' claims that are Assumed Liabilities also cannot form the basis for punitive damages against New GM. The Bankruptcy Court conclusively ruled that New GM did not assume punitive damages relating to Product Liabilities (as defined in the Sale

---

[21]    The November 2015 Decision, at times, did not always include precise language. For example, the November 2015 Decision stated that "[f]or the reasons just discussed, New GM did not assume Product Liabilities Claims." *Motors Liquidation Co.*, 541 B.R. at 122. New GM ***did*** assume Product Liabilities; it ***did not*** assume punitive damages sought in connection with assumed Product Liabilities. The imprecise language sometimes used in the November 2015 Judgment was pointed out by the parties in the letter briefs filed in connection with the proposed judgment. Hence, the December 2015 Judgment addresses these issues and contains the final rulings by the Bankruptcy Court and is controlling.

Agreement).  *See* December 2015 Judgment, ¶ 6.[22]  Moreover, paragraph 7 of the December

2015 Judgment provides that only Ignition Switch Plaintiffs can assert Independent Claims and

thus, they are the only plaintiffs that can seek punitive damages against New GM due to

Independent Claims.

50.    Accordingly, based on the Bankruptcy Court's explicit rulings in the November

2015 Decision and December 2015 Judgment, New GM did not assume punitive damages in

connection with Product Liabilities, and the PI Plaintiffs are prohibited from seeking punitive

damages from New GM in connection with any of their claims.

**H.    The PI Pleadings Contain Allegations That
Are Expressly Barred by the December 2015 Judgment**

51.    In the November 2015 Judgment, the Bankruptcy Court found that "New GM

notes, properly, that th[e Recall Covenant contained in Section 6.15(a) of the Sale Agreement]

was not an Assumed Liability, and that vehicle owners were not third party beneficiaries of the

Sale Agreement."  *Motors Liquidation Co.*, 541 B.R. at 130 n.67.  Allegations (or claims) in PI

Pleadings that assert New GM assumed liabilities to Old GM Vehicle Owners associated with

the Recall Covenant are, thus, barred.  As set forth in Schedule "1" attached hereto, this arises in

connection with the Barbot Lawsuit.

52.    Moreover, in the December 2015 Judgment, the Bankruptcy Court expressly set

forth other types of allegations plaintiffs cannot assert against New GM.  Specifically, plaintiffs

---

[22]    As more fully discussed in the November 2015 Decision:

> The Post–Closing Accident Plaintiffs first argue that New GM contractually assumed claims for
> punitive damages. The Court finds that contention unpersuasive. It can't agree with the Post–
> Closing Accident Plaintiffs' contention that the Sale Agreement unambiguously so provides.  And
> once it looks at the totality of the contractual language, and extrinsic evidence, and employs
> common sense, it must agree with New GM's contention that New GM neither agreed to, nor did,
> contractually take on Old GM's punitive damages liability.

*Id.*, 541 B.R. at 117.

are prohibited from making allegations: (i) that New GM is the successor to Old GM (no matter how phrased) (December 2015 Judgment, ¶ 16); (ii) that do not distinguish between Old GM and New GM (*see id.* ¶ 17); and (iii) that allege or suggest that New GM manufactured or designed an Old GM vehicle, or performed other conduct relating to an Old GM vehicle before the entry of the Sale Order and Injunction (*i.e.*, July 10, 2009) (*see id.* ¶ 18).  As set forth on Schedule "1" attached hereto, most of the PI Pleadings contain allegations that directly violate these provisions of the December 2015 Judgment.   These PI Pleadings must, therefore, be amended.   Until appropriately amended, these PI Lawsuits should be stayed pursuant to the express rulings in the December 2015 Judgment.  *See* December 2015 Judgment, ¶¶ 16, 17, 18.

### NOTICE

53.     Notice of this Second June 2016 Motion to Enforce has been provided to counsel for the PI Plaintiffs, and all entities that receive electronic notice from the Court's ECF system. New GM submits that such notice is sufficient and no other or further notice need be provided.

54.     Except as noted in footnote 2 hereof, no prior request for the relief sought in this Second June 2016 Motion to Enforce has been made to this or any other Court.

WHEREFORE, New GM respectfully requests that this Court enter an order, substantially in the form contained in the compendium of exhibits as **Exhibit "L,"** granting the relief sought herein, and for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 24, 2016

Respectfully submitted,


_____/s/ Arthur Steinberg_____
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Attorneys for General Motors LLC*