# Exhibit G

```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK


                                    .   Case No. 09-50026-reg
IN RE:                              .   Chapter 11
                                    .
MOTORS LIQUIDATION COMPANY,         .   (Jointly administered)
et al., f/k/a GENERAL               .
MOTORS CORP., et al,                .   One Bowling Green
                                    .   New York, NY 10004
            Debtors.                .
                                    .   Monday, August 31, 2015
. . . . . . . . . . . . . . . .     .   9:48 a.m.


    TRANSCRIPT OF NOTICE OF HEARING/NOTICE OF STATUS CONFERENCE TO
    BE HELD IN CONNECTION WITH THE COURT'S CASE MANAGEMENT ORDER,
    DATED AUGUST 19, 2015 [Dkt. No. 13383], AND THE LETTERS FILED
       IN RESPONSE THERETO (RELATED DOCUMENT(S) 13383) [13396]
            BEFORE THE HONORABLE ROBERT E. GERBER
            UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:              King & Spalding LLP
                             By: ARTHUR STEINBERG, ESQ.
                                 SCOTT DAVIDSON, ESQ.
                             1185 Avenue of the Americas
                             New York, New York 10036-4003
                             (212) 556-2158


For General Motors on
behalf of participating
unit holders:                Akin Gump Strauss Hauer & Feld LLP
                             By: NAOMI MOSS, ESQ.
                             One Bryant Park
                             New York, NY 10036-6745
                             (212) 872-1000


APPEARANCES CONTINUED.


Audio Operator:              Frances Ferguson, ECR


Transcription Company:       Access Transcripts, LLC
                             10110 Youngwood Lane
                             Fishers, IN 46038
                             (855) 873-2223
                             www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

2

```
APPEARANCES (Continued):

For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs:                    Brown Rudnick LLP
                               By:  EDWARD S. WEISFELNER, ESQ.
                                    HOWARD S. STEEL, ESQ.
                               7 Times Square
                               New York, New York 10036
                               (212) 209-4917

For the GUC Trust
Administrator:                 Gibson, Dunn & Crutcher LLP
                               By:  LISA RUBIN, ESQ.
                                    MATTHEW J. WILLIAMS, ESQ.
                               200 Park Avenue
                               New York, New York 10166-0193
                               (212) 351-4000

For Sesay, Bledsoe
and Elliott:                   GARY PELLER, ESQ.
                               600 New Jersey Ave., NW
                               Washington, DC 20001
                               (202) 662-9122

For Personal Injury
Accident Plaintiffs:           Goodwin Procter LLP
                               By:  WILLIAM P. WEINTRAUB, ESQ.
                               The New York Times Building
                               620 Eighth Avenue
                               New York, NY 10018-1405
                               (212) 813-8839

For Interested Party
Watershed Asset
Management:                    Watershed Asset Management, LLC
                               By:  MICHELE F. KYROUZ
                               1 Maritime Plaza, #1525
                               San Francisco, CA  94111
                               (415) 391-8900

For Interested Party
Amer Tiwana:                   CRT Capital Group, LLC
                               By:  AMER TIWANA
                               262 Harbor Drive, #101
                               Stamford, CT  06902
                               (203) 569-6400
```

3

```
TELEPHONIC APPEARANCES:

For the Ignition Switch
Plaintiffs:                   Hagens Berman Sobol Shapiro LLP
                              By:  STEVE W. BERMAN, ESQ.
                              1918 Eighth Avenue, Suite 3300
                              Seattle, WA 98101
                              (206) 623-7292

                              Lieff, Cabraser, Heimann & Bernstein
                              By:  ELIZABETH J. CABRASER, ESQ.
                              275 Battery Street, 29th Floor
                              San Francisco, CA 94111-3339
                              (415) 956-1000

For Participating
Unit Holders:                 Akin Gump Strauss Hauer & Feld LLP
                              By:  NAOMI MOSS, ESQ.
                                   DANIEL H. GOLDEN, ESQ.
                              One Bryant Park
                              New York, NY 10036-6745
                              (212) 827-8010

For the Debtor:               Hanson Bolkcom Law Group, LTD.
                              By:  MARY E. BOLKCOM, ESQ.
                              527 Marquette Avenue, Suite 2300
                              Minneapolis, MN  55402
                              (612) 342-2880

For The Bavlsik
Plaintiffs:                   The Simon Law Firm, P.C.
                              By:  KEVIN M. CARNIE, ESQ.
                              800 Market Street, Suite 1700
                              St. Louis, MO  63101
                              (314) 241-2029

For Designated Counsel:       Stutzman, Bromberg, Esserman & Plifka
                              By:  BRIANA L. CIONI, ESQ.
                                   DAVID J. PARSONS, ESQ.
                              2323 Bryan Street, Suite 2200
                              Dallas, TX  75201
                              (214) 969-4986

For Interested Party
Reorg Research, Inc.:         Reorg Research, Inc.
                              By:  KENT COLLIER
                              1140 Broadway
                              New York, NY  10001
                              (212) 257-4383
```

4

TELEPHONIC APPEARANCES:    (Continued)

For Doris Phillips:        Josh Davis Law Firm
                           By:  JOSHUA P. DAVIS, ESQ.
                           101 Lamar, Suite 200
                           Houston, TX   77002
                           (713) 337-4100

For Law Debenture
Trust Company of
New York:                  Kelley Drye & Warren LLP
                           By:  BENJAMIN D. FEDER, ESQ.
                           101 Park Avenue
                           New York, NY   10178
                           (212) 808-7974

For MDL Plaintiffs:        Hilliard Munoz & Gonzales LLP
                           By:  ROBERT C. HILLIARD, ESQ.
                           719 Shoreline Blvd., #500
                           Corpus Christi, TX   78401
                           (361) 882-1612

5

1    (Proceedings commence at 9:48 a.m.)
2         THE COURT:  I think I know all of you.  There's no
3    need for you to make appearances in advance, but when you come
4    up to the mike, the main lectern to speak, please identify
5    yourselves for the record.
6         I've read all of your letters and the attachments to
7    the extent that I haven't read them previously.  I have
8    problems with both sides' positions, especially vis-a-vis
9    proposals on timing, but also vis-a-vis matters of substance.
10   It seems to me that neither side acknowledges -- and I'm
11   pushing the GUC Trust and the indentured trustee off to the
12   side for the time being.  It seems to me that neither side
13   acknowledges that it is subject to the jurisdiction and rulings
14   of two separate judges and that anything Jesse Furman says
15   counts, as far as I'm concerned, and I would have thought that
16   anything that I say counts insofar as proceedings in the
17   district court is concerned.  And what I need from each of you
18   is realistic proposals in terms of prioritization of matters so
19   that I can get Jesse Furman the rulings he needs so that the
20   bellwether trial or trials are not delayed.
21        It seems to me, subject to your rights to be heard,
22   that by far the most important of the matters that we need to
23   address are the matter of punitives.  And I will also decide
24   preliminarily, to the extent that it's necessary, the matter of
25   imputation, but I thought I had already made my views on

26

1  mootness finding, which, subject to appeal, basically tells all
2  of us that we will not be able to go back and claw back, for
3  lack of a better term, against the existing GUC Trust
4  beneficiaries.  So what the complaints say is, your failure to
5  give us the information that was in your exclusive possession,
6  causing us not to file proofs of claim, damaged us to the
7  extent that we were not lined up with every other plaintiff as
8  part of -- or every other claimant as part of the proof of
9  claim universe, that we were denied the opportunity to
10 participate from dollar one in the GUC Trust.
11       Now, that's a claim that Your Honor is, I guess,
12 being asked to determine, and we think it's a failure
13 straightforward question.  Is that a claim against Old GM or is
14 it a claim against New GM?  We assert that it's a claim against
15 New GM.  We're saying that New GM's failure -- from the time it
16 became New GM up through and including the bar date is the
17 focus of our attention -- is a claim solely against New GM.
18 The beginning and the end of the allegations is New GM knew on
19 the date it came into existence that there was an ignition
20 switch defect, what its potential was, that it needed to be
21 recalled as a matter of federal law, that it failed to do so
22 and it failed to do so purposefully, thus preventing the
23 plaintiffs from filing proofs of claim.  And a court can
24 determine whether or not that's a cognizable claim, and if it
25 is, what the element of damages ought to be.

27

1    THE COURT: Now, pause again. When you said the
2    court in that last context, you were talking about Judge Furman
3    after I have done my gatekeeping.
4    MR. WEISFELNER: Correct. Or in the case of the
5    state claims, the relevant courts that those state claims are
6    currently pending in.
7    THE COURT: And how would a state have standing to
8    assert a claim of that character?
9    MR. WEISFELNER: Well, again, to the extent that --
10   and I guess I've misspoke. To my knowledge, neither the State
11   of California nor the State of Arizona had that allegation
12   within their complaint. It's only a second amended
13   consolidated complaint.
14   THE COURT: Okay. But you're talking about in your
15   constituency, your vehicle owners, and their contention is that
16   if the recall had taken place in the gap period between the
17   sale and the bar date, your guys could have filed claims and
18   then they would have gotten the 25 or 30 cents, whatever
19   unsecureds got in the case.
20   MR. WEISFELNER: Precisely. That's exactly right.
21   THE COURT: All right.
22   MR. WEISFELNER: And again, Your Honor, to the extent
23   that New GM contends that somehow that claim isn't an
24   independent claim, is instead a disguised successor liability
25   claim, to the extent Your Honor needs briefing on that topic, I

09-50026-mg    Doc 13656-7    Filed 06/24/16    Entered 06/24/16 17:52:12    Exhibit G
Pg 9 of 17
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 28 of 122

28

1  guess we'll brief it. We'll comply with whatever Your Honor's
2  desires are in that regard. But it seems to me, again, a
3  gating issue is what part of the second amended consolidated
4  complaint, including this particular cause of action, do you
5  believe fails to satisfy independent claim status and why.
6           Next issue in Mr. Steinberg's letter was the
7  contention that state law consumer protection statutes related
8  to Old GM vehicles and parts are somehow improper. And Your
9  Honor, it's our contention that, again, as a gatekeeper, if you
10 determine that the claims, based on state law consumer
11 protection statutes or otherwise, relate to New GM and what New
12 GM did or failed to do as opposed to what Old GM did or failed
13 to do, that depending on the particular state consumer
14 protection statutes, they either give rise to a claim or cause
15 of action to be determined by the trial court or they don't.
16 And the role of the gatekeeper, Your Honor, is to determine
17 whether or not those particular allegations relying on state
18 consumer protection laws do or do not constitute independent
19 claims versus disguised successor liability claims.
20          Likewise, the next issue, failure to warn and duty to
21 recall an Old GM vehicle. It is New GM's position, which we
22 believe is a blatant attempt to re-litigate what Your Honor has
23 already decided, but it's New GM's apparent position now that
24 an allegation against New GM sounding in the nature of a
25 failure to warn or a breached duty to recall, if it involves an

09-50026-mg    Doc 13656-7    Filed 06/24/16    Entered 06/24/16 17:52:12    Exhibit G
Pg 10 of 17
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 37 of 122

37

1  itself because we believe that New GM, in fact, engaged in bad
2  faith. It's one of the issues we will pursue on appeal. It's
3  one of the reasons why we think the bar against successor
4  liability ought not be enforced.
5           But putting aside good faith or bad faith, the
6  question is if you have a purchaser in a 363 sale, may the
7  bankruptcy court that approves that sale and gives the buyer
8  free and clear protections, including successor liability,
9  nevertheless afford the buyer prospective protection for its
10 own independent tortious conduct? And we think that the clear
11 answer to that proposition is no.
12          So again, if a non-ignition switch defect claimant,
13 whether would start an independent claim against New GM, would
14 that non-ignition switch plaintiff be successful, vis-a-vis
15 Your Honor as a gatekeeper. New GM's contention is that, aha,
16 wait a second, the non-ignition switch plaintiff cannot assert
17 an independent claim against New GM unless and until that
18 non-ignition switch plaintiff demonstrates that back in '09,
19 its due process rights were violated. Because Your Honor only
20 determined that independent claims were permissible having
21 first determined that the ignition switch plaintiffs' due
22 process rights were violated with prejudice because they didn't
23 have an opportunity to argue over breadth of the injunction.
24          So that's the last issue I can think of where we have
25 a marked disagreement between Mr. Steinberg and I. It's my

09-50026-mg   Doc 13656-7   Filed 06/24/16   Entered 06/24/16 17:52:12   Exhibit G
Pg 11 of 17
09-50026-mg   Doc 13438   Filed 09/15/15   Entered 09/15/15 09:59:48   Main Document
Pg 38 of 122

38

1  belief that Your Honor's determination that the law in the
2  Second Circuit, that the law across this country is uniform,
3  and that is that a buyer in a 363 sale, putting aside whether
4  or not it's acting in good faith, does not obtain a
5  get-out-of-jail-free card for its own post-sale tortious
6  conduct, bad actions, fraudulent concealment.
7         THE COURT:  I understand the issue.  Pause.  If you
8  said this before in baby talk, I don't remember it.  Are you
9  now going to be kind of a designated counsel for non-ignition
10 switch plaintiffs, as well --
11        MR. WEISFELNER:  Your Honor --
12        THE COURT:  -- or did they have separate counsel?
13        MR. WEISFELNER:  They do not have separate counsel,
14 and to the extent that their rights need to be preserved, since
15 co-lead counsel in the MDL does have actions pending on their
16 behalf, subject, of course, to subsequent certification of
17 classes and that sort of thing, yes, we perceive ourselves as
18 having taken on the mantel of preserving and protecting the
19 rights of non-ignition switch plaintiffs in this court.
20        THE COURT:  So I don't have to worry about them not
21 having been heard if I listen to you.
22        MR. WEISFELNER:  I think that's a correct conclusion,
23 especially in light of Your Honor's procedures in the judgment
24 itself.
25        THE COURT:  Okay.  Continue or were you done now?

39

1  MR. WEISFELNER: Your Honor, subject to whatever
2  questions or concerns you have, I'd be done. I just want to
3  make sure that neither of my overseers, Mr. Berman or Ms.
4  Cabraser, have any further comments that they'd like to make.
5  THE COURT: Is Mr. Berman on the phone?
6  MR. WEISFELNER: I believe so.
7  MR. BERMAN: (Telephonically) Yes, Your Honor. I'm
8  on the phone. I think that he did a great job covering our
9  interests here.
10  THE COURT: I'm sorry, you're not very audible. Can
11  you say it slower and louder, please?
12  MR. BERMAN: I think that he's covered everything
13  well and I have nothing to add.
14  THE COURT: Okay. Mr. Stein --
15  MS. CABRASER: (Telephonically) Your Honor,
16  Elizabeth Cabraser.
17  THE COURT: Wait, I'm sorry. Before you come up,
18  Mr. Steinberg, I thought I heard something on the phone after
19  Mr. Berman said he had nothing to add.
20  MS. CABRASER: Your Honor, Elizabeth Cabraser,
21  co-lead for the economic loss plaintiffs. You heard me. I
22  apologize for not speaking more slowly. I'm simply concurring,
23  as is Mr. Berman, subject to Your Honor's (indiscernible). I
24  have nothing to add at this point.
25  THE COURT: Okay. I asked my questions as we went

09-50026-mg    Doc 13656-7    Filed 06/24/16    Entered 06/24/16 17:52:12    Exhibit G
Pg 13 of 17
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 79 of 122

79

1   And courts of competent jurisdiction are amply able
2   to ultimately determine whether or not imputation, under the
3   law of whatever jurisdiction will govern -- I presume there may
4   be some differences on imputation. It's not necessarily
5   federal common law, I don't know, but it's not something that I
6   think the Bankruptcy Court rightfully ought to be focused on,
7   and I don't think it's what Judge Furman had in mind in terms
8   of triaging issues.
9       Now, the other thing that Mr. Steinberg then slipped
10  in when he talked about what he wants to triage, he talked
11  about punitives because you can't get away from what Judge
12  Furman said about that. He talked about imputation, and I
13  think, quite frankly, he's banging his head against the wall,
14  but he wants to see what happens. Maybe Your Honor will bite
15  on it.
16      The third thing he talked about is other causes of
17  action proscribed by the sale order and original injunction and
18  causes of action that are still proscribed based on Your
19  Honor's sale order and injunction. Well, that's a whole
20  another reargument again. I went through carefully a list of
21  the issues in his letter, and I think I made it clear that in
22  terms of the way we should be going forward by way of a
23  schedule and what we ought to be triaging, and in an effort to
24  make our next meet and confer reasonable, Judge, we need some
25  direction beyond the triage that Judge Furman says he needs --

09-50026-mg    Doc 13656-7    Filed 06/24/16    Entered 06/24/16 17:52:12    Exhibit G
Pg 14 of 17
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 80 of 122

80

1    THE COURT:  Well, I can give you a little more
2  direction that may help your meet and confer, and it ties into
3  one of the very few -- well, perhaps very few is an
4  overstatement -- what I consider to be one of the closer
5  questions that you guys were arguing about, which is that when
6  people have not shown a due process violation yet, that being
7  the subset of your larger constituency with non-ignition switch
8  issues, where they have not shown that 24 people or even one
9  person at New GM had enough knowledge to make them knowing
10 plaintiffs -- or knowing claimants, excuse me -- whether they
11 should get benefits that the remainder of your constituency won
12 in the last go-around.  And Mr. Steinberg's position, as I
13 understand it, is that even if it is so, that if I were ruling
14 on a clean slate with the ability to be heard back in 2009,
15 that what I ultimately ruled with respect to environmental
16 claimants and narrow view of economic loss claimants, vis-à-vis
17 ignition switches, whether they should or should not be
18 beneficiaries of that ruling, then they haven't established a
19 due process violation.  That was the context in which I said
20 what I was saying.
21    Now, hopefully that's not too cryptic, but the
22 non-ignition switch plaintiffs' inability or inaction to have
23 yet established a due process violation to give them the
24 benefits that the remainder of your constituency got is, in my
25 view, a big issue.

09-50026-mg    Doc 13656-7    Filed 06/24/16    Entered 06/24/16 17:52:12    Exhibit G
Pg 15 of 17
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 81 of 122

81

1           MR. WEISFELNER:  Okay.  I mean, again, just as a
2  matter of fact, discovery with regard to the non-ignition
3  switch defects that are at issue are ongoing.  And while --
4           THE COURT:  I understood that, and it certainly was
5  ongoing back on April 15th --
6           MR. WEISFELNER:  Right.
7           THE COURT: -- which is why the opinion didn't cover
8  them.
9           MR. WEISFELNER:  Right.  But, Your Honor, look, it
10 still seems to me that, you know, one could argue that whether
11 or not you're the beneficiary of a due process violation
12 because you were a known creditor, nevertheless, Your Honor's
13 sale order could not as a matter of constitutional law, Second
14 Circuit law, have provided New GM with a get out of jail free
15 card with regard to its post-sale independent acts and conduct.
16 I just don't think that the --
17          THE COURT:  I understand that's the argument you're
18 going to make.  You had telegraphed that before.  My guess is
19 that Mr. Steinberg is going to have a different view, and
20 that's why I called it an issue rather than something that I've
21 decided.
22          MR. WEISFELNER:  Okay.  To the extent that that
23 remains an issue, then in terms of triaging things, it seems to
24 me that we need to get that issue teed up quickly because to
25 the extent that people, either New GM or us, depending on who

09-50026-mg    Doc 13656-7    Filed 06/24/16    Entered 06/24/16 17:52:12    Exhibit G
Pg 16 of 17
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 82 of 122

82

1 loses, needs to appeal that decision, they ought to get
2 started. But again, in terms of triaging the remaining issue,
3 what frustrates us on the plaintiffs' side is every opportunity
4 that New GM can take, it does take in an effort to try and
5 reinterpret, redefine, cut down on, narrow the scope of the
6 definition of independent claims.
7    And they're not all, as Mr. Steinberg indicated,
8 briefed in the no strike/no stay pleading because we didn't see
9 any of these issues emanating from New GM, frankly, until after
10 Judge Furman denied the motions to withdraw the reference. And
11 I think that emboldened New GM to try and take another bite at
12 the apple.
13    And, Your Honor, I think maybe the right thing to do
14 is, with your guidance, send us back to the drawing board. We
15 will try desperately hard again to come up with an appropriate
16 scheduling order with the right issues. But again, to the
17 extent that New GM insists on having Your Honor act as a
18 gatekeeper on issues that we believe are more properly resolved
19 in the context of trial because we don't think it impacts Your
20 Honor's role as a gatekeeper -- we think the gatekeeper role is
21 tell us if this is an independent claim or not an independent
22 claim. And Mr. Steinberg can tell you there are 60 pages of
23 allegations with regard to Old GM, and our point is you can
24 have 600 pages of allegations with regard to Old GM. Focus on
25 the claim and cause of action. Focus on what it is that you

09-50026-mg    Doc 13656-7    Filed 06/24/16    Entered 06/24/16 17:52:12    Exhibit G
Pg 17 of 17
09-50026-mg    Doc 13438    Filed 09/15/15    Entered 09/15/15 09:59:48    Main Document
Pg 83 of 122

83

1  want recovery for. Focus in on what it is you're asking the
2  jury to decide based on instructions from the judge.
3          And you will see that the liability we assert is New
4  GM's liability, that the allegations regarding Old GM are of
5  necessity background information. You don't start a story, if
6  you will, about New GM -- I'm sorry, GM manufacturing cars with
7  known defective components beginning in '03 and '04, going
8  through all sorts of evaluations, tests, and accumulation of
9  information that the ignition switch defect, in fact, presented
10 a known safety defect that was killing people throughout the
11 country, that it chooses not to bring to the attention of the
12 Court during its bankruptcy proceeding, that New GM remains
13 completely well aware of from the date it's born and maintains
14 that cone of silence throughout the period from 2009 through
15 2014.
16         And I'm here today to assess liability -- I'm talking
17 to a prospective jury -- against New GM because Old GM's gone
18 and Old GM isn't here and Old GM can't pay for this, and New GM
19 shouldn't be made to pay for something that was an Old GM bad
20 act or bad conduct. Now, I'm going to argue to the jury the
21 facts. I don't want to start the case by saying as of some
22 date in 2009, New GM was born.
23         THE COURT: I know that you don't want to start your
24 case that way, but you are going to start the case within the
25 constraints of what the law requires.