# Exhibit  K

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial: 212-556-2158
asteinberg@kslaw.com

November 30, 2015

**VIA E-MAIL TRANSMISSION**
**AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

> Re:   **In re Motors Liquidation Company,** *et al.*
>        **Case No. 09-50026 (REG)**
>
>        **Letter Regarding Proposed Judgment for the**
>        **Court's November 9, 2015** *Decision On Imputation,*
>        *Punitive Damages, and Other No-Strike and*
>        *No-Dismissal Pleadings Issues* **("November Decision")**[1]

Dear Judge Gerber:

        King & Spalding LLP is co-counsel with Kirkland & Ellis LLP for General Motors LLC
("**New GM**") in the above-referenced matter. We write to inform the Court that while the parties
have met and conferred and exchanged drafts of a proposed judgment memorializing the
conclusions contained in the November Decision, they have been unable to agree upon a
consensual proposed judgment. Accordingly, attached hereto as **Exhibit "A"** is the proposed
form of judgment prepared by New GM ("**New GM Proposed Judgment**"). Attached hereto as
**Exhibit "B"** is an annotated version of the New GM Proposed Judgment, which includes
citations to the November Decision that support individual paragraphs of the New GM Proposed
Judgment. Attached hereto as **Exhibit "C"** is a mark-up of Plaintiffs' Proposed Judgment
("**Plaintiffs' Proposed Judgment**") showing (i) for sake of completeness, those portions of the
November Decision that should have been included (but were not) in the Plaintiffs' Proposed
Judgment; and (ii) which provisions should be revised to make them consistent with the rulings

---

[1]     The November Decision is published at *In re Motors Liquidation Co.*, Case No. 09-50026, 2015 WL 6876114
(Bankr. S.D.N.Y. November 9, 2015).

25631259v1
DMSLIBRARY01\21600\162081\27627824.v2-11/30/15

Honorable Robert E. Gerber
November 30, 2015
Page 2

in the November Decision.  To be clear, for the reasons set forth herein, New GM is not
advocating that the Court enter the Plaintiffs' Proposed Judgment.  Exhibit "C" is included to
illustrate that (a) Plaintiffs' lengthier document is, in some respects, less inclusive than the New
GM Proposed Judgment, and (b) the Plaintiffs' Proposed Judgment puts a gloss on the
November Decision that New GM believes was never intended by the Court, and may prove to
be confusing to other courts and plaintiffs reviewing it.

As support of the New GM Proposed Judgment, New GM states as follows:

**1.** **Form of Judgment:**  The issues set forth in the Court's September 3, 2015
Scheduling Order and the Court's November Decision were meant to address the remaining
issues concerning New GM's Motions to Enforce the Sale Order.  In addition to MDL 2543
before Judge Furman, the November Decision clearly has application in numerous state and
federal courts around the country.  The November Decision is 71 pages long and contains many
rulings.  The New GM Proposed Judgment synthesizes the rulings by sections: first, the
Imputation Issue; then, the Punitive Damages Issue; and finally, specific matters relating to
complaints in general, as well as to particular lawsuits.  The form of the New GM Proposed
Judgment was designed to be user-friendly for other judges throughout the country so as to assist
them in applying the rulings of the November Decision.  It was also meant to be user-friendly to
other plaintiffs so as to provide them with clearly enunciated principles to follow.

The Plaintiffs' Proposed Judgment was drafted differently and, in large part, quotes from
selected sections of the November Decision.  It does not seek to organize the rulings, and the end
product makes an overly long and "choppy" presentation.  It contains many duplicate provisions
that often raise ambiguity rather than set forth clear principles, and that will not easily be applied
by judges overseeing other lawsuits or by plaintiffs suing New GM in other courts.  Moreover,
by selectively quoting from the November Decision, the Plaintiffs' Proposed Judgment
sometimes omits relevant portions that were set forth in other parts of the November Decision or
in the Court's other rulings.  This technique leads to an incomplete summary of the November
Decision that does not properly reflect the actual rulings made (and not made) by the Court in the
November Decision.

By way of two examples, *first*, the Court did not decide that Plaintiffs have viable
Independent Claims.  Rather, the Court ruled that the Plaintiffs' complaints made allegations that
were sufficiently pled to "pass through the bankruptcy gate" such that the presiding court should
decide whether Plaintiffs' complaints state a claim as a matter of non-bankruptcy law.  In certain
instances, the Plaintiffs' Proposed Judgment suggests that the Court made rulings as to these
alleged Independent Claims more extensive than it actually did.  *See, e.g.*, Plaintiffs' Proposed
Judgment, footnote 3 and paragraph 56.  *Second*, a significant portion of the Plaintiffs' Proposed
Judgment discusses the color-coding of certain marked complaints.  The color coding exercise
was meant solely for this Court's convenience as an efficient way to review similar issues in
various complaints, all of which were presented for this Court's review.  The extensive
referencing to such color-coding in Plaintiffs' Proposed Judgment will be meaningless to other
courts and litigants without undertaking the burdensome (and needless) exercise of obtaining the
underlying marked pleadings.  A simpler presentation, as contained in the New GM Proposed

Honorable Robert E. Gerber
November 30, 2015
Page 3

Judgment, is preferable in New GM's view to provide straightforward guidance for future review and application of the November Decision.

Below, New GM analyzes the New GM Proposed Judgment and why the provisions therein are appropriate and consistent with the November Decision.

**2.**    **Imputation Rulings:**  The paragraphs in the New GM Proposed Judgment with respect to imputation are taken from various section of the November Decision.  New GM synthesized the rulings on imputation, and put them in an easy-to-follow section so that judges and plaintiffs seeking to apply them can review a self-contained set of imputation principles.

Plaintiffs took the position during the meet and confer process that the Court did not explicitly rule that imputation must relate to a viable Independent Claim. *See* New GM Proposed Judgment, ¶ 4.  But that is the underlying basis of the November Decision. Imputation relates to knowledge—and knowledge, by itself, has no relevance unless it is an element of a viable claim under nonbankruptcy law.  In other words, knowledge is not a cause of action.  It must be a basis for a claim, and the claim must be a valid one under applicable nonbankruptcy law before the imputation issue needs to be considered by the other courts.  New GM's language is intended to eliminate any ambiguity or contrived argument that may later be raised in another court.

In a similar vein, imputation is not automatic, and there has to be a proper basis to impute knowledge under nonbankruptcy law.  Plaintiffs did not want to include the phrase "to the extent valid under nonbankruptcy law" in all circumstances where it should be inserted.  The omission of this clause suggests an inevitable imputation result, which is not what this Court ruled.

Footnote 1 contains an Errata point with respect to the inadvertent use of the word "Economic Loss Plaintiffs" on page 7 of the November Decision instead of "Ignition Switch Plaintiffs."

Footnote 3 defines Independent Claims as relating to Old GM Vehicles with the Ignition Switch Defect, and then clearly spells out that Independent Claims are a different concept than an Assumed Liability or a Retained Liability. This clarification is necessary so that other courts that have not participated in these proceedings understand these fundamental concepts.

**3.**    **Punitive Damages Rulings:** During the meet and confer process, Plaintiffs took the position that assumed Product Liabilities could result in categories of damages other than compensatory damages, as long as they were not punitive damages. That is contrary to the November Decision.[2]  The New GM Proposed Judgment makes this point explicit in paragraph 7.

---

[2]    "New GM assumed liability for Product Liabilities claims, which (by definition) arose from accidents or incidents taking place *after* the Sale, and thereby became liable for ***compensatory damages for any Product Liabilities*** resulting from Old GM's action." November Decision, 2015 WL 6876114, at *8 n.30 (emphasis added).

Honorable Robert E. Gerber
November 30, 2015
Page 4

Under the Sale Agreement, June Judgment, and November Decision, there are only three categories of claims that can be asserted with respect to Old GM Vehicles: (a) Assumed Liabilities; (b) Retained Liabilities; and (c) Independent Claims. The November Decision is clear that there can be no punitive damages imposed against New GM for either Assumed Liabilities (specifically, Product Liabilities) or, necessarily, Retained Liabilities. Thus, the only category of claim where punitive damages could be asserted against New GM for an Old GM Vehicle is an "Independent Claim." And, the only plaintiffs that can bring an Independent Claim against New GM with respect to an Old GM Vehicle based on the Sale Order, as modified by the June Judgment, are (i) owners of vehicles with the Ignition Switch Defect bringing economic loss claims (*i.e.*, the Ignition Switch Plaintiffs) and (ii) Post-Closing Accident Plaintiffs who owned a vehicle with the Ignition Switch Defect.[3] The New GM Proposed Judgment makes this point clear in paragraphs 7-9.

On page 30 of the November Decision, the Court ruled that in pursuing punitive damages for New GM manufactured vehicles, plaintiffs can rely on anything appropriate under nonbankruptcy law. It also stated that "evidence of Old GM pre-Sale knowledge and conduct" may be used "if otherwise appropriate." New GM added the second sentence in paragraph 10 of the New GM Proposed Judgment to make clear that it is **not** appropriate to claim that New GM is **liable** for Old GM conduct, since that is explicitly prohibited by paragraph AA of the Sale Order.[4] The November Decision did not modify the Sale Order, and New GM believes it is important to make this clarification so that the Court's statements are not taken out of context. As noted, other courts and plaintiffs will look to the November Decision and this Court's Judgment with respect to cases that pass through the bankruptcy gate. It is critical that the Court's statement not be misconstrued so that a successor liability claim (dressed up to look like something else) is made against New GM based on plaintiffs assertion that they can rely on **evidence** of Old GM conduct to make a punitive damage claim against New GM for a New GM manufactured vehicle.

4.    **Claims in the Bellwether Complaints/MDL 2543:** The November Decision addressed New GM's argument that certain types of claims were not included within the definition of Product Liabilities, and as examples listed claims "such as fraud, negligent misrepresentation, duty to warn after the vehicle's sale, and violations of consumer protection statutes at the time of sale." November Decision, 2015 WL 6876114, at *19. The only claims that the Court stated might be assumed Product Liabilities were "alleged breaches of a duty to warn." *Id.* at *20. By negative implication, all other claims should not be included within the

---

[3]    *See* Judgment, dated June 1, 2015 [Dkt. No. 13177] ("**June Judgment**"), at ¶ 4;  *see also* November Decision, 2015 WL 6876114, at *21 n. 70 ("Ignition Switch Plaintiffs asserting Economic Loss Claims may assert them [*i.e.*, Economic Loss Claims], to the extent they are Independent Claims, under the April 15 Decision and Judgment. Non–Ignition Switch Plaintiffs cannot." (emphasis added)).

[4]    The 363 Sale to New GM was "free and clear of liens, claims, encumbrances, and other interests (other than Permitted Encumbrances), including rights or claims . . . based on any successor or transferee liability, including, but not limited to . . . all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of, any of the Sellers or any of the Sellers' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor or transferee liability." Sale Order, at ¶ AA.

Honorable Robert E. Gerber
November 30, 2015
Page 5

definition of Product Liabilities, including any subset of fraud claims (such as, but not limited to, actual fraud, constructive fraud, fraudulent concealment, fraudulent misrepresentation, deceit, negligent misrepresentation, *etc.*).  Paragraph 14 of the New GM Proposed Judgment expressly sets forth this ruling. Plaintiffs maintained during the meet and confer that, since this was not made explicit in the November Decision, they can raise this issue in another court, once it passes through the bankruptcy gate. New GM seeks to prevent that end-run from occurring.

     **5.**     <u>**Claims Alleging New GM is Liable for their Failure to File Proofs of Claim**</u>: Plaintiffs, in the meet and confer, took issue with paragraph 19 of the New GM Proposed Judgment, which provides, in part, that the *Adams* complaint should be dismissed.  Plaintiffs argue that the November Decision does not prevent the *Adams* plaintiffs from filing an amended complaint.  However, it is undisputed that the *Adams* complaint concerns claims based **only** on accidents that took place prior to the closing of the 363 Sale.  The November Decision, and previous decisions, orders and/or judgments of the Court, clearly provide that claims based on pre-363 Sale accidents are barred by the Sale Order, April Decision and June Judgment.  Any claims the *Adams* plaintiffs may have are barred, and the judgment should so state.

     **6.**     <u>**Peller Complaints/Other Complaints**</u>:   The portion of Plaintiffs' Proposed Judgment relating to the Peller complaints is not accurate or complete. The Other Complaints section is also not complete. The principles enunciated in these sections have application in many lawsuits throughout the country. It is important that the judgment clearly state these principles, and the New GM Proposed Judgment (unlike the Plaintiffs' Proposed Judgment) accomplishes this.

     **7.**     <u>**Other Issues**</u>:   With respect to the penultimate paragraph of the New GM Proposed Judgment, the Plaintiffs take issue with the Court retaining "exclusive jurisdiction, to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based."  This exact language was used in the June Judgment, and it should also be included in this judgment.  Although it is difficult to foresee every circumstance in which this Court's intervention and guidance might be needed in the future, at a minimum, the November Decision stayed cases, and compliance with the Court's judgment should be heard by this Court to the extent necessary.

     The last paragraph in the Plaintiffs' Proposed Judgment regarding amendments to complaints needs to take into account that other courts (such as in MDL 2543) have stayed many of the cases independent of the ongoing bankruptcy proceedings, and those courts should control how their dockets are managed with regard to amendments of stayed actions.  New GM added this provision (as modified) to the New GM Proposed Judgment.

     Based on the foregoing, New GM respectfully requests that the New GM Proposed Judgment be entered.

09-50026-mg    Doc 13656-11    Filed 06/24/16    Entered 06/24/16 17:52:12    Exhibit K
Pg 6 of 6

Honorable Robert E. Gerber
November 30, 2015
Page 6

                                      Respectfully submitted,

                                       */s/ Arthur Steinberg*

                                       Arthur Steinberg

AJS/sd
Encl.

cc:     Edward S. Weisfelner
        Howard Steel
        Sander L. Esserman
        Jonathan L. Flaxer
        S. Preston Ricardo
        Matthew J. Williams
        Lisa H. Rubin
        Keith Martorana
        Daniel Golden
        Deborah J. Newman
        William Weintraub
        Steve W. Berman
        Elizabeth J. Cabraser
        Robert C. Hilliard
        Gary Peller

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                             :          Chapter 11
                                                  :
MOTORS LIQUIDATION COMPANY, *et al.*,             :          Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., *et al.*      :
                                                  :
                    Debtors.                      :          (Jointly Administered)
------------------------------------------------------------x

## JUDGMENT

For the reasons set forth in the Court's *Decision on Imputation, Punitive Damages, and*

*Other No-Strike and No-Dismissal Pleadings Issues*, entered on November 9, 2015 [Dkt. No.

13533] ("**Decision**"),[1] it is hereby ORDERED AND ADJUDGED as follows:[2]

**A.      Imputation**

1.      Knowledge of New GM personnel, whenever acquired, may be imputed to New

GM if permitted under nonbankruptcy law.

2.      Knowledge of Old GM personnel may not be imputed to New GM based on any

type of successorship theory.

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision. For purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt. No. 12826], at 3); (ii) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM Vehicle (as herein defined); (iii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that first occurred prior to the closing of the 363 Sale; and (iv) "**Post-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred after the closing of the 363 Sale.
      The term "**Economic Loss Plaintiffs**" as used on page 7 of the Decision shall be changed to "Ignition Switch Plaintiffs."

[2]   Any ruling set forth in this Judgment that refers to a particular lawsuit, complaint and/or plaintiff shall apply equally to all lawsuits, complaints and plaintiffs where such ruling may be applicable.

3.      To the extent knowledge of Old GM personnel is permitted under nonbankruptcy law to be imputed to Old GM, such knowledge may be imputed to New GM for purposes of Product Liability Claims that were assumed by New GM under the Sale Order.

4.      With respect to Independent Claims,[3] knowledge of Old GM may be imputed to New GM to the extent   permitted under nonbankruptcy law, if that knowledge is, under nonbankruptcy law, relevant to viable Independent Claims.   To the extent imputation is appropriate for such viable Independent Claims, imputation of knowledge from Old GM to New GM can occur only if the fact (a) was actually known to a New GM employee (*e.g.*, because it is the knowledge of the same employee or because it was communicated to a New GM employee), or (b) could be ascertained from New GM's books and records, even if such documents were transferred by Old GM to New GM as part of the 363 Sale and, therefore, such documents first came into existence before the 363 Sale.

5.      Imputation turns on the specifics and context of the situation and the particular purpose for which imputation is sought, and it must be based on identified individuals or identified documents.  For causes of action where it is appropriate to impute knowledge to New GM, it is possible for such knowledge, depending on the specific circumstances, to be imputed to New GM as early as the first day of its existence, if otherwise permitted under nonbankruptcy law.[4]

6.      The foregoing general principles on imputation may be applied in courts other than this Court in the context of particular allegations that rely on such principles.  By reason of this Court's limited gatekeeper role, this Court will not engage in further examination of whether

---

[3]    "Independent Claim" shall mean a claim or cause of action asserted against New GM relating to the Ignition Switch Defect that is based solely on New GM's own independent post-Closing acts or conduct.  Independent Claims do not include (a) Assumed Liabilities, or (b) Retained Liabilities, which are any Liabilities that Old GM had prior to the closing of the 363 Sale that are not Assumed Liabilities.

[4]    Allegations in pleadings starting with "New GM knew…" or "New GM was on notice that…" are permissible.

2

particular allegations may be imputed to New GM, beyond the extent to which it has done so in the Decision and this Judgment.

**B.  Punitive Damages and Related Issues**

7.    New GM's assumption of Product Liabilities (as defined in the Sale Agreement) is limited to compensatory damages and does not include punitive damages.  New GM did not contractually assume liability for punitive damages for Product Liabilities, economic loss claims, or under any other theories of recovery (by operation of law or otherwise).  New GM is not liable for punitive damages for vehicles manufactured and first sold by Old GM ("**Old GM Vehicles**") if such claims are based in any way on Old GM conduct.

8.    A claim for punitive damages involving an Old GM Vehicle with the Ignition Switch Defect (as defined in the April Decision) may be asserted against New GM to the extent—but only to the extent—it relates to an otherwise viable Independent Claim.  The Court expresses no opinion on whether it is possible to state such a viable Independent Claim. Knowledge of New GM relevant to a viable Independent Claim may be based on (a) the imputation principles set forth in the Decision and this Judgment, and (b) information developed solely by New GM after the closing of the 363 Sale.

9.    Plaintiffs in vehicles without the Ignition Switch Defect and Pre-Closing Accident Plaintiffs have not demonstrated a due process violation with respect to the 363 Sale and, therefore, are not entitled to assert Independent Claims against New GM with respect to Old GM Vehicles.  Thus, they may not assert punitive damages claims against New GM with respect to Old GM Vehicles.  To the extent such Plaintiffs have attempted to assert an Independent Claim against New GM in a pre-existing lawsuit with respect to an Old GM Vehicle, such claims are

3

proscribed by the Sale Order, April Decision and the Judgment dated June 1, 2015 [Dkt. No. 13177] ("**June Judgment**").

10.     Claims of any type against New GM for compensatory and punitive damages that are based on vehicles manufactured by New GM are not affected by the Sale Order and may proceed in the nonbankruptcy court where they were brought.  Except as provided in the June Judgment and the April Decision on which it was based, the provisions in the Sale Order shall remain unmodified and in full force and effect, including without limitation paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for Old GM's actions or inactions (*i.e.*, Old GM conduct).

**C.**     **Particular Allegations, Claims and/or Causes of Actions in Complaints**

11.     Allegations in complaints that refer to New GM as the "successor of," a "mere continuation of," a "de facto successor of" (or similar phrases) of Old GM are proscribed by the Sale Order, April Decision and June Judgment, and all complaints (including, but not limited to, the MDL Consolidated Complaint filed in MDL 2543, the Bellwether Complaints filed in MDL 2543, the States Complaints, the Peller Complaints and the Other Complaints) that contain such allegations are and/or remain stayed, unless and until they are amended consistent with the Decision and this Judgment.

12.     Allegations in complaints (including, but not limited to, the MDL Complaint, the Bellwether Complaints, the States Complaints, the Peller Complaints and the Other Complaints) that do not distinguish between Old GM and New GM (*e.g.*, referring to "GM" or "General Motors"), or between Old GM vehicles and New GM vehicles (*e.g.,* referring to "GM-branded vehicles"), and/or assert that New GM "was not born innocent" (or any substantially similar phrase or language)  are proscribed by the Sale Order, April Decision and June Judgment, and all

4

complaints containing such allegations are and/or remain stayed, unless and until they are amended consistent with the Decision and this Judgment.  Notwithstanding the foregoing, (i) the term "GM" or "GM-branded vehicles" may be used if the context is clear that it can only refer to New GM; and (ii) complaints may say, without using code words as euphemisms for imposing successor liability, or muddying the distinctions between Old GM and New GM, that New GM purchased  the assets of Old GM; that New GM assumed Product Liabilities from Old GM; and that New GM acquired specified knowledge from Old GM.

13.     Allegations in complaints that allege or suggest that New GM manufactured or designed an Old GM Vehicle, or performed other conduct relating to the Old GM Vehicle before the Sale Order, are proscribed by the Sale Order, April Decision and June Judgment, and all complaints containing such allegations are and/or remain stayed, unless and until they are amended consistent with the Decision and this Judgment.

### D.      Claims in the Bellwether Complaints and MDL 2543

14.     Claims with respect to Old GM Vehicles that are based on fraud (including, but not limited to, actual fraud, constructive fraud, fraudulent concealment, fraudulent misrepresentation, negligent misrepresentation, *etc.*) and/or consumer protection statutes are not included within the definition of Product Liabilities and therefore do not constitute Assumed Liabilities.

15.     The Court expresses no view as to whether, as a matter of nonbankruptcy law, failure to warn claims for Old GM Vehicles are actionable against New GM, or whether New GM has a duty related thereto.  A court other than this Court can make that determination for Post-Closing Accident Claims.

16.    A duty to recall or retrofit is not an Assumed Liability, and New GM is not responsible for any failures of Old GM to do so.  But whether an Independent Claim can be asserted that New GM had a duty to recall or retrofit an Old GM Vehicle with the Ignition Switch Defect is a question of nonbankruptcy law that can be determined by a court other than this Court.

17.    Whether New GM had a duty, enforceable in damages to vehicle owners, to notify people who had previously purchased Old GM Vehicles of the Ignition Switch Defect is an issue that can be determined by a court other than this Court.  However, it should be noted that (a) New GM's covenant in the Sale Agreement to comply with the Motor Vehicle Safety Act (as more fully set forth in Section 6.15(a) of the Sale Agreement) is not an Assumed Liability; (b) Plaintiffs in MDL 2543 have not asserted a private right of action under the Motor Vehicle Safety Act; and (c) Old GM Vehicle owners are not third-party beneficiaries under the Sale Agreement.

18.    Unless otherwise set forth herein, the determination of whether claims asserted in complaints filed by Ignition Switch Plaintiffs (including the MDL Consolidated Complaint filed in MDL 2543), or complaints filed by Post-Closing Accident Plaintiffs (including the Bellwether Complaints filed in MDL 2543) with the Ignition Switch Defect, are Independent Claims that may properly be asserted against New GM, or Retained Liabilities of Old GM, can be made by nonbankruptcy courts overseeing such lawsuits, *provided however*, such plaintiffs may not assert allegations of Old GM knowledge or seek to introduce evidence of Old GM's knowledge in support of such Independent Claims (except to the extent the Imputation principles set forth in the Decision and this Judgment are applicable).

DMSLIBRARY01\21600\234022\27620874.v3-11/30/15

E.      **Claims in Complaints Alleging New GM is Liable for Vehicle
        Owners' Failure to File Proofs of Claim Against Old GM**

        19.     Claims in complaints (including, but not limited to, the MDL Consolidated

Complaint and the *Adams* complaint) that allege New GM is liable for vehicle owners' failure to

file proofs of claim in the Old GM bankruptcy case are barred and enjoined by the Sale Order,

April Decision and June Judgment, and shall not be asserted against New GM.   For the

avoidance of doubt, (i) the one and only count in the *Adams* complaint, entitled "*Negligence,

Gross Negligence, Recklessness and/or Fraud by Concealment of the Right to File a Claim

Against Old GM in Bankruptcy*," is proscribed and the *Adams* plaintiffs are directed to dismiss

the *Adams* complaint forthwith, and (ii) the counts in the MDL Consolidated Complaint, entitled

"*Fraud By Concealment Of The Right To File A Claim Against Old GM In Bankruptcy*," are

proscribed and the MDL plaintiffs are directed to dismiss such counts forthwith.

F.      **The States Complaints**

        20.     New GM shall not be liable to the States for any violations of consumer

protection statutes that took place before the 363 Sale.   Whether New GM can be held liable to

the States for New GM's sale of vehicles that post-date the 363 Sale is a matter of

nonbankruptcy law that will be decided by nonbankruptcy courts overseeing such cases.   To the

extent nonbankruptcy law imposes duties at the time of a vehicle's sale, and if the Old GM

Vehicle was first sold prior to the closing of the 363 Sale, claims premised on any breaches of

such duties  are barred by the Sale Order, April Decision and June Judgment.

        21.     With respect to the California complaint, the allegations relating to Old GM

conduct in paragraphs 46-54, 58-60, 71, 95-96, 112-114, 189-190 and 200-201 violate the Sale

Order, April Decision and June Judgment.   Paragraphs 192, 195, 196, 198, 199, 203-206 and 211

do not say whether they make reference to Old GM or New GM and must be clarified.   For this

7

and other reasons as set forth in the Decision and this Judgment, the California Action shall remain stayed until the complaint is amended as directed by the Decision and this Judgment.

22.      With respect to the Arizona complaint, (i) the allegation in paragraph 19 that New GM "was not born innocent" is impermissible and violates the Sale Order, April Decision and June Judgment; and (ii) the allegations relating to Old GM conduct in paragraphs 92, 93, 136 and 357 violate the Sale Order, April Decision and June Judgment.  The Arizona Action shall remain stayed until the complaint is amended as directed by the Decision and this Judgment.

**G.      The Peller Complaints**

23.      With respect to the Peller Complaints, whether the claims asserted therein by Ignition Switch Plaintiffs with respect to Old GM Vehicles are Independent Claims are matters of nonbankruptcy law to be decided by nonbankruptcy courts, *provided however*, the Peller Complaints shall remain stayed unless and until they are amended with respect to Old GM Vehicles (i) to remove all allegations that are premised on Old GM conduct, (ii) to comply with the other applicable provisions of the Decision and this Judgment, and (iii) to strike any purported Independent Claims by Non-Ignition Switch Plaintiffs or Pre-Closing Accident Plaintiffs.  To the extent the Peller Complaints assert claims against New GM based on New GM manufactured vehicles, such claims are not proscribed by the Sale Order, April Decision and June Judgment.

**H.      Other Complaints**

*(1)      "Failure to Recall/Retrofit Vehicles"*

24.      Obligations, if any, that New GM had to recall or retrofit Old GM Vehicles were not Assumed Liabilities, and New GM is not the successor to Old GM and is not responsible for any failures of Old GM to do so.  But whether New GM had an independent duty to recall or

8

retrofit previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law.

25.     The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law for such Old GM Vehicles, but allows this claim to be asserted by the Ignition Switch Plaintiffs and the Post-Closing Accident Plaintiffs (such as has been asserted by the plaintiff in *Moore v. Ross*) with the Ignition Switch Defect, leaving determination of whether this is a viable Independent Claim to the court hearing this action.  For the avoidance of doubt, claims referred to in this section shall not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

*(2)     "Negligent Failure to Identify Defects or Respond to Notice of a Defect"*

26.     Obligations, if any, that New GM had to identify or respond to defects in previously sold Old GM Vehicles were not Assumed Liabilities, and New GM is not the successor to Old GM and is not responsible for any failures of Old GM to do so.  But whether New GM had an independent duty to identify or respond to defects in previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law.

27.     The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law for such Old GM Vehicles, and allows this claim to be asserted by the Ignition Switch Plaintiffs and the Post-Closing Accident Plaintiffs with the Ignition Switch Defect, leaving determination of whether this is a viable Independent Claim  to the court hearing this action.  For the avoidance of doubt, claims referred to in this section shall not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

DMSLIBRARY01\21600\234022\27620874.v3-11/30/15

*(3)     "Negligent Infliction of Economic Loss and Increased Risk"*

28.     Claims that New GM had a duty to warn consumers owning Old GM Vehicles of the Ignition Switch Defect but instead concealed it, and by doing so, the economic value of the Ignition Switch Plaintiffs' vehicles was diminished (such as been raised by the plaintiffs in *Elliott* and *Sesay*) were not Assumed Liabilities, and New GM is not the successor to Old GM and is not responsible for any failures of Old GM to do so.   But whether New GM had an independent duty to warn consumers owning previously sold Old GM Vehicles that New GM did not manufacture of the Ignition Switch Defect is a question of nonbankruptcy law.  The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law to warn for such Old GM Vehicles with the Ignition Switch Defect, and allows this claim to be asserted by the Ignition Switch Plaintiffs to the extent, but only the extent, that New GM had an independent "duty to warn" owners of Old GM Vehicles of the Ignition Switch Defect, as relevant to situations *in which no one is alleged to have been injured* by that failure, but where the Old GM Vehicles involved are alleged to have lost value as a result. Determination of whether this is a viable Independent Claim will be left to the court hearing the underlying actions.  For the avoidance of doubt, claims referred to in this section shall not be asserted by Non-Ignition Switch Plaintiffs and/or Pre-Closing Accident Plaintiffs against New GM.

*(4)     "Civil Conspiracy"*

29.     *De Los Santos v. Ortega*, in Texas state court, and the Peller Complaints in the District of Columbia, involve claims that New GM was involved "in a civil conspiracy with others to conceal the alleged ignition switch defect."  Claims of this character were not Assumed Liabilities.   The extent to which they might constitute Independent Claims requires a determination of nonbankruptcy law.  This Court leaves the determination of the nonbankruptcy

10

issue as to whether claims of this sort are actionable, with respect to vehicles previously manufactured and sold by a different entity, to the nonbankruptcy court hearing the underlying action.  For the avoidance of doubt, claims referred to in this section shall not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

   (5)      *"Section 402B—Misrepresentation by Seller"*

   30.      Claims based on "Section 402B-Misrepresentation by Seller" fall within the definition of assumed Product Liabilities, and such claims may be asserted against New GM, *provided however*, whether New GM is liable for such claims shall be determined by the nonbankruptcy courts overseeing such lawsuits.

   (6)      *Claims Based on Pre-Closing Accidents*

   31.      All claims brought by Pre-Closing Accident Plaintiffs (like the *Coleman* action in the Eastern District of Louisiana) seeking to hold New GM liable, under any theory of liability, for accidents or incidents that first occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order, April Decision and June Judgment. The Pre-Closing Accident Plaintiffs shall not assert or maintain such claims against New GM.

**I.    Jurisdiction**

   32.      The Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based.  This Judgment shall not be collaterally attacked, or otherwise subjected to review or modification, in any Court other than this Court or any court exercising appellate authority over this Court.

11

09-50026-reg    Doc 13550-11    Filed 11/30/15    Entered 11/30/15 15:48:51    Exhibit AK
Pg 13 of 13

**J.**    **Amended Complaints**

33.    For the avoidance of any doubt, complaints amended in compliance with this Judgment may be filed in the non-bankruptcy courts with jurisdiction over them, without violating any automatic stay or injunction or necessitating further Bankruptcy Court approval to file same.  It will be up to the other courts (including the MDL court which has stayed many actions) to decide when it would be appropriate to file such amendments.

Dated: New York, New York
          December __, 2015

_____
    UNITED STATES BANKRUPTCY JUDGE

09-50026-reg    Doc 13590-1    Filed 11/30/15    Entered 11/30/15 15:48:51    Exhibit B
Pg 1 of 57

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re                                               :        Chapter 11
                                                    :
MOTORS LIQUIDATION COMPANY, *et al.*,              :        Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., *et al.*       :
                                                    :
                        Debtors.                    :        (Jointly Administered)
----------------------------------------------------------------x

## JUDGMENT

For the reasons set forth in the Court's *Decision on Imputation, Punitive Damages, and Other No-Strike and No-Dismissal Pleadings Issues*, entered on November 9, 2015 [Dkt. No. 13533] ("**Decision**"),[1] it is hereby ORDERED AND ADJUDGED as follows:[2]

### A.    **Imputation**

1.    Knowledge of New GM personnel, whenever acquired, may be imputed to New GM if permitted under nonbankruptcy law. (Decision, at 2, 65).

2.    Knowledge of Old GM personnel may not be imputed to New GM based on any type of successorship theory. (*Id.* at 16).

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision. For purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt. No. 12826], at 3); (ii) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM Vehicle (as herein defined); (iii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that first occurred prior to the closing of the 363 Sale; and (iv) "**Post-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred after the closing of the 363 Sale.
The term "**Economic Loss Plaintiffs**" as used on page 7 of the Decision shall be changed to "Ignition Switch Plaintiffs."

[2]    Any ruling set forth in this Judgment that refers to a particular lawsuit, complaint and/or plaintiff shall apply equally to all lawsuits, complaints and plaintiffs where such ruling may be applicable.

3.      To the extent knowledge of Old GM personnel is permitted under nonbankruptcy law to be imputed to Old GM, such knowledge may be imputed to New GM for purposes of Product Liability Claims that were assumed by New GM under the Sale Order. (*Id.* at 2-3, 65).

4.      With respect to Independent Claims,[3] knowledge of Old GM may be imputed to New GM to the extent   permitted under nonbankruptcy law, if that knowledge is, under nonbankruptcy law, relevant to viable Independent Claims. (*Id.* at 16).  To the extent imputation is appropriate for such viable Independent Claims, imputation of knowledge from Old GM to New GM can occur only if the fact (a) was actually known to a New GM employee (*e.g.*, because it is the knowledge of the same employee or because it was communicated to a New GM employee) (*id.* at 2-3, 16), or (b) could be ascertained from New GM's books and records, even if such documents were transferred by Old GM to New GM as part of the 363 Sale and, therefore, such documents first came into existence before the 363 Sale. (*Id.*).

5.      Imputation turns on the specifics and context of the situation and the particular purpose for which imputation is sought, and it must be based on identified individuals or identified documents. (*Id.* at 15). For causes of action where it is appropriate to impute knowledge to New GM, it is possible for such knowledge, depending on the specific circumstances, to be imputed to New GM as early as the first day of its existence, if otherwise permitted under nonbankruptcy law.[4] (*Id.* at 16)

6.      The foregoing general principles on imputation may be applied in courts other than this Court in the context of particular allegations that rely on such principles.  By reason of this Court's limited gatekeeper role, this Court will not engage in further examination of whether

---

[3]   "Independent Claim" shall mean a claim or cause of action asserted against New GM relating to the Ignition Switch Defect that is based solely on New GM's own independent post-Closing acts or conduct.  Independent Claims do not include (a) Assumed Liabilities, or (b) Retained Liabilities, which are any Liabilities that Old GM had prior to the closing of the 363 Sale that are not Assumed Liabilities.

[4]   Allegations in pleadings starting with "New GM knew…" or "New GM was on notice that…" are permissible.

DMSLIBRARY01\21600\234022\27623978.v3-11/30/15

particular allegations may be imputed to New GM, beyond the extent to which it has done so in the Decision and this Judgment. (*Id.* at 16).

**B.    Punitive Damages and Related Issues**

7.    New GM's assumption of Product Liabilities (as defined in the Sale Agreement) is limited to compensatory damages and does not include punitive damages. (*Id.* at 3, 19, 27). New GM did not contractually assume liability for punitive damages for Product Liabilities, economic loss claims, or under any other theories of recovery (by operation of law or otherwise). New GM is not liable for punitive damages for vehicles manufactured and first sold by Old GM ("**Old GM Vehicles**") if such claims are based in any way on Old GM conduct.  (*Id.* at 3-4).

8.     A claim for punitive damages involving an Old GM Vehicle with the Ignition Switch Defect (as defined in the April Decision) may be asserted against New GM to the extent—but only to the extent—it relates to an otherwise viable Independent Claim. (*Id.* at 65). The Court expresses no opinion on whether it is possible to state such a viable Independent Claim.  Knowledge  of New GM relevant to a viable Independent Claim may be based on (a) the imputation principles set forth in the Decision and this Judgment (*id.*at 27-28), and (b) information developed solely by New GM after the closing of the 363 Sale (*id.*).

9.    Plaintiffs in vehicles without the Ignition Switch Defect and Pre-Closing Accident Plaintiffs have not demonstrated a due process violation with respect to the 363 Sale and, therefore, are not entitled to assert Independent Claims against New GM with respect to Old GM Vehicles. (*Id.* at 42 n.70).  Thus, they may not assert punitive damages claims against New GM with respect to Old GM Vehicles. (*Id.*).  To the extent such Plaintiffs have attempted to assert an Independent Claim against New GM in a pre-existing lawsuit with respect to an Old GM

3

Vehicle, such claims are proscribed by the Sale Order, April Decision and the Judgment dated June 1, 2015 [Dkt. No. 13177] ("**June Judgment**").

10.     Claims of any type against New GM for compensatory and punitive damages that are based on vehicles manufactured by New GM are not affected by the Sale Order and may proceed in the nonbankruptcy court where they were brought. (*Id.*at 33-34).  Except as provided in the June Judgment and the April Decision on which it was based, the provisions in the Sale Order shall remain unmodified and in full force and effect, including without limitation paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for Old GM's actions or inactions (*i.e.*, Old GM conduct).

**C.     Particular Allegations, Claims and/or Causes of Actions in Complaints**

11.     Allegations in complaints that refer to New GM as the "successor of," a "mere continuation of," a "de facto successor of" (or similar phrases) (*id.* at 36) of Old GM are proscribed by the Sale Order, April Decision and June Judgment, and all complaints (including, but not limited to, the MDL Consolidated Complaint filed in MDL 2543, the Bellwether Complaints filed in MDL 2543, the States Complaints, the Peller Complaints and the Other Complaints) that contain such allegations are and/or remain stayed, unless and until they are amended consistent with the Decision and this Judgment. (*Id.* at 35-36).

12.     Allegations in complaints (including, but not limited to, the MDL Complaint, the Bellwether Complaints, the States Complaints, the Peller Complaints and the Other Complaints) that do not distinguish between Old GM and New GM (*e.g.*, referring to "GM" or "General Motors") (*id.* at 36), or between Old GM vehicles and New GM vehicles (*e.g.,* referring to "GM-branded vehicles"), and/or assert that New GM "was not born innocent" (or any substantially similar phrase or language) (*id.* at 54 n.94) are proscribed by the Sale Order, April Decision and

June Judgment, and all complaints containing such allegations are and/or remain stayed, unless and until they are amended consistent with the Decision and this Judgment.  Notwithstanding the foregoing, (i) the term "GM" or "GM-branded vehicles" may be used if the context is clear that it can only refer to New GM (*id.* at 45); and (ii) complaints may say, without using code words as euphemisms for imposing successor liability, or muddying the distinctions between Old GM and New GM, that New GM purchased the assets of Old GM (*id.* at 37); that New GM assumed Product Liabilities from Old GM; and that New GM acquired specified knowledge from Old GM (*id.* at 37).

13.      Allegations in complaints that allege or suggest that New GM manufactured or designed an Old GM Vehicle, or performed other conduct relating to the Old GM Vehicle before the Sale Order, are proscribed by the Sale Order, April Decision and June Judgment, and all complaints containing such allegations are and/or remain stayed, unless and until they are amended consistent with the Decision and this Judgment. (*Id.* at 36 n.63).

**D.    Claims in the Bellwether Complaints and MDL 2543**

14.      Claims with respect to Old GM Vehicles that are based on fraud (including, but not limited to, actual fraud, constructive fraud, fraudulent concealment, fraudulent misrepresentation, negligent misrepresentation, *etc.*) and/or consumer protection statutes are not included within the definition of Product Liabilities and therefore do not constitute Assumed Liabilities. (*Id.* at 39, 55-56).

15.      The Court expresses no view as to whether, as a matter of nonbankruptcy law, failure to warn claims for Old GM Vehicles are actionable against New GM, or whether New GM has a duty related thereto. (*Id.* at 40-41). A court other than this Court can make that determination for Post-Closing Accident Claims. (*Id.*).

DMSLIBRARY01\21600\234022\27623978.v3-11/30/15

16.    A duty to recall or retrofit is not an Assumed Liability, and New GM is not responsible for any failures of Old GM to do so. (*Id.* at 61).  But whether an Independent Claim can be asserted that New GM had a duty to recall or retrofit an Old GM Vehicle with the Ignition Switch Defect is a question of nonbankruptcy law that can be determined by a court other than this Court.  (*Id.*).

17.    Whether New GM had a duty, enforceable in damages to vehicle owners, to notify people who had previously purchased Old GM Vehicles of the Ignition Switch Defect is an issue that can be determined by a court other than this Court. (*Id.* at 61-62).   However, it should be noted that (a) New GM's covenant in the Sale Agreement to comply with the Motor Vehicle Safety Act (as more fully set forth in Section 6.15(a) of the Sale Agreement) is not an Assumed Liability (*id.* at 41 n.67); (b) Plaintiffs in MDL 2543 have not asserted a private right of action under the Motor Vehicle Safety Act; and (c) Old GM Vehicle owners are not third-party beneficiaries under the Sale Agreement (*id.*).

18.    Unless otherwise set forth herein, the determination of whether claims asserted in complaints filed by Ignition Switch Plaintiffs (including the MDL Consolidated Complaint filed in MDL 2543), or complaints filed by Post-Closing Accident Plaintiffs (including the Bellwether Complaints filed in MDL 2543) with the Ignition Switch Defect, are Independent Claims that may properly be asserted against New GM, or Retained Liabilities of Old GM, can be made by nonbankruptcy courts overseeing such lawsuits, *provided however*, such plaintiffs may not assert allegations of Old GM knowledge or seek to introduce evidence of Old GM's knowledge in support of such Independent Claims (except to the extent the Imputation principles set forth in the Decision and this Judgment are applicable). (*Id.* at 41-44).

6

E.    **Claims in Complaints Alleging New GM is Liable for Vehicle
Owners' Failure to File Proofs of Claim Against Old GM**

19.    Claims in complaints (including, but not limited to, the MDL Consolidated
Complaint and the *Adams* complaint) that allege New GM is liable for vehicle owners' failure to
file proofs of claim in the Old GM bankruptcy case are barred and enjoined by the Sale Order,
April Decision and June Judgment, and shall not be asserted against New GM. (*Id.* at 47-52). For
the avoidance of doubt, (i) the one and only count in the *Adams* complaint, entitled "*Negligence,
Gross Negligence, Recklessness and/or Fraud by Concealment of the Right to File a Claim
Against Old GM in Bankruptcy*," is proscribed and the *Adams* plaintiffs are directed to dismiss
the *Adams* complaint forthwith, and (ii) the counts in the MDL Consolidated Complaint, entitled
"*Fraud By Concealment Of The Right To File A Claim Against Old GM In Bankruptcy*," are
proscribed and the MDL plaintiffs are directed to dismiss such counts forthwith. (*Id.* at 50-52).

F.    **The States Complaints**

20.    New GM shall not be liable to the States for any violations of consumer
protection statutes that took place before the 363 Sale. (*Id.* at 56).  Whether New GM can be held
liable to the States for New GM's sale of vehicles that post-date the 363 Sale is a matter of
nonbankruptcy law that will be decided by nonbankruptcy courts overseeing such cases.  To the
extent nonbankruptcy law imposes duties at the time of a vehicle's sale, and if the Old GM
Vehicle was first sold prior to the closing of the 363 Sale, claims premised on any breaches of
such duties  are barred by the Sale Order, April Decision and June Judgment. (*Id.*).

21.    With respect to the California complaint, the allegations relating to Old GM
conduct in paragraphs 46-54, 58-60, 71, 95-96, 112-114, 189-190 and 200-201 violate the Sale
Order, April Decision and June Judgment. (*Id.* at 54).  Paragraphs 192, 195, 196, 198, 199, 203-
206 and 211 do not say whether they make reference to Old GM or New GM and must be

7

clarified. (*Id.* at 54 n.93).   For this and other reasons as set forth in the Decision and this Judgment, the California Action shall remain stayed until the complaint is amended as directed by the Decision and this Judgment. (*Id.* at 55).

22.    With respect to the Arizona complaint, (i) the allegation in paragraph 19 that New GM "was not born innocent" is impermissible and violates the Sale Order, April Decision and June Judgment (*id.* at 54 n.94); and (ii) the allegations relating to Old GM conduct in paragraphs 92, 93, 136 and 357 violate the Sale Order, April Decision and June Judgment (*id.* at 54-55). The Arizona Action shall remain stayed until the complaint is amended as directed by the Decision and this Judgment. (*Id.* at 55).

## G.    The Peller Complaints

23.    With respect to the Peller Complaints, whether the claims asserted therein by Ignition Switch Plaintiffs with respect to Old GM Vehicles are Independent Claims are matters of nonbankruptcy law to be decided by nonbankruptcy courts, *provided however*, the Peller Complaints shall remain stayed unless and until they are amended with respect to Old GM Vehicles (i) to remove all allegations that are premised on Old GM conduct, (ii) to comply with the other applicable provisions of the Decision and this Judgment, and (iii) to strike any purported Independent Claims by Non-Ignition Switch Plaintiffs or Pre-Closing Accident Plaintiffs. (*Id.* at 57-60). To the extent the Peller Complaints assert claims against New GM based on New GM manufactured vehicles, such claims are not proscribed by the Sale Order, April Decision and June Judgment. (*Id.* at 59).

8

## H.   **Other Complaints**

### (1)    *"Failure to Recall/Retrofit Vehicles"*

24.    Obligations, if any, that New GM had to recall or retrofit Old GM Vehicles were not Assumed Liabilities, and New GM is not the successor to Old GM and is not responsible for any failures of Old GM to do so. (*Id.* at 61). But whether New GM had an independent duty to recall or retrofit previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law. (*Id.*).

25.    The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law for such Old GM Vehicles, but allows this claim to be asserted by the Ignition Switch Plaintiffs and the Post-Closing Accident Plaintiffs (such as has been asserted by the plaintiff in *Moore v. Ross*) with the Ignition Switch Defect, leaving determination of whether this is a viable Independent Claim to the court hearing this action. (*Id.*).  For the avoidance of doubt, claims referred to in this section shall not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

### (2)    *"Negligent Failure to Identify Defects or Respond to Notice of a Defect"*

26.    Obligations, if any, that New GM had to identify or respond to defects in previously sold Old GM Vehicles were not Assumed Liabilities, and New GM is not the successor to Old GM and is not responsible for any failures of Old GM to do so. (*Id.* at 61-62). But whether New GM had an independent duty to identify or respond to defects in previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law. (*Id.* at 62).

27.    The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law for such Old GM Vehicles, and allows this claim to be asserted by the

9

Ignition Switch Plaintiffs and the Post-Closing Accident Plaintiffs with the Ignition Switch Defect, leaving determination of whether this is a viable Independent Claim to the court hearing this action. (*Id.*). For the avoidance of doubt, claims referred to in this section shall not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

*(3)    "Negligent Infliction of Economic Loss and Increased Risk"*

28.    Claims that New GM had a duty to warn consumers owning Old GM Vehicles of the Ignition Switch Defect but instead concealed it, and by doing so, the economic value of the Ignition Switch Plaintiffs' vehicles was diminished (such as been raised by the plaintiffs in *Elliott* and *Sesay*) were not Assumed Liabilities, and New GM is not the successor to Old GM and is not responsible for any failures of Old GM to do so. (*Id.* at 62). But whether New GM had an independent duty to warn consumers owning previously sold Old GM Vehicles that New GM did not manufacture of the Ignition Switch Defect is a question of nonbankruptcy law. (*Id.*). The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law to warn for such Old GM Vehicles with the Ignition Switch Defect, and allows this claim to be asserted by the Ignition Switch Plaintiffs to the extent, but only the extent, that New GM had an independent "duty to warn" owners of Old GM Vehicles of the Ignition Switch Defect, as relevant to situations *in which no one is alleged to have been injured* by that failure, but where the Old GM Vehicles involved are alleged to have lost value as a result. (*Id.*). Determination of whether this is a viable Independent Claim will be left to the court hearing the underlying actions. (*Id.*). For the avoidance of doubt, claims referred to in this section shall not be asserted by Non-Ignition Switch Plaintiffs and/or Pre-Closing Accident Plaintiffs against New GM.

DMSLIBRARY01\21600\234022\27623978.v3-11/30/15

*(4)     "Civil Conspiracy"*

29.     *De Los Santos v. Ortega*, in Texas state court, and the Peller Complaints in the District of Columbia, involve claims that New GM was involved "in a civil conspiracy with others to conceal the alleged ignition switch defect." Claims of this character were not Assumed Liabilities. (*Id.* at 62-63). The extent to which they might constitute Independent Claims requires a determination of nonbankruptcy law. (*Id.* at 63). This Court leaves the determination of the nonbankruptcy issue as to whether claims of this sort are actionable, with respect to vehicles previously manufactured and sold by a different entity, to the nonbankruptcy court hearing the underlying action. (*Id.*). For the avoidance of doubt, claims referred to in this section shall not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

*(5)     "Section 402B—Misrepresentation by Seller"*

30.     Claims based on "Section 402B-Misrepresentation by Seller" fall within the definition of assumed Product Liabilities, and such claims may be asserted against New GM, *provided however*, whether New GM is liable for such claims shall be determined by the nonbankruptcy courts overseeing such lawsuits. (*Id.* at 63-64).

*(6)     Claims Based on Pre-Closing Accidents*

31.     All claims brought by Pre-Closing Accident Plaintiffs (like the *Coleman* action in the Eastern District of Louisiana) seeking to hold New GM liable, under any theory of liability, for accidents or incidents that first occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order, April Decision and June Judgment. (*Id.* at 64-65). The Pre-Closing Accident Plaintiffs shall not assert or maintain such claims against New GM. (*Id.*).

11

09-50026-reg    Doc 13550-1    Filed 11/30/15    Entered 11/30/15 15:48:51    Exhibit B
Pg 13 of 13

## I.      Jurisdiction

32.    The Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based.  This Judgment shall not be collaterally attacked, or otherwise subjected to review or modification, in any Court other than this Court or any court exercising appellate authority over this Court.

## J.      Amended Complaints

33.    For the avoidance of any doubt, complaints amended in compliance with this Judgment may be filed in the non-bankruptcy courts with jurisdiction over them, without violating any automatic stay or injunction or necessitating further Bankruptcy Court approval to file same.  It will be up to the other courts (including the MDL court which has stayed many actions) to decide when it would be appropriate to file such amendments.

Dated: New York, New York
      December __, 2015

                         _____
                         UNITED STATES BANKRUPTCY JUDGE

09-50026-reg    Doc 13550-3    Filed 11/30/15    Entered 11/30/15 15:48:51    Exhibit C
Pg 34 of 54

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x
In re                                              :      Chapter 11
                                                   :
MOTORS LIQUIDATION COMPANY, *et al.*,              :      Case No.: 09-50026 (REG)
         f/k/a General Motors Corp., *et al.*      :
                                                   :      (Jointly Administered)
                  Debtors.                         :
                                                   :
----------------------------------------------------------------- x

JUDGMENT ON IMPUTATION,
PUNITIVE DAMAGES, AND OTHER
NO-STRIKE AND NO-DISMISSAL
PLEADINGS ISSUES

For the reasons set forth in the Court's *Decision on Imputation, Punitive Damages, and Other No-Strike and No-Dismissal Pleadings Issues*, entered on November 9, 2015 ("**Decision**"),[1] it is hereby ADJUDGED as follows:

1.      Knowledge of New GM personnel, whenever acquired, may be imputed to New GM consistent with nonbankruptcy law.  But knowledge of Old GM personnel may not be imputed to New GM except (a) on assumed Product Liabilities Claims (to the extent consistent with nonbankruptcy law), or (b) to the extent that, after such Old GM personnel were hired by New GM if it can be shown (*e.g.*, because it is the knowledge of the same employee or because it was communicated to a New GM employee) that New GM had such knowledge too as a matter of nonbankruptcy law.  Further, to the extent, as a matter of nonbankruptcy law, the knowledge may be imputed as a consequence of documents in a company's files, Documents in New GM's files may be utilized as a predicate for such knowledge, even if they first came into being before the sale from Old GM to New GM.  Allegations of that knowledge or notice, even if alleged in

> **Comment [SA1]:** The insertion of this clause here and in the following two sentences in this paragraph is intended to remind other courts that imputation between an employee and its employer is not automatic and must be permitted under nonbankruptcy law.

---
[1]      Unless otherwise defined herein, capitalized terms shall have the meanings assigned to them in the Decision.

1

general terms, can be asserted by the plaintiffs with nonbankruptcy courts determining the extent to which such allegations have been alleged with sufficiently specificity specifically to warrant findings of imputation.

2.      Any acts by New GM personnel, or knowledge of New GM personnel (including knowledge that any of them might have acquired while previously working at Old GM) may, consistent with the April Decision and Judgment, be imputed to New GM to the extent such is appropriate under applicable nonbankruptcy law.   Likewise, to the extent, as a matter of nonbankruptcy law, knowledge may be imputed as a consequence of documents in a company's files, documents in New GM's files may be utilized as a predicate for such knowledge, even if they first came into existence before the sale from Old GM to New GM.   Those general principles may be applied in courts other than this one in the context of particular allegations that rely on those principles—without the need for the bankruptcy court to engage in further examination of particular allegations beyond the extent to which it has done so in the Decision.

3.      The propriety of imputation turns on the specifics of the situation.   Imputation must be found in the context of the imputation of identified individuals or identified documents, for particular purposes.  New GM may not be saddled with imputation of Old GM knowledge by successorship alone, as a substitute for showing that a fact was actually known to a New GM employee or could be ascertained from New GM's files.  In actions alleging Product Liabilities Claims and Independent Claims, allegations that New GM's knowledge may be imputed to it starting with the first day of its existence may be asserted, with the ultimate determination being made by the court hearing the case. Plaintiffs asserting such Claims may make allegations starting with "New GM knew . . ." or "New GM was on notice that . . . ."

4.      Punitive damages with respect to Product Liabilities Claims or Economic Loss

> **Comment [SA2]:** Added to show that knowledge is relevant only if it is an element of a viable Independent Claim and that this Court was not deciding whether the so-called Independent Claims asserted against New GM after the entry of the Sale Order(as modified by the April 15 Decision) were viable under nonbankruptcy law.

2

claims involving Old GM manufactured vehicles may be sought against New GM to the extent—
but only to the extent—they rely solely on New GM knowledge or conduct.  Those claims may
not be based on Old GM knowledge or conduct.  But they may be based on knowledge of New
GM employees that was "inherited" from their tenure at Old GM (or documents inherited from
Old GM), and may be based on knowledge acquired after the 363 Sale by New GM personnel, to
the extent otherwise permitted under nonbankruptcy law.

5.      New GM may be held liable for compensatory damages on Product Liabilities
Claims based on Old GM conduct, New GM conduct or both.  However, Post-Closing Accident
Plaintiffs in Old GM Vehicles with the Ignition Switch Defect (as defined in the April Decision)
can base their claims for punitive damages only on New GM conduct or knowledge.

6.      Independent Claims against New GM cannot be based, for either compensatory or
punitive damages purposes, on Old GM knowledge and conduct.  Damages of any character on
Independent Claims must be based solely on New GM's knowledge and conduct.

7.      In actions alleging Product Liabilities Claims with the Ignition Switch Defect and
Independent Claims with the Ignition Switch Defect, New GM may be held responsible, on
claims for both compensatory and punitive damages, for its own knowledge and conduct.  New
GM might have acquired relevant knowledge when former Old GM employees came over to
New GM or New GM took custody of what previously were Old GM records.  Reliance on that,
for punitive damages purposes, is permissible.[2]

8.      To the extent New GM employees actually had knowledge relevant to post-Sale
accident claims or Independent Claims (even if it was inherited) that was acquired in fact rather
than by operation of law (such as any kind of successorship theory), plaintiffs in actions

---

[2]      Knowledge New GM might have acquired in this manner is referred to herein as "inherited" information.

3

**Comment [DS3]:** The only modification to the Sale Order for Old GM vehicles are those with the Ignition Switch Defect.  These are the Independent Claims.

asserting such Claims are free to base punitive damages claims on evidence of such knowledge to the extent nonbankruptcy law permits.

9.     Information obtained by New GM after the Sale may be used for punitive damages purposes as well.  The extent to which such after-acquired information is relevant to punitive damages claims is a matter of nonbankruptcy law, as to which the Court expresses no view.  Evidence of information obtained by New GM after the sale may be relied upon, for punitive damages purposes, to the extent otherwise appropriate in the underlying actions.

10.     To the extent Ignition Switch~~Economic Loss P~~Plaintiffs (or, for that matter, State Cases Plaintiffs alleging the Ignition Switch Defect) make allegations based upon inherited information or information obtained by New GM after the Sale, evidence introduced using those pathways is permissible, but it is up to the judges hearing those cases to decide the propriety of reliance on such evidence to punitive damage claims.

<u>New GM's Four Contexts</u>

*1)     Personal Injuries in Post-Sale Accidents Involving Vehicles
        Manufactured by Old GM*

11.     Product Liabilities compensatory damages claims involving vehicles manufactured by Old GM were contractually assumed by New GM (and thus are permissible under the Sale Order, April Decision, and Judgment); punitive damages claims were not assumed by New GM.  Thus punitive damages in such actions may not be premised on anything Old GM knew or did.

12.     Nevertheless, punitive damages may still be sought in actions based on post-Sale accidents involving vehicles manufactured by Old GM with the Ignition Switch Defect to the extent the punitive damages claims are premised on New GM action or inaction after it was on notice of information "inherited" by New GM or information developed by New GM post-Sale.

4

09-50026-reg    Doc 13550-1    Filed 11/30/15    Entered 11/30/15 15:43:51    Exhibit K
Pg 38 of 54

2) *Personal Injuries in Post-Sale Accidents Involving Vehicles
Manufactured by New GM*

13.    Personal injury compensatory damages claims against New GM involving vehicles manufactured by New GM never were foreclosed under the Sale Order and remain permissible under the April Decision and Judgment.

14.    Claims against New GM for punitive damages involving New GM manufactured vehicles likewise were never foreclosed under the Sale Order and likewise remain permissible under the April Decision and Judgment.

15.    The underlying allegations and evidence used to support punitive damages claims involving New GM manufactured cars can be anything appropriate under nonbankruptcy law—including, if otherwise appropriate, not just information "inherited" by New GM or developed by New GM post-Sale, but also evidence of Old GM's pre-Sale knowledge and conduct. Except as provided in the June Judgment and the April Decision on which it was based, the provisions in the Sale Order shall remain unmodified and in full force and effect, including without limitation paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for Old GM's actions or inactions (*i.e.*, Old GM conduct). The Sale Order never professed to affect claims against New GM with respect to New GM manufactured cars in any way.

**Comment [DS4]:** This addition is intended to demonstrate that paragraph AA of the Sale Order was not amended by the previous statement.

3) Non-Product Liabilities Claims (in both personal injury and economic loss complaints) *I*nvolving *V*ehicles *M*anufactured by Old GM "and/or" New GM

(a)(i)  *Personal Injury Actions-Old GM Manufactured Vehicles*

16.    Because only Product Liabilities claims were assumed by New GM, other claims involving Old GM manufactured vehicles—including claims for compensatory damages on other causes of action and, as discussed above, for punitive damages—are Retained Liabilities.

5

New GM is not responsible for ~~Retained Liabilities. New GM is only liable for viable Independent Claims.~~ them except to the extent that they are premised solely on its own conduct.

> **Comment [SA5]:** Retained Liabilities are by definition not New GM liabilities. The only liabilities that certain plaintiffs can assert against New GM with respect to Old GM Vehicles after the Sale Order are viable Independent Claims under nonbankruptcy law.

17.    With respect to post-Sale Non-Product Liabilities claims asserted in actions involving personal injuries suffered in vehicles manufactured by Old GM with the Ignition Switch Defect, punitive damages may be assessed to the extent, but only the extent, they are premised on New GM knowledge and conduct.  Plaintiffs may refer to inherited knowledge and to knowledge acquired after the 363 Sale with respect to post-Sale Non-Product Liabilities claims.  But punitive damages sought as an adjunct to claims in this category may not rely on the conduct of Old GM and this is true, as always, with respect to both allegations in pleadings and any evidence of such.

*(a)(ii)  Personal Injury Actions-New GM Manufactured Vehicles*

18.    For claims involving vehicles manufactured by New GM, plaintiffs do not need the Court's permission to assert claims for Non-Product Liabilities compensatory damages claims any more than they need the Court's permission to assert claims for Product Liabilities compensatory damages claims.  The Sale Order did not foreclose claims against New GM involving New GM manufactured vehicles, and compensatory damage claims (on whatever theory) with respect to New GM manufactured vehicles may proceed against New GM without interference from this Court.  Nor, do plaintiffs need the Court's permission to assert punitive damages claims incident to Non-Product Liabilities Claims involving New GM manufactured vehicles.

19.    With respect to the evidence used to support punitive damages claims in actions involving New GM manufactured vehicles, evidence of inherited knowledge and knowledge acquired after the 363 Sale may be asserted and used; that is simply knowledge New GM had before the accident took place.  Relevant evidence of Old GM knowledge and conduct may be

6

asserted and used, as well.  Except as provided in the June Judgment and the April Decision on which it was based, the provisions in the Sale Order shall remain unmodified and in full force and effect, including without limitation paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for Old GM's actions or inactions (*i.e.*, Old GM conduct).

(b)(i)   *Economic Loss Actions-Old GM Manufactured Vehicles*

20.     Because claims only for Product Liabilities were assumed by New GM, other claims involving Old GM manufactured vehicles are Retained Liabilities.  New GM is not responsible for those other claims that are Retained Liabilities.  except tTo the extent that such claimsthey relating to vehicles manufactured by Old GM with the Ignition Switch Defect are premised solely on New GM's own conduct, theyand hence may be regarded as Independent Claims.  The same is true for punitive damages claims just as it is for compensatory damages claims—and for both the assertion of claims for punitive damages and the evidence that might support them.

21.     Thus claims for punitive damages arising from Economic Loss actions involving Old GM manufactured vehicles with the Ignition Switch Defect cannot be asserted except for any that might be recoverable in connection with Independent Claims, and then based only on New GM knowledge and conduct.  The same is true with respect to the evidence that might be offered to support those punitive damages claims.

22.     For vehicles already manufactured and sold before New GM came into existence, whether Independent Claims for Economic Loss relating to the Ignition Switch Defect can be asserted against New GM is matter of nonbankruptcy law, and not for this Court to decide.  This question is better decided by the judge(s) hearing the nonbankruptcy claims that have passed through the bankruptcy court gate..

7

*(b)(ii)  Economic Loss Actions-New GM Manufactured Vehicles*

23.    Economic Loss Claims with respect to New GM manufactured vehicles—which by definition were manufactured after New GM came into being—are not proscribed by the Sale Order.  Nor does the Sale Order proscribe punitive damages claims sought in actions against New GM for Economic Loss involving New GM vehicles.

24.    The evidence used to support such punitive damages claims may include evidence of inherited knowledge; of knowledge acquired after the 363 Sale; and, if nonbankruptcy courts regard such as appropriate, any relevant Old GM knowledge and conduct, as well.  Except as provided in the June Judgment and the April Decision on which it was based, the provisions in the Sale Order shall remain unmodified and in full force and effect, including without limitation paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for Old GM's actions or inactions (*i.e.*, Old GM conduct.  With respect to any punitive damages claims in Economic Loss actions involving New GM vehicles, those claims may be asserted against New GM.

*4)    Assertedly Independent Claims that Are In Reality Retained Liabilities of Old GM*

25.    To the extent that any claims against New GM involving Old GM manufactured vehicles are for Product Liabilities Claims involving the Ignition Switch Defect or genuinely Independent Claims involving the Ignition Switch Defect, claims for punitive damages against New GM may be sought in connection with them, but the evidence supporting such claims can be based only on New GM's knowledge and acts.  That evidence can include inherited knowledge and knowledge acquired after the 363 Sale, but not any acts, or non-inherited knowledge, of Old GM.  This issue does not arise in connection with claims against New GM involving vehicles New GM itself manufactured.

8

26.     Plaintiffs cannot proceed with "purportedly Independent Claims" that really are "Retained Liabilities" of Old GM.  To the extent particular claims or allegations have not yet been brought to this Court's attention, but New GM wishes objections to such to be heard, those objections can be heard by the judges hearing the nonbankruptcy cases.

<u>Particular Allegations in Marked Pleadings</u>

A.     *The Bellwether Actions Complaints*

27.     New GM identified five categories of allegations in the Bellwether Marked Complaints, highlighted by color, that New GM contended were violative of the Sale Order, the April Decision, the Judgment, or some combination of them.  Taking them by color and by New GM's stated objection to them, the Court rules as follows:

1)     *Pink—"Allegations that wrongly assert New GM is the
successor of Old GM"*

28.     Allegations referring to New GM as "successor", de facto successor and, especially, as a "mere continuation," must be stricken or removed, and the affected complaints remain stayed unless and until they are amended consistent with this Court's rulings.

Comment [SA6]: November Decision at p. 36, n 62

29.     Likewise, allegations that do not distinguish between Old GM and New GM, and that continue to refer to "General Motors" or "GM" must be stricken or revised so that it is clear whether the reference is to Old GM or New GM.  Complaints using that generic formulation of "General Motors" or "GM" will remain stayed unless and until they are amended to cure violations of that character.

30.     Allegations that New GM engaged in activities before the closing of the 363 Sale (*i.e.*, that New GM designed a vehicle that was manufactured and sold by Old GM) must be stricken or revised, and complaints that contain this type of allegation will remain stayed unless and until they are amended to cure violations of that character.

9

31.     As noted in the April Decision, plaintiffs' complaints may say, *inter alia*, that New GM purchased the assets of Old GM; that New GM assumed product liability claims from Old GM; and that New GM acquired specified knowledge from Old GM.

> 2)    *Orange—"Allegations related to punitive damages, which were not assumed by New GM"*

32.     Claims against New GM for punitive damages with respect to Old GM manufactured vehicles—even where compensatory damages might legitimately be sought for Product Liabilities Claims—were not assumed.  Thus, punitive damages in such cases cannot be based on pre-Sale Old GM conduct, or evidence of such.

33.     But New GM may still be liable for punitive damages based on knowledge it inherited from Old GM, and any knowledge it developed after the 363 Sale.  Punitive damages may be sought against New GM for post-closing accident cases involving Old GM manufactured vehicles <span style="color:red">with the Ignition Switch Defect</span> to the extent the factual allegations and evidence supporting the punitive damages claims are consistent with this Court's rulings herein and in the Decision.

> 3)    *Blue—"[A]llegations seeking to impute wholesale Old GM's knowledge to New GM"*

34.     Imputation is context specific, but this Court assumes that under nonbankruptcy law which will be applied in the actions pending against New GM, the acts and knowledge of employees will often be imputed to the principal.  This Court also assumes that likewise to be true with respect to notice of documents within a company's files.  But these nonbankruptcy law issues are inappropriate for this Court's determination.

35.     This Court also holds that allegations of imputation to New GM premised on the knowledge of New GM employees, or documents in New GM's files, may be asserted against New GM.  After that, issues as to the propriety of imputation in particular contexts in particular

10

cases are up to the judges hearing those cases.

    *4)*    *Green—"[A]llegations involving Claims that are Old GM Retained Liabilities"*

    36.    With respect to claims involving vehicles manufactured by Old GM other than Product Liabilities claims, such as fraud, negligent representation, duty to warn after the vehicle's sale, and violation of consumer protection statutes at the time of sale, insofar as Old GM manufactured vehicles are concerned, New GM did not assume such claims. New GM is liable for Product Liabilities only.

    37.    However, if Old GM had a duty, under nonbankruptcy law, to warn of the danger of driving a motor vehicle with a known defect, the violation of that duty to warn, when coupled with subsequent death or injury, might reasonably be argued to have had a causal effect on any death or personal injury that could have been avoided by the warning.  Violations of any duty to warn by Old GM could be said to provide further support for any claims for death or personal injury that would be actionable even as classic Product Liabilities Claims.  This Court expresses no view as whether, as a matter of nonbankruptcy law, failures to warn are actionable, or whether the requisite duties exist.  But these allegations may be asserted against New GM as an assumed Product Liability Claim, and it will be up to the Judge hearing the case to determine whether it is a viable claim.

    38.    In addition, some allegations highlighted in green are not subject to the above analysis because they charge New GM with violations of alleged duties that they assert New GM had to purchasers of earlier purchased vehicles with the Ignition Switch Defect.  New GM can argue before other courts that such duties do not exist (or assert any other merits-based defenses to these allegations), but claims of this character that are based on New GM's own conduct and knowledge may be asserted against New GM and it will be up to the Judge hearing

**Comment [SA7]:** Intended to make the ruling explicit and clear.

11

the case to determine whether it is a viable claim.

     5)    *Yellow—"[A]llegations based on New GM's conduct*
             *relating to a supposed failure to warn after the vehicle sale"*

    39.    Here, the allegations concern alleged failures to warn by New GM prior to any accidents, as contrasted to alleged failures by Old GM. The Court does not need to determine whether such claims were assumed, as they rest on conduct allegedly on the part of New GM itself. This issue is one of nonbankruptcy law—whether New GM, as an entity that did not manufacture or sell the vehicle, had a duty, enforceable in damages to vehicle owners, to notify people who had previously purchased Old GM vehicles of the Ignition Switch Defect. The Court does not decide this issue of nonbankruptcy law either, and does not block the claim based on predictions as to how another court might decide it. This Court leaves the issue to the court hearing the Bellwether actions.

    40.    New GM agreed to comply with the Motor Vehicle Safety Act under Section 6.15(a) of the Sale Agreement. New GM notes properly that this covenant was not an Assumed Liability, and that vehicle owners were not third party beneficiaries of the Sale Agreement. But Plaintiffs nevertheless argue, though without any support in this Court, that they have a state law right of action for conduct of that character. Here too the Court leaves this issue to the judge or judges hearing the underlying claims.

**B.**    *The MDL Complaint*

     1)    *Blue—"[N]amed plaintiffs and plaintiff classes/subclasses asserting claims based*
             *on Old GM vehicles"*

    41.    The Economic Loss Claims in the MDL Complaint asserted by the Ignition Switch Plaintiffs that once appeared in the Pre-Sale Consolidated Complaint may be asserted

**Comment [SA8]:** Language omitted from the November Decision. See page 41, n67. Provides context.

12

against New GM so long as they are genuinely Independent Claims[3]—and where they then will
be subject, of course, to determination in the MDL Proceeding as to the nature and extent of New
GM duties to purchasers of Old GM manufactured vehicles, and whether MDL plaintiffs state
causes of action under applicable nonbankruptcy laws.

42.     With respect to vehicles manufactured by Old GM, the Ignition Switch Plaintiffs
recognize that they cannot premise their claims on anything done by Old GM.  Plaintiffs allege
claims crafted on the premise that, after the 363 Sale Order, New GM still had duties to owners
of cars manufactured by Old GM.  To the extent New GM had the requisite duties, the claims are
in fact Independent Claims.  This Court does not rule on this issue and defers on such
nonbankruptcy matters to the MDL Court.

2)      *Yellow—"[A]llegations based on Old GM conduct that supported claims for
        Retained Liabilities"*

43.     The claims and allegations asserted in the MDL Complaint containing references
to "GM" alone that merge references to Old GM and New GM are not permitted.  However, the
MDL Complaint may refer to "GM-branded vehicles" when the context is clear that they can
refer only to New GM—and where they do not, by words or implication, blend the periods
during which vehicles were manufactured by Old GM, on the one hand, and New GM, on the
other.

44.     New GM's objection to allegations by which conduct of Old GM employees is
imputed, "automatically and wholesale," into the MDL Complaint is overruled from a
bankruptcy perspective.  The Court agrees with New GM that imputation matters must be

---

3       Claims against New GM that involve the determination of the existence of duties under state and federal law,
like claims ~~Independent Claims include, but may not be limited to, claims against New GM~~ for violations of the
Safety Act; of other statutory or common law requirements imposing a duty to recall; of consumer protection
statutes; for fraud; for breach of implied warranties of merchantability and violations of the Magnuson Moss
Warranty Act; and for unjust ~~enrichment~~enrichment are nonbankruptcy issues and the Court defers to the MDL
Court to decide these issues.

13

**Comment [SA9]:** Footnote 3 language, as modified herein,  is taken from the November Decision at page 44, n72.  The Court did not rule those causes of action were Independent Claims.  Rather, it held that those causes of action are nonbankruptcy matters and the viability of such claims under nonbankruptcy law should be made by the MDL court.
Plaintiffs language implies that the Court had ruled that such causes of action were viable Independent Claims under nonbankruptcy law, which is contrary to the November Decision.

**Comment [SA10]:** Intended to clearly provide that New GM acquired assets through a "free and clear" Sale Order, and plaintiffs so-called Independent Claims must be viewed through that bankruptcy prism.

09-50026-reg   Doc 13590-1   Filed 11/30/15   Entered 11/30/15 15:43:51   Exhibit C
Pg 48 of 54

determined in context, and if imputation is to be found, it must be found in the context of the imputation of identified individuals or identified documents for particular purposes. But the Court decided that there is nothing wrong with another court deciding imputation matters, and that other courts will have a better sense of imputation's propriety in context than this Court would.

45.     Plaintiffs' claims in the MDL Complaint may include allegations of Old GM conduct prefaced by words like "New GM knew that . . ." because those four words are of critical importance, and, if proven, transform the basis for imposing liability from successorship to knowledge that is one of the predicates to imposition of liability.  Those four words, which now require a showing of New GM knowledge, are essential to establishing New GM's culpability—all apart, of course, from establishing any necessary duties, private rights of action, and any other requirements for stating causes of action against New GM for cars manufactured by Old GM.  As a condition subsequent to getting through the gate, the plaintiffs will have to prove the New GM knowledge they allege, on the part of identified human beings, and by identified documents, to the satisfaction of the MDL court or any other court hearing these claims, and by competent proof, not on theories that New GM was a "successor" to Old GM. But that is a matter best handled by other courts.

> **Comment [SA11]:** November Decision p47. The omitted language from the Decision provides relevant context.

3)     *Pink—"[C]laims alleging that New GM committed fraud
in connection with Old GM's bankruptcy"*

46.     The claims in the MDL and Adams Complaints seeking to hold New GM responsible for Old GM's failure to give plaintiffs notice in the Old GM chapter 11 case cannot proceed under the April Decision and Injunction because they seek to impose liability based, in material part, on Old GM conduct, and assert forbidden successor liability claims dressed up to look like something else. And they rest on duties that do not exist under bankruptcy law.

47.   As stated in the April Decision, plaintiffs could assert otherwise viable claims against New GM for any causes of action that might exist "arising solely out of New GM's own, independent, post-Closing acts, so long as those plaintiffs' claims do not in any way rely on any acts or conduct by Old GM.  This Court makes clear that the plaintiffs, who have missed the claims bar date are enjoined from looking for their recovery for that to New GM.

48.47.  The prohibited claims and allegations are deemed stricken before and/or inoperative so the prosecution of the affected actions may continue.

4)   *Orange—"[C]laims alleging plaintiffs are entitled to contractual damages as third-party beneficiaries of the Sale Agreement."*

49.48.  The Sale Agreement provides that plaintiffs are not third party beneficiaries of the Sale Agreement.  Plaintiffs do not dispute that. Plaintiffs further agree they are not asserting a private right of action under the Safety Act. Nevertheless, plaintiffs' assert they have potential claims under state law relating to the Safety Act. Though Plaintiffs have not told the Court the basis for such a cause of action, their contention, if true, calls for a determination of nonbankruptcy law which shall be done  may proceed against New GM in the MDL Complaint. The basis of such causes of action calls for a determination of nonbankruptcy law and this Court does not rule on the extent to which claims of this character are actionable as a matter of nonbankruptcy law.  However, the asserted rights of action under the Safety Act are Independent Claims and may proceed for determination by the MDL Court.

C.   *The State Complaints*

1)   *Yellow—Allegations based on Old GM conduct*

50.   Allegations in the State Complaints may impute to New GM knowledge inherited from Old GM and knowledge developed by New GM, to New GM to the extent permissible under nonbankruptcy law.  The Court's rulings as to Imputation in other actions

15

**Comment [SA12]:** New GM's language is a summary of the Court's ruling from p52 of the November Decision. The Adams lawsuit was improperly premised on the language from the April Decision (the stricken language).  Plaintiffs reference to a proposition rejected by the Court is intended to lay the predicate for reasserting this claim once their case  leaves the bankruptcy gate. The Court should provide for the dismissal with prejudice of this type of claim.

**Comment [SA13]:** Since the Adams type claim was also included in the Second Amended Complaint in MDL 2543, this additional paragraph which refers to deleting a cause of action (as contrasted to the dismissal of the Adams lawsuit relating to Pre-Sale Accident Claims) is included.

**Comment [SA14]:** This is more aligned to the Court's statements from the November Decision at pages 52-53.
Significantly, the Court did not rule that asserted rights of action under the Safety Act were viable Independent Claims which is what plaintiffs proposed language suggests. The ambiguity raised by their language must be eliminated by adhering much more closely to the language of the November Decision.

**Comment [SA15]:** A cross –reference eliminates any ambiguity created by trying to short-hand the Court's  imputation ruling into one sentence.

apply to the States Cases, as well.

51.    New GM's objection to allegations of pre-Sale conduct in the State Complaints, blending allegations relating to both Old GM and New GM without distinction, and referring to "GM-branded vehicles" are sustained.

52.    In the California complaint, the use of the catch-all "GM-branded vehicles" is impermissible.  The allegations contained in the following paragraphs impermissibly allege Old GM conduct: paragraphs 46 (speaking of acts in 2001), 47 (speaking of DeGiorgio's alleged concealment "while working for Old GM"), 48-54, 58-60, 71, 95-96, 112-114, 189-190, and 200-202.  Additionally the following paragraphs contain impermissible blending of Old GM and New GM conduct, and must be clarified; they will pass through the bankruptcy gate only to the extent they intended to make reference to New GM: paragraphs 192, 195, 196, 198, 199, 203-206, and 211.  However, the following paragraphs which allege that New GM knew of safety issues (even if from the time of its inception), acquired inherited knowledge of such, or gained new knowledge of such, are benign and thus permissible: paragraphs 9, 11, 16, 18, 22, 32, 43, 44, and 45.

53.    In the Arizona complaint, which includes many identical allegations to those contained in the California complaint, allegations which make reference to plainly Old GM conduct are not permissible.  The following paragraphs which include allegations of Old GM conduct are not permissible: paragraphs 92, 93, and 357; as are the paragraphs which make it impossible to tell whether it is Old GM or New GM conduct which is alleged: paragraphs 136, 139-180 and 289-310.  However, the Arizona complaint's allegations that New GM knew of matters (even if from its inception) are benign and thus permissible, including paragraphs: 19, 81, 135, 137, 138, 139, 335, and 499.

16

09-50026-reg   Doc 13550-31   Filed 11/30/15   Entered 11/30/15 15:48:51   Exhibit C
Pg 518 of 524

54.     Thus the State Complaints may proceed if, but only if, they are amended to fix the deficiencies in the Yellow Category noted above; but remain stayed only until such amendments occur.

*2)     Blue—Allegations relating to vehicles manufactured by Old GM*

55.     New GM cannot be held monetarily liable to the States (any more than it could be held liable to any other plaintiffs) for any violations (necessarily by Old GM) that took place before the 363 Sale. The extent to which New GM can be held liable under nonbankruptcy law for an Old GM manufactured vehicle with the Ignition Switch Defect for acts or omissions after the 363 Sale (which by definition is after the vehicle sale to the consumer) is a matter of ~~The claims in the State Complaints regarding vehicles manufactured by Old GM may proceed to the extent to which New GM can be held liable under~~ nonbankruptcy law which the Court leaves to the courts hearing the cases to decide. ~~for acts or omissions after the 363 Sale — *i.e.*, after sales of vehicles to consumers.~~ Although this Court defers this determination to the courts hearing such cases, to the extent nonbankruptcy law imposes duties at the time of a vehicle's sale only, and the relevant vehicle sales took place when New GM had not yet been formed and only Old GM was in existence, claims premised on any breaches of such duties are barred by the Sale Order, the April Decision, and the Judgment.

**Comment [SA16]:** Omitted language from page 56 of the November Decision that provides proper context.

17

09-50026-reg    Doc 13550-31    Filed 11/30/15    Entered 11/30/15 15:48:51    Exhibit C
Pg 52 of 54

D.        *The Elliott, Sesay and Bledsoe Complaints*

    1)        *Blue—Allegations Involving Old GM manufactured vehicles*

    56.        The economic loss claims asserted in the *Elliott*, *Sesay*, and *Bledsoe* Complaints are not a model of clarity. To the extent they are actionable as matters of nonbankruptcy law, those claims asserted by Ignition Switch Plaintiffs are Independent Claims. The Court leaves this issue to nonbankruptcy courts after these complaints are amended to address their more egregious violations.

<em>Comment [SA17]:</em> Language from p57-58 of the November Decision.

    57.        The claims of Ignition Switch Plaintiffs who purchased used Old GM manufactured vehicles after the closing of the 363 Sale are barred in the same manner as Ignition Switch Plaintiffs who purchased Old GM vehicles before the 363 Sale. To the extent there is an issue as to whether Independent Claims have been asserted by them against New GM, that matter will be decided by other courts.

<em>Comment [SA18]:</em> The Court's ruling from p58 of the November Decision which was omitted from the Plaintiffs Proposed Judgment.

    ~~56.~~58.  Non-Ignition Switch Plaintiffs are barred from asserting Independent Claims with respect to Old GM Vehicles. Until those deficiencies are cured, the Peller Complaints remained stayed. To the extent the Peller complaints allege claims for non-Ignition Switch matters against New GM for New GM manufactured vehicles, the Sale Order, April Decision and Judgment do not forbid them. ~~New GM's objections are overruled with respect to ignition switch claims and sustained with respect to non-ignition switch claims.~~

<em>Comment [SA19]:</em> The Court's ruling from page 59 of the November Decision is made explicit so other courts and plaintiffs can more readily understand and follow.

    2)        *Green—Claims Premised on Old GM conduct*

    ~~57.~~59.  The successor liability claim in the *Bledsoe* complaint violates the Sale Order and may not proceed. The Peller complaints will remain stayed until they are amended to unambiguously remove any reliance on wrongdoing of Old GM.

<em>Comment [SA20]:</em> Part of the Court's ruling from page 59 of the November Decision.

    ~~58.~~60.  References to conduct by Old GM, and references to "New GM" as "GM" violate the Sale Order. Plaintiffs may not rely on Old GM conduct as a predicate for claims against New

18

GM. Until these provisions are removed from the Peller complaints, the Peller actions remain stayed.

> 3) *Yellow—Claims Seeking "to automatically impute" Old GM's knowledge to New GM*

~~59.~~61. ~~Allegations in *Elliott*, *Sesay* and *Bledsoe* Complaints may impute to New GM knowledge inherited from Old GM and knowledge developed by New GM, to the extent permissible under nonbankruptcy law.~~ The Court's rulings as to imputation in other actions apply to these cases, as well.

> 4) *Pink—Claims Seeking Punitive Damages from New GM with respect to Old GM manufactured vehicles.*

~~60.~~62. Allegations in *Elliott* and *Sesay* Complaints for punitive damages are to be dealt with consistent with the principles set forth in this judgment. ~~permissible to the extent that they are asserted in connection with Independent or retained Product Liability claims. Such allegations related to non-ignition switch claims violate the Sale Order.~~

> 5) ~~*Other claims*~~

~~61. Allegations in the *Elliott*, *Sesay* and *Bledsoe* Complaints relating to Independent Claims against New GM for negligent infliction of economic loss, negligent infliction of increased risk of personal injury, breach of duty to warn, civil conspiracy, and joint action depend on whether New GM had such duties under nonbankruptcy law and the Court leaves such issues to the nonbankruptcy court hearing these cases.~~

~~62. The *Elliott*, *Sesay* and *Bledsoe* Complaints will remain stayed until they are amended in accordance with this Order.~~

E. *Other Complaints*

> 1) *"Failure to Recall/Retrofit Vehicles"*

19

**Comment [SA21]:** Part of the Court's ruling from page 60 of the November Decision.

**Comment [SA22]:** Where cross-referencing makes sense, it eliminates the need to summarize a lengthier ruling, thus avoiding ambiguity.

**Formatted:** Indent: Left: 0.5", No bullets or numbering

**Comment [SA23]:** This is in the Other Complaints section of the Plaintiffs Proposed Judgment.

63.    Obligations, if any, that New GM had to recall or retrofit Old GM vehicles were not Assumed Liabilities, *and New GM is not a successor to Old GM and New GM is* not *responsible for any failures of Old GM to do so.* But whether New GM *had* an independent duty to recall or retrofit previously sold Old GM vehicles with the Ignition Switch Defect that New GM did not manufacture is a question of nonbankruptcy law. The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law for such Old GM vehicles, but allows this claim to be asserted by the Ignition Switch plaintiffs and the Post-Closing Accident Plaintiffs (such as has been asserted by the plaintiff in *Moore v. Ross*) with the Ignition Switch Defect, leaving determination of whether this is a viable Independent Claim the duty issue to the court hearing this action. For the avoidance of doubt, claims referred to in this section may not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

> **Comment [SA24]:** Language is intended to show that New GM got the benefit of this finding from the Sale Order and that Plaintiffs so-called Independent Claims must ultimately not circumvent this provision. The Court stated this proposition on page 47 of the November Decision when it discussed, as a condition subsequent for getting through the bankruptcy gate, that successor liability claims dressed up to look like something else cannot be asserted against New GM.
>
> **Formatted:** Font: Italic
> **Formatted:** Font: Italic
> **Formatted:** Font: Italic
> **Formatted:** Font: Italic
> **Formatted:** Font: Not Italic

2)    *"Negligent Failure to Identify Defects or Respond to Notice of a Defect"*

64.    Obligations, if any, that New GM had to identify or respond to defects in previously sold Old GM Vehicles were not Assumed Liabilities, and New GM is not a successor to Old GM and is not responsible for any failures of Old GM to do so. But Wwhether New GM had an independent duty to identify or respond to defects in previously sold Old GM vehicles that New GM did not manufacture is a question of nonbankruptcy law. The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law for such Old GM Vehicles, and allows this claim to be asserted by the Ignition Switch plaintiffs and Post-Closing Accident Plaintiffs with the Ignition Switch Defect, leaving determination of whether this is a viable Indpendent Claim that issue to the court hearing that action. For the avoidance of

> **Comment [SA25]:** This is inserted to make explicit the Court's ruling as to who can assert an Independent Claim, and who cannot. See page 42, n70. Helps other courts and plaintiffs synthesize the Court's rulings.
>
> **Formatted:** Font: Not Italic
>
> **Comment [SA26]:** The Court incorporated by reference the findings it made on Failure to Recall cause of action. See page 61-62 of the November Decision.
>
> **Formatted:** Font: Not Italic

20

doubt, claims referred to in this section may not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-closing Accident Plaintiffs against New GM.

### 3) "Negligent Infliction of Economic Loss and Increased Risk"

65.    Claims that New GM had a duty to warn consumers owning Old GM manufactured vehicles of the Ignition Switch Defect but instead concealed it, and by doing so, the economic value of the plaintiffs' vehicles was diminished (such as been raised by the plaintiffs in *Elliott* and *Sesay*) were not Assumed Liabilities, and New GM is not a successor to Old GM and is not responsible for any failures of Old GM to do so.  But whether are permissible to the extent, but only the extent, that New GM had an independent "duty to warn" consumers owning-ers of previously sold Old GM manufactured cars of the defect is a matter of nonbankruptcy law. The Court does not decide whether there is the requisite duty for New GM under nonbankruptcy law to warn for such Old GM Vehicles with the Ignition Switch Defect, and allows this claim to be asserted by the Ignition Switch Plaintiffs to the extent, but only the extent, that New GM had an independent "duty to warn" owners of Old GM Vehicles of the Ignition Switch Defect

(as relevant to situations *in which no one is alleged to have been injured* by that failure, but where the vehicles involved are alleged to have lost value as a result). This is a question of nonbankruptcy law, Determination of whether this is a viable Independent Claim will be left which the Court leaves to the nonbankruptcy court(s) hearing the underlying actions. For the avoidance of doubt, claims referred to in this section may not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

21

**Formatted:** Font: Italic

**Comment [SA27]:** The language makes explicit that the Court's ruling for this cause of action is similar to how it treated the failure to recall cause of action.

09-50026-reg   Doc 13550-31   Filed 11/30/15   Entered 11/30/15 15:48:51   Exhibit K
Pg 523 of 524

64.66.

4)   *"Civil Conspiracy"*

*De Los Santos v. Ortega*, in Texas state court, and the Peller Complaints in the District of Columbia, involve claims that New GM was involved "in a civil conspiracy with others to conceal the alleged ignition switch defect." Claims of this character were not Assumed Liabilities. The extent to which they might constitute Independent Claims requires a determination of nonbankruptcy law., beyond that, tThe Court leaves the determination of the nonbankruptcy issue as to whether claims of this sort are actionable, with respect to vehicles previously manufactured and sold by a different entity, to the nonbankruptcy court hearing the underlying action. For the avoidance of doubt, claims referred to in this section may not be asserted by Plaintiffs in Old GM Vehicles without the Ignition Switch Defect and/or Pre-Closing Accident Plaintiffs against New GM.

65.67.

5)   *"Section 402B—Misrepresentation by Seller"*

66.68. Claims based on "Section 402B-Misrepresentation by Seller" fall within the definition of assumed Product Liabilities, and such claims may be asserted against New GM, *provided however*, whether New GM is liable for such claims shall be determined by the non-bankruptcy courts overseeing such lawsuits.

6)   *Claims Based on Pre-Sale Accidents*

69.   All Cclaims brought by Pre-Closing Accident Plaintiffsased on *pre* Sale accidents, (like the *Coleman* action in the Eastern District of Louisiana), involving, by definition, Old GM manufactured vehicles should have been dismissed, or should at least be stayed pending

22

the resolution of the appeal of the April Decision and June Judgment.  These cases are currently impermissible under the Sale Order, April Decision and June Judgment, and cannot proceed.

67.70.  Jurisdiction. The Court shall retain exclusive jurisdiction to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment and/or the Decision on which it was based. The Judgment shall not be collaterally attacked, or otherwise subject to review or modification, in any Court other than this Court or any court exercising appellae authority over this Court.

> **Comment [SA28]:** This provision was in the Court's June 1 Judgment and should be included in the Judgment relating to the November Decision..

7)    *Amended Complaints*

68.71.  For the avoidance of any doubt, complaints amended in compliance with this Judgment may be filed in the non-bankruptcy courts with jurisdiction over them, without violating any automatic stay or injunction or necessitating further Bankruptcy Court approval to file same. It will be up to the other courts (including the MDL court which has stayed many actions) to decide when it would be appropriate to file such amendments.

> **Comment [SA29]:** Many cases are stayed by MDL 2543 and this clause is intended to let those courts control their docket as to when amendments should be permitted.

Dated: New York, New York
      December __, 2015

      _____
      UNITED STATES BANKRUPTCY JUDGE

23