UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
In re                                                         :       Chapter 11
                                                              :
MOTORS LIQUIDATION COMPANY, et al.,                           :       Case No.: 09-50026 (MG)
      f/k/a General Motors Corp., et al.                    :
                                                              :
                       Debtors.                                 :
                                                              :
-----------------------------------------------------------------x

OBJECTION BY MOORE PLAINTIFFS TO MOTION BY GENERAL MOTORS,
LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE
BANKRUPTCY COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION, AND THE
RULINGS IN CONNECTION THEREWITH

In re:   *James Walter Moore v. General Motors, LLC, et al.*
        Case No.: 2011-CP-42-3625 (Spartanburg Co. Cir. Ct., SC)

       *Jaimie Reda Moore v. General Motors, LLC, et al.*
        Case No.: 2011-CP-42-3627 (Spartanburg Co. Cir. Ct., SC)

     The above-referenced actions are currently pending in the Court of Common Pleas in Spartanburg County, South Carolina. Plaintiffs hereby respectfully submit this objection (the "Objection") to the Motion by General Motors, LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Bankruptcy Court's July 5, 2009 Sale Order and Injunction, and the Rulings in Connection Therewith, which was filed on June 24, 2016 [Docket No. 13656] (the "Motion"). As more fully stated below, the Motion should be denied for the following reasons: (1) the Decision on Imputation, Punitive Damages, and Other No-Strike and No-Dismissal Pleadings Issues entered on November 9, 2015 (the "November Decision") and the Judgment entered December 4, 2015 (the "Judgment") specifically approve Plaintiffs' claims independent claims for punitive damages against General Motors, LLC ("New GM"), which was not appealed by New GM; (2) even under New GM's reading of the rulings, collateral estoppel is not appropriate

1

as the issues were not decided by the Court and the Plaintiffs were not given a full and fair opportunity to litigate the issues.

## BACKGROUND

On August 8, 2011, Plaintiff James Moore was injured when a spare tire, which fell from another vehicle, crashed into the top of his vehicle. Mr. Moore was paralyzed as a result. It was determined that the tire fell from a 1996 GMC pickup truck and that the cable on the spare tire hoist mechanism had broken. This vehicle was manufactured by General Motors Corporation ("Old GM").

Plaintiff James Moore filed suit against New GM, the driver of the vehicle, and two manufacturers who may have produced the hoist mechanism. Plaintiff Jaimie Moore – Mr. Moore's wife – filed a consortium claim against the same parties. Plaintiffs asserted causes of action for: (1) failing to design the vehicle properly; (2) failing to manufacture the vehicle properly; (3) failing to inspect the vehicle properly; (4) failing to test the vehicle properly; (5) failing to warn owners and the public as to the dangerous defect in the vehicle; (6) failing to recall the vehicle; (7) failing to retrofit the vehicle; and (8) producing/selling a product unreasonably dangerous to the consumer.

On Tuesday, September 8, 2015, at 6:03PM, Plaintiffs received via e-mail a letter and various attachments from counsel for New GM informing Plaintiffs that various allegations and causes of actions contained in Plaintiffs' Fourth Amended Complaint were improper or proscribed by the orders and judgments of this Court. *See* attached Exhibits A and B. Plaintiffs had received no prior communication from General Motors regarding this issue and had not previously received a "Demand Letter," as referenced in the Scheduling Order entered

September 3, 2015 (hereinafter "Scheduling Order"). The letter stated that Plaintiffs had only three business days to file a response. *See* Exhibits A and B.

Plaintiffs' counsel hurriedly prepared and filed a brief with this Court setting forth Plaintiffs' position. See attached Exhibit C. In its letter, New GM argued only that Plaintiffs' claims for punitive damages were not permitted because such claims against New GM based on "wrongful conduct of Old GM" were not allowed by the Sale Agreement. Plaintiffs argued in briefs that "Plaintiffs have independent claims for punitive damages based on the conduct of New GM." *See* Exhibit C at p.3. As more fully discussed below, in both the Decision and Judgment, the Court ruled that Plaintiffs claims were permissible, specifically citing Plaintiffs' cases. New GM did not appeal this ruling.

In the Decision and Judgment, the Court made clear that Complaints must clearly distinguish between Old GM and New GM and that all claims for punitive damages must be based solely on the conduct of New GM. Consequently, anticipating further objections from New GM, Plaintiffs moved to amend their Complaint to ensure compliance with the Court's rulings. The proposed complaints were sent to New GM's counsel in South Carolina on February 18, 2016 in an e-mail which stated as follows:

> As I mentioned before, we are amending our Complaints to ensure that we are in compliance with the decision issued by the bankruptcy court in the Southern District of New York, regarding claims against General Motors, LLC. Consequently, I have attached proposed Fifth Amended Complaints for both matters.
>
> The only changes to the Complaints are as follows:
>
> (1) In both Complaints, we have modified the language of Paragraph 3, regarding General Motors, to make clear that our claims are against General Motors, LLC only;
>
> (2) In the James Moore Complaint, we have added paragraph 11, which makes clear that Plaintiff's punitive claims are based on General

3

>   > Motors, LLC conduct/knowledge only (though this will include acquired knowledge, as allowed by the SDNY decision); and
>
>   > (3) In the Jaimie Moore Complaint, the addition of subsection (e) to Paragraph 10 to make clear that we are asserting claims for lost wages on behalf of Jaimie Moore.
>
> Please let me know if you will consent to the amendment, or if it will be necessary for us to file a motion.

Plaintiffs received no response from New GM for three months, despite repeated inquiries. Then, on May 17, 2016, Plaintiffs received a letter from Scott Davidson, of King & Spalding, complaining that Plaintiffs' prior Complaint "be withdrawn due to the requirements of federal bankruptcy law . . . ." Plaintiffs then filed the amended Complaint in state court, which motion was granted after a hearing held on June 24, 2016. The same day of the hearing in state court, New GM filed the instant motion seeking to bar Plaintiffs' claims.

## OBJECTION

### I. THE UN-APPEALED RULINGS OF JUDGE GERBER EXPRESSLY FOUND PLAINTIFFS' CLAIMS TO BE PERMISSIBLE

In both the Decision and Judgment, Judge Gerber ruled, in plain language and with specific reference to Plaintiffs' claims, that Plaintiffs' claims were permissible and presented nonbankruptcy issues left to the local court. New GM did not appeal this ruling and is bound by it. New GM now seeks a second-bite at the apply through the Motion, in which it attempts to interpret Judge Gerber's order as prohibiting the very claims it specifically allows. As shown below, this Motion must fail.

As noted above, despite being given only three business days to respond to the Bankruptcy Court action, Plaintiffs prepared and filed a brief with the Court. *See* Exhibit C. In the brief, Plaintiffs explained that their claims stemmed from an allegedly defective spare tire

4

hoist mechanism, **not** from an ignition switch defect. *See id*. at p.2. Plaintiffs argued that New GM should be liable for punitive damages because New GM may be liable for its own conduct.

In the November Decision that followed the briefing, the Court addressed the punitive issue as follows:

> [T]he Post-Closing Accident Plaintiffs argue that punitives can be recovered from New GM based on Old GM conduct by three "pathways" – assertedly because:
>
> (i) claims for punitive damages were contractually assumed by New GM under the Sale Agreement, and thus that "all of Old GM's conduct is fair game";
>
> (ii) even without contractual assumption of liability for punitive damages, punitive damages can be recovered based on Old GM knowledge or conduct in instances where information about such Old GM conduct was "inherited" by New GM; and
>
> (iii) there could have been "information developed solely by New GM post-sale."
>
> For the reasons discussed below, reliance on the first pathway is unpersuasive. But the Court agrees as to each of the second and the third.

*See* November Decision, p. 18 – 19.

The Bankruptcy Court then expounded on the second "pathway" as follows:

> [O]n Product Liabilities Claims and Independent Claims alike, **New GM may be held responsible, on claims for both compensatory and punitive damages, for its own knowledge and conduct.** Under the Pathway #2 scenario, New GM might have acquired relevant knowledge when former Old GM employees came over to New GM or New GM took custody of what previously were Old GM records. Reliance on that, for punitive damages purposes, is permissible.
> . . .
> [T]o the extent that New GM employees actually had knowledge relevant to post-Sale accident claims or Independent Claims (even if it was inherited), **plaintiffs in actions asserting such claims are free to base punitive damages claims on evidence of such knowledge to the extent nonbankruptcy law permits.**

*See* November Decision, p. 27 – 28 (emphasis added).

The Court elucidated the third "pathway" as follows:

5

> Information obtained by New GM after the same, argued by the Post-Closing Accident Plaintiffs to be usable under Pathway #3, may be used for punitive damages purposes as well. Here the analysis is very similar to that with respect to Pathway #2 – the only differences being how and when New GM obtained any information. . . . The extent to which such after-acquired information is relevant to punitive damages claims is a matter of nonbankrtupcy law, as to which the Court expresses no view.

*See* November Decision, p. 28.

Judge Gerber further broke down the various categories of Complaints and addressed them individually. Those categories were as follows: (1) The Bellweather Actions Complaints, (2) The MDL Complaint, (3) The States Complaints, (4) The Peller Complaints, and (5) Other Complaints. Under the category of "Other Complaints", the Court wrote as follows:

*(1) "Failure to Recall/Retrofit Vehicles"*

> In its letter addressing the other complaints, New GM objects to claims, **such as those in *Moore v. Ross*, in South Carolina,** alleging that "New GM had a duty to recall or retrofit Old GM vehicles." This is effectively the same type of claim previously discussed.
>
> New GM is correct that obligations, if any, that it had to recall or retrofit were not Assumed Liabilities, and that New GM is not responsible for any failures of Old GM to do so. But whether New GM had a duty to recall or retrofit previously sold Old GM vehicles that New GM did not manufacture is a question of nonbankruptcy law.
>
> Consistent with its gatekeeper role, the Court does not decide whether there is the requisite duty under nonbankruptcy law, and allows this claim through the gate, leaving that issue to the court hearing that action.

*See* November Decision at p.61 (emphasis added). In the following subsection, Judge Gerber took the same position with regard to allegations that New GM failed to identify and take action regarding defects, holding that this was an issue of nonbankruptcy law left to the local courts. *See id*. at p. 61-62.

6

Significantly, nowhere in this discussion did the Court limit these rulings to Ignition-Switch Defect ("ISD") plaintiffs. It would make little since for Judge Gerber to do so, as the principles underlying the decision would apply to ISD and non-ISD plaintiffs alike.

The Judgment issued by the Court in December provided that it was based on the Decision and expressly incorporated the Decision as an interpretive aid. *See* Judgment, ¶¶ 37, 40. The Judgment also included the specific reference to Plaintiffs' case, addressing the failure to recall/retrofit as follows:

> Obligations, if any, that New GM had to recall or retrofit Old GM Vehicles were not Assumed Liabilities, and New GM is not responsible for any failures of Old GM to do so. **But whether New GM had an independent duty to recall or retrofit previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law that may be decided by the nonbankruptcy court hearing that action.**
>
> **The Court does not decide whether there is a requisite duty for New GM under nonbankruptcy law for such Old GM Vehicles, but allows this claim to be asserted by the Ignition Switch Plaintiffs and Post-Closing Accident Plaintiffs (such as has been asserted by the plaintiff in *Moore v. Ross*)** with the Ignition Switch Defect, leaving determination of whether there is a requisite duty under nonbankruptcy law to the nonbankruptcy court hearing that action.

*See* December Judgment, ¶¶ 29 – 30 (emphasis added). In the following paragraph, the Court also leaves open the question of "whether New GM had an independent duty to identify or respond to defects in previously sold Old GM Vehicles that New GM did not manufacture", again holding that this is a "question of nonbankruptcy law that may be decided by the nonbankruptcy court hearing that action." *See* December Judgment, ¶ 31.

The Court cited Plaintiffs' cases by name. It simply could not have been any more clear that Plaintiffs' claims were permissible and that their validity was left to the local court, as a nonbankruptcy issue. In the motion heard on June 27, 2016, New GM was quick

7

to assert that plaintiffs who did not participate in the Bankruptcy action, and therefore did not appeal the Decision and Judgment, were bound by it. New GM must also admit that, having failed to appeal the Decision and Judgment, it is bound by the Court's language which permits the *Moore v. Ross* claims.

New GM apparently takes the position that the Court cited *Moore v. Ross* either as a mistake or only as an example of the type of claim which is allowed within an ISD case. These explanations defy logic. As noted, Plaintiffs filed a brief with the Bankruptcy Court in which Plaintiffs explained that the case was based on an allegedly defective spare tire hoist mechanism. The Court undoubtedly read the brief, which was referenced in the October transcript. It is also impossible to believe that the Court would cite a specific case without an understanding of the claims.

As the Court was plainly aware that Plaintiffs' claims were not ISD claims, the question, according to the arguments of New GM, is why the Court would cite a non-ISD claim as an example intended to be limited to ISD claims? The Court certainly could have chosen a similar claim from an ISD matter. Moreover, had the Court truly intended the limitation suggested by New GM, a single line would have made this clear. It should also be noted that the Judgment includes Footnote 2, which provides: "Any ruling set forth in this Judgment that refers to a particular lawsuit, complaint and/or plaintiff shall apply equally to all lawsuits, complaints and plaintiffs where such ruling may be applicable." *See* Judgment, FN 2.

Judge Gerber ruled, in plain language and with specific reference to Plaintiffs' claims, that Plaintiffs' claims were permissible and presented nonbankruptcy issues left to

8

the local court.  New GM did not appeal this ruling and is bound by it.  Consequently, its Motion must fail.

## II. EVEN ASSUMING *ARGUENDO* NEW GM'S POSITION, PLAINTIFFS SHOULD NOT BE COLLATERALLY ESTOPPED

New GM takes the position that, despite the clear language specifically referencing Plaintiffs' claims, Judge Gerber did not permit claims for punitive damages by **any** non-ISD plaintiffs.  And as this ruling was not appealed, New GM argues, Plaintiffs are barred from pursuing such claims on the doctrine of collateral estoppel.  However, from the perspective of New GM's claims, the order is at best ambiguous and does not constitute an issue that was "actually . . . decided" by Judge Geber.  Moreover, particularly with regard to the due process questions, New GM cannot show that the Plaintiffs had a "full and fair opportunity to litigate the issue" or that "the resolution of the issue was necessary to support a valid and final judgment" in this matter.  *See Marvel Characters, Inc. v. Simon*, 310 F. 3d 280, 288-89 (2d Cir. 2002).  Consequently, collateral estoppel is not appropriate.

### A. Read as New GM Proposes, Rulings are Too Ambiguous to Constitute a "Decision" for Purposes of Collateral Estoppel

As discussed above in Section I, Plaintiffs believe that the Judgment specifically allowed the Plaintiffs' claims for punitive damages to proceed to the local courts as non-bankruptcy issues.  This is particularly evident when read together with the November Decision on which the Judgment was based.  However, even assuming *arguendo* the validity of New GM's position that Judge Gerber did not intend to allow the Plaintiffs' claims and instead cited the case only as an example, the Judgment is, at best, ambiguous on this point.  Consequently, Plaintiffs cannot be barred from pursuing such claims.  If the

9

Court finds that such claims are barred by the Sale Agreement, then the Court should so hold in its Order and Plaintiffs should be allowed to appeal this decision.

As noted above, the Judgment issued by Judge Gerber expressly stated that the recall/retrofit claims "asserted by the plaintiff in *Moore v. Ross*" were not barred by bankruptcy law. *See* Judgment, ¶ 29 – 30. New GM takes the position that Judge Gerber intended, by this language, to allow such claims only by ISD plaintiffs, and that the reference to *Moore v. Ross* was a mistake as evidenced by the "with the Ignition Switch Defect" phrase, which follows the parenthetical. Yet, it is equally plausible that the mistake was in the limiting language. In fact, this appears more likely given that (1) the following paragraph allows for independent claims against New GM for a failure to "identify or respond to defects" and does not include language limiting such claims to ISD plaintiffs and (2) the language and extensive examples set forth in the November Decision suggest no such limitation and speak broadly of the Post-Closing Accident Plaintiffs. *See* November Decision, p. 18 – 19, 27 – 28, 61. As noted, the Judgment provided that it was based on the Decision and expressly incorporated the Decision as an interpretive aid. *See* Judgment, ¶¶ 37, 40.

New GM asks this Court not only to read any ambiguity against Plaintiffs, but to hold that the Plaintiffs failure to appeal the Judgment results in a bar against any further litigation of this issue. Yet New GM too had the opportunity to ask the Court for clarification or to appeal Judge Gerber's "mistake" in citing to *Moore v. Ross*, but did not do so. In any case, an ambiguous judgment is not one that will support collateral estoppel. *See Owens v. Treder*, 873 F.2d 604, 611 (2d Cir.1989) (rejecting use of collateral estoppel

10

where ambiguity of prior state court decision left federal court unable to conclude with certainty that issues had been adjudicated).

In summary, from the perspective of New GM, the Judgment is, at best, ambiguous as to whether Plaintiffs' claims are allowed or are barred. Consequently, this cannot constitute a "decision" so as to satisfy the elements of collateral estoppel. If this is truly the holding of the Bankruptcy Court, the Court should issue an order clearly making such a finding, from which Plaintiffs can appeal, if necessary.

**B. The Parties Did Not Have an Opportunity to Fully and Fairly Litigate the Issue of Punitive Damages Based on New GM Conduct and Due Process Violations**

New GM contends that Plaintiffs are barred from asserting claims against New GM for punitive damages **even if based solely on the conduct of New GM** and not on conduct of Old GM. New GM takes the position that only ISD Post-Closing Accident Plaintiffs may assert such claims. According to New GM, this special treatment for ISD plaintiffs goes back to the April Decision – months before Plaintiffs' were involved in the case – and a finding by Judge Gerber that ISD plaintiffs were denied due process. New GM asserts that collateral estoppel now bars Plaintiffs' claims against New GM.

In order for New GM to succeed in barring Plaintiffs' claims under the doctrine of collateral estoppel, it must show that the elements of collateral estoppel are satisfied with regard to (1) a ruling barring claims against New GM for punitive damages, based solely on the conduct of New GM and (2) a ruling that Plaintiffs' do not have due process grounds – similar to the ISD plaintiffs – **and may not now raise them**, to warrant the right to pursue such claims. Yet New GM cannot show that either of these issues were fully and fairly litigated before Judge Geber with regard to Plaintiffs' claims, and thus collateral estoppel is not appropriate.

11

**(1) Collateral Estoppel**

The doctrine of collateral estoppel prevents parties from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding. *See Marvel Characters*, *supra*, at 288. "Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel." *See Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

**(2) No Full and Fair Opportunity to Litigate These Issues**

In the case at hand, it simply cannot be said that the Plaintiffs were given a full and fair opportunity to litigate either the issue of (1) punitive damages claims against New GM based solely on New GM conduct or (2) the related due process issue. New GM's letter of September 8[1], which purported to bring Plaintiffs into the Bankruptcy litigation, stated as follows:

> From a review of the Pleading, it appears that Plaintiff is making allegations and asserting claims against New GM for damages and punitive damages that arise from the conduct of Old GM (**and not New GM**). See, e.g., Pleading ¶¶ 9(f) – 11(g). The attempt to assert such claims and see such damages from New GM is a violation of the Sale Order and Injunction (as herein defined) entered by the Bankruptcy Court (as herein defined).
> . . .
> To the extent that the Pleading asserts causes of action **based on Old GM conduct** that are not assumed Product Liabilities (as defined in the Sale Agreement0, and/or requests punitive damages **based on Old GM conduct**, they are proscribed. Accordingly, the Pleading should be amended so that it is consistent with the rulings in the Judgment, Decision and Sale Order Injunction.

*See* Exhibit D (emphasis added). There are a number of reasons why this letter did not provide sufficient notice of the issues and consequences, as New GM sees them.

---

[1] In its Motion, New GM places reliance on a letter of August 26, 2015, which it suggests was sent to Plaintiffs' counsel. *See* Motion, ¶13. This letter was not provided to Plaintiffs' counsel and so, is not relevant to this discussion.

### a. *Letter suggested that claims against New GM were not at issue*

First, the letter provides no indication that anything other than punitive damage claims **based on the conduct of Old GM** are at issue in the litigation. In fact, in the section cited above, New GM states that claims based solely on the conduct of New GM are not at issue: "From a review of the Pleading, it appears that Plaintiff is making allegations and asserting claims against New GM for damages and punitive damages that arise from the conduct of Old GM (and not New GM)." The sentence can only be read as stating that claims based on conduct of Old GM are not permissible while claims based on conduct of New GM are permissible. As a result, Plaintiffs' responded within the three-business-day timeframe with a brief which asserted that Plaintiffs' claims were proper as they were based on the conduct of New GM. *See* Exhibit C.

### b. *No mention of due process issues*

The letter of September 8 also did not make any mention of due process issues, suggest any need to raise due process issues, or state that such would be part of the litigation. The letter certainly did not specify that such arguments must be made by Plaintiffs or they would be forever barred from claiming that, for due process reasons, claims against New GM, based solely on New GM conduct should be allowed to go forward.

### c. *Scheduling Order did not put Plaintiffs on notice of such issues*

The letter of September 8 focused on the Scheduling Order of September 3, 2015. Specifically, the letter provided: "If you have any objection to the procedures set forth in the Scheduling Order, you must file such objection in writing with the Bankruptcy Court

13

within three (3) business days of receipt of this demand letter . . . . Otherwise, you will be bound by the terms of the Scheduling Order and the determinations made pursuant thereto." *See* Exhibit D.  Notably, nothing in the Scheduling Order clearly relates to either Independent Claims or to Post-Closing Accident non-ISD Plaintiffs' claims.  Moreover, nothing in the Scheduling Order suggests that the Court was considering barring Independent Claims or Post-Closing Accident non-ISD Plaintiffs' claims.

### d. *No formal Summons & Complaint or Motion*

Finally, it is worth noting that Plaintiffs were pulled into the Bankruptcy action by a **letter** which provided only three business days for a response.  New GM did not bring Plaintiffs into the action through more formal means, such as a Summons & Complaint or Motion, which would perhaps suggest such a weighty outcome as New GM now says resulted from the Bankruptcy Court's rulings.  This is particularly significant considering that the majority, if not all, of the recipients were counsel unfamiliar with bankruptcy law.

Given the above, it cannot be said that Plaintiffs were given the opportunity to "fully and fairly" litigate these points.[2]  Plaintiffs could not have done so without being aware that such issues were before the Court.  Consequently, New GM cannot show that collateral estoppel is warranted.

### C. Judge Gerber's Rulings Do Not Bar Future Due Process Claims

To warrant collateral estoppel, New GM must demonstrate that the issue on which it seeks preclusion was actually litigated and **decided**.  *See Marvel Characters*, *supra*.  Yet the question as to whether Plaintiffs have due process rights similar to those of the ISD plaintiffs was never foreclosed by Judge Gerber, and therefore was not actually decided.

---

[2] The opportunity to fully and fairly litigate an issue must be of particular importance when it relates to constitutional issues.

14

In footnote 70 of the November Decision, the Court referenced the April Form of Judgment Decision, in which it held:

> The Non-Ignition Switch Plaintiffs' claims remain stayed, and properly so; those Plaintiffs have not shown **yet**, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of a due process violation with respect to them. And **unless and until they do so**, the provisions of the Sale Order, including its injunctive provisions, remain in effect.

*See* November Decision, FN 70 (emphasis added). The Court therefore left the door open on this point and certainly did not issue a final, binding decision.

Moreover, it should be noted that Plaintiffs' due process claims are different from those asserted by the ISD Plaintiffs. Our status as creditors of Old GM is not relevant to what notice New GM must provide if it wished to be absolved of conduct of its own which had not yet occurred. Whether such notice is even conceptually possible, it was not provided here. In short, New GM is attempting to bootstrap liability for its own actions onto a question and determination relating to Old GM.

**D. Plaintiffs believe they have evidence to justify punitive claims against New GM**

Plaintiffs have received extensive discovery from New GM relating to this matter. Plaintiffs' counsel signed a Confidentiality Agreement as to those documents prior to receiving them, and therefore will not discuss the contents in this brief. However, based on the documents reviewed, Plaintiffs believe they have a good faith basis to assert punitive claims against New GM and will provide documents to the Court for an in camera review if it would be useful to the Court.

CONCLUSION

The rulings of the Bankruptcy Court in the November Decision and Judgment specifically find Plaintiffs' claims permissible. Moreover, even under New GM's reading of the rulings, collateral estoppel is not warranted. Plaintiff asks this Court to deny New GM's motion and to allow Plaintiffs' to proceed with their claims at the local court. In the alternative, if the Court finds that Plaintiffs' claims against New GM are barred, Plaintiffs seek an opportunity to fully and fairly litigate these issues and, in the event of an adverse ruling, to appeal.

Respectfully Submitted,

**ANTHONY LAW FIRM, P.A.**

*s/Kenneth C. Anthony, Jr.*
Kenneth C. Anthony, Jr., Fed. Bar No.: 1102
K. Jay Anthony, Fed. Bar No.: 10870
P.O. Box 3565 (29304)
250 Magnolia Street (29306)
Spartanburg, S.C.
(864) 582-2355 p
(864) 583-9772 f
kanthony@anthonylaw.com

**ATTORNEYS FOR THE PLAINTIFF**

Spartanburg, South Carolina
July 8, 2016