Adelman Hirsch & Connors LLP
1000 Lafayette Blvd
Bridgeport, CT 06604
Tele: 203-331-8888
Fax: 203-333-4650
Joram Hirsch, Esq. (admitted *pro hac vice*)
Robert B. Adelman, Esq.

*Attorney for Bernard Pitterman, Administrator*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                  :    Chapter 11
                                                                              :
MOTORS LIQUIDATION COMPANY, et al.         :    Case No. : 09-50026 (MG)
         f/k/a General Motors Corp, et al.                  :
                                                                              :    (Jointly Administered)
                      Debtors                                         :
                                                                              :
-----------------------------------------------------------:

**MEMORANDUM BY BERNARD PITTERMAN, ADMINISTRATOR,
IN OPPOSITION TO MOTION (ECF #13655) OF
GENERAL MOTORS LLC TO ENFORCE BANKRUPTCY
<u>COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION</u>**

This memorandum is submitted by Bernard Pitterman, Administrator, a plaintiff in a product liability action pending against New GM in the United States District Court for the District of Connecticut, in opposition to GM's Motion to Enforce (ECF #13655) dated June 24, 2016.

The only issues raised by New GM's motion as pertains to the Pitterman complaint[1] relate to the allegations regarding failure to recall and retrofit and New GM's failure to warn. As noted by New GM, Pitterman has amended that complaint to remove any claim for punitive damages and, therefore, the allegations of the amended complaint challenged by New GM should not be deemed a "disguised pathway" to punitive damages. In the <u>Pitterman</u> complaint, plaintiffs allege a claim

---

[1] The case is referenced as number 10 in chart attached to GM's motion and the amended complaint is attached as Exhibit J to said motion. Plaintiff's counsel and counsel for GM have reached agreement as to the other allegations in the complaint.

1

under Connecticut's Product Liability law based on Old GM conduct, which fall within the liabilities assumed by New GM, and based upon New GM's post-sale conduct. As the Court stated in its April 15, 2015 decision:

> And to the extent, if any, that New GM might be liable on claims based solely on any wrongful conduct on its own part (and in no way relying on wrongful conduct by Old GM), New GM would have such liability not because it had assumed any Old GM liabilities, or was responsible for anything wrong that Old GM did, but only because it had engaged in independently wrongful, and otherwise actionable, conduct on its own. Docket 13109, page 14.

As to plaintiffs' claims against New GM based on New GM's conduct, in its November 9, 2015, decision addressing the allegations regarding failure to recall and retrofit in the representative case *Moore v. Ross*, this court specifically concluded that those allegations were not proscribed by the Sale Order and Injunction but would be decided by the court hearing the action. The Court stated:

> "Consistent with its gatekeeper role, the Court does not decide whether there is the requisite duty [to recall or retrofit Old GM vehicles] under nonbankruptcy law, and allows this claim through the gate, leaving that issue to the court hearing that action."

Similarly, the allegations in the Pitterman complaint based on New GM's conduct, about which New GM complains, should be permitted "through the gate" to be decided by the District Court in Connecticut where the Pitterman action is pending.

**Factual Background**

As alleged in the Pitterman complaint, on July 13, 2011, M.O., a minor child who was then 8 years old, was killed as a result of a rollaway involving a 2004 Chevrolet Suburban. In that case, plaintiffs allege that the design of the Brake Transmission Shift Interlock ("BTSI") on the vehicle was unreasonably dangerous and defective. The BTSI was an interlock between the ignition, the brake, and the transmission which, when active and functioning, prevented the transmission shift lever from being moved out of Park unless the service brake was simultaneously depressed. In the

2004 Suburban, the design of the BTSI was such that it was not active and did not function when the ignition key was turned to the position between Lock and Run, which in that vehicle was the Accessory position. On that date, the decedent minor child M.O was in the vehicle with her younger brother while the vehicle was parked in the driveway of their parents' residence. Plaintiffs claim[2] that the key was placed in the ignition and turned to the Accessory position, the transmission shift lever was shifted from Park to Neutral **without** simultaneously depressing the service brake, which was possible because of the defective design of the BTSI, and the vehicle rolled backwards approximately 100 feet down the front yard of the residence into a group of trees. As the vehicle approached the trees, M.O. either attempted to jump out of, or was ejected from, the vehicle and was crushed between the front driver side door (which was then open) and the first tree impacted by the vehicle.

**Procedural Background**

Both the initial complaint and the most recent amended complaint in the Pitterman case allege a cause of action under Connecticut's Product Liability law, §52-572m of the Connecticut General Statutes.[3] As the Pitterman case involves a vehicle designed, manufactured and sold by Old GM and arises out of an incident that occurred after the bankruptcy of Old GM, it is expressly permitted by the 2009 Sale Order and Injunction.

Following this Court's decision on April 15, 2015, and it's judgment dated June 1, 2015, GM, through its attorneys King and Spalding, sent a letter dated August 26, 2015, claiming that pursuant to that decision and judgment, any claim for punitive damages was prohibited by the Sale Agreement. Counsel for GM did not advise in its letter, as the Court stated in its decision, that the April 2015 decision did not apply to product liability claims because the issue in that decision

---

[2] GM of course disputes plaintiff's claim.
[3] See paragraph 19 of the most recent Amended Complaint dated September 9, 2015, which alleges: "This product liability action is brought pursuant to Conn. Gen. Stat. §52-572m."

3

"…does not involve death, personal injury, or property damage arising in accidents. Instead it involves only economic losses allegedly sustained with respect to Old GM vehicles or parts." See footnote 4 of the decision. Nonetheless, plaintiffs in the Pitterman action amended their complaint to delete any claim for punitive damages.

In their August 26, 2015, letter, counsel for GM did not claim that any other allegation in the Pitterman complaint, besides the claim for punitive damages, was proscribed by the Sale Agreement. See letter attached as Exhibit A. Nor did GM claim, in that letter, that the April 15, 2015, decision proscribed any allegation or claim besides one for punitive damages such as the allegations GM now challenges.

The Court subsequently issued its September 3, 2015, scheduling order (ECF #13416) permitting New GM to serve on counsel of record in representative Other Plaintiffs' cases[4] a marked up complaint identifying which portions of such complaints GM claims violates the Sale Order and Injunction.[5] New GM submitted its September 23, 2015, letter to the Court (ECF #13466) outlining the paragraphs in the Other Plaintiffs' complaints it claimed violated the Sale Order and Injunction. Importantly, that letter **did not identify**, as allegedly violative of Sale Order and Injunction, allegations regarding failure to warn. Furthermore, as to failure to recall/retrofit, New GM's claim in that letter was **limited** only to allegations that **New GM** (as opposed to Old GM) had a duty to recall or retrofit vehicles manufactured by Old GM. Importantly, New GM **did**

---

[4] The Pitterman complaint does not fall within any of the paragraphs 1 – 5 referenced in the scheduling order.
[5] In paragraph 19 of its motion, GM claims the September 3, 2015, Scheduling Order "set forth a briefing schedule to address, among other things, …(ii) whether certain causes of action or allegations in complaints filed against New GM relating to Old GM vehicles were barred by the Sale Order and Injunction." As to Other Plaintiffs' complaints, that Scheduling Order does not so state and, significantly, did not indicate that the Court would be considering whether allegations regarding failure to recall/retrofit and regarding New GM's failure to warn would be could be alleged in Product Liability actions.

4

**not, in that letter claim** that it, New GM, did not assume any liability for Old GM's failure to recall or retrofit vehicles prior to the bankruptcy petition.[6]

On October 14, 2015, the Court heard argument on GM's motion, most of which dealt with the issue of punitive damages.

With respect to the allegations in the Other Plaintiffs' complaints, the Court stated, at the outset of the hearing: [see page 8, transcript of hearing, ECF #13508]

> "There is a lot of discussion in the briefs about the extent to which particular claims principally under state law are within my domain to rule upon. Many of those, perhaps all of those, turn on whether, as a matter of non-bankruptcy law, there is a duty on the part of New GM to do various things. It seems to me, subject to your rights to be heard, that with one possible exception, those are matters for Jesse Furman to address, or to the extent applicable, judges here in the primary litigation, vis-à-vis anything that's gotten through the gate."

That conclusion was explicitly stated in the November 9, 2105 decision, in which this Court stated

> The Court's role, then, is a "gatekeeper" role. It should be the court to decide what claims and allegations should get through the "gate," under the Sale Order, April Decision and judgment. It also should be the court to decide matters of bankruptcy law – especially when bankruptcy law issues are important to deciding what claims can pass through the gate. But the Court will minimize its role beyond that, refraining from deciding issues that are better decided by the MDL court or other nonbankruptcy courts - courts that can (and undoubtedly will) determine whether claims and allegations that get through the gate are otherwise actionable as matters of nonbankruptcy law. *In re Motors Liquidation Company*, 541 B.R. 104, 113 (2015)

New GM then sent its May 19, 2016, letter to plaintiffs' counsel in the <u>Pitterman</u> case outlining what allegations GM felt was proscribed by the Sale Order and Injunction. Agreement was reached with respect to all of GM's claims except for those presently at issue. GM then filed its Motion to Enforce (ECF #13655) which is now before the court.

---

[6] Similarly, in their August 26, 2015 letter to the Court (ECF# 13390-1) GM counsel did not identify the <u>Pitterman</u> case as raising any pleading issue other than punitive damages. See Ex A Category 1 listing "Lawsuits that Raise the Punitive Damages Issue Only." (ECF #13390-1). Importantly, the <u>Pitterman</u> case is not listed in any other category listed in that Exhibit.

5

**Legal Argument**

To the extent GM relies upon pronouncements by this Court in the April 2015 decision and June 2015 judgment, those rulings are expressly stated to be not applicable to Product Liability claims against New GM such as that alleged in the <u>Pitterman</u> complaint. See footnote 4 in the April 2015 decision.

The various rulings by the Court in the array of claims against New GM has lead to a confusion as to what rulings apply to Product Liability actions not involving Ignition Switch defect as alleged in the <u>Pitterman</u> complaint. The only allegations in the <u>Pitterman</u> Complaint which are the subject of GM's June 24 Motion to Enforce are paragraphs 26 through 28 which allege as follows:

26. Despite this knowledge, and the knowledge of numerous "rollaway" incidents caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, GMC and the Defendant took no steps to directly notify and/or warn owners or the public of these defects.

27. Despite this knowledge, and the knowledge of numerous "rollaway" incidents, caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, GMC and the defendant took no steps to recall the Suburban.

28. The crash, and the resulting damages as alleged herein, were caused by GMC and the Defendant's reckless disregard for the safety of product users, consumers or others, in that GMC and the defendant knew or reasonably should have known that the Suburban was unreasonably dangerous, had caused and would cause numerous catastrophic injuries and deaths and failed to recall and/or retrofit the subject vehicle.

For purposes of clarity as to these allegations, Plaintiffs herein address the allegations challenged by GM in two categories: (1) based on Old GM's pre-sale conduct (failure to recall and retrofit) and (2) based on New GM's post-sale conduct (failure to warn and failure to recall and retrofit).

By way of factual background, and to put the challenged allegations in context, discovery in the Pitterman action has revealed that in 2003, prior to the manufacture of the subject 2004 Suburban, Old GM had decided to redesign the BTSI in all of its vehicles to be active and functional in all key positions. That redesign would have corrected the defect plaintiffs claim existed in the vehicle and, plaintiffs' claim, would have prevented the incident which is the subject of the Pitterman complaint. However, GM's decision to re-design the BTSI was not implemented in the Suburban until the 2007 model year. Furthermore, as alleged in the complaint, both Old GM and New GM were aware through customer complaints and lawsuits that rollaways due to the design of the BTSI were occurring both prior and subsequent to the Sale Date causing serious injury and death.

A.   **New GM is liable for the Product Liability claim asserted by Pitterman based on Old GM's conduct, which should include Old GM's failure to recall and retrofit**

In the November 9, 2015, decision, this Court acknowledged that New GM had assumed liability for Product Liability claims for accident claims taking place after the sale "based on anything that even Old GM had done." Specifically, in footnote 30, the Court, speaking about imputation issues, stated:

> On Product Liabilities Claims, the analysis is a little different, but the bottom line result is the same. New GM assumed liability for Product Liabilities claims, which (by definition) arose from accidents or incidents taking place *after* the Sale, and thereby became liable for compensatory damages for any Product Liabilities resulting from Old GM's action. And, by the time any such accidents or incidents occurred, New GM already was in existence, and allegations that the post-Sale accident could have been avoided (or any resulting injury would have been reduced)

7

if New GM had taken action based on any knowledge its employees had would also pass through the gate. Either way, it would not matter if that knowledge had first come into existence prior to the Sale - because it was still knowledge in fact of employees of New GM, *and* because New GM assumed responsibility for Product Liabilities Claims, which would make it liable for compensatory damages based on anything that even Old GM had done.

In <u>Pitterman</u>, plaintiffs allege, in paragraphs 27 and 28, Old GM's failure to recall and retrofit the subject 2004 Suburban as an element of their Product Liability claim as permitted by state law. In its motion, GM acknowledges that "…New GM is not seeking any relief in this Second June 2016 Motion to Enforce against PI Plaintiffs to the extent they are asserting assumed Product Liabilities (in the form of, *inter alia*, negligence, strict liability and/or breach of warranty claims predicated on Old GM's conduct) under state law based on post-363 Sale accidents involving Old GM vehicles." See GM Motion (ECF #13655-1) page 1-2. These allegations, which are based on Old GM's failure to recall or retrofit, assert a product liability claim under state law, and as such, come within the parameters of the Product Liabilities assumed by New GM.

GM relies on the Court's statement, in the November 9, 2015, decision dealing with the *Moore v. Ross* complaint, that "…New GM is not responsible for any failures of Old GM to do so" presumably referring to duty to recall or retrofit vehicles. GM's reliance is misplaced. The basis for that statement by the court is unclear and contradicts the Court's prior statement that GM has assumed responsibility for Product Liabilities. In particular, it is not clear that the statement applies to Product Liability claims alleging a failure by Old GM to recall or retrofit vehicles. There doesn't appear to be any discussion in that decision explaining the basis for that statement nor explaining why, if a Product Liability claim under state law can include an allegation of failure to recall/retrofit it should not be considered to come within the definition of Assumed Liabilities. There is nothing in the definition of Product Liabilities contained within the Sale Agreement that would exclude an allegation of failure to recall/retrofit and there is nothing in the definition of Retained Liabilities that

would immunize New GM for any failure by Old GM, as part of Product Liability claim, to recall or retrofit a vehicle. Based on GM's correspondence to plaintiff's counsel, GM did not state that it was going to claim, at the October 2015 hearing, that New GM was not liable, in a Products Liability action, for Old GM's failure to recall/retrofit vehicles and if GM did not do so, there would be no need or reason for the Court to consider that issue.

Further, there is no explanation why the Court stated in footnote 30 that "…New GM assumed responsibility for Product Liabilities Claims, which would make it liable for compensatory damages based on anything that even Old GM had done" and then would determine to carve out of that "assumed responsibility" Old GM's failure to recall or retrofit vehicles. It is thus unclear whether that statement in the court's November 9, 2015, decision pertains to Old GM's duty to recall and retrofit vehicle in the context of a Product's Liability claim, as permitted by state law, or to Old GM's recall/retrofit obligations in some other context. Under the circumstances, that statement in the Court's November 9, 2015 decision does not conclude the issue. Given that New GM accepts of responsibility for Old GM's conduct for Product Liability claims which the Court has specifically recognized, there is no justification for proscribing the allegation that Old GM failed to recall and retrofit the vehicle which is alleged as part of the Pitterman Product Liability claim.

To the extent GM claims Pitterman Plaintiffs are collaterally estopped from challenging the meaning and effect of that statement in the November 9, 2105 decision, Pitterman Plaintiffs point out that they were not given adequate and sufficient notice that GM would argue it was not assuming liability for Old GM's failure to recall/retrofit asserted as part of a Products Liability claim. In fact, in view of GM's letter, it was a fair conclusion that GM would not be making such an argument. Further, Pitterman Plaintiffs where not given due and adequate notice that the Court

9

would be considering that issue at the October 2015 hearing since it was not identified in the Court's September 3, 2015 scheduling Order as one the Court was going to consider nor was it identified in GM's letter to Pitterman counsel dated September 23, 2105 as an issue GM was pursuing. Indeed, in the November 9, 2015, decision, the Court acknowledged that GM's letter addressing Other Complaints objects to recall/retrofit allegations only with respect to the conduct of New GM, and not based on the conduct of Old GM.[7] Accordingly, this issue was not "fully litigated" to the extent required to have collateral estoppel effect.

**B.     Claims against New GM based on the conduct of New GM for both failure to recall or retrofit and failure to warn were expressly permitted through the gate to be determined by the court hearing the matter.**

  **1) Failure to recall/retrofit**

In the November 9, 2015, decision the Court held, conceptually, that claims against New GM based on New GM's conduct could pass through gate to be decided by the court hearing the action. In footnote 30 of the decision, the Court stated that: "New GM assumed liability for Product Liabilities claims, which (by definition) arose from accidents or incidents taking place *after* the Sale, and thereby became liable for compensatory damages for any Product Liabilities resulting from Old GM's action. **And, by the time any such accidents or incidents occurred, New GM already was in existence, and allegations that the post-Sale accident could have been avoided (or any resulting injury would have been reduced) if New GM had taken action based on any knowledge its employees had would also pass through the gate.**" (emphasis added)

Furthermore, allegations that New GM failed to recall or retrofit vehicles manufactured by Old GM such as those alleged in the Pitterman complaint, were expressly permitted by the Court to

---

[7]     With respect to allegations regarding failure to recall/retrofit vehicles, the Court stated: "In its letter addressing the other complaints, New GM objects to claims, such as those in *Moore v. Ross*, in South Carolina, alleging that "New GM had a duty to recall or retrofit Old GM vehicles." See In re Motors Liquidation Company, 541 B.R. 104, 141 (2015).

10

pass through the gate for the court hearing the matter to determine whether such a duty existed. In discussing such allegations contained within the *Moore v. Ross* complaint, the Court stated[8]:

> "But whether New GM had a duty to recall or retrofit previously sold Old GM vehicles that New GM did not manufacture is a question of nonbankruptcy law. Consistent with its gatekeeper role, the Court does not decide whether there is the requisite duty under nonbankruptcy law, and allows this claim through the gate, leaving that issue to the court hearing that motion."

Paragraph 30 of the December 2015 judgment, upon which GM relies, is inconsistent with the ruling stated in the November 2015 decision. The November 2015 decision appears to allow the allegations in the *Moore v. Ross* complaint against New GM for its failure to recall or retrofit to remain in the complaint while paragraph 30 of the December 2015 judgment seems to state to the contrary. There is no explanation why the phrase "with the Ignition Switch Defect" was added to paragraph 30 of the judgment since it was clear that the *Moore v. Ross* complaint, on which the court was ruling in the November 2015 decision, did not involve an ignition switch defect. Under these circumstances, the terms of the November 2015 decision should take precedence since the judgment was an attempt to codify the terms of the decision and apparently failed to do so.

Furthermore, the fact that the November 2015 decision permitted the plaintiffs in *Moore v. Ross* to proceed with a failure to recall/retrofit claim in that Product Liability action demonstrates that in that context, it is not a prohibited Independent Claim.

2)    **Failure to Warn**

It is important to note that GM does not challenge the allegation in the <u>Pitterman</u> complaint that New GM may liable under Connecticut Product Liability law for the failure of Old GM to warn of the defective condition of the vehicle.[9]

---

[8]    The Court rejected New GM's argument that it had no post-sale duty with respect to vehicles manufactured by Old GM.

11

In its motion, GM claims, at paragraph 40, that the court decided in the November 9, 2015, decision that a claim for failure to warn based on New GM's conduct can only be brought by Ignition Switch Plaintiffs. That is an overly narrow, and inaccurate description of Court's decision. With respect to the allegations against New GM based on its own post-sale failure to warn, there was no discussion in that part of the Court's November 9, 2015, decision dealing with Other Complaints regarding that issue. Nor was there any ruling in that part of the November 15, 2015 dealing with Other Complaints stating that allegations that New GM failed to warn of defects in vehicles manufactured by Old GM in the context of a Product Liability action were not permitted by the Sale Order and Injunction. Significantly, in GM's September 23, 2015, letter regarding "marked up" Other Complaints, GM did not challenge, as violative of the Sale Order and Injunction, any failure to warn allegation even though in the *Moore v. Ross* complaint, plaintiffs in that case alleged that New GM failed "to warn owners of vehicles and the public as to the dangerous defect in this device." While the Court did state that a claim against New GM based on its failure to warn as alleged in the Bellwether Action Complaints could go forward,[10] the Court did not state, as claimed by GM, that that was the only context in which it could be pursued.

---

[9]    Analyzing the marked complaints in the Bellwether Action Complaints, this Court stated, in its November 9, 2015, decision that the allegations against New GM regarding the failure by Old GM to warn in the context of Product Liability actions are not proscribed and may pass through the gate. The Court stated (page 128):
> It should be noted, however, that in listing claims that weren't assumed, the Court did not list claims for alleged breaches of a duty to warn. If there were a duty, under nonbankruptcy law, to warn of the danger of driving a motor vehicle with a known defect, the violation of that duty to warn, when coupled with subsequent death or injury, might reasonably be argued to have had a causal effect on any death or personal injury that could have been avoided by the warning. Violations of any duty to warn could be said to provide further support for any claims for death or personal injury that would be actionable even as classic Product Liabilities Claims. The Court expresses no view as to whether, as a matter of nonbankruptcy law, failures to warn are actionable, or whether the requisite duties exist. But they pass muster under Clause [3] and get through the bankruptcy court gate.

[10]  The Court stated: Finally, in its Yellow Category, New GM objects to allegations underlying different kind of failure to warn claim – here, alleged failures to warn by New GM prior to any accidents, as contrasted to alleged failures by Old GM. Here the Court does not need to determine whether such claims were assumed, as they rest on conduct allegedly on the part of New GM itself. But New GM contends that once it purchased Old GM's assets free and clear of

Indeed, the Court acknowledged that generally "on Product Liabilities Claims and Independent Claims alike, New GM may be held responsible on claims for both compensatory and punitive damages for its *own* knowledge and conduct." Id. p. 122. Since Plaintiffs in the Pitterman action are pursuing a Products Liability Claim, there is no reason why such "New GM conduct" cannot include New GM's post-sale failure to warn of the defect in the 2004 Suburban and no reason why New GM should be immune for its failure to do so.

Given that the *Moore v. Ross* complaint contained a failure to warn allegation based on New GM conduct, and that GM did not challenge the propriety of that allegation nor did the court rule that such allegation was prohibited by the Sale Order, it is apparent that the November 9, 2015 decision **did not hold** that a failure to warn allegation based on New GM conduct could not be asserted in a Product Liability action. Indeed, the effect of the Court's November 9, 2015, decision is to allow the failure to warn claim in the *Moore v. Ross* complaint to pass through the gate along with the failure to recall/retrofit allegation. Similarly, the failure to warn claim based on New GM's conduct alleged in the Pitterman Complaint should be permitted to pass through the gate as well.

To the extent GM claims Pitterman plaintiffs are collaterally estopped from pursuing a claim based on New GM's post-Sale failure to warn of the defect, plaintiffs' response is twofold: First, as stated above, the November 9, 2015 decision does not state that the failure to warn based on New GM's conduct was prohibited and in fact, arguably states it is permitted. Secondly, Pitterman plaintiffs point out that they were not given due and adequate notice that GM would make such claim or that the Court would be taking up this issue in the context of a Product Liability action.

---

claims and obligations relating to Old GM vehicles, it did not have any ongoing duties to Old GM vehicle owners other than Assumed Liabilities. ....

Consistent with its role as a gatekeeper, the Court does not decide this issue of nonbankruptcy law either, and does not block the claim based on predictions as to how another court might decide it. This Court leaves the issue to the court hearing the Bellwether claims.

13

The September 3, 2015, Scheduling Order did not indicate that this issue would be considered by the Court nor did the September 23, 2015 letter from GM counsel (ECF# 13466) indicate that GM was challenging such allegations in Product Liability actions.

Moreover, this issue was not addressed by the Court, in the context of a Product Liability action, in the November 9, 2015, decision and has not therefore been fully litigated to extent necessary to be given collateral estoppel effect.

The fact that the failure to warn claim in the *Moore v. Ross* case was permitted to pass through the gate demonstrates that it is not an impermissible Independent Claim. Indeed, GM did not assert, in its September 23, 2015, letter that the failure to warn claim in the *Moore v. Ross* was an impermissible Independent Claim even though it clearly had the opportunity to do so. Moreover, the failure to warn claim is not identified in the November 2015 decision as an impermissible Independent Claim in the context of a Product Liability action involving death or personal injury. As shown in paragraph 24 of GM's motion, the prohibition against Independent Claims was stated in the April 2015 Decision and June 2015 Judgment neither of which applied to product liability claims involving death or personal injury. See footnote 4 of the April 2015 decision.

Under these circumstances, and for the reasons stated above, plaintiffs contend that their claims based on New GM's conduct are not prohibited "Independent Claims." In the event, however, the Court concludes that the claims of failure to warn, and/or failure to recall/retrofit based on New GM's conduct are Independent Claims available only to parties who did not receive due process notice of the Bankruptcy, Pitterman Plaintiffs claim they should be entitled to assert such Independent Claims against New GM and adopt and incorporate the arguments made on this

14

issue by other plaintiffs similarly situated both as to notice and as to subject matter jurisdiction before this court and on appeal before the Second Circuit.

BERNARD PITTERMAN, ADM.

BY: _____
Joram Hirsch, Esq.
Adelman Hirsch & Connors, LLP
1000 Lafayette Boulevard
Bridgeport, CT   06604
Federal Bar No. - ct06734
Tele: (203) 331-8888
Fax: (203) 333-4650
Email: jhirsch@ahctriallaw.com

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true copy of the foregoing was mailed via first class mail on the date hereof to:

Arthur Steinberg
Scott Davidson
King & Spalding LLP
1185 Avenue of the Americas
New York, NY  10036

*Attorneys for General Motors LLC*

Richard C. Godfrey
Andrew B. Bloomer
Kirkland & Ellis LLP
300 North La Salle
Chicago, IL  60654

*Atttorneys for General Motors*

_____
Joram Hirsch, Esq.