**Objection Deadline:**   **July 8, 2016 at 4:00 p.m. (Eastern Time)**
        **Hearing Date and Time:**  **July 18, 2016 at 10:00 a.m. (Eastern Time)**

Joshua S. Markowitz, Esq. (SBN 224256)
CARCIONE, CATTERMOLE, DOLINSKI,
STUCKY, MARKOWITZ & CARCIONE, L.L.P.
1300 South El Camino Real, Suite 300
P.O. Box 5429
San Mateo, CA  94402
E-mail address:  ccdlaw@carcionelaw.com
Telephone:  (650) 367-6811
Facsimile:  (650) 367-0367

Attorneys for Brianna Minard

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x

| | |
|---|---|
| In re: | Case No.:  09-50026 (MG) |
| | (Jointly Administered) |
| MOTORS LIQUIDATION COMPANY, *et al.,* | |
|    f/k/a General Motors Corp., *et al.* | Chapter 11 |
| | |
| Debtors. | |

---------------------------------------------------------------x

**OBJECTION BY STATE COURT PLAINTIFF BRIANNA MINARD TO**
**MOTION BY GENERAL MOTORS LLC TO ENFORCE THE**
**BANKRUPTCY COURT'S JULY 5, 2009 SALE ORDER**
**AND INJUNCTION, AND THE RULINGS IN CONNECTION THEREWITH**

228119 / lgv

1

**I.    INTRODUCTORY SUMMARY OF ARGUMENT**

Brianna Minard will not repeat most of the arguments that have preceded this GM Motion. Instead, Minard will focus on her particular case, and request denial of the Motion.

<u>First</u>, contrary to GM's Motion, Minard has a pending Motion For Leave To File A First Amended Complaint in her State Court Action. The hearing on that Motion is set for July 21.

The proposed, amended complaint as it concerns GM complies with Judge Gerber's Decision (11/09/2015). Brianna Minard purchased her 2001 Chevy Blazer, used, in September 2010, after the GM 363 Sale Order (07/10/2009). Minard's accident rollover, due to the detreading of the right rear Michelin tire, occurred July 3, 2011. That full-size tire was originally the spare tire for the Blazer, and it was over 10 years old, but with good tread.

The amended complaint properly alleges that New GM assumed compensatory damage liability. It also properly alleges *only New GM* action and inaction, post-Sale Order, for exemplary or punitive damage liability. Because Minard is in the process of complying with this Court's Decisions, the GM Motion as to Minard is premature, and ultimately has no merit.

<u>Second</u>, "independent claims" cannot be fairly limited to just the Ignition Defect Plaintiffs. Although Minard also would have a due process basis for avoiding GM's unjust overreaching to create complete immunity from liability for itself, she does not need it. Judge Gerber's Decisions made it clear that independent claims were possible under State tort laws, and that there was no "complete ban" on punitive damages claims. Indeed, Judge Gerber's November 2015 Decision also allowed for imputation of Old GM knowledge and documents to New GM *on the very issue of punitive damages*. GM cannot read those Decisions to mean "total immunity."

<u>Third</u>, there was never any need for Minard to raise a due process claim in objection to the scope of the 2009 Sale Order, as the claims being raised by Minard are not barred by the Sale

228119 / lgv

2

Order.  The plaintiffs that were required to raise a due process claim in order to be permitted to proceed with their suits were those plaintiffs that had either a pre-sale accident, or those making purely economic damages claims, as both such claims are foreclosed by the Sale Order.  Minard has two types of claims, an ordinary product liability claim based upon a post-sale accident, which was an Assumed Liability, and an independent claim which is not based upon in any way the conduct of Old GM.  Judge Gerber's November 2015 Decision confirms that the Sale Order does not pose a bar to either such claim when arising out of a post-sale accident.

Fourth, even if Minard did need to raise a due process claim to obtain relief from the Sale Order, Minard may timely do so here.  It was not incumbent upon Brianna Minard to raise a due process argument at some earlier date.  She was not served with bankruptcy process before the Sale Order, because she did not own the Blazer before that date.  GM's subsequent correspondence does not create jurisdiction, because it gave no notice to Minard that she would have to raise a due process argument in this Court in order to avoid the effect of Judge Gerber's Decisions.  Those Decisions clearly allowed for post-Sale liability claims for customers like Minard.

Fifth, Judge Gerber recognized that he could not, and he did not extend a liability immunity to New GM for New GM's post-Sale conduct.  Any such attempt would be *ultra vires* this Court's jurisdiction.  That fact that Brianna Minard purchased an Old GM vehicle, post-Sale Order, can never mean that she has "no" civil right to sue New GM for its conduct.

Sixth, Judge Gerber's November 2015 Decision emphasized that the existence of tort remedies for New GM's conduct was a matter of state law, and that state court judges should decide whether actions may proceed in conformance with Bankruptcy Court Orders.  Indeed, GM is relying upon "collateral estoppel," but such a challenge belongs in the State Court Action.  Yet

228119 / lgv

GM runs to this Court for further orders that run counter to Judge Gerber's Decisions, and usurps the function of the State Courts counter to Judge Gerber's intentions for the reach of his Decisions. Minard requests that this Court allow her to proceed with the State Court Action.

## II. MINARD'S FIRST AMENDED COMPLAINT COMPLIES WITH JUDGE GERBER'S DECISIONS

### A. If GM does not oppose it, a First Amended Complaint will be allowed in the State Court Action on July 21.

The GM Motion To Enforce (06/24/2016), in Paragraph 6, at Page 3, states: "The PI Plaintiffs have each refused to accept (either in whole or in part) the rulings set forth in the November 2015 Decision and December 2015 Judgment (and other Bankruptcy Court rulings) and have refused to appropriately amended the PI Pleadings."

General Motors is wrong, because Minard's counsel agreed to file an amended complaint.

On May 17, 2016, Minard's counsel wrote GM's bankruptcy lawyers:

> Be advised that Plaintiff will take the necessary steps in the California State Court to amend the Complaint against defendant General Motors, L.L.C. Please advise whether there is any Bankruptcy Court-imposed deadline for our filing the motion to amend.
>
> [Minard Objection Exhibit No. "1".]

In reply, GM did not communicate the existence of any deadline.

GM also did not tell Minard that GM filed its First Motion To Enforce on June 1, 2016, and that a hearing was noticed for June 27, 2016. Minard learned of the First Motion and the hearing, after receipt of the June 24, 2016 Second Motion To Enforce.

Despite the absence of a deadline, Minard prepared a Motion For Leave To File A First

Amended Complaint in her State Court Action. The Motion was served on June 29, 2016, which has a noticed hearing date in State Court on July 21, 2016. [Minard Objection Exhibit No. "2" is the State Court Notice Of Motion, and Exhibit "3" is the Amended Notice Of Motion.]

    **B.    The compensatory damage cause of action in the First Amended Complaint does not include any prohibited terminology.**

Exhibit "4" hereto is Minard's proposed First Amended Complaint in the State Court Action. The First Cause of Action at Pages 4-5 is directed to only New GM. It is the Product Liability count against New GM. The language in that proposed First Cause of Action does not contain any of the terminology prohibited by Judge Gerber's November 2015 Decision.

    **C.    The Exemplary Damages Attachment to the First Amended Complaint alleges only New GM conduct.**

Pages 6-17 of the proposed amended complaint set forth Minard's allegations for exemplary / punitive damages. (Minard Objection Exhibit "4".) Those allegations are too extensive to repeat in this text. But the allegations concern post-Sale conduct (inaction despite actual knowledge of the risk of greater than 6-year old tires) of only new GM. Hence, the Exemplary Damages Attachment also fully complies with the November 2015 Decision.

**III.    JUDGE GERBER'S DECISIONS DID NOT PROHIBIT OTHER "INDEPENDENT CLAIMS," AND DID NOT PROHIBIT PUNITIVE DAMAGES**

The GM Motion relies upon a false dilemma. GM argues that if an injured plaintiff is not an Ignition Defect Plaintiff, that plaintiff has lost all civil rights to sue New GM for anything other than assumed liability for compensatory damages. That dilemma is in fact non-existent.

Just because this Court has only seen Ignition Defect Plaintiffs, until now, does not mean that there are no other post-Sale, existing and/or potential "true" Independent Claims. This is an

228119 / lgv

entire group of plaintiffs, including Brianna Minard, who could not have, and have not lost any of their civil rights against New GM. Once this "Independent Claims only equals Ignition Defect Plaintiffs" assumption is challenged, the GM Motion fails on its own tautology.

If Brianna Minard is a "true" Independent Claim, there is no basis for an injunction against her State Court Action.

### A. "Independent Claims" beyond Ignition Defect Plaintiffs are allowed.

Contrary to GM's argument, Independent Claims cannot legitimately be limited to Ignition Defect Plaintiffs. Judge Gerber's modification of the Sale Order shows that GM's exclusive reliance upon the Sale Order does not automatically grant immunity to GM. As has been pointed out by others, Judge Gerber agreed that the language in the Sale Order was "overbroad." (*Motors Liquidation*, 529 B.R. at p. 575.)

The Judgment entered December 4, 2015, Footnote 3, at Page 2 of the Judgment, states (in part): " 'Independent Claim' shall mean a claim or cause of action asserted against New GM that is based solely on New GM's own independent post-Closing acts or conduct."

The November 9, 2015 Decision by Judge Gerber, which yielded the Judgment, shows in Footnote 30, at Page 16, that for Product Liability Claims and Independent Claims "alike", New GM is potentially liable where New GM could have prevented an accident.

> On Product Liabilities Claims, the analysis is a little different, but the bottom line result is the same. New GM assumed liability for Product Liabilities claims, which (by definition) arose from accidents or incidents taking place *after* the Sale, and thereby became liable for compensatory damages for any Product Liabilities resulting from Old GM's action. And by the time any such accidents or incidents occurred, New GM already was in existence, and allegations that the post-Sale accident could have been avoided (or any resulting injury would have been reduced) if New GM had taken action based on any knowledge its employees had would also pass through the gate. Either way, it would not matter if that knowledge had first come into existence prior to the Sale--because it was still

228119 / lgv

6

> knowledge in fact of employees of New GM, *and* because New GM assumed responsibility for Product Liabilities Claims, which would make it lible for compensatory damages based on anything that even Old GM had done.
> [Italics in original.]

There is no other way to read the entirety of Judge Gerber's rulings but to recognize that it is not just the Ignition Defect Plaintiffs who can be included in the category of Independent Claims. For Minard, her State Court Action, once amended, clearly falls into that category.

**B.     Punitive damage claims based solely on New GM conduct are allowed.**

Page 29 of the November 9, 2015 Bankruptcy Court "Decision On Imputation, Punitive Damages, and Other No-Strike and No-Dismissal Pleadings Issues," states (in part):

> As discussed above, though Product Liabilities *compensatory damages* claims involving vehicles manufactured by Old GM were contractually assumed by New GM (and thus are permissible under the Sale Order, April Decision, and Judgment), *punitive damages* claims were not. Thus punitive damages in such actions may not be premised on anything Old GM knew or did.
> Nevertheless, as also discussed above, punitive damages may still be sought in actions based on post-Sale accidents involving vehicles manufactured by Old GM to the extent the punitive damages claims are premised on New GM action or inaction after it was on notice of information "inherited" by New GM, or information developed by New GM post-Sale.
> [Italics in original.]

Pages 27-28 of the November 2015 Decision states (in part):

> But on Product Liabilities Claims and Independent Claims alike, New GM may be held responsible, on claims for both compensatory and punitive damages, for its *own* knowledge and conduct. Under the Pathway # 2 scenario, New GM might have acquired relevant knowledge when former Old GM employees came over to New GM or New GM took custody of what previously were Old GM records. Reliance on that, for punitive damages purposes, is permissible.
> The Post-Closing Accident Plaintiffs refer to knowledge New GM might have acquired in that fashion as "inherited" information, and the Court finds that shorthand to be as good as any. It is possible that New GM may have inherited information from Old GM very soon after the 363 Sale. The Court does not know that to be the case--because any such knowledge would have to be acquired in fact, and not by operation of law (such as any kind of successorship theory). But to the extent New GM employees actually had knowledge relevant to post-Sale

> accident claims or Independent Claims (even if it was [sic] inhereited), plaintiffs in actions asserting such claims are free to base punitive damages claims on evidence of such knowledge to the extent nonbankruptcy law permits.
> [Italics in original.]

Page 34 of the November 2015 Decision reiterates that:

> To the extent that any claims against New GM involving *Old GM* manufactured vehicles are for Product Liabilities Claims or genuinely Independent Claims, the rules discussed in Sections II(B)(3)(a)(i) and (b)(i), respectively, apply; punitive damages may be sought in connection with them, but the evidence supporting such claims can be based only on New GM knowledge and acts. That evidence can include inherited knowledge and knowledge acquired after the 363 Sale, but not any acts, or non-inherited knowledge, of Old GM.
> [Italics in original.]

When Judge Gerber's Decision is fully acknowledged, GM has no basis for arguing the Sale Order bars all punitive damages against New GM.

### C. Brianna Minard does not need a "due process" claim to proceed.

GM argues that for Minard's claim to proceed she must establish a violation of due process based upon the failure to receive notice of the 2009 Sale Order. But that is just not true. The plaintiffs that were required to demonstrate due process were those who held claims that were expressly foreclosed by the Sale Order, i.e., pre-sale accident plaintiffs, and economic damages only plaintiffs.

Indeed, in the November 2015 Decision permitting post-sale accident ignition switch plaintiffs to proceed, Judge Gerber never even addresses any issue of due process as a prerequisite to proceeding on their claims. That is because the November 2015 Decision does not alter the scope of the Sale Order, but rather clarifies what types of claims are or are not prohibited by the Sale Order. This differs from the April 2015 Decision which addressed whether the Sale Order should be altered to permit claims that would otherwise be barred by the

228119 / lgv

8

Sale Order. As to such claims, absent a due process claim, there would be no basis to amend the Sale Order. But as to claims that are not barred by the Sale Order, no due process objection is necessary.

**D.  If a "due process" objection is required for Brianna Minard, she did not need to raise it earlier, because she never received notice that her particular claims would be barred absent establishing a "due process" violation.**

GM did not quote the applicable sections of the November 2015 Decision in its bankruptcy lawyer letters to Minard's counsel. But the Decision actually written by Judge Gerber, trumps GM's reliance on the Judgment. The Judgment, entered December 4, 2015, begins with the proviso, "For the reasons set forth in the Court's Decision" of November 9, 2015.

The December 4 Judgment concludes with Paragraph 40: "To the extent, if any, that this Judgment fails, in whole or in part, to address an issue or is ambiguous, the Court's statements in the April Decision and the [November 2015] Decision may be used as interpretive aids."

This means there is no avoiding Judge Gerber's Decision that punitive damages are allowed, under certain conditions. Thus, Minard can allege them in her First Amended Complaint. And there should be no further legal obstacles by GM to prosecuting her lawsuit.

**1.  GM's letters in 2015 did not give notice that due process was at stake.**

This Court is already aware of the issues related to GM's generic correspondence from August and September 2015. And the transcript of the hearing on June 27, 2016, shows that because only Ignition Defect Plaintiffs were before the Court, no other State Court Plaintiffs had the "notice" that GM asserts.

228119 / lgv

9

**2.     GM's letters in 2016 do not create "collateral estoppel".**

For the same reason, Brianna Minard has not been before this Court earlier, and there has been no previous actual litigation and decision about the nature of her lawsuit, and the fully-compliant, proposed First Amended Complaint in her State Court Action.

**3.     If this Court needs a "due process" claim, Minard will make it.**

If it were necessary, because somehow (in GM's view) Judge Gerber granted blanket immunity to New GM for the Minard lawsuit (and others), Minard has a due process argument that Old GM knew the defect, i.e., the safety risk of tires older than 6 years, regardless of tread wear, but Old GM did not warn Minard (or anyone else). The fact is that New GM first included a 6-year automatic tire replacement recommendation in Model Year 2013 vehicle owner manuals. But New GM knew before Brianna Minard's accident that such a recommendation should be made. That pattern of conduct is similar to the concealment the Ignition Defect Plaintiffs were subjected to by GM.

**IV.    THE GM MOTION BELONGS IN THE STATE COURT ACTION**

Page 35 of Judge Gerber's Decision made the additional point that the Bankruptcy Court probably would no longer need to address GM's objections to other State Court lawsuits.

> To the extent forbidden claims and allegations have been brought to the court's attention, the Court addresses them in Section III below. To the extent they haven't yet been brought to this Court's attention, but New GM wishes objects to such to be heard, they can be heard by the judges hearing the nonbankruptcy cases.

Specifically, on potential liability theories of "Failure to Recall/Retrofit Vehicles," which applies to Minard, or "Negligent Failure to Identify Defects," Page 61 of the November 2015

228119 / lgv

Decision states that "whether New GM had a duty to recall or retrofit previously sold Old GM vehicles that New GM did not manufacture is a question of nonbankruptcy law."

The November 2015 Decision is replete with references to how nonbankruptcy courts would handle future GM objections. But here Minard is (along with many others) in Bankruptcy Court in New York. GM provides no justification for why it is not in California State Court.

Dated: July 8, 2016,
San Mateo, California

Respectfully submitted,

/s/ Joshua S. Markowitz, Esq.
Joshua S. Markowitz, Esq.
Carcione, Cattermole, Dolinski,
Stucky, Markowitz & Carcione, L.L.P.
1300 South El Camino Real, Suite 300
P.O. Box 5429
San Mateo, CA 94402
E-mail address: ccdlaw@carcionelaw.com
Telephone number: (650) 367-6811
Telecopier number: (650) 367-0367

*Counsel for Brianna Minard*

**CERTIFICATE OF SERVICE**

    I, Joshua Markowitz, hereby certify that a copy of the foregoing Objection by State Court Plaintiff Brianna Minard to Motion by General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Bankruptcy Court's July 5, 2009 Sale Order and Injunction, and the Ruling in Connection Therewith , filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 8, 2016.

                                        /s/ Joshua S. Markowitz, Esq.