# EXHIBIT 1

# CARCIONE, CATTERMOLE, DOLINSKI,
## STUCKY, MARKOWITZ & CARCIONE
### LIMITED LIABILITY PARTNERSHIP

JOSEPH W. CARCIONE, JR., P.C.
GREGORY C. CATTERMOLE
GARY W. DOLINSKI
ROGER W. STUCKY

1300 SOUTH EL CAMINO REAL, SUITE 300
P.O. BOX 5429
SAN MATEO, CA 94402
TELEPHONE (650) 367-6811
FACSIMILE (650) 367-0367

JOSHUA S. MARKOWITZ
JOHN P. CARCIONE
JOSHUA J. K. HENDERSON

DANIELLE UKSHINI
(1958-2005)

AARON B. MARKOWITZ
Of Counsel
MATTHEW J. McNAUGHTON
Of Counsel

May 17, 2016

FAX only:  (212) 556-2222
Scott I. Davidson, Esq.
King & Spalding
1185 Avenue of the Americas
New York, NY  10036-4003

Re:   *Brianna Minard vs. Michelin North America, Inc.; et al.*
[San Joaquin County Superior Court No. 39-2013-00298477-CU-PL-STK]

Counsel:

Be advised that Plaintiff will take the necessary steps in the California State Court to amend the Complaint against defendant General Motors, L.L.C.  Please advise whether there is any Bankruptcy Court-imposed deadline for our filing the motion to amend.

While I think I understand the first two "corrections" that GM requests in your letter of May 10, 2016, are you saying in the third request that any and all exemplary/punitive damages are prohibited?  If so, we request the entirety of your supporting references to the Bankruptcy Court Orders and Decisions.  Your May 10 letter only references Paragraph 6 of the December Judgment, and its statement:  "New GM did not contractually assume liability for punitive damages from Old GM."  Is it GM's position that "New GM" *absolutely cannot* be sued for punitive damages for "New GM's" conduct after July 10, 2009?  If that is the position, then I will need your complete points and authorities on this topic before I draft the First Amended Complaint, and file the motion to amend.  Please advise us on this topic as well.

Sincerely,

CARCIONE, CATTERMOLE, DOLINSKI, ET AL.

By: _____
Gary W. Dolinski, Esq.

GWD/lgv
cc.    Neil M. Kliebenstein, Esq.
       Counsel to General Motors LLC in *Minard vs. Michelin*
       [FAX only:  (408) 279-5845]

```
*******************************
***   MULTI TX/RX REPORT   ***
*******************************

TX/RX NO            1057
PGS.                1
TX/RX INCOMPLETE    -----

TRANSACTION OK
                    (1)   12125562222
                    (2)   14082795845
ERROR INFORMATION   -----
```

# CARCIONE, CATTERMOLE, DOLINSKI, STUCKY, MARKOWITZ & CARCIONE
### LIMITED LIABILITY PARTNERSHIP

JOSEPH W. CARCIONE, JR., P.C.
GREGORY C. CATTERMOLE
GARY W. DOLINSKI
ROGER W. STUCKY

———————————————
DANIELLE UKSHINI
(1958-2005)

1300 SOUTH EL CAMINO REAL, SUITE 300
P.O. BOX 5429
SAN MATEO, CA 94402
TELEPHONE (650) 387-6811
FACSIMILE (650) 387-0367

JOSHUA S. MARKOWITZ
JOHN P. CARCIONE
JOSHUA J. K. HENDERSON

AARON B. MARKOWITZ
Of Counsel
MATTHEW J. McNAUGHTON
Of Counsel

May 17, 2016

FAX only:  (212) 556-2222
Scott I. Davidson, Esq.
King & Spalding
1185 Avenue of the Americas
New York, NY 10036-4003

Re:  *Brianna Minard vs. Michelin North America, Inc.; et al.*
[San Joaquin County Superior Court No. 39-2013-00298477-CU-PL-STK]

Counsel:

Be advised that Plaintiff will take the necessary steps in the California State Court to amend the Complaint against defendant General Motors, L.L.C.  Please advise whether there is any Bankruptcy Court-imposed deadline for our filing the motion to amend.

While I think I understand the first two "corrections" that GM requests in your letter of May 10, 2016, are you saying in the third request that any and all exemplary/punitive damages are prohibited?  If so, we request the entirety of your supporting references to the Bankruptcy Court Orders and Decisions.  Your May 10 letter only references Paragraph 6 of the December Judgment, and its statement:  "New GM did not contractually assume liability for punitive damages from Old GM."  Is it GM's position that "New GM" *absolutely cannot* be sued for punitive damages for "New GM's" conduct after July 10, 2009?  If that is the position, then I will need your complete points and authorities on this topic before I draft the First Amended Complaint, and file the motion to amend.  Please advise us on this topic as well.

Sincerely,

# EXHIBIT 2

1  Joseph W. Carcione, Jr., Esq. (State Bar No. 56693)
  Gary W. Dolinski, Esq. (State Bar No. 107725)
2  CARCIONE, CATTERMOLE, DOLINSKI,
  STUCKY, MARKOWITZ & CARCIONE, L.L.P.
3  1300 South El Camino Real, Suite 300
  P.O. Box 5429
4  San Mateo, CA 94402
  Telephone: (650) 367-6811
5  Facsimile: (650) 367-0367

6  Attorneys for Plaintiff

*FILED*
16 JUN 27 PH 2: 43
ROSA JUNQUEIRO, CLERK
MOLICHIA VALLENTE
BY
DEPUTY

*RECEIVED*
JUN 29 2016
CCDSMC
LLP

10  SUPERIOR COURT OF THE STATE OF CALIFORNIA

11  FOR THE COUNTY OF SAN JOAQUIN

13  BRIANNA MINARD,           No. 39-2013-00298477-CU-PL-STK

14           Plaintiff,      ASSIGNED FOR ALL PURPOSES TO
                     HONORABLE BARBARA KRONLUND,
15  vs.                 DEPARTMENT 11

16  MICHELIN NORTH AMERICA, INC.;
  GENERAL MOTORS, L.L.C.;
17  KOEPPLIN WAYNE LEWIS dba    NOTICE OF MOTION AND MOTION FOR
  LODI SMALL CAR SALES;       LEAVE TO FILE FIRST AMENDED
18  CHASE CHEVROLET CO., INC.; and  COMPLAINT
  DOES 1 THROUGH 100,
19                        Date:  July 21, 2016
20           Defendants.        ~~July 22, 2016~~
                     ~~July 26, 2016~~
21  _____/  Time:  9:00 a.m.
                     Dept.:  41
22  and RELATED CROSS-ACTIONS.   Judge: Honorable Barbara Kronlund
                     Trial Date:  September 6, 2016
23  _____/

24

25

26

27

28

1.

27762 / gwd

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that on the date specified above, Plaintiffs will request that

3   the Court issue an order allowing Plaintiff to file an amended complaint. A copy of the

4   proposed First Amended Complaint is Exhibit "B" to the accompanying Declaration of

5   Counsel.

6           The Motion is made on the following grounds: (1) Defendant General Motors has

7   purported to "require" an amended complaint on the basis of certain Bankruptcy Court Orders

8   in *In re Motors Liquidation Company*, United States Bankruptcy Court, Southern District of

9   New York, No. 09-50026; (2) a typographical error inadvertently left Defendant Chase

10  Chevrolet Co., Inc., off of the list of defendants against whom Plaintiff asserted a claim for

11  exemplary / punitive damages on the original Complaint; (3) Defendants Robert Rusk and

12  Janay Rusk d/b/a Douglas Tire Store were added as Does "1" and "2", and a First Amended

13  Complaint specifies the negligence cause of action against them; and (4) the separation of

14  allegations against GM (at GM's behest) is addressed by separating out the allegations against

15  all remaining Defendants. The Michelin Defendant has been dismissed.

16          This Motion will be based upon this Notice, the accompanying Memorandum of Points

17  and Authorities, and supporting Declaration (with exhibits), upon the materials contained in

18  the file of the Court, upon any matter of which the Court takes judicial notice, and upon any

19  further evidence submitted at the time of the hearing, as the Court allows.

20

21  Date:  June 24, 2016

22                                          CARCIONE, CATTERMOLE, DOLINSKI,
                                            STUCKY, MARKOWITZ & CARCIONE, LLP.

23

24                                          By:_____

25                                                  Attorney for Plaintiff

26

27

28

                                            2.

# EXHIBIT 3

1  | Joseph W. Carcione, Jr., Esq. (State Bar No. 56693)
   | Gary W. Dolinski, Esq. (State Bar No. 107725)
2  | CARCIONE, CATTERMOLE, DOLINSKI,
   | STUCKY, MARKOWITZ & CARCIONE, L.L.P.
3  | 1300 South El Camino Real, Suite 300
   | P.O. Box 5429
4  | San Mateo, CA  94402
   | Telephone:  (650) 367-6811
5  | Facsimile:  (650) 367-0367

6  | Attorneys for Plaintiff

7

8

9

10                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        FOR THE COUNTY OF SAN JOAQUIN

12

13 | BRIANNA MINARD,                          No. STK-CV-UPL-2013-0006252
   |                                          (Previous No. 39-2013-00298477-CU-PL-STK)
14 |             Plaintiff,
   |                                          ASSIGNED FOR ALL PURPOSES TO
15 | vs.                                      HONORABLE BARBARA KRONLUND,
   |                                          DEPARTMENT 42
16 | MICHELIN NORTH AMERICA, INC.;
   | GENERAL MOTORS, L.L.C.;
17 | KOEPPLIN WAYNE LEWIS dba
   | LODI SMALL CAR SALES;
18 | CHASE CHEVROLET CO., INC.; and           PLAINTIFF'S AMENDED NOTICE OF
   | DOES 1 THROUGH 100,                      MOTION AND MOTION FOR LEAVE TO
19 |                                          FILE FIRST AMENDED COMPLAINT
   |
20 |             Defendants.                  Date:  July 21, 2016
   |                                          Time:  9:00 a.m.
21 | _____/        Dept.:  42
   |                                          Judge: Honorable Barbara Kronlund
22 | and RELATED CROSS-ACTIONS.               Trial Date:      September 6, 2016
   |
23 | _____/

24

25

26

27

28

                                          1.

                Plaintiff's Amended Notice of Motion For Leave To File First Amended Complaint
                                        (06/29/2016)

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that the Court has now selected and set the actual hearing

3  date and time.  Therefore, on the date and at the time specified above, Plaintiffs will request

4  that the Court issue an order allowing Plaintiff to file an amended complaint.  A copy of the

5  proposed First Amended Complaint is Exhibit "B" to the accompanying Declaration of

6  Counsel.

7      The Motion is made on the following grounds:  (1) Defendant General Motors has

8  purported to "require" an amended complaint on the basis of certain Bankruptcy Court Orders

9  in *In re Motors Liquidation Company*, United States Bankruptcy Court, Southern District of

10  New York, No. 09-50026; (2) a typographical error inadvertently left Defendant Chase

11  Chevrolet Co., Inc., off of the list of defendants against whom Plaintiff asserted a claim for

12  exemplary / punitive damages on the original Complaint; (3) Defendants Robert Rusk and

13  Janay Rusk d/b/a Douglas Tire Store were added as Does "1" and "2", and a First Amended

14  Complaint specifies the negligence cause of action against them; and (4) the separation of

15  allegations against GM (at GM's behest) is addressed by separating out the allegations against

16  all remaining Defendants.  The Michelin Defendant has been dismissed.

17      This Motion will be based upon this Amended Notice, and the First Notice,

18  Memorandum of Points and Authorities, Separate Statement, and Declaration (with exhibits).

19  previously served on June 24, 2016, upon the materials contained in the file of the Court, upon

20  any matter of which the Court takes judicial notice, and upon any further evidence submitted at

21  the time of the hearing, as the Court allows.

22

23  Date:  June 29, 2016                    CARCIONE, CATTERMOLE, DOLINSKI,
24                                          STUCKY, MARKOWITZ & CARCIONE, LLP.
25
26                                          By:
27                                             Attorney for Plaintiff
28

2.

Plaintiff's Amended Notice of Motion For Leave To File First Amended Complaint
(06/29/2016)

*Brianna Minard vs. Michelin North America, Inc.; et al.*
[San Joaquin County Superior Court No. STK-CV-UPL-2013-0006252
(Previous No. 39-2013-00298477-CU-PL-STK)]

## PROOF OF SERVICE

I, the undersigned, declare:

I am employed in the County of San Mateo, State of California. I am over the age of eighteen and not a party to this action. My business address is 1300 South El Camino Real, Suite 300, San Mateo, CA 94402-2971.

On June 29, 2016, I served the attached document(s):

• PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

_X_    **By MAIL**, being familiar with the practice of this office for the collection and the processing of correspondence for mailing with the United States Postal Service, and deposited in the United States Mail copies of same to the business addresses set forth below, in a sealed envelope fully prepaid.

**Counsel for Defendant General Motors, L.L.C.**
Vincent Galvin, Jr., Esq.
Neil M. Kliebenstein, Esq.
Bowman & Brooke, L.L.P.
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393        Facsimile: (408) 279-5845

**Counsel for Defendant and Cross-Complainant Wayne Lewis Koepplin dba Lodi Small Car Sales:**
Daniel P. Costa, Esq.
2489 Sunrise Boulevard, Suite A
Gold River, CA 95670
Telephone: (916) 400-2734        Facsimile: (916) 400-2744

**Counsel for Defendant and Cross-Complainant Chase Chevrolet Co., Inc.:**
Matthew S. Conant, Esq.
Lombardi, Loper & Conant, L.L.P.
1999 Harrison Street, Suite 2600
Oakland, CA 94612
Telephone: (510) 433-2600        Facsimile: (510) 433-2699

**Counsel for Defendants Robert A. Rusk & Janay K. Rusk dba Douglas Tire Store:**
Robert G. Eliason, Esq.
Wild, Carter & Tipton
246 Shaw Avenue
Fresno, CA 93704
Telephone: (559) 224-2131        Facsimile: (559) 229-7295

227762 / gwd

1.

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.  Executed on the above date at San Mateo, California.

3

4

5    Leslie Garcia-Valderrama

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27762 / gwd

# EXHIBIT 4

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Joseph W. Carcione, Jr., Esq. (SBN 56693)<br>Carcione, Cattermole, Dolinski,<br>Stucky, Markowitz & Carcione, L.L.P.<br>1300 South El Camino Real, Suite 300<br>San Mateo, CA 94402<br><br>TELEPHONE NO: (650)367-6811   FAX NO. *(Optional)*: (650) 367-0367<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Joaquin
STREET ADDRESS: 222 East Weber Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Stockton, 95202
BRANCH NAME:

PLAINTIFF: Brianna Minard

DEFENDANT: Michelin North America, Inc.; General Motors, L.L.C.; Wayne Lewis Koepplin dba Lodi Small Car Sales; Chase Chevrolet Co., Inc.; and
[X] DOES 1 TO 100

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
[X] AMENDED *(Number)*: First
Type *(check all that apply)*:
[X] MOTOR VEHICLE        [X] OTHER *(specify)*: Product Liability
   [X] Property Damage      [ ] Wrongful Death
   [X] Personal Injury       [X] Other Damages *(specify)*: Exemplary

**Jurisdiction** *(check all that apply)*:
[ ] ACTION IS A LIMITED CIVIL CASE
   Amount demanded  [ ] does not exceed $10,000
                    [ ] exceeds $10,000, but does not exceed $25,000
[X] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint
   [ ] from limited to unlimited
   [ ] from unlimited to limited

| CASE NUMBER: |
|---|
| STK-CV-UPL-2013-0006252 |

1. Plaintiff *(name or names)*: Brianna Minard

   alleges causes of action against **defendant** *(name or names)*: Michelin North America, Inc.; General Motors, L.L.C.; Wayne Lewis Koepplin dba Lodi Small Car Sales; Chase Chevrolet Co., Inc.; and Does 1 through 100

2. This pleading, including attachments and exhibits, consists of the following number of pages: 64
3. Each plaintiff named above is a competent adult
   a. [ ] **except plaintiff** *(name)*:
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe)*:
      (3) [ ] a public entity *(describe)*:
      (4) [ ] a minor   [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify)*:
      (5) [ ] other *(specify)*:

   b. [ ] **except plaintiff** *(name)*:
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe)*:
      (3) [ ] a public entity *(describe)*:
      (4) [ ] a minor   [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify)*:
      (5) [ ] other *(specify)*:

   [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

Page 1 of 3

Legal Solutions Plus

Code of Civil Procedure, § 425.12

PLD-PI-001

| SHORT TITLE: Brianna Minard vs. Michelin North America; et al. | CASE NUMBER:<br>STK-CV-UPI.-2013-0006252 |
|---|---|

4. ☐ Plaintiff *(name)*:

is doing business under the fictitious name *(specify)*:

and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
   a. ☒ **except** defendant *(name)*: Michelin North America, Inc.

   (1) ☐ a business organization, form unknown
   (2) ☒ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☐ other *(specify)*:

   c. ☒ **except** defendant *(name)*: Chase Chevrolet Co., Inc.

   (1) ☐ a business organization, form unknown
   (2) ☒ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☐ other *(specify)*:

   b. ☒ **except** defendant *(name)*: General Motors, L.L.C.

   (1) ☐ a business organization, form unknown
   (2) ☒ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☐ other *(specify)*:

   d. ☐ **except** defendant *(name)*:

   (1) ☐ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☐ other *(specify)*:

   ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
   a. ☒ Doe defendants *(specify Doe numbers)*: Does 1-100 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.
   b. ☒ Doe defendants *(specify Doe numbers)*: Does 1-100 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names)*.

8. This court is the proper court because
   a. ☒ at least one defendant now resides in its jurisdictional area.
   b. ☒ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   c. ☒ injury to person or damage to personal property occurred in its jurisdictional area.
   d. ☐ other *(specify)*:

9. ☐ Plaintiff is required to comply with a claims statute, **and**
   a. ☐ has complied with applicable claims statutes, **or**
   b. ☐ is excused from complying because *(specify)*:

| SHORT TITLE: Brianna Minard vs. Michelin North America; et al. | CASE NUMBER: STK-CV-UPL-2013-0006252 |
| --- | --- |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. [  ] Motor Vehicle
   b. [ X ] General Negligence
   c. [  ] Intentional Tort
   d. [ X ] Products Liability
   e. [  ] Premises Liability
   f. [ X ] Other *(specify):*  Fraud

11. Plaintiff has suffered
   a. [ X ] wage loss
   b. [ X ] loss of use of property
   c. [ X ] hospital and medical expenses
   d. [ X ] general damage
   e. [ X ] property damage
   f. [ X ] loss of earning capacity
   g. [ X ] other damage *(specify):* All personal injury economic and non-economic damages permitted by law.

12. [  ]  The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. [  ] listed in Attachment 12.
   b. [  ] as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) [ X ] compensatory damages
     (2) [ X ] punitive damages
   The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
   (1) [ X ] according to proof
   (2) [  ] in the amount of: $

15. [ X ] The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*
   All

Date:  07/22/16

Joseph W. Carcione, Jr., Esq.
(TYPE OR PRINT NAME)

▶

(SIGNATURE OF PLAINTIFF OR ATTORNEY)

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

PLD-PI-001(5)

| SHORT TITLE:  Brianna Minard vs. Michelin North America, Inc., et al. | CASE NUMBER  STK-CV-UPL-2013-0006252 |
|---|---|

First _____    CAUSE OF ACTION—Products Liability    Page 4 _____
   (number)

ATTACHMENT TO  [X] Complaint  [ ] Cross-Complaint
*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name)*:  BRIANNA MINARD

Prod. L-1. On or about *(date)*:  July 3, 2011       plaintiff was injured by the following product:
2001 Chevrolet Blazer and a Uniroyal Laredo (Michelin) Tire with
United States Department of Transportation (DOT) No. APM1273U4100.

Prod. L-2. Each of the defendants knew the product would be purchased and used without inspection for defects. The product was defective when it left the control of each defendant. The product at the time of injury was being
  [X] used in the manner intended by the defendants.
  [X] used in a manner that was reasonably foreseeable by defendants as involving a substantial danger not readily apparent. Adequate warnings of the danger were not given.

Prod. L-3. Plaintiff was a
  [X] purchaser of the product.          [X] user of the product.
  [ ] bystander to the use of the product.     [ ] other *(specify)*:

PLAINTIFF'S INJURY WAS THE LEGAL (PROXIMATE) RESULT OF THE FOLLOWING:

Prod. L-4. [X] **Count One—Strict liability** of the following defendants who
  a. [X] manufactured or assembled the product *(names)*:  General Motors, L.L.C., who assumed liability for Old GM.

      [X] Does 3_____ to 100_____
  b. [X] designed and manufactured component parts supplied to the manufacturer *(names)*:
    General Motors, L.L.C., who assumed liability for Old GM.

      [X] Does 3_____ to 100_____
  c. [X] sold the product to the public *(names)*: General Motors, L.L.C., who assumed liability for Old GM.

      [X] Does 3_____ to 100_____

Prod. L-5. [X] **Count Two--Negligence** of the following defendants who owed a duty to plaintiff *(names)*:
  General Motors, L.L.C., individually, and assumed liability for Old GM

      [X] Does 3_____ to 100_____

Prod. L-6. [ ] **Count Three--Breach of warranty** by the following defendants *(names)*:

      [ ] Does _____ to _____
  a. [ ] who breached an implied warranty
  b. [ ] who breached an express warranty which was
      [ ] written  [ ] oral

Prod. L-7. [ ] The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are
    [ ] listed in Attachment-Prod. L-7  [ ] as follows:

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(5) [Rev. January 1, 2007]

CAUSE OF ACTION—Products Liability

Legal
Solutions
℗ Plus

Page 1 of 1
Code of Civil Procedure, § 425.12

PLD-PI-001(6)

| SHORT TITLE: Brianna Minard vs. Michelin North America, Inc., et al. | CASE NUMBER |
| | STK-CV-UPL-2013-0006252 |

### Exemplary Damages Attachment                    Page 5

ATTACHMENT TO  [X] Complaint   [ ] Cross-Complaint

EX-1.  As additional damages against defendant (name): General Motors, L.L.C., who assumed liability for Old GM.

> Plaintiff alleges defendant was guilty of
> [X] malice
> [ ] fraud
> [ ] oppression
> as defined in Civil Code section 3294, and plaintiff should recover, in addition to actual damages, damages to make an example of and to punish defendant.

EX-2.  The facts supporting plaintiff's claim are as follows:

> See Attachment

EX-3.  The amount of exemplary damages sought is
    a. [X] not shown, pursuant to Code of Civil Procedure section 425.10.
    b. [ ] $

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(6) [Rev. January 1, 2007]

**EXEMPLARY DAMAGES ATTACHMENT**

Legal
Solutions
Plus

Page 1 of 1
Code of Civil Procedure, § 425.12

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___6___

## EXEMPLARY DAMAGES ATTACHMENT
## ATTACHMENT EX-2 TO COMPLAINT
## VERSUS DEFENDANT GENERAL MOTORS, L.L.C.

Plaintiff alleges on information and belief that:


1.      In bankruptcy proceedings titled In re Motors Liquidation Co., 529 B.R. 510

(Bankr. S.D.N.Y. 2015), the former "General Motors Corporation" was labeled as "Old GM",

and the new "General Motors, L.L.C." was labeled as "New GM". All allegations herein are

intended to assert liability on the part of New GM, i.e., the named defendant General Motors,

L.L.C. This Attachment shall use the same nomenclatures of "Old GM" and "New GM".


2.      On July 10, 2009, the Bankruptcy Court entered a Sale Order dated July 5, 2009,

that approved an Amended and Restated Master Sale and Purchase Agreement, dated June 26,

2009. Under the Sale Order, New GM assumed liability for vehicles sold by Old GM for post-

sale accidents involving Old GM vehicles causing personal injury or property damage.


3.      On November 9, 2015, the Bankruptcy Court entered a "Decision On Imputation,

Punitive Damages, and Other No-Strike and No-Dismissal Pleadings Issues" [the "November 9,

2015 Decision" hereinafter].

At Page 29 of the Decision, the Bankruptcy Court addressed the topic of "Personal

24494 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___7___

Injuries in Post-sale Accidents Involving Vehicles Manufactured by Old GM," as follows:

> As discussed above, though Product Liabilities *compensatory damages*
> claims involving vehicles manufactured by Old GM were contractually assumed
> by New GM (and thus are permissible under the Sale Order, April Decision, and
> Judgment), *punitive damages* claims were not. Thus punitive damages in such
> actions may not be premised on anything Old GM knew or did.
>
> Nevertheless, as also discussed above, punitive damages may still be
> sought in actions based on post-Sale accidents involving vehicles manufactured
> by Old GM to the extent the punitive damages claims are premised on New GM
> action or inaction after it was on notice of information "inherited" by New GM, or
> information developed by New GM post-Sale.
>
> [Italics in original.]

4.    At Pages 27-28 of the November 9, 2015 Decision, the Bankruptcy Court
addressed the topic of "Information 'Inherited' by New GM as follows (in part):

> But on Product Liabilities Claims and Independent Claims alike, New GM
> may be held responsible, on claims for both compensatory and punitive damages,
> for its *own* knowledge and conduct. Under the Pathway # 2 scenario, New GM
> might have acquired relevant knowledge when former Old GM employees came

24494 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___8__

over to New GM or New GM took custody of what previously were Old GM records. Reliance on that, for punitive damages purposes, is permissible.

The Post-Closing Accident Plaintiffs refer to knowledge New GM might have acquired in that fashion as "inherited" information, and the Court finds that shorthand to be as good as any. It is possible that New GM may have inherited information from Old GM very soon after the 363 Sale. The Court does not know that to be the case--because any such knowledge would have to be acquired in fact, and not by operation of law (such as any kind of successorship theory). But to the extent New GM employees actually had knowledge relevant to post-Sale accident claims or Independent Claims (even if it was [sic] inhereited), plaintiffs in actions asserting such claims are free to base punitive damages claims on evidence of such knowledge to the extent nonbankruptcy law permits.

[Italics in original.]

Throughout this pleading, the Bankruptcy Court's concept of "inherited" shall apply to the use of the same term herein.

5.    In Year 2000, Old GM designed, manufactured, assembled, inspected, sold,

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___9___

marketed and/or distributed the 2001 Chevrolet Blazer vehicle, which is a 2-wheel drive sport

utility vehicle (SUV), and its component parts [the "Subject Vehicle"], including but not limited

to the Michelin Uniroyal Laredo tire with Department of Transportation (DOT) No.

APM1273U4100, which was original equipment for the Subject Vehicle [the "Accident Tire"].


6.        The last 4 digits on the DOT number on the sidewall of the Accident Tire, i.e.,

"4100" is a code meaning the tire was manufactured in the 41st week of Year 2000, which is the

second week of October 2000.  The Subject Vehicle was final assembled by Old GM on or about

November 1, 2000.


7.        After July 10, 2009, New GM inherited and acquired information and possessed

actual knowledge that tires beyond 6 years in age should be replaced, irrespective of tread wear,

as follows:

(a)        From 1925 to 2009, Vauxhall Motors (registered name General Motors

UK Limited) was a wholly-owned subsidiary of Old GM.  The Wheels and Tyres section of the

Owner Manual for the 1991 Vauxhall Astra model vehicle stated:  "Tyres age even if they are

used only very little or not at all.  A spare wheel which has not been used for six years should be

used only in emergencies; drive slowly when using such tyres."

(b)        The March 1993 Vauxhall Cavalier Owner Manual stated at page 81:

24494 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __10__

stated: "Tyres age even if they are used only very little or not at all. A spare wheel which has not been used for six years should be used only in emergencies; drive slowly when using such tyres."

(c)    The Wheels and Tyres section of the August 2009 Edition of the Owner's Manual for the 2010 Vauxhall Astra model vehicle stated at Page 184: "Tyres age even if they are not used. We recommend tyre replacement every 6 years."

(d)    The 1988 Porsche vehicle owner's manual stated: "Under no circumstances should tires over six years be used on your Porsche."

(e)    The 2006 Porsche model 997 owner's manual stated: "Under no circumstances should tires over six years be used on your Porsche."

(f)    In June 2001, the British Rubber Manufacturers Association (BRMA) issued a recommended practice which stated: "BRMA members strongly recommend that unused tyres should not be put into service if they are over six years old and that all tyres should be replaced ten years from the date of their manufacture."

(g)    The 2001 Volkswagen Passat vehicle owner's manual stated: "Tires age, even if they are not being used. Tire which are more than six years old should be used only in an emergency, and then with caution."

(h)    Volkswagen / Audi recommended a maximum service life of six years.

(i)    The 2004 Mercedes vehicle owner's manual stated: "Tires and spare tire should be replaced after six years, regardless of remaining tread."

24494 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___11___

(j)    The 2005 BMW MiniCooper model vehicle owner's manual stated: "The manufacturer of your vehicle recommends replacing all tires after six years at the latest, even if a tire service life of ten years is possible."

(k)    In September 2005, the Japan Automobile Tyre Manufacturers Association (JATMA) recommended that all tires (including spare tires) that were manufactured more than ten (10) years previous be replaced with new tires.

(l)    In October 2005, Bridgestone Firestone North American Tire, LLC ("BFNT") issued a Technical Bulletin that stated (in part): "Bridgestone Firestone North American Tire, LLC ('BFNT') has elected to follow the JATMA [Japan Automobile Tyre Manufacturers Association] recommendation [that all tires (including spare tires) that were manufactured more than ten (10) years previous be replaced with new tires]. .... [W]hile some tires may have been operated in a manner which would give them a service life beyond ten (10) years, BFNT believes that it is good practice and recommends that tires be removed from service ten (10) years after the date of manufacture."

(m)    On February 9, 2006, Michelin North America, Inc., issued a Michelin Technical Bulletin which addressed the "Service Life of Passenger Car and Light Truck Tires including Spare Tires," and stated (in part) that: "While most tires will need replacement before they achieve 10 years, it is recommended that any tires in service 10 years or more from the date of manufacture, including spare tires, be replaced with new tires as a simple precaution even if

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __12__

such tires appear serviceable and even if they have not reached the legal wear limit. For tires that were on an original equipment vehicle (i.e., acquired by the consumer on a new vehicle), follow the vehicle manufacturer's tire replacement recommendations, when specified (but not to exceed 10 years)."

(n)    On February 13, 2006, Continental Tire issued a Product Service Bulletin PSB 06-02 which stated (in part): "Continental recommends that all tires (including spare tires) that were manufactured more than 10 years previous be removed from service and be replaced with new tires, even when tires appear to be usable, from their normal appearance, and the tread depth may not have reached the minimum wear-out depth."

(o)    In 2006, the Ford Motor Company included the following statement in Ford vehicle owner's manuals: "Tires degrade over time, even if they are not being used. It is recommended that tires generally be replaced after six years of normal service. Heat caused by hot climes or frequent high loading conditions can accelerate the aging process."

(p)    The 2007 Ford Explorer Owner's Manual stated: "Tires degrade over time depending on many factors such as weather, storage conditions, and conditions of use (load, speed, inflation pressure, etc.) the tires experience thoughout their lives. In general, tires should be replaced after six years regardless of tread wear. However, heat caused by hot climates or frequent high loading conditions can accelerate the aging process and may require tires to be replaced more frequently. You should replace your spare tire when you replace the road tires or

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page   13

after six years due to aging even if it has not been used."

8.      Despite its actual knowledge, as described hereinabove, New GM conducted no scientific studies, no engineering evaluations, and no testing of its own on the topic of the public safety need to replace aging tires on its vehicles.

9.      After July 20, 2009, New GM inherited and acquired information and possessed actual knowledge that tires older than six years of age were in the General Motors vehicle population being operated on America's highways, that said tires were detreading on General Motors SUVs, and that people were dying and being severely injured in rollovers which occurred after the tire detreading.

10.     On July 3, 2010, a 7-year old Michelin tire that was in the right rear position of John Taylor's 2003 Chevrolet Trailblazer, detreaded, and the Trailblazer rolled over on Interstate Highway 10, outside of Phoenix. New GM learned of this accident shortly after it occurred, because John Taylor was a former engineer employee of General Motors (unknown retirement date). There were two deaths and multiple personal injuries in the Taylor accident.

11.     In March 2011, New GM decided to make a consumer recommendation to replace

:24494 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __14__

tires at six years of age, irrespective of tread wear. New GM decided to place this recommendation in writing in the 2013 vehicle owner manuals, for all types of General Motors vehicles. The language for the 2013 owner manuals was already drafted in March 2011, and stated:

> **"When it is Time for New Tires**
>
> The rubber in tires ages over time. This also applies to the spare tire, if the vehicle has one, even if it is never used. Multiple factors including temperatures, loading conditions, and inflation pressure maintenance affect how fast aging takes place. GM recommends that tires, including the spare if equipped, be replaced after six years, regardless of tread wear. The tire manufacturer date is the last four digits of the DOT Tire Identification Number (TIN) which is molded into one side of the tire sidewall. The first two digits represent the week (01–52) and the last two digits, the year. For example, the third week of the year 2010 would have a four-digit DOT date of 0310."

12.     Despite knowing that an automatic 6-year tire replacement rule was the safe practice that should be utilized across its vehicle population, New GM did not advise the General Motors dealerships, or existing GM vehicle owners, or prospective purchasers, that New GM had decided to make this recommendation to replace tires at 6 years of age, regardless of tread wear.

224494 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___15___

13.    On July 3, 2011, Plaintiff drove her 2001 Chevrolet Blazer vehicle with Vehicle

Identification Number (VIN) 1GNCS18W91K160669 [the "Crash Vehicle"], which included the

Accident Tire in the right rear axle position. The Accident Tire sustained a full tread

delamination, which caused the Crash Vehicle to go out of control, and the Plaintiff was severely

injured when the highly unstable Crash Vehicle rolled over.

14.    On April 6, 2012, Sophia Smith of Florida was driving the family's 2000

Chevrolet Blazer, with 4 passengers, en route to Arizona. The right rear tire was a Michelin

Uniroyal Laredo tire with DOT No. APM12C3U1800, which means the tire was manufactured in

the 18th week of Year 2000. The right rear tire was over 12 years old. It detreaded on Highway

10, 40 miles southwest of Pecos, Texas. The Blazer rolled over, and Sophia Smith was killed,

and the 4 passengers, including 3 children (two were Sophia Smith's children), were injured.

New GM was sued in a civil action venued in the State of Alabama on April 2, 2013. New GM

filed its Answer to the lawsuit on May 14, 2013.

15.    In late 2012, New GM issued its owner manuals for its Model Year 2013 vehicles.

Before printing and distribution of the 2013 Owner Manuals, New GM still did not advise the

General Motors dealerships, or existing GM vehicle owners, or prospective purchasers, that New

GM made this recommendation to replace tires at 6 years of age, regardless of tread wear. And

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___16___

beyond issuance of the owner manuals, New GM did not otherwise disclose, publish, communicate, or advise the General Motors dealerships, or existing GM vehicle owners, or prospective purchasers, that New GM made this recommendation to replace tires at 6 years of age, regardless of tread wear. To this day, New GM has done nothing other than include the 6-year tire replacement rule in its owner manuals for new customers to read.

16.    New GM and its officers, directors and/or managing agents, knew at all relevant times after July 10, 2009, but before July 3, 2011, that the Subject Vehicle and Accident Tire were defective and unsafe for the drivers and passengers.

17.    New GM and its officers, directors and/or managing agents, acted in the manner described above and/or failed to take the actions mentioned above, for reasons of economic gain, and to save money and increase their business profits. Had New GM taken those actions, said acts would have cost New GM money. Hence, New GM consciously, willfully and wantonly decided that its profits were more valuable and important than human suffering and life.

18.    In doing the acts herein alleged, New GM and its officers, directors, and/or managing agents, directly, and in authorizing and ratifying the conduct of each of them, acted with malice by engaging in the misconduct despicably and with a willful and conscious disregard

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___17__

of the rights and/or safety of others, and/or acted with oppression by engaging in the misconduct despicably and by subjecting others to cruel and unjust hardship in conscious disregard of the rights of other persons, and/or acted with fraud by engaging in the misconduct through intentional misrepresentation, deceit, and/or concealment of a material fact known to New GM with the intention on the part of New GM of thereby depriving a person or property or legal rights or otherwise causing injury, and are liable under Civil Code §3294 for exemplary and punitive damages. Plaintiff is therefore entitled to an award of exemplary and punitive damages against New GM in an amount to be shown according to proof at trial.

!24494 / lgv

PLD-PI-001(5)

| SHORT TITLE: Brianna Minard vs. Michelin North America, Inc., et al. | CASE NUMBER: STK-CV-UPL-2013-0006252 |
|---|---|

Second _____ **CAUSE OF ACTION—Products Liability**                    Page 18 _____
    (number)

ATTACHMENT TO [ X ] Complaint [ ] Cross-Complaint
*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name)*: BRIANNA MINARD

Prod. L-1. On or about *(date)*: July 3, 2011          plaintiff was injured by the following product:
    2001 Chevrolet Blazer and a Uniroyal Laredo (Michelin) Tire with
    United States Department of Transportation (DOT) No. APM1273U4100.

Prod. L-2. Each of the defendants knew the product would be purchased and used without inspection for defects.
    The product was defective when it left the control of each defendant. The product at the time of injury
    was being
    [ X ]  used in the manner intended by the defendants.
    [ X ]  used in a manner that was reasonably foreseeable by defendants as involving a substantial danger not
         readily apparent. Adequate warnings of the danger were not given.

Prod. L-3. Plaintiff was a
    [ X ]  purchaser of the product.                    [ X ] user of the product.
    [ ]  bystander to the use of the product.              [ ] other *(specify)*:

**PLAINTIFF'S INJURY WAS THE LEGAL (PROXIMATE) RESULT OF THE FOLLOWING:**

Prod. L-4. [ X ] **Count One--Strict liability** of the following defendants who
    a. [ X ] manufactured or assembled the product *(names)*: Wayne Lewis Koepplin dba Lodi
        Small Car Sales

            [ X ] Does 3 _____ to 100 _____
    b. [ ] designed and manufactured component parts supplied to the manufacturer *(names)*:

            [ ] Does _____ to _____
    c. [ X ] sold the product to the public *(names)*: Wayne Lewis Koepplin dba Lodi Small Car
        Sales

            [ X ] Does 3 _____ to 100 _____

Prod. L-5. [ X ] **Count Two--Negligence** of the following defendants who owed a duty to plaintiff *(names)*:
    Wayne Lewis Koepplin dba Lodi Small Car Sales

            [ X ] Does 3 _____ to 100 _____

Prod. L-6. [ X ] **Count Three--Breach of warranty** by the following defendants *(names)*: Wayne Lewis Koepplin
    dba Lodi Small Car Sales
            [ X ] Does 3 _____ to 100 _____
    a. [ X ] who breached an implied warranty
    b. [ X ] who breached an express warranty which was
            [ X ] written [ X ] oral

Prod. L-7. [ ] The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are
            [ ] listed in Attachment-Prod. L-7 [ ] as follows:

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(5) [Rev. January 1, 2007]

**CAUSE OF ACTION—Products Liability**

Legal
Solutions
Plus

Page 1 of 1
Code of Civil Procedure, § 425.12

parent navigation top

PLD-PI-001(6)

| SHORT TITLE: Brianna Minard vs. Michelin North America, Inc., et al. | CASE NUMBER |
|---|---|
| | STK-CV-UPL-2013-0006252 |

## Exemplary Damages Attachment

Page 19

ATTACHMENT TO  [X] Complaint  [ ] Cross-Complaint

EX-1. As additional damages against defendant *(name)*: Wayne Lewis Koepplin dba Lodi Small Car Sales.

Plaintiff alleges defendant was guilty of
[X] malice
[ ] fraud
[ ] oppression
as defined in Civil Code section 3294, and plaintiff should recover, in addition to actual damages, damages to make an example of and to punish defendant.

EX-2. The facts supporting plaintiff's claim are as follows:

See Attachment

EX-3. The amount of exemplary damages sought is
a. [X] not shown, pursuant to Code of Civil Procedure section 425.10.
b. [ ] $

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(6) [Rev. January 1, 2007]

**EXEMPLARY DAMAGES ATTACHMENT**

Legal
Solutions
Plus

Page 1 of 1
Code of Civil Procedure, § 425.12

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __20_

# EXEMPLARY DAMAGES ATTACHMENT
# ATTACHMENT EX-2 TO COMPLAINT
# VERSUS DEFENDANT WAYNE KOEPPLIN d/b/a Lodi Small Car Sales

Plaintiff alleges on information and belief that:

1.    Defendant WAYNE KOEPPLIN d/b/a LODI SMALL CAR SALES ("LODI SMALL CAR SALES"), as of August 2010, had been and was an automotive dealership.  Wayne Koepplin considered himself an experienced mechanic, including for work involving tires, and he had worked as a service manager for a Volkswagen dealership from 1965 to 1985, prior to starting his own business as LODI SMALL CAR SALES in June 1985.

2.    LODI SMALL CAR SALES knew or should have known that the standard of care in the industry as of August 2010, included the owners and operators of automotive dealerships, and automotive mechanics and service people, knowing how to obtain the manufacture date of a tire by reading the last four digits of the Department of Transportation (DOT) number on the sidewalls of the tire.

3.    LODI SMALL CAR SALES knew or should have known that the industry standard of care as of August 2010, included the owners and operators of automotive dealerships,

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __21__

and automotive mechanics and service people, knowing that tires that are six (6) years old should be replaced, regardless of the tread wear or other conditions of the tire, for the physical safety of drivers and passengers operating vehicles with such tires.

4.    LODI SMALL CAR SALES knew or should have known that the industry standard of care as of August 2010, included the owners and operators of automotive dealerships, and automotive mechanics and service people, telling their customers that tires that are six (6) years old should be replaced, regardless of the tread wear or other conditions of the tire, for the physical safety of drivers and passengers operating vehicles with such tires.

5.    LODI SMALL CAR SALES knew or should have known that the industry standard of care as of August 2010, included the owners and operators of automotive dealerships, and automotive mechanics and service people, always checking tires for safety, including the age of the tire.

6.    As of August 2010, LODI SMALL CAR SALES knew or should have known that tires beyond 6 years in age should be replaced, irrespective of tread wear, as follows:

(a)    The 1988 Porsche vehicle owner's manual stated: "Under no circumstances should tires over six years be used on your Porsche."

27751 / gwd

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page   22

(b)    The 2006 Porsche model 997 owner's manual stated: "Under no circumstances should tires over six years be used on your Porsche."

(c)    In June 2001, the British Rubber Manufacturers Association (BRMA) issued a recommended practice which stated: "BRMA members strongly recommend that unused tyres should not be put into service if they are over six years old and that all tyres should be replaced ten years from the date of their manufacture."

(d)    The 2001 Volkswagen Passat vehicle owner's manual stated: "Tires age, even if they are not being used.  Tire which are more than six years old should be used only in an emergency, and then with caution."

(e)    Volkswagen / Audi recommended a maximum service life of six years.

(f)    The 2004 Mercedes vehicle owner's manual stated: "Tires and spare tire should be replaced after six years, regardless of remaining tread."

(g)    The 2005 BMW MiniCooper model vehicle owner's manual stated: "The manufacturer of your vehicle recommends replacing all tires after six years at the latest, even if a tire service life of ten years is possible."

(h)    In September 2005, the Japan Automobile Tyre Manufacturers Association (JATMA) recommended that all tires (including spare tires) that were manufactured more than ten (10) years previous be replaced with new tires.

(i)    In October 2005, Bridgestone Firestone North American Tire, LLC

27751 / gwd

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page  23

("BFNT") issued a Technical Bulletin that stated (in part): "Bridgestone Firestone North American Tire, LLC ('BFNT') has elected to follow the JATMA [Japan Automobile Tyre Manufacturers Association] recommendation [that all tires (including spare tires) that were manufactured more than ten (10) years previous be replaced with new tires]. .... [W]hile some tires may have been operated in a manner which would give them a service life beyond ten (10) years, BFNT believes that it is good practice and recommends that tires be removed from service ten (10) years after the date of manufacture."

       (j)     On February 9, 20016, Michelin North America, Inc., issued a Michelin Technical Bulletin which addressed the "Service Life of Passenger Car and Light Truck Tires including Spare Tires," and stated (in part) that: "While most tires will need replacement before they achieve 10 years, it is recommended that any tires in service 10 years or more from the date of manufacture, including spare tires, be replaced with new tires as a simple precaution even if such tires appear serviceable and even if they have not reached the legal wear limit. For tires that were on an original equipment vehicle (i.e., acquired by the consumer on a new vehicle), follow the vehicle manufacturer's tire replacement recommendations, when specified (but not to exceed 10 years)."

       (k)     On February 13, 2006, Continental Tire issued a Product Service Bulletin PSB 06-02 which stated (in part): "Continental recommends that all tires (including spare tires) that were manufactured more than 10 years previous be removed from service and be replaced

27751 / gwd

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___24___

with new tires, even when tires appear to be usable, from their normal appearance, and the tread depth may not have reached the minimum wear-out depth."

(l)      In 2006, the Ford Motor Company included the following statement in Ford vehicle owner's manuals: "Tires degrade over time, even if they are not being used.  It is recommended that tires generally be replaced after six years of normal service.  Heat caused by hot climes or frequent high loading conditions can accelerate the aging process."

(m)     The 2007 Ford Explorer Owner's Manual stated: "Tires degrade over time depending on many factors such as weather, storage conditions, and conditions of use (load, speed, inflation pressure, etc.) the tires experience thoughout their lives.  In general, tires should be replaced after six years regardless of tread wear.  However, heat caused by hot climates or frequent high loading conditions can accelerate the aging process and may require tires to be replaced more frequently.  You should replace your spare tire when you replace the road tires or after six years due to aging even if it has not been used."

7.      As of August 2010, LODI SMALL CAR SALES knew or should have known that the industry standard of care included owners and operators of automotive dealerships, and automotive mechanics and service people, knowing to replace all 4 tires at the same time, but if a customer only requested replacement of 2 tires, that the 2 new replacement tires should always be placed on the rear axle and not on the forward axle, of all vehicles.  LODI SMALL CAR SALES

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __25__

knew or should have known of the following:

(a)    In 1970, the Tire Industry Safety Council stated: "If selecting only a pair of replacement tires ... they should be put on the rear wheels for better traction, handling and extra protection against tire disablements ...." The August 14, 1973 issue of the <u>Lodi-News Sentinel</u> referenced this Tire Industry Safety Council document.

(b)    In October 2001, the United States Department of Transportation (DOT) Tire Safety Brochure No. DOT HS 809 361 stated: "DO mount your newest and best treads on the rear wheels for better traction and safest handling ...."

(c)    The Michelin Press Release of November 2001 stated:

LAURENS, S.C., Nov. 9 /PRNewswire/ -- Today at its proving grounds in Laurens, S.C., Michelin settled an age-old question about where to mount the tires when replacing only two at a time. The answer is: the new rubber goes on the rear axle, never on the front! To some people, that seems really weird, given phrases like "put your best food forward," but in the case of tires, vehicle safety dictates a more demure approach. Michelin says this general rule of thumb for replacing two tires at a time is the same for passenger cars, light trucks and SUVs. The rule includes all drive systems: front-wheel, rear-wheel, all-wheel and four-wheel drive alike.

When only two tires are going to be replaced, Michelin has always

27751 / gwd

| SHORT TITLE: | CASE NO.: |
|---|---|
| **Minard vs. Michelin North America, Inc.; et al.** | **STK-CV-UPL-2013-0006252** |

Page __26__

recommended that the new tires go on the rear. "The new tires will grip the road more effectively and evacuate standing water more efficiently than the worn tires," said Ron Margadonna, Technical Marketing Manager with Michelin. This becomes especially important when traveling and braking on wet surfaces. In such situations, if the front tires have more tread than the rear, the rear will lose their grip and begin hydroplaning first, creating a very difficult situation for even a season driver to control.

"This is far less likely to occur when the new tires are mounted on the rear," said Margadonna. "If there is any loss of control from hydroplaning of the front tires, the driver is more likely to feel it in the steering wheel early enough to make the necessary corrections in speed and/or steering to remain in control of the car."

(d)    The November 2004 printing of Michelin's Passenger and Light Truck Tire Owner's Manual and Limited Warranty, stated at Page 15: "As a general rule, whenever only two tires are replaced, the new ones should be put on the rear." The same document stated at Page 17: "Failure to observe recommended precautions contained in this owner's manual can lead to erratic vehicle behavior and/or tire damage possibly resulting in an accident."

(e)    The July 2007 printing of Michelin's Passenger and Light Truck Tire Owner's Manual and Limited Warranty, stated at Page 15: "Replacement of Two (2) Tires. It is

:27751 / gwd

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___27___

recommended that all four (4) tires are replaced at the same time. However, when only two tires are replaced, the new ones should be put on the rear." The same document stated at Page 20: "Failure to observe recommended precautions contained in this owner's manual can lead to erratic vehicle behavior and/or tire damage, possibly resulting in an accident."

8.      As of September 2010, LODI SMALL CAR SALES knew or should have known that a vehicle's likelihood of losing control, and/or rolling over, is greater when the detreaded tire is on the rear axle, than on the front axle.

9.      In August 2010, before Plaintiff Brianna Minard purchased her 2001 Chevrolet Blazer vehicle, which is a 2-wheel drive sport utility vehicle (SUV), and its component parts [the "Crash Vehicle"], including but not limited to the Michelin Uniroyal Laredo tire with Department of Transportation (DOT) No. APM1273U4100, which was original equipment for the Subject Vehicle [the "Accident Tire"], LODI SMALL CAR SALES determined that the Crash Vehicle needed 2 new tires. LODI SMALL CAR SALES took the Crash Vehicle to Douglas Tire Store, which was owned and operated by Defendants Robert T. Rusk and Janay Rusk.

10.     In August 2010, LODI SMALL CAR SALES inspected the Accident Tire, and observed that the last 4 digits on the DOT number on the sidewall of the Accident Tire, i.e.,

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page    28

"4100", which means the tire was manufactured in the 41st week of Year 2000, which is the second week of October 2000. The Subject Vehicle was final assembled by Old GM on or about November 1, 2000.

11.    On August 26, 2010, Douglas Tire Store rotated the two front tires, including the Accident Tire, to the rear axle, and the Accident Tire was placed in the right rear position. The Douglas Tire Store disposed of the two existing rear tires, and placed two new tires on the front axle. When LODI SMALL CAR SALES retrieved the Crash Vehicle from the Douglas Tire Store, LODI SMALL CAR SALES inspected and observed the 2 new tires on the front axle, and the Accident Tire in the right rear position.

12.    In September 2010, Plaintiff Brianna Minard purchased the Crash Vehicle from LODI SMALL CAR SALES.

13.    LODI SMALL CAR SALES did not inform, recommend, caution or warn Plaintiff that the Accident Tire was over 6 years old, and was rapidly approaching 10 years of age, and that it needed to be replaced.

227751 / gwd

| SHORT TITLE: | CASE NO.: |
|---|---|
| **Minard vs. Michelin North America, Inc.; et al.** | STK-CV-UPL-2013-0006252 |

Page __29__

14.     LODI SMALL CAR SALES did not inform, recommend, caution or warn Plaintiff that the 2 new tires needed to be rotated to the rear axle.

15.     On July 3, 2011, Plaintiff drove her Crash Vehicle, which included the Accident Tire in the right rear axle position.  The Accident Tire sustained a full tread delamination, which caused the Crash Vehicle to go out of control, and the Plaintiff was severely injured when the highly unstable Crash Vehicle rolled over.

16.     It is a despicable, conscious disregard for public safety for a vehicle dealership to operate its business without having knowledge of the existence of documents and information about how to read and interpret a DOT Number, that automotive manufacturers and tire manufacturers have made recommendations for automatically removing and replacing tires that have reached a certain age.  Individuals and families purchase their personal vehicles from LODI SMALL CAR SALES based on the reasonable assumption, promise and warranty that the vehicles have been inspected and repaired by properly trained technicians who have the equipment, tools, safety instructions and know-how to do a job properly and safely.  But LODI SMALL CAR SALES asserts in this lawsuit that it never knew how to determine the date of manufacture of tires from the DOT number.  LODI SMALL CAR SALES further asserts that it never knew the recommendations of tire manufacturers, including Michelin, for the Accident

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __30__

Tire. LODI SMALL CAR SALES further asserts it never knew where to place 2 new tires on a

vehicle, and it never knew whether the age or position of a tire carries any safety risk for the

operation of a motor vehicle.

17.    LODI SMALL CAR SALES acted in the manner described above and/or failed to

take the actions mentioned above, for reasons of economic gain, and to save money and increase

their business profits. Had LODI SMALL CAR SALES taken those actions, said acts would

have cost LODI SMALL CAR SALES money. Hence, LODI SMALL CAR SALES consciously,

willfully and wantonly decided that its profits were more valuable and important than human

suffering and life.

18.    In doing the acts herein alleged, LODI SMALL CAR SALES acted with malice

by engaging in the misconduct despicably and with a willful and conscious disregard of the rights

and/or safety of others, and/or acted with oppression by engaging in the misconduct despicably

and by subjecting others to cruel and unjust hardship in conscious disregard of the rights of other

persons, and/or acted with fraud by engaging in the misconduct through intentional

misrepresentation, deceit, and/or concealment of a material fact known to LODI SMALL CAR

SALES with the intention on the part of LODI SMALL CAR SALES of thereby depriving a

person or property or legal rights or otherwise causing injury, and are liable under Civil Code

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __31__

§3294 for exemplary and punitive damages.  Plaintiff is therefore entitled to an award of

exemplary and punitive damages against LODI SMALL CAR SALES in an amount to be shown

according to proof at trial.

PLD-PI-001(5)

| | |
|---|---|
| SHORT TITLE: Brianna Minard vs. Michelin North America, Inc., et al. | CASE NUMBER STK-CV-UPL-2013-0006252 |

Third _____    CAUSE OF ACTION—Products Liability    Page 32 _____
     (number)

ATTACHMENT TO [X] Complaint [ ] Cross-Complaint
*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name):* BRIANNA MINARD

Prod. L-1. On or about *(date):* July 3, 2011    plaintiff was injured by the following product:
2001 Chevrolet Blazer and a Uniroyal Laredo (Michelin) Tire with
United States Department of Transportation (DOT) No. APM1273U4100.

Prod. L-2. Each of the defendants knew the product would be purchased and used without inspection for defects. The product was defective when it left the control of each defendant. The product at the time of injury was being
[X] used in the manner intended by the defendants.
[X] used in a manner that was reasonably foreseeable by defendants as involving a substantial danger not readily apparent. Adequate warnings of the danger were not given.

Prod. L-3. Plaintiff was a
[X] purchaser of the product.                    [X] user of the product.
[ ] bystander to the use of the product.          [ ] other *(specify):*

PLAINTIFF'S INJURY WAS THE LEGAL (PROXIMATE) RESULT OF THE FOLLOWING:

Prod. L-4. [X] **Count One--Strict liability** of the following defendants who
a. [X] manufactured or assembled the product *(names):* Robert A. Rusk dba Douglas Tire Store (Doe "1"); Janay K. Rusk dba Douglas Tire Store (Doe "2")

[X] Does 1 ____ to 100 ____
b. [ ] designed and manufactured component parts supplied to the manufacturer *(names):*

[ ] Does ____ to ____
c. [ ] sold the product to the public *(names):*

[ ] Does ____ to ____
Prod. L-5. [X] **Count Two--Negligence** of the following defendants who owed a duty to plaintiff *(names):*
Robert A. Rusk dba Douglas Tire Store (Doe "1"); Janay K. Rusk dba
Douglas Tire Store (Doe "2")
[X] Does 1 ____ to 100 ____
Prod. L-6. [ ] **Count Three--Breach of warranty** by the following defendants *(names):*

[ ] Does ____ to ____
a. [ ] who breached an implied warranty
b. [ ] who breached an express warranty which was
[ ] written [ ] oral
Prod. L-7. [ ] The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are
[ ] listed in Attachment-Prod. L-7 [ ] as follows:

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(5) [Rev. January 1, 2007]

**CAUSE OF ACTION—Products Liability**

Legal
Solutions
Plus

Code of Civil Procedure, § 425.12

PLD-PI-001(6)

| SHORT TITLE: Brianna Minard v. Michelin North America, Inc., et al. | CASE NUMBER |
|---|---|
| | STK-CV-UPL-2013-0006252 |

## Exemplary Damages Attachment

Page 33

ATTACHMENT TO  [X] Complaint   [ ] Cross-Complaint

EX-1.  As additional damages against defendant *(name)*: Robert A. Rusk dba Douglas Tire Store
(Doe "1"); Janay K. Rusk dba Douglas Tire Store (Doe "2")

Plaintiff alleges defendant was guilty of
[X]  malice
[ ]  fraud
[ ]  oppression
as defined in Civil Code section 3294, and plaintiff should recover, in addition to actual damages, damages
to make an example of and to punish defendant.

EX-2.  The facts supporting plaintiff's claim are as follows:
See Attachment

EX-3.  The amount of exemplary damages sought is
a. [X] not shown, pursuant to Code of Civil Procedure section 425.10.
b. [ ] $

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(6) [Rev. January 1, 2007]

**EXEMPLARY DAMAGES ATTACHMENT**

Legal
Solutions
Plus

Code of Civil Procedure, § 425 12

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __34__

# EXEMPLARY DAMAGES ATTACHMENT
## ATTACHMENT EX-2 TO COMPLAINT
## VERSUS
## DEFENDANTS ROBERT RUSK (Doe "1") & JANAY RUSK (Doe "2")
## d/b/a DOUGLAS TIRE STORE

Plaintiff alleges on information and belief that:

1.      Defendants ROBERT RUSK and JANAY RUSK d/b/a DOUGLAS TIRE STORE

("DOUGLAS TIRE STORE" hereinafter), as of August 2010, had been and was a tire dealer.

2.      DOUGLAS TIRE STORE possessed actual knowledge that the standard of care in

the industry as of August 2010, included professional tire dealers and automotive mechanics and

service people knowing how to obtain the manufacture date of a tire by reading the last four

digits of the Department of Transportation (DOT) number on the sidewalls of the tire.

3.      DOUGLAS TIRE STORE possessed actual knowledge that the industry standard

of care as of August 2010, included professional tire dealers and automotive mechanics and

service people knowing that tires that are ten (10) years old should be replaced, regardless of the

tread wear or other conditions of the tire, for the physical safety of drivers and passengers

operating vehicles with such tires.

127838 / gwd

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___35___

4.     DOUGLAS TIRE STORE possessed actual knowledge that the industry standard of care as of August 2010, included professional tire dealers and automotive mechanics and service people telling their customers that tires that are ten (10) years old should be replaced, regardless of the tread wear or other conditions of the tire, for the physical safety of drivers and passengers operating vehicles with such tires.

5.     DOUGLAS TIRE STORE possessed actual knowledge that the industry standard of care as of August 2010, included professional tire dealers and automotive mechanics and service people always checking tires for safety, including the age of the tire, regardless of the reason the customer brought the vehicle in to their facility.

6.     As of August 2010, DOUGLAS TIRE STORE knew that in October 2005, Bridgestone Firestone North American Tire, LLC ("BFNT") had issued a Technical Bulletin that stated (in part): "Bridgestone Firestone North American Tire, LLC ('BFNT') has elected to follow the JATMA [Japan Automobile Tyre Manufacturers Association] recommendation [that all tires (including spare tires) that were manufactured more than ten (10) years previous be replaced with new tires]. .... (W)hile some tires may have been operated in a manner which would give them a service life beyond ten (10) years, BFNT believes that it is good practice and recommends that tires be removed from service ten (10) years after the date of manufacture."

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __36__

7.　　As of August 2010, DOUGLAS TIRE STORE knew that on February 13, 2006, Continental Tire issued a Product Service Bulletin PSB 06-02 which stated (in part): "Continental recommends that all tires (including spare tires) that were manufactured more than 10 years previous be removed from service and be replaced with new tires, even when tires appear to be usable, from their normal appearance, and the tread depth may not have reached the minimum wear-out depth."

8.　　As of August 2010, DOUGLAS TIRE STORE knew that Michelin North America, Inc., had issued a Michelin Technical Bulletin on February 9, 2006, which addressed the "Service Life of Passenger Car and Light Truck Tires including Spare Tires," and stated (in part) that: "While most tires will need replacement before they achieve 10 years, it is recommended that any tires in service 10 years or more from the date of manufacture, including spare tires, be replaced with new tires as a simple precaution even if such tires appear serviceable and even if they have not reached the legal wear limit. For tires that were on an original equipment vehicle (i.e., acquired by the consumer on a new vehicle), follow the vehicle manufacturer's tire replacement recommendations, when specified (but not to exceed 10 years)."

9.　　As of August 2010, DOUGLAS TIRE STORE possessed actual knowledge that the industry standard of care included professional tire dealers and automotive mechanics and

227838 / gwd

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __37__

service people knowing to place 2 new replacement tires on the rear axle and not on the forward axle, of all vehicles.  DOUGLAS TIRE STORE knew of the following:

(a)    In 1970, the Tire Industry Safety Council stated:  "If selecting only a pair of replacement tires ... they should be put on the rear wheels for better traction, handling and extra protection against tire disablements ...."  The August 14, 1973 issue of the <u>Lodi-News Sentinel</u> referenced this Tire Industry Safety Council document.

(b)    In October 2001, the United States Department of Transportation (DOT) Tire Safety Brochure No. DOT HS 809 361 stated:  "DO mount your newest and best treads on the rear wheels for better traction and safest handling ...."

(c)    The Michelin Press Release of November 2001 stated:

LAURENS, S.C., Nov. 9 /PRNewswire/ — Today at its proving grounds in Laurens, S.C., Michelin settled an age-old question about where to mount the tires when replacing only two at a time.  The answer is:  the new rubber goes on the rear axle, never on the front!  To some people, that seems really weird, given phrases like "put your best food forward," but in the case of tires, vehicle safety dictates a more demure approach.  Michelin says this general rule of thumb for replacing two tires at a time is the same for passenger cars, light trucks and SUVs.  The rule includes all drive systems:  front-wheel, rear-wheel, all-wheel and four-wheel drive alike.

227838 / gwd

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __38__

       When only two tires are going to be replaced, Michelin has always recommended that the new tires go on the rear. "The new tires will grip the road more effectively and evacuate standing water more efficiently than the worn tires," said Ron Margadonna, Technical Marketing Manager with Michelin. This becomes especially important when traveling and braking on wet surfaces. In such situations, if the front tires have more tread than the rear, the rear will lose their grip and begin hydroplaning first, creating a very difficult situation for even a season driver to control.

       "This is far less likely to occur when the new tires are mounted on the rear," said Margadonna. "If there is any loss of control from hydroplaning of the front tires, the driver is more likely to feel it in the steering wheel early enough to make the necessary corrections in speed and/or steering to remain in control of the car."

       (d)    The November 2004 printing of Michelin's Passenger and Light Truck Tire Owner's Manual and Limited Warranty, stated at Page 15: "As a general rule, whenever only two tires are replaced, the new ones should be put on the rear." The same document stated at Page 17: "Failure to observe recommended precautions contained in this owner's manual can lead to erratic vehicle behavior and/or tire damage possibly resulting in an accident."

       (e)    The July 2007 printing of Michelin's Passenger and Light Truck Tire Owner's

| SHORT TITLE: | CASE NO.: |
|---|---|
| **Minard vs. Michelin North America, Inc.; et al.** | **STK-CV-UPL-2013-0006252** |

Page __39__

Manual and Limited Warranty, stated at Page 15: "Replacement of Two (2) Tires. It is recommended that all four (4) tires are replaced at the same time. However, when only two tires are replaced, the new ones should be put on the rear." The same document stated at Page 20: "Failure to observe recommended precautions contained in this owner's manual can lead to erratic vehicle behavior and/or tire damage, possibly resulting in an accident."

10.    As of August 2010, DOUGLAS TIRE STORE possessed actual knowledge that a vehicle's likelihood of losing control, and/or rolling over, is greater when the detreaded tire is on the rear axle, than on the front axle.

11.    In August 2010, before Plaintiff Brianna Minard purchased her 2001 Chevrolet Blazer vehicle, which is a 2-wheel drive sport utility vehicle (SUV), and its component parts [the "Crash Vehicle"], including but not limited to the Michelin Uniroyal Laredo tire with Department of Transportation (DOT) No. APM1273U4100, which was original equipment for the Subject Vehicle [the "Accident Tire"], the Crash Vehicle was taken to DOUGLAS TIRE STORE by the vehicle's eventual seller, the defendant Wayne Koepplin d/b/a Lodi Small Car Sales.

12.    In August 2010, the owners and/or employees of DOUGLAS TIRE STORE inspected the Accident Tire, and observed that the last 4 digits on the DOT number on the

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __40__

sidewall of the Accident Tire, i.e., "4100", which means the tire was manufactured in the 41st

week of Year 2000, which is the second week of October 2000.  The Subject Vehicle was final

assembled by Old GM on or about November 1, 2000.


13.    In August 2010, the owners and/or employees of DOUGLAS TIRE STORE

observed that the Accident Tire was on the front axle of the Crash Vehicle.  DOUGLAS TIRE

STORE rotated the two front tires, including the Accident Tire, to the rear axle, and the Accident

Tire was placed in the right rear position.  DOUGLAS TIRE STORE disposed of the two

existing rear tires, and placed two new tires on the front axle.


14.    DOUGLAS TIRE STORE did not inform or recommend to Wayne Koepplin d/b/a

Lodi Small Car Sales, that the Accident Tire was approaching 10 years of age and needed to be

replaced.  DOUGLAS TIRE STORE did not inform or recommend to Wayne Koepplin d/b/a

Lodi Small Car Sales, that Wayne Koepplin inform, recommend, caution or warn any future

purchaser of the Crash Vehicle that the Accident Tire was approaching 10 years of age and

needed to be replaced.


15.    DOUGLAS TIRE STORE did not inform or recommend to Wayne Koepplin d/b/a

Lodi Small Car Sales, that the 2 new tires needed to be rotated to the rear axle.  DOUGLAS

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page    41

TIRE STORE did not inform or recommend to Wayne Koepplin d/b/a Lodi Small Car Sales, that Wayne Koepplin inform, recommend, caution or warn any future purchaser of the Crash Vehicle that the 2 new tires needed to be rotated to the rear axle.

16.    In September 2010, Plaintiff Brianna Minard purchased the Crash Vehicle from defendant Wayne Koepplin d/b/a Lodi Small Car Sales.

17.    On July 3, 2011, Plaintiff drove her Crash Vehicle, which included the Accident Tire in the right rear axle position. The Accident Tire sustained a full tread delamination, which caused the Crash Vehicle to go out of control, and the Plaintiff was severely injured when the highly unstable Crash Vehicle rolled over.

18.    DOUGLAS TIRE STORE and its officers, directors and/or managing agents, acted in the manner described above and/or failed to take the actions mentioned above, for reasons of economic gain, and to save money and increase their business profits. Had DOUGLAS TIRE STORE taken those actions, said acts would have cost DOUGLAS TIRE STORE money. Hence, DOUGLAS TIRE STORE consciously, willfully and wantonly decided that its profits were more valuable and important than human suffering and life.

227838 / gwd

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __42__

19.    In doing the acts herein alleged, DOUGLAS TIRE STORE acted with malice by engaging in the misconduct despicably and with a willful and conscious disregard of the rights and/or safety of others, and/or acted with oppression by engaging in the misconduct despicably and by subjecting others to cruel and unjust hardship in conscious disregard of the rights of other persons, and/or acted with fraud by engaging in the misconduct through intentional misrepresentation, deceit, and/or concealment of a material fact known to DOUGLAS TIRE STORE with the intention on the part of DOUGLAS TIRE STORE of thereby depriving a person or property or legal rights or otherwise causing injury, and are liable under Civil Code §3294 for exemplary and punitive damages.  Plaintiff is therefore entitled to an award of exemplary and punitive damages against DOUGLAS TIRE STORE in an amount to be shown according to proof at trial.

227838 / gwd

PLD-C-001(3)

| SHORT TITLE: Brianna Minard vs. Michelin North America, Inc., et al. | CASE NUMBER:<br>STK-CV-UPL-2013-0006252 |
|---|---|

<u>Fourth</u>_____ CAUSE OF ACTION—Fraud
_(number)_

ATTACHMENT TO [ X ] Complaint [ ] Cross-Complaint

_(Use a separate cause of action form for each cause of action.)_

FR-1.  Plaintiff _(name):_  BRIANNA MINARD

alleges that defendant _(name):_  Chase Chevrolet Co., Inc.

on or about _(date):_ 11/1/10; 11/4/10; 12/27/10    defrauded plaintiff as follows:

FR-2. [ X ]  **Intentional or Negligent Misrepresentation**
a. Defendant made representations of material fact [ ] as stated in Attachment FR-2.a [ X ] as follows:
That Chase Chevrolet possessed complete knowledge of the safety recommendations of tire manufacturers.
That Chase Chevrolet possessed complete knowledge of how to conduct a full safety inspection of a tire, in
accordance with the recommendations of tire manufacturers. That Chase Chevrolet would conduct a full
safety inspection of Plaintiff's 2001 Chevrolet Blazer, including its tires. And that based on such a safety
inspection, Chase Chevrolet would inform Plaintiff of the need to replace tires, or rotate tires on her vehicle.

b. These representations were in fact false. The truth was [ ] as stated in Attachment FR-2.b [ X ] as follows:
That Chase Chevrolet had no knowledge of the safety recommendations of tire manufacturers. That Chase Chevrolet
possessed no knowledge of how to conduct a full safety inspection of a tire, including how to read and interpret the
Department of Transportation (DOT) number on a tire sidewall to determine the date of manufacture of the tire. That
Chase Chevrolet did not intend to conduct a full safety inspection of Plaintiff's 2001 Chevrolet Blazer. Instead, Chase
Chevrolet only intended to conduct "a courtesy visual inspection of the tread depth of the tires and checked the tire
pressure as part of a multi-point vehicle inspection." [Source: Chase Response (02/25/2016) to Special Interrogatory No.
2, p. 3:20-21.] Plaintiff first learned of the falsity of the representations during the discovery phase of this lawsuit.
c. When defendant made the representations,
[ X ] defendant knew they were false, or
[ X ] defendant had no reasonable ground for believing the representations were true.

d. Defendant made the representations with the intent to defraud and induce plaintiff to act as described
in item FR-5. At the time plaintiff acted, plaintiff did not know the representations were false and believed
they were true. Plaintiff acted in justifiable reliance upon the truth of the representations.

FR-3. [ X ]  **Concealment**
a. Defendant concealed or suppressed material facts [ X ] as stated in Attachment FR-3.a [ ] as follows:
See Attachment

b. Defendant concealed or suppressed material facts
[ X ] defendant was bound to disclose.
[ X ] by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed
or suppressed facts.

c. Defendant concealed or suppressed these facts with the intent to defraud and induce plaintiff to act
as described in item FR-5. At the time plaintiff acted, plaintiff was unaware of the concealed or suppressed
facts and would not have taken the action if plaintiff had known the facts.

Page 43_____

| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-C-001(3) [Rev. January 1, 2007] | **CAUSE OF ACTION—Fraud** | Legal<br>Solutions<br>Plus | Code of Civil Procedure, § 425.12 |
|---|---|---|---|

| PLD-C-001(3) |
|---|

| SHORT TITLE: Brianna Minard vs. Michelin North America, Inc., et al. | CASE NUMBER:<br>STK-CV-UPI.-2013-0006252 |
|---|---|

<u>Fourth</u>
(number)

**CAUSE OF ACTION—Fraud**

FR-4. [X] **Promise Without Intent to Perform**

    a. Defendant made a promise about a material matter without any intention of performing it   [  ] as stated
        in Attachment FR-4.a [X] as follows: That Chase Chevrolet would conduct a full safety inspection of
Plaintiff's 2001 Chevrolet Blazer, including its tires. And that based on such a safety inspection, Chase Chevrolet
would inform Plaintiff of the need to replace tires, or rotate tires on her vehicle.

    b. Defendant's promise without any intention of performance was made with the intent to defraud and induce
       plaintiff to rely upon it and to act as described in item FR-5. At the time plaintiff acted, plaintiff was unaware of
       defendant's intention not to perform the promise. Plaintiff acted in justifiable reliance upon the promise.

FR-5. In justifiable reliance upon defendant's conduct, plaintiff was induced to act   [  ] as stated in Attachment FR-5
     [X] as follows: Plaintiff took her 2001 Chevrolet Blazer to Chase Chevrolet for inspection and service, on November 1,
2010, November 4, 2010, and December 27, 2010. At all three inspections, Chase Chevrolet observed 2 new tires on the front
axle, and a 10-year old Michelin tire in the right rear position on the Blazer. As of 2010, it was recognized in the automotive
industry that 6-year old tires should be automatically replaced regardless of tread wear. Chase Chevrolet should have known that
a 10-year old tire carries a significant risk of detreading, and causing a vehicle to rollover at highway speeds, which itself carries
the risk of serious personal injury and death. Also, as of 2010, it was recognized in the automotive and tire dealer industries, and
that if 2 tires are replaced, the new tires are to be placed on the rear axle. Also, as of 2010, it was recognized in the automotive
and tire dealer industries, that the failure of a tire on the rear axle carried a higher risk of causing a vehicle to roll over. Chase
Chevrolet should have known that the 2 new tires on the front axle of the Plaintiff's Blazer should have been rotated to the rear
axle. After those three false ("courtesy") inspections by Chase Chevrolet, on July 3, 2011, Plaintiff drove her 2001 Chevrolet
Blazer. The over 10-year old right rear Michelin tire sustained a full tread delamination, which caused the vehicle to go out of
control, and the Plaintiff was severely physically and emotionally injured when the vehicle rolled over.

FR-6. Because of plaintiff's reliance upon defendant's conduct, plaintiff has been damaged   [  ] as stated in
    Attachment FR-6 [X] as follows:   Plaintiff paid Chase Chevrolet for its services, and Plaintiff sustained the
personal injuries alleged on Page 3 of this Complaint.

FR-7. Other:

Page 44

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __45__

# FOURTH CAUSE OF ACTION – FRAUD
# ATTACHMENT FR-3a. TO COMPLAINT
# VERSUS DEFENDANT CHASE CHEVROLET CO., INC.

That Chase Chevrolet had no knowledge of the safety recommendations of tire manufacturers. That Chase Chevrolet possessed no knowledge of how to conduct a full safety inspection of a tire, including how to read and interpret the Department of Transportation (DOT) number on a tire sidewall to determine the date of manufacture of the tire. That Chase Chevrolet did not intend to conduct a full safety inspection of Plaintiff's 2001 Chevrolet Blazer. Instead, Chase Chevrolet only intended to conduct "a courtesy visual inspection of the tread depth of the tires and checked the tire pressure as part of a multi-point vehicle inspection." [Source: Chase Response (02/25/2016) to Special Interrogatory No. 2, p. 3:20-21.] Plaintiff first learned of Defendant's concealment of these material facts during the discovery phase of this lawsuit.

227881 / lgv

PLD-PI-001(2)

| SHORT TITLE: Brianna Minard vs. Michelin North America, Inc., et al. | CASE NUMBER:<br>STK-CV-UPL-2013-0006252 |
|---|---|

<u>Fifth</u>            **CAUSE OF ACTION—General Negligence**         Page <u>46</u>
   (number)

ATTACHMENT TO [X] Complaint [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1.  Plaintiff *(name)*:   BRIANNA MINARD

alleges that defendant *(name)*:   CHASE CHEVROLET CO., INC.

[X] Does <u>3</u>    to <u>100</u>

was the legal (proximate) cause of damages to plaintiff.  By the following acts or omissions to act, defendant negligently caused the damage to plaintiff
on *(date)*:  July 3, 2011
at *(place)*:  On Highway 99 near Manteca, California

*(description of reasons for liability):*

See Attachment

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Legal
Solutions
Plus

Code of Civil Procedure 425.12

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __47__

## FIFTH CAUSE OF ACTION – GENERAL NEGLIGENCE ATTACHMENT GN-1 TO COMPLAINT VERSUS DEFENDANT CHASE CHEVROLET CO., INC.

Plaintiff alleges on information and belief that:

1.      On November 1, 2010, November 4, 2010, and December 27, 2010, Plaintiff took her 2001 Chevrolet Blazer vehicle defendant CHASE CHEVROLET CO. INC., which conducted Multi-Point Vehicle Inspections, including the tires.  CHASE CHEVROLET employees observed 2 new tires on the front axle, and observed a 10-year old (Michelin) tire in the right rear position.

2.      The standard of care in the industry as of September 2010, included professional tire dealers and automotive mechanics and service people knowing how to obtain the manufacture date of a tire by reading the last four digits of the Department of Transportation (DOT) number on the sidewalls of the tire.

3.      The industry standard of care as of September 2010, included professional tire dealers and automotive mechanics and service people knowing that tires that are ten (10) years old should be replaced, regardless of the tread wear or other conditions of the tire, for the

227879 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __48__

physical safety of drivers and passengers operating vehicles with such tires.

4.      The industry standard of care as of September 2010, included professional tire dealers and automotive mechanics and service people telling their customers that tires that are ten (10) years old should be replaced, regardless of the tread wear or other conditions of the tire, for the physical safety of drivers and passengers operating vehicles with such tires.

5.      The industry standard of care as of September 2010, included professional tire dealers and automotive mechanics and service people always checking tires for safety, including the age of the tire, regardless of the reason the customer brought the vehicle in to their facility.

6.      As of September 2010, CHASE CHEVROLET knew or should have known that in October 2005, Bridgestone Firestone North American Tire, LLC ("BFNT") had issued a Technical Bulletin that stated (in part): "Bridgestone Firestone North American Tire, LLC ('BFNT') has elected to follow the JATMA [Japan Automobile Tyre Manufacturers Association] recommendation [that all tires (including spare tires) that were manufactured more than ten (10) years previous be replaced with new tires]. .... (W)hile some tires may have been operated in a manner which would give them a service life beyond ten (10) years, BFNT believes that it is

227879 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __49__

good practice and recommends that tires be removed from service ten (10) years after the date of manufacture."

7.    As of September 2010, CHASE CHEVROLET knew that on February 13, 2006, Continental Tire issued a Product Service Bulletin PSB 06-02 which stated (in part): "Continental recommends that all tires (including spare tires) that were manufactured more than 10 years previous be removed from service and be replaced with new tires, even when tires appear to be usable, from their normal appearance, and the tread depth may not have reached the minimum wear-out depth."

8.    As of September 2010, CHASE CHEVROLET knew that Michelin North America, Inc., had issued a Michelin Technical Bulletin on February 9, 2006, which addressed the "Service Life of Passenger Car and Light Truck Tires including Spare Tires," and stated (in part) that: "While most tires will need replacement before they achieve 10 years, it is recommended that any tires in service 10 years or more from the date of manufacture, including spare tires, be replaced with new tires as a simple precaution even if such tires appear serviceable and even if they have not reached the legal wear limit. For tires that were on an original equipment vehicle (i.e., acquired by the consumer on a new vehicle), follow the vehicle

227879 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| **Minard vs. Michelin North America, Inc.; et al.** | **STK-CV-UPL-2013-0006252** |

Page __50__

manufacturer's tire replacement recommendations, when specified (but not to exceed 10 years)."


9.     As of September 2010, CHASE CHEVROLET possessed actual knowledge that

the industry standard of care included professional tire dealers and automotive mechanics and

service people knowing to place 2 new replacement tires on the rear axle and not on the forward

axle, of all vehicles.  CHASE CHEVROLET knew of the following:

   (a)     In 1970, the Tire Industry Safety Council stated: "If selecting only a pair of

   replacement tires ... they should be put on the rear wheels for better traction,

   handling and extra protection against tire disablements ...."  The August 14, 1973

   issue of the Lodi-News Sentinel referenced this Tire Industry Safety Council

   document.

   (b)     In October 2001, the United States Department of Transportation (DOT) Tire

   Safety Brochure No. DOT HS 809 361 stated:  "DO mount your newest and best

   treads on the rear wheels for better traction and safest handling ...."

   (c)     The Michelin Press Release of November 2001 stated:

            LAURENS, S.C., Nov. 9 /PRNewswire/ – Today at its proving grounds in

   Laurens, S.C., Michelin settled an age-old question about where to mount the tires when

   replacing only two at a time.  The answer is:  the new rubber goes on the rear axle, never on the

227879 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __51__

front!  To some people, that seems really weird, given phrases like "put your best food forward," but in the case of tires, vehicle safety dictates a more demure approach.  Michelin says this general rule of thumb for replacing two tires at a time is the same for passenger cars, light trucks and SUVs.  The rule includes all drive systems:  front-wheel, rear-wheel, all-wheel and four-wheel drive alike.

When only two tires are going to be replaced, Michelin has always recommended that the new tires go on the rear.  "The new tires will grip the road more effectively and evacuate standing water more efficiently than the worn tires," said Ron Margadonna, Technical Marketing Manager with Michelin.  This becomes especially important when traveling and braking on wet surfaces.  In such situations, if the front tires have more tread than the rear, the rear will lose their grip and begin hydroplaning first, creating a very difficult situation for even a season driver to control.

"This is far less likely to occur when the new tires are mounted on the rear," said Margadonna.  "If there is any loss of control from hydroplaning of the front tires, the driver is more likely to feel it in the steering wheel early enough to make the necessary corrections in speed and/or steering to remain in control of the car."

(d)  The November 2004 printing of Michelin's Passenger and Light Truck Tire Owner's Manual and Limited Warranty, stated at Page 15: "As a general rule,

227879 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __52__

whenever only two tires are replaced, the new ones should be put on the rear."

The same document stated at Page 17: "Failure to observe recommended

precautions contained in this owner's manual can lead to erratic vehicle behavior

and/or tire damage possibly resulting in an accident."

(e)     The July 2007 printing of Michelin's Passenger and Light Truck Tire Owner's

Manual and Limited Warranty, stated at Page 15: "Replacement of Two (2) Tires.

It is recommended that all four (4) tires are replaced at the same time. However,

when only two tires are replaced, the new ones should be put on the rear." The

same document stated at Page 20: "Failure to observe recommended precautions

contained in this owner's manual can lead to erratic vehicle behavior and/or tire

damage, possibly resulting in an accident."

10.     As of September 2010, CHASE CHEVROLET knew or should have known that a

vehicle's likelihood of losing control, and/or rolling over, is greater when the detreaded tire is on

the rear axle, than on the front axle.

11.     CHASE CHEVROLET did not replace the right rear tire on Plaintiff's vehicle.

227879 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___53___

12.    CHASE CHEVROLET did not rotate the 2 new tires from the front to the rear

axle.


13.    No CHASE CHEVROLET employee informed or recommended to the Plaintiff

that the right rear tire needed to be replaced.


14.    No CHASE CHEVROLET employee informed or recommended to the Plaintiff

that the 2 new tires needed to be rotated to the rear axle.


15.    CHASE CHEVROLET never trained its tire-related employees that they should

know what the tire manufacturers recommend about tire replacement, including how to date a tire

and to replace an aged tire beyond its expiration date, and including which axle to place 2 new

tires, for the safety of customers and their families and friends.


16.    On July 3, 2011, Plaintiff drove her 2001 Chevrolet Blazer.  The right rear

Michelin tire sustained a full tread delamination, which caused the vehicle to go out of control,

and the Plaintiff was severely physically and emotionally injured when the vehicle rolled over.


227879 / lgv

PLD-PI-001(6)

| SHORT TITLE: Brianna Minard vs. Michelin North America, Inc., et al. | CASE NUMBER |
|---|---|
| | STK-CV-UPL-2013-0006252 |

## Exemplary Damages Attachment

Page 54

ATTACHMENT TO  [ X ] Complaint    [ ] Cross-Complaint

EX-1.  As additional damages against defendant *(name)*: Chase Chevrolet Co., Inc.

Plaintiff alleges defendant was guilty of
[ X ] malice
[ ] fraud
[ ] oppression
as defined in Civil Code section 3294, and plaintiff should recover, in addition to actual damages, damages to make an example of and to punish defendant.

EX-2.  The facts supporting plaintiff's claim are as follows:

See Attachment

EX-3.  The amount of exemplary damages sought is
a. [ X ] not shown, pursuant to Code of Civil Procedure section 425.10.
b. [ ] $

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(6) [Rev. January 1, 2007]

**EXEMPLARY DAMAGES ATTACHMENT**

Legal
Solutions Plus

Code of Civil Procedure, § 425.12

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __55__

# EXEMPLARY DAMAGES ATTACHMENT
## ATTACHMENT EX-2 TO COMPLAINT
## VERSUS DEFENDANT CHASE CHEVROLET CO., INC.

Plaintiff alleges on information and belief that:

1.      Defendant CHASE CHEVROLET CO., INC. ("CHASE CHEVROLET"), as of

September 2010, had been and was a tire dealer, and a General Motors dealership.

2.      CHASE CHEVROLET possessed actual knowledge that the standard of care in

the industry as of September 2010, included professional tire dealers and automotive mechanics

and service people knowing how to obtain the manufacture date of a tire by reading the last four

digits of the Department of Transportation (DOT) number on the sidewalls of the tire.

3.      CHASE CHEVROLET possessed actual knowledge that the industry standard of

care as of September 2010, included professional tire dealers and automotive mechanics and

service people knowing that tires that are ten (10) years old should be replaced, regardless of the

tread wear or other conditions of the tire, for the physical safety of drivers and passengers

operating vehicles with such tires.

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __56__

4.    CHASE CHEVROLET possessed actual knowledge that the industry standard of care as of September 2010, included professional tire dealers and automotive mechanics and service people telling their customers that tires that are ten (10) years old should be replaced, regardless of the tread wear or other conditions of the tire, for the physical safety of drivers and passengers operating vehicles with such tires.

5.    CHASE CHEVROLET possessed actual knowledge that the industry standard of care as of September 2010, included professional tire dealers and automotive mechanics and service people always checking tires for safety, including the age of the tire, regardless of the reason the customer brought the vehicle in to their facility.

6.    As of September 2010, CHASE CHEVROLET knew that in October 2005, Bridgestone Firestone North American Tire, LLC ("BFNT") had issued a Technical Bulletin that stated (in part): "Bridgestone Firestone North American Tire, LLC ('BFNT') has elected to follow the JATMA [Japan Automobile Tyre Manufacturers Association] recommendation [that all tires (including spare tires) that were manufactured more than ten (10) years previous be replaced with new tires]. .... (W)hile some tires may have been operated in a manner which would give them a service life beyond ten (10) years, BFNT believes that it is good practice and recommends that tires be removed from service ten (10) years after the date of manufacture."

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __57__

7.      As of September 2010, CHASE CHEVROLET knew that on February 13, 2006,

Continental Tire issued a Product Service Bulletin PSB 06-02 which stated (in part):

"Continental recommends that all tires (including spare tires) that were manufactured more than

10 years previous be removed from service and be replaced with new tires, even when tires

appear to be usable, from their normal appearance, and the tread depth may not have reached the

minimum wear-out depth."


8.      As of September 2010, CHASE CHEVROLET knew that Michelin North

America, Inc., had issued a Michelin Technical Bulletin on February 9, 2006, which addressed

the "Service Life of Passenger Car and Light Truck Tires including Spare Tires," and stated (in

part) that: "While most tires will need replacement before they achieve 10 years, it is

recommended that any tires in service 10 years or more from the date of manufacture, including

spare tires, be replaced with new tires as a simple precaution even if such tires appear serviceable

and even if they have not reached the legal wear limit. For tires that were on an original

equipment vehicle (i.e., acquired by the consumer on a new vehicle), follow the vehicle

manufacturer's tire replacement recommendations, when specified (but not to exceed 10 years)."


9.      As of September 2010, CHASE CHEVROLET possessed actual knowledge that

the industry standard of care included professional tire dealers and automotive mechanics and

service people knowing to place 2 new replacement tires on the rear axle and not on the forward

223485 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___58___

axle, of all vehicles. CHASE CHEVROLET knew of the following:

(a)    In 1970, the Tire Industry Safety Council stated: "If selecting only a pair of replacement tires ... they should be put on the rear wheels for better traction, handling and extra protection against tire disablements ...." The August 14, 1973 issue of the <u>Lodi-News Sentinel</u> referenced this Tire Industry Safety Council document.

(b)    In October 2001, the United States Department of Transportation (DOT) Tire Safety Brochure No. DOT HS 809 361 stated: "DO mount your newest and best treads on the rear wheels for better traction and safest handling ...."

(c)    The Michelin Press Release of November 2001 stated:

LAURENS, S.C., Nov. 9 /PRNewswire/ – Today at its proving grounds in Laurens, S.C., Michelin settled an age-old question about where to mount the tires when replacing only two at a time. The answer is: the new rubber goes on the rear axle, never on the front! To some people, that seems really weird, given phrases like "put your best food forward," but in the case of tires, vehicle safety dictates a more demure approach. Michelin says this general rule of thumb for replacing two tires at a time is the same for passenger cars, light trucks and SUVs. The rule includes all drive systems: front-wheel, rear-wheel, all-wheel and four-wheel drive alike.

When only two tires are going to be replaced, Michelin has always recommended that the new tires go on the rear. "The new tires will grip the road

| SHORT TITLE: | CASE NO.: |
|---|---|
| **Minard vs. Michelin North America, Inc.; et al.** | **STK-CV-UPL-2013-0006252** |

Page   59

more effectively and evacuate standing water more efficiently than the worn

tires," said Ron Margadonna, Technical Marketing Manager with Michelin.  This

becomes especially important when traveling and braking on wet surfaces.  In

such situations, if the front tires have more tread than the rear, the rear will lose

their grip and begin hydroplaning first, creating a very difficult situation for even

a season driver to control.

     "This is far less likely to occur when the new tires are mounted on the

rear," said Margadonna.  "If there is any loss of control from hydroplaning of the

front tires, the driver is more likely to feel it in the steering wheel early enough to

make the necessary corrections in speed and/or steering to remain in control of the

car."

(d)     The November 2004 printing of Michelin's Passenger and Light Truck Tire

Owner's Manual and Limited Warranty, stated at Page 15: "As a general rule, whenever only two

tires are replaced, the new ones should be put on the rear."  The same document stated at Page

17: "Failure to observe recommended precautions contained in this owner's manual can lead to

erratic vehicle behavior and/or tire damage possibly resulting in an accident."

(e)     The July 2007 printing of Michelin's Passenger and Light Truck Tire Owner's

Manual and Limited Warranty, stated at Page 15: "Replacement of Two (2) Tires.  It is

recommended that all four (4) tires are replaced at the same time.  However, when only two tires

are replaced, the new ones should be put on the rear."  The same document stated at Page 20:

223485 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __60__

"Failure to observe recommended precautions contained in this owner's manual can lead to erratic vehicle behavior and/or tire damage, possibly resulting in an accident."

10.    As of September 2010, CHASE CHEVROLET possessed actual knowledge that a vehicle's likelihood of losing control, and/or rolling over, is greater when the detreaded tire is on the rear axle, than on the front axle.

11.    In September 2010, Plaintiff Brianna Minard purchased her 2001 Chevrolet Blazer vehicle, which is a 2-wheel drive sport utility vehicle (SUV), and its component parts [the "Crash Vehicle"], including but not limited to the Michelin Uniroyal Laredo tire with Department of Transportation (DOT) No. APM1273U4100, which was original equipment for the Subject Vehicle [the "Accident Tire"].

12.    The last 4 digits on the DOT number on the sidewall of the Accident Tire, i.e., "4100" is a code meaning the tire was manufactured in the 41st week of Year 2000, which is the second week of October 2000.  The Subject Vehicle was final assembled by Old GM on or about November 1, 2000.

13.    On November 1, 2010, Plaintiff took her Crash Vehicle to CHASE CHEVROLET, which conducted a Multi-Point Vehicle Inspection, including the tires.  CHASE

223485 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

**Page   61**

CHEVROLET employees observed 2 new tires on the front axle, and observed the 10-year old Accident Tire in the right rear position. CHASE CHEVROLET did not replace the Accident Tire. CHASE CHEVROLET did not rotate the 2 new tires from the front to the rear axle. No CHASE CHEVROLET employee informed or recommended to the Plaintiff that the Accident Tire needed to be replaced. No CHASE CHEVROLET employee informed or recommended to the Plaintiff that the 2 new tires needed to be rotated to the rear axle.

14.    On November 4, 2010, Plaintiff took her Crash Vehicle back to CHASE CHEVROLET, which did not conduct any inspection of the tires, and made no recommendations to the Plaintiff.

15.    On December 27, 2010, Plaintiff again took her Crash Vehicle to CHASE CHEVROLET, which again conducted a Multi-Point Vehicle Inspection, including the tires. CHASE CHEVROLET employees observed 2 new tires on the front axle, and observed the 10-year old Accident Tire in the right rear position. CHASE CHEVROLET did not replace the Accident Tire. CHASE CHEVROLET did not rotate the 2 new tires from the front to the rear axle. No CHASE CHEVROLET employee informed or recommended to the Plaintiff that the Accident Tire needed to be replaced. No CHASE CHEVROLET employee informed or recommended to the Plaintiff that the 2 new tires needed to be rotated to the rear axle.

223485 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page ___62___

16.    It is a despicable, conscious disregard for public safety for a tire dealer and vehicle dealership to operate its business without having knowledge of the existence of documents and information about how to read and interpret a DOT Number, and that tire manufacturers have made recommendations for automatically removing and replacing tires that have reached a certain age.  Individuals and families take their personal vehicles to CHASE CHEVROLET to have their vehicles inspected and repaired by properly trained technicians who have the equipment, tools, safety instructions and know-how to do a job properly and safely.  But CHASE CHEVROLET asserts in this lawsuit that it never knew the recommendations of tire manufacturers, including Michelin, for the Accident Tire.  CHASE CHEVROLET further asserts in this lawsuit that no former or current employees of CHASE CHEVROLET know where to place 2 new tires on a vehicle, and they do not know how to date tires. or whether the age of tire carries any safety risk for the operation of a motor vehicle.

17.    CHASE CHEVROLET never trained its tire-related employees that they should know what the tire manufacturers recommend about tire replacement, including how to date a tire and to replace an aged tire beyond its expiration date, and including which axle to place 2 new tires, for the safety of customers and their families and friends.

18.    CHASE CHEVROLET and its officers, directors and/or managing agents, acted

223485 / lgv

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page   63

in the manner described above and/or failed to take the actions mentioned above, for reasons of

economic gain, and to save money and increase their business profits.  Had CHASE

CHEVROLET taken those actions, said acts would have cost CHASE CHEVROLET money.

Hence, CHASE CHEVROLET consciously, willfully and wantonly decided that its profits were

more valuable and important than human suffering and life.


19.    On July 3, 2011, Plaintiff drove her Crash Vehicle, which included the Accident

Tire in the right rear axle position.  The Accident Tire sustained a full tread delamination, which

caused the Crash Vehicle to go out of control, and the Plaintiff was severely injured when the

highly unstable Crash Vehicle rolled over.


20.    In doing the acts herein alleged, CHASE CHEVROLET and its officers, directors,

and/or managing agents, directly, and in authorizing and ratifying the conduct of each of them,

acted with malice by engaging in the misconduct despicably and with a willful and conscious

disregard of the rights and/or safety of others, and/or acted with oppression by engaging in the

misconduct despicably and by subjecting others to cruel and unjust hardship in conscious

disregard of the rights of other persons, and/or acted with fraud by engaging in the misconduct

through intentional misrepresentation, deceit, and/or concealment of a material fact known to

CHASE CHEVROLET with the intention on the part of CHASE CHEVROLET of thereby

depriving a person or property or legal rights or otherwise causing injury, and are liable under

| SHORT TITLE: | CASE NO.: |
|---|---|
| Minard vs. Michelin North America, Inc.; et al. | STK-CV-UPL-2013-0006252 |

Page __64__

Civil Code §3294 for exemplary and punitive damages. Plaintiff is therefore entitled to an award

of exemplary and punitive damages against CHASE CHEVROLET in an amount to be shown

according to proof at trial.

223485 / lgv