# EXHIBIT A

```
                        UNITED STATES BANKRUPTCY COURT
                         SOUTHERN DISTRICT OF NEW YORK


                                      .   Case No. 09-50026-mg
 IN RE:                               .   Chapter 11
                                      .
 MOTORS LIQUIDATION COMPANY,          .   (Jointly administered)
 et al., f/k/a GENERAL                .
 MOTORS CORP., et al,                 .   One Bowling Green
                                      .   New York, NY 10004
              Debtors.                .
                                      .   Monday, June 27, 2016
 . . . . . . . . . . . . . . . . .        11:05 a.m.


 TRANSCRIPT OF (CC: DOC# 13634,13648) MOTION TO AUTHORIZE NOTICE
    OF MOTION BY GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. 105
   AND 363 TO ENFORCE THE BANKRUPTCY COURT'S JULY 5, 2009 SALE
  ORDER AND INJUNCTION, AND THE RULINGS IN CONNECTION THEREWITH
      (VERONICA ALAINE FOX, CLAUDIA LEMUS, TAMMIE CHAPMAN AND
                     CONSTANCE HAYNES-TIBBETTS)
```
**BEFORE THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT JUDGE**

```
 APPEARANCES:

 For the Debtor:          King & Spalding LLP
                          By:  ARTHUR JAY STEINBERG, ESQ.
                               SCOTT I. DAVIDSON, ESQ.
                          1185 Avenue of the Americas
                          New York, New York 10036
                          (212)556-2100

 For State Court Plaintiffs
 Fox, Chapman, Tibbetts:  Goodwin Procter LLP
                          By:  WILLIAM P. WEINTRAUB, ESQ.
                               GREGORY W. FOX, ESQ.
                          The New York Times Building
                          620 Eighth Avenue
                          New York, NY 10018-1405
                          (212) 813-8839

 APPEARANCES CONTINUED.

 Audio Operator:          Michelle Brown, ECR

 Transcription Company:   Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com

 Proceedings recorded by electronic sound recording,
 transcript produced by transcription service.
```

```
APPEARANCES (Continued):

For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs:              Brown Rudnick LLP
                         By:  HOWARD S. STEEL, ESQ.
                         7 Times Square
                         New York, New York 10036
                         (212) 209-4917

Also appearing:          Butler Wooten Cheeley & Peak LLP
                         By:  JAMES E. BUTLER, JR., ESQ.
                              ROBERT H. SNYDER, ESQ.
                         2719 Buford Highway
                         Atlanta, GA  30324
                         (404) 321-1700
```

1  issues that --

2         THE COURT: The colloquy with Mr. Weisfelner.

3         MR. STEINBERG: Right. That was that colloquy, but
4  the judge had already said before his -- in his scheduling
5  order, he says, I need to be able to address vehicles without
6  the ignition switch defect. He says -- and he tells Mr.
7  Weisfelner at the hearing that, you know, some of your clients
8  have gotten relief by the modification to the sale orders and
9  some didn't, but I need to address it. And you could see from
10 Judge Gerber's language in the November decision, he basically
11 said, I gave you an opportunity to address it and you didn't
12 address it.

13        The fact of the matter is, is that Tibbetts and
14 Chapman and Fox don't really challenge due process in the same
15 way that the ignition switch defects have challenged it.
16 Ignition switch defects argued they were known predators
17 because Old GM knew of the ignition switch defect and they --
18 we agreed to certain factual stipulations. Judge Gerber
19 interpreted the factual stipulations. We disagree with how he
20 interpreted, it's the subject of a Second Circuit appeal, but
21 that was presented to Judge Gerber and Judge Gerber ruled on
22 the ignition switch defect and said that they had established
23 enough with prejudice to have a limited modification to be able
24 to assert independent claims.

25        THE COURT: Mr. Steinberg, let me ask, do you believe

1  that -- I mean, we'll see when the Second Circuit rules.  It
2  could be quick; it could be a very long time.  Do you believe
3  it's going to be dispositive of the issues raised on these
4  motions and the ones you're about to file or just filed?
5          MR. STEINBERG:  I think that the Second Circuit will
6  have to deal with the subject matter jurisdiction issue, which
7  is Manville 4, which is raised on appeal.  Frankly --
8          THE COURT:  I thought Celetex was pretty dispositive
9  of the subject matter jurisdiction issue, but --
10         MR. STEINBERG:  Well, I think that -- look, the sale
11 order dealt with the issues raised by Manville for the appeal.
12 I think it was in Campbell specifically referenced Manville 4
13 and said, well, this was a different circumstance.  And then
14 the appeals were dismissed on an equitably moot ground.
15         The four threshold issues -- we were briefing
16 Manville 4 in the four threshold issues.  Judge Gerber said he
17 had jurisdiction to do it.  Gary Peller, on behalf of his non-
18 ignition switch defect clients, and the ignition switch defect
19 clients, challenged Manville 4 every argument.  Judge Gerber
20 almost sanctioned him for saying he's raising a frivolous
21 appeal, frivolous comment.  He already decided it before.  So
22 four times Manville 4 has been decided and now it's up on the
23 Second Circuit and the Second Circuit will have a chance to
24 resolve it.
25         Some of the issues about independent claim, the

1  colloquy on the second circuit was -- I mean, we had raised the
2  issue as to whether we had stipulated that 24 people had --
3  actually knew of the ignition switch defect in order to
4  substantiate a recall.  And the colloquy, and it will be borne
5  out by the transcript if Your Honor wants to see the
6  transcript, has a least Justice Chin saying, I didn't see it,
7  meaning that can you show me where they said that.  And then he
8  asks specifically Mr. Berman, who was arguing on behalf of the
9  MDL clients, he said, are you saying that you should have more
10 discovery or were you reliant on the factual stipulations.  And
11 Mr. Berman says, I think you could decide this based on the
12 factual stipulations, we're not saying we need more discovery;
13 whatever is in the closed record, you can decide whether it
14 substantiates.

15          So to the extent that the entire independent claim
16 notion is triggered by whether we knew enough to justify a
17 modification of a final and non-appealable sale order that
18 existed for six years, that is in the Second Circuit and that
19 is the triggering point.  The problem is, is that we have cases
20 that are going forward in the state court.  Some cases are
21 closer to trial than the other.  You know, Tibbetts and Chapman
22 certainly could wait until July 18th to deal with the other 11
23 cases that we had.  Fox could probably even wait too, but since
24 we've been accused of being dilatory and clever in trying to
25 delay all -- everything here, I'm happy to deal with the Fox

1  issue now, recognizing that I'm not exactly sure what we are
2  really fighting over in Fox in that.
3            If it truly is just an assumed liability that he's
4  asserting, then I've been told by product lawyers, of which I'm
5  not, I'm a restructuring lawyer as Your Honor knows, is that if
6  you have a certain duty to warn as part of your strict
7  liability, as part of your otherwise negligence claim, you're
8  going to get the same compensatory damages.  All roads lead to
9  the same amount anyway.  People have it as an additional count.
10 They want to be able to say something.
11           In the Fox case, what we have as an issue is that
12 they still have New GM allegations and we just said, we won't
13 fight you by putting it in, but it can tie into, in effect,
14 what would otherwise be an independent claim in a New GM cause
15 of action.
16           I will say to Your Honor that we actually have
17 something that's brewing unrelated to this case, but Your Honor
18 should understand because it relates to something that's here,
19 is that we agreed with one plaintiff in the Texas MDL to amend
20 their complaint and they agreed to narrow -- it was an ignition
21 switch case and we agreed to narrow it only for certain
22 allegations which they say constitute their independent claim.
23           And now they've made a motion to, in effect, lift the
24 cap on punitive damages in the Texas court and the entire
25 complaint is based on Old GM conduct and Old GM things, so

1  we're trying to figure out how to deal with those issues.  But
2  part of the problem that we face is that while we clean it up,
3  as you get closer to trial or as you get closer to filing other
4  briefs in connection with the case, the things that we thought
5  we resolved re-emerge again.  So one of the things that we
6  would certainly be urging to Your Honor as -- if you resolve
7  this in our favor is the dismissal of these claims and these
8  requests with prejudice so there's no issue that these things
9  will re-emerge at a later point in time.
10             The procedures that we followed, and I think --
11             THE COURT:  I don't know how I discuss claims with --
12  I can enjoin parties from prosecuting claims, but it isn't for
13  me -- the cases -- the underlying cases are not pending before
14  me, I can't dismiss them.  I could enjoin parties from
15  prosecuting them.
16             MR. STEINBERG:  Your Honor is absolutely correct.  I
17  spoke too shorthand on that.  That's all that you can do.  Your
18  jurisdiction is for the parties in front of you to not be able
19  to assert these types of claims.
20             THE COURT:  Right.
21             MR. STEINBERG:  And that's like the -- all we can ask
22  you to do on that.
23             THE COURT:  You know, with respect to Fox, I'm going
24  to hear counsel in a minute but, you know, one of the things in
25  my mind is that, hey, you know, if they really think you're

1  going to go to trial in September, the -- it may be I'm just
2  not going to let them go to trial with the independent claims
3  argument.  They want to -- you know, they're trying to
4  condition on something I don't -- you know, if they work out an
5  agreement with New GM, fine, but if they don't, I mean, part of
6  my reaction is I'm going to enjoin it until they stop.  I'm
7  going to enter a preliminary injunction against them until the
8  Second Circuit rules.  It could be a year from now, it could be
9  four or five months from now.
10           Because I think that what the Second Circuit has to
11 say may well be dispositive of the issues, if there's service
12 and I see that they say, well, it will go to the jury now, it
13 won't go to a bench trial in September, I know they count on
14 having a decision from the Second Circuit with serious issues
15 that quickly.
16           But, you know, those all may simply be -- I'm going
17 to enjoin it and when the Second Circuit rules, I'll revisit if
18 I have to, but we shouldn't think that they're going to go
19 forward but I might, you know, want to wait and hear what they
20 want to say about it.
21           Go ahead, Mr. Steinberg.
22           MR. STEINBERG:  Your Honor, on Grumman Olson, there
23 are six reasons why we think that is not useful precedent.  One
24 is the one that I think Your Honor had first touched on, which
25 is that when you assume the liability under the sale agreement,

*[this page is intentionally left blank]*

1  case that when he revisited the language that he had approved
2  in 2009, he said if somebody had come to me in 2009 and said
3  you're going too far, I would have agreed with them.  So Judge
4  Gerber apparently missed this issue in 2009, but Tibbetts and
5  Chapman and Fox, how were they supposed to catch it?
6  　　　　　Your Honor, we think there are really just two issues
7  before the Court this morning.  First, are these state court
8  plaintiffs barred from seeking to prove a claim against New GM
9  based on its own post-sale conduct?  These are allegations that
10 New GM did something or failed to do something after the 2009
11 sale closed that contributed to or permitted an accident to
12 occur.  No one is asking this Court to determine whether New GM
13 is or is not culpable or whether New GM had a duty to act.  The
14 issue in the parlance of Judge Gerber and his prior decisions
15 is whether the ability to even assert the claim gets through
16 the bankruptcy gate.
17 　　　　　The second issue here is if the Court is
18 contemplating answering the first question in the negative, I
19 think the Court has to ask itself did something happen in 2009
20 in connection with the sale proceeding that was
21 constitutionally sufficient to bar these plaintiffs, who had
22 not yet had their crashes in 2009 and who could not predict in
23 2009 that they would ever have a crash years later.
24 　　　　　Did something happen that effectively barred them
25 from bringing independent claims against New GM for its future

1  post-sale conduct?  We don't think it did.  We think as a
2  matter of common sense as well as constitutional due process, a
3  bankruptcy court cannot prospectively bar future claims by
4  exonerating a buyer from its own post-sale conduct before the
5  conduct even occurs.
6           As we said earlier, Your Honor, it's well-established
7  in this court -- in this circuit that --
8           THE COURT:  Mr. Weintraub, it wasn't clear to me from
9  the pleadings that I reviewed that the claim is based solely on
10 New GM post-sale conduct.  You try to bootstrap arguments based
11 on Old GM conduct, and I don't believe that's permissible.
12 Okay.  What was clear was there was a separately pleaded claim
13 that made clear that it was based exclusively on New GM post-
14 sale conduct and articulating what is the claim that you
15 believe arises, I would have a much more clear-cut issue that I
16 was dealing with, and I don't think I have that.
17          MR. WEINTRAUB:  Your Honor, all I can say is that to
18 the extent there needs to be re-pleading --
19          THE COURT:  I'm not ordering --
20          MR. WEINTRAUB:  I understand.
21          THE COURT:  You know, all -- I'm going to do one of
22 two things.  I either can (indiscernible) or not.  Okay.  And
23 as I said to Mr. Steinberg, what I may well do is enjoin the
24 proceeding to try in September in Fox with the complaint
25 currently on file.  If you want to drop the alleged independent

1  claim, fine.  If not, we'll all wait for the Second Circuit to
2  decide, and I'll see what issues the Second Circuit decides and
3  which ones it doesn't.
4        I've read and will continue to reread Judge Gerber's
5  decisions operative to the issues before me.  I don't think it
6  really is clear that either of you make out in your arguments,
7  and -- but, you know, I can only deal with the motion to
8  enforce the plan with -- or the plan injunction with respect to
9  the Fox plan as presently filed.  If it was amended, if you've
10 already agreed to take out the punitive damage claim, that
11 would resolve one of the big issues.  The independent claim
12 issue, despite the correspondence from both sides, I don't know
13 where it stands.  I'm not getting in the middle of settlement
14 negotiations.  But I'll tell you this, Mr. Weintraub.  I don't
15 think Fox should plan on going to trial in September unless the
16 Second Circuit decides the pending appeal very soon.
17       MR. WEINTRAUB:  Your Honor, we think that what Judge
18 Gerber clearly decided was that if a litigant can show a due
19 process violation, then independent claims similar to the
20 independent claims --
21       THE COURT:  If Fox counsel had come in response to
22 the letter received and teed up the issue, I think we would be
23 dealing with something much clearer, but they chose to ignore
24 it.
25       MR. WEINTRAUB:  Your Honor, and I will get to that,

*[this page is intentionally left blank]*

1          THE COURT:  Okay.
2          MR. STEEL:  Thank you for the time.
3          THE COURT:  So is anybody -- is someone arguing on
4 behalf of Chapman and Tibbetts?
5          MR. WEINTRAUB:  Is that --
6          THE COURT:  Mr. Weintraub, your arguments apply to
7 them as well?
8          MR. WEINTRAUB:  Yes, Your Honor.
9          THE COURT:  Let me just -- before you get back up,
10 Mr. Steinberg, I mean, with respect to Chapman and Tibbetts,
11 the situation -- GM's position it seems to me is much clearer
12 with respect to Chapman and Tibbetts because the complaint
13 alleges that New GM is a successor of Old GM and that's already
14 been decided.  It argues -- it tries to distinguish between Old
15 GM and New GM, and it alleges that New GM manufactured or
16 designed Old GM vehicles or performed other conduct relating to
17 Old GM vehicles before the entry of the sale order.  I mean,
18 that seems to me quite clear that Chapman and Tibbetts --
19 whatever I decide about independent claims, Chapman and
20 Tibbetts just don't pass muster under the -- under a part of
21 Judge Gerber's rulings that you have not challenged.  Do you
22 dispute that?
23         MR. WEINTRAUB:  Your Honor, clearly, they are not a
24 successor per the ruling, and I'll speak with counsel about
25 that.

1         In terms of historical facts, you know, there
2    happened to have been an Old GM before there was a New GM, and
3    I don't think you're barred from ever uttering those words.
4    It's what --
5         THE COURT: Well, this is one of the few issues that
6    I've already had to decide in GM. I did have the published
7    opinion because it involved a Georgia -- I can't remember,
8    Mr. Steinberg, what case that was, but --
9         MR. STEINBERG: (Indiscernible).
10        THE COURT: Yeah. So that's easy to fix, but,
11   nevertheless, it's in there and it's defective. All right. I
12   just wanted to be sure. Okay.
13        MR. WEINTRAUB: I guess the only thing I would add,
14   Your Honor, is in terms of knowledge, imputation, and all of
15   that, if the Court has not already read it, I would guess you
16   did, but the November 2015 decision goes through that --
17        THE COURT: I've read everything at least once, some
18   of it more than once. I need to go back and read again, but
19   I'm not going to -- I'm going to hear Mr. Steinberg, but I'm
20   not going to rule today. Again, they're going to be up on July
21   18th, and I'm going to wait and hear the July 18th hearing
22   before I'm going to rule on what's today. I don't want to
23   foreclose arguments that are made on July 18th.
24        But I've already said that, I mean, one of the things
25   I'm very seriously contemplating is maintaining a stay in place

1  until the Second Circuit rules and then giving everybody a
2  chance to come back and tell me how the Second Circuit does or
3  does not resolve the issues.
4        In terms of Mr. Butler's case, that may mean he isn't
5  going to trial in September because I don't know when the
6  Second Circuit is going to decide very important, complicated
7  issues.  It may be sooner and it may not, so -- but let me hear
8  from Mr. Steinberg and then we'll --
9        MR. STEINBERG:  Thank you, Your Honor.
10       THE COURT:  Okay.
11       MR. STEINBERG:  I know I've said this before, but I
12 think the due process issue in front of the Second Circuit is
13 different than the issue --
14       THE COURT:  Well, it may be, and when I get to read
15 what the Second Circuit says, it may clarify things for me and
16 -- but it's not like I'm waiting -- I would be waiting on
17 something that hasn't been briefed, hasn't been argued.  It
18 was.
19       And, Mr. Steinberg, I would like you to send me the
20 transcript of the argument.  I haven't seen it.  I certainly
21 read some of the commentary after the argument, but I haven't
22 read the argument itself and I would like to see that.  It's --
23 but obviously what counts is what they rule.
24       Thanks, Mr. Weintraub.
25       Mr. Steinberg, go ahead.

# CERTIFICATION

I, Lisa Luciano, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Lisa Luciano*

LISA LUCIANO, AAERT NO. 327       DATE:  June 28, 2016
ACCESS TRANSCRIPTS, LLC

# CERTIFICATION

I, ILENE WATSON, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Ilene Watson*

ILENE WATSON, AAERT NO. 447       DATE:  June 28, 2016
ACCESS TRANSCRIPTS, LLC

