**Objection Deadline: July 8, 2016 at 4:00 p.m. (Eastern Time)**
**Hearing Date and Time: July 18, 2016 at 10:00 a.m. (Eastern Time)**

Kris Ted Ledford
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK  74055
Telephone: (918) 376-4610
Facsimile: (918) 376-4993
Email: kris@ledford-lawfirm.com

*Attorney for Christopher Pope and Gwendolyn Pope*



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026(MG) |
|     f/k/a General Motors Corp., *et al.* | : | |
| | : | (Jointly Administered) |
|              Debtors. | : | |

-------------------------------------------------------------x

**OBJECTION BY PLAINTIFFS CHRISTOPHER POPE AND GWENDOLYN POPE
TO MOTION BY GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363
TO ENFORCE THE BANKRUPTCY COURT'S JULY 5, 2009 SALE ORDER AND
INJUNCTION, AND THE RULINGS IN CONNECTION THEREWITH**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

BACKGROUND FACTS ..................................................................................... 1

    A.    The Pope Lawsuit ................................................................................ 1

    B.    September 1, 2015 letter from Scott Davidson to Kris Ted Ledford ............................ 2

    C.    September 4, 2015 letter from Arthur Steinberg to Kris Ted Ledford ........................ 3

    D.    September 15, 2015 letter from Kris Ted Ledford to Scott Davidson .......................... 4

    E.    May 16, 2016 letter from Scott Davidson to Kris Ted Ledford .................................. 5

    F.    June 17, 2016 letter from Kris Ted Ledford to Scott Davidson .................................. 6

ARGUMENTS AND AUTHORITIES ................................................................... 7

    I.    THE POPE PLAINTIFFS SHOULD NOT BE COLLATERALLY ESTOPPED FROM THEIR PURSUIT OF PUNITIVE DAMAGES AGAINST NEW GM BASED ON NEW GM'S POST-SALE CONDUCT. .................................................. 7

    II.    THE POPE PLAINTIFFS SHOULD BE ENTITLED TO PURSUE PUNITIVE DAMAGES AGAINST NEW GM BASED ON NEW GM'S POST-SALE CONDUCT. ........................................................................................ 8

    III.    TO THE EXTENT THIS COURT DETERMINES THAT THE POPE PLAINTIFFS ARE REQUIRED TO SATISFY A DUE PROCESS ANALYSIS, THE POPE PLAINTIFFS WERE NOT AFFORDED A FAIR OPPORTUNITY TO PROTECT THEMSELVES FROM THE ENTRY OF AN OVERBROAD SALE ORDER THAT BARRED THEM FROM SUING NEW GM FOR NEW GM'S OWN POST-SALE CONDUCT. .................................................................................. 10

    IV.    TO THE EXTENT THIS COURT DETERMINES THAT THE SALE ORDER BARRED THE POPE PLAINTIFFS' CLAIMS AGAINST NEW GM FOR ITS OWN POST-SALE CONDUCT, THIS COURT LACKED SUBJECT MATTER JURISDICTION TO ESTABLISH SUCH A BAR. .............................................. 10

    V.    THE POPE PLAINTIFFS SHOULD NOT BE ENJOINED FROM PURSUIT OF THEIR STATE LAW BASED CONSUMER PROTECTION ACT CLAIM. .......... 11

    VI.    THE POPE PLAINTIFFS SHOULD NOT BE ENJOINED FROM ALLEGING THAT NEW GM FAILED TO DISCLOSE KNOWN SAFETY DEFECTS. ........... 11

VII.    TO THE EXTENT NEW GM HAS RAISED OTHER CONCERNS ABOUT THE
POPE PLAINTIFFS' ALLEGATIONS, THOSE CONCERNS HAVE BEEN
RESOLVED......... ..................................................................................... 12

CONCLUSION.................................................................................................................. 12

CERTIFICATE OF SERVICE .......................................................................................... 14

CERTIFICATE OF COMPLIANCE ................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*In re Motors Liquidation Company*, 541 B.R. 104 (S.D.N.Y. Bank. 2015) ......................... 8, 9, 12

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002) ...................................................... 7

**Statutes**

12 O.S. § 1053 .................................................................................................................. 2

15 O.S. § 751 *et seq.* ...................................................................................................... 2

23 O.S. § 9.1 .................................................................................................................... 2

Plaintiffs, Christopher Pope and Gwendolyn Pope ("Pope Plaintiffs"), by their undersigned counsel, respectfully submit this Objection to the Second June 2016 Motion to Enforce (Dkt. 13655-1)("GM Motion").

## BACKGROUND FACTS

In order to understand why the collateral estoppel arguments raised by General Motors LLC ("New GM") should be rejected by this Court, it is important to understand the history of events as it relates to the notice given to the Pope Plaintiffs. The *entirety* of the notice given to the Pope Plaintiffs is outlined below.[1]

To be clear, the Pope Plaintiffs were **never** given any notice in connection with the September 2015 briefing that they were being treated differently from the plaintiffs pursuing products liability claims for bodily injury or death arising out of post-closing accidents in vehicles manufactured by Old GM *which involve ignition switch defects* ("Ignition Switch Plaintiffs"). In fact, New GM told the Pope Plaintiffs the exact opposite by expressly stating that "reasoning and rulings" by this Court relating to the Ignition Switch Plaintiffs are "equally applicable to" the Pope Plaintiffs' lawsuit. For New GM to now argue that the Pope Plaintiffs are collaterally estopped by not participating in the September 2015 briefing is wholly improper.

### A.    The Pope Lawsuit

On December 18, 2014, the Pope Plaintiffs filed a wrongful death lawsuit in the District Court of Muskogee County, State of Oklahoma against New GM[2] and several other defendants.

---

[1]    New GM's reliance on documents not provided to the Pope Plaintiffs such as New GM's August 26, 2015 letter to the Court which was never served on the Pope Plaintiffs is irrelevant. Documents which were not provided to the Pope Plaintiffs offer nothing on the issue of the scope and adequacy of the notice provided to the Pope Plaintiffs.

[2]    The Pope Plaintiffs did not sue Old GM. In connection with allegations describing the liability assumed by New GM in the context of this bankruptcy, Old GM was mentioned

*See* Petition attached as Exhibit 1. The lawsuit arises out of a head-on collision which occurred on December 22, 2012 and took the life of Lesley Caryn Turay. *See id.* at ¶ 8. Ms. Turay was the mother of the Pope Plaintiffs. *See id.* at ¶ 1. Ms. Turay was driving a 2001 Cadillac Deville and her airbag failed to deploy. *See id.* at ¶¶ 9-10. The oncoming vehicle was a 1997 GMC Yukon and the airbag in that vehicle did deploy saving the life of that driver.

In their Petition, the Pope Plaintiffs asserted products liability claims against New GM and several commercial sellers. *See id.* at ¶¶ 11-19. They asserted a claim solely against New GM for deceptive trade practices and/or unfair trade practices in violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq*. *See id.* at ¶¶ 20-26. They alleged a negligence claim against the driver of the on-coming vehicle. *See id.* at ¶¶ 27-29. The Pope Plaintiffs sought to recover from New GM damages allowed under Oklahoma's wrongful death statute (12 O.S. § 1053) which include punitive damages under Oklahoma's punitive damage statute (23 O.S. § 9.1). *See id.* at ¶¶ 17-19 and 25-26.

Having encountered persistent stonewalling by New GM, the Pope Plaintiffs remain in the early stages of written discovery. No scheduling order has been entered in the case and no trial date has been set.

**B.    September 1, 2015 letter from Scott Davidson to Kris Ted Ledford**

On September 2, 2015, counsel for the Pope Plaintiffs received a letter from Scott Davidson dated September 1, 2015. *See* September 1, 2015 correspondence without enclosures[3] attached as Exhibit 2. A focus of the September 1st letter was an explanation of New GM's

---

twice in the Petition but both times was referred to by its full legal name, General Motors Corporation. *See* Exhibit 1 at ¶ 2.

[3]    The enclosures with the September 1st letter were the June 1, 2015 Judgment in this bankruptcy and the April 2015 Decision in this bankruptcy. *See* Exhibit 2 at fn. 1.

2

position that under the terms of the Sale Agreement[4] New GM cannot be liable for punitive

damages arising from post-sale accidents involving vehicles manufactured by Old GM. *See*

Exhibit 2 at p. 2. Discussing the June 2015 Judgment, New GM's counsel stated:

> The Bankruptcy Court recently issued the Judgment, which reiterated that
> "[e]xcept for Independent Claims and Assumed Liabilities (if any), all claims
> and/or causes of action that the Ignition Switch Plaintiffs may have against New
> GM concerning an Old GM vehicle or part seeking to impose liability or damages
> based in whole or in part on Old GM conduct (including, without limitation, on
> any successor liability theory of recovery) are barred and enjoined pursuant to the
> Sale Order. . . ." Judgement ¶ 9; *see also* Decision, 529 B.R. at 528 ("Claims
> premised in any way on Old GM conduct are properly proscribed under the Sale
> Agreement and the Sale Order, and by reason of the Court's other rulings, the
> prohibitions against the assertion of such claims stand."). *The reasoning and
> rulings set forth in the Judgment and Decision are equally applicable to the
> [Pope] Lawsuit.*

*See* Exhibit 2 at pp. 2-3 (emphasis added).   The letter went on to discuss procedures for

amending pleadings that violate the June 2015 Judgment but then explained that these

procedures would likely change based on an August 31, 2015 case management conference. *See*

*id.* at 3-4. *At no point in September 1st letter did New GM provide any indication that the Pope*

*Plaintiffs were being treated differently from the Ignition Switch Plaintiffs in terms of their*

*ability to seek punitive damages against New GM.*

### C.   September 4, 2015 letter from Arthur Steinberg to Kris Ted Ledford

Two days later on September 4, 2015, counsel for the Pope Plaintiffs received via email a

letter from a different attorney representing New GM. *See* September 4, 2015 correspondence

with enclosures attached as Exhibit 4. The September 4th letter referred to the prior letter and

contained several attachments including the Scheduling Order which this Court had entered on

---

[4]   Because counsel for the Pope Plaintiffs did not have a copy of the June 26, 2009 Sale
Agreement or the July 5, 2009 Sale Order, both of these documents were requested from Mr.
Davidson via email dated September 2, 2015 and Mr. Davidson supplied those documents
via email of the same date. *See* email communications between Ledford and Davidson
attached as Exhibit 3.

September 3, 2015. *See id.* The enclosed Scheduling Order referenced the **"Punitive Damage Issue"** but did not in any way put the Pope Plaintiffs on notice that their punitive damage claims would be treated any differently than the punitive damage claims asserted by the Ignition Switch Plaintiffs. The Scheduling Order also referenced the **"Imputation Issue"** but again did not give any notice that the Pope Plaintiffs would be treated different from the Ignition Switch Plaintiffs. Upon review of this letter, counsel for the Pope Plaintiffs reasonably concluded that *if the claims of the Pope Plaintiffs were truly at issue* his clients' interests were squarely aligned with the interest of the Ignition Switch Plaintiffs. Given the significant expertise and reputation of the firms representing the Ignition Switch Plaintiffs and the requirement that special permission from the Court was required for the Pope Plaintiffs to file their own brief, counsel for the Pope Plaintiffs reasonably concluded that their position would not be prejudiced by not participating in the September 2015 briefing.

### D.    September 15, 2015 letter from Kris Ted Ledford to Scott Davidson

Counsel for the Pope Plaintiffs wrote Mr. Davidson on September 15th seeking further explanation on the issues. *See* September 15, 2015 correspondence attached as Exhibit 5. By that time, counsel for the Pope Plaintiffs had reviewed the April 2015 Decision, the June 2015 Judgment, the Sale Order, and the Sale Agreement. Both the Decision and Judgment use short-hand references to various types of claims which were defined by the Court. Seeking a better understanding of how the claims of the Pope Plaintiffs were impacted by the Decision and Judgment, counsel for the Pope Plaintiffs wrote:

> As I read the Judgment, it relates to Ignition Switch Plaintiffs, Pre-Closing Accident Plaintiffs, and Non-Ignition Switch Plaintiffs. Ignition Switch Plaintiffs are *non-accident economic loss*[5] claims. Pre-Closing Accident Plaintiffs are

---

[5]    In the Decision, the Court identifies "economic loss" claims as claims "for alleged reduction in the resale value of affected cars, other economic loss (such as unpaid time off from work

4

claims based on accidents that occurred *prior* to the 363 sale closing which occurred in 2009. Non-Ignition Switch Plaintiffs are plaintiffs who have sued New GM for *economic losses* based on an alleged defect other than the Ignition Switch in an Old GM vehicle.  On page 19 of the Decision, the Court further explains this category of claims as follows:

> The other category of Plaintiffs later coming into the picture ("Non-Ignition Switch Plaintiffs") brought actions asserting Economic Loss claims as to GM branded cars that *did not have* Ignition Switch Defects, including cars made by New GM and Old GM alike.  In fact, most of their cars did not have defects, and/or were not the subject of recalls, at all.  But they contend, in substance, that the Ignition Switch Defect caused damage to "the brand" resulting in Economic Loss to them.

Please identify which of these categories of claims GM contends the Pope case falls within and explain the basis for GM's position.  I do not want to get involved in bankruptcy proceedings without a clear understanding of whether and why my case would be implicated by the bankruptcy proceedings.

*See* Exhibit 5 at pp. 1-2.[6]  New GM never answered these questions.

### E.    May 16, 2016 letter from Scott Davidson to Kris Ted Ledford

Via correspondence dated May 16, 2016, Mr. Davidson identified specific allegations in the Pope Plaintiffs' Petition which New GM contends are in violation of the Sale Order.  *See* Exhibit 6.  Upon review of the May 16th letter, the most surprising aspect of the letter was New GM's position that the Pope Plaintiffs' punitive damage claims were now barred and being treated differently than the punitive damage claims of the Ignition Switch Plaintiffs.  *See* Exhibit 6 at p. 3.  This came as a shock because New GM had previously led counsel for the Pope

---

when getting an ignition switch replaced), and inconvenience." *See* Decision at p. 18. The claims in the Pope case are wrongful death claims brought under Oklahoma law arising out of a fatality accident in which an airbag failed to deploy. Clearly, the wrongful death claims in Pope are not what the Court was contemplating as being within the scope of "economic loss" claims.

[6]    Counsel for the Pope Plaintiffs also asked for an explanation of what appeared at the time to be the <u>central point</u> of the September 2015 briefing—why the language "all Liabilities" in the Sale Agreement did not really mean "all" and instead excluded punitive damages. *See* Exhibit 5 at p. 2.

Plaintiffs to believe that bankruptcy court rulings in connection with the Ignition Switch Plaintiffs were applicable to the Pope Plaintiffs. *See* Exhibit 2 at pp. 2-3.

### F.   June 17, 2016 letter from Kris Ted Ledford to Scott Davidson

Not wanting to be in violation of this Court's orders, counsel for the Pope Plaintiffs responded to the May 16th letter via correspondence dated June 17, 2016. *See* Exhibit 7. In three areas, the Pope Plaintiffs agreed to amend their Petition and even provided a redlined Amended Petition to show New GM their proposed changes. *See id.* at pp. 1-2 and redlined Amended Petition attached thereto. However, the Pope Plaintiffs disagreed with New GM regarding New GM's demand that the Pope Plaintiffs dismiss (a) claims based on an alleged failure to identify or remedy a defect, (b) claims based on alleged violations of a consumer protection statute, and (c) requests for punitive damages. *See id.* at p. 2. Because counsel for the Pope Plaintiffs still believed (*based on representations previously made by New GM*) that their punitive damage claims were in the same stead as punitive damage claims asserted by the Ignition Switch Plaintiffs, he cited the November 2015 Decision which approved two pathways for recovering punitive damages from New GM. *See id.* at pp. 2-3.

Mr. Davidson responded to the June 17th letter via correspondence dated June 22, 2016. *See* Exhibit 8. New GM appears to be relying upon language in the November 2015 Decision and December 2015 Judgment referring to "Non-Ignition Switch Plaintiffs" but that phrase has been defined by the Court to only include "economic loss" claims which is not the same as the Pope Plaintiffs' products liability claim. *See* April 2015 Decision at p. 19, 529 B.R. 510, 522-523 and December 2015 Judgment at fn. 1. The Pope Plaintiffs do not fall within the bankruptcy court's definition of Non-Ignition Switch Plaintiffs. To support its current position, New GM appears to be attempting to change the meaning of a term previously defined by the Court.

Counsel for the Pope Plaintiffs thought the parties were still in the process of conferring regarding these issues when he received the GM Motion via email on June 24, 2016.

## ARGUMENTS AND AUTHORITIES

**I.    THE POPE PLAINTIFFS SHOULD NOT BE COLLATERALLY ESTOPPED FROM THEIR PURSUIT OF PUNITIVE DAMAGES AGAINST NEW GM BASED ON NEW GM'S POST-SALE CONDUCT.**

In its Motion, New GM advises the Court that collateral estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *See* GM Motion at p. 14 *citing Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288-289 (2d Cir. 2002). Given the facts presented in this Objection, it is hard to understand how New GM can legitimately argue that collateral estoppel should be applied against the Pope Plaintiffs. Inherent in these four factors is the idea that a party must receive fair notice of *the issue for which collateral estoppel is sought to be applied.* New GM did not give the Pope Plaintiffs fair notice that the Pope Plaintiffs' punitive damage claims might be treated differently from those of the Ignition Switch Defect Plaintiffs. In fact, New GM told the Pope Plaintiffs exactly the opposite. *See* Exhibit 2. New GM did not in any way put the Pope Plaintiffs on notice that they had to satisfy a Due Process standard in the September 2015 briefing or be forever barred from seeking punitive damages. No such notice was provided. The Pope Plaintiffs should not be collaterally estopped when they were never informed of these issues.

## II.    THE POPE PLAINTIFFS SHOULD BE ENTITLED TO PURSUE PUNITIVE DAMAGES AGAINST NEW GM BASED ON NEW GM'S POST-SALE CONDUCT.

The analysis by this Court in the November 2015 Decision should be applied to the Pope Plaintiffs. The following excerpts of the November 2015 Decision discuss "Products Liabilities Claims" and "Post-Closing Accident Plaintiffs" (phrases which appear to include the Pope Plaintiffs' claims):

> Thus while New GM may be held liable for *compensatory* damages on Product Liabilities Claims based on Old GM conduct, New GM conduct or both, Post-Closing Accident Plaintiffs can base their claims for *punitives* only on New GM conduct or knowledge. Similarly, Independent Claims against New GM can't be based, for either compensatory or punitive damages purposes, on Old GM knowledge and conduct, because damages of any character on Independent Claims must be based solely on New GM's knowledge and conduct.

> But on Products Liability Claims and Independent Claims alike, New GM may be held responsible, on claims for both compensatory and punitive damages, for its *own* knowledge and conduct.

> \*  \*  \*

> *(1) Personal Injuries in Post-sale Accidents Involving Vehicles Manufactured by Old GM*[7]

> As discussed above, though Product Liabilities *compensatory damages* claims involving vehicles manufactured by Old GM were contractually assumed by New GM (and thus are permissible under the Sale Order, April Decision, and Judgment), *punitive damage* claims were not. Thus punitive damages in such actions may not be premised on anything Old GM knew or did.

> Nevertheless, as also discussed above, punitive damages may still be sought in actions based on post-Sale accidents involving vehicles manufactured by Old GM to the extent the punitive damage claims are premised on New GM action or inaction after it was on notice of information "inherited" by New GM, or information developed by New GM post-Sale.

---

[7]    This heading was derived from New GM's discussion of the four contexts in which punitive damage issues arise. *See In re Motors Liquidation Company*, 541 B.R. 104, 116 (S.D.N.Y. Bank. 2015). When one analyzes New GM's four contexts, the Pope Plaintiffs' claims fall squarely within this category.

*In re Motors Liquidation Company*, 541 B.R. 104, 122-123 (S.D.N.Y. Bank. 2015).  It is still unclear to the Pope Plaintiffs why New GM contends that this language in the published November 2015 Decision does not include their product liability claims arising out of post-Sale accidents and thereby allow the Pope Plaintiffs to pursue punitive damages against New GM. The Pope Plaintiffs respectfully submit that their redlined Amended Petition falls in line with this ruling.  *See* Exhibit 7.

Furthermore, in the November 2015 Decision, this Court defined "Independent Claims" as "claims based solely on New GM's alleged wrongful conduct."  *See id.* at 109.  In the redlined Amended Petition, the Pope Plaintiffs have amended their allegations to fall squarely within the confines of this ruling.  *See* Exhibit 7.  The Pope Plaintiffs seek to recover punitive damages against New GM based on conduct by New GM, not conduct by Old GM.

New GM's argument to the contrary is difficult to understand.  New GM essentially takes the position that the bankruptcy court granted New GM prospective immunity for future improper conduct in which it might engage—future conduct which is so egregious that states have chosen to adopt laws to allow for the recovery of punitive damages.  While counsel for the Pope Plaintiffs readily admits that he is not nearly as educated on the intricate details of the GM bankruptcy or bankruptcy issues generally, it seems as if New GM needs to take a step back and look at the big picture to understand just how unreasonable their current position really is.  This Court should make it clear that New GM is not now and never was entitled to such prospective immunity.[8]  New GM should be held accountable for its own actions and inactions.

---

[8]  New GM has disclosed that by using the same type of arguments presented in their Motion they have convinced the "clear majority" of plaintiffs' attorneys to drop their punitive damages claims.  *See* GM Motion at p. 4.  Apparently, dozens of plaintiffs have given up their right to recover punitive damages from New GM based on the representations made by

This Court should allow the pleading of punitive damage claims based on New GM's own conduct. Non-bankruptcy courts should then decide whether the post-sale conduct by New GM merits imposition of punitive damages. The Pope Plaintiffs respectfully ask this Court to allow their punitive damage claims to "pass through the gate" of the bankruptcy court.

### III. TO THE EXTENT THIS COURT DETERMINES THAT THE POPE PLAINTIFFS ARE REQUIRED TO SATISFY A DUE PROCESS ANALYSIS, THE POPE PLAINTIFFS WERE NOT AFFORDED A FAIR OPPORTUNITY TO PROTECT THEMSELVES FROM THE ENTRY OF AN OVERBROAD SALE ORDER THAT BARRED THEM FROM SUING NEW GM FOR NEW GM'S OWN POST-SALE CONDUCT.

The Pope Plaintiffs adopt and incorporate by reference the arguments made on this issue by the State Court Plaintiffs in their Objection (Dkt. 13642) filed in response to a similar motion recently filed by New. GM. *See* Objection at pp. 19-23.

### IV. TO THE EXTENT THIS COURT DETERMINES THAT THE SALE ORDER BARRED THE POPE PLAINTIFFS' CLAIMS AGAINST NEW GM FOR ITS OWN POST-SALE CONDUCT, THIS COURT LACKED SUBJECT MATTER JURISDICTION TO ESTABLISH SUCH A BAR.

The Pope Plaintiffs adopt and incorporate by reference the arguments made on this issue by the State Court Plaintiffs in their Objection (Dkt. 13642) filed in response to a similar motion recently filed by New. GM. *See* Objection at pp. 23-28. To the extent that the Second Circuit is also addressing on appeal from this bankruptcy court arguments regarding the subject matter jurisdiction of a bankruptcy court to create such immunity, the Pope Plaintiffs adopt and incorporate by reference the arguments raised by the plaintiffs in the appellate briefing.

---

New GM. This revelation is concerning especially when New GM uses the threat of bankruptcy court sanctions in its efforts to convince plaintiffs' attorneys to drop such claims.

### V. THE POPE PLAINTIFFS SHOULD NOT BE ENJOINED FROM PURSUIT OF THEIR STATE LAW BASED CONSUMER PROTECTION ACT CLAIM.

To support its position, New GM cites Paragraph 19 of the December 2015 Judgment but that description of consumer protection act claims does not match the Pope Plaintiffs' consumer protection act claim. *See* GM Motion at p. 15. The Pope Plaintiffs allege that New GM's violation of the Oklahoma Consumer Protection Act (not any violation by Old GM) resulted in the **death of a person**. *See* Petition (Exhibit 1) at ¶ 23. This is not a claim which New GM would assume from Old GM because it is not based on conduct by Old GM—it is based on conduct by New GM. In the same way, this is not a claim which Old GM could have retained because it is not based on Old GM conduct and New GM's conduct had not yet occurred. New GM would have this Court believe that they have some sort of free pass to engage in misconduct post-Sale without any liability exposure for its own misconduct. This simply cannot be the law.

In the December 2015 Judgment, this Court expressly ruled:

> Obligations, if any, that New GM had to recall or retrofit Old GM Vehicles were not Assumed Liabilities, and New GM is not responsible for any failures of Old GM to do so. But whether New GM had an independent duty to recall or retrofit previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law that may be decided by the nonbankruptcy court hearing that action.

*See* December 2015 Judgment (Dkt. 13563) at ¶ 29. Based on this Court's prior ruling, these claims should "pass through the gate" and not be stayed or enjoined.

### VI. THE POPE PLAINTIFFS SHOULD NOT BE ENJOINED FROM ALLEGING THAT NEW GM FAILED TO DISCLOSE KNOWN SAFETY DEFECTS.

The Pope Plaintiffs' allegations that New GM failed to disclose known safety defects is based solely on New GM conduct and not on any conduct by Old GM. *See* Petition ¶¶ 19-23 attached as Exhibit 1. Once again, this cannot be an assumed liability because it is not based on

Old GM conduct. The November 2015 Decision expressly defined "Independent Claims" as "claims based solely on New GM's alleged wrongful conduct." *See In re Motors Liquidation Company*, 541 B.R. at 109. The Pope Plaintiffs allegations *against New GM* for New GM conduct fall within these parameters.

In the December 2015 Judgment, this Court ruled:

> Obligations, if any, that New GM had to identify or respond to defects in previously sold Old GM Vehicles were not Assumed Liabilities, and New GM is not responsible for any failures of Old GM to do so. But whether New GM had an independent duty to identify or respond to defects in previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law that may be decided by the nonbankruptcy court hearing that action.

*See* December 2015 Judgment (Dkt. 13563) at ¶ 31. Based on this ruling, the Pope Plaintiffs' claims for failure to disclose known safety defects should "pass through the gate" and be decided on their merits by the Oklahoma state court.

## VII.   TO THE EXTENT NEW GM HAS RAISED OTHER CONCERNS ABOUT THE POPE PLAINTIFFS' ALLEGATIONS, THOSE CONCERNS HAVE BEEN RESOLVED.

Other issues raised by New GM regarding the Pope Plaintiffs' allegations were addressed in the redlined Amended Petition submitted to New GM's counsel. *See* Exhibit 7. With regard to these issues, New GM has agreed to the redlined changes in the Amended Petition. *See* Exhibit 8 at fn. 2.

## CONCLUSION

New GM first represented to the Pope Plaintiffs that rulings and reasoning by this Court in deciding issues concerning Ignition Switch Plaintiffs were "equally applicable to" the Pope Plaintiffs' lawsuit. Now, New GM has done a 180 by arguing that the rulings on punitive damages issues relating to the Ignition Switch Plaintiffs do not apply to the Pope Plaintiffs' punitive damage claims. New GM is trying to invoke collateral estoppel against the Pope

Plaintiffs when these plaintiffs relied upon prior representations made by New GM. Fundamental justice cannot allow such an unfair result. The Pope Plaintiffs should be permitted to seek punitive damages against New GM either under the November 2015 Decision or under a new analysis which enables victims such as the Pope Plaintiffs to seek punitive damages from New GM based on post-sale conduct by New GM.

Due to a conflict involving a long scheduled family vacation, counsel for the Pope Plaintiffs (a solo practitioner) is unable to attend the July 18th hearing but respectfully requests the Court to consider this Objection in reaching its decision on GM's Motion.

Respectfully submitted,

KRIS TED LEDFORD, OBA #17552
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK  74055
Telephone: (918) 376-4610
Facsimile: (918) 376-4993
Email: kris@ledford-lawfirm.com

*Attorney for Christopher Pope and Gwendolyn Pope*

13

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the above and foregoing was mailed via first class mail on the 6th day of July, 2016, to:

> Arthur Steinberg
> Scott Davidson
> KING & SPALDING LLP
> 1185 Avenue of the Americas
> New York, NY  10036
>
> *Attorneys for General Motors LLC*
>
>
> Richard C. Godfrey
> Andrew B. Bloomer
> KIRKLAND & ELLIS LLP
> 300 North LaSalle
> Chicago, IL  60654
>
> *Attorneys for General Motors LLC*

KRIS TED LEDFORD

## CERTIFICATE OF COMPLIANCE

In compliance with the Notice of Motion (Dkt. 13655), the undersigned does hereby certify that a true and correct copy of the above and foregoing was sent via Federal Express on the 6th day of July, 2016, to the Chambers of the Honorable Martin Glenn.

KRIS TED LEDFORD

# IN THE DISTRICT COURT OF MUSKOGEE COUNTY
## STATE OF OKLAHOMA

STATE OF OKLAHOMA
COUNTY OF MUSKOGEE
FILED

2014 DEC 18 PM 3: 31

PAULA SEXTON
COURT CLERK

CHRISTOPHER POPE and GWENDOLYN
POPE, individually and as co-personal
representatives of the Estate of LESLEY
CARYN TURAY,

            Plaintiffs,

v.

GENERAL MOTORS COMPANY A/K/A
GENERAL MOTORS LLC, a foreign limited
liability company; REGAL CAR SALES AND
CREDIT, LLC, an Oklahoma limited liability
company; SABER ACCEPTANCE
COMPANY, LLC, an Oklahoma limited
liability company; ELCO CHEVROLET, INC.,
a foreign company; SPECIALTY LEASE
INVESTMENTS, LLC, a foreign limited
liability company; and SOTHEA RENORDO
MCCONNELL, an individual,

            Defendants.

Case No. CJ-2014- 467

JURY TRIAL DEMANDED

## PETITION

    Plaintiffs, Christopher Pope and Gwendolyn Pope, for their cause of action against

Defendants allege and state as follows:

## PARTIES

    1.    Plaintiffs, Christopher Pope and Gwendolyn Pope, are the natural children and co-

personal representatives of the Estate of Lesley Caryn Turay ("Ms. Turay").

    2.    Defendant, General Motors Company a/k/a General Motors LLC ("GM"), is a

limited liability company formed under the laws of the state of Delaware with its principal place

of business located in Detroit, Michigan.  In 2009, GM acquired substantially all assets and

assumed certain liabilities of its predecessor in interest, General Motors Corporation, in the

course of a Chapter 11 bankruptcy.  GM assumed liability for product defect claims which arose


EXHIBIT
1

out of accidents that occurred after the bankruptcy filing involving vehicles manufactured by General Motors Corporation prior to the bankruptcy.

3.    Defendant, Regal Car Sales and Credit, LLC ("REGAL"), is an Oklahoma limited liability company.

4.    Defendant, Saber Acceptance Company, LLC ("SABER"), is an Oklahoma limited liability company.

5.    Defendant, Elco Chevrolet, Inc. ("ELCO"), is a Missouri corporation.

6.    Defendant, Specialty Lease Investments, LLC ("SLI"), is a Missouri limited liability company.

7.    Defendant, Sothea Renordo McConnell ("McConnell"), is an Oklahoma resident who resided in Muskogee County on the date of the motor vehicle collision on which this lawsuit is based.

FACTS OF COLLISION

8.    On December 22, 2012, Ms. Turay was involved in a head-on collision with a vehicle operated by McConnell which occurred on State Highway 16 in Muskogee County, State of Oklahoma ("Collision").

9.    At the time of the Collision, Ms. Turay was driving her 2001 Cadillac Deville (VIN #1G6KD54Y71U109398) ("Cadillac") which she had purchased from Regal and/or Saber on or about July 17, 2010.

10.    The airbags in Ms. Turay's Cadillac failed to deploy in the Collision thereby causing Ms. Turay's fatal injuries.

COUNT I
PRODUCTS LIABILITY CLAIM AGAINST GM, REGAL, SABER, ELCO, AND SLI

11.    The failure of the airbags in Ms. Turay's Cadillac to deploy in the Collision was the result of a product defect which rendered the Cadillac unreasonably dangerous to the user.

12.    The Cadillac was offered for sale to members of the public in a defective condition.

13.    Upon information and belief, REGAL and SABER owned, sold, repossessed, and re-sold the Cadillac at various times from late 2008 to early 2013 as commercial sellers of used automobiles.

14.    Upon information and belief, ELCO purchased and sold the Cadillac in late 2008 as a commercial seller of used automobiles.

15.    Upon information and belief, SLI purchased and sold the Cadillac in late 2008 as a commercial seller of used automobiles.

16.    The defect in Ms. Turay's Cadillac caused Ms. Turay's fatal injuries.

17.    GM, REGAL, SABER, ELCO, and/or SLI are strictly liable under a products liability theory of recovery for the wrongful death of Ms. Turay. These Defendants are liable for all damages recoverable pursuant to 12 O.S. § 1053.

18.    Upon information and belief, the marketing, advertising, and sale of the defective Cadillac was reckless, willful, intentional, and/or malicious conduct which was life-threatening to humans thereby justifying an award of punitive damages against GM, REGAL, SABER, ELCO, and/or SLI pursuant to 23 O.S. § 9.1.

19.    GM's failure to disclose the existence of the safety product defect to Ms. Turay or remedy the defect prior to the Collision was reckless, willful, intentional, and/or malicious

3

conduct which was life-threatening to humans thereby justifying an award of punitive damages against GM pursuant to 23 O.S. § 9.1.

## COUNT II
### VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT CLAIM AGAINST GM

20. Upon information and belief, GM was aware of the product defect in the supplemental restraint system for 2001 Cadillac Devilles and other GM vehicles utilizing the same supplemental restraint system prior to the Collision.

21. GM had an affirmative obligation to disclose the existence of the safety product defect to Ms. Turay and remedy the defect prior to the Collision.

22. GM failed to disclose the existence of the safety product defect to Ms. Turay or remedy the defect prior to the Collision.

23. As a result of GM's failure to disclose and failure to remedy the defect, Ms. Turay sustained fatal injuries in the Collision.

24. GM's actions and failures to act constitute deceptive trade practices and/or unfair trade practices in violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.*

25. GM is liable the wrongful death of Ms. Turay which resulted from its violations of the Oklahoma Consumer Protection Act. GM is liable for all damages recoverable pursuant to 12 O.S. § 1053.

26. GM's violations of the Oklahoma Consumer Protection Act constitute reckless, willful, intentional, and/or malicious conduct which was life-threatening to humans thereby justifying an award of punitive damages against GM pursuant to 23 O.S. § 9.1.

## COUNT III
### NEGLIGENCE CLAIM AGAINST MCCONNELL

27. McConnell was negligent in causing the Collision.

28.    As a result of Defendant's negligence, Ms. Turay sustained fatal injuries.

29.    McConnell is liable for the wrongful death of Ms. Turay. McConnell is liable for all damages recoverable pursuant to 12 O.S. § 1053.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount which is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code plus interest, attorney fees, costs, and all other relief which the Court deems just and proper.

Respectfully submitted,

KRIS TED LEDFORD, OBA #17552
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK  74055
Telephone: (918) 376-4610
Facsimile: (918) 376-4993
Email: kris@ledford-lawfirm.com

*Attorney for Plaintiffs*

ATTORNEY'S LIEN CLAIMED

S:\Psps\Pleadings\Word\2014.13.2 Petition.doc

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Scott Davidson
Direct Dial: 212-556-2164
sdavidson@kslaw.com

September 1, 2015

**Via E-Mail And/Or Overnight Delivery**
Kris Ted Ledford
Ledford Law Firm
Heritage Professional Plaza
425 E. 22nd St., Ste. 101
Owassa, OK  74055

Re:    *Pope, et al. v. General Motors LLC, et al.*
       **Case No.: CJ-2014-467 (Muskogee Cty., OK Dist. Ct.)**

Dear Counsel:

Reference is made to the *Complaint* ("**Pleading**") filed in the above-referenced lawsuit ("**Lawsuit**"), which seeks to hold General Motors LLC ("**New GM**") liable for various claims, as well as seeks punitive damages relating to vehicles/parts manufactured and sold by Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**").  From a review of the Pleading, it appears that Plaintiff is making allegations and asserting claims against New GM for economic damages and punitive damages that arise from the conduct of Old GM (and not New GM).  *See, e.g.*, Pleading ¶¶ 18, 20-26. The attempt to assert such claims against and seek such damages from New GM is a violation of the Sale Order and Injunction (as herein defined) entered by the Bankruptcy Court (as herein defined).  *See Decision on Motion to Enforce Sale Order, In re Motors Liquidation Company*, 529 B.R. 510 (Bankr. S.D.N.Y 2015) ("**Decision**"), as well as the Judgment entered by the Bankruptcy Court on June 1, 2015 ("**Judgment**").[1] As such, those claims and requests for punitive damages cannot be maintained against New GM.

The Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009 (as amended) ("**Sale Agreement**"), which was approved by an Order, dated July 5, 2009 ("**Sale Order and Injunction**"), of the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**"), is clear in this regard.  Specifically, under the Sale Agreement, New GM assumed only three categories of liabilities for vehicles and parts sold by Old GM: (a) post-sale accidents or incidents[2] involving Old GM vehicles causing personal injury, loss of life or property

---

[1]    A copy of the Judgment is annexed hereto as Exhibit "A."  The Judgment memorializes the rulings in the Decision, a copy of which is annexed hereto as Exhibit "B."
[2]    According to the Pleading, Plaintiff is asserting, among others, product liability claims resulting from an accident that took place after the closing of the sale from Old GM to New GM.  New GM assumed "Product Liabilities" (as

26665062v1

**EXHIBIT**

2

Kris Ted Ledford, Esq.
Sept. 1, 2015
Page 2

damage; (b) repairs provided for under the "Glove Box Warranty"—a specific written warranty, of limited duration, that only covers repairs and replacement of parts and not monetary damages; and (c) Lemon Law claims (as defined in the Sale Agreement) essentially tied to the failure to honor the Glove Box Warranty. All other liabilities relating to vehicles and parts sold by Old GM were "Retained Liabilities" of Old GM. *See* Sale Agreement § 2.3(b). To the extent the claims asserted in the Pleading and damages sought are based on a successor liability theory, they were not assumed by New GM and, accordingly, New GM cannot be liable to the Plaintiffs under that theory of recovery.

In addition, the Sale Agreement made clear that while New GM assumed liabilities for post-sale accidents involving Old GM vehicles directly causing personal injury, loss of life, or property damage, that obligation was for the assumption of compensatory damages only – not punitive damages. The Sale Agreement defines "damages" as all Losses other than punitive damages. Moreover, the word "directly" in the definition of Product Liabilities was specifically used to make clear that the only liabilities assumed by New GM for post-sale accidents are those damages directly related to the accident. Punitive damages which are assessed to deter future wrongful conduct of Old GM, unrelated to the specific accident, was never something that New GM assumed. The Bankruptcy Court has previously found that New GM only assumed the liabilities that were commercially necessary for its post-sale business activities. Punitive damages assessed to punish alleged pre-sale wrongful conduct of Old GM would never be something considered "commercially necessary." In fact, based on the subordinated priority of punitive damage claims in bankruptcy, even Old GM would not have been required to pay such damages. And, clearly, New GM did not assume an obligation that Old GM would never have been required to pay.

Various provisions of the Sale Agreement and the Sale Order and Injunction provide that New GM would have no responsibility for any liabilities (except for Assumed Liabilities, as defined in the Sale Agreement) predicated on Old GM conduct, relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009. *See, e.g.*, Sale Order and Injunction ¶¶ AA, 8, 46. The Sale Order and Injunction enjoins parties from bringing actions against New GM for unassumed Old GM liabilities. *Id.*, ¶ 8. It also provides that the Bankruptcy Court retains "exclusive jurisdiction to enforce and implement the terms and provision of [the] Order" including to "protect [New GM] against any of the [liabilities that it did not expressly assume under the Sale Agreement]." *Id.*, ¶ 71. If there is any ambiguity with respect to any of the foregoing -- which there should not be -- the exclusive forum to clarify that ambiguity is the Bankruptcy Court. The Bankruptcy Court has consistently exercised jurisdiction over issues such as those raised in the Lawsuit.[3]

The Bankruptcy Court recently issued the Judgment, which reiterated that "[e]xcept for Independent Claims and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking

---

defined in the Sale Agreement, as amended) for post-363 Sale accidents. As such, to the extent the Pleading asserts assumed Product Liabilities, those aspects of the Pleading would not be barred by the Sale Order and Injunction, the Sale Agreement or the Judgment. Note, however, that New GM disputes any and all liability for such claims.

[3]  *See, e.g., Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013); *Castillo v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-00509, 2012 WL 1339496 (Bankr. S.D.N.Y. Apr. 17, 2012), aff'd, 500 B.R. 333 (S.D.N.Y. 2013), aff'd, No. 13-4223-BK, 2014 WL 4653066 (2d Cir. Sept. 19, 2014). *See also Celotex Corp. v. Edward*, 514 U.S. 300 (1995).

Kris Ted Ledford, Esq.
Sept. 1, 2015
Page 3

to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order . . . ." Judgment ¶ 9; *see also* Decision, 529 B.R. at 528 ("Claims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand."). The reasoning and rulings set forth in the Judgment and Decision are equally applicable to the Lawsuit. To the extent that the Pleading asserts economic loss claims and/or requests punitive damages based on Old GM conduct, they are proscribed. Accordingly, the Pleading should be amended so that it is consistent with the rulings in the Judgment, Decision and Sale Order and Injunction.

The Judgment provides procedures for amending pleadings that violate the Judgment, Decision and Sale Order and Injunction. Specifically, it provides as follows:

> New GM is hereby authorized to serve this Judgment and the Decision upon any additional party (or his or her attorney) (each, an **"Additional Party"**) that commences a lawsuit and/or is not otherwise on Exhibits "A" through "D" hereto (each, an **"Additional Lawsuit"**) against New GM that would be proscribed by the Sale Order (as modified by the Decision and this Judgment). Any Additional Party shall have 17 business days upon receipt of service by New GM of the Decision and Judgment to dismiss, without prejudice, such Additional Lawsuit or the allegations, claims or causes of action contained in such Additional Lawsuit that would violate the Decision, this Judgment, or the Sale Order (as modified by the Decision and this Judgment).

Judgment ¶ 18(a). Accordingly, pursuant to the terms of the Judgment, you have 17 business days from receipt of the Decision and Judgment to amend the Pleading by striking the provisions that do not comply with the Judgment, Decision and Sale Order and Injunction.

To the extent you have a

> good faith basis to maintain that the Additional Lawsuit or certain allegations, claims or causes of action contained in such Additional Lawsuit should not be dismissed without prejudice, [you] shall, within 17 business days upon receipt of the Decision and Judgment, file with [the Bankruptcy Court] a No Dismissal Pleading explaining why such Additional Lawsuit or certain claims or causes of action contained therein should not be dismissed without prejudice. *The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment.* New GM shall file a response to the No Dismissal Pleading within 17 business days of service of the No Dismissal Pleading. The [Bankruptcy] Court will schedule a hearing thereon if it believes one is necessary.

*Id.* ¶ 18(b) (emphasis added).

If you fail to either timely strike the offending provisions in the Pleading or timely file a No Dismissal Pleading, New GM is permitted to file with the Bankruptcy Court a "notice of presentment on five (5) business days' notice, with an attached Dismissal Order that directs [you] to

Kris Ted Ledford, Esq.
Sept. 1, 2015
Page 4

dismiss without prejudice the [offending provisions in the Pleading] . . ., within 17 business days of receipt of the Dismissal Order." *Id.* ¶ 18(c).

This letter and its attachments constitute service on you of the Judgment and Decision, which triggers the provisions in paragraph 18 of the Judgment with respect to the Lawsuit.

New GM reserves all of its rights regarding any continuing violations of the Bankruptcy Court's rulings.

It is likely that based on a Case Management Conference held by Bankruptcy Judge Gerber on August 31, 2015, the briefing schedule for the No Strike/No Dismissal Pleading (in particular, your 17 business day time to respond to this letter) will be modified. We will send you the Case Management Order once it is entered which will reset the schedule. If you have any questions in the interim, please call me.

Very truly yours,

*/s/ Scott I. Davidson*

Scott I. Davidson

SD/hs
Encl.

Cc:    Mary Quinn Cooper

## Kris Ted Ledford

| | |
|---|---|
| **From:** | Davidson, Scott <SDavidson@KSLAW.com> |
| **Sent:** | Wednesday, September 02, 2015 4:26 PM |
| **To:** | Kris Ted Ledford |
| **Subject:** | RE: Pope v. GM, LLC - 9/1/2015 correspondence |
| **Attachments:** | GM - Sale Order with MSPA.pdf |

Kris:

Thank you for your e-mail and you are quite correct – I have the documents you requested at my fingertips. Please see attached. Please note that both documents are contained in one pdf as this is the way they were filed with the Bankruptcy Court. Also, please note that the Sale Order is redlined but, again, this is the way it was entered by the Bankruptcy Court. Please let me know if you need anything further.

Thank you
Scott

**Scott I. Davidson | King & Spalding LLP**
_____

Tel: 212.556.2164 | Fax: 212.556.2222 | E-mail: sdavidson@kslaw.com
1185 Avenue of the Americas | New York, New York 10036
_____
The information contained in this e-mail is personal and confidential and is intended for the recipient only. In the event that you have received this message in error, please delete it immediately and inform the sender as soon as possible.

**From:** Kris Ted Ledford [mailto:kris@ledford-lawfirm.com]
**Sent:** Wednesday, September 02, 2015 5:21 PM
**To:** Davidson, Scott
**Subject:** Pope v. GM, LLC - 9/1/2015 correspondence

Mr. Davidson,

I have reviewed your correspondence to me dated September 1, 2015.  While it appears based on your letter and the attached exhibits that the Decision and Judgment do not apply to the Pope lawsuit, I would like to review two documents referenced in your letter which were not included as exhibits:  (1) 6/26/2009 Amended and Restated Master Sale and Purchase Agreement and (2) 7/5/2009 Sale Order and Injunction.  As I am sure you have both of those documents readily available to you, please email those documents to me at your earliest convenience.  After I receive and review those documents, I will call you to discuss your letter.

Kris

Kris Ted Ledford
Ledford Law Firm
Heritage Professional Plaza
425 E. 22nd Street, Suite 101
Owasso, OK  74055
Phone (918) 376-4610
Fax (918) 376-4993
Email: kris@ledford-lawfirm.com

**EXHIBIT**

3

tabbies®

CONFIDENTIALITY NOTE:
This e-mail and any attachments are confidential and are protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or

use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.

---

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial: 212-556-2158
asteinberg@kslaw.com

September 4, 2015

**Via Email or Overnight Transmission**

RE:     *In re Motors Liquidation Company, et al.*
        **Case No. 09-50026 (REG)**

## Scheduling Order Entered by Bankruptcy Court on Sept. 3, 2015

Dear Counsel:

General Motors LLC ("**New GM**") previously served on you a demand letter ("**Demand Letter**") in connection with a lawsuit commenced by you against New GM which set forth certain deadlines for filings pleadings with the Bankruptcy Court (as defined in the Demand Letter). The attachment is a Scheduling Order entered by the Bankruptcy Court on September 3, 2015 ("**Scheduling Order**"). Please review the Scheduling Order as it modifies the time periods set forth in the Demand Letter for filing certain pleadings with the Bankruptcy Court, including without limitation, the 17 business days to respond to the Demand Letter.

If you have any objection to the procedures set forth in the Scheduling Order, you must file such objection in writing with the Bankruptcy Court within three (3) business days of receipt of this notice ("**Objection**"). Otherwise, you will be bound by the terms of the Scheduling Order and the determinations made pursuant thereto. If you believe there are issues that should be presented to the Court relating to your lawsuit that will not otherwise be briefed and argued in accordance with the Scheduling Order, you must set forth that position, with specificity in your Objection. The Court will decide whether a hearing is required with respect to any Objection timely filed and, if so, will, promptly notify the parties involved.

If you have any questions, please call me.

Very truly yours,

*/s/ Arthur Steinberg*

Arthur Steinberg

DMSLIBRARY01\21600\162081\26762997.v1-9/3/15



EXHIBIT

4

  

**Lieff
Cabraser
Heimann &
Bernstein**

Attorneys at Law

**HILLIARD MUÑOZ GONZALES ⅏**
TRIAL ATTORNEYS

September 4, 2015

Re:    *In Re General Motors LLC Ignition Switch Litigation*
       Case No. 14-MD-2543 (JMF); 14-MC-2543

THIS IS A COURT-ORDERED NOTIFICATION ABOUT YOUR CASE INVOLVING
GENERAL MOTORS LLC.  THE TEXT IN THE ATTACHED LETTER IS REQUIRED BY
THE HON. ROBERT E. GERBER, BANKRUPTCY JUDGE, S.D.N.Y.  IF YOU HAVE ANY
QUESTIONS ABOUT THE PROCEDURES, PLEASE CONTACT DAWN BARRIOS,
PLAINTIFFS' LIAISON COUNSEL TO THE MDL, AND/OR CO-LEAD PLAINTIFFS'
COUNSEL FOR THE MDL (STEVE BERMAN, ELIZABETH CABRASER, BOB HILLIARD),
WHOSE CONTACT INFORMATION IS ON GMIGNITIONMDL.COM.

<u>BE ADVISED THE BANKRUPTCY COURT HAS MODIFIED THE DEADLINE IMPOSED
BY THE JUDGMENT OF THE BANKRUPTCY COURT, DATED JUNE 1, 2015, TO FILE A
PLEADING IN THE BANKRUPTCY COURT.  UNLESS YOU CHOOSE TO OBJECT TO
THE PROCEDURES IN THE ATTACHED LETTER, \***OR**\* YOU WISH TO FILE YOUR
OWN PAPERS NOTWITHSTANDING YOUR RIGHT TO BE COVERED BY THE
FILINGS THAT DESIGNATED COUNSEL FOR PLAINTIFFS WILL BE MAKING IN THE
BANKRTUPCY COURT, YOU HAVE NO REQUIRED ACTIONS IN THE BANKRUPTCY
COURT AT THIS TIME.</u>

THIS IS A SUMMARY THAT IS NOT INTENDED TO SUBSTITUTE THE CONTENT IN
THE ATTACHED PAPERS.  PLEASE READ THE ATTACHED PAPERS CAREFULLY FOR
ALL THE DETAILS.

September 4, 2015
Page 2

Very truly yours,

| _/s/ Steve W. Berman_ | _/s/ Elizabeth J. Cabraser_ | _/s/ Robert C. Hilliard_ |
|---|---|---|
| Steve W. Berman | Elizabeth J. Cabraser | Robert C. Hilliard |
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd. |
| Suite 3300 | 29th Floor | Suite 500 |
| Seattle, WA 98101 | San Francisco, CA 94111-3339 | Corpus Christi, TX 78401 |

-and-                           -and-

555 Fifth Avenue              250 Hudson Street
Suite 1700                    8th Floor
New York, NY 10017            New York, NY 10013-1413

1272388.1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------x

## SCHEDULING ORDER REGARDING CASE MANAGEMENT ORDER RE: NO-STRIKE, NO STAY, OBJECTION, AND GUC TRUST ASSET PLEADING

Upon the Court's Case Management Order, dated August 19, 2015 ("**August 19 Order**"), regarding issues related to No-Strike, No Stay, Objection and GUC Trust Asset Pleadings (each as defined in the Court's Judgment, dated June 1, 2015 ("**Judgment**")); and upon responses thereto being filed on August 26, 2015 by certain parties in connection with the issues raised in the August 19 Order; and upon the record of the Case Management Conference held before the Court on August 31, 2015 ("**August 31 Conference**"); and due and proper notice of the August 31 Conference having been provided; and the Court having issued directives from the bench at the August 31 Conference in connection with the issues raised thereat which are memorialized in this Order. Accordingly, it is hereby

ORDERED that the following procedures shall apply:

1.  The briefing schedule with respect to the issue ("**Punitive Damages Issue**") in complaints filed against General Motors LLC ("**New GM**") that request punitive/special/exemplary damages against New GM based in any way on the conduct of Motors Liquidation Co. (f/k/a General Motors Corporation) ("**Old GM**"), shall be as follows: (i) simultaneous opening briefs shall be filed by Sunday, September 13, 2015 at 12:00 noon (Eastern Time), and shall be no longer than 25 pages; and (ii) simultaneous reply briefs shall be filed by no later than Tuesday, September 22, 2015 at 12:00 noon (Eastern Time), and shall be no longer than 10 pages.[1] Designated Counsel for the Bellwether Cases (as herein

---

[1]   Hard copies of the briefs referred to in this paragraph may be delivered to Chambers the next business day.

26744235v2

defined) and Designated Counsel for the Economic Loss Claims asserted in MDL 2543 shall try to coordinate the responses from various plaintiffs in order to minimize the number of briefs filed on this issue.

2.    The briefing schedule with respect to whether causes of action in complaints filed against New GM relating to Old GM vehicles/parts based on the knowledge Old GM employees gained while working for Old GM and/or as reflected in Old GM's books and records transferred to New GM can be imputed to New GM ("**Imputation Issue**"), shall be as follows: (i) simultaneous opening briefs shall be filed by Friday, September 18 2015, and shall be no longer than 20 pages; and (ii) simultaneous reply briefs shall be filed by no later than Wednesday September 30, 2015, and shall be no longer than 10 pages.

3.    With respect to the complaints in the six bellwether cases (collectively, the "**Bellwether Cases**") identified in MDL 2543 pending in the United States District Court for the Southern District Of New York:[2]

a.    On or before September 21, 2015, New GM shall file with the Court and serve on counsel of record in such cases    (i) marked complaints ("**Bellwether Marked Complaints**") with respect to the Bellwether Cases, showing which portions thereof New GM contends violate the Judgment, this Court's *Decision on Motion to Enforce Sale Order*, dated April 15, 2015 ("**Decision**"),[3] and/or the Order of this Court dated July 5, 2009 ("**Sale Order and Injunction**") and (ii) a letter, not to exceed three (3) single-spaced pages for all the Bellwether Cases, setting forth New GM's position with respect to the Bellwether Marked Complaints ("**New GM Bellwether Letter**"); and

b.    On or before September 28, 2015, the plaintiffs in the Bellwether Cases shall file with the Court and serve on counsel of record in such cases their commentary next to the comments made by New GM with regard to the Bellwether Marked Complaints, together with a letter, not to exceed three (3) single-spaced pages for all the Bellwether Cases, responding to the Bellwether Marked Complaints and the New GM Bellwether Letter.

---

[2]    The plaintiffs in the Bellwether Cases are (i) Scheuer, (ii) Barthelemy and Spain, (iii) Reid, (iv) Cockram, (v) Norville, and (vi) Yingling. Each of the plaintiffs in the Bellwether Cases are seeking, among other damages, compensation for property damage to their respective vehicles that occurred or was sustained in the applicable incident ("**Property Damage**"). The plaintiffs acknowledge that they are not seeking to recover damages for devaluation of their respective vehicles that is independent of Property Damage ("**Vehicle Devaluation Damages**"). To the extent that any of the requests for damages in the complaints in the Bellwether Cases can be construed to include Vehicle Devaluation Damages, the complaints are deemed to be amended to exclude Vehicle Devaluation Damages. In particular (i) paragraphs 367-369 of the complaint in *Norville v. General Motors, LLC* (Case No. 14-cv-08176) (S.D.N.Y.) and (ii) paragraphs 415-417 of the complaint in *Cockram v. General Motors, LLC* (Case No. 14-cv-08176) (S.D.N.Y.), shall be deemed amended to exclude any request for Vehicle Devaluation Damages. New GM will submit the Bellwether Marked Complaints with the assumption that such amendments were made.

[3]    *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).

4.      With respect to the Second Amended Consolidated Complaint filed in MDL 2543 ("SACC"):

    a.      On or before September 23, 2015, New GM shall file with the Court and serve as appropriate (i) a marked-up version of the Second Amended Consolidated Complaint ("**Marked SACC**"), showing which portions thereof New GM contends violate the Judgment, the Decision and/or the Sale Order and Injunction, and (ii) a letter, not to exceed five (5) single-spaced pages, setting forth New GM's position with respect to the Marked SACC ("**New GM Marked SACC Letter**"); and

    b.      On or before September 30, 2015, the Designated Counsel for the plaintiffs named in the Second Amended Consolidated Complaint shall file with the Court and serve on counsel of record in such cases their commentary next to the comments made by New GM with regard to the Marked SACC, together with a letter, not to exceed five (5) single-spaced pages, responding to the Marked SACC and New GM Marked SACC Letter.

    c.      Due to the length of the SACC, New GM and Designated Counsel are directed to consult with each other to see if there is an agreed-upon procedure such that the Marked SACC, and the response thereto, can be stream-lined, so that the relevant, representative issues are efficiently presented to this Court for resolution.

5.      With respect to the complaints filed in *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CUBT-CXC (Orange County, Cal.) and *State of Arizona v. General Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.) (collectively, the "**State Complaints**"):

    a.      On or before September 23, 2015, New GM shall file with the Court and serve on counsel of record in such cases (i) a marked-up version of the State Complaints ("**Marked State Complaints**"), marked to show which portions thereof New GM contends violate the Judgment, the Decision and/or the Sale Order and Injunction, and (ii) a letter, not to exceed five (5) single-spaced pages for the States' Complaints, setting forth New GM's position with respect to the Marked State Complaints ("**New GM Marked State Complaint Letter**"); and

    b.      On or before September 30, 2015, the plaintiffs named in the State Complaints shall file with the Court and serve on counsel of record in such cases their commentary next to the comments made by New GM with regard to the Marked State Complaints, together with a letter, not to exceed five (5) single-spaced pages for the States' Complaints, responding

3

to the Marked State Complaints and New GM Marked State Complaints Letter.

6. The Court has scheduled oral argument for the matters covered by paragraphs 1-5 for October 14, 2015 at 9:45 a.m.

7. The parties agree that no further pleadings relating to the GUC Trust Asset Pleading need be submitted and no side has requested oral argument with respect to such Pleading.

8. Counsel for the plaintiffs in *Bavlsik v. General Motors LLC* ("**Bavlsik Lawsuit**") pending in the United States District Court for the Eastern District of Missouri has notified New GM that they will withdraw their claim for punitive damages in order to promptly proceed to trial in the *Bavlsik* Lawsuit. Accordingly, there is no need for this Court to deal with the *Bavlsik* Lawsuit at this time.

ORDERED that within two (2) business days of the entry of this Scheduling Order, New GM shall serve, by either e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, a copy of this Scheduling Order on plaintiffs in any lawsuit where New GM has previously sent a demand letter as authorized by the Judgment, with a cover note that states as follows:

General Motors LLC ("**New GM**") previously served on you a demand letter ("**Demand Letter**") in connection with a lawsuit commenced by you against New GM which set forth certain deadlines for filings pleadings with the Bankruptcy Court (as defined in the Demand Letter). The attachment is a Scheduling Order entered by the Bankruptcy Court on September 3, 2015 ("**Scheduling Order**"). Please review the Scheduling Order as it modifies the time periods set forth in the Demand Letter for filing certain pleadings with the Bankruptcy Court, including without limitation, the 17 business days to respond to the Demand Letter.

If you have any objection to the procedures set forth in the Scheduling Order, you must file such objection in writing with the Bankruptcy Court within three (3) business days of receipt of this notice ("**Objection**"). Otherwise, you will be bound by the terms of the Scheduling Order and the determinations made pursuant thereto. If you believe there are issues that should be presented to the Court relating to your lawsuit that will not otherwise be briefed and argued in accordance with the Scheduling Order, you must set forth that position, with specificity in your Objection. The Court will decide whether a hearing is required with respect to any Objection timely filed and, if so, will, promptly notify the parties involved.

and it is further

4

ORDERED that in the event New GM believe there are issues to be decided by the Court in actions that received a demand letter that are not covered in paragraphs 1-5 above, New GM shall file with the Court and serve on counsel of record in such representative case(s) on or before September 23, 2015 (i) a marked-up version of their complaints (**"Other Plaintiffs' Complaints"**), showing which portions thereof New GM contends violate the Judgment, the Decision and/or the Sale Order and Injunction, and (ii) a letter, not to exceed three (3) single-spaced pages for the Other Plaintiffs' Complaints, setting forth New GM's position with respect to the Marked Other Plaintiffs' Complaints (**"New GM Marked Other Plaintiffs' Complaints Letter"**); and it is further

ORDERED that on or before September 30, 2015, the plaintiffs named in the Other Plaintiffs' Complaints shall file with the Court and serve on counsel of record in such cases their commentary next to the comments made by New GM with regard to the Other Plaintiffs' Complaints, together with a letter, not to exceed three (3) single-spaced pages for the Other Plaintiffs' Complaints, responding to the Marked Other Plaintiffs' Complaints and the New GM Marked Other Plaintiffs' Complaints Letter; and it is further

ORDERED that nothing in this Order is intended to nor shall preclude any other plaintiff's counsel (or *pro se* plaintiff), affected by the issues being resolved by this Court, from taking a position in connection with any such matters; *provided, however,* that such affected other plaintiffs' counsel who wishes to file a separate pleading with respect such matter(s) shall timely file a letter with the Court seeking permission to do so. Such letter shall specify (a) which issue is to be covered, (b) the length of the pleading sought to be filed, and (c) why such issue is not otherwise covered by the pleading to be filed by Designated Counsel. Prior to such time, such counsel shall consult with the Designated Counsel for the Bellwether Cases and Designated

Counsel for the Plaintiffs in MDL 2543 so as to avoid duplicative arguments and in an effort to limit the number of responsive briefs on the same issue(s); and it is further

ORDERED that, as stated on the record of the August 31 Conference, for all plaintiffs that have received a demand letter from New GM where the time period to file a No Strike, No Stay, and No Dismissal Pleading as set forth in the Judgment ("**Judgment Pleading**") had not expired as of the August 31 Conference, the briefing schedule set forth herein shall supersede the requirement to file such Judgment Pleadings; and it is further

ORDERED that this Court shall retain exclusive jurisdiction to interpret and enforce this Order.

Dated: September 3, 2015
      New York, New York

                                  **s/ Robert E. Gerber**
                          UNITED STATES BANKRUPTCY JUDGE

**BROWN**RUDNICK

EDWARD S. WEISFELNER
direct dial: (212) 209-4900
fax: (212) 938-2900
eweisfelner@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

September 2, 2015

**VIA E-MAIL**

The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

RE:   **In re Motors Liquidation Company,** *et al.*
      **Case No. 09-50026 (REG)**

      **Proposed Scheduling Order Regarding Case Management Order**
      **re:  No-Strike, No Stay, Objection, And GUC Trust Asset Pleadings.**

Dear Judge Gerber:

        We write on behalf of Co-Lead and Designated Counsel for the Economic Loss Claims
asserted in MDL 2543, the People of California and the State of Arizona, and General Motors LLC
("**New GM**") with respect to the agreed proposed Scheduling Order Regarding Case Management
Order re:  No-Strike, No Stay, Objection, and GUC Trust Asset Pleadings, filed contemporaneously
herewith (the "**Proposed Scheduling Order**"), and specifically with respect to the time for New
GM to file and serve the Marked SACC, New GM Marked SACC Letter, Marked State Complaints
and New GM Marked State Complaint Letter (each as defined in the Proposed Scheduling Order)
and the amount of time Designated Counsel and the States shall have to file and serve their
responsive commentary and letters under the Proposed Scheduling Order.  The parties understand
Your Honor's comments at the Case Management Conference on August 31, 2015 to have the
marked pleadings and responses all done by September 30, 2015, but each of the parties believes that
more time is necessary given the other matters to be addressed under the Proposed Scheduling
Order, and the tasks involved in marking and commenting on these lengthy pleadings. We note that
the pleadings for which additional time is sought do not affect the Bellwether Cases, which are the
most time-sensitive cases before Judge Furman.  As a consequence, the parties respectfully request
that Your Honor so order the following proposed amendment to the Proposed Scheduling Order:

Honorable Robert E. Gerber
September 2, 2015
**BR** Page 2

(i)    New GM's Marked SACC, the New GM Marked SACC Letter, New GM's Marked State Complaints and the New GM Marked State Complaint Letter shall be filed and served on or before Friday, September 25, 2015; and

(ii)    Designated Counsel's and the States' responsive commentary and letters under the Proposed Scheduling Order shall be filed and served on or before 14 days thereafter.

For the avoidance of doubt, all other terms of the Proposed Scheduling Order remain unmodified. We thank the Court in advance for its consideration.

Respectfully submitted,

_/s/ Steve W. Berman_
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101

*Co-Lead Counsel in the MDL Proceeding*
*for the Economic Loss Plaintiffs and for the*
*People of California and the State of Arizona*

_/s/ Edward S. Weisfelner_
Edward S. Weisfelner
BROWN RUDNICK LLP
7 Times Square
New York, New York 10036

*Designated Counsel for the*
*Economic Loss Plaintiffs*

_/s/ Elizabeth J. Cabraser_
Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111

*Co-Lead Counsel in the MDL Proceeding*
*for the Economic Loss Plaintiffs*

_/s/ Sander L. Esserman_
Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, P.C.
2323 Bryan Street, Suite 2200
Dallas, Texas 75201

*Designated Counsel for the*
*Economic Loss Plaintiffs*

_/s/ Arthur Steinberg_
Arthur Steinberg
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036

*Counsel for New GM*

cc:    Honorable Jesse M. Furman (via overnight mail)
       Scott Davidson
       John G. Simon
       Kevin M. Carnie, Jr.
       Richard C. Godfrey, P.C.
       Andrew B. Bloomer, P.C.
       Robert Hilliard

BR  Honorable Robert E. Gerber
September 2. 2015
Page 3

Jonathan Flaxer
Matt Williams
Lisa Rubin
Daniel Golden
Deborah Newman
William P. Weintraub
Greg Fox

Endorsed Order:


Approved. To the extent dates in this letter are inconsistent with the Proposed Scheduling Order, the dates in this letter will trump them.


Dated:  New York, New York                              _____*s/ Robert E. Gerber*_____
        September 3, 2015                               United States Bankruptcy Judge

## LEDFORD LAW FIRM
### ATTORNEY AT LAW
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK  74055
Telephone (918) 376-4610
Facsimile (918) 376-4993

Writer's Extension #:  303
Email:  kris@ledford-lawfirm.com

September 15, 2015

**Via Email (sdavidson@kslaw.com) and Regular Mail**
Scott Davidson
King & Spalding
1185 Avenue of the Americas
New York, NY  10036-4003

Re:    *Pope v. General Motors, et. al*
Muskogee County Court Case No. CJ-2014-467

Dear Mr. Davidson:

I am writing in response to your correspondence dated September 1, 2015.

Following receipt of your correspondence, I emailed you requesting additional
documentation. Thank you for emailing the requested documents. Having now reviewed
your September 1st letter, the Decision, the Judgment, the Order authorizing Sale, and the
Sale Agreement, I am writing to request an explanation of why you have concluded that
the Pope lawsuit is affected by the Decision and Judgment.

As I read the Judgment, it relates to Ignition Switch Plaintiffs, Pre-Closing Accident
Plaintiffs, and Non-Ignition Switch Plaintiffs. Ignition Switch Plaintiffs are *non-accident
economic loss[1]* claims. Pre-Closing Accident Plaintiffs are claims based on accidents that
occurred *prior* to the 363 sale closing which occurred in 2009. Non-Ignition Switch
Plaintiffs are plaintiffs who have sued New GM for *economic losses* based on an alleged
defect other than the Ignition Switch in an Old GM vehicle. On page 19 of the Decision,
the Court further explains this category of claims as follows:

The other category of Plaintiffs later coming into the picture ("Non-Ignition
Switch Plaintiffs") brought actions asserting Economic Loss claims as to

---

[1]    In the Decision, the Court identifies "economic loss" claims as claims "for alleged reduction in the resale
value of affected cards, other economic loss (such as unpaid time off from work when getting an ignition
switch replaced), and inconvenience." *See* Decision at p. 18. The claims in the Pope case are wrongful
death claims brought under Oklahoma law arising out of a fatality accident in which an airbag failed to
deploy. Clearly, the wrongful death claims in Pope are not what the Court was contemplating as being
within the scope of "economic loss" claims.

**EXHIBIT**
**5**

Mr. Davidson
September 15, 2015
Page 2 of 2

GM branded cars that *did not have* Ignition Switch Defects, including cars
made by New GM and Old GM alike.  In fact, most of their cars did not
have defects, and/or were not the subject of recalls, at all.  But they contend,
in substance, that the Ignition Switch Defect caused damage to "the brand"
resulting in Economic Loss to them.

Please identify which of these categories of claims GM contends the Pope case falls within
and explain the basis for GM's position.  I do not want to get involved in bankruptcy
proceedings without a clear understanding of whether and why my case would be
implicated by the bankruptcy proceedings.

On page 2 of your September 1st letter, you make a statement that the Sale Agreement only
provided for the assumption of compensatory damages and not punitive damages.  Please
identify the page number of the Sale Agreement on which you base that statement.  In your
letter, you reference the Sale Agreement definition of damages but the assumption
provision (Section 2.3(a)(ix)) in the First Amended to the Sale Agreement does not
reference damage (other than property damage) and instead references "all Liabilities to
third parties for death . . ."  Is GM now taking the position that "all" does not really mean
"all"?  Given this language, I do not understand the basis for the statement in your letter.
In addition to identifying the references from the Sale Agreement on which you rely, please
provide a more detailed explanation for your statement.

Subsequent to receipt of your September 1st letter, I received another letter from a member
of your firm dated September 4th which purports to advise me of briefing deadlines in the
bankruptcy matter.  Upon my review of the September 4th letter, I did not locate any
discussion of wrongful death products liability cases such as the Pope case.  Please advise
what portion of the scheduling order referenced in the September 4th letter which GM
contends is applicable to the Pope lawsuit.

I look forward to hearing from you in the near future.

Sincerely,

KRIS TED LEDFORD

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Scott Davidson
Direct Dial: 212-556-2164
sdavidson@kslaw.com

May 16, 2016

**Via E-Mail Transmission**
Kris Ted Ledford, Esq.
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK 74055

Re:   *Pope v. General Motors Co., et al.*
      **Case No.: CJ-2014-467**

Dear Counsel:

By this letter, General Motors LLC ("**New GM**") demands that certain allegations, claims and damage requests made in the Petition filed in the above referenced lawsuit be withdrawn due to the requirements of federal bankruptcy law, for the reasons explained below.[1]

Plaintiff is violating the Sale Order and Injunction[2] entered by the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**"), as well as certain recent decisions and judgments entered by the Bankruptcy Court.[3]  The following allegations, claims and damage requests are legally barred:

- Allegations that New GM is the successor of Old GM (no matter how phrased) (*see* Petition, ¶ 2);

---

[1]   You were previously sent a letter in connection with this Lawsuit in September 2015 ("**2015 Letter**"), highlighting issues with the Petition and explaining that the Petition needed to be amended.  At that time, the Bankruptcy Court had not yet issued the November Decision and December Judgment (each as defined below).  These rulings mandate the amendment of the Petition, as explained herein.

[2]   A copy of the Sale Order and Injunction (with the Sale Agreement attached thereto) is annexed hereto as **Exhibit "A."**

[3]   *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y 2015) ("**April Decision**"); Judgment entered by the Bankruptcy Court on June 1, 2015 ("**June Judgment**"); *In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015) ("**November Decision**"); and Judgment entered by the Bankruptcy Court on December 4, 2015 ("**December Judgment**").  Copies of the June Judgment and December Judgment are annexed hereto as **Exhibit "B"** and **Exhibit "C,"** respectively.  Copies of the two published decisions of the Bankruptcy Court can be provided upon request.

EXHIBIT

tabbies®

6

Kris Ted Ledford, Esq.
May 16, 2016
Page 2

- Allegations that merely refer to "GM" and do not distinguish between Old GM and New GM (*see* Petition, ¶¶ 17-26);

- Allegations that New GM designed, manufactured, tested, marketed and/or distributed the subject vehicle, a 2001 Cadillac DeVille ("**Subject Vehicle**"), or performed other conduct relating to the Subject Vehicle before the closing of the Sale from Old GM to New GM (*see* Petition, ¶ 18);

- Claims based on (i) an alleged failure to identify or remedy a defect, and (ii) alleged violations of a consumer protection statute (*see* Petition, ¶¶ 19-26); and

- All requests for punitive damages as against New GM.

**Applicable Bankruptcy Court Rulings**

The Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009 (as amended) ("**Sale Agreement**"), which was approved by an Order, dated July 5, 2009 ("**Sale Order and Injunction**") of the Bankruptcy Court, provides that New GM assumed only three categories of liabilities for vehicles sold by Old GM: (a) post-sale accidents or incidents involving Old GM vehicles causing personal injury, loss of life or property damage; (b) repairs provided for under the "Glove Box Warranty"—a specific written warranty, of limited duration, that only covers repairs and replacement of parts and not monetary damages; and (c) Lemon Law claims (as defined in the Sale Agreement) essentially tied to the failure to honor the Glove Box Warranty. All other liabilities relating to vehicles sold by Old GM were "Retained Liabilities" of Old GM. *See* Sale Agreement § 2.3(b). To the extent the claims asserted in the Petition are based on a successor liability theory or otherwise constitute Retained Liabilities, they were not assumed by New GM and, accordingly, New GM cannot be liable to Plaintiff for such claims. *See* Sale Order and Injunction, ¶¶ 7, 46; Sale Agreement, §§ 2.3(a), 2.3(b).

Paragraph 14 of the December Judgment provides as follows:

Plaintiffs of two types—1) plaintiffs whose claims arise in connection with vehicles without the Ignition Switch Defect, and 2) Pre-Closing Accident Plaintiffs—are not entitled to assert Independent Claims against New GM with respect to vehicles manufactured and first sold by Old GM (an "Old GM Vehicle"). To the extent such Plaintiffs have attempted to assert an Independent Claim against New GM in a pre-existing lawsuit with respect to an Old GM Vehicle, such claims are proscribed by the Sale Order, April Decision and the Judgment dated June 1, 2015[.]

The Plaintiff in the Lawsuit does not have a claim based on the Ignition Switch Defect and therefore is prohibited from asserting an Independent Claim[4] against New GM.

---

[4]    The term "Independent Claim" was defined by the Bankruptcy Court in paragraph 4 of the June Judgment as "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct."

Kris Ted Ledford, Esq.
May 16, 2016
Page 3

The December Judgment also described the types of allegations that cannot be made in complaints asserting claims against New GM based on Old GM vehicles. Specifically, Plaintiff is prohibited from making allegations: (i) that New GM is the successor of Old GM (no matter how phrased) (*see* December Judgment, ¶ 16); (ii) that do not distinguish between Old GM and New GM (*see id.* ¶ 17); or (iii) that allege or suggest that New GM manufactured or designed an Old GM vehicle, or performed other conduct relating to an Old GM vehicle before the entry of the Sale Order and Injunction (*i.e.*, July 10, 2009) (*see id.* ¶ 18).

Moreover, the December Judgment determines that the Sale Agreement does not provide for the assumption by New GM of punitive damages relating to Product Liabilities. Parties such as Plaintiff can only seek compensatory damages. *See* December Judgment, ¶ 6 ("New GM did not contractually assume liability for punitive damages from Old GM.").

**The Barred Allegations, Claims and Requests for Damages in the Petition**

The Bankruptcy Court's rulings apply to Plaintiff's lawsuit. As set forth on pages 1 and 2 above, the Petition contains allegations that are prohibited by the December Judgment, requiring that the Complaint be amended.

Moreover, the Sale Order and Injunction enjoins parties from bringing actions against New GM for Retained Liabilities of Old GM. *Id.*, ¶ 8. Under the December Judgment, Non-Ignition Switch Plaintiffs (like Plaintiff) are barred from asserting any claims (other than Assumed Liabilities) against New GM. *See* December Judgment, ¶ 14. The December Judgment specifically provides that New GM did not assume various claims and/or causes of action when it agreed to assume Product Liabilities. The non-assumed liabilities include claims based on an alleged failure to identify or remedy a defect, and alleged violations of a consumer protection statute fraud. *See* December Judgment, ¶¶ 19, 31. Proscribed causes of action contained in the Petition are set forth on page 2 above.

In addition, because New GM did not assume punitive damages in connection with its assumption of Product Liabilities, and Plaintiff is a Non-Ignition Switch Plaintiff, the request for punitive damages against New GM violates the Sale Order and Injunction, and the Bankruptcy Court's rulings. All requests for punitive damages as against New GM must be stricken from the Petition.

**Conclusion**

The December Judgment stays the Lawsuit until all violations of the Sale Order and Injunction, and the Bankruptcy Court's other rulings, are sufficiently addressed. *See, e.g.*, December Judgment, ¶¶ 16, 17, 18. Please let us know by May 23, 2016 whether you will take the requested action and comply with the Bankruptcy Court's rulings.

New GM reserves all of its rights regarding any continuing violations of the Bankruptcy Court's rulings, including, but not limited to seeking all available relief if it is determined that there is a willful violation of the Sale Order and Injunction and the Bankruptcy Court's other rulings, particularly where Plaintiff previously received the 2015 Letter, which put Plaintiff on notice of applicable Bankruptcy Court rulings and the need to amend the Petition. *See FirstBank Puerto Rico*

Kris Ted Ledford, Esq.
May 16, 2016
Page 4

v. *Barclays Capital Inc. (In re Lehman Brothers Holdings Inc.)*; Summary Order, Case No. 15-149-br. (2d Cir. March 29, 2016).

If you have any questions, please call me.

Very truly yours,

*/s/ Scott I. Davidson*

Scott I. Davidson

SD/hs
Encl.

cc:    Mary Quinn Cooper, Esq.

**LEDFORD LAW FIRM**
ATTORNEY AT LAW
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK 74055
Telephone (918) 376-4610
Facsimile (918) 376-4993

Writer's Extension #: 303
Email: kris@ledford-lawfirm.com

June 17, 2016

**Via Email (sdavidson@kslaw.com) Only**
Scott Davidson
King & Spalding
1185 Avenue of the Americas
New York, NY 10036-4003

Re:   *Pope v. General Motors, et. al*
Muskogee County Court Case No. CJ-2014-467

Dear Mr. Davidson:

Please accept my apologies for the delay in responding to your May 16, 2016 letter. I have been tied up on several matters with pressing deadlines and just had a chance to study your letter. I am writing this letter in a good faith effort to resolve these issues amicably and efficiently.

You identified five (5) "allegations, claims and damage requests" which you contend are legally barred by the Bankruptcy Court's rulings. Each of these will be addressed in the order you presented them.

   1. Allegations that New GM is the successor of Old GM (no matter how phrased) (*see* Petition, ¶ 2)

While I did not allege that New GM was the successor to Old GM, I am agreeable to making this issue clear by amending Paragraph 2 as shown in the attached redlined Amended Petition. I believe this slight modification should address any concerns you have raised.

   2. Allegations that merely refer to "GM" and do not distinguish between Old GM and New GM (*see* Petition, ¶¶ 17-26)

In the Petition, I did not blur the lines as you suggest. The named Defendant in the Pope case is General Motors Company a/k/a General Motors LLC. Immediately after identifying this defendant, I noted that it would be referred to throughout the remainder of the Petition as GM. While I subsequently mentioned General Motors Corporation in

**EXHIBIT**

**7**

Mr. Davidson
June 17, 2016
Page 2 of 3

Paragraph 2 of the Petition, I did not use any short-form reference for this entity and always used the full name of this entity. The remainder of the Petition only related to GM which was clearly identified as General Motors Company a/k/a/ General Motors LLC. In the enclosed Amended Petition, I have added language concerning General Motors Corporation in Paragraph 19 and again utilized the full name for this entity. Unlike other plaintiffs' attorneys, I have not tried to combine Old GM and New GM. Accordingly, I fail to understand why you believe any changes to the Petition are required for this issue.

3. Allegations that New GM designed, manufactured, tested, marketed and/or distributed the subject vehicle, a 2001 Cadillac DeVille ("Subject Vehicle"), or performed other conduct relating to the Subject Vehicle before the closing of the Sale form Old GM to New GM (*see* Petition, ¶ 18)

Upon review of Paragraph 18 of the Petition, I agree that "GM" needs to be removed from that allegation since "GM" was not involved in that conduct. The enclosed redlined Amended Petition makes this change.

4. Claims based on (i) an alleged failure to identify or remedy a defect, and (ii) alleged violations of a consumer protection statute (*see* Petition, ¶¶ 19-26)

These claims are proper under the Bankruptcy Court's rulings. As the Bankruptcy Court repeatedly stated, conduct by New GM is not part of the bankruptcy, is not an Assumed Liability, and instead is simply conduct by New GM for which non-bankruptcy courts will decide liability. *See In re: Motors Liquidation Company*, 541 B.R. 104, 129 (S.D.N.Y. Bank. 2015). In the December 4, 2015 Judgment, the Bankruptcy Court addresses this type of claim in Paragraphs 19 and 20 of the Judgment by ruling, "The Court expresses no view whether such claims may, however, constitute viable Independent Claims against New GM if they are based on New GM knowledge or conduct." *See* Judgment at pp. 6-7. My allegations in this regard relate solely to New GM. Given these rulings, I fail to understand why you contend that the Bankruptcy Court has somehow required these claims to be dismissed.

5. All requests for punitive damages as against New GM

The claim that the Bankruptcy Court rulings require all requests for punitive damages against New GM to be stricken is simply not true. While I will agree that the Bankruptcy Court ruled that punitive damages were not part of the Assumed Liabilities, the Bankruptcy Court clearly identified two other ways that plaintiffs in actions based on post-closing accidents could recover punitive damages from New GM. In the November 9, 2015 ruling, the Bankruptcy Court recognized that such plaintiffs could recover punitive damages based on the following two pathways: (1) based on Old GM knowledge or conduct in instances where information about such Old GM conduct was "inherited" by New GM and (2) based on information developed solely by New GM post-sale. *See In re: Motors Liquidation Company*, 541 B.R. at 117-122 (S.D.N.Y. Bank. 2015). The Bankruptcy Court explained that under this first scenario "New GM might have acquired relevant knowledge when former Old GM employees came over to New GM or New GM took custody of what

Mr. Davidson
June 17, 2016
Page 3 of 3

previously were Old GM records." *Id.* at 122. The Bankruptcy Court held, "Reliance on that, for punitive damages purposes, is permissible." *Id.* The Bankruptcy Court also ruled that "[i]nformation obtained by New GM after the Sale . . . may be used for punitive damages purposes as well." *Id.* I fully intend to abide by the Bankruptcy Court's rulings; however, your claim that all punitive damage claims must be dismissed is simply not correct. To make clear my intent to comply with the Bankruptcy Court's rulings, I have made changes to Paragraphs 18 and 19 which are reflected in the redlined Amended Petition enclosed herewith.

On page 2 of your letter, you quote from Paragraph 14 of the December Judgment and attempt to utilize that paragraph as a basis to argue that it prohibits the Pope plaintiffs from asserting an Independent Claim. That is not the effect of Paragraph 14 at all. Your argument takes this paragraph completely out of context and ignores the simple fact that the products liability claims reviewed by the Bankruptcy Court happen to have been focused on ignition switch defects. The Bankruptcy Court clearly recognized that all products liability claims concerning vehicles manufactured by Old GM which were involved in post-sale accidents are Assumed Liabilities. The products liability claims were not limited to ignition switch defects. The Bankruptcy Court also clearly explained that Independent Claims could be brought against New GM based on its own knowledge and conduct. *See* December Judgment at ¶ 19.

Upon review of the redlined Amended Petition, please advise if you agree these changes are sufficient to show compliance with the Bankruptcy Court's rulings. I look forward to hearing from you in the near future.

Sincerely,

KRIS TED LEDFORD

Enclosure

cc: Brita Cantrell (w/enclosure) (via email only)

IN THE DISTRICT COURT OF MUSKOGEE COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER POPE and GWENDOLYN POPE, individually and as co-personal representatives of the Estate of LESLEY CARYN TURAY, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS COMPANY A/K/A GENERAL MOTORS LLC, a foreign limited liability company; REGAL CAR SALES AND CREDIT, LLC, an Oklahoma limited liability company; SABER ACCEPTANCE COMPANY, LLC, an Oklahoma limited liability company; ELCO CHEVROLET, INC., a foreign company; SPECIALTY LEASE INVESTMENTS, LLC, a foreign limited liability company; and SOTHEA RENORDO MCCONNELL, an individual, <br><br> Defendants. | Case No. CJ-2014-467 <br><br> JURY TRIAL DEMANDED <br><br> KTL DRAFT 6/17/16 |

AMENDED PETITION

Plaintiffs, Christopher Pope and Gwendolyn Pope, for their cause of action against

Defendants allege and state as follows:

PARTIES

1.    Plaintiffs, Christopher Pope and Gwendolyn Pope, are the natural children and co-

personal representatives of the Estate of Lesley Caryn Turay ("Ms. Turay").

2.    Defendant, General Motors Company a/k/a General Motors LLC ("GM"), is a

limited liability company formed under the laws of the state of Delaware with its principal place

of business located in Detroit, Michigan.  In 2009, GM acquired substantially all assets and

assumed certain liabilities of ~~its predecessor in interest,~~ General Motors Corporation~~:~~ in the

course of a Chapter 11 bankruptcy. GM assumed liability for product defect claims which arose

out of accidents that occurred after the bankruptcy filing involving vehicles manufactured by

General Motors Corporation prior to the bankruptcy.  GM also inherited knowledge previously possessed by General Motors Corporation concerning vehicles and defects.

3.      Defendant, Regal Car Sales and Credit, LLC ("REGAL"), is an Oklahoma limited liability company.

4.      Defendant, Saber Acceptance Company, LLC ("SABER"), is an Oklahoma limited liability company.

5.      Defendant, Elco Chevrolet, Inc. ("ELCO"), is a Missouri corporation.

6.      Defendant, Specialty Lease Investments, LLC ("SLI"), is a Missouri limited liability company.

7.      Defendant, Sothea Renordo McConnell ("McConnell"), is an Oklahoma resident who resided in Muskogee County on the date of the motor vehicle collision on which this lawsuit is based.

<u>FACTS OF COLLISION</u>

8.      On December 22, 2012, Ms. Turay was involved in a head-on collision with a vehicle operated by McConnell which occurred on State Highway 16 in Muskogee County, State of Oklahoma ("Collision").

9.      At the time of the Collision, Ms. Turay was driving her 2001 Cadillac Deville (VIN #1G6KD54Y71U109398) ("Cadillac") which she had purchased from Regal and/or Saber on or about July 17, 2010.

10.     The airbags in Ms. Turay's Cadillac failed to deploy in the Collision thereby causing Ms. Turay's fatal injuries.

2

COUNT I
PRODUCTS LIABILITY CLAIM AGAINST GM, REGAL, SABER, ELCO, AND SLI

11.    The failure of the airbags in Ms. Turay's Cadillac to deploy in the Collision was the result of a product defect which rendered the Cadillac unreasonably dangerous to the user.

12.    The Cadillac was offered for sale to members of the public in a defective condition.

13.    Upon information and belief, REGAL and SABER owned, sold, repossessed, and re-sold the Cadillac at various times from late 2008 to early 2013 as commercial sellers of used automobiles.

14.    Upon information and belief, ELCO purchased and sold the Cadillac in late 2008 as a commercial seller of used automobiles.

15.    Upon information and belief, SLI purchased and sold the Cadillac in late 2008 as a commercial seller of used automobiles.

16.    The defect in Ms. Turay's Cadillac caused Ms. Turay's fatal injuries.

17.    GM, REGAL, SABER, ELCO, and/or SLI are strictly liable under a products liability theory of recovery for the wrongful death of Ms. Turay.  These Defendants are liable for all damages recoverable pursuant to 12 O.S. § 1053.

18.    Upon information and belief, the marketing, advertising, and sale of the defective Cadillac was reckless, willful, intentional, and/or malicious conduct which was life-threatening to humans thereby justifying an award of punitive damages against ~~GM,~~ REGAL, SABER, ELCO, and/or SLI pursuant to 23 O.S. § 9.1.

19.    <u>Given the knowledge GM inherited from General Motors Corporation and/or knowledge which GM acquired on its own,</u> GM's failure to disclose the existence of the safety product defect to Ms. Turay or remedy the defect prior to the Collision was reckless, willful,

3

intentional, and/or malicious conduct which was life-threatening to humans thereby justifying an award of punitive damages against GM pursuant to 23 O.S. § 9.1.

## COUNT II
### VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT CLAIM AGAINST GM

20.    Upon information and belief, GM was aware of the product defect in the supplemental restraint system for 2001 Cadillac Devilles and other GM vehicles utilizing the same supplemental restraint system prior to the Collision.

21.    GM had an affirmative obligation to disclose the existence of the safety product defect to Ms. Turay and remedy the defect prior to the Collision.

22.    GM failed to disclose the existence of the safety product defect to Ms. Turay or remedy the defect prior to the Collision.

23.    As a result of GM's failure to disclose and failure to remedy the defect, Ms. Turay sustained fatal injuries in the Collision.

24.    GM's actions and failures to act constitute deceptive trade practices and/or unfair trade practices in violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.*

25.    GM is liable the wrongful death of Ms. Turay which resulted from its violations of the Oklahoma Consumer Protection Act. GM is liable for all damages recoverable pursuant to 12 O.S. § 1053.

26.    GM's violations of the Oklahoma Consumer Protection Act constitute reckless, willful, intentional, and/or malicious conduct which was life-threatening to humans thereby justifying an award of punitive damages against GM pursuant to 23 O.S. § 9.1.

## COUNT III
### NEGLIGENCE CLAIM AGAINST MCCONNELL

27.    McConnell was negligent in causing the Collision.

4

28.   As a result of Defendant's negligence, Ms. Turay sustained fatal injuries.

29.   McConnell is liable for the wrongful death of Ms. Turay.  McConnell is liable for all damages recoverable pursuant to 12 O.S. § 1053.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount which is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code plus interest, attorney fees, costs, and all other relief which the Court deems just and proper.

Respectfully submitted,

_____
KRIS TED LEDFORD, OBA #17552
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK  74055
Telephone: (918) 376-4610
Facsimile: (918) 376-4993
Email: kris@ledford-lawfirm.com
*Attorney for Plaintiffs*

ATTORNEY'S LIEN CLAIMED

5

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Scott Davidson
Direct Dial: 212-556-2164
sdavidson@kslaw.com

June 22, 2016

**VIA E-MAIL TRANSMISSION**
Kris Ted Ledford, Esq.
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK 74055

      Re:   *Pope v. General Motors LLC, et al.*
           **Case No.: CJ-2014-467**

Dear Mr. Ledford:

      This letter is in response to your letter, dated June 17, 2016 ("**June 17 Letter**"), as well as the draft amended petition ("**Amended Petition**") you provided with the June 17 Letter and our telephone conversation on Monday, June 20, 2016. As we discussed during our telephone conversation, it is New GM's position that (i) the plaintiffs in the Lawsuit cannot assert Independent Claims[1] against New GM, and the claim based on an alleged failure to identify a defect and the claim based on a violation of the Oklahoma Consumer Protection Act (neither of which are Assumed Liabilities) are therefore barred, and (ii) New GM cannot be sued for punitive damages in this Lawsuit.[2]

## A.    Plaintiffs Are Non-Ignition Switch Plaintiffs

      As stated in my May 16 Letter, the plaintiffs in this Lawsuit are not "Ignition Switch Plaintiffs." The Judgment entered by the Bankruptcy Court on June 1, 2015 ("**June Judgment**") defines the term Ignition Switch Plaintiffs as those plaintiffs who assert claims against New GM based on the first three ignition switch recalls issued in February/March 2014. *See* June Judgment, at 1 n.1. This Lawsuit relates to a 2001 Cadillac DeVille (which is not subject to the applicable recalls), and an alleged issue with the vehicle other than the ignition switch.

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in my May 16, 2016 letter ("**May 16 Letter**") to you regarding this Lawsuit.
[2]    The corrections that you propose in your June 17 Letter with respect to certain allegations are appropriate. However, as set forth in my May 16 Letter, and as further explained herein, the claims set forth in paragraphs 19 through 26 of the Amended Petition violate the Bankruptcy Court's rulings and should be stricken.

**EXHIBIT**
tabbies
8

Kris Ted Ledford, Esq.
June 22, 2016
Page 2

Only Ignition Switch Plaintiffs can assert "Independent Claims" against New GM. The Bankruptcy Court defined the term "Independent Claims" as "claims or causes of action *asserted by Ignition Switch Plaintiffs* against New GM (whether or not involving Old GM Vehicles) that are based solely on New GM's own, independent, post-Closing acts or conduct." June Judgment, ¶ 4 (emphasis added). The December Judgment also makes clear that Non-Ignition Switch Plaintiffs—like the plaintiffs in this Lawsuit—cannot assert Independent Claims against New GM:

> Plaintiffs of two types—1) *plaintiffs whose claims arise in connection with vehicles without the Ignition Switch Defect*, and 2) Pre-Closing Accident Plaintiffs—are not entitled to assert Independent Claims against New GM with respect to vehicles manufactured and first sold by Old GM (an "**Old GM Vehicle**"). *To the extent such Plaintiffs have attempted to assert an Independent Claim against New GM in a pre-existing lawsuit with respect to an Old GM Vehicle, such claims are proscribed by the Sale Order, April Decision and the Judgment dated June 1, 2015*[.]

December Judgment, ¶ 14.

Accordingly, since the plaintiffs in this Lawsuit do not have claims based on the Ignition Switch Defect, they are prohibited from asserting Independent Claims against New GM.

**B.    Plaintiff Cannot Assert Claims Based on (i) an
Alleged Failure to Identify a Defect or (ii) a
Violation of the Oklahoma Consumer Protection Act**

The alleged failure to identify a defect claim and the claim based on a violation of the Oklahoma Consumer Protection Act are not Assumed Liabilities, and cannot be asserted against New GM. Specifically, paragraph 31 of the December Judgment provides:

> Obligations, if any, that New GM had to identify or respond to defects in previously sold Old GM Vehicles *were not Assumed Liabilities*, and New GM is not responsible for any failures of Old GM to do so. But whether New GM had an independent duty to identify or respond to defects in previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law that may be decided by the nonbankruptcy court hearing that action. [Emphasis added]

In addition, paragraph 19 of the December Judgment provides:

> Claims with respect to Old GM Vehicles that are based on . . . *consumer protection statutes are not included within the definition of Product Liabilities, and therefore do not constitute Assumed Liabilities*, because (a) they are not for "death" or "personal injury", and their nexus to any death or personal injury that might thereafter follow is too tangential, and (b) they are not "caused by motor vehicles." The Court expresses no view whether such claims may, however, constitute viable Independent Claims against New GM if they are based on New GM knowledge or conduct. [Emphasis added]

Kris Ted Ledford, Esq.
June 22, 2016
Page 3

Based on the above-quoted paragraphs from the December Judgment, it is clear that the failure to identify a defect claim and the claim based on a violation of the Oklahoma Consumer Protection Act are not Assumed Liabilities. While such claims could be asserted as Independent Claims against New GM, as set forth above, the plaintiffs in the Lawsuit are not Ignition Switch Plaintiffs and, accordingly, they cannot assert Independent Claims against New GM. Such claims should be stricken from the Amended Petition.

C.    **Plaintiffs Cannot Seek Punitive Damages Against New GM**

In the Amended Petition (and the original petition), plaintiffs seek punitive damages against New GM. Your June 17 Letter acknowledges that the plaintiffs cannot seek punitive damages against New GM based on Assumed Liabilities. Nonetheless, you assert in the June 17 Letter that plaintiffs can seek punitive damages "(1) based on Old GM knowledge or conduct in instances where information about such Old GM conduct was 'inherited' by New GM and (2) based on information developed solely by New GM post-sale." While you reference the Bankruptcy Court's November Decision, the December Judgment, which was the product of competing letter briefs submitted by the parties to the Bankruptcy Court, clearly states as follows:

A claim for punitive damages with respect to a post-Sale accident involving *vehicles manufactured by Old GM with the Ignition Switch Defect may be asserted against New GM to the extent—but only to the extent—it relates to an otherwise viable Independent Claim* and is based solely on New GM conduct or knowledge, including (a) knowledge that can be imputed to New GM under the principles set forth in the Decision and this Judgment (and under nonbankruptcy law), and (b) information obtained by New GM after the 363 Sale.

December Judgment, ¶ 7 (emphasis added). As demonstrated above, the accident in question did not involve "a vehicle manufactured by Old GM with the Ignition Switch Defect," and plaintiffs, as Non-Ignition Switch Plaintiffs, cannot assert Independent Claims against New GM. Accordingly, any request for punitive damages contained in the Amended Petition necessarily fails, and should be stricken.

D.    **Conclusion**

Please let us know as soon as possible whether plaintiffs will take the required action and fully comply with the Bankruptcy Court's rulings. If not, as discussed on our call, New GM will seek all available relief from the Bankruptcy Court.

Very truly yours,

/s/ Scott I. Davidson

Scott I. Davidson

SD/hs

cc:    Mary Quinn Cooper, Esq.

DMSLIBRARY01\29076929.v1