**HEARING DATE AND TIME:  July 18, 2016 at 10:00 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **Case No.:  09-50026 (MG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x


**REPLY BY GENERAL MOTORS LLC TO OBJECTIONS
AND RESPONSE TO ITS' MOTION PURSUANT TO
11 U.S.C. §§ 105 AND 363 TO ENFORCE THE
BANKRUPTCY COURT'S JULY 5, 2009 SALE ORDER
AND INJUNCTION, AND THE RULINGS IN CONNECTION
THEREWITH, WITH RESPECT TO PLAINTIFFS
<u>IDENTIFIED ON SCHEDULE "1" ATTACHED THERETO</u>**

# TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** .......................................................................................................................... 3

    I.      Independent Claims Cannot Be Asserted By The Responding Plaintiffs ............... 3

    II.     The Responding Plaintiffs Never Asserted, Let Alone Established,
A Due Process Violation With Respect To The 363 Sale And, Thus,
The Sale Order And Injunction Could Not Be Modified To Permit
Them To Assert An Independent Claim ................................................................. 6

    III.    The Responding Plaintiffs Are Collaterally Estopped  From Re-Litigating
Issues Already Decided By The Bankruptcy Court In Connection With
The December 2015 Judgment ............................................................................... 9

    IV.    The Responding Plaintiffs Are Different From The Ignition Switch
Plaintiffs And, In Any Event, They Are Only Asserting Disguised
Successor Liability Claims. ................................................................................... 12

    V.     The So-Called Independent Claims Asserted By The Responding
Plaintiffs Are Barred By The Sale Order And Injunction And
The December 2015 Judgment ............................................................................. 14

          a.     Failure To Recall Claims Can Only Be Asserted As
Independent Claims By Ignition Switch Plaintiffs ................................... 14

          b.     Consumer Protection Act Claims Can Only Be
Asserted As Independent Claims By Ignition Switch Plaintiffs. .............. 15

          c.     Failure To Warn Claims Can Only Be Asserted
As Independent Claims By Ignition Switch Plaintiffs ............................. 16

    VI.    As the Responding Plaintiffs Cannot Assert Independent Claims Against
New GM, They Cannot Seek Punitive Damages Against New GM. .................... 17

    VII.   Subject Matter Jurisdiction Arguments Were  Previously Made And
Rejected By The Bankruptcy Court ..................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
   428 B.R. 43 (S.D.N.Y. 2010) .................................................................................................. 18

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995) ................................................................................................................. 3

*In re Motors Liquidation Co.*,
   430 B.R. 65 (S.D.N.Y. 2010) .................................................................................................. 2

*In re Motors Liquidation Co.*,
   513 B.R. 467 (Bankr. S.D.N.Y. 2014) ..................................................................................... 3

*In re Motors Liquidation Co.*,
   514 B.R. 377 (Bankr. S.D.N.Y. 2014) ................................................................................... 19

*In re Motors Liquidation Co.*,
   522 B.R. 13 (Bankr. S.D.N.Y. 2014) ..................................................................................... 20

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015) ............................................................................... 7, 14

*In re Motors Liquidation Co.*,
   541 B.R. 104 (Bankr. S.D.N.Y. 2015) ................................................................................. 5, 8

*Morgenstein v. Motors Liquidation Co. (In re Motors Liquidation Co.),*
   462 B.R. 494 (Bankr. S.D.N.Y. 2012) ..................................................................................... 2

*Travelers Indemnity Co. v. Bailey*,
   557 U.S. 137 (2009) ............................................................................................................ 8, 19

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this reply ("**Reply**") to the objections and response filed in connection with the *Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction, And The Rulings In Connection Therewith, With Respect To Plaintiffs Identified On Schedule "1" Attached Hereto*, dated June 24, 2016 [Dkt. No. 13655] ("**Second June Motion to Enforce**").[1]  In support of this Reply, New GM states as follows:[2]

## PRELIMINARY STATEMENT

The Responding Plaintiffs (Post-Closing Accident Plaintiffs alleging personal injuries due to Old GM vehicles without the Ignition Switch Defect) are intentionally violating the Bankruptcy Court's December 2015 Judgment, which expressly provides that plaintiffs whose claims arise in connection with Old GM vehicles without the Ignition Switch Defect cannot assert Independent Claims against New GM, and punitive damages for such Claims.[3]  Those proscribed claims and damage demands never got "through the bankruptcy gate."

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Second June Motion to Enforce.  Objections to the Second June Motion to Enforce were filed by (i) Christopher Pope and Gwendolyn Pope ("**Pope Plaintiffs**"); (ii) Bernard Pitterman, Administrator ("**Pitterman Plaintiff**"); (iii) James Walter Moore and Jaime Reda Moore ("**Moore Plaintiffs**"); and (iv) Brianna Minard ("**Minard Plaintiff**", and with the Pope Plaintiffs, the Pitterman Plaintiff and the Moore Plaintiffs, the "**Responding Plaintiffs**").

A response ("**Lead Counsel Response**") to the Second June Motion to Enforce was also filed by the MDL Class Plaintiffs (as defined in the Lead Counsel Response).  As New GM previously pointed out to the Court in connection with an earlier motion to enforce, the MDL Class Plaintiffs never appealed the June 2015 Judgment on behalf of Non-Ignition Switch Plaintiffs. The MDL Class Plaintiffs' *Notice of Appeal*, dated June 2, 2016 [Dkt. No. 13185], and *Appellants' Statement of Issues on Appeal and Designation of Items to be Included in the Record on Appeal*, dated June 16, 2016 [Dkt. No. 13219] were made on behalf of the Ignition Switch Plaintiffs only.  The briefs filed by MDL Class Plaintiffs in the Second Circuit were captioned and submitted on behalf of the Ignition Switch Plaintiffs only.  The only Non-Ignition Switch Plaintiffs who appealed the April 2015 Decision and the June 2015 Judgment were the handful of plaintiffs represented by counsel Gary Peller, Esq., who did so on their behalf only.

[2]    In addition to the Responding Plaintiffs, the Second June Motion to Enforce also applies to other PI Plaintiffs named in Schedule "1" attached thereto (*i.e.*, the Atanaw, Barbot, Black, Boker, Minix and Neal Plaintiffs (collectively, the "**Non-Responding Plaintiffs**")).  As the Non-Responding Plaintiffs have not filed an objection or response to the Second June Motion to Enforce, the proposed order attached as Exhibit "L" thereto should be entered against them.

[3]    December 2015 Judgment, ¶¶ 6, 7, 14.

1

The 2009 Sale Order and Injunction bars the assertion of all personal injury claims against New GM with respect to Old GM vehicles except for Assumed Product Liabilities.  The Bankruptcy Court did modify that Sale Order and Injunction in June 2015 to allow the assertion of "Independent Claims" only for the Ignition Switch Plaintiffs (and for no other group of plaintiffs) because they alone had established a due process violation in connection with the Sale Motion.[4]  Except for this category, no other group of plaintiffs asserting personal injury claims based on Old GM vehicles has established a due process violation relating to the Sale Motion.  In fact, the Bankruptcy Court has ruled on a number of occasions (outside the Ignition Switch Defect context) that the Sale Notice given to Old GM vehicle owners was proper.[5]

In the December 2015 Judgment, the Bankruptcy Court reiterated its ruling that only the Ignition Switch Plaintiffs could assert Independent Claims against New GM for Old GM vehicles.[6]  Judge Gerber recognized in the November 2015 Decision that other plaintiff groups (such as the Old GM vehicle owners without the Ignition Switch Defect) had been provided with ample opportunity, after the 2014 recalls, to come forward to establish a due process violation relating to the Sale Motion, and none had done so.  Recognizing that the Sale Order and Injunction had been resolved years ago, and that the good faith purchaser (New GM) was entitled to the finality and protections it bargained for, the Bankruptcy Court held, in the December 2015 Judgment, that the provisions of the Sale Order and Injunction would be fully enforced against

---

[4]    New GM has appealed to the Second Circuit the Bankruptcy Court's finding that there was a due process violation in connection with Ignition Switch Plaintiffs.

[5]    *Morgenstein v. Motors Liquidation Co. (In re Motors Liquidation Co.),* 462 B.R. 494 (Bankr. S.D.N.Y. 2012); *see also* Transcript of Oral Argument, at 59:19-61:13, *In re Motors Liquidation Co.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y June 1, 2010) [Dkt. No. 5961].  A copy of the relevant portions of the June 1, 2010 Hearing Transcript are attached hereto as **Exhibit "A."**

In addition, the District Court in affirming the Sale Order and Injunction rejected the due process challenge made by certain Old GM creditors.  *See In re Motors Liquidation Co.*, 430 B.R. 65, 97-99 (S.D.N.Y. 2010).

[6]    Whether the Bankruptcy Court had the authority to modify the Sale Order and Injunction, and create in the June 2015 Judgment the concept of "Independent Claims"—a new category of liabilities associated with Old GM vehicles—is one of the issues that New GM has raised on appeal in the Second Circuit, which is *sub judice*.

all plaintiffs (other than the limited carve-out for the Ignition Switch Plaintiffs asserting Independent Claims). Since the Responding Plaintiffs are, by definition, not Ignition Switch Plaintiffs, they are barred from asserting Independent Claims against New GM. And, since the December 2015 Judgment held that New GM did not assume punitive damages in connection with Assumed Liabilities, the Responding Plaintiffs are therefore prohibited from seeking punitive damages against New GM with respect to claims involving Old GM vehicles.

Responding Plaintiffs already had a full and fair opportunity to litigate the issues raised in their objections to the Second June Motion to Enforce, and the collateral estoppel doctrine applies to prohibit them from re-litigating those issues now.[7] And, in all events, Responding Plaintiffs are not permitted to simply ignore an existing injunction of the Bankruptcy Court (which is what they are presently doing), that bars them from asserting such claims and seeking punitive damages.[8] The Responding Plaintiffs had notice of, and the right to participate in, the proceedings leading to the December 2015 Judgment. The Bankruptcy Court had subject matter jurisdiction to enter, construe and enforce the Sale Order and Injunction and enter the December 2015 Judgment. Those rulings are binding on the Responding Plaintiffs and New GM's Second June Motion to Enforce seeks that they be compelled to obey them.

## ARGUMENT

### I.    Independent Claims Cannot Be Asserted By The Responding Plaintiffs

A general theme running through the Responding Plaintiffs' objections is that the concept of Independent Claims was meant to apply to both Ignition Switch Plaintiffs and Post-Closing

---

[7]    Even if collateral estoppel did not apply, the Responding Plaintiffs would be bound by *stare decisis* principles.

[8]    *See Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995) ("persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order"); *see also In re Motors Liquidation Co.*, 513 B.R. 467, 478 (Bankr. S.D.N.Y. 2014) (citing *Celotex*).

Accident Plaintiffs without the Ignition Switch Defect.  A review of the June 2015 Judgment and

the December 2015 Judgment (and the events leading to the entry of the December 2015

Judgment), directly contradicts this argument and shows that only Ignition Switch Plaintiffs can

assert Independent Claims against New GM; Post-Closing Accident Plaintiffs without the

Ignition Switch Defect, like the Responding Plaintiffs, cannot do so.[9]

> Specifically, paragraph 4 of the June 2015 Judgment provides:

> The Sale Order shall be deemed modified to permit the assertion of Independent
> Claims. For purposes of this Judgment, "**Independent Claims**" shall mean claims
> or causes of action asserted by Ignition Switch Plaintiffs against New GM
> (whether or not involving Old GM vehicles or parts) that are based solely on New
> GM's own, independent, post-Closing acts or conduct.

The June Judgment then explicitly provides that "[e]xcept for the modification to permit the

assertion of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain

unmodified and in full force and effect." *Id.* ¶ 5.  This language makes clear that Old GM

vehicle owners without the Ignition Switch Defect, like the Responding Plaintiffs, cannot assert

Independent Claims against New GM and remain bound by the Sale Order and Injunction.

> With respect to the December 2015 Judgment, a review of the events leading to the entry

of that Judgment, and the Judgment itself, makes clear that only Ignition Switch Plaintiffs can

---

[9]   The MDL Class Counsel's assertion in the Lead Counsel Response, that, in all circumstances, the resolution of
the Second June Motion to Enforce should be deferred until the Second Circuit rules on the appeal of the June
2015 Judgment, should be rejected because inaction would allow improper claims to proceed in state and
federal courts around the nation.  Clearly, there is an issue in the Second Circuit appeal raised by New GM as to
whether the Sale Order and Injunction should have been modified to allow Ignition Switch Plaintiffs to assert
Independent Claims against New GM.  New GM has argued that the Sale Order and Injunction should not have
been modified and that no plaintiff (including Ignition Switch plaintiffs) can assert Independent Claims against
New GM.  But, that dispute does not apply to Post-Closing Accident Plaintiffs without the Ignition Switch
Defect because, under the December 2015 Judgment, they cannot assert Independent Claims.  A Second Circuit
ruling in New GM's favor on the Independent Claim issue could impact this proceeding by eliminating all
Independent Claims (whether asserted by Ignition Switch Plaintiffs or Non-Ignition Switch Plaintiffs).
Alternatively, if this Court  finds that Responding Plaintiffs can assert Independent Claims (which it should
not), then the Second Circuit appeal as to the applicability of Independent Claims would come into play.

In all events, to defer ruling on the Second June Motion to Enforce, is to fall back to the *status quo*, and under
the December 2015 Judgment, the Responding Plaintiffs should still be barred from asserting Independent
Claims and punitive damages or proceeding with their state/federal court litigations.  The December 2015
Judgment is not the subject of the Second Circuit appeal.

assert Independent Claims against New GM.  In the November 2015 Decision, the Bankruptcy

Court instructed the parties to try and agree on a proposed form of judgment, or if they could not,

to submit counter-forms of proposed judgment.  *See In re Motors Liquidation Co.*, 541 B.R. 104,

144 (Bankr. S.D.N.Y. 2015).  After the parties could not agree, they submitted competing forms

and letter briefs about which version of the judgment should be entered.  In New GM's letter

brief to the Bankruptcy Court dated November 30, 2015 [Dkt. No. 13559] ("**New GM**

**November 2015 Letter Brief**"),[10] it referred to the Bankruptcy Court ruling that the only

category of claim where punitive damages could be asserted against New GM for an Old GM

Vehicle is an Independent Claim, and that

> the only plaintiffs that can bring an Independent Claim against New GM with
> respect to an Old GM Vehicle based on the Sale Order, as modified by the June
> Judgment, are (i) owners of vehicles with the Ignition Switch Defect bringing
> economic loss claims (i.e., the Ignition Switch Plaintiffs) and (ii) Post-Closing
> Accident Plaintiffs who owned a vehicle with the Ignition Switch Defect.

New GM November 2015 Letter Brief, at 4.  This point was made explicit in Exhibit "C" to the

New GM November 2015 Letter Brief, which contained a mark-up ("**Marked Up Judgment**")

of the competing proposed form of judgment. In the Marked Up Judgment, New GM

differentiated between plaintiffs involved in accidents with vehicles with the Ignition Switch

Defect, and those without it.  In New GM's first annotation, it stated:  "The only modification to

the Sale Order for Old GM vehicles are those with the Ignition Switch Defect.  These are the

Independent Claims."  *See* New GM November 2015 Letter Brief, Exh. C., at ¶ 5.

    The differentiation between the two groups of plaintiffs was adopted by the Bankruptcy

Court in the December 2015 Judgment.  Specifically, paragraph 14 of the December 2015

Judgment provides:

---

[10]    A copy of the New GM November 2015 Letter Brief (with Exhibits) is attached hereto as **Exhibit "B."**

> Plaintiffs . . . whose claims arise in connection with vehicles without the Ignition Switch Defect . . . are not entitled to assert Independent Claims against New GM with respect to vehicles manufactured and first sold by Old GM (an "**Old GM Vehicle**"). To the extent such Plaintiffs have attempted to assert an Independent Claim against New GM in a pre-existing lawsuit with respect to an Old GM Vehicle, such claims are proscribed by the Sale Order, April [2015] Decision and the [June 2015] Judgment . . . .

This distinction between the two groups of plaintiffs is found throughout the December 2015 Judgment (*see, e.g.,* December 2015 Judgment, ¶¶ 7, 8, 9 , 21, 23, *etc.*), demonstrating the Bankruptcy Court's intention to limit the assertion of Independent Claims to only Ignition Switch Plaintiffs.

II.    **The Responding Plaintiffs Never Asserted, Let Alone Established, A Due Process Violation With Respect To The 363 Sale And, Thus, The Sale Order And Injunction Could Not Be Modified To Permit Them To Assert An Independent Claim**

The Responding Plaintiffs concede that the Ignition Switch Plaintiffs are allowed to assert Independent Claims, while they cannot, because the Ignition Switch Plaintiffs established a due process violation with respect to the Sale Motion, while they did not.  Their argument is that they were never informed that they needed to prove a due process violation in order to assert Independent Claims against New GM.  However, it was not incumbent on New GM to inform the Responding Plaintiffs that they needed to demonstrate a due process violation in order to be relieved of the injunction applicable to them.

Moreover, the Responding Plaintiffs actually knew or certainly should have known what was required of them.  In connection with the demand letters sent to them in the Fall of 2015, each of the Responding Plaintiffs were provided copies of the Bankruptcy Court's April 2015 Decision and June 2015 Decision, in which the Bankruptcy Court explained that the Sale Order and Injunction would remain unmodified and in full force and effect, except with respect to the Ignition Switch Plaintiffs who were permitted to assert "Independent Claims" against New GM since they had established a due process violation by Old GM with respect to the notice of the

6

Sale Hearing.[11]  The Responding Plaintiffs, who are not Ignition Switch Plaintiffs, were put on notice that they were bound by the Sale Order and Injunction, which was not modified to them, and they had not been permitted to file Independent Claims.  Despite such notice, the Responding Plaintiffs did not request or prove that the Sale Order and Injunction should be modified based on an alleged due process violation as to them.  In essence, they are proceeding in non-bankruptcy courts as if they won a motion they never filed.  The reality is that the Responding Plaintiffs are willfully violating the Sale Order and Injunction and, in particular, the December 2015 Judgment.[12]

The Responding Plaintiffs' argument that Post-Closing Accident Plaintiffs without the Ignition Switch Defect have not been given an opportunity to prove a due process violation is meritless.  Bankruptcy enforcement proceedings on these issues commenced in 2014, over two years ago.  The Responding Plaintiffs could have presented the due process issue in the Bankruptcy Court during such time, especially when the Responding Plaintiffs were forewarned that they would be barred from asserting Independent Claims by the April 2015 Decision and the June 2015 Judgment.  Judge Gerber was abundantly clear that the proceedings leading up to the December Judgment was the time for him to deal with all issues relating to the Sale Order and Injunction. The Responding Plaintiffs never raised a due process issue.  Holding that Non-Ignition Switch Plaintiffs could not assert Independent Claims against New GM, the Bankruptcy Court in November 2015 addressed this specific point:

---

[11]   The April 2015 Decision held that Used Car Purchasers after the 363 Sale would have no greater rights against New GM than the original Old GM vehicle owner who purchased the vehicle prior to the 363 Sale.  *See In re Motors Liquidation Co.*, 529 B.R. 510, 526 n.14 (Bankr. S.D.N.Y. 2015).  The Minard Plaintiff is a post-363 Sale Used Car Purchaser who received the April 2015 Decision before the proceedings leading to the December 2015 Judgment.

[12]   The only appeal filed in connection with the December 2015 Judgment relates to whether New GM is responsible for plaintiffs' failure to file proofs of claim against Old GM.  It has nothing to do with the ability of Post-Closing Accident Plaintiffs without the Ignition Switch Defect to assert Independent Claims or punitive damages.

[Old GM vehicle owners without the Ignition Switch Defect] could have tried to show the Court that they had "known claims" and were denied due process back in 2009, but they have not done so. The Court ruled on this expressly in the Form of Judgment Decision [relating to the June Judgment]. It then held:

> The Non–Ignition Switch Plaintiffs' claims remain stayed, and properly so; those Plaintiffs have not shown yet, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of a due process violation with respect to them. And unless and until they do so, the provisions of the Sale Order, including its injunctive provisions, remain in effect.

531 B.R. at 360. That ruling stands. In the April Decision and resulting Judgment, the Court modified a Sale Order under which the buyer had a justifiable right to rely because a higher priority—a denial of due process, which was of Constitutional dimension—necessitated that. But without a showing of a denial of due process—and the Non–Ignition Switch Plaintiffs have not shown that they were victims of a denial of due process—the critically important interests of finality (in each of the 2009 Sale Order and the 2015 Form of Judgment Decision and Judgment) and predictability must be respected, especially now, more than 6 years after entry of the Sale Order.

*Motors Liquidation*, 541 B.R. at 130 n. 70.[13]

Clearly, the time to raise due process issues relating to the Sale Order and Injunction was in connection with the proceedings relating to the December 2015 Judgment. It is now too late for the Responding Plaintiffs to raise due process issues after the December 2015 Judgment is final as to them.

The Supreme Court ruled in *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009) that

> [o]n direct appeal of the 1986 Orders, anyone who objected was free to argue that the Bankruptcy Court had exceeded its jurisdiction, and the District Court or Court of Appeals could have raised such concerns *sua sponte*. . . . But once the 1986 Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the "parties and those in privity with them, not only as to every matter which was offered and

---

[13]    *See also Motors Liquidation*, 541 B.R. at 140 (in connection with claims asserted by plaintiffs represented by Gary Peller, some of which concerned post-sale accidents involving Old GM Vehicles without the Ignition Switch Defect, the Bankruptcy Court held that the "third type of Blue Category objection concerns claims asserted on behalf of Non–Ignition Switch Plaintiffs. This objection is sustained, in full, with respect to all assertedly Independent Claims for reasons discussed in n.70 above").

received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

*Id.* at 152 (citations omitted).   Applying that clear precedent here, since the Sale Order and Injunction and the December 2015 Judgment were final as to the Responding Plaintiffs, there is no basis to modify the Sale Order and Injunction to permit them to assert Independent Claims that are otherwise proscribed by the Sale Order and Injunction.   Stated otherwise, without a factual finding that they were a known creditor to Old GM, there was no due process violation that mandated a modification of the Sale Order and Injunction.   And, without such modification, the Responding Plaintiffs are proscribed from asserting an Independent Claim (or seeking punitive damages in connection therewith) against New GM that is barred by the Sale Order and Injunction.[14]

**III.    The Responding Plaintiffs Are Collaterally Estopped From Re-Litigating Issues Already Decided By The Bankruptcy Court In Connection With The December 2015 Judgment**

Many of the Responding Plaintiffs assert that they should not be collaterally estopped from re-litigating issues that were the subject matter of the proceedings that resulted in the December 2015 Judgment because they purportedly were not given adequate notice about the issues to be decided by the Bankruptcy Court.   However, as explained in the Second June Motion to Enforce, each of the Responding Plaintiffs was (i) sent a demand letter last August/September regarding their PI Lawsuit and explaining that their PI Complaints violated the Bankruptcy Court's ruling, (ii) was served with the September 3 Scheduling Order, and (iii) was served with all of the pleadings filed by New GM which resulted in the entry of the December 2015 Judgment.   The Second June Motion to Enforce also details events both prior to and after the

---

[14]    The Bankruptcy Court obviously believed that Independent Claims were otherwise barred by the Sale Order and Injunction since it modified the Sale Order and Injunction, which had been a final and non-appealable order for many years.

entry of the September 3 Scheduling Order, including the Bankruptcy Court's intention to address issues concerning Non-Ignition Switch Plaintiffs (including those, like the Responding Plaintiffs that were involved in Post-Closing Accidents), and how and by whom Non-Ignition Switch Plaintiffs' interests were represented.

Moreover, each of the Responding Plaintiffs was provided with a Court-approved note in early September 2015 in conjunction with the September 3 Scheduling Order, which stated in relevant part:

> If you have any objection to the procedures set forth in the Scheduling Order, you must file such objection in writing with the Bankruptcy Court within three (3) business days of receipt of this notice ("Objection"). ***Otherwise, you will be bound by the terms of the Scheduling Order and the determinations made pursuant thereto. If you believe there are issues that should be presented to the Court relating to your lawsuit that will not otherwise be briefed and argued in accordance with the Scheduling Order, you must set forth that position, with specificity in your Objection.*** The Court will decide whether a hearing is required with respect to any Objection timely filed and, if so, will, promptly notify the parties involved.

September 3 Scheduling Order, at 4 (emphasis added). Thus, the Responding Plaintiffs were put on notice of the issues to be decided, that they could participate in the proceedings if they so chose, and that if they had additional issues, they could raise them with the Bankruptcy Court. With the exception of the Moore Plaintiffs, the other Responding Plaintiffs did not file any pleading with the Bankruptcy Court.[15] The Moore Plaintiffs did file the Moore Punitive

---

[15] While the Pope Plaintiffs assert that they thought they would be treated the same as the Ignition Switch Plaintiff, and that New GM led counsel for the Pope Plaintiffs to believe they would be treated the same as the Ignition Switch Plaintiffs, the only support for this assertion is a sentence in New GM's letter to the Pope Plaintiffs on September 1, 2015 that stated that "[t]he reasoning and rulings set forth in the Judgment and Decision are equally applicable to the [Pope] Lawsuit." *See* Pope Plaintiffs' Objection, Exh. 2 at 3. But that sentence, taken in its proper context, specifically refers to the Bankruptcy Court's ruling in the June 2015 Judgment that New GM could not be liable for successor liability claims. Moreover, the April 2015 Decision and June 2015 Judgment spelled out which plaintiffs were Ignition Switch Plaintiffs (the Pope Plaintiffs do not fall within that group), and clearly held that only the Ignition Switch Plaintiffs could assert an Independent Claim against New GM. The Pope Plaintiffs have no basis to claim they were misled.

Damages Brief, but did not raise any other issues with the Bankruptcy Court. The fact that the Responding Plaintiffs did not file any pleading (or, with respect to the Moore Plaintiffs, a pleading addressing limited issues) despite being on notice of their ability to do so does not mean that they did not have a full and fair opportunity to litigate their issues. They had such an opportunity, but chose to ignore it.

The notion that Non-Ignition Switch Plaintiffs (including those involved in post-363 Sale accidents in vehicles without the Ignition Switch Defect) were not represented in the proceedings leading to the December 2015 Judgment, is also contrary to the clear record in this case. As explained in the Second June Motion to Enforce, Lead Counsel in MDL 2543 pending before District Judge Furman were intimately involved in the process and filed pleadings on all issues identified in the September 3 Scheduling Order. *See* Second June Motion to Enforce, ¶¶ 17-18. Significantly, at or about the time the September 3 Scheduling Order was entered, there were approximately 110 cases involving *over 850* Post-Closing Accident Plaintiffs without the Ignition Switch Defect. Simply put, the MDL is not limited to cases involving the Ignition Switch Defect in MDL 2543. Lead Counsel had an obligation to represent the wide-spread constituency of Old GM vehicle owners without the Ignition Switch Defect, and they have done so in the MDL *and this Court*.[16] Moreover, Judge Gerber had no interest in ruling on the punitive damage/Assumed Liability issue for only the Ignition Switch Plaintiffs. His ruling and the reasoning applies to all Post-Closing Accident Plaintiffs (those with the Ignition Switch Defect, and those without).

---

In addition, according to contemporaneous notes maintained by counsel for New GM, upon receipt of the Pope Plaintiffs' September 15, 2015 letter, counsel for New GM contacted counsel for the Pope Plaintiffs and ultimately discussed the process in a subsequent telephone conversation.

[16] The Minard Plaintiff's allegation that the only personal injury plaintiffs before the Bankruptcy Court in connection with the proceedings leading to the December 2015 Judgment were the Ignition Switch Plaintiffs is obviously wrong. One need look no further than the Moore Plaintiffs pleading herein to debunk this contention.

As noted in the Lead Counsel Response, MDL Class Plaintiffs concede that, based on the December 2015 Judgment, Non-Ignition Switch Plaintiffs were required to amend their complaints to strike Independent Claims against New GM, which they have done.  *See* Lead Counsel Response, ¶¶ 1, 2.  The Responding Plaintiffs should conform to the conduct of the MDL Lead Counsel, and other Post-Closing Accident Plaintiffs without the Ignition Switch Defect, who properly understand what was decided by the December 2015 Judgment.

IV.    **The Responding Plaintiffs Are Different From The Ignition Switch Plaintiffs And, In Any Event, They Are Only Asserting Disguised Successor Liability Claims.**

The Responding Plaintiffs want the same modification to the Sale Order and Injunction that was provided to the Ignition Switch Plaintiffs even though they are in a totally different circumstance.  Their lawsuits concern different vehicles and completely different issues from those affecting Ignition Switch Plaintiffs.  The June 2015 Judgment found that Old GM knew of the Ignition Switch Defect; it made no rulings on alleged defects raised by the Responding Plaintiffs.

In fact, the Responding Plaintiffs present different issues from each other.  Specifically: (i) the *Pope* Lawsuit concerns a 2001 Cadillac DeVille with an allegedly defective airbag; (ii) the *Pitterman* Lawsuit concerns a 2001 Chevrolet Suburban with an allegedly defective transmission; (iii) the *Moore* Lawsuits concern a 1996 GMC Sonoma with an allegedly defective spare tire mount, and (iv) the *Minard* Lawsuit concerns an allegedly defective tire.

Significantly, the Responding Plaintiffs' complaints share a common characteristic that is fatal to their alleged Independent Claim argument.  They allege no new and independent post-363 Sale relationship established by New GM with them.  That omission is significant because it illustrates that what the Responding Plaintiffs have actually alleged against New GM is either an Assumed Liability or a Retained Liability—but not an Independent Claim.

New GM bought assets under the 363 Sale "free and clear of all Liabilities" (other than Assumed Liabilities). Independent Claims are by definition not Assumed Liabilities or Retained Liabilities.[17]   The term "Liabilities" under Section 1.1 of the Sale Agreement includes *obligations* owed by Old GM under *Law*. Thus, an Independent Claim cannot be based on an obligation under state law owed by Old GM to the Old GM vehicle owner. Since New GM did not manufacture or sell the Old GM vehicle, and New GM is not the successor in interest to Old GM, in the absence of any new and independent relationship created with the Responding Plaintiffs after the 363 Sale, New GM could not be liable to them for any claim other than, if applicable, Assumed Liabilities.

The Responding Plaintiffs' so-called Independent Claims are failure to warn, failure to identify defects, failure to recall or retrofit, and statutory consumer protection claims. All of these alleged Independent Claims are premised on an alleged New GM failure to act based on an alleged legal obligation that assumes New GM is the vehicle manufacturer or seller.[18]   But, New GM was not the manufacturer and seller of the Old GM vehicle, and bought free and clear of all of Old GM's obligations related thereto under law (except for Assumed Liabilities). The Responding Plaintiffs assert no new, independent legal obligation established by New GM (as the non-manufacturer, non-seller, non-successor) with the Responding Plaintiffs.[19]

---

[17]   *See* December 2015 Judgment, at 2 n.3 (finding that "Independent Claims do not include (a) Assumed Liabilities, or (b) Retained Liabilities . . . .").

[18]   For example, in the Moore Fifth Amended Complaints, which involve an Old GM vehicle, the Moore Plaintiffs assert, among other things, that New GM failed to design the vehicle properly, failed to warn owners of the defect, failed to recall the defect and failed to retrofit the vehicle. *See, e.g.*, J.W. Moore Fifth Amended Complaint, ¶ 10 (a copy of the J.W. Moore Fifth Amended Complaint is contained in the compendium of exhibits filed with the Second June Motion to Enforce as Exhibit "H").

[19]   At the oral argument leading to the April 2015 Decision, New GM had agreed that, if after the 363 Sale, New GM had issued a new warranty after the closing under a certified pre-owned vehicle program for an Old GM vehicle, or if it had supplied a vehicle part to an Old GM vehicle owner after the 363 sale, both these situations would involve the creation of a new and independent relationship making New GM responsible for its actions concerning the new relationship. The Responding Plaintiffs have not alleged those types of claims (*e.g.*,

Moreover, the imputation doctrine does not by itself allow Responding Plaintiffs' to assert an Independent Claim.    Knowledge without a legal duty does not create a claim.    The Responding Plaintiffs refer to the imputation of knowledge from Old GM to New GM as the predicate for the Independent Claim, but in so doing they are essentially transferring an Old GM obligation under law to New GM, which is contrary to the "free and clear" aspects of the Sale Order and Injunction.    In this regard, they are simply asserting a successor liability claim against New GM dressed up to look like something else.    Judge Gerber cautioned other courts dealing with Ignition Switch cases to be wary of this improper litigation tactic.    *See Motors Liquidation Co.*, 529 B.R. at 528 ("any court analyzing claims that are supposedly against New GM only must be extraordinarily careful to ensure that they are not in substance successor liability claims, 'dressed up to look like something else'" (*quoting Burton v. Chrysler Grp., LLC (In re Old Carco)*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013))).

**V.      The So-Called Independent Claims Asserted By The Responding Plaintiffs Are
Barred By The Sale Order And Injunction And The December 2015 Judgment**

**a.      Failure To Recall Claims Can Only Be Asserted As
Independent Claims By Ignition Switch Plaintiffs**

With respect to a failure to recall or retrofit an Old GM vehicle, paragraph 21 of the December 2015 Judgment provides:

> A duty to recall or retrofit is not an Assumed Liability, and New GM is not responsible for any failures of Old GM to do so. ***But whether an Independent Claim can be asserted that New GM had a duty to recall or retrofit an Old GM Vehicle with the Ignition Switch Defect*** is a question of nonbankruptcy law that can be determined by a court other than this Court. [Emphasis added]

While not referencing paragraph 21 of the December 2015 Judgment, the Moore Plaintiffs and the Pitterman Plaintiffs focus on a parenthetical in paragraph 30 of the December

---

volitional conduct by New GM, after the 363 Sale, that established an independent relationship between New GM and the Old GM vehicle owner).

2015 Judgment which refers to the Moore Lawsuit when discussing the failure to recall claim. However, that parenthetical cannot be viewed in isolation; it must be viewed in context with the other language in the December 2015 Judgment. As explained in the Second June Motion to Enforce, the reference to the Moore Lawsuit in paragraph 30 was meant to illustrate a ***type of claim*** that was not an Assumed Liability, but could be an Independent Claim. The Moore Lawsuit was referenced because it was specifically identified in New GM's September 23, 2015 Letter Brief to the Bankruptcy Court [Dkt. No. 13466],[20] which set forth certain causes of action that New GM asserted were Retained Liabilities (and not Assumed Liabilities).[21] In ruling that such claims were not Assumed Liabilities, the Bankruptcy Court was being complete and noting that such finding did not preclude the assertion of Independent Claims by Ignition Switch Plaintiffs. The Bankruptcy Court clearly did not intend to provide the Moore Plaintiffs with a *sui generis* exemption from the Independent Claims bar that applied to all other Post-Closing Accident Plaintiffs without the Ignition Switch Defect.[22]

**b.      Consumer Protection Act Claims Can Only Be
Asserted As Independent Claims By Ignition Switch Plaintiffs.**

In their PI Pleading, the Pope Plaintiffs attempt to assert a claim based on a violation of the Oklahoma Consumer Protection Act, arguing that the violation of this statute resulted in the death of the decedent. *See* Pope Plaintiffs' Objection, at 11. However, the Pope Plaintiffs' argument is directly contrary to the Bankruptcy Court's ruling. Specifically, paragraph 19 of the December 2015 Judgment expressly provides:

---

[20]    A copy of New GM's September 23, 2015 Letter Brief (without Exhibits) is attached hereto as **Exhibit "C."**

[21]    Similar limiting language is used in the December 2015 Judgment with respect to the "failure to identify defect" claim. *See* December 2015 Judgment, ¶¶ 31, 32.

[22]    The Moore Plaintiffs note that New GM did not appeal the December 2015 Judgment. Based on the entirety of the December 2015 Judgment, there was no reason for New GM to file such an appeal. If the Moore Plaintiffs had an issue with the December 2015 Judgment, or thought it was ambiguous in any way, they could have appealed it or sought reconsideration by the Bankruptcy Court. They did neither.

15

> Claims with respect to Old GM Vehicles that are based on . . . **consumer protection statutes** are not included within the definition of Product Liabilities, and therefore do not constitute Assumed Liabilities, because *(a) they are not for "death" or "personal injury", and their nexus to any death or personal injury that might thereafter follow is too tangential, and (b) they are not "caused by motor vehicles."* The Court expresses no view whether such claims may, however, constitute **viable Independent Claims** against New GM if they are based on New GM knowledge or conduct.

Again, as the Pope Plaintiffs are not Ignition Switch Plaintiffs, they cannot assert an Independent Claim against New GM based on a violation of a state consumer protection act.

### c. Failure To Warn Claims Can Only Be Asserted As Independent Claims By Ignition Switch Plaintiffs

The Minard, Moore and Pitterman Plaintiffs assert claims based on New GM's failure to warn about issues with their vehicles. In the December 2015 Judgment, the Bankruptcy Court held that "failure to warn" claims, if cognizable under applicable state law, could be a cause of action pled to establish an Assumed Product Liability. The Minard, Moore and Pitterman Plaintiffs, however, are asserting failure to warn claims not as Assumed Product Liabilities, but as Independent Claims. For the reasons previously cited, these Responding Plaintiffs are barred from asserting Independent Claims against New GM.

Except with respect to the Moore Plaintiffs, the other Responding Plaintiffs have generally corrected the allegation issues (distinguished from the cause of action infirmities) in their complaints through proposed amendments. However, the Fifth Amended Complaints filed by the Moore Plaintiffs continue to contain allegations that are barred by the Bankruptcy Court's rulings. *See* Second June Motion to Enforce, Sch. "1," Exhibits "G" and "H" (asserting, inter alia, that (i) new GM failed "to design" the 1996 GMC pickup truck properly, (ii) failed "to manufacture the vehicle properly," *etc.*).

16

**VI.    As the Responding Plaintiffs Cannot Assert Independent Claims
Against New GM, They Cannot Seek Punitive Damages Against New GM.**

As explained in the Second June Motion to Enforce, the only possible way to assert
punitive damages against New GM in connection with a post-363 Sale accident involving an Old
GM vehicle is through a viable Independent Claim.    As demonstrated above, only Ignition
Switch Plaintiffs can assert Independent Claims against New GM and since none of the
Responding Plaintiffs are Ignition Switch Plaintiffs, they cannot seek punitive damages against
New GM in connection with their PI Lawsuits.

While the November 2015 Decision makes certain (sometimes conflicting or incorrect)
statements respecting the ability to assert punitive damages against New GM, in the
circumstance here where the Bankruptcy Court directed the parties to submit proposed forms of
judgments and letter briefs containing their arguments on, among other items, the punitive
damages issue, the December 2015 Judgment controls this dispute.    And, paragraph 7 thereof
clearly provides:  "A claim for punitive damages with respect to a post-Sale accident involving
*vehicles manufactured by Old GM with the Ignition Switch Defect* may be asserted against
New GM to the extent—but only to the extent—*it relates to an otherwise viable Independent
Claim and is based solely on New GM conduct or knowledge* . . . ." (emphasis added).

The Moore Plaintiffs assert that they did not have a full and fair opportunity to litigate the
issue of punitive damages based on New GM conduct.    *See* Moore Plaintiffs' Objection, at 11.
However, a review of the Moore Plaintiffs' *Brief of Plaintiffs Regarding Punitive Damages Issue*
("**Moore Punitive Damages Brief**"), submitted to the Bankruptcy Court on September 13, 2015,
belies their contention.[23]    The first argument in the Moore Punitive Damages Brief is titled
"Punitive Damages Based on Conduct of New GM," with the Moore Plaintiffs asserting that they

---

[23]    A copy of the Moore Punitive Damages Brief is attached to the Moore Plaintiffs' Objection as Exhibit "C."

"should be allowed to proceed with punitive damages claims based on New GM conduct . . . ."

*Id.* at 3-5.  As the Moore Plaintiffs acknowledge, the Bankruptcy Court "undoubtedly read" their

brief (Moore Plaintiffs Objection, at 8), yet ruled against them on this very point.

**VII.  Subject Matter Jurisdiction Arguments Were
Previously Made And Rejected By The Bankruptcy Court**

Certain of the Responding Plaintiffs (*i.e.*, the Minard, Pitterman and Pope Plaintiffs), like

other plaintiffs before them, fall back on the now familiar refrain that the Bankruptcy Court

lacked subject matter jurisdiction to bar claims against the purchaser of the debtor's assets

arising from Old GM Vehicles.  The same arguments were in fact raised by product liability

claimants at the Sale Hearing (and rejected), and again in their appeal of the Sale Order and

Injunction (also rejected).  In particular, in the appeal of the Sale Order and Injunction, the

District Court found in *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428

B.R. 43 (S.D.N.Y. 2010):

> Appellants challenge the Bankruptcy Court's "colorable" jurisdiction on the
> grounds that the Bankruptcy Court lacked authority to enjoin their in personam
> successor liability claims under section 363(f). However, at the time the Sale
> Opinion and Order were issued, the Bankruptcy Court's interpretation and
> exercise of its authority under section 363(f) was consistent with the opinions of
> at least three Second Circuit judges—whose ranks have since expanded to include
> a panel of three different judges who also affirmed the proposition that section
> 363(f) authorizes the sale of assets "free and clear" of successor tort liability,
> another Bankruptcy Judge in this District, as well as panels of judges in other
> circuits including the Third and Fourth Circuits.

*Id.* at 57-58. The District Court ultimately held that:

> In light of the foregoing historic and immediate precedent finding bankruptcy
> courts possessed of such authority pursuant to section 363(f), it is clear that the
> Bankruptcy Court had more than "colorable" jurisdiction to issue the Sale Order's
> injunctive provisions providing that the Purchased Assets would be transferred
> "free and clear of all liens, claims, encumbrances, and other interests ... including
> rights or claims based on any successor or transferee liability."  Sale Order ¶ 7.
> Indeed, to contend otherwise is simply not a "colorable" argument.

*Id.* at 59.

Similar issues were raised in connection with the resolution of the Four Threshold Issues, and rejected by the Bankruptcy Court.  *See In re Motors Liquidation Co.*, 514 B.R. 377, 379-80 (Bankr. S.D.N.Y. 2014) (the "claim that I don't have subject matter jurisdiction to construe and enforce the Sale Order in this case—their contention is frivolous, disregarding controlling decisions of the United States Supreme Court and Second Circuit; district court authority in this District; four earlier decisions that I personally have issued; three decisions by other bankruptcy judges in the Southern District of New York, and the leading treatise in the area, Collier").  Put simply, the Bankruptcy Court (and District Court) previously addressed the Bankruptcy Court's subject matter jurisdiction to enter the Sale Order and Injunction, and have consistently enforced the provisions of that Order.

Recently, this Court, in connection with the hearing on New GM's First June Motion to Enforce, stated that it "thought Celetex [sic] was pretty dispositive of the subject matter jurisdiction issue."  Transcript of Oral Argument, at 18:8-9, *In re Motors Liquidation Co*., Case No. 09-50026 (REG) (Bankr. S.D.N.Y June 27, 2016) (referring to *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995)).  The Court is correct.[24]

Finally, the Sale Order and Injunction has been a final order for almost seven years and it is no longer subject to attack.  Thus, any argument regarding subject matter jurisdiction can no longer be asserted by the Responding Plaintiffs.  *See Travelers*, 557 U.S. at 152.  Accordingly, the Bankruptcy Court had subject matter jurisdiction to enjoin claims against New GM that are based on Old GM Vehicles.[25]

---

[24]    One of the issue on appeal in the Second Circuit concerns the Bankruptcy Court's subject matter jurisdiction.

[25]    The Moore Plaintiffs assert that since they were not brought into this proceeding by a formal summons and complaint, they "were not given the opportunity to 'fully and fairly' litigate these points."  Moore Plaintiffs' Objection, at 14.  However, the September 3 Schedule Order, which the Moore Plaintiffs received, clearly stated that if a plaintiff has "any objection to the procedures set forth in the Scheduling Order, you must file such objection in writing with the Bankruptcy Court within three (3) business days of receipt of this notice

WHEREFORE, for all of the foregoing reasons, and as set forth in the Second June Motion to Enforce, New GM respectfully requests that this Court enter an order, substantially in the form contained in the compendium of exhibits filed with the Second June Motion to Enforce as Exhibit "L," granting the relief sought in the Second June Motion to Enforce, and for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       July 13, 2016

Respectfully submitted,


      /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Attorneys for General Motors LLC*

---

("Objection").  ***Otherwise, you will be bound by the terms of the Scheduling Order and the determinations made pursuant thereto.***"  September 3 Scheduling Order, at 4 (emphasis added).  As noted above, while the Moore Plaintiffs timely served the Moore Punitive Damages Brief, they never objected to the procedures set forth in the September 3 Schedule Order.  It is too late for them to do so now.

In addition, the Bankruptcy Court already decided this issue. When enforcing an existing injunction, a motion as compared to an adversary proceeding is an acceptable way of proceeding.  *See In re Motors Liquidation Co.*, 522 B.R. 13, 22 (Bankr. S.D.N.Y. 2014) ("New GM is not seeking any new injunction against them. It is simply seeking to enforce the preexisting injunction set forth in the Sale Order, which covers Sesay Plaintiffs' claims, and which, at least at this juncture, remains in effect. Thus a separate adversary proceeding is not required.").