# EXHIBIT A



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __07/26/2016__

July 25, 2016

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re:   *In re: Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543; 14-MC-2543

Dear Judge Furman:

     Pursuant to this Court's Order No. 8 Section IV.B (Docket No. 249), counsel for General Motors LLC ("New GM") and Lead Counsel, having met and conferred, submit this joint letter setting forth the parties' tentative agenda for the July 28, 2016 Status Conference. The parties do not believe that the Court needs to allot more than three hours for the Status Conference.

     **1.**     **Plaintiffs' Fourth Amended Consolidated Complaint ("FACC").**

     Consistent with Order No. 96 Section III (Docket No. 2389), plaintiffs are required to file certain amendments to the Third Amended Consolidated Complaint ("TACC") within 30 days of the Court's July 15, 2016 Order Regarding New GM's Partial Motion to Dismiss the TACC. (Docket No. 3119 at 102.) In light of the fact that this Court's Order and the Second Circuit's ruling in *In re Motors Liquidation Co.* (-- F.3d --, 2016 WL 3766237 (2d Cir. July 13, 2016)) implicate the scope of the economic loss claims that will be at issue going forward, plaintiffs have requested, and New GM has consented, to an extension to 60 days from the date of the Court's Order to file the proposed FACC. Plaintiffs therefore respectfully request that they have until **Tuesday, September 13, 2016** to file the FACC.

     **2.**     **The Impact of the Second Circuit Court of Appeal's Decision on the Economic Loss Claims.**

     **Plaintiffs' Position**. The Second Circuit made six major holdings: First, because "independent claims based on New GM's post-closing conduct" are not within "the [Bankruptcy] Code's limitation on claims" that can properly be enjoined in a Chapter 11 sale order, "those claims are outside the scope of the Sale Order's 'free and clear provision.'" *In re Motors Liquidation Co.,* slip op. at 41-42. Second, the Sale Order likewise does not apply to the claims of "Used Car Purchasers, or those "individuals who purchased Old GM cars *after* the closing, without knowledge of the defect or possible claims against New GM." *Id.* at 42. Third, because the pre-closing accident victims and economic loss claimants who owned or leased cars with the Delta Ignition Switch Defect[1] were known creditors of Old GM who did not receive personal notice of the Sale

---

[1] The Second Circuit uses the term "ignition switch defect" to refer to first round of ignition switch recalls in February and March of 2014 (NHTSA Recall No. 14V047), which Plaintiffs have referred to as the "Delta Ignition

09-50026-mg    Doc 13700-1    Filed 07/27/16    Entered 07/27/16 08:59:27    Exhibit A -
Case 1:14-md-02543-JMF    Document 3142    Filed 07/26/16    Page 2 of 10
Endorsed Joint Letter    Pg 3 of 11

The Honorable Jesse M. Furman
July 25, 2016
Page 2

Order proceedings and were prejudiced as a result, "these plaintiffs thus cannot be 'bound by the terms of the [Sale] Order[]." *Id.* at 43-66. Fourth, regarding whether the "free and clear" provisions of the Sale Order apply to claims based on other defects in Old GM cars, the Second Circuit "vacate[d] the bankruptcy court's decision to enjoin those claims…and remand[ed] for further proceedings consistent with this opinion." *Id.* at 66.[2] Fifth, the Court vacated the Bankruptcy Court's decision on equitable mootness as an advisory opinion given that Plaintiffs have yet to seek relief from the General Unsecured Creditors Trust (GUC Trust).

Plaintiffs believe that these holdings impact these proceedings in the following manner: (i) *all* Old GM vehicle owners and lessors are free to assert independent claims against New GM for its own post-closing wrongful conduct without impediment from the Sale Order; (ii) Used Car Purchasers and Delta Ignition Switch purchasers are free to assert successor liability claims against New GM based upon the conduct of Old GM without impediment from the Sale Order; and (iii) owners of other Old GM vehicles are free to assert successor liability claims against New GM upon proof that their due process rights were violated. It is of course axiomatic that the viability of Plaintiffs' claims under governing state law is the province of this Court. Plaintiffs categorically oppose any further delay premised on New GM's efforts to overturn the Second Circuit's decision. Plaintiffs' FACC will contain all claims that Plaintiffs believe (1) are not barred by the Sale Order under the Second Circuit's decision and (2) are viable under the relevant state's law.

In addition to amendments to be reflected in the FACC, Plaintiffs will seek leave to file a late proof of claim in the Bankruptcy Court on behalf of owners and lessors of vehicles with the Delta Ignition Switch vehicles and other ignition switch defects. If the Bankruptcy Court grants permission to file a late proof of claim, Plaintiffs will pursue recovery in the Bankruptcy Court. Plaintiffs also plan to seek relief from the "free and clear" provisions on behalf of owners and lessors of Old GM vehicles with *other* ignition switch defects, including (but not necessarily limited to) those vehicles recalled by New GM in 2014 under Recall Nos. 14V355, 14V394, and 14V400; Plaintiffs believe that these ignition switch defects, which are similar to the Delta Ignition Switch Defect, were also known to Old GM, and that the vehicle owners' due process rights were violated because they did not receive constitutionally sufficient notice. Upon proof of a due process violation, Plaintiffs will seek to bring successor liability claims on behalf of these other owners in this Court.

Gary Peller has requested that Lead Counsel advise the Court that he plans to attend the Status Conference to request that the Court withdraw the reference on the issues that were remanded by the Second Circuit.

**New GM's Position**: New GM intends to move for rehearing and rehearing *en banc* of the Second Circuit decision. If the decision is not modified as a result of rehearing, New GM will pursue a petition for *certiorari* in the United States Supreme Court. New GM believes that the Second Circuit opinion presents complex and difficult questions of both constitutional and

---

Switch" recall. In the terminology of the Second Circuit, "non-ignition switch" recalls *includes* the other ignition switch recalls issued later in 2014, including but not limited to NHTSA Recalls No. 14V355, 14V394, and 14V400.

[2] Consistent with the Second Circuit's ruling, Old GM vehicle owners with other defects will be exempt from the "free and clear" provisions of the Sale Order upon proof that they were known creditors whose due process rights were violated.

09-50026-mg   Doc 13790-1   Filed 07/27/16   Entered 07/27/16 08:59:27   Exhibit A -
Endorsed Joint Letter   Pg 4 of 11
Case 1:14-md-02543-JMF   Document 3142   Filed 07/26/16   Page 3 of 10

The Honorable Jesse M. Furman
July 25, 2016
Page 3

bankruptcy law. At present, the mandate is still in the Second Circuit. This Court should maintain the status quo until such further appellate proceedings have concluded.

New GM does not agree with Lead Counsel's description of the Second Circuit's holding. Lead Counsel's description is overbroad, both as to its characterization of the holding and its impact on these proceedings. For example, the Second Circuit did not and could not opine on whether any plaintiff could establish the elements of individual states' laws necessary to pursue a successor liability claim against New GM, much less establish the substantive elements of such liability, including but not limited to causation or damages. Nor did the Second Circuit address the scope of liabilities that were expressly assumed by New GM as part of the Sale Agreement. In other words, the application of the Second Circuit's decision to any plaintiff's complaint will necessarily depend on the factual circumstances of the case, the specific allegations and claims, and the applicable substantive state law.

With respect to plaintiffs' plans to file a late proof of claim in the Bankruptcy Court and Mr. Peller's plans to file a motion to withdraw the reference, New GM will respond to plaintiffs' filings in the ordinary course and reserves its response pending such filing. With respect to any motion to withdraw the reference, the Court rejected an identical motion last year and nothing in the Second Circuit's decision warrants reconsideration of that holding. (*See* 8/27/2015 Opinion and Order, 15-CV-4685 Docket No. 9.) To the contrary, the Second Circuit expressly remanded *to the Bankruptcy Court* for further proceedings. *In re Motors Liquidation Co.*, -- F.3d --, 2016 WL 3766237 at *21. And indeed, Lead Counsel confirmed in the parties' meet and confer that they will not be joining Mr. Peller's motion to withdraw the reference.

### 3. The Impact of the Second Circuit Court of Appeal's Decision on the Wrongful Death and Personal Injury Claims.

**Plaintiffs' Position**: Plaintiffs believe that the Second Circuit's holdings impact the personal injury and wrongful death cases remaining in the MDL in the following manner: (i) all Old GM vehicle owners and lessors are free to assert independent claims against New GM for its own post-closing wrongful conduct without impediment from the Sale Order; (ii) Pre-Closing Accident Plaintiffs who allege they were injured or killed as a result of the Delta Ignition Switch Defect are not barred by the Sale Order from asserting successor liability claims against New GM based on the conduct of Old GM as a function of the Sale Order; (iii) Post-Closing Accident victims who allege they were injured or killed as a result of the Delta Ignition Switch Defect (including the first Bellwether Plan cases governed by MDL Order Nos. 25 and 34 and Phase Two Bellwether Plan Categories A and B established by MDL Order No. 107) are not barred by the Sale Order from asserting successor liability claims against New GM based on the conduct of Old GM; (iv) owners of other Old GM "non-ignition switch" recall vehicles, including those in Phase Two Bellwether Plan Category C, are free to assert successor liability claims against New GM upon proof that their due process rights were violated.[3]

---

[3] The cases in the first Bellwether Plan and Phase Two Bellwether Plan Categories A and B concern NHTSA Recall No. 14V047. Phase Two Bellwether Plan Category C includes cases regarding NHTSA Recall Nos. 14V355, 14V346, 14V394, 14V400, and 14V540.

09-50026-mg Doc 13790-1 Filed 07/27/16 Entered 07/27/16 08:59:27 Exhibit A - Endorsed Joint Letter Pg 5 of 11
Case 1:14-md-02543-JMF Document 3142 Filed 07/26/16 Page 4 of 10

The Honorable Jesse M. Furman
July 25, 2016
Page 4

In light of the Second Circuit's decision, plaintiffs are examining whether a new category of cases involving Pre-Closing Accident victims who allege they were injured or killed as a result of the Delta Ignition Switch Defect should be added to the Phase Two Bellwether Plan for Personal Injury and Wrongful Death Cases. The pool of cases included in the initial bellwether plan was artificially limited by the stay of the Pre-Closing Accident Plaintiffs' claims. Moreover, it would be informative for settlement purposes to try at least some cases involving the core set of vehicles based only on what Old GM knew and did prior to the Sale. Plaintiffs will continue to meet and confer with New GM on this issue. Plaintiffs may also seek leave to file late proofs of claim in the Bankruptcy Court on behalf of certain owners of vehicles with the Delta Ignition Switch and other ignition switch defects.

In addition, the wrongful death and personal injury plaintiffs will also seek relief from the "free and clear" provisions on behalf of owners and lessors of Old GM vehicles with other ignition switch defects, including those in Phase Two Bellwether Plan Category C. (*See* MDL Order No. 107 (Docket No. 3081) at ¶3(c)). These other defects, which are similar to the Delta Ignition Switch Defect, were also known to Old GM, and the vehicle owners' due process rights were violated because they did not receive constitutionally sufficient notice. Upon proof of a due process violation, plaintiffs will seek to bring successor liability claims on behalf of these other owners in this Court. Plaintiffs are hopeful that the schedule for the Phase Two Bellwether Trial Plan established in MDL Order No. 107 gives the parties sufficient time and flexibility to conduct discovery and schedule the Category C trials after a court determines whether successor claims are barred by the Sale Order. However, plaintiffs request that the Court entertain plaintiffs' position on whether the trial schedule included in the Phase Two Bellwether Trial Plan should be adjusted after both the Category C cases are chosen on July 29, 2016 and the bankruptcy court establishes a briefing schedule to resolve outstanding issues. In addition, plaintiffs believe that the Second Circuit's remand to determine whether plaintiffs' due process rights were violated with respect to these other defects provides good cause for additional recall-related discovery of New GM and additional depositions of New GM witnesses.

Finally, plaintiff Stephanie Cockram, whose claims will be tried in the upcoming Bellwether Trial No. 5, intends to meet and confer with New GM regarding whether the Second Circuit's ruling that Old GM knew or should have known about the ignition switch defect by no later than May 2009 (*see In Matter of Motors Liquidation Co.*, -- F.3d --, 2016 WL 3766237, at *16-17 (2d Cir. July 13, 2016)) should be given collateral estoppel effect. New GM's argument that the Court should delay briefing on the collateral estoppel issue until after final appellate review of the Second Circuit's decision contradicts the well-settled principle that "[a] judgment may be final, despite the fact that an appeal from it has not been decided. . . . " *Sherman v. Jacobson*, 247 F. Supp. 261, 268 (S.D.N.Y 1965) (citing *United States v. Nysco Labs., Inc.*, 318 F.2d 817 (2d Cir. 1963)). There is ample time between now and September 12, 2016 to brief this important issue. The parties have completed all briefing on OSI, motions *in limine*, *Daubert*, and summary judgment. *See* MDL Order No. 100. It also makes no sense to wait until after the next bellwether trial to determine if plaintiffs can collaterally estop New GM from disputing that Old GM knew about the ignition switch defect by no later than May 2009. *Cockram* is the last of the plaintiff-pick cases from the initial bellwether plan to be tried and the only remaining initial plan bellwether case where the crash pre-dates New GM's admission that it knew of the safety defect by the spring of 2012. For *Cockram* to have any

09-50026-mg    Doc 13700-1    Filed 07/27/16    Entered 07/27/16 08:59:27    Exhibit A -
Endorsed Joint Letter    Pg 6 of 11
Case 1:14-md-02543-JMF    Document 3142    Filed 07/26/16    Page 5 of 10

The Honorable Jesse M. Furman
July 25, 2016
Page 5

real bellwether value, therefore, the collateral estoppel issue should be decided prior to the *Cockram* trial.

**New GM's position**:  In addition to its position as set forth above, New GM opposes plaintiffs' suggestion that the Phase Two Bellwether Plan should be expanded to include air bag non-deployment claims arising out of accidents occurring before July 10, 2009, in the following vehicles: MY 2005-2007 Chevrolet Cobalt, MY 2007 Pontiac G5, MY 2003-2007 Saturn Ion, MY 2006-2007 Pontiac Solstice, MY 2006-2007 Chevrolet HHR, and MY 2007 Saturn Sky.  As the Court knows, the initial bellwether plan involved these same model years (Order No. 34, Docket No. 573), and plaintiffs just recently stated that "there should be no additional bellwether cases involving the types of claims and vehicles within the scope of the initial bellwether plan created by Order No. 25."  (5/20/2016 Ltr. from R. Hilliard at 1, Docket No. 2878.)  Although the time period in which these accidents occurred may be different, the recalls, vehicles, and parts at issue are identical to those already addressed in the Phase One Bellwether Plan.  Plaintiffs offer no explanation as to why the Phase Two Bellwether Plan should be expanded to include these cases or what information plaintiffs would be seeking to learn from this category that they could not obtain from the initial bellwether plan cases.

With respect to additional proceedings in the Bankruptcy Court seeking a due process determination as to other recalls, New GM will respond to plaintiffs' filings in the ordinary course and reserves its rights thereto.  With respect to plaintiffs' request for additional discovery and additional depositions in connection with such proceedings, should they go forward pending further review of the Second Circuit's decision, New GM states that this Court's Phase One, Phase Two, and Phase Three discovery plans have already provided Lead Counsel with substantial discovery into these recalls in addition to the Delta ignition switch recall that is the subject of the Second Circuit opinion and the Phase One Bellwether Plan.  New GM states that any further due process proceedings in the Bankruptcy Court should be limited to an appropriate subset of these recalls and that Lead Counsel already have been provided substantially all of the discovery necessary for such proceedings.  In particular, this Court's "one deposition" rule should continue to be enforced.  (*See, e.g.* Order No. 107 ¶5; Order No. 36 ¶ 43, Docket No. 604.)  Nevertheless, New GM is prepared to meet and confer with Lead Counsel regarding any request for targeted supplemental discovery, including with respect to the proper scope and the proper forum for any additional recall-related discovery.

Moreover, New GM opposes plaintiff Stephanie Cockram's request for a briefing schedule regarding the collateral estoppel effect of the Second Circuit's purported "ruling" regarding Old GM's alleged knowledge of the ignition switch defect in May 2009.  At a July 18, 2016 conference held specifically to address the impact of the Second Circuit's decision on the *Cockram* trial, counsel for plaintiff Stephanie Cockram unequivocally stated "the bottom line is for us we don't think that the Second Circuit opinion affects *Cockram* substantively or procedurally."  (7/18/2016 Tel. Conf. Tr. at 4:14-16.)  Lead Counsel should be held to his word.  New GM further states that any determination of the alleged collateral estoppel effect of the Second Circuit's statement could substantially impact not only *Cockram*, but every one of the hundreds of cases pending both in the MDL and in state courts nationwide.  It is unlikely that briefing of this magnitude can be accomplished prior to the *Cockram* trial date and, regardless, should await final appellate review of the Second Circuit decision.  *See Algonquin Power Income Fund v. Christine Falls of New York,*

09-50026-mg Doc 13790-1 Filed 07/27/16 Entered 07/27/16 08:59:27 Exhibit A - Endorsed Joint Letter Pg 7 of 11
Case 1:14-md-02543-JMF Document 3142 Filed 07/26/16 Page 6 of 10

The Honorable Jesse M. Furman
July 25, 2016
Page 6

*Inc.*, 362 F. App'x 151, 154 (2d Cir. 2010) ("The Supreme Court has observed that the law 'is clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment.' *Arizona v. California,* 460 U.S. 605, 619, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). We have likewise recognized that res judicata and collateral estoppel do not speak to direct attacks in the same case, but rather apply only in subsequent actions.") (internal citations and quotations omitted). Finally, while plaintiffs briefly refer to the issue of whether the Second Circuit decision impacts the definition of an Independent Claim, Cockram's counsel did not raise this issue at the July 18, 2016 conference as having any impact on the *Cockram* trial and Lead Counsel confirmed during the parties' meet and confer that, putting aside the collateral estoppel issue they raise herein, plaintiff Stephanie Cockram does not believe the Second Circuit decision has any impact on her case.

### 4. Proceedings in the Bankruptcy Court.

On July 18, 2016, the Honorable Martin Glenn held a status conference and ordered all concerned parties to meet and confer to develop a comprehensive set of issues that will require resolution, as well as a briefing schedule for the resolution of those issues. The parties are currently meeting and conferring and will keep the Court apprised of all further developments.

### 5. Order of Summation in *Cockram*.

Plaintiff Stephanie Cockram believes that, as the party with the burden of proof, she should be permitted to give the first opening argument and the last closing argument. *See* <u>L-3 Commc'ns Corp. v. OSI Sys., Inc.</u>, 418 F. Supp. 2d 380, 383 (S.D.N.Y. 2005) ("Ordinarily, the trial court extends the privilege of opening and closing the case to the party that has the burden of proof."); *see also* <u>Anheuser-Busch, Inc. v. John Labatt Ltd.</u>, 89 F.3d 1339, 1344 (8th Cir. 1996) (same); <u>Martin v. Chesebrough-Pond's, Inc.</u>, 614 F.2d 498, 501 (5th Cir. 1980) (same). Plaintiff proposes that the parties meet and confer with respect to the order of summation and propose a briefing schedule to resolve any disputes.

New GM opposes plaintiff's request for rebuttal argument. Plaintiff's request is contrary to the Court's practice to have plaintiffs deliver closing arguments first, followed by defendants, without any rebuttal arguments. (*See* 3/28/2016 *Barthelemy* Trial Tr. 1802:23 - 1803:5 ("And it is plaintiff first, defendant second, no rebuttal. I think you know that already.").) The fact that plaintiff is the party with the burden of proof is not a reason to deviate from the Court's ordinary practice; of course, plaintiffs *always* (putting aside counterclaims and cross-claims) have the burden of proof. Plaintiff has offered no reason, let alone a compelling one, to deviate from the Court's standard practice, of which plaintiff has had ample notice, and for which the Court enjoys broad discretion. *See Stepski v. M/V Norasia Alya*, 427 F. App'x 45, 48 (2d Cir. 2011), as amended (July 5, 2011) ("Nor do we identify any error, let alone prejudicial error, in the district court's allocation of trial time or its chosen order for presenting summations to the jury. Such trial management is generally consigned to the broad discretion of the district court."); *E. Mishan & Sons, Inc. v. Homeland Housewares LLC*, 580 F. App'x 26, 27 (2d Cir. 2014) (same); *see also* Fed.R.Evid. 611; S.D.N.Y. Local Civil Rule 39.2. As such, New GM does not believe it is necessary for the parties to brief this issue.

09-50026-mg Doc 13790-1 Filed 07/27/16 Entered 07/27/16 08:59:27 Exhibit A - Endorsed Joint Letter Pg 8 of 11
Case 1:14-md-02543-JMF Document 3142 Filed 07/26/16 Page 7 of 10

The Honorable Jesse M. Furman
July 25, 2016
Page 7

### 6. The Impact of this Court's Order Regarding New GM's Partial Motion to Dismiss the TACC.

**Plaintiffs' Position**: Plaintiffs continue to digest this Court's ruling and its implications for the remainder of this case as they amend the TAC. As highlighted above, we need more time to consult the leadership group and make many decisions that will inform preparation of the FACC, including the scope of claims and how that scope will impact the focus of further discovery efforts and a master schedule for resolving the economic loss claims. At a minimum, additional discovery may be needed into (i) vehicles with other, non-Delta ignition switch defects, including those vehicles covered by NHTSA Recalls No. 14V346 (TACC ¶¶ 392-416); 14V355 (TACC ¶¶ 417-451), 14V394 and 14V400 (TACC ¶¶ 452-504); (ii) the wiring harness defect (*see* TACC ¶¶ 645-648); and (iii) the sudden power steering defect. TACC ¶¶ 754-772. Accordingly, Plaintiffs propose that, at a minimum, the next phase of discovery should include depositions concerning these defects. While Plaintiffs are mindful of the Court's prior ruling in connection with upcoming bellwether trials that depositions concerning the other ignition switch defects should have been taken earlier in the proceedings, that discovery was driven by the impending trials involving the Delta Ignition Switch defect and that (prior to this Court's Order and the Second Circuit's ruling) it was not even clear which other defects might be at issue in the economic loss case. The economic loss Plaintiffs believe it would have made no sense in the economic loss context to focus the parties' resources on other ignition switch defects at that time—let alone on the wiring harness or power steering defects. Now that the Court's ruling, and the FACC, will make clear precisely which defects are at issue in the economic loss case, Plaintiffs request authorization to take those depositions in this case. Finally, Plaintiffs will need additional depositions on the other ignition switch defects in order to establish their due process violation and support their proof of claims in the Bankruptcy Court, and they believe that discovery is best conducted in the MDL for economy and convenience of all concerned parties. If that discovery does not take place in this Court, it will in the Bankruptcy Court. Plaintiffs are amenable to meeting and conferring with New GM in an effort to reach an agreement as to the scope and venue for additional discovery. If the parties cannot reach agreement, they can then bring any unresolved issues to the Court.

**New GM's Position**: Five of the recalls for which plaintiffs now seek additional discovery were the subject of the Phase One Discovery Plan and the sixth was the subject of the Phase Two Discovery Plan.[4] Lead Counsel offer no basis as to why additional document discovery should be permitted, much less why the Court should reverse its repeated prior rulings rejecting plaintiffs' categorical request for additional depositions on the Phase One and Phase Two Recalls. (*See* Order No. 107 ¶ 5(b), Docket No. 3081 ("absent agreement of the parties or good cause shown, plaintiffs are not entitled to additional recall-related discovery or New GM or additional depositions of GM witnesses").) The economic loss plaintiffs offer no better reason to re-open recall-related discovery in July 2016 than the personal injury and wrongful death plaintiffs offered in June 2016. (*See* 6/17/2016 Status Conf. Tr. at 39:14-16 ("But, there is really just no reason — I am about to fall on the sword. I'm not about to come up with reasons why, make up reasons. It is what it is.").) In fact, the economic loss plaintiffs have even less of a basis to ask for a categorical rule seeking

---

[4] Four of these Phase One recalls concern unintended key rotation (NHTSA Recalls No. 14-V-346, 14-V-355, 14-V-394 and 14-V-400) and a fifth concerns the power steering recall (NHTSA Recall No. 14-V-153). (Order No. 20 at 1, Docket No. 383.) The remaining wiring harness recall was the subject of the Phase Two Discovery Plan (NHTSA Recall No. 14-V-118). (Order No. 31 at 1, Docket No. 526.)

09-50026-mg  Doc 13790-1  Filed 07/27/16  Entered 07/27/16 08:59:27  Exhibit A -
Endorsed Joint Letter  Pg 9 of 11
Case 1:14-md-02543-JMF  Document 3142  Filed 07/26/16  Page 8 of 10

The Honorable Jesse M. Furman
July 25, 2016
Page 8

additional depositions regarding Phase One and Phase Two recalls, as the Court specifically clarified the deposition protocol order (*at the economic loss plaintiffs' request*) to provide that "where a deposition relates to both personal injury and economic loss claims, MDL plaintiffs may designate one (1) attorney to serve at the examiner on behalf of personal injury plaintiffs; and one (1) attorney to serve as the examiner of such deponent on behalf of economic loss plaintiffs." (Order No. 43 ¶ 29, Docket No. 744.)  The economic loss plaintiffs took full advantage of this provision and asked questions at multiple depositions.  The economic loss plaintiffs' assertion that discovery in Phase One and Phase Two "was driven by the impending trials involving the Delta Ignition Switch defect" is contradicted by the Court's prior orders and plaintiffs' conduct.

Nevertheless, New GM is prepared to meet and confer with Lead Counsel to see if they have a proposal for additional discreet and narrowly-tailored discovery, if any, that they believe is necessary, especially where Lead Counsel confirmed in the parties' meet and confer that the FACC will most likely focus on only these six recalls, in addition to the Delta ignition switch recall.  The parties can then bring any specific unresolved disputes to the Court.

### 7. Class Certification.

**Plaintiffs' Position**:  The economic loss Plaintiffs propose bellwether class certification proceedings on the California claims upheld in the Court's ruling as they believe that the results of those proceedings will greatly advance the resolution of this case. Plaintiffs believe California is the best state for a test case for two reasons: First, because it is the largest state, the ruling will have a very large impact and second, because its law is quite liberal, if class certification is not possible under California law that would be a significant indication as to the value of the case.  To be absolutely clear, Plaintiffs are proposing the same California Class Representatives and the same claims upheld in the TACC.  Plaintiffs further propose that the parties meet and confer on a proposed schedule for class representative depositions, expert discovery, and class certification briefing and submit either a joint proposed schedule or competing proposals with simultaneous letter briefs by **Thursday, August 11, 2016**.  As part of that meet and confer process, Plaintiffs are willing to discuss the addition of another state from amongst the states with Class Representatives whose claims were upheld in the Court's Order.

**New GM's Position**:  New GM notes that Lead Counsel have confirmed in the parties' meet and confer that the FACC will not bring a nationwide class, but that they will be adding additional putative class representatives, including multiple new California putative class representatives.  As to briefing for a California-only class, New GM opposes plaintiffs' proposal because it is premature, unworkable, and unfairly prejudicial to New GM.  Given the Court's statements in its July 15, 2016 Motion to Dismiss Order, it is premature to set a schedule now for class certification. At a minimum, Lead Counsel should first file their FACC, and New GM would need to know what plaintiffs, what claims, and what recalls are at issue in a complaint that survives further motion practice, if necessary, under Rule 12.  To discuss a schedule for class certification before such time, divorced from a complaint with viable claims, would work unfair prejudice to New GM.  When the time does come to discuss class certification, New GM submits that it makes no sense to brief class certification for only a single state given that state laws differ substantially; whether class certification might be appropriate in one state says next to nothing about whether class treatment might be appropriate under a different state's laws.  New GM submits that it would make much

09-50026-mg Doc 13790-1 Filed 07/27/16 Entered 07/27/16 08:59:27 Exhibit A - Endorsed Joint Letter Pg 10 of 11
Case 1:14-md-02543-JMF Document 3142 Filed 07/26/16 Page 9 of 10

The Honorable Jesse M. Furman
July 25, 2016
Page 9

more sense for the parties to identify a handful of representative states and to brief the laws of those states to inform—to the extent any class is certified in any state—how many such classes there might be nationwide. New GM believes that such briefing, at the appropriate time, will demonstrate that that no state class should be certified. New GM will be prepared to address potential class certification proceedings at the Status Conference.

### 8. Disputes Regarding Absent Putative Class Member Discovery.

The parties have met and conferred regarding plaintiffs' position with respect to the FACC. Among other things, plaintiffs intend to add additional putative class representatives. Accordingly, the parties respectfully request an extension, *nunc pro tunc*, of the deadline in Order No. 90 Section X (Docket No. 1948) to submit competing letter briefs regarding absent putative class member discovery. (Technically, the parties were to submit briefs on this topic by last Friday, July 22, 2016, but have been trying to work out various issues regarding this agenda letter as well as the to-be-filed FACC, and thus respectfully request that the date for such briefs be moved to September 20, 2016, one week after the filing of the FACC, so the parties can meet and confer in an effort to narrow any disputes). The parties apologize for their oversight with respect to this deadline.

### 9. Coordination in Related Actions.

The parties will be prepared to address their ongoing coordination efforts and emerging coordination risks in Related Actions. (*See* Order No. 15, Docket No. 315.)

### 10. *Byrd* Remand Motion.

The parties in the *Byrd, et al. v. Chupp's Country Cupboard, et al.*, 16-CV-4180 (S.D.N.Y.) anticipate submitting a proposed stipulation and order to resolve the pending remand motion, wherein the parties will agree to sever and remand plaintiffs' claims against all defendants other than the GM Defendants to state court, while any and all claims against the GM Defendants will remain in the MDL. New GM anticipates that the parties' stipulation will be ready for submission prior to July 28, 2016, the date the GM Defendants' response to the pending remand motions is presently due; in the event the stipulation is not filed by that date, New GM anticipates seeking a one-week extension to finalize the stipulation. New GM will be prepared to address any questions the Court may have with respect to this proposed stipulation and order.

### 11. Settlement.

The parties continue to discuss possible resolution mechanisms. Additionally, per Order No. 108 (Docket No. 3115), the parties anticipate submitting an agreed upon order adopting procedures to address plaintiffs who fail to comply with their document production obligations under Order No. 108.

09-50026-mg    Doc 13700-1    Filed 07/27/16    Entered 07/27/16 08:59:27    Exhibit A -
Endorsed Joint Letter    Pg 11 of 11

Case 1:14-md-02543-JMF    Document 3142    Filed 07/26/16    Page 10 of 10

The Honorable Jesse M. Furman
July 25, 2016
Page 10

Respectfully,

| /s/ Steve W. Berman | /s/ Elizabeth J. Cabraser | /s/ Bob Hilliard |
|---|---|---|
| Steve W. Berman | Elizabeth J. Cabraser | Bob Hilliard |
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd |
| Suite 3300 | 29th Floor | Suite #500 |
| Seattle, WA 98101 | San Francisco, CA 94111-3339 | Corpus Christi, TX 78401 |
| -and- | -and- | |
| 555 Fifth Avenue | 250 Hudson Street | |
| Suite 1700 | 8th Floor | |
| New York, NY 10017 | New York, NY 10013-1413 | |

cc:    The Honorable Martin Glenn
       MDL Counsel of Record

The Court makes the following rulings with respect to disputes and issues raised above:

(1) The request to extend the deadline to file the FACC until **September 13, 2016**, is GRANTED;

(2) The Court will entertain briefing on the *Cockram* collateral estoppel effect issue. Unless the Court orders otherwise at the July 28, 2016 status conference, the parties are directed to submit simultaneous briefs, not to exceed fifteen pages, no later than **August 9, 2016**; replies, not to exceed eight pages, shall be filed no later than **August 16, 2016**;

(3) Plaintiff Stephanie Cockram's request to alter the Court's standard practice with respect to the order of summations in the fifth bellwether trial is DENIED; and

(4) The parties' request to extend the deadline, *nunc pro tunc*, to file briefs on absent putative class member discovery until **September 20, 2016**, is GRANTED.

Counsel should otherwise be prepared to address, and/or update the Court with respect to, each of the issues discussed in the letter above at the July 28th status conference. In addition, counsel should confer, as appropriate, with respect to the following issues and/or questions and be prepared to address them at the conference:

(5) The parties should be prepared to propose a deadline by which the *Yingling* matter will be remanded to the transferor court (or the Court will set a deadline of its own choosing); and

(6) The parties should be prepared to discuss the status of the appeals from the Bankruptcy Court that were stayed pending the Second Circuit's ruling (16-CV-0098, 16-CV-0501, 16-CV-0512).

SO ORDERED.

July 26, 2016