| | |
|---|---|
| WESTERMAN BALL EDERER MILLER<br>   ZUCKER & SHARFSTEIN, LLP<br>1201 RXR Plaza<br>Uniondale, New York 11556<br>Telephone: (516) 622-9200<br>Eric G. Waxman III, Esq.<br>Richard F. Harrison, Esq.<br>*Attorneys for River Birch Capital LLC* | Hearing: August 5, 2016, 10:00 a.m. (ET) |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, f/k/a<br>GENERAL MOTORS CORPORATION, *et al.*, | Case No. 09-50026 (MG)<br>(Jointly Administered) |
| Debtors. | Adversary Proceeding Case No.<br>11-09406 (MG) |

------------------------------------------------------------------------x

### LIMITED OBJECTION TO THE JOINT MOTION OF THE AVOIDANCE ACTION TRUST AND COMMITTEE FOR, AMONG OTHER THINGS, AN ORDER APPROVING THE SETTLEMENT OF THE ALLOCATION DISPUTE, INCLUDING THE LITIGATION COST ADVANCE AGREEMENT[1]

River Birch Capital LLC, as the Investment Manager with authority for River Birch Master Fund, LP ("**Private Funder**") files this Limited Objection and reservation of rights to the Joint Motion of Motors Liquidation Company Avoidance Action Trust ("**Avoidance Action Trust**" or "**Trust**") and the Official Committee of Unsecured Creditors ("**Committee**" and together with the Avoidance Action Trust, "**Joint Movants**"), by which the Joint Movants seek entry of an Order that, among other things, approves the integrated settlement of the Allocation

---

[1] Joint Motion of Motors Liquidation Company Avoidance Action Trust and Official Committee of Unsecured Creditors for Entry of (A) Stipulation and Agreed Order (I) Settling Disputed Entitlements of Debtor-in-Possession Lenders and Official Committee of Unsecured Creditors to Potential Term Loan Avoidance Action Proceeds and (II) Modifying Avoidance Action Trust Agreement to Implement Settlement, and (B) Order (I) Approving Settlement of the Allocation Dispute, (II) Approving Amendments to the Avoidance Action Trust Agreement, and (III) Authorizing the Avoidance Action Trust to Grant an Lien to the DIP Lenders, dated July 15, 2016 [Bankr. Dkt. No. 13688] ("**Joint Motion**"). Capitalized terms not otherwise defined have the meanings ascribed to them in the Joint Motion.

Dispute[2] and implements a Litigation Cost Advance Agreement by which the DIP Lenders loan $15 million to the Avoidance Action Trust. The Private Funder objects and respectfully states as follows:

**OBJECTION**

1. By the Private Litigation Funding Agreement,[3] Private Funder agreed to invest $15 million to provide funding to the Avoidance Action Trust to continue its prosecution of the Term Loan Avoidance Action ("**TLA Action**").[4]  In exchange, the Private Funder would receive a return calculated as the greater of (a) 4.75 percent of the aggregate proceeds of the TLA Action or (b) 2.25 times the amount of the investment drawn by the Avoidance Action Trust.

2. The Private Litigation Funding Agreement is an exclusive agreement with only limited termination rights in favor of the Avoidance Action Trust. As the agreement was the result of extensive competitive bidding and arms' length negotiations, it is not subject to higher and better offers and does not contain a "fiduciary out." The Private Litigation Funding Agreement does permit termination, but only if the DIP Lenders timely provide funding "on terms **materially more favorable** to the Trust than those provided by the Investors under this [Private Litigation Funding] Agreement."[5]

---

[2] *Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. U.S. Dep't of Treasury (In re Motors Liquidation Co.)*, Adv. Pro. No. 11-09406, Dkt. No. 1 (Bankr.S.D.N.Y. June 6, 2011).

[3] Funding Agreement dated as of May 19, 2016 among the Avoidance Action Trust, Investors, and U.S. Bank National Association, as Administrative Agent and Collateral Agent ("**U.S. Bank**"), a copy of which is attached as Exhibit B [Bankr. Dkt. No. 13650-2] to the Motion of the Avoidance Action Trust for an Order Approving the Private Litigation Funding Agreement, dated June 23, 2016 [Bankr. Dkt. No. 13650] ("**Private Funding Approval Motion**"), and subsequently withdrawn by the Avoidance Action Trust. *See* Letter to the Court from Counsel to the Avoidance Action Trust, dated July 15, 2016 [Bankr. Dkt. No. 13690].

[4] *Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.),* Adv. Pro. No. 09-00504 (Bankr.S.D.N.Y. July 31, 2009) [Adv. Pro. Dkt. No. 1] ("**TLA Action**").

[5] *See* Definition of "Permitted Alternative Funding Event," Private Litigation Funding Agreement, § 1.1 (emphasis added).

3. The Joint Motion seeks approval of alternative funding through a $15 million loan from the DIP Lenders under the Litigation Cost Advance Agreement that is "inextricably linked to (and conditioned on)" the allocation settlement.[6] While the Avoidance Action Trust claims that a Permitted Alternative Funding Event has occurred under the Private Litigation Funding Agreement and has acted to terminate that agreement,[7] the Private Funder rejects the Trust's claim as it is clear that the Litigation Cost Advance Agreement is in no sense "free." In fact, it is considerably more expensive than the financing under the Private Litigation Funding Agreement.

4. Critically, the DIP Lenders' Litigation Cost Advance Agreement is explicitly conditioned upon approval of the settlement of the Allocation Dispute by which the DIP Lenders shall receive 30 percent of the proceeds of the TLA Action (after payment of, among other things, the Litigation Cost Advance). If there is no approval of the 30 percent allocation, there is no funding. The Joint Movants offer no explanation or rationale for the bundling of the Litigation Cost Advance Agreement and the Allocation Dispute settlement, but it is clear by the fact that the cost advance is conditioned on the settlement consideration that some portion of the settlement payment is being used to pay for the cost advance.[8]

---

[6] *See* Joint Motion, ¶ 5, 51 Ex. C.

[7] *See* Letter dated July 15, 2016 from Avoidance Action Trust to Private Funder and U.S., a copy of which is attached as **Exhibit A** to this Objection. The Private Funder rejects the Avoidance Action Trust's assertion that a Permitted Alternative Funding Event has occurred. *See* note 10, *infra*.

[8] The Private Funder requested that both the Avoidance Action Trust and the Committee (a) to provide their analysis of the cost of the Litigation Cost Advance Agreement from the DIP Lenders, including how much the DIP Lenders' advance would cost if it were unbundled from the Allocation Dispute settlement and (b) whether the DIP Lenders are willing to provide the cost advance on a stand-alone basis. *See* Letter dated July 21, 2016 from the Private Funder to the Trust and Letter dated July 22, 2016 from the Private Funder to counsel for the Committee, copies of which are attached as **Exhibits B and C** to this Objection. The Trust responded by Letter dated July 25, 2016 to the Private Funder, a copy of which is attached as **Exhibit D** to this Objection ("**Trust Letter Response**").The Committee responded by letter dated July 27, 2016, a copy of which is attached as Exhibit **E** to this Objection (the "**Committee Response**").

5.    The Trust would have the Court and interested parties believe that "the DIP Lenders are providing the Trust money at no cost,"[9] but this fiction is belied by the DIP Lenders' requirement that they receive a substantial portion of the TLA Action proceeds in exchange for the Litigation Cost Advance Agreement. The Joint Movants cannot have it both ways – either the cost of the Litigation Cost Advance Agreement is all or a meaningful portion of the TLA Action proceeds or the DIP Lenders should commit to making the Litigation Cost Advance Agreement even if the Allocation Dispute settlement is rejected.

6.    While neither the Trust nor the Committee has conducted any comparative analysis of the two funding transactions,[10] the Motion hints that the DIP Lenders' loan is, at best, no better than the Private Litigation Funding Agreement.[11] Further, the Committee admits that it never considered the cost of the Litigation Advance Agreement unbundled from the settlement, or whether the DIP Lenders would even provide financing that was not being paid for by the settlement.[12] This is a remarkable admission considering the Committee knew that competitive stand-alone litigation funding was being proposed to the Trust when the Committee started to consider a bundled proposal from the DIP Lenders.

---

[9] *See* Trust Letter Response in which the Trust claims that the DIP Lenders' loan is "at no cost," baldly asserts that the proceeds of the TLA Action are not "additional consideration" for the loan, and concedes that it has not conducted any "comparative analysis of the two [funding] transactions."

[10] *See* Exhibit D, Trust Letter Response, and Exhibit E, Committee Response.

[11] *See* Joint Motion at ¶ 50 (the Committee submits that the "cost" of the Allocation Dispute settlement (30%) should be reduced by the cost of litigation funding provided by the DIP Lenders, which the Committee suggests should be calculated at 5 percent -- the approximate cost of the Private Litigation Funding Agreement.

[12] *See* Exhibit E, Committee Response, fn. 2.

7. The Private Funder has prepared a comparison of the financing costs under both proposals,[13] and in virtually all recovery outcomes under the TLA Action, the DIP Lenders' cost advance is **materially more expensive** than the Private Litigation Funding Agreement -- in many cases, hundreds of millions of dollars more expensive. Under no reasonable analysis for recoveries in excess of $77.5 Million, are the terms of the alternative funding "more favorable" to the Avoidance Action Trust.

---

[13] See AAT Funding Agreement Comparisons attached as **Exhibit F** to this Objection, comparing payments to the Private Funder and the DIP Lenders under different TLA Action recoveries.

## CONCLUSION AND RESERVATION OF RIGHTS

8. Consequently, a Permitted Alternative Funding Event has not occurred, the Avoidance Action Trust is not authorized to terminate the Private Litigation Funding Agreement, and approval of the DIP Lenders' Litigation Cost Advance Agreement could expose the Avoidance Action Trust to, among other things, breach of contract claims. The Court should consider that risk as it evaluates the Joint Motion.

9. The Private Funder reserves all of its rights and remedies and those of the Agent under the Private Litigation Funding Agreement and applicable law.

Dated:  Uniondale, New York
        July 27, 2016

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP

By: /s/Eric G. Waxman III, Esq.
    Eric G. Waxman III, Esq.
    Richard F. Harrison, Esq.
    1201 RXR Plaza
    Uniondale, New York 11556
    Telephone:  (516) 622-9200
    *Attorneys for River Birch Capital LLC*

1409877.6