# EXHIBIT C

**RIVER BIRCH CAPITAL LLC**
**Grace Building**
**1114 Avenue of the Americas, 41st Fl.**
**New York, New York 10036**

July 22, 2016

Robert T. Schmidt, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036

    Re: <u>Funding Agreement dated as of May 18, 2016 ("Funding Agreement")</u>

Bob:

Further to our discussion of Monday, July 18, we received a letter from Wilmington Trust, dated July 15, 2016, claiming to terminate the Funding Agreement as a result of a purported Permitted Alternative Funding Event. Based on the limited information provided in the joint motion of the Trust and the Committee of Unsecured Creditors (the "Motion"), it does not appear to us that the conditions for a Permitted Alternative Funding Event under the Funding Agreement have occurred. Accordingly, we do not believe the Avoidance Action Trust has effectively terminated the Funding Agreement, and the alternative financing that is part of your settlement and attached to the Motion conflicts with our Funding Agreement.

My conversations with Eric as well the Motion indicate that the Trust claims that the DIP Lenders have agreed to provide a "$15 million (interest free) Litigation Cost Advance." However, the cost advance is "inextricably linked to (and conditioned on)" additional valuable consideration being paid to the DIP Lenders. In our view, that additional consideration makes the proposed Litigation Cost Advance materially <u>less</u> favorable to the Trust than the funding provided under the Funding Agreement. In fact, in every Term Loan Avoidance Action outcome in excess of $77.5 million, the DIP Lender's Litigation Cost Advance is more expensive -- and in most cases hundreds of millions of dollars more expensive -- than the funding provided under the Funding Agreement.

Because the Trust, the DIP Lenders and the Committee have chosen to bundle the Litigation Cost Advance and the Allocation Dispute settlement, the exact cost of the advance is obscured. Nonetheless, the Motion effectively admits that the cost advance is not "free," and the DIP Lenders would not provide the cost advance without the significant additional consideration.

In investigating our rights under the Funding Agreement and our potential objection to the Motion, we request that you immediately provide us with the Committee's analysis of the cost of the Litigation Cost Advance, including how much the cost advance would cost if it were unbundled from the settlement. Please also provide detail as to what lower percentage of the Term Loan Avoidance Action the DIP Lenders would have agreed to if the Creditors' Committee had not required the DIP Lenders to provide the Litigation Cost Advance. In addition, please provide us with detail on the DIP Lenders' willingness to provide the Litigation Cost Advance on a stand-alone basis.

Our Funding Agreement requires that a Permitted Alternative Funding Event occurs only if the alternative funding is on terms "materially more favorable to the Trust" than those provided under the Funding Agreement. Based on our analysis, the proposed Litigation Cost Advance could cost the Trust nearly $400 million more than the financing under the Funding Agreement. That proposal does not satisfy the conditions required to terminate our agreement. We therefore reserve all of our rights and the rights of the Agent under the Agreement as well as all rights with regard to the Motion.

Best Regards,

James P. Seery, Jr.

Partner
Jseery@riverbirchcap.com

Cc:
Arthur J. Gonzalez
Eric B. Fisher
James A. Hanley