# EXHIBIT E

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

ROBERT T. SCHMIDT
PARTNER
PHONE  212-715-9527
FAX  212-715-8000
RSCHMIDT@KRAMERLEVIN.COM

July 27, 2016

**VIA EMAIL**
James P. Seery
River Birch Capital LLC
Grace Building
1114 Avenue of the Americas, 41st Fl.
New York, NY 10026
jseery@riverbirchcap.com

Re:   Funding Agreement dated as of May 18, 2016 ("Funding Agreement")

Jim,

We write in response to your letter dated July 22, 2016 regarding the Funding Agreement and the joint motion (the "Motion") of the Avoidance Action Trust and the Official Committee of Unsecured Creditors (the "Committee") dated July 15, 2016.[1]

As described in the Motion, the Committee continues to exist for one purpose: to litigate or settle the Allocation Dispute as to who receives the proceeds of the Term Loan Avoidance Action. The Committee has vigorously and effectively prosecuted the Allocation Dispute which, as you are aware, has been ongoing for almost six years. However, based on District Court Judge Colleen McMahon's most recent "ripeness" ruling, litigation concerning the Allocation Dispute may not even resume at the Bankruptcy Court level until the Term Loan Avoidance Action is finally resolved.  The Term Loan Avoidance Action has been pending for an even longer time and has the potential to continue for several more years.  Accordingly, absent a settlement the ultimate resolution of the Allocation Dispute would be many years away.

The Committee was contacted by the DIP Lenders in March concerning re-opening settlement discussions at a time when the Avoidance Action Trust had already alerted the Committee and others that it was exploring options to fund the ongoing litigation and other activities of the Avoidance Action Trust.  The DIP Lenders advised the Committee that they were considering providing the needed financing to the Avoidance Action Trust, but that they would only do so if the Allocation Dispute was settled at the same time.[2]  For obvious reasons the Committee

---

[1] Capitalized terms not otherwise described herein have the meaning ascribed to them in the Motion.

[2] As such, the hypothetical questions that you raise regarding settlement scenarios that the DIP Lenders might otherwise have agreed to absent the Litigation Cost Advance were not considered. Similarly, the Committee believes that the scenario described in your letter that the Funding Agreement is only worse for the Avoidance Action Trust if the Term Loan Avoidance Action

1177 Avenue of the Americas   New York NY 10036-2714   Phone 212.715.9100   Fax 212.715.8000
990 Marsh Road   Menlo Park CA 94025-1949   Phone 650.752.1700   Fax 650.752.1800
47 Avenue Hoche   75008 Paris France   Phone (33-1) 44 09 46 00   Fax (33-1) 44 09 46 01
www.kramerlevin.com

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

July 27, 2016
Page 2

was concerned about adequately funding the Avoidance Action Trust on terms acceptable to the Avoidance Action Trust. Contrary to the assertions in your letter, the Committee did not "require" or choose to "bundle" the Litigation Cost Advance with the Allocation Dispute settlement. However, the DIP Lenders willingness to provide the Litigation Cost Advance was not objectionable and revived the Committee's interest in exploring a possible settlement of the Allocation Dispute.

      Thereafter, and separate and apart from the Avoidance Action Trust funding, the Committee assessed the risk of litigating the Allocation Dispute, including among other things the legal and factual issues in dispute, the potential significance of questions posed by Judge McMahon, the prospect that the Allocation Dispute may have to be litigated before a new bankruptcy judge and the possibility of delay from protracted and future litigation and related appeals with the DIP Lenders, both of which are governmental agencies or entities with virtually unlimited resources. After multiple rounds of negotiations over the course of several months, with each side advised by counsel who were intimately involved in each stage of the Allocation Dispute litigation and the underlying transaction, the Committee and the DIP Lenders ultimately agreed to the 70/30 split as set forth in the Stipulation and Agreed Order.

      While it is undeniable that the DIP Lenders' requirement that it provide an interest-free Litigation Cost Advance is an integral part of the overall settlement, the Committee believes that the agreed upon settlement of the Allocation Dispute is reasonable on its own in all respects.

Sincerely,

/s/ Robert T. Schmidt
Robert T. Schmidt

cc:    Arthur J. Gonzalez
        Eric B. Fisher
        James A. Hanley

---

proceeds are less than $77.5 million is misleading and comparing "apples to oranges" because it presupposes complete victory by the Committee on the Allocation Dispute.