Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
BINDER & SCHWARTZ LLP
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008

*Attorneys for the Motors Liquidation
Company Avoidance Action Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, f/k/a GENERAL MOTORS CORPORATION, *et al.*, | Case No. 09-50026 (MG) (Jointly Administered) |
| Debtors. | Adversary Proceeding Case No. 11-09406 (MG) |

------------------------------------------------------------------------x

**REPLY OF MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST TO RIVER BIRCH CAPITAL LLC'S LIMITED OBJECTION TO THE JOINT MOTION OF MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF (A) STIPULATION AND AGREED ORDER (I) SETTLING DISPUTED ENTITLEMENTS OF DEBTOR-IN-POSSESSION LENDERS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO POTENTIAL TERM LOAN AVOIDANCE ACTION PROCEEDS AND (II) MODIFYING AVOIDANCE ACTION TRUST AGREEMENT TO IMPLEMENT SETTLEMENT, AND (B) ORDER (I) APPROVING SETTLEMENT OF THE ALLOCATION DISPUTE, (II) APPROVING AMENDMENTS TO THE AVOIDANCE ACTION TRUST AGREEMENT, AND (III) AUTHORIZING THE <u>AVOIDANCE ACTION TRUST TO GRANT A LIEN TO THE DIP LENDERS</u>**

**TO:    THE HONORABLE MARTIN GLENN,
         UNITED STATES BANKRUPTCY JUDGE:**

Wilmington Trust Company, solely in its capacity as trust administrator and trustee of the Motors Liquidation Company Avoidance Action Trust ("**Avoidance Action Trust**" or the "**Trust**"), submits this reply ("**Reply**") in response to the *Limited Objection to the Joint Motion of the Avoidance Action Trust and Committee for, Among Other Things, an Order Approving the Settlement of the Allocation Dispute, Including the Litigation Cost Advance Agreement* [Bankr. Dkt. No. 13701] ("**Limited Objection**"), and in further support of the motion filed jointly with the Official Committee of Unsecured Creditors of Motors Liquidation Company f/k/a General Motors Corporation ("**Committee**") on July 15, 2016 [Bankr. Dkt. No. 13688] (the "**Motion**").[1]

## PRELIMINARY STATEMENT

1.      The Avoidance Action Trust is in need of funds to fulfill its mandate under the Second Amended Joint Chapter 11 Plan dated as of March 18, 2011 [Bankr. Dkt. No. 9836] (as confirmed, the "**Plan**") to prosecute the Term Loan Avoidance Action and distribute any proceeds to its beneficiaries. To meet this need and to secure funding on the most favorable terms, the Trust sought funding from both private entities and from the United States Department of the Treasury ("**Treasury**") and Export Development Canada ("**EDC**," and collectively, the "**DIP Lenders**"). In March of this year, the DIP Lenders indicated preliminary interest in potentially providing $15 million in litigation funding (the "**Litigation Cost Advance**"), but only if they could resolve with the Committee the dispute concerning whether the DIP Lenders or the holders of Allowed General Unsecured Claims were entitled to the proceeds of the Avoidance Action Trust (the "**Allocation Dispute**"). In light of the Trust's need for immediate funding, and the indefinite nature of the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

discussions between the Committee and the DIP Lenders, the Trust went forward with a funding agreement with River Birch Capital LLC ("**River Birch**"). Although River Birch offered the Trust the best terms among the various private funders who made proposals, the cost to the Trust in connection with River Birch's funding would still be significant and could be more than $56 million should the Avoidance Action Trust recover all damages it seeks in the Term Loan Avoidance Action.[2]

2.  The funding agreement with River Birch (the "**Private Litigation Funding Agreement**") was conditioned on this Court's approval. It was understood, as reflected in the termination provision of the agreement, that prior to the hearing to approve the Private Litigation Funding Agreement, the Avoidance Action Trust might enter into an agreement with the DIP Lenders on terms more favorable to the Avoidance Action Trust than those provided by River Birch. Thus, the Private Litigation Funding Agreement permitted the Avoidance Action Trust to terminate the Private Litigation Funding Agreement if the DIP Lenders agreed to provide funding (or if a motion were filed seeking to provide such funding) on terms more favorable to the Trust than those offered by River Birch. That is precisely what happened.

3.  Prior to the July 18, 2016 hearing that was scheduled to be heard by this Court with respect to the Private Litigation Funding Agreement, the Avoidance Action Trust entered into an agreement with the DIP Lenders whereby they would provide $15 million in funding—the same amount River Birch had agreed to provide—at no cost to the Trust. This funding is being provided in the context of the resolution of the Allocation Dispute. This cost-free funding is, of course, a

---

[2] This potential cost of funding is calculated as follows: If the Trust draws the full $15 million under the Private Litigation Funding Agreement (as defined above) and recovers $1.5 billion in the Term Loan Avoidance Action, then it will owe River Birch $71,250,000 (4.75% of the recovery). Net of the $15 million in principal loaned to the Trust, the cost of funding is $56,250,000.

2

better deal for the Trust than that offered by River Birch. Accordingly, the Avoidance Action Trust timely terminated the Private Litigation Funding Agreement.

4. In an effort to resuscitate its deal, River Birch has filed a "limited objection" to the Motion contending, without any basis, that if the Court were to approve the Litigation Cost Advance it "could expose the Avoidance Action Trust to . . . breach of contract claims." Limited Obj. ¶ 8. Ignoring the obvious fact that a deal in which the Avoidance Action Trust pays nothing is materially better than one in which it would be required to pay the greater of 2.25 times the amount invested or 4.75% of total recoveries, River Birch argues to this Court that the Litigation Cost Advance Agreement with the DIP Lenders is not "materially more favorable to the [Avoidance Action] Trust." *Id.* ¶ 2.

5. In support of this argument, River Birch points the Court to an analysis that River Birch has done comparing the recoveries to the holders of Allowed General Unsecured Claims—ignoring the fact that the DIP Lenders have a competing claim to those proceeds—under two scenarios: (i) River Birch provides the funding and the holders of Allowed General Unsecured Claims receive 100% of all distributions, and (ii) the DIP Lenders provide the funding and the holders of Allowed General Unsecured Claims receive 70% of all distributions. The Committee's agreement to an allocation whereby the DIP Lenders receive 30% of distributions is what River Birch is misleadingly describing as a cost to the Avoidance Action Trust. River Birch appears to assume that the holders of the Allowed General Unsecured Claims are the only beneficiaries of the Trust and thus the amount allocated to the DIP Lenders as part of the settlement between the DIP Lenders and the Committee is a "cost." Even were it appropriate to characterize a settlement of an uncertain claim as a "cost"—and it is not since the DIP Lenders also assert a right to distributions and have agreed to give up 70% of their claim—it would be a cost to the holders of

3

Allowed General Unsecured Claims, not the Trust.  As it turned out, the Trust's need for funding served as the impetus for the parties to come to the table and resolve the Allocation Dispute now, thereby avoiding costly future litigation and potentially delaying distributions from the Trust.  The 70%/30% compromise of the Allocation Dispute is not in any way a "cost" of funding to the Trust.

6. The Court should deny River Birch's Limited Objection for the following reasons:

- First, River Birch lacks standing because it is not a party in interest that holds a financial stake in the Term Loan Avoidance Action.

- Second, the Limited Objection is not a genuine objection to the Motion.  It does not set forth any legal basis or argument for the Court to consider.

- Third, the Private Litigation Funding Agreement has been terminated consistent with its unambiguous terms and any suggestion that the Avoidance Action Trust is in breach of that agreement is without merit. The DIP Lenders' agreement to provide funding to the Avoidance Action Trust without any interest, fees or other charges is materially better than the Private Litigation Funding Agreement, which could cost the Avoidance Action Trust in excess of $56 million.

- Finally, the Motion is consistent with the Avoidance Action Trust's obligation to maximize recoveries for the benefit of *all* its beneficiaries.  The Avoidance Action Trust Agreement recognizes the conflict between the DIP Lenders and the Committee about entitlement to distributed proceeds, and the Trust cannot favor one group of beneficiaries over another.  In fact, the Plan expressly provides for the DIP Lenders and the Committee to resolve by "mutual agreement" the allocation of recoveries.  They have done so, and both factions of beneficiaries are in agreement that the Litigation Cost Advance Agreement is the best deal for the Trust.

## BASIS FOR REQUESTED RELIEF

**A.    River Birch Lacks Standing and Has Not Properly Stated an Objection**

7. The Limited Objection should be rejected because River Birch lacks standing. Section 1109 of the Bankruptcy Code defines a "party in interest" with a right to appear and be heard in a case to include: "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee . . . ." 11 U.S.C. § 1109(b).

4

8. While the definition of "party in interest" is broad, it is not "infinitely expansive" and its "meaning in a particular case depends on the purposes of the Code provision in question." *S. Blvd., Inc. v. Martin Paint Stores (In re Martin Stores)*, 207 B.R. 57, 61 (S.D.N.Y. 1997); *see also Krys v. Official Committee of Unsecured Creditors of Refco Inc. (In re Refco Inc.)*, 505 F. 3d 109, 118 (2d. Cir. 2007) (holding that investors lacked standing to object to a proposed settlement and rejecting the view that "*whenever* a party has an interest that is affected by a Bankruptcy Court determination, equity will allow that party to be heard") (emphasis in original). Here, the Trust brought this Motion pursuant to Section 1142 of the Bankruptcy Code seeking approval of the Litigation Funding Cost Advance and amendments to the Avoidance Action Trust Agreement, to enable the Trust to continue and to resolve the Term Loan Avoidance Action and to distribute any proceeds to its beneficiaries. River Birch does not have "a sufficient interest in the outcome of the case that would require representation, or a pecuniary interest that will be directly affected by the case." *In re Innkeepers USA Trust*, 448 B.R. 131, 141 (Bankr. S.D.N.Y. 2011). The only connection River Birch asserts with respect to the Trust is as a potential private funder pursuant to a contract that has been terminated. River Birch does not claim to be a beneficiary of the Avoidance Action Trust and has no legally cognizable interest in the Term Loan Avoidance Action.

9. River Birch is similarly situated to disappointed prospective purchasers of assets from a bankruptcy estate whose "only pecuniary loss is the speculative profit it might have made," and whom courts have consistently held lack standing to challenge a bankruptcy court's approval of a sale aside from challenges to the "intrinsic fairness" of the sale due to fraud, deceit, or bad faith. *Wallach v. Kirschenbaum*, No. 11 CV 0795, 2011 WL 2470609, at *4 (E.D.N.Y. June 16, 2011) (internal citation omitted); *see also Auston Assoc. v. Howison (In re Murphy)*, 288 B.R. 1, 5

5

(D. Me. 2001) (holding that appellant's attempt to challenge the sale on "equitable grounds by introducing evidence that its bid was in the best interest of the [e]state and should have been accepted" did not "come close to meeting the standing benchmark" and that the bankruptcy court did not err in determining appellant lacked standing). River Birch lacks standing to assert its Limited Objection.

10. Further, the Limited Objection does not expressly ask the Court to deny the Motion, nor does the Limited Objection set forth any valid grounds for the Court to do so. Rather, the Limited Objection outlines a baseless breach of contract action that River Birch threatens to assert against the Trust and advises the Court to "consider that risk" in evaluating the Motion. Limited Obj. ¶ 8. The Trust respectfully submits that the so-called "risk" of a party commencing a separate litigation is not an appropriate factor for the Court to weigh in deciding the pending Motion.

**B.    The Private Litigation Funding Agreement Was Properly Terminated and the Litigation Cost Advance from the DIP Lenders Is "Materially More Favorable" to the Avoidance Action Trust**

11. In order to address the Trust's funding needs, the Trust undertook a competitive bidding process, which resulted in the Trust entering into the Private Litigation Funding Agreement with River Birch. *See* Bankr. Dkt. No. 13650-2 (Private Litigation Funding Agreement). Because of the possibility that the DIP Lenders would provide funding to the Avoidance Action Trust, the Private Litigation Funding Agreement permitted the Trust to terminate the agreement in the event that the DIP Lenders agreed to provide funding to the Trust:

> "Permitted Alternative Funding Event" means the occurrence . . . of either: (i) any submission to the Bankruptcy Court of a motion seeking the approval of any agreement or arrangement, including, without limitation, the approval of any stipulation, with one or more DIP Lenders to provide funding for the Trust's prosecution of the Term Loan Avoidance Action, the Oaktree Action, and any other action brought by the Trust; or (ii) the Trust's entry into an agreement or arrangement with one or more DIP Lenders pursuant to which such DIP Lenders will provide funding for the Trust's prosecution of the Term Loan Avoidance Action, the Oaktree Action, and any other action brought by the Trust, in any such

6

case on terms materially more favorable to the Trust than those provided by the Investors under this Agreement.

*Id.* (Private Litigation Funding Agreement § 1.1 at 6).

12. On July 14, 2016, the Avoidance Action Trust entered into the Litigation Cost Advance Agreement with the DIP Lenders [Motion Ex. C] and the following day filed the Motion seeking approval of the agreement with the DIP Lenders [Bankr. Dkt. No. 13688]. The agreement with the DIP Lenders and the motion to approve are independent triggers of a Permitted Alternative Funding Event. Accordingly, the Avoidance Action Trust sent River Birch a notice terminating the Private Litigation Funding Agreement.

13. There is no question that the funding to be provided by the DIP Lenders pursuant to the Litigation Cost Advance Agreement will be on "terms materially more favorable to the Trust" than the terms set forth in the Private Litigation Funding Agreement. The Litigation Cost Advance will provide the necessary funding to the Avoidance Action Trust without any interest, fees or other charges. Under the deal with the DIP Lenders, the Trust must only repay the Litigation Cost Advance ahead of distributing any residual proceeds of the Term Loan Avoidance Action.[3] In contrast, the cost of the private funding offered by River Birch, among other things, is the greater of 4.75% of amounts recovered by the Trust or 2.25 times the amount invested by the private funders. As River Birch's Limited Objection illustrates, this private funding, which is the best private funding available, would have cost the Avoidance Action Trust a minimum of approximately $18.75 million had all $15 million been drawn and could have cost the Trust in excess of $56 million depending on the amount of litigation recoveries. Limited Obj. Ex. F.

---

[3] This arrangement is similar to the existing obligation under the Avoidance Action Trust Agreement to repay, on an interest-free basis, the $1.6 million of initial funding that the DIP Lenders provided to the Avoidance Action Trust when the trust was formed in 2011, ahead of distributing any remaining proceeds. Bankr. Dkt. No. 11704-1 (Avoidance Action Trust Agreement §§ 1.1(e) & 5.1(d)(i)).

14.     River Birch incorrectly contends that "some portion of the settlement payment is being used to pay for the cost advance," thereby making the terms of the Litigation Cost Advance from the DIP Lenders "materially more expensive" for the Trust.  Limited Obj. ¶¶ 4 & 7.  However, the agreement between the DIP Lenders and the Committee to avoid litigating their respective claims to the proceeds of the Term Loan Avoidance Action and agreeing to an allocation is not a payment by the Avoidance Action Trust.  The Trust takes no position as to whether, in the absence of a settlement of the Allocation Dispute, the DIP Lenders or the holders of Allowed General Unsecured Claims are entitled to the proceeds of the Avoidance Action Trust.  Nor does the Trust express any view on the strength of either party's legal entitlement to those proceeds; to do so would be an unwarranted expansion of its role and purpose established under the Plan.

          **C.**      **The Trust Has an Obligation to Maximize Proceeds for the Trust as a Whole**

15.     The Avoidance Action Trust Agreement recognizes the dispute between the DIP Lenders and the Committee regarding entitlement to the proceeds of the Term Loan Avoidance Action.  The Avoidance Action Trust Agreement states that "[t]he Trust is being created, with respect to the Avoidance Action Trust Assets, on behalf of, and for the benefit of, the Trust Beneficiaries," who are, in turn, defined as "the holders of the DIP Credit Agreement Claims and the holders of Allowed General Unsecured Claims (or Units received in respect of such claims)."  Bankr. Dkt. No. 11704-1 (Avoidance Action Trust Agreement ¶ G & § 1.1 (zzz)).[4]

16.     From the outset of the Trust, it was understood that, in order for the Avoidance Action Trust to have clarity about its beneficiaries' respective interests in trust proceeds, the Allocation Dispute would have to be resolved either by "mutual agreement between the U.S.

---

[4] "DIP Credit Agreement Claims" is broadly defined in the Avoidance Action Trust Agreement as "all Claims arising under the DIP Credit Agreement and Orders approving the DIP Credit Agreement dated June 25, 2009 and July 5, 2009."  Bankr. Dkt. No. 11704-1 (Avoidance Action Trust Agreement § 1.1 (v)).

8

Treasury and the Creditor's Committee" or by final order. *See, e.g.*, Bankr. Dkt. No. 11704-1 (Avoidance Action Trust Agreement § 1.1(x)); *see also* Bankr. Dkt. No. 9836 (Plan § 1.124). Specifically, the waterfall provision, which dictates how proceeds are to be distributed by the Avoidance Action Trust, provides that the proceeds get distributed as follows: first, $1.6 million to the DIP Lenders for repayment of the initial administrative cash provided to the trust; second, to a segregated account for the benefit of the holders of Allowed General Unsecured Claims in the amount of approximately $13.7 million representing the GUC Trust Supplemental Cash; third to the DIP Lenders in an amount to be determined following the settlement of the Allocation Dispute; and fourth, to the holders of Allowed General Unsecured Claims. Bankr. Dkt. No. 11704-1 (Avoidance Action Trust Agreement § 5.1(d)). Subject to the Court's approval, the DIP Lenders and holders of Allowed General Unsecured Claims have now reached an agreement that clarifies future distributions under the third and fourth levels of the waterfall.

17. It is well settled that a trustee is under a duty to deal impartially with all beneficiaries of a trust – not preferring one to the detriment of others. Restatement (First) of Trusts § 183 (1935); *see Matter of Hubbell*, 302 N.Y. 246, 254 (1951) ("In judging the conduct of trustees, the basic consideration is the fiduciary obligation which they owe to all of the beneficiaries whom they represent."). The Trust is required, by contract and applicable law, to "deal even-handedly" with the DIP Lenders and the holders of Allowed General Unsecured Claims and do its "best for the entire trust looked at as a whole." *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984). The Trust has remained neutral with regard to the interests of any particular class of beneficiaries by not participating in, or taking any position regarding, settlement of the Allocation Dispute.

18. Here, the Avoidance Action Trust's two classes of beneficiaries (the DIP Lenders and the Committee, as representative of the holders of Allowed General Unsecured Claims) are in

9

full support of the decision to accept the interest-free funding offered to the Trust. In arguing that the DIP Lenders' cost advance is "materially more expensive" than the Private Litigation Funding Agreement, River Birch improperly conflates the benefits of the Litigation Cost Advance to the Avoidance Action Trust as a whole, with the amount the Committee agreed to compromise to resolve its allocation dispute with the DIP Lenders.

19. The cost-free financing offered by the DIP Lenders is on terms that are materially more favorable to the Trust than the Private Litigation Funding Agreement. On that basis, the Trust terminated the Private Litigation Funding Agreement in favor of the Litigation Cost Advance, thereby potentially saving the Trust many tens of millions of dollars in funding costs.

## NOTICE

20. The Avoidance Action Trust has provided notice of this Reply to the same parties that were served with the Motion. The Avoidance Action Trust submits that such notice is sufficient and no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Trust respectfully requests that the Court grant the relief requested.

Dated: New York, New York
August 5, 2016

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

/s/ Eric B. Fisher
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008

*Attorneys for the Motors Liquidation Company Avoidance Action Trust*

10