# Exhibit  A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

IN RE:

                                                        14-MD-2543 (JMF)

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*Norville v. General Motors LLC*                         Hon. Jesse M. Furman

------------------------------------------------------------------------------x


# MEMORANDUM IN SUPPORT OF NEW GM'S
# MOTION FOR SUMMARY JUDGMENT


                            Richard C. Godfrey, P.C.
                            Andrew B. Bloomer, P.C.
                            KIRKLAND & ELLIS LLP
                            300 N. LaSalle St.
                            Chicago, IL 60654
                            Phone: 312-862-2000
                            Fax: 312-862-2200
                            richard.godfrey@kirkland.com
                            andrew.bloomer@kirkland.com

                            ***Attorneys for Defendant***
                            ***General Motors LLC***

Date: August 22, 2016

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................................1

UNDISPUTED FACTUAL BACKGROUND.........................................................................3

ARGUMENT & AUTHORITIES .............................................................................................4

I.      PLAINTIFF HAS NO EVIDENCE THAT IGNITION SWITCH ROTATION
        CAUSED HER ACCIDENT OR ALLEGED INJURIES. ..................................5

        A.      There Is No Evidence That Ignition Switch Rotation Caused A Loss of
                Control. ..............................................................................................................6

        B.      There Is No Evidence That Ignition Switch Rotation Caused Airbag Non-
                Deployment Or Enhanced Plaintiff's Injuries......................................10

                1.      There Is No Evidence That Ignition Switch Rotation Caused
                        Airbag Non-Deployment. ..................................................... 10

                2.      There Is No Evidence That Airbag Non-Deployment Enhanced
                        Plaintiff's Alleged Injuries................................................... 13

II.     PLAINTIFF'S INDEPENDENT CLAIMS FAIL AS A MATTER OF LAW................14

        A.      Plaintiff's Negligence Claim Fails Because New GM Had No Duty To
                Warn Under Kentucky Law. ...............................................................15

        B.      Failure To Perform Recall Covenant Or Warranty Obligations Does Not
                Establish A Relationship Or Tort Duty Under Kentucky Law. ...........19

        C.      Plaintiff Cannot Establish The Elements Of Fraudulent Concealment
                Because New GM Had No Duty To Disclose Under Kentucky Law...................20

        D.      Plaintiff Cannot Establish The Elements Of Her Crashworthiness Claim
                Because She Lacks Expert Testimony And New GM Had No Duty To
                Recall. ........................................................................................23

        E.      Plaintiff Cannot Establish The Elements Of Negligent Misrepresentation
                Because She Bases Her Claim On Alleged Concealment. ...................24

III.    PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES FOR ASSUMED
        LIABILITIES, AND ALL OF HER INDEPENDENT CLAIMS FAIL. ........................25

CONCLUSION....................................................................................................................25

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnsperger v. Becker*,
    2015 WL 301262 (Ky. Ct. App. Jan. 23, 2015)................................................................21

*Atlantic & P. Ry. Co. v. Laird*.
    164 U.S. 393 (1896).........................................................................................................20

*In re Beverly Hills Fire Litig*.,
    695 F.2d 207 (6th Cir. 1982) .......................................................................................5, 10

*Briley v. U.S. United Barge Line, LLC*,
    2012 WL 2344460 (W.D. Ky. June 20, 2012)...........................................................12, 13

*Britt v. Chrysler Corp*.,
    699 So. 2d 179 (Ala. Ct. Civ. App. 1997) ......................................................................11

*Brown v. Trover*,
    2016 WL 100311 (Ky. Ct. App. Jan. 8, 2016).................................................................21

*Bryant v. King's Daughter Med. Ctr*.,
    2013 WL 186927 (E.D. Ky. Jan. 17, 2013) ......................................................................9

*Cameron v. DaimlerChrysler Corp*.,
    2005 WL 2674990, at *7 (E.D. Ky. Oct. 20, 2005)........................................................15

*Carter v. Bullitt Host, LLC*,
    471 S.W.3d 288 (Ky. 2015) ............................................................................................16

*Caudill v. Toyota Motor Corp*.,
    2005 WL 3149311 (E.D. Ky. Nov. 23, 2005)........................................................5, 11, 12

*City of Bowling Green, Ky. v. Lowe's Feed & Grain, Inc*.,
    2014 WL 6882925 (Ky. Ct. App. Dec. 5, 2014)..............................................................25

*In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig*.,
    856 F. Supp. 2d 904 (E.D. Ky. 2012) ............................................................................16,

*In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig*.,
    756 F.3d 917 (6th Cir. 2014) ..........................................................................................16

*Edwards v. Hop Sin, Inc*.,
    140 S.W.3d 13 (Ky. Ct. App. 2003), *as modified* (Sept. 19, 2003).........................12

*In re General Motors LLC*,
    154 F. Supp. 3d 30, 35 (S.D.N.Y. 2015).................................................................. passim

## TABLE OF AUTHORITIES

**Page(s)**

*Gentry v. Gen. Motors Corp.*,
  839 S.W.2d 576 (Ky. Ct. App. 1992) ......................................................13

*Giddings & Lewis, Inc. v. Indus. Risk Insurers*,
  348 S.W.3d 729 (Ky. 2011) ............................................................ *passim*

*Gray v. Gen. Motors Corp.*,
  133 F. Supp. 2d 530 (E.D. Ky. 2001) ...........................................6, 13, 24

*Gray v. Gen. Motors Corp.*,
  312 F.3d 240 (6th Cir. 2002) .........................................................................6

*H&R Mech. Contractors, Inc. v. Codell Const. Co.*,
  2005 WL 3487870 (Ky. Ct. App. Dec. 22, 2005)..................................24, 25

*Hans v. Matrixx Initiatives, Inc.*,
  2007 WL 2668594 (W.D. Ky. Sept. 6, 2007) ...........................................8, 9

*Holland v. FCA US LLC*,
  2015 WL 7196197 (N.D. Ohio Nov. 16, 2015) .....................................17, 18

*Huffman v. SS. Mary & Elizabeth Hosp.*,
  475 S.W.2d 631 (Ky. 1972) ....................................................................10

*Madigan v. Gen. Motors Corp.*,
  899 N.E.2d 118 (Mass. App. Ct. 2009) ....................................................11

*Manning v. Arch Wood Prot., Inc.*,
  2014 WL 931948 (E.D. Ky. Mar. 10, 2014)............................................16

*McCoy v. Gen. Motors Corp.*,
  47 F. Supp. 2d 838 (E.D. Ky. 1998) ....................................................5, 13, 14

*McCoy v. Gen. Motors Corp.*,
  179 F.3d 396 (6th Cir. 1999) ..............................................................5, 12

*Midwestern V.W. Corp. v. Ringley*,
  503 S.W.2d 745 (Ky. Ct. App. 1973) .......................................................6

*In re Motors Liquidation Co.*,
  No. 09-50026 (REG) (Docket No. 13177)................................................14

*In re Motors Liquidation Co.*,
  2016 WL 3766237 (2d Cir. July 13, 2016)...............................................14

*In re Motors Liquidation Co.*,
  529 B.R. 510 (Bankr. S.D.N.Y. 2015) ....................................................15

## TABLE OF AUTHORITIES

Page(s)

*Nissan Motor Co., Ltd. v. Maddox*,
  486 S.W.3d 838, 843 (Ky. 2015) .........................................................................................15

*O'Bryan v. Volkswagen of Am.*,
  39 F.3d 1182 (6th Cir. 1994) ....................................................................................... 13, 24

*In re Old Carco LLC*,
  492 B.R. 392 (Bankr. S.D.N.Y. 2013) ................................................................................17

*Ostendorf v. Clark Equip. Co.*,
  122 S.W.3d 530 (Ky. 2003) ...........................................................................................15, 21

*Pearson v. Nat'l Feeding Sys., Inc.*,
  90 S.W.3d 46 (Ky. 2002) .....................................................................................................17

*Presnell Const. Managers, Inc. v. EH Const., LLC*,
  134 S.W.3d 575 (Ky. 2004) ...................................................................................................5

*Randolph's Adm'r v. Snyder*,
  129 S.W. 562 (Ky. 1910) ...............................................................................................20, 23

*Republic Bank & Trust Co. v. Bear, Stearns & Co.*,
  707 F. Supp. 2d 702 (W.D. Ky. 2010) ................................................................................21

*Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*,
  113 S.W.3d 636 (Ky. Ct. App. 2003) .............................................................................21, 22

*Sanyal v. Toyota Motor N. Am., Inc.*,
  2015 WL 3650725 (E.D. Va. June 11, 2015) ......................................................................11

*Siegel v. Ky. Farm Bureau*,
  2010 WL 4884220 (W.D. Ky. Nov. 24, 2010) ....................................................................12

*Smith v. Gen. Motors Corp.*,
  979 S.W.2d 127 (Ky. Ct. App. 1998) .............................................................................21, 23

*Smith v. Wyeth, Inc.*,
  657 F.3d 420 (6th Cir. 2011) ...............................................................................................17

*Stewart v. Gen. Motors Corp.*,
  222 F. Supp. 2d 845 (W.D. Ky. 2002) ................................................................................14

*Sutton's Adm'r. v. Louisville & N.R. Co.*,
  181 S.W. 938 (Ky. 1916) .....................................................................................................10

*TC Tech Mgmt. Co. v. Geeks on Call Am., Inc.*,
  2004 WL 5154906, at *5 (E.D. Va. Mar. 24, 2004) ...........................................................23

v

# TABLE OF AUTHORITIES

**Page(s)**

*Thomas v. Manchester Tank & Equip. Corp.*,
  2005 WL 3673118 (W.D. Ky. May 13, 2005).........................................................................12

*Toyota Motor Corp. v. Gregory*,
  136 S.W.3d 35 (Ky. 2004) .................................................................................... *passim*

*Trent v. Ford Motor Co.*,
  2 F. Supp. 3d 1022, 1027 (W.D. Ky. 2014) ................................................................ *passim*

*Waltenburg v. St. Jude Med., Inc.*,
  33 F. Supp. 3d 818, 837 (W.D. Ky. 2014) .............................................................................19

*Wheeler v. Fields*,
  2012 WL 2470388 (Ky. Ct. App. June 29, 2012) ..................................................................5

*Wood v. Toyota Motor Corp.*,
  760 A.2d 315 (Md. App. 2000)..............................................................................................11

*Young v. Carran*,
  289 S.W.3d 586 (Ky. Ct. App. 2008) ...................................................................................19


**Statutes**

49 U.S.C. §30118(c)(1)............................................................................................................23


**Rules**

Federal Rule of Civil Procedure 9(b).......................................................................................15

Federal Rule of Evidence 702..................................................................................................12

# INTRODUCTION[1]

Plaintiff Amy Norville has sued New GM for injuries she allegedly sustained in a single-vehicle accident that occurred at 3:30 a.m. on November 21, 2013, while she was driving her 2003 Saturn Ion away from a bar where she had consumed three mixed drinks—in addition to taking prescription medications and drinking several beers earlier in the evening. She ultimately pled guilty to driving under the influence of alcohol or drugs. (SUF ¶¶ 10-14, 31-35.)

It is undisputed that the ignition switch played no role in plaintiff losing control of the Ion. Plaintiff admits she swerved to avoid a deer in the roadway. (*Id.* ¶¶ 17-23.) Her emergency steering maneuver caused a counterclockwise spin during which the Ion exited the road backwards. It traveled rearward-leading through a line of trees, crossed a ditch, and came to rest facing the roadway. (*Id.* ¶¶ 29, 40-41, 48, 52.) Plaintiff's own accident reconstructionist, Robert Caldwell, conceded that the airbag should ***not*** have deployed in this accident because it was a rearward-leading event and, therefore, the impacts were in the "wrong direction" (*i.e.*, there was no longitudinal front-to-back component to any of the impacts to the Ion). (*Id.* ¶¶ 42-43.) Tellingly, plaintiff withdrew Caldwell (her only case-specific expert) as a testifying expert on August 16, 2016, just six days before the summary judgment filing deadline. (Ex. 18, Pl. Second Am. Expert Designation at 7.)

Despite these undisputed facts and admissions, plaintiff alleges the Ion's ignition switch "failed to prevent, proximately caused, and/or directly resulted in the personal injuries and collision that occurred." (4th Am. Compl. (Docket No. 485) ¶ 9.) She claims that, at some unspecified point after she swerved to avoid the deer, the ignition switch rotated, causing her to lose power steering and braking and—contrary to her expert's conclusions—preventing airbag

---

[1] New GM fully stands by its Deferred Prosecution Agreement with the United States Attorney for the Southern District of New York, dated September 16, 2015, and the Statement of Facts associated with that Agreement. Nothing in this filing is intended to contradict the Statement of Facts or New GM's representations in the DPA.

deployment. (Pl. OSI Brief (Docket No. 3095) at 8.)

Plaintiff has asserted five causes of action: Negligence, Strict Liability, Fraudulent Concealment, Crashworthiness, and Negligent Misrepresentation. New GM is entitled to summary judgment on all five claims.

*First*, plaintiff has no evidence that an ignition switch defect caused or contributed to her accident or alleged injuries. Her loss of control claim is contradicted by her own testimony that she had no difficulty steering the vehicle and does not remember using the brakes during the accident. (SUF ¶¶ 19, 24, 28.) Further, no expert opines that the ignition switch rotated at any time during the accident sequence. Plaintiff's airbag non-deployment claim also fails because no expert opines that the airbag *should* have deployed during the accident or that airbag deployment would have reduced or prevented her alleged injuries. Without proof of causation, all claims and damages sought against New GM must be dismissed.

*Second*, plaintiff's Independent Claims against New GM as a non-successor separately fail as a matter of law:

- Her negligence claim fails because Kentucky does not recognize a post-sale duty to warn or recall for a manufacturer, let alone an asset-purchasing non-manufacturer. Even if Kentucky did recognize such duties, plaintiff does not have any evidence of an independent relationship with New GM to support such a duty.

- Her fraudulent concealment claim fails because New GM did not have a duty to disclose to plaintiff under Kentucky law.

- Her crashworthiness claim fails because she does not have any expert testimony to establish injury enhancement, and Kentucky does not recognize or impose on non-manufacturers a duty to recall.

- Her negligent misrepresentation claim fails because Kentucky does not recognize such a claim based only on an alleged omission or concealment.

*Third*, because her Independent Claims fail and punitive damages are not recoverable for Assumed Liability Claims, plaintiff cannot seek punitive damages from New GM as a non-

successor.

## UNDISPUTED FACTUAL BACKGROUND

At approximately 2:45 a.m. on November 21, 2013, plaintiff left a bar where she had consumed three mixed drinks after drinking beers earlier in the evening. (SUF ¶¶ 10-13.) She headed west on Kentucky Highway 286—an unlit road that she described as "flat" and "smooth" with "no pot holes or anything." (*Id.* ¶¶ 14-16.) Approximately 45 minutes later, plaintiff swerved to avoid a deer in the road. (*Id.* ¶¶ 17-20.) She "cut [the steering wheel] to the left" with a "swift turn" that "took [her] off the road." (*Id.* ¶ 19.) As a result of plaintiff's evasive action, the Ion crossed the center line, "entered into a side slide[,] and exited the roadway rear facing." (*Id.* ¶ 29.) While traveling backwards down an embankment, the Ion struck "several trees and a ditch before coming to rest." (*Id.*)

At the scene, plaintiff reported she had consumed three mixed drinks and taken several prescription medications.[2] (*Id.* ¶ 32.) At the hospital, medical personnel observed ████████

████████████████████████████████████████████████████████████████████

████████ (*Id.* ¶ 31.) Her blood, tested approximately 90 minutes after the accident, returned a blood alcohol content of 0.035g/100mL. (*Id.* ¶ 33.) Plaintiff also tested positive for

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ (*Id.* ¶ 34.) She pled guilty (pursuant to an *Alford* Plea) to operating a motor vehicle while intoxicated. (*Id.* ¶ 35.)

Plaintiff's accident reconstructionist, Robert Caldwell, opined in discovery that the Ion exited the roadway rearward-leading, traveled backwards through a gap in the trees, and came to rest facing the road. (*Id.* ¶ 41.) He testified he had no opinion about what caused plaintiff to exit

---

[2]    Plaintiff also admitted during her deposition that she drank beer before going to the bar. (*Id.* ¶ 10.)

the road, nor would he opine about ignition switch rotation during the accident.  (*Id.* ¶¶ 38-39.)
New GM's accident reconstructionist, Don Tandy (whose opinions are now unopposed by any
expert), concluded "[t]here is no evidence the ignition switch rotated in this event and I saw no
physical evidence as to what position the ignition switch was in post-crash.  The rapid spin that
the vehicle experienced indicates that Ms. Norville was able to place large steering inputs in the
vehicle with no problem."  (*Id.* ¶ 50.)  The responding police officer, Deputy Kyle Seratt,
concluded that plaintiff's "steering input" to avoid a deer "coupled with the fact of her
intoxication is what actually caused the accident."  (*Id.* ¶ 36)

Caldwell also concluded that the Ion sustained damage from a ***lateral*** impact near the
left-front wheel and ***rear*** impacts.  (*Id.* ¶ 43.)  He determined ***none*** of the impacts was in the
"correct direction" for airbag deployment (*i.e.*, there was no longitudinal frontal impact), and
further testified that plaintiff's change in velocity ("delta-v") "is pretty much irrelevant [to airbag
deployment] when it's a rearward leading event."  (*Id.*)  In short, plaintiff's own expert agreed
"this was ***not*** an accident in which airbag deployment would have been expected" and "the
airbags should not have deployed regardless of engine run status."  (*Id.* ¶¶ 42-43.)  New GM's
experts reached the same conclusion.  (*Id.* ¶¶ 45, 56-57.)  Now that plaintiff has withdrawn
Caldwell as a testifying expert, New GM's experts' opinions about what occurred during
plaintiff's accident are undisputed by any expert.

## ARGUMENT & AUTHORITIES[3]

As noted above, the Fourth Amended Complaint asserts five claims.  (4th Am. Compl.

---

[3]    This Court set forth the applicable legal standard in its ruling on New GM's motion for summary judgment in
*Scheuer*, so New GM will not repeat it here.  *See In re: Gen. Motors LLC Ignition Switch Litig.*, 154 F. Supp. 3d
30 (S.D.N.Y. 2015) ("*Scheuer* SJM Opinion") at 34-35.

¶¶ 365-436.)[4]  Plaintiff seeks compensatory damages, punitive damages, and injunctive relief. (*Id.* at ¶¶ 120-24, ¶¶ 437-57.)  There are no disputed issues of material fact.

## I.  PLAINTIFF HAS NO EVIDENCE THAT IGNITION SWITCH ROTATION CAUSED HER ACCIDENT OR ALLEGED INJURIES.

Causation is indispensable to each of plaintiff's claims.[5]  Where, as here, a plaintiff lacks evidence of causation, courts applying Kentucky law have granted summary judgment.  *Trent v. Ford Motor Co*., 2 F. Supp. 3d 1022, 1027 (W.D. Ky. 2014) ("Because [plaintiff] has not come forth with evidence that the alleged design defect caused her injury, her claim does not withstand summary judgment."); *Caudill v. Toyota Motor Corp*., 2005 WL 3149311, at *4 (E.D. Ky. Nov. 23, 2005) ("Plaintiff has not proved causation and damages. Under these circumstances, the Court concludes that summary judgment is appropriate."); *McCoy v. Gen. Motors Corp*., 47 F. Supp. 2d 838, 841 (E.D. Ky. 1998) (granting summary judgment because "the plaintiff has failed to meet her burden on the elements of causation and damages"), *aff'd*, 179 F.3d 396 (6th Cir. 1999); *In re Beverly Hills Fire Litig*., 695 F.2d 207, 219 (6th Cir. 1982) ("[D]efendants invariably receive a judgment in their favor as a matter of law in Kentucky where plaintiffs are unable to isolate one cause, either by direct evidence or, more relevant to the present case, by eliminating other possible causes.").

Under Kentucky law, "it is incumbent on the plaintiff to introduce evidence that will support a reasonable inference that the defect was the '***probable***' cause of the accident as distinguished from a 'possible' cause among other possibilities; otherwise, the jury verdict is

---

[4]  Plaintiff's complaint skips Count IV.  Crashworthiness is Count V, and Negligent Misrepresentation is Count VI.  (4th Am. Compl. at 115-19.).

[5]  *See Wheeler v. Fields*, 2012 WL 2470388, at *3 (Ky. Ct. App. June 29, 2012) (causation required for negligence claim); *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (causation required for fraudulent concealment claim); *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 41 (Ky. 2004), as amended (June 14, 2004) (causation is element of crashworthiness claim); *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 580 (Ky. 2004) (causation is element of negligent misrepresentation claim).

based on speculation or surmise." *Midwestern V.W. Corp. v. Ringley*, 503 S.W.2d 745, 747 (Ky. Ct. App. 1973) (emphasis added). Here, plaintiff posits two theories of causation: (1) "the defective ignition switch resulted in a loss of power steering and power brakes when she attempted to avoid hitting a deer"; and (2) the defect "caused her airbag non-deployment when it should have deployed." (Pl. OSI Br. at 6.) In discovery, plaintiff did not explain when or how the ignition switch allegedly rotated. She only recently speculated for the first time in her OSI brief that "the way" she turned the steering wheel to avoid the deer *may* have "caused the manifestation of the ignition switch defect." (*Id.* at 1, 8; *see also id.* at 14 (arguing plaintiff should be able to introduce OSIs "where a driver's steering behavior caused the manifestation of the ignition switch defect").) Because plaintiff's speculation cannot establish an ignition switch defect is the ***probable*** cause of her accident or injuries, as opposed to her driving impairment and/or swerving to avoid a deer, New GM is entitled to summary judgment. *See, e.g.*, *Gray v. Gen. Motors Corp.*, 133 F. Supp. 2d 530, 533-34 (E.D. Ky. 2001) (granting judgment as a matter of law because "plaintiff's proof was simply insufficient to tilt the balance from possibility to probability"), *aff'd*, 312 F.3d 240 (6th Cir. 2002) (citing *Ringley*, 503 S.W.2d 745).

A. **There Is No Evidence That Ignition Switch Rotation Caused A Loss of Control.**

Plaintiff admits she swerved to avoid a deer, had no problems steering, and does not recall attempting to stop the vehicle:

> Q. And so the deer comes out in front of you, and then you steer the wheel to the left?
> A. Yes.
> Q. And was that an emergency maneuver?
> A. What do you mean?
> Q. Well, I mean, it wasn't a controlled turn. It was a swift turn; is that correct?
> A. It was a swift turn.
> Q. How far did you turn the wheel to the left?

> A.  I don't recall exactly. I mean, I just know that I cut it to the left.
>
> Q.  Okay. Would you describe this as a 180 degree turn of the wheel?
>
> A.  Well, it took me off the road, so...
>
> . . .
>
> Q.  Okay.  Did you have any problems turning the steering wheel?
>
> A.  No.
>
> Q.  It turned normally?
>
> A.  As best I can recall.
>
> Q.  All right.  And when you turned the steering wheel -- you can't give any estimate as to how many -- whether you turned it 90 degrees, 45 degrees; anything like that?
>
> A.  No.  I mean, I just know it took me off the road.
>
> . . .
>
> Q.  You can't give me any more detail?
>
> A.  Not really.  I mean, I just know I went off the road and --
>
> Q.  But, in any event, you had no problems steering the car it sounds like, correct?
>
> A.  Not that I can recall.
>
> Q.  All right.  Did you apply the brakes at all?
>
> A.  I don't remember.
>
> *          *          *
>
> Q.  Can you testify under oath that you lost power steering in the accident?
>
> A.  No, I cannot.  But I cannot testify that I did not, either.
>
> . . .
>
> Q.  You don't even recall hitting your power brakes, do you?
>
> A.  No, I don't.
>
> Q.  I'm correct on that?
>
> A.  Correct.
>
> Q.  So you don't know whether the power brakes are working or not?
>
> A.  Correct.  (SUF ¶¶ 24, 27-28.)

Nor does plaintiff have "any specific recollection of the vehicle losing engine power." (*Id.* ¶ 26.)

In fact, consistent with her post-accident statements to medical personnel, plaintiff testified that

she has no recollection of what happened after she swerved to avoid the deer:  "I seen the deer, I

swerved to miss, and I don't know what happened after that, to be honest." (*Id.* ¶ 18; *see also id.*

¶ 22 ("The patient states she swerved to miss a deer.  She does not recall what happened after that other than she was pulled from the car by the jaws of life.").)

At best, plaintiff can only speculate that the ignition switch rotated *after* her emergency maneuver.[6]  But plaintiff proffers no expert testimony to support her theory, nor does she have an expert to opine that ignition switch rotation caused a loss of power steering or brakes during the accident.  Plaintiff's designated experts opine ***generally*** that the Ion's ignition switch is defective because it ***could*** rotate out of the run position unintentionally, and they generally describe the effect of defect manifestation on steering and braking; however, none opines that the Ion's ignition switch, in fact, more likely than not rotated in the accident, or affected steering or braking.  In fact, Caldwell concluded (before plaintiff withdrew him) that "[t]he lack of physical evidence does not allow an accident reconstruction expert to opine, one way or another, as to whether or not a key off movement occurred prior to or during the crash of the Saturn."  (*Id.* ¶ 37.)  He then testified he would ***not*** opine on whether plaintiff's ignition switch rotated:

> Q.    Just so the record is clear, you're not offering any opinions
>        at trial that the ignition switch moved out of run and caused
>        her to lose control, correct?
>
> A.    That's correct, unless I was to hypothetically assume that it
>        did.  (*Id.* ¶ 39.)

Nor does plaintiff have any expert testimony supporting her new theory that ignition switch rotation may have resulted from "the way" she turned the steering wheel.  (Pl. OSI Brief at 8.)  Without an expert to support her theory, plaintiff cannot manufacture a genuine issue of

---

[6]    During her deposition (and after a break to consult with counsel), plaintiff tried to backtrack from her "honest" admission that she did not recall anything after swerving to avoid the deer, and testified that she could not "gain control of the car back" and "couldn't get [the vehicle] back up on the road" after she was "off-road" and was traveling *backwards* through the brush and trees.  (SUF ¶ 25.)  Even if these statements were true, no reasonable juror could conclude that ignition switch rotation was the ***probable*** cause of her inability to steer back onto the roadway, especially given that the vehicle was not traveling forward.  In fact, New GM's accident reconstruction provides the following unrebutted opinion: "Following the application of that left steer, it would not have mattered if power was lost since no steering in my opinion would have allowed the vehicle to recover from that spin."  (*Id.* ¶49.)

material fact about ignition switch rotation here. *See Hans v. Matrixx Initiatives, Inc.*, 2007 WL 2668594, at *3 (W.D. Ky. Sept. 6, 2007) ("Generally, expert testimony is necessary to support the element of causation in a negligence action when the common knowledge or experience of lay persons cannot recognize or infer a causal connection between the alleged negligence and the injury."); *Bryant v. King's Daughter Med. Ctr.*, 2013 WL 186927, at *10 (E.D. Ky. Jan. 17, 2013) (granting summary judgment because plaintiff did not offer expert testimony on causation when causation was outside "common knowledge" of lay jurors); *Trent*, 2 F. Supp. 3d at 1027 ("[E]xpert witnesses are generally necessary, indeed essential, in products liability cases . . . to prove such matters as a product defect and proximate causation . . . .").

Simply put, plaintiff has no evidence that ignition switch rotation caused or contributed to her accident. All of the evidence points to plaintiff's driving while intoxicated and her abrupt steering maneuver as the probable causes of her accident:

- Plaintiff consistently stated to the police, to her medical providers, to an insurance company, and in her deposition that the accident occurred when she swerved to miss a deer; she said nothing about loss of power or her ability to steer or brake. (SUF ¶¶ 17-23.)

- Plaintiff admits she "cut" her steering wheel, which took her off the road. (*Id.* ¶ 19.)

- On the night of the accident, plaintiff consumed three mixed drinks at the bar and several beers earlier in the night, and she reported she had been taking several prescription medications. (*Id.* ¶¶ 10, 12, 32)

- The police citation reported: "mod odor of alc bev on vio [violator] person - vio stated she had 2-3 mixed drinks celebrating - vio stated that she was currently on several Rx meds, including pain and anxiety - eyes bloodshot - glassy - no smooth pursuit." (*Id.* ¶ 32.)

- Medical personnel treating plaintiff immediately after the accident observed ███████████████████████████████████████████████████████████

- Plaintiff pled guilty and was convicted of driving under the influence of alcohol or drugs. (*Id.* ¶ 35.)

9

- Deputy Seratt concluded: "Ms. Norville had made a steering input. Again, she stated she swerved to miss a deer. I believe that coupled with the fact of her intoxication is what actually caused the accident." (*Id.* ¶ 36.)

Based upon these undisputed facts, ***no*** reasonable jury could conclude that ignition switch rotation was the ***probable*** cause of plaintiff's loss of control. *See Huffman v. SS. Mary & Elizabeth Hosp.*, 475 S.W.2d 631, 633 (Ky. 1972) ("These were all possibilities and there is absolutely no evidence contained in this record, either direct or circumstantial, which would indicate that the probable cause of the [injury] was the [defect]."). Accordingly, the Court should grant New GM summary judgment on all claims. *Sutton's Adm'r. v. Louisville & N.R. Co.*, 181 S.W. 938, 940 (Ky. 1916) ("[W]here an injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability, no recovery can be had."); *see also In re Beverly Hills Fire Litig.*, 695 F.2d at 219.

### B. There Is No Evidence That Ignition Switch Rotation Caused Airbag Non-Deployment Or Enhanced Plaintiff's Injuries.

Kentucky law recognizes "crashworthiness or enhanced injury" claims, in which a plaintiff claims that "a defect in the vehicle caused injuries over and above those which would have been expected in the collision absent the defect. . . ." *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 41 (Ky. 2004), as amended (June 14, 2004). Here, plaintiff alleges that an ignition switch defect prevented her airbag from deploying, thereby causing or enhancing her injuries. This causation theory also fails for a complete lack of evidence.

### 1. There Is No Evidence That Ignition Switch Rotation Caused Airbag Non-Deployment.

Plaintiff has no admissible evidence that ignition switch rotation prevented her airbag from deploying. Her only case-specific expert conceded that "the airbags should not have deployed regardless of ignition run status." (SUF ¶ 42.) Caldwell also testified that "the ignition switch really made no difference in terms of the deployment of . . . the airbag in this case"

because the airbag is "not designed to go off in a rearward leading event." (*Id.* ¶ 43-44.)  Again, New GM's experts (now undisputed) agree.  (*Id.* ¶¶ 45, 56-57.)

Unlike in *Scheuer*, where plaintiff's case-specific experts inferred ignition switch rotation from airbag non-deployment in a frontal collision with a high delta-v, *see In re General Motors LLC*, 154 F. Supp. 3d 30, 35 (S.D.N.Y. 2015) ("*Scheuer* SJM Opinion"), none of plaintiff's experts calculated a delta-v for this accident, let alone concluded that her airbag should have deployed.[7]  (SUF ¶¶ 42-43.)  Consequently, airbag non-deployment alone cannot support an inference of switch rotation here.  *Cf. Scheuer* SJM Opinion at 35 (denying summary judgment because, "taken together, Plaintiff's **experts** on accident reconstruction, airbag design, and the ignition switch provide sufficient evidence for a reasonable jury to find that the airbags in Plaintiff's car failed to deploy as a result of the ignition switch defect.") (emphasis added).

Without expert testimony, plaintiff cannot support her airbag non-deployment claim.  As the Court recently noted in excluding non-expert opinions that an airbag should have deployed, "'issues surrounding defective design of airbags are beyond the ken of the average layman.'"[8] *Cockram* MIL Opinion (Docket No. 3237) at 5 (quoting *Sanyal v. Toyota Motor N. Am., Inc.*, 2015 WL 3650725, at *5 (E.D. Va. June 11, 2015)); *see also Trent*, 2 F. Supp. 3d at 1027 (finding plaintiff "must rely upon expert testimony to establish . . . causation" in an airbag non-deployment case); *Caudill*, 2005 WL 3149311, at *2 ("[T]he deployment or non-deployment of air bags is not a matter within the common knowledge of lay persons."); *Thomas v. Manchester*

---

[7]    New GM has moved to exclude the so-called "expert" testimony of plaintiff's husband, James Dejarnette.  (*See* New GM Motion in Limine to Exclude Dejarnette Expert Testimony (Docket No. 3170).)

[8]    *See also Madigan v. Gen. Motors Corp.*, 899 N.E.2d 118, at *2 (Mass. App. Ct. 2009) ("A full understanding of the deployment of an airbag, which involves the synergy of mechanical, electrical, and chemical subsystems, is beyond the ordinary lay knowledge of a juror and requires expert testimony."); *Wood v. Toyota Motor Corp.*, 760 A.2d 315, 318 (Md. App. 2000) ("Air bag technology is highly specialized . . . . Without expert testimony in this case the peculiar issues before the court are outside the realm of lay juror's understanding, and without it the theories asserted by the plaintiff are speculative at best."); *Britt v. Chrysler Corp.*, 699 So. 2d 179, 181 (Ala. Ct. Civ. App. 1997) (finding that airbag systems are complex and technical, requiring expert testimony).

*Tank & Equip. Corp.*, 2005 WL 3673118, at *1-2 (W.D. Ky. May 13, 2005) ("'[E]xpert witnesses are generally necessary, indeed essential, in products liability cases, as they are in medical malpractice actions, to prove such matters as a product defect and proximate causation . . . .' This general rule exists because the complex or technical matters in many products liability cases are outside the knowledge of ordinary lay people.") (internal quotation omitted). This Court also noted that "the parties themselves have conducted this litigation assuming as much" by retaining experts to opine on airbag deployment. *Cockram* MIL Order (Docket No. 3237) at 6; *see also Scheuer* Pl. Ltr. to Court (Docket No. 2160) at 2 ("Given that both Plaintiff and New GM have retained accident reconstruction and airbag experts to opine on what caused airbag non-deployment here, any testimony related to this issue is scientific and technical in nature and cannot be presented by [ ] a fact witness.").

Here, plaintiff has no competent expert to opine that her airbag *should* have deployed, and her own previously-designated Rule 702 expert actually reached the opposite conclusion. Thus, her airbag non-deployment claim fails as a matter of law. *McCoy*, 179 F.3d at 397 (affirming summary judgment for defendant because plaintiff "produced no credible evidence that the air bag should have deployed"); *Trent*, 2 F. Supp. 3d at 1027 (granting defendant summary judgment where plaintiff did not present expert testimony that airbag deployment caused her injuries); *Caudill*, 2005 WL 3149311, at *2 (granting defendant summary judgment on airbag claim where plaintiff did not present expert testimony that the airbag should have deployed).[9]

---

[9]    Plaintiff's argument in prior filings that circumstantial evidence can establish causation in a product liability case involving complex airbag deployment issues is not supported by the authorities she cited. *See Edwards v. Hop Sin, Inc.*, 140 S.W.3d 13, 15–16 (Ky. Ct. App. 2003), *as modified* (Sept. 19, 2003) (allowing a jury to determine the existence of a defect in raw contaminated oysters that posed serious health risks to certain people, when causation was not in dispute, in a failure to warn case against the retailer); *Siegel v. Ky. Farm Bureau*, 2010 WL 4884220, at *10 (W.D. Ky. Nov. 24, 2010) (allowing plaintiffs generally to prove the *existence* of a manufacturing defect when "all other reasonable possibilities [for product failure] have been eliminated using

## 2. There Is No Evidence That Airbag Non-Deployment Enhanced Plaintiff's Alleged Injuries.

Putting aside plaintiff's inability to establish her airbag should have deployed, her airbag claim independently fails because she cannot prove "what injuries, if any, would have resulted" if her airbag had deployed. *Gregory*, 136 S.W.3d at 41. As the court in *McCoy* explained, "it may be the case that . . . even if the air bag had inflated the plaintiff would have incurred ***the same or worse injuries*** than she received without the air bag inflating; thus, no causation or damages would be present." 47 F. Supp. 2d at 841 (emphasis added). Plaintiff must, therefore, establish "by ***competent expert testimony***, that the defect was responsible to some degree for enhancement of injury to the plaintiff." *Gray*, 133 F. Supp. 2d at 534-35 (granting judgment as a matter of law because "plaintiff presented no testimony suggesting that [his] injuries would have been less severe had the seat belt held him within the vehicle during the collision"); *see also O'Bryan v. Volkswagen of Am.*, 39 F.3d 1182, at *4 (6th Cir. 1994) ("In crashworthiness cases, courts deny recovery unless the plaintiff establishes, by competent expert testimony, that the defect was responsible to some degree for enhancement of injury to the plaintiff.").

Plaintiff has not established any injury enhancement here. She does not have a biomechanic or other expert to testify about what her injuries would have been had her airbag deployed. (*See generally* Ex. 18, Pl. Second Am. Expert Designation.) Thus, plaintiff cannot meet her "burden of establishing that the circumstances surrounding the accident were such as to justify a reasonable inference of probability, rather than a mere possibility, that the alleged

---

circumstantial evidence," but denying plaintiff's ability to do so in that case because plaintiff presented "two different and inconsistent theories" for why the product may have failed); *Briley v. U.S. United States Barge Line, LLC*, 2012 WL 2344460, at *10-13 (W.D. Ky. June 20, 2012) (allowing "an additional circumstantial foundation" to accompany expert testimony in order to establish the existence of a manufacturing defect after defendant admitted the failure of the part caused plaintiff's injuries); *Gentry v. Gen. Motors Corp.*, 839 S.W.2d 576, 579 (Ky. Ct. App. 1992) (allowing *experts* to testify because there was "a sufficient quantum of circumstantial evidence" to support their opinions).

design defects were responsible for the injuries." *O'Bryan*, 39 F.3d at 1182, at *4 (citations omitted); *see also Scheuer* SJM Opinion at 36 (denying summary judgment because "*there is expert evidence* from which a juror could conclude that airbag non-deployment enhances injuries of the type suffered by Plaintiff and, in turn, from which a juror could infer that the airbag non-deployment in Plaintiff's case enhanced his injuries.") (emphasis added); *Stewart v. Gen. Motors Corp.*, 222 F. Supp. 2d 845, 848-49 (W.D. Ky. 2002) ("Without an expert opinion, however, the jury would have to speculate on how the [alleged defect] enhanced Plaintiff's injuries. Such speculation in these circumstances is impermissible."); *McCoy*, 47 F. Supp. 2d at 840 ("[I]n those instances in which the plaintiff cannot offer any evidence as to what would have occurred but for the alleged defect, the plaintiff has not established the fact of enhancement at all.") (quotation omitted); *Trent*, 2 F. Supp. 3d at 1028 ("There is simply no proof that [fixing the defect] would have resulted in lesser or different injuries to [plaintiff]."). [10]

## II.    PLAINTIFF'S INDEPENDENT CLAIMS FAIL AS A MATTER OF LAW.

Independent Claims must be "premised solely" upon "New GM's own independent, post-Closing acts or conduct," which means the Court's analysis must focus on a newly incurred duty New GM had to plaintiff (*i.e.*, not based solely on the 2009 Sale Agreement) in New GM's capacity as a non-successor, non-manufacturer, non-seller of plaintiff's Ion. [11]  (*See* Nov. Bankr. Dec. (Docket No. 13563) at 31, 43; *see also In re Motors Liquidation Co.*, 2016 WL 3766237, at *10-11 (2d Cir. July 13, 2016); *In re Motors Liquidation Co.*, No. 09-50026 (REG) (Docket No.

---

[10]    For these same reasons, plaintiff's freestanding Crashworthiness claim (Count V) also fails. *See Gregory*, 136 S.W.3d at 41 (listing the establishment of "the extent of enhanced injuries attributable to the defective design" as one of the "elements of a prima facie crashworthiness claim").

[11]    For the reasons set forth in New GM's August 22, 2016 letter to this Court, New GM submits that plaintiff's successor liability claims should be decided by the Bankruptcy Court in the first instance, and on August 19, 2016, New GM submitted a letter to the Bankruptcy Court requesting a status conference the week of August 22 to discuss successor liability issues and briefing. (8/22/16 Letter to this Court (Docket No. 3267); Ex. 19, 8/19/16 Letter to Judge Glenn, No. 09-50026 (Docket No. 13738).)  Thus, this motion does not address plaintiff's successor liability claims.  To the extent the Bankruptcy Court does not address and resolve the successor issues, New GM will raise them with this Court.

13177) ¶ 4 (Bankr. S.D.N.Y. June 1, 2015); *In re Motors Liquidation Co*., 529 B.R. 510, 583 (Bankr. S.D.N.Y. 2015).)  In addition to the reasons set forth in Section I, plaintiff's Independent Claims against New GM also fail for the following reasons.[12]

### A. Plaintiff's Negligence Claim Fails Because New GM Had No Duty To Warn Or Recall Under Kentucky Law.

Plaintiff asserts that New GM owed "a duty to warn" her about the defect and "a continuing duty to monitor and notify Old GM purchasers of defects contained in Old GM vehicles, under the TREAD Act."  (4th Am. Compl. ¶ 370.)  Plaintiff claims New GM breached this duty by "fail[ing] to warn about the dangers related to the Subject Vehicle" and failing to recall the vehicle.  (*Id.* ¶¶ 376, 379.)  This claim fails under Kentucky law.

Kentucky's strict interpretation of its products liability law is more in line with Louisiana law—which the Court concluded in *Barthelemy* would not impose a post-sale duty to warn or recall on a non-manufacturer, non-successor asset purchaser—than with Oklahoma or Virginia law.  In *Ostendorf v. Clark Equipment Co*., the Kentucky Supreme Court declined to impose a post-sale duty to retrofit on a manufacturer and specifically rejected the Restatement § 11 requirements with respect to a duty to recall as too "lax."  122 S.W.3d 530, 537-39 (Ky. 2003) (finding no "good reason to create an independent duty to retrofit" for a manufacturer because "existing negligence and product liability doctrines" are sufficient).  Based on *Ostendorf*, at least one federal court has determined that "[b]ecause the [Kentucky Supreme Court] declined to adopt the duty to retrofit, it is reasonable to assume that the court would similarly reject a post-sale duty to warn for the same reasons."  *Cameron v. DaimlerChrysler Corp*., 2005 WL 2674990, at *7 (E.D. Ky. Oct. 20, 2005) (cited favorably on other grounds by *Nissan Motor Co.,*

---

[12]  To preserve issues for a possible appeal, New GM incorporates the arguments in its *Scheuer* summary judgment papers that (1) plaintiff has not pled her fraud claim with the particularity required by Federal Rule of Civil Procedure 9(b), and (2) plaintiff's Independent Claim for negligence is preempted by the federal Safety Act.

*Ltd. v. Maddox*, 486 S.W.3d 838, 843 (Ky. 2015), *as modified on denial of reh'g* (May 5, 2016)).
The fact that Kentucky courts have declined to impose a post-sale duty to warn or recall even
with respect to a *manufacturer* makes it much less likely that Kentucky would impose such
duties on a *non-manufacturer asset purchaser*.[13]  *See Barthelemy* SJM Opinion (Docket No.
2400) at 13 ("More significantly, whereas the Court found no Oklahoma precedent either
accepting or rejecting an independent post-sale duty to warn, federal and state courts have
generally interpreted Louisiana products liability law narrowly and declined to impose such a
duty outside of the LPLA."); *cf. Cockram* SJM Opinion (Docket No. 3220) at 5-6 (determining
"the weight of authority supports the conclusion" that, "under Virginia law, the duty to warn
extends beyond the point of sale").

Indeed, Kentucky courts consistently reject product liability claims against non-
manufacturers.  *See, e.g.*, *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 856 F.
Supp. 2d 904, 908 (E.D. Ky. 2012) (finding under Kentucky and other states' laws, "[t]here is no
theory of product liability under which a defendant can be held liable for an injury caused by a
product that it did not sell, manufacture, or otherwise supply to the plaintiff"), *aff'd*, 756 F.3d
917 (6th Cir. 2014); *Manning v. Arch Wood Prot., Inc.*, 2014 WL 931948, at *3 (E.D. Ky. Mar.
10, 2014) ("Plaintiffs must have asserted sufficient allegations to allow at least a reasonable
inference that these Defendants made, sold or distributed the product causing [plaintiff's]
injury."); *see also Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 305 (Ky. 2015) (Venters, J.)
(noting by analogy that Kentucky law "do[es] not impose upon a car manufacturer the duty to
remove hazards from a car built by a different car maker").  In fact, "the threshold requirement

---

[13]    This Court found no duty to recall in *Cockram* based on the requirements of Restatement § 11.  Although
Kentucky determined those requirements were too "lax," plaintiff's claim here would also fail under the
Restatement requirements. *Cockram* SJM Opinion at 15-16 (rejecting a duty to recall because there was no
government directive requiring New GM to recall the product prior to accident).

of a products-liability action" is that "the defendant's product have injured the plaintiff." *Smith v. Wyeth, Inc*., 657 F.3d 420, 423-24 (6th Cir. 2011) (applying Kentucky law, affirming summary judgment for a non-manufacturer, and rejecting "the argument that a name-brand drug manufacturer owes a duty of care to individuals who have never taken the drug actually manufactured by that company").

Moreover, Kentucky limits the liability of asset purchasers, following the general rule of successor liability that "a corporation which purchases another corporation does not assume the payment of any debts or liabilities of the corporation which it has purchased," and refusing to expand its application beyond the four typical exceptions. *Pearson v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49, 51-53 (Ky. 2002) (rejecting the "product line exception" in part because "changing established principles of corporate succession transactions involves broad public policy issues which are more appropriately left to legislative determination" and "the corporate asset purchaser cannot be said to have created the risk of a product manufactured by its predecessor, and, except in a very remote way, does not realize the profit for the sale of a predecessor's product.").

To the extent this Court determines that Kentucky would recognize an independent post-sale duty to warn under certain circumstances, those circumstances do not exist here.  When analyzing the viability of a "duty to warn" claim in the context of a bankruptcy sale agreement similar to the one here, courts have declined to impose such a duty upon asset purchasers who did not thereafter establish an independent relationship with the vehicle owner.  *See Holland v. FCA US LLC*, 2015 WL 7196197, at *3 (N.D. Ohio Nov. 16, 2015).  Specifically, in these circumstances courts have required, among other actions, that the asset purchaser "actually service the machine."  *Id.* (quoting *In re Old Carco LLC*, 492 B.R. 392, 405 (Bankr. S.D.N.Y.

17

2013)).   This Court has ruled that an asset purchaser's assumption of a vehicle owner's warranties covering the defective part may also be relevant to establishing the required relationship under Virginia law.   *Cockram* SJM Opinion at 13 ("Cockram's car was sold in December 2005 with express warranties extending up to five years—including, most notably, a five-year warranty for the powertrain, which apparently covered the 'Ignition System'—which means that New GM assumed liability for Cockram's warranties in particular.")[14]

Here, however, plaintiff has no evidence of an independent relationship with New GM. By the time she purchased her 2003 Saturn Ion in 2012, the 3-year/36,000-mile "bumper to bumper" warranty had long since expired, and her Ion had no separate five-year powertrain warranty covering the "Ignition System."  (SUF. ¶¶ 5-8.)  Thus, unlike in *Cockram*, New GM did not assume any warranty obligations covering plaintiff's ignition switch—either as of the time of the 363 Sale, or as of the time that plaintiff purchased the Ion.  *Cf. Cockram* SJM Opinion at 13. In fact, because plaintiff purchased the Ion with over 134,000 miles in 2012, no original manufacturer warranties extended to her.  (SUF ¶ 9.)  Nor has plaintiff put forth any evidence that she received any recall notification from New GM before the accident.  Further, plaintiff did not purchase the Ion from a dealership affiliated with New GM, and she never had it repaired, serviced, or maintained by ***any*** third party, let alone New GM.  (*Id.* ¶ 4.)  In sum, plaintiff has not shown she had a relationship with New GM between the day she bought the Ion on April 2, 2012 and the day of the accident on November 21, 2013 sufficient to create a duty to warn under Kentucky law.  Nor, as discussed below, can New GM's failure to act pursuant to a contract

---

[14]   While plaintiff may claim that some non-Kentucky cases find relationships with other customers as being independently sufficient to form the basis of a duty to warn, those cases do not involve a bankruptcy sale "free and clear" asset purchaser with key Sale Agreement provisions that are similar to those here, as *Holland* does.

Case 1:14-mc-02543-JMF    Document 3276    Filed 08/23/16    Page 25 of 35

provide a basis for such a relationship or tort duty.[15]

### B.     Failure To Perform Recall Covenant Or Warranty Obligations Does Not Establish A Relationship Or Tort Duty Under Kentucky Law.

Plaintiff also seeks to base her claim upon the glove-box warranty and recall obligations in the Sale Agreement, and New GM's alleged failure to comply with those obligations.  (4th Am. Compl. ¶ 370 (alleging a duty "to monitor and notify Old GM purchasers of defects contained in Old GM vehicles").)  The Safety Act would not apply to New GM (with respect to Old GM vehicles) but for the Sale Agreement, a critical point conceded by plaintiff's counsel in *Scheuer*.  (*Scheuer* Pl. Opp. (Docket No. 1878) at 12 ("But for that [Sale] [A]greement, the Safety Act would not have applied at all with respect to Old GM cars.").)

This Court held in *Scheuer* "that a post-sale duty to warn cannot be imposed solely on the basis of the 2009 Sale Agreement."[16]  (*Scheuer* SJM Opinion at 39 n.4.)  Because the post-sale duty warn cannot be imposed "solely" on the basis of the Sale Agreement, there must be some additional "basis" under applicable state law.  Plaintiff has none.

The additional "basis" for a tort duty must come from a relationship with plaintiff (which, as discussed above, does not exist here) or affirmative acts by New GM that violate a warranty or the recall covenant (*i.e.*, failure to perform the recall properly, once underway), not omissions that violate a warranty or the recall covenant.  Affirmative acts taken in performance of a contract (like the Sale Agreement or a warranty) may in certain circumstances form the basis of a

---

[15]   To the extent plaintiff alleges negligence *per se*, this claim fails under Kentucky law.  *See, e.g.*, *Waltenburg v. St. Jude Med., Inc*., 33 F. Supp. 3d 818, 837 (W.D. Ky. 2014) ("Defendants are correct that a negligence per se claim premised on violations of federal law is not cognizable under Kentucky law."); *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. Ct. App. 2008) (rejecting plaintiffs' claim that a federal law "and its corresponding regulations impose a duty of care on Appellees allowing for a Kentucky 'common law' negligence per se claim").

[16]   Recognizing the Court's ruling in *Cockram* that the third party beneficiary clause in the Sale Agreement would not bar plaintiff's duty to warn claim, New GM does not reassert that argument here, but preserves it for appeal. *Cf. Cockram* SJM Opinion at 11 n.4.

separate tort duty or relationship.  In contrast, an omission by New GM to fulfill its contractual

duties (*e.g.*, the recall covenant or a warranty) does not give rise to a tort action under Kentucky

law.  *See Randolph's Adm'r v. Snyder*, 129 S.W. 562, 563 (Ky. 1910) ("If the defendant made a

contract with the plaintiff to treat him . . . and simply broke the contract by refusing to come

when sent for or to undertake the case, the right of action would be simply for the breach of the

contract, and there would be no right of action in tort.  But if the physician came and undertook

the case and having undertaken it, was negligent in his treatment, then a cause of action in tort

may be maintained for the nonperformance of the duty which the law cast upon him when he

undertook to treat the case. . . .  The plaintiff having elected to sue in tort must recover, if at all,

on the latter ground."); *Atlantic & P. Ry. Co. v. Laird*. 164 U.S. 393, 399 (1896) ("If the cause of

complaint be for an act of omission or nonfeasance, which, without proof of a contract to do

what has been left undone, would not give rise to any cause of action (because no duty apart

from contract to do what is complained [ ] of exists), then the action is founded upon contract,

and not upon tort.  If, on the other hand, the relation of the plaintiff and the defendants be such

that a duty arises from that relationship, ***irrespective of contract***, to take due care, and the

defendants are negligent, then the action is one of tort.") (emphasis added).  Because plaintiff

cannot establish a relationship with plaintiff and does not allege any affirmative acts (*i.e.*,

applicable undertakings) by New GM that violated the recall covenant or a warranty, she cannot

bring this tort action under Kentucky law.

### C.     Plaintiff Cannot Establish The Elements Of Fraudulent Concealment Because New GM Had No Duty To Disclose Under Kentucky Law.

In Count III, plaintiff alleges that New GM fraudulently concealed information that, if

timely disclosed, would have prevented her alleged injuries.[17]  (4th Am. Compl. ¶¶ 399-416.)

This claim is based solely upon a theory of fraud by omission, not affirmative misrepresentations

by New GM.  (*See id.*)  Under Kentucky law, the elements of a claim for fraud by omission are:

"(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to

disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to

act; and (4) the plaintiff suffered actual damages as a consequence."  *Giddings & Lewis, Inc. v.*

*Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (comparing fraud by misrepresentation

with fraud by omission) (citing *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d

636, 641 (Ky. Ct. App. 2003) ("Fraud by omission is not the same, at law, as fraud by

misrepresentation, and has substantially different elements.")).  The Kentucky Supreme Court

has unequivocally held that "a fraud by omission claim is grounded in a duty to disclose."

*Giddings*, 348 S.W.3d at 747 (citing *Republic Bank & Trust Co. v. Bear, Stearns & Co.,* 707 F.

Supp. 2d 702, 710 (W.D. Ky. 2010) ("The gravamen of the tort is breach of a duty to disclose

. . . .")); *Smith v. Gen. Motors Corp*., 979 S.W.2d 127, 129 (Ky. Ct. App. 1998) ("It is, of course,

well established that mere silence is not fraudulent absent a duty to disclose.").  Plaintiff "must

prove . . . the defendant had a duty to disclose the material fact at issue" to prevail.[18]  *Giddings*,

---

[17]   As in *Cockram*, plaintiff is trying to "repackage" her negligence claim into a fraud claim, which Kentucky does
not recognize as a products liability cause of action.  *See Ostendorf*, 122 S.W.3d at 535 ("A party injured by a
product can bring suit for that injury under three different theories: (1) breach of warranty under the Uniform
Commercial Code, (2) negligence, or (3) strict liability in tort.") (citing *Williams v. Fulmer*, 695 S.W.2d 411,
413 (Ky. 1985)); *see also Cockram* SJM Opinion at 17.

[18]   Kentucky's leading Supreme Court case governing fraud claims does not appear to distinguish intentional
concealment claims from constructive omission claims; rather Kentucky has one type of "fraud by omission"
claim, which clearly requires a duty to disclose.  *Giddings*, 348 S.W. 3d at 747; *see also Scheuer* SJM Opinion,
154 F. Supp. 3d at 42 n.5  (stating it is unclear whether Oklahoma "recognizes a claim for *actual* fraud based on
the concealment of a material fact, as opposed to a *constructive* fraud claim, . . ."); *Arnsperger v. Becker*, 2015
WL 301262, at *2 (Ky. Ct. App. Jan. 23, 2015) (providing a "discussion of the elements of a claim for
fraudulent concealment or omission in the context of real estate transactions" and listing the same four elements
from *Rivermont* noted in *Giddings*).  Even the few Kentucky courts that appear to draw such a distinction have
held a duty to disclose is required both for "direct" fraud by omission and constructive fraud.  *See, e.g.*, *Brown
v. Trover*, 2016 WL 100311, at *10-13 (Ky. Ct. App. Jan. 8, 2016) (describing the *Giddings*-defined fraud by
omission claim as "direct fraud" and noting that "the duty analysis undertaken above with regard to fraud by

348 S.W.3d at 747.  Here, New GM had no such duty under Kentucky law.

Kentucky law recognizes a duty to disclose in four circumstances:  (1) a duty "arising from a confidential or fiduciary relationship," (2) a duty arising "when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure," (3) a duty arising "where one party to a contract has superior knowledge and is relied upon to disclose same," and (4) "a duty provided by statute."  *Id.* at 747-48 (internal quotations omitted).  None of these circumstances apply here.  Indeed, like Virginia law, no Kentucky court "appears to have recognized a duty to disclose in circumstances remotely close to those here, involving a personal injury product liability claim."  *Cockram* SJM Opinion at 17.

*First*, plaintiff had no relationship with New GM, much less a confidential or fiduciary one.  *See supra* at Section II.A; *Cockram* SJM Opinion at 17.

*Second*, as plaintiff acknowledged, New GM did not make any representations to her and, therefore, could not have made a "partial" misrepresentation upon which she relied.  (4th Am. Compl. ¶ 399 ("Plaintiff does not base this claim on affirmative misrepresentations Old GM or New GM made to Plaintiff.").)  Plaintiff therefore cannot establish a duty to disclose under a theory of partial disclosure.  *See Rivermont*, 113 S.W.3d at 641-42 ("[T]his claim must fail both because of the prior acknowledgement in writing that [defendant] would make no oral representations nor enter into oral agreements with respect to the granting of a license.  [Plaintiff] cannot, having signed such an acknowledgement, claim that such an oral representation" was a partial disclosure).

*Third*, a duty to disclose may also exist "where one party to a contract has superior knowledge and is relied upon to disclose same."  *Giddings*, 348 S.W.3d at 748.  Here, New GM

---

omission applies equally" to a constructive fraud claim).  Accordingly, and as pleaded by plaintiff (*see* 4th Am. Compl. ¶ 402), her fraudulent concealment claim requires a duty to disclose under Kentucky law.

had no contract with plaintiff and did not have any Old GM warranty obligations to plaintiff. *See supra* at Section II.A; *Cockram* SJM Opinion at 17.

**Fourth**, plaintiff alleges that New GM had a duty to disclose "the facts" to plaintiff because "New GM had notification and recall obligations under the Safety Act with respect to Old GM vehicles, including a continuing duty to monitor and notify Old GM purchasers of defects." (4th Am. Compl. ¶ 408.) But New GM's Safety Act obligations for Old GM vehicles arise under the Sale Agreement. (Sale Order and Agreement, Section 6.15(a).) Absent this covenant, New GM would have had no Safety Act obligations for Old GM vehicles (*e.g.*, plaintiff's Ion). *See* 49 U.S.C. §30118(c)(1) (Safety Act applies to "manufacturers"). Thus, any disclosure obligations that New GM had as to plaintiff were *provided by* the Sale Agreement. *See Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 130 (Ky. Ct. App. 1998) (finding a duty to disclose where a Kentucky statute "imposed an affirmative duty upon [defendant] to disclose"). Consistent with Kentucky law, other courts have likewise found that a duty to disclose may not be contractually imposed. *See, e.g.*, *TC Tech Mgmt. Co. v. Geeks on Call Am., Inc.*, 2004 WL 5154906, at *5 (E.D. Va. Mar. 24, 2004) (determining a "duty to disclose must not be contractually imposed, but should be based upon common law or statute."); *see also Randolph's Adm'r*, 129 S.W. at 563.

### D. Plaintiff Cannot Establish The Elements Of Her Crashworthiness Claim Because She Lacks Expert Testimony And New GM Had No Duty To Recall.

In Count V, plaintiff alleges that "[h]ad the safer, alternative designs for the ignition switch been implemented, Ms. Norville's accident and her injuries would have been less severe." (4th Am. Compl. ¶ 421.) Plaintiff essentially alleges that an ignition switch defect in the Ion

caused airbag non-deployment, which enhanced her alleged injuries. To the extent plaintiff asserts this claim as an Independent Claim against New GM,[19] it fails.

**First,** plaintiff cannot maintain a crashworthiness claim under Kentucky law because she has no competent expert testimony that airbag non-deployment caused or enhanced her alleged injuries. *See supra* at Section I.B.2; *Gray*, 133 F. Supp. 2d at 534-35; *O'Bryan*, 39 F.3d at 1182, at *4. **Second**, New GM did not design or manufacture plaintiff's Ion; therefore, it could not have designed or implemented a "safer, alternative" switch. **Finally**, to the extent plaintiff claims that New GM could have "implemented" an alternative design by recalling the vehicle, Kentucky would not recognize a duty to recall claim, or any other product liability claim, against a non-manufacturer asset purchaser for the reasons discussed above. *See supra* at Section II.A; *see also Cockram* SJM Opinion at 15-16 (rejecting a duty to recall because there was no government directive requiring New GM to recall the product prior to the accident).

### E. Plaintiff Cannot Establish The Elements Of Negligent Misrepresentation Because She Bases Her Claim On Alleged Concealment.

In Count VI, plaintiff alleges that New GM "fraudulently, negligently, or intentionally *concealed* material facts." (4th Am. Compl. ¶ 426 (emphasis added).) Plaintiff, thus, bases her claim on a nondisclosure theory.[20] *See id.* ¶ 424 ("Plaintiff does not base this claim on affirmative misrepresentations Old GM or New GM made to Plaintiff."). In Kentucky, however, a claim for negligent misrepresentation "requires an affirmative false statement." *Giddings*, 348 S.W.3d at 746 (affirming dismissal of negligent misrepresentation claim because "implicit

---

[19]   *See* 4th Am. Compl. ¶ 421 ("The failure to implement a safer alternative design proximately caused the damages sustained by Amy Norville, as set forth herein, thus rendering Defendant New GM liable for compensatory and punitive damages.").

[20]   To the extent plaintiff is asserting a negligent (constructive fraud) omission claim, that claim also fails because plaintiff cannot establish New GM had a duty to disclose. *See supra* II.C; *see also Cockram* SJM Opinion at 17-18 (dismissing plaintiff's claim and citing "decisions from other jurisdictions dismissing nondisclosure claims as duplicative of failure-to-warn claims").

Case 1:14-mc-02543-JMF   Document 5276   Filed 08/23/16   Page 31 of 35

representations in the course of the sale are not enough to state a prima facie case as to this particular tort"); *H&R Mech. Contractors, Inc. v. Codell Const. Co.*, 2005 WL 3487870, at *3 (Ky. Ct. App. Dec. 22, 2005) (affirming dismissal of negligent misrepresentation claim because "it is imperative to allege, in some form, that false information was supplied or relied upon by a party").

## III.   PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES FOR ASSUMED LIABILITIES, AND ALL OF HER INDEPENDENT CLAIMS FAIL.

Under the Bankruptcy Court's December 4 Judgment, punitive damages are not recoverable for Assumed Liability Claims. (Dec. Bankr. J. (Docket No. 13563) at 2 n.3, 3.) Because plaintiff's Independent Claims fail as a matter of law, they cannot support the recovery of punitive damages.[21]  (S*ee* Nov. Bankr. Dec. at 31; *see also* Dec. Bankr. J. at 2 n.3, 3.)  Thus, plaintiff's demand for punitive damages should be dismissed as to these claims.[22]

## CONCLUSION

Plaintiff drove her car while under the influence of alcohol or drugs, and intentionally swerved to avoid a deer.  There is *no* evidence that ignition switch rotation had ***anything*** to do with her accident or alleged injuries.  Plaintiff's Independent Claims also fail as a matter of law for other reasons.  Accordingly, New GM respectfully requests that the Court grant summary judgment in its favor on all of plaintiff's claims.

---

[21]   Even if plaintiff's negligent misrepresentation claim did not fail as a matter of law, she still could not recover punitive damages for that claim.  *See City of Bowling Green, Ky. v. Lowe's Feed & Grain, Inc.*, 2014 WL 6882925, at *5 (Ky. Ct. App. Dec. 5, 2014) ("It is well-established in Kentucky jurisprudence that punitive damages are not recoverable upon a claim for negligent misrepresentation.") (citations omitted).

[22]   New GM asserts that plaintiff cannot recover punitive damages for its successor liability claims either, but that issue will be addressed in the pleadings to be filed in the Bankruptcy Court.  (*See supra* at n.11; Ex. 19, August 19, 2016 Letter to Judge Glenn re: Request for Status Conference on Successor Liability; August 22, 2016 Letter to this Court.)

Dated:  August 22, 2016

Respectfully submitted,

*/s/ Richard C. Godfrey, P.C.*

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654-3406
Phone:  312-862-2000
Fax: 312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

## CERTIFICATE OF SERVICE

     I hereby certify that on August 22, 2016, I electronically filed the foregoing Brief using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

                                       /s/ *Andrew B. Bloomer, P.C.*

                                       Andrew B. Bloomer, P.C.