UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.*, | Case No. 09-50026 (MG) |
| | (Jointly Administered) |
| Debtors, | |

------------------------------------------------------------------X

**STIPULATION AND AGREED ORDER (I) SETTLING DISPUTED ENTITLEMENTS OF DEBTOR-IN-POSSESSION LENDERS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO POTENTIAL TERM LOAN AVOIDANCE ACTION PROCEEDS, AND (II) MODIFYING AVOIDANCE ACTION TRUST AGREEMENT TO IMPLEMENT SETTLEMENT**

This Stipulation and Agreed Order (this "**Stipulation and Order**") is made and entered into on the date hereof by and among (i) the United States Department of the Treasury and Export Development Canada (together, the "**DIP Lenders**"); (ii) the Official Committee of Unsecured Creditors of Motors Liquidation Company (the "**UCC**"); and (iii) the Motors Liquidation Company Avoidance Action Trust (the "**AAT**"), through Wilmington Trust Company, as Avoidance Action Trust Administrator and Trustee, and Arthur J. Gonzalez, as Avoidance Action Trust Monitor.

**RECITALS**

A.    The DIP Lenders provided debtor-in-possession financing ("**DIP Financing**") to the Motors Liquidation Company bankruptcy estate (the "**Estate**"), including, without limitation, a $1.175 billion credit facility (the "**Wind-Down Facility**") to fund the wind-down of the Estate after the sale of substantially all the Estate's assets to an entity now known informally as New GM.

1

B.     As part of the DIP Financing, the DIP Lenders were granted, among other things, a superpriority administrative expense claim on account of the Wind-Down Facility in a total amount of $1.175 billion.

C.     The DIP Lenders also received certain security interests on account of the Wind-Down Facility, but agreed to exempt solely from the collateral that secured the Wind-Down Facility any interest in, among other things, the future proceeds from a pending adversary proceeding styled *Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A., et al.*, Adv. Pro. No. 09-504 (Bankr. S.D.N.Y.) (the "**Term Loan Avoidance Action**"), which the UCC was then authorized to pursue on behalf of the Estate.

D.     The Term Loan Avoidance Action remains pending and, pursuant to the Debtors' Second Amended Joint Chapter 11 Plan dated March 18, 2011 (the "**Plan**") and the Amended and Restated Avoidance Action Trust Agreement dated as of May 11, 2012 (the "**Avoidance Action Trust Agreement**"), is now being prosecuted by the AAT, with allocation of proceeds to be determined either by mutual agreement between the DIP Lenders and the UCC or by future order of this Court.  *See* Notice of Amendment and Restatement of Motors Liquidation Company Avoidance Action Trust Agreement (ECF No. 11704).

E.     The DIP Lenders maintain that their superpriority administrative expense claim reaches any and all proceeds of the Term Loan Avoidance Action.

F.     The UCC disputes the DIP Lenders' entitlement to any of the funds recovered by the AAT through the Term Loan Avoidance Action.  The UCC further asserts that the DIP Lenders agreed not to be repaid from Term Loan Avoidance Action proceeds and any such recovery should be distributed to unsecured creditors whose interests are represented by the UCC.

G.      The UCC commenced an adversary proceeding in the Bankruptcy Court (the "**DIP/UCC Proceeding**") against the DIP Lenders, by which the UCC sought a declaratory judgment on this issue, resulting in a ruling in favor of the UCC by this Court on November 28, 2011. *See Official Committee of Unsecured Creditors of Motors Liquidation Company v. United States Department of the Treasury (In re Motors Liquidation Company)*, 460 B.R. 603 (Bankr. S.D.N.Y. 2011)). The DIP Lenders appealed this ruling to the United States District Court for the Southern District of New York, which entered an opinion and order vacating the Bankruptcy Court's decision, and remanded the matter. *See United States Department of the Treasury v. Official Committee of Unsecured Creditors of Motors Liquidation Company*, 475 B.R. 347 (S.D.N.Y. 2012). No further applications or proceedings have occurred since the matter was remanded.

H.      The DIP Lenders and the UCC wish to resolve their dispute as to entitlements to proceeds of the Term Loan Avoidance Action based on the terms set forth herein and without the burden, expense, and uncertainty of further litigation. As a condition of such settlement, the DIP Lenders have agreed to provide certain additional funding to the AAT in respect of the Term Loan Avoidance Action expressly on terms provided herein.

I.      The AAT previously received certain funding to prosecute the Term Loan Avoidance Action, including from the DIP Lenders, but now requires additional funding to further prosecute this action. The AAT consents to both (i) the terms of this Stipulation and Order and (ii) the terms of the Litigation Cost Advance (as defined therein) set forth in the agreement (the "**Agreement**") annexed hereto as Exhibit A. Each of the AAT, the DIP Lenders and the UCC also consents to certain modifications to the Avoidance Action Trust Agreement as contemplated herein and in the Agreement, and as may be necessary to implement the provisions

3

of this Stipulation and Order and the Agreement, including but not limited to the financing arrangements, lien rights and allocation of litigation proceeds set forth herein.

It is therefore hereby STIPULATED, AGREED AND, UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED that:

1. The terms contained herein, including in the Agreement annexed hereto, are hereby approved in all respects and are incorporated herein and made a part hereof. The DIP Lenders and the AAT are authorized to implement such terms as they deem necessary, including, without limitation, through amendments to the Avoidance Action Trust Agreement, without further order of this Court.

2. Upon entry of this Stipulation and Order, the DIP Lenders shall advance $15 million to the AAT (the "Litigation Cost Advance") on terms and conditions provided herein and in the Agreement. The AAT shall repay such $15 million advance to the DIP Lenders consistent with the terms of the Agreement and those Avoidance Action Trust Agreement modifications implemented pursuant to the terms set forth herein and in the Agreement.

3. Notwithstanding the waterfall priorities set forth in the current version of Sections 5.1(d)(iii) and (iv) of the Avoidance Action Trust Agreement, if and when the AAT has Distributable Trust Assets,[1] and following the repayment of all DIP Lender Advances (including the Litigation Cost Advance) and GUC Trust Advances in accordance with Sections 5.1(d)(i) and 5.1(d)(ii) of the Avoidance Action Trust Agreement, the DIP Lenders shall be entitled to receive thirty (30%) percent of all remaining Distributable Trust Assets, and holders of Allowed General Unsecured Claims (or Units) shall be entitled to receive seventy (70%) percent of all remaining Distributable Trust Assets, with each such distribution to the DIP Lenders and holders of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Avoidance Action Trust Agreement.

4

Allowed General Unsecured Claims (or Units) to be made on a pari passu basis. The parties shall work in good faith to amend the Avoidance Action Trust Agreement to incorporate the foregoing settlement.

4.  This Stipulation and Order, the Agreement and the payments and obligations required thereby are in full satisfaction, settlement and release of the DIP Lenders' and UCC's (and their respective predecessors', successors', agents' and assigns') respective claims and defenses against one another in connection with the DIP/UCC Proceeding.

5.  The DIP Lenders are hereby granted, consistent with the terms contained in the Agreement and without filing or further action required by the DIP Lenders, a first priority, perfected continuing security interest in and lien on the Avoidance Action Proceeds and the Funding Account (as defined in the Agreement), up to the amount of the Litigation Cost Advance. Notwithstanding anything herein, in any other order of this Court or any agreement of the AAT or any other person or entity, in each case, whether entered before or after the date hereof, by the approval of this Stipulation by this Court, this Court hereby orders that no person or entity shall be granted any liens or security interests of any type or nature against the Term Loan Avoidance Action and/or the Avoidance Action Proceeds unless the DIP Lenders have provided written consent (which consent shall not be unreasonably withheld) of such liens (and any liens and/or security interests granted without the express written consent of the DIP Lenders shall be null and void and of no power or effect).

6.  Other than the rights of Avoidance Action Trust Beneficiaries under the terms of the Avoidance Action Trust Agreement (which shall be amended as set forth in paragraph 3 above), this Stipulation and Order does not grant third-party beneficiaries any additional rights to enforce the terms of this Stipulation and Order.

7. Except as provided herein, each party to this Stipulation and Order bears its own costs and fees in connection with any and all litigation, dispute, negotiation, or analysis concerning their respective entitlements to proceeds of the Term Loan Avoidance Action, and/or in connection with the provision of additional funding to the AAT as provided for herein.

8. This Stipulation and Order (with exhibits if any) represents the entire agreement of the parties hereto. No prior discussions or communications form any part of such agreement.

9. Each signatory to this Stipulation and Order represents that he or she is authorized to bind his or her client, and does so bind his or her client.

10. No party's agreement to this Stipulation and Order is or shall be construed as an admission of liability or culpability of any kind, nor of any fact alleged or argument asserted by any other party.

11. This Court shall have exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Stipulation and Order.

12. This Stipulation and Order is conditioned upon this Court's approval, and if not so approved, is null and void, with no force or effect.

13. In the event this Stipulation and Order is vacated by a court of competent jurisdiction, the AAT's obligation to repay any and all advances made pursuant to this Stipulation and Order shall mature, and the DIP Lenders shall be entitled to immediate, first priority repayment from the first to become available of either (a) replacement financing or (b) Distributable Trust Assets, excluding from Distributable Trust Assets the amount of cash on hand on the day this Stipulation and Order is entered. The AAT shall be obligated to promptly seek, and shall use its best efforts to obtain, replacement financing for the purpose of repaying the DIP Lenders. The obligation to repay the DIP Lenders in accordance with this paragraph

shall be secured by the lien granted pursuant to Paragraph 5 above. Further, this paragraph is severable from the rest of this Stipulation and Order.

14. Upon repayment by the AAT of all advances to the DIP Lenders that were made pursuant to this Stipulation and Order in accordance with Paragraph 13 above, the provisions of Paragraph 3 and 4 of this Stipulation and Order shall be null and void, with no force and effect.

15. The Avoidance Action Trust Agreement shall be amended to conform with this Stipulation and Order, specifically including with respect to the relative priority of the AAT's obligations to repay to the DIP Lenders any advances made pursuant to this Stipulation and Order. In the event the provisions in Paragraph 3 of this Order are vacated or deemed null and void, the Avoidance Action Trust Agreement shall be further amended to remove the allocation of the remaining Distributable Trust Assets between the DIP Lenders and holders of Allowed General Unsecured Claims (or Units) as set forth in Paragraph 3.

Dated: New York, New York
July 14, 2016

**UNITED STATES DEPARTMENT OF THE TREASURY**
PREET BHARARA
United States Attorney for the Southern District of New York
Counsel for United States Department of the Treasury


By: /s/David S. Jones
DAVID S. JONES
JOSEPH CORDARO
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2739/2745
Fax: (212) 637-2730
Email: David.Jones6@usdoj.gov
        Joseph.Cordaro@usdoj.gov

7

**EXPORT DEVELOPMENT CANADA**

By:  /s/Sean Mitchell
Title:  Principal

By:  /s/Janet Boyd
Title:  Loan Portfolio Manager

With respect to the Litigation Cost Advance and modifications of the Avoidance Action Trust Agreement:

BINDER & SCHWARTZ LLP

/s/Eric B. Fisher
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008
*Attorneys for the Motors Liquidation Company Avoidance Action Trust*

With respect to the settlement of the DIP/UCC Proceeding:

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY**
KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/Thomas Moers Mayer
Thomas Moers Mayer
Robert T. Schmidt
1177 Avenue of the Americas
New York, New York 10036
Tel.:  (212) 715-9100
Fax.:  (212) 715-8000


**IT IS SO ORDERED.**

Dated:    August 30, 2016
             New York, New York

                                         /s/Martin Glenn
                                      MARTIN GLENN
                              United States Bankruptcy Judge

**EXHIBIT A**

09-50026-mg    Doc 13748    Filed 08/30/16    Entered 08/30/16 11:42:46    Main Document
Pg 9 of 15

# AGREEMENT

## Motors Liquidation Company Avoidance Action Trust
## $15,000,000 Litigation-Related Advance

July 14, 2016

The signatory parties hereto agree as follows with respect to a proposed advance of fifteen million dollars ($15,000,000.00) (the "**Litigation Cost Advance**") to be provided by the Motors Liquidation Company ("**MLC**") debtor-in-possession lenders (the "**DIP Lenders**") to the MLC Avoidance Action Trust (the "**Trust**") on conditions described herein.  This agreement (this "Agreement") arises in connection with, and is conditioned upon approval by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") of, the settlement of litigation between the DIP Lenders, on the one hand, and the MLC Official Committee of Unsecured Creditors (the "**Committee**"), on the other hand. Finalization and Bankruptcy Court approval of that settlement is a condition precedent to the DIP Lenders' obligation to provide the contemplated Litigation Cost Advance, which is a contemplated term of that settlement.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Amended and Restated Motors Liquidation Company Avoidance Action Trust Agreement (the "**Trust Agreement**").

1.  **DIP Lenders:**  United States Department of the Treasury and Export Development Canada, in relative proportion

2.  **AAT:**  Motors Liquidation Company Avoidance Action Trust

3.  **Litigation Cost Advance Amount:**  $15,000,000

4.  **Permitted Uses:**  Section 1.1(e) of the Trust Agreement shall be amended to include the Litigation Cost Advance proceeds as part of Avoidance Action Trust Administrative Cash and such funds may be used as provided in the Trust Agreement.

5.  **Availability:**  The Litigation Cost Advance shall be made available on the Closing Date through a single funding to a segregated account in the name of the Trust (the "**Funding Account**").  The Funding Account shall be established at a bank reasonably acceptable to the Trust and the DIP Lenders.  The Litigation Cost Advance is one term of a proposed litigation settlement between the DIP Lenders and the Committee ("**Litigation Settlement**"), and the DIP Lenders' agreement to provide the Litigation Cost Advance shall be expressly conditioned upon, and shall not precede or arise in the absence of, approval by the Bankruptcy Court of such Litigation Settlement that includes the terms contained in this Agreement.

6.  **Security:**  The Litigation Cost Advance shall be secured by a first priority lien over the Funding Account and the Avoidance Action Proceeds.  The grant of such liens shall be included in the Bankruptcy Court order approving the Litigation Cost Advance.  The Funding Account shall also be subject to a deposit account control agreement acceptable to the DIP Lenders and the AAT.

7.  **Budgets:**  The DIP Lenders shall receive annual Budgets and quarterly updates in accordance with Section 6.3 of the Trust Agreement.  The quarterly updates shall reconcile actual expenditures with projections that had been included in the relevant Budget, and, if and when the

1

Trust identifies a need for or the occurrence of actual expenditures that materially differ from the relevant Budget, they will notify the DIP Lenders as promptly as practicable, and no later than 15 days after identifying the issue.

8. **Invoices:** Section 8.3(b) of the Trust Agreement shall be amended to provide that Trust Professionals and any other persons entitled to payment from the Trust (other than the Trust Administrator and the Trust Monitor) shall be required to submit reasonably detailed invoices on a monthly basis to the Trust Administrator, the Trust Monitor and the DIP Lenders, including in such invoices a description of the work performed, the individuals who performed such work, and the hourly rate of such person, plus an itemized statement of expenses for which payment is sought. Invoices submitted to the DIP Lenders may be in a form reasonably necessary to protect the attorney-client privilege. For the avoidance of doubt, any and all payments by the Trust from funds that originated from the Litigation Cost Advance or that are contained in the Funding Account shall be subject to this invoice disclosure requirement. No payment on account of such invoices shall be made until 15 days after presentation of the invoices to the DIP Lenders. The Trust Administrator shall timely pay all such invoices that are not disputed by the Trust Administrator or the Trust Monitor. If either or both of the DIP Lenders have questions or concerns about any invoice submitted to the Trust, or about any other issue relating to the Trust's finances or administration, they shall be entitled to discuss the matter with the Trust Monitor, as well as with the Trust Administrator and/or counsel for the Trust, as appropriate, and the Trust Monitor will consult with the DIP Lenders and give good faith consideration to any objection that the DIP Lenders raise before approval of payment by the Trust Administrator or non-objection by the Trust Monitor. The Trust Monitor, Trust Administrator, and/or counsel for the Trust, as appropriate, will engage in good faith discussions and attempt in good faith to provide information reasonably requested by either or both DIP Lenders.

9. **Funding Account Records; Reporting:** The bank administering the Funding Account shall be required to provide the DIP Lenders with account statements for the Funding Account, and shall be required to provide immediate access to any or all Funding Account records upon request by either or both of the DIP Lenders. Additionally, the Trust shall provide periodic and timely reporting to the DIP Lenders, on terms to be agreed upon, regarding the prosecution of the Term Loan Avoidance Litigation.

10. **Draws:** Prior to the Maturity Date (as defined below), and subject to the requirements of paragraph 8 hereof, the Trust shall be entitled to make withdrawals from the Funding Account at any time and in any amount determined by the Trust Administrator to be reasonable and appropriate to meet the needs of the Trust and not inconsistent with the terms and requirements of the Trust Agreement as amended hereby. Amounts not drawn shall remain in the Funding Account. Any amounts not withdrawn by the Maturity Date shall be returned to the DIP Lenders.

11. **Repayment:** As stated above, Section 1.1(e) of the Trust Agreement shall be amended to include the Litigation Cost Advance in the defined term "Avoidance Action Trust Administrative Cash," which will carry through to the definition of "DIP Lender Advances." An amount equal to the Litigation Cost Advance less any amounts returned to the DIP Lenders pursuant to paragraph 10 of this Agreement plus any other DIP Lender Advances, shall be repaid to the DIP Lenders first out of any Distributable Trust Assets in accordance with Section 5.1(d) of the Trust Agreement.

12. **No Additional Indebtedness or Liens:** Except as provided in this paragraph 12, the Trust may not incur additional indebtedness, whether unsecured or secured by any interest (including a security interest) in the Term Loan Avoidance Action or Avoidance Action Proceeds without the prior written consent of the DIP Lenders, except that the Trust may incur expenses in the ordinary

2

      course of the Trust's business provided no lien or right of setoff is attached thereto. In the event that the Trust seeks other litigation funding, (a) the DIP Lenders shall be provided a right of first refusal to provide such funding, which right of first refusal must be exercised within thirty (30) days after being presented in writing the opportunity to provide such funding, and (b) such funding shall be junior and subordinate to the Litigation Cost Advance and to the amounts owed to the DIP Lenders on account of prior funding of the Trust, subject to a form of subordination that is acceptable to the DIP Lenders in all respects, such consent not to be unreasonably withheld.

13. **Closing Date:** The earliest date on which all conditions, including Bankruptcy Court approval of a settlement agreement that includes as a term the DIP Lenders' provision of the Litigation Cost Advance, are met.

14. **Maturity Date:** The third anniversary of the Closing Date. The Maturity Date may be extended for three (3) additional one-year periods thereafter, each with the prior written consent of the DIP Lenders.

15. **Documentation:** Documentation shall include, without limitation, (i) amendments to certain sections of the Trust Agreement and a motion of the Trust Administrator to approve such amendments; (ii) a motion to approve (A) the settlement between the DIP Lenders and the Committee over the allocation of the Avoidance Action Proceeds, and (B) the additional funding provided by the DIP Lenders to the Trust in the form of the Litigation Cost Advance on the terms herein; and (iii) deposit account control agreement for the Funding Account to be established pursuant to the terms herein.

16. **Governing Law:** The Litigation Cost Advance and all agreements related to it shall be governed by the laws of the United States, and, to the extent the laws of any state apply, the State of New York (without regard to choice of law rules thereof).

17. **Jurisdiction:** Any disputes with respect to the Litigation Cost Advance, the parties submit to the exclusive jurisdiction of the Bankruptcy Court, and any appellate court thereto.

18. **Termination:** The Trust is currently seeking Bankruptcy Court approval of a proposed alternative financing (the "Proposed Financing") and the Trust will continue to seek such approval unless the following has occurred on or before July 18, 2016: either (i) a submission to the Bankruptcy Court of a motion seeking the approval of any agreement or arrangement, including, without limitation, the approval of any stipulation, with one or more DIP Lenders to provide funding for the Trust's prosecution of the Term Loan Avoidance Action and any other action brought by the Trust; or (ii) an agreement or arrangement between the Trust and one or more DIP Lenders pursuant to which such DIP Lenders will provide funding for the Trust's prosecution of the Term Loan Avoidance Action and any other action brought by the Trust. In the event of Bankruptcy Court approval of the Proposed Financing, this Agreement shall terminate and, in such event, the parties hereto shall have no further obligations or liabilities to each other under this Agreement.

*   *   *   *   *

AGREED AND ACCEPTED:

**MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST**

**By: Wilmington Trust Company, as Avoidance Action Trust Administrator and Trustee**

By: _____
David A. Vanaskey Jr.
Vice President

**By: Arthur J. Gonzalez, as Avoidance Action Trust Monitor**

By: _____
Arthur J. Gonzalez


**UNITED STATES DEPARTMENT OF THE TREASURY**
PREET BHARARA
United States Attorney for the Southern District of New York
Counsel for United States Department of the Treasury

By: _____ 7/14/2016
DAVID S. JONES
JOSEPH CORDARO
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2739/2745
Fax: (212) 637-2730
Email: David.Jones6@usdoj.gov
       Joseph.Cordaro@usdoj.gov


**EXPORT DEVELOPMENT CANADA**

By: _____

Title: _____


By: _____

Title: _____

AGREED AND ACCEPTED:

**MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST**

**By: Wilmington Trust Company, as Avoidance Action Trust Administrator and Trustee**

By:_____
David A. Vanaskey Jr.
Vice President

**By: Arthur J. Gonzalez, as Avoidance Action Trust Monitor**

By: *[signature]*
Arthur J. Gonzalez

**UNITED STATES DEPARTMENT OF THE TREASURY**
PREET BHARARA
United States Attorney for the Southern District of New York
Counsel for United States Department of the Treasury

By: _____
DAVID S. JONES
JOSEPH CORDARO
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2739/2745
Fax: (212) 637-2730
Email: David.Jones6@usdoj.gov
       Joseph.Cordaro@usdoj.gov

**EXPORT DEVELOPMENT CANADA**

By: _____

Title: _____

By: _____

Title: _____

AGREED AND ACCEPTED:

**MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST**

**By: Wilmington Trust Company, as Avoidance Action Trust Administrator and Trustee**

By:_____
David A. Vanaskey Jr.
Vice President

**By: Arthur J. Gonzalez, as Avoidance Action Trust Monitor**

By:_____
Arthur J. Gonzalez

**UNITED STATES DEPARTMENT OF THE TREASURY**
PREET BHARARA
United States Attorney for the Southern District of New York
Counsel for United States Department of the Treasury

By: _____
DAVID S. JONES
JOSEPH CORDARO
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2739/2745
Fax: (212) 637-2730
Email: David.Jones6@usdoj.gov
        Joseph.Cordaro@usdoj.gov

**EXPORT DEVELOPMENT CANADA**

By: _____
Title: Sean Mitchell
       ~~Principal~~

By: _____
Title: Janet Boyd
       Loan Portfolio Manager