# EXHIBIT   A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------x

IN RE:

                                     14-MD-2543 (JMF)

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*Norville v. General Motors LLC*                        Hon. Jesse M. Furman

-----------------------------------------------------------------------------x


# NEW GM'S MEMORANDUM IN OPPOSITION TO
# PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60654
Phone: 312-862-2000
Fax: 312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

***Attorneys for Defendant***
***General Motors LLC***

Date: September 1, 2016

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

UNDISPUTED FACTUAL BACKGROUND..............................................................4

ARGUMENT & AUTHORITIES ................................................................................7

I.  THE BANKRUPTCY COURT SHOULD DECIDE PLAINTIFF'S SUCCESSOR
    LIABILITY CLAIM..............................................................................................7

II. DELAWARE LAW, OR ALTERNATIVELY NEW YORK LAW, SHOULD
    APPLY UNDER KENTUCKY'S CHOICE-OF-LAW ANALYSIS. ................9

    A.  The Law of the Defendant's State Of Incorporation—Delaware—Applies
        To Successor Liability Claims. ..............................................................10

    B.  Alternatively, New York Law Should Apply Because Plaintiff's Successor
        Liability Claim Relates To Or Arises Out of The Sale Agreement. .....11

III. PLAINTIFF CANNOT PURSUE HER SUCCESSOR LIABILITY CLAIM
     UNDER    THE    "MERE    CONTINUATION"    EXCEPTION    UNDER
     DELAWARE, NEW YORK, OR KENTUCKY LAW....................................13

    A.  The "Mere Continuation" Exception Does Not Apply To This Good-Faith,
        Arms-Length Transaction Supported By Fair Consideration, Where
        Creditors Would Have Had No Recovery Without The Sale. ...............15

    B.  There Was No Shareholder Continuity Between Old GM And New GM. ..........20

    E.  Plaintiff's Three Other "Mere Continuation" Factors—Intent, Payment Of
        Debts, and Public Statements—Weigh Against Successor Liability....................24

CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ambrose v. Southworth Prods. Corp.*,
 953 F. Supp. 728 (W.D. Va. 1997).................................................................. 12

*American Railway Express Co. v. Commonwealth*,
 228 S.W. 433 (Ky. App. 1921)................................................................. passim

*Bank of Am. v. Corporex Cos., LLC*,
 99 F. Supp. 3d 708 (E.D. Ky. 2015)................................................................ 22

*Bonee v. L & M Contr. Chemicals*,
 518 F. Supp. 375 (M.D. Tenn. 1981) ............................................................. 13

*Brunner v. Estate of Lax*,
 47 Misc.3d 1206(A), 2015 WL 1509815 (N.Y. Sup. Ct. 2015)..................... 17

*Buja v. KCI Konecranes Intern. Plc.*,
 12 Misc.3d 859, 815 N.Y.S.2d 412 (N.Y. Sup. Ct. 2006)............................. 22

*Corp. Prop. Associates 8, L.P. v. Amersig Graphics, Inc.*,
 1994 WL 148269 (Del. Ch. Mar. 31, 1994) ................................................... 14

*Diaz v. South Bend Lathe Inc.*,
 707 F. Supp. 97 (E.D.N.Y.1989) ..................................................................... 22

*Douglas v. Stamco*,
 363 F. App'x 100 (2d Cir.2010) ................................................................ 21, 22

*Duracro Pty Ltd. v. Applied Concrete Tech., Inc.*,
 2016 WL 3620793 (W.D. Ky. June 28, 2016) ............................................... 10

*EiA Props., LLC v. Fenwick Equestrian*, LLC,
 2015 WL 5698540 (E.D. Ky. Sept. 28, 2015) ............................................... 10

*Energy Intelligence v. Cowen & Co.*,
 2016 WL 3939747 (S.D.N.Y. 2016) ............................................................... 10

*Foster v. Leggett*,
 484 S.W.2d 827 (Ky. 1972)............................................................................ 12

*Fountain v. Colonial Chevrolet Co.*,
 1988 WL 40019 (Del. 1988)..................................................................... 15, 23

*Graham v. James*,
 144 F.3d 229 (2d Cir. 1998) ..................................................................... 4, 20

*Harris Corp. v. Comair, Inc.*,
 712 F.2d 1069 (6th Cir.1983) ........................................................................ 10

*Hayden Capital USA, LLC v. Northstar Agri Indus., LLC*,
 2012 WL 1449257 (S.D.N.Y. Apr. 23, 2012) ............................................... 10

*Howell Contractors, Inc. v. Berling*,
  383 S.W.3d 465 (Ky. Ct. App. 2012) ............................................................... 10

*In re Acme Sec., Inc.*,
  484 B.R. 475 (Bankr. N.D. Ga. 2012) ....................................................... 15, 20

*In re Gen. Motors Corp.*,
  407 B.R. 463 (Bankr. S.D.N.Y. 2009) ..................................................... passim

*In re Met-L-Wood*,
  861 F.2d 1012 (7th Cir. 1988) ........................................................................ 7

*In re Motors Liquidation Co.*,
  2016 WL 3766237 (2d Cir. July 13, 2016) ................................... 6, 7, 22

*In re Motors Liquidation Co.*,
  428 B.R. 43 (S.D.N.Y. 2010) .......................................................................... 13

*In re Motors Liquidation Co.*,
  430 B.R. 65 (S.D.N.Y. 2010) .......................................................................... 13

*In re Wright Enters.*,
  77 F. App'x 356 (6th Cir. 2003) ..................................................................... 19

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*,
  2011 WL 1375011 (S.D. Ill. Apr. 12, 2011) ............................................... 9

*Jelvakov v. AHL Processing Equipment Co.*,
  773 N.Y.S.2d 64 (N.Y. 2d Dept. 2004) ...................................................... 14

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
  8 F.3d 130 (2d Cir. 1993) ............................................................................. 10

*Lewis v. Blackman Plumbing Supply L.L.C.*,
  51 F. Supp. 3d 289 (S.D.N.Y. 2014) ........................................................... 20

*Parker v. Henry A. Petter Supply Co.*,
  165 S.W.3d 474 (Ky. Ct. App. 2005) ........................................................... 19

*Parker v. Motors Liquidation Company*,
  10-4882-BK (2d Cir. July 28, 2011) ............................................................ 13

*Payne-Barber Coal Co. v. Butler*,
  123 S.W.2d 273 (Ky. 1939) ........................................................................... 19

*Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*,
  90 S.W.3d 46 (Ky. 2002) ............................................................................... 20

*Radlax Gateway Hotel v. Amalgamated Bank*,
  132 S.Ct. 2065 (2012) ................................................................................... 17

*Rohn Industries, Inc. v. Platinum Equity LLC*,
  887 A.2d 983 (Del. Super. Ct. 2005) .......................................................... 17

*Smith v. Henry*,
  277 S.W. 290 (Ky. Ct. App. 1925) ............................................................... 14

*Societe Anonyme Dauphitex v. Schoenfelder Corp.*,
    No. 07 Civ. 489, 2007 WL 3253592 (S.D.N.Y. Nov. 2, 2007) ................................ 20

*State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*,
    413 S.W.3d 875 (Ky. 2013) ............................................................................ 12, 13

*SungChang Interfashion Co. Ltd. v. Stone Mountain Accessories, Inc.*,
    2013 WL 5366373 (S.D.N.Y. Sept. 25, 2013) ................................................ 10, 11

*Thomas v. Johnson Agri-Trucking*,
    802 F. Supp. 2d 1242 (D. Kan. 2011) ................................................................. 13

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*,
    971 F. Supp. 2d 368 (S.D.N.Y. 2013) ................................................................. 10

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009) .............................................................................................. 7

*U.S. Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.-Petrobas*,
    2005 WL 289575 (S.D.N.Y. Feb. 4, 2005) .......................................................... 10

*Wahl v. Gen. Elec. Co.*,
    983 F. Supp. 2d 937 (M.D. Tenn. 2013) ............................................................... 9

*Weingartner Lumber & Supply Co., Inc. v. Kadant Composites, LLC*,
    2010 WL 996473 (E.D. Ky. Mar. 16, 2010) ....................................................... 11

*Wells Fargo Fin. Leasing, Inc. v. Griffin*,
    970 F. Supp. 2d 700 (W.D. Ky. 2013) ................................................................ 10

**Statutes**

11 U.S.C. § 363(k) ..................................................................................................... 5, 17

**Other Authorities**

15 Fletcher Cyc. Corp. § 7124.10 .................................................................... 3, 14, 22

Restatement (Second) of Conflict of Laws (1971) ...................................................... 12

Restatement (Third) of Torts Section 12 ........................................................... 8, 14, 15

# INTRODUCTION[1]

Plaintiff claims that the undisputed facts permit this Court to enter a partial summary judgment "on the issue of New GM's successor liability." Plaintiff is wrong. Her motion seeks an unprecedented summary order that would fundamentally disrupt factual findings underpinning a seven-year-old 363 Sale to New GM—then-owned by the U.S. and Canadian governments. Plaintiff's "mere continuation" theory is premised on the unsupported and unsupportable position that a judicially approved sale was, in reality, a sham designed to impair the recoveries of Old GM's creditors unfairly. That extraordinary result is not supported by the application of any state successor liability laws to a thoroughly-vetted, Bankruptcy Court-approved 363 Sale. Plaintiff's motion should be denied.

Indeed, examining the so-called undisputed proofs in support of the "mere continuation" exception reveals the flaw inherent in plaintiff's claim. The general common law rule—in Delaware, New York, Kentucky, and elsewhere—protects an asset purchaser against the liabilities of the seller, placing the burden on a creditor of the seller to prove an exception. In the context of the heavily-litigated, historic 363 Sale of Old GM's assets, the required proofs to establish the "mere continuation" exception to the general rule are daunting, whether reviewed by this Court, or (as New GM contends is proper) the Bankruptcy Court, where an extensive factual record regarding key questions (*e.g.*, the identity of shareholders, the continuation of the debtor/seller, and the impact of the transaction on Old GM creditors) already exists.

The issue of whether New GM is subject to successor liability for Old GM's conduct should be decided by the one court that actually presided over Old GM's bankruptcy and the sale of its assets—the United States Bankruptcy Court for the Southern District of New York. That

---

[1]    GM LLC fully stands by its Deferred Prosecution Agreement with the United States Attorney for the Southern District of New York, dated September 16, 2015, and the Statement of Facts associated with that Agreement. Nothing in this filing is intended to contradict the Statement of Facts or GM LLC's representations in the DPA.

court is best positioned to analyze plaintiff's argument that the U.S. and Canadian governments

deprived Old GM creditors of recoveries against Old GM that they would have had without the

Sale. That court determined that such creditors would have recovered "nothing" without the

Sale, and approved the more than $45 billion purchase price after extensive notice, publicity, and

scrutiny by, among others, the Official Committee of Unsecured Creditors appointed in Old

GM's bankruptcy case. Indeed, after numerous objections, briefs, and three days of evidentiary

hearings, the Bankruptcy Court approved the Sale, holding as follows:

> (i)    given Old GM's dire financial condition, creditors would recover "nothing" from Old GM without the Sale;
>
> (ii)   the opinion of an independent investment banking advisory firm, Evercore Group LLC, confirmed the fairness of the purchase price;
>
> (iii)  "[n]o other, much less better, offer was received" for Old GM following a Bankruptcy Court sanctioned auction "[i]n accordance with standard section 363 practice";
>
> (iv)   the sale was an arms' length transaction and involved a substantial secured creditor "credit bid"; it was far more than simply the distribution of a minority portion of New GM's stock to the Old GM bankruptcy estate for ultimate distribution to the creditors—not shareholders—of Old GM;
>
> (v)    New GM (largely owned by the United States and Canada) was a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code, and not a "mere continuation" of Old GM; and
>
> (vi)   the transaction was not a "reorganization" of Old GM (as plaintiff now claims) but a judicially approved sale of assets pursuant to Section 363 of the Bankruptcy Code.

*In re Gen. Motors Corp.*, 407 B.R. 463, 480-94 (Bankr. S.D.N.Y. 2009). The facts underlying

these conclusions are undisputed, they have not changed during the last seven years, and they

preclude the application of the "mere continuation" exception. This exception is designed to

protect creditors from transactions that deprive them *of remedies they had prior to the*

*transaction*—clearly not the situation here because they would have recovered "nothing" without

the Sale. *See* 15 W. Fletcher Cyc. of the Law of Private Corporations. Corp. § 7124.10 (1999) (mere continuation "exception is designed to prevent a situation whereby *the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors*") (emphasis added); Restatement (Third) of Torts § 12 (cited by plaintiff) (successor liability is "acceptable public policy" when a transaction "deprives future products liability plaintiffs of the remedies *that would otherwise have been available against the predecessor*") (emphasis added).

Ignoring this extensive record, plaintiff alleges without any support in her recently-amended pleading that "New GM did not pay Old GM sufficient consideration for the Bankruptcy Sale." (4th Am. Compl. ¶ 25(b).) Plaintiff cannot ignore the Bankruptcy Court's contrary finding. While the Second Circuit's decision held that the free-and-clear provision of the Sale Order did not apply to post-Sale used-car purchasers like plaintiff, the Second Circuit stated that it did not modify the Sale Order or its findings. *Plaintiff* has the burden to present evidence to support her "mere continuation" claims, but she has not. Simply put, plaintiff has not presented any new facts or evidence to prompt this Court to revisit or to contradict the Bankruptcy Court's determination—made in 2009—that the Sale did not deprive creditors of any recoveries from Old GM.

Even if this Court were not to refer these questions to the Bankruptcy Court in the first instance, it should deny plaintiff's motion for summary judgment seeking to impose successor liability upon New GM. Plaintiff did not include a choice-of-law analysis in her brief; she simply assumed that Kentucky law applied. Plaintiff is incorrect; as explained in Section II, Delaware law should apply here, and if not Delaware law then New York law. But regardless of which state's laws apply—Delaware, New York, or Kentucky—plaintiff's "mere continuation"

claim fails because she cannot show that the Sale deprived creditors of remedies they had against Old GM but for the Sale, let alone that that was the purpose of the Sale.

Moreover, to proceed with her successor liability claim under the "mere continuation" exception, plaintiff must "demonstrate[ ] the existence of a single corporation after the transfer of assets, with an identity of stock, stockholders, *and* directors between the successor and predecessor corporations." *Graham v. James*, 144 F.3d 229, 240 (2d Cir. 1998) (emphasis added) (internal citations and quotations omitted). Here, plaintiff cannot prove *any* of these elements, much less all of them: (i) there was no "single corporation after the transfer of assets" because New GM was recognized as the good faith purchaser, and Old GM continued after the bankruptcy sale (as Motors Liquidation Company) and resolved creditor claims until its dissolution in December 2011, at which time it was succeeded by the GUC Trust and not New GM; (ii) Old GM shareholders had their stock cancelled without receiving any sale proceeds; (iii) Old GM was owned by hundreds of thousands of shareholders, but New GM was primarily owned by the U.S. and Canadian governments; and (iv) the majority of New GM directors were not Old GM directors. (New GM's Statement of Undisputed Facts ("SUF") ¶¶ 12, 19-25, 37-40.) For these reasons, and as explained in detail below, plaintiff's motion should be denied.

## UNDISPUTED FACTUAL BACKGROUND

The majority of the relevant facts are set forth in the Bankruptcy Court's July 5, 2009 Sale Decision, *In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) ("Sale Decision"), and July 5, 2009 Sale Order. "By the fall of 2008, GM was in the midst of a severe liquidity crisis, and its ability to continue operations grew more and more uncertain with each passing day. As a result, in November 2008, GM was compelled to seek financial assistance from the U.S. Government." *Sale Decision*, 407 B.R. at 476. In 2008 and 2009, "fear[ing] . . . a systemic failure throughout the domestic automotive industry and the significant harm to the

overall U.S. economy that would result from the loss of hundreds of thousands of jobs and the sequential shutdown of hundreds of ancillary businesses," the U.S. provided emergency secured financing to Old GM "to sustain GM's operations while GM developed a new business plan." *Id.* at 477. (SUF ¶¶ 1-3, 6, 13.)

"On May 8, 2009, about three weeks before the Filing Date, GM announced its first quarter 2009 results. They presented a grim financial picture, and equally grim trends." *Sale Decision,* 407 B.R. at 479. In its July 5, 2009 Decision, the Bankruptcy Court found that Old GM could avoid liquidation only by obtaining financing from the U.S. government, which the government would only provide if Old GM engaged in a prompt 363 Sale process. *Id.* at 480. In the Sale Decision, the Bankruptcy Court concluded that "the only alternative to an immediate sale is liquidation," *id.* at 493, which was not a viable option because "*in the event of a liquidation, unsecured creditors would recover nothing*." *Id.* at 481 (emphasis added)

As part of the 363 Sale, Old GM received at least $45 billion in consideration from New GM. (SUF ¶¶ 11, 25-27.) An important element of the purchase price was a credit bid, pursuant to 11 U.S.C. § 363(k), by the U.S. and Canadian governments based upon secured loans they had made to Old GM. (*Id.* ¶¶ 26-27.) The Bankruptcy Court determined the not-less-than $45 billion purchase price was fair; if the Sale was not approved, Old GM would be liquidated, and the resulting asset recovery would be less than $8 billion; and without the Sale, Old GM unsecured creditors would have no recovery. *Sale Decision*, 407 B.R. at 474-75. (SUF ¶¶ 7, 11, 18.)

Old GM's hundreds of thousands of shareholders did not become shareholders in New GM. Their shares were extinguished in the Sale. (SUF ¶¶ 19-25.) New GM had four shareholders: (1) the U.S. government (60.8%); (2) the Canadian government (11.7%); (3) a

new employees' beneficiary association trust (17.5%); and (4) the bankruptcy estate of Old GM (10.0%). (*Id.* ¶ 25)  The Stockholders Agreement gave the first three shareholders (but not the Old GM estate) the right to appoint twelve of New GM's thirteen board members, the thirteenth being its CEO. (*Id.* ¶ 33.)  The Old GM estate's shares in New GM were not distributed to Old GM's former shareholders; those shares were ultimately distributed to Old GM's creditors. (*Id.* ¶¶ 21, 24, 39.)

Following the 363 Sale, Old GM continued to pay creditor claims and to hold assets, including the sale proceeds, $1.175 billion in cash and certain real and personal property. *See In re Motors Liquidation Co.*, 2016 WL 3766237, at *4 (2d Cir. July 13, 2016).  When Old GM dissolved in December 2011, it was succeeded not by New GM but by the GUC Trust, which also holds substantial assets and continues to resolve creditor claims. (SUF ¶¶ 23-24, 37-38, 40.)  As successor to Old GM, the GUC Trust was assigned the right to assert Old GM defenses to claims made against Old GM. (*Id.* ¶ 40.)

Plaintiff was driving a 2003 Saturn Ion manufactured by Old GM at the time of her accident on November 21, 2013. (*Id.* ¶¶ 48-49.)  New GM, which did not come into existence until 2009, never manufactured a Saturn Ion. (*Id.* ¶ 42.)  Old GM produced the Saturn Ion only until model year 2007. (*Id.*)  In fact, the First Day Affidavit filed in the Old GM bankruptcy case, dated June 1, 2009, stated Old GM intended to "phase[] out" the Saturn brand entirely. (*Id.* ¶ 43.)  After a potential deal for the sale of Saturn assets to a third party fell through, New GM announced shortly after the 363 Sale that it was discontinuing the Saturn brand. (*Id.* ¶¶ 44-45)  Plaintiff bought her Saturn after the brand was discontinued. (*Id.* ¶ 48.)

## ARGUMENT & AUTHORITIES

## I.   THE BANKRUPTCY COURT SHOULD DECIDE PLAINTIFF'S SUCCESSOR LIABILITY CLAIM.

The Bankruptcy Court retained jurisdiction to enforce, implement and interpret the provisions of the Sale Order.  "Where this Court has been asked to construe its own opinions, orders or judgments that invoke this Court's knowledge of earlier proceedings in this case, or to address matters invoking this Court's knowledge of bankruptcy law, this Court has addressed those issues itself."  (11/9/15 Decision at 49, 09-bk-50026, Docket No. 13533.)  The Second Circuit agreed:  "[T]he bankruptcy court had jurisdiction to interpret and enforce the Sale Order."  *In re Motors Liquidation Co.*, 2016 WL 3766237, at \*11; *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (Bankruptcy Court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders.").   Indeed, plaintiff's Complaint and brief rely on the Sale Agreement (in some cases indirectly by citing securities filings that in turn cite the Agreement) and Sale Order, and plaintiff concedes that her "mere continuation" theory depends, at least in part, on the Sale Agreement.  (Pl. Br. at 7.)

The Second Circuit's decision does not impair the Bankruptcy Court's inherent jurisdiction to interpret its own Decision and Order, which plaintiff seeks to contradict in several respects.[2]  First, plaintiff alleges that "New GM did not pay Old GM sufficient consideration for the Bankruptcy Sale" (4th Am. Compl. ¶ 25(b)), contradicting the Bankruptcy Court's finding that the Section 363 auction procedures it approved, and the sale process it oversaw, yielded "the highest or otherwise best offer for the Purchased Assets and provides fair and reasonable

---

[2]   New GM preserves the arguments in its Second Circuit petition for rehearing.  Moreover, "a proceeding under section 363 is an *in rem* proceeding" that "transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding."  *In re Met-L-Wood*, 861 F.2d 1012, 1017 (7th Cir. 1988) (Posner, J.) (noting that, even where the plaintiffs had no notice of the sale or the bankruptcy, seeking damages from a purchaser "is a thinly disguised collateral attack on the judgment confirming the sale" and after "the time for appeal had run, the validity of the sale was established, even against nonparties to the sale proceeding").

consideration for the Purchased Assets." (SUF ¶ 18.)  Second, plaintiff seeks a finding that the purchase price was inadequate because "no cash passed between Old GM and New GM *at the time of the Bankruptcy Sale*."  (Pl. Memo at 9-10 (emphasis added).)  That argument completely disregards the statutorily authorized, Bankruptcy-Court approved $49 billion credit bid by the U.S. and Canadian governments, which was the equivalent of cash being paid by the secured creditor/purchaser to the seller and then that cash being immediately paid by the seller to the secured creditor in satisfaction of its secured debt.  (SUF ¶¶ 26-27.)  Third, plaintiff claims that the transaction was a "reorganization" and only "nominal[ly]" a "sale."  (Pl. Br. at 10.)  But the Bankruptcy Court found the opposite, holding that the transaction was a "sale" under 11 U.S.C. § 363 and squarely rejecting similar arguments that the transaction was a "sub rosa" reorganization plan.  *See Sale Decision*, 407 B.R. at 486.  Fourth, plaintiff's own authorities hold that successor liability applies to transfers of assets that "deprive future products liability plaintiffs of the remedies that would otherwise have been available against the predecessor."  Restatement (Third) of Torts Section 12; *see also American Railway Express Co. v. Commonwealth*, 228 S.W. 433, 441 (Ky. Ct. App. 1920).  Any claim that the Sale deprived plaintiff of remedies against Old GM contradicts the Bankruptcy Court's finding that Old GM creditors would have recovered "nothing" without the Sale.  *Sale Decision*, 407 B.R. at 481.  The Bankruptcy Court is best equipped to consider these issues and others that "invoke [that] Court's knowledge of earlier proceedings in this case" as well as that "Court's knowledge of bankruptcy law."  (11/9/15 Decision at 51.)  Permitting plaintiff and others similarly situated to have their "mere continuation" claims decided in the first instance by non-bankruptcy courts[3] would lead to contradictory, inconsistent rulings issued without the benefit of the Bankruptcy Court's

---

[3]   New GM does not agree that courts in other jurisdictions would have the power to issue orders contradicting the Bankruptcy Court's final and non-appealable Sale Order; however, the risk of such orders should be avoided by having such claims addressed by the Bankruptcy Court in the first instance.

background and expertise, which could impact the interpretation and enforcement of the Sale Order in cases beyond MDL 2543.

In sum, the question at the core of plaintiff's "mere continuation" claim has already been resolved by the Bankruptcy Court in its Sale Order: Did the 363 Sale worsen creditors' position by improperly transferring assets from Old GM? The Bankruptcy Court answered, "No." *In re See Gen. Motors Corp.*, 407 B.R. at 480-94. Because the Bankruptcy Court retains jurisdiction to interpret and enforce the Sale Order, it should be the first to decide plaintiff's recent "mere continuation" claim.

## II.    DELAWARE LAW, OR ALTERNATIVELY NEW YORK LAW, SHOULD APPLY UNDER KENTUCKY'S CHOICE-OF-LAW ANALYSIS.

Plaintiff's motion fails to conduct any choice-of-law analysis, simply assuming that Kentucky's substantive law applies to her successor liability claim. But Kentucky choice-of-law rules[4] dictate that Delaware law (the state of New GM's incorporation) applies, not Kentucky law. In the alternative, the Court should apply New York law (the location of the Bankruptcy Court whose findings plaintiff seeks to attack, as well as the law selected in the judicially approved Sale Agreement).[5]

---

[4] For purposes of this motion, New GM assumes (but does not concede) that Kentucky choice-of-law rules would apply. *See Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937, 943 (M.D. Tenn. 2013) (for cases directly filed in an MDL, applying the choice-of-law rules of the forum where the case would have been filed but for the MDL); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011) (same).

[5] In conducting a choice-of-law analysis, courts also determine whether there is a "true conflict" among the laws of different jurisdictions. There is a "true conflict" between Delaware law (or New York law) and Kentucky law on the issue of successor liability. For example, plaintiff argues that Kentucky law does not require continuity of shareholders (Pls. Br. at 7), but Delaware (which requires the "same legal person" for mere continuation) and New York do. *See* Section III *infra*.

A. **The Law of the Defendant's State Of Incorporation—Delaware—Applies To Successor Liability Claims.**

Although Kentucky courts tend to be "very egocentric or protective concerning choice of law questions,"[6] Kentucky choice-of-law rules look to the substantive law of the defendant's state of incorporation for "veil-piercing, instrumentality, and alter ego" claims and, by extension, successor liability claims. *See Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 467 (Ky. Ct. App. 2012). Federal courts in Kentucky cite *Howell* as the authority on choice-of-law issues involving veil piercing and similar claims under Kentucky law. *E.g.*, *Duracro Pty Ltd. v. Applied Concrete Tech., Inc.*, 2016 WL 3620793, at *8 (W.D. Ky. June 28, 2016); *EiA Props., LLC v. Fenwick*, 2015 WL 5698540, at *3-4 & nn.8-9 (E.D. Ky. Sept. 28, 2015).

Successor liability claims are closely related to veil-piercing and alter ego claims, and courts commonly treat them the same for choice-of-law purposes. *See, e.g.*, *Energy Intelligence v. Cowen & Co.*, 2016 WL 3939747, at *11 (S.D.N.Y. July 15, 2016) (collecting cases holding that the law of the state of incorporation applies to "issues of corporate veil piercing, successor liability, and de facto mergers").[7] Both types of claims address whether and to what extent the formal distinction between corporate entities should be honored, and the state of incorporation has the most significant interest in upholding those distinctions. Notably, *Howell* cites the Second Circuit's decision in *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132-33 (2d Cir. 1993), to support its holding that the state of incorporation applies to veil piercing claims. 383 S.W.3d at 467. Courts within the Second Circuit have recognized that *Kalb*'s reasoning extends to successor liability claims. *E.g.*, *Energy Intelligence*, 2016 WL 3939747, at *11; *Tommy Lee*

---

[6] *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 707 (W.D. Ky. 2013); *see also Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983)

[7] *SungChang Interfashion Co. Ltd. v. Stone Mountain Accessories, Inc.*, 2013 WL 5366373, at *13 (S.D.N.Y. Sept. 25, 2013); *Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 378 (S.D.N.Y. 2013); *Hayden Capital USA, LLC v. Northstar Agri Indus., LLC*, 2012 WL 1449257, at *6-7 (S.D.N.Y. Apr. 23, 2012); *U.S. Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.-Petrobas*, 2005 WL 289575, at *5 (S.D.N.Y. Feb. 4, 2005).

*Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 375, 378 (S.D.N.Y. 2013); *SungChang Interfashion Co. Ltd. v. Stone Mountain Accessories, Inc.*, 2013 WL 5366373, at *4-5, 13 (S.D.N.Y. Sept. 25, 2013). Because New GM is incorporated in Delaware, Delaware law should apply to plaintiff's successor liability claims.[8]

### B.    Alternatively, New York Law Should Apply Because Plaintiff's Successor Liability Claim Relates To Or Arises Out of The Sale Agreement.

Because plaintiff seeks the benefits of the Sale Agreement, she is bound by its choice-of-law clause. "When a non-signatory plaintiff seeks the benefits of a contract that contains an arbitration provision, it is estopped from denying its obligation to arbitrate." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir.1999) (internal quotation marks omitted). This benefits estoppel theory applies equally to choice-of-law provisions. For example, a personal injury plaintiff who sought to have his employer's insurer pay him directly under the insurance contract between the insurer and his employer was "estopped from arguing that the choice-of-law provision in that contract does not apply to him." *American S.S. Owners Mut. Protection & Indem. Ass'n, Inc. v. Henderson*, 2013 WL 1245451, at *4 (S.D.N.Y. Mar. 26, 2013); *see also Int'l Chartering Servs., Inc. v. Eagle Bulk Shipping Inc.*, 138 F. Supp. 3d 629, 636-37 (S.D.N.Y. 2015) (holding that benefit estoppel "principle applies to bind non-signatories to choice-of-law clauses").

Thus, to the extent Delaware substantive law does not apply, plaintiff's successor liability claims should be decided under the substantive law of New York. Plaintiff seeks the benefits of

---

[8]  In the pre-*Howell* case of *Weingartner Lumber & Supply Co., Inc. v. Kadant Composites, LLC*, 2010 WL 996473 (E.D. Ky. Mar. 16, 2010), the district court held that Kentucky would apply its law to both veil-piercing and successor liability claims, despite the defendant's incorporation in Delaware. *Id.* at *3-4. After *Howell*, *Weingartner* is no longer persuasive authority. Indeed, *Weingartner's* reasoning now supports applying the law of the state of incorporation to successor liability, as *Weingartner* treated veil-piercing and successor liability claims the same for choice of law. *Howell* expressly holds that the state of incorporation applies to veil-piercing claims, so that same conclusion should apply to successor liability claims.

11

the Sale Agreement; specifically, she relies on New GM's express assumption of liability for

post-Sale accidents in the Sale Agreement. (*E.g.*, 4th Am. Compl. ¶ 367, 393-95, 419.) The Sale

Agreement on which plaintiff relies has a choice-of-law provision stating that New York law will

apply to "matters arising out of or in connection with this Agreement." (SUF ¶ 28.) Because

plaintiff's mere continuation claim arises out of and is connected to the Sale Agreement —and

the claim would not exist but for New GM purchasing certain of Old GM's assets through that

Sale Agreement — New York law governs her claim.

Even if this Court does not follow *Howell* or the Sale Agreement's choice-of-law clause,

then New York substantive law still applies. The choice-of-law question would then turn on

whether plaintiff's successor liability claims sound in contract or tort. For contractual issues,

Kentucky applies § 188 of the Restatement (Second) of Conflict of Laws (1971). *State Farm

Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013). For tort issues,

Kentucky applies its own law if "there are significant contacts—not necessarily the most

significant contacts—with Kentucky." *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972).

The Kentucky Supreme Court has not decided whether mere continuation claims arising

from a sale agreement in the context of a product liability action should be subject to contract

choice-of-law rules or tort choice-of-law rules. In *Ambrose v. Southworth Prods. Corp.*, 953 F.

Supp. 728 (W.D. Va. 1997), where successor liability claims were asserted in a lawsuit alleging

product liability claims, the court explained that:

> A finding of successor liability is derived from an analysis of the relationship
> between two corporate parties and the agreements undertaken between those
> parties. The agreements necessarily impose obligations and responsibilities on a
> party. A determination of whether these responsibilities include successor
> liability for the prior tortious acts of the former corporation is more appropriately
> characterized as an issue of contract rather than tort.

*Id.* at 734; *see also Thomas v. Johnson Agri-Trucking*, 802 F. Supp. 2d 1242, 1250 (D. Kan. 2011); *Bonee v. L & M Contr. Chemicals*, 518 F. Supp. 375, 379-80 (M.D. Tenn. 1981).

Contractual choice-of-law principles consider the place of negotiation, contracting, and performance, with the overarching question being which state "has the most significant relationship to the transaction and the parties." *State Farm*, 413 S.W.3d at 878-89. Other than Delaware, New York has the most significant relationship to the successor liability issue presented because plaintiff seeks to contradict the orders, opinions, and findings of the Bankruptcy Court, as well as the opinions of this Court and the Second Circuit affirming the Sale Order, all of which were entered by courts in New York. *See Parker v. Motors Liquidation Co.*, 10-4882-BK (2d Cir. July 28, 2011); *In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010); *In re Motors Liquidation Co.*, 430 B.R. 65 (S.D.N.Y. 2010). Moreover, New York is where the 363 Sale that forms the basis of plaintiff's successor liability claim was judicially approved and authorized, as well as where the sale was consummated. The significance of New York's relationship is further reinforced by the Sale Agreement's choice-of-law clause, which provides that all "matters arising out of or in connection with this Agreement (whether arising in contract, tort, equity or otherwise)" shall be construed in accord with New York law (without giving effect to rules governing the conflicts of law) to the extent the Bankruptcy Code is not applicable. (SUF ¶ 28.) Therefore, under Kentucky choice-of-law principles, if Delaware law does not apply in the first instance, New York law should apply.

## III.    PLAINTIFF CANNOT PURSUE HER SUCCESSOR LIABILITY CLAIM UNDER THE "MERE CONTINUATION" EXCEPTION UNDER DELAWARE, NEW YORK, OR KENTUCKY LAW.

Regardless of whether Delaware, New York, or Kentucky law applies, the Court should deny plaintiff's motion because New GM is not a "mere continuation" of Old GM.

As a general rule, "a corporation which acquires the assets of another is not liable for the torts of its predecessor."[9]  Plaintiff argues that the "mere continuation" exception to this general rule applies.  (4th Am. Compl. ¶ 25).  Plaintiff is wrong.

The "mere continuation" exception is an equitable doctrine that protects creditors from asset transfers that deprive them of remedies that would otherwise be available.  *See* 15 W. Fletcher Cyc. Corp. § 7124.10.  The Restatement (Third) of Torts, cited by plaintiff, states that "[i]mposing liability on successor corporations constitutes acceptable public policy when the successor either agrees to be liable or is implicated in the transfer of assets in a way that, without such liability, would unfairly deprive future products liability plaintiffs of the remedies *that would otherwise have been available against the predecessor*."  Restatement (Third) of Torts Section 12 (emphasis added).  As the Bankruptcy Court has already concluded, the 363 Sale did not diminish Old GM's ability to pay creditors; on the contrary, it increased Old GM's ability to do so.  *Sale Decision*, 407 B.R. at 481 ("[I]n the event of a liquidation, unsecured creditors would recover nothing.").

Plaintiff identifies various "factors" as allegedly dispositive of this exception.  (Pl. Br. at 6.)  As an initial matter, those "factors" should not be analyzed in silos[10] or divorced from the question of whether the equitable remedy should be applied.   In any event, each of the "factors"[11] underscores why her mere continuation claims fail.  To avoid repetition, New GM

---

[9] *Jelvakov v. AHL Processing Equipment Co.*, 773 N.Y.S.2d 64, 65 (N.Y. 2d Dept. 2004); *Ross v. Desa Holdings Corp.*, 2008 WL 4899226, at *4 (Del. Super. Ct. 2008); *Dixstar v. Gentec Equip.*, 2004 WL 3362501 at *5 (W.D. Ky. Feb. 11, 2004).

[10]   *See Dixstar*, 2004 WL 3362501, at *4 ("The difficulty with considering all of these factors is that courts weigh the factors differently depending on the case and do not always offer much guidance on which issues are the most important under the exception.").

[11]   These "factors" are:  (i) whether there was "continuity of shareholders and ownership, management, personnel, physical location, and business operations"; (ii) "whether sufficient consideration was given"; (iii) "whether the predecessor ceased business operations and was dissolved shortly after the new company was formed;" (iv) whether the successor was  merely a "new hat" for the seller; (v) outstanding debts paid by the successor; (vi) how the successor held itself out to the public; and (vii) what the "buyer's intent or purpose was when the new company was

will address each factor for Delaware, New York, and Kentucky, to the extent applicable in that state.

Finally, for the mere continuation exception to apply under Delaware law, the defendant "must be the same legal person, having a continued existence under a new name." *Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at *8-9 (Del. 1988) ("The continuation theory of corporate successor liability has been narrowly construed by the Delaware courts."). Plaintiff does not and cannot claim that New GM is the same "legal person" as Old GM, and therefore mere continuation does not apply under Delaware law.

### A. The "Mere Continuation" Exception Does Not Apply To This Good-Faith, Arms-Length Transaction Supported By Fair Consideration, Where Creditors Would Have Had No Recovery Without The Sale.

If the 363 Sale had not been approved, Old GM would have liquidated, leaving its unsecured creditors without any recovery. *Sale Decision*, 407 B.R. at 475. This factual finding by itself disposes of plaintiff's claims. Plaintiff's allegation that "New GM did not pay Old GM sufficient consideration" (4th Am. Compl. ¶ 25(b)), not only contradicts the Bankruptcy Court's order on this exact issue, but also ignores the court's creditors-would-otherwise-take-nothing finding. Under the authorities cited by plaintiff, successor liability applies where a transaction deprives a creditor of an available remedy. *See* Restatement (Third) of Torts Section 12; *Am. Ry. Express Co.*, 228 S. W. at 440-41. The test here is whether, compared to the pre-Sale situation where creditors could recover nothing, *Sale Decision*, 407 B.R. at 475, the Sale put Old GM creditors in a *worse* position.[12] Plaintiff cites no authority whatsoever for the proposition that

---

formed." Plaintiff recognizes the significance of six of these factors (Pl. Br. 7-11), but does not list whether the purchaser was merely a "new hat" for the seller as a "factor."

[12] *See, e.g., In re Acme Sec., Inc.*, 484 B.R. 475, 492 (Bankr. N.D. Ga. 2012) ("In any event, it is quite obvious that the transactions did not, and could not, unfairly deprive CLN of a remedy against ALK because CLN had no remedy against ALK. In the absence of Acme Security's acquisition of the assets in full satisfaction of the debt under O.C.G.A. § 11–9–620, ALK would have discontinued its business and Acme Security would have conducted a

where, as here, a transaction *increased* creditor recoveries, a plaintiff can invoke the "mere continuation" exception, if it can claim that another transaction would have increased creditor recoveries by marginally *more*.[13]

In any event, the Bankruptcy Court found that the not-less-than $45 billion that New GM paid for Old GM assets was fair consideration because the entire world had notice of Old GM's asset sale and anyone could have submitted a competitive bid, but no one did. *Sale Decision*, 407 B.R. at 480 (the "Transaction was subject to higher and better offers, but none were forthcoming."); (SUF ¶¶ 10, 18.); *In re Temtechco, Inc.*, 1998 WL 887256, at *12 (Bankr. D. Del. Dec. 18, 1998) ("Where the purchaser is found to have acted in good faith, the auction price suffices to demonstrate that the purchaser 'paid value' for the assets."). Plaintiff failed to present any evidence to contradict this factual finding.

Unable to contradict the Bankruptcy Court's finding, plaintiff has challenged the purchase price in two different ways. First, she argues that "no cash passed between Old GM and New GM at the time of the Bankruptcy Sale." (Pl. Br. at 9.) This argument ignores the express terms of the Sale Order, reflecting the nearly $50 billion credit bid by the U.S. and Canadian governments from secured loans provided to Old GM (not to mention the assumption of certain debts and liabilities and other consideration). *Sale Decision*, 407 B.R. at 494.[14]

---

liquidation sale that would have produced substantially less in proceeds than the amount of its debt. Nothing in the evidence suggests that sale of the assets as a going concern to an unrelated party would have produced anything in excess of the amount of the secured debt. In short, Acme Security's acquisition of the assets *did not cost CLN a single penny*. In this situation, imposition of successor liability on Acme Security as a 'mere continuation' of ALK would not serve the purpose of that equitable doctrine, which is to protect creditors from having assets of a debtor entity put beyond their reach through manipulation of corporate forms..") (emphasis added).

[13]   As explained below, plaintiff's two arguments concerning the purchase price are both red herrings.

[14]   Although plaintiff claims that no cash was provided at the time of the transaction, the United States provided $33 billion in debtor-in-possession financing after the commencement of Old GM's bankruptcy case on June 1, 2009. The debtor in possession financing was part of New GM's credit bid. The Bankruptcy Court authorized Old GM to access $15 billion from the DIP Facility on June 2, 2009; access to the balance of the DIP Facility was authorized on June 25, 2009. (SUF ¶ 13.)

Plaintiff suggests that credit bids should be treated as invalid or lesser consideration.  (Pl. Br. 9.)
The U.S. Supreme Court has rejected that position, upholding "bid[ding] for the property using
the debt [the purchaser] is owed to offset the purchase price."  *Radlax Gateway v. Amalgamated
Bank*, 132 S.Ct. 2065, 2069, n.3 (2012) ("That right is particularly important for the Federal
Government, which is frequently a secured creditor in a bankruptcy and often lacks
appropriations authority to throw good money after bad in a cash-only bankruptcy auction."); *In
re Spillman Development Group, Ltd.*, 401 B.R. 240, 253 (Bankr. W.D. Tx. 2009) ("Fire Eagle's
purchase of the SDG assets by credit bid of $9.3 million is the equivalent of a cash purchase.").
To the extent plaintiff suggests that Kentucky law holds otherwise (it does not), it would be
preempted by federal law, which expressly authorizes credit bids in 363 Sales.  *See* 11 U.S.C. §
363(k) ("[S]uch holder may offset such claim against the purchase price of such property.").  In
any event, plaintiff offers no admissible evidence (much less undisputed admissible evidence
sufficient to prevail on summary judgment) for any argument that the credit bid could have been
replaced with something else that constituted greater consideration to the Old GM bankruptcy
estate, much less that the Sale made creditors worse off.

Plaintiff's second and only other argument relating to purchase price unfairness is that
"the majority of consideration that passed from New GM to Old GM in the Bankruptcy Sale was
merely stock."  (Pl. Br. at 10.)  But Judge Gerber held that "Old GM is to receive consideration
estimated to be worth approximately $45 billion, *plus* the value of equity interests that it will
receive in New GM."  *Sale Decision*, 407 B.R. at 482 (emphasis added).

The Bankruptcy Court's finding that creditors would have no recovery without the Sale is
dispositive of plaintiff's "mere continuation" claim under Delaware, New York, and Kentucky

law.[15]  Citing *Am. Ry. Express Co.*, 228 S.W. at 437, plaintiff argues that under Kentucky law

"successor liability may attach even where the transaction is in good faith and at arms' length,"

and regardless of whether "adequate consideration" was paid.  (Pl. Br. at 6.)  Not so.  In that

case, the Kentucky Court of Appeals (then the equivalent of Kentucky's Supreme Court) stated:

> The thing which we pronounce unconscionable is an arrangement by which one corporation takes from another all its property, *deprives it of the means of paying its debts*, enables it to dissolve its corporate existence and *place itself practically beyond the reach of creditors*, and this without assuming its liabilities. . . .
>
> We have merely extended this wholesome principle *for the better protection of creditors*, and this *without prejudice to the rights of selling or purchasing corporations that desire to do what is right by the creditors of the selling corporation.*[16]

*Id.* at 440 (internal quotations omitted) (emphasis added).  Here, the 363 Sale did not "deprive"

Old GM of the "means of paying its debts," nor did it "place" Old GM's assets "beyond the

reach of creditors."  *Id*.  To the contrary, the one alternative that would *not* have been "right by

the creditors of the selling corporation" would be *not* engaging in the Sale, which would have led

to creditors recovering nothing.  (SUF ¶ 7.)  Importantly, the *American Railway* court also stated

that successor liability applies where "both the buyer *and the seller refuse* to pay the debts of the

---

[15]    *See Brunner v. Estate of Lax*, 47 Misc.3d 1206(A), 2015 WL 1509815, *8 (N.Y. Sup. Ct. 2015) (mere continuation exception is grounded in the "basic concept" that "the transaction which purported to transfer a business from one entity to another is a sham and that, here, such transaction occurred as a means to evade liability"); *Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at *9 (Del. 1988); *Am. Ry. Express Co.*, 228 S.W. at 440-41; *Dixstar*, 2004 WL 3362501, at *5, *9 ("purpose of the mere continuation exception is to prevent companies from changing their appearance in form, but not in substance, to avoid fulfilling obligations to creditors"; "plaintiffs do not show that the new companies were formed for the sole purpose of taking over GenTec's business and avoiding debt obligations to Plaintiffs") (*citing Am. Ry. Express Co.*).

[16]    The *Am. Ry.* court stated: "All the cases also hold that where there is a merger, or consolidation, or reincorporation, or reorganization, and a continuance of the business under a new name, the corporation taking over the assets and property of the corporation *extinguished for all practical purposes* will be liable for its debts, and, as before said, in virtually all this class of cases the corporation that went out of business was paid for its property in stock of the new corporation. . . . When the American bought the Adams, that company had for years been engaged in an extensive business throughout the United States, and the American must have known that it had liabilities; but *no provision whatever was made for their payment. . . .*'"  228 S.W. at 441 (emphasis added).  Here, Old GM was not "extinguished," and "provision" was made through the Bankruptcy Court for the payment of creditors by Old GM and, subsequently the GUC Trust, as discussed *supra*.

seller." *Id.* at 441 (emphasis added).  But Old GM and the GUC Trust resolved more than $32

billion in unsecured creditor claims alone.  (SUF ¶ 24.).

Similarly, in *Smith v. Henry*, the Kentucky Court of Appeals held:

So far as appears, the purchase by the new company *was in good faith and with no purpose to defeat creditors.* … The case falls within the rule laid down in *American Railway Express Co. v. Commonwealth*, 190 Ky. 636, 228 S. W. 433, 30 A. L. R. 543, where the court, after stating that the new corporation is liable where there has been a merger or consolidation of the two corporations, said this:

"It is equally well settled that when the sale is a bona fide transaction, and the selling corporation receives money to pay its debts, or property that may be subjected to the payment of its debts and liabilities equal to the fair value of the property conveyed by it, the purchasing corporation will not, in the absence of a contract obligation or actual fraud of some substantial character be held responsible for the debts or liabilities of the selling corporation."

*Id.* at 291.

Plaintiff mischaracterizes *Payne-Baber Coal Co. v. Butler*, 123 S.W.2d 273, 275 (Ky. Ct.

App. 1938), as "affirming lower court's finding that mere succession exception applied

notwithstanding 'evidence to support appellant's contention that it acted in good faith . . . and

paid just and adequate consideration." (Pl. Br. at 6.)  The court affirmed the trial court's finding

that the transaction was *not* in good faith, notwithstanding "some evidence" to the contrary:

While there is *some evidence to support appellant's contention that it acted in good faith in the purchase of the assets of the old corporation and paid a just and adequate consideration therefor*, yet the fact that there was only a slight change in the corporation name and the same business was conducted by the same officers and personnel in the same offices *and many other proven facts and circumstances so preponderate to sustain the chancellor in finding otherwise*,[17] as would forbid interference upon the part of the appellate court.

---

[17]    In other words, although there was some evidence of a transaction conducted in good faith and with adequate consideration, there was sufficient evidence to sustain the lower court's finding "otherwise" as to these issues.  Like plaintiff, *In re Wright Enters.*, 77 Fed. Appx. 356, 358 (6th Cir. 2003), and *Parker v. Henry A. Petter Supply Co.*, 165 S.W.3d 474 (Ky. Ct. App. 2005), misread *Payne* as "uph[olding] the decision of the lower court, which held that despite some evidence showing that the transaction between the purchasing and selling corporations was in good faith and for adequate consideration, there was still such continuity between the two corporations as to conclude that the purchasing corporation was a mere continuation of the selling corporation and that the transaction was not bona fide." *Wright*, 77 Fed. Appx. at 368; *see also Parker*, 165 S.W.3d at 479.  Neither *Wright* nor *Parker* cite *Smith v. Henry*, which remains good law in Kentucky.  *Parker* is a Court of Appeals decision.  In 1975, the

123 S.W.2d at 275 (emphasis added). Thus, *Payne-Baber* did not overrule *Smith* or *Am. Ry.*

Finally, the Kentucky Supreme Court in *Pearson v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 51 (Ky. 2002), affirmed that "the sale [being] essentially a bankruptcy sale" weighed against a finding of mere continuation. *Id.* at 51. Because a 363 Sale is extensively examined, overseen, and approved by a bankruptcy court judge, it is hardly surprising plaintiff cites no cases finding "mere continuation" arising from a court-approved 363 Sale where creditors would otherwise have recovered nothing; any such claim is "quite obvious[ly]"[18] barred.

### B.   There Was No Shareholder Continuity Between Old GM And New GM.

Under Delaware and New York law, continuity of shareholders is an indispensable element of the mere continuation exception.[19]   In Kentucky, similarity of management and ownership is "a key factor." *See Dixstar v. Gentec Equip.*, 2004 WL 3362501 at *5 (W.D. Ky. Feb. 11, 2004).

Plaintiff cannot show **any** continuity of shareholders from Old GM to New GM, let alone substantial continuity. Old GM had thousands of shareholders; New GM had only four: (1) the U.S. Treasury; (2) the Canadian government; (3) New Employees' Beneficiary Association Trust; and (4) the Old GM Bankruptcy Estate. *See Sale Decision*, 407 B.R. at 483. None of Old GM's shareholders were shareholders of New GM at the time of the sale. Plaintiff incorrectly argues that there was a "continuity of shareholders" due to Old GM's initial 10% stake and Old

---

Kentucky Supreme Court replaced the Kentucky Court of Appeals as the highest court in Kentucky. Thus, *Parker* did not overrule *Smith v. Henry* or its predecessor, *American Railway Express*. In any event, *Parker's* statements regarding *Payne* are dicta, because the *Parker* court found no mere continuation. *Parker*, 165 S.W.3d at 479-80.

[18]   *In re Acme Sec., Inc.*, 484 B.R. 475, 492 (Bankr. N.D. Ga. 2012).

[19]   *See Graham v. James*, 144 F.3d 229, 240 (2d Cir. 1998); *Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 313 (S.D.N.Y. 2014); *see also New York v. National Service Industries, Inc.*, 460 F.3d 201, 214 (2d Cir. 2006) (Sotomayor, J.) (de facto merger exception requires continuity of ownership under New York law); *Douglas v. Stamco*, 363 F. App'x 100, 102 (2d Cir. 2010) (under New York law, de facto merger and mere continuation exception "are often regarded as so similar as to be considered a single exception"); *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 n.3 (2d Cir. 2003) (same); *Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at *9 (Del. 1988) (Delaware requirement of "same legal person").

GM's ability to purchase additional shares. (Pl. Br. at 7-8.) But the value from the New GM stock and warrants held by the Old GM estate were paid to creditors of Old GM, not to Old GM shareholders. (SUF ¶¶ 21, 24.) Old GM shares were "cancelled" as part of the bankruptcy plan in 2011. (SUF ¶ 39.)

Courts weigh continuity of shareholders more heavily than continuity of the Board of Directors or management. *See* fn. 20. Why? Shareholders have authority to select the board, which in turn has the authority to select executives. (SUF ¶¶ 33, 36.) If the same shareholder owns two companies, there is a greater risk of one company providing assets without consideration to the other, at creditors' expense. The lack of continuity among shareholders evinces an arms' length transaction.

In any event, plaintiff admits that the majority of New GM's original board members were not members of Old GM's board. (*See* Pl. SOMF ¶ 16.) Of the 13 board members, 10 were selected by the U.S., one by Canada, one by the employees' trust, and none by the Old GM bankruptcy estate. (SUF ¶ 33.) Moreover, any continuity of officers[20] and employees from Old GM to New GM weighs against a "mere continuation" finding because "[t]he Purchaser needs a properly motivated workforce to enable New GM to succeed," *Sales Decision*, 407 B.R. at 512, thus enhancing the value to a potential purchaser and creditor recoveries. There is no evidence that any continuity of employees diminished creditor recoveries. *See Am. Ry. Express Co.*, 228 S.W. at 440 (successor liability is "without prejudice to the rights of selling or purchasing corporations that desire to do what is right by the creditors of the selling corporation").

**C.  Plaintiff's Mere Continuation Claim Also Fails Because Old GM Survived The Bankruptcy Sale Until It Was Succeeded By The GUC Trust, and Both Entities Resolved Creditor Claims.**

---

[20]  Of the 11 executive officers at New GM's inception, only six retained their officer positions from Old GM. (*See* SUF ¶ 34.)

Plaintiff's mere continuation claim also fails under Delaware, New York and Kentucky law because Old GM survived the 363 Sale in 2009 until it dissolved in December 2011. Plaintiff admits that "Old GM remained in existence for 18 months after the Bankruptcy Sale solely to arrange its own liquidation."[21]   (4th Am. Compl. ¶ 25(c).)   But "[i]f the predecessor corporation continues to exist after the transaction, in however gossamer a form, the mere continuation exception is not applicable."   *Diaz v. S. Bend Lathe Inc.*, 707 F. Supp. 97, 100 (E.D.N.Y. 1989).[22]   Old GM was far from "gossamer"; it owned over $10 billion in assets and continued to resolve creditor claims.   *In re Motors Liquidation Co.*, 2016 WL 3766237, at *4 (2d Cir. July 13, 2016).   Moreover, when Old GM dissolved in December 2011, it was succeeded not by New GM but by the GUC Trust.   (SUF ¶¶ 22-23, 37-38.)   Old GM's existence until December 2011 and succession by the GUC Trust (not New GM) independently precludes plaintiff's "mere continuation" claim, particularly given that Old GM and its successor continued to hold assets and resolve creditor claims.[23]   *See Am. Ry. Express Co.*, 228 S.W. at 437 (successor liability applies where both the buyer and the seller refuse to pay the seller's debts).

### D.   Plaintiff Cannot Prove That New GM Was A "New Hat" For Old GM

Although not mentioned as a "factor" in plaintiff's brief, the mere continuation exception applies only where "a corporation goes through a mere change in form without a significant

---

[21]   Old GM stayed in existence for almost 30 months, not 18 months.

[22]   S*ee also Douglas v Stamco*, 363 F. App'x 100 (2d Cir.2010) (mere continuation doctrine does not apply if the seller survived the asset sale as a bankrupt entity); *Buja v. KCI Konecranes Intern. Plc.*, 12 Misc.3d 859, 863-64, 815 N.Y.S.2d 412 (N.Y. Sup. Ct. 2006) ("where a company survives the asset transfer as a distinct corporation, *even if such corporation is in bankruptcy,* the purchaser 'cannot be cast as its mere continuation'") (emphasis added); *Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at *9 (Del. 1988) ("same legal person").

[23]   Plaintiff cites *Bank of Am. v. Corporex Cos., LLC*, 99 F. Supp. 3d 708, 716 (E.D. Ky. 2015), which stated that "defendants do not identify a Kentucky or Sixth Circuit case holding that the insolvency or dissolution of the predecessor corporation is a *sine qua non* of successor liability."   But plaintiff likewise fails to cite a Kentucky case imposing successor liability on a defendant (New GM) even though another entity (here, the GUC Trust) became the undisputed successor of the predecessor company (Old GM) when it dissolved in December 2011, and continued to resolve creditor claims.   (SUF ¶¶ 24, 37-38, .)

Case 1:14-mc-02543-JMF    Document 335    Filed 09/01/16    Page 28 of 32

change in substance," 15 W. Fletcher, Cyc. Corp. § 7124.10, such that the "purchasing

corporation represent[s] merely a "new hat" for the same legal entity.[24] Here, New GM was not

merely a "new hat" for Old GM:

- New GM was held to be the good faith purchaser under Section 363(m) of the Bankruptcy Code. (SUF ¶ 12.) That designation, by definition, means that New GM did not represent a new hat for an Old GM entity.

- Plaintiff contends that "[a]fter the Asset Sale, New GM ran its business out of the same executive offices as Old GM, continued producing Old GM's core automobile brands, maintained relationships with the majority of Old GM's dealer franchises and suppliers, and continued to utilize hundreds of Old GM facilities to run essentially the same automobile business." (Pl. Br. at 8)  As an initial matter, doing any or all of these things would not trigger application of the mere continuation doctrine.  *See Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at *1-*9 (Del. 1988) (rejecting plaintiff's argument that mere continuation doctrine applied to purchase by "Tupp Signs, Inc." of "Tupp Signs" where "defendants continued to hold themselves out as being the same company which had manufactured signs for 60 years"; "[t]he test is not the continuation of the business operation"); *Semenetz v. Sherling & Walden, Inc.*, 851 N.E.2d 1170, 1172 (N.Y. Ct. App. 2006) (dismissing successor liability claim where purchaser manufactured sawmills at "same plant in Alabama" as seller, and advertising described purchaser as "formerly S & W Edger Works," and stated purchaser "opened [its] doors for business in [the year seller was founded]"); *Am. Ry. Express Co.*, 228 S.W. at 440 (successor liability is "without prejudice to the rights of selling or purchasing corporations that desire to do what is right by the creditors of the selling corporation").

- In any event, the vehicle at issue in this case was a 2003 Saturn Ion and that line was shut down in 2007, years before the 363 Sale.  (SUF ¶ 42.)

- Saturn, itself, was a separate corporation, and a subsidiary of Old GM.  (SUF ¶ 8.)  Saturn had its own plant, its own employees, and a separate dealer network.  (*Id*.)  Even before the sale of assets to New GM, Old GM was looking to exit the Saturn brand (either by sale or simply to shut it down).  (SUF ¶¶ 43-44.)

- When the effort to sell the brand to Penske Automotive failed in September 2009, New GM wound down Saturn.  (SUF ¶¶ 44-46.)

- Other significant assets and liabilities were excluded from the sale to New GM and retained by Old GM.[25]    (SUF ¶¶ 16-17.)

---

[24]    *See Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at 9 (Del. Super. 1988) ("[I]t must be the same legal person, having a continued existence under a new name.  The test is not the continuation of the business operation; rather, it is the continuation of the corporate entity."); *Dixstar*, 2004 WL 3362501 at *5.

Given these substantial differences between Old GM and New GM (including the Saturn Ion product line at issue), New GM is not a "new hat" for Old GM.

### E. Plaintiff's Three Other "Mere Continuation" Factors—Intent, Payment Of Debts, and Public Statements—Weigh Against Successor Liability.

The remaining three "factors" that plaintiff claims are applicable under Kentucky law all weigh against the imposition of successor liability.

First, plaintiff incorrectly asserts that New GM's "intent and purpose when the new company was formed" supports successor liability, because New GM "organized for the sole purpose of taking over the property." (Pl. Br. 11). This phrase comes from *Am. Ry.*, 238 S.W.2d at 441, but the court there imposed successor liability because "no provision whatever" had been made for the payment of creditors—which is not the case here as discussed *supra*.

Second, plaintiff mistakenly claims that if "the successor company paid any outstanding debts on behalf of the previous company," (Pl. Br. at 11), then this factor weighs in favor of successor liability. Plaintiff has it backwards. Successor liability protects creditors from situations where a seller transfers its assets "*without* any attempt to pay [the seller's] debt." *Am. Ry. Express Co.*, 238 S.W.2d at 438 (emphasis added).

Third, plaintiff claims that "New GM held itself out to the public as a continuation of Old GM." (4th Am. Compl. ¶ 25(e).) To the contrary, in its public filings, New GM held itself out as a "new company" distinct from Old GM. For example, New GM's 10-K for 2009 states:

> Through our purchase of substantially all of the assets and assumption of certain liabilities of Old GM in connection with the 363 Sale, we have launched a new company with a strong balance sheet, a competitive cost structure, and a strong cash position, which we believe will enable us to compete more effectively with our U.S. and foreign-based competitors in the U.S. and to continue our strong presence in growing global markets. In particular, we acquired Old GM's

---

25   Section 2.2(b) of the Sale Agreement lists 16 categories of assets retained by Old GM. Section 2.3(b) provides a non-exhaustive list of 16 categories of liabilities New GM did not agree to assume in connection with the Sale. (SUF ¶ 16.)

strongest operations and we believe we will have a competitive operating cost structure, partly as a result of recent agreements with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and Canadian Auto Workers Union (CAW). In addition the formation of General Motors Company comes with a renewed vision to design, build and sell the world's best vehicles. In order to implement this renewed vision, a majority of our Board of Directors is comprised of directors that did not serve on Old GM's Board of Directors, and we have recently appointed new executive leadership, including our CEO and CFO. We have also recently installed a smaller executive committee, which meets more frequently than prior leadership committees, resulting in faster decision making and increased accountability.

(SUF ¶ 35.) Finally, however, there is no evidence that any of the statements cited by plaintiff diminished Old GM creditor recoveries from what they would have been without the Sale. *See Am. Ry. Express Co.*, 228 S.W. at 440.[26]

## CONCLUSION

Far from demonstrating that there is no genuine issue of material fact preventing the Court from granting her motion, plaintiff fails to point to any admissible evidence supporting her mere continuation claim. Plaintiff's motion should be denied.[27]

---

[26] Plaintiff's motion does not seek summary judgment on the issue of punitive damages. But even if plaintiff could otherwise prove successor liability (and she cannot), she cannot recover punitive damages from New GM on a successor liability theory. Plaintiff's successor liability claims against New GM are wholly derivative of any claims that she may have against Old GM as the seller, and any measure of successor liability damages is based upon the liability of Old GM. But plaintiff could not have recovered punitive damages against Old GM: "[I]n the claim process, you don't get punitive damages." *See* Hr'g Tr. 89:11-17, Feb. 18, 2015. The Bankruptcy Court held that "[s]ince punitive damages punish past conduct (which, for Liabilities to be assumed, would by definition have been Old GM's, not New GM's), and deter future wrongdoing (which could not occur in the case of a liquidating Old GM), imposing punitives for Old GM conduct would not be consistent with punitive damages' purposes; claims for punitive damages if asserted against Old GM would have been at least subordinated, if not disallowed, as they would only penalize innocent creditors (and, in either event, out of the money, given Old GM's deep insolvency)." *See In re Motors Liquidation Co.*, 541 B.R. 104, 120, 2015 WL 6876114 (S.D.N.Y. 2015) Because plaintiff could not recover punitive damages against Old GM, plaintiff cannot recover punitive damages from New GM.

[27] New GM has also sought a status conference with the Bankruptcy Court and will seek a schedule to resolve successor liability claims arising from the Sale Agreement.

Dated:  September 1, 2016

Respectfully submitted,

*/s/ Richard C. Godfrey, P.C.*

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654-3406
Phone:  312-862-2000
Fax: 312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 1, 2016, I electronically filed the foregoing Brief using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

/s/ *Andrew B. Bloomer, P.C.*

Andrew B. Bloomer, P.C.