# Exhibit  A

```
      G97YGMLC
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ----------------------------x
 2
 3    In re GENERAL MOTORS LLC
 3    IGNITION SWITCH LITIGATION              14 MD 2543 (JMF)
 4
 4    ----------------------------x
 5
 5
 6                                            New York, N.Y.
 6                                            September 7, 2016
 7                                            9:40 a.m.
 7
 8    Before:
 9                       HON. JESSE M. FURMAN,
10                                            District Judge
10
11
11                            APPEARANCES
12
12    HAGENS BERMAN SOBOL SHAPIRO LLP
13         Co-Lead Plaintiff Counsel
13    BY:  STEVE W. BERMAN
14         -and-
14    LIEFF CABRASER HEIMANN & BERNSTEIN LLP
15    BY:  ELIZABETH J. CABRASER
15         -and-
16    HILLIARD MUNOZ GONZALEZ LLP
16    BY:  ROBERT C. HILLIARD
17
17    KIRKLAND & ELLIS LLP
18         Attorneys for Defendant
18    BY:  ANDREW B. BLOOMER
19         RICHARD C. GODFREY
19
20    APPEARING TELEPHONICALLY:  DANIEL DeFEO
21
22
23
24
25
```

G97YGMLC

```
 1                  (Case called)
 2                  THE COURT:  Good morning to everyone.  Our audience
 3      seems to be thinning.  I don't know what that means.  In any
 4      event, hopefully it's a good thing.
 5                  We are operational on Court Call.  Just a reminder, as
 6      always, to speak, loudly, clearly into the microphones.  I hope
 7      everybody's summers were enjoyable, even if you were all
 8      working reasonably hard in preparation for the trial that looks
 9      like it's not happening, that you were able to get should
10      enjoyment and time in for you and your families.
11                  Per my practice, I'm going to go through the agenda.
12      I do have two preliminary matters.  One is to just note I know
13      some of you have met either virtually or in person my new law
14      clerk, Nishi Kumar, who is helping me in this litigation.
15                  I want to make sure that if you haven't yet met her,
16      that you take a moment after this proceeding to just introduce
17      yourself.  Hopefully things will continue to run as smoothly as
18      they have.  I'm sure they will.
19                  Second, I was hoping to get an update from you on the
20      settlements.  I checked the docket shortly ago and did not see
21      any stipulations of dismissal or settlement and wanted to see
22      where that stood.
23                  MR. HILLIARD:  Judge, Bob Hilliard.  We weren't able
24      to get them filed by 9:30, but I will tell the Court they will
25      be filed before the end of business today.  I spoke with both
```

G97YGMLC
 1  my team and Mr. Godfrey before the hearing this morning, and he
 2  concurs.  So the Court can expect filings before the end of
 3  business today.
 4          THE COURT:  All right.  I will look for that and sign
 5  them when I see them.
 6          Getting to the agenda, first on the bankruptcy
 7  proceedings, it doesn't seem to me that there's much, if
 8  anything, to discuss there.  Obviously, the successor liability
 9  issues with respect to Norville are now moot, and I understand
10  that you've already been in touch with Judge Glenn to alert him
11  to that and indicate that that issue can be decided on a
12  less-expedited schedule, if you will.
13          So I'm assuming that there's nothing for us to
14  discuss.  Obviously, you should continue to keep me apprised of
15  any material developments.  Is there anything that I'm missing
16  or anything we should be discussing?  All right.  Good.
17          Next is coordination with related actions.  I got your
18  most recent update of yesterday apprising me of the latest
19  development in the St. Louis action.  The first question is:
20  Are there any updates beyond that?
21          MR. GODFREY:  Rick Godfrey, your Honor.  I was hoping
22  that we would know whether or not we would need to take action
23  in this Court by today because, as the original schedule had
24  been set in St. Louis, on the 31st of August, there was to be
25  simultaneous briefings before the special master, Norton.

G97YGMLC

1          We filed -- that is, New GM filed -- its brief at the
2    time we were supposed to.  The plaintiffs did not.  On Friday,
3    the 2nd, we received an email that the plaintiffs wanted to
4    file instead today and that the request would be granted unless
5    we objected.
6          We did not object, but we are not in a position to
7    know why it is they think, having consented to this Court's
8    jurisdiction and having consented to order number 10, why it is
9    they think they should be allowed to proceed to collaterally
10   attack this Court's order in the St. Louis court.
11         We attached the transcript to the hearing which makes
12   for interesting read about how they view this Court, that is,
13   "they," the plaintiffs' lawyers.  But I'm not in a position to
14   tell this Court what it is they're going to say or how we're
15   going to proceed.
16         I think there is a distinct possibility that we're
17   going to be filing motions to enforce against the lawyers here,
18   but t I don't know that.  We have tried to work this out
19   unsuccessfully.  This is the first time we've been unable to
20   work it out.
21         I think if your Honor has seen the transcript or seen
22   what they told Special Master Norton, that they don't feel
23   themselves bound in any way, shape, or form by this Court's
24   orders at all.
25              They signed Exhibit A consenting to this Court's

G97YGMLC

1  jurisdiction.  The order 10's terms are plain and clear.  That
2  order was also entered in the St. Louis court by the St. Louis
3  judge.  So that's not necessary.
4         So we're not even under the all-writs act here.  We're
5  under a simple procedure where the parties got the benefit of
6  this Court's order, agreed to be bound by it, submitted to this
7  Court's jurisdiction, and now take the position that they are
8  not and they can collaterally attack this Court's order in
9  another court.  We don't think that's proper.
10        We've taken that position with the special master that
11 that's not proper.  We have also, out of respect to the
12 St. Louis court, because we believe it's appropriate, set forth
13 our position on the merits in that court, both under Missouri
14 law as well as under this Court's order.
15        Fundamentally, our threshold issue is this should be
16 decided one time.  It was decided by this Court.  These lawyers
17 consented to this Court's jurisdiction.  They are bound by this
18 Court's order, and they do not have the right to collaterally
19 attack in another court.
20        The Potts law firm -- those lawyers sent a letter on
21 September 2 which your Honor has a copy of where they made
22 clear that they want -- my words, not theirs -- but no part of
23 the St. Louis proceedings.  What they've said is "My clients do
24 not want to be involved in appellate our other review of a
25 motion to compel that they did not bring."

G97YGMLC

1      So that law firm has made clear that they are not part
2 of this in St. Louis.  I think it is unfortunate, but we are in
3 a position now where until we see what they have to say and
4 what they have to file, I can't tell the Court what our next
5 step will be, but I expect it will be motion practice here, but
6 I don't know that.

7      Hope springs eternal.  In 2 1/2 years, as your Honor
8 knows, we've been able to work out every single issue with
9 every other counsel.  Thus far, I'm not admitted in that case,
10 but my colleagues who are have not been able to work out a
11 resolution that will avoid this potential conflict.  So we
12 apologize for our inability to do that, but we certainly have
13 tried.

14      THE COURT:  No apology necessary.  Suffice it to say,
15 it is not be ripe, and having heard only one side of the story,
16 if you will, I'm not going to rule at this time.

17      I will say that upon first blush or a quick look, I'm
18 inclined to agree with you that by virtue of signing Exhibit A
19 to order number 10, that the lawyers did consent to this
20 Court's jurisdiction for purposes of enforcing
21 discovery-related rulings.

22      In that regard, I would think that my ruling on this
23 issue is presumptively binding on them.  Maybe there are
24 complications I'm not thinking of with respect to parties who
25 aren't before me and federal jurisdiction issues.  I don't

G97YGMLC
1  know.  Certainly on first blush, I think you have a pretty
2  reasonable argument on that front.
3           Now, again, there may be more to it or another side to
4  it.  In that regard, I will obviously and certainly reserve
5  judgment.  In addition, as you know, my strong preference is
6  indeed for you to work these things out with counsel or with
7  the presiding court and for me not to intervene at the first or
8  earliest opportunity, and I appreciate your efforts to do that.
9  You're certainly welcome to share what I just said with anyone
10 in those proceedings that you like.  But my hope is that this
11 issue can be resolved to everybody's satisfaction.
12          MR. GODFREY:  I appreciate very much your Honor's
13 comments.  Two quick points:  One is because of how we view
14 order 10 and what they signed, we view this not as a state
15 court versus federal court conflict.  We don't view it that
16 way.  We view it as lawyer-generated.
17          I don't blame Special Master Norton or the court in
18 St. Louis for any of this.  They're acting in terms of what
19 courts do.  A motion is filed, and they proceed in response to
20 a motion.
21          So this is a lawyer-driven issue.  It's not a
22 court-driven issue.  So nothing I say should be implied as any
23 criticism at all of the state court or Special Master Norton.
24 This is not of their doing.  They are no different than
25 your Honor.  If counsel files a motion, your Honor will
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

G97YGMLC
1  entertain it.  That's what they're doing.
2          Secondly, because there are two sides, I'd like to see
3  what they have to say.  I've read the transcript.  I've read
4  what they said so far.  So far, it does not address the
5  fundamental problems that we see.
6          But that's why I said, until they file their papers
7  and put in writing precisely why they think they're not
8  governed, etc., etc., which is teed up, I don't know for
9  certain how we'll proceed.  But I suspect, in light of what
10  they said in the transcript, if they continue that line, then
11  we're going to be back here in short order.
12          THE COURT:  Well, you know where I am and how to get
13  me.  Keep me apprised.  Obviously, if there's need for me, in
14  your view, to do anything, you should make any appropriate
15  application.
16          Any other related actions to update me about?  The
17  only other one referenced in not yesterday's letter but the
18  letter before that was the California action as to which the
19  dispute didn't seem ripe for me to involve myself at this point
20  either.
21          Is there anything else I ought to know?
22          MR. GODFREY:  That's the Mullens case, and it is still
23  not ripe.  I believe we're making some progress there.  The
24  team that's in charge of that case tells me they're making
25  progress.

G97YGMLC

 1          The message I was asked to deliver to the Court this
 2   morning was we are hopeful we can resolve that as we've been
 3   able to successfully resolve other things, and they're making
 4   efforts.  So it is not ripe for the Court now, and we hope it
 5   will never become ripe.  We are trying to resolve it.
 6          THE COURT:  Good.  Is there anything else anyone wants
 7   to share on this front?
 8          All right.  Next is the prospective fourth amended
 9   consolidated complaint.  I'm not sure there's anything to
10   discuss on that front.
11          MR. BERMAN:  Steve Berman, your Honor.
12          THE COURT:  It looks like there may be.
13          MR. BERMAN:  I hope this is a very minor point.  When
14   I set the date, September 13, I was really counting on working
15   on it this weekend pretty much full time.  I forgot that I have
16   a Bar Mitzvah that I need to attend to.  So New GM has
17   graciously agreed to extend the date to the 15th, if that's
18   okay with the Court.
19          THE COURT:  Sure.  Absolutely.  I don't know if it's a
20   Bar Mitzvah related to you, but mazel tov to whoever.
21          MR. BERMAN:  I'll pass that on.
22          THE COURT:  Very good.
23          Does that require or call for -- I assume that we can
24   leave the October 6 date for the parties' filings about the
25   implications of that and so forth.  Very good.

G97YGMLC

         1      Next is the Boyd plaintiffs' motion to dismiss without
 2  prejudice.  My understanding is that counsel for Boyd is on
 3  Court Call.  I did grant permission for counsel to have a
 4  speaking line.
 5           In the future, I want to note that any counsel who
 6  wants to participate in that fashion or really counsel other
 7  than lead counsel who wants to participate at all needs to seek
 8  advance permission from me by filing a letter motion rather
 9  than calling chambers.  But, in any event, I did grant
10  permission in this instance.
11           Is counsel on the line?  Can you identify yourself.
12           MR. DeFEO:  Yes.  Good morning, your Honor.  This is
13  Daniel T. DeFeo, and I apologize for the error in the
14  procedure.
15           THE COURT:  No worries.  Thank you for joining us.  My
16  preliminary question is a semi-procedural one, which is in my
17  order directing New GM to file any opposition by yesterday at
18  2:00, I obviously didn't allow for a reply.
19           I'm open to the idea of giving you an opportunity to
20  reply if you think that that would be helpful or appropriate,
21  or you can reply orally at this time if that is sufficient.
22           What's your thought?
23           MR. DeFEO:  My thought, your Honor, is we could
24  probably do this orally.
25           THE COURT:  Let me tell you my thoughts, and then you

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

G97YGMLC
 1  can respond to those as much as you can.  New GM's arguments in
 2  part, because they're largely the same, which is to say that
 3  I'm inclined to agree with New GM that the motion should be
 4  denied and also for the reasons not just stated by New GM but
 5  by the Fifth Circuit in the FIMA Trailer litigation, which is
 6  at 628 F.3d 157, a 2010 decision, I think the case here for
 7  dismissal with prejudice is certainly weaker than it was in
 8  that case in the sense that discovery has only just started.
 9           There's only one defendant here.  So there are no
10  issues with respect to substituting defendants or identifying
11  bellwethers with respect to particular defendants.
12           I think it would be easier at this juncture to replace
13  the case with a new bellwether.  In that regard, the phase 2
14  bellwether order actually contemplates that possibility before
15  September 30, if I remember correctly.
16           Now, the bottom line in my view -- or my inclination
17  is at least that in litigation of this size and complexity, the
18  challenges of case management are especially acute, and I worry
19  that allowing dismissal without prejudice, which is to say
20  essentially allowing a plaintiff to withdraw his or her claim
21  upon being selected as a bellwether and forcing New GM to
22  select a new bellwether and then allowing that plaintiff to
23  re-file here or in another court, would essentially, in the
24  Fifth Circuit's words, allow the plaintiff to have his cake and
25  eat it too, and it would create the wrong incentives and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G97YGMLC
 1    essentially disrupt the orderly and efficient process that I
 2    set up in the bellwether plans.
 3            I'd ask you to respond to that and, in particular,
 4    also under the case law, I have pretty broad discretion to
 5    attach any conditions to a dismissal, up through and including
 6    dismissing with prejudice.
 7            I wonder if there are conditions short of dismissing
 8    with prejudice that might address those concerns but some sort
 9    of middle ground short of dismissing with prejudice.
10            If not, I guess my inclination is that you have a
11    choice to make, and that is to either to consent to dismissal
12    with prejudice, which is certainly I think an option, or to
13    proceed with trial.
14            In my view, for the reasons that are articulated,
15    namely, that the case would be expensive to try, that that's
16    true whether you try it here or in another forum and that when
17    you file a lawsuit, you have to be prepared, as the Fifth
18    Circuit said, to undergo the costs, psychological, economic,
19    and otherwise, that litigation entails and understand the
20    possibility that the case will proceed to trial.
21            Why don't you respond to all that, please.
22            MR. DeFEO:  Yes, sir.  First of all, your Honor, from
23    my view, there are two tracks this case has been moving on.  We
24    were contacted about trying to resolve this case with Ms. Wendy
25    Bloom at Kirkland & Ellis.

1      We provided information to her and articulated what we
2  have, which is a case with a subject vehicle that's part of
3  this litigation, the HHR.  It's a case that has truly an
4  impact, minor injuries.  But you have a total damage profile of
5  less than $10,000 for this case.
6      On GM's request, we've submitted that information to
7  them and have not heard back.  Then on July 29, we were
8  notified that this case has now been selected as a bellwether
9  case, and I can understand the procedure and the way in which
10  General Motors can do that.
11      However, again from an economic standpoint for this
12  one individual person's case, it's not a case that if tried,
13  does anything for Mr. Boyd at the end of the day because
14  clearly I think everyone would agree that the expense of
15  litigating this case as a bellwether would far and away exceed
16  the potential value of this case.
17      Now, in our motion for leave to dismiss without
18  prejudice, I contacted lead counsel, and we spoke.  I was
19  advised to move the Court to dismiss the case without prejudice
20  so as to preserve, at a minimum, his economic loss claim.  And
21  I believe, your Honor, that's kind of the thrust of the
22  dismissal without prejudice.
23      The invited settlement demand, which has been made to
24  General Motors, and, two, if there is going to be resolution at
25  some point from this litigation, I think it would make sense to

G97YGMLC

1 allow Mr. Boyd to have the opportunity to benefit from that.
2           Outrightly dismissing his case with prejudice, my
3 guess is General Motors would never respond to a settlement
4 demand.  Of course, it would also preclude him from any
5 economic loss award which may be forthcoming.
6           THE COURT:  Mr. DeFeo, unfortunately, you're cutting
7 out a little bit here and there.  I don't know if that's an
8 issue on your end or ours.  I don't know if you're on a
9 landline.  Hopefully you are.
10          MR. DeFEO:  I am.
11          THE COURT:  I certainly got the gist of your argument
12 and concerns.  I'm not sure we got every word or the court
13 reporter got every word, but I think we got the gist.
14          I don't know, Mr. Hilliard, Mr. Bloomer, or
15 Mr. Godfrey, if you want to respond.  My concern is certainly
16 the allowing for gamesmanship in a process that was elaborately
17 and carefully crafted to give each side some say in which cases
18 where appropriate to be tried and, in that regard, was leaning
19 in New GM's direction on this.
20          The only concern or question I have, in light of
21 Mr. DeFeo's remarks, is whether and to what extent this case is
22 representative.  I don't hear any dispute that it falls within
23 the category of cases that the bellwether process was -- the
24 pool that was to be selected from.
25          And I obviously indicate this file has to be prepared

G97YGMLC
 1   to go to trial.  That's sort of the way the process works.  It
 2   goes to trial, it settles, or it's dismissed.  Somebody can't
 3   sort of file and then choose to opt out and so forth.
 4            I guess a couple questions I have.  One is, Mr. DeFeo,
 5   let me go back to you first.  I didn't quite understand --
 6   maybe it was because you cut out -- if your concern is
 7   preserving the economic loss claim, in which case maybe it's
 8   just a question of clarifying if you would consent to dismissal
 9   with prejudice the personal injury claims and preserve the
10   economic loss claims, if New GM would consent to that, or if
11   you're trying to preserve all of it, which I understand New GM
12   has understandable concerns about.
13            Can you clarify that.
14            MR. DeFEO:  Sure, your Honor.  Obviously, I would
15   prefer to preserve all of it because he did have some medical
16   bills associated with this crash, and that's why we've made
17   that very modest demand to resolve his case.
18            If, however, the Court would be disinclined to do
19   that, then I would, as an alternative relief, at least like his
20   economic claim to be preserved.
21            THE COURT:  Mr. Bloomer?
22            MR. BLOOMER:  Yes.  Andrew Bloomer on behalf of New
23   GM.  On the issue of the economic loss claims, under your order
24   number 29, the Boyd plaintiffs' economic loss allegations were
25   dismiss the without prejudice.

G97YGMLC

1    So I think from GM's standpoint, that's what was done
2 with those claims.  They're preserved as part of the
3 consolidated complaint.  I think trying to preserve the entire
4 claim, including the personal injury component, does create the
5 kind of gaming of the system that your Honor has noted.
6    I think we would have no objection to preserving the
7 economic loss claims.  We think they already are preserved
8 under order 29 but not for the reason we've put in our paper
9 and your Honor has averted to, not the entire thing, which
10 could be re-filed here or elsewhere and litigated another day,
11 which would undermine the bellwether process that the Court has
12 established.
13    THE COURT:  Mr. Hilliard, is there anything you want
14 to say here?
15    MR. HILLIARD:  Judge, I tried to figure out where this
16 case was yesterday and this morning.  As best I could tell,
17 this was originally a state court case with less than $75,000
18 in controversy.  It was removed by GM and tagged along without
19 the remand being heard.  When I spoke to Mr. DeFeo this
20 morning, he pointed out he wasn't even sure that there is
21 federal jurisdiction because of the damages sought.
22    In regards to the other issue the Court brought up
23 about the gamesmanship, there is the intention, Judge, because
24 GM was actively trying to settle cases such as these for modest
25 amounts, and both sides -- I'm assuming Ms. Bloom and the

 1  gentleman on the phone -- were negotiating.
 2          Then that may have led somewhere, but when he was
 3  selected, there has been darkness on GM's part, and that's the
 4  frustration I hear in Mr. DeFeo's voice, and that is it seemed
 5  like the case was going to get resolved.  But once it was
 6  selected, it was now frozen in time and stuck for litigation.
 7          I reached out to Ms. Bloom this morning.  But
 8  unfortunately, she has a family member who is in the hospital.
 9  So I didn't bother her with this issue and don't have all of
10  the information.
11          I understand Mr. DeFeo's frustration, as well as the
12  Court's reluctance to allow his case to either continue along
13  the settlement track without being a bellwether case so that it
14  can't get resolved or be dismissed with prejudice, subject to
15  retaining the economic loss rights should there ever be a
16  settlement in that regard.
17          THE COURT:  A couple reactions.  First, I didn't hear
18  Mr. DeFeo saying that the case was on track for settlement.
19  What I heard him saying is that he submitted the information
20  that New GM asked for with respect to settlement and a demand
21  and then never heard from GM.  Perhaps Mr. Bloomer can shed
22  some light on that.  That's a slightly different situation.
23          The second is that I don't really view these as two
24  separate tracks per se.  As we've recently seen, just in the
25  last couple days, cases selected for bellwether can indeed also

G97YGMLC

1  settle.

2          In that regard, it's no different from any litigation,

3  which is to say that the presumption is that cases will go to

4  trial unless and until they are otherwise resolved, including

5  by settlement.

6          So, in that regard, I don't see it as cases being on

7  either a settlement track or a trial track.  It's really a

8  single track, and there are different ways off of it.  So

9  that's my comment on that issue.

10          The only other issue I do want Mr. Bloomer to address

11  is the jurisdictional issue that Mr. Hilliard raised because,

12  obviously, I don't have authority to exercise jurisdiction if

13  there's no subject matter jurisdiction here.

14          I don't know if that's an issue.  If there are

15  economic loss claims or claims under the Magnuson-Moss Act,

16  maybe there's just federal jurisdiction, plain and simple.

17          Can you respond to that.  It raised some red flags

18  with me.

19          MR. BLOOMER:  Understood, your Honor.  I think at the

20  time it was removed -- and I don't have the removal papers in

21  front of me, and it may well have been on the basis of

22  bankruptcy jurisdiction for removal -- and there are claims in

23  the complaint for exemplary damages, but I think that ship has

24  come and gone in the sense that removal isn't judged by the

25  face of the complaint, and federal jurisdiction attaches at the

G97YGMLC
 1 time it's removed.  Again, I don't have the papers in front of
 2 me.
 3           THE COURT:  That is true, but one can't waive the
 4 right to challenge the existence of federal jurisdiction.  You
 5 can waive the right to challenge a failure to adhere to the
 6 procedures of removal, for example.  But if there was no
 7 federal jurisdiction then, there's no federal jurisdiction now.
 8 That's not an issue that comes and goes.
 9           MR. BLOOMER:  I agree, your Honor, although I don't
10 understand the plaintiff's argument to be that there was no
11 federal jurisdiction at the time it was removed.
12           I think the parties would need to go back and look at
13 the basis for removal, and it may well have been at the time,
14 because this complaint was filed, I believe, in the fall of
15 2014, bankruptcy court jurisdiction as at least one of the
16 grounds.
17           Certainly, this was not something that was, to my
18 knowledge, challenged at the time.  We could look at it anew if
19 that's the Court's preference, but this is the first I'm
20 hearing this.
21           THE COURT:  I'm actually looking at the removal
22 petition to see.
23           So it was removed based on bankruptcy jurisdiction.
24 So it was removed based on bankruptcy jurisdiction.  I can make
25 that clear.

G97YGMLC
```
 1              Mr. DeFeo, do you want to respond?
 2              MR. DeFEO:  Your Honor, I'm not really prepared to
 3    address the bankruptcy issue, but I can tell the Court that the
 4    amount in controversy on this particular case is far under the
 5    federal jurisdiction of $75,000.
 6              THE COURT:  Right.  But I think the point is if it
 7    wasn't removed on the basis of diversity jurisdiction as to
 8    which there is an amount of controversy requirement, that may
 9    be irrelevant.
10              Here is my bottom line.  I'm going to deny the motion
11    to dismiss without prejudice, but I do want the parties to
12    confer immediately to figure out the best way forward.
13              As I understand it, the economic loss claims have been
14    dismissed without prejudice.  So, in that regard, the only
15    thing that remains at the moment are the personal injury
16    claims.
17              Perhaps Mr. Boyd would consent to dismiss those with
18    prejudice preserving his right to recover with respect to any
19    economic loss recovery, that is to say, the status quo on that
20    front.  Otherwise, the case will continue on the track with
21    respect to phase 2 of the bellwether plan.
22              My concern is that we figure this out sooner rather
23    than later because if the case is going away and I want to
24    include the jurisdictional issue within the scope of those
25    discussions, then I think it's incumbent upon us to figure that
```

G97YGMLC
 1  out sooner rather than later so that a substitute can be
 2  selected immediately and the process won't be put off track.
 3          Again, I'll deny the motion to dismiss without
 4  prejudice and leave you guys to discuss what to do with the
 5  situation more broadly and otherwise leave things where they
 6  are, and I'll trust that you'll advise me sooner rather than
 7  later if there's anything to be done.
 8          Thank you for joining us, Mr. DeFeo.
 9          MR. DeFEO:  Thank you, your Honor.
10          THE COURT:  The next item on the agenda is settlement.
11  On that front, I actually met with counsel for New GM and
12  Mr. Hilliard for lead counsel in chambers yesterday to sort of
13  take stock of where things stood more broadly with respect to
14  settlement in light of the settlements of the Cockram and
15  Norville matters.
16          I did have a court reporter present in light of some
17  of the issues that arose in this litigation earlier this year,
18  but it was a sealed proceeding because it involved the issues
19  of settlement and my role in facilitating settlements, which I
20  think is proper to be done under seal.
21          In any event, the main thing that I imparted to them,
22  which I conveyed in my endorsement of the agenda yesterday, was
23  that I wanted to discuss, in light of the settlements of the
24  Cockram and Norville matters in particular, what, if anything,
25  there is to be done to help everybody get more of these cases

G97YGMLC
 1  across the finish line.
 2          Obviously, we have a phase 2 bellwether plan in place,
 3  and that is proceeding as we know.  The phase 1 bellwether plan
 4  is basically over at this point, and my understanding is that
 5  both sides feel that, notwithstanding the fact that there were
 6  only 1 1/2 trials or so in this court, I think one in the state
 7  court, and some other dispositions reached in state court, that
 8  the process has actually been helpful in getting other cases to
 9  resolution.
10          Big picture, the question is what, if anything, can be
11  done to help you guys get more of the I'll call them core
12  ignition switch cases across the finish line, that is, cases
13  within the first bellwether phase, and if there is anything
14  that we should revisit or reconsider with respect to phase 2 or
15  other cases in the MDL.
16          Any thoughts?
17          MR. GODFREY:  Rick Godfrey, your Honor.  I think, in
18  response to the Court's question, we can say as follows:
19  First, order 108, whose due date is October 11, is very
20  important in terms of accelerated process of potential
21  resolution.
22          THE COURT:  That's the supplemental fact sheet type of
23  information?
24          MR. GODFREY:  Yes.
25          THE COURT:  Okay.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

G97YGMLC

 1            MR. GODFREY:  We have a team that's dedicated to that
 2    process.  In the event that we have issues -- and I suspect
 3    there will be issues that both sides share where we're getting
 4    insufficient information -- then we'll be back to the Court
 5    promptly.
 6            We have the status on the 13th.  So we may have a
 7    preliminary view by the 13th.  I don't know whether we will,
 8    but we hope to, because that is the single most important step
 9    that can be taken, which is it's hard to negotiate an
10    acceptable resolution without basic information.
11            If we get the basic information, then we will be able
12    to I am confident, as we were with Mr. Hilliard, as we've done
13    with several other groups of plaintiffs, work out acceptable
14    resolutions.  So that's the most important step in the near
15    term.
16            Second, with respect to economic loss -- Mr. Berman
17    and I have had a discussion.  Ms. Cabraser and I in the past
18    have had discussions -- we need to see the fourth amended
19    consolidated class action complaint.
20            We will look at that from two perspectives on our
21    side:  One is what, if anything, can be resolved and how do we
22    do that.  Mr. Berman has committed to working with us and at
23    least have a discussion in regard to that once it's file.  He's
24    true to his word.  I know he'll do that.
25            Secondly, we will work with the plaintiffs.  I think

G97YGMLC
 1   we have briefs actually due on the 6th of October, as I
 2   recall -- I think that's the date -- to outline for the Court
 3   procedures that would enable the parties to better understand
 4   the risk on both sides, either additional motion practice or
 5   discovery or whatever.  So it's a dual track that we'll be on
 6   all with the same goal but two ways to get there.
 7           Finally, third, as the Court knows, the bellwether
 8   phase 2 plan is important to implement and move forward on
 9   expeditiously because that will address the other part of the
10   docket that we haven't gotten to.
11           If you think of the docket in three buckets -- core
12   ignition switch, economic loss, and then the other cases -- I
13   think those are the three steps are what the Court can do now.
14           We will now more certainly by October 13.  Whether we
15   will know enough to suggest specific concrete additional steps
16   for assistance from the Court, I can't form a judgment on at
17   this time until we see what we get, but certainly we will know
18   by November.
19           THE COURT:  That sounds reasonable and right to me,
20   all of which is to say let's wait until after supplemental
21   discovery is provided, and then we can take stock of where
22   things are.
23           I think the things to think about are, again, as I
24   said, what, if anything, I can do or do differently to help get
25   more of these cases across the finish line.  In that regard, I
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

G97YGMLC

1  think it's helpful to think about the different buckets.

2         One question that arises in my mind is with respect to

3  the core ignition switch cases that were part of the phase 1

4  bellwether process, to the extent that that process has run its

5  course, one possibility -- I'm not sure we're there yet -- is

6  that the MDL has served its function, and those cases should be

7  remanded to their transfer courts and allowed to run their

8  course.

9         I'm inclined to think we're not there yet, and to the

10  extent that settlement is a real possibility and we're sort of

11  sorting cases that are being settled and not, that we should

12  allow some time for that process to run its course.

13         It's certainly among the things that I think everybody

14  should be thinking about and we should discuss in future status

15  conferences.  We'll table that for now, but obviously those are

16  things that you should be thinking about and talking to one

17  another about.

18         Is there anything anyone at the front table wants to

19  weigh in on this?

20         MR. HILLIARD:  Judge, just so the Court is aware, I

21  asked the office to run the numbers.  It appears there are 171

22  core case that's are inside the MDL and approximately 557 phase

23  2 cases for a total of 728.

24         As to the phase 2 cases, I spoke to Mr. Bloomer.  We

25  may be able to reach an agreement before the next status

G97YGMLC
1  conference, but there will be an issue on some additional GM
2  discovery on liability in regards to the phase 2 vehicles.  We
3  brought it up generally with the Court.  We're discussing it
4  with each other.
5          I would guess, given our track order, we won't need
6  the Court's assistance, but there may be a small chance that we
7  might need some intervention.
8          THE COURT:  Okay.  When you say 171 and 557 I think
9  were the numbers you gave me, that's cases as opposed to
10 plaintiffs?  Is that correct?  A lot of cases are filed with
11 multiple plaintiffs.
12         MR. HILLIARD:  It has to be cases, Judge.  I have one
13 of my staff member who is listening in right now, and she'll
14 probably send me -- yes.  Correct.  So that is correct.
15         THE COURT:  I think that's more cases than there are
16 in the MDL.  My recollection is that there were a few hundred
17 cases in the MDL but 3,000 plus plaintiffs.  So 728 is neither
18 of those numbers.  In any event, I don't think we need to nail
19 this down for now, but that's certainly helpful to know, and we
20 can leave it there for now.
21         The other thing to remind you all is obviously
22 Magistrate Judge Cott is ready, willing, and able to assist in
23 settlement discussions.  So, as things progress, I would
24 encourage you to avail yourselves of his able assistance.
25         Yes.  Mr. Berman.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

G97YGMLC

1   MR. BERMAN:  Yes, your Honor.  Ms. Cabraser and I
2   wanted to point out the following:  We pointed this out in our
3   letter at the last status conference, that you pretty much
4   finished phase 1, and it's time to get the spotlight turned to
5   the economic loss cases.
6       We're going to be addressing this in our October 6
7   submission, and maybe you'll agree or not.  You have sustained
8   claims that are going to go forward no matter what happens to
9   the fact.
10      We think it's time to begin thinking about test
11  classes and test economic loss cases.  So we think that needs
12  to happen to get the EL side of the case kind of moving
13  forward.
14      THE COURT:  Well, I would say I'm just as eager as you
15  to get that side of the house, if you will, moving.  You'll
16  have your submissions by October 6 to let me know your thoughts
17  on how best to proceed, and you should obviously be discussing
18  that with one another.  That will be a subject for a next
19  status conference.
20      MR. BERMAN:  There is one other item I just want to
21  alert you to.  We have advised all the lawyers who have filed
22  economic loss cases of the scope of the defects that we are
23  going to include in the fourth amended complaint.  So that
24  process is out there.
25      One of the things that we'll have to discuss and
                SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

G97YGMLC

1  you'll have to address is, planting the seed, what to do with
2  the defects that are not going to be asserted in the fourth
3  amended complaint but are here and have been in the MDL.
4          THE COURT:  Why don't you guys include that.  To the
5  extent that there is anything to discuss on that front, include
6  that within the scope of your discussions and submissions on
7  October 6.
8          Obviously, I've addressed those types of issues in the
9  past with respect to order I think 29 and order 50, if I
10  remember correctly, and the opinion I wrote explaining order
11  50.
12         I don't know to what extent those orders and what I've
13  already done on that front would cover the issues that you're
14  flagging here.  If you think that anything needs to be modified
15  or tweaked, you should obviously let me know.
16         Is there anything else on this front?  Very good.
17         Other issues that are not on the agenda and that I
18  didn't flag, first is the Pillars bankruptcy appeal.  I didn't
19  really flag, but I was going to discuss this.  So I'm not sure
20  counsel for Mr. Pillars is here.  In that regard, I want to
21  tread carefully.
22         My recollection is that I've given counsel for
23  Mr. Pillars until yesterday to file a response to your letter.
24  Is that correct?
25         MR. BERMAN:  Your Honor, I thought it was Wednesday,

G97YGMLC
 1   but I could be mistaken.  We can check and confirm.
 2              THE COURT:  I will look for that.  I guess my
 3   question -- I think I can just pose it to you even if counsel
 4   isn't present -- assuming you're right and Mr. Pillars is not a
 5   core ignition switch plaintiff or an ignition switch plaintiff
 6   within the meaning of the bankruptcy court's ruling and
 7   presumably, by implication, within the meaning of the Second
 8   Circuit's ruling, I guess the question in my mind is is there
 9   reason to defer a decision on the appeal pending the bankruptcy
10   court ruling in the first instance on the status of the
11   "non-ignition switch" plaintiffs' claims.
12              My understanding is New GM's position is that the
13   only -- well, let me start with the following:  The Second
14   Circuit obviously remanded the claims of the non-ignition
15   switch plaintiffs for further consideration by the bankruptcy
16   court as to whether there was a due process violation as to
17   those plaintiffs.
18              My understanding is that New GM takes the position
19   that the only such plaintiffs who have live claims and
20   arguments on that score are those that actually appealed to the
21   Second Circuit and that other "non-ignition switch plaintiffs"
22   who didn't appeal -- that their claims are basically over and
23   done.  That may include Mr. Pillars, in which case I think no
24   question the appeal issue is a live one.
25              Now, my understanding is that the plaintiffs' counsel

G97YGMLC
 1  takes a different position and essentially argues that that
 2  category includes others beyond those who were party to the
 3  appeal and potentially including Mr. Pillars, in which case
 4  presumably the bankruptcy court will have to decide that issue.
 5          If it agrees with plaintiffs in that regard, it could
 6  conceivably decide that Mr. Pillars has a valid claim that
 7  there's a due process violation and can pursue a claim on a
 8  more straightforward theory.  If that's the case, then
 9  presumably it would moot the issue on the appeal to me.
10          All of this is with the backdrop of the fact that this
11  case is stayed pursuant to my order number 1, and I'm just
12  trying to decide what makes sense to devote my attention to and
13  resources to and whether this is something that needs to be
14  decided now as opposed to just put on ice pending further
15  developments.
16          Any thoughts?
17          MR. BLOOMER:  Yes, your Honor.  The parties in the
18  bankruptcy proceedings, I think, as the Court knows, are
19  developing a list of issues to bring before the bankruptcy
20  court.  That may well be one of the issues.
21          Our position, as we stated during the telephonic
22  hearing on the Pillars appeal a week or so ago, was that from
23  JAMS' perspective, given the fact that the Pillars case is
24  stayed in this court under order number one, there is no magic
25  to the timing of resolving the appeal.  I guess it's
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

G97YGMLC

1  conceivable that something could happen in the bankruptcy court
2  that has an effect on it.
3          Ultimately, as I think we told the Court or I told the
4  Court during the hearing, the issue that we see that may
5  remain -- we think will remain -- is the question of whether he
6  has an assumed liability or retained liability.
7          Whether any further proceedings in the bankruptcy
8  court could impact that I think remain to be seen.  To the
9  extent your Honor is saying can I just defer this pending what
10  happens, if anything, in the bankruptcy court, I don't think my
11  client has an objection to that.
12          THE COURT:  Very good.  Thank you.  That's helpful.
13  I'll wait and seeing what, if anything, Mr. Pillars files
14  today.
15          MR. BERMAN:  Your Honor, we may have a dog in this
16  fight.  We may urge you to ice it because to the extent that
17  Mr. Pillars is implicating issues involving what claims
18  non-ignition switch plaintiffs can bring and where they can
19  bring them, that is very much a live issue for us that we're
20  going to be debating with GM on.  So I'm concerned that it
21  touches on much broader issues.
22          THE COURT:  I hear you.  I don't think it does in the
23  sense that the issue on appeal -- I don't know how familiar, if
24  at all, you are with the issues in Mr. Pillars' case.
25          The issue on appeal is very, very sui generis or I

G97YGMLC
 1  think is unique to his case and one other case, and in fact the
 2  circumstances are even more unique to his case given certain
 3  procedural issues.
 4          Judge Gerber had ruled that in light of those sort of
 5  unique circumstances, that his case could proceed,
 6  notwithstanding the fact that it otherwise wouldn't have been
 7  allowed to proceed.
 8          I think that issue doesn't implicate the concerns that
 9  you have raised, and that's the only issue on appeal before me.
10  So, when it comes down to it, what I was discussing is stuff
11  that would be decided elsewhere and may have a bearing on the
12  appeal and, in that regard, may have a bearing on whether it's
13  worth my spending my time on it now.  If I were to address the
14  appeal now, I don't think I would be addressing any of those
15  issues.
16          Am I wrong in that, Mr. Bloomer, in injure opinion?
17          MR. BLOOMER:  I would agree with that, your Honor.  To
18  reiterate what I said before, one of the issues in the appeal
19  is which agreement applies to his claims making them either
20  retained liabilities or assumed liabilities.
21          THE COURT:  I don't see any danger of prejudice to
22  other non-ignition switch plaintiffs because I don't think I
23  would get to those types of issues if I were to proceed at this
24  point at all.
25          In terms of other housekeeping matters, there is a

G97YGMLC

 1   pending motion to dismiss certain personal injury wrongful
 2   death claims under I think it's order 25, the plaintiffs' fact
 3   sheet-type issues that New GM filed.  This is docket number
 4   3296.
 5          I think the response deadline is this Friday.  So I'll
 6   wait to see what, if anything, is filed in that regard.  I also
 7   have a couple motions to vacate prior dismissals that I'll act
 8   on once all those issues are fully submitted.
 9          The only other issue I have on my agenda to discuss is
10   the schedule for the next conferences.  We do have two on the
11   calendar.  One is October 13 at 2:00 p.m.  And then the second,
12   which was to be a joint final pretrial conference for Norville
13   and status conference for the MDL, is the morning of
14   November 9.
15          I guess the question that arises in my mind is whether
16   we this stick with both of those dates or whether it might make
17   sense to just meet next on November 9.  I don't know if there's
18   something in between perhaps.
19          I know we tried to go through this the last go-around.
20   In light of the fact that Norville is now gone and you and I
21   don't need to be spending our time preparing for that case, it
22   just does free up some other possibilities.  So I'm happy to
23   stay the course.  I'm happy to adjust.  Any thoughts?
24          MR. BERMAN:  Your Honor, we'd like to stay the course
25   and at least have the October 13 because on October 6 you're

G97YGMLC
 1  going to get our submissions.
 2          On October 13 I think we're set to have a discussion
 3  over the course of the economic loss case.  So we'd like to
 4  keep that, even though it was difficult to squeeze in between
 5  Yom Kippur and Mr. Godfrey's wedding, which I have not been
 6  invited to.
 7          THE COURT:  Nor I, but I'm relieved about that, only
 8  for judicial ethics reasons, not for anything personal.
 9          I think that probably makes sense, that is to say that
10  we should stick with the October 13 date, and then we can
11  evaluate at that time whether November 9 is needed and/or
12  whether other conference dates should be set at that time.
13          Mr. Godfrey?
14          MR. GODFREY:  What I was wondering is:  In light of
15  the change of schedules, whether the Court would be willing to
16  move October 13 to the following week.
17          THE COURT:  No, only because there are two days that
18  I'm out for Jewish holidays, and then my daughter is getting
19  bat mitzvah'd that following weekend.  So I will not have the
20  time or attention to pay to this at that time.  So we'll stick
21  with the 13th.
22          Anything else for today?
23          MR. GODFREY:  Two items quickly, your Honor:  One is
24  Mr. Hilliard was correct.  The papers are ready to be signed in
25  the Norville and in the Cockram cases.

G97YGMLC

 1           The holdups are on our end.  We need to find someone
 2  with authority to sign them because Mr. Bloomer and I are here,
 3  Mr. Brock is not available, and Ms. Bloom is in the hospital
 4  with her sister.
 5           We'll get someone to sign them.  Right now I can't
 6  tell you who.  We don't have someone with authority now to sign
 7  them, but we will find someone by the end of the day.  We're
 8  just not sure who that will be.
 9           Secondly -- I should have asked this before.  I
10  apologize for not thinking of it -- I am hopeful that we can
11  work out the St. Louis issue.  If we can't, we've actually
12  never had a motion like this in the court.  I assume we would
13  just file our motion papers.
14           Do we ask for a particular date to be heard?  If we
15  have to go down that route, how does the Court want us to
16  proceed?  We've always before, since we've been working with
17  lead counsel, have been able to work out a proposed date, but
18  this is a novel situation.
19           If we get their papers today and decide we have no
20  choice -- we'll make one last effort to try to resolve with
21  them, but if that doesn't work, how would you like us to
22  proceed?  We'll move fairly quickly.  I need your guidance, if
23  I could ask.
24           THE COURT:  I think it depends a little bit on how
25  urgent the situation is.  If it's something that can be briefed
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

G97YGMLC
1  in the normal course, then could just file it as an
2  ordinary-type motion.
3          I guess the bottom line is why don't you wait and see
4  if you need to file anything.  Depending on what you do need to
5  file, if it you turns out you do need to file something, you
6  can essentially make a simultaneous application to proceed in
7  some fashion and either propose that we hold an immediate
8  conference or expedite the briefing schedule or what have you
9  in light of whatever the situation is.
10         In other cases, it might make sense to proceed by
11 order to show cause and have a conference in quick order, but
12 the bottom line is, as you know, I think I'm pretty on top of
13 this docket.
14         If you file something, I'll act on it pretty quickly.
15 If you have a suggestion or if you advise me of what the
16 constraints are and what the need to act quickly is, I will
17 take appropriate action.  You should make your suggestions, and
18 I'll consider them in due course.
19         MR. GODFREY:  Thank you.
20         THE COURT:  Let's hope that it doesn't come to pass at
21 all.  We've been successful thus far, and I'll keep my fingers
22 crossed.
23         Anything else?  All right.  That was a pretty quick
24 conference, all things considered.  I wish you guys a pleasant
25 rest of your day, and I'll look for those dismissal orders, and
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

G97YGMLC
 1   we are adjourned.   Thank you.
 2              (Adjourned)
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300