# Exhibit A

  

October 7, 2016

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

    **Re:** *In re: Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543; 14-MC-2543

Dear Judge Furman:

Pursuant to this Court's Order No. 8 Section IV.B (Docket No. 249), counsel for General Motors LLC ("New GM") and Lead Counsel, having met and conferred, submit this joint letter setting forth the parties' tentative agenda for the October 13, 2016 Status Conference. The parties do not believe that the Court needs to allot more than three hours for the Status Conference.

### 1. Status of Bankruptcy Proceedings and New GM's Petition for Writ of *Certiorari*.

On September 14, 2016, the Second Circuit denied New GM's petition for panel rehearing and rehearing *en banc* of the Second Circuit's July 13, 2016 Opinion. On September 30, 2016, the Second Circuit also denied New GM's motion to stay the mandate. New GM therefore intends to file a petition for a writ of *certiorari* with the United States Supreme Court in connection with the Second Circuit's Opinion, which petition is due to be filed in December 2016.

On July 18, 2016, the Bankruptcy Court held a status conference to discuss the Second Circuit's Opinion, among other things, and directed the parties to meet and confer to discuss issues that the Bankruptcy Court should address in connection with the Opinion. On August 3, 2016, certain plaintiffs (including Lead Counsel) and New GM met and conferred to identify potential issues and to propose procedures for raising those matters with the Bankruptcy Court. By letter dated August 9, 2016, New GM, with the consent of the Designated Counsel retained by Lead Counsel, informed the Bankruptcy Court of the meet and confer and requested an additional status conference in October 2016. On August 26, 2016, New GM wrote to certain parties in interest with respect to identifying issues that the Bankruptcy Court may need to resolve in light of the Opinion, and to establish procedures for addressing same. Designated Counsel reviewed and approved this letter prior to its circulation. The proposed procedures provided that the identified parties in interest (and New GM) would exchange lists of bankruptcy issues by September 7, 2016, and then would have a further meet and confer with the goal of creating a master list of issues (and proposed procedures for resolving same) for the Bankruptcy Court before the October status conference (to be scheduled). Certain parties submitted lists of issues, and a subsequent meet and confer was held with certain plaintiffs and other parties in interest on September 13, 2016. It is anticipated that further meet and confers will take place shortly and that the Bankruptcy Court will schedule a hearing in the next 30 days to discuss how to best proceed in that court on bankruptcy related issues.

09-50026-mg    Doc 13773-1    Filed 10/10/16    Entered 10/10/16 11:23:15    Exhibit A
Case 1:14-md-02543-JMF    Document 3416    Filed 10/07/16    Page 2 of 8
Pg 3 of 9

The Honorable Jesse M. Furman
October 7, 2016
Page 2

Among the issues plaintiffs plan to raise with the Bankruptcy Court is whether the "Non-Ignition Switch" plaintiffs[1] can demonstrate a due process violation in connection with the 2009 Sale which would result in such plaintiffs not being bound by the Sale Order. Among the vehicles owned by the Non-Ignition Switch plaintiffs are the vehicles covered in the following recalls, all of which are pled in plaintiffs' Fourth Amended Consolidated Complaint ("FACC"): NHTSA Recalls No. 14v355, 14v394, and 14v400 (unintended key rotation recalls referred to as the Low Torque Ignition Switch Recalls in the FACC); 14v346 (Camaro key fob recall referred to as the Knee-to-Key Camaro Defect recall in the FACC), 14v118 (the side impact air bag connector recall referred to as the Side Airbag Defect recall in the FACC) and 14v153 (the Electronic Power Steering Defect recall). For the purposes of the Bankruptcy Court due process proceedings, plaintiffs will seek discovery of Old GM's knowledge of these defects. Even in the event that this Court were to hold that no successor liability exists for New GM under the law of any state, the Non-Ignition Switch Plaintiffs would still seek to establish that they were "known creditors" whose due process rights were violated in connection with the Sale in order to establish their ability to file late proofs of claim in the Bankruptcy Court.

In that regard, it is New GM's position that any discovery related to the due process issue should be deferred until this Court has ruled on whether New GM is subject to successor liability by virtue of the sale transaction approved by the Bankruptcy Court. If this Court finds that New GM is not subject to successor liability, then there will be no need to engage in discovery regarding the due process issue because the stated purpose for such discovery is to determine whether plaintiffs are bound by the "free and clear" provisions of the Sale Order or whether they can assert successor liability claims against New GM. New GM will address and respond to any due process arguments that plaintiffs raise in the Bankruptcy Court.

In addition, certain plaintiffs may have alleged Independent Claims against New GM, which New GM submits in many instances are actually Retained Liabilities of Old GM. New GM therefore intends to present issues regarding the definition and scope of independent claims, including clarity regarding the parties that are allowed to assert independent claims, to the Bankruptcy Court for adjudication in light of the Second Circuit's Opinion.

Finally, in connection with plaintiff Doris (Powledge) Phillips' appeal from this Court's June 21, 2016 Memorandum Opinion and Order (Phillips Docket No. 17), the Second Circuit Civil Appeals Mediation Program held a mediation conference on Tuesday, September 13, 2016. The appeal was not resolved in mediation and Appellant's opening brief is due to be filed on or before October 18, 2016.

    **2.    Coordination in Related Actions.**

The parties will be prepared to address their ongoing coordination efforts and emerging coordination risks in Related Actions. (*See* Order No. 15, Docket No. 315.)

---

[1] Plaintiffs have tried to introduce new nomenclature for certain plaintiffs that were defined differently in the Bankruptcy Court and Second Circuit. These courts and the parties stipulated to and used the agreed upon term "Non-Ignition Switch Plaintiffs" to define what plaintiffs now call "second stage ISD Plaintiffs" and "Non-ISD Plaintiffs." New GM believes that for consistency sake, and to avoid any confusion, the same term used in the Bankruptcy Court and Second Circuit (Non-Ignition Switch Plaintiffs) should be used by the parties in submission to this Court.

09-50026-mg    Doc 13773-1    Filed 10/10/16    Entered 10/10/16 11:23:15    Exhibit A
Case 1:14-md-02543-JMF    Document 3416    Filed 10/07/16    Page 3 of 8
Pg 4 of 9

The Honorable Jesse M. Furman
October 7, 2016
Page 3

In *People of the State of California v. General Motors LLC*, No. 30-2014-00731038-CU-BT-CXC (Sup. Ct. Orange County, CA) (the *California* Action), the court has entered a schedule providing for a July 11, 2017 trial date. The People informed New GM that, for the purposes of discovery on safety defects, they would limit their request to the vehicles covered in the following recalls, all of which are pled in the FACC: NHTSA Recall Nos. 14v047, 14v355, 14v394, 14v346, 14v118, and 14v153. For the purposes of the *California* action, the People will seek discovery of New GM's knowledge of these defects (including, of course, knowledge allegedly imputed from personnel who worked at both Old GM and New GM). Just one week ago, the People timely provided written responses to New GM's first discovery requests, and are in the process of gathering responsive documents.

New GM has timely responded to the Orange County plaintiff's discovery requests served to date and is in the process of preparing responses to requests not yet due. In contrast, the Orange County plaintiff has provided no document discovery to New GM whatsoever, and its recent responses to New GM's discovery requests are replete with meritless objections. New GM intends to address these issues with the Orange County Superior Court if necessary and when appropriate.

In *State of Arizona v. General Motors LLC*, NO CV2014-01409 (Sup. Ct. Maricopa County, AZ (the *Arizona* Action), the State on October 3, 2016 filed its "Notice of Recalls" pursuant to the court's order that it "disclose which specific recalls it alleges were not timely made and, therefore, form the basis of a claim under" the Arizona Consumer Fraud Act. In that Notice, the State informed the court and New GM that it would limit the recalls and defects it would challenge the vehicles covered in the following recalls, all of which are pled in the FACC: Recall Nos. 14v047, 14v355, 14v394, 14v346, 14v118, and 14v153. For the purposes of the *Arizona* action, the State will seek discovery of New GM's knowledge of these defects (including, of course, knowledge allegedly imputed from personnel who worked at both Old GM and New GM). No discovery has yet been served in the Arizona action because serving discovery is prohibited pending a case management conference scheduled for November 29, 2016.

### 3. New GM's Document Production.

New GM has complied and will continue to comply with its rolling production obligations and deadlines set forth in the Court's orders. To date, New GM has produced into the MDL 2543 Document Depository more than 3 million documents (totaling nearly 17 million pages).

### 4. Discovery Sought by Plaintiffs.

**Plaintiffs' Position**

On September 22, 2016, Plaintiffs served on New GM the following discovery requests: (i) Plaintiffs' Seventh Set of Consolidated Requests for Production of Documents to New GM containing nine RFPs that seek information relating to the recalls at issue in the Fourth Amended Consolidated Complaint intended to fill what Plaintiffs believe are gaps in the document productions previously made by New GM; (ii) Plaintiffs' Third Set of Interrogatories to New GM containing three targeted interrogatories relating to service parts and New GM's procedures for searching certain customer databases; and (iii) Notice of Fed. R. Civ. P. 30(b)(6) Deposition of New GM seeking witnesses with knowledge of discrete subject matters relating to the unintended key

09-50026-mg    Doc 13773-1    Filed 10/10/16    Entered 10/10/16 11:23:15    Exhibit A
Case 1:14-md-02543-JMF    Document 3416    Filed 10/07/16    Page 4 of 8
Pg 5 of 9

The Honorable Jesse M. Furman
October 7, 2016
Page 4

rotation recalls which plaintiffs refer to in the FACC as the "second- and third-wave ignition switch defects",[2] the electronic power steering defect, and the side impact air bag connector wiring recall plaintiffs refer to in the FACC as the side impact airbag harness defect (again seeking to fill perceived gaps in the information previously provided by New GM).In the e-mail accompanying these requests, Plaintiffs asked New GM for convenient times to meet-and-confer on the requests. New GM failed to respond, so Plaintiffs sent another e-mail on September 30 asking again for a meet-and-confer. New GM again failed to respond.

Plaintiffs also served subpoenas on switch manufacturers Stoneridge, Dalian Alps, Delphi, and Continental, as well as switch testers Exponent, Duckworth and Associates, and VTTI. Meet and confers with some of these third parties have begun.

In addition, on September 22, 2016, Plaintiffs requested that New GM advise by September 28 whether it will produce three witnesses with knowledge of the unintended key rotation recalls plaintiffs refer to in the FACC as the second- and third-wave ignition switch defects (Valarie Boatman, Joe Reiss, and Rob Ezze). And on September 23, Plaintiffs requested that New GM advise whether it would produce an additional witness, Scott McCullough, who also has knowledge of the second- and third-wave ignition switch. Plaintiffs made these requests pursuant to Order No. 15's admonition that "[a]ll counsel are expected to cooperate with and be courteous to each other and deponents in both scheduling and conducting depositions" (see Dkt. no. 49, ¶ 15) and Oder No. 36's directive that counsel "shall cooperate on selecting a mutually convenient date, time, and location for each deposition" (*see* Order No. 36, ¶ 15). New GM has failed to respond, despite additional prompting from Plaintiffs on September 30th.

In that same letter, Plaintiffs asked New GM to produce certain categories of documents that were requested in prior production requests that Plaintiffs have been unable to locate or, in the alternative, to identify the documents in New GM's prior productions. New GM has never responded to this inquiry.

Plaintiffs' September 22 letter also asked New GM to explain why its prior productions contain few documents related to the second- and third-wave ignition switch defects.

> "In addition, plaintiffs note that for the non-delta recalls, New GM has produced very few documents other than those stored on the Technical Repositories. Please explain why that is—were the documents in the custodial files of GM employees destroyed or deleted? What GM employees' custodial files were searched for responsive documents?"

New GM has failed to respond to this inquiry, too

Plaintiffs have been puzzled by New GM's lack of response to Plaintiffs' multiple attempts to discuss this discovery, and are unfortunately forced to raise this issue here because New GM has

---

[2] The second- and third-wave ignition switch defects refer to the unintended key rotation recalls plaintiffs call the non-Delta switch ignition switch recalls in the FACC (Recall Nos. 14v346, 14v355, 14v394, and 14v400) that occurred after the Delta ignition switch-related recalls were done in February 2014.

09-50026-mg    Doc 13773-1    Filed 10/10/16    Entered 10/10/16 11:23:15    Exhibit A
Case 1:14-md-02543-JMF    Document 3416    Filed 10/07/16    Page 5 of 8
Pg 6 of 9

The Honorable Jesse M. Furman
October 7, 2016
Page 5

completely ignored requests to meet and confer notwithstanding rapidly approaching discovery deadlines in bellwether cases. The failure of New GM to extend this professional courtesy smacks of gamesmanship. If it is New GM's position that it simply does not believe that it is required to respond to any further discovery—or even requests to clarify prior productions—it could easily have said so (and should have two weeks ago). Plaintiffs respectfully request that the Court order New GM to articulate its position on these issues so that briefing, if necessary, can be submitted to the Court for prompt resolution.

On July 20, 2016, Plaintiffs requested that New GM provide 400 of the ignition switches for each of the models included in the following recalls: 14v346, 14v355, 14v394, and 14v400. Plaintiffs made this request because they are going to provide the switches to their experts for torque testing. New GM has declined to provide the switches because the relevant recalls did not involve the replacement of the ignition switch. Plaintiffs do not believe that this is a valid basis for withholding the switches. In the recall materials, the defects at issue are described as follows:

- Recall No. 14v346: The ignition switch may move from the RUN position due to driver knee interaction.

- Recall No. 14v355: The ignition switch may inadvertently move out of the "run" position if they key ring is carrying added weight or the vehicle goes off road or experiences some other jarring event.

- Recall No. 14v394: The ignition switch may move from RUN to ACCESSORY or OFF due to driver interaction with the key or due to the weight of objects on the key ring.

- Recall No. 14v400: The ignition switch may inadvertently move out of the "run" position if the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event.

The integrity of the switches and whether they met GM's torque guidelines are issue in each of the recalls, and Plaintiffs are entitled to test the switches. Further, New GM is not unduly burdened by providing the switches given that the switches associated with Recalls 14v346 and 14v394 were to have been preserved and set aside pursuant to Agreed Parts Preservation Order No. 6.

Finally, the discovery that Plaintiffs will need to pursue for their claims in the FACC will also be necessary for (i) Plaintiffs to litigate due process issues in the Bankruptcy Court and (ii) the People to pursue their claims in the *California* action and (iii) the State of Arizona to pursue its claims in the *Arizona* action. Especially given the tight schedule in the *California* action, this discovery must commence forthwith.

### **New GM's Position**

None of the issues that plaintiffs have raised under this paragraph are ripe for the Court's consideration or requires any ruling by the Court at this time. As an initial matter, the discovery plaintiffs served on New GM—without notice or prior discussion—is contrary to the Court's orders and direction at the July 28, 2016 Status Conference. In advance of that status conference, plaintiffs

The Honorable Jesse M. Furman
October 7, 2016
Page 6

sought to reopen discovery of Phase One and Phase Two recalls. (*See* Docket No. 3142 at 7-8.) At the status conference, the Court unequivocally stated: "[o]ne word about discovery and I think this applies to both economic loss and the wrongful death personal injury cases. I'll reserve judgment, I suppose, because it sounds like you guys are talking about it and maybe able to reach agreement, but at least for now I am going to leave things where they are, which is to say, my prior rulings regarding plaintiff's rights or lack thereof to essentially retake discovery that they had an opportunity to take in phase 1 and the so-called one-deposition rule, I am going to leave those in place, which is to say that that is the default and I am going to keep at the default as the orders set forth. *That allows for further discovery or multiple depositions if New GM agrees or if I grant the amount of showing of good cause*." (7/28/2016 Status Conf. Tr. 20:5-17; *see also* Order No. 111 Section VI ("Consistent with the Court's comments at the Status Conference, unless and until the Court orders otherwise, its prior rulings regarding MDL discovery procedures (e.g., the "one-deposition rule") remain in effect.").) Plaintiffs' claim that it is necessary to raise this issue because of "rapidly approaching discovery deadlines in the bellwether cases" ignores the Court's clear directive that "absent agreement of the parties or good cause shown, plaintiffs are not entitled to additional recall-related discovery of New GM or additional depositions of GM witnesses." (Order No. 107 ¶5(b), Docket No. 3081.)

If plaintiffs believe there are "perceived gaps" in New GM's Phase One or Phase Two recall related discovery responses, the proper procedure would be to conduct a meet and confer to address the issue. Rather than seek to meet and confer with New GM regarding any so-called "gaps," plaintiffs unilaterally served far-reaching, overbroad, and duplicative discovery requests related to Phase One and Phase Two related recalls on September 22, 2016. Plaintiffs did not claim or attempt to demonstrate good cause to serve this new discovery, but instead demanded that New GM agree (within four business days, no less) to put up additional deponents, including a 30(b)(6) deponent to discuss Phase One and Phase Two related recalls, before New GM had time to consider its position. Even if plaintiffs' discovery requests had been properly served—which they were not—New GM's responses would not be due under the Federal Rules for another several weeks. New GM is reviewing plaintiffs' far-reaching and duplicative request in order to conduct a reasonable meet and confer with Lead Counsel to determine if they have a proposal for additional discreet and narrowly-tailored discovery, if any, that they believe is necessary. But unilaterally serving wide-ranging and duplicative discovery requests in violation of the Court's prior Orders and directions, and demanding that New GM meet and confer a few days thereafter, and well before its responses are even due is not, New GM submits, a reasonable or efficient way to proceed. Moreover, counsel for New GM have engaged in no less than half a dozen meet and confers with Lead Counsel since September 22, 2016, and Lead Counsel have never mentioned these discovery requests or asked to discuss them. And with respect to plaintiffs' demand that New GM identify documents from New GM's prior productions, plaintiffs have not explained what efforts, if any, they have expended to locate these documents (which were produced using the parties' agreed-upon and Court ordered Phase One and Phase Two search terms, along with production cover letters specifying the discovery requests to which any given document is responsive).

With respect to the subpoenas that plaintiffs have served, New GM takes no position, other than to point out that plaintiffs continue to ignore the requirements of Rule 45(a)(4), which require that plaintiffs provide New GM with a notice of and a copy of Rule 45 subpoenas *before* they serve it on the subpoena recipient. On several occasions, plaintiffs have sent New GM subpoenas that

09-50026-mg Doc 13773-1 Filed 10/10/16 Entered 10/10/16 11:23:15 Exhibit A
Case 1:14-md-02543-JMF Document 3416 Filed 10/07/16 Page 7 of 8
Pg 8 of 9

The Honorable Jesse M. Furman
October 7, 2016
Page 7

they had already purportedly served on the recipients. Additionally, plaintiffs continue to serve purported third party subpoenas on MDL parties Delphi, Continental, and Stoneridge.

Moreover, plaintiffs' demand that New GM provide ignition switches to plaintiffs for vehicles subject to certain unintended key rotation recalls is unreasonable. Unlike the vehicles affected by the Cobalt/Ion ignition switch defect (NHTSA Recall No. 14V047, the unintended key rotation recalls did not involve the replacement of the affected vehicles' ignition switches. In general, the unintended key rotation recall remedies involved replacement of keys or key blades, new key rings, new key inserts, and/or new key covers, not the removal/replacement of the ignition switch.[3] As such, New GM does not have the ignition switches plaintiffs are requesting, and plaintiffs' reliance on Preservation Order No. 6 is simply misplaced. (*See* Docket No. 880 ¶¶ 15, 18 (explaining that these recalls involve keys, not switches).) Lead Counsel has had New GM's explanation since last July and never raised the issue until sending a revised draft of this conference agenda to New GM's counsel yesterday.

New GM respectfully submits that the appropriate process for these discovery "issues" is for the parties to address them, as they have done on countless other occasions, either to reach a resolution (as they likely will) or to identify and crystalize any disputes that actually need to be resolved by the Court—rather than seek to argue them in the status conference agenda letter. In this regard, New GM asked Lead Counsel if they would be willing to remove these matters from the letter; Lead Counsel demurred. New GM thus apologizes to the Court for what New GM considers to be unnecessary exercise in point/counter-point. *See* 1/6/2016 Hr'g Tr. at 25:16-19 ("That is to say, don't raise stupid things with me and pick your battles. Pick what's important. Save me the trouble and time because a happier judge is better for you.").

### 5. Plaintiffs' Fourth Amended Consolidated Complaint (FACC).

Pursuant to Order Nos. 111 Section IV and 112 Section IV (Docket Nos. 3178, 3365), the parties submitted competing letter briefs and proposed orders regarding next steps with respect to the FACC. The parties will be prepared to discuss these submissions and any questions the Court may have at the Status Conference.

### 6. Pre-Bankruptcy Wrongful Death and Personal Injury Cases.

It is plaintiffs' position that the MDL contains hundreds of pre-bankruptcy wrongful death and personal injury cases. For example, Co-Lead Counsel Robert C. Hilliard represents over two hundred pre-bankruptcy plaintiffs, whose cases were directly filed into the MDL. Although a new bellwether category for these pre-bankruptcy cases may not be warranted, hundreds of directly-filed pre-bankruptcy cases will remain in this Court to be tried at the conclusion of the coordinated or consolidated pretrial proceedings. The parties have begun discussing a plan to litigate, try, or otherwise resolve these cases and will be prepared to discuss this topic at the Status Conference.

---

[3] In particular, NHTSA Recall No. 14V346 requires dealers to "remove the key blade from the original flip key/R[emote] K[ey] E[ntry] transmitter assemblies provided with the vehicle [*i.e.*, key fob], and provide two new keys and two key rings per key." NHTSA Recall No. 14V355 requires dealers to "install two 13mm key rings and key insert into all involved vehicle's ignition keys." NHTSA Recall No. 14V394 requires dealers to "provide two replacement key rings," and to provide key inserts for vehicles with slotted keys. Finally, NHTSA Recall No. 14V400 requires dealers to "install two key rings and key cover on all ignition keys."

09-50026-mg    Doc 13773-1    Filed 10/10/16    Entered 10/10/16 11:23:15    Exhibit A
Pg 9 of 9
Case 1:14-md-02543-JMF   Document 3416   Filed 10/07/16   Page 8 of 8

The Honorable Jesse M. Furman
October 7, 2016
Page 8

New GM's position is that resolution of the pre-Sale accident cases must await, at a minimum, the disposition of New GM's forthcoming petition for writ of *certiorari* in the United States Supreme Court, which if granted could lead to the overturning of the Second Circuit's Opinion.  Additionally, many of the pre-Sale accident plaintiffs allege claims based on Non-Ignition Switch vehicles.  Such claims are barred by the Sale Order, and remain that way unless and until the pre-Sale accident Non-Ignition Switch plaintiffs establish a due process violation in the Bankruptcy Court with respect to the bankruptcy Sale notice.  As for pre-Sale accident Ignition Switch plaintiffs (as well as pre-Sale accident Non-Ignition Switch plaintiffs), the Court's anticipated ruling on the successor liability issue may well determine whether such claims can go forward since the only exposure that New GM would have for pre-Sale accidents is based on successor liability.  Thus, there is no reason to move forward with any other litigation activity on pre-Sale accident cases at this time.

### 7. Settlement.

The parties continue to discuss possible resolution mechanisms.

Respectfully,

| /s/ Steve W. Berman | /s/ Elizabeth J. Cabraser | /s/ Bob Hilliard |
|---|---|---|
| Steve W. Berman | Elizabeth J. Cabraser | Bob Hilliard |
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd |
| Suite 3300 | 29th Floor | Suite #500 |
| Seattle, WA 98101 | San Francisco, CA 94111-3339 | Corpus Christi, TX 78401 |
| -and- | -and- | |
| 555 Fifth Avenue | 250 Hudson Street | |
| Suite 1700 | 8th Floor | |
| New York, NY 10017 | New York, NY 10013-1413 | |

cc: The Honorable Martin Glenn
    MDL Counsel of Record