# **<u>Exhibit C</u>**





October 7, 2016

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *In re: Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543; 14-MC-2543

Dear Judge Furman:

Pursuant to Section IV of this Court's Order Nos. 111 and 112, the parties are submitting competing, proposed orders regarding issues related to the Fourth Amended Consolidated Complaint (FACC). Plaintiffs' proposed order is attached. The parties have worked hard to narrow differences, and many of the provisions in the proposed order are agreed. However, there remain several key differences of opinion (as reflected in redlined proposed order being submitted), and this letter constitutes Plaintiffs' brief on the remaining areas of disagreement.

### 1. The Efficient and Orderly Progression of the Economic Loss Class Actions

The parties present two vastly different visions of how the economic loss class actions should be resolved. Plaintiffs believe that the Court's desire for a "reasonable but aggressive" schedule should apply to the economic loss class actions, just as it has to the injury/wrongful death bellwether trials. To that end, Plaintiffs' proposed schedule contemplates:

- Resolving Rule 12 motions against all Plaintiffs by mid-2017;

- Completing fact and preliminary expert discovery by the end of 2017;

- Resolving summary judgment motions and the class certification motion *for all states* in early 2018; and

- A trial as early as mid-2018.

The key building blocks of Plaintiffs' proposed schedule are as follows:

- *Comprehensive motions to dismiss.* After the Court issues its ruling on New GM's forthcoming motion to dismiss directed at FACC Plaintiffs in eight additional states (Alabama, Illinois, Massachusetts, Michigan, New York, Pennsylvania, Texas, and Wisconsin), the parties will have the benefit of the Court's rulings under the laws of 16 states. These rulings will provide valuable guidance for the parties to use in evaluating the claims of Plaintiffs in the remaining states. The parties should meet and confer, and decide how the prior orders will apply to the remaining Plaintiffs and

10440-11 905407 V1

09-50026-mg  Doc 13773-3  Filed 10/10/16  Entered 10/10/16 11:23:15  Exhibit C
Case 1:14-md-02543-JMF  Document 3413  Filed 10/07/16  Page 2 of 8
Pg 3 of 16

The Honorable Jesse M. Furman
October 7, 2016
Page 2

states. Where the parties have differences of opinion, New GM can then move to dismiss vis-à-vis the claims of specific Plaintiffs, keeping in mind the Court's prior orders. This proposal is reflected in Paragraph 3 of Plaintiffs' proposed order. Under this proposal, all motions to dismiss directed to *all Plaintiffs* would therefore be resolved by mid-year.

- *Comprehensive summary judgment and class certification motions*. Having all Rule 12 motions decided for all Plaintiffs and jurisdictions will frame the Plaintiffs and states that will be eligible for inclusion in Plaintiffs' class certification motion. It will also inform the scope of summary judgment motions to be filed. All such motions should address all states remaining. This is reflected in Paragraphs 13 and 14 of Plaintiffs' proposed order.

Plaintiffs' proposal resolves the economic loss class actions in a "reasonable but aggressive" timeframe by preparing the economic loss class actions for trial by mid-2018 *in their entirety*. In contrast, New GM advocates for piecemeal litigation and thus undue delay. New GM's plan contemplates motions to dismiss being resolved in only 16 states, and summary judgment and class proceedings involving only the eight states that were the subject of New GM's motion to dismiss the TACC. And New GM offers no plan for what to do after the Court issues summary judgment and class certification rulings on eight states (presumably in late Spring 2018); New GM's proposal merely contemplates that the parties will discuss "next steps." Under New GM's plan, the case is nowhere near ready for trial on all economic loss claims during 2018. Plaintiffs submit that this is not a cogent plan for resolution of the economic loss class actions, especially given that it has been two years since the initial consolidated economic loss complaints were filed in this MDL.

New GM's proposal also creates procedural anomalies. For example, when moving for class certification, Plaintiffs will very likely move to group certain states together into classes or subclasses based on materially similar elements of the substantive claims—a tool commonly used by courts in certifying classes. But, as it did in negotiations over the proposed order, New GM will cry foul if Plaintiffs seek to include in a grouping states for which motions to dismiss have not been decided. This is a "heads-they-win-tails-we-lose" situation for Plaintiffs, insofar as New GM at the same time is resisting comprehensive and efficient briefing. Even if the Court ultimately does not agree with New GM that New GM's decision not to move to dismiss claims somehow forecloses Plaintiffs from making a procedural motion involving those un-dismissed claims, this creates extra, unnecessary ancillary briefing.

Conversely, it would be unfair and inefficient for Plaintiffs to be foreclosed from proposing carefully crafted classes or subclasses supported by existing jurisprudence.

A plan should be adopted that seeks to resolve the class claims of all Plaintiffs within two years from today. Plaintiffs' proposal is the only plan that does so and, therefore, accomplishes the Court's goal of a "reasonable but aggressive" resolution.

2. **Discovery and Depositions of Named Plaintiffs**

New GM argues for unfettered discovery of all named Plaintiffs, including depositions of Plaintiffs who may ultimately be dismissed in forthcoming motions to dismiss. In contrast,

09-50026-mg    Doc 13773-3    Filed 10/10/16    Entered 10/10/16 11:23:15    Exhibit C
Case 1:14-md-02543-JMF   Document 3413   Filed 10/07/16   Page 3 of 8
Pg 4 of 16

The Honorable Jesse M. Furman
October 7, 2016
Page 3

Plaintiffs propose a reasonable, phased approach that proceeds incrementally and judiciously as follows (*see* Plaintiffs' proposed order, ¶ 7):

- New GM may immediately begin discovery of the 65 Plaintiffs named in the FACC for the following jurisdictions that were subject to the motion to dismiss the TACC: California, Florida, Louisiana, Maryland, Missouri, and Oklahoma.[1]

- After the Court enters its order on the forthcoming motion to dismiss the FACC, New GM may take discovery, including depositions, of surviving Plaintiffs named in the FACC for the following states that will be the subject of the motion to dismiss the FACC: Alabama, Illinois, Massachusetts, Michigan, New York, Pennsylvania, Texas, and Wisconsin. If all FACC Plaintiffs from these states survive the motion to dismiss, New GM would take discovery from 67 Plaintiffs, itself a huge number in the context of a consumer economic loss case, especially one where many key issues have been admitted to by GM.

- Discovery of all remaining named Plaintiffs may commence after the parties have engaged in a meet-and-confer process to discuss application of the Court's motion to dismiss orders to the named Plaintiffs in the remaining states that have not been the subject of the prior motions to dismiss. If discovery is taken from all remaining Plaintiffs, this would provide New GM with discovery of 113 additional Plaintiffs.

Plaintiffs submit that this is the only reasonable manner in which to approach discovery of the named Plaintiffs. New GM's proposal would result in the waste of time and resources should the Court ultimately dismiss on Rule 12 grounds a material number of Plaintiffs named in the FACC.

New GM also demands that the Court abrogate Order No. 36's limit of no more than 16 deponents per calendar month so that New GM may take as many named Plaintiff depositions as it wishes. New GM's position is unfair and would impose undue burden on Plaintiffs. The logical challenges of scheduling, preparing, and holding up to 16 Plaintiff depositions a month is daunting enough—let alone an *unlimited* number of depositions as New GM demands. In briefing leading up to the Court's issuance of Order No. 36, New GM, citing undue burden, sought and bargained for a witness per month limit (it suggested 10, whereas the Court ordered 16),[2] and Plaintiffs should receive similar protections. Recognizing that there are 245 named Plaintiffs, Plaintiffs are willing

---

[1] While the Court's ruling on the motion to dismiss the TACC also addressed Plaintiffs from the District of Columbia and Virginia, the FACC has not named Plaintiffs from those states.

[2] Indeed, in arguing for a monthly deposition limit, New GM noted that Fed. R. Civ. P. 30(a)(2)(A) authorizes each party to take no more than 10 depositions each, absent leave of Court. New GM also stated: "Depositions are an effective discovery tool, but when 'overused and conducted inefficiently' are often 'the most costly and time-consuming activity in complex litigation.' . . . Consequently, the Manual for Complex Litigation states that '[a] judge should manage the litigation so as to avoid unnecessary depositions, limit the number and length of those that are taken, and ensure that the process of taking depositions is as fair and efficient as possible.'" *See* Dkt. No. 513 at 1 (citing Manual for Complex Litigation (Fourth) § 11.45).

09-50026-mg    Doc 13773-3    Filed 10/10/16    Entered 10/10/16 11:23:15    Exhibit C
Case 1:14-md-02543-JMF    Document 3413    Filed 10/07/16    Page 4 of 8
Pg 5 of 16

The Honorable Jesse M. Furman
October 7, 2016
Page 4

to exceed Order No. 36's 16 witnesses per month limit and propose a 25 Plaintiff-per-month limit, subject to Plaintiffs' phasing proposal detailed above. *See* Plaintiffs' proposed order, ¶ 8.

### 3. Plaintiff Fact Sheets

The parties have agreed that Plaintiffs named in the FACC from the jurisdictions that were the subject of the motion to dismiss the TACC (California, the District of Columbia, Florida, Louisiana, Maryland, Missouri, Oklahoma, and Virginia) shall provide to New GM a substantially complete Plaintiff Fact Sheet and the documents requested therein. *See* Plaintiffs' proposed order, ¶ 6. Although New GM would like that deadline to be November 7, 2016, Plaintiffs need until November 11, 2016 to comply—a four day difference that will permit these Plaintiffs to provide more fulsome responses.

Another disagreement regarding Plaintiff Fact Sheets is that New GM is demanding that Plaintiffs provide, by November 7, 2016, Fact Sheets for all states that will be included in the class certification motion. This is simply not possible given that there are 245 Plaintiffs named in the FACC. Nor is it necessary given that the class certification motion is not due to be filed until December 15, 2017. Plaintiffs propose to roll out the Plaintiff Fact Sheets in accordance with the phased approach to Named Plaintiff discovery discussed immediately above in Section 2. This is a reasonable approach that harmonizes Fact Sheet disclosure with other discovery taken of the named Plaintiffs under Plaintiffs' proposal.

### 4. Communications with Putative Class Members

Courts have acknowledged the potential abuse that could occur if defendants were allowed to freely communicate with putative class members. For example, many communications with potential class members are inappropriate, including "misleading communications to the class members concerning the litigation, [c]ommunications that misrepresent the status or effect of the pending action[, and] attempts in a communication to affect a class member's decision to participate in the litigation, or to undermine a class plaintiff's cooperation with confidence in class counsel." *Hampton Hardware*, *Inc. v. Cotter & Co.*, *Inc.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101, n.12 (1981); *In re Sch. Asbestos Litig.*, 842 F.2d 671, 682 n.23 (3d Cir. 1988)). As a result, courts are vested with the discretion to manage class actions in a manner that protects against abuse, and defendants are not given carte blanche to say whatever they like in communications with putative class members.

"Rule 23(d) authorizes the court to regulate communications with potential class members, even before certification." MANUAL FOR COMPLEX LITIGATION, FOURTH (the MANUAL), § 21.12, at 247 (2015). The rule contemplates court supervision and approval of communications from defendants, their counsel, and their agents to unnamed class members, only where it has been demonstrated such communications are necessary, appropriate, and non-coercive in intent and affect; that is, where such communications do not burden or discourage class membership. *Id.*, § 21.21, at 247-249. In *Babbitt v. Albertson's Inc.*, counsel for defendant interviewed putative class members before certification in order to evaluate and defend against the lawsuit. 1993 U.S. Dist. LEXIS 18801, at *21 (N.D. Cal. Jan. 28, 1993). Citing to *Gulf Oil*, the *Babbitt* court denied the plaintiff's motion for sanctions and a protective order, finding that defense counsel's communications were not inappropriate. A key factor in the *Babbit* court's analysis, however, was

The Honorable Jesse M. Furman
October 7, 2016
Page 5

that defense counsel had provided specific disclosures in its communications. Specifically, the court noted with approval that:

> These attorneys uniformly communicated the same information to employees before conducting interviews: (1) that he/she was an attorney retained to defend Albertson's in the pending action, (2) that he/she was investigating facts in order to evaluate and defend the action, (3) that the interviewee was under no obligation to talk to him/her, (4) that no adverse action would be taken against any interviewee who chose not to talk, and (5) that no interviewee would benefit by choosing to talk to him/her. [*Id.* at *17.]

In *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554 (S.D. Fla. 2008), the court found that communications by the defendant with putative class members "threatens the proper functioning of the litigation" and, therefore, adopted guidelines protecting putative class members relating to the merits, status, or effect of the class action, class members' participation therein, or settlement or other resolution of claims and issues in the action. *Id.* at 562, 564.

The Court need not wait until an abuse has actually occurred in order to implement cogent, *ex ante*, and non-burdensome safeguards. An order regulating conduct can be based on "specific findings of actual *or potential* abuse or misconduct . . . ." *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002) (emphasis added). And although "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," *Gulf Oil*, 452 U.S. at 101, "it is unnecessary for a trial court to issue particularized findings of abusive conduct when a given form of speech is inherently conducive to overreaching and duress." *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1206 (11th Cir. 1985). The Court "balance[s] the interest of the parties in presenting their respective positions and the interest of class members in being free from inappropriate influences." *EEOC v. Morgan Stanley & Co.*, 206 F. Supp. 2d 559, 562, *aff'd*, 2002 U.S. Dist. LEXIS 11877 (S.D.N.Y. 2002).

To safeguard the rights of putative class members, Plaintiffs' proposed order, at Paragraph 9, offers a procedure that the parties and their representatives must adopt when contacting class members and includes the use of Court-approved disclosures, including a notification that the putative class member has no obligation to speak with the caller and is free to end the conversation at any time. The procedure also establishes a toll-free hotline for putative class members to use to opt-out of receiving unsolicited communications and to report harassment. And New GM's ability—and those of GM dealers—to contact putative class members in the normal course of business remains unaffected. Plaintiffs believe that this procedure appropriately balances the interests of the parties and the putative class members.[3]

---

[3] *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation*, Judge Selna enacted restrictions on Toyota's contacts with absent class members, which included the use of an approved introductory script, a toll-free hotline to report harassment, and a procedure for both sides to disclose class member testimony that they intended to

The Honorable Jesse M. Furman
October 7, 2016
Page 6

### 5. Discovery of Putative Class Members

The scope of New GM's demand for absent class member discovery is boundless and particularly inappropriate in this case given the number of actual parties. It demands the ability to serve class members with document requests and interrogatories and subpoenas for depositions. New GM's proposal places no limit on how many class members it wishes to take such discovery from (is it 100, 1,000, or more?).

Plaintiffs object to *any* discovery sought from individuals not named in the FACC. In this case, it is not only chilling, it is superfluous to the point of being absurd. "Discovery relevant to [class] certification should generally be directed to the named parties," and "[d]iscovery of unnamed members of a proposed class requires a demonstration of need." MANUAL § 21.14 at 256 (citing *Baldwin & Flynn v. Nat'l Safety Assocs.*, 149 F.R.D. 598 (N.D. Cal. 1993)). The teaching of the Manual mirrors case law on the subject. First, courts should not permit parties to obtain discovery from absent class members unless they are able to make a "strong showing" of the reasons why the discovery was absolutely necessary. *Enterprise Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980). Second, courts allowing such discovery require that the party seeking it establish that the discovery is unavailable elsewhere. *Baldwin & Flynn*, 149 F.R.D. at 600 (citing *Clark v. Universal Builders*, *Inc.*, 501 F.2d 324, 340-41 (7th Cir. 1974)) ("The burden is heavy to justify asking questions by interrogatories, even heavier to justify depositions."). Third, the court must ensure that the discovery will not subject absent class members to undue harassment or excessive taxing of their resources. *Robertson v. National Basketball Assoc.*, 67 F.R.D. 691, 700 (S.D.N.Y. 1975).

In *Krueger v. New York Telephone Co.*, 163 F.R.D. 446 (S.D.N.Y. 1995), the court adopted an even more restrictive standard for obtaining discovery from absent class members. It required parties seeking such discovery to first demonstrate that it was: (i) necessary for purposes of trial on issues common to the class; (ii) not undertaken with the purpose or effect of harassment, or of altering the membership of the class; and (iii) narrowly restricted to information directly relevant to issues to be tried with respect to the class action aspects of the case. *Id.* at 450; *see also Corpac v. Rubin & Rothman*, *LLC*, 2012 U.S. Dist. LEXIS 99977, at *5 (E.D.N.Y. July 18, 2012) ("although '[t]he Federal Rules of Civil Procedure do not provide for discovery from absent class members . . . . under the general authority provided to them in the class action context by Rule 23(d), federal courts have, on occasion, allowed such discovery to take place,' but 'those courts that have allowed such discovery have required the defendant to (1) make a strong showing of the need for the particular discovery and (2) narrowly tailor its requests to its particular need, so as not to burden the absent members.'") (quoting *In re Publ'n Paper Antitrust Litig.*, 2005 U.S. Dist. LEXIS 13681 (D. Conn July 5, 2005)); *Redmond v. Moody's Investor Serv.*, 1995 U.S. Dist. LEXIS 6277, at *3 (S.D.N.Y. May 10, 1995) ("the burden on the defendant to justify discovery of absent class members by means of deposition is particularly heavy") (citations omitted).

Under these rigorous standards, New GM cannot make a strong showing that discovery into absent class members, let alone interrogatories, document requests, and depositions, is absolutely

---

rely on in support of class certification briefing or at trial—protections that New GM does not propose here.

09-50026-mg    Doc 13773-3    Filed 10/10/16    Entered 10/10/16 11:23:15    Exhibit C
Case 1:14-md-02543-JMF   Document 3413   Filed 10/07/16   Page 7 of 8
Pg 8 of 16

The Honorable Jesse M. Furman
October 7, 2016
Page 7

necessary, unavailable elsewhere, and will not constitute undue harassment of consumers who are not named parties in this case. There are simply no special circumstances in this action that warrant departure from the general presumption that discovery from non-named class representatives is impermissible. *Khaliel v. Norton Healthcare*, *Inc. Retirement Plan*, 2012 U.S. Dist. LEXIS 181850, 2012 WL 6554714, at *1 (W.D. Ky. Nov. 20, 2012) (citing *Boynton v. Headwaters*, *Inc.*, 2009 U.S. Dist. LEXIS 94949, 2009 WL 3103161, at *1 (W.D. Tenn. Jan. 30, 2009)).

And while New GM proposes interrogatories on absent class members, Rule 33 limits such to "parties." Absent class members are not parties, and New GM should not be allowed to serve any interrogatories and attached document requests.

In earlier negotiations, New GM invoked *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation*, where limited discovery into class members was permitted. But *Toyota* is inapposite. There, the issue of whether a defect in class vehicles existed was hotly contested and the subject of very extensive discovery into, among other things, the prevalence of unintended acceleration in class vehicles. In contrast here, New GM has ***admitted*** that the relevant defects exist in ***all*** of the relevant vehicles; that is why the recalls were necessary. Thus, prevalence discovery is simply unnecessary.

Under either New GM's or Plaintiffs' discovery proposals, New GM will have discovery access to *245* named Plaintiffs. Plaintiffs believe that the most fair and efficient manner of proceeding in this case is to limit discovery to these individuals, who—unlike putative class members—elected to litigate against New GM. At this point, New GM has not sustained its heavy burden of demonstrating that invasive discovery of putative class members is necessary and unavailable elsewhere. Even so, Plaintiffs' proposal provides New GM with a "safety valve:" after taking discovery of the named Plaintiffs, New GM can seek leave of Court and attempt to show good cause as to why such discovery is necessary. *See* Plaintiffs' proposed order, ¶ 10.[4]

### 6. Expert Rebuttal Reports

New GM's position is that rebuttal reports should be allowed only if the Court authorizes by order upon a showing of good cause. However, Fed. R. Civ. P. 26(a)(2)(D) expressly authorizes rebuttal expert disclosures "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party . . . ." Plaintiffs believe that they should have the right, consistent with Rule 26(a)(3), to submit expert rebuttal reports, if needed—as has been the practice in the bellwether cases. This is reflected in Paragraph 12 of Plaintiffs' proposed order. New GM does not present any cogent arguments as to why the rule and prior practice should be abrogated.

---

[4] If the Court disagrees with Plaintiffs and authorizes—against the weight of authority—New GM to take discovery of putative class members, limits on that discovery must be enacted. First, a limit must be placed on the number of class members subject to this unsolicited and onerous intrusion. Second, the threat of sanctions should not be made, as New GM proposes. Third, irrelevant lines of inquiry should not be permitted, such as whether the class member reviewed the warranty booklet or attempted to sell the vehicle, and how the putative class member has used and maintained the vehicle.

09-50026-mg  Doc 13773-3  Filed 10/10/16  Entered 10/10/16 11:23:15  Exhibit C
Case 1:14-md-02543-JMF  Document 3413  Filed 10/07/16  Page 8 of 8
Pg 9 of 16

The Honorable Jesse M. Furman
October 7, 2016
Page 8

### 7. Supplementation of Expert Opinions Before Trial

Summary judgment and class certification rulings *almost always* alter the scope of the claims that are ultimately to be tried. Consequently, expert opinions should be supplemented prior to trial to take into consideration these rulings. As an example, the class certification ruling will determine the magnitude of class damage that the parties' experts will have to calculate. Plaintiffs' proposal therefore includes a date for the disclosure of supplemental expert reports (60 days after the Court issues the latter of its summary judgment or class certification orders). *See* Plaintiffs' proposed order, ¶ 15. New GM's view, by contrast, is that the parties should discuss the need for supplementation of experts. Plaintiffs believe that such reports will be necessary and that setting a date now makes sense.

### 8. Miscellaneous Briefing Deadline Differences

The parties have a slight disagreement over the briefing schedules in Paragraphs 2 and 13 of Plaintiffs' proposed order. Plaintiffs would like an extra week until January 20, 2017 in which to file their opposition to New GM's motion to dismiss given that the period includes the holidays. And for the same reason, Plaintiffs would like an extra week until January 19, 2018 in which to file their opposition to summary judgment motions. Plaintiffs have adjusted New GM's reply deadlines commensurately.

Respectfully,

/s/ Steve W. Berman
Steve W. Berman
**Hagens Berman Sobol Shapiro LLP**
1918 Eighth Ave.
Suite 3300
Seattle, WA 98101

    -and-

555 Fifth Avenue
Suite 1700
New York, NY 10017

/s/ Elizabeth J. Cabraser
Elizabeth J. Cabraser
**Lieff Cabraser Heimann & Bernstein, LLP**
275 Battery Street
29th Floor
San Francisco, CA 94111-3339

    -and-

250 Hudson Street
8th Floor
New York, NY 10013-1413

/s/ Bob Hilliard
Bob Hilliard
**Hilliard Muñoz Gonzales L.L.P.**
719 S Shoreline Blvd
Suite #500
Corpus Christi, TX 78401

cc:  The Honorable Martin Glenn
     MDL Counsel of Record

10440-11 905407 V1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates to All Actions*

14-MD-2543 (JMF)
14-MC-2543 (JMF)

**[PROPOSED] ORDER NO. __**

------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

**[Regarding Schedule for Motion Practice and Discovery
Related to Fourth Amended Consolidated Complaint]**

The Court, having received and reviewed the parties' letter briefs (Docket Nos. ____, ____), HEREBY ORDERS, ADJUDGES, AND DECREES that proceedings concerning the appeals from the Bankruptcy Court's December 4, 2015 Judgment and plaintiffs' Fourth Amended Consolidated Complaint ("FACC"), including motion practice and New GM's discovery of the named plaintiffs (the individuals and entities that are plaintiffs in the FACC) and absent putative class members (members of the putative class that have not been named in the FACC) in Phase Three, shall proceed as follows.[1]

1.     **Plaintiffs' Appeals from December 4, 2015 Bankruptcy Court Judgment**. Plaintiffs shall file one consolidated brief for the appeals from the December 4, 2015 Bankruptcy Court Judgment by **Monday, November 14, 2016**. New GM shall file its opposition brief by **Friday, December 16, 2016**. Plaintiffs shall file their consolidated reply brief by **Friday, January 13, 2017**. Plaintiffs' memorandum and New GM's opposition memorandum are limited to thirty (30) pages and plaintiffs' reply memorandum is limited to fifteen (15) pages.

---

[1] Nothing in this order shall be construed to waive any of the parties' preserved arguments, objections or rights with respect to the Second Circuit's July 13, 2016 Opinion. *In re Motors Liquidation Co.* (__ F.3d __, 2016 WL 3766237 (2d Cir. July 13, 2016)). To the contrary, all such arguments, objections, and rights are expressly preserved.

2.      **Motions to Dismiss the FACC**.  The next round of motion to dismiss practice shall be limited to the claims of the FACC named plaintiffs in the following jurisdictions: Alabama, California, the District of Columbia, Florida, Illinois, Louisiana, Maryland, Massachusetts, Michigan, Missouri, New York, Oklahoma, Pennsylvania, Texas, Virginia, and Wisconsin.  New GM shall file one motion to dismiss successor liability claims of the plaintiffs in the above-mentioned jurisdictions.  New GM's motions to dismiss must be filed by **Tuesday, December 2, 2016**.  Plaintiffs' oppositions must be filed by **Friday, January 20, 2017**.  New GM's replies must be filed by **Monday, February 20, 2017**.

3.      **Additional Motions to Dismiss**.  Nothing in Paragraph 2 shall preclude New GM from conducting additional motion to dismiss practice on the claims of named plaintiffs in states other than those listed above; however, any such additional motion to dismiss practice shall not occur until further order from the Court after the Court rules on the motions to dismiss described in this Paragraph.  Within 30 days after the Court's decision on the motions to dismiss the FACC, the parties shall meet and confer to discuss application of the Court's motion to dismiss orders to the named plaintiffs in the remaining states that have not been the subject of the prior motions to dismiss.  If disputes remain regarding the application of the Court's prior orders to the remaining states, and if New GM choose to file an additional motion to dismiss directed at plaintiffs in the remaining states, that motion shall be filed within 60 days after the Court's decision on the motion to dismiss the FACC.  The parties shall meet and confer and submit an agreed briefing schedule or competing proposals.

4.      **Motion Practice on Successor Liability**.  Motion practice on the validity of successor liability claims of named plaintiffs in the FACC will advance the resolution of remaining bankruptcy-related issues following the Second Circuit's July 13, 2016 Opinion and

2

provide important guidance to the parties in this litigation and related actions pending in other courts.  Accordingly, the parties shall meet and confer and provide to this Court by 12:00 p.m. EDT on Thursday, October 13, 2016, either an agreed order or competing letter briefs to address motion practice on the successor liability claims of named plaintiffs in the eight original jurisdictions subject to motion to dismiss practice on the Third Amended Consolidated Complaint ("TACC") and the eight additional states subject to motion to dismiss practice on the FACC.  For the avoidance of doubt, these 16 jurisdictions are: Alabama, California, the District of Columbia, Florida, Illinois, Louisiana, Maryland, Massachusetts, Michigan, Missouri, New York, Oklahoma, Pennsylvania, Texas, Virginia, and Wisconsin.

     5.     **No Answer to the FACC Required**.  New GM shall not be required to file an answer or any other response to the FACC unless and until further order of the Court.

     6.     **Plaintiff Fact Sheets**.  By **Friday, November 11, 2016**, each of the named plaintiffs in the following jurisdictions that were the subject of motion to dismiss practice on the Third Amended Consolidated Complaint (TACC) shall provide to New GM a substantially complete Plaintiff Fact Sheet and the documents requested therein:  California, the District of Columbia, Florida, Louisiana, Maryland, Missouri, Oklahoma, and Virginia.  (*See* Order No. 25 PDF pages 56-77 (Consumer Plaintiff Fact Sheet), 78-100 (Non-Consumer Plaintiff Fact Sheet).) Disclosure of Plaintiff Fact Sheets and associated documents for the remaining named Plaintiffs shall proceed in accord with the schedule set forth below in Paragraph 7.

     7.     **New GM's Discovery of Named Plaintiffs**.  New GM may conduct any form of discovery allowed under the Federal Rules of Civil Procedure ("FRCP") with respect to the named plaintiffs, including document requests, interrogatories, and depositions, as well as requests for admission.  Unless otherwise agreed to by the parties, the deadlines in the FRCP

3

shall apply regarding named plaintiffs' responses except that such discovery shall be staged. Until the Court issues its order on the motion to dismiss the FACC, discovery of the named plaintiffs is limited to the plaintiffs in the jurisdictions that were the subject of motion to dismiss practice on the TACC (and where such plaintiffs are named in the FACC). Discovery of plaintiffs in the states subject to the motion to dismiss the FACC may proceed after the Court issues its order on the motion to dismiss the FACC. Discovery of all remaining plaintiffs may occur after the parties have engaged in the meet and confer process referenced in Paragraph 3 of this Order.

    **8.**    **Depositions of Named Plaintiffs**. Subject to the limitations set forth in Paragraph 7, depositions of named plaintiffs shall be governed by the Orders previously entered by this Court, including Order No. 36, except that Order No. 36's limit of no more than 16 deponents per calendar month may be expanded to 25 deponents.

    **9.**    **Communications with Absent Putative Class Members**. Under FRCP 23 and the Constitution, parties and their counsel have the right to communicate with absent putative class members prior to class certification, if any. However, such communications shall be subject to the following procedures intended to protect the absent class members from being inappropriately influenced or subjected to harassment:

    a.    Lead Counsel, New GM's Counsel, and those acting on their behalf shall be permitted to initiate informal oral communications with any putative class member who is not already represented by counsel, if the procedures set forth below are followed.

    b.    Prior to speaking with putative class members, Lead Counsel, New GM's counsel, and their representatives shall read a "script" that will inform the individual that (i) litigation has been commenced against New GM regarding the ignition switch, power

4

steering, and side impact airbag recalls; (ii) the caller is contacting the individual on behalf of [plaintiffs or New GM]; (iii) the individual does not have any obligation to speak with the caller; (iv) the individual is free to end the conversation at any time; and (v) a toll-free number has been set up to allow class members to opt-out of receiving unsolicited communications concerning this litigation or to report harassment. The parties are to meet and confer on the precise language of the script, taking into consideration the foregoing guidelines, and submit an agreed proposed script or competing proposed scripts by **November 11, 2016**.

      c.      The parties shall set up a toll-free number administered by a neutral third party that putative class members can call to report harassment or to opt-out of receiving unsolicited contact concerning this litigation. The cost of administering the toll-free number shall be shared by the parties.

      d.      This Order shall not prevent New GM or its dealers from acting in the normal course of their business or in any way alter New GM's normal continuing business operations. Nor shall this Order in any way limit New GM or New GM's counsel's ability to communicate with authorized New GM dealers or New GM employees and similar persons who are not exclusively customers of New GM.

      e.      This Order shall not prevent Lead Counsel or other plaintiffs' counsel from acting in the normal course of their business by responding to inquiries made by putative class members or potential class representatives, including requests to be represented by counsel.

**10.**      **Discovery of Absent Class Members**. There shall be no discovery of absent class members until New GM has (i) taken discovery, including depositions, of the named

5

plaintiffs, (ii) files a motion with the Court seeking leave to take discovery of absent class members and demonstrates good cause as to why such discovery is necessary, and (iii) the Court grants the motion.

**11.     Fact Discovery Deadline**.  Fact discovery contemplated under Order No. 84 and under this order shall be completed by no later than **Friday, September 1, 2017**.

**12.     Expert Discovery**.  By no later than **Friday, September 15, 2017**, Lead Counsel shall disclose any experts (including, but not limited to class and merits experts) and serve expert reports.  By **Thursday, November 2, 2017**, New GM shall depose plaintiffs' experts, disclose any experts (including, but not limited to class and merits experts) and serve expert reports.  The parties are highly encouraged to discuss deposition scheduling as soon as experts are disclosed so as to avoid delays in the schedule.  By **Wednesday, December 14, 2017**, plaintiffs shall depose New GM's experts, serve any expert reports strictly limited to rebuttal of New GM's experts.

**13.     Summary Judgment Motion Practice**.  New GM shall file any motion for summary judgment by **Friday, December 15, 2017**.  Plaintiffs shall file their opposition by **Friday, January 19, 2018**.  New GM shall file its reply by **Friday, February 16, 2018**.  New GM's memorandum to its motion for summary judgment and plaintiffs' opposition memorandum are limited to seventy-five (75) pages, and New GM's reply memorandum is limited to thirty-five (35) pages.

**14.     Class Certification Motion Practice**.  Plaintiffs shall file any motion for class certification by **Friday, December 15, 2017**.  New GM shall file their opposition by **Thursday, February 15, 2018**.  Plaintiffs shall file their reply by **Friday, March 9, 2018**.  Plaintiffs' memorandum to their class certification motion and New GM's opposition memorandum are limited to ninety (90) pages, and plaintiffs' reply memorandum is limited to fifty (50) pages.

10440-11 906024 V1

15. **Supplemental Expert Discovery**. By no later than 60 days after issuance of the latter of the Court's order on motions for summary judgment or the motion for class certification, the parties shall (i) disclose any supplemental experts and expert reports that may be necessary in light of the Court's summary judgment and class certification orders and (ii) propose a schedule for the discovery of supplemental expert opinions and rebuttal reports.

16. **Summary of Economic Loss Claims Deadlines**. For ease of reference, the chart attached as Exhibit 1 to this Order summarizes all of the deadlines set forth above for next steps related to the economic loss claims in the MDL. If any party should later move to amend any of these deadlines, that party shall submit as part of the letter motion requesting the extension a revised version of this chart with the proposed amendments.

SO ORDERED

Date: October ___, 2016                       _____
       New York, New York                                       JESSE M. FURMAN
                                                             United States District Judge

10440-11  906024 V1