CASE MANAGEMENT CONFERENCE:  November 16, 2016 at 11:30 a.m.

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted pro hac vice)
Andrew B. Bloomer, P.C. (admitted pro hac vice)
Attorneys for General Motors LLC

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (MG) |
| f/k/a General Motors Corp., *et al*. | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

-------------------------------------------------------------x

**STATUS REPORT PURSUANT TO ORDER
SETTING CASE MANAGEMENT CONFERENCE [DKT. NO. 13775]**

General Motors LLC ("**New GM**"), by its undersigned counsel, respectfully submits this status report ("**Status Report**") pursuant to the Court's *Order Setting Case Management Conference for 11:30 a.m., November 16, 2016*, entered on October 18, 2016 [Dkt. No. 13775] ("**Scheduling Order**").[1]  As directed by the Scheduling Order, this Status Report will identify "(i) the issues that counsel agree must be addressed by this Court, (ii) to the extent that counsel

---

[1] A copy of the Scheduling Order is attached hereto as **Exhibit "A."**

1

DMSLIBRARY01\29667944.v1

do not agree, the issues that different counsel believe must be addressed by this Court, and (iii) the discovery that counsel believe should be permitted." Scheduling Order, at 2.

**Background**

1.  At a Status Conference held on July 18, 2016, this Court directed the parties to "meet and confer" to identify and suggest procedures to address all issues that the Court still needs to decide in view of (a) the Second Circuit Court of Appeals' July 13, 2016 Opinion, *Elliott et al. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016) ("**Opinion**"), and (b) other matters related to the Sale Order and other orders entered by the Bankruptcy Court.

2.  On August 3, 2016, counsel for New GM had an initial telephonic conference with (i) Brown Rudnick LLP, and Stutzman, Bromberg, Esserman & Plifka, P.C., as attorneys and Designated Counsel selected by Co-Lead Counsel to address bankruptcy matters in connection with Ignition Switch Plaintiffs[2] asserting economic loss claims, certain Second Stage Ignition Switch Plaintiffs[3] asserting economic loss claims, and certain Non-Ignition Switch

---

[2]  The term "**Ignition Switch Plaintiffs**" as used herein by New GM refers to plaintiffs (either asserting economic loss claims, or claims based on personal injury or wrongful death that arose from accidents that occurred either prior to or after the closing of the 363 Sale) whose claims are based on or arise from the Ignition Switch in a Subject Vehicle (as such terms are defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed with the Bankruptcy Court on August 8, 2014 [Dkt. No. 12826], at 3) ("**Stipulations of Fact**"). For the Court's convenience, a copy of the Stipulations of Fact (without exhibits) is annexed to this Status Report as **Exhibit "B."**

The term "**Non-Ignition Switch Plaintiffs**" as used herein by New GM refers to all plaintiffs (whether asserting economic loss claims, or personal injury and/or wrongful death claims based on accidents that occurred prior to or after the closing of the 363 Sale) other than Ignition Switch Plaintiffs. Certain Core Parties have raised issues with these defined terms, as set forth in this Status Report.

The Elliott, Sesay and Bledsoe Plaintiffs object to these definitions because they assert such definitions encompass parties who may have sued New GM but who are not now before the Court. These concerns arguably do not apply to the Elliott, Sesay and Bledsoe Plaintiffs who have been participating in the proceedings before the Bankruptcy Court since the summer of 2014.

[3]  Economic Loss Designated Counsel have defined the term "**Second Stage Ignition Switch Plaintiffs**" as plaintiffs represented by Economic Loss Designated Counsel that are asserting economic loss, personal injury or wrongful death claims based on or arising from defective ignition switches in vehicles subject to Recall Nos.

2

Plaintiffs[4] asserting economic loss claims (collectively, "**Economic Loss Designated Counsel**"); (ii) Hagens Berman Sobol Shapiro LLP, as attorneys and Co-Lead Counsel for Ignition Switch Plaintiffs, certain Second Stage Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs in MDL 2543 pending before District Judge Furman; and (iii) Goodwin Procter LLP, as attorneys and Designated Counsel selected by Co-Lead Counsel to address bankruptcy matters in connection with Ignition Switch Pre-Closing Accident Plaintiffs[5] ("**Personal Injury Designated Counsel**"), and as counsel to certain Ignition Switch Post-Closing Accident Plaintiffs[6] and certain Non-Ignition Switch Post-Closing Accident Plaintiffs.[7] The initial "meet and confer" focused on identifying potential issues for the Court's consideration, and the procedures for raising those matters with the Court.

3. After the initial "meet and confer," New GM prepared a letter to be sent to various parties in interest establishing proposed procedures designed to identify issues this Court may need to address in light of the Opinion and matters related to the Sale Order and other orders entered by the Bankruptcy Court, and to establish procedures for this Court to resolve same.

---

14v355, 14v394, 14v400, and 14v346. New GM asserts that such plaintiffs are not Ignition Switch Plaintiffs, but are a sub-set of Non-Ignition Switch Plaintiffs.

[4] Economic Loss Designated Counsel have defined the term "Non-Ignition Switch Plaintiffs" to refer to plaintiffs represented by Economic Loss Designated Counsel that are asserting economic loss, personal injury or wrongful death claims based on or arising from an alleged defect, other than the ignition switch in vehicles subject to Recall Nos. 14v047, 14v355, 14v394, 14v400, and 14v346.

[5] The term "**Ignition Switch Pre-Closing Accident Plaintiffs**" refers to plaintiffs asserting personal injury or wrongful death claims based on or arising from the Ignition Switch in a Subject Vehicle (as such terms are defined in the Stipulations of Fact) in connection with an accident that occurred prior to the closing of the sale from Old GM to New GM (*i.e.*, July 10, 2009).

[6] The term "**Ignition Switch Post-Closing Accident Plaintiffs**" refers to plaintiffs asserting personal injury or wrongful death claims based on or arising from the Ignition Switch in a Subject Vehicle (as such terms are defined in the Stipulations of Fact) in connection with an accident that occurred after the closing of the sale from Old GM to New GM (*i.e.*, July 10, 2009).

[7] The term "**Non-Ignition Switch Post-Closing Accident Plaintiffs**" refers to plaintiffs asserting personal injury or wrongful death claims that are not based on or arise from the Ignition Switch in a Subject Vehicle (as such terms are defined in the Stipulations of Fact) in connection with an accident that occurred after the closing of the sale from Old GM to New GM (*i.e.*, July 10, 2009).

3

New GM provided drafts of this letter to Economic Loss Designated Counsel, who reviewed and provided comments. After such comments were incorporated, the letter was circulated on August 26, 2016 ("**August 26 Letter**")[8] to (i) Lead Counsel in MDL 2543 and its Personal Injury Designated Counsel; (ii) plaintiffs who are the subject of pending New GM motions to enforce the Sale Order; (iii) the GUC Trust and GUC Trust Unitholders; (iv) Gary Peller, on behalf of the *Elliott*, *Sesay* and *Bledsoe* Plaintiffs; (v) Josh Davis, on behalf of Doris Powledge-Phillips;[9] and (vi) the *Groman* Plaintiffs (including New GM, collectively, the "**Core Parties**").[10] The Core Parties were selected because New GM and Economic Loss Designated Counsel believed that it would have been unwieldy and inefficient to seek input from a wider group as an initial step with respect to the development of an issues list and suggested procedures for resolution.

4. In the August 26 Letter, New GM asked the Core Parties to identify and provide lists of issues ("**Initial Issues Lists**") that they believed the Court should address. The following parties provided Initial Issues Lists: (i) Brown Rudnick (as Economic Loss Designated Counsel); (ii) Goodwin Proctor (as Personal Injury Designated Counsel and for certain Ignition Switch Post-Closing Accident Plaintiffs); (iii) Gary Peller, on behalf of the *Elliott*, *Sesay* and *Bledsoe* Plaintiffs; (iv) Josh Davis, on behalf of Doris Powledge-Phillips; (v) the *Groman* Plaintiffs; (vi)

---

[8] A copy of the August 26 Letter was previously provided to the Court on September 1, 2016, and for the Court's convenience, is annexed to this Status Report as **Exhibit "C."**

[9] The Bankruptcy Court's ruling that Doris Powledge-Phillips lacks standing to seek relief from a settlement she reached with Old GM because she previously sold and assigned all of her claims relating to the accident after her settlement was effectuated, which ruling was affirmed by the District Court, is currently on appeal in the Second Circuit. *See Phillips v. General Motors LLC, et al.*, No. 16-2472-bk (2d Cir.).

[10] Counsel for Benjamin Pillars, a personal injury claimant who is presently involved in an appeal of two Bankruptcy Court's orders, dated July 29, 2015 and September 9, 2015 ("**Pillars Appeal**"), was later included in the correspondence and meet and confer on the bankruptcy issues, and is therefore included as a Core Party.

4

the *Pope* Plaintiffs (who were subject to New GM's Second June Motion to Enforce[11]); (vii) the *Pilgrim* Plaintiffs (who were the subject of an earlier motion to enforce filed by New GM[12]); and (viii) Tab Turner (who has cases involving Post-Closing Accidents alleging a Non-Ignition Switch defect). The GUC Trust and GUC Trust Unitholders did not provide an Initial Issues List, but stated that they were reviewing the Initial Issues Lists provided to them, and reserved the right to raise additional issues during the "meet and confer" process.

5. After the Initial Issues lists were circulated amongst the Core Parties, a further "meet and confer" was held on September 13, 2016 ("**September 2016 Meet and Confer**"), where the parties present expressed their views on the identified issues, and how to proceed with a resolution regarding same. At the conclusion of the September 2016 Meet and Confer, it was generally agreed that the next step would be to review and analyze the Fourth Amended Consolidated Complaint ("**FACC**") filed by Lead Counsel in MDL 2543 on September 15, 2016. *See* Fourth Amended Consolidated Complaint, *In re General Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF) (S.D.N.Y. Sept. 15, 2016) (District Ct. Dkt. No. 3356). New GM contends that there are issues raised in, or related to, the FACC, as well as in complaints filed in lawsuits in state and federal courts (outside of MDL 2543), that this Court should address.

6. After the FACC was filed, there were letters written to Judge Furman by counsel in MDL 2543 regarding the impact of the Opinion on matters pending in MDL 2543. Thereafter, a status conference was held in MDL 2543 on October 13, 2016, which addressed certain matters

---

[11] "**Second June Motion to Enforce**" refers to the *Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction, And The Rulings In Connection Therewith, With Respect To Plaintiffs Identified On Schedule "1" Attached Hereto*, dated June 24, 2016 [Dkt. No. 13655].

[12] *See Motion Of General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction, And The Bankruptcy Court's Rulings In Connection Therewith (Pilgrim Putative Class Action)*, dated January 19, 2016 [Dkt. No. 13584]. The *Pilgrim* plaintiffs assert that they are neither "Non-Ignition Switch" nor "Ignition Switch" Plaintiffs since they were not a party to the Bankruptcy Court's decisions, and they are not in MDL 2543. The *Pilgrim* plaintiffs refer to their claims as "Corvette Economic Loss Claims."

5

that have a bearing on the issues that may be presented to this Court. Such issues include, *inter alia*, the establishment of briefing schedules for (i) motion practice on the viability of successor liability claims of named Ignition Switch Plaintiffs in the FACC (for 16 States) ("**Successor Liability Issue**"),[13] (ii) summary judgment and class certification issues regarding the FACC, and (iii) certain plaintiffs' appeals of the Bankruptcy Court's November 2015 Decision[14] and December 2015 Judgment[15] regarding whether they are barred from suing New GM with regard to their failure to file proofs of claim in the Old GM bankruptcy case.

7.    After the Scheduling Order was issued, on October 20, 2016, a final "meet and confer" was held with the Core Parties at which time New GM and other Core Parties proposed that certain issues should be decided first by this Court as threshold issues, without the need of additional discovery (collectively, the "**2016 Threshold Issues**"), with consideration of other potential issues, including discovery ("**Deferred Issues**"), deferred until the 2016 Threshold Issues, and other matters, were resolved. New GM agreed to distribute a draft of a status report to a subset of the Core Parties (which it did on October 27, 2016). Several Core Parties provided comments on the draft status report between November 1, 2016 and November 4, 2016. On November 8, 2016, New GM circulated a revised draft of the Status Report to all Core Parties, asking for any additional comments by 12:00 noon (Eastern) on November 10, 2016. New GM has attempted to incorporate the comments received, or to note where there are disagreements in this Status Report. In many instances where there was a disagreement, New GM asked the other

---

[13]    The "Successor Liability Issue" as used herein by New GM refers to the viability of any "mere continuation" theory or other exception to the general rule that New GM, as an asset purchaser, does not have successor liability for the liabilities of Old GM. These legal challenges to the general bar on successor liability have also been alleged by certain Non-Ignition Switch Plaintiffs (*i.e.*, all other plaintiffs that are not Ignition Switch Plaintiffs).

[14]    The "**November 2015 Decision**" refers to the *Decision On Imputation, Punitive Damages, And Other No-Strike And No-Dismissal Pleadings Issues*, entered by the Bankruptcy Court on November 9, 2015 [Dkt. No. 13533].

[15]    The "**December 2015 Judgment**" refers to the *Judgment*, entered by the Bankruptcy Court on December 4, 2015 [Dkt. No. 13563].

6

Core Party to suggest language that set forth their view, and New GM has generally inserted such language, as quoted, in this Status Report. New GM does not agree with the positions taken in the quoted language. However, in order not to burden this Court with an unduly lengthy Status Report, New GM will set forth its position related to the quoted language in accordance with the briefing schedule set by this Court.

8. New GM and certain Core Parties, including without limitation Economic Loss Designated Counsel, believe that deciding the 2016 Threshold Issues and then the Deferred Issues is a prudent and measured approach to addressing the issues before this Court, particularly in light of (i) New GM's intent to timely file a petition for a writ of *certiorari* with the United States Supreme Court in connection with the Opinion, and the desire to avoid unnecessary burdens and significant expenses associated with this Court deciding issues prematurely if *certiorari* is granted and the Supreme Court vacates the Opinion; (ii) motion practice on the Successor Liability Issue proceeding on an aggressive briefing schedule in the District Court in MDL 2543; and (iii) the appeal of the Bankruptcy Court's November 2015 Decision and December 2015 Judgment proceeding on an aggressive briefing schedule in the District Court. As noted herein, certain Core Parties disagree with certain of the 2016 Threshold Issues and Deferred Issues.

9. The following reflects (i) how New GM and certain of the other Core Parties propose to proceed with the next steps in this matter, (ii) a discussion of the 2016 Threshold Issues and (iii) a discussion of the Deferred Issues. This Status Report identifies any areas of disagreement.

A. **Proposed Next Steps**

1. After the Case Management Conference scheduled for November 16, 2016, this Court should issue an Order to Show Cause ("**OSC**"), setting forth the list of

issues this Court will need to decide, and the procedures for resolving the same. In the OSC, there would also be the following notice provision to other plaintiffs, including Non-Ignition Switch Plaintiffs seeking personal injuries and economic losses, who have commenced lawsuits against New GM:

> If any plaintiff has any objection to the procedures set forth in this Order to Show Cause, such plaintiff must file an objection in writing with the Bankruptcy Court within twenty (20) days of the issuance of this Order to Show Cause ("**Objection**"). Unless an Objection is filed, all plaintiffs receiving notice of the Order to Show Cause will be bound by the terms thereof and the determinations made pursuant thereto. If any plaintiff believes there are issues that should (or should not) be presented to the Court relating to any lawsuit that will not (or will) otherwise be briefed and argued in accordance with this Order to Show Cause, such plaintiff must set forth that position, with specificity, in his or her Objection. The Court will decide whether a hearing is required with respect to any Objection timely filed and, if so, will promptly notify the parties involved.

2. New GM and the Core Parties will use their best efforts to draft and agree upon a form of OSC that reflects the Court's decisions at the November 16, 2016 Status Conference. If a form of OSC cannot be agreed upon within five (5) business days after the Status Conference, New GM and the Core Parties will submit to the Court their own proposed forms of an OSC.

3. Once the OSC is issued by the Court, it will be served directly on all plaintiffs that have pending lawsuits against New GM that involve Old GM vehicles. By serving the OSC in such a fashion, it will put all plaintiffs on notice of all issues that will be addressed by the Court, the resolution of which will be binding on them.

**Parties' Who Oppose these Proposed Next Steps**

**Elliott, Sesay and Bledsoe Plaintiffs Position:** "The Elliott, Sesay and Pope Plaintiffs object to the OSC procedure. These proceedings involve only the parties to the consolidated contested matters initiated by New GM's three 2014 motions to enforce the Sale Order against specific plaintiffs who New GM asserted had filed lawsuits that violated the Sale Order and Injunction. Those proceedings never involved broad categories of absent parties, as no class has been certified and New GM, as a non-debtor, initiated in personam proceedings against identified parties. These proceedings cannot be made preclusive by pronouncements such as those New GM proposes, nor by serving the OSC on Plaintiffs in cases against New GM. There is no reason to depart from the usual requirement that the party desiring to make a judgment preclusive on others is required to bring such parties before the court in a procedurally appropriate way, i.e., by initiating an adversary proceeding or contested matter to enforce the rights New GM claims. New GM

8

DMSLIBRARY01\29667944.v1

should not be permitted to turn these proceedings into a declarative judgment proceeding by simply serving an Order to Show Cause on parties who have never been brought into this Court. My clients and others are before the Bankruptcy Court by virtue of New GM's motions to enforce against them. Proceedings after appellate review of the disposition of those motions to enforce cannot enlarge the Bankruptcy Court's authority over litigation in other fora. If New GM wants to enforce the Sale Order against other parties, it should be required properly to being them before the Court. Designated Counsel in prior proceedings represented solely the 'certain' Plaintiffs for whom they entered appearances in these proceedings. Accordingly, the entire 'OSC' process in the Draft Status Report should be abandoned. Only the rights of parties to these proceedings will be determined by them, not any global determination of categories of claims to which New GM is exposed."

**Pope Plaintiffs Position:**  Join in the Elliott, Sesay and Bledsoe Plaintiffs' position, objecting to the OSC procedures.

B.   **2016 Threshold Issues to Be Decided by the Court[16]**

The following are the 2016 Threshold Issues that New GM and certain Core Parties, including without limitation Economic Loss Designated Counsel, propose this Court should first decide:[17]

1.   **Pillars Issue**: Are Ignition Switch Plaintiffs only those plaintiffs that are asserting claims against New GM based on an Ignition Switch in a Subject Vehicle (as each term is defined in the Stipulations of Fact), and all other plaintiffs are Non-Ignition Switch Plaintiffs (as that term is used in the November 2015 Decision/December 2015 Judgment)?

   This was an issue that Judge Furman asked this Court to decide in connection with the Pillars appeal before him. *See* MDL Order, dated September 7, 2016 [MDL Dkt. No. 3339]("the question of what category Pillars falls within is one for either the Second Circuit (on petition for rehearing or rehearing en banc) or the Bankruptcy Court to resolve (at least in the first instance). . . . In the meantime, the parties are directed to bring this Order and the question of what category Pillars falls within to the Bankruptcy Court's attention as among those issues that the Bankruptcy Court may want to address on remand if the Circuit's decision stands.").

   **Procedure:**  New GM will brief this issue on a scheduled established by the Court, with any plaintiff that New GM asserts is a Non-Ignition Switch Plaintiff

---

[16]   The GUC Trust and Unitholders reserve their right to participate in any briefing on the 2016 Threshold Issues and the Deferred Issues.

[17]   The language contained in the 2016 Threshold Issues has been drafted by New GM. Other Core Parties provided comments on the language used in the 2016 Threshold Issues and New GM tried to accommodate as many comments as possible. However, the language used in the 2016 Threshold Issues has not been fully agreed to by the other Core Parties.

9

DMSLIBRARY01\29667944.v1

having an opportunity to respond. This issue and the briefing schedule would be included in the OSC, which would be served on all known plaintiffs that New GM asserts are Non-Ignition Switch Plaintiffs who have commenced a lawsuit against New GM.

**Economic Loss Designated Counsel Position:** Object to the inclusion of this issue as a separate issue from the Appeal/Waiver Issue Regarding Independent Claims. Economic Loss Designated Counsel's position is more fully set forth in **Exhibit "D"** attached hereto.

**Pope Plaintiffs Position:** "The Pope Plaintiffs object to the inclusion of the 'Pillars Issue' as stated because the issue is highly misleading and an improper *after the fact* attempt by New GM to **bind** plaintiffs who fall within New GM's *totally new and expansive* definition of 'Non-Ignition Switch Plaintiffs' (stated in footnote 2 of the Status Report) to prior bankruptcy court decisions which had a completely different and more narrow definition of 'Non-Ignition Switch Plaintiffs.' For example, the April 2015 Decision and June 2015 Judgment defined 'Non-Ignition Switch Plaintiffs' as only *Economic Loss* plaintiffs many of whom did not even have a defect at all and were essentially arguing that the ignition switch defect caused damage to 'the brand' resulting in *Economic Loss* to them. The November 2015 Decision only used the phrase 'Non-Ignition Switch Plaintiffs' twice and did not define the term. The December 2015 Judgment defined 'Non-Ignition Switch Plaintiffs' in exactly the same way that the Bankruptcy Court defined this term in the June 2015 Judgment. In the framing of this issue, New GM now seeks to rewrite prior decisions and judgments by creating a new definition for 'Non-Ignition Switch Plaintiffs' and use that new definition to bind the Pope Plaintiffs and other Similarly Situated Plaintiffs[18] to previous rulings."

**Elliott, Sesay and Bledsoe Plaintiffs Position:** Join in the Pope Plaintiffs' position.

**Pillars Position:** Does not agree with New GM's characterization of this issue.

2. **The Appeal/Waiver Issue Regarding Independent Claims:** Are all Non-Ignition Switch Plaintiffs (other than those Non-Ignition Switch Plaintiffs represented by Mr. Peller asserting pre-Sale accident claims or economic loss claims) barred from asserting "Independent Claims" against New GM because

---

[18] When used in connection with the Pope Plaintiffs' position, "Similarly Situation Plaintiffs" refers to personal injury/wrongful death plaintiffs with cases arising out of post-sale accidents which involve used cars purchased post-sale but do not involve ignition switch defects.

10

DMSLIBRARY01\29667944.v1

they purportedly did not appeal the April 2015 Decision/June 2015 Judgment[19] and therefore the Opinion does not apply to them?

Similarly, are all Non-Ignition Switch Plaintiffs (including any Non-Ignition Switch Plaintiffs represented by Mr. Peller for post-closing accident claims) precluded from asserting "Independent Claims" against New GM because they did not appeal the December 2015 Judgment that barred them from asserting Independent Claims against New GM. New GM's position is that the Second Circuit Opinion did not affect the Bankruptcy Court's subsequent ruling (the December 2015 Judgment) on this issue.

> **Goodwin Proctor Position:** "First, with respect to the April 2015 Decision/June 2015 Judgment, New GM's phrasing suggests that the Non-Ignition Switch Defect Plaintiffs were parties to the briefing on the Four Threshold Issues, that the Non-Ignition Switch Defect Plaintiffs were made parties to, or bound by, the June 2015 Judgment, and/or that the June 2015 Judgment established procedures to bar such claims. Goodwin Proctor's clients dispute the foregoing contentions. Second, with respect to the December 2015 Judgment, the phrasing suggests that parties that chose to not participate in the briefing set up by the September 2015 Scheduling Order were nonetheless bound by the results of such briefing as set forth in the December 2015 Judgment, that the non-participating parties were compelled to participate in such briefing without benefit of a motion directed to them or other form of process that would compel their participation, that the non-participating parties were adequately warned by New GM or the bankruptcy court of the potential consequences of not participating in the briefing, that the terms of the September 2015 Scheduling Order were directed to Independent Claims of Non-Ignition Switch Defect Plaintiffs, that the terms of the December 2015 Judgment permanently barred rather than temporarily barred the claims of the Non-Ignition Switch Defect Plaintiffs, and/or that the Opinion does not resolve the basic issue in favor of the Non-Ignition Switch Defect Plaintiffs. Goodwin Proctor's clients dispute the foregoing contentions.
>
> Goodwin Procter, as counsel to certain Non-Ignition Switch Post-Closing Accident Plaintiffs, submit this issue as follows: 'Are Non-Ignition Switch Plaintiffs barred from asserting 'Independent Claims' against New GM because they purportedly did not appeal the April 2015 Decision/June 2015 Judgment or the November 2015 Decision/December 2015 Judgment or under the Opinion or otherwise, are all Plaintiffs permitted to pursue Independent Claims?'"

---

[19] The "**April 2015 Decision**" refers to the *Decision On Motion To Enforce Sale Order*, entered by the Bankruptcy Court on April 15, 2015 [Dkt. No. 13109]. The "**June 2015 Judgment**" refers to the Judgment, entered by the Bankruptcy Court on June 1, 2015 [Dkt. No. 13177].

11

DMSLIBRARY01\29667944.v1

**Economic Loss Designated Counsel Position:** Economic Loss Designated Counsel's position is set forth in **Exhibit "D"** attached hereto.

**Pilgrim Plaintiffs Position:** "The Corvette Economic Loss Claims were not a part of the bankruptcy proceedings, nor did the *Pilgrim* plaintiffs receive notice of the bankruptcy proceedings. These Corvette Economic Loss claims plaintiffs were only given notice of the bankruptcy proceedings when New GM filed a Motion to Enforce the Sale Order on [January 19, 2016], long after the June and December 2015 judgments. Accordingly, plaintiffs with Corvette Economic Loss Claims had no obligation to appeal either judgment. Moreover, plaintiffs with Corvette Economic Loss Claims opposed New GM's Motion to Enforce the Sale Order. The *Pilgrim* plaintiffs and New GM stipulated to stay the Corvette Economic Loss Claims plaintiffs' action based on the understanding that the Second Circuit decision would impact Corvette Economic Loss Claims. Corvette Economic Loss Claims plaintiffs should get the benefit of Second Circuit decision which plainly applies to these claims, as the parties originally anticipated."

**Elliott, Sesay and Bledsoe Plaintiffs Position:** "New GM's waiver issue is drafted as if all Plaintiffs, even those never before this Court, could be precluded by a failure to appeal the Bankruptcy Court's rulings. That position is absurd and its facial lack of merit suggests it should not be treated as a threshold issue after the Court of Appeal's mandate. New GM's waiver argument in general should not be treated as threshold, as it only involves the claims of the particular parties who were before the Court and participated in the litigation of the 2014 identified Threshold Issues. Since other parties who were not before the Bankruptcy Court now assert claims on behalf of themselves and putative classes in the MDL proceedings, there is no urgency to deciding which of the particular parties who were before the Court earlier might be precluded by those proceedings. At the least, the issue should be reframed to be limited to the parties who were before the Court, as follows: Are certain Non-Ignition Switch Plaintiffs, the State plaintiffs, and/or certain Second Stage Ignition Switch Plaintiffs who were before the Bankruptcy Court in the consolidated contested matters initiated [by] New GM's motions to enforce the Sale Order and the adversary proceeding initiated by the Groman Plaintiffs barred from asserting 'Independent Claims' against New GM because they purportedly did not appeal the April 2015 Decision/June 2015 Judgment or the November 2015 Decision/December 2015 Judgment?"

They also join in Goodwin Proctor's position and the Pope Plaintiffs' position.

12

> **Pope Plaintiffs Position:** "Because of New GM's attempt to create a new and overly-expansive definition of 'Non-Ignition Switch Plaintiffs,' the framing of this issue unfairly groups together plaintiffs who should not necessarily be treated the same. The Pope Plaintiffs and other Similarly Situated Plaintiffs cannot be barred for not appealing the April 2015 Decision/June 2015 Judgment because they were not given any notice, were not parties to the briefing, and neither the decision nor the judgment applied to them because they did not fall within the bankruptcy court's definition of 'Non-Ignition Switch Plaintiffs.' Furthermore, New GM appears to seek to use prior definitions of the term 'Independent Claims' to automatically exclude these claims being brought by any plaintiffs other than Ignition Switch Defect Plaintiffs which again is wholly improper and contrary to the express language of the Opinion. Finally, New GM gave the Pope Plaintiffs no notice that the fall 2015 briefing was an attempt to impose different rules on the Pope Plaintiffs than applied to the Ignition Switch Defect Plaintiffs. In fact, New GM advised the Pope Plaintiffs exactly the opposite. After the November 2015 Decision was rendered, New GM did not include the Pope Plaintiffs on any of its communications with the bankruptcy court regarding the judgment, the Pope Plaintiffs were not included in any discussions regarding the language in the judgment, and the judgment was never served on the Pope Plaintiffs. For these reasons, the Pope Plaintiffs fail to understand how New GM can even make a colorable argument that the Opinion does not apply to them."

> **Procedure:** New GM will brief this issue on a schedule established by the Court, with Non-Ignition Switch Plaintiffs having an opportunity to respond. This issue and the briefing schedule would be included in the OSC, which would be served on all known Non-Ignition Switch Plaintiffs who have commenced a lawsuit against New GM.

>> **Elliott, Sesay and Bledsoe Plaintiffs Position:** "The OSC procedure attempts to enlarge this proceeding beyond the parties who are formally before the Court. The procedure should not include the OSC procedure. If New GM desires to enforce the Sale Order against other parties not before the Court, it must initiate appropriate proceedings to do so."

3. **Used Car Purchasers**: Is the Opinion's holding that claims held by Used Car Purchasers are not covered by the Sale Order because they had no contact or relationship with Old GM limited to (a) only those parties that appealed the April 2015 Decision/June 2015 Judgment to the Second Circuit, and (b) Independent Claims asserted by Used Car Purchasers based solely on New GM conduct, or, can Used Car Purchasers also assert claims that are based on Old GM conduct derivative of the original owner's claims (provided they are not otherwise Assumed Liabilities)?

13

**Procedure:** New GM will brief this issue on a schedule established by the Court, with Used Car Purchasers having an opportunity to respond. This issue and the briefing schedule would be included in the OSC, which would be served on all known Used Car Purchasers who have commenced a lawsuit against New GM.

> **Economic Loss Designated Counsel, Goodwin Proctor, GUC Trust and Unitholders Positions:** As to Used Car Purchasers, the Opinion's holding that the Sale Order "does not cover the Used Car Purchasers' claims" and that the Second Circuit "cannot, consistent with bankruptcy law, read the Sale Order to cover their claims" applies to all Used Car Purchasers and to all of their claims. *See* Opinion at 42.
>
> **Elliott, Sesay and Bledsoe Plaintiffs Position:** Agree with the GUC Trust and Unitholders and the Pope Plaintiffs position. New GM's attempt to relitigate the issue it lost in the Court of Appeals should be rejected. It does not qualify as a "threshold issue."
>
> **Pope Plaintiffs Position:** "The Pope Plaintiffs object because this issue is based on a false premise, at least insofar as New GM seeks to apply this issue to the Pope Plaintiffs and other Similarly Situated Plaintiffs. The Pope Plaintiffs were not given any notice and not a party to any of the briefing which led to the April 2015 Decision/June 2015 Judgment. New GM has no basis on which to argue that the Pope Plaintiffs and other Similarly Situated Plaintiffs are bound this decision and judgment; therefore, there is no reason to brief this issue. Furthermore, both the April 2015 Decision and the June 2015 Judgment contained definitions of 'Non-Ignition Switch Plaintiffs' which did <u>not</u> include the Pope Plaintiffs and other Similarly Situated Plaintiffs. For these reasons, the fact that the Pope Plaintiffs and other Similarly Situated Plaintiffs did not appeal the April 2015 Decision/June 2015 Judgment has absolutely no relevance to the impact of the Opinion on the Pope Plaintiffs and other Similarly Situated Plaintiffs."

4. **Late Proof of Claim:** Can the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs satisfy the requirements for seeking authority to file late proof(s) of claim and, if so, are such claims equitably moot or otherwise barred under applicable law?

   **Procedure:** The Economic Loss Designated Counsel, for Ignition Switch Plaintiffs, and the Personal Injury Designated Counsel, for Ignition Switch Pre-Closing Accident Plaintiffs (and others if they so choose), will file a motion or motions for leave to file late proofs of claims by a date determined by the Court, which would be set forth in the OSC. Upon such motion or motions being filed, New GM's position is that the Court would stay the prosecution of the motions and certify the Bankruptcy Court's equitable mootness ruling contained in the April 2015 Decision/June 2015 Judgment to the Second Circuit Court of Appeals

14

because the filing of such motions creates a case or controversy sufficient for the Second Circuit to hear the appeal.

**Economic Loss Designated Counsel and Personal Injury Designated Counsel Position:** They assert the issue to be briefed should be framed as set forth in **Exhibit "D"** attached hereto. In addition, they object to the direct certification to the Second Circuit of the Bankruptcy Court's equitable mootness ruling.

**GUC Trust and Unitholders Position:** The GUC Trust and Unitholders reserve their right to request additional briefing before the bankruptcy court and before any court hearing this appeal. In the event the Second Circuit determines that such claims are not equitably moot, prosecution of the motions would proceed in the Bankruptcy Court and the GUC Trust, GUC Trust Unitholders and/or New GM reserve all of their rights to raise any issues in response to the motions.

Other counsel that are interested in the resolution of this issue may have different views as to how matters should proceed in the event motions for leave to file late proofs of claim are filed in this Court.

5. If any plaintiff is violating prior rulings of the Bankruptcy Court, including without limitation the Sale Order, the November 2015 Decision/December 2015 Judgment, New GM will file a motion or motions with the Court seeking to enforce such rulings. There are pending motions to enforce in this Court and, accordingly, this Court should decide if the *status quo* can or should be maintained for such actions while it decides the other 2016 Threshold Issues.

**Elliott, Sesay and Bledsoe Plaintiffs Position:** "New GM's statement suggests that it may move to enforce the November 2015 Decision/December 2015 Judgment against 'any plaintiff,' even ones not properly before the Court when those prior rulings were issued. There is no basis for the application of those in personam rulings to other parties who were not before the Court and did not participate in the litigation of the issues. In addition, New GM should not be permitted to attempt to enforce the Sale Order against any assertion of Independent Claims, Future Claims (of used car purchasers and post-sale accident victims) or any claims of Ignition Switch Plaintiffs in light of the unambiguous mandate of the Court of Appeals."

**Other Parties' Positions With Respect To 2016 Threshold Issues (and Other Issues)**

1. **Pope Plaintiffs Position:** The Pope Plaintiffs want to take discovery on all claims asserted in their litigation, including their request for punitive damages.

    **New GM's Position:** The Pope Plaintiffs are free to pursue any discovery they choose in the trial court, and they are free to make any arguments they want in support of a motion to compel. New GM reserves its right to object to any discovery the Pope Plaintiffs serve, and oppose any motion

15

to compel, both on any applicable substantive grounds and because any discovery with regard to purported punitive damages or independent claims is premature unless and until this Court decides that those claims can proceed. The trial court will then determine whether or not it wants to allow discovery implicating issues that are not and may never be allowed in the case.

2. **Goodwin Proctor Position:** Goodwin Proctor asserts that the following additional issues should be classified as 2016 Threshold Issues:

   (i) "Are Post-Sale Accident Plaintiffs bound by the Sale Order or, as 'future claimants,' may all Post-Sale Accident Plaintiffs (Ignition Switch Defect and Non-Ignition Switch Defect) bring successor liability claims against New GM and seek punitive damages in connection therewith unaffected by any contractual limitation on the Assumption of Liabilities by New GM? This due process issue does not require the plaintiff to establish that Old GM knew of the subject defect at the time of the Sale. Rather, the issue is whether the free and clear notice can release and bar the claims of future claimants. This issue does not require discovery."

   (ii) "May Independent Claims be brought against New GM by all Post-Sale Accident Plaintiffs (Ignition Switch Defect and Non-Ignition Switch Defect) on the grounds that the Second Opinion clearly holds that the bankruptcy court could not prospectively bar claims against New GM (a non-debtor) and that no amount of notice would have been sufficient to notify these 'future claimants' that the bankruptcy court was purporting to exercise subject matter jurisdiction over claims against an entity (New GM) that had not yet acted and that would be brought in the future by claimants that had not yet been injured? This issue does not require discovery."

3. **Elliott, Sesay and Bledsoe Plaintiffs Position:** "Issues ##1-3 should not be treated as threshold. New GM's attempt to relitigate issues established by the Court of Appeals should be rejected. It's claims that certain parties are precluded from proceeding by their failure to appeal should proceed as a deferred issue, in which New GM is required to identify with specificity the parties it claims are precluded and the claims New GM contends that they may not assert. The proper threshold issue is the one identified by the remand from the Court of Appeals: whether non-ignition switch plaintiffs who purchased their vehicles prior to the Sale Order are bound by the Sale Order? The due process issue is the only threshold issue, and the Court should focus on how discovery will proceed on that issue forthwith, see Deferred Issues below at ##1,2."

4. **Pilgrim Plaintiffs Position:** "Lack of due process regarding the GM bankruptcy proceedings is a threshold issue. Corvette Economic Loss Claims plaintiffs face similar due process issues as the ignition-switch plaintiffs. Corvette Economic

16

DMSLIBRARY01\29667944.v1

Loss Claims plaintiffs allege that Old GM had knowledge of the Corvette defects, but did not give Corvette Economic Loss Claims plaintiffs any notice of the bankruptcy. Therefore, plaintiffs assert that they cannot be bound by the Sale Order terms. New GM should not be permitted to adjudicate its affirmative defenses before Corvette Economic Loss Claims plaintiffs have an opportunity to perform necessary discovery and brief the due process issue. The *Pilgrim* plaintiffs want to start discovery immediately and do not see any reason to delay discovery any further."

C.   **Deferred Issues**

The following issues should be deferred until the 2016 Threshold Issues are resolved by this Court and the Successor Liability Issue is resolved by the District Court. This Court should hold a status conference within 30 days of ruling on the 2016 Threshold Issues or the District Court's ruling on the Successor Liability Issue, whichever is later, to assess the parties' position as to the next steps in this process, including appropriate discovery on all remaining issues.

1. Depending on the resolution of the Successor Liability Issue and the Appeal/Waiver Issue, what are the proper and reasonable parameters related to factual discovery in this Court for due process allegations that are being asserted by any such Non-Ignition Switch Plaintiff?

2. Can any Non-Ignition Switch Plaintiff demonstrate a due process violation in connection with the 2009 Sale which would result in such Plaintiff not being bound by the Sale Order?

3. If the Ignition Switch Plaintiffs' or Ignition Switch Pre-Closing Accident Plaintiffs' late-filed proofs of claim are deemed timely and not determined to be equitably moot or otherwise barred, the Court should determine the following issues:

   a. Can the Ignition Switch Plaintiffs file class proof(s) of claim?

   b. What are the procedures for adjudicating the claims on the merits?

   c. What issues may New GM raise in connection therewith, including, without limitation, with respect to the accordion feature,[20] any claims that New GM may have against Old GM in the event that it is ultimately determined that the Sale Notice given by Old GM was defective?

---

[20] The "accordion feature" refers to the provision in the 2009 Sale Agreement which requires New GM to pay an additional purchase price amount to the Old GM estate in the event allowed claims against Old GM exceed $35 billion. New GM's position is that if it did not get the benefit of its bargain under the Sale Agreement (because, of Old GM's actions relating to the Sale Notice), it should not have to pay an additional amount relating to the purchase price to the extent of such damages. Other Core Parties disagree with New GM's position.

17

      d.      What discovery should be taken of the claimants and New GM with respect to this proof of claim issue?

4. Can the Non-Ignition Switch Plaintiffs file late proofs of claim, or are such claims equitably moot or otherwise barred under applicable law?

5. If the Non-Ignition Switch Plaintiffs' late-filed proofs of claim are deemed timely and not found to be equitably moot or otherwise barred, then the Court should determine the following issues:

    a.      Can the Non-Ignition Switch Plaintiffs file class proof(s) of claim?

    b.      What are the procedures for adjudicating the claims on the merits?

    c.      What issues may New GM raise in connection therewith, including, without limitation, with respect to the accordion feature, or any claims that New GM may have against Old GM in the event that it is ultimately determined that the Sale Notice given by Old GM was defective?

    d.      What discovery should be taken of the claimants and New GM with respect to this proof of claim issue?

6. If there are unresolved issues after Judge Furman has rendered his decision on the Successor Liability Issue, should this Court decide any successor liability issues?

7. If any Non-Ignition Switch Plaintiffs are permitted to assert "Independent Claims" against New GM notwithstanding their failure to appeal the June 1, 2015 Judgment and/or their failure to appeal the December 2015 Judgment on this issue, are the "Independent Claims" asserted against New GM[21] really disguised Assumed Liabilities, or successor liability claims dressed up to look like something else (*i.e.*, Retained Liabilities)?

        **Economic Loss Designated Counsel Position:** Rephrased this issue as follows: "If the Second Stage Ignition Switch Plaintiffs or Non-Ignition Switch Plaintiffs are not barred from asserting "Independent Claims" upon resolution of the Appeal/Waiver Issue, can the Second Stage Ignition Switch Plaintiffs or Non-Ignition Switch Plaintiffs assert Independent Claims against New GM?"

        **Goodwin Proctor Position:** They would like this issue rephrased as follows: "If the Non-Ignition Switch Plaintiffs are not barred from asserting Independent Claims upon resolution of the Appeal/Waiver Issue, can the Non-Ignition Switch Plaintiffs assert Independent Claims against New GM?"

---

[21] The term "**Independent Claim**" as used herein by New GM refers to a new and separate obligation incurred solely by New GM with an Old GM vehicle owner after the 363 Sale.

**Elliott, Sesay and Bledsoe Plaintiffs Position:** "The determination whether a claim is an 'Independent Claim' is not for this Court to consider, but rather the Court in which claims are asserted that New GM asserts are barred by the rulings made in this Court.

**Other Parties' Positions With Respect To Deferred Issues (and Other Issues):** The Court is referred to the *Other Parties' Positions With Respect To 2016 Threshold Issues (and Other Issues)* section above at the end of paragraph 9.B as certain of the parties addressed issues other than the 2016 Threshold Issues in their comments.

**D.    Conclusion**

New GM and the other Core Parties are prepared to respond to any questions the Court may have with regard to this Status Report at the November 16, 2016 Status Conference.

Dated: New York, New York
       November 10, 2016                    Respectfully submitted,


                                             /s/ Arthur Steinberg
                                            Arthur Steinberg
                                            Scott Davidson
                                            KING & SPALDING LLP
                                            1185 Avenue of the Americas
                                            New York, New York  10036
                                            Telephone:    (212) 556-2100
                                            Facsimile:    (212) 556-2222

                                            Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                                            Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle
                                            Chicago, IL 60654
                                            Telephone:    (312) 862-2000
                                            Facsimile:    (312) 862-2200

                                            *Attorneys for General Motors LLC*