UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | . | Case No. 09-50026-mg |
| IN RE: | . | Chapter 11 |
| | . | |
| MOTORS LIQUIDATION COMPANY, | . | (Jointly administered) |
| et al., f/k/a GENERAL | . | |
| MOTORS CORP., et al, | . | One Bowling Green |
| | . | New York, NY 10004 |
| Debtors. | . | |
| | . | Wednesday, November 16, 2016 |
| . . . . . . . . . . . . . . | . | 11:38 a.m. |

TRANSCRIPT OF CASE MANAGEMENT CONFERENCE (CC: DOCUMENT NUMBER
13786, RELATED DOCUMENT(S) 13373, 13775, 13697)
BEFORE THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:                King & Spalding LLP
                              By:  ARTHUR STEINBERG, ESQ.
                                   SCOTT DAVIDSON, ESQ.
                              1185 Avenue of the Americas
                              New York, New York 10036-4003
                              (212) 556-2158

For the Ignition Switch       Brown Rudnick LLP
plaintiffs and certain        By:  EDWARD S. WEISFELNER, ESQ.
non-Ignition Switch           7 Times Square
plaintiffs:                   New York, New York 10036
                              (212) 209-4917

For Sesay, Bledsoe
and Elliott:                  GARY PELLER, ESQ.
                              600 New Jersey Ave., NW
                              Washington, DC 20001
                              (202) 662-9122

APPEARANCES CONTINUED.

Audio Operator:               Jonathan, ECRO

Transcription Company:        Access Transcripts, LLC
                              10110 Youngwood Lane
                              Fishers, IN 46038
                              (855) 873-2223
                              www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
APPEARANCES (Continued):

For Personal Injury
Accident Plaintiffs:         Goodwin Procter LLP
                             By:  WILLIAM P. WEINTRAUB, ESQ.
                             The New York Times Building
                             620 Eighth Avenue
                             New York, NY 10018-1405
                             (212) 813-8839

For the GUC Trust
Administrator:               Gibson, Dunn & Crutcher LLP
                             By:  MITCHELL KARLAN, ESQ.
                             200 Park Avenue
                             New York, New York 10166-0193

For Participating
Unit Holders:                Akin Gump Strauss Hauer & Feld LLP
                             By:  DEBORAH NEWMAN, ESQ.
                             One Bryant Park
                             New York, NY 10036-6745
                             (212) 872-1000

TELEPHONIC APPEARANCES:

For Bernard Pitterman:       Adelman Hirsch & Connors LLP
                             By:  JORAM HIRSCH, ESQ.
                             1000 Lafayette Boulevard
                             Bridgeport, CT 06604
                             (203) 331-8888

For Benjamin Pillars:        The Mastromarco Firm
                             By:  RUSSELL C. BABCOCK, ESQ.
                             1024 North Michigan Avenue
                             Saginaw, MI 48602
                             (989) 752-1414

For Corvette economic
loss plaintiffs:             Knapp, Petersen & Clark
                             By:  ANDRE E. JARDINI, ESQ.
                                  K.L. MYLES, ESQ.
                             550 North Brand Boulevard, Suite 1500
                             Glendale, CA 91203-1922
                             (818) 547-5000

For Pope plaintiffs:         Ledford Law Firm
                             By:  KRIS T. LEDFORD, ESQ.
                             1437 South Boulder Avenue West #820
                             Tulsa, OK 74119
                             (918) 376-4610
```

3

1        (Proceedings commence at 11:38 a.m.)

2            THE COURT:  All right.  The next is Motors

3   Liquidation Company, 09-50026.

4            Let's wait until everybody gets settled, Mr.

5   Steinberg, okay?

6            All right.  Let me get the appearances from those who

7   are going to speak.

8            MR. BABCOCK:  Your Honor, Russell --

9            THE COURT:  Okay.  Let me do the people in the

10  courtroom first, okay?

11           Go ahead, Mr. Steinberg.

12           MR. STEINBERG:  Arthur Steinberg and Scott Davidson,

13  King & Spalding, on behalf of New GM.

14           MR. WEISFELNER:  Good morning, Your Honor.  Edward

15  Weisfelner, Brown Rudnick, on behalf of the co-lead counsel and

16  the MDL, sometimes referred to as designated counsel for the

17  economic loss plaintiffs.

18           THE COURT:  Thank you.

19           MR. WEINTRAUB:  Good morning, Your Honor.  William

20  Weintraub of Goodwin Proctor, also as designated counsel for

21  the pre-closing ignition switch plaintiffs and for certain

22  post-closing non-ignition switch plaintiffs.

23           THE COURT:  Thank you.

24           MR. PELLER:  Good morning, Your Honor.  Gary Peller

25  for the Elliott, Sesay, and Bledsoe plaintiffs, who include pre

1   and post-sale economic loss and personal injury and property

2   damage plaintiffs.

3           THE COURT:  Thank you, Mr. Peller.

4           MR. KARLAN:  Good morning, Your Honor.  Mitchell

5   Karlan from Gibson, Dunn & Crutcher for the GUC Trust.

6           MS. NEWMAN:  Good morning, Your Honor.  Deborah

7   Newman from Akin, Gump, Strauss, Hauer & Feld on behalf of a

8   group of unaffiliated participating unitholders in the GUC

9   Trust.

10          THE COURT:  Thank you.  Anybody else in the courtroom

11  making an appearance?

12          All right.  Anybody on the phone making an

13  appearance?

14          MR. BABCOCK:  Yes, Your Honor.  Russell Babcock

15  appearing on behalf of creditor, Benjamin Pillars.

16          MR. JARDINI:  Good morning, Your Honor.  Andre

17  Jardini and K.L. Myles of Knapp, Petersen & Clark for the

18  Corvette economic loss plaintiffs.

19          MR. HIRSCH:  Good morning, Your Honor.  Joram Hirsch,

20  Adelman, Hirsch & Connors, for the plaintiff -- for the

21  Pitterman plaintiff.

22          MR. LEDFORD:  This is Kris Ledford of Ledford Law

23  Firm for the Pope plaintiffs, which were brought in under the

24  --

25          THE COURT:  Just say that again.  I'm sorry, I didn't

5

1 hear you.

2          MR. LEDFORD:  Kris Ledford for the Pope plaintiffs.
3 We were brought in.

4          THE COURT:  No, that, I heard.  I thought there was
5 somebody after you, Mr. Ledford.

6          MR. LEDFORD:  Okay.  I'm sorry.

7          THE COURT:  Anybody else on the phone making an
8 appearance?

9          All right.  Mr. Steinberg.

10          MR. STEINBERG:  Your Honor, I'm -- I want to be able
11 to try to give you a little more background as to how this was
12 developed, and I'm going to try very hard not to try to argue a
13 position as compared to try to give you context because this is
14 set up for a briefing opportunity, and at that point in time,
15 I'll present my argument more formally, and if there's oral
16 argument, I'll be able to present it, as well.  And just -- if
17 you just leaf through the status report, you'll --

18          THE COURT:  I did that several times yesterday.

19          MR. STEINBERG:  -- you'll see that there is a number
20 of footnotes on the first couple of pages, which have
21 definitions.  And I think just Your Honor appreciates why that
22 has occurred.

23          When this matter was originally argued in front of
24 Judge Gerber, we used certain type of nomenclature.  In the
25 context of the MDL this year, the plaintiffs have tried to

1    introduce new nomenclature.  What you're getting on these

2    footnotes is our trying to stay with the original nomenclature,

3    and designated counsel for the economic loss plaintiff's trying

4    to introduce its new nomenclature and primarily relates to what

5    they call the second ignition switch -- second-stage ignition

6    switch plaintiffs.

7            And I understand what they're doing and I didn't want

8    to quarrel with it, but I wanted to explain to Your Honor why

9    you're seeing two sets of definitions.  Ultimately, when we --

10   if we get to the stage where we're drafting something, we'll

11   have to agree to a convention as to what the right terms are so

12   that Your Honor will have a clear record, but that's what you

13   see when you have it here.

14           You also see from the background section that we

15   originally started this process with the designated counsel,

16   Mr. Weisfelner and Mr. Weintraub, and then we broadened it to

17   what we call the core parties.  And to date, the people who

18   have gotten the status report, which is publicly filed, are the

19   core parties, and the core parties are in paragraph 3.  And you

20   could see there, it is not just the people who had

21   traditionally appeared before Judge Gerber, as well, but we

22   included all the parties that were subject to pending motions

23   to enforce, of which I think there are three.  And that's why

24   you have some of the counsel on the phone that have

25   participated or at least are listening to it.  So they -- some

1   of them presented issues and some of them have voiced their

2   views.

3          In paragraph 6, we try to -- to try to give Your

4   Honor a feeling of what's going on in other courts as they

5   relate to what we're asking you to decide here because there is

6   an overlap and we wanted to make sure that Your Honor

7   understood it, and I apologize because I think that because of

8   the flurry of activity that took place in the MDL at the very

9   end of the last week, I don't know whether we have given you,

10  as we normally do, some of the relevant pleadings in the MDL.

11  But on Friday, the -- New GM filed its brief, its opening

12  brief, on the successor liability issue.  So to the extent that

13  Your Honor has an interest in it, usually Your Honor collects

14  the paper, then we would be happy to do that, as well, too.  I

15  don't think we did that.

16         THE COURT:  Let me ask you this, Mr. Steinberg,

17  because on page 18 of this status report, in paragraph 6, you

18  say if there are any -- if there are unresolved issues after

19  Judge Furman has rendered his decision on the successor

20  liability issue, should this Court decide any successor

21  liability issues?  So what is it that's before Judge Furman?

22  What is he being asked to decide?

23         MR. STEINBERG:  The fourth amended consolidated

24  complaint before Judge Furman was filed by the economic loss

25  plaintiffs, so it doesn't have any accident component to it.

8

1  The general thrust of the complaint that was filed says that

2  for ignition switch plaintiffs, there should be successor

3  liability based on the continuous enterprise exception to

4  successor liability.  They don't argue fraud on the court or,

5  you know, some kind of fraud in the transaction.  They don't

6  argue that this was assumed.  They argue basically the

7  continuous enterprise.  And then, there are 16 states that are

8  being briefed.  New GM, in its opening brief, argued for

9  federal choice of law and then saying that either Delaware or

10 New York applies.  I assume that when we see their responsive

11 brief, they will say that other laws apply.  And in the context

12 of those other lies, some of 16 jurisdictions have other

13 exceptions to successor liability.  I think one of them may

14 have something called a continuing enterprise exception.

15          THE COURT:  At some point, I read some -- a prior

16 decision by Judge Furman where I thought that he had dealt with

17 economic loss claims and focused on the law.  Several states --

18 I may am misremembering what I read.  It was some months ago.

19          MR. STEINBERG:  There was another decision by Judge

20 Furman, I think, and I'm sure someone will correct me if I'm

21 wrong.  I think it related to a motion to dismiss, so he

22 briefed -- people briefed it under a number of different

23 states, and it generally dealt with the issue as to whether

24 their theory of damages that --

25          THE COURT:  Yes, that was the decision I read.

1          MR. STEINBERG:  -- on a brand basis, would apply, and

2    then people briefed the brand damage issue under various states

3    and Judge Furman wrote a ruling on that.

4          THE COURT:  All right.  So what is the -- just to --

5    what's the successor liability issue that you think this Court

6    will be asked to decide?

7          MR. STEINBERG:  Well, Your Honor, we put it as a

8    deferred issue because it may not be anything, right, so -- but

9    in accident cases, compared to an economic loss case, they may

10   argue that in their particular jurisdiction that they are more

11   apt to be able to utilize something like the product line

12   exception.  And I think one of the arguments that we've made

13   before Judge Furman is that the product line exception does not

14   apply to an economic loss-type case.

15         THE COURT:  Okay.

16         MR. STEINBERG:  So there could be some fallout here,

17   but obviously people feel, as a general matter, that Judge

18   Furman's decision on successor liability on the continuing

19   enterprise exception will have a great deal of relevance of

20   what might happen here because if Your Honor -- because if

21   Judge Furman decides that there is no successor liability

22   finding, then some of the dispute, in our belief, with regard

23   to non-ignition switch plaintiffs as to whether they can

24   approve a due process violation -- if all you do by

25   accomplishing as a due process violation is to bring a

1  successor liability claim and Judge Furman has already ruled

2  that there is no such successor liability claim, then --

3          THE COURT:  So when's the briefing supposed to be

4  complete before Judge Furman?

5          MR. STEINBERG:  I think their brief is due in --

6  sometime in December, and then our reply brief is due sometime

7  in January.  So it's on a fairly fast track.  I think it'll be

8  fully submitted before February, and then the question is

9  whether they'll hear oral argument or not.

10         THE COURT:  All right.

11         MR. STEINBERG:  So you have the successor liability

12 issue, which we refer to in paragraph 6 of the status report,

13 which is going on in the district court.

14         Yesterday -- and we will send this to Your Honor, as

15 well, too -- the appeal of Judge Gerber's December judgment by

16 what I'll call the Adams plaintiffs was filed before Judge

17 Furman, as well.

18         THE COURT:  I got ECF notice of a filing of that

19 brief because it was an appeal from Judge Gerber.  So in

20 theory, I'm supposed to get automatically, and so I think I

21 actually printed out that brief.

22         MR. STEINBERG:  Okay.  So --

23         THE COURT:  It's only the one brief so far that's

24 been filed.

25         MR. STEINBERG:  That's correct.  And I think our

11

1  brief is due sometime again in December, December 21, and then

2  their brief, their reply would be due sometime in January.  So

3  that also is on a fairly aggressive briefing schedule and -- to

4  be resolved.  And the issue in that appeal, which I think is

5  referenced in the status report, is they argue that they didn't

6  get to file a proof of claim in the bankruptcy case because of

7  some New GM conduct after the sale, and therefore they thought

8  they had an independent claim or some type of claim related to

9  that, and we're briefing that issue for Judge Furman.

10           THE COURT:  All right.

11           MR. STEINBERG:  The third issue which is referenced

12  in paragraph 6, which is not on an aggressive briefing

13  schedule, but I want to put that into context, is that Judge

14  Furman has set dates for when he will hear class certification

15  issues and summary judgment issues, and I think those dates

16  actually have their ending briefs sometime in the spring of

17  2018.  And the reason why I mention that -- those types of

18  procedures, because in the event that this Court will deal with

19  issues relating to a claim, then issues relating to class

20  certification of a late-filed claim, issues relating to the

21  merits of a claim, will overlap with some of that briefing that

22  is there.  So when I get to the --

23           THE COURT:  We'll come to the late-filed claim --

24           MR. STEINBERG:  Right.

25           THE COURT:  -- issue.

1           MR. STEINBERG:  But I just wanted to put into context

2  why we referenced that.

3           THE COURT:  Let me deal first with an issue because I

4  see there are -- there's disagreement, put it that way, as to

5  who should be a part of any proceeding here.  And you've

6  included, on page 8 of the status report, proposed language

7  that you think should go into an order to show cause.  And, you

8  know, I asked myself the question, is an order to show cause

9  effective to compel parties to whom it -- assuming that

10 personal jurisdiction did not previously attach, to appear and

11 respond to the order to show cause.  So one of the things --

12 and some of the people have said, well, there needs to be an

13 adversary proceeding.  The plan has an injunction, correct?

14          MR. STEINBERG:  The sale order has --

15          THE COURT:  The sale order has an injunction.

16          MR. STEINBERG:  Correct.

17          THE COURT:  All right.  And Rule 7001(7) says a

18 proceeding to obtain an injunction or other equitable relief,

19 except when a chapter 9, chapter 11, et cetera, plan provides

20 for the relief.  So you don't need an adversary proceeding.

21 Does the plain incorporate by reference the sale order?

22          MR. STEINBERG:  I think it does.  I think it does.

23 But Judge Gerber actually ruled on this issue before as to

24 whether -- and I think the Second Circuit opinion actually

25 dealt with this issue as to whether, on a formalistic basis, we

13

1  needed to bring these actions by an adversary proceeding or

2  whether it could be done as an injunction to enforce an

3  existing order of this Court.  And Judge Gerber clearly held

4  that you can do this by contested matter and motion --

5          THE COURT:  What -- to me, the objections that

6  7001(7) really deals with this issue.  An adversary proceeding

7  is not required.

8          MR. STEINBERG:  Right.

9          THE COURT:  Okay.  Then the issue becomes, well, what

10  about people who claim they didn't get notice before, all

11  right, and they didn't participate in any of the prior

12  proceedings.  And I'll hear argument about it, but my reaction

13  is, okay, we're going to serve them now.  Okay.  And if the

14  issue whether the injunction in the sale order should be

15  enforced, if they're given -- if you serve them under Rule 7004

16  -- just had that argument before about what that requires,

17  right?  If you serve them under 7004, they can be brought in as

18  a party to a contested matter.  Ordinarily, it's triggered by a

19  motion, but can also -- an order to show cause has the same

20  effect.

21          MR. STEINBERG:  Your Honor, this procedure was

22  utilized by Judge Gerber in connection with the December

23  judgment.  He did it by a September 3, 2015 order to show

24  cause.

25          THE COURT:  And did you serve everybody?

14

1          MR. STEINBERG:  And we served everybody who had a

2   pending litigation.

3          THE COURT:  And some chose not to appear.

4          MR. STEINBERG:  And some chose not to appear.  And

5   one of the issues that they have a perfect right to argue is

6   that they're not bound by that judgment because they felt that

7   we did something wrong, and that's issue number two.  And they

8   could argue that.

9          We're prepared to defend what we have done, and the

10  language about binding everybody was the same type of language

11  that Judge Gerber had put into his order.  And one of the

12  issues that happens in this case and that we struggle with is

13  that notwithstanding the sale order and our interpretation of

14  the sale order, people continue to file litigation.  So even if

15  Your Honor had ruled on this issue, in 2017, someone may file

16  another complaint against GM and then say, I was never party to

17  the action before.  The --

18         THE COURT:  Well, I'll hear -- if people have

19  argument on that, I'll hear it, but my initial reaction is

20  exactly that.  If you serve them, they can be brought here, and

21  an issue will be are they bound by the prior rulings by Judge

22  Gerber or not.  That'll be an issue that -- and seems to me

23  that that is a threshold issue.

24         MR. STEINBERG:  That's correct.  And, Your Honor, we

25  want to serve, in effect, the entire litigation docket --

15

1          THE COURT:  I'm sure you do.

2          MR. STEINBERG:  -- to make sure that whatever Your

3    Honor ruled will be binding on everyone because, to be candid,

4    if Your Honor ruled against us, it's affirmative collateral

5    estoppel against us.  If you ruled for us, if I hadn't served

6    them, it's not necessarily the same type of effect the

7    collateral estoppel.  So in order for me to get what I want to

8    have, I need to serve as broad as possible.  And if someone

9    thins we hadn't done it before, they will have that opportunity

10   to brief it to Your Honor as to why they should or should not

11   be subject to prior rulings, and we will also then decide

12   whether they still will nevertheless be subject to these

13   existing rulings.

14          THE COURT:  Okay.

15          MR. STEINBERG:  So the other thing that I just wanted

16   to mention, which I don't think is actually in the papers, is

17   that the GUC Trust actually made another distribution of its

18   funds in the last couple days.

19          THE COURT:  I think I got the report of it.

20          MR. STEINBERG:  Okay.  So -- and when we defined the

21   threshold issues, we were trying carefully not to have anything

22   to have -- that involves discovery, something that could be

23   teed up as, in effect, a straight legal issue to Your Honor,

24   and I think the -- at least the designated counsel, while maybe

25   quarreling with the way we phrased an issue, has endorsed the

16

1  notion of a threshold issue and a deferred issue primarily for

2  the reasons that I've talked about before, which is that

3  actions that are going on in the district court -- and these

4  rulings will then define who are the non-ignition switch

5  plaintiffs that may be able to take advantage of the Second

6  Circuit opinion and may or may not be bound by Judge Gerber's

7  December judgment.  So with that --

8          THE COURT:  Tell me -- focus on the non -- and maybe

9  -- I'll ask your view and then we'll hear from other counsel

10  about the non-ignition switch plaintiffs.  What is it that

11  you're asking me to decide as a matter of law without

12  discovery?  Because it did seem to me that the Second Circuit

13  opinion necessarily, with their remand and lack of decision

14  about non-ignition switch plaintiffs, in determining whether

15  they have a due process argument that they're not bound, isn't

16  that a fact-specific inquiry?

17          MR. STEINBERG:  There are two issues that we've

18  identified on non-ignition switch plaintiffs which we believe

19  are threshold issues, which defines the scope.  One was Judge

20  Gerber rendered the April 2015 decision, June judgment, which

21  was the decision that went up to the Second Circuit.  The

22  people who appealed that decision were specific parties.  There

23  was designated counsel for the ignition switch plaintiffs.

24  There was counsel for the pre-sale accident plaintiffs on the

25  ignition switch side.  And then, there was Mr. Peller, who had,

1  as part of his 12 clients, had one or two that had non-ignition

2  switch plaintiffs there.  So when the Second Circuit ruled

3  whatever it ruled and -- then the question was who was it

4  ruling on behalf of, was it ruling solely on behalf of the

5  appellants that were before it or was it making a broader

6  pronouncement that would be binding and for the benefit of all

7  non-ignition switch plaintiffs, and does a court of appeals get

8  to rule on something greater than the issues that were

9  presented before it?  That's one set of issues.

10         The second thing was that when Judge Gerber realized

11  that he was going to be retiring at the end of 2015, he had

12  said to the parties, I want to wrap up everything that you

13  think I may need to wrap up as part of the GM proceedings, and

14  what happened after he rendered his June judgment is that there

15  was this concept of -- where the parties believed they were

16  bound by that June ruling.  And so he was getting a flurry of

17  papers by people who said, I am not bound.  So he said, you

18  know what, stop with sending me papers, let's get it all

19  resolved at one time.  And then, that led to proceedings and

20  October 14th oral argument, November decision, December 3

21  judgment.  That was appealed by only a limited amount of

22  people.

23         And in that November decision, he had specific

24  rulings with regard to non-ignition switch plaintiffs,

25  basically saying, in our view, that they had their opportunity

18

1  to allege whatever due process violation.  They didn't allege

2  it, and therefore they can't assert independent claims.

3          THE COURT:  Let me ask you this.  So the Second

4  Circuit decides what it decided.  And would you agree that that

5  is a subsequent decision to what Judge Gerber decided and

6  reflects a change in the law from what he found with respect to

7  due process?

8          MR. STEINBERG:  That --

9          THE COURT:  Here's where I'm going, Mr. Steinberg.

10  Wouldn't those parties who hadn't -- who did not appear,

11  wouldn't they have an argument in this Court under Bankruptcy

12  Rule 9024, which incorporates Rule 60, and wouldn't this be a

13  60(b)(6), any other reasons that justify relief where there's

14  been a subsequent change in the law, so wouldn't -- I'm not

15  deciding it now, but I know you're -- you have set out in the

16  issues, are they bound, if I agree that's an issue?  Are those

17  who did not appeal bound by Judge Gerber's decision, which they

18  didn't appeal?

19          And it does seem to me that if the Second Circuit, to

20  the extent it pulls the rug out from under the prior decisions,

21  those people who didn't join in the appeal would have an

22  argument under 9024 that based on a subsequent change in the

23  law, they should be relieved from the judgment.  Do you agree

24  that would be an issue?  I'm not saying -- I'm not deciding it,

25  but you're putting a lot of weight on the argument that, well,

19

1  hey, they didn't appeal, it's tough luck, they're out of luck,

2  even if there's a change in the law subsequently, it's too bad

3  for them because they didn't appeal it.

4        MR. STEINBERG:  Well, I think, Your Honor, that the

5  answer is not as simple as Your Honor has presented and that --

6        THE COURT:  I'm not deciding an issue.

7        MR. STEINBERG:  I understand, but to --

8        THE COURT:  You made it seem like it was crystal

9  clear that, of course, they can't --

10        MR. STEINBERG:  No, no.  All I tried to do was to say

11  what the issue was.

12        THE COURT:  Okay.

13        MR. STEINBERG:  I assume that the other side will

14  tell me that I'm wrong and Your Honor will -- ultimately will

15  have to decide.  I'm just trying to identify the issue for you,

16  which is that -- one issue is --

17        THE COURT:  I agree that an issue -- and I would

18  agree that it is a threshold issue whether parties who didn't

19  appeal are bound by the earlier decision and judgment.

20        MR. STEINBERG:  Right.  And there's --

21        THE COURT:  I'm not necessarily framing it exactly,

22  but I think that's an issue.

23        MR. STEINBERG:  And just to put the context that at

24  least I'd like you to think about, and I'm sure others will

25  tell me again why they think I'm wrong, the Second Circuit

1  ruling had nothing to do with the December judgment, and there

2  were other parties, not economic loss plaintiffs, that were

3  involved in the December judgment.  And their failure to

4  appeal, we think, has consequences.  And while the Second

5  Circuit said the non-ignition switch plaintiffs may have been

6  required an opportunity to also show -- that they can show due

7  process violation, the December judgment that Judge Gerber

8  ruled said they had another six months to say something and

9  they didn't say something and bring out to me, and so I would

10  argue and I will argue that the December judgment was something

11  totally different than what the Second Circuit was ruling on,

12  and they actually didn't have the benefit of what went on

13  there.

14          THE COURT:  That's fine.

15          MR. STEINBERG:  And the only other thing that I would

16  say is that -- and you will see it cited in papers and for and

17  against, is the application of the Supreme Court decision and

18  in the Travelers case, where they reversed one of the Manville

19  decisions and basically said that courts can exceed -- lower

20  courts can exceed their subject matter jurisdiction, and if

21  it's not appealed upon, it is the final order.  The only people

22  who preserve that are the people who have raised the due

23  process issue, and if they had the right to assert a due

24  process issue and they didn't do it, then they've waived that

25  right to --

21

1          THE COURT:  Well, 9024 and Rule 60 would seem to run

2     counter to that argument, potentially.

3          MR. STEINBERG:  Except the Supreme Court in that case

4     -- and again, I said I didn't really want to argue with that,

5     but the Supreme Court said that there's a policy reason for

6     finality of judgments and they look to enforce that.

7          THE COURT:  All right.

8          MR. STEINBERG:  And so Your Honor would have to

9     decide whether, notwithstanding that precedent, this should be

10    approached in a different way.  And I'm sure others will try to

11    argue why that is wrong, but that's clearly an issue that we

12    need to have Your Honor look at because you need to define the

13    set, the universe of people who are non-ignition switch

14    plaintiffs who can assert whatever the rights that they want to

15    assert are.

16         So that is the -- one of the threshold issues that

17    people have identified.  Again, I think we've had the back and

18    forth on the procedure.  We're happy to do whatever the

19    procedure is, but we think the order to show cause is the most

20    efficient way.  I think designated counsels agree that that's

21    okay.  I think Mr. Peller has raised an issue about why that

22    shouldn't be the case, but he's been involved in these

23    proceedings since --

24         THE COURT:  Mr. Weintraub, on behalf of certain non-

25    ignition switch post-closing accident plaintiffs, he had --

22

1  this is on page 11 of the status report.  He thinks -- he

2  phrased an issue, are non-ignition switch plaintiffs barred

3  from asserting independent claims against New GM because they

4  purportedly did not appeal, et cetera.

5          MR. STEINBERG:  It's the same thing.  I think --

6          THE COURT:  Do you agree?  I mean, you seem to resist

7  listing that as an issue.  Why isn't that -- I mean, it seemed

8  to me that that is a genuine threshold --

9          MR. STEINBERG:  No, no, no.  I think it's the same

10  issue that I've read -- I've written right before the Goodwin

11  Proctor position.  I think, to be candid, what's happening here

12  is that people wanted to educate Your Honor as to how this

13  issue should be thought of, so they wrote a longer recitation

14  to it.  But when you look at the actual issue that they're

15  prepared to brief on, the designate --

16          THE COURT:  That's really a pretty concise statement

17  of the issue that Mr. Weintraub --

18          MR. STEINBERG:  Well, yeah, but I don't -- I think

19  ours is an equally concise statement, and I think designated

20  counsel also wanted to rewrite the issue on the appendix.  So

21  they have something else, as well, too.  But I think we're all

22  saying the same thing, and ultimately --

23          THE COURT:  I wish you did.  It would have made life

24  a lot easier.

25          MR. STEINBERG:  Well --

23

1        THE COURT:  I couldn't believe it took a 19-page

2  status report to identify issues that -- I don't know whether

3  you really agree or disagree or not.  I mean, just --

4        MR. STEINBERG:  Well, part of --

5        THE COURT:  All this is framing the issues and you're

6  going to brief -- besides, you're going to brief it and --

7        MR. STEINBERG:  I accept that --

8        THE COURT:  I'm expressing a bit of frustration.

9        MR. STEINBERG:  I accept that, Your Honor, but to

10  understand it from our side, I didn't want anybody saying that

11  we were not properly presenting their sentiment, and therefore

12  you get another five pages of this draft because people want to

13  frame the issue in the way that they want and some people

14  wanted to argue that these aren't even issues that you should

15  be thinking about.  And so I thought I needed to present that.

16  The other five pages was to explain what we did from the July

17  status conference, and I thought the record needed to reflect

18  that.  but I do recognize --

19        THE COURT:  I kept wondering what happened after the

20  July status conference because I thought I was being ignored.

21  I saw all these status reports before Judge Furman, and then I

22  saw the one that finally triggered my entry of the order

23  because you told Judge Furman what you were going to do here,

24  except you hadn't even told me about it yet.

25        MR. STEINBERG:  Well, Your Honor, the -- there was a

24

1  bellwether case that was before Judge Furman which was coming

2  up to a trial in September, and one of the issues that was

3  going to be in that bellwether trial was whether they can

4  assert a successful liability claim, and I think we actually

5  had written to Your Honor asking for a status conference before

6  that bellwether trial, which was never scheduled, and it so

7  happened that after we filed our brief on successor liability,

8  they withdrew the successor liability cap and the case was

9  ultimately settled.  But --

10        THE COURT:  All right.  Let me hear from other

11  counsel.

12        MR. STEINBERG:  Okay.  Do you want to hear about the

13  other issues or is it self-evident from --

14        THE COURT:  Let's see if we can get through this, and

15  then we'll -- then you can back up, okay?

16        MR. WEISFELNER:  Good afternoon, Judge.  Ed

17  Weisfelner, Brown Rudnick, on behalf of the MDL co-leads,

18  appearing principally on behalf of economic loss claimants.

19        Your Honor, look, I do think that there is very close

20  to dangerous agreement among us and New GM on what the

21  threshold issues ought to be.  We may frame them a little bit

22  differently, and I take Mr. Steinberg's contention to heart

23  that we chose to frame it a little bit differently because we

24  were looking to educate the Court a little bit more.

25        THE COURT:  You would never do that, would you?

1          MR. WEISFELNER:  We tend to want to avoid that

2   whenever we can.  But I do think it's important that we

3   highlight for you, in the context of this status conference and

4   going down the list of the comments that Mr. Steinberg made.

5          THE COURT:  I will have forgotten about this when I

6   get to read the briefs that are really going to be the basis

7   for the arguments.

8          MR. WEISFELNER:  I'm sure you will.

9          THE COURT:  So you're fencing about words here and

10  there.

11         MR. WEISFELNER:  No.  That's right, and I'll do this

12  quickly.  Mr. Steinberg talked about sets of definitions, and

13  that's why we had so many footnotes in the status report.  And

14  clearly, there is a difference between what they refer to as

15  "ignition switch plaintiffs," what we tend to refer to as

16  "first wave."  And the difference is the number of cars that

17  are involved.

18         Your Honor will come to learn, or you already know,

19  that in the first wave of recalls, the first few recalls that

20  GM did, there were approximately 2- to 3 million cars that were

21  the subject of that recall.  The second set of recalls, all

22  done within the same 30 or 45 days, ultimately brought the

23  number of recall vehicles up to 27 million.  Put that in

24  context, there were 70 million GM cars on the road.

25         THE COURT:  How does that make a difference in terms

26

1  of the issues I have?

2         MR. WEISFELNER:  Because we take the position that

3  the four threshold issues that were before Judge Gerber dealt

4  specifically and exclusively with the first set of recalled

5  vehicles, those being the first-wave ignition switch defect

6  vehicles.

7         Now, we come to the Second Circuit opinion, and in

8  our view -- and frankly, if you take a look at the procedural

9  background in Judge Gerber's decisions, he very rarely makes a

10 distinction, if ever, between first wave and second wave.  He

11 talks about 70 million cars.  He talks about 27 million cars.

12 Likewise, the Second Circuit, in its preamble to its ultimate

13 holding, talks about 27-odd million cars and 70 million cars.

14 There's never a distinction in the Second Circuit opinion

15 between first wave and second wave.

16         Then we have the last category, what we call the non-

17 ISD, non-ignition switch defect plaintiffs.  Mr. Steinberg and

18 New GM says your second wave are in the same boat as the non-

19 ISDs.  So there's only two categories, ISD, the 2 million cars,

20 and everything else, whether they involve a so-called ignition

21 switch or a seatbelt or a safety harness, you're all non-

22 ignition switch defect claimants.  And where we think this is

23 critically important is on what it is the Second Circuit

24 announced that we think has broad permutations.

25         The Second Circuit talked about two things, lack of

1  due process, whether you need prejudice or not, and a finding

2  that there, in fact, was prejudice.  We have a disagreement as

3  to whether or not that applies solely to the 2 million cars

4  that were in the first wave or whether it applies to all

5  ignition switch defect claimants.  To a large extent, I think

6  that that needs to be a deferred issue because Judge Furman, in

7  addition to all of the other things he's looking at, is also

8  going to consider what additional discovery, if any, are the

9  plaintiffs entitled to or do they need with regard to the issue

10 of whether or not their defect, like the defect -- and I don't

11 know what the difference is between an ignition switch defect

12 and an ignition switch defect, but what additional discovery do

13 they need in order to demonstrate that their defect was known

14 or should have been known to Old GM, therefore leading

15 presumably to the same conclusion that your due process rights

16 were violated and that has an impact on whether or not the sale

17 orders injunction is binding.

18         THE COURT:  Is that an issue that Judge Furman is

19 going to decide?

20         MR. WEISFELNER:  I think Judge Furman's going to

21 decide what, if any, discovery you're entitled to, and by

22 implication, that may resolve the issue one way or the other

23 from the perspective of those folks who may need to

24 demonstrate, where Your Honor is so inclined, that their rights

25 depend on whether or not there was a due process violation

1 relative to them.  But there's a second part of the Second

2 Circuit decision that I think is critical and is being

3 overlooked or was overlooked, probably not intentionally, by

4 Mr. Steinberg because he tends not to operate in that fashion,

5 and that's what happens to independent claims.

6         I think what the Second Circuit said, and it couldn't

7 have been clearer, is that regardless of what the bankruptcy

8 court did or thought it was doing, there is no jurisdiction for

9 a bankruptcy court to provide a get out of jail free card to a

10 buyer in a 363 sale with regard to its own independent post-

11 closing tortuous conduct or failure to act that gives rise to a

12 claim.  And as a consequence, everybody, the way we read it, be

13 they first wave, second wave, or non-ISD, continues to have the

14 right, always had the right notwithstanding what Judge Gerber

15 may have written, to pursue independent claims against New GM,

16 so long as it involves New GM's conduct and doesn't rely on

17 conduct by Old GM that would have been part of retained

18 liabilities, as that term is defined in the sale order.

19         So we'll brief it all, and the only issue we had

20 between their articulation of what they call the Pillars issue

21 and then the second issue that talked about the impact of prior

22 decisions and whether people appealed them or not and therefore

23 whether they have an entitlement to go forward, we thought

24 those two issues should be merged.  And in merging them, you

25 could articulate the issue much more clearly.  And again, I

1  think I --

2        THE COURT:  I think -- maybe I'm misunderstanding.  I

3  think it would be helpful to me if those issues were separately

4  identified as issues and the briefs treat them separate -- I

5  mean, to the extent you think that it's decided by some other

6  point in the argument.  I just think it would be helpful to me

7  to have the issues separately identified rather than folded

8  together.

9        MR. WEISFELNER:  And again, the only folding together

10 we were doing is they articulated the <u>Pillars</u> decision as

11 narrowly focused on what is an ignition switch defect

12 plaintiff.  They'll argue that an ignition switch defect

13 plaintiff, by reference to the agreed-upon findings that we all

14 stipulated to in advance of Judge Gerber determining the four

15 threshold issues, was, in fact, limited to those cars that were

16 in the first-wave recall.  There was no debating that.  That's

17 what the stipulation says.

18        So I'm not sure why we need to brief that separate

19 issue other than they want to then, it seems to me, expand that

20 and say the second-wave ISDs are therefore properly defined as

21 non-ISDs because they weren't in the first wave.  I don't know

22 why Your Honor needs briefing on that.  Pick up the stipulated

23 facts.

24        What flows from that is really contained in the

25 second issue, which we've all agreed on, and that is has anyone

30

1  lost rights by virtue of their failure to appeal or -- in

2  actuality, we all appealed.  It's a question of what issues did

3  we articulate on the appeal and to what extent did that failure

4  to appeal, in effect, get excused because of a change in the

5  law or -- it's kind of hard for me to stand here and tell you

6  that what the Second Circuit did was change the law.  I think

7  they followed Travelers-Manville, so I'm not sure how that fits

8  into a 60(d) context.  I don't think they changed the law.  I

9  think they rearticulated it.

10        THE COURT:  Well, they changed the law from what

11 Judge Gerber ruled.

12        MR. WEISFELNER:  They certainly changed the law as it

13 was articulated by Judge Gerber.  That's correct.

14        So, Your Honor, the only other points I would make,

15 because this is a procedural matter, is Mr. Steinberg made

16 reference to a lot of things that Judge Gerber said in

17 anticipation of his retirement about bringing people together.

18        THE COURT:  Easy for him to say when he was leaving.

19        MR. WEISFELNER:  Well, easy for him to say because I

20 was here and I didn't remember Judge Gerber suggesting that.  I

21 remember GM filing successive motions to enforce.

22        THE COURT:  Let me ask you this.  Do you -- are you

23 in agreement with Mr. Steinberg about this order to show cause

24 procedure to bring everybody here?

25        MR. WEISFELNER:  Your Honor, I understand the

31

1   concerns that have been expressed by some of my plaintiff

2   bankruptcy representative brethren.  I hear it, I understand

3   it.  I think it's overwrought, quite frankly.  I think the

4   procedure can, should, and ultimately will be designed in such

5   a fashion as to this is a case about due process to a very

6   large extent.  We're not going to make a due process mistake

7   collectively, and I think an order to show cause is sufficient

8   in that regard.

9           THE COURT:  Okay.

10          MR. WEISFELNER:  Unless Your Honor has any other

11  questions.

12          THE COURT:  We're separately going to talk about the

13  late claim issue, but we'll get to that.

14          MR. WEISFELNER:  Thank you.

15          THE COURT:  Mr. Weintraub.

16          MR. WEINTRAUB:  Thank you, Your Honor.  William

17  Weintraub for the ignition switch pre-closing accident

18  plaintiff and certain post-closing non-ignition switch

19  plaintiffs.  I'm going to stifle -- I think I have successfully

20  stifled any urge to respond to a lot of the argument that was

21  made by Mr. Steinberg.  That will be for another day, so I'll

22  reserve right with respect to that.

23          The only point then that I want to make, in addition

24  to also saying that I believe the order to show cause procedure

25  is an appropriate procedure --

32

1          THE COURT:  I mean, it does seem, to me, to work.
2   When I read the objections that said adversary proceeding, that
3   just is not right.
4          MR. WEINTRAUB:  Right.  We always thought that it
5   works so long as people actually receive it.
6          THE COURT:  Yes, as long as they receive notice.
7          MR. WEINTRAUB:  And it is clear what is going to
8   happen, which was --
9          THE COURT:  Service under Rule 7004.
10          MR. WEINTRAUB:  Exactly.  As you may recall, our
11   quibble with the September 2015 scheduling order -- not order
12   to show cause, but scheduling order -- was it was far less than
13   clear that people needed to appear or risk losing their rights.
14          The only point I'd like to make, Your Honor, is at
15   page 16 of the status report, I raised two additional -- what I
16   believe should be threshold issues that don't require
17   discovery.  I actually think that (2) is the independent claim
18   argument that Mr. Weisfelner was just making.  So -- and I
19   think Your Honor was in agreement with that, so I don't think
20   we -- any of us have an issue with (2) being an appropriate
21   threshold issue.  I also believe that (1), which also doesn't
22   require discovery, is an appropriate threshold issue.  Both of
23   these issues relate to post-closing accidents, which we believe
24   are in the nature of future claims.  So then you have a very
25   different due process issue than the one addressed by Judge

33

1  Gerber, which is a known or unknown creditor of Old GM.

2        THE COURT:  Right.

3        MR. WEINTRAUB:  These are not yet --

4        THE COURT:  Judge Bernstein -- I can't -- what's the

5  name of this case that he wrote?

6        MR. WEINTRAUB:  Grumman Olson.

7        THE COURT:  Yes, Grumman Olson, he got affirmed in

8  the district court, just the future claim issue.

9        MR. WEINTRAUB:  Exactly, Your Honor, and I think that

10 would be ripe as a threshold issue, as well.

11        THE COURT:  Okay.  I may come to regret it, but it

12 seems to me that for the purpose of what we're gearing up to

13 do, certainly for this first round of briefing, to the extent

14 the parties agree that no discovery is required, I think the

15 issues should be included.  I, you know, doubt -- disagree

16 strongly about what the outcome ought to be and I don't think

17 that you all should spend weeks word smithing exactly how it

18 comes in.  You ought to frame them neutrally, but the way that

19 parties could understand what the issue is because ultimately,

20 it's going to -- you know, you're all going to brief it, and

21 I'm going to have to decide it.

22        The one thing I want to be careful about, I should

23 have said this before, is -- and I've had a few conversations

24 with Judge Furman.  He and I haven't spoken in a while.  I

25 actually put in a call to him yesterday.  I haven't heard back

34

1  from him yet.  I want to be very careful not to consider or

2  decide issues that he thinks properly belong before him.  And

3  to the extent that there does appear to be some overlap, I just

4  want to be sure that he knows what issues are being raised

5  here.  And if he has questions about why them not being raised

6  in -- you know, that they more appropriately should be raised

7  before him, that's fine with me.  But -- so, you know, Mr.

8  Steinberg has certainly filed on this docket copies of the

9  correspondence that go to Judge Furman, so I see some of that

10  and I do look at it, but I want -- that's what I -- I just -- I

11  want to be -- I got a little nervous when I read the status

12  report, but when I see that some of these issues seem to be

13  before Judge Furman, I don't want to get caught up in what

14  should he decide, what should I decide.

15       MR. WEINTRAUB:  And, Your Honor, that -- actually,

16  your comment triggers something that I had written down earlier

17  that I don't think we need to address today because Mr.

18  Steinberg described it as a "maybe later" issue, and that's the

19  successor liability issue.  I think that --

20       THE COURT:  That was what caught my attention when I

21  saw that in there.

22       MR. WEINTRAUB:  I think if this Court decides that

23  the successor liability bar is not enforceable, the question of

24  whether or not New GM is a successor should be something for

25  the trial court to determine and not the bankruptcy court.

1  Unless you have any questions for me, Your Honor.

2         THE COURT:  I think that's it for now.

3         MR. WEINTRAUB:  Thank you, Your Honor.

4         THE COURT:  Okay.  Come on up.

5         MR. PELLER:  Your Honor, Gary Peller for the Elliott,

6  Bledsoe, and Sesay --

7         THE COURT:  I keep reading your name in all the

8  papers, but this is the first time I've actually set eyes on

9  you, sir.

10        MR. PELLER:  Nice to meet you, Your Honor.

11        We believe that the -- we disagree about the need for

12  immediate discovery and believe that it's important to

13  distinguish two procedural aspects of the parties before you.

14  One part of the proceedings before you have to do with the

15  remand from the court of appeals, and that remand contained a

16  mandate.  That mandate reversed -- affirmed part and reversed

17  many parts of Judge Gerber's order, but only vacated and

18  remanded for one issue, and that's whether the non-Delta

19  ignition switch plaintiffs have a due process -- can make out a

20  due process violation that would enable them to proceed with

21  successor liability claims against New GM.  We believe that

22  that issue is -- should be the threshold issue for the remand

23  part of these proceedings.  It's specifically what the Second

24  Circuit remanded for, and we believe that there's nothing to be

25  gained by delaying discovery on that issue forthwith.

36

1        I believe that Mr. Steinberg might have mistaken when

2   he said that Judge Furman is considering discovery on that due

3   process issue in the MDL.  I'm not -- I've followed the MDL

4   proceedings quite closely, and I'm not aware of Judge Gerber

5   approving discovery on due process issue.

6        THE COURT:  Judge Furman.

7        MR. PELLER:  I'm sorry, Judge Furman approving

8   discovery on a judge -- on a due process issue.

9        Another aspect is that even -- there's no point, as

10  we see it, in awaiting Judge Furman's successor liability

11  rulings.  Those successor liability rulings will only apply to

12  the parties of the fourth amended consolidated complaint, which

13  includes a subset of the MDL plaintiffs, but of course, doesn't

14  include any of the state plaintiffs and the various --

15       THE COURT:  Well, you know, I have found many of

16  Judge Furman's decisions, not only in Motors Liquidation, but

17  in other cases, quite persuasive.  So whether one of his

18  decisions is binding, it may well be persuasive.  And if and to

19  the extent the issues are before me, I might -- you know, I

20  might well be inclined to follow him.  So the briefing is

21  underway before Judge Furman on the successor liability issue.

22  No briefing has occurred here yet.

23       MR. PELLER:  With due respect, Your Honor, the --

24  those issue will never be before you.  The question of whether

25  plaintiffs make out a successor liability claim against New GM

37

1    is always going to be for a trial court hearing the claims, not

2    for the bankruptcy court.  The issue before you is whether non-

3    Delta ignition switch plaintiffs --

4        THE COURT:  Well, I thought that the circuit said --

5    I don't have it -- didn't pull the opinion out with me today,

6    but I thought that Judge Chin made the point that -- which I

7    felt was the trend in authority, but not fully resolved in the

8    Second Circuit -- that a bar on successor liability claims is

9    proper -- can be proper.  The question was here whether

10   violation of due process prevented it from being enforceable,

11   but that a plan or a sale order may include a prohibition on

12   claims of successor liability.  Do you disagree with that?

13       MR. PELLER:  No, I don't, Your Honor.  I may have

14   misunderstood your earlier comment.  I thought that you were

15   saying that you would be asked to rule on the very same issue

16   that Judge Furman's about to rule on.

17       THE COURT:  No, I was concerned.  I saw the reference

18   in the status report to Judge Furman -- briefing going on

19   before Judge Furman on successor liability and the suggestion

20   that there were going to be issues before me, and that was what

21   I was concerned about because I saw -- I don't want to be in

22   the position of dealing with issues that are pending before

23   Judge Furman.

24       MR. PELLER:  Our only point, Your Honor, is that the

25   question of whether successor liability can be asserted under

ACCESS TRANSCRIPTS, LLC        ⚖        1-855-USE-ACCESS (873-2223)

1  state law will not determine the question that is before you

2  that's remanded by the Second Circuit mandate, and that is

3  whether non-Delta ignition switch plaintiffs can make out a due

4  process violation to assert any claims --

5          THE COURT:  What's the discovery you want to

6  undertake, Mr. Peller?

7          MR. PELLER:  GM's -- Old GM's knowledge of and -- or

8  questions of whether Old GM should have known, the same

9  questions that Second Circuit ruled on with respect to the

10 Delta ignition switch with respect to non-Delta ignition switch

11 plaintiffs.  So for example, we assert a power steering defect,

12 and we alleged, you know, many, many paragraphs in our

13 complaint that show that Old GM knew and that when New GM came

14 into existence, it also knew of these defects.  So we would be

15 arguing that, for example, with respect to the non-Delta

16 ignition switch power steering defects, those plaintiffs also

17 ought to be able to assert successor liability claims against

18 New GM because they also were victims of a due process

19 violation with respect to the lead up to the sale order.

20         Your Honor, if I could now move to the order to show

21 cause questions.  And I've listened carefully to Your Honor's

22 exchange with counsel before me.

23         This is what I see the problem with that procedure.

24 There is a certain number of plaintiffs -- of parties who are

25 here before Judge Gerber litigating the four threshold issues.

39

1  Those parties aren't a secret.  They didn't include categorical

2  all ignition switch, all pre-accident [sic] accident

3  plaintiffs.  They included particular parties who were

4  represented by designated counsel through the co-lead counsel.

5  Those are particular parties that the co-lead counsel

6  represents.  The co-lead counsel do not, for those purposes,

7  represent all parties in the MDL, but more importantly, those

8  parties are just listed on the Judge judgment.  They're --

9       THE COURT:  May I ask you this, Mr. Peller?  Do you

10  agree that the Court can consider a contested matter in which

11  all parties are properly served that addresses the issue of

12  whether the injunction in the sale order is enforceable against

13  them?

14       MR. PELLER:  Your Honor, I believe that the

15  procedurally appropriate thing is GM did for all the parties --

16       THE COURT:  Could you answer my question?

17       MR. PELLER:  Yes, but I think procedurally

18  appropriate is the initiation of --

19       THE COURT:  Mr. Peller?

20       MR. PELLER:  Yes, sir?

21       THE COURT:  Let's deal first with my question, and

22  then I'll let you expand.

23       MR. PELLER:  Yeah.  Yes, Your Honor.

24       THE COURT:  You agree that an order to show cause

25  properly served on all parties that New GM seeks to bind is a

40

1  proper procedure to raise the issue in this court, bind under

2  the injunction in the sale order?

3          MR. PELLER:  No, I do not, Your Honor.

4          THE COURT:  Why not?

5          MR. PELLER:  Judge Gerber did rule, and it was not

6  appealed on the --

7          THE COURT:  I don't want to know about Judge Gerber.

8  I'm --

9          MR. PELLER:  Okay.  Your Honor --

10         THE COURT:  I may have the issue of whether Judge

11 Gerber's rulings -- to what extent are those enforceable

12 against, but even if I concluded they weren't, I may be able to

13 decide as a fresh proposition.  I may find Judge Gerber's

14 rulings to be persuasive.  It's the point I make about Judge

15 Furman.  His decisions may not be binding on parties in matters

16 before me, but I may find them persuasive.  I may find Judge

17 Gerber's decisions persuasive.  So if -- to the extent that

18 parties are given -- and I know this is disputed because Mr.

19 Steinberg says they were given proper notice, and I'm going to

20 have to decide that, but even if I assume that they weren't, if

21 they're properly served now, an order to show cause is a proper

22 method of raising the issues before me whether those parties

23 are bound by the injunction in the sale order.  Do you agree

24 with that?

25         MR. PELLER:  I don't, Your Honor.  I believe --

1              THE COURT:  Okay.  Tell me why.

2              MR. PELLER:  I believe that the appropriate procedure

3    -- we believe the appropriate procedure, because they're asking

4    for injunction, was the initiation of an adversary proceeding

5    --

6              THE COURT:  What about 7001(7), which specifically

7    seems to permit the procedure?  It's typically by motion, and

8    order to show cause is the same effect as a motion.  How do you

9    distinguish what 7001(7) provides?

10             MR. PELLER:  Because an order to show cause puts the

11   onus on the served party to come in and to prove, as if it were

12   presumed and the default was that they were --

13             THE COURT:  Oh, no.  New GM may have the onus of

14   proving, so an order to show cause doesn't set the burdens.  It

15   just says who's got to come before me.  And what I anticipate

16   is that a briefing schedule will have New GM going first and

17   parties having an opportunity to file objections and then New

18   GM filing a reply.  I'm not going to dictate.  I'm going to

19   leave it to counsel to try and work out an omnibus briefing

20   schedule, but you seem to be confusing -- an order to show

21   cause doesn't determine who has the burden.  It sets forth --

22   it brings before the Court a -- in this case, what I believe --

23   what is obviously a contested matter, and there will be a

24   scheduling order prepared.  It would include briefing, which I

25   expect counsel to work cooperatively, and I assume they will,

1   as to what the schedule is, but you haven't convinced me why

2   7001(7) doesn't -- the exception in that doesn't apply so that

3   it does not have to be by adversary proceeding.

4           MR. PELLER:  I don't -- I understand that it can be

5   by a contested matter, Your Honor, but I believe --

6           THE COURT:  And a contested matter can be triggered

7   by an order to show cause.

8           MR. PELLER:  We believe that --

9           THE COURT:  You disagree with -- do you have any

10  authority that says that a contested matter can't be triggered

11  by an order to show cause?

12          MR. PELLER:  No, I don't, Your Honor.  The -- we

13  believe that the appropriate procedure is the one that New GM

14  filed -- that was filed in the past, and that is to file a

15  motion to enforce that carries as a motion all the procedural

16  rights that are guaranteed under the Federal Rules of

17  Bankruptcy.

18          THE COURT:  I hear you.  I disagree with you.

19          MR. PELLER:  Okay.

20          THE COURT:  Okay.

21          MR. PELLER:  And I accept that, Your Honor.  So in

22  sum, Your Honor, we believe that the other problem with the

23  order to show cause procedure is that by that procedure, New GM

24  is just going to sweep in everyone who's filed kind of

25  complaints against New GM.

43

1                THE COURT:  They are.

2                MR. PELLER:  Yes, exactly.  And that is improper

3    given that the remand proceedings that involved the parties who

4    litigated the four threshold --

5                THE COURT:  I have --

6                MR. PELLER:  -- issues didn't involve all these other

7    parties out in the universe.

8                THE COURT:  Mr. Peller, <u>Motors Liquidation</u> is pending

9    before me.  Judge Gerber retired, the case got transferred to

10   me.  Whether it's strictly within the four corners of the

11   remand or whether it's a matter that's properly raised in the

12   pending matter before me in the <u>Motors Liquidation</u>, you know,

13   but I only want to decide these questions once, to the extent

14   that that's possible.  I want to give everybody a fair chance

15   to argue their positions, and it may be that not everything

16   that gets briefed to where the parties think can be resolved

17   without discovery, maybe it can't.  I don't know.  All right.

18   I'm not deciding any of that now.

19               But there -- I understand your objections.  There

20   seems to be a fairly substantial broad agreement that there are

21   a group of threshold issues that can properly be brought before

22   the Court using this OFC procedure.  I agree the procedure is a

23   correct one.  All right.  What the outcome of those issues, I

24   don't know.

25               MR. PELLER:  Of course, Your Honor, and I'll conclude

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

44

1   with this.  We also disagree with the identification of the

2   threshold issues in that we believe that the pressing threshold

3   issue is that identified by the court of appeals mandate in

4   that --

5           THE COURT:  You don't agree with the issues they did

6   identify.  You think that the one and only threshold issue

7   should be due process with respect to non-ignition switch

8   parties?

9           MR. PELLER:  Well, Your Honor, the question is how

10  much GM is going to be allowed to simply relitigate the court

11  of appeals decision over and over and over again.  They've got

12  listed one of the issues as whether used car purchasers are

13  precluded from suing under the sale order.  The Second Circuit

14  clearly ruled on that.  They have another issue of independent

15  claims, and I think that -- I think that this Court should --

16          THE COURT:  If you're right, Mr. Peller, it's going

17  to be a very short piece of an opinion, okay.

18          MR. PELLER:  Okay.  Thank you, Your Honor.

19          THE COURT:  But what I want to do is I want to get

20  before me, if possible at a single proceeding, all of the

21  relevant parties, and I think the relevant parties are well

22  beyond what you think are the relevant parties, and I want

23  briefing and I want, from the plaintiffs' side, I don't want 47

24  briefs.  I want -- you know, Judge Bernstein, in Madoff, has

25  entered some orders for an omnibus briefing.  I've usually not

45

1  had a problem with this when I've had cases with lots of

2  parties, so that there's one main brief, and if people have

3  some specific issues they think are relating only to them, they

4  can file short briefs, but I don't expect to get a separate

5  brief from everybody who's conceivably involved.  I want to

6  allow enough time in the briefing schedule, from the

7  plaintiffs' standpoint, that they can try and get some

8  coordination so that people will sign on to one main brief, and

9  if there are some small briefs that deal with issues, fine.

10 But I'm not going to permit everybody who conceivably is

11 involved to be filing separate briefs on all the same issues.

12 I'm not going to read them all.

13         MR. PELLER:  Your Honor, you may be aware that the

14 plaintiffs' group has had quite a bit of conflict over what

15 issues to present, what legal theories to present, and so I

16 hope we can convince you, if need be, that at least we should

17 be permitted to file independent papers from designated

18 counsel.

19         THE COURT:  Well, you're not going to convince me,

20 all right.  To the extent there are common issues that are

21 going to be addressed, I don't -- you know, your paper is not

22 going to get read if that's -- if you're filing on the same

23 issues as everybody else.  So there ought to be enough time

24 built into the schedule that whether it's Mr. Weisfelner or Mr.

25 Weintraub, whoever's going to -- what group is going to take

1  the lead, but they can circulate the draft, they can get

2  comments and try -- and if you've got separate issues that are

3  not in the common issues, that are identified as issues for

4  this first phase, fine.  They're going to be -- they're not

5  going to be 50-page briefs on those, all right.

6       All right.  Let me hear, any other counsel want to be

7  heard?

8       MR. PELLER:  Thank you, Your Honor.

9       THE COURT:  Anybody on the phone wish to be heard?

10      MR. BABCOCK:  Your Honor, Russell Babcock on behalf

11  of Benjamin Pillars.  I mean, obviously, you know, there's --

12  the segment which appeared on page 9 of the statement kind of

13  identifies New GM's take on what Judge Furman did.  Obviously,

14  I guess -- the only thing I guess I would add is there is

15  considerable disagreement about a lot of things, but one thing

16  Judge Furman was pointing out, at least with regards to the

17  Pillars issue, was that obviously depending on how the ultimate

18  outcome of the -- whether or not there is an application filed

19  with the Supreme Court and how that is resolved one way or the

20  other may shape the issue that pertained to my particular

21  client.  He identified three different scenarios at least that

22  he envisions.

23      I don't know how Your Honor wishes to proceed with

24  those issues.  Obviously, I think Judge Furman envisioning this

25  being an issue that would addressed once the dust has settled

47

1   on the appellate process on that issue.  So that's kind of

2   where we're at.  Obviously, Judge issued his ruling -- Judge

3   Furman did, at least, and that's kind of where we're at.

4            THE COURT:  Thank you, Mr. Babcock.

5            Anybody else on the phone?

6            MR. LEDFORD:  Your Honor, this is Kris Ledford on

7   behalf of the Pope plaintiffs.  I've set out, and I've tried to

8   be concise, my position on some of these issues, but I'm only

9   speaking up now, Judge, because of what you just expressed,

10  that you don't want a bunch of briefs.

11           Your Honor, some of these issues, while they may

12  appear common, they -- the argument for my clients is different

13  than it is for the economic loss, especially when we get into

14  discussing how we're going to define terms.  And I set that

15  out.  I won't make the argument now, but I set it out for you

16  how there was a specific definition of non-ignition switch

17  plaintiffs that now New GM wants to make my clients part of and

18  therefore be bound by these prior orders when we were never

19  part of that definition that was used by the Court.  And so I

20  would respectfully ask that when we -- while you may set out a

21  procedure that says there's going to be one lead brief that

22  please allow us, as easily as possible, especially those of us

23  that are not up there, that don't practice before you, allow us

24  to file some sort of supplement or some sort of paper to

25  protect our clients' interest and how we get treated.

48

1          THE COURT:  Mr. Ledford, as I said, to the extent

2  that you believe there are -- take that, for example, the issue

3  you identified.  You believe it's an individual issue as to

4  your client, may apply to others, as well.  I'm not precluding

5  a brief on that issue.  I don't -- you know, so let me make

6  clear.  I impose page limits on briefs.  I'm not going to set

7  the page limit today.  All right.  I think that the, you know,

8  New GM and the -- certainly, the co-lead counsel for the

9  plaintiffs -- and I hope I'm not insulting anybody with that

10 label, okay -- will confer about an appropriate page limit.  I

11 would -- you know, there are a lot of issues.  My normal 25-

12 page rule is not going to apply, but I don't want -- I really

13 would prefer to avoid 100-page briefs, okay.  But I want

14 counsel to confer about it.

15          On the point that Mr. Ledford raises, in cases where

16 I have had separate briefs because there are parties that

17 believe there are separate issues, I've more typically imposed

18 a 10 or 15-page limit on those briefs.  Shorter is better than

19 longer, okay.  I do read everything that comes before me, but

20 I'm not trying to preclude any party from making an argument.

21 If you believe you have a unique argument, I'll permit it, but

22 I'm not going to permit a 30-page brief on some, you know,

23 narrow issue that you think applies to yours.  There's a lot --

24 your client -- there's a lot of issues.

25          All right.  Let me -- anybody else wish to be heard

1  on the phone?

2         MR. LEDFORD:  Your Honor, I -- this is Kris Ledford

3  again -- I have one other issue that is listed on page 15.  And

4  it's the other party's position.  It's the Pope plaintiff item

5  number 1.  And I didn't get to express how that was stated.  I

6  just want to raise it with you.  Here's what that's all about,

7  Your Honor.  And I don't know if you want -- I'd like for this

8  to get resolved sooner rather than later, but when I received a

9  letter from New GM's counsel in May of this year that said, you

10 are violating the bankruptcy stay -- or the injunction, I took

11 it to heart.  I then got a motion filed against me in June, and

12 I stopped discovery.  I was ready to file a motion to compel on

13 a bunch of important issues, but I didn't file it because I was

14 threatened with all kinds of things if I proceeded.

15        Notwithstanding the fact that I stopped in the state

16 court, New GM, in the state court action, has taken additional

17 discovery.  They've taken depositions.  And I feel like it's

18 unfair.  I'm not close to trial, Judge.  I'm trying to get some

19 basic discovery done, and I'm going to have to file a motion to

20 compel to get it done.  And all I'm trying to do is get

21 permission to go forward on that and not be faced with the, oh,

22 there's the bankruptcy proceeding, therefore you can't do it.

23 That's what I'm trying to avoid.  I need to get my case moving

24 in the state court and not wait another year before I file a

25 motion to compel on some basic written discovery.

50

1          THE COURT:  What court is your action pending

2   innocent?

3          MR. LEDFORD:  It's in Oklahoma in Muskogee County.

4          THE COURT:  Okay.  I'm going to ask Mr. Steinberg

5   about it.  I take your point to heart, and I'm not ignoring it.

6   We'll -- any other points you want to make, Mr. Ledford?

7          MR. LEDFORD:  No, sir.

8          THE COURT:  All right.  Anybody else on the phone

9   wish to be heard?

10         All right.  Mr. Steinberg, and then Mr. Weisfelner.

11   Address this discovery issue because I'm reading on page 15,

12   and you say Pope plaintiffs are free to pursue any discovery

13   they choose in the trial court.

14         MR. STEINBERG:  Right.  We were trying to deal with

15   this issue in connection with the status report so we would

16   have one less paragraph in the status report.  New GM's

17   position is if he wants to take discovery -- because he's a

18   post-sale accident, so part of it, as an assumed liabilities,

19   always been entitled to take that type of discovery.  The issue

20   is, is that he's a non-ignition switch post-sale accident, and

21   he's asking for punitive damages.  So the -- to the extent that

22   some of the discovery that he wants to take is not related to

23   the accident, but is related to the type or the ability to pay

24   because of punitive damages, we were saying that he shouldn't

25   be able to go forward.

1       Our position that we set forth in the status report,

2  not to burden Your Honor with all the issues that we otherwise

3  have, is that he could argue whatever he wants in his state

4  court action before the Oklahoma judge, and we reserve our

5  right to tell the Oklahoma judge that he's pursuing punitive

6  damages in -- if the discovery that he wants is tailored to

7  just the punitive damage aspect, we reserve the right to tell

8  the Oklahoma judge that that's a violation of Judge Gerber's

9  December judgment, and then the Oklahoma judge will decide,

10  based on our presentation, whether that's correct or not.

11       So we were prepared to take this entire issue away

12  from Your Honor, but argue that --

13       THE COURT:  So you would -- let me just cut through

14  this.  You agree that New GM will -- is prepared to address the

15  issue before the state court judge in Oklahoma about the scope

16  of permissible discovery in the <u>Pope</u> action.

17       MR. STEINBERG:  That's correct.

18       THE COURT:  All right.  Are you satisfied that with

19  [sic], Mr. Ledford?

20       MR. LEDFORD:  Well, what I'm trying to get is them to

21  make -- they can make the argument that it's premature because

22  of the Second Circuit ruling.

23       THE COURT:  No.  Mr. Ledford, you want your judge to

24  be able to decide the issues.  As Mr. Steinberg said, he's

25  going to leave it to your judge to decide the issues.

52

1          MR. LEDFORD:  Okay.  That -- I had asked directly

2     whether or not they're going to argue premature versus

3     forbidden, and they wouldn't answer that.  What I heard him say

4     is --

5          THE COURT:  You ask in Oklahoma, not before me, Mr.

6     --

7          MR. LEDFORD:  -- they're just going to argue

8     premature.

9          THE COURT:  I'm not going to -- okay.  On the issue

10    of what's the permissible scope of discovery in your action in

11    Oklahoma, ti's out of my hands.  It'll be dealt with with the

12    judge in Oklahoma.  Is that right, Mr. Steinberg?

13         MR. STEINBERG:  That is correct, but we're going to

14    argue what happened in the bankruptcy court.

15         THE COURT:  Yes, but you're going to argue it before

16    the judge --

17         MR. STEINBERG:  In Oklahoma.

18         THE COURT:  -- in Oklahoma.

19         MR. STEINBERG:  That's correct.  He'll set what he

20    wants to.

21         THE COURT:  Okay.  All right.  So -- all right.

22    Anybody else on the phone wish to be heard?  No.

23         Go ahead, Mr. Steinberg.  Let's do --

24         MR. STEINBERG:  All right.  Your Honor has given us a

25    lot of time, and I don't really want to spend a lot more time

53

1  because I guess Your Honor will give us guidance at the end as

2  to how you want us to proceed.  I just want to highlight a

3  couple of things that were said, just so it's clear.  The

4  reason why -- and I think Your Honor had said that you wanted

5  to see what I labeled the first issue, the Pillars issue, as a

6  separate issue.  It's because there actually was a back and

7  forth with Judge Furman.

8          I'm not sure whether you -- whether we actually have

9  given it to you, but we actually went through a briefing

10  schedule, letter briefs that were submitted by the Pillars'

11  counsel and by New GM in the MDL as to whether the Second

12  Circuit opinion impacted this appear because they were an

13  ignition switch or a non-ignition switch plaintiff.  So --

14          THE COURT:  This is on page 9 of the --

15          MR. STEINBERG:  That's right.  Judge Furman said,

16  either you're going to win because you convinced the Second

17  Circuit to reconsider, or if it gets down to the bankruptcy

18  court, I want to hear from Judge Glenn on that issue.  So

19  that's why that's a separate issue.  It's --

20          THE COURT:  I'd rather hear from Judge Furman on it,

21  but I don't know.

22          MR. STEINBERG:  But that's the reason why it's

23  separate, and we think it should be separately briefed.

24          THE COURT:  The issue, okay -- look, we still have to

25  deal with the late claim.  I'm going to deal with that in a few

1  minutes, but with respect -- what I want you to do is sit down

2  and provide me with a single list --

3          MR. STEINBERG:  I can do that.

4          THE COURT:  -- of the threshold issues.  And, you

5  know, I think you're all -- you all have a different agenda for

6  today, okay.  Stop word smithing it to this point.  Yeah, the

7  issues have to be fairly identified, but we're going to go

8  forward with -- and then negotiate proposed briefing schedule.

9  As I said, I think on the plaintiffs' side, because I don't

10 want separate briefs from everybody who's going to get served,

11 you need to build in enough time that they can circulate.  The

12 lead counsel who are going to -- I assume are going to take the

13 lead in putting the brief together can circulate it and

14 hopefully get comments.  That's a more time-consuming process

15 than you have on your side.  So take that into account when you

16 work out the schedule.

17         MR. STEINBERG:  Your Honor, to the extent that the

18 threshold issues have been numbered, I'm pretty sure that we'll

19 get to closure on identifying how the issues should be spelled

20 out in the order to show cause for one, two, and three.  The

21 fourth one --

22         THE COURT:  What page?

23         MR. STEINBERG:  One, two -- I'm on pages -- starting

24 on page 9 through 14.  I think we can fairly well, in talking

25 to designated counsel, work with the language we have and the

55

1  language that they've included in the report and in the

2  appendix to get to that.  I'm pretty sure we can get there.

3  Item four, we'll need some guidance on how you want to approach

4  the --

5          THE COURT:  We're going to do that now.

6          MR. STEINBERG:  -- the late proof of claim.

7          THE COURT:  Yes.

8          MR. STEINBERG:  The issue that Goodwin Proctor

9  identified on page 16 as two additional threshold issues, I

10  think that --

11          THE COURT:  Include them.

12          MR. STEINBERG:  I think we can include them --

13          THE COURT:  Include them.

14          MR. STEINBERG:  Okay.

15          THE COURT:  My view is if they -- I have no doubt

16  that Mr. Weintraub believes that these are threshold issues.

17  You may disagree.  You'll brief them.

18          MR. STEINBERG:  Okay.  The only thing that I would

19  say on those issues, because I wasn't going to quarrel about

20  briefing them, is that sometimes these two issues, the devil is

21  in the detail of what they're talking about.  And there, it

22  would almost be better to have a test case that illustrates

23  these two points so that we can then brief the issue with

24  regard to a test case.  Because inherent in these questions is

25  what is actually an independent claim and whether they're

1  really asserting something that's independent in the context of

2  what Judge Gerber said.

3        THE COURT:  Well, sit down with Mr. Weintraub and see

4  if you can work out the agreement.  Otherwise, it's going to --

5  we're going to include these issues.

6        MR. STEINBERG:  Okay.  Then I think -- then other

7  than that, the only other thing that I would just point out

8  just to -- so Your Honor had it, and I don't have it exactly to

9  the WestLaw cite, but in the Second Circuit opinion on this

10  issue that you've been talking about with Mr. Peller about

11  whether you can do this by order to show cause, there is a

12  specific reference.  The Court ruled on that.

13        THE COURT:  I'm satisfied I can do it by order to

14  show cause.

15        MR. STEINBERG:  And finally, just the final comment

16  I'll have is I think Mr. Peller attributed some comment to me

17  that was really something that Mr. Weisfelner said.  You should

18  -- Your Honor should understand that there is ongoing discovery

19  right now in the MDL on second wave discovery.  I mean, that is

20  happening.

21        THE COURT:  I addressed Mr. Peller's point, that he

22  believes the non-ignition switch plaintiffs are entitled to

23  discovery on the due process issue, which is not resolved by

24  the circuit, which is remanded here.  Why shouldn't that

25  discovery go forward?

1          MR. STEINBERG:  The issue that he's referring to here

2    -- he's -- I think he's talking about economic loss cases, and

3    there, we say that if Judge Furman rules on successful

4    liability in favor of either side, that will help decide

5    whether you need to take discovery at all.  Also, the issue of

6    discovery on ignition/non-ignition switch cases, whether you

7    use my nomenclature or Mr. Weisfelner's nomenclature, is

8    something that has been orchestrated and talked about in the

9    MDL before Judge Furman with lead counsel.

10         What you have here is Mr. Peller, who is in -- who's

11   got 14 clients, who's not part of the executive counsel, who's

12   trying to use this court and this process to try to get

13   discovery when Judge Furman has tried to organize the discovery

14   around that situation.

15         THE COURT:  All right.  Okay.  Now, let's talk about

16   the --

17         MR. WEISFELNER:  Can I just comment very --

18         THE COURT:  Go ahead, Mr. Weisfelner.

19         MR. WEISFELNER:  -- briefly before we do that?  And

20   Arthur was correct.  Mr. Peller made reference to Mr. Steinberg

21   when I think he meant to make reference to me.

22         Here are the facts as best as I know them.  There is

23   discovery that's ongoing in the MDL between New GM and lead

24   counsel.  It does involve, to a very large extent, the second

25   wave ISDs and whether those defects were known at a point in

58

1    time.   There will -- there has been and will no doubt continue

2    to be disputes between New GM and lead counsel as to the scope

3    of that discovery, how much more of that discovery is going to

4    be allowed, all of which is before Judge Furman.

5             THE COURT:  And I'm going to leave it before Judge

6    Furman.

7             MR. WEISFELNER:  And, Your Honor, just to sort of

8    frame the issue as to why discovery in this Court is, from our

9    perspective, terribly premature, start with the proposition

10   that the Second Circuit said for certain plaintiffs, and maybe

11   said it for everybody in the world, but the sale order is non-

12   effective because of a violation of due process.  Well, that's

13   a victory.

14             Now, what does one do with that victory?  If the sale

15   order is not binding, then presumably you can sue New GM on

16   account of Old GM's actions and conduct.  Well, under what

17   theory would you do that?  The one that comes to mind, and I

18   have a very narrow mind, is successor liability.  Well, if

19   Judge Furman decides in the context of the pending proposed

20   class action that successor liability is not available in the

21   16 states that are pending, it may very well be that from the

22   perspective of lead counsel in the MDL, we say, well, then, who

23   cares whether or not there's a due process violation for

24   anybody whose due process violation hasn't been determined

25   because even if we win, it's a pyrrhic victory.

59

1       THE COURT:  Believe it or not, Mr. Steinberg

2  convinced me that -- not to, at this stage, to have discovery

3  on the due process issue.

4       MR. WEISFELNER:  Okay.  The only other point that I

5  want to make, Your Honor, is one loves a challenge, even to the

6  point of having to hurt cats.  We have attempted in the past,

7  on multiple occasions, to work with Mr. Peller.  Sometimes

8  we're successful.

9       THE COURT:  I think you can leave this part out,

10  okay, but stay up there, Mr. Weisfelner because I want to talk

11  about the late proof of claim.

12       MR. WEISFELNER:  Yes, sir.

13       THE COURT:  And this is on page 14 of the status

14  report.  I've been surprised that you haven't filed -- you told

15  me a long time ago that you were going to file a motion for

16  leave to file a late proof of claim and you haven't yet.  I

17  wasn't enamored of what was suggested in the status report.  It

18  seems to me, file your motion for late proof of claim, let them

19  oppose it.  I mean, I thought that -- maybe I have to clearly

20  go back and read the second circuit opinion, but I thought they

21  reversed Judge Gerber on equitable mootness.  They specifically

22  talked about the accordion feature of the plan.  At this stage,

23  what's the amount of the allowed claims in the Old GM

24  bankruptcy?

25       MR. WEISFELNER:  Approximately -- someone will

60

1   correct me, I'm sure, if I'm wrong -- about $32 billion worth

2   of allowed claims.

3           THE COURT:  So close to the 35 billion threshold for

4   triggering the accordion?

5           MR. WEISFELNER:  Give or take, $3 billion.  That's

6   correct.

7           THE COURT:  That's real money to me, but you know,

8   okay.  So why don't you --

9           MR. WEISFELNER:  Here's the issue.

10          THE COURT:  Okay.

11          MR. WEISFELNER:  We'd be prepared to file a motion

12  for authority to file a late proof of claim virtually whenever

13  Your Honor directed us.  Here are the open issues.  On whose

14  behalf should the motion be filed?  And we've got a choice of

15  three potential groups, first wave, second wave, non-ISDs.

16          Second issue is class issues.  You heard Mr.

17  Steinberg tell you that certification in the MDL is a '20, '17,

18  '18, or '19 issue.  If the parties would concede that for

19  purposes of determining whether or not we're entitled to file a

20  late proof of claim, we'd be permitted to pursue them as class

21  claims consistent with the positions we've taken before Judge

22  Furman in the MDL, then that issue is gone.  We'll file our

23  motion, and people can have at it.  But it was not to get

24  caught up in our own collective underwear by filing a motion

25  and then arguing over who it is that we purport to represent

61

1  for purposes of that motion when class certification hasn't

2  happened yet.

3            THE COURT:  Right.  And that's not likely to happen

4  until when?

5            MR. WEISFELNER:  2018 is our collective best guess.

6            THE COURT:  I don't want to wait that long.

7            MR. WEISFELNER:  Neither do we.  Here's my

8  suggestion.

9            THE COURT:  Let me just -- so I think I've only had

10  one case where -- with the class proof of claim issue.  It was

11  a WARN Act claim -- or actually, it was the medical because

12  WARN Act is equitable.  Okay.  And there was going to be --

13  there was, you know, there was -- a claim had been filed, and

14  it was filed on behalf of named individuals and as

15  representatives of whoever.  The issue of certifying a class

16  was a different issue, and they ultimately stipulated to it,

17  and fortunately it all got settled, but maybe I don't -- and

18  maybe Mr. Steinberg will tell me what the issues are that he's

19  going to raise in opposition to a motion to file --

20            MR. WEISFELNER:  I'm not sure our opposition

21  primarily comes from New GM on this score.  And what I was

22  going to suggest is our concern really emanates from

23  discussions we've had with counsel to the GUC Trust, Gibson

24  Dunn, and counsel for the GUC unitholders, Ms. Newman's group.

25  I'm happy to work with them to see if we can't stipulate that

62

1    solely for purposes of getting to the next step, i.e. us filing

2    a motion for authority to file late claims, that without

3    prejudice to their position on class certification now or any

4    time in the future, that issue will not be raised in opposition

5    to the motion, then I think we can and should get on with the

6    late proof of claim issue.

7            THE COURT:  Okay.  I don't -- I'm not going to wait

8    until 2018, 2017, 2018 to deal with this issue.  And the way it

9    was described in the status report seemed -- it's -- you know,

10   Mr. Peller talked about the -- part of the issue on remand.

11   Well, they reversed Judge Gerber on equitable mootness.  It's

12   back, and let's get on with it.

13           MR. STEINBERG:  Except, Your Honor, I don't think the

14   Second Circuit reversed Judge Gerber on equitable mootness on

15   the merits.  It said there was not a case or controversy

16   because they had no motion for the filing of a late-filed

17   claim.  So that's why you see in the status report that if a

18   late file motion is filed, that will be the case or controversy

19   which triggers the Judge Gerber ruling on the substance of

20   equitable mootness.

21           THE COURT:  Well, look, I mean, I didn't bring out

22   Judge Gerber's ruling, but equitable mootness, he found, hey,

23   this is substantially consummated.  There is -- there's nothing

24   else.  Well, the Second Circuit said accordion feature.

25           MR. STEINBERG:  No.

1          THE COURT:  They do talk about it.

2          MR. STEINBERG:  They do.

3          THE COURT:  Judge Chin talks about the accordion

4    feature.

5          MR. STEINBERG:  They do.

6          THE COURT:  And that was why my question to Mr.

7    Weisfelner, what's the allowed amounts of claims now?  Thirty-

8    five billion triggers the accordion.

9          MR. STEINBERG:  Yes and no.  Okay.

10         THE COURT:  Tell me why not.

11         MR. STEINBERG:  Thirty-five billion is correctly the

12   threshold number, but -- and you'll see this is one of the

13   deferred issues.  It's --

14         THE COURT:  We're not going to defer it.

15         MR. STEINBERG:  No, no.  I was describing where it is

16   in the status report.  I'm about to tell you.

17         THE COURT:  I know it is, and that's -- and I'm

18   telling you we're not going to defer it.

19         MR. STEINBERG:  No, no.  I understand.  Okay.  So

20   please trike the word "deferred."  Let me just explain to you

21   why I equivocated on the 35 billion.

22         Thirty-five billion is GM's position.  It's the

23   second phase of the purchase price.  It was -- they paid a

24   credit bid, some cash, some stock, and then if the claims pool

25   had exceeded a certain amount, it was additional consideration

64

1  stocks and --

2            THE COURT:  Stocks.

3            MR. STEINBERG:  -- wants stocks to be provided.  That

4  was conditioned upon New GM, as the purchaser, getting the

5  benefit of the bargain that it contracted for.

6            THE COURT:  Well, I understand you've got your

7  arguments about benefit of the bargain.  Good luck.

8            MR. STEINBERG:  And therefore, there's an issue.

9  Well, I mean, there's an issue as to whether --

10            THE COURT:  Okay.  We'll deal with that issue.

11            MR. STEINBERG:  Right.  Okay.

12            THE COURT:  But we're going to move on and brief --

13  and it seemed to me that the best way to do that --

14            I think, Mr. Weisfelner, you should try to agree with

15  the GUC Trust because I'm not -- in deciding whether to allow

16  the late claim, I'm not going to decide the class certification

17  issue at this stage.  That's going to get deferred, all right.

18  But I think we ought to see whether the late claims can be

19  filed -- will be permitted, and I'll -- that seems to me to be

20  a threshold issue.

21            MR. STEINBERG:  I agree.  I agree.  That's -- it is

22  listed as a threshold issue.

23            THE COURT:  Well --

24            MR. WEISFELNER:  It's listed, but here's the problem.

25            MR. STEINBERG:  Yeah, let me just say that --

65

1          THE COURT:  The procedure you proposed is not

2     acceptable.

3          MR. WEISFELNER:  You sort of get there, right?  You

4     know, the --

5          THE COURT:  I do.

6          MR. WEISFELNER:  The proposal was we file our motion

7     for authority to file a late proof of claim.  If Your Honor

8     were to rule in our favor, then according to GM and the GUC

9     Trust, the music stops and we certify your decision for appeal

10    to the Second Circuit.

11         THE COURT:  Probably not.

12         MR. WEISFELNER:  And that's where we sort of --

13         THE COURT:  It might go to Judge Furman, who has the

14    class certification, you know, is going to have to deal -- I

15    mean, he -- as I understand it, isn't he getting any appeals

16    from me in Motors Liquidation?

17         MR. WEISFELNER:  I think in fairness to their

18    position, their point is that if Your Honor would have

19    determined that we're entitled to file a late proof of claim,

20    it now makes ripe the question of whether or not the relief

21    that we're seeking is equitably moot, whereas the Second

22    Circuit said, interesting issue, but there's no case or

23    controversy --

24         THE COURT:  Right.

25         MR. WEISFELNER:  -- other than the one you made up on

ACCESS TRANSCRIPTS, LLC         1-855-USE-ACCESS (873-2223)

1  your own.

2        MR. STEINBERG:  And, Your Honor, just to answer your

3  question, Judge Furman hears most, but not all, of the appeals

4  from you.  And --

5        THE COURT:  Yeah, I saw because one just got bounced

6  from Judge McMahon and got reassigned this morning.

7        MR. STEINBERG:  I don't know what's the judge --

8  Judge Abrams has one?  Did she have one?  Judge Abrams has one.

9        THE COURT:  Well, no, I think --

10        MR. STEINBERG:  She has the Chenault one, I thought.

11        THE COURT:  There was an appeal from my decision

12  about the funding of the trust.

13        MR. STEINBERG:  Okay.  But that's not something I was

14  involved in.  I think Judge Abram --

15        THE COURT:  No, 2:01:46.

16        MR. STEINBERG:  Yeah.  I think Abrams has Your

17  Honor's Chenault decision, where you had indicated that it was

18  with connection with tires and whether --

19        THE COURT:  Yeah, that one was good.

20        MR. STEINBERG:  So he's not getting them all.  But

21  Mr. Weisfelner has articulated what I think the Second Circuit

22  had ruled upon, which is that there was no case or controversy

23  so that if Your Honor was to allow a filing of the late-filed

24  claim -- and we would oppose that, but if Your Honor was to

25  allow that, then what?  Because if you then allowed the filing

67

1  of a late-filed claim, are you going to determine the substance

2  of the claim?

3        THE COURT:  I don't know.

4        MR. STEINBERG:  Because that's what Judge Furman has,

5  and some of the decisions that Judge Furman will be making --

6        THE COURT:  He can withdraw the reference on that if

7  he --

8        MR. STEINBERG:  That's correct.  And some of the

9  issues that Judge Furman will be making on that issue includes

10 whether the brand theory of damages holds.  He's already held

11 that it doesn't hold in that context, and if it doesn't hold in

12 this context --

13       THE COURT:  Don't get nervous that if I allow the

14 filing of a late claim that I'm going to be the one to decide

15 the amount, you know, which claims are allowed and which not.

16       MR. STEINBERG:  Okay.

17       THE COURT:  Okay.

18       MR. STEINBERG:  But anyway, that's -- so our view was

19 --

20       THE COURT:  Because it should be one judge who

21 decides it, not two.

22       MR. STEINBERG:  So our view of the threshold issue

23 was that if they wanted to move the late-filed claims issue up

24 to a threshold issue, that would be fine.  But it seemed that

25 once they did it, you did have the case or controversy, and

68

1  then you had to try to figure out what to do next based on the

2  Second Circuit decision.

3           THE COURT:  Yes.  And we're going to do that.  We're

4  going to move that along.  Okay.

5           MR. STEINBERG:  That's fine.  We had identified that

6  as a threshold issue, and we had not said anything more that

7  once Your Honor rules on it, then it should go.  We had said

8  certified, but Your Honor's obviously correct.  It doesn't have

9  to be certified to the Second Circuit.  It can go to Judge

10 Furman, as well, too, or to Judge Furman because he's handling

11 the MDL.

12          THE COURT:  Yes.

13          MR. STEINBERG:  So I understand that, as well.  And

14 --

15          MR. WEISFELNER:  Or the third option is Your Honor

16 may decide what to do, short of determining the allowed amount

17 of the claims.  To the extent that Your Honor determines that

18 late claims are allowed and the GUC Trust or anybody else wants

19 to reassert equitable mootness, rather than take it up to Judge

20 Furman or the Second Circuit, Your Honor may decide as a

21 preliminary matter, based on what the Second Circuit has said

22 or Your Honor's own view, because in our view, Judge Gerber

23 didn't take into account the accordion feature when determining

24 equitable mootness, that Your Honor may decide you'll take a

25 crack at it yourself.

69

1          THE COURT:  I might.

2          MR. WEISFELNER:  You might.

3          THE COURT:  I might well do that.

4          MR. WEISFELNER: There's a third option.  That's my

5  only point.

6          MR. STEINBERG:  The --

7          THE COURT:  And if it gets to the point of actually

8  having to decide what the amount, you know, who has an allowed

9  claim and what's the amount, to the extent that in a different

10 context and before Judge Furman, he may be the one most

11 appropriate to decide it.

12         MR. STEINBERG:  Right.  And Your Honor, the only

13 other thing I'll say is that whatever they file as a claim,

14 inherent in the issue -- we'll brief this -- inherent in the

15 issue of whether they can file a class claim is to whatever

16 extent Rule 23 reply, most of the cases on class claims

17 incorporate Rule 23, which is the issue that Judge Furman will

18 be tackling in the MDL.  So I think the purpose of this is to

19 sort of -- not to try to persuade you on anything today, but to

20 identify the issue.  I think you've given us some guidance.

21 I'm not sure if there's more guidance you want us to give as to

22 how to handle the issue and the drafting of the OCS, but that's

23 all I think I have to say on it.

24         THE COURT:  All right.  Juts bear -- hang on just one

25 second.

1          MR. WEINTRAUB:  Your Honor --

2          THE COURT:  Yeah, just a second, Mr. Weintraub.  Go

3    ahead, Mr. Weintraub.

4          MR. WEINTRAUB:  Of course, there are two additional

5    wrinkles to the late-filed claim issue.  With respect to the

6    pre-closing ignition switch accident plaintiffs, we don't

7    believe that could be a class proof of claim.  We --

8          THE COURT:  As to the accident plaintiffs, I Would

9    agree it couldn't be a class proof of claim.

10         MR. WEINTRAUB:  We've been moving, timing-wise, in

11   lock step with the economic loss people.  We have a motion

12   ready to be filed whenever the Court says it should be filed

13   with respect to 200 proofs of claim.  The problem is we don't

14   know that that's all of the proofs of claim that might be

15   filed.  Through Mr. Hilliard, we have 200 proofs of claim for

16   his clients.  We suspect, but we don't know that there are

17   other plaintiffs attorneys with other clients, and one of the

18   challenges is to how to get notice to those potential people

19   that they should be filing a motion now, too.

20         THE COURT:  Mr. Weintraub, in an entirely different

21   context, this morning, I reviewed -- reasoned to review a prior

22   decision of mine where I denied leave to file a late claim, and

23   the argument was that they didn't have proper notices of bar

24   date, and I denied their leave to file a late claim because

25   once they had notice that they hadn't been -- you know, once

71

1   they found out they hadn't been given proper notice of the

2   bankruptcy, there was nothing to keep them from filing a motion

3   for leave to file late claim, and they waited a year and I said

4   no.

5          All right.  So, you know, to the extent you're acting

6   on behalf of others or other counsel here are acting on behalf

7   of others, be mindful that as I understand -- I'm not deciding

8   anything, but as I understand it and decided once before, the

9   law on motions to file a late claim, you've got to act with

10  some diligence.  So if somebody turns around a year from now

11  and files a motion to file a late claim, good luck.

12          MR. WEINTRAUB:  And I agree with that, but my issue

13  is slightly different.  I don't know who knows and who doesn't

14  know that they now have the ability to file a late proof of

15  claim.

16          THE COURT:  Well --

17          MR. WEINTRAUB:  And we only represent the people that

18  we represent, and all I'm raising to the Court is there may be

19  other people out there, and we --

20          THE COURT:  I don't control that either.  All I'm

21  saying is that the issue of late claims Mr. Weisfelner raises

22  before you may have -- I was waiting to see where the motion

23  was.  It didn't come.  I see it listed on the issue list.  I

24  didn't particularly agree with the procedure that was proposed.

25  We've heard more -- I have a little better understanding of it

72

1  now in terms of the class issues.  The class issues are not

2  going to get decided at this stage.  But I can't -- you know,

3  people will do what they're going to do, and if they're

4  sleeping on their rights, they're sleeping on their rights.

5          MR. WEISFELNER:  Your Honor, the other thing that I

6  think is important --

7          THE COURT:   Let Mr. Weintraub finish.  Go ahead.

8          MR. WEINTRAUB:  As I said, Your Honor, we're prepared

9  to file our motion as quickly as possible.  What -- and now I'm

10 just thinking out loud.  There are procedures through the MDL

11 with the state court liaison.

12         THE COURT:  Right.

13         MR. WEINTRAUB:  And maybe through that state court

14 liaison, some kind of notice could be given to the great

15 unwashed that they have to do something.  So really, all I'm

16 asking is that there be built into whatever the next process is

17 some period of time to at least let that notice happen.

18         THE COURT:  Okay.  Thank you.

19         MR. WEISFELNER:  Your Honor, that was the exact --

20         THE COURT:  Mr. Weisfelner.

21         MR. WEISFELNER:  -- issue I was going to address.  It

22 seems to me that if Your Honor were to rule in favor of whoever

23 the moving parties are with regard to the authority to file

24 late claims, we might, at that point, then decide that the

25 general unwashed masses out there need to get some form of

1  notice.  I disagree with my brethren that it ought to be the

2  MDL or any part of the MDL.  I think the burden ought to fall

3  on either New GM or, quite frankly, the GUC Trust to give

4  appropriate notice because they're the ones with a fiduciary

5  duty to people who filed claims.  But put that aside.  I think

6  we can work out notice.

7          THE COURT:  I would be very happy if I didn't have

8  200 motions to file late claims, you know, next week or two

9  weeks from now, and you know, you want to raise the issue with

10 the GUC Trust, with New GM, and maybe some other constituencies

11 that you should about the notion that the issue of leave to

12 file a late claim will be raised in this -- as a threshold

13 issue through motions for leave to file a late claim as to

14 other potential parties.  They'll have, you know -- I don't say

15 a period, a deadline.  So they're not gonna going to be bound.

16          I agree, I don't want to -- I don't think there's a

17 need at this point to have a flood of motions, as long as

18 people have some assurance that, okay, if leave is granted,

19 they will --

20          MR. WEISFELNER:  And two points --

21          THE COURT:  -- have time.

22          MR. WEISFELNER:  -- two points in this regard.  You

23 never want to use the courtroom as a bargaining leverage, but

24 when we talked to the GUC Trust about class-type issues, to

25 they extent they're going to raise class-type issues in terms

74

1  of the validity of our motion, one would think that it then

2  puts leverage on this --

3          THE COURT:  Don't make any arguments now.

4          MR. WEISFELNER:  Okay.

5          THE COURT:  We'll hear the arguments when you --

6          MR. WEISFELNER:  The only other point I wanted to

7  make because Your Honor referenced it a couple times.  We have

8  a stipulation with the parties that, from their perspective,

9  excuses us form filing this motion until resolution of the

10  Second Circuit -- and by the way, GM's announced their

11  intention to seek to reverse and seek certification.

12          THE COURT:  Yes, I saw that so far.

13          MR. WEISFELNER:  And that'll be part of our briefing

14  discussion, as well, because as you might imagine, those on

15  this side of the table will also be involved in briefing

16  certification.  So -- and I'm sure we can work it out.

17          THE COURT:  Look, I can tell you right now that my

18  schedule is pretty full over the next few months.  Closing

19  argument in your other case, Mr. Weisfelner --

20          MR. WEISFELNER:  I've heard that.

21          THE COURT:  -- is going to be sometime in January,

22  and -- unrelated to Motors Liquidation, and there is a trial

23  that I scheduled for April 24th in the adversary proceeding of

24  JPMorgan and the others.  So my schedule is pretty full.  I --

25  you're all going to work out a briefing schedule, proposed

75

1  briefing schedule, and it's -- I wish I could get to it

2  immediately, but it's not likely to happen.

3       MR. STEINBERG:  Your Honor, one comment and one

4  suggestion on the late-filed claim issue.  If they're going to

5  move that they satisfied the Pioneer factors, that actually may

6  require discovery as to whether these people, whoever's moving,

7  was aware of the bar date, was aware of the ignition switch

8  recall and slept on their rights.  So --

9       THE COURT:  Well, when you get the motion, you can

10  decide whether you -- you can raise --

11       MR. STEINBERG:  Right.

12       THE COURT:  You can ask them whether they'll agree to

13  discovery, and if not, you can arrange a conference call with

14  me and --

15       MR. STEINBERG:  What I was going to suggest on the

16  late-filed claim issue is that it may make sense that -- it

17  seems to me that the plaintiffs' side has to be the movant --

18  has the opening motion, opening brief on that.

19       THE COURT:  They do.

20       MR. STEINBERG:  And it would seem to me that after

21  that pleading is filed, when we actually see what is there and

22  we actually have an opportunity to talk a little, maybe before

23  we do the next stage of trying to respond to it, we have a

24  status conference --

25       THE COURT:  That's fine.

76

1          MR. STEINBERG:  -- to Your Honor and identify --

2          THE COURT:  I agree.  I agree.

3          MR. STEINBERG:  -- all those issues because we have a

4    lot else to brief and things are very fluid in this case.

5          THE COURT:  I agree.

6          MR. STEINBERG:  Okay.

7          THE COURT:  Okay.  All right.  Anything else I need

8    to deal with today?

9          MR. STEINBERG:  No.  Just -- I think in the status

10   report, Mr. Weisfelner pointed out to me that I was rather

11   ambitious about when we would present a consensual presentation

12   -- consensual order to show cause, and I think I said probably

13   five business days --

14         THE COURT:  I think --

15         MR. STEINBERG:  -- and I think we probably need a

16   little more time.  Thanksgiving is coming up.

17         THE COURT:  I know it is.

18         MR. STEINBERG:  But I said business days, so --

19         THE COURT:  I want it by December 7th.

20         MR. STEINBERG:  December 7th is a good day.

21         THE COURT:  Okay.

22         MR. STEINBERG:  Thank you.

23         MR. WEISFELNER:  That's fine.  Thank you, Judge.

24         THE COURT:  All right.  Thank you.

25         MR. STEINBERG:  Is there anything else, Your Honor,

1    for the status conference?

2              THE COURT:  Let me -- just let me quickly -- I have a

3    lot of notes in here, but I think I addressed my issues.  Yeah.

4              We're adjourned.  We're in recess.

5              MR. STEINBERG:  Your Honor, may I just say one --

6    just one thing.  Just so it's clear what we're going to be

7    doing, we're going to be trying to identify, through the order

8    to show cause process, the threshold issues that we've

9    identified plus the two issues that Mr. Weintraub has

10   identified.

11             THE COURT:  Those are threshold issues.

12             MR. STEINBERG:  Those are the threshold issues, and

13   that's what you're going to be getting as the order to show

14   cause.

15             THE COURT:  That's what I was expecting you to --

16             MR. STEINBERG:  What's in the deferred section, we're

17   not going to be addressing.

18             THE COURT:  We're not going to deal with now, and the

19   language that you proposed about people being bound, yes, I do

20   want that in there.

21             MR. STEINBERG:  Thank you.

22             THE COURT:  Thank you.  All right.  We're adjourned.

23             THE CLERK:  All rise.

24        (Proceedings concluded at 1:21 p.m.)

25                          *  *  *  *  *

78

1   **C E R T I F I C A T I O N**

2

3          I, Alicia Jarrett, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9

10   _____

11   ALICIA JARRETT, AAERT NO. 428      DATE:   November 17, 2016

12   ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

