**Status Conference: January 12, 2017 at 9:00 a.m. (Eastern Time)**
**Opposition Deadline: TBD**

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: 206-623-7292
Email: steve@hbsslaw.com

Edward S. Weisfelner
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800
Email: eweisfelner@brownrudnick.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: 414-956-1000
Email: ecabraser@lchb.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, P.C.
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: 214-969-4900
Email: esserman@sbep-law.com

*Co-Lead Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*

*Designated Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the Bankruptcy Court*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X
                                 :

In re:                               :          Chapter 11

MOTORS LIQUIDATION COMPANY, et al.,   :          Case No.: 09-50026 (MG)

         f/k/a General Motors Corp., et al.,   :

                               :

                     Debtors.    :          (Jointly Administered)

--------------------------------------------------------------X

**MOTION FOR AN ORDER GRANTING**
**<u>AUTHORITY TO FILE LATE CLASS PROOFS OF CLAIM</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

JURISDICTION ....................................................................................................... 7

BACKGROUND ....................................................................................................... 7

I.    The Recalls.................................................................................................... 7

II.   The Bar Date And Late Filed Claims Orders.................................................. 9

III.  Proceedings In The Bankruptcy Court and Second Circuit Following The
      Disclosure Of Numerous Defects In Old GM And New GM Vehicles............................ 10

IV.   The Plaintiffs' Proposed Class Claims Against Old GM.................................. 12

ARGUMENT ........................................................................................................... 14

I.    The Ignition Switch Plaintiffs Should Be Permitted To File The  Proposed
      Ignition Switch Class Claim In Accordance With The April 2015 Decision. .................. 14

II.   The Plaintiffs Should Be Permitted Under Bankruptcy Rule 9006(b)(1)
      To File The Proposed Class Claims Under A Theory Of Excusable Neglect. ................. 15

      A.   Legal Standard For Leave To File A Late  Claim Under A Theory Of
           Excusable Neglect. .......................................................................... 15

      B.   The Plaintiffs' Failure To File Timely Proofs Of Claim Was Caused By
           Old GM's Actions, And Was Not Within The Plaintiffs' Control........................... 16

      C.   The Remaining Pioneer Factors Weigh Strongly In Favor Of Allowing
           The Plaintiffs To File The Proposed Class Claims. .................................... 18

           i.    Allowing The Plaintiffs To File The  Proposed Class Claims Will
                 Not Prejudice The Debtor. ................................................... 19

           ii.   Under The Circumstances, The Length Of Delay Is Acceptable And
                 Allowing The Plaintiffs To File The Proposed Class  Claims Will Not
                 Adversely Impact The Current Judicial Proceedings. ....................... 20

           iii.  The Plaintiffs Acted In Good Faith With Respect To Filing The
                 Proposed Class Claims. ....................................................... 22

NOTICE................................................................................................................... 23

CONCLUSION......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

City of New York v. N.Y., New Haven & Hartford R.R. Co.,
  344 U.S. 293, motion to modify denied, 345 U.S. 901 (1953) ................................................14

Elliott v. General Motors LLC (In re Motors Liquidation Co.),
  829 F.3d 135 (2d Cir. 2016) ............................................................................ *passim*

In re AMR Corp.,
  492 B.R. 660 (Bankr. S.D.N.Y. 2013) ...................................................................14

In re Arts des Provinces de France, Inc.,
  153 B.R. 144 (Bankr. S.D.N.Y. 1993) ..............................................................17, 19

In re BGI, Inc.,
  476 B.R. 812 (Bankr. S.D.N.Y. 2012) ...................................................................19

In re Ciena Capital LLC,
  No. 08-13783 (AJG), 2010 WL 3156538 (Bankr. S.D.N.Y. Aug. 10, 2010) .........................21

Indian Motocycle Assocs., Inc. v. Drexel Burnham Lambert Grp., Inc. (In re Drexel
  Burnham Lambert Grp., Inc.,
  151 B.R. 674 (Bankr. S.D.N.Y.), aff'd, 157 B.R. 532 (S.D.N.Y. 1993) ................................14

In re Enron Creditors Recovery Corp.,
  370 B.R. 90 (Bankr. S.D.N.Y. 2007) ..........................................................15, 18, 22

In re Interstate Cigar Co.,
  150 B.R. 305 (Bankr. E.D.N.Y. 1993) ...................................................................16

In re Keene Corp.,
  188 B.R. 903 (Bankr. S.D.N.Y. 1995) ...................................................................19

In re Motors Liquidation Co.,
  529 B.R. 510 (Bankr. S.D.N.Y. 2015), aff'd in part, rev'd in part, vacated
  in part sub nom. Elliott v. General Motors LLC (In re Motors Liquidation Co.),
  829 F.3d 135 (2d Cir. 2016) ............................................................................ *passim*

In re PT-1 Commc'ns, Inc.,
  292 B.R. 482 (Bankr. E.D.N.Y. 2003) ..............................................................17, 21

In re Residential Capital, LLC,
  Case No. 12-12020 (MG), 2015 WL 515387 (Bankr. S.D.N.Y. Feb. 6, 2015) ......................16

In re Residential Capital, LLC,
    Case No. 12-12020 (MG), 2015 WL 2256683 (Bankr. S.D.N.Y. May 11, 2015)...................22

In re Thomson McKinnon Sec. Inc.,
    130 B.R. 717 (Bankr. S.D.N.Y. 1991) ...............................................................................14, 15

Lone Star Indus., Inc. v. Rankin Cnty., Mississippi Bd. of Supervisors (In re N.Y. Trap
    Rock Corp.),
    153 B.R. 642 (Bankr. S.D.N.Y. 1993) ....................................................................................17

Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),
    419 F.3d 115 (2d Cir. 2005)............................................................................................ passim

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,
    507 U.S. 380 (1993).......................................................................................................... passim

Williams v. KFC Nat'l Mgmt. Co.,
    391 F.3d 411 (2d Cir. 2004), cert. dismissed 544 U.S. 1012 (2005) .......................................16

**Statutes**

28 U.S.C. § 157 ...................................................................................................................................7

28 U.S.C. § 501 ...................................................................................................................................7

28 U.S.C. § 1334 .................................................................................................................................7

28 U.S.C. § 1408 .................................................................................................................................7

28 U.S.C. § 1409 .................................................................................................................................7

**Other Authorities**

Fed. R. Bankr. P. 3002 .......................................................................................................................7

Fed. R. Bankr. P. 3003 .......................................................................................................................7

Fed. R. Bankr. P. 9006 ............................................................................................................ passim

Fed. R. Civ. P. 23 ...............................................................................................................................6

The Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs respectfully submit, under Bankruptcy Rule 9006(b)(1), this *Motion For An Order Granting Authority To File Late Class Proofs of Claim* (the "**Motion**").[1]   In support of the Motion, the Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Bankruptcy Court held in the April 2015 Decision that:  (i) the Ignition Switch Plaintiffs' due process rights were violated in connection with the November 30, 2009 Bar Date; and (ii) the "obvious" remedy for the due process violation was to grant the Ignition Switch Plaintiffs leave to file late claims.[2]  These holdings were not appealed.

2.      On July 13, 2016, the Second Circuit issued an Opinion upholding the Bankruptcy Court's finding that Old GM knew of the Ignition Switch Defect prior to its June 2009 bankruptcy filing and that the Ignition Switch Plaintiffs were "known" creditors of Old GM whose due process rights were violated.  See Elliott v. General Motors LLC (In re Motors Liquidation Co.), 829 F.3d 135, 159-61 (2d Cir. 2016) (the "Opinion").

3.      The Second Circuit vacated the Bankruptcy Court's holding in the April 2015 Decision that, under the doctrine of equitable mootness, GUC Trust Assets could not be tapped to pay any late claims.  See id. at 168-69.

---

[1]      The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs who, as of November 30, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047 (the "**Ignition Switch Defect**"). The term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs who, as of November 30, 2009, owned or leased a vehicle with defects in ignition switches, side airbags, or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118 and 14V-153.  The Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs are collectively defined herein as the "**Plaintiffs**." Except where otherwise indicated, references to "ECF No. _" are to docket entries in the Bankruptcy Court proceedings: In re Motors Liquidation Co., Bankr. Case No. 09-50026 (MG).

[2]      See In re Motors Liquidation Co., 529 B.R. 510, 574, 583, 598 (Bankr. S.D.N.Y. 2015), aff'd in part, rev'd in part, vacated in part sub nom. Elliott v. General Motors LLC (In re Motors Liquidation Co.), 829 F.3d 135 (2d Cir. 2016) (the "**April 2015 Decision**").

4.      Based on these developments, through this Motion, Plaintiffs seek authority to file two late Proposed Class Claims.[3]  The Proposed Class Claims assert claims against the GUC Trust for:  (i) fraudulent concealment; (ii) unjust enrichment; (iii) consumer protection claims; (iv) breach of the implied warranty of merchantability; and (v) negligence.

5.      The Proposed Class Claims allege that Old GM knew about the Ignition Switch Defect, other defects in ignition switches, defects in side airbags, and defects in power steering for years prior to the Bar Date.  The Proposed Class Claims further allege that Old GM concealed the existence of these defects, causing Plaintiffs to overpay for defective vehicles and bear the costs of repairs while Old GM reaped the benefit of selling defective vehicles by depriving the purchasers of the benefits of their bargains, and thus making them pay more than the cars were worth.

6.      The Motion should be granted as to the Ignition Switch Plaintiffs under the Bankruptcy Court's April 2015 Decision or, in the alternative, under Bankruptcy Rule 9006(b)(1), and, as to the Non-Ignition Switch Plaintiffs, under Bankruptcy Rule 9006(b)(1).[4]

7.      As set forth herein, the Plaintiffs clearly meet the <u>Pioneer</u> factors for establishing excusable neglect for leave to file late proofs of claim: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395 (1993).  It is now common knowledge that Old GM fraudulently concealed the Ignition

---

[3]      Attached hereto as **Exhibit A** is a proposed class claim asserted on behalf of Patricia Barker as purported class representative of the Ignition Switch Plaintiffs (the "**Proposed Ignition Switch Class Claim**").   Attached hereto as **Exhibit B** is a proposed class claim asserted on behalf of Yvonne James-Bivins as purported class representative of the Non-Ignition Switch Plaintiffs (the "**Proposed Non-Ignition Switch Class Claim**," together with the Proposed Ignition Switch Class Claim, the "**Proposed Class Claims**").

[4]      The Non-Ignition Switch Plaintiffs reserve all rights to assert that they can file late claims as known creditors who did not receive actual notice of the bar date subject to ongoing discovery in the MDL proceeding.

Switch Defect, a serious safety defect that has caused at least 124 deaths and 274 serious injuries. The Second Circuit found that "[t]he facts paint a picture that **Old GM did nothing**, even as it knew that the ignition switch defect impacted consumers." Elliott, 829 F.3d at 159 (emphasis added). "[A]s early as August 2001, at least some Old GM engineers understood that turning off the ignition switch could prevent airbags from deploying[,]" and "[b]y May 2009, at the latest, Old GM personnel had essentially concluded that the ignition switch, moving stalls, and airbag non-deployments were related." Id. at 149, 160.[5]

8.      By contrast, the Ignition Switch Plaintiffs were unaware of the Ignition Switch Defect, which "was not yet so patent that an individual could, as a practical matter, bring a case in court. The contingency standing in the way was Old GM telling plaintiffs that the ignition switch defect existed." Id. at 157. Instead, Old GM concealed the Ignition Switch Defect—a practice that was continued by New GM following the 363 Sale. Although New GM admitted that it had sufficient knowledge to require disclosure of the Ignition Switch Defect by 2012,[6] it was not until February and March of 2014, *almost five years* after the 363 Sale, that New GM finally disclosed the Ignition Switch Defect and issued a recall of vehicles.

9.      As part of its deliberate, systematic, and callous cover-up of the Ignition Switch Defect, Old GM failed to provide the Ignition Switch Plaintiffs with the notice required by constitutional due process with respect to the November 30, 2009 Bar Date for filing proofs of claim against Old GM. See In re Motors Liquidation Co., 529 B.R. 510, 574 (Bankr. S.D.N.Y.

---

[5]     As set forth in more detail *infra* ¶¶ 21-23, later recalls of vehicles with defective ignition switches concerned defects that are substantially identical to the Ignition Switch Defect. The Second Circuit did not distinguish between the various recalls for defective ignition switches.

[6]     See Verified Compl., United States v. $900,000,000 in U.S. Currency, No. 15 Civ. 7342 (S.D.N.Y. Sept. 17, 2015) [ECF No. 1], at Ex. C ¶¶ 3, 7-11. Under the terms of this deferred prosecution agreement with the Department of Justice, New GM forfeited $900 million in exchange for avoiding criminal prosecution in connection with the company's deception of the government and the public with regard to the Ignition Switch Defect. See id. at Ex. A.

2015).  It is undisputed that this failure to appropriately notice the Ignition Switch Plaintiffs precluded them from filing timely proofs of claim.  See id.[7]

10.    The Bankruptcy Court concluded that the "obvious" remedy for this deprivation of due process is "leave to file late claims."  See id. at 583.  Specifically, the Bankruptcy Court held that "[the Ignition Switch] Plaintiffs *may file late claims, and to the extent otherwise appropriate such late claims may hereafter be allowed*[.]"  Id. at 598 (emphasis added).  This finding was not appealed.  Therefore, the Bankruptcy Court should grant the Ignition Switch Plaintiffs leave to file the late Proposed Ignition Switch Class Claim as clearly permitted by the April 2015 Decision.

11.    Old GM's concealment of known defects extended far beyond the Ignition Switch Defect.  As the Second Circuit noted, "Old GM knew about moving stalls and airbag non-deployments in certain models . . . ."  Elliott, 829 F.3d at 160.  This knowledge extended to the Non-Ignition Switch Plaintiffs' vehicles, which, like vehicles with the Ignition Switch Defect, were prone to moving stalls and/or, loss of power brakes and power steering, and/or airbag non-deployment.[8]  Indeed, the recall notices for many of the Non-Ignition Switch Plaintiffs' vehicles warn of keys in the ignition moving out of "run" position, turning off the engine, and causing

---

[7]    The Ignition Switch Plaintiffs who owned or leased Old GM vehicles with the Ignition Switch Defect between July 11, 2009 and November 30, 2009 asserted claims against New GM for its fraudulent concealment of the right to file a claim against Old GM.  See *Fourth Amended Consolidated Complaint*, In re Gen. Motors LLC Ignition Switch Litig., No. 14-MD-2543 (JMF) (S.D.N.Y. Sept. 15, 2016) [ECF No. 3356].  This claim is subject to an appeal before the District Court for the Southern District of New York with briefing scheduled to be completed by January 16, 2017.  See *Order No. 114*, In re Gen. Motors LLC Ignition Switch Litig., No. 14-MD-2543 (JMF) (S.D.N.Y. Oct. 14, 2016) [ECF No. 3431].  The Ignition Switch Plaintiffs reserve all rights with respect to this claim.

[8]    See Proposed Non-Ignition Switch Class Claim ¶¶ 23-30, 34, 38-39, 43-70, 73-74, 77-81, 85-92, 98-106, 109, 119-25 (describing, *inter alia*, customer complaints, injuries and deaths, internal emails, and communications to dealerships related to the defects in the Non-Ignition Switch Plaintiffs' vehicles).  Discovery for the Non-Ignition Switch Plaintiffs' claims is ongoing in the MDL proceeding.

airbag non-deployment—the same issues created by the Ignition Switch Defect.[9]  Similar to the

Ignition Switch Defect, these defects were not disclosed until recalls were issued in 2014.

12.    As a result of Old GM's concealment of the Ignition Switch Defect and other

defects, the Plaintiffs had no knowledge that their vehicles were defective and, as a result, no

control over their ability to file a timely proof of claim.  Thus, the key <u>Pioneer</u> factor in

determining whether excusable neglect exists—the reason for delay—is met and granting the

Plaintiffs leave to file the Proposed Class Claims is appropriate under Fed. R. Bankr. P.

9006(b)(1).[10]

13.    The remaining <u>Pioneer</u> factors provide additional support for a finding of

"excusable neglect."  First, there is no danger of prejudice to the debtor, given that Old GM has

liquidated.  The size of the Plaintiffs' claim is likely to be significant and could potentially serve

to challenge the recovery already obtained by other creditors with allowed general unsecured

claims.  However, and even assuming that prior distributions to other creditors cannot be upset,

partial relief still can be fashioned by granting Plaintiffs exclusive access and/or priority as to

any value generated under the accordion feature, the remaining assets held by the GUC Trust,

and assets of the Avoidance Action Trust.[11]  Given that Old GM was aware of the Plaintiffs'

claims at the time the Plan was negotiated and confirmed, and chose not to disclose them, the

only party substantially prejudiced was the Plaintiffs.

---

[9]    <u>See</u> Proposed Non-Ignition Switch Class Claim ¶¶ 19-20, 33, 37; June 20, 2014 recall notice, attached to the
*Declaration of Edward S. Weisfelner in Support of Designated Counsel's Opposition to New GM's Motions for
Enforcement of Sale Order and Injunction*, dated December 16, 2014 [ECF No. 13026] (the "**Weisfelner
Decl.**"), Ex. G; July 2 and July 3, 2014 recall notices, attached to the Weisfelner Decl. as Ex. H.

[10]    To the extent the Non-Ignition Switch Plaintiffs are required to further prove that they were known creditors of
GM, they will attempt to do so at the appropriate time after the conclusion of any necessary discovery.

[11]    Plaintiffs reserve the right to seek to claw back distributions of GUC Trust Assets to effectuate *pari passu*
recoveries for any Allowed General Unsecured Claims obtained by Plaintiffs.

14.     Second, the Plaintiffs have acted diligently to advance the Proposed Class Claims and the delay in filing, if one exists, is insubstantial.  The Bankruptcy Court tolled the Plaintiffs' time to file the Motion until final resolution of all Threshold Issues, including appeals.[12]  Thus, the relevant delay, if any can be said to exist, is the minimal time that has elapsed since entry of the Second Circuit's order denying New GM's petition for panel rehearing or rehearing *en banc* (the "**Order Denying Rehearing**").[13]  Further, given that New GM has filed a petition for writ of *certiorari* with the United States Supreme Court, the Plaintiffs' time to file the Motion may be further tolled.[14]

15.     Third, the Plaintiffs acted in good faith, failing to file timely proofs of claim solely because Old GM failed to disclose the numerous defects in its vehicles.  Indeed, Old GM admittedly disregarded its duty to issue a timely recall or provide constitutionally adequate notice in connection with the Ignition Switch Defect.

16.     Accordingly, this Court should grant the Plaintiffs leave to file the Proposed Class Claims.  Thereafter, the Plaintiffs intend to seek application of Federal Rule of Civil Procedure 23 to the Proposed Class Claims and to certify the proposed classes and subclasses at the

---

[12]  *See* *Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect Thereto, and (III) Adversary Proceeding No. 14-01929*, dated May 16, 2014 [ECF No. 12697] (the "**Scheduling Order**") at 3 (ordering that "the GUC Trust agree[d] that it shall not assert a timeliness objection to any claims that the Plaintiffs may attempt to assert against the Old GM bankruptcy estate and/or the GUC Trust, based directly or indirectly on the ignition switch issue, as a result of Plaintiffs' delay in asserting such claims" during the period starting May 16, 2014, and continuing through 30 days from the entry of a final order with no pending appeals with respect to the Threshold Issues); *Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14-01929*, dated July 11, 2014 [ECF No. 12770], at 4-5 (listing threshold issues relating to the Ignition Switch Defect for judicial determination by the Bankruptcy Court (the "**Threshold Issues**")).

[13]  *See* *Order*, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Docket No. 15-2884-bk(L) (2d Cir. Sept. 14, 2016) [ECF No. 443].

[14]  *See* Petition for Writ of Certiorari, General Motors LLC v. Elliott, No. 16-764 (Dec. 13, 2016).

appropriate time after the conclusion of any necessary discovery, including the discovery taking place in <u>In re General Motors LLC Ignition Switch Litigation</u>, MDL No. 2543 (JMF) (S.D.N.Y.).

## JURISDICTION

17.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

18.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

19.    The statutory predicates for the relief sought in this Motion are Bankruptcy Code Section 501 and Bankruptcy Rules 3002, 3003 and 9006.

## BACKGROUND

### I.    The Recalls.

20.    In February and March 2014, New GM for the first time publicly disclosed the existence of the Ignition Switch Defect and issued a recall, NHTSA Recall Number 14V-047. This recall impacts approximately 1.6 million vehicles owned or leased by Ignition Switch Plaintiffs.

21.    Following this recall, New GM issued three additional recalls in June and July 2014 affecting approximately 8.7 million vehicles with defective ignition switches owned or leased by Non-Ignition Switch Plaintiffs.[15]  These vehicles contain ignition switches with defects substantially similar to the Ignition Switch Defect.[16]

22.    The June 20, 2014 recall, NHTSA Recall Number 14V-355, concerned the "ignition key slot defect."[17]  The recall notice identified similar issues to those in vehicles with

---

[15]    <u>See</u> June 20, 2014 recall notice, attached to the Weisfelner Decl. as Ex. G; July 2 and July 3, 2014 recall notices, attached to the Weisfelner Decl. as Ex. H.

[16]    <u>See</u> Proposed Non-Ignition Switch Class Claim ¶¶ 16-21, 31-42.

[17]    <u>See</u> June 20, 2014 recall notice, attached to the Weisfelner Decl. as Ex. G.

the Ignition Switch Defect—keys in the ignition moving out of the "run" position, turning off the engine, causing loss of power steering and power brakes, as well as airbag non-deployment.[18] Old GM was long aware of the ignition key slot defect. For example, emails from 2005 from an Old GM design engineer to other Old GM employees describe the defect, pinpoint the cause as weak detent plungers, and recognize that "this is a serious safety problem."[19] Old GM also received numerous consumer reports of complaints, crashes, injuries and deaths linked to the safety defect from 2001 through the end of its corporate existence.[20]

23.    The July 2 and 3, 2014 recalls, NHTSA Recall Numbers 14V-394 and 14V-400, concerned the "unintended ignition rotation defect," yet another defect in which keys in the ignition moved out of the "run" position, turning off the engine and causing loss of power steering and power brakes as well as airbag non-deployment.[21] Old GM was aware of this defect for years. For example, Old GM issued a voicemail to dealerships in 2003 identifying the defect, issued work orders to increase the detent plunger force on ignition switches for many of these vehicles, and received numerous consumer reports regarding the defect.[22]

24.    Throughout 2014, New GM issued numerous other recalls for safety defects, including the approximately one million vehicles with defective side airbags and defective power steering owned or leased by Non-Ignition Switch Plaintiffs.[23] NHTSA Recall Number 14V-118 concerned defective side airbags and NHTSA Recall Number 14V-153 concerned defective power steering. Old GM was aware of these additional defects, as evidenced by, *inter alia*,

---

[18]  See id.

[19]  See E-mail from Laura Andres, General Motors, to Jim Zito, General Motors (Aug. 30, 2005, 3:39 p.m.) (GMHEC000442219), attached to the Weisfelner Decl. as Ex. C.

[20]  See Proposed Non-Ignition Switch Class Claim ¶¶ 26-30.

[21]  See July 2 and July 3, 2014 recall notice, attached to the Weisfelner Decl. as Ex. H.

[22]  See Proposed Non-Ignition Switch Class Claim ¶¶ 43-70.

[23]  See id. ¶¶ 72-74, 83-86.

warranty claims, customer complaints, dealer reports to Old GM call centers, and internal investigations.[24]

25.      While Old GM knew about these defects, the Plaintiffs did not learn of their existence until New GM issued the recalls in 2014.

## II.      The Bar Date And Late Filed Claims Orders.

26.      In September 2009, approximately two months after the 363 Sale, the Bankruptcy Court entered an Order establishing November 30, 2009 as the Bar Date for filing proofs of claim against Old GM.  See In re Motors Liquidation Co., 529 B.R. at 535.

27.      Early in 2012, the GUC Trust filed a motion to disallow late filed claims.  See id. at 537.  In February 2012, the Bankruptcy Court issued the Late Filed Claims Order, which establishes that:

> all claims filed against [Old GM] on or after the date of entry of this Order shall
> be deemed disallowed (each, a "**Late Claim**"), except any Late Claim (i) which
> amends a timely filed claim, (ii) which is filed with the written consent of the
> GUC Trust, or (iii) *as to which the Court has entered an order deeming such
> late Claim timely filed*[.][25]

28.      The Late Filed Claims Order provides that "*nothing in this Order shall prevent
any claimant submitting a Late Claim from filing a motion with the Court seeking to have its
Late Claim deemed timely filed[.]*"  Late Filed Claims Order at 2 (emphasis added).

---

[24]    See, e.g., id. ¶¶ 77-81, 88-92.

[25]    *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an
Order Disallowing Certain Late Filed Claims*, dated February 8, 2012 [ECF No. 11394] (the "**Late Filed
Claims Order**") at 1-2 (second emphasis added).

III.   **Proceedings In The Bankruptcy Court and Second Circuit Following
The Disclosure Of Numerous Defects In Old GM And New GM Vehicles.**

29.   In April 2014, New GM sought to enjoin numerous class actions arising out of the

Ignition Switch Defect by filing the Ignition Switch Motion to Enforce.[26]   New GM

subsequently filed a Motion to Enforce with respect to Non-Ignition Switch Plaintiffs in August

2014; however, all issues were "deferred pending the determination of the issues" presented by

the Ignition Switch Motion to Enforce.[27]

30.   The Bankruptcy Court identified Threshold Issues relating to the Ignition Switch

Motion to Enforce, including "[w]hether any or all of the claims asserted in the Ignition Switch

Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust)" and, if so,

whether such claims should "nevertheless be disallowed/dismissed on grounds of equitable

mootness . . . ."[28]

31.   In April and June 2015, the Bankruptcy Court entered its April 2015 Decision and

Judgment on the Threshold Issues and certified each for direct appeal to the Second Circuit.[29]  In

the April 2015 Decision, the Bankruptcy Court held that Old GM failed to provide

constitutionally adequate notice of the Bar Date to the Ignition Switch Plaintiffs.  See In re

Motors Liquidation Co., 529 B.R. at 525.  The Bankruptcy Court held that "[b]y reason of its

failure to provide the Plaintiffs with either the notice required under the Safety Act or any other

---

[26]   See *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [ECF No. 12620] (the "**Ignition Switch Motion to Enforce**").

[27]   See *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 [ECF No. 12808]; In re Motors Liquidation Co., 529 B.R. at 523.

[28]   See *Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14-01929*, dated July 11, 2014 [ECF No. 12770], at 3; In re Motors Liquidation Co., 529 B.R. at 539-40.

[29]   See In re Motors Liquidation Co., 529 B.R. at 597-98; *Judgment*, dated June 1, 2015 [ECF No. 13177] (the "**Judgment**"); *Order, Pursuant to 28 U.S.C. § 158(d), and Fed. R. Bankr. P. 8006(e), Certifying Judgment for Direct Appeal to Second Circuit*, dated June 1, 2015 [ECF No. 13178].

form of written notice, Old GM failed to provide the Plaintiffs with the notice that due process requires. And because that failure prejudiced them in filing timely claims, the Plaintiffs were prejudiced as a result." Id. at 574 (footnote omitted). Thus, the Ignition Switch Plaintiffs' due process rights were violated. See id. This holding was not appealed.

32.     The Bankruptcy Court expressly recognized that "[t]he remedy with respect to the denial of notice sufficient to enable the filing of claims before the Bar Date is obvious. That is leave to file late claims. And the Court may grant leave from the deadline imposed by the Court's Bar Date Order[.]" Id. at 583. Thus, the Bankruptcy Court instructed that the Ignition Switch Plaintiffs may file late claims. See id. at 598. Likewise, the Judgment states that:

> Plaintiffs were prejudiced by the failure to receive the notice due process required of the deadline ("**Bar Date**") to file proofs of claim against the Old GM bankruptcy estate. Any Plaintiff may petition the Bankruptcy Court (on motion and notice) for authorization to file a late or amended proof of claim against the Old GM bankruptcy estate.

See Judgment ¶ 6.

33.     However, under the doctrine of equitable mootness, the April 2015 Decision and Judgment provide that GUC Trust Assets cannot be tapped to pay any late claims filed by the Plaintiffs that might be allowed. See In re Motors Liquidation Co., 529 B.R. at 529; Judgment ¶ 6. On direct appeal, the Second Circuit vacated that ruling as an advisory opinion. See Elliott, 829 F.3d at 168-69.

34.     In September 2016, the Second Circuit issued its mandate remanding the case to the Bankruptcy Court for further proceedings consistent with the Opinion.[30] Thereafter, the Bankruptcy Court issued an Order to Show Cause identifying initial issues to be addressed on

---

[30]     Mandate, Elliott v. General Motors LLC, Docket Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Sept. 30, 2016) (ECF No. 454).

remand.[31]    Among these issues is whether "the Ignition Switch Plaintiffs and/or Non-Ignition

Switch Plaintiffs satisfy the requirements for authorization to file late proof(s) of claim against

the GUC Trust and/or are such claims equitably moot . . . ."[32]

## IV.    The Plaintiffs' Proposed Class Claims Against Old GM.

35.    The proposed class in the Proposed Ignition Switch Class Claim consists of all

persons in the United States who, as of November 30, 2009, either owned or leased a defective

Old GM vehicle included in Recall No. 14V-047.[33]    The approximate number of defective

vehicles owned by members of this proposed class is 1.6 million.[34]

36.    The proposed class in the Proposed Non-Ignition Switch Class Claim consists of

all persons in the United States who, as of November 30, 2009, either owned or leased a

defective Old GM vehicle included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118 and

14V-153.[35]    The approximate number of defective vehicles owned by members of this proposed

class is approximately 9.8 million.[36]

---

[31]    *Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against General Motors LLC ("New GM") that Involve Vehicles Manufactured by General Motors Corporation ("Old GM")*, dated Dec. 13, 2016 (ECF No. 13802) (the "**Order to Show Cause**").

[32]    Id. at 3.

[33]    These vehicles include: 2005-2010 Chevy Cobalt; 2006-2010 Chevy HHR; 2007-2010 Pontiac G5; 2007-2010 Saturn Sky; 2003-2007 Saturn Ion; and 2006-2010 Pontiac Solstice.  See Proposed Ignition Switch Class Claim ¶ 303.  Claims for breach of implied warranty and negligence are asserted on behalf of two subclasses consisting of persons with vehicles sold or leased as new prior to November 30, 2009 in certain states.  See id. ¶¶ 304-05.

[34]    See id. ¶ 5.

[35]    These vehicles include: 2005-2009 Buick Lacrosse; 2000-2010 Chevrolet Impala; 2000-2005 Cadillac Deville; 2006-2010 Cadillac DTS; 2006-2010 Buick Lucerne; 2000-2008 Chevrolet Monte Carlo; 2003-2010 Cadillac CTS; 2004-2006 Cadillac SRX; 1997-2005 Chevrolet Malibu; 2000-2005 Pontiac Grand Am; 2004-2008 Pontiac Grand Prix; 1998-2002 Oldsmobile Intrigue; 1999-2004 Oldsmobile Alero; 2008-2010 Buick Enclave; 2009-2010 Chevrolet Traverse; 2008-2010 Acadia; 2008-2010 Saturn Outlook; 2004-2009 Chevrolet Malibu; 2004-2006 Chevrolet Malibu Maxx; 2009-2010 Chevrolet HHR; 2010 Chevrolet Cobalt; and 2005-2009 and 2008-2009 Pontiac G6.  See Proposed Non-Ignition Switch Class Claim ¶ 4.  Claims for breach of implied warranty and negligence are asserted on behalf of two subclasses consisting of persons with vehicles sold or leased as new prior to November 30, 2009 in certain states.  See id. ¶¶ 2, 8.

[36]    See id. ¶ 5.

37.    The Proposed Class Claims allege that Old GM failed to disclose, and actively concealed, the defective ignition switches, including the Ignition Switch Defect, defective side airbags and defective power steering, despite knowing about these defects for years.[37]  The Proposed Class Claims further allege that Old GM's corporate culture devalued safety and emphasized cost cutting, as evidenced by, *inter alia*, instructing employees not to use words like "defect," "problem" or "safety."[38]  In addition, the Proposed Class Claims allege that, as part of its campaign of deception, Old GM led the Plaintiffs to believe that Old GM vehicles were safe and reliable through various advertisements and press releases claiming, *inter alia*, that Old GM vehicles have "surprising levels of safety," "[v]ehicle safety is paramount at GM," and "GM is a leader in automotive safety."[39]

38.    Based on these allegations, the Proposed Class Claims assert claims for:

(i)    fraudulent concealment arising from, *inter alia*, Old GM's failure to disclose and active concealment of the various defects in Old GM vehicles;[40]

(ii)    unjust enrichment arising from Old GM's inequitable retention of the benefits of selling and leasing defective cars for more than they were worth while avoiding the costs of a recall and additional lawsuits at the expense of the Plaintiffs;[41]

(iii)    violation of consumer protection statutes arising from Old GM's deceptive, unfair, and/or unlawful business practices, including false representations of the quality of Old GM vehicles and concealment of the various defects in its vehicles;[42]

(iv)    breach of the implied warranty of merchantability arising from Old GM supplying vehicles with safety defects in breach of its implied warranty that its vehicles were merchantable and fit for their ordinary purpose;[43] and

---

[37]    See Proposed Ignition Switch Class Claim ¶¶ 9-258; Proposed Non-Ignition Switch Class Claim ¶¶ 9-146.

[38]    See Proposed Ignition Switch Class Claim ¶¶ 244-58; Proposed Non-Ignition Switch Class Claim ¶¶ 147-61.

[39]    See Proposed Ignition Switch Class Claim ¶¶ 259-99; Proposed Non-Ignition Switch Class Claim ¶¶ 162-216.

[40]    See Proposed Ignition Switch Class Claim ¶¶ 316-33; Proposed Non-Ignition Switch Class Claim ¶¶ 233-50.

[41]    See Proposed Ignition Switch Class Claim ¶¶ 334-44; Proposed Non-Ignition Switch Class Claim ¶¶ 251-61.

[42]    See Proposed Ignition Switch Class Claim ¶¶ 345-89; Proposed Non-Ignition Switch Class Claim ¶¶ 262-306.

[43]    See Proposed Ignition Switch Class Claim ¶¶ 390-407; Proposed Non-Ignition Switch Class Claim ¶¶ 307-26.

(v)  negligence arising from Old GM's breach of its duty to design and manufacture a safe product by supplying vehicles with safety defects and failing to warn purchasers of the defects in its vehicles.[44]

## ARGUMENT

### I.    The Ignition Switch Plaintiffs Should Be Permitted To File The Proposed Ignition Switch Class Claim In Accordance With The April 2015 Decision.

39.    The Bankruptcy Court's April 2015 Decision held that Old GM violated the Ignition Switch Plaintiffs' due process rights by failing to provide them constitutionally adequate notice of the Bar Date.  See In re Motors Liquidation Co., 529 B.R. at 574.  It expressly recognized that the appropriate remedy for this due process violation was leave to file late claims, concluding that the Ignition Switch Plaintiffs "may file late claims, and to the extent otherwise appropriate such late claims may hereafter be allowed . . . ."  See id. at 583, 598. Thus, because the April 2015 Decision clearly endorsed the filing of late claims by the Ignition Switch Plaintiffs, the Motion to file those late claims should be granted.

40.    The remedy identified in the April 2015 Decision is supported by case law.  A bar date is not enforced when a known creditor fails to receive constitutionally adequate notice thereof.  See City of New York v. N.Y., New Haven & Hartford R.R. Co., 344 U.S. 293, 296-97 (finding that the bar date order could not be sustained absent constitutionally appropriate notice), motion to modify denied, 345 U.S. 901 (1953); In re AMR Corp., 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) ("The bar date is strictly enforced except when a known creditor is not listed on the schedules and fails to receive notice of the bar date."); Indian Motocycle Assocs., Inc. v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.), 151 B.R. 674, 680-82 (Bankr. S.D.N.Y.) (holding that known creditor who did not receive actual notice of bar date could file late proof of claim), aff'd, 157 B.R. 532 (S.D.N.Y. 1993); In re Thomson

---

[44]    See Proposed Ignition Switch Class Claim ¶¶ 408-18; Proposed Non-Ignition Switch Class Claim ¶¶ 327-37.

McKinnon Sec. Inc., 130 B.R. 717, 720-21 (Bankr. S.D.N.Y. 1991) (holding that known creditor was not time-barred when debtor failed to give actual notice of the bar date order).

41.    Old GM failed to provide the Ignition Switch Plaintiffs notice of the Bar Date as required by due process.  See In re Motors Liquidation Co., 529 B.R. at 574.  Thus, as the Bankruptcy Court has already concluded, the Ignition Switch Plaintiffs should be granted leave to file the Proposed Ignition Switch Class Claim.

## II.    The Plaintiffs Should Be Permitted Under Bankruptcy Rule 9006(b)(1) To File The Proposed Class Claims Under A Theory Of Excusable Neglect.

### A.    Legal Standard For Leave To File A Late Claim Under A Theory Of Excusable Neglect.

42.    Bankruptcy Rule 9006(b)(1) provides that a court may permit late proofs of claim where the failure to file a claim by the bar date "was the result of excusable neglect."  Fed. R. Bankr. P. 9006(b)(1).  The determination of excusable neglect "is an equitable one, taking account of all relevant circumstances surrounding the party's omission."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).

43.    The Supreme Court has identified four factors—known as the Pioneer factors—in determining whether there has been excusable neglect:

> [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

Id. (citation and footnote omitted).

44.    All four Pioneer factors need not favor the movant in order to permit a late claim. See In re Enron Creditors Recovery Corp., 370 B.R. 90, 101 (Bankr. S.D.N.Y. 2007).  Of the four, the factor given the most weight is the reason for filing a late claim, including whether a timely filing was within the creditor's reasonable control.  See, e.g., Midland Cogeneration

Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 122 (2d Cir. 2005);

Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 415-16 (2d Cir. 2004) ("[T]he reason for the

delay . . . predominates, and the other three [factors] are significant only in close cases."), cert.

dismissed 544 U.S. 1012 (2005); In re Residential Capital, LLC, Case No. 12-12020 (MG), 2015

WL 515387, at *5 (S.D.N.Y. Feb. 6, 2015) ("[T]his Court should focus it analysis 'primarily on

the reason for the delay, and specifically whether the delay was in the reasonable control of the

movant.'") (citation omitted).

**B.      The Plaintiffs' Failure To File Timely Proofs Of Claim Was
Caused By Old GM's Actions, And Was Not Within The Plaintiffs' Control.**

45.      It was Old GM's decision to conceal the Ignition Switch Defect and other defects,

and its failure to provide constitutionally adequate notice of the Bar Date Order that prevented

the Plaintiffs from complying with the Bar Date Order.  The key Pioneer factor—whether the

failure to file a timely proof of claim was under the control of the claimant—thus weighs heavily

in favor of permitting the Plaintiffs to file the Proposed Class Claims, as the Plaintiffs did not

receive constitutionally adequate notice of the Bar Date.

46.      Where a creditor is unaware of a bar date due to circumstances beyond the

creditor's control, including the debtor's failure to give appropriate notice, there is no question

that the creditor's "neglect" is excusable.  See, e.g., Pioneer, 507 U.S. at 398-99 (noting that, in

assessing culpability of counsel in the late filing, a significant consideration was "the unusual

form of notice employed" that failed to indicate the significance of the bar date); In re Interstate

Cigar Co., 150 B.R. 305, 310-11 (Bankr. E.D.N.Y. 1993) (known creditor established excusable

neglect when debtor failed to provide actual notice of the bar dates and actively misled creditor

about possible claims it may have against the debtor).

16

47.    For example, in In re Arts des Provinces de France, the debtors sent notice of the bar date to "D&D," a creditor, in contravention of a Notice of Appearance requesting that all notices be directed to D&D's counsel.  See In re Arts des Provinces de France, Inc., 153 B.R. 144, 147 (Bankr. S.D.N.Y. 1993).  In addition, the debtors failed to list D&D as a creditor on their schedules.  See id.  Although D&D received actual notice of the bar date, and forwarded it to its counsel prior to the bar date, the court found excusable neglect "because the delay could have been avoided if the debtors had complied with bankruptcy procedure by properly listing D&D as a creditor and serving notice of the bar date on D&D's counsel . . . ."  Id.  Thus, D&D's late proof of claim was deemed timely filed.  See id.

48.    Similarly, excusable neglect is found when a claimant, through no fault of its own, is unaware of its claim prior to the bar date.  See In re PT-1 Commc'ns, Inc., 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003) (allowing filing of late claim where movant, who received notice of the bar date, had "no reason on the basis of the facts known to it prior to the Bar Date to conclude that it had a claim against" the debtor); cf. Lone Star Indus., Inc. v. Rankin Cnty., Mississippi Bd. of Supervisors (In re N.Y. Trap Rock Corp.), 153 B.R. 642, 647 (Bankr. S.D.N.Y. 1993) (finding that excusable neglect may exist when untimely filing of a proof of claim "was beyond [claimant's] control, in that it did not receive notice of the bar date and it did not learn of the existence of [its] claim until after the bar date expired").

49.    Here, as the Second Circuit found, the Ignition Switch Plaintiffs' ability to pursue claims against Old GM was fully contingent on "Old GM telling plaintiffs that the ignition switch defect existed."  See Elliott, 829 F.3d at 157.  But Old GM never publicly disclosed the Ignition Switch Defect.  See id. at 149-50.  Old GM's fraudulent concealment of the Ignition Switch Defect, despite its duty to provide notice to the Ignition Switch Plaintiffs under the Safety

Act prior to the Bar Date, eliminated any possibility that the Ignition Switch Plaintiffs could timely file claims with respect to the Ignition Switch Defect.  See In re Motors Liquidation Co., 529 B.R. at 574 ("[T]he denial of timely notice of the Old GM Bar Date prejudiced the Plaintiffs with respect to any claims they might have filed against Old GM.").

50.    Likewise, neither Old GM nor New GM publicly disclosed the numerous other defects plaguing Old GM and New GM vehicles until Spring and Fall of 2014.  The Non-Ignition Switch Plaintiffs had no knowledge of these defects and no reason to conclude that they had a claim against Old GM as of the Bar Date.

51.    Moreover, Plaintiffs are taking every reasonable step to pursue their claims against Old GM.  Given the tolling mechanism under the May 16, 2014 Scheduling Order, ongoing discovery with respect to the defects, the Order Denying Rehearing, and New GM's petition for writ of *certiorari* with the United States Supreme Court, it would not have been efficient or practical for Plaintiffs to have asserted proofs of claim any earlier.

52.    In sum, the circumstances that delayed the Plaintiffs' Proposed Class Claims— Old GM's cover-up of the Ignition Switch Defect and other defects—were beyond the Plaintiffs' control.  Had Old GM provided the Plaintiffs with adequate notice and appropriately disclosed the existence of the defects, there would have been no delay in filing.  Accordingly, this Pioneer factor heavily supports granting leave to file the Proposed Class Claims.

**C.    The Remaining Pioneer Factors Weigh Strongly In Favor
Of Allowing The Plaintiffs To File The Proposed Class Claims.**

53.    The remaining Pioneer factors—prejudice, length of delay, and good faith—are typically given less weight than the reason for the delay and "usually weigh in favor of the party seeking the extension."  Midland Cogeneration, 419 F.3d at 122 (citation omitted); see also In re Enron Creditors Recovery Corp., 370 B.R. at 101 (explaining that courts in the Second Circuit

focus on the reason for delay and, in the typical case, find that the remaining factors favor the movant).  Nevertheless, each of these factors weighs in favor of granting the Motion.

### i.    Allowing The Plaintiffs To File The Proposed Class Claims Will Not Prejudice The Debtor.

54.    The first of the remaining <u>Pioneer</u> factors is whether permitting a late proof of claim will prejudice the debtor.  <u>See</u> <u>Pioneer Inv. Servs.</u>, 507 U.S. at 395.  In determining whether the debtor will be prejudiced by the late claim, a court looks to "the adverse impact that a late claim may have on the judicial administration of the case," including such factors as "the size of the late claim in relation to the estate, whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim, [and] the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated."    <u>In re Keene Corp.</u>, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995); <u>see also</u> <u>In re BGI, Inc.</u>, 476 B.R. 812, 824 (Bankr. S.D.N.Y. 2012).

55.    As an initial matter, the GUC Trust cannot claim prejudice because Old GM was aware of the Plaintiffs' claims at the time of the Bar Date and Plan, but failed to make appropriate disclosures to enable the Plaintiffs to timely advance their claims.  <u>See</u> <u>In re Arts des Provinces de France</u>, 153 B.R. at 147.  Moreover, allowing the Plaintiffs to file the Proposed Class Claims likely will not disrupt the administration of the GUC Trust.  The GUC Trust Administrator has the right to allow or oppose the Plaintiffs' Proposed Class Claims on the merits.[45]  The GUC Trust has no plans to wind down in the near term and currently has administrative reserves of approximately $41.4 million, subject to increase upon Bankruptcy

---

[45]    <u>See</u> *Second Amended and Restated Motors Liquidation Company GUC Trust Agreement, dated as of July 30, 2015, by and among Wilmington Trust Company, as trust administrator and trustee of the GUC Trust and FTI Consulting, Inc., as trust monitor of the GUC Trust*, dated as of July 30, 2015 (the "**GUC Trust Agreement**"), § 5.1.

Court order.[46]    A remedy for the Plaintiffs may be fashioned, even without upsetting distributions already made, by granting them exclusive access to any value generated under the accordion feature and as to the remaining assets held by the GUC Trust.  In addition, should the Proposed Class Claims be allowed, the Plaintiffs may also be entitled to the proceeds, if any, of the Avoidance Action Trust.[47]

56.    The accordion provision requires New GM to issue additional shares of New GM common stock to the GUC Trust if and when the aggregate amount of allowed unsecured claims against Old GM exceeds $35 billion.[48]    Unitholders could not reasonably expect the potential value of the accordion feature to flow to them as existing claims do not trigger the additional consideration under the accordion feature.  Such value will only be triggered if and when Plaintiffs' claims are allowed at an amount that carries the aggregate allowed general unsecured claim amount over the threshold.

57.    Accordingly, this <u>Pioneer</u> factor supports granting the Motion.

### ii.    Under The Circumstances, The Length Of Delay Is Acceptable And Allowing The Plaintiffs To File The Proposed Class Claims Will Not Adversely Impact The Current Judicial Proceedings.

58.    While there is no bright line for determining what length of delay is acceptable in seeking to file a late proof of claim, "courts generally consider the degree to which, in the context of a particular proceeding, the delay 'may disrupt the judicial administration of the case.'"  <u>Midland Cogeneration</u>, 419 F.3d at 128 (citations omitted).

---

[46]    <u>See</u> *Motors Liquidation Company GUC Trust Quarterly GUC Trust Reports as of September 30, 2016*, dated Nov. 11, 2016 [ECF No. 13788], at 13; *Motors Liquidation Company GUC Trust Quarterly GUC Trust Reports as of June 30, 2016*, dated Aug. 12, 2016 [ECF No. 13731], at 20; GUC Trust Agreement § 6.1.

[47]    <u>See</u> *Second Amended and Restated Motors Liquidation Company Avoidance Action Trust Agreement*, dated August 25, 2016 [ECF No. 13747-1], at §§ 1.1(e), 1.1(f), 1.1(cc), 1.1(qqq), 5.1(d), 5.2, 5.3.

[48]    <u>See</u> *Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser*, dated as of June 26, 2009, § 3.2(c).

59.    Here, the Plaintiffs acted diligently in filing the Motion.  The relevant delay, if any can be said to exist, is the insubstantial time that has elapsed since entry of the Order Denying Rehearing.  See In re Ciena Capital LLC, No. 08-13783 (AJG), 2010 WL 3156538, at *3 (Bankr. S.D.N.Y. Aug. 10, 2010) (eighteen month delay not substantial); In re PT-1 Commc'ns, Inc., 292 B.R. at 489 (delay of three and a half months after discovery of alleged liability not substantial).

60.    Moreover, any delay should be discounted and the GUC Trust should be deemed to be on notice that the Plaintiffs had claims against the Old GM estate as of the Bar Date because of Old GM's knowledge of the Ignition Switch Defect and other defects, which Old GM failed to disclose.  See In re Ciena Capital LLC, 2010 WL 3156538, at *3 (holding that the "length of delay" Pioneer factor weighed in favor of allowing the late claim because, inter alia, the debtors were on notice since prior to the bar date that the claim "existed in some capacity").

61.    Finally, the timeliness evaluation "take[s] into account the creditor's explanation for delay.  Thus, a long delay . . . with a strong explanation might be more acceptable than a short delay with a weak explanation . . . ."  Midland Cogeneration, 419 F.3d at 129.  The Plaintiffs have a historically strong explanation for their delay in filing the Proposed Class Claims—Old GM's and New GM's concealment of the Ignition Switch Defect and other defects, which New GM's CEO Mary Barra admits was "unacceptable."[49]  Thus, this Pioneer factor supports granting the Motion.

---

[49]    See The GM Ignition Switch Recall: Why Did It Take So Long?, Hearing Before the H.R. Subcomm. on Oversight and Investigations, Comm. on Energy and Commerce (2014), available at http://docs.house.gov/committee/Calendar/ByEvent.aspx?EventID=102033.

### iii.    The Plaintiffs Acted In Good Faith With Respect To Filing The Proposed Class Claims.

62.    The last Pioneer factor considers whether the claimant acted in good faith in seeking to file the late claim.  See Pioneer Inv. Servs., 507 U.S. at 395.  A claimant is found to act in good faith when they move to file a late claim upon learning of the alleged liability and there is no evidence of bad faith.  See In re Enron Creditors Recovery Corp., 370 B.R. at 104 (holding that the "good faith" Pioneer factor weighed in favor of allowing the late claim that was mistakenly filed against the wrong entity where there was "no indication in the record that [the movant] acted in a manner other than in good faith in seeking to file [the] proof of claim."); In re Residential Capital, LLC, Case No. 12-12020 (MG), 2015 WL2256683, at *10 (Bankr. S.D.N.Y. May 11, 2015) (finding that "the absence of any allegation that [the creditor] did not act in good faith" would support the allowance of a late-filed claim).

63.    Here, there are no facts showing that the Plaintiffs have acted in bad faith.  To the contrary, the Plaintiffs' position is due directly and exclusively to the bad faith actions of Old GM and New GM.  By concealing the Ignition Switch Defect and numerous other defects, Old GM and New GM prevented the Plaintiffs from learning the facts necessary to determine that they had claims against Old GM.  Old GM's actions clearly prevented the timely filing of claims by failing to provide constitutionally adequate notice of the Bar Date to Plaintiffs.  Indeed, the Bankruptcy Court recognized that the remedy for Old GM's violation of the Ignition Switch Plaintiffs' due process rights was "obvious," and required permitting the Ignition Switch Plaintiffs to file late claims.  In re Motors Liquidation Co., 529 B.R. at 583.

64.    Therefore, the Pioneer factors are satisfied, and the Plaintiffs should be permitted to file the Proposed Class Claims.

## **NOTICE**

65.    Notice of this Motion has been provided to the Notice Parties set forth in the

Order to Show Cause and all entities that receive electronic notice from the Court's ECF system.

## **CONCLUSION**

WHEREFORE, the Plaintiffs respectfully request that this Court enter an Order,

substantially in the form attached hereto as **Exhibit C**, granting the Plaintiffs leave to file the

Proposed Class Claims.


[*Remainder of the page intentionally left blank*]

Dated: December 22, 2016
      New York, New York

Respectfully submitted,

BROWN RUDNICK LLP

*/s/ Edward S. Weisfelner*

Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
Email: eweisfelner@brownrudnick.com
Email: hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
Email: esserman@sbep-law.com

*Designated Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
Email: steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
Email: ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*

24