# Ellis & Estes

## Attorneys at Law

3949 Corrales Rd. Suite 230
Corrales, NM 87048
Tel (505) 266-0800 | Fax (505) 508-1872
James@EllisEstes.com | Daniel@EllisEstes.com | Ken@EllisEstes.com

James C. Ellis, Esq.                                                  Kenneth C. Downes, Esq., *of counsel*
Daniel P. Estes, Esq.                                                                      (505) 243-0816

February 21, 2016

The Honorable Martin Glenn
U.S. Bankruptcy Court
One Bowling Green
Courtroom 523
New York, NY 10004-1408

**In re: Motors Liquidation Company et al., f/k/a General Motors Corp., et al.**
**Case No. 09-50026 (MG)**

This letter is being filed in accordance with your order of December 13, 2016, in Case No. 09-50026 (MG) entitled: *In re Motors Liquidation Company et al., f/k/a General Motors Corp., et al., Debtors,* filed in the United States Bankruptcy Court Southern District of New York. Specifically, this letter addresses Threshold Issue No. 4 (Post-Closing Accident Plaintiffs).

We have received "Plaintiffs' Joint Opening Brief on the 2016 Threshold Issues" and because our case has unique issues not adequately addressed in pending brief, we request leave to file a brief.

Our office represents Camille Stueber in a civil case against "New GM," *Stueber vs. General Motors, LLC. et al.,* D-202-CV-2016-01254. Ms. Stueber alleges that she was injured when a 2009 Chevrolet Corvette (manufactured by "Old GM") malfunctioned and struck her on March 13, 2013. It is our contention that New GM is liable for Ms. Stueber's injuries under the terms of the Sale Agreement and in its own right due to its failure to warn Ms. Stueber of the subject vehicle's known dangerous defect.

The incident we are litigating in New Mexico State Court occurred on March 13, 2013, well after the purchase of Old GM by New GM. New GM is not in bankruptcy and is the named defendant in our case. Since Old GM is not a party to Ms. Stueber's case, we should be able to proceed unfettered against New GM.

If we are allowed to file a brief in this matter, it can be expected that we will show that the Sale Agreement specifically allows our suit against New GM because it sets forth the "assumed liabilities" of New GM to be **"all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on**

FEB 23 2017

U.S. BANKRUPTCY COURT, SDNY

The Honorable Martin Glenn
February 21, 2017
Page **2** of **2**

**public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, 'Product Liabilities'), which arise directly out of accidents, incidents or other distinct and discreet occurrences that happen on or after the Closing Date and arise from such motor vehicles' operation or performance… ."** Sale Agreement, Sec. 2.3(a)(ix); *see also*, *Elliott vs. General Motors, LLC,* (In re Motors Liquidation Co.), 829 F.3d 135, 147 (2nd Cir., 2016). ("In the Sale Agreement, New GM agreed to assume liability for accidents after the closing date for the § 363 sale….").

In addition, our brief will address the issue of punitive damages against New GM for its reckless, wanton, and/or intentional failure to warn Ms. Stueber of the vehicle's dangerous condition, despite New GM being aware of the defect. The Opening Brief is silent on this issue and we request leave from this court to address punitive damages.

Notably, New GM states no defenses in its Answer to Ms. Stueber's Complaint regarding bankruptcy or any stays deriving therefrom. Accordingly, Ms. Stueber's case should not be barred or stayed.

Our allegations also include intentional torts and punitive damages against New GM for violations of the Unfair Trade Practices Act and it would be inappropriate to extend a stay against an intentional tortfeasor who has not sought bankruptcy protection.

For the above reasons we would like to submit a brief regarding Threshold Issue No. 4, or at least obtain clarification in the form of an Order lifting any stay against New GM, for purposes of Ms. Stueber's case.

By copy of this letter I am notifying all counsel of my communication with the Court.

Sincerely,

James C. Ellis

JCE/el

Enclosure:     Complaint
               Sale Agreement Order
               Answer

cc:     Michael Clemens, Esq.
        Ryan A. McCarthy, Esq.
        Carlos Obrey-Espinoza, Esq.
        Todd E. Rinner, Esq.
        Those listed on Exhibit "A" of the Order filed 12/13/16

FILED IN MY OFFICE
DISTRICT COURT CLERK
2/25/2016 2:22:28 PM
James A. Noel
Catherine Chavez

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT**

CAMILLE STUEBER, in her individual capacity,

      Plaintiff,

v.                           Cause No.    D-202-CV-2016-01254

THE ESTATE OF JOHN STUEBER (deceased),
FARMERS INSURANCE COMPANY OF ARIZONA,
GENERAL MOTORS, LLC and RELIABLE CHEVROLET (NM), LLC.

      Defendants.

<u>**COMPLAINT FOR DAMAGES ON THE BASIS OF**</u>
<u>**PRODUCTS LIABILITY AND NEGLIGENCE**</u>

      **COMES NOW** the Plaintiff, Camille Stueber, in her individual capacity, by and through

her counsel of record James C. Ellis, Attorney at Law, P.C. (James C. Ellis and Daniel P. Estes),

and file this Complaint. As grounds therefore, Plaintiff states the following:

**PARTIES, JURISDICTION, AND VENUE**

      1)     Plaintiff Camille Stueber is an adult resident of Bernalillo County, State of New

Mexico. Ms. Stueber was the wife of John Stueber (now deceased) at the time of the subject

accident. Mr. Stueber passed away by his own hand on or about July 6, 2015. At the time of his

death, Mr. Stueber was a resident of Bernalillo County, State of New Mexico.

      2)     The Personal Representative of the Estate of John Stueber is his daughter, Shawn

Blackwood, who is a resident of Bernalillo County, State of New Mexico.

      3)     At all times relevant to this Complaint, Defendant Farmers Insurance Company of

Arizona, and its subsidiaries (hereinafter referred to as "Farmers") provided automobile liability

insurance to John Stueber and uninsured/underinsured motorist coverage to Plaintiff Camille Stueber.

4)    Farmers is named as a party herein pursuant to the holding in *Raskob v. Sanchez*, 1998-NMSC-045.

5)    Defendant General Motors, LLC ("General Motors") is a Delaware corporation with its headquarters in Detroit, Michigan. General Motors does business in the State of New Mexico and maintains a corporate agent located in Santa Fe, New Mexico. Upon information and belief, General Motors, LLC is the successor in interest of General Motors Corporation, which filed for bankruptcy in 2009. General Motors Corporation and its successor in interest, General Motors, LLC, were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, and servicing automobiles, including the subject vehicle.

6)    Upon information and belief, Defendant Reliable Chevrolet (NM), LLC ("Reliable") is a Delaware corporation with its headquarters in Albuquerque, New Mexico. Defendant Reliable Chevrolet (NM), LLC is, since 2015, the successor in interest of Reliable Chevrolet, Inc., which was a New Mexico corporation with its headquarters in Albuquerque, New Mexico. Reliable Chevrolet, Inc. and its successor in interest, Defendant Reliable Chevrolet (NM), LLC, is a new and used car dealer in the business of selling, leasing, and servicing automobiles, including selling and servicing the subject automobile.

7)    This Court has jurisdiction over the parties and controversies involved in this litigation.

8)    Venue is proper in Bernalillo County, New Mexico, because Plaintiff resides in that County and a substantial part of the events or omissions that gave rise to the claims occurred within that county.

2

## MATERIAL FACTS

9)      Plaintiff incorporates the above-pleaded paragraphs as if fully set forth herein.

10)     As used in this Complaint, the "subject vehicle" or "subject automobile" refers to a 2008 Chevrolet Corvette Z06, VIN 1G1YY26E085116591, which at all times relevant to this Complaint, was owned by John Stueber and Camille Stueber.

11)     The subject vehicle, including the subject vehicle's drivetrain and clutch system, was manufactured by Defendant General Motors or its predecessor, General Motors, Inc.

12)     The subject vehicle was sold as a new car to John Stueber by Defendant Reliable or its predecessor, Reliable Chevrolet, Inc.

13)     Defendant Reliable serviced the subject vehicle at least once following its sale, and prior to the accident of March 13, 2013 described herein.

14)     On March 13, 2013, John Stueber was washing the subject vehicle in the driveway of his and Plaintiff Camille Stueber's house.  While it was being washed, the vehicle was parked approximately fifteen feet from the entryway to the Stueber's garage, the outside door to which was open.

15)     At the time of the accident, Camille was sitting on a chair inside the garage, along the left-side wall.

16)     When John Stueber finished washing the vehicle, he got inside the automobile in order to move it away from the water.  As he started the vehicle, it unexpectedly lurched and sped forward, striking and running over Camille Stueber, causing her to suffer physical and emotional damages in an amount to be proven at trial.  For purposes of this Complaint, this incident shall be called "accident" or "incident".

17)     The vehicle lurched and sped forward because of defective clutch components (or

3

other defective condition), which caused the clutch pedal to stick to the floor despite the vehicle being in gear. This fault allowed Mr. Stueber to start the vehicle while in gear, and caused the vehicle to lurch forward unexpectedly, striking the Plaintiff.

18)    At all times relevant to this Complaint, Mr. Stueber operated the subject automobile for the purpose, and in the manner, for which it was designed.

19)    The subject vehicle is equipped with a clutch start switch which prevents the engine from cranking unless the clutch pedal is fully depressed, even when the vehicle is in neutral. Upon information and belief, the clutch start switch is a safety device that keeps the engine from starting while in gear.

20)    Defendants GM and Reliable knew of the vehicle's defective clutch components prior to the accident. For example, by January 15, 2008, Defendant GM had distributed to its dealers (but not to the general public) a "Preliminary Information" ("PI") bulletin titled "Clutch Pedal Sticks to the Floor and Will Not Return" which is attached to this Complaint as **Exhibit 1**. In addition, in June of 2012, Defendant GM had distributed a "PI" titled "Corvette Clutch Pedal Low or Sticks to the Floor – CMC (Clutch Master Cylinder) Bypass" which is attached to this Complaint as **Exhibit 2**.

21)    Prior to the accident, Defendants GM and Reliable knew that the clutch components and or clutch system installed in the 2008 model Chevrolet Corvette Z06 was negligently designed, but nonetheless continued to manufacture and sell such vehicles, including the subject vehicle.

22)    The day after the accident occurred, Defendant Reliable picked the vehicle up and took it to its service center for inspection and repair.

23)    At no time prior to the accident did Defendants Reliable or GM warn the Stuebers

4

that the subject vehicle had defective clutch components.

24)     At no time prior to the accident did Defendants Reliable or GM make efforts to notify the Stuebers that the subject vehicle had defective clutch components, and at no time prior to the accident did Defendant GM or Reliable attempt to recall the subject vehicle.

25)     The defects that caused the subject vehicle to unexpectedly lurch forward make all 2008 model Chevrolet Corvette Z06s, including the subject vehicle, unreasonably unsafe and unfit for their ordinary and intended use.  Such vehicles, including the subject vehicle, put drivers and others (including Plaintiff) at risk of great bodily harm or death.  Plaintiff's injuries could have been avoided, because GM and Reliable knew but did not disclose to the Stuebers the subject vehicle's dangerous and defective condition.

26)     Following Mr. Stueber's death, GM sent Mr. Stueber a written notice, serving to make him:

> [A]ware that the clutch system on your vehicle may fail if . . . a high-pressure pulse occurs during a clutch self-adjustment event.  If the clutch fails, the clutch pedal may not return if depressed.  If the clutch pedal does not return, it may be possible to start the vehicle when the transmission is in any gear.  This could result in unexpected vehicle movement when the engine is started.

*See* **Exhibit 3.**

27)     Defendant GM's failure to timely notify the Stuebers of the subject vehicle's defective condition is part of a pattern and practice of failing to notify its customers of defective conditions, as highlighted by GM's conduct regarding defective ignition switches, which led to at least 124 deaths, a deferred criminal prosecution agreement including a $900 million forfeiture, and numerous civil lawsuits and penalties.

28)     As a result of the alleged misconduct and reckless and wanton actions of Defendants GM and Reliable, Plaintiff suffered damages and personal injuries, including past

5

and future medical costs, pain and suffering, permanent injuries, all in an amount to be proven at trial.

29)    Defendants GM and Reliable, in failing to disclose the unreasonable risk of harm posed by the defective clutch components in a reasonably timely manner, acted recklessly and with wanton disregard for the rights of others, including Plaintiff Camille Stueber, such that an award of punitive damages is appropriate in this matter.

30)    In the alternative, or in addition to the above facts, Defendant John Stueber acted in a comparatively negligent manner when he failed to prevent the subject vehicle to lurch and speed forward, causing Plaintiff damages and personal injuries, including past and future medical costs, pain and suffering, permanent injuries, all in an amount to be proven at trial.

## COUNT I: PRODUCTS LIABILITY (DUTY OF CARE)
### (Against Defendants GM and Reliable)

31)    Plaintiff hereby incorporates each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

32)    Defendants GM and Reliable designed, manufactured, supplied, serviced and/or sold the subject vehicle, which contained the defects more particularly set forth above.

33)    Prior to the accident, Defendants GM and Reliable knew or should have known that such defects could cause the subject vehicle to suddenly lurch forward when started, despite the clutch pedal being fully depressed, and that such unexpected movement would foreseeably cause injuries to persons, including the Plaintiff.

34)    Defendants GM and Reliable owed a duty to exercise ordinary care in designing, manufacturing, marketing, testing, selling, and distributing the vehicles such as, and including, the subject vehicle; and to use reasonable care to discover the dangerous propensities of its products, including the dangers associated with the subject vehicle, as set forth herein.

6

Defendants owed such duties to a class of persons that includes the Plaintiff.

35)    Defendants GM and Reliable breached these duties by failing to exercise ordinary care in designing, manufacturing, marketing, testing, selling, and distributing the subject vehicle, and other failures to be proven at trial, including but not limited to failing to warn of the defects and/or failing to adopt a safer, practical, feasible, or otherwise reasonable alternative that could have been reasonably adopted to prevent or substantially reduce the risk of harm without substantially impairing the usefulness, practicality, or desirability of the subject vehicle.

36)    It was entirely foreseeable to, and well-known by, Defendants GM and Reliable, that incidents involving its vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicles.

37)    Defendants' breach of these and other duties to be proven at trial were the direct and proximate cause of Plaintiff's damages, as more particularly set forth above.

### COUNT II: PRODUCTS LIABILITY (STRICT LIABILITY)
(as to Defendants GM and Reliable)

38)    Plaintiff hereby incorporates each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

39)    Defendants GM and Reliable designed, manufactured, supplied, serviced and/or sold the subject vehicle, which contained the defects more particularly set forth above.

40)    The defective condition of the subject vehicle at the time of the accident posed an unreasonable risk of injury. Such risk made the subject vehicle *per se* defective.

41)    Defendants knew or should have known of the defective nature of the subject vehicle prior to the accident.

42)    Defendants GM and Reliable are strictly liable to Plaintiff, who could have reasonably been expected to be in the vicinity of the subject vehicle during its normal use and

7

operation.

43)    The defective nature of the subject vehicle is a direct and proximate cause of
Plaintiff's injuries, as more particularly set forth above.

### COUNT III: PRODUCTS LIABILITY (RES IPSA LOQUITUR)
### (as to Defendants GM and Reliable)

44)    Plaintiff hereby incorporates each and every paragraph set forth in this Complaint
as if fully copied and set forth at length herein.

45)    The defective condition of the subject vehicle existed at the time the product was
supplied by Defendants GM and Reliable.

46)    The condition of the subject vehicle was not substantially changed after it left the
Defendants' possession.

47)    The defect described herein is of a kind which usually would not exist unless the
Defendants failed to use ordinary care.

48)    The defective condition of the subject vehicle is a direct and proximate cause of
Plaintiff's injuries, as more particularly set forth above.

### COUNT IV: PUNITIVE DAMAGES
### (as to Defendants GM and Reliable)

49)    Plaintiff hereby incorporates each and every paragraph set forth in this Complaint
as if fully copied and set forth at length herein.

50)    With regard to the allegations set forth above, Defendants GM and Reliable acted
in a reckless and wanton manner and without regard for the rights of persons including the
Plaintiff.

### COUNT V: UNFAIR AND UNCONSCIONABLE TRADE PRACTICES
### (as to Defendants GM and Reliable)

51)    Plaintiff hereby incorporates each and every paragraph set forth in this Complaint

8

as if fully copied and set forth at length herein.

52)     Defendants GM and Reliable engaged in unfair trade practices by supplying a

defective vehicle to the Stuebers, despite knowing that such vehicle was defective and

dangerous.

53)     Specifically, Defendants GM and Reliable represented that the subject vehicle

was of a particular standard and/or quality, when in reality it was not. Defendants knew that the

subject vehicle was not of the represented standard and/or quality at the time the Stuebers

purchased the subject vehicle in approximately July 2008. *See* **Exhibit 1.**

54)     Additionally, Defendants GM and Reliable failed to deliver the quality of goods

contracted for by selling a vehicle the Defendants knew was defective and dangerous.

55)     Because such acts resulted in a gross disparity between the value received by the

Stuebers and the price the Stuebers paid for the subject vehicle, Defendants GM and Reliable

acted unconscionably. Additionally, Defendants GM and Reliable took advantage of the

Stuebers' lack of knowledge regarding the defective and dangerous condition of the subject

vehicle in a matter that resulted in a grossly unfair transaction.

56)     Because Defendants GM and Reliable knew of the defective and dangerous

condition of the subject vehicle at the time it was sold to the Stuebers, these Defendants willfully

engaged in unfair and unconscionable trade practices, causing Plaintiff actual damages in an

amount to be proven at trial and as defined in the New Mexico Unfair Trade Practices Act,

NMSA 1978, §§ 57-12-1, *et seq.*

### COUNT VI: COMPARATIVE NEGLIGENCE
#### (as to Defendant The Estate of John Stueber)

57)     Plaintiff hereby incorporates each and every paragraph set forth in this Complaint

as if fully copied and set forth at length herein.

9

58)     Defendant Stueber owed a Plaintiff a duty to operate the subject vehicle in a safe, prudent, and/or careful manner with a conscious effort to lookout for the safety of others.

59)     Defendant Stueber breached said duties by failing to prevent the subject automobile from striking and running over the Plaintiff.

60)     As a direct and proximate cause of Defendant Stueber's negligence, Plaintiff suffered damages and injuries as more fully set forth herein and in an amount to be proven at trial.

**WHEREFORE**, the Plaintiff prays for the following relief:

A) A reasonable monetary award for her bodily injuries and damages, as well as for the pain, suffering, and mental anguish she has incurred as a result of Defendant's wrongful conduct as described above;

B) Punitive damages against Defendants GM and Reliable;

C) Damages as set forth in the New Mexico Unfair Trade Practices Act, §§ 57-12-1, *et seq.*, including treble damages, attorneys' fees, and costs;

D) An award of pre-judgment and post-judgment interest at the statutory rates on any judgment or settlement rendered herein; and

E) Any other and further relief as the Court deems just and proper on the Plaintiff's behalf.
   Respectfully submitted,

   */s/ Daniel P. Estes*
   Daniel P. Estes, Esq.
   JAMES C. ELLIS, ATTORNEY AT LAW, P.C.
   *Attorney for Plaintiff*
   3949 Corrales Road, Suite #230
   Corrales, NM 87048
   (505) 266-0800
   (505) 508-1872 Facsimile
   Daniel@Estes-Law.com

10

# #PIP4269A: Clutch Pedal Sticks To The Floor And Will Not Return - keywords inoperative low shift - (Jan 15, 2008)

**Subject: Clutch Pedal Sticks to The Floor and Will Not Return**



**Models: 2005-2008 Chevrolet Corvette, Corvette Z06**

**Equipped With A Manual Transmission**

---

**This PI was superseded to update model years. Please discard PIP4269.**

---

The following diagnosis might be helpful if the vehicle exhibits the symptom(s) described in this PI.

**Condition/Concern:**

Customers may comment or technicians may notice the clutch pedal on some Corvettes may stay on the floor when depressed.

**Recommendation/Instructions:**

BEFORE ANY PARTS ARE REPLACED the technician should follow the procedure listed below:

1. The engine should be off, transmission placed in neutral and the parking brake applied
2. Verify the clutch reservoir is filled to the "fill line." DO NOT remove the cover to inspect. Inspect the fluid level from the side of the reservoir. If additional fluid is required use only DOT4 fluid from an unopened container.

   **Note:** There is no substitution allowed other than DOT4 fluid.
3. If the pedal is on the floor pull the pedal back to the full up stop and hold for one second. The fill port in the master cylinder is at the very top of the stroke. If the pedal is not fully returned to the top of the stroke, new fluid cannot enter the master cylinder from the reservoir.
4. Repeat the above step three times. If the clutch pedal does not freely return, repeat steps three and four.
5. Check the reservoir to insure the fluid is still full.
6. Drive the vehicle to insure proper clutch engagement

The Corvette uses a self adjusting clutch and some change in pedal feel or pressure are normal as the clutch adjust.

Please follow this diagnostic or repair process thoroughly and complete each step. If the condition exhibited is resolved without completing every step, the remaining steps do not need to be performed.

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the equipment, tools, safety instructions, and know-how to do a job properly and safely. If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your GM dealer for information on whether your vehicle may benefit from the information.



WE SUPPORT
VOLUNTARY
TECHNICIAN
CERTIFICATION



EXHIBIT
1

# #PIP5037: Corvette Clutch Pedal Low Or Sticks To The Floor – CMC (Clutch Master Cylinder) Bypass - (Jun 25, 2012)

**Subject:** Corvette Clutch Pedal Low Or Sticks To The Floor – CMC (Clutch Master Cylinder) Bypass

**Models:** 2008 - 2012 Chevrolet Corvette, Grand Sport, Z06, ZR1



The following diagnosis might be helpful if the vehicle exhibits the symptom(s) described in this PI.

## Condition/Concern:

Customers may comment that the clutch pedal sticks to the floor or the pedal stays low. Concern will NOT be intermittent and will be a hard fault. If the condition is intermittent then this pi will not apply.

## Recommendation/Instructions:

This may be the result of the clutch master cylinder bypass. This concern can be identified by having no resistance when clutch pedal is pulled back towards top of travel and pushed to floor. What has happened is the central valve cap inside the clutch master cylinder has popped off causing fluid to bypass from the high pressure hydraulic line to the low pressure hydraulic line and reservoir. The clutch master cylinder is not serviceable and must be replaced.

Please follow document ID: 2165489 Clutch Master Cylinder Replacement for instructions.

**Note:** This complaint should be inspected by your service manager and Fixed Operations Manager (Warranty Manager in Canada).

Please follow this diagnostic or repair process thoroughly and complete each step. If the condition exhibited is resolved without completing every step, the remaining steps do not need to be performed.

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the equipment, tools, safety instructions, and know-how to do a job properly and safely. If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your GM dealer for information on whether your vehicle may benefit from the information.



WE SUPPORT
VOLUNTARY
TECHNICIAN
CERTIFICATION



EXHIBIT
2



Chevrolet
P.O. Box 909989
Milwaukee, WI 53209-9989

|| || || || || || || || || || || || || || || || || || || || || || || || || || || ||

14717 1G1YY26E085116591 13 0014049
JOHN A STUEBER
137 CARLITO RD NW
ALBUQUERQUE, NM 87107-6011

|| || || || || || || || || || || || || || || || || || || ||

September 2015

This notice applies to your 2008 Corvette **VIN: 1G1YY26E085116591**

Dear John A Stueber:

As the owner of a 2008 model year Chevrolet Corvette, your satisfaction with our product is very important to us.

This letter is intended to make you aware that the clutch system on your vehicle may fail if unapproved fluids are used to service the system or if a high-pressure pulse occurs during a clutch self-adjustment event. If the clutch system fails, the clutch pedal may not return if depressed. If the clutch pedal does not return, it may be possible to start the vehicle when the transmission is in any gear. This could result in unexpected vehicle movement when the engine is started.

**Do not take your vehicle to your Chevrolet dealer as a result of this letter unless you believe that your vehicle has the condition as described above.**

**What We Have Done:** General Motors is providing owners with additional protection for the condition described above. If this condition occurs on your 2008 Chevrolet Corvette within 10 years of the date your vehicle was originally placed in service or 120,000 miles (193,000 km) whichever occurs first, the condition will be repaired for you at **no charge.** Diagnosis or repair for conditions other than the condition described above is not covered under this special coverage program.

**What You Should Do:** If you believe that your vehicle has the condition described above, repairs and adjustments qualifying under this special coverage must be performed by a Chevrolet dealer. You may want to contact your Chevrolet dealer to find out how long they will need to have your vehicle so that you may schedule the appointment at a time that is convenient for you. This will also allow your dealer to order parts if they are not already in stock. Keep this letter with your other important glove box literature for future reference.

**Reimbursement:** If you have paid for repairs for the condition described in this letter, please complete the enclosed reimbursement form and present it to your dealer with all required documents. Working with your dealer will expedite your request, however, if this is not convenient, you may mail the completed reimbursement form and all required documents to Reimbursement Department, PO Box 33170, Detroit, MI 48232-5170. The completed form and required documents must be presented to your dealer or received by the Reimbursement Department by September 30, 2016, unless state law specifies a longer reimbursement period.





EXHIBIT
3

If you have any questions or concerns that your dealer is unable to resolve, please contact the Chevrolet Customer Assistance Center at 1.800.222.1020 (TTY 1.800.833.2438).

We are sorry for any inconvenience you may experience; however, we have taken this action in the interest of your continued satisfaction with our products.

Terry M. Inch
Executive Director
Global Connected Customer Experience

Enclosure
14717

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                              :        Chapter 11 Case No.
                                                   :
GENERAL MOTORS CORP., *et al.,*                    :        09-50026 (REG)
                                                   :
                        Debtors.                   :        (Jointly Administered)
                                                   :
------------------------------------------------------------x

### ORDER (I) AUTHORIZING SALE OF ASSETS PURSUANT TO AMENDED AND RESTATED MASTER SALE AND PURCHASE AGREEMENT WITH NGMCO, INC., A U.S. TREASURY-SPONSORED PURCHASER; (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (III) GRANTING RELATED RELIEF

Upon the motion, dated June 1, 2009 (the "Motion"), of General Motors

Corporation ("GM") and its affiliated debtors, as debtors in possession (collectively, the

"Debtors"), pursuant to sections 105, 363, and 365 of title 11, United States Code (the

"Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") for, among other things, entry of an order authorizing and

approving (A) that certain Amended and Restated Master Sale and Purchase Agreement, dated as

of June 26, 2009, by and among GM and its Debtor subsidiaries (collectively, the "Sellers") and

NGMCO, Inc., as successor in interest to Vehicle Acquisition Holdings LLC (the "Purchaser"),

a purchaser sponsored by the United States Department of the Treasury (the "U.S. Treasury"),

together with all related documents and agreements as well as all exhibits, schedules, and

addenda thereto (as amended, the "MPA"), a copy of which is annexed hereto as Exhibit "A"

(excluding the exhibits and schedules thereto); (B) the sale of the Purchased Assets[1] to the

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Motion or the MPA.

US_ACTIVE\43085833\07\43085833_7.DOC\


EXHIBIT
2

(xii)    all credits, deferred charges, prepaid expenses, deposits and advances, warranties, rights, guarantees, surety bonds, letters of credit, trust arrangements and other similar financial arrangements, in each case, relating exclusively to the Excluded Assets or Retained Liabilities;

(xiii)    all insurance policies identified on Section 2.2(b)(xiii) of the Sellers' Disclosure Schedule and the rights to proceeds thereof (collectively, the "Excluded Insurance Policies"), other than any rights to proceeds to the extent such proceeds relate to any Purchased Asset or Assumed Liability;

(xiv)    all Permits, to the extent that they relate exclusively to the Excluded Assets or Retained Liabilities;

(xv)    all Retained Plans; and

(xvi)    those assets identified on Section 2.2(b)(xvi) of the Sellers' Disclosure Schedule.

**Section 2.3    *Assumed and Retained Liabilities.***

(a)    The "Assumed Liabilities" shall consist only of the following Liabilities of Sellers:

(i)    $7,072,488,605 of Indebtedness incurred under the DIP Facility, to be restructured pursuant to the terms of **Section 6.9** (the "Purchaser Assumed Debt");

(ii)    all Liabilities under each Purchased Contract;

(iii)    all Intercompany Obligations owed or due, directly or indirectly, by Sellers to (A) any Purchased Subsidiary or (B) any joint venture or other entity in which a Seller or a Purchased Subsidiary has any Equity Interest (other than an Excluded Entity);

(iv)    all Cure Amounts under each Assumable Executory Contract that becomes a Purchased Contract;

(v)    all Liabilities of Sellers (A) arising in the Ordinary Course of Business during the Bankruptcy Case through and including the Closing Date, to the extent such Liabilities are administrative expenses of Sellers' estates pursuant to Section 503(b) of the Bankruptcy Code and (B) arising prior to the commencement of the Bankruptcy Cases to the extent approved by the Bankruptcy Court for payment by Sellers pursuant to a Final Order (and for the avoidance of doubt, Sellers' Liabilities in clauses (A) and (B) above include Sellers' Liabilities for personal property Taxes, real estate and/or other ad valorem Taxes, use Taxes, sales Taxes, franchise Taxes, income Taxes, gross receipt Taxes, excise Taxes, Michigan Business Taxes and Michigan Single Business Taxes), in each case, other than (1) Liabilities of the type described in

-28-

Section 2.3(b)(iv), Section 2.3(b)(vi) and Section 2.3(b)(ix), (2) Liabilities arising under any dealer sales and service Contract and any Contract related thereto, to the extent such Contract has been designated as a Rejectable Executory Contract, and (3) Liabilities otherwise assumed in this Section 2.3(a);

(vi)     all Transfer Taxes payable in connection with the sale, transfer, assignment, conveyance and delivery of the Purchased Assets pursuant to the terms of this Agreement;

(vii)    (A) all Liabilities arising under express written warranties of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws;

(viii)   all Liabilities arising under any Environmental Law (A) relating to conditions present on the Transferred Real Property, other than those Liabilities described in Section 2.3(b)(iv), (B) resulting from Purchaser's ownership or operation of the Transferred Real Property after the Closing or (C) relating to Purchaser's failure to comply with Environmental Laws after the Closing;

(ix)    all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of accidents, incidents or other distinct and discreet occurrences that happen on or after the Closing Date and arise from such motor vehicles' operation or performance (for avoidance of doubt, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability arising or contended to arise by reason of exposure to materials utilized in the assembly or fabrication of motor vehicles manufactured by Sellers and delivered prior to the Closing Date, including asbestos, silicates or fluids, regardless of when such alleged exposure occurs);

(x)     all Liabilities of Sellers arising out of, relating to, in respect of, or in connection with workers' compensation claims against any Seller, except for Retained Workers' Compensation Claims;

(xi)    all Liabilities arising out of, relating to, in respect of, or in connection with the use, ownership or sale of the Purchased Assets after the Closing;

(xii)   all Liabilities (A) specifically assumed by Purchaser pursuant to Section 6.17 and (B) arising out of, relating to or in connection with the salaries and/or wages and vacation of all Transferred Employees that are accrued and unpaid (or with respect to vacation, unused) as of the Closing Date;

**FILED IN MY OFFICE
DISTRICT COURT CLERK
12/30/2016 10:28:01 AM
James A. Noel
Patsy Baca**

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

CAMILLE STUEBER, in her individual capacity,

      Plaintiff,

v.                          Case No. D-202-CV-2016-01254

THE ESTATE OF JOHN STUEBER, (deceased),
FARMERS INSURANCE COMPANY OF ARIZONA,
GENERAL MOTORS, LLC and RELIABLE CHEVROLET (NM), LLC.

      Defendants.

## DEFENDANT GENERAL MOTORS LLC'S ANSWER
## TO PLAINTIFF'S COMPLAINT FOR DAMAGES

Defendant General Motors LLC ("GM LLC"), by and through its attorneys, Rodey Dickason Sloan Akin & Robb, P.A. (Todd E. Rinner) and Bowman and Brooke LLP (Ryan A. McCarthy, *pro hac vice* pending), answers Plaintiff's Complaint for Personal Injury (the "Complaint") as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint.

2.     GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint.

3.     This paragraph does not make statements or allegations directed at GM LLC, and thus no response is required from GM LLC. To the extent a response is required, GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint.

4.     This paragraph does not make statements or allegations directed at GM LLC, and thus no response is required from GM LLC. To the extent a response is required, GM LLC

is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint.

5.      GM LLC admits it is a Delaware limited liability company with its principal place of business in Michigan.  GM LLC lacks sufficient knowledge to form a belief as to the truth of the allegations regarding doing business or whether it "maintains a corporate agent" in the State of New Mexico and thus denies the same at this time. GM LLC did not exist at the time the vehicle referred to in the Complaint ("Subject Vehicle") was researched, designed, manufactured, assembled, marketed, sold or distributed. GM LLC admits General Motors Corporation, a Delaware corporation, was responsible for the research, development, design, manufacture, assembly, marketing, and distribution of the Subject Vehicle. GM LLC admits that General Motors Corporation filed for bankruptcy on June 1, 2009 in the United States Bankruptcy Court for the Southern District of New York. GM LLC admits that it acquired substantially all of the assets of General Motors Corporation (then Motors Liquidation Company) on July 10, 2009, *See* In re General Motors Corp., 407 B.R. 463 (Bankr. SDNY 2009) (approving the sale transaction). GM LLC admits that pursuant to the Master Sale and Purchase Agreement, it assumed certain liabilities of General Motors Corporation, including products defect claims arising out of domestic incidents that occurred after July 9, 2009. Id., 407 B.R. at 499-0507. GM LLC denies the remainder of the allegations contained in Paragraph 5 of the Complaint.  GM LLC specifically denies that it is a successor entity to General Motors Corporation.

6.      This paragraph does not make statements or allegations directed at GM LLC, and thus no response is required from GM LLC. To the extent a response is required, GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint.

7.      GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint and thus denies the same.

8.      GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint and thus denies the same.

## MATERIAL FACTS

9.      GM LLC incorporates by reference all its responses to Paragraphs 1 through 22 as if fully restated in this response to Paragraph 9 of the Complaint.

10.     GM LLC admits that the Vehicle Identification Number 1G1YY26E085116591 is associated with a 2008 Chevrolet Corvette Z06.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 10 of the Complaint.

11.     GM LLC did not exist at the time the Subject Vehicle was researched, designed, manufactured, assembled, marketed, sold or distributed. Therefore, GM LLC denies that it manufactured any components of the Subject Vehicle.  GM LLC is not aware of an entity named "General Motors, Inc." as referred to in Paragraph 11 of the Complaint, and therefore lacks sufficient information to admit or deny allegations relating to that entity, except that GM LLC denies "General Motors, Inc." is a predecessor to GM LLC.

12.     On information and belief, GM LLC admits that the Subject Vehicle was originally sold by Reliable Chevrolet, Inc. to John Stueber.

13.     On information and belief, GM LLC admits that Reliable Chevrolet, Inc. performed warranty service for the Subject Vehicle prior to the date of the incident referred to in the Complaint ("Subject Incident").

14.     GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint and thus denies the same.

15.     GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint and thus denies the same.

16.     GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint and thus denies the same.

17.     Denied.

3

18.     GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint and thus denies the same.

19.     GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint because such allegations are vaguely asserted and subject to multiple interpretations, and thus GM LLC denies the same.

20.     On information and belief, GM LLC admits General Motors Corporation issued the PIP4269A entitled "Clutch Pedal Sticks to the Floor and Will Not Return" to authorized dealerships on or about January 15, 2008.  GM LLC admits it issued the PIP5037 entitled "Corvette Clutch Pedal Low or Sticks to the Floor – CMC (Clutch Master Cylinder) Bypass" to authorized dealerships on or about June 25, 2012.  GM LLC denies the remainder of the allegations contained in Paragraph 20 of the Complaint.

21.     Denied.

22.     GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint and thus denies the same.

23.     On information and belief, the Subject Vehicle has never been presented to a GM authorized dealership for complaints similar to those identified in PIP4269A or PIP5037 referred to in Paragraph 20 of the Complaint.  GM LLC denies the Subject Vehicle had defective clutch components at or before the time of the Subject Incident.  GM LLC denies the remainder of the allegations contained in Paragraph 23 of the Complaint.

24.     On information and belief, the Subject Vehicle has never been presented to a GM authorized dealership for complaints similar to those identified in PIP4269A or PIP5037 referred to in Paragraph 20 of the Complaint.  GM LLC denies the Subject Vehicle had defective clutch components at or before the time of the Subject Incident.  GM LLC admits the Subject Vehicle is not subject to any recalls.  GM LLC denies the remainder of the allegations contained in Paragraph 24 of the Complaint.

25.     Denied.

4

26.     On information and belief, GM LLC admits Mr. Stueber passed away on or about July 6, 2015. GM LLC admits it sent a notice to Mr. Stueber's address on or about September 22, 2015 relating to Service Bulletin No. 14717 entitled "Special Coverage Adjustment – Clutch Activation System." GM LLC admits the notice includes the language quoted in Paragraph 26, however, it includes more information than that which was excerpted for inclusion in this Paragraph.

27.     GM LLC admits there is a safety defect relating to a low-torque ignition switch that is the subject of GM Recall Nos. 13454 and 14063. GM LLC admits the following related to vehicles subject to GM Recall No. 13454 and 14063: From in or about the spring of 2012 through in or about February 2014, GM LLC falsely represented to consumers that vehicles containing this defect posed no safety concern. GM LLC admits that it entered into a Deferred Prosecution Agreement with the United States Attorney for the Southern District of New York, which included a $900 million forfeiture. GM LLC further admits that to date, it has acknowledged a total of 15 deaths, as well as a number of serious injuries, that occurred in crashes in which the defective switch subject to GM Recall Nos. 13454 and 14063 may have caused or contributed to frontal airbag non-deployment. GM LLC admits that it is a party to civil lawsuits relating to these recalls. With respect to Chevrolet Corvettes, GM LLC denies that it engaged in a pattern and practice of failing to notify its customers of defective conditions. GM LLC further denies that the ignition switch in the vehicles subject to GM Recall Nos. 13454 and 14063 is substantially similar to that in the 2008 Chevrolet Corvette, and specifically denies any connection between the allegations relevant to Plaintiff's claims and the conduct that gave rise to the Deferred Prosecution Agreement.

28.     Denied.

29.     Denied.

30.     This paragraph does not make statements or allegations directed at GM LLC, and thus no response is required from GM LLC. To the extent a response is required, GM LLC

is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint.

### COUNT I: PRODUCTS LIABILITY (DUTY OF CARE)

31.    GM LLC incorporates by reference all its responses to Paragraphs 1 through 30 as if fully restated in this response to Paragraph 31 of the Complaint.

32.    On information and belief, GM LLC admits that the Subject Vehicle was originally sold by Reliable Chevrolet, Inc.  GM LLC did not exist at the time the Subject Vehicle was researched, designed, manufactured, assembled, marketed, sold or distributed, and therefore denies the remainder of the allegations contained in Paragraph 32 of the Complaint.

33.    On information and belief, the Subject Vehicle has never been presented to a GM authorized dealership for complaints similar to those identified in PIP4269A or PIP5037 referred to in Paragraph 20 of the Complaint.  GM LLC denies the Subject Vehicle had defective clutch components at or before the time of the Subject Incident.  GM LLC denies the remainder of the allegations contained in Paragraph 33 of the Complaint.

34.    GM LLC did not exist at the time the vehicle referred to in the Complaint was researched, designed, manufactured, assembled, marketed, sold or distributed. GM LLC admits that it, including its employees, agents, directors, officers, stockholders, partners and associates, has a legal duty to conform its conduct in accordance with applicable law and that, when in existence, General Motors Corporation had a legal duty to conform its conduct with applicable law. GM LLC denies any duties to Plaintiff, on behalf of itself or, when in existence, of General Motors Corporation, except those duties imposed by applicable law and denies that any such duty imposed by applicable law was breached with respect to plaintiff, plaintiff's decedent, the Subject Vehicle or the Subject Incident.  GM LLC denies the remainder of the allegations contained in Paragraph 34 of the Complaint.

35.    Denied.

36.    GM LLC is without sufficient knowledge to form a belief as to the truth of the

allegations in Paragraph 36 of the Complaint because such allegations are vaguely asserted

and subject to multiple interpretations, and thus GM LLC denies the same.

37.    Denied.

## COUNT II: PRODUCTS LIABILITY (STRICT LIABILITY)

38.    GM LLC incorporates by reference all its responses to Paragraphs 1 through 37

as if fully restated in this response to Paragraph 38 of the Complaint.

39.    On information and belief, GM LLC admits that the Subject Vehicle was originally

sold by Reliable Chevrolet, Inc.  GM LLC did not exist at the time the Subject Vehicle was

researched, designed, manufactured, assembled, marketed, sold or distributed, and therefore

denies the remainder of the allegations contained in Paragraph 39 of the Complaint.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

## COUNT III: PRODUCTS LIABILITY (RES IPSA LOQUITUR)

44.    GM LLC incorporates by reference all its responses to Paragraphs 1 through 43

as if fully restated in this response to Paragraph 44 of the Complaint.

45.    Denied.

46.    GM LLC lacks sufficient knowledge to form a belief as to the truth of the

allegations regarding whether the Subject Vehicle's condition was "substantially changed."  On

information and belief, GM LLC admits that the Subject Vehicle was originally sold by Reliable

Chevrolet, Inc.  GM LLC did not exist at the time the Subject Vehicle was researched, designed,

manufactured, assembled, marketed, sold or distributed, and therefore was never in

"possession" of the Subject Vehicle and therefore denies the remainder of the allegations

contained in Paragraph 46 of the Complaint.

7

47.    Denied.

48.    Denied.

### COUNT IV: PUNITIVE DAMAGES

49.    GM LLC incorporates by reference all its responses to Paragraphs 1 through 48 as if fully restated in this response to Paragraph 49 of the Complaint.

50.    Denied.

### COUNT V: UNFAIR AND UNCONSCIONABLE TRADE PRACTICES

51.    GM LLC incorporates by reference all its responses to Paragraphs 1 through 50 as if fully restated in this response to Paragraph 51 of the Complaint.

52.    GM LLC did not exist at the time the Subject Vehicle was researched, designed, manufactured, assembled, marketed, sold or distributed.  GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint and thus denies the same.

53.    GM LLC did not exist at the time the Subject Vehicle was researched, designed, manufactured, assembled, marketed, sold or distributed.  GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 53 of the Complaint and thus denies the same.

54.    GM LLC did not exist at the time the Subject Vehicle was researched, designed, manufactured, assembled, marketed, sold or distributed.  GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint and thus denies the same.

55.    GM LLC did not exist at the time the Subject Vehicle was researched, designed, manufactured, assembled, marketed, sold or distributed.  GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 55 of the Complaint and thus denies the same.

8

56.    GM LLC did not exist at the time the Subject Vehicle was researched, designed, manufactured, assembled, marketed, sold or distributed.  GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 56 of the Complaint and thus denies the same.

## COUNT VI: COMPARATIVE NEGLIGENCE

57.    GM LLC incorporates by reference all its responses to Paragraphs 1 through 56 as if fully restated in this response to Paragraph 57 of the Complaint.

58.    This paragraph does not make statements or allegations directed at GM LLC, and thus no response is required from GM LLC. To the extent a response is required, GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 58 of the Complaint.

59.    This paragraph does not make statements or allegations directed at GM LLC, and thus no response is required from GM LLC. To the extent a response is required, GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 59 of the Complaint.

60.    This paragraph does not make statements or allegations directed at GM LLC, and thus no response is required from GM LLC. To the extent a response is required, GM LLC is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 60 of the Complaint.

Further, GM LLC denies that Plaintiff is entitled to recover from GM LLC any of the relief claimed in her prayer following Paragraph 60 of the Complaint, and GM LLC denies that there is any proper evidence showing conduct by GM LLC entitled Plaintiff to any relief in any form whatsoever from GM LLC.

## AFFIRMATIVE DEFENSES

## GENERAL DENIAL

All allegations of the Complaint not expressly admitted in this Answer are denied.

9

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state claims against GM LLC upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The sole, proximate cause of the alleged injuries and damages complained of in the Complaint was the act or acts of a third party or parties for which GM LLC is in no way liable or responsible.

### THIRD AFFIRMATIVE DEFENSE

The contributing negligence and/or fault of third parties, including the driver of the Subject Vehicle, which negligence may have been the proximate, contributing cause of the alleged injuries and damages, should be apportioned, and any damages awarded against GM LLC should be reduced by the percentages of fault found against third parties, including the driver of the Subject Vehicle, and any award against GM LLC should be limited only to its own percentage of fault, which fault is denied.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff was negligent and said negligence proximately caused or contributed to cause the injuries and damages complained of in the Complaint, thereby reducing the amount of Plaintiff's damages by an amount proportionate to the degree of fault of Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

The proximate cause of the alleged injuries and damages was the misuse of the Subject Vehicle.

### SIXTH AFFIRMATIVE DEFENSE

Any injuries or expenses sustained or incurred by Plaintiff was proximately caused in whole or in part by the conduct of, superseding or independent, intervening actions of, or misuse, abuse, or alteration of a product by one or more persons or entities other than GM LLC, for whose conduct GM LLC is not responsible.

### SEVENTH AFFIRMATIVE DEFENSE

10

Any product placed into the stream of commerce by GM LLC was suited for the purposes for which it was manufactured and/or placed into the stream of commerce, and GM LLC denies the existence of any defect or unreasonably dangerous condition of any product distributed by it as alleged by Plaintiff.

### EIGHTH AFFIRMATIVE DEFENSE

If any defective condition existed in any product placed into the stream of commerce by GM LLC as alleged by Plaintiff, which is expressly denied, such defective condition was caused by persons or parties other than GM LLC.

### NINTH AFFIRMATIVE DEFENSE

Any product placed into the stream of commerce by GM LLC that allegedly caused the damages as claimed by Plaintiff, was in the custody and control of other parties at all times material hereto, and that the intervening cause and the sole proximate cause of the alleged injuries and damages giving rise to the Complaint was the failure of said parties, their employees, and/or agents to inspect, maintain, and use the product properly.

### TENTH AFFIRMATIVE DEFENSE

The liability of GM LLC, if any, all of which is expressly denied, is limited by the limitations contained in the terms and conditions as stated and set forth in any documents arising out of and in connection with the sale of the Subject Vehicle.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the methods, standards, and techniques utilized in formulating and manufacturing the product in question and in issuing warnings and instructions with respect to its use were in conformity with the generally recognized, reasonably available, and reliable state of knowledge in the field at the time the product was supplied by GM LLC.

### TWELFTH AFFIRMATIVE DEFENSE

Unless GM LLC's liability for punitive damages and the appropriate amount of punitive

11

damages are required to be established by proof of every element beyond a reasonable doubt, any award of punitive damages would violate GM LLC's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the New Mexico Constitution, and would be improper under the common law and public policies of the State of New Mexico.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for punitive damages against GM LLC cannot be maintained, because an award of punitive damages under current New Mexico law would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose, a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred, and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, the New Mexico Constitution, and the common law and public policies of the State of New Mexico.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for punitive damages against GM LLC cannot be maintained, because any award of punitive damages under New Mexico law would be by a jury that (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of GM LLC, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and

12

does not define with clarity the conduct or mental state that makes damages permissible, and

(5) is not subject to adequate trial court and appellate judicial review for reasonableness and

furtherance of legitimate purposes on the basis of objective standards. Any such verdict would

violate GM LLC's due process rights guaranteed by the Fourteenth Amendment to the United

States Constitution and the New Mexico Constitution, and would be improper under the

common law and public policies of New Mexico.

### FIFTEENTH AFFIRMATIVE DEFENSE

Any award of punitive damages based on anything other than GM LLC's conduct in

connection with the design, manufacture, and sale of the specific single vehicle that is the

subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the

United States Constitution and the New Mexico Constitution, and would be improper under the

common law and public policies of the State of New Mexico, because any other judgment for

punitive damages in this case cannot protect GM LLC against impermissible multiple

punishment for the same wrong and against punishment for extra territorial conduct, including

especially conduct that is lawful in states other than the State of New Mexico. In addition, any

such award would violate principles of comity under the laws of the State of New Mexico.

### SIXTEENTH AFFIRMATIVE DEFENSE

To the extent that the law of New Mexico permits punishment to be measured by the net

worth or financial status of GM LLC and imposes greater punishment on defendants with larger

net worth, such an award would be unconstitutional because it permits arbitrary, capricious and

fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing

punishment, allows punishment to be imposed based on lawful profits and conduct of GM LLC

in other States, and allows dissimilar treatment of similarly situated defendants, in violation of

the due process and equal protection provisions of the Fourteenth Amendment to the United

States Constitution, the Commerce Clause of the United States Constitution, and the New

Mexico Constitution.

13

## SEVENTEENTH AFFIRMATIVE DEFENSE

Unless GM LLC's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate GM LLC's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the due process provisions of the New Mexico Constitution.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that they are expressly or impliedly preempted by federal statutes or regulations.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent the Subject Vehicle was substantially changed by other parties or entities after it was originally sold and delivered.

## TWENTIETH AFFIRMATIVE DEFENSE

GM LLC alleges that at the time the Subject Vehicle was originally sold and delivered, it comported with the state of the art at the time of manufacture and complied with all applicable government standards and requirements.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

GM LLC alleges that Plaintiff has failed to mitigate her damages, if any, in the manner and to the extent required by law.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

GM LLC alleges that Plaintiff's claims are barred in whole or in part because plaintiff, her counsel or her representatives knew of the existence or likelihood of litigation and intentionally or negligently failed to preserve crucial evidence.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

GM LLC does not knowingly nor intentionally waive any applicable affirmative defenses.

14

GM LLC reserves the right to assert additional defenses that it may discover in the course of the proceedings of this matter and to which it may be entitled under the law, including case law, statutes and rules, of the jurisdictions whose law may be found to apply to the claims asserted.

**WHEREFORE**, Defendant General Motors, LLC requests that the Complaint against Defendant General Motors, LLC be dismissed with prejudice and/or that Defendant General Motors, LLC be awarded judgment in its favor with attorney's fees and costs.

Respectfully Submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By_____
Todd E. Rinner
Post Office Box 1888
Albuquerque, New Mexico 87103
trinner@rodey.com
*Attorneys for General Motors LLC*

-and-

(not yet admitted *pro hac vice*, identified for convenience at this time only)
Ryan McCarthy
BOWMAN AND BROOKE LLP
1741 Technology Dr. Suite 200
San Jose, CA 95110
ryan.mccarthy@bowmanandbrooke.com
*Attorneys for General Motors LLC*

I hereby certify that on December 30, 2016, a copy of the foregoing was served via the Court's e-filing/e-service system to all counsel of record.

15

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By _____
       Todd E. Rinner

16