**Hearing Date and Time: April 20, 2017 at 9:00 a.m. (Eastern Time)**
**Reply Brief Deadline: April 7, 2017**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., f/k/a General Motors Corp., et al. | Case No. 09-50026 (MG) |
| Debtors. | (Jointly Administered) |

---

### BENJAMIN W. PILLARS' SUPPLEMENTAL OPENING BRIEF

### Introduction

Pursuant to this Court's Order dated December 13, 2016, the Plaintiff, Benjamin Pillars, hereby submits his supplemental brief. (R. 13802, Order to Show Cause).[1] Due to unique substantive and procedural considerations, this supplemental brief is being provided to the Court for consideration above-and-beyond the issues and arguments identified in the Plaintiffs' opening brief which are incorporated by Plaintiff Pillars' as well.

---

[1] All references made in this supplemental brief are to this Court's electronic record for the above-captioned case, i.e. (R. _#_, *Document Description*) unless stated otherwise. Documents referenced which are not a part of this Court's electronic record are attached to this supplemental opening brief as a numbered exhibit.

1

As a preliminary matter, the Pillars' matter was submitted back to this Court by the United States District Court for consideration pursuant to an Order from the District Court dated September 7, 2016, following an appeal initiated by New GM. (9/7/16 Furman District Court Order – **Exhibit 1**). Specifically, the Pillars matter had been submitted to the District Court by New GM on appeal following a series of rulings favorable to Plaintiff Pillars by the Bankruptcy Court. (R. 13328, Order Regarding Benjamin Pillars' No Stay Pleading and Related Pleadings; R. 13427, Decision and Order on Motion to Reconsider and Amend).

### Background Facts

The Plaintiff, Benjamin W. Pillars ("Pillars"), is Kathleen Ann Pillars' ("decedent") widower and the duly appointed personal representative of her estate having received his letter of authority on November 14, 2014. Pillars filed his wrongful death lawsuit against General Motors LLC ("New GM") on March 23, 2015, in the Circuit Court for the County of Bay, State of Michigan,

The Pillars' complaint surrounds an automobile accident which occurred on November 23, 2005. On that day, the decedent was driving her 2004 Pontiac Grand Am, to a blood drive. The decedent lost control of her vehicle when the defective ignition switch in her vehicle unexpectedly went to the off position causing the automobile accident. The decedent sustained severe injuries as a result of the

2

accident rendering her incapacitated. The decedent remained incapacitated and died nearly seven (7) years later on March 12, 2012.

### **Supplemental Discussion**

In its written submissions to the District Court following the Second Circuit decision, New GM argued, for the first time, that the Pillars defective ignition claim should be treated differently from the other defective ignition claims. New GM now argues the Pillars action is now a "Non-Ignition Switch" case, claiming that Pillars was not included in the recalled vehicles, i.e. a proposition which is false. As stated in Plaintiffs' opening brief, it is clear from Judge Gerber's prior decisions and judgments that the term "Non-Ignition Switch Plaintiffs" as used in the April 2015 Decision, the June 2015 Judgment, the November 2015 Decision, and the December 2015 Judgment was limited to plaintiffs with claims for economic loss and did not include plaintiffs pursuing personal injury or wrongful death claims. Plaintiff Pillars' claim is not limited to economic loss and thus should not be characterized as a Non-Ignition Switch Plaintiff. (R. 13166-3, Pillars' Complaint). Unlike New GM, Pillars has consistently argued that his lawsuit pertains to a defective ignition switch in his wife's 2004 Pontiac Grand Am which resulted in serious injuries and eventually death. (R. 13166-3, Pillars' Complaint).

Like the other vehicles identified by New GM and contrary to New GM's new unfounded claims, the Pillars vehicle was also subject to the defective ignition switch recall. New GM has acknowledged that fact repeatedly prior to the Second Circuit ruling.

The Court should note that previously and before the Second Circuit ruling New GM did not dispute in pleadings submitted to this Court the fact that the Pillars' 2004 Pontiac Grand Am was subject to the recall notice regarding the defective ignition switch. Indeed, in its amended answer to the Pillars' complaint New GM reiterated this fact:

> GM LLC admits that it submitted to NHTSA the following information in a letter dated July 3, 2014, pursuant to 49 C.F.R. § 573.6, and subsequently amended the letter on July 16, 2014, pertaining to the recall of approximately 6,729,742 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue, **1999-2005 MY Pontiac Grand Am** and 2004-2008 MY Pontiac Grand Prix vehicles ("NHTSA Recall No. 14V400"). The July 16, 2014 letter provides as follows ("Recall Condition"):
>
>> 573.6(c)(5): General Motors has decided that a defect which relates to motor vehicle safety exists in 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue, **1999-2005 MY Pontiac Grand Am**, and 2004-2008 MY Pontiac Grand Prix vehicles. If the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally move the key away from the "run" position. If this occurs, engine power, power steering and power braking may be affected, increasing the risk of a crash. The timing of the key movement out of the "run" position, relative to the activation of

>    the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes. (Emphasis added by Pillars).

(R. 13360-2, New GM's First Amended Answer to Complaint ¶4; R. 13360-2, New GM's First Amended Answer to Complaint ¶22).[2] Indeed, the same admissions appeared in New GM's original answer to the Pillars' Complaint. (R. 13166-4, New GM's Answer to Complaint ¶4; R. 13166-4, New GM's Answer to Complaint ¶22).

The Court should note that New GM, prior to the Second Circuit decision, admitted on more than one occasion that the Pillars' claim was identical to the other Ignition Switch Pre-Closing Accident Plaintiffs and should be treated the same in its written submissions both before this Court as well as the District Court.

In its brief on appeal to the District Court, New GM made the following admission:

>    In 2015, the Bankruptcy Court confirmed on two separate occasions that any claim based on a pre-363 Sale accident—like the claims asserted by Appellee—cannot be asserted against New GM, and is

---

[2] New GM's first amended answer to the Pillars' complaint was attached as an exhibit to New GM's Motion to Reconsider and Amend. (R. 13360, New GM's Motion to Reconsider and Amend). The Court should note that New GM amended its answer to the Pillars' complaint only after this Court had issued an order finding that New GM was bound by the admissions contained within its original answer. (R. 13328, Order Regarding Benjamin Pillars' No Stay Pleading and Related Pleadings; R. 13427, Decision and Order on Motion to Reconsider and Amend). Nevertheless, New GM made the decision not to amend the admissions contained within paragraphs four (4) and twenty-two (22) of its original answer.

5

proscribed by the Sale Order and Injunction. Specifically, the June Judgment expressly held as follows:

> Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs that seek to hold New GM liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM.

(New GM's Brief on Appeal page 12 – **Exhibit 2**).

In its earlier bankruptcy submissions, New GM had made the same admissions:

> This Court recently confirmed that plaintiffs, like Movant, who were involved in accidents that occurred prior to the closing of the 363 Sale are barred from asserting claims against New GM that are based on pre-363 Sale accidents. See Judgment, ¶ 7 ("Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs that seek to hold New GM liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM."). **Movant's claims are <u>identical</u> to the Ignition Switch Pre-Closing Accident Plaintiffs' claims, and the Court should find the rulings set forth in the Judgment apply equally to Movant.** (Emphasis added by Pillars).

(R. 13191, New GM's Response to No Stay Pleading ¶3, page 5 of 16; R. 13191, New GM's Response to No Stay Pleading ¶24, page 12 of 16).

Specifically, the Second Circuit has discussed the long-term binding effect of unsolicited admissions contained within pleadings:

> First, **the allegations in the Second Amended Complaint are "judicial admission[s]" by which Color Tile Committee was**

6

**"bound throughout the course of the proceeding**." Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir.1985) (party cannot contradict its own pleading with affidavits); see also Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co., 125 F.3d 481, 483 (7th Cir.1997) ("**plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts**" and "**judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible**") (internal quotation marks omitted).

Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003), See also Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528-29 (2d Cir. 1985).

Indeed, the Bankruptcy Court has already concluded that New GM is bound to certain admissions contained within its pleadings with regards to Plaintiff Pillars. (R. 13328, Order Regarding Benjamin Pillars' No Stay Pleading and Related Pleadings; R. 13427, Decision and Order on Motion to Reconsider and Amend).[3]

Now that New GM has obtained an unfavorable ruling from the Second Circuit, New GM for the first time now seeks to create a distinction where a distinction had never existed before. Neither the bankruptcy court in its April 15, 2015, opinion nor the Second Circuit in its July 13, 2016, opinion drew a

---

[3] The specific admissions by New GM at issue in the earlier proceedings before Judge Robert Gerber are not at issue for the purpose of this supplemental brief. Those admissions have been appealed by New GM and are pending before the Honorable Jesse M. Furman. (9/7/16 Furman District Court Order – **Exhibit 1**).

distinction between the defective ignition switch which exist in the Pillars vehicle from the defective ignition switch which exists in other GM vehicles. Indeed, the Pillars vehicle and the other vehicles were subject to the recall regarding a defective ignition switch.

Rather than focus solely upon a single recall notice with regards to the defective ignition switch as suggested by New GM in its recent submissions, the Second Circuit more broadly addressed the defective ignition switch recalls in the context of its due process analysis as illustrated by the following excerpt from its "Ignition Switch Defect" discussion wherein it was noted that over 60 recalls had been issued with regards to the defective switch defect between February and October of 2014:

> From February until October 2014, New GM would issue over 60 recalls with the number of affected vehicles in the United States alone surpassing 25 million. New GM hired attorney Anton Valukas of the law firm Jenner & Block to investigate; he did so and prepared an extensive report (the "Valukas Report").

In Matter of Motors Liquidation Co., No. 15-2844-BK(L), 2016 WL 3766237, at *6 (2d Cir. July 13, 2016).

Accordingly, the Plaintiff does have an Ignition Switch Defect claim and should be permitted to proceed with his claims against New GM for the additional reasons set forth in this supplemental opening brief.

## **Relief Sought**

For the reasons set forth in this supplemental opening brief as well as Plaintiffs' opening brief, Plaintiff Pillars respectfully requests this Honorable Court to find that that Plaintiff may proceed with his claims against New GM.

For the purpose of clarity, the relief sought by Plaintiff Pillars' in this supplemental opening brief as well as Plaintiffs' opening brief constitutes additional independent relief above-and-beyond the relief which has already been granted to Plaintiff Pillars by this Court. (R. 13328, Order Regarding Benjamin Pillars' No Stay Pleading and Related Pleadings; R. 13427, Decision and Order on Motion to Reconsider and Amend). The additional independent relief is being sought from this Court by Plaintiff Pillars at the direction of the District Court. (9/7/16 Furman District Court Order – **Exhibit 1**).

                                                Respectfully submitted,

                                                THE MASTROMARCO FIRM

Dated: February 27, 2017         By: */s/ Victor J. Mastromarco, Jr.*
                                                Victor J. Mastromarco, Jr. (P34564)
                                                Attorney for Plaintiff Benjamin Pillars
                                                1024 N. Michigan Avenue
                                                Saginaw, Michigan 48602
                                                (989) 752-1414
                                                vmastromar@aol.com