**Hearing Date and Time:  April 20, 2017 at 9:00 a.m. (Eastern Time)**
**Reply Brief Deadline:  April 7, 2017**

Kris Ted Ledford
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK  74055
Telephone: (918) 376-4610
Facsimile: (918) 376-4993
Email: kris@ledford-lawfirm.com

*Attorney for Christopher Pope and Gwendolyn Pope*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                              :          Chapter 11
                                                    :
MOTORS LIQUIDATION COMPANY, *et al*.,               :          Case No.: 09-50026(MG)
        f/k/a General Motors Corp., *et al.*        :
                                                    :          (Jointly Administered)
                Debtors.                            :
------------------------------------------------------------x

**SUPPLEMENTAL OPENING BRIEF BY PLAINTIFFS CHRISTOPHER POPE
AND GWENDOLYN POPE ON THE 2016 THRESHOLD ISSUES**

# **TABLE OF CONTENTS**

FACTUAL SUMMARY ................................................................................................ 1

    A. The Pope Lawsuit ............................................................................................ 1

    B. The Pope Plaintiffs' Involvement in the GM Bankruptcy Proceedings ............................. 2

ARGUMENTS AND AUTHORITIES .......................................................................... 7

    I.   THRESHOLD ISSUE NO. 1 ...................................................................... 7

    II.  THRESHOLD ISSUE NO. 2:  PART ONE .................................................... 9

    III. THRESHOLD ISSUE NO. 2:  PART TWO ................................................. 11

    IV. THRESHOLD ISSUE NO. 3 ...................................................................... 11

    V.  THRESHOLD ISSUE NO. 4 ...................................................................... 12

CONCLUSION ............................................................................................................ 12

CERTIFICATE OF SERVICE .................................................................................... 14

Plaintiffs, Christopher Pope and Gwendolyn Pope ("Pope Plaintiffs"), by their undersigned counsel, respectfully submit this Supplemental Opening Brief on the 2016 Threshold Issues.[1]  The Pope Plaintiffs join in Plaintiffs' Joint Opening Brief on the 2016 Threshold Issues filed on February 27, 2017.  The Pope Plaintiffs submit this supplemental brief to explain the factual issues specific to the Pope Plaintiffs and offer additional arguments for why they should be permitted to pursue all claims which were allowed by the Second Circuit Opinion.[2]

## FACTUAL SUMMARY

### A.    The Pope Lawsuit

On December 18, 2014, the Pope Plaintiffs filed a wrongful death lawsuit in the District Court of Muskogee County, State of Oklahoma against New GM and several other defendants.  *See* Petition[3] attached as Exhibit 1.  The lawsuit arises out of a head-on collision which occurred on December 22, 2012 and took the life of Lesley Caryn Turay.  *See id*. at ¶ 8.  Ms. Turay was the mother of the Pope Plaintiffs.  *See id*. at ¶ 1.  Ms. Turay was driving a 2001 Cadillac Deville and her airbag failed to deploy.  *See id*. at ¶¶ 9-10.  The oncoming vehicle was a 1997 GMC Yukon and the airbag in that vehicle did deploy saving the life of that driver.

---

[1]    Pursuant to p. 4 of the Order to Show Cause entered on December 13, 2016 (Dkt. 13802), the Pope Plaintiffs were granted permission to file a Supplemental Opening Brief limited to fifteen (15) pages.

[2]    "Second Circuit Opinion" shall mean the decision by the Second Circuit in *Elliot v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016).  "April 2015 Decision" shall mean the Bankruptcy Court's decision in *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).  "June 2015 Judgment" shall mean the *Judgment* dated June 1, 2015 (Dkt. 13177) entered by the Bankruptcy Court in this case.  "November 2015 Decision" shall mean the Bankruptcy Court's decision in *In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015).  "December 2015 Judgment" shall mean the *Judgment* dated December 4, 2015 (Dkt. 13563) entered by the Bankruptcy Court in this case.

[3]    While the Pope Plaintiffs plan to amend their Petition to include all claims and relief authorized by the Second Circuit Opinion, they have chosen not to amend their Petition until the Bankruptcy Court rules on the 2016 Threshold Issues.

**B.      The Pope Plaintiffs' Involvement in the GM Bankruptcy Proceedings**

At the time of the briefing which led to the April 2015 Decision and the June 2015 Judgment, the Pope Plaintiffs had no involvement whatsoever with the GM Bankruptcy Proceedings.  New GM had not filed any Motion to Enforce against the Pope Plaintiffs and had not provided any notice to the Pope Plaintiffs that any activity in the GM Bankruptcy Proceedings could potentially impact the Pope Plaintiffs.  Not being involved with or even aware of the April 2015 Decision or the June 2015 Judgment, the Pope Plaintiffs were clearly not in a position to appeal those rulings.

The Pope Plaintiffs' first notice that the ongoing GM Bankruptcy Proceedings might impact their lawsuit came on September 2, 2015 when counsel for the Pope Plaintiffs received a letter from Scott Davidson dated September 1, 2015.  *See* September 1, 2015 correspondence without enclosures attached as Exhibit 2.  Discussing the June 2015 Judgment, New GM's counsel stated:

> The Bankruptcy Court recently issued the Judgment, which reiterated that "*[e]xcept for Independent Claims* and Assumed Liabilities (if any), all claims and/or causes of action that the *Ignition Switch Plaintiffs* may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order. . . ."  Judgment ¶ 9; *see also* Decision, 529 B.R. at 528 ("Claims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand.").  *The reasoning and rulings set forth in the Judgment and Decision are equally applicable to the [Pope] Lawsuit.*

*See* Exhibit 2 at pp. 2-3 (emphasis added).  This letter led the Pope Plaintiffs to believe that Independent Claims against New GM were not impacted by the April 2015 Decision/June 2015 Judgment.  The focus of the September 1ˢᵗ letter appeared to be an explanation of New GM's position that under the terms of the Sale Agreement New GM cannot be liable for punitive

damages arising from post-sale accidents involving vehicles manufactured by Old GM. *See id.* at p. 2. At no point in September 1st letter did New GM provide any indication that the Pope Plaintiffs were being treated differently from the Ignition Switch Plaintiffs in terms of their ability to pursue Independent Claims or seek punitive damages against New GM. In fact, New GM told the Pope Plaintiffs the *exact opposite* by expressly stating that "reasoning and rulings" by the Bankruptcy Court relating to the Ignition Switch Plaintiffs are "equally applicable to" the Pope Plaintiffs' lawsuit. *See id.* at p. 3.

Two days later on September 4, 2015, counsel for the Pope Plaintiffs received via email a letter from a different attorney representing New GM. *See* September 4, 2015 correspondence with enclosures attached as Exhibit 3. The September 4th letter referred to the prior letter and contained several attachments including the Scheduling Order which this Court had entered on September 3, 2015. *See id.* The enclosed Scheduling Order referenced the "Punitive Damage Issue" but did not in any way put the Pope Plaintiffs on notice that their punitive damage claims would be treated any differently than the punitive damage claims asserted by the Ignition Switch Plaintiffs. The Scheduling Order also referenced the "Imputation Issue" but again did not give any notice that the Pope Plaintiffs would be treated different from the Ignition Switch Plaintiffs.

In reliance upon the representations made by New GM in these letters, counsel for the Pope Plaintiffs reasonably concluded that *if the claims of the Pope Plaintiffs were truly at issue* in these bankruptcy proceedings his clients' interests were squarely aligned with the interests of the Ignition Switch Plaintiffs. Given the significant expertise and reputation of the law firms representing the Ignition Switch Plaintiffs and the requirement that special permission from the Court was required for the Pope Plaintiffs to file their own brief, counsel for the Pope Plaintiffs

3

reasonably concluded that their position would not be prejudiced by not participating in the September 2015 briefing.

After reviewing the April 2015 Decision, June 2015 Judgment, Sale Order, and Sale Agreement, counsel for the Pope Plaintiffs wrote Mr. Davidson on September 15th seeking further explanation of the issues. *See* September 15, 2015 correspondence attached as Exhibit 4. Both the April 2015 Decision and the June 2015 Judgment used short-hand references for various types of claims which were defined by the Bankruptcy Court. Seeking a better understanding of how the claims of the Pope Plaintiffs were impacted by the April 2015 Decision and the June 2015 Judgment, counsel for the Pope Plaintiffs wrote:

> As I read the Judgment, it relates to Ignition Switch Plaintiffs, Pre-Closing Accident Plaintiffs, and Non-Ignition Switch Plaintiffs. Ignition Switch Plaintiffs are *non-accident economic loss*[4] claims. Pre-Closing Accident Plaintiffs are claims based on accidents that occurred *prior* to the 363 sale closing which occurred in 2009. Non-Ignition Switch Plaintiffs are plaintiffs who have sued New GM for *economic losses* based on an alleged defect other than the Ignition Switch in an Old GM vehicle. On page 19 of the Decision, the Court further explains this category of claims as follows:
>
>> The other category of Plaintiffs later coming into the picture ("Non-Ignition Switch Plaintiffs") brought actions asserting Economic Loss claims as to GM branded cars that *did not have* Ignition Switch Defects, including cars made by New GM and Old GM alike. In fact, most of their cars did not have defects, and/or were not the subject of recalls, at all. But they contend, in substance, that the Ignition Switch Defect caused damage to "the brand" resulting in Economic Loss to them.
>
> Please identify which of these categories of claims GM contends the Pope case falls within and explain the basis for GM's position. *I do not want to get involved*

---

[4]    In the April 2015 Decision, the Court identifies "economic loss" claims as claims "for alleged reduction in the resale value of affected cars, other economic loss (such as unpaid time off from work when getting an ignition switch replaced), and inconvenience." *See* April 2015 Decision at p. 18. The claims in the Pope case are wrongful death claims brought under Oklahoma law arising out of a fatality accident in which an airbag failed to deploy. Clearly, the wrongful death claims in Pope are not what the Court was contemplating as being within the scope of "economic loss" claims.

4

> *in bankruptcy proceedings without a clear understanding of whether and why my*
> *case would be implicated by the bankruptcy proceedings.*

*See* Exhibit 4 at pp. 1-2 (emphasis added).  New GM never responded to this question.

The Pope Plaintiffs did not participate in the September 2015 briefing because of New GM's representation that rulings as to the Ignition Switch Plaintiffs were equally applicable to the Pope Plaintiffs.  Yet, after the December 2015 Judgment was entered, New GM has argued that the events leading to the entry of that judgment are important because those events purportedly support New GM's position that the Pope Plaintiffs were treated differently than the Ignition Switch Plaintiffs in the December 2015 Judgment.  The Pope Plaintiffs agree those events are important but for a different reason—they show that New GM followed its misleading statements to the Pope Plaintiffs in the September 1, 2015 correspondence with a complete failure to involve the Pope Plaintiffs in the proceedings which resulted in the December 2015 Judgment.  First, the Pope Plaintiffs were not served with the November 2015 Decision.  Second, when New GM was urging the Bankruptcy Court to use specific language in the December 2015 Judgment for the purpose of treating Ignition Switch Plaintiffs different from the Pope Plaintiffs, New GM chose <u>not</u> to serve the Pope Plaintiffs with its November 30, 2015 letter brief.  *See* November 30, 2015 correspondence without enclosures attached as Exhibit 5 showing that the Pope Plaintiffs' counsel was not included in the circulation.  In the November 30th letter, New GM argued that the December 2015 Judgment should treat Post Closing Accident Plaintiffs without Ignition Switch Defect claims (i.e. the Pope Plaintiffs) different from the Ignition Switch Defect Plaintiffs.  *See id*. at p. 4.  This is the ***exact opposite*** of what New GM had represented to the Pope Plaintiffs.  If New GM had served the Pope Plaintiffs with the November 30th letter, the Pope Plaintiffs would have been afforded an opportunity to address this serious discrepancy with the Court at that time.  Unfortunately, New GM prevented the Pope Plaintiffs from raising the

5

issue by not serving them with the November 30th letter.  Finally, after the Court entered the December 2015 Judgment, New GM chose not to serve the Pope Plaintiffs with the judgment.

In fact, it was not until five (5) months later that New GM notified the Pope Plaintiffs of the November 2015 Decision and the December 2015 Judgment.  *See* May 16, 2016 correspondence without enclosures attached as Exhibit 6.  The most surprising aspect of the letter was New GM's position that the Pope Plaintiffs' punitive damage claims were now barred because they were treated differently than the punitive damage claims of the Ignition Switch Plaintiffs.  *See id.* at p. 3.  This came as a shock because New GM had previously led counsel for the Pope Plaintiffs to believe that the Bankruptcy Court rulings in connection with the Ignition Switch Plaintiffs were "equally applicable" to the Pope Plaintiffs.  *See* Exhibit 2 at pp. 2-3.  New GM had misled the Pope Plaintiffs, failed to serve the Pope Plaintiffs with important submissions to the Court or even the Court's rulings, and then argued that the Pope Plaintiffs were estopped from disputing New GM's newly crafted positions.

Not wanting to be in violation of this Court's orders, the Pope Plaintiffs responded to New GM's May 16th letter via correspondence dated June 17, 2016.  *See* June 17, 2016 correspondence without enclosures attached as Exhibit 7.  Because counsel for the Pope Plaintiffs still believed (*based on representations previously made by New GM*) that their punitive damage claims were in the same stead as punitive damage claims asserted by the Ignition Switch Plaintiffs, he cited the November 2015 Decision which approved two pathways for recovering punitive damages from New GM.  *See id*. at pp. 2-3.

Mr. Davidson responded to the June 17th letter via correspondence dated June 22, 2016.  *See* June 22, 2016 correspondence attached as Exhibit 8.  To support its position, New GM relied upon language in the November 2015 Decision and December 2015 Judgment referring to "Non-

Ignition Switch Plaintiffs" but that phrase had been expressly defined by the Court to only

include "economic loss" claims which does not encompass the Pope Plaintiffs' wrongful death

claim. *See* April 2015 Decision, 529 B.R. at 522-523 and December 2015 Judgment at fn. 1. A

plain reading of the Bankruptcy Court's prior rulings clearly shows that the Pope Plaintiffs do

not fall within the Bankruptcy Court's definition of Non-Ignition Switch Plaintiffs. New GM

appeared to be attempting to change the meaning of a term previously defined by the Court.

On June 24, 2016, New GM filed its Motion to Enforce against the Pope Plaintiffs. *See*

Motion by General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the

Bankruptcy Court's July 5, 2009 Sale Order and Injunction, and the Rulings in Connection

Therewith, With Respect to Plaintiffs Identified on Schedule "1" Attached Hereto (Dkt. 13655-

1). While New GM's Motion was pending, the Second Circuit Opinion was issued. This Court

then began the process which led to the 2016 Threshold Issues briefing.

## <u>ARGUMENTS AND AUTHORITIES</u>

### I.  THRESHOLD ISSUE NO. 1

**In the context of (a) the April 2015 Decision/June 2015 Judgment, and
(b) the November 2015 Decision/December 2015 Judgment, are Ignition
Switch Plaintiffs only those plaintiffs that are asserting claims against
New GM based on an "Ignition Switch" in a "Subject Vehicle," and all
other plaintiffs are Non-Ignition Switch Plaintiffs? If that is not correct,
what did the Bankruptcy Court mean when it used the terms Ignition
Switch Plaintiffs and Non-Ignition Switch Plaintiffs in (a) the April 2015
Decision/June 2015 Judgment, and (b) the November 2015
Decision/December 2015 Judgment?**

The short answer is no. When the 2015 rulings were entered, a plaintiff did not fall

within one category or the other category. The term "Ignition Switch Plaintiffs" was defined by

the Bankruptcy Court to mean "plaintiffs that have commenced a lawsuit against New GM

asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles."[5]

*See* June 2015 Judgment at fn. 1 and December 2015 Judgment at fn. 1.  The term "Non-Ignition Switch Plaintiffs" was defined by the Bankruptcy Court to mean "plaintiffs that have commenced a lawsuit against New GM asserting *economic losses* based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM vehicle."  *See id*. (emphasis added). Regarding "economic loss" for Non-Ignition Switch Plaintiffs, the Bankruptcy Court also explained that "most of their cars did not have defects, and/or were not the subject of recalls, at all" but that they contended the Ignition Switch Defect "caused damaged to 'the brand' resulting in Economic Loss to them."  *See* April 2015 Decision, 529 B.R. at 522-23.  Clearly, wrongful death plaintiffs including the Pope Plaintiffs do not fit within either definition.

---

[5]    The capitalized terms were defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014,* filed on August 8, 2014 (Dkt. 12826) at p. 3.  "Subject Vehicles" had previously been defined to cover a limited group of vehicles involved in a specific recall.  This meant that there were plaintiffs who had claims of defective ignition switches who still did not fall within the Bankruptcy Court's definition of Ignition Switch Plaintiffs because their vehicle was not part of a specific recall.

8

## II.    THRESHOLD ISSUE NO. 2:  PART ONE

**Are Non-Ignition Switch Plaintiffs able to assert Independent Claims against New GM based solely on New GM's conduct because (a) the Opinion permits such claims to be asserted, and/or (b) the Sale Order cannot bar Post-Closing Accident Plaintiffs in non-Subject Vehicles from asserting such claims, and/or (c) the Post-Closing Accident Plaintiffs in non-Subject Vehicles are not bound by the November 2015 Decision/December 2015 Judgment? or Are Non-Ignition Switch Plaintiffs barred from asserting Independent Claims against New GM either because (a) other than those plaintiffs represented by Mr. Peller in the Elliott, Sesay and Bledsoe cases that appealed the April 2015 Decision/June 2015 Judgment, they did not appeal the April 2015 Decision/June 2015 Judgment to the Second Circuit, and therefore the Opinion does not apply to them, and/or (b) they did not appeal the November 2015 Decision/December 2015 Judgment and/or the Opinion did not affect the rulings in the November 2015 Decision/December 2015 Judgment?**

Non-Ignition Switch Plaintiffs (*as that term has now be _re-defined_ under the Order to Show Cause entered on December 13, 2016 (Dkt. 13802))* are permitted to assert Independent Claims against New GM based solely on New GM's conduct because the Second Circuit Opinion held that Independent Claims could not be enjoined by the Sale Order.  *See* Second Circuit Opinion, 829 F.3d at 157.  On this point, the Second Circuit concisely held:

> [I]ndependent claims do not meet the Code's limitation on claims.  By definition, independent claims are claims based on New GM's own post-closing wrongful conduct.  Though the parties do not lay out the whole universe of possible independent claims, we can imagine that some claims involve misrepresentations by New GM as to the safety of Old GM cars.  These sorts of claims are based on New GM's *post*-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct.  Thus, these claims are outside the scope of the Sale Order's "free and clear" provision.

*Id*.  Even if New GM could somehow convince this Court that the Second Circuit Opinion did not directly apply to all plaintiffs who fall within the *new* definition of Non-Ignition Switch Plaintiffs, this Court is bound to follow the analysis of the Second Circuit in deciding this issue

and the result for these plaintiffs (including the Pope Plaintiffs) must be the same as the result reached by the Second Circuit.

The fact that the Pope Plaintiffs did not appeal the April 2015 Decision/June 2015 Judgment cannot serve as a basis to deny the Pope Plaintiffs the benefits of the Second Circuit Opinion for the simple reason that the Pope Plaintiffs had no involvement with the GM Bankruptcy Proceedings at that time. Prior to those rulings, New GM had not filed any Motion to Enforce against the Pope Plaintiffs and had not provided *any notice* to the Pope Plaintiffs that any activity in the GM Bankruptcy Proceedings could potentially impact the Pope Plaintiffs.

The fact that the Pope Plaintiffs did not appeal the November 2015 Decision/December 2015 Judgment also cannot serve as a basis to deny the Pope Plaintiffs the benefits of the Second Circuit Opinion. New GM did not give the Pope Plaintiffs adequate notice which reasonably (or even accurately) conveyed to the Pope Plaintiffs the issues to be briefed in the fall of 2015. First, New GM represented to the Pope Plaintiffs that Independent Claims against New GM had not been impacted by the April 2015 Decision/June 2015 Judgment. *See* Exhibit 2 at pp. 2-3 Second, New GM represented to the Pope Plaintiffs that the "reasoning and rulings" by the Bankruptcy Court relating to the Ignition Switch Plaintiffs are "equally applicable to" the Pope Plaintiffs' lawsuit. *See id.* at p. 3. Third, New GM did not serve the Pope Plaintiffs with the November 2015 Decision. Fourth, New GM did not serve the Pope Plaintiffs with their letter brief to the Bankruptcy Court wherein New GM argued for language to be included in the judgment which New GM now contends forecloses rights of the Pope Plaintiffs. Finally, New GM failed to serve the Pope Plaintiffs with the December 2015 Judgment. Given these facts, New GM should not be rewarded for its conduct by penalizing the Pope Plaintiffs for not appealing the November 2015 Decision/December 2015 Judgment.

III.    **THRESHOLD ISSUE NO. 2:  PART TWO**

**If Non-Ignition Switch Plaintiffs are able to assert Independent Claims against New GM either in light of the Opinion and/or issues related to subject matter jurisdiction or due process: (i) are such alleged Independent Claims really disguised Assumed Liabilities, or successor liability claims dressed up to look like something else (i.e., Retained Liabilities) and, therefore, cannot be asserted against New GM, and/or (ii) should all determinations with respect to alleged Independent Claims be left to non-bankruptcy judge(s)?**

The Pope Plaintiffs have nothing to add to the arguments and authorities set forth in

Plaintiffs' Joint Opening Brief on the 2016 Threshold Issues.

IV.    **THRESHOLD ISSUE NO. 3**

**Is the Opinion's holding that claims held by Used Car Purchasers are not covered by the Sale Order because they had no contact or relationship with Old GM limited to (a) only those parties that appealed the April 2015 Decision/June 2015 Judgment to the Second Circuit, and/or (b) Independent Claims asserted by Used Car Purchasers based solely on New GM conduct?**

The Second Circuit clearly and unambiguously decided that claims held by Used Car

Purchasers are <u>not</u> covered by the Sale Order.  *See* Second Circuit Opinion, 829 F.3d at 157.  The

Second Circuit's analysis in reaching this decision was not limited to those parties who appealed

the April 2015 Decision/June 2015 Judgment:

> [T]he Sale Order likewise does not cover the Used Car Purchasers' claims.  The Used Car Purchasers were individuals who purchased Old GM cars *after* the closing, without knowledge of the defect or possible claim against New GM. They had no relation with Old GM prior to bankruptcy.  Indeed, as of the bankruptcy petition there were an unknown number of unknown individuals who would one day purchase Old GM vehicles secondhand.  There could have been no contact or relationship—actual or presumed—between Old GM and these specific plaintiffs, who otherwise had no awareness of the ignition switch defect or putative claims against New GM.  We cannot, consistent with bankruptcy law, read the Sale Order to cover their claims.  *See Chateaugay I*, 944 F.2d at 1003-04 (calling such a reading "absurd").

11

*Id.* Even if New GM could somehow convince this Court that the Second Circuit Opinion did not directly apply to the Pope Plaintiffs,[6] this Court is bound to follow the analysis of the Second Circuit in deciding this issue and the result for the Pope Plaintiffs must be the same as the result reached by the Second Circuit. Furthermore, the fact that the Pope Plaintiffs did not appeal the April 2015 Decision/June 2015 Judgment cannot serve as a basis to deny the Pope Plaintiffs the benefits of the Second Circuit Opinion because the Pope Plaintiffs had no involvement with the GM Bankruptcy Proceedings at that time.

## V.    THRESHOLD ISSUE NO. 4

**Are Post-Closing Accident Plaintiffs bound by the Sale Order or may they bring successor liability claims against New GM and seek punitive damages in connection therewith notwithstanding the Court's rulings in the November 2015 Decision/December 2015 Judgment?**

The Pope Plaintiffs have nothing to add to the arguments and authorities set forth in Plaintiffs' Joint Opening Brief on the 2016 Threshold Issues.

## CONCLUSION

For the reasons outlined in Plaintiffs' Joint Opening Brief on the 2016 Threshold Issues and the additional reasons set forth herein, the Pope Plaintiffs respectfully request the Court to (a) deny GM's Motion to Enforce against the Pope Plaintiffs (Dkt. 13655-1), (b) apply the Second Circuit Opinion to the Pope Plaintiffs, (c) order that the Pope Plaintiffs are free to assert Independent Claims against New GM with the merits of said claims to be decided by the Oklahoma state court handling the Pope Plaintiffs' lawsuit, (d) order that the Pope Plaintiffs' Used Car Purchaser claims are not enjoined under the Sale Order, (e) order that the Pope Plaintiffs' claims as Post-Closing Accident Plaintiffs are not bound by the Sale Order and that

---

[6]    The Pope Plaintiffs' claims fall within the scope of Used Car Purchasers' claims because their mother, Leslie Turay, had purchased her used Cadillac Deville in 2010 which was after the Sale Order had been entered.

12

they are able to assert successor liability claims against New GM and seek punitive damages, and

(f) grant the Pope Plaintiffs all other relief which the Court deems just and proper.

Respectfully submitted,

/s/ Kris Ted Ledford
KRIS TED LEDFORD, OBA #17552
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK  74055
Telephone: (918) 376-4610
Facsimile: (918) 376-4993
Email: kris@ledford-lawfirm.com

*Attorney for Christopher Pope and
Gwendolyn Pope*

13

## <u>CERTIFICATE OF SERVICE</u>

I, Kris Ted Ledford, hereby certify that on the 27th day of February, 2017, the above and foregoing document was filed through the CM/ECF System and that said document will be electronically transmitted to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Kris Ted Ledford
KRIS TED LEDFORD

S:\Pope\GM Bankruptcy Pleadings\Word\2017.2.27 Pope Supplemental Opening Brief.doc

14