STATE OF OKLAHOMA
COUNTY OF MUSKOGEE
FILED

2014 DEC 18 PM 3: 31

PAULA SEXTON
COURT CLERK

**IN THE DISTRICT COURT OF MUSKOGEE COUNTY**
**STATE OF OKLAHOMA**

CHRISTOPHER POPE and GWENDOLYN
POPE, individually and as co-personal
representatives of the Estate of LESLEY
CARYN TURAY,

        Plaintiffs,

v.

        Case No. CJ-2014- 467

GENERAL MOTORS COMPANY A/K/A
GENERAL MOTORS LLC, a foreign limited
liability company; REGAL CAR SALES AND
CREDIT, LLC, an Oklahoma limited liability
company; SABER ACCEPTANCE
COMPANY, LLC, an Oklahoma limited
liability company; ELCO CHEVROLET, INC.,
a foreign company; SPECIALTY LEASE
INVESTMENTS, LLC, a foreign limited
liability company; and SOTHEA RENORDO
MCCONNELL, an individual,

        JURY TRIAL DEMANDED

        Defendants.

## PETITION

Plaintiffs, Christopher Pope and Gwendolyn Pope, for their cause of action against

Defendants allege and state as follows:

### PARTIES

1.    Plaintiffs, Christopher Pope and Gwendolyn Pope, are the natural children and co-

personal representatives of the Estate of Lesley Caryn Turay ("Ms. Turay").

2.    Defendant, General Motors Company a/k/a General Motors LLC ("GM"), is a

limited liability company formed under the laws of the state of Delaware with its principal place

of business located in Detroit, Michigan. In 2009, GM acquired substantially all assets and

assumed certain liabilities of its predecessor in interest, General Motors Corporation, in the

course of a Chapter 11 bankruptcy. GM assumed liability for product defect claims which arose



EXHIBIT
1

out of accidents that occurred after the bankruptcy filing involving vehicles manufactured by General Motors Corporation prior to the bankruptcy.

3.      Defendant, Regal Car Sales and Credit, LLC ("REGAL"), is an Oklahoma limited liability company.

4.      Defendant, Saber Acceptance Company, LLC ("SABER"), is an Oklahoma limited liability company.

5.      Defendant, Elco Chevrolet, Inc. ("ELCO"), is a Missouri corporation.

6.      Defendant, Specialty Lease Investments, LLC ("SLI"), is a Missouri limited liability company.

7.      Defendant, Sothea Renordo McConnell ("McConnell"), is an Oklahoma resident who resided in Muskogee County on the date of the motor vehicle collision on which this lawsuit is based.

## FACTS OF COLLISION

8.      On December 22, 2012, Ms. Turay was involved in a head-on collision with a vehicle operated by McConnell which occurred on State Highway 16 in Muskogee County, State of Oklahoma ("Collision").

9.      At the time of the Collision, Ms. Turay was driving her 2001 Cadillac Deville (VIN #1G6KD54Y71U109398) ("Cadillac") which she had purchased from Regal and/or Saber on or about July 17, 2010.

10.     The airbags in Ms. Turay's Cadillac failed to deploy in the Collision thereby causing Ms. Turay's fatal injuries.

COUNT I
PRODUCTS LIABILITY CLAIM AGAINST GM, REGAL, SABER, ELCO, AND SLI

11.     The failure of the airbags in Ms. Turay's Cadillac to deploy in the Collision was the result of a product defect which rendered the Cadillac unreasonably dangerous to the user.

12.     The Cadillac was offered for sale to members of the public in a defective condition.

13.     Upon information and belief, REGAL and SABER owned, sold, repossessed, and re-sold the Cadillac at various times from late 2008 to early 2013 as commercial sellers of used automobiles.

14.     Upon information and belief, ELCO purchased and sold the Cadillac in late 2008 as a commercial seller of used automobiles.

15.     Upon information and belief, SLI purchased and sold the Cadillac in late 2008 as a commercial seller of used automobiles.

16.     The defect in Ms. Turay's Cadillac caused Ms. Turay's fatal injuries.

17.     GM, REGAL, SABER, ELCO, and/or SLI are strictly liable under a products liability theory of recovery for the wrongful death of Ms. Turay.  These Defendants are liable for all damages recoverable pursuant to 12 O.S. § 1053.

18.     Upon information and belief, the marketing, advertising, and sale of the defective Cadillac was reckless, willful, intentional, and/or malicious conduct which was life-threatening to humans thereby justifying an award of punitive damages against GM, REGAL, SABER, ELCO, and/or SLI pursuant to 23 O.S. § 9.1.

19.     GM's failure to disclose the existence of the safety product defect to Ms. Turay or remedy the defect prior to the Collision was reckless, willful, intentional, and/or malicious

conduct which was life-threatening to humans thereby justifying an award of punitive damages against GM pursuant to 23 O.S. § 9.1.

COUNT II

VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT CLAIM AGAINST GM

20.    Upon information and belief, GM was aware of the product defect in the supplemental restraint system for 2001 Cadillac Devilles and other GM vehicles utilizing the same supplemental restraint system prior to the Collision.

21.    GM had an affirmative obligation to disclose the existence of the safety product defect to Ms. Turay and remedy the defect prior to the Collision.

22.    GM failed to disclose the existence of the safety product defect to Ms. Turay or remedy the defect prior to the Collision.

23.    As a result of GM's failure to disclose and failure to remedy the defect, Ms. Turay sustained fatal injuries in the Collision.

24.    GM's actions and failures to act constitute deceptive trade practices and/or unfair trade practices in violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.*

25.    GM is liable the wrongful death of Ms. Turay which resulted from its violations of the Oklahoma Consumer Protection Act.  GM is liable for all damages recoverable pursuant to 12 O.S. § 1053.

26.    GM's violations of the Oklahoma Consumer Protection Act constitute reckless, willful, intentional, and/or malicious conduct which was life-threatening to humans thereby justifying an award of punitive damages against GM pursuant to 23 O.S. § 9.1.

COUNT III

NEGLIGENCE CLAIM AGAINST MCCONNELL

27.    McConnell was negligent in causing the Collision.

28.     As a result of Defendant's negligence, Ms. Turay sustained fatal injuries.

29.     McConnell is liable for the wrongful death of Ms. Turay.  McConnell is liable for all damages recoverable pursuant to 12 O.S. § 1053.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount which is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code plus interest, attorney fees, costs, and all other relief which the Court deems just and proper.

Respectfully submitted,

KRIS TED LEDFORD, OBA #17552
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK  74055
Telephone: (918) 376-4610
Facsimile: (918) 376-4993
Email: kris@ledford-lawfirm.com

*Attorney for Plaintiffs*

ATTORNEY'S LIEN CLAIMED

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Scott Davidson
Direct Dial: 212-556-2164
sdavidson@kslaw.com

September 1, 2015

**Via E-Mail And/Or Overnight Delivery**
Kris Ted Ledford
Ledford Law Firm
Heritage Professional Plaza
425 E. 22nd St., Ste. 101
Owassa, OK  74055

Re:    ***Pope, et al. v. General Motors LLC, et al.***
       **Case No.: CJ-2014-467 (Muskogee Cty., OK Dist. Ct.)**

Dear Counsel:

Reference is made to the *Complaint* ("**Pleading**") filed in the above-referenced lawsuit ("**Lawsuit**"), which seeks to hold General Motors LLC ("**New GM**") liable for various claims, as well as seeks punitive damages relating to vehicles/parts manufactured and sold by Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**").  From a review of the Pleading, it appears that Plaintiff is making allegations and asserting claims against New GM for economic damages and punitive damages that arise from the conduct of Old GM (and not New GM).  *See, e.g.*, Pleading ¶¶ 18, 20-26. The attempt to assert such claims against and seek such damages from New GM is a violation of the Sale Order and Injunction (as herein defined) entered by the Bankruptcy Court (as herein defined).  *See Decision on Motion to Enforce Sale Order, In re Motors Liquidation Company*, 529 B.R. 510 (Bankr. S.D.N.Y 2015) ("**Decision**"), as well as the Judgment entered by the Bankruptcy Court on June 1, 2015 ("**Judgment**").[1]  As such, those claims and requests for punitive damages cannot be maintained against New GM.

The Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009 (as amended) ("**Sale Agreement**"), which was approved by an Order, dated July 5, 2009 ("**Sale Order and Injunction**"), of the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**"), is clear in this regard.  Specifically, under the Sale Agreement, New GM assumed only three categories of liabilities for vehicles and parts sold by Old GM: (a) post-sale accidents or incidents[2] involving Old GM vehicles causing personal injury, loss of life or property

---

[1]    A copy of the Judgment is annexed hereto as **Exhibit "A."**  The Judgment memorializes the rulings in the Decision, a copy of which is annexed hereto as **Exhibit "B."**

[2]    According to the Pleading, Plaintiff is asserting, among others, product liability claims resulting from an accident that took place after the closing of the sale from Old GM to New GM.  New GM assumed "Product Liabilities" (as

26665062v1

**EXHIBIT**

2

Kris Ted Ledford, Esq.
Sept. 1, 2015
Page 2

damage; (b) repairs provided for under the "Glove Box Warranty"—a specific written warranty, of limited duration, that only covers repairs and replacement of parts and not monetary damages; and (c) Lemon Law claims (as defined in the Sale Agreement) essentially tied to the failure to honor the Glove Box Warranty. All other liabilities relating to vehicles and parts sold by Old GM were "Retained Liabilities" of Old GM. *See* Sale Agreement § 2.3(b). To the extent the claims asserted in the Pleading and damages sought are based on a successor liability theory, they were not assumed by New GM and, accordingly, New GM cannot be liable to the Plaintiffs under that theory of recovery.

In addition, the Sale Agreement made clear that while New GM assumed liabilities for post-sale accidents involving Old GM vehicles directly causing personal injury, loss of life, or property damage, that obligation was for the assumption of compensatory damages only -- not punitive damages. The Sale Agreement defines "damages" as all Losses other than punitive damages. Moreover, the word "directly" in the definition of Product Liabilities was specifically used to make clear that the only liabilities assumed by New GM for post-sale accidents are those damages directly related to the accident. Punitive damages which are assessed to deter future wrongful conduct of Old GM, unrelated to the specific accident, was never something that New GM assumed. The Bankruptcy Court has previously found that New GM only assumed the liabilities that were commercially necessary for its post-sale business activities. Punitive damages assessed to punish alleged pre-sale wrongful conduct of Old GM would never be something considered "commercially necessary." In fact, based on the subordinated priority of punitive damage claims in bankruptcy, even Old GM would not have been required to pay such damages. And, clearly, New GM did not assume an obligation that Old GM would never have been required to pay.

Various provisions of the Sale Agreement and the Sale Order and Injunction provide that New GM would have no responsibility for any liabilities (except for Assumed Liabilities, as defined in the Sale Agreement) predicated on Old GM conduct, relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009. *See, e.g.*, Sale Order and Injunction ¶¶ AA, 8, 46. The Sale Order and Injunction enjoins parties from bringing actions against New GM for unassumed Old GM liabilities. *Id.*, ¶ 8. It also provides that the Bankruptcy Court retains "exclusive jurisdiction to enforce and implement the terms and provision of [the] Order" including to "protect [New GM] against any of the [liabilities that it did not expressly assume under the Sale Agreement]." *Id.*, ¶ 71. If there is any ambiguity with respect to any of the foregoing -- which there should not be -- the exclusive forum to clarify that ambiguity is the Bankruptcy Court. The Bankruptcy Court has consistently exercised jurisdiction over issues such as those raised in the Lawsuit.[3]

The Bankruptcy Court recently issued the Judgment, which reiterated that "[e]xcept for Independent Claims and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking

---

defined in the Sale Agreement, as amended) for post-363 Sale accidents. As such, to the extent the Pleading asserts assumed Product Liabilities, those aspects of the Pleading would not be barred by the Sale Order and Injunction, the Sale Agreement or the Judgment. Note, however, that New GM disputes any and all liability for such claims.

[3]   *See, e.g., Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013); *Castillo v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-00509, 2012 WL 1339496 (Bankr. S.D.N.Y. Apr. 17, 2012), aff'd, 500 B.R. 333 (S.D.N.Y. 2013), aff'd, No. 13-4223-BK, 2014 WL 4653066 (2d Cir. Sept. 19, 2014). *See also Celotex Corp. v. Edward*, 514 U.S. 300 (1995).

Kris Ted Ledford, Esq.
Sept. 1, 2015
Page 3

to impose liability or damages based in whole or in part on Old GM conduct (including, without
limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the
Sale Order . . . ." Judgment ¶ 9; *see also* Decision, 529 B.R. at 528 ("Claims premised in any way
on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by
reason of the Court's other rulings, the prohibitions against the assertion of such claims stand.").
The reasoning and rulings set forth in the Judgment and Decision are equally applicable to the
Lawsuit.  To the extent that the Pleading asserts economic loss claims and/or requests punitive
damages based on Old GM conduct, they are proscribed.  Accordingly, the Pleading should be
amended so that it is consistent with the rulings in the Judgment, Decision and Sale Order and
Injunction.

      The Judgment provides procedures for amending pleadings that violate the Judgment,
Decision and Sale Order and Injunction.  Specifically, it provides as follows:

> New GM is hereby authorized to serve this Judgment and the Decision upon any
> additional party (or his or her attorney) (each, an "**Additional Party**") that
> commences a lawsuit and/or is not otherwise on Exhibits "A" through "D" hereto
> (each, an "**Additional Lawsuit**") against New GM that would be proscribed by
> the Sale Order (as modified by the Decision and this Judgment). Any Additional
> Party shall have 17 business days upon receipt of service by New GM of the
> Decision and Judgment to dismiss, without prejudice, such Additional Lawsuit or
> the allegations, claims or causes of action contained in such Additional Lawsuit
> that would violate the Decision, this Judgment, or the Sale Order (as modified by
> the Decision and this Judgment).

Judgment ¶ 18(a).  Accordingly, pursuant to the terms of the Judgment, you have 17 business days
from receipt of the Decision and Judgment to amend the Pleading by striking the provisions that do
not comply with the Judgment, Decision and Sale Order and Injunction.

      To the extent you have a

> good faith basis to maintain that the Additional Lawsuit or certain allegations,
> claims or causes of action contained in such Additional Lawsuit should not be
> dismissed without prejudice, [you] shall, within 17 business days upon receipt of
> the Decision and Judgment, file with [the Bankruptcy Court] a No Dismissal
> Pleading explaining why such Additional Lawsuit or certain claims or causes of
> action contained therein should not be dismissed without prejudice. *The No
> Dismissal Pleading shall not reargue issues that were already decided by the
> Decision and Judgment*. New GM shall file a response to the No Dismissal
> Pleading within 17 business days of service of the No Dismissal Pleading.  The
> [Bankruptcy] Court will schedule a hearing thereon if it believes one is necessary.

*Id.* ¶ 18(b) (emphasis added).

      If you fail to either timely strike the offending provisions in the Pleading or timely file a No
Dismissal Pleading, New GM is permitted to file with the Bankruptcy Court a "notice of
presentment on five (5) business days' notice, with an attached Dismissal Order that directs [you] to

Kris Ted Ledford, Esq.
Sept. 1, 2015
Page 4

dismiss without prejudice the [offending provisions in the Pleading] . . ., within 17 business days of receipt of the Dismissal Order." *Id.* ¶ 18(c).

This letter and its attachments constitute service on you of the Judgment and Decision, which triggers the provisions in paragraph 18 of the Judgment with respect to the Lawsuit.

New GM reserves all of its rights regarding any continuing violations of the Bankruptcy Court's rulings.

It is likely that based on a Case Management Conference held by Bankruptcy Judge Gerber on August 31, 2015, the briefing schedule for the No Strike/No Dismissal Pleading (in particular, your 17 business day time to respond to this letter) will be modified. We will send you the Case Management Order once it is entered which will reset the schedule. If you have any questions in the interim, please call me.

Very truly yours,

*/s/ Scott I. Davidson*

Scott I. Davidson

SD/hs
Encl.

Cc:    Mary Quinn Cooper

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial: 212-556-2158
asteinberg@kslaw.com

September 4, 2015

**Via Email or Overnight Transmission**

RE:   ***In re Motors Liquidation Company, et al.***
       **Case No. 09-50026 (REG)**

**Scheduling Order Entered by Bankruptcy Court on Sept. 3, 2015**

Dear Counsel:

General Motors LLC ("**New GM**") previously served on you a demand letter ("**Demand Letter**") in connection with a lawsuit commenced by you against New GM which set forth certain deadlines for filings pleadings with the Bankruptcy Court (as defined in the Demand Letter). The attachment is a Scheduling Order entered by the Bankruptcy Court on September 3, 2015 ("**Scheduling Order**"). Please review the Scheduling Order as it modifies the time periods set forth in the Demand Letter for filing certain pleadings with the Bankruptcy Court, including without limitation, the 17 business days to respond to the Demand Letter.

If you have any objection to the procedures set forth in the Scheduling Order, you must file such objection in writing with the Bankruptcy Court within three (3) business days of receipt of this notice ("**Objection**"). Otherwise, you will be bound by the terms of the Scheduling Order and the determinations made pursuant thereto. If you believe there are issues that should be presented to the Court relating to your lawsuit that will not otherwise be briefed and argued in accordance with the Scheduling Order, you must set forth that position, with specificity in your Objection. The Court will decide whether a hearing is required with respect to any Objection timely filed and, if so, will, promptly notify the parties involved.

If you have any questions, please call me.

Very truly yours,

*/s/ Arthur Steinberg*

Arthur Steinberg

DMSLIBRARY01\21600\162081\26762997.v1-9/3/15

**EXHIBIT**

3

tabbies

 

September 4, 2015

Re:    *In Re General Motors LLC Ignition Switch Litigation*
       Case No. 14-MD-2543 (JMF); 14-MC-2543

THIS IS A COURT-ORDERED NOTIFICATION ABOUT YOUR CASE INVOLVING GENERAL MOTORS LLC. THE TEXT IN THE ATTACHED LETTER IS REQUIRED BY THE HON. ROBERT E. GERBER, BANKRUPTCY JUDGE, S.D.N.Y. IF YOU HAVE ANY QUESTIONS ABOUT THE PROCEDURES, PLEASE CONTACT DAWN BARRIOS, PLAINTIFFS' LIAISON COUNSEL TO THE MDL, AND/OR CO-LEAD PLAINTIFFS' COUNSEL FOR THE MDL (STEVE BERMAN, ELIZABETH CABRASER, BOB HILLIARD), WHOSE CONTACT INFORMATION IS ON GMIGNITIONMDL.COM.

BE ADVISED THE BANKRUPTCY COURT HAS MODIFIED THE DEADLINE IMPOSED BY THE JUDGMENT OF THE BANKRUPTCY COURT, DATED JUNE 1, 2015, TO FILE A PLEADING IN THE BANKRUPTCY COURT. UNLESS YOU CHOOSE TO OBJECT TO THE PROCEDURES IN THE ATTACHED LETTER, *OR* YOU WISH TO FILE YOUR OWN PAPERS NOTWITHSTANDING YOUR RIGHT TO BE COVERED BY THE FILINGS THAT DESIGNATED COUNSEL FOR PLAINTIFFS WILL BE MAKING IN THE BANKRTUPCY COURT, YOU HAVE NO REQUIRED ACTIONS IN THE BANKRUPTCY COURT AT THIS TIME.

THIS IS A SUMMARY THAT IS NOT INTENDED TO SUBSTITUTE THE CONTENT IN THE ATTACHED PAPERS. PLEASE READ THE ATTACHED PAPERS CAREFULLY FOR ALL THE DETAILS.

September 4, 2015
Page 2


Very truly yours,


| | | |
|---|---|---|
| /s/ Steve W. Berman | /s/ Elizabeth J. Cabraser | /s/ Robert C. Hilliard |
| Steve W. Berman | Elizabeth J. Cabraser | Robert C. Hilliard |
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd. |
| Suite 3300 | 29th Floor | Suite 500 |
| Seattle, WA  98101 | San Francisco, CA  94111-3339 | Corpus Christi, TX 78401 |
| -and- | -and- | |
| 555 Fifth Avenue | 250 Hudson Street | |
| Suite 1700 | 8th Floor | |
| New York, NY 10017 | New York, NY  10013-1413 | |


1272388.1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re                                                        :        Chapter 11
                                                             :
MOTORS LIQUIDATION COMPANY, et al.,                          :        Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., et al.                   :
                                                             :
                      Debtors.                               :        (Jointly Administered)
-----------------------------------------------------------------X

### SCHEDULING ORDER REGARDING CASE MANAGEMENT ORDER
### RE: NO-STRIKE, NO STAY, OBJECTION, AND GUC TRUST ASSET PLEADING

Upon the Court's Case Management Order, dated August 19, 2015 ("**August 19
Order**"), regarding issues related to No-Strike, No Stay, Objection and GUC Trust Asset
Pleadings (each as defined in the Court's Judgment, dated June 1, 2015 ("**Judgment**")); and
upon responses thereto being filed on August 26, 2015 by certain parties in connection with the
issues raised in the August 19 Order; and upon the record of the Case Management Conference
held before the Court on August 31, 2015 ("**August 31 Conference**"); and due and proper notice
of the August 31 Conference having been provided; and the Court having issued directives from
the bench at the August 31 Conference in connection with the issues raised thereat which are
memorialized in this Order. Accordingly, it is hereby

ORDERED that the following procedures shall apply:

1.      The briefing schedule with respect to the issue ("**Punitive Damages Issue**") in
        complaints filed against General Motors LLC ("**New GM**") that request
        punitive/special/exemplary damages against New GM based in any way on the
        conduct of Motors Liquidation Co. (f/k/a General Motors Corporation) ("**Old
        GM**"), shall be as follows: (i) simultaneous opening briefs shall be filed by
        Sunday, September 13, 2015 at 12:00 noon (Eastern Time), and shall be no longer
        than 25 pages; and (ii) simultaneous reply briefs shall be filed by no later than
        Tuesday, September 22, 2015 at 12:00 noon (Eastern Time), and shall be no
        longer than 10 pages.[1] Designated Counsel for the Bellwether Cases (as herein

---

[1]    Hard copies of the briefs referred to in this paragraph may be delivered to Chambers the next business day.

26744235v2

defined) and Designated Counsel for the Economic Loss Claims asserted in MDL 2543 shall try to coordinate the responses from various plaintiffs in order to minimize the number of briefs filed on this issue.

2.  The briefing schedule with respect to whether causes of action in complaints filed against New GM relating to Old GM vehicles/parts based on the knowledge Old GM employees gained while working for Old GM and/or as reflected in Old GM's books and records transferred to New GM can be imputed to New GM ("**Imputation Issue**"), shall be as follows: (i) simultaneous opening briefs shall be filed by Friday, September 18 2015, and shall be no longer than 20 pages; and (ii) simultaneous reply briefs shall be filed by no later than Wednesday September 30, 2015, and shall be no longer than 10 pages.

3.  With respect to the complaints in the six bellwether cases (collectively, the "**Bellwether Cases**") identified in MDL 2543 pending in the United States District Court for the Southern District Of New York:[2]

    a.  On or before September 21, 2015, New GM shall file with the Court and serve on counsel of record in such cases  (i) marked complaints ("**Bellwether Marked Complaints**") with respect to the Bellwether Cases, showing which portions thereof New GM contends violate the Judgment, this Court's *Decision on Motion to Enforce Sale Order*, dated April 15, 2015 ("**Decision**"),[3] and/or the Order of this Court dated July 5, 2009 ("**Sale Order and Injunction**") and (ii) a letter, not to exceed three (3) single-spaced pages for all the Bellwether Cases, setting forth New GM's position with respect to the Bellwether Marked Complaints ("**New GM Bellwether Letter**"); and

    b.  On or before September 28, 2015, the plaintiffs in the Bellwether Cases shall file with the Court and serve on counsel of record in such cases their commentary next to the comments made by New GM with regard to the Bellwether Marked Complaints, together with a letter, not to exceed three (3) single-spaced pages for all the Bellwether Cases, responding to the Bellwether Marked Complaints and the New GM Bellwether Letter.

---

[2]  The plaintiffs in the Bellwether Cases are (i) Scheuer, (ii) Barthelemy and Spain, (iii) Reid, (iv) Cockram, (v) Norville, and (vi) Yingling.  Each of the plaintiffs in the Bellwether Cases are seeking, among other damages, compensation for property damage to their respective vehicles that occurred or was sustained in the applicable incident ("**Property Damage**").  The plaintiffs acknowledge that they are not seeking to recover damages for devaluation of their respective vehicles that is independent of Property Damage ("**Vehicle Devaluation Damages**").  To the extent that any of the requests for damages in the complaints in the Bellwether Cases can be construed to include Vehicle Devaluation Damages, the complaints are deemed to be amended to exclude Vehicle Devaluation Damages.  In particular (i) paragraphs 367-369 of the complaint in *Norville v. General Motors, LLC* (Case No. 14-cv-08176) (S.D.N.Y.) and (ii) paragraphs 415-417 of the complaint in *Cockram v. General Motors, LLC* (Case No. 14-cv-08176) (S.D.N.Y.), shall be deemed amended to exclude any request for Vehicle Devaluation Damages.  New GM will submit the Bellwether Marked Complaints with the assumption that such amendments were made.

[3]  *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).

4.      With respect to the Second Amended Consolidated Complaint filed in MDL 2543 ("SACC"):

    a.      On or before September 23, 2015, New GM shall file with the Court and serve as appropriate (i) a marked-up version of the Second Amended Consolidated Complaint ("**Marked SACC**"), showing which portions thereof New GM contends violate the Judgment, the Decision and/or the Sale Order and Injunction, and (ii) a letter, not to exceed five (5) single-spaced pages, setting forth New GM's position with respect to the Marked SACC ("**New GM Marked SACC Letter**"); and

    b.      On or before September 30, 2015, the Designated Counsel for the plaintiffs named in the Second Amended Consolidated Complaint shall file with the Court and serve on counsel of record in such cases their commentary next to the comments made by New GM with regard to the Marked SACC, together with a letter, not to exceed five (5) single-spaced pages, responding to the Marked SACC and New GM Marked SACC Letter.

    c.      Due to the length of the SACC, New GM and Designated Counsel are directed to consult with each other to see if there is an agreed-upon procedure such that the Marked SACC, and the response thereto, can be stream-lined, so that the relevant, representative issues are efficiently presented to this Court for resolution.

5.      With respect to the complaints filed in *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CUBT-CXC (Orange County, Cal.) and *State of Arizona v. General Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.) (collectively, the "**State Complaints**"):

    a.      On or before September 23, 2015, New GM shall file with the Court and serve on counsel of record in such cases (i) a marked-up version of the State Complaints ("**Marked State Complaints**"), marked to show which portions thereof New GM contends violate the Judgment, the Decision and/or the Sale Order and Injunction, and (ii) a letter, not to exceed five (5) single-spaced pages for the States' Complaints, setting forth New GM's position with respect to the Marked State Complaints ("**New GM Marked State Complaint Letter**"); and

    b.      On or before September 30, 2015, the plaintiffs named in the State Complaints shall file with the Court and serve on counsel of record in such cases their commentary next to the comments made by New GM with regard to the Marked State Complaints, together with a letter, not to exceed five (5) single-spaced pages for the States' Complaints, responding

to the Marked State Complaints and New GM Marked State Complaints
Letter.

6.    The Court has scheduled oral argument for the matters covered by paragraphs 1-5
for October 14, 2015 at 9:45 a.m.

7.    The parties agree that no further pleadings relating to the GUC Trust Asset
Pleading need be submitted and no side has requested oral argument with respect
to such Pleading.

8.    Counsel for the plaintiffs in *Bavlsik v. General Motors LLC* ("**Bavlsik Lawsuit**")
pending in the United States District Court for the Eastern District of Missouri has
notified New GM that they will withdraw their claim for punitive damages in
order to promptly proceed to trial in the *Bavlsik* Lawsuit. Accordingly, there is no
need for this Court to deal with the *Bavlsik* Lawsuit at this time.

ORDERED that within two (2) business days of the entry of this Scheduling Order, New

GM shall serve, by either e-mail, facsimile, overnight mail or, if none of the foregoing are

available, regular mail, a copy of this Scheduling Order on plaintiffs in any lawsuit where New

GM has previously sent a demand letter as authorized by the Judgment, with a cover note that

states as follows:

General Motors LLC ("**New GM**") previously served on you a demand letter
("**Demand Letter**") in connection with a lawsuit commenced by you against New
GM which set forth certain deadlines for filings pleadings with the Bankruptcy
Court (as defined in the Demand Letter). The attachment is a Scheduling Order
entered by the Bankruptcy Court on September 3, 2015 ("**Scheduling Order**").
Please review the Scheduling Order as it modifies the time periods set forth in the
Demand Letter for filing certain pleadings with the Bankruptcy Court, including
without limitation, the 17 business days to respond to the Demand Letter.

If you have any objection to the procedures set forth in the Scheduling Order, you
must file such objection in writing with the Bankruptcy Court within three (3)
business days of receipt of this notice ("**Objection**"). Otherwise, you will be
bound by the terms of the Scheduling Order and the determinations made
pursuant thereto. If you believe there are issues that should be presented to the
Court relating to your lawsuit that will not otherwise be briefed and argued in
accordance with the Scheduling Order, you must set forth that position, with
specificity in your Objection. The Court will decide whether a hearing is required
with respect to any Objection timely filed and, if so, will, promptly notify the
parties involved.

and it is further

ORDERED that in the event New GM believe there are issues to be decided by the Court in actions that received a demand letter that are not covered in paragraphs 1-5 above, New GM shall file with the Court and serve on counsel of record in such representative case(s) on or before September 23, 2015 (i) a marked-up version of their complaints ("**Other Plaintiffs' Complaints**"), showing which portions thereof New GM contends violate the Judgment, the Decision and/or the Sale Order and Injunction, and (ii) a letter, not to exceed three (3) single-spaced pages for the Other Plaintiffs' Complaints, setting forth New GM's position with respect to the Marked Other Plaintiffs' Complaints ("**New GM Marked Other Plaintiffs' Complaints Letter**"); and it is further

ORDERED that on or before September 30, 2015, the plaintiffs named in the Other Plaintiffs' Complaints shall file with the Court and serve on counsel of record in such cases their commentary next to the comments made by New GM with regard to the Other Plaintiffs' Complaints, together with a letter, not to exceed three (3) single-spaced pages for the Other Plaintiffs' Complaints, responding to the Marked Other Plaintiffs' Complaints and the New GM Marked Other Plaintiffs' Complaints Letter; and it is further

ORDERED that nothing in this Order is intended to nor shall preclude any other plaintiff's counsel (or *pro se* plaintiff), affected by the issues being resolved by this Court, from taking a position in connection with any such matters; *provided, however*, that such affected other plaintiffs' counsel who wishes to file a separate pleading with respect such matter(s) shall timely file a letter with the Court seeking permission to do so. Such letter shall specify (a) which issue is to be covered, (b) the length of the pleading sought to be filed, and (c) why such issue is not otherwise covered by the pleading to be filed by Designated Counsel. Prior to such time, such counsel shall consult with the Designated Counsel for the Bellwether Cases and Designated

Counsel for the Plaintiffs in MDL 2543 so as to avoid duplicative arguments and in an effort to limit the number of responsive briefs on the same issue(s); and it is further

ORDERED that, as stated on the record of the August 31 Conference, for all plaintiffs that have received a demand letter from New GM where the time period to file a No Strike, No Stay, and No Dismissal Pleading as set forth in the Judgment ("**Judgment Pleading**") had not expired as of the August 31 Conference, the briefing schedule set forth herein shall supersede the requirement to file such Judgment Pleadings; and it is further

ORDERED that this Court shall retain exclusive jurisdiction to interpret and enforce this Order.

Dated: September 3, 2015
      New York, New York

                              _s/ Robert E. Gerber_
                              UNITED STATES BANKRUPTCY JUDGE

**BROWN**RUDNICK

EDWARD S. WEISELFER
direct dial: (212) 209-4900
fax: (212) 938-2900
eweiselfner@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

September 2, 2015

**VIA E-MAIL**

The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

RE:    **In re Motors Liquidation Company, *et al.***
       **Case No. 09-50026 (REG)**

       **Proposed Scheduling Order Regarding Case Management Order**
       **re:  No-Strike, No Stay, Objection, And GUC Trust Asset Pleadings.**

Dear Judge Gerber:

    We write on behalf of Co-Lead and Designated Counsel for the Economic Loss Claims
asserted in MDL 2543, the People of California and the State of Arizona, and General Motors LLC
("**New GM**") with respect to the agreed proposed Scheduling Order Regarding Case Management
Order re:  No-Strike, No Stay, Objection, and GUC Trust Asset Pleadings, filed contemporaneously
herewith (the "**Proposed Scheduling Order**"), and specifically with respect to the time for New
GM to file and serve the Marked SACC, New GM Marked SACC Letter, Marked State Complaints
and New GM Marked State Complaint Letter (each as defined in the Proposed Scheduling Order)
and the amount of time Designated Counsel and the States shall have to file and serve their
responsive commentary and letters under the Proposed Scheduling Order.  The parties understand
Your Honor's comments at the Case Management Conference on August 31, 2015 to have the
marked pleadings and responses all done by September 30, 2015, but each of the parties believes that
more time is necessary given the other matters to be addressed under the Proposed Scheduling
Order, and the tasks involved in marking and commenting on these lengthy pleadings.  We note that
the pleadings for which additional time is sought do not affect the Bellwether Cases, which are the
most time-sensitive cases before Judge Furman.  As a consequence, the parties respectfully request
that Your Honor so order the following proposed amendment to the Proposed Scheduling Order:

Honorable Robert E. Gerber
September 2, 2015
BR Page 2

(i)     New GM's Marked SACC, the New GM Marked SACC Letter, New GM's Marked
        State Complaints and the New GM Marked State Complaint Letter shall be filed and
        served on or before Friday, September 25, 2015; and

(ii)    Designated Counsel's and the States' responsive commentary and letters under the
        Proposed Scheduling Order shall be filed and served on or before 14 days thereafter.

For the avoidance of doubt, all other terms of the Proposed Scheduling Order remain
unmodified.  We thank the Court in advance for its consideration.

Respectfully submitted,

_/s/ Steve W. Berman_                          _/s/ Elizabeth J. Cabraser_
Steve W. Berman (*pro hac vice*)              Elizabeth J. Cabraser
HAGENS BERMAN SOBOL SHAPIRO LLP               LIEFF CABRASER HEIMANN &
1918 Eighth Avenue, Suite 3300                BERNSTEIN, LLP
Seattle, Washington  98101                    275 Battery Street, 29th Floor
                                              San Francisco, California 94111
*Co-Lead Counsel in the MDL Proceeding*
*for the Economic Loss Plaintiffs and for the*   *Co-Lead Counsel in the MDL Proceeding*
*People of California and the State of Arizona*  *for the Economic Loss Plaintiffs*

_/s/ Edward S. Weisfelner_                     _/s/ Sander L. Esserman_
Edward S. Weisfelner                           Sander L. Esserman
BROWN RUDNICK LLP                              STUTZMAN, BROMBERG, ESSERMAN &
7 Times Square                                 PLIFKA, P.C.
New York, New York 10036                       2323 Bryan Street, Suite 2200
                                               Dallas, Texas 75201
*Designated Counsel for the*
*Economic Loss Plaintiffs*                     *Designated Counsel for the*
                                               *Economic Loss Plaintiffs*

_/s/ Arthur Steinberg_
Arthur Steinberg
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036

*Counsel for New GM*


cc:     Honorable Jesse M. Furman (via overnight mail)
        Scott Davidson
        John G. Simon
        Kevin M. Carnie, Jr.
        Richard C. Godfrey, P.C.
        Andrew B. Bloomer, P.C.
        Robert Hilliard

BR

Honorable Robert E. Gerber
September 2, 2015
Page 3

Jonathan Flaxer
Matt Williams
Lisa Rubin
Daniel Golden
Deborah Newman
William P. Weintraub
Greg Fox

Endorsed Order:

Approved.  To the extent dates in this letter are inconsistent with the Proposed Scheduling Order, the dates in this letter will trump them.


Dated:  New York, New York
       September 3, 2015

                                    *s/ Robert E. Gerber*
                                United States Bankruptcy Judge

LEDFORD LAW FIRM
ATTORNEY AT LAW
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK 74055
Telephone (918) 376-4610
Facsimile (918) 376-4993

Writer's Extension #: 303
Email: kris@ledford-lawfirm.com

September 15, 2015

**Via Email (sdavidson@kslaw.com) and Regular Mail**
Scott Davidson
King & Spalding
1185 Avenue of the Americas
New York, NY 10036-4003

Re:  *Pope v. General Motors, et. al*
Muskogee County Court Case No. CJ-2014-467

Dear Mr. Davidson:

I am writing in response to your correspondence dated September 1, 2015.

Following receipt of your correspondence, I emailed you requesting additional documentation. Thank you for emailing the requested documents. Having now reviewed your September 1st letter, the Decision, the Judgment, the Order authorizing Sale, and the Sale Agreement, I am writing to request an explanation of why you have concluded that the Pope lawsuit is affected by the Decision and Judgment.

As I read the Judgment, it relates to Ignition Switch Plaintiffs, Pre-Closing Accident Plaintiffs, and Non-Ignition Switch Plaintiffs. Ignition Switch Plaintiffs are *non-accident economic loss*[1] claims. Pre-Closing Accident Plaintiffs are claims based on accidents that occurred *prior* to the 363 sale closing which occurred in 2009. Non-Ignition Switch Plaintiffs are plaintiffs who have sued New GM for *economic losses* based on an alleged defect other than the Ignition Switch in an Old GM vehicle. On page 19 of the Decision, the Court further explains this category of claims as follows:

> The other category of Plaintiffs later coming into the picture ("Non-Ignition Switch Plaintiffs") brought actions asserting Economic Loss claims as to

---

[1]    In the Decision, the Court identifies "economic loss" claims as claims "for alleged reduction in the resale value of affected cards, other economic loss (such as unpaid time off from work when getting an ignition switch replaced), and inconvenience." *See* Decision at p. 18. The claims in the Pope case are wrongful death claims brought under Oklahoma law arising out of a fatality accident in which an airbag failed to deploy. Clearly, the wrongful death claims in Pope are not what the Court was contemplating as being within the scope of "economic loss" claims.

EXHIBIT
4
tabbies

Mr. Davidson
September 15, 2015
Page 2 of 2

GM branded cars that *did not have* Ignition Switch Defects, including cars made by New GM and Old GM alike. In fact, most of their cars did not have defects, and/or were not the subject of recalls, at all. But they contend, in substance, that the Ignition Switch Defect caused damage to "the brand" resulting in Economic Loss to them.

Please identify which of these categories of claims GM contends the Pope case falls within and explain the basis for GM's position. I do not want to get involved in bankruptcy proceedings without a clear understanding of whether and why my case would be implicated by the bankruptcy proceedings.

On page 2 of your September 1st letter, you make a statement that the Sale Agreement only provided for the assumption of compensatory damages and not punitive damages. Please identify the page number of the Sale Agreement on which you base that statement. In your letter, you reference the Sale Agreement definition of damages but the assumption provision (Section 2.3(a)(ix)) in the First Amended to the Sale Agreement does not reference damage (other than property damage) and instead references "all Liabilities to third parties for death . . ." Is GM now taking the position that "all" does not really mean "all"? Given this language, I do not understand the basis for the statement in your letter. In addition to identifying the references from the Sale Agreement on which you rely, please provide a more detailed explanation for your statement.

Subsequent to receipt of your September 1st letter, I received another letter from a member of your firm dated September 4th which purports to advise me of briefing deadlines in the bankruptcy matter. Upon my review of the September 4th letter, I did not locate any discussion of wrongful death products liability cases such as the Pope case. Please advise what portion of the scheduling order referenced in the September 4th letter which GM contends is applicable to the Pope lawsuit.

I look forward to hearing from you in the near future.

Sincerely,

KRIS TED LEDFORD

E:\Pope\Correspondence\Word\2015.9.15 KTL ltr to GM bankruptcy attorneys.docx

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial: 212-556-2158
asteinberg@kslaw.com

November 30, 2015

**VIA E-MAIL TRANSMISSION
AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

      Re:    **In re Motors Liquidation Company**, *et al.*
           **Case No. 09-50026 (REG)**

           **Letter Regarding Proposed Judgment for the
           Court's November 9, 2015** *Decision On Imputation,
           Punitive Damages, and Other No-Strike and
           No-Dismissal Pleadings Issues* **("November Decision")**[1]

Dear Judge Gerber:

      King & Spalding LLP is co-counsel with Kirkland & Ellis LLP for General Motors LLC
(**"New GM"**) in the above-referenced matter. We write to inform the Court that while the parties
have met and conferred and exchanged drafts of a proposed judgment memorializing the
conclusions contained in the November Decision, they have been unable to agree upon a
consensual proposed judgment. Accordingly, attached hereto as **Exhibit "A"** is the proposed
form of judgment prepared by New GM (**"New GM Proposed Judgment"**). Attached hereto as
**Exhibit "B"** is an annotated version of the New GM Proposed Judgment, which includes
citations to the November Decision that support individual paragraphs of the New GM Proposed
Judgment. Attached hereto as **Exhibit "C"** is a mark-up of Plaintiffs' Proposed Judgment
(**"Plaintiffs' Proposed Judgment"**) showing (i) for sake of completeness, those portions of the
November Decision that should have been included (but were not) in the Plaintiffs' Proposed
Judgment; and (ii) which provisions should be revised to make them consistent with the rulings

---

[1]    The November Decision is published at *In re Motors Liquidation Co.*, Case No. 09-50026, 2015 WL 6876114
    (Bankr. S.D.N.Y. November 9, 2015).

25631259v1
DMSLIBRARY01\21600\162081\27627824.v2-11/30/15



EXHIBIT
5

Honorable Robert E. Gerber
November 30, 2015
Page 2

in the November Decision.  To be clear, for the reasons set forth herein, New GM is not
advocating that the Court enter the Plaintiffs' Proposed Judgment.  Exhibit "C" is included to
illustrate that (a) Plaintiffs' lengthier document is, in some respects, less inclusive than the New
GM Proposed Judgment, and (b) the Plaintiffs' Proposed Judgment puts a gloss on the
November Decision that New GM believes was never intended by the Court, and may prove to
be confusing to other courts and plaintiffs reviewing it.

As support of the New GM Proposed Judgment, New GM states as follows:

1.    **Form of Judgment:**  The issues set forth in the Court's September 3, 2015
Scheduling Order and the Court's November Decision were meant to address the remaining
issues concerning New GM's Motions to Enforce the Sale Order.  In addition to MDL 2543
before Judge Furman, the November Decision clearly has application in numerous state and
federal courts around the country.  The November Decision is 71 pages long and contains many
rulings.  The New GM Proposed Judgment synthesizes the rulings by sections: first, the
Imputation Issue; then, the Punitive Damages Issue; and finally, specific matters relating to
complaints in general, as well as to particular lawsuits.  The form of the New GM Proposed
Judgment was designed to be user-friendly for other judges throughout the country so as to assist
them in applying the rulings of the November Decision.  It was also meant to be user-friendly to
other plaintiffs so as to provide them with clearly enunciated principles to follow.

The Plaintiffs' Proposed Judgment was drafted differently and, in large part, quotes from
selected sections of the November Decision.  It does not seek to organize the rulings, and the end
product makes an overly long and "choppy" presentation.  It contains many duplicate provisions
that often raise ambiguity rather than set forth clear principles, and that will not easily be applied
by judges overseeing other lawsuits or by plaintiffs suing New GM in other courts.  Moreover,
by selectively quoting from the November Decision, the Plaintiffs' Proposed Judgment
sometimes omits relevant portions that were set forth in other parts of the November Decision or
in the Court's other rulings.  This technique leads to an incomplete summary of the November
Decision that does not properly reflect the actual rulings made (and not made) by the Court in the
November Decision.

By way of two examples, *first*, the Court did not decide that Plaintiffs have viable
Independent Claims.  Rather, the Court ruled that the Plaintiffs' complaints made allegations that
were sufficiently pled to "pass through the bankruptcy gate" such that the presiding court should
decide whether Plaintiffs' complaints state a claim as a matter of non-bankruptcy law.  In certain
instances, the Plaintiffs' Proposed Judgment suggests that the Court made rulings as to these
alleged Independent Claims more extensive than it actually did.  *See, e.g.*, Plaintiffs' Proposed
Judgment, footnote 3 and paragraph 56.  *Second*, a significant portion of the Plaintiffs' Proposed
Judgment discusses the color-coding of certain marked complaints.  The color coding exercise
was meant solely for this Court's convenience as an efficient way to review similar issues in
various complaints, all of which were presented for this Court's review.  The extensive
referencing to such color-coding in Plaintiffs' Proposed Judgment will be meaningless to other
courts and litigants without undertaking the burdensome (and needless) exercise of obtaining the
underlying marked pleadings.  A simpler presentation, as contained in the New GM Proposed

09-50026-mg    Doc 13581-2    Filed 07/15/16    Entered 07/15/16 18:45:39    Main Document
Pg 4 of 576

Honorable Robert E. Gerber
November 30, 2015
Page 3

Judgment, is preferable in New GM's view to provide straightforward guidance for future review and application of the November Decision.

Below, New GM analyzes the New GM Proposed Judgment and why the provisions therein are appropriate and consistent with the November Decision.

2.    **Imputation Rulings:**  The paragraphs in the New GM Proposed Judgment with respect to imputation are taken from various section of the November Decision.  New GM synthesized the rulings on imputation, and put them in an easy-to-follow section so that judges and plaintiffs seeking to apply them can review a self-contained set of imputation principles.

Plaintiffs took the position during the meet and confer process that the Court did not explicitly rule that imputation must relate to a viable Independent Claim.  *See* New GM Proposed Judgment, ¶ 4.  But that is the underlying basis of the November Decision.  Imputation relates to knowledge—and knowledge, by itself, has no relevance unless it is an element of a viable claim under nonbankruptcy law.  In other words, knowledge is not a cause of action.  It must be a basis for a claim, and the claim must be a valid one under applicable nonbankruptcy law before the imputation issue needs to be considered by the other courts.  New GM's language is intended to eliminate any ambiguity or contrived argument that may later be raised in another court.

In a similar vein, imputation is not automatic, and there has to be a proper basis to impute knowledge under nonbankruptcy law.  Plaintiffs did not want to include the phrase "to the extent valid under nonbankruptcy law" in all circumstances where it should be inserted.  The omission of this clause suggests an inevitable imputation result, which is not what this Court ruled.

Footnote 1 contains an Errata point with respect to the inadvertent use of the word "Economic Loss Plaintiffs" on page 7 of the November Decision instead of "Ignition Switch Plaintiffs."

Footnote 3 defines Independent Claims as relating to Old GM Vehicles with the Ignition Switch Defect, and then clearly spells out that Independent Claims are a different concept than an Assumed Liability or a Retained Liability. This clarification is necessary so that other courts that have not participated in these proceedings understand these fundamental concepts.

3.    **Punitive Damages Rulings:**  During the meet and confer process, Plaintiffs took the position that assumed Product Liabilities could result in categories of damages other than compensatory damages, as long as they were not punitive damages. That is contrary to the November Decision.[2]  The New GM Proposed Judgment makes this point explicit in paragraph 7.

---

[2]    "New GM assumed liability for Product Liabilities claims, which (by definition) arose from accidents or incidents taking place *after* the Sale, and thereby became liable for *compensatory damages for any Product Liabilities* resulting from Old GM's action." November Decision, 2015 WL 6876114, at *8 n.30 (emphasis added).

09-50026-mg    Doc 13581-2    Filed 07/15/16    Entered 07/15/16 48:35:39    Main Document
Pg 5 of 576

Honorable Robert E. Gerber
November 30, 2015
Page 4

Under the Sale Agreement, June Judgment, and November Decision, there are only three
categories of claims that can be asserted with respect to Old GM Vehicles: (a) Assumed
Liabilities; (b) Retained Liabilities; and (c) Independent Claims.  The November Decision is
clear that there can be no punitive damages imposed against New GM for either Assumed
Liabilities (specifically, Product Liabilities) or, necessarily, Retained Liabilities.  Thus, the only
category of claim where punitive damages could be asserted against New GM for an Old GM
Vehicle is an "Independent Claim."  And, the only plaintiffs that can bring an Independent Claim
against New GM with respect to an Old GM Vehicle based on the Sale Order, as modified by the
June Judgment, are (i) owners of vehicles with the Ignition Switch Defect bringing economic
loss claims (*i.e.*, the Ignition Switch Plaintiffs) and (ii) Post-Closing Accident Plaintiffs who
owned a vehicle with the Ignition Switch Defect.[3]  The New GM Proposed Judgment makes this
point clear in paragraphs 7-9.

On page 30 of the November Decision, the Court ruled that in pursuing punitive damages
for New GM manufactured vehicles, plaintiffs can rely on anything appropriate under
nonbankruptcy law.  It also stated that "evidence of Old GM pre-Sale knowledge and conduct"
may be used "if otherwise appropriate."  New GM added the second sentence in paragraph 10 of
the New GM Proposed Judgment to make clear that it is *not* appropriate to claim that New GM is
*liable* for Old GM conduct, since that is explicitly prohibited by paragraph AA of the Sale
Order.[4]  The November Decision did not modify the Sale Order, and New GM believes it is
important to make this clarification so that the Court's statements are not taken out of context.
As noted, other courts and plaintiffs will look to the November Decision and this Court's
Judgment with respect to cases that pass through the bankruptcy gate.  It is critical that the
Court's statement not be misconstrued so that a successor liability claim (dressed up to look like
something else) is made against New GM based on plaintiffs assertion that they can rely on
*evidence* of Old GM conduct to make a punitive damage claim against New GM for a New GM
manufactured vehicle.

4.    **Claims in the Bellwether Complaints/MDL 2543:**    The November Decision
addressed New GM's argument that certain types of claims were not included within the
definition of Product Liabilities, and as examples listed claims "such as fraud, negligent
misrepresentation, duty to warn after the vehicle's sale, and violations of consumer protection
statutes at the time of sale."  November Decision, 2015 WL 6876114, at *19.  The only claims
that the Court stated might be assumed Product Liabilities were "alleged breaches of a duty to
warn."  *Id.* at *20.  By negative implication, all other claims should not be included within the

---

[3]    *See* Judgment, dated June 1, 2015 [Dkt. No. 13177] ("**June Judgment**"), at ¶ 4; *see also* November Decision,
2015 WL 6876114, at *21 n. 70 ("Ignition Switch Plaintiffs asserting Economic Loss Claims may assert them
[*i.e.*, Economic Loss Claims], to the extent they are Independent Claims, under the April 15 Decision and
Judgment.  Non–Ignition Switch Plaintiffs cannot." (emphasis added)).

[4]    The 363 Sale to New GM was "free and clear of liens, claims, encumbrances, and other interests (other than
Permitted Encumbrances), including rights or claims . . . based on any successor or transferee liability,
including, but not limited to . . . all claims arising in any way in connection with any agreements, acts, or
failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates, whether known or unknown,
contingent or otherwise, whether arising prior to or subsequent to the commencement of these chapter 11 cases,
and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to,
claims otherwise arising under doctrines of successor or transferee liability." Sale Order, at ¶ AA.

Honorable Robert E. Gerber
November 30, 2015
Page 5

definition of Product Liabilities, including any subset of fraud claims (such as, but not limited to, actual fraud, constructive fraud, fraudulent concealment, fraudulent misrepresentation, deceit, negligent misrepresentation, *etc.*). Paragraph 14 of the New GM Proposed Judgment expressly sets forth this ruling. Plaintiffs maintained during the meet and confer that, since this was not made explicit in the November Decision, they can raise this issue in another court, once it passes through the bankruptcy gate. New GM seeks to prevent that end-run from occurring.

   5.    <u>Claims Alleging New GM is Liable for their Failure to File Proofs of Claim</u>: Plaintiffs, in the meet and confer, took issue with paragraph 19 of the New GM Proposed Judgment, which provides, in part, that the *Adams* complaint should be dismissed.  Plaintiffs argue that the November Decision does not prevent the *Adams* plaintiffs from filing an amended complaint.  However, it is undisputed that the *Adams* complaint concerns claims based *only* on accidents that took place prior to the closing of the 363 Sale.  The November Decision, and previous decisions, orders and/or judgments of the Court, clearly provide that claims based on pre-363 Sale accidents are barred by the Sale Order, April Decision and June Judgment.  Any claims the *Adams* plaintiffs may have are barred, and the judgment should so state.

   6.    <u>Peller Complaints/Other Complaints</u>:   The portion of Plaintiffs' Proposed Judgment relating to the Peller complaints is not accurate or complete. The Other Complaints section is also not complete. The principles enunciated in these sections have application in many lawsuits throughout the country. It is important that the judgment clearly state these principles, and the New GM Proposed Judgment (unlike the Plaintiffs' Proposed Judgment) accomplishes this.

   7.    <u>Other Issues</u>:   With respect to the penultimate paragraph of the New GM Proposed Judgment, the Plaintiffs take issue with the Court retaining "exclusive jurisdiction, to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based." This exact language was used in the June Judgment, and it should also be included in this judgment.  Although it is difficult to foresee every circumstance in which this Court's intervention and guidance might be needed in the future, at a minimum, the November Decision stayed cases, and compliance with the Court's judgment should be heard by this Court to the extent necessary.

   The last paragraph in the Plaintiffs' Proposed Judgment regarding amendments to complaints needs to take into account that other courts (such as in MDL 2543) have stayed many of the cases independent of the ongoing bankruptcy proceedings, and those courts should control how their dockets are managed with regard to amendments of stayed actions. New GM added this provision (as modified) to the New GM Proposed Judgment.

   Based on the foregoing, New GM respectfully requests that the New GM Proposed Judgment be entered.

Honorable Robert E. Gerber
November 30, 2015
Page 6

Respectfully submitted,

*/s/ Arthur Steinberg*

Arthur Steinberg

AJS/sd
Encl.

cc:    Edward S. Weisfelner
      Howard Steel
      Sander L. Esserman
      Jonathan L. Flaxer
      S. Preston Ricardo
      Matthew J. Williams
      Lisa H. Rubin
      Keith Martorana
      Daniel Golden
      Deborah J. Newman
      William Weintraub
      Steve W. Berman
      Elizabeth J. Cabraser
      Robert C. Hilliard
      Gary Peller

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel:  (212) 556-2100
Fax:  (212) 556-2222
www.kslaw.com

Scott Davidson
Direct Dial:  212-556-2164
sdavidson@kslaw.com

May 16, 2016

**Via E-Mail Transmission**
Kris Ted Ledford, Esq.
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK 74055

      Re:    *Pope v. General Motors Co., et al.*
                **Case No.: CJ-2014-467**

Dear Counsel:

      By this letter, General Motors LLC ("**New GM**") demands that certain allegations, claims and damage requests made in the Petition filed in the above referenced lawsuit be withdrawn due to the requirements of federal bankruptcy law, for the reasons explained below.[1]

      Plaintiff is violating the Sale Order and Injunction[2] entered by the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**"), as well as certain recent decisions and judgments entered by the Bankruptcy Court.[3]  The following allegations, claims and damage requests are legally barred:

- Allegations that New GM is the successor of Old GM (no matter how phrased) (*see* Petition, ¶ 2);

---

[1]    You were previously sent a letter in connection with this Lawsuit in September 2015 ("**2015 Letter**"), highlighting issues with the Petition and explaining that the Petition needed to be amended.  At that time, the Bankruptcy Court had not yet issued the November Decision and December Judgment (each as defined below).  These rulings mandate the amendment of the Petition, as explained herein.

[2]    A copy of the Sale Order and Injunction (with the Sale Agreement attached thereto) is annexed hereto as **Exhibit "A."**

[3]    *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y 2015) ("**April Decision**"); Judgment entered by the Bankruptcy Court on June 1, 2015 ("**June Judgment**"); *In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015) ("**November Decision**"); and Judgment entered by the Bankruptcy Court on December 4, 2015 ("**December Judgment**").  Copies of the June Judgment and December Judgment are annexed hereto as **Exhibit "B"** and **Exhibit "C,"** respectively.  Copies of the two published decisions of the Bankruptcy Court can be provided upon request.

EXHIBIT
6

Kris Ted Ledford, Esq.
May 16, 2016
Page 2

- Allegations that merely refer to "GM" and do not distinguish between Old GM and New GM (*see* Petition, ¶¶ 17-26);

- Allegations that New GM designed, manufactured, tested, marketed and/or distributed the subject vehicle, a 2001 Cadillac DeVille ("**Subject Vehicle**"), or performed other conduct relating to the Subject Vehicle before the closing of the Sale from Old GM to New GM (*see* Petition, ¶ 18);

- Claims based on (i) an alleged failure to identify or remedy a defect, and (ii) alleged violations of a consumer protection statute (*see* Petition, ¶¶ 19-26); and

- All requests for punitive damages as against New GM.

## Applicable Bankruptcy Court Rulings

The Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009 (as amended) ("**Sale Agreement**"), which was approved by an Order, dated July 5, 2009 ("**Sale Order and Injunction**") of the Bankruptcy Court, provides that New GM assumed only three categories of liabilities for vehicles sold by Old GM: (a) post-sale accidents or incidents involving Old GM vehicles causing personal injury, loss of life or property damage; (b) repairs provided for under the "Glove Box Warranty"—a specific written warranty, of limited duration, that only covers repairs and replacement of parts and not monetary damages; and (c) Lemon Law claims (as defined in the Sale Agreement) essentially tied to the failure to honor the Glove Box Warranty. All other liabilities relating to vehicles sold by Old GM were "Retained Liabilities" of Old GM. *See* Sale Agreement § 2.3(b). To the extent the claims asserted in the Petition are based on a successor liability theory or otherwise constitute Retained Liabilities, they were not assumed by New GM and, accordingly, New GM cannot be liable to Plaintiff for such claims. *See* Sale Order and Injunction, ¶¶ 7, 46; Sale Agreement, §§ 2.3(a), 2.3(b).

Paragraph 14 of the December Judgment provides as follows:

Plaintiffs of two types—1) plaintiffs whose claims arise in connection with vehicles without the Ignition Switch Defect, and 2) Pre-Closing Accident Plaintiffs—are not entitled to assert Independent Claims against New GM with respect to vehicles manufactured and first sold by Old GM (an "Old GM Vehicle"). To the extent such Plaintiffs have attempted to assert an Independent Claim against New GM in a pre-existing lawsuit with respect to an Old GM Vehicle, such claims are proscribed by the Sale Order, April Decision and the Judgment dated June 1, 2015[.]

The Plaintiff in the Lawsuit does not have a claim based on the Ignition Switch Defect and therefore is prohibited from asserting an Independent Claim[4] against New GM.

---

[4]    The term "Independent Claim" was defined by the Bankruptcy Court in paragraph 4 of the June Judgment as "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct."

Kris Ted Ledford, Esq.
May 16, 2016
Page 3

The December Judgment also described the types of allegations that cannot be made in complaints asserting claims against New GM based on Old GM vehicles. Specifically, Plaintiff is prohibited from making allegations: (i) that New GM is the successor of Old GM (no matter how phrased) (*see* December Judgment, ¶ 16); (ii) that do not distinguish between Old GM and New GM (*see id.* ¶ 17); or (iii) that allege or suggest that New GM manufactured or designed an Old GM vehicle, or performed other conduct relating to an Old GM vehicle before the entry of the Sale Order and Injunction (*i.e.*, July 10, 2009) (*see id.* ¶ 18).

Moreover, the December Judgment determines that the Sale Agreement does not provide for the assumption by New GM of punitive damages relating to Product Liabilities. Parties such as Plaintiff can only seek compensatory damages. *See* December Judgment, ¶ 6 ("New GM did not contractually assume liability for punitive damages from Old GM.").

### The Barred Allegations, Claims and Requests for Damages in the Petition

The Bankruptcy Court's rulings apply to Plaintiff's lawsuit. As set forth on pages 1 and 2 above, the Petition contains allegations that are prohibited by the December Judgment, requiring that the Complaint be amended.

Moreover, the Sale Order and Injunction enjoins parties from bringing actions against New GM for Retained Liabilities of Old GM. *Id.*, ¶ 8. Under the December Judgment, Non-Ignition Switch Plaintiffs (like Plaintiff) are barred from asserting any claims (other than Assumed Liabilities) against New GM. *See* December Judgment, ¶ 14. The December Judgment specifically provides that New GM did not assume various claims and/or causes of action when it agreed to assume Product Liabilities. The non-assumed liabilities include claims based on an alleged failure to identify or remedy a defect, and alleged violations of a consumer protection statute fraud. *See* December Judgment, ¶¶ 19, 31. Proscribed causes of action contained in the Petition are set forth on page 2 above.

In addition, because New GM did not assume punitive damages in connection with its assumption of Product Liabilities, and Plaintiff is a Non-Ignition Switch Plaintiff, the request for punitive damages against New GM violates the Sale Order and Injunction, and the Bankruptcy Court's rulings. All requests for punitive damages as against New GM must be stricken from the Petition.

### Conclusion

The December Judgment stays the Lawsuit until all violations of the Sale Order and Injunction, and the Bankruptcy Court's other rulings, are sufficiently addressed. *See, e.g.*, December Judgment, ¶¶ 16, 17, 18. Please let us know by May 23, 2016 whether you will take the requested action and comply with the Bankruptcy Court's rulings.

New GM reserves all of its rights regarding any continuing violations of the Bankruptcy Court's rulings, including, but not limited to seeking all available relief if it is determined that there is a willful violation of the Sale Order and Injunction and the Bankruptcy Court's other rulings, particularly where Plaintiff previously received the 2015 Letter, which put Plaintiff on notice of applicable Bankruptcy Court rulings and the need to amend the Petition. *See FirstBank Puerto Rico*

Kris Ted Ledford, Esq.
May 16, 2016
Page 4

*v. Barclays Capital Inc. (In re Lehman Brothers Holdings Inc.)*; Summary Order, Case No. 15-149-br. (2d Cir. March 29, 2016).

      If you have any questions, please call me.

                                Very truly yours,

                                */s/ Scott I. Davidson*

                                Scott I. Davidson

SD/hs
Encl.

cc:    Mary Quinn Cooper, Esq.

LEDFORD LAW FIRM
ATTORNEY AT LAW
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK  74055
Telephone (918) 376-4610
Facsimile (918) 376-4993

Writer's Extension #:  303
Email:  kris@ledford-lawfirm.com

June 17, 2016

**Via Email (sdavidson@kslaw.com) Only**
Scott Davidson
King & Spalding
1185 Avenue of the Americas
New York, NY  10036-4003

Re:    *Pope v. General Motors, et. al*
        Muskogee County Court Case No. CJ-2014-467

Dear Mr. Davidson:

Please accept my apologies for the delay in responding to your May 16, 2016 letter.  I have been tied up on several matters with pressing deadlines and just had a chance to study your letter.  I am writing this letter in a good faith effort to resolve these issues amicably and efficiently.

You identified five (5) "allegations, claims and damage requests" which you contend are legally barred by the Bankruptcy Court's rulings.  Each of these will be addressed in the order you presented them.

1.    Allegations that New GM is the successor of Old GM (no matter how phrased) (*see* Petition, ¶ 2)

While I did not allege that New GM was the successor to Old GM, I am agreeable to making this issue clear by amending Paragraph 2 as shown in the attached redlined Amended Petition.  I believe this slight modification should address any concerns you have raised.

2.    Allegations that merely refer to "GM" and do not distinguish between Old GM and New GM (*see* Petition, ¶¶ 17-26)

In the Petition, I did not blur the lines as you suggest.  The named Defendant in the Pope case is General Motors Company a/k/a/ General Motors LLC.  Immediately after identifying this defendant, I noted that it would be referred to throughout the remainder of the Petition as GM.  While I subsequently mentioned General Motors Corporation in

EXHIBIT
7

Mr. Davidson
June 17, 2016
Page 2 of 3

Paragraph 2 of the Petition, I did not use any short-form reference for this entity and always used the full name of this entity. The remainder of the Petition only related to GM which was clearly identified as General Motors Company a/k/a/ General Motors LLC. In the enclosed Amended Petition, I have added language concerning General Motors Corporation in Paragraph 19 and again utilized the full name for this entity. Unlike other plaintiffs' attorneys, I have not tried to combine Old GM and New GM. Accordingly, I fail to understand why you believe any changes to the Petition are required for this issue.

3.  Allegations that New GM designed, manufactured, tested, marketed and/or distributed the subject vehicle, a 2001 Cadillac DeVille ("Subject Vehicle"), or performed other conduct relating to the Subject Vehicle before the closing of the Sale form Old GM to New GM (*see* Petition, ¶ 18)

Upon review of Paragraph 18 of the Petition, I agree that "GM" needs to be removed from that allegation since "GM" was not involved in that conduct. The enclosed redlined Amended Petition makes this change.

4.  Claims based on (i) an alleged failure to identify or remedy a defect, and (ii) alleged violations of a consumer protection statute (*see* Petition, ¶¶ 19-26)

These claims are proper under the Bankruptcy Court's rulings. As the Bankruptcy Court repeatedly stated, conduct by New GM is not part of the bankruptcy, is not an Assumed Liability, and instead is simply conduct by New GM for which non-bankruptcy courts will decide liability. *See In re: Motors Liquidation Company*, 541 B.R. 104, 129 (S.D.N.Y. Bank. 2015). In the December 4, 2015 Judgment, the Bankruptcy Court addresses this type of claim in Paragraphs 19 and 20 of the Judgment by ruling, "The Court expresses no view whether such claims may, however, constitute viable Independent Claims against New GM if they are based on New GM knowledge or conduct." *See* Judgment at pp. 6-7. My allegations in this regard relate solely to New GM. Given these rulings, I fail to understand why you contend that the Bankruptcy Court has somehow required these claims to be dismissed.

5.  All requests for punitive damages as against New GM

The claim that the Bankruptcy Court rulings require all requests for punitive damages against New GM to be stricken is simply not true. While I will agree that the Bankruptcy Court ruled that punitive damages were not part of the Assumed Liabilities, the Bankruptcy Court clearly identified two other ways that plaintiffs in actions based on post-closing accidents could recover punitive damages from New GM. In the November 9, 2015 ruling, the Bankruptcy Court recognized that such plaintiffs could recover punitive damages based on the following two pathways: (1) based on Old GM knowledge or conduct in instances where information about such Old GM conduct was "inherited" by New GM and (2) based on information developed solely by New GM post-sale. *See In re: Motors Liquidation Company*, 541 B.R. at 117-122 (S.D.N.Y. Bank. 2015). The Bankruptcy Court explained that under this first scenario "New GM might have acquired relevant knowledge when former Old GM employees came over to New GM or New GM took custody of what

Mr. Davidson
June 17, 2016
Page 3 of 3

previously were Old GM records." *Id.* at 122. The Bankruptcy Court held, "Reliance on
that, for punitive damages purposes, is permissible." *Id.* The Bankruptcy Court also ruled
that "[i]nformation obtained by New GM after the Sale . . . may be used for punitive
damages purposes as well." *Id.* I fully intend to abide by the Bankruptcy Court's rulings;
however, your claim that all punitive damage claims must be dismissed is simply not
correct. To make clear my intent to comply with the Bankruptcy Court's rulings, I have
made changes to Paragraphs 18 and 19 which are reflected in the redlined Amended
Petition enclosed herewith.

On page 2 of your letter, you quote from Paragraph 14 of the December Judgment and
attempt to utilize that paragraph as a basis to argue that it prohibits the Pope plaintiffs from
asserting an Independent Claim. That is not the effect of Paragraph 14 at all. Your
argument takes this paragraph completely out of context and ignores the simple fact that
the products liability claims reviewed by the Bankruptcy Court happen to have been
focused on ignition switch defects. The Bankruptcy Court clearly recognized that <u>all</u>
products liability claims concerning vehicles manufactured by Old GM which were
involved in post-sale accidents are Assumed Liabilities. The products liability claims were
not limited to ignition switch defects. The Bankruptcy Court also clearly explained that
Independent Claims could be brought against New GM based on its own knowledge and
conduct. *See* December Judgment at ¶ 19.

Upon review of the redlined Amended Petition, please advise if you agree these changes
are sufficient to show compliance with the Bankruptcy Court's rulings. I look forward to
hearing from you in the near future.

Sincerely,

KRIS TED LEDFORD

Enclosure

cc: Brita Cantrell (w/enclosure) (via email only)

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Scott Davidson
Direct Dial: 212-556-2164
sdavidson@kslaw.com

June 22, 2016

**VIA E-MAIL TRANSMISSION**
Kris Ted Ledford, Esq.
LEDFORD LAW FIRM
Heritage Professional Plaza
425 East 22nd Street, Suite 101
Owasso, OK 74055

Re:   *Pope v. General Motors LLC, et al.*
      **Case No.: CJ-2014-467**

Dear Mr. Ledford:

This letter is in response to your letter, dated June 17, 2016 ("**June 17 Letter**"), as well as the draft amended petition ("**Amended Petition**") you provided with the June 17 Letter and our telephone conversation on Monday, June 20, 2016. As we discussed during our telephone conversation, it is New GM's position that (i) the plaintiffs in the Lawsuit cannot assert Independent Claims[1] against New GM, and the claim based on an alleged failure to identify a defect and the claim based on a violation of the Oklahoma Consumer Protection Act (neither of which are Assumed Liabilities) are therefore barred, and (ii) New GM cannot be sued for punitive damages in this Lawsuit.[2]

## A.   **Plaintiffs Are Non-Ignition Switch Plaintiffs**

As stated in my May 16 Letter, the plaintiffs in this Lawsuit are not "Ignition Switch Plaintiffs." The Judgment entered by the Bankruptcy Court on June 1, 2015 ("**June Judgment**") defines the term Ignition Switch Plaintiffs as those plaintiffs who assert claims against New GM based on the first three ignition switch recalls issued in February/March 2014. *See* June Judgment, at 1 n.1. This Lawsuit relates to a 2001 Cadillac DeVille (which is not subject to the applicable recalls), and an alleged issue with the vehicle other than the ignition switch.

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in my May 16, 2016 letter ("**May 16 Letter**") to you regarding this Lawsuit.

[2]   The corrections that you propose in your June 17 Letter with respect to certain allegations are appropriate. However, as set forth in my May 16 Letter, and as further explained herein, the claims set forth in paragraphs 19 through 26 of the Amended Petition violate the Bankruptcy Court's rulings and should be stricken.

EXHIBIT
8

Kris Ted Ledford, Esq.
June 22, 2016
Page 2

Only Ignition Switch Plaintiffs can assert "Independent Claims" against New GM. The Bankruptcy Court defined the term "Independent Claims" as "claims or causes of action *asserted by Ignition Switch Plaintiffs* against New GM (whether or not involving Old GM Vehicles) that are based solely on New GM's own, independent, post-Closing acts or conduct." June Judgment, ¶ 4 (emphasis added). The December Judgment also makes clear that Non-Ignition Switch Plaintiffs— like the plaintiffs in this Lawsuit—cannot assert Independent Claims against New GM:

> Plaintiffs of two types—1) *plaintiffs whose claims arise in connection with vehicles without the Ignition Switch Defect*, and 2) Pre-Closing Accident Plaintiffs—are not entitled to assert Independent Claims against New GM with respect to vehicles manufactured and first sold by Old GM (an "**Old GM Vehicle**"). *To the extent such Plaintiffs have attempted to assert an Independent Claim against New GM in a pre-existing lawsuit with respect to an Old GM Vehicle, such claims are proscribed by the Sale Order, April Decision and the Judgment dated June 1, 2015*[.]

December Judgment, ¶ 14.

Accordingly, since the plaintiffs in this Lawsuit do not have claims based on the Ignition Switch Defect, they are prohibited from asserting Independent Claims against New GM.

**B.    Plaintiff Cannot Assert Claims Based on (i) an
Alleged Failure to Identify a Defect or (ii) a
Violation of the Oklahoma Consumer Protection Act**

The alleged failure to identify a defect claim and the claim based on a violation of the Oklahoma Consumer Protection Act are not Assumed Liabilities, and cannot be asserted against New GM. Specifically, paragraph 31 of the December Judgment provides:

> Obligations, if any, that New GM had to identify or respond to defects in previously sold Old GM Vehicles *were not Assumed Liabilities*, and New GM is not responsible for any failures of Old GM to do so. But whether New GM had an independent duty to identify or respond to defects in previously sold Old GM Vehicles that New GM did not manufacture is a question of nonbankruptcy law that may be decided by the nonbankruptcy court hearing that action. [Emphasis added]

In addition, paragraph 19 of the December Judgment provides:

> Claims with respect to Old GM Vehicles that are based on . . . *consumer protection statutes are not included within the definition of Product Liabilities, and therefore do not constitute Assumed Liabilities*, because (a) they are not for "death" or "personal injury", and their nexus to any death or personal injury that might thereafter follow is too tangential, and (b) they are not "caused by motor vehicles." The Court expresses no view whether such claims may, however, constitute viable Independent Claims against New GM if they are based on New GM knowledge or conduct. [Emphasis added]

Kris Ted Ledford, Esq.
June 22, 2016
Page 3

Based on the above-quoted paragraphs from the December Judgment, it is clear that the failure to identify a defect claim and the claim based on a violation of the Oklahoma Consumer Protection Act are not Assumed Liabilities. While such claims could be asserted as Independent Claims against New GM, as set forth above, the plaintiffs in the Lawsuit are not Ignition Switch Plaintiffs and, accordingly, they cannot assert Independent Claims against New GM. Such claims should be stricken from the Amended Petition.

**C.**     **Plaintiffs Cannot Seek Punitive Damages Against New GM**

In the Amended Petition (and the original petition), plaintiffs seek punitive damages against New GM. Your June 17 Letter acknowledges that the plaintiffs cannot seek punitive damages against New GM based on Assumed Liabilities. Nonetheless, you assert in the June 17 Letter that plaintiffs can seek punitive damages "(1) based on Old GM knowledge or conduct in instances where information about such Old GM conduct was 'inherited' by New GM and (2) based on information developed solely by New GM post-sale." While you reference the Bankruptcy Court's November Decision, the December Judgment, which was the product of competing letter briefs submitted by the parties to the Bankruptcy Court, clearly states as follows:

> A claim for punitive damages with respect to a post-Sale accident involving *vehicles manufactured by Old GM with the Ignition Switch Defect may be asserted against New GM to the extent—but only to the extent—it relates to an otherwise viable Independent Claim* and is based solely on New GM conduct or knowledge, including (a) knowledge that can be imputed to New GM under the principles set forth in the Decision and this Judgment (and under nonbankruptcy law), and (b) information obtained by New GM after the 363 Sale.

December Judgment, ¶ 7 (emphasis added). As demonstrated above, the accident in question did not involve "a vehicle manufactured by Old GM with the Ignition Switch Defect," and plaintiffs, as Non-Ignition Switch Plaintiffs, cannot assert Independent Claims against New GM. Accordingly, any request for punitive damages contained in the Amended Petition necessarily fails, and should be stricken.

**D.**     **Conclusion**

Please let us know as soon as possible whether plaintiffs will take the required action and fully comply with the Bankruptcy Court's rulings. If not, as discussed on our call, New GM will seek all available relief from the Bankruptcy Court.

Very truly yours,

*/s/ Scott I. Davidson*

Scott I. Davidson

SD/hs

cc:    Mary Quinn Cooper, Esq.