**Hearing Date and Time: April 20, 2017 at 9:00 a.m. (Eastern Time)**
**Reply Deadline: April 7, 2017**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
In re                                    :        Chapter 11
                                         :
MOTORS LIQUIDATION COMPANY, *et al.*,    :        Case No.: 09-50026 (MG)
         f/k/a General Motors Corp., *et al.*   :
                                         :
                        Debtors.         :        (Jointly Administered)
-------------------------------------------------------------x

### OPENING BRIEF BY GENERAL MOTORS LLC ON THE 2016 THRESHOLD ISSUES SET FORTH IN THE ORDER TO SHOW CAUSE, DATED DECEMBER 13, 2016 (EXCEPT FOR THE LATE PROOF OF CLAIM ISSUE)

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL AND LEGAL BACKGROUND ........................................................................9

A.     The Sale Order and Sale Agreement..........................................................................9

B.     The 2014 Ignition Switch Recalls and the  Three Motions to Enforce Filed by
       New GM.....................................................................................................................10

C.     The April 2015 Decision/June 2015 Judgment.......................................................12

D.     The Appeal of the April 2015 Decision/June 2015 Judgment, and the Opinion ..............13

E.     Supplemental Proceedings After the April 2015 Decision/June 2015 Judgment..............16

F.     The November 2015 Decision/December 2015 Judgment .................................................19

G.     The Proceedings Subsequent to the December 2015 Judgment .......................................21

H.     New GM's Petition for Writ of *Certiorari* to the United States Supreme Court
       with Respect to the Opinion.....................................................................................22

2016 THRESHOLD ISSUES ...........................................................................................22

A.     First Threshold Issue:................................................................................................22

       1.     The Genesis of the First Threshold Issue....................................................22

       2.     The Definitions of Ignition Switch Plaintiffs, Non-Ignition Switch
              Plaintiffs and Related Terms Have Been Used Consistently By the Parties
              and the Courts Throughout These Proceedings ....................................................24

              a.     Ignition Switch and Subject Vehicles ........................................................25

              b.     Ignition Switch Defect ...............................................................................26

              c.     Ignition Switch Plaintiffs ...........................................................................27

              d.     Non-Ignition Switch Plaintiffs...................................................................30

              e.     Pre-Closing Accident Plaintiff and Post-Closing Accident
                     Plaintiffs......................................................................................................30

B.     Second Threshold Issue: ...........................................................................................33

       1.     Non-Ignition Switch Plaintiffs' Independent Claims Against New GM
              Were Rejected by the Bankruptcy Court, and They Failed to Demonstrate
              a Due Process Violation Relating to the 363 Sale Notice.....................................33

i

a.    *Res Judicata* Bars Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs From Collaterally Attacking the November 2015 Decision/December 2015 Judgment.........33

b.    The November 2015 Decision/December 2015 Judgment Should Also Be Binding On Owners of Non-Subject Vehicles That Did Not Receive the September 2015 Scheduling Order Based on the Law of the Case Doctrine .........................................................35

2.    The November 2015 Decision/December 2015 Judgment is binding on all Non-Ignition Switch Plaintiffs .................................................................37

a.    Only the Peller Plaintiffs Appealed the April 2015 Decision/June 2015 Judgment; Thus, All Other Non-Ignition Switch Plaintiffs Are Not Entitled To Rely On The Second Circuit's Ruling .....................37

b.    Non-Ignition Switch Plaintiffs Have Received The Opportunity Referred To In The Opinion To Establish A Due Process Violation Relating To The 363 Sale Notice; They Failed To Do So And The November 2015 Decision/December 2015 Judgment, Which Was Never Appealed For That Ruling, Is Now Binding On Them..................39

3.    Many Non-Ignition Switch Plaintiffs are Improperly Asserting Independent Claims that are Really Disguised Retained Liabilities.....................41

4.    The Bankruptcy Court Should Continue to Enforce Its Rulings as a Gatekeeper Against Plaintiffs Who are Violating Them .......................................47

C.    Third Threshold Issue: ......................................................................................48

1.    The Second Circuit's Opinion Applies Only To "Used Car Purchasers" Of Subject Vehicles with the Ignition Switch Defect; Other Used Car Owners of Old GM Vehicles Remain Bound By the Sale Order .........................................48

2.    Used Car Owners Do Not Acquire Claims Any Greater Than Those Held By the Original Owners Who Sold Them Their Vehicles .....................................49

D.    Fourth Threshold Issue: ....................................................................................52

1.    Post-Closing Accident Plaintiffs Did Not Appeal the November 2015 Decision/December 2015 Judgment and, Therefore, As a Matter of *Res Judicata*, Are Bound By the Ruling Made on Punitive Damages ........................52

2.    Even if *Res Judicata* Did Not Apply, the Post-Closing Accident Plaintiffs Are Barred from Seeking Punitive Damages Against New GM on a Successor Liability Theory ......................................................................53

a.    Post-Closing Accident Plaintiffs May Not Selectively Enforce the Sale Agreement ...........................................................................54

b.    Because Post-Closing Accident Plaintiffs Could Not Recover
Punitive Damages From Old GM, They May Not Recover Them
From New GM Pursuant to a Successor Liability Theory.........................55

CONCLUSION.........................................................................................................................58

30074945

## TABLE OF AUTHORITIES

*Ackermann v. U.S.*
  340 U.S. 193 (1950)............................................................................................37

*AGV Prods., Inc. v. Metro-Goldwyn-Mayer, Inc.*,
  115 F. Supp. 2d 378 (S.D.N.Y. 2000), *judgment aff'd*, 37 Fed. Appx. 555 (2d
  Cir. 2002) ........................................................................................................55

*Am. Hotel Intern. Group, Inc. v. OneBeacon Ins. Co.*,
  611 F.Supp.2d 373 (S.D.N.Y. 2009)....................................................................48

*Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Am. Boat Co.*,
  No. 11 Civ. 6804, 2012 WL 527209 (S.D.N.Y. Feb. 17, 2012) ............................54

*In re Athanasios III, LLC*,
  No. 2:11CV994 DAK, 2013 WL 786445 (D. Utah Mar. 1, 2013) .........................41

*In re Best Payphones, Inc.*,
  523 B.R. 54 (Bankr. S.D.N.Y. 2015)....................................................................56

*Bhd. of Maint. of Way Emps. v. St. Johnsbury & Lamoille Cty. R.R./M.P.S.
  Assocs., Inc.*,
  806 F.2d 14 (2d Cir. 1986)..................................................................................37

*Burton v. Chrysler Group, LLC (In re Old Carco)*,
  492 B.R. 392 (Bankr. S.D.N.Y. 2013)............................................................42, 51

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  600 F.3d 190 (2d Cir. 2010)................................................................................33

*Matter of Edwards*,
  962 F.2d 641 (7th Cir. 1992) ..............................................................................40

*In re Ephedra Prods Liab. Litig.*,
  329 B.R. 1 (S.D.N.Y. 2005).................................................................................56

*Matter of Fabric Tree*,
  426 F. Supp. 872 (S.D.N.Y. 1977).......................................................................40

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394 (1981)...........................................................................................37

*In re Ferrante*,
  195 B.R. 990 (Bankr. N.D.N.Y. 1996) .................................................................40

*In re Gen. Motors Corp.*,
  407 B.R. 463 (Bankr. S.D.N.Y. 2009) ..............................................................9, 56

iv

*Giannone v. York Tape & Label, Inc.*,
  548 F.3d 191 (2d Cir. 2008) (*per curiam*) ............................................................................34

*In re Hawker Beechcraft, Inc.*,
  No.: 12–11873 (SMB), (Bankr. S.D.N.Y. June 13, 2013).....................................................55

*Hegger v. Green*,
  646 F.2d 20 (2d Cir. 1981)....................................................................................................37

*Holland v. FCA US LLC*,
  Case No. 1:15-cv-121, 2015 WL 7196197 (N.D. Ohio Nov. 16, 2015), *aff'd*,
  656 Fed. Appx. 232 (6th Cir. 2016).....................................................................................42

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
  206 F.3d 411 (4th Cir. 2000) ................................................................................................54

*In re Integra Realty Res., Inc.*
  354 F.3d 1246 (10th Cir 2004) .............................................................................................36

*In re J.A, Jones, Inc.*,
  416 B.R. 202 (Bankr. W.D.N.C. 2009)..................................................................................36

*In re Johns-Manville Corp.*
  600 F.3d 135 (2d Cir. 2010)...........................................................................................38, 40

*Kane v. Magna Mixer Co.*,
  71 F.3d 555 (6th Cir. 1995) ..................................................................................................53

*In re KB Toys, Inc.*,
  736 F.3d 247 (3rd Cir. 2013) ................................................................................................49

*LaRoss Partners, LLC v. Contact 911 Inc.*,
  874 F.Supp.2d 147 (E.D.N.Y. 2012) ....................................................................................54

*In re Metiom, Inc.*,
  301 B.R. 634 (Bankr. S.D.N.Y. 2003)...................................................................................50

*In re MF Glob. Holdings Ltd., et al.*,
  466 B.R. 239 (Bankr. S.D.N.Y. 2012)...................................................................................55

*In re Motors Liquidation Co.*,
  447 B.R. 142 (Bankr. S.D.N.Y. 2011)...................................................................................23

*In re Motors Liquidation Co.*,
  529 B.R. 510 (Bankr. S.D.N.Y. 2015).................................................7, 8, 9, 26, 42, 49, 50

*In re Motors Liquidation Co.*,
  531 B.R. 354 (Bankr. S.D.N.Y. 2015)...........................................................................13, 53

v

*In re Motors Liquidation Co.*,
    541 B.R. 104 (Bankr. S.D.N.Y. 2015) ............................................................20, 33, 40, 41, 53

*In re Motors Liquidation Co.*,
    829 F.3d 135 (2d Cir. 2016) ..............................1, 4, 5, 6, 14, 15, 16, 43, 47, 48, 53

*In re Motors Liquidation Co.*
    552 B.R. 253 (Bankr. S.D.N.Y. 2016) ...........................................................................35

*In re Motors Liquidation Co.* ('*MLC I*'),
    514 B.R. 377 (Bankr. S.D.N.Y. 2014) (Gerber, J.) ....................................................14

*In re Motors Liquidation Co.*,
    No. 09-50026, 2012 WL 10864205 (Bankr. S.D.N.Y. Aug. 6, 2012) ....................57

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.,*
    *et al. (In re Motors Liquidation Co.)*, 552 B.R. 253 (Bankr. S.D.N.Y. 2016) ..................35, 36

*In re N.Y. Skyline, Inc.*,
    432 B.R. 66 (Bankr. S.D.N.Y. 2010) ...........................................................................55

*Norton v Sam's Club*,
    145 F.3d 114 (2d Cir 1998) ...........................................................................................38

*In re Optical Techs.*,
    425 F.3d 1294 (11th Cir. 2005) ....................................................................................40

*Robbins v. Physicians for Women's Health, LLC*,
    90 A.3d 925 (Conn. 2014) .......................................................................................55, 57

*Russell v. SunAmerica Sec., Inc.*,
    Civ. A. No. E90–0084(L), 1991 WL 352563 (S.D. Miss. 1991) ...........................55

*In re Taylor*,
    655 F.3d 274 (3d Cir. 2011) ..........................................................................................37

*Tital Real Estate Ventures, LLC v. MJCC Realty L.P. (In re Flanagan)*,
    415 B.R. 29 (D. Conn. 2009) .........................................................................................50

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009) ................................................................................................34, 53

**Statutes**

11 U.S.C. § 365 .....................................................................................................................54

11 U.S.C. § 502(d) ...............................................................................................................50

11 U.S.C. § 726 .....................................................................................................................56

vi

11 U.S.C. § 726(a) ..................................................................................................56

11 U.S.C. § 726(a)(4)..............................................................................................56

11 U.S.C. § 1129(a)(7)............................................................................................56

30074945

## INTRODUCTION

General Motors LLC ("**New GM**") submits this brief to address the 2016 Threshold Issues.[1]  Resolution of these issues will provide important guidance as to whether and how various claims against New GM may proceed in federal and state courts in light of the July 2016 Second Circuit Opinion ("**Opinion**").  The parties have fundamental disagreements regarding the effect of that Opinion on earlier Bankruptcy Court rulings, including the 2009 Sale Order, the April 2015 Decision/June 2015 Judgment, and the November 2015 Decision/December 2015 Judgment (collectively, the "**Key Court Rulings**").

The four Threshold Issues are, in summary:

(1)       who is an "Ignition Switch Plaintiff" and who is a "Non-Ignition Switch Plaintiff" as those terms are used in the Key Court Rulings;

(2)       which categories of plaintiffs may bring Independent Claims[2] against New GM, and whether the Bankruptcy Court should have an ongoing role in ensuring that plaintiffs not violate the Sale Order;

(3)       what rights do Used Car Purchasers have against New GM; and

(4)       can Post-Closing Accident Plaintiffs seek punitive damages against New GM based on successor liability.

A summary of New GM's positions on these Issues is as follows:[3]

---

[1]    Terms used herein and not otherwise defined shall have the meanings ascribed to them in the Court's *Order to Show Cause Regarding Certain Issues Arising From Lawsuits With Claims Asserted Against General Motors LLC ("New GM") That Involve Vehicles Manufactured by General Motors Corporation ("Old GM")* [ECF No. 13802] ("**December 2016 Show Cause Order**").  A copy of the December 2016 Show Cause Order, and the Glossary attached thereto, is attached hereto as **Exhibit "A"** for the Court's convenience.

[2]    The Opinion defined "Independent Claims" as those "sorts of claims [that] are based on New GM's *post*-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct."  *In re Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016) (emphasis in original).

**Threshold Issue 1**: This issue stems from Judge Furman's consideration of the *Pillars* appeal.[4]   Judge Furman requested that this Court confirm the definitions of "Ignition Switch Plaintiffs"[5] and "Non-Ignition Switch Plaintiffs"[6] because of the different rights conferred upon those categories of plaintiffs by the Key Court Rulings.   New GM's position is that since Pillars is a Non-Ignition Switch Pre-Closing Accident Plaintiff, his claim is a Retained Liability (as defined in the Sale Agreement) of Old GM, and he may not pursue claims against New GM, including successor liability claims.[7]

It is anticipated that Designated Counsel may argue that the rights conferred upon Ignition Switch Plaintiffs (*i.e.,* plaintiffs who allege Ignition Switch Defects in Subject Vehicles covered by New GM Recall No. 14V-047 in February and March 2014) and the Key Court Rulings should be extended to Non-Ignition Switch Plaintiffs (*i.e.,* plaintiffs who allege defects, including ignition-switch issues that are not covered by New GM Recall No. 14V-047).   That argument should be rejected.   Judge Gerber found a due process violation only with respect to Subject Vehicles with the Ignition Switch Defect because of the unique circumstances associated with those vehicles and the events leading to the February/March 2014 recalls.   In contrast,

---

[3]   Pursuant to the December 2016 Show Cause Order, this brief addresses four of the five 2016 Threshold Issues. The fifth and last 2016 Threshold Issue (*i.e.*, the ability to file late claims against Old GM/equitable mootness) involves discovery and is on a separate track for resolution.

[4]   *Gen. Motors LLC v. Pillars (In re Motors Liquidation Co.)*, Case No. 15-CV-8432 (JMF) ("**Pillars DC Appeal**") (S.D.N.Y. Sept. 7, 2016) (Order) ("**Pillars District Court Order**").

[5]   "**Ignition Switch Plaintiffs**" have been consistently defined in the Key Court Rulings as owners/lessors of Subject Vehicles with the Ignition Switch defect ("**Ignition Switch Defect**") covered by the February/March 2014 recalls, asserting an economic loss claim against New GM.   Ignition Switch Plaintiffs were the subject of the first motion to enforce filed by New GM in 2014 ("**April 2014 Motion to Enforce**").

[6]   "**Non-Ignition Switch Plaintiffs**" have been consistently defined in the Key Court Rulings as owner/lessors of vehicles without the Ignition Switch Defect manufactured by Old GM who were not the subject of the February/March 2014 recalls, asserting an economic loss claim against New GM.   Non-Ignition Switch Plaintiffs were the subject of the Non-Ignition Switch Economic Loss Motion to Enforce (as defined below) filed in August 2014.

[7]   If Pillars was an Ignition Switch Pre-Closing Accident Plaintiff, based on the Opinion, he would not be bound by the Sale Order and could pursue a successor liability claim against New GM.

Judge Gerber ruled that there was no evidence that the Non-Ignition Switch Plaintiffs were deprived of due process, and it is too late for them to establish that now.  There is no basis to disturb Judge Gerber's final ruling on this subject, which was never challenged on appeal.[8]

**Threshold Issue 2**:  New GM's position is that the Second Circuit's ruling on Independent Claims is directed at, and applies only to, Non-Ignition Switch Plaintiffs represented by attorney Gary Peller, Esq. ("**Peller Plaintiffs**").  Only the Peller Plaintiffs appealed the April 2015 Decision/June 2015 Judgment, and they did so on behalf of themselves only.  No other Non-Ignition Switch Plaintiffs appealed, and non-appellants should not get the benefit of the Second Circuit's ruling on Independent Claims.

Further, since the Opinion did not review or address the November 2015 Decision/December 2015 Judgment, Old GM vehicle owners *without* the Ignition Switch Defect cannot properly assert Independent Claims.  And since the December 2015 Judgment was not appealed, the issue has been finally decided against all plaintiffs bound by that Judgment.

Finally, since many plaintiffs continue to improperly assert claims for Retained Liabilities of Old GM under the guise of Independent Claims, this Court should continue to exercise its gatekeeping role to enforce the injunction in the Sale Order to protect the integrity of, and to provide consistency in, the interpretation of its Orders.

**Threshold Issue 3**:  This issue involves the claims against New GM asserted by Used Car Purchasers, which the Opinion defines as, and limited to, a subset of Ignition Switch

---

[8]    The Key Court Rulings also defined accident plaintiffs in terms of whether the accident occurred before the 363 Sale ("**Pre-Closing Accident Plaintiffs**") or after the 363 Sale ("**Post-Closing Accident Plaintiffs**").  Many times, the Key Court Rulings further categorized accident plaintiffs in terms of whether a Subject Vehicle with the Ignition Switch Defect was involved ("**Ignition Switch Pre-Closing Accident Plaintiffs**" or "**Ignition Switch Post-Closing Accident Plaintiffs**"), or not ("**Non-Ignition Switch Pre-Closing Accident Plaintiffs**" or "**Non-Ignition Switch Post-Closing Accident Plaintiffs**").

Plaintiffs.[9]  All other used car owners were not covered by the Opinion.  Since the Opinion is expressly limited to only one category of plaintiffs, the prior rulings by the Bankruptcy Court unquestionably apply to all other used car owners (*i.e.,* those without an Ignition Switch Defect seeking economic losses, and personal injuries).  Under the April 2015 Decision/June 2015 Judgment, used car owners may only assert claims against New GM if such claims could have been asserted by the original Old GM vehicle owners consistent with the Sale Order.[10]

Threshold Issue 4: This Issue involves whether Post-Closing Accident Plaintiffs can bring punitive damage claims against New GM on a successor liability theory.  The December 2015 Judgment expressly bars this type of claim, and ***this ruling was never challenged on appeal***.  Accordingly, as a matter of *res judicata*, all Post-Closing Accident Plaintiffs are barred from pursuing punitive damages against New GM on successor liability grounds.  Additional reasons warranting this conclusion include: (a) Post-Closing Accident Plaintiffs should not be able to selectively enforce the Sale Agreement with respect to New GM's assumption of Product Liabilities (as defined in the Sale Agreement) while simultaneously ignoring the Sale Agreement's overall prohibition against asserting successor liability claims against New GM; and (b) New GM cannot be liable for punitive damages for successor liability claims since it purchased assets from an insolvent debtor who itself would not have been responsible for punitive damages because of the 363 Sale and the Bankruptcy Code priority scheme.

---

[9]  The Second Circuit defined Used Car Purchasers as follows: "[i]ncluded within the Ignition Switch Plaintiffs were individuals who had purchased Old GM cars secondhand after the § 363 sale closed ('Used Car Purchasers')."  *Motors Liquidation Co.*, 829 F.3d at 151.

[10]  In MDL 2543, Lead Counsel has not asserted a successor liability claim against New GM for Used Car Purchasers, presumably because they purchased their vehicles after the 363 Sale and, thus, had no relationship with Old GM as of the 363 Sale.

30074945

\*\*\*\*\*

As illustrated above, the Key Court Rulings confer different rights upon various categories of plaintiffs depending on, for example, whether they allege an Ignition Switch Defect in a Subject Vehicle, whether they assert economic loss or personal injury claims, and whether their accident occurred before or after the 363 Sale. Given the number of permutations involved as it relates to the 2016 Threshold Issues, New GM offers the chart below for the convenience of the Court to summarize the rights of various categories of plaintiffs under the Key Court Rulings:

| Plaintiff Type | Successor Liability | Independent Claims | Punitive Damages |
|---|---|---|---|
| Ignition Switch Pre-Closing Accident Plaintiffs | These plaintiffs are not barred by the Sale Order from asserting successor liability claims against New GM, to the extent permitted under state law. *Motors Liquidation Co.*, 829 F.3d 135, 170 (2d Cir. 2016). | Cannot assert Independent Claims since accident occurred before the 363 Sale – no New GM conduct involved. | Cannot seek punitive damages on successor liability claims pursuant to the November 2015 Decision/December 2015 Judgment. December 2015 Judgment, ¶ 6. |

30074945

| **Plaintiff Type** | **Successor Liability** | **Independent Claims** | **Punitive Damages** |
|---|---|---|---|
| Ignition Switch Post-Closing Accident Plaintiffs | The Opinion did not rule on this issue. These plaintiffs failed to raise this issue as part of the proceedings leading to the November 2015 Decision/ December 2015 Judgment.  So the Sale Order and its no-successor liability finding continues to apply to them.  Sale Order, ¶¶ 6,7,8, 47, 48; December 2015 Judgment, ¶ 16. Note that New GM assumed Product Liabilities for compensatory damages only.  *See* Sale Agreement, § 2.3(a)(ix) (as amended). | Can assert Independent Claims if based solely on New GM conduct. *Motors Liquidation Co.*, 829 F.3d at 157. | Can seek punitive damages on Independent Claims pursuant to the November 2015 Decision/December 2015 Judgment, but cannot seek punitive damages with respect to any claim relying on Old GM conduct (*i.e.*, successor liability) or with respect to Assumed Liabilities. December 2015 Judgment, ¶¶ 6, 7. |
| Ignition Switch Plaintiffs (Economic Loss) | Can assert successor liability claims pursuant to the Opinion, to the extent permitted under state law. *Motors Liquidation Co.*, 829 F.3d at 170. | Can assert Independent Claims pursuant to the Opinion if based solely on New GM conduct. *Motors Liquidation Co.*, 829 F.3d at 157. | Can seek punitive damages on Independent Claims pursuant to the November 2015 Decision/December 2015 Judgment, but cannot seek punitive damages on successor liability claims. December 2015 Judgment, ¶¶ 6, 7. |

30074945

| **Plaintiff Type** | **Successor Liability** | **Independent Claims** | **Punitive Damages** |
|---|---|---|---|
| Non-Ignition Switch Pre-Closing Accident Plaintiffs | Cannot assert successor liability claims pursuant to the Sale Order, the April 2015 Decision/June 2015 Judgment and the November 2015 Decision/December 2015 Judgment. Sale Order, ¶¶ 6, 7, 8, 47, 48; *In re Motors Liquidation Co.*, 529 B.R. 510, 526 (Bankr. S.D.N.Y. 2015); June 2015 Judgment, ¶ 7; December 2015 Judgment, ¶¶ 16, 36. | Cannot assert Independent Claims pursuant to the Sale Order and the November 2015 Decision/ December 2015 Judgment. December 2015 Judgment, ¶ 14. | As all claims by Non-Ignition Switch Pre-Closing Accident Plaintiffs are barred pursuant to the Sale Order, such plaintiffs cannot seek punitive damages from New GM on any claims. Sale Agreement, § 2.3(b)(ix); June 2015 Judgment, ¶ 7; December 2015 Judgment, ¶¶ 6, 36. |
| Non-Ignition Switch Post Closing Accident Plaintiffs | Cannot assert successor liability claims pursuant to the Sale Order and the November 2015 Decision/December 2015 Judgment. Sale Order, ¶¶ 6, 7, 8, 47, 48; December 2015 Judgment, ¶ 16. Note that New GM assumed Product Liabilities for compensatory damages only. *See* Sale Agreement, § 2.3(a)(ix) (as amended). | Cannot assert Independent Claims pursuant to the Sale Order and the November 2015 Decision/ December 2015 Judgment. December 2015 Judgment, ¶ 14. | As the only claims certain Non-Ignition Switch Post-Closing Accident Plaintiffs can bring against New GM are Assumed Liabilities, and punitive damages cannot be sought with respect to Assumed Liabilities, such plaintiffs cannot seek punitive damages from New GM on any claims. Sale Agreement, § 2.3(a)(ix); December 2015 Judgment, ¶ 6. |

30074945

| **Plaintiff Type** | **Successor Liability** | **Independent Claims** | **Punitive Damages** |
|---|---|---|---|
| Non-Ignition Switch Plaintiffs (Economic Loss) | Cannot assert successor liability claims pursuant to the Sale Order and the November 2015 Decision/December 2015 Judgment. Sale Order, ¶¶ 6, 7, 8, 47, 48; December 2015 Judgment, ¶ 16. | Cannot assert Independent Claims pursuant to the Sale Order and the November 2015 Decision/ December 2015. December 2015 Judgment, ¶ 14. | As all claims by Non-Ignition Switch Plaintiffs are barred pursuant to the Sale Order, such plaintiffs cannot seek punitive damages from New GM on any claims. *See generally* Sale Order and Sale Agreement, § 2.3; December 2015 Judgment, ¶ 6. |
| Used Car Purchasers (with the Ignition Switch Defect—Economic Loss) | The Sale Order does not apply to this category of plaintiffs. In MDL 2543, Lead Counsel has not pursued successor liability relating to economic loss claims for this category of plaintiffs. | Can assert Independent Claims if based solely on New GM conduct. | Can seek punitive damages on Independent Claims pursuant to the November 2015 Decision/December 2015 Judgment, but cannot seek punitive damages on successor liability claims. December 2015 Judgment, ¶¶ 6, 7. |
| All Other Used Car Owners | They have no greater rights than their sellers. *Motors Liquidation Co.*, 529 B.R. at 571-72. | They have no greater rights than their sellers. *Motors Liquidation Co.*, 529 B.R. at 571-72. | They have no greater rights than their sellers. *Motors Liquidation Co.*, 529 B.R. at 571-72; December 2015 Judgment, ¶ 6. |

For the reasons discussed below, New GM believes that its positions on the 2016 Threshold Issues are correct and well-supported, and that the resolution of these Issues will

30074945

properly, efficiently and consistently align the claims and lawsuits being brought against it with

the Key Court Rulings.

### FACTUAL AND LEGAL BACKGROUND

A.    **The Sale Order and Sale Agreement**

On June 1, 2009, Old GM filed a Chapter 11 bankruptcy case.  On that same day, it filed

a motion seeking approval of the original version of the Sale Agreement, pursuant to which

substantially all of Old GM's assets were to be sold to New GM.  *See In re Gen. Motors Corp.*,

407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009).  The Sale Order was entered on July 5, 2009, and the

363 Sale closed on July 10, 2009.

The Sale Agreement allocated the liabilities of Old GM into two categories: either

Assumed Liabilities (*i.e.*, liabilities assumed by New GM) or Retained Liabilities (*i.e.,* liabilities

that stayed with Old GM).  *See generally* Sale Agreement § 2.3.  The only Assumed Liabilities

that New GM assumed with respect to Old GM vehicles were: (i) claims arising out of post-sale

accidents involving Old GM vehicles that caused personal injury, loss of life or property damage

(defined in the Sale Agreement as "Product Liabilities"), (ii) express glove-box warranty claims,

and (iii) Lemon Law claims.  *See* Sale Agreement, § 2.3(a).  All other claims involving Old GM

vehicles and related Old GM conduct were Retained Liabilities of Old GM for which New GM

could not be held liable (*e.g.*, a fraud claim, implied warranty claim, false advertisement claim,

*etc.*).  *Id.* at § 2.3(b).  Moreover, the Sale Agreement provided that New GM would have no

successor liability as a result of the 363 Sale.  *See id.* at § 9.19.

The Sale Order contained various provisions holding that (except for Assumed

Liabilities) New GM would not be liable for Old GM claims, Old GM conduct, Old GM

obligations/duties, or successor liability claims.  For example:

(a)    New GM would not be liable for "all claims arising in any way in connection with
any agreements, *acts, or failures to act*, of any of the Sellers [Old GM] or any of

30074945

the Sellers' predecessors or affiliates, ***whether known or unknown***, contingent or otherwise, whether arising prior to or ***subsequent to the commencement*** of these chapter 11 cases, and whether imposed by agreement, ***understanding, law, equity or otherwise***, including, but not limited to claims otherwise arising under doctrines of successor or transferee liability."   Sale Order, ¶ AA (emphasis added).

(b)    All persons and entities including litigation claimants asserting rights or claims based on successor or transferee liability, "arising under or out of, in connection with, or in any way relating to the Sellers, the Purchased Assets ***the operation of the Purchased Assets prior to the Closing***, or the 363 Transaction" are barred from asserting such claims against New GM.  Sale Order, ¶ 8 (emphasis added).

(c)    New GM would not be liable "for any claim that arose prior to the Closing Date, ***relates to the production of vehicles prior to the Closing Date***, or otherwise is assertable against the Debtors or ***is related to the Purchased Assets*** prior to the Closing Date.  Sale Order, ¶ 46 (emphasis added).

(d)    "All persons and entities are forever prohibited from commencing or continuing in any manner any action or other proceeding, whether in law or equity, …against the Purchaser [New GM] or the Purchased Assets, with respect to any (i) claims against the Debtors other than Assumed Liabilities, or (ii) successor or transferee liability of the Purchaser for any of the Debtors . . . ." Sale Order, ¶ 47.

## B.    The 2014 Ignition Switch Recalls and the Three Motions to Enforce Filed by New GM

In February and March 2014, New GM recalled the Subject Vehicles because of an Ignition Switch Defect.[11]  Almost immediately, plaintiffs with Subject Vehicles with the Ignition Switch Defect began suing New GM for economic losses.[12]   In response, New GM filed the April 2014 Motion to Enforce with the Bankruptcy Court, which sought to enjoin lawsuits asserting economic loss claims against New GM arising from the Ignition Switch Defect in Subject Vehicles relating to the February/March 2014 recalls.

Based on this Motion to Enforce, the Bankruptcy Court entered an order identifying four threshold issues ("**2014 Threshold Issues**") to be decided in the first instance:   (i) whether

---

[11]   These recalls refer to the Part 573 Defect Notices filed by New GM with the NHTSA, dated February 7, 2014, February 24, 2014, and March 28, 2014.

[12]   Around this time, New GM instituted a program (known as the Feinberg program), administered by Ken Feinberg to attempt to consensually resolve pre-363 Sale accident claims involving the Ignition Switch Defect in Subject Vehicles.

30074945

Ignition Switch Plaintiffs' due process rights were violated in connection with the notice of the 363 Sale, (ii) if there was a due process violation, what should the remedy be, (iii) whether the economic loss claims asserted by Ignition Switch Plaintiffs were Assumed Liabilities of New GM or Retained Liabilities of Old GM, and (iv) if claims could be asserted by Ignition Switch Plaintiffs against Old GM, did the doctrine of equitable mootness apply.[13]    The Bankruptcy Court directed the parties to submit agreed-upon stipulations of fact that would be used to resolve the 2014 Threshold Issues.[14]    The Stipulated Facts contained, among other things, definitions of various categories of plaintiffs.

In the meantime, plaintiffs continued to file lawsuits against New GM.  Some of these additional lawsuits were personal injury cases filed by individuals who were involved in accidents *before* the 363 Sale, which was a liability retained by Old GM under the Sale Agreement.  Other new lawsuits were filed by plaintiffs seeking economic losses relating to Old GM vehicles ***without*** the Ignition Switch Defect.  Accordingly, on August 1, 2014, New GM filed two additional motions to enforce:  (i) a motion against plaintiffs who were suing New GM for accidents involving Old GM vehicles that occurred before the 363 Sale ("**Pre-Closing Accident Motion to Enforce**");[15] and (ii) a motion against plaintiffs who were suing New GM

---

[13]    *Supplemental Scheduling Order Regarding (I) Motion Of General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Court's July 5, 2009 Sale Order And Injunction, (II) Objection Filed By Certain Plaintiffs In Respect Thereto, And (III) Adversary Proceeding No. 14-01929*, dated July 11, 2014 [ECF No. 12770].  The Court expressly declined to include as a 2014 Threshold Issue the issue of whether Ignition Switch Plaintiffs could file a late proof of claim against the Old GM estate.

[14]    *See Agreed and Disputed Stipulations of fact Pursuant to the Court's Supplemental Scheduling Order, dated July 11, 2014*, dated August 8, 2014 [ECF No. 12826] ("**Stipulated Facts**").

[15]    *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce this Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [ECF No. 12807], at 2.

for economic losses arising from alleged defects other than the Ignition Switch Defect in Subject Vehicles ("**Non-Ignition Switch Economic Loss Motion to Enforce**").[16]

On September 15, 2014, the Bankruptcy Court entered virtually identical Scheduling Orders [ECF Nos. 12897, 12898] with respect to the Non-Ignition Switch Economic Loss Motion to Enforce and the Pre-Closing Accident Motion to Enforce.  Both Orders provided that the schedule to resolve these motions would generally follow the April 2014 Motion to Enforce. No party sought to include additional stipulated facts with respect to these later filed motions to enforce.

## C.    The April 2015 Decision/June 2015 Judgment

After hearing oral argument over two days in February 2015, the Bankruptcy Court entered the April 2015 Decision and a later decision, dated May 27, 2015 ("**May Decision**"), addressing issues concerning the form of the judgment for the April 2015 Decision.  These rulings were later memorialized in the June 2015 Judgment.  The Bankruptcy Court held that the Sale Order remained in full force and effect, and barred lawsuits relating to Old GM vehicles, except for (a) "Independent Claims," *which may be brought solely by Ignition Switch Plaintiffs*; and (b) Assumed Liabilities.  *See* June 2015 Judgment ¶¶ 4, 5.  The Bankruptcy Court also held that used car owners could not acquire rights against New GM any greater than those held by the original Old GM vehicle owner.[17]  The April 2015 Decision, while deciding issues relating to the April 2014 Motion to Enforce and the Pre-Closing Accident Motion to Enforce, noted that issues relating to the Non-Ignition Switch Economic Loss Motion to Enforce were being deferred.[18]

---

16    *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 [ECF No. 12808], at 3.

17    *In re Motors Liquidation Co.*, 529 B.R. 510, 570-72 (Bankr. S.D.N.Y. 2015).

18    *Id*. at 523.

12

In the May Decision, the Bankruptcy Court held that the April 2015 Decision would be

*stare decisis* for Non-Ignition Switch Plaintiffs, but not *res judicata*.[19]  It noted that:

> [t]he Court agrees with New GM, the GUC Trust and the Unitholders that is time
> to come to closure on whether there is any basis to excuse the Non-Ignition
> Switch Plaintiffs from the provisions of the Sale Order and the Court's mootness
> conclusions. And fairness to the MDL court requires that this Court timely
> provide the MDL Court with any rulings that the MDL Court may require. The
> Court's Judgment balances the Non-Ignition Switch Plaintiffs' need for
> opportunity now to be heard with others' needs for expeditious closure on these
> additional claims."[20]

The June 2015 Judgment identified the cases which involved the Ignition Switch Defect

(Exhibit "A"), and those that involved Non-Ignition Switch Plaintiffs (Exhibit "D").   The Pillars

lawsuit is on Exhibit "D."

### D.    The Appeal of the April 2015 Decision/June 2015 Judgment, and the Opinion

A number of parties appealed the April 2015 Decision/June 2015 Judgment directly to

the Second Circuit, including individuals represented by attorney Gary Peller [ECF Nos. 13179,

13180, 13337], individual accident plaintiffs represented by other counsel [ECF Nos. 13209,

13287], Ignition Switch Plaintiffs represented by Designated Counsel [ECF No. 13185] and

Ignition Switch Pre-Closing Accident Plaintiffs [ECF No. 13194].  Significantly,  the notice of

appeal filed by Designated Counsel did not include Non-Ignition Switch Plaintiffs.  Similarly,

their statement of issues on appeal did not include any issues related to Non-Ignition Switch

Plaintiffs [ECF Nos. 13643; 13677], and Opening Briefs and Reply Briefs completely omitted

any filing by or on behalf of Non-Ignition Switch Plaintiffs [15-2844-bk, (2d Cir.) ECF Nos.

235, 315].

Instead, the only Non-Ignition Switch Plaintiffs who appealed the April 2015

Decision/June 2015 Judgment were the Peller Plaintiffs.  *See*  ECF Nos. 13179, 13180, 13337.

---

19    *In re Motors Liquidation Co.*, 531 B.R. 354, 360 (Bankr. S.D.N.Y. 2015).

20    *Id.*

***No other Non-Ignition Plaintiff and no Non-Ignition Switch Pre-Closing Accident Plaintiffs***

***appealed the April 2015 Decision/June 2015 Judgment***.

The Second Circuit's discussion of Non-Ignition Switch Plaintiffs was limited to only the

Peller Plaintiffs.  An important footnote in the Opinion corroborates this conclusion:

> On appeal, the Non–Ignition Switch Plaintiffs are joined by certain ignition
> switch and pre-closing accident plaintiffs and call themselves the "Elliot, Sesay,
> and Bledsoe Plaintiffs." That group also represents two other appellants captioned
> above: Berenice Summerville and Doris Powledge Phillips. For ease of reference,
> in the context of this appeal, we will continue to call the group the "Non–Ignition
> Switch Plaintiffs."

*Motors Liquidation Co.*, 829 F.3d at 152 n.18.[21]  The Elliot, Sesay and Bledsoe Plaintiffs, and

Summerville Plaintiff are all represented by Peller.  Some of the plaintiffs in those lawsuits hold

ignition switch and pre-closing accident claims.[22]

From both the context and language of the Opinion, it is also evident that the Second

Circuit limited the term "Non-Ignition Switch Plaintiffs" to the Peller Plaintiffs.  For example,

when the Opinion references certain pleadings filed by "Non-Ignition Switch Plaintiffs," in each

case they were filed by Peller.  *See id.* at 151 ("First, the Non–Ignition Switch Plaintiffs filed a

motion, asserting, among other things, that the bankruptcy court lacked jurisdiction to enforce

the Sale Order. On August 6, 2014, the bankruptcy court denied that motion.  *In re Motors*

*Liquidation Co.* ('*MLC I*'), 514 B.R. 377 (Bankr. S.D.N.Y. 2014) (Gerber, J.)"); *see also id.* at

152 ("Following briefing by the Non–Ignition Switch Plaintiffs, on July 22, 2015, the bankruptcy

---

[21] Appellant Phillips is not represented by Peller.  However, Appellant Phillips never filed a brief in the Second Circuit.

[22] The plaintiffs represented by Peller include: Lawrence Elliott (an Ignition Switch Plaintiff and a Non-Ignition Switch Plaintiff), Celestine Elliott (an Ignition Switch Plaintiff and a Non-Ignition Switch Plaintiff), Berenice Summerville (an owner of a New GM vehicle), Ishmail Sesay (a Non-Ignition Switch Used Car Purchaser), Joanne Yearwood (an owner of a New GM vehicle), Sharon Bledsoe (an Ignition Switch Pre-Closing Accident Plaintiff), Tina Farmer (an Ignition Switch Post-Closing Accident Plaintiff), Paul Fordham (a Non-Ignition Switch Used Car Purchaser), Momoh Kanu (Non-Ignition Switch Post-Closing Accident Plaintiff), Tynesia Mitchell (an Ignition Switch Used Car Purchaser), Dierra Thomas (an Ignition Switch Plaintiff), and James Tibbs (a Non-Ignition Switch Used Car Purchaser).

14

court rejected their objections to the judgment."); *id.* at 153 ("the Non–Ignition Switch Plaintiffs argue that the bankruptcy court lacked power to issue a so-called successive injunction").

Furthermore, Peller's actions confirm that he did not represent other Non-Ignition Switch Plaintiffs. For example, Peller commenced proceedings in the District Court seeking to oust Lead Counsel because they took no action in the Bankruptcy Court or the Second Circuit to advocate the interests of Non-Ignition Switch Plaintiffs. *See Notice Of Conflict Within The Plaintiffs' Group And Of The Possible Need For The Court To Augment Plaintiffs' Leadership Structure*, dated April 14, 2016 [MDL 2543 ECF No. 2772], at 1 ("This Notice is precipitated by the fact that Lead Counsel for Economic Loss Plaintiffs ('Lead Counsel') did not perfect an appeal from the Bankruptcy Court's June 1, 2015, Judgment, on behalf of an entire category of MDL Plaintiffs, those alleging non-ignition switch claims for economic loss related to vehicles manufactured by Old GM, leading to the possible preclusion of all of their claims against New GM . . . .").[23] In addition, in his Opening Brief to the Second Circuit, Peller stated that his clients were the sole appellants asserting Independent Claims against New GM "based on non-ignition switch hazards in vehicles manufactured by Old GM . . . ."[24]

On July 13, 2016, the Second Circuit issued its Opinion with respect to the April 2015 Decision/June 2015 Judgment.[25] It ruled: (a) Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs were prejudiced by a procedural due process violation committed by Old GM relating to the 363 Sale notice and, therefore, the Sale Order could not bar them from

---

23  As noted, when the Peller Plaintiffs failed to appeal the November 2015 Decision/December 2015 Judgment, they became bound by the rulings made by the Bankruptcy Court—*i.e.*, that the Peller Plaintiffs' specific pleadings were not valid Independent Claims.

24  *See The Elliott, Sesay, and Bledsoe Plaintiffs' Opening Brief* [15-2844-bk, (2d Cir.) ECF No. 238], at 1.

25  The Second Circuit did not have before it, and therefore made no rulings on, the orders entered by the Bankruptcy Court after the June 2015 Judgment. Thus, it did not consider and made no rulings on the November 2015 Decision/December 2015 Judgment.

15

attempting to assert successor liability claims against New GM;[26] (b) Ignition Switch Plaintiffs who bought Old GM vehicles in the secondary market after the 363 Sale ("**Used Car Purchasers**") were not bound by the Sale Order (the Court, however, issued no ruling with respect to used car owners of vehicles *without* the Ignition Switch Defect);[27] (c) Non-Ignition Switch Plaintiffs (*i.e.*, the Peller Plaintiffs) may assert valid Independent Claims;[28] and (d) the record on appeal did not permit a conclusion as to whether Non Ignition Switch Plaintiffs suffered a due process violation in the same way as the Ignition Switch Plaintiffs. Accordingly, the Second Circuit remanded to the Bankruptcy Court the issue of whether Non-Ignition Switch Plaintiffs (*i.e.*, the Peller Plaintiffs) could show a due process violation relating to the Sale Order.[29]

## E.      Supplemental Proceedings After the April 2015 Decision/June 2015 Judgment

Consistent with the June 2015 Judgment, the Bankruptcy Court established supplemental proceedings to determine, among other things, if the rulings in the April 2015 Decision/June 2015 Judgment applied to various plaintiffs as a matter of *res judicata* (as compared to *stare decisis*). During these proceedings, certain plaintiffs filed pleadings arguing that they should not be bound by the rulings in the April 2015 Decision/June 2015 Judgment. **Designated Counsel** for Ignition Switch Plaintiffs **and Non-Ignition Switch Plaintiffs** filed such a pleading.[30]

---

26  *Motors Liquidation Co.*, 829 F.3d at 166.

27  *Id.* at 151, 157. The Opinion ruled on issues relating to the three 2014 motions to enforce, and Post-Closing Accident Plaintiffs were not part of those motions. Therefore, the Used Car Purchaser ruling in the Opinion did not apply to that category of plaintiffs.

28  *Id.* at 157.

29  *Id.* at 166, 170.

30  *The Ignition Switch Plaintiffs' No Strike Pleading With Regard To The Second Amended Consolidated Complaint; And The Non-Ignition Switch Plaintiffs' (I) Objection Pleading With Regard To The Second Amended Consolidated Complaint And (II) GUC Trust Asset Pleading*, dated June 24, 2015 [ECF No. 13247] ("**ISP No Strike Pleading**"). Ultimately, the ISP No Strike Pleading was denied by the Bankruptcy Court pursuant to the November 2015 Decision/December 2015 Judgment.

16

Confronted with these pleadings, the Bankruptcy Court entered a Case Management Order [ECF No. 13383] ("**August 2015 CMO**") on August 19, 2015, explicitly asking the parties to inform the Court if "any other matters . . . need to be addressed by this Court" in connection with the 363 Sale. *See* August 2015 CMO, ¶ 1(g). Importantly, the Bankruptcy Court stated that it was "in particular need of information with respect to the *Non-Ignition Switch Plaintiffs' claims …* and pending and future matters affecting them…." *Id.* ¶ 2 (emphasis added).

In response to the August 2015 CMO, New GM filed a letter with the Bankruptcy Court, dated August 26, 2015 [ECF No. 13390] ("**New GM August 26 Letter**"), which informed the Bankruptcy Court that it recently sent out hundreds of demand letters to plaintiffs involved in other lawsuits pursuant to the procedures set forth in the June 2015 Judgment. In addition, New GM requested that the Bankruptcy Court address whether "requests for punitive/special damages against New GM based in any way on Old GM conduct, including but not limited to post-363 Sale accidents of Old GM vehicles" were barred by the Bankruptcy Court's rulings. *See* New GM August 26 Letter, at 4.

At a status conference held on August 31, 2015 in connection with the August 2015 CMO, Designated Counsel raised issues concerning Old GM vehicle owners without the Ignition Switch Defect. The Bankruptcy Court asked if Designated Counsel was "now going to be kind of designated counsel for non-ignition switch plaintiffs . . . ." *Id.*, at 38:9-10. The following colloquy then took place:

> MR. WEISFELNER: ". . . yes, we perceive ourselves as having taken the mantel of preserving and protecting the rights of non-ignition switch plaintiffs in this court."

> THE COURT: So I don't have to worry about them not having been heard if I listen to you.

> MR. WEISFELNER: I think that's a correct conclusion, especially in light of Your Honor's procedures in the judgment itself.

30074945

*Id.* at 38:17-24.[31]   Later on at the hearing, the Bankruptcy Court noted that "the non-ignition switch plaintiffs' inability or inaction to have yet established a due process violation to give them the benefits that the remainder of your constituency got is, in my view, a big issue."   8/31/15 Hr'g Tr., at 80:21-25.   Weisfelner responded, saying that "*[t]o the extent that that remains an issue,* then in term of triaging things, it seems to me that we need to get that issue teed up quickly because to the extent that people, either New GM or us, depending on who loses, needs to appeal that decision, they ought to get started."   *Id.* at 81:22-82:2 (emphasis added).   On September 3, 2015, the Bankruptcy Court entered a Scheduling Order [ECF No. 13416] ("**September 2015 Scheduling Order**") which established procedures to address various issues.

The proceedings in the Fall of 2015 concerned not just economic loss claims, but also personal injury lawsuits commenced by Post-Closing Accident Plaintiffs (including both Ignition Switch Post-Closing Accident Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs).   New GM served the September 2015 Scheduling Order on approximately 150-200 plaintiffs with claims pending against New GM that did not relate to Subject Vehicles.   *The September 2015 Scheduling Order stated that all such plaintiffs would be bound by the rulings entered by the Bankruptcy Court*:

> If you have any objection to the procedures set forth in the Scheduling Order, you must file such objection in writing with the Bankruptcy Court within three (3) business days of receipt of this notice ("Objection").   *Otherwise, you will be bound by the terms of the Scheduling Order and the determinations made pursuant thereto.* If you believe there are issues that should be presented to the Court relating to your lawsuit that will not otherwise be briefed and argued in accordance with the Scheduling Order, you must set forth that position, with specificity in your Objection. The Court will decide whether a hearing is required with respect to any Objection timely filed and, if so, will. promptly notify the parties involved.

---

31   The briefs filed by Weisfelner in connection with the issues set forth in the September 2015 Scheduling Order were filed on behalf of Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs.   *See, e.g., Joinder Of The Ignition Switch Plaintiffs And Non-Ignition Switch Plaintiffs To The Post-Closing Ignition Switch Accident Plaintiffs' Memorandum Of Law With Respect To Punitive Damages Issue*, dated September 13, 2015 [ECF No. 13436].

30074945

September 2015 Scheduling Order, at 4 (emphasis added).[32]

## F.    The November 2015 Decision/December 2015 Judgment

On November 9, 2015, the Bankruptcy Court entered the November 2015 Decision with

respect to the matters identified in the September 2015 Scheduling Order.   On December 4,

2015, the Bankruptcy Court entered its December 2015 Judgment, memorializing the rulings set

forth in the November 2015 Decision.

> With respect to punitive damages, the Bankruptcy Court specifically found that:
>
> New GM *did not contractually assume liability for punitive damages* from Old GM. Nor is New GM liable for punitive damages *based on Old GM conduct* under *any other theories, such as by operation of law*. Therefore, punitive damages may not be premised on Old GM knowledge or conduct, *or anything else that took place at Old GM.*
>
> A claim for punitive damages with respect to a post-Sale accident *involving vehicles manufactured by Old GM with the Ignition Switch Defect may be asserted against New GM to the extent—but only to the extent—it relates to an otherwise viable Independent Claim and is based solely on New GM conduct or knowledge* . . . .

December 2015 Judgment, ¶¶ 6-7 (emphasis added).

Non-Ignition Switch Plaintiffs represented by Designated Counsel and other plaintiffs

with non-Subject Vehicles did not raise any due process arguments relating to the 363 Sale

notice, nor did they present any evidence that they had suffered a due process violation.

Accordingly, the Bankruptcy Court ruled in the November 2015 Decision:

> Ignition Switch Plaintiffs asserting Economic Loss Claims may assert them, to the extent they are Independent Claims, under the April 15 Decision and Judgment. *Non–Ignition Switch Plaintiffs cannot. The latter could have tried to show the Court that they had "known claims" and were denied due process back in 2009, but they have not done so.* The Court ruled on this expressly in the [May Decision]. It then held:

---

[32]    A similar issue was recently addressed by this Court at the Case Management Conference held on November 16, 2016, wherein this Court stated that plaintiffs who are properly served with the December 2016 Show Cause Order will be bound by the rulings issued by the Court.  See H'rg Tr., November 16, 2016 ("**November 16 Transcript**"), at 39:9-43:24. Relevant excerpts of the November 16 Transcript are annexed hereto as **Exhibit "B."**

30074945

The Non–Ignition Switch Plaintiffs' claims remain stayed, and properly so; those Plaintiffs have not shown yet, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of a due process violation with respect to them. And unless and until they do so, the provisions of the Sale Order, including its injunctive provisions, remain in effect.

531 B.R. at 360.    That ruling stands. In the April Decision and resulting Judgment, the Court modified a Sale Order under which the buyer had a justifiable right to rely because a higher priority—a denial of due process, which was of Constitutional dimension—necessitated that. But without a showing of a denial of due process—*and the Non–Ignition Switch Plaintiffs have not shown that they were victims of a denial of due process*—the critically important interests of finality (in each of the 2009 Sale Order and the [May Decision] and Judgment) and predictability must be respected, especially now, more than 6 years after entry of the Sale Order.

*In re Motors Liquidation Co.*, 541 B.R. 104, 130 n.70 (Bankr. S.D.N.Y. 2015) (emphasis added).

As part of the proceedings leading to the November 2015 Decision/December 2015 Judgment, New GM submitted various marked pleadings which it believed violated the Sale Order, and the Bankruptcy Court ruled whether those allegations/pleadings passed muster.  The ruling on whether plaintiffs in vehicles without the Ignition Switch Defect had asserted valid Independent Claims came in the section of the December 2015 Judgment dealing with marked pleadings, entitled "Particular Allegations, Claims and Causes of Action."  Specifically, with respect to the alleged Independent Claims asserted by plaintiffs with vehicles without the Ignition Switch Defect (including without limitation the Non-Ignition Switch Plaintiffs), the December 2015 Judgment held:

plaintiffs whose claims arise in connection with vehicles ***without*** the Ignition Switch Defect . . . ***are not entitled to assert Independent Claims*** against New GM with respect to vehicles manufactured and first sold by Old GM (an "Old GM Vehicle"). To the extent such Plaintiffs **have attempted to assert an Independent Claim against New GM** in a pre-existing lawsuit with respect to an Old GM Vehicle, ***such claims are proscribed by the Sale Order, April Decision and the Judgment dated June 1, 2015*** [Dkt. No. 13177].

December 2015 Judgment, ¶ 14 (emphasis added).

30074945

With respect to the plaintiffs represented by Peller (some of whom did not own Subject Vehicles with the Ignition Switch Defect), the Bankruptcy Court ruled that their claims

> remain stayed unless and until they are amended (i) to remove claims that rely on Old GM conduct as the predicate for claims against New GM, (ii) to comply with the applicable provisions of the Decision and this Judgment (including those with respect to claims that fail to distinguish between Old GM and New GM), and (iii) **to strike any purported Independent Claims by Non-Ignition Switch Plaintiffs**.

December 2015 Judgment, ¶ 28 (emphasis added).

Certain *Ignition Switch* plaintiffs appealed the November 2015 Decision/December 2015 Judgment, but only with respect to an issue that is not relevant to the instant proceedings.[33] **But neither Designated Counsel for Non-Ignition Switch Plaintiffs nor Peller ever appealed any of the above-cited rulings.**

## G.    The Proceedings Subsequent to the December 2015 Judgment

After the November 2015 Decision/December 2015 Judgment, New GM reviewed the myriad of lawsuits filed against it that concerned Old GM vehicles, paying particular attention to Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs. Letters were sent to many of them explaining the rulings contained in the November 2015 Decision/December 2015 Judgment, and highlighting where individual complaints violated those rulings. Non-Ignition Switch Plaintiffs and many Non-Ignition Post-Closing Accident Plaintiffs (and other plaintiffs) voluntarily agreed to comply with the Bankruptcy Court's rulings. For those that did not, New GM brought new motions to enforce.[34] While those motions were pending, the Second Circuit rendered its Opinion. Thereafter, disagreements between various

---

33   The sole appellate issue with respect to the November 2015 Decision/December 2015 Judgment was whether certain plaintiffs' failure to timely file proofs of claim against Old GM was due to a breach of a duty/obligation allegedly owed to them by New GM. This appeal is *sub judice* before the District Court.

34   *See* ECF Nos. 13584, 13634, 13655. After the filing of these motions to enforce, New GM reached agreement with many, but not all, of the plaintiffs that were the subject of these motions to enforce.

plaintiffs and New GM ensued, the parties "met and conferred," and a list of issues was developed that resulted in the 2016 Threshold Issues at issue in this briefing.

**H.    New GM's Petition for Writ of *Certiorari* to the United States Supreme Court with Respect to the Opinion**

On December 13, 2016, New GM filed a petition for writ of *certiorari* ("**Cert. Petition**") to the United States Supreme Court with respect to the Opinion.   Responses to the Cert. Petition were filed on February 16, 2017 by Ignition Switch Plaintiffs, which argued that the rulings in the Opinion only affected 1.7 million vehicle owners.[35]   The 1.7 million number used by the Ignition Switch Plaintiffs is significant because it represents the approximate amount of owners of Subject Vehicles with the Ignition Switch Defect that were covered by the February/March 2014 recalls (*i.e.*, the Ignition Switch Plaintiffs).

**I.**

**A.    First Threshold Issue:**

**In the Context of (a) the April 2015 Decision/June 2015 Judgment, and (b) the November 2015 Decision/December 2015 Judgment, Ignition Switch Plaintiffs are Only those Plaintiffs who are Asserting Claims Against New GM Based on a Defective Ignition Switch in a "Subject Vehicle"; All Other Plaintiffs are Non-Ignition Switch Plaintiffs**

**1.    The Genesis of the First Threshold Issue**

While New GM believes the terms "Ignition Switch Plaintiffs" and "Non-Ignition Switch Plaintiffs" have been unambiguously defined in prior proceedings relating to the motions to enforce (and other proceedings), Judge Furman asked that this issue be confirmed by this Court as part of his adjudication of an appeal of the Bankruptcy Court's orders[36] concerning a lawsuit ("**Pillars Lawsuit**") commenced by plaintiff, Benjamin Pillars ("**Pillars**"), against New GM.

---

[35]   *See Brief In Opposition Of Respondents Ignition Switch Plaintiffs*, filed by the Ignition Switch Plaintiffs with the United States Supreme Court on February 16, 2017, at 7.

[36]   *Order Regarding Benjamin Pillars' No Stay Pleading and Related Pleadings*, dated July 29, 2015 [ECF No. 13328]; *Decision and Order on Motion to Reconsider and Amend*, dated September 9, 2015 [ECF No. 13427].

30074945

The Pillars Lawsuit is based on an accident that occurred before the 363 Sale that resulted in a death after the 363 Sale. The vehicle at issue in the Pillars Lawsuit is a 2004 Pontiac Grand Am, a non-Subject Vehicle. Pillars argued that since the death occurred after the 363 Sale, it was a post-363 Sale incident and an Assumed Liability of New GM. New GM argued that since the accident occurred before the 363 Sale, it was a Retained Liability of Old GM under the Bankruptcy Court's clear precedent in *Deutsch*.[37]

For reasons not germane to the instant proceeding,[38] Judge Gerber found that the Pillars Lawsuit was not barred by the Sale Order, and New GM appealed those rulings to the District Court (Judge Furman). While the appeal was pending, the Opinion was issued, finding, *inter alia*, that Ignition Switch Pre-Closing Accident Plaintiffs were not bound by the Sale Order. At an August 30, 2016 telephonic conference, Judge Furman asked the parties to address whether Pillars would be an Ignition Switch Pre-Closing Accident Plaintiff or a Non-Ignition Switch Pre-Closing Accident Plaintiff. Pillars argued that since his accident was caused by an ignition switch, he should be considered, at a minimum, an Ignition Switch Pre-Closing Accident Plaintiff.[39] New GM countered that the Pillars' 2004 Pontiac Grand Am had a different ignition switch than the vehicles covered by the February/March 2014 Ignition Switch Defect recalls. Thus, Pillars was unequivocally a Non-Ignition Switch Pre-Closing Accident Plaintiff who remained bound by the Sale Order.[40] Judge Furman directed the parties to bring this "question

---

[37] *In re Motors Liquidation Co.*, 447 B.R. 142 (Bankr. S.D.N.Y. 2011).

[38] There was an inadvertent reference in a New GM pleading to an earlier version of the Sale Agreement that was later corrected with court authorization. Judge Gerber held that if not for this mistake (since corrected) the *Deutsch* precedent would have barred the Pillars Lawsuit against New GM. *See* July 16, 2015 Hr'g Tr. [ECF No. 13399], at 25:9-13 ("At the outset of oral argument, I recognized, as we all had to recognize, my Deutsch decision, which if it had been decided in a vacuum, this controversy had been decided in a vacuum based upon the proper language of the sale agreement, would have resulted in a victory for New GM.").

[39] Pillars' official position in the appeal is that he is an Ignition Switch Post-Closing Accident Plaintiff. *See* Pillars DC Appeal ECF No. 15.

[40] Pillars DC Appeal ECF No. 14.

of what category Pillars falls within to the Bankruptcy Court's attention as among those issues that the Bankruptcy Court may want to address on remand if the Circuit's decision stands."[41]

Besides *Pillars*, a number of cases in MDL 2543 and other courts contain claims based on an ignition switch-related issue in a non-Subject Vehicle that is not covered by the February/March 2014 recalls.[42]    As demonstrated below, unless those cases involve Subject Vehicles with the Ignition Switch Defect covered by the February/March 2014 recalls, plaintiffs in such lawsuits are not Ignition Switch Plaintiffs.    Instead they are: (i) Non-Ignition Switch Plaintiffs (if they are asserting economic loss claims), (ii) Non-Ignition Switch Pre-Closing Accident Plaintiffs (if they are asserting a pre-363 Sale accident claim), or (iii) Non-Ignition Switch Post-Closing Accident Plaintiffs (if they are asserting a post-363 Sale accident claim). The Bankruptcy Court, in its rulings, held that those categories of Non-Ignition Switch Plaintiffs are bound by the Sale Order.  The Second Circuit's Opinion did not change that result.

2.    **The Definitions of Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Related Terms Have Been Used Consistently By the Parties and the <u>Courts Throughout These Proceedings</u>**

Throughout these proceedings, the definitions of "Ignition Switch," "Subject Vehicles," "Ignition Switch Plaintiffs" (and its sub-categories) and "Non-Ignition Switch Plaintiffs" (and its sub-categories) have been applied consistently without controversy or dispute by both the parties and the Courts.  There can be no dispute about the meaning of these terms at this point.   The fundamental principle is that "Ignition Switch Plaintiffs" are only those with Subject Vehicles with the Ignition Switch Defect (*i.e.,* vehicles covered by New GM's February/March 2014 recalls).  Plaintiffs with vehicles that were not the subject of the February/March 2014 recalls

---

41    Pillars District Court Order, at 2.

42    For example, in the Fourth Amended Consolidated Complaint ("**<u>FACC</u>**") filed in MDL 2543, certain plaintiffs are asserting claims based on an ignition switch issue in different Old GM vehicles.

and who are asserting economic loss claims against New GM generally are "Non-Ignition Switch Plaintiffs," even if they allege an ignition-switch related issue in their vehicles.

> ### a.    *Ignition Switch and Subject Vehicles*

The parties stipulated to the definitions of the terms "Ignition Switch" and "Subject Vehicle."  The Stipulated Facts agreed to and adopted by the Bankruptcy Court when rendering the April 2015 Decision/June 2015 Judgment provide:

> "**'Ignition Switch'** shall mean an ignition switch designed and/or sold by Old GM in the Subject Vehicles that may unintentionally move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine. (Consent Order, In re TQ14-001, NHTSA Recall No. 14V-047 (Dep't of Transp., Nat'l Highway Safety Admin. Dated May 16, 2014 (**"Consent Order"**) at 2, ¶¶5; Part 573 Defect Notice filed by New GM with the National Highway Traffic Safety Administration (**"NHTSA"**), dated February 7, 2014.)."

> "**'Subject Vehicles'** are (I) 2005-2007 Chevrolet Cobalt and Pontiac GS, 2003-2007 Saturn Ion, 2006-2007 Chevrolet HHR, 2005-2006 Pontiac Pursuit (Canada), 2006-2007 Pontiac Solstice and 2007 Saturn Sky vehicles; and (2) 2008-2010 Pontiac Solstice and GS; 2008-2010 Saturn Sky; 2008-2010 Chevrolet Cobalt; and 2008-2011 Chevrolet HHR vehicles -- certain of the vehicles in this second category may have been repaired using a defective Ignition Switch that had been sold to dealers or aftermarket wholesalers. Statements about the Ignition Switch apply to the Subject Vehicles listed in the second category only to the extent that the Subject Vehicles were actually repaired using a defective Ignition Switch. (Part 573 Defect Notices filed by New GM with the NHTSA, dated February 7, 2014, February 24, 2014, and March 28, 2014, hereinafter **"Feb. 7 Notice", "Feb. 24 Notice", and "March 28 Notice"**)."

Stipulated Facts, at 3.

Designated Counsel for plaintiffs asserting economic loss claims (both Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs) confirmed the definitions in the Stipulated Facts in their brief on the 2014 Threshold Issues: "[c]apitalized terms not otherwise defined in this Opposition shall have the meanings ascribed to them in the New GM Brief or the [Stipulated

Facts] . . . ."[43]  Designated Counsel for Pre-Closing Accident Plaintiffs also filed a pleading with

the Bankruptcy Court on November 5, 2014, confirming that, for briefing the 2014 Threshold

Issues relating to the Pre-Closing Accident Motion to Enforce, the "terms 'Ignition Switches'

and 'Subject Vehicles' shall have the meanings ascribed in the [Stipulated Facts] . . . ."[44]  And,

the Bankruptcy Court relied on the Stipulated Facts when entering the April 2015 Decision/June

2015 Judgment.[45]

In connection with the appeal to the Second Circuit of the April 2015 Decision/June 2015

Judgment, Designated Counsel for Ignition Switch Pre-Closing Accident Plaintiffs filed a brief

which contained a glossary of terms ("**Second Circuit Appeal Glossary**") that included

definitions for "Ignition Switch" and "Subject Vehicles" consistent with that contained in the

Stipulated Facts.[46]  All of the parties to the appeal adopted the Second Circuit Appeal Glossary.

### b.    Ignition Switch Defect

The April 2015 Decision defined the term "Ignition Switch Defect" as "defects in

ignition switches that had been installed in Chevy Cobalts and HHRs, Pontiac G5s and Solstices,

---

[43] *Designated Counsel's Opposition to New GM's Motions for Enforcement of Sale Order and Injunction*, dated December 16, 2014 [ECF No. 13025], at 1 n. 3.

[44] *See Notice Of Submission Of Proposed Additional Agreed And Disputed Stipulations Of Fact In Connection With Court's Scheduling Order Regarding Motion Of General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce This Court's July 5, 2009 Sale Order And Injunction Against Plaintiffs In Pre-Closing Accident Lawsuits*, dated November 5, 2014 [ECF No. 12977], at 1.  Thereafter, Designated Counsel for the Pre-Closing Accident Plaintiffs adopted and incorporated by reference the Stipulated Facts (and the definitions contained therein) in its brief on the 2014 Threshold Issues.  *Responsive Brief of Designated Counsel for Pre-Closing Accident Plaintiffs on Threshold Issues Concerning New GM's Motions to Enforce the Sale Order and Injunction*, dated December 16, 2014 [ECF No. 13021], at 2.

[45] *See Motors Liquidation Co.*, 529 B.R. at 529 n.17 (Bankr. S.D.N.Y. 2015) ("The Court asked the parties to agree on stipulated facts, and they did so.  By analogy to motions for summary judgment, the Court has relied only on undisputed facts."); June 2015 Judgment, ¶ 15(a) ("New GM, Designated Counsel, the Groman Plaintiffs, the GUC Trust, and the GUC Trust Unitholders developed and submitted to the Court a set of agreed upon stipulated facts.  Such parties also submitted to the Bankruptcy Court certain disputed facts and exhibits.  The Court decided the Four Threshold Issues on the agreed upon stipulated facts only.").

[46] *See Brief for Ignition Switch Pre-Closing Accident Plaintiffs*, pp. viii-x [15-2844-bk, (2d Cir.) ECF No. 183].  The Ignition Switch Plaintiffs who were parties to the appeal adopted the definitions contained in the Second Circuit Appeal Glossary.  *See Brief for Ignition Switch Plaintiffs*, p. 1, n. 1 [15-2844-bk, (2d Cir.) ECF No. 235].

26

and Saturn Ions and Skys (the '**Ignition Switch Defect**'), going back to the 2005 model year."

*Motors Liquidation Co.*, 529 B.R. at 521.  The vehicles described are the Subject Vehicles.

Designated Counsel's opening appellate brief to Judge Furman in connection with the

appeal of the November 2015 Decision/December 2015 Judgment contained a footnote

explaining the definition of "Ignition Switch Defect":

> ***Following the terminology used throughout the Bankruptcy Court proceedings***,
> this brief uses the term "Ignition Switch Defect" to refer to the defect that gave
> rise to NHTSA Recall No. 14v047 in February and March of 2014, and referred to
> as the Delta Ignition Switch Defect in the Fourth Amended Consolidated
> Complaint filed before th[e District] Court on September 15, 2016 (ECF No. 3356
> in 14-md-2543).[47] (emphasis added).

In addition, the Second Circuit Appeal Glossary defined "Ignition Switch Defect" as

"[d]efective ignition switches installed in Subject Vehicles with below-specification torque that

resulted in unexpected moving stalls and associated loss of power that would disengage power

steering, power breaks, and the sensor that deploys airbags upon a collision[.]"

### c.    *Ignition Switch Plaintiffs*

The term Ignition Switch Plaintiffs has been consistently applied in these proceedings as

the name used to define plaintiffs in Subject Vehicles with the Ignition Switch Defect who are

seeking economic losses.  If a plaintiff does not own a Subject Vehicle with the Ignition Switch

Defect, that plaintiff is not an Ignition Switch Plaintiff.  Specifically:

- **June 2015 Judgment:** "**Ignition Switch Plaintiffs**" shall mean plaintiffs
  that have commenced a lawsuit against New GM asserting economic
  losses based on or arising from the Ignition Switch in the Subject Vehicles
  [each as defined in the Stipulated Facts];"

- **Designated Counsel's ISP No Strike Pleading:**  "As defined in the
  Judgment, the term "**Ignition Switch Plaintiffs**" shall mean plaintiffs who
  have commenced a lawsuit against New GM asserting economic losses

---

47 *Opening Brief of Appellants The Ignition Switch Plaintiffs and the Adams Plaintiffs, The Ignition Switch
Plaintiffs, et al. v. General Motors LLC (In re Motors Liquidation Co.)*, Nos. 1:16-cv-00098-JMF, 1:16-cv-
00501-JMF (S.D.N.Y. Nov. 14, 2016) (ECF No. 9) ("**DC Opening Appellate Brief**"), at 1 n.1.

based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the [Stipulated Facts]. ***Because the Subject Vehicles in the Judgment are only those vehicles involved in the February and March 2014 Recalls (Recall No. 14-V-171000), the term Ignition Switch Plaintiffs as used in this pleading includes only Plaintiffs who own or lease those vehicles, and does not include those Plaintiffs who own or lease other vehicles with defective ignition switches*** (made by both Old and New GM) that were recalled in June and July of 2014." (ISP No Strike Pleading, at 1 n.2 (emphasis added)).

- **December 2015 Judgment**:  "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014, filed on August 8, 2014 [ECF No. 12826], at 3)[.]"

- **Second Circuit Appeal Glossary:**  "Ignition Switch Plaintiffs" are "Plaintiffs asserting economic loss damage claims against New GM arising from the Ignition Switch Defect[.]"

- **Opinion:** Plaintiffs asserting "economic losses arising from the ignition switch defect in Old GM cars."

Moreover, in response to the September 2015 Scheduling Order, Designated Counsel for plaintiffs asserting economic loss claims filed pleadings in which they defined "Ignition Switch Plaintiffs" as "those plaintiffs who own or lease a vehicle with the Ignition Switch Defect involved in the February and March 2014 Recalls (Recall No. 14-V-047)."[48]

In its opening appellate brief to the District Court relating to the November 2015 Decision/December 2015 Judgment, Designated Counsel asserted that "[t]he Ignition Switch Plaintiffs are owners and lessees of cars manufactured by Old GM seeking to recover economic losses after the revelations that first Old GM and then New GM intentionally concealed the

---

[48] *Joinder of the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs to the Post-Closing Ignition Switch Accident Plaintiffs' Memorandum of Law with Respect to Punitive Damages Issue*, dated September 22, 2015 [ECF No. 13436], at 1 n. 1.

30074945

Ignition Switch Defect that caused cars to stall and disabled their airbags."[49]   As noted, Designated Counsel's definition of Ignition Switch Defect ties this group to the Subject Vehicles with the Ignition Switch Defect, which were the subject of the February/March 2014 recalls.

Moreover, in the FACC, plaintiffs therein (which include Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs) recognize that, in light of the Opinion, they can only seek to assert successor liability claims on behalf of Ignition Switch Plaintiffs.  Specifically, they allege that claims based on successor liability were only filed by "Old GM Delta Ignition Switch purchasers."  *See* FACC, [MDL 2543 ECF No. 3356] at 4.  The FACC defines "Delta Ignition Switch Vehicles" as "(the vehicles included in Recall No. 14v047: 2005-2010 Chevy Cobalt; 2006-2011 Chevy HHR; 2007-2010 Pontiac G5; 2007-2010 Saturn Sky; 2003-2007 Saturn ION; and 2006-2010 Pontiac Solstice)[.]" *Id.* at 2.  Again, these are the Subject Vehicles.  Moreover, the FACC confirms that "[t]his Complaint does not include successor liability claims for non-Delta Ignition Switch Vehicles . . . ." *Id.* at 3 n.3.

Finally, in their brief opposing *certiorari* to the Supreme Court, Designated Counsel for Ignition Switch Plaintiffs stated that the number of people affected by the Opinion is "only owners and lessees of approximately 1.7 million vehicles plagued by the ignition switch defect [that] were deprived of due process . . . ."[50]   The number 1.7 million corresponds to the approximate number of Subject Vehicles as of the 363 Sale.  Accordingly, this reference demonstrates Designated Counsel's understanding that plaintiffs in non-Subject Vehicles with other potential ignition switch issues were not Ignition Switch Plaintiffs as that term was used by the Second Circuit.

---

[49]   DC Opening Appellate Brief, at 1 (footnote omitted).

[50]   *Brief in Opposition of Respondents Ignition Switch Plaintiffs*, dated February 16, 2017, filed in *Gen. Motors LLC v. Elliott, et al.*; Case No. 16-764, at 7.

30074945

### d.   Non-Ignition Switch Plaintiffs

The term Non-Ignition Switch Plaintiffs, as applied in these proceedings, demonstrates

that plaintiffs not owning Subject Vehicles with the Ignition Switch Defect are not Ignition

Switch Plaintiffs.  Specifically:

- **June 2015 Judgment**: "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM vehicle."

- **December 2015 Judgment**: "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM Vehicle[.]"

- **Opinion:** plaintiffs seeking "damages arising from defects other than the ignition switch in Old GM cars." Moreover, the Second Circuit defined Non-Ignition Switch Plaintiffs as the Peller Plaintiffs.  *See Motors Liquidation Co.*, 829 F.3d at 151-53.  The only Non-Ignition Switch Plaintiffs to file notices of appeal with respect to the April 2015 Decision/June 2015 Judgment were the Peller Plaintiffs that are Non-Ignition Switch Plaintiffs.

### e.   Pre-Closing Accident Plaintiff and Post-Closing Accident Plaintiffs

The terms "Pre-Closing Accident Plaintiffs" and "Post-Closing Accident Plaintiffs" have

been consistently applied in these proceedings.   Specifically, for "Pre-Closing Accident

Plaintiffs:"

- **June 2015 Judgment**:  "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred prior to the closing of the 363 Sale;

- **December 2015 Judgment**: "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that first occurred prior to the closing of the 363 Sale.

30074945

The Bankruptcy Court did at times differentiate between different types of Pre-Closing Accident Plaintiffs.  For example, footnote 1 in the June 2015 Judgment contains the following defined terms:

- "**Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles; and

- "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of Pre-Closing Accident Plaintiffs that are not Ignition Switch Pre-Closing Accident Plaintiffs;

In addition, the Second Circuit Appeal Glossary defined "Ignition Switch Pre-Closing Accident Plaintiffs" as "Plaintiffs asserting personal injury and wrongful death claims against New GM for accidents related to the Ignition Switch Defect that occurred prior to the closing of the Sale."[51]

The December 2015 Judgment also distinguished between these different types of plaintiffs, specifically referencing when a ruling applied to an Ignition Switch Post-Closing Accident Plaintiff.  *See, e.g.,* December 2015 Judgment, ¶¶ 21, 23, 28, 30.  Obviously, if Post-Closing Accident Plaintiffs without the Ignition Switch Defect could assert the same claims as Post-Closing Accident Plaintiffs with the Ignition Switch Defect, then the language used by the Bankruptcy Court in the December 2015 Judgment would have so stated.  The clear intention of the Bankruptcy Court—which the plain language supports—was to limit the plaintiffs who could assert certain types of claims against New GM (*i.e.*, Independent Claims) to Ignition Switch Plaintiffs asserting economic loss or post-363 Sale personal injury claims.

Moreover, in the Late Claim Motion filed by Ignition Switch Pre-Closing Accident Plaintiffs, Designated Counsel confirmed: "Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the OSC [Order to Show Cause].  As defined in the June

---

51   Second Circuit Appeal Glossary, at viii.

30074945

2015 Judgment, 'Ignition Switch Pre-Closing Accident Plaintiffs' means the subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles (each term as defined in the [Stipulated Facts])."[52]

As demonstrated above, the definitions of the different categories of plaintiffs were consistently set forth (i) in the three motions to enforce filed by New GM, (ii) in the pleadings filed by each of the parties in connection with (a) the motions to enforce, (b) the supplemental proceedings after the April 2015 Decision/June 2015 Judgment, and (c) the briefs filed in connection with the appeals of the April 2015 Decision/June 2015 Judgment and the November 2015 Decision/December 2015 Judgment, (iii) by the Bankruptcy Court in the April 2015 Decision/June 2015 Judgment, the November 2015 Decision/December 2015 Judgment and other rulings in connection therewith, and (iv) by the Second Circuit in its Opinion. The defined terms, the arguments presented, and the rulings made in these pleadings, orders, decisions and judgments irrefutably establish which plaintiffs are Ignition Switch Plaintiffs and which are not.

In summary, an "Ignition Switch Plaintiff" is a plaintiff suing New GM for an "Ignition Switch Defect" in a "Subject Vehicle" (*i.e.,* a vehicle covered by one of the three recalls in February and March 2014, NHTSA Recall No. 14v047). In contrast, a "Non-Ignition Switch Plaintiff" is a plaintiff suing New GM for a defect in a vehicle without the Ignition Switch Defect (*i.e.*, a vehicle other than those covered by NHTSA Recall No. 14v047), even if the defect alleged relates to an ignition switch-related issue in that non-Subject Vehicle. In other words, the fact that a plaintiff alleges a defect with an ignition switch in a vehicle does not make that plaintiff an Ignition Switch Plaintiff unless the vehicle at issue is a Subject Vehicle that was part of the February/March 2014 Recalls.

---

[52] *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated December 22, 2016 [ECF No. 13807], at 1 n.1.

Pillars had a 2004 Pontiac Grand Am.  This is a Non-Subject Vehicle because it was not covered by NHTSA Recall No. 14v047.  Thus, Pillars is a Non-Ignition Switch Plaintiff, even if he alleges a defect with his ignition switch.  And because Pillars' accident occurred pre-363 Sale, he is a "Non-Ignition Switch Pre-Closing Accident Plaintiff."

## II.

**B.**     **Second Threshold Issue:**

    **1.**     **Non-Ignition Switch Plaintiffs' Independent Claims Against New GM Were Rejected by the Bankruptcy Court, and They Failed to Demonstrate a Due Process Violation Relating to the 363 Sale Notice**

       *a.*     *Res Judicata Bars Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs From Collaterally Attacking the November 2015 Decision/December 2015 Judgment*

The November 2015 Decision/December 2015 Judgment, which was not reviewed as part of the Opinion, held, *inter alia*, that (a) Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs had not alleged valid Independent Claims;[53] (b) Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs had not demonstrated a due process violation relating to the Sale Order;[54] and (c) Non-Ignition Switch Post-Closing Accident Plaintiffs could not seek punitive damages based on Old GM conduct, which necessarily precluded such damages for a successor liability claim.[55]  It is black-letter law that, absent rare circumstances not applicable here, litigants and those in privity with them are bound by final judgments.  "Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (citation omitted); *see also,*

---

[53]   *See* December 2015 Judgment, ¶ 14.

[54]   *Motors Liquidation Co.*, 541 B.R. at 130 n.70.

[55]   *See* December 2015 Judgment, ¶ 6.

*Giannone v. York Tape & Label, Inc.,* 548 F.3d 191, 194 (2d Cir. 2008) (*per curiam*). Accordingly, once the rulings in the November 2015 Decision/December 2015 Judgment became final, as they have, the parties that were subject to the Judgment were bound by them.

There is no question that Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs are among those bound by the November 2015 Decision/December 2015 Judgment. Designated Counsel for Non-Ignition Switch Plaintiffs actively participated in all bankruptcy court proceedings through the issuance of the December 2015 Judgment.[56] As discussed above, the Bankruptcy Court entered a September 2015 Scheduling Order stating that all plaintiffs would be bound by the Bankruptcy Court's rulings (which was also included in a cover note that went to all plaintiffs served with the September 2015 Scheduling Order).[57] New GM then served approximately 150 to 200 plaintiffs (including many Non-Ignition Switch Post-Closing Accident Plaintiffs) involved in lawsuits against New GM with the September 2015 Scheduling Order. Those plaintiffs were put on notice of the issues being addressed by the Bankruptcy Court at that time, and they had the opportunity to participate in the proceedings.

After the December 2015 Judgment, neither the Non-Ignition Switch Plaintiffs (represented by Designated Counsel) nor the Non-Ignition Switch Post-Closing Accident Plaintiffs appealed the relevant rulings in that Judgment. Non-Ignition Switch Plaintiffs are not entitled simply to ignore the proceedings and Judgment, fail to appeal, and then attempt to avoid the impact of the Judgment through a collateral attack. *See Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 153-54 (2009).

Finally, although the focus for this Threshold Issue is on Non-Ignition Switch Plaintiffs, it is significant that no other litigant involved in the proceedings that resulted in the November

---

[56] *See* Subsection E in the Factual and Legal Background Section, *supra.*

[57] *Id.*

2015 Decision/December 2015 Judgment appealed the rulings therein referenced in this section either. That includes both sets of Designated Counsel or Peller. Moreover, the fact that both sets of Designated Counsel filed an appeal of the November 2015 Decision/December 2015 Judgment on an unrelated issue shows that their failure to appeal the rulings discussed in this section was not mere oversight.[58]

> ### b. The November 2015 Decision/December 2015 Judgment Should Also Be Binding On Owners of Non-Subject Vehicles That Did Not Receive the September 2015 Scheduling Order Based on the Law of the Case Doctrine

Non-Ignition Switch Post-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs who were not served with the September 2015 Scheduling Order should also be bound by the November 2015 Decision/December 2015 Judgment unless they can show that their issues are somehow different than what the Bankruptcy Court decided.

This issue was recently addressed by this Court in an adversary proceeding in the *Old GM* bankruptcy case involving an avoidance action to recover transfers of $1.5 billion to holders of interests in a term loan to Old GM. *See Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A., et al. (In re Motors Liquidation Co.)*, 552 B.R. 253 (Bankr. S.D.N.Y. 2016) ("**Term Loan Litigation**"). In that case, this Court held that the "law of the case" doctrine applied to interlocutory orders extending time to serve the amended summons and complaint on the defendants, even though the issues in "Phase I" of the litigation were decided by the Second Circuit without their participation and at a time when they were unserved. *Id.* at 273-76. The unserved defendants were no worse off than they would have been if Phase I had been decided in completely unrelated litigation, and the "law of the case" bound the Bankruptcy Court to the extent that the unserved defendants raised the same legal issues that were already

---

[58] As noted, the issue that was appealed is whether certain plaintiffs' failure to timely file proofs of claim against Old GM was due to a breach of a an alleged duty/obligation owed to them by New GM.

decided in completely unrelated litigation between different parties. *Id.* at 275. It was significant that the defendants in the adversary proceeding had not raised any legal or factual issues that could have led to a different result in Phase I of the litigation. *Id.* at 276. The same legal principle was cited in *In re Integra Realty Res., Inc.* 354 F.3d 1246, 1258-61 (10th Cir 2004) (holding that previous ruling regarding the notice requirements for a defendant class certified by a bankruptcy court were binding on members, who later asserted due process objections to the adequacy of the notice, and did not add significantly to the arguments previously advanced by other members of the class); *In re J.A, Jones, Inc.*, 416 B.R. 202, 206-07 (Bankr. W.D.N.C. 2009) (holding that prior decision regarding the type of notice unknown creditors were entitled to receive was the law of the case as to plaintiffs who claim to have received inadequate notice, and therefore they would be bound by the terms of the debtors' plan).

Here, the same result should apply with respect to Non-Ignition Switch Post-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs who did not receive the September 2015 Scheduling Order.[59] There is no reason for the Bankruptcy Court to continue to have to rule on the same issue. Accordingly, the "law of the case" principles should apply unless the un-served party can show otherwise. This Court should remain the gatekeeper to review claims being asserted against New GM related to Old GM vehicles to ensure that plaintiffs are not improperly attempting to assert claims that are barred by the Sale Order and the Bankruptcy Court's other rulings.

As part of the June 2015 Judgment, the Bankruptcy Court dealt with this issue in a practical way. Since plaintiffs continued to file lawsuits against New GM notwithstanding the Bankruptcy Court's rulings providing otherwise, a procedure was put in place that provided for

---

[59] Many of the plaintiffs that fall into this category decided to sue New GM without coming to this Court first, even though their actions clearly violated the November 2015 Decision/December 2015 Judgment.

30074945

New GM serving the Court's June 2015 Judgment on any plaintiff that it believed was violating the Court's ruling, and they would have the opportunity to file a pleading raising new arguments with the Court as to why they should not be bound by the June 2015 Judgment. Their failure to do so would make the June 2015 Judgment fully binding on them. As a practical matter, that procedure can be continued here as part of the Court's gatekeeping role to ensure compliance with its Orders.

    2.    **The November 2015 Decision/December 2015 Judgment is binding on all Non-Ignition Switch Plaintiffs**

        *a.    Only the Peller Plaintiffs Appealed the April 2015 Decision/June 2015 Judgment; Thus, All Other Non-Ignition Switch Plaintiffs Are Not Entitled To Rely On The Second Circuit's Ruling*

The general rule (applicable here) is that a non-appealing party will not benefit from a reversal or modification of a judgment in favor of an appealing party. *Hegger v. Green*, 646 F.2d 22, 30 (2d Cir. 1981); *see also Bhd. of Maint. of Way Emps. v. St. Johnsbury & Lamoille Cty. R.R./M.P.S. Assocs., Inc.*, 806 F.2d 14, 15 (2d Cir. 1986) ("The well-established rule is that the failure of an appellee to file a notice of appeal from the portions of the judgment adverse to him precludes the alteration of the judgment in his favor, though reversal of the judgment as applied to the appealing party may leave the final disposition of the case internally inconsistent. The same is true when the plaintiff prevails against one defendant and his claim against another is dismissed, and the unsuccessful defendant appeals. If the appellee wishes to upset the dismissal he must file a timely notice of appeal.") (*quoting* 9 MOORE'S FED. PRACTICE ¶ 204.11[4] at 4–54 (1986)); *In re Taylor*, 655 F.3d 274, 287 (3d Cir. 2011) ("Ordinarily, of course, a party which does not appeal a decision by a district court cannot receive relief with respect to that decision."); *cf. Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 400–01 (1981) (declining to find "an exception to the finality of a party's failure to appeal," especially where party "made a calculated choice to forgo their appeals"); *Ackermann v. U.S.* , 340 U.S.

193, 198 (1950) (petitioners not entitled to relief from judgment when they made a "free, calculated, deliberate choic[e]" not to appeal).

This tenet is similar to the rule that a party who appeals but does not preserve an issue in its briefing (or in the litigation below) forfeits the right to be heard on the issue. *See, e.g., In re Johns-Manville Corp*. 600 F.3d 135,147 (2d Cir. 2010); *Norton v Sam's Club*, 145 F.3d 114, 117-118 (2d Cir 1998). In *Manville*, for example, the Second Circuit considered whether two plaintiffs could press a due process argument about their inclusion in a court order that the Supreme Court had held was *res judicata* and therefore binding on all persons who were parties or privies to the order. The Second Circuit declined to consider one of the party's due process argument because it "failed to raise [the] argument in their initial appeals" so the issue was not properly preserved. *Id*. at 147. The other party had consistently pressed its due process argument and it was considered by the Second Circuit who ruled in its favor. That same result should apply here for non-appealing parties. They cannot claim the benefit of a ruling that they did not appeal.

As discussed above, the notices of appeal, statement of issues, and briefs filed in the Second Circuit establish that the only Non-Ignition Switch Plaintiffs before the Second Circuit were the Peller Plaintiffs. All other Non-Ignition Switch Plaintiffs (including those represented by Lead Counsel in MDL 2543) elected not to appeal the April 2015 Decision/June 2015 Judgment. Those non-appellants should not be permitted to invoke the Second Circuit's ruling for their benefit, including the references in the Opinion to Independent Claims.

Also as discussed above, the context of how the Second Circuit referred to Non-Ignition Switch Plaintiffs and the way it defined "Non-Ignition Switch Plaintiffs" confirms that the Court believed the Peller Plaintiffs to be the only Non-Ignition Switch Plaintiffs before it. And, as noted, Peller also represented to the District Court, as well as the Second Circuit, that he was the

38

only one representing Non-Ignition Switch Plaintiffs in the Second Circuit.  Thus, the remand relief provided by the Second Circuit was limited to the Peller Plaintiffs.

In sum, Non-Ignition Switch Plaintiffs (other than the Peller Plaintiffs) cannot seek the benefits of the rulings in the Opinion.  Further, all Non-Ignition Switch Plaintiffs are bound by the rulings by the Bankruptcy Court in the November 2015 Decision/December 2015 Judgment (including in connection with Independent Claims) because they did not appeal that ruling.

> **b.      *Non-Ignition Switch Plaintiffs Have Received The Opportunity Referred To In The Opinion To Establish A Due Process Violation Relating To The 363 Sale Notice; They Failed To Do So And The November 2015 Decision/December 2015 Judgment, Which Was Never Appealed For That Ruling, Is Now Binding On Them***

Even if the Second Circuit's Opinion applied to Non-Ignition Switch Plaintiffs other than the Peller Plaintiffs, those Non-Ignition Switch Plaintiffs already were given the opportunity by Judge Gerber in the November 2015 Decision/December 2015 Judgment proceedings to litigate whether they had been deprived of due process.  No Non-Ignition Switch Plaintiff (including those represented by Designated Counsel and Peller) submitted any evidence that they had been deprived of due process relating to the 363 Sale notice.  Judge Gerber ruled accordingly that the Non-Ignition Switch Plaintiffs had not established a due process violation and therefore remained bound by the Sale Order.   No plaintiff appealed the November 2015 Decision/December 2015 Judgment on this issue.  Thus, even if the Opinion applied to all Non-Ignition Switch Plaintiffs, those plaintiffs have already had their day in court to establish a due process violation; they failed to do so, and did not appeal the judgment against them on this point.

As noted, during the August 31, 2015 status conference, Judge Gerber raised the due process issue as it related to Non-Ignition Switch Plaintiffs, remarking that this was a "big issue."  Designated Counsel acknowledged that due process was an important issue, stating "[t]o

the extent that that remains an issue" they would "tee the matter up" for *prompt* determination.

8/31/15 Hr'g Tr., at 81:22-82:2.   However, they never did that.  It was evident to the Bankruptcy

Court that Designated Counsel's inaction reflected their view that due process concerns did "not

remain an issue" for Non-Ignition Switch Plaintiffs.  That is why the Bankruptcy Court ruled in

the November 2015 Decision that Non-Ignition Switch Plaintiffs failed to present any evidence

of a due process violation relating to the 363 Sale notice when given the opportunity to do so.

*Motors Liquidation Co.*, 541 B.R. at 130 n.70 (finding Non-Ignition Switch Plaintiffs cannot

assert Independent Claims; they "could have tried to show the Court that they had 'known

claims' and were denied due process back in 2009, but they have not done so.").

      "A denial of due process is for the most part treated like any other legal error, and is thus

waived if not pressed."  *Matter of Edwards*, 962 F.2d 641, 644 (7th Cir. 1992); *see also Manville*

*IV*, 600 F.3d at 147 (finding that plaintiffs forfeited their argument that enforcing a bankruptcy

court's order against them violated due process when they failed to raise it in their direct appeal

of the district court order affirming the bankruptcy decision).  Courts have found that procedural

due process arguments were waived where a party had an opportunity to present them to the

bankruptcy court but failed to do so.  *See, e.g.*, *Matter of Fabric Tree*, 426 F. Supp. 872, 878

(S.D.N.Y. 1977) (holding that, where party in interest appeared at confirmation hearing, objected

on a particular ground, and then participated in a hearing by calling witnesses, that party "waived

its due process objection to the hearing below by failing to object"); *In re Optical Techs.*, 425

F.3d 1294, 1301 (11th Cir. 2005) (finding that where creditors were served with copies of the

confirmation plan and the disclosure statement, but failed to object to the confirmation, their

objections to the terms of the confirmation plan were waived); *In re Ferrante*, 195 B.R. 990, 993

(Bankr. N.D.N.Y. 1996) (holding that creditor in a Chapter 13 bankruptcy was bound by the

confirmation plan when it received notice of the hearing on the plan but chose not to file an

30074945

objection to the treatment of its claim); *In re Athanasios III, LLC,* No. 2:11CV994 DAK, 2013 WL 786445, at *6 (D. Utah Mar. 1, 2013) (even if creditors had a property interest that triggered a due process right, those rights were not violated because, although the creditors did not receive actual notice of the initial motion or order, they did receive the trustee's motion for reconsideration, yet none of them joined or filed their own motions asserting a due process violation).

Here, the Non-Ignition Switch Plaintiffs' failure to raise the due process issue relating to the 363 Sale notice in the Bankruptcy Court has consequences. Simply put, Non-Ignition Switch Plaintiffs waived whatever due process arguments they had related to the 363 Sale notice.

### 3. Many Non-Ignition Switch Plaintiffs are Improperly Asserting Independent Claims that are Really Disguised Retained Liabilities

The so-called "Independent Claims" being asserted against New GM by Non-Ignition Switch Plaintiffs are, in many cases, simply dressed up claims for Retained Liabilities of Old GM. They are often based on conduct or duties of Old GM that New GM did not assume liability for in the Sale Agreement. For example,[60] plaintiffs in the FACC assert an "Independent Claim" based on the recall covenant in Section 6.15 of the Sale Agreement on the theory that they are third-party beneficiaries of that recall covenant. *See, e.g.,* FACC, ¶¶ 443, 454. However, the Sale Agreement (Section 9.11) provides for no third-party-beneficiary rights and, thus, a covenant to the U.S. government set forth in the Sale Agreement cannot form the predicate for plaintiffs' claims against New GM.[61] In addition, claims based on Sale Agreement obligations can only be either Assumed Liabilities of New GM or Retained Liabilities of Old

---

[60] Because of page limitations, this brief will not cite to every situation where Non-Ignition Switch Plaintiffs and Post-Closing Accident Plaintiffs have violated Bankruptcy Court rulings. Rather, it will present representative cases that will allow the Court to design or articulate appropriate guidelines for such plaintiffs to follow.

[61] The recall covenant was not included in the section dealing with Assumed Liabilities, and is thus not an exception to the general rule set forth in the Sale Order that New GM acquired assets free and clear of all Old GM obligations/duties and Old GM conduct. *See Motors Liquidation Co.,* 541 B.R. at 129, n.67.

41

GM. They cannot be Independent Claims which must be premised on a new obligation/duty incurred by New GM to a vehicle owner *after* the 363 Sale.

The same problem is present with regard to economic loss claims based on an alleged duty to warn, under state law, after the 363 Sale. Any duty to warn for an economic loss claim that Old GM had under state law was not assumed by New GM and therefore remained a Retained Liability of Old GM. Because New GM did not assume Old GM's alleged duty to warn and generally did not enter into new relationships with Old GM vehicle owners after the 363 Sale, the duty-to-warn claims in economic loss cases now being asserted against New GM as so-called "Independent Claims" are really nothing more than proscribed successor liability claims dressed up to look like something else. *See Motors Liquidation Co.*, 529 B.R. at 528 ("It also is plain that any court analyzing claims that are supposedly against New GM only must be extraordinarily careful to ensure that they are not in substance successor liability claims, 'dressed up to look like something else.'") (quoting *Burton v. Chrysler Group, LLC (In re Old Carco)*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013). In *Burton*, Judge Bernstein stated that an alleged breach of a duty to warn by the asset purchaser, which did not manufacture or sell the vehicle, "is a typical successor liability case dressed up to look like something else, and is prohibited by the plain language of the bankruptcy court's Order.") (internal citations omitted)). The same conclusion was reached in *Holland v. FCA US LLC*, Case No. 1:15-cv-121, 2015 WL 7196197, at *4 (N.D. Ohio Nov. 16, 2015), *aff'd*, 656 Fed. Appx. 232 (6th Cir. 2016) ("Plaintiffs have failed to allege a relationship with FCA which would create a duty on the part of FCA to warn Plaintiffs of the alleged defect or pay for repairs.").

42

One example of this flawed approach is the *Pilgrim* Lawsuit.[62]  In that case, the plaintiffs are seeking economic losses against New GM based on an alleged defect in Old GM-manufactured Chevrolet Corvettes, non-Subject Vehicles.  The Pilgrim plaintiffs assert that New GM knew or should have known of the defects and New GM failed to warn of the defective conditions of their vehicles.  *See* Amended Pilgrim Complaint, ¶ 127; *see also* ¶ 312 ("The class vehicles are not adequately labeled because the labeling fails to disclose the defects. New GM failed to warn about the defects in the class vehicles.").[63]  As noted, under the Sale Agreement, New GM did not assume Old GM's duty to warn after the 363 Sale.  It bought assets free and clear of this duty.  Because New GM did not manufacture the Old GM vehicles and did not sell them to plaintiffs, it had no separate duty to warn Old GM vehicle owners.  Also, the duty to warn claims are based in part on Old GM's pre-petition conduct, disqualifying these claims from being Independent Claims under the Opinion.[64]  Further, since New GM did not have a new direct relationship with the *Pilgrim* plaintiffs, those plaintiffs are alleging a successor liability dressed up to look like something else.

Plaintiffs like Pilgrim often point to the imputation doctrine and argue that New GM had Old GM's knowledge immediately after the 363 Sale.  But knowledge must be linked to a new duty that New GM incurred based on its volitional acts with the Old GM vehicle owner after the 363 Sale.  Without the linkage of the newly incurred obligation/duty and the alleged imputed knowledge, a viable Independent Claim does not exist.[65]

---

[62]  *See Pilgrim et al. v. Gen. Motors LLC, et al.*, Case No. 15-08047 (C.D. Cal.) ("**Pilgrim Lawsuit**").  A copy of the amended complaint ("**Amended Pilgrim Complaint**") filed in the Pilgrim Lawsuit is attached hereto as **Exhibit "C."**  The Pilgrim Lawsuit is the subject of a motion to enforce filed by New GM in January 2016 [ECF No. 13584] ("**Pilgrim Motion to Enforce**"), which remains pending.

[63]  There was never a recall for the alleged defect claimed by the Pilgrim plaintiffs.

[64]  *Motors Liquidation Co.*, 829 F.3d at 157.

[65]  The Pilgrim Lawsuit is brought on behalf of used car owners as well.  Accordingly, the discussion in Point III, *infra*, is equally applicable to the Pilgrim Lawsuit. In particular, since no-Subject Vehicles with the Ignition

The *Pilgrim* Amended Complaint, like many other lawsuits, purposefully blurs the lines between Old GM and New GM in order to assert a Retained Liability under the guise of an Independent Claim.  By way of further illustration, the Amended Pilgrim Complaint asserts causes of action based on alleged violations of RICO and state consumer protection statutes, and also on unjust enrichment, fraudulent concealment and third party beneficiary theories of recovery.  These counts are not directed at any specific plaintiff (*i.e.*, an original Old GM vehicle owner or a used car owner or a New GM vehicle owner), but are asserted on behalf of classes of plaintiffs that include all types of plaintiffs.  In this way, the *Pilgrim* plaintiffs make general allegations for all plaintiffs against a generic "GM," and often times the allegations relate to "point of vehicle sale conduct" by Old GM to the original purchaser (which is a Retained Liability of Old GM).  Thus, the *Pilgrim* plaintiffs allege that:

(a)    "GM widely advertised the 7.0 liter V8 engine which was used in the Chevrolet Corvette 427 and Chevrolet Corvette Z06 vehicle from 2006 through 2014 as being of the highest quality and durability" (Amended Pilgrim Complaint, ¶ 20).

Generally speaking, New GM did not specifically advertise an Old GM vehicle. And, it certainly did not do so before the 363 Sale.

(b)    "There was unequal bargaining power between *GM* and the plaintiffs and the other class members as, at all times of purchase and lease, plaintiffs and the other class members had no other option for purchasing warranty coverage other than directly from GM." *Id.* ¶ 111.

New GM did not sell Old GM vehicles.

(c)    "GM has designed, manufactured, sold or otherwise placed in the stream of commerce class vehicles which are defective . . ." *Id*. at ¶ 118

New GM did not design, manufacture, sell or otherwise place in the stream of commerce Old GM vehicles purchased by used car owners.

---

Switch Defect are involved in the Pilgrim Lawsuit, these plaintiffs are not Used Car Purchasers as defined by the Opinion.

(d)     The *Pilgrim* plaintiffs also assert third-party beneficiary claims without ever explaining how they are third party beneficiaries under the Sale Agreement that contains a "no third party beneficiary" provision.

New GM is therefore asking this Court to assist in ruling on whether claims, like those in *Pilgrim*, are valid Independent Claims, relying on the Court's jurisdiction to enforce the Sale Order.

Similarly, the lawsuit commenced by Lorraine Manuel in the United States District Court for the Southern District of New York is another good example of an ongoing case that violates many of the Bankruptcy Court's rulings ("**Manuel Lawsuit**").[66]  This case concerns a post-363 Sale accident involving a 2004 Cadillac CTS, which is a non-Subject Vehicle.  The complaint in the Manuel Lawsuit: (i) seeks to assert claims against New GM as the mere continuation of Old GM (Manuel Complaint, ¶¶ 1, 49-54)—such claims are clearly barred by the Sale Order and the November 2015 Decision/December 2015 Judgment;[67] (ii) asserts that "New GM expressly assumed obligations to comply with federal and state certification, reporting and recall requirements," and quotes from Section 6.15(a) of the Sale Agreement (Manuel Complaint, ¶ 9)—New GM did not "assume" these liabilities; it covenanted to the U.S. government to comply with Old GM's recall obligations; (iii) makes numerous allegations regarding the February/March 2014 recalls (even though the 2004 Cadillac CTS was not subject to that recall), in an attempt to blur the lines between the rights given to Ignition Switch Post-Closing Accident Plaintiffs, and those given to Manuel who did not own a Subject Vehicle; (iv) asserts a claim based on fraudulent concealment, even though, under the November 2015 Decision/December 2015 Judgment such claims were not Assumed Liabilities of New GM but Retained Liabilities of

---

[66]  *Manuel v. Gen. Motors LLC*, Case No. 16-2755 (S.D.N.Y.).  The Manual Lawsuit was transferred to and consolidated with MDL 2543.  A copy of the complaint ("**Manuel Complaint**") in the Manual Lawsuit is annexed hereto as **Exhibit "D."**

[67]  *See* Sale Order, ¶¶ 6, 7, 10, 46; December 2015 Judgment, ¶ 16.

Old GM; and (v) seeks punitive damages based on Old GM conduct even though such damages cannot be sought against New GM pursuant to the November 2015 Decision/December 2015 Judgment.  New GM is asking for the Court to issue a ruling that (a) Non-Ignition Switch Plaintiffs cannot assert claims against New GM as the mere continuation of Old GM, (b) directs plaintiffs to not blur the lines between Old GM and New GM, (c) Non-Ignition Switch Plaintiffs cannot assert Independent Claims, like those asserted in the Manuel Lawsuit against New GM, and (d) plaintiffs cannot seek punitive damages against New GM based on claims arising from Old GM vehicles.

Another example of how Non-Ignition Switch Post-Closing Accident Plaintiffs have flouted the Bankruptcy Court's rulings is the lawsuit commenced by Bernard Pitterman ("**Pitterman Lawsuit**"),[68] which concerns a post-363 Sale accident involving a 2004 Chevrolet Suburban, a non-Subject Vehicle.   Under the November 2015 Decision/December 2015 Judgment, Non-Ignition Switch Post-Closing Accident Plaintiffs cannot bring self-proclaimed Independent Claims which were of the type rejected as not being valid Independent Claims. Pitterman is asserting a failure to warn as an Independent Claim, without showing a new and independent relationship established after the 363 Sale between him and New GM.  Pitterman's basic allegation stems from Old GM conduct—a May 25, 2006 Technical Services Bulletin *issued by Old GM* that allegedly addressed the issue with the vehicle.  Pitterman then asserts that "[d]espite this knowledge," Old GM and New GM "took no steps to directly notify and/or warn owners or the public of these defects."   Pitterman Amended Complaint, ¶¶ 25-26. Pitterman alleges no post-363 Sale interaction between New GM and himself to establish a new

---

[68] *Pitterman v. Gen. Motors LLC*, Case No. 3:14-CV-00967-JCH (D. Conn).  A copy of the complaint ("**Pitterman Complaint**") in the Pitterman Lawsuit is annexed hereto as **Exhibit "E."**  The Pitterman Lawsuit was subject to a motion to enforce that was filed by New GM with the Bankruptcy Court in June 2016, which remains pending.

obligation/duty to him.  Essentially, Pitterman is asserting an alleged Old GM duty to warn claim against a non-manufacturer, non-seller of his vehicle.  That is not an Independent Claim.

In sum, while Non-Ignition Switch Plaintiffs have argued that it is unfair that they are deprived of asserting Independent Claims against New GM, the reality is that many of the claims that Non-Ignition Switch Plaintiffs have asserted against New GM are Retained Liabilities of Old GM.  In most situations, Non-Ignition Switch Plaintiffs have had no independent post-363 Sale interaction with New GM, and the alleged New GM breach of obligation/duty generally relates to an Old GM obligation or pre-petition Old GM conduct that New GM left behind with Old GM pursuant to the unambiguous terms of the Sale Order and Sale Agreement.

### 4.    The Bankruptcy Court Should Continue to Enforce Its Rulings as a Gatekeeper Against Plaintiffs Who are Violating Them

After the entry of the November 2015 Decision/December 2015 Judgment, there were a number of new cases commenced against New GM involving Old GM vehicles, many of which violated the Bankruptcy Court's prior rulings.  While New GM tried to explain the Bankruptcy Court's rulings to counsel for plaintiffs, and many amended their pleadings to correct violations, some refused to do so.  Accordingly, in all circumstances, this Court should continue to function as the gatekeeper for all violations of the Sale Order and the Bankruptcy Court's other rulings. That is the only way there can be consistency in the interpretation of this Court's orders. Anything else is an invitation to plaintiffs to forum shop for a different result.  Moreover, this Court's exclusive retention of jurisdiction relating to the Sale Order is protection that New GM bargained for when it agreed to purchase assets pursuant to the Sale Order.  In the Opinion, the Second Circuit affirmed that the Bankruptcy Court has subject matter jurisdiction to interpret and enforce its prior orders. *Motors Liquidation Co.*, 829 F.3d at 153-54.  This Court should continue to exercise that jurisdiction so that plaintiffs are not permitted to continue to flout the Bankruptcy Court's prior rulings.

47

**III.**

**C.**    <u>**Third Threshold Issue**</u>:

**Used Car Owners Can Only Assert Claims Against New GM Coextensive With Claims that The Original Purchaser of the Old GM Vehicle Had Against New GM**

**1.**    **The Second Circuit's Opinion Applies Only To "Used Car Purchasers" Of Subject Vehicles with the Ignition Switch Defect; Other Used Car Owners of <u>Old GM Vehicles Remain Bound By the Sale Order</u>**

The Second Circuit's Opinion regarding used cars is limited to a category of plaintiffs called "Used Car Purchasers," who are used car owners of Subject Vehicles with the Ignition Switch Defect who assert economic loss claims against New GM and who purchased their vehicles after the 363 Sale.[69]  All other types of used car purchasers are bound by the Sale Order and the 2015 Bankruptcy Court orders because the Second Circuit did not disturb the Bankruptcy Court's holding with respect to them.[70]  The Bankruptcy Court's decision as to all used car owners, except for Used Car Purchasers, is therefore law of the case.  *See, e.g., Am. Hotel Intern. Group, Inc. v. OneBeacon Ins. Co.*, 611 F.Supp.2d 373, 378-79 (S.D.N.Y. 2009) (citing *In re PCH Assocs.*, 949 F.2d 585, 593 (2d Cir. 1991), 1B Moore's Federal Practice ¶ 0.404[4.–3], at 131) ("However, if the trial court's decisions were not ruled on by the higher court, the trial court's decision remains the law of the case.  This means, that if an appellate court reviewed a trial court's decision, but did not address an issue that the trial court decided, the trial court's decision remains the law of the case[.]").

---

[69]  The precise language from the Opinion is as follows: "Included within the Ignition Switch Plaintiffs were individuals who had purchased Old GM cars secondhand after the § 363 sale closed ('Used Car Purchasers')." *Motors Liquidation Co.*, 829 F.3d at 151.

[70]  Under the Opinion, Ignition Switch Plaintiffs were not bound by the Sale Order and could sue New GM on a successor liability theory.  After the Opinion, Designated Counsel amended their consolidated complaint in MDL 2543 to provide for Ignition Switch Plaintiffs bringing successor liability claims.  Significantly, however, Used Car Purchasers were not part of the group asserting successor liability claims in MDL 2543, presumably because they had no relationship with Old GM as of the time of the 363 Sale.  The Opinion did not modify the Sale Order, so it did not change what was a Retained Liability of Old GM and what was an Assumed Liability of New GM under the Sale Agreement.

30074945

**2.      Used Car Owners Do Not Acquire Claims Any Greater Than Those Held By the Original Owners Who Sold Them Their Vehicles**

The Sale Order affects the type of claim available against New GM that a used car owner (as assignee) obtains from the original vehicle owner (as assignor).  This was the issue that the Bankruptcy Court addressed.  In its April 2015 Decision/June 2015 Judgment, the Bankruptcy Court examined the ***substance of the claim*** a used car owner (including a Used Car Purchaser) would have against New GM when it purchased the Old GM vehicle from the original owner – ***i.e., what type of claim and what bundle of rights it would acquire from the original owner by purchasing an Old GM vehicle from that owner.***  Judge Gerber properly found that if the predicate of the used car owner's claim against New GM was based on rights acquired from the original Old GM vehicle owner, then the used car owner could have no greater rights against New GM than the original Old GM vehicle owner had at the time of the used car transaction.[71] And if the original Old GM vehicle owner's claim at the time of the used car transaction was a Retained Liability as defined in the Sale Agreement, then so too would the used car owner's claim; the used car owner would not suddenly be entitled to a greater claim against New GM simply because there happened to be a post-363 Sale vehicle transfer between two third parties unaffiliated with New GM.  Accordingly, while the Second Circuit held that the Sale Order does not apply to a Used Car Purchaser personally, the Sale Order ***does*** define the scope and type of claim held by the original purchaser, and it is that claim that is transferred to the Used Car Purchaser.  In these circumstances, the Sale Order derivatively affects the type of claim that even a Used Car Purchaser (or any used car owner) can assert against New GM.

The Second Circuit did not overrule and should not be interpreted as overruling the Bankruptcy Court on this discrete and separate issue because the Bankruptcy Court's ruling was

---

[71]   *Motors Liquidation Co.*, 529 B.R. at 571-72.

based on well recognized legal authority.[72]    Judge Gerber held that "[w]ith exceptions not applicable here (such as holders in due course of negotiable instruments), the successor in interest to a person or entity cannot acquire greater rights than his, her, or its transferor."[73]   Judge Gerber found that:

> The Used Car Purchasers' contention that they deserve better treatment than other GM vehicle owners is also illogical and unfair. As New GM argues, with considerable force, "an owner of an Old GM vehicle should not be able to 'end-run' the applicability of the Sale Order and Injunction by merely selling that vehicle after the closing of the 363 Sale ... if the Sale Order and Injunction would have applied to the original owner who purchased the vehicle prior to the 363 Sale, it equally applies to the current owner who purchased the vehicle after the 363 Sale." There is no basis in logic or fairness for a different result.

*Motors Liquidation Co.*, 529 B.R. at 572.

This issue is illustrated by the facts relating to plaintiff Cesco in the FACC, who purchased a 2005 Buick Lacrosse from her aunt's estate in 2011.[74]   Her aunt was a Non-Ignition Switch Plaintiff who was barred by the Sale Order from asserting an economic loss claim against New GM.    Plaintiff Cesco could acquire no greater rights against New GM than her deceased aunt had as of 2011.    Thus, while plaintiff Cesco was not directly barred by the Sale Order from asserting a claim against New GM (which is what the Second Circuit ruled), as a practical matter, she had no claim against New GM because her aunt had no claim against New GM.[75]

---

[72]  The Bankruptcy Court's ruling was based on cases such as *In re KB Toys, Inc.,* 736 F.3d 247, 252–54 (3rd Cir. 2013) ("KB Toys") (a claim that was subject to disallowance in the hands of the original claimant as a preferential transfer was similarly disallowable in the hands of a subsequent transferee), and *In re Metiom, Inc.,* 301 B.R. 634 (Bankr. S.D.N.Y. 2003) (the disallowance of a claim under Section 502(d) of the Bankruptcy Code traveled with the claim to the purchaser's assignee because of the established rule that the assignee of a non-negotiable instrument is subject to all of the equities and burdens that attach to the property assigned); *see also, Tital Real Estate Ventures, LLC v. MJCC Realty L.P. (In re Flanagan),* 415 B.R. 29, 42 (D. Conn. 2009) ("In acquiring the estate's rights and interests . . . Titan acquired no more and no less than whatever rights and interests to MJCC and its properties the estate possessed at the time of the assignment.").

[73]  *Motors Liquidation Co.*, 529 B.R. at 571.

[74]  *See* FACC, ¶ 126.

[75]  Note that in the context of a Used Car Purchaser from an original owner that was an Ignition Switch Plaintiff, the Sale Order would not apply to the Used Car Purchaser because, according to the Opinion, the original owner was not bound by the Sale Order because of a due process violation relating to the 363 Sale notice.

The lawsuit commenced by Marlene S. Karu is also illustrative of the issue.[76]  Karu is a putative class action against Takata Corporation and New GM based on alleged defects with Takata airbags installed in certain Old GM and New GM vehicles.  According to the Karu Complaint, Ms. Karu is the owner of a 2008 Saab 9-3 (a non-Subject Vehicle) which she purchased used on or about September 2010.  Karu Complaint, ¶ 12. The Karu Plaintiffs are thus not Used Car Purchasers as defined by the Second Circuit because their vehicles are not Subject Vehicles with the Ignition Switch Defect. The Karu Plaintiffs seek economic losses stemming from "Defendants' manufacture or use of Defective Airbags in the Class Vehicles . . . ." *Id.*, ¶ 54. But New GM did not manufacture, design or use the allegedly defective airbags in the 2008 Saab that Ms. Karu now owns.  This type of claim is a Retained Liability of Old GM, and it did not lose that characteristic merely because the Old GM vehicle was resold after the 363 Sale.[77]

This issue was also addressed in *Burton v. Chrysler Group, LLC (In re Old Carco)*, 492 B.R. 392 (Bankr. S.D.N.Y. 2013).  There, certain plaintiffs (used car owners) purchased their vehicles *after* the Old Chrysler bankruptcy sale.  Reasoning that "plaintiffs *or their predecessors* (the previous owners of the vehicles) had a prepetition relationship with Old Carco, and the design flaws that they now point to existed prepetition" (*id.* at 403 (emphasis added)), Judge Bernstein held that the claims of the successor used car purchasers were barred by the sale order entered in the *Old Carco* bankruptcy case.  *Id.* at 405.

---

[76]  *Karu v. Takata Corp., et al.*, Case No. 2:16-CV-04558-CCC-JBC (D. N.J.).  A copy of complaint ("**Karu Complaint**") filed in the Karu Lawsuit is attached hereto as **Exhibit "F."**  The Karu Lawsuit has been transferred to a multidistrict litigation pending in the United States District Court for the District of Florida, captioned *In re: Takata Airbag Prod. Liab. Litig.*, MDL No. 2599, where it is currently stayed. New GM has not yet been sued in the Takata MDL.

[77]  Much of what is alleged in the Karu Complaint with respect to Old GM vehicles occurred prior to the 363 Sale. This is clearly a Retained Liability of Old GM since the claims are predicated on Old GM conduct.  In addition, the Magnuson-Moss Warranty Act claim asserts that "GM" provided class members with an implied warranty. However, the Sale Agreement is clear that New GM did not assume any implied warranties relating to Old GM vehicles; these are also Retained Liabilities of Old GM.

51

Thus, New GM's position on this issue is (i) the Second Circuit's opinion only applies to post-363 Sale Used Car Purchasers as defined by the Second Circuit, which are used car owners seeking economic losses for their Subject Vehicles with the Ignition Switch Defect; and (ii) all other used car owners (*e.g.*, those without the Ignition Switch Defect) are bound by the Bankruptcy Court's rulings.

IV.

**D.**    **Fourth Threshold Issue:**

**Post-Closing Accident Plaintiffs May Not Seek Punitive Damages Through Successor Liability Claims**

**1.**    **Post-Closing Accident Plaintiffs Did Not Appeal the November 2015 Decision/December 2015 Judgment and, Therefore, As a Matter of *Res Judicata*, Are Bound By the Ruling Made on Punitive Damages**

As noted, the Second Circuit's Opinion did not address the rights of Post-Closing Accident Plaintiffs, because those plaintiffs were not the subject of any of the three motions to enforce that the Second Circuit reviewed. Moreover, and as noted above, the Opinion did not review the November 2015 Decision/December 2015 Judgment of the Bankruptcy Court. Because the rulings relevant to the 2016 Threshold Issues in the November 2015 Decision/December 2015 Judgment were not appealed, they are finally determined against those bound by the December 2015 Judgment.

Under the Sale Agreement, New GM assumed Product Liabilities (as defined in the Sale Agreement) for compensatory damages. To that extent, Post-Closing Accident Plaintiffs can pursue a Product Liability claim against New GM. But under the November 2015 Decision/December 2015 Judgment, the Bankruptcy Court ruled that New GM did not assume punitive damages predicated on Old GM conduct. In particular, the Bankruptcy Court ruled that: (a) New GM did not assume punitive damages when it assumed Product Liabilities (December 2015 Judgment, ¶ 6), (b) since Old GM, as an insolvent debtor, would not be required to pay

52

punitive damages, it would be illogical for New GM to be liable for such damages based on the

363 Sale (*Motors Liquidation Co.*, 541 B.R. at 119), and (c) while New GM may be liable for

punitive damages on Independent Claims, Independent Claims by definition cannot be "based on

a right to payment that arose before the filing of petition or that are based on pre-petition

conduct." *Motors Liquidation Co.*, 829 F.3d at 157.

Successor liability claims are, by definition, based on Old GM conduct. *See In re Motors

Liquidation Co.,* 531 B.R. 354, 356 (Bankr. S.D.N.Y. 2015) ("The Sale Order was intended to

bar claims *of any type* that might be asserted against the asset buyer New GM that would be

based on the asset seller Old GM's wrongful conduct—including, but not limited to, successor

liability claims."); *see also Kane v. Magna Mixer Co*., 71 F.3d 555, 560 n.1 (6th Cir. 1995)

("Where successor liability is imposed, the person harmed by the seller's pre-sale conduct may

sue the purchaser directly.").  Thus, the November 2015 Decision/December 2015 Judgment bars

punitive damages for successor liability claims.  Post-Closing Accident Plaintiffs did not appeal

that ruling, and it is the law of the case and *res judicata* as to them.  *See Travelers Indem. Co. v.

Bailey, supra.*[78]

### 2.   Even if *Res Judicata* Did Not Apply, the Post-Closing Accident Plaintiffs Are Barred from Seeking Punitive Damages Against New GM on a Successor Liability Theory

Even if *res judicata* did not apply to bar their claims, Post-Closing Accident Plaintiffs

were prohibited from seeking punitive damages against New GM on a successor liability theory

for at least two independent reasons.

---

[78] Post-Closing Accident Plaintiffs cannot reasonably contend that punitive damages were not covered by the December 2015 Order.  The August 2015 CMO specifically authorized the Post-Closing Accident Plaintiffs to raise "any other matters that need to be addressed by the Court[.]"  After input from the parties, the Bankruptcy Court entered the September 2015 Scheduling Order, setting forth the issues that it believed remained in connection with the Sale Order.  The issue of punitive damages based on Old GM conduct was one of those issues.  Post-Closing Accident Plaintiffs are barred by the *res judicata* doctrine from collaterally attacking a ruling that they litigated (or could have litigated) and did not appeal.

### a.   *Post-Closing Accident Plaintiffs May Not Selectively Enforce the Sale Agreement*

The Post-Closing Accident Plaintiffs (and other plaintiffs) are improperly seeking selective enforcement of parts of the Sale Agreement while simultaneously disregarding other provisions of that same Agreement.  Thus, to the extent the Post-Closing Accident Plaintiffs are invoking the Sale Agreement to establish that New GM may be liable for Product Liabilities (*see, e.g.*, the Manuel Lawsuit), they cannot ignore the Sale Agreement's express prohibition against asserting other types of successor liability claims.  In other words, if plaintiffs seek to invoke the Sale Agreement by asserting Assumed Liability claims, then ***all*** the provisions of the contract (*i.e.*, the Sale Agreement) must apply.

Courts in the Second Circuit and elsewhere hold that a non-signatory to a contract may not "cherry-pick" beneficial contract terms while ignoring other provisions that do not benefit it, or that it would prefer not to be bound by.  *See, e.g.*, *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F.Supp.2d 147, 155-56 (E.D.N.Y. 2012) (collecting cases).  This doctrine is known as the "direct benefits theory" of estoppel, under which a party that is a non-signatory to a contract, but that nonetheless receives a direct benefit from that contract, is estopped from seeking exclusion from other provisions of the contract.  *See Am. S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Am. Boat Co., LLC,* No. 11 Civ. 6804, 2012 WL 527209, at *4 (S.D.N.Y. Feb. 17, 2012); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (non-signatory was estopped to argue it was not bound by the contract when it was seeking benefits under the contract).  The Post-Closing Accident Plaintiffs who are suing New GM on an assumed Product Liability (as defined in the Sale Agreement) may not ignore the "no successor liability" condition to the assumption of that Product Liability.[79]

---

[79]  This legal tenet is well-recognized in bankruptcy law.  In considering the assumption/ rejection of an executory contract pursuant to Section 365 of the Bankruptcy Code, it is well established that the entire contract must be

Accordingly, because the Post-Closing Accident Plaintiffs (and other plaintiffs to the extent they are relying on the Sale Agreement for certain of their claims) are seeking the benefits of New GM's obligation under the Sale Agreement with respect to assumed Product Liabilities, they are bound by all the terms and conditions in the Sale Agreement, including the express provision that New GM would not be liable for successor liability (except for Assumed Liabilities).

### b.    Because Post-Closing Accident Plaintiffs Could Not Recover Punitive Damages From Old GM, They May Not Recover Them From New GM Pursuant to a Successor Liability Theory

"The liability of a successor corporation is derivative in nature and the successor may be held liable for the conduct of its predecessor only to the same extent as the predecessor. . . . The nature of the liability itself does not change." *Robbins v. Physicians for Women's Health, LLC*, 90 A.3d 925, 930 (Conn. 2014) (holding that plaintiff who executes a covenant not to sue a corporate tortfeasor is foreclosed from seeking to recover from the subsequent purchasers of the corporate assets under successor liability theory); *see also Russell v. SunAmerica Sec., Inc.*, Civ. A. No. E90–0084(L), 1991 WL 352563, at *2 (S.D. Miss. Mar. 6, 1991) ("Reason dictates that in an action such as this, where liability is sought to be imposed against a successor corporation for the torts of its predecessor, the successor's liability, if any, derives exclusively from and is coterminous with the liability to which the predecessor could have been subjected. Thus, [the successor] can have no greater liability to plaintiffs than did [the predecessor].").  Accordingly,

---

assumed or rejected; beneficial provisions cannot be cherry-picked.  *See In re MF Glob. Holdings Ltd., et al.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and rejected in part. . . . The trustee must either assume the entire contract, cum onere, or reject the entire contract, shedding obligations as well as benefits.") (citations omitted); *AGV Prods., Inc. v. Metro-Goldwyn-Mayer, Inc.*, 115 F. Supp. 2d 378, 391 (S.D.N.Y. 2000), *judgment aff'd*, 37 Fed. Appx. 555 (2d Cir. 2002) (a contract cannot be assumed in part or rejected in part); *In re N.Y. Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) (quoting *City of Covington v. Covington Landing Ltd. Pship.*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("'When the debtor assumes the lease or the contract under § 365, it must assume both the benefits and the burdens of the contract.'"); *In re Hawker Beechcraft, Inc.*, No.: 12–11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) (A debtor may not assume parts of a single, indivisible agreement while rejecting other parts, it must assume or reject and indivisible agreement *in toto*.).

55

any claims asserted against New GM based on a successor liability theory are limited to those that could have been recovered against Old GM.

As a matter of undisputed bankruptcy law, in the context of an insolvent liquidating debtor, punitive damages claims are disallowed. Pursuant to Section 726(a) of the Bankruptcy Code, general unsecured claims (either timely filed or tardily filed) are paid in full before an allowed claim "for any fine, penalty, or forfeiture, or for multiple, exemplary or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim[.]"  11 U.S.C. § 726(a)(4); *see also In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005) ("[I]n bankruptcy punitive damages and penalties are given a low priority of distribution so that general creditors are paid in full before any estate assets are used to pay penalties.").

While the Old GM bankruptcy case was a Chapter 11 case, Section 726 of the Bankruptcy Code is applicable in Chapter 11 cases pursuant to the "best interest of creditors" test, *i.e.*, that holders of claims in a Chapter 11 case must receive on account of their claims at least as much as they would receive in a Chapter 7 case.  *See, e.g.*, *In re Best Payphones, Inc.*, 523 B.R. 54, 75 (Bankr. S.D.N.Y. 2015) ("Section 11 U.S.C. § 1129(a)(7) requires a creditor to receive or retain at least as much property under the plan as it would in a hypothetical chapter 7 liquidation.  It is the lowest point below which a proposed distribution may not fall, and must be read together with 11 U.S.C. § 726(a), which governs the priority of distribution in a chapter 7 case.").

In the context of approving the 363 Sale, the Bankruptcy Court noted that equity holders would not receive a distribution because general unsecured creditors would not be paid in full. *In re Gen. Motors Corp.*, 407 B.R. 463, 520 (Bankr. S.D.N.Y. 2009).  Similarly, that also means

56

that punitive damage claims would not be paid because, as a result of the 363 Sale, general unsecured creditors would not be paid in full. In confirming the liquidating plan, the Bankruptcy Court reaffirmed this legal principle when it held that general unsecured creditors would not be paid in full, thus lower priority claims (*i.e.*, punitive damages and other subordinated claims) would receive no distribution.

Therefore, as a result of the 363 Sale (and the Bankruptcy Code's absolute priority scheme), Old GM would not be required to pay punitive damages. It necessarily follows from this conclusion that New GM could not be liable for a claim, on a successor liability theory, that Old GM would never have had to pay. *See e.g., Robbins v. Physicians for Women's Health, LLC*, 90 A.3d 925, 930 (Conn. 2014).

This result is consistent with an earlier ruling that Judge Gerber made in the *Old GM* bankruptcy case. In a decision regarding the allowance of employment discrimination claims, the Bankruptcy Court held that it regularly exercised its equitable power to disallow or subordinate punitive damage claims where the recovery of punitive damages by some creditors depletes recovery of other creditors. *See In re Motors Liquidation Co.*, No. 09-50026, 2012 WL 10864205, at *11 (Bankr. S.D.N.Y. Aug. 6, 2012). In refusing to authorize punitive damages, Judge Gerber went on to explain that "disallowance of punitive damages claims is particularly appropriate in a liquidating case, including a liquidating chapter 11 case, where . . . the victims of the punitive damages would in reality be only other, wholly innocent, creditors." *Id.*; *see also* Hr's Tr., February 18, 2015 [ECF No. 13096], at 89:11-17 ("THE COURT: But in the claims process, you don't get punitive damages, you don't get RICO damages, because there's well-established authority. I think I held this earlier in GM in the . . . opinion, that punitives in the claims context, in a liquidating plan, penalized the wrong guys. They penalized the innocent unsecured Creditors.").

30074945

## **CONCLUSION**

For all of the foregoing reasons, New GM requests that the Court determine the 2016

Threshold Issues addressed herein consistent with the following conclusions of law:

1.  Ignition Switch Plaintiffs, Ignition Switch Pre-Closing Accident Plaintiffs, and Ignition Switch Post-Closing Accident Plaintiffs are only those plaintiffs with Subject Vehicles and the Ignition Switch Defect.  All other plaintiffs are Non-Ignition Switch Plaintiffs, Non-Ignition Switch Pre-Closing Accident Plaintiffs, or Non-Ignition Switch Post-Closing Accident Plaintiffs.

2.  With respect to Non-Ignition Switch Plaintiffs, the Opinion applies to only the Peller Plaintiffs.   No other Non-Ignition Switch Plaintiff appealed the June 2015 Judgment; thus, other Non-Ignition Switch Plaintiffs are not allowed to assert the rights on remand that were prescribed by the Second Circuit.  Furthermore, the rulings set forth in the November 2015 Decision/December 2015 Judgment are binding on Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs that were before that court. That includes (a) the ruling that Non-Ignition Switch Plaintiffs had not established a due process violation in connection with the notice of the 363 Sale, and were thus bound by the Sale Order, and (b) the ruling that Independent Claims against New GM cannot be asserted by those Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs.   For claims that were not before the Court in 2015, the Court shall remain the gatekeeper to review claims being asserted against New GM related to Old GM vehicles to ensure that plaintiffs are not improperly attempting to assert claims that are barred by the Sale Order and the Bankruptcy Court's other rulings.

3.  Post-363 Sale Used Car Purchasers of Subject Vehicles with the Ignition Switch Defect asserting economic loss claims are not bound by the Sale Order, but the Sale Order necessarily affects the scope and type of claim that was transferred to used car owners by the original owners from whom they purchased their vehicle. All such used car owners have the same rights as their assignors and are bound by the Sale Order and Key Court Rulings in the same manner as their assignors.

4.  All Post-Closing Accident Plaintiffs are prohibited from pursuing punitive damages claims against New GM on successor liability grounds.

58

Dated: New York, New York
      February 27, 2017

Respectfully submitted,


    */s/ Arthur Steinberg*
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

-and-

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

59