# Exhibit C

1 | André E. Jardini, Bar No. 71335
aej@kpclegal.com
2 | K.L. Myles, Bar No. 243272
klm@kpclegal.com
3 | KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
4 | Glendale, California 91203-1922
Telephone:  (818) 547-5000
5 | Facsimile:  (818) 547-5329

6 | Attorneys for Plaintiffs
WILLIAM D. PILGRIM, WALTER GOETZMAN,
7 | CHAD REESE, JEROME E. PEDERSON,
AHMED J. CANNON,  MICHAEL FERNANDEZ,
8 | ROY HALEEN, HOWARD KOPEL, ROBERT C.
MURPHY, MIKE PETERS, MARC ADAMS,
9 | KALEB ISLEY, KAI QIAN, MARK ROWE,
DALLAS WICKER, MIGUEL QUEZADA,
10 | CHRISTOPHER CONSTANTINE, BRADLEY
GRANT, JOHN PARSONS, ROBERT L. BRIGGS,
11 | ROBERT EDGAR, ROGER L. BROWNING,
LYLE DUNAHOO, AARON CLARK, ALAN
12 | PELLETIER, EDWIN WILLIAM KRAUSE,
FRANK JUZSWIK, S. GARRETT BECK, DAVID
13 | SHELDON, JAN ENGWIS, ADAM BALDUCCI,
ALAN FERRER, JARED KILEY, JEFF
14 | KOLODZI, DEREK VAN DEN TOP, MORRIS
SMITH, ANDRES FREY, SHAWN  BAIN,
15 | JEFFREY M. MILLSLAGLE, ROBERT GEISS,
individuals, on behalf of themselves and all others
16 | similarly situated

17 | UNITED STATES DISTRICT COURT

18 | CENTRAL DISTRICT OF CALIFORNIA

19 | WILLIAM D. PILGRIM, WALTER     ) NO.   CV 15-8047-JFW (Ex)
GOETZMAN, CHAD REESE, JEROME  )
20 | E. PEDERSON, AHMED J. CANNON,  ) Dept:                                      16
MICHAEL FERNANDEZ, ROY         )
21 | HALEEN, HOWARD KOPEL, ROBERT  ) Judge:  The Honorable John F. Walter
C. MURPHY, MIKE PETERS, MARC   )
22 | ADAMS, KALEB ISLEY, KAI QIAN,  ) FIRST AMENDED CLASS ACTION
MARK ROWE, DALLAS WICKER,      ) COMPLAINT FOR DEFECTIVE
23 | MIGUEL QUEZADA, CHRISTOPHER   ) VEHICLES
CONSTANTINE, BRADLEY GRANT,    )
24 | JOHN PARSONS, ROBERT L. BRIGGS, ) DEMAND FOR JURY TRIAL
ROBERT EDGAR, ROGER L.         )
25 | BROWNING, LYLE DUNAHOO,        )
AARON CLARK, ALAN PELLETIER,   )
26 | EDWIN WILLIAM KRAUSE, FRANK   )
JUZSWIK, S. GARRETT BECK, DAVID )
27 | SHELDON, JAN ENGWIS, ADAM      )
BALDUCCI, ALAN FERRER, JARED    )
28 | KILEY, JEFF KOLODZI, DEREK VAN )
DEN TOP, MORRIS SMITH, ANDRES  )

KNAPP,
PETERSEN
& CLARKE

-1-

1   FREY, SHAWN BAIN, JEFFREY M.     )
    MILLSLAGLE, ROBERT GEISS,        )
2   individuals, on behalf of themselves and )
    all others similarly situated,   )
3                                    )
              Plaintiffs,            )
4        v.                          )
                                     )
5   GENERAL MOTORS LLC and DOES 1    )
    through 50, inclusive,           )
6                                    )
              Defendants.            )
7   _____ )

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

1
## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3 INTRODUCTION ................................................................................................3

4 PARTIES .............................................................................................................5

5 Plaintiffs.............................................................................................................5

6 JURISDICTION ...............................................................................................13

7 VENUE .............................................................................................................13

8 CLASS ALLEGATIONS ..................................................................................14

9 A.    The Nationwide Class..............................................................................14

10 B.    State Law Classes ...................................................................................14

11 C.    The Classes and Subclasses Meet Rule 23 Requirements ............................15

12 CLAIMS FOR RELIEF ....................................................................................18

13 COUNT I
14        VIOLATION OF RACKETEER INFLUENCED AND
          CORRUPT ORGANIZATIONS ACT ("RICO") 18 U.S.C.
15        Section 1961, et seq...............................................................................18

16 COUNT II
          VIOLATION OF THE MAGNUSON-MOSS WARRANTY
          ACT  (15 U.S.C. Section 2301, et seq.) ........................................................22
17

18 COUNT III
          NEGLIGENCE...........................................................................................25

19 COUNT IV
20        VIOLATION OF ALABAMA DECEPTIVE TRADE
          PRACTICES ACT (ALA. CODE § 8-19-1, et seq.).....................................27

21 COUNT V
22        FRAUD BY CONCEALMENT...................................................................31

23 COUNT VI
          THIRD-PARTY BENEFICIARY CLAIM...................................................33

24 COUNT VII
25        UNJUST ENRICHMENT ...........................................................................35

26 COUNT VIII
          VIOLATIONS OF THE CONSUMER FRAUD ACT (Arizona
          Rev. Stat. § 44-1521, et seq.) ...................................................................37
27

28 COUNT IX
          FRAUD BY CONCEALMENT...................................................................41

KNAPP,
PETERSEN
& CLARKE

-i-

2411127.1  08000/01006

# TABLE OF CONTENTS (cont.)

**Page**

COUNT X
  THIRD-PARTY BENEFICIARY CLAIM ....................................................43

COUNT XI
  UNJUST ENRICHMENT ...............................................................................45

COUNT XII
  VIOLATIONS OF THE CONSUMER LEGAL REMEDIES
  ACT  (Cal. Civ. Code § 1750, et seq.) ...........................................................46

COUNT XIII
  VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION
  LAW (Cal. Bus. & Prof. Code § 17200, et seq.)............................................51

COUNT XIV
  FRAUD BY CONCEALMENT....................................................................55

COUNT XV
  VIOLATION OF SONG-BEVERLY CONSUMER
  WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY
  OF MERCHANTABILITY (Cal. Civ. Code §§ 1791.1 & 1792)................58

COUNT XVI
  NEGLIGENT FAILURE TO RECALL ...........................................................60

COUNT XVII
  THIRD-PARTY BENEFICIARY CLAIM ....................................................61

COUNT XVIII
  UNJUST ENRICHMENT ...............................................................................63

COUNT XIX
  VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE
  TRADE PRACTICES ACT (FLA. STAT. § 501.201, et seq.) ....................64

COUNT XX
  FRAUD BY CONCEALMENT....................................................................68

COUNT XXI
  THIRD-PARTY BENEFICIARY CLAIM ....................................................70

COUNT XXII
  UNJUST ENRICHMENT ...............................................................................72

COUNT XXIII
  VIOLATION OF ILLINOIS CONSUMER FRAUD AND
  DECEPTIVE BUSINESS PRACTICES ACT
  (815 ILCS 505/1, et seq. and 720 ILCS 295/1A)...........................................73

COUNT XXIV
  FRAUD BY CONCEALMENT....................................................................77

KNAPP,
PETERSEN
& CLARKE

-ii-

# TABLE OF CONTENTS (cont.)

**Page**

COUNT XV
    THIRD-PARTY BENEFICIARY CLAIM ....................................................80

COUNT XXVI
    UNJUST ENRICHMENT ...........................................................................82

COUNT XXVII
    VIOLATION OF THE INDIANA DECEPTIVE CONSUMER
    SALES ACT (IND. CODE § 24-5-0.5-3) .......................................................83

COUNT XXVIII
    FRAUD BY CONCEALMENT ....................................................................87

COUNT XXIX
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (IND. CODE § 26-1-2-314)....................................90

COUNT XXX
    THIRD-PARTY BENEFICIARY CLAIM ....................................................91

COUNT XXXI
    UNJUST ENRICHMENT ...........................................................................93

COUNT XXXII
    DECEPTIVE ACTS OR PRACTICES PROHIBITED BY
    MASSACHUSETTS LAW (MASS. GEN. LAWS CH. 93A, § 1,
    et seq.).....................................................................................................94

COUNT XXXIII
    FRAUD BY CONCEALMENT ....................................................................98

COUNT XXXIV
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (ALM GL. CH. 106, § 2-314)..............................101

COUNT XXXV
    THIRD-PARTY BENEFICIARY CLAIM ..................................................102

COUNT XXXVI
    UNJUST ENRICHMENT .........................................................................104

COUNT XXXVII
    VIOLATION OF THE MICHIGAN CONSUMER
    PROTECTION ACT (MICH. COMP. LAWS § 445.903, et seq.)..............105

COUNT XXXVIII
    FRAUD BY CONCEALMENT ..................................................................109

COUNT XXXIX
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MICH. COMP. LAWS § 440.2314) ...................112

KNAPP,
PETERSEN
& CLARKE

-iii-

2411127.1  08000/01006

# **TABLE OF CONTENTS (cont.)**

**Page**

COUNT XL
    THIRD-PARTY BENEFICIARY CLAIM ..................................................113

COUNT XLI
    UNJUST ENRICHMENT .........................................................................115

COUNT XLII
    VIOLATION OF MONTANA UNFAIR TRADE PRACTICES
    AND CONSUMER PROTECTION ACT OF 1973
    (MONT. CODE ANN. § 30-14-101, et seq.) .............................................116

COUNT XLIII
    FRAUD BY CONCEALMENT ..................................................................120

COUNT XLIV
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MONT. CODE § 30-2-314) ................................122

COUNT XLV
    THIRD-PARTY BENEFICIARY CLAIM ..................................................123

COUNT XLVI
    UNJUST ENRICHMENT .........................................................................125

COUNT XLVII
    VIOLATION OF NEW JERSEY CONSUMER FRAUD
    ACT(N.J. STAT. ANN. § 56..........................................................................126

COUNT XLVIII
    FRAUD BY CONCEALMENT ..................................................................130

COUNT XLIX
    BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (N.J. STAT. ANN. § 12A)....................................133

COUNT L
    THIRD-PARTY BENEFICIARY CLAIM ..................................................134

COUNT LI
    UNJUST ENRICHMENT .........................................................................136

COUNT LII
    VIOLATION OF OHIO CONSUMER SALES PRACTICES
    ACT (OHIO REV. CODE ANN. § 1345.01, et seq.) ..................................137

COUNT LIII
    FRAUD BY CONCEALMENT ..................................................................142

COUNT LIV
    IMPLIED WARRANTY IN TORT ...........................................................145

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

**TABLE OF CONTENTS (cont.)**

**Page**

COUNT LV
THIRD-PARTY BENEFICIARY CLAIM ..................................................145

COUNT LVI
UNJUST ENRICHMENT ..........................................................................147

COUNT LVII
VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW
(73 P.S. § 201-1, et seq.) .............................................................................149

COUNT LVIII
FRAUD BY CONCEALMENT ..................................................................153

COUNT LIX
BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (13 PA. CONS. STAT. ANN. § 2314) .................155

COUNT LX
THIRD-PARTY BENEFICIARY CLAIM ..................................................156

COUNT LXI
UNJUST ENRICHMENT ..........................................................................158

COUNT LXII
VIOLATION OF THE SOUTH DAKOTA
DECEPTIVE TRADE PRACTICES AND CONSUMER
PROTECTION LAW (S.D. CODIFIED LAWS § 37-24-6) ........................159

COUNT LXIII
FRAUD BY CONCEALMENT ..................................................................163

COUNT LXIV
BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (S.D. CODIFIED LAWS § 57A-2-314) ...............166

COUNT LXV
THIRD-PARTY BENEFICIARY CLAIM ..................................................167

COUNT LXVI
UNJUST ENRICHMENT ..........................................................................169

COUNT LXVII
VIOLATION OF TENNESSEE CONSUMER PROTECTION
ACT (TENN. CODE ANN. § 47-18-101, et seq.) .......................................170

COUNT LXVIII
FRAUD BY CONCEALMENT ..................................................................174

COUNT LXIX
THIRD-PARTY BENEFICIARY CLAIM ..................................................176

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

## <u>TABLE OF CONTENTS (cont.)</u>

<u>Page</u>

COUNT LXX
UNJUST ENRICHMENT .......................................................................... 178

COUNT LXXI
VIOLATIONS OF THE TEXAS DECEPTIVE TRADE
PRACTICES –CONSUMER PROTECTION ACT
(TEX. BUS. & COM. CODE §§ 17.41, et seq.) ......................................... 179

COUNT LXXII
FRAUD BY CONCEALMENT .................................................................. 184

COUNT LXXIII
BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (TEX. BUS. & COM. CODE § 2.314) ................. 187

COUNT LXXIV
THIRD-PARTY BENEFICIARY CLAIM .................................................. 188

COUNT LXXV
UNJUST ENRICHMENT .......................................................................... 190

PRAYER FOR RELIEF ......................................................................................... 191

DEMAND FOR JURY TRIAL ............................................................................. 193

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

1   This first amended complaint is brought by plaintiffs herein as a class action

2   complaint concerning purchasers or lessees of Corvette vehicles equipped with the

3   LS7 7.0LV8 engine concerning model years 2006 to 2013.  Those vehicles have

4   exhibited excessive valve guide wear which has led to engine failures and

5   inspections and repairs.

6                               **INTRODUCTION**

7   1.      Plaintiffs bring this action for themselves and on behalf of all persons in

8   the United States, and in selected states, who purchased or leased Chevrolet Corvette

9   427 or Chevrolet Corvette Z06 vehicles ("class vehicles) which were manufactured,

10  distributed and sold by defendant General Motors LLC (hereinafter "defendant"

11  "New GM" or "GM"), or manufactured, distributed or sold by General Motors

12  Corporation (also known as Motors Liquidation Company) ("Old GM").

13  2.      GM widely advertised the 7.0 liter V8 engine which was used in the

14  Chevrolet Corvette 427 and Chevrolet Corvette Z06 vehicle from 2006 through 2014

15  as being of the highest quality and durability.

16  3.      The above engine in the class vehicles was subject to excessive valve

17  guide wear, a condition which was well-known by Old GM and was and is known by

18  GM.

19  4.      Because of defects in the design manufacture and assembly of these

20  subject engines installed in the class vehicles, the class vehicles, and their engines,

21  are by their nature susceptible to frequent mechanical failure, which has occurred.

22  5.      The subject engines, when they fail, present a dire and significant safety

23  danger to the operator as oil leak suddenly and in volume underneath the vehicle,

24  under the rear tires which can lose traction, and subject to ignition, which engulfs the

25  vehicle in flames, all while depriving the operator of poor brakes and power steering.

26  6.      Because of the defects in the design manufacture and assembly of the

27  subject engines installed in the class vehicles, owners and lessees of the class

28  vehicles have or will incur significant expense for inspection and/or repair of the

KNAPP,
PETERSEN
& CLARKE

-3-

2411127.1  08000/01006

1 class vehicles.

2        7.     Despite knowledge of the propensity of the subject engine to excessive
3 valve guide wear, and the significant danger in operating the class vehicles, GM has
4 not issued a recall so that the class vehicles may be tested and repaired.  This failure
5 to recall these defective and dangerous vehicles for this known defect has occurred
6 despite the recall by GM of all subject vehicles from 2006 to 2014, for at least two
7 other, less serious, defects.

8        8.     The defects which cause excessive valve guide wear are well-known
9 and have been actively discussed by GM and owners or lessees of the class vehicles.
10 Yet, GM has taken no steps to correct the deficiencies in the subject engine.

11        9.     Despite GM's repeated assurances to members of the class of owners
12 that the subject engines were performing as designed, the engines fail at a high rate.

13       10.    Even extremely low mileage class vehicles have measured valve guide
14 clearances far beyond service limits resulting in repairs at significant costs.  Using
15 the test specified by GM, a high proportion of owners or lessees of class vehicles had
16 out of specification valve guides on class vehicles built from 2006 to 2014.

17       11.    When confronted by multiple complaints concerning the above-
18 described defects, GM deflected complaints by insisting that "valve train noise" was
19 an inherent feature of the subject engine, and that the subject engines are not
20 defective.

21       12.    Further, GM attempted to minimize the extent of any problems by
22 falsely asserting that the problems arose from a single supplier and were limited to a
23 short period of time from July 2008 to March 2009.  Even then, GM maintained that
24 the condition was not truly an out of specification condition and that the condition
25 had been remedied.

26       13.    As a result of customer complaints concerning the subject engines in the
27 class vehicles, GM implemented an investigation technique known as the "wiggle
28 method," as a method to determine whether the valve guides were out of

KNAPP,
PETERSEN
& CLARKE

-4-

1   specification.

2       14.     When GM determined that its adopted test would lead to more repairs

3   and investigations than it wished to perform, the test was summarily and

4   unreasonably rejected.

5       15.     In dealing with multiple complaints concerning the subject engine in the

6   class vehicles, GM acted, at all times, to deflect criticisms, defer investigations and

7   repairs, and minimize the extent of the problems.

8       16.     During the time that GM has temporized, minimizing the extent of the

9   defect in the subject engines, class members have continued to suffer excessive valve

10  train noise, out of specification valve guides and catastrophic engine failures.

11      17.     As a result of GM's misconduct alleged herein, plaintiffs and the other

12  owners and lessees of class vehicles have been harmed and have suffered actual

13  damages, in that the class vehicles continue to experience mechanical failure due to

14  the engine defect, and GM has not come up with a permanent remedy for this defect;

15  nor has GM instituted a recall of these vehicles.  Furthermore, owners and lessees of

16  class vehicles have incurred, and will continue to incur, out-of-pocket unreimbursed

17  costs and expenses relating to the engine defect.

18                              **PARTIES**

19  **Plaintiffs**

20      18.     Plaintiff William D. Pilgrim (hereinafter "Pilgrim") resides in the State

21  of Arizona.  Plaintiff Pilgrim owns a 2008 Corvette Z06 vehicle with a 7.0L 427

22  engine.  The vehicle was purchased on January 29, 2014.  The vehicle has exhibited

23  excessive valve train noise.  The vehicle failed GM's wiggle test.  Pilgrim has

24  incurred repair costs and other harm due to the engine defect in this vehicle.

25      19.     Plaintiff Walter Goetzman (hereinafter "Goetzman") is a resident of

26  Alabama.  Plaintiff Goetzman has owned a 2007 Corvette Z06 vehicle.

27      20.     Plaintiff Chad Reese (hereinafter "Reese") is a resident of Alabama.

28  Plaintiff Reese owns a Corvette 2006 Z06 automobile.  The vehicle has an LS7

**KNAPP,
PETERSEN
& CLARKE**

1  engine.  The vehicle was purchased in October of 2014.  The vehicle suffered a

2  catastrophic engine failure when the engine dropped the valve.  This vehicle is

3  defective and subject to excessive valve guide wear.

4      21.  Plaintiff Jerome E. Pederson (hereinafter "Pederson") is a resident of

5  Arizona.  Plaintiff Pederson owns a 2009 Corvette Z06 vehicle with a 7.0 LV8

6  engine.  This vehicle was purchased in July of 2013.  This vehicle is defective and

7  subject to excessive valve guide wear.

8      22.  Ahmed J. Cannon (hereinafter "Cannon") is a resident of Arizona.

9  Plaintiff Cannon owns a 2006 Corvette Z06 with a 427 c.i. LS7 engine.  The vehicle

10  was purchased on December 8, 2008, and was covered by a GM factory warranty.

11  No repairs have been made by GM.  The vehicle has exhibited signs of excessive

12  valve guide wear including ticking sound noises which are increasing.

13      23.  Plaintiff Cannon is also the owner of a 2012 Camaro SS with a 7.0 liter

14  427 cubic inch LS7 engine.  The engine suffered a failure.  The engine has suffered a

15  catastrophic failure due to the defects.

16      24.  Plaintiff Michael Fernandez (hereinafter "Fernandez") is a resident of

17  California.  Plaintiff Fernandez owns a 2008 Corvette Z06 vehicle with a 7.0L V8

18  engine purchased May 24, 2013.  All valve clearances on the vehicle were inspected

19  and found to be outside the manufacturer's allowable tolerance range.  Inspection

20  expenses were incurred.

21      25.  Plaintiff Roy Haleen (hereinafter "Haleen") is a resident of California.

22  Plaintiff Haleen owns a 2008 Corvette Z06 vehicle with a 7.0L 427 engine.  Valves

23  on the vehicle were inspected and found to be out of specification.  Expense for

24  inspection and repair was incurred.

25      26.  Plaintiff Howard Kopel (hereinafter "Kopel") is a resident of California.

26  Plaintiff Kopel has owned two class vehicles, a 2008 Corvette C6 and a 2006

27  Corvette Z06.  Both vehicles suffered from excessive valve guide wear and

28  underwent inspection and repair.  Mr. Kopel has incurred expense due to the

**KNAPP,
PETERSEN
& CLARKE**

-6-

2411127.1  08000/01006

1 described defect.

2     27.    Plaintiff Robert C. Murphy (hereinafter "Murphy") is a resident of

3 California. Plaintiff Murphy owns a 2006 Corvette Z06 vehicle, with a 7.0L LS7

4 engine. The vehicle has exhibited excessive valve train noise and has failed the

5 wiggle test.

6     28.    Plaintiff Mike Peters (hereinafter "Peters") is a resident of California.

7 Plaintiff Peters has owned a 2009 Corvette Z06 vehicle with a 7.0L 427 c.i. engine.

8 This vehicle was purchased in April of 2012. This vehicle is defective and subject to

9 excessive valve guide wear.

10     29.    Plaintiff Marc Adams (hereinafter "Adams") is a resident of California.

11 Plaintiff Adams owns a 2006 Corvette Z06 vehicle with a 7.0 liter engine. The

12 vehicle was purchased in December of 2012. The vehicle is exhibiting signs of

13 excessive wear several times what would be considered normal, including excessive

14 "valve train noise." GM has represented to Adams that these defects were normal.

15 The vehicle is defective and has experienced excessive valve guide wear.

16     30.    Plaintiff Kaleb Isley (hereinafter "Isley") is a resident of California.

17 Plaintiff Isley is the owner of a 2008 Corvette Z06 with a 427 cubic inch (7.0 liter)

18 engine. The vehicle was purchased on December 1, 2014. The vehicle exhibited

19 noise believed to be excessive valve guide wear and thereafter, suffered a

20 catastrophic failure.

21     31.    Plaintiff Kai Qian (hereinafter "Qian") is a resident of California.

22 Plaintiff Qian is the owner of a 2006 Z06 Corvette with a 7 liter V-8 engine. The

23 vehicle was purchased on September 1, 2015. The vehicle exhibits signs of a worn

24 valve guide. This vehicle is defective and subject to excessive valve guide wear.

25     32.    Plaintiff Mark Rowe (hereinafter "Rowe") is a resident of California.

26 Plaintiff Rowe owns a 2007 Z06 Corvette. The vehicle has a 7.0 liter 427 engine.

27 The vehicle was purchased on August 3, 2015. The engine has experienced

28 excessive noise reflective of excessive valve guide wear. This vehicle is defective

**KNAPP,
PETERSEN
& CLARKE**

-7-

and subject to excessive valve guide wear.

33.     The previous owner of the vehicle replaced the original motor after a catastrophic failure caused by excessive valve guide wear.

34.     Plaintiff Dallas Wicker (hereinafter "Wicker") is a resident of California.  Plaintiff Wicker is the owner of a 2007 Corvette Z06 vehicle.  The vehicle has a 7.0 liter 427 cubic inch engine.  The vehicle was purchased on June 27, 2014.  The engine in the vehicle has been inspected and the valve guides are out of specification which could result in a catastrophic engine failure if they were not repaired.  This vehicle is defective and subject to excessive valve guide wear.

35.     Plaintiff Miguel Quezada (hereinafter "Quezada") is a resident of California.  Plaintiff Quezada is the owner of a Chevy Corvette Z06 vehicle, model year 2006.  The vehicle has a LS7 7.0 liter 427 cubic inch engine.  The vehicle was purchased in August 2013.  The engine suffered a malfunction caused by excessive valve guide wear in January 2015.  This vehicle is defective and subject to excessive valve guide wear.

36.     Plaintiff Christopher Constantine (hereinafter "Constantine") is a resident of Florida.  Plaintiff Constantine owns a 2006 Corvette Z06 vehicle with a 7.0L LS7 engine.  This vehicle was purchased in December 2010.  The valve guides were subject to excessive wear and were repaired in 2013, causing expense to be incurred.

37.     Plaintiff Bradley Grant (hereinafter "Grant") is a resident of Florida.  Plaintiff Grant owns a 2008 Corvette Z06 vehicle with a 7.0 liter engine.  A GM protection plan expired on September 30, 2015, without necessary repairs having been made by GM.  The vehicle has valve guides which are subject to excessive wear.

38.     Plaintiff John Parsons (hereinafter "Parsons") is a resident of Florida.  Plaintiff Parsons has owned a class vehicle.  This vehicle suffers from the described defect and expense has been incurred for inspection and repair.

**KNAPP,
PETERSEN
& CLARKE**

-8-

2411127.1  08000/01006

39.     Plaintiff Robert L. Briggs (hereinafter "Briggs") is a resident of Florida. Plaintiff Briggs owns a 2007 Corvette Z06. The vehicle has a 7.0 liter engine. The vehicle was purchased in July of 2006. The vehicle was inspected and the inspection verified that the valves were out of speculation and repairs were necessary. This vehicle is defective and subject to excessive valve guide wear.

40.     Plaintiff Robert Edgar (hereinafter "Edgar") is a resident of Georgia. Plaintiff Edgar owns a 2007 Corvette Z06. The vehicle has a 7.0 liter V8 engine. The vehicle was purchased on December 4, 2014. The vehicle is exhibiting signs of excessive valve guide wear.

41.     Plaintiff Roger L. Browning (hereinafter "Browning") is a resident of Georgia. Plaintiff Browning owns a 2008 Corvette Z06 vehicle with a 7.0 liter V8 engine purchased on October 26, 2008  The vehicle has been inspected and the inspection verified that the valve guides were excessively warn, such that repairs were necessary. This vehicle is defective and subject to excessive valve guide wear.

42.     Plaintiff Lyle Dunahoo (hereinafter "Dunahoo") is a resident of Illinois. Plaintiff Dunahoo owns a 2009 Corvette Z06 vehicle with a 7.0 engine. This vehicle was purchased in January of 2012. The vehicle has out of specification findings as to valve guide clearances on eight intake valves and eight exhaust valves.

43.     Plaintiff Aaron Clark ("Clark") is a resident of Indiana. Plaintiff Clark has owned a 2008 Corvette Z06 vehicle, with a 7.0 liter LS7 engine. This vehicle is defective and subject to excessive valve guide wear.

44.     Plaintiff Alan Pelletier (hereinafter "Pelletier") is a resident of Massachusetts. Plaintiff Pelletier is the owner of a 60th Anniversary 427 Convertible Corvette automobile, manufactured in 2013. The vehicle has a 7.0 liter 427 cubic inch engine. The vehicle has experienced excessive valve train noise caused by excessive valve guide wear. This vehicle is defective and subject to excessive valve guide wear.

45.     Plaintiff Edwin William Krause (hereinafter "Krause") is a resident of

KNAPP,
PETERSEN
& CLARKE

-9-

2411127.1  08000/01006

1   Michigan.  Plaintiff Krause has owned a 2009 Corvette Z06 vehicle purchased in

2   April 2014.  This vehicle is defective and subject to excessive valve guide wear.

3       46.     Plaintiff Frank Juzswik (hereinafter "Juzswik") is a resident of

4   Michigan.  Plaintiff Juzswik owns a 2009 Corvette Z06.  The vehicle has a 7.0 liter

5   engine.  The vehicle was purchased at a Chevrolet dealer in Owensboro, Kentucky.

6   The car was purchased in 2009, and traded back to the dealer at a loss in May, 2015.

7   The engine was inspected and the valves were out of specifications.  This vehicle is

8   defective and subject to excessive valve guide wear.

9       47.     Plaintiff S. Garrett Beck (hereinafter "Beck") is a resident of Michigan.

10  Plaintiff Beck owns a 2013 427 Corvette convertible, with a 427 cubic inch V8

11  engine.  The vehicle was purchased on January 2013.  The valve guides were

12  inspected and found to have excessive wear.  This vehicle is defective and subject to

13  excessive valve guide wear.

14      48.     Plaintiff David Sheldon (hereinafter "Sheldon") is a resident of

15  Montana.  Plaintiff Sheldon owns a 2009 Corvette Z06 with a 7.0L engine.  The

16  vehicle was purchased on October 15, 2012.  Valve guides were inspected and were

17  out of specification, resulting in costly repairs.  This vehicle is defective and subject

18  to excessive valve guide wear.

19      49.     Plaintiff Jan Engwis ("hereinafter "Engwis") is a resident of Montana.

20  Plaintiff Engwis owns a 2007 Corvette Z06.  The vehicle has an LS 700 liter 505

21  horsepower engine.  The car was purchased on August 5, 2006.  The car was covered

22  by a five year, 100,000 mile GM original engine power train warranty.  The vehicle

23  suffered a catastrophic engine failure due to valve failure.  This vehicle is defective

24  and subject to excessive valve guide wear.

25      50.     Plaintiff Adam Balducci (hereinafter "Balducci") is a resident of New

26  Jersey.  Plaintiff Balducci is the owner of a 2007 Corvette Z06 vehicle.  The vehicle

27  has a 427 cubic inch V8 engine.  The vehicle was purchased in November of 2006,

28  and covered by a five year, 50,000 mile warranty.  The vehicle suffered a

KNAPP,
PETERSEN
& CLARKE

-10-

1  catastrophic engine failure which was repaired in late 2009. This vehicle is defective

2  and subject to excessive valve guide wear.

3  51. Plaintiff Alan Ferrer (herein "Ferrer") is a resident of New Jersey.

4  Plaintiff Ferrer is the owner of a 2006 Corvette Z06. The vehicle has a 7.0 liter

5  engine. The vehicle was purchased on August 2, 2015. This vehicle is defective and

6  subject to excess valve guide wear.

7  52. Plaintiff Jared Kiley (hereinafter "Kiley") is a resident of Mason, Ohio.

8  Plaintiff Kiley owns a 2006 Corvette Z06 vehicle with a 7.0L engine. This vehicle

9  was purchased on August 11, 2014. The vehicle's guides were measured and found

10  to be significantly out of specification. Expense was incurred for inspection and

11  repair of the engine. This vehicle is defective and subject to excessive valve guide

12  wear.

13  53. Plaintiff Jeff Kolodzi (hereinafter "Kolodzi") is a resident of

14  Pennsylvania. Plaintiff Kolodzi owns a 2008 Corvette Z06 vehicle with a 427 c.i.

15  engine. The vehicle was purchased in January 2013. Valves were inspected and

16  found to be out of specification resulting in expenses incurred.

17  54. Plaintiff Derek Van Den Top (hereinafter "Van Den Top") is a resident

18  of South Dakota. Plaintiff Van Den Top is the owner of a 2006 Corvette Z06. The

19  vehicle has a 7.0 liter LS7 engine. The vehicle was purchased on March 27, 2008.

20  The vehicle was covered at the time of purchase by a GM warranty. The vehicle

21  suffered a total engine failure in 2012, requiring a new engine. This vehicle is

22  defective and subject to excessive valve guide wear.

23  55. Plaintiff Morris Smith (hereinafter "Smith") is a resident of Tennessee.

24  Plaintiff Smith has owned a 2009 Corvette Z06 vehicle purchased in 2010. This

25  vehicle is defective and subject to excessive valve guide wear.

26  56. Plaintiff Andres Frey (hereinafter "Frey") is a resident of Texas.

27  Plaintiff Frey owns a 2008 Corvette Z06 vehicle with a 7.0L 427 c.i. engine. Valve

28  guides were found on inspection to be significantly out of specification, resulting in

KNAPP,
PETERSEN
& CLARKE

-11-

2411127.1  08000/01006

expensive repairs.

57.    Plaintiff Shawn Bain (hereinafter "Bain") is a resident of Texas. Plaintiff Bain owns a 2007 Corvette Z06. The vehicle has a 7.0LS7 427 engine. The vehicle was purchased on May 30, 2015. The engine in the vehicle suffered a catastrophic failure caused when the engine dropped a valve and blew up. This vehicle is defective and subject to excessive valve guide wear.

58.    Plaintiff Jeffrey M. Millslagle (hereinafter "Millslagle" is a resident of Texas. Plaintiff Millslagle is the owner of a 2008 Z06 Corvette vehicle. The vehicle has a 7.0 liter 427 cubic inch engine. The vehicle was purchased in July 2014. The suffered a catastrophic engine failure when a valve exploded through the head and engine block resulting in total engine failure. This vehicle is defective and subject to excessive valve guide wear.

59.    Plaintiff Robert Geiss (hereinafter "Geiss") is a resident of Texas. Plaintiff Geiss is the owner of a 2008 Chevrolet Corvette Z06. The vehicle has a 427 cubic inch 7 liter engine. The vehicle was purchased on August 15, 2011. The vehicle suffered a catastrophic engine failure on April 10, 2014, which destroyed the engine. This vehicle is defective and subject to excessive valve guide wear.

60.    Defendant General Motors LLC ("new GM, GM, or defendant") is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan. The sole member and owner of General Motors LLC is General Motors Holding LLC. General Motors Holding LLC is a Delaware limited liability company with its principal place of business in the State of Michigan. The sole member and owner of General Motors Holding LLC is General Motors Company, which is a Delaware corporation with its principal place in the State of Michigan, and is a citizen of the States of Delaware and Michigan.

61.    New GM was incorporated in 2009 and, effective on July 11, 2009, acquired substantially all assets and assumed certain liabilities of General Motors

KNAPP,
PETERSEN
& CLARKE

-12-

2411127.1   08000/01006

1  Corporation ("Old GM") through a section 363 sale under Chapter 11 of the U.S.
2  Bankruptcy Code.

3      62.    It is undisputed that new GM had express obligations, as well as
4  obligations by law, to comply with the certification, reporting and recall
5  requirements of the National Traffic and Motor Vehicle Act and the Transportation
6  Recall Enhancement Accountability and Documentation Act.

7                      **JURISDICTION**

8      63.    This is a class action.

9      64.    Plaintiffs, other than Krause and Juzswik, are citizens of states different
10  from the home state of defendant.  Members of the plaintiff class are citizens of
11  states different than defendant.

12      65.    The number of class members from the State of California in the
13  aggregate is substantially larger than the number of class members who are citizens
14  of any other state.

15      66.    On information and belief, aggregate claims of individual class
16  members exceed $5,000,000, inclusive of interest and costs.

17      67.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. section
18  1332(d).

19                      **VENUE**

20      68.    GM, as new GM, has engaged in unfair business practices directed at/or
21  causing harm to persons residing, located or doing business in this district and in the
22  United States.

23      69.    Defendant through its business of distributing, selling and leasing its
24  vehicles has established sufficient contacts in this district such that it is subject to
25  personal jurisdiction here.  Defendant is deemed to reside in this district pursuant to
26  28 U.S.C. section 1391(a).

27      70.    In addition, a substantial part of the events or omissions giving rise to
28  these claims and a substantial part of the property that is a subject of this action are in

**KNAPP,
PETERSEN
& CLARKE**

-13-

this district.

71. Venue is proper in this Court pursuant to 20 U.S.C. 1391(a).

### CLASS ALLEGATIONS

**A.   The Nationwide Class**

72. Under Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs bring this action on behalf of themselves and a class initially defined as follows. For the assertion of claims under the Racketeer Influence and Corrupt Organizations Act ("RICO" and/or "the Nationwide Class")

> All persons in the United States who purchased or leased a class vehicle at any time from 2006 to the present and who (1) still own or lease a class vehicle or (2) sold a class vehicle at any time from July 2009 to the present. Class vehicles include all Chevrolet Corvette 427 or Corvette Z06 vehicles equipped with 7.0 liter engines. Excluded from the nationwide class are new GM, its employees, co-conspirators or officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of new GM, new GM dealers, class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship of any such persons.

**B.   State Law Classes**

73. Plaintiffs allege claims, under the laws of each state and the District of Columbia, for the following state-wide classes:

> All persons who purchased or leased a class vehicle at any time from 2006 to the present, and who (1) still own or lease a class vehicle or (2) sold a class vehicle at any time from July 2009 to the present. Class vehicles include all Chevrolet Corvette 427 or Corvette Z06 vehicles equipped with 7.0 liter engines.. Excluded from each of the

KNAPP,
PETERSEN
& CLARKE

-14-

1   class and subclasses are new GM, its employees co-conspirators or

2   officers, directors, legal representatives, heirs, successors, and wholly or

3   partly owned subsidiaries or affiliates of new GM, new GM dealers,

4   class counsel and their employees; and the judicial officers and their

5   immediate family members and associated court staff assigned to this

6   case, and all persons within the third degree of relationship of any such

7   persons.

8        A subclass in each described state for persons who (1) still own or lease

9   a class vehicle or (2) sold a class vehicle at any time from July 2009 to the

10  present.

11  **C.    The Classes and Subclasses Meet Rule 23 Requirements**

12       74.    Plaintiffs are informed and believe that there are approximately 28,000

13  class vehicles nationwide and such vehicles exist in each state.  Individual joinder of

14  all class members is impracticable.

15       75.    The class can be readily identified using registration records, sales

16  records, production records, and other information kept by GM or third parties in the

17  usual course of business within their control.

18       76.    Questions of law and fact are common to each of the classes and

19  subclasses and predominate over questions affecting only individual members,

20  including the following:

21            (a)    Whether Chevrolet Corvette 427 and Corvette Z06 class vehicles

22  equipped with 7.0 liter V8 engines suffer from engine valve guide defects.

23            (b)    Whether GM was aware of the defects, and concealed the defects

24  from regulators, plaintiffs, and the class;

25            (c)    Whether GM misrepresented to class vehicle purchasers that the

26  class vehicles are safe, reliable and of high quality;

27            (d)    Whether GM misrepresented itself as a reputable manufacturer

28  that valves quality in its vehicles and stands behind its vehicles after they are sold;

KNAPP,
PETERSEN
& CLARKE

-15-

2411127.1   08000/01006

(e)     Whether GM actively encouraged the concealment of known defects from regulators and consumers;

(f)     Whether GM engaged in fraudulent concealment;

(g)     Whether GM engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the class vehicles had serious defects.

(h)     Whether GM violated various state consumer protection statutes.

(i)     Whether the 7.0 liter V8 engines contained within the class vehicles were unfit for the ordinary purposes for which they were used in violation of the implied warranty of merchantability;

(j)     Whether GM's unlawful, unfair, fraudulent and/or deceptive practices harmed plaintiffs and the members of the class

(k)     Whether GM has been unjustly enriched;

(l)     Whether GM formed an enterprise with others within the meaning of RICO for improper purpose with the effect of suppressing the defects, misrepresenting the safety and quality of the class vehicles, and/or avoiding or delaying necessary recall.

(m)     Whether the nationwide class members lost money and/or a property within the meaning of RICO;

(n)     Whether plaintiffs and the members of the class are entitled to equitable and/or injunctive relief;

(o)     What aggregate amounts of statutory penalties, as available under the laws of certain states, are sufficient to punish and deter GM and to vindicate statutory and public policy, and how such policies should most equitably be distributed among class members; and

(p)     Whether any and all applicable limitation periods are tolled by acts of fraudulent concealment.

(q)     Whether GM has a duty to inspect and repair class vehicles due to

KNAPP,
PETERSEN
& CLARKE

-16-

2411127.1  08000/01006

1   significant and continuing safety concerns; and

2          (r)     Whether GM has a duty to recall class vehicles based on

3   significant and continuing safety concerns.

4          77.    Plaintiffs' claims are typical of the claims of the class members and

5   arise from the same course of conduct by GM.  The relief plaintiffs seek is typical of

6   the relief sought for the absent class members.

7          78.    Plaintiffs' claims are typical of the claims of the class members and

8   arise from the same course of conduct by GM.  The relief plaintiffs seek is typical of

9   the relief sought for the absent class members.

10         79.    Plaintiffs will fairly and adequately represent and protect the interests of

11  all absent class members.  Plaintiffs are represented by counsel competent and

12  experienced in product liability, consumer protection, and class action litigation.

13         80.    A class is superior to other available methods for the fair and efficient

14  adjudication of this controversy since joinder of all the individual class members is

15  impracticable because the damages suffered by each individual class member may be

16  relatively small.  The expense and burden of individual litigation would make it very

17  difficult or impossible for individual class members to redress the wrongs done to

18  each of them individually, and the burden imposed on the judicial system would be

19  enormous.  Rule 23 provides the Court with authority and flexibility to maximize the

20  benefits of the class mechanism and reduce management challenges.  The Court may,

21  on motion of plaintiffs or on its own determination, utilize the processes of Rule

22  23(c)(4) and or (c)(5) to certify common questions of fact or law and to designate

23  subclasses.

24         81.    The prosecution of separate actions by the individual class members

25  would create a risk of inconsistent or varying adjudications for individual class

26  members, which would establish incompatible standards of conduct for GM.  The

27  conduct of this action is a class action presents far fewer management difficulties,

28  conserves judicial resources and the parties' resources, and protects the right of each

**KNAPP,
PETERSEN
& CLARKE**

-17-

1 class member.

2     82.    Plaintiffs are not aware of any obstacles likely to be encountered in the

3 management of this action that would preclude its maintenance as a class action.

4 Plaintiffs anticipate providing appropriate notice to be approved by the Court after

5 discovery into the size and nature of the class.  Absent a class action, most class

6 members would likely find the cost of litigating their claims prohibitively high, and

7 would therefore have no effective remedy at law.  Because of the relatively small

8 size of the individual class members claims, it is likely that only a few class members

9 could afford to seek legal redress for GM's misconduct.  Absent a class action, class

10 members will continue to incur damages and GM's misconduct will continue without

11 remedy.

12 **CLAIMS FOR RELIEF**

13 

**COUNT I**

14 **VIOLATION OF RACKETEER INFLUENCED AND CORRUPT**

15 **ORGANIZATIONS ACT ("RICO") 18 U.S.C. Section 1961, et seq.**

16     83.    Plaintiffs hereby incorporate by reference the allegations contained in

17 the proceeding paragraphs of this complaint.

18     84.    This claim is brought on behalf of the nationwide class against

19 defendant GM for actual damages and treble damages and equitable relief under 18

20 U.S.C. section 1964.  Members of the nationwide class are referred to herein

21 collectively as "class members."

22     85.    GM, the Enterprise member, plaintiffs and the class members are

23 "persons" within the meaning of 18 U.S.C. section 1961(3).

24     86.    On May 24, 2015, the United States Department of Justice announced it

25 had found evidence of criminal wrongdoing by GM, including repeated acts of fraud

26 for its failure to disclose defects in its products.  GM committed both criminal and

27 civil fraud and, as set forth in this complaint, did not act alone.

28     87.    From the inception of new GM onwards, new GM conducted an

**KNAPP,
PETERSEN
& CLARKE**

-18-

1    enterprise of associated in fact entities ("the Enterprise"), which was designed to

2    conceal information regarding the true nature and scope of defects to its automobile

3    products from the public, the federal government and its agencies, its customers, and

4    the owners and lessees of class vehicles, including the defective vehicles at issue

5    herein; and to affirmatively misrepresent the quality of the class vehicles in order to

6    (a) fraudulently induce plaintiffs and other class members to purchase or lease the

7    subject vehicles, and (b) avoid the cost of fixing the defects which existed in the

8    class vehicles and to avoid undermining GM's brand image concerning class vehicles

9    owned by plaintiffs and class members.

10         88.    New GM was associated with the illegal enterprise and conducted and

11   participated in the enterprise's affairs through a pattern of racketeering activity

12   consisting of numerous and repeated uses of the interstate mails and wire

13   communications to execute a scheme to defraud, all in violation of 18 U.S.C. section

14   1962(c).

15         89.    The RICO Enterprise which engaged in, and whose activities affected,

16   interstate and foreign commerce, is an association in fact enterprise within the

17   meaning of 18 U.S.C. 1961(4) and consists of "persons" associated together for the

18   common purpose of employing the multiple deceptive , abusive, and fraudulent acts

19   described herein.

20         90.    At all times, the enterprise consisted of at least new GM, Esis, Inc.

21   (hereinafter "Esis") and Hib Hilberson (hereinafter "Hilberson").

22         91.    Esis is a company that offers "risk management products and services."

23   It is part of the Ace Group, headed by Ace Limited, and is separate and distinct from

24   the other enterprise constituents.  During the duration of the enterprise, Esis served as

25   new GM's claims administrator, routinely investigating, analyzing and resolving

26   claims involving defects in GM vehicles, including the defects alleged herein.

27   Product liability claims forwarded Esis for investigation and review included, among

28   others, those involving engine failures and costs of inspection and repair. Esis

**KNAPP,
PETERSEN
& CLARKE**

-19-

2411127.1  08000/01006

1   knowingly collaborated with new GM to fraudulently conceal information about the

2   defects from claimants, the government and its agencies, and the public, which

3   scheme was furthered by Esis's mailings and wire communications with the

4   Enterprise and claimants.

5       92.     Esis was at all times well aware of the excessive valve guide wear in the

6   class vehicles.

7       93.     Hilberson is a GM employee who has actively and fraudulently

8   defended the subject vehicles in social media, including consumer forums, in

9   furtherance of the GM scheme.

10      94.     The RICO enterprise is an ongoing organization with an ascertainable

11  structure, and a framework for making an carrying out decisions, that functions as a

12  continuing unit with established duties, and that is separate and distinct from the

13  pattern of racketeering activity in which enterprise members have engaged and are

14  engaging.  The enterprise was and is used by new GM as a tool to effectuate the

15  pattern of racketeering activity.

16      95.     New GM, Esis and Hilberson are entities separate and distinct from each

17  other, and from the enterprise.  All of the enterprise constituents are independent

18  legal entities with the authority and responsibility to act independently of the

19  enterprise and of the other enterprise members.

20      96.     The members of the enterprise all had a common purpose:  To

21  misrepresent the quality of class vehicles and/or to conceal information regarding the

22  nature and scope of the defects, including the engine defect as alleged herein, from

23  the government, its agencies, the public, and the class.  For new GM, the purpose of

24  the scheme to defraud was to conceal the true scope and nature of the defects in order

25  to sell at least more vehicles, as well as to avoid incurring the cost and responsibility

26  of repairing or replacing class vehicles, initiating a recall.  By concealing the scope

27  and nature of the defects, new GM maintained and boosted consumer confidence in

28  the GM brand, sold more GM vehicles, and avoided remediation costs and negative

KNAPP,
PETERSEN
& CLARKE

-20-

2411127.1  08000/01006

1  publicity associated with the defects and recalls.

2  97.  New GM conducted and participated in the affairs of the enterprise

3  through a pattern of racketeering activity that lasted many years, commencing from

4  or shortly after new GM's inception as an entity in 2009, continuing through at least

5  2014.  This pattern consisted of numerous and repeated violations of the federal mail

6  and wire fraud statutes – namely 18 U.S.C. sections 1341 and 1343 – that prohibit

7  the use of any interstate or foreign mail or wire facility for the purpose of executing a

8  scheme to defraud.  These mailings and wirings were executed in furtherance of the

9  enterprise's scheme to defraud the class and caused injury to the property of class

10  members.

11  98.  To further the scheme to defraud, new GM routinely issued technical

12  service bulletins to the dealers and/or letters to consumers and/or responses in

13  internet forums as a stop gap half measure designed to avoid costly recalls.

14  99.  As part of its obligations under the TREAD Act, new GM was required

15  to submit to NHTSA, its monthly and quarterly reports regarding potential product

16  defects and complaints involving potential defects.  To further the scheme to defraud,

17  and in order to escape investigation and costs associated with recalls, new GM

18  systematically under reported and omitted relevant information about the nature of

19  the defects and the number of defect-related incidents and complaints from these

20  reports, which new GM transmitted or caused to be transmitted from its offices in

21  Michigan to federal regulators in Washington, D.C.

22  100.  The conduct of new GM, Esis and Hilberson in furtherance of this

23  scheme was intentional.  Plaintiffs and class members were harmed by new GM's

24  conduct and, as a result, purchased or leased defective class vehicles after new GM

25  was created for significantly more money than they would have paid absent the

26  scheme to defraud, and/or remain in possession of vehicles of diminished value that

27  new GM otherwise would have repaired or replaced, and/or sold class vehicles after

28  revelations of defects for a loss.  In addition, plaintiffs and class members were

KNAPP,
PETERSEN
& CLARKE

-21-

1  harmed by undertaking the costs of investigations and repairs caused by the defects.

2  New GM unfairly reaped millions of dollars in excessive sales revenue as a result of

3  this scheme and its conduct in furtherance of this scheme.

## COUNT II

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. Section 2301, et seq.)

7  101.   Plaintiffs reallege and incorporate by reference all paragraphs as though

8  fully set forth herein.

9  102.   Plaintiffs bring this Count on behalf of members of the nationwide class

10 who are residents of the following states:  Alaska, Arkansas, California, Colorado,

11 Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine,

12 Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana,

13 Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North

14 Carolina, North Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina,

15 South Dakota, Texas, Utah, Virginia, West Virginia, and Wyoming (the class for the

16 purposes of this Count).

17 103.   This Court has jurisdiction to decide claims brought under 15 U.S.C.

18 2301 by virtue of 28 U.S.C. section 1332(a) – (d).

19 104.   The class vehicles are "consumer products" within the meaning of the

20 Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(1).

21 105.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss

22 Warranty Act, 15 U.S.C. section 2301(3).  They are consumers because they are

23 persons entitled under applicable state law to enforce against the warrantor the

24 obligations of its implied warranties.

25 106.   GM is a "supplier" and "warrantor" within the meaning of the

26 Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(4) – (5).

27 107.   15 U.S.C. section 2310(d)(1) provides a cause of action for any

28 consumer who is damaged by the failure of a warrantor to comply with an implied

**KNAPP,
PETERSEN
& CLARKE**

-22-

1 warranty.

2   108.   GM provided plaintiffs and the other class members with an implied

3 warranty of merchantability in connection with the purchase or lease of their vehicles

4 on or after July 11, 2009, that is an "implied warranty" within the meaning of the

5 Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(7).  As a part of the implied

6 warranty of merchantability, GM warranted that the class vehicles were fit for their

7 ordinary purpose as safe passenger motor vehicles, would pass without objection in

8 the trade as designed, manufactured and marketed and packaged and labeled.

9   109.   GM breached its implied warranties as described in more detail above

10 and is therefore, liable to plaintiffs and the class pursuant to 15 U.S.C. section

11 2310(d)(1).  Without limitation, the class vehicles share common design defects in

12 that they are defectively designed and manufactured to permit excessive valve wear

13 which results in sudden failure during ordinary operation, leaving occupants of the

14 class vehicles vulnerable to crashes, serious injury, and death.

15   110.   In its capacity as a warrantor, GM had knowledge of the inherent

16 defects in the class vehicles.  Any effort by GM to limit the implied warranties in a

17 manner that would exclude coverage of the class vehicles is unconscionable, and any

18 such effort to disclaim, or otherwise limit, liability for the class vehicles is null and

19 void.

20   111.   Any limitations GM might seek to impose on its warranties are

21 procedurally unconscionable.  There was unequal bargaining power between GM and

22 the plaintiffs and the other class members as, at all times of purchase and lease,

23 plaintiffs and the other class members had no other options for purchasing warranty

24 coverage other than directly from GM.

25   112.   Any limitations GM might seek to impose on its warranties are

26 substantively unconscionable.  GM knew that the class vehicles were defective and

27 would continue to pose risks after the warranties purportedly expired.  GM failed to

28 disclose these defects to plaintiffs and the other class members.  Thus, GM's

**KNAPP,
PETERSEN
& CLARKE**

-23-

1 enforcement of the durational limitations on those warranties is harsh and shocks the

2 conscience.

3      113.   Plaintiffs and each of the other class members have had sufficiently

4 direct dealings with either GM or its agents (dealerships) to establish a privity of

5 contract between GM on the one hand, and plaintiffs and each of the other class

6 members, on the other hand.  Nonetheless, privity is not required here because

7 plaintiffs and each of the other class members are intended third party beneficiaries

8 of contracts between GM and its dealers, and specifically, of GM's implied

9 warranties.  The dealers were not intended to be the ultimate consumers of the class

10 vehicles and have no rights under the warranty agreements provided with the class

11 vehicles; the warranty agreements were designed for and intended to benefit

12 consumers.  Finally, privity is also not required because the class vehicles are

13 dangerous instrumentalities due to the aforementioned defects and non-conformities.

14      114.   Pursuant to 15 U.S.C. section 2310(e), plaintiffs are entitled to bring this

15 class action and are not required to give GM notice and an opportunity to cure until

16 such time as the Court determines the representative capacity of plaintiffs pursuant to

17 Rule 23 of the Federal Rules of Civil Procedure.

18      115.   The amount in controversy of plaintiffs' individual claims meets or

19 exceeds the sum of $25.  The amount in controversy of this action exceeds the sum

20 of $50,000, exclusive of interest and costs, computed on the basis of all claims to be

21 determined in this lawsuit.  Plaintiffs, individually and on behalf of the other class

22 members, seek all damages permitted by law, including diminution in value of their

23 vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C.

24 2310(d)(2), plaintiffs and other class members are entitled to recover a sum equal to

25 the aggregate amount of costs and expenses (including attorneys' fees based on

26 actual time expended) determined by the Court to have reasonably been incurred by

27 plaintiffs and the other class members in connection with the commencement and

28 prosecution of this action.

**KNAPP,
PETERSEN
& CLARKE**

-24-

116.   Further, plaintiffs and the class are also entitled to equitable relief under 15 U.S.C. section 2310(d)(1).  Based on GM's continuing failures to fix the known defects, plaintiffs seek a declaration that GM has not adequately implemented its recall commitments and requirements and general commitments to fix its failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted.  Plaintiffs also seek and a determination that GM is obligated to provide warranty services beyond the time specified in said warranties, based on the facts as alleged herein.  Plaintiffs also seek the establishment of a GM funded program for plaintiffs and class members to recover out-of-pocket costs incurred in attempting to rectify the defects in their vehicles.

## COUNT III

## NEGLIGENCE

117.   Plaintiffs bring this Count on behalf of members of the nationwide class who reside in Arkansas, Maryland, Louisiana, Maryland and Ohio (negligence subclasses).

118.   GM has designed, manufactured, sold or otherwise placed in the stream of commerce class vehicles which are defective, as set forth above.

119.   GM had a duty to design and manufacture a product that would be useful for its intended and foreseeable uses and users, including the use to which its products were put by plaintiffs and other members of the negligence subclasses.

120.   GM breached its duties to plaintiffs and the other members of the negligence subclasses because GM was negligent in the design, development and manufacture and testing of the class vehicles, and GM is responsible for this negligence.

121.   GM was negligent in the design, development, manufacture and testing of the class vehicles because it knew, or in the exercise of reasonable care should have known, that the vehicles equipped with a 7.0 liter V8 engine were defective and posed an unreasonable risk of catastrophic engine failure with a risk of death or

KNAPP,
PETERSEN
& CLARKE

-25-

1   seriously bodily injury to plaintiffs and other members of the negligent subclasses,

2   passengers, other motorists, pedestrians and the public at large.

3       122.   Plaintiffs, individually and on behalf of the other members of the

4   negligence subclasses, rely upon Restatement (second) of Torts section 395.

5       123.   GM further breached it duties to plaintiffs and the other members of the

6   negligence subclasses by supplying directly or through a third persons defective

7   vehicles to be used by such foreseeable persons as plaintiffs and the other members

8   of negligence subclasses.

9       124.   GM knew, or had reason to know, that the vehicles were likely to suffer

10   a catastrophic engine failure and were likely dangerous for the use to which they

11   were supplied.

12       125.   GM failed to exercise reasonable care to inform customers of the

13   dangerous condition or of the facts under which the vehicles are likely to be

14   dangerous.

15       126.   GM had a continuing duty to warn and instruct the intended foreseeable

16   users of its vehicles, including plaintiffs and the other members of the negligence

17   subclasses, of the defective condition of the vehicles and the risk attended to using

18   the vehicles.  Plaintiffs and other members of the negligence subclass were entitled

19   to know that the vehicles, in their ordinary operation, were not reasonably safe for

20   their intended and ordinary purposes and uses.

21       127.   GM knew or should have known of the defects described herein.  GM

22   breached it duty to plaintiffs and other members of the negligence subclasses because

23   it failed to warn and instruct the intended foreseeable users of its vehicles of the

24   defective conditions of the vehicles, and the risk attended to using the vehicles.

25       128.   As a direct and proximate result of GM's negligence, plaintiffs and the

26   other members of the negligence subclasses suffered damages.

27   ////

28   ////

**KNAPP,
PETERSEN
& CLARKE**

-26-

**Alabama**

## COUNT IV

## VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT
## (ALA. CODE § 8-19-1, et seq.)

129.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

130.   This claim is brought solely on behalf of Nationwide Class Members who are Alabama residents (the "Alabama Class").

131.   Plaintiffs and the Alabama Class are "consumers" within the meaning of ALA. CODE § 8-19-3(2).

132.   Plaintiffs, the Alabama Class, and New GM are "persons" within the meaning of ALA. CODE § 8-19-3(5).

133.   The class vehicles are "goods" within the meaning of ALA. CODE § 8-19-3(3).

134.   New GM was and is engaged in "trade or commerce" within the meaning of ALA. CODE § 8-19-3(8).

135.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5.  New GM engaged in deceptive business practices prohibited by the Alabama DTPA, including: representing that class vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that class vehicles are of a particular standard, quality, and grade when they are not; advertising class vehicles with the intent not to sell or lease them as advertised;

KNAPP,
PETERSEN
& CLARKE

-27-

1 representing that the subject of a transaction involving class vehicles has been

2 supplied in accordance with a previous representation when it has not; and engaging

3 in other unconscionable, false, misleading, or deceptive act or practice in the conduct

4 of trade or commerce.

5      136.   New GM also engaged in unlawful trade practices by employing

6 deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

7 suppression or omission of any material fact with intent that others rely upon such

8 concealment, suppression or omission, in connection with the sale of class vehicles

9 old on or after July 11, 2009.

10      137.   From the date of its inception on July 11, 2009, New GM knew of many

11 serious defects affecting many models and years of class vehicles, because of (i) the

12 knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

13 investigations, and notifications from regulatory authorities; and (iii) ongoing

14 performance of New GM's TREAD Act obligations. New GM became aware of

15 other serious defects and systemic safety issues years ago, but concealed all of that

16 information.

17      138.   New GM was also aware that it valued cost-cutting over safety, selected

18 parts from the cheapest supplier regardless of quality, and actively discouraged

19 employees from finding and flagging known defects, and that this approach would

20 necessarily cause the existence of more defects in the vehicles it designed and

21 manufactured and the failure to disclose and remedy defects in all class vehicles.

22 New GM concealed this information as well.

23      139.   By failing to disclose and by actively concealing the many defects in

24 class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

25 presenting itself as a reputable manufacturer that valued safety and stood behind its

26 vehicles after they were sold, New GM engaged in deceptive business practices in

27 violation of the Alabama DTPA.

28      140.   In the course of New GM's business, it willfully failed to disclose and

**KNAPP,
PETERSEN
& CLARKE**

-28-

2411127.1  08000/01006

actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

141. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

142. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Alabama Class.

143. New GM knew or should have known that its conduct violated the Alabama DTPA.

144. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

145. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)     Intentionally concealed the foregoing from Plaintiffs; and/or

(c)     Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

KNAPP,
PETERSEN
& CLARKE

-29-

146. Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

147. New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Alabama Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

148. Plaintiffs and the Alabama Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

149. Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Alabama DTPA. And, in any event, all class vehicle owners suffered ascertainable loss in the form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

150. As a direct and proximate result of New GM's violations of the Alabama DTPA, Plaintiffs and the Alabama Class have suffered injury-in-fact and/or actual damage.

KNAPP,
PETERSEN
& CLARKE

-30-

151.   Pursuant to ALA. CODE § 8-19-10, Plaintiffs and the Alabama Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff and each Alabama Class member.

152.   Plaintiffs also seek an order enjoining New GM's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the ALA. CODE § 8-19-1, et seq.

## COUNT V

## FRAUD BY CONCEALMENT

153.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

154.   This claim is brought on behalf of Nationwide Class Members who are Alabama residents (the "Alabama Class").

155.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

156.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

157.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

158.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of

**KNAPP,
PETERSEN
& CLARKE**

-31-

1   the vehicles.

2      159.  New GM had a duty to disclose the defects in the class vehicles because

3   they were known and/or accessible only to New GM, were in fact known to New

4   GM as of the time of its creation in 2009 and at every point thereafter, New GM had

5   superior knowledge and access to the facts, and New GM knew the facts were not

6   known to or reasonably discoverable by Plaintiffs and the Alabama Class. New GM

7   also had a duty to disclose because it made many general affirmative representations

8   about the safety, quality, and lack of defects in its vehicles, as set forth above, which

9   were misleading, deceptive and incomplete without the disclosure of the additional

10   facts set forth above regarding defects in the class vehicles. Having volunteered to

11   provide information to Plaintiffs, GM had the duty to disclose not just the partial

12   truth, but the entire truth. These omitted and concealed facts were material because

13   they directly impact the value of the class vehicles purchased or leased by Plaintiffs

14   and the Alabama Class.

15      160.  New GM actively concealed and/or suppressed these material facts, in

16   whole or in part, to protect its profits and avoid recalls that would hurt the brand's

17   image and cost New GM money, and it did so at the expense of Plaintiffs and the

18   Alabama Class.

19      161.  On information and belief, New GM has still not made full and adequate

20   disclosure and continues to defraud Plaintiffs and the Alabama Class and conceal

21   material information regarding defects that exist in the class vehicles.

22      162.  Plaintiffs and the Alabama Class were unaware of these omitted

23   material facts and would not have acted as they did if they had known of the

24   concealed and/or suppressed facts, in that they would not have purchased cars

25   manufactured by New GM; and/or they would not have purchased cars manufactured

26   by Old GM in the time after New GM had come into existence and had fraudulently

27   opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

28   not have continued to drive their vehicles or would have taken other affirmative

KNAPP,
PETERSEN
& CLARKE

-32-

1  steps. Plaintiffs' and the Alabama Class's actions were justified. New GM was in

2  exclusive control of the material facts and such facts were not known to the public,

3  Plaintiffs, or the Alabama Class.

4       163. Because of the concealment and/or suppression of the facts, Plaintiffs

5  and the Alabama Class sustained damage because they own vehicles that diminished

6  in value as a result of New GM's concealment of, and failure to timely disclose, the

7  defects in the class vehicles and the quality issues engendered by New GM's

8  corporate policies. Had they been aware of the defects that existed in the class

9  vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

10  New GM came into existence either would have paid less for their vehicles or would

11  not have purchased or leased them at all; and no Plaintiffs regardless of time of

12  purchase or lease would have maintained their vehicles.

13       164. The value of all Alabama Class Members' vehicles has diminished as a

14  result of New GM's fraudulent concealment of the defects which have tarnished the

15  Corvette brand and made any reasonable consumer reluctant to purchase any of the

16  class vehicles, let alone pay what otherwise would have been fair market value for

17  the vehicles.

18       165. Accordingly, New GM is liable to the Alabama Class for damages in an

19  amount to be proven at trial.

20       166. New GM's acts were done maliciously, oppressively, deliberately, with

21  intent to defraud, and in reckless disregard of Plaintiffs' and the Alabama Class's

22  rights and well-being to enrich New GM. New GM's conduct warrants an assessment

23  of punitive damages in an amount sufficient to deter such conduct in the future,

24  which amount is to be determined according to proof.

25  **COUNT VI**

26  **THIRD-PARTY BENEFICIARY CLAIM**

27       167. Plaintiffs reallege and incorporate by reference all paragraphs as though

28  fully set forth herein.

**KNAPP,
PETERSEN
& CLARKE**

-33-

168.   This claim is brought only on behalf of Class members who are Alabama residents (the "Alabama Class").

169.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

170.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by New GM, the Sales Agreement is a valid and binding contract.

171.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

172.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

**KNAPP,
PETERSEN
& CLARKE**

-34-

2411127.1  08000/01006

1    or should know that a safety defect exists – including notifying NHTSA and

2    consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

3    573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

4         173.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

5    Old GM, are the clear intended beneficiaries of New GM's agreement to comply

6    with the TREAD Act. Under the Sales Agreement, Plaintiffs were to receive the

7    benefit of having a manufacturer responsible for monitoring the safety of their Old

8    GM vehicles and making certain that any known defects would be promptly

9    remedied.

10        174.   Although the Sale Order which consummated New GM's purchase of

11   Old GM purported to give New GM immunity for claims concerning vehicles or

12   parts made by Old GM, the bankruptcy court recently ruled that provision to be

13   unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

14   conduct with respect to cars and parts made by Old GM. Therefore, that provision of

15   the Sale Order and related provisions of the Sale Agreement cannot be read to bar

16   Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

17   breaches of the promise it made in the Sales Agreement.

18        175.   New GM breached its covenant to comply with the TREAD Act with

19   respect to class vehicles, as it failed to take action to remediate the defects at any

20   time, up to the present.

21        176.   Plaintiffs and the Alabama Class were damaged as a result of New

22   GM's breach. Because of New GM's failure to timely remedy the defect in the class

23   vehicles, the value of Old GM class vehicles has diminished in an amount to be

24   determined at trial.

25                                **COUNT VII**

26                            **UNJUST ENRICHMENT**

27        177.   Plaintiffs reallege and incorporate by reference all paragraphs as though

28   fully set forth herein.

**KNAPP,
PETERSEN
& CLARKE**

-35-

178.   This claim is brought on behalf of members of the Alabama Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Alabama Unjust Enrichment Class").

179.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

180.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

181.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

182.   Thus, all Alabama Unjust Enrichment Class Members conferred a benefit on New GM.

183.   It is inequitable for New GM to retain these benefits.

184.   Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

185.   New GM knowingly accepted the benefits of its unjust conduct.

186.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

////

////

////

**KNAPP,
PETERSEN
& CLARKE**

-36-

**Arizona**

1

**COUNT VIII**

**VIOLATIONS OF THE CONSUMER FRAUD ACT**

**(Arizona Rev. Stat. § 44-1521, et seq.)**

187.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

188.   This claim is brought only on behalf of Class Members who are Arizona residents (the "Arizona Class").

189.   Plaintiffs, the Arizona Class and New GM are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), ARIZ. REV. STAT. § 44-1521(6).

190.   The class vehicles are "merchandise" within the meaning of ARIZ. REV. STAT. § 44-1521(5).

191.   The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522(A).

192.   New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles sold on or after July 11, 2009.

193.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

1 investigations, and notifications from regulatory authorities; and (iii) ongoing
2 performance of New GM's TREAD Act obligations.  New GM became aware of
3 other serious defects and systemic safety issues years ago, but concealed all of that
4 information.

5      194.   New GM was also aware that it valued cost-cutting over safety, selected
6 parts from the cheapest supplier regardless of quality, and actively discouraged
7 employees from finding and flagging known safety defects, and that this approach
8 would necessarily cause the existence of more defects in the vehicles it designed and
9 manufactured and the failure to disclose and remedy defects in all class vehicles.
10 New GM concealed this information as well.

11      195.   By failing to disclose and by actively concealing the many defects in
12 class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by
13 presenting itself as a reputable manufacturer that valued safety and stood behind its
14 vehicles after they were sold, New GM engaged in deceptive business practices in
15 violation of the Arizona CFA.

16      196.   In the course of New GM's business, it willfully failed to disclose and
17 actively concealed the dangerous risk posed by the defects discussed above.  New
18 GM compounded the deception by repeatedly asserting that class vehicles were safe,
19 reliable, and of high quality, and by claiming to be a reputable manufacturer that
20 valued safety and stood behind its vehicles once they are on the road.

21      197.   New GM's unfair or deceptive acts or practices were likely to and did in
22 fact deceive reasonable consumers, including Plaintiffs, about the true safety and
23 reliability of class vehicles, the quality of the New GM brand, the devaluing of safety
24 at New GM, and the true value of the class vehicles.

25      198.   New GM intentionally and knowingly misrepresented material facts
26 regarding the class vehicles with an intent to mislead Plaintiffs and the Arizona
27 Class.

28      199.   New GM knew or should have known that its conduct violated the

**KNAPP,
PETERSEN
& CLARKE**

-38-

1    Arizona CFA.

2        200.    As alleged above, New GM made material statements about the safety

3    and reliability of the class vehicles and the GM brand that were either false or

4    misleading.

5        201.    New GM owed Plaintiffs a duty to disclose the true safety and reliability

6    of the class vehicles and the devaluing of safety at New GM, because New GM:

7            (a)    Possessed exclusive knowledge that it valued cost-cutting over

8    safety, selected parts from the cheapest supplier regardless of quality, and actively

9    discouraged employees from finding and flagging known safety defects, and that this

10   approach would necessarily cause the existence of more defects in the vehicles it

11   designed and manufactured;

12           (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

13           (c)    Made incomplete representations about the safety and reliability

14   of the class vehicles generally, and the valve guide defects in particular, while

15   purposefully withholding material facts from Plaintiffs that contradicted these

16   representations.

17       202.    Because New GM fraudulently concealed the defects in the class

18   vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

19   attached to those vehicles by New GM's conduct, they are now worth significantly

20   less than they otherwise would be.

21       203.    New GM's systemic devaluation of safety and its concealment of the

22   defects in the class vehicles were material to Plaintiffs and the Arizona Class.  A

23   vehicle made by a reputable manufacturer of vehicles is worth more than an

24   otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

25   conceals defects rather than promptly remedies them.

26       204.    Plaintiffs and the Arizona Class suffered ascertainable loss caused by

27   New GM's misrepresentations and its concealment of and failure to disclose material

28   information.  Plaintiffs who purchased class vehicles after the date of New GM's

KNAPP,
PETERSEN
& CLARKE

-39-

1    inception either would have paid less for their vehicles or would not have purchased

2    or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

3    of New GM's misconduct.

4         205.   Regardless of time of purchase or lease, no Plaintiffs would have

5    maintained and continued to drive their vehicles had they been aware of New GM's

6    misconduct. By contractually assuming TREAD Act responsibilities with respect to

7    Old GM class vehicles, New GM effectively assumed the role of manufacturer of

8    those vehicles because the TREAD Act on its face only applies to vehicle

9    manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

10   vehicle owners to refrain from unfair and deceptive acts or practices under the

11   Arizona CFA.  And, in any event, all class vehicle owners suffered ascertainable loss

12   in the form of diminished value of their vehicles as a result of New GM's deceptive

13   and unfair acts and practices made in the course of New GM's business.

14        206.   The recalls and repairs instituted by New GM have not been adequate.

15        207.   As a direct and proximate result of New GM's violations of the Arizona

16   CFA, Plaintiffs and the Arizona Class have suffered injury-in-fact and/or actual

17   damage.

18        208.   Plaintiffs and the Arizona Class seek monetary relief against New GM

19   as the greater of (a) actual damages in an amount to be determined at trial and (b)

20   statutory in the amount of $100 for each Plaintiff and each Arizona Class Member.

21   Plaintiffs and the Arizona Class also seek punitive damages because New GM

22   engaged in aggravated and outrageous conduct with an evil mind.

23        209.   Plaintiffs also seek an order enjoining New GM's unfair, unlawful,

24   and/or deceptive practices, attorneys' fees, and any other just and proper relief

25   available under the Arizona CFA.

26   ////

27   ////

28   ////

**KNAPP,
PETERSEN
& CLARKE**

-40-

2411127.1  08000/01006

## COUNT IX

## FRAUD BY CONCEALMENT

210.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

211.    This claim is brought on behalf of Nationwide Class Members who are Arizona residents (the "Arizona Class").

212.    New GM concealed and suppressed material facts concerning the quality of the class vehicles.

213.    New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

214.    New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

215.    New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

216.    New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Arizona Class.  New GM also had a duty to disclose because it made many general affirmative representations

-41-

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Arizona Class.

217. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Arizona Class.

218. On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Arizona Class and conceal material information regarding defects that exist in the class vehicles.

219. Plaintiffs and the Arizona Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Arizona Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Arizona Class.

220. Because of the concealment and/or suppression of the facts, Plaintiffs and the Arizona Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's

1  corporate policies.  Had they been aware of the defects that existed in the class

2  vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

3  New GM came into existence either would have paid less for their vehicles or would

4  not have purchased or leased them at all; and no Plaintiffs regardless of time of

5  purchase or lease would have maintained their vehicles.

6       221.   The value of all Arizona Class Members' vehicles has diminished as a

7  result of New GM's fraudulent concealment of the defects which have tarnished the

8  Corvette brand and made any reasonable consumer reluctant to purchase any of the

9  class vehicles, let alone pay what otherwise would have been fair market value for

10  the vehicles.

11       222.   Accordingly, New GM is liable to the Arizona Class for damages in an

12  amount to be proven at trial.

13       223.   New GM's acts were done maliciously, oppressively, deliberately, with

14  intent to defraud, and in reckless disregard of Plaintiffs' and the Arizona Class's

15  rights and well-being to enrich New GM. New GM's conduct warrants an assessment

16  of punitive damages in an amount sufficient to deter such conduct in the future,

17  which amount is to be determined according to proof.

18                               **COUNT X**

19                    **THIRD-PARTY BENEFICIARY CLAIM**

20       224.   Plaintiffs reallege and incorporate by reference all paragraphs as though

21  fully set forth herein.

22       225.   This claim is brought only on behalf of Class members who are Arizona

23  residents (the "Arizona Class").

24       226.   In the Sales Agreement through which New GM acquired substantially

25  all of the assets of New GM, New GM explicitly agreed as follows:

26            From and after the Closing, [New GM] shall comply with the

27            certification, reporting and recall requirements of the National Traffic

28            and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

KNAPP,
PETERSEN
& CLARKE

-43-

1    Recall Enhancement, Accountability and Documentation Act, the Clean

2    Air Act, the California Health and Safety Code and similar Laws, in

3    each case, to the extent applicable in respect of vehicles and vehicle

4    parts manufactured or distributed by [Old GM].

5    227.  With the exception of the portion of the agreement that purports to

6  immunize New GM from its own independent misconduct with respect to cars and

7  parts made by Old GM, the Sales Agreement is a valid and binding contract.

8    228.  But for New GM's covenant to comply with the TREAD Act with

9  respect to cars and parts made by Old GM, the TREAD Act would have no

10  application to New GM with respect to those cars and parts. That is because the

11  TREAD Act on its face imposes reporting and recall obligations only on the

12  "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

13    229.  Because New GM agreed to comply with the TREAD Act with respect

14  to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

15  make quarterly submissions to NHTSA of "early warning reporting" data, including

16  incidents involving property damage, warranty claims, consumer complaints, and

17  field reports concerning failure, malfunction, lack of durability or other performance

18  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

19  underlying records on which the early warning reports are based and all records

20  containing information on malfunctions that may be related to motor vehicle safety.

21  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

22  or should know that a safety defect exists – including notifying NHTSA and

23  consumers and ordering a recall if necessary.  See 49 U.S.C. § 30118(c); 49 C.F.R. §

24  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

25    230.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by

26  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

27  with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the

28  benefit of having a manufacturer responsible for monitoring the safety of their Old

**KNAPP,
PETERSEN
& CLARKE**

-44-

1   GM vehicles and making certain that any known defects would be promptly

2   remedied.

3       231.   Although the Sale Order which consummated New GM's purchase of

4   Old GM purported to give New GM immunity from claims concerning vehicles or

5   parts made by Old GM, the bankruptcy court recently ruled that provision to be

6   unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

7   conduct with respect to cars and parts made by Old GM. Therefore, that provision of

8   the Sale Order and related provisions of the Sale Agreement cannot be read to bar

9   Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

10  breaches of the promise it made in the Sale Agreement.

11      232.   New GM breached its covenant to comply with the TREAD Act with

12  respect to class vehicles, as it failed to take action to remediate defects at any time,

13  up to the present.

14      233.   Plaintiffs and the Arizona Class were damaged as a result of New GM's

15  breach. Because of New GM's failure to timely remedy the defect in class vehicles,

16  the value of Old GM class vehicles has diminished in an amount to be determined at

17  trial.

18              **COUNT XI**

19          **UNJUST ENRICHMENT**

20      234.   Plaintiffs reallege and incorporate by reference all paragraphs as though

21  fully set forth herein.

22      235.   This claim is brought on behalf of members of the Arizona Class who

23  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

24  after New GM came into existence, and who purchased or leased class vehicles in the

25  time period before New GM came into existence, which cars were still on the road

26  after New GM came into existence (the "Arizona Unjust Enrichment Class").

27      236.   New GM has received and retained a benefit from the Plaintiffs and

28  inequity has resulted.

**KNAPP,
PETERSEN
& CLARKE**

-45-

2411127.1   08000/01006

237. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

238. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

239. Thus, all Arizona Unjust Enrichment Class Members conferred a benefit on New GM.

240. It is inequitable for New GM to retain these benefits.

241. Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

242. New GM knowingly accepted the benefits of its unjust conduct.

243. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**California**

## COUNT XII

## VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT

## (Cal. Civ. Code § 1750, et seq.)

244. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

245. This claim is brought only on behalf of Nationwide Class Members who are California residents (the "California Class").

246. New GM is a "person" under Cal. Civ. Code § 1761(c).

247. Plaintiffs and the California Class are "consumers," as defined by CAL.

KNAPP,
PETERSEN
& CLARKE

-46-

1   CIVIL CODE § 1761(d), who purchased or leased one or more class vehicles.

2      248.   The California Legal Remedies Act ("CLRA") prohibits "unfair or

3   deceptive acts or practices undertaken by any person in a transaction intended to

4   result or which results in the sale or lease of goods or services to any consumer[.]"

5   Cal. Civ. Code § 1770(a).  New GM has engaged in unfair or deceptive acts or

6   practices that violated Cal. Civ. Code § 1750, et seq., as described above and below,

7   by among other things, representing that class vehicles have characteristics, uses,

8   benefits, and qualities which they do not have; representing that class vehicles are of

9   a particular standard, quality, and grade when they are not; advertising class vehicles

10  with the intent not to sell or lease them as advertised; and representing that the

11  subject of a transaction involving class vehicles has been supplied in accordance with

12  a previous representation when it has not.

13     249.   In the course of its business, New GM systematically devalued safety

14  and concealed defects in class vehicles as described herein and otherwise engaged in

15  activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

16  trade practices by employing deception, deceptive acts or practices, fraud,

17  misrepresentations, or concealment, suppression or omission of any material fact

18  with intent that others rely upon such concealment, suppression or omission, in

19  connection with the sale of case vehicles.

20     250.   From the date of its inception on July 11, 2009, New GM knew of many

21  serious defects affecting many models and years of class vehicles, because of (i) the

22  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

23  investigations, and notifications from regulatory authorities; and (iii) ongoing

24  performance of New GM's TREAD Act obligations.  New GM became aware of

25  other serious defects and systemic safety issues years ago, but concealed all of that

26  information.

27     251.   New GM was also aware that it valued cost-cutting over safety, selected

28  parts from the cheapest supplier regardless of quality, and actively discouraged

**KNAPP,
PETERSEN
& CLARKE**

-47-

1   employees from finding and flagging known safety defects, and that this approach

2   would necessarily cause the existence of more defects in the vehicles it designed and

3   manufactured and the failure to disclose and remedy defects in all class vehicles.

4   New GM concealed this information as well.

5       252.   By failing to disclose and by actively concealing the many defects in

6   class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

7   presenting itself as a reputable manufacturer that valued safety and stood behind its

8   vehicles after they were sold, New GM engaged in unfair and deceptive business

9   practices in violation of the CLRA.

10      253.   In the course of New GM's business, it willfully failed to disclose and

11  actively concealed the dangerous risk posed by the defects discussed above.  New

12  GM compounded the deception by repeatedly asserting that class vehicles were safe,

13  reliable, and of high quality, and by claiming to be a reputable manufacturer that

14  valued safety and stood behind its vehicles once they are on the road.

15      254.   New GM's unfair or deceptive acts or practices were likely to and did in

16  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

17  reliability of class vehicles, the quality of the GM brand, the devaluing of safety at

18  New GM, and the true value of the class vehicles.

19      255.   New GM intentionally and knowingly misrepresented material facts

20  regarding the class vehicles with an intent to mislead Plaintiffs and the California

21  Class.

22      256.   New GM knew or should have known that its conduct violated the

23  CLRA.

24      257.   As alleged above, New GM made material statements about the safety

25  and reliability of the class vehicles and the GM brand that were either false or

26  misleading.

27      258.   New GM owed Plaintiffs a duty to disclose the true safety and reliability

28  of the class vehicles and the devaluing of safety at New GM, because New GM:

**KNAPP,
PETERSEN
& CLARKE**

-48-

1          (a)     Possessed exclusive knowledge that it valued cost-cutting over

2 safety, selected parts from the cheapest supplier regardless of quality, and actively

3 discouraged employees from finding and flagging known safety defects, and that this

4 approach would necessarily cause the existence of more defects in the vehicles it

5 designed and manufactured;

6          (b)     Intentionally concealed the foregoing from Plaintiffs; and/or

7          (c)     Made incomplete representations about the safety and reliability

8 of the class vehicles generally, and the valve guide defects in particular, while

9 purposefully withholding material facts from Plaintiffs that contradicted these

10 representations.

11     259.   Because New GM fraudulently concealed the defects in the class

12 vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

13 attached to those vehicles by New GM's conduct, they are now worth significantly

14 less than they otherwise would be.

15     260.   New GM's systemic devaluation of safety and its concealment of the

16 defects in the class vehicles were material to Plaintiffs and the California Class. A

17 vehicle made by a reputable manufacturer of vehicles is worth more than an

18 otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

19 conceals defects rather than promptly remedies them.

20     261.   Plaintiffs and the California Class suffered ascertainable loss caused by

21 New GM's misrepresentations and its concealment of and failure to disclose material

22 information. Plaintiffs who purchased class vehicles after the date of New GM's

23 inception either would have paid less for their vehicles or would not have purchased

24 or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result

25 of New GM's misconduct.

26     262.   Regardless of time of purchase or lease, no Plaintiffs would have

27 maintained and continued to drive their vehicles had they been aware of New GM's

28 misconduct. By contractually assuming TREAD Act responsibilities with respect to

KNAPP,
PETERSEN
& CLARKE

-49-

1    Old GM class vehicles, New GM effectively assumed the role of manufacturer of

2    those vehicles because the TREAD Act on its face only applies to vehicle

3    manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

4    vehicle owners to refrain from unfair and deceptive acts or practices under the

5    CLRA. And, in any event, all class vehicle owners suffered ascertainable loss of the

6    diminished value of their vehicles as a result of New GM's deceptive and unfair acts

7    and practices made in the course of New GM's business.

8        263.  As a direct and proximate result of New GM's violations of the CLRA,

9    Plaintiffs and the California Class have suffered injury-in-fact and/or actual damage.

10       264.  Under Cal. Civ. Code § 1780(a), Plaintiffs and the California Class seek

11   monetary relief against New GM measured as the diminution of the value of their

12   vehicles caused by New GM's violations of the CLRA as alleged herein.

13       265.  Under Cal. Civ. Code § 1780(b), Plaintiffs seek an additional award

14   against New GM of up to $5,000 for each California Class member who qualifies as

15   a "senior citizen" or "disabled person" under the CLRA. New GM knew or should

16   have known that its conduct was directed to one or more California Class Members

17   who are senior citizens or disabled persons. New GM's conduct caused one or more

18   of these senior citizens or disabled persons to suffer a substantial loss of property set

19   aside for retirement or for personal or family care and maintenance, or assets

20   essential to the health or welfare of the senior citizen or disabled person. One or

21   more California Class Members who are senior citizens or disabled persons are

22   substantially more vulnerable to New GM's conduct because of age, poor health or

23   infirmity, impaired understanding, restricted mobility, or disability, and each of them

24   suffered substantial physical, emotional, or economic damage resulting from New

25   GM's conduct.

26       266.  Plaintiffs also seek punitive damages against New GM because it

27   carried out reprehensible conduct with willful and conscious disregard of the rights

28   and safety of others, subjecting Plaintiffs and the California Class to potential cruel

KNAPP,
PETERSEN
& CLARKE

-50-

2411127.1  08000/01006

and unjust hardship as a result. New GM intentionally and willfully deceived Plaintiffs on life-or-death matters, and concealed material facts that only New GM knew. New GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under Cal. Civ. Code § 3294.

267.    Plaintiffs further seek an order enjoining New GM's unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

## COUNT XIII

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, et seq.)

268.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

269.    This claim is brought only on behalf of Nationwide Class Members who are California residents (the "California Class").

270.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." New GM has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

271.    New GM violated the unlawful prong of § 17200 by the following:

(a)      violations of the CLRA, Cal. Civ. Code § 1750, et seq., as set forth in California Count I by the acts and practices set forth in this Complaint.

(b)      violation of the common-law claim of negligent failure to recall, in that New GM knew or should have known the defects in class vehicles were dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner; New GM became aware of the attendant risks after the class vehicles were sold; continued to gain information further corroborating the defects; and failed to adequately recall the class vehicles, which failure was a substantial factor in causing Plaintiffs and the Class harm, including diminished value and out-of-pocket costs.

KNAPP,
PETERSEN
& CLARKE

-51-

(c)     violation of the National Traffic and Motor Vehicle Safety Act of
1996, codified at 49 U.S.C. §§ 30101-30170, and its regulations. Federal Motor
Vehicle Safety Standard ("FMVSS") 573 governs a motor vehicle manufacturer's
responsibility to notify NHTSA of a motor vehicle defect within five days of
determining that the defect is safety related.  See 49 C.F.R. § 573.6. New GM
violated these reporting requirements by failing to report the myriad defects
discussed herein within the required time, and failing to timely recall all impacted
vehicles, despite its explicit promise in § 6.15 of the Sales Agreement to comply with
the Safety Act obligations of a "manufacturer" of Old GM vehicles.

272.   New GM also violated the unfair and fraudulent prong of section 17200
by systematically devaluing safety and concealing defects in the class vehicles,
information that was material to a reasonable consumer.

273.   New GM also violated the unfair prong of section 17200 because the
acts and practices set forth in the Complaint, including systematically devaluing
safety and concealing defects in the class vehicles, offend established public policy,
and also because the harm New GM caused consumers greatly outweighs any
benefits associated with those practices. New GM's conduct has also impaired
competition within the automotive vehicles market and has prevented Plaintiffs and
the California Class from making fully informed decisions about whether to lease,
purchase and/or retain the class vehicles.

274.   From the date of its inception on July 11, 2009, New GM knew of many
serious defects the vehicles, because of (i) the knowledge of Old GM personnel who
remained at New GM; (ii) continuous reports, investigations, and notifications from
regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act
obligations, as discussed above. New GM became aware of other serious defects and
systemic safety issues years ago, but concealed all of that information.

275.   New GM was also aware that it valued cost-cutting over safety, selected
parts from the cheapest supplier regardless of quality, and actively discouraged

**KNAPP,
PETERSEN
& CLARKE**

-52-

2411127.1  08000/01006

1  employees from finding and flagging known safety defects, and that this approach

2  would necessarily cause the existence of more defects in the vehicles it designed and

3  manufactured and the failure to disclose and remedy defects in all the class vehicles.

4  New GM concealed this information as well.

5      276.  By failing to disclose and by actively concealing the many defects in

6  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

7  presenting itself as a reputable manufacturer that valued safety and stood behind its

8  vehicles after they were sold, New GM engaged in unlawful, unfair, or fraudulent

9  business acts or practices in violation of the UCL.

10     277.  In the course of New GM's business, it willfully failed to disclose and

11  actively concealed the dangerous risk posed by the defects discussed above. New

12  GM compounded the deception by repeatedly asserting that the class vehicles were

13  safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

14  that valued safety and stood behind its vehicles once they are on the road.

15     278.  New GM's unfair or deceptive acts or practices were likely to and did in

16  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

17  reliability of the class vehicles, and the true value of the class vehicles.

18     279.  New GM intentionally and knowingly misrepresented material facts

19  regarding the class vehicles with an intent to mislead Plaintiffs and the California

20  Class.

21     280.  New GM knew or should have known that its conduct violated the UCL.

22     281.  As alleged above, New GM made material statements about the safety

23  and reliability of the class vehicles and the GM brand that were either false or

24  misleading.

25     282.  New GM owed Plaintiffs a duty to disclose the true safety and reliability

26  of the class vehicles and the devaluing of safety at New GM, because New GM:

27         (a)    Possessed exclusive knowledge that it valued cost-cutting over

28  safety, selected parts from the cheapest supplier regardless of quality, and actively

KNAPP,
PETERSEN
& CLARKE

-53-

2411127.1  08000/01006

1  discouraged employees from finding and flagging known safety defects, and that this

2  approach would necessarily cause the existence of more defects in the vehicles it

3  designed and manufactured;

4         (b)     Intentionally concealed the foregoing from Plaintiffs; and/or

5         (c)     Made incomplete representations about the safety and reliability

6  of the class vehicles generally, and the valve guide defects in particular, while

7  purposefully withholding material facts from Plaintiffs that contradicted these

8  representations.

9      283.   Because New GM fraudulently concealed the defects in the class

10  vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma

11  attached to those vehicles by New GM's conduct, they are now worth significantly

12  less than they otherwise would be.

13      284.   New GM's systemic devaluation of safety and its concealment of the

14  defects in GM the class vehicles were material to Plaintiffs and the California Class.

15  A vehicle made by a reputable manufacturer of vehicles is worth more than an

16  otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

17  conceals defects rather than promptly remedying them.

18      285.   Plaintiffs and the California Class suffered ascertainable loss caused by

19  New GM's misrepresentations and its concealment of and failure to disclose material

20  information. Plaintiffs who purchased class vehicles after the date of New GM's

21  inception either would have paid less for their vehicles or would not have purchased

22  or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

23  of New GM's misconduct.

24      286.   Regardless of time of purchase or lease, no Plaintiffs would have

25  maintained and continued to drive their vehicles had they been aware of New GM's

26  misconduct. By contractually assuming TREAD Act responsibilities with respect to

27  Old GM class vehicles, New GM effectively assumed the role of manufacturer of

28  those vehicles because the TREAD Act on its face only applies to vehicle

**KNAPP,
PETERSEN
& CLARKE**

-54-

1   manufacturers. 49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM

2   vehicle owners to refrain from unfair and deceptive acts or practices under the UCL.

3   And, in any event, all class vehicle owners suffered ascertainable loss in the form of

4   diminished value of their vehicles as a result of New GM's deceptive and unfair acts

5   and practices made in the course of New GM's business.

6       287.   As a direct and proximate result of New GM's violations of the UCL,

7   Plaintiffs and the California Class have suffered injury-in-fact and/or actual damage.

8       288.   Plaintiffs request that this Court enter such orders or judgments as may

9   be necessary, including a declaratory judgment that New GM has violated the UCL;

10  an order enjoining New GM from continuing its unfair, unlawful, and/or deceptive

11  practices; an order supervising the recalls; an order and judgment restoring to the

12  California Class Members any money lost as the result of New GM's unfair,

13  unlawful, and deceptive trade practices, including restitution and disgorgement of

14  any profits New GM received as a result of its unfair, unlawful, and/or deceptive

15  practices, as provided in Cal. Bus. & Prof. Code § 17203, Cal Civ. Proc. § 384 and

16  Cal. Civ. Code § 3345; and for such other relief as may be just and proper.

17                          **COUNT XIV**

18                  **FRAUD BY CONCEALMENT**

19      289.   Plaintiffs reallege and incorporate by reference all paragraphs as though

20  fully set forth herein.

21      290.   This claim is brought on behalf of Nationwide Class Members who are

22  California residents (the "California Class").

23      291.   New GM concealed and suppressed material facts concerning the

24  quality of the class vehicles.

25      292.   New GM concealed and suppressed material facts concerning the

26  culture of New GM – a culture characterized by an emphasis on cost-cutting, the

27  studious avoidance of quality issues, and a shoddy design process.

28      293.   New GM concealed and suppressed material facts concerning the

KNAPP,
PETERSEN
& CLARKE

-55-

defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

294. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

295. New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the California Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the California Class.

296. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the California Class.

297. On information and belief, New GM has still not made full and adequate

**KNAPP,
PETERSEN
& CLARKE**

-56-

1 disclosure and continues to defraud Plaintiffs and the California Class and conceal
2 material information regarding defects that exist in the class vehicles.

3        298.   Plaintiffs and the California Class were unaware of these omitted
4 material facts and would not have acted as they did if they had known of the
5 concealed and/or suppressed facts, in that they would not have purchased cars
6 manufactured by New GM; and/or they would not have purchased cars manufactured
7 by Old GM in the time after New GM had come into existence and had fraudulently
8 opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would
9 not have continued to drive their vehicles or would have taken other affirmative
10 steps. Plaintiffs' and the California Class's actions were justified. New GM was in
11 exclusive control of the material facts and such facts were not known to the public,
12 Plaintiffs, or the California Class.

13        299.   Because of the concealment and/or suppression of the facts, Plaintiffs
14 and the California Class sustained damage because they own vehicles that
15 diminished in value as a result of New GM's concealment of, and failure to timely
16 disclose, the defects in the class vehicles and the quality issues engendered by New
17 GM's corporate policies. Had they been aware of the defects that existed in the class
18 vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after
19 New GM came into existence either would have paid less for their vehicles or would
20 not have purchased or leased them at all; and no Plaintiffs regardless of time of
21 purchase or lease would have maintained their vehicles.

22        300.   The value of all California Class Members' vehicles has diminished as a
23 result of New GM's fraudulent concealment of the defects which have tarnished the
24 Corvette brand and made any reasonable consumer reluctant to purchase any of the
25 class vehicles, let alone pay what otherwise would have been fair market value for
26 the vehicles.

27        301.   Accordingly, New GM is liable to the California Class for damages in
28 an amount to be proven at trial.

KNAPP,
PETERSEN
& CLARKE

-57-

302.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the California Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XV

## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Cal. Civ. Code §§ 1791.1 & 1792)

303.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

304.   This claim is brought only on behalf of California residents who are members of the Nationwide Class ("California Class").

305.   Plaintiffs are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

306.   The class vehicles are "consumer goods" within the meaning of Civ. Code § 1791(a).

307.   New GM was a "manufacturer" of the class vehicles within the meaning of Cal. Civ. Code § 1791(j).

308.   New GM impliedly warranted to Plaintiffs and the California Class that its class vehicles sold or leased on or after July 11, 2009 were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the class vehicles do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

309.   1536. Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)     Pass without objection in the trade under the contract description.

KNAPP,
PETERSEN
& CLARKE

-58-

2411127.1  08000/01006

1                (2)     Are fit for the ordinary purposes for which such

2  goods are used.

3                (3)     Are adequately contained, packaged, and labeled.

4                (4)     Conform to the promises or affirmations of fact

5  made on the container or label.

6     310.   The class vehicles would not pass without objection in the automotive

7  trade because of the defects that cause the class vehicles to suffer unusual and early

8  engine wear and failure.

9     311.   Because of these defects, the class vehicles are not reliable to drive and

10  thus not fit for ordinary purposes.

11     312.   The class vehicles are not adequately labeled because the labeling fails

12  to disclose the defects.  New GM failed to warn about the defects in the class

13  vehicles.

14     313.   New GM breached the implied warranty of merchantability by selling

15  class vehicles containing defects.  These defects have deprived Plaintiffs and the

16  California Class of the benefit of their bargain and have caused the class vehicles to

17  depreciate in value.

18     314.   Notice of breach is not required because Plaintiffs and California Class

19  members did not purchase their automobiles directly from New GM.

20     315.   As a direct and proximate result of New GM's breach of its duties under

21  California's law, Plaintiffs and California Class members received goods whose

22  defective condition substantially impairs their value.  Plaintiffs and the California

23  Class members have been damaged by the diminished value of their vehicles, the

24  product's malfunctioning, and the loss of use of their class vehicles.

25     316.   Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and California

26  Class members are entitled to damages and other legal and equitable relief including,

27  at their election, the purchase price of their class vehicles, or the overpayment or

28  diminution in value of their class vehicles.

**KNAPP,
PETERSEN
& CLARKE**

-59-

317. Under Cal. Civ. Code § 1794, Plaintiffs and California Class members are entitled to costs and attorneys' fees.

## COUNT XVI

## NEGLIGENT FAILURE TO RECALL

318. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

319. This claim is brought only on behalf of California residents who are members of the Nationwide Class (the "California Class").

320. New GM manufactured, distributed, and sold class vehicles.

321. New GM knew or reasonably should have known that the class vehicles were dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner.

322. New GM either knew of the defects before the vehicles were sold, or became aware of the defects and their attendant risks after the vehicles were sold.

323. New GM continued to gain information further corroborating the defects and their risks from its inception until this year.

324. New GM failed to adequately recall the class vehicles in a timely manner.

325. Purchasers of the class vehicles, including the California Class, were harmed by New GM's failure to adequately recall all the class vehicles in a timely manner and have suffered damages, including, without limitation, damage to other components of the class vehicles caused by the defects, the diminished value of the class vehicles, the cost of modification of the defective systems, and the costs associated with the loss of use of the class vehicles.

326. New GM's failure to timely and adequately recall the class vehicles was a substantial factor in causing the purchasers' harm, including that of Plaintiffs and the California Class.

////

**KNAPP,
PETERSEN
& CLARKE**

-60-

## COUNT XVII

## THIRD-PARTY BENEFICIARY CLAIM

327. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

328. This claim is brought only on behalf of Class members who are California residents (the "California Class").

329. In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

330. With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

331. But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

332. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance

KNAPP,
PETERSEN
& CLARKE

-61-

1  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

2  underlying records on which the early warning reports are based and all records

3  containing information on malfunctions that may be related to motor vehicle safety.

4  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

5  or should know that a safety defect exists – including notifying NHTSA and

6  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

7  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

8        333.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

9  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

10  with the TREAD Act.  Under the Sale Agreement, Plaintiffs were to receive the

11  benefit of having a manufacturer responsible for monitoring the safety of their Old

12  GM vehicles and making certain that any known defects would be promptly

13  remedied.

14        334.   Although the Sale Order which consummated New GM's purchase of

15  Old GM purported to give New GM immunity from claims concerning vehicles or

16  parts made by Old GM, the bankruptcy court recently ruled that provision to be

17  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

18  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

19  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

20  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

21  breaches of the promise it made in the Sale Agreement.

22        335.   New GM breached its covenant to comply with the TREAD Act with

23  respect to the class vehicles, as it failed to take action to remediate the defects at any

24  time, up to the present.

25        336.   Plaintiffs and the California Class were damaged as a result of New

26  GM's breach. Because of New GM's failure to timely remedy the defect in class

27  vehicles, the value of Old GM class vehicles has diminished in an amount to be

28  determined at trial.

KNAPP,
PETERSEN
& CLARKE

-62-

2411127.1  08000/01006

## COUNT XVIII

## UNJUST ENRICHMENT

337. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

338. This claim is brought on behalf of members of the California Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "California Unjust Enrichment Class").

339. New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

340. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

341. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

342. Thus, all California Unjust Enrichment Class Members conferred a benefit on New GM.

343. It is inequitable for New GM to retain these benefits.

344. Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

345. New GM knowingly accepted the benefits of its unjust conduct.

346. As a result of New GM's conduct, the amount of its unjust enrichment

KNAPP,
PETERSEN
& CLARKE

-63-

should be disgorged, in an amount according to proof.

**Florida**

## COUNT XIX

## VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE

## TRADE PRACTICES ACT

## (FLA. STAT. § 501.201, et seq.)

347.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

348.   This claim is brought only on behalf of Nationwide Class Members who are Florida residents (the "Florida Class").

349.   Plaintiffs are "consumers" within the meaning of the  Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), FLA. STAT. § 501.203(7).

350.   New GM engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

351.   FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce ..." FLA. STAT. § 501.204(1). New GM participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

352.   In the course of its business, New GM systematically devalued safety and concealed the defects in class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

353.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous

KNAPP,
PETERSEN
& CLARKE

-64-

1  reports, investigations, and notifications from regulatory authorities; and (iii)

2  ongoing performance of New GM's TREAD Act obligations.  New GM became

3  aware of other serious defects and systemic safety issues years ago, but concealed all

4  of that information.

5      354.   New GM was also aware that it valued cost-cutting over safety, selected

6  parts from the cheapest supplier regardless of quality, and actively discouraged

7  employees from finding and flagging known safety defects, and that this approach

8  would necessarily cause the existence of more defects in the vehicles it designed and

9  manufactured and the failure to disclose and remedy defects in all class vehicles.

10  New GM concealed this information as well.

11      355.   By failing to disclose and by actively concealing the many defects in

12  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

13  presenting itself as a reputable manufacturer that valued safety and stood behind its

14  vehicles after they were sold, New GM engaged in unfair, unconscionable, and

15  deceptive business practices in violation of the FUDTPA.

16      356.   In the course of New GM's business, it willfully failed to disclose and

17  actively concealed the dangerous risk posed by the defects discussed above.  New

18  GM compounded the deception by repeatedly asserting that class vehicles were safe,

19  reliable, and of high quality, and by claiming to be a reputable manufacturer that

20  valued safety and stood behind its vehicles once they are on the road.

21      357.   New GM's unfair or deceptive acts or practices were likely to and did in

22  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

23  reliability of class vehicles, the quality of the GM brand, the devaluing of safety at

24  New GM, and the true value of the class vehicles.

25      358.   New GM intentionally and knowingly misrepresented material facts

26  regarding the class vehicles with an intent to mislead Plaintiffs and the Florida Class.

27      359.   New GM knew or should have known that its conduct violated the

28  FUDTPA.

KNAPP,
PETERSEN
& CLARKE

-65-

360.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

361.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defect in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

362.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

363.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Florida Class.  A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

364.   Plaintiffs and the Florida Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased the class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

1    or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result
2    of New GM's misconduct.

3      365.   Regardless of time of purchase or lease, no Plaintiffs would have
4    maintained and continued to drive their vehicles had they been aware of New GM's
5    misconduct no Plaintiffs would have maintained and continued to drive their vehicles
6    had they been aware of New GM's misconduct had they been aware of New GM's
7    misconduct. By contractually assuming TREAD Act responsibilities with respect to
8    Old GM class vehicles, New GM effectively assumed the role of manufacturer of
9    those vehicles because the TREAD Act on its face only applies to vehicle
10   manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM
11   vehicle owners to refrain from unfair and deceptive acts or practices under the
12   FUDTPA. And, in any event, all class vehicle owners suffered ascertainable loss in
13   the form of diminished value of their vehicles as a result of New GM's deceptive and
14   unfair acts and practices made in the course of New GM's business.

15      366.   Plaintiffs and Florida Class Members risk irreparable injury as a result
16   of New GM's act and omissions in violation of the FUDTPA.

17      367.   As a direct and proximate result of New GM's violations of the
18   FUDTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual
19   damage.

20      368.   Plaintiffs and the Florida Class are entitled to recover their actual
21   damages under FLA. STAT. § 501.211(2) and attorneys' fees under FLA. STAT. §
22   501.2105(1).

23      369.   Plaintiffs also seek an order enjoining New GM's unfair, unlawful,
24   and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and
25   proper relief available under the FUDTPA.

26   ////

27   ////

28   ////

**KNAPP,
PETERSEN
& CLARKE**

-67-

## COUNT XX

## FRAUD BY CONCEALMENT

370. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

371. This claim is brought on behalf of Nationwide Class Members who are Florida residents (the "Florida Class").

372. New GM concealed and suppressed material facts concerning the quality of the class vehicles.

373. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

374. New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

375. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

376. New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Florida Class. New GM also had a duty to disclose because it made many general affirmative representations

**KNAPP,
PETERSEN
& CLARKE**

-68-

1    about the safety, quality, and lack of defects in its vehicles, as set forth above, which

2    were misleading, deceptive and incomplete without the disclosure of the additional

3    facts set forth above regarding defects in the class vehicles.  Having volunteered to

4    provide information to Plaintiffs, GM had the duty to disclose not just the partial

5    truth, but the entire truth.  These omitted and concealed facts were material because

6    they directly impact the value of the class vehicles purchased or leased by Plaintiffs

7    and the Florida Class.

8         377.   New GM actively concealed and/or suppressed these material facts, in

9    whole or in part, to protect its profits and avoid recalls that would hurt the brand's

10   image and cost New GM money, and it did so at the expense of Plaintiffs and the

11   Florida Class.

12        378.   On information and belief, New GM has still not made full and adequate

13   disclosure and continues to defraud Plaintiffs and the Florida Class and conceal

14   material information regarding defects that exist in the class vehicles.

15        379.   Plaintiffs and the Florida Class were unaware of these omitted material

16   facts and would not have acted as they did if they had known of the concealed and/or

17   suppressed facts, in that they would not have purchased cars manufactured by New

18   GM; and/or they would not have purchased cars manufactured by Old GM in the

19   time after New GM had come into existence and had fraudulently opted to conceal,

20   and to misrepresent, the true facts about the vehicles; and/or would not have

21   continued to drive their vehicles or would have taken other affirmative steps.

22   Plaintiffs' and the Florida Class's actions were justified.  New GM was in exclusive

23   control of the material facts and such facts were not known to the public, Plaintiffs,

24   or the Florida Class.

25        380.   Because of the concealment and/or suppression of the facts, Plaintiffs

26   and the Florida Class sustained damage because they own vehicles that diminished in

27   value as a result of New GM's concealment of, and failure to timely disclose, the

28   defects in the class vehicles and the quality issues engendered by New GM's

**KNAPP,
PETERSEN
& CLARKE**

-69-

corporate policies.  Had they been aware of the defects that existed in the class

vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

New GM came into existence either would have paid less for their vehicles or would

not have purchased or leased them at all; and no Plaintiffs regardless of time of

purchase or lease would have maintained their vehicles.

381.  The value of all Florida Class Members' vehicles has diminished as a

result of New GM's fraudulent concealment of the defects which have tarnished the

Corvette brand and made any reasonable consumer reluctant to purchase any of the

class vehicles, let alone pay what otherwise would have been fair market value for

the vehicles.

382.  Accordingly, New GM is liable to the Florida Class for damages in an

amount to be proven at trial.

383.  New GM's acts were done maliciously, oppressively, deliberately, with

intent to defraud, and in reckless disregard of Plaintiffs' and the Florida Class's

rights and well-being to enrich New GM. New GM's conduct warrants an assessment

of punitive damages in an amount sufficient to deter such conduct in the future,

which amount is to be determined according to proof.

## COUNT XXI

## THIRD-PARTY BENEFICIARY CLAIM

384.  Plaintiffs reallege and incorporate by reference all paragraphs as though

fully set forth herein.

385.  This claim is brought only on behalf of Class members who are Florida

residents (the "Florida Class").

386.  In the Sales Agreement through which New GM acquired substantially

all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the
> certification, reporting and recall requirements of the National Traffic
> and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

**KNAPP,
PETERSEN
& CLARKE**

-70-

1  Recall Enhancement, Accountability and Documentation Act, the Clean

2  Air Act, the California Health and Safety Code and similar Laws, in

3  each case, to the extent applicable in respect of vehicles and vehicle

4  parts manufactured or distributed by [Old GM].

5  387.  With the exception of the portion of the agreement that purports to

6  immunize New GM from its own independent misconduct with respect to cars and

7  parts made by Old GM, the Sales Agreement is a valid and binding contract.

8  388.  But for New GM's covenant to comply with the TREAD Act with

9  respect to cars and parts made by Old GM, the TREAD Act would have no

10  application to New GM with respect to those cars and parts. That is because the

11  TREAD Act on its face imposes reporting and recall obligations only on the

12  "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

13  389.  Because New GM agreed to comply with the TREAD Act with respect

14  to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

15  make quarterly submissions to NHTSA of "early warning reporting" data, including

16  incidents involving property damage, warranty claims, consumer complaints, and

17  field reports concerning failure, malfunction, lack of durability or other performance

18  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

19  underlying records on which the early warning reports are based and all records

20  containing information on malfunctions that may be related to motor vehicle safety.

21  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

22  or should know that a safety defect exists – including notifying NHTSA and

23  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

24  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

25  390.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by

26  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

27  with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

28  benefit of having a manufacturer responsible for monitoring the safety of their Old

KNAPP,
PETERSEN
& CLARKE

-71-

1 GM vehicles and making certain that any known defects would be promptly
2 remedied.

3     391.   Although the Sale Order which consummated New GM's purchase of
4 Old GM purported to give New GM immunity from claims concerning vehicles or
5 parts made by Old GM, the bankruptcy court recently ruled that provision to be
6 unenforceable, and that New GM can be held liable for its own post-bankruptcy sale
7 conduct with respect to cars and parts made by Old GM. Therefore, that provision of
8 the Sale Order and related provisions of the Sale Agreement cannot be read to bar
9 Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale
10 breaches of the promise it made in the Sale Agreement.

11     392.   New GM breached its covenant to comply with the TREAD Act with
12 respect to the class vehicles, as it failed to take action to remediate the defects at any
13 time, up to the present.

14     393.   Plaintiffs and the Florida Class were damaged as a result of New GM's
15 breach. Because of New GM's failure to timely remedy the defect in class vehicles,
16 the value of class vehicles has diminished in an amount to be determined at trial.

17 **COUNT XXII**
18 **UNJUST ENRICHMENT**

19     394.   Plaintiffs reallege and incorporate by reference all paragraphs as though
20 fully set forth herein.

21     395.   This claim is brought on behalf of members of the Florida Class who
22 purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period
23 after New GM came into existence, and who purchased or leased class vehicles in the
24 time period before New GM came into existence, which cars were still on the road
25 after New GM came into existence (the "Florida Unjust Enrichment Class").

26     396.   New GM has received and retained a benefit from the Plaintiffs and
27 inequity has resulted.

28     397.   New GM has benefitted from selling and leasing defective cars,

**KNAPP,
PETERSEN
& CLARKE**

-72-

including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued the class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

398.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

399.   Thus, all Florida Unjust Enrichment Class Members conferred a benefit on New GM.

400.   It is inequitable for New GM to retain these benefits.

401.   Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

402.   New GM knowingly accepted the benefits of its unjust conduct.

403.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Illinois**

**COUNT XXIII**

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

**(815 ILCS 505/1, et seq. and 720 ILCS 295/1A)**

404.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

405.   This claim is brought only on behalf of Nationwide Class Members who are Illinois residents (the "Illinois Class").

406.   New GM is a "person" as that term is defined in 815 ILCS 505/1(c).

407.   Plaintiff and the Illinois Class are "consumers" as that term is defined in

1  815 ILCS 505/1(e).

2      408.  The Illinois Consumer Fraud and Deceptive Business Practices Act

3  ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not

4  limited to the use or employment of any deception, fraud, false pretense, false

5  promise, misrepresentation or the concealment, suppression or omission of any

6  material fact, with intent that others rely upon the concealment, suppression or

7  omission of such material fact . . . in the conduct of trade or commerce . . . whether

8  any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

9      409.  New GM participated in misleading, false, or deceptive acts that

10  violated the Illinois CFA.  New GM engaged in deceptive business practices

11  prohibited by the Illinois CFA.

12      410.  In the course of its business, New GM systematically devalued safety

13  and concealed defects in the class vehicles as described herein and otherwise

14  engaged in activities with a tendency or capacity to deceive.  New GM also engaged

15  in unlawful trade practices by employing deception, deceptive acts or practices,

16  fraud, misrepresentations, or concealment, suppression or omission of any material

17  fact with intent that others rely upon such concealment, suppression or omission, in

18  connection with the sale of class vehicles.

19      411.  From the date of its inception on July 11, 2009, New GM knew of many

20  defects affecting many models and years of the class vehicles, because of (i) the

21  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

22  investigations, and notifications from regulatory authorities; and (iii) ongoing

23  performance of New GM's TREAD Act obligations.  New GM became aware of

24  other serious defects and systemic safety issues years ago, but concealed all of that

25  information.

26      412.  New GM was also aware that it valued cost-cutting over safety, selected

27  parts from the cheapest supplier regardless of quality, and actively discouraged

28  employees from finding and flagging known safety defects, and that this approach

KNAPP,
PETERSEN
& CLARKE

-74-

2411127.1  08000/01006

would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

413.    By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Illinois CFA.

414.    In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

415.    New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

416.    New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Illinois Class.

417.    New GM knew or should have known that its conduct violated the Illinois CFA.

418.    As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

419.    New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively

KNAPP,
PETERSEN
& CLARKE

-75-

2411127.1  08000/01006

1   discouraged employees from finding and flagging known safety defects, and that this

2   approach would necessarily cause the existence of more defects in the vehicles it

3   designed and manufactured;

4           (b)      Intentionally concealed the foregoing from Plaintiffs; and/or

5           (c)      Made incomplete representations about the safety and reliability

6   of the class vehicles generally, and the valve guide defects in particular, while

7   purposefully withholding material facts from Plaintiffs that contradicted these

8   representations.

9       420.   Because New GM fraudulently concealed the defects in the class

10   vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

11   attached to those vehicles by New GM's conduct, they are now worth significantly

12   less than they otherwise would be.

13       421.   New GM's systemic devaluation of safety and its concealment of the

14   defects in the class vehicles were material to Plaintiffs and the Illinois Class.  A

15   vehicle made by a reputable manufacturer of vehicles is worth more than an

16   otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

17   conceals defects rather than promptly remedying them.

18       422.   Plaintiffs and the Illinois Class suffered ascertainable loss caused by

19   New GM's misrepresentations and its concealment of and failure to disclose material

20   information.  Plaintiffs who purchased class vehicles after the date of New GM's

21   inception either would have paid less for their vehicles or would not have purchased

22   or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

23   of New GM's misconduct.

24       423.   Regardless of time of purchase or lease, no Plaintiffs would have

25   maintained and continued to drive their vehicles had they been aware of New GM's

26   misconduct. By contractually assuming TREAD Act responsibilities with respect to

27   Old GM class vehicles, New GM effectively assumed the role of manufacturer of

28   those vehicles because the TREAD Act on its face only applies to vehicle

**KNAPP,
PETERSEN
& CLARKE**

-76-

1  manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

2  vehicle owners to refrain from unfair and deceptive acts or practices under the

3  Illinois CFA.  And, in any event, all class vehicle owners suffered ascertainable loss

4  in the form of the diminished value of their vehicles as a result of New GM's

5  deceptive and unfair acts and practices made in the course of New GM's business.

6      424.   As a direct and proximate result of New GM's violations of the Illinois

7  CFA, Plaintiffs and the Illinois Class have suffered injury-in-fact and/or actual

8  damage.

9      425.   Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Illinois Class seek

10  monetary relief against New GM in the amount of actual damages, as well as

11  punitive damages because New GM acted with fraud and/or malice and/or was

12  grossly negligent.

13      426.   Plaintiffs also seek an order enjoining New GM's unfair and/or

14  deceptive acts or practices, punitive damages, and attorneys' fees, and any other just

15  and proper relief available under 815 ILCS § 505/1 et seq.

16  ## COUNT XXIV

17  ## FRAUD BY CONCEALMENT

18      427.   Plaintiffs reallege and incorporate by reference all paragraphs as though

19  fully set forth herein.

20      428.   This claim is brought on behalf of Nationwide Class Members who are

21  Illinois residents (the "Illinois Class").

22      429.   New GM concealed and suppressed material facts concerning the

23  quality of the class vehicles.

24      430.   New GM concealed and suppressed material facts concerning the

25  culture of New GM – a culture characterized by an emphasis on cost-cutting, the

26  studious avoidance of quality issues, and a shoddy design process.

27      431.   New GM concealed and suppressed material facts concerning the

28  defects in the class vehicles, and that it valued cost-cutting over quality and took

KNAPP,
PETERSEN
& CLARKE

-77-

2411127.1  08000/01006

1  steps to ensure that its employees did not reveal known defects to regulators or

2  consumers.

3      432.   New GM did so in order to boost confidence in its vehicles and falsely

4  assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

5  that New GM was a reputable manufacturer that stands behind its vehicles after they

6  are sold and that its vehicles are safe and reliable. The false representations were

7  material to consumers, both because they concerned the quality and safety of the

8  class vehicles and because the representations played a significant role in the value of

9  the vehicles.

10     433.   New GM had a duty to disclose the many defects in the class vehicles

11 because they were known and/or accessible only to New GM, were in fact known to

12 New GM as of the time of its creation in 2009 and at every point thereafter, New GM

13 had superior knowledge and access to the facts, and New GM knew the facts were

14 not known to or reasonably discoverable by Plaintiffs and the Illinois Class.  New

15 GM also had a duty to disclose because it made many general affirmative

16 representations about the safety, quality, and lack of defects in its vehicles, as set

17 forth above, which were misleading, deceptive and incomplete without the disclosure

18 of the additional facts set forth above regarding defects in the class vehicles.  Having

19 volunteered to provide information to Plaintiffs, GM had the duty to disclose not just

20 the partial truth, but the entire truth. These omitted and concealed facts were material

21 because they directly impact the value of the class vehicles purchased or leased by

22 Plaintiffs and the Illinois Class.

23     434.   New GM actively concealed and/or suppressed these material facts, in

24 whole or in part, to protect its profits and avoid recalls that would hurt the brand's

25 image and cost New GM money, and it did so at the expense of Plaintiffs and the

26 Illinois Class.

27     435.   On information and belief, New GM has still not made full and adequate

28 disclosure and continues to defraud Plaintiffs and the Illinois Class and conceal

**KNAPP,
PETERSEN
& CLARKE**

-78-

2411127.1  08000/01006

1　material information regarding defects that exist in the class vehicles.

2　　　436.　Plaintiffs and the Illinois Class were unaware of these omitted material

3　facts and would not have acted as they did if they had known of the concealed and/or

4　suppressed facts, in that they would not have purchased cars manufactured by New

5　GM; and/or they would not have purchased cars manufactured by Old GM in the

6　time after New GM had come into existence and had fraudulently opted to conceal,

7　and to misrepresent, the true facts about the vehicles; and/or would not have

8　continued to drive their vehicles or would have taken other affirmative steps.

9　Plaintiffs' and the Illinois Class's actions were justified. New GM was in exclusive

10　control of the material facts and such facts were not known to the public, Plaintiffs,

11　or the Illinois Class.

12　　　437.　Because of the concealment and/or suppression of the facts, Plaintiffs

13　and the Illinois Class sustained damage because they own vehicles that diminished in

14　value as a result of New GM's concealment of, and failure to timely disclose, the

15　defects in the class vehicles and the quality issues engendered by New GM's

16　corporate policies.　Had they been aware of the defects that existed in the class

17　vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

18　New GM came into existence either would have paid less for their vehicles or would

19　not have purchased or leased them at all; and no Plaintiffs regardless of time of

20　purchase or lease would have maintained their vehicles.

21　　　438.　The value of all Illinois Class Members' vehicles has diminished as a

22　result of New GM's fraudulent concealment of the defects which have tarnished the

23　Corvette brand and made any reasonable consumer reluctant to purchase any of the

24　class vehicles, let alone pay what otherwise would have been fair market value for

25　the vehicles.

26　　　439.　Accordingly, New GM is liable to the Illinois Class for damages in an

27　amount to be proven at trial.

28　　　440.　New GM's acts were done maliciously, oppressively, deliberately, with

KNAPP,
PETERSEN
& CLARKE

-79-

1   intent to defraud, and in reckless disregard of Plaintiffs' and the Illinois Class's

2   rights and well-being to enrich New GM. New GM's conduct warrants an assessment

3   of punitive damages in an amount sufficient to deter such conduct in the future,

4   which amount is to be determined according to proof.

## COUNT XV

## THIRD-PARTY BENEFICIARY CLAIM

7   441.   Plaintiffs reallege and incorporate by reference all paragraphs as though

8   fully set forth herein.

9   442.   This claim is brought only on behalf of Class members who are Illinois

10  residents (the "Illinois Class").

11  443.   In the Sales Agreement through which New GM acquired substantially

12  all of the assets of New GM, New GM explicitly agreed as follows:

13  From and after the Closing, [New GM] shall comply with the

14  certification, reporting and recall requirements of the National Traffic

15  and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

16  Recall Enhancement, Accountability and Documentation Act, the Clean

17  Air Act, the California Health and Safety Code and similar Laws, in

18  each case, to the extent applicable in respect of vehicles and vehicle

19  parts manufactured or distributed by [Old GM].

20  444.   With the exception of the portion of the agreement that purports to

21  immunize New GM from its own independent misconduct with respect to cars and

22  parts made by Old GM, the Sales Agreement is a valid and binding contract.

23  445.   But for New GM's covenant to comply with the TREAD Act with respect

24  to cars and parts made by Old GM, the TREAD Act would have no

25  application to New GM with respect to those cars and parts. That is because the

26  TREAD Act on its face imposes reporting and recall obligations only on the

27  "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

28  446.   Because New GM agreed to comply with the TREAD Act with respect

**KNAPP,
PETERSEN
& CLARKE**

-80-

1  to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

2  make quarterly submissions to NHTSA of "early warning reporting" data, including

3  incidents involving property damage, warranty claims, consumer complaints, and

4  field reports concerning failure, malfunction, lack of durability or other performance

5  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

6  underlying records on which the early warning reports are based and all records

7  containing information on malfunctions that may be related to motor vehicle safety.

8  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

9  or should know that a safety defect exists – including notifying NHTSA and

10  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

11  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

12    447.  Plaintiffs, as owners and lessors of vehicles and parts manufactured by

13  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

14  with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

15  benefit of having a manufacturer responsible for monitoring the safety of their Old

16  GM vehicles and making certain that any known defects would be promptly

17  remedied.

18    448.  Although the Sale Order which consummated New GM's purchase of

19  Old GM purported to give New GM immunity from claims concerning vehicles or

20  parts made by Old GM, the bankruptcy court recently ruled that provision to be

21  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

22  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

23  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

24  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

25  breaches of the promise it made in the Sale Agreement.

26    449.  New GM breached its covenant to comply with the TREAD Act with

27  respect to the class vehicles, as it failed to take action to remediate the defects at any

28  time, up to the present.

**KNAPP,
PETERSEN
& CLARKE**

-81-

450. Plaintiffs and the Illinois Class were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the defect in class vehicles, the value of Old GM class vehicles has diminished in an amount to be determined at trial.

## COUNT XXVI

## UNJUST ENRICHMENT

451. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

452. This claim is brought on behalf of members of the Illinois Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Illinois Unjust Enrichment Class").

453. New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

454. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

455. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

456. Thus, all Illinois Unjust Enrichment Class Members conferred a benefit on New GM.

457. It is inequitable for New GM to retain these benefits.

KNAPP,
PETERSEN
& CLARKE

-82-

458. Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

459. New GM knowingly accepted the benefits of its unjust conduct.

460. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Indiana**

## COUNT XXVII

## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3)

461. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

462. This claim is brought only on behalf of Nationwide Class Members who are Indiana residents (the "Indiana Class").

463. New GM is a "person" within the meaning of IND. CODE § 24-5-0.5-2(2) and a "supplier" within the meaning of IND. CODE § 24-5-.05-2(a)(3).

464. Plaintiffs' and Indiana Class Members' purchases of the class vehicles are "consumer transactions" within the meaning of IND. CODE § 24-5-.05-2(a)(1).

465. Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive trade practice," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; ... (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; ... (b) Any representations on or within a product or its packaging or in advertising or

KNAPP,
PETERSEN
& CLARKE

-83-

1  promotional materials which would constitute a deceptive act shall be the deceptive

2  act both of the supplier who places such a representation thereon or therein, or who

3  authored such materials, and such suppliers who shall state orally or in writing that

4  such representation is true if such other supplier shall know or have reason to know

5  that such representation was false."

6      466.   New GM participated in misleading, false, or deceptive acts that

7  violated the Indiana DCSA.  By systematically devaluing safety and concealing

8  defects in class vehicles, New GM engaged in deceptive business practices

9  prohibited by the Indiana DCSA.  New GM also engaged in unlawful trade practices

10  by: (1) representing that the class vehicles have characteristics, uses, benefits, and

11  qualities which they do not have; (2) representing that the class vehicles are of a

12  particular standard and quality when they are not; (3) advertising the class vehicles

13  with the intent not to sell them as advertised; and (4) otherwise engaging in conduct

14  likely to deceive.

15      467.   New GM's actions as set forth above occurred in the conduct of trade or

16  commerce.

17      468.   In the course of its business, New GM systematically devalued safety

18  and concealed defects in the class vehicles as described herein and otherwise

19  engaged in activities with a tendency or capacity to deceive.  New GM also engaged

20  in unlawful trade practices by employing deception, deceptive acts or practices,

21  fraud, misrepresentations, or concealment, suppression or omission of any material

22  fact with intent that others rely upon such concealment, suppression or omission, in

23  connection with the sale of class vehicles.

24      469.   From the date of its inception on July 11, 2009, New GM knew of many

25  serious defects affecting many models and years of class vehicles, because of (i) the

26  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

27  investigations, and notifications from regulatory authorities; and (iii) ongoing

28  performance of New GM's TREAD Act obligations.  New GM became aware of

**KNAPP,
PETERSEN
& CLARKE**

-84-

1    other serious defects and systemic safety issues years ago, but concealed all of that
2    information.

3         470.   New GM was also aware that it valued cost-cutting over safety, selected
4    parts from the cheapest supplier regardless of quality, and actively discouraged
5    employees from finding and flagging known safety defects, and that this approach
6    would necessarily cause the existence of more defects in the vehicles it designed and
7    manufactured and the failure to disclose and remedy defects in all class vehicles.
8    New GM concealed this information as well.

9         471.   By failing to disclose and by actively concealing the many defects in the
10   class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by
11   presenting itself as a reputable manufacturer that valued safety and stood behind its
12   vehicles after they were sold, New GM engaged in deceptive business practices in
13   violation of the Indiana DCSA.

14        472.   In the course of New GM's business, it willfully failed to disclose and
15   actively concealed the dangerous risk posed by the defects discussed above. New
16   GM compounded the deception by repeatedly asserting that the class vehicles were
17   safe, reliable, and of high quality, and by claiming to be a reputable manufacturer
18   that valued safety and stood behind its vehicles once they are on the road.

19        473.   New GM's unfair or deceptive acts or practices were likely to and did in
20   fact deceive reasonable consumers, including Plaintiffs, about the true safety and
21   reliability of class vehicles, the quality of the New GM brand, the devaluing of safety
22   at New GM, and the true value of the class vehicles.

23        474.   New GM intentionally and knowingly misrepresented material facts
24   regarding the class vehicles with an intent to mislead Plaintiffs and the Indiana Class.

25        475.   New GM knew or should have known that its conduct violated the
26   Indiana DCSA.

27        476.   As alleged above, New GM made material statements about the safety
28   and reliability of the class vehicles and the GM brand that were either false or

**KNAPP,
PETERSEN
& CLARKE**

-85-

misleading.

477.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

478.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

479.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Indiana Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedying them.

480.   Plaintiffs and the Indiana Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

**KNAPP,
PETERSEN
& CLARKE**

-86-

2411127.1  08000/01006

481.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Indiana DCSA. And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

482.   As a direct and proximate result of New GM's violations of the Indiana DCSA, Plaintiffs and the Indiana Class have suffered injury-in-fact and/or actual damage.

483.   Pursuant to IND. CODE § 24-5-0.5-4, Plaintiffs and the Indiana Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff and each Indiana Class member, including treble damages up to $1,000 for New GM's willfully deceptive acts.

484.   Plaintiff also seeks punitive damages based on the outrageousness and recklessness of the New GM's conduct and New GM's high net worth.

## COUNT XXVIII

## FRAUD BY CONCEALMENT

485.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

486.   This claim is brought on behalf of Nationwide Class Members who are Indiana residents (the "Indiana Class").

487.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

KNAPP,
PETERSEN
& CLARKE

-87-

488.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

489.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

490.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

491.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Indiana Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Indiana Class.

492.   New GM actively concealed and/or suppressed these material facts, in

KNAPP,
PETERSEN
& CLARKE

-88-

1   whole or in part, to protect its profits and avoid recalls that would hurt the brand's

2   image and cost New GM money, and it did so at the expense of Plaintiffs and the

3   Indiana Class.

4       493.   On information and belief, New GM has still not made full and adequate

5   disclosure and continues to defraud Plaintiffs and the Indiana Class and conceal

6   material information regarding defects that exist in the class vehicles.

7       494.   Plaintiffs and the Indiana Class were unaware of these omitted material

8   facts and would not have acted as they did if they had known of the concealed and/or

9   suppressed facts, in that they would not have purchased cars manufactured by New

10   GM; and/or they would not have purchased cars manufactured by Old GM in the

11   time after New GM had come into existence and had fraudulently opted to conceal,

12   and to misrepresent, the true facts about the vehicles; and/or would not have

13   continued to drive their vehicles or would have taken other affirmative steps.

14   Plaintiffs' and the Indiana Class's actions were justified. New GM was in exclusive

15   control of the material facts and such facts were not known to the public, Plaintiffs,

16   or the Indiana Class.

17       495.   Because of the concealment and/or suppression of the facts, Plaintiffs

18   and the Indiana Class sustained damage because they own vehicles that diminished

19   in value as a result of New GM's concealment of, and failure to timely disclose, the

20   defects in the class vehicles and the quality issues engendered by New GM's

21   corporate policies.  Had they been aware of the defects that existed in the class

22   vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

23   New GM came into existence either would have paid less for their vehicles or would

24   not have purchased or leased them at all; and no Plaintiffs regardless of time of

25   purchase or lease would have maintained their vehicles.

26       496.   The value of all Indiana Class Members' vehicles has diminished as a

27   result of New GM's fraudulent concealment of the defects which have tarnished the

28   Corvette brand and made any reasonable consumer reluctant to purchase any of the

**KNAPP,
PETERSEN
& CLARKE**

-89-

1  class vehicles, let alone pay what otherwise would have been fair market value for
2  the vehicles.

3      497.   Accordingly, New GM is liable to the Indiana Class for damages in an
4  amount to be proven at trial.

5      498.   New GM's acts were done maliciously, oppressively, deliberately, with
6  intent to defraud, and in reckless disregard of Plaintiffs' and the Indiana Class's
7  rights and well-being to enrich New GM. New GM's conduct warrants an assessment
8  of punitive damages in an amount sufficient to deter such conduct in the future,
9  which amount is to be determined according to proof.

10              **COUNT XXIX**

11    **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
12              **(IND. CODE § 26-1-2-314)**

13     499.   Plaintiffs reallege and incorporate by reference all paragraphs as though
14  fully set forth herein.

15     500.   This claim is brought only on behalf of Indiana residents who are
16  members of the Nationwide Class (the "Indiana Class").

17     501.   New GM was a merchant with respect to motor vehicles within the
18  meaning of IND. CODE § 26-1-2-104(1).

19     502.   Under IND. CODE § 26-1-2-314, a warranty that the class vehicles
20  were in merchantable condition was implied by law in the transactions when
21  Plaintiffs purchased or leased their class vehicles from New GM on or after July 11,
22  2009.

23     503.   These vehicles, when sold and at all times thereafter, were not
24  merchantable and are not fit for the ordinary purpose for which cars are used.
25  Specifically, the class vehicles are inherently defective in that there are defects which
26  cause inordinate and unusual early wear and failure of engines.

27     504.   New GM was provided notice of these issues by numerous complaints
28  filed against it, internal investigations, and by numerous individual letters and

KNAPP,
PETERSEN
& CLARKE

-90-

1  communications sent by Plaintiffs and the Indiana Class.

2      505.  As a direct and proximate result of New GM's breach of the implied

3  warranty of merchantability, Plaintiffs and the Indiana Class members have been

4  damaged in an amount to be proven at trial.

5  **COUNT XXX**

6  **THIRD-PARTY BENEFICIARY CLAIM**

7      506.  Plaintiffs reallege and incorporate by reference all paragraphs as though

8  fully set forth herein.

9      507.  This claim is brought only on behalf of Class members who are Indiana

10  residents (the "Indiana Class").

11      508.  In the Sales Agreement through which New GM acquired substantially

12  all of the assets of New GM, New GM explicitly agreed as follows:

13        From and after the Closing, [New GM] shall comply with the

14        certification, reporting and recall requirements of the National Traffic

15        and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

16        Recall Enhancement, Accountability and Documentation Act, the Clean

17        Air Act, the California Health and Safety Code and similar Laws, in

18        each case, to the extent applicable in respect of vehicles and vehicle

19        parts manufactured or distributed by [Old GM].

20      509.  With the exception of the portion of the agreement that purports to

21  immunize New GM from its own independent misconduct with respect to cars and

22  parts made by Old GM, the Sales Agreement is a valid and binding contract.

23      510.  But for New GM's covenant to comply with the TREAD Act with

24  respect to cars and parts made by Old GM, the TREAD Act would have no

25  application to New GM with respect to those cars and parts. That is because the

26  TREAD Act on its face imposes reporting and recall obligations only on the

27  "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

28      511.  Because New GM agreed to comply with the TREAD Act with respect

**KNAPP,
PETERSEN
& CLARKE**

1   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

2   make quarterly submissions to NHTSA of "early warning reporting" data, including

3   incidents involving property damage, warranty claims, consumer complaints, and

4   field reports concerning failure, malfunction, lack of durability or other performance

5   issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

6   underlying records on which the early warning reports are based and all records

7   containing information on malfunctions that may be related to motor vehicle safety.

8   See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

9   or should know that a safety defect exists – including notifying NHTSA and

10  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

11  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

12          512.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

13  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

14  with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

15  benefit of having a manufacturer responsible for monitoring the safety of their Old

16  GM vehicles and making certain that any known defects would be promptly

17  remedied.

18          513.   Although the Sale Order which consummated New GM's purchase of

19  Old GM purported to give New GM immunity from claims concerning vehicles or

20  parts made by Old GM, the bankruptcy court recently ruled that provision to be

21  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

22  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

23  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

24  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

25  breaches of the promise it made in the Sale Agreement.

26          514.   New GM breached its covenant to comply with the TREAD Act with

27  respect to the class vehicles, as it failed to take action to remediate the defect at any

28  time, up to the present.

**KNAPP,
PETERSEN
& CLARKE**

-92-

515. Plaintiffs and the Indiana Class were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the defect in class vehicles, the value of Old GM class vehicles has diminished in an amount to be determined at trial.

**COUNT XXXI**

**UNJUST ENRICHMENT**

516. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

517. This claim is brought on behalf of members of the Indiana Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Indiana Unjust Enrichment Class").

518. New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

519. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

520. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

521. Thus, all Indiana Unjust Enrichment Class Members conferred a benefit on New GM.

522. It is inequitable for New GM to retain these benefits.

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

523. Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

524. New GM knowingly accepted the benefits of its unjust conduct.

525. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Massachusetts**

## COUNT XXXII

## DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW (MASS. GEN. LAWS CH. 93A, § 1, et seq.)

526. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

527. This claim is brought only on behalf of Nationwide Class Members who are Massachusetts residents (the "Massachusetts Class").

528. New GM, Plaintiffs, and the Massachusetts Class are "persons" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(a).

529. New GM engaged in "trade" or "commerce" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(b).

530. Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS ch. 93A, § 2. New GM both participated in misleading, false, or deceptive acts that violated the Massachusetts Act. By systematically devaluing safety and concealing defects in the class vehicles, New GM engaged in deceptive business practices prohibited by the Massachusetts Act.

531. In the course of its business, New GM systematically devalued safety and concealed defects in class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact

-94-

KNAPP,
PETERSEN
& CLARKE

1   with intent that others rely upon such concealment, suppression or omission, in

2   connection with the sale of class vehicles.

3   532. From the date of its inception on July 11, 2009, New GM knew of many

4   serious defects affecting many models and years of class vehicles, because of (i) the

5   knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

6   investigations, and notifications from regulatory authorities; and (iii) ongoing

7   performance of New GM's TREAD Act obligations, as discussed above. New GM

8   became aware of other serious defects and systemic safety issues years ago, but

9   concealed all of that information.

10  533. New GM was also aware that it valued cost-cutting over safety, selected

11  parts from the cheapest supplier regardless of quality, and actively discouraged

12  employees from finding and flagging known safety defects, and that this approach

13  would necessarily cause the existence of more defects in the vehicles it designed and

14  manufactured and the failure to disclose and remedy defects in all class vehicles.

15  New GM concealed this information as well.

16  534. By failing to disclose and by actively concealing the many defects in

17  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

18  presenting itself as a reputable manufacturer that valued safety and stood behind its

19  vehicles after they were sold, New GM engaged in unfair and deceptive business

20  practices in violation of the Massachusetts Act.

21  535. In the course of New GM's business, it willfully failed to disclose and

22  actively concealed the dangerous risk posed by the many safety issues and serious

23  defects discussed above. New GM compounded the deception by repeatedly

24  asserting that class vehicles were safe, reliable, and of high quality, and by claiming

25  to be a reputable manufacturer that valued safety and stood behind its vehicles once

26  they are on the road.

27  536. New GM's unfair or deceptive acts or practices were likely to and did in

28  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

KNAPP,
PETERSEN
& CLARKE

-95-

2411127.1  08000/01006

reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

537. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Massachusetts Class.

538. New GM knew or should have known that its conduct violated the Massachusetts Act.

539. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

540. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a) Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b) Intentionally concealed the foregoing from Plaintiffs; and/or

(c) Made incomplete representations about the safety and reliability of the class vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

541. Because New GM fraudulently concealed the many defects in the class vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

542. New GM's systemic devaluation of safety and its concealment of

**KNAPP,
PETERSEN
& CLARKE**

-96-

2411127.1  08000/01006

1  defects in class vehicles were material to Plaintiffs and the Massachusetts Class. A

2  vehicle made by a reputable manufacturer of safe vehicles is safer and worth more

3  than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe

4  vehicles that conceals defects rather than promptly remedies them.

5       543.   Plaintiffs and the Massachusetts Class suffered ascertainable loss caused

6  by New GM's misrepresentations and its concealment of and failure to disclose

7  material information.  Plaintiffs who purchased class vehicles after the date of New

8  GM's inception either would have paid less for their vehicles or would not have

9  purchased or leased them at all. . For Plaintiffs who purchased Pre-Sale Defective

10 Ignition Switch Vehicles that were sold as "Certified Pre-Owned," they too either

11 would have paid less for their vehicles or would not have purchased them but for

12 New GM's violations of the Massachusetts Act.

13      544.   Regardless of time of purchase or lease, no Plaintiffs would have

14 maintained and continued to drive their vehicles had they been aware of New GM's

15 misconduct. By contractually assuming TREAD Act responsibilities with respect to

16 Old GM vehicles, New GM effectively assumed the role of manufacturer of those

17 vehicles because the TREAD Act on its face only applies to vehicle manufacturers.

18 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to

19 refrain from unfair and deceptive acts or practices under the Massachusetts Act. And,

20 in any event, all GM vehicle owners suffered ascertainable loss in the form of the

21 diminished value of their vehicles as a result of New GM's deceptive and unfair acts

22 and practices made in the course of New GM's business.

23      545.   New GM's violations present a continuing risk to Plaintiffs as well as to

24 the general public. New GM's unlawful acts and practices complained of herein

25 affect the public interest.

26      546.   As a direct and proximate result of New GM's violations of the

27 Massachusetts Act, Plaintiffs and the Massachusetts Class have suffered injury-in-

28 fact and/or actual damage.

KNAPP,
PETERSEN
& CLARKE

-97-

2411127.1  08000/01006

547. Pursuant to MASS. GEN. LAWS ch. 93A, § 9, Plaintiffs and the Massachusetts Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiff and each Massachusetts Class member. Because New GM's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff and each Massachusetts Class member, up to three times actual damages, but no less than two times actual damages.

548. Plaintiffs also seek an order enjoining New GM's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

549. On October 8, 2014, certain Plaintiffs sent a letter complying with MASS. GEN. LAWS ch. 93A, § 9(3). Because New GM failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Massachusetts Class are entitled.

## COUNT XXXIII
## FRAUD BY CONCEALMENT

550. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

551. This claim is brought on behalf of Nationwide Class Members who are Massachusetts residents (the "Massachusetts Class").

552. New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

553. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

554. New GM concealed and suppressed material facts concerning the many serious defects plaguing class vehicles, and that it valued cost-cutting over safety and

KNAPP,
PETERSEN
& CLARKE

-98-

2411127.1  08000/01006

1  took steps to ensure that its employees did not reveal known safety defects to
2  regulators or consumers.

3     555.   New GM did so in order to boost confidence in its vehicles and falsely
4  assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles
5  that New GM was a reputable manufacturer that stands behind its vehicles after they
6  are sold and that its vehicles are safe and reliable. The false representations were
7  material to consumers, both because they concerned the quality and safety of the
8  class vehicles and because the representations played a significant role in the value of
9  the vehicles.

10     556.   New GM had a duty to disclose the many defects in class vehicles
11  because they were known and/or accessible only to New GM, were in fact known to
12  New GM as of the time of its creation in 2009 and at every point thereafter, New GM
13  had superior knowledge and access to the facts, and New GM knew the facts were
14  not known to or reasonably discoverable by Plaintiffs and the Massachusetts Class.
15  New GM also had a duty to disclose because it made many general affirmative
16  representations about the safety, quality, and lack of defects in its vehicles, as set
17  forth above, which were misleading, deceptive and incomplete without the disclosure
18  of the additional facts set forth above regarding its actual safety record, safety
19  philosophy, and practices and the actual safety defects in its vehicles. Having
20  volunteered to provide information to Plaintiffs, GM had the duty to disclose not just
21  the partial truth, but the entire truth. These omitted and concealed facts were material
22  because they directly impact the value of the class vehicles purchased or leased by
23  Plaintiffs and the Massachusetts Class. Whether a manufacturer's products are safe
24  and reliable, and whether that manufacturer stands behind its products, are material
25  concerns to a consumer.

26     557.   New GM actively concealed and/or suppressed these material facts, in
27  whole or in part, to protect its profits and avoid recalls that would hurt the brand's
28  image and cost New GM money, and it did so at the expense of Plaintiffs and the

**KNAPP,
PETERSEN
& CLARKE**

-99-

2411127.1  08000/01006

1   Massachusetts Class.

2   558.   On information and belief, New GM has still not made full and adequate

3   disclosure and continues to defraud Plaintiffs and the Massachusetts Class and

4   conceal material information regarding defects that exist in class vehicles.

5   559.   Plaintiffs and the Massachusetts Class were unaware of these omitted

6   material facts and would not have acted as they did if they had known of the

7   concealed and/or suppressed facts, in that they would not have purchased cars

8   manufactured by New GM; and/or they would not have purchased cars manufactured

9   by Old GM in the time after New GM had come into existence and had fraudulently

10  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

11  not have continued to drive their vehicles or would have taken other affirmative

12  steps. Plaintiffs' and the Massachusetts Class's actions were justified. New GM was

13  in exclusive control of the material facts and such facts were not known to the public,

14  Plaintiffs, or the Massachusetts Class.

15  560.   Because of the concealment and/or suppression of the facts, Plaintiffs

16  and the Massachusetts Class sustained damage because they own vehicles that

17  diminished in value as a result of New GM's concealment of, and failure to timely

18  disclose, the serious defects in the class vehicles and the serious safety and quality

19  issues engendered by New GM's corporate policies. Had they been aware of the

20  many defects that existed in class vehicles, and the company's callous disregard for

21  safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after

22  New GM came into existence either would have paid less for their vehicles or would

23  not have purchased or leased them at all; and no Plaintiffs regardless of time of

24  purchase or lease would have maintained their vehicles.

25  561.   The value of all Massachusetts Class Members' vehicles has diminished

26  as a result of New GM's fraudulent concealment of the many defects and its systemic

27  safety issues which have greatly tarnished the GM brand and made any reasonable

28  consumer reluctant to purchase any of the class vehicles, let alone pay what

KNAPP,
PETERSEN
& CLARKE

-100-

1   otherwise would have been fair market value for the vehicles.

2   562.   Accordingly, New GM is liable to the Massachusetts Class for damages

3   in an amount to be proven at trial.

4   563.   New GM's acts were done maliciously, oppressively, deliberately, with

5   intent to defraud, and in reckless disregard of Plaintiffs' and the Massachusetts

6   Class's rights and well-being to enrich New GM. New GM's conduct warrants an

7   assessment of punitive damages in an amount sufficient to deter such conduct in the

8   future, which amount is to be determined according to proof.

9   <u>**COUNT XXXIV**</u>

10   <u>**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**</u>

11   <u>**(ALM GL. CH. 106, § 2-314)**</u>

12   564.   Plaintiffs reallege and incorporate by reference all paragraphs as though

13   fully set forth herein.

14   565.   New GM was a merchant with respect to motor vehicles within the

15   meaning of ALM GL CH. 106, § 2-104(1).

16   566.   Under ALM GL CH. 106, § 2-314, a warranty that the class vehicles

17   were in merchantable condition was implied by law in the transactions when

18   Plaintiffs purchased or leased their class vehicles from New GM on or after July 11,

19   2009.

20   567.   These vehicles, when sold and at all times thereafter, were not

21   merchantable and are not fit for the ordinary purpose for which cars are used.

22   Specifically, the class vehicles are inherently defective in that there are defects which

23   cause inordinate and unusual early wear and failure of engines.

24   568.   New GM was provided notice of these issues by numerous complaints

25   filed against it, internal investigations, and by numerous individual letters and

26   communications sent by Plaintiffs and the Massachusetts Class.

27   569.   As a direct and proximate result of New GM's breach of the implied

28   warranty of merchantability, Plaintiffs and the Massachusetts Class members have

KNAPP,
PETERSEN
& CLARKE

-101-

1   been damaged in an amount to be proven at trial.

2   **COUNT XXXV**

3   **THIRD-PARTY BENEFICIARY CLAIM**

4   570.   Plaintiffs reallege and incorporate by reference all paragraphs as though

5   fully set forth herein.

6   571.   This claim is brought only on behalf of Class members who are

7   Massachusetts residents (the "Massachusetts Class").

8   572.   In the Sales Agreement through which New GM acquired substantially

9   all of the assets of New GM, New GM explicitly agreed as follows:

10   From and after the Closing, [New GM] shall comply with the

11   certification, reporting and recall requirements of the National Traffic

12   and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

13   Recall Enhancement, Accountability and Documentation Act, the Clean

14   Air Act, the California Health and Safety Code and similar Laws, in

15   each case, to the extent applicable in respect of vehicles and vehicle

16   parts manufactured or distributed by [Old GM].

17   573.   With the exception of the portion of the agreement that purports to

18   immunize New GM from its own independent misconduct with respect to cars and

19   parts made by Old GM, the Sales Agreement is a valid and binding contract.

20   574.   But for New GM's covenant to comply with the TREAD Act with

21   respect to cars and parts made by Old GM, the TREAD Act would have no

22   application to New GM with respect to those cars and parts. That is because the

23   TREAD Act on its face imposes reporting and recall obligations only on the

24   "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

25   575.   Because New GM agreed to comply with the TREAD Act with respect

26   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

27   make quarterly submissions to NHTSA of "early warning reporting" data, including

28   incidents involving death, injury, or property damage, warranty claims, consumer

KNAPP,
PETERSEN
& CLARKE

-102-

1  complaints, and field reports concerning failure, malfunction, lack of durability or

2  other performance issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b)

3  retain for five years all underlying records on which the early warning reports are

4  based and all records containing information on malfunctions that may be related to

5  motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate

6  remedial action if it knows or should know that a safety defect exists – including

7  notifying NHTSA and consumers and ordering a recall if necessary. See 49 U.S.C. §

8  30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

9       576.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

10  Old GM, are the clear intended beneficiaries of New GM's agreement to comply

11  with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

12  benefit of having a manufacturer responsible for monitoring the safety of their Old

13  GM vehicles and making certain that any known safety defects would be promptly

14  remedied.

15       577.   Although the Sale Order which consummated New GM's purchase of

16  Old GM purported to give New GM immunity from claims concerning vehicles or

17  parts made by Old GM, the bankruptcy court recently ruled that provision to be

18  unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

19  conduct with respect to cars and parts made by Old GM. Therefore, that provision of

20  the Sale Order and related provisions of the Sale Agreement cannot be read to bar

21  Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

22  breaches of the promise it made in the Sale Agreement.

23       578.   New GM breached its covenant to comply with the TREAD Act with

24  respect to the class vehicles, as it failed to take action to remediate the defect at any

25  time, up to the present.

26       579.   Plaintiffs and the Massachusetts were damaged as a result of New GM's

27  breach. Because of New GM's failure to timely remedy the defect in class vehicles,

28  the value of Old GM class vehicles has diminished in an amount to be determined at

KNAPP,
PETERSEN
& CLARKE

-103-

1 trial.

**COUNT XXXVI**

**UNJUST ENRICHMENT**

580.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

581.   This claim is brought on behalf of members of the Massachusetts Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Massachusetts Unjust Enrichment Class").

582.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

583.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of systemic safety issues that plagued the class vehicle, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

584.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

585.   Thus, all Massachusetts Unjust Enrichment Class Members conferred a benefit on New GM.

586.   It is inequitable for New GM to retain these benefits.

587.   Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

2411127.1  08000/01006

1    588.   New GM knowingly accepted the benefits of its unjust conduct.

2    589.   As a result of New GM's conduct, the amount of its unjust enrichment

3    should be disgorged, in an amount according to proof.

4    **Michigan**

5    ### COUNT XXXVII

6    ### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

7    ### (MICH. COMP. LAWS § 445.903, et seq.)

8    590.   Plaintiffs reallege and incorporate by reference all paragraphs as though

9    fully set forth herein.

10   591.   This claim is brought only on behalf of Nationwide Class Members who

11   are Michigan residents (the "Michigan Class").

12   592.   Plaintiffs and the Michigan Class Members were "person[s]" within the

13   meaning of the MICH. COMP. LAWS § 445.902(1)(d).

14   593.   At all relevant times hereto, New GM was a "person" engaged in "trade

15   or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and

16   (g).

17   594.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits

18   "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of

19   trade or commerce ...." MICH. COMP. LAWS § 445.903(1). New GM engaged in

20   unfair, unconscionable, or deceptive methods, acts or practices prohibited by the

21   Michigan CPA, including: "(c) Representing that goods or services have . . .

22   characteristics . . . that they do not have . . . .;" "(e) Representing that goods or

23   services are of a particular standard . . . if they are of another;" "(i) Making false or

24   misleading statements of fact concerning the reasons for, existence of, or amounts of

25   price reductions;" "(s) Failing to reveal a material fact, the omission of which tends

26   to mislead or deceive the consumer, and which fact could not reasonably be known

27   by the consumer;" "(bb) Making a representation of fact or statement of fact material

28   to the transaction such that a person reasonably believes the represented or suggested

**KNAPP,**
**PETERSEN**
**& CLARKE**

-105-

2411127.1   08000/01006

1  state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are

2  material to the transaction in light of representations of fact made in a positive

3  manner." MICH. COMP. LAWS § 445.903(1). By systematically devaluing safety

4  and concealing defects in the class vehicles, New GM participated in unfair,

5  deceptive, and unconscionable acts that violated the Michigan CPA.

6      595.  In the course of its business, New GM systematically devalued safety

7  and concealed defects in the class vehicles as described herein and otherwise

8  engaged in activities with a tendency or capacity to deceive. New GM also engaged

9  in unlawful trade practices by employing deception, deceptive acts or practices,

10  fraud, misrepresentations, or concealment, suppression or omission of any material

11  fact with intent that others rely upon such concealment, suppression or omission, in

12  connection with the sale of class vehicles.

13      596.  From the date of its inception on July 11, 2009, New GM knew of many

14  serious defects affecting many models and years of class vehicles, because of (i) the

15  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

16  investigations, and notifications from regulatory authorities; and (iii) ongoing

17  performance of New GM's TREAD Act obligations. New GM became aware of

18  other serious defects and systemic safety issues years ago, but concealed all of that

19  information.

20      597.  New GM was also aware that it valued cost-cutting over safety, selected

21  parts from the cheapest supplier regardless of quality, and actively discouraged

22  employees from finding and flagging known safety defects, and that this approach

23  would necessarily cause the existence of more defects in the vehicles it designed and

24  manufactured and the failure to disclose and remedy defects in all the class vehicles.

25  New GM concealed this information as well.

26      598.  By failing to disclose and by actively concealing the many defects in

27  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

28  presenting itself as a reputable manufacturer that valued safety and stood behind its

**KNAPP,
PETERSEN
& CLARKE**

2411127.1  08000/01006

1 vehicles after they were sold, New GM engaged in unfair, unconscionable, and

2 deceptive business practices in violation of the Michigan CPA.

3    599.   In the course of New GM's business, it willfully failed to disclose and

4 actively concealed the dangerous risk posed by the defects discussed above. New

5 GM compounded the deception by repeatedly asserting that class vehicles were safe,

6 reliable, and of high quality, and by claiming to be a reputable manufacturer that

7 valued safety and stood behind its vehicles once they are on the road.

8    600.   New GM's unfair or deceptive acts or practices were likely to and did in

9 fact deceive reasonable consumers, including Plaintiffs, about the true safety and

10 reliability of class vehicles, the quality of the GM brand, the devaluing of safety at

11 New GM, and the true value of the class vehicles.

12    601.   New GM intentionally and knowingly misrepresented material facts

13 regarding the class vehicles with an intent to mislead Plaintiffs and the Michigan

14 Class.

15    602.   New GM knew or should have known that its conduct violated the

16 Michigan CPA.

17    603.   As alleged above, New GM made material statements about the safety

18 and reliability of the class vehicles and the GM brand that were either false or

19 misleading.

20    604.   New GM owed Plaintiffs a duty to disclose the true safety and reliability

21 of the class vehicles and the devaluing of safety at New GM, because New GM:

22    (a)   Possessed exclusive knowledge that it valued cost-cutting over

23 safety, selected parts from the cheapest supplier regardless of quality, and actively

24 discouraged employees from finding and flagging known safety defects, and that this

25 approach would necessarily cause the existence of more defects in the vehicles it

26 designed and manufactured;

27    (b)   Intentionally concealed the foregoing from Plaintiffs; and/or

28    (c)   Made incomplete representations about the safety and reliability

1    of the class vehicles generally, and the valve guide defects in particular, while

2    purposefully withholding material facts from Plaintiffs that contradicted these

3    representations.

4         605.    Because New GM fraudulently concealed the defects in the class

5    vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

6    attached to those vehicles by New GM's conduct, they are now worth significantly

7    less than they otherwise would be.

8         606.    New GM's systemic devaluation of safety and its concealment of the

9    defects in the class vehicles were material to Plaintiffs and the Michigan Class.  A

10   vehicle made by a reputable manufacturer of vehicles is worth more than an

11   otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

12   conceals defects rather than promptly remedies them.

13        607.    Plaintiffs and the Michigan Class suffered ascertainable loss caused by

14   New GM's misrepresentations and its concealment of and failure to disclose material

15   information.  Plaintiffs who purchased class vehicles after the date of New GM's

16   inception either would have paid less for their vehicles or would not have purchased

17   or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

18   of New GM's misconduct.

19        608.    Regardless of time of purchase or lease, no Plaintiffs would have

20   maintained and continued to drive their vehicles had they been aware of New GM's

21   misconduct. By contractually assuming TREAD Act responsibilities with respect to

22   Old GM class vehicles, New GM effectively assumed the role of manufacturer of

23   those vehicles because the TREAD Act on its face only applies to vehicle

24   manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

25   vehicle owners to refrain from unfair and deceptive acts or practices under the

26   Michigan CPA.  And, in any event, all class vehicle owners suffered ascertainable

27   loss in the form of the diminished value of their vehicles as a result of New GM's

28   deceptive and unfair acts and practices made in the course of New GM's business.

KNAPP,
PETERSEN
& CLARKE

-108-

1    As a direct and proximate result of New GM's violations of the Michigan CPA,

2    Plaintiffs and the Michigan Class have suffered injury-in-fact and/or actual damage.

3        609.   Plaintiffs seek injunctive relief to enjoin New GM from continuing its

4    unfair and deceptive acts; monetary relief against New GM measured as the greater

5    of (a) actual damages in an amount to be determined at trial and (b) statutory

6    damages in the amount of $250 for Plaintiffs and each Michigan Class member;

7    reasonable attorneys' fees; and any other just and proper relief available under

8    MICH. COMP. LAWS § 445.911.

9        610.   Plaintiffs also seek punitive damages against New GM because it

10   carried out despicable conduct with willful and conscious disregard of the rights and

11   safety of others. New GM intentionally and willfully misrepresented the safety and

12   reliability of the class vehicles, deceived Plaintiffs and Michigan Class Members on

13   life-or-death matters, and concealed material facts that only they knew, all to avoid

14   the expense and public relations nightmare of correcting a deadly flaw in vehicles it

15   repeatedly promised Plaintiffs and Michigan Class Members were safe. New GM's

16   unlawful conduct constitutes malice, oppression, and fraud warranting punitive

17   damages.

18   **COUNT XXXVIII**

19   **FRAUD BY CONCEALMENT**

20       611.   Plaintiffs reallege and incorporate by reference all paragraphs as though

21   fully set forth herein.

22       612.   This claim is brought on behalf of Nationwide Class Members who are

23   Michigan residents (the "Michigan Class").

24       613.   New GM concealed and suppressed material facts concerning the

25   quality of the class vehicles.

26       614.   New GM concealed and suppressed material facts concerning the

27   culture of New GM – a culture characterized by an emphasis on cost-cutting, the

28   studious avoidance of quality issues, and a shoddy design process.

**KNAPP,
PETERSEN
& CLARKE**

-109-

615. New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

616. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

617. New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Michigan Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Michigan Class.

618. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Michigan Class.

619.  On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Michigan Class and conceal material information regarding defects that exist in the class vehicles.

620.  Plaintiffs and the Michigan Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM in the time after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Michigan Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Michigan Class.

621.  Because of the concealment and/or suppression of the facts, Plaintiffs and the Michigan Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies.  Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

622.  The value of all Michigan Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

623.  Accordingly, New GM is liable to the Michigan Class for damages in an

-111-

KNAPP,
PETERSEN
& CLARKE

1  amount to be proven at trial.

2     624.   New GM's acts were done maliciously, oppressively, deliberately, with

3  intent to defraud, and in reckless disregard of Plaintiffs' and the Michigan Class's

4  rights and well-being to enrich New GM. New GM's conduct warrants an assessment

5  of punitive damages in an amount sufficient to deter such conduct in the future,

6  which amount is to be determined according to proof.

7                          **COUNT XXXIX**

8           **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

9                  **(MICH. COMP. LAWS § 440.2314)**

10    625.   Plaintiffs reallege and incorporate by reference all paragraphs as though

11  fully set forth herein.

12    626.   This claim is brought only on behalf of the Michigan Class.

13    627.   New GM was a merchant with respect to motor vehicles within the

14  meaning of MICH. COMP. LAWS § 440.2314(1).

15    628.   Under MICH. COMP. LAWS § 440.2314, a warranty that the class

16  vehicles were in merchantable condition was implied by law in the transactions when

17  Plaintiffs purchased or leased their class vehicles from New GM on or after July 11,

18  2009.

19    629.   These vehicles, when sold and at all times thereafter, were not

20  merchantable and are not fit for the ordinary purpose for which cars are used.

21  Specifically, the class vehicles are inherently defective in that engines are subject to

22  unusual premature wear and catastrophic failure.

23    630.   New GM was provided notice of these issues by numerous complaints

24  filed against it, internal investigations, and by numerous individual letters and

25  communications sent by Plaintiffs and the Michigan Class before or within a

26  reasonable amount of time after New GM issued the recall and the allegations of

27  vehicle defects became public.

28    631.   As a direct and proximate result of New GM's breach of the implied

**KNAPP,
PETERSEN
& CLARKE**

-112-

1 warranty of merchantability, Plaintiffs and the Michigan Class members have been

2 damaged in an amount to be proven at trial.

3 **COUNT XL**

4 **THIRD-PARTY BENEFICIARY CLAIM**

5 632. Plaintiffs reallege and incorporate by reference all paragraphs as though

6 fully set forth herein.

7 633. This claim is brought only on behalf of Class members who are

8 Michigan residents (the "Michigan Class").

9 634. In the Sales Agreement through which New GM acquired substantially

10 all of the assets of New GM, New GM explicitly agreed as follows:

11 From and after the Closing, [New GM] shall comply with the

12 certification, reporting and recall requirements of the National Traffic

13 and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

14 Recall Enhancement, Accountability and Documentation Act, the Clean

15 Air Act, the California Health and Safety Code and similar Laws, in

16 each case, to the extent applicable in respect of vehicles and vehicle

17 parts manufactured or distributed by [Old GM].

18 635. With the exception of the portion of the agreement that purports to

19 immunize New GM from its own independent misconduct with respect to cars and

20 parts made by Old GM, the Sales Agreement is a valid and binding contract.

21 636. But for New GM's covenant to comply with the TREAD Act with

22 respect to cars and parts made by Old GM, the TREAD Act would have no

23 application to New GM with respect to those cars and parts. That is because the

24 TREAD Act on its face imposes reporting and recall obligations only on the

25 "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

26 637. Because New GM agreed to comply with the TREAD Act with respect

27 to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

28 make quarterly submissions to NHTSA of "early warning reporting" data, including

**KNAPP,
PETERSEN
& CLARKE**

-113-

2411127.1  08000/01006

1 incidents involving property damage, warranty claims, consumer complaints, and

2 field reports concerning failure, malfunction, lack of durability or other performance

3 issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

4 underlying records on which the early warning reports are based and all records

5 containing information on malfunctions that may be related to motor vehicle safety.

6 See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

7 or should know that a safety defect exists – including notifying NHTSA and

8 consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

9 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

10    638.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

11 Old GM, are the clear intended beneficiaries of New GM's agreement to comply

12 with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

13 benefit of having a manufacturer responsible for monitoring the safety of their Old

14 GM vehicles and making certain that any known defects would be promptly

15 remedied.

16    639.   Although the Sale Order which consummated New GM's purchase of

17 Old GM purported to give New GM immunity from claims concerning vehicles or

18 parts made by Old GM, the bankruptcy court recently ruled that provision to be

19 unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

20 conduct with respect to cars and parts made by Old GM. Therefore, that provision of

21 the Sale Order and related provisions of the Sale Agreement cannot be read to bar

22 Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

23 breaches of the promise it made in the Sale Agreement.

24    640.   New GM breached its covenant to comply with the TREAD Act with

25 respect to the class vehicles, as it failed to take action to remediate the defects at any

26 time, up to the present.

27    641.   Plaintiffs and the Michigan Class were damaged as a result of New

28 GM's breach.  Because of New GM's failure to timely remedy the defect in class

KNAPP,
PETERSEN
& CLARKE

-114-

vehicles, the value of Old GM class vehicles has diminished in an amount to be determined at trial.

## COUNT XLI

## UNJUST ENRICHMENT

642. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

643. This claim is brought on behalf of members of the Michigan Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Michigan Unjust Enrichment Class").

644. New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

645. New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued the class vehicles for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

646. With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

647. Thus, all Michigan Unjust Enrichment Class Members conferred a benefit on New GM.

648. It is inequitable for New GM to retain these benefits.

649. Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

-115-

650.    New GM knowingly accepted the benefits of its unjust conduct. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Montana**

**COUNT XLII**

**VIOLATION OF MONTANA UNFAIR TRADE PRACTICES**

**AND CONSUMER PROTECTION ACT OF 1973**

**(MONT. CODE ANN. § 30-14-101, et seq.)**

651.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

652.    This claim is brought only on behalf of Nationwide Class Members who are Montana residents (the "Montana Class").

653.    New GM, Plaintiffs and the Montana Class are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

654.    Montana Class Members are "consumer[s]" under MONT. CODE ANN. § 30-14- 102(1).

655.    The sale or lease of the class vehicles to Montana Class Members occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and New GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

656.    The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.  By systematically devaluing safety and concealing defects in the class vehicles, New GM engaged in unfair and deceptive acts or practices in violation of the Montana CPA.

657.    In the course of its business, New GM systematically devalued safety and concealed defects in class vehicles as described herein and otherwise engaged in

KNAPP,
PETERSEN
& CLARKE

-116-

1  activities with a tendency or capacity to deceive.  New GM also engaged in unlawful

2  trade practices by employing deception, deceptive acts or practices, fraud,

3  misrepresentations, or concealment, suppression or omission of any material fact

4  with intent that others rely upon such concealment, suppression or omission, in

5  connection with the sale of the class vehicles.

6    658.   From the date of its inception on July 11, 2009, New GM knew of many

7  serious defects affecting many models and years of the class vehicles, because of (i)

8  the knowledge of Old GM personnel who remained at New GM; (ii) continuous

9  reports, investigations, and notifications from regulatory authorities; and (iii)

10  ongoing performance of New GM's TREAD Act obligations.  New GM became

11  aware of other serious defects and systemic safety issues years ago, but concealed all

12  of that information.

13    659.   New GM was also aware that it valued cost-cutting over safety, selected

14  parts from the cheapest supplier regardless of quality, and actively discouraged

15  employees from finding and flagging known safety defects, and that this approach

16  would necessarily cause the existence of more defects in the vehicles it designed and

17  manufactured and the failure to disclose and remedy defects in all the class vehicles.

18  New GM concealed this information as well.

19    660.   By failing to disclose and by actively concealing the many defects in the

20  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

21  presenting itself as a reputable manufacturer that valued safety and stood behind its

22  vehicles after they were sold, New GM engaged in unfair and deceptive business

23  practices in violation of the Montana CPA.

24    661.   In the course of New GM's business, it willfully failed to disclose and

25  actively concealed the dangerous risk posed by the defects discussed above.  New

26  GM compounded the deception by repeatedly asserting that the class vehicles were

27  safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

28  that valued safety and stood behind its vehicles once they are on the road.

KNAPP,
PETERSEN
& CLARKE

-117-

2411127.1  08000/01006

662.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

663.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles and the GM brand with an intent to mislead Plaintiffs and the Montana Class.

664.   New GM knew or should have known that its conduct violated the Montana CPA.

665.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles that were either false or misleading.

666.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

667.   Because New GM fraudulently concealed the many defects in the class vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

668.   New GM's systemic devaluation of safety and its concealment of the

KNAPP,
PETERSEN
& CLARKE

-118-

1  defects in the class vehicles were material to Plaintiffs and the Montana Class. A

2  vehicle made by a reputable manufacturer of vehicles is worth more than an

3  otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

4  conceals defects rather than promptly remedies them.

5      669. Plaintiffs and the Montana Class suffered ascertainable loss caused by

6  New GM's misrepresentations and its concealment of and failure to disclose material

7  information. Plaintiffs who purchased the class vehicles after the date of New GM's

8  inception either would have paid less for their vehicles or would not have purchased

9  or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result

10  of New GM's misconduct.

11      670. Regardless of time of purchase or lease, no Plaintiffs would have

12  maintained and continued to drive their vehicles had they been aware of New GM's

13  misconduct. By contractually assuming TREAD Act responsibilities with respect to

14  Old GM class vehicles, New GM effectively assumed the role of manufacturer of

15  those vehicles because the TREAD Act on its face only applies to vehicle

16  manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

17  vehicle owners to refrain from unfair and deceptive acts or practices under the

18  Montana CPA. And, in any event, all class vehicle owners suffered ascertainable

19  loss in the form of the diminished value of their vehicles as a result of New GM's

20  deceptive and unfair acts and practices made in the course of New GM's business.

21      671. As a direct and proximate result of New GM's violations of the

22  Montana CPA, Plaintiffs and the Montana Class have suffered injury-in-fact and/or

23  actual damage.

24      672. Because the New GM's unlawful methods, acts, and practices have

25  caused Montana Class Members to suffer an ascertainable loss of money and

26  property, the Montana Class seeks from New GM actual damages or $500,

27  whichever is greater, discretionary treble damages, reasonable attorneys' fees, an

28  order enjoining New GM's unfair, unlawful, and/or deceptive practices, and any

**KNAPP,
PETERSEN
& CLARKE**

-119-

1    other relief the Court considers necessary or proper, under MONT. CODE ANN. §

2    30-14-133.

3                             **COUNT XLIII**

4                 **FRAUD BY CONCEALMENT**

5        673.   Plaintiffs reallege and incorporate by reference all paragraphs as though

6    fully set forth herein.

7        674.   This claim is brought on behalf of Nationwide Class Members who are

8    Montana residents (the "Montana Class").

9        675.   New GM concealed and suppressed material facts concerning the

10    quality of the class vehicles.

11        676.   New GM concealed and suppressed material facts concerning the

12    culture of New GM – a culture characterized by an emphasis on cost-cutting, the

13    studious avoidance of quality issues, and a shoddy design process.

14        677.   New GM concealed and suppressed material facts concerning the

15    defects in the class vehicles, and that it valued cost-cutting over quality and took

16    steps to ensure that its employees did not reveal known defects to regulators or

17    consumers.

18        678.   New GM did so in order to boost confidence in its vehicles and falsely

19    assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

20    that New GM was a reputable manufacturer that stands behind its vehicles after they

21    are sold and that its vehicles are safe and reliable.  The false representations were

22    material to consumers, both because they concerned the quality and safety of the

23    class vehicles and because the representations played a significant role in the value of

24    the vehicles.

25        679.   New GM had a duty to disclose the defects in the class vehicles because

26    they were known and/or accessible only to New GM, were in fact known to New

27    GM as of the time of its creation in 2009 and at every point thereafter, New GM had

28    superior knowledge and access to the facts, and New GM knew the facts were not

KNAPP,
PETERSEN
& CLARKE

2411127.1  08000/01006

1 known to or reasonably discoverable by Plaintiffs and the Montana Class. New GM

2 also had a duty to disclose because it made many general affirmative representations

3 about the safety, quality, and lack of defects in its vehicles, as set forth above, which

4 were misleading, deceptive and incomplete without the disclosure of the additional

5 facts set forth above regarding defects in the class vehicles.  Having volunteered to

6 provide information to Plaintiffs, GM had the duty to disclose not just the partial

7 truth, but the entire truth.  These omitted and concealed facts were material because

8 they directly impact the value of the class vehicles purchased or leased by Plaintiffs

9 and the Montana Class.

10     680.   New GM actively concealed and/or suppressed these material facts, in

11 whole or in part, to protect its profits and avoid recalls that would hurt the brand's

12 image and cost New GM money, and it did so at the expense of Plaintiffs and the

13 Montana Class.

14     681.   On information and belief, New GM has still not made full and adequate

15 disclosure and continues to defraud Plaintiffs and the Montana Class and conceal

16 material information regarding defects that exist in the class vehicles.

17     682.   Plaintiffs and the Montana Class were unaware of these omitted material

18 facts and would not have acted as they did if they had known of the concealed and/or

19 suppressed facts, in that they would not have purchased cars manufactured by New

20 GM; and/or they would not have purchased cars manufactured by Old GM in the

21 time after New GM had come into existence and had fraudulently opted to conceal,

22 and to misrepresent, the true facts about the vehicles; and/or would not have

23 continued to drive their vehicles or would have taken other affirmative steps.

24 Plaintiffs' and the Montana Class's actions were justified. New GM was in exclusive

25 control of the material facts and such facts were not known to the public, Plaintiffs,

26 or the Montana Class.

27     683.   Because of the concealment and/or suppression of the facts, Plaintiffs

28 and the Montana Class sustained damage because they own vehicles that diminished

**KNAPP,
PETERSEN
& CLARKE**

-121-

2411127.1  08000/01006

1 in value as a result of New GM's concealment of, and failure to timely disclose, the

2 defects in the class vehicles and the quality issues engendered by New GM's

3 corporate policies. Had they been aware of the defects that existed in the class

4 vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

5 New GM came into existence either would have paid less for their vehicles or would

6 not have purchased or leased them at all; and no Plaintiffs regardless of time of

7 purchase or lease would have maintained their vehicles.

8    684.   The value of all Montana Class Members' vehicles has diminished as a

9 result of New GM's fraudulent concealment of the defects which have tarnished the

10 Corvette brand and made any reasonable consumer reluctant to purchase any of the

11 class vehicles, let alone pay what otherwise would have been fair market value for

12 the vehicles.

13    685.   Accordingly, New GM is liable to the Montana Class for damages in an

14 amount to be proven at trial.

15    686.   New GM's acts were done maliciously, oppressively, deliberately, with

16 intent to defraud, and in reckless disregard of Plaintiffs' and the Montana Class's

17 rights and well-being to enrich New GM. New GM's conduct warrants an assessment

18 of punitive damages in an amount sufficient to deter such conduct in the future,

19 which amount is to be determined according to proof.

20                          **COUNT XLIV**

21    **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

22                     **(MONT. CODE § 30-2-314)**

23    687.   Plaintiffs reallege and incorporate by reference all paragraphs as though

24 fully set forth herein.

25    688.   This claim is brought only on behalf of the Montana Class.

26    689.   New GM was a merchant with respect to motor vehicles under MONT.

27 CODE § 30- 2-104(1).

28    690.   Under MONT. CODE § 30-2-314, a warranty that the class vehicles

**KNAPP,**
**PETERSEN**
**& CLARKE**

-122-

1    were in merchantable condition was implied by law in the transactions when

2    Plaintiffs purchased or leased their class vehicles from New GM on or after July 11,

3    2009.

4        691.   These vehicles, when sold and at all times thereafter, were not

5    merchantable and are not fit for the ordinary purpose for which cars are used.

6    Specifically, the class vehicles are inherently defective in that engines are subject to

7    unusual premature wear and catastrophic failure.

8        692.   New GM was provided notice of these issues by numerous complaints

9    filed against it, internal investigations, and by numerous individual letters and

10   communications sent by Plaintiffs and the Montana Class before or within a

11   reasonable amount of time after New GM issued the recall and the allegations of

12   vehicle defects became public.

13       693.   As a direct and proximate result of New GM's breach of the warranties

14   of merchantability, Plaintiffs and the Montana Class members have been damaged in

15   an amount to be proven at trial.

16                          **COUNT XLV**

17                **THIRD-PARTY BENEFICIARY CLAIM**

18       694.   Plaintiffs reallege and incorporate by reference all paragraphs as though

19   fully set forth herein.

20       695.   This claim is brought only on behalf of Class members who are

21   Montana residents (the "Montana Class").

22       696.   In the Sales Agreement through which New GM acquired substantially

23   all of the assets of New GM, New GM explicitly agreed as follows:

24           From and after the Closing, [New GM] shall comply with the

25           certification, reporting and recall requirements of the National Traffic

26           and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

27           Recall Enhancement, Accountability and Documentation Act, the Clean

28           Air Act, the California Health and Safety Code and similar Laws, in

**KNAPP,
PETERSEN
& CLARKE**

-123-

2411127.1  08000/01006

each case, to the extent applicable in respect of vehicles and vehicle
parts manufactured or distributed by [Old GM].

697. With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

698. But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

699. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

700. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known defects would be promptly remedied.

KNAPP,
PETERSEN
& CLARKE

-124-

701.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

702.   New GM breached its covenant to comply with the TREAD Act with respect to class vehicles, as it failed to take action to remediate the defects at any time, up to the present.

703.   Plaintiffs and the Montana Class were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the defect in class vehicles, the value of the Old GM vehicles has diminished in an amount to be determined at trial.

## COUNT XLVI
## UNJUST ENRICHMENT

704.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

705.   This claim is brought on behalf of members of the Montana Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "Montana Unjust Enrichment Class").

706.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

707.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New

KNAPP,
PETERSEN
& CLARKE

-125-

2411127.1  08000/01006

1  GM's concealment of defect issues that plagued the class vehicles, for more than

2  they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced

3  to pay other costs.

4       708.   With respect to the class vehicles purchased before New GM came into

5  existence that were still on the road after New GM came into existence and as to

6  which New GM had unjustly and unlawfully determined not to recall, New GM

7  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

8  from its statements about the success of New GM.

9       709.   Thus, all Montana Unjust Enrichment Class Members conferred a

10  benefit on New GM.

11       710.   It is inequitable for New GM to retain these benefits.

12       711.   Plaintiffs were not aware about the true facts about the class vehicles,

13  and did not benefit from GM's conduct.

14       712.   New GM knowingly accepted the benefits of its unjust conduct.

15       713.   As a result of New GM's conduct, the amount of its unjust enrichment

16  should be disgorged, in an amount according to proof.

17  **New Jersey**

18                     **COUNT XLVII**

19       **VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**

20                 **(N.J. STAT. ANN. § 56:8-1, et seq.)**

21       714.   Plaintiffs reallege and incorporate by reference all paragraphs as though

22  fully set forth herein.

23       715.   This claim is brought only on behalf of Nationwide Class Members who

24  are New Jersey residents (the "New Jersey Class").

25       716.   Plaintiffs, the New Jersey Class, and New GM are or were "persons"

26  within the meaning of N.J. STAT. ANN. § 56:8-1(d).

27       717.   New GM engaged in "sales" of "merchandise" within the meaning of

28  N.J. STAT. ANN. § 56:8-1(c), (d).

KNAPP,
PETERSEN
& CLARKE

-126-

718.   The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby..." N.J. STAT. ANN. § 56:8-2. New GM engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Class Members rely upon their acts, concealment, suppression or omissions.

719.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

720.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD.

721.   Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

722.   New GM was also aware that it valued cost-cutting over safety, selected

1 parts from the cheapest supplier regardless of quality, and actively discouraged
2 employees from finding and flagging known safety defects, and that this approach
3 would necessarily cause the existence of more defects in the vehicles it designed and
4 manufactured and the failure to disclose and remedy defects in all class vehicles.
5 New GM concealed this information as well.

6     723. By failing to disclose and by actively concealing the many defects in
7 class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by
8 presenting itself as a reputable manufacturer that valued safety and stood behind its
9 vehicles after they were sold, New GM engaged in deceptive business practices in
10 violation of the New Jersey CFA.

11     724. In the course of New GM's business, it willfully failed to disclose and
12 actively concealed the dangerous risk posed by the many safety issues and serious
13 defects discussed above. New GM compounded the deception by repeatedly
14 asserting that the class vehicles were safe, reliable, and of high quality, and by
15 claiming to be a reputable manufacturer that valued safety and stood behind its
16 vehicles once they are on the road.

17     725. New GM's unfair or deceptive acts or practices were likely to and did in
18 fact deceive reasonable consumers, including Plaintiffs, about the true safety and
19 reliability of the class vehicles, the quality of the GM brand, the devaluing of safety
20 at New GM, and the true value of the class vehicles.

21     726. New GM intentionally and knowingly misrepresented material facts
22 regarding the class vehicles with an intent to mislead Plaintiffs and the New Jersey
23 Class.

24     727. New GM knew or should have known that its conduct violated the New
25 Jersey CFA.

26     728. As alleged above, New GM made material statements about the safety
27 and reliability of the class vehicles and the GM brand that were either false or
28 misleading.

**KNAPP,**
**PETERSEN**
**& CLARKE**

-128-

729. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a) Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b) Intentionally concealed the foregoing from Plaintiffs; and/or

(c) Made incomplete representations about the safety and reliability of the class vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

730. Because New GM fraudulently concealed the many defects in the class vehicles, resulting in negative publicity once the defects finally began to be disclosed, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

731. New GM's systemic devaluation of safety and its concealment of defects in class vehicles were material to Plaintiffs and the New Jersey Class. A vehicle made by a reputable manufacturer is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

732. Plaintiffs and the New Jersey Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. For Plaintiffs who purchased class vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their

2411127.1  08000/01006

1  vehicles or would not have purchased them but for New GM's violations of the New

2  Jersey CFA.

3      733.  Regardless of time of purchase or lease, no Plaintiffs would have

4  maintained and continued to drive their vehicles had they been aware of New GM's

5  misconduct. By contractually assuming TREAD Act responsibilities with respect to

6  Old GM vehicles, New GM effectively assumed the role of manufacturer of those

7  vehicles because the TREAD Act on its face only applies to vehicle manufacturers.

8  49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to

9  refrain from unfair and deceptive acts or practices under the New Jersey CFA. And,

10 in any event, all GM vehicle owners suffered ascertainable loss in the form of the

11 diminished value of their vehicles as a result of New GM's deceptive and unfair acts

12 and practices that occurred in the course of New GM's business.

13     734.  New GM's violations present a continuing risk to Plaintiffs as well as to

14 the general public. New GM's unlawful acts and practices complained of herein

15 affect the public interest.

16     735.  As a direct and proximate result of New GM's violations of the New

17 Jersey CFA, Plaintiffs and the New Jersey Class have suffered injury-in-fact and/or

18 actual damage.

19     736.  Plaintiffs and the New Jersey Class are entitled to recover legal and/or

20 equitable relief including an order enjoining New GM's unlawful conduct, treble

21 damages, costs and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-

22 19, and any other just and appropriate relief.

23                         **COUNT XLVIII**

24                    **FRAUD BY CONCEALMENT**

25     737.  Plaintiffs reallege and incorporate by reference all paragraphs as though

26 fully set forth herein.

27     738.  This claim is brought on behalf of Nationwide Class Members who are

28 New Jersey residents (the "New Jersey Class").

KNAPP,
PETERSEN
& CLARKE

-130-

739.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the class vehicles.

740.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

741.   New GM concealed and suppressed material facts concerning the many serious defects plaguing class vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

742.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

743.   New GM had a duty to disclose the many defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the New Jersey Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material

KNAPP,
PETERSEN
& CLARKE

-131-

1 because they directly impact the value of the class vehicles purchased or leased by

2 Plaintiffs and the New Jersey Class. Whether a manufacturer's products are safe and

3 reliable, and whether that manufacturer stands behind its products, are material

4 concerns to a consumer.

5      744. New GM actively concealed and/or suppressed these material facts, in

6 whole or in part, to protect its profits and avoid recalls that would hurt the brand's

7 image and cost New GM money, and it did so at the expense of Plaintiffs and the

8 New Jersey Class.

9      745. On information and belief, New GM has still not made full and adequate

10 disclosure and continues to defraud Plaintiffs and the New Jersey Class and conceal

11 material information regarding defects that exist in the class vehicles.

12      746. Plaintiffs and the New Jersey Class were unaware of these omitted

13 material facts and would not have acted as they did if they had known of the

14 concealed and/or suppressed facts, in that they would not have purchased cars

15 manufactured by New GM; and/or they would not have purchased cars manufactured

16 by Old GM in the time after New GM had come into existence and had fraudulently

17 opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

18 not have continued to drive their vehicles or would have taken other affirmative

19 steps. Plaintiffs' and the New Jersey Class's actions were justified. New GM was in

20 exclusive control of the material facts and such facts were not known to the public,

21 Plaintiffs, or the New Jersey Class.

22      747. Because of the concealment and/or suppression of the facts, Plaintiffs

23 and the New Jersey Class sustained damage because they own vehicles that

24 diminished in value as a result of New GM's concealment of, and failure to timely

25 disclose, the serious defects in the class vehicles and the serious safety and quality

26 issues engendered by New GM's corporate policies. Had they been aware of the

27 many defects that existed in the class vehicles, Plaintiffs who purchased new or

28 Certified Previously Owned vehicles after New GM came into existence either would

KNAPP,
PETERSEN
& CLARKE

-132-

1 have paid less for their vehicles or would not have purchased or leased them at all;

2 and no Plaintiffs regardless of time of purchase or lease would have maintained their

3 vehicles.

4     748.   The value of all New Jersey Class Members' vehicles has diminished as

5 a result of New GM's fraudulent concealment of the many defects and its systemic

6 safety issues which have greatly tarnished the class vehicles and made any

7 reasonable consumer reluctant to purchase any of the class vehicles, let alone pay

8 what otherwise would have been fair market value for the vehicles.

9     749.   Accordingly, New GM is liable to the New Jersey Class for damages in

10 an amount to be proven at trial.

11     750.   New GM's acts were done maliciously, oppressively, deliberately, with

12 intent to defraud, and in reckless disregard of Plaintiffs' and the New Jersey Class's

13 rights and well-being to enrich New GM. New GM's conduct warrants an assessment

14 of punitive damages in an amount sufficient to deter such conduct in the future,

15 which amount is to be determined according to proof.

16 **COUNT XLIX**

17 **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

18 **(N.J. STAT. ANN. § 12A:2-314)**

19     751.   Plaintiffs reallege and incorporate by reference all paragraphs as though

20 fully set forth herein.

21     752.   This claim is brought only on behalf of New Jersey Class.

22     753.   New GM was a merchant with respect to motor vehicles within the

23 meaning of N.J. STAT. ANN. § 12A:2-104(1).

24     754.   A warranty that the class vehicles were in merchantable condition was

25 implied by law under N.J. STAT. ANN. § 12A:2-104(1) in the transactions when

26 Plaintiffs purchased their class vehicles from New GM on or after July 11, 2009.

27     755.   These vehicles, when sold and at all times thereafter, were not

28 merchantable and are not fit for the ordinary purpose for which cars are used.

**KNAPP,
PETERSEN
& CLARKE**

-133-

1 Specifically, the class vehicles are inherently defective in that there are defects which

2 cause inordinate and unusual early wear and failure of engines.

3 756. New GM was provided notice of these issues by numerous complaints

4 filed against it, internal investigations, and by numerous individual letters and

5 communications sent by Plaintiffs and the New Jersey Class.

6 757. As a direct and proximate result of New GM's breach of the warranties

7 of merchantability, Plaintiffs and the New Jersey Class members have been damaged

8 in an amount to be proven at trial.

9 **COUNT L**

10 **THIRD-PARTY BENEFICIARY CLAIM**

11 758. Plaintiffs reallege and incorporate by reference all paragraphs as though

12 fully set forth herein.

13 759. This claim is brought only on behalf of Class members who are New

14 Jersey residents (the "New Jersey Class").

15 760. In the Sales Agreement through which New GM acquired substantially

16 all of the assets of New GM, New GM explicitly agreed as follows:

17 From and after the Closing, [New GM] shall comply with the

18 certification, reporting and recall requirements of the National Traffic

19 and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

20 Recall Enhancement, Accountability and Documentation Act, the Clean

21 Air Act, the California Health and Safety Code and similar Laws, in

22 each case, to the extent applicable in respect of vehicles and vehicle

23 parts manufactured or distributed by [Old GM].

24 761. With the exception of the portion of the agreement that purports to

25 immunize New GM from its own independent misconduct with respect to cars and

26 parts made by Old GM, the Sales Agreement is a valid and binding contract.

27 762. But for New GM's covenant to comply with the TREAD Act with

28 respect to cars and parts made by Old GM, the TREAD Act would have no

KNAPP,
PETERSEN
& CLARKE

-134-

1   application to New GM with respect to those cars and parts. That is because the

2   TREAD Act on its face imposes reporting and recall obligations only on the

3   "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

4      763.   Because New GM agreed to comply with the TREAD Act with respect

5   to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

6   make quarterly submissions to NHTSA of "early warning reporting" data, including

7   incidents involving death, injury, or property damage, warranty claims, consumer

8   complaints, and field reports concerning failure, malfunction, lack of durability or

9   other performance issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b)

10   retain for five years all underlying records on which the early warning reports are

11   based and all records containing information on malfunctions that may be related to

12   motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate

13   remedial action if it knows or should know that a safety defect exists – including

14   notifying NHTSA and consumers and ordering a recall if necessary. See 49 U.S.C. §

15   30118(c); 49 C.F.R. § 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

16      764.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by

17   Old GM, are the clear intended beneficiaries of New GM's agreement to comply

18   with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

19   benefit of having a manufacturer responsible for monitoring the safety of their Old

20   GM vehicles and making certain that any known safety defects would be promptly

21   remedied.

22      765.   New GM breached its covenant to comply with the TREAD Act with

23   respect to the class vehicles, as it failed to take action to remediate the defect at any

24   time, up to the present.

25      766.   Although the Sale Order which consummated New GM's purchase of

26   Old GM purported to give New GM immunity from claims concerning vehicles or

27   parts made by Old GM, the bankruptcy court recently ruled that provision to be

28   unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

**KNAPP,
PETERSEN
& CLARKE**

-135-

conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

767.   Plaintiffs and the Class members were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the defect in class vehicles, the value of Old GM class vehicles has diminished in an amount to be determined at trial.

**COUNT LI**

**UNJUST ENRICHMENT**

768.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

769.   This claim is brought on behalf of members of the New Jersey Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "New Jersey Unjust Enrichment Class").

770.   New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

771.   New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

772.   With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM

KNAPP,
PETERSEN
& CLARKE

-136-

2411127.1  08000/01006

1    benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

2    from its statements about the success of New GM.

3        773.   Thus, all New Jersey Unjust Enrichment Class Members conferred a

4    benefit on New GM.

5        774.   It is inequitable for New GM to retain these benefits.

6        775.   Plaintiffs were not aware about the true facts about the class vehicles,

7    and did not benefit from GM's conduct.

8        776.   New GM knowingly accepted the benefits of its unjust conduct.

9        777.   As a result of New GM's conduct, the amount of its unjust enrichment

10   should be disgorged, in an amount according to proof.

11   **Ohio**

12                      **COUNT LII**

13   **VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT**

14        **(OHIO REV. CODE ANN. § 1345.01, et seq.)**

15        778.   Plaintiffs reallege and incorporate by reference all paragraphs as though

16   fully set forth herein.

17        779.   This claim is brought only on behalf of Nationwide Class Members who

18   are Ohio residents (the "Ohio Class").

19        780.   New GM is a "supplier" as that term is defined in OHIO REV. CODE §

20   1345.01(C).

21        781.   Plaintiffs and the Ohio Class are "consumers" as that term is defined in

22   OHIO REV. CODE § 1345.01(D), and their purchases and leases of the class

23   vehicles are "consumer transactions" within the meaning of OHIO REV. CODE §

24   1345.01(A).

25        782.   The Ohio Consumer Sales Practices Act ("Ohio CSPA"), OHIO REV.

26   CODE § 1345.02, broadly prohibits unfair or deceptive acts or practices in

27   connection with a consumer transaction. Specifically, and without limitation of the

28   broad prohibition, the Act prohibits suppliers from representing (i) that goods have

KNAPP,
PETERSEN
& CLARKE

-137-

1  characteristics or uses or benefits which they do not have; (ii) that their goods are of

2  a particular quality or grade they are not; and (iii) the subject of a consumer

3  transaction has been supplied in accordance with a previous representation, if it has

4  not. *Id*. New GM's conduct as alleged above and below constitutes unfair and/or

5  deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02.

6      783.   By systematically devaluing safety and concealing defects in the class

7  vehicles, New GM engaged in deceptive business practices prohibited by the Ohio

8  CSPA, including: representing that class vehicles have characteristics, uses, benefits,

9  and qualities which they do not have; representing that class vehicles are of a

10  particular standard, quality, and grade when they are not; representing that the

11  subject of a transaction involving class vehicles has been supplied in accordance with

12  a previous representation when it has not; and engaging in other unfair or deceptive

13  acts or practices.

14      784.   New GM's actions as set forth above occurred in the conduct of trade or

15  commerce.

16      785.   In the course of its business, New GM systematically devalued safety

17  and concealed defects in the class vehicles as described herein and otherwise

18  engaged in activities with a tendency or capacity to deceive. New GM also engaged

19  in unlawful trade practices by employing deception, deceptive acts or practices,

20  fraud, misrepresentations, or concealment, suppression or omission of any material

21  fact with intent that others rely upon such concealment, suppression or omission, in

22  connection with the sale of class vehicles.

23      786.   From the date of its inception on July 11, 2009, New GM knew of many

24  serious defects affecting many models and years of the class vehicles, because of (i)

25  the knowledge of Old GM personnel who remained at New GM; (ii) continuous

26  reports, investigations, and notifications from regulatory authorities; and (iii)

27  ongoing performance of New GM's TREAD Act obligations.  New GM became

28  aware of other serious defects and systemic safety issues years ago, but concealed all

KNAPP,
PETERSEN
& CLARKE

-138-

2411127.1  08000/01006

1  of that information.

2      787.   New GM was also aware that it valued cost-cutting over safety, selected

3  parts from the cheapest supplier regardless of quality, and actively discouraged

4  employees from finding and flagging known safety defects, and that this approach

5  would necessarily cause the existence of more defects in the vehicles it designed and

6  manufactured and the failure to disclose and remedy defects in all class vehicles.

7  New GM concealed this information as well.

8      788.   By failing to disclose and by actively concealing the many defects in the

9  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

10  presenting itself as a reputable manufacturer that valued safety and stood behind its

11  vehicles after they were sold, New GM engaged in unfair and deceptive business

12  practices in violation of the Ohio CSPA.

13      789.   In the course of New GM's business, it willfully failed to disclose and

14  actively concealed the dangerous risk posed by the defects discussed above.  New

15  GM compounded the deception by repeatedly asserting that the class vehicles were

16  safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

17  that valued safety and stood behind its vehicles once they are on the road.

18      790.   New GM's unfair or deceptive acts or practices were likely to and did in

19  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

20  reliability of class vehicles, the quality of the GM brand, the devaluing of safety at

21  New GM, and the true value of the class vehicles.

22      791.   New GM intentionally and knowingly misrepresented material facts

23  regarding the class vehicles with an intent to mislead Plaintiffs and the Ohio Class.

24      792.   New GM knew or should have known that its conduct violated the Ohio

25  CSPA.

26      793.   As alleged above, New GM made material statements about the safety

27  and reliability of the class vehicles and the GM brand that were either false or

28  misleading.

KNAPP,
PETERSEN
& CLARKE

-139-

794. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a) Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b) Intentionally concealed the foregoing from Plaintiffs; and/or

(c) Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

795. Because New GM fraudulently concealed the many defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

796. New GM's systemic devaluation of safety and its concealment of defects in the class vehicles were material to Plaintiffs and the Ohio Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

797. Plaintiffs and the Ohio Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

798. Regardless of time of purchase or lease, no Plaintiffs would have

KNAPP,
PETERSEN
& CLARKE

-140-

2411127.1  08000/01006

1   maintained and continued to drive their vehicles had they been aware of New GM's

2   misconduct. By contractually assuming TREAD Act responsibilities with respect to

3   Old GM class vehicles, New GM effectively assumed the role of manufacturer of

4   those vehicles because the TREAD Act on its face only applies to vehicle

5   manufacturers. 49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM

6   vehicle owners to refrain from unfair and deceptive acts or practices under the Ohio

7   CSPA.  And, in any event, all class vehicle owners suffered ascertainable loss in the

8   form of the diminished value of their vehicles as a result of New GM's deceptive and

9   unfair acts and practices that occurred in the course of New GM's business.

10      799.   As a direct and proximate result of New GM's violations of the Ohio

11   CSPA, Plaintiffs and the Ohio Class have suffered injury-in-fact and/or actual

12   damage.

13      800.   Ohio Class Members seek punitive damages against New GM because

14   New GM's conduct was egregious.  New GM misrepresented the safety and

15   reliability of class vehicles, concealed myriad defects in the class vehicles and the

16   systemic safety issues plaguing New GM, deceived Class Members on life-or-death

17   matters, and concealed material facts that only New GM knew, all to avoid the

18   expense and public relations nightmare of correcting the serious flaw in its culture

19   and in the class vehicles.  New GM's egregious conduct warrants punitive damages.

20      801.   Plaintiffs and the Ohio Class specifically do not allege herein a claim for

21   violation of OHIO REV. CODE § 1345.72.

22      802.   New GM was on notice pursuant to OHIO REV. CODE § 1345.09(B)

23   that its actions constituted unfair, deceptive, and unconscionable practices by, for

24   example, *Mason v. Mercedes-Benz USA, LLC*, 2005 Ohio App. LEXIS 3911, at *33

25   (S.D. Ohio Aug. 18, 2005), and *Lilly v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS

26   22114, at *17-18 (S.D. Ohio Apr. 21, 2006).  Further, New GM's conduct as alleged

27   above constitutes an act or practice previously declared to be deceptive or

28   unconscionable by rule adopted under division (B)(2) of section 1345.05 and

KNAPP,
PETERSEN
& CLARKE

-141-

2411127.1  08000/01006

previously determined by Ohio courts to violate Ohio's Consumer Sales Practices

Act and was committed after the decisions containing these determinations were

made available for public inspection under division (A)(3) of O.R.C. § 1345.05. The

applicable rule and Ohio court opinions include, but are not limited to: OAC 109:4-

3-16; *Mason v. Mercedes-Benz USA, LLC*, 2005 Ohio 4296 (Ohio Ct. App. 2005);

*Khouri v. Lewis*, Cuyahoga Common Pleas No. 342098 (2001); State ex rel.

*Montgomery v. Canterbury*, Franklin App. No. 98CVH054085 (2000); and

*Fribourg v. Vandemark* (July 26, 1999), Clermont App. No CA99-02-017,

unreported (PIF # 10001874).

803.   As a result of the foregoing wrongful conduct of New GM, Plaintiffs

and the Ohio Class have been damaged in an amount to be proven at trial, and seek

all just and proper remedies, including, but not limited to, actual and statutory

damages, an order enjoining New GM's deceptive and unfair conduct, treble

damages, court costs and reasonable attorneys' fees, pursuant to OHIO REV. CODE

§ 1345.09, et seq.

## COUNT LIII
## FRAUD BY CONCEALMENT

804.   Plaintiffs reallege and incorporate by reference all paragraphs as though

fully set forth herein.

805.   This claim is brought on behalf of Nationwide Class Members who are

Ohio residents (the "Ohio Class").

806.   New GM concealed and suppressed material facts concerning the

quality of the class vehicles.

807.   New GM concealed and suppressed material facts concerning the

culture of New GM – a culture characterized by an emphasis on cost-cutting, the

studious avoidance of quality issues, and a shoddy design process.

808.   New GM concealed and suppressed material facts concerning the

defects in the class vehicles, and that it valued cost-cutting over quality and took

KNAPP,
PETERSEN
& CLARKE

-142-

2411127.1  08000/01006

1  steps to ensure that its employees did not reveal known defects to regulators or

2  consumers.

3      809.   New GM did so in order to boost confidence in its vehicles and falsely

4  assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

5  that New GM was a reputable manufacturer that stands behind its vehicles after they

6  are sold and that its vehicles are safe and reliable.  The false representations were

7  material to consumers, both because they concerned the quality and safety of the

8  class vehicles and because the representations played a significant role in the value of

9  the vehicles.

10      810.   New GM had a duty to disclose the defects in the class vehicles because

11  they were known and/or accessible only to New GM, were in fact known to New

12  GM as of the time of its creation in 2009 and at every point thereafter, New GM had

13  superior knowledge and access to the facts, and New GM knew the facts were not

14  known to or reasonably discoverable by Plaintiffs and the Ohio Class. New GM also

15  had a duty to disclose because it made many general affirmative representations

16  about the safety, quality, and lack of defects in its vehicles, as set forth above, which

17  were misleading, deceptive and incomplete without the disclosure of the additional

18  facts set forth above regarding defects in the class vehicles. Having volunteered to

19  provide information to Plaintiffs, GM had the duty to disclose not just the partial

20  truth, but the entire truth.  These omitted and concealed facts were material because

21  they directly impact the value of the class vehicles purchased or leased by Plaintiffs

22  and the Ohio Class.

23      811.   New GM actively concealed and/or suppressed these material facts, in

24  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

25  image and cost New GM money, and it did so at the expense of Plaintiffs and the

26  Ohio Class.

27      812.   On information and belief, New GM has still not made full and adequate

28  disclosure and continues to defraud Plaintiffs and the Ohio Class and conceal

**KNAPP,
PETERSEN
& CLARKE**

-143-

1 | material information regarding defects that exist in the class vehicles.

2 |     813.  Plaintiffs and the Ohio Class were unaware of these omitted material

3 | facts and would not have acted as they did if they had known of the concealed and/or

4 | suppressed facts, in that they would not have purchased cars manufactured by New

5 | GM; and/or they would not have purchased cars manufactured by Old GM in the

6 | time after New GM had come into existence and had fraudulently opted to conceal,

7 | and to misrepresent, the true facts about the vehicles; and/or would not have

8 | continued to drive their vehicles or would have taken other affirmative steps.

9 | Plaintiffs' and the Ohio Class's actions were justified. New GM was in exclusive

10 | control of the material facts and such facts were not known to the public, Plaintiffs,

11 | or the Ohio Class.

12 |     814.  Because of the concealment and/or suppression of the facts, Plaintiffs

13 | and the Ohio Class sustained damage because they own vehicles that diminished in

14 | value as a result of New GM's concealment of, and failure to timely disclose, the

15 | defects in the class vehicles and the quality issues engendered by New GM's

16 | corporate policies.  Had they been aware of the defects that existed in the class

17 | vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

18 | New GM came into existence either would have paid less for their vehicles or would

19 | not have purchased or leased them at all; and no Plaintiffs regardless of time of

20 | purchase or lease would have maintained their vehicles.

21 |     815.  The value of all Ohio Class Members' vehicles has diminished as a

22 | result of New GM's fraudulent concealment of the many defects which have

23 | tarnished the Corvette brand and made any reasonable consumer reluctant to

24 | purchase any of the class vehicles, let alone pay what otherwise would have been fair

25 | market value for the vehicles.

26 |     816.  Accordingly, New GM is liable to the Ohio Class for damages in an

27 | amount to be proven at trial.

28 |     817.  New GM's acts were done maliciously, oppressively, deliberately, with

KNAPP,
PETERSEN
& CLARKE

-144-

1    intent to defraud, and in reckless disregard of Plaintiffs' and the Ohio Class's rights

2    and well-being to enrich New GM. New GM's conduct warrants an assessment of

3    punitive damages in an amount sufficient to deter such conduct in the future, which

4    amount is to be determined according to proof.

5                              **COUNT LIV**

6                      **IMPLIED WARRANTY IN TORT**

7           818.   Plaintiffs reallege and incorporate by reference all paragraphs as though

8    fully set forth herein.

9           819.   Plaintiffs bring this claim only on behalf of the Ohio Class members.

10          820.   The class vehicles sold or leased by New GM on or after July 11, 2009

11   contained a design defect, namely, a defective engine subject to premature wear and

12   catastrophic failure.

13          821.   The design, manufacturing, and/or assembly defects existed at the time

14   the class vehicles containing the defective engine left the possession or control of

15   New GM.

16          822.   Based upon the dangerous product defects, New GM failed to meet the

17   expectations of a reasonable consumer. The class vehicles failed their ordinary,

18   intended use because the engine is subject to premature unusual wear and

19   catastrophic failure.

20          823.   The design defects in the vehicles were the direct and proximate cause

21   of economic damages to Plaintiffs, as well as damages incurred or to be incurred by

22   each of the Ohio Class members.

23                             **COUNT LV**

24                   **THIRD-PARTY BENEFICIARY CLAIM**

25          824.   Plaintiffs reallege and incorporate by reference all paragraphs as though

26   fully set forth herein.

27          825.   This claim is brought only on behalf of Class members who are Ohio

28   residents (the "Ohio Class").

KNAPP,
PETERSEN
& CLARKE

-145-

826.   In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

827.   With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

828.   But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

829.   Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents involving property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues.  See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety. See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows or should know that a safety defect exists – including notifying NHTSA and consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

KNAPP,
PETERSEN
& CLARKE

-146-

2411127.1  08000/01006

573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

830.   Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known defects would be promptly remedied.

831.   Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

832.   New GM breached its covenant to comply with the TREAD Act with respect to the class vehicles, as it failed to take action to remediate the defects at any time, up to the present.

833.   Plaintiffs and the Ohio Class were damaged as a result of New GM's breach.  Because of New GM's failure to timely remedy the defect in the class vehicles, the value of Old GM class vehicles has diminished in an amount to be determined at trial.

## COUNT LVI

## UNJUST ENRICHMENT

834.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

835.   This claim is brought on behalf of members of the Ohio Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

KNAPP,
PETERSEN
& CLARKE

-147-

2411127.1  08000/01006

1  after New GM came into existence, and who purchased or leased class vehicles in the

2  time period before New GM came into existence, which cars were still on the road

3  after New GM came into existence (the "Ohio Unjust Enrichment Class").

4       836.   New GM has received and retained a benefit from the Plaintiffs and

5  inequity has resulted.

6       837.   New GM has benefitted from selling and leasing defective cars,

7  including Certified Pre-Owned cars, whose value was artificially inflated by New

8  GM's concealment of defect issues that plagued class vehicles for more than they

9  were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

10  pay other costs.

11       838.   With respect to the class vehicles purchased before New GM came into

12  existence that were still on the road after New GM came into existence and as to

13  which New GM had unjustly and unlawfully determined not to recall, New GM

14  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

15  from its statements about the success of New GM.

16       839.   Thus, all Ohio Unjust Enrichment Class Members conferred a benefit on

17  New GM.

18       840.   It is inequitable for New GM to retain these benefits.

19       841.   Plaintiffs were not aware about the true facts about class vehicles, and

20  did not benefit from GM's conduct.

21       842.   New GM knowingly accepted the benefits of its unjust conduct.

22  As a result of New GM's conduct, the amount of its unjust enrichment should be

23  disgorged, in an amount according to proof.

24  ////

25  ////

26  ////

27  ////

28  ////

**KNAPP,**
**PETERSEN**
**& CLARKE**

-148-

**Pennsylvania**

## COUNT LVII

### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### (73 P.S. § 201-1, et seq.)

843. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

844. This claim is brought only on behalf of Nationwide Class Members who are Pennsylvania residents (the "Pennsylvania Class").

845. Plaintiffs purchased or leased their class vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

846. All of the acts complained of herein were perpetrated by New GM in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

847. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have ... characteristics, .... Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade ... if they are of another;:" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

848. New GM engaged in unlawful trade practices, including representing that class vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that class vehicles are of a particular standard and quality when they are not; advertising class vehicles with the intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

849. In the course of its business, New GM systematically devalued safety

KNAPP,
PETERSEN
& CLARKE

-149-

2411127.1  08000/01006

1  and concealed defects in the class vehicles as described herein and otherwise

2  engaged in activities with a tendency or capacity to deceive. New GM also engaged

3  in unlawful trade practices by employing deception, deceptive acts or practices,

4  fraud, misrepresentations, or concealment, suppression or omission of any material

5  fact with intent that others rely upon such concealment, suppression or omission, in

6  connection with the sale of class vehicles.

7  850. From the date of its inception on July 11, 2009, New GM knew of many

8  serious defects affecting many models and years of class vehicles, because of (i) the

9  knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

10  investigations, and notifications from regulatory authorities; and (iii) ongoing

11  performance of New GM's TREAD Act obligations. New GM became aware of

12  other serious defects and systemic safety issues years ago, but concealed all of that

13  information.

14  851. New GM was also aware that it valued cost-cutting over safety, selected

15  parts from the cheapest supplier regardless of quality, and actively discouraged

16  employees from finding and flagging known safety defects, and that this approach

17  would necessarily cause the existence of more defects in the vehicles it designed and

18  manufactured and the failure to disclose and remedy defects in all class vehicles.

19  New GM concealed this information as well.

20  852. By failing to disclose and by actively concealing the many defects in the

21  class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

22  presenting itself as a reputable manufacturer that valued safety and stood behind its

23  vehicles after they were sold, New GM engaged in unfair and deceptive business

24  practices in violation of the Pennsylvania CPL.

25  853. In the course of New GM's business, it willfully failed to disclose and

26  actively concealed the dangerous risk posed by the defects discussed above. New

27  GM compounded the deception by repeatedly asserting that the class vehicles were

28  safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

**KNAPP,
PETERSEN
& CLARKE**

-150-

1  that valued safety and stood behind its vehicles once they are on the road.

2      854.   New GM's unfair or deceptive acts or practices were likely to and did in

3  fact deceive reasonable consumers, including Plaintiffs, about the true safety and

4  reliability of the class vehicles, the quality of the GM brand, the devaluing of safety

5  at New GM, and the true value of the class vehicles.

6      855.   New GM intentionally and knowingly misrepresented material facts

7  regarding the class vehicles with an intent to mislead Plaintiffs and the Pennsylvania

8  Class.

9      856.   New GM knew or should have known that its conduct violated the

10  Pennsylvania CPL.

11     857.   As alleged above, New GM made material statements about the safety

12  and reliability of the class vehicles and the GM brand that were either false or

13  misleading.

14     858.   New GM owed Plaintiffs a duty to disclose the true safety and reliability

15  of the class vehicles and the devaluing of safety at New GM, because New GM:

16          (a)    Possessed exclusive knowledge that it valued cost-cutting over

17  safety, selected parts from the cheapest supplier regardless of quality, and actively

18  discouraged employees from finding and flagging known safety defects, and that this

19  approach would necessarily cause the existence of more defects in the vehicles it

20  designed and manufactured;

21          (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

22          (c)    Made incomplete representations about the safety and reliability

23  of the class vehicles generally, and the valve guide defects in particular, while

24  purposefully withholding material facts from Plaintiffs that contradicted these

25  representations.

26     859.   Because New GM fraudulently concealed the defects in the class

27  vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma

28  attached to those vehicles by New GM's conduct, they are now worth significantly

KNAPP,
PETERSEN
& CLARKE

-151-

1 less than they otherwise would be.

2     860. New GM's systemic devaluation of safety and its concealment of the

3 defects in the class vehicles were material to Plaintiffs and the Pennsylvania Class.

4 A vehicle made by a reputable manufacturer of vehicles is worth more than an

5 otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

6 conceals defects rather than promptly remedies them.

7     861. Plaintiffs and the Pennsylvania Class suffered ascertainable loss caused

8 by New GM's misrepresentations and its concealment of and failure to disclose

9 material information. Plaintiffs who purchased class vehicles after the date of New

10 GM's inception either would have paid less for their vehicles or would not have

11 purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain

12 as a result of New GM's misconduct.

13     862. Regardless of time of purchase or lease, no Plaintiffs would have

14 maintained and continued to drive their vehicles had they been aware of New GM's

15 misconduct. By contractually assuming TREAD Act responsibilities with respect to

16 Old GM class vehicles, New GM effectively assumed the role of manufacturer of

17 those vehicles because the TREAD Act on its face only applies to vehicle

18 manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

19 vehicle owners to refrain from unfair and deceptive acts or practices under the

20 Pennsylvania CPL. And, in any event, all class vehicle owners suffered ascertainable

21 loss in the form of the diminished value of their vehicles as a result of New GM's

22 deceptive and unfair acts and practices that occurred in the course of New GM's

23 business.

24     863. As a direct and proximate result of New GM's violations of the

25 Pennsylvania CPL, Plaintiffs and the Pennsylvania Class have suffered injury-in-fact

26 and/or actual damage.

27     864. New GM is liable to Plaintiffs and the Pennsylvania Class for treble

28 their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73

**KNAPP,
PETERSEN
& CLARKE**

-152-

P.S. § 201-9.2(a). Plaintiffs and the Pennsylvania Class are also entitled to an award of punitive damages given that New GM's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

**COUNT LVIII**

**FRAUD BY CONCEALMENT**

865.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

866.   This claim is brought on behalf of Nationwide Class Members who are Pennsylvania residents (the "Pennsylvania Class").

867.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

868.   New GM concealed and suppressed material facts concerning the culture of New GM - a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

869.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

870.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable.  The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

871.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had

KNAPP,
PETERSEN
& CLARKE

1   superior knowledge and access to the facts, and New GM knew the facts were not

2   known to or reasonably discoverable by Plaintiffs and the Pennsylvania Class. New

3   GM also had a duty to disclose because it made many general affirmative

4   representations about the safety, quality, and lack of defects in its vehicles, as set

5   forth above, which were misleading, deceptive and incomplete without the disclosure

6   of the additional facts set forth above regarding defects in the class vehicles. Having

7   volunteered to provide information to Plaintiffs, GM had the duty to disclose not just

8   the partial truth, but the entire truth. These omitted and concealed facts were material

9   because they directly impact the value of the class vehicles purchased or leased by

10  Plaintiffs and the Pennsylvania Class.

11      872.   New GM actively concealed and/or suppressed these material facts, in

12  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

13  image and cost New GM money, and it did so at the expense of Plaintiffs and the

14  Pennsylvania Class.

15      873.   On information and belief, New GM has still not made full and adequate

16  disclosure and continues to defraud Plaintiffs and the Pennsylvania Class and conceal

17  material information regarding defects that exist in the class vehicles.

18      874.   Plaintiffs and the Pennsylvania Class were unaware of these omitted

19  material facts and would not have acted as they did if they had known of the

20  concealed and/or suppressed facts, in that they would not have purchased cars

21  manufactured by New GM; and/or they would not have purchased cars manufactured

22  by Old GM in the time after New GM had come into existence and had fraudulently

23  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

24  not have continued to drive their vehicles or would have taken other affirmative

25  steps. Plaintiffs' and the Pennsylvania Class's actions were justified. New GM was

26  in exclusive control of the material facts and such facts were not known to the public,

27  Plaintiffs, or the Pennsylvania Class.

28      875.   Because of the concealment and/or suppression of the facts, Plaintiffs

**KNAPP, PETERSEN & CLARKE**

-154-

1  and the Pennsylvania Class sustained damage because they own vehicles that

2  diminished in value as a result of New GM's concealment of, and failure to timely

3  disclose, the defects in the class vehicles and the quality issues engendered by New

4  GM's corporate policies. Had they been aware of the defects that existed in the class

5  vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

6  New GM came into existence either would have paid less for their vehicles or would

7  not have purchased or leased them at all; and no Plaintiffs regardless of time of

8  purchase or lease would have maintained their vehicles.

9  876.  The value of all Pennsylvania Class Members' vehicles has diminished

10  as a result of New GM's fraudulent concealment of the defects which have tarnished

11  the Corvette brand and made any reasonable consumer reluctant to purchase any of

12  the class vehicles, let alone pay what otherwise would have been fair market value

13  for the vehicles.

14  877.  Accordingly, New GM is liable to the Pennsylvania Class for damages

15  in an amount to be proven at trial.

16  878.  New GM's acts were done maliciously, oppressively, deliberately, with

17  intent to defraud, and in reckless disregard of Plaintiffs' and the Pennsylvania Class's

18  rights and well-being to enrich New GM. New GM's conduct warrants an assessment

19  of punitive damages in an amount sufficient to deter such conduct in the future,

20  which amount is to be determined according to proof.

21  **COUNT LIX**

22  **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

23  **(13 PA. CONS. STAT. ANN. § 2314)**

24  879.  Plaintiffs reallege and incorporate by reference all paragraphs as though

25  fully set forth herein.

26  880.  This claim is brought only on behalf of the Pennsylvania Class.

27  881.  New GM is s a merchant with respect to motor vehicles.

28  882.  A warranty that the class vehicles were in merchantable condition was

KNAPP,
PETERSEN
& CLARKE

-155-

implied by law when New GM sold or leased the class vehicles to Plaintiffs and the
Pennsylvania Class on or after July 11, 2009.

883.   These vehicles, when sold and at all times thereafter, were not in
merchantable condition and are not fit for the ordinary purpose for which cars are
used.  Specifically, the class vehicles are inherently defective in that there are defects
in the engine which result in premature unusual wear and catastrophic failure.

884.   New GM was provided notice of these issues by numerous complaints
filed against it, by its own internal investigations, and by numerous individual letters
and communications sent by Plaintiffs and the Pennsylvania Class before or within a
reasonable amount of time after New GM issued the recall and the allegations of
vehicle defects became public.

885.   As a direct and proximate result of New GM's breach of the warranties
of merchantability, Plaintiffs and the Pennsylvania Class members have been
damaged in an amount to be proven at trial.

## COUNT LX

## THIRD-PARTY BENEFICIARY CLAIM

886.   Plaintiffs reallege and incorporate by reference all paragraphs as though
fully set forth herein.

887.   This claim is brought only on behalf of Class members who are
Pennsylvania residents (the "Pennsylvania Class").

888.   In the Sales Agreement through which New GM acquired substantially
all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the
> certification, reporting and recall requirements of the National Traffic
> and Motor Vehicle and Motor Vehicle Safety Act, the Transportation
> Recall Enhancement, Accountability and Documentation Act, the Clean
> Air Act, the California Health and Safety Code and similar Laws, in
> each case, to the extent applicable in respect of vehicles and vehicle

KNAPP,
PETERSEN
& CLARKE

-156-

1      parts manufactured or distributed by [Old GM].

2      889. With the exception of the portion of the agreement that purports to

3 immunize New GM from its own independent misconduct with respect to cars and

4 parts made by Old GM, the Sales Agreement is a valid and binding contract.

5      890. But for New GM's covenant to comply with the TREAD Act with

6 respect to cars and parts made by Old GM, the TREAD Act would have no

7 application to New GM with respect to those cars and parts. That is because the

8 TREAD Act on its face imposes reporting and recall obligations only on the

9 "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

10      891. Because New GM agreed to comply with the TREAD Act with respect

11 to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

12 make quarterly submissions to NHTSA of "early warning reporting" data, including

13 incidents involving property damage, warranty claims, consumer complaints, and

14 field reports concerning failure, malfunction, lack of durability or other performance

15 issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

16 underlying records on which the early warning reports are based and all records

17 containing information on malfunctions that may be related to motor vehicle safety.

18 See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

19 or should know that a safety defect exists - including notifying NHTSA and

20 consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

21 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

22      892. Plaintiffs, as owners and lessors of vehicles and parts manufactured by

23 Old GM, are the clear intended beneficiaries of New GM's agreement to comply

24 with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

25 benefit of having a manufacturer responsible for monitoring the safety of their Old

26 GM vehicles and making certain that any known defects would be promptly

27 remedied.

28      893. Although the Sale Order which consummated New GM's purchase of

KNAPP,
PETERSEN
& CLARKE

-157-

1 | Old GM purported to give New GM immunity from claims concerning vehicles or
2 | parts made by Old GM, the bankruptcy court recently ruled that provision to be
3 | unenforceable, and that New GM can be held liable for its own post-bankruptcy sale
4 | conduct with respect to cars and parts made by Old GM. Therefore, that provision of
5 | the Sale Order and related provisions of the Sale Agreement cannot be read to bar
6 | Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale
7 | breaches of the promise it made in the Sale Agreement.

8 |     894. New GM breached its covenant to comply with the TREAD Act with
9 | respect to the class vehicles, as it failed to take action to remediate the defects at any
10 | time, up to the present.

11 |     895. Plaintiffs and the Pennsylvania Class were damaged as a result of New
12 | GM's breach. Because of New GM's failure to timely remedy the defect in class
13 | vehicles, the value of Old GM class vehicles has diminished in an amount to be
14 | determined at trial.

### COUNT LXI

### UNJUST ENRICHMENT

17 |     896. Plaintiffs reallege and incorporate by reference all paragraphs as though
18 | fully set forth herein.

19 |     897. This claim is brought on behalf of members of the Pennsylvania Class
20 | who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time
21 | period after New GM came into existence, and who purchased or leased class
22 | vehicles in the time period before New GM came into existence, which cars were
23 | still on the road after New GM came into existence (the "Pennsylvania Unjust
24 | Enrichment Class").

25 |     898. New GM has received and retained a benefit from the Plaintiffs and
26 | inequity has resulted.

27 |     899. New GM has benefitted from selling and leasing defective cars,
28 | including Certified Pre-Owned cars, whose value was artificially inflated by New

KNAPP,
PETERSEN
& CLARKE

-158-

1  GM's concealment of defect issues that plagued class vehicles, for more than they

2  were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

3  pay other costs.

4       900.   With respect to the class vehicles purchased before New GM came into

5  existence that were still on the road after New GM came into existence and as to

6  which New GM had unjustly and unlawfully determined not to recall, New GM

7  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

8  from its statements about the success of New GM.

9       901.   Thus, all Pennsylvania Unjust Enrichment Class Members conferred a

10  benefit on New GM.

11       902.   It is inequitable for New GM to retain these benefits.

12       903.   Plaintiffs were not aware about the true facts about class vehicles, and

13  did not benefit from GM's conduct.

14       904.   New GM knowingly accepted the benefits of its unjust conduct.

15       905.   As a result of New GM's conduct, the amount of its unjust enrichment

16  should be disgorged, in an amount according to proof.

17  **South Dakota**

18  **COUNT LXII**

19  **VIOLATION OF THE SOUTH DAKOTA**

20  **DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW**

21  **(S.D. CODIFIED LAWS § 37-24-6)**

22       906.   Plaintiffs reallege and incorporate by reference all paragraphs as though

23  fully set forth herein.

24       907.   This claim is brought only on behalf of Nationwide Class Members who

25  are South Dakota residents (the "South Dakota Class").

26       908.   The South Dakota Deceptive Trade Practices and Consumer Protection

27  Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined

28  for relevant purposes to include "[k]nowingly and intentionally act, use, or employ

**KNAPP,
PETERSEN
& CLARKE**

-159-

1    any deceptive act or practice, fraud, false pretense, false promises, or

2    misrepresentation or to conceal, suppress, or omit any material fact in connection

3    with the sale or advertisement of any merchandise, regardless of whether any person

4    has in fact been misled, deceived, or damaged thereby [1" S.D. CODIFIED LAWS §

5    37-24-6(1). The conduct of New GM as set forth herein constitutes deceptive acts or

6    practices, fraud, false promises, misrepresentation, concealment, suppression and

7    omission of material facts in violation of S.D. Codified Laws § 37-24-6 and 37-24-

8    31, including, but not limited to, New GM's misrepresentations and omissions

9    regarding the safety and reliability of the class vehicles, and New GM's

10   misrepresentations concerning a host of other defects and safety issues.

11       909.   New GM's actions as set forth above occurred in the conduct of trade or

12   commerce.

13       910.   In the course of its business, New GM systematically devalued safety

14   and concealed defects in the class vehicles as described herein and otherwise

15   engaged in activities with a tendency or capacity to deceive. New GM also engaged

16   in unlawful trade practices by employing deception, deceptive acts or practices,

17   fraud, misrepresentations, or concealment, suppression or omission of any material

18   fact with intent that others rely upon such concealment, suppression or omission, in

19   connection with the sale of the class vehicles.

20       911.   From the date of its inception on July 11, 2009, New GM knew of many

21   defects affecting many models and years of the class vehicles, because of (i) the

22   knowledge of Old GM personnel who remained at New GM; (ii) continuous reports,

23   investigations, and notifications from regulatory authorities; and (iii) ongoing

24   performance of New GM's TREAD Act obligations.   New GM became aware of

25   other serious defects and systemic safety issues years ago, but concealed all of that

26   information.

27       912.   New GM was also aware that it valued cost-cutting over safety, selected

28   parts from the cheapest supplier regardless of quality, and actively discouraged

**KNAPP,
PETERSEN
& CLARKE**

-160-

1 employees from finding and flagging known safety defects, and that this approach

2 would necessarily cause the existence of more defects in the vehicles it designed and

3 manufactured and the failure to disclose and remedy defects in all class vehicles.

4 New GM concealed this information as well.

5     913. By failing to disclose and by actively concealing the many defects in the

6 class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by

7 presenting itself as a reputable manufacturer that valued safety and stood behind its

8 vehicles after they were sold, New GM engaged in unfair and deceptive business

9 practices in violation of the South Dakota CPL.

10     914. In the course of New GM's business, it willfully failed to disclose and

11 actively concealed the dangerous risk posed by the many defects. New GM

12 compounded the deception by repeatedly asserting that class vehicles were safe,

13 reliable, and of high quality, and by claiming to be a reputable manufacturer that

14 valued safety and stood behind its vehicles once they are on the road.

15     915. New GM's unfair or deceptive acts or practices were likely to and did in

16 fact deceive reasonable consumers, including Plaintiffs, about the true safety and

17 reliability of the class vehicles, the quality of the New GM brand, the devaluing of

18 safety at New GM, and the true value of the class vehicles.

19     916. New GM intentionally and knowingly misrepresented material facts

20 regarding the class vehicles with an intent to mislead Plaintiffs and the South Dakota

21 Class.

22     917. New GM knew or should have known that its conduct violated the

23 South Dakota CPL.

24     918. As alleged above, New GM made material statements about the safety

25 and reliability of the class vehicles and the GM brand that were either false or

26 misleading.

27     919. New GM owed Plaintiffs a duty to disclose the true safety and reliability

28 of the class vehicles and the devaluing of safety at New GM, because New GM:

**KNAPP,
PETERSEN
& CLARKE**

-161-

2411127.1  08000/01006

(a)     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)     Intentionally concealed the foregoing from Plaintiffs; and/or

(c)     Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

920.   Because New GM fraudulently concealed the many defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

921.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the South Dakota Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedying them.

922.   Plaintiffs and the South Dakota Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's conduct.

923.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By contractually assuming TREAD Act responsibilities with respect to

**KNAPP,
PETERSEN
& CLARKE**

-162-

2411127.1  08000/01006

1   Old GM vehicles, New GM effectively assumed the role of manufacturer of those

2   vehicles because the TREAD Act on its face only applies to vehicle manufacturers.

3   49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to

4   refrain from unfair and deceptive acts or practices under the South Dakota CPL.

5   And, in any event, all class vehicle owners suffered ascertainable loss in the form of

6   the diminished value of their vehicles as a result of New GM's deceptive and unfair

7   acts and practices made in the course of New GM's business.

8       924.   New GM's violations present a continuing risk to Plaintiffs as well as to

9   the general public. New GM's unlawful acts and practices complained of herein

10  affect the public interest.

11      925.   As a direct and proximate result of New GM's violations of the South

12  Dakota CPL, Plaintiffs and the South Dakota Class have suffered injury-in-fact

13  and/or actual damage.

14      926.   Under S.D. CODIFIED LAWS § 37-24-31, Plaintiffs and the South

15  Dakota Class are entitled to a recovery of their actual damages suffered as a result of

16  New GM's acts and practices.

17                          **COUNT LXIII**

18                    **FRAUD BY CONCEALMENT**

19      927.   Plaintiffs reallege and incorporate by reference all paragraphs as though

20  fully set forth herein.

21      928.   This claim is brought on behalf of Nationwide Class Members who are

22  South Dakota residents (the "South Dakota Class").

23      929.   New GM concealed and suppressed material facts concerning the

24  quality of its vehicles and the GM brand.

25      930.   New GM concealed and suppressed material facts concerning the

26  culture of New GM — a culture characterized by an emphasis on cost-cutting, the

27  studious avoidance of safety issues, and a shoddy design process.

28      931.   New GM concealed and suppressed material facts concerning the many

KNAPP,
PETERSEN
& CLARKE

-163-

1  serious defects plaguing the class vehicles, and that it valued cost-cutting over safety

2  and took steps to ensure that its employees did not reveal known safety defects to

3  regulators or consumers.

4       932.   New GM did so in order to boost confidence in its vehicles and falsely

5  assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

6  that New GM was a reputable manufacturer that stands behind its vehicles after they

7  are sold and that its vehicles are safe and reliable. The false representations were

8  material to consumers, both because they concerned the quality and safety of the

9  class vehicles and because the representations played a significant role in the value of

10  the vehicles.

11       933.   New GM had a duty to disclose the many defects in the class vehicles

12  because they were known and/or accessible only to New GM, were in fact known to

13  New GM as of the time of its creation in 2009 and at every point thereafter, New GM

14  had superior knowledge and access to the facts, and New GM knew the facts were

15  not known to or reasonably discoverable by Plaintiffs and the South Dakota Class.

16  New GM also had a duty to disclose because it made many general affirmative

17  representations about the safety, quality, and lack of defects in its vehicles, as set

18  forth above, which were misleading, deceptive and incomplete without the disclosure

19  of the additional facts set forth above regarding defects in the class vehicles. Having

20  volunteered to provide information to Plaintiffs, GM had the duty to disclose not just

21  the partial truth, but the entire truth. These omitted and concealed facts were material

22  because they directly impact the value of the class vehicles purchased or leased by

23  Plaintiffs and the South Dakota Class.  Whether a manufacturer's products are safe

24  and reliable, and whether that manufacturer stands behind its products, are material

25  concerns to a consumer.

26       934.   New GM actively concealed and/or suppressed these material facts, in

27  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

28  image and cost New GM money, and it did so at the expense of Plaintiffs and the

KNAPP,
PETERSEN
& CLARKE

-164-

2411127.1  08000/01006

1   South Dakota Class.

2       935.   On information and belief, New GM has still not made full and adequate

3   disclosure and continues to defraud Plaintiffs and the South Dakota Class and

4   conceal material information regarding defects that exist in the class vehicles.

5       936.   Plaintiffs and the South Dakota Class were unaware of these omitted

6   material facts and would not have acted as they did if they had known of the

7   concealed and/or suppressed facts, in that they would not have purchased cars

8   manufactured by New GM; and/or they would not have purchased cars manufactured

9   by Old GM in the time after New GM had come into existence and had fraudulently

10  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

11  not have continued to drive their vehicles or would have taken other affirmative

12  steps. Plaintiffs' and the South Dakota Class's actions were justified. New GM was

13  in exclusive control of the material facts and such facts were not known to the public,

14  Plaintiffs, or the South Dakota Class.

15      937.   Because of the concealment and/or suppression of the facts, Plaintiffs

16  and the South Dakota Class sustained damage because they own vehicles that

17  diminished in value as a result of New GM's concealment of, and failure to timely

18  disclose, the serious defects in the class vehicles and the quality issues engendered

19  by New GM's corporate policies. Had they been aware of the defects that existed in

20  the class vehicles, Plaintiffs who purchased new or Certified Previously Owned

21  vehicles after New GM came into existence either would have paid less for their

22  vehicles or would not have purchased or leased them at all; and no Plaintiffs

23  regardless of time of purchase or lease would have maintained their vehicles.

24      938.   The value of all South Dakota Class Members' vehicles has diminished

25  as a result of New GM's fraudulent concealment of the defects which have greatly

26  tarnished the Corvette brand and made any reasonable consumer reluctant to

27  purchase any of the class vehicles, let alone pay what otherwise would have been fair

28  market value for the vehicles.

**KNAPP,
PETERSEN
& CLARKE**

-165-

939. Accordingly, New GM is liable to the South Dakota Class for damages in an amount to be proven at trial.

940. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the South Dakota Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT LXIV

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (S.D. CODIFIED LAWS § 57A-2-314)

941. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

942. This claim is brought only on behalf of South Dakota residents who are members of the Nationwide Class (the "South Dakota Class").

943. New GM was a merchant with respect to motor vehicles.

944. South Dakota law imposed a warranty that the class vehicles were in merchantable condition when Plaintiffs and the South Dakota Class purchased or leased their class vehicles from New GM on or after July 11, 2009.

945. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the class vehicles are inherently defective in that there are defects which cause inordinate and unusual early wear and failure of engines.

946. As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the South Dakota Class members have been damaged in an amount to be proven at trial.

////

///

////

**KNAPP, PETERSEN & CLARKE**

-166-

## COUNT LXV

## THIRD-PARTY BENEFICIARY CLAIM

947. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

948. This claim is brought only on behalf of the Class members who are South Dakota residents (the "South Dakota Class").

949. In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

950. With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

951. But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

952. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including incidents property damage, warranty claims, consumer complaints, and field reports concerning failure, malfunction, lack of durability or other performance issues. See

1    49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all underlying

2    records on which the early warning reports are based and all records containing

3    information on malfunctions that may be related to motor vehicle safety. See 49

4    C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows or

5    should know that a safety defect exists — including notifying NHTSA and

6    consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

7    573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

8       953.    Plaintiffs, as owners and lessors of vehicles and parts manufactured by

9    Old GM, are the clear intended beneficiaries of New GM's agreement to comply

10    with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

11    benefit of having a manufacturer responsible for monitoring the safety of their Old

12    GM vehicles and making certain that any known safety defects would be promptly

13    remedied.

14       954.    Although the Sale Order which consummated New GM's purchase of

15    Old GM purported to give New GM immunity from claims concerning vehicles or

16    parts made by Old GM, the bankruptcy court recently ruled that provision to be

17    unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

18    conduct with respect to cars and parts made by Old GM. Therefore, that provision of

19    the Sale Order and related provisions of the Sale Agreement cannot be read to bar

20    Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

21    breaches of the promise it made in the Sale Agreement.

22       955.    New GM breached its covenant to comply with the TREAD Act with

23    respect to the class vehicles, as it failed to take action to remediate the defects at any

24    time, up to the present.

25       956.    Plaintiffs and the South Dakota Class were damaged as a result of New

26    GM's breach. Because of New GM's failure to timely remedy the defects in class

27    vehicle, the value of Old GM class vehicles has diminished in an amount to be

28    determined at trial.

**KNAPP,
PETERSEN
& CLARKE**

-168-

# COUNT LXVI

## UNJUST ENRICHMENT

957.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

958.    This claim is brought on behalf of members of the South Dakota Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased vehicles in the time period before New GM came into existence, which cars were still on the road after New GM came into existence (the "South Dakota Unjust Enrichment Class").

959.    New GM has received and retained a benefit from the Plaintiffs and inequity has resulted.

960.    New GM has benefitted from selling and leasing defective cars, including Certified Pre-Owned cars, whose value was artificially inflated by New GM's concealment of defect issues that plagued the class vehicles, for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

961.    With respect to the class vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

962.    Thus, all South Dakota Unjust Enrichment Class Members conferred a benefit on New GM.

963.    It is inequitable for New GM to retain these benefits.

964.    Plaintiffs were not aware about the true facts about class vehicles, and did not benefit from GM's conduct.

965.    New GM knowingly accepted the benefits of its unjust conduct.

KNAPP,
PETERSEN
& CLARKE

966.   As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**Tennessee**

**COUNT LXVII**

**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT**

**(TENN. CODE ANN. § 47-18-101, et seq.)**

967.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

968.   This claim is brought only on behalf of Nationwide Class Members who are Tennessee residents (the "Tennessee Class").

969.   Plaintiffs and the Tennessee Class are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(2).

970.   New GM is a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

971.   New GM's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

972.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "Representing that goods or services have ... characteristics, [or] ... benefits ... that they do not have...;" "Representing that goods or services are of a particular standard, quality or grade... if they are of another;" and "Advertising goods or services with intent not to sell them as advertised." TENN. CODE ANN. § 47-18-104. New GM violated the Tennessee CPA by engaging in unfair or deceptive acts, including representing that class vehicles have characteristics or benefits that they did not have; representing that class vehicles are of a particular standard, quality, or grade when they are of another; and advertising class vehicles with intent not to sell them as advertised.

-170-

KNAPP,
PETERSEN
& CLARKE

973.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

974.   From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

975.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all the class vehicles. New GM concealed this information as well.

976.   By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Tennessee CPA.

977.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above.  New GM compounded the deception by repeatedly asserting that the class vehicles were

KNAPP,
PETERSEN
& CLARKE

-171-

safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

978. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

979. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with an intent to mislead Plaintiffs and the Tennessee Class.

980. New GM knew or should have known that its conduct violated the Tennessee CPA.

981. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

982. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)     Intentionally concealed the foregoing from Plaintiffs; and/or

(c)     Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

983. Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

**KNAPP, PETERSEN & CLARKE**

-172-

1   attached to those vehicles by New GM's conduct, they are now worth significantly

2   less than they otherwise would be.

3       984.   New GM's systemic devaluation of safety and its concealment of the

4   defects in the class vehicles were material to Plaintiffs and the Tennessee Class. A

5   vehicle made by a reputable manufacturer of vehicles is worth more than an

6   otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

7   conceals defects rather than promptly remedies them.

8       985.   Plaintiffs and the Tennessee Class suffered ascertainable loss caused by

9   New GM's misrepresentations and its concealment of and failure to disclose material

10   information. Plaintiffs who purchased class vehicles after the date of New GM's

11   inception either would have paid less for their vehicles or would not have purchased

12   or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

13   of New GM's misconduct.

14       986.   Regardless of time of purchase or lease, no Plaintiffs would have

15   maintained and continued to drive their vehicles had they been aware of New GM's

16   misconduct. By contractually assuming TREAD Act responsibilities with respect to

17   Old GM class vehicles, New GM effectively assumed the role of manufacturer of

18   those vehicles because the TREAD Act on its face only applies to vehicle

19   manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM

20   vehicle owners to refrain from unfair and deceptive acts or practices under the

21   Tennessee CPA.  And, in any event, all class vehicle owners suffered ascertainable

22   loss in the form of the diminished value of their vehicles as a result of New GM's

23   deceptive and unfair acts and practices that occurred in the course of New GM's

24   business.

25       987.   As a direct and proximate result of New GM's violations of the

26   Tennessee CPA, Plaintiffs and the Tennessee Class have suffered injury-in-fact

27   and/or actual damage.

28       988.   Pursuant to TENN. CODE § 47-18-109(a), Plaintiffs and the Tennessee

**KNAPP,
PETERSEN
& CLARKE**

-173-

2411127.1  08000/01006

1  Class seek monetary relief against New GM measured as actual damages in an

2  amount to be determined at trial, treble damages as a result of New GM's willful or

3  knowing violations, and any other just and proper relief available under the

4  Tennessee CPA.

5  ### COUNT LXVIII

6  ### FRAUD BY CONCEALMENT

7  989.   Plaintiffs reallege and incorporate by reference all paragraphs as though

8  fully set forth herein.

9  990.   This claim is brought on behalf of Nationwide Class Members who are

10  Tennessee residents (the "Tennessee Class").

11  991.   New GM concealed and suppressed material facts concerning the

12  quality of the class vehicles.

13  992.   New GM concealed and suppressed material facts concerning the

14  culture of New GM – a culture characterized by an emphasis on cost-cutting, the

15  studious avoidance of quality issues, and a shoddy design process.

16  993.   New GM concealed and suppressed material facts concerning the

17  defects in the class vehicles, and that it valued cost-cutting over quality and took

18  steps to ensure that its employees did not reveal known defects to regulators or

19  consumers.

20  994.   New GM did so in order to boost confidence in its vehicles and falsely

21  assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles

22  that New GM was a reputable manufacturer that stands behind its vehicles after they

23  are sold and that its vehicles are safe and reliable.  The false representations were

24  material to consumers, both because they concerned the quality and safety of the

25  class vehicles and because the representations played a significant role in the value of

26  the vehicles.

27  995.   New GM had a duty to disclose the defects in the class vehicles because

28  they were known and/or accessible only to New GM, were in fact known to New

KNAPP,
PETERSEN
& CLARKE

-174-

1   GM as of the time of its creation in 2009 and at every point thereafter, New GM had

2   superior knowledge and access to the facts, and New GM knew the facts were not

3   known to or reasonably discoverable by Plaintiffs and the Tennessee Class. New GM

4   also had a duty to disclose because it made many general affirmative representations

5   about the safety, quality, and lack of defects in its vehicles, as set forth above, which

6   were misleading, deceptive and incomplete without the disclosure of the additional

7   facts set forth above regarding defects in the class vehicles.  Having volunteered to

8   provide information to Plaintiffs, GM had the duty to disclose not just the partial

9   truth, but the entire truth. These omitted and concealed facts were material because

10  they directly impact the value of the class vehicles purchased or leased by Plaintiffs

11  and the Tennessee Class.

12          996.   New GM actively concealed and/or suppressed these material facts, in

13  whole or in part, to protect its profits and avoid recalls that would hurt the brand's

14  image and cost New GM money, and it did so at the expense of Plaintiffs and the

15  Tennessee Class.

16          997.   On information and belief, New GM has still not made full and adequate

17  disclosure and continues to defraud Plaintiffs and the Tennessee Class and conceal

18  material information regarding defects that exist in the class vehicles.

19          998.   Plaintiffs and the Tennessee Class were unaware of these omitted

20  material facts and would not have acted as they did if they had known of the

21  concealed and/or suppressed facts, in that they would not have purchased cars

22  manufactured by New GM; and/or they would not have purchased cars manufactured

23  by Old GM in the time after New GM had come into existence and had fraudulently

24  opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would

25  not have continued to drive their vehicles or would have taken other affirmative

26  steps. Plaintiffs' and the Tennessee Class's actions were justified. New GM was in

27  exclusive control of the material facts and such facts were not known to the public,

28  Plaintiffs, or the Tennessee Class.

KNAPP,
PETERSEN
& CLARKE

-175-

2411127.1  08000/01006

1  999. Because of the concealment and/or suppression of the facts, Plaintiffs

2 and the Tennessee Class sustained damage because they own vehicles that

3 diminished in value as a result of New GM's concealment of, and failure to timely

4 disclose, the defects in the class vehicles and the quality issues engendered by New

5 GM's corporate policies. Had they been aware of the defects that existed in the class

6 vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

7 New GM came into existence either would have paid less for their vehicles or would

8 not have purchased or leased them at all; and no Plaintiffs regardless of time of

9 purchase or lease would have maintained their vehicles.

10  1000. The value of all Tennessee Class Members' vehicles has diminished as a

11 result of New GM's fraudulent concealment of the defects which have tarnished the

12 Corvette brand and made any reasonable consumer reluctant to purchase any of the

13 class vehicles, let alone pay what otherwise would have been fair market value for

14 the vehicles.

15  1001. Accordingly, New GM is liable to the Tennessee Class for damages in

16 an amount to be proven at trial.

17  1002. New GM's acts were done maliciously, oppressively, deliberately, with

18 intent to defraud, and in reckless disregard of Plaintiffs' and the Tennessee Class's

19 rights and well-being to enrich New GM. New GM's conduct warrants an assessment

20 of punitive damages in an amount sufficient to deter such conduct in the future,

21 which amount is to be determined according to proof.

## COUNT LXIX

## THIRD-PARTY BENEFICIARY CLAIM

24  1003. Plaintiffs reallege and incorporate by reference all paragraphs as though

25 fully set forth herein.

26  1004. This claim is brought only on behalf of Class members who are

27 Tennessee residents (the "Tennessee Class").

28  1005. In the Sales Agreement through which New GM acquired substantially

KNAPP,
PETERSEN
& CLARKE

-176-

1  all of the assets of New GM, New GM explicitly agreed as follows:

2        From and after the Closing, [New GM] shall comply with the

3        certification, reporting and recall requirements of the National Traffic

4        and Motor Vehicle and Motor Vehicle Safety Act, the Transportation

5        Recall Enhancement, Accountability and Documentation Act, the Clean

6        Air Act, the California Health and Safety Code and similar Laws, in

7        each case, to the extent applicable in respect of vehicles and vehicle

8        parts manufactured or distributed by [Old GM].

9    1006. With the exception of the portion of the agreement that purports to

10  immunize New GM from its own independent misconduct with respect to cars and

11  parts made by Old GM, the Sales Agreement is a valid and binding contract.

12    1007. But for New GM's covenant to comply with the TREAD Act with

13  respect to cars and parts made by Old GM, the TREAD Act would have no

14  application to New GM with respect to those cars and parts. That is because the

15  TREAD Act on its face imposes reporting and recall obligations only on the

16  "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

17    1008. Because New GM agreed to comply with the TREAD Act with respect

18  to vehicles manufactured by Old GM, New GM agreed to (among other things): (a)

19  make quarterly submissions to NHTSA of "early warning reporting" data, including

20  incidents involving property damage, warranty claims, consumer complaints, and

21  field reports concerning failure, malfunction, lack of durability or other performance

22  issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

23  underlying records on which the early warning reports are based and all records

24  containing information on malfunctions that may be related to motor vehicle safety.

25  See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

26  or should know that a safety defect exists – including notifying NHTSA and

27  consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

28  573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

**KNAPP,**
**PETERSEN**
**& CLARKE**

-177-

1009. Plaintiffs, as owners and lessors of vehicles and parts manufactured by Old GM, are the clear intended beneficiaries of New GM's agreement to comply with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the benefit of having a manufacturer responsible for monitoring the safety of their Old GM vehicles and making certain that any known defects would be promptly remedied.

1010. Although the Sale Order which consummated New GM's purchase of Old GM purported to give New GM immunity from claims concerning vehicles or parts made by Old GM, the bankruptcy court recently ruled that provision to be unenforceable, and that New GM can be held liable for its own post-bankruptcy sale conduct with respect to cars and parts made by Old GM. Therefore, that provision of the Sale Order and related provisions of the Sale Agreement cannot be read to bar Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale breaches of the promise it made in the Sale Agreement.

1011. New GM breached its covenant to comply with the TREAD Act with respect to the class vehicles, as it failed to take action to remediate the defects at any time, up to the present.

1012. Plaintiffs and the Tennessee Class were damaged as a result of New GM's breach. Because of New GM's failure to timely remedy the defect in class vehicles, the value of the Old GM class vehicles has diminished in an amount to be determined at trial.

**COUNT LXX**

**UNJUST ENRICHMENT**

1013. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1014. This claim is brought on behalf of members of the Tennessee Class who purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period after New GM came into existence, and who purchased or leased class vehicles in the

2411127.1 08000/01006

1   time period before New GM came into existence, which cars were still on the road

2   after New GM came into existence (the "Tennessee Unjust Enrichment Class").

3       1015. New GM has received and retained a benefit from the Plaintiffs and

4   inequity has resulted.

5       1016. New GM has benefitted from selling and leasing defective cars,

6   including Certified Pre-Owned cars, whose value was artificially inflated by New

7   GM's concealment of defect issues that plagued class vehicles, for more than they

8   were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

9   pay other costs.

10      1017. With respect to the class vehicles purchased before New GM came into

11  existence that were still on the road after New GM came into existence and as to

12  which New GM had unjustly and unlawfully determined not to recall, New GM

13  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

14  from its statements about the success of New GM.

15      1018. Thus, all Tennessee Unjust Enrichment Class Members conferred a

16  benefit on New GM.

17      1019. It is inequitable for New GM to retain these benefits.

18      1020. Plaintiffs were not aware about the true facts about class vehicles, and

19  did not benefit from GM's conduct.

20      1021. New GM knowingly accepted the benefits of its unjust conduct.

21      1022. As a result of New GM's conduct, the amount of its unjust enrichment

22  should be disgorged, in an amount according to proof.

23  **Texas**

24  ### **COUNT LXXI**

25  ### **VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES –**

26  ### **CONSUMER PROTECTION ACT**

27  ### **(TEX. BUS. & COM. CODE §§ 17.41, et seq.)**

28      1023. Plaintiffs reallege and incorporate by reference all paragraphs as though

KNAPP,
PETERSEN
& CLARKE

-179-

1  fully set forth herein.

2      1024. This claim is brought only on behalf of Nationwide Class members who

3  are Texas residents (the "Texas Class").

4      1025. Plaintiffs and the Texas Class are individuals, partnerships and

5  corporations with assets of less than $25 million (or are controlled by corporations or

6  entities with less than $25 million in assets). See TEX. BUS. & COM. CODE §

7  17.41.

8      1026. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas

9  DTPA") provides a private right of action to a consumer where the consumer suffers

10  economic damage as the result of either (i) the use of false, misleading or deceptive

11  act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b);

12  (ii) "breach of an express or implied warranty" or (iii) "an unconscionable action or

13  course of action by any person." TEX. BUS. & COM. CODE § 17.50(a)(2) & (3).

14      1027. An "unconscionable action or course of action," means "an act or

15  practice which, to a consumer's detriment, takes advantage of the lack of knowledge,

16  ability, experience, or capacity of the consumer to a grossly unfair degree." TEX.

17  BUS. & COM. CODE § 17.45(5). As detailed herein, New GM has engaged in an

18  unconscionable action or course of action and thereby caused economic damages to

19  the Texas Class.

20      1028. New GM has also breached the implied warranty of merchantability

21  with respect to the Texas Class, as set forth in Texas Count III below.

22      1029. New GM has also violated the specifically enumerated provisions of

23  TEX. BUS. & COM. CODE § 17.46(b) by, at a minimum: (1) representing that the

24  class vehicles have characteristics, uses, benefits, and qualities which they do not

25  have; (2) representing that the class vehicles are of a particular standard, quality, and

26  grade when they are not; (3) advertising the class vehicles with the intent not to sell

27  them as advertised; (4) failing to disclose information concerning the class vehicles

28  with the intent to induce consumers to purchase or lease the class vehicles.

**KNAPP,
PETERSEN
& CLARKE**

-180-

1030. In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the class vehicles.

1031. From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

1032. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all the class vehicles. New GM concealed this information as well.

1033. By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive and unconscionable business practices in violation of the Texas DTPA.

1034. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that the class vehicles were

KNAPP,
PETERSEN
& CLARKE

-181-

1 safe, reliable, and of high quality, and by claiming to be a reputable manufacturer

2 that valued safety and stood behind its vehicles once they are on the road.

3     1035. New GM's unfair or deceptive acts or practices were likely to and did in

4 fact deceive reasonable consumers, including Plaintiffs, about the true safety and

5 reliability of the class vehicles, the quality of the GM brand, the devaluing of safety

6 at New GM, and the true value of the class vehicles.

7     1036. New GM intentionally and knowingly misrepresented material facts

8 regarding the class vehicles with the intent to mislead Plaintiffs and the Texas Class.

9     1037. New GM knew or should have known that its conduct violated the

10 Texas DTPA.

11     1038. As alleged above, New GM made material statements about the safety

12 and reliability of the class vehicles and the GM brand that were either false or

13 misleading.

14     1039. New GM owed Plaintiffs a duty to disclose the true safety and reliability

15 of the class vehicles and the devaluing of safety at New GM, because New GM:

16     (a)    Possessed exclusive knowledge that it valued cost-cutting over

17 safety, selected parts from the cheapest supplier regardless of quality, and actively

18 discouraged employees from finding and flagging known safety defects, and that this

19 approach would necessarily cause the existence of more defects in the vehicles it

20 designed and manufactured;

21     (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

22     (c)    Made incomplete representations about the safety and reliability

23 of the class vehicles generally, and the valve guide defects in particular, while

24 purposefully withholding material facts from Plaintiffs that contradicted these

25 representations.

26     1040. Because New GM fraudulently concealed the defects in the class

27 vehicles, the value of the class vehicles has greatly diminished. In light of the stigma

28 attached to those vehicles by New GM's conduct, they are now worth significantly

**KNAPP,
PETERSEN
& CLARKE**

-182-

1    less than they otherwise would be.

2        1041. New GM's systemic devaluation of safety and its concealment of the

3    defects in the class vehicles were material to Plaintiffs and the Texas Class.  A

4    vehicle made by a reputable manufacturer of vehicles is worth more than an

5    otherwise comparable vehicle made by a disreputable manufacturer of vehicles that

6    conceals defects rather than promptly remedying them.

7        1042. Plaintiffs and the Texas Class suffered ascertainable loss caused by New

8    GM's misrepresentations and its concealment of and failure to disclose material

9    information.  Plaintiffs who purchased class vehicles after the date of New GM's

10   inception either would have paid less for their vehicles or would not have purchased

11   or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result

12   of New GM's misconduct.  Under TEX. BUS. & COM. CODE § 17.50(b)(1),

13   Plaintiffs are entitled to recover such economic damages.

14       1043. As set forth above and in Texas Count III below, New GM breached of

15   the implied warranty of merchantability with respect to the Texas Class, and engaged

16   in that unconscionable actions and unconscionable course of action "knowingly,"

17   which means it did so with "actual awareness of the fact of the act, practice,

18   condition, defect or failure constituting the breach of warranty" and with "actual

19   awareness, at the time of the act or practice complained of, of the falsity, deception

20   or unfairness of the act or practice giving rise to the consumer's claim...." TEX.

21   BUS. & COM. CODE § 17.45(9). Accordingly, pursuant to TEX. BUS. COM.

22   CODE § 17.50(b)(1), Members of the Texas Class are entitled to additional damages

23   in an amount up to three times the amount of economic damages.

24       1044. Regardless of time of purchase or lease, no Plaintiffs would have

25   maintained and continued to drive their vehicles. By contractually assuming TREAD

26   Act responsibilities with respect to Old GM class vehicles, New GM effectively

27   assumed the role of manufacturer of those vehicles because the TREAD Act on its

28   face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c).  New GM had an

**KNAPP,
PETERSEN
& CLARKE**

-183-

1  ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or

2  practices under the Texas DTPA.  And, in any event, all class vehicle owners

3  suffered ascertainable loss in the form of the diminished value of their vehicles as a

4  result of New GM's deceptive and unfair acts and practices that occurred in the

5  course of New GM's business.

6      1045. Pursuant to TEX. BUS. & COM. CODE § 17.50(a)(1) and (b), Plaintiffs

7  and the Texas Class seek monetary relief against New GM measured as actual

8  damages in an amount to be determined at trial, treble damages for New GM's

9  knowing violations of the Texas DTPA, and any other just and proper relief available

10  under the Texas DTPA.

11      1046. Alternatively, or additionally, pursuant to TEX. BUS. & COM. CODE §

12  17.50(b)(3) & (4), Plaintiffs and the Texas Class and all other Texas Class members

13  who purchased vehicles from New GM on or after July 11, 2009 are entitled to

14  disgorgement or to rescission or to any other relief necessary to restore any money or

15  property that was acquired from them based on violations of the Texas DTPA or

16  which the Court deems proper.

17      1047. The Texas Plaintiffs and the Texas Class also are also entitled to recover

18  court costs and reasonable and necessary attorneys' fees under § 17.50(d) of the

19  Texas DTPA.

20                **COUNT LXXII**

21             **FRAUD BY CONCEALMENT**

22      1048. Plaintiffs reallege and incorporate by reference all paragraphs as though

23  fully set forth herein.

24      1049. This claim is brought on behalf of Nationwide Class Members who are

25  Texas residents (the "Texas Class").

26      1050. New GM concealed and suppressed material facts concerning the

27  quality of the class vehicles.

28      1051. New GM concealed and suppressed material facts concerning the

**KNAPP,
PETERSEN
& CLARKE**

-184-

culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

1052. New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

1053. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

1054. New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Texas Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Texas Class.

1055. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's

1    image and cost New GM money, and it did so at the expense of Plaintiffs and the

2    Texas Class.

3         1056. On information and belief, New GM has still not made full and adequate

4    disclosure and continues to defraud Plaintiffs and the Texas Class and conceal

5    material information regarding defects that exist in the class vehicles.

6         1057. Plaintiffs and the Texas Class were unaware of these omitted material

7    facts and would not have acted as they did if they had known of the concealed and/or

8    suppressed facts, in that they would not have purchased cars manufactured by New

9    GM; and/or they would not have purchased cars manufactured by Old GM in the

10   time after New GM had come into existence and had fraudulently opted to conceal,

11   and to misrepresent, the true facts about the vehicles; and/or would not have

12   continued to drive their vehicles or would have taken other affirmative steps.

13   Plaintiffs' and the Texas Class's actions were justified. New GM was in exclusive

14   control of the material facts and such facts were not known to the public, Plaintiffs,

15   or the Texas Class.

16        1058. Because of the concealment and/or suppression of the facts, Plaintiffs

17   and the Texas Class sustained damage because they own vehicles that diminished in

18   value as a result of New GM's concealment of, and failure to timely disclose, the

19   defects in the class vehicles and the quality issues engendered by New GM's

20   corporate policies.  Had they been aware of the defects that existed in the class

21   vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after

22   New GM came into existence either would have paid less for their vehicles or would

23   not have purchased or leased them at all; and no Plaintiffs regardless of time of

24   purchase or lease would have maintained their vehicles.

25        1059. The value of all Texas Class Members' vehicles has diminished as a

26   result of New GM's fraudulent concealment of the defects which have tarnished the

27   Corvette brand and made any reasonable consumer reluctant to purchase any of the

28   class vehicles, let alone pay what otherwise would have been fair market value for

**KNAPP,
PETERSEN
& CLARKE**

-186-

1    the vehicles.

2    1060. Accordingly, New GM is liable to the Texas Class for damages in an

3    amount to be proven at trial.

4    1061. New GM's acts were done maliciously, oppressively, deliberately, with

5    intent to defraud, and in reckless disregard of Plaintiffs' and the Texas Class's rights

6    and well-being to enrich New GM.  New GM's conduct warrants an assessment of

7    punitive damages in an amount sufficient to deter such conduct in the future, which

8    amount is to be determined according to proof.

9    **COUNT LXXIII**

10   **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

11   **(TEX. BUS. & COM. CODE § 2.314)**

12   1062. Plaintiffs reallege and incorporate by reference all paragraphs as though

13   fully set forth herein.

14   1063. This claim is brought only on behalf of the Texas Class.

15   1064. New GM was a merchant with respect to motor vehicles under TEX.

16   BUS. & COM. CODE § 2.104.

17   1065. Under TEX. BUS. & COM. CODE § 2.314, a warranty that the class

18   vehicles were in merchantable condition was implied by law in the transaction in

19   which Plaintiffs and the Texas Class purchased or leased their class vehicles from

20   New GM on or after July 11, 2009.

21   1066. New GM impliedly warranted that the vehicles were of good and

22   merchantable quality and fit, and safe for their ordinary intended use – transporting

23   the driver and passengers in reasonable safety during normal operation, and without

24   unduly endangering them or members of the public.

25   1067. These vehicles, when sold and at all times thereafter, were not

26   merchantable and are not fit for the ordinary purpose for which cars are used.

27   Specifically, the class vehicles are inherently defective in that there are defects in the

28   engine that result in premature unusual wear and catastrophic failure.

**KNAPP,
PETERSEN
& CLARKE**

-187-

2411127.1  08000/01006

1068. As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Texas Class have been damaged in an amount to be proven at trial.

## COUNT LXXIV

## THIRD-PARTY BENEFICIARY CLAIM

1069. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1070. This claim is brought only on behalf of Texas Class.

1071. In the Sales Agreement through which New GM acquired substantially all of the assets of New GM, New GM explicitly agreed as follows:

> From and after the Closing, [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

1072. With the exception of the portion of the agreement that purports to immunize New GM from its own independent misconduct with respect to cars and parts made by Old GM, the Sales Agreement is a valid and binding contract.

1073. But for New GM's covenant to comply with the TREAD Act with respect to cars and parts made by Old GM, the TREAD Act would have no application to New GM with respect to those cars and parts. That is because the TREAD Act on its face imposes reporting and recall obligations only on the "manufacturers" of a vehicle. 49 U.S.C. § 30118(c).

1074. Because New GM agreed to comply with the TREAD Act with respect to vehicles manufactured by Old GM, New GM agreed to (among other things): (a) make quarterly submissions to NHTSA of "early warning reporting" data, including

KNAPP,
PETERSEN
& CLARKE

1 incidents involving property damage, warranty claims, consumer complaints, and

2 field reports concerning failure, malfunction, lack of durability or other performance

3 issues. See 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21; (b) retain for five years all

4 underlying records on which the early warning reports are based and all records

5 containing information on malfunctions that may be related to motor vehicle safety.

6 See 49 C.F.R. §§ 576.5 to 576.6; and (c) take immediate remedial action if it knows

7 or should know that a safety defect exists – including notifying NHTSA and

8 consumers and ordering a recall if necessary. See 49 U.S.C. § 30118(c); 49 C.F.R. §

9 573.6(b)-(c); 49 C.F.R. §§ 577.5(a), 577.7(a).

10     1075. Plaintiffs, as owners and lessors of vehicles and parts manufactured by

11 Old GM, are the clear intended beneficiaries of New GM's agreement to comply

12 with the TREAD Act. Under the Sale Agreement, Plaintiffs were to receive the

13 benefit of having a manufacturer responsible for monitoring the safety of their Old

14 GM vehicles and making certain that any known defects would be promptly

15 remedied.

16     1076. Although the Sale Order which consummated New GM's purchase of

17 Old GM purported to give New GM immunity from claims concerning vehicles or

18 parts made by Old GM, the bankruptcy court recently ruled that provision to be

19 unenforceable, and that New GM can be held liable for its own post-bankruptcy sale

20 conduct with respect to cars and parts made by Old GM. Therefore, that provision of

21 the Sale Order and related provisions of the Sale Agreement cannot be read to bar

22 Plaintiffs' third-party beneficiary claim as it is based solely on New GM's post-sale

23 breaches of the promise it made in the Sale Agreement.

24     1077. New GM breached its covenant to comply with the TREAD Act with

25 respect to the class vehicles, as it failed to take action to remediate the defects at any

26 time, up to the present.

27     1078. Plaintiffs and the Texas Class were damaged as a result of New GM's

28 breach.  Because of New GM's failure to timely remedy the defect in the class

**KNAPP,
PETERSEN
& CLARKE**

-189-

1  vehicles, the value of Old GM class vehicles has diminished in an amount to be

2  determined at trial.

3  **COUNT LXXV**

4  **UNJUST ENRICHMENT**

5  1079. Plaintiffs reallege and incorporate by reference all paragraphs as though

6  fully set forth herein.

7  1080. This claim is brought on behalf of members of the Texas Class who

8  purchased New GM vehicles, or Certified Pre-Owned GM vehicles in the time period

9  after New GM came into existence, and who purchased or leased class vehicles in the

10  time period before New GM came into existence, which cars were still on the road

11  after New GM came into existence.

12  1081. New GM has received and retained a benefit from the Plaintiffs and

13  inequity has resulted.

14  1082. New GM has benefitted from selling and leasing defective cars,

15  including Certified Pre-Owned cars, whose value was artificially inflated by New

16  GM's concealment of defect issues that plagued class vehicles, for more than they

17  were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to

18  pay other costs.

19  1083. With respect to the class vehicles purchased before New GM came into

20  existence that were still on the road after New GM came into existence and as to

21  which New GM had unjustly and unlawfully determined not to recall, New GM

22  benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted

23  from its statements about the success of New GM.

24  1084. Thus, Texas Class members conferred a benefit on New GM.

25  1085. It is inequitable for New GM to retain these benefits.

26  1086. Plaintiffs were not aware about the true facts about class vehicles, and

27  did not benefit from GM's conduct.

28  1087. New GM knowingly accepted the benefits of its unjust conduct.

KNAPP,
PETERSEN
& CLARKE

-190-

2411127.1  08000/01006

1088. As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf all others similarly situated, respectfully request that this Court enter a judgment against New GM and in favor of Plaintiffs and the Class, and grant the following relief:

1.    Determine that this action may be maintained as a class action and certify it as such under Rule 23(b)(2) and/or 23(b)(3), or alternatively certify all issues and claims that are appropriately certified under Rule 23(c)(4); and designate and appoint Plaintiffs as Class Representatives and Plaintiffs' chosen counsel as Class Counsel;

2.    Declare, adjudge, and decree the conduct of New GM as alleged herein to be unlawful, unfair, and/or deceptive and otherwise in violation of law, enjoin any such future conduct;

3.    Award Plaintiffs and Class Members actual, compensatory damages or, in the alternative, statutory damages, as proven at trial;

4.    Award Plaintiffs and the Class Members exemplary damages in such amount as proven;

5.    Award damages and other remedies, including, but not limited to, statutory penalties, as allowed by any applicable law, such as the consumer laws of the various states;

6.    Award Plaintiffs and the Class Members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest;

7.    Declare, adjudge and decree that Defendant violated 18 U.S.C. §§ 1962(c) and (d) by conducting the affairs of the RICO Enterprise through a pattern of racketeering activity and conspiring to do so;

8.    Award Plaintiffs and the nation-wide Class Members treble damages pursuant to 18 U.S.C. § 1964(c);

KNAPP,
PETERSEN
& CLARKE

-191-

1     9.    Award Plaintiffs and Class Members restitution and/or disgorgement of

2 New GM's ill-gotten gains relating to the conduct described in this Complaint; and

3     10.    Award Plaintiffs and the Class Members such other further and different

4 relief as the case may require or as determined to be just, equitable, and proper by

5 this Court.

6

7 Dated: December 22, 2015              KNAPP, PETERSEN & CLARKE

8

9                          By: /s/ André E. Jardini

10                            André E. Jardini

11                            K.L. Myles

Attorneys for Plaintiffs WILLIAM D. PILGRIM, WALTER GOETZMAN, CHAD REESE, JEROME E. PEDERSON, AHMED J. CANNON, MICHAEL FERNANDEZ, ROY HALEEN, HOWARD KOPEL, ROBERT C. MURPHY, MIKE PETERS, MARC ADAMS, KALEB ISLEY, KAI QIAN, MARK ROWE, DALLAS WICKER, MIGUEL QUEZADA, CHRISTOPHER CONSTANTINE, BRADLEY GRANT, JOHN PARSONS, ROBERT L. BRIGGS, ROBERT EDGAR, ROGER L. BROWNING, LYLE DUNAHOO, AARON CLARK, ALAN PELLETIER, EDWIN WILLIAM KRAUSE, FRANK JUZSWIK, S. GARRETT BECK, DAVID SHELDON, JAN ENGWIS, ADAM BALDUCCI, ALAN FERRER, JARED KILEY, JEFF KOLODZI, DEREK VAN DEN TOP, MORRIS SMITH, ANDRES FREY, SHAWN BAIN, JEFFREY M. MILLSLAGLE, ROBERT GEISS, individuals, on behalf of themselves and all others similarly situated

27 ////

28 ////

-192-

2411127.1  08000/01006

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in the above-captioned matter.

Dated:  December 22, 2015          KNAPP, PETERSEN & CLARKE


                                   By:  /s/ André E. Jardini
                                        André E. Jardini
                                        K.L. Myles
                                        Attorneys for Plaintiffs
                                        WILLIAM D. PILGRIM, WALTER
                                        GOETZMAN, CHAD REESE,
                                        JEROME E. PEDERSON, AHMED
                                        J. CANNON,  MICHAEL
                                        FERNANDEZ, ROY HALEEN,
                                        HOWARD KOPEL, ROBERT C.
                                        MURPHY, MIKE PETERS, MARC
                                        ADAMS, KALEB ISLEY, KAI
                                        QIAN, MARK ROWE, DALLAS
                                        WICKER, MIGUEL QUEZADA,
                                        CHRISTOPHER CONSTANTINE,
                                        BRADLEY GRANT, JOHN
                                        PARSONS, ROBERT L. BRIGGS,
                                        ROBERT EDGAR, ROGER L.
                                        BROWNING, LYLE DUNAHOO,
                                        AARON CLARK, ALAN
                                        PELLETIER, EDWIN WILLIAM
                                        KRAUSE, FRANK JUZSWIK, S.
                                        GARRETT BECK, DAVID
                                        SHELDON, JAN ENGWIS, ADAM
                                        BALDUCCI, ALAN FERRER,
                                        JARED KILEY, JEFF KOLODZI,
                                        DEREK VAN DEN TOP, MORRIS
                                        SMITH, ANDRES FREY, SHAWN
                                        BAIN, JEFFREY M.
                                        MILLSLAGLE, ROBERT GEISS,
                                        individuals, on behalf of themselves
                                        and all others similarly situated

**KNAPP,
PETERSEN
& CLARKE**

-193-

2411127.1   08000/01006