# **Exhibit E**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| BERNARD PITTERMAN, ADMINISTRATOR<br>OF THE ESTATE OF M.R.O., ET. AL.<br><br>Plaintiffs,<br><br>V.<br><br>GENERAL MOTORS LLC<br><br>Defendant. | CIVIL ACTION NO.<br><br>3:14-CV-00967-JCH<br><br>JURY TRIAL DEMANDED<br><br>October 5, 2015 |

Plaintiffs hereby file the following Amended Complaint in accordance with the Order of the Court (ECF #57):

## AMENDED COMPLAINT

### COUNT ONE  (Estate of M.RO.)

1. On July 13, 2011, M.R.O died intestate a resident of the Town of Brookfield, Connecticut. The Probate Court for the Housatonic Probate District appointed Bernard Pitterman, Esq., as the Administrator of the Estate of M.R.O. who brings the cause of action alleged herein in his capacity as Administrator of the Estate of M.R.O. and on behalf of said Estate.

2. Defendant General Motors LLC ("GM") is a Delaware limited liability company.

3. GM is the successor corporation to General Motors Corporation ("GMC") which

1

underwent bankruptcy in 2009.

4. Through that bankruptcy and asset sale from GMC to GM, GM assumed the liabilities of GMC for cases such as this one.

5. At all times relevant herein, GMC was a corporation engaged in the business of designing, manufacturing and selling motor vehicles.

6. On Wednesday, July 13, 2011, at approximately 4 p.m., M.R.O., then 8 years old, was inside a 2004 Chevrolet Suburban ("the Suburban") that was parked in the driveway of the O'Connor home located at 8 Windwood Road, Brookfield, Connecticut.

7. The ignition of the Suburban was in the Accessory ("ACC") position and the transmission shifted from Park to Neutral.

8. As a result of the movement of the transmission from Park to Neutral, the Suburban began rolling backwards from its parked position. It rolled down the O'Connors' front lawn into a wooded area and crashed into trees.

9. During the time that the Suburban was rolling out of control into the trees, M.R.O. experienced extreme mental and emotional suffering, including fear and apprehension of death.

10. During the crash, M.R.O. sustained the following physical injuries:

    a. lacerations to the face and head;

    b. fractures of the skull and facial bones, including the mandible and maxilla, resulting in the loss and destruction of brain tissue;

2

  c. contusions and abrasions around the left eye, the left lateral cheek/temporal area, and the left lower cheek;

  d. abrasions on the front of the neck, the chest, both upper arms and the right dorsal forearm;

  e. a five inch laceration on the right upper arm;

  f. abrasions of the left and right upper thighs and abrasions of the left and right calves; and

  g. fractures of the left and right femurs.

11. As a result of these injuries, M.R.O. experienced severe physical pain and suffering.

12. As a result of this crash, M.R.O. died.

13. As a result of this crash, M.R.O.'s ability to carry on and enjoy life's activities was destroyed.

14. As a result of this crash, M.R.O.'s earning capacity was destroyed.

15. The 2004 Chevrolet Suburban occupied by M.R.O. on July 13, 2011 was designed by GMC.

16. The 2004 Chevrolet Suburban occupied by M.R.O. on July 13, 2011 was manufactured by GMC.

17. The 2004 Chevrolet Suburban occupied by M.R.O. on July 13, 2011 was sold by GMC.

3

18. GMC was the product seller of the subject Suburban within the terms of Conn. Gen. Stat. § 52-572m(a).

19. This product liability action is brought pursuant to Conn. Gen. Stat. § 52-572m, *et. seq.*

20. The Suburban involved in the crash which gives rise to this action was in a defective condition in that:

    a. the automatic transmission could be moved from Park to Neutral when the ignition switch was in the ACC position, without depressing the brake, thereby allowing the vehicle to roll from a parked position;

    b. the brake transmission shift interlock device installed on the Suburban did not function when the ignition was in the ACC position,

    c. there were insufficient and inadequate instructions or warnings that the brake transmission shift interlock installed on the Suburban did not function with the ignition in the ACC position. Conn. Gen. Stat. § 52-572q.

21. The design of the brake transmission shift interlock described above existed at the time the 2004 Suburban left GMC's possession.

22. The 2004 Suburban was expected to reach the user without substantial change in the condition of the brake transmission shift interlock.

23. The 2004 Suburban did reach the user without substantial change in condition of the

4

brake transmission shift interlock.

24. The defects described above caused the injuries and death described above.

25. On or about May 25, 2006, GMC issued a Technical Service Bulletin in which it acknowledged that the ordinary owner may expect the brake transmission shift interlock to function when the key is in the ACC position.

26. Despite this knowledge, and the knowledge of numerous "rollaway" incidents caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, GMC and the Defendant took no steps to directly notify and/or warn owners or the public of these defects.

27. Despite this knowledge, and the knowledge of numerous "rollaway" incidents, caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, GMC and the defendant took no steps to recall the Suburban.

28. The crash, and the resulting damages as alleged herein, were caused by GMC and the Defendant's reckless disregard for the safety of product users, consumers or others, in that GMC and the defendant knew or reasonably should have known that the Suburban was unreasonably dangerous, had caused and would cause numerous catastrophic injuries and deaths and failed to recall and/or retrofit the subject vehicle.

**COUNT TWO (G.O.)**

5

1. On June 13, 2012, the Probate Court for the Housatonic Probate District appointed Bernard Pitterman, Esq., Guardian of the Estate of G.O., a Minor. Bernard Pitterman, Esq. brings the cause of action alleged herein in his capacity a Guardian of the Estate of G.O. and on behalf of G.O..

2 - 28. Paragraphs 2 through 28 of the First Count are hereby realleged as Paragraphs 2 through 28 of the Second Count.

29. G.O., who was M.R.O.'s brother and then 7 years old, witnessed the Suburban, with his sister M.R.O. inside, roll into the wooded area and crash into the trees, saw his sister killed and saw her body immediately after the crash.

30. As a result of witnessing the crash and seeing his sister afterwards, G.O. sustained serious, severe and devastating mental and emotional injury and distress.

31. As a result of his injuries, G.O. has incurred and will incur medical bills.

32. As a result of his injuries, G.O.'s earning capacity has been diminished.

## COUNT THREE (ROSE O'CONNOR)

1. Rose O'Connor is an individual who resides at 8 Windwood Road, Brookfield, Connecticut, and is the mother of M.R.O. and G.O..

2 - 28. Paragraphs 2 through 28 of the First Count are hereby realleged as Paragraphs 2 through 28 of the Third Count.

29. Rose O'Connor came upon the crash within minutes after it occurred. She saw the Suburban and her daughter's body lying in the wooded area before any material change had occurred

6

with respect to the location and condition of M.R.O.'s body.

30. As a result of witnessing the condition of M.R.O.'s body, and the surrounding area including the crushed Suburban, Rose O'Connor sustained serious, severe and devastating mental and emotional injury and distress.

31. As a result of her injuries, Rose O'Connor has incurred and will incur medical bills.

**COUNT FOUR  (Rose O'Connor - Parental Consortium)**

1 - 31. Paragraphs 1 through 30 of the Third Count are hereby realleged as Paragraphs 1 through 30 of the Fourth Count.

32. As a result of the death of her daughter M.R.O., Rose O'Connor has suffered the loss of her society, affection, and companionship.

**COUNT FIVE  (James O'Connor - Parental Consortium)**

1. - 28. Paragraphs 1 through 28 of the First Count are hereby realleged as Paragraphs 1 through 28 of the Fifth Count.

29. As a result of the death of his daughter M.R.O., James O'Connor has suffered the loss of her society, affection, and companionship.

**COUNT SIX  (James O'Connor - Spousal Consortium)**

1 - 31. Paragraphs 1 through 31 of the Third Count are hereby realleged as Paragraphs 1 through 31 of the Sixth Count.

32. As a result of the injuries to his wife, Rose, James O'Connor has suffered the loss of

7

her society, affection, support, services, and companionship.

                        THE PLAINTIFFS,

                        BY: _____
                        Joram Hirsch, Esq.
                        Adelman Hirsch & Connors, LLP
                        1000 Lafayette Boulevard
                        Bridgeport, CT 06604
                        Federal Bar No. - ct06734
                        Tele: (203) 331-8888
                        Fax: (203) 333-4650
                        Email: jhirsch@ahctriallaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| BERNARD PITTERMAN, ADMINISTRATOR | X | |
| OF THE ESTATE OF M.R.O., ET. AL. | X | |
| | X | |
| Plaintiffs, | X | |
| | X | CIVIL ACTION NO. |
| | X | |
| V. | X | 3:14-CV-00967-JCH |
| | X | |
| GENERAL MOTORS LLC | X | JURY TRIAL DEMANDED |
| | X | |
| Defendant. | X | |
| | X | October 5, 2015 |

---

## STATEMENT RE AMOUNT IN DEMAND

WHEREFORE, the Plaintiffs claim:

1. Monetary damages;

THE PLAINTIFFS,

BY: _____
Joram Hirsch, Esq.
Adelman Hirsch & Connors, LLP
1000 Lafayette Boulevard
Bridgeport, CT  06604
Federal Bar No. - ct06734
Tele: (203) 331-8888
Fax: (203) 333-4650
Email: jhirsch@ahctriallaw.com

9