**Hearing Date and Time: April 20, 2017 at 9:00 a.m. (Eastern Time)**
**Reply Brief Deadline: April 7, 2017**

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone:  206-623-7292
Email: steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone:  414-956-1000
Email: ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Telephone: 361-882-1612
Email: bobh@hmglawfirm.com

*Lead Counsel in the MDL Court with*
*Primary Responsibility for Personal Injury*
*and Wrongful Death Cases*

Edward S. Weisfelner
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800
Email: eweisfelner@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, P.C.
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: 214-969-4900
Email:  esserman@sbep-law.com

*Designated Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the Bankruptcy Court*

William P. Weintraub
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: 212-813-8800
Email: wweintraub@goodwinlaw.com

*Counsel to Those Certain Post-Closing*
*Accident Plaintiffs Represented By Butler*
*Wooten & Peak LLP, Denney & Barrett, P.C.,*
*Hilliard Muñoz Gonzales L.L.P., and Turner &*
*Associates, P.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                                :
In re:                                                          :          Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,          :          Case No.: 09-50026 (MG)
          f/k/a General Motors Corp., et al.,              :
                                                                :
                                    Debtors.            :          (Jointly Administered)
------------------------------------------------------------X

**Plaintiffs' Joint Opening Brief On The 2016 Threshold Issues**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................5

I.      New GM's Motions To Enforce The Sale Order................................................5

II.     The April 2015 Decision And June 2015 Judgment..........................................7

III.    The September 2015 Scheduling Order...........................................................10

IV.     The November 2015 Decision And December 2015 Judgment. ......................12

V.      The Second Circuit Opinion. .........................................................................14

ARGUMENT ...........................................................................................................15

I.      Threshold Issue One. ....................................................................................15

II.     Threshold Issue Two: Part One......................................................................16

        A.      The Non-Ignition Switch Plaintiffs May Assert Independent Claims
                Under The Plain Meaning Of The Second Circuit Opinion. .................16

        B.      The Mandate Rule Requires That The Bankruptcy Court Adhere To The
                Second Circuit's Ruling That Independent Claims Cannot Be Enjoined. .............19

        C.      The Second Circuit Opinion "Wipes Out" Inconsistent Judgments. ....................20

        D.      Enforcing The Sale Order To Enjoin The Non-Ignition Switch Plaintiffs'
                Independent Claims Would Violate Due Process. .................................................23

        E.      The Bankruptcy Court Lacks Jurisdiction To Enjoin Independent Claims. ..........27

        F.      In The Alternative, Non-Ignition Switch Plaintiffs Should Be Granted
                Relief From Any Bar On Asserting Independent Claims In The November
                2015 Decision And December 2015 Judgment Under Rule 60(b). ......................30

                1.      Non-Ignition Switch Plaintiffs Are Seeking Rule 60(b) Relief
                        Within A Reasonable Time.......................................................................30

                2.      Rule 60(b) Relief Should Be Granted Because The November
                        2015 Decision And December 2015 Judgment Are Based On
                        Rulings Reversed By The Second Circuit. .................................................31

3.      Extraordinary Circumstances Exist Warranting Rule 60(b)(6)
Relief From The November 2015 Decision And December 2015
Judgment. ...............................................................................................33

G.     Although They Were Unquestionably Denied Due Process In Connection
With The Sale Order, Post-Closing Accident Plaintiffs Do Not Need To
Show A Due Process Violation As A Predicate To Asserting Independent
Claims. ...................................................................................................................35

III.    Threshold Issue Two: Part Two ........................................................................................37

A.     Independent Claims Should Be Left To The Nonbankruptcy Courts. ....................37

IV.    Threshold Issue Two: Issues Particular To Post-Closing Accident Plaintiffs. .................40

V.     Threshold Issue Three. .....................................................................................................46

A.     All Used Car Purchasers May Assert Claims Against New GM Under The
Second Circuit Opinion. .......................................................................................46

VI.    Threshold Issue Four. .......................................................................................................49

A.     Because They Were Denied Due Process, Post-Closing Accident
Plaintiffs May Bring Successor Liability Claims Against New GM
(Including Claims For Punitive Damages). ..........................................................49

CONCLUSION ..............................................................................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

APL Co. Pte. Ltd v. Blue Water Shipping U.S. Inc.,
  779 F. Supp. 2d 358 (S.D.N.Y. 2011)....................................................................19

Ass'n for Retarded Citizens of Conn., Inc. v. Thorne,
  68 F.3d 547 (2d Cir. 1995)...................................................................................32

Baker v. Simpson,
  613 F.3d 346 (2d Cir. 2010).................................................................................28

Bank of China, N.Y. Branch v. NBM LLC,
  No. 01 Civ. 0815 (DC), 2004 WL 1907308 (S.D.N.Y. Aug. 26, 2004) .................................21

Barnett v. Jaspan (In re Barnett),
  124 F.2d 1005 (2d Cir. 1942).......................................................................21, 22, 23

Bhd. of Maint. of Way Emps. v. St. Johnsbury & Lamoille Cty. R.R./M.P.S.
  Assocs., Inc.,
  806 F.2d 14 (2d Cir. 1986)...................................................................................22

Chateaugay Corp. v. LTV Corp. (In re Chateaugay Corp.),
  944 F.2d 997 (2d Cir. 1991)..............................................................................48, 52

City of Hartford v. Chase,
  942 F.2d 130 (2d Cir. 1991).................................................................................16

Daniels v. Gilbreath,
  668 F.2d 477 (10th Cir. 1982) ..............................................................................21

Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.),
  829 F.3d 135 (2d Cir. 2016)..................................................................... *passim*

Estate of Mantle v. Rothgeb,
  537 F. Supp. 2d 533 (S.D.N.Y. 2008).....................................................................18

Flowers v. S. Reg'l Physician Servs., Inc.,
  286 F.3d 798 (5th Cir. 2002) ...............................................................................31

Gillispie v. Warden, London Corr. Inst.,
  771 F.3d 323 (6th Cir. 2014) ...............................................................................31

Gondeck v. Pan Am. World Airways, Inc.,
  382 U.S. 25 (1965)............................................................................................34

iii

Hegger v. Green,
    646 F.2d 22 (2d Cir. 1981)..................................................................................20

In re 1031 Tax Grp., LLC,
    No. 10 Civ. 2799 (RJH), 2011 WL 1158445 (S.D.N.Y. Mar. 29, 2011)..........................28, 29

In re Chrysler LLC,
    576 F.3d 108 (2d Cir. 2009), vacated as moot, Ind. State Police Pension Tr. v.
    Chrysler LLC, 558 U.S. 1087 (2009) ..............................................................52, 53

In re Dynegy Inc.,
    486 B.R. 585 (Bankr. S.D.N.Y. 2013)........................................................................16

In re Motors Liquidation Co.,
    457 B.R. 276 (Bankr. S.D.N.Y. 2011)........................................................................37

In re Motors Liquidation Co.,
    529 B.R. 510 (Bankr. S.D.N.Y. 2015)................................................................ passim

In re Motors Liquidation Co.,
    531 B.R. 354 (Bankr. S.D.N.Y. 2015).....................................................................8, 33

In re Motors Liquidation Co.,
    541 B.R. 104 (Bankr. S.D.N.Y. 2015)................................................................ passim

In re Residential Capital, LLC,
    512 B.R. 179 (Bankr. S.D.N.Y. 2014)........................................................................28

In re Terrorist Attacks on September 11, 2001,
    741 F.3d 353 (2d Cir. 2013)....................................................................................34

Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),
    517 F.3d 52 (2d Cir. 2008), rev'd on other grounds sub. nom. Travelers
    Indem. Co. v. Bailey, 557 U.S. 137 (2009) ...............................................27, 28

Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),
    600 F.3d 135 (2d Cir. 2010)......................................................................... passim

Kidder, Peabody & Co. v. Maxus Energy Corp. (In re Ivan F. Boesky Sec. Litig.),
    957 F.2d 65 (2d Cir. 1992)........................................................................................19

Koepp v. Holland,
    593 F. App'x 20 (2d Cir. 2014) ................................................................................48

Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,
    729 F.3d 99 (2d Cir. 2013)........................................................................................34

Lightfoot v. Union Carbide Corp.,
    No. 92 Civ. 6411 (HB), 1997 WL 752357 (S.D.N.Y. Dec. 2, 1997) .....................................30

Lowry Dev., LLC v. Groves & Assocs. Ins., Inc.,
    690 F.3d 382 (5th Cir. 2012) .........................................................................................31, 32

Lyndonville Savings Bank & Tr. Co. v. Lussier,
    211 F. 3d 697 (2d Cir. 2000)....................................................................................................28

Montco, Inc. v. Barr (In re Emergency Beacon Corp.),
    666 F.2d 754 (2d Cir. 1981)....................................................................................................30

Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.),
    445 B.R. 243 (Bankr. S.D.N.Y. 2011), aff'd 467 B.R. 694 (S.D.N.Y. 2012) ........................53

Morgan Olson LLC v. Frederico (In re Grumman Olson Indus., Inc.),
    467 B.R. 694 (S.D.N.Y. 2012)........................................................................................ passim

Mullane v. Cent. Hanover Bank & Tr. Co.,
    339 U.S. 306 (1950)...............................................................................................24, 49, 50

O'Toole v. McTaggart (In re Trinsum Grp., Inc.),
    Adv. No. 11-01284 (MG), 2013 WL 1821592 (Bankr. S.D.N.Y. Apr. 30,
    2013) ....................................................................................................................................29

Park Ave. Radiologists v. Melnick (In re Park Ave. Radiologists, P.C.),
    450 B.R. 461 (Bankr. S.D.N.Y. 2011)...................................................................................37

Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.),
    676 F.3d 45 (2d Cir. 2012)...............................................................................................28, 29

Pierce v. Cook & Co.,
    518 F.2d 720 (10th Cir. 1975) ...............................................................................................34

Puricelli v. Argentina,
    797 F.3d 213 (2d Cir. 2015)....................................................................................................19

Quevedo v. Postmaster, U.S. Postal Serv.,
    774 F. Supp. 837 (S.D.N.Y. 1991)...........................................................................................32

Scott v. City of N.Y.,
    592 F. Supp. 2d 475 (S.D.N.Y. 2008)....................................................................................18

Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP),
    809 F.3d 94 (2d Cir. 2015)...............................................................................................19, 47

Thaler v. Lindo (In re Kenilworth Sys. Corp.),
    204 B.R. 665 (E.D.N.Y. 1997) ...............................................................................................16

v

Travelers Indem. Co. v. Bailey,
   557 U.S. 137 (2009)................................................................................................26, 28

Trusky v. Gen. Motors Corp. (In re Motors Liquidation Co.),
   Adv. No. 12-09803 (REG), 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19,
   2013) ..................................................................................................................37

Ubakanma v. Midwood Chayin Aruchim,
   No. 09-cv-2647, 2010 WL 1206500 (E.D.N.Y. Mar. 29, 2010)...............................18

United Airlines, Inc. v. Brien,
   588 F.3d 158 (2d Cir. 2009)...................................................................................33

United States v. Cirami,
   563 F.2d 26 (2d Cir. 1977)......................................................................................33

Werner v. Carbo,
   731 F.2d 204 (4th Cir. 1984) ............................................................................30, 32

Wright v. Poole,
   81 F. Supp. 3d 280, 290 (S.D.N.Y. 2014)...............................................................30

Zerand-Bernal Grp. v. Cox,
   23 F.3d 159 (7th Cir. 1994) ....................................................................................28

**Statutes**

11 U.S.C. § 363....................................................................................... *passim*

28 U.S.C. § 1334...................................................................................................28

**Other Authorities**

Fed. R. Civ. P. 60 ................................................................................... *passim*

The Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, and those Post-Closing Accident Plaintiffs represented by the following law firms (i) Butler Wooten & Peak LLP, (ii) Denney & Barrett, P.C., (iii) Hilliard Muñoz Gonzales L.L.P., and (iv) Turner & Associates, P.A. (collectively, "**Plaintiffs**")[1] respectfully submit the *Plaintiffs' Joint Opening Brief On The 2016 Threshold Issues* and represent as follows:[2]

## PRELIMINARY STATEMENT

For years, New GM engaged in a deliberate, systematic cover-up of numerous safety defects in Old GM and New GM vehicles.  This cover-up kept dangerously defective vehicles on the road, ***resulting in death, serious injury and dramatic economic loss to millions of victims***.

New GM has repeatedly tried to escape liability for its wrongdoing by, *inter alia*, (i) advancing a self-serving and incorrect interpretation of the Sale Order; (ii) trying to expand Bankruptcy Code Section 363 protections to insulate its own wrongdoing; (iii) improperly invoking the Bankruptcy Court's jurisdiction as a shield to Plaintiffs' rightful recourse; and

---

[1]   The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic losses in connection with vehicles included in Recall No. 14V-047 (the "**Ignition Switch Defect**").  The term "**Post-Closing Accident Plaintiffs**" shall mean those plaintiffs asserting personal injury or wrongful death claims in connection with an accident that occurred after the closing of the § 363 sale.  The term "**Ignition Switch Post-Closing Accident Plaintiffs**" shall mean those Post-Closing Accident Plaintiffs whose vehicles contain the Ignition Switch Defect.  For consistency with the Order to Show Cause (defined below), the term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs who owned or leased a vehicle with defects other than the Ignition Switch Defect.  It must be noted, however, that in all prior litigation over the "four threshold issues" and the litigation that culminated in the November 2015 Decision / December 2015 Judgment (defined below), the term "Non-Ignition Switch Plaintiffs" was limited to plaintiffs asserting economic losses and did not include plaintiffs asserting personal injury or wrongful death claims.  See In re Motors Liquidation Co., 529 B.R. 510, 522 (Bankr. S.D.N.Y. 2015) (the "**April 2015 Decision**") ("The other category of Plaintiffs later coming into the picture ("**Non-Ignition Switch Plaintiffs**") brought actions asserting Economic Loss claims as to GM branded cars that *did not have* Ignition Switch Defects…"); *Judgment*, dated June 1, 2015 [ECF No. 13177], n.1(v) (the "**June 2015 Judgment**") (same); In re Motors Liquidation Co., 541 B.R. 104, 107 n.2 (Bankr. S.D.N.Y. 2015) (the "**November 2015 Decision**") (incorporating defined terms from April 2015 Decision); *Judgment*, dated Dec. 4, 2015 [ECF No. 13563], n.1(ii) (the "**December 2015 Judgment**") (defining "Non-Ignition Switch Plaintiffs" to include only plaintiffs asserting economic loss).  Accordingly, the inclusion of personal injury plaintiffs within the definition of Non-Ignition Switch Plaintiffs now cannot be applied retroactively when analyzing and interpreting what occurred in prior litigation.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.), 829 F.3d 135 (2d Cir. 2016) (the "**Second Circuit Opinion**").

(iv) attempting to dismantle the legion of long-standing case law with respect to remedies for a violation of due process.

The Second Circuit concisely and conclusively cut through New GM's smokescreen. The Second Circuit ruled that: (i) Independent Claims for New GM's post-sale wrongful conduct are outside the scope of the Sale Order and, thus, cannot be enjoined; (ii) claims of Used Car Purchasers are outside the scope of the Sale Order and, thus, cannot be enjoined; and (iii) the Sale Order cannot be enforced to enjoin successor liability claims arising from the Ignition Switch Defect because there was a due process violation.

The Second Circuit Opinion resolved the 2014 Threshold Issues and application of the Second Circuit Opinion likewise resolves the 2016 Threshold Issues.[3] The core 2016 Threshold Issues involve: (i) whether Non-Ignition Switch Plaintiffs are able to assert Independent Claims and, if so, whether such Independent Claims are really Assumed or Retained Liabilities under the Sale Order and/or should all determinations regarding Independent Claims be left to nonbankruptcy courts; (ii) whether the Second Circuit's holding that Used Car Purchasers' claims could not be enjoined is limited to the parties to the appeal and/or to Independent Claims; and (iii) whether Post-Closing Accident Plaintiffs are bound by the Sale Order or are able to assert successor liability claims against New GM and seek punitive damages.[4]

Under the Second Circuit Opinion it is abundantly clear that all Non-Ignition Switch Plaintiffs may assert Independent Claims against New GM. Despite the clarity of this holding, New GM somehow asserts that Non-Ignition Switch Plaintiffs' Independent Claims are barred

---

[3]   The 2014 Threshold Issues are set forth *infra* at 6 n.9. New GM has filed a petition for a writ of *certiorari* challenging the Second Circuit Opinion, but only with respect to the due process ruling. See Petition for Writ of Certiorari, General Motors LLC v. Elliott, No. 16-764 (Dec. 13, 2016).

[4]   See *Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against General Motors LLC ("New GM") that Involve Vehicles Manufactured by General Motors Corporation ("Old GM")*, dated Dec. 13, 2016 [ECF No. 13802] (the "**Order to Show Cause**").

because:  (i) the Second Circuit Opinion is inapplicable to parties who did not appeal the April 2015 Decision and June 2015 Judgment; and/or (ii) the Second Circuit Opinion does not affect the November 2015 Decision and December 2015 Judgment, which were not appealed.  To the contrary, both appealing and non-appealing parties obtain the benefits of the holding in the Second Circuit Opinion that there is absolutely no basis for enjoining Independent Claims.

As a preliminary matter, none of the Post-Closing Accident Plaintiffs that New GM now seeks to estop were parties to the proceedings that led to the April 2015 Decision or the November 2015 Decision.  The former decision did not address post-sale personal injury claims in any capacity.  And the procedures utilized to address the issues considered in the latter decision did not properly alert personal injury plaintiffs with claims arising from post-sale accidents of the issues to be decided or legally compel these parties to appear.

In any event, the November 2015 Decision does not preclude the Non-Ignition Switch Plaintiffs from obtaining relief from the Sale Order upon a showing of a due process violation, which they may do in the future.  The Non-Ignition Switch Plaintiffs also cannot be bound by an injunction in the Sale Order purportedly barring their future Independent Claims against New GM because they did not, and could not, receive constitutionally adequate notice that such claims would be barred.

Moreover, barring Independent Claims is beyond the subject matter jurisdiction of the Bankruptcy Court because, among other reasons, claims against non-debtors for their own future actions are not among the species of claims that can be affected by a "free and clear" sale under section 363(f) and such claims will have no effect on the *res* of the bankruptcy estate.

Further, the Bankruptcy Court has the power to reconsider the clearly erroneous prior rulings barring Independent Claims (now that the Second Circuit clearly reversed on this issue)

under Rule 60(b).  Doing so would prevent giving a reversed ruling continuing legal effect and inconsistent judgments against some plaintiffs asserting claims against New GM arising from the same acts and failures to act.

Ultimately, the viability of Independent Claims is a matter of nonbankruptcy law to be determined by nonbankruptcy courts.  As the Bankruptcy Court keenly recognized, once it determines whether Independent Claims against New GM should get through the bankruptcy "gate," (and the Second Circuit said that they all do), the question of whether New GM is in fact liable should be determined by the nonbankruptcy courts overseeing the lawsuits.

The Second Circuit Opinion also permits all Used Car Purchasers to assert claims against New GM.  New GM's contention that this holding should be limited to Independent Claims is an impermissible attempt to re-litigate a matter already expressly decided by the Second Circuit. Moreover, this holding cannot be limited to Ignition Switch Plaintiffs.  Used Car Purchasers, regardless of the type of defect in their vehicles and regardless of whether they are suing for economic loss or personal injury, had no prepetition contact with Old GM and, thus, their claims fall outside the scope of the Sale Order.

Finally, the Second Circuit Opinion and the Manville and Grumman Olson lines of cases upon which the Second Circuit relied dictate that the Sale Order cannot be applied to bar successor liability or Independent Claims (including punitive damages) against New GM by Post-Closing Accident Plaintiffs.  This is because Post-Closing Accident Plaintiffs are quintessential "future claimants" whose injuries did not occur until after the entry of the Sale Order and who were afforded no due process in connection with the proceedings that resulted in the entry of the Sale Order under which New GM now seeks shelter.  Any language to the

contrary in prior rulings by Judge Gerber was based on faulty reasoning that has been overruled by the Second Circuit Opinion.

## BACKGROUND

### I.      New GM's Motions To Enforce The Sale Order.

In February and March 2014, New GM first publicly disclosed the Ignition Switch Defect.  After the first wave of recalls for the Ignition Switch Defect (approximately 2.1 million vehicles), New GM issued three additional recalls in June and July 2014 affecting approximately 10 million additional vehicles with defective ignition switches substantially similar to the Ignition Switch Defect.[5]  The aggregate number of recalled vehicles (for ignition-switch related and other defects) in the first seven months of 2014 alone was approximately 26 million.[6]

New GM's disclosure of these defects was followed by hundreds of lawsuits seeking to hold New GM responsible for economic losses, personal injuries and wrongful deaths suffered by owners and lessees of defective Old GM and New GM vehicles.

In April and August of 2014, New GM sought to enjoin these actions by filing motions to enforce the Sale Order with respect to: (i) Ignition Switch Plaintiffs; (ii) Ignition Switch Pre-

---

[5]    *See* June 20, 2014 recall notice, attached to the *Declaration of Edward S. Weisfelner in Support of Designated Counsel's Opposition to New GM's Motions for Enforcement of Sale Order and Injunction*, dated December 16, 2014 [ECF No. 13026] (the "**Weisfelner Decl.**"), Ex. G; July 2 and July 3, 2014 recall notices, attached to the Weisfelner Decl. as Ex. H.

[6]    *See Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, dated August 8, 2014 [ECF No. 12826], Ex D ¶ 77 (the "**Stipulations of Fact**").

Closing Accident Plaintiffs;[7] and (iii) certain Non-Ignition Switch Plaintiffs asserting economic

loss claims (but not personal injury or wrongful death claims).[8]

For the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs

subject to New GM's Motions to Enforce, the Bankruptcy Court identified four threshold issues

for consideration (the "**2014 Threshold Issues**").[9]  The identification and consideration of any

additional issues was deferred until resolution of the 2014 Threshold Issues and all rights were

reserved with respect to such issues.  See id.

The Non-Ignition Switch Plaintiffs Motion to Enforce was deferred pending resolution of

the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs Motions to

Enforce.[10]

No motion to enforce the Sale Order was filed against Post-Closing Accident Plaintiffs

until June 1, 2016, when New GM filed motions to enforce against certain Post-Closing Accident

---

[7]   The term "**Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean those plaintiffs asserting personal injury or wrongful death claims in connection with vehicles with the Ignition Switch Defect and an accident that occurred prior to the closing of the § 363 sale.

[8]   See *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [ECF No. 12620] (the "**Ignition Switch Plaintiffs Motion to Enforce**"); *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated Aug. 1, 2014 [ECF No. 12807] (the "**Ignition Switch Pre-Closing Plaintiffs Motion to Enforce**"), *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated Aug. 1, 2014 [ECF No. 12808] (the "**Non-Ignition Switch Plaintiffs Motion to Enforce**").

[9]   These issues were: (i) whether the Ignition Switch and Ignition Switch Pre-Closing Accident Plaintiffs suffered a due process violation in connection with the Sale Order; (ii) if so, what is the proper remedy for that due process violation; (iii) whether any claims against New GM are claims against the Old GM bankruptcy estate; and (iv) if so, should such claims be disallowed or dismissed on grounds of equitable mootness.  See *Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant  to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14 -01929*, dated July 11, 2014 [ECF No. 12770], at 3.  The Bankruptcy Court also requested briefing on the legal standard for claims asserting fraud on the court.  See id.

[10]  See In re Motors Liquidation Co., 529 B.R. at 523.  Again, to avoid any confusion between old defined terms and new defined terms, the Non-Ignition Switch Plaintiffs Motion to Enforce did not apply to plaintiffs asserting personal injury or wrongful death claims for post-sale accidents.  See *supra* note 1.

Plaintiffs.[11]   While litigation was ongoing on the June 2016 Motions to Enforce, the Second

Circuit issued its opinion and that litigation was deferred and ultimately subsumed in the instant

litigation over the 2016 Threshold Issues.[12]

## II.    The April 2015 Decision And June 2015 Judgment.

The April 2015 Decision held that, although the Ignition Switch Plaintiffs and Ignition

Switch Pre-Closing Accident Plaintiffs were known creditors who were denied constitutionally

adequate notice of the 363 sale, they were bound by the successor liability bar in the Sale Order

because they had not demonstrated prejudice from the lack of notice.   See In re Motors

Liquidation Co., 529 B.R. at 525-26.   Similarly, the Bankruptcy Court held that although Used

Car Purchasers were unknown, future creditors who did not (and could not) receive

constitutionally adequate notice of the Sale Order, they were bound by the Sale Order's

successor liability bar.   See id. at 570-72 & n.203.

The Bankruptcy Court also held that the Ignition Switch Plaintiffs were prejudiced to the

extent the Sale Order enjoined causes of action against New GM arising from New GM's

independent post-sale conduct (i.e., Independent Claims).   See id. at 526-27.   As a result, the

Ignition Switch Plaintiffs were free to bring Independent Claims against New GM.   See id. at

527-28.

---

[11]   See Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Courts July 5, 2009 Sale Order And Injunction, and The Rulings in Connection Therewith (Veronica Alaine Fox, Claudia Lemus, Tammie Chapman and Constance Haynes-Tibbetts), dated June 1, 2016 [ECF No. 13633]; Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction, And The Rulings In Connection Therewith, With Respect To Plaintiffs Identified On Schedule "1" Attached Thereto, dated June 24, 2016 [ECF No. 13655] (together, the "**June 2016 Motions to Enforce**").

[12]   Clients represented by Butler Wooten & Peak LLP and Turner & Associates, P.A. (two of the firms representing Post-Closing Accident Plaintiffs here) were the targets of the first of New GM's June 2016 Motions to Enforce.  Goodwin Procter, LLP represented those firms in connection with that litigation and filed a brief in opposition to the first of the June 2016 Motions to Enforce on June 20, 2016 [ECF No. 13642], which is incorporated herein by reference.  Following a hearing on June 27, 2016, the Bankruptcy Court took the matter under submission; however, no ruling was ever issued as the Second Circuit Opinion was issued shortly after the oral argument on July 13, 2016.

In so holding, the Bankruptcy Court made clear that claims by Post-Closing Accident Plaintiffs were never part of those proceedings and stated that:

> There may be misunderstandings as to the matters now before the Court. New GM has already undertaken to satisfy claims for death, personal injury, and property damage in accidents occurring after the 363 Sale—involving vehicles manufactured by New GM and Old GM alike. Except for the *pre*-Sale accidents that are the subject of the Pre-Closing Accident Plaintiffs' contentions, addressed below (where those plaintiffs wish to sue New GM in lieu of Old GM), **this controversy does not involve death, personal injury, or property damage arising in accidents**. Instead it involves only *economic losses* allegedly sustained with respect to Old GM vehicles or parts.

Id. at 521 n.4 (italics in original; underscoring added).

Thereafter, in the May 2015 Decision, the Bankruptcy Court, fully acknowledging that issues related to Non-Ignition Switch Plaintiffs had been deferred, held that "[t]he Non-Ignition Switch Plaintiffs' claims remain stayed" because they had not yet shown a due process violation.[13]

In the June 2015 Judgment, the Bankruptcy Court, without disturbing the stay against the Non-Ignition Switch Plaintiffs, purported to extend the rulings in the April 2015 Decision "that proscribe claims and actions being taken against New GM" to Non-Ignition Switch Plaintiffs.[14] The Bankruptcy Court also ruled in the June 2015 Judgment that:

> if the [April 2015] Decision and [June 2015] Judgment are reversed on appeal such that the appellate court finds that the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs[[15]] can make the allegations, or maintain the lawsuit or claims or causes of action, against New GM and/or the GUC Trust heretofore dismissed or stricken pursuant to this Judgment, all of the Non-Ignition Switch Pre-Closing Accident Plaintiffs' or Non-Ignition Switch Plaintiffs' rights against New GM and/or the GUC Trust that existed prior to the

---

[13]    In re Motors Liquidation Co., 531 B.R. 354, 360 (Bankr. S.D.N.Y. 2015) (the "**May 2015 Decision**").

[14]    See June 2015 Judgment ¶ 13(a).

[15]    Judge Gerber's use of the undefined term "Non-Ignition Switch Pre-Closing Accident Plaintiffs" as separate from "Non-Ignition Switch Plaintiffs" is further evidence that, in connection with the 2014 Threshold Issues, the Bankruptcy Court did not intend the term "Non-Ignition Switch Plaintiffs" to include plaintiffs asserting personal injury or wrongful death claims.

dismissal of their lawsuit or the striking of claims or causes of action pursuant to this Judgment shall be reinstated as if the dismissal or the striking of such claims or causes of action never occurred.[16]

The Bankruptcy Court certified the April 2015 Decision and June 2015 Judgment for direct appeal to the Second Circuit.[17]  Several parties filed notices of appeal and cross-appeal, including the Ignition Switch Plaintiffs, Ignition Switch Pre-Closing Accident Plaintiffs and certain Non-Ignition Switch Plaintiffs.[18]

The Non-Ignition Switch Plaintiffs (*i.e.*, those asserting economic losses) had no need to appeal the April 2015 Decision and June 2015 Judgment because issues related to these plaintiffs had been deferred and the Bankruptcy Court had made clear in paragraph 13(e) of the June 2015 Judgment that any reversal on appeal would inure to the benefit of Non-Ignition Switch Plaintiffs.

The Post-Closing Accident Plaintiffs also had no need to appeal the April 2015 Decision and June 2015 Judgment because (i) they were not parties to the proceedings and no motion to enforce had been filed against them; and (ii) neither the April 2015 Decision nor the June 2015 Judgment addressed post-sale accident claims.

In any event, the Ignition Switch Plaintiffs identified issues on appeal relating to all plaintiffs, regardless of the type of defect in their vehicles.  Clients represented by Gary Peller also raised the issue of whether the Bankruptcy Court could enjoin Independent Claims against New GM for Non-Ignition Switch Plaintiffs.

---

16   See June 2015 Judgment ¶ 13(e)(ii).

17   See In re Motors Liquidation Co., 529 B.R. at 597; *Order, Pursuant to 28 U.S.C. § 158(d), and Fed. R. Bankr. P. 8006(e), Certifying Judgment for Direct Appeal to Second Circuit*, dated June 1, 2016 [ECF No. 13178].

18   See Elliott, 829 F.3d at 152.

Specifically, the following issues were among those designated in the statements of issue

on appeal:

> Did the Bankruptcy Court exceed its jurisdictional authority or otherwise err in holding that the Sale Order may be enforced so as to enjoin claims against New GM based on New GM's own independent, post-Closing acts or conduct?

> Did the Bankruptcy Court err in entering a Judgment providing for enforcement of the Sale Order by enjoining and barring claims asserted against New GM where such clams "concern[] an Old GM vehicle or part," and through the creation of procedures for *staying, striking or dismissing such claims*?

> Did the Bankruptcy Court err in holding that the rulings in the [April 2015] Decision and the [June 2015] Judgment shall apply to any other plaintiffs not represented by Designated Counsel?[19]

## III.    <u>The September 2015 Scheduling Order</u>.

The June 2015 Judgment authorized New GM to serve the June 2015 Judgment and the

April 2015 Decision on parties it believed were pursuing litigation violative of the Bankruptcy

Court's rulings in connection with the 2014 Motions to Enforce.  The purpose of this was to

afford such parties an opportunity to amend their complaints to remove offending language or

file a pleading with the Bankruptcy Court to obtain a ruling that the language was not violative

of prior rulings (*i.e.*, a No Stay, No Strike or Objection Pleading (as defined in the June 2015

Judgment)).  <u>See</u> June 2015 Judgment ¶¶ 8-18.

After the Bankruptcy Court entered its June 2015 Judgment, New GM sent letters to

numerous plaintiffs demanding amendments to their complaints.  Certain of those plaintiffs filed

No Stay, No Strike or Objection Pleadings seeking resolution of the allegations by New GM that

their complaints violated the Bankruptcy Court's rulings.

---

[19]    <u>See</u> *Appellants' Statement of Issues on Appeal and Amended Designation of Items to be Included in the Record on Appeal*, dated July 14, 2015 [ECF No. 13299] (the "**<u>Statements of Issues</u>**") (emphasis added); <u>see also</u> *Elliott Plaintiffs/Appellants' Statement of the Issues and Designation of Items to be Included in the Record on Appeal*, ¶¶ 1-3 dated June 15, 2015 [ECF No. 13207].

To consolidate these proceedings, the Bankruptcy Court entered a Case Management Order on August 19, 2015 [ECF No. 13383] (the "**August 19 Case Management Order**") and, following a hearing on August 31, 2015, entered a scheduling order.[20]

Just like the June 2015 Judgment, the September 2015 Scheduling Order did not mention or purport to address Non-Ignition Switch Plaintiffs asserting personal injury or wrongful death claims against New GM for post-363 sale incidents. Instead, the September 2015 Scheduling Order focused on (i) punitive damages; (ii) imputation of knowledge from Old GM to New GM; (iii) the complaints filed by the plaintiffs in the "Bellwether Cases" (*i.e.*, post-sale Ignition Switch Defect accident cases then pending before the District Court); (iv) the Second Amended Consolidated Complaint filed in the MDL by plaintiffs seeking economic damages from New GM; and (v) complaints filed by the states of California and Arizona seeking economic damages from New GM. See September 2015 Scheduling Order at 1-4.[21]

The September 2015 Scheduling Order also authorized New GM to send a copy of that order "on plaintiffs in any lawsuit where New GM has previously sent a demand letter as authorized by the [June 2015] Judgment" with a cover note explaining the issues to be briefed and argued to the Court pursuant to the September 2015 Scheduling Order.

Although New GM took the position in its correspondence that those plaintiffs that were mailed a copy of the September 2015 Scheduling Order, and who ignored that order, would do so at their peril, the September 2015 Scheduling Order did not use the term "Independent Claim" anywhere in it or describe the substance of "independent claims" as part of the issues to be addressed.

---

[20] *Scheduling Order Regarding Case Management Order Re: No-Strike, No Stay, Objection and GUC Trust Asset Pleading*, dated September 3, 2015 [ECF No. 13416] (the "**September 2015 Scheduling Order**").

[21] In addition, certain plaintiffs represented by Gary Peller submitted briefs on some of the issues identified in the September 2015 Scheduling Order.

Compounding the confusion, many of these plaintiffs received letters from New GM's bankruptcy counsel, King & Spalding, that expressly stated "independent claims" were permitted against New GM.

For example, in a letter dated September 4, 2015 (the "**September 2015 Letter**")[22] from New GM's counsel to counsel for a Non-Ignition Switch Plaintiff who suffered injuries in a post-363 sale accident, which appears to be typical of the correspondence sent by King & Spalding, New GM stated:

> The Bankruptcy Court recently issued the [June 2015] Judgment, which reiterated that "**[e]xcept for Independent Claims** and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order . . . ." . . . To the extent that the Pleading requests punitive damages based on Old GM conduct, such a request is proscribed. Accordingly, the Pleading should be amended so it is consistent with the rulings in the [June 2015] Judgment, [April 2015] Decision, Sale Order and Injunction.

September 2015 Letter at 2 (emphasis added).

The express exclusion of Independent Claims from the catalogue of claims that New GM alleged were still stayed by the Sale Order misled several plaintiffs' lawyers into thinking the September 2015 Scheduling Order did not apply to them.

## IV.    The November 2015 Decision And December 2015 Judgment.

While the Second Circuit appeal was on-going, the Bankruptcy Court entered the November 2015 Decision and December 2015 Judgment. The Bankruptcy Court ruled that the Ignition Switch Plaintiffs and Ignition Switch Post-Closing Accident Plaintiffs could pursue Independent Claims and seek punitive damages against New GM for New GM's post-sale

---

[22]  A copy of the September 2015 Letter is attached hereto as Exhibit A and was previously filed by New GM on June 1, 2016 as Exhibit J to its compendium of exhibits filed in connection with the first of the June 2016 Motions to Enforce [ECF No. 13634-2].

conduct based on, *inter alia*, knowledge it "inherited" from Old GM and knowledge it acquired post-sale.[23]

In the November 2015 Decision the Bankruptcy Court also held that personal injury plaintiffs may pursue claims against New GM based on Old GM's failure to warn of a dangerous condition in a vehicle because such claims were among the liabilities that New GM assumed as part of the 363 sale.  Specifically, the Bankruptcy Court wrote:

> It should be noted, however, that in listing claims that weren't assumed, the Court did not list claims for alleged breaches of a duty to warn.  If there were a duty, under nonbankruptcy law, to warn of the danger of driving a motor vehicle with a known defect, the violation of that duty to warn, when coupled with subsequent death or injury, might reasonably be argued to have had a causal effect on any death or personal injury that could have been avoided by the warning.  Violations of any duty to warn could be said to provide further support for any claims for death or personal injury that would be actionable even as classic Product Liabilities Claims. The Court expresses no view as whether, as a matter of nonbankruptcy law, failures to warn are actionable, or whether the requisite duties exist. But they pass muster under Clause [3] [of the definition of Assumed Liabilities in the Sale Agreement] and get through the bankruptcy court gate.

In re Motors Liquidation Co., 541 B.R. at 128-29.  The Bankruptcy Court also held that New GM could be held liable for the Independent Claim of breach of its <u>own</u> failure to warn of a dangerous defect (if such a duty existed under applicable nonbankruptcy law).  <u>See</u> <u>id.</u> at 129.

However, the Bankruptcy Court found that Non-Ignition Switch Plaintiffs could not bring Independent Claims because they had not yet tried to show a due process violation.  <u>See</u> <u>id.</u> at 130 n.70.[24]

---

23    <u>See</u> December 2015 Judgment ¶¶ 4, 7-13.

24    Again, the term "Non-Ignition Switch Plaintiffs" was at this time the <u>old</u> definition and did not include Post-Closing Accident Plaintiffs, who contend that they were not part of the briefing that led to the November 2015 Decision.  <u>See</u> *supra* n.1.

## V.    <u>The Second Circuit Opinion</u>.

The Second Circuit Opinion held that all Independent Claims, no matter what stripe of vehicle, and all claims of Used Car Purchasers are "outside the scope of the Sale Order's 'free and clear' provision." <u>Elliott</u>, 829 F.3d at 157-58.  In other words, the Second Circuit plainly held that the Bankruptcy Court could not, in connection with the 363 sale, prospectively exonerate New GM from conduct that had not yet occurred and bar claims against New GM by persons that had not yet been injured by such conduct.

The Second Circuit explained that the Sale Order could only approve a sale free and clear of the successor liability claims of claimants who had "some contact or relationship" with Old GM and whose claims arose pre-petition or resulted from pre-petition conduct fairly giving rise to the claim.  <u>See</u> <u>id.</u> at 156.  The Sale Order does not, and could not, apply to any Independent Claims because they are, by definition, post-petition claims based on the post-petition conduct of New GM.  <u>See</u> <u>id.</u> at 157.  Specifically, the Second Circuit wrote:

> [I]ndependent claims do not meet the Code's limitation on claims.  By definition, independent claims are based on New GM's own post-closing wrongful conduct . . . .  These sorts of claims are based on New GM's *post*-petition conduct, and are not claims that are based on a right to payment that arose before the filing of the petition or that are based on pre-petition conduct.  Thus, these claims are outside the scope of the Sale Order's "free and clear" provision.

<u>Id.</u>

In addition, the Second Circuit held that the Sale Order is inapplicable to Used Car Purchasers because "[t]hey had no relation with Old GM prior to bankruptcy."  <u>See</u> <u>id.</u>

The Second Circuit held that successor liability claims arising from the Ignition Switch Defect fell within the scope of the Sale Order.  <u>See</u> <u>id.</u> at 156-57.  However, the Sale Order could not be enforced to enjoin these claims because there was a due process violation.  <u>See</u> <u>id.</u> at 166.

The Second Circuit did not rule on whether successor liability claims of Non-Ignition Switch Plaintiffs could proceed, but vacated the May 2015 Decision enjoining these claims and remanded for further proceedings consistent with the Second Circuit Opinion.  See id.

New GM has filed a petition for writ of *certiorari* with the United States Supreme Court challenging the Second Circuit's due process ruling.[25]  The petition does not challenge the Second Circuit's rulings that Independent Claims and Used Car Purchasers' claims are outside the scope of the Sale Order.  See id.

## ARGUMENT

### I.    Threshold Issue One.[26]

Threshold Issue One was raised by Judge Furman and concerns the appeal between Benjamin Pillars and New GM.[27]  Plaintiffs reserve all rights with respect to this issue to the extent that the definitions of "Ignition Switch Plaintiffs" and "Non-Ignition Switch Plaintiffs" in the Bankruptcy Court's prior rulings bear on the determination of the remaining 2016 Threshold Issues.

As stated in footnotes 14 and 23 above, however, it is abundantly clear from Judge Gerber's prior decisions and judgments that the term "Non-Ignition Switch Plaintiffs" as used in the April 2015 Decision, the June 2015 Judgment, the November 2015 Decision, and the December 2015 Judgment was limited to plaintiffs with claims for economic loss and did not

---

[25]  See Petition for Writ of Certiorari, General Motors LLC v. Elliott, No. 16-764 (Dec. 13, 2016).

[26]  "In the context of (a) the April 2015 Decision / June 2015 Judgment, and (b) the November 2015 Decision / December 2015 Judgment, are Ignition Switch Plaintiffs only those plaintiffs that are asserting claims against New GM based on an "Ignition Switch" in a "Subject Vehicle," and all other plaintiffs are Non-Ignition Switch Plaintiffs?  If that is not correct, what did the Bankruptcy Court mean when it used the terms Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs in (a) the April 2015 Decision / June 2015 Judgment, and (b) the November 2015 Decision / December 2015 Judgment?"  Order to Show Cause at p. 2 ¶ 1.

[27]  Order, General Motors LLC v. Pillars (In re Motors Liquidation Co.), 15-cv-8432(JMF) (S.D.N.Y. Sept. 7, 2016).

include plaintiffs pursuing personal injury or wrongful death claims.  Any attempt by New GM

to bootstrap a revised meaning of the term Non-Ignition Switch Plaintiffs to retroactively apply

prior rulings implicating that definition to personal injury and wrongful death claims would be

improper and should be rejected.

## II.    Threshold Issue Two: Part One.[28]

### A.    The Non-Ignition Switch Plaintiffs May Assert Independent Claims Under The Plain Meaning Of The Second Circuit Opinion.

The Second Circuit held that "[independent] claims are outside the scope of the Sale

Order's 'free and clear' provision" and, thus, "could not be enjoined by enforcing the Sale

Order."  Elliott, 829 F.3d at 154, 157.  Interpreting the plain meaning of this holding can only

lead to the conclusion that all Non-Ignition Switch Plaintiffs can assert Independent Claims.

The starting point for a court to interpret any language is its plain meaning.  See City of

Hartford v. Chase, 942 F.2d 130, 135 (2d Cir. 1991) ("[T]he Order must be interpreted as it[s]

plain language dictates . . . .");  In re Dynegy Inc., 486 B.R. 585, 591 (Bankr. S.D.N.Y. 2013)

("When interpreting orders, the Court should look first to the plain meaning of the language of

the order.");  Thaler v. Lindo (In re Kenliworth Sys. Corp.), 204 B.R. 665, 670 (E.D.N.Y. 1997)

("When construing the terms of an order . . . 'deference is to be paid to the plain meaning of the

language and normal usage of the terms.'" (citation omitted)).

---

[28] "Are Non-Ignition Switch Plaintiffs able to assert Independent Claims against New GM based solely on New GM's conduct because (a) the Opinion permits such claims to be asserted, and/or (b) the Sale Order cannot bar Post-Closing Accident Plaintiffs in non-Subject Vehicles from asserting such claims, and/or (c) the Post-Closing Accident Plaintiffs in non-Subject Vehicles are not bound by the November 2015 Decision / December 2015 Judgment? or Are Non-Ignition Switch Plaintiffs barred from asserting Independent Claims against New GM either because (a) other than those plaintiffs represented by Mr. Peller in the Elliott, Sesay and Bledsoe cases that appealed the April 2015 Decision/June 2015 Judgment, they did not appeal the April 2015 Decision/June 2015 Judgment to the Second Circuit, and therefore the Opinion does not apply to them, and/or (b) they did not appeal the November 2015 Decision/December 2015 Judgment and/or the Opinion did not affect the rulings in the November 2015 Decision/December 2015 Judgment?"  Order to Show Cause at p. 2 ¶ 2.

Here, the Second Circuit Opinion explains that "[a] sale pursuant to § 363(b) may be made 'free and clear of any interest in [property of the estate]' . . . ." Elliott, 829 F.3d at 154 (citing 11 U.S.C. § 363(f)). "[S]uccessor liability claims can be 'interests' when they flow from a debtor's ownership of transferred assets. But successor liability claims must also still qualify as 'claims' under Chapter 11." Id. at 155 (internal citation omitted). Under Chapter 11, "[a] claim is (1) a right to payment (2) that arose before the filing of the petition." Id. at 156.

The Second Circuit applied this law to determine if Independent Claims qualify as "claims" against which a free and clear bar may apply. See id. at 157. The Second Circuit defined the term "Independent Claims" as "claims based on New GM's own post-closing wrongful conduct." Id. The Second Circuit held that "[t]hese sorts of claims are based on New GM's *post*-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on prepetition conduct. Thus, ***these claims are outside the scope of the Sale Order's 'free and clear' provision*." Id. at 157 (emphasis added).

The force of the Second Circuit's logic is irrefutable. Prospective releases from future tortious and injurious conduct are well beyond the jurisdiction of any court (not just the Bankruptcy Court) as well as against public policy. The moral hazard created by permitting such orders would be incalculable.

Under the plain meaning of the Second Circuit Opinion, any claim based on New GM's post-petition conduct is not a "claim" under Chapter 11 and not an "interest" that can be enjoined by a Bankruptcy Code Section 363(f) sale. Thus, all Independent Claims fall outside the scope

of the Sale Order, including any and all of the Non-Ignition Switch Plaintiffs' Independent Claims.[29]

A plain meaning interpretation can be reinforced by looking to examples provided in the document.  See Estate of Mantle v. Rothgeb, 537 F. Supp. 2d 533, 539 (S.D.N.Y. 2008) (finding that plain meaning of contract as permitting the production of merchandise only if it referred to a particular movie was reinforced by the identification of clothing bearing that movie's logo as an example of permitted merchandise in the contract).  Here, the Second Circuit Opinion provided an example of an independent claim: "claims involv[ing] misrepresentations by New GM as to the safety of Old GM cars."  Elliott, 829 F.3d at 157.  This example demonstrates that the "independence" of a claim relates to whether the claim is predicated on New GM conduct—not the type of claimant.

New GM contends that Non-Ignition Switch Plaintiffs cannot assert Independent Claims. This contention requires rewriting the Second Circuit Opinion's definition of Independent Claims to be *Ignition Switch Plaintiffs'* Independent Claims.  Courts routinely reject interpretations that impose limitations that do not exist in the materials being interpreted.  See, e.g., Scott v. City of N.Y., 592 F. Supp. 2d 475, 485 (S.D.N.Y. 2008) (rejecting argument that compensatory time did not qualify as "compensation" under statute that did not limit the form that compensation must take); Ubakanma v. Midwood Chayin Aruchim, No. 09-cv-2647, 2010 WL 1206500, at *2 (E.D.N.Y. Mar. 29, 2010) (rejecting argument that plaintiff's agreement not to assert any federal cause of action arising from a set of facts only applied to the remand action where the agreement contained no such limitation).  Likewise, the Bankruptcy Court should

---

[29] Moreover, by expressly holding that "independent claims do not meet the Code's limitation on claims," id., the Second Circuit in effect held that orders that purport to impair the rights of non-debtors concerning those claims are beyond the Bankruptcy Court's subject matter jurisdiction.

reject any attempt to graft on limitations that do not appear in the Second Circuit Opinion as to which plaintiffs may assert Independent Claims.[30]

### B.    The Mandate Rule Requires That The Bankruptcy Court Adhere To The Second Circuit's Ruling That Independent Claims Cannot Be Enjoined.

The plain language of the Second Circuit Opinion permits Non-Ignition Switch Plaintiffs to assert Independent Claims.  On remand, the Bankruptcy Court must adhere to this ruling under the mandate rule.  The mandate rule, a branch of the law of the case doctrine, requires a lower court to give the "express terms" and the "spirit" of the appellate court's mandate "full effect." See Puricelli v. Argentina, 797 F.3d 213, 218-19 (2d Cir. 2015) (holding that the district court erred in failing to follow the mandate of the Second Circuit by reconsidering an issue upon which the Second Circuit "provided explicit instructions conclusively addressing the matter"); Kidder, Peabody & Co. v. Maxus Energy Corp. (In re Ivan F. Boesky Sec. Litig.), 957 F.2d 65, 69 (2d Cir. 1992) ("The district court's actions on remand should not be inconsistent with either the express terms or the spirit of the mandate."); Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP), 809 F.3d 94, 98-99 (2d Cir. 2015) (explaining that an lower court is precluded from relitigating "matters expressly decided by the appellate court" and "issues impliedly resolved by the appellate court").

The lower court "'must always look to the opinion to interpret the mandate.'"  APL Co. Pte. Ltd v. Blue Water Shipping U.S. Inc., 779 F. Supp. 2d 358, 367 (S.D.N.Y. 2011) (citation omitted).  Here, the Second Circuit decided the issue of whether the Sale Order enjoined Independent Claims.  See In re Motors Liquidation Co., 829 F.3d at 154-58.  The Second Circuit held that such claims could not be enjoined.  See id. at 158.  To give the express terms and spirit

---

[30]  Even if the Bankruptcy Court is inclined to consider the narrow reading advanced by New GM, the logic of the Second Circuit's analysis cannot be ignored.  Any court that revisits the issue of Independent Claims is not writing on a blank slate and would be hard pressed to conclude that other claimants are barred while Ignition Switch Plaintiffs are not.

of the Second Circuit Opinion full effect, all Non-Ignition Switch Plaintiffs must be permitted to assert Independent Claims.

Moreover, the Second Circuit vacated the May 2015 Decision to enjoin the claims of Non-Ignition Switch Plaintiffs and remanded "for further proceedings consistent with this opinion." See id. at 166. Thus, the Bankruptcy Court's mandate is to determine what claims Non-Ignition Switch Plaintiffs may bring against New GM—not to upend the plain meaning of the Second Circuit Opinion permitting all Independent Claims.

## C.    The Second Circuit Opinion "Wipes Out" Inconsistent Judgments.

New GM contends that the Second Circuit Opinion is inapplicable to Non-Ignition Switch Plaintiffs who did not appeal the April 2015 Decision and June 2015 Judgment. In addition, New GM contends that the November 2015 Decision and December 2015 Judgment somehow supersede the Second Circuit Opinion because the Non-Ignition Switch Plaintiffs did not appeal particular rulings therein.

Here, even if Non-Ignition Switch Plaintiffs did not file petitions or cross-petitions for leave to appeal to the Second Circuit (which certain of them did), they should still obtain the benefits of the Second Circuit Opinion with respect to Independent Claims. This outcome is appropriate under the long-standing rule that "a nonappealing party will not benefit from a reversal or modification of a judgment in favor of an appealing party, *unless the reversal 'wipes out all basis for recovery against a non-appealing, as well as against an appealing [party]'* . . . ." Hegger v. Green, 646 F.2d 22, 30 (2d Cir. 1981) (emphasis added).

Where the appellate court's ruling renders a judgment erroneous, that judgment is wiped out against both appealing and non-appealing parties. See id. at 30-31 (eliminating plaintiff's recovery against non-appealing defendant for loss of consortium where the Second Circuit's

ruling "wipe[d] out" the basis for such recovery); <u>Barnett v. Jaspan (In re Barnett)</u>, 124 F.2d

1005, 1008-09 (2d Cir. 1942) (ordering the reversal of an order against non-appealing parties

where, had those parties appealed, the court would have held the order erroneous as to them as

well); <u>Bank of China, N.Y. Branch v. NBM LLC</u>, No. 01 Civ. 0815 (DC), 2004 WL 1907308, at

*4 (S.D.N.Y. Aug. 26, 2004) (vacating judgment against non-appealing defendants where, under

the Second Circuit's ruling that the district court's instruction to the jury was in error, "the jury

instruction was erroneous for all defendants and not just the appealing defendants").

       This doctrine is well-founded.  Its purpose is to prevent the inequitable and nonsensical

result of lower courts giving an erroneous ruling continued legal effect.  <u>See</u> <u>In re Barnett</u>, 124

F.2d at 1008-09 ("[T]he quite naturally embarrassing questions which would confront the state

court if the order, stigmatized as erroneous, remains partially in effect, are patent."); <u>Daniels v.

Gilbreath</u>, 668 F.2d 477, 480 (10th Cir. 1982) (citing <u>In re Barnett</u>, 124 F.2d 1005) ("In as much

as we have concluded that neither the [appealing party] nor the [non-appealing party] is liable as

a matter of law, it makes no sense to allow the judgment against the [non-appealing party] to

stand.").

       For example, in <u>Bank of China, N.Y. Branch v. NBM LLC</u>, a jury rendered a verdict

against defendants and the District Court entered a final judgment.  <u>See</u> <u>Bank of China, N.Y.

Branch</u>, 2004 WL 1907308, at *1.  Some defendants appealed, while others did not.  <u>See</u> <u>id.</u>

Following the Second Circuit's reversal and remand, the plaintiff contended, *inter alia*, that the

reversal did not extend to the non-appealing defendants.  <u>See</u> <u>id.</u> at *3.  The District Court

rejected this argument because the error identified by the Second Circuit "wipe[d] out" all bases

for recovery against the non-appealing parties.  <u>See</u> <u>id.</u> at *4.

Similarly, in In re Barnett, a debtor assigned her interest in her father's estate to her mother. See In re Barnett, 124 F.2d at 1006. After the District Court held that the assignment was invalid, the debtor, but neither her mother nor the executor of her father's estate, appealed. See id. at 1006-07. The Second Circuit found that the assignment was valid and reversed as to both the appealing and non-appealing parties. See id. at 1008-09. The Second Circuit explained that, had the non-appealing parties appealed, "it is clear, from our opinion that we would have held the order erroneous as to them." See id. at 1008-09.

The Second Circuit Opinion eliminates any basis for the Bankruptcy Court to enjoin Independent Claims. See Elliott, 829 F.3d at 154-58. To bind Non-Ignition Switch Plaintiffs would be the perpetuation of an error that the Second Circuit forcefully wiped out by holding that Independent Claims "are outside the scope of the Sale Order's 'free and clear' provision." See id. at 157.

Permitting all Non-Ignition Switch Plaintiffs to obtain the benefit of the Second Circuit Opinion is particularly appropriate in this case. The primary purpose in preventing non-appealing parties from obtaining the benefit of an appellate decision is to provide the prevailing party security in rights under a judgment absent a timely appeal and the opportunity to defend the judgment. See Bhd. of Maint. of Way Emps. v. St. Johnsbury & Lamoille Cty. R.R./M.P.S. Assocs., Inc., 806 F.2d 14, 16 (2d Cir. 1986). That concern is not present here. Rather, whether any plaintiff could pursue Independent Claims was identified as an issue on appeal and addressed

22

in the Second Circuit briefs.[31]   New GM had every opportunity to defend its position that the

Non-Ignition Switch Plaintiffs should be enjoined from asserting Independent Claims.   Its

opposition failed.

Reversing any judgment barring Independent Claims fulfills the Bankruptcy Court's

responsibility "to decide cases correctly . . . by applying correct legal rules in an effort to do

justice to the parties affected by their decisions."   In re Barnett, 124 F.2d at 1010.   Because the

Second Circuit Opinion eliminates any bar on Independent Claims, it logically must remove the

bar on Non-Ignition Switch Plaintiffs, even those who did not appeal.   And New GM offers no

argument as to why an erroneous and reversed lower court ruling can be applied against

individuals who were not even parties to the lower court proceedings.

### D.    Enforcing The Sale Order To Enjoin The Non-Ignition Switch Plaintiffs' Independent Claims Would Violate Due Process.

The Non-Ignition Switch Plaintiffs can assert Independent Claims even if, *arguendo*, the

November 2015 Decision and December 2015 Judgment were not wiped out with respect to

Non-Ignition Switch Plaintiffs by the Second Circuit Opinion.   Nothing in these rulings prevents

Non-Ignition Switch Plaintiffs from seeking relief from the Sale Order on due process grounds.[32]

---

[31]   See, e.g., Statement of Issues at 2; Br. for Appellant Ignition Switch Plaintiffs, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Nov. 16, 2015) (ECF No. 235), at 39-44 (arguing that the Independent Claims of any plaintiff cannot be enjoined by the Sale Order).   In connection with the litigation over the 2014 Threshold Issues, the Bankruptcy Court instructed the plaintiffs to work together to minimize the number of briefs being filed.   See, e.g., *Scheduling Order Regarding Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce this Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, at 2 [ECF No. 12897] (directing groups of plaintiffs to coordinate their efforts in these proceedings with those of the Ignition Switch Plaintiffs "to avoid repetition and duplicative arguments").   This naturally limited the universe of potential appellants and supports the conclusion that the Ignition Switch Plaintiffs were appealing for the benefit of the plaintiff group at large (including Non-Ignition Switch Plaintiffs).

[32]   The Non-Ignition Switch Plaintiffs reserve all rights to further prove that they were known creditors who suffered a due process violation.   In any event, as discussed below in Section II.G, Independent Claims by definition are not claims against the debtor.   Therefore, the question of whether the claimant was a known or unknown creditor of Old GM has no relevance to the assertion of Independent Claims against New GM or the issue of subject matter jurisdiction.

See In re Motors Liquidation Co., 541 B.R. at 130 n.70 (holding that Non-Ignition Switch Plaintiffs' claims would continue to be barred under the Sale Order unless and until they demonstrate a due process violation).  The Non-Ignition Switch Plaintiffs cannot be bound by the Sale Order as a matter of due process to the extent that the Sale Order bars Independent Claims.

When a debtor seeks relief against third parties, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950).  "[A] party that did not receive adequate notice of bankruptcy proceedings [can] not be bound by orders issued during those proceedings."  Morgan Olson LLC v. Frederico (In re Grumman Olson Indus., Inc.), 467 B.R. 694, 708-09 (S.D.N.Y. 2012) (citing Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 600 F.3d 135, 153-54, 158 (2d Cir. 2010) ("**Manville IV**")).

Here, the Non-Ignition Switch Plaintiffs held future claims as of the date of the Sale Order and had no notice that the Sale Order would purportedly bar their right to sue New GM for its future wrongful conduct.  See Manville IV, 600 F.3d at 156-58 (finding that publication notice was insufficient to notify insurer that insurer's future non-derivative third party claims would be barred).  Consequently, the Non-Ignition Switch Plaintiffs cannot be bound by any aspect of the Sale Order that purports to limit their ability to pursue Independent Claims.

The issue of whether a Bankruptcy Code Section 363 sale can strip away rights from future creditors was thoroughly addressed in Grumman.  That case involved a truck parts manufacturer who sold its assets free and clear of successor liability claims in a Bankruptcy Code Section 363 sale.  See In re Grumman Olson Indus., Inc., 467 B.R. at 697.  Years after the sale closed, the plaintiff was injured while driving a truck containing parts manufactured by the

seller and brought claims against the purchaser under successor liability theories. See id. The purchaser sought to bar the suit under the sale order's injunction. See id. The District Court found that the sale order could not be enforced to enjoin plaintiff's claims, reasoning that enforcing such an injunction against the plaintiff, whose identity was unknown and unknowable at the time of the sale, would violate due process. See id. at 696.

Although Grumman concerned successor liability claims brought by a future claimant against a purchaser, enforcing an injunction to enjoin claims for a purchaser's own post-sale conduct equally violates due process, as demonstrated in Manville. In that case, the bankruptcy court entered orders in 1986 as part of a settlement among Manville (the debtor), certain of its insurers, and certain asbestos claimants, enjoining claims related to Manville's insurance policies against the settling insurers (including Travelers). See Manville IV, 600 F.3d at 139-42. Years later, Travelers sought entry of a "clarifying order" to clarify that "direct" claims against Travelers were barred by the 1986 orders. See id. at 143. In response, Chubb contended, inter alia, that enforcing the 1986 orders to enjoin its non-derivative third party claims against Travelers violated Chubb's due process rights as a future claimant. See id. at 143, 151.

On remand from the Supreme Court to consider Chubb's due process argument, the Second Circuit held that "there can be little doubt that the publication notice employed by the bankruptcy court" in connection with the 1986 orders "was insufficient to bind Chubb" to the interpretation of those orders as barring direct claims. Id. at 157. Chubb could have neither contemplated that its future third party claims would be barred nor "predict[ed] that the bankruptcy court would exceed its in rem jurisdiction in entering the 1986 Orders." Id. at 157-58. Further, there was no indication that any other party anticipated these claims, much less spoke to such claims, during the proceedings leading up to the issuance of the 1986 orders. See

id. at 156.   Accordingly, Chubb did not receive constitutionally sufficient notice of the 1986

orders and was not bound by the terms of the orders.   See id. at 158.

It is notable that in the Manville cases, as here, there was healthy skepticism that the

language of the initial order even reached independent claims.[33]  Nevertheless, in Manville IV, the

Second Circuit observed that, at a minimum, Chubb would have to have been "prescient" in 1986

when the initial order was entered to foresee that 20 years later the bankruptcy court overseeing the

Manville case would interpret the 1986 order to bar independent claims.[34]

Likewise, the language of the Sale Order in this case does not appear to reach Independent

Claims and, just as it did in Manville IV, the Second Circuit has again made the point that the

language of the Sale Order on its face does not bar Independent Claims.[35]

Here, just as in Manville IV, an opportunistic litigant has returned years later to the court that

issued the initial injunction and seeks "clarification" that an old order barred claims that were not

mentioned in the order, and that could not have been barred in the first place due to the court's lack

of subject matter jurisdiction to bar "independent" claims by a non-debtor against another non-

debtor.

Further, while the claims at issue in Manville IV related to Traveler's conduct prior to the

entry of the 1986 orders, Independent Claims are based on post-sale conduct by a purchaser

(New GM) that did not yet own the assets and was not yet operating at the time of the Section

363 sale.   In addition, the post-sale accidents that are the underpinning of the Independent

Claims of the Post-Closing Accident Plaintiffs had not yet occurred at the time of the Sale

---

[33]  See Bailey, 557 U.S. at 165-66 (Stevens, J., dissenting) ("The 1986 Insurance Settlement Order did not bar independent actions, and the Bankruptcy Court lacked any basis for enjoining those actions in 2004.").

[34]  See Manville IV, 600 F.3d at 157.

[35]  Elliott, 829 F.3d at 153 ("The Sale Order, on its face, does not bar independent claims against New GM; instead it broadly transfers assets to New GM 'free and clear of liens, claims, encumbrances, and other interests . . . , including rights or claims . . . based on any successor or transferee liability.").

Hearing. This highlights the inability to provide notice that claims that did not yet exist with respect to conduct that had not yet occurred would be barred.

Like Chubb in Manville IV and the plaintiff in Grumman, the Non-Ignition Switch Plaintiffs had no way of being informed in 2009 that their future rights to sue New GM for Independent Claims were being stripped away as part of the 363 sale.  In addition, no one raised the issue of Independent Claims in the proceedings leading up to the Sale Order.  See In re Motors Liquidation Co., 529 B.R. at 526-27.  Thus, for due process reasons, the Independent Claims of the Non-Ignition Switch Plaintiffs cannot be enjoined under the Sale Order.

**E.     The Bankruptcy Court Lacks Jurisdiction To Enjoin Independent Claims.**

In any event, Non-Ignition Switch Plaintiffs should be permitted to pursue Independent Claims because shielding New GM (a non-debtor) from its own post-sale tortious conduct towards non-debtor plaintiffs is beyond the subject matter jurisdiction of the Bankruptcy Court.

Indeed, the Second Circuit effectively held that this was purely a question of subject matter jurisdiction when it wrote that "independent claims do not meet the Code's limitation on claims" and that Independent Claims are "outside the scope of the Sale Order's 'free and clear' provision." Elliott, 829 F.3d at 157.

While a bankruptcy court has jurisdiction to interpret and enforce its own orders, this jurisdiction "'is itself limited by the jurisdictional limits of the order sought to be enforced.'" Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 517 F.3d 52, 60, 65 & n.22 (2d Cir. 2008) ("**Manville III**"), rev'd on other grounds sub. nom. Travelers Indem. Co. v. Bailey, 557 U.S. 137 (2009).  Where a court is called upon to interpret a prior order to determine if claims fall within the scope of an injunction, a separate inquiry into the court's subject matter jurisdiction to enjoin such claims is required.  See id.

27

The Bankruptcy Court does not have subject matter jurisdiction to protect non-debtor New GM by limiting the rights of any plaintiff to assert Independent Claims. Subject matter jurisdiction of bankruptcy courts is limited to "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Independent Claims brought against a non-debtor for its own post-sale conduct cannot be said to "arise in" or "under" Title 11. See Baker v. Simpson, 613 F.3d 346, 351 (2d Cir. 2010) ("arising in" jurisdiction includes claims that "would have no existence outside of the bankruptcy"); Zerand-Bernal Grp. v. Cox, 23 F.3d 159, 162 (7th Cir. 1994) ("arising under" jurisdiction "is limited to questions that arise during the bankruptcy proceeding and concern the administration of the bankrupt estate, such as whether to discharge a debtor").

Under controlling Second Circuit precedent, "'[a] bankruptcy court only has jurisdiction to enjoin third party non-debtor claims that directly affect the res of the bankruptcy estate.'" In re Residential Capital, LLC, 512 B.R. 179, 188 (Bankr. S.D.N.Y. 2014) (quoting Manville IV, 600 F.3d at 152); see also Manville III, 517 F.3d at 66-68 (holding that, despite a "common nucleus of operative facts involving" the debtor and the insurer, bankruptcy order enjoining third-party claims against insurer predicated on insurer's independent misconduct were unrelated to res of the estate and outside the scope of the bankruptcy court's injunction power);[36] Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.), 676 F.3d 45, 61-62 (2d Cir. 2012) (bankruptcy court lacks jurisdiction to enjoin a claim against a third party where such claim would not have an effect on the res of the bankruptcy estate); In re 1031 Tax Grp., LLC,

---

[36] The Supreme Court reversed Manville III on other grounds, finding that the bankruptcy order was binding on res judicata grounds. See Bailey, 557 U.S. at 151-52. On remand, the Second Circuit found that the objecting party could attack the order because it had suffered a due process violation and adopted its prior holding. See Manville IV, 600 F.3d at 148, 158. As discussed supra Section II.D, the Non-Ignition Switch Plaintiffs are able to demonstrate a due process violation. Outside of the context of a collateral attack on a final order governed by res judicata principles, a lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party. See Lyndonville Savings Bank & Tr. Co. v. Lussier, 211 F. 3d 697, 700 (2d Cir. 2000).

No. 10 Civ. 2799 (RJH), 2011 WL 1158445, at *3 (S.D.N.Y. Mar. 29, 2011) ("[F]ederal courts are without jurisdiction to enjoin actions against third-parties not in bankruptcy when those actions are premised upon an 'independent legal duty.'"); O'Toole v. McTaggart (In re Trinsum Grp., Inc.), Adv. No. 11-01284 (MG), 2013 WL 1821592, at *5 (Bankr. S.D.N.Y. Apr. 30, 2013) (explaining that the bankruptcy court only has subject matter jurisdiction to approve non-debtor releases if the third party claims "directly affect the *res* of the bankruptcy estate").

Here, the Independent Claims neither seek to recover against, nor have any impact on, the Old GM bankruptcy estate. Any damages and statutory penalties New GM may ultimately be required to pay should the claims prevail will not be paid out of any assets retained by the Old GM estate. Cf. In re Quigley Co., 676 F.3d at 54 (bankruptcy court had jurisdiction where adverse judgment against non-debtor could be satisfied from trust within debtor's estate). Further, permitting the claims to proceed against New GM will neither impair the distribution of assets to Old GM's creditors, nor threaten the successful administration of the estate. Cf. id. at 57 (finding that bankruptcy courts may have jurisdiction over actions against non-debtors in order to "'protect[] the assets of the estate' so as to ensure a fair distribution of those assets at a later point in time"). The Bankruptcy Court simply does not have jurisdiction to enjoin Independent Claims.[37]

---

[37] Although under some circumstances a bankruptcy court can approve a third party release in connection with confirmation of a plan of reorganization, in those cases (unlike in this case) subject matter jurisdiction exists because there is at least related-to jurisdiction (which is lacking here). More importantly, the claims to be released in the third party release context already exist, which is not the case here because at the time the Bankruptcy Court entered the Sale Order, the accidents underlying the Post-Closing Accident Plaintiffs' claims had not yet occurred and New GM's wrongful conduct underlying any plaintiffs' Independent Claims had not yet occurred.

**F.    In The Alternative, Non-Ignition Switch Plaintiffs Should Be
Granted Relief From Any Bar On Asserting Independent Claims In The
November 2015 Decision And December 2015 Judgment Under Rule 60(b).**

Assuming, *arguendo*, that the November 2015 Decision and December 2015 Judgment
could be applied to bar the Non-Ignition Switch Plaintiffs' Independent Claims, the Non-Ignition
Switch Plaintiffs should be granted relief from these decisions under Rule 60(b)(5) or 60(b)(6).

**1.    Non-Ignition Switch Plaintiffs Are Seeking
Rule 60(b) Relief Within A Reasonable Time.**

Relief under Rule 60(b)(5) and 60(b)(6) must be sought "within a reasonable time."  Fed.

R. Civ. P. 60(c)(1).  What is a reasonable time depends upon the facts of each case, "including

the length and circumstances of the delay and the possibility of prejudice to the opposing party."

Montco, Inc. v. Barr (In re Emergency Beacon Corp.), 666 F.2d 754, 760 (2d Cir. 1981).

"Courts in this district have recognized 18 months as a 'reasonable time' for bringing a

Rule 60(b)(6) motion, and have required parties who delayed for more than 18 months, but not

less, to demonstrate good cause for the delay."  Wright v. Poole, 81 F. Supp. 3d 280, 290

(S.D.N.Y. 2014); see also In re Emergency Beacon Corp., 666 F.2d at 760 (finding that twenty-

six months was not an unreasonable delay).

Where the basis for Rule 60(b) relief is a later ruling, the relevant delay is measured from

the time of the later ruling.  See Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984) (holding

that Rule 60(b)(5) and 60(b)(6) motion seeking relief on the basis of an opinion vacating a

judgment against a separate party was timely when filed eleven weeks after the Supreme Court

denied certiorari to that opinion); cf. Lightfoot v. Union Carbide Corp., No. 92 Civ. 6411 (HB),

1997 WL 752357, at *3 (S.D.N.Y. Dec. 2, 1997) (explaining that where a Rule 60(b) motion is

brought as a result of a change in law, "the Court must determine whether [plaintiff] filed its

motion within a reasonable time after the purported change in law occurred").

Here, the December 2015 Judgment was entered less than fifteen months ago and a little

over a year prior to entry of the Order to Show Cause setting forth the briefing schedule on the

2016 Threshold Issues.  Further, as set forth below, the basis for Rule 60(b) relief is the Second

Circuit Opinion.  Two days after entry of the Second Circuit Opinion, the Bankruptcy Court

instructed certain parties to meet and confer on the issues to be addressed on remand, initiating a

process that resulted in the issuance of the Order to Show Cause approximately two months after

the Second Circuit issued its mandate.  Under these circumstances, Rule 60(b) relief was sought

within a reasonable time.

**2.      Rule 60(b) Relief Should Be Granted Because The
November 2015 Decision And December 2015 Judgment
Are Based On Rulings Reversed By The Second Circuit.**

Rule 60(b)(5) of the Federal Rules of Civil Procedure provides for relief "from a final

judgment, order, or proceeding" that "is based on an earlier judgment that has been reversed or

vacated. . . ."  Fed. R. Civ. P. 60(b)(5).  "[A] decision is 'based on' a prior judgment when it is 'a

necessary element of the decision . . . .'"  Flowers v. S. Reg'l Physician Servs., Inc., 286 F.3d

798, 801 (5th Cir. 2002); see also Gillispie v. Warden, London Corr. Inst., 771 F.3d 323, 327

(6th Cir. 2014) (explaining that Rule 60(b)(5) provides relief where "the later judgment is based

on an assumption about the validity of the earlier one; and . . . that assumption proves

incorrect").

For example, in Lowry Dev., LLC v. Groves & Assocs. Ins., Inc., the district court

granted partial summary judgment against an insurer on the ground that plaintiff's insurance

policy provided coverage for wind damage.  See Lowry Dev., LLC v. Groves & Assocs. Ins.,

Inc., 690 F.3d 382, 384 (5th Cir. 2012).  In light of this determination, the district court

dismissed a claim against the plaintiff's insurance agent for negligently failing to obtain wind

31

coverage. <u>See</u> <u>id.</u> The insurer appealed and the Fifth Circuit reversed. <u>See</u> <u>id.</u> Given the reversal of the ruling that the policy contained wind coverage, which was a necessary element of the dismissal of the insurance agent, Rule 60(b)(5) relief from the dismissal judgment was granted and the negligence claim against the insurance agent for failing to obtain wind coverage was reinstated. <u>See</u> <u>id.</u> at 386; <u>see also</u> <u>Ass'n for Retarded Citizens of Conn., Inc. v. Thorne</u>, 68 F.3d 547, 550-51, 553 (2d Cir. 1995) (granting partial relief from judgment requiring defendants to pay plaintiffs' attorneys' fees as the "prevailing party" in the underlying litigation where one defendant obtained a reversal of the judgment in the underlying litigation on appeal, negating plaintiffs' prevailing party status as to that defendant); <u>Werner</u>, 731 F.2d at 207 (granting relief from judgment against professional corporation whose liability was coextensive with liability of agent of professional corporation where judgment against agent was reversed on appeal).

Relief has been granted under Rule 60(b)(6) under similar circumstances. <u>See</u> <u>Quevedo v. Postmaster, U.S. Postal Serv.</u>, 774 F. Supp. 837, 839 (S.D.N.Y. 1991). In <u>Quevedo</u>, defendant was granted summary judgment in the district court because a prior administrative decision barred the plaintiff from bringing the claim in the district court. <u>See</u> <u>id.</u> The administrative decision was later reversed, and the plaintiff moved in the district court for relief from the judgment under Rule 60(b)(6). <u>See</u> <u>id.</u> The district court granted the motion because enforcing the judgment "would effectively give a reversed agency decision continuing legal effect, thus denying plaintiff access to the only legal remedy proper in his situation." <u>Id.</u>

Here, Non-Ignition Switch Plaintiffs should be granted relief under Rule 60(b)(5) because the November 2015 Decision and December 2015 Judgment are based on the May 2015 Decision and June 2015 Judgment, which have been reversed by the Second Circuit Opinion. The May 2015 Decision held that Non-Ignition Switch Plaintiffs' claims remained stayed

because they had not yet shown a due process violation.  See In re Motors Liquidation Co., 531

B.R. at 360.  In the November 2015 Decision, the Bankruptcy Court simply echoed this ruling.

See In re Motors Liquidation Co., 541 B.R. at 130 n.70 (quoting In re Motors Liquidation Co.,

531 B.R. at 360).   The Second Circuit Opinion reversed the prior rulings by holding that

Independent Claims could not be enjoined by the Sale Order, see Elliott, 829 F.3d at 157,

revealing the error in the Bankruptcy Court's critical assumption that the May 2015 Decision

enjoining Non-Ignition Switch Plaintiffs' Independent Claims was valid when it issued the

November 2015 Decision and December 2015 Judgment.

Thus, a necessary element of the November 2015 Decision and December 2015

Judgment—that the Sale Order could be enforced to bar Independent Claims—has been reversed

and Rule 60(b)(5) relief is warranted.

### 3.     Extraordinary Circumstances Exist Warranting Rule 60(b)(6) Relief From The November 2015 Decision And December 2015 Judgment.

In the alternative to Rule 60(b)(5) relief, relief under Rule 60(b)(6) is warranted.  Rule

60(b)(6) of the Federal Rules of Civil Procedure enables a court "to relieve a party or its legal

representative from a final judgment, order, or proceeding for . . . any other reason that justifies

relief."  Fed. R. Civ. P. 60(b)(6).

Rule 60(b)(6) is "a grand reservoir of equitable power to do justice in a particular case . .

. ."  United States v. Cirami, 563 F.2d 26, 32 (2d Cir. 1977); see also United Airlines, Inc. v.

Brien, 588 F.3d 158, 176 (2d Cir. 2009) ("[Rule 60(b)(6)] should be liberally construed when

substantial justice will thus be served.").  Rule 60(b)(6) relief is warranted, *inter alia*, where

there has been an intervening change of controlling law or to correct clear error or prevent

manifest injustice.  See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013).

When a case "produce[s] inconsistent results between two sets of plaintiffs suing for damages based on the same incident," Rule 60(b)(6) relief should be granted.  See In re Terrorist Attacks on September 11, 2001, 741 F.3d 353, 357 (2d Cir. 2013); see also Pierce v. Cook & Co., 518 F.2d 720, 721-23 (10th Cir. 1975) (affirming Rule 60(b)(6) relief to prevent inconsistent judgments in two suits arising from the same accident where one court held that shipper could not be liable for torts of independent contractor, but another court held that shipper could be liable).

For example, in In re Terrorist Attacks on September 11, 2001, two sets of plaintiffs asserted claims against foreign governments for losses arising from the September 11, 2001 terrorist attacks.  See 741 F.3d at 355.  One decision held that one set of plaintiffs was precluded from bringing claims under the Foreign Sovereign Immunities Act, while a second decision held that a second set of plaintiffs was not barred under the statute.  See id. at 356.  The Second Circuit held that Rule 60(b)(6) relief from the judgment barring the claims of the first set of plaintiffs was appropriate because "inconsistent results for victims of the same incident poses a unique problem of unfairness," which outweighs the interest in finality.  See id. at 358-59; cf. Gondeck v. Pan Am. World Airways, Inc., 382 U.S. 25, 26-27 (1965) (per curiam) (explaining that the interest in treating victims of the same tort consistently outweighs the interest in finality).

Here, appealing and non-appealing Non-Ignition Switch Plaintiffs are bringing claims arising from the same wrongdoing by New GM and should receive the same treatment.  In addition, the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs assert the same Independent Claims in the FACC arising from the same conduct of New GM in concealing

34

serious safety defects and misrepresenting the quality of Old GM and New GM vehicles.[38]

Barring the Independent Claims of Non-Ignition Switch Plaintiffs will produce inconsistent

results for the Ignition Switch Plaintiffs and appealing Non-Ignition Switch Plaintiffs vis-à-vis

other Non-Ignition Switch Plaintiffs as it relates to the ability to assert Independent Claims.  Rule

60(b)(6) relief is warranted to prevent this inconsistency.

> **G.    Although They Were Unquestionably Denied
> Due Process In Connection With The Sale Order,
> Post-Closing Accident Plaintiffs Do Not Need To Show A Due
> Process Violation As A Predicate To Asserting Independent Claims.**

As discussed in section II.D above, all Post-Closing Accident Plaintiffs were denied due

process in connection with entry of the Sale Order and, pursuant to the Second Circuit Opinion

and basic tenets of bankruptcy court subject matter jurisdiction, all of them may pursue

Independent Claims against New GM for its own post-sale conduct.  Indeed, as future creditors

of New GM, no amount of notice given in 2009 could have fairly alerted these future post-sale

claimants to the putative scope of the Sale Order or the need to object.  The form of notice

provided, such as it was, fell far short of the mark by not mentioning or describing Independent

Claims or the prospective exculpation of the buyer from its own future conduct.

The Post-Closing Accident Plaintiffs expect New GM to contend that there must be a

threshold showing of a due process violation suffered by a known creditor of Old GM at the time

of the Sale in 2009 before these plaintiffs can assert Independent Claims.  This contention is

incorrect.

This issue cannot be properly addressed using the tools used for analyzing due process

issues relating to successor liability claims for <u>pre</u>-sale accidents (for which Old GM was at

---

[38]   <u>See</u> Fourth Am. Consol. Compl., <u>In re Gen. Motors LLC Ignition Switch Litig.</u>, Case No. 14-MD-2543 (JMF)
(S.D.N.Y. Sept. 15, 2016) [ECF No. 3356], ¶¶ 308-854, 1089-62, 1185-95 ("**FACC**").

fault) or for addressing <u>Old GM's</u> liability for its own conduct.  The Post-Closing Accident

Plaintiffs believe that the Bankruptcy Court applied the incorrect legal construct when it

addressed the issue of Independent Claims in the April 2015 Decision.    In its ruling on

Independent Claims, the Bankruptcy Court held that, because Ignition Switch Plaintiffs were (i)

known creditors of Old GM at the time of the sale; and (ii) were not given constitutionally

sufficient notice of the sale, these "economic loss" claimants were prejudiced by the overbreadth

of the Sale Order.  <u>In re Motors Liquidation Co.</u>, 529 B.R. at 570.  The Bankruptcy Court further

held that, had these particular claimants objected to the breadth of the Sale Order at the time of

the sale in 2009, it would have narrowed the scope of the order.  <u>Id.</u>[39]

By starting with the question of whether the claimant asserting the Independent Claim

was a known or unknown creditor of Old GM, the Bankruptcy Court went down the wrong path.

This is because, in the case of Post-Closing Accident Plaintiffs, these plaintiffs are not asserting

claims as pre-sale creditors of Old GM.  Their accidents had not occurred at the time of the 363

sale.  For this reason, (1) the "known" versus "unknown" creditor inquiry has no relevance to

Independent Claims; and (2) there is no logic behind any argument that Independent Claims must

now remain stayed until the claimant can show that the defect at issue was known by <u>Old GM</u> at

the time of the sale.[40]

---

[39]  It is hard to believe that, if the objection had been made by the economic loss claimants at the time of the sale in 2009, the Bankruptcy Court would have narrowed the scope of the Sale Order <u>only</u> for economic loss claims relating to the Ignition Switch Defect and not for all other Independent Claims.

[40]  For example, an Independent Claim can arise based upon knowledge that New GM first acquired after the Sale Order was entered regardless of what Old GM knew before that date.

III.        **Threshold Issue Two: Part Two**[41]

A.        **Independent Claims Should Be Left To The Nonbankruptcy Courts.**

Once the Bankruptcy Court finds that all Non-Ignition Switch Plaintiffs can assert

Independent Claims against New GM, adjudication of these claims should be left to the MDL

Court or other nonbankruptcy courts.  These courts can ably determine whether an Independent

Claim asserts a disguised Retained Liability.

Indeed, that is the process envisioned by Judge Gerber when he articulated the

Bankruptcy Court's "gatekeeper" role in the November 2015 Decision.  See In re Motors

Liquidation Co., 541 B.R. at 113.  In this role, the Bankruptcy Court "refrain[s] from deciding

issues that are better decided by the MDL Court or other nonbankruptcy courts," including

whether claims are "actionable as matters of nonbankruptcy law."  Id.; see also In re Motors

Liquidation Co., 457 B.R. 276, 279 (Bankr. S.D.N.Y. 2011) (explaining that the Bankruptcy

Court would "minimize its role in New GM affairs, and . . . act only with respect to matters

where the New York Bankruptcy Court has a significant interest, or that truly involve bankruptcy

law or policy").[42]

The Bankruptcy Court found that nonbankruptcy judges should determine whether claims

are actionable Independent Claims as opposed to Retained Liabilities dressed up to look like

---

[41]  "If Non-Ignition Switch Plaintiffs are able to assert Independent Claims against New GM either in light of the
Opinion and/or issues related to subject matter jurisdiction or due process: (i) are such alleged Independent
Claims really disguised Assumed Liabilities, or successor liability claims dressed up to look like something else
(i.e., Retained Liabilities) and, therefore, cannot be asserted against New GM, and/or (ii) should all
determinations with respect to alleged Independent Claims be left to non-bankruptcy judge(s)?"  Order to Show
Cause at pp. 2-3 ¶ 2.

[42]  This restraint is apt as a jurisdictional matter.  See Trusky v. Gen. Motors Corp. (In re Motors Liquidation Co.),
Adv. No. 12-09803 (REG), 2013 WL 620281, at *1 (Bankr. S.D.N.Y. Feb. 19, 2013) (explaining that, while
this Court has jurisdiction to construe the Sale Order, jurisdiction over monetary controversies between non-
debtor parties is questionable); cf. Park Ave. Radiologists v. Melnick (In re Park Ave. Radiologists, P.C.), 450
B.R. 461, 467-71 (Bankr. S.D.N.Y. 2011) (granting motion to dismiss for lack of jurisdiction over state law
claims brought post-confirmation that did not bear a close nexus to any provision of the bankruptcy plan).

something else.  See In re Motors Liquidation Co., 541 B.R. at 125-26.  Specifically, the

Bankruptcy Court held that:

> [T]he determination of whether claims asserted in complaints filed by Ignition
> Switch Plaintiffs . . . , or complaints filed by Post-Closing Accident Plaintiffs . . .
> with the Ignition Switch Defect, are Independent Claims that may be properly
> asserted against New GM, or Retained Liabilities of Old GM, can be made by
> nonbankruptcy courts overseeing such lawsuits . . . .

December 2015 Judgment ¶ 23; see also id. ¶¶ 20-21, 25, 29, 31, 33 (deferring to nonbankruptcy

courts for a determination of whether New GM owed an independent duty to purchasers or

lessees of Old GM vehicles for various claims).  The December 2015 Judgment further provides

that "the nonbankruptcy courts hearing the plaintiffs' claims shall have the authority to construe

and implement the [November 2015] Decision and this Judgment . . . with respect to the

particular cases before them."  See id. ¶ 37.

The Bankruptcy Court demarcated the appropriate division of labor between the

bankruptcy and nonbankruptcy courts for the Ignition Switch Plaintiffs' Independent Claims.

There is no sound reason for a different result with respect to the Non-Ignition Switch Plaintiffs'

Independent Claims.

In particular, the Non-Ignition Switch Plaintiffs who are parties to the FACC assert the

same Independent Claims as the Ignition Switch Plaintiffs in the FACC—claims that are

currently being litigated in the MDL proceeding.[43]  Moreover, Post-Closing Accident Plaintiffs

have filed lawsuits against New GM in the District Court and various state and federal courts

across the country.  These lawsuits include product liability claims for their post-sale accidents

that New GM unquestionably assumed liability for under the Sale Agreement and Independent

Claims for punitive damages arising from New GM's own post-sale conduct.

---

[43]  See FACC ¶¶ 1089-62, 1185-95.

Allowing all Non-Ignition Switch Plaintiffs to litigate their Independent Claims in the trial court overseeing their complaints prevents duplicative litigation, avoids the risk of inconsistent rulings and conserves judicial resources. "[W]here a nonbankruptcy court already has many of the nonbankruptcy issues before it, and has the superior knowledge of such matters and their context[,] . . . it is better for the court with the greater expertise, and that is closer to the issues in question, to address them." In re Motors Liquidation Co., 541 B.R. at 132 n.73.

In any event, the contention that Independent Claims are "really disguised Assumed Liabilities, or successor liability claims dressed up to look like something else (i.e., Retained Liabilities)" is baseless. As defined in the Sale Agreement, only liabilities of Old GM qualify as Assumed or Retained Liabilities. See Sale Agreement § 2.3 (categorizing "Liabilities of Sellers" as Assumed or Retained Liabilities).[44] Independent Claims are non-derivative, third party claims arising from New GM's post-sale wrongful conduct—i.e., they are liabilities of *New GM*. Cf. Elliott, 829 F.3d at 158 ("[W]e can imagine that some [independent] claims involve misrepresentations by New GM as to the safety of Old GM cars.").[45]

For example, the FACC alleges that New GM knew about the many safety defects in Old GM and New GM vehicles, but concealed this material information with the intent to deceive the Non-Ignition Switch Plaintiffs concerning the existence of numerous defects, the quality of the GM brand, and the integrity of New GM.[46] In addition to concealing these defects, New GM deceived and misled those Non-Ignition Switch Plaintiffs by disseminating advertisements,

---

[44] See *Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser,* dated June 26, 2009 [ECF No. 2968-2].

[45] Indeed, Independent Claims do not fit within the regime established in the Sale Agreement for Assumed and Retained Liabilities. New GM has previously argued that any liability that is not an Assumed Liability is a Retained Liability. But that construct is illogical when it comes to Independent Claims. Old GM did not agree to be liable for New GM's future misconduct.

[46] See FACC ¶¶ 425-854.

publications, and other marketing materials that represented Old GM and New GM vehicles as safe and reliable, when it was well aware that many Old GM and New GM vehicles contained serious safety defects.[47]   Based on these allegations concerning New GM's conduct alone, the FACC asserts numerous Independent Claims, such as fraudulent concealment, violation of consumer protection statutes and unjust enrichment.[48]

The Non-Ignition Switch Plaintiffs' Independent Claims arise from New GM's acts, and failures to act, in contravention of its independent duties to owners and lessees of Old GM vehicles.   Such claims are neither Assumed nor Retained Liabilities under the Sale Order. Accordingly, all Independent Claims may proceed before the nonbankruptcy courts.

**IV.      Threshold Issue Two: Issues Particular To Post-Closing Accident Plaintiffs.**

For the avoidance of doubt, the Post-Closing Accident Plaintiffs adopt and, in fact, are subsumed within the foregoing arguments made on behalf of the "Non-Ignition Switch Plaintiffs" (as defined herein and in the Order to Show Cause).

Separately, the Post-Closing Accident Plaintiffs expect that New GM will argue that unless an affected plaintiff has already taken steps to be freed from the supposed restriction against the assertion of Independent Claims against New GM, it is too late to do so.  This is not correct for several reasons.  In addition to the arguments above as to why all plaintiffs asserting claims against New GM based upon its own post-sale conduct enjoy the benefit of the Second Circuit's ruling that the Sale Order could not bar Independent Claims, the Post-Closing Accident Plaintiffs make the following additional arguments.

The 2014 Threshold Issues briefing did not concern post-sale accidents or post-sale personal injury or wrongful death lawsuits.  The 2014 Threshold Issues briefing was confined to

---

[47]   See id. ¶¶ 336-422.

[48]   See id. at pp. 2-4, ¶¶ 1089-62, 1185-95.

the first two Motions to Enforce that New GM filed:  (i) the Ignition Switch Plaintiffs Motion to

Enforce, which applied only to economic loss claims involving the Ignition Switch Defect; and

(ii) the Ignition Switch Pre-Closing Plaintiffs Motion to Enforce, which applied only to pre-sale

accidents involving the Ignition Switch Defect.  The Non-Ignition Switch Plaintiffs Motion to

Enforce concerned only economic loss claims involving defects other than the Ignition Switch

Defect.  None of the Motions to Enforce that were pending at the time the 2014 Threshold Issues

were briefed concerned personal injury or wrongful death claims from <u>post-sale</u> accidents,

whether Ignition Switch Defect-related or not.  Simply put, the briefing of the 2014 Threshold

Issues did not concern <u>post</u>-sale accident cases.

        In fact, there is not a single reference to post-sale accident cases in the June 2015

Judgment.  The reference to "Independent Claims" in the June 2015 Judgment was confined to

"Ignition Switch Plaintiffs" and solely referred to plaintiffs with economic loss claims.  <u>See</u> June

2015 Judgment ¶¶ 2, 4, 5, 9, 11.  Any purported obligation established under the June 2015

Judgment to seek a determination as to due process or to file a No Stay, No Strike, or Objection

Pleading (as defined in the June 2015 Judgment) simply did not apply to Post-Closing Accident

Plaintiffs.  <u>See, e.g.</u>, June 2015 Judgment ¶¶ 8, 11, 13, 18.[49]

        Nor does anything in the June 2015 Judgment permanently bar any claims against New

GM or require or effect a dismissal with prejudice.  <u>See, e.g.</u>, June 2015 Judgment ¶ 18 ("If any

Additional Party has a good faith basis to maintain that the Additional Lawsuit or certain

allegations, claims or causes of action contained in such Additional Lawsuit should not be

---

[49]   The schedules attached to the June 2015 Judgment make this clear.  The so-called Hybrid Cases (<i>i.e.</i>, post-sale
accident cases in which the plaintiff alleged economic loss in addition to personal injury) were included on
Exhibit C because New GM contended that the economic loss aspect of the Hybrid Cases might violate the
terms of the Sale Order as impermissible successor liability claims.  In addition, for personal injury and
wrongful death plaintiffs, the only issue addressed in the 2014 Threshold Issues briefing in terms of New GM's
liability for personal injury and wrongful death claims was successor liability for <u>pre-sale</u> Ignition Switch
Personal Injury Plaintiffs.

dismissed <u>without prejudice</u>, such Additional Party shall, within 17 business days upon receipt of

the [April 2015] Decision and [June 2015] Judgment, file with this Court a No Dismissal

Pleading explaining why such Additional Lawsuit or certain claims or causes of action contained

therein should not be dismissed <u>without prejudice</u>.") (emphasis added). [50]

The point here is that, at the time the June 2015 Judgment was entered, regardless of

whether Independent Claims by post-sale Non-Ignition Switch Personal Injury Plaintiffs were in

fact stayed by the Sale Order *ab initio*, the issue of whether such claims were ever stayed or

should remain stayed had not yet been raised in these proceedings.  This was made abundantly

clear in the April 2015 Decision when Judge Gerber wrote:

> There may be misunderstandings as to the matters now before the Court.  New
> GM has already undertaken to satisfy claims for death, personal injury, and
> property damage in accidents occurring after the 363 Sale—involving vehicles
> manufactured by New GM and Old GM alike.  Except for the *pre*-Sale accidents
> that are the subject of the Pre-Closing Accident Plaintiffs' contentions, addressed
> below (where those plaintiffs wish to sue New GM in lieu of Old GM), **this
> controversy does not involve death, personal injury, or property damage
> arising in accidents**. Instead it involves only *economic losses* allegedly sustained
> with respect to Old GM vehicles or parts.

In re Motors Liquidation Co., 529 B.R. at 521 n.4 (italics in original; underscoring added).

It was not until the late summer of 2015, in connection with the upcoming Bellwether

trials in the MDL concerning post-sale accidents <u>involving the Ignition Switch Defect</u> that New

GM first began to raise issues concerning the right of the plaintiffs in the Bellwether cases to

seek punitive damages from New GM.  As part of the punitive damages issue, New GM also

raised questions about whether knowledge or information that originated with Old GM could be

imputed to New GM if such knowledge or information was contained in the minds of the

---

[50]  Likewise, footnote 70 of the November 2015 Decision clearly states that "Non-Ignition Switch Plaintiffs"
(defined in the November 2015 Decision as those asserting claims for economic losses), were not permanently
prevented from asserting Independent Claims but instead could do so if such plaintiffs could assert a due
process violation at the time of the Sale.  See In re Motors Liquidation Co., 541 B.R. at 130 n.70.  The personal
injury and wrongful death claimants for post-sale accidents retained at least the same rights.

employees that transferred from Old GM to New GM at the time of the closing of the sale or was contained in the books, records, files, and computers that also moved from Old GM to New GM as part of the sale.

In the context of setting the schedule for briefing these disputes, the Bankruptcy Court issued its September 2015 Scheduling Order. The September 2015 Scheduling Order identified a limited set of issues for briefing, with the principal focus being punitive damages, imputation, and select economic loss lawsuits. See September 2015 Scheduling Order at 1-4.

New GM is expected to argue that Post-Closing Accident Plaintiffs served with the September 2015 Scheduling Order are bound by the results of that briefing in the form of the November 2015 Decision and the December 2015 Judgment. This is wrong for several reasons.

First, there was no legally sufficient compulsion that required Post-Closing Accident Plaintiffs to appear and brief the issues set forth in the September 2015 Scheduling Order. No summons or complaint was ever issued; no process or other legally cognizable compulsion was issued or served; and no "Motion to Enforce" was commenced.

Second, although New GM took the position in correspondence that specific Post-Closing Accident Plaintiffs that were mailed a copy of the September 2015 Scheduling Order, and who ignored that order, would do so at their peril, the September 2015 Scheduling Order did not use the term "Independent Claim" or otherwise describe what an Independent Claim is. Therefore, nothing in the September 2015 Scheduling Order signaled the Independent Claim issue.

Third, as described above, certain Post-Closing Accident Plaintiffs received correspondence from King & Spalding that expressly stated that Independent Claims were

43

permitted against New GM.[51]   There is a lot that is confusing or misleading in the form of the

September 2015 Letter:

    a.  New GM's lawyers use the term "Independent Claims" in a context that states such claims (as distinct from successor liability claims) are permissible.

    b.  The reference to barring punitive damages based on Old GM conduct implies what every plaintiff asserting a claim against New GM for New GM's own post-sale conduct thought to be the case, namely, that Independent Claims (as distinct from successor liability claims) are not claims based on Old GM conduct. Therefore, this part of the letter suggests the briefing does not concern or affect plaintiffs seeking punitive damages based solely on New GM's post-sale conduct, such as its duty to warn.

    c.  Another portion of the same letter compounds the effect of the other misleading portions of the letter by stating that "[t]o the extent the request for punitive damages contained in the Pleading is based on a successor liability theory, such liabilities were not assumed by New GM and, accordingly, New GM cannot be liable to the Plaintiff under that theory of recovery."  Taken together with the other quoted portions of the letter, this additional language suggests, by negative implication, that Independent Claims based on New GM's conduct are permissible because such claims are distinct from successor liability claims, which are based on Old GM's conduct.

Fourth, neither the November 2015 Decision nor the December 2015 Judgment permanently bar (or even purport to permanently bar) Post-Closing Accident Plaintiffs from bringing their Independent Claims.  At most, the November 2015 Decision and the December 2015 Judgment merely continue the Sale Order in effect to bar claims that New GM contends remain stayed until such time as a due process violation is proven by these plaintiffs.

---

[51]   The relevant language from the September 2015 Letter is:  "The Bankruptcy Court recently issued the [June 2015] Judgment, which reiterated that '**[e]xcept for Independent Claims** and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an  Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order . . . .' . . . To the extent that the Pleading requests punitive damages based on Old GM conduct, such a request is proscribed.  Accordingly, the Pleading should be amended so it is consistent with the rulings in the [June 2015] Judgment, [April 2015] Decision, Sale Order and Injunction."  September 2015 Letter at 2 (emphasis added).

The fifth (and in many cases overriding) reason why the proceedings that led to the November 2015 Decision and December 2015 Judgment are not binding on the Post-Closing Accident Plaintiffs is that many of those plaintiffs were simply not served with the September 2015 Scheduling Order.  Indeed, a driver in an Old-GM manufactured car could be injured tomorrow and then bring a lawsuit against New GM and seek punitive damages based on an Independent Claim for New GM's own post-sale actions and inactions.  Such plaintiff and any other plaintiff that was not served with the September 2015 Scheduling Order was never apprised that New GM believed it was destroying their rights to sue New GM for an Independent Claim through the litigation contemplated under the September 2015 Scheduling Order.

In sum, there were no prior proceedings applicable to the Post-Closing Accident Plaintiffs that adjudicated their rights to assert Independent Claims or that can be construed now to permanently bar their rights to assert Independent Claims.  Based upon the Second Circuit's broad ruling on Independent Claims, these plaintiffs are not barred from bringing Independent Claims.

Lastly, any purported bar on the assertion of Independent Claims was not only beyond the subject matter jurisdiction of the Bankruptcy Court for the reasons stated above, but the inclusion of any such bar in the Sale Order in 2009 also violated the due process rights of these personal injury claimants.  This is because all Post-Closing Accident Plaintiffs were future creditors who were not given adequate notice of the purported assertion of jurisdiction over future Independent Claims at the time of the Sale.

## V.    Threshold Issue Three.[52]

### A.    All Used Car Purchasers May Assert Claims Against New GM Under The Second Circuit Opinion.

The Second Circuit held that "the Sale Order . . . *does not cover the Used Car Purchasers' claims*." Elliott, 829 F.3d at 157 (emphasis added).  Claims that are outside the scope of the Sale Order cannot be enjoined.  See id. at 154; see also In re Grumman Olson Indus., Inc., 467 B.R. at 704 (quoting 11 U.S.C. § 1141(c)) ("If a particular cause of action does not fall under the definition of 'claim,' then, for example, it would fall outside the Code provision that 'property dealt with by the plan [of reorganization] is free and clear of all *claims*.'").  Contrary to New GM's contention, this ruling is not limited to Ignition Switch Plaintiffs or to Independent Claims.

As explained by the Second Circuit, under Bankruptcy Code Section 363(f), assets can only be sold free and clear of "interests," and for successor liability claims to qualify as interests, "there must be some contact or relationship between the debtor and the claimant such that the claimant is identifiable."  Elliott, 829 F.3d at 156.  This limitation on free and clear sales prevents the "enormous practical and perhaps constitutional problems" that would flow from prospectively enjoining the claims of claimants who had no prepetition relationship with the debtor.  See id.

Here, "as of the bankruptcy petition there was an unknown number of unknown individuals who would one day purchase Old GM vehicles secondhand.  There could have been no contact or relationship—actual or presumed—between Old GM and these specific plaintiffs . . . ."  Id. at 157.  Accordingly, the Sale Order cannot be read to cover their claims.  Id.

---

[52] "Is the Opinion's holding that claims held by Used Car Purchasers are not covered by the Sale Order because they had no contact or relationship with Old GM limited to (a) only those parties that appealed the April 2015 Decision/June 2015 Judgment to the Second Circuit, and/or (b) Independent Claims asserted by Used Car Purchasers based solely on New GM conduct?"  Order to Show Cause at p. 3 ¶ 3.

The Second Circuit Opinion cannot reasonably be read to limit the claims that may be brought by Used Car Purchasers to Independent Claims.  The Second Circuit *reversed* the April 2015 Decision and explicitly cited to that part of the decision enjoining Used Car Purchasers' *successor liability* claims.  See Elliott, 829 F.3d at 158 ("[We] reverse [the Bankruptcy Court's] decision to enjoin the Used Car Purchasers' claims, *see* [the April 2015 Decision] at 570-572."); In re Motors Liquidation Co., 529 B.R. at 570-72 (enjoining the successor liability claims of Used Car Purchasers).

The basis of the Second Circuit Opinion was the type of claimant—purchasers with no prepetition contact with Old GM—not the type of claim.  See Elliott, 829 F.3d at 157.  By contrast, the Second Circuit's ruling that Independent Claims fall outside the scope of the Sale Order was based on the type of claim—claims based on post-petition conduct—not the type of claimant.  See id.  Had the Second Circuit intended to limit Used Car Purchasers' claims to Independent Claims, it would not have reached the issue of the applicability of the Sale Order to the Used Car Purchasers' claims.  However, the Second Circuit engaged in an independent analysis and provided a distinct explanation for why Used Car Purchasers' claims fall outside the scope of the Sale Order.  See id.

The Bankruptcy Court is bound to follow the Second Circuit's express ruling that Used Car Purchasers are not enjoined from asserting successor liability claims and New GM cannot relitigate this issue.  See, e.g., In re Coudert Bros. LLP, 809 F.3d at 98-99 (explaining that a lower court cannot review or vary from a matter decided by the appellate court).

The Second Circuit defined Used Car Purchasers as a subset of Ignition Switch Plaintiffs "who had purchased Old GM cars secondhand after the § 363 sale closed." Elliott, 829 F.3d at 151. However, the scope of the Sale Order can never extend to claims of Used Car Purchasers

47

regardless of the type of defect in that individual's vehicle because they had no prepetition contact with Old GM. See id. at 154-58; see also Chateaugay Corp. v. LTV Corp. (In re Chateaugay Corp.), 944 F.2d 997, 1003 (2d Cir. 1991) (noting that interpreting "claim" under the Bankruptcy Code to include the claims of individuals "who have not yet had any contact whatever with the tort-feasor has been characterized as 'absurd'").

In addition, the "claims" of Used Car Purchasers did not exist at the time of the Sale Hearing, and the identity of these purchasers was neither known nor ascertainable. Accordingly, the Used Car Purchasers were "future claimants." See In re Grumman Olson Indus., Inc., 467 B.R. at 703 (future claimants are holders of "a claim against a purchaser that is based on pre-bankruptcy conduct of the debtor that did not cause any harm to an identifiable claimant until after the bankruptcy closed"). Because future claimants cannot possibly be provided notice of a bankruptcy, "for due process reasons, their claims cannot be discharged" by an order of a bankruptcy court. See id. at 707 (collecting cases); see also Koepp v. Holland, 593 F. App'x 20, 23 (2d Cir. 2014) ("Bankruptcy courts cannot extinguish the interests of parties who lacked notice of or did not participate in the proceedings.").

There was no way Old GM could have provided Used Car Purchasers with constitutionally adequate notice of the Sale Hearing and, therefore, the Sale Order cannot be enforced to bar any of their claims against New GM.

Accordingly, both Independent Claims and successor liability claims of Used Car

Purchasers fall outside the scope of the Sale Order and cannot be enjoined.[53]

## VI.    Threshold Issue Four.[54]

### A.    Because They Were Denied Due Process, Post-Closing Accident Plaintiffs May Bring Successor Liability Claims Against New GM (Including Claims For Punitive Damages).

When a bankruptcy debtor seeks relief against third parties, due process requires "notice

reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at

314. "[F]or due process reasons, a party that did not receive adequate notice of bankruptcy

proceedings [can] not be bound by orders issued during those proceedings." In re Grumman

Olson Indus., Inc., 467 B.R. at 706 (citing Manville IV, 600 F.3d at 135).

Due process has two components: the method of delivery and the content of the notice.

Mullane, 339 U.S. at 314 ("The notice must be of such nature as reasonably to convey the

required information."). Each are important.

As to the Post-Closing Accident Plaintiffs, the notice used by Old GM of the 363 sale

flunked both requirements. The Sale Notice did not properly apprise future claimants such as the

---

[53]  To the extent that New GM is arguing that any of the Post-Closing Accident Plaintiffs are cut off from bringing Independent Claims against New GM because such plaintiff acquired its car on the secondary market, that argument fails. For the same reasons discussed above, the Second Circuit Opinion held that all Independent Claims were unaffected by the Sale Order. Moreover, for the reasons set forth above, Post-Closing Accident Plaintiffs were not required to appeal from the April 2015 Decision and June 2015 Judgment because other than claimants with pre-sale accident claims based on the Ignition Switch Defect—who, by definition successfully appealed on successor liability issues—none of the 2014 Threshold Issues touched accident claims based on a defect other than the Ignition Switch Defect. Just as argued above for economic loss claimants, Used Car Purchasers that are also Post-Closing Accident Plaintiffs are future claimants. As such, for the reasons stated above, their rights to bring Independent Claims and successor liability claims against New GM could not be affected by the Sale Order.

[54]  "Are Post-Closing Accident Plaintiffs bound by the Sale Order or may they bring successor liability claims against New GM and seek punitive damages in connection therewith notwithstanding the Court's rulings in the November 2015 Decision/December 2015 Judgment?" Order to Show Cause at p. 3 ¶ 4. See supra Sections II-V for a discussion of the ability of Post-Closing Accident Plaintiffs to assert Independent Claims.

Post-Closing Accident Plaintiffs that their *in personam* claims against New GM based on successor liability were "at issue" at the Sale Hearing. Nor was a future claims representative appointed to advocate for and protect the rights of future claimants.

Thus, the Sale Order and associated bar against successor liability claims was entered without any opportunity for these future plaintiffs to be heard. Id. at 313 ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.").

Specifically, all of the Post-Closing Accident Plaintiffs were injured or killed in car wrecks that occurred years after the closing of the sale involving vehicles manufactured by Old GM. Thus, at the time of the sale, the Post-Closing Accident Plaintiffs were "future claimants" and had no way of being notified of or knowing that there was a bankruptcy sale process that would purport to bar their future rights to sue and assert successor liability claims and (where provable) punitive damages from the purchaser of Old GM's assets in the event they were injured after the sale as a result of a latent defect.

Nothing in the Sale Notice was targeted to these future claimants and, in the unlikely and implausible event there was a hidden intention to target these future plaintiffs in order to bind them, the form of notice used was constitutionally inadequate to bind them. As uninjured parties, there was nothing in the form of Sale Notice that would have alerted the Post-Closing Accident Plaintiffs to any effort to bar future claims they may have against the purchaser (New GM) for successor liability or punitive damages. The words "successor liability" and "punitive damages" do not appear in the form of Sale Notice.

Consequently, as future claimants, the Post-Closing Accident Plaintiffs cannot be bound by any aspect of the Sale Order (or the Sale Agreement that it approved) that supposedly limits their ability to seek punitive damages from New GM.

The Second Circuit has not decided the extent to which the future claim of a person that has not yet been injured is a "claim" for purposes of Section 363 sales "free and clear." This circuit, as well as many other courts, are troubled by the idea of stranding the clams of future tort victims at the debtor (or worse, leaving no effective recourse at all for persons that have not yet been injured) and the related due process challenge of providing effective notice to persons that, for all intents and purposes, do not exist at the time of the sale.

Future claimants are differently situated than unknown existing creditors. Case law permits unknown existing creditors to be given constructive notice through publication. Even if there is little likelihood that the target might actually see the notice, the compromise made for unknown but existing creditors is premised on the theories that "this is the best we can do" and there is at least some plausible possibility that the already existing creditor might see the notice and be able to react to it.

Future claims are different. Not only does the right of the future claimant to make his or her claim not yet exist, but these future claimants are also unaware of the lurking dangers that might make them creditors in the future. This case is perhaps an archetypal example. Here, future post-sale crash victims in vehicles that contained hidden defects were both unidentifiable by Old GM at the time of the sale (unless proven otherwise) and, until their crashes, these future claimants were unaware of the lurking danger. Future car accident victims are not akin to asbestos claimants who (if told of the exposure) can reasonably expect health problems to manifest in the future. These claimants are totally in the dark, regardless of whether their

51

vehicles were purchased before or after the sale—precisely because their accidents had not yet

occurred.  These claimants had no more idea to file a claim than someone daily using one of the

10,000 bridges in the famous Chateaugay example or someone that might someday use one of

those bridges.  See Chateaugay, 944 F.2d at 1003.

> This problem was alluded to in the Second Circuit Opinion:
>
> This Court has not decided, however, "the difficult case of prepetition conduct
> that has not yet resulted in detectable injury, much less the extreme case of pre-
> petition conduct that has not yet resulted in any tortious consequence to a victim."
> Chateaugay I considered a hypothetical bankrupt bridge building company, which
> could predict that out of the 10,000 bridges it built, one would one day fail,
> causing deaths and other injuries . . . .
>
> * * *
>
> Recognizing these [future] claims would engender "enormous practical and
> perhaps constitutional problems."  Thus, "'claim' cannot be extended to include . .
> . claimants whom the record indicates were completely unknown and unidentified
> at the time [the debtor] filed its petition and whose rights depended entirely on the
> fortuity of future occurrences."
>
> * * *
>
> To avoid any practical and constitutional problems, courts require some minimum
> "contact" or "relationship" that makes identifiable the individual with whom the
> claim does or would rest.

Elliott, 829 F.3d at 156 (internal citations omitted).

Not surprisingly, the panel in the Chrysler decision made a similar observation in the

context of holding that successor liability claims were interests in property under Section 363(f)

and that Chrysler could sell its assets free and clear of such claims.  While the panel was willing

to affirm that the sale was free and clear of the successor liability claims of existing creditors, it

was not willing to extend the successor liability shield to prevent the assertion of successor

liability claims by future accident victims:

> We affirm this [free and clear] aspect of the bankruptcy court's decision insofar as
> it constituted a valid exercise of authority under the Bankruptcy Code.  However,
> we decline to delineate the scope of the bankruptcy court's authority to extinguish

future claims, until such time as we are presented with an actual claim for an injury that is caused by Old Chrysler, that occurs after the Sale, and that is cognizable under state successor liability law.

In re Chrysler LLC, 576 F.3d 108, 127 (2d Cir. 2009), vacated as moot, Ind. State Police Pension Tr. v. Chrysler LLC, 558 U.S. 1087 (2009).

The issue of whether a sale "free and clear" under section 363(f) can strip away rights from future creditors was thoroughly addressed in the Grumman cases. See Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.), 445 B.R. 243 (Bankr. S.D.N.Y. 2011), aff'd, 467 B.R. 694 (S.D.N.Y. 2012). Grumman involved a truck parts manufacturer that filed chapter 11 in this district and then sold its assets through a 363 "free and clear" sale. See id. at 245-46. Years after the sale closed, a driver of a truck containing parts manufactured by the debtor was injured in a crash and brought suit against the purchaser of the debtor's assets on a successor liability theory. See id. The purchaser commenced an adversary proceeding seeking to bar the lawsuit as violative of the court's sale order, which barred successor liability claims against the purchaser. See id. at 245. On due process grounds, Bankruptcy Judge Bernstein and, on appeal, District Judge Oetken each denied the relief the purchaser requested. See id. at 254-55; In re Grumman Olson Indus., Inc., 467 B.R. at 706-11.

In declining to enforce the sale order's free and clear language to bar these claims, the Grumman courts found that, because the plaintiff had not yet been injured as of the 363 sale, no notice could have been provided to her at the time of the sale to inform her that her rights to pursue claims against the purchaser for her future injuries were being taken away from her. Specifically, the district court held:

> The [personal injury plaintiffs] did not receive adequate notice of their potential claim in the Grumman bankruptcy proceedings because, at the time of the bankruptcy, there was no way for anyone to know that the [personal injury plaintiffs] ever would have a claim. Enforcing the Sale Order against the [personal injury plaintiffs] to take away their right to seek redress under a state

53

law theory of successor liability when they did not have notice or an opportunity to participate in the proceedings that resulted in that order would deprive them of due process.

In re Grumman Olson Indus., Inc., 467 B.R. at 708-09 (citing Schwinn Cycling & Fitness Inc. v. Benonis, 217 B.R. 790 (N.D. Ill. 1997) ("Allowing the provisions of the Bankruptcy Court's orders to limit the rights of injured parties . . . who had no notice, and no reason at the time, to present an interest in the bankruptcy proceedings or to take action in response to the threatened deprivation of their rights, would violate due process and bankruptcy notice concerns.")).

Just like the plaintiff in Grumman, the Post-Closing Accident Plaintiffs had no way of being informed in 2009 that their future rights to sue New GM under theories of successor liability and also seek to recover punitive damages (where appropriate) were being stripped away as part of the sale. As discussed above and based on the same logic applied by the Second Circuit to Used Car Purchasers, because the Post-Closing Accident Plaintiffs were denied due process in connection with the sale, the Sale Order cannot be applied to them and strip them of their rights to pursue punitive damages from New GM on a successor liability or Independent Claim theory.

## **CONCLUSION**

For the reasons set forth above, the Plaintiffs respectfully request that the Court order that: (i) all Non-Ignition Switch Plaintiffs are free to assert Independent Claims, the merits of which are to be adjudicated by nonbankruptcy courts; (ii) no Used Car Purchasers' claims are enjoined under the Sale Order; and (iii) Post-Closing Accident Plaintiffs are not bound by the Sale Order and are able to assert successor liability claims against New GM and seek punitive damages.

Dated: February 27, 2017
      New York, New York

Respectfully submitted,

BROWN RUDNICK LLP

*/s/ Edward S. Weisfelner*
Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*

55

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Post-Closing Accident
Plaintiffs Represented By Butler Wooten & Peak
LLP, Denney & Barrett, P.C., Hilliard Muñoz
Gonzales L.L.P., and Turner & Associates, P.A.*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Lead Counsel in the MDL Court with
Primary Responsibility for Personal Injury
and Wrongful Death Cases*