**Reply Deadline: March 20, 2017 at 5:00 p.m.**
**Hearing Date: To Be Determined**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
In re                                   :    Chapter 11
                                        :
MOTORS LIQUIDATION COMPANY, *et al.*,   :    Case No.: 09-50026 (MG)
       f/k/a General Motors Corp., *et al.*  :
                                        :
                Debtors.                :    (Jointly Administered)
                                        :
------------------------------------------------------------X

# OPENING BRIEF BY GENERAL MOTORS LLC WITH RESPECT TO INITIAL LATE CLAIM MOTIONS ISSUES

**TABLE OF CONTENTS**

Page

**PRELIMINARY STATEMENT** ...................................................................................................1

**RELEVANT FACTUAL BACKGROUND**..................................................................................2

**ARGUMENT** ................................................................................................................................4

    A. The Proponents Must Satisfy the *Pioneer* Standard for Approval to File a Late Proof of Claim ..................................................................................................4

        1. Due Process With Respect to the Bar Date Was Not Litigated By the Parties In the Bankruptcy Court................................................................................5

        2. The Second Circuit Properly Found That Due Process Issues With Respect To The Bar Date Were Never Before The Bankruptcy Court ..................6

    B. Certain Proponents Have Different Tolling Agreements With the GUC Trust and Other Proponents Have No Tolling Agreement .........................................................8

        1. Ignition Switch Plaintiffs, and Only Ignition Switch Plaintiffs, Entered Into a Tolling Agreement with the GUC Trust in May 2014..................................8

        2. Ignition Switch Pre-Closing Accident Plaintiffs Did Not Have a Tolling Agreement with the GUC Trust Until December 2015 .........................................9

            a. *The Order Entered by the Bankruptcy Court in September 2014 Does Not Contain a Tolling Provision for Ignition Switch Pre-Closing Accident Plaintiffs* ........................................................................................9

            b. *The Ignition Switch Pre-Closing Accident Plaintiffs Toll with the GUC Trust First Began, at the Earliest, on December 21, 2015* ...................11

            c. *Proponents' Delay in Filing the Late Claims Motion* .........................................12

    **CONCLUSION** ................................................................................................................13

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Motors Liquidation Co.*,
  529 B.R. 510 (Bankr. S.D.N.Y. 2015) ........................................................................3, 4, 5

*In re Motors Liquidation Co.*,
  829 F.3d 135 (2d Cir. 2016) ..............................................................................1, 5, 6, 7, 8

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
  507 U.S. 380 (1993) .......................................................................................1, 4, 5, 6, 8, 13

**PRELIMINARY STATEMENT**

This brief addresses the following two issues concerning the Late Claim Motions:[1]

(i)  whether the Late Claim Motions filed by Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs, and Ignition Switch Pre-Closing Accident Plaintiffs[2] (collectively, the "**Proponents**") must satisfy the *Pioneer*[3] standard ("***Pioneer* Standard**") in order to obtain authority to file late proofs of claim against Old GM ("**Applicability of *Pioneer* Issue**"); and

(ii) whether and, if so, when the Proponents became the beneficiaries of a tolling agreement with respect to the time for filing the Late Claim Motions ("**Tolling Issue**").

New GM's positions on these two issues, in summary, are as follows:

**Applicability of the *Pioneer* Issue:**  While the Second Circuit addressed whether there was a denial of due process with respect to the notice provided by Old GM of the 363 Sale to certain plaintiffs, the Second Circuit did not find a due process violation with respect to the bar date notice ("**Bar Date**") for any of the Proponents.[4] Accordingly, the *Pioneer* Standard applies to Proponents, and they must, at a minimum, prove excusable neglect before they can file late proofs of claim against Old GM.[5]

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Order To Show Cause Regarding Certain Issues Arising From Lawsuits With Claims Asserted Against General Motors LLC ("New GM") That Involve Vehicles Manufactured By General Motors Corporation ("Old GM")*, dated December 13, 2016 [ECF No. 13802], and the Glossary of Terms attached thereto as Exhibit "B."

[2] In these proceedings, "**Ignition Switch Plaintiffs**" have been defined as owners/lessors of Subject Vehicles with the Ignition Switch defect ("**Ignition Switch Defect**") covered by the February/March 2014 recalls, asserting an economic loss claim against New GM; "**Non-Ignition Switch Plaintiffs**" have been defined as owner/lessors of vehicles without the Ignition Switch Defect manufactured by Old GM who were not the subject of the February/March 2014 recalls, asserting an economic loss claim against New GM; and "**Ignition Switch Pre-Closing Accident Plaintiffs**" have been defined as owners/lessors of Subject Vehicles with the Ignition Switch defect covered by the February/March 2014 recalls, asserting a personal injury claim against New GM arising from an accident that occurred prior to the 363 Sale.

[3] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). The *Pioneer* Standard includes the factors and equitable principles that courts look to for purposes of deciding whether a failure to timely comply with a claims Bar Date was "excusable" or not. *See id.* at 395, 398.

[4] *In re Motors Liquidation Co.*, 829 F.3d 135, 168 n.31 (2d Cir. 2016).

[5] Whether the Proponents can satisfy the *Pioneer* Standard is not the subject of this brief.

1

**Tolling Issue:** Pursuant to this Court's May 16, 2014 Order [ECF No. 12697] ("**May 2014 Order**"), Ignition Switch Plaintiffs received a tolling agreement from the GUC Trust. But that tolling agreement did not cover Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs. The Ignition Switch Pre-Closing Accident Plaintiffs did not receive a tolling agreement from the GUC Trust until December 21, 2015 at the earliest—*almost two years* after the February/March 2014 recalls of the Subject Vehicles. Non-Ignition Switch Plaintiffs have *never* received a tolling agreement from the GUC Trust. Any argument that prior orders of the Bankruptcy Court tolled any limitations periods for Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs is without merit.

## RELEVANT FACTUAL BACKGROUND

After the February/March 2014 recalls were announced, neither the Ignition Switch Plaintiffs nor the Ignition-Switch Pre-Closing Accident Plaintiffs filed an adversary proceeding, complaint, or claim against the GUC Trust, the assignee of Old GM's assets. These plaintiffs first sought a recovery against the GUC Trust when they filed their Late Claim Motions on December 22, 2016. After their recalls were announced at various times in mid-2014, the Non-Ignition Switch Plaintiffs similarly did not seek a recovery against the GUC Trust until December 22, 2016.

Proponents failed to take any action even when the GUC Trust announced in November 2014 that it would make a substantial distribution of hundreds of millions of dollars to GUC Trust Unitholders. Despite knowledge that this distribution would include assets to which they could otherwise claim an entitlement to, Proponents intentionally decided not to assert their claims against Old GM/GUC Trust or to seek to enjoin the November 2014 distribution. Proponents later admitted to the Bankruptcy Court that their inaction was the result of a litigation strategy to focus only on recovery from New GM, from which they could potentially recover 100

2

cents on the dollar instead of the discounted bankruptcy dollars that they expected would be available from the GUC Trust. *See In re Motors Liquidation Co.*, 529 B.R. 510, 591 (Bankr. S.D.N.Y. 2015). Proponents described their strategic decision not to pursue the GUC Trust during the February 2015 oral argument on the 2014 Threshold Issues[6] regarding their failure to seek a stay of GUC Trust distributions:

> COURT: Well, when you say no fault of your own . . . there was going to be an upcoming distribution [in October 2014] you didn't act.
>
> Mr. Weisflener [Counsel for Ignition Switch Plaintiffs]: "It wasn't an easy decision and not one that was decided by me or my office. . . . Yes[,] ***there was a strategic element to the decision that was taken on our side***. That's my point of view. It's kind of disingenuous, one would have argued within the confines of the attorney client privilege. . . .

February 17, 2015 Hr'g Tr. [ECF No. 13219-2], at 111-112 (emphasis added). As the Bankruptcy Court found in the April 2015 Decision, Proponents' strategy was to "pursue claims against New GM first . . . ." *Motors Liquidation Co.*, 529 B.R. at 591; *see also id.* at 590-91 and n.287 (plaintiffs' "additional" delay since October 2014 in pursuing remedies was a "tactical choice" barring recovery on equitable mootness grounds; "doing anything to suggest that Old GM or the GUC Trust was the appropriate entity against whom to proceed could undercut their [plaintiffs] position that they should be allowed to proceed against New GM").[7]

Judge Gerber clearly understood Proponents' litigation strategy, their effort to circumvent the priority scheme of the Bankruptcy Code and to put themselves in a different and better

---

[6] The 2014 Threshold Issues were: (i) whether due process rights were violated in connection with the notice of the 363 Sale, (ii) if there was a due process violation, what should the remedy be, (iii) whether certain claims asserted by plaintiffs were Assumed Liabilities of New GM or Retained Liabilities of Old GM, and (iv) if claims could be asserted by certain plaintiffs against Old GM, did the doctrine of equitable mootness apply.

[7] The Second Circuit reversed the Bankruptcy Court's equitable mootness ruling on ripeness grounds. The Second Circuit expressed no view as to whether plaintiffs' litigation tactics in not pursuing the GUC Trust, despite their knowledge of defects in their Old GM vehicles, would ultimately bar their claims against the GUC Trust.

3

position than every other unsecured creditor of Old GM. As Judge Gerber stated during the February hearing:

> [Proponents want] to assert a successor liability claim. [They] want[] to go after an entity with the potential to go after 100-cent dollars instead of baby bankruptcy dollars. That has the effect, for that subclass of the creditor community who can sue for 100-cent dollars, of giving that creditor group a leg up over the poor suckers in the creditor community who can only get baby bankruptcy dollars.

February 17, 2015 Hr'g. Tr., at 42:15-23.

## ARGUMENT

### A. The Proponents Must Satisfy the *Pioneer* Standard for Approval to File a Late Proof of Claim

Proponents assert that the *Pioneer* standard is inapplicable to their Late Claim Motions because the Bankruptcy Court already made a final determination of a due process violation with respect to the Bar Date notice. They are wrong. While the due process issue with respect to the 363 Sale notice was part of the 2014 Threshold Issues, the Bankruptcy Court declined to include the ***Bar Date notice*** issue as one of the 2014 Threshold Issues. May 2014 Order, at 4 n.4; Order, dated July 11, 2014 [ECF No. 12770] ("**July 2014 Order**"), at 3 n.4. As a result, no issues relating to the Bar Date were briefed as part of the 2014 Threshold Issues, including whether any group of plaintiffs suffered a due process violation in connection with the Bar Date notice. For that reason, the Bankruptcy Court could not make any final rulings with respect to Bar Date notice issues in the April 2015 Decision/June 2015 Judgment.

Although the April 2015 Decision/June 2015 Judgment includes some statements about the Bar Date notice issue,[8] the Second Circuit held that those statements were entirely advisory

---

[8] The Bankruptcy Court discussed the due process issue relating to the Bar Date notice. It noted that the remedy "is leave to file late claims. And the Court may grant leave from the deadline imposed by the Court's Bar Date Order . . . ." *Motors Liquidation Co.*, 529 B.R. at 583. In Paragraph 6 of the June 2015 Judgment, the Bankruptcy Court held that "[a]ny Plaintiff may petition the Bankruptcy Court (on motion and notice) for authorization to file a late or amended proof of claim against the Old GM bankruptcy estate. The Court has not

4

in nature (*see* Point A.2, *infra*), and "remand[ed] the case for further proceedings consistent with this opinion." *Motors Liquidation Co.*, 829 F.3d at 170. In the same vein, the Second Circuit also ruled that the Equitable Mootness Threshold Issue[9] was not ripe because the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs were not asserting late claims against the GUC Trust.

With respect to *Non*-Ignition Switch Plaintiffs, the Bankruptcy Court did not make any statements on due process issues with respect to the Bar Date notice in the April 2015 Decision/June 2015 Judgment. *See Motors Liquidation Co.*, 529 B.R. at 523.

Given these rulings, no Proponent has established a due process violation in connection with the Bar Date that exempts them from satisfying the *Pioneer* Standard. Accordingly, the *Pioneer* Standard must apply to Proponents' motions seeking approval to file late proofs of claim against Old GM.

### 1. Due Process With Respect to the Bar Date Was Not Litigated By the Parties In the Bankruptcy Court

After New GM filed its first motion to enforce the Sale Order ("**April 2014 Motion to Enforce**") against the Ignition Switch Plaintiffs, the Bankruptcy Court held a Status Conference on May 2, 2014 to establish the initial issues that would be addressed as 2014 Threshold Issues. The Bankruptcy Court declined to include the filing of late claims against Old GM ("**Old GM Late Claim Issue**") as a 2014 Threshold Issue because it was fact intensive and would require discovery. *See* May 2, 2014 Hr'g Tr. [ECF No. 13219-1], at 97:21-23 ("I agree with Mr. Martorana [GUC Trust attorney] and Mr. Golden [GUC Trust Unitholders attorney] that the

---

determined the extent to which any late or amended proof of claim will ultimately be allowed or allowed in a different amount." Judgment entered on June 1, 2015 [ECF No. 13177], at ¶ 6.

[9] The Equitable Mootness Threshold Issue as defined by the Bankruptcy Court was: "If any or all of the claims asserted in the Ignition Switch Actions are or could be claims against the Old GM bankruptcy estate (and/or the GUC Trust), should such claims or the actions asserting such claims nevertheless be disallowed/dismissed on grounds of equitable mootness." July 2014 Order, at 3.

5

matters involved in compliance with *Pioneer* are fact intensive, and are not appropriately threshold issues."). This ruling was confirmed in the May 2014 Order:

> ***For the avoidance of doubt***, the issue of whether a claim asserted in the Ignition Switch Actions is timely and/or meritorious against the Old GM bankruptcy estate (and/or the GUC Trust) ***is not a Threshold Issue***.

May 2014 Order, at 4 n.4 (emphasis added).

Because the Old GM Late Claim Issue was ***not*** a 2014 Threshold Issue and the parties never briefed the issue, the April 2015 Decision/June 2015 Judgment never made a final ruling on the Old GM Late Claim Issue. And, because the Old GM Late Claim Issue necessarily includes consideration of whether there was a due process violation with respect to the Bar Date notice, the Bankruptcy Court also did not make a final ruling on the due process issue as it pertains to the Bar Date.

### 2. The Second Circuit Properly Found That Due Process Issues With Respect To The Bar Date Were Never Before The Bankruptcy Court

The Second Circuit's opinion confirms that the Bankruptcy Court did not make a final ruling on the Bar Date due process issue. In its brief with respect to the Equitable Mootness Threshold Issue, New GM argued that this Issue was "not presently ripe for adjudication and may possibly never be ripe" because the issue was predicated upon plaintiffs pursuing claims against the GUC Trust, which had not occurred.[10] The Second Circuit agreed, holding that since "plaintiffs never sought relief from GUC Trust," the ruling on the Equitable Mootness Threshold Issue was "advisory." *Motors Liquidation Co.*, 829 F.3d at 168. Specifically, the Second Circuit found:

> Neither GUC Trust nor Old GM are parties to the multi-district litigation now ongoing in district court. Only one defendant is named: New GM. Likewise, as

---

[10] *Response By General Motors LLC Regarding The Equitable Mootness Threshold Issue*, dated December 16, 2014 [ECF No. 13024], at 7.

GUC Trust confirmed at oral argument, plaintiffs have not filed any proofs of claim with GUC Trust, nor have they even asked the bankruptcy court for permission to file late proofs of claim or to lift the bar date, as would be required before relief could be granted.

*Id.*

The Second Circuit addressed the Bankruptcy Court's discussion of the Old GM Late Claim Issue in the April 2015 Decision/June 2015 Judgment as follows:

The Ignition Switch Plaintiffs only mentioned in a footnote in their opposition to the motion to enforce that Old GM failed to provide notice of the bar date. The Pre–Closing Accident Plaintiffs stated on behalf of all plaintiffs that "Plaintiffs ***are not asserting a due process challenge*** to a bar date order or a discharge injunction issued in favor of a debtor." Bankr. ECF No. 13021, at 48 n.26.

*Id.* at 168 n.31 (emphasis added).

The Second Circuit further noted that "plaintiffs did not pursue any claims [against Old GM]. Ultimately, it is the *parties*, and not the court that must create the controversy." *Id.* at 169 (emphasis in original). As explained by the Second Circuit:

"The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions." A controversy that is "appropriate for judicial determination ... must be definite and concrete, touching the legal relations of parties having adverse legal interests." "[F]ederal courts are without power to decide questions that cannot affect the rights of *litigants in the case before them.*" That is, courts may not give "an opinion advising what the law would be upon a hypothetical state of facts," for instance, where a party did not "seek the adjudication of any adverse legal interests[.]"

*Id.* at 167-68 (citations omitted) (emphasis in original). The Second Circuit remanded the case to the Bankruptcy Court consistent with the Opinion. *Id.* at 170.

Thus, the Old GM Late Claim Issue was hypothetical when the Bankruptcy Court entered the June 2015 Judgment because, as the Second Circuit recognized, plaintiffs had not (a) named Old GM as a defendant in any complaint, (b) filed any proofs of claim against the GUC Trust, or (c) sought relief from the Bankruptcy Court to file late proofs of claim. *See id.* at 168. Because no plaintiff sought leave to file a late proof of claim and no plaintiff made the due process

7

argument regarding the Bar Date notice before the Bankruptcy Court, there could not have been a final ruling about denial of due process in connection with the Bar Date. Specifically, the Second Circuit found:

> The bankruptcy court lifted the bar date for independent claims as a remedy. We note, however, that neither the Groman Plaintiffs nor Ignition Switch Plaintiffs requested this as relief. The Ignition Switch Plaintiffs only mentioned in a footnote in their opposition to the motion to enforce that Old GM failed to provide notice of the bar date. The Pre–Closing Accident Plaintiffs stated on behalf of all plaintiffs that "Plaintiffs are not asserting a due process challenge to a bar date order or a discharge injunction issued in favor of a debtor."

*Id.* at 168 n. 31 (citations omitted).

In sum, because the Proponents never briefed, let alone proved, a due process violation with respect to the Bar Date notice, they must, at a minimum, satisfy the *Pioneer* Standard in order to obtain authority from the Court to file late proofs of claim against Old GM.

**B.     Certain Proponents Have Different Tolling Agreements With the GUC Trust and Other Proponents Have No Tolling Agreement**

**1.     Ignition Switch Plaintiffs, and Only Ignition Switch Plaintiffs, Entered Into a Tolling Agreement with the GUC Trust in May 2014**

In May 2014, the Bankruptcy Court entered an order in connection with a Motion To Enforce filed by New GM against the Ignition Switch Plaintiffs. *See* May 2014 Order. Because only Ignition Switch Plaintiffs were involved in that proceeding, the May 2014 Order only applies to Ignition Switch Plaintiffs.

In the May 2014 Order, Ignition Switch Plaintiffs received a tolling agreement from the GUC Trust, which provided in relevant part:

> the GUC Trust agrees that it shall not assert a timeliness objection to any claims that the Plaintiffs may attempt to assert against the Old GM bankruptcy estate and/or the GUC Trust, based directly or indirectly on the ignition switch issue, as a result of the Plaintiffs' delay in asserting such claims during the "Interval." For purposes hereof, (a) the "Interval" shall commence on the date of this Order and shall end 30 days after a Final Order is entered with respect to an adjudication of the Threshold Issues (as defined in this Order), and (b) "Final Order" shall mean

8

the entry of an order by a court of competent jurisdiction, and there are no pending appeals, and the time period to file an appeal of such order has expired[.]

May 2014 Order, at 3 ("**Ignition Switch Plaintiff Tolling Provision**"). Separate and apart from the Ignition Switch Plaintiff Tolling Provision, the May 2014 Order had specific provisions that set forth the detailed schedule for litigating the 2014 Threshold Issues. *See* May 2014 Order, at 3-6 ("the following *initial case schedule* shall apply to the Motion, the Objection and the Adversary Proceeding . . . [t]he following *schedule* shall apply to the Threshold Issues" (emphasis added)).

Before receiving this tolling agreement, Ignition Switch Plaintiffs knew about the February/March 2014 recalls for about three months, but tactically chose not to pursue any remedies against Old GM/GUC Trust. During this time, over 50 lawsuits were filed against New GM by Ignition Switch Plaintiffs and none of those Ignition Switch Plaintiffs chose to sue Old GM/GUC Trust relating to the Ignition Switch Defect. This was a tactical litigation strategy to pursue remedies solely against New GM.[11]

### 2.  Ignition Switch Pre-Closing Accident Plaintiffs Did Not Have a Tolling Agreement with the GUC Trust Until December 2015

In comparison, Ignition Switch Pre-Closing Accident Plaintiffs have a tolling agreement with the GUC Trust that began no earlier than December 21, 2015, as explained below.

> a. *The Order Entered by the Bankruptcy Court in September 2014 Does Not Contain a Tolling Provision for Ignition Switch Pre-Closing Accident Plaintiffs*

The May 2014 Order only applied to the April 2014 Motion to Enforce, which was directed solely against Ignition Switch Plaintiffs. Accordingly, the reference to "Plaintiffs" in the tolling provision in that Order can only be read to mean Ignition Switch Plaintiffs. Thus, the

---

[11] Non-Ignition Switch Plaintiffs neither asked for nor received any tolling agreement with respect to the filing of a motion seeking authority to file a late proof of claim against Old GM.

9

Ignition Switch Pre-Closing Accident Plaintiffs' reliance on the Bankruptcy Court's September 15, 2014 Order [ECF No. 12897] ("**September 2014 Order**") as creating a tolling agreement covering them is misplaced.

The Bankruptcy Court entered the September 2014 Order in response to a motion filed by New GM on August 1, 2014 to enforce the Sale Order with respect to lawsuits brought by Pre-Closing Accident Plaintiffs ("**Pre-Closing Accident Motion to Enforce**").  At the Status Conference held before the Court on January 12, 2017, counsel for the Ignition Switch Pre-Closing Accident Plaintiffs asserted his "strong view" that the language in the September 2014 Order "incorporates the prior order [the May 2014 Order]," and thus his clients should also be the beneficiaries of the Ignition Switch Plaintiffs Tolling Provision. January 12, 2017 Hr'g Tr., at 71:13-71:16.  The September 2014 Order does no such thing.  There is no sweeping incorporation by reference of the entire May 2014 Order, and there is no mention of a tolling provision in the September 2014 Order, and for good reason.  No such provision was requested by Ignition Switch Pre-Closing Accident Plaintiffs, and no such request was granted by the GUC Trust.

The September 2014 Order instead incorporates by reference only the "*initial case schedule*" in the May 2014 Order for the Pre-Closing Accident Motion to Enforce.  Specifically, the September 2014 Order provides:

> ORDERED that the following initial case schedule and procedures shall apply to the Pre-Closing Accident Motion to Enforce:
>
> 1.  Until further order of the Court, the *schedule* governing New GM's [April 2014] Motion to Enforce (which is subject to various Orders previously entered by the Court, copies of which shall be provided by New GM to Plaintiffs upon written request) shall govern the *schedule* for the [applicable] Motion to Enforce.

10

*Id.* at 2 (emphasis added).  This provision only references the briefing *schedule* governing the April 2014 Motion to Enforce.  The Ignition Switch Plaintiffs Tolling Provision—which was an agreement by the GUC Trust and Ignition Switch Plaintiffs—is fundamentally different from a briefing schedule for a motion, and is in a different section of the September 2014 Order.  New GM is not aware of any discussion regarding the inclusion of a tolling agreement in the September 2014 Order, and it was New GM that submitted the form of the Order to Judge Gerber.

                b.    *The Ignition Switch Pre-Closing Accident Plaintiffs Toll with the GUC Trust First Began, at the Earliest, on December 21, 2015*

The best evidence that Ignition Switch Pre-Closing Accident Plaintiffs are not covered by the May 2014 tolling agreement is that they affirmatively asked the GUC Trust for a tolling agreement in December 2015.  Specifically, on December 21, 2015, counsel for the Ignition Switch Pre-Closing Accident Plaintiffs sent the GUC Trust an e-mail seeking to defer any motion practice on the allowance of such plaintiffs' alleged prepetition claims and requesting a toll, to which the GUC Trust agreed.  *See* E-Mail Correspondence between Gregory W. Fox (counsel for Ignition Switch Pre-Closing Accident Plaintiffs) and Lisa H. Rubin (counsel for the GUC Trust), attached hereto as **Exhibit "A."**[12]

If Ignition Switch Pre-Closing Accident Plaintiffs had received the benefit of the May 2014 tolling agreement (through the September 2014 Order), there would have been no reason for them to seek a tolling agreement with the GUC Trust in December 2015.  Moreover, the December 2015 tolling agreement was for a shorter duration than the one provided to Ignition Switch Plaintiffs in the May 2014 Order.  While the Ignition Switch Plaintiff Tolling Provision extends to 30 days after the last appeals relating to the 2014 Four Threshold Issues were decided

---

[12] New GM did not know about the agreement between counsel for the GUC Trust and Counsel for the Ignition Switch Pre-Closing Accident Plaintiffs until 2017, over a year after the agreement was reached by those parties.

(this time frame includes New GM's *certiorari* petition to the Supreme Court), the December 2015 tolling agreement ended five business days after the Opinion, and did not extend to Supreme Court petitions. Specifically, the December 15, 2015 toll ran from:

> the date of this e-mail through the date that is ***five business days*** after the Second Circuit's [sic] reverses Equitable Mootness Ruling. All parties' rights and arguments with respect to the period prior to the date of this e-mail would be fully reserved[.]

*Id.* (emphasis added). Significantly, nowhere in this e-mail correspondence is there a reference to any prior tolling agreement.

Finally, in August 2016, counsel for Ignition Switch Pre-Closing Accident Plaintiffs requested an extension of their tolling agreement to coincide with the end date prescribed in the Ignition Switch Plaintiffs' tolling agreement (in the May 2014 Order). *See* E-Mail Correspondence between Gregory W. Fox (counsel for Ignition Switch Pre-Closing Accident Plaintiffs) and Keith Martorana (counsel for the GUC Trust), attached hereto as **Exhibit "B."** This request represents an admission by Ignition Switch Pre-Closing Accident Plaintiffs that they did not have the same toll as the Ignition Switch Plaintiffs, thus negating their current dubious interpretation of the September 2014 Order.

     *c. Proponents' Delay in Filing the Late Claims Motion*

Based on the above described tolling agreements with the GUC Trust, the length of time between the announcement of the 2014 recalls and the filing of the Proponents' Late Claim Motions is as follows:

- Ignition Switch Pre-Closing Accident Plaintiffs: Approximately 22 months (February 2014 - December 2015);

- Non-Ignition Switch Plaintiffs: Approximately 30 months (June 2014 - December 2016); and

- Ignition Switch Plaintiffs: Approximately 3 months (February 2014 - May 2014).

12

New GM will argue in the next phase of these proceedings, among other things, that the length of delay between a claimant's knowledge of a claim and requesting authority to file a late proof of claim is extremely relevant where the Court must evaluate whether to permit a late proof of claim.

## CONCLUSION

In sum, at a minimum, the Proponents must satisfy the *Pioneer* Standard to file their late proofs of claim. Proponents' delays are both substantial and the result of their tactical litigation strategy.

WHEREFORE, New GM respectfully requests that this Court (i) find that Proponents at a minimum must satisfy the *Pioneer* Standard in order to obtain authorization to file late proofs of claim against Old GM, (ii) find that the Proponents either lack, or have the tolling agreements with the GUC Trust, as set forth above, and (iii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
March 6, 2017

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:     (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200

*Attorneys for General Motors LLC*

13