Hearing Date and Time: To Be Scheduled
Reply Deadline: March 20, 2017

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035
Mitchell A. Karlan
Gabriel K. Gillett

*Attorneys for Wilmington Trust Company, as Trustee for
and Administrator of the Motors Liquidation Company
General Unsecured Creditors Trust*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Phone: (212) 872-1000
Fax: (212) 872-1002
Daniel H. Golden
Deborah J. Newman

*Attorneys for the Participating Unitholders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re                                                : Chapter 11
                                                     :
MOTORS LIQUIDATION COMPANY, *et al.*,                : Case No.: 09-50026 (MG)
     f/k/a General Motors Corp., *et al.*         :
                                                     :
           Debtors.                              : (Jointly Administered)
                                                     :
-------------------------------------------------------------X

**OPENING BRIEF OF GUC TRUST ADMINISTRATOR AND
PARTICIPATING UNITHOLDERS ON THE APPLICABILITY OF
*PIONEER* AND TOLLING TO PLAINTIFFS' MOTIONS TO FILE LATE CLAIMS**

March 6, 2017

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................................. 4

    I.    The Bankruptcy Court Protects The GUC Trust From Stale Claims............................ 4

    II.    Plaintiffs Repeatedly Choose To Pursue Relief From New GM, Not The GUC Trust. ................................................................................................................................. 5

    III.    After Sitting On Their Rights, Plaintiffs Obtain A Toll Of Time To File Late Claims. ............................................................................................................................... 7

ARGUMENT ........................................................................................................................................ 9

    I.    *PIONEER* APPLIES TO PLAINTIFFS' MOTIONS TO FILE LATE CLAIMS ........ 9

    II.    PLAINTIFFS OBTAINED A TOLL OF THEIR TIME TO FILE LATE CLAIMS AFTER IT WAS ALREADY TOO LATE................................................. 13

CONCLUSION .................................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re AMR Corp.*,
    492 B.R. 660 (Bankr. S.D.N.Y. 2013)..................................................................................10

*DiLaura v. Power Auth. of State of N.Y.*,
    982 F.2d 73 (2d Cir. 1992)....................................................................................................12

*In re Drexel Burnham Lambert Grp.*,
    157 B.R. 532 (S.D.N.Y. 1993)..............................................................................................12

*Elliott v. Gen. Motors LLC*,
    829 F.3d 135 (2d Cir. 2016).............................................................................1, 9, 10, 11, 12

*In re Enron Corp.*,
    419 F.3d 115 (2d Cir. 2005)..................................................................................................10

*Ikelionwu v. United States*,
    150 F.3d 233 (2d Cir. 1998)..................................................................................................12

*In re Motors Liquidation Co.*,
    529 B.R. 510 (Bankr. S.D.N.Y. 2015)....................................................................4, 5, 6, 7, 12

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993)..........................................................................................1, 2, 9, 11

*In re Premier Membership Servs., LLC*,
    276 B.R. 709 (S.D. Fla. 2002) ..........................................................................................2, 10

*Silivanch v. Celebrity Cruises, Inc.*,
    333 F.3d 355 (2d Cir. 2003)..................................................................................................10

*In re St. James Mechanical, Inc.*,
    434 B.R. 54 (E.D.N.Y. 2010) ...............................................................................................10

*In re Tronox Inc.*,
    2014 WL 5801058 (Bankr. S.D.N.Y. Nov. 7, 2014) ............................................................10

*United States v. Cardinal Mine Supply*,
    916 F.2d 1087 (6th Cir. 1990) ..............................................................................................11

*Walsh v. McGee*,
    918 F. Supp. 107 (S.D.N.Y. 1996) .......................................................................................12

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**Statutes and Rules**

11 U.S.C. § 363 ......................................................................................................................... 4

Fed. R. Bankr. P. 9006(b)(1) ................................................................................................ 9, 12

**Other Authorities**

Brief in Opposition of Ignition Switch Plaintiffs,
    *General Motors LLC v. Elliott*, No. 16-764 (U.S. Feb. 16, 2017) ............................................ 7

Wilmington Trust Company, as Trustee for and Administrator of the GUC Trust,[1] and Participating Unitholders, submit this brief to explain that *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993) applies to the motions to file late claims by Patricia Barker, putative class representative for Economic Loss Plaintiffs (Dkt. 13806), and by 175 Pre-Closing Accident Plaintiffs (Dkt. 13807) (together, "**Plaintiffs**"), that Economic Loss Plaintiffs' time to file late claims was tolled in May 2014, and that Pre-Closing Accident Plaintiffs obtained a toll of their time to file late claims in December 2015.[2]

**INTRODUCTION**

Starting in February 2014, Plaintiffs were notified that their vehicles contained a defective Ignition Switch. They responded with alacrity, quickly exercising their rights to vigorously pursue claims against New GM. At the same time, Plaintiffs voluntarily chose, for admitted strategic reasons, to sit on whatever rights they had (if any) against the GUC Trust. Time and again, Plaintiffs pressed their claims against New GM, but "never sought relief from GUC Trust" and "did not pursue any claims" against the GUC Trust. *Elliott v. Gen. Motors LLC*, 829 F.3d 135, 168-69 (2d Cir. 2016). "Instead, it appears from the record that GUC Trust became involved" in the Ignition Switch litigation "at New GM's behest," not Plaintiffs'. *Id.*

Nearly three years after the first recalls, on December 22, 2016, Plaintiffs moved this Court for permission to file late claims against the GUC Trust. Plaintiffs contend that *Pioneer* is entirely inapplicable to those motions, and that this Court should grant the motions without hesitation.

---

[1] Capitalized terms not defined here shall have the meaning listed in Dkts. 13802 or 13869. "**Dkt.**" refers to No. 09-50026 (Bankr. S.D.N.Y.). "**MDL Dkt.**" refers to No. 14-MD-2543 (S.D.N.Y.).

[2] The GUC Trust reserves the right to make all arguments related to the Non-Ignition Switch Plaintiffs' motion at the appropriate time, including that their time to file late claims has never been tolled, that they cannot show excusable neglect for their delay, and that the claims they seek to file are barred by the doctrine of laches.

Plaintiffs are wrong.

In *Pioneer*, the Supreme Court set the standard for determining when a putative late claimant can show "excusable neglect" for failing to file a proof of claim within the court-ordered deadline. That standard, the Court explained, is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395. The Court noted that "relevant circumstances" may include risk of prejudice to the debtor, the length and reason for the delay, "including whether it was within the reasonable control of the movant," and the sufficiency of notice. *Id.* at 395, 398. But the Court expressly declined to "narrow[] the range of factors to be considered" in deciding whether neglect was excusable. *Id.* at 395 n.14.

Yet "narrowing the range of factors to be considered" is exactly what Plaintiffs seek to do here. Under their mechanical interpretation, *Pioneer*'s equitable balancing test has no application to any putative late claimant that did not get due process in connection with the entry of the Sale Order. In Plaintiffs' misguided view, this Court should simply ignore that their delay in filing late claims is attributable to their admittedly voluntary, strategic choice to not pursue the GUC Trust, and allow Plaintiffs to file late claims at any point in time—no matter how long after they became aware that their vehicles were defective. Rather than considering "all relevant circumstances," as the Supreme Court has mandated, Plaintiffs would have this Court exclusively consider notice— the sole circumstance that purportedly supports them—and disregard the many other facts demonstrating why their delay was inexcusable. Plaintiffs offer no controlling authority for that position. And courts have held otherwise, considering a claimant's "deliberate or tactical delay" in filing claims in spite of a due process violation. *See, e.g.*, *In re Premier Membership Servs., LLC*, 276 B.R. 709, 716 (S.D. Fla. 2002).

Plaintiffs also ignore that there is no extant ruling that any Plaintiff did not receive due

process in connection with the orders that prohibit their late claims—the Bar Date Order that set November 30, 2009 as the deadline to file claims in the Old GM bankruptcy, and the Late Filed Claims Order that presumptively disallowed claims filed after February 2012. Although the Bankruptcy Court found that Plaintiffs had not received due process when the Bar Date Order was entered (that issue was expressly excluded from the Threshold Issues to be decided), Plaintiffs did not seek a determination on that issue, and in fact Plaintiffs expressly disavowed arguments that they did not receive due process when the Bar Date Order issued. That is why the Second Circuit subsequently vacated the Bankruptcy Court's late-claims-related findings on justiciability grounds. As a result, even if *Pioneer* did not apply to cases involving a due process violation, Plaintiffs would still need to satisfy the *Pioneer* standard here because there is no viable finding that they did not get due process in connection with the Bar Date or Late Filed Claims Orders.

In considering the length of time that each group of Plaintiffs delayed filing late claims, the Court must determine when they were on notice of their claims and when they obtained a toll of their time to file late claims.

Economic Loss Plaintiffs were on notice of their claims as of February 7, 2014, when New GM began to recall their vehicles, and many may have been on notice years earlier, when they allegedly experienced an Ignition Switch Related Event or its impact. A Bankruptcy Court scheduling order explicitly tolled Economic Loss Plaintiffs' time to file late claims on May 16, 2014, and that toll remains in effect until all appeals related to the Threshold Issues have been adjudicated. Even so, Economic Loss Plaintiffs' purposeful decision to wait approximately three months may ultimately preclude them from obtaining permission to file late claims.

Pre-Closing Accident Plaintiffs are in an even worse position. Each of those plaintiffs was on notice that they had a potential claim in the Old GM bankruptcy when they were in an accident

3

prior to July 2009, or at least when their vehicle was recalled as early as February 2014. But those plaintiffs waited until December 2015—nearly two years after the recalls, and more than five years after the accidents—to seek and obtain a toll from the GUC Trust. Faced with this reality, Pre-Closing Accident Plaintiffs now contend, for the first time, that a September 2014 scheduling order tolled their time to file late claims. That assertion is belied by the plain language of the September 2014 scheduling order, which says nothing about tolling and does not incorporate tolling provisions from any other order. And that newfound assertion is flatly inconsistent with Pre-Closing Accident Plaintiffs' efforts to reach out to the GUC Trust in order to obtain a toll in December 2015, and to extend that toll in August 2016. Pre-Closing Accident Plaintiffs' untenable interpretation of the September 2014 scheduling order and blatant ignorance of the toll they agreed to are meritless attempts to avoid the consequences of their strategic decision not to seek recovery against the GUC Trust. They should be rejected.

## FACTUAL BACKGROUND

**I.    The Bankruptcy Court Protects The GUC Trust From Stale Claims.**

In July 2009, Old GM sold substantially all of its assets to New GM, under 11 U.S.C. § 363. *See* Dkt. 2968. Two months later, the Bankruptcy Court issued the Bar Date Order, establishing November 30, 2009 as the deadline for filing proofs of claim against Old GM. Dkt. 4079. The Bankruptcy Court "approved the form and manner of notice of the Bar Date," and "allowed for publication notice to holders of unknown claims." *In re Motors Liquidation Co.*, 529 B.R. 510, 535 (Bankr. S.D.N.Y. 2015). Economic Loss Plaintiffs and Pre-Sale Accident Plaintiffs "are among those who received publication notice only as to any claims they might have against Old GM." *Id.* As of the Bar Date, each of those Plaintiffs owned or leased a GM vehicle that was subsequently recalled for a defective Ignition Switch, and each of the Pre-Closing

4

Accident Plaintiffs had also been involved in an accident in that GM vehicle. Dkt. 13807 at 1 n.1.[3]

The GUC Trust was created in March 2011, as part of the Confirmation of Old GM's Chapter 11 bankruptcy plan. Dkt. 9941. The GUC Trust is a liquidating trust with the primary purpose of resolving disputed claims and distributing GUC Trust assets and GUC Trust Units to the GUC Trust's defined beneficiaries. Dkt. 13031, Ex. 4 § F. Those beneficiaries include holders of allowed general unsecured claims as of March 31, 2011; holders of disputed claims as of March 31, 2011, that were later allowed; and holders of freely traded GUC Trust Units. Plaintiffs are not and have never been GUC Trust beneficiaries.

"By January 2012, more than two years after the original Bar Date, many claims continued to be filed," and the GUC Trust moved for "an order disallowing late filed claims." *Motors Liquidation*, 529 B.R. at 537. The Bankruptcy Court granted the motion and entered an order in February 2012 providing that "any future late filed claims would be disallowed unless, among other things, the claimant filed a motion with the Court seeking permission to file a late proof of claim." *Id.* (citing Dkt. 11351).

## II. Plaintiffs Repeatedly Choose To Pursue Relief From New GM, Not The GUC Trust.

Beginning on February 7, 2014, New GM recalled 1.6 million vehicles with a defective Ignition Switch. *See, e.g.*, Dkt. 13806 ¶ 20. Plaintiffs responded with remarkable speed, rushing to court to file the first lawsuit against New GM on February 27, and the first putative class action on March 13, 2014. Dkt. 12620-1. Before April was out, Plaintiffs had filed fifty-four actions against New GM seeking recovery related to the Ignition Switch defect (*id.*) and the first Pre-Closing Accident Plaintiff had sued New GM for damages arising from personal injuries and

---

[3] At least five putative late claimants appear to have the same name as an individual who timely filed a claim in 2009, but whose claim was expunged.

5

wrongful death (*see* Dkt. 12807, Ex. D). By summer 2014, more than 150 Pre-Closing Accident Plaintiffs were also in litigation against New GM. *See* Dkt. 12807 at 20 & Exs. D-F.

While Plaintiffs actively pursued New GM—littering courthouses with thousands of pages of complaints—they did not make any effort at all to recover against the Old GM estate. They did not name Old GM or the GUC Trust in either consolidated complaint in the MDL. *See* MDL Dkts. 345, 347. And they did not assert any rights or seek to file late claims in the Old GM bankruptcy. In fact, it was *New GM*, not Plaintiffs, that brought the GUC Trust into the Bankruptcy Court. *See* Declaration of Gabriel K. Gillett, dated Mar. 6, 2017 ("**Gillett Decl.**"), Ex. 1, at 31:1-18. Plaintiffs did not want the GUC Trust involved, and the GUC Trust objected to participating. *Id.* at 31, 73:19-74:25, 83:7-16. *New GM*—not Plaintiffs or the GUC Trust—pushed the Bankruptcy Court to "incorporate a process to address issues related to potential claims against the bankruptcy estate" when setting a schedule for New GM's Motion to Enforce the Sale Order to enjoin Economic Loss Plaintiffs' lawsuits. Dkt. 12673 at 4; *see* Dkt. 12620.

After the GUC Trust became involved in New GM's Motions to Enforce, Plaintiffs repeatedly acquiesced to the GUC Trust distributing millions of dollars in assets to beneficiaries.

- ***In November 2014, Plaintiffs made a tactical choice not to contest the GUC Trust's planned distribution of assets worth approximately $244 million to beneficiaries.*** Although Plaintiffs sent a letter asking the GUC Trust to set aside reserves for their supposed "known potential contingent" claims (Dkt. 13029, Ex. A), the GUC Trust declined to do so, and Plaintiffs conceded that they "chose, for admitted strategic reasons, not to seek a stay" of the distribution. *Motors Liquidation*, 529 B.R. at 538.

- ***In October 2015, Plaintiffs declined to stay the GUC Trust's planned distribution of $130 million to beneficiaries.*** Economic Loss Plaintiffs (but not Pre-Closing Accident Plaintiffs) obtained the right to stay the GUC Trust's planned distribution, pending appeal of the Bankruptcy Court's decision on equitable mootness, if they posted a bond to prevent "quite substantial" harm to GUC Trust unitholders. Dkt. 13503 at 14-16. Economic Loss Plaintiffs declined to post that bond to effectuate a stay, and Pre-Closing Accident Plaintiffs did nothing at all to attempt to stop the distribution.

6

- ***In November 2016, Plaintiffs did not object to a $112 million GUC Trust distribution to beneficiaries.*** In October 2016, the GUC Trust announced plans to make another distribution to unitholders. Dkt. 13780. At that time, the parties were discussing the issues that they believed this Court should address following the Second Circuit's decision on the Threshold Issues. Yet, Plaintiffs did not ask to include a stay of distributions among those issues (Dkt. 13786), and did not mention the distribution at the hearing (*see* Dkt. 13796).

Since the first Ignition Switch recall, the GUC Trust has distributed nearly $490 million in assets to its beneficiaries, and Plaintiffs have done next to nothing to assert any rights to those assets. As of November 2016, the GUC Trust had distributed approximately 92% of its assets to beneficiaries. There are no remaining assets in the GUC Trust that have not already been allocated. *Motors Liquidation*, 529 B.R. at 586. Indeed, Plaintiffs have admitted to this Court and others that they are all but foreclosed from accessing past or present GUC Trust assets to satisfy their alleged claims. *See* Dkt. 13806 ¶¶ 55-56; MDL Dkt. 3617 at 7-8; Brief in Opposition of Ignition Switch Plaintiffs at 21, *General Motors LLC v. Elliott*, No. 16-764 (U.S. Feb. 16, 2017).

**III.    After Sitting On Their Rights, Plaintiffs Obtain A Toll Of Time To File Late Claims.**

Although Economic Loss Plaintiffs' vehicles were recalled beginning on February 7, 2014, and they vigorously pursued relief from New GM immediately, they did not obtain a toll of their time to file late claims until May 16, 2014. On that date, the Court issued a scheduling order relating to New GM's Motion to Enforce the Sale Order against Economic Loss Plaintiffs (and not Pre-Closing Accident Plaintiffs). In a decretal paragraph, the Court ordered that:

> the GUC Trust agrees that it shall not assert a timeliness objection to any claims that the Plaintiffs may attempt to assert against the Old GM bankruptcy estate and/or the GUC Trust, based directly or indirectly on the ignition switch issue, as a result of the Plaintiffs' delay in asserting such claims during the 'Interval.'

Dkt. 12697 at 3. For purposes of the order, "Plaintiffs" referred to Economic Loss Plaintiffs, who were the sole target of New GM's Motion to Enforce at that time. *See* Dkt. 12620 at 1. The order defined the "Interval" as May 16, 2014, until thirty days after the initial Threshold Issues are finally

7

resolved on appeal. Dkt. 12697 at 3. In another section featuring single-spaced numbered paragraphs, the Bankruptcy Court "ORDERED that the following initial case schedule shall apply." *Id.* at 4-5.

New GM filed a separate Motion to Enforce as to Pre-Closing Accident Plaintiffs on August 1, 2014. Dkt. 12807. On September 15, 2014, Judge Gerber issued a scheduling order related to that motion. Dkt. 12897. Unlike the scheduling order from May 2014, the September 2014 order did not include any specific language about late claims or tolling time to file late claims, and did not mention any agreements with the GUC Trust. *Id.* But just like the May scheduling order, in a section featuring single-spaced numbered paragraphs, the Bankruptcy Court "ORDERED that the following initial case schedule and procedures shall apply to the Pre-Closing Accident Motion to Enforce." *Id.* at 2. The first provision of that schedule-related section stated:

> Until further order of the Court, the schedule governing New GM's Ignition Switch Motion to Enforce (which is subject to various Orders previously entered by the Court, copies of which shall be provided by New GM to Plaintiffs upon written request) shall govern the schedule for the Pre-Closing Accident Motion to Enforce.

On December 21, 2015, Pre-Closing Accident Plaintiffs emailed counsel for the GUC Trust to memorialize a proposal to "defer" the time to file "proofs of claim of approximately 200 pre-sale accident plaintiffs represented by Mr. Hilliard's firm." Gillett Decl., Ex. 2. Under Pre-Closing Accident Plaintiffs' proposal, the GUC Trust and Participating Unitholders agreed that:

> In the event that the Second Circuit reverses the Equitable Mootness Ruling, the GUC trust and the Unitholders represented by Akin Gump will not subsequently argue to any court or tribunal that the Pre-Sale Accident Plaintiffs' rights to allowed claims against the GUC Trust were impacted by the Pre-Sale Accident Plaintiffs' failure to file and seek allowance of their proofs of claim during the period between the date of this email through the date that is five business days after the Second Circuit's reverses Equitable Mootness Ruling. All parties' rights and arguments with respect to the period prior to the date of this email would be fully reserved.

*Id.* The proposal did not mention any toll from any scheduling order, or refer to Economic Loss Plaintiffs' toll (which extended further into the future than Pre-Closing Accident Plaintiffs'

8

proposal). By its terms, Pre-Closing Accident Plaintiffs' toll expired on July 18, 2016, five days after the Second Circuit decided the Threshold Issues appeal. *Id.* On August 9, 2016, the GUC Trust agreed to extend Pre-Closing Accident Plaintiffs' toll until Economic Loss Plaintiffs' tolling period expired. Gillett Decl., Ex. 3.

## ARGUMENT

### I. *PIONEER* APPLIES TO PLAINTIFFS' MOTIONS TO FILE LATE CLAIMS

Because "the bar date has passed … the initial step" for Plaintiffs to seek "relief against the [Old GM] estate would be to seek permission to file a late proof of claim" under Bankruptcy Rule 9006(b)(1). *Elliott*, 829 F.3d at 168. To obtain that permission, Rule 9006 requires Plaintiffs to show, "on motion made after the expiration of the specified period," that "the failure to act was the result of excusable neglect." In the alternative, Plaintiffs argue that they need not show excusable neglect because they did not receive due process. Plaintiffs are wrong.

In *Pioneer*, the foundational case on the meaning of excusable neglect, the Supreme Court explained that the inquiry is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395. To guide this comprehensive evaluation of the "elastic concept" of excusable neglect, the *Pioneer* court approved a non-exclusive list of factors that the lower courts had considered: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 392, 395. The Court explicitly rejected confining the *Pioneer* analysis to a discrete set of factors. *Id.* at 395 n.14. And the Court viewed the sufficiency of notice as among the "relevant circumstances" to be considered under the rubric of excusable neglect. *Id.* at 398 (deeming it "significant that the notice of the bar date provided by the Bankruptcy Court … was outside the ordinary course in bankruptcy cases"). The Supreme Court did not suggest that

9

adequate notice was a prerequisite for evaluating excusable neglect under Rule 9006, or that *Pioneer*'s equitable test did not apply under certain circumstances. *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003) (collecting cases applying *Pioneer* in varied contexts to analyze propriety of late filings).

Following the Supreme Court's clear precedent, this Court should apply *Pioneer* to evaluate whether it would be unfair to allow Plaintiffs' claims against the GUC Trust at this late hour. Some courts have done just that, analyzing late claims under *Pioneer* even when the creditor did not receive adequate notice of the bar date. *See, e.g.*, *Premier Membership*, 276 B.R. at 716 (noting an "absence of any evidence of a deliberate or tactical delay by" the late claimant). To be sure, some courts have suggested that they would decline to apply *Pioneer* if a late claimant did not receive adequate notice. *See, e.g.*, *In re St. James Mechanical, Inc.*, 434 B.R. 54, 62 (E.D.N.Y. 2010) (denying late claims after finding creditor received sufficient notice); *In re AMR Corp.*, 492 B.R. 660, 663-64 (Bankr. S.D.N.Y. 2013) (same). But unlike the claimants in those cases, Plaintiffs' *post-recall* delay is solely attributable to their admitted voluntary, strategic decision to pursue New GM and to wait to assert their supposed rights against the GUC Trust; their *post-recall* delay has nothing to do with whether they received adequate notice in 2009. *Elliott*, 829 F.3d at 168-69.

Plaintiffs' invalid reason for delay is unquestionably relevant to the *Pioneer* analysis, and disqualifies them from belatedly filing claims now. As the Second Circuit has explained, the reason for delay is the most important factor to consider when analyzing late claims. *In re Enron Corp.*, 419 F.3d 115, 122-24 (2d Cir. 2005). And where that reason is a self-imposed strategic decision, even a "quite short" delay may be too long. *Id.* (noting that filing "one day late" may be inexcusable if the reason is insufficient); *In re Tronox Inc.*, 2014 WL 5801058, at *2 (Bankr.

10

S.D.N.Y. Nov. 7, 2014) (denying motion to file late claims where claimant's "delay even after it learned the key facts on which it relies is substantial and insufficiently explained"). *Cf. United States v. Cardinal Mine Supply*, 916 F.2d 1087, 1089 (6th Cir. 1990) (finding insufficiently notified creditor "must be permitted to file tardily *when the creditor does so promptly after learning of the bankruptcy*" (emphasis added)).

In Plaintiffs' view, they could have opted to continuously lay-in-wait, believing they did not get due process as to the Bar Date, only to spring up when the *in terrorem* effect of millions of potential new claims reached its peak. At that point, Plaintiffs argue, the Court would not be allowed to consider whether their claims should be denied because they delayed filing for admitted strategic reasons. That argument is fundamentally incompatible with the Supreme Court's command that the analysis of whether to allow late claims is "at bottom an equitable one, taking account of all relevant circumstances." *Pioneer*, 507 U.S. at 395.

Even if Plaintiffs were right that a due process violation allows them to file late claims at any point in time, no matter how many years after their vehicles were recalled, they ignore that there is no extant ruling that they did not receive due process as to the Bar Date Order or the Late Filed Claims Order. Under the May 2014 scheduling order, "the issue of whether a claim asserted in the Ignition Switch Actions is timely and/or meritorious against the Old GM bankruptcy estate (and/or the GUC Trust) [was] not a Threshold Issue" to be adjudicated. Dkt. 12697 at 4 n.4. As a result, the GUC Trust and Participating Unitholders did not brief or argue any issues related to those orders. *See* Dkts. 12983, 13030, 13047, 13096. And Plaintiffs explicitly *disavowed* seeking to file late claims or challenge the Bar Date Order. As the Second Circuit recognized:

> The bankruptcy court lifted the bar date for independent claims as a remedy. We note, however, that neither the Groman Plaintiffs nor Ignition Switch Plaintiffs requested this as relief. The Ignition Switch Plaintiffs only mentioned in a footnote in their opposition to the motion to enforce that Old GM failed to provide notice of

11

> the bar date. The Pre-Closing Accident Plaintiffs stated on behalf of all plaintiffs that 'Plaintiffs are not asserting a due process challenge to a bar date order or a discharge injunction issued in favor of a debtor.'

*Elliott*, 829 F.3d at 168 n.31 (quoting Dkt. 13021 at 48 n.26) (citations omitted).

Although Judge Gerber nonetheless found that Plaintiffs did not receive due process in connection with the Bar Date Order, *Motors Liquidation*, 529 B.R. at 574, the Second Circuit subsequently vacated that finding because the issue was not actually presented—Plaintiffs had not asked the Bankruptcy Court to lift the Bar Date, or sought leave to file late claims. *See Elliott*, 829 F.3d at 168-69 & n.31 ("Ultimately, it is the *parties*, and not the court, that must create the controversy."); *accord* Fed. R. Bankr. P. 9006(b)(1) (permitting courts to extend a passed deadline only "on motion made").[4]  As a result, even under Plaintiffs' erroneous view that they are entitled to wait to file late claims for as long as they wish, because they did not get due process as to the Bar Date Order, there is no such ruling in force that would allow them to do so.[5]

---

[4] In their motions, Plaintiffs argue that Judge Gerber's discussion of the Bar Date and due process remains in force and is law of the case. *See* Dkts. 13806 ¶¶ 39-41, 13807 at 7-8. That is demonstrably false: *dicta*, vacated rulings, and orders entered without subject matter jurisdiction are not binding on this Court. *See, e.g.*, *Walsh v. McGee*, 918 F. Supp. 107, 112 (S.D.N.Y. 1996); *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992).

[5] Plaintiffs have argued that if *Pioneer* does not apply to their motions, then discovery is inappropriate to ascertain, among other things, when they were on notice of their claims, when and why they deliberately decided to pursue New GM and not the GUC Trust, and why they made the strategic choice to sit on their supposed rights instead of attempting to file late claims. *See, e.g.*, Gillett Decl., Ex. 4, at 22:10-23:1, 25:9-26:3. Notwithstanding that this Court has already ordered Plaintiffs to answer interrogatories on those subjects (Dkt. 13869 at 2, 6-8), discovery would still be appropriate to support the GUC Trust's equitable defense of laches. *See, e.g.*, *In re Drexel Burnham Lambert Grp.*, 157 B.R. 532, 538-39 (S.D.N.Y. 1993) (applying laches to reject late claims by known creditor that did not receive notice of the bar date, due to movants' "dilatory conduct and the prejudice resulting from these delays"). After all, "equity aids the vigilant, not those," like Plaintiffs, "who sleep on their rights." *Ikelionwu v. United States*, 150 F.3d 233, 236-37 (2d Cir. 1998).

## II. PLAINTIFFS OBTAINED A TOLL OF THEIR TIME TO FILE LATE CLAIMS AFTER IT WAS ALREADY TOO LATE.

The GUC Trust does not dispute that Economic Loss Plaintiffs' time to file late claims has been tolled since May 16, 2014. *See* Dkt. 12697 at 3. But as the GUC Trust will fully explain when it addresses the (lack of) merit of Plaintiffs' motions, by that date the Economic Loss Plaintiffs' window to file late claims had already closed. Even assuming that they were not on notice to file claims until the February 2014 recalls (although their putative late-claimant class representative appears to have been on notice years earlier), and even with the benefit of the toll, their admitted tactical delay should preclude them from being permitted to file late claims now.

The GUC Trust also does not dispute that the Pre-Closing Accident Plaintiffs' time to file late claims was first tolled on December 21, 2015—nearly two years after the recalls began, and more than five years after they were in accidents. As of that date, the Trust had accepted the Pre-Closing Accident Plaintiffs tolling proposal and agreed it would "not subsequently argue … that the Pre-Sale Accident Plaintiffs' rights to allowed claims against the GUC Trust were impacted by" their voluntary decision to delay filing late claims between December 21, 2015, and five days after the Second Circuit decided the Threshold Issues appeal. Gillett Decl., Ex. 2.

Pre-Closing Accident Plaintiffs' motion is conspicuously silent about their successful effort to enter into this detailed tolling agreement with the GUC Trust in December 2015. *See* Dkt. 13807. Instead of embracing the toll they sought and obtained nearly two years after the recalls, or even acknowledging that it exists,[6] Pre-Closing Accident Plaintiffs now argue that their time to file late claims was tolled by the September 2014 scheduling order that they say incorporated the

---

[6] In a footnote in their motion, the Pre-Closing Accident Plaintiffs appear to misleadingly mischaracterize the tolling agreement that they proposed and entered into as follows: "in order to preserve claimant and judicial resources [Pre-Closing Accident Plaintiffs] determined, in consultation with counsel to the GUC Trust, not to file and seek allowance" of the late proofs of claim they had gathered "until after the Second Circuit ruled." Dkt. 13807 at 3 n.5.

13

toll Economic Loss Plaintiffs received in May 2014. *See* Dkt. 13807 at 12-13 n.12; *see also* Gillett Decl., Ex. 4 at 70:21-71:21. That baseless argument should be rejected out of hand.

*First*, Pre-Closing Accident Plaintiffs never said anything about a toll being in place from a scheduling order until after they filed their late-claims motion. They did not mention a pre-existing toll when they asked the GUC Trust for a toll in December 2015, or explain why the toll they sought would expire earlier than the toll that they (now) claim had already been protecting them. Pre-Closing Accident Plaintiffs also said nothing about receiving a toll via scheduling order when they asked the GUC Trust, in August 2016, to agree to extend the December toll to be coextensive with Economic Loss Plaintiffs' toll. (Of course, if Pre-Closing Accident Plaintiffs' toll had always been the same as Economic Loss Plaintiffs' toll, then their request would have made no sense and the GUC Trust's agreement would have accomplished nothing.)

*Second*, the plain language of the September 2014 scheduling order does not toll Pre-Closing Accident Plaintiffs' time to file late claims. The order does not explicitly mention tolling or otherwise prevent the GUC Trust or Participating Unitholders from arguing that Plaintiffs failed to timely file late claims. Nor does it implicitly address those topics. Pre-Closing Accident Plaintiffs highlight language stating that "*the schedule* governing New GM's Ignition Switch Motion to Enforce (which is subject to various Orders previously entered by the Court …) shall govern *the schedule* for the Pre-Closing Accident Motion to Enforce." Dkt. 12897 at 2 (emphases added). But the only logical interpretation of that language is that "various Orders" relate to "the schedule" on the Motion to Enforce, not to the parties' substantive rights. That interpretation also makes sense in context, because the September 2014 scheduling order addressed substantive rights in the decretal section and scheduling issues in numbered paragraphs delineating the applicable "initial case schedule," just as the May 2014 scheduling order did. *Compare* Dkt. 12697 at 3

14

(tolling Economic Loss Plaintiffs' time to file late claims, requiring like-minded parties to coordinate, and deeming the GUC Trust and Unitholders to be parties-in-interest on the Motion to Enforce as to Economic Loss Plaintiffs) *with* Dkt. 12897 at 2 (requiring like-minded parties to coordinate efforts and deeming the GUC Trust and Unitholders to be parties-in-interest on the Motion to Enforce as to Pre-Closing Accident Plaintiffs).

In evaluating Pre-Closing Accident Plaintiffs' strained reading of the scheduling order and unabashed attempt to disregard the tolling agreement they entered into, one has to wonder:

- Why would Pre-Closing Accident Plaintiffs have affirmatively reached out to the GUC Trust to negotiate a toll if they had already received one via court order?

- Why would Pre-Closing Accident Plaintiffs have stayed silent about a pre-existing court-ordered toll throughout the negotiation and extension of a toll with the GUC Trust, and then obtain a toll that was actually *less protective* than what was supposedly already in place?

- And why would Pre-Closing Accident Plaintiffs' toll have been implicitly tucked into scheduling-order provisions addressing briefing deadlines, when Economic Loss Plaintiffs' toll was explicitly noted in a decretal paragraph?

The obvious answer to all of these questions: Pre-Closing Accident Plaintiffs do not have any toll from any scheduling order. What they have is the toll that they proposed and the GUC Trust accepted, effective December 21, 2015, and the consequences of making a strategic decision to wait nearly two years after their vehicles were recalled, and more than five years after they were in accidents, to file late claims against the GUC Trust.

## CONCLUSION

This Court should find that *Pioneer* applies to Plaintiffs' motions under Rule 9006. This Court should further find that Economic Loss Plaintiffs' and Pre-Closing Accident Plaintiffs' time to file late claims was tolled starting on May 16, 2014, and December 21, 2015, respectively.

15

Dated: New York, New York  
March 6, 2017

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:    /s/ Mitchell A. Karlan  
    Mitchell A. Karlan  
    Gabriel K. Gillett

200 Park Avenue  
New York, New York 10166  
Telephone: (212) 351-4000  
Facsimile: (212) 351-4035

*Attorneys for Wilmington Trust Company,  
as Trustee for and Administrator of the  
Motors Liquidation Company General  
Unsecured Creditors Trust*

AKIN GUMP STRAUSS HAUER & FELD LLP

    Daniel H. Golden  
    Deborah J. Newman

One Bryant Park  
New York, New York 10036  
Telephone: (212) 872-1000  
Facsimile: (212) 872-1002

*Attorneys for Participating Unitholders*

16