**Reply Deadline: March 20, 2017 at 5:00 p.m. (Eastern Time)**
**Hearing Date and Time: TBD**

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
T: 212-813-8800
E: wweintraub@goodwinlaw.com
E: gfox@goodwinlaw.com

*Counsel for Ignition Switch Pre-Closing*
*Accident Plaintiffs Represented By*
*Hilliard Muñoz Gonzales L.L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                               :
In re:                                                         :   Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                            :   Case No.: 09-50026 (MG)
    f/k/a General Motors Corp., et al.,                     :
                                                               :
                                             Debtors.  :   (Jointly Administered)
---------------------------------------------------------------X

**BRIEF ON APPLICABILITY OF *PIONEER* AND TOLLING ISSUES IN CONNECTION WITH OMNIBUS MOTION BY CERTAIN IGNITION SWITCH PRE-CLOSING ACCIDENT PLAINTIFFS FOR AUTHORITY TO FILE LATE PROOFS OF CLAIM FOR PERSONAL INJURIES AND WRONGFUL DEATHS**

**TABLE OF CONTENTS**

**Page**

1.  The Four Threshold Issues Included the "Late Claim Issue."..................................................2

2.  The April 2015 Decision Clearly Decided that the Claimants Could File Proofs of Claim as a Remedy for the Due Process Violation. ..........................................................................3

3.  The Late Filed Claims Order Effectively Postponed Any Late Claims Motion By the Claimants Until the Due Process Issue Was Decided. ............................................................6

4.  The Equitable Mootness Ruling Effectively Postponed Any Late Claims Motion By the Claimants Until That Ruling Was Set Aside. .........................................................................7

5.  The Scheduling Orders for the Four Threshold Issues Effectively Postponed Any Late Claims Motions Until the Due Process Issue Was Decided. ...................................................7

6.  The Bankruptcy Court Made It Clear No Line-Jumping Would Be Permitted.....................10

7.  The December 2015 Agreement Among the Claimants, the GUC Trust, and the Participating Unitholders Has No Bearing on the Timeliness of the Claims. ........................13

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*City of New York v. New York, New Haven & Hartford R.R. Co.*,
344 U.S. 293, 73 S. Ct. 299, 97 L. Ed. 2d 333 (1953)..............................................................1

*Elliott v. General Motors LLC (In re Motors Liquidation Co.)*,
829 F.3d 135 (2d Cir. 2016)....................................................................................................1, 5

*Indian Motorcycle Assocs., Inc. v. Drexel Burnham Lambert Grp., Inc.*
*(In re Drexel Burnham Lambert Grp., Inc.)*,
151 B.R. 674 (Bankr. S.D.N.Y.), *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993) .................................5

*Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,
600 F.3d 135 (2d Cir. 2010)....................................................................................................4

*Koepp v. Holland*,
593 F. App'x 20 (2d Cir. 2014) ..............................................................................................4

*In re Motors Liquidation Co.*,
513 B.R. 467 (Bankr. S.D.N.Y.2014).....................................................................................11

*In re Motors Liquidation Co.*,
514 B.R. 377 (Bankr. S.D.N.Y. 2014)....................................................................................11

*In re Motors Liquidation Co.*,
529 B.R. 510 (Bankr. S.D.N.Y. 2015)....................................................................................1, 7

*In re Motors Liquidation Co.*,
534 B.R. 538 (Bankr.S.D.N.Y. 2014).....................................................................................12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)................................................................................................................5

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993)................................................................................................1, 2, 3, 5

*In re Residential Capital, LLC*,
No. 12-12020 (MG), 2015 WL 2256683 (Bankr. S.D.N.Y. May 11, 2015) ...........................1

*In re Thomson McKinnon Sec. Inc.*,
130 B.R. 717 (Bankr. S.D.N.Y. 1991)....................................................................................5

*United States v. Cardinal Mine Supply, Inc.*,
916 F.2d 1087 (6th Cir. 1990) ................................................................................................1

**Statutes**

11 U.S.C. § 105(a) ...........................................................................................................................2

11 U.S.C. § 502(a) ...........................................................................................................................6

28 U.S.C. § 157(b)(5) ......................................................................................................................3

**Other Authorities**

Fed. R. Bankr. P. 3003 ....................................................................................................................2

iii

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), dealt with whether the failure of a claimant to file a timely proof of claim despite its receipt of first class mail notice of the bar date was the result of excusable neglect. Unlike the situation in *Pioneer*, the claimants here (the "Claimants")[1] were known creditors of Old GM at the time the bar date was established, but they were not given the notice of the bar date that the Constitution requires.

If a known creditor has not received the actual notice of a claims bar date that due process requires, its claim cannot be barred as untimely. *See City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 73 S. Ct. 299, 97 L. Ed. 2d 333 (1953); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 2256683, at *6 (Bankr. S.D.N.Y. May 11, 2015) ("'[I]f a debtor who files for chapter 11 bankruptcy protection does not give 'reasonable notice' to a creditor of the bankruptcy proceeding and the applicable bar date(s), the creditor's proof of claim cannot be constitutionally discharged.'"). Indeed, courts have held that when a creditor does not receive adequate notice of a bar date, it "must be permitted to file [a claim] tardily. . . ." *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1089 (6th Cir. 1990).

This Court already ruled a constitutional violation occurred when Old GM failed to mail notice of the Bar Date to Claimants and that they were prejudiced as a result. *In re Motors Liquidation Co.*, 529 B.R. 510, 574 (Bankr. S.D.N.Y. 2015). It also ruled that the Claimants are not bound by the Bar Date Order. *Id.* at 583. The Second Circuit affirmed these rulings. *Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016).

The Claimants do not have to meet the standard of excusable neglect for the simple reason they were not neglectful and there is nothing to excuse. Based upon the clear

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the *Omnibus Motion to Allow Claims , File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, filed December 22, 2016 [Docket No. 13807] (the "PI Late Claims Motion").

1

ACTIVE/89568473.6

determinations of the Bankruptcy Court and the Second Circuit that the Claimants were deprived of due process and prejudiced in connection with notice of the Bar Date, the Bar Date is inoperable to the Claimants.  Consequently, the Claimants' proofs of claim are timely now without regard to *Pioneer*.

Further, due to the Late Filed Claims Order,[2] which deemed all claims filed after February 8, 2012 as untimely and disallowed, and the Court's careful sequencing of due process litigation relating to the Ignition Switch Defect (which is still not complete), there was no earlier time when it would have been appropriate for the Claimants to pursue proofs of claim against the GUC Trust.  The proofs of claim at issue are timely and discovery into and litigation over the *Pioneer* factors is unwarranted.

### 1. The Four Threshold Issues Included the "Late Claim Issue."

Any contention that the "late claim issue" was not part of the briefing is not credible. This Court set forth the final iteration of the "Four Threshold Issues" in a Supplemental Scheduling Order, entered July 11, 2014 [Docket No. 12770] (the "July 2014 Scheduling Order").  At least two of these threshold issues addressed whether late proofs of claim relating to the Ignition Switch Defect could be brought against the GUC Trust.  The "Remedies Threshold Issue" asked if there was a due process violation in connection with the Sale Motion, whether a remedy could or should be fashioned "and, if so, against whom." July 2014 Scheduling Order at 3.  Obviously, the "against whom" referred to Old GM or New GM.  A claim against Old GM after the Bar Date would of course implicate the efficacy of the Bar Date Order.  Even more directly implicating the issues of late claims and the Bar Date Order, the "Old GM Claim

---

[2] *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims* [Docket No. 11394].

Threshold Issue" was "[w]hether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust) . . . ." *Id.*

Footnote 4 to the July 14 Scheduling Order reinforces the Claimants' arguments. That footnote states: "For the avoidance of doubt, the issue of whether a claim asserted in the Ignition Switch Action is timely and/or meritorious against the Old GM bankruptcy estate (and/or the GUC Trust) is not a Threshold Issue." *Id.* at n.4. This footnote removed any eventual late claims motion from the front burner and moved it to the back burner. As to the text of footnote 4, clearly, the underlying merits of individual claims were not being considered in the generic briefing that was underway because (i) the underlying merits could not be considered without discovery and (ii) for personal injury and wrongful death claims, the merits of those claims could not be adjudicated in the Bankruptcy Court given the restrictions of 28 U.S.C. § 157 (b)(5). As to timeliness, because the due process issue had not yet been decided, the reference necessarily was to the *Pioneer* factors, but only to the extent applicable. The concept of "timeliness" presumes an operative bar date. However, as will be shown below, once the due process issue was decided, (i) the issue of "timeliness" was rendered inapplicable because of what this Court termed the "*Manville-2010* remedy," and (ii) if New GM or the GUC Trust did not want to be bound by an issue that was briefed and decided in the April 2015 Decision, they should have moved to reconsider or appealed. But they did neither.

      **2.**      **The April 2015 Decision Clearly Decided that the Claimants Could File Proofs of Claim as a Remedy for the Due Process Violation.**

The discussion of the proof of claim issue in the April 2015 Decision was not anecdotal or casual. The decision was structured with a Table of Contents that addressed proofs of claim under the headings "Application to Filing of Claims" in the Due Process section (I.B.6) and

3

"Claims" in the Remedies section (II.B). This Court could not have been more clear in its Summary of Conclusions:

> *In the claims allowance respect too, the Court concludes that Old GM's knowledge of facts sufficient to justify a recall, and its failure to provide the recall notice, effectively resulted in a denial of the notice due process requires.*
>
> \*\*\*
>
> *Both groups of Plaintiffs were plainly prejudiced with respect to the bar date for filing claims.*

*Id.* at 525 (emphasis added). Later in the decision, this Court specifically addressed the application of its due process analysis to the filing of proofs of claim:

> But with respect to the allowance of claims, the failure to send out Ignition Switch Defect recall notices, much more clearly than with respect to notice of the 363 Sale, resulted in a denial of the notice that due process requires . . . . By reason of its failure to provide Plaintiffs with either the notice required under the Safety Act ***or any other form of written notice***, Old GM failed to provide the Plaintiffs with the notice that due process requires. And because that failure prejudiced them in filing timely claims, the Plaintiffs were prejudiced as a result.

*Id.* at 574 (emphasis added, footnote omitted.). Finally, this Court succinctly concluded in its Remedies section:

> The remedy with respect to the denial of notice sufficient to enable the filing of claims before the Bar Date is obvious. That is leave to file late claims. And the Court may grant leave from the deadline imposed by the Court's Bar Date Order, just as the Circuit relieved Chubb and the easements owner from enforcement of the earlier orders in *Manville-2010* and *Koepp*.

*Id.* at 583. Lest there be any doubt, the *Manville-2010* and *Koepp* remedies are that a party that has been denied due process cannot be bound by the terms of an order that was not served on it in the manner required by the Due Process Clause. *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 158 (2d Cir. 2010) (Because it was denied due

4

process, "Chubb is therefore not bound by the terms of the 1986 Orders. Consequently, it may attack the Orders collaterally as jurisdictionally void"); *Koepp v. Holland*, 593 F. App'x 20, 23 (2d Cir. 2014) ("the district court correctly ruled that the Consummation Order did not extinguish plaintiffs' easements. Bankruptcy courts cannot extinguish the interests of parties who lacked notice of or did not participate in the proceedings."). For known creditors, due process requires actual notice by first class mail. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 319 (1950); *Elliott*, 829 F.3d at 161 ("Individuals with claims arising out of the ignition switch defect were entitled to notice by direct mail or some equivalent, as required by procedural due process.").

This means that the Bar Date Order cannot be enforced against the Claimants and the pending Late Claims Motion should be granted without regard to the *Pioneer* factors.[3] *See Indian Motorcycle Assocs., Inc. v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 151 B.R. 674, 680 (Bankr. S.D.N.Y.), *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993) ("If Claimant was a known creditor, it was entitled to actual notice of the bar date and will be permitted to file a proof of claim. If Claimant was unknown, the excusable neglect standard applies."); *In re Thomson McKinnon Sec. Inc.*, 130 B.R. 717, 720-21 (Bankr. S.D.N.Y. 1991) (creditor deprived of actual notice of the bar date "need not rely on the doctrine of excusable neglect in requesting an extension of time to file a proof of claim"). Indeed, granting the motion should be virtually automatic.[4]

---

[3] Contrary to the GUC Trust's counsel's efforts to analogize the Claimants' Late Claims Motion to parties filing claims in the year 2075, as will be shown below, the Claimants here acted more than promptly once the gating issues of due process and equitable mootness were decided. *See* Hrg. Tr. 1/12/17 at 29:18-22 (excerpt attached as Exh. A).

[4] The June 2015 Judgment also specifically held that there was a due process violation because of the lack of notice of the Bar Date and resulting prejudice to the Ignition Switch Pre-Closing Accident Plaintiffs. *See* June 2015 Judgment at Paragraph 6. Although the Court also stated that the doctrine of equitable mootness would prevent payment of claims from the GUC Trust's assets, that portion of the judgment was vacated by the Second Circuit.

5

### 3. The Late Filed Claims Order Effectively Postponed Any Late Claims Motion By the Claimants Until the Due Process Issue Was Decided.

Prior to its April 2015 Decision, this Court had already put into place another impediment to the Claimants filing late proofs of claim. Well before February 2014, when the existence of the Ignition Switch defect finally came to light, on February 8, 2012, this Court entered the Late Filed Claims Order. That order reversed the statutory presumption of 11 U.S.C. § 502(a) that proofs of claim are deemed allowed unless objected to and instead deemed claims filed after February 8, 2012 as disallowed.[5]

The practical effect of the Late Filed Claims Order was to disallow any late claim until the claimant had a basis to seek allowance. Until this Court determined in its April 2015 Decision that there had been a due process violation as to the Ignition Switch Pre-Closing Accident Plaintiffs, not only were those plaintiffs unaware they had a basis to file a late claim, but the filing of such a claim would have been a futile act. This is true because such claims were facially late and no ground yet existed to seek to undo their automatic disallowance. That said, counsel began accumulating proofs of claim from the Claimants almost as soon as the Bankruptcy Court entered its June 2015 Judgment (even though the claims were still equitably moot at that time). This was well before the rulings on the due process violation became "final," which still has not occurred due to New GM's pending request for Supreme Court review.

---

But the findings and holdings about the due process failures relating to the bar date remained intact and neither the GUC Trust nor New GM appealed from or challenged those rulings.

[5] Specifically, pursuant to the Late Filed Claims Order, all claims filed after February 8, 2012 were deemed disallowed unless such claim (i) amended a timely filed claim, (ii) was filed with the consent of the GUC Trust, or (iii) was the subject of a Bankruptcy Court order deeming such late claim timely filed. *See* Late Filed Claims Order, entered February 8, 2012 [Docket No. 11394]. The Ignition Switch Pre-Closing Accident Plaintiffs did not meet any of the three criteria and could not hope to meet the third criterion until the Four Threshold Issues had been decided.

6

### 4. The Equitable Mootness Ruling Effectively Postponed Any Late Claims Motion by Movants Until That Ruling Was Set Aside.

In addition to the impediment of the Late Filed Claims Order, the April 2015 Decision also held that any late claim filed by an Ignition Switch Pre-Closing Accident Plaintiff would be barred as equitably moot. *Motors Liquidation*, 529 B.R. at 592. The combined effect of the equitable mootness ruling and the Late Filed Claims Order was to render the act of seeking permission to file a late proof of claim relating to the Ignition Switch Defect a waste of time and resources. Given the twelve year concealment of the Ignition Switch Defect, coupled with the pendency of the second Motion to Enforce and the tolling imposed by the September 2014 Scheduling Order (discussed below), there was an uninterrupted period of seven years during which no legitimate basis existed for the Claimants to seek allowance of late claims relating to the Ignition Switch Defect. It was not until the Second Circuit vacated the equitable mootness ruling in July 2016, that the Claimants had a basis to argue that they should be permitted to file their proofs of claim.

In sum, until the due process violation was adjudicated, the Late Filed Claims Order and the Bar Date Order were impenetrable barriers to filing an untimely proof of claim. Any such proof of claim would be *per se* late because the mere publication of notice of the Bar Date would have been sufficient to bar the claim. That began to change when this Court found that the Claimants were prejudiced by the due process violation inflicted on them, but the equitable mootness ruling in the April 2015 Decision remained as a bar until July 2016.

### 5. The Scheduling Orders for the Four Threshold Issues Effectively Postponed Any Late Claims Motions Until the Due Process Issue Was Decided.

New GM filed its first motion to enforce the Sale Order (a "Motion to Enforce") on April 22, 2014, which motion only related to economic loss claims against New GM based upon the Ignition Switch Defect. In connection with the first Motion to Enforce, on May 16, 2014, this

7

Court entered the first of a series of scheduling orders. That order set forth an early iteration of the Four Threshold Issues and imposed in the sixth "ordered" paragraph a tolling on late claims motions: "ORDERED that the GUC Trust agrees that is shall not assert a timeliness objection to any claims that the Plaintiffs might attempt to assert against the Old GM bankruptcy estate and/or the GUC Trust, based directly or indirectly on the ignition switch issue, as a result of Plaintiffs' delay in asserting such claims during the 'Interval.'" May 16 Scheduling Order at 3.[6]

Even if the genesis of this tolling was an agreement between economic loss plaintiffs and the GUC Trust, the tolling was made a part of the ordered provisions of the May 16 Scheduling Order because this Court wanted a coordinated briefing schedule on the Ignition Switch issues and did not want the distraction of possibly hundreds of parties making their own motions on issues of particular interest to them. This Court maintained tight control over its own docket and dictated the timing and sequence in which it was going to decide the key issues raised by the Motions to Enforce. The Court decided that the Four Threshold Issues took precedence. Moreover, the adjudication of late claims motions ahead of the Court's determination of the Four Threshold Issues would make no sense given the focus of the Four Threshold Issues on whether a due process violation had occurred. Absent such determination, a late claims motion was either premature or would be denied outright because, absent finding a due process violation, claims filed five years after the Bar Date would be late and disallowed *per se*.

Months after the first Motion to Enforce was filed, on August 1, 2014, New GM filed a second Motion to Enforce, this time against the Ignition Switch Pre-Closing Accident Plaintiffs. By this date, the Stipulated Facts that were agreed to by the parties to the first Motion to Enforce

---

[6] That ordered paragraph further provided that "the 'Interval' shall commence on the date of this Order and shall end 30 days after a Final Order is entered with respect to an adjudication of the Threshold Issues (as defined in this Order), and (b) 'Final Order' shall mean the entry of an order by a court of competent jurisdiction, and there are no pending appeals, and the time period to file an appeal of such order has expired." *Id.*

were almost completed without any input from the Ignition Switch Pre-Closing Accident Plaintiffs.[7] Before New GM filed the August 2014 Motion to Enforce, this Court had entered a further Scheduling Order (the July 2014 Scheduling Order) pertaining only to the first Motion to Enforce. Subsequently, on September 15, 2014, the Court entered yet another Scheduling Order (the Sept. 2014 Scheduling Order), pertaining specifically to the August 2014 Motion to Enforce.

In substance, the Sept. 2014 Scheduling Order instructed the Ignition Switch Pre-Closing Accident Plaintiffs to "catch up" with the economic loss plaintiffs covered under the first Motion to Enforce and the prior Scheduling Orders and to sign onto the Stipulated Facts and to brief the Four Threshold Issues at the same time and pace as the economic loss plaintiffs. The Ignition Switch Pre-Closing Accident Plaintiffs were ordered to coordinate with the other parties (specifically including the "Designated Counsel" speaking for the economic loss plaintiffs covered by the first Motion to Enforce) and to avoid duplication and repetition.

More importantly, the Sept. 2014 Scheduling Order expressly channeled the Ignition Switch Pre-Closing Accident Plaintiffs into the same schedule as was set for the first Motion to Enforce: "Until further order of the Court, the schedule governing New GM's Ignition Switch Motion to Enforce (which is subject to various Orders previously entered by the Court, copies of which shall be provided by New GM to Plaintiffs upon written request) shall govern the schedule for the Pre-Closing Accident Motion to Enforce." Sept. 2014 Scheduling Order at 2.

In the context of the Ignition Switch Pre-Closing Accident Plaintiffs being ordered to **follow the schedule** set forth in the May 2014 Scheduling Order and get ready to brief the Four Threshold Issues at the same time as the economic loss plaintiffs and the crystal clear determination of this Court to control its docket and not have multiple litigants filing one-off

---

[7] The Stipulated Facts were filed with the Court eight (8) days after the second Motion to Enforce was filed and two months before the undersigned counsel was engaged to address this issues raised in the second Motion to Enforce.

9

motions such as premature motions on late claims, it is disingenuous for the GUC Trust and New GM to contend that the tolling was not part of the schedule imposed upon the Ignition Switch Pre-Closing Accident Plaintiffs by the May and Sept. 2014 Scheduling Orders.

The tolling undeniably put all late claims motions arising from Motions to Enforce into the queue <u>behind</u> the Four Threshold Issues. The definition of the "Interval" was driven by the timing and ultimate determination of the Four Threshold Issues. There would have been no purpose to the Claimants filing late claims motions until after the Four Threshold Issues had been determined. The tolling provision of the May 2014 Scheduling Order essentially says that. The motion would have sat inert for years. Nor would it have made sense for the Claimants to try to leap ahead of economic loss plaintiffs and file a late claims motion before those parties did, given the commonality of issues concerning due process and late claims shared between the two groups and the Court's requirement in the Sept. 2014 Scheduling Order that the Ignition Switch Pre-Closing Accident Plaintiffs coordinate with the economic loss plaintiffs and avoid repetition.

**6.** **<u>The Bankruptcy Court Made it Clear No Line-Jumping Would be Permitted</u>.**

This Court repeatedly demonstrated its determination to control its docket and the sequence of litigation. For this reason, among the others stated, the Claimants adhered to the schedule dictated by this Court in the Scheduling Orders and did not attempt to "jump the line" and have their late claim issues addressed in any order other than the sequence set by the Court. Apart from the practical impossibility of having facially late claims accepted as timely before the due process rulings were made and before the Second Circuit vacated the equitable mootness ruling, clear signs were given to all of the litigants to await their turn. If the tolling provision of the May 2014 Scheduling Order (as incorporated into the Sept. 2014 Scheduling Order) was not a sufficient signal, several rulings of this Court and hearing colloquies were unmistakable warnings that this Court was going to proceed in a specific order.

10

One of the earliest indications was this Court's ruling in the Phaneuf matter. There, a plaintiff in one of the many lawsuits caught up in the first Motion to Enforce sought to have its issues and problems with the application of the Motion to Enforce to its particular lawsuit adjudicated ahead of the timing set for the "communal" determination of the Four Threshold Issues. This plaintiff (unlike virtually all of the other plaintiffs affected by the first Motion to Enforce) had refused to voluntarily stay its lawsuit while the Four Threshold Issues were being briefed and decided. In response, this Court stated:

> In this jointly administered proceeding in which I address issues in New GM's Motion to Enforce and the Groman Adversary, I must determine whether one out of 88 Ignition Switch Actions—brought by a group of plaintiffs (the "Phaneuf Plaintiffs"), suing on their own behalf and on behalf of a purported class—should be allowed to proceed when the plaintiffs in every other Ignition Switch Action agreed to stay their actions while the issues in the Motion to Enforce were being litigated. Some of the issues that I'll later decide may turn out to be difficult, but those here are not. I rule that the Phaneuf Plaintiffs should be treated no differently than those in the 87 other Ignition Switch Actions who agreed to voluntary stays, with adherence to the orderly procedures in this Court that were jointly agreed to by counsel for those other plaintiffs and New GM.

*In re Motors Liquidation Co.*, 513 B.R. 467, 470 (Bankr.S.D.N.Y.2014). The Court went on to hold that "[u]nder section 105(d) authority given to me by Congress, I established an orderly process…. My efforts to manage 88 cases, with largely overlapping issues, require that they proceed in a coordinated way." *Id.* at 478.

In August 2014, this Court again addressed whether issues would be adjudicated out of sequence. "Once again, a plaintiff group wishing to proceed ahead of all of the others (only one week after I issued the written opinion memorializing my earlier oral ruling proscribing such an effort) has asked to go it alone. Its request is denied." *In re Motors Liquidation Co.*, 514 B.R. 377, 380 (Bankr. S.D.N.Y. 2014). Still not having received the message, the same lawyer

11

implicated in that decision (but this time for a different plaintiff) again tried to go his own way, first, by voluntarily failing or refusing to brief the Four Threshold Issues with the group and, then, collaterally attacking the rulings after the issuance of the April 2015 Decision and the June 2015 Judgment. This Court began its decision rejecting these efforts by stating:

> [i]n still another filing in his efforts to go it alone in connection with litigation arising from the announcement by [New GM] of the defects in its ignition switches . . . and the issuance of two opinions in connection with that controversy following briefing by other counsel who ably presented plaintiffs' arguments, Gary Peller Esq., this time on behalf of the "Bledsoe Plaintiffs," a subset of the clients he has represented (individually and as purported class representatives) in this case has filed many motions seeking post-judgment relief from this Court. . . . The motions are denied.

*In re Motors Liquidation Co.*, 534 B.R. 538, 540-41. (Bankr.S.D.N.Y.2014). The Court went on to list counsel's unsuccessful efforts to go it alone. "All in all, Peller and Hornal have made more than 20 substantive filings (not counting notices of appeal and notices for leave to appeal), all of which, no matter how frivolous were considered by the Court; seven of which resulted in substantive orders of the Court; and three of which were addressed in full written opinions (or parts of larger opinions) by the Court." *Id.* at 549-50.

No sensible lawyer participating in these proceedings could have viewed the Court's alignment and selection of the Four Threshold Issues, its issuance of multiple Scheduling Orders governing the timing of briefings and hearings, its Herculean efforts to maintain order by coordinating so many plaintiffs into a lock-step process, and its consistent refusal to hear one group ahead of another or to take issues out of order, as an invitation to "go it alone" on late claims issues. Because the late claims issues were not ripe until the due process and equitable mootness issues were finally decided, what New GM and the GUC Trust now advocate is that the Claimants should have embarked on a fool's errand back in 2014. This contention is particularly disingenuous given the constant participation of the GUC Trust and the Unitholders

12

in this litigation going all the way back to 2014 precisely because this Court recognized the GUC Trust would be affected by the proofs of claim that might be filed at the end of the "Interval."[8]

### 7. The December 2015 Agreement Among the Claimants, the GUC Trust, and the Participating Unitholders Has No Bearing on the Timeliness of the Claims.

The Claimants expect that the Participating Unitholders and the GUC Trust will attempt a "gotcha" and argue that the Claimants should have filed their claims sooner than they did because of an arrangement reached with the Claimants' counsel in January 2016 (effective as of December 21, 2015). Any such argument misses the point and should fail.

The agreement reached in January 2016 provided that, until the equitable mootness ruling were reversed on appeal, the Claimants would not file and seek allowance of executed proofs of claim that counsel had been accumulating in the summer and fall of 2015, or seek to stay distributions by the GUC Trust. In exchange, the GUC Trust and Unitholders agreed that

> In the event that the Second Circuit reverses the Equitable Mootness Ruling, the GUC trust and the Unitholders represented by Akin Gump will not subsequently argue to any court or tribunal that the Pre-Sale Accident Plaintiffs' rights to allowed claims against the GUC Trust were impacted by the Pre-Sale Accident Plaintiffs' failure to file and seek allowance of their proofs of claim during the period between the date of this email through the date that is five business days after the Second Circuit's reverses Equitable Mootness Ruling. All parties' rights and arguments with respect to the period prior to the date of this email would be fully reserved.

The reason why the Claimants proposed this agreement was to ensure the GUC Trust and Participating Unitholders could not argue the Claimants were dilatory for not filing the proofs of claim that they had executed in mid- to late-2015, when it was clear any reversal of the ruling barring the claims as equitably moot would not be issued by the Second Circuit for almost a year.

---

[8] Indeed, at an early hearing, counsel for the Participating Unitholders insisted that equitable mootness be added to the Four Threshold Issues in order to stifle any late claims motion before it was filed. *See* Hrg. Tr. 8/18/14, at 61:24-63:14 (excerpt attached as Exh. B).

13

ACTIVE/89568473.6

Nothing about this arrangement changes the fact that, until the Bankruptcy Court issued its April 2015 Decision and June 2015 Judgment, the proofs of claim were deemed disallowed as untimely and, until the Second Circuit issued its ruling in July 2016, the proofs of claim were deemed equitably moot.

Dated: March 6, 2017

Respectfully submitted,

/s/ *William P. Weintraub*
William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8800
Fax: 212.355.3333
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel for Ignition Switch Pre-Closing Accident Plaintiffs Represented By Hilliard Muñoz Gonzales L.L.P.*

14