UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.:  09-50026 (MG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------------X

## DECLARATION OF GABRIEL K. GILLETT IN SUPPORT OF
## THE OPENING BRIEF OF GUC TRUST ADMINISTRATOR
## AND PARTICIPATING UNITHOLDERS ON THE APPLICABILITY
## OF *PIONEER* AND TOLLING TO PLAINTIFFS' MOTIONS TO FILE LATE CLAIMS

I, Gabriel K. Gillett, an attorney admitted to practice before this Court, hereby declare:

1.      I am an associate at the law firm of Gibson, Dunn & Crutcher, LLP, counsel to Wilmington Trust Company, as trustee for and administrator of the Motors Liquidation Company GUC Trust (the "GUC Trust").  I submit this declaration in support of the Opening Brief of GUC Trust Administrator and Participating Unitholders on the Applicability of *Pioneer* and Tolling to Plaintiffs' Motions to File Late Claims.

2.      Attached hereto as Exhibit 1 is a true and correct copy of excerpts of the transcript of the May 2, 2014 hearing in the above-captioned bankruptcy proceedings.

3.      Attached hereto as Exhibit 2 is a true and correct copy of an email exchange between Gregory W. Fox and Lisa H. Rubin beginning on December 21, 2015.

4.      Attached hereto as Exhibit 3 is a true and correct copy of an email exchange between Gregory W. Fox and Keith R. Martorana beginning on August 9, 2016.

5.      Attached hereto as Exhibit 4 is a true and correct copy of excerpts of the transcript of the January 12, 2017 hearing in the above-captioned bankruptcy proceedings.

6.    I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge.


Dated:  New York, New York
         March 6, 2017


                                                    /s/ Gabriel K. Gillett
                                                      Gabriel K. Gillett

# **<u>EXHIBIT 1</u>**

                                                        Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5                                        Chapter 11

6    MOTORS LIQUIDATION COMPANY,         Case No.: 09-50026(REG)

7    et al, f/k/a General Motors         (Jointly Administered)

8    Corp., et al.,

9

10          Debtors.

11   - - - - - - - - - - - - - - - - - - - - - - - - - x

12   STEVEN GROMAN, ROBIN DELUCO,

13   ELIZABETH Y. GRUMET, ABC

14   FLOORING, INC., MARCUS

15   SULLIVAN, KATELYN SAXSON,           Adv. Pro. No.:

16   AMY C. CLINTON, AND ALLISON         14-01929(REG)

17   C. CLINTON, on behalf of

18   themselves, and all other

19   similarly situated,

20               Plaintiffs,

21          v.

22   GENERAL MOTORS LLC,

23               Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - x

25

1                    U.S. Bankruptcy Court

2                    One Boling Green

3                    New York, New York

4

5                    May 2, 2014

6                    9:46 AM

7

8

9    B E F O R E :

10   HON ROBERT E. GERBER

11   U.S. BANKRUPTCY JUDGE

12

13

14   Hearing re:  Status Conference

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South and Sheila Orms

1    A P P E A R A N C E S :

2    KING & SPALDING LLP

3        Attorneys for General Motors LLC

4        1185 Avenue of the Americas

5        New York, NY 10036-4003

6

7    BY:  ARTHUR J. STEINBERG, ESQ.

8        SCOTT DAVIDSON, ESQ.

9

10   KIRKLAND & ELLIS

11       Attorney for New GM

12       300 North LaSalle

13       Chicago, IL 60654

14

15   BY:  RICHARD C. GODFREY, P.C., ESQ.

16

17   GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP

18       Attorneys for the Plaintiffs

19       437 Madison Avenue

20       New York, NY 10022

21

22   BY:  JONATHAN FLAXER, ESQ.

23       S. PRESTON RICARDO, ESQ.

24

25

**Page 4**

1   GIBSON, DUNN & CRUTCHER LLP

2        Attorney for Motors Liquidation GUC Trust

3        200 Park Avenue

4        New York, NY 10166-0193

5

6   BY:  KEITH R. MARTORANA, ESQ.

7

8   ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.

9        Attorney for Ratzlaff, et al.

10        19 Corporate Plaza Drive

11        Newport Beach, CA 92660

12

13   BY:  MARK P. ROBINSON, JR., ESQ.

14

15   GOODWIN ROCTER LLP

16        Attorneys for the South Texas Plaintiffs

17        The New York Times Building

18        620 Eighth Avenue

19        New York, NY 10018

20

21   BY:  WILLIAM P. WEINTRAUB, ESQ.

22        EAMONN O'HAGAN, ESQ.

23

24

25

Page 5

1   BROWN RUDNICK LLP

2        Attorneys for Ratzlaff, et al.

3        Seven Times Square

4        New York, NY 10036

5

6   BY:  EDWARD WEISFELNER, ESQ.

7        DAVID J. MOLTON, ESQ.

8        HOWARD STEEL, ESQ.

9

10   AKIN GUMP STRAUSS HAUER & FELD LLP

11        Attorneys for Holders of Units in the GUC Trust

12        One Bryant Park

13        New York, NY 10036-6745

14

15   BY:  NAOMI MOSS, ESQ.

16        DANIEL GOLDEN, ESQ.

17

18   OTTERBOURG

19        230 Park Avenue

20        New York, NY 10169

21

22   BY:  DAVID M. POSNER, ESQ.

23

24

25

**Page 6**

```
 1   LOWENSTEIN SANDLER LLP

 2        Attorney for Plaintiffs Darby and Jones

 3        65 Livingston Avenue

 4        Roseland, NJ 07068

 5

 6   BY:  JOHN K. SHERWOOD, ESQ.

 7

 8   LOWENSTEIN SANDLER LLP

 9        Attorney for Plaintiffs Darby and Jones

10        1251 Avenue of the Americas

11        New York, NY 10020

12

13   BY:  MICHAEL S. ETKIN, ESQ.

14

15   UNITED STATES DEPARTMENT OF JUSTICE

16        Attorney for the U.S. Trustee

17        U.S. Federal Office Building

18        201 Varick Street

19        Suite 1006

20        New York, NY 10014

21

22   BY:  BRIAN MASUMOTO, ESQ.

23

24

25
```

**Page 7**

1  CAPLIN & DRYSDALE, CHARTERED

2       One Thomas Circle, NW

3       Suite 1100

4       Washington, DC 20005

5

6  BY:  PETER VAN N. LOCKWOOD, ESQ.

7

8  CAPLIN & DRYSDALE, CHARTERED

9       600 Lexington Avenue

10      21st Floor

11      New York, NY 10022-7619

12

13  BY:  ELIHU INSELBUCH, ESQ.

14

15  STUZMAN, BROMBERG, ESSERMAN & PLIFKA

16      2323 Bryan Street

17      Suite 2200

18      Dallas, TX 75201-2689

19

20  BY:  SANDER L. ESSERMAN, ESQ.

21

22

23

24

25

**Page 8**

1    KELLEY DRYE & WARREN LLP

2         101 Park Avenue

3         New York, NY 10178

4

5    BY:  BENJAMIN D. FEDER, ESQ.

6

7    PACHULSKI STANG ZIEHL & JONES

8         Attorney for Plaintiffs

9         780 Third Avenue

10        36th Floor

11        New York, NY 10017-2024

12

13   BY:  MARIA A. BOVE, ESQ.

14

15   BECNEL LAW FIRM, LLC

16        Attorney for Jomaka Coleman, et al.

17        425 West Airline Highway

18        Suite B

19        Laplace, LA 70068

20

21   BY:  DANIEL BECNEL, JR., ESQ. (TELEPHONIC)

22

23

24

25

Page 26

```
 1    the things like selection of lead counsel, the things that

 2    we can agree are purely administrative, and we should defer

 3    consideration of the amended complaint issue until the next

 4    status conference.

 5              THE COURT:  But matters of the character that the

 6    MDL could appropriately determine in your view could include

 7    whether the pretrial proceedings take place in say

 8    California on the one hand or New York on the other?

 9              MR. STEINBERG:  For the MDL I think the MDL should

10    be able to select which forum is going to go forward on

11    generally the MDL action to the extent that the MDL action

12    will ever go forward.

13              THE COURT:  Okay.  Continue, please.

14              MR. STEINBERG:  The -- Your Honor, with regard to

15    the -- your tentative ruling on the stipulated record and

16    that we don't do admissions, that is essentially what we

17    have been trying to urge on the plaintiffs.

18              One of the issues was that we had discussions

19    separately with one group versus another group and they had

20    differing views on certain issues.  And even with the group

21    that had a larger issue what we were getting to some extent

22    was the lowest common denominator.  When you have 15 people

23    having suggestions sometimes you get 15 suggestions because

24    no one really wants to whittle it down and they leave it up

25    to us to do it.
```

Page 27

```
 1            We urge to do a stipulated record under the theory
 2    that it's too early to do admissions, it is a -- really just
 3    a cost shifting issue as Your Honor had identified, and it
 4    leads to a dialogue.  If they -- if they propose that they
 5    want us to agree to something instead of me answering as I
 6    would answer an admission I'd be sitting there saying I
 7    can't do that but I can do something different and then we
 8    would have an iterative dialogue to be able to try to
 9    present what the issues are and then I wouldn't have to try
10    to do the reflexive issue, which is that if you want
11    admissions then maybe I have admissions that I want to ask
12    of you.  Did you know of the bankruptcy proceeding?  Did you
13    know of a problem with your car?  Those things and try to
14    identify those issues, which may be relevant to certain of
15    the issues whether it's -- that they may tangentially relate
16    to the fraud on the Court issue, which may be off the table
17    now, but -- so I said stay with the stipulation and if we
18    can't agree to it we'll have a status conference in June and
19    we'll tell the judge this is as far as we could get and we
20    couldn't get all the way there, and if we couldn't agree on
21    everything then you could propose what kind of limited
22    discovery you think you need to conclude those facts that
23    are necessary to determine the purely legal issue.  We'll be
24    able to evaluate it.  And then if we can't agree with that
25    we'd be before Your Honor on something specific and
```

Page 28

1    concrete.

2           And the problem that we were having between now

3    and May 2nd is that there was a lot of general propositions

4    that were asserted and many times the devil is in the

5    detail, and you need to know when someone says it's purely

6    administrative it's not substantive you really need to know

7    what they are talking about.  When people say we can agree

8    to some facts and it's not going to be big, it's going to be

9    narrowly tailored you need to know what someone means when

10   they say narrowly tailored, because when actually try to pin

11   it down it becomes a lot more difficult.

12          So what we were proposing -- and I think there was

13   a lot of receptivity on it from the other side -- was a walk

14   and then run, which is give us a chance to try to do an

15   exchange and we'll see how good we are, and give us a chance

16   if we can't fill in all the gaps to how to complete the

17   discovery and we'll see how good we are, and if we can't do

18   it then I know that you're going to bridge the gap for us

19   and then we'll both live with whatever Your Honor rules.

20   And we're only looking to defer that consideration where we

21   otherwise couldn't agree for like a six or seven-week

22   period.

23          And the reason why we think that time period going

24   a little longer versus shorter is better -- and I think Your

25   Honor eluded to that as one of your tentative rulings that

Page 29

1    sometimes things take a little longer and these serious

2    issues -- is that until we know how they've organized -- and

3    it's really their job to organize, but it's our burden to

4    make sure that we're dealing with 2 groups of people,

5    4 groups of people, or 20 groups of people, because it

6    becomes harder to figure out briefing schedules, potential

7    discovery, stipulation of facts if we don't know who the

8    people are that we're dealing with you may need to have a

9    little more time until they get better organized to be able

10   to do that.  That's why we actually suggest in our agenda

11   letter is just tell us if you formed a group.  That has the

12   salutary effect of at least we know who we're dealing with

13   and Your Honor will know whether they actually formed the

14   group, and those who decide they want to be outliers well

15   then they will have to stand up and tell Your Honor why they

16   need to be an outlier and the liaison groups couldn't

17   properly be formed.

18           But that's all we were trying to say on that

19   issue, which is give them an opportunity to get themselves

20   organized and let us know how successful you were, and where

21   you were not fully successful just let us know because we --

22   we on our side of the table procedurally have to deal if

23   they're not fully organized and then ultimately Your Honor

24   will have that same issue about how things are being

25   presented to Your Honor.

1          With regard to -- so that's why we thought we

2     needed a little more time.  And by the way, the dates that

3     we selected in our letter were given to us by one of the

4     plaintiff groups, and the other plaintiff group actually

5     said, while they shortened our dates, they also said in

6     their letter that they're flexible about the dates.  So I

7     don't think ultimately at the end of the day we're going to

8     disagree about dates, about when we're going to be here.

9          I think the general proposition is that between

10    now and some time in mid to late June when we'll have

11    another status conference we're going to try to accomplish a

12    stipulated record for briefing the threshold issues and to

13    see whether there's any discovery that is it warranted or

14    not with regard to that stipulated record.

15         And I would suggest also, and this is off my

16    agenda letter, but picking off on the tentative ruling,

17    trying to identify during that period of time the other

18    issues which are not threshold issues, the other bankruptcy-

19    related issues that we'd ask Your Honor to consider, and

20    we'd be doing all of that presentation at the next status

21    conference.  And at that next status conference, to the

22    extent that the defendants are not fully organized, that we

23    would try to -- and it wouldn't be me, but it would be Your

24    Honor and the plaintiffs -- try to figure out how they can,

25    you know, get to the end to themselves more fully organized.

```
                                                              Page 31

 1              The tentative that you had about the GUC Trust,

 2     late-filed claims, excusable neglect, we actually think that

 3     this is an issue that should be dealt with.  It is not our

 4     issue, but to the extent that they've raised or some of them

 5     have raised a procedural due process issue relating to the

 6     bar order, which was after the sale order had taken place

 7     and they're saying that they don't have a remedy -- an

 8     effective remedy against Old GM, well there is a GUC Trust,

 9     there are a number of -- there's a number of values still

10     left in the GUC Trust.  Whether they actually are a

11     creditor, where they actually have excusable neglect I'm not

12     trying to prejudge it, but we were urging that they

13     shouldn't just assume that there was nothing there when

14     there is potentially something there and they should be able

15     to and should be almost in fact required to at least explore

16     that as an alternative to try to get a recovery, if they're

17     entitled to a recovery.  I wasn't trying to say that they

18     were or not.

19              As far as the suggestion of mediation, it is

20     always hard to say that you're against mediation.  The only

21     thing that I would say, Your Honor, is that New GM has hired

22     Ken Feinberg, who is a very well known person who tries to

23     figure out how to deal with circumstances and to how to

24     adjust situations on a non-legal base, but to try to

25     negotiate a resolution.
```

Page 70

1     like jerks on a going forward basis.

2            The second reason I brought it to Your Honor's

3     attention is, to the extent that people have historically

4     signed the pieces of paper that the jerks gave them to

5     review, I haven't seen anything in the record other than an

6     oral communication that said New GM will not hold those

7     releases or agreements to arbitrate against the plaintiffs,

8     I raise it now only because for all of our benefit, we'd

9     like to see something about this in writing at some point.

10           I brought it up in the context of Your Honor's

11    concern about presale conduct and post-sale conduct, and

12    Your Honor, the plaintiffs very much agree that to the

13    extent that one could readily distinguish between actions

14    that go to New GM's conduct, that they can't, as Mr.

15    Steinberg indicated, properly be the subject of the

16    injunction.

17           But the devil is also in the details on this one

18    because we're not --

19           THE COURT:  Pause for a second.  Mr. Steinberg,

20    I'm going to give you another chance to be heard, why don't

21    you sit down for now.

22           MR. WEISFELNER:  In terms of what constitutes New

23    GM's actions versus Old GM's actions, you heard at least one

24    example of how it's difficult, and that is New GM does a

25    recall and could arguably be replacing the ignition switch,

Page 71

1    not with a new ignition switch, but with an old ignition

2    switch, or that parties are concerned that, you know, they

3    went to their dealer, they got a new ignition switch, they

4    don't know now whether it was a recalled ignition switch or

5    an old switch.

6            But, Your Honor, and again, I just mention this,

7    not because I think it needs to be resolved, or because I

8    have any evidence to prove it's true, but a lot of what

9    we're reading suggests that calling this an ignition switch

10   defect is an impermissible narrowing of what the issues are.

11           The ignition switch may or may not have been the

12   cause of air bag failure to deploy.  The fixing of the

13   ignition switch, given the electronic calibrations between

14   the switch and the air bags may or may not address the air

15   bag problem.  I don't know the answer to any of this.

16           Other than to tell you again, when we parse out or

17   attempt to parse out actions against New GM for New GM

18   conduct, or things that New GM definitively agreed to assume

19   as part of the sale process, versus actions that could

20   arguably or do, in fact, implicate the injunction that's

21   part of the sale order is, for lack of a better term, easier

22   said than done.

23           Nevertheless, the plaintiffs as a whole do reserve

24   the right if this process gets bogged down or takes too

25   long, to say, you know what, maybe the quickest thing to do

Page 72

1    is to spend the time and energy that hopefully we won't have

2    to, to parse through whatever's been filed, and to

3    demonstrate to Your Honor that the allegations that are

4    being made, the liability that's being ascribed, and the

5    damages sought to be obtained as they relate to New GM

6    conduct do not implicate Your Honor's injunction.

7              For now, however, we'd prefer not to get into all

8    of those potentially dicey issues, as to what does and what

9    doesn't constitute a direct claim against New GM that is

10   outside of the injunction, at least until the parties work

11   hard on trying to get to a position where the due process

12   issue gets teed up for Your Honor's consideration.

13             And if we can do that in an effective vehicle and

14   quickly, then all of the other noise that may be necessary

15   down the road could be avoided.  Because whether it's

16   actions against New GM or actions that New GM contends

17   they're not liable for because of the injunction, if the

18   injunction is dissolved as to this group, because of lack of

19   fundamental due process, it doesn't matter.

20             So I'd prefer, we collectively would prefer to

21   deal with that issue as, when and if it does matter.

22             I'm going to skip over the lemon law issues,

23   because I don't think we have much difference of view with

24   regard to the answer that you got from Mr. Steinberg.  I do

25   want to stress on your question number four, the inability

Page 73

1    to get together.

2            The plaintiffs are together, and with the

3    exception of again one outlier on the issue of what ought to

4    be part of the threshold and what not be part of the

5    threshold, there's not a plaintiff group that we're aware of

6    that isn't prepared to have their interests in the first

7    instance, represented by one of the three of us, with

8    consultation with Ms. Cyganowski, subject, of course, their

9    ability to stand up and say, hey, they didn't present my

10   issue.  But we have a commonality of position, a commonality

11   of interest, and a desire to work collectively through these

12   three lawyers.

13           I'm just trying to see if there was anything else.

14   You've heard our views with regard to an adversary

15   proceeding versus motion practice.  I didn't touch on the

16   impact on Old GM and the GUC Trust.  And I liked Your Honor

17   took comfort in the fact that Mr. Golden is here, as I do

18   take comfort any time Mr. Golden shows up anywhere.

19           Look, Your Honor, it's obvious, and you get it,

20   that one of the arguments that New GM may make is if these

21   individuals were damaged or deprived of due process, let's

22   not jump to the conclusion that the right remedy is to have

23   the injunction not apply to them.

24           Instead let's consider the alternative remedy of

25   having them all get shifted into the category of late filed

Page 74

1    claims, judicially acknowledged late filed claims, will now,

2    as part of a bankruptcy process, go through a procedure for

3    determining what those claims might be worth individually or

4    on some class basis.

5            And when that process is all over, then we can let

6    the GUC Trust and its beneficiaries know that their expected

7    future dividends may have to be adjusted or wiped out in

8    order to allow these new beneficiaries of the trust to, in

9    effect, catch up on distributions that have already been

10   made, if in fact, that can be done as a matter of

11   practicality.

12           And I anticipate that holders of the units

13   including Mr. Golden's clients and others may very well have

14   an opinion about that.

15           Again, it seems to me that before we ever get near

16   that thorny issue, where lots of people are going to be

17   impacted, and it may not be practical, if we resolve the

18   threshold issue of whether, because of lack of due process

19   the injunction ought not to apply, then we never get into

20   this issue.  Unless someone were to argue that

21   notwithstanding the denial of due process the right remedy

22   is not let the injunction dissolve, but the right remedy is

23   somehow to treat these people as if they had late filed

24   claims, and will now just dilute all of the other

25   beneficiaries of the GUC Trust.

1              MR. MARTORANA:  Your Honor, I stand because you

2      had suggested at the outset of this hearing the possibility

3      that issues related to the GUC Trust and claims against the

4      GUC Trust might be better addressed as a threshold issue to

5      start.

6              Based upon what I'm hearing today, it sounds like

7      there's a consensus among the parties here at least, that

8      this is something that should not be addressed as a

9      threshold issue.

10             THE COURT:  Well, that depends on who you're

11     including within that consensus, Mr. Martorana.

12             MR. MARTORANA:  I meant just these parties over

13     here.  Don't -- you would like to have it addressed to the

14     threshold issue?

15             UNIDENTIFIED:  I'll address it later.

16             MR. MARTORANA:  Okay.  All right.  Then I guess

17     there is no consensus on that, but I will tell you that from

18     our perspective, we believe that it should not be addressed

19     as a threshold issue.

20             We do believe that first off it will require at

21     least some discovery, probably substantial discovery.  We

22     also believe, you know, particularly because as it relates

23     to issues of excusable neglect, which are fact sensitive.

24             We also believe that it's not dispositive of -- as

25     Mr. Weisfelner said the -- you know, the fundamental issue

Page 83

1    here which is whether or not claims can be asserted against

2    New GM.

3            Moving off it being a threshold issue, we also

4    don't believe that this is an issue frankly that needs to be

5    addressed at any point during this hearing -- during this

6    proceeding.

7            No claimants, none of the plaintiffs, no claimants

8    or potential claimants had raised this as a possibility.  No

9    one has filed a motion to lift the bar date.  The only

10   person that has raised it has been New GM, based upon, you

11   know, some statements of fact in some pleadings.  But the

12   only person that has actually moved forward with it is New

13   GM, and frankly, you know, it's our view that this is

14   essentially a way to deflect liability away, and you know,

15   the attention away from New GM and put it on to a third

16   party.

17           To the extent that Your Honor is inclined to rule

18   against us and have it either be dealt with as a threshold

19   issue or as a -- I guess, a subsequent issue, we would

20   request to participate in any of the discovery that does

21   transpire.  And then to the extent that there are any claims

22   against New GM to be resolved, we would also ask to

23   participate in any mediation.

24           THE COURT:  Okay.  Thank you.

25           MR. FLAXER:  Thank you.

# EXHIBIT 2



**From:** Fox, Gregory W. [mailto:GFox@goodwinprocter.com]
**Sent:** Monday, January 4, 2016 11:03 AM
**To:** Rubin, Lisa H. <LRubin@gibsondunn.com>
**Cc:** Williams, Matt J. <MJWilliams@gibsondunn.com>; Daniel H. Golden (dgolden@akingump.com)
<dgolden@akingump.com>; dnewman@akingump.com; Weintraub, William P <WWeintraub@goodwinprocter.com>
**Subject:** RE: Subject to FRE 408 and state law equivalents

Thanks Lisa

---

**From:** Rubin, Lisa H. [mailto:LRubin@gibsondunn.com]
**Sent:** Monday, January 04, 2016 10:37 AM
**To:** Fox, Gregory W.
**Cc:** Williams, Matt J.; Daniel H. Golden (dgolden@akingump.com); dnewman@akingump.com; Weintraub, William P
**Subject:** RE: Subject to FRE 408 and state law equivalents

Thanks, Greg.  The Participating Unitholders and GUC Trust agree to your proposal, as set forth below in your December 21 e-mail.

Best regards,

Lisa

**Lisa H. Rubin**
Of Counsel

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2390 • Fax +1 212.716.0790
LRubin@gibsondunn.com • www.gibsondunn.com

---

**From:** Fox, Gregory W. [mailto:GFox@goodwinprocter.com]
**Sent:** Monday, January 04, 2016 10:19 AM
**To:** Rubin, Lisa H.
**Cc:** Williams, Matt J.; Daniel H. Golden (dgolden@akingump.com); dnewman@akingump.com; Weintraub, William P
**Subject:** RE: Subject to FRE 408 and state law equivalents

Lisa,

I hope you had a pleasant holidays.  Checking in on the below.

Thanks,

Greg

**From:** Fox, Gregory W.
**Sent:** Wednesday, December 23, 2015 5:52 PM
**To:** 'Rubin, Lisa H.'
**Cc:** Williams, Matt J.; Daniel H. Golden (dgolden@akingump.com); dnewman@akingump.com
**Subject:** RE: Subject to FRE 408 and state law equivalents

Thanks.  Have a good holiday weekend.

Greg

**From:** Rubin, Lisa H. [mailto:LRubin@gibsondunn.com]
**Sent:** Wednesday, December 23, 2015 5:44 PM
**To:** Fox, Gregory W.
**Cc:** Williams, Matt J.; Daniel H. Golden (dgolden@akingump.com); dnewman@akingump.com
**Subject:** RE: Subject to FRE 408 and state law equivalents

Greg,

We appreciate the e-mail you sent us Monday.  We are discussing your proposal with our client and the Unitholders' counsel, but given the holiday, we do not anticipate being able to respond until next week.  Thanks again for memorializing the proposal in writing.

We will try to get back to you as soon as we can.

Many thanks and all best,

Lisa

**From:** Fox, Gregory W. <GFox@goodwinprocter.com>
**Sent:** Monday, December 21, 2015 9:49 PM
**To:** Rubin, Lisa H.
**Cc:** Weintraub, William P; dgolden@akingump.com
**Subject:** Subject to FRE 408 and state law equivalents

Lisa,

As we have discussed in connection with the General Motors case, Goodwin Procter has received proofs of claim of approximately 200 pre-sale accident plaintiffs represented by Mr. Hilliard's firm (the "Pre-Sale Accident Plaintiffs").  Rather than expending resources litigating a motion to allow these prepetition claims notwithstanding the passage of the bar date, we propose deferring such motion practice until after the Second Circuit rules on the pending

appeal of Judge Gerber's April 15, 2015 equitable mootness ruling (the "Equitable Mootness Ruling").  If the Second Circuit affirms the Equitable Mootness Ruling, the prepetition claims of these Pre-Sale Accident Plaintiffs against the GUC trust would be moot and no motion would be necessary.  If the Second Circuit reverses the Equitable Mootness Ruling, the Pre-Sale Accident Plaintiffs would promptly file a motion seeking to allow these claims against the GUC trust notwithstanding the passage of the bar date.

We propose the following agreement among the Pre-Sale Accident Plaintiffs, the GUC Trust, and the Unitholders represented by Akin Gump:

(i)      The Pre-Sale Accident Plaintiffs will not file or seek allowance of their proofs of claim until five business days after a ruling by the Second Circuit reversing Equitable Mootness Ruling.

(ii)     In the event that the Second Circuit reverses the Equitable Mootness Ruling, the GUC trust and the Unitholders represented by Akin Gump will not subsequently argue to any court or tribunal that the Pre-Sale Accident Plaintiffs' rights to allowed claims against the GUC Trust were impacted by the Pre-Sale Accident Plaintiffs' failure to file and seek allowance of their proofs of claim during the period between the date of this email through the date that is five business days after the Second Circuit's reverses Equitable Mootness Ruling.  All parties' rights and arguments with respect to the period prior to the date of this email would be fully reserved; and

(iii)    For the period between the date of this email through the date the Second Circuit issues a decision reversing Equitable Mootness Ruling, the Pre-Sale Accident Plaintiffs will not to take any action to stay distributions by the GUC trust to its beneficiaries.

If you are in agreement with this proposal, please send a confirmatory email on behalf of both the GUC Trust and the Unitholders represented by Akin Gump.  If you believe the foregoing does not accurately reflect our agreement, please send proposed language for our consideration.

Best regards,

Greg

Gregory W. Fox
**Goodwin Procter** LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
United States of America
T: 212.459.7348
F: 212.355.3333
gfox@goodwinprocter.com
<www.goodwinprocter.com>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

************************************
This email may contain privileged and/or confidential information that is intended solely for the use of the addressee.  If you are not the intended recipient or entity, you are strictly prohibited from disclosing, copying, distributing or using any of the information contained in the transmission.  If you received this communication in error, please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy.  This communication may contain nonpublic personal information about consumers subject to the restrictions of the Gramm-Leach-Bliley Act and the Sarbanes-Oxley Act.  You may not directly or indirectly reuse or disclose such information for any purpose other than to provide the services for which you are receiving the information.
There are risks associated with the use of electronic transmission.  The sender of this information does not control the method of transmittal or service providers and assumes no duty or obligation for the security, receipt, or third party interception of this transmission.
************************************

# **EXHIBIT 3**



**From:** Fox, Gregory W. [mailto:GFox@goodwinlaw.com]
**Sent:** Tuesday, August 9, 2016 1:03 PM
**To:** Martorana, Keith R. <KMartorana@gibsondunn.com>
**Cc:** Williams, Matt J. <MJWilliams@gibsondunn.com>; Wu, Aric <AWu@gibsondunn.com>; Rubin, Lisa H.
<LRubin@gibsondunn.com>; Weintraub, William P <WWeintraub@goodwinlaw.com>
**Subject:** RE: GM

Thanks Keith

**Gregory W. Fox**



Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
o  +1 212 459 7348
f   +1 212 409 8403
GFox@goodwinlaw.com | goodwinlaw.com

**From:** Martorana, Keith R. [mailto:KMartorana@gibsondunn.com]
**Sent:** Tuesday, August 09, 2016 12:47 PM

1

**To:** Fox, Gregory W.
**Cc:** Williams, Matt J.; Wu, Aric; Rubin, Lisa H.
**Subject:** RE: GM

Greg – this is confirmed for the plaintiffs covered by our prior stipulation.


**Keith Martorana**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.3991 • Fax +1 212.351.6391
KMartorana@gibsondunn.com • www.gibsondunn.com

---

**From:** Fox, Gregory W. [mailto:GFox@goodwinlaw.com]
**Sent:** Tuesday, August 09, 2016 11:55 AM
**To:** Martorana, Keith R.
**Subject:** GM


Keith,

As we discussed, please allow this email to confirm our discussion this morning that the existing tolling does not require the Pre-Closing Accident Plaintiffs to file their motion for leave to assert late proofs of claim any earlier than the Economic Loss Plaintiffs need to file their motion for leave to assert late claims.

Thanks,

Greg

**Gregory W. Fox**



Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
o  +1 212 459 7348
f   +1 212 409 8403
GFox@goodwinlaw.com | goodwinlaw.com



*****************************************************************
This message was sent from Goodwin Procter LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
*****************************************************************

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
|  | . | Case No. 09-50026-mg |
| IN RE: | . | Chapter 11 |
|  | . |  |
| MOTORS LIQUIDATION COMPANY, | . | (Jointly administered) |
| et al., f/k/a GENERAL | . |  |
| MOTORS CORP., et al, | . | One Bowling Green |
|  | . | New York, NY 10004 |
| Debtors. | . |  |
|  | . | Thursday, January 12, 2017 |
| . . . . . . . . . . . . . . . | . | 9:30 a.m. |

TRANSCRIPT OF (CC: DOC# 13802, 13813, 13819, 13820, 13822)
STATUS CONFERENCE REGARDING LATE CLAIMS MOTION; (CC: DOC. NO.
13806) STATUS CONFERENCE RE: MOTION FOR AN ORDER GRANTING
AUTHORITY TO FILE LATE CLASS PROOFS OF CLAIM FILED BY EDWARD S.
WEISFELNER ON BEHALF OF DESIGNATED COUNSEL FOR THE IGNITION
SWITCH PLAINTIFFS & CERTAIN NON-IGNITION SWITCH PLAINTIFFS;
(CC: DOC# 13807) OMNIBUS MOTION TO ALLOW CLAIMS, FILE LATE
PROOFS OF CLAIM FOR PERSONAL INJURIES AND WRONGFUL DEATHS
**BEFORE THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

| | |
|---|---|
| For the Debtor: | King & Spalding LLP |
| | By:  ARTHUR STEINBERG, ESQ. |
| | SCOTT DAVIDSON, ESQ. |
| | 1185 Avenue of the Americas |
| | New York, New York 10036-4003 |
| | (212) 556-2158 |
| | |
| For the Ignition Switch | Brown Rudnick LLP |
| plaintiffs and certain | By:  EDWARD S. WEISFELNER, ESQ. |
| non-Ignition Switch | HOWARD S. STEEL, ESQ. |
| plaintiffs: | 7 Times Square |
| | New York, New York 10036 |
| | (212) 209-4917 |

APPEARANCES CONTINUED.

| | |
|---|---|
| Audio Operator: | Jonathan, ECRO |
| | |
| Transcription Company: | Access Transcripts, LLC |
| | 10110 Youngwood Lane |
| | Fishers, IN 46038 |
| | (855) 873-2223 |
| | www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

APPEARANCES (Continued):

```
For Personal Injury
Accident Plaintiffs:        Goodwin Procter LLP
                            By:  WILLIAM P. WEINTRAUB, ESQ.
                            The New York Times Building
                            620 Eighth Avenue
                            New York, NY 10018-1405
                            (212) 813-8839

For Participating
Unit Holders:               Akin Gump Strauss Hauer & Feld LLP
                            By:  DANIEL GOLDEN, ESQ.
                                 NAOMI MOSS, ESQ.
                            One Bryant Park
                            New York, NY 10036-6745
                            (212) 872-1000

For the GUC Trust
Administrator:              Gibson, Dunn & Crutcher LLP
                            By:  MITCHELL KARLAN, ESQ.
                            200 Park Avenue
                            New York, New York 10166-0193

For the Ignition Switch
Plaintiffs:                 Stutzman Bromberg Esserman & Plifka
                            By:  SANDER L. ESSERMAN, ESQ.
                            2323 Bryan Street, Suite 2200
                            Dallas, TX 75201-2689
                            (214) 969-4910

For JPMorgan Chase
Bank, N.A.:                 Wachtell, Lipton, Rosen & Katz
                            By:  HAROLD S. NOVIKOFF, ESQ.
                            51 West 52nd Street
                            New York, NY 10019
                            (212) 403-1000

TELEPHONIC APPEARANCES:

For the Ad Hoc Group
Of Term Lenders:            Jones Day
                            By:  BRUCE BENNETT, ESQ.
                            555 South Flower Street, 50th Floor
                            Los Angeles, CA 90071
                            (213) 243-2382
```

22

1      MR. WEINTRAUB:  -- of why we didn't file the claims

2  any sooner than now.  When the time came to file the claims, we

3  were ready.  We didn't wait until the time came to file the

4  claims and then start trying to accumulate them and say, Judge,

5  we need another six months.  We were proactive.

6      So for the historical reasons of it had -- would have

7  been a futile act to try to get a late claim determination

8  before the threshold issues were determined and because the

9  threshold issues hadn't been determined and because of the

10  tolling of the bankruptcy court's orders, we didn't think it

11  was ripe until now, which is a long way of saying, this is not

12  a _Pioneer_ case, and we don't think that 25 interrogatories to

13  175 people would be appropriate.  We'd like to address the

14  scope of discovery, if any, in separate briefings.

15      THE COURT:  Well, I -- it's fine for you to say you

16  don't think it's a _Pioneer_ issue, but I don't know what Mr.

17  Steinberg's response or the GUC Trust's response is going to be

18  on whether it's a _Pioneer_ issue.  I mean, with all due respect,

19  you can't unilaterally decide that, you know, as far as I'm

20  concerned, the issues aren't _Pioneer_ and therefore there

21  shouldn't be any discovery related to it.

22      MR. WEINTRAUB:  No.  And I'm not deciding that, Your

23  Honor.  My point was I want -- I'd like you to decide that, and

24  I'd like an opportunity --

25      THE COURT:  I understand.

23

1          MR. WEINTRAUB:  -- to brief it.

2          THE COURT:  Yes.  I'll express my concern.  Here we

3  are in January of 2017.  I agree -- let's assume I agree to

4  stay for 90 days, okay.  It's not -- you know, I've got plenty

5  to do.  So that's not an issue.  I've got another GM trial

6  start -- Motors Liquidation trial starting April 24th.  You

7  know, I've got closing argument in Mr. Weisfelner's <u>Lyondell</u>

8  case on February 2nd.  I'm -- all I'm doing is litigation these

9  days.

10          Okay.  I'm really busy.  I can see that, okay, we

11 stay for 90 days, and then you come back in and maybe you've

12 agreed on how to go forward, maybe you haven't agreed how to go

13 forward.  I see 2017 kind of going by and this not getting

14 resolved.  And to me, that's unhelpful, the lack of clarity

15 about it.  I understand your position very well.  You don't

16 believe the <u>Pioneer</u> factors apply.  The Second Circuit decided

17 the due process violation.  Judge Gerber decided that it was a

18 due process violation.  Okay.

19          I'm concerned about, you know, somewhere near the end

20 of this year, proceedings start to go forward as to whether,

21 you know, are the late claims going to be permitted, are there

22 going to be class claims, and we're going to be in 2018, and

23 this uncertainty is going to hang over the -- all of the

24 creditors who are currently entitled to distributions from the

25 GUC Trust, you know, unless there's an agreement between the

24

1  parties that there won't be any disgorgement.  People have to

2  worry about, I get a dollar today, I may have to give it back

3  again.  I don't like that uncertainty continuing.

4          Someone, Mr. Steinberg or somebody else is going to

5  tell me -- and this is what I -- if either the GUC Trust or New

6  GM, which obviously has a big economic interest in preventing

7  late claims if it's going to call on the -- if it's going to

8  trigger the accordion -- if their position is the <u>Pioneer</u>

9  factors apply and we need discovery in order to do that and

10  that discovery is different than what the discovery in the MDL

11  is going to be, my reaction is, okay, I understand people will

12  be busy with the discovery that Judge Furman is permitting, but

13  let's move forward, let's get the, you know, craft in order

14  that permits discovery that is not -- that does not overlap

15  with the discovery that's going on in the MDL because I don't

16  want to find out six, nine months from now that, oh, that

17  discovery was different, we're talking about different

18  discovery, all right, let's start it now.  And my reaction is

19  let's start it now if that's true.

20          I'm mindful and sensitive, and I don't want to do

21  anything to interfere with the progress of the MDL or the

22  discovery that's happening in the MDL.  I don't know on what

23  issues the putative class representatives here are being

24  deposed in the MDL.  Well, let me stop there.  Go ahead, Mr.

25  Weintraub.

25

1          MR. WEINTRAUB:  Well, what I was going to say, Your

2     Honor, is not to break ranks with Mr. Steinberg and Mr.

3     Weisfelner.  I stand in solidarity with them on the 90 days,

4     but my issue is the propriety of discovery of my 175 clients

5     and burdening them with 25, I believe, unnecessary

6     interrogatories.

7          THE COURT:  Have they given you the draft of the --

8     have they given you the interrogatories?

9          MR. WEINTRAUB:  No, Your Honor.  And so my concern

10    and why I speak separately from the others is I don't want to

11    leave this hearing being told, we're in discovery on the

12    Pioneer issues.  I would like an opportunity to brief that.

13         THE COURT:  I understand your position.

14         MR. WEINTRAUB:  Thank you, Your Honor.

15         THE COURT:  Thank you, Mr. Weintraub.

16         Mr. Weisfelner, you're on.

17         MR. WEISFELNER:  Your Honor, I just thought it was

18    important to supplement this.  As Your Honor knows, the

19    scheduling order that Judge Gerber entered, and I think it was

20    back in, I'm going to guess, May of 2014, has a provision in it

21    that ordered that the GUC Trust agrees that it shall not assert

22    a timeliness objection to any claims that we may attempt to

23    assert against Old GM during what was defined as the interval.

24    The interval was from the date of the order until a certain

25    period of time after a final order.  There's been no final

 1  order with regard to the original threshold issues because of

 2  the pendency of cert.  So if you think about it, in terms of

 3  discovery, and let's assume Pioneer --

 4          THE COURT:  Well, I think -- rather than make it

 5  totally hypothetical, I'd like to hear from counsel for the GUC

 6  Trust and from New GM, and I want to find out on what basis

 7  they contemplate opposing the filing of late claims.  And let's

 8  see, if Pioneer is not an issue, well, then that -- we'll put

 9  it aside.

10          MR. WEISFELNER:  And --

11          THE COURT:  Go ahead, Mr. Weisfelner.

12          MR. WEISFELNER:  -- as Your Honor gets prepared to

13  hear from the parties, understand that the order that Judge

14  Gerber entered that I just recited was directed to the GUC

15  Trust.  Now, when you think about it, from our perspective back

16  then, the only party that had standing to oppose late claims

17  was the GUC Trust.  For some reason, New GM isn't a party to --

18  they were a party to the proceeding.

19          They're not mentioned in the decretal paragraph

20  because again, the job of defending against late claims falls

21  to the GUC Trust, notwithstanding the fact that New GM is the

22  economic party in interest, but they agreed up front to the

23  accordion feature and they allowed the GUC Trust to be the

24  defender of the accordion feature.  So for New GM now to take a

25  different position on the tolling and the --

70

1          THE COURT:  Yes, but he didn't decide this.  So let's

2   assume somebody's in an accident because the engine just shut

3   off and the power steering didn't work and they hit an

4   abutment, okay.  Aren't those facts and circumstances about the

5   accident relevant to the issue of whether any of the <u>Pioneer</u>

6   factors apply to them?  They know -- let's hypothetically --

7   you know, one of your 175 clients knows that, ah, just out of

8   the blue, the ignition turned off, the power steering didn't

9   work, the power brakes didn't work, I lost control of the car,

10  and I had an accident.  Isn't that relevant to the issue of

11  whether to permit a late-filed claim on behalf of that person?

12         MR. WEINTRAUB:  If the <u>Pioneer</u> factors were

13  applicable, I would concede that that would be relevant.  We

14  don't believe that <u>Pioneer</u> is applicable because <u>Pioneer</u> arises

15  in the context of someone who got constitutionally sufficient

16  notice and then has to come up with a reason why,

17  notwithstanding the constitutionally sufficient notice, they

18  didn't file a claim.  That --

19         THE COURT:  All right.  Here's -- thank you, Mr.

20  Weintraub.  Is there another point you wanted to make?

21         MR. WEINTRAUB:  Yes.  Yes, Your Honor.  I think a lot

22  of what I was going to say was said by Mr. Weisfelner, but the

23  point that I did want to make is that our argument does not

24  hinge on tolling.  It hinges on some of the other things that I

25  spoke about.  But because things were being read into the

71

1  record, I would like to read the following into the record.

2  And I did allude to the September 15, 2014 scheduling order,

3  which is docket number 12897.  And what the Court ordered was,

4  in the first order paragraph.

5         Until further order of the Court, this schedule

6  governing New GM's ignition switch motion to enforce, which is

7  subject to various orders previously entered by the Court,

8  copies of which shall be provide by New GM to plaintiffs upon

9  written request, shall cover the schedule for the pre-closing

10  action motion to enforce.

11         THE COURT:  Okay.

12         MR. WEINTRAUB:  Our interpretation, our very strong

13  view is that this incorporates the prior order, the prior order

14  embedded in the ordered provisions that the issues of late

15  claims were to be put to the side until the four threshold

16  issues were decided.  And I don't think it's credible to say

17  that my clients should have stood up and said, we want to be

18  treated differently than everybody else, we want our issues

19  adjudicated now.  And for the reasons I said earlier, Your

20  Honor, until the four threshold issues had been decided, there

21  was no basis to seek a late claim.

22         THE COURT:  Okay.  Here is, at least, how we're going

23  to proceed in part.  There's a hearing in Motors Liquidation on

24  a motion to dismiss that's currently scheduled for February

25  14th, and I'm -- which is a 10, but we're going to have an