**Reply Deadline: March 20, 2017 at 5:00 p.m.**
**Hearing Date: To Be Determined**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 556-2100
Facsimile:   (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
In re                                    :    Chapter 11
                                         :
MOTORS LIQUIDATION COMPANY, *et al.*,    :    Case No.: 09-50026 (MG)
    f/k/a General Motors Corp., *et al.* :
                                         :
              Debtors.                   :    (Jointly Administered)
                                         :
-------------------------------------------------------------X

# REPLY BRIEF BY GENERAL MOTORS LLC WITH
# RESPECT TO INITIAL LATE CLAIM MOTIONS ISSUES

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

REPLY .........................................................................................................................................3

    A.  There Has Been No Final Ruling On Due Process Issues Relating to the Bar Date ...........3

    B.  Ignition Switch Pre-Closing Accident Plaintiffs' Tolling Agreement with the
        GUC Trust Began No Earlier Than December 2015 ...........................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Citibank, N.A., v. Bombshell Taxi LLC (In re Hypnotic Taxi LLC)*,
    543 B.R. 365 (Bankr. E.D.N.Y. 2016)...................................................................................5

*In Matter of Motors Liquidation Co.*,
    829 F.3d 135 (2d Cir. 2016)..........................................................................................1, 4, 5

DMSLIBRARY01\21600\162081\30179838.v1-3/20/17

# PRELIMINARY STATEMENT[1]

**Applicability of the *Pioneer* Issue**: Proponents argue that the Bar Date is inapplicable to their claims because "the Second Circuit affirmed" the Bankruptcy Court's ruling that "Claimants are not bound by the Bar Date Order."[2] The Second Circuit made no such ruling. To the contrary, the Second Circuit held that Judge Gerber's lifting of the bar date was an advisory opinion. *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 168 (2d Cir. 2016) ("Plaintiffs have not filed any proofs of claim with GUC Trust, ***nor have they even asked the bankruptcy court for permission*** to file late proofs of claim or t***o lift the bar date***, as would be required before relief could be granted" (emphasis added)); *see also id.* ("[P]laintiffs never sought relief from GUC Trust. The bankruptcy court's ruling on equitable mootness was therefore advisory."). Proponents cannot cite to any portion of the Second Circuit Opinion holding that they are not bound by the Bar Date, because there is none. Further, Proponents cannot show a final ruling on the Bar Date notice issue given that the Second Circuit reversed the Bankruptcy Court's equitable mootness ruling precisely because no claims had been filed against the GUC Trust, let alone decided. Proponents also are bound by their admission that they were "not asserting a due process challenge to a bar date order . . . ." *Id.* at 168 n.31. In light of these rulings, Proponents have not established a due process violation relating to the Bar Date notice, and the *Pioneer* Standard applies to their Late Claims Motion.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Opening Brief by General Motors LLC with Respect to Initial Late Claim Motions Issues*, dated March 6, 2017 [ECF No. 13871] ("**New GM's Opening Brief**").

[2] *See Brief On Applicability Of Pioneer And Tolling Issues In Connection With Omnibus Motion By Certain Ignition Switch Pre-Closing Accident Plaintiffs For Authority To File Late Proofs Of Claim For Personal Injuries And Wrongful Deaths*, Dated March 6, 2017 [ECF No. 13874] ("**IS Pre-Closing Accident Plaintiffs Brief**"), at 1.

1

Proponents also assert various reasons why they should be able to satisfy the *Pioneer* Standard: *e.g.,* that the Bankruptcy Court procedures/rulings relating to the 2014 Threshold Issues "prevented" them from seeking authorization to file late claims before December 2016. But whether Proponents can meet *Pioneer's* "excusable neglect" standard is not before the Court in this round of briefing. Moreover, Proponents have already conceded that the real reason they did not actively pursue the GUC Trust after the 2014 recalls was because it conflicted with their litigation strategy to pursue only New GM. That calculated choice raises a host of waiver and timeliness issues the Court must analyze before deciding whether Proponents should be permitted to file late proofs of claim. Proponents, in short, must satisfy the *Pioneer* Standard in order to obtain permission to file late proofs of claim against the GUC Trust.

**Tolling Issue**: All parties agree that Ignition Switch Plaintiffs received a tolling agreement from the GUC Trust on May 16, 2014, several months after the ignition switch recalls were announced. Nonetheless, before receiving this toll, and even after receiving this toll, Ignition Switch Plaintiffs purposefully decided to pursue remedies only against New GM and not the GUC Trust. That tactical litigation decision has consequences the Court must consider when deciding whether Ignition Switch Plaintiffs can file late proofs of claim against the GUC Trust.

By comparison, Ignition Switch Pre-Closing Accident Plaintiffs had no tolling agreement whatsoever with the GUC Trust until December 21, 2015. Designated Counsel for Ignition Switch Pre-Closing Accident Plaintiffs presented no evidence of a tolling agreement in the September 2014 Order. The "cross-reference" in that Order to the May 2014 Order related to the briefing schedule for the 2014 Threshold Issues, not to the tolling provision. Furthermore, Proponents do not and cannot dispute the GUC Trust's statement that no tolling request was made to nor granted by the GUC Trust before December 2015.

2

Indeed, Ignition Switch Pre-Closing Accident Plaintiffs cannot explain why they requested a tolling agreement from the GUC Trust in December 2015 if they purportedly had one already through the September 2014 Order. Nor can they explain why, if they received the same tolling agreement as Ignition Switch Plaintiffs because of the cross-reference in the September 2014 Order, the actual tolling agreement they received in December 2015 had different and less favorable terms than the Ignition Switch Plaintiffs' tolling agreement. Finally, Ignition Switch Pre-Closing Accident Plaintiffs also cannot explain why they forfeited rights to challenge distributions made by the GUC Trust in the December 2015 tolling agreement if they already had a tolling agreement in place pursuant to the September 2014 Order. Ignition Switch Pre-Closing Accident Plaintiffs have no answers because the truth is they had no tolling agreement before December 2015. Accordingly, the Court should find that Ignition Switch Pre-Closing Accident Plaintiffs obtained a tolling agreement from the GUC Trust no earlier than December 21, 2015.[3]

## REPLY

**A.    There Has Been No Final Ruling On Due Process Issues Relating to the Bar Date**

Proponents' argument[4] that due process issues relating to the Bar Date notice were decided by the Second Circuit ignores the plain language of the Opinion. The Second Circuit considered whether Judge Gerber's equitable mootness ruling was an advisory opinion. To decide that issue, the Second Circuit addressed whether the Bankruptcy Court had ever lifted the Bar Date to allow such claims in the first place. The Second Circuit held that, because the Ignition Switch Plaintiffs never filed late proofs of claim and never asked the Bankruptcy Court to lift the Bar Date, the Bankruptcy Court's ruling was entirely "advisory":

---

[3]    Non-Ignition Switch Plaintiffs never received a tolling agreement.

[4]    Unless otherwise noted, any argument made by one of the Proponents will be addressed as if made by all Proponents.

3

> Here, the bankruptcy court held that any relief from GUC Trust would be equitably moot. But plaintiffs never sought relief from GUC Trust. The bankruptcy court's ruling on equitable mootness was therefore advisory. Neither GUC Trust nor Old GM are parties to the multi-district litigation now ongoing in district court. Only one defendant is named: New GM. Likewise, as GUC Trust confirmed at oral argument, plaintiffs have not filed any proofs of claim with GUC Trust, ***nor have they even asked the bankruptcy court for permission to file late proofs of claim or to lift the bar date, as would be required before relief could be granted***. . . . The bankruptcy court lifted the bar date for independent claims as a remedy. *See MLC II*, 529 B.R. at 583. We note, however, that neither the Groman Plaintiffs nor Ignition Switch Plaintiffs requested this as relief. The Ignition Switch Plaintiffs only mentioned in a footnote in their opposition to the motion to enforce that Old GM failed to provide notice of the bar date. ***The Pre–Closing Accident Plaintiffs stated on behalf of all plaintiffs that "Plaintiffs are not asserting a due process challenge to a bar date order or a discharge injunction issued in favor of a debtor."*** Bankr. ECF No. 13021, at 48 n. 26.

*Motors Liquidation Co.*, 829 F.3d at 168 (emphasis added)

In short, the Second Circuit reversed the Bankruptcy Court's equitable mootness ruling precisely because Proponents had not filed late proofs of claim or asserted a due process violation regarding the Bar Date notice. The appellate court's ruling is consistent with the Bankruptcy Court's May 2014 Order, which provided that "the issue of whether a claim asserted in the Ignition Switch Actions is timely and/or meritorious against the Old GM bankruptcy estate (and/or the GUC Trust) is not a Threshold Issue."[5]

Proponents argue that, "[u]nder the law of the case doctrine, this Court must adhere to the prior rulings in these proceedings that the Ignition Switch Plaintiffs are known creditors who did not receive constitutionally adequate notice of the Bar Date and the remedy for this due process violation is leave to file late claims."[6] But the "law of the case" doctrine does not apply where,

---

[5] Proponents also have no explanation as to how the Bankruptcy Court could have made a final ruling on the Bar Date notice issue when none of the parties actually briefed the issue to the Bankruptcy Court. Significantly, at no time have Proponents argued they were unaware of either (i) the Bar Date in 2009 or (ii) an issue related to their Old GM vehicle (*e.g.*, their vehicle was in an accident or that it had malfunctioned) prior to the Bar Date.

[6] *The Ignition Switch Plaintiffs' Brief On The Initial Late Claim Motions Issues*, dated March 6, 2017 [ECF No. 13872] ("**IS Plaintiffs Brief**"), at 6.

as here, a ruling has been reversed on appeal. *See, e.g., Citibank, N.A., v. Bombshell Taxi LLC (In re Hypnotic Taxi LLC)*, 543 B.R. 365, 372 (Bankr. E.D.N.Y. 2016) (citing cases holding that law of the case is not binding if the ruling is reversed on appeal).

Proponents' argument that "where an issue was *ripe* for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the [lower] court from reopening the issue on remand," actually supports New GM's position.[7]  Here, the Second Circuit determined that the Bankruptcy Court's ruling was advisory—it concerned "a 'hypothetical' scenario" that could not properly be decided by a federal court: "[p]laintiffs did not pursue any claims [against the GUC Trust].  Ultimately, it is the *parties*, and not the court, that must create the controversy."  *Motors Liquidation Co.*, 829 F.3d at 169.  Under these circumstances, the "law of the case" doctrine has no application.

Proponents' argument that there "were impenetrable barriers to filing an untimely proof of claim"[8] relates to whether Proponents can *satisfy* the *Pioneer* Standard, not whether the *Pioneer* Standard applies to them.  This argument is therefore irrelevant to the issues now before the Court.

Even if considered, Proponents' arguments as to why they can demonstrate "excusable neglect" should be summarily rejected.  For example:

(a) Proponents cannot point to any ruling by the Bankruptcy Court prohibiting them from filing their Late Claim Motion earlier.  As this Court remarked at the January 12, 2017 Status Conference, Proponents' counsel "[c]ould have put your place marker down."  January 12, 2017 Hr'g Tr., at 20:4.  Proponents never did.

---

[7] IS Plaintiffs Brief, at 6 (*citing United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (emphasis added)).

[8] IS Pre-Closing Accident Plaintiffs Brief, at 7.

5

    (b)    The Bankruptcy Court's concern that certain plaintiffs not "jump the line" (ISP Pre-Closing Accident Plaintiff Brief, at 10) addressed those plaintiffs seeking to continue their lawsuits outside of the Bankruptcy Court prior to its ruling on the 2014 Threshold Issues. The Bankruptcy Court's case management procedures were not directed at the filing of late proofs of claim or motions *in the Bankruptcy Court* seeking authority to file same.

    (c)    Contrary to Proponents' argument,[9] the Bankruptcy Court's February 8, 2012 Order [ECF No. 11394] ("**Late Claim Order**") expressly provided that "***nothing in this Order shall prevent any claimant submitting a Late Claim from filing a motion with the Court seeking to have its Late Claim deemed timely filed***." Late Claim Order, at 2 (emphasis added).

In sum, based on the foregoing and the arguments made in New GM's Opening Brief, the *Pioneer* Standard applies to Proponents and they must satisfy the *Pioneer* Standard in order to obtain authority to file their late proofs of claim.

**B.    Ignition Switch Pre-Closing Accident Plaintiffs' Tolling Agreement with the GUC Trust Began No Earlier Than December 2015**

There is no dispute as to the relevant tolling periods for Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs. The only dispute relates to Ignition Switch Pre-Closing Accident Plaintiffs.

Ignition Switch Pre-Closing Accident Plaintiffs cannot demonstrate that the September 2014 Order provided them a tolling agreement. Nor can they explain why, if they had a tolling agreement in September 2014, they needed yet another agreement (with even less favorable terms) in December 2015. The undisputed facts are:

    (i)    The May 2014 Order contains a tolling agreement between the GUC Trust and Ignition Switch Plaintiffs *only* (*see* May 2014 Order, at 3);

    (ii)    The September 2014 Order does not contain any tolling provision between the GUC Trust and Ignition Switch Pre-Closing Accident Plaintiffs (*see generally* September 2014 Order);

---

[9] IS Pre-Closing Accident Plaintiffs Brief, at 2, 6-7.

(iii) The September 2014 Order merely provides that the "*schedule*" set forth in the May 2014 Order for the April 2014 Motion to Enforce will govern the Pre-Closing Accident Motion to Enforce (*see* September 2014 Order, at 2). The "schedule" in the May 2014 Order refers to the briefing schedule for the 2014 Threshold Issues (*see* May 2014 Order, at 3);

(iv) Ignition Switch Pre-Closing Accident Plaintiffs have no evidence that they asked for a tolling agreement to be included in the September 2014 Agreement. The GUC Trust and New GM have stated that no such request was made, much less granted;[10]

(v) The GUC Trust and Ignition Switch Pre-Closing Accident Plaintiffs entered into a tolling agreement in December 2015 that was for a shorter time period than the tolling agreement between the GUC Trust and Ignition Switch Plaintiffs (*see* New GM's Opening Brief, Exh. "A");

(vi) A bargained-for provision of the tolling agreement in December 2015 was that Ignition Switch Pre-Closing Accident Plaintiffs would not take any action to stay GUC Trust distributions (*see* New GM's Opening Brief, Exh. "A"), a topic not covered in the Ignition Switch Plaintiffs' tolling agreement; and

(vii) Ignition Switch Pre-Closing Accident Plaintiffs had to ask for an extension of their tolling agreement in August 2016 because it expired after the Second Circuit Opinion; only then did Ignition Switch Pre-Closing Accident Plaintiffs seek to have the same tolling period termination date as Ignition Switch Plaintiffs (*see* New GM's Opening Brief, Exh. "B").

The Ignition Switch Pre-Closing Accident Plaintiffs' argument about why they entered into the tolling agreement with the GUC Trust in December 2015 makes no sense. They claim to have entered into the December 2015 tolling agreement because certain Ignition Switch Pre-Closing Accident Plaintiffs had previously signed proofs of claim in *mid-to*-late 2015. In fact, more than half of the proofs of claim attached to Ignition Switch Pre-Closing Accident Plaintiffs' Late Claim Motion are dated in July 2015—five months before they first requested the tolling

---

[10] Designated Counsel for Ignition Switch Pre-Closing Accident Plaintiffs participated in an August 2014 hearing before the Bankruptcy Court but claimed not to have become the Designated Counsel for Ignition Switch Pre-Closing Accident Plaintiffs until after the time the September 2014 Order was entered. *See* IS Pre-Closing Accident Plaintiffs Brief, at 9 n.7. Assuming *arguendo* Designated Counsel's assertion is correct, then they could not have asked for a tolling agreement to be included in the September 2014 Order on behalf of Ignition Switch Pre-Closing Accident Plaintiffs.

agreement with the GUC Trust. Moreover, the December 2015 tolling agreement provided that if the ruling on equitable mootness is reversed, the GUC Trust would not argue that Ignition Switch Pre-Closing Accident Plaintiffs' right to allowed claims would be impacted by their "failure to file and seek allowance of their proofs of claim *during the period between the date of this email* through the date that is five business days after the Second Circuit's reverses Equitable Mootness Ruling."[11] Nowhere in the parties' e-mail exchange did Designated Counsel indicate that many of the proofs of claim had been signed several months prior, or that counsel was requesting a tolling agreement to protect them from the date the proofs of claim were executed. The tolling period only ran from the date of the e-mail, which was approximately five months after many of the proofs of claim were executed, clearly suggesting that there was no temporal connection between the signing of the proofs of claim and the tolling request. The reality that Ignition Switch Pre-Closing Accident Plaintiffs cannot avoid is that they had no tolling agreement in the September 2014 Order and that is why they first requested one in December 2015.

In sum, based on the foregoing and the arguments set forth in New GM's Opening Brief, the length of time between the announcement of the 2014 recalls and the filing of each of the Proponents' Late Claim Motions is as follows:

- Ignition Switch Plaintiffs: Approximately 3 months (February 2014 - May 2014);

- Ignition Switch Pre-Closing Accident Plaintiffs: Approximately 22 months (February 2014 - December 2015); and

- Non-Ignition Switch Plaintiffs: Approximately 30 months (June 2014 - December 2016).

---

[11]  New GM's Opening Brief, Exh. "A" (emphasis added).

8

WHEREFORE, New GM respectfully requests that this Court (i) find that Proponents, at a minimum, must satisfy the *Pioneer* Standard in order to obtain authorization to file late proofs of claim against Old GM, (ii) find that Proponents either lack, or have the tolling agreements with the GUC Trust, as set forth in New GM's Opening Brief, and (iii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       March 20, 2017

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Attorneys for General Motors LLC*