GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035
Mitchell A. Karlan
Gabriel K. Gillett

*Attorneys for Wilmington Trust Company, as Trustee for
and Administrator of the Motors Liquidation Company
General Unsecured Creditors Trust*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036-6728
Phone: (212) 872-1000
Fax: (212) 872-1002
Daniel H. Golden
Deborah J. Newman

*Attorneys for the Participating Unitholders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                              :    Chapter 11
                                                    :
MOTORS LIQUIDATION COMPANY, *et al.*,               :    Case No.: 09-50026 (MG)
    f/k/a General Motors Corp., *et al.*            :
                                                    :
                    Debtors.                        :    (Jointly Administered)
                                                    :
------------------------------------------------------------X

**REPLY BRIEF OF GUC TRUST ADMINISTRATOR AND
PARTICIPATING UNITHOLDERS ON THE APPLICABILITY OF
*PIONEER* AND TOLLING TO PLAINTIFFS' MOTIONS TO FILE LATE CLAIMS**

March 20, 2017

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

    I.    *PIONEER* APPLIES TO PLAINTIFFS' MOTIONS. ................................................. 3

    II.    PLAINTIFFS' TIME TO FILE LATE CLAIMS WAS TOLLED, BUT ONLY AFTER THEY CHOSE TO PURSUE NEW GM AND NOT THE GUC TRUST ..... 7

CONCLUSION..................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Hotel Int'l Grp. v. OneBeacon Ins. Co.*,
   374 F. App'x 71 (2d Cir. 2010) ...................................................................................7

*In re AMR Corp.*,
   492 B.R. 660 (Bankr. S.D.N.Y. 2013) .........................................................................4

*Axinn v. Metro. Distrib. Servs., Inc. (In re Golden Distribs., Ltd.)*,
   128 B.R. 349 (Bankr. S.D.N.Y. 1991) .........................................................................4

*In re Drexel Burnham Lambert Grp. Inc.*,
   157 B.R. 532 (S.D.N.Y. 1993) ..................................................................................3, 4

*In re Drexel Burnham Lambert Grp. Inc.*,
   151 B.R. 674 (Bankr. S.D.N.Y.) ................................................................................3, 4

*Elliott v. Gen. Motors LLC*,
   829 F.3d 135 (2d Cir. 2016) .......................................................................................5, 6

*In re Enron Corp.*,
   419 F.3d 115 (2d Cir. 2005) .........................................................................................10

*Gutierrez v. Fox*,
   141 F.3d 425 (2d Cir. 1998) .........................................................................................7

*Labarbera v. Clestra Hauserman, Inc.*,
   369 F.3d 224 (2d Cir. 2004) .........................................................................................7

*Motorola Credit Corp. v. Uzan*,
   509 F.3d 74 (2d Cir. 2007) ...........................................................................................7

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015) .........................................................................5

*Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*,
   507 U.S. 380 (1993) .............................................................................................1, 3, 10

*In re Premier Membership Servs., LLC*,
   276 B.R. 709 (S.D. Fla. 2002) .....................................................................................3

*In re Residential Capital, LLC*,
   2015 WL 2256683 (Bankr. S.D.N.Y. May 11, 2015) ..................................................4

# TABLE OF AUTHORITIES
**(Continued)**

**Page(s)**

*In re Thomson McKinnon Sec. Inc.*,
    130 B.R. 717 (Bankr. S.D.N.Y. 1991)...................................................................................4

*In re Tronox Inc.*,
    2014 WL 5801058 (Bankr. S.D.N.Y. Nov. 7, 2014) ...............................................................10

*United States v. Cardinal Mine Supply, Inc.*,
    916 F.2d 1087 (6th Cir. 1990) ................................................................................................4

*United States v. Minicone*,
    994 F.2d 86 (2d Cir. 1993).......................................................................................................7

## INTRODUCTION

Plaintiffs' Opening Briefs (Dkt. 13872 ("**Econ Loss Br.**"), Dkt. 13874 ("**Accident Br.**")), reflect a misunderstanding about the Initial Late Claim Motions Issues and the posture of their Late Claim Motions.[1] After finally filing their Late Claim Motions at the close of 2016—years after their vehicles were recalled and they began pursuing New GM—Plaintiffs insisted on separately briefing whether they are exempt from satisfying the equitable standard of *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). But Plaintiffs' briefs largely sidestep that issue, and instead raise arguments about why they believe that they *satisfy Pioneer*. *See* Econ Loss Br. ¶¶ 2, 25, 29; Accident Br. 6-7, 10-13. Plaintiffs are wrong: they cannot satisfy *Pioneer* after making a voluntary strategic choice to delay pursuing the GUC Trust until now. But this is not the time for arguing that point. For now, the GUC Trust and Participating Unitholders will focus on why *Pioneer* applies and when Plaintiffs' obtained a toll of their time to file late claims.

Plaintiffs' Opening Briefs elide the key reasons why *Pioneer* applies to their motions. Plaintiffs do not acknowledge *Pioneer*'s command that courts undertake an equitable evaluation of "all relevant circumstances" in determining whether to grant a motion to file late claims. And they do not cite any binding authority supporting the proposition that the Court's wide-ranging equitable analysis should disregard their deliberate decision to move swiftly, decisively, and repeatedly against New GM after the recalls, but to do nothing to pursue the GUC Trust until now. This Court should reject Plaintiffs' illogical position that an issue with notice entitles them to file late claims at any juncture, regardless of how much time has passed since they learned of their

---

[1] Capitalized terms not defined herein have the meanings listed in Dkts. 13873 ("**GUC Trust Opening Br.**" on Initial Late Claim Motions Issues), 13869 (Scheduling Order), and 13802 (Order to Show Cause).

claims, and should consider all of the relevant facts in adjudicating the Late Claims Motions.

In addition, Plaintiffs ignore the history of this case by relying on statements about the Bar Date Order in the Bankruptcy Court's 2015 Threshold Issues decision as though they remain in force. In reality, issues relating to late claims were explicitly *not* Threshold Issues in 2015, and any rulings on those issues became a nullity when the Second Circuit vacated the Bankruptcy Court's equitable mootness holding as an improper advisory opinion—precisely because Plaintiffs had not asked for the Bar Date to be lifted, had not sought permission to file late claims, and had insisted that they were not asserting a due process challenge to the Bar Date Order. As a result, *Pioneer* applies to Plaintiffs' motions even under the misguided legal theory that they press.

As for tolling, Pre-Closing Accident Plaintiffs continue to almost entirely ignore the tolling agreement that they sought and obtained in December 2015. They offer no credible explanation for why they negotiated that agreement if, as they contend, they had already received a more protective toll in a September 2014 scheduling order that purportedly incorporated the toll the Economic Loss Plaintiffs received via a May 2014 scheduling order. In any event, Pre-Closing Accident Plaintiffs offer no credible interpretation of how the language and context of that September scheduling order grants them a toll, when all indications are to the contrary. And they never contend that any of the various excuses they offer for why they waited so long to seek relief from the GUC Trust actually *tolled* their time to file late claims. Accordingly, this Court should find that Pre-Closing Accident Plaintiffs' time to file late claims was tolled as of December 21, 2015, when the GUC Trust accepted the tolling agreement that Pre-Closing Accident Plaintiffs had proposed, and that Economic Loss Plaintiffs obtained a toll via scheduling order on May 16, 2014.

2

## ARGUMENT

**I.    *PIONEER* APPLIES TO PLAINTIFFS' MOTIONS.**

In *Pioneer*, the Supreme Court explained that the excusable-neglect inquiry "is at bottom an equitable one, taking account of all relevant circumstances." 507 U.S. at 395. The Court noted that relevant circumstances include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*. The Court also found circumstances around "the notice of the bar date" to be relevant and emphasized that any other fact could be relevant to the unbounded equitable inquiry. *See id.* at 395 & n.14, 398. The Court did not suggest that applying excusable neglect was contingent on adequate notice.

Plaintiffs ignore this language entirely. They do not acknowledge that *Pioneer*'s standard is grounded in equity, or that *Pioneer* itself considered the sufficiency of the notice in evaluating whether a late claimant had shown excusable neglect. Instead, Plaintiffs argue that their motions are timely without regard to *Pioneer*. But Plaintiffs do not cite any binding or persuasive authority for that proposition, or offer any explanation as to how it can be squared with *Pioneer*'s language and logic. Nor do Plaintiffs grapple with the reality that multiple courts have considered a movant's tactical delay even when the movant did not receive adequate notice of the bar date. *See, e.g.*, *In re Premier Membership Servs., LLC*, 276 B.R. 709 (S.D. Fla. 2002) (applying *Pioneer* where claimant did not receive notice of the bar date, noting "absence of any evidence of a deliberate or tactical delay by" the claimant); *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674 (Bankr. S.D.N.Y.), *aff'd* 157 B.R. 532 (S.D.N.Y. 1993) (rejecting motion to file late claims by known creditor that did not receive due process because of creditor's "dilatory conduct").

The cases that Plaintiffs cite do not hold that *Pioneer* does not apply on the facts presented here. For example, none of them involve creditors, like the ones here, that made a deliberate

3

strategic choice not to assert their supposed rights after they learned of their arguable basis to file claims.  *See, e.g.*, *In re Residential Capital, LLC*, 2015 WL 2256683 (Bankr. S.D.N.Y. May 11, 2015) (denying late claims after conducting a *Pioneer* analysis); *In re AMR Corp.*, 492 B.R. 660 (Bankr. S.D.N.Y. 2013) (same); *cf. United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1089 (6th Cir. 1990) (noting claimants "must be permitted to file tardily *when the creditor does so promptly after learning of the bankruptcy*" (emphasis added)).  And many of the cases that Plaintiffs cite involve creditors who received due process when a bar date was established, contrary to what Plaintiffs say happened here, so statements in those cases about the application of *Pioneer* are dicta.  *Residential Capital*, 2015 WL 2256683, at *6; *AMR*, 492 B.R. at 668.[2]

In the *only* case Plaintiffs cite that actually deals with a claimant that did not receive due process in connection with a bar date, and then delayed seeking to file a late claim after learning the basis for that belated claim, the court rejected the late claim *because of that voluntary delay*.  *See Drexel*, 151 B.R. at 683-84, *aff'd* 157 B.R. at 538-39.  *Drexel* did not hold that a "known creditor who did not receive actual notice of bar date could file a late proof of claim," as Economic Loss Plaintiffs contend (at ¶ 22).  Rather, the *Drexel* bankruptcy court *rejected* a late filed claim by a known creditor who did not get due process because "[e]ven with general knowledge of Debtor's bankruptcy, Claimant failed without excuse to undertake any action that would preserve its right[s]…, such as filing a protective proof of claim."  151 B.R. at 684.  The *Drexel* district court affirmed that holding, highlighting the movant's "dilatory conduct" and failure "to proffer any reasonable excuse for its lackadaisical behavior" while it had simultaneously sought relief in other ways.  157 B.R. at 538-39.  Those *Drexel* decisions, along with *Pioneer* itself, therefore

---

[2]  It is unsurprising that neither *Axinn v. Metro. Distrib. Servs., Inc. (In re Golden Distribs., Ltd.)*, 128 B.R. 349 (Bankr. S.D.N.Y. 1991), nor *In re Thomson McKinnon Sec. Inc.*, 130 B.R. 717 (Bankr. S.D.N.Y. 1991) mentions *Pioneer*, because *Pioneer* was decided two years after those cases.

4

directly contradict Plaintiffs' position. Those cases hold that, even when there are issues with notice, permission to file late claims should *not* "be virtually automatic" at any point in the future (Accident Br. 5; Econ. Loss Br. ¶ 1), especially here, where Plaintiffs repeatedly elected to pursue recovery from New GM and to not pursue any relief against the GUC Trust (*see* GUC Trust Opening Br. 6-7 (cataloging Plaintiffs sitting on their supposed rights as against the GUC Trust)).[3]

Even if Plaintiffs' legal theory were correct (and it is not), it would not apply to the facts of this case because there is no extant ruling that Plaintiffs suffered a due process violation in connection with the Bar Date Order. To be sure, the Bankruptcy Court made such a ruling in the Threshold Issues decision. *In re Motors Liquidation Co.*, 529 B.R. 510, 574 (Bankr. S.D.N.Y. 2015). But the Second Circuit subsequently vacated that ruling because the issue had not actually been presented—Plaintiffs had not asked the Bankruptcy Court to lift the Bar Date, had not sought leave to file late claims, and Pre-Closing Accident Plaintiffs had "stated on behalf of all plaintiffs that 'Plaintiffs are not asserting a due process challenge to a bar date order.'" *Elliott v. Gen. Motors LLC*, 829 F.3d 135, 166-69 & n.31 (2d Cir. 2016).

Despite the Second Circuit's vacatur on justiciability grounds, Pre-Closing Accident Plaintiffs insist that "[a]ny contention that the 'late claim issue' was not part of" the Threshold Issues "is not credible." Accident Br. 2. Yet they acknowledge that, in two different orders, the Bankruptcy Court explicitly stated that, "[f]or the avoidance of doubt, the issue of whether a claim asserted in the Ignition Switch Actions is timely and/or meritorious against the Old GM bankruptcy estate (and/or the GUC Trust) *is not a Threshold Issue*." *Id.* at 2-3 (citing Dkt. 12770 at 3 n.4) (emphasis added); *see* Dkt. 12697 at 4 n.4 (featuring identical language). Those statements do not

---

[3] *Drexel* rejected late claims on laches grounds, and did not discuss *Pioneer* because it was decided after the bankruptcy court decision. In any event, laches applies with full force to Plaintiffs' motions.

5

"reinforce[] the Claimants' arguments." Accident Br. 3. They wholly undermine them.

Pre-Closing Accident Plaintiffs similarly misconstrue the record by claiming that, notwithstanding the scheduling orders' explicit statements otherwise, "two of these threshold issues addressed whether late proofs of claim relating to the Ignition Switch Defect could be brought against the GUC Trust." *Id.* at 2. That is specious. The two issues that Pre-Sale Accident Plaintiffs are referring to related to: (1) the appropriate remedy, in light of the successor-liability bar in the *Sale Order*, if they did not receive due process when the *Sale Order* was issued; and (2) whether the claims in Plaintiffs' lawsuits against New GM were liabilities that New GM had assumed, or Old GM retained, *under the Sale Agreement. See* Dkt. 12770 at 3. Those issues, and Plaintiffs' lawsuits against New GM (and not against Old GM), had nothing to do with the Bar Date Order or the propriety of filing hypothetical late claims against the GUC Trust. That is why no one briefed whether late proofs of claim could be filed. *See* Dkts. 12981, 13021, 13025, 13028, 13030, 13048. Indeed, Pre-Closing Accident Plaintiffs explicitly stated that they were "not asserting a due process challenge to a bar date order." *Elliott*, 829 F.3d at 168 n.31 (quoting Dkt. 13021 at 48 n.26).

Regardless of why the Bankruptcy Court opted to discuss the Bar Date Order, the Second Circuit vacated the Bankruptcy Court's ruling as to the Bar Date Order when it vacated the equitable mootness holding. *See id.* at 166-69. The Second Circuit held that the Bankruptcy Court lacked subject matter jurisdiction to rule on equitable mootness, even though the parties had "expended considerable time arguing about" it, because Plaintiffs had not challenged the Bar Date Order or sought to file late claims. *Id.* For the same reasons, the Bankruptcy Court's ruling that Plaintiffs did not receive due process as to the Bar Date Order was also vacated by the Second Circuit. As a result, the Bankruptcy Court's rulings on those issues have no continuing effect and

6

are "of no precedential value." *Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 n.2 (2d Cir. 2004); *see Gutierrez v. Fox*, 141 F.3d 425, 426 (2d Cir. 1998) ("Without jurisdiction, any decision or ruling by the court would be a nullity.").

Because the Second Circuit vacated any findings about the Bar Date Order, it is irrelevant whether the GUC Trust took an appeal on those issues. *See Motorola Credit Corp. v. Uzan*, 509 F.3d 74, 88 (2d Cir. 2007) ("That appellants did not raise this contention in the earlier appeal … would not preclude our consideration of this claim. Our vacatur of the [previous decision] meant that the issue could still be raised below and in any subsequent appeal."). As Plaintiffs have noted, where "[t]he force of the Second Circuit's logic is irrefutable," a lower court's "judgment is wiped out against both appealing and non-appealing parties." Dkt. 13866 at 17, 20. Economic Loss Plaintiffs' lead argument (¶¶ 16-20)—that "[u]nder the law of the case doctrine, this Court must adhere to the prior rulings in these proceedings"—is similarly irrelevant: "a finding that has been vacated ceases to be the law of the case, … includ[ing] a finding not expressly addressed but necessarily rejected by an appellate court's reasoning." *Am. Hotel Int'l Grp. v. OneBeacon Ins. Co.*, 374 F. App'x 71, 74 (2d Cir. 2010); *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir. 1993).

## II. PLAINTIFFS' TIME TO FILE LATE CLAIMS WAS TOLLED, BUT ONLY AFTER THEY CHOSE TO PURSUE NEW GM AND NOT THE GUC TRUST

Pre-Closing Accident Plaintiffs devote only the last page or so of their brief to the key document that controls when they received a toll of their time to file late claims: the tolling agreement they sought and received as of December 21, 2015. *See* Accident Br. 13-14. Remarkably, they offer no explanation for why they affirmatively reached out to the GUC Trust and Participating Unitholders to obtain a toll if they had already received one by virtue of a September 2014 scheduling order. Nor do Pre-Closing Accident Plaintiffs explain why, if they believed the September 2014 scheduling order had tolled their time to file late claims, they would

7

have remained silent about that until filing their motion for late claims years later, negotiated for a toll that expired sooner than what they claim to have already received at that point, or agreed to forego challenging future GUC Trust distributions to obtain a toll that they already had. As Pre-Closing Accident Plaintiffs concede, they proposed the December 2015 tolling agreement precisely "to ensure the GUC Trust and Participating Unitholders could not argue the Claimants were dilatory for not filing the proofs of claim that they had executed in mid- to late-2015." *Id.*

Pre-Closing Accident Plaintiffs' only other claim to a toll is based on their argument that the September 2014 scheduling order incorporates the May 2014 scheduling order that tolls Economic Loss Plaintiffs' time to file late claims. Pre-Closing Accident Plaintiffs concede, as they must, that the toll in the May 2014 scheduling order memorializes "an agreement between economic loss plaintiffs and the GUC Trust" to which Pre-Closing Accident Plaintiffs were not a party. Accident Br. 8. But, they say, they are nonetheless beneficiaries of that toll because "tolling was made a part" of the schedule imposed by the September 2014 scheduling order. *Id.*

As noted in the GUC Trust's opening brief (at 13-15), that claim is belied by the plain language and structure of the May and September scheduling orders. Whereas the May Order clearly articulates that a toll exists as to Economic Loss Plaintiffs, the September Order says nothing remotely analogous as to Pre-Closing Accident Plaintiffs. *Compare* Dkt. 12697 *with* Dkt. 12897. And there is no basis to read the September Order's ministerial provision about "the schedule governing New GM's Ignition Switch Motion to Enforce" (Dkt. 12897 at 2) as an affirmative grant of a toll to file late claims, especially when it appears in a different section of the order than where the toll appeared in the May Order, and the GUC Trust did not agree to grant a toll to Pre-Closing Accident Plaintiffs. *See* GUC Trust Opening Br. 14-15. Pre-Closing Accident Plaintiffs' own description of the September Order all but admits that it deals with scheduling and

8

not with tolling: it "instructed" them to "'catch up' … to brief the Four Threshold Issues at the same time" as Economic Loss Plaintiffs, "channeled [them] into the same schedule," and "ordered [them] to **follow the schedule** set forth in the May 2014 Scheduling Order … to brief the Four Threshold Issues at the same time as the economic loss plaintiffs." Accident Br. 9. The September Order looks like a scheduling order, and its provisions act like a scheduling order; it cannot be construed as being more than a scheduling order when it does not say otherwise.

Pre-Closing Accident Plaintiffs spend the remainder of their brief offering various theories for why this or that "effectively postponed any late claims motion." Accident Br. 6, 7, 10, 13. They highlight that late claims were presumptively disallowed under the Late Filed Claims Order (without acknowledging that the order explicitly authorized motions to file late claims). *See id.* at 6. They recount how Judge Gerber managed his docket and rejected attempts by specific plaintiffs to inject their ancillary concerns into the Threshold Issues (without acknowledging that late claims were expressly not a Threshold Issue, and that they could have filed a placeholder motion at any time and stipulated to staying its adjudication). *See id.* at 10-13. And they contend that it "would have been a futile act" and "a waste of time and resources" to seek to file late claims until after the Second Circuit affirmed the Bankruptcy Court's Sale Order due process holding and vacated the equitable mootness holding (without acknowledging that they could have alleged in their motion that a due process violation justified filing late claims now, just as they alleged in their complaints that a due process violation permitted them to sue New GM in spite of the Sale Order's successor liability bar). *See id.* at 6-8.

Pre-Closing Accident Plaintiffs never actually contend, however, that any of those other orders or statements *tolled* their time to file late claims. They argue instead that any "sensible lawyer participating in these proceedings" would have similarly chosen to make the voluntary

9

strategic choice to wait to file late claims until almost two years after the recalls and more than five years after they were in accidents. *Id.* at 12. Accordingly, their excuses and post-hoc justifications go to the merits of their motions. *See Pioneer*, 507 U.S. at 396-97 (holding late claimant liable for the acts of its counsel and noting that "the proper focus is upon whether the neglect of respondents *and their counsel* was excusable"). The GUC Trust and Participating Unitholders will address those arguments at the appropriate time.

As for Economic Loss Plaintiffs, all agree that they had notice of the facts underlying their claims by February 2014, and that their time to file late claims was tolled as of May 16, 2014. Econ. Loss Br. ¶¶ 25-26. That does not mean, however, that "any examination of the *Pioneer* factors, and any related discovery, should be limited" based on the applicable tolling period. *Id.* ¶ 27. Indeed, the interrogatories that this Court authorized (and which are due to be answered by April 17, 2017) are not so limited. *See* Dkt. 13869, Ex. A. That is because discovery regarding Plaintiffs' knowledge and conduct, both before and after the recalls, and outside any tolling period, sheds light on why it was inexcusable for them to wait to file late claims until December 22, 2016.[4]

## CONCLUSION

For the reasons stated above and in the GUC Trust's opening brief, this Court should find that *Pioneer* applies, and that Economic Loss Plaintiffs' and Pre-Closing Accident Plaintiffs' time to file late claims was tolled starting on May 16, 2014, and December 21, 2015, respectively.

---

[4] Economic Loss Plaintiffs are also wrong to argue (¶ 29) that the toll makes it "evident that they have satisfied the factor considering the length of delay." The Second Circuit has emphasized that where a late claimant lacks a valid explanation for a delay, "both the 'reason for the delay' and the 'length of the delay' factors might weigh in favor of the debtor, even if the delay is, in absolute terms, quite short." *In re Enron Corp.*, 419 F.3d 115, 129 (2d Cir. 2005); *see also e.g.*, *In re Tronox Inc.*, 2014 WL 5801058, at *2 (Bankr. S.D.N.Y. Nov. 7, 2014) (denying motion where movant "insufficiently explained" basis for delay after it "learned the key facts on which it relies").

| | |
|---|---|
| Dated:  New York, New York<br>March 20, 2017 | Respectfully submitted,<br><br>GIBSON, DUNN & CRUTCHER LLP<br><br>By:   /s/ Mitchell A. Karlan<br>    Mitchell A. Karlan<br>    Gabriel K. Gillett<br><br>200 Park Avenue<br>New York, New York 10166-0193<br>Telephone: (212) 351-4000<br>Facsimile: (212) 351-4035<br><br>*Attorneys for Wilmington Trust Company, as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust*<br><br><br>AKIN GUMP STRAUSS HAUER & FELD LLP<br><br>    Daniel H. Golden<br>    Deborah J. Newman<br><br>One Bryant Park<br>New York, New York 10036-6728<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br><br>*Attorneys for the Participating Unitholders* |

11