**Hearing Date and Time: April 20, 2017 at 9:00 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile:  (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re                                            :   Chapter 11
                                                 :
MOTORS LIQUIDATION COMPANY, *et al.*,            :   Case No.: 09-50026 (MG)
    f/k/a General Motors Corp., *et al.*            :
                                                 :
                  Debtors.   :   (Jointly Administered)
-----------------------------------------------------------X

### REPLY BRIEF BY GENERAL MOTORS LLC ON THE 2016 THRESHOLD ISSUES SET FORTH IN THE ORDER TO SHOW CAUSE, DATED <u>DECEMBER 13, 2016 (EXCEPT FOR THE LATE PROOF OF CLAIM ISSUE)</u>

TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

ARGUMENT .............................................................................................................. 5

I.      *First Threshold Issue*:  All Parties Except for Pillars Agree How the Different
        Categories of Plaintiffs Should Be Defined ............................................................ 5

II.     *Second Threshold Issue (Part One)*:  Old GM Vehicle Owners Without the
        Ignition Switch Defect Failed to Appeal the December 2015 Judgment;
        Therefore, They are Prohibited from Bringing Independent Claims Barred
        by that Judgment ................................................................................................ 6

        A.      The December 2015 Judgment Ruled that Old GM Vehicle Owners Without
                the Ignition Switch Defect Did Not Allege Valid Independent Claims ........................ 6

        B.      The Bankruptcy Court Did Not Exceed Its Jurisdiction In Making the
                Independent Claims Ruling in the December 2015 Judgment ................................... 12

                1.      The "Mandate Rule" Does Not Relieve Old GM Vehicle Owners
                        Without the Ignition Switch Defect of The Consequences of Their
                        Failure to Appeal the December 2015 Judgment............................................. 13

                2.      The So-Called "Wipe-Out" Rule Does Not Apply ........................................... 15

                3.      Old GM Vehicle Owners Without the Ignition Switch Defect Are Not
                        Entitled to Relief Under Rule 60(b)(5) or Rule 60(b)(6)................................ 17

        C.      Designated Counsel's Due Process Argument with Respect to Independent
                Claims Are Irrelevant……………………………………………………..20

        *Second Threshold Issue (Part Two)*: This Court Should Continue to be the
        Gatekeeper to Determine if Claims Asserted by Plaintiffs Are Barred by the
        Bankruptcy Court's Rulings or Can Proceed in Non-Bankruptcy Courts…………..22

        *Second Threshold Issue (Part Three)*: Designated Counsel's Additional Arguments
        with Respect to Why Certain Plaintiffs Should Not Be Bound By the
        December 2015 Judgment Are Without Merit..…………………………………29

III.    *Third Threshold Issue* ........................................................................................ 34

        A.      Designated Counsel Misstates the Definition of Used Car Purchasers, Which
                is Limited to Ignition Switch Plaintiffs Only ...................................................... 34

        B.      Designated Counsel Failed to Address Well Established Law that Used Car
                Owners Do Not Acquire Derivative Claims Against New GM that are
                Greater than that Held by their Sellers ........................................................... 35

IV.     *Fourth Threshold Issue*: Post-Closing Accident Plaintiffs Cannot Recover
        Punitive Damages Predicated on Successor Liability................................................ 38

i

**V.**     **REPLIES TO SUPPLEMENTAL OPENING BRIEFS** ..................................................... 42

   **A.**     **Pillars Supplemental Opening Brief**........................................................................... 42

   **B.**     **Pilgrim Supplemental Opening Brief**.......................................................................... 44

   **C.**     **Pope Supplemental Opening Brief** ............................................................................. 46

   **D.**     **Peller Supplemental Opening Brief**............................................................................ 49

**CONCLUSION** .................................................................................................................................. 51

30254910.v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Mich. Carpenters' Council Health & Welfare Fund*,
  760 F.Supp. 665 (W.D. Mich. 1991) ............................................................................ 20, 22

*Bank of China, N.Y. Branch v. NBM L.L.C.*,
  No. 01 Civ. 0815(DC), 2004 WL 1907308 (S.D.N.Y. Aug. 26, 2004) ............................... 16

*Barnett v. Jaspan*,
  124 F.2d 1005 (2d Cir. 1942) ............................................................................................. 16

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ............................................................................................................ 40

*Burton v. Chrysler Grp., LLC (In re Carco)*,
  492 B.R. 392 (Bankr. S.D.N.Y. 2013) ............................................................................... 36

*In re Casse*,
  198 F.3d 327 (2d Cir. 1999) ............................................................................................... 23

*Castillo v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–
  00509, 2012 WL 1339496, at *5 (Bankr. S.D.N.Y. Apr. 17, 2012), *aff'd,* 500
  B.R. 333 (S.D.N.Y. 2013), *aff'd*, No. 13-4223-BK, 2014 WL 4653066 (2d
  Cir. Sept. 19, 2014) .............................................................................................................. 4

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) ............................................................................................................ 36

*City of Newport v. Fact Concerts, Inc.*,
  453 U.S. 247 (1981) ............................................................................................................ 41

*Colonial Auto Ctr. v. Tomlin (In re Tomlin)*,
  105 F.3d 933 (4th Cir. 1997) ............................................................................................. 24

*Cruickshank & Co., Ltd. v. Dutchess Shipping Co., Ltd.*,
  805 F.2d 465 (2d Cir. 1986) (Mansfield, J., concurring) ............................................. 16, 18

*Cty. of Suffolk v. Stone & Webster Eng'g Corp.*,
  106 F.3d 1112 (2d Cir. 1997) ....................................................................................... 14, 15, 36

*Daniels v. Gilbreath*,
  668 F.2d 477 (10th Cir. 1982) ............................................................................................ 16

*In re Davis*,
  150 B.R. 633 (Bankr. W.D. Pa. 1993) ............................................................................... 18

30254910.v1

*Deep v. Copyright Creditors*,
   122 F. App'x 530 (2d Cir. 2004) ........................................................................... 23

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   600 F.3d 190 (2d Cir. 2010) ........................................................................... 11, 38

*Engquist v. Or. Dep't. of Agric.*,
   478 F.3d 985 (9th Cir. 2007) ........................................................................... 40

*In re Enron*,
   Adv. Proc. No. 04–04303 (AJG), 2006 WL 1030413, at *6 (Bankr. S.D.N.Y. Apr. 10,
   2006) ........................................................................................................... 40

*Giannone v. York Tape & Label, Inc.*,
   548 F.3d 191 (2d Cir. 2008) ........................................................................... 11, 38

*In re Grumman Olson Indus., Inc.*,
   445 B.R. 243 (Bankr. S.D.N.Y. 2011), *aff'd*, 467 B.R. 694 (S.D.N.Y. 2012) ............... 36, 39

*Home Ins. Co. v. Am. Home Prods. Corp.*,
   75 N.Y.2d 196 (1990) ..................................................................................... 40

*Jardine, Gill & Duffus, Inc. v. M/V Cassiopeia*,
   523 F.Supp. 1076 (D. Md. 1981) ..................................................................... 20, 22

*In re Johns-Manville Corp.*,
   600 F.3d 135 (2d Cir. 2010) ........................................................................... 12, 13

*Lightfoot v. Union Carbide Corp.*,
   No. 92 Civ. 6411(HB), 1997 WL 752357 (S.D.N.Y. Dec. 2, 1997) ........................... 17

*Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*,
   690 F.3d 382 (5th Cir. 2012) ........................................................................... 18

*In re Matter of Motors Liquidation Co.*,
   829 F.3d 135 (2d Cir 2016) ........................................................................ *passim*

*In re Motors Liquidation Co.*,
   447 B.R. 142 (Bankr. S.D.N.Y. 2011) ............................................................... 24

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015) ......................................................... 11, 18, 35

*In re Motors Liquidation Co.*,
   541 B.R. 104 (Bankr. S.D.N.Y. 2015) ............................................................ *passim*

*Nemaizer v. Baker*,
   793 F.2d 58 (2d Cir. 1986) ............................................................................. 20

*In re Old Carco LLC*,
   438 F. App'x 30 (2d Cir. 2011) ....................................................................... 23

iv

*Park Ave. Radiologists, P.C. v. Melnick (In re Park Ave. Radiologists, P.C.)*,
    450 B.R. 461 (Bankr. S.D.N.Y. 2011) ............................................................... 27

*Piambino v. Bailey*,
    757 F.2d 1112 (11th Cir. 1985) ........................................................................ 35

*Ricci v. DeStefano*,
    Civil No. 3:04cv1109 (JBA), 2011 WL 677263 (D. Conn. Jan. 21, 2011) ......................................... 14

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*,
    762 F.3d 165 (2d Cir. 2014) ........................................................................... 13

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ............................................................................. 40, 41

*Stevens v. Miller*,
    676 F.3d 62 (2d Cir. 2012) ............................................................................. 48

*Tamayo v. Stephens*,
    740 F.3d 986 (5th Cir. 2014) ......................................................................... 17, 18

*In re Texaco Inc.*,
    182 B.R. 937 (Bankr. S.D.N.Y. 1995) ................................................................. 23

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009)) ............................................................................. 12, 38

*Trusky v. Gen Motors Co. (In re Motors Liquidation Co.)*,
    Adv. No. 12-09803 (REG), 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) ......................... 24, 27

*U.S. v. Ben Zvi*,
    242 F.3d 89 (2d Cir. 2001) ............................................................................. 13

*Werner v. Carbo*,
    731 F.2d 204 (4th Cir. 1984) ......................................................................... 17

**STATUTES AND RULES**

Rule 60(b)(5) of the Federal Rules of Civil Procedures ……………………………17, 18, 19, 20

Rule 60(b)(6) of the Federal Rules of Civil Procedures………………………………...17, 19, 20

**OTHER AUTHORITIES**

11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2863 (2d ed. 1995) . . . .18

# INTRODUCTION[1]

In its Opening Brief, New GM provided thorough legal arguments, complete with record support, showing that its positions on the 2016 Threshold Issues are compelled by the law and history of these proceedings. Plaintiffs' briefs on the 2016 Threshold Issues, in contrast, improperly ignore the controlling rulings in the final December 2015 Judgment in favor of a distorted interpretation of the Second Circuit's Opinion. Plaintiffs' arguments are needlessly complicated by references to irrelevant issues, and provide no basis for reaching conclusions on the 2016 Threshold Issues other than the position asserted by New GM.

In summary, New GM's position on the four 2016 Threshold Issues is as follows:

***Threshold Issue 1***:  All parties except for the Pillars plaintiff agree on the definitions of "Ignition Switch Plaintiffs" and "Non-Ignition Switch Plaintiffs."[2]  Pillars disagrees with the application of those definitions to his particular situation, but fails to explain why the definitions used uniformly in previous Rulings and agreed to by every other party in the case should not be binding on him.  In short, Pillars is a Non-Ignition Switch Pre-Closing Accident Plaintiff.

***Threshold Issue 2***:  There is no dispute that Judge Gerber held in paragraph 14 of his December 2015 Judgment that both economic loss and post-closing accident plaintiffs who own Old GM vehicles without the Ignition Switch Defect, *including all plaintiffs represented by*

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Opening Brief By General Motors LLC On The 2016 Threshold Issues Set Forth In The Order To Show Cause, Dated December 13, 2016 (Except For The Late Proof Of Claim Issue)*, dated February 27, 2017 [ECF No. 13865] ("**New GM's Opening Brief**").

[2]    Designated Counsel anticipated that New GM would make a definitional argument that New GM did not make. *See* Designated Counsel Opening Brief, at 15-16.  New GM is not asserting that the term "Non-Ignition Switch Plaintiffs" includes Post-Closing Accident Plaintiffs without the Ignition Switch Defect.  Thus, New GM and Designated Counsel are in agreement as to the relevant definitions.

1

*Designated Counsel*,[3] "have attempted to assert an Independent Claim against New GM in a pre-existing lawsuit with respect to an Old GM vehicle . . . [and] such claims are proscribed . . . ."

While acknowledging this Ruling and that they chose not to appeal it, plaintiffs[4] instead argue a litany of reasons why *res judicata* should not apply to them, including mandate/wipe-out/Rule 60 theories, and due process/lack of subject matter jurisdiction arguments.[5]   None of these explanations have merit.   The mandate/wipe out/Rule 60 theories are all variations of the same argument, and fail for the following reasons: (1) the Second Circuit Opinion is consistent with the December 2015 Judgment; (2) the December 2015 Judgment was not reviewed by the Second Circuit—that Judgment made separate rulings which were never appealed; (3) unlike the Second Circuit, the Bankruptcy Court, as part of the marked pleadings process, reviewed plaintiffs' claims and, as part of the December 2015 Judgment, determined that they were not valid Independent Claims; (4) Designated Counsel admitted in pleadings filed with the Supreme Court that the Second Circuit Opinion did not affect the rights of any plaintiff group other than those asserting the Ignition Switch Defect; and (5) Non-Ignition Switch Plaintiffs represented by Designated Counsel, and Post-Closing Accident Plaintiffs, were not before the Second Circuit and its Opinion did not adjudicate their rights with respect to Independent Claims; in contrast,

---

[3]   "Designated Counsel" was defined by the Bankruptcy Court as "the law firms Brown Rudnick, LLP; Caplin & Drysdale, Chartered; and Stutzman, Bromberg, Esserman & Plifka, PC[.]"   *Supplemental Scheduling Order Regarding (I) Motion Of General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Court's July 5, 2009 Sale Order And Injunction, (II) Objection Filed By Certain Plaintiffs In Respect Thereto, And (III) Adversary Proceeding No. 14-01929*, dated July 11, 2014 [ECF No. 12770], at 2 n.2. Caplin & Drysdale, Chartered thereafter ceased being a Designated Counsel.   Goodwin Procter LLP represents Pre-Closing Accident Plaintiffs and Post-Closing Accident Plaintiffs.   Brown Rudnick, LLP, Stutzman, Bromberg, Esserman & Plifka, PC, and Goodwin Procter LLP are, collectively, the Designated Counsel as that term is used herein.

[4]   In discussing Threshold Issue 2, when the term "plaintiffs" is used, it is shorthand for Old GM vehicle owners without the Ignition Switch Defect.   The term "Old GM vehicle owners without the Ignition Switch Defect" means Non-Ignition Switch Plaintiffs (*i.e.*, plaintiffs with Old GM vehicles without the Ignition Switch Defect seeking economic losses) and Post-Closing Accident Plaintiffs in Old GM vehicles without the Ignition Switch Defect.

[5]   *See Plaintiffs' Joint Opening Brief On The 2016 Threshold Issues*, dated February 27, 2017 [ECF No. 13866] ("**Designated Counsel's Opening Brief**"), at 27-29.

2

the December 2015 Judgment determined that they (as well as the Peller Plaintiffs) had not asserted valid Independent Claims.

Plaintiffs' due process/subject matter jurisdiction arguments are based on a theoretical concern which no longer is relevant. It does not matter any longer whether the Bankruptcy Court can, as an abstract proposition, bar Independent Claims based on a failure to prove a due process violation relating to the Sale Order. Rather, the Bankruptcy Court unquestionably had (and has) jurisdiction to determine whether plaintiffs asserted valid Independent Claims against New GM, or disguised successor liability claims that were barred by the Sale Order. Plaintiffs, through the marked pleading process, had adequate notice of—and in many cases actively litigated—Bankruptcy Court determinations about whether purported Independent Claims were barred by the Sale Order. Following a detailed review of those pleadings, the December 2015 Judgment made a final ruling that plaintiffs without the Ignition Switch Defect did not assert valid Independent Claims. Plaintiffs' failure to appeal that ruling meant that they waived any due process/subject matter jurisdiction defense (assuming they had one) with regard to the Independent Claims ruling. The Bankruptcy Court's final determination of the Independent Claims issue is *res judicata* as to them.

With regard to the second part of Threshold Issue 2, Plaintiffs implausibly assert that numerous non-bankruptcy trial and appellate courts are better suited to decide whether purported Independent Claims are allowed by the Sale Order. In fact, however, these are quintessential bankruptcy issues. As explained below, the Bankruptcy Court has repeatedly interpreted and enforced the Sale Order with regard to claims alleged against New GM. It is critical that this Court maintain its traditional gatekeeper function to consistently and efficiently enforce the Sale Order (and prior rulings) against, among others, plaintiffs who have improperly brought proscribed claims against New GM.

3

***Threshold Issue 3***:    There can be no reasonable dispute that the term "Used Car Purchasers," as defined by the Second Circuit, is limited to the subset of Ignition Switch Plaintiffs that purchased used Old GM vehicles after the 363 Sale.  *See In re Matter of Motors Liquidation Co*., 829 F.3d 135, 151 (2d Cir. 2016).  Plaintiffs try to expand that definition by arguing that the ruling applies to all owners who purchased used Old GM vehicles after the 363 Sale, even though the ruling on its face does *not* apply to Non-Ignition Switch Plaintiffs, Pre-Closing Accident Plaintiffs, or all other plaintiffs that purchased Old GM vehicles before the 363 Sale.

In making their arguments, plaintiffs ignore well settled law recognized by the Bankruptcy Court that a used car owner's rights against New GM as *acquired from the seller* are limited by the seller's rights against New GM at the time of the used car sale.  Thus, if a seller could not assert a Retained Liability/successor liability claim against New GM because of the Sale Order, the used car buyer also is barred from asserting such claim.[6]  The Second Circuit never questioned or changed that established legal doctrine, so it remains the law of the case.

***Threshold Issue 4***:  Designated Counsel briefed a different issue from that identified by the Court.  This Threshold Issue is not about whether future creditors are bound by a 363 sale order; rather it concerns whether Post-Closing Accident Plaintiffs can seek punitive damages against New GM assuming they have established a successor liability claim.  Paragraph 6 of the December 2015 Judgment finally decided that issue against Post-Closing Accident Plaintiffs in holding that New GM is not "liable for punitive damages based on Old GM conduct under any other theories, such as by operation of law.  Therefore, punitive damages may not be premised on Old GM knowledge or conduct, or anything else that took place at Old GM."

---

[6]    It is noteworthy that Designated Counsel tacitly acknowledged this point as they did not make a successor liability claim for Used Car Purchasers when they amended their complaint in MDL 2543 after the Second Circuit Opinion.

# ARGUMENT

## I.

***First Threshold Issue*: All Parties Except for Pillars Agree How the Different Categories of Plaintiffs Should Be Defined**

New GM and Designated Counsel agree that "Ignition Switch Plaintiffs" are "those plaintiffs asserting economic losses in connection with Old GM vehicles included in Recall No. 14V-047."[7]  New GM and Designated Counsel also agree that "Non-Ignition Switch Plaintiffs" means Old GM vehicles owners who were *not* the subject of Recall No. 14V-047, and who are asserting economic loss claims against New GM.[8]

Finally, New GM and Designated Counsel agree that Pre-Closing Accident Plaintiffs are divided into two categories: (i) Old GM vehicles that were the subject of Recall No. 14V-047 (Ignition Switch Pre-Closing Accident Plaintiffs); and (ii) Old GM vehicles that were not the subject of Recall No. 14V-047 (Non-Ignition Switch Pre-Closing Accident Plaintiffs).

The only disagreement for this Threshold Issue is between plaintiff Pillars and New GM. Pillars argues that if he is considered a Pre-Closing Accident Plaintiff, he should be viewed as an Ignition Switch Pre-Closing Accident Plaintiff rather than a Non-Ignition Switch Pre-Closing Accident Plaintiff.  However, Pillars' vehicle was a Pontiac Grand Am which is not part of Recall No. 14V-047.  Therefore, application of the definitions in the Key Court Rulings (to which everyone but Pillars agrees) results in Pillars being classified as a Non-Ignition Switch Pre-Closing Accident Plaintiff who remains bound by the Sale Order's prohibition against

---

[7]  Designated Counsel's Opening Brief, at 1 n.1.  The Peller Plaintiffs are in accord with Designated Counsel with respect to the definitions of the various groups of plaintiffs.  *See The Elliott, Sesay and Bledsoe Plaintiffs' Supplemental Opening Brief Regarding the 2016 Threshold Issues*, dated February 27, 2017 [ECF No. 13861], at 7 (agreeing "with the treatment of this issue in the Plaintiffs' Opening Brief").

[8]  *See* New GM's Opening Brief, at 2 n.6; Designated Counsel's Opening Brief, at 1 n.1; *see also* footnote 2, *supra*.

5

successor liability claims.[9]  Pillars proffers no logical reason why the standard definitions should

not apply to him, and there is none.

## II.

***Second Threshold Issue (Part One)*:  Old GM Vehicle Owners Without the Ignition Switch
Defect Failed to Appeal the December 2015 Judgment; Therefore, They are Prohibited
from Bringing Independent Claims Barred by that Judgment**

### A.    The December 2015 Judgment Ruled that Old GM Vehicle Owners Without the Ignition Switch Defect Did Not Allege Valid Independent Claims

In determining whether the December 2015 Judgment should be given *res judicata* effect,

it is important to examine how and why Judge Gerber rejected the purported Independent Claims

of Old GM vehicle owners without the Ignition Switch Defect.  Much of that history was set

forth in New GM's Opening Brief, but certain facts are noteworthy in light of plaintiffs' position

that there is a conflict between the Second Circuit Opinion and the December 2015 Judgment.

The facts highlighted below, which plaintiffs overlook, demonstrate that Judge Gerber had a

separate basis for his Independent Claims ruling which was unrelated to due process issues.[10]

As mandated by the September 2015 Scheduling Order, New GM submitted various

"marked pleadings" from Ignition Switch and Non-Ignition Switch litigations, all of which, in

New GM's view violated the Sale Order, including many that contained so-called "Independent

Claims" that were actually "dressed up" successor liability claims.[11]  Consequently, the

Bankruptcy Court reviewed a variety of claims, including (i) marked bellwether complaints filed

---

[9]    *See* Section V.A for additional arguments relating to the Pillars Lawsuit.

[10]    In the November 2015 Decision, Judge Gerber held that whether a Non-Ignition Switch Plaintiff can state an Independent Claim depends, in part, on whether that Plaintiff proved a due process violation by Old GM.  It is not New GM's position that a due process violation is necessary for plaintiffs to state a valid Independent Claim against New GM.  But, the reality is that what many plaintiffs refer to as "Independent Claims" are not such claims.  They do not satisfy Judge Gerber's definition of Independent Claims or the Second Circuit's consistent definition of Independent Claims.

[11]    *See* ECF Nos. 13456 (marked bellwether complaints); 13469 (marked MDL complaint); 13470 (marked complaints by governmental plaintiffs).

6

by Post-Closing Accident Plaintiffs with the Ignition Switch Defect [ECF No. 13456]; (ii) the

marked Second Amended Consolidated Complaint filed in MDL 2543 [ECF No. 13469]; and

(iii) certain complaints filed by state government plaintiffs seeking economic losses or statutory

penalties [ECF No. 13470].  New GM also filed a letter with the Bankruptcy Court, attaching

"other complaints" that contained representative claims barred by the Sale Order.[12]  Many of the

"other complaints" involved Old GM vehicles without the Ignition Switch Defect.[13]  New GM

further contested the provisions in complaints filed by the Peller Plaintiffs.[14]

A number of deficiencies existed with plaintiffs' alleged Independent Claims reviewed

by Judge Gerber.  For example, the *Moore v. Ross* complaint improperly alleged that New GM

had a duty to plaintiffs to recall or retrofit Old GM vehicles; any such duty, however, was

retained by Old GM.[15]  The *Moore* plaintiffs incorrectly asserted that the recall covenant in the

Sale Agreement was the basis of an Independent Claim against New GM.  That was wrong

because the Sale Agreement contains a no-third party beneficiary clause and the recall covenant

was not as Assumed Liability.[16]  Both the Second Circuit and the Bankruptcy Court concur that

---

[12]    Attached as **Exhibit "A"** hereto is New GM's letter filed with the Bankruptcy Court [ECF No. 13466] with "other complaints" attached thereto.

[13]    The Court reviewed five relevant complaints: four from Post Closing Accident Plaintiffs without an Ignition-Switch Defect and one Non-Ignition Switch Pre-Sale Accident Plaintiff.  MDL counsel filed the Second Amended Consolidated Complaint, which included claims on behalf of Non-Ignition Switch Plaintiffs.  Other Old GM vehicle owners without the Ignition Switch Defect had an opportunity to raise specific claims for the Court's review; they did not do so.

[14]    Attached as **Exhibit "B"** hereto is New GM's letter filed with the Bankruptcy Court [ECF No. 13523] with respect to the complaints filed by the Peller Plaintiffs.

[15]    *See* Exhibit "A", at 2 ("These claims allege that New GM had a duty to recall or retrofit Old GM vehicles. But such claims, if they exist as a matter of law at all, are Retained Liabilities. Once New GM purchased Old GM's assets free and clear of claims and obligations relating to Old GM vehicles, New GM (an entity that did not manufacture or sell the Old GM vehicles at issue) did not have any ongoing duties to Old GM vehicle owners (other than specific Assumed Liabilities).").

[16]    *See* Exhibit "A", at 2 ("Although New GM had obligations under the Motor Vehicle Safety Act and to the U.S. Government based on a covenant in the Sale Agreement ("Recall Covenant"), this covenant was not an Assumed Liability. Vehicle owners were not third party beneficiaries under the Sale Agreement, and did not have a private right of action relating to any breach of the Recall Covenant."); *see also id.*, Exh. A at 5-6; *see also* Sale Agreement, ¶ 9.11 ("nothing express or implied in this Agreement is intended or shall be construed to

an Independent Claim must be predicated on a new duty incurred by New GM to the Old GM

vehicle owner after the 363 Sale that is unrelated to the 363 Sale transaction, and that is not

based on Old GM conduct.[17]

Likewise, in *Benbow v. Medeiros Williams, Inc.*, the complaint alleged that New GM had

negligently failed to identify defects or respond to notice of a defect.  That is a Retained Liability

for the same reason: Old GM owed plaintiffs the duty to identify defects in the vehicles it sold,

not New GM.[18]

Similarly, in *Rickard v. Walsh Const. Co.*, plaintiff alleged that New GM was liable for

purportedly misrepresenting material facts to the public related to a vehicle that Old GM had

sold.[19]  Like others, the *Rickards* plaintiff was dressing up a "point of vehicle sale" claim against

Old GM as an improper Independent Claim against New GM.[20]

---

confer upon or give to any Person [*e.g.*, plaintiffs] other than the Parties, their Affiliates and their respective permitted successors or assigns, any legal or equitable Claims, benefits, rights or remedies of any nature whatsoever under or by reason of this Agreement"); *In re Motors Liquidation Co.*, 541 B.R. 104, 130 n.67 (Bankr. S.D.N.Y. 2015) ("New GM notes, properly, that this [recall] covenant was not an Assumed Liability; and that vehicle owners were not third party beneficiaries of the Sale Agreement.").

[17]   *Motors Liquidation Co.*, 829 F.3d at 157 ("Independent Claims are claims based on New GM's own post-closing wrongful conduct . . .  These sorts of claims are based on New GM's post-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct"); *December 2015 Judgment*, at 2 n.3 ("Independent Claim shall mean a claim or cause of action asserted against New GM that is based solely on New GM's own independent post-Closing acts or conduct. Independent Claims do not include (a) Assumed Liabilities, or (b) Retained Liabilities, which are any Liabilities that Old GM had prior to the closing of the 363 Sale that are not Assumed Liabilities.").  The term "Liabilities" was defined in the Sale Agreement as including any obligation under Law, Contract, or otherwise. *See* Sale Agreement, at 11.  Thus, any obligation under Law that Old GM had, that was not an Assumed Liability, was a Retained Liability which stayed behind with Old GM.

[18]   *See* Exhibit "A", at 2 ("These claims purport to allege that New GM should have identified the defect earlier and taken some sort of action in response. These are Retained Liabilities for the same reasons as the claims based on an alleged failure to recall or retrofit Old GM vehicles. Such duties with respect to Old GM vehicles remained with Old GM.").

[19]   *See* Exhibit "A", at 3; *id.* at Exh. E at 34.

[20]   The Bankruptcy Court found that the "Section 402B-Misrepresentation by Seller" asserted by *Rickard* was an assumed Product Liability Claim, but not an Independent Claim.  *See* December 2015 Judgment, ¶ 35.

8

Also, New GM marked up the Peller Plaintiffs' complaints, arguing, among other things, that the Peller Non-Ignition Switch Plaintiffs had not asserted Independent Claims because claims based on Old GM conduct were barred by the Sale Order.[21]

After reviewing these marked pleadings and other complaints, and considering the parties' arguments, the Bankruptcy Court ruled in the December 2015 Judgment: "[t]o the extent such Plaintiffs *have attempted to assert* Independent Claims against New GM *in a pre-existing lawsuit* with respect to an Old GM vehicle, such claims are proscribed by the Sale Order, April Decision and the June [2015 Judgment]." December 2015 Judgment, ¶ 14 (emphasis added). Plaintiffs overlook the explicit language in this dispositive ruling. The plain language in paragraph 14—including the phrases "*attempted to assert*" and "*in a pre-existing lawsuit*"—confirm that the Independent Claims ruling was made in the context of having reviewed specific marked pleadings and other complaints, and having determined that the claims pled were not valid Independent Claims. There is no mention of due process in this ruling.

This conclusion regarding the specific analysis performed for alleged Independent Claims is also confirmed by the fact that New GM originally proposed that the Independent Claims ruling be included in the punitive damages section of the December 2015 Judgment.[22] The Bankruptcy Court disagreed, and placed the Independent Claims ruling in the "Particular Allegations, Claims and Causes of Action in Complaints" section of the December 2015 Judgment (which was the marked pleading section of the Judgment). That placement underscores that the Court's Independent Claims ruling was predicated on an analysis of the

---

[21]    *See* Exhibit "B," at 1-3.

[22]    *See* ECF No. 13559-1, ¶ 9.

particular pleadings using the definition of Independent Claims in the December 2015 Judgment. Notably, the Second Circuit used a consistent definition of Independent Claims in its Opinion.[23]

Finally, that the Bankruptcy Court rejected certain Independent Claims for reasons other than due process is supported by the fact that when New GM proposed language for the December 2015 Judgment that linked the due process issue to Independent Claims (*i.e.*, no due process issue, no Independent Claims), the Bankruptcy Court rejected that language. *See* ECF No. 13559, at 3 & Exh. A, ¶ 9. In sum, Judge Gerber evaluated plaintiffs' alleged Independent Claims and made his ruling based on whether they satisfied the definition of Independent Claims, and without regard to whether plaintiffs could (or could not) establish a due process violation involving the Sale Order.

Following his review of the Peller Plaintiffs' complaints, Judge Gerber also ruled that the Peller Plaintiffs who were Non-Ignition Switch Plaintiffs had not asserted valid Independent Claims: "Peller Complaints shall remain stayed unless and until they are amended (i) to remove claims that rely on Old GM conduct as the predicate for claims against New GM, (ii) to comply with the applicable provisions of the Decision and this Judgment (including those with respect to claims that fail to distinguish between Old GM and New GM), and (iii) to strike any purported Independent Claims by Non-Ignition Switch Plaintiffs." *Id.*, ¶ 28. Thus, while the Second Circuit arguably found that the Peller Plaintiffs should be permitted to *assert* Independent Claims,[24] the Bankruptcy Court ruled in a separate Judgment, following a review of actual allegations, that the Peller Plaintiffs had not asserted *valid* Independent Claims under a test that

---

[23]    *See* footnote 17, *supra*.

[24]    The precise ruling by the Second Circuit is "we affirm the bankruptcy court's decision not to enjoin independent claims . . . ." *Motors Liquidation Co.*, 829 F.3d at 158. While the June 2015 Judgment never authorized the Peller Plaintiffs to file Independent Claims and, therefore, an affirmance of the Judgment should only apply to Ignition Switch Plaintiffs and not them, we assumed for purposes of making this Threshold Issue argument that the Second Circuit authorized the Peller Plaintiffs to assert Independent Claims.

was consistent with the Second Circuit's Independent Claims definition. That final and separate December 2015 ruling is therefore binding on the Peller Plaintiffs.

Plaintiffs ignore these binding rulings on Independent Claims as part of the marked pleading process and, instead, focus on the interplay of the June 2015 Judgment and the resulting effect of the Second Circuit's review of that Judgment. But the April 2015 Decision explicitly stated that the Bankruptcy Court had deferred ruling on issues related to Non-Ignition Switch Plaintiffs (*see In re Motors Liquidation Co.*, 529 B.R. 510, 523 (Bankr. S.D.N.Y. 2015)), and the June 2015 Judgment (as well as the Second Circuit Opinion) did not involve the marked pleadings upon which Judge Gerber made his dispositive Independent Claims rulings in the December 2015 Judgment.

In sum, the rights of Non-Ignition Switch Plaintiffs and Post-Closing Accident Plaintiffs without the Ignition Switch Defect were determined by the December 2015 Judgment, which contained final rulings about whether such plaintiffs had asserted valid claims using an Independent Claims definition that matched the test later prescribed by the Second Circuit. Designated Counsel on behalf of Old GM vehicles owners without the Ignition Switch Defect (and the Peller Plaintiffs) decided not to appeal the December 2015 Judgment barring them from asserting their alleged Independent Claims, even though they did appeal other issues adjudicated by the December 2015 Judgment.[25]  In these circumstances, the law is clear: issues not appealed from the December 2015 Judgment are *res judicata* to the parties bound by that Judgment.  *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010); *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008).

---

[25]    *See* ECF Nos. 13576, 13578, 13579 (statements of issues on appeal with respect to the December 2015 Judgment).

30254910.v1

B.    **The Bankruptcy Court Did Not Exceed Its Jurisdiction In Making the Independent
Claims Ruling in the December 2015 Judgment**

Plaintiffs incorrectly argue that Judge Gerber exceeded his jurisdiction when he barred them from asserting Independent Claims.  But the December 2015 Judgment does not link the viability of Independent Claims to the establishment of a due process violation relating to the Sale Order.  Rather, the Independent Claims bar was based on the Bankruptcy Court's review of marked pleadings and the Court having determined that such claims did not satisfy the Bankruptcy Court's definition of Independent Claims.[26]

Moreover, even if the Bankruptcy Court exceeded its jurisdiction in making its Independent Claims ruling in the December 2015 Judgment, plaintiffs waived that defense when they did not appeal that ruling.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 148 (2009) ("whether the Bankruptcy Court had jurisdiction and authority to enter the injunction in 1986 was not properly before the Court of Appeals in 2008 and is not properly before us"); *see also In re Johns-Manville Corp.*, 600 F.3d 135, 147 (2d Cir. 2010) ("*Manville IV*").  These binding precedents hold that the law's interest in the finality of a judgment is paramount to an untimely raised jurisdictional defense.  *See Travelers*, 557 U.S. at 154 ("It is just as important that there should be a place to end as that there should be a place to begin litigation, and the need for finality forbids a court called upon to enforce a final order to tunnel back . . . for the purpose of reassessing prior jurisdiction de novo." (internal quotation marks and citations omitted; alteration in original)).

---

[26]    *See* December 2015 Judgment, at 2 n.3 & ¶ 14; *see also* June 2015 Judgment, ¶ 4 (defining Independent Claims as "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct").

30254910.v1

Designated Counsel's citations to the *Manville* line of cases[27] do not support their argument. In *Manville IV*, the Second Circuit held that certain claimants' due process rights were violated by an over-broad bankruptcy order that had extinguished their claims. *See Manville IV*, 600 F.3d at 157-58. But the court expressly recognized that parties who had "fail[ed] to raise [that argument]" in their appeals from the district court decision had "forfeited [it]." *Id.* at 147.

Put simply, plaintiffs, represented by their sophisticated counsel, waived all objections to paragraph 14 of the December 2015 Judgment when they chose not to appeal that ruling. That tactical decision is now outcome-determinative against their Independent Claims argument. While plaintiffs offer three reasons why this Court should vacate paragraph 14 of the December 2015 Judgment (the mandate rule, the "wipe out" doctrine, and Rule 60(b) of the Federal Rules of Civil Procedure), they all have common flaws and, as discussed below, none have merit.

### 1. The "Mandate Rule" Does Not Relieve Old GM Vehicle Owners Without the Ignition Switch Defect of The Consequences of Their Failure to Appeal the December 2015 Judgment

Designated Counsel contend that the Second Circuit's mandate rule requires this Court to not enjoin Independent Claims.[28] The mandate rule certainly requires lower courts to follow the instructions of the appellate court. *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014). The mandate rule is a feature of the law-of-the-case doctrine. However, it only "forecloses re-litigation of issues expressly or impliedly decided by the appellate court." *U.S. v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (quoting *U.S. v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)). Moreover, the mandate rule must also be applied consistent with a parallel principle: "a decision made at a previous stage of litigation, which could have been challenged in

---

[27]    *See* Designated Counsel's Opening Brief, at 25-26.

[28]    *See id.*, at 19-20.

13

the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision . . . ."  *Cty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997); *see also Ricci v. DeStefano*, Civil No. 3:04cv1109 (JBA), 2011 WL 677263, at *1 (D. Conn. Jan. 21, 2011) ("Upon reconsideration, the Court concludes that because Plaintiffs failed to advance an argument with respect to their Section 1985 claim on appeal before the Second Circuit, they waived any challenge to this Court's ruling on that claim, and the original judgment for Defendants on that claim remains the law of the case.") (citing *County of Suffolk*)).

Non-Ignition Switch Plaintiffs cannot rely on the mandate rule for at least three independent reasons.

*First*, the mandate rule has no application where the Second Circuit's decision is *consistent* with the December 2015 Judgment. Both the Second Circuit Opinion and the December 2015 Judgment use a similar definition of Independent Claims: such a claim must be based solely on New GM conduct with respect to a new duty incurred by New GM to the Old GM vehicle owner after the 363 Sale.[29]  The proceedings leading to the December 2015 Judgment assumed that plaintiffs could *assert* Independent Claims, but applied the Independent Claims definition to the specific claims alleged by plaintiffs.  The Bankruptcy Court then ruled that plaintiffs had not asserted *valid* Independent Claims.  There is nothing inconsistent between what the Bankruptcy Court did as part of the marked pleading process relating to the December 2015 Judgment, and what the Second Circuit did in discussing as a matter of jurisdiction whether the Sale Order could bar valid Independent Claims.[30]

---

[29]    Indeed, as plaintiffs also recognize, the Second Circuit, like the Bankruptcy Court, found that a proper Independent Claim had to be disconnected from the Sale Order or Old GM's conduct.  *See* Designated Counsel's Opening Brief, at 17.

[30]    The Second Circuit clearly held that the Bankruptcy Court had jurisdiction to interpret the Sale Order to determine whether the alleged Independent Claims asserted by plaintiffs violated the Sale Order. *See Motors*

14

*Second*, while the Second Circuit ruling resulted from the appeal of the June 2015 Judgment, the relevant portions of the December 2015 Judgment were never appealed. The mandate rule does not allow this Court to revisit long-final decisions that were not separately appealed. Rather, those decisions are final and become the law of the case. *See Cty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997).

*Third*, the Second Circuit Opinion never dealt with the rights of Non-Ignition Switch Plaintiffs represented by Designated Counsel since they did not appeal the June 2015 Judgment.[31] Nor did the Opinion address Post-Closing Accident Plaintiffs because those plaintiffs were not part of the June 2015 Judgment reviewed by the Second Circuit. Thus, the mandate directive could never apply to these plaintiffs, who were unquestionably the subject of the December 2015 Judgment.

For all of these reasons, the Second Circuit's mandate does not apply to the Independent Claims ruling for Old GM vehicle owners without the Ignition Switch Defect in the December 2015 Judgment.

## 2. The So-Called "Wipe-Out" Rule Does Not Apply

Non-Ignition Switch Plaintiffs fare no better with their argument that they should benefit from the Second Circuit Opinion because it "wipes out" this Court's Independent Claims ruling in the December 2015 Judgment.[32]

---

*Liquidation Co.*, 829 F.3d at 153-54. That is what the Bankruptcy Court did as part of the December 2015 Judgment.

[31] The term "Non-Ignition Switch Plaintiffs," as defined in the Second Circuit Opinion, is limited to the Peller Plaintiffs only, and not the group represented by Designated Counsel. *See Motors Liquidation Co.*, 829 F.3d at 152 n.18, 152-154.

[32] *See* Designated Counsel's Opening Brief, at 22-23.

*First*, as discussed *supra*, the December 2015 Judgment was consistent with the Second Circuit Opinion. Thus, the Second Circuit Opinion could not wipe out the lower court's Independent Claims ruling in the December 2015 Judgment.

*Second*, the wipe out rule applies when there is "a reversal or modification in favor of an *appealing party*[.]" *Cruickshank & Co., Ltd. v. Dutchess Shipping Co., Ltd.*, 805 F.2d 465, 469 (2d Cir. 1986) (Mansfield, J., concurring) (emphasis added). Here, there is no "appealing party" with respect to the relevant Independent Claims ruling in the December 2015 Judgment.[33]

*Third*, the December 2015 Judgment rested on independent grounds that were not "wiped out" by the Second Circuit Opinion. In the December 2015 Judgment, the Bankruptcy Court determined that the marked pleadings and other complaints it reviewed did not state valid Independent Claims. *See supra* at 9-11.

*Fourth*, as noted in New GM's Opening Brief, Designated Counsel, as part of their argument why the Second Circuit Opinion was not significant enough to warrant Supreme Court review, took the position in opposing New GM's *certiorari* petition that the Second Circuit Opinion only impacted approximately 1.7 million Old GM vehicle owners. The 1.7 million vehicles are only those owned by plaintiffs asserting claims based on the Ignition Switch Defect. This admission—that the Second Circuit Opinion did not affect Non-Ignition Switch Plaintiffs— dooms their wipe out argument for Non-Ignition Switch Plaintiffs. The Opinion cannot have a different scope depending on whether the answer is beneficial to plaintiffs' position.

For each of these reasons, the wipe out doctrine does not apply here.

---

[33] The cases relied upon by Designated Counsel are inapposite for this and other reasons. *See Barnett v. Jaspan*, 124 F.2d 1005 (2d Cir. 1942) (decision by appellate court applied to non-appealing party to an order regarding an assignment to a trustee that was appealed by another party; there was no subsequent order that was not appealed); *Bank of China, N.Y. Branch v. NBM L.L.C.*, No. 01 Civ. 0815(DC), 2004 WL 1907308 (S.D.N.Y. Aug. 26, 2004) (same); *Daniels v. Gilbreath*, 668 F.2d 477 (10th Cir. 1982) (same).

3.    **Old GM Vehicle Owners Without the Ignition Switch Defect Are Not Entitled
to Relief Under Rule 60(b)(5) or Rule 60(b)(6)**

Plaintiffs' argument that the December 2015 Judgment should be vacated under Rule

60(b)(5) of the Federal Rules of Civil Procedure[34] likewise fails for several reasons, including

the same reasons made in the preceding "wipe-out" section.

As an initial matter, plaintiffs' request for Rule 60(b) relief is procedurally improper and

untimely. Old GM vehicle owners without the Ignition Switch Defect never moved for Rule

60(b)(5) relief. The Court should not construe Designated Counsel's briefing on Threshold

Issues to make such a belated motion now—especially when plaintiffs have waited nearly *eight*

*months* since the Second Circuit Opinion to even raise the issue.  Although plaintiffs argue that

delays of 18 months are acceptable for Rule 60(b) motions, those were not Rule 60(b)(5) cases.

*See* Designated Counsel's Opening Brief, at 30.  In the only two Rule 60(b)(5) cases cited by

plaintiffs on timeliness, while one party waited only eleven weeks, the other party waited two

years.  The two year delay was held to be untimely.  *See Werner v. Carbo*, 731 F.2d 204, 207

(4th Cir. 1984) (eleven weeks); *Lightfoot v. Union Carbide Corp.*, No. 92 Civ. 6411(HB), 1997

WL 752357, at *3 (S.D.N.Y. Dec. 2, 1997) (two years).  Plaintiffs failed to cite *Tamayo v.*

*Stephens*, 740 F.3d 986, 991 (5th Cir. 2014), where the Fifth Circuit found that a delay of eight

months (like here) following a purported change in the law, was an unreasonable amount of time

to wait. *Tamayo* was a compelling case to grant Rule 60(b) relief since it literally involved a

matter of life and death. In *Tamayo*, a Rule 60(b)(5) motion, based on a Supreme Court decision

issued nearly eight months earlier, filed two days before habeas petitioner's scheduled execution,

was deemed untimely.

---

[34]    The Rule provides relief from "a final judgment" that is "based on an earlier judgment that has been reversed or
vacated . . . ."  Fed. R. Civ. P. 60(b)(5).  It is a variation of the "wipe out" rule that, as shown above, does not
apply.

17

The Second Circuit made no ruling for parties that were not before it, such as Non-Ignition Switch Plaintiffs represented by Designated Counsel, or Post-Closing Accident Plaintiffs. Moreover, the Second Circuit made no rulings with respect to the December 2015 Judgment. In particular, it made no rulings as to whether the actual claims filed by Non-Ignition Switch Plaintiffs, including the Peller Plaintiffs, were valid Independent Claims. Thus, reliance on the Second Circuit Opinion and its limited ruling on Independent Claims could never be a basis to negate the December 2015 Judgment with respect to the final Independent Claims ruling actually made therein. In short, nothing was "reversed or vacated" by the Second Circuit with respect to the December 2015 Judgment within the meaning of Rule 60(b)(5). *See supra* at 15-16 (discussing the "wipe out" rule).

In any event, Rule 60(b)(5) is not an escape hatch for a party that failed to appeal an adverse judgment, as plaintiffs did here. *See Cruickshank & Co., Ltd.*, 805 F.2d at 467. This rule applies with particular force where, as here, Designated Counsel is highly sophisticated and fully aware of the consequences of their decision not to appeal the relevant ruling in the December 2015 Judgment—*i.e.*, that Designated Counsel forever waived the right to challenge that Judgment. Indeed, Rule 60(b)(5) has "very little application" (*Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 386 (5th Cir. 2012)), and "is limited to cases in which the present judgment is based on the prior judgment in the sense of claim or issue preclusion" (11 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2863 (2d ed. 1995)). *See also In re Davis*, 150 B.R. 633, 639–40 (Bankr. W.D. Pa. 1993). These circumstances are not present in this case.

Contrary to plaintiffs' assertion, the December 2015 Judgment was not based on the June 2015 Judgment. The April 2015 Decision expressly deferred issues relating to Non-Ignition Switch Plaintiffs. *See Motors Liquidation Co.*, 529 B.R. at 523 ("New GM brought still another

motion to enforce the Sale Order with respect to them, though this third motion has been deferred pending the determination of the issues here."). The Peller Plaintiffs nevertheless appealed the June 2015 Judgment raising mostly jurisdiction arguments that were rejected by the Second Circuit. *See Motors Liquidation Co.*, 829 F.3d at 152-54. Attorney Peller also raised the Independent Claims issue for his clients, and the Second Circuit noted that the Sale Order did not bar the assertion of valid Independent Claims. *Id.* at 157. The Second Circuit also defined what a valid Independent Claim would be. *Id.* ("By definition, independent claims are claims based on New GM's own post-closing wrongful conduct. . . . These sorts of claims are based on New GM's *post*-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct." (emphasis in original)). Other than to *affirm* the Bankruptcy Court, that is where the Second Circuit ruling on Independent Claims stopped.

The December 2015 Judgment approached the Independent Claims on a more granular level. As noted, its definition of Independent Claims was consistent with the Second Circuit's definition. Unlike the Second Circuit, however, it applied the Independent Claims definition to what actually was asserted by Old GM vehicle owners without the Ignition Switch Defect.[35]

Non-Ignition Switch Plaintiffs also appear to improperly conflate Rule 60(b)(5) and Rule 60(b)(6). The latter, which is a catchall provision, does not apply where a specific circumstance under Rule 60(b) applies. Clause (6) of Rule 60(b) provides that relief may be granted for "any other reason justifying relief from the operation of the judgment." This portion of Rule 60(b) is

---

[35] To the extent the December 2015 Judgment referenced the June 2015 Judgment, it was because both Judgments used the same definition of Independent Claims. *Compare* June 2015 Judgment, ¶ 4 ("Independent Claims" shall mean claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct."), *with* December 2015 Judgment, at 2 n.3 ("Independent Claim" shall mean a claim or cause of action asserted against New GM that is based solely on New GM's own independent post-Closing acts or conduct. Independent Claims do not include (a) Assumed Liabilities, or (b) Retained Liabilities, which are any Liabilities that Old GM had prior to the closing of the 363 Sale that are not Assumed Liabilities.").

19

properly invoked only when "there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and *when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule*." *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) (emphasis added). Because the asserted grounds for relief—essentially, a wipe out of a prior judgment—are covered by Rule 60(b)(5), plaintiffs are barred from seeking extraordinary relief under Rule 60(b)(6).

Finally, "courts should not grant relief under Rule 60(b)(6) when the moving party has failed to take the steps necessary to protect its own interests, such as filing an appeal." *Allstate Ins. Co. v. Mich. Carpenters' Council Health & Welfare Fund*, 760 F.Supp. 665, 669 (W.D. Mich. 1991); *see also Jardine, Gill & Duffus, Inc. v. M/V Cassiopeia,* 523 F.Supp. 1076, 1085 (D. Md. 1981) ("Further, relief is generally unavailable under Rule 60(b)(6) when the moving party has failed to take legal steps to protect his interests, such as the prosecution of an appeal."). Given that Designated Counsel could have appealed the December 2015 Judgment to protect plaintiffs' rights, this case does not present extraordinary circumstances that justify relief under Rule 60(b)(6).

## C.    Designated Counsel's Due Process Argument with Respect to Independent Claims Are Irrelevant

In their Opening Brief, Designated Counsel argue that Non-Ignition Switch Plaintiffs' due process rights would be violated if the Sale Order was enforced to bar Independent Claims.[36] However, this argument is irrelevant in light of the December 2015 Judgment. In the proceedings leading to that Judgment, the Bankruptcy Court undertook the marked pleading process with the assumption that plaintiffs (including the Peller Plaintiffs) could assert Independent Claims against New GM. It then examined the actual claims filed and ruled that

---

[36]    *See* Designated Counsel's Opening Brief, at 23-27.

30254910.v1

they were not valid Independent Claims. This claims-specific review was a separate analysis, and was not based on due process issues.

Moreover, the claims-specific analysis was something that was expressly identified in connection with the "marked pleadings" and "other complaints" review set forth in the September 2015 Scheduling Order, subjects about which Designated Counsel were clearly on notice. In fact, Designated Counsel were involved in the drafting of the procedures set forth in the September 2015 Scheduling Order. Designated Counsel, therefore, cannot contend they were unaware that the Bankruptcy Court was going to determine the Independent Claims issue. Thus, there is no due process issue relating to the outcome-determinative December 2015 Judgment which barred their Independent Claims.

Further, Designated Counsel are wrong in asserting that proof of a due process violation is *sufficient* to state an Independent Claim. Indeed, as the Second Circuit held, irrespective of any due process violation, an Independent Claim can only be asserted if the claim is based solely on New GM conduct. *See In re Matter of Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir 2016). Here, the Bankruptcy Court, after reviewing the claims actually asserted by plaintiffs, found that such claims were not based solely on New GM conduct, and barred plaintiffs from asserting such Claims against New GM. That determination stands and has nothing to do with due process issues.

To the extent that Designated Counsel is attempting to assert that Non-Ignition Switch Plaintiffs may still seek to establish a due process violation in order to assert *successor liability* claims against New GM, it is too late to do so, as found by the Bankruptcy Court in the November 2015 Judgment. *See Motors Liquidation Co.*, 541 B.R. at 130 n.70. This aspect of

the November 2015 Decision was not appealed by any plaintiff, and thus this ruling is now *res judicata* as to such plaintiffs.[37]

To the extent plaintiffs, including Post-Closing Accident Plaintiffs, are asserting a due process violation now with respect to the December 2015 Judgment, it is far too late. Also, seeking such relief is not permitted when plaintiffs had an opportunity to appeal the issue (*i.e.*, the Independent Claims ruling in the December 2015 Judgment), with knowledge of the issue, and chose not to. *See Allstate Ins. Co.*, *supra*; *Jardine, Gill & Duffus, Inc.*, *supra*.

For all of these reasons, plaintiffs' due process arguments are not relevant for this Threshold Issue.

**Second Threshold Issue (Part Two): This Court Should Continue to be the Gatekeeper to Determine if Claims Asserted by Plaintiffs Are Barred by the Bankruptcy Court's Rulings or Can Proceed in Non-Bankruptcy Courts**

The Second Circuit and this Court are now clear that no Old GM vehicle owner may assert Independent Claims "based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct." *See Motors Liquidation Co.*, 829 F.3d at 157. Nonetheless, in seeking to recover punitive damages, plaintiffs have repeatedly sought to dress up successor liability claims as Independent Claims. *See* Section II.A *supra*.[38] For Old GM vehicle owners without the Ignition Switch Defect, this Court should continue its role as the gatekeeper to enforce the Sale Order limitations and bar these disguised successor liability claims, and/or

---

[37] The due process issues relating to Post-Closing Accident Plaintiffs are discussed herein with respect to Threshold Issue 4.

[38] New GM assumed Product Liabilities and agreed to pay compensatory damages, but not punitive damages, for such claims. Post-Closing Accident Plaintiffs have tried to navigate around that punitive damages restriction by asserting what they call an "Independent Claim," even though their allegations do not satisfy the definition of such Claim. In general, plaintiffs do not assert any affirmative conduct by New GM. Rather, they predicate their claim on New GM's failure to act with respect to a duty that Old GM had to the Old GM vehicle owner, that New GM never assumed. Conspicuously absent in such alleged Independent Claims is the specific reference to a new duty that New GM incurred after the 363 Sale to the specific Old GM vehicle owner.

22

garden variety Assumed Product Liability Claims (that may not bear punitive damages pursuant to the December 2015 Judgment).

Any determination of whether plaintiffs' claims are Retained Liabilities (that may only be asserted against Old GM) as opposed to Independent Claims (that may be asserted against New GM) requires judicial interpretation of the Sale Order and Sale Agreement.  Bankruptcy Courts clearly have "arising in" jurisdiction to interpret and enforce their 363 Sale Orders.  *See Motors Liquidation Co.*, 829 F.3d at 154.  Moreover, Bankruptcy Courts are best suited to adjudicate issues that, as here, require interpretation of their own prior orders.  *See, e.g.*, *In re Texaco Inc.*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995) ("A bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction and, therefore, should not abstain from doing so."); *see also In re Old Carco LLC*, 438 F. App'x 30 (2d Cir. 2011) ("The bankruptcy court that entered the Enforcement Order is the same court that entered the Sale and Rejection Orders. That court is best situated to interpret the Orders."); *Deep v. Copyright Creditors*, 122 F. App'x 530, 532 (2d Cir. 2004) ("The language of the order gave the MDL court sufficient discretion to enforce its own injunction, and there is nothing in the record to suggest that the MDL court exceeded the scope of the June 2002 order. The bankruptcy court . . . was in the best position to interpret its own order."); *In re Casse*, 198 F.3d 327, 333 (2d Cir. 1999) ("As [*Colonial Auto Ctr. v. Tomlin (In re Tomlin),*105 F.3d 933 (4th Cir. 1997)] also holds, if a bankruptcy order of dismissal is ambiguous in this regard, the bankruptcy court's interpretation of its own order 'warrants customary appellate deference.  The bankruptcy court was in the best position to interpret its own orders.'").  Here, among the critical Bankruptcy Court orders to be interpreted and enforced is the December 2015 Judgment, in which the Court ruled that Old GM vehicle owners without the Ignition Switch Defect had failed to assert valid Independent Claims.

Since the Sale Order, New GM has sought relief in the Bankruptcy Court with respect to claims that were being improperly asserted against it, and the Bankruptcy Court exercised its exclusive jurisdiction over such matters. *See, e.g.,* New GM's Motion to Enforce the Sale Order, filed on May 17, 2010 [ECF No. 5785] and related June 1, 2010 Hearing Transcript [ECF No. 5961] (seeking to enforce Sale Order with respect to pre-363 Sale accident cases); *In re Motors Liquidation Co.*, 447 B.R. 142 (Bankr. S.D.N.Y. 2011) (finding, in response to a motion to enforce the Sale Order, New GM did not assume liability for death of motorist who passed away after the 363 Sale where the accident occurred prior to the 363 Sale); *Castillo v. Gen. Motors LLC (In re Motors Liquidation Co.),* Adv. Proc. No. 09–00509, 2012 WL 1339496, at *5 (Bankr. S.D.N.Y. Apr. 17, 2012), *aff'd,* 500 B.R. 333 (S.D.N.Y. 2013), *aff'd,* No. 13-4223-BK, 2014 WL 4653066 (2d Cir. Sept. 19, 2014) (finding that New GM did not assume unconsummated class action settlement agreement regarding economic loss claims as part of the 363 Sale); *Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013) (finding, among other things, that New GM did not assume claims based on design defects in Old GM vehicles and that "New GM [was] not liable for Old GM's conduct or alleged breaches of warranty"); *see also* New GM's motions to enforce filed in 2014.

Moreover, the history of proceedings in this Court following the December 2015 Judgment demonstrates why it is essential for the Court to maintain an active gatekeeper role. After the December 2015 Judgment, New GM sent out dozens of demand letters to plaintiffs it believed were continuing to violate the Sale Order and the Bankruptcy Court's other rulings. Most of the plaintiffs that received demand letters voluntarily agreed to amend their complaints to address inappropriate allegations, claims and requests for punitive damages, and those

24

lawsuits thereafter proceeded unencumbered by bankruptcy issues (in certain instances, the lawsuits were settled after receipt of a demand letter).

For those approximately 16 plaintiffs that would not voluntarily agree to amend their complaints to comply with previous Bankruptcy Court rulings, New GM filed motions with this Court to enforce the Sale Order and other rulings, and this Court retained its jurisdiction over them. One of those motions[39]—filed on June 1, 2016—concerned four plaintiffs, each of which were Non-Ignition Switch Post-Closing Accident Plaintiffs. New GM asserted, among other things, that the Independent Claims asserted by them were invalid for the same reasons as determined by the December 2015 Judgment. It also sought to bar their punitive damages request pursuant to the December 2015 Judgment. After the Court held a hearing on the June 1, 2016 Motion to Enforce, one of the plaintiffs (*Fox*) entered into a stipulation with New GM wherein the plaintiff agreed to amend her complaint to comply with the Bankruptcy Court's ruling, specifically agreeing "not to attempt to assert any Independent Claims against New GM . . . and . . . not seek punitive damages against New GM[.]"[40] That hearing repeatedly touched on bankruptcy orders and issues that would have been less familiar to a non-bankruptcy judge.[41]

In addition, this Court entered an Order (the Chapman/Tibbetts Order) with respect to two of the remaining three plaintiffs,[42] directing those plaintiffs to provide New GM with

---

[39] *See Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Courts July 5, 2009 Sale Order And Injunction, and The Rulings in Connection Therewith (Veronica Alaine Fox, Claudia Lemus, Tammie Chapman and Constance Haynes-Tibbetts)*, dated June 1, 2016 [ECF No. 13634] ("**June 1, 2016 Motion to Enforce**").

[40] *Stipulation and Agreed Order Resolving Motion by General Motors LLC Pursuant to 11 U.S.C. Sections 105 and 363 to Enforce the Bankruptcy Court's July 5, 2009 Sale Order and Injunction, and the Rulings in Connection Therewith With Respect to the Fox Plaintiff*, dated July 12, 2016 [ECF No. 13679] ("**Chapman/Tibbetts Order**"), at ¶ 5.

[41] It would not be surprising if Old GM vehicle owners without the Ignition Switch Defect were more brazen in urging a court in their home states to downplay the import of this Court's rulings, especially if the local court does not have the familiarity of what occurred in this Court.

[42] The fourth plaintiff (Lemus) had previously settled her lawsuit with New GM.

"amended complaints that purport to fully comply with the Bankruptcy Court's rulings with respect to allegations in the [] Complaints, (reserving the issues related to Independent Claims and punitive damages, as described below) . . . ."[43]    The Chapman/Tibbetts Order further provided:

> ORDERED that the issues raised by the June 1 Motion to Enforce and the State Court Plaintiffs' Objection concerning whether the Chapman and Tibbetts Plaintiffs can assert Independent Claims against New GM and whether the Chapman and Tibbetts Plaintiffs can seek punitive damages against New GM *shall be reserved and taken under advisement by this Court and will be addressed in a subsequent Order* ("Subsequent Order") of this Court, and, until that Subsequent Order is entered by this Court, *the Chapman and Tibbetts Plaintiffs shall be stayed and restrained from further prosecuting any Independent Claims or punitive damages*, provided however, that the Chapman and Tibbetts Plaintiff and New GM may take such actions as set forth in the prior paragraph of this Order with respect to the proposed Chapman and Tibbetts amended complaint[.]

*Id*. at 3 (emphasis added). This Court also retained "exclusive jurisdiction to hear and determine all matters arising from or related to" the Chapman/Tibbetts Order.[44]    *Id.*

As shown by the proceedings concerning the June 1, 2016 Motion to Enforce,[45] this Court is the most capable of efficiently addressing issues in pending lawsuits, including whether claims are appropriate as Independent Claims under the Sale Order and Second Circuit

---

[43] *Order Granting Partial Relief in Connection with Motion of General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Courts July 5, 2009 Sale Order And Injunction, and The Rulings in Connection Therewith*, dated July 12, 2016 [ECF No. 13680], at 2.

[44] An amended complaint was filed in the Chapman lawsuit on June 23, 2016, and that lawsuit remains pending. The Tibbetts lawsuit is currently in the discovery phase.

[45] New GM filed additional motions to enforce in 2016 with respect to other lawsuits.  Specifically, (i) a motion was filed with respect to the Pilgrim Lawsuit, and that motion has been stayed pending the resolution of New GM's petition for *certiorari* to the United States Supreme Court and the resolution of the 2016 Threshold Issues, (ii) a motion was filed with respect to the *Stevens* Plaintiffs [ECF No. 13664], but the plaintiff agreed to amend her complaint, the case was tried in state court, and the jury returned a verdict in favor of New GM; accordingly, New GM withdrew the motion to enforce; and (iii) a motion was filed with respect to 11 individual lawsuits [ECF No. 13655], three of which have been resolved, and the motion for the rest of the lawsuits remains pending in light of the Second Circuit Opinion, and this Court's December 13, 2016 Order to Show Cause.

precedent.[46]  By retaining jurisdiction over these issues, this Court will ensure compliance with

its prior rulings, and avoid potential inconsistent rulings on bankruptcy-related issues in multiple

courts around the United States.[47]

Plaintiffs cite the December 2015 Judgment for the proposition that this Court should no

longer play a gatekeeping role with respect to Independent Claims.   However, Designated

Counsel overlook the fact that the December 2015 Judgment held that only Ignition Switch

Plaintiffs could proceed with respect to their alleged Independent Claims against New GM

(essentially in MDL 2543), and that all other plaintiffs had not asserted a valid Independent

Claim and were barred from asserting that Claim.  The Bankruptcy Court's decision to limit its

gatekeeping role with respect to Independent Claims was made in that specific context.

In mid to late 2015, Judge Gerber was keenly focused on issuing rulings prior to the first

Ignition Switch Post-Closing Accident bellwether trial scheduled for early 2016.  *See* August 31,

2015 Hr'g Tr. [ECF No. 13438], at 5:19-20.[48]  He viewed his Ignition Switch Defect-related

---

[46]  There are dozens of lawsuits pending in myriad courts throughout the Country against New GM involving Old GM vehicles without the Ignition Switch Defect that contain inappropriate allegations, claims and/or requests for damages.

[47]  Designated Counsel take the Court's *Trusky v. Gen Motors Co. (In re Motors Liquidation Co.)*, Adv. No. 12-09803 (REG), 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013), decision out of context.  There, it was only after the Bankruptcy Court had ruled on which claims were assumed by New GM, and which were not, that New GM requested transfer back to the original court.  The remaining claim that New GM requested be transferred back to the original court was simply a "garden-variety breach of warranty action" based on the glove box warranties that it had assumed and which had not yet expired.  *Id.* at *2, *9.  The Bankruptcy Court made clear that "New GM was entitled, at the least, to a determination from me as to what my order covered and didn't cover, which was the essence of its effort to transfer."  *Id.* at *9 n.6.  This is precisely what New GM requests herein.

Designated Counsel's reliance on *Park Ave. Radiologists, P.C. v. Melnick (In re Park Ave. Radiologists, P.C.)*, 450 B.R. 461, 469 (Bankr. S.D.N.Y. 2011) is also misplaced as that case concerned a dispute between a reorganized debtor and an employee, and the plan did not provide for the retention of jurisdiction over the dispute.  In contrast, here, the claims at issue require the Court to interpret and enforce the Sale Order and the Court's previous rulings.  As the Second Circuit held, "the bankruptcy court ha[s] jurisdiction to interpret and enforce the Sale Order."  *Motors Liquidation Co.*, 829 B.R. at 154.

[48]  *See also* August 31, 2015 Hr'g Tr., at 7:13-8:5 ("Now, it seems to me that we have three things that Jesse Furman identified as important to him, and then we have one or two more that I have to worry about as well. Seems to me that highest on the list is determining the issues, vis-a-vis punitive damages. . . .  And third is getting the bankruptcy work done that is necessary for the bellwether trial or trials beyond those two issues.").

27

gatekeeper role primarily in the context of MDL 2543, and focused on supplying Judge Furman

with rulings necessary for the bellwether trials.  He noted:

> it seems to me that my role in life is as kind of a gatekeeper on pleadings, to
> ascertain the extent to which certain kinds of claims are or are not permissible
> under the judgment and under bankruptcy law, after which Jesse Furman would
> decide whether whatever passes the gatekeeper is or is not actionable as a matter
> of non-bankruptcy law.

*Id.* at 14:3-9.

The Ignition Switch Defect cases were then (and remain) generally concentrated in one

forum, MDL 2543, before Judge Furman.  One of the purposes of MDL 2543 is to make rulings

that will help guide judges if and when those cases are sent back to the transferor courts.  Judge

Gerber and Judge Furman coordinated with respect to the determination of bankruptcy issues so

that the MDL could be effectively administered.  Thus, in deciding the limits of his gatekeeper

function, Judge Gerber deferred to Judge Furman to make Independent Claims rulings in the

Ignition Switch MDL consistent with the bankruptcy guideposts set by him.

At the same time he deferred to Judge Furman on Ignition Switch Defect-related issues,

Judge Gerber also held that Old GM vehicle owners without the Ignition Switch Defect had

failed to state valid Independent Claims based on his review of their pleadings.  Judge Gerber

never ruled that Old GM vehicle owners without the Ignition Switch Defect could violate the

Sale Order or the December 2015 Judgment without answering to the Bankruptcy Court. In fact,

paragraph 37 of the December 2015 Judgment provided that the Bankruptcy Court would retain

jurisdiction "to the fullest extent permitted under law, to construe or enforce the Sale Order, this

Judgment and the Decision on which it was based . . . ."  He also held that the December 2015

Judgment could "not be collaterally attacked, or otherwise subjected to review or modification,

in any Court other than this Court or any court exercising appellate authority over this Court. "

*Id*.[49]

Finally, the seven and one half year history of the *Old GM* bankruptcy case demonstrates the types of issues New GM would bring to the Bankruptcy Court for interpretation/enforcement of the Sale Order. New GM has not asked the Bankruptcy Court to resolve cases involving Assumed Liabilities (*e.g.*, post-363 Sale accident cases involving assumed Product Liabilities) or based on a new obligation New GM incurred to an Old GM vehicle owner after the 363 Sale (*e.g.*, certified pre-owned-vehicles with a New GM warranty). New GM has consistently sought this Court's review for only those types of claims New GM believes violate the Sale Order.

The Court's retention of jurisdiction to interpret and enforce the Sale Order was an important bargained-for provision. Based on its actual experience with plaintiffs' pleadings, New GM remains justly concerned that plaintiffs will seek to circumvent the Sale Order before local courts less familiar with bankruptcy issues and these bankruptcy proceedings. Moreover, permitting multiple courts to determine the same issue could lead to inconsistent judgments and inequitable results. In sum, this Court, and not a non-bankruptcy court, is in the best position to efficiently and consistently interpret and enforce its prior orders, decisions and judgments.

***Second Threshold Issue (Part Three)*: Designated Counsel's Additional Arguments with Respect to Why Certain Plaintiffs Should Not Be Bound By the December 2015 Judgment Are Without Merit**

Designated Counsel proffers other reasons why Post-Closing Accident Plaintiffs should not be bound by the December 2015 Judgment. None of these arguments have merit.

*First*, Designated Counsel asserts that the proceedings leading to the December 2015 Judgment only concerned Ignition Switch Post-Closing Accident Plaintiffs. *See* Designated

---

[49]    As noted, the Independent Claims ruling in the December 2015 Judgment was never appealed so it is final and enforceable as against all Old GM vehicle owners without the Ignition Switch Defect.

Counsel's Opening Brief, at 42.  Not true.  New GM served the September 2015 Scheduling Order on many Non-Ignition Switch Post-Closing Accident Plaintiffs so they would be bound by the Court's ultimate ruling.[50]  In addition, the September 2015 Scheduling Order provided that New GM could mark-up representative samples of complaints to demonstrate how certain causes of action violated the Sale Order.[51]  Among others, Post-Closing Accident Plaintiffs' complaints filed by *Moore* (1996 GMC Pickup Truck), *Benbow* (2005 Chevrolet Malibu), and *Rickard* (2002 Chevrolet S-10 Pickup Truck) were each marked-up.  *Id.*  Likewise, the complaints filed by Attorney Peller, who represents certain Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Sale Accident Plaintiffs, were also marked up and submitted to Judge Gerber.  *See* ECF No. 13523.  The Bankruptcy Court issued rulings in connection with Non-Ignition Switch Post-Closing Accident Plaintiffs.  *See* December 2015 Judgment, at ¶¶ 14-18, 28.  Accordingly, the proceedings leading to the December 2015 Judgment concerned *all* Post-Closing Accident Plaintiffs, not just Ignition Switch Post-Closing Accident Plaintiffs.

*Second*, Designated Counsel argue that if plaintiffs (they do not mention which ones) did not participate in the briefing leading up to the December 2015 Judgment, they should not be bound to the Judgment.[52]  But the September 2015 Scheduling Order expressly provided that, regardless of whether plaintiffs participated in the briefing, they would be bound by the Bankruptcy Court's rulings.  The Bankruptcy Court authorized New GM to serve the September 2015 Scheduling Order on plaintiffs with the following Court-approved cover note:

> If you have any objection to the procedures set forth in the Scheduling Order, you must file such objection in writing with the Bankruptcy Court within three (3) business days of receipt of this notice ("Objection").  *Otherwise, you will be*

---

[50]   *See Certificate of Service*, dated September 10, 2015 [ECF No. 13428].

[51]   New GM was not required to mark-up all offending complaints, but could choose representative samples covering all lawsuits.  *See* September 2015 Scheduling Order, at 5.  New GM did just that.

[52]   *See* Designated Counsel's Opening Brief, at 43.

*bound by the terms of the Scheduling Order and the determinations made pursuant thereto.* If you believe there are issues that should be presented to the Court relating to your lawsuit that will not otherwise be briefed and argued in accordance with the Scheduling Order, you must set forth that position, with specificity in your Objection.

September 2015 Scheduling Order, at 4 (emphasis added). Designated Counsel were involved in the drafting of the consensual form of the September 2015 Scheduling Order. Designated Counsel cannot be heard to complain now about procedures they approved on behalf of plaintiffs they represent in these bankruptcy proceedings.[53]

*Third*, Designated Counsel argue that the December 2015 Judgment could not bind them with respect to Independent Claims because the September 2015 Scheduling Order did not use that specific phrase.[54] However, the September 2015 Scheduling Order did set forth procedures for New GM to mark up complaints and for plaintiffs to respond to those marked-up complaints. Moreover, in New GM's letter regarding the marked-up Second Amended Consolidated Complaint, it identified the Non-Ignition Switch Plaintiff/Independent Claim issue. New GM also specifically stated that "[t]he issues raised by the Marked MDL Complaint are also found in other complaints filed in lawsuits, some in MDL 2543 and some not. New GM's arguments are equally applicable to such other lawsuits and any rulings by the Court should be binding on all plaintiffs with complaints raising similar issues." *Id.* at 1 n.1. All plaintiffs served with the September 2015 Scheduling Order were also served with the Marked MDL Complaint letter (as

---

[53] This Court dealt with this very issue in connection with the December 13, 2016 Order to Show Cause, when Peller made the same argument as that now being advanced by Designated Counsel. The Court overruled Peller's objection to proceeding with the resolution of the 2016 Threshold Issues in the same way as was done with respect to the issues set forth in the September 2015 Scheduling Order. *See* November 16, 2016 Hr'g Tr., at 38:22-42:18. Importantly, Designated Counsel agreed that the 2016 Threshold Issues could be addressed through service of an order, and that the commencement of an adversary proceeding was not required. *See id.*, at 32:1-5 ("THE COURT: I mean, it does seem, to me, to work. When I read the objections that said adversary proceeding, that just is not right. MR. WEINTRAUB: Right. We always thought that it works so long as people actually receive it.").

[54] *See* Designated Counsel's Opening Brief, at 43.

well as all other pleadings filed by New GM).[55]  Lead Counsel in MDL 2543 filed a letter with the Bankruptcy Court [ECF No. 13495] in response to New GM's Marked MDL Complaint letter, asserting that New GM's "arguments fail because all of the claims in the SACC arise solely from New GM's independent actionable conduct."  In addition, Goodwin Procter (which is counsel for Pre-Closing and Post-Closing Accident Plaintiffs herein) filed a letter with the Bankruptcy Court [ECF No. 13475] in response to New GM's Marked Bellwether Complaints letter, addressing Independent Claims issues.  Thus, contrary to Designated Counsel's argument, the Independent Claims issue was raised during the proceedings leading to the December 2015 Judgment, all plaintiffs were on notice of New GM's arguments, and Designated Counsel actively litigated the issue.

In any event, if Designated Counsel or other plaintiffs believed that the Bankruptcy Court's Independent Claims ruling in the December 2015 Judgment was wrong for this or any reason, they should have appealed that Judgment.  Having made the decision not to appeal this ruling, they are bound by the ruling.

*Fourth*, as further demonstrated in the section of this brief responding to the Supplemental Opening Brief filed by Christopher and Gwendolyn Pope ("Pope Supplemental Brief"), *infra*, the letters sent to plaintiffs by New GM were accurate.  The reference to Independent Claims in such letters referred to the Independent Claims ruling made in the June 2015 Judgment for Ignition Switch Plaintiffs only.  If there was any confusion with respect to the September 2015 Scheduling Order or the cover note served by New GM (which was approved by the Bankruptcy Court in the September 2015 Scheduling Order), other plaintiffs certainly

---

[55]  *See Certificate of Service*, dated September 28, 2015 [ECF 13474]; *see also Certificates of Service* found at ECF Nos. 13440, 13457, 13464, 13467, 13468, 13485.

could have raised those issues with the Bankruptcy Court; they did not.[56]  They also could have

appealed the Court's Independent Claims ruling.  They did not.  Certainly Designated Counsel

could not have any confusion regarding the cover note or the September 2015 Scheduling Order

since they participated in the process which led to their approval by the Bankruptcy Court.

*Fifth*, Designated Counsel argue that the November 2015 Decision was only an

interlocutory order based on a reference in footnote 70 to the May 2015 Form of Judgment

Decision.  The segment quoted  provided  background that, as of such date, Non-Ignition Switch

Plaintiffs had not yet shown a due process violation relating to the Sale Order, and unless and

until they did, the Sale Order would remain in effect.  Plaintiffs, however, fail to mention the

actual ruling set forth in footnote 70 which held that Non-Ignition Switch Plaintiffs, after having

been given a full opportunity, failed  to show they incurred a due process violation relating to the

Sale Order, and it was now too late for them to do so.[57]  That ruling was certainly not

interlocutory, and the failure to appeal that final ruling has preclusive consequences to plaintiffs.

*Sixth*, as explained in New GM's Opening Brief, plaintiffs that commenced their cases

after the December 2015 Judgment should still be bound by the "law of the case" doctrine unless

they raise new arguments that the Court has not previously considered.  *See* New GM's Opening

Brief, at 35-37.  None have done so.

*Finally*, any remaining issues with respect to the applicability of the December 2015

Judgment should proceed before this Court on a plaintiff-by-plaintiff basis.  The June 2015

---

[56]  As demonstrated by the Pope Supplemental Opening Brief, these are fact-specific issues and if a plaintiff seeks
to raise them, like Pope, they should do so on an individual basis.

[57]  The relevant language is as follows: "[Non–Ignition Switch Plaintiffs] could have tried to show the Court that
they had "known claims" and were denied due process back in 2009, but they have not done so.  The Court
ruled on this expressly in the Form of Judgment Decision. . . . That ruling stands. . . . [W]ithout a showing of
a denial of due process—and the Non–Ignition Switch Plaintiffs have not shown that they were victims of a
denial of due process—the critically important interests of finality (in each of the 2009 Sale Order and the 2015
Form of Judgment Decision and Judgment) and predictability must be respected, especially now, more than 6
years after entry of the Sale Order."  *Motors Liquidation Co.*, 541 B.R. at 130 n.70 (citation omitted).

33

Judgment contained procedures for plaintiffs to file pleadings with the Bankruptcy Court, if they asserted unique issues that would make previous rulings inapplicable to their cases.[58]  The Court should fashion similar procedures here, as plaintiffs continue to commence lawsuits against New GM that contain claims and inappropriate requests for punitive damages that violate the Sale Order.[59]

### III.

### *Third Threshold Issue*:

**A.      Designated Counsel Misstates the Definition of Used Car Purchasers, Which is Limited to Ignition Switch Plaintiffs Only**

Designated Counsel correctly cites to the Second Circuit's definition of Used Car Purchasers:  "The Second Circuit defined Used Car Purchasers as a *subset of Ignition Switch Plaintiffs* 'who had purchased Old GM cars second hand after the §363 sale closed.'"  Designated Counsel's Opening Brief, at 47 (emphasis added).   In the very next sentence, however, plaintiffs seek to reject the Second Circuit's limited definition of Used Car Purchasers and contend that the term *should* mean all Old GM owners who purchased their vehicles after the 363 Sale, regardless of whether they were Ignition Switch Plaintiffs.  *Id.*  Designated Counsel are wrong:  they cannot expand the Second Circuit's definition of Used Car Purchasers.  The Second Circuit dealt with three appellant groups:  Ignitions Switch Plaintiffs, Ignition Pre-Closing

---

[58]    *See, e.g.*, June 2015 Judgment, ¶ 8(c) ("If counsel for an Ignition Switch Pre-Closing Accident Plaintiff (including, but not limited to, one identified on Exhibit "A") believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be stayed, it shall file a pleading with this Court within 17 business days of this Judgment ("**No Stay Pleading**"). The No Stay Pleading shall not reargue issues that were already decided by the Decision, this Judgment, or any other decision, order, or judgment of this Court.  If a No Stay Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.").

[59]    Designated Counsel's belated argument that New GM should have filed a motion to enforce relating to the December 2015 Judgment is wrong.  *See* Designated Counsel's Opening Brief, at 43.  As with the 2016 Threshold Issues, the Bankruptcy Court, with the consent of Designated Counsel, approved the procedures pursuant to which certain issues would be decided by the Bankruptcy Court without the necessity of further motions to enforce being filed by New GM.  *See* September 2015 Scheduling Order.  Designated Counsel and all other plaintiffs have waived this argument.

34

Accident Plaintiffs, and Non-Ignition Switch Plaintiffs (the Peller Plaintiffs). The Second

Circuit's description of Used Car Purchasers as a subset of only one of the appellate groups (*i.e.*,

Ignition Switch Plaintiffs) cannot be disregarded. *See e.g., Piambino v. Bailey*, 757 F.2d 1112,

1119 (11th Cir. 1985) (lower court is bound to follow the appellate court's holdings). In short,

the Second Circuit's limited definition of Used Car Purchasers is controlling.

## B.    Designated Counsel Failed to Address Well Established Law that Used Car Owners Do Not Acquire Derivative Claims Against New GM that are Greater than that Held by their Sellers

Plaintiffs are seeking to expand the effect of the Second Circuit Used Car Purchasers

ruling because they want to avoid the well-established rule that a used car owner acquires no

rights greater than what its seller had. The Bankruptcy Court ruled:

> [t]he successor in interest to a person or entity cannot acquire greater rights than
> his, her, or its transferor. That is the principle underlying the *Wagoner* Rule,
> which, while an amalgam of state and federal law, is firmly embedded in the law
> in the Second Circuit. And that principle has likewise been applied to creditors
> seeking better treatment than the assignors of their claims.

*Motors Liquidation Co.*, 529 B.R. at 571-72.

The Bankruptcy Court concluded that if the original seller was barred by the Sale Order

from asserting successor liability claims, then the used car owner would also be barred for such

acquired claims:

> An owner of an Old GM vehicle should not be able to end-run the applicability of the
> Sale Order and Injunction by merely selling that vehicle after the closing of the 363
> Sale…if the Sale Order and Injunction would have applied to the original owners who
> purchased the vehicle prior to the 363 Sale, it equally applies to the current owner who
> purchased the vehicle after the 363 Sale. There is no basis in logic or fairness for a
> different result.

*Id*. at 572.

Because this aspect of the April 2015 Decision was not overturned by the Second Circuit

Opinion, it remains the law of the case with respect to used car owners' claims against New

GM.[60]  *See Cty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) ("[A] decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision . . . .").[61]

Judge Gerber distinguished the *Grumman Olson* "future creditor" precedent because the previous owner of the vehicle had a pre-petition relationship with Old GM, and the economic loss claim being asserted was based on conditions in the Old GM vehicle that existed as of the 363 Sale.  *Id.*  That rationale is entirely consistent with the Second Circuit Opinion as to which creditors of Old GM could be bound by the Sale Order.  *See Motors Liquidation Co.*, 829 F.3d at 156 ("[A] [successor liability] claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim. Further, there must be some contact or relationship between the debtor and the claimant such that the claimant is identifiable.").  Because the original seller would be subject to the Sale Order, the derivative rights of its' assignee (*i.e.*, the used car owner) are limited by what could be transferred to it.  For that reason, the Bankruptcy Court properly held Judge Bernstein's *Old Carco*[62] decision to be the controlling precedent for all used car owners.

In its Opening Brief, New GM referred to *Karu* as a representative case where used car owners in vehicles without the Ignition Switch Defect were asserting dressed up successor

---

[60]  To the extent the seller (*i.e.*, Ignition Switch Plaintiff) is not bound by Sale Order, neither would its assignee.

[61]  The "law of the case" doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *see also In re Enron Corp.*, Adv. Proc. No. 04–04303 (AJG), 2006 WL 1030413, at *6 (Bankr. S.D.N.Y. Apr. 10, 2006) ("The Examiner chose not to appeal the denial, and the ruling is the law of the case.").

[62]  *Burton v. Chrysler Grp., LLC (In re Carco)*, 492 B.R. 392 (Bankr. S.D.N.Y. 2013) (used car owners could not assert claim against the purchaser for a latent defect in vehicles manufactured by the debtor).

36

liability claims against New GM, disguised as Independent Claims.[63]  Another good example is the *Sesay* case filed by Peller.[64]  In *Sesay*, the owner of an Old GM vehicle without the Ignition Switch Defect bought his vehicle after the 363 Sale *from a friend,* who was unaffiliated with New GM.  *See* Sesay Compl., ¶ 1.  Mr. Sesay, as a used car owner, asserted the following economic loss claims against New GM: (a) breach of an implied warranty of merchantability; (b) fraudulent concealment of defects in the Old GM vehicle; (c) breach of state consumer protection statute; and (d) negligence in the design of the Old GM vehicle.[65]  All of these claims are based, at least in part, on Old GM conduct, and thus are successor liability claims.[66]  Since the original owner of the Old GM vehicle could not assert these claims against New GM because of the Sale Order, neither can Mr. Sesay, the assignee of the seller's rights in the vehicle.

In sum, when the Second Circuit ruled that the limited group of Ignition Switch Used Car Purchasers would not be bound by the "no successor liability" ruling in the Sale Order, that did not change black letter law relied upon by the Bankruptcy Court.  The real issue is whether other used car owners can assert a claim against New GM for a Retained Liability that New GM never assumed.  Applying well-established laws, such used car owners cannot do so because their original seller could not assert a Retained Liability against New GM.  That ruling remains sound even after the Second Circuit's limited ruling applicable to Ignition Switch Used Car Purchasers.

---

[63]  *See* New GM's Opening Brief, at 51.

[64]  *Sesay et al. v. General Motors LLC*, 1:14-cv-0618 (JMF) (S.D.N.Y.); 1:14-md-02543 (JMF) (S.D.N.Y.).  A copy of the complaint ("**Sesay Complaint**") filed in the Sesay Lawsuit is attached hereto as **Exhibit "C."**

[65]  There was also a punitive damage request which violated the December 2015 Judgment.

[66]  Section 2.3(b) of the Sale Agreement provides that Retained Liabilities include: (xi) "all Liabilities to third parties for Claims based upon Contract, tort or any other basis"; (xvi) "all Liabilities arising out of, related to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing attributable to Sellers [Old GM]."  *See also* Sale Order, ¶ 56 ("The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials.").

## IV.

***Fourth Threshold Issue***: **Post-Closing Accident Plaintiffs Cannot Recover Punitive Damages Predicated on Successor Liability**

New GM agreed to pay compensatory damages for Product Liabilities (as defined in the Sale Agreement) arising from post-363 Sale accidents involving Old GM vehicles. Accordingly, the only question under Threshold Issue 4 is whether, as part of a successor liability claim relating to a post-363 Sale Accident, plaintiffs may also seek punitive damages. As explained in New GM's Opening Brief, the answer is no. Plaintiffs cannot dispute that the December 2015 Judgment decided the punitive damages issue against them. Paragraph 6 of the December 2015 Judgment states that New GM is not "liable for punitive damages based on Old GM conduct under any other theories, such as by operation of law. Therefore, punitive damages may not be premised on Old GM knowledge or conduct, or anything else that took place at Old GM." That ruling is dispositive; it was not appealed and *res judicata* bars plaintiffs' attempt to re-litigate the issue now. *See, e.g., Travelers' Indem. Co.*, 557 U.S. at 151; *Duane Reade, Inc.*, 600 F.3d at 195 (*res judicata* precludes parties from re-litigating issues that were or could have been raised in that action); *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008).

Plaintiffs had the opportunity to establish their rights to punitive damages before the December 2015 Judgment. Paragraph 1 of the September 2015 Scheduling Order expressly identified the punitive damages issue as follows:

> The briefing schedule with respect to the issue ("Punitive Damage Issue") in complaints filed against General Motors LLC ("New GM") that request punitive/special/exemplary damages against New GM based in any way on the conduct of Motors Liquidation Co. (f/k/a General Motors Corporation) ("Old GM") shall be as follows;

September 2015 Scheduling Order, at 1, ¶ 1. The September 2015 Scheduling Order was served on Post-Closing Accident Plaintiffs that had sued New GM. They were a known group in 2015 and were given the right to be heard on this issue before it was decided by the Bankruptcy Court.

38

Moreover, Designated Counsel actively participated in the process. They submitted substantive briefs on the punitive damage issue [*see* ECF Nos. 13434, 13436][67] for, among others, Post-Closing Accident Plaintiffs. Judge Gerber flatly rejected their arguments, holding that:

> New GM did not contractually assume liability for punitive damages from Old GM. Nor is New GM liable for punitive damages based on Old GM conduct under any other theories, such as by operation of law. Therefore, punitive damages may not be premised on Old GM knowledge or conduct, or anything else that took place at Old GM.

December 2015 Judgment, ¶ 6. This ruling conclusively rejected any Post-Closing Accident Plaintiffs' entitlement to punitive damages under a successor liability theory, given that successor liability claims are necessarily dependent upon Old GM conduct. *Id*.

Designated Counsel relies on *Grumman Olson*, but that case supports New GM's position. There, Judge Bernstein acknowledged that the "future claims" issue he was dealing with would *not* occur in the *Old GM* case since New GM assumed Product Liability claims arising from post-363 Sale accidents of Old GM vehicles:

> The rule does not extend to potential future tort claims of the type now asserted by the Fredericos, and the GM sale order did not grant this relief. To the contrary, the buyer in GM assumed "all product liability claims arising from accidents or other discrete incidents arising from operation of GM vehicles occurring subsequent to the closing of the 363 transaction, *regardless of when the product was purchased*."

*In re Grumman Olson Indus., Inc.*, 445 B.R. 243, 255 (Bankr. S.D.N.Y. 2011) (citations omitted, emphasis in original), *aff'd*, 467 B.R. 694 (S.D.N.Y. 2012).

Even if *Grumman Olson* was applicable (it is not), the case is *sui generis* because the injured party had no dealings with the debtor. Instead, the Grumman Olson plaintiff was not the owner of the debtor's vehicle and had no relationship with the debtor as of the 363 Sale. The plaintiff's only connection was that he was driving the vehicle after the 363 Sale when the

---

[67] In addition, the *Moore* Plaintiffs, who are Non-Ignition Switch Post-Closing Accident Plaintiffs, also submitted a substantive brief on the punitive damages issue. *See Brief of Plaintiffs Regarding Punitive Damages Issue*, dated September 13, 2015, a copy of which is attached hereto as **Exhibit "D."**

39

accident occurred.  In contrast, the vast majority of Post-Closing Accident Plaintiffs had a direct relationship with Old GM as the purchaser/lessee of an Old GM vehicle or the assignee of such purchaser/lessee (who stands in the shoes of the original purchaser).  Their contingent claim arising from an alleged latent defect existed as of the 363 Sale and, therefore, they are not future creditors of Old GM. They were unknown creditors who were bound by the no successor liability ruling in the Sale Order.  *See Motors Liquidation Co.*, 829 F.3d at 157.

Judge Gerber's November 2015 Judgment noted with approval New GM's argument that punitive damages are different from compensatory damages because plaintiffs have no property rights to punitive damages.  *See, e.g.*, *Motors Liquidation Co.*, 541 B.R. at 121; *Engquist v. Or. Dep't. of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007).  As the Ninth Circuit stated: "punitive damages do not follow compensatory damages, as interest follows principal."  *Id.* at 1003. Punitive damages are "never awarded as of right, no matter how egregious the defendant's conduct," in contrast to compensatory damages, which "are mandatory, once liability is found . . . ." *Id.* (citing *Smith v. Wade*, 461 U.S. 30, 52 (1983)).

Indeed, punitive damages and compensatory damages serve different goals. Compensatory damages are "intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citing Restatement (Second) of Torts § 903 (1979)).  By contrast, punitive damages are imposed to serve two policy objectives: punishing unlawful conduct and deterring its repetition. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996).  A punitive damage award does not serve any compensatory goals.  *See Engquist*, 478 F.3d at 1002, 1004; *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 200 (1990) (punitive damages are a windfall for the plaintiff who has been made whole by compensatory damages). As the Supreme Court has repeatedly cautioned:

40

It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*State Farm,* 538 U.S. at 418; *see also City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor . . . and to deter him and others from similar extreme conduct.").

Here, the overriding policy objectives for punitive damages are not served by allowing such damages for successor liability claims. As the Bankruptcy Court held in the November 2015 Decision, "[s]ince punitive damages punish past conduct (which, for Liabilities to be assumed, would by definition have been Old GM's, not New GM's), and deter future wrongdoing (which could not occur in the case of a liquidating Old GM), imposing punitives for Old GM conduct would not be consistent with punitive damages' purposes . . . ." *Motors Liquidation Co.*, 541 B.R. at 120.

This Court should therefore affirm Judge Gerber's ruling, especially where (i) the purchaser was found to be a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code, (ii) the purchaser never assumed punitive damages under the Sale Agreement, (iii) the plaintiffs are selectively seeking to enforce the provisions of the Sale Agreement that are favorable to them, but trying to ignore the "no successor liability" provision that restricts them, and (iv) the insolvent debtor, Old GM, would not be liable for punitive damages based on the priority scheme of the Bankruptcy Code because it would punish the innocent creditors of the debtor/seller.

In sum, Designated Counsel's Opening Brief misses the mark on Threshold Issue 4, ignoring that (i) the punitive damage issue was fully litigated and decided in the November 2015 Decision/December 2015 Judgment; and (ii) plaintiffs chose not to appeal that ruling.

41

Accordingly, all Post-Closing Accident Plaintiffs are barred from seeking punitive damages against New GM in connection with successor liability claims.

## V.

## REPLIES TO SUPPLEMENTAL OPENING BRIEFS

### A.    Pillars Supplemental Opening Brief

Whether Pillars is a Non-Ignition Switch Pre-Closing Accident Plaintiff or a Non-Ignition Switch Post-Closing Accident Plaintiff is no longer before this Court. It will be decided by Judge Furman in the appeal of the Pillars orders.[68]

Pillars is not an Ignition Switch Plaintiff. His vehicle was a 2004 Pontiac Grand Am, which was not included in the list of vehicles subject to Recall No. 14V-047. While Pillars contests whether he is a Pre-Closing or a Post-Closing Accident Plaintiff, that question is not relevant for this Threshold Issue. He clearly is *not* an Ignition Switch Plaintiff, an Ignition Switch Pre-Closing Accident Plaintiff or an Ignition Switch Post-Closing Accident Plaintiff.

In his Supplemental Brief, Pillars asserts that New GM admitted that he is an Ignition Switch Plaintiff. *See* Pillars Supplemental Brief, at 5-6. This statement is wrong. In fact, in connection with the appeal before Judge Furman, New GM expressly stated that "Pillars is *not* a Pre-Closing Accident Plaintiff with the Ignition Switch Defect; he is a Pre-Closing Accident Plaintiff *without* the Ignition Switch Defect."[69]

Indeed, the June 2015 Judgment provided that the rulings applied to Non-Ignition Switch Pre-Closing Accident Plaintiffs (subject to them filing an Objection Pleading). Pillars was listed on Exhibit "D," the list of "Non-Ignition Switch Complaints Subject to the Judgment." Clearly,

---

[68]    While Pillars seeks to rehash previous arguments made in connection with the underlying dispute between New GM and Pillars (*see* Pillars Supplemental Opening Brief, at 6-7), such arguments are not germane to the issues before this Court and will be addressed in the appeal before Judge Furman.

[69]    MDL 2543 ECF No. 3331 (emphasis in original).

42

New GM *and* the Bankruptcy Court considered Pillars a Non-Ignition Switch Pre-Closing Accident Plaintiff subject to the June 2015 Judgment.  Indeed, after the June 2015 Judgment, New GM informed all Non-Ignition Switch Pre-Closing Accident Plaintiffs, including Pillars, that the June 2015 Judgment applied to them for the same reasons it applied to Ignition Switch Pre-Closing Accident Plaintiffs.  This is precisely why Pillars filed his no-stay pleading with the Bankruptcy Court.

Contrary to Pillars argument, New GM never said that Non-Ignition Switch Pre-Closing Accident Plaintiffs (including Pillars) were Ignition Switch Plaintiffs.  This fact is borne out by the New GM briefs cited by Pillars in his Supplemental Opening Brief.  New GM's statement in its response to Pillars' no stay pleading, that Pillars' claim was "identical" to claims of Ignition Switch Pre-Closing Accident Plaintiffs, is clearly not the same as saying Pillars actually *was* an Ignition Switch Pre-Closing Accident Plaintiff.  In addition, at that time, *all* Pre-Closing Accident Plaintiffs, whether Ignition Switch (on collateral estoppel grounds) or Non-Ignition Switch (on *stare decisis* grounds), were not permitted to assert claims against New GM.  New GM's obvious point was that Non-Ignition Switch Pre-Closing Accident Plaintiffs were similarly situated and their claims should be barred by the Sale Order, as a matter of collateral estoppel, for the same reason as Ignition Switch Pre-Closing Accident Plaintiffs.[70]

---

[70] New GM quoted from the June 2015 Judgment in its' *Pillars* appellate brief to explain the context for the Bankruptcy Court's December 2015 Judgment where it found that "on two separate occasions that any claim based on a pre-363 Sale accident—like the claims asserted by Appellee [Pillars]—cannot be asserted against New GM, and is proscribed by the Sale Order and Injunction[.]"  Pillars DC Appeal, ECF No. 10.  The December 2015 Judgment provides that "*all* Pre-Closing Accident Plaintiffs" are barred from asserting claims against New GM.  *See* December 2015 Judgment, at ¶ 36 (emphasis added).  It does not differentiate between Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Pre-Closing Accident Plaintiffs.  New GM's citations to the foregoing documents were meant to illustrate that Pillars, as a plaintiff asserting claims based on an accident that occurred prior to the 363 Sale, was a Pre-Closing Accident Plaintiff and all of his claims were barred by the Sale Order.  New GM has never contended that Pillars was an Ignition Switch Plaintiff.

Pillars' reference to the Second Circuit Opinion[71] also supports New GM, not Pillars. In his Supplemental Opening Brief, Pillars quotes the Second Circuit's statement that New GM issued over 60 recalls from February to October 2014 as support for his assertion that all 60 recalls concerned a defective ignition switch. *See* Pillars Supplemental Brief, at 8. However, the Second Circuit's statement does not expand the definition of "Ignition Switch Plaintiffs," as most of the 60-plus recalls issued by New GM in 2014 did *not* concern an ignition switch issue, but different issues such as safety restraint systems, airbags, seats, brakes, steering, powertrain, transmission shift cables and other matters.[72]

In sum, Pillars is *not* an Ignition Switch Plaintiff, an Ignition Switch Pre-Closing Accident Plaintiff or an Ignition Switch Post-Closing Accident Plaintiff. To comply with Judge Furman's request for clarification, this Court should so affirm this legal conclusion.

## B.     Pilgrim Supplemental Opening Brief

The Pilgrim Plaintiffs[73] assert in their supplemental opening brief ("Pilgrim Supplemental Brief") that they were not a party to the Bankruptcy Court's proceedings and could not have appealed those rulings. The Pilgrim Plaintiffs are wrong. Their claims are barred by the Sale Order and the Bankruptcy Court's rulings.

While the Pilgrim Plaintiffs filed their complaint on the day of oral argument (*i.e.*, October 14, 2015) regarding the November 2015 Decision/December 2015 Judgment, the alleged defect in the Corvettes at issue in the Pilgrim Lawsuit (which are not Old GM vehicles with the Ignition Switch Defect) was known by the plaintiffs long before that date. For example,

---

[71]    *See* Pillars Supplemental Brief, at 8.

[72]    *See* Second Amended Consolidated Complaint [MDL ECF 1038], at 228-292 (describing various recalls).

[73]    For purposes of this brief, the Pilgrim Plaintiffs are those plaintiffs in the Pilgrim Lawsuit that are owners/lessees of Old GM vehicles. Those plaintiffs that are owners/lessees of vehicles manufactured by New GM are not the subject of this brief.

in the Pilgrim Plaintiffs' response to New GM's motion to enforce ("Pilgrim Motion to Enforce"), they included declarations by certain of the named plaintiffs demonstrating that they knew about the alleged defect in the Corvettes as early as 2007.[74]  In addition, the original complaint filed by the Pilgrim Plaintiffs on October 14, 2015 (which was almost 200 pages long) was strikingly similar to the complaint filed by Lead Counsel in MDL 2543, demonstrating that the Pilgrim Plaintiffs were well aware of MDL 2543 and what was transpiring in that case (including, presumably, the bankruptcy issues).  The Pilgrim Plaintiffs should not be permitted to benefit from their "sit back and wait" approach simply because they delayed in filing their lawsuit.

Likewise, with respect to the December 2015 Judgment, the Pilgrim Plaintiffs were aware of the issues being litigated in the Bankruptcy Court before that Judgment was entered.  Indeed, the Pilgrim Plaintiffs were sent a demand letter on October 28, 2015 that explained why their complaint violated the Sale Order.  That demand letter also notified the Pilgrim Plaintiffs of the proceedings taking place in the Bankruptcy Court.  At the time the demand letter was sent, the November 2015 Decision had not been entered by the Bankruptcy Court, but briefing and oral argument on the issues had concluded.  On December 4, 2014, the December 2015 Judgment was entered.  On December 15, 2015, the Pilgrim Plaintiffs were sent a copy of the December 2015 Judgment.  The Pilgrim Plaintiffs could have timely appealed the December 2015 Judgment, but chose not to, and thus are now bound by that Judgment.[75]

Accordingly, the Pilgrim Plaintiffs fit squarely within the definition of Non-Ignition Switch Plaintiffs (*i.e.*, plaintiffs asserting economic loss claims against New GM in connection

---

[74]    *See, e.g., Reply Of Pilgrim Plaintiffs To Motion Of General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction, And The Bankruptcy Court's Rulings In Connection Therewith*, dated February 4, 2016 [ECF No. 13599], at Exh. "C."

[75]    Moreover, in a stipulation filed with the California District Court on November 30, 2015 (*i.e.*, prior to the December 2015 Judgment), the parties referenced the November 2015 Decision.

with vehicles that were *not* subject to Recall No. 14V-047).  Like other Non-Ignition Switch Plaintiffs, they were given time to demonstrate a due process violation with respect to their alleged successor liability claims.  Now, after the November 2015 Decision, and their failure to appeal that ruling, it is too late for them to bring such claims.  Under those circumstance, the Sale Order applies to bar their claims.

The Pilgrim Plaintiffs' reliance on the Stipulation entered by the Bankruptcy Court in February 2016 [ECF No. 13603], staying the Pilgrim Motion to Enforce,[76] is misplaced.  That Stipulation merely states that the Second Circuit Opinion "*may*" have an effect on the issues raised in the Pilgrim Lawsuit.  The Stipulation stayed New GM's motion to enforce; it had nothing to do with the Second Circuit Opinion or the proceedings leading to the December 2015 Judgment with respect to the Pilgrim Lawsuit.

In sum, any successor liability claims asserted by the Pilgrim Plaintiffs with respect to Old GM vehicles are barred by the Sale Order.  The Pilgrim Plaintiffs did not establish a due process violation in 2015 with respect to the Sale Order, and it is too late for them to do so now.  *See Motors Liquidation Co.*, 541 B.R. at 130 n.70.

## C.      Pope Supplemental Opening Brief

The Pope Plaintiffs submitted a Supplemental Opening Brief ("Pope Supplemental Brief") to address certain issues they claim are unique to their case, and why they should be permitted to pursue all of their claims against New GM.  But these issues are not unique to the Pope Plaintiffs.  Like other Non-Ignition Switch Post-Closing Accident Plaintiffs, the Pope Plaintiffs are barred by the Sale Order and the December 2015 Judgment.

---

[76]     *See* Pilgrim Supplemental Brief, at 4, 7.

Contrary to the Pope Plaintiffs' arguments,[77] the correspondence sent to the Pope Plaintiffs in early September 2015 were not misleading or confusing. The Pope Plaintiffs admit they received New GM's demand letter on or about September 1, 2015 and received the September 2015 Scheduling Order on or about September 4, 2015. The demand letter specifically identified the paragraphs of the Pope Complaint that were problematic, including those that contained a consumer protection act cause of action and those seeking punitive damages; New GM asserted that such claim and request for damages were barred by the Sale Order.[78] Although New GM's letter quoted portions of the April 2015 Decision/June 2015 Judgment, it also made clear that "the reasoning and rulings set forth in the Judgment and Decision are equally applicable to the [Pope] Lawsuit." New GM never stated that the Pope Plaintiffs were Ignition Switch Plaintiffs, or that they could assert an Independent Claim against New GM. Instead, New GM asserted that the consumer protection act claim and request for damages were barred for the same reasons as other plaintiffs' claims.

After receiving New GM's correspondence in early September 2015, the Pope Plaintiffs sent a response to counsel for New GM because they allegedly were not sure what to do.[79] While the Pope Plaintiffs assert that there was no response to this inquiry, in fact counsel for New GM contacted counsel for the Pope Plaintiffs by telephone the same day that their letter was received (*i.e.*, September 15, 2015), and explained the procedures set forth in the September 2015 Scheduling Order and the issued raised therein.[80]

---

[77]  *See* Pope Supplemental Brief, at 5.

[78]  *See* Pope Supplemental Brief, Exh. "2," at 1 (identifying paragraphs 20-26 of the Pope Complaint as asserting claims that violate the Sale Order, as well as asserting that punitive damages were barred).

[79]  *See id.*, Exh. "4."

[80]  *See Declaration of Scott I. Davidson*, sworn to on April 7, 2017, attached hereto as **Exhibit "E."**

47

In any event, even if the Pope Plaintiffs found New GM's demand letter confusing, or they had questions they believed were not sufficiently addressed by New GM, the Pope Plaintiffs could have contacted Designated Counsel.  Designated Counsel wrote to plaintiffs, informing them that if they had "any questions about the procedures [in the September 2015 Scheduling Order], please contact . . . plaintiffs' Liaison Counsel to the MDL, and/or Co-Lead Counsel for the MDL . . . ."[81]  Although the Pope Plaintiffs contend that their interests were "squarely aligned with the interests of the Ignition Switch Plaintiffs,"[82] they never contacted Designated Counsel to confirm their understanding or raise any issue.

Finally, the Pope Plaintiffs' assertion that New GM "prevented" them from raising issues is incorrect.  Counsel for the Pope Plaintiffs was served with all of the pleadings/letters filed by New GM in connection with the proceedings leading to the November 2015 Decision/December 2015 Judgment.[83]  These included pleadings regarding punitive damages and consumer protection act claims (both of which were at issue in the Pope lawsuit).  The Pope Plaintiffs do not deny receiving these pleadings, which put the Pope Plaintiffs on notice of all the relevant Bankruptcy Court proceedings.  The Pope Plaintiffs could have sought permission to file a brief with the Bankruptcy Court to raise whatever issues they had.  They did not do so at the appropriate time and it is too late for them to raise those arguments now.[84]

---

[81]   Pope Supplemental Brief, Exh. "3," at 2.

[82]   *Id.* at 3.

[83]   *See Certificates of Service*, found at ECF Nos. 13440, 13457, 13464, 13467, 13468, 13474, 13485.

[84]   The Pope Plaintiffs complain that they were not served with the November 2015 Decision or the December 2015 Judgment.  However, the Pope Plaintiffs never cite any authority that would have required New GM to serve them with these documents.  As the Pope Plaintiffs were fully aware of the bankruptcy proceedings, and who counsel for New GM and Designated Counsel were, they could have easily requested these documents or researched the matter themselves.  *See, e.g.*, *Stevens v. Miller*, 676 F.3d 62, 70 (2d Cir. 2012) ("[The Second Circuit] has made clear that the 'parties have an obligation to monitor the docket sheet to inform themselves of the entry of orders they wish to appeal.'" (quoting *U.S. ex rel. McAllan v. City of N.Y.*, 248 F.3d 48, 53 (2d Cir. 2001)).

D.     **Peller Supplemental Opening Brief**

Many of the Peller Plaintiffs' arguments are addressed in previous sections of this brief where New GM responds to the arguments made in connection with the 2016 Threshold Issues. New GM responds in this Section to the Peller Plaintiffs' remaining arguments not addressed above.

*First*, the Peller Plaintiffs' assertion that there is only one issue that should be decided by the Court on remand is wrong.  The December 13, 2016 Order to Show Cause identifies many other issues that require resolution.   Indeed, at the November 16, 2016 Status Conference, Attorney Peller made the very same argument (that there is only one issue to be decided by the Court), and this Court rejected it.  *See* November 16, 2016 Hr'g Tr., at 43:25-45:12.

*Second*, contrary to the Peller Plaintiffs' assertion (Peller Supplemental Brief, at 8), Attorney Peller did not have standing in the Second Circuit to assert arguments on behalf of all Non-Ignition Switch Plaintiffs.  Attorney Peller filed notices of appeal on behalf of his individual clients,[85] not on behalf of other Non-Ignition Switch Plaintiffs.  Attorney Peller is not one of the Designated Counsel in the bankruptcy proceedings; and he is not one of the Lead Counsel in MDL 2543.[86]   He only represents certain individuals that are Non-Ignition Switch Plaintiffs, along with other individuals that are seeking recovery for Ignition Switch Defects.

---

[85]     Specifically, Peller's notices of appeal stated the following: (i) "Celestine Elliott, Lawrence Elliott and Berenice Summerville, Plaintiffs in their action pending before the United States District Court for the Southern District of New York, appeal . . . from [the April 2015 Decision/June 2015 Judgment]" [ECF No. 13179], (ii) "Ishmael Sesay And Joanne Yearwood, Plaintiffs in their action pending before the United States District Court for the Southern District of New York, appeal . . . from [the April 2015 Decision/June 2015 Judgment]" [ECF No. 13180], and (iii) "Sharon Bledsoe, Celestine Elliott, Lawrence Elliott, Tina Farmer, Paul Fordham, Momoh Kanu, Tynesia Mitchell, Dierra Thomas, and James Tibbs, ("Bledsoe Plaintiffs"), hereby appeal . . . [the April 2015 Decision/June 2015 Judgment]" [ECF No. 13337].  In addition, while the lawsuits commenced by Peller are styled as class actions, no class has been certified by any court in his lawsuits.

[86]     As stated in New GM's Opening Brief, Peller commenced proceedings in the District Court seeking to **oust Lead Counsel** because they took no action in the Bankruptcy Court or the Second Circuit to advocate the interests of Non-Ignition Switch Plaintiffs. *See* New GM's Opening Brief, at 15 (citing *Notice Of Conflict Within The Plaintiffs' Group And Of The Possible Need For The Court To Augment Plaintiffs' Leadership*

*Third*, the Peller Plaintiffs' argument regarding the interlocutory nature of the June 2015 Judgment is a red herring.  The controlling rulings with respect to potential successor liability claims and purported Independent Claims asserted by the Peller Plaintiffs are contained in the December 2015 Judgment.  That is a final ruling and the Peller Plaintiffs did not appeal the ruling in that Judgment.

*Fourth*, the Peller Plaintiffs incorrectly assert that the only ruling in the December 2015 Judgment that was not dependent on the April 2015 Decision/June 2015 Judgment was the ruling regarding fraudulent concealment of a right to file a proof of clam.  *See* Peller Supplemental Brief, at 8.  In fact, the December 2015 Judgment concerns many separate issues that were *not* addressed in the June 2015 Judgment.  For example, the bar on punitive damages (*see* December 2015 Judgment, ¶ 6), the use of imputation principles (*see id.*, ¶¶ 1-5), and issues relating to Post-Closing Accident Plaintiffs (*see, e.g.*, *id.*, ¶ 7) were not part of the June 2015 Judgment.  In addition, (i) the ruling in the November 2015 Decision that Non-Ignition Switch Plaintiffs waived the right to raise a due process violation (*see Motors Liquidation Co.*, 541 B.R. at 130 n.70) and (ii) the ruling in the December 2015 Judgment that plaintiffs whose claims arise from vehicles without the Ignition Switch Defect cannot assert Independent Claims (*see* December 2015 Judgment, at ¶ 14), were not part of the June 2015 Judgment.  And, the June 2015 Judgment did not address whether specific claims, as demonstrated in marked and other pleadings, were viable under the Sale Order.  *See, e.g.*, December 2015 Judgment, at ¶¶ 19, 21, 29.  Simply stated, the proceedings leading to the November 2015 Decision/December 2015 Judgment were meant to address *separate and distinct issues* not decided by the April 2015 Decision/June 2015 Judgment; not to re-litigate issues that were on appeal.

---

*Structure*, dated April 14, 2016 [MDL 2543 ECF No. 2772], at 1).  Peller cannot credibly disavow his previous statements regarding Lead Counsel.

Finally, even if the Peller Plaintiffs argue that the Second Circuit permitted them to assert an Independent Claim, they have no answer to the fact that the Bankruptcy Court reviewed their alleged Independent Claims as part of the marked pleading process and ruled that they had *not* asserted a valid Independent Claim.  *See* December 2015 Judgment, ¶ 28 ("the Peller Complaints shall remain stayed unless and until they are amended . . . to strike any purported Independent Claims by Non-Ignition Switch Plaintiffs").  The Peller Plaintiffs failed to appeal this ruling in the December 2015 Judgment, and it is now *res judicata* as to them.

## CONCLUSION

For all of the foregoing reasons and for the reasons set forth in New GM's Opening Brief, New GM requests that the Court determine the 2016 Threshold Issues consistent with the following conclusions of law:

1.    Ignition Switch Plaintiffs, Ignition Switch Pre-Closing Accident Plaintiffs, and Ignition Switch Post-Closing Accident Plaintiffs are only those plaintiffs with Subject Vehicles and the Ignition Switch Defect.  All other plaintiffs are Non-Ignition Switch Plaintiffs, Non-Ignition Switch Pre-Closing Accident Plaintiffs, or Non-Ignition Switch Post-Closing Accident Plaintiffs.  Pillars is not an Ignition Switch Plaintiff.

2.    The Opinion only refers to the Peller Plaintiffs, and not to other Non-Ignition Switch Plaintiffs. No other Non-Ignition Switch Plaintiff appealed the June 2015 Judgment. Furthermore, the rulings set forth in the November 2015 Decision/December 2015 Judgment are binding on Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs that were before the Bankruptcy Court, including plaintiffs that were represented by Designated Counsel.  That includes (a) the ruling that Non-Ignition Switch Plaintiffs had not established a due process violation in connection with the notice of the 363 Sale, and were thus bound by the Sale Order, and (b) the ruling that Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs had failed to assert valid Independent Claims.  For claims that were not before the Court in 2015 (or that remain unresolved), the Court should remain the gatekeeper to ensure that plaintiffs are not improperly asserting claims barred by the Sale Order and the Bankruptcy Court's other rulings.

3.    Post-363 Sale Used Car Purchasers of Subject Vehicles with the Ignition Switch Defect asserting economic loss claims are not bound by the Sale Order, but the Sale Order necessarily affects the scope and type of claim that may be transferred to used car owners by the original owners from whom they purchased their

vehicle. All such used car buyers/assignees have the same rights as their used car sellers/assignors and are bound by the Sale Order and Key Court Rulings.

4.    All Post-Closing Accident Plaintiffs (with or without the Ignition Switch Defect) are prohibited from pursuing punitive damages claims against New GM even if they are allowed to assert successor liability theories.

Dated:   New York, New York
         April 7, 2017

Respectfully submitted,


     */s/ Arthur Steinberg*
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

-and-

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

30254910.v1