**Hearing Date and Time: April 20, 2017 at 9:00 a.m. (Eastern Time)**

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: 206-623-7292
Email: steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: 414-956-1000
Email: ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Telephone: 361-882-1612
Email: bobh@hmglawfirm.com

*Lead Counsel in the MDL Court with
Primary Responsibility for Personal Injury
and Wrongful Death Cases*

Edward S. Weisfelner
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800
Email: eweisfelner@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, P.C.
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: 214-969-4900
Email: esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*

William P. Weintraub
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: 212-813-8800
Email: wweintraub@goodwinlaw.com

*Counsel to Those Certain Post-Closing
Accident Plaintiffs Represented By Butler
Wooten & Peak LLP, Denney & Barrett, P.C.,
Hilliard Muñoz Gonzales L.L.P., and Turner &
Associates, P.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
                                                            :
In re:                                                      :              Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                         :              Case No.: 09-50026 (MG)
            f/k/a General Motors Corp., et al.,             :
                                                            :
                                        Debtors.            :              (Jointly Administered)
------------------------------------------------------------X
```

**Plaintiffs' Joint Reply Brief On The 2016 Threshold Issues**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .............................................................................1

REPLY ...................................................................................................................3

I.    New GM's Chart Is Inaccurate......................................................................3

    A.    Ignition Switch Pre-Closing Accident Plaintiffs Can Pursue Punitive
        Damages. ...........................................................................................3

    B.    Ignition Switch Post-Closing Accident Plaintiffs Can Pursue Successor
        Liability Claims. ...............................................................................5

    C.    Ignition Switch Plaintiffs (Including Used Car Purchasers) Can Pursue
        Punitive Damages. .............................................................................6

    D.    GM's Table Is Entirely Inaccurate About The Non-Ignition Switch Post-
        Closing Accident Plaintiffs.................................................................6

    E.    Non-Ignition Switch Plaintiffs (Both Economic Loss And Personal Injury)
        Can Assert Independent Claims............................................................8

    F.    Used Car Purchasers (Other Than Ignition Switch Plaintiffs) Are Outside
        The Scope Of The Sale Order...............................................................8

II.   New GM Repeatedly Misstates The Factual And Legal Background. .............9

III.  Threshold Issue One. ...................................................................................13

IV.   Threshold Issue Two: Part One...................................................................13

    A.    Non-Ignition Switch Plaintiffs (Both Economic Loss And Personal Injury)
        Are Entitled To The Benefit Of The Second Circuit Opinion.............13

    B.    The November 2015 Decision And December 2015 Judgment Do Not
        Prevent The Non-Ignition Switch Plaintiffs (Both Economic Loss And
        Personal Injury) From Asserting Independent Claims........................18

    C.    The Non-Ignition Switch Post-Closing Accident Plaintiffs Are Not Bound
        By The November 2015 Decision Or December 2015 Judgment. .......22

    D.    Plaintiffs Who Did Not Receive The September 2015 Scheduling
        Order Are Not Bound By The November 2015 Decision Or December
        2015 Judgment.................................................................................32

V.    Threshold Issue Two: Part Two ...................................................................35

i

A.      This Court Need Not And Should Not Rule On New GM's Meritless
Argument That Many Independent Claims Are Retained Liabilities. ..................35

VI.    Threshold Issue Three. ....................................................................................39

A.      The Holding In The Second Circuit Opinion That Used Car Purchasers
May Pursue Claims Against New GM Governs. ...................................39

B.      New GM Cannot Revive The Bankruptcy Court's Rulings On Used  Car
Purchasers, Which Were Reversed By The Second Circuit Opinion. ..................41

VII.   Threshold Issue Four. ....................................................................................43

CONCLUSION ....................................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ackermann v. United States,
340 U.S. 193 (1950) ........................................................................................................17

Ancile Inv. Co. v. Archer Daniels Midland Co.,
No. 08 CV 9492 KMW, 2011 WL 3516128 (S.D.N.Y. Aug. 3, 2011)..................................25

Bank of China, N.Y. Branch v. NBM L.L.C.,
No. 01 Civ. 0815 (DC), 2004 WL 1907308 (S.D.N.Y. Aug. 26, 2004), aff'd
sub nom. Bank of China, N.Y. Branch v. Bank of China, H.K. Branch, 243
Fed. App'x 652 (2d Cir. 2007)............................................................................................16

Barnett v. Jaspan (In re Barnett),
124 F.2d 1005 (2d Cir. 1942)..............................................................................................15

Bhd. of Maint. Way Emps. v. St. Johnsbury & Lamoille Cty. R.R./M.P.S.
Assocs.,
806 F.2d 14 (2d Cir. 1986) .................................................................................................16

Burton v. Chrysler Group LLC (In re Old Carco LLC),
492 B.R. 392 (Bankr. S.D.N.Y. 2013) ..........................................................................*passim*

DiLaura v. Power Auth. of State of N.Y.,
982 F.2d 73 (2d Cir. 1992) .................................................................................................40

Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,
600 F.3d 190 (2d Cir. 2010) ...............................................................................................19

Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.),
829 F.3d 135 (2d Cir. 2016) ...........................................................................................*passim*

Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.),
Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Nov. 16,
2015)...................................................................................................................................15

Federated Dep't Stores, Inc. v. Moitie,
452 U.S. 394 (1981) .................................................................................................... 16, 17

Finova Capital Corp. v. Larson Pharmacy Inc. (In re Optical Techs.),
425 F.3d 1294 (11th Cir. 2005)...........................................................................................21

Giannone v. York Tape & Label, Inc.,
548 F.3d 191 (2d Cir. 2008) ...............................................................................................19

Hegger v. Green,
    646 F.2d 22 (2d Cir. 1981) ................................................................................15

Holland v. FCA US LLC,
    Case No 1:15-cv-121, 2015 WL 7196197 (N.D. Ill. Nov. 16, 2016), aff'd, 656
    Fed. App'x. 232 (6th Cir. 2016)........................................................................37

Hunt v. Mem'l Bldg., LLC (In re Athanasios III, LLC),
    No. 2:11CV994 DAK, 2013 WL 786445 (D. Utah Mar. 1, 2013) ..................20, 21

In re Edwards,
    962 F.2d 641 (7th Cir. 1992) ............................................................................20

In re Ephedra Products Liability Litigation,
    329 B.R. 1 (S.D.N.Y. 2005).........................................................................47, 48

In re Fabric Tree,
    426 F. Supp. 872 (S.D.N.Y. 1977)...................................................................21

In re Ferrante,
    195 B.R. 990 (Bankr. N.D.N.Y. 1996)..............................................................21

In re Gen. Motors LLC Ignition Switch Litig.,
    154 F. Supp. 3d 30 (S.D.N.Y. 2015)............................................................36, 37

In re Gen. Motors LLC Ignition Switch Litig.,
    202 F. Supp. 2d 362 (S.D.N.Y. 2016)...............................................................37

In re KB Toys Inc.,
    736 F.3d 247 (3d Cir. 2013) .............................................................................41

In re Metiom Inc.,
    301 B.R. 634 (Bankr. S.D.N.Y. 2003) ..............................................................41

In re Motors Liquidation Co.,
    529 B.R. 510 (Bankr. S.D.N.Y. 2015), aff'd in part, vacated in part, rev'd in
    part sub nom. Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.), 829
    F.3d 135 (2d Cir. 2016) ........................................................................10, 17, 27

In re Motors Liquidation Co.,
    531 B.R. 354 (Bankr. S.D.N.Y. 2015) .........................................................10, 17

In re Motors Liquidation Co.,
    541 B.R 104 (Bankr. S.D.N.Y. 2015) ........................................................passim

In re Motors Liquidation Co.,
    No. 09-50026, 2012 WL 10864205 (Bankr. S.D.N.Y. Aug. 6, 2012) .............47, 48

In re Residential Capital, LLC,
    512 B.R. 179 (Bankr. S.D.N.Y. 2014) ................................................................22

In re Taylor,
    655 F.3d 274 (3d Cir. 2011) ...............................................................................16

Kane v. Magna Mixer Co.,
    71 F.3d 555 (6th Cir. 1995) ................................................................................47

Maharaj v. Bankamerica Corp.,
    128 F.3d 94 (2d Cir. 1997) .................................................................................18

Mathias v. Fiat Chrysler Autos., NV,
    Case No. 5:16-cv-01185-EJD, 2016 WL 5109967 (N.D. Cal. Sept. 21, 2016)......................12

Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.),
    467 B.R. 694 (S.D.N.Y. 2012)........................................................................*passim*

Morris v. N.Y.C. Emps. Ret. Sys.,
    129 F. Supp. 2d 599 (S.D.N.Y. 2001) .................................................................20

Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In
    re Motors Liquidation Co.),
    552 B.R. 253 (Bankr. S.D.N.Y. 2016) ..................................................... 32, 33, 34

Mullane v. Cent. Hanover Bank & Tr. Co.,
    339 U.S. 306 (1950) ...........................................................................................44

Norton v. Sam's Club,
    145 F.3d 114 (2d Cir. 1998) ...............................................................................15

Philatelic Found. v. Kaplan,
    647 F. Supp. 1344 (S.D.N.Y. 1986) ....................................................................39

Pike v. Freeman,
    266 F.3d 78 (2d Cir. 2001) .................................................................................23

Rivera v. Marcus,
    696 F.2d 1016 (2d Cir. 1982)..............................................................................20

Robbins v. Physicians for Women's Health, LLC,
    90 A.3d 925 (Conn. 2014) ..................................................................................48

Rodriguez v. FCA US LLC,
    Case No. 16-cv-05083-BLF, 2017 WL 278540 (N.D. Cal. Jan. 23, 2017)...........................12

Sniado v. Bank Austria AG,
    378 F.3d 210 (2d Cir. 2004) ...............................................................................22

Titan Real Estate Ventures, LLC v. MJCC Realty Ltd. P'ship (In re Flanagan),
    415 B.R. 29 (D. Conn. 2009) ...............................................................................................41

Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),
    600 F.3d 135 (2d Cir. 2010) ............................................................... 15, 21, 29, 49

Travelers Indem. Co. v. Bailey,
    557 U.S. 137 (2009) ...........................................................................................19

United States v. Uccio,
    940 F.2d 753 (2d Cir. 1991) ...............................................................................39

**Statutes**

11 U.S.C. § 101 .................................................................................................. 11, 43

11 U.S.C. § 363 .................................................................................................. 11, 27

11 U.S.C. § 365 .......................................................................................................50

11 U.S.C. § 541 .......................................................................................................41

11 U.S.C. § 726 .......................................................................................................46

**Other Authorities**

Bankruptcy Rule 9011 ............................................................................................16

Fed. R. Civ. P. 60 ...............................................................................................17, 22

The Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, and those Post-Closing Accident Plaintiffs represented by the following law firms: (i) Butler Wooten & Peak LLP; (ii) Denney & Barrett, P.C.; (iii) Hilliard Muñoz Gonzales L.L.P.; and (iv) Turner & Associates, P.A. (collectively, "**Plaintiffs**") respectfully submit the *Plaintiffs' Joint Reply Brief On The 2016 Threshold Issues* and represent as follows:[1]

## PRELIMINARY STATEMENT

New GM contends that the November 2015 Decision/December 2015 Judgment bar the Non-Ignition Switch Plaintiffs'[2] Independent Claims. This flawed contention directly conflicts with the Second Circuit's unambiguous holding that Independent Claims are outside the scope of the Sale Order and, therefore, must be overruled. New GM asserts that certain Non-Ignition Switch Plaintiffs do not benefit from the Second Circuit Opinion under the general rule that a nonappealing party will not benefit from a reversal or modification of a judgment in favor of an appealing party. However, the very cases cited by New GM recognize a well-established exception (applicable here) permitting nonappealing parties to benefit where the appellate court's reversal renders the lower court's ruling erroneous as to both appealing and nonappealing parties.

In essence, New GM argues that, by virtue of the September 2015 Scheduling Order, Non-Ignition Switch Plaintiffs are bound by rulings on Independent Claims contained in the November 2015 Decision/December 2015 Judgment which have now been invalidated by the Second Circuit Opinion. That argument is classic bootstrapping because the September 2015

---

[1]    This Reply is in response to the *Opening Brief by General Motors LLC on the 2016 Threshold Issues Set Forth in the Order to Show Cause, Dated December 13, 2016 (Except for the Late Proof of Claim Issue)*, dated Feb. 27, 2017 [ECF No. 13865] (the "**New GM Br.**"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Plaintiffs' Joint Opening Brief on the 2016 Threshold Issues*, dated Feb. 27, 2017 [ECF No. 13866] (the "**Plaintiffs' Opening Brief**" or "**Plaintiffs Br.**").

[2]    For the avoidance of doubt, although certain parts of this brief refer specifically to Non-Ignition Switch Post-Closing Accident Plaintiffs, consistent with the Order to Show Cause and for ease of reference in the context of this briefing, any and all references to "Non-Ignition Switch Plaintiffs" shall include personal injury and wrongful death claimants, in addition to economic loss claimants.

1

Scheduling Order (i) was only served on approximately "150-200" Non-Ignition Switch Plaintiffs, whereas New GM now seeks to prevent plaintiffs in over 660 lawsuits from pursuing Independent Claims; (ii) was not accompanied by a motion to enforce, adversary proceeding, summons, or any other recognized form of process that compelled the attendance or participation in the briefing contemplated under that order; (iii) did not contain the words "Independent Claims" or otherwise indicate that Independent Claims or the claims of Non-Ignition Switch Post-Closing Accident Plaintiffs were at issue in the proceedings; and (iv) was often accompanied by misleading correspondence from New GM's counsel that <u>did</u> mention Independent Claims, but seemingly only to <u>exclude</u> Independent Claims from the proceedings.

In any event, the November 2015 Decision and the Second Circuit Opinion permit Non-Ignition Switch Plaintiffs to assert Independent Claims because, as future claimants of a non-debtor, they have demonstrated a due process violation arising from the failure to provide them with constitutionally adequate notice that Independent Claims against New GM (as future claims) would be barred. That Non-Ignition Switch Plaintiffs did not demonstrate a due process violation in the limited proceedings leading to the November 2015 Decision where due process was not identified as an issue at stake cannot operate as a waiver. New GM's contentions to the contrary fail to rebut the presumption against waiver of fundamental constitutional rights.

Next, New GM does not discuss, let alone distinguish, the Bankruptcy Court's explicit determination that the viability of Independent Claims (including whether such claims are Retained Liabilities) is a matter for the nonbankruptcy courts. New GM simply assumes that these are matters for the Bankruptcy Court and selects a handful of claims from hundreds of complaints to purportedly demonstrate that many of the Non-Ignition Switch Plaintiffs' Independent Claims are Retained Liabilities. These arguments (which are properly left to

nonbankruptcy courts) are meritless.

Likewise, New GM's attempt to revive the holding in the April 2015 Decision enjoining the Used Car Purchasers' successor liability claims must fail. This reversed ruling cannot be law of the case. Rather, the holding in the Second Circuit Opinion that the claims of Used Car Purchasers fall outside the scope of the Sale Order governs whether the claims of Used Car Purchasers, including Non-Ignition Switch Plaintiffs, may be barred by the Sale Order. Accordingly, the claims of all Used Car Purchasers may be asserted against New GM.

Finally, the Sale Order cannot bar Non-Ignition Switch Post-Closing Accident Plaintiffs from bringing successor liability claims against New GM (including for punitive damages). As classic future tort claimants at the time the Sale Order was entered, they received no notice of or due process with respect to that order. Thus, under the Second Circuit Opinion and the Grumman Olson line of cases, these claimants are free to pursue successor liability claims against New GM as if the Sale Order did not exist.

**REPLY**

I.    **New GM's Chart Is Inaccurate.**

    A.    **Ignition Switch Pre-Closing Accident
           Plaintiffs Can Pursue Punitive Damages.**

New GM opens its brief with an incorrect chart that wrongly asserts Ignition Switch Pre-Closing Accident Plaintiffs cannot assert punitive damages claims against New GM as part of their successor liability claims. See New GM Br. 5. There is no dispute that the Second Circuit held that the Ignition Switch Pre-Closing Accident Plaintiffs are not bound by the Sale Order and can assert successor liability claims against New GM.

To support its erroneous statement that punitive damages cannot be sought by Ignition Switch Pre-Closing Accident Plaintiffs, New GM points to Paragraph 6 of the December 2015

Judgment.  The successor liability claims of Ignition Switch Pre-Closing Accident Plaintiffs,

however, were not part of the briefing established by the September 2015 Scheduling Order

(which resulted in the December 2015 Judgment) for the simple reason that those issues had

already been addressed in the Spring 2015 briefing as part of the 2014 Threshold Issues.  The

Fall 2015 briefing set up by the September 2015 Scheduling Order instead related to the ability

of Ignition Switch Post-Closing Accident Plaintiffs selected for the Bellwether Trials in the

MDL Court to seek punitive damages as part of their Products Liability Claims and Independent

Claims.[3]  In the Fall 2015 briefing, the Bellwether Plaintiffs alleged "three paths" to punitive

damages against New GM for Independent Claims: (i) use of knowledge of the Ignition Switch

Defect "inherited" from Old GM; (ii) use of knowledge of the Ignition Switch Defect

independently developed by New GM; and (iii) express contractual assumption of liability for

punitive damages by New GM as an "Assumed Liability" under Section 2.3(a)(ix) of the Sale

Agreement.  See id.  All three paths were discussed in the context of Independent Claims and

Post-Closing Accidents in Subject Vehicles with the Ignition Switch Defect.  This was not

addressed as a successor liability issue for Pre-Closing Accident Plaintiffs of any stripe.[4]

    As such, Paragraph 6 of the December 2015 Judgment solely relates to the narrow issue

---

[3]    Apart from what the Second Circuit did for all Independent Claims in its Opinion, when the Bankruptcy Court
opened up Independent Claims for the Ignition Switch Plaintiffs in the April 2015 Decision, this automatically
opened up Independent Claims for Ignition Switch *Post*-Closing Accident Plaintiffs as well.  The Subject
Vehicles had the same defect, the plaintiffs suffered the same due process violation, and the plaintiffs
experienced the same prejudice. The punitive damages issue for Ignition Switch Post-Closing Accident
Plaintiffs was briefed on behalf of the plaintiffs in the Bellwether Trials.  All of the Bellwether Trials were
personal injury and wrongful death cases involving *Post*-Closing accidents alleged to have been caused by the
Ignition Switch Defect.  In fact, throughout the November 2015 Decision and the December 2015 Judgment, the
Bankruptcy Court repeatedly recognized Independent Claims for Ignition Switch Post-Closing Accident
Plaintiffs.  See, e.g., In re Motors Liquidation Co., 541 B.R 104, 122-23 (Bankr. S.D.N.Y. 2015) ("[O]n Product
Liabilities Claims and Independent Claims alike, New GM may be held responsible, on claims for both
compensatory and punitive damages, for its *own* knowledge and conduct."); December 2015 Judgment ¶¶ 7, 19,
21, 23, 29, 30.

[4]    A fourth path for Ignition Switch Post-Closing Accident Plaintiffs is the due process argument that is now Issue
4 of the 2016 Threshold Issues and is discussed below.

of whether New GM contractually assumed liability for punitive damages as part of the "Assumed Liabilities" for *Post*-Closing Accidents. This was solely a question of contract interpretation over whether New GM <u>agreed</u> to be liable for punitive damages as an Assumed Liability, which required parsing the text of Section 2.3(a)(ix) of the Sale Agreement. <u>See</u> <u>In re Motors Liquidation Co.</u>, 541 B.R. at 111-13, 117-21. The Ignition Switch *Pre*-Closing Accident Plaintiffs did not brief this **contract** issue in the Fall 2015 briefing because none of them contended New GM contractually assumed liability for *Pre*-Closing accidents. The two issues are apples and oranges: (i) contractual assumption of punitive damages for *Post*-Closing accidents and (ii) whether Ignition Switch *Pre*-Closing Accident Plaintiffs can assert successor liability claims against New GM. The former is a matter of contract interpretation, while the latter concerns the ability to assert successor liability claims against New GM and is driven by due process issues resolved by the Second Circuit Opinion.

> **B.      Ignition Switch Post-Closing Accident**
> **<u>Plaintiffs Can Pursue Successor Liability Claims</u>.**

Next, New GM incorrectly states that Ignition Switch *Post*-Closing Accident Plaintiffs cannot bring successor liability claims. <u>See</u> New GM Br. 6. This is wrong. The Second Circuit ruled that no one with a Subject Vehicle containing the Ignition Switch Defect received due process concerning the Sale Order. <u>See</u> <u>Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)</u>, 829 F.3d 135, 161-66 (2d Cir. 2016). Regardless of the Bankruptcy Court's limited ruling in the November 2015 Decision and December 2015 Judgment that New GM did not contractually assume liability for punitive damages for *Post*-Closing Accidents, the facts remain that (i) the Second Circuit held there was a due process violation concerning the Ignition Switch Defect that negated any restrictions in the Sale Order on bringing successor liability claims, which, perforce, includes claims by Ignition Switch *Post*-Closing Accident Plaintiffs; and (ii) at

the time of the Sale, the Ignition Switch Post-Closing Accident Plaintiffs were known creditors with respect to repair claims relating to the Ignition Switch Defect and future tort claimants who did not hold personal injury or wrongful death claims against Old GM at the time of the Sale. In each capacity, the Ignition Switch Post-Closing Accident Plaintiffs were not given constitutionally sufficient notice that their successor liability claims would be barred.

### C.    Ignition Switch Plaintiffs (Including Used Car Purchasers) Can Pursue Punitive Damages.

New GM incorrectly asserts that the Ignition Switch Plaintiffs cannot seek punitive damages from New GM on successor liability claims. <u>See</u> New GM Br. 6, 8. This argument does not appear anywhere else in the brief, is not a 2016 Threshold Issue and should be rejected by the Court. The Second Circuit held that the Ignition Switch Plaintiffs were not bound by the Sale Order and could assert successor liability claims. <u>See</u> <u>Elliott</u>, 829 F.3d at 166. As a result, the Ignition Switch Plaintiffs may seek any applicable theories of recovery on their successor liability claims—including punitive damages. While New GM cites the December 2015 Judgment as purportedly supporting a bar on punitive damages, <u>see</u> New GM Br. 6, 8, successor liability claims (and, thus, available damages) were neither considered nor ruled on in the November 2015 Decision or the December 2015 Judgment.

### D.    GM's Table Is Entirely Inaccurate About The Non-Ignition Switch Post-Closing Accident Plaintiffs.

The chart is incorrect in all categories relating to Non-Ignition Switch Post-Closing Accident Plaintiffs. The Sale Order does not bind the Non-Ignition Switch Post-Closing Accident Plaintiffs. At the time of the Sale, all of these plaintiffs were future personal injury and wrongful death claimants whose accidents had not yet occurred. As such, these plaintiffs were not creditors of Old GM for the personal injury and wrongful death claims they now assert and are not bound by the Sale Order. <u>See</u> <u>Morgan Olson L.L.C. v. Frederico (In re Grumman Olson</u>

6

Indus., Inc.), 467 B.R. 694, 708-09 (S.D.N.Y. 2012).  Nor were any of these claimants parties to

or participants in the proceedings that led to the April 2015 Decision/June 2015 Judgment or the

November 2015 Decision/December 2015 Judgment.

The briefing on the 2014 Threshold Issues concerned only the April 2014 Motion to

Enforce and the August 2014 Motion to Enforce.  Neither Motion to Enforce was brought against

Non-Ignition Switch Post-Closing Accident Plaintiffs and no one represented their interests in

that proceeding.[5]  The briefing in the Fall of 2015 was scheduled pursuant to the September 2015

Scheduling Order.  That order did not compel participation by the relatively few recipients

because the order was not entered as part of an extant motion or other proceeding, there was no

service of process (or equivalent), and New GM had not commenced an adversary proceeding or

contested matter against any identified Non-Ignition Switch Post-Closing Accident Plaintiff.  In

addition, the September 2015 Scheduling Order (i) did not facially signal that "Independent

Claims" would be considered in general (this well-used term was not used or described); (ii) did

not appear to be addressed to "Non-Ignition Switch Plaintiffs" or their issues (this well-used term

was not used or described); (iii) focused on the Bellwether trials (all of which were "Ignition

Switch" cases), the economic loss class action in the MDL, and the claims of the States of

California and Arizona; (iv) did not signal (as New GM now opportunistically contends) the

briefing was the last opportunity to raise issues the recipients did not even know were issues

concerning Independent Claims; and (v) in many cases, was accompanied by a confusing letter

from New GM that stated that "Independent Claims" (this time using the well-used term) were

not barred by the Sale Order (potentially lulling already confused plaintiffs into inaction).

---

[5]    There has never been "Designated Counsel" appointed for or acting on behalf of the Non-Ignition Switch Post-Closing Accident Plaintiffs.  Attorney Gary Peller only represents the so-called Peller Plaintiffs and did not file briefs in the 2014 Threshold Issues briefing.  The Peller Plaintiffs did move to reconsider the April 2015 Decision and June 2015 Judgment after these rulings were issued and did appeal.

Moreover, nothing in the November 2015 Decision or December 2015 Judgment permanently barred the assertion of claims by Non-Ignition Switch Post-Closing Accident Plaintiffs.

### E. Non-Ignition Switch Plaintiffs (Both Economic Loss And Personal Injury) Can Assert Independent Claims.

New GM contends that the Non-Ignition Switch Plaintiffs cannot assert Independent Claims under the November 2015 Decision and December 2015 Judgment. See New GM Br. 8. The Non-Ignition Switch Plaintiffs are not bound by those rulings. Rather, the Second Circuit Opinion governs this issue and provides that the Non-Ignition Switch Plaintiffs are free to assert Independent Claims. See Elliott, 829 F.3d at 154-57; infra Section III.A. Moreover, Non-Ignition Switch Plaintiffs may assert Independent Claims under the November 2015 Decision and December 2015 Judgment now that they have demonstrated a due process violation as future claimants. See infra Section III.B. They may also seek punitive damages in connection with their Independent Claims. Finally, whether Non-Ignition Switch Plaintiffs may assert successor liability claims is not a 2016 Threshold Issue and this entry in New GM's chart should be disregarded. See New GM Br. 8. Nothing in the November 2015 Decision or December 2015 Judgment—which did not discuss successor liability claims—provides otherwise or waives the Non-Ignition Switch Plaintiffs' due process arguments. See infra Section III.B.

### F. Used Car Purchasers (Other Than Ignition Switch Plaintiffs) Are Outside The Scope Of The Sale Order.

New GM contends that Used Car Purchasers (other than Ignition Switch Plaintiffs) have "no greater rights than their sellers" under the April 2015 Decision. See New GM Br. 8. However, the Second Circuit clearly held that the claims of any Used Car Purchasers are outside the scope of the Sale Order. See Elliott, 829 F.3d at 157-58; infra Section V. Accordingly, the Sale Order in no way restricts the claims of Used Car Purchasers (or the relief available on those claims), regardless of the type of defect in the vehicle.

8

## II.  __New GM Repeatedly Misstates The Factual And Legal Background__.

New GM argues that (i) the liability limitations in its private agreement with Old GM override due process violations as if those violations had not occurred; and (ii) despite the clear and unqualified Second Circuit Opinion to the contrary, it was prospectively exonerated from its own post-closing wrongful conduct.  New GM offers no support for these erroneous contentions.

Lacking support, New GM instead provides the Court with incomplete quotes or omits language necessary to properly contextualize the question.  For example, New GM suggests in an abbreviated quote from the May 2015 Decision that the September 2015 Scheduling Order unambiguously signaled to the relatively few Non-Ignition Switch Post-Closing Accident Plaintiffs served with that order that some terminating event was imminent:  the "time to come to closure . . . ."  New GM Br. 13.  New GM omits the following preceding language:

> As both sides recognize, after New GM filed the Motion to Enforce, still another category of Plaintiffs came into the picture—the "Non-Ignition Switch Plaintiffs." Though New GM brought still another motion—a third one—to enforce the Sale Order with respect to the Non-Ignition Switch Plaintiffs, this third motion could not easily be melded into the earlier stipulation and briefing schedule.  Thus it was deferred pending the determination of the issues addressed in the Decision.

> The Non-Ignition Switch Plaintiffs' claims remain stayed, and properly so; those Plaintiffs have not shown yet, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of a due process violation with respect to them.  And unless and until they do so, the provisions of the Sale Order, including its injunctive provisions remain in effect.  Similar considerations (also mootness points) may apply with respect to the allowance of late Non-Ignition Switch Plaintiffs' claims.

> Yet, as Designated Counsel properly observe, the Non-Ignition Switch Plaintiffs are still entitled to a fair opportunity to be heard in this Court as to whether there are any reasons to excuse them from the Sale Order, or the Court's mootness conclusions with respect to tapping GUC Trust Assets. The Decision will be *stare decisis* for Non-Ignition Switch Plaintiffs (subject to the usual right of any litigant to show that a judicial opinion is distinguishable) but it will not be *res judicata*.

In re Motors Liquidation Co., 531 B.R. 354, 360 (Bankr. S.D.N.Y. 2015).[6]

The floating "come to closure" quote New GM plucked out of the May 2015 Decision is misleading. First, New GM does not clarify that the discussion only refers to economic loss parties, because, at this time in the case, the defined term "Non-Ignition Switch Plaintiffs" was limited to economic loss plaintiffs.[7] Second, the Court's reference to the third Motion to Enforce (which New GM omits) makes it clear that the discussion is confined to economic loss plaintiffs asserting Pre-Closing claims, who were the only subjects of the third Motion to Enforce.[8] Third, when taken in context, the full quote makes clear that the Bankruptcy Court is talking about *Pre*-Closing claims, not *Post*-Closing Claims. Hence, the references to "known claimants at the time of the 363 Sale" and to claims against the GUC Trust. Taken together, the omissions create the misimpression that the Non-Ignition Switch Post-Closing Accident Plaintiffs were at the forefront of events going back to May 2015 and somehow participants in or active observers of the ongoing proceedings in the Bankruptcy Court. This is simply not the case. Until June of 2016, no Motion to Enforce ever addressed the Independent Claims or other claims of the Non-Ignition Switch Post-Closing Accident Plaintiffs.

Fourth, New GM neglects to mention that the portion of the May 2015 Decision it cites was vacated by the Second Circuit as to all defects. See Elliott, 829 F.3d at 166 ("As to claims based in non-ignition switch defects, we vacate the bankruptcy court's decision to enjoin those

---

[6]  The May 2015 Decision goes on to provide that claims will not be dismissed with or without prejudice but merely stayed. See id. at 357-58. Indeed, as discussed in Plaintiffs' Opening Brief, there is nothing in the November 2015 Decision or December 2015 Judgment that permanently bars any claims. See Plaintiffs' Br. 44-45. At most, claims continued to be stayed by the Sale Order until plaintiffs are given an opportunity to brief the issues that affected them.

[7]  The May 2015 Decision uses the defined terms from the April 2015 Decision.

[8]  See In re Motors Liquidation Co., 529 B.R. 510, 539 (Bankr. S.D.N.Y. 2015) ("In August 2014, New GM filed similar motions to enforce the Sale Order against the Pre–Closing Accident Plaintiffs and the Non–Ignition Switch Plaintiffs, though the latter is on hold pending the rulings here."), aff'd in part, vacated in part, rev'd in part sub nom. Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.), 829 F.3d 135 (2d Cir. 2016).

claims, and remand for further proceedings consistent with this opinion.") (internal citation omitted).  Thus, the April 2015 Decision/June 2015 Judgment and the May 2015 Decision are not stare decisis or res judicata as to other defects.

New GM wrongly decries the so-called "failure" of the Non-Ignition Switch Post-Closing Plaintiffs to appeal from the April 2015 Decision/June 2015 Judgment and/or the November 2015 Decision/December 2015 Judgment.  The briefing in Spring 2015 (addressing the 2014 Threshold Issues) did not involve the Non-Ignition Switch Post-Closing Accident Plaintiffs and no motion to enforce had yet been filed against them; and the briefing in Fall 2015 (established by the September 2015 Scheduling Order) was flawed and misleading and therefore ineffective to either compel the appearance of the few who were served or bind those that were not served.

New GM also argues that the Second Circuit's ruling on Independent Claims is limited to the Peller Plaintiffs.  This is not correct.  The expansive language in the Second Circuit Opinion and the Court of Appeals' clear distinction between a "bankruptcy claim" against the debtor that falls under the scope of Section 363, on the one hand, and a nonbankruptcy claim against a non-debtor such as the Independent Claims against New GM, on the other hand, demonstrates that the Second Circuit was making a fundamental point about subject matter jurisdiction and the permissible scope of a sale free and clear.[9]  See Elliott, 829 F.3d at 155-58 ("[I]ndependent claims do not meet the Code's limitation on claims. . . . These sorts of claims are based on New GM's *post*-petition conduct, and are not claims that are based on a right to payment that arose before the filing of [the] petition or that are based on a pre-petition conduct.  Thus, these claims

---

[9]    Bankruptcy Code Section 101(10) defines a "creditor" as an entity holding a claim against the debtor that arose before the order for relief.  Independent Claims against the 363 purchaser are neither "claims against the debtor," nor do they arise before the petition date.  Thus, as held by the Second Circuit, Independent Claims are not "bankruptcy claims."

are outside the scope of the Sale Order's 'free and clear' provision.").[10]

In addition, the Second Circuit unequivocally vacated "the decision to enforce the Sale Order as to claims relating to other defects." Id. at 170. This means all Independent Claims are permitted, regardless of the defect on which such claim is based. Insofar as New GM argues that the Bankruptcy Court only permitted Independent Claims related to the Ignition Switch Defect, New GM's argument did not survive the Second Circuit Opinion.

New GM refers to the August 2015 Case Management Order and suggests all parties had an opportunity to provide input and raise and identify issues for resolution. See New GM Br. 17. What New GM omits is that there were no Non-Ignition Switch Post-Closing Accident Plaintiffs involved in those proceedings, no motion to enforce had yet been filed against any of the Non-Ignition Switch Post-Closing Plaintiffs, and no so-called "Designated Counsel" was acting for the Non-Ignition Switch Post-Closing Accident Plaintiffs.[11] Whatever the effect of the September 2015 Scheduling Order, the August 19 Case Management Order was merely a non-substantive predicate step to the issuance of the September 2015 Scheduling Order and had no effect on the absent and uninformed Non-Ignition Switch Post-Closing Accident Plaintiffs.[12] As explained in the Plaintiffs' Opening Brief and below, the briefing in the Fall of 2015 simply did

---

[10]    Other courts have already adopted the Second Circuit's ruling on Independent Claims and have held that independent claims against the purchaser of a debtor's assets for its own post-sale conduct (including punitive damages for such claims) are outside the scope of a bankruptcy court's jurisdiction. See, e.g., Rodriguez v. FCA US LLC, Case No. 16-cv-05083-BLF, 2017 WL 278540, at *5 (N.D. Cal. Jan. 23, 2017); Mathias v. Fiat Chrysler Autos., NV, Case No. 5:16-cv-01185-EJD, 2016 WL 5109967, at *4 (N.D. Cal. Sept. 21, 2016).

[11]    So there is no confusion, Goodwin Procter's role in these proceedings has been carefully identified at each step of the process and in each pleading it has filed. Goodwin Procter did not represent the Non-Ignition Switch Post-Closing Accident Plaintiffs in the Spring or Fall 2015 briefing.

[12]    It is noteworthy that none of the complaints listed in the exhibits to the June 2015 Judgment related to personal injury or wrongful death claims concerning Post-Closing accidents or to Non-Ignition Switch personal injury or wrongful death claims. The issue of Independent Claims for Non-Ignition Switch Post-Closing Accident Plaintiffs was not presaged for the affected parties at any step of the proceedings. Yet, New GM invokes "law of the case" as to an issue that was not raised in the August 19 Case Management Order or the September 2015 Scheduling Order, not briefed in the Fall 2015 briefing, and not discussed in the November 2015 Decision.

not cover the Non-Ignition Switch Post-Closing Accident Plaintiffs' claims.

## III.    Threshold Issue One.

In the context of (a) the April 2015 Decision / June 2015 Judgment; and (b) the November 2015 Decision / December 2015 Judgment, "Ignition Switch Plaintiffs" are only those plaintiffs that are asserting claims against New GM based on an "Ignition Switch" in a "Subject Vehicle." However, it is not the case that all other plaintiffs are "Non-Ignition Switch Plaintiffs," which is a defined term in the June 2015 Judgment and the December 2015 Judgment.[13] Accordingly, plaintiffs who have not commenced a lawsuit asserting economic losses against New GM based on an alleged defect in an Old GM vehicle (*e.g.*, the Takata MDL Action Plaintiffs), are neither Ignition Switch Plaintiffs nor Non-Ignition Switch Plaintiffs as those terms are defined in the Court's prior rulings.[14]

## IV.    Threshold Issue Two: Part One.[15]

### A.    Non-Ignition Switch Plaintiffs (Both Economic Loss And Personal Injury) Are Entitled To The Benefit Of The Second Circuit Opinion.

New GM somehow only mentions the controlling Second Circuit Opinion on

---

[13]    The judgments define "**Non-Ignition Switch Plaintiffs**" as "plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM Vehicle" (as herein defined). June 2015 Judgment at n. 1, subsection (v); December 2015 Judgment at n. 1, subsection (ii).

[14]    New GM's opening brief erroneously omits the "commenced a lawsuit against New GM" requirement in its definition of "Non-Ignition Switch Plaintiffs." New GM Br. 2 n. 6. New GM's reference to the Non-Ignition Switch Plaintiffs Motion to Enforce is puzzling since it certainly does not support a broad reading of "Non-Ignition Switch Plaintiffs." New GM's motion was limited to four Non-Ignition Switch Plaintiffs identified in Schedule 1 attached to the motion. See Non-Ignition Switch Plaintiffs Motion to Enforce at 6.

[15]    "Are Non-Ignition Switch Plaintiffs able to assert Independent Claims against New GM based solely on New GM's conduct because (a) the Opinion permits such claims to be asserted, and/or (b) the Sale Order cannot bar Post-Closing Accident Plaintiffs in non-Subject Vehicles from asserting such claims, and/or (c) the Post-Closing Accident Plaintiffs in non-Subject Vehicles are not bound by the November 2015 Decision / December 2015 Judgment? or Are Non-Ignition Switch Plaintiffs barred from asserting Independent Claims against New GM either because (a) other than those plaintiffs represented by Mr. Peller in the *Elliott*, *Sesay* and *Bledsoe* cases that appealed the April 2015 Decision/June 2015 Judgment, they did not appeal the April 2015 Decision/June 2015 Judgment to the Second Circuit, and therefore the Opinion does not apply to them, and/or (b) they did not appeal the November 2015 Decision/December 2015 Judgment and/or the Opinion did not affect the rulings in the November 2015 Decision/December 2015 Judgment?" Order to Show Cause at p. 2 ¶ 2.

Independent Claims once in its brief, errantly contracting it to the following: "Non-Ignition Switch Plaintiffs (*i.e.*, the Peller Plaintiffs) may assert valid Independent Claims . . . ." New GM Br. 16. In fact, the Second Circuit Opinion held that "[independent] claims are outside the scope of the Sale Order's 'free and clear' provision" and, thus, "could not be enjoined by enforcing the Sale Order." Elliott, 829 F.3d at 154, 157. The Second Circuit defined the term "Independent Claims" as "claims based on New GM's own post-closing wrongful conduct"—a definition that does not depend on the stripe of vehicle or claimant. See id. at 157. Nothing in the Second Circuit Opinion regarding Independent Claims limits the holding to a specific type of plaintiff. See id. at 154-58.[16] Thus, applying a plain meaning interpretation of the Second Circuit Opinion, all Independent Claims fall outside the scope of the Sale Order, including any and all of the Non-Ignition Switch Plaintiffs' Independent Claims.[17]

New GM contends that Non-Ignition Switch Plaintiffs (other than the Peller Plaintiffs) "should not be permitted to invoke the Second Circuit's ruling for their benefit, including the references in the Opinion to Independent Claims," because they did not appeal the April 2015 Decision and June 2015 Judgment. See New GM Br. 38.

As an initial matter, New GM bases this contention on the erroneous assertion that the statements of issues and briefs "did not include any issues related to Non-Ignition Switch Plaintiffs." See New GM Br. 13, 38. The Ignition Switch Plaintiffs and clients represented by Gary Peller identified issues on appeal relating to all plaintiffs, regardless of the type of defect in their vehicles, including whether the Bankruptcy Court erred "in holding that the Sale Order may

---

[16]    The Second Circuit used a separate definition of the Peller Plaintiffs as a convention because only Gary Peller challenged on appeal Judge Gerber's jurisdiction to interpret his own orders. This challenge required the Second Circuit to single out the Peller Plaintiffs for its discussion of subject matter jurisdiction. See id. at 152-54. This definition does not appear in connection with the Second Circuit's discussion of Independent Claims.

[17]    This holding must be adhered to on remand under the mandate rule. See Plaintiffs Br. 19-20.

be enforced so as to enjoin" Independent Claims.[18]  This issue was addressed in the Second

Circuit briefs and New GM had every opportunity to defend its position that the Non-Ignition

Switch Plaintiffs should be enjoined from asserting Independent Claims.[19]

In any event, New GM supports its view that nonappealing parties cannot benefit from an

appellate court's reversal by misleadingly providing an incomplete quote from Hegger v. Green.

See New GM Br. 37.  This quote states in full: "Ordinarily, a nonappealing party will not benefit

from a reversal or modification of a judgment in favor of an appealing party, *unless the reversal*

*'wipes out all basis for recovery against a non-appealing, as well as against an appealing*

*[party]*' . . . ."  Hegger v. Green, 646 F.2d 22, 30 (2d Cir. 1981) (emphasis added).  Here, the

Second Circuit Opinion clearly wipes out any basis to sustain a bar of Independent Claims.

Hegger supports this conclusion.  The Second Circuit first applied the general rule,

holding that the nonappealing party remained liable for negligence because the appellate court's

opinion did not render the grounds for that ruling invalid.  See id.  Then it applied the exception,

reversing an award against the nonappealing party for loss of consortium because the appellate

court held that such damages were unavailable as a matter of law, which "'wipe[d] out' the

plaintiff's basis of recovery . . . ."  See id.[20]

---

[18]    See *Appellants' Statement of Issues on Appeal and Amended Designation of Items to be Included in the Record on Appeal*, ¶1, dated July 14, 2015 [ECF No. 13299]; *Elliott Plaintiffs/Appellants' Statement of the Issues and Designation of Items to be Included in the Record on Appeal*, ¶¶ 1-3, dated June 15, 2015 [ECF No. 13207].

[19]    See, e.g., Br. for Appellant Ignition Switch Plaintiffs, Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Nov. 16, 2015) (ECF No. 235), at 39-44 (arguing that the Independent Claims of any plaintiff cannot be enjoined by the Sale Order).  Thus, the cases cited by New GM on forfeiture of arguments, see New GM Br. 37-38, are inapt because they involve arguments that were not raised or not sufficiently argued in briefs.  See Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 600 F.3d 135, 147 (2d Cir. 2010) ("**Manville IV**") (party who participated in first round of appeals forfeited argument by raising it for the first time on remand); Norton v. Sam's Club, 145 F.3d 114, 117-18 (2d Cir. 1998) (party who referenced a legal argument without sufficiently arguing it in his brief forfeited that argument).  Moreover, as discussed below, the Non-Ignition Switch Plaintiffs and Post-Closing Accident Plaintiffs had no need to appeal here.

[20]    See also Barnett v. Jaspan (In re Barnett), 124 F.2d 1005, 1008-09 (2d Cir. 1942) (ordering the reversal of an order against nonappealing parties where, had those parties appealed, the court would have held the order

The exception permitting nonappealing parties to obtain the benefit of a reversal on appeal is plainly applicable here. The Second Circuit Opinion wiped out all bases for enjoining *any* Independent Claims and rendered any ruling barring Independent Claims equally erroneous as to the appealing parties and all Non-Ignition Switch Plaintiffs. See Elliott, 829 F.3d at 154-58. Non-Ignition Switch Plaintiffs, therefore, should obtain the benefit of the Second Circuit Opinion on Independent Claims. See Plaintiffs Br. 20-23.

The remaining authorities cited by New GM do not dictate a contrary outcome. See New GM Br. 37-38. Two opinions found that the exception permitting a nonappealing party to obtain the benefit of an appellate court's reversal of a judgment exists, but was inapplicable to the facts of the case. See Bhd. of Maint. Way Emps. v. St. Johnsbury & Lamoille Cty. R.R./M.P.S. Assocs., 806 F.2d 14, 16 (2d Cir. 1986) (holding that the rule permitting nonappealing party to benefit from relief awarded to an appealing party did not apply where nonappealing party was seeking relief against a defendant who was not a party to the appeal); In re Taylor, 655 F.3d 274, 287 (3d Cir. 2011) (holding that nonappealing party could not benefit from reversal on appeal because whether nonappealing party engaged in conduct justifying the imposition of sanctions under Bankruptcy Rule 9011 was "a question analytically distinct" from whether appealing party violated Bankruptcy Rule 9011). Here, New GM was a party to the appeal and the question of whether Independent Claims fall outside the scope of the Sale Order is analytically identical for all Plaintiffs.

In a third opinion, Federated Dep't Stores, Inc. v. Moitie, seven parallel antitrust actions were assigned to the same federal judge and dismissed. See Federated Dep't Stores, Inc. v.

---

erroneous as to them as well); Bank of China, N.Y. Branch v. NBM L.L.C., No. 01 Civ. 0815 (DC), 2004 WL 1907308, at *4 (S.D.N.Y. Aug. 26, 2004) (vacating judgment against nonappealing defendants where, under the Second Circuit's ruling that the district court's instructions to the jury were erroneous, "the [jury] instruction was erroneous for all defendants and not just the appealing defendants"), aff'd sub nom. Bank of China, N.Y. Branch v. Bank of China, H.K. Branch, 243 Fed. App'x 652 (2d Cir. 2007).

16

<u>Moitie</u>, 452 U.S. 394, 395-96 (1981).  Five plaintiffs appealed while two plaintiffs refiled in state court, after which their actions were removed to federal court and dismissed on res judicata grounds.  <u>See</u> <u>id.</u> at 396.  Thereafter, the five appealing plaintiffs' actions were reversed on appeal and remanded to consider the impact of a new Supreme Court opinion which may have affected their rights.  <u>See</u> <u>id.</u> at 397.  The Supreme Court held that the two parties who made the "calculated choice" to refile in state court rather than appeal remained bound by res judicata in the interest of finality.  <u>See</u> <u>id.</u> at 399-402.

Here, the Non-Ignition Switch Plaintiffs did not file a second suit or otherwise make a calculated decision not to appeal.  As discussed above, issues related to Non-Ignition Switch Plaintiffs were raised and addressed on appeal.  Moreover, Non-Ignition Switch Plaintiffs (*i.e.*, those asserting economic loss claims) had no need to appeal the April 2015 Decision and June 2015 Judgment because issues related to these plaintiffs had been deferred.[21]  Further, the Bankruptcy Court made clear that these decisions would not be res judicata to the Non-Ignition Switch Plaintiffs and that any reversal on appeal would inure to the benefit of Non-Ignition Switch Plaintiffs.[22]  With respect to Post-Closing Accident Plaintiffs, they had no need to appeal because they were not parties to the proceedings, no motion to enforce had been filed against them, and the decisions did not address them.

The final case cited by New GM, <u>Ackermann v. United States</u>, does not involve a nonappealing party seeking to benefit from a reversal in favor of an appealing party.  <u>See</u> <u>Ackermann v. United States</u>, 340 U.S. 193, 196-202 (1950) (determining whether party was entitled to relief from judgment under Rule 60(b)(1) or 60(b)(6) on the basis that adverse party advised party not to pursue an appeal).

---

[21]    <u>See</u> <u>In re Motors Liquidation Co.</u>, 529 B.R. at 523.

[22]    <u>See</u> <u>In re Motors Liquidation Co.</u>, 531 B.R. at 360; June 2015 Judgment ¶ 13(e).

Thus, all Non-Ignition Switch Plaintiffs are entitled to the benefit of the Second Circuit

Opinion on Independent Claims, regardless of whether they appealed the April 2015 Decision

and June 2015 Judgment.

**B.    The November 2015 Decision And December 2015 Judgment Do
Not Prevent The Non-Ignition Switch Plaintiffs (Both Economic
Loss And Personal Injury) From Asserting Independent Claims.**

New GM contends that the Non-Ignition Switch Plaintiffs are bound by the November

2015 Decision and December 2015 Judgment under the doctrine of res judicata.  <u>See</u> New GM

Br. 33-34.  In New GM's view, these decisions bar Non-Ignition Switch Plaintiffs from asserting

Independent Claims.  <u>See</u> <u>id.</u> at 8.

First, res judicata is not applicable here to bar Non-Ignition Switch Plaintiffs from

asserting Independent Claims.  The doctrine of res judicata provides that a "final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that were or

could have been raised in that action."  <u>Maharaj v. Bankamerica Corp.</u>, 128 F.3d 94, 97 (2d Cir.

1997).

Here, the proceedings leading to the November 2015 Judgment and December 2015

Decision arose from procedures set forth in the June 2015 Judgment to determine whether claims

against New GM were appropriately stayed or should be struck (without prejudice) as barred

under the Sale Order and April 2015 Decision.[23]  The June 2015 Judgment also provided that, "if

the [April 2015] Decision and [June 2015] Judgment are reversed on appeal," such that any

claims or allegations previously stricken or dismissed could be pursued, such claims "shall be

reinstated . . . ."  June 2015 Judgment ¶ 13(e).  Thus, the June 2015 Judgment envisioned that the

Non-Ignition Switch Plaintiffs could obtain the benefit of the Second Circuit Opinion, and

---

[23]    <u>See</u> June 2015 Judgment ¶¶ 7-13; August 19 Case Management Order; September 2015 Scheduling Order at 1;
<u>see also</u> June 2015 Judgment ¶ 18 (providing that any stayed actions be dismissed <u>without</u> prejudice).

reinstate and pursue their Independent Claims.

In addition, the November 2015 Decision and December 2015 Judgment left open the possibility of Non-Ignition Switch Plaintiffs obtaining relief from the Sale Order on due process grounds. Specifically, in the November 2015 Decision, the Bankruptcy Court noted that Non-Ignition Switch Plaintiffs had not yet shown a due process violation and adhered to its ruling in the May 2015 Decision that their claims were stayed under the Sale Order unless and until they demonstrate a due process violation. See In re Motors Liquidation Co., 541 B.R. at 130 n.70.[24]

By contrast, none of the cases cited by New GM, see New GM Br. 33-34, involve a ruling that left an issue open for determination or a judgment providing that claims could be reinstated. See Travelers Indem. Co. v. Bailey, 557 U.S. 137, 152-54 (2009) (explaining that parties who were bound to orders that became final on direct review could not, years later, challenge the bankruptcy court's subject-matter jurisdiction to enter the orders); Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 600 F.3d 190, 193-95 & n.6, 197-200 (2d Cir. 2010) (affirming that plaintiff was precluded from pursuing new claims related to the same subject matter as prior action after all matters in prior action had been resolved, final judgment had been entered, and an appeal had concluded without remand); Giannone v. York Tape & Label, Inc., 548 F.3d 191, 192, 194 (2d Cir. 2008) (per curiam) (affirming decision precluding plaintiff, who previously obtained declaratory and injunctive relief, from seeking additional damages relief for new claims arising from the same facts as the earlier action).

Second, New GM asserts that the Non-Ignition Switch Plaintiffs waived their due process arguments in connection with the November 2015 Decision and December 2015 Judgment. See

---

[24] In this limited holding, the Bankruptcy Court did not consider the merits of Non-Ignition Switch Plaintiffs' Independent Claims or rule that they "had not alleged valid Independent Claims," contrary to New GM's contentions. See New GM Br. 20, 33.

New GM Br. 39-41. This assertion lacks merit.

Waiver is the "intentional relinquishment of a known right or privilege." Morris v. N.Y.C. Emps. Ret. Sys., 129 F. Supp. 2d 599, 608 (S.D.N.Y. 2001) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "'[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights," such as due process rights. Rivera v. Marcus, 696 F.2d 1016, 1026 (2d Cir. 1982) (quoting Johnson, 304 U.S. at 464). That Non-Ignition Switch Plaintiffs did not present evidence of a due process violation in connection with the November 2015 Decision and December 2015 Judgment is unremarkable. Whether the Non-Ignition Switch Plaintiffs suffered a due process violation was not an issue for briefing in the proceedings leading up to the November 2015 Decision and December 2015 Judgment. See September 2015 Scheduling Order.[25] Compliance with a briefing schedule identifying specific issues to be addressed can hardly be understood as the intentional relinquishment of the right to assert a due process violation.[26]

The cases New GM cites fail to support its contention that the Non-Ignition Switch Plaintiffs' due process arguments have been waived. See New GM Br. 40-41. Two of New GM's cases do not even concern waiver. See In re Edwards, 962 F.2d 641, 645-46 (7th Cir. 1992) (holding that sale order was not void even in the absence of notice to lienholder); Hunt v.

---

[25]    Due process was omitted from the issues to be briefed in the proceedings leading to the November 2015 Decision and December 2015 Judgment even though New GM specifically requested that this briefing include a requirement for the Non-Ignition Switch Plaintiffs to explain "how and when they intend to establish any due process violation arising from the 363 Sale." See Letter in Response to Case Management Order, dated August 19, 2015, dated Aug. 26, 2015 [ECF No. 13390], ¶ 6. In addition, there had been no discovery with respect to Non-Ignition Switch Plaintiffs. See Scheduling Order Regarding Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce The Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions), at 2, dated Sept. 15, 2014 [ECF No. 12898] (ordering that no discovery take place "until further order of this Court"). Thus, Non-Ignition Switch Plaintiffs had no reason to believe that the failure to raise a due process argument then would operate as a waiver.

[26]    To the extent that New GM is arguing that Non-Ignition Switch Plaintiffs have waived their due process arguments related to their successor liability claims, see New GM Br. 8, 41, this argument is not a 2016 Threshold Issue and should be found premature. The Non-Ignition Switch Plaintiffs reserve all rights to respond to this baseless argument at the appropriate time.

Mem'l Bldg., LLC (In re Athanasios III, LLC), No. 2:11CV994 DAK, 2013 WL 786445, at *6

(D. Utah Mar. 1, 2013) (holding that creditors without a property interest did not suffer a due

process violation). Other cases cited by New GM are factually distinguishable and support the

conventional proposition that parties who had notice and an opportunity to be heard at a

confirmation hearing are bound by the terms of the confirmation order. See In re Fabric Tree,

426 F. Supp. 872, 878 (S.D.N.Y. 1977) (holding that party who raised objections at confirmation

hearing, but did not assert a due process violation, waived its due process objection to

confirmation order); Finova Capital Corp. v. Larson Pharmacy Inc. (In re Optical Techs.), 425

F.3d 1294, 1301 (11th Cir. 2005) (holding that objections to the terms of the plan or

confirmation order were deemed waived by party who received actual notice of the plan and

disclosure statement but failed to object to confirmation); In re Ferrante, 195 B.R. 990, 993

(Bankr. N.D.N.Y. 1996) (holding that creditor was bound by the terms of the plan when it

received notice of the confirmation hearing and an opportunity to be heard, without any mention

of waiver).

In the final case New GM cites, Manville IV, the Second Circuit was required to adhere

to the Supreme Court's instruction on remand to consider preserved objections. See Manville

IV, 600 F.3d at 147. Thus, the Second Circuit was precluded from reaching the merits of

whether certain plaintiffs suffered a due process violation when those plaintiffs had not raised

this objection in the first round of appeals. See id. Here, Non-Ignition Switch Plaintiffs have not

failed to press the due process violation nor has any court instructed that these plaintiffs'

argument not be considered.

Absent such an instruction, a court may consider arguments raised for the first time on

appeal or on remand "to avoid a manifest injustice or where the argument presents a question of

law and there is no need for additional fact-finding." Sniado v. Bank Austria AG, 378 F.3d 210,

213 (2d Cir. 2004). At the very least, a determination that the Non-Ignition Switch Plaintiffs, as

future claimants, can assert Independent Claims as a matter of due process is a question of law

that can be determined without additional fact-finding, militating in favor of the Bankruptcy

Court deciding it here, if necessary.

In sum, the Non-Ignition Switch Plaintiffs have not waived and are not otherwise

precluded from raising due process arguments. As amply demonstrated in the Plaintiffs'

Opening Brief, the Non-Ignition Switch Plaintiffs held future claims as of the date of the Sale

Order and had no notice that the Sale Order would purportedly bar their right to sue New GM for

its future wrongful conduct. See Plaintiffs Br. 23-27. Consequently, the Non-Ignition Switch

Plaintiffs cannot be bound by any aspect of the Sale Order that purports to limit their ability to

pursue Independent Claims as a matter of due process. See id.[27]

Third, assuming, *arguendo*, that the doctrine of res judicata were applicable and the

November 2015 Decision and December 2015 Judgment could be interpreted as barring the Non-

Ignition Switch Plaintiffs' Independent Claims, Rule 60(b) relief would be appropriate. See

Plaintiffs Br. 30-35.

Thus, the November 2015 Decision and December 2015 Judgment do not prevent the

Non-Ignition Switch Plaintiffs from asserting Independent Claims.

### C.    The Non-Ignition Switch Post-Closing Accident Plaintiffs Are Not Bound By The November 2015 Decision Or December 2015 Judgment.

New GM has built its argument about Independent Claims on a rotten foundation because

---

[27] In addition, Non-Ignition Switch Plaintiffs should be permitted to pursue Independent Claims because shielding New GM (a non-debtor) from its own post-sale tortious conduct towards non-debtor plaintiffs is beyond the Bankruptcy Court's subject matter jurisdiction. See Plaintiffs Br. 27-29; In re Residential Capital, LLC, 512 B.R. 179, 188 (Bankr. S.D.N.Y. 2014) ("[A] bankruptcy court only has jurisdiction to enjoin third party non-debtor claims that directly affect the *res* of the bankruptcy estate." (quoting Manville IV, 600 F.3d at 146)).

it ignores the Second Circuit's broad ruling that Independent Claims against the purchaser in a 363 sale cannot be barred in a free and clear sale. See Elliott, 829 F.3d at 155-58. New GM also ignores the common sense notion that future post-sale conduct by a 363 purchaser cannot be prospectively exonerated as part of a 363 sale. The house of cards that New GM has built falls under its own weight because its baseline argument that Independent Claims of Non-Ignition Switch Post-Closing Accident Plaintiffs are barred by res judicata and law of the case is demonstrably wrong.

As a threshold matter, the doctrine of res judicata only applies to *parties to litigation* after their rights and claims have been adjudicated. See Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (essential element of res judicata is that "the previous action involved the [parties] or those in privity with them"). None of the Non-Ignition Switch Post-Closing Accident Plaintiffs were made "parties" to the Fall 2015 briefing scheduled by the September 2015 Scheduling Order. There was no motion to enforce or similar proceeding that preceded issuance of the September 2015 Scheduling Order. Nor was there an adversary proceeding, summons, or any other recognized form of process that compelled the attendance or participation of the Non-Ignition Switch Post-Closing Accident Plaintiffs in the Fall 2015 briefing or that triggered personal jurisdiction over them. For the relatively few who were served with the September 2015 Scheduling Order, the contents of the order were puzzling in terms of the relationship of the scheduling order to their cases. The 2015 Scheduling Order did not use the words "Independent Claims" (even though correspondence accompanying many of the transmittals did, but, seemingly, only to exclude Independent Claims from the proceedings) and did not single out "Non-Ignition Switch Post-Closing Accident Plaintiffs." Instead, the issues catalogued in the 2015 Scheduling Order related to the Bellwether Trials (all of which were Ignition Switch cases),

23

the economic loss class action filed in the MDL, and the enforcement actions by the States of California and Arizona. Several plaintiffs' lawyers wrote to New GM questioning why the September 2015 Scheduling Order was sent to them or asking what relevance the September 2015 Scheduling Order had to their lawsuits. New GM did nothing to help clarify an already confused situation, and rather than explain itself, New GM hid behind a rope-a-dope strategy of sending non-responsive letters and stacks of prior decisions in the GM case to the confused recipients.[28] The situation was not helped by New GM's bankruptcy counsel's letter to many of the recipients indicating that the proposed briefing did not affect pending lawsuits asserting Independent Claims.[29]

At base, New GM argues that litigants denied proper process or a fair opportunity to be heard in the Fall of 2015 are barred by a set of rulings that were issued in proceedings in which they did not participate. Because the Non-Ignition Switch *Post*-Closing Accident Plaintiffs were not parties to the Fall 2015 briefing in any sense of what it means to be a "party" to litigation, res judicata cannot be applied against the relatively few Non-Ignition Switch Post-Closing Accident Plaintiffs that were served with the September 2015 Scheduling Order.[30]

As to the far larger number of Non-Ignition Switch Post-Closing Accident Plaintiffs ***not*** served with the September 2015 Scheduling Order, New GM argues those parties are bound by

---

[28] See, e.g., *Objection by State Court Plaintiffs to Motion by General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Bankruptcy Court's July 5, 2009 Sale Order and Injunction, and the Rulings In Connection Therewith*, filed June 20, 2016 [ECF No. 13642]; *Supplemental Opening Brief By Plaintiffs Christopher Pope and Gwendolyn Pope on the 2016 Threshold Issues*, filed February 27, 2017 [ECF No. 13864].

[29] This was particularly misleading because New GM's counsel did not state in its letters that New GM did not view all Independent Claims the same way or that it was going to contend in the future that there was a difference between Independent Claims relating to the Ignition Switch Defect as opposed to claims for other parts and vehicles.

[30] In addition, there is no specific determination anywhere in the November 2015 Decision/December 2015 Judgment permanently barring the claims of Non-Ignition Switch Post-Closing Accident Plaintiffs.

the November 2015 Decision/December 2015 Judgment by law of the case.[31]  This argument

fails because the November 2015 Decision/December 2015 Judgment did not adjudicate the

rights of the Non-Ignition Switch Post-Closing Accident Plaintiffs to assert Independent Claims.

First, Non-Ignition Switch Post-Closing Accident Plaintiffs are not mentioned in the

November 2015 Decision.  Second, nowhere in the November 2015 Decision are the

Independent Claims of any claimant permanently barred or dismissed with prejudice, let alone

the Independent Claims of the Non-Ignition Switch Post-Closing Accident Plaintiffs.  As

discussed, footnote 70 in the November 2015 Decision merely confirmed the Sale Order was still

in effect as to those economic loss plaintiffs that had not yet proven a due process violation.[32]

Third, for a ruling to be "law of the case" there has to be a ruling to point to, and here

there is not.  See Ancile Inv. Co. v. Archer Daniels Midland Co., No. 08 CV 9492 KMW, 2011

WL 3516128, at *1 (S.D.N.Y. Aug. 3, 2011) ("There has been no ruling on choice of law that

would allow Plaintiff to invoke the law of the case doctrine. . . . 'Actual decision of an issue is

required to establish the law of the case.  Law of the case does not reach a matter that was not

decided.'" (quoting 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 4478 (2d ed. 2011)).  Given the absence of such a ruling, New GM's

incomprehensible position seems to be to request that this Court draw a negative inference from

the failure of absent parties to obtain a positive ruling.

Fourth, New GM's reliance on the December 2015 Judgment is misplaced.  Paragraph 6

of the Judgment solely relates to the question of whether New GM contractually assumed

---

[31]  New GM asserts in its opening brief that it served the September 2015 Scheduling Oder on approximately "150-200" Non-Ignition Switch Plaintiffs (with no explanation for the odd variance), whereas New GM's certificates of service with respect to the Order to Show Cause [ECF Nos. 13804, 13831,13839, and 13850] reflect service on plaintiffs in over 660 lawsuits.

[32]  Notably, the April 2015 Decision/June 2015 Judgment were already on appeal at the time of the Fall 2015 briefing, and the Second Circuit's Opinion subsequently opened up all Independent Claims for all plaintiffs.

liability for punitive damages under Section 2.3(a)(ix) of the Sale Agreement.  This Paragraph does not bar Independent Claims.[33]

Fifth, Paragraph 14 of the December 2015 Judgment merely recites that as of the date of the judgment, the Sale Order continues to bar the ability of the Non-Ignition Switch Post-Closing Accident Plaintiffs to assert Independent Claims against New GM.  This is unremarkable for the reasons that (i) Non-Ignition Switch Post-Closing Accident Plaintiffs had not yet been given the opportunity to brief issues concerning their ability to assert Independent Claims; and (ii) the Second Circuit had not yet ruled.  Because nothing in the November 2015 Decision supports or explains this aspect of the judgment, the text of Paragraph 14 specifically refers back to the Sale Order and the April 2015 Decision/June 2015 Judgment, rather than to the November 2015 Decision.  This is circular reasoning and cannot be used to establish law of the case for the simple reason that Non-Ignition Switch Post-Closing Accident Plaintiffs were not **parties** to any of those earlier proceedings.  There is no dispute that none of the April 2014 Motion to Enforce, the August 2014 Motion to Enforce, or the 2014 Threshold Issues addressed either Post-closing accident cases in general or Post-closing accident cases concerning Non-Ignition Switch defects in particular.  As such, no adverse law of the case was established in the April 2015 Decision/June 2015 Judgment concerning the Independent Claim issue.[34]

To the contrary, the only ruling about Independent Claims that emerged from the April

---

[33]    Moreover, the last two sentences of Paragraph 6 of the December 2015 Judgment and all of Paragraph 7 discussing successor liability have been superseded by the Second Circuit's ruling that the Sale Order's successor liability bar cannot be enforced against any plaintiff asserting an Ignition Switch Defect-related personal injury or wrongful death claim against New GM.  The Second Circuit's ruling is equally applicable to Ignition Switch Pre-Closing and Post-Closing Accident cases for the reason that any due process failure as to Ignition Switch Pre-Closing Accident Plaintiffs would naturally apply in spades to Ignition Switch Post-Closing Accident Plaintiffs, who are, by definition, future claimants that were later harmed by a known defect that was extant at the time of the Sale.

[34]    It goes without saying that as future tort claimants, the Non-Ignition Switch Post-Closing Accident Plaintiffs were not parties notified of the Sale Motion or the Sale Order.

2015 Decision/June 2015 Judgment was the positive ruling that Independent Claims would be permitted for claimants that could show a due process violation at the time of the Sale. See In re Motors Liquidation Co., 529 B.R. at 570; June 2015 Judgment ¶ 4. The June 2015 Judgment left open the opportunity for claimants with claims relating to Non-Ignition Switch defects to assert Independent Claims by proving a due process violation at the time of the Sale. See June 2015 Judgment ¶ 13. However, on appeal, the Second Circuit rejected the Bankruptcy Court's "known versus unknown creditor of Old GM" analytical framework for addressing the viability of Independent Claims. The Court of Appeals held that Independent Claims were not the kind of "bankruptcy claims" the Bankruptcy Court could bar under section 363(f). In its ruling, the Second Circuit implicitly, if not explicitly, rejected the Bankruptcy Court's analytical framework for Independent Claims. Rather than looking to whether the claimant was a known or unknown creditor of Old GM as the Bankruptcy Court had done, the Second Circuit properly brushed aside this analytic as making no sense when looking at a non-debtor's future post-sale conduct. See Elliott, 829 F.3d at 157-58.

It is precisely for these reasons that whatever rulings came out of the briefing set up by the September 2015 Scheduling Order cannot be law of the case for the Independent Claims of Non-Ignition Switch Post-Closing Accident Plaintiffs. Not only had the issue of Independent Claims for Non-Ignition Switch Post-Closing Accident Plaintiffs not been briefed or argued anywhere before the June 2016 Motion to Enforce, but the Second Circuit's outright rejection of the manner in which the Bankruptcy Court had analyzed the Independent Claim issue in the April 2015 Decision pushed the reset button on Independent Claims. The need to show that a particular defect was known to Old GM at the time of the Sale is no longer a predicate to the assertion of an Independent Claim.

27

Likewise, there was no reason or legal compulsion under penalty of res judicata for Non-Ignition Switch Post-Closing Accident Plaintiffs to appeal from the April 2015 Decision/June 2015 Judgment or the November 2015 Decision/December 2015 Judgment. The Non-Ignition Switch Post-Closing Accident Plaintiffs were not **parties** to either proceeding and (regardless of these parties' lack of awareness and participation in the proceedings) there were no adverse rulings in either proceeding that specifically negatively affected their rights.

As to the briefing of the 2014 Threshold issues, there was no pending motion to enforce addressed to the Non-Ignition Switch Post-Closing Accident Plaintiffs at the time of the briefing and, more importantly, none of the 2014 Threshold Issues were addressed to claims asserted by the Non-Ignition Switch Post-Closing Accident Plaintiffs. Nor were these plaintiffs served with any process in connection with the Spring 2015 briefing. By their nature, Independent Claims are Post-Closing claims. The 2014 Threshold Issues briefing and the underlying Motions to Enforce related to Pre-Closing claims asserted by plaintiffs injured before the Sale. If anything, without conceding any awareness of the 2014 Threshold Issues briefing, the sole aspect of the April 2015 Decision that even remotely touched the rights or claims of Non-Ignition Switch Post-Closing Accident Plaintiffs was the positive ruling that the so-called bar against the assertion of Independent Claims could be rendered unenforceable under appropriate circumstances. Therefore, assuming *arguendo* that the Non-Ignition Switch Post-Closing Accident Plaintiffs were even aware of the 2014 Threshold Issues briefing, their standing or need to appeal would have been dubious at best.

As to the briefing under the September 2015 Scheduling Order, that scheduling order (i) was not tethered to a pending adversary proceeding or contested matter; (ii) did not compel the Non-Ignition Switch Post-Closing Accident Plaintiffs to participate in the proceedings or to

appear in the Bankruptcy Court; and (iii) lacked any substance implicating Non-Ignition Switch Post-Closing Accident Plaintiffs' lawsuits or their Independent Claims.    Apart from these failings, the substance of the rulings embodied in the November 2015 Decision/December 2015 Judgment did not on their face impair or bar the Independent Claims asserted against New GM by the Non-Ignition Switch Post-Closing Accident Plaintiffs.    In any event, at the time the September 2015 Scheduling Order was entered, the analytical construct used by the Bankruptcy Court to address Independent Claims was already under attack as part of the appeals from the April 2015 Decision/June 2015 Judgment.    As a practical matter, the already pending appeal also rendered unnecessary any need for the Non-Ignition Switch Post-Closing Accident Plaintiffs to appeal from the November 2015 Decision/December 2015 Judgment.

Finally, to the extent the Non-Ignition Switch Post-Closing Accident Plaintiffs are now required to address subject matter jurisdiction questions or due process questions concerning the Sale Order's ability to bar **future tort claims** against New GM for its **own** post-sale conduct, nothing that has happened in any of the prior briefings would prevent the Non-Ignition Switch Post-Closing Accident Plaintiffs from raising these issues now.[35]

New GM states that the appeal of the Bankruptcy Court's rejection of an Independent Claim brought by specific **Ignition Switch** Pre-Closing Accident Plaintiffs seeking damages from New GM for not recalling the Subject Vehicles during the time period from the Closing of

---

[35]    The Non-Ignition Switch Post-Closing Accident Plaintiffs are future claimants whose personal injury and wrongful death claims against Old GM, and whose Independent Claims against New GM, did not yet exist at the time of the Sale.  Similar to the situation facing Chubb in Manville IV, these claimants would have to have been prescient to be able to predict in July 2009 that a Bankruptcy Court would read the Sale Order in 2015 to bar Independent Claims. Indeed, the Non-Ignition Switch Post-Closing Accident Plaintiffs would need to be more prescient than Chubb was in the Manville case.  Unlike the future claimants here who were not yet creditors of Old GM for their yet to occur accidents, Chubb was already a creditor in its case.  Chubb's contribution claim had already arisen.  In addition, assuming *arguendo* the future claimants here could have been given constitutionally sufficient notice of the Sale (a proposition the Post-Closing Accident Plaintiffs reject), the Sale Notice in this case said nothing about Independent Claims and the Sale Order likewise does not mention Independent Claims or define such claims in so many words.

the Sale through the Bar Date somehow demonstrates that the failure of the **Non-Ignition Switch** Post-Closing Accident Plaintiffs to appeal from the November 2015 Decision/December 2015 Judgment was not a "mere oversight." New GM Br. 34-35, n.58. This argument is illogical and conflates unrelated issues. First, as New GM's counsel knows from its long-time involvement in the case, Goodwin Procter has never been "Designated Counsel" for the Non-Ignition Switch Pre-Closing or Post-Closing Accident Plaintiffs. Such role was confined to Ignition Switch Defect matters. Second, as discussed above, the Non-Ignition Switch Post-Closing Accident Plaintiffs were not properly or effectively "summoned" to the Fall 2015 briefing by the September 2015 Scheduling Order, the Fall 2015 briefing did not address issues relating to the claims of Non-Ignition Switch Post-Closing Accident Plaintiffs, and the rulings contained in the November 2015 Decision/December 2015 Judgment did not address or permanently bar the Independent Claims of the Non-Ignition Switch Post-Closing Accident Plaintiffs or any other Plaintiff. Consequently, Goodwin Procter's appeal for one specific set of Ignition Switch Pre-Closing Accident Plaintiffs has nothing to do with the Non-Ignition Switch Post-Closing Accident Plaintiffs or the absence of an appeal.

At pages 37 to 38 of its opening brief, New GM cites cases about nonappealing *parties*. These cases address the consequences to *parties* that opt to not appeal a ruling issued in a proceeding to which those *parties* have been joined. Regardless of whether a nonappealing party can be deemed to waive its right to benefit from another party's success, the situation of the Non-Ignition Switch Post-Closing Accident Plaintiffs is not analogous to the situations in the cases cited by New GM because these plaintiffs were never intended to be *parties* to the briefing of the 2014 Threshold Issues and were not effectively made *parties* or otherwise compelled to participate as *parties* in the briefing done pursuant to the September 2015 Scheduling Order. For

the same reasons, New GM is incorrect when it describes Non-Ignition Switch Post-Closing Accident Plaintiffs as *parties* that appealed some issues but not others.[36]

At pages 39 to 41 of its opening brief, New GM again conflates disparate issues. The Non-Ignition Switch Post-Closing Accident Plaintiffs have not had prior opportunities or warnings to raise due process issues. Until the Order to Show Cause was issued, the Non-Ignition Switch Post-Closing Accident Plaintiffs had not been given the clear mandate to address Independent Claims or punitive damages. The due process issues New GM refers to date back to the original due process issue that was decided in the April 2015 Decision as part of the 2014 Threshold Issues using Stipulated Facts taken from the Valukas Report. The reason the expedited procedure created by Judge Gerber for the due process issues concerning the *Ignition Switch Defect* was able to work at all was because the parties to the April 2014 Motion to Enforce (with the urging of the Bankruptcy Court) agreed to forego discovery. In the context of the April 2014 and August 2014 Motions to Enforce (which only concerned Pre-Closing Ignition Switch claims), the expedited procedures were made possible by the existence of the Valukas Report. The Valukas Report enabled the parties to the April 2014 and August 2014 Motions to Enforce to litigate the issues of whether (i) the *Ignition Switch Defect* was known to Old GM before the Sale; and (ii) the **Ignition Switch** Pre-Closing Accident Plaintiffs could bring successor liability claims against New GM because they were denied due process at the time that the free and clear sale was approved. No similar report exists for other defects.

The context of the early due process dispute briefed as part of the 2014 Threshold Issues is markedly different from what is being addressed now in the 2016 Threshold Issues for the

---

[36] However, the Second Circuit's precedential ruling on Independent Claims is binding on New GM because it was a party to the proceedings and the ruling is expansive, unrestricted, and directly on point. In addition, the sheer force of the Second Circuit's logic and its anchor to the fundamental issue of the Bankruptcy Court's subject matter jurisdiction cannot be ignored.

Non-Ignition Switch Post-Closing Accident Plaintiffs.  Because the Non-Ignition Switch *Post*-Closing Accident Plaintiffs do not assert claims from *Pre*-Closing Accidents, they are differently situated from the Ignition Switch *Pre*-Closing Accident Plaintiffs whose accidents occurred **before** the Sale.  This makes the due process issues different.

First, for Independent Claims the Second Circuit Opinion eliminated any need for Post-Closing Accident Plaintiffs to first show Old GM knew of the Non-Ignition Switch defect **before** the Sale.  Independent Claims are outside the Bankruptcy Court's subject matter jurisdiction. Second, because the personal injury and wrongful death claims of the Non-Ignition Switch Post-Closing Accident Plaintiffs had not yet arisen at the time of the Sale, these plaintiffs were future tort claimants at the time of the Sale.  In contrast, the Ignition Switch Pre-Closing Accident Plaintiffs were not future claimants at the time of the Sale.  This changes the due process issues from whether the claimant was a known or unknown creditor of Old GM at the time of the Sale to those addressed in cases like Grumman Olson.  Third, because there is no Valukas-style report for the various Non-Ignition Switch defects, it is not fair to say the Non-Ignition Switch Accident Plaintiffs have squandered an opportunity for a ruling on Old GM's knowledge at the time of the Sale.  To the extent that New GM is referring to Non-Ignition Switch Pre-Closing Accident Plaintiffs, discovery regarding those matters remain deferred by the Order to Show Cause.

### D. Plaintiffs Who Did Not Receive The September 2015 Scheduling Order Are Not Bound By The November 2015 Decision Or December 2015 Judgment.

Using selective paraphrasing, New GM attempts to use this Court's recent decision in the Motors Liquidation "Term Loan Litigation" to argue that hundreds of plaintiffs who New GM admits were not given notice of the proceedings that led to the November 2015 Decision and December 2015 Judgment should still be bound by now-invalidated rulings regarding Independent Claims.  A careful reading of the Term Loan Litigation decision shows that New

GM is wrong.  If anything, that decision supports Plaintiffs' claim that they may assert Independent Claim against New GM under the Second Circuit Opinion.

The Term Loan Litigation involved arguments by recently-served defendants in a $1.5 billion avoidance action (the "**Term Loan Lenders**") that the Court's prior orders extending the plaintiff's (the "**Avoidance Action Trust**") time to serve process on them should be retroactively invalidated as improper and violative of their due process rights.  See Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.), 552 B.R. 253, 264 (Bankr. S.D.N.Y. 2016) (the "**Term Loan Litigation Decision**"). Rejecting this argument, this Court held that its prior orders extending the Avoidance Action Trust's time to serve the Term Loan Lenders were permissible under the Federal Rules and Bankruptcy Rules and justified under the circumstances.

Specifically, the extensions of time were granted in order to allow the Avoidance Action Trust and JPMorgan Chase (the agent under the term loan facility) to litigate the threshold issue of whether the Term Loan Lenders' security interests in Old GM's assets were indeed terminated prior to bankruptcy.  Only after the Second Circuit ruled that the Term Loan Lenders were unsecured at the time they were repaid, did this Court allow the extension of time to lapse and require the Avoidance Action Trust to serve its complaints.  See id. at 273 ("[T]he series of orders extending Plaintiff's time to serve the summons and complaint on all defendants other than JPMC was a sensible and rational case management decision.").

The difference between the Term Loan Litigation and this case is obvious.  In the former case, this Court found that departing from its prior order was not justified because (i) there was no intervening change in the law; (ii) no newly discovered evidence; and (iii) no need to correct a clear error of law or to prevent a manifest injustice.  See id. at 274.  Here, of course, there was

a profound intervening legal development when the Second Circuit held that the Sale Order could not bar any Independent Claims.  See Elliott, 829 F.3d at 157-58.

Moreover, the Second Circuit's Independent Claim holding demonstrates that Judge Gerber committed a clear error of law to the extent that he ruled in the November 2015 Decision and December 2015 Judgment that Non-Ignition Switch Plaintiffs' Independent Claims were barred by the Sale Order.  Accordingly, there is significant basis to depart from these prior rulings in order to prevent the manifest injustice of barring Independent Claims by all Non-Ignition Switch Plaintiffs – particularly when, as here, the claimants were not parties to the proceedings that led to the prior erroneous ruling.

New GM also omits key language from the exact paragraph it references in which the Court stated it "agrees with the moving defendants that the prior judgment against JPMC does not have preclusive effect on the defendants that were not brought into the case until after those rulings."  See Term Loan Litigation Decision, 552 B.R. at 275.  This omission is notable because Non-Ignition Switch Plaintiffs who were merely served with the September 2015 Scheduling Order were not properly made parties to the proceedings leading to the November 2015 Decision/December 2015 Judgment.  This is even more true for the hundreds of plaintiffs not served with that order.

Another omission is New GM's failure to note that this Court stated in the same paragraph that "[t]he law of the Circuit binds this Court to the extent that the previously unserved defendants raise the same legal issues that have already been decided in completely unrelated litigation between different parties."  Id. at 275.  New GM ignores this language because it describes the exact result New GM fears:  that this Court will apply the Second Circuit's ruling on Independent Claims to the Non-Ignition Switch Plaintiffs who were not made parties to the

prior proceedings.

## V.    Threshold Issue Two: Part Two.[37]

### A.    This Court Need Not And Should Not Rule On New GM's Meritless Argument That Many Independent Claims Are Retained Liabilities.

New GM ignores that this Court has previously held that whether the Ignition Switch Plaintiffs' Independent Claims are Retained Liabilities is a determination that "can be made by nonbankruptcy courts overseeing such lawsuits . . . ."  December 2015 Judgment ¶ 23; see also In re Motors Liquidation Co., 541 B.R. at 131-32 (holding that whether New GM has "duties under state and federal law" that form the basis for viable Independent Claims are "paradigmatic" nonbankruptcy matters to be determined by the nonbankruptcy courts).  There is no reason (and New GM identifies none) for a different result with respect to adjudication of Non-Ignition Switch Plaintiffs' Independent Claims.

New GM tries to muddy the water by selecting particular complaints out of hundreds and then citing specific allegations as if they are typical of either the particular complaint used or all complaints.  New GM uses this self-serving list to invite this Court to act as a gatekeeper for screening New GM from liability for its own Post-Closing conduct.  The flaw in this approach is made apparent by some of the choices New GM makes in its opening brief.

New GM first contends, without citing any authority in support, that its agreement to comply with the Motor Vehicle Safety Act "cannot form the predicate for plaintiffs' claims against New GM."  New GM Br. 41 (regarding the FACC).  New GM conspicuously fails to address Judge Furman's rulings that the Safety Act *can* form the predicate for Independent

---

[37]    "If Non-Ignition Switch Plaintiffs are able to assert Independent Claims against New GM either in light of the Opinion and/or issues related to subject matter jurisdiction or due process: (i) are such alleged Independent Claims really disguised Assumed Liabilities, or successor liability claims dressed up to look like something else (*i.e.*, Retained Liabilities) and, therefore, cannot be asserted against New GM, and/or (ii) should all determinations with respect to alleged Independent Claims be left to non-bankruptcy judge(s)?"  Order to Show Cause at pp. 2-3 ¶ 2.

Claims.  See, e.g., In re Gen. Motors LLC Ignition Switch Litig., 154 F. Supp. 3d 30, 40-41, 46 (S.D.N.Y. 2015) (holding New GM's obligations under the Safety Act created a relationship with Old GM purchasers giving "rise to a duty to warn" and formed the basis for a claim of negligence *per se*).  Moreover, the Bankruptcy Court previously ruled that whether the covenant to comply with the Safety Act can form the basis of an Independent Claim should be determined by the MDL Court.  See In re Motors Liquidation Co., 541 B.R. at 129 n.67, 131 & n. 72, 136.

New GM points to the duty to warn as a disguised Retained Liability.  See New GM Br. 41-42 (regarding economic loss claims), 46-47 (regarding the Pitterman complaint).  New GM cites to Burton v. Chrysler Group LLC (In re Old Carco LLC), 492 B.R. 392 (Bankr. S.D.N.Y. 2013) to support its assertion.  As already discussed in Plaintiffs' Opening Brief at page 13, the Bankruptcy Court decided in its November 2015 Decision that "Assumed Liabilities" include claims against New GM based upon Old GM's duty to warn.  See In re Motors Liquidation Co., 541 B.R. at 128-29 ("It should be noted, however, that in listing claims that weren't assumed, the Court did not list claims for alleged breaches of a duty to warn . . . .  Violations of any duty to warn could be said to provide further support for any claims for death or personal injury that would be actionable even as classic Product Liabilities Claims.").  In that same decision, the Bankruptcy Court also ruled that claims against New GM based upon the allegation that New GM had breached its own separate duty to warn were Independent Claims that passed through the bankruptcy gate and that the nonbankruptcy trial court should decide whether New GM in fact had a duty to the plaintiff asserting the duty to warn claim.  See id. at 129.[38]

---

[38]  Burton is not a due process case or a personal injury case.  The question addressed by the court in Burton was whether the asserted claims were assumed liabilities under the terms of the Chrysler sale agreement.  The animating principle was the fact there had been prior recalls of similar vehicles in the same Chrysler vehicle line for the same fuel spit-back problem.  Here, there are two issues in play for Non-Ignition Switch Plaintiffs and Post-Closing Accident Plaintiffs: Independent Claims (which have been approved by the Bankruptcy Court and the Court of Appeals); and successor liability claims by future claimants (discussed below).  In any event, this

In an apparent effort to distract the Court from the fact that it already decided the duty to warn issue in the November 2015 Decision, New GM points to a case arising from the Chrysler bankruptcy in which a duty to warn claim against the purchaser of Chrysler's assets failed.  See New GM Br. 42 (citing Holland v. FCA US LLC, Case No 1:15-cv-121, 2015 WL 7196197 (N.D. Ill. Nov. 16, 2016), aff'd, 656 Fed. App'x. 232 (6th Cir. 2016)).  New GM's reliance on this case is completely unwarranted and in fact makes the Plaintiffs' point for them.  Holland v. FCA was a "post-gate" case in which the nonbankruptcy trial court addressed on its merits a duty to warn claim against the purchaser of Chrysler's assets and dismissed those claims.  Thus, Holland v. FCA does not support New GM's contention that duty to warn claims are Retained Liabilities; it supports the Plaintiffs' claim that (as Judge Gerber already decided) duty to warn claims are fair game and can be asserted against New GM in nonbankruptcy forums.  New GM also fails to acknowledge that, after Judge Gerber let the duty to warn issue through the "gate," Judge Furman held that under certain states' laws, New GM did have a duty to warn with respect to the Ignition Switch Defect.  See In re Gen. Motors LLC Ignition Switch Litig., 154 F. Supp. 3d at 37-41 (finding New GM had post-sale duty to warn of the Ignition Switch Defect under Oklahoma law); In re Gen. Motors LLC Ignition Switch Litig., 202 F. Supp. 2d 362, 365-71 (S.D.N.Y. 2016) (same under Virginia law).

The claims raised in Pitterman, also cited by New GM, pass through the gate (as should all such claims).  The question of whether such claims will stand or fall depends upon whether the alleged duty existed and whether it was breached.  These are questions for the nonbankruptcy court.  Likewise, if Pitterman's pleading is deficient, as suggested by New GM, then it should

---

Court went the other way from Burton on duty to warn in the November 2015 Decision and December 2015 Judgment on both the Assumed Liability question and the Independent Claim question when Judge Gerber approved both species of duty to warn claims by Ignition Switch Post-Closing Accident Plaintiffs.  See In re Motors Liquidation Co., 541 B.R. at 128-29.

challenge the pleading in the trial court.

New GM also clings to the discredited notion that claims must fall into one or the other buckets of Assumed Liability or Retained Liability.  To do this, New GM disregards the Second Circuit's holding that Independent Claims are not claims that can be affected under section 363(f) because such claims are not "bankruptcy claims."  See Elliott, 829 F.3d at 157.  New GM posits that, because the Sale Order bars all claims against it other than Assumed Liabilities, any claim against New GM that was not contractually assumed by it must be a Retained Liability.  Taken to its logical conclusion, this means Old GM agreed under the Sale Agreement to be liable for New GM's Post-Closing conduct.[39]

Lastly, New GM selects the Manuel case for discussion.  See New GM Br. 45-46.  New GM challenges Manuel's right to seek punitive damages.  No ruling prohibits punitive damages for Independent Claims.  In fact, the November 2015 Decision and December 2015 Judgment permit punitive damages to be sought for Independent Claims in the Bellwether cases.  See In re Motors Liquidation Co., 541 B.R. at 121-22.[40]

In sum, adjudication of Independent Claims should be left to the nonbankruptcy courts.

---

[39] The Second Circuit expressly recognized there is a third category of claim – the Independent Claim against New GM – that is not an Assumed Liability or a Retained Liability.  Id. at 154 n.20.

[40] Apart from a ruling in the November 2015 Decision and December 2015 Judgment that New GM did not contractually assume punitive damages as among the Assumed Liabilities for Product Liability Claims for Post-Closing Accidents, no ruling prohibits economic loss, personal injury or wrongful death plaintiffs from seeking punitive damages against New GM as the successor to Old GM if the Sale Order is determined to not be binding on those plaintiffs because of a due process failure at the time of the Sale.  The Ignition Switch Plaintiffs all fall into this category because of the due process failures addressed in the April 2015 Decision and the Second Circuit's Opinion.  The Non-Ignition Switch Plaintiffs and Non-Ignition Switch Post-Closing Accident Plaintiffs fall into this category as future tort claimants whose successor liability claims cannot be barred.

## VI.    Threshold Issue Three.[41]

### A.    The Holding In The Second Circuit Opinion That Used
### Car Purchasers May Pursue Claims Against New GM Governs.

New GM contends that the Second Circuit Opinion limits the claims of Used Car Purchasers to claims concerning the Ignition Switch Defect.  There is no such limitation.  New GM ignores the gravamen of the holding that the lack of connection between Used Car Purchasers of any stripe and Old GM, as well Old GM's inability to identify these claimants at the time of the Sale, made these claimants archetypal future claimants whose claims could not be constitutionally barred by the Sale Order.  See Elliott, 829 F.3d at 157-58.  The Second Circuit drives this point home, stating that application of the Sale Order to Used Car Purchasers would be "absurd."  See id. at 157.

Seeking to avoid the Second Circuit Opinion's clear holding that all Used Car Purchasers' claims may proceed, New GM attempts to pick off Non-Ignition Switch Plaintiffs by claiming that the Bankruptcy Court's ruling on Used Car Purchasers in the April 2015 Decision is "law of the case" for those Plaintiffs.  See New GM Br. 47-48.  New GM's efforts must fail because the Second Circuit fully reversed the Bankruptcy Court's ruling on Used Car Purchasers, see Elliott, 829 F.3d at 157-58, and reversed rulings cannot be law of the case.  See Philatelic Found. v. Kaplan, 647 F. Supp. 1344, 1345 (S.D.N.Y. 1986) (holding that lower court ruling that was reversed on appeal was no longer the law of the case).

The Second Circuit's decision permitting the claims of all Used Car Purchasers must be adhered to on remand.  See United States v. Uccio, 940 F.2d 753, 757 (2d Cir. 1991) ("When an appellate court has once decided an issue, the trial court . . . is under a duty to follow the

---

[41] "Is the Opinion's holding that claims held by Used Car Purchasers are not covered by the Sale Order because they had no contact or relationship with Old GM limited to (a) only those parties that appealed the April 2015 Decision/June 2015 Judgment to the Second Circuit, and/or (b) Independent Claims asserted by Used Car Purchasers based solely on New GM conduct?"  Order to Show Cause at p. 3 ¶ 3.

appellate court's ruling on that issue.") (citation omitted).  Here, the Second Circuit explained that assets can only be sold free and clear of "interests," and for claims to be interests, there must be some contact or relationship between the claimant and the debtor.  See Elliott, 829 F.3d at 156.  The Second Circuit ruled that Used Car Purchasers had no relationship with Old GM and, thus, the Sale Order could not cover their claims.  See id. at 157.[42]  Likewise, all Used Car Purchasers, regardless of the type of defect in an individual's vehicle, had no relationship with Old GM.  Thus, application of the Second Circuit's dispositive analysis makes clear that the Sale Order cannot be enforced to bar any Used Car Purchasers' claims against New GM.

Even if, arguendo, the Bankruptcy Court's rulings were law of the case, reconsideration of a ruling that is law of the case is appropriate where, inter alia, the prior ruling is clearly erroneous.  See, e.g., DiLaura v. Power Auth. of State of N.Y., 982 F.2d 73, 77 (2d Cir. 1992). This standard is met in light of the Second Circuit's reversal of the Bankruptcy Court's holding with respect to Used Car Purchasers.  In addition, the Used Car Purchasers had not yet purchased their used vehicles at the time of the Sale and were not creditors of Old GM – known or unknown – that could be bound by publication notice.  For that reason, nothing in the Sale Order can limit their rights to sue New GM for Independent Claims or as a successor to Old GM.[43]

---

[42]    The Second Circuit's exact words were:  "The Used Car Purchasers were individuals who purchased Old GM cars after the closing, without knowledge of the defect or possible claim against New GM.  They had no relation with Old GM prior to bankruptcy.  Indeed, as of the bankruptcy petition there were an unknown number of unknown individuals who would one day purchase Old GM vehicles secondhand.  There could have been no contact or relationship -- actual or presumed -- between Old GM and these specific plaintiffs, who otherwise had no awareness of the ignition switch defect or putative claims against New GM.  We cannot, consistent with bankruptcy law, read the Sale Order to cover their claims.  See [United States v. LTV Corp. (In re Chateaugay Corp.)], 944 F.2d [997,] 1003-04 [2d Cir. 1991] (calling such a reading "absurd")."  Elliott, 829 F.3d at 157.

[43]    For reasons discussed in greater detail in Issue 4 below, these claimants can also seek punitive damages against New GM to the same extent they could have sought punitive damages against Old GM.  If New GM believes that it has a defense to punitive damages, it can assert its defenses in the nonbankruptcy court in which these cases will be tried.

**B.    New GM Cannot Revive The Bankruptcy Court's Rulings On Used
Car Purchasers, Which Were Reversed By The Second Circuit Opinion.**

In a further attempt to sidestep application of the Second Circuit Opinion, New GM

contends that the Bankruptcy Court's ruling that the Used Car Purchasers have no "greater rights

against New GM than the original Old GM vehicle owner had at the time of the used car

transaction" is a "discrete and separate issue" that was not "overrule[d]" by the Second Circuit.

See New GM Br. 49 (citing In re Motors Liquidation Co., 529 B.R. at 571-72).

This contention is at odds with the Second Circuit's holding that the Sale Order, without

exception, "does not cover . . . Used Car Purchasers' claims" and explicit reversal of the

Bankruptcy Court, citing to the exact pages of the April 2015 Decision that New GM seeks to

revive.  See Elliott, 829 F.3d at 157-58 ("Accordingly, we . . . reverse [the Bankruptcy Court's]

decision to enjoin the Used Car Purchasers' claims, see [April 2015 Decision] at 570-72.").

Likewise, New GM's assertion that "the Bankruptcy Court's ruling was based on well

recognized legal authority," New GM Br. 49-50 & n.72, holds no weight in the face of the

Second Circuit's reversal.  In any event, the authorities from the April 2015 Decision identified

by New GM are inapt because none of them concern "successors-in-interest" who, like the Used

Car Purchasers, were future claimants whose claims did not exist at the time of the "assignment"

by the original owner.[44]  The final case cited by New GM, see New GM Br. 51 (citing Burton v.

Chrysler Grp., LLC (In re Old Carco LLC), 492 B.R. 392 (Bankr. S.D.N.Y. 2013)), is also off-

point.  In Burton, both the plaintiffs and their predecessor had knowledge of the design defects at

---

[44]    See In re KB Toys Inc., 736 F.3d 247, 250-55 (3d Cir. 2013) (affirming that, under 11 U.S.C. § 502(d),
disallowance travelled with the claim where, inter alia, transferee was aware that disallowance could attach to
the claims and was on constructive notice of potential preference actions); In re Metiom Inc., 301 B.R. 634,
637-38, 642-43 (Bankr. S.D.N.Y. 2003) (holding that the disallowance of a claim travelled with the claim where
a proof of claim was filed in the bankruptcy pre-transfer and the transferee knew that the claim existed in the
bankruptcy); Titan Real Estate Ventures, LLC v. MJCC Realty Ltd. P'ship (In re Flanagan), 415 B.R. 29, 33-34
(D. Conn. 2009) (holding that trustee's Section 541 claim to recover assets was barred by in pari delicto under
the rule that a trustee acting pursuant to 11 U.S.C. § 541 is subject to all of the same defenses as the debtor pre-
bankruptcy).

41

issue given that at least two recalls had already occurred *before the original owners purchased the vehicles*. See Burton, 492 B.R. at 403. Here, neither the original owners nor the Used Car Purchasers had knowledge of the defects as a result of Old and New GM's cover-up.

Further, New GM's argument that Used Car Purchasers cannot have greater rights than their predecessors (whose rights New GM contends were stripped away under the Sale Order) fails as a matter of due process. Liability for the tort claims at issue does not attach to the vehicle like a bug on the windshield, subject to being wiped away by the Sale Order. Either the future claimant's *in personam* claims (such as successor liability claims) were stripped away by giving the claimant constitutionally sufficient notice in a proceeding in which the claimant had a fair opportunity to participate, or they were not.

As future claimants, Used Car Purchasers cannot be bound by the Sale Order because they were not yet creditors and no amount of notice could have reached them at the time of the Sale. Consequently, the rights of future crash victims were intact at the times of their crashes, and the rights of future economic loss claimants were intact at the time of their injury, whatever those rights might be. Indeed, this is the essence of the holding in Grumman. See Grumman Olson, 467 B.R. at 708-09.

New GM's analysis of this issue in its opening brief is classic doublespeak. In connection with Post-Closing Accident Plaintiffs, the original owner of the vehicle was not a tort claimant of Old GM at the time of the Sale because there had been no crash. Therefore, New GM's argument that the personal injury and wrongful death claims of the original owner were stripped away by the Sale Order, and the "claim stripping" carried over to the Used Car Purchaser, does not make sense for future accidents. Indeed, although New GM cites several cases in this section of its opening brief, none of these cases are due process or tort cases; and no

42

case is cited for the proposition that future personal injury and wrongful death tort claimants can be barred by a 363 sale order, especially in situations where there was no future claims representative and no dedicated trust was set up exclusively to pay future victims.

Bankruptcy Code section 101(10) clearly states that a "creditor" is an entity holding a "claim" that arose before the petition date. <u>See</u> 11 U.S.C. § 101(10). Used Car Purchasers do not fall into this category because their claims are future tort claims that did not arise until after the Sale. As the Second Circuit held, the future claims of these "non-creditors" are not "bankruptcy claims" that can be affected under a sale free and clear. <u>See</u> <u>Elliott</u>, 829 F.3d at 157.

Finally, New GM's argument can be turned around on it. If, as New GM argues, Used Car Purchasers cannot obtain better rights than the prior owners of their vehicles, and if, as argued by New GM, the so-called disability "travels" with the vehicle, then the flip-side should also be true: the future claims of the prior owners can be transferred to the future owners at the time of the post-Sale used car transaction. As discussed in Issue 4 of this brief and the Plaintiffs' Opening Brief, because the future claims of the old owners were not "bankruptcy claims" at the time of the Sale, those future claims could not be constitutionally barred by the Sale Order. Therefore, the right to assert the future personal injury and wrongful death claims against Old GM's successor "traveled with the vehicle" to the Used Car Purchasers.

Therefore, the Sale Order cannot be enforced to bar any Used Car Purchaser's claims.

## VII.    <u>Threshold Issue Four.</u>[45]

Courts within this Circuit have been reluctant to bar successor liability claims of future tort claimants such as the Non-Ignition Switch Personal Injury Plaintiffs. The panels in <u>Chrysler</u> and <u>Elliott</u> each declined to bar those claims in the abstract. The current state of the law in this

---

[45] "Are Post-Closing Accident Plaintiffs bound by the Sale Order or may they bring successor liability claims against New GM and seek punitive damages in connection therewith notwithstanding the Court's rulings in the November 2015 Decision/December 2015 Judgment?" Order to Show Cause at p. 3 ¶ 4.

Circuit is best exemplified by the decision in <u>Grumman Olson</u>, 467 B.R. at 707-11, where the District Court affirmed Judge Bernstein's decision to not bar successor liability claims of post-sale accident victims because no amount of notice could have adequately notified the future accident victims that their rights were being adversely affected by the free and clear sale in the manufacturer's bankruptcy case.

The Second Circuit Opinion discussed the serious problems inherent in handling the "difficult case of pre-petition conduct that has not yet resulted in detectible injury, much less the extreme case of pre-petition conduct that has not yet resulted in tortious consequence to a victim." <u>Elliott</u>, 829 F.3d at 156 (quoting <u>United States v. LTV Corp. (In re Chateaugay Corp.)</u>, 944 F.2d 997, 1004 (2d Cir. 1991)).  The court went on to say the "claim" of a future claimant "cannot be extended to include . . . claimants [that] were completely unknown and unidentified at the time [the debtor] filed its petition and whose rights depended on the fortuity of future consequences." <u>Id.</u>  In explaining the limits on the ability of the debtor to sell assets free and clear of the successor liability claims of future tort claimants, the Second Circuit stated that, among other requirements, the "claim" must arise from pre-petition conduct fairly giving rise to the claim <u>and</u> there must be some contact or relationship between the debtor and the claimant "such that the claimant is identifiable." <u>Id.</u>

This puts both the buyer/seller and the future tort claimant in a Catch-22 that must be resolved in favor of the tort claimant.  If the future tort claimant is not "identifiable," then the future successor liability claim is outside the purview of the free and clear order; and if the future tort claimant is "identifiable" (because the defect is known to the debtor and the identity of the potential victim is known to the debtor), then <u>Mullane v. Cent. Hanover Bank & Tr. Co.</u>, 339 U.S. 306 (1950) requires the identifiable claimant be given actual notice.  This makes sense

because a contrary rule would result in the future tort claimant having no recourse against either the seller/debtor or the buyer/non-debtor.

Here, at the time of the Sale, the Non-Ignition Switch Post-Closing Accident Plaintiffs were not yet creditors of Old GM for their personal injury and wrongful death claims. They were also unidentifiable. Pursuant to the Second Circuit Opinion, their future claims were not "claims" that could be affected by the Sale Order. No notice, actual or otherwise, would have been meaningful to them. In any event, New GM has not argued that these plaintiffs were notified. First class mail notice was not given and the form of notice used in this case did not mention successor liability claims which, although based on the actions of the seller, are in fact claims against the buyer. If New GM now wants to contend that these future claims were known at the time of the Sale and that these plaintiffs were identifiable at the time of the Sale, then it would be conceding that these plaintiffs were denied due process just as the Ignition Switch Pre-Closing Accident Plaintiffs were denied due process. Whether as unknown and unidentifiable future creditors, or as identifiable creditors that were denied due process, the Non-Ignition Switch Post-Closing Accident Plaintiffs cannot be bound by the successor liability bar contained in the Sale Order or be prevented from seeking punitive damages based on Old GM's conduct.

The November 2015 Decision/December 2015 Judgment (which interpret the Sale Order) do not bar the successor liability claims of the Non-Ignition Switch Post-Closing Accident Plaintiffs because, as future tort claimants, the Sale Order could not bar their claims in the first place. The Second Circuit held as much in the Opinion and under Grumman Olson there is no basis to hold that the Sale Order could bar these future tort claimants when notice was never given to them.[46] Because their successor liability claims are not barred, to the extent the Non-

---

[46] This analysis is applicable to vehicle owners that owned or leased their vehicles at the time of the closing of the Sale. This analysis is even more applicable to anyone in the Used Car Purchaser category.

Ignition Switch Post-Closing Accident Plaintiffs can successfully bring these claims, they can also seek punitive damages as part of their claims. New GM's argument that Plaintiffs cannot recover punitive damages against New GM because those damages would not be recoverable against Old GM is wrong. This argument conflates the successor's responsibility/liability to pay the tort obligation of the predecessor with the dollar amount of recovery the tort claimant could have expected from the predecessor. One does not drive the other. Ability to pay does not affect determination of liability or the proper calculation of damages. New GM does not cite a single case in which a claimant's recovery on a successor liability claim against a solvent successor was limited to the amount of the distribution it would have received on its claim against the defunct predecessor. If that were the law, compensatory damages for successor liability claims would be limited to cents on the dollar in almost every case, and permitted recoveries would vary from case to case. Moreover, New GM's contention ignores the equitable nature of the successor liability remedy which often comes into play precisely because of the predecessor's disappearance and/or insolvency.

New GM also argues that punitive damages are subordinated anyway under section 726(a)(4), so the damages would not be paid in Old GM's case. Because the amount of the recovery against Old GM is irrelevant, this argument proves nothing. However, it is noteworthy that punitive damages claims are not disallowed in chapter 7, they are merely subordinated, and would be paid if the debtor was solvent. Here, New GM is solvent, and it is solvent by virtue of its ownership, use, and operation of the Old GM's name, plant, equipment, designs, tooling, intellectual property and know how, and its inheritance of the employees and designers that built and tested the vehicles that injured the Non-Ignition Switch Post-Closing Accident Plaintiffs.

New GM cites several readily distinguishable cases to try to support its efforts to restrict

46

the Non-Ignition Switch Post-Closing Accident Plaintiffs to the recovery they would have received from the debtor.

First, New GM cites to Kane v. Magna Mixer Co., 71 F.3d 555 (6th Cir. 1995). The quote used by New GM ("When successor liability is imposed, the person harmed by the seller's pre-sale conduct may sue the purchaser directly.") actually supports the arguments of the Non-Ignition Post-Closing Accident Plaintiffs. Moreover, Kane is not a successor liability case and has nothing to do with future claims or due process.[47]

Second, New GM cites In re Ephedra Products Liability Litigation, 329 B.R. 1 (S.D.N.Y. 2005), which also was not a successor liability or due process case. The case involved the District Court's rejection of class proofs of claim filed by class action claimants against the debtor/tortfeasor in the debtor/tortfeasor's chapter 11 case. See id. at 3-4. In support of its disallowance of the class proofs of claim, the District Court observed that the class proofs of claim would have a low priority in the debtor's case. See id. at 8-10. This observation is not relevant to issues of successor liability, due process, or future claims. Nor would the "low" priority of a claim in the debtor's case affect the ability to assert successor liability claims against New GM, which is a solvent non-debtor.

Third, New GM cites In re Motors Liquidation Co., No. 09-50026, 2012 WL 10864205 (Bankr. S.D.N.Y. Aug. 6, 2012). In that case, a *pro se* litigant sought punitive damages for claims that (i) did not provide for a private right of action (First Amendment violation by a

---

[47]    In Kane, the plaintiff obtained a default judgment against the seller and lost its successor liability case against the buyer, but settled with the seller and took an assignment of the seller's indemnity rights under the sale agreement. In a second lawsuit against the buyer, the plaintiff argued that, under the sale agreement, the buyer agreed to indemnify the seller if the seller was held liable to any third party in connection with the assets sold under the sale agreement, and therefore the plaintiff was entitled to payment as a result of the plaintiffs' settlement with the seller. The court in the second lawsuit rejected the plaintiff's argument because the indemnity claim had been destroyed in the first lawsuit when the seller failed to raise it as a defense/cross-claim against the buyer. See id. at 558-60 & n.1, 563.

corporation); (ii) were untimely as a result of being omitted from an EEOC charge; and (iii) were not entitled to punitive damages under the applicable state statute. See id. at *4-6, 10-11. Judge Gerber stated in *dicta* that allowing these punitive damage claims would dilute the recovery for other creditors, so this Court could exercise its equitable powers to bar the claim. Significantly, however, the Court disallowed the punitive damage claims on their merits, not the priority of such claims. See id. at 11.

And, fourth, New GM relies on a completely inapposite case, Robbins v. Physicians for Women's Health, LLC, 90 A.3d 925 (Conn. 2014). In Robbins, the plaintiff settled a medical malpractice claim and agreed not sue the predecessor corporation. See id. at 927-28. This agreement foreclosed the plaintiff from seeking to recover from the successor corporation. See id. at 931-32. The case has no bearing on the punitive damages or successor liability in this case, and the quote that GM relies on Robbins for actually supports Plaintiffs: "[T]he liability of a successor corporation is derivative in nature and the successor may be held liable for the conduct of its predecessor only to the same extent as the predecessor . . . . The nature of the liability itself does not change." Id. at 930. Neither the case nor the quote even remotely suggest that the ability to hold the successor liable "for the conduct of its predecessor" is a function of the predecessor's ability to pay, or of the injured party's ability to collect from the original tortfeasor. Rather, the case makes clear that the successor's liability is a function of whether the predecessor would have been liable to the victim.

Non-Ignition Switch Post-Closing Accident Plaintiffs are not selectively using New GM's assumption of liability for Post-Closing accidents when it suits them, as New GM alleges. Tort claimants are involuntary creditors. They did not choose to be injured or killed. New GM agreed to assume certain liabilities under the Sale Agreement. Separate from that, the law

provides for certain remedies for persons denied due process. In neither circumstance were the Non-Ignition Switch Post-Closing Accident Plaintiffs consulted or given options. They are merely asserting the rights and remedies available to them. This does not rewrite the Sale Agreement. Rather, the bar against successor liability claims is not enforceable against future claimants deprived of constitutionally sufficient notice that their future successor liability and punitive damages claims were about to be taken away. See Manville IV, 600 F.3d at 157-58.

New GM tries to sidestep this issue by arguing that because the issue of punitive damages for specific **Ignition Switch** Post-Closing Accident cases was included in the September 2015 Scheduling Order, this somehow means different plaintiffs with different defects should have raised issues they were not yet aware of and should have come to the Bankruptcy Court despite (i) the absence of a pending proceeding against them; (ii) the absence of process compelling their appearance; and (iii) the lack of clarity in the September 2015 Scheduling Order as to the issues being addressed.[48] New GM Br. 53 n.78. This is manifestly unfair, especially with respect to Plaintiffs not even served with the September 2015 Scheduling Order.

Finally, New GM argues that the "direct benefits" theory applies and bars Non-Ignition Switch Post-Closing Accident Plaintiffs from pursuing successor liability claims while simultaneously pursuing products liability claims that New GM expressly assumed under the

---

[48]    The few Ignition Switch Post-Closing Accident Plaintiffs represented by Goodwin Procter in the Fall 2015 briefing raised the successor liability bar/future claim issue but certainly not as a representatives for Non Ignition Switch Post-Closing Accident Plaintiffs. The Court did not accept these arguments and the Goodwin Procter clients did not appeal. Nevertheless, the ruling is not law of the case because the Court did not address the argument in the November 2015 Decision other than to state that "[t]he Court does not follow the argument" and that it failed to see any prejudice in barring these successor liability claims. In re Motors Liquidation Co., 541 B.R. at 117 n.36. The future claim/due process argument made by these Ignition Switch Post-Closing Accident Plaintiffs did not relate to Independent Claims but instead was that, as future tort claimants, Ignition Switch **Post**-Closing Accident Plaintiffs were never given constitutionally sufficient notice that their rights to recover punitive damages as part of their successor liability claims were being barred under the Sale Order. This argument was separate and distinct from the right to recover punitive damages as part of an Independent Claim against New GM. Because the Court never analyzed the successor liability/future claim issue or ruled on its merits, the "non-decision" cannot be law of the case.

Sale Agreement.  See New GM Br. 54-55.  This is wrong because, even if this theory applies to sale agreements approved in connection with a court supervised 363 sale (a proposition for which New GM cites no support),[49] New GM conveniently forgets to mention that the Sale Agreement contains a "Severability" clause that excises from the Sale Agreement "any term or provision of this Agreement" that "is held to be illegal, invalid or unenforceable."  Sale Agreement § 9.8.  Because the bar on successor liability claims contained in the Sale Agreement is illegal, invalid, and unenforceable under the Second Circuit Opinion and Grumman as applied to future claimants deprived of due process in connection with the Court's approval of that agreement, by its own terms, the Sale Agreement provides that those provisions be "severed" as applied to Non-Ignition Switch Post-Closing Accident Plaintiffs.[50]

## CONCLUSION

For the reasons set forth above and in the Plaintiffs' Opening Brief, the Plaintiffs respectfully request that the Court order that:  (i) all Non-Ignition Switch Plaintiffs are free to assert Independent Claims, the merits of which are to be adjudicated by nonbankruptcy courts; (ii) no Used Car Purchasers' claims are enjoined under the Sale Order; and (iii) Post-Closing Accident Plaintiffs are not bound by the Sale Order and are able to assert successor liability claims against New GM and seek punitive damages.

---

[49] Lacking support in the 363 context, New GM instead cites a list of executory contract cases decided under section 365 for the proposition that when a debtor in possession or trustee assumes executory contract, it must take the agreement *cum onere*.  See New GM Br. 54-55 n.79.  This is not a section 365 case and the Non-Ignition Switch Post-Closing Accident Plaintiffs are not debtors in possession or trustees.  Nor are they assuming an agreement under section 365.  This is a due process case and the issue is whether the rights of the Non-Ignition Switch Post-Closing Accident Plaintiffs have been abridged in a constitutionally sufficient manner.

[50] Section 9.8 of the Sale Agreement also provides that the unenforceable provision may be substituted with a "suitable and equitable provision . . . in order to carry out, so far as may be legal, valid and enforceable, the intent and purpose of such illegal, invalid or unenforceable provision."  Id.  The Non-Ignition Switch Post-Closing Accident Plaintiffs submit that under applicable Second Circuit law, no legal, valid, or enforceable successor liability bar can replace the unenforceable one contained in the Sale Agreement.

Dated: April 7, 2017
     New York, New York

Respectfully submitted,

BROWN RUDNICK LLP

*/s/ Edward S. Weisfelner*
Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com
Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*

51

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Post-Closing Accident
Plaintiffs Represented By Butler Wooten & Peak
LLP, Denney & Barrett, P.C., Hilliard Muñoz
Gonzales L.L.P., and Turner & Associates, P.A.*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Lead Counsel in the MDL Court with
Primary Responsibility for Personal Injury
and Wrongful Death Cases*