# **Exhibit B**

 

April 18, 2017

**VIA ELECTRONIC FILING**

The Honorable Jesse M. Furman
United States District Judge
40 Centre Street
New York, NY 10007-1312

> RE: *In re General Motors, LLC Ignition Switch MDL*, 14-md-2543 (JMF)
> Supplemental briefing on motion for summary judgment on successor
> liability

Dear Judge Furman:

Plaintiffs address the questions set forth in the April 10, 2017 Order With Respect to Motion for Summary Judgment on Successor Liability (ECF No. 3826).

**I.      Issue One.**

    **A.      If Federal Common Law Does Not Apply, the Court Should Apply the Choice of Law Principles of Each Plaintiff's Home State.**

If the Court concludes, as Plaintiffs submit it must, that federal common law does not dictate choice of law in this case, the parties' prior positions in this case and the applicable case law confirm that the Court should apply the choice-of-law principles of each Plaintiff's home state to his or her claims. This is the position Plaintiffs took in their opposition to summary judgment [ECF No. 3617, at 2], and it is the position New GM has taken in prior briefs on choice of law:

> [F]or each individual Plaintiff's claims here, this Court should
> apply the choice-of-law principles of the state from which the case
> was transferred, notwithstanding the filing of the Post-Sale
> Consolidated Complaint. … In addition, the choice-of-law rules of
> plaintiffs' home states also apply to those plaintiffs who filed their
> claims directly in the MDL through the consolidated complaint.

Opening Brief Concerning Choice of Law, ECF. No. 597, at 23. *See also* FACC ¶ 39 ("Pursuant to the Court's instructions that Plaintiffs could file directly in the MDL court and reserve the right to have filed in another district, this Complaint is filed by each new Plaintiff as if they had filed in the district in which they reside.").

The Honorable Jesse M. Furman
April 18, 2017
Page 2

The parties' position is consistent with well-established law that while a court sitting in diversity jurisdiction typically applies the choice-of-law rules of the state in which it sits, "[i]n multi-district litigation, we apply the choice-of-law rules from the transferor forum—in this case, California—to determine which state law controls." *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 112 (2d Cir. 2012). *See also, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015); *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 606 (S.D.N.Y. 2005) ("When an action is transferred as part of an MDL, the transferee court applies the choice of law rules of the state in which the action first was filed"); *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 2403856, at *2 (S.D.N.Y. Sept. 30, 2005) ("When an action involving state law claims is transferred pursuant to the MDL provision of 28 U.S.C. § 1407, a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed."); *In re Ski Train Fire in Kaprun, Austria*, 257 F. Supp. 2d 717, 723 (S.D.N.Y. 2003) ("[i]n an MDL proceeding, the forum state is the district court where the action was originally filed, and therefore that state's law must be applied").

The same rule applies even when a consolidated complaint has been filed. As the court stated in *Rezulin*,

> Just as transfers pursuant to Sections 1404 and 1407 do not affect the applicable choice of law rules, so too the next step in the streamlining process—namely consolidation into one proceeding of two or more actions filed in different states—does not affect them.

392 F. Supp. 2d 597 at 606 n.62. *See also, e.g., In re Takata Airbags Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1333 (S.D. Fla. 2016); *Brown v. Hearst Corp.*, 54 F.3d 21, 24 (1st Cir. 1995); *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, 890 F. Supp. 2d 896, 901 (N.D. Ill. 2012); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 56 (D.N.J. 2009); *In re Guidant Implantable Defibrillators Prod. Liab. Litig.*, 489 F. Supp. 2d 932, 936 (D. Minn. 2007); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 838-39 (E.D. La. 2007).

The same is also true for the claims of any plaintiffs who first filed their cases directly in the MDL in a consolidated complaint. As the Sixth Circuit (the only Circuit to consider this issue) has held:

> Direct-filed MDL suits that are then transferred to a more convenient forum for trial are an exception to the ordinary rule [that a claim is governed by the choice of law rules of the state of the federal court in which the claims were filed]. This must be so, or else every district court receiving a direct-filed MDL suit would be bound to apply the choice of law principles of the MDL forum. In effect, the accident of bureaucratic convenience would elevate the law of the MDL forum.

1345380.2

The Honorable Jesse M. Furman
April 18, 2017
Page 3

*Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 496 (6th Cir. 2015). As the court further elaborated, if parties "could avail themselves of the law of the MDL-court forum, every plaintiff in an MDL case would be able to choose the law of a state that is not an appropriate venue." *Id.* at 498. *See also, e.g., In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2011 WL 1375011, at \*6 (S.D. Ill. Apr. 12, 2011); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2012 WL 3205620, at \*2 (E.D. Pa. Aug. 7, 2012); *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, 2014 WL 637189, at \*8 (S.D. W. Va. Feb. 18, 2014); *In re Watson Fentanyl Patch Prods. Liab. Litig*, 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013); *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.*, 2007 WL 3046682, at \*3 (D.S.C. Oct. 11, 2007); *Sanchez v. Boston Scientific Corp.*, 2014 WL 202787, at \*4 (S.D. W. Va. Jan. 17, 2014); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 2014 WL 2445790, at \*2 (E.D. Pa. May 29, 2014).

This remains the law after the footnote in *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 906 n.3, 190 L. Ed. 2d 789 (2015), which stated that when a consolidated complaint is filed in an MDL, "the transferee court may treat the master pleadings as merging the discrete actions for the duration of the MDL pretrial proceedings." This is because "*Gelboim* does not address the choice of law inquiry...." *Takata*, 193 F. Supp. 3d at 1332. *Gelboim* addressed only the question of when plaintiffs in an MDL proceeding might have an individual right to appeal a ruling of the MDL court, and did not change or even consider the rules governing choice of law, nor vitiate the rule that MDL cases must return to the court of origin. *See id.* at 1332-33.

Thus, while Plaintiffs are mindful that the Court, in Order No. 50, crafted particularly efficient procedures to protect due process, and has rightly implied that the outer contours of what a transferee court can do consistent with prior authority has not necessarily been fully explicated, the law remains that the Court should apply the choice-of-law principles of each Plaintiff's home state to their claims. However, even if the Court applies New York choice-of-law principles to Plaintiffs other than Plaintiffs from New York, those principles simply do not point to the outcome New GM seeks. Instead, a faithful application of New York choice of law points to the application of Michigan law or, alternatively, to the substantive law of each state, as set forth in Plaintiffs' opposition to summary judgment, and as explicated below in light of the Court's questions.

### B. New York Choice of Law.

Under New York's "greatest interest" analysis, "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (N.Y. 1985). A corporation is domiciled where it has its headquarters and principal place of business, *Elson v. Defren*, 283 A.D.2d 109, 116 (N.Y. App. Div. 2001), and the locus of the tort "is the place of the injury, rather than the location where the allegedly defective product was manufactured." *Burnett v. Columbus McKinnon Corp.*, 69 A.D.3d 58, 60 (N.Y. App. Div. 2009).

The Honorable Jesse M. Furman
April 18, 2017
Page 4

As detailed in Plaintiffs' opposition brief, this analysis indicates that Michigan is the jurisdiction with the greatest interest in this litigation. ECF No. 3617, at 9-16. Here, a particularly compelling basis for choosing Michigan substantive law emerges from the underlying facts: the place of New GM's domicile/headquarters (Michigan) merges with the place of the defective products' manufacture (Michigan), as well as the place of New GM's wrongful conduct (Michigan). No other location presents as relevant a convergence of factors.

In the alternative, and depending on the salience the Court attaches to New York's place of injury factor, each Plaintiff's home state successor liability law should apply.

New York courts have expressly rejected the notion that the state of incorporation is the most relevant, let alone only relevant, fact in the context of successor liability:

> Here, BAC cites to its state of incorporation - Delaware. However, aside from its incorporation in Delaware, BAC asserts no other ties to that jurisdiction. . . . BAC cites to no New York state case law supporting this categorical disregard of the interest test.

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 965 N.Y.S.2d 284, 295 (N.Y. Sup. Ct. 2013); *see also* Opp'n Br. at 29. Properly applied, "state of incorporation is a contact under New York's interest analysis but it is not *the only* relevant contact," and "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id.* at 295, 297 (emphasis in original). For these reasons, the appellate court's decision in *Lippens v. Winkler Backereitechnik Gmbh*, 138 A.D.3d 1507 (N.Y. App. Div. 2016) is correct and instructive. As the court held there:

> [I]nasmuch as plaintiff is a New York domiciliary and the situs of the alleged tort is in New York, choice of law principles also compel the application of New York's successor tort liability rules.

138 A.D.3d at 1509 (citations omitted). *See also Colon v. Multi-Pak Corp.*, 477 F. Supp. 2d 620, 625-26 (S.D.N.Y. 2007) (considering, in the context of successor liability, the location of the parties and circumstances of the underlying tort, "notwithstanding that the manufacturer is incorporated . . . in another state").

By citing cases to the contrary, New GM invited the Court to compound a mistake made by other federal courts *in the absence of relevant state authority now available to this Court*. While several federal courts have focused on state of incorporation in determining which state's successor liability law to apply, these cases pre-dated the New York appellate court's decision in *Lippens*[1] and, sometimes, the trial court's decision in *MBIA*. GM Opening Br. at 25-26; GM

---

[1] The only post-*Lippens* case cited by New GM was *Energy Intelligence Grp., Inc. v. Cowen & Co., LLC*, 2016 WL 3939747 (S.D.N.Y. July 15, 2016), which failed to cite *Lippens* and more

1345380.2

The Honorable Jesse M. Furman
April 18, 2017
Page 5

Reply at 20.  Moreover, these cases did not conduct an independent choice of law analysis in the context of successor liability, but rather applied veil piercing cases by analogy.  *See, e.g.*, *Hayden Capital USA, LLC v. Northstar Agri Indus.*, 2012 WL 1449257, at *7 (S.D.N.Y. Apr. 23, 2012) ("Courts in this District have extended the general rule applicable in veil-piercing cases to claims for successor liability like the one at issue here.").

Because the New York Court of Appeals has not yet ruled on how to apply New York's choice of law analysis to successor liability claims, "this Court must try to predict how the [New York Court of Appeals] would rule on the issue by looking to decisions of the Second Circuit construing state law, as well as intermediate state court precedent, analogous cases in other circuits and any other sources that provide helpful guidance in deciding the issue." *New York v. Nat'l Servs. Indus., Inc.*, 380 F. Supp. 2d 122, 130 (E.D.N.Y. 2005), *aff'd*, 460 F.3d 201 (2d Cir. 2006).

Fortunately, as summarized above, there is intermediate state court precedent directly on point—*Lippens*—as well as other state authority that *expressly rejects* New GM's position—*MBIA*.  If this does not lead to Michigan, it would lead to home state law.  In the alternative to Michigan, New York choice of law would also support application of home-state successor liability law.  Under New York's interest analysis, the most significant contact after domicile is locus of the tort, *Schultz*, 65 N.Y.2d at 197, meaning the place of plaintiff's injury, *Burnett*, 69 A.D.3d at 60.  Both state and federal courts have therefore considered place of injury in deciding which state's successor liability law to apply.  *See, e.g.*, *Lippens*, 138 A.D.3d at 1509 (considering "the situs of the alleged tort" in determining that New York choice of law compelled the application of New York successor liability law); *Colon*, 477 F. Supp. 2d at 625 (same).

Here, each Plaintiff's injury occurred in their home state.  Accordingly, if the Court places weight behind this facet of New York's interest analysis, then each Plaintiff's home state successor liability law should apply.

## II.     Impact of Late Proofs of Claim Motion.

The Court has also asked the parties to discuss what impact a ruling of the Bankruptcy Court allowing Plaintiffs to file late proofs of claims might have on the successor liability claims.  Plaintiffs contend there should be no impact on the successor liability claims.  While a ruling by the Bankruptcy Court allowing Plaintiffs to file late proofs of claim would be of some practical significance, the possibility of such a ruling, notably still a ways away given that the parties are just now litigating over what standard should be applied, should not slow down or forestall a ruling on successor liability.  Even if Plaintiffs are allowed to file late proofs of claim, that would simply mean that Plaintiffs had been allowed to file claims, and would not be a ruling on the

---

important presented a case where the locus of injury was Delaware:  "all the players in [that] litigation"—on both the plaintiff and defense sides—"are also Delaware entities."  *Id*. at *11.

1345380.2

The Honorable Jesse M. Furman
April 18, 2017
Page 6

substance of those claims. Moreover, Plaintiffs will not recover twice for the same conduct and thus there may be offsets, but this is true in many cases and should not slow the orderly process of the litigation. The specific reasons are as follows:

First, there are different standards that apply to each set of claims. The late claims motion does not turn on successor liability, but instead on whether claimants have shown "excusable neglect" within the meaning of *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993), and its progeny—with the further complications in this case that the parties have briefed, as an initial matter, whether Plaintiffs even need to satisfy the *Pioneer* test, as we maintain we do not given earlier rulings in this case.

Second, the successor liability claims in this Court and the potential late claims in the Bankruptcy Court involve different defendants, and therefore different possible avenues for recovery. Thus, for example, it is possible that one defendant would settle the claims for only partial recovery for the Plaintiffs, or could not pay the entire claim, thus leaving Plaintiffs to pursue the remainder against the other defendant.

Further, there is no risk of double recovery because both claims theoretically exist. If Plaintiffs prevailed on both sets of claims, there would be an offset of the recoveries to ensure Plaintiffs did not recover more than they are entitled to, and of course there are procedural developments that might moot the issue.

This situation is thus analogous to any party suing multiple defendants for a single harm, either in the alternative, or on the basis of joint-and-several liability. Such claims are allowed to proceed simultaneously, even though full recovery on competing claims would be either impossible, or subject to an offset. *See, e.g., Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 64 (S.D.N.Y. 2016) (Furman, J.).

While there may eventually be rulings or recoveries on one set of claims that impact the other claims, the bare fact that the late claims in the bankruptcy eventually could be allowed to be filed should have no impact on the successor liability claims, New GM's motion on those claims, or the Court's ruling on that motion.

Respectfully submitted,

| /s/ Steve W. Berman | /s/ Elizabeth J. Cabraser | /s/ Robert C. Hilliard |
|---|---|---|
| Steve W. Berman | Elizabeth J. Cabraser | Robert C. Hilliard |
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd. |
| Suite 3300 | 29th Floor | Suite 500 |
| Seattle, WA 98101 | San Francisco, CA 94111-3339 | Corpus Christi, TX 78401 |
| -and- | -and- | |

1345380.2

09-50026-mg    Doc 13896-2    Filed 04/19/17    Entered 04/19/17 10:35:52    Exhibit B
Pg 8 of 8

Case 1:14-md-02543-JMF   Document 3856   Filed 04/18/17   Page 7 of 7

The Honorable Jesse M. Furman
April 18, 2017
Page 7

| | |
|---|---|
| 555 Fifth Avenue | 250 Hudson Street |
| Suite 1700 | 8th Floor |
| New York, NY 10017 | New York, NY  10013-1413 |

1345380.2