



April 27, 2017

<u>**VIA ELECTRONIC FILING**</u>

The Honorable Jesse M. Furman
United States District Judge
40 Centre Street
New York, NY 10007-1312

       RE:    *In re General Motors, LLC Ignition Switch MDL*, 14-md-2543 (JMF)

Dear Judge Furman:

      In response to ECF 3897, Plaintiffs respond that that the Second Circuit decision in *In re Tronox Inc.*, __ F.3d __, 2017 WL 1403001 (2d Cir. Apr. 20, 2017) has no impact on Plaintiffs' successor liability claims.  The Bankruptcy Court has already ruled that Plaintiffs' claims are not claims of the bankruptcy estate.  That ruling has been affirmed on appeal, and *Tronox* has not changed the law.

      In November 2014, New GM argued to the Bankruptcy Court, relying heavily on *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014) and *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989), that Plaintiffs' successor claims were barred because they "are claims of the bankruptcy estate, and not individual claims…."[1]  The Bankruptcy Court rejected New GM's argument:

> [T]heories of successor liability, when permissible, permit a claimant to assert claims not just against the transferor of the assets, but also against the transferee; they provide a second target for recovery. Here the Plaintiffs have not purported to sue for the benefit of Old GM creditors generally; they have instead sued to advance their own, personal, interests. They have not asked New GM to make a payment to Old GM; they want New GM's money for themselves.

*In re Motors Liquidation Co.*, 529 B.R. 510, 554-55 (Bankr. S.D.N.Y. 2015).  On the appeal of this order, New GM again argued, relying on *Emoral*, that Plaintiffs have no successor liability

---

[1] *Opening Brief by General Motors LLC on Threshold Issues Concerning its Motions to Enforce the Sale Order and Injunction*, Bankr. ECF. 12981, at 48-49 (relevant portions attached as Ex. A).  *See also Reply Brief by General Motors LLC on Threshold Issues Concerning its Motions to Enforce the Sale Order and Injunction*, Bankr. ECF. 13048, at 57-59 (relevant portions attached as Ex. B); *Designated Counsel's Opposition to New GM's Motions for Enforcement of Sale Order*, Bankr. ECF. 13025, at 36 n.44 (relevant portions attached as Ex. C).

claims because those claims belong to the estate.[2]  The Second Circuit implicitly rejected that
position because it found that Plaintiffs had a property interest in those claims, such that they had
to receive due process.  *See In re Motors Liquidation Co.*, 829 F.3d 135, 158-59 (2d Cir. 2016).
And on April 24, 2017, the Supreme Court denied New GM's petition for a writ of certiorari.
*See* 2017 WL 1427591.

  *Tronox* changes nothing.  The Second Circuit simply followed cases (including *Emoral*
and *St. Paul*) that courts have already found inapplicable to this case.  *See Tronox*, 2017 WL
1403001, at *11-15.  As the Second Circuit noted, claims are derivative, and impermissible,
when they "arise from harm done to the estate and … seek relief against third parties that push
the debtor into bankruptcy."  *Id.* at *11 (quoting *In re Bernard Madoff Inv. Sec. LLC*, 740 F.3d
81 (2d Cir. 2014)).  The question is whether "[e]very creditor has a similar claim for the
diversion of assets of the debtor's estate."  *Id.* at *15.  Thus, when a creditor has "a claim for
injury that is particularized as to them, they are exclusively entitled to pursue that claim…."  *Id.*
at *11 (quoting *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 54, 70 (2d Cir. 2013)).

  In *Tronox*, the Second Circuit applied these principles to an easily distinguished set of
facts.  The plaintiffs filed suit ***before*** the primary defendant declared bankruptcy.  *See id.* at *1.
The plaintiffs had also sued the debtor's twice-removed parent company, not on a traditional
successor liability theory, but on the theory that the parent was the debtor's alter ego.  As the
Second Circuit explained, the plaintiffs would have to establish "two veil-piercings or findings of
alter-ego liability" to establish that a twice-removed parent company was "in reality, acting as a
corporate combine" with the debtor.  *Id.* at *17 n.27.

  The Second Circuit concluded that the claims against the parent were derivative, and
barred, because if the plaintiffs prevailed, the parent company would be held to be "the alter ego
of the … debtor[] and should therefore be charged with all its liabilities," which "would benefit
all creditors of the … debtor[] generally."  *Id.* at *18.  The court concluded the claims were
barred because they alleged that the defendant "harmed the … debtor[]," *id.* at *21, and therefore
the trustee could have brought the claims.  *Id.* at *19-20.  *See also id.* at *17 ("the harm they
allege to have suffered … is the same harm general to all Tronox creditors").

  That is not the case here.  Every salient fact of *Tronox* is the opposite of the facts of this
case.  First, in *Tronox* (and *Emoral*), the claims in question were made ***prior*** to the bankruptcy,
and the claimants were given notice of the bankruptcy and an opportunity to file claims before
the estate was drained.  Here, in stark contrast, Plaintiffs could not have known they had claims
and were denied due process.  Plaintiffs therefore are decidedly not in the same shoes as any
other creditor.  As a result, if Plaintiffs succeed on their successor liability claims, there will not
be any pool of money or legal theory that any other party could take advantage of.  The other
creditors have no successor liability claims they can assert.  The Bankruptcy Court barred them

---

[2] *See Brief for Appellee-Cross-Appellant General Motors LLC (New GM)*, at 57-58 n.23 (relevant portion attached
as Ex. D).

Case 1:14-md-02543-JMF    Document 3914    Filed 05/03/17    Page 3 of 3

pursuant to the terms of the 363 Sale, because those claims existed before the bankruptcy, and the creditors were provided with due process.[3]  That is not true of Plaintiffs or their claims.

Second, in this case, all Plaintiffs have alleged direct claims against New GM for its own direct conduct in causing them harm, unlike the *Tronox* plaintiffs.  *See, e.g.,* FACC ¶¶ 1123-1148.  *Compare Tronox*, 2017 WL 1403001, at *1, *16 (plaintiffs had no direct claims).  The seamlessness with which New GM continued Old GM's misconduct is at the core of both Plaintiffs' successor liability claims and New GM's direct liability.  This has no analog in *Tronox*.

Third, Plaintiffs have not alleged alter-ego claims that would establish New GM and Old GM co-existed as the same company.  Instead, Plaintiffs rely on a state-law theory of successor liability that looks to the actions of New GM to determine whether New GM is liable as a successor.  *Compare id.* at *17 n.27 (describing *Tronox* plaintiffs' alter-ego theory).

Fourth, ***none*** of the successor liability claims are based on a theory that New GM harmed Old GM, or pushed Old GM into bankruptcy.  *See, e.g.,* FACC ¶¶ 896-957.  *Compare Tronox*, 2017 WL 1403001, at *21 (theory was that defendant harmed the debtor).  Plaintiffs allege that they were directly, personally harmed by acts of Old GM and New GM, and they seek direct, personalized recovery.  There is no way that Old GM or the trustee could have brought these claims.

*Tronox* does not reverse the Bankruptcy Court's earlier ruling, and does not bar Plaintiffs' claims for successor liability.  Despite that fact, New GM may argue that *Tronox* somehow means that when there is a bankruptcy estate, successor liability claims belong there, full stop.  The Second Circuit did not reach such a conclusion, and did not broaden the applicable law beyond what the Bankruptcy Court and the Second Circuit have both already considered.  *Tronox* does not bar Plaintiffs' successor liability claims.

Respectfully submitted,

| _/s/ Steve W. Berman_ | _/s/ Elizabeth J. Cabraser_ | _/s/ Robert C. Hilliard_ |
|---|---|---|
| Steve W. Berman | Elizabeth J. Cabraser | Robert C. Hilliard |
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S. Shoreline Blvd. |
| Suite 3300 | 29th Floor | Suite 500 |
| Seattle, WA  98101 | San Francisco, CA  94111-3339 | Corpus Christi, TX 78401 |
| -and- | -and- | |
| 555 Fifth Avenue | 250 Hudson Street | |
| Suite 1700 | 8th Floor | |
| New York, NY 10017 | New York, NY  10013-1413 | |

---

[3] *See, e.g., In re Gen. Motors Corp.*, 407 B.R. 463, 504 (Bankr. S.D.N.Y. 2009).

1345380.2

# Exhibit A

Hearing Date and Time:  To Be Determined
Objection Deadline:  December 16, 2014
Reply Deadline:  January 16, 2015

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
In re                                          :          **Chapter 11**
                                               :
**MOTORS LIQUIDATION COMPANY,** *et al.,*      :          **Case No.:  09-50026 (REG)**
         **f/k/a General Motors Corp.,** *et al.*   :
                                               :
         **Debtors.**                          :          **(Jointly Administered)**
                                               :
-------------------------------------------------------------x


**OPENING BRIEF BY GENERAL MOTORS LLC ON THRESHOLD ISSUES**
**CONCERNING ITS MOTIONS TO ENFORCE THE SALE ORDER AND INJUNCTION**

subject of their claims existed pre-petition, and regardless of whether they knew of the specific

defect, Plaintiffs had reason to know that Old GM's bankruptcy might impact their economic

interests in their vehicles.  Plaintiffs' due process argument is predicated on the mistaken notion

that they were known creditors.  They were unknown creditors.  But, significantly, known

creditors are, by definition, not "future creditors."  In sharp contrast to Plaintiffs, in *Grumman*,

the plaintiff did not argue that the plaintiff should have received notice of the 363 sale.

Accordingly, *Grumman* is easily distinguishable and does not control here.  Indeed, Judge

Bernstein noted that the *Grumman* case was inapposite to the *Old GM* case and could never arise

therein since *Grumman* involved a post-sale accident which was an Assumed Liability by New

GM.  *Id.* at 255.

In *Burton*, Judge Bernstein held that the holding in *Grumman* did not apply to claims,

like the ones at issue in this case, brought by plaintiffs seeking economic losses arising from pre-

petition defects in their vehicles.  As stated by Judge Bernstein:

> *Grumman Olson* is distinguishable. The plaintiffs or their predecessors (the
> previous owners of the vehicles) had a pre-petition relationship with Old Carco,
> and the design flaws that they now point to existed pre-petition. At a minimum,
> they held contingent claims because "the occurrence of the contingency or future
> event that would trigger liability was 'within the actual or presumed
> contemplation of the parties at the time the original relationship between the
> parties was created.'"

*Burton*, 492 B.R. at 403 (citation omitted).

Furthermore, according to the Third Circuit, successor liability claims are claims of the

bankruptcy estate and not individual claims, and therefore a bankruptcy trustee could

compromise a successor liability claim, and it would be binding on all creditors.  *See In re*

*Emoral, Inc.*, 740 F.3d 875, 882 (3d Cir. 2014).[22]  So too, here, the barring of successor liability claims in the Sale Agreement is binding on all creditors.  In sum, the Court was fully justified in approving the 363 Sale free and clear of successor liability claims, and the Plaintiffs cannot show prejudice.

### e.   Information Relating To The Product Defect Would Not Have Altered The Course Of The 363 Sale

Had Old GM disclosed the information in June 2009 that Plaintiffs contend it should have disclosed, such information would not have made any difference in the Court's approval of the 363 Sale.  The Court acknowledged that contingent claims were hard to estimate.  *See Gen. Motors*, 407 B.R. at 483.  The generalized discussion at the Sale Hearing relating to contingent claims was not to quantify the amount of contingent claims.  Rather, it was an argument made by the objectors that the contingent claims were sufficiently small that New GM should consider assuming them.  Hr'g Tr. 157:15-165:19, June 30, 2009.

In the end, it did not really matter at the Sale Hearing what the financial magnitude of Retained Liabilities was because the Sale Agreement was the only thing that separated Old GM from a disastrous liquidation.  What is more, there was protection to Old GM for the magnitude of Retained Liabilities.  The Sale Agreement provided for an upward adjustment to the purchase price if allowed claims exceeded $35 billion.  In all cases, the Sale Agreement specifically contemplated that claims would be determined *after* the 363 Sale without any effect on the closing.  The reasons the Court extensively discussed in approving the 363 Sale still apply, regardless of whether Old GM would have disclosed an additional class of potential product claims.

---

[22]   The Third Circuit relied on *In re Keene Corp.*, 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994), finding that "state law causes of action for successor liability, just as for alter ego and veil-piercing causes of action, are properly characterized as property of the bankruptcy estate." *Id.* at 880.

Dated:  New York, New York
        November 5, 2014

Respectfully submitted,

   /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

# Exhibit B

Hearing Date and Time: February 4, 2015 at 9:45 a.m. (Eastern Time)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
In re                                                       :        Chapter 11
                                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.*,   :        **Case No.: 09-50026 (REG)**
     **f/k/a General Motors Corp.,** *et al.*    :
                                                            :
                        **Debtors.**                 :        **(Jointly Administered)**
                                                            :
------------------------------------------------------------x


**REPLY BRIEF BY GENERAL MOTORS LLC ON THRESHOLD ISSUES**
<u>**CONCERNING ITS MOTIONS TO ENFORCE THE SALE ORDER AND INJUNCTION**</u>

09-50026-reg Doc 13043-3 Filed 12/22/14 Entered 12/22/14 23:03 Exhibit Document
Pg 150 of 251

**A.    Any Successor Liability Theory Is Meritless And**
**Thus The Claims Contained in the Pre-Sale Consolidated**
**Complaint And The Pre-Sale Accident Cases Should Be Dismissed**

In its Opening Brief, New GM demonstrated that the Sale Order and Injunction clearly
provided that New GM is ***not*** a successor to Old GM and that New GM did not assume ***any***
successor or transferee liabilities.  *See* New GM Opening Brief, at 63-66.  The Court ruled: "the
law in this Circuit and District is clear; the Court will permit GM's assets to pass to the purchaser
free and clear of successor liability claims, and in that connection, will issue the requested
findings and associated injunction." *Gen. Motors*, 407 B.R. at 506; *see also* Sale Order and
Injunction, ¶¶ AA, BB, DD, 6, 7, 8, 10, 46 and 47; Sale Agreement, § 9.19.

Plaintiffs have stated that regardless of the notice that they received relating to the 363
Sale, there is no reason to modify the Sale Order and Injunction.  *See* Economic Loss Plaintiffs'
Opposition, at 64-65.  Based on that concession, the factual findings in the Sale Order and
Injunction relating to the structure of the transaction, including the arms-length nature of the sale
transaction, remain unmodified.  Those factual findings firmly establish that there is no viable
basis for Plaintiffs to assert a successor liability claim against New GM.  Thus, under any
circumstance, and regardless of the 363 Sale notice issue, Plaintiffs have no meritorious
successor liability claim against New GM.

The reasoning in *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014), *cert denied sub nom.*,
*Diacetyl Plaintiffs v. Aaroma Holdings, LLC*, 135 S. Ct. 436 (2014), fully supports this Court's
ruling regarding "no successor liability."  Based on *Emoral*, the "no successor liability" holding
would be binding on Plaintiffs without regard to the type of notice they received regarding the
363 Sale.  That is because successor liability claims, rather than being individual claims of
creditors, are general claims of the bankruptcy estate, such that a debtor can compromise them,
and bind all creditors.  *See id.* at 882.  Here, successor liability claims against New GM based on

57

(a) economic losses relating to Old GM vehicles and parts, and (b) pre-Sale accidents, are general, derivative (as compared to individualized) claims, such that Old GM could and did, as part of the 363 Sale, release such successor liability claims (to the extent they ever existed) on behalf of its creditors.

Designated Counsel attempt to distinguish *Emoral* by arguing that courts in the Second Circuit have rejected this argument, but they are wrong. The Third Circuit in *Emoral* relied on *In re Keene Corp.*, 164 B.R. 844 (Bankr. S.D.N.Y. 1994), a case in this Circuit that represents the prevailing law, which found that "state law causes of action for successor liability, just as for alter ego and veil-piercing causes of action, are properly characterized as property of the bankruptcy estate." *Emoral*, 740 F.3d at 880; *see also In re Alper Holdings USA*, 386 B.R. 441 (Bankr. S.D.N.Y. 2008) (successor liability and alter ego claims were of a generalized nature, and did not allege a particularized injury, and were thus property of the estate). Moreover, the Second Circuit has found that "[i]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989).[71]

Here, an economic loss claimant and a pre-Sale accident claimant have no better rights than any other Old GM creditor to assert a successor liability claim against New GM. Such

---

[71] Designated Counsel's reliance on *In re Bernard L. Madoff Investment Securities LLC*, 721 F.3d 54 (2d Cir. 2013) is misplaced. The Second Circuit noted that its ruling was different than the result in *St. Paul* because, among other things, "[t]he customers' claims against the Defendants are not 'common' or 'general'" and that the "Defendants' alleged wrongful acts . . . could not have harmed all customers in the same way." *Id.* at 71. But it also noted that the different result was reached in *Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012): "the court found the claims to be 'general' in the sense articulated in *St. Paul*, in that they arose from a single set of actions that harmed BLMIS and all BLMIS customers in the same way." *Madoff*, 721 F.3d at 71 n.20.

*Ahcom, Ltd. v. Smeding*, 623 F.3d 1248 (9th Cir. 2010) also does not advance Designated Counsel's arguments because the court there found that, under California law, there was no general alter ego claim that could be brought. If there was a general alter ego claim, the estate's right to pursue it would have been "exclusive." *See id.* at 1250 ("When the trustee does have standing to assert a debtor's claim, that standing is exclusive and divests all creditors of the power to bring the claim.")(citation omitted).

claimants do not have a particularized injury they could assert against New GM as they cannot

allege that New GM caused them any direct injury, given that it was Old GM (and not New GM)

that manufactured and sold the allegedly defective vehicles and parts.[72]  Any potential successor

liability claim would only be based on New GM's status as a purchaser in the 363 Sale, which all

unsecured creditors of Old GM commonly shared.  Under such circumstance, any possible

successor liability claim was property of the estate and the debtor waived such claim as part of

the 363 Sale.  The Court's findings as to the waiver of the successor liability claim were proper

and should remain unchanged, notwithstanding the 363 Sale notice issue raised by Plaintiffs.

Specifically, in the Sale Order and Injunction (¶ R), the Court found that "[t]he purchaser

is a newly-formed Delaware corporation that, as of the date of the Sale Hearing, is wholly-owned

by the U.S. Treasury."  It also found that:

> The Purchaser shall not be deemed, as a result of any action taken in connection
> with the MPA or any of the transactions or documents ancillary thereto or
> contemplated thereby or in connection with the acquisition of the Purchased
> Assets, to: (i) be a legal successor, or otherwise be deemed a successor to the
> Debtors (other than with respect to any obligations arising under the Purchased
> Assets from and after the Closing); (ii) have, de facto or otherwise, merged with

---

[72]  New GM is aware that in a few states there is case law to suggest a "product line" exception to the general rule
against successor liability.  This Court ruled in the Sale Decision that such case-law was pre-empted by Section 363
of the Bankruptcy Code.  *See Gen. Motors*, 407 B.R. at 503 n.99.  But even if there were no federal preemption,
Plaintiffs have not cited any case to suggest that the product line exception applies to economic loss claims or pre-
Sale accident claims like those at issue here. That is no surprise. The product line exception, "is informed by the
concept of strict liability and the public policy determination that, if the requirements are met, the burden caused by
defective products should fall to the successor rather than the injured party."  William Hao, *The Effects of
Bankruptcy Discharge and Sale on Successor Liability Claims*, 17 J. BANKR. L. & PRAC. 3 art. 4 (June 2008).
Accordingly, "(w)ith respect to claims sounding in negligence, courts have unanimously declined to apply the
product line exception, because the exception was derived from, and limited by principles of strict liability." David
J. Marchitelli, Annotation, *Liability of Successor Corporation for Injury or Damage Caused by Product Issued by
Predecessor, Based on the "Product Line" Successor Liability*, 18 A.L.R. 6th 629, § 2 (2006); *see id.* § 9.  If the
strict-liability-based rationale for the product line exception does not apply to a predecessor's *negligent* conduct, it
equally should not impose liability on a successor for a predecessor's alleged violations of consumer protection
laws.  That would be true in any case but is particularly so where, as here, the consumer-protection law violations
allegedly caused only economic losses (not damage to person or property).  Beyond that, the "paradigm for
successor liability for product liability claims is when the injury occurs *after* the sale and *after* the assets of the
selling corporation have been distributed."  *See* Ezra H. Cohen, *Successor Liability in § 363 Sales*, AM. BANKR. INS.
J. 11, 46 (Nov. 2003) (emphasis supplied). Accordingly, the product line exception has no logical application to
liabilities that accrued prior to the 363 Sale and thus no application to pre-Sale accident claims.

not the good faith purchaser for value (New GM). The Consolidated Complaints and the Pre-Sale Accident Cases assert claims against New GM that are clearly Retained Liabilities of Old GM. Such actions unquestionably violate the Sale Order and Injunction, and the Sale Agreement, and should be barred. Accordingly, the Motions to Enforce should be granted, and Plaintiffs directed to cease and desist from prosecuting their improper claims against New GM.

Dated: New York, New York        Respectfully submitted,
      January 16, 2015

                               /s/ Arthur Steinberg
                               Arthur Steinberg
                               Scott Davidson
                               KING & SPALDING LLP
                               1185 Avenue of the Americas
                               New York, New York 10036
                               Telephone: (212) 556-2100
                               Facsimile: (212) 556-2222

                               Richard C. Godfrey, P.C. (admitted pro hac vice)
                               Andrew B. Bloomer, P.C. (admitted pro hac vice)
                               KIRKLAND & ELLIS LLP
                               300 North LaSalle
                               Chicago, IL 60654
                               Telephone: (312) 862-2000
                               Facsimile: (312) 862-2200

                               *Attorneys for General Motors LLC*

# Exhibit C

Pg 16 of 26

**Hearing Date and Time: To Be Determined**
**Opposition Deadline: December 16, 2014**
**Reply Deadline: January 16, 2015**

| | |
|---|---|
| Edward S. Weisfelner | Sander L. Esserman |
| David J. Molton | STUTZMAN, BROMBERG, ESSERMAN & |
| May Orenstein | PLIFKA, A PROFESSIONAL |
| Howard S. Steel | CORPORATION |
| Rebecca L. Fordon (*pro hac vice* pending) | 2323 Bryan Street, Suite 2200 |
| BROWN RUDNICK LLP | Dallas, Texas 75201 |
| Seven Times Square | Telephone: 214-969-4900 |
| New York, New York 10036 | Email: esserman@sbep-law.com |
| Telephone: 212-209-4800 | |
| Email: eweisfelner@brownrudnick.com | |
| Email: dmolton@brownrudnick.com | |
| Email: morenstein@brownrudnick.com | |
| Email: hsteel@brownrudnick.com | |
| Email: rfordon@brownrudnick.com | |

*Designated Counsel for Certain Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
                                          :
In re:                                    :      Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,       :      Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., et al.,   :
                                          :
                          Debtors.        :      (Jointly Administered)
------------------------------------------------------------X
```

**DESIGNATED COUNSEL'S OPPOSITION TO**
**NEW GM'S MOTIONS FOR ENFORCEMENT OF SALE ORDER AND INJUNCTION**

liabilities as a means to maximize the value of an estate for creditors justify overriding due process concerns, as the <u>Paris</u> court proposes. <u>See</u> <u>In re Paris Indus. Corp.</u>, 132 B.R. at 509 n.11.

**4.    A Failure Of Due Process Cannot Be Cured By Speculation About What Could Have Occurred Absent The Violation.**

Contrary to New GM's arguments, once a claimant has shown that it has been deprived of an interest or claim without constitutionally adequate notice and opportunity to be heard, a due process violation has been established.[44]   The claimant is not obligated to demonstrate a "reasonable likelihood that the result of this claim would have been different absent the violation." <u>Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs</u>, 137 F.3d 799, 807 (4th Cir. 1998).  As the Supreme Court has explained, "[t]o one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merit." <u>Fuentes v. Shevin</u>, 407 U.S. 67, 87 (1972) (citation omitted), <u>reh'g denied</u>, 409 U.S. 902 (1972).   Thus, courts reject as "improper speculation" and "hindsight rationalization[]"

---

[44]  New GM does not seriously dispute that Plaintiffs' successor liability claims are property interests.  Nor could it, as this was the precise reason this Court found it could give New GM the successor liability bar on which it now relies.  <u>See</u> <u>In re Gen. Motors Corp.</u>, 407 B.R. 463,  503-04 (Bankr. S.D.N.Y. 2009) (concluding successor liability claim is "interest in property" that may be barred pursuant to Section 363(f) if other requirements are satisfied), <u>aff'd sub nom.</u> <u>Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)</u>, 428 B.R. 43 (S.D.N.Y. 2010), and <u>aff'd sub nom.</u> <u>Parker v. Motors Liquidation Co. (In re Motors Liquidations Co.)</u>, 430 B.R. 65 (S.D.N.Y. 2010). Instead, New GM says that any successor liability claims were property of Old GM's estate as of the Sale Order and could be released without Plaintiffs' participation.  Br. at 48-49.  New GM selectively cites the Third Circuit's decision in <u>In re Emoral, Inc.</u>, 740 F.3d 875 (3d Cir. 2014), <u>cert. denied sub nom.</u> <u>Diacetyl Plaintiffs v. Aaroma Holdings, LLC</u>, 135 S. Ct. 436 (2014), ignoring that other circuits around the country, including the Second Circuit, have rejected similar arguments.  <u>See</u> <u>Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)</u>, 721 F.3d 54, 70 (2d Cir. 2013) (analyzing whether the underlying creditor claims were personal to the creditor or general to the corporation to determine property of the estate issue, rather than analyzing whether claims were generalized or particularized as did <u>Emoral</u>), <u>cert. denied sub nom.</u> <u>Picard v. HSBC Bank Plc</u>, 134 S.Ct. 2895 (2014); <u>Ahcom, Ltd. v. Smeding</u>, 623 F.3d 1248, 1249 (9th Cir. 2010) (holding that creditor, as opposed to trustee, was proper party to assert alter ego action); <u>In re Savage Indus., Inc.</u>, 43 F.3d at 722 (concluding non-debtor's successor liability claim against asset purchaser could not be extinguished by Section 363 sale without notice, and thus implicitly concluding claim belonged to tort claimant and not estate).  In any event, <u>Emoral</u> has little relevance here, as the injured claimants there had notice of the settlement and had actually appeared to contest it, such that no due process issues were before the court.  <u>See</u> <u>In re Emoral, Inc.</u>, 740 F.3d at 877, 882 (construing estate release language in court-approved settlement agreement, which was negotiated with participation of diacetyl plaintiffs, to release successor liability claims).

## CONCLUSION

WHEREFORE, Designated Counsel, for and on behalf of certain Plaintiffs, respectfully
requests that the Court (i) deny New GM's Motions to Enforce the Sale Order and Injunction,
and (ii) grant such other and further relief as the Court may deem just and proper.


Dated:  New York, New York
            December 16, 2014                      Respectfully submitted,


                                               _/s/ Edward S. Weisfelner_____
                                               Edward S. Weisfelner
                                               David J. Molton
                                               May Orenstein
                                               Howard S. Steel
                                               Rebecca L. Fordon (*pro hac vice* pending)
                                               BROWN RUDNICK LLP
                                               Seven Times Square
                                               New York, New York 10036
                                               Tel: 212-209-4800
                                               eweisfelner@brownrudnick.com
                                               dmolton@brownrudnick.com
                                               morenstein@brownrudnick.com
                                               hsteel@brownrudnick.com
                                               rfordon@brownrudnick.com

                                               -and-

                                               Sander L. Esserman
                                               STUTZMAN, BROMBERG, ESSERMAN &
                                               PLIFKA, A PROFESSIONAL
                                               CORPORATION
                                               2323 Bryan Street, Ste 2200
                                               Dallas, Texas 75201
                                               Tel: 214-969-4900
                                               esserman@sbep-law.com

                                               *Designated Counsel for Certain Plaintiffs,*
                                               *Represented in the MDL Proceeding by Co-*
                                               *Lead Counsel:*

                                               Steve W. Berman
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                               1918 Eighth Avenue, Suite 3300
                                               Seattle, WA 98101

-and-

555 Fifth Avenue, Suite 1700
New York, New York 10017

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111

-and-

250 Hudson Street, 8th Floor
New York, New York 10013

Robert C. Hilliard
HILLIARD MUÑOZ GONZALES LLP
719 S. Shoreline Boulevard, Suite 500
Corpus Christi, Texas 78401

# Exhibit D

# 15-2844(L)

## 15-2847(XAP), 15-2848(XAP)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆◆

IN THE MATTER OF: MOTORS LIQUIDATION COMPANY,

*Debtor.*

CELESTINE ELLIOTT, LAWRENCE ELLIOTT, BERENICE SUMMERVILLE,

*Creditors-Appellants-Cross-Appellees,*

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEE-CROSS-APPELLANT
## GENERAL MOTORS LLC (NEW GM)

ARTHUR J. STEINBERG
SCOTT DAVIDSON
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2100

MERRIT E. MCALISTER
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
(404) 572-4600

EDWARD L. RIPLEY
KING & SPALDING LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
(713) 751-3200

RICHARD C. GODFREY, P.C.
ANDREW B. BLOOMER, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000

*Attorneys for Appellee-Cross-Appellant
General Motors LLC*

SESAY and BLEDSOE PLAINTIFFS, IGNITION SWITCH PLAINTIFFS,
IGNITION SWITCH PRE-CLOSING ACCIDENT PLAINTIFFS,
DORIS POWLEDGE PHILLIPS,

*Appellants-Cross-Appellees,*

GROMAN PLAINTIFFS,

*Appellants,*

—against—

GENERAL MOTORS LLC,

*Appellee-Cross-Appellant,*

WILMINGTON TRUST COMPANY,

*Trustee-Appellee-Cross-Appellant,*

PARTICIPATING UNITHOLDERS,

*Creditor-Appellee-Cross-Appellant.*

Case 14-1654, Document 131, 04/14/17, 2016474, Page 415 Exhibit B

***Second***, because of the difference in focus between the sale process and the claims-resolution process, the notice to creditors is different for each.[22]  In the sale context, the notice relates primarily to the specifics of the sale.  As is often the case in Section 363 sales, the type of notice Old GM provided in 2009 was dictated by extreme time deadlines/cost constraints, with the sale needing to close a little over a month from filing because of the dire nature of Old GM's financial condition.  In the claims-resolution process, the notice generally relates to how, when, and what to include in a claim filed against the debtor.  Compared to the Sale notice process, there typically is not the same time urgency relating to the claims resolution notice because there is not a hemorrhaging business and purchaser-imposed deadlines.[23]

---

[22] Appellants' reliance on *DPWN Holdings (USA), Inc. v. United Airlines*, 871 F. Supp. 2d 143 (E.D.N.Y. 2012), *remanded*, 747 F.3d 145 (and its follow-up, No. 11-CV-564 (JG), 2014 U.S. Dist. LEXIS 130154, at *6 (E.D.N.Y. Sept. 16, 2014) illustrates their erroneous attempt to conflate notice in a sale context and notice in a claims-adjudication/plan context. Pre-Closing Accident Plaintiffs' Br. 29-31.  The *DPWN Holdings* cases only dealt with claims-adjudication/plan issues. The alleged failure to provide notice was committed by the entity for which a remedy was sought and there was no final determination as to whether a remedy was appropriate.  It is inapposite to the due process sale issues here.

[23] Ultimately, Appellants' prejudice argument presumes that the pursuit of a successor liability claim is a vested property right, like a

> ***Third***, lack of direct-mail notice in the context of a sales process
>
> has different consequences than in the claims-adjudication context.  In
>
> the latter, an existing claim may get extinguished without direct-mail

---

creditor's claim against the debtor's estate.  This argument fails for
three reasons.  ***First***, Appellants could not have a property interest in
their state-law successor liability claims because successor liability
claims belong to the bankruptcy estate, as derivative claims for all
creditors and do not belong to individual creditors.  *See In re Emoral,
Inc.*, 740 F.3d 875, 882 (3d Cir. 2014), *cert denied sub nom., Diacetyl
Plaintiffs v. Aaroma Holdings, LLC*, 135 S. Ct. 436 (2014) (explaining
that a "no successor liability" holding would be binding on plaintiffs
without regard to the type of notice they received regarding the sale
because successor liability claims are general claims of the bankruptcy
estate); *see also id.* at 880 ("[S]tate law causes of action for successor
liability . . . are properly characterized as property of the bankruptcy
estate.") (citing *In re Keene Corp.*, 164 B.R. 844, 849 (Bankr. S.D.N.Y.
1994)).

***Second***, even if successor liability claims belonged to Appellants,
the Bankruptcy Code preempts state law to allow "free and clear" sales
and there can be no due process violation based on preempted state law.
*See In re Gen. Motors Corp.*, 407 B.R. 463, 503 n.99 (Bankr. S.D.N.Y.
2009); *see also In re White Motor Credit Corp.*, 75 B.R. 944, 951 (Bankr.
N.D. Ohio 1987) ("The effects of successor liability in the context of a
corporate reorganization preclude its imposition.  The successor liability
specter would deleteriously affect sales of corporate assets, forcing
debtors to accept less on sales to compensate for this potential liability.
This negative effect on sales would only benefit product liability
claimants, thereby subverting specific statutory priorities established
by the Bankruptcy Code.").

***Third***, Section 363 does not extinguish claims at all, it merely
transfers those claims to the Sale proceeds.  Even a secured creditor
with clear collateral rights can have its property interests forcibly
transferred to the collateral proceeds under Section 363.  Unsecured,
contingent creditors should fare no better.

January 11, 2016                     Respectfully submitted,


                                     By:_____/s/ Arthur J. Steinberg_____

                                     Arthur J. Steinberg
                                     Scott Davidson
                                     KING & SPALDING LLP
                                     1185 Avenue of the Americas
                                     New York, New York 10036
                                     (212) 556-2100
                                     asteinberg@kslaw.com
                                     sdavidson@kslaw.com

                                     Merritt E. McAlister
                                     KING & SPALDING LLP
                                     1180 Peachtree Street, NE
                                     Atlanta, Georgia 30309-3521
                                     (404) 572-4600
                                     mmcalister@kslaw.com

                                     Edward L. Ripley
                                     KING & SPALDING LLP
                                     Houston, Texas 77002-5213
                                     (713) 751-3200
                                     eripley@kslaw.com

                                          -and-

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
rgodfrey@kirkland.com
abloomer@kirkland.com

*Attorneys for Appellee/Cross-*
*Appellant, General Motors LLC*