# **<u>Exhibit A</u>**

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

| | | |
|---|---|---|
| Andrew B. Bloomer, P.C.<br>To Call Writer Directly:<br>(312) 862-2482<br>andrew.bloomer@kirkland.com | 300 North LaSalle<br>Chicago, Illinois 60654<br>(312) 862-2000<br>www.kirkland.com | Facsimile:<br>(312) 862-2200 |

April 27, 2017

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:  *In re: General Motors LLC Ignition Switch Litigation,* 14-MD-2543

Dear Judge Furman:

  New GM submits this letter in response to the Court's Order granting leave to file supplemental briefs regarding the Second Circuit's decision in *In re Tronox Inc.*, 2017 WL 1403001 (2d Cir. Apr. 20, 2017). Dkt. No. 3897. That decision further supports summary judgment for New GM against plaintiffs' successor liability claims.[1] Both in *Tronox* and here, any successor liability claims would benefit all creditors and therefore are property of the Old GM bankruptcy estate ("Estate"), not the plaintiffs. *See Tronox*, 2017 WL 1403001 at *18.

  Under the Bankruptcy Code, creditors of a debtor lack standing to assert claims that are property of the estate. *See*, *e.g.*, *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989). Upon commencement of a Chapter 11 proceeding, the estate's property consists of "all legal or equitable interests of the debtor in property," including causes of action. 11 U.S.C. § 541(a)(1); *St. Paul*, 884 F.2d at 701. The estate's property also includes any "interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

  In *Tronox*, the debtor's profitable assets were spun off into New Kerr-McGee. 2017 WL 1403001 at *2. Plaintiffs alleging injuries from a Tronox plant's chemicals sued New Kerr-McGee "based on various indirect-liability alter-ego/veil-piercing and successor-liability theories." *Id.* at *3. After Tronox filed for Chapter 11, the estate brought fraudulent conveyance claims against New Kerr-McGee. *Id.* at *3-4. New Kerr-McGee settled, receiving an injunction against claims extinguished by the settlement. *Id.* at *4-5. Once plaintiffs sought to renew their lawsuit, New Kerr-McGee moved to enforce that injunction. *Id.* at *5-7.

  The Second Circuit held that "the District Court correctly classified the . . . Plaintiffs' claims as generalized, derivative claims comprising estate property." *Id.* at *18. As *Tronox* explained, successor liability claims belong to the bankruptcy estate because establishing

---

[1] New GM made this argument in its opening successor liability brief, without the benefit of *Tronox*. *See* Dkt. No. 3520 at 24 & 61 n.54. New GM also asserted it in the Bankruptcy Court and Second Circuit in connections with motions to enforce the Sale Order. *In re Motors Liquidation Co.*, 529 B.R 510, 551-55 (Bankr. S.D.N.Y. 2015); New GM Br. at 57-58 n.23, *In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016). The Bankruptcy Court rejected it, choosing to follow the dissent in *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014). 529 B.R at 552-54. The July 2016 Second Circuit opinion did not address New GM's argument, which was then primarily based on the majority *Emoral* opinion. *Motors Liquidation*, 829 F.3d 135.

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 27, 2017
Page 2

successor liability would benefit all creditors and the facts to prove successor liability are available to any creditor: "The critical distinction between the underlying tort claim against the Tronox debtors and the alter-ego claim against New Kerr-McGee is that establishing the former would benefit only the Avoca Plaintiffs as individual creditors, whereas establishing the latter—that New Kerr-McGee is the alter ego of the relevant Tronox debtors and should therefore be charged with all its liabilities—would benefit all creditors of the Tronox debtors generally." *Id.* "The facts necessary to prove that the Tronox debtors committed the underlying torts may be particular to the Avoca Plaintiffs, but the facts necessary to impute that liability to New Kerr-McGee 'would be . . . generally available to any creditor, and recovery would serve to increase the pool of assets available to all creditors.'" *Id.*

*Tronox* bars plaintiffs' successor liability claims here. Whether plaintiffs' *economic loss claims* are individualized is *irrelevant* under *Tronox*. Rather, the relevant inquiry is whether a determination that New GM "is the [successor] of [Old GM] would benefit all creditors of [Old GM] generally." *Id.* Moreover, the alleged facts supporting plaintiffs' successor liability claims—that New GM retained various Old GM personnel, operations, and trademarks; that New GM assumed certain Old GM liabilities; and that the U.S. exercised its discretion to give Old GM 10% of New GM shares to pay creditors, *see* Dkt. No. 3617 at 6-11—are "generally available to any creditor." 2017 WL 1403001 at *18. Thus, plaintiffs' successor liability claims against New GM are not individualized. Any successor liability claims are Estate property.

*Tronox* relies on the majority opinion in *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014) and rejects the dissent in that case. 2017 WL 1403001 at *14-15. The *Emoral* majority likewise held that mere continuation claims are property of the bankruptcy estate: "[O]ther courts applying New York and New Jersey law have held that state causes of action for successor liability . . . are properly characterized as property of the bankruptcy estate." *Id.* at 880 (*citing In re Keene Corp.*, 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994); *In re Buildings by Jamie, Inc.*, 230 B.R. 36, 43 (Bankr. D.N.J. 1998)). Importantly, *Emoral* noted that "[p]laintiffs concede that there is *no relevant caselaw* directly supporting their position that individual *personal injury claims asserted on a successor liability theory should not be considered property of the bankruptcy estate*." 740 F.3d at 881 (emphasis added).

Plaintiffs cannot avoid *Tronox* by alleging that they did not discover their claims until 2014. *Tronox* holds that the correct focus is on the *successor liability* allegations, not the nature or timing of the *underlying* claims. 2017 WL 1403001 at *18. Whether plaintiffs were aware of the *underlying* claims before 2014 is irrelevant.[2] Potential *successor liability* claims belong to the Estate from the time of the Sale.

---

[2] Moreover, even if (despite *Tronox's* plain holding) plaintiffs' underlying claims were relevant, plaintiffs had contingent claims as of the Sale date, *see Motors Liquidation*, 829 F.3d at 157, notwithstanding their alleged subsequent discovery of those claims.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 27, 2017
Page 3

  Nor can plaintiffs argue that their successor liability claims are different from those of other creditors because plaintiffs prevailed on their due process claim. As *Tronox* holds, a court must evaluate the successor liability claim itself, not any other claims, to determine whether it belongs to the estate. Whether all Old GM creditors would have benefitted from a successor liability claim is examined "at the time of the Sale," which plaintiffs themselves argue is the dispositive point of analysis. Dkt. No. 3617 at 37-38. At the time of the Sale, only the Estate and not individual creditors held a successor liability claim. Moreover, there is no evidence that the Estate transferred successor liability claims to plaintiffs after the Sale.

  Plaintiffs may also posit that New GM's argument is inconsistent with *In re Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016). This would be incorrect. New GM is not seeking to extinguish plaintiffs' successor liability claims due to the "free and clear" clause of the Sale Order. Instead, as the Second Circuit affirmed in *Tronox*, any successor liability claims are property of the Estate, preventing individual putative creditors like the FACC plaintiffs from pursuing them at all.

  Further, plaintiffs might argue that their inability to challenge the consideration paid to Old GM renders *Tronox* inapplicable, given that *Tronox* involved a fraudulent conveyance claim. Dkt. No. 3617 at 2, 5. This again would be incorrect because it would override the essential point of Tronox—that a successor liability claim is general when proof of the allegations would be available to and benefit any creditor. 2017 WL 1403001, at *18. This conclusion is reinforced by *Emoral*, which held that "mere continuation" claims were property of the bankruptcy estate. 740 F.3d at 880; *see also id.* at 885 (Cowen, J., dissenting) (arguing, unsuccessfully, that dissent could "not see how [defendant's] alleged 'mere continuation' of Emoral could have harmed Emoral itself," an argument the *Emoral* majority rejected). Under *Emoral* and *Tronox*, because plaintiffs have "fail[ed] to demonstrate how recovery on their successor liability cause of action would not benefit all creditors of [the debtor] given that [the defendant], as a mere continuation of [the debtor], would succeed to all of [the debtor's] liabilities," *id.* at 880, any successor liability claims are property of the Estate.

  Finally, plaintiffs' successor liability claims are far weaker than those asserted in the *Tronox* and *Emoral* bankruptcies. Unlike *Tronox* and *Emoral*, the 363 Sale transaction challenged here was Court-approved, and resulted in Old GM creditors having priority to the Sale proceeds over any Old GM shareholders. State-law mere continuation and de facto merger theories contradict the fundamental premise of Court-approved 363 Sales. *See CFTC v. Weintraub,* 471 U.S. 343, 355 (1985) ("One of the painful facts of bankruptcy is that the interests of *shareholders become subordinated to* the interests of *creditors*.") (emphasis added); *Cargo Partner AG v. Albatrans, Inc.*, 207 F. Supp. 2d 86, 95 (S.D.N.Y. 2002) (successor liability exceptions apply to circumstances in which shareholders "*retain the benefits of their ownership interest* while leaving creditors without a remedy") (emphasis added) (internal quotations omitted).

  For all the foregoing reasons, the Court should grant New GM summary judgment.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 27, 2017
Page 4

Respectfully submitted,

/s/ Richard C. Godfrey, P.C.
/s/ Andrew B. Bloomer, P.C.

*Counsel for Defendant General Motors LLC*

cc:  MDL Counsel of Record