

William P Weintraub
212.813.8839
WWeintraub@goodwinprocter.com

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

goodwinlaw.com
+1 212 813 8800

May 12, 2017

**VIA ECF FILING AND EMAIL**

Hon. Martin Glenn
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

Re:   **In re Motors Liquidation Co., et al. (Case No. 09-50026 (MG))**
      **Response to May 5, 2017 Letter From Counsel to New GM [Docket No. 13921]**

Dear Judge Glenn,

      This letter responds to the letter sent by counsel to New GM dated May 5, 2017 (the "New GM Letter") [Docket No. 13921] regarding statements I made at the April 20, 2017 hearing on the 2016 Threshold Issues.

      First, regarding statements made about "non-ignition switch" post-closing accident cases not being part of the MDL, which are quoted in Part A of the New GM Letter, I was referring to the many personal injury plaintiffs asserting claims against New GM arising in accidents involving vehicles not subject to any ignition switch-related recalls and that are based on accidents allegedly caused by defects unrelated to any sort of ignition switch defect. I apologize for using "non-ignition switch" in the colloquial sense by not being precise and inadvertently omitting the ignition switch-related personal injury and wrongful death claims included under the definition of "Non-Ignition Switch Claims." Goodwin acknowledges that recalls for ignition switches other than the "Ignition Switch" in Subject Vehicles subject to NHTSA Recall No. 14v047 are part of the MDL and I did not intend to suggest they were not. My point was and is that there are scores of lawsuits alleging defects in Old GM manufactured vehicles that were involved in post-363 Sale accidents that have nothing to do with ignition switches and are not part of the MDL (including clients Goodwin represents in connection with the 2016 Threshold Issues).[1]

---

[1] Indeed, the Non-Ignition Switch Post-Closing Accident Plaintiffs represented by Turner & Associates, P.A. and Butler Wooten & Peal LLP were injured in post-363 Sale incidents involving allegedly defective Old GM manufactured vehicles without ignition switch issues that were never subjected to a recall. Their lawsuits against New GM are pending outside of the MDL. Many others are similarly situated and these are the plaintiffs I was thinking about when I made the statements about the MDL quoted in the New GM Letter.

ACTIVE/90823450.5



May 12, 2017
Page 2

      Whether a plaintiff's claim is part of the MDL or not, however, has nothing to do with whether the September 2015 Scheduling Order set in place a procedure that adequately informed Non-Ignition Switch Post-Closing Accident Plaintiffs that the Fall 2015 briefing was their final opportunity to establish a due process violation as a predicate to the assertion of an Independent Claim against New GM (as New GM has contended). What happens in the Bankruptcy Court is set up both procedurally and substantively by, and decided in, the Bankruptcy Court, not in the MDL. Therefore, no special or heightened understanding of the procedures that led to the November 2015 Decision and December 2015 Judgment can be assumed from whether an individual case was part of the MDL. As we argued in our briefs and at the April 20 hearing, prior to the litigation over the June 2016 Motions to Enforce, this Court never established a process – through the September 2015 Scheduling Order or otherwise – to litigate whether Non-Ignition Switch Post-Closing Accident Plaintiffs could pursue Independent Claims against New GM or whether any due process violations had occurred with respect to defects other than the Ignition Switch Defect. The fact that the Co-Leads in the MDL and their counsel for the 2014 Threshold Issues did not discern the hidden agenda now argued by New GM or interpret the September 2015 Scheduling Order as some kind of "two minute warning" provides some idea of how informative that order would have been to non-bankruptcy lawyers litigating personal injury and wrongful death cases in state and federal courts inside or outside the MDL.

      <u>Second</u>, New GM takes my statements on discovery out of context in an attempt to conflate discovery in the MDL with what was going on in this Court in the Fall of 2015. My point during the April 20 hearing was that at the time the September 2015 Scheduling Order was entered, discovery <u>was stayed in the Bankruptcy Court</u> over whether there had been a due process violation by Old GM in connection with the notice given of the 363 Sale. The discovery in the MDL referenced in Part B of the New GM Letter was not focused on showing a due process violation at the time of the 363 Sale based on Old GM's knowledge and concealment of particular defects in order to assert Independent Claims.

      It is unclear whether the discovery referenced in New GM's letter covered all recalls or defects (we believe it did not) or whether the discovery produced by New GM contained the proverbial due process "needle" buried in the discovery haystack. Nor were any plaintiffs ever told the haystack was provided for the purpose of finding the needle or that the September 2015 Scheduling Order signaled there was now a two-week race underway to find the needle. Nowhere in the record is there any indication that plaintiffs were informed a clock was ticking to use discovery being developed in the MDL or seek leave from this Court to take additional discovery to establish a due process predicate to assert Independent Claims. Even assuming the haystack contained the due process needle, nothing in the New GM Letter changes the plain text deficiency in the September 2015 Scheduling Order, the misleading correspondence from New GM, the absence of a starting gun telling plaintiffs it is "do-or-die" on due process or Independent Claims, or the fact that neither the November 2015 Decision nor the December 2015 Judgment permanently barred the assertion of Independent Claims. Nor does the New GM Letter address the compressed time period of the Fall 2015 briefing or the total absence of any



May 12, 2017
Page 3

reference to an evidentiary hearing on proving a due process violation (or any opportunity for such an evidentiary hearing).[2]

<u>Third</u>, New GM's contentions in Part C of its letter that Non-Ignition Switch Post-Closing Accident Plaintiffs appeared and actively litigated the issues leading to the November 2015 Decision and December 2015 Judgment are inaccurate and misleading. New GM's opening reference to the June 2015 Judgment is made out of context. The 2014 Threshold Issues did not address Post-Closing Accident cases. Thus, the reference in the June 2015 Judgment to certain lawsuits that involved both economic loss and Post-Closing Accident claims (Exhibit C, Hybrid Cases) proves nothing. The June 2015 Judgment was entered after the briefing and argument over the 2014 Threshold Issues was completed and the Court entered its April 2015 Decision. Non-Ignition Switch Post-Closing Accident Plaintiffs were not part of that litigation because there was <u>no</u> Motion to Enforce brought against any of them until the summer of 2016.[3] Our opening brief on the 2016 Threshold Issues already addressed the "Hybrid Cases" listed on Exhibit C to the June 2015 Judgment. Specifically, our brief states:

> In fact, there is not a single reference to post-sale accident cases in the June 2015 Judgment. The reference to "Independent Claims" in the June 2015 Judgment was confined to "Ignition Switch Plaintiffs" and solely referred to plaintiffs with economic loss claims. See June 2015 Judgment ¶¶ 2, 4, 5, 9, 11. Any purported obligation established under the June 2015 Judgment to seek a determination as to due process or to file a No Stay, No Strike, or Objection Pleading (as defined in the June 2015 Judgment) simply did not apply to Post-Closing Accident Plaintiffs. See, e.g., June 2015 Judgment ¶¶ 8, 11, 13, 18. [FN49]
>
> [FN 49] The schedules attached to the June 2015 Judgment make this clear. The so-called Hybrid Cases (*i.e.*, post-sale accident cases in which the plaintiff alleged economic loss in addition to personal injury) were included on Exhibit C because New GM contended that the economic loss aspect of the Hybrid Cases might violate the terms of the Sale Order as impermissible successor liability claims. In addition, for personal injury and wrongful death plaintiffs, the only issue addressed in the 2014 Threshold Issues briefing in terms of New GM's liability for personal injury and wrongful death claims was successor liability for pre-sale Ignition Switch Personal Injury Plaintiffs.

*Plaintiffs' Joint Opening Brief On The 2016 Threshold Issues* [Docket No. 3866], 41 n.49. The Hybrid Cases referenced in the New GM Letter are a red herring.

---

[2] The September 2015 Scheduling Order was entered on September 3, 2015, and ordered briefing on the Punitive Damages Issue, the Imputation Issue, and with respect to marked pleadings for the Bellwether cases, the State Complaints, and the Second Amended Consolidated Complaint be <u>completed</u> by September 30, 2015, with oral argument on October 14, 2015.

[3] Working through the definitions in the June 2015 Judgment demonstrates that "Ignition Switch Plaintiffs" are limited to economic loss claimants and the only accident plaintiffs involved in the 2014 Threshold Issues litigation were Ignition Switch <u>Pre</u>-Closing Accident Plaintiffs, who had their own separate definition.

ACTIVE/90823450.5



May 12, 2017
Page 4

As for New GM's other examples, they reinforce rather than refute my statement that Non-Ignition Switch Post-Closing Accident Plaintiffs were not included in the litigation leading up to the November 2015 Decision/December 2015 Judgment.  It is not surprising that when "150-200" lawyers and law firms are served with court papers, threatening letters, and pleadings, the lawyers and law firms respond in some manner.  The few reactions and responses catalogued in the New GM Letter do not demonstrate those particular respondents or anyone else (such as the far larger number that did not respond) read the September 2015 Scheduling Order the way New GM wishes to read it.  Had New GM sent 200 lawyers a court order and correspondence that clearly stated that this was their last and only opportunity to preserve the right to pursue Independent Claims against New GM for its own post-sale actions, the response would have been more robust than what is listed in Part C of the New GM Letter.  But, as previously argued, neither the September 2015 Scheduling Order nor the letters New GM sent with that order disclosed that the Fall 2015 briefing was the recipient's last opportunity to litigate the Independent Claims issue or whether a due process violation occurred at the time of the 363 Sale with respect to any Non-Ignition Switch defect.

Moreover, New GM's examples are flawed because the September 2015 Scheduling Order <u>did</u> inform parties that the ability of plaintiffs to recover punitive damages was one of the matters to be addressed in the Fall 2015 briefing, which was included in that order because of New GM's argument that punitive damages were not included among the Assumed Liabilities it agreed to take on as part of the 363 Sale.  The order did not use the words or mention the topic of "Independent Claims" or draw any connection between punitive damages and Independent Claims.  Consequently, the fact that two Non-Ignition Switch Post-Closing Accident Plaintiffs (*Walton* and *Bavlsik*) responded to the September 2015 Scheduling Order by dropping their punitive damages requests and another (*Moore*) wrote a brief on punitive damages, has no bearing on our argument that Non-Ignition Switch Post-Closing Accident Plaintiffs were not informed that the survival of their rights to pursue Independent Claims or establish a due process violation with respect to their particular defects were at issue during the Fall 2015 briefing (as New GM now contends).

As for Mr. Peller, he has been extremely active for his clients in this case since 2014 and his participation in the Fall 2015 proceedings proves nothing.  In fact, Mr. Peller's involvement during the Fall 2015 proceedings was discussed during the April 20 hearing:

> THE COURT: Mr. Peller was, wasn't he?
> MR. WEINTRAUB: I'm sorry?
> THE COURT: Mr. Peller was.
> MR. WEINTRAUB: Mr. Peller was here for economic loss people and for ignition switch people. I don't believe he was here for non-ignition switch accident claims --
> THE COURT: All right.
> MR. WEINTRAUB: -- but he can -- you can -- he's nodding his head, and he said, that's right.  But even if he was -- but he says he was not.  That wasn't in a representative capacity, because there's no class of non-ignition switch post-closing accident plaintiffs.  There are one-off cases all over the cases.  There was no designated counsel that was ever appointed to speak for them.



May 12, 2017
Page 5

April 20, 2017 Hr'g Tr. at 101:18-102:6.

      The other examples in New GM's letter (*Rickard* and *Benbow*) were simply parties that had not yet proven a due process violation under the due process paradigm established in the April 2015 Decision. In addition, neither of the letters cited in the New GM Letter with respect to these plaintiffs [Docket Nos. 13466 and 13478] uses the term Independent Claims and instead those letters concern whether the claims in those particular complaints were Assumed or Retained Liabilities.

      In sum, the six examples listed in the New GM Letter do not demonstrate the September 2015 Scheduling Order was effective to accomplish what New GM now claims it did. Nor do these examples demonstrate that Non-Ignition Switch Post-Closing Accident Plaintiffs appeared by filing memoranda of law in response to the September 2015 Scheduling Order on the issue of due process at the time of the 363 Sale or the right to assert Independent Claims for defects other than the Ignition Switch Defect.

      New GM ends its letter by referring to certain letters and the December 2015 Judgment itself. Paragraph 14 of the December 2015 Judgment says nothing more than Independent Claims for Non-Ignition Switch Plaintiffs remain stayed. It does not say they those claims are permanently barred or that there was a final but missed opportunity to prove a due process violation predicate to such Independent Claims. Similarly, letters to the Court objecting to New GM's <u>post</u>-hearing efforts to try to expand the December 2015 Judgment to prelude claims by parties who had not participated in the underlying proceedings do not establish that the Independent Claims of Non-Ignition Switch Post-Closing Accident Plaintiffs were actually litigated. Lastly, New GM's reference to Judge Furman's Order No. 13 is gratuitous. That order does not address activities in the Bankruptcy Court nor does it substitute the Co-Leads for individual counsel on the merits of Independent Claims asserted in their specific complaints.

Respectfully submitted,

<u>/s/ William P. Weintraub</u>

William P Weintraub

WPW

ACTIVE/90823450.5