

**AHC Law**
Adelman Hirsch Connors

| Attorneys: | Legal Staff: | Office Locations: |
|---|---|---|
| Robert B. Adelman | Carissa L. Chadwick | **Mailing Address:** |
| Kimberly Andrade | Nancy F. Hedine | 1000 Lafayette Blvd. |
| Michael S. Burrell | Nathalie Henao | Bridgeport, CT 06604 |
| Mary Ann Connors | Sophie M. Piekielniak | Tel. 203.331.8888 |
| Etan Hirsch | Judith A. Schack | Fax 203.333.4650 |
| Joram Hirsch | Diane M. Stein | |
| Joseph P. Krevolin | Alexandra E. Turner | 153 White Street |
| | | Danbury, CT 06810 |
| | | Tel. 203.744.4707 |

100 Riverview Ctr. #201
Middletown, CT 06457
Tel. 860.343.1051

AHCtriallaw.com

May 15, 2017

VIA E-MAIL TRANSMISSION
AND ECF FILING

Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York   10004

    Re:    In re Motors Liquidation Commmpany, et al
            Case No. 09-50026 (MG)

           **Letter Responding to Letter from GM Counsel dated May 8, 2017**

Dear Judge Glenn:

        The undersigned is counsel for the Pitterman plaintiffs in connection with the Motion to Enforce filed by General Motors LLC. ("New GM").  This letter is to respond to the letter, dated May 8, 2017, sent by counsel for New GM in connection with the hearing scheduled for May 17, 2017. This is also to supplement our memorandum previously filed on this issue. See ECF No. 13675.

        In their letter, New GM refers the court to a recent decision by Judge Bernstein in *In re: Old Carco LLC* asserting that the decision "supports New GM's position that the Pitterman claims are barred by the Sale Order." To the contrary, not only is the decision distinguishable from the issues raised by the *Pitterman* complaint, and therefore not controlling, but the decision in fact supports our position that the claims raised by the *Pitterman* complaint which New GM challenges are not barred and should be left for the non-bankruptcy judge to determine.

        The *Old Carco* decision is readily distinguishable from the *Pitterman* complaint insofar as the claims that were addressed in *Old Carco* were not product liability claims assumed by New Chrysler whereas in the *Pitterman* complaint, plaintiffs assert a products liability claim

May 15, 2017
Page 2

liability for which New GM has agreed to assume. There is no question that a failure to warn based on Old GM's conduct comes within the scope of the product liability claims New GM has agreed to assume. It is also established that a failure to recall claim based on Old GM's conduct prior to the June 2009 sale date similarly comes within the scope of a Product Liability claim under Connecticut's Product Liability statute and, therefore within the scope of claims for which New GM has assumed liability. In Arguetta v. Overhead Door Corp., Connecticut Superior Court, 2000 WL 1207261, July 28, 2000 (copy attached as Exhibit A) the court recognized that a failure to recall is included in a "product liability claim" under Connecticut law. In that case, Judge Skolnick denied a motion to strike an allegation that "the defendant failed to recall a garage door opener that was defectively designed and alleges harm as a result of that failure." In allowing such a claim to proceed, Judge Skolnick stated that

> "…by employing the words "but is not limited to" clearly indicates that the list of theories under which a product liability claim may be brought is not exclusive. Therefore, although the act does not state that manufacturers may be liable for failure to recall, the act implies that such a theory is viable given the fact that the list is not exclusive." Id. *1.

Similarly, in Savage v. Scripto-Tokai Corp., 266 F. Supp. 2d 344 (U.S.D.C., 2003), Judge Arterton, held that a claim of failure to recall has legal viability in Connecticut.

> Paragraph 7(1) of the Third Amended Complaint asserts that the defendant is liable "in that it negligently failed to protect the plaintiff by performing a recall and/or it performed an inadequate recall of the product." Defendant asserts that a failure to recall theory is not a separate basis for liability, although defendant acknowledges that there is no Connecticut case law to this effect. Plaintiff correctly notes that the Second Circuit has concluded that the post-sale duty to warn is a valid theory under Connecticut law. *See Densberger v. United Techs. Corp.*, 297 F.3d 66, 71 (2d Cir.2002). Inasmuch as a claim of breach of the post-sale duty to warn is analogous to a claim of failure to recall, plaintiffs' theory has legal viability in Connecticut.

See also *Braniff Airways, Inc. v. Curtiss-Wright Corp*,, 411 F.2d 451, 453 (1969)("It is clear that after such a product has been sold and dangerous defects in design have come to the manufacturer's attention, the manufacturer has a duty either to remedy these or, if complete remedy is not feasible, at least to give users adequate warnings and instructions concerning methods for minimizing the danger.")

Given this, the discussion in *Old Carco* regarding whether a "recall" claim in the context of something other than a product liability was assumed by New Chrysler is simply not applicable to the *Pitterman* case.

Further, the *Old Carco* decision also makes clear that the validity of claims based on New

May 15, 2017
Page 3

GM's post-sale conduct are to be decided by the non-bankruptcy court. Indeed, Judge Bernstein acknowledged that New Chrysler could be liable for its own independent post-sale conduct. Judge Bernstein stated that "if New Chrysler dented, scratched or damaged a Vehicle in the course of the recall, the NTMSVA does not, I would think protect it from liability." The plaintiffs in *Old Carco* in fact claimed that the work done by New Chrysler as part of the recall caused damage to the vehicles by disabling the four wheel drive capabilities of the vehicles. Judge Bernstein concluded that any such post-sale conduct by New Chrysler was not barred by the Sale Order.

> The parties have not addressed whether the disabling of the four-wheel drive capability during the recall as alleged by the Plaintiffs gave rise to an independent claim under non-bankruptcy law, or is barred by the NTMSVA. Moreover, such a question is beyond scope of the transfer order. I do not mean to suggest that such a claim is cognizable, or that the Plaintiffs, as opposed to the Secretary of Transportation, would have a right to assert it. Rather, I conclude that such a claim, if it exists, is not barred by the Sale Order because the duty, if any, its breach and the resulting damage would have arisen as a result of post-Sale conduct.
>
> Id. at *5.

In other words, Judge Bernstein did not decide the scope of the duty owed by New Chrysler for its post-sale conduct but left that decision to the non-bankruptcy court because such a claim was not barred by the Sale Order. Similarly, in the *Pitterman* action, any claim based on New GM's post-sale conduct is not barred by the Sale Order. The Second Circuit similarly concluded that claims based on New GM's post-sale conduct are not barred by the Sale Order.

As in *Old Carco*, this court is not the forum to determine the scope of the post-sale duty owed by New GM to plaintiffs. Rather that decision should be left to the non-bankruptcy court where the *Pitterman* case is pending. Indeed Judge Gerber acknowledged as much in the November 2015 decision upon which the December 2015 judgment is based. Judge Gerber specifically stated that it was acting as a "gatekeeper" as to what issues it would decide and what issues could be decided by the non-bankruptcy courts with plenary jurisdiction. In fact, Judge Gerber left it to non-bankruptcy courts to determine whether allegations such those alleged in the *Pitterman* complaint come within the scope of a state's product liability law. In the November 9, 2015[1] decision, he stated:

> The Court's role, then, is a "gatekeeper" role. It should be the court to decide what claims and allegations should get through the "gate," under the Sale Order, April Decision and judgment. It also should be the court to decide matters of bankruptcy law – especially when bankruptcy law issues are important to deciding what claims can pass through the gate. But the Court will minimize its role beyond that, refraining from deciding issues that are better decided by the

---

[1] In re Motors Liquidation Company, 541 B.R. 104 (2015)

May 15, 2017
Page 4

> MDL court or other nonbankruptcy courts - courts that can (and undoubtedly will) determine whether claims and allegations that get through the gate are otherwise actionable as matters of nonbankruptcy law. *In re Motors Liquidation Company*, 541 B.R. 104, 113 (2015)

Judge Gerber stated that he would not be the forum to "micromanage" the process of deciding what allegations may be made:

> With those principles in mind, the Court then turns to whether it personally (or any successor bankruptcy judge) must be the one to apply the principles laid out earlier and here to particular allegations (or to deal with them as they might come up later in depositions or trial), on the one hand, or whether that appropriately may be done by the judges managing the plenary actions themselves, on the other hand. The latter is sufficient; there is no need for this Court to micromanage the process beyond what it has said previously and in this Decision. *In re Motors Liquidation Company*, 541 B.R. 104, 115 (2015).[2]

And in his capacity as "gatekeeper," Judge Gerber specifically acknowledged that New GM could be liable for the consequences of its own post-sale conduct as well as for Product Liability claims "based on anything that even Old GM had done." In footnote 30, of the November 2015 decision, 541 B.R. 104 (2015), Judge Gerber stated:

> On Product Liabilities Claims, the analysis is a little different, but the bottom line result is the same. New GM assumed liability for Product Liabilities claims, which (by definition) arose from accidents or incidents taking place *after* the Sale, and thereby became liable for compensatory damages for any Product Liabilities resulting from Old GM's action. And by the time any such accidents or incidents occurred, New GM already was in existence, and allegations that the post-Sale accident could have been avoided (or any resulting injury would have been reduced) if New GM had taken action based on any knowledge its employees had would **also pass through the gate**. Either way, it would not matter if that knowledge had first come into existence prior to the Sale – because it was still knowledge in fact of employees of New GM, *and* because New GM assumed responsibility for Product Liabilities Clams, which would make it liable for compensatory damages based on anything that even Old GM had done. *In re Motors Liquidation Company*, 541 B.R. 104, 115 (2015) (emphasis added)

Indeed, in the November 2015 decision, Judge Gerber specifically acknowledged that "[b]ecause the April Decision and the Judgment permitted Economic Loss Plaintiffs to assert Independent Claims against New GM 'based solely on New GM's own, independent, post-Closing acts or conduct; (and also Product Liabilities Claims with respect to post-Sale accidents, where New GM action or inaction might also be involved) what New GM personnel knew or did

---

[2] The Bankruptcy Court was here dealing with the imputation issue. The principle, however, describes how the Bankruptcy Court perceived its gatekeeper role generally.

May 15, 2017
Page 5

after the Sale is of obvious importance." Id. page 110. The Bankruptcy Court also stated that "New GM recognizes that it must defend Product Liabilities Claims and Independent Claims on their merits, and that in actions involving each of those, the acts and knowledge of New GM personnel may be imputed to New GM." Id. p. 114. Indeed, for Post-Closing Accident Plaintiffs, the Bankruptcy Court stated that "New GM may be held liable for compensatory damages on Product Liabilities Claims based on Old GM conduct, New GM conduct or both…" Id. p. 121.

New GM has argued that Judge Gerber prohibited Post Closing Accident plaintiffs from pursuing Independent Claims. In his decision, Judge Gerber clarified however that the "Independent Claims" that could not be pursued are non-Product Liability claims based on Old GM's conduct – i.e. fraud. The Bankruptcy Court stated:

> "…because claims only for Products Liabilities were assumed, other claims involving Old GM manufactured vehicles are Retained Liabilities. New GM is not responsible for them except to the extent that they are premised solely on its own conduct, and hence may be regarded as Independent Claims." *In re Motors Liquidation Company*, 541 B.R. 104, 124 (2015)

Clearly, the phrase "other claims" refers to claims based on Old GM's conduct "other" than Product Liability claims.[3] In the *Pitterman* action, Plaintiffs are not asserting any non-Product Liability claims based on Old GM's conduct and hence are not asserting any type of "other claims" [i.e. Independent Claims] prohibited by the Bankruptcy Court.

With respect to the claims based on New GM's conduct, it is clear from both the Second Circuit decision and the Bankruptcy Court's November 2015 decision, that the claims asserted against New GM in the *Pitterman* action are properly before United States District Court where the action is pending and to be decided by that Court. In its November 2015 decision, Judge Gerber stated that with respect to allegations that charge New GM with violations of duties New GM had to purchaser of earlier purchases vehicles, "New GM can argue before other courts that such duties do not exist (or assert any other merits-based defenses to those allegations), but claims of this character that are based on New GM's own conduct and knowledge also get through the bankruptcy court gate." Id. p. 129. Indeed, in footnote 65 of his decision, Judge Gerber stated, in pertinent part:

> If there were a duty, under nonbankruptcy law, to warn of the danger of driving a motor vehicle with a known defect, the violation of that duty to warn, when coupled with subsequent death or injury, might reasonably be argued to have had a causal effect on any death or personal injury that could have been avoided by the warning. Violations of any duty to warn could be said to provide further support for any claims for death or personal injury that would be actionable even

---

[3] The Bankruptcy Court stated: "Because only Product Liabilities claims were assumed by New GM, other claims involving Old GM manufactured vehicles – including claims for compensatory damages on other causes of action, and as discussed above, for punitive damages – are Retained Liabilities. New GM is not responsible for them except to the extent that they are premised solely on its own conduct." 541 B.R. 104, 124 (2015)

May 15, 2017
Page 6

> as a classic Product Liabilities Claims. The Court expresses no view as whether, as a matter of nonbankruptcy law, failures to warn are actionable, or whether the requisite duties exist. But they pass muster under Clause [3] and get through the bankruptcy court gate." Id. p. 128-129.

Accordingly, for the reasons set forth herein and stated in plaintiffs' prior memorandum, the Pitterman plaintiffs respectfully request the court deny New GM's motion to enforce and allow the United States District Court to determine the scope of the claims that come within the Connecticut Product Liability law and the scope of duty owed by New GM to the *Pitterman* plaintiffs.

Respectfully Submitted,

Joram Hirsch, Esq.

2000 WL 1207261
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Laurie ARGUETA, Administratrix of the Estate of Marissa Argueta,
v.
OVERHEAD DOOR CORPORATION et al.

No. CV 000370126.
|
July 28, 2000.

MEMORANDUM OF DECISION RE: MOTION TO STRIKE (# 110)

SKOLNICK

\*1 The plaintiff, Laurie Arguetta, brings this action as administratrix of the estate of her daughter, Marissa Arguetta, who died as a result of strangulation after an automatic garage door closed on her neck. The defendant, Overhead Door Corporation, manufactured the automatic garage door that allegedly caused Marissa Arguetta's death.

The defendant now moves to strike paragraph 7(g) of count one of the plaintiff's revised complaint on the ground that it is legally insufficient because there is no duty to recall automatic doors already sold and installed. The defendant has filed a memorandum of law in support of its motion and the plaintiff has filed a memorandum in opposition thereto. The defendant has filed a reply memorandum in response to the plaintiff's objection.

"The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Peter-Michael, Inc. v. Sea Shell Associates,* 244 Conn. 269, 270, 709 A.2d 558 (1998). "[W]here individual paragraphs standing alone do not purport to state a cause of action, a motion to strike cannot be used to attack the legal sufficiency of those paragraphs ... A single paragraph or paragraphs can only be attacked for insufficiency when a cause of action is therein attempted to be stated." (Internal quotation marks omitted.) *Griffith v. Espada,* Superior Court, judicial district of New Britain, Docket No. 489998 (January 25, 1999) (Robinson, J).

The defendant argues that there is no duty to recall absent government action. In response, the plaintiff argues that it is procedurally improper to strike a single paragraph in a count, and therefore, the motion to strike should be denied. In the alternative, the plaintiff argues that Connecticut should recognize a duty to recall and that a failure to perform that duty can give rise to manufacturer liability.

Connecticut's product liability act, General Statutes § 52-572m et seq., is the exclusive remedy for claims against product sellers for harm caused by a product. See General Statutes § 52-572n(a). This statutory scheme, however, does not address under what circumstances a manufacturer may be liable for a failure to recall a defective automatic garage door opener.

"As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." *In re Baby Z.,* 247 Conn. 474, 498, 724 A.2d 1035 (1999). General Statutes § 52-572m(b) provides: " 'Product liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. 'Product liability claim' shall include, *but is not limited to,* all actions based on the following theories: Strict liability in tort; negligence, breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." (Emphasis added.) "Unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive." (Internal quotation marks omitted.) *In re Baby Z., supra,* 247 Conn 499. Section 52-572m(b), however, by employing the words "but is not limited to" clearly indicates that the list of theories under which a product liability claim may be brought is not exclusive. Therefore, although the act does not state that manufacturers may be liable for failure to recall, the act implies that such a theory is viable given the fact that the list is not exclusive.[1]

\*2 "It is clear from the legislative history set forth in *Winslow v. Lewis-Shepard Inc.,* [212 Conn. 462, 469-70,

562 A.2d 517 (1989) ] that the legislature intended all product liability claims to constitute a single cause of action, and a complaint setting forth a single cause of action 'should be confined to a single count.' *Goodrich v. Stanton,* 71 Conn. 418, 424, 42 A.2d 74 (1899). The fact that a product liability claim can comprehend a number of distinct theories does not preclude a single count complaint." *Hoboken Wood Flooring Corporation v. Torrington Supply Co.,* 42 Conn.Sup. 153, 157, 606 A.2d 1006 (1991).

Paragraph 7(g) of the plaintiff's complaint alleges that the defendant failed to recall a garage door opener that was defectively designed, and alleges harm as a result of that failure. Therefore Paragraph 7(g) is an alternate theory of liability under the umbrella of the product liability act, and not an attempt to state a new and distinct cause of action. Accordingly the instant motion to strike a single paragraph in a count that does not contain a separate cause of action is procedurally improper and, therefore, the motion to strike is denied.

**All Citations**

Not Reported in A.2d, 2000 WL 1207261

Footnotes

1   Although there is a split among the states on the issue of a duty to recall, some courts have imposed liability on a manufacturer for failure to recall dangerous products. "After a product involving human safety has been sold and dangerous defects in design have come to the manufacturer's attention, the manufacturer has a duty either to remedy such defects, or, if a complete remedy is not feasible, to give adequate warnings ..." *Downing v. Overhead Door Corp.,* 707 P.2d 1027, 1033 (Colo.App.1985), see also, *Braniff Airways. Inc. v. Curtiss-Wright Corp.,* 411 F.2d 451, 455 (2d Cir.), *cert. denied,* 396 U.S. 959 (1969).