**OBJECTION DEADLINE: TO BE DETERMINED**
**HEARING DATE AND TIME: TO BE DETERMINED**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.:  09-50026 (MG)** |
| f/k/a **General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

---------------------------------------------------------------x

**MOTION BY GENERAL MOTORS LLC TO ENFORCE THE**
**RULINGS IN THE BANKRUPTCY COURT'S JUNE 7, 2017**
**OPINION AND ORDER WITH RESPECT TO THE PITTERMAN PLAINTIFFS**

General Motors LLC (**"New GM"**), by its undersigned counsel, submits this motion to

enforce (**"Pitterman Motion to Enforce"**) this Court's rulings in its Memorandum Opinion and

Order, dated June 7, 2017 (**"Pitterman Opinion"**)[1] with regard to the lawsuit captioned *Bernard*

---

[1]    The full title of the Pitterman Opinion is *Memorandum Opinion And Order Granting In Part New GM's Motion To Enforce Sale Order Against The Pitterman Plaintiffs And Resolving 2016 Threshold Issue Two: Whether Non-Ignition Switch Plaintiffs Are Barred From Asserting Independent Claims Against New GM*, dated June 7, 2017 [ECF No. 13959].  The Pitterman Opinion is published at *In re Motors Liquidation Co.*, Case No. 09-50026 (MG), 2017 WL 2457881 (Bankr. S.D.N.Y. June 7, 2017).

30707885

*Pitterman, Administrator of the Estate of M.R.O., et al. v. General Motors LLC*, Case No. 3:14-CV-00967-JCH ("**Pitterman Lawsuit**"), pending in the United States District Court for the District of Connecticut ("**Connecticut District Court**"), by enjoining the Pitterman Plaintiffs from proceeding with certain claims contained in their proposed *Amended Complaint*, dated June 14, 2017 ("**Amended Complaint**")[2], so that the Amended Complaint complies with this Court's Sale Order and Injunction.[3]  In support, New GM states as follows:

1.    On June 14, 2017, the Pitterman Plaintiffs filed a *Motion to Amend Complaint* ("**Motion to Amend**") in the Connecticut District Court,[4] which was the Pitterman Plaintiffs' attempt to comply with this Court's June 7 rulings and proceed to trial on Assumed Liability and Independent Claims against New GM.  A review of the proposed Amended Complaint, however, demonstrates that the Pitterman Plaintiffs failed to satisfy Independent Claim requirements.  The Amended Complaint, in essence, converts two generalized paragraphs in the prior complaint that referred to an alleged breach of a duty to warn and duty to recall/retrofit against Old GM and New GM (combined together) into separate paragraphs making the same allegations; one set applying to Old GM and the other to New GM.  Significantly, the Amended Complaint has no additional factual detail related to the nature of New GM's post-Sale conduct or duty.  In other

---

The Pitterman Lawsuit was subject to New GM's motion to enforce the Sale Order and Injunction and other Bankruptcy Court rulings that was filed with this Court on June 24, 2016 [ECF No. 13655] ("**June 2016 Motion to Enforce**").

[2]    A copy of the proposed Amended Complaint is attached hereto as **Exhibit "A."**

[3]    The full title of the Sale Order and Injunction is *Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief*, dated July 5, 2009 [ECF No. 2968].

[4]    At this time, the Amended Complaint has not been authorized by the Connecticut District Court.  Given that the trial in the Pitterman Lawsuit is scheduled to begin on July 5, 2017, New GM is moving to enforce the rulings in the Pitterman Opinion and the Sale Order and Injunction in this Court, and is simultaneously filing an opposition to the Amended Complaint as failing to state a claim under Connecticut state law in the Connecticut District Court. ("**Opposition**").  New GM's Opposition is attached hereto as **Exhibit "B."**

words, the factual allegations supporting the alleged duty to warn and duty to recall/retrofit, and the alleged breach thereof, are still made as to both Old GM and New GM entities and the claims against New GM are still based in whole or in part on Old GM's actions or omissions. The only alleged conduct in both the prior complaint and the Amended Complaint is that of Old GM.

2.     In the Pitterman Opinion, this Court held that "[i]t is not acceptable, as the Pitterman Complaint does in several paragraphs, *to base allegations on generalized knowledge of both Old GM and New GM*. To pass the bankruptcy gate, *a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct*." Pitterman Opinion, 2017 WL 2457881, at *10 (emphasis added); *see also In the Matter of Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016) ("By definition, independent claims are claims based on New GM's own post-closing wrongful conduct. . . . These sorts of claims are based on New GM's *post*-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct."). The prior complaint filed by the Pitterman Plaintiffs did not get through the bankruptcy gate, and neither should the Amended Complaint.

3.     Because of the upcoming scheduled trial, New GM is simultaneously filing this motion and opposing the Amended Complaint under FED. R. CIV. P. 15 in the Connecticut District Court. Under Connecticut substantive law, there is no duty to warn or duty to recall/retrofit when (a) the defendant (like New GM) is a non-manufacturer, non-seller of the plaintiff's vehicle, (b) the defendant (like New GM) is a separate entity and not a successor in interest to the product seller of the plaintiff's vehicle, and (c) the defendant (like New GM) bought assets free and clear of the product seller's duties and obligations to the Pitterman Plaintiffs (except for Assumed Liabilities which, by definition, are not Independent Claims).

3

Even if New GM had a theoretical duty to warn or duty to recall/retrofit under state law, the Pitterman Plaintiffs have not alleged proper independent claims against New GM based solely on new duties incurred after the Sale based solely on New GM conduct.

4.    The Pitterman Plaintiffs' purported independent claims for duty to warn and duty to recall/retrofit are entirely reflected in two paragraphs in the Amended Complaint as follows:

> 27.    Despite information and knowledge available and known to defendant GM LLC, including knowledge of numerous "rollaway" incidents caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, the defendant GM LLC took no steps after June 2009 to directly notify and/or warn owners or the public of these defects.

> 28.    Despite information and knowledge available and known to defendant GM LLC, including knowledge of numerous "rollaway" incidents, caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, the defendant GM LLC took no steps after June 2009 to recall and/or retrofit the Suburban.

5.    This case is approximately two weeks from its scheduled trial date. Discovery is closed and the Pitterman Plaintiffs know the underlying facts which allegedly support their claims. Nonetheless, the Pitterman Plaintiffs have not pled any specific New GM conduct with respect to the Pitterman Plaintiffs and there are *no* allegations that the Pitterman Plaintiffs had any relationship with New GM or any post-Sale conduct giving rise to post-Sale legal duties.

6.    Indeed, the *only* allegation of specific conduct in the Amended Complaint is in Paragraph 25, which refers to a Technical Service Bulletin issued by *Old GM* in 2006, *approximately three years prior to the 363 Sale*.

7.    These allegations reveal that the alleged independent claims for failure to warn and failure to recall/retrofit are really successor liability claims in disguise because they are not based solely on New GM's conduct. Bankruptcy Courts have summarily dealt with these improper claims when presented with the issue in a motion to enforce a prior court order. *See In re Motors Liquidation Co.*, 541 B.R. 104, 133 (Bankr. S.D.N.Y. 2015). For example, in *Burton*

4

*v. Chrysler Grp. LLC (In re Old Carco LLC )*, 492 B.R. 392 (Bankr. S.D.N.Y. 2013), the Bankruptcy Court rejected plaintiffs' post-bankruptcy sale duty to warn claim arising from an alleged latent defect in plaintiffs' vehicles. That claim never got through the bankruptcy gate because plaintiffs failed to properly allege (i) a post-sale duty that the purchaser incurred to plaintiffs, and (ii) a breach of that duty based solely on the purchaser's post-sale conduct. Judge Bernstein held that plaintiffs' claims were clearly based on the conduct of the debtor/seller (not the purchaser) and, thus, "each plaintiff's failure to warn claim 'is a typical successor liability case dressed up to look like something else, and is prohibited by the plain language of the bankruptcy court's Order.'" *Id.* at 405 (citations omitted). In these circumstances (which exist here), the bankruptcy court properly refused to defer to another court to decide whether a meritless claim had been asserted against the good faith purchaser.

8.    The Pitterman Plaintiffs have been given a sufficient opportunity to properly allege viable Independent Claims against New GM based on a purported failure to warn and a purported failure to recall/retrofit the vehicle. They have failed to assert viable Independent Claims that can pass through the bankruptcy gate. Given that the trial in this matter is scheduled to commence on July 5, 2017, the Bankruptcy Court should enjoin the Pitterman Plaintiffs from proceeding against New GM with regard to the attempted claims set forth in paragraphs 27 and 28 of the Amended Complaint. The Pitterman Lawsuit can then proceed to trial on the remaining Assumed Liability claims against New GM.

9.    Of course, if the Connecticut District Court holds that the Pitterman Plaintiffs have not pled a viable cause of action under Connecticut state law, then paragraphs 27 and 28 will be stricken on that basis as well.

## NOTICE

10.      Notice of this Pitterman Motion to Enforce has been provided to counsel for the

Pitterman Plaintiffs, and all entities that receive electronic notice from the Court's ECF system.

New GM submits that such notice is sufficient and no other or further notice need be provided.

WHEREFORE, New GM respectfully requests that this Court enter an order,

substantially in the form attached hereto as **Exhibit "C"**, granting the relief sought herein, and

for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       June 20, 2017

                                    Respectfully submitted,


                                        /s/ Arthur Steinberg
                                    Arthur Steinberg
                                    Scott Davidson
                                    KING & SPALDING LLP
                                    1185 Avenue of the Americas
                                    New York, New York  10036
                                    Telephone:    (212) 556-2100
                                    Facsimile:    (212) 556-2222

                                    Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                                    Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                                    KIRKLAND & ELLIS LLP
                                    300 North LaSalle
                                    Chicago, IL 60654
                                    Telephone:    (312) 862-2000
                                    Facsimile:    (312) 862-2200

                                    *Attorneys for General Motors LLC*

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------------------------------------

| | |
|---|---|
| BERNARD PITTERMAN, ADMINISTRATOR OF THE ESTATE OF M.R.O., ET. AL.<br><br>Plaintiffs,<br><br>V.<br><br>GENERAL MOTORS LLC<br><br>Defendant. | X<br>X<br>X<br>X<br>X<br>X<br>X<br>X<br>X<br>X<br>X<br>X<br>-X |

CIVIL ACTION NO.

3:14-CV-00967-JCH

JURY TRIAL DEMANDED

--------------------------------------------------------------

## AMENDED COMPLAINT

### COUNT ONE  (Estate of M.RO.)

1.    On July 13, 2011, M.R.O died intestate a resident of the Town of Brookfield,

Connecticut. The Probate Court for the Housatonic Probate District appointed Bernard Pitterman,

Esq., as the Administrator of the Estate of M.R.O. who brings the cause of action alleged herein in his

capacity as Administrator of the Estate of M.R.O. and on behalf of said Estate.

2.    Defendant General Motors LLC ("GM") is a Delaware limited liability company.

3.    Pursuant to the terms of its purchase of certain operating assets of the bankrupt

General Motors Corporation ("GMC"), defendant GM LLC assumed responsibility for product

liability claims arising out of incidents occurring after the date of its asset purchase involving

vehicles assembled or distributed by General Motors Corporation prior to its bankruptcy.

4.    Because the product liability claim which is the subject of this action arises out of an

incident occurring after the date of defendant GM LLC's asset purchase from General Motors

1

Corporation and involves a vehicle assembled or distributed by General Motors Corporation prior to its bankruptcy, defendant GM LLC has agreed to assume responsibility for said product liability claim pursuant to the terms of its agreement to purchase certain operating assets of the bankrupt General Motors Corporation.

5.    At all times relevant herein, GMC was a corporation engaged in the business of designing, manufacturing, assembling, distributing and selling motor vehicles.

6.    On Wednesday, July 13, 2011, at approximately 4 p.m., M.R.O., then 8 years old, was inside a 2004 Chevrolet Suburban ("the Suburban") that was parked in the driveway of the O'Connor home located at 8 Windwood Road, Brookfield, Connecticut.

7.    The ignition of the Suburban was in the Accessory ("ACC") position and the transmission shifted from Park to Neutral.

8.    As a result of the movement of the transmission from Park to Neutral, the Suburban began rolling backwards from its parked position.  It rolled down the O'Connors' front lawn into a wooded area and crashed into trees.

9.    During the time that the Suburban was rolling out of control into the trees, M.R.O. experienced extreme mental and emotional suffering, including fear and apprehension of death.

10.    During the crash, M.R.O. sustained the following physical injuries:

a.    lacerations to the face and head;

b.    fractures of the skull and facial bones, including the mandible and maxilla, resulting in the loss and destruction of brain tissue;

c.    contusions and abrasions around the left eye, the left lateral cheek/temporal area, and the left lower cheek;

        d.      abrasions on the front of the neck, the chest, both upper arms and the right dorsal forearm;

        e.      a five inch laceration on the right upper arm;

        f.      abrasions of the left and right upper thighs and abrasions of the left and right calves; and

        g.      fractures of the left and right femurs.

11.     As a result of these injuries, M.R.O. experienced severe physical pain and suffering.

12.     As a result of this crash, M.R.O. died.

13.     As a result of this crash, M.R.O.'s ability to carry on and enjoy life's activities was destroyed.

14.     As a result of this crash, M.R.O.'s earning capacity was destroyed.

15.     The 2004 Chevrolet Suburban occupied by M.R.O. on July 13, 2011 was designed by GMC.

16.     The 2004 Chevrolet Suburban occupied by M.R.O. on July 13, 2011 was manufactured, and/or assembled by GMC.

17.     The 2004 Chevrolet Suburban occupied by M.R.O. on July 13, 2011 was sold and/or distributed by GMC.

18.     GMC was the product seller of the subject Suburban within the terms of Conn. Gen. Stat. § 52-572m(a).

19.     This product liability action is brought pursuant to Conn. Gen. Stat. § 52-572m, *et. seq.*

20.     The Suburban involved in the crash which gives rise to this action was in a defective

condition in that:

       a.     the automatic transmission could be moved from Park to Neutral when the ignition switch was in the ACC position, without depressing the brake, thereby allowing the vehicle to roll from a parked position;

       b.     the brake transmission shift interlock device installed on the Suburban did not function when the ignition was in the ACC position,

       c.     there were insufficient and inadequate instructions or warnings that the brake transmission shift interlock installed on the Suburban did not function with the ignition in the ACC position.  Conn. Gen. Stat. § 52-572q.

21.     The design of the brake transmission shift interlock described above existed at the time the 2004 Suburban left GMC's possession.

22.     The 2004 Suburban was expected to reach the user without substantial change in the condition of the brake transmission shift interlock.

23.     The 2004 Suburban did reach the user without substantial change in condition of the brake transmission shift interlock.

24.     The defects described above caused the injuries and death described above.

25.     On or about May 25, 2006, GMC issued a Technical Service Bulletin in which it acknowledged that the ordinary owner may expect the brake transmission shift interlock to function when the key is in the ACC position.

26.     Despite information and knowledge available and known to GMC, including knowledge of numerous "rollaway" incidents caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, GMC took no steps to

directly notify and/or warn owners or the public of these defects.

27.    Despite information and knowledge available and known to defendant GM LLC, including knowledge of numerous "rollaway" incidents caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, the defendant GM LLC took no steps after June 2009 to directly notify and/or warn owners or the public of these defects.

28.    Despite information and knowledge available and known to defendant GM LLC, including knowledge of numerous "rollaway" incidents, caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, the defendant GM LLC took no steps after June 2009 to recall and/or retrofit the Suburban.

## COUNT TWO  (G.O.)

1.    On June 13, 2012, the Probate Court for the Housatonic Probate District appointed Bernard Pitterman, Esq., Guardian of the Estate of G.O., a Minor. Bernard Pitterman, Esq. brings the cause of action alleged herein in his capacity a Guardian of the Estate of G.O. and on behalf of G.O..

2 - 28.    Paragraphs 2 through 28 of the First Count are hereby realleged as Paragraphs 2 through 28 of the Second Count.

29.    G.O., who was M.R.O.'s brother and then 7 years old, witnessed the Suburban, with his sister M.R.O. inside, roll into the wooded area and crash into the trees, saw his sister killed and saw her body immediately after the crash.

30.    As a result of witnessing the crash and seeing his sister afterwards, G.O. sustained serious, severe and devastating mental and emotional injury and distress.

31.    As a result of his injuries, G.O. has incurred and will incur medical bills.

32.     As a result of his injuries, G.O.'s earning capacity has been diminished.

**COUNT THREE  (ROSE O'CONNOR)**

1.     Rose O'Connor is an individual who resides at 8 Windwood Road, Brookfield,

Connecticut, and is the mother of M.R.O. and G.O..

2 - 28.     Paragraphs 2 through 28 of the First Count are hereby realleged as Paragraphs

2 through 28 of the Third Count.

29.     Rose O'Connor came upon the crash within minutes after it occurred.  She saw the

Suburban and her daughter's body lying in the wooded area before any material change had occurred

with respect to the location and condition of M.R.O.'s body.

30.     As a result of witnessing the condition of M.R.O.'s body, and the surrounding area

including the crushed Suburban, Rose O'Connor sustained serious, severe and devastating mental and

emotional injury and distress.

31.     As a result of her injuries, Rose O'Connor has incurred and will incur medical bills.

THE PLAINTIFFS,

BY: _____

Joram Hirsch, Esq.
Adelman Hirsch & Connors, LLP
1000 Lafayette Boulevard
Bridgeport, CT  06604
Federal Bar No. - ct06734
Tele: (203) 331-8888
Fax: (203) 333-4650
Email: jhirsch@ahctriallaw.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been filed electronically to the following counsel of record on the date hereof with the United States District Court for the District of Connecticut.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Mark J. Claflin
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT  06114-1121

Kent B. Hanson
Paul E. D. Darsow
Hanson Bolkcom Law Group, Ltd.
527 Marquette Avenue, Suite 2300
Minneapolis, MN  55402

Joram Hirsch, Esq.

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BERNARD PITTERMAN, et al., | : | CASE No.:  3:14cv00967 (JCH) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GENERAL MOTORS LLC, | : | |
| Defendant. | : | June 20, 2017 |

## DEFENDANT GENERAL MOTORS LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT [ECF #218, #218-1]

### INTRODUCTION

Plaintiffs Bernard Pitterman and Rose O'Connor ("Plaintiffs") seek to amend the current complaint against General Motors LLC ("GM LLC" or "New GM") purportedly to comply with the June 7, 2017 Written Decision ("June 7 Decision") of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") that ruled on certain aspects of Plaintiffs' claims. [1]  *See* ECF Document 218.  Some of the proposed amendments, however, fail to state a claim under Connecticut law.[2]

Plaintiffs' failure to warn, recall and/or retrofit claims against GM LLC, as alleged in paragraphs 27 and 28 of the proposed Amended Complaint, cannot proceed for two reasons. *First*, GM LLC is neither a "product seller" nor the "manufacturer" of the Plaintiffs' vehicle as defined by the Connecticut Product Liability Act ("CPLA"), making it impossible under Connecticut law for Plaintiffs to assert failure to warn, recall and retrofit claims against GM LLC.  Moreover, pursuant to a final and non-appealable bankruptcy court order (the 2009 Sale Order), GM LLC was determined to be a separate entity owned by the U.S. Treasury and

---

[1]  The June 7 Decision is published at *In re Motors Liquidation Co.*, Case No. 09-50026 (MG), 2017 WL 2457881 (Bankr. S.D.N.Y. June 7, 2017).

[2]  Some of the proposed amendments also fail to comply with the June 7 Decision; that issue will be addressed, if necessary, in the Bankruptcy Court.

Canadian government, and not the successor in interest to Old GM.   Simply put, there can be no

CPLA duty to warn, duty to recall, or duty to retrofit on the part of an entity that is neither the

manufacturer nor the seller of the product in question.   *Second*, Plaintiffs' proposed Amended

Complaint fails to specify facts that would establish with respect to New GM (a) a new and

independent duty incurred after the bankruptcy sale to warn, recall or retrofit, or (b) a breach of

any such alleged duty based solely on GM LLC's post-bankruptcy sale conduct.   Rather than

specifying facts forming the predicate of cognizable legal duties, paragraphs 27 and 28 merely

allege inaction on the part of New GM in connection with non-existent duties.   These bare

allegations do not meet the requirements of the *Twombly* case and its progeny.   *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007).

If the Court concurs that there is no duty under Connecticut law for a non-manufacturer /

non-seller / non-successor to provide warnings or to conduct product recalls, then paragraphs 27

and 28 of the proposed Amended Complaint must be stricken.   Alternatively, if this Court finds

such duties under Connecticut law, the proposed Amended Complaint remains subject to

bankruptcy court review regarding whether the purported independent claims are clearly based

solely on New GM conduct and not on Old GM's actions or omissions.   GM LLC believes that

Plaintiffs, after being given the opportunity by the Bankruptcy Court to correct their conceded

mistakes, have again failed to plead proper independent claims.   Due to the imminent scheduled

trial date, GM LLC is simultaneously renewing its motion in the Bankruptcy Court (a copy of

which is attached as Exhibit 1) to enforce the Sale Order and Bankruptcy Court rulings against

Plaintiffs based on their failure to properly allege duties to warn, recall and retrofit based solely

on New GM conduct.

## ARGUMENT

I.   **GM LLC IS NOT A "PRODUCT SELLER" OR A "MANUFACTURER" OF THE 2004 SUBURBAN AND, THEREFORE, IS NOT SUBJECT TO SUIT UNDER THE CPLA FOR FAILURE TO WARN, RECALL OR RETROFIT.**

"The CPLA creates a consolidated cause of action for *all* product liability claims." *Lamontagne v. E.I. du Pont de Nemours & Co.*, 834 F.Supp. 576, 587 (D.Conn. 1993) (emphasis added). It states that "Product Liability Claims", defined in Conn. Gen. Stat. § 52-572m, "shall be in lieu of all other claims against *product sellers*, including actions of negligence, strict liability and warranty for harm caused by a product." Conn. Gen. Stat. § 52-572n(a) (2017) (emphasis added). The Plaintiffs acknowledge that all of their claims (including their purported independent claims) are predicated on Conn. Gen. Stat. § 52-572m, *et seq. See* Amended Complaint, ¶ 19 ("This product liability action is brought pursuant to <u>Conn. Gen. Stat.</u> § 52-572m, *et seq.*"). The CPLA defines a "product seller" as "any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or consumption. The term 'product seller' includes lessors or bailors of products who are engaged in the business of leasing or bailment of products." Conn. Gen. Stat. § 52-572m(a) (2017). It defines a "manufacturer" to include "product sellers who design, assemble, fabricate, construct, process, package or otherwise prepare a product or component part of a product prior to its sale to a user or consumer. It includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer." Conn. Gen. Stat. § 52-572m(e).

General Motors Corporation ("Old GM")—not GM LLC—was the "product seller" and "manufacturer" of Plaintiffs' 2004 Chevrolet Suburban. GM LLC can be subject to liability to Plaintiffs under the CPLA only if it expressly assumed Old GM's liabilities under the Sale

Agreement approved by the Bankruptcy Court's Sale Order. The Bankruptcy Court held that "[t]he Pitterman Plaintiffs may not proceed with their claims of failure to recall and retrofit based [on the] conduct of Old GM." ECF Document 216-1 at 24.[3] Instead, the claims must be based solely on the conduct of New GM. The Bankruptcy Court deferred the decision to this Court whether to permit Plaintiffs to amend their Complaint and whether such amended claims meet the requirements of Connecticut products liability law. *See id.* at 23.

The two new claims in question are contained in two short paragraphs devoid of legal or factual content. Rather, Plaintiffs broadly allege:

> 27.    Despite information and knowledge available and known to defendant GM LLC, including knowledge of numerous "rollaway" incidents caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, the defendant GM LLC took no steps after June 2009 to directly notify and/or warn owners or the public of these defects.

> 28.    Despite information and knowledge available and known to defendant GM LLC, including knowledge of numerous "rollaway" incidents caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, the defendant GM LLC took no steps after June 2009 to recall and/or retrofit the Suburban.

ECF Document 218-1 at 6 (¶¶ 27-28). GM LLC is not liable to Plaintiffs under the CPLA for failure to warn, retrofit and recall the 2004 Chevrolet Suburban at issue because GM LLC is neither the Suburban's "product seller" nor the "manufacturer." *See* Conn. Gen. Stat. § 52-572m(a) and (e). Indeed, GM LLC was not in existence when the product was manufactured or sold to Plaintiffs and has been judicially determined not to be a successor to Old GM.

Section 52-572q permits failure to warn claims only against a "product seller," which GM LLC is not. It is unclear whether the CPLA actually contemplates "failure to recall and/or

---

[3]    The Bankruptcy Court's June 7 Decision also is docketed in the Bankruptcy Court at ECF Doc. 13955. For the sake of consistency and ease of reference, GM LLC cites to the June 7 Decision by the ECF Document number assigned to it in this case.

retrofit" claims at all, even against product manufacturers and sellers. It clearly does not contemplate such claims against entities that are not manufacturers or sellers of the product. Even as to manufacturers, GM LLC's counsel could find only one Connecticut trial court case stating that "although the act does not state that manufacturers may be liable for failure to recall, the act *implies* that such a theory is viable given the fact that the list is not exclusive." *Argueta v. Overhead Door Corp.*, 2000 Con. Super. LEXIS 2044 *4 (July 28, 2000). No further rationale was stated and it appears that no Connecticut appellate court has endorsed this view, even as to "product sellers" or "manufacturers". As the *Argueta* court itself observed, the CPLA "does not address under what circumstances a *manufacturer* may be liable for a failure to recall a defective [product]." *Id.* at *3 (emphasis added).

Assuming Connecticut law *might* recognize failure to recall and/or retrofit claims under the CPLA, that statute imposes duties only on "product sellers" and "manufacturers". *See* Conn. Gen. Stat. § 52-572n(a). However, GM LLC is not a "product seller" or "manufacturer" of the subject 2004 Chevrolet Suburban. It therefore cannot and does not have any legal duties under Connecticut law with regard to the subject 2004 Chevrolet Suburban manufactured and sold by Old GM.

Moreover, no independent claim against GM LLC for an alleged breach of a duty to warn or duty to recall/retrofit can be based on the Sale Agreement. ECF Document 216-1 (June 7 Decision) at 23. The Bankruptcy Court was clear that GM LLC is not the successor in interest to Old GM. *See* December Judgment, ¶ 16. Further, the CPLA does not impose any such duties on a non-manufacturer, non-seller *and* a non-successor to the product buyer, especially when the non-successor had no relationship with and engaged in no conduct of any kind with Plaintiffs.

5

## II.    PLAINTIFFS' PROPOSED AMENDED COMPLAINT FAILS TO STATE PLAUSIBLE FACTS SUPPORTING A BREACH OF ANY DUTY TO WARN, RECALL OR RETROFIT.

Under Rule 15, "[t]he court should freely give leave" to amend a complaint "when justice so requires." Fed.R.Civ.P. 15(a)(2) (2017).  GM LLC opposes Plaintiffs' proposed Amended Complaint because the two thinly pled new purported claims are contrary to law (see above), and fail to state such claims with plausible facts under Fed.R.Civ.P 8, as explained below.

Fed.R.Civ.P. Rule 8(a)(2) requires every claim for relief to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief". Fed.R.Civ.P. 8(a)(2).  That rule obligates a plaintiff "to provide the 'grounds' of his 'entitlement to relief' which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007).  In other words, Rule 8(a)(2) "requires a complaint with enough factual matter (taken as true) to suggest" wrongdoing consistent with the liability theory alleged. *Id.*, 550 U.S. at 556, 127 S.Ct. at 1965.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009).  "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2nd Cir. 2015).  The Second Circuit has "long made clear that a district court properly denies" a motion to amend "where it finds . . . 'futility of amendment.'" *Christine Falls Corp. v. Algonquin Power Fund, Inc.*, 401 Fed.Appx. 584, 588-89 (2nd Cir. 2010) (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2nd Cir. 2002)).

Plaintiffs' claims against GM LLC for failure to warn, recall and/or retrofit fail to comply with Rule 8(a)(2), requiring Plaintiffs to allege plausible facts, taken as true, which show

6

Plaintiffs' entitlement to relief. During extensive and protracted discovery, GM LLC produced more than 300,000 documents. Plaintiffs deposed multiple GM LLC employees and experts at length. Despite extensive discovery, Plaintiffs have not identified a single fact establishing post-Sale conduct by GM LLC that could give rise to a legal duty to warn about or recall Old GM products, assuming, *arguendo*, such a duty existed. Indeed, the proposed Amended Complaint identifies none. Paragraphs 27 and 28 of the proposed Amended Complaint should be stricken because the alleged claims would only be subject to a motion to dismiss, rendering the amendment futile[4]. That said, GM LLC would not object to an amendment without the offending paragraphs.[5]

## CONCLUSION

The Court should deny Plaintiffs' motion to amend the complaint because Plaintiffs' failure to warn, recall and/or retrofit claims as against GM LLC cannot survive a motion to dismiss as a matter of Connecticut substantive law and federal civil procedure. GM LLC is neither the "product seller" nor the "manufacturer" of the 2004 Chevrolet Suburban and, therefore, has no duty to warn, recall and/or retrofit as a "product seller" or "manufacturer" under the CPLA. Further, assuming *arguendo* such duties existed under the CPLA with respect to GM LLC, Plaintiffs' proposed Amended Complaint fails to allege plausible facts, taken as true, stating conduct that could give rise to an independent duty to warn, recall and/or retrofit, or establish a breach of same. For these reasons, the Motion to Amend should be denied as to paragraphs 27 and 28.

---

[4] In addition, these brief and bare allegations are not sufficient to pass through the bankruptcy gate, a question that is being simultaneously addressed to the Bankruptcy Court so as to minimize a risk of disrupting the trial date.

[5] The proposed Amended Complaint correctly removes explicit allegations of successor liability, commingling of Old GM and New GM, failure to recall or retrofit on the part of Old GM, and allegations of reckless disregard.

Respectfully submitted,

DEFENDANT,
GENERAL MOTORS LLC

 /s/ Kent B. Hanson
Kent B. Hanson (*pro hac vice*)
Paul E. D. Darsow (*pro hac vice*)
HANSON BOLKCOM LAW GROUP, LTD.
527 Marquette Avenue, Suite 2300
Minneapolis, MN 55402
Tel: 612.342.2880 / Fax: 612.642.2899
Email: khanson@hblawgroup.com
        paul.darsow@hblawgroup.com

and

Mark J. Claflin (ct06218)
Howd & Ludorf, LLC
65 Whethersfield Avenue
Hartford, CT 06114-1121
Tel.: 860.249.1361 / Fax: 860.249.7665
Juris No.: 28228
Email: mclaflin@hl-law.com

## CERTIFICATION

This is to certify that a copy of the foregoing was filed electronically to the following counsel of record this 20th day of June, 2017.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's Electronic Case Filing system.  Parties may access this filing through that system.

Robert B. Adelman
radelman@ahctriallaw.com
Joram Hirsch
JHirsch@ahctriallaw.com
Adelman Hirsch & Connors, LLP
1000 Lafayette Boulevard
Bridgeport, CT 06604

/s/ Kent B. Hanson
Kent B. Hanson
Paul E. D. Darsow

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                              :          Chapter 11
                                                   :
MOTORS LIQUIDATION COMPANY, *et al.*,              :          Case No.: 09-50026 (MG)
          f/k/a General Motors Corp., *et al.*     :
                                                   :
                              Debtors.             :          (Jointly Administered)
-------------------------------------------------------------x

## ORDER GRANTING MOTION BY GENERAL MOTORS LLC TO ENFORCE THE RULINGS IN THE BANKRUPTCY COURT'S JUNE 7, 2017 OPINION AND ORDER WITH RESPECT TO THE PITTERMAN PLAINTIFFS

Upon the Motion, dated June 20, 2017 ("**Motion**"), of General Motors LLC ("**New GM**"),[1] seeking the entry of an order enforcing this Court's rulings in the Pitterman Opinion with regard to the Pitterman Lawsuit, by enjoining the Pitterman Plaintiffs from proceeding with certain claims contained in their proposed Amended Complaint so that the Amended Complaint complies with this Court's Sale Order and Injunction, all as more fully set forth in the Motion; and due and proper notice of the Motion having been provided as set forth in the Motion, and it appearing that no other or further notice need be given; and a hearing (the "**Hearing**") having been held with respect to the Motion on June __, 2017; and upon the record of the Hearing, the Court having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is therefore:

ORDERED that the Motion is GRANTED as set forth herein; and it is further

ORDERED, that the Pitterman Plaintiffs shall, within three (3) business days of the entry of this Order, file with the Connecticut District Court an amended pleading so that it fully

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

complies with the Pitterman Opinion, the Sale Order and Injunction and the other Bankruptcy Court rulings by striking, in their entirety, paragraphs 27 and 28 of the Amended Complaint; and it is further

ORDERED that within five (5) business days after the entry of this Order, the Pitterman Plaintiffs shall file with the Clerk of this Court evidence of the filing of their amended pleading with the Connecticut District Court; and it is further

ORDERED that this Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2017
     New York, New York

                                   _____
                                   UNITED STATES BANKRUPTCY JUDGE

DMSLIBRARY01\30693561.v1