UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| BERNARD PITTERMAN, ADMINISTRATOR | X | |
| OF THE ESTATE OF M.R.O., ET. AL. | X | |
| | X | |
| Plaintiffs, | X | CIVIL ACTION NO. |
| | X | |
| V. | X | 3:14-CV-00967-JCH |
| | X | |
| GENERAL MOTORS LLC | X | JURY TRIAL DEMANDED |
| | X | |
| Defendant. | X | |
| | X | June 26, 2017 |

---

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND
COMPLAINT (ECF #218) AND IN RESPONSE TO
DEFEDANT'S OBJECTION TO SAID MOTION (ECF # 222)

Plaintiffs submit this memorandum in support of their Motion to Amend Complaint to comply with the June 7, 2017, Bankruptcy Court decision and in response to GM's memorandum (ECF #222) in opposition to that motion. Contrary to GM's claim, the proposed amended complaint complies with the Bankruptcy Court decision and plaintiffs are filing a response before the Bankruptcy Court disputing GM's claim. The Bankruptcy Court has scheduled a hearing to deal with this issue for June 30, 2017, at 3:00 p.m.

New GM's arguments are internally inconsistent and self-contradictory, fail to acknowledge the exclusivity of, and the unique pleading requirements under Connecticut Product Liability Act, ("CPLA"), have been rejected three times by Judge Furman in the multi-district litigation regarding the ignition switch defect claims, and would lead to the absurd and anomalous result that New GM would be immune from suit in Connecticut for any conduct after June 2009, with respect to a vehicle manufactured before that date, irrespective of how egregious such conduct might be.

ORAL ARGUMENT REQUESTED

**Argument**

1. **The Proposed Amended Complaint complies with the Bankruptcy Court's June 7, 2017, decision**

In his June 7, 2017, decision Bankruptcy Court Judge Glenn held, consistent with the Second Circuit decision, that claims based "solely" on New GM's wrongful post-sale[1] conduct are not precluded by the Sale Agreement and, therefore, are not precluded by the bankruptcy court decisions nor the Bankruptcy Act. Judge Glenn held further that a claim against New GM cannot be based on generalized knowledge of **both** Old GM and New GM and that the complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct. See June 7, 2017, Memorandum of Decision in *In re Motors Liquidation Company*, ECF # 216-1, page 22.[2] In that decision, Judge Glenn ruled that "the Pitterman Plaintiffs may proceed with only the following claims in the Pitterman Action: (i) failure to warn, based conduct of Old GM and New GM; and (ii) failure to recall and retrofit, based solely on New GM's conduct. The Pitterman Plaintiffs may not proceed with their claims of failure to recall and retrofit based on conduct of Old GM." Id. p. 23.

In compliance with Bankruptcy court decision, plaintiffs filed a motion to amend the two paragraphs that were challenged by New GM in the bankruptcy court and were the subject of the motion to enforce: paragraphs 27 and 28. In particular, plaintiffs withdrew the recall and retrofit allegations based on Old GM conduct and clarified that the failure to warn, recall and retrofit allegations against New GM are based upon (1) information and knowledge available and known to defendant GM LLC[3] and (2) based solely on New GM's post-sale conduct. Thus, in paragraph 27

---

[1] Referencing the §363 sale of assets to New GM through the Old GM bankruptcy in June 2009.
[2] After the plaintiffs filed the Bankruptcy Court decision in this matter as ECF #216-1, the Bankruptcy Court issued an amended Memorandum of Decision at ECF # 13959 to include additional counsel involved in the action. The substance of the decision was not changed so that ECF #216-1 is a correct copy of the substance of the operative Bankruptcy Court decision.
[3] In this regard, in its November 2015 decision and December 2015 judgment, the Bankruptcy court held that knowledge of Old GM may be imputed to New GM either because (1) New GM inherited the knowledge and information in the files

2

and 28 of the proposed amended complaint, plaintiffs allege:

> 27. Despite information and knowledge available and known to defendant GM LLC, including knowledge of numerous "rollaway" incidents caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, the defendant GM LLC took no steps after June 2009 to directly notify and/or warn owners or the public of these defects.
>
> 28. Despite information and knowledge available and known to defendant GM LLC, including knowledge of numerous "rollaway" incidents, caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, the defendant GM LLC took no steps after June 2009 to recall and/or retrofit the Suburban.

Both of these paragraphs are limited to "information and knowledge available and known to defendant GM LLC and are not based upon "generalized knowledge of both Old GM and New GM" as the Bankruptcy Court prohibited. Similarly, each of these allegations are based solely on GM's post-sale conduct insofar is it does not reference Old GM and only alleges that "GM LLC took no steps after June 209 to recall and/or retrofit the Suburban." As such, the proposed amended allegations clearly satisfy the requirements set by the Bankruptcy court in the June 7, 2017 decision.[4]

**2. GM LLC is liable to plaintiffs under Connecticut Product Liability Act even though it did not manufacture or sell the vehicle**

New GM's principal argument seems to be that because it was not the product manufacturer

---

of Old GM which passed to New GM as part of the seamless sale of assets or (2) New GM also obtained the transferred employees of Old GM along with the knowledge and information in their head. In this regard, GM's witnesses, Victor Hakim and William Sultze were both employees of Old GM and are current employees of New GM. In addition, New GM obtained knowledge of post-June 2009 events regarding rollaway incidents including, for example, several of the other similar incidents which plaintiffs have identified as exhibits.

[4] It is unclear whether New GM is claiming that it can only be held liable for an affirmative act or conduct as opposed to a failure to act, i.e.. an act of omission. If that is in fact their argument, it is clearly without merit inasmuch as it is firmly

3

or seller of the O'Connor's Suburban, it cannot be liable under the CPLA and therefore owes no duty of care to plaintiffs.[5] This argument is inconsistent with, and contradicts, New GM's acknowledgement that it can be liable under the CPLA for assumed product liabilities, such as, for example, failure to warn and design defect, even though New GM did not manufacture or sell the Suburban. It is apparent therefore that whether or not New GM manufactured or sold a particular product does not determine whether New GM can be liable under the CPLA. By assuming responsibility for "product liabilities" in the 2009 Sale Agreement,[6] New GM necessarily agreed to be deemed a "product seller" for purposes of product liability claims arising out of motor vehicles manufactured by Old GM.

The statutory definition of "Product seller" is broadly stated and not limited to a manufacturer or seller as New GM claims. Section 52-577m(a) defines "Product seller" to mean "any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term "product seller" also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products." There is no question New GM is "engaged in the business of selling such products" and there is no requirement it the statute that a "product seller" either had to manufacture or sell the particular product. This is evident by including "lessors" and "bailors" within the definition of

---

established that negligence includes **both** an affirmative act as well as a failure to act, i.e. act of omission.

[5] At page 4 of its memorandum, New GM argues it "is not liable to Plaintiffs under the CPLA for failure to warn, retrofit and recall the 2004 Chevrolet Suburban at issue because GM LLC is neither the Suburban's 'product seller' nor the 'manufacturer.'"

[6] The operative paragraph of the Sale Agreement is amended Section 2.3(a)(ix) which defines the liabilities assumed by New GM to include "(ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date and arising from such motor vehicles' operation or performance (for avoidance of doubt, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability arising or contended to arise by reason of exposure to materials utilized in the assembly or fabrication of motor vehicles manufactured by Sellers and delivered prior to the Closing Date, including asbestos, silicates or fluids, regardless of when

4

"product seller" neither of whom manufacture or sell a particular product. By the use of the term "including" in the definition of "product seller" the legislature clearly intended that the stated list was not exclusive and could apply to the unique circumstances of this case, especially where New GM agreed to be deemed a product seller, in order to give effect to the purposes and intents of the statute.[7]

The flaw in GM's argument is its failure to recognize that in Connecticut, the CPLA provides the exclusive remedy for all claims for injury alleged to have been caused by a defective product and that a product liability claim[8] must encompass all theories of liability permitted under that Act, including negligence such as failure to warn and failure to recall and retrofit. Because plaintiffs' claim is a "product liability claim," it can only be brought under the provisions of the CPLA. Indeed, in *Densberger v. United Technologies Corp.*, 297 F. 3d 66, 70 (2002), the Second Circuit affirmed this Court's decision that as the CPLA is the "exclusive basis for product liability claims under Connecticut law, the CPLA bars separate common law causes of action in product liability cases." The Second Circuit stated:

> We reject UTC's argument, and in so doing affirm the district court's elegant analysis of the Connecticut common law and its relationship to the CPLA. First, it is clear, as the district court held, that the CPLA does not preempt all common law theories of product liability. Rather, as the exclusive basis for product liability claims under Connecticut law, the CPLA bars separate common law *causes of action* in product liability cases. *See, e.g., Winslow v. Lewis–Shepard, Inc.,* 212 Conn. 462, 562 A.2d 517, 521 (1989) (holding that the CPLA bars a separate negligence-based cause of action). Common law theories, however, rather than being preempted by the CPLA, are incorporated into the statute unless they are expressly inconsistent with it. *See, e.g., LaMontagne v. E.I. Du Pont De Nemours & Co., Inc.,* 41 F.3d 846, 855–56 (2d

---

such alleged exposure occurs). See Bankruptcy ECF Doc # 2968-2 at page 112.

[7] Nor is there any requirement of privity between the product claimant and the product seller. See Section52-72n(b) which provides that "[a] claim may be asserted successfully under said sections notwithstanding the claimant did not buy the product from or enter into any contractual relationship with the product seller."

[8] Section 52-572m(b) defines a "product liability claim" to include "all claims or actions brought for personal injury, death or property damaged caused by the manufacture ...design...assembly...warnings...of any product" and "shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence;...breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent;...."

5

> Cir.1994) (*LaMontagne II* ) (holding that because the CPLA does not delineate the specific elements of the claims that it consolidates, the common law continues to provide the bases for, and theories of, recovery under the act, and that "the CPLA ... apparently was not meant to alter the substance of a plaintiff's rights or the facts that a plaintiff must prove in order to prevail"); *Lamontagne v. E.I. Du Pont de Nemours and Co., Inc.,* 834 F.Supp. 576, 587–89 (D.Conn.1993) (*Lamontagne I* ) (holding that the CPLA "certainly retains the plaintiff's right to allege the traditional theories of recovery along with the statutory basis for recovery under one unified count denominated as a 'product liability claim' " (internal quotation marks omitted)), *aff'd,* 41 F.3d 846 (2d Cir.1994); *Vitanza v. Upjohn Co.,* 257 Conn. 365, 778 A.2d 829, 839–41 (2001) (holding that the common law "learned intermediary" defense remains available under the CPLA); *Potter v. Chi. Pneumatic Tool Co.,* 241 Conn. 199, 694 A.2d 1319, 1345 n. 34 (1997) (holding that the admissibility of state-of-the-art evidence in design defect claims remains available under the CPLA); *Lynn v. Haybuster Mfg., Inc.,* 226 Conn. 282, 627 A.2d 1288, 1293 (1993) (holding that a common-law claim for loss of consortium can be brought as part of a CPLA action).

*Densberger v. United Technologies Corp.*, 297 F. 3d 66, 70 (2002)

In ruling on post verdict motions this Court in *Densberger v. United Technologies Cor.* 125 F. Supp. 2d 585 (2000), stated that plaintiffs' claims for strict liability and negligence cannot be plead separately but must be brought "under one cause of action sounding in product liability under the CPLA."

> Thus, "plaintiffs are permitted to allege negligence in a claim based on the CPLA," so long as the plaintiffs' claims do not include "a separate common law claim alleging conduct which is covered by the [CPLA]." *Secondino,* 832 F.Supp. at 42. In accordance with these precedents, the court properly charged the jury to consider the plaintiffs' three theories of liability for strict liability in tort, negligence, and breach of implied warranty of merchantability, under one cause of action sounding in product liability under the CPLA. *See* Jury Charge (Dkt. No. 270) at 22–40.

*Densberger v. United Technologies Cor.* 125 F. Supp at *8.

Plaintiffs' proposed amended complaint follows the dictates of CPLA and *Densberger* by alleging theories of strict liability and negligence "under one cause of action sounding in product liability under the CPLA." Id. Further, it is well established that "the CPLA preserves liability for negligent breach of a manufacturer's continuing, post-sale duty to warn of known or knowable

6

dangers associated with using its product." See *Densberger*, supra 125 F. Sup at *8. As the Second Circuit stated in *Densberger*, supra, 297 F. 3d at 71,"[i]t follows that the post-sale duty to warn exists in negligence, and is cognizable under the CPLA."

If New GM succeeds in its claim that it cannot be liable for failure to warn under CPLA for its post-sale conduct with respect to a vehicle manufactured by Old GM, then New GM would in essence be immune in Connecticut from liability for such conduct no matter how egregious the conduct. So if, for example, New GM in 2012, discovered a safety issue in a vehicle manufactured prior to 2009, they can simply keep it to themselves and, with impugnity, not warn owners or the public of the defect and avoid liability to persons injured by New GM's failure over the last 5 years to warn or recall the vehicle even though a warning would clearly have saved lives. What GM is asking for is a result that is not consistent with the Second Circuit decision and is clearly contrary to public policy.

**3. New GM's claim that it owes no duty to warn owners of vehicles manufactured by Old GM has been rejected three times by Judge Furman**

In its memorandum, New GM argues that because it did not manufacture or sell the 2004 Suburban, "[i]t therefore cannot and does not have any legal duties under Connecticut law with regard to the subject 2004 Chevrolet Suburban manufactured and sold by Old GM." [9] New GM conspicuously fails to tell the court that this argument has been rejected three times by Judge Furman in cases brought in the MDL. In a December 30, 2015, decision in *In re: General Motors LLC Ignition Switch Litigation*, 154 F.Supp. 3d, 30 (U.S.D.C., S.D.N.Y, December 30, 2015)("Scheuer") involving a claim brought by Plaintiff Robert Scheuer stemming from a May, 2014 accident involving a 2003 Saturn Ion, Judge Furman held that New GM, even though it did not manufacture or sell the vehicle, could be liable under Oklahoma Product Liability law for its own independent post-

7

sale duty to warn. Judge Furman relied, in part, on Oklahoma product liability law "which places a duty to protect the public from a dangerous defect on the entity that 'is best situated to protect the public against products that are a menace to safety,"[10] and "the 2009 Sale Agreement imposed a contractual warranty duty on the part of New GM to Old GM and New GM had a continuing duty to monitor and notify Old GM purchasers of defects."Id. Judge Furman found that this is the kind of 'relationship … that g[i]ve[s] rise to a duty to warn;' Id. p. 41; and concluded "that, under the circumstances here, New GM had a post-sale duty to warn Plaintiff of the known ignition switch defect." Id. p.

Subsequently, on August 15, 2016, Judge Furman decided in *In re: General Motors LLC Ignition Switch Litigation*, 202 F.Supp. 3d, 362 (U.S.D.C., S.D.N.Y,) ("Cockram") that New GM can be liable for its own failure to warn, this time under Virginia law. This decision involved a collision in June, 2011, involving a 2006 Chevrolet Cobalt. The issue, as framed by Judge Furman was "whether Virginia does—or would—recognize a post-sale duty to warn in the circumstances of this case, involving a *successor* corporation (or, more precisely, an asset purchaser) rather than the original manufacturer or supplier." Id. p. 367. Judge Furman concluded that, "with respect to whether New GM had a duty to warn Cockram given the facts of this case, the Court holds that the Virginia Supreme Court would find such a duty existed here—again, for largely the same reasons as in *Scheuer*." Id.

A third decision was issued by Judge Furman recently on June 20, 2017, in a case brought under Arizona law by Dennis Ward stemming from a March 27, 2014 collision involving a 2009 Chevrolet manufactured by Old GM. In *In re: General Motors LLC Ignition Switch Litigation*, 202 F.Supp. 3d, 362 (U.S.D.C., S.D.N.Y,) ("Ward")(copy Attached as Exhibit A), New GM again argued

---

[9] See GM's memorandum, ECF # 222, page 5.

that applicable law, in this case Arizona, did not impose a post-sale duty to warn on New GM as the purchaser of the assets of Old GM. Reviewing his decisions in *Scheuer* and *Cockram*, Judge Furman in *Ward* "concludes that New GM owed Ward a duty to warn, and thus, its motion for summary judgment on the post-sale duty to warn claim must be denied." Although these decisions[11] were based on a prediction that the particular state Supreme Court would be influenced by, if not actually adopt, section 13 of the Restatement (Third) Torts, which may not be the case in Connecticut given the decision in *Bilfolck v. Phillip Morris, Inc*, 324 Conn. 402 (2016), that was not the sole basis of the Court's decision. Indeed, Judge Furman was influenced not only by state law that acknowledged, as Connecticut does, a post-sale duty to warn, but he also found additional bases for his conclusions including a duty to warn under the Safety Act as well as public policy, all which would similarly apply to recognize such a duty in Connecticut.

### 4. Whether New GM owes an independent duty to recall depends on the particular jurisdiction

Judge Furman has considered whether New GM can be held liable for its own negligent failure to recall a vehicle. The answer is dependent on state law. In the *Scheuer* decision,[12] Judge Furman held that because Oklahoma law recognized liability for failure to recall,[13] New GM could be held for its failure to timely recall Scheuer's 2003 Saturn.

> Plaintiff was foreseeably endangered by New GM's alleged misconduct—that is, New GM's delay in recalling admittedly defective vehicles—because New GM knew that

---

[10] See 154 F. Supp. 3d, at 40.
[11] In a fourth decision, . In *In re: General Motors LLC Ignition Switch Litigation*, 2016 WL 874778 (U.S.D.C., S.D.N.Y., March, 3, 2016)("Spain") Judge Furman held New GM did not have a post-sale duty to warn under Louisiana law. That decision was based on the provisions of Louisiana product liability law that permitted product liability suits only against manufacturers. Connecticut's product liability law is not so limited so that this case has not relevance in the Pitterman action.
[12] *In re: General Motors LLC Ignition Switch Litigation*, 154 F. Supp. 3d, 30 (U.S.D.C., S.D.N.Y, December 30, 2015)
[13] "Plaintiff's claim does not depend, however, on a specific "duty to recall"; instead, it is grounded in the duty of ordinary care that the common law demands from all actors. Oklahoma clearly imposes such a duty, both by statute and common law precedent." Id at 43.

9

> Plaintiff was driving a defective car by at least 2012. …. And delay of the recall was arguably unreasonably dangerous conduct, as it involved a hidden defect that caused a risk of serious injury or death " 'beyond that which would be contemplated by the ordinary consumer who purchases it.' "
>
> \* \* \* \* \* \*\* \*
>
> In short, whether or not Oklahoma courts have specifically recognized a "negligent recall claim," Plaintiff's negligence claim with respect to the recall is firmly grounded in Oklahoma law. [citations and footnotes omitted]

*In re: General Motors LLC Ignition Switch Litigation*, 154 F. Supp. 3d, at 44.

Like Oklahoma, Connecticut case law supports finding a duty to recall within products liability law. In <u>Arguetta v. Overhead Door Corp</u>., Connecticut Superior Court, 2000 WL 1207261, July 28, 2000, the court recognized that a failure to recall is included in a "product liability claim" under Connecticut law. In that case, Judge Skolnick denied a motion to strike an allegation that "the defendant failed to recall a garage door opener that was defectively designed and alleges harm as a result of that failure." In allowing such a claim to proceed, Judge Skolnick stated that

> "…by employing the words "but is not limited to" clearly indicates that the list of theories under which a product liability claim may be brought is not exclusive. Therefore, although the act does not state that manufacturers may be liable for failure to recall, the act implies that such a theory is viable given the fact that the list is not exclusive." Id. *1.

Similarly, in <u>Savage v. Scripto-Tokai Corp.</u>, 266 F. Supp. 2d 344 (U.S.D.C., 2003), Judge Arterton, held that a claim of failure to recall has legal viability in Connecticut.

> Paragraph 7(1) of the Third Amended Complaint asserts that the defendant is liable "in that it negligently failed to protect the plaintiff by performing a recall and/or it performed an inadequate recall of the product." Defendant asserts that a failure to recall theory is not a separate basis for liability, although defendant acknowledges that there is no Connecticut case law to this effect. Plaintiff correctly notes that the Second Circuit has concluded that the post-sale duty to warn is a valid theory under Connecticut law. *See Densberger v. United Techs. Corp.*, 297 F.3d 66, 71 (2d Cir.2002). Inasmuch as a claim of breach of the post-sale duty to warn is analogous to a claim of failure to recall, plaintiffs' theory has legal viability in Connecticut.

10

In the *Cockram* Decision, Judge Furman concluded that the Virginia Supreme court would, contrary to Oklahoma, not find a duty to recall because he predicted that Virginia would adopt the Restatement (Third) Torts which only recognizes a failure to recall where there has been a government directive to do so. The Connecticut Supreme Court determined in *Bilfolck v. Phillip Morris, Inc*, 324 Conn. 402 (2016) that it would not adopt the Restatement (Third) Torts as to the elements of a defective design claim. It is likely, therefore, that the basis on which the failure to recall claim based on New GM conduct was not recognized under Virginia law in Cockram would not apply under Connecticut law.

In the *Ward* Decision, a failure to recall claim was not asserted, since recalls had been issued, and no decision was made on this issue.

Under Connecticut law, the test for determining legal duty is a two-prong analysis that includes: (1) a determination of a foreseeability; and (2) public policy analysis.

> "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action…The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised…[In other words] would the ordinary [person] in the defendant's position, knowing what he knew or should have know, anticipate that harm of the general nature of that suffered was likely to result?" (Citations omitted; internal quotation marks omitted.) Id. at 405, 696 A.2d 332.
> * * * * *
> Foreseeability notwithstanding, it is well established that Connecticut courts will not impose a duty of care on the defendants if doing so would be inconsistent with public policy."

*Monk v. Temple George Associates, LLC*, 273 Conn. 108, 115-116 (2005).

There is no question that harm of the type suffered by the O'Connors was foreseeable if New GM did not did act to (1) warn vehicle owners of rollaways that can occur by shifting the transmission out of Park without stepping on the brake when the key was in the Accessory position

11

and/or (2) recall and retrofit the Suburban. The evidence of other similar incidents offered by plaintiffs demonstrates that such incidents were foreseeable and, in fact, that New GM had notice of customer reports that such incidents were occurring. The evidence of these similar incidents also demonstrates that New GM was, even after the June 2009 bankruptcy sale, continuing to monitor the performance of the vehicles manufactured by Old GM, presumably as required by Sale Agreement. By doing so, New GM undertook an obligation to vehicle owners to act if New GM had evidence of a safety issue with vehicles manufactured by Old GM. Imposing a duty of care on New GM to warn and to recall is consistent with, and furthers the public policy underlying the Connecticut Product Liability Act in protecting the safety of the public.

**Conclusion**

Considering the exclusivity of the CPLA with respect to plaintiffs' product liability claim, and that Connecticut courts have recognized a failure to recall and retrofit as part of a products liability action, plaintiffs submit that the proposed amended complaint adequately complies with the Bankruptcy Court order and properly asserts theories of liability against New GM recognized under Connecticut product liability law. Accordingly, the proposed amended complaint should be permitted.

THE PLAINTIFFS,

BY: _____

Joram Hirsch, Esq.
Adelman Hirsch & Connors, LLP
1000 Lafayette Boulevard
Bridgeport, CT  06604
Federal Bar No. - ct06734
Tele: (203) 331-8888
Fax: (203) 333-4650

Email: jhirsch@ahctriallaw.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been filed electronically to the following counsel of record on the date hereof with the United States District Court for the District of Connecticut. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Mark J. Claflin
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT  06114-1121

Kent B. Hanson
Paul E. D. Darsow
Hanson Bolkcom Law Group, Ltd.
527 Marquette Avenue, Suite 2300
Minneapolis, MN  55402

Joram Hirsch, Esq.

13