HEARING DATE AND TIME: JUNE 29, 2017 AT 3:00 P.M.

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
| In re | : | Chapter 11 |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | Case No.: 09-50026 (MG) |
|     f/k/a **General Motors Corp.,** *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------x

**REPLY BY GENERAL MOTORS LLC TO OPPOSITION BY THE PITTERMAN**
**PLAINTIFFS TO MOTION TO ENFORCE THE PITTERMAN OPINION**

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this Reply to the opposition by the Pitterman Plaintiffs ("**Opposition**") to New GM's motion to enforce ("**Pitterman Motion to Enforce**") the Pitterman Opinion.[1]

1.      On June 28, 2017, the Connecticut District Court (Judge Hall) ruled, as a matter of Connecticut state law, that the Pitterman Plaintiffs could amend their complaint to allege

---
[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Pitterman Motion to Enforce.

1

30736322

post-Sale failure to warn or recall claims against New GM under the Connecticut Product Liabilities Act.[2] Significantly, Judge Hall recognized that she was not addressing whether those claims contravened the Sale Order and other relevant bankruptcy rulings concluding that she would leave "for the bankruptcy court, any decision as to whether these claims may be pursued against New GM as a matter of bankruptcy law and [as] a matter of the sale order." June 28, 2017 Connecticut District Court Hr'g Tr., at 6.[3]

2. Plaintiffs' pursuit of Independent Claims and certain conclusions in Judge Hall's ruling violate the governing Sale Order. The June 28, 2017 hearing reveals that plaintiffs' so-called Independent Claims are nothing more than "dressed up" successor liability claims, *In re Old Carco LLC*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013), and are prohibited under the Sale Order for three reasons.

3. *First*, at the June 28 hearing, Judge Hall held that New GM is a product seller or product manufacturer under the Connecticut Product Liabilities Act because: (i) New GM "*bought the assets* of Old GM"; (ii) New GM "manufactures cars . . . *using the GM Chevrolet name*"; and (iii) New GM "*assume[d] certain . . . obligations*" as part of the Sale Agreement.[4] (June 28, 2017 Hrg. Tr. at 22) (emphasis added). Based on this ruling, New GM's liability is thus dependent on the Sale transaction itself – and would not solely be predicated on post-closing wrongful conduct by New GM. In essence, Judge Hall created a form of successor liability that is inconsistent with the Sale Order. *See Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 2 F. Supp. 3d 192, 217 (D. Conn. 2014) (discussing hallmarks of successor liability

---

[2] Judge Hall noted that the issue concerning whether New GM would be a product seller within the meaning of the Connecticut Product Liability Act was one of first impression and would probably be certified at some point to the Connecticut Supreme Court. *See* June 28, 2017 Connecticut District Court Hr'g Tr., at 12.

[3] A copy of the June 28, 2017 Connecticut District Court Hearing Transcript is annexed hereto as **Exhibit "A."**

[4] The obligations referred to were the so called "glove box warranty" which Judge Hall acknowledged had expired by the time of the Sale as it related to plaintiffs' vehicle. (June 28, 2017 Hrg. Tr. at 22)

claims under Connecticut law). Plaintiffs' cannot properly pursue as Independent Claims successor liability claims or claims not solely based on New GM conduct.

4.  *Second*, plaintiffs' Amended Complaint does not state Independent Claims as defined by the Second Circuit Opinion or the Pitterman Opinion. This Court held that "[t]o pass the bankruptcy gate, a complaint must clearly allege that its causes of action are *based solely on New GM's post-closing wrongful conduct*." Pitterman Opinion at 23; *see also In Matter of Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016). The Amended Complaint does not state claims "based solely on New GM's post-closing wrongful conduct." Instead, it continues to allege the same mix of Old GM conduct and knowledge that this Court found insufficient. (Amended Complaint ¶¶ 15-18, 25)

5.  *Third*, in order to assert failure to warn or recall as an Independent Claim, a plaintiff must allege facts that would establish an independent duty based on a post-Sale relationship between New GM and the plaintiff. *See In re Old Carco LLC*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013) (Bernstein, J.) ("the law imposes a duty to warn because the successor has entered into a relationship with the customer and derives an actual or potential economic benefit.") Here, plaintiffs have not alleged a post-Sale relationship between New GM and the plaintiffs. Plaintiffs' claim is instead based on their relationship with Old GM, the entity that designed, manufactured, assembled, delivered, and sold the subject vehicle. (Amended Complaint ¶¶ 15-18) Plaintiffs' duty-to-warn claim is a classic Assumed Liability claim (based on Old GM conduct), not an Independent Claim (based solely on New GM conduct). And contrary to plaintiffs parade of horribles about "immunity" (Dkt. 227 at 7), the result urged by New GM does not foreclose New GM's liability for properly pled failure to warn claims. Plaintiffs' Assumed Product Liability failure-to-warn claims against New GM have passed

3

through the bankruptcy gate, but their concocted Independent Claim based on failure-to-warn do not.

A. **Plaintiffs' Disguised Successor Liability Claims Are Barred By The Sale Order**

6.  Judge Hall held on June 28, 2017 that plaintiffs properly stated failure-to-warn or recall claims under the Connecticut Product Liabilities Act -- ostensibly as "Independent Claims" because she concluded that New GM was a "product seller" or "product manufacturer of a 2004 vehicle that only Old GM sold and manufactured. When New GM's counsel asked a series of questions "to make sure that I understand what the conduct is that the Court is finding this liability to flow from," the Court's responses vividly demonstrate that plaintiffs' Connecticut state-law claims are, in fact, proscribed dressed-up successor liability claims. (June 28, 2017 Hearing, at 22)

7.  In determining that New GM was a product seller under the Connecticut Product Liabilities Act, Judge Hall relied upon the following facts:

- New GM "bought the assets of Old GM" (*Id.* at 22);
- New GM "manufactures cars . . . using the GM Chevrolet name" (*id.*); and
- New GM "assume[d] certain . . . obligations" as part of the Sale Agreement. (*id.*)

Judge Hall explained the basis for her ruling as follows:

> MR. HANSON: So I want to make sure that I understand what the conduct is that the Court is finding this liability to flow from. I heard the Court say that GM bought the assets of Old GM. It manufacturers cars now. Am I right on both of those points?
>
> THE COURT: Using the GM Chevrolet name.
>
> MR. HANSON: So using the GM name now subsequent to this product. And if I understand correctly what the Court just ruled in the latter part of your ruling --
>
> THE COURT: It also bought significant assets of Old GM.
>
> MR. HANSON: Right.

4

>THE COURT: Not all.
>
>MR. HANSON: To make it clear that these are -- that it's because of the purchase of assets that the Court is making that finding.
>
>THE COURT: And it also assumes certain, not these, but certain obligations, yes.

June 28, 2017 Connecticut District Court Hr'g Tr., at 22.

8. The factors upon which Judge Hall based her determination that plaintiff had stated so-called Independent Claims -- New GM's continued manufacturing of cars (albeit not plaintiff's model year vehicle), New GM's use of the GM Chevrolet name, New GM's purchase of "significant assets of Old GM," and New GM's assumption of certain obligations (albeit not obligations owed to plaintiffs) -- are factors routinely cited as *bases for successor liability under Connecticut law*. See *Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 2 F. Supp. 3d 192, 217 (D. Conn. 2014), *aff'd sub nom. Call Ctr. Techs., Inc. v. Interline Travel & Tour, Inc.,* 622 F. App'x 73 (2d Cir. 2015) (discussing elements of continuity of enterprise exception under Connecticut law, including "maintaining the same business," the same "production processes," and the "same products").[5]

9. In concluding that plaintiffs had stated a direct claim under Connecticut law (and not simply Assumed Product Liabilities) against New GM, Judge Hall also relied on "the use of the goodwill accruing to the GM name." (June 28, 2017 Hrg at 12). But the transfer of goodwill is, at best, a *basis for successor liability* under the product-line doctrine in Connecticut -- not a

---

[5] *See also Peglar & Assocs., Inc. v. Prof'l Indem. Underwriters Corp.,* No. X05CV970160824S, 2002 WL 1610037, at *7 (Conn. Super. Ct. June 19, 2002) (discussing elements of *de facto* merger exception under Connecticut law, including "continuation of the enterprise of the seller corporation so that there is a continuity of management, personnel, physical location, assets and general business operations," and "the purchasing corporation assum[ing] those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation"). New GM does not concede that the Connecticut Supreme Court would adopt the continuity-of-enterprise or product line theories of successor liability, nor that plaintiffs could establish successor liability under Connecticut law.

5

basis for an Independent Claim that can only be predicated on post-Sale New GM conduct. *See S. Connecticut Gas Co. v. Waterview of Bridgeport Ass'n., Inc.*, No. CV054005335, 2006 WL 1681005, at *1 (Conn. Super. Ct. June 1, 2006) ("Another exception to the general rule is the 'product line' exception, which states that where the successor corporation holds itself out as being the same name or product, operation and sale, *thereby receiving the benefit of past goodwill*, it should likewise bear the burden of past operation.") (emphasis added).

10. Judge Gerber specifically warned plaintiffs not to raise successor liability issues in their complaints. In his Judgment, dated December 4, 2015 [ECF No. 13563] ("**December 2015 Judgment**"), he held that any "allegations that speak of New GM as the successor of Old GM (e.g. allegations that refer to New GM as the 'successor of,' a 'mere continuation of,' or a 'de facto successor of' of Old GM) are proscribed by the Sale Order." December 2015 Judgment, ¶ 16.

11. Thus, as in *In re Old Carco*, the Pitterman Plaintiffs' claims are a "typical successor liability case dressed up to look like something else, and [are] prohibited by the plain language of the bankruptcy court's Order." *In re Old Carco LLC*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013). The claims are inconsistent with the Sale Order and are not solely based on New GM post-Sale conduct. The Bankruptcy Court should exercise its gatekeeping function by enjoining the Pitterman Plaintiffs from proceeding on their so-called Independent Claims.

**B.     The Amended Complaint Does Not State Independent Claims
as Defined by the Second Circuit Opinion and the Sale Order.**

12. The Second Circuit has held that "independent claims . . . are based on New GM's post-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct." *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016). Similarly, this Court held on June 7 that "[t]o pass the

6

bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." (Pitterman Opinion at 23).

13. Plaintiffs do not specifically allege any "post-closing wrongful conduct by New GM," as the sole basis for their Independent Claims, as required by this Court's Pitterman Opinion and the Second Circuit Opinion. To the contrary, the only "wrongful conduct" alleged in the Amended Complaint is attributed to Old GM, not to New GM. Plaintiffs allege that their Old GM vehicle was designed, manufactured, assembled, sold, and distributed by Old GM. (Amended Complaint ¶¶ 15-17). Plaintiffs also allege that Old GM issued a 2006 Technical Service Bulletin which allegedly showed awareness of the purported defect. (*Id.* at ¶ 25). Finally, plaintiffs' lawsuit is exclusively predicated on the Connecticut Product Liability statute, and they allege that Old GM (not New GM) was the product seller within the meaning of that statute. (*Id.* at ¶¶ 18-19). These claims -- predicated on *Old GM's* conduct -- are not Independent Claims under the Second Circuit's Opinion or this Court's Pitterman Opinion. *See In Matter of Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016) ("independent claims . . . are not claims . . . that are based on pre-petition conduct.").

14. To comply with this Court's June 7 ruling, the Pitterman Plaintiffs made only one change to their Complaint. Instead of alleging in *one* paragraph that Old GM and New GM had general knowledge of an alleged defect, they now allege in separate paragraphs that Old GM and New GM had such general knowledge. Plaintiffs do not allege what specific knowledge New GM had, nor how New GM obtained that knowledge. This cosmetic change violates both the letter and the spirit of the Court's June 7 ruling, which prohibits Independent Claims based "on generalized knowledge of both Old GM and New GM." Pitterman Opinion, 2017 WL 2457881, at *10.

7

**C.      The Complaint Does Not Allege any Post-Sale Relationship Between Plaintiffs and New GM that Would Establish an Independent Duty to Warn or Recall.**

15.     Plaintiffs' so-called Independent Claims also fail to pass through the bankruptcy gate because plaintiffs have not alleged a post-Sale relationship between New GM and plaintiffs. *See In re Old Carco LLC*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013).

16.     In *In re Old Carco*, the Bankruptcy Court addressed a sale agreement in the *Chrysler* bankruptcy that is substantially similar to the Sale Agreement here. In that case, Judge Bernstein held that the would law impose "a duty to warn because the successor has *entered into a relationship* with the customer and derives an actual or potential economic benefit." *In re Old Carco LLC*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013) (Bernstein, J.) (emphasis added). Similarly, in *Holland v. FCA US* LLC, Case No. 1:15 CV 121, 2015 WL 7196197 (N.D. Ohio Nov. 16, 2015), the Court held that knowledge of an alleged defect by the purchaser was insufficient to establish a duty to warn on the purchaser, absent the required "relationship." *See Holland*, 2015 WL 7196197 at *4 ("while the [post-sale] TSB may serve as evidence that FCA had knowledge of the potential existence of rust and corrosion on 2004-2005 Pacificas, knowledge alone is insufficient to establish a duty on the part of FCA to warn Plaintiffs that their vehicles may be affected. Plaintiffs must allege a relationship between FCA and Plaintiffs that gave rise to a duty to warn."). Here, plaintiffs do not allege that New GM entered into any "relationship" with them, and thus plaintiffs' claims cannot pass through the bankruptcy gate.

17.     Indeed, the only "relationship" arguably supported by plaintiffs' allegations is between plaintiffs and *Old GM*, which designed, manufactured, assembled, sold, and distributed their vehicle. (Amended Compl. Par. 15-18). Accordingly, any duty to warn was owed by Old GM, not New GM.

18. Finally, plaintiffs incorrectly assert that if they cannot pursue Independent Claims, New GM will have "immunity." (Document 227 at 7). But New GM assumed Old GM's duty to warn obligation when it assumed Product Liabilities.[6] Thus, even if their Independent Claims are barred, plaintiffs may continue to pursue their Assumed Liability duty-to-warn claims against New GM.

## CONCLUSION

WHEREFORE, New GM respectfully requests that this Court enter an order, substantially in the form attached to the Pitterman Motion to Enforce as **Exhibit "C"**, granting the relief sought herein, and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 29, 2017

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Attorneys for General Motors LLC*

---

[6] *See In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015).