UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>Motors Liquidation Company, f/k/a General Motors Corporation, *et al.*,<br><br>Debtors. | FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 09-50026 (MG)<br>(Jointly Administered) |

## MEMORANDUM OPINION AND ORDER DECIDING CERTAIN 2016 THRESHOLD ISSUES

*A P P E A R A N C E S:*

KING & SPALDING LLP
*Attorneys for General Motors LLC*
1185 Avenue of the Americas
New York, NY 10036
By:    Arthur Steinberg, Esq.
       Scott Davidson, Esq.

KIRKLAND & ELLIS LLP
*Attorneys for General Motors LLC*
300 North LaSalle
Chicago, IL 60654
By:    Richard C. Godfrey, Esq.
       Andrew B. Bloomer, Esq.

ADELMAN HIRSCH & CONNORS LLP
*Attorneys for Bernard Pitterman, Administrator*
1000 Lafayette Blvd.
Bridgeport, CT 06604
By:    Joram Hirsch, Esq.
       Robert B. Adelman, Esq.

ANTHONY LAW FIRM, P.A.
*Attorneys for Moore Plaintiffs*
150 Magnolia Street
Spartanburg, SC 29306
By:    Kenneth C. Anthony, Jr., Esq.
       K. Jay Anthony, Esq.

CARCIONE, CATTERMOLE, DOLINSKI, STUCKY, MARKOWITZ & CARCIONE
*Attorneys for Brianna Minard*
1300 South El Camino Real, Suite 300
P.O. Box 5429
San Mateo, CA 94402
By:    Joshua S. Markowitz, Esq.

HAGENS BERMAN SOBOL SHAPIRO LLP
*Attorneys and Co-Lead Counsel for Ignition Switch Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
By:    Steve W. Berman, Esq.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
*Attorneys and Co-Lead Counsel for Ignition Switch Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*
275 Battery St., 29th Floor
San Francisco, CA 94111
By:    Elizabeth J. Cabraser, Esq.

BROWN RUDNICK LLP
*Attorneys and Designated Counsel for Ignition Switch Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*
Seven Times Square
New York, NY 10036
By:    Edward S. Weisfelner, Esq.
       Howard Steele, Esq.

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, A PROFESSIONAL CORPORATION
*Attorneys and Designated Counsel for Ignition Switch Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*
2323 Bryan Street, Suite 2200
Dallas, TX 75201
By:    Sander L. Esserman, Esq.

LEDFORD LAW FIRM
*Attorney for Christopher Pope and Gwendolyn Pope*
425 East 22nd St., Suite 101
Owasso, OK 74055
By:    Kris Ted Ledford, Esq.

GOODWIN PROCTER LLP
*Counsel to Those Certain Post-Closing Accident Plaintiffs Represented By Butler Wooten & Peak LLP, Denney & Barrett, P.C., Hilliard Muñoz Gonzales L.L.P., and Turner & Associates, P.A.*
620 Eighth Avenue
New York, NY 10018
By:    William Weintraub, Esq.
         Gregory Fox, Esq.

GARY PELLER, ESQ.
*Counsel for Bledsoe Plaintiffs, Elliott Plaintiffs and Sesay Plaintiffs*
600 New Jersey Avenue, NW
Washington, DC 20001
By:    Gary Peller, Esq.

THE MASTROMARCO FIRM
*Attorneys for Plaintiff Benjamin Pillars*
1024 N. Michigan Avenue
Saginaw, MI 48602
By:    Victor J. Mastromarco, Jr., Esq.

KNAPP, PETERSEN & CLARKE
*Attorneys for Plaintiffs William D. Pilgrim, et al.*
550 North Brand Boulevard, Suite 1500
Glendale, CA 91203
By:    André E. Jardini, Esq.

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
*Attorneys for Plaintiffs William D. Pilgrim, et al.*
200 West 41st Street, 17th Floor
New York, NY 10036
By:    Sean Southard, Esq.
         Brendan M. Scott, Esq.

HILLIARD MUÑOZ GONZALES LLP
*Lead Counsel in the MDL Court with Primary Responsibility for Personal Injury and Wrongful Death Cases*
719 South Shoreline, Suite 500
Corpus Christi, TX 78401
By:    Robert Hilliard, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

The Court is tasked with resolving certain of the 2016 Threshold Issues[1] arising out of the

363 Sale, in which the bulk of Old GM's assets were sold to New GM free and clear of nearly all

liabilities.  In an Order to Show Cause entered by this Court, the parties defined five 2016

Threshold Issues regarding claims against New GM.  At issue today, in simplified terms, are the

following questions: (i) must a plaintiff own a Subject Vehicle with the Ignition Switch Defect to

be considered an Ignition Switch Plaintiff? (ii) are used car purchasers without the Ignition

Switch Defect bound by the Sale Order? and (iii) may Post-Closing Accident Plaintiffs pursue

claims against New GM for punitive damages based on Old GM's conduct?  Numerous briefs

have been filed in this matter by New GM; designated counsel for Ignition Switch and Non-

Ignition Switch Plaintiffs; Benjamin Pillars; the Pilgrim plaintiffs; the Elliott, Sesay, and Bledsoe

plaintiffs; and the Pope plaintiffs.  The Court heard two days of oral argument on April 20, 2017,

and May 17, 2017.

The Court today resolves three of the 2016 Threshold Issues, holding: (i) only plaintiffs

with the Ignition Switch Defect in a Subject Vehicle are Ignition Switch Plaintiffs; (ii) used car

purchasers are bound by the Sale Order to the same extent as their predecessors in interest; and

(iii) claims for punitive damages against New GM, based on Old GM conduct, are barred by the

Bankruptcy Code's priority scheme.

## I.  BACKGROUND

This Opinion assumes familiarity with the history of the General Motors bankruptcy,

which is explained more fully in the previous opinions of this Court and the Second Circuit,

---

[1]      All capitalized terms in the Introduction are defined below.

many of which are referenced below.  This Opinion will explain only the background necessary

to resolve 2016 Threshold Issues One, Three, and Four (defined below).

### A.    The Sale Order and the 2016 Threshold Issues

On July 5, 2009, my predecessor Judge Gerber entered a sale order (the "Sale Order,"

ECF Doc. # 2968) under section 363 of the Bankruptcy Code in these chapter 11 cases.  The Sale

Order authorized the sale (the "363 Sale") of the bulk of the assets from Motors Liquidation

Company (f/k/a General Motors Corp.) ("Old GM") to General Motors LLC ("New GM"), "free

and clear of liens, claims, encumbrances, and interests," with certain limited exceptions.  (Sale

Order at 2.)  Attached to the Sale Order was the Amended and Restated Master Sale and

Purchase Agreement (the "Sale Agreement," ECF Doc. # 2968-2).  Under the Sale Order and

Sale Agreement, New GM assumed "[l]iabilities to third parties for death, personal injury, or

other injury to Persons or damage to property caused by motor vehicles . . . manufactured, sold

or delivered by [Old GM]" ("Product Liabilities") arising out of accidents or incidents occurring

on or after the closing date of the 363 Sale, which turned out to be July 10, 2009 (the "Closing

Date").  (Sale Agreement § 2.3.)  Accidents or incidents occurring on or after the Closing Date

have been referred to throughout this litigation, and will be referred to in this Opinion, as "Post-

Closing Accidents," and the plaintiffs asserting those claims are "Post-Closing Accident

Plaintiffs."

On December 13, 2016, this Court entered an order to show cause (the "Order to Show

Cause," ECF Doc. # 13802) setting forth five threshold issues (the "2016 Threshold Issues") to

be resolved regarding claims asserted against New GM involving vehicles manufactured by Old

GM, and the procedures for resolving these issues.  The issue whether the Sale Order barred

independent claims based solely on post-closing wrongful conduct of New GM ("Threshold

Issue Two") was addressed and resolved in a recent opinion.  *See In re Motors Liquidation Co.*,

568 B.R. 217, 219–21 (Bankr. S.D.N.Y. 2017) [hereinafter the "Pitterman Opinion" or *Motors Liquidation Pitterman*].[2]  The issue whether certain plaintiffs may file late proofs of claim ("Threshold Issue Five") has not yet been fully briefed and argued by the parties.  The Order to Show Cause identified the first, third, and fourth 2016 Threshold Issues as follows:

> ["Threshold Issue One":] In the context of (a) the April 2015 Decision/June 2015 Judgment, and (b) the November 2015 Decision/December 2015 Judgment, are Ignition Switch Plaintiffs only those plaintiffs that are asserting claims against New GM based on an "Ignition Switch" in a "Subject Vehicle," and all other plaintiffs are Non-Ignition Switch Plaintiffs? If that is not correct, what did the Bankruptcy Court mean when it used the terms Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs in (a) the April 2015 Decision/June 2015 Judgment, and (b) the November 2015 Decision/December 2015 Judgment? . . .

> ["Threshold Issue Three":] Is the [Second Circuit] Opinion's holding that claims held by Used Car Purchasers are not covered by the Sale Order because they had no contact or relationship with Old GM limited to (a) only those parties that appealed the April 2015 Decision/June 2015 Judgment to the Second Circuit, and/or (b) Independent Claims asserted by Used Car Purchasers based solely on New GM conduct?

---

[2]      New GM recently took the position before this Court that Threshold Issue Two was not fully resolved by the Pitterman Opinion, because the Court did not expressly answer the following question:

> Are Non-Ignition Switch Plaintiffs barred from asserting Independent Claims against New GM either because (a) other than those plaintiffs represented by Mr. Peller in the *Elliott*, *Sesay* and *Bledsoe* cases that appealed the April 2015 Decision/June 2015 Judgment, they did not appeal the April 2015 Decision/June 2015 Judgment to the Second Circuit, and therefore the [Second Circuit] Opinion does not apply to them, and/or (b) they did not appeal the November 2015 Decision/December 2015 Judgment and/or the [Second Circuit] Opinion did not affect the rulings in the November 2015 Decision/December 2015 Judgment?

(Order to Show Cause at 2; *see* ECF Doc. # 13963 at 3–4 n.5.)  The Court ruled in the Pitterman Opinion that truly Independent Claims—that is, claims based solely on wrongful post-closing conduct of New GM—are not barred by the Sale Order because they were not "claims" at the time of the 363 Sale.  *Motors Liquidation Pitterman*, 568 B.R. at 231.  The Court further determined that in the April 2015 Decision, Judge Gerber "decided issues only with regard to plaintiffs whose vehicles had the Ignition Switch Defect."  *Id.* at 223; *see also id.* at 226–27 (holdings of November 2015 Decision and December 2015 Judgment were also limited to Ignition Switch Plaintiffs).  Accordingly, whether certain plaintiffs without the Ignition Switch Defect appealed the April Decision and June Judgment, or the November 2015 Decision and December 2015 Judgment, is beside the point.  Non-Ignition Switch Plaintiffs are *not* barred from asserting Independent Claims against New GM based solely on post-closing conduct of New GM.

> ["Threshold Issue Four":] Are Post-Closing Accident Plaintiffs
> bound by the Sale Order or may they bring successor liability claims
> against New GM and seek punitive damages in connection therewith
> notwithstanding the Court's rulings in the November 2015
> Decision/December 2015 Judgment?

(Order to Show Cause at 2–3 (footnote omitted).)  The Court addresses these three questions

today.

## B.    This Court's Decisions and Judgments

In April 2015, Judge Gerber issued an opinion interpreting the Sale Order's "free and

clear" provision.  *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015)

[hereinafter the "April Decision" or *Motors Liquidation I*].  Judge Gerber held that while

claimants whose vehicles possessed the "Ignition Switch Defect" (as defined in the April

Decision and discussed below) had been denied due process because they did not receive actual

notice of the Sale Order, they had not been prejudiced by that denial and were therefore bound

by the "free and clear" provisions of the Sale Order.  *See id.* at 568.  The Court issued the

judgment enforcing that decision on June 1, 2015 (the "June Judgment," ECF Doc. # 13177), and

certified the June Judgment and April Decision for direct appeal to the Second Circuit.  (ECF

Doc. # 13178.)

In September 2015, the Court entered a scheduling order setting a briefing schedule to

address, among other issues, whether New GM had contractually assumed liability for punitive

damages under the Sale Order, as well as whether certain allegations in non-bankruptcy lawsuits

ran afoul of the Sale Order, April Decision, and June Judgment.  ("September Scheduling

Order," ECF Doc. # 13416.)  In November 2015, the Court issued an opinion deciding the

questions laid out in the September Scheduling Order.  *See In re Motors Liquidation Co.*, 541

B.R. 104, 107 (Bankr. S.D.N.Y. 2015) [hereinafter the "November Decision" or *Motors

Liquidation II*] ("[T]he Court now must determine the extent to which the April Decision and

[June] Judgment bar particular claims (and particular allegations) in complaints in other courts in

which claims are asserted against New GM.").  The Court ruled, as discussed below, that "New

GM did not contractually assume liability for punitive damages based on Old GM knowledge or

conduct."  *Id.* at 108.  The Court entered a judgment enforcing the November Decision on

December 4, 2015 (the "December Judgment," ECF Doc. # 13563).  The November Decision

and December Judgment were never appealed.

### C.    The Second Circuit Opinion

New GM, the Old GM General Unsecured Creditors Trust (the "GUC Trust"), and four

groups of plaintiffs (the Groman Plaintiffs, Ignition Switch Plaintiffs, Non-Ignition Switch

Plaintiffs represented by attorney Gary Peller, and Pre-Closing Accident Plaintiffs)[3] appealed the

April Decision and June Judgment.  The Second Circuit issued its opinion in that appeal on July

13, 2016.  *See In Matter of Motors Liquidation Co*., 829 F.3d 135 (2d Cir. 2016), *cert. denied*

*sub nom. Gen. Motors LLC v. Elliott*, 137 S. Ct. 1813 (2017) [hereinafter the "Second Circuit

Opinion" or *Motors Liquidation III*].  The Second Circuit held that plaintiffs with the "ignition

switch defect," including those who had purchased their vehicles used, had been prejudiced by

---

[3]    The Second Circuit defined these groups of plaintiffs as follows:

> On April 21, 2014, Steven Groman and others (the "Groman Plaintiffs")
> initiated an adversary proceeding against New GM in the bankruptcy court
> below, asserting economic losses arising from the ignition switch defect.
>
> * * *
>
> Other plaintiffs allegedly affected by the Sale Order included classes of
> individuals who had suffered pre-closing injuries arising from the ignition
> switch defect ("Pre-Closing Accident Plaintiffs"), economic losses arising from
> the ignition switch defect in Old GM cars ("Ignition Switch Plaintiffs"), and
> damages arising from defects other than the ignition switch in Old GM cars
> ("Non–Ignition Switch Plaintiffs").  Included within the Ignition Switch
> Plaintiffs were individuals who had purchased Old GM cars secondhand after
> the § 363 sale closed ("Used Car Purchasers").

*Motors Liquidation III*, 829 F.3d at 150–51 (footnote omitted).

Old GM's failure to disclose the defect and thus by their lack of actual notice of the impending 363 Sale. *Id.* at 163. Those plaintiffs, therefore, were not bound by the Sale Order's "free and clear" provisions. *Id.* The Second Circuit never expressly defined its use of the term "ignition switch defect," but as discussed below, it appears the Second Circuit gave the term the same meaning as Judge Gerber's use of the capitalized term "Ignition Switch Defect."

### D.    Benjamin Pillars' Claims

Plaintiff Benjamin Pillars asserts claims for personal injury and wrongful death against New GM, arising from an accident on November 23, 2005, involving a 2004 Pontiac Grand Am. ("Pillars Opening Brief," ECF Doc. # 13857 at 2.) Pillars alleges that his wife, Kathleen Ann Pillars (the "decedent"), lost control of her vehicle when the ignition switch unexpectedly turned to the off position. (*Id.*) The decedent sustained severe injuries and died approximately seven years after the accident, in March 2012. (*Id.* at 2–3.) The 2004 Pontiac Grand Am is not a Subject Vehicle (as defined below). Pillars asserts, however, that he should be considered an Ignition Switch Plaintiff because he alleges a defect in the ignition switch of the vehicle. Pillars argues that Judge Gerber used the term "Non-Ignition Switch Plaintiffs" in the April Decision and June Judgment, and the November Decision and December Judgment, to refer only to plaintiffs asserting economic loss claims, implying that plaintiffs alleging personal injury or wrongful death are not Non-Ignition Switch Plaintiffs. (*Id.* at 3.) Pillars further argues that the 2004 Pontiac Grand Am was also subject to a recall for a faulty ignition switch: NHTSA Recall No. 14v400, in July 2014. (*Id.* at 4.) Finally, Pillars argues that because New GM previously stated that his claims were "identical to" the claims of "Ignition Switch Pre-Closing Accident Plaintiffs," New GM should be bound by that "admission." (*Id.* at 4–7.)

## II.    LEGAL STANDARD

### A.    2016 Threshold Issue One: Definitions of "Ignition Switch Plaintiff" and "Non-Ignition Switch Plaintiff"

1.    *This Court's Use of the Terms "Ignition Switch Plaintiff" and "Non-Ignition Switch Plaintiff"*

On August 8, 2014, Judge Gerber adopted stipulated facts agreed to by the parties (the "Stipulated Facts," ECF Doc. # 12826), upon which the Court based its April Decision and June Judgment.  The Stipulated Facts included the following definitions:

> "Ignition Switch" shall mean an ignition switch designed and/or sold by Old GM in the Subject Vehicles that may unintentionally move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine. (Consent Order, In re TQ14-001, NHTSA Recall No. 14V-047 (Dep't of Transp., Nat'l Highway Safety Admin. Dated May 16, 2014 ("Consent Order") at 2, ¶¶5; Part 573 Defect Notice filed by New GM with the National Highway Traffic Safety Administration ("NHTSA"), dated February 7, 2014.).

> "Subject Vehicles" are (1) 2005-2007 Chevrolet Cobalt and Pontiac GS, 2003-2007 Saturn Ion, 2006-2007 Chevrolet HHR, 2005-2006 Pontiac Pursuit (Canada), 2006-2007 Pontiac Solstice and 2007 Saturn Sky vehicles; and (2) 2008-2010 Pontiac Solstice and G5; 2008-2010 Saturn Sky; 2008-2010 Chevrolet Cobalt; and 2008-2011 Chevrolet HHR vehicles -- certain of the vehicles in this second category may have been repaired using a defective Ignition Switch that had been sold to dealers or aftermarket wholesalers. Statements about the Ignition Switch apply to the Subject Vehicles listed in the second category only to the extent that the Subject Vehicles were actually repaired using a defective Ignition Switch. (Part 573 Defect Notices filed by New GM with the NHTSA, dated February 7, 2014, February 24, 2014, and March 28, 2014, hereinafter "Feb. 7 Notice", "Feb. 24 Notice", and "March 28 Notice").

(Stipulated Facts at 3.)

This Court and the parties defined the Ignition Switch Defect according to the Stipulated Facts; in other words, the Ignition Switch Defect is the defect in the Subject Vehicles that gave rise to NHTSA Recall No. 14v047.  *See, e.g.*, *Motors Liquidation I*, 529 B.R. at 521 ("In March

10

2014, New GM announced to the public, for the first time, serious defects in ignition switches that had been installed in Chevy Cobalts and HHRs, Pontiac G5s and Solstices, and Saturn Ions and Skys (the 'Ignition Switch Defect'), going back to the 2005 model year."); *Opening Brief of Appellants The Ignition Switch Plaintiffs and the Adams Plaintiffs*, *The Ignition Switch Plaintiffs, et al. v. General Motors LLC (In re Motors Liquidation Co.)*, Nos. 1:16-cv-00098-JMF, 1:16-cv-00501-JMF (S.D.N.Y. Nov. 14, 2016) (ECF Doc. # 9) ("this brief uses the term 'Ignition Switch Defect' to refer to the defect that gave rise to NHTSA Recall No. 14v047 in February and March of 2014").  The April Decision also defined "Non-Ignition Switch Plaintiffs" as those plaintiffs who "brought actions asserting [e]conomic [l]oss claims as to GM branded cars that *did not have* Ignition Switch Defects . . . ."  *Motors Liquidation I*, 529 B.R. at 522 (emphasis in original).  It is clear from the April Decision that Judge Gerber used the terms "Ignition Switch Defect" to mean *only* the defect in the Subject Vehicles that gave rise to NHTSA Recall No. 14v047, and plaintiffs without the specific Ignition Switch Defect—whether the defect in their cars involved the ignition switch or not—were therefore not Ignition Switch Plaintiffs.[4]

In the June Judgment, the Court defined the term "Ignition Switch Plaintiff" for the first time, again in accordance with the Stipulated Facts and again with reference to the Subject Vehicles affected by NHTSA Recall No. 14v047: "plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the [Stipulated Facts], at 3)."  (June Judgment at 1 n.1.)

---

[4]     In the Pitterman Opinion, the Court incorrectly paraphrased the April Decision: Judge Gerber stated that the Ignition Switch Defect led to recalls during the spring of 2014, not the summer.  *See Motors Liquidation Pitterman*, 568 B.R. at 222; *Motors Liquidation I*, 529 B.R. at 521.

2.    *The Second Circuit Opinion is Consistent with this Court's Definitions*

As noted above, New GM, the GUC Trust, and certain other plaintiffs appealed the April

Decision and June Judgment directly to the Second Circuit.  The Second Circuit framed the issue

just as the Bankruptcy Court had: "On February 7, 2014 [the date of the first letter giving rise to

NHTSA Recall No. 14v047], New GM first informed the National Highway Traffic Safety

Administration ('NHTSA') that it would be recalling, among other vehicles, the 2005 Chevrolet

Cobalt.  A defect in the ignition switch could prevent airbags from deploying." *Motors*

*Liquidation III*, 829 F.3d at 148.  The Second Circuit defined "Ignition Switch Plaintiffs" as

plaintiffs alleging "economic losses arising from the ignition switch defect in Old GM cars"

(including used car purchasers as a subset of Ignition Switch Plaintiffs, as discussed below) and

"Non-Ignition Switch Plaintiffs" as plaintiffs alleging "damages arising from defects other than

the ignition switch in Old GM cars." *Id.* at 151.

The Second Circuit included an extensive discussion of the Ignition Switch Defect,

beginning with Old GM's development of a new ignition switch starting in 1997, the ignition

switch's failure to pass internal testing, and the approval in May 2002 of the ignition switch for

production.  *Id.* at 148–49.  The Second Circuit described the customer complaints that arose

soon after the faulty ignition switches went into production: "In the fall of 2002, Old GM began

producing vehicles with the faulty ignition switch.  Almost immediately, customers complained

of moving stalls, sometimes at highway speeds . . . ." *Id.* at 149.  Old GM's internal

investigations continued, but employees did "nothing to resolve the problem for years." *Id.* at

150 (citation omitted).  "Indeed, New GM would not begin recalling cars for ignition switch

defects until February 2014"—again, the month of the first recall letter under NHTSA Recall No.

14v047. *Id.*  It is also notable that the Second Circuit focused on an investigative report written

by attorney Anton Valukas of the law firm Jenner & Block (the "Valukas Report," May 29,

12

2014, *available at* https://assets.documentcloud.org/documents/1183508/g-m-internal-investigation-report.pdf). The Valukas Report describes recalls occurring in February and March 2014, not thereafter. (*See id.* at 224 (describing February 7, 2014, recall letter); *id.* at 226 (describing expansion of the recall on March 28, 2014 to certain vehicles that may have been repaired with a faulty ignition switch).) Although the Second Circuit did not specify the recall number, it is clear from the context of the opinion and the detailed background information drawn from the Valukas Report that the Second Circuit's use of the terms "ignition switch" and "ignition switch defect" refer to the Ignition Switch Defect in the Subject Vehicles as defined by Judge Gerber in the April Decision and June Judgment.

The Court recognizes that the term Non-Ignition Switch Plaintiff has been used to refer to plaintiffs whose vehicles allegedly contain ignition switches with defects other than the Ignition Switch Defect, as well as defects not involving the ignition switch at all. At oral argument, plaintiffs' counsel explained that there are at least four additional recalls allegedly involving the ignition switch currently being litigated in the multidistrict litigation before Judge Furman in the District Court for the Southern District of New York (the "MDL"): NHTSA Recall Nos. 14v355, 14v394, 14v400, and 14v346, all in July or August 2014. (*See* 5/17/2017 Tr., ECF Doc. # 13943 at 70–73.) Counsel further indicated that discovery regarding whether the facts underlying those recalls are related to the same defect giving rise to NHTSA Recall No. 14v047 is ongoing but not yet complete. (*Id.* at 72.) Judge Furman recently noted that "between 2014 and 2015, New GM issued more than eighty-four recalls relating to more than seventy defects and affecting over twenty-seven million GM cars." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2017 WL 2839154, at *2 (S.D.N.Y. June 30, 2017). Whether plaintiffs whose vehicles were the subject of other recalls may yet be able to prove that their due process rights were

violated—or whether it is too late for them to do so—is not a question currently before this Court.

## B.    2016 Threshold Issue Three: Used Car Purchasers

### 1.    *The Second Circuit's Ruling was Limited to Used Car Purchasers with the Ignition Switch Defect*

In the April Decision, Judge Gerber clearly considered "Used Car Purchasers" a subset of the Ignition Switch Plaintiffs. "A subset of the Economic Loss Plaintiffs, the Used Car Purchasers . . . assert that they have special rights—to assert claims for successor liability when nobody else can—because they had not yet purchased their cars at the time of the 363 Sale." *Motors Liquidation I*, 529 B.R. at 570. Judge Gerber defined "Economic Loss Plaintiffs" as individuals claiming "losses to consumers [other than from accidents] alleged to have resulted from the Ignition Switch Defect." *Id.* at 521. Judge Gerber held that the Used Car Purchasers had been denied due process, but had not been prejudiced "because others made the same arguments that Used Car [Purchasers] might have made, and the Court rejected those contentions," and therefore were bound by the Sale Order. *Id.* at 571.

Judge Gerber also held that the Used Car Purchasers were successors in interest to the prior owners of the Old GM vehicles—and because those prior owners were bound by the Sale Order, so were the Used Car Purchasers. *Id.* Judge Gerber determined that purchasers of used cars cannot acquire greater rights than the seller possessed:

> And for each [Used Car Purchaser], an earlier owner was in the body of owners of Old GM vehicles who were bound by the Free and Clear Provisions. With exceptions not applicable here (such as holders in due course of negotiable instruments), the successor in interest to a person or entity cannot acquire greater rights than his, her, or its transferor. That is the principle underlying the *Wagoner* Rule, which, while an amalgam of state and federal law, is firmly embedded in the law in the Second Circuit. And that principle has likewise been applied to creditors seeking better treatment than the assignors of their claims. Thus it is not at all surprising to this Court

14

> that in *Old Carco*, Judge Bernstein blocked the suits by those who
> bought *used* 2005 and 2006 Dodge Durangos or Jeep Wranglers,
> distinguishing *Grumman Olson-Bankruptcy* on the ground that
> those plaintiffs "*or their predecessors (the previous owners of the
> vehicles)* had a pre-petition relationship with Old Carco, and the
> design flaws that they now point to existed pre-petition."

*Motors Liquidation I*, 529 B.R. at 571–72 (emphasis in original) (internal citations omitted).

Accordingly, Judge Gerber agreed with New GM's argument that a finding that purchasers of

used cars are not bound by the Sale Order would allow an owner of an Old GM vehicle to "end-

run" the Sale Order by simply selling the vehicle. *Id.* at 572. That result would be both

"illogical" and "unfair." *Id.*

On appeal, the Second Circuit limited its discussion of used car purchasers to those

whose cars had the Ignition Switch Defect: "Included within the Ignition Switch Plaintiffs were

individuals who had purchased Old GM cars secondhand after the § 363 sale closed ('Used Car

Purchasers')." *Motors Liquidation III*, 829 F.3d at 151. The Second Circuit held that the Used

Car Purchasers—that is, plaintiffs who purchased used cars *with the Ignition Switch Defect*—had

been prejudiced by the lack of actual notice of the 363 Sale, and were therefore not bound by the

Sale Order. *Id.* at 157 ("[T]he Sale Order likewise does not cover the Used Car Purchasers'

claims. The Used Car Purchasers were individuals who purchased Old GM cars after the

closing, *without knowledge of the defect* or possible claim against New GM.") (emphasis added).

The Second Circuit therefore reversed Judge Gerber's determination that the Used Car

Purchasers had not shown that they were prejudiced, but did not disturb Judge Gerber's ruling

that owners of used cars cannot acquire more rights than the seller had. That ruling therefore

remains law of the case. *See Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d

373, 378 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 71 (2d Cir. 2010) ("if an appellate court reviewed

a trial court's decision, but did not address an issue that the trial court decided, the trial court's

15

decision remains the law of the case"). Accordingly, used car purchasers without the Ignition

Switch Defect are bound by the Sale Order and may not bring claims against New GM based on

Old GM conduct. Because used car purchasers stand in the shoes of their predecessors in

interest, if a plaintiff purchased a used Old GM vehicle with the Ignition Switch Defect, that

plaintiff is not barred by the Sale Order and may pursue a claim against New GM to the same

extent that other Ignition Switch Plaintiffs may do so. Whether the Ignition Switch Plaintiffs

will ultimately prevail on their claims is a matter of state law not to be decided by this Court.[5]

### C.    2016 Threshold Issue Four: Punitive Damages

#### 1.    *Judge Gerber's Ruling that New GM Did Not Contractually Assume Liability for Punitive Damages Remains Law of the Case*

Judge Gerber ruled, as a matter of contract interpretation, that New GM did not assume

liability for punitive damages based on Old GM's conduct in the Sale Agreement.

> The Court cannot agree with the plaintiffs' contentions that the Sale
> Agreement unambiguously provides that New GM assumed
> punitive damages obligations. At best, it is ambiguous. And to the
> extent the Sale Agreement is ambiguous, the indicia of intent
> strongly come down against New GM's assumption of punitive
> damages obligations premised on anything other than its own
> knowledge and conduct. Thus New GM did not contractually
> assume liability for punitive damages based on Old GM knowledge
> or conduct. Nor is New GM liable for punitive damages based on
> Old GM conduct under other theories, such as by operation of law
> as a result of New GM's assumption of certain liabilities for
> compensatory damages. Consequently, under the April Decision
> and Judgment, punitive damages may not be premised on Old GM
> knowledge or conduct, or anything else that took place at Old GM.
> Punitive damages may be sought against New GM to the extent—
> but only the extent—they are based on New GM knowledge and
> conduct alone.

---

[5]    In particular, it is unclear whether Ignition Switch Plaintiffs will be able to prove damages. Judge Furman recently ruled that "while New GM's alleged concealment of the ignition switch defect may have caused economic injury to Plaintiffs who purchased their vehicles after New GM came into existence, it did not cause economic injury to Plaintiffs who purchased their vehicles before; the latter Plaintiffs' injury, if any, was complete at the time of sale, and thus is not attributable to New GM's conduct." *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2839154, at *8.

16

*Motors Liquidation II*, 541 B.R. at 108 (footnote omitted).  The Second Circuit Opinion did not review the November Decision, and the November Decision was not appealed.  Judge Gerber's ruling therefore remains law of the case and New GM cannot be held liable for punitive damages on a contractual basis.  *See Am. Hotel Int'l Grp., Inc.*, 611 F. Supp. 2d at 378.

      2.      *Claims for Punitive Damages Are Barred by the Bankruptcy Code's Priority Scheme*

The Post-Closing Accident Plaintiffs argue, however, that because their injuries had not yet occurred at the time of the 363 Sale, they are "future claimants" under *Grumman Olson* whose claims could never have been barred by the Sale Order.  (*See* "Plaintiffs' Joint Opening Brief," ECF Doc. # 13866 at 49–51 (citing *In re Grumman Olson Indus., Inc.*, 467 B.R. 694, 706 (S.D.N.Y. 2012)).)  But this argument is beside the point because New GM contractually assumed liability for compensatory damages for Post-Closing Accidents.  (Sale Agreement § 2.3.)  Accordingly, the only remaining issue to be decided is whether Post-Closing Accident Plaintiffs may seek *punitive* damages from New GM based on Old GM's conduct.  Judge Gerber already decided that New GM did not assume liability under the Sale Order for punitive damages based on Old GM's conduct.  *See Motors Liquidation II*, 541 B.R. at 108.  Assuming that the Post-Closing Accident Plaintiffs were indeed future claimants and not bound by the Sale Order, the question of punitive damages must nevertheless be decided as a matter of federal bankruptcy law.  Because the Court finds today that punitive damages against New GM based on Old GM conduct are not available under federal bankruptcy law, it is unnecessary to go further.

The Bankruptcy Code provides that general unsecured creditors, including those who file late claims, must be paid in full before any claim for punitive damages may be paid.  11 U.S.C. § 726(a)(3)–(4).  While section 726(a) applies to cases under chapter 7 of the Bankruptcy Code, the "best interest of creditors" test mandates that claimants in a chapter 11 case must receive at

least as much as they would receive in a chapter 7 case.  *See, e.g.*, *In re Best Payphones, Inc.*, 523 B.R. 54, 75 (Bankr. S.D.N.Y. 2015) ("Section 11 U.S.C. § 1129(a)(7) requires a creditor to receive or retain at least as much property under the plan as it would in a hypothetical chapter 7 liquidation.  It is the lowest point below which a proposed distribution may not fall, and must be read together with 11 U.S.C. § 726(a), which governs the priority of distribution in a chapter 7 case.").  In other words, punitive damages are never available in the case of an insolvent debtor like Old GM.

The plaintiffs argue that whether Old GM would have paid punitive damages is irrelevant because punitive damages are "not disallowed" but "merely subordinated," and in any event *New GM* is solvent.  ("Plaintiffs' Joint Reply Brief," ECF Doc. # 13889 at 46.)  But the relevant inquiry under the Bankruptcy Code is whether the *debtor*, not the purchaser, is insolvent.  And the Bankruptcy Code's priority scheme draws a ready distinction between general unsecured claims and claims for punitive damages.  *See* 11 U.S.C. § 726(a)(3)–(4).  An insolvent debtor like Old GM often pays general unsecured claims on a *pro rata* basis.  In contrast, as a rule an insolvent debtor would never pay a penny of punitive damages unless all higher priority claims are paid in full.  And in the case of Old GM, not all higher priority claims will be paid in full.  As Judge Gerber held in an earlier opinion in this case, punitive damages are subordinated in liquidating cases because "the victims of the punitive damages would in reality be only other, wholly innocent, creditors."  *In re Motors Liquidation Co*., No. 09-50026, 2012 WL 10864205, at *11 (Bankr. S.D.N.Y. Aug. 6, 2012) [hereinafter *Motors Liquidation 2012*].

### III.    DISCUSSION

**A.    2016 Threshold Issue One: "Ignition Switch Plaintiffs" Includes Only Plaintiffs Asserting Claims Based on the Ignition Switch Defect**

Pillars urges the Court to disregard Judge Gerber's and the Second Circuit's clear discussions of the Ignition Switch Defect, arguing that Judge Gerber defined the term "Non-Ignition Switch Plaintiffs" to include plaintiffs without the Ignition Switch Defect who were asserting *economic loss* claims, not personal injury or wrongful death claims.  (Pillars Opening Brief at 3.)  But Judge Gerber defined the Non-Ignition Switch Plaintiffs as those asserting economic losses simply because the plaintiffs without the Ignition Switch Defect before him at the time were asserting economic losses.  *See Motors Liquidation I*, 529 B.R. at 522 ("The other category of Plaintiffs later coming into the picture ('Non-Ignition Switch Plaintiffs') brought actions asserting [e]conomic [l]oss claims as to GM branded cars that *did not have* Ignition Switch Defects, including cars made by New GM and Old GM alike.") (emphasis in original).  Pillars' suggested reading would lead to the conclusion that *any* plaintiff asserting personal injury or wrongful death arising out of *any* ignition switch defect in *any* Old GM vehicle would be an Ignition Switch Plaintiff—a clearly overbroad reading.  Moreover, the Stipulated Facts, upon which Judge Gerber relied, define the Ignition Switch Defect as limited to the Subject Vehicles.  (Stipulated Facts at 3.)

Further, New GM's isolated statement that Pillars' claims were "identical" to the claims of Ignition Switch Pre-Closing Accident Plaintiffs cannot be taken as an admission that Pillars *is* an Ignition Switch Pre-Closing Accident Plaintiff.  (*See* Pillars Opening Br. at 6; "New GM Reply Brief," ECF Doc. # 13888 at 43.)  It is clear that in context, New GM was arguing that Pillars, like the Ignition Switch Pre-Closing Accident Plaintiffs, was barred from asserting claims

19

against New GM.  (*See* Pillars Opening Br. at 6; New GM Reply Br. at 43.)  That is not the same as stating the two sets of plaintiffs are one and the same.

It is true that the sheer number of prior decisions, all addressing slightly different groups of plaintiffs and all arising under different procedural postures, has led to sometimes-conflicting terms.  And sorting out which plaintiffs assert economic losses and which assert personal injury and wrongful death claims has added a wrinkle to this Court's definitions.  The June Judgment, for example, defines "Ignition Switch Plaintiffs" as plaintiffs "asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles."  (June Judgment at 1 n.1.)  Strictly reading that definition, even if Pillars was correct that the defect in the ignition switch in the 2004 Pontiac Grand Am qualified as the Ignition Switch Defect, Pillars would still not be classified as an Ignition Switch Plaintiff because he does not assert economic losses.  Clearly, emphasizing Judge Gerber's discussion of economic loss claims does not yield the operative distinction between Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs.

The Court finds Judge Gerber's and the Second Circuit's focus on the Ignition Switch Defect—rather than the question of economic loss versus personal injury—persuasive.  The April Decision and June Judgment relied on the Stipulated Facts, which defined the Ignition Switch Defect as limited to the Subject Vehicles.  The Second Circuit never indicated that it was changing the scope of Judge Gerber's definitions, and in fact, its detailed discussion of the Ignition Switch Defect indicates the Second Circuit viewed the defect as having the same scope used by Judge Gerber.  Accordingly, the Court finds that the following definitions apply to the holdings under the April Decision, June Judgment, November Decision, December Judgment, and this Opinion:

- "Subject Vehicles" are (1) 2005-2007 Chevrolet Cobalt and Pontiac G5, 2003-2007 Saturn Ion, 2006-2007 Chevrolet HHR, 2005-2006 Pontiac Pursuit

(Canada), 2006-2007 Pontiac Solstice and 2007 Saturn Sky vehicles; and (2) 2008-2010 Pontiac Solstice and G5; 2008-2010 Saturn Sky; 2008-2010 Chevrolet Cobalt; and 2008-2011 Chevrolet HHR vehicles -- certain of the vehicles in this second category may have been repaired using a defective Ignition Switch that had been sold to dealers or aftermarket wholesalers. Statements about the Ignition Switch apply to the Subject Vehicles listed in the second category only to the extent that the Subject Vehicles were actually repaired using a defective Ignition Switch.

- "Ignition Switch" shall mean an ignition switch designed and/or sold by Old GM in the Subject Vehicles that may unintentionally move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine.

- "Ignition Switch Plaintiffs" includes only those plaintiffs asserting economic losses arising from the Ignition Switch Defect in the Subject Vehicles.

- "Non-Ignition Switch Plaintiffs" are plaintiffs asserting economic losses arising from a defect other than the Ignition Switch Defect.

- "Pre-Closing Accident Plaintiffs" are plaintiffs asserting claims based on an accident or incident that occurred prior to the Closing Date.

- "Post-Closing Accident Plaintiffs" are plaintiffs asserting claims based on an accident or incident that occurred on or after the Closing Date.

- "Ignition Switch Pre-Closing Accident Plaintiffs" are that subset of Pre-Closing Accident Plaintiffs that had the Ignition Switch Defect in their Subject Vehicles.

- "Non-Ignition Switch Pre-Closing Accident Plaintiffs" are that subset of Pre-Closing Accident Plaintiffs that did not have the Ignition Switch Defect in a Subject Vehicle.

**B.      2016 Threshold Issue Three: Used Car Purchasers Without the Ignition Switch Defect Are Bound by the Sale Order**

*1.      The Plaintiffs' Reliance on "Future Claimant" Case Law is Misplaced*

The Plaintiffs urge the Court to consider used car purchasers as "unknown" or "future" claimants, who could not be bound by the Sale Order because they had not yet purchased their vehicles on the Closing Date and had no prior relationship with Old GM.  (*See* Plaintiffs' Joint Opening Br. at 48.)  It is true that "[b]ecause parties holding future claims cannot possibly be identified and, thus, cannot be provided notice of the bankruptcy, courts consistently hold that,

21

for due process reasons, their claims cannot be discharged by the bankruptcy courts' orders." *In re Grumman Olson Indus.*, 467 B.R. at 707. Indeed, this Court recently held that the Sale Order could not bar Independent Claims based on post-closing wrongful conduct of New GM for that very reason. *See Motors Liquidation Pitterman*, 568 B.R. at 231.

But the plaintiffs overlook an important distinction: the plaintiff in *Grumman Olson* was a FedEx employee driving a vehicle for business purposes; she never purchased the vehicle or had any relationship with the debtor whatsoever. *Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus. Inc.)*, 445 B.R. 243, 247, 253 (Bankr. S.D.N.Y. 2011). Here, each used car owner plaintiff purchased that vehicle from a seller who, in turn, purchased that vehicle from Old GM (or from another seller earlier in the chain who purchased the vehicle from Old GM). Unlike the FedEx driver in *Grumman Olson*, the used car purchasers are successors in interest to parties who *were* known claimants and *were* bound by the Sale Order. It is for this reason that Judge Bernstein held in *Old Carco* that used car purchasers held "claims" in that case. "The plaintiffs or their predecessors (the previous owners of the vehicles) had a pre-petition relationship with Old Carco, and the design flaws that they now point to existed pre-petition. At a minimum, they held contingent claims . . . ." *Burton, et al v. Chrysler Group, LLC (In re Old Carco LLC)*, 492 B.R. 392, 403 (Bankr. S.D.N.Y. 2013) (distinguishing *In re Grumman Olson Indus.*).

    2.    *Used Car Purchasers Without the Ignition Switch Defect Stand in the Shoes of Their Predecessors in Interest and Are Therefore Bound by the Sale Order*

Judge Gerber's ruling in the April Decision remains law of the case: "the successor in interest to a person or entity cannot acquire greater rights than his, her, or its transferor." *Motors Liquidation I*, 529 B.R. at 571 (citations omitted). This Court agrees with Judge Gerber that there is no basis to permit used car purchasers without the Ignition Switch Defect to "end run"

22

the Sale Order by asserting claims against New GM that their predecessors in interest would

have been prevented from asserting. Accordingly, the Court now holds that purchasers of used

cars without the Ignition Switch Defect are bound by the terms of the Sale Order to the same

extent that the previous owners of the used vehicle would be.

### C.    2016 Threshold Issue Four: Post-Closing Accident Plaintiffs May Not Pursue Claims for Punitive Damages

Because a successor corporation may only be liable to the same extent as its predecessor,

New GM cannot be held liable for a claim that its predecessor would never have had to pay

under the Bankruptcy Code. *See, e.g.*, *Robbins v. Physicians for Women's Health, LLC*, 90 A.3d

925, 930 (Conn. 2014) ("[T]he liability of a successor corporation is derivative in nature and the

successor may be held liable for the conduct of its predecessor only to the same extent as the

predecessor."); *City of Syracuse v. Loomis Armored US, LLC*, 900 F.Supp.2d 274, 290

(N.D.N.Y. 2012) ("'[S]uccessor liability' is not a separate cause of action but merely a theory for

imposing liability on a defendant based on the predecessor's conduct."); *In re Fairchild Aircraft

Corp.*, 184 B.R. 910, 920 (Bankr. W.D. Tex. 1995) (stating that successor liability "transfers the

liability of the predecessor to the purchaser") *vacated on other grounds*, 220 B.R. 909 (Bankr.

W.D. Tex. 1998). Old GM was deeply insolvent, and it would have never been liable for

punitive damages until all higher priority claims were paid in full. *See* 11 U.S.C. § 726(a)(4).

Likewise, New GM cannot be held liable for damages that the Bankruptcy Code dictates would

never have been paid by Old GM.

The Court underscores, as explained in the Legal Standard section, that its decision is

based on the priority scheme under the Bankruptcy Code. While an insolvent debtor may pay

general unsecured claims on a *pro rata* basis, the Bankruptcy Code dictates that an insolvent

debtor would never pay punitive damages until higher priority claims are paid in full. It is thus

inconsistent with the Bankruptcy Code to hold a purchaser in a section 363 sale liable for damages that would be categorically barred as a matter of priority had the sale never occurred.[6]

Exposing a section 363 buyer to punitive damages based on the conduct of the insolvent seller—when the Bankruptcy Code prevents recovery of punitive damages from the insolvent seller—would seriously chill a robust section 363 sale process designed to maximize creditor recoveries.  The buyer would be unable to quantify the financial risk to which it was exposing itself in purchasing the assets; the stronger the financial condition of the buyer, the greater the risk of a large punitive damages award based on the insolvent seller's conduct.

This result is also consistent with the general purpose of punitive damages: to "punish the actual wrongdoer and to deter him from acting illegally again."  *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 688 F. Supp. 2d 193, 204–05 (W.D.N.Y. 2010) (internal quotation marks and citation omitted) (holding that punitive damages are not available against successor corporation in a Title VII discrimination case because "awarding punitive damages against [the successor] would not serve the purpose of punitive damages"); *see also Motors Liquidation 2012*, 2012 WL 10864205, at *11 ("[T]he purpose of punitive damages is to punish wrongdoers and deter future wrongful conduct.").  And in the bankruptcy context, Judge Gerber has explained that awarding punitive damages in liquidating cases like this one is especially improper because "there is no future conduct to deter" and "the people guilty of the misconduct would not be punished for it." *Motors Liquidation 2012*, 2012 WL 10864205, at *11.

The Court therefore finds that Post-Closing Accident Plaintiffs may not assert claims against New GM for punitive damages based on conduct of Old GM.

---

[6]    It is unnecessary to address whether, absent contractual assumption of liability, the purchaser in a section 363 sale would be obligated to pay any portion of a punitive damages claim under bankruptcy or applicable non-bankruptcy law in the event that all higher priority claims have been paid in full.

## IV.    <u>CONCLUSION</u>

For the above reasons, the Court finds that (i) only plaintiffs with the Ignition Switch

Defect in a Subject Vehicle are Ignition Switch Plaintiffs; (ii) used car purchasers are bound by

the Sale Order to the same extent that the previous owners of the used vehicle would be; and (iii)

Post-Closing Accident Plaintiffs may not assert claims against New GM for punitive damages

based on the conduct of Old GM.[7]

**IT IS SO ORDERED.**

Dated: July 12, 2017
         New York, NY

*Martin Glenn*

MARTIN GLENN
United States Bankruptcy Judge

---

[7]      The Court previously granted New GM's motion to extend its time to appeal, or to seek leave to appeal, the *Motors Liquidation Pitterman* decision, until fourteen (14) days after the date the Court resolved additional 2016 Threshold Issues.  Consequently, all parties have until fourteen (14) days from the date of this Opinion to appeal, or to seek leave to appeal, any aspect of the Court's rulings on the 2016 Threshold Issues.  The Court makes no determination whether any aspect of its rulings on the 2016 Threshold Issues is immediately appealable as of right.