# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

FOR PUBLICATION

In re:

Motors Liquidation Company, f/k/a General
Motors Corporation, *et al.*,

Debtors.

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

**MEMORANDUM OPINION AND ORDER GRANTING IN PART NEW GM'S MOTION
TO ENFORCE SALE ORDER AGAINST THE PITTERMAN PLAINTIFFS
AND RESOLVING 2016 THRESHOLD ISSUE TWO: WHETHER NON-IGNITION
SWITCH PLAINTIFFS ARE BARRED FROM ASSERTING INDEPENDENT CLAIMS
AGAINST NEW GM**

*A P P E A R A N C E S :*

KING & SPALDING LLP
*Attorneys for General Motors LLC*
1185 Avenue of the Americas
New York, NY 10036
By:     Arthur Steinberg, Esq.
        Scott Davidson, Esq.

KIRKLAND & ELLIS LLP
*Attorneys for General Motors LLC*
300 North LaSalle
Chicago, IL 60654
By:     Richard C. Godfrey, Esq.
By:     Andrew B. Bloomer, Esq.

ADELMAN HIRSCH & CONNORS LLP
*Attorneys for Bernard Pitterman, Administrator*
1000 Lafayette Blvd.
Bridgeport, CT 06604
By:     Joram Hirsch, Esq.
        Robert B. Adelman, Esq.

ANTHONY LAW FIRM, P.A.
*Attorneys for Moore Plaintiffs*
150 Magnolia Street
Spartanburg, SC
By:     Kenneth C. Anthony, Jr., Esq.
        K. Jay Anthony, Esq.

CARCIONE, CATTERMOLE, DOLINSKI, STUCKY, MARKOWITZ & CARCIONE
*Attorneys for Brianna Minard*
1300 South El Camino Real, Suite 300
P.O. Box 5429
San Mateo, CA 94402
By:    Joshua S. Markowitz, Esq.

HAGENS BERMAN SOBOL SHAPIRO LLP
*Attorneys and Co-Lead Counsel for Ignition Switch Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
By:    Steve W. Berman, Esq.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
*Attorneys and Co-Lead Counsel for Ignition Switch Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*
275 Battery St., 29th Floor
San Francisco, CA 94111
By:    Elizabeth J. Cabraser, Esq.

BROWN RUDNICK LLP
*Attorneys and Designated Counsel for Ignition Switch Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the Bankruptcy Court*
Seven Times Square
New York, NY 10036
By:    Edward S. Weisfelner, Esq.
       Howard Steele, Esq.

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, A PROFESSIONAL CORPORATION
*Attorneys and Designated Counsel for Ignition Switch Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the Bankruptcy Court*
2323 Bryan Street, Suite 2200
Dallas, TX 75201
By:    Sander L. Esserman, Esq.

LEDFORD LAW FIRM
*Attorney for Christopher Pope and Gwendolyn Pope*
425 East 22nd St., Suite 101
Owasso, OK 74055
By:    Kris Ted Ledford, Esq.

GOODWIN PROCTER LLP
*Counsel to Those Certain Post-Closing Accident Plaintiffs Represented By Butler Wooten &*
*Peak LLP, Denney & Barrett, P.C., Hilliard Muñoz Gonzales L.L.P., and Turner & Associates,*
*P.A.*
620 Eighth Avenue
New York, NY 10018
By:    William Weintraub, Esq.
        Gregory Fox, Esq.

GARY PELLER, ESQ.
*Counsel for Bledsoe Plaintiffs, Elliott Plaintiffs and Sesay Plaintiffs*
600 New Jersey Avenue, NW
Washington, DC 20001
By:    Gary Peller, Esq.

THE MASTROMARCO FIRM
*Attorneys for Plaintiff Benjamin Pillars*
1024 N. Michigan Avenue
Saginaw, MI 48602
By:    Victor J. Mastromarco, Jr., Esq.

KNAPP, PETERSEN & CLARKE
*Attorneys for Plaintiffs William D. Pilgrim, et al.*
550 North Brand Boulevard, Suite 1500
Glendale, CA 91203
By:    André E. Jardini, Esq.

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
*Attorneys for Plaintiffs William D. Pilgrim, et al.*
200 West 41st Street, 17th Floor
New York, NY 10036
By:    Sean Southard, Esq.
        Brendan M. Scott, Esq.

HILLIARD MUÑOZ GONZALES LLP
*Lead Counsel in the MDL Court with Primary Responsibility for Personal Injury and Wrongful*
*Death Cases*
719 South Shoreline, Suite 500
Corpus Christi, TX 78401
By:    Robert Hilliard, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion filed on June 24, 2016 (the "Motion," ECF Doc. #

13655) of General Motors LLC ("New GM") to enforce the Court's July 5, 2009, sale order (the

"Sale Order," ECF Doc. # 2968). The Sale Order authorized the sale of the bulk of assets from

Motors Liquidation Company (f/k/a General Motors Corp.) ("Old GM") to New GM, "free and

clear of liens, claims, encumbrances, and interests," with certain exceptions that are the subject

of this Motion and others. (Sale Order at 2.) The Motion seeks to enforce the Sale Order to bar

certain claims in nonbankruptcy courts against New GM by plaintiffs alleging personal injuries.

On December 13, 2016, this Court entered an order to show cause (the "Order to Show Cause,"

ECF Doc. # 13802) setting forth the five "2016 Threshold Issues" to be resolved regarding

claims asserted against New GM involving vehicles manufactured by Old GM, and the

procedures for doing so.

Bernard Pitterman is a plaintiff (together with the other plaintiffs in that action, the

"Pitterman Plaintiffs") in an action pending against New GM in the United States District Court

for the District of Connecticut: *Pitterman v. General Motors LLC*, Case No. 3:14-cv-00967

(JCH) (D. Conn.) (the "Pitterman Action"). The Pitterman Action is just one of many

nonbankruptcy court actions that are the subject of the Motion, and it is currently scheduled for

trial on July 5, 2017. (*See* ECF Doc. # 13938 at 2.) Mindful of the quickly approaching trial

date, this Court requested that the parties address the Pitterman Action separately at oral

argument on May 17, 2017.

This Opinion and Order addresses only those aspects of the 2016 Threshold Issues that

apply to the Pitterman Action. Likewise, the Court provides background information only to the

extent applicable to the Pitterman Action. A fuller background of Old GM's bankruptcy, the

various nonbankruptcy court claims against Old GM and New GM, and the circumstances
surrounding the Order to Show Cause can be found in this Court's prior Opinions.  The
remainder of the 2016 Threshold Issues will be addressed in a forthcoming Opinion.

For the following reasons, New GM's Motion is **GRANTED IN PART AND DENIED
IN PART.**  Assuming that Connecticut state law recognizes such claims and that such claims are
properly pleaded (issues to be decided by the Connecticut District Court), the Pitterman Plaintiffs
may proceed with only the following claims against New GM in the Pitterman Action: (i) failure
to warn, based on conduct of Old GM *and* New GM; and (ii) failure to recall and retrofit, based
solely on New GM's alleged post-closing wrongful conduct.[1]  The Pitterman Plaintiffs may not
proceed with their claims of failure to recall and retrofit based on conduct of Old GM.[2]

In resolving the motion to enforce with respect to the Pitterman Plaintiffs, the Court also
resolves 2016 Threshold Issue Two and concludes that the Sale Order does not bar Non-Ignition
Switch Plaintiffs[3] from asserting independent claims against New GM based solely on New
GM's post-closing wrongful conduct.

---

[1]  As the Court will discuss below, certain of the Pitterman Plaintiffs' claims do not sufficiently distinguish
between conduct of Old GM or New GM.  Those claims cannot go forward against New GM as drafted.  It is up to
the Connecticut District Court to determine whether to permit the Pitterman Plaintiffs leave to amend their
complaint.

[2]  The Pitterman Plaintiffs contend that Connecticut state law recognizes a failure to recall and retrofit claim
as a products liability claim, and as such, the Pitterman Plaintiffs contend that New GM assumed liability for that
claim based on Old GM conduct.  As explained below, Judge Gerber previously rejected the argument that a failure
to recall and retrofit claim was an "Assumed Liability" under the Sale Agreement.  The Court will not revisit that
issue of contract interpretation.

[3]  For the avoidance of any doubt, the Court uses the term "Non-Ignition Switch Plaintiffs" in this Opinion to
mean any plaintiff without the Ignition Switch Defect (as defined below).  The Court does not today resolve
Threshold Issue One.

# I.    BACKGROUND

## A.    The Sale Order

On June 5, 2009, Judge Gerber overruled numerous objections to the sale of Old GM's assets under section 363 and entered the Sale Order. The Sale Order attached as Exhibit A the "Amended and Restated Master Sale and Purchase Agreement," dated June 26, 2009 (the "Sale Agreement"). The Sale Agreement provides that New GM would purchase the bulk of Old GM's assets "free and clear of all Encumbrances (other than Permitted Encumbrances), Claims and other interests." (Sale Agreement § 2.1.) The Sale Agreement lists in section 2.3 certain liabilities that New GM would assume (the "Assumed Liabilities") and certain liabilities that Old GM would retain (the "Retained Liabilities").

The list of Assumed Liabilities, among other liabilities not relevant to the Pitterman Claims, includes claims for "Product Liabilities," regarding which New GM would assume *only* those claims arising out of accidents or incidents occurring on or after the closing date of the 363 Sale (which turned out to be July 10, 2009). Section 6.15(a) of the Sale Agreement provides that New GM shall comply with "certification, reporting, and recall requirements" under the National Traffic and Motor Vehicle Safety Act and certain other federal and state laws.

## B.    The Pitterman Action

Bernard Pitterman is the administrator of the estate of the minor child decedent, M.R.O. ("Pitterman Complaint," ECF Doc. # 13655-12 ¶ 1.) The Pitterman Complaint states that on July 13, 2011, M.R.O. was killed in a rollaway accident involving a 2004 Chevrolet Suburban. (*Id.* ¶¶ 6–12, 20.) According to the Pitterman Complaint, the 2004 Chevrolet Suburban involved in the crash was defective in that "the automatic transmission could be moved from Park to Neutral when the ignition switch was in the ACC position, without depressing the brake, thereby allowing the vehicle to roll from a parked position" and the "brake transmission shift interlock

6

device installed on the Suburban did not function when the ignition was in the ACC position."

(*Id.* ¶ 20.)

The Pitterman Complaint alleges various causes of action under the Connecticut Product Liability Law, section 52-572 of the Connecticut General Statutes. Pitterman's claims were broken down into the following four categories by his counsel at oral argument:

- Failure to recall or retrofit, based on conduct of Old GM;

- Failure to recall or retrofit, based on conduct of New GM;

- Failure to warn, based on conduct of Old GM; and

- Failure to warn, based on conduct of New GM.

After receiving a letter from counsel for New GM after this Court's April 2015 Decision and June 2015 Judgment regarding punitive damages, the Pitterman Plaintiffs amended their complaint to remove all requests for punitive damages.

Notably, the Pitterman Complaint frequently refers to both Old GM's and New GM's conduct in the same numbered paragraph, making it difficult to determine exactly which claims are based solely on New GM's alleged wrongful conduct and which are based on Old GM's conduct that the Pitterman Plaintiffs argue are Assumed Liabilities. For example, the complaint alleges that "[t]he crash, and the resulting damages as alleged herein, were caused by *GMC [Old GM] and the Defendant's [New GM's] reckless disregard* for the safety of product users, consumers or others, in that *GMC and the defendant knew or reasonably should have known* that the Suburban was unreasonably dangerous, had caused and would cause numerous catastrophic injuries and deaths and failed to recall and/or retrofit the subject vehicle." (Pitterman Complaint ¶ 28 (emphasis added).)

C.     **The Bankruptcy Court's Role**

The role of the Bankruptcy Court, as Judge Gerber noted, is not to determine whether the
Pitterman Complaint (or any other complaint) is properly pleaded as a matter of state law or
whether the Pitterman Action (or any other action) should succeed on its merits.  *See In re
Motors Liquidation Co.*, 541 B.R. 104, 129 (Bankr. S.D.N.Y. 2015) [hereinafter the "November
Decision" or *Motors Liquidation II*] ("Consistent with its role as a gatekeeper, the Court does not
decide this issue of nonbankruptcy law.").  "The Court's role, then, is a 'gatekeeper' role.  It
should be the court to decide what claims and allegations should get through the 'gate,' under the
Sale Order" and this Court's prior decisions.  *Id.* at 112 (noting that the Court will "minimize" its
involvement in "nonbankruptcy law").  If a complaint violates an enforceable provision of the
Sale Order, it may not proceed as currently drafted.  If it does not violate the Sale Order, the
complaint "passes through the gate" for the appropriate nonbankruptcy court to decide whether it
is actionable.

## II.     LEGAL STANDARD

A.     **The April Decision and June Judgment**

In April 2015, Judge Gerber issued an opinion interpreting the Sale Order's "free and
clear" provision.  *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015)
[hereinafter *Motors Liquidation I* or the "April Decision"].  The April Decision makes clear that
Judge Gerber was deciding claims involving "serious defects in ignition switches that had been
installed in [certain GM vehicles]" and which led to two recalls during the summer of 2014—the
"Ignition Switch Defect."  *Id.* at 521.  Judge Gerber noted that so-called "Non-Ignition Switch
Plaintiffs" were asserting actions for economic loss as to GM-branded vehicles without the
Ignition Switch Defect, but that New GM's motion to enforce the Sale Order with regard to those
claims "has been deferred pending the determination of the issues here."  *Id.* at 522–23.  The

April Decision was silent regarding plaintiffs like Pitterman, who asserts claims against New

GM regarding a post-closing accident involving an Old GM-manufactured car, *based solely on*

*New GM's post-closing alleged wrongful conduct.*

Judge Gerber determined that plaintiffs alleging causes of action against New GM for

successor liability for the Ignition Switch Defect were known claimants at the time of the 363

Sale and thus due process required that they receive notice of the proposed sale, but those

plaintiffs had not shown that they were prejudiced by the lack of notice.  *See Motors Liquidation*

*I*, 529 B.R. at 566 (The economic loss plaintiffs with the Ignition Switch Defect "argue that if

they had the opportunity to be heard, the result would have been different.  Insofar as successor

liability is concerned, the Court easily rejects that contention.")  In contrast, Judge Gerber also

ruled that the Sale Order was overbroad in barring claims based on New GM conduct; therefore,

the Ignition Switch Plaintiffs *were* prejudiced because, had they argued in 2009 that they should

be permitted to bring claims based on New GM's wrongful conduct, the Court would have

entered a narrower order.[4]  *See id.* at 568–69.

On June 1, 2015, the Court entered a judgment (the "June Judgment," ECF Doc. #13177)

on the April Decision.  The Court also certified the June Judgment and April Decision for direct

appeal to the Second Circuit.  (ECF Doc. # 13178.)  The June Judgment introduced the newly

defined category of Independent Claims that was not defined in the April Decision—namely,

---

[4]        On direct appeal to the Second Circuit, that court agreed with Judge Gerber's decision that the Ignition
Switch Plaintiffs established a due process violation, but reversed on the issue of prejudice, concluding that "even
assuming plaintiffs must demonstrate prejudice, they have done so here"; therefore, the court concluded, the free and
clear provision could not be enforced against the Ignition Switch Plaintiffs.  *In Matter of Motors Liquidation Co.*,
829 F.3d 135, 163–66 (2d Cir. 2016), *cert. denied sub nom. Gen. Motors LLC v. Elliott*, 2017 WL 1427591 (U.S.
Apr. 24, 2017) ("Because enforcing the Sale Order would violate procedural due process in these circumstances, the
bankruptcy court erred in granting New GM's motion to enforce and these [Ignition Switch] [P]laintiffs thus cannot
be 'bound by the terms of the [Sale] Order[ ].'") [hereinafter the "Second Circuit Opinion" or *Motors Liquidation
III*].  The Second Circuit affirmed the portion of Judge Gerber's decision relating to Independent Claims by Ignition
Switch Plaintiffs.  *Id.* at 170 (stating that "we (1) **AFFIRM** the decision not to enforce the Sale Order as to the
independent claims").

"claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct." (June Judgment ¶ 4.) The definition of Independent Claims in the June Judgment is restricted to *only* those claims brought by Ignition Switch Plaintiffs. That narrow definition is consistent with the fact that Judge Gerber, in the April Decision, decided issues only with regard to plaintiffs whose vehicles had the Ignition Switch Defect. As discussed further below, it is significant for present purposes that the definition of Independent Claims does *not* include independent claims by Non-Ignition Switch Plaintiffs.

### B.     The Status Conference and Scheduling Order

On August 31, 2015, the Court held a status conference (the "August Conference") to determine the issues remaining to be addressed after the entry of the June Judgment. (*See* 8/31/2015 Hr'g Tr., ECF Doc. # 13438.) At the August Conference, counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs made the following statement:

> So again, if a non-ignition switch defect claimant, whether would start an independent claim against New GM, would that non-ignition switch plaintiff be successful, vis-a-vis Your Honor as a gatekeeper. New GM's contention is that, aha, wait a second, the non-ignition switch plaintiff cannot assert an independent claim against New GM unless and until that non-ignition switch plaintiff demonstrates that back in '09, its due process rights were violated. Because Your Honor only determined that independent claims were permissible having first determined that the ignition switch plaintiffs' due process rights were violated with prejudice because they didn't have an opportunity to argue over breadth of the injunction.

(8/31/2015 Hr'g Tr., ECF Doc. # 13438 at 37:12–23.) The Court asked counsel, "Are you now going to be kind of a designated counsel for non-ignition switch plaintiffs"? (*Id.* at 38:8–10.) Counsel responded, "[Y]es, we perceive ourselves as having taken on the mantel of preserving and protecting the rights of non-ignition switch plaintiffs in this court." (*Id.* at 38:13–19.)

Despite counsel's and the Court's statements at the August conference, it remains unclear whether counsel actually represented all Non-Ignition Switch Plaintiffs at the time.  In fact, when the Court inquired as to this point at oral argument on the Motion, counsel stated that his firm was "retained by the lead counsel in the [multi-district litigation]" before stating that he represents a putative class of Non-Ignition Switch Plaintiffs.  (5/17/2017 Hr'g Tr., ECF Doc. # 13943 at 67:5–68:12.)  Under the circumstances, this Court is hesitant to find that counsel's statements bind all Non-Ignition Switch Plaintiffs.  As discussed more fully below, the Court finds that Non-Ignition Switch Plaintiffs do not need to demonstrate a due process violation to pursue truly independent claims—that is, claims against New GM *based solely on New GM's wrongful conduct*.

On September 3, 2015, the Court entered a scheduling order setting a briefing schedule to address, among other issues, whether certain causes of action or allegations in complaints filed against New GM relating to Old GM vehicles were barred by the Sale Order and Injunction. (The "September Scheduling Order," ECF Doc. # 13416.)  The September Scheduling Order set forth a procedure through which New GM would annotate the complaints for (i) six "Bellwether Cases" identified in MDL 2543 pending in the United States District Court for the Southern District of New York; (ii) the Second Amended Consolidated Complaint filed in MDL 2543; and (iii) certain state court complaints.  (*Id.* ¶¶ 3–5.)  The September Scheduling Order also set a briefing schedule concerning "whether causes of action in complaints filed against New GM relating to Old GM vehicles/parts based on the knowledge Old GM employees gained while working for Old GM and/or as reflected in Old GM's books and records transferred to New GM can be imputed to New GM" (*id.* ¶ 2), but did not mention the issue of claims based entirely on New GM's post-closing wrongful conduct.

11

C.    **The November Decision and December Judgment**

On November 9, 2015, the Court issued the November Decision deciding the issues

identified in the September Scheduling Order.  *See Motors Liquidation II*, 541 B.R. 104.  The

November Decision framed the issues to be decided as follows:

> (1) the extent to which knowledge of New GM personnel who came
> over from Old GM may be imputed to New GM; whether the
> contents of documents generated by Old GM personnel and
> delivered to New GM under the 363 Sale may be deemed, for notice
> purposes, to be documents of which New GM may be found to have
> notice as a matter of nonbankruptcy (agency or other) law; and
> related issues with respect to imputation, including, most
> significantly, where arguments for imputation should be decided
> (the "Imputation Issue");
>
> (2) the extent to which claims for punitive damages may be based
> on Old GM knowledge or conduct in actions in which the assertion
> against New GM of compensatory damages claims is permissible
> (the "Punitive Damages Issue"); and
>
> (3) the extent to which (by reason of the first two issues or other
> matters) allegations in particular complaints run afoul of the April
> Decision and Judgment, and thus must be stricken before affected
> actions may proceed.

*Id.* at 107.  The bulk of the November Decision deals with the Imputation Issue and the Punitive

Damages Issue, which are not relevant here.  But a review of the November Decision is

instructive to the extent that the Court contemplated that claims could be asserted based on New

GM's wrongful conduct, as contrasted with claims against Old GM dressed up as claims against

New GM.

In the context of Product Liabilities Claims and Independent Claims, the Court noted:

> New GM assumed liability for Product Liabilities claims, which (by
> definition) arose from accidents or incidents taking place *after* the
> Sale, and thereby became liable for compensatory damages for any
> Product Liabilities resulting from Old GM's action.  And, by the
> time any such accidents or incidents occurred, New GM already was
> in existence, and *allegations that the post-Sale accident could have
> been avoided (or any resulting injury would have been reduced) if*

> New GM had taken action based on any knowledge its own
> employees had would also pass through the gate. Either way, it
> would not matter if that knowledge had first come into existence
> prior to the Sale—because it was still knowledge in fact of
> employees of New GM, *and* because New GM assumed
> responsibility for Product Liabilities Claims, which would make it
> liable for compensatory damages based on anything that even Old
> GM had done.

*Id.* at 115 n.30 (emphasis added).  Regarding claims that New GM had a duty to recall or retrofit

Old GM vehicles, the Court held:

> New GM is correct that obligations, if any, that it had to recall or
> retrofit were not Assumed Liabilities, and that New GM is not
> responsible for any failures of Old GM to do so.  But whether New
> GM had a duty to recall or retrofit previously sold Old GM vehicles
> that New GM did not manufacture is a question of nonbankruptcy
> law.

*Id.* at 141.  Both of these statements suggest that claims based on New GM's "own employees'

knowledge," or on New GM's breach of an independent duty imposed by state law, were beyond

the scope of the Sale Order and would "pass through the gate."  Further, Judge Gerber contrasted

claims based solely on New GM's wrongful conduct with plaintiffs' claims that attempt to

impute Old GM conduct to New GM—again suggesting that claims based solely on New GM's

alleged wrongful conduct may pass through the gate.

Parties on both sides of this litigation find support for their respective arguments in

footnote 70 of the November Decision.  Footnote 70 is included in a discussion of *economic loss*

claims of Ignition Switch Plaintiffs, which New GM argued "are in fact successor liability

claims" and were "carried over, assertedly with little or no modification," from a complaint

against Old GM into the MDL complaint against New GM.  *Id.* at 129–30.  The text of footnote

70 is as follows:

> Ignition Switch Plaintiffs asserting Economic Loss Claims may
> assert them, to the extent they are Independent Claims, under the
> April 15 Decision and Judgment. Non-Ignition Switch Plaintiffs

cannot. The latter could have tried to show the Court that they had "known claims" and were denied due process back in 2009, but they have not done so. The Court ruled on this expressly in the Form of Judgment Decision [relating to the June Judgment]. It then held:

> The Non-Ignition Switch Plaintiffs' claims remain stayed, and properly so; those Plaintiffs have not shown yet, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of a due process violation with respect to them. And unless and until they do so, the provisions of the Sale Order, including its injunctive provisions, remain in effect.

> [*In re Motors Liquidation Co.*, 531 B.R. 354, 360 (Bankr. S.D.N.Y. 2015), *as corrected* Aug. 10, 2015.] That ruling stands. In the April Decision and resulting Judgment, the Court modified a Sale Order under which the buyer had a justifiable right to rely because a higher priority—a denial of due process, which was of Constitutional dimension—necessitated that. But without a showing of a denial of due process—and the Non-Ignition Switch Plaintiffs have not shown that they were victims of a denial of due process—the critically important interests of finality (in each of the 2009 Sale Order and the 2015 Form of Judgment Decision and Judgment) and predictability must be respected, especially now, more than 6 years after entry of the Sale Order.

*Id.* at 130 n.70 (citation omitted). Plaintiffs argue that footnote 70 implies they *may yet* establish a due process violation, while New GM argues footnote 70 makes clear it is too late.[5]

Footnote 70, without context, does suggest that plaintiffs without the Ignition Switch Defect must prove that they were denied due process in order to bring a claim based on New GM conduct. But context matters. The Court permitted the purportedly independent economic loss claims through the gate "so long as they are genuinely Independent Claims." *Id.* at 130. Footnote 70 refers to economic loss claims, unlike the post-closing accident claims at issue here; and the Court had already framed the issue of Independent Claims as limited to claims brought by Ignition Switch Plaintiffs in the June Judgment. Read in the context of the November

---

[5]     The issue whether Non-Ignition Switch Plaintiffs may still seek to establish a due process violation is not addressed in this Opinion.

Decision's use of truly independent claims as a foil to impermissible claims based on conduct of

Old GM, and considering that the Court had already limited the scope of its discussion to

Ignition Switch Plaintiffs with economic loss claims, for present purposes the Court considers

footnote 70 as dicta only.

On December 4, 2015, the Court entered a judgment regarding the November Decision.

(*See* "December Judgment," ECF Doc. # 13563.)  New GM argues that the following language

makes clear that Non-Ignition Switch Plaintiffs may not bring claims against New GM based on

New GM's post-closing wrongful conduct:

> [P]laintiffs whose claims arise in connection with vehicles without
> the Ignition Switch Defect . . . are not entitled to assert Independent
> Claims against New GM with respect to vehicles manufactured and
> first sold by Old GM (an "Old GM Vehicle").  To the extent such
> Plaintiffs have attempted to assert an Independent Claim against
> New GM in a pre-existing lawsuit with respect to an Old GM
> Vehicle, such claims are proscribed by the Sale Order, April
> Decision and the Judgment dated June 1, 2015 . . . .

(December Judgment ¶ 14.)  But again, context matters.  The Court defined "Independent

Claims" in the June Judgment to refer only to claims of Ignition Switch Plaintiffs.  The Court

reads paragraph 14 in light of the numerous statements in the November Decision, the rest of the

December Judgment, and the Second Circuit Opinion (defined and discussed below).

The December Judgment is consistent with the November Decision regarding claims

against New GM based on an alleged duty to recall or retrofit:

> A duty to recall or retrofit is not an Assumed Liability, and New GM
> is not responsible for any failures of Old GM to do so.  But whether
> an Independent Claim can be asserted that New GM had a duty to
> recall or retrofit an Old GM Vehicle with the Ignition Switch Defect
> is a question of nonbankruptcy law that can be determined by a court
> other than this Court.

(December Judgment ¶ 21.)  The first sentence is plain: New GM did not assume Old GM's

liabilities for failure to recall or retrofit.  Consistent with the November Decision and the Court's

interpretation of the definition of Independent Claims, the Court reads the second sentence of

paragraph 21 to limit the ruling to Ignition Switch Plaintiffs—not to definitively close the door

on truly independent claims by other plaintiffs.

### D.  The Bankruptcy Court's Power to Bar Claims for Future Injuries

Meanwhile, certain claimants and New GM had appealed the April Decision and June

Judgment.  The Second Circuit issued its opinion in that appeal on July 13, 2016.  *See Motors*

*Liquidation III*, 829 F.3d 135.  The Second Circuit's discussion of the power of the bankruptcy

court to bar "claims" that had not yet resulted in injury at the time of a section 363 sale is

instructive here.

As a preliminary matter, the Second Circuit found that the Court had jurisdiction to

interpret its own order.  "A bankruptcy court's decision to interpret and enforce a prior sale order

falls under . . . 'arising in' jurisdiction."  *Id.* at 153; *see also Tronox Inc. v. Kerr-McGee Corp.*

(*In re Tronox Inc.*), 855 F.3d 84, 112 (2d Cir. 2017) (quoting *Travelers Indem. Co. v. Bailey,* 557

U.S. 137, 151 (2009)) (A court "plainly [has] jurisdiction to interpret and enforce its own prior

order.").

The Second Circuit observed that "the bankruptcy court's power to bar 'claims' in a

quick [section] 363 sale is plainly no broader than its power in a traditional Chapter 11

reorganization."  *Motors Liquidation III*, 829 F.3d at 155.  To determine whether causes of

action based on post-closing wrongful conduct of New GM could be barred by the Sale Order,

the Second Circuit looked to the definition of "claim" under section 101(5) of the Bankruptcy

Code:

> Section 101(5) defines "claim" as any "right to payment, whether or
> not such right is reduced to judgment, liquidated, unliquidated,
> fixed, contingent, matured, unmatured, disputed, undisputed, legal,
> equitable, secured, or unsecured."  11 U.S.C. § 101(5).  A claim is
> (1) a right to payment (2) that arose before the filing of the

> petition. *See Pension Ben. Guar. Corp. v. Oneida Ltd.*, 562 F.3d
> 154, 157 (2d Cir. 2009). If the right to payment is contingent on
> future events, the claim must instead "result from pre-petition
> conduct fairly giving rise to that contingent claim." *In re
> Chateaugay Corp.* ("*Chateaugay I*"), 944 F.2d 997, 1005 (2d Cir.
> 1991) (internal quotation marks omitted).

*Motors Liquidation III*, 829 F.3d at 156. Accordingly, the Second Circuit held that a bankruptcy

court may approve the sale of assets free and clear of successor liability claims to the extent the

barred claims "arise from a (1) right to payment (2) that arose before the filing of the petition or

resulted from pre-petition conduct fairly giving rise to the claim." *Id.*

Consistent with the Second Circuit's interpretation, the Fifth Circuit has held that even

under section 101(5)'s "broad" definition of "claim," an action by plaintiffs who "were

completely unknown and unidentified at the time [the debtor] filed its petition and whose rights

depended entirely on the fortuity of future occurrences" were not "claims" that could be

discharged upon the confirmation of a chapter 11 plan. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d

1268, 1277 (5th Cir. 1994). Both the Second and Fifth Circuits looked to the widely cited

hypothetical analysis of *United States v. The LTV Corp.* (*In re Chateaugay Corp.*), 944 F.2d 997,

1003 (2d Cir. 1991). The *Chateaugay* court considered the following hypothetical bridge-

building company.

> Consider, for example, a company that builds bridges around the
> world. It can estimate that of 10,000 bridges it builds, one will fail,
> causing 10 deaths. Having built 10,000 bridges, it becomes
> insolvent and files a petition in bankruptcy. Is there a "claim" on
> behalf of the 10 people who will be killed when they drive across
> the one bridge that will fail someday in the future?

*Id.* The Second Circuit in *Chateaugay* observed that "[t]o expect 'claims' to be filed by those

who have not yet had any contact whatever with the tort-feasor has been characterized as

'absurd.'" *Id.* (citation omitted).

Judge Bernstein of this court grappled with a similar question in *Morgan Olson, LLC v. Federico* (*In re Grumman Olson Indus., Inc.*), 445 B.R. 243, 251 (Bankr. S.D.N.Y. 2011) [hereinafter *Grumman Olson I*], *aff'd*, 467 B.R. 694 (S.D.N.Y. 2012) [hereinafter *Grumman Olson II*]. In *Grumman Olson I*, one of the plaintiffs alleged that the truck she was driving as part of her job duties was defective and caused an accident that resulted in her serious injury. *Id.* at 247. The truck had been manufactured by the debtor; the debtor's assets had been sold in a section 363 sale with a free and clear provision; and the purchaser, in turn, continued the debtor's product line. *Id.* The plaintiffs sued the purchaser, arguing that the sale order could not bar their claim because the plaintiff's injury had not yet occurred at the time of the sale and the plaintiffs had no contact with the debtor before the sale. *Id.* Judge Bernstein agreed, and the District Court for the Southern District of New York affirmed. *See Grumman Olson II*, 467 B.R. 694.

Judge Bernstein observed that "[d]espite its breadth, the term 'claim' has its limits, particularly in the area of future tort claims," *Grumman Olson I*, 445 B.R. at 251, and ultimately determined that the plaintiffs did not have a "claim" at the time of the section 363 sale. *Id.* at 253. The plaintiffs had no contact with the debtor prior to the bankruptcy, did not receive notice of the bankruptcy, and could not have been identified as potential creditors at the time of the sale. *Id.* at 253–54. Accordingly, the sale order did not bar the plaintiffs from suing the purchaser. *Id.* at 254. But the issue whether state law recognized a successor liability claim in the circumstances was left to the state court to decide. *See id.* at 256 ("The Court expresses no view on whether Morgan is liable to the Fredericos under state law, and leaves the question to the state courts."). Judge Bernstein noted that with one exception,[6] "every case that we have

---

[6]    The one exception was *In re Chrysler LLC*, 405 B.R. 84, 89 (Bankr. S.D.N.Y.), *aff'd*, 576 F.3d 108 (2d Cir. 2009), *cert. granted, judgment vacated sub nom. Indiana State Police Pension Trust v. Chrysler LLC*, 558 U.S. 1087 (2009), and *vacated sub nom. In re Chrysler, LLC*, 592 F.3d 370 (2d Cir. 2010). Judge Bernstein recognized that the Second Circuit had questioned the bankruptcy court's power to bar claims for future injury: "[W]e decline to

found addressing this issue has concluded for reasons of practicality or due process, or both, that a person injured after the sale (or confirmation) by a defective product manufactured and sold prior to the bankruptcy does not hold a 'claim' in the bankruptcy case and is not affected by" a sale or discharge.  *Id.* at 254–55 (collecting cases).

The District Court agreed, emphasizing the due process concerns regarding future claims in addition to the limits of section 101(5): "[b]ecause parties holding future claims cannot possibly be identified and, thus, cannot be provided notice of the bankruptcy, courts consistently hold that, for due process reasons, their claims cannot be discharged by the bankruptcy courts' orders." *Grumman Olson II*, 467 B.R. at 707.  The District Court accordingly held that to enforce the sale order to enjoin the plaintiffs' state law action "would deny them due process and violate the Bankruptcy Code's requirements of notice and opportunity to be heard for those affected by a bankruptcy court's rulings." *Id.* at 711.

Most recently, the Second Circuit addressed the issue in *Tronox*, 855 F.3d 84.  The Second Circuit contrasted the injunction in *Tronox*, which barred duplicative or derivative claims that could have been brought by a litigation trustee, with an injunction that "could appear to go beyond the jurisdiction of the bankruptcy court" by, for example, enjoining claims against a third party.  *Id.* at 111 ("The Injunction here does the same: it goes to the limit of the bankruptcy court's jurisdiction to bar derivative or duplicative claims, but no further.") (citing *In re Johns-Manville Corp.*, 517 F.3d 52, 65 (2d Cir. 2008), *rev'd and remanded sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009)).

---

delineate the scope of the bankruptcy court's authority to extinguish future claims, until such time as we are presented with an actual claim for an injury that is caused by Old Chrysler, that occurs after the Sale, and that is cognizable under state successor liability law." *In re Chrysler*, 576 F.3d at 127.

Accordingly, it is clear that for both due process reasons and to comport with section

101(5)'s definition of "claim," a bankruptcy court may only bar claims that, in the words of the

Second Circuit, "arise from a (1) right to payment (2) that arose before the filing of the petition

or resulted from pre-petition conduct fairly giving rise to the claim." *Motors Liquidation III*, 829

F.3d at 156.

## III.    DISCUSSION

### A.    Punitive Damages

The Pitterman Plaintiffs have amended their complaint to remove any claim for punitive

damages.  Accordingly, whether punitive damages will be available to other plaintiffs against

New GM, based on conduct of Old GM, will be decided in a forthcoming Opinion and the Court

will not address that question here.

### B.    Failure to Warn Claims Based on Conduct of Old GM

At oral argument and in its briefing, New GM conceded that the Pitterman Plaintiffs are

not barred from bringing failure to warn claims against New GM based on the conduct of Old

GM.  Failure to warn claims are properly considered Product Liability claims under the terms of

the Sale Agreement, and are therefore Assumed Liabilities.

### C.    Failure to Recall or Retrofit Based on Conduct of Old GM

The Pitterman Plaintiffs' counsel argued that Connecticut state law recognizes a claim for

failure to recall or retrofit as a "products liability" claim.  Therefore, counsel argues, New GM

assumed liability for that claim.  But Judge Gerber previously held that failure to recall and

retrofit claims are *not* Assumed Liabilities.  "A duty to recall or retrofit is not an Assumed

Liability, and New GM is not responsible for any failure of Old GM to do so."  (December

Judgment ¶ 21.)  Judge Gerber reached this decision as a matter of contract interpretation of the

Sale Agreement.  The November Decision and December Judgment are clear, and the Court will

09-50026-mg   Doc 13996-1   Filed 07/25/17   Entered 07/25/17 16:05:44   Exhibit A
Pg 22 of 25

not revisit them.  Plaintiffs without the Ignition Switch Defect, including the Pitterman Plaintiffs,

may not bring claims against New GM based on Old GM's failure to recall or retrofit its

vehicles.

### D.     Claims Against New GM Based Solely on New GM's Wrongful Conduct: Failure to Warn and Failure to Recall and Retrofit

Deciding the Pitterman Plaintiffs' claims against New GM for both failure to warn and

failure to recall and retrofit, *based solely on New GM's alleged wrongful conduct*, necessarily

requires deciding 2016 Threshold Issue Two: whether Non-Ignition Switch Plaintiffs are barred

from asserting truly independent claims against New GM.

As discussed above in the Legal Standard, Judge Gerber defined Independent Claims as

follows in the June Judgment: "claims or causes of action asserted *by Ignition Switch Plaintiffs*

against New GM (whether or not involving Old GM vehicles or parts) that are based solely on

New GM's own, independent, post-Closing acts or conduct."  (June Judgment ¶ 4 (emphasis

added).)  New GM makes much of the italicized language, arguing that the Court necessarily

intended to foreclose anyone except the Ignition Switch Plaintiffs from bringing claims based on

New GM's independent conduct.  But this reading is inconsistent with the Court's subsequent

November Decision, the Second Circuit Opinion, and section 101(5).  The italicized language

emphasizes that Judge Gerber was only deciding issues concerning the Ignition Switch Plaintiffs'

claims; accordingly, his discussion of claims based on New GM's wrongful conduct was simply

limited to the Ignition Switch Plaintiffs.  Judge Gerber did not squarely address whether any

plaintiffs besides the Ignition Switch Plaintiffs could bring claims based solely on New GM's

post-sale wrongful conduct.  The issue is now fully developed; the Court holds that Non-Ignition

Switch Plaintiffs may bring claims against New GM based solely on New GM's post-closing

wrongful conduct.

21

The Second Circuit expressly recognized that truly independent claims necessarily are not "claims" that can be barred by a section 363 sale order.  Focusing on the limits of what constitutes a "claim" under section 101(5), the Second Circuit found that

> the independent claims do not meet the Code's limitation on claims. By definition, independent claims are claims based on New GM's own post-closing wrongful conduct . . . .  These sorts of claims are based on New GM's *post*-petition conduct, and are not claims that are based on a right to payment that arose before the filing of [the] petition or that are based on pre-petition conduct.  Thus, these claims are outside the scope of the Sale Order's 'free and clear' provision.

*Motors Liquidation III*, 829 F.3d at 157.  While the Second Circuit was deciding an appeal from the April Decision and June Judgment, which dealt primarily (if not exclusively) with the Ignition Switch Defect, the Court is persuaded that the Second Circuit's guidance on what constitutes a "claim" applies with equal force to claims regarding vehicles without the Ignition Switch Defect.  The Court is also cognizant that it must comply not only with issues expressly decided by the Second Circuit on appeal, but also those issues *impliedly* decided.  *See Farnum Place, LLC, v. Krys (In re Fairfield Sentry Limited)*, 2017 WL 2258282 at *1 (2d Cir. May 22, 2017) (quoting *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (emphasis in original) (internal quotation marks omitted)).  Accordingly, a claim that can be barred by the Sale Order and Sale Agreement must "arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim."  *Motors Liquidation III*, 829 F.3d at 156.  As the Second Circuit concluded in *Chateaugay*, "[t]o expect 'claims' to be filed by those who have not yet had any contact whatever with the tort-feasor" is "absurd."  *In re Chateaugay Corp.*, 944 F.2d at 1003.

Applying the Second Circuit's formulation to the Pitterman Plaintiffs and, by extension, other plaintiffs whose claims concern post-closing accidents involving cars without the Ignition Switch Defect, the Court finds that their actions are not "claims" within the meaning of section

101(5) and therefore are outside the scope of the Sale Order.  The Pittermans had no right to

payment until the accident occurred in 2014, well after the Sale Order was entered in 2009.  With

respect to truly independent claims based solely on New GM's wrongful conduct, by definition

the Pitterman Action did not arise before the filing of the petition and did not result from pre-

petition conduct.

The Court emphasizes that its analysis here applies only to claims based solely on *New

GM's alleged wrongful conduct*.  It is not acceptable, as the Pitterman Complaint does in several

paragraphs, to base allegations on generalized knowledge of both Old GM and New GM.  To

pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based

solely on New GM's post-closing wrongful conduct.  The Pitterman Plaintiffs' counsel

acknowledged during oral argument that the current complaint crosses the line, basing the

purported independent claims on conduct of both Old GM and New GM.  Such allegations are

not permissible.  Counsel offered to amend the complaint to remove any allegations alleging

independent claims based on Old GM's conduct.  Whether to permit the Pitterman Plaintiffs to

amend their complaint to comport with this ruling is up to the Connecticut District Court hearing

that action.

/ / / /

/ / / /

/ / / /

23

09-50026-reg    Doc 13989    Filed 06/07/17    Entered 06/07/17 13:41:30    Main Document
Pg 24 of 24

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Motion is **GRANTED IN PART AND DENIED IN PART.**  The Pitterman Plaintiffs may proceed with only the following claims in the Pitterman Action: (i) failure to warn, based on conduct of Old GM *and* New GM; and (ii) failure to recall and retrofit, based solely on New GM's conduct.  The Pitterman Plaintiffs may not proceed with their claims of failure to recall and retrofit based on conduct of Old GM.

Dated:    June 7, 2017
          New York, New York

                    *Martin Glenn*
                    MARTIN GLENN
                United States Bankruptcy Judge