Lisa M. Norman (pro hac vice)
T. Joshua Judd (pro hac vice)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
713-850-4200  Telephone
713-850-4211  Facsimile
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel for Additional Ignition Switch*
*Pre-Closing Plaintiffs Listed on Exhibit A*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>MOTORS LIQUIDATIONS COMPANY, et al.<br>f/k/a General Motors Corp., et al.<br><br>    Debtors. | Chapter 11<br>Case No.: 09-50026 (MG)<br><br>(Jointly Administered) |

**MOTION BY ADDITIONAL IGNITION SWITCH
PRE-CLOSING ACCIDENT PLAINTIFFS FOR AUTHORITY TO FILE
LATE PROOFS OF CLAIM FOR PERSONAL INJURIES AND WRONGFUL DEATHS**

The Additional Ignition Switch Pre-Closing Accident Plaintiffs[1] listed on the attached Exhibit A (the "Movants"), by and through the undersigned counsel, hereby file this motion ("Motion") and request that the Court allow the Movants to file late claims against the estate of Motors Liquidation Company, *et al*. (the "Debtors") and for those claims to be deemed timely. In support of this Motion, the Movants respectfully state as follows:

---

[1] The "Additional Ignition Switch Pre-Closing Accident Plaintiffs" identified on Exhibit "A" were not included in the Omnibus Motion filed by Certain Ignition Switch Pre-Closing [Docket No. 13807], and are not represented by counsel for the Ignition Switch Pre-Closing Accident Plaintiffs, but are seeking the same relief set forth in the motion at Docket No. 13807, which is still pending and for which oral arguments have not yet occurred.  These "Additional Ignition Switch Pre-Closing Accident Plaintiffs" are included in the subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles, but did not receive notice of the filing of Docket No. 13807 or the deadline to join in that motion. However, since the motion at Docket No. 13807 is still pending, the Movants herein are seeking to participate in the hearings on this matter and be considered for the same relief requested by the Ignition Switch Pre-Closing Accident Plaintiffs.

1

## Background

In its April 2015 Decision[2] the Bankruptcy Court held that Old GM's knowledge of the Ignition Switch Defect, its failure to initiate a recall of the Subject Vehicles or "send out *any* recall notices" even though such recall was required, and its failure to "provide *any* alternative form of notice to those with Ignition Switch Defects," effectively prevented the Ignition Switch Pre-Closing Accident Plaintiffs (including the Movants) from timely asserting claims against old GM arising from the Ignition Switch Defect. *April 2015 Decision*, 529 B.R. at 574 n.214. Simply put, the Movants were known creditors of Old GM at the time it filed for bankruptcy but Old GM did not apprise them of the existence of the Ignition Switch Defect before the November 30, 2009 bar date (the "Bar Date") and, consequently, the Movants were not able to file timely proofs of claim based upon the Ignition Switch Defect.

On July 13, 2016, the Second Circuit held that "Old GM knew or should have known with reasonable diligence about the [Ignition Switch Defect]" and, thus, upheld the Bankruptcy Court's determination that the Ignition Switch Pre-Closing Accident Plaintiffs were known creditors who did not receive constitutionally sufficient notice in connection with Old GM's chapter 11 case. *See Second Circuit Decision*, 829 F.3d at 161.

The Bankruptcy Court also held in its April 2015 Decision that the denial of constitutionally sufficient notice of the Bar Date prejudiced the Ignition Switch Pre-Closing Accident Plaintiffs and that the "obvious" remedy for that due process violation would be granting such claimants leave to file late claims. *See April 2015 Decision*, 529 B.R. at 573-74, 583 ("the failure to send out Ignition Switch Defect recall notices … resulted in the denial of the notice that due process requires"; "the denial of timely notice of the Old GM Bar Date prejudiced

---

[2] *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015), *aff'd in part, rev'd in part and vacated in part sub nom. Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016).

the Plaintiffs with respect to any claims they might have filed against Old GM"; "The remedy with respect to the denial of notice sufficient to enable the filing of claims before the Bar Date is obvious. That is leave to file late claims."). The Bankruptcy Court's rulings with respect to the prejudice suffered in connection with the improper notice of the Bar Date and the proper remedy for that due process violation were not appealed and remain law of the case.

Although the Bankruptcy Court ruled in its April 2015 Decision that the Movants' due process rights were violated in connection with the Bar Date and that they should be allowed to file late claims, the Bankruptcy Court concurrently ruled in that decision that any late proofs of claim that Ignition Switch Pre-Closing Accident Plaintiffs filed against the GUC Trust would be barred pursuant to the doctrine of equitable mootness. *Id.* at 592. Simply put, the Bankruptcy Court negated its due process ruling and rendered any request to file late claims a futile act by effectively and preemptively denying any motion for leave to file late claims by ruling that such a motion would be barred by equitable mootness.

On appeal, the Second Circuit vacated the Bankruptcy Court's equitable mootness holding as an advisory opinion. *See Second Circuit Decision*, 829 F.3d at 166-68.[3] Now that the Second Circuit has confirmed that the Movants suffered an actionable due process violation with respect to the Bar Date and that it is premature to determine that any claims they may assert against the GUC Trust are equitably moot, the Movants now seek to file proofs of claim in order to recover what amounts may be available to them from the GUC Trust (in addition to pursuing successor liability claims against New GM pursuant to the *Second Circuit Decision* and/or any other claims that may be available to them).[4] Accordingly, the Movants hereby seek a ruling that

---

[3] It is worth noting that the Second Circuit declined to resolve "whether it is appropriate for a bankruptcy court – as opposed to an appellate court – to apply equitable mootness, which appears to be a recent phenomenon," but noted that the Second Circuit's equitable mootness cases "have all involved an appellate body applying the doctrine in the first instance." *Id.* at 167 n.30.

[4] Copies of the Movants' proposed proofs of claim are attached hereto as Exhibit B. The Movants' prepared and

3

they may file their proofs of claim and seek to prosecute such claims as if they were timely filed.

## Argument

A. **The Movants Should Be Permitted to File and Prosecute Late Proofs of Claim Against the GUC Trust for Their Injuries and Deaths**

"[T]he Due Process Clause of the Fifth Amendment dictates that a debtor's creditors receive notice of the debtor's bankruptcy case and applicable bar date so that creditors have an opportunity to make any claims they may have against the debtor's estate." *In re XO Commc'ns, Inc.*, 301 B.R. 782, 791-92 (Bankr. S.D.N.Y. 2003) (citing *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 679 (Bankr. S.D.N.Y. 1993)). It is well-established that if a known creditor has not received the actual notice of a claims bar date that due process requires, its claim cannot be barred as untimely. *See City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 73 S. Ct. 299, 97 L. Ed. 2d 333 (1953); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 2256683, at *6 (Bankr. S.D.N.Y. May 11, 2015) ("'[I]f a debtor who files for chapter 11 bankruptcy protection does not give 'reasonable notice' to a creditor of the bankruptcy proceeding and the applicable bar date(s), the creditor's proof of claim cannot be constitutionally discharged.'"); *In re AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) ("a known creditor must receive proper, adequate notice before its claim is barred forever"); *In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 1577763, at *3 (Bankr. S.D.N.Y. May 30, 2007) (same); *In re Best Prods. Co., Inc.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992) (same). Indeed, courts have held that due process requires that when a creditor does not receive adequate notice, it "must be permitted to file [a claim] tardily. . . ." *U.S. v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1089 (6th Cir. 1990).

---

signed their proofs of claim while the appeal of the April 2015 Decision was pending to the Second Circuit. Because such claims were moot at the time they were prepared and barred by this Court's Late Filed Claims Order, in order

In its April 2015 Decision, the Bankruptcy Court found that the notice of the Bar Date provided to Ignition Switch Pre-Closing Accident Plaintiffs was deficient for at least two reasons. First, as "known creditors," the Ignition Switch Pre-Closing Accident Plaintiffs were entitled to *actual* notice of the Bar Date. *See April 2015 Decision*, 529 B.R. at 525, 560. Second, because there was no recall prior to the Bar Date that alerted Ignition Switch Pre-Closing Accident Plaintiffs to the existence of the Ignition Switch Defect and the notice did not mention the existence of the Ignition Switch Defect, the notices themselves were insufficient to put the Ignition Switch Pre-Closing Accident Plaintiffs on notice that they had Ignition Switch Defect-related claims. *See id.* at 525, 556-57; *see also id.* at 574, n.214 ("Old GM failed to send out any recall notices, or provide any alternative form of notice to those with Ignition Switch Defects."). Specifically, the Bankruptcy Court wrote:

> [b]y reason of its failure to provide the Plaintiffs with either the notice required under the Safety Act or any other form of written notice, Old GM failed to provide the Plaintiffs with the notice that due process requires. And because that failure prejudiced them in filing timely claims, the Plaintiffs were prejudiced as a result. The failure to give the Plaintiffs the notice that due process requires, coupled with the prejudice to them that resulted, denied the Plaintiffs the requisite due process.

*Id.* at 574.

As such, each Ignition Switch Pre-Closing Accident Plaintiff was entitled to actual notice of the Bar Date by first class mail. Moreover, regardless of whether notice of the Bar Date was sent by first class mail or was published in a newspaper of general circulation, the content of the notice was deficient. This is because the form of notice did not mention the Ignition Switch Defect and there was no other information about the existence of the Ignition Switch Defect

---

to preserve claimant and judicial resources the Movants determined, in consultation with counsel to the GUC Trust, not to file and seek allowance of these claims until after the Second Circuit ruled on the mootness issue.

(such as a recall notice) disseminated to the Movants that could be determined to have supplemented the information contained in the notice.

Because the Bankruptcy Court determined there was a due process violation that prejudiced the Ignition Switch Pre-Closing Accident Plaintiffs, it held that that group of claimants "may petition the Bankruptcy Court (on motion and notice) for authorization to file a late or amended proof of claim against the Old GM bankruptcy estate." June 2015 Judgment at 2; *April 2015 Decision*, 529 B.R. at 583 ("[t]he remedy with respect to the denial of notice sufficient to enable the filing of claims before the Bar Date is obvious. That is leave to file late claims.").

However, prior to its April 2015 Decision, the Bankruptcy Court had already put into place another impediment that prevented the Ignition Switch Pre-Closing Accident Plaintiffs from filing late proofs of claim. Well before February 2014 when the existence of the Ignition Switch defect finally came to light, on February 8, 2012 the Bankruptcy Court entered the Late Filed Claims Order. That order reversed the statutory presumption of Bankruptcy Code section 502(a) that proofs of claim are deemed allowed unless objected to[5] and instead provided that claims filed after February 8, 2012 were deemed <u>dis</u>allowed. Specifically, pursuant to the Late Filed Claims Order, all claims filed after February 8, 2012 were deemed disallowed unless such claim (i) amended a timely filed claim, (ii) was filed with the consent of the GUC Trust, or (iii) was the subject of a Bankruptcy Court order deeming such late claim timely filed. *See Late Filed Claims Order at* 1-2.

The practical effect of the Late Filed Claims Order was to disallow any late claim <u>until</u> the claimant had a basis to seek allowance. Until such time as the Bankruptcy Court determined

---

[5] "A claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest…objects." 11 U.S.C. § 502(a).

6

in its April 2015 Decision that there had been a due process violation as to the Ignition Switch Pre-Closing Accident Plaintiffs, not only were the Ignition Switch Pre-Closing Accident Plaintiffs unaware that they had a basis to file a late claim against the GUC Trust, but even if they had filed a late claim before the April 2015 Decision, the filing of such claim would have been a futile act. This is because such claims would have been deemed invalid pursuant to the Late Filed Claims Order and, absent consent from the GUC Trust (which was not forthcoming), before the April 2015 Decision there was no earlier basis for the Ignition Switch Pre-Closing Accident Plaintiffs to seek allowance of late claims.

In addition to the impediment presented by the Late Filed Claims Order, the Bankruptcy Court ruled in its April 2015 Decision that any late claim filed by an Ignition Switch Pre-Closing Accident Plaintiff would be barred as equitably moot. *April 2015 Decision*, 529 B.R. at 592. The combined effect of the Bankruptcy Court's equitable mootness ruling and the Late Filed Claims Order was to render the act of seeking permission to file a late proof of claim relating to the Ignition Switch Defect a waste of time and resources. Given the twelve year concealment of the Ignition Switch Defect,[6] followed by the August 2014 Motion to Enforce (defined below) and the April 2015 Decision on equitable mootness, no basis existed to seek allowance of late claims relating to the Ignition Switch Defect until July 2016 when the Second Circuit vacated the Bankruptcy Court's equitable mootness ruling. Simply put, until the due process violation was adjudicated, the Late Filed Claims Order and the Bar Date Order barred an untimely proof of claim; and even then, the equitable mootness ruling in the April 2015 Decision was a further bar until July 2016.

---

[6] *See Second Circuit Decision*, 829 F.3d at 148-50 (chronicling history of the Ignition Switch Defect from 2002, when "prototypes consistently failed to meet technical specifications" and almost immediately after production "customers complained of moving stalls, sometimes at highway speeds," to February 2014, when New GM began its Ignition Switch Defect related recalls).

7

Things have now changed. The Second Circuit recently affirmed the Bankruptcy Court's ruling that the Movants and all other Ignition Switch Pre-Closing Accident Plaintiffs were known creditors who did not receive proper notice in connection with Old GM's bankruptcy. *Second Circuit Decision*, 829 F.3d at 160-61. The Bankruptcy Court's ruling that the due process violation vis-à-vis the Bar Date prejudiced the Ignition Switch Pre-Closing Accident Plaintiffs and that the appropriate remedy for that violation was granting leave to file a late proof of claim was never appealed and is now law of the case. *See General Motors LLC's Statement of Issues to Be Presented on Appeal and Designation of Additional Items to Be Included in the Record on Appeal* [Docket No. 13261]; *[GUC Trust's and Participating Unit Holders'] Statement of Issues on Cross-Appeal and Designation of Items to Be Included in the Record on Appeal* [Docket No. 13264]; *Cty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) ("a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case."); *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir. 1995) ("a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.") (internal quotes omitted).

The Second Circuit has now vacated the Bankruptcy Court's equitable mootness ruling as an improper advisory opinion. *See Second Circuit Decision*, 829 F.3d at 166-68. Accordingly, now there is no impediment to the Movants pursuing the remedy that the Bankruptcy Court proposed in its April 2015 Decision – seeking authority to file late proofs of claim and to have those claims allowed and paid from GUC Trust assets.

**B.      Movants Meet the Requisite Standard for Seeking Allowance of Their Proofs of Claim.**

Having established that they were denied due process in connection with the Bar Date, the Movants should not be required to make any showing in order to be permitted to file "late" claims. Neglect (excusable or otherwise) had nothing to do with the Ignition Switch Pre-Closing Accident Plaintiffs missing the Bar Date. Rather, the cause was the concealment of the existence of the Ignition Switch Defect until years after the Bar Date had passed. The failure to file timely proofs of claim was the result of the due process violation found by the Bankruptcy Court and the Second Circuit. Indeed, under the Second Circuit's 2010 *Manville* decision, the remedy is clear: the Movants are not bound by the Bar Date Order. *Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 157-58 (2d Cir. 2010) (*per curiam*) ("*Manville IV*").[7]

However, even if the "excusable neglect" standard typically applied in situations where the party seeking to act outside of a deadline is applicable here, the Movants easily meet the requirement that the "lateness" of their proofs of claim is excusable. In this regard, "[w]hen creditors fail to file claims before a bar date <u>despite having constitutionally sufficient notice to do so</u>," Federal Rule of Bankruptcy Procedure 9006(b)(1) provides courts with the discretion to deem the claims timely filed if the failure to act was the result of excusable neglect. *Residential Capital*, 2015 WL 2256683 at *9 (emphasis added); *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005) ("*Enron*"). Specifically,

---

[7] In *Manville IV*, in connection with a settlement, the bankruptcy court entered orders in 1986 (as well as a clarifying order" in 2004) that enjoined claims against certain settling insurers. *Id*. at 141-42. Years after entry of the 1986 orders, Chubb Indemnity Insurance Co. ("Chubb"), one of the parties purportedly subject to the injunction, argued that it could not be bound by the 1986 orders because, among other reasons, "it was not given constitutionally sufficient notice of the 1986 Orders." *Id*. at 137, 142. The Second Circuit, agreed that Chubb did not receive constitutionally sufficient notice of the 1986 orders and held that because Chubb's due process rights were violated, it was "not bound by the terms of the 1986 Orders." *Id*. at 158.

9

Rule 9006(b)(1) provides:

> [w]hen an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b)(1) (emphasis added).

In determining whether the failure to timely file a proof of claim is the result of "excusable neglect," courts apply a four part test first articulated by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395, 123 L. Ed. 2d 74, 113 S.Ct. 1489 (1993) ("*Pioneer*"): (i) the danger of prejudice to the debtor; (ii) the length of the delay and impact thereof on the proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant, and (iv) whether the movant acted in good faith. While courts have recognized that the inquiry is an equitable one and that "all relevant circumstances surround the party's omission" must be considered, courts in the Second Circuit accord particular weight to the third factor – the reason for the delay. *Enron*, 419 F.3d at 122-23 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)); *Dana Corp.*, 2007 WL 1577763 at *4 (quoting *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006)).

In addition, courts have routinely "found excusable neglect where the creditor fails to comply with the bar date because, through no fault of its own, it had no notice of that date." *In re William B. Wilson Mfg. Co.*, 59 B.R. 535, 538 (Bankr. W.D. Tex. 1986); *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985) ("nonreceipt of notice would clearly constitute excusable neglect."); *In re Pettibone Corp.*, 162 B.R. 791, 814 (Bankr. N.D. Ill. 1994) (quotations omitted) ("[c]ourts have consistently found the lack of notice to 'known' creditors to constitute the paradigm example of excusable neglect and freely grant motions to file late claims on behalf of

10

known creditors who through no fault of their own, had no notice of the bar date.").

The Movants easily satisfy all four factors of the *Pioneer* test and should be permitted to prosecute their proofs of claim notwithstanding the passage of the Bar Date.[8]  First, there can be no prejudice to the Debtors where, as here, Old GM has been liquidated and the delay in filing these claims is the result of Old GM's own due process violation (and New GM's concealment of the existence of the Ignition Switch Defect from the closing of the sale from Old GM in the summer of 2009 until February 2014).  *See In re First Magnus Fin. Corp.*, 415 B.R. 416, 423 (Bankr. D. Ariz. 2009) ("[t]he Liquidating Trustee's argument that the late claim will cause judicial inefficiency and prejudice to the estate rings hollow in light of [the claimant's] right to due process and the Debtor's duties to provide adequate notice of the bar date to known creditors.").  It is also worth noting that the vast majority of the GUC Trust's assets was distributed to Old GM creditors before New GM admitted to the existence of the Ignition Switch Defect in February 2014.  *See Second Circuit Decision*, 829 F.3d at 148 ("As of March 31, 2014, GUC Trust had distributed roughly ninety percent of its New GM securities and nearly 32 million units of GUC Trust"; "On February 7, 2014, New GM first informed the National Highway Traffic Safety Administration ('NHTSA') that it would be recalling, among other vehicles, the 2005 Chevrolet Cobalt.  A defect in the ignition switch could prevent airbags from deploying.").  To date, the due process violations have resulted in a windfall to Old GM's other creditors because those creditors have been paid (and may receive future payments) without dilution by the Movants' legitimate claims.  In other words, it is the Movants and the other plaintiffs who were denied due process who have been prejudiced to date, not the Debtors or their other stakeholders.

Second, the length of the delay in filing the claims is appropriate here in light of the

---

[8] To avoid duplication, the Movants hereby incorporate by reference herein the arguments and authorities made with regards to the *Pioneer* factors in the motion filed by Designated Counsel for the Ignition Switch Plaintiffs, the Second Stage Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs (collectively, the "Economic Loss

11

circumstances surrounding the delay. As discussed above, the Movants' delay in filing their proofs of claim resulted from Old GM's failure to provide the Movants with appropriate and constitutionally mandated notice of the Bar Date and the subsequent concealment of the Ignition Switch Defect by New GM. In the context of these cases and the fact that the Movants' claims only recently became viable after the Second Circuit vacated the Bankruptcy Court's equitable mootness ruling, the length of delay factor weighs in favor of the Movants.

Third, the Movants' delay was not within their reasonable control; it was the direct result of the Debtors' failure to provide appropriate notice of the Bar Date to its known creditors with claims relating to the Ignition Switch Defect – a defect of which Old GM was well aware at the time it filed bankruptcy, as has now been established. The Movants were unaware of the existence of their Ignition Switch Defect claims until the recall notices were issued in 2014. Because the April 2015 Decision provided that any claim that the Movants could have filed against the GUC Trust would have been equitably moot, it was futile and wasteful for the Movants to file proofs of claim prior to the Second Circuit overturning that ruling on appeal.

Fourth, the Movants are acting in good faith by filing their proofs of claims and seeking to have their late claims considered together with the late claims that are sought to be filed by Certain Ignition Switch Pre-Closing Plaintiffs in Docket No. 13807. Movants are merely seeking to have their legitimate claims deemed timely filed as would have been the case absent the due process violation inflicted upon them.

Accordingly, the *Pioneer* factors are satisfied here and the Movants should be permitted to file and prosecute their late proofs of claim.

---

Plaintiffs") for authority to file a late class proof of claim.

**Conclusion**

For the foregoing reasons, the Movants respectfully request entry of an order deeming the Movants' proofs of claim timely filed and such other and further relief as this Court finds just and proper.

Dated: July 28, 2017

                Respectfully submitted,

                ANDREWS MYERS, P.C.

                */s/ Lisa M. Norman*
                Lisa M. Norman (pro hac vice)
                T. Joshua Judd (pro hac vice)
                ANDREWS MYERS, P.C.
                1885 St. James Place, 15th Floor
                Houston, Texas 77056
                713-850-4200  Telephone
                713-850-4211  Facsimile
                Lnorman@andrewsmyers.com
                Jjudd@andrewsmyers.com

                *Counsel for Additional Ignition Switch*
                *Pre-Closing Plaintiffs Listed on Exhibit A*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), copies will also be served by email on July 28, 2016 on those parties listed as "Notice Parties" under the Court's December 12, 2016 Order to Show Cause [ECF No. 13802], with paper copies served by first class mail postage prepaid on all Notice Parties for whom email addresses are unavailable.

                */s/  Lisa M. Norman*
                LISA M. NORMAN