**HEARING DATE AND TIME:  August 29, 2017 at 3:00 p.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **Case No.:  09-50026** (MG) |
| **f/k/a General Motors Corp.**, *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

**REPLY BRIEF BY GENERAL MOTORS LLC TO OBJECTION
TO MOTION TO ENFORCE THE BANKRUPTCY COURT'S JULY 5, 2009
SALE ORDER AND INJUNCTION, AND THE RULINGS IN CONNECTION
THEREWITH, WITH RESPECT TO THE REICHWALDT PLAINTIFFS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...............................................................................................................4

     I.    Reichwaldt's Request for Punitive Damages with Respect To Assumed
         Product Liabilities Violates the Bankruptcy Court's Rulings and
         Should Be Stricken................................................................................5

          A.    Reichwaldt is Bound by the Rulings in the July 2017 Opinion .............5

          B.    Reichwaldt's Arguments Were Also Made and Rejected in
              2015.....................................................................................................6

          C.    Reichwaldt's Repetitive Contract Assumption Arguments Are
              Without Merit......................................................................................8

     II.   Reichwaldt's Independent Claim and Punitive Damages in
         Connection with Such Claim are Improper, and Should Be Stricken..............9

          A.    Reichwaldt's Independent Claim Violates the Second Circuit's
              and this Court's Rulings....................................................................9

          B.    Reichwaldt's So-Called Independent Claim Is Impermissibly
              Based on "Wholesale Imputation," and Violate Previous
              Decisions Of This Court ..................................................................14

          C.    An Independent Claim Must Be Based on Post-Sale Conduct
              or a Post-Sale Relationship With New GM, But Reichwaldt
              Alleges Neither ...............................................................................16

          D.    As Reichwaldt's Independent Claim Should Be Stricken, So
              Too Should Her Request for Punitive Damages Based on Such
              Claim ...............................................................................................16

     III.  The Proposed Reichwaldt Amended Complaint Improperly Asserts
         that New GM is the Successor to Old GM........................................................16

     IV.  New GM Timely Raised Bankruptcy Issues......................................................17

     V.   The Reichwaldt Lawsuit Should Be Stayed Until All Infirmities Are
         Addressed...........................................................................................................18

CONCLUSION ...........................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonious v. Muhammad*,
  873 F.Supp. 817 (S.D.N.Y. 1995).............................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................11, 12

*Avita v. Metro. Club of Chi., Inc.*,
  924 F.2d 689 (7th Cir. 1991) ...................................................................................7

*Burton v. Chrysler Grp., LLC (In re Old Carco LLC)*,
  492 B.R. 392 (Bankr. S.D.N.Y. 2013) .....................................................................13

*Celotex Corp. v. Edwards*
  514 U.S. 300 (1995)..................................................................................................18

*Conrod v. Davis*,
  120 F.3d 92 (8th Cir. 1997) .....................................................................................7

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  600 F.3d 190 (2d Cir. 2010).....................................................................................5

*F5 Capital v. Pappas*,
  856 F.3d 61 (2d Cir. 2017)........................................................................................12

*Holland v FCA US LLC*,
  Case No. 1:15 CV 121, 2015 WL 7196197 (N.D. Ohio Nov. 16, 2015)...........3, 12

*In re JPMorgan Chase & Co. Derivative Litig.*,
  No. 12 CIV. 03878 GBD, 2014 WL 1297824 (S.D.N.Y. Mar. 31, 2014)..............12

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*,
  595 F. 3d 458 (2d Cir. 2010).....................................................................................7

*In re Matter of Motors Liquidation Co.*,
  829 F.3d 135 (2d Cir. 2016)................................................................................3, 10, 13

*In re MF Global Holdings, Ltd*,
  Case No. 11–15059 (MG), 2014 WL 3536977 (Bankr. S.D.N.Y. July 17,
  2014) ..........................................................................................................................6

*Moore-Sapp Inv'rs v. Richards*,
  522 S.E.2d 739 (Ga. Ct. App. 1999) .......................................................................7

*In re Motors Liquidation Co.*, 529 B.R. 510, 528 (Bankr. S.D.N.Y. 2015), *aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017) ......................................................................................................... 13

*In re Motors Liquidation Co.*,
541 B.R. 104 (Bankr. S.D.N.Y. 2015) .................................................................................. 7

*In re Motors Liquidation Co.*,
549 B.R. 607 (Bankr. S.D.N.Y. 2016) ................................................................................ 16

*In re Motors Liquidation Co.*,
Case No. 09-50026 (MG), 2017 WL 2457881 (Bankr. S.D.N.Y. June 7, 2017) ................. 3, 10

*In re Motors Liquidation Co.*,
No. 09-50026 (MG), 2017 WL 2963374 (Bankr. S.D.N.Y. July 12, 2017) .................... *passim*

*New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*,
352 F.3d 599 (2d Cir. 2003) ................................................................................................. 7

*Wayne Cty. Emps.' Ret. Sys. v. Dimon*,
629 F. App'x 14 (2d Cir. 2015) ......................................................................................... 12

*In re Weinstein*,
173 B.R. 258 (Bankr. E.D.N.Y. 1994) ................................................................................. 5

## Other Authorities

The Center for Auto Safety: *Chrysler to Accept More Product Laibility Claims*
(Aug. 28, 2009), *available at* http://www.autosafety.org/chrysler-accept-more-product-liability-claims ........................................................................................... 10

General Motors LLC ("**New GM**") submits this reply brief ("**Reply**") in response to the *Objection To Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction, And The Rulings In Connection Therewith, With Respect To The Reichwaldt Plaintiff*, dated August 18, 2017 [ECF No. 14068] ("**Objection**") filed by Reichwaldt,[1] and in further support of the relief requested in the Reichwaldt Motion to Enforce.

## PRELIMINARY STATEMENT

New GM is seeking to enforce important Sale Order limitations because of three infirmities in Reichwaldt's original and proposed amended complaints: (1) the punitive damages claim for assumed product liabilities contravenes the Sale Order, as twice determined by the Bankruptcy Court (most recently in this Court's July 2017 Opinion); (2) the so-called independent claim of failure to warn, including a punitive damages request, violates the Second Circuit Opinion and this Court's June 2017 Opinion because the alleged independent claim is not solely based on alleged wrongful post-Sale New GM conduct; and (3) the proposed amended complaint -- not yet approved by the trial court[2] -- contains successor liability allegations that violate the Sale Order and the Bankruptcy Court's December 2015 Judgment.

As with many of the gate-keeping issues presented to this Court, the dispute between New GM and Reichwaldt primarily centers on improper punitive damages requests.[3]

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion By General Motors LLC To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction And The Rulings In Connection Therewith, With Respect To The Reichwaldt Plaintiff*, filed by New GM on July 28, 2017 [ECF No. 14016] ("**Reichwaldt Motion to Enforce**"). Capitalized terms not defined in this Preliminary Statement or in the Reichwaldt Motion to Enforce are defined in subsequent sections of this Reply.

[2]    The Georgia Court recently gave New GM until September 7, 2017 to respond to Reichwaldt's motion to file the proposed amended complaint, which is nine days after the hearing scheduled by this Court on the Reichwaldt Motion to Enforce.

[3]    New GM assumed failure to warn (to the extent viable under state law) as part of assumed product liability claims. As demonstrated herein, this Court ruled that punitive damages cannot be obtained for assumed product

Reichwaldt's claim for punitive damages relating to assumed Product Liabilities cannot be reconciled with this Court's July 2017 Opinion, which held that the punitive damages ruling in the December 2015 Judgment is the "law of the case."[4] Moreover, in the July 2017 Opinion, this Court expressly held that plaintiffs, like Reichwaldt, cannot assert punitive damages based on Old GM conduct. Given Reichwaldt's concession that the July 2017 Opinion is binding on her, she should be precluded from wasteful and repetitive litigation regarding whether punitive damages based on Old GM conduct (the fundamental predicate for an assumed product liability claim) are proscribed.

Reichwaldt fares no better in asserting an independent failure to warn claim against New GM. Essentially, Reichwaldt is distorting the imputation doctrine in an improper attempt to construct an independent claim based on Old GM conduct and Old GM duties. The first step in her flawed allegations is to refer extensively to Old GM conduct. Her next step is to assert the imputation doctrine on a wholesale basis to demonstrate that, pursuant to the 363 Sale, New GM acquired the knowledge of Old GM's conduct. That is where her analysis and the allegations in the complaint end. The only Old GM duties assumed by New GM pursuant to the 363 Sale were the expressly stated Assumed Liabilities. Under the Sale Order, New GM is not generally responsible for Old GM conduct, Old GM knowledge, or Old GM duties; that is a Retained Liability and independent claims cannot be based upon Old GM knowledge, conduct, or duties.

---

liabilities. Reichwaldt also seeks to assert the same failure to warn claim as a purported independent claim for the sole purpose of establishing a separate path for punitive damages. As demonstrated herein, Reichwaldt's end-run is improper because she has not stated a viable independent claim.

[4]   *In re Motors Liquidation Co.*, No. 09-50026 (MG), 2017 WL 2963374, at *7 (Bankr. S.D.N.Y. July 12, 2017) ("**July 2017 Opinion**") ("The Second Circuit Opinion did not review the November Decision, and the November Decision was not appealed. Judge Gerber's ruling therefore remains law of the case and New GM cannot be held liable for punitive damages on a contractual basis. . . . Because a successor corporation may only be liable to the same extent as its predecessor, New GM cannot be held liable for a claim that its predecessor [Old GM] would not have to pay under the Bankruptcy Code.").

Thus, a plaintiff cannot properly assert an independent claim by wholesale and general allegations where broad swaths of Old GM conduct are imputed to New GM. Rather, a plaintiff must have a plausible basis to allege that specific Old GM documents or knowledge were known by particular New GM employees in the context of alleged wrongful post-Sale New GM conduct. Moreover, the claimant must allege that New GM entered into a post-363 Sale relationship with the Old GM vehicle owner that created a separate New GM duty to warn. *See Holland v FCA US LLC*, Case No. 1:15 CV 121, 2015 WL 7196197, at *4 (N.D. Ohio Nov. 16, 2015) ("While the [post-sale] TSB may serve as evidence that FCA had knowledge of the potential existence of rust and corrosion on 2004-2005 Pacificas, knowledge alone is insufficient to establish a duty on the part of FCA to warn Plaintiffs that their vehicles may be affected. Plaintiffs must allege a relationship between FCA and Plaintiffs that gave rise to a duty to warn."). Importantly, in July 2016, the Second Circuit stated that viable independent claims must be based solely on New GM post-363 Sale conduct, and not Old GM conduct.[5] In June 2017, this Court warned plaintiffs (like Reichwaldt) that "[i]t is not acceptable . . . to base allegations on generalized knowledge of both Old GM and New GM. To pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." June 2017 Opinion, 2017 WL 2457881, at *10. Plaintiffs cannot simply impute Old GM knowledge to New GM on a wholesale basis. If the independent claim pleading (and proof) requirements were otherwise, then the imputation doctrines would eviscerate the definition of an independent claim, as pronounced by the Second Circuit and this Court.

---

[5]    *See In re Matter of Motors Liquidation Co.,* 829 F.3d 135, 157 (2d Cir. 2016) ("independent claims are claims based on New GM's own post-closing wrongful conduct. . . . These sorts of claims are based on New GM's post-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct.").

3

Finally, while Reichwaldt has attempted to cure some of the improper allegations in her original complaint, Reichwaldt is seeking – through her proposed amended complaint – to add improper successor liability allegations in violation of the Sale Order and the Bankruptcy Court's December 2015 Judgment.[6]

In sum, Reichwaldt seems to incorrectly believe that she is not subject to or bound by any of the previous decisions of this Court or the Second Circuit. New GM therefore requests this Court's assistance in enforcing important Sale Order limitations against the unwarranted and improper punitive damages and independent claim in Reichwaldt's original and proposed amended complaints. Until these improper allegations are corrected, Reichwaldt should be stayed from further litigation in the Georgia trial court.

## ARGUMENT

I.    **Reichwaldt's Request for Punitive Damages with Respect To Assumed Product Liabilities Violates the Bankruptcy Court's Rulings and Should Be Stricken**

In the July 2017 Opinion, this Court issued two critical rulings that bind Reichwaldt and should lead to an injunction prohibiting the assertion of her punitive damages claim.

*First*, the Court ruled that "Judge Gerber's ruling that New GM did not ***contractually*** assume liability for punitive damages remains law of the case." July 2017 Opinion, 2017 WL 2963374, at *7 (emphasis added). The Court explained:

> Judge Gerber ruled, as a matter of contract interpretation, that New GM did not assume liability for punitive damages based on Old GM's conduct in the Sale Agreement. The Second Circuit Opinion did not review the November Decision, and the November Decision was not appealed. Judge Gerber's ruling therefore remains law of the case and New GM cannot be held liable for punitive damages on a contractual basis.

---

[6]    Reichwaldt sent New GM a proposed amended complaint ("**Proposed Reichwaldt Amended Complaint**") after the filing of the Reichwaldt Motion to Enforce. A copy of the redlined version of the Proposed Reichwaldt Amended Complaint provided by Reichwaldt to counsel for New GM is attached hereto as **Exhibit "A."**

*Id.*

*Second*, the Court ruled that New GM may not be held liable for punitive damages on *any* successor liability theory (whether contractual or otherwise), "[b]ecause a successor corporation may only be liable to the same extent as its predecessor, New GM cannot be held liable for a claim that its predecessor [Old GM] would not have to pay under the Bankruptcy Code." *Id.* at *10. The Court thus concluded that "Post-Closing Accident Plaintiffs [like Reichwaldt] may not assert claims against New GM for punitive damages based on Old GM conduct." *Id.* at *11.

In fact, as shown below, the arguments in Reichwaldt's response were also made to the Bankruptcy Court in 2015 and as part of the 2016 Threshold Issues, and rejected. Reichwaldt should not be allowed to re-litigate them.

### A.    Reichwaldt is Bound by the Rulings in the July 2017 Opinion

Reichwaldt "*does not dispute* that she was served with the December 2016 Show Cause Order or *that she is bound by* the Court's June and July rulings . . . ." Objection, at 19 n.14 (emphasis added). Based on her admissions, the July 2017 Opinion applies to her, including the rulings that: (i) New GM did not *contractually* assume liability for punitive damages based on Old GM conduct; and (ii) New GM cannot *otherwise* be held liable for punitive damages as a successor to Old GM, because Old GM would not have been required to pay such damages under the Bankruptcy Code.

Reichwaldt is bound by the court's rulings under the law of the case doctrine. July 2017 Opinion, 2017 WL 2963374, at *7 ("Judge Gerber's ruling that New GM did not *contractually* assume liability for punitive damages *remains law of the case*.") (emphasis added)).

Reichwaldt's claims are *also* barred by *res judicata*. "Under both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that a final judgment on

the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (citation omitted). "[T]he mere pendency of an appeal does not deprive a challenged judgment of its res judicata effects." *Antonious v. Muhammad*, 873 F.Supp. 817, 824 (S.D.N.Y. 1995); *see also In re Weinstein*, 173 B.R. 258, 279 (Bankr. E.D.N.Y. 1994) ("The federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel...." (quoting 1B MOORE'S FEDERAL PRACTICE ¶ 0.416[3.—2] & n. 1 (James Wm. Moore ed., 2d ed. 1993)). As this Court held in *In re MF Global Holdings, Ltd*, Case No. 11–15059 (MG), 2014 WL 3536977, at *4 (Bankr. S.D.N.Y. July 17, 2014):

> Res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Under federal law, res judicata "bars later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." Further, the pendency of an appeal does not affect a decision's finality for res judicata purposes. [Citations omitted]

Here, as conceded by Reichwaldt, the July 2017 Opinion is a final judgment, and she is bound by the rulings therein. It is axiomatic that once Old GM's conduct is eliminated from the punitive damage analysis, the contractual assumption path to punitive damages is permanently blocked.

## B.    Reichwaldt's Arguments Were Also Made and Rejected in 2015

Furthermore, all of Reichwaldt's arguments regarding the contractual assumption of punitive damages were previously made by Goodwin Procter LLP[7] on behalf of similarly situated personal injury plaintiffs, which were rejected by the Bankruptcy Court in the December

---

[7]    It is not surprising that Butler Wooten is familiar with the Goodwin Procter arguments considering Goodwin Procter represented the clients of Butler Wooten in connection with the 2016 Threshold Issues.

2015 Judgment. Indeed, all but one of the cases cited by Reichwaldt in her Objection were cited

in Goodwin Procter's brief on punitive damages filed on September 13, 2015 (**"Plaintiffs' 2015**

**Punitive Damages Brief**");[8] most of the quotes used in the Objection are taken, verbatim, from

the Plaintiffs' 2015 Punitive Damages Brief;[9] and certain other statements in the Objection are

lifted, verbatim, from the Plaintiffs' 2015 Punitive Damages Brief.[10]

After an extensive review of the Sale Agreement and the parties' arguments regarding

contract interpretation, Judge Gerber concluded that New GM did not contractually assume

liability for punitive damages. *In re Motors Liquidation Co.*, 541 B.R. 104, 117-121 (Bankr.

S.D.N.Y. 2015) ("both by resort to normal textual analysis and extrinsic evidence, the Court

comes to the same conclusion—that New GM did not contractually assume punitive damages

claims"); *see also* December 2015 Judgment, ¶ 6. These above-cited rulings were not appealed

and, as noted, they are law of the case.[11]    New GM cited these rulings in connection with the

---

[8]    The full title of the Plaintiffs' 2015 Punitive Damages Brief is *Post-Closing Ignition Switch Accident Plaintiffs' Memorandum Of Law With Respect To Punitive Damages Issue*, dated Sept. 13, 2015 [ECF No. 13434], a copy of which is attached hereto as **Exhibit "B."**  The one case not cited by Goodwin Proctor was *Moore-Sapp Inv'rs v. Richards*, 522 S.E.2d 739 (Ga. Ct. App. 1999).  This case is cited for the unremarkable proposition that, under Georgia law, "[p]unitive damages are awardable only when other damages, compensatory in nature, are awarded." *Id.*, at 742.

[9]    For example, *compare* Objection, at 12 ("A contract is only ambiguous if it 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' *Law Debenture Trust Co. of N.Y.* at 466 (quotations omitted)."), *with* Plaintiffs' 2015 Punitive Damages Brief, at 4 ("A contract is only ambiguous if it 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' *Id.* at 466[.]").

[10]    For example, *compare* Objection, at 13 ("In nearly all states, there cannot be an award of punitive damages without a threshold award of compensatory damages. *See* PROSSER AND KEETON ON THE LAW OF TORTS § 2, at 14 (W. Page Keeton et al. eds., 5th ed. 1984)"), *with* Plaintiffs' 2015 Punitive Damages Brief, at 12 ("In nearly all states, there cannot be an award of punitive damages without a threshold award of compensatory damages. *See* PROSSER AND KEETON ON THE LAW OF TORTS § 2, at 14 (W. Page Keeton et al. eds., 5th ed. 1984)").

[11]    Each of the cases cited by Reichwaldt at page 21 of her brief as to why she is not bound by the July 2017 Opinion either supports New GM's position or are inapposite. *Avita v. Metro. Club of Chi., Inc.*, 924 F.2d 689 (7th Cir. 1991) actually **supports** New GM's position that Reichwaldt is bound by the July 2017 Opinion pursuant to *res judicata. Id.* at 690 (finding that plaintiff's failure to appeal, while not law of the case, barred

---

7

briefing of the 2016 Threshold Issues,[12] and this Court reaffirmed them as part of the July 2017

Opinion. *See* July 2017 Opinion, 2017 WL 2963374, at *6-*7, *10-*11.

### C.    Reichwaldt's Repetitive Contract Assumption Arguments Are Without Merit

If the Court is inclined to consider Reichwaldt's attempt to re-litigate this issue, New GM

restates its position – now supported by two Bankruptcy Court rulings – that Reichwaldt's

contract interpretation is wrong.    Reichwaldt contends that punitive damages were not

specifically mentioned as a Retained Liability.[13]  That argument fails for three reasons. *First*, the

16 categories of Retained Liabilities was a non-exclusive list.  *See* Sale Agreement, § 2.3(b).

The Sale Agreement was structured so that all Old GM Liabilities, other than expressly defined

Assumed Liabilities are, by definition, Retained Liabilities.  *Id.*   *Second*, the definition of

Liabilities under the Sale Agreement does not include Damages, which is a separately defined

term.  *Id.*, § 1.1.  *Third*, the definition of assumed product liabilities requires that the Liabilities

must "arise directly" from the accident and be based on the "motor vehicles' operation."  *Id.*, §

2.3(a)(ix) (as amended).   That narrowing language relates to the assumption of compensatory

damages, not punitive damages.

Reichwaldt's reference to the *Chrysler* bankruptcy case and its sale agreement is a red

herring.  *First*, Chrysler is a separate case and it had a differently-worded sale agreement.  A

---

plaintiffs from relitigating a question on appeal pursuant to issue preclusion).  In addition, *New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599 (2d Cir. 2003) provides that a district court has no authority to depart from the mandate of the Second Circuit and that the law of the case doctrine is not applicable for an issue not addressed by the appellate court.  This has nothing to do with the present controversy.  Lastly, in *Conrod v. Davis*, 120 F.3d 92 (8th Cir. 1997), the court stated that if a "district court believes that an earlier decision was reached in error, it may revisit the decision 'to avoid later reversal.'"  *Id.* at 95.  But this Court actually did revisit an earlier decision in the July 2017 Opinion, and **upheld it**.  *See* July 2017 Opinion, 2017 WL 2963374, at *7.

[12]   *See Opening Brief By General Motors LLC On The 2016 Threshold Issues Set Forth In The Order To Show Cause, Dated December 13, 2016 (Except For The Late Proof Of Claim Issue)*, dated February 27, 2017 [ECF No. 13865], at 52-53.

[13]   *See* Objection, at 16.

contractual interpretation of New GM's Sale Agreement does not start, nor end, with the Chrysler sale document.  *Second*, the context in which Chrysler amended its sale agreement to add a specific punitive damages disclaimer actually supports New GM's position. In *Chrysler*, the sale agreement first approved by the bankruptcy court did ***not*** provide that New Chrysler would assume liabilities based on accidents occurring post-sale concerning Old Chrysler vehicles.[14]  An amendment to the *Chrysler* Sale Agreement was later approved—in November 2009, ***well after the Old GM Sale Order and Injunction was entered***—that provided  New Chrysler would assume liabilities based on post-sale accidents concerning Old Chrysler vehicles.[15]  This was done to make the assumed product liability obligations of New Chrysler consistent with the assumed product liability obligations of New GM.[16]  It was this amendment, entered four months after the *Old GM* Sale Order and Injunction—that included the language New Chrysler was not assuming any product liability claims that include punitive damages.  This language was consistent with what was already in the Sale Agreement with New GM; that only damages directly arising from the accident relating to the operation of the Old GM vehicle (*i.e.*, compensatory damages) were being assumed.  Both sale agreements used different language at different times to ultimately achieve the same purpose.

In sum, Reichwaldt's argument that New GM contractually assumed punitive damages should be rejected, for the ***third time*** in this bankruptcy case.

---

[14]   *See In re Old Carco LLC, et al.*, Case No. 09-50002 (Bankr. S.D.N.Y. June 1, 2009) [ECF No. 3232].

[15]   A copy of the amendment to the Chrysler Sale Agreement, dated as of October 29, 2009, is annexed to the Objection as Exhibit "5."  This amendment was approved by the Bankruptcy Court on November 19, 2009.  *See In re Old Carco LLC*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. Nov. 19, 2009) [ECF No. 5988] (*Stipulation And Agreed Order Approving Amendment No. 4 To Master Transaction Agreement*).

[16]   *See* http://www.autosafety.org/chrysler-accept-more-product-liability-claims ("John Bozzella, Chrysler Group LLC's senior vice president for external affairs and public policy, said the company was confident 'that the future viability of the company will not be threatened if we accept these claims.'  He said the new company's approach was 'consistent with that taken by General Motors as part of its bankruptcy process.'").

## II.     Reichwaldt's Independent Claim and Punitive Damages in Connection with Such Claim are Improper, and Should Be Stricken

### A.     Reichwaldt's Independent Claim Violates the Second Circuit's and this Court's Rulings

Reichwaldt's "independent claim" for failure to warn improperly seeks to rely on Old GM conduct—not **solely** New GM conduct—and is therefore prohibited by rulings issued by the Second Circuit and this Court. *See In re Matter of Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016); July 2017 Opinion, 2017 WL 2963374, at *2 n.2 ("truly Independent Claims" are "claims based solely on wrongful post-closing conduct of New GM . . ."); June 2017 Opinion, 2017 WL 2457881, at *4 (defining "Independent Claims" as "claims against New GM *based solely on New GM's wrongful conduct*" (emphasis in original)); December 2015 Judgment, at 2 n.3 ("'Independent Claim' shall mean a claim or cause of action asserted against New GM that is based solely on New GM's own independent post-Closing acts or conduct.").

Specifically, Reichwaldt does not allege any particular post-Sale New GM conduct to establish her independent failure to warn claim; instead, she relies on the fact that New GM purchased assets from Old GM and that some unspecified alleged duty somehow "arose at the time" of the 363 Sale. *See* Proposed Reichwaldt Amended Complaint, ¶ 85;[17] *see also id.* ("As a result of its purchase of GM Corp.'s assets, GM LLC owed a duty to the consuming public in general, and to Plaintiff in particular . . . ."). Predicating a New GM independent claim based on a duty arising from the purchase of assets is, in reality, either an assumed liability or a successor liability claim; neither of which are independent claims.

The only conduct alleged in the Proposed Reichwaldt Amended Complaint with respect to the vehicle at issue (*i.e.*, a **1984** pickup truck, manufactured **over three decades ago by Old**

---

[17]     The Proposed Reichwaldt Amended Complaint contains two paragraphs that are numbered 85; the quoted reference in the text is the "second" paragraph 85, on page 34 of the Proposed Reichwaldt Amended Complaint.

*GM*) is Old GM conduct. And this alleged conduct occurred well before the closing of the 363 Sale. Reichwaldt, herself, acknowledges that Old GM ceased manufacturing this type of vehicle in the late 1980s; again, ***decades before New GM came into existence***. The Old GM vehicle was not subject to a safety recall. Reichwaldt is essentially trying to transform a design defect claim against the seller (Old GM) into an independent failure to warn claim against the buyer (New GM) by broad allegations of extensive Old GM conduct. Reichwaldt's insurmountable problem is that she cannot point to any post-363 Sale New GM conduct that established a new duty to the Old GM vehicle owner.[18]

Independent claims are by definition ***not*** Assumed Liabilities or Retained Liabilities.[19] The term "Liabilities" under Section 1.1 of the Sale Agreement includes ***obligations*** owed by Old GM under *Law*. Thus, an independent claim cannot be based on an obligation under state law owed by Old GM to the Old GM vehicle owner. Since New GM did not manufacture or sell the Old GM vehicle, and New GM is not the successor in interest to Old GM, in the absence of any new and independent relationship created with the Old GM vehicle owner after the 363 Sale (there is none), New GM could not be liable to her for any independent failure to warn claim. Knowledge of Old GM conduct through the imputation doctrine is insufficient by itself to establish an independent claim.

---

[18] Reichwaldt's purported independent claim is based on the following key allegations: (a) Reichwaldt realleges all of the paragraphs of the proposed amended complaint which are replete with Old GM conduct (*see* Proposed Reichwaldt Amended Complaint, at ¶ 84); that, by itself, is fatal to properly asserting an independent claim; (b) New GM knew of the alleged design defect based on the wholesale, generalized adoption of the imputation doctrine (*see id.*, ¶ 85). This is impermissible; (c) New GM acquired a separate duty to warn because it purchased Old GM assets (*see id.*, ¶ 85). Essentially, this allegation asserts an unexpressed assumed liability which forms the improper basis for Reichwaldt's independent claim; and (d) Improperly calling New GM the successor of Old GM (*see id.*, ¶ 87).

[19] *See* December 2015 Judgment, at 2 n.3 (finding that "Independent Claims do not include (a) Assumed Liabilities, or (b) Retained Liabilities . . . .").

11

### B.    Reichwaldt's So-Called Independent Claim Is Impermissibly Based on "Wholesale Imputation," and Violate Previous Decisions Of This Court

Reichwaldt bases her so-called independent claim on conclusory and wholesale imputation allegations.  Under the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009), the Court should afford those allegations no weight.  Old GM stopped manufacturing the vehicle in 1987, more than two decades before New GM came into existence.  Reichwaldt does not allege that any Old GM employee with knowledge about the subject vehicle was employed by New GM after 2009, much less allege what relevant knowledge they had.  Although plaintiffs asserts - as *ipse dixit* - that GM LLC "acquired all specific knowledge about the subject pickup previously possessed by GM Corp." - that allegation is nothing more than an unsupported conclusion.  Reichwaldt attempts to defend her wholesale imputation allegation by suggesting that, because they are contained in a complaint, they should be assumed to be true.  Not true.  As the U.S. Supreme Court explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009), allegations (like Reichwaldt's) that are "conclusory" are *not* entitled to be assumed to be true."  And even assuming *arguendo* that Reichwaldt's allegations were non-conclusory (they are not), they still must "*plausibly* suggest an entitlement to relief."  *Id.*  But there is nothing inherently "plausible" about an allegation that New GM "acquired all specific knowledge" about a vehicle last manufactured by Old GM more than twenty years before the Sale, and somehow that knowledge created a new and independent duty from New GM to the Old GM vehicle owner.[20]  Indeed, it would be no less "conclusory" and no more "plausible" for a plaintiff to allege that

---

[20]    Other courts have afforded no deference to "wholesale imputation" allegations in other contexts.  *See, e.g., Wayne Cty. Emps.' Ret. Sys. v. Dimon*, 629 F. App'x 14, 16 (2d Cir. 2015); *F5 Capital v. Pappas*, 856 F.3d 61, 83 (2d Cir. 2017); *In re JPMorgan Chase & Co. Derivative Litig.*, No. 12 CIV. 03878 GBD, 2014 WL 1297824, at *5 (S.D.N.Y. Mar. 31, 2014) (rejecting wholesale imputation allegations and stating: "Plaintiff's conclusory allegations are insufficient.") (citing *Guttman*, 823 A.2d at 499 (courts should not "accept cursory contentions of wrongdoing as a substitute for the pleading of particularized facts.")).

New GM, by hiring Old GM employees, acquired *all* of the knowledge about Old GM vehicles that *any* Old GM employees ever had.  The fact that Reichwaldt alleges wholesale imputation in a complaint does not automatically elevate those allegations to any status that is entitled to deference.

The imputation doctrine does not, by itself, allow Reichwaldt to assert an independent claim. Knowledge without a legal duty does not create a claim. *Holland*, 2015 WL 7196197, at *4.  Reichwaldt is essentially attempting to transfer an Old GM obligation under law, based on Old GM conduct, to New GM, which is contrary to the "free and clear" aspects of the Sale Order.   In this regard, Reichwaldt is asserting a successor liability claim against New GM dressed up to look like something else.  Judge Gerber cautioned other courts dealing with this issue to be wary of this improper litigation tactic.  *See In re Motors Liquidation Co.*, 529 B.R. 510, 528 (Bankr. S.D.N.Y. 2015), *aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017) ("any court analyzing claims that are supposedly against New GM only must be extraordinarily careful to ensure that they are not in substance successor liability claims, 'dressed up to look like something else'" (*quoting Burton v. Chrysler Grp., LLC (In re Old Carco LLC)*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013)).

Reichwaldt's argument is also contrary to this Court's July 10, 2017 ruling in *Pitterman*. There, this Court, in exercising its gate-keeping function, specifically held that New GM's motion to enforce was granted to the extent that *Pitterman* was relying on a 2006 Technical Service Bulletin to support an alleged "failure to warn" independent claim.  The Court precluded *Pitterman* "from relying on conduct of Old GM in support of their alleged Independent Claims

13

against New GM[.]"[21]  The Court stated:  "I don't think I should permit you to rely on Paragraph

25 [relating to the 2006 Technical Services Bulletin] in support of an independent claim against

New GM."  June 29, 2017 Hr'g Tr., at 4:3-5.[22]  In response, *Pitterman* argued that "New GM,

after 2009, was aware of its existence."  *Id.* at 4:13.  The Court ruled:

> Mr. Hirsch, I am precluding you from relying on the allegation in Paragraph 25 in support of a failure to warn independent claim against New GM. You can call New GM witnesses and show that they had knowledge of this alleged defect. That's going to be up to Judge Hall. Okay?
>
> But what I'm not going to do is -- this is exactly what I wrote the opinion to prevent you from doing, to bootstrap your independent -- your purported independent claim by relying on conduct of Old GM. If you have witnesses from New GM who are going to testify at your trial that they had knowledge of this alleged defect, you know, Judge Hall will decide whether that testimony is admissible or not, but you're not -- I'm not permitting you -- you're attempting to do exactly what I precluded you from doing. Okay?

*Id.*, at 5:5-18; *see also id.* at 6:11-13 ("What I am precluding is the plaintiff from relying on

conduct of Old GM in support of its alleged independent claim against New GM.").  The July

2017 Order entered in connection with the *Pitterman* motion to enforce held, in relevant part:

> ORDERED that the Motion is granted with respect to Paragraph 25 of the Amended Complaint to the extent that the Pitterman Plaintiffs are hereby enjoined and may not use the 2006 Technical Service Bulletin to support their alleged Independent Claims against New GM; and it is further
>
> ORDERED that the Pitterman Plaintiffs are precluded from relying on conduct of Old GM in support of their alleged Independent Claims against New GM . . . .

July 2017 Order, at 1-2.

Reichwaldt similarly should be precluded from improperly relying on Old GM conduct to

establish an independent claim.

---

[21]  *Order Granting In Part And Denying In Part General Motors LLC's Motion To Enforce The Ruling In The Bankruptcy Court's June 7, 2017 Opinion With Respect To The Pitterman Plaintiffs*, dated July 10, 2017 [ECF No. 13991] ("**July 2017 Order**"), at 1-2.

[22]  A copy of the June 29, 2017 Hearing Transcript is attached hereto as **Exhibit "C."**

14

**C.**    **An Independent Claim Must Be Based on Post-Sale Conduct or a Post-Sale Relationship With New GM, But Reichwaldt Alleges Neither**

Moreover, Reichwaldt alleges no new and independent post-363 Sale relationship between the Old GM vehicle owner and New GM.  This is not surprising because the Old GM vehicle was, according to Reichwaldt, last manufactured in 1987—20 years before the 363 Sale.[23]    The omission of any type of relationship is significant because it illustrates that Reichwaldt has not alleged a permissible independent claim.

To somehow create an independent claim in this context, Reichwaldt identifies three allegations that purportedly establish an "independent claim" based on New GM's conduct.  *See* Objection, at 22.  Of the three allegations listed, two are directly tied to the 363 Sale (*i.e.*, that New GM purchased assets of Old GM, including its books and records, and New GM employed Old GM employees after the 363 Sale).  These allegations do not reflect New GM's post-Sale conduct, as required by law.  Instead, they are provisions of the Sale Agreement and constitute improper successor liability allegations.

The third allegation referenced by Reichwaldt is that "New GM profited from entering into service maintenance and repair relationships with purchasers of Old GM products, and from manufacturing and selling parts and accessories for Old GM products (including the subject 1984 CK truck)[.]"  *See* Objection, at 22.  This general allegation does not relate to New GM's alleged wrongful post-363 Sale conduct, which is the touchstone for an independent claim.  It is totally disconnected from any conduct that could support a cause of action against New GM.  *First,* Reichwaldt does not allege that New GM provided any parts or accessories to the Old GM

---

[23]    *See* Proposed Reichwaldt Amended Complaint, ¶ 1 ("GM Corp. sold these CK pickups for 15 years, from 1973 to 1987.").

vehicle owner.[24]  *Second*, this allegation appears to be tied to the glove-box warranty for the Old

GM vehicle, which expired in the 1980s.  *Third*, this allegation has nothing to do with the issues

involved in the Reichwaldt lawsuit which pertain to an alleged design defect.  In short, this

allegation does not establish that New GM incurred any new duty to the owner of the Old GM

vehicle or that New GM's alleged post-363 Sale conduct was wrongful.

> **D.     As Reichwaldt's Independent Claim Should Be Stricken, So Too Should Her Request for Punitive Damages Based on Such Claim**

The only possible way to assert punitive damages against New GM in connection with a

post-363 Sale accident involving an Old GM vehicle is through a viable independent claim based

solely on alleged wrongful post-Sale New GM conduct.  Since Reichwaldt has not done so, her

punitive damage request fails.

> **III.    The Proposed Reichwaldt Amended Complaint Improperly Asserts that New GM is the Successor to Old GM**

The Proposed Reichwaldt Amended Complaint added ***new*** allegations that violate other

rulings in the December 2015 Judgment (rulings that Reichwaldt's counsel was clearly aware

of).  Specifically, paragraph 16 of the December 2015 Judgment provides:

> Allegations that speak of New GM as the successor of Old GM (e.g. allegations that refer to New GM as the "successor of," a "mere continuation of," or a "de facto successor of" of Old GM) are proscribed by the Sale Order, April Decision and June Judgment . . . .

*See also In re Motors Liquidation Co.*, 549 B.R. 607, 612–13 (Bankr. S.D.N.Y. 2016) ("New

GM is *not* a successor in interest to General Motors Corporation ('Old GM'); it is a completely

separate legal entity from Old GM." (emphasis in original)).

---

[24]   This is a new allegation that was not in the Reichwaldt Complaint.  New GM's letter to Reichwaldt regarding infirmities in the Reichwaldt Complaint was not an invitation for her to amend the complaint to add new allegations. New GM reserves it rights to argue that such new allegations are improper and should be stricken.

Despite the clear and unambiguous ruling in the December 2015 Judgment, the Proposed

Reichwaldt Amended Complaint inexplicitly ***added*** the following new allegations:

- "GM LLC, which inherited the specific knowledge of ***its predecessor GM Corp.*** . . . ." Proposed Reichwaldt Amended Complaint, ¶ 2 (emphasis added);

- "Following an asset sale under section 363 of the Bankruptcy Code, ***GM LLC, the company that emerged from the bankruptcy*** . . . ." *Id.*, ¶ 28 (emphasis added); and

- "GM LLC's failure to warn citizens about the dangers of the CK side-mounted gas tanks, while instead professing (***as its predecessor*** GM Corp. did for decades) . . . ." *Id.* ¶ 87 (emphasis added).

These allegations are prohibited by the December 2015 Judgment, and they should be stricken

from the Proposed Reichwaldt Amended Complaint.

The other infirmities cited in the Reichwaldt Motion to Enforce would be resolved by the

changes made in the Proposed Reichwaldt Amended Complaint.[25] Reichwaldt should be

compelled to make those changes and to correct the other Sale Order-related infirmities before

continuing with litigation in the Georgia Court.[26]

## IV.    New GM Timely Raised Bankruptcy Issues

Reichwaldt contends that bankruptcy issues were not raised in the proceedings in the

Georgia Court until the discovery dispute that precipitated the New GM July 14 Letter.  *See*

Objection, at 4.  This is incorrect and again reflects a lack of appreciation for the Bankruptcy

Court's process.  New GM's answer was filed with the Georgia Court on June 29, 2016,[27] less

than six weeks after the commencement of the action and less than a week after removal from

the Georgia state court.  The answer specifically contains an affirmative defense based on the

---

[25]    Reichwaldt did correct references to the generic "GM" by differentiating between Old GM and New GM.

[26]    New GM does not consent to any other changes in the Proposed Reichwaldt Amended Complaint.

[27]    *See Defendant's Answer And Affirmative Defenses To Plaintiff's Complaint* ("**New GM Answer**"), filed by New GM in the Georgia Court on June 29, 2016, a copy of which is attached hereto as **Exhibit "D."**

Bankruptcy Court's rulings.  *See* New GM Answer, at pp. 12, 15-17, 20-21.  Reichwaldt was

therefore on notice of the bankruptcy issues in the Reichwaldt Complaint approximately a year

before the New GM July 14, 2017 Letter.

Moreover, shortly after the New GM Answer was filed, the Second Circuit's July 2016

Opinion was entered, requiring New GM, other parties and the Court to address various issues

that arose from the Opinion.  That included the 2016 Threshold Issues and the procedures for

resolving same.  As she admits, Reichwaldt was on notice of the 2016 Threshold Issues and had

the opportunity to participate in their resolution.  According to Butler Wooten, its bankruptcy

counsel (Goodwin Proctor) actively litigated these issues on behalf of Butler Wooten's other

client, but not Reichwaldt.[28]  Shortly after the July 2017 Opinion was issued, the New GM July

14 Letter was sent.  As is its practice, New GM did not seek this Court's intervention until there

was a pressing need to do so; that came in July 2017 with respect to Reichwaldt in the form of a

significant discovery dispute.

## V.    The Reichwaldt Lawsuit Should Be Stayed Until All Infirmities Are Addressed

Despite clear rulings from this Court that plaintiffs, like Reichwaldt, (i) cannot seek

punitive damages from New GM based on Old GM conduct, (ii) cannot assert independent

claims against New GM based on Old GM conduct, and (iii) cannot allege that New GM is the

successor to Old GM, Reichwaldt is seeking to disregard these rulings and press forward in the

trial court as if these controlling decisions do not exist.  The rule is "well-established" that

"'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey

that decree until it is modified or reversed, even if they have proper grounds to object to the

order.'"  *Celotex Corp. v. Edwards* 514 U.S. 300, 306 (1995).  Continuation of the Reichwaldt

---

[28]    This contrived distinction was never made clear to New GM or this Court at the time the 2016 Threshold Issues
were litigated.

Lawsuit without regard to and in violation of existing and recent Bankruptcy Court rulings constitutes a violation of the Sale Order, and the other Bankruptcy Court rulings.  Since Reichwaldt refuses to recognize the previously-issued injunctions, apparently the only way to compel compliance with the Sale Order is to expressly stay Reichwaldt from proceeding with her lawsuit until all bankruptcy-related issues are addressed and resolved.

## CONCLUSION

For all of the foregoing reasons, New GM respectfully requests that this Court enter the proposed order attached hereto as **Exhibit "E"** (revised to reflect events that occurred since the Reichwaldt Motion to Enforce was filed) granting the relief sought in the Reichwaldt Motion to Enforce, and for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
　　　August 25, 2017

Respectfully submitted,

　　　*/s/ Arthur Steinberg*
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:　(212) 556-2100
Facsimile:　(212) 556-2222

-and-

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:　(312) 862-2000
Facsimile:　(312) 862-2200

*Attorneys for General Motors LLC*