**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
:
In re:                                              :    Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,   :    Case No.: 09-50026 (MG)
      f/k/a General Motors Corp., et al.,    :
:
                             Debtors.    :    (Jointly Administered)
-------------------------------------------------------------X

### DECLARATION OF EDWARD S. WEISFELNER IN SUPPORT OF THE MOTION TO ENFORCE THE SETTLEMENT AGREEMENT BY AND AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST

I, Edward S. Weisfelner, hereby declare as follows:

1.  I am a partner with the law firm of Brown Rudnick LLP, Designated Counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs in the Bankruptcy Court.

2.  I respectfully submit this declaration in support of the *Motion to Enforce the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust* (the "**Motion**"), filed contemporaneously herewith.[1] This declaration is based on my own personal knowledge.

3.  Well before negotiations over the Settlement began in earnest, the GUC Trust raised concerns about proceeding to seek approval of any agreement in the Bankruptcy Court without certifying a settlement class for the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs. Counsel for the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs took the position that such certification was not necessary, and we made this position known to the GUC Trust and the Participating Unitholders. The GUC Trust and the Participating Unitholders both continued to negotiate the Settlement despite knowing and ultimately conceding this position.

4.  The parties began their negotiation over the Settlement in earnest in June 2017. The parties exchanged numerous red-lined drafts in June and reached agreement on certain core

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

1

terms—such as a settlement payment of 15 million dollars by the GUC Trust and the agreement to seek the Claim Estimate Order—by the beginning of July. At that time, the parties worked towards finalizing the Settlement and related documentation.

5. By the beginning of August, the Settlement documentation was in substantially final form. Counsel for the GUC Trust characterized many of the remaining issues as "minor" or "clean-up" in a communication of August 3. A true and correct copy of this August 3 e-mail communication is attached hereto as **Exhibit A**.

6. Perhaps the most negotiated point in early August related to notice and notice costs. To resolve these points, the parties worked with a notice provider, Cameron R. Azari, Esq, the Director of Legal Notice for Hilsoft Notifications, which is a business unit of Epiq Systems Class Action and Claims Solutions. Mr. Azari issued a declaration in support of the notice plan for the settlement. A true and correct copy of the Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of General Motors Bankruptcy Settlement Notice Program is attached hereto as **Exhibit B**.

7. With the full knowledge and consent of the GUC Trust, on August 9, 2017, Daniel Golden, counsel to the Participating Unitholders, and I called Arthur Steinberg, counsel to New GM, to inform New GM of the plan to present settlement papers to this Court and seek a Claims Estimate Order and determine New GM's availability for such a conference. By August 14, the parties had secured a conference with this Court for August 17.

8. On August 11, certain of the Signatory Plaintiffs previewed certain of the terms of the Settlement in open court at a status conference before Judge Furman in the MDL. A true and correct copy of excerpts of the relevant portions of the transcript of the MDL status conference is attached hereto as **Exhibit C**.

9.  Following the conclusion of the MDL status conference, the parties had an "all-hands" page-by-page review call to flag and resolve any final word-smith issues. This meeting had been set by all parties in response to a request made by the Participating Unitholders on August 9, 2017 to "schedule an all hands call . . . to finalize all of the settlement documentation and motions." A true and correct copy of this August 9 e-mail communication is attached hereto as **Exhibit D**.

10. Notably, on the final page-turn call, the GUC Trust conveyed that they were done with comments to the documents and expressed no objection to the Signatory Plaintiffs' preview of the settlement to Judge Furman.

11. Brown Rudnick disseminated final versions of the main documents that same afternoon, and, less than 24 hours later, on August 12, the GUC Trust's counsel confirmed that "[f]rom the GUC Trust perspective, all of the documents sent over by Howie [Steel] (subject to one item we are discussing with Akin in the Settlement Agreement) are fine." This email contained no reservation that the counsel's comments were subject to client review or approval. A true and correct copy of this August 12 e-mail communication is attached hereto as **Exhibit E**.

12. Counsel confirmed that resolution of the one item occurred on the morning of August 14. That same day, counsel for the GUC Trust stated that "[w]e are waiting for final approval from client, but unlikely to come tonight. You are, however, authorized to send current versions to New GM this evening." A true and correct copy of this August 14 e-mail communication is attached hereto as **Exhibit F**.

13. On August 14, at 9:14 p.m., Brown Rudnick sent the final versions of the Settlement documents to counsel for New GM, cc'ing counsel for the GUC Trust. A true and correct copy of this August 14 e-mail communication is attached hereto as **Exhibit G**.

3

14. The Settlement documents are attached hereto in the form in which they were shared with New GM on August 14, 2017: (a) the Settlement Agreement, attached hereto as **Exhibit H**; (b) a Settlement Order, attached hereto as **Exhibit I**; (c) a Claims Estimate Order, attached hereto as **Exhibit J**; (d) a motion to approve the settlement and estimate the aggregate allowed unsecured claims against the Old GM estate pursuant to Bankruptcy Rule 9019, attached hereto as **Exhibit K**; (e) supporting declarations from Wilmington Trust Company as administrator of the GUC Trust and counsel to the parties, attached hereto as **Exhibits L-O**; (f) a Notice Procedures Motion, attached hereto as **Exhibit P**; (f) short- and long-form notice to Plaintiffs, and notice to Unitholders; attached hereto as **Exhibits Q-S**; and (g) a finalized declaration from the notice provider, attached hereto as **Exhibit B**. On August 16, 2017, these Settlement documents were submitted to the Bankruptcy Court as attachments to the *Letter to Judge Glenn in Response to GM's Letter Update on Matters Related to the Late Claim Motions and the Chambers Conference Scheduled for August 17, 2017 at 3:00 p.m.*, dated Aug. 16, 2017 [ECF No. 14061].

15. At no point during the finalization of the Settlement documents in August 2017 did the GUC Trust or its counsel indicate that the GUC Trust's approval of the Settlement would not be final until the Settlement Agreement had been signed, or that the GUC Trust would not approve the Settlement unless the Signatory Plaintiffs sought certification of a settlement class as part of the process of seeking approval of the Settlement from the Court.

16. A true and correct copy of excerpts of the relevant portions of the transcript of the August 17, 2017 status conference is attached hereto as **Exhibit T**.

I declare under penalty of perjury that to the best of my knowledge, information and belief, the foregoing is true and correct.

4

Dated: September 11, 2017
      New York, New York

/s/ Edward S. Weisfelner
Edward S. Weisfelner