# **EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
| | |
|---|---|
| IN RE: : | Chapter 11 |
| : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, : | No. 09-50026 (MG) |
| f/k/a GENERAL MOTORS CORP., *et al.*, : | |
| : | (Jointly Administered) |
| Debtors. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DECLARATION OF CAMERON R. AZARI, ESQ.,**
**ON IMPLEMENTATION AND ADEQUACY OF GENERAL**
**MOTORS BANKRUPTCY SETTLEMENT NOTICE PROGRAM**

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1. My name is Cameron R. Azari, Esq. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3. I am the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"); a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans. Hilsoft is a business unit of Epiq Systems Class Action and Claims Solutions ("ECA").

4. Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history. With experience in more than 300 cases, notices prepared by Hilsoft have appeared in 53 languages with distribution in almost every country, territory and dependency in the world. Judges, including in published decisions, have recognized and approved numerous notice plans developed by Hilsoft, which decisions have always withstood collateral reviews by other courts and appellate challenges.

1

**EXPERIENCE RELEVANT TO THIS CASE**

5. I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in many of the largest and most significant cases, including: *In re Takata Airbag Products Liability Litigation,* Case No. 1:15-md-02599-FAM (Settlements with Toyota, BMW, Mazda and Subaru) (Comprehensive notice effort in the Takata airbag litigation with individual mailed notice to over 19.5 million vehicle owners/lessees and nationwide media campaign including radio, consumer print and online banner advertisements. Final approval pending); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.) (Comprehensive notice program within the Volkswagen Emissions Litigation that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email. A targeted internet campaign further enhanced the notice effort); *In re: Energy Future Holdings Corp., et. al. (Asbestos Claims Bar Date Notice),* 14-10979 (CSS) (Bankr. D. Del.) (Large asbestos bar date notice effort, which included individual notice, national consumer publications and newspapers, hundreds of local newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience); *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL 1720 (E.D.N.Y.) ($7.2 billion settlement reached with Visa and MasterCard. The intensive notice program involved over 19.8 million direct mail notices together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications, as well as online banner notices, which generated more than 770 million adult impressions and a case website in eight languages); *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179 (E.D. La.) (Dual landmark settlement notice

programs to separate "Economic and Property Damages" and "Medical Benefits" settlement classes. Notice effort included over 7,900 television spots, over 5,200 radio spots, and over 5,400 print insertions and reached over 95% of Gulf Coast residents); *In Re American Express Anti-Steering Rules Antitrust Litigation (II)* ("Italian Colors"), MDL No. 2221 (E.D.N.Y.) (Momentous injunctive settlement regarding merchant payment card processing. Notice program provided individual notice to more than 3.8 million merchants as well as coverage in national and local business publications, retail trade publications and placement in the largest circulation newspaper in each of the U.S. territories and possessions); and *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.) (Multiple bank settlements between 2010-2016 involving direct mail and email to millions of class members and publication in relevant local newspapers. Representative banks include Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M & I Bank, Community Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, Bancorp, Whitney Bank, Associated Bank, and Susquehanna Bank).

6. Numerous other court opinions and comments as to our testimony, and opinions on the adequacy of our notice efforts, are included in Hilsoft's curriculum vitae included as **Attachment 1**.

7. In forming my expert opinion, I and my staff drew from our in-depth class action case experience, as well as our educational and related work experiences. I am an active member of the Oregon State Bar, receiving my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College. I have served as the Director of Legal Notice for Hilsoft since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs since that time. Prior to

assuming my current role with Hilsoft, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising). Overall, I have over 17 years of experience in the design and implementation of legal notification and claims administration programs and have been personally involved in well over one hundred successful notice programs.

8. I have been directly and personally responsible for designing all of the notice planning here for notice to Plaintiffs, including analysis of the individual notice options and the media audience data and determining the most effective mixture of media required to reach the greatest practicable number of included parties. The facts in this declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Hilsoft and ECA.

9. I have been involved in reviewing or drafting the various forms of Notice described below. Each form is noticeable and written in plain language.

## **OVERVIEW**

10. This declaration will describe the Settlement Notice Plan ("Notice Plan" or "Plan") and notices (the "Notice" or "Notices") designed by Hilsoft Notifications and proposed here for providing notice of the Settlement in *In Re: Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.,* Case No. 09-50026 (MG) in the United States Bankruptcy Court for the Southern District of New York to Plaintiffs.

11. Hilsoft has reviewed the lists of vehicles included in the Settlement. For the Notice Plan, data may need to be obtained from HIS Automotive, driven by Polk ("Polk") and New GM. All lists will be combined and de-duplicated in order to find the most likely current address for each Plaintiff. The individual notice effort will be supplemented by a targeted

4

media campaign. The media potion of the Notice Plan outlined below is targeted to owners and lessees of the makes and models included in the Settlement.

12. In my opinion, the proposed Notice Plan is designed to reach the greatest practicable number of Plaintiffs through the use of individual notice and paid and earned media. In my opinion, the Notice Plan is comprehensive, reasonable and satisfies the requirements of due process, including its "desire to actually inform" requirement.[1]

13. Notice shall be disseminated pursuant to the plan and details set forth below and referred to as the "Notice Plan." The Notice Plan was designed to provide notice to the following included group of Plaintiffs:

A. All persons in the United States who, as of July 10, 2009, owned or leased a vehicle manufactured by GM included in the following recalls:

(1) Delta Ignition Switch Vehicles included in Recall No. 14v047: 2005-2010: Chevy Cobalt, 2006-2011 Chevy HHR, 2007-2010 Pontiac G5, 2007-2010 Saturn Sky, 2003-2007 Saturn ION, and 2006-2010 Pontiac Solstice;

(2) Low Torque Ignition Switch Vehicles, which are included in Recall Nos. 14v355, 14v394, and 14v400: 2005-2009: Buick Lacrosse, 2006-2014 Chevrolet Impala, 2000-2005 Cadillac Deville, 2006-2011 Cadillac DTS, 2006-2011 Buick Lucerne, and 2006-2008 Chevrolet Monte Carlo; 2003-2014 Cadillac CTS and the 2004-2006 Cadillac SRX; and 1997-2005 Chevrolet Malibu, 2000-2005 Chevrolet Impala, 2000-2005 Chevrolet Monte Carlo, 2000-2005 Pontiac Grand

---

[1] "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

      Am, 2004-2008 Pontiac Grand Prix, 1998-2002 Oldsmobile Intrigue, and 1999-2004 Oldsmobile Alero;

      **(3)** Other Vehicles with defective ignition switches in Recall Nos. 14V-346 and 14V-540: 2010-2014 Chevrolet Camaro, 2011-2013 Chevrolet Caprice, and 2008-2009 Pontiac G8;

      **(4)** Side Airbag Defect Vehicles included in Recall No. 14v118: 2008-2013 Buick Enclave, 2009-2013 Chevrolet Traverse, 2008-2013 GMC Acadia, and 2008-2010 Saturn Outlook; and

      **(5)** Power Steering Defect Vehicles included in Recall No. 14v153: 2004-2006 and 2008-2009 Chevrolet Malibu, 2004-2006 Chevrolet Malibu Maxx, 2009-2010 Chevrolet HHR, 2010 Chevrolet Cobalt, 2005-2006 and 2008-2009 Pontiac G6, 2004-2007 Saturn Ion, and 2008-2009 Saturn Aura.

B. Plaintiffs asserting personal injury or wrongful death claims based on or arising from an accident involving a vehicle manufactured and sold by Old GM that occurred prior to July 10, 2009 who have (i) filed a lawsuit against New GM as of the date of the Settlement Agreement, or (ii) filed or joined a motion for authorization to file late claims against the GUC Trust.

## NOTICE PLAN
*Individual Notice – Direct Mail*

14.    A Direct Mail Notice tailored to the potential owners/lessees of the included Old GM vehicles will be sent via First Class mail. Address updating (both prior to mailing and on undeliverable pieces) and re-mailing protocols will meet or exceed those used in other complex litigation settlements.

6

15. I understand that a comprehensive list of potential Plaintiffs exists – consisting of the current and former owners and lessees of the Old GM vehicles included in the Settlement. The database will be acquired from Polk and New GM and, if available, supplemented by other sources. All data may be de-duplicated and updated in order to find the most likely current address for each current and former vehicle owner/lessee. This data will be used to provide individual notice to virtually all Plaintiffs.

16. The mailed notice will consist of a large format, 2-image postcard notice (the "Direct Mail Notice") that clearly and concisely summarizes the Settlement. The Direct Mail Notice will direct the recipients to a website dedicated specifically to the Settlement where they can access additional information and learn about how to participate. The Direct Mail Notices will be sent by United States Postal Service ("USPS") first class mail.

17. Prior to mailing, all mailing addresses provided will be checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS").[2] Any addresses that are returned by the NCOA database as invalid will be updated through a third-party address search service. In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

18. Direct Mail Notices returned as undeliverable will be re-mailed to any new address available through postal service information, for example, to the address provided by the postal

---

[2] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

7

service on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the postal service returns the piece with the address indicated, or to better addresses that may be found using a third-party lookup service ("ALLFIND", maintained by LexisNexis). Upon successfully locating better addresses, Notices will be promptly re-mailed.

19. Additionally, a Long Form Notice will be mailed to all persons who request one via the toll-free phone number or by mail. The Long Form Notices will also be available for download or printing at the website (in both English and Spanish). Copies of the proposed Direct Mail Notice and Long Form Notice are included with the materials filed by the Parties.

*Paid Media*

20. Due to the comprehensive individual notice effort described above only moderate supplemental paid media will be provided for the Settlement. The media selected is designed to both notify Plaintiffs who may not see the Direct Mail Notice and also to support and remind Plaintiffs to act if they so choose.

21. The Notice Plan will include digital banner advertisements targeted specifically to owners and lessees of the vehicle makes and models included in the Settlement along with online video advertisements targeted to adults 18+. The Banner and Video Notice will provide Plaintiffs with additional opportunities to be apprised of the Settlement and their rights under it. Anyone who sees the Banner or Video Notice can click on it and instantly be routed to the Settlement website for detailed information about the Settlement.

22. The targeted internet campaign will include banner notices measuring 300x250 pixels, 728x90 pixels, and 320x50 pixels purchased through the *Conversant Ad Network*, which represents thousands of digital properties – including inventory on both desktop and mobile

8

devices – across all major content categories. Banner notices would be purchased through two hyper-targeted strategies and run for a 45-day period of time.

23. First, banner notices will be targeted using a "list activation" strategy. This is accomplished by matching the actual names and physical/email addresses of known Plaintiffs with current consumer profiles. This strategy ensures individuals receiving direct notice are also provided reminder messaging online via banner ads.

24. Second, banner notices will be targeted using household-level automotive data. This information will include purchasers/owners of specific vehicles makes, models, and years to which banner notices will then be served. While this will be partially duplicative of the first strategy, this group of individuals would also include potential former owners and anyone for which an address is unknown.

25. The online video advertisements include pre-roll video ads that will be viewable on *YouTube* and other sites with *YouTube* embedded videos. The video ads will appear prior to the viewer's main video. 15-second and 30-second video ads will be purchased and targeted to adults nationwide.

*Internet Sponsored Search Listings*

26. To facilitate locating the case website, sponsored search listings will be acquired on the three most highly-visited internet search engines: *Google*, *Yahoo!* and *Bing*. When search engine visitors search on common keyword combinations such as "GM Car Settlement," "General Motors Settlement," or "GM Ignition Settlement," the sponsored search listing will generally be displayed at the top of the page prior to the search results or in the upper right hand column.

9

27. The Sponsored Search Listings will be provided to search engine visitors across the United States, and will assist Plaintiffs in finding and accessing the Case Website.

*Informational Release*

28. To build additional reach and extend exposures, a party-neutral Informational Release will be issued to approximately 5,000 general media (print and broadcast) outlets and 5,400 online databases and websites throughout the United States. The Informational Release will serve a valuable role by providing additional notice exposures beyond that which will be provided by the paid media. There is no guarantee that any news stories will result, but if they do, potential Plaintiffs will have additional opportunities to learn that their rights are at stake in credible news media, adding to their understanding. The Informational Release will include the toll free number and Case Website address.

*Case Website, Toll-free Telephone Number and Postal Mailing Address*

29. A dedicated website will be created for the Settlement. Plaintiffs will be able to obtain detailed information about the case and review documents including the Long Form Notices (in English and Spanish), Settlement Agreement, Settlement Order, and answers to frequently asked questions (FAQs) and any other documents the Court may require. Once the allocation plan is determined it will be posted prominently on the Settlement Website. If Plaintiffs will need to file a claim, the website may be configured to allow filing online. Any claim forms would also be available to download and print for filing via mail.

30. The Case Website address will be displayed prominently on all notice documents. The Banner Notices will link directly to the Case Website.

31. A toll-free phone number will be established to allow Plaintiffs to call for additional information, listen to answers to FAQs and request that a Long Form Notice be

mailed to them. Live operators will be available as needed. The toll-free number will be prominently displayed in the Notice documents as appropriate.

32.  A post office box will also be used for the Settlement, allowing Plaintiffs to contact the claims administrator by mail with any specific requests or questions.

## **PLAIN LANGUAGE NOTICE DESIGN**

33.  The proposed Notices are designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Plaintiffs. The Notices contain substantial, albeit easy-to-read, summaries of all of the key information about Plaintiffs' rights and options to encourage readership and comprehension.

34.  The Direct Mail Notice features a prominent headline and is clearly identified as a notice from the Bankruptcy Court. It includes a color logo from the Court to add credibility to the notice. The postcard is printed in a larger 8 by 5.5 inch size on heavier postcard stock. These design elements alert recipients and readers that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice.

35.  The Long Form Notices provide substantial information to Plaintiffs. It begins with a summary section, which provides a concise overview of important information about the Settlements. A table of contents, categorized into logical sections, helps to organize the information, while a question and answer format makes it easy to find answers to common questions by breaking the information into simple headings.

36.  The Direct Mail Notices and the Long Form Notices will be available in English and Spanish at the website.

11

## **CONCLUSION**

37. In complex litigation notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice. In this matter we are operating under Federal Rules of Bankruptcy Procedure 2002 and 9008. The general premise set forth in Rule 2002 is that notice must be provided by mail. We are in full compliance with that here. The supplemental media plan is in compliance with Rule 9008.

38. The Notice Plan described above is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action."[3] The Notice Plan schedule will afford enough time to provide full and proper notice to Plaintiffs before the objection deadline.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 14th, 2017.

_____
Cameron R. Azari, Esq.

© 2017 Hilsoft Notifications

---

[3] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).