# **<u>EXHIBIT C</u>**

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  IN RE:  GENERAL MOTORS LLC
    IGNITION SWITCH LITIGATION,
 4
                                            14 MD 2543 (JMF)
 5

 6  ------------------------------x
                                            New York, N.Y.
 7                                          August 11, 2017
                                            9:00 a.m.
 8
    Before:
 9
                    HON. JESSE M. FURMAN,
10
                                            District Judge
11
                         APPEARANCES
12

13  LIEFF CABRASER HEIMANN AND BERNSTEIN LLP
    BY:  ELIZABETH JOAN CABRASER
14            -AND-
    HAGENS BERMAN SOBOL SHAPIRO LLP (SEATTLE)
15  BY:  STEVE W. BERMAN
              -AND-
16  HILLIARD MUNOZ GONZALES LLP
    BY:  ROBERT HILLIARD
17            -AND-
    BROWN RUDNICK
18  BY:  HOWARD STEEL
         Attorneys for Plaintiffs
19
    KIRKLAND & ELLIS LLP
20  BY:  RICHARD CARTIER GODFREY
         ROBERT C. BROCK
21       ANDREW B. BLOOMER
         ALLAN PIXTON
22            -AND-
    KING & SPALDING
23  BY:  ARTHUR J. STEINBERG
         Attorneys for Defendant General Motors L.L.C.
24

25
```

1    want to give yourselves a little more time on some of the

2    things, that's fine with me.  If you have any proposed

3    modifications, why don't you talk about them to each other, and

4    we'll go from there.

5              Next is supplemental briefing on successor liability.

6    Sorry to give you more briefing.  I'm sorry to give myself more

7    briefs to read.  As you can see, I thought it was appropriate

8    for a couple reasons.

9              Without intimating whether I agree with the

10   plaintiffs' characterization of New GM's proposal as a fishing

11   tactic or not, I am inclined to agree with plaintiffs that it's

12   unnecessary to proceed in the manner that GM has proposed and

13   likely only to result in more delay, given the arguments made

14   by GM thus far, and they're summarized a bit in the agenda

15   letter but the portion attributable to the plaintiffs, but

16   certainly the arguments that have been made to me thus far.

17             I don't quite understand why we would need to proceed

18   in that manner and why GM couldn't make the arguments that it

19   thinks are to be made based on the information that it

20   currently has.

21             I think it would make more sense to stick with the

22   current plan, which is simultaneous briefing by August 24 with

23   the understanding, perhaps, or the caveat that New GM or the

24   plaintiffs, for that matter, could always seek leave to file a

25   supplemental brief, that is, supplemental supplemental brief.

09-50026-mg Doc 14093-3    Filed 09/11/17    Entered 09/11/17 18:46:54    Exhibit C
Excerpts of August 11    2017 MDL Status Conference Transcript    Pg 4 of 13

37

1          If there is something in the declarations that are
2  filed in the first instance that changes the situation in some
3  material way, I think that enables us to stick with the current
4  schedule but allows GM, if it learns something from the factual
5  declarations that are filed that it changes things in some
6  meaningful way, it gives New GM an opportunity to tell me what
7  that is.  I would think that that would be a better way to
8  proceed.  That's what I would propose.
9          Thoughts.  No thoughts?
10         MR. GODFREY:  I have thoughts.  I thought Mr. Berman
11 was going to say something.
12         THE COURT:  It looks like he is.
13         MR. BERMAN:  I am.  On Wednesday we informed General
14 Motors that we plan on presenting papers in the bankruptcy
15 court next week, perhaps as early as Tuesday, that would ask
16 the bankruptcy court to issue a claims estimation order
17 pursuant to the sale agreement.
18         And under the sale agreement, your Honor, the Guc
19 Trust has the authority to go to the bankruptcy court and to
20 compromise claims.  In the event the Guc Trust makes a
21 determination that claims exceed $35,000,000, to ask the Court
22 to issue an estimation order that would require New GM to issue
23 stock that would be put into an account for the benefit of,
24 actually, our class.
25         And pursuant to that estimation order, we're going to

ask the bankruptcy court to issue that order which would require GM to put up stock that's worth roughly a little over $1,000,000,000.

THE COURT: Correct me if my understanding of this is wrong. I take it this is the so-called "accordion feature"; that essentially the estimation order would trigger the accordion feature?

MR. BERMAN: That's correct.

THE COURT: This might be what Mr. Godfrey was fearing would be the --

MR. BERMAN: Yes. We gave GM a heads-up, as I said, this week. I don't think that this changes your briefing idea because the fact of the matter is that you recognize the positions New GM has taken with respect to successor liability. We're not going to have a resolution of this proposed settlement. I suspect that GM is not going to just quietly agree to issue $1,000,000,000 worth of stock.

THE COURT: I'm pretty confident in sharing that prediction.

MR. BERMAN: I'm also pretty confident that the sale agreement actually gives GM no rights to object, but we'll fight that out.

THE COURT: I intimate no view on that.

MR. BERMAN: So I think that we should continue with the briefing, but I wanted to give the Court a heads-up that

1   there will be some new facts on the table next week.

2           THE COURT:  I appreciate that heads-up.  I think, if

3   anything -- I understand from the grumpy looks at the back

4   table that you're not happy about the accordion feature issues

5   here.  Those are not my concern, at least in the

6   first instance.

7           I think to the extent that these implicate me, that

8   suggests to me that you'll have the information before the

9   deadline that I've imposed, and we can just proceed as I had

10  already planned.

11          Any reason otherwise, with the caveat, I suppose,

12  Mr. Godfrey and Mr. Bloomer, that if upon seeing what

13  plaintiffs file on Tuesday, you need additional time to sort

14  through what it all means, that you can always seek a

15  reasonable extension, and I would consider it.  Obviously the

16  sooner we can get briefing, the better, as far as I'm

17  concerned.

18          Your thoughts.  I don't want to hear your thoughts on

19  the accordion feature issue.  You'll have plenty of

20  opportunity, I'm sure, to air those, whether you have any right

21  to or not.  I'm sure you'll make those arguments but not to me,

22  at least in the first instance.

23          Any issues with what I have said on the successor

24  liability issues before me?

25          MR. GODFREY:  Well, both issues are going to be before

09-50026-mg Doc 14093-3    Filed 09/11/17    Entered 09/11/17 18:46:54    Exhibit C
Excerpts of August 11    2017 MDL Status Conference Transcript    Pg 7 of 13

40

1  your Honor.  Let me address the first issue, which is the
2  successor liability briefing.
3         I think, in light of what your Honor has said with
4  respect to the option of having supplemental briefing if we
5  deem it necessary, then that is acceptable to New GM.
6         With respect to the second issue though, I have some
7  points that your Honor -- this is a marker.  This is not going
8  to be in the bankruptcy court.
9         At my age, I'm seldom surprised, and I'm never
10 shocked.  But a day and a half ago, I was both surprised and
11 shocked when we were given a bare-bones description of this
12 settlement agreement.
13        This is not a compromise by the Guc Trust or the
14 plaintiffs' claims in the bankruptcy court.  This is a complete
15 surrender and sellout using GM's money to pay for a settlement
16 that was not defended against, claims that were meritless that
17 were asserted.
18        Let me express, in no uncertain terms, how we view the
19 proposal.
20        THE COURT:  Let me stop you, only because I want to
21 get out of here as I suggested.  I don't mean to cut you off
22 and not give you an opportunity to be heard on this, but I
23 don't think this is the time or place to do it.
24        You'll have plenty of opportunity in the
25 first instance, I would think in front of the bankruptcy court,

1    even if it's ultimately an issue that I'll need to resolve or

2    even some higher court.

3              Am I wrong about that?

4              MR. GODFREY:  Yes.  We are going to file a motion to

5    withdraw as soon as permissible, withdraw the reference from

6    the bankruptcy court and this court.

7              The notion that they can settle for no material money

8    from the Guc Trust -- the Guc Trust has $400,000,000 in assets.

9    They're getting $15,000,000, as we understand it, assigning

10   rights, agreeing to a $10,000,000,000 claim.  And supposedly GM

11   has no rights when they take a billion dollars of our money.

12             That is not going to stand.  We're going to withdraw

13   the reference.  We're going to bring it to the Court.  This is

14   collusive.  There are cases on point that we can refer the

15   Court to.

16             This has got all the indicia of a collusive

17   settlement.  They are awaiting a time-barred defense.  We have

18   no idea upon what basis and what expert the Guc Trust had,

19   which I doubt, by which they are not contesting $10,000,000,000

20   in claims.

21             And that is the trigger mechanism by which they claim

22   New GM has no choice but putting up a billion dollars.  That is

23   not going to happen without this Court hearing and ruling on

24   the issues.

25             We have unfairness issues.  We have the indicia of

1   collusive issues.  We have the fact that General Motors has

2   been excluded.  And you heard this morning that supposedly we

3   have no rights to even object.  I don't think that in our

4   country when someone is told to give a billion dollars to

5   someone else, we have some rights to object, including notice

6   and opportunity to be heard.

7             So, from a marker perspective, we're going to file a

8   motion.  We're going to brief the motion.  We're going to

9   attack the settlement, and it's going to be before your Honor.

10  We're going to do it as soon as we can permissibly do it.

11            THE COURT:  The marker is laid.  I'll look for the

12  motion.  The question is your arguments seem to me to be more

13  geared towards the merits of the issue than the forum in which

14  it should be litigated, at least in the first instance.

15            In proposing that the reference be withdrawn may be

16  the fact that it's a collusive agreement, if it is -- I

17  intimate no view on the matter -- is a factor to consider in

18  that analysis.

19            The question that occurs to me, thinking out loud, is

20  why you can't make those arguments to the bankruptcy court in

21  the first instance, recognizing that they may ultimately come

22  to me.

23            MR. GODFREY:  That's a good question.  Since

24  your Honor said I should keep this short, but there is an

25  answer to that.

1    THE COURT:  I trust the answer will be clear from your
2 motion.
3    MR. GODFREY:  It will be very clear, but we can talk
4 about this further in the motion.  One simple point for
5 your Honor to consider.  This is on behalf of a putative class,
6 among other things.
7    Your Honor has got the class before the court.  This
8 Court is going to decide Rule 23 issues, not the bankruptcy
9 court and not some quasi class which has the same implications.
10    This has come up before in other cases where the court
11 has said, no.  That's the MDL's court's purview we think.  So
12 there is significant overlap between the issues, both in terms
13 of the merits of the claims and the class issues and in terms
14 of notice issues that this Court has the jurisdiction over and
15 that this Court should have the primary role over.
16    So we will lay this out for the Court, but make no
17 mistake.  General Motors objects to this.  We believe that it's
18 brought an indicia of collusiveness.  Frankly, what the few
19 facts we were told are, they've got $400,000,000 in assets from
20 the Guc Trust for $15,000,000.
21    They are released from all liability for this alleged
22 $10,000,000 claim, and General Motors is supposed to put up a
23 billion dollars to make it all right.  General Motors has been
24 excluded from the settlement negotiations and had no knowledge
25 of the terms of the settlement negotiations.

```
 1              If you look at the terms of the accordion feature, we
 2   don't believe that they can do this.
 3              THE COURT:  Understood.  I will look for it.  If you
 4   want to discuss with each other a briefing schedule for that
 5   motion, you're certainly welcome to, and you can propose it to
 6   me.
 7              In the absence of that, it sounds like GM is planning
 8   to file the motion at some point soon regardless.  Unless and
 9   until I see otherwise, the local rules and default schedule
10   will apply.
11              As for the successor liability briefing, we'll stick
12   with the existing plan with the understanding that if there is
13   need for supplemental supplemental briefing, that is to say,
14   another round, then you'll let me know.
15              I want to say two notes on that.  That is not to give
16   you an opportunity to reply.  I am contemplating simultaneous
17   briefing.  So I would grant an additional round of briefs only
18   if there is something new learned from the submissions on that
19   date that changes things in some material fashion that you
20   think you need to address.  It's not an opportunity to reply to
21   the other side's arguments.
22              The second is that I'm not going to set a deadline
23   right now for that additional briefing or page limits for that
24   matter because I'm hoping and assuming that it won't be
25   necessary.
```

1        I do caution you that you're not going to have a lot
2   of time and you're not going to have a lot of pages.  If you do
3   propose another set of briefs, keep both of those in mind.
4        MR. GODFREY:  I think we understood that, your Honor.
5   At this point, I think we understand your views on supplemental
6   briefing.
7        THE COURT:  Good.
8        Let me also just say on the briefs that you will be
9   filing in the next couple weeks on this front, I would endeavor
10  to make them, as much as you can, sort of standalone briefs,
11  that is to say, on the one hand, you don't need to waste time
12  on the preliminaries, the background, etc.
13       I know what the issues are.  I have obviously
14  addressed a lot of the issues in the opinion that I handed down
15  a week or so.  You can cut to the chase and brief the issues
16  under that law, as I indicated, and address the effects, if
17  any, of the settlement with the Guc Trust.
18       Having said that, to the extent you can write it so
19  that my clerks and I don't need to keep looking back at the
20  prior set of briefs, that would be helpful for two reasons.
21       One is, as I'm going to tell you in a minute or two,
22  today is Ms. Kumar's last day with me.  Actually, last Friday
23  was.  She's actually just done me the courtesy of coming to
24  this to make things easier in transitioning.
25       She helped me on that motion and won't be around when

1  your supplemental briefs come in, which is to say that I'll
2  have another clerk without the same institutional memory and
3  background on this helping me.
4          The second is while I certainly have read all the
5  materials, it will be several months basically since I have
6  done so.  The less that I have to go back and reread things,
7  the better.  I would just ask you to keep those in mind in
8  terms of how you write those briefs.
9          MR. GODFREY:  Your Honor, I have a question on that.
10 Would it be helpful for us, if we are referring back to another
11 brief, to just attach as an exhibit the selected pages from
12 that brief?
13         THE COURT:  Yes.  I think that would be helpful
14 actually.
15         MR. GODFREY:  I think we'll do that, if that's
16 acceptable to the Court.
17         THE COURT:  I think that is.  Otherwise, leave my
18 remarks standing.  I gave you my guidance, but that would be
19 helpful, if you think it's necessary.
20         MR. GODFREY:  Thank you.
21         THE COURT:  Settlement.
22         Mr. Berman, did you have something else you wanted to
23 add?
24         MR. BERMAN:  Yes.  We've been silent at the front
25 table with respect to Mr. Godfrey's comments.