# **<u>EXHIBIT P</u>**

**HEARING DATE AND TIME: [ ], 2017 at [ ] (EST)**
**OBJECTION DEADLINE: [ ], 2017 at 4:00 p.m. (EST)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
                                    :
In re:                             :          Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,   :          Case No.: 09-50026 (MG)
      f/k/a General Motors Corp., et al.,   :
                                  :
                       Debtors.   :          (Jointly Administered)
--------------------------------------------------------------X

## MOTION FOR ORDER APPROVING NOTICE PROCEDURES WITH RESPECT TO PROPOSED SETTLEMENT BY AND AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST

The Ignition Switch Plaintiffs,[1] certain Non-Ignition Switch Plaintiffs,[2] certain Pre-Closing Accident Plaintiffs[3] (collectively, the "**Signatory Plaintiffs**") and the Motors Liquidation Company GUC Trust (the "**GUC Trust**," together with the Signatory Plaintiffs, the "**Parties**") hereby submit this *Motion for Order Approving Notice Procedures with Respect to Proposed Settlement by and Among the Signatory Plaintiffs and the GUC Trust* (the "**Motion**"). In support of this Motion, the Parties respectfully state as follows:

---

[1] The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047.

[2] The term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540, 14V-118 and 14V-153.

[3] The term "**Pre-Closing Accident Plaintiffs**" shall mean those plaintiffs asserting personal injury or wrongful death claims or persons who suffered a personal injury or wrongful death on or arising from an accident involving an Old GM vehicle that occurred prior to the closing of the Section 363 Sale. Collectively, all Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Pre-Closing Accident Plaintiffs are referred to as "**Plaintiffs**."

## PRELIMINARY STATEMENT

1.      On August [ ], 2017, after good faith, arm's-length negotiation, the Signatory

Plaintiffs and the GUC Trust entered into the Settlement Agreement.

2.      Following the Court's consideration and approval of this Motion, the Parties

intend to file and serve (in the manner contemplated by the proposed Notice Procedures herein) a

motion (the "**9019 Motion**") requesting the Court's approval of the Settlement Agreement and

Claims Estimate Order.

3.      The Settlement Agreement resolves numerous longstanding, disputed issues

including, *inter alia*:  (i) whether Plaintiffs should be granted authority to file late proofs of claim

(and whether such authority can be granted solely on due process grounds); (ii) whether

Plaintiffs' asserted claims are equitably moot; (iii) whether additional grounds exist to object to

Plaintiffs' asserted claims; and (iv) the allowable amount of the Signatory Plaintiffs' claims (if

any).

4.      Generally, under the Settlement Agreement,[4] the GUC Trust agrees to irrevocably

pay $15,000,000 (the "**Settlement Amount**") into a trust, fund or other vehicle (the "**Settlement

Fund**") for the exclusive benefit of Plaintiffs.

5.      In exchange, upon payment of the Settlement Amount, all Plaintiffs with claims

against the GUC Trust (whether asserted or unasserted, contingent, or otherwise) arising from

New GM's 2014 recalls, including those who did not execute the Settlement Agreement, are

deemed to irrevocably waive and release all claims (other than those arising under the Settlement

Agreement) against Old GM, the Old GM estate, the GUC Trust, the GUC Trust Administrator,

---

[4]    This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the
Settlement Agreement.  To the extent that there are any inconsistencies between the description of the
Settlement Agreement contained in the Motion and the terms and provisions of the Settlement Agreement, the
Settlement Agreement shall control.

holders of beneficial units in the GUC Trust (the "**Unitholders**") and the Motors Liquidation Company Avoidance Action Trust, including a release of any rights to prior or future distributions of or current GUC Trust assets and any rights to distributions by the Motors Liquidation Company Avoidance Action Trust.

6.      In addition, the GUC Trust agrees to provide reasonable assistance and cooperation in obtaining an order from the Court (the "**Claims Estimate Order**"): (i) finding that the estimated aggregate amount of Plaintiffs' claims, together with all other allowed claims, against the estates meet or exceed $42 billion, triggering the provision of the Sale Agreement[5] requiring New GM to issue additional New GM common stock (the "**Adjustment Shares**"); and (ii) directing that those Adjustment Shares be promptly delivered to the Settlement Fund by New GM.

7.      All Unitholders, all defendants in the action captioned *Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al.*, Adv. Pro. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009) (the "**Term Loan Avoidance Action**"), and all holders of Allowed General Unsecured Claims, other than Plaintiffs, will be deemed to irrevocably waive and release any and all rights to these Adjustment Shares, as well as the Settlement Amount.

8.      Subject to notice and an opportunity for Plaintiffs to object, the Signatory Plaintiffs will determine the overall allocation of the value of the Settlement Fund between economic loss claims and personal injury/wrongful death claims, and the eligibility and criteria for payment.  Being defined as a Plaintiff will not assure any party that he, she, or it will receive

---

[5]   See *Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser*, dated as of June 26, 2009 (the "**AMSPA**"), § 3.2(c).

a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.

9.       Nothing in the Settlement Agreement is intended to waive any claims against New GM or to be an election of remedies against New GM; nor does the Settlement Agreement or any payments made in connection therewith represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full from every available source; provided, however, that in no event shall any Plaintiff be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares.  Except as mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any claims that any Plaintiff may have against New GM or constitute an election of remedies by any Plaintiff, and neither the Settlement Amount nor the Adjustment Shares (nor any distribution thereof to any Plaintiff) shall represent full and final satisfaction of any claim that any Plaintiff may have against New GM, all of which are expressly reserved. The Bankruptcy Court's estimate of the aggregate Allowed General Unsecured Claims in the Claims Estimate Order shall not operate as a cap on any of the claims of any of the Plaintiffs against New GM.

10.       As part of the Settlement Agreement, the Parties by this Motion, request that the Court enter an Order approving and establishing Notice Procedures for notice of the 9019 Motion.

## **JURISDICTION**

11.       This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

12.       Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4

## NOTICE PROCEDURES

13.    Pursuant to the Settlement Agreement, the Parties propose that they provide notice of the 9019 Motion, and the hearing date to consider approval of the Settlement Agreement and Claims Estimate Order, pursuant to the below "**Notice Procedures**":

  i.    paid media including (1) digital banner advertisements targeted specifically to owners or lessees of the defective vehicles manufactured by Old GM included in the Recalls; (2) pre-roll video ads placed on YouTube and other sites with YouTube embedded videos; (3) sponsored search listings on the three most highly-visited Internet search engines, Google, Yahoo! and Bing; (4) a party-neutral informational press release issued to online press outlets throughout the United States; and (5) a settlement website;

  ii.    notice by postcard in the form attached hereto as **Exhibit C** to: (A) all persons in the United States who, as of July 10, 2009, owned or leased a defective vehicle manufactured by Old GM included in the Recalls; and (B) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against New GM or filed or joined a motion for authority to file late claims against the GUC Trust, as of the date of the Settlement Agreement;[6]

  iii.    notice to all defendants in the Term Loan Avoidance Action via the Bankruptcy Court's ECF system and, to the extent a defendant is not registered to receive notice via the ECF system, via postcard in the form attached hereto as **Exhibit C**;

  iv.    notice via DTC's LENSNOTICE system to holders of beneficial units of the GUC Trust in the form attached hereto as **Exhibit D**; and

  v.    notice via ECF to all entities, including New GM, that receive electronic notice from the Court's ECF system.

14.    Pursuant to the Settlement Agreement, the GUC Trust shall be responsible for funding the cost of the notice contemplated hereby, up to an amount of $6,000,000 (the "**Notice**

---

[6]    The Parties request that the Court order New GM to turn over the names and addresses of individuals in category (ii).

**Cost Cap Amount**").[7]    As described further below, the GUC Trust respectfully requests authority to "hold back" and reallocate for use up to $6,000,000 from otherwise distributable assets of the GUC Trust for use in funding the Notice Procedures.

15.    The Parties request that this Court:  (i) schedule the hearing to consider approval of the 9019 Motion for [ ], 2017 at [ ] (EST) (the "**Hearing**"); and (ii) establish [ ], 2017 at [ ] (EST), as the deadline by which all responses and objections to the 9019 Motion must be filed and served.

16.    The Parties respectfully submit that the foregoing Notice Procedures, and requested hearing date and objection deadline, will provide comprehensive notice to all affected parties of the terms and the relief to be sought at the hearing to consider approval of the 9019 Motion, and that no other or further notice is necessary or required.

## RELIEF REQUESTED

17.    By this Motion, the Parties respectfully request that the Court enter an order approving the Notice Procedures substantially in the form attached to this Motion as **Exhibit A**.

## BASIS FOR RELIEF

18.    Bankruptcy Code Section 105(a) provides a bankruptcy court with broad powers in its administration of a case.  <u>See</u> 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").  Pursuant to Section 105(a), the Bankruptcy Court has expansive equitable powers to achieve fairness and

---

[7]    Based upon proposals received from vendors, the cost of the notice contemplated hereby is approximately $6 million.  Specifically, the parties requested proposals for the notice program from three vendors: (1) Epiq Class Action & Claims Solutions, Inc./Hilsoft Notifications ("**Epiq/Hilsoft**"); (2) Rust Consulting/Kinsella Media; and (3) Kurtzman Carson Consultants.  Based on the responses, the parties selected Epiq as the Notice Administrator, based both on the cost estimate, as well as their comprehensive notice plan, which is explained in detail in the Declaration of Cameron R. Azari, Esq., on Implementation and Adequacy of General Motors Bankruptcy Settlement Class Notice Program ("**Azari Decl.**"), annexed hereto as **Exhibit E**.

justice in the reorganization process.  See, e.g., Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.), 52 F.3d 41 (2d Cir. 1994) (holding that bankruptcy courts have broad equity power to manage affairs of debtors).

19.    In addition, the Court has the authority and discretion under Bankruptcy Code Section 105(d) to issue and prescribe procedures and conditions as the Court deems appropriate to ensure that matters before it are handled expeditiously and economically.  See 11 U.S.C. § 105(d); In re Fletcher Int'l, Ltd., 536 B.R. 551, 560 (S.D.N.Y. 2015), aff'd, 661 F. App'x 124 (2d Cir. 2016).  Under Bankruptcy Rule 2002, no less than 21 days' notice must be provided for proposed settlements under Bankruptcy Rule 9019.  Epiq/Hilsoft estimates that it will take 35 days to complete the mailing of the postcard notice.

20.    Entry of the Proposed Order is appropriate under Bankruptcy Code Sections 105(a) and 105(d), as complemented by Bankruptcy Rule 9019, because it will allow the Parties to:  (i) comply with the terms of the Settlement Agreement (which specifically require the Parties to receive an order from this Court approving the Notice Procedures); and (ii) implement a process in which appropriate notice will be given to all relevant parties in interest so that this Court can consider the appropriateness of the 9019 Motion at the Hearing.

21.    To ensure that the Notice Procedures are sufficient, Eqip/Hilsoft, a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans, was engaged.[8]  Epiq/Hilsoft analyzed the individual notice options and the media audience data to determine the most effective mixture of media required to reach the greatest practicable number of included parties.[9]

---

[8]    See Azari Decl. ¶ 3.

[9]    Id. ¶ 8.

22.     Rather than incurring the prohibitive cost and expense of mailing a long form of notice to Plaintiffs, the Parties will serve the postcard notice attached hereto as **Exhibit C** (the "**Direct Mail Notice**") that clearly and concisely summarizes the Settlement.  The Direct Mail Notice will direct the recipients to a website dedicated specifically to the Settlement where they can access additional information.  The Direct Mail Notices will be sent by United States Postal Service first class mail.[10]

23.     This comprehensive individual notice effort will be supplemented by moderate paid media selected to both notify Plaintiffs who may not see the Direct Mail Notice and remind Plaintiffs to act if they so choose.  Paid media will include digital banner advertisements targeted specifically to owners and lessees of the vehicle makes and models included in the Settlement along with online video advertisements targeted to adults aged 18 and over.[11]

24.     To build additional reach and extend exposures, a party-neutral informational release will be issued to approximately 5,000 general media (print and broadcast) outlets and 5,400 online databases and websites throughout the United States.[12]

25.     A dedicated website will be created for the Settlement.  Plaintiffs will be able to obtain detailed information about the case and review documents including the Long Form Notice attached hereto as **Exhibit B** (in English and Spanish), Settlement Agreement, Settlement Order and answers to frequently asked questions and any other documents the Court may require.  Once the plan for allocation between economic loss claims and personal injury/wrongful death claims is determined it will be posted prominently on the Settlement website.  Any criteria on eligibility to recover from the Settlement Fund will also be posted

---

[10]  Id. ¶ 16.

[11]  Id. ¶¶ 20-25.

[12]  Id. ¶ 28.

prominently on the Settlement website. To facilitate locating the case website, sponsored search listings will be acquired on the three most highly-visited internet search engines: *Google*, *Yahoo!* and *Bing*.[13]

26.    The Notice Procedures presented here are similar to the procedures proposed by the debtors in In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bank. D. Del. July 7, 2017) to provide notice to individuals who own, or may have owned, vehicles equipped with recalled airbag inflators—serving a postcard via first-class mail, utilizing digital banner advertising and paid internet search listings, distributing an informational release, and creating a dedicated website.[14]

27.    The Parties believe these Notice Procedures will keep costs reasonable under the circumstances while also reaching the greatest practicable number of Plaintiffs.[15]

28.    As noted above, the GUC Trust shall be responsible for funding the cost of the Notice Procedures up to the Notice Cost Cap Amount. Pursuant to Section 6.1(b) of the Second Amended and Restated GUC Trust Agreement dated as of July 30, 2015 (the "**GUC Trust Agreement**"), the GUC Trust Administrator is afforded the flexibility to "hold back" from distributions (with the approval of FTI Consulting, Inc. as monitor of the GUC Trust (in such capacity, the "**GUC Trust Monitor**"))[16] otherwise distributable assets for the purposes of,

---

13    Id. ¶¶ 26, 29.

14    See Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants ¶¶ 24-28, In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. July 7, 2017).

15    Id. ¶ 12.

16    As required by Section 6.1 of the GUC Trust Agreement, the GUC Trust Administrator has consulted with the GUC Trust Monitor with respect to the proposed reallocation and use of distributable cash. GUC Trust Agreement § 6.1. The GUC Trust Monitor has indicated that it supports the relief requested herein.

among other things, funding fees, costs and expenses of the GUC Trust to the extent that such

fees, costs and expenses are not otherwise contemplated by the GUC Trust's budget.  *See* GUC

Trust Agreement § 6.1(b).    The GUC Trust Agreement further permits the GUC Trust

Administrator to seek Bankruptcy Court authority to reallocate and use the "held back" funds for

the purposes of satisfying such fees, costs and expenses as incurred (such funds, as reallocated,

"**Other GUC Trust Administrative Cash**").    *Id.*    Section 6.13 of the GUC Trust Agreement

provides that to the extent any "expenses, costs, liabilities, obligations or fees [are] incurred by

the GUC Trust… in connection with the wind-down of the Debtors' affairs… [such liabilities]

shall be satisfied… from the applicable portion of Other GUC Trust Administrative Cash."  *See*

GUC Trust Agreement § 6.13.

29.    The GUC Trust's agreement to pay up to $6 million for the notice contemplated

hereby is not currently budgeted by the GUC Trust and falls well within the types of "expenses,

costs, liabilities, obligations or fees" that may be "held back" and reallocated for use by the GUC

Trust pursuant to Section 6.13 of the GUC Trust Agreement.    Accordingly, the GUC Trust

submits that, pursuant to Section 6.1(b) of the GUC Trust Agreement, the request to reallocate up

to $6 million of otherwise distributable assets for the purposes of funding the Notice Procedures

is warranted.

## **NOTICE**

30.    Notice of this Motion has been provided to all entities that receive electronic

notice from the Court's ECF system and otherwise in accordance with the *Sixth Amended Order

Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 1015(c) and 9007 establishing Notice and

Case Management Procedures*, dated May 5, 2011 (Bankr. Dkt. No. 10183).

31.    No previous application for the relief sought in this Motion has been made to this or any other Court.

## CONCLUSION

WHEREFORE the Parties respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and equitable.

Dated: August [ ], 2017
      New York, New York

Respectfully submitted,

*/s/ Draft*
Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN
&PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO
LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

11

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing*
*Accident Plaintiffs Represented By Hilliard*
*Muñoz Gonzales L.L.P. and the Law Offices*
*of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to Certain Pre-Closing Accident*
*Plaintiffs*
Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J.
HENRY
4715 Fredricksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident*
*Plaintiffs*

Lisa M. Norman (admitted pro hac vice)
T. Joshua Judd (admitted pro hac vice)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Tel: 713-850-4200
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

Matthew Williams
Keith R. Martorana
Gabriel Gillett
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
Tel: 212-351-400

*Counsel for Wilmington Trust Company, as
Administrator and Trustee of the GUC Trust*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                          :
In re:                                    :         Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,       :         Case No.: 09-50026 (MG)
          f/k/a General Motors Corp., et al., :
                                          :
                        Debtors.          :         (Jointly Administered)
------------------------------------------------------------X

**ORDER APPROVING NOTICE PROCEDURES**
**WITH RESPECT TO PROPOSED SETTLEMENT BY AND**
**AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST**

Upon the *Motion for Order Approving Notice Procedures with Respect to Proposed Settlement by and Among the Signatory Plaintiffs and the GUC Trust*, dated [ ], 2017 (the "**Motion**"),[17] of the Ignition Switch Plaintiffs, Certain Non-Ignition Switch Plaintiffs, Certain Pre-Closing Accident Plaintiffs and the GUC Trust (collectively the "**Parties**") for approval of the Notice Procedures with respect to the 9019 Motion, all as more fully described in the Motion; and the Bankruptcy Court having considered the Motion; and a hearing on the Motion having been held before this Bankruptcy Court on _____, 2017 (the "**Hearing**") to consider the relief requested in the Motion; and the Bankruptcy Court having found that it has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Plan; and the Bankruptcy Court having considered the statements of counsel on the record of the Hearing and the filings of the parties in connection the Motion; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record of the Hearing; and it appearing that proper and adequate notice of the Motion has been given and that

---

[17] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

no other or further notice is necessary; and after due deliberation and sufficient cause appearing therefor, it is

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that the Notice Procedures are approved; and it is further

**ORDERED** that notice of the 9019 Motion in accordance with the Notice Procedures will be sufficient and effective notice in satisfaction of federal and state due process requirements and other applicable law to put the parties in interest in these Chapter 11 cases, all Plaintiffs, and others on notice of the 9019 Motion; and it is further

**ORDERED** that, pursuant to Section 6.1(b) of the GUC Trust Agreement, the GUC Trust is authorized to reallocate and use up to $6,000,000 of otherwise distributable assets to satisfy the costs of the Notice Procedures.

**ORDERED** that, no later than two (2) days after the entry of this Order, New GM shall turn over to the Parties the names and addresses of (A) all persons in the United States who, as of July 10, 2009, owned or leased a defective vehicle manufactured by Old GM included in the Recalls; and (B) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against New GM as of the date of this Order;

**ORDERED** that, all responses and objections to the 9019 Motion must be filed and served so as to be received by [ ], 2017 at [ ] (EST); and it is further

**ORDERED** that the hearing on the 9019 Motion shall take place in the Bankruptcy Court on [ ], 2017 at [ ] (EST); and it is further

**ORDERED** that notice of the 9019 Motion as provided herein shall be deemed good and sufficient notice of the 9019 Motion; and it is further

2

**ORDERED** that this Court retains jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

Dated: _____, 2017
       New York, New York

                                     _____
                                     THE HONORABLE MARTIN GLENN
                                     UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

**(Long Form Notice)**

# EXHIBIT C

**(Short Form Postcard Notice)**

# **EXHIBIT D**

**(DTC Notice)**

# **EXHIBIT E**

**(Azari Declaration)**