| | | |
|---|---|---|
| Richard C. Godfrey, P.C. | Arthur J. Steinberg | **Hearing Date:  To Be Determined** |
| Andrew B. Bloomer, P.C. | Scott Davidson | **Objection Deadline:  To Be Determined** |
| Leonid Feller, P.C. | **KING & SPALDING LLP** | |
| **KIRKLAND & ELLIS LLP** | 1185 Avenue of the Americas | |
| 300 North LaSalle | New York, New York  10036 | |
| Chicago, IL  60654 | | |

Susheel Kirpalani
James C. Tecce
Julia M. Beskin
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
52 Madison Avenue
New York, NY  10010

*Counsel to General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, et al.,<br>f/k/a General Motors Corp., et al.,<br><br>                           Debtors. | Chapter 11<br>Case No. 09-50026 (MG)<br>(Jointly Administered) |

**JOINDER OF GENERAL MOTORS LLC IN MOTION OF MOTORS
LIQUIDATION COMPANY GUC TRUST ADMINISTRATOR, PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(a), 363(b), AND 1142(b) AND BANKRUPTCY
RULE 3020(d), TO AUTHORIZE ENTRY INTO FORBEARANCE AGREEMENT**

By and through its undersigned counsel, General Motors LLC ("**New GM**") joins in the

Motion Of The Motors Liquidation Company GUC Trust Administrator, Pursuant To

Bankruptcy Code Sections 105(a), 363(b), And 1142(b) And Bankruptcy Rule 3020(d), To

Authorize Entry Into Forbearance Agreement With General Motors LLC (the "**Motion**")[1] and

states as follows:

---

[1]      Capitalized terms not defined herein have the meanings ascribed to them in the Motion or in the agreement
relating to the Proposed Claimants' Counsel Settlement (Dkt. 14061-1).

1.      When New GM and the GUC Trust negotiated and entered into the Forbearance Agreement, the GUC Trust was not a party to any settlement agreement with Claimants' Counsel.  On August 9, 2017, counsel to the Participating Unitholders and certain Claimants' Counsel described to New GM's counsel for the first time the major terms of the Proposed Claimants' Counsel Settlement that were being negotiated.  Before that date, despite repeated requests from New GM, none of the alleged parties, including the GUC Trust, shared information with New GM about potential settlement terms.  Furthermore, actual drafts of the unsigned Proposed Claimants' Counsel Settlement Agreement were not provided to New GM until August 14, 2017.  On August 16, 2017, counsel to New GM received confirmation from the GUC Trust that it had not finalized and executed the Proposed Claimants' Counsel Settlement Agreement.  Thereafter, New GM submitted its letter to the Court outlining the principal terms of the ensuing Forbearance Agreement.  In any event, New GM negotiated the terms of Forbearance Agreement with the GUC Trust at arm's-length and in good faith and eventually received the first draft from the GUC Trust on August 24, 2017.

2.      The GUC Trust's decision to not finalize and execute the Proposed Claimants' Counsel Settlement Agreement is objectively reasonable.  The attempted settlement suffers incurably from numerous procedural and substantive infirmities.  Its self-styled "Key Objectives" include the GUC Trust pursuing a Claims Estimate Order that (a) stipulates Allowed General Unsecured Claims exceed $42 billion and (b) directs New GM to deliver 30 million Adjustment Shares pursuant to a purchase price enhancement contained in the AMSPA.[2]  And,

---

[2]     See Dkt. No. 14061-1 at 7 (¶ 1.29 ("Key Objectives" definition)), at 5 (¶ LL ("The GUC Trust acknowledges the key objectives of the Signatory Plaintiffs in entering into this Agreement are to (i) achieve the funding of the Settlement Fund … and (iii) take or to cause to be taken all steps necessary to require New GM to issue the maximum amount of Adjustment Shares and to make the value of the Settlement Fund and the Adjustment Shares available to satisfy, in part, the Plaintiffs' claims …. [T]he GUC Trust, based upon its review of the expert report and proffer of evidence provided by Counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs and the expert report and proffer of evidence provided by certain Pre-Closing Accident Plaintiffs, agrees to provide the cooperation and

the alleged agreement would have required the GUC Trust to accept the assertions of purported experts retained by Claimants' Counsel that late-filed claims—including the claims of millions of individuals that never filed a proof of claim—equal or exceed $10 billion.[3]  The Proposed Claimants' Counsel Settlement raises important questions about whether, inter alia, (a) the $10 billion claim is unsupportable, inflated, or otherwise manufactured to trigger New GM's obligations with respect to the Adjustment Shares; (b) millions of purported "claims" that have never been filed nonetheless may be included in "estimating the aggregate allowed general unsecured claims against Sellers' estates" under section 3.2(c) of the AMSPA (see Dkt. No. 2968-2 at 6); (c) the alleged agreement impermissibly modifies the Plan, which has been substantially consummated; (d) Claimants' Counsel can represent the millions of individuals purportedly subject to the alleged settlement—including those who have not filed claims or authorized Claimants' Counsel to represent them; (e) millions of individuals can be bound in the absence of the procedures required by Fed. R. Civ. P. 23; (f) this Court should estimate claims that are pending adjudication in the MDL court; and (g) any or all of the enforceability objections, and New GM's defenses to the Proposed Claimants' Counsel Settlement should be

---

assistance provided for herein relating to the issuance of a Claims Estimate Order … and to seek to estimate for allowance purposes, and not dispute the amount of estimated claims thereunder")).

[3]     See id. Dkt. No. 14061-1 at 1 (¶ D ("Pursuant to the AMSPA, if the Bankruptcy Court issues an order estimating the aggregate Allowed General Unsecured Claims against the Sellers (the 'Claims Estimate Order') at an amount exceeding …. $35,000,000,000 … then New GM must … issue the Adjustment Shares")), at 4 (¶¶ FF (GUC Trust counsel has been furnished with "expert reports and proffers of evidence indicating the amount of damages for the Ignition Switch Plaintiffs', certain Non-Ignition Switch Plaintiffs', and certain Pre-Closing Accident Plaintiffs' asserted claims, if ultimately determined to be Allowed General Unsecured Claims against Old GM and/or the GUC Trust, would be greater than the amount necessary to trigger New GM's obligations to issue the Adjustment Shares in the maximum amount under the AMSPA")), at 10 (¶ 2.3 (obligating GUC Trust to make $15,000,000 payment), at 11 (¶ 2.4 ("[T]he GUC Trust, based on its review of the expert report and proffer of evidence provided  … agrees that it shall support the entry of a Claims Estimate Order …"), at 13 (¶ 2.9 (obligating GUC Trust to provide $6,000,000 to fund noticing of motion)); Dkt. No. 14061-3 (proposed Claim Estimate Order) at 2-3 (¶¶ 4-6 (confirming Allowed General Unsecured Claims exceed $42 billion and directing New GM to issue $30,000,000 Adjustment Shares—while preserving claims against New GM)); Dkt. No. 14061-3 (proposed Claim Estimate Order) at 2-3 (¶¶ 4-6 (same)).

submitted to the MDL court in the first instance given the high degree of overlap with the issues being litigated in the MDL court.

3.       Ultimately, the Proposed Claimants' Counsel Settlement requires the GUC Trust to release significant defenses with respect to late-filed claims without acquiring guaranteed protection against future claims asserted by plaintiffs not represented by Claimants' Counsel— because Claimants' Counsel is legally incapable of delivering that protection.

4.       The Forbearance Agreement, in contrast, protects trust assets, preserves the GUC Trust's various meritorious defenses to late-filed claims, and provides for the reimbursement of expenses that will be used to prosecute those defenses, leading to a more mature record in that litigation.    Through a straightforward arrangement, New GM agrees to reimburse certain expenses of the GUC Trust in exchange for the GUC Trust's agreement to forbear, for a defined period based on litigation milestone events, from seeking a Claims Estimate Order.    In addition, New GM commits to negotiate in good faith regarding whether New GM will pay an appropriate rate of return on the principal amount of GUC Trust distributions to compensate unitholders for any distribution delays caused by the pendency of litigation concerning late-filed claims.    Absent agreement on an appropriate rate of return, the GUC Trust can terminate the Forbearance Agreement.

5.       Lastly, although Claimants' Counsel and the Participating Unitholders argue the GUC Trust is bound by the unexecuted Proposed Claimants' Counsel Settlement Agreement, the GUC Trust is *not* bound by that agreement as a matter of law.    The GUC Trust never signed the Proposed Claimants' Counsel Settlement Agreement, and, by its express terms, the GUC Trust's signature is a precondition to its effectiveness.    Paragraph 3.1 (Settlement Effective Date) states the agreement only becomes effective upon execution by each of the alleged parties, which

undisputedly did not occur here.[4]   Similarly, the Proposed Claimants' Counsel Settlement

Agreement's preamble (which is not dated)[5] and integration clause (¶ 3.11) further corroborate

the alleged parties' expressed intent to require full execution before the agreement would be

considered binding.[6]  For that reason, statements made prior to execution, and the length of time

the parties negotiated the agreement, are not relevant.[7]   And, given the issues addressed by the

---

[4]        Dkt. 14061-1 at 15 (¶ 3.1 ("**Settlement Effective Date.**  This Agreement shall be effective and binding on
the Parties on the date on which this Agreement is fully executed by each of the Parties.")); Dkt. 14061-2
(proposed order relating to Filing Plaintiffs' motion) at 4 (¶ 3 ("In accordance with Paragraph 3.1 of the
Settlement Agreement, the Settlement shall be effective and binding on all persons upon the Settlement
Effective Date[.]")).  See, e.g., Ciaramella v. Readers Digest Ass'n, Inc., 131 F.3d 320, 324 (2d Cir. 1997)
(language in unexecuted contract stating it would not become effective until signed evidenced intent not to
be bound without a signed writing); Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985)
(listing factors relevant to determining whether parties intended to be bound by oral agreement despite
failure to execute formal settlement documents:  whether (1) there has been an express reservation of rights
not to be bound in absence of a writing; (2) there has been partial performance of contract; (3) all terms of
alleged contract have been agreed upon; and (4) agreement at issue is type of contract that is usually
committed to writing); Sprint Comm'n Co. L.P. v. Jasco Trading, 5 F. Supp. 3d 323, 338 (E.D.N.Y. 2014)
("The burden of establishing agreement as to all the material terms of a contract is on the party seeking to
enforce that contract"); Gildea v. Design Distributors, Inc., 378 F.Supp.2d 158 (E.D.N.Y. 2005) (examining
provision stating "this Agreement ... will be effective upon the last signing party's execution and delivery
thereof").

[5]        See Dkt. 14061-1 at 1 ("This Settlement Agreement dated as of ___ day of August, 2017 among [the GUC
Trust and the Signatory Plaintiffs]")); Ciaramella, 131 F.3d at 324 (finding similar provision evidenced
intent not to bound before execution); H&R Block Tax Servs. LLC v. Strauss, 2016 WL 5107114, at *4
(N.D.N.Y. Sept. 20, 2016) (finding "blank space" was "presumably ... to be filled in with the date on which
the settlement agreement was signed by both parties" and evidenced intent not to be bound before
execution); Sprint, 5 F. Supp. 3d at 334–35 (parties could not bind themselves to settlement agreement
before executing it given "the presence of substantive conditions discussing rights and obligations that
either materialize or disappear at a particular time that is indexed to the date of execution").

[6]        See Dkt. 14061-1 at 17 (¶ 3.11 ("**Integration.**  This Agreement constitutes the entire agreement and
understanding among the Parties hereto relating to the subject matter hereof, and supersedes all prior
proposals, negotiations, agreements, representations and understandings between or among any of the
Parties hereto relating to such subject matter. In entering into this Agreement, the Parties and each of them
acknowledge that they are not relying on any statement, representation, warranty, covenant or agreement of
any kind made by any other party hereto or any employee or agent of any other party hereto, except for the
representations, warranties, covenants and agreements of the Parties expressly set forth herein."));
Ciaramella, 131 F.3d at 324 (reviewing merger clause stating "[n]o other promises or agreements shall be
binding unless in writing and signed by the parties"); Kaczmarcysk v. Dutton, 414 Fed.Appx. 354 (2d Cir.
2011) (examining merger clause stating "[t]his agreement is effective when it has been fully executed by all
parties;" declining to reach other Winston factors); H&R Block Tax Servs. LLC v. Strauss, 2016 WL
5107114, at *4 (merger clause evidenced intent by parties to be bound by executed agreement).

[7]        See Sprint, 5 F. Supp. 3d at 341 (unexecuted agreement was not enforceable even though parties "spent
hours negotiating a settlement with the defendants" and court was advised "the agreement will be signed by
week's end or early next week.  And the terms have all been negotiated and we're just waiting for
execution of the document."); In re Kaplan Breslaw Ash, LLC, 264 B.R. 309, 325 (Bankr. S.D.N.Y. 2001)

Proposed Claimants' Counsel Settlement, e.g., the dollar amounts involved and releases, it is exactly the kind of agreement that routinely is committed to writing. Consistent with its terms and applicable law, the Proposed Claimants' Counsel Settlement Agreement cannot bind any alleged party, including the GUC Trust, absent execution.[8]

---

(finding no assent to contract notwithstanding existence of "understandings as to the contours of a deal to be presented"); Teachers Ins.& Annuity Assoc. v. Tribune Co., 670 F. Supp. 491, 497 (S.D.N.Y. 1987) ("[M]ere participation in negotiations and discussions does not create binding obligation"); Davidson Pipe Co., 1986 WL 2201, at *5 (oral statement, "we have a deal," made by one attorney to another did not unilaterally preclude finding that parties intended to be bound only by executed contract); EEOC v. Beauty Enterprises, Inc., 2007 WL 3231692, at *5 (D. Conn. Oct. 31, 2007) (noting agreement's terms "conditioned many of the parties' duties … on the court's entry of the Consent Decree, which could not occur until the parties approved, signed and presented a final draft Decree to the court").

[8]   See Ciaramella, 131 F.3d at 326 ("Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court."); Gaul v. Chrysler Fin. Servs. Ams., LLC, 2014 WL 1466491, at *7 (N.D.N.Y. Apr. 15, 2014) (noting "the release of legal claims against one party in exchange for some valuable consideration … is the type of agreement normally committed to writing").

WHEREFORE, New GM respectfully requests that the Court enter an Order granting the

Motion and awarding such other, different relief as it considers appropriate.

Dated: New York, New York
       September 12, 2017

                                        Respectfully submitted,


Richard C. Godfrey, P.C.              Arthur J. Steinberg
Andrew B. Bloomer, P.C.              Scott Davidson
Leonid Feller, P.C.                  **KING & SPALDING LLP**
**KIRKLAND & ELLIS LLP**             1185 Avenue of the Americas
300 North LaSalle                    New York, New York  10036
Chicago, IL  60654                   Tel:  212-556-2158
Tel:  312-862-2482




                                     By:    **/S/ JAMES C. TECCE**
                                            Susheel Kirpalani
                                            James C. Tecce
                                            Julia M. Beskin
                                     **QUINN EMANUEL URQUHART & SULLIVAN LLP**
                                     52 Madison Avenue
                                     New York, NY  10010
                                     Tel:  212-849-7100

                                     *Counsel to General Motors LLC*