# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| KAITLYN REICHWALDT | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION FILE NO. |
| | * | |
| vs. | * | 1:16-CV-02171-twt |
| | * | |
| GENERAL MOTORS LLC, | * | |
| | * | **JURY TRIAL DEMANDED** |
| Defendant. | * | |

---

## FIRST AMENDED COMPLAINT

---

James E. Butler, Jr.
Robert H. Snyder
David T. Rohwedder
Joseph M. Colwell

BUTLER WOOTEN & PEAK, LLP
105 13th Street
Post Office Box 2766
Columbus, Georgia 31902
706-322-1990

*Attorneys for Plaintiff*

Plaintiff Kaitlyn Reichwaldt files this Complaint for Personal Injury and Punitive Damages against Defendant General Motors LLC ("GM LLC"), showing this Honorable Court the following:

## I.     INTRODUCTION

1.

This is yet another case for another victim of GM Corp.'s[1] "CK" pickup trucks with gas tanks located *on the side* of the truck outside the frame rails with no protection from side impact.  The gas tanks were located in a known "crush zone"—in an area GM Corp. knew was vulnerable to side impact.  GM Corp. sold those CK pickups for 15 years, from 1973 until 1987.  Hundreds of Americans have burned, most to death, as a result of that design.  The design is *indefensible*. As GM Corp. engineer Edward Ivey testified *twenty two years ago*:

[1] References to "GM Corp." contained herein that discuss conduct occurring before July 10, 2009, ~~are referring~~**are referring** to the conduct of General Motors Corporation.   References to "GM LLC" contained herein that discuss conduct occurring after July 10, 2009 are referring to the conduct of General Motors LLC.  As discussed more fully below, GM LLC expressly agreed to be subject to suit for product liability claims for wrecks occurring after July 10, 2009 in vehicles built by GM Corp. before that date.

Q:  Can you name a worse place to put a fuel tank than outside the frame rail on the side?

A:  Well, yes, you could put it on the front bumper.[2]

2.

Despite actual knowledge of the defect and of the danger, despite countless cases settled by both GM Corp. and GM LLC, despite GM Corp.'s own long-concealed crash tests that proved the tanks were vulnerable to rupture and explosion, GM ~~LLC, which inherited the specific knowledge of its predecessor GM Corp. and which has its own knowledge of the defect and of the danger, continues to deny the obvious—that the design is indefensible—and continues to refuse~~**Corp. refused** to warn Americans of the danger.

3.

The CK litigation has been fought in courtrooms all across America for decades now, involved the concealment of evidence and the alleged destruction of documents,[3] and embroiled law firms from around the country, including from Atlanta.

---

[2]—1/9/94 Deposition of Edward Ivey, *Bishop v. GM & Cameron v. GM*, at 98/11-16.

[3] In a 1992 deposition, engineer Theodore Kashmerick testified that documents retrieved from him were "shredded." *Elwell v. GM*, 91-115946-NZ, Circuit Court of Wayne County, Michigan, 12/29/92 at pp. 13/3-7, 24/5-20.

2

4.

This particular case involves severe burn injuries suffered on January 27, 2015 by then-19-year-old Kaitlyn Reichwaldt as a result of a 1984 CK pickup truck sliding into her 2003 Taurus. The CK pickup had a gas tank mounted *on the side* of the vehicle outside the frame rails, unprotected by anything but body side sheet metal, and affixed to the rigid steel frame rail.

5.

Kaitlyn Reichwaldt was driving on Salt Creek Roadway, a divided four-lane road near the University of Nebraska in the city of Lincoln, Nebraska, with a raised median separating the lanes going eastbound and the lanes going westbound. A 1984 **Old GM** CK pickup truck with a side-mounted gas tank spun out of control and crossed the median. The side of the **Old GM** CK pickup struck the front of Ms. Reichwaldt's vehicle—right at the side-mounted gas tank. The gas tank was crushed against the steel frame rail, gas sprayed over Ms. Reichwaldt's vehicle including into the passenger compartment, the gas exploded, and she was severely burned. But for the heroic actions of a bystander who pulled her from her burning car, Kaitlyn Reichwaldt surely would have burned to death. Kaitlyn Reichwaldt did nothing wrong; she was entirely innocent. But for the burns, Ms. Reichwaldt would have been uninjured in the wreck.

3

6.

The first CK pickup sold by GM Corp. was the model year 1973 pickup. GM Corp. knew before that first CK pickup was sold that it posed a singular and unique danger to occupants and to others on the road, because the gas tanks were located on the side of the truck outside the frame rail, *in the crush zone,* and affixed to rigid steel frame rails—against which the gas tanks could be crushed if the side of the truck was hit by or hit another car or any other object. That gas tank design is indisputably vulnerable to side impact.

7.

The risk of post collision fuel fed fire ("PCFFF") is, of course, horrific—as the history of **Old GM** CK pickup trucks proves. Far too often people who should not have been seriously injured at all in wrecks have been burned, or have burned to death, because GM Corp. chose to put its gas tanks on the side of the CK pickups.

8.

That gas tanks located in a known crush zone make occupants and others vulnerable to horrific injuries or death has long been well known in the automotive

DMSLIBRARY01\31061470 31075232.v1

industry.[4]

9.

GM Corp. ~~(and now GM LLC) has~~**had** itself long known that gas tanks must not be located where they are unprotected from impact—and especially should not be located *outside* the frame rail:

 (a) In *1930*, GM Corp. published an ad for a Chevrolet stating the gas "tank is thoroughly protected by the wide rear cross member and heavy frame side members."

 (b) In *1932*, the Society of Automotive Engineers ("SAE") published a paper stating that the gas tank "should be protected by the body and the frame."

 (c) In *1964*, a GM Corp. Executive Engineer wrote a "Design Directive" stating "the fuel tank must be mounted as near to the center of the vehicle (truck) as practical."

---

[4] *See*, *e.g.*, June 3, 2013 NHTSA "recall request letter," sent to Chrysler: "The vulnerability of tanks located behind solid rear axles in rear impacts became well known following a series of fiery crashes involving the Ford Pinto. . . . It was a well-publicized, terrible tragedy that people burned to death in these vehicles." GM Corp.'s side-mounted gas tanks were even *more* vulnerable—they were closer to a striking vehicle than most rear-mounted gas tanks, and even less protected. "In June 1978, Ford agreed to recall the Pinto and Bobcat. The defect was that the fuel tanks installed on these vehicles are subject to failure when the vehicles are struck from the rear." *Id*. GM Corp. ~~and GM LLC~~, by contrast, ~~have~~**had** never recalled the CK pickups, never admitted the danger, and never warned anyone of the danger.

(d) In *1974* the SAE published another paper stating that truck gas tanks should be located *inside* "rugged *frame* channels."

(e) In *1978*, a "jury" of GM Corp. engineers studying "alternative fuel tank locations" for trucks recommended the inside the frame rails location.

(f) In 1981, GM Corp. conducted its own secret and long-concealed vehicle-to-vehicle side-impact collision tests on CK pickups.  The results gave GM Corp., and later GM LLC, actual notice and knowledge that gas tanks mounted on the side outside the frame rails were vulnerable to rupture in side impact.

(g) In 1981, GM Corp. advertised about its new S-10 pickups, "fuel tank is located *inside* the left hand *frame rail* for protection from side impacts."

(h) In 1982, a GM Corp. engineer estimated the cost to "relocate" the CK side-mounted gas tanks to an inside the frame rails location would be only $1.33 per tank.

(i) By 1983, GM Corp. was already designing the new 1988 pickup with the gas tank located inside the frame rail for "added protection" in side impacts, and a GM Corp. engineer's presentation about the new pickup stated the inside the frame rail location is "much less vulnerable."

(j) In 1985, a GM Corp. engineer made a presentation to the President of

6

GM Corp., stating that the CK pickup "is subject to intense pressure as a result of litigation due to PCFFF," and noted that the planned new design with an inside the frame rail gas tank will "reduce this concern."

(k)  When finally, in 1988, GM Corp. moved the gas tank to the inside the frame rail location, GM Corp. issued a "confidential" directive to its sales staff stating "fuel tank is located *inside the frame rail* to reduce the chance of fuel spillage on side impact."

10.

In May 1972, one of GM Corp.'s testifying engineers prepared a memo – before the CK trucks were first sold as model year 1973 vehicles – attesting to the fact that a gas leak "should not occur" unless the impact itself was great enough to cause fatalities.

11.

GM Corp. put the gas tank on the side of its CK pickups solely for marketing reasons – so GM Corp. could advertise that the pickup had a larger gas tank and greater range.

12.

It was feasible and practical for GM Corp. to design and build the subject pickups with gas tanks located inside the frame rail.

7

13.

GM Corp.'s awareness of the horrific risk is reflected by its preparation in 1973 – the first model year GM Corp. sold its CK pickups, of a "cost-benefit analysis" which concluded that it was cheaper for GM Corp. to settle PCFFF cases than to eliminate all PCFFFs in GM Corp. vehicles. That "cost benefit analysis" came to be known as the "Ivey memorandum," named after the engineer who prepared it for GM Corp. at the direction of his superiors.[5]

14.

For years GM Corp. actively concealed the "Ivey memorandum" from plaintiffs, courts, and juries. When it was finally discovered, Ivey was deposed. His sworn testimony was totally contrary to what he had told GM Corp.'s lawyers about the memorandum prior to that deposition. That ultimately resulted in a Court Order finding that "GM **[Corp.]** in fact acted [to] commit crimes and frauds" and that GM Corp. had, by concealing the Ivey memorandum, violated Court Orders in other cases.[6]

15.

---

[5] Ivey calculated that if GM Corp. paid an average of $200,000.00 per claim for those claims alleging death by fire, the cost to GM Corp. would be $2.40 per vehicle sold. Ivey calculated it would be worth $2.20 per vehicle for GM Corp. to prevent all deaths by fire in GM Corp. vehicles.

[6] *Bampoe-Parry v. GM Corp.*, State Court of Fulton County, Ga., Civil Action File Nos. 98V50138297J & 98V50138298J, Sept. 9, 1999.

8

In 1973 – the year they were first sold – GM Corp. claimed its first CK truck fire victim: Ernest Leon Smith of Columbus, Muscogee County, Georgia.

16.

Initially, GM Corp. defended some CK lawsuits, trying a few cases, but settling far more.  In 1993, GM Corp. was forced to try the case of *Moseley v. GM.* in Atlanta, Georgia.  That trial resulted in a widely publicized $105 million verdict, including punitive damages.[7]  The *Moseley* case arose after seventeen year old Shannon Moseley of Snellville, Georgia was burned to death when his **Old GM** CK pickup was hit in the side.  His parents refused to settle.  After the $105 million verdict in the trial of *Moseley v. GM*, GM Corp. tried only two CK cases: both were cases where the impact forces were so great the alternative gas tank location was also severely compromised.  Those were cases GM Corp. should not have been able to lose.

17.

For many years in the 1970s and 1980s, GM Corp.'s principal testifying in-house engineer for fire cases was Ronald Elwell.  He defended the CK truck in depositions.  He testified under oath that GM Corp. had conducted no vehicle-to-vehicle crash testing of the CK trucks.  Then, in 1983, Elwell was told

[7] *Moseley v. GM Corp.* was reversed on appeal and then settled by GM Corp. just before retrial, along with three other CK cases.

9

by GM Corp. Executive Vice President Alexander McKeen that he ought to go out to the GM Corp. proving grounds – that he might find something there interesting. Elwell did so, and found "over 20" **Old GM** CK trucks that had been subjected to vehicle-to-vehicle crash testing.  Elwell subsequently testified, in the *Moseley* trial, about the gas tanks on those pickups: "they were badly smashed. There were holes in them as big as melons.  They were split open."  McKeen told Elwell those crash tests were done starting in 1981 after GM Corp. Assistant General Counsel Babcock told McKeen "they could no longer defend the product."  The existence of those crash tests had never been revealed by GM Corp. to any court, jury, or plaintiff.[8]

18.

After seeing those crashed **Old GM** CKs, Elwell complained to his superior that he might have unintentionally committed perjury.  GM Corp. never again had him testify in a CK fire case.[9]

19.

By 1982 fire cases were causing GM Corp. so much trouble that then-CEO Roger Smith ordered a roundup of all internal documents that might be subject to

---

[8] *Moseley v. GM Corp.,* 1-14-93 Trial Transcript Vol. 13 (Elwell) at 126/9-127/1, 127/16-134/20.
[9] *Moseley v. GM **Corp.**,* 1-14-93 Trial Transcript Vol. 13 (Elwell) at 135/12-22.

DMSLIBRARY01\31061470 31075232.v1

requests for documents in fire cases.  Initially the search was for documents

relating to passenger cars; by 1983 the search was expanded to include trucks.

GM Corp. called upon its various "regional counsel" law firms to send young

lawyers to Detroit to review all the collected documents.  Internally, GM Corp.

staff referred to the young lawyers as the "firebabies."[10]

20.

GM Corp. ~~and GM LLC have~~**had** been sued in hundreds of cases as a result

of people being burned in PCFFFs involving **Old GM** CK pickups with outside

the frame rail gas tanks.  **GM LLC has been sued in hundreds of cases as a**

**result of people being burned in PCFFFs involving Old GM CK pickups with**

**outside the frame rail gas tanks.**

21.

What happened on January 27, 2015, was not merely foreseeable to GM

Corp. ~~and GM LLC~~; *it was foreseen*– it had happened over and over again, to GM

Corp's ~~and GM LLC's~~ actual knowledge.  Plaintiffs' counsel are aware of some

957 other incidents involving PCFFF in **Old GM** CK pickups with outside the

---

[10] Dep. of GM Corp. lawyer Brian Eyres, 93 1083 CBM, US District Court,
Central Dist. of CA, 9/29/93 at pp. 202/21-203/6.

frame rail gas tanks.[11]

22.

GM Corp. quit making the CK pickups after model year 1987, and for

model year 1988, GM Corp. finally moved the gas tank to the alternative location

advocated by safety experts for decades – to an inside the frame rail location,

where the gas tank is protected from side impacts.

23.

In addition to Kaitlyn Reichwaldt, many other victims who were not even

occupants of **Old GM** CK pickups have been burned when a crash ruptured the

side-mounted gas tank of a CK.  Examples include but are not limited to:

(a) On December 5, 1973, Ernest Leon Smith of Columbus, Georgia was

driving a Nash Rambler station wagon when a 1973 **Old GM** CK truck

turned left in front of his car, causing Mr. Smith's car to strike the right

side of the truck, rupturing the gas tank and causing a fire.  The whole

left side of Mr. Smith's face and torso were burned; he suffered a stroke

while in the hospital after seeing himself in the mirror and never fully

---

[11] *See* Exhibit A hereto:  Plaintiffs' list of 782 other such incidents, *Byrd v. GM Corp.*, M.D. Mt, 1998, CV-98-168-M-DWM.  In 2015 GM LLC acknowledged another 175 such incidents since the *Byrd* case was settled.  *See* Exhibit B hereto, *Williams v. GM,* N.D. Ga. Case No. 1:14-CV-02908.  In *Williams v. GM*, GM admitted that it had notice that there was a fire following ~~a~~**an Old GM** CK wreck in 718 of the incidents identified in Exhibit A.  *See* Exhibit C hereto.

recovered prior to his death in 1997.

(b) On October 29, 1992, thirty year old Calvin Cockrum of Altoona, Kansas was burned to death when his motorcycle slid and hit the side-mounted gas tank on ~~a~~**an Old GM** CK, dousing him with gas which exploded.

(c) On October 8, 1995, Jerome Dalton of Greene County, Georgia was burned to death when his motorcycle slid and hit the side-mounted gas tank on ~~a~~**an Old GM** CK, dousing him with gas which exploded.

(d) On August 31, 1996, Denise Barnes of Columbia, South Carolina was burned to death when her 1994 Saturn struck the side of ~~a~~**an Old GM** CK.

(e) On May 26, 2000, Corinne Gallagher of Flathead, Montana and all three of her sons, Thomas (8), Anthony (10), and Patrick (12), burned to death when the Hyundai she was driving was struck by ~~a~~**an Old GM** CK resulting in gas tank rupture and PCFFF.

24.

Many families have suffered multiple losses as a result of PCFFF after ~~a~~**an Old GM** CK's outside the frame rail gas tank was ruptured.  In addition to Corinne Gallagher and all three of her sons, examples include:

(a)  On May 20, 1990, a car ran a stop sign in Elfrida, Arizona and hit Daniel Hannah's **Old GM** CK in the side.  Mr. Hannah was severely burned trying to save his two sons, Nathan 16 and Gabriel 17, who were trapped inside the pickup.  Mr. Hannah testified that the flames were "as high as trees."  He was unable to get his sons out of the vehicle, and saw them burn to death.

(b) On July 15, 1995, Steven Seebeck of Bryan County, Georgia along with his young son Michael Seebeck were traveling in a 1979 **Old GM** CK pickup in Fort Stewart, Georgia when a car crossed the center line and collided with the pickup rupturing the gas tank and causing a PCFFF.  Both father and son burned to death.

(c) On December 22, 1997, Darrell Byrd and Angela Byrd along with their two sons, Timothy and Samuel, were traveling from Fortine, Montana to North Carolina to visit family for Christmas.  Near Russell, Kansas, the 1985 **Old GM** CK truck they were traveling in collided with a tractor trailer.  Darrell, Angela, and Timothy all burned to death.  Samuel was burned, but survived.

25.

That the problem with the **Old GM** CK trucks and PCFFF was in fact the

14

gas tank location *was admitted* by the very first witness *GM Corp. itself called* to

testify at the *Moseley* trial, a professional engineer and Georgia Tech graduate

who was then County Engineer for Gwinnett County, George Black.[12]  Black

investigated the Moseley wreck, which GM Corp. claimed was a "high speed"

wreck.  Black testified to a wreck involving a**an Old GM** CK truck in a parking

lot where the gas tank ruptured, and admitted that it was "reasonable to say that

when you get failures at high speed and failures at low speed that tends to indicate

the problem isn't the speed, the problem is the location of the fuel tank."[13]  Mr.

Black also confessed that he had told the plaintiffs' accident reconstruction

engineer that "you don't have to be a rocket scientist to understand that the fuel

tank should not be outside the frame."[14]

26.

Because GM Corp. and GM LLC never warned anyone of the danger, there

are still hundreds of thousands of **Old GM** CK pickups on the roads of America

capable of causing the mayhem visited upon Kaitlyn Reichwaldt on January 27,

2015.  GM Corp. and GM LLC's reckless and wanton failure to warn Americans

of the danger has been**was** continuous since the CK pickup that struck Ms.

---

[12] Black subsequently was appointed by the President as a member of the National
    Transportation Safety Board, where he served two terms.
[13] *Moseley v. GM*, 1-22-93 Trial Transcript (Black) Vol. 20 at 112/7-23.
[14] *Moseley v. GM*, 1-22-93 Trial Transcript (Black) Vol. 20 at 107/14-18.

15

Reichwaldt's car was manufactured in 1984. ~~That failure to warn continues to this day.~~

27.

The terrible defect of the gas tank location on **Old GM** CK pickups continues to put American citizens at risk of horrible injuries and death, and continues to cause injuries and deaths due to fire.

28.

On June 1 2009, GM Corp. sought bankruptcy protection. Following an asset sale under section 363 of the Bankruptcy Code, GM LLC, the company that ~~emerged from the bankruptcy with~~ **purchased** most of GM Corp.'s assets, **including** books ~~, knowledge,~~ and **records, also hired GM Corp.** personnel ~~, now defends lawsuits such as this by trying to distinguish between what it calls "old GM" and "new GM," which GM calls "GM LLC," despite the fact that~~ **.** GM LLC expressly agreed, with Congress and with the Bankruptcy Court in 2009, that it would be liable for ~~all damages~~ **product liabilities** resulting when people were injured post-bankruptcy in vehicles manufactured pre-bankruptcy **by GM Corp**.

29.

~~In the wake of the GM LLC ignition switch scandal, GM LLC CEO Mary Barra appeared before the United States Congress.~~

16

30.

On June 5, 2014, the GM LLC CEO Barra told the Congress and the American people "I am guided by two clear principles: First, that we do the right thing for those who were harmed; and, second, that we accept responsibility for our mistakes and commit to doing everything within our power to prevent this problem from ever happening again."

31.

On June 18, 2014, the GM LLC CEO told the Congress "we have a special responsibility to [the families that lost loved ones, and those who suffered physical injury], and the best way to fulfill that responsibility is to fix the problem by putting in place the needed changes to prevent this from ever happening again."

32.

On April 2, 2014, the GM LLC CEO told the Congress "we will not shirk from our responsibilities now or in the future."

33.

Those statements**Statements** made by GM LLC's CEO speaking for GM LLC[15] are totally and utterly contrary to GM LLC's and GM Corp.'s reckless and wanton failure to warn Americans of the danger posed by **Old GM** CK pickups

[15] *Synovus v. GM LLC*, GM LLC Answers to Plaintiffs' Second Requests for Admission, *Williams v. GM LLC*, number 5.

17

with side-mounted gas tanks.

~~34.~~
**30.**

Despite those statements to the United States Congress and the American people, *GM LLC has denied* "that American citizens have a right to know when GM has identified safety concerns with its vehicles."[16]  *GM LLC has denied* that "GM was aware there was a safety concern regarding its CK pickup trucks."[17]  *GM LLC has refused to admit* "that every human life is worth protecting from preventable injuries caused by design and manufacturing defects."[18]  *GM LLC has refused to admit* "that if there is a safety defect in a GM vehicle GM should warn the public."[19]  *GM LLC has refused to admit* "that if GM knows it can take action to save a human life from a preventable death, it has a duty to do that."[20]  *GM LLC has refused to admit* "that if GM knows it can take action to save a human life from a preventable death, it has a civic responsibility to do that."[21]

## II.  PARTIES, JURISDICTION, VENUE, AND SERVICE OF PROCESS

~~35.~~**31.**

---

[16] *Id.,* numbers 29, 31.
[17] *Id.*, number 32.
[18] *Id.*, number 34.
[19] *Id.*, number 37.
[20] *Id.*, number 42.
[21] *Id.*, number 45.

DMSLIBRARY01\~~31061470~~31075232.v1

Plaintiff Kaitlyn Reichwaldt resides at 5162 Running Doe Drive, Suwannee, GA 30024, is subject to the jurisdiction of this Court, and is a resident of the State of Georgia.

**36.32.**

Defendant GM LLC is a limited liability company organized and incorporated under the laws of Delaware, with a principal place of business located at 300 Renaissance Center, Detroit, Michigan 48265.  GM LLC is engaged in the business of designing, manufacturing, marketing, promoting, advertising, distributing, and selling automobiles, trucks, SUVs, and other types of vehicles in the State of Georgia, throughout the United States, and elsewhere.

**37.33.**

GM LLC is subject to the jurisdiction of this Court because it transacts business in, has registered as a foreign LLC transacting business in and maintains a registered agent in the State of Georgia.  The registered agent for GM LLC is: CSC of Cobb County, Inc., 192 Anderson Street S.E., Suite 125, Marietta, Georgia 30060, where GM LLC may be served with legal process.  By registering to do business and appointing a registered agent for service of process in Georgia, GM LLC has consented to jurisdiction in this state.  GM LLC has admitted that it is

DMSLIBRARY01\31061470.31075232.v1

subject to the jurisdiction of this Court.  Doc. 27.

38.**34.**

GM LLC also is subject to general personal jurisdiction in the state of Georgia because GM LLC is essentially at home in the State of Georgia.  In 2012, GM LLC purchased property and invested more than $25 million in this state to build an Information Technology Innovation Center ("IT Innovation Center") in Roswell, Georgia.  The IT Innovation Center, which is one of only four such centers nationwide, coordinates, facilitates and runs information technology services including research and design functions for GM LLC's nationwide and worldwide business operations.  In a press release announcing the decision to locate the IT Innovation Center in Georgia, the GM LLC Chief Information Officer, Randy Mott, referred to the IT Innovation Center as "critical to [GM's] overall business strategy."  In exchange for selecting Georgia as the home of an IT Innovation Center, GM LLC asked for and received more than $20 million in tax incentives from the state of Georgia.  In total, GM LLC employs more than 1,000 Georgia residents as employees at the IT Innovation Center.  As a result of the foregoing, GM LLC has chosen to be essentially at home in the state of Georgia and is subject to general personal jurisdiction in this state.

39.

DMSLIBRARY01\31061470.31075232.v1

**35.**

Venue is proper in this Court because the Northern District of Georgia is the federal district Court for Cobb County, Georgia, the county from which this case was removed by GM LLC.

### III. OPERATIVE FACTS

40.

**36.**

The excruciating thermal burns suffered by Kaitlyn Reichwaldt were the direct and proximate result of the explosion and fire.

41.

**37.**

Consumed by the fire and smoke engulfing her car, Ms. Reichwaldt consciously suffered and endured shock, terror, fright, physical and mental pain, suffering, and injuries.

42.

**38.**

The fire and fire-related injuries of Kaitlyn Reichwaldt were caused by design defects in the 1984 **Old GM** CK pickup.

DMSLIBRARY01\31061470.31075232.v1

43.

**39.**

Before it designed, built, and sold the subject pickup, GM Corp. knew that the fuel system design of the subject pickup was defective and vulnerable to side impact. GM Corp. also knew that a midship gas tank located inside the frame rails and between the axles would be a much less vulnerable location than the side-mounted gas tank outside the frame rails. ~~GM LLC acquired that same notice. After July 10, 2009, GM LLC was independently put on that same notice.~~

44.

**40.**

Before it designed, built, and sold the subject pickup, GM Corp. knew that locating the gas tank inside the frame rails and between the axles would provide much greater protection during side impacts, resulting in increased protection for occupants of the pickups and anyone whose vehicle is hit by or hits a CK. ~~GM LLC acquired that knowledge. After July 10, 2009, GM LLC independently obtained that same knowledge.~~

~~45.~~**41.**

Before and after it designed, built and sold the subject pickup and before Kaitlyn Reichwaldt's injuries, GM Corp. knew that a vehicle with a gas tank

22

mounted on the side, *outside* of the frame rail, was more likely to leak gas as a result of a rupture in a side-impact collision than a vehicle with a gas tank mounted *inside* of the frame rail. ~~GM LLC acquired that knowledge. Since July 10, 2009, GM LLC has independently obtained that same knowledge.~~

~~46.~~**42.**

Before and after it designed built and sold the subject pickup and before Kaitlyn Reichwaldt's injuries, GM Corp. knew that when a vehicle with a gas tank mounted on the side, outside of the frame rail, was struck during a side-impact collision, a deadly post-collision fuel fed fire was a clear risk. ~~GM LLC acquired that knowledge. Since July 10, 2009, GM LLC has independently obtained that the same knowledge.~~

~~47.~~**43.**

GM Corp. ~~and GM LLC have~~ affirmatively tried to keep citizens and potential victims ignorant of dangers posed by GM Corp.'s side-mounted gas tanks.

~~48.~~**44.**

As a direct result of GM Corp.'s ~~and GM LLC's~~ conduct outlined above, Kaitlyn Reichwaldt was severely burned by fire.

~~49.~~**45.**

23

In 2009, after GM Corp. filed for Chapter 11 bankruptcy protection, Defendant GM LLC purchased the assets of GM Corp., including GM Corp.'s books and records. ~~After the sale, GM LLC has profited from entering into service maintenance and repair relationships with purchasers of GM Corp. products, and from manufacturing and selling parts and accessories for GM Corp. products (including the subject 1984 CK truck).~~

~~50.~~

**46.**

As part of its 2009 purchase of **assets of** GM Corp., Defendant GM LLC expressly assumed liability for product liability claims against GM Corp. arising from wrecks occurring after the sale.

~~51.~~

~~After the bankruptcy sale, Defendant GM LLC employed nearly all of GM Corp.'s employees.  In short, GM LLC acquired all specific knowledge about the subject pickup previously possessed by GM Corp.~~

~~52.~~

~~Defendant GM LLC could have reasonably foreseen and did, in fact, foresee the occurrence of side impact collisions resulting in fires such as the one described in this Complaint.~~

24

DMSLIBRARY01\\~~31061470~~31075232.v1

53.

Since the bankruptcy sale, Defendant GM LLC has acquired from GM Corp. and obtained on its own actual knowledge that a gas tank located on the side of a pickup in a known crush zone is vulnerable to side impact, and that the result can be, and often has been, fires that seriously burn and/or kill vehicle occupants and others.

54.

Despite knowledge of its duty to warn the public arising from its purchase of GM Corp.'s assets, Defendant GM LLC failed at the time of the bankruptcy sale—and all times since—to warn the public, and Plaintiff in particular, of the dangers in a foreseeable wreck caused by the design of the CK trucks.

55.

Defendant GM LLC's reckless, and wanton conduct constituted disregard for the life and safety of Kaitlyn Reichwaldt and the lives and safety of the motoring public generally.  GM LLC's reckless and wanton conduct also manifests a conscious indifference to the foreseeable consequences of that conduct to people like Kaitlyn Reichwaldt.

### III IV.  ASSUMED LIABILITY OF GM LLC

### COUNT ONE—NEGLIGENCE & STRICT LIABILITY

25

56.

**47.**

Plaintiff realleges and reincorporates Paragraphs 1 through 5546 as if fully set forth herein verbatim.

57.

**48.**

The subject pickup was designed, manufactured, marketed, and distributed by GM Corp.

58.

**49.**

GM Corp. had a duty to exercise reasonable care to design, engineer, test, manufacture, inspect, market, distribute, and sell safe vehicles so as not to subject consumers or motorists to an unreasonable risk of harm. GM Corp. breached its duty to exercise reasonable care with respect to the subject pickup.

59.

**50.**

The subject pickup, when distributed by GM Corp., had a defectively designed gas system which caused the subject pickup to explode, which explosion and fire engulfed the subject pickup. The defective design of the fuel system

proximately caused the injuries to Kaitlyn Reichwaldt.

~~60.~~

**51.**

Despite GM Corp.'s knowledge that the gas tank on its pickup trucks must be mounted as near the center of the vehicle as practical, GM Corp. made the decision to place the gas tank outside the frame rail on the subject pickup for marketing reasons.

~~61.~~

**52.**

GM Corp. violated its own internal design directive by placing the gas tank in a known crush zone.

~~62.~~

**53.**

GM Corp. violated its own internal design directive by not properly eliminating or shielding the gas tank from all objects which could result in cutting or puncturing of the gas tank.

~~63.~~

**54.**

27

GM Corp. failed to design a fuel system whereby the gas tank was protected from rupture due to side impact or sharp objects, despite the fact it was technologically feasible and economically practicable to so design the fuel system.

64.

**55.**

GM Corp. elected not to implement technologically feasible, economically practicable, and fundamentally safer alternative designs for the gas tank location and design on the subject pickups.

65.

**56.**

GM Corp. instead elected a design and gas tank location that it absolutely knew would result in fires, injuries, and deaths in foreseeable side-impacts.

66.

**57.**

GM Corp.'s negligence proximately caused the injuries to Kaitlyn Reichwaldt.

67.
**58.**

GM Corp. is strictly liable in tort for the injuries to Kaitlyn Reichwaldt.

68.

DMSLIBRARY01\31061470 31075232 v1

**59.**

Defendant GM LLC assumed liability for product liability claims against GM Corp. that arose after the bankruptcy sale. Plaintiff's negligence and strict liability claims against GM Corp. are properly asserted against GM LLC.

**COUNT TWO—RECKLESS & WANTON MISCONDUCT**

~~69.~~

**60.**

Plaintiff realleges and reincorporates Paragraphs 1 through ~~68~~**59** as if fully set forth herein verbatim.

~~70.~~

**61.**

GM Corp.'s misconduct was a reckless and wanton disregard for the lives and wellbeing of the public, and of untold numbers of victims, including Kaitlyn Reichwaldt.

~~71.~~

**62.**

The reckless and wanton misconduct by GM Corp. proximately caused the burn injuries to Kaitlyn Reichwaldt.

~~72.~~

**63.**

29

Plaintiff is entitled to recover damages from GM Corp. pursuant to

O.C.G.A. § 51-1-11(b) (the "statute of repose") and other applicable law.

~~73.~~

**64.**

Defendant GM LLC assumed liability for product liability claims against

GM Corp. that arose after the bankruptcy sale.  Plaintiff's negligence and strict

liability claims against GM Corp. are properly asserted against GM LLC.

**COUNT THREE—FAILURE TO WARN**

~~74.~~

**65.**

Plaintiff realleges and reincorporates Paragraphs 1 through ~~73~~**64** as if fully

set forth herein verbatim.

~~75.~~

**66.**

As the manufacturer of vehicles distributed and sold to the public, GM

Corp. had a duty to adequately warn the public about dangers it knew to exist in its

vehicles.

~~76.~~

**67.**

By failing to warn of the danger, GM. Corp. breached its duty and obligations to the public, including Kaitlyn Reichwaldt.

~~77.~~

**68.**

GM Corp.'s failure to warn citizens about the dangers of its side-mounted gas tanks, but to instead profess for decades that no such danger exists, was itself reckless and wanton.

~~78.~~

**69.**

GM Corp.'s election not to warn of the known defective and unreasonably dangerous conditions in the subject pickup proximately caused the injuries to Kaitlyn Reichwaldt.

~~79.~~

**70.**

Plaintiff is entitled to recover damages for GM Corp.'s failure to warn pursuant to O.C.G.A. § 51-1-11(b) (the "statute of repose") and other applicable law.

~~80.~~

**71.**

31

Defendant GM LLC assumed liability for product liability claims against GM Corp. that arose after the bankruptcy sale.  Plaintiff's failure to warn claim against GM Corp. is a product liability claim and is properly asserted against GM LLC.

### COUNT FOUR—PUNITIVE DAMAGES

81.

Plaintiff realleges and reincorporates Paragraphs 1 through 80 as if fully set forth herein verbatim.

82.

GM Corp. is guilty of such willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care that its misconduct is sufficient to raise the presumption of conscious indifference to the consequences.

83.

GM Corp.'s misconduct is so aggravating it authorizes, warrants, *and demands* the imposition of substantial punitive damages against GM LLC pursuant to O.C.G.A. § 51-12-5.1 because GM LLC assumed liability for product

32

liability claims against GM Corp. that arose after the bankruptcy.[22]

## IV~~V~~.  INDEPENDENT LIABILITY OF GM LLC

**COUNT ~~FIVE—FAILURE TO WARN~~FOUR—EXPENSES OF LITIGATION**

~~84.~~

**72.**

Plaintiff realleges and reincorporates Paragraphs 1 through ~~55~~**71** as if fully set forth herein verbatim.

~~85.~~

~~At the time that GM LLC purchased substantially all of the assets of GM Corp., and at all times since, GM LLC, like GM Corp., could reasonably have foreseen and did, in fact, foresee the occurrence of a PCFFF such as the one that burned Kaitlyn Reichwaldt, and GM LLC knew or reasonably should have known that the subject CK pickup would fail and cause injuries like those Kaitlyn Reichwaldt suffered.~~

~~85.~~

~~[22] Plaintiff contends that GM LLC assumed liability for punitive damages based on the conduct of GM Corp. as part of GM LLC's assumption of liability for product liability claims.  GM LLC has contended that it did not assume liability for punitive damages based on GM Corp.'s conduct.  Kaitlyn Reichwaldt intends to litigate that issue.  Plaintiff will assert at trial those claims, and only those claims, which the Court determines she is legally allowed to assert.~~

33

As a result of its purchase of GM Corp.'s assets, GM LLC owed a duty to the consuming public in general, and to Plaintiff in particular, to warn of the dangers arising from the design of the subject CK pickup.  GM LLC's duty to warn arose at the time it purchased substantially all of the assets of GM Corp. and continued up to, and after, the time of Kaitlyn Reichwaldt's injury.

86.

By failing to warn of the danger, GM LLC breached its duty and obligations to the public, including Kaitlyn Reichwaldt.

87.

GM LLC's failure to warn citizens about the dangers of the CK side-mounted gas tanks, while instead professing (as its predecessor GM Corp. did for decades) that no such danger exists, was itself reckless and wanton.

88.

GM LLC's election not to warn of the known defective and unreasonably dangerous conditions in the subject pickup proximately caused the injuries to Kaitlyn Reichwaldt.

89.

Plaintiff is entitled to recover damages for GM LLC's failure to warn

34

pursuant to O.C.G.A. § 51-1-11(b) (the "statute of repose") and other applicable law.

## COUNT SIX — PUNITIVE DAMAGES

### 90.

Plaintiff realleges and reincorporates Paragraphs 1 through 55 as if fully set forth herein verbatim.

### 91.

GM LLC, by failing to warn of known dangers, is guilty of such willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care that its misconduct is sufficient to raise the presumption of conscious indifference to the consequences.

### 92.

GM LLC's misconduct is so aggravating it authorizes, warrants, *and demands* the imposition of substantial punitive damages against GM LLC pursuant to O.C.G.A. § 51-12-5.1.

## COUNT SEVEN — EXPENSES OF LITIGATION

### 93.

DMSLIBRARY01\31061470 31075232.v1

Plaintiff realleges and reincorporates Paragraphs 1 through 55 as if fully set forth herein verbatim.

94.

**73.**

GM LLC has acted in bad faith, has been stubbornly litigious, and has caused the Plaintiff unnecessary trouble and expense, entitling Plaintiff to recover from Defendant all costs of litigation, including attorneys' fees and expenses, pursuant to O.C.G.A. § 13-6-11 and other applicable law.

## ~~V~~**VI**. DAMAGES SOUGHT

95.

**74.**

Plaintiff realleges and reincorporates Paragraphs 1 through ~~94~~**73** as if fully set forth herein verbatim.

87.

**75.**

The damages claimed by Plaintiff were proximately caused by the tortious acts and omissions of GM Corp. ~~and GM LLC.~~

88.

**76.**

36

Plaintiff Kaitlyn Reichwaldt seeks all damages allowed by law, including

the following:

    (a)    shock, fright, and terror experienced from the time of the incident;

    (b)    mental and physical pain and suffering endured from the time of the

        incident;~~;~~

    (c)    past and future medical bills;

    ~~(d)~~   ~~punitive damages to punish and deter GM LLC pursuant to O.C.G.A.~~

        ~~§ 51-12-5.1;~~ and

    **(d)** ~~(e)~~        attorneys' fees and litigation expenses pursuant to O.C.G.A. §

        13-6-11 and other applicable law.

### ~~V~~**VII**.  PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for the following relief:

    (a)    That summons issue requiring Defendant to appear as provided by

        law to answer this Complaint;

    (b)    That service be had upon Defendant as provided by law;

    (c)    That Plaintiff have and recover all damages for all losses

        compensable under Georgia law as set forth above;

    ~~(d)~~   ~~That the Court award and order punitive damages against Defendant;~~

    ~~(e~~**(d)**   That all expenses of litigation, including attorneys' fees, be cast

37

against Defendant;

(fe)    That Plaintiff have a trial by jury; and

(gf)    For such other and further relief as the Court shall deem just and

proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

This _____ day of AugustSeptember, 2017.

                              BUTLER WOOTEN & PEAK LLP


                    BY: _____
                              JAMES E. BUTLER, JR.
                              Georgia Bar No. 099625
                              ROBERT H. SNYDER
                              Georgia Bar No. 404522
                              DAVID T. ROHWEDDER
                              Georgia Bar No. 104056
                              JOSEPH M. COLWELL
                              Georgia Bar No. 531527

                              105 13th Street
                              Post Office Box 2766
                              Columbus, Georgia 31902
                              (706) 322-1990
                              (706) 323-2962 (fax)

                              **ATTORNEYS FOR PLAINTIFF**

DMSLIBRARY01\31061470.31075232.v1