# EXHIBIT A

09-50026-mg Doc 14104-1 Filed 09/14/17 Entered 09/14/17 14:19:41 Exhibit A
Memorandum Opinion and Order [Doc. 14087] Pg 2 of 19

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document
Pg 1 of 18

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

MOTORS LIQUIDATION COMPANY, *et al.,*

f/k/a General Motors Corp*., et al.*,

Debtors.

**FOR PUBLICATION**

Case No. 09-50026 (MG)

(Jointly Administered)

**MEMORANDUM OPINION AND ORDER ENFORCING PROVISIONS OF SALE
ORDER REGARDING ASSUMPTION OF LIABILTIY OF PRODUCT LIABILITY
CLAIMS OF KAITLYN REICHWALDT**

*A P P E A R A N C E S :*

KING & SPALDING LLP
Attorneys for General Motors LLC
1185 Avenue of the Americas
New York, NY 10036
By: Arthur Steinberg, Esq.
    Scott Davidson, Esq.

KIRKLAND & ELLIS LLP
Attorneys for General Motors LLC
300 North LaSalle
Chicago, IL 60654
By: Richard C. Godfrey, Esq.
By: Andrew B. Bloomer, Esq.

BUTLER WOOTEN & PEAK LLP
Attorneys for Kaitlyn Reichwaldt
105 Thirteenth Street
Columbus, GA 31901
By: James E. Butler, Jr., Esq.
    Robert H. Snyder, Jr., Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Motion to Enforce the Bankruptcy Court's July 5, 2009,*

*Sale Order and Injunction and the Rulings in Connection Therewith, With Respect to the*

*Reichwaldt Plaintiff* (the "Motion," ECF Doc. # 14016), filed on July 28, 2017, by General

09-50026-mg Doc 14104-1 Filed 09/14/17 Entered 09/14/17 14:19:41 Exhibit A Pg 2 of 18

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document
Memorandum Opinion and Order [Doc. 14087] Pg 3 of 19

Motors LLC ("New GM"). The Motion is supported by several exhibits, including the complaint (the "Reichwaldt Complaint," ECF Doc. # 14016-2) filed by Kaitlyn Reichwaldt in the State Court of Cobb County, Georgia, Case No. 16A-1405-2, and removed to the United States District Court for the Northern District of Georgia (the "Georgia Federal Court"), Case No. 1:16-cv-02171-twt (the "Reichwaldt Action"). Reichwaldt filed an opposition to the Motion (the "Opposition," ECF Doc. # 14068). Among other exhibits, the Opposition attaches the Proposed First Amended Complaint in the Reichwaldt Action (the "Proposed FAC," ECF Doc. # 14068-1). New GM filed a reply brief (the "Reply," ECF Doc. # 14081). The Court heard argument on August 29, 2017, and took the matter under submission.

For the below reasons, the Motion is **GRANTED**.

## I. BACKGROUND

The background information is largely drawn from the Motion. A more complete history of the General Motors Corporation ("Old GM") bankruptcy can be found in this Court's prior opinions.

### A. The Sale Order, June 2015 Judgment, and Second Circuit Opinion

On the same day it filed its bankruptcy petition (June 1, 2009), Old GM filed a motion to sell substantially all of its assets to New GM. *See In re Gen. Motors Corp.*, 407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009), *aff'd in part, vacated in part, reversed in part sub nom. Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S. Ct. 1813 (2017). The Sale Order (ECF Doc. # 2968) was entered on July 5, 2009, and the sale (the "363 Sale") closed on July 10, 2009. Under the Sale Agreement (ECF Doc. # 2968-2), New

2

GM assumed Product Liabilities[1] for Old GM vehicles (*e.g.*, claims arising out of post-363 Sale accidents).  (*See* Sale Agreement, § 2.3(a), as amended.)  New GM concedes that certain of Reichwaldt's claims fall within the definition of assumed Product Liabilities, but argues that others do not.

The Sale Order provides that, except for Assumed Liabilities, New GM is not liable for claims based on Old GM conduct, including successor liability claims.  *See, e.g.,* Sale Order, ¶ AA; *Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-09803 (REG), 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013).  Paragraph 71 of the Sale Order affirms the Bankruptcy Court's exclusive jurisdiction over matters regarding the 363 Sale.

In 2014, New GM announced a number of recalls relating to the ignition switches in certain Old GM vehicles.  Thereafter, lawsuits were filed against New GM asserting personal injury and economic loss claims allegedly arising from these defects in Old GM vehicles.[2]  New GM filed three motions to enforce the Bankruptcy Court's Sale Order and Injunction.  On June 1, 2015, the Bankruptcy Court entered its Judgment (the "June 2015 Judgment," ECF Doc. # 13177) holding, among other things, that the Sale Order and Injunction would be modified because Ignition Switch Plaintiffs[3] (but not other plaintiffs, such as Reichwaldt) established a due process violation in connection with Old GM's notice of the 363 Sale.  While Judge Gerber concluded that Ignition Switch Plaintiffs were not prejudiced and, therefore, remained bound by

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in *In re Motors Liquidation Co.*, Case No. 09-50026 (MG), 2017 WL 2963374 (Bankr. S.D.N.Y. July 12, 2017) [defined below as the *July 2017 Opinion*].

[2] As discussed in Section I.E., *infra*, Reichwaldt's automobile was struck by a Chevrolet pickup truck manufactured by Old GM in 1984 with an alleged design defect concerning the location of the fuel tank; no ignition switch defect or vehicle recall was involved.

[3] The June 2015 Judgment defines the term Ignition Switch Plaintiffs as those plaintiffs who assert claims against New GM based on the first three ignition switch recalls issued by New GM in February/March 2014.  (*See* June 2015 Judgment, at 1 n.1.)  Reichwaldt is not an "Ignition Switch Plaintiff."

3

09-50026-mg Doc 14104-1 Filed 09/14/17 Entered 09/14/17 14:19:41 Exhibit A
Memorandum Opinion and Order [Doc. 14087] Pg 5 of 19

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document
Pg 4 of 18

the free and clear provisions of the Sale Order, those plaintiffs could assert Independent Claims against New GM based only on New GM's alleged post-sale conduct.

After an appeal of the June 2015 Judgment, the Second Circuit entered an Opinion on July 13, 2016, ruling that, because of a due process violation committed by Old GM in failing to give notice to known claimants owning vehicles that had been recalled because of certain ignition switch defects, Ignition Switch Plaintiffs were prejudiced by lack of notice and were not bound by the free and clear provisions of the Sale Order. The Second Circuit agreed with Judge Gerber with respect to Ignition Switch Plaintiffs being able to assert Independent Claims against New GM, which the Second Circuit defined as those "sorts of claims [that] are based on New GM's *post-petition* conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct." *In re Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016) (emphasis in original).

### B. The November 2015 Opinion and December 2015 Judgment

After the June 2015 Judgment, but before the Second Circuit Opinion, Judge Gerber made further rulings (*In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015) [hereinafter *November 2015 Opinion*], and the "December 2015 Judgment," ECF Doc. # 13563) relating to the enforcement of the Sale Order and Injunction. In the December 2015 Judgment, the Court ruled that although New GM expressly assumed liability for Product Liabilities arising from post-closing accidents of vehicles manufactured by Old GM, New GM did not contractually assume liability for punitive damages based on Old GM knowledge or conduct, or anything else that took place at Old GM. (December 2015 Judgment, ¶ 6.) The Court also prohibited plaintiffs from making certain claims against New GM, including among others: (i) "[a]llegations that do not distinguish between Old GM and New GM (*e.g.*, referring to 'GM' or 'General Motors') . . ." (December 2015 Judgment, ¶ 17); and (ii) "[a]llegations that allege or

4

09-50026-mg Doc 14104-1 Filed 09/14/17 Entered 09/14/17 14:19:41 Exhibit A Memorandum Opinion and Order [Doc. 14087] Pg 6 of 19

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document Pg 5 of 18

suggest that New GM manufactured or designed an Old GM Vehicle, or performed other conduct relating to an Old GM Vehicle before the Sale Order . . ." (*id*. ¶ 18). Complaints "containing such allegations are and remain stayed, unless and until they are amended consistent with the Decision and this Judgment." (*Id*. ¶¶ 17, 18.)

        **C.**       **The December 2016 Order to Show Cause and the 2016 Threshold Issues**

After the Second Circuit decision affirming in part and reversing in part the June 2015 Judgment, the case was remanded to the bankruptcy court for proceedings consistent with the Second Circuit's opinion. Many questions remained about what claims could be asserted against New GM, or as late claims against Old GM. After Judge Gerber retired in January 2016, all of the Motors Liquidation matters pending in the bankruptcy court were reassigned to me.

On December 13, 2016, this Court entered an order to show cause (the "December 2016 OSC," ECF Doc. # 13802), defining the 2016 Threshold Issues, identified by the plaintiffs and by New GM, that the bankruptcy court would address, and the procedures for resolving them. *The December 2016 OSC stated that plaintiffs served with that order would be bound by the Court's rulings on the 2016 Threshold Issues.* (December 2016 OSC at 1.) Reichwaldt's counsel, Butler Wooten & Peak, LLP ("Butler Wooten"), was timely served with the December 2016 OSC. (*See* Motion Ex. C (December 2016 service letter).) Butler Wooten did not respond to the December 2016 OSC. In connection with the 2016 Threshold Issues, the clients of Butler Wooten were represented in the bankruptcy court by Goodwin Proctor. (*See* ECF Doc. # 13866 at 1 (Plaintiffs' joint opening brief, stating that the brief was filed on behalf of, among others, "Those Certain Post-Closing Accident Plaintiffs Represented by Butler Wooten"); ECF Doc. # 13641 (Goodwin Proctor notice of appearance on behalf of, among others, Butler Wooten).) Reichwaldt claims that Goodwin Proctor represented another Butler Wooten client in connection

5

with the 2016 Threshold Issues, but not her.[4] The Court doubts the accuracy of that statement, but it is unnecessary to resolve it with respect to the pending motion. Butler Wooten acknowledges that it was served with the December 2016 OSC on behalf of Reichwaldt, and during the argument on August 29, 2017, Reichwaldt's counsel from Butler Wooten acknowledged that she is bound by the Court's rulings on the 2016 Threshold Issues.

### D. The June 2017 and July 2017 Opinions

On June 7, 2017, the Court issued an opinion deciding Threshold Issue Two (whether Non-Ignition Switch Plaintiffs may assert Independent Claims against New GM). *In re Motors Liquidation Co.*, 568 B.R. 217 (Bankr. S.D.N.Y. 2017) [hereinafter *June 2017 Opinion*]. The Court ruled that claims based on post-closing wrongful conduct of New GM could go forward as Independent Claims, but (as discussed further below) such claims must clearly distinguish between actions of Old GM and New GM. *June 2017 Opinion*, 568 B.R. at 220 n.1.

Thereafter, on July 12, 2017, this Court entered another Opinion deciding 2016 Threshold Issues Nos. 1, 3 and 4. *See In re Motors Liquidation Co.*, Case No. 09-50026 (MG), 2017 WL 2963374 (Bankr. S.D.N.Y. July 12, 2017) [hereinafter *July 2017 Opinion*]. In the *July 2017 Opinion*, the Court affirmed that "truly Independent Claims" are "claims based solely on wrongful post-closing conduct of New GM . . . ." *Id.* at *2 n.2. The Court also held that "Post-Closing Accident Plaintiffs may not assert claims against New GM for punitive damages based on conduct of Old GM." *Id.* at *11; *see also* December 2015 Judgment ¶ 6. In addition, the Court ruled in the *July 2017 Opinion* that "Judge Gerber's [December 2015] ruling therefore

---

[4] The Court notes that Goodwin Proctor's notice of appearance on behalf of Butler Wooten clients was not qualified in any way; additionally, Reichwaldt's Opposition echoes (in some instances, verbatim) arguments made by Goodwin Proctor.

6

09-50026-mg Doc 14104-1 Filed 09/14/17 Entered 09/14/17 14:19:41 Exhibit A
Memorandum Opinion and Order [Doc. 14087] Pg 8 of 19

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document
Pg 7 of 18

remains law of the case and New GM cannot be held liable for punitive damages on a contractual basis." *July 2017 Opinion*, 2017 WL 2963374, at *7.

### E. Reichwaldt and the Reichwaldt Action

On January 27, 2015, Reichwaldt's vehicle was struck by a 1984 model year Chevrolet pickup truck. (Reichwaldt Complaint ¶¶ 4–5.) The impact caused the pickup truck's fuel tank to explode. Reichwaldt alleged a design defect with respect to the placement of the truck's fuel tank in the "crush zone" that was vulnerable to side impact. (*Id.* ¶ 1.) Reichwaldt was severely burned in the accident. (*Id.* ¶ 5.) On May 19, 2016, Reichwaldt brought suit against New GM in Georgia state court, alleging (i) Negligence & Strict Liability, (ii) Reckless & Wanton Conduct, and (iii) Failure to Warn. (*See generally* Reichwaldt Complaint.) In addition to compensatory damages, Reichwaldt also seeks punitive damages. (*Id.* ¶ 88.) New GM removed the case to the Georgia Federal Court. (Opposition at 2.)

Two days after entry of the *July 2017 Opinion*, New GM sent Reichwaldt's counsel a letter (Motion Ex. D) asserting that the Reichwaldt Complaint contains certain allegations, claims and damage requests that violate the Bankruptcy Court rulings, including the *July 2017 Opinion*. Reichwaldt's counsel responded in a letter dated July 20, 2017 (Motion Ex. H) and agreed to consider amending the Reichwaldt Complaint, but asserted that she could continue to seek punitive damages against New GM because Reichwaldt had not yet filed suit against New GM at the time of the November 2015 Opinion and December 2015 Judgment. (*Id.* at 1.)

Counsel for New GM and Reichwaldt have a discovery dispute pending before the Georgia Federal Court. Reichwaldt is seeking to compel discovery of documents and information relating to her claim for punitive damages. New GM argues that discovery relating to punitive damages is improper because Reichwaldt is seeking punitive damages on (i) Assumed Liabilities for which punitive damages are not recoverable, and (ii) Independent

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document
Pg 8 of 18

Claims, for which punitive damages may be recoverable, but Independent Claims solely based on New GM's post-closing conduct have not been properly pleaded. Both parties have briefed the issue to the Georgia Federal Court, which has not yet ruled on the issue. (*See* Motion Exs. I, J.) The proper scope of discovery in the Reichwaldt Action is a matter for the Georgia Federal Court, not for this Court. Whether the Reichwaltd Complaint impermissibly alleges Independent Claims by relying on Old GM conduct is a matter for this Court to decide. Whether a complaint that does not impermissibly rely on Old GM conduct states a claim under applicable nonbankruptcy law is also a matter for the Georgia Federal Court, not for this Court.

## II. LEGAL STANDARD

### A. Independent Claims

In the *June 2017 Opinion*, this Court held that Post-Closing Accident Plaintiffs were not bound by the free and clear provisions of the Sale Order because they were not claimants at the time of the 363 Sale. *June 2017 Opinion*, 568 B.R. at 231. The Court compared Post-Closing Accident Plaintiffs to the plaintiff in *In re Grumman Olson Industries, Inc.* 445 B.R. 243 (Bankr. S.D.N.Y. 2011), *aff'd*, 467 B.R. 694 (S.D.N.Y. 2012). In *Grumman Olson*, Judge Bernstein held that a plaintiff who was injured post-petition by a vehicle manufactured pre-petition, who had no contact with the debtor prior to the accident, and who received no notice of the bankruptcy, did not hold a "claim" that could be barred at the time of a sale under section 363. *See id.* at 254. The Court was especially guided by the analysis of the Second Circuit, which defined a claim as "(1) a right to payment (2) that arose before the filing of the petition." *In re Motors Liquidation Co.*, 829 F.3d at 156. Because Post-Closing Accident Plaintiffs did not hold a right to payment until they were injured *after* the bankruptcy, the Court held that their claims could not be barred by the free and clear provisions of the Sale Order. *June 2017 Opinion*, 568 B.R. at 231. Indeed, in *In re Old Carco LLC*, Judge Bernstein noted that post-closing purchasers of cars manufactured

8

09-50026-mg   Doc 14104-1   Filed 09/14/17   Entered 09/14/17 14:19:41   Exhibit A
Memorandum Opinion and Order [Doc. 14087]   Pg 10 of 19

09-50026-mg   Doc 14087   Filed 08/31/17   Entered 08/31/17 15:47:10   Main Document
Pg 9 of 18

by pre-bankruptcy Chrysler were "not affected by the sale order" in that case. *Burton v. Chrysler Group LLC (In re Old Carco LLC)*, 492 B.R. 392, 406 (Bankr. S.D.N.Y. 2013). However, he held that plaintiffs who had purchased Chrysler vehicles *pre*-bankruptcy, who then alleged economic loss as a result of a design defect that was largely uncovered post-363 sale, were not future claimants under *Grumman Olson*. *Id.* at 402–03. Because those plaintiffs purchased their vehicles before the bankruptcy sale, they had contingent claims in the bankruptcy and were therefore bound by the section 363 sale order. *Id.*

New GM has assumed Product Liabilities claims regardless of when the accident occurred (*see* Sale Agreement, § 2.3(a), as amended), making it unnecessary to determine whether Post-Closing Accident Plaintiffs could assert successor-liability claims absent the assumption of liability in the Sale Order. But, as discussed below, New GM is not liable for punitive damages on those claims. Accordingly, the only way for a plaintiff to obtain punitive damages from New GM is to bring a claim based on conduct of *New GM itself*, not conduct of Old GM. Reichwaldt's failure to warn claim against New GM is a faulty attempt to bring just such a claim. As explained below, Reichwaldt fails to allege—other than in conclusory allegations and generalities—"truly independent claims based solely on New GM's wrongful conduct," which this Court has previously held is required to state an Independent Claim against New GM. *See June 2017 Opinion*, 568 B.R. at 231. Only those claims satisfying this standard may pass through the bankruptcy gate as Independent Claims. *Id.*

The Court noted in the *June 2017 Opinion* that its role in these products liability cases is as a "gatekeeper," not to decide issues of state law. *Id.* at 222 ("The Court's role, then, is a gatekeeper role. It should be the court to decide what claims and allegations should get through the gate, under the Sale Order and this Court's prior decisions.") (internal citation omitted). It is,

9

09-50026-mg Doc 14104-1 Filed 09/14/17 Entered 09/14/17 14:19:41 Exhibit A Pg 10 of 18

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document
Memorandum Opinion and Order [Doc. 14087] Pg 11 of 19

therefore, this Court's role to analyze whether the Reichwaldt Complaint and Proposed FAC may pass through the bankruptcy gate as Independent Claims. If the claims pass through the bankruptcy court gate, the Georgia Federal Court will have to decide whether the complaint sufficiently alleges claims under applicable nonbankruptcy law. Deciding whether a similar complaint appropriately stated an Independent Claim in the *June 2017 Opinion*, the Court wrote:

> The Court emphasizes that its analysis here applies only to claims based solely on New GM's alleged wrongful conduct. It is not acceptable, as the Pitterman Complaint does in several paragraphs, to base allegations on generalized knowledge of both Old GM and New GM. To pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct. The Pitterman Plaintiffs' counsel acknowledged during oral argument that the current complaint crosses the line, basing the purported independent claims on conduct of both Old GM and New GM. Such allegations are not permissible.

*Id*. at 231 (noting that whether to permit plaintiffs to amend the complaint was a decision for the non-bankruptcy court). Judge Bernstein addressed a similar duty to warn claim in *Burton*, noting that "the law may impose a separate duty to warn on New Chrysler," but whether post-closing purchasers had alleged legally sufficient claims was a question for the non-bankruptcy court. *Burton*, 492 B.R. at 405–06.

### B. Punitive Damages

The Court's *July 2017 Opinion* clearly holds that (i) New GM did not contractually assume liability for punitive damages arising from Old GM's conduct in connection with Post-Closing Accidents; and (ii) such punitive damages are not available against New GM on a successor liability theory. *July 2017 Opinion*, 2017 WL 2963374, at \*10–11. Additionally, the *July 2017 Opinion* concluded that imposing punitive damages liability on New GM based on Old GM conduct was inconsistent with the claims priority scheme set forth in the Bankruptcy Code:

> While an insolvent debtor may pay general unsecured claims on a pro rata basis, the Bankruptcy Code dictates that an insolvent debtor

10

09-50026-mg Doc 14104-1 Filed 09/14/17 Entered 09/14/17 14:19:41 Exhibit A
Memorandum Opinion and Order [Doc. 14087] Pg 12 of 19

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document
Pg 11 of 18

would never pay punitive damages until higher priority claims are paid in full. It is thus inconsistent with the Bankruptcy Code to hold a purchaser in a section 363 sale liable for damages that would be categorically barred as a matter of priority had the sale never occurred.

Exposing a section 363 buyer to punitive damages based on the conduct of the insolvent seller—when the Bankruptcy Code prevents recovery of punitive damages from the insolvent seller— would seriously chill a robust section 363 sale process designed to maximize creditor recoveries. The buyer would be unable to quantify the financial risk to which it was exposing itself in purchasing the assets; the stronger the financial condition of the buyer, the greater the risk of a large punitive damages award based on the insolvent seller's conduct.

*Id.* at *10 (footnote omitted).

### C. Res Judicata

The Court has previously explained that

[r]es judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 338 (E.D.N.Y. 2012). Under federal law, res judicata "bars later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (alteration in original) (internal quotation marks omitted).

*In re MF Glob. Holdings, Ltd.*, No. 11-15059 (MG), 2014 WL 3536977, at *4 (Bankr. S.D.N.Y. July 17, 2014). The pendency of an appeal does not affect a decision's finality for *res judicata* purposes. *See Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941) ("In the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality."). The *July 2017 Opinion* already decided that punitive

11

09-50026-mg Doc 14104-1 Filed 09/14/17 Entered 09/14/17 14:19:41 Exhibit A
Memorandum Opinion and Order [Doc. 14087] Pg 13 of 19

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document
Pg 12 of 18

damages may not be recovered from New GM based on conduct of Old GM. While some of the parties that appeared in connection with the 2016 Threshold Issues, including the punitive damages issue, have appealed this Court's *July 2017 Opinion*, Reichwaldt (despite having received notice of the December 2016 OSC) did not file any papers, appear at the hearing or appeal the decision. The *July 2017 Opinion*—including the ruling on punitive damages—is *res judicata* as to Reichwaldt.

### D. Law of the Case

"[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (citing *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)) (quotation marks omitted). Where *res judicata* bars parties in subsequent actions from relitigating what has already been decided, law of the case "holds that a court should adhere to its earlier decisions in subsequent stages of litigation unless compelling reasons counsel otherwise." *Tomasino v. Estee Lauder Companies, Inc.*, No. 13-CV-4692 (ERK) (RML), 2015 WL 1470177, at *1–2 (E.D.N.Y. Mar. 31, 2015) (noting that law of the case is an "analytically distinct concept" from *res judicata*) (citation omitted). Compelling reasons may include an intervening change in the law, new evidence, or the need to correct a clear error of law or to prevent manifest injustice. *Carr*, 557 F.3d at 102. By maintaining consistency in a court's rulings, the law of the case doctrine promotes "fairness to the parties, judicial economy, and the societal interest in finality." *Id*.

### III. DISCUSSION

#### A. Reichwaldt's Failure to Warn Claims May Not Pass Through the Bankruptcy Gate as Drafted

Reichwaldt is correct that the merits of her failure to warn claims should be assessed by the Georgia Federal Court. *See June 2017 Opinion*, 568 B.R. at 222 (stating that the Bankruptcy

Court serves a "gatekeeper" role, but does not determine whether any particular claim should prevail on its merits under state law); *Burton*, 492 B.R. at 405–06. Reichwaldt's counsel represented at oral argument that some Georgia appellate courts (though not the Georgia Supreme Court) have recognized failure to warn claims in similar circumstances. *See* RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 13. Whether Reichwaldt's claims succeed under Georgia law is a question for the Georgia Federal Court. However, the Reichwaldt Complaint and Proposed FAC, like the complaint at issue in the *June 2017 Opinion*, do not sufficiently distinguish between the conduct of Old GM and New GM. To pass through the bankruptcy gate, an Independent Claim must clearly allege specific conduct of New GM upon which it is based. Simply adding "and GM LLC" to paragraphs of a complaint concerning Old GM conduct is not enough to pass through the gate as an Independent Claim.[5]

Although Reichwaldt argues that the Proposed FAC resolves all issues except for punitive damages, the Proposed FAC contains numerous impermissible allegations that conflate the conduct of Old GM and New GM. For example:

- "GM Corp. and GM LCC never warned anyone of the danger" (Proposed FAC ¶ 26.)
- "GM LCC, the company that emerged from the bankruptcy" (*Id.* ¶ 28.)
- "GM LLC's and GM Corp.'s reckless and wanton failure to warn" (*Id.* ¶ 33.)

The Proposed FAC also misrepresents New GM's contractual assumption of certain Assumed Liabilities in the Sale Order and Sale Agreement:

> On June 1 2009, GM Corp. sought bankruptcy protection. Following an asset sale under section 363 of the Bankruptcy Code, GM LLC, the company that emerged from the bankruptcy with most

---

[5] Reichwaldt's failure to warn claims based on *Old GM* conduct are Assumed Liabilities. *See June 2017 Opinion*, 568 B.R. at 229 (New GM concedes that it assumed liability for failure to warn claims based on the conduct of Old GM). As discussed in more detail below, however, New GM did not assume liability for punitive damages arising from those claims.

13

> of GM Corp.'s assets, books, knowledge, and personnel, now defends lawsuits such as this by trying to distinguish between what it calls "old GM" and "new GM," which GM calls "GM LLC," despite the fact that GM LLC expressly agreed, with Congress and with the Bankruptcy Court in 2009, that it would be liable for all damages resulting when people were injured post-bankruptcy in vehicles manufactured pre-bankruptcy.

(*Id.* ¶ 28; *see also id.* ¶ 85 ("As a result of its purchase of GM Corp.'s assets, GM LLC owed a duty to the consuming public in general, and to Plaintiff in particular . . . .")  The Proposed FAC mischaracterizes the 363 Sale, implying that New GM is the successor to Old GM and that New GM assumed *all* liabilities for Post-Closing Accidents, without reference to the Assumed Liabilities defined in the Sale Order.

Additionally, the Proposed FAC does not identify any specific New GM conduct upon which to base an Independent Claim.  The New GM conduct to which the Proposed FAC refers are a series of public statements from New GM CEO Mary Barra, made to Congress in the context of the ignition switch scandal.  (*See* Proposed FAC ¶¶ 29–33.)  While the merits of the case are appropriately decided by the Georgia Federal Court, general statements such as that New GM will "do the right thing" and "accept responsibility for our mistakes" do not satisfy this Court's requirement that Independent Claim plaintiffs "clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." *June 2017 Opinion*, 568 B.R. at 231.  Permitting a complaint through the bankruptcy gate on the basis of general public statements such as these would completely end-run this Court's gatekeeping function.  The Proposed FAC's allegations that New GM purchased Old GM's books and records and has profited from maintenance, repair, and selling parts for Old GM vehicles—without a specific tie to the truck model or alleged design defect at issue here—are impermissible bases for an

14

Independent Claim.[6] (*See* Proposed FAC ¶ 49.) The Court does not suggest that a failure to warn claim is necessarily impossible for Reichwaldt to assert, but the generalities in the Proposed FAC are insufficient as currently drafted.

Reichwaldt's complaint cannot pass the bankruptcy gate because (i) it fails to clearly differentiate between Old GM and New GM; and (ii) it fails to identify specific conduct of New GM upon which the purportedly Independent Claims are based.

### B. Reichwaldt May Not Seek Punitive Damages Based on Conduct of Old GM

Reichwaldt argues that she is not bound by Judge Gerber's rulings in the November 2015 Opinion and December 2015 Judgment that New GM did not contractually assume liability for punitive damages based on conduct of Old GM. (Opposition at 20–21.) She argues that she is not bound by *res judicata* because she was not in privity with any party who participated in the briefing before Judge Gerber in 2015 (her accident had not yet occurred), and she disputes this Court's determination that the November 2015 Opinion and December 2015 Judgment were law of the case.

#### 1. *Res Judicata*

Reichwaldt argues that *res judicata* does not apply to her because she had not yet been injured and had not filed suit against New GM when Judge Gerber decided in 2015 that New GM did not assume liability for punitive damages. But Reichwaldt's lawsuit against New GM has been pending since May 2016, and her counsel *did* receive notice of the December 2016 OSC, which specifically identified the issue whether Post-Closing Accident Plaintiffs may assert claims for punitive damages against New GM based on conduct of Old GM. Reichwaldt's

---

[6]     During argument Reichwaldt's counsel acknowledged that the Chevrolet truck that struck Reichwaldt's car was manufactured in 1984, and that Old GM discontinued that product line in 1987, 22 years before New GM acquired assets from Old GM during the bankruptcy case.

15

Georgia counsel—Butler Wooten—chose not to respond to the December 2016 OSC, but the law firm of Goodwin Proctor, Butler Wooten's bankruptcy counsel in New York, did appear and actively participated in the briefing and argument concerning the December 2016 OSC, which led to the *June 2017 Opinion* and the *July 2017 Opinion*. The *July 2017 Opinion* concluded that New GM did not contractually assume liability for punitive damages; and it also held that under applicable bankruptcy law, New GM was not liable for punitive damages based on Old GM's conduct. *See July 2017 Opinion*, 2017 WL 2963374, at *10–11.

Reichwaldt's counsel concedes that she is bound by the *June 2017 Opinion* and *July 2017 Opinion*, which unequivocally held that punitive damages are not available against New GM based on Old GM's conduct. Reichwaldt argues, however, that *res judicata* applies only to the *June 2017 Opinion*'s finding that punitive damages are contrary to the Bankruptcy Code's priority scheme, while attempting to peel off the contract interpretation finding as non-binding. But the December 2016 OSC clearly identified the availability of punitive damages as a 2016 Threshold Issue. If Reichwaldt had arguments to make about punitive damages based on contract interpretation or otherwise, the time to make such arguments was in connection with the 2016 Threshold Issues, not now. Accordingly, because she could have raised her arguments and did not, Reichwaldt is bound by this Court's holding in the *July 2017 Opinion* that New GM did not contractually assume liability for punitive damages based on Old GM's conduct.

        2.    *Law of the Case*

The Court need not revisit in detail its determination that Judge Gerber's ruling remains law of the case. *See July 2017 Opinion*, 201 WL 2963374, at *7. Judge Gerber determined, as a matter of contract interpretation, that New GM did not contractually assume liability for punitive damages based on conduct of Old GM. *November 2015 Opinion*, 541 B.R. at 108. This Court held that Judge Gerber's decision remains law of the case and will therefore be followed, as

16

09-50026-mg Doc 14104-1 Filed 09/14/17 Entered 09/14/17 14:19:41 Exhibit A - Memorandum Opinion and Order [Doc. 14087] Pg 18 of 19

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document Pg 17 of 18

regards all parties—whether part of this case in 2015 or not. *See July 2017 Opinion*, 2017 WL 2963374, at *7. While she asserts contract interpretation arguments that were made and rejected in 2015,[7] Reichwaldt offers no reason—much less a "compelling" one—for the Court to reverse course from its own decision just last month. *See Tomasino*, 2015 WL 1470177, at *1. This Court's decision that punitive damages based on Old GM's conduct are barred by the Bankruptcy Code's priority scheme is likewise law of the case and should not be revisited. *See July 2017 Opinion*, 2017 WL 2963374, at *7–8.

## IV. CONCLUSION

For the reasons explained above, New GM's Motion is **GRANTED** to the extent provided herein. The Plaintiff and her counsel in the Reichwaldt Action are hereby stayed and enjoined from prosecuting the Reichwaldt Action in the Georgia Federal Court pending further order of this Court.

The Court directs that counsel for the parties meet and confer within fourteen (14) days, seeking to agree on a marked version of the Proposed FAC, removing impermissible allegations and clarifying the allegations against New GM. Counsel shall promptly file a status report with this Court regarding the outcome of the meet and confer. If the parties agree on the language of the complaint upon which Reichwaldt may go forward in the Georgia Federal Court, the stay issued as part of this Opinion and Order shall be deemed to be vacated without further order of this Court. If the parties cannot agree on a marked complaint within fourteen (14) days, New GM's counsel shall promptly submit a proposed marked complaint, specifically identifying the allegations that counsel believe must be stricken from the Proposed FAC before this Court

---

[7] The Court has nevertheless considered Reichwaldt's contract interpretation arguments and disagrees, for the same reasons articulated in the *November 2015 Opinion*, *December 2015 Judgment*, and *July 2017 Opinion*.

17

09-50026-mg Doc 14104-1 Filed 09/14/17 Entered 09/14/17 14:19:41 Exhibit A
Memorandum Opinion and Order [Doc. 14087] Pg 19 of 19

09-50026-mg Doc 14087 Filed 08/31/17 Entered 08/31/17 13:47:10 Main Document
Pg 18 of 18

should lift the stay against prosecution of the action. The Court will then rule on any remaining objections.

The decision whether any proposed amended complaint ultimately approved by this Court states causes of action under applicable nonbankruptcy law is remitted to the Georgia Federal Court.

**IT IS SO ORDERED.**

Dated:   August 31, 2017
         New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge