**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

September 25, 2017

<u>**VIA ELECTRONIC MAIL AND ELECTRONIC CASE FILING**</u>

Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
  for the Southern District of New York
One Bowling Green
New York, NY  10004

    Re:    <u>**In re Motors Liquidation Co., et al., Case No. 09-50026 (MG) (Bankr. S.D.N.Y.)**</u>

Dear Judge Glenn:

    We are counsel to General Motors LLC ("**New GM**") and write with respect to (a) the Forbearance Agreement between the Motors Liquidation Company GUC Trust (the "**GUC Trust**") and New GM (the "**Forbearance Agreement**"), the motion seeking its approval (Dkt. 14095) (the "**Forbearance Agreement Approval Motion**"); (b) the unexecuted Settlement Agreement draft appearing at Dkt. No. 14061-1 (the "**Proposed Claimants' Counsel Settlement Agreement**" or, the "**PCCSA**") and the motion filed by counsel for certain ignition-switch, non-ignition switch, and personal injury plaintiffs ("**Plaintiffs**") to enforce the PCCSA (Dkt. 14092) (with the Forbearance Agreement Approval Motion, the "**Motions**"); and (c) the August 17 Court conference concerning the disputes between and among Plaintiffs, New GM, the GUC Trust, and certain participating unitholders in the GUC Trust (the "**Participating Unitholders**") as reflected in correspondence dated August 15 and August 16  (hereinafter, the "**Dispute**").

    Counsel conducted six meet-and-confer sessions between August 25 and September 18 concerning a proposed scheduling order and discovery plan.  On September 1, September 8, and September 13, in connection with those sessions, New GM circulated different versions of the attached [Proposed] Pre-Trial Scheduling Order (the "**Scheduling Order**") in attempt to reach consensus.  The Scheduling Order proposes to bifurcate the Dispute so that initially discovery obligations and briefing will be limited to the following "Phase 1" issues:  (1) whether the PCCSA is a binding agreement requiring the GUC Trust to seek its approval, and (2) if not, whether the Forbearance Agreement should be approved.  ***All the parties agree to this bifurcation***.  If the Court determines the PCCSA is binding (which would preclude approval of the Forbearance Agreement), then the parties would proceed to a "Phase 2" concerning the merits of the PCCSA and whether it comports with the Bankruptcy Code and applicable bankruptcy and non-bankruptcy law.

    While several issues have been resolved by agreement, certain disagreements persist among New GM and the GUC Trust, on the one hand, and Plaintiffs and the Participating Unitholders, on the other hand, concerning (i) whether the Court will consider the competing Motions simultaneously (<u>see</u> ¶¶ 1(a),(b), 2, 3), (ii) the extent to which discovery should be reciprocal among all parties (<u>see</u> ¶¶ 4(a), (b)), and (iii) the impact more expansive discovery will have on the discovery

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

and briefing deadlines and hearing dates. Following the September 18 meet-and-confer session, the parties agreed to submit their respective forms of scheduling to the Court on September 25 at 5:00 p.m. (prevailing eastern time) and to request a hearing thereon during the week of October 2-5, subject to the Court's availability. New GM accordingly and respectfully submits the Scheduling Order attached as **Exhibit 1**, reflecting an efficient and just procedure that balances the parties' competing interests over the remaining issues in dispute.

*First,* all parties agree the current posture favors bifurcation of the litigation in this Court. Discovery on whether the PCCSA is binding on the GUC Trust or whether the GUC Trust and New GM properly entered into the Forbearance Agreement will be limited given the number of persons involved and the short relevant time period. An examination of the Forbearance Agreement's propriety is equally limited. In contrast, examining the merits of the PCCSA will entail significantly broader challenges, along with a correspondingly broader evidentiary trajectory (both fact and expert) and jurisdictional questions, including the following: whether (a) the purported $10-billion estimated claim is unsupportable, inflated, or otherwise contrived to trigger New GM's full obligations with respect to the Adjustment Shares; (b) millions of purported "claims" of non-parties over which the Court lacks jurisdiction and that have never been filed or made may nevertheless be included in "estimating the aggregate allowed general unsecured claims against Sellers' estates" under the Sale Agreement; (c) the PCCSA impermissibly modifies the Debtors' Plan; (d) Plaintiffs' counsel have the authority to represent the millions of non-parties purportedly subject to the alleged settlement—including those who have not filed claims or authorized Plaintiffs' counsel to represent them; (e) those individuals can be bound in the absence of the procedures required by Fed. R. Civ. P. 23; (f) those individuals can be bound under the Constitution's Due Process clause in the absence of a properly certified class under Rule 23; (g) this Court should estimate claims that overlap with claims pending adjudication in the MDL court; and (h) any of the Phase 2 issues should be submitted to the MDL court in the first instance[1] given the high degree of overlap with the issues being litigated there. See ¶ 2. Until this Court determines there is a binding agreement, however, there is no reason to incur the substantial additional expense and delay in adjudicating the merits of an alleged agreement the GUC Trust did not sign, does not support, and argues is not binding on it.

*Second,* as the Court indicated at the August 17 conference, both Motions should be decided simultaneously.[2] This is the most efficient way to proceed. Separate consideration of the two

---

[1] New GM is required to advise the MDL Court of (a) "any ruling by the Bankruptcy Court that may affect the MDL" [Order No. 1, ECF No. 19 (Case No. 14-md-02543-JMF (S.D.N.Y.)) at 14 (§ XVI)] and (b) "matters of significance (including hearings, schedules, and deadlines) in related cases, to enable [the MDL Court] to effectuate appropriate coordination, including discovery coordination" [Order No. 8 (ECF No. 249 in Case No. 14-md-02543-JMF (S.D.N.Y.)) at 8 (§ V)]. Consistent with those orders, New GM is submitting a letter to the MDL Court (copying this Court) advising that New GM intends to present for the MDL Court's consideration the issue of the representational authority of Plaintiffs' counsel resulting from their appointment by the MDL Court as Co-Lead Plaintiffs' Counsel and its implications for the PCCSA. New GM is submitting that issue to the MDL Court now because (i) in the PCCSA, Plaintiffs' counsel purport to rely upon the MDL Court's Order No. 8 as the basis for their representational authority to negotiate, enter into, and bind millions of non-parties in the PCCSA; and (ii) this Court, in evaluating the threshold question of who the parties are to the PCCSA, may find Judge Furman's guidance with respect to the meaning and scope of his own MDL appointment Order No. 8 beneficial.

[2] The Court directed that the Motions be submitted simultaneously. See Tr., Hearing, Aug. 17, 2017 at 38:24-39:2 ("I direct that counsel meet and confer promptly to discuss discovery and set forth … an agreed plan of discovery that will cover both proposed settlements"); at 43:1-43:18 ("[COURT:] I will have before me at the same hearing two proposed conflicting settlements …. And I'm not going to do them separately or seriatim"), at 47:11-15 ("[COURT:] [P]leadings in support of your respective motions …. are going to be heard together").

2

agreements would expose the parties to duplicative discovery, including multiple depositions of the same witnesses. Moreover, the timing and rationale underlying the GUC Trust's decision to enter into the Forbearance Agreement is intertwined with its decision to terminate further discussions with Plaintiffs. All of the considerations that factored into the exercise of the GUC Trust's business judgment should be reviewed at the same time. They include the GUC Trust's assessment of the various procedural and substantive infirmities plaguing the PCCSA and the juxtaposition of that assessment with the GUC Trust's view that the Forbearance Agreement provided it with a better and more appropriate alternative. See ¶¶ 1(a),(b), 2, 3.[3]

*Third,* counsel to Plaintiffs and the Participating Noteholders insist that both New GM and its outside counsel produce documents and give depositions—but that the actual plaintiffs and unitholders should be exempt from document production and giving depositions. See ¶¶ 4(a), (b). Plaintiffs and the Participating Unitholders insist on asymmetrical discovery even though both sides maintain that negotiations concerning their respective purported agreements did not involve clients and instead were solely conducted by outside counsel. The discovery process demands parity. In the interests of efficiency, discovery should be limited to the parties' outside counsel or, if the court is not inclined to so limit discovery, then every party and their outside counsel should be subject to discovery obligations.[4] And, while New GM has provided timely written responses to Plaintiffs' discovery and will serve its own discovery this week, the truncated time frame proposed by Plaintiffs (requiring document production to be completed before the end of September 2017) is unreasonable.[5] Finally, Plaintiffs' counsel propose to delay the start of the date-range for document production from July 5, 2017 to August 7, 2017 (ending on August 17) (see ¶ 4(b)), even though Plaintiffs assert they reached "agreement on certain core terms [of the PCCSA] by the beginning of July." See Dkt. 14092 (¶¶ 12-14). Discovery of Plaintiffs' communications with the GUC Trust should include most of July, when they claim the alleged agreement was being negotiated.[6] Accordingly, New GM respectfully requests that the Court enter the Scheduling Order attached as **Exhibit 1** after a hearing is scheduled at the Court's convenience.

                                                  Respectfully submitted,

                                                  James C. Tecce

---

[3] One other point of contention with respect to ¶ 1(a) involves Plaintiffs' insistence that discovery of alleged interference include "New GM **and potentially others**." New GM requested that Plaintiffs identify the "others," and they have not yet done so.

[4] Unless and until an Order is entered limiting discovery to outside counsel, New GM will adhere to the Federal Rules of Civil Procedure with regard to any party discovery and expects that all other parties to this litigation will do the same.

[5] Plaintiffs have served New GM with a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6). New GM will continue its meet and confer with Plaintiffs with respect to the notice. Considering the negotiation history, however, New GM can provide information more efficiently by responding expeditiously to targeted interrogatories and requests for admission regarding the lack of any non-outside counsel communications or negotiations concerning the GUC Trust and New GM than by giving a deposition.

[6] New GM selected July 5, 2017 because during a hearing on that date, the Court directed the parties to provide a status report on negotiations concerning a possible settlement within 30 days.

cc:   Mitchell A. Karlin, Esq. (counsel to GUC Trust)
Jonathan Fourtney, Esq. (counsel to GUC Trust)
Steve W. Berman, Esq. (counsel to Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs)
Elizabeth J. Cabraser, Esq. (counsel to Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs)
William P. Weintraub, Esq. (counsel to Ignition Switch Pre-Closing Accident Plaintiffs)
Gregory W. Fox, Esq. (counsel to Ignition Switch Pre-Closing Accident Plaintiffs)
Edward S. Weisfelner, Esq. (counsel to Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs)
Howard S. Steel, Esq. (counsel to Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs)
Sander L. Esserman (counsel to Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs)
Daniel H. Golden (counsel to Participating Unitholders)
Deborah Newman (counsel to Participating Unitholders)
Richard Hilliard, Esq. (counsel to Certain Ignition Switch Pre-Closing Accident Plaintiffs)
Richard C. Godfrey, P.C. (counsel to New GM)
Andrew B. Bloomer, P.C. (counsel to New GM)
Leonid Feller, P.C. (counsel to New GM)
Arthur J. Steinberg, Esq. (counsel to New GM)
David Fine, Esq. (counsel to New GM)
Scott Davidson, Esq. (counsel to New GM)