# Exhibit A

# KIRKLAND & ELLIS LLP
## AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Richard C. Godfrey, P.C.<br>To Call Writer Directly:<br>(312) 862-2391<br>richard.godfrey@kirkland.com | 300 North LaSalle<br>Chicago, IL 60654<br><br>(312) 862-2000<br><br>www.kirkland.com | Facsimile:<br>(312) 862-2200 |

October 3, 2017

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

     *Re:*  *Order No. 8: Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543

Dear Judge Furman:

  New GM's September 26 letter (Docket No. 4639) regarding representational authority asked a simple question:

> Under what authority do MDL Plaintiffs' Co-Lead Counsel purport to negotiate a settlement on behalf of millions of non-parties, and then bind those millions of non-parties to a proposed settlement that does not seek class certification under Rule 23? (*Id.* at 6.)

That question and this Court deserved a simple, straight-forward answer. But the two letters filed by Co-Lead Counsel (Docket Nos. 4656, 4657) assiduously avoid answering the question. And for good reason, as their letters confirm that the fundamental representational authority problems arise from Co-Lead Counsel's claimed reliance upon this Court's Order No. 8 in the draft settlement agreement sought with the GUC Trust. Specifically:

  1. Co-Lead Counsel do not deny much less dispute that, as provided by the express language of the draft settlement agreement, they purport to represent, act on behalf of, negotiate for, and settle the potential claims of millions of non-parties who have never made any claims at all against New GM or Old GM. Co-Lead Counsel need to do this because only by aggregating the value of the supposed "claims" of millions of individuals can they argue that New GM is obligated under the 2009 Sale Agreement to pay additional shares of stock with a value of over $1 billion.

  2. Thus, the question of who Co-Lead Counsel represent and whose "claims" they are purporting to settle is critical—for if Co-Lead Counsel only represent a total of 527 individual plaintiffs, then it is mathematically impossible to reach the multi-billion dollar threshold for triggering an additional share obligation under the Sale Agreement. Indeed, Co-Lead Counsel confirm this in footnote 2 of their letter: "Section 3.2(c) of the Sale Agreement requires GM to

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 3, 2017
Page 2

issue additional shares . . . when the Bankruptcy Court issues an order (a 'Claims Estimate Order') estimating the allowed general unsecured claims against Old GM . . . ." (Docket No. 4657 at 1, n.2)  Of course, if Co-Lead Counsel only represent 527 individuals with 527 individual claims, then the billions of dollars in actually filed and allowed claims necessary to trigger Section 3.2(c) would never be reached.  That is the reason why the representational authority question is so important—who is bound by the purported settlement and on whose behalf does Co-Lead Counsel purport to assert "unsecured claims" subject to estimation?  To state the obvious, it makes all the difference in the world—*e.g.,* 527 persons as parties to the settlement with 527 individual claims, or 527 persons plus millions of persons with potential "claims" not otherwise before the Court.

3.     The language of the draft settlement answers the representational authority question—albeit improperly.  Co-Lead Counsel purport to represent not just the 527, but to represent both the 527 and millions more.  Thus, in the signature block of the draft settlement, Co-Lead Counsel (and the Designated Counsel "retained" by Co-Lead Counsel (Docket No. 4657 at 6)), purport to represent and act "On behalf of":  (i) "Plaintiffs," (ii) "Ignition Switch Plaintiffs," and (iii) "Non-Ignition Switch Plaintiffs."[1]  As defined in the draft agreement, "Plaintiffs" includes millions of non-parties who have never made any claim against Old GM or New GM:

> Plaintiffs means the Ignition Switch Plaintiffs, the Non-Ignition Switch Plaintiffs, and the Pre-Closing Accident Plaintiffs, *including all plaintiffs (whether named or unnamed, including unnamed members of a putative class) covered by any of the Late Claims Motions*, all plaintiffs represented by counsel that is signatory hereto **and** *any other party who, (i) as of July 10, 2009, suffered an economic loss claim by reason of their ownership or lease of an Old GM vehicle with an ignition switch defect included in Recall No. 14V-047; (ii) as of July 10, 2009 suffered an economic loss claim by reason of their ownership or lease of an Old GM vehicle with defects in ignition switches, side airbags, or power steering included in NHTSA Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346, 14V-540, 14V-118 and 14V-153*, and/or (iii) suffered a personal injury or wrongful death based on or arising from an accident involving an Old GM vehicle that occurred prior to the Closing Date . . . . (Docket No. 4639, Ex. A, Draft Settlement at § 1.45 (emphasis added).)[2]

4.     Nowhere in Co-Lead Counsel's letters do they deny acting for and on behalf of these millions of individuals, including anyone who "suffered an economic loss claim by reason of their ownership or lease of an Old GM vehicle" with defects included in the eight recalls set forth above.  (*Id.*)  To the contrary, Co-Lead Counsel contend that "*[b]y agreeing* to a Settlement

---

[1]  (Docket No. 4639, Ex. A, Draft Settlement at 19–20 (Weisfelner, Steel, and Esserman signature block:  "On behalf of the Plaintiffs"; Berman and Cabraser signature block:  "On behalf of the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs").)

[2]  The definitions of Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs are similarly broad.  (Docket No. 4639 at 9.)  As discussed below, bankruptcy counsel's representational authority cannot be greater than Co-Lead Counsel's representational authority.

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 3, 2017
Page 3

*on behalf of* plaintiffs who sought authority to file and prosecute late proofs of claim, all we have done is set in motion a process by which the due process rights of those with claims against the GUC Trust can be protected while they are offered the benefits of the Settlement." (Docket No. 4657 at 4 (emphasis added).) But again, Co-Lead Counsel do not explain the *basis of their authority* to represent, make claims on behalf of, and enter into a settlement for "Plaintiffs," as that defined term includes millions of persons who are not parties to this litigation, and who never filed claims in the Bankruptcy Court. Setting "in motion a process by which . . . the claims against the GUC Trust" are adjudicated misses the point, which is that the "process" is predicated upon the assumption that millions of persons have in fact filed claims. But of course, the millions of claims are fictional and have never been filed. Significantly, Co-Lead Counsel in their letters cannot explain how any of these millions of persons: (i) has filed a "claim"; (ii) is a "Plaintiff" who is a "party" to this litigation; (iii) has authorized Co-Lead Counsel to represent them in making claims or reaching a settlement; or (iv) is subject to the Court's *in personam* jurisdiction.

   5. Co-Lead Counsel do not dispute that the draft settlement agreement expressly relies on this Court's Order No. 8 as the basis for their purported representational authority. (Docket No. 4639 at 8 (*citing* Ex. A, Draft Settlement at § 1.11).) But Co-Lead Counsel fail to explain how Order No. 8 provides them with authority to represent millions of non-parties, much less to act as though those non-parties have filed claims that Co-Lead Counsel can adjudicate or settle. Co-Lead Counsel's representation in the draft settlement agreement that they "were individually and collectively appointed to represent all economic loss plaintiffs in the GM MDL by Order No. 8" (*id.*) is simply incorrect and untrue given the definition of "Plaintiffs" in that draft settlement.

   6. Co-Lead Counsel state that, "[g]iven the overlap of claims before this Court and the Bankruptcy Court, Co-Lead Counsel retained bankruptcy counsel." (Docket No. 4657 at 6.) But so what? Co-Lead Counsel cannot possibly claim that bankruptcy counsel have greater representational authority than they do. The fact that the bankruptcy counsel they retained purport to represent "Plaintiffs"—defined as the millions of vehicle owners or lessees who might have a claim—is the *problem*; it is not the *answer* to the question of representational authority.

   7. Co-Lead Counsel state that they "do not purport to act *as class counsel* in effectuating the Settlement before the Bankruptcy Court . . . ." (Docket No. 4657 at 3 (emphasis added).) But we knew that already, which is why New GM asks on what basis they have the authority to represent, make, and settle the potential "claims" of millions of non-parties. Given that all agree that they are not acting "as class counsel," Co-Lead Counsel in the draft settlement agreement are relying upon authority *other than Rule 23* to represent these millions of individuals in a binding settlement. But there is none, as the only authority they cite in the settlement draft, Order No. 8, does not accord them that power.

   8. Co-Lead Counsel argue that "notice" and an "opportunity to be heard," "not any 'representational authority'—is what would bind plaintiffs." (Docket No. 4657 at 4–5.) But this argument misses the point, and is simply wrong.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 3, 2017
Page 4

- *First*, regardless of whether "notice" would bind non-parties without a bankruptcy plan or Rule 23 (it would not, as discussed below), the draft settlement agreement is supposed to be signed by Co-Lead Counsel (and the Designated Counsel they "retained") "on behalf of" millions of non-parties. An attorney cannot enter into a settlement agreement "on behalf of" millions of non-parties whom that attorney has no authority to represent—period. Co-Lead Counsel cite no authority holding that such a deficiency in representational authority is "cured" if the non-party is *later* given "notice." (*Id.*) Indeed, Co-Lead Counsel are conflating distinct, unrelated concepts: a settlement agreement and accompanying notice agreed to by counsel with authority to bind is one thing; but a settlement agreement and notice agreed to by counsel without the authority to bind non-parties is something else.[3] The Court here is confronted with the latter, not the former—and all supposedly arising from MDL Order No. 8.

- *Second*, none of the authorities cited by Co-Lead Counsel is helpful to their cause. To the contrary, Co-Lead Counsel's cases all involve either: (i) relief granted as part of a bankruptcy plan,[4] or (ii) the issue of whether notice was sufficient to bind creditors or debtors with respect to the disposition of claims or property of the debtor's estate[5] (not the release of alleged non-estate damages never filed as claims by third parties).

- *Third*, Co-Lead Counsel cites *In re Johns-Manville Corp.*, 600 F.3d 135 (2d Cir. 2010), but that case involved a "channeling injunction" included as part of a bankruptcy plan and confirmation order (*id.* at 141–42) and is not applicable here or relevant to the question of representational authority. The draft settlement agreement is not part of a bankruptcy plan and confirmation order, and does not seek to implement a channeling injunction. Nor could it given that it does not require individuals to file claims or lose them; instead, the draft agreement treats the two putative class late proof of claims forms as if filed on behalf of the millions of persons included within the claim form class definitions. That is not a channeling injunction, and no authority permits the use of non-filed fictional or potential claims of non-parties to trigger obligations of anyone, much less New GM.[6]

---

[3] Co-Lead Counsel incorrectly assert that "the Settlement Agreement provides for the parties to first obtain Bankruptcy Court approval of notice procedures that would include providing notice by mail, augmented by wide-spread publication notice to all potentially affected *plaintiffs*." (Docket No. 4657 at 2 (emphasis added).) But the draft settlement would bind millions of non-parties, as they are included within the definition of "Plaintiffs." Co-Lead Counsel improperly conflate notice to "potential claimants" with notice to "Plaintiffs" as defined in the draft settlement. (*Id.* at 4–5.)

[4] *See In re Infotechnology, Inc.*, 89 F.3d 825 at *1 (2d Cir. 1995) (relief granted was "expressly conditioned on confirmation of a plan"); *In re Optical Techs. Inc.*, 425 F.3d 1294, 1301 (11th Cir. 2005) (creditors served with confirmation plan waived objections to plan); *see also In re Johns-Manville Corp.*, 600 F.3d 135, 141, 147 (2d Cir. 2010).

[5] *See In re Sullivan*, 567 B.R. 348, 353–55 (Bankr. N.D. Ill. 2017); *In re Magna Corp.*, 2003 WL 22078082, at *1, 6 (Bankr. M.D.N.C. Aug. 29, 2003); *In re Kong*, 2016 WL 3267588, at *3, 7–9 (B.A.P. 9th Cir. June 6, 2016); *In re USA United Fleet Inc.*, 496 B.R. 79, 89 (Bankr. E.D.N.Y. 2013).

[6] Co-Lead Counsel also incorrectly claim that New GM has no standing to object. (Docket No. 4657 at 1 n.2.) But courts consistently hold that where a party such as New GM is a target of a purported settlement agreement, that party has standing to object. *See In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210, 214–15 (3d Cir. 2011) ("11 U.S.C. § 1109(b) . . . provides that '[a] party in interest . . . may appear and be heard on any issue in a case under this chapter.' 11 U.S.C. § 1109(b). The list of potential parties in interest in § 1109(b) is not exclusive. . . . [T]he assertion is that GIT sold out Hartford, Century, and similarly-situated insurers by setting up a system in which they would pay for

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 3, 2017
Page 5

In sum, Co-Lead Counsel's responses confirm that they are—as the draft settlement agreement expressly provides—relying upon Order No. 8 to represent and bind millions of non-parties to the draft settlement, and to treat the putative class late proof of claim forms filed by two individuals as if millions of unsecured claims have actually been filed, thereby triggering the Adjustment Shares provision of the 2009 Sale Agreement. But they fail to explain how Order No. 8, much less the law, does that, and for good reason: that Order says no such thing, and the law does not permit what they seek to do.

Judge Glenn properly will decide in the first instance the bankruptcy issues, including the threshold issue of whether the purported settlement agreement is a binding agreement. But the question of what representational authority the lawyers appointed by this Court—and now acting pursuant to that authority in the Bankruptcy Court—have to enter into the draft settlement agreement, and to make claims and bind non-parties to that agreement, is a matter for this Court to provide guidance on to the parties, as well as to Judge Glenn, given Co-Lead Counsel's invocation of Order No. 8.

Put simply: if Order No. 8 does not give Co-Lead Counsel the authority to do what they have done in the draft settlement agreement, then who are the parties to the settlement—527 individuals who have filed late proof of claim forms, or 527 individuals plus millions of non-parties who Co-Lead Counsel treat as if they had filed millions of claims? If the former, then it is impossible to trigger the Adjustment Shares Provision. But if the latter, then with what authority do Co-Lead Counsel act? Co-Lead Counsel refuse to address this basic representational authority issue.[7]

New GM's letter of September 26 asked a simple question of representational authority; it deserved from Co-Lead Counsel a simple, forthright answer, as does this Court.

---

newly ginned-up silica claims in exchange for the asbestos claimants casting their votes in favor of the GIT Plan. . . . . [W]e conclude that Hartford and Century have legally protected interests as insurers on policies to be transferred to the APG Silica Trust and that their interests are affected by the GIT Plan such that they should have an opportunity to challenge the Plan in the Bankruptcy Court."); *see also In re Heating Oil Partners, LP*, 422 Fed. App'x 15, 16–17 (2d Cir. 2011) (citing 11 U.S.C. § 1109(b) and holding that "the debtor's insurer" had "standing to move for a declaration that the default judgment against the debtor was void because it was a 'party in interest' to the bankruptcy proceeding as the debtor's liability insurer"). Indeed, Designated Counsel Weisfelner previously told the Bankruptcy Court: "if we were, meaning us on the one hand, GUC Trust unit holders on the other hand, able to consummate a settlement, it would be brought to the Court's attention under rule 9019 I presume, either to this Court or to Judge Furman depending on the resolution of the motions to withdraw the reference on notice to New GM. And New GM will have an opportunity to oppose this 9019, take the position that as Your Honor indicated we've colluded in an effort to stick it to New GM. And they'll be entitled to be heard on the merits with regard to that contention, and the settlement will not be effective unless and until the Court overrules that objection." (Ex. 1, July 16, 2015 Bankr. Tr., at 41:16-42:5); *see also id.* at 42:24–43:15 ("And obviously we're not going to get our hands on that stock without New GM putting up a fight. And be it this Court or Judge Furman, I presume, will give New GM all the time and due process it needs and wants in order to ensure that its rights are protected before it literally has to turn over 10 million shares of New GM stock."). The Bankruptcy Court has asked for briefs on this issue.

[7]   Given that Co-Lead Counsel have put their representational authority at issue in the Bankruptcy Court and in this Court by relying on Order No. 8, this Court's pronouncement on the meaning and scope of its own Order is not an "advisory" ruling. (Docket No. 4656 at 1.)

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 3, 2017
Page 6

Respectfully submitted,

/s/ Richard C. Godfrey, P.C.
/s/ Andrew B. Bloomer, P.C.

*Counsel for Defendant General Motors LLC*

cc:   The Honorable Martin Glenn
      MDL Counsel of Record
      Plaintiffs' Bankruptcy Counsel of Record
      New GM Bankruptcy Counsel of Record

# Exhibit 1

Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 09-50026-REG

4  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6  MOTORS LIQUIDATION COMPANY

7           Debtor.

8  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

9                    United States Bankruptcy Court

10                   One Bowling Green

11                   New York, New York  10004-1408

12

13                   July 16, 2015

14                   9:48 AM

15

16

17

18

19

20

21

22  B E F O R E:

23  HONORABLE ROBERT E. GERBER

24  U.S. BANKRUPTCY JUDGE

25  ECRO:  K. HARRIS

09-50026-mg    Doc 14128-1    Filed 10/03/17    Entered 10/03/17 15:38:59    Exhibit
Case 1:14-md-02543-JMF   Document 4667-1   Filed 10/03/17   Page 3 of 5
Exhibit A - MDL Letter    Pg 10 of 12

Page 41

```
 1   to Jesse Furman that Gerber doesn't care if you don't care is
 2   benign, it's minimal.  But what New GM might say in its
 3   response to its papers could be affected by the terrain
 4   depending on whether or not there's a deal between your
 5   constituency and the GUC Trust to stick it to New GM.  That
 6   might not affect the merits, but it would be something that New
 7   GM might want to be heard about if it perceives the issue to be
 8   in those terms.
 9            So the issue before me is that assuming arguendo that
10   I agree that I should tell or authorize you to tell Jesse
11   Furman that I'm not opposed to it if he's not, whether there
12   should additionally be a recommendation that if New GM thinks
13   it needs some time to deal with the facts on the ground whether
14   I should condition what I said on that.  Do you want to be
15   heard on that one last time?
16            MR. WEISFELNER:  Well sure.  There will be no
17   substantive impact on anyone's rights other than the procedural
18   extension of time for people to file papers.  That will be
19   accomplished without notice and an opportunity to be heard by
20   New GM.  So for example, if we were, meaning us on the one
21   hand, GUC Trust unit holders on the other hand, able to
22   consummate a settlement, it would be brought to the Court's
23   attention under rule 9019 I presume, either to this Court or to
24   Judge Furman depending on the resolution of the motions to
25   withdraw the reference on notice to New GM.  And New GM will
```

Page 42

```
 1   have an opportunity to oppose that 9019, take the position that

 2   as Your Honor indicated we've colluded in an effort to stick it

 3   to New GM.  And they'll be entitled to be heard on the merits

 4   with regard to that contention, and the settlement will not be

 5   effective unless and until the Court overrules that objection.

 6   And --

 7              THE COURT:  The problem with that Mr. Weisfelner is

 8   the different way which judges evaluate 9019s in part.  The

 9   principal attention that a judge gives to the 9019 is whether

10   the estate is giving away the store.  And that would mean in

11   this context whether Mr. Martorana is prejudicing the interest

12   of the GUC Trust community and its unit holders, which if he

13   entered into the deal would be very hard to find because the

14   problem if there is a problem with any such deal is he's

15   helping his guys too much, not that he's helping them too

16   little.  Sometimes in evaluating 9019s, we also look to see

17   whether parties while acting in the interest of the estate are

18   nevertheless inappropriately adversely affecting parties who

19   aren't at the table, that's the more significant concern here.

20              MR. WEISFELNER:  Sure.  And, Your Honor, again the

21   only party --

22              THE COURT:  We have this in asbestos cases which you

23   have more than a little familiarity.

24              MR. WEISFELNER:  And, Your Honor, again I see the

25   analogy and you're right I think the only party that could
```

09-50026-mg    Doc 14128-1    Filed 10/03/17    Entered 10/03/17 15:38:59    Exhibit
Case 1:14-md-02543-JMF   Document 4667-1   Filed 10/03/17   Page 5 of 5
Exhibit A - MDL Letter    Pg 12 of 12

Page 43

```
 1   stand up and say they're being adversely affected aside from
 2   the plaintiffs which I want to get to in a minute to respond to
 3   your question about how much time do I think this takes, the
 4   only party that would be adversely affected would be New GM.
 5   It's New GM's stock that would have to be forked over were the
 6   accordion feature triggered.  And I would assume that New GM
 7   has an economic interest in not having the accordion trigger in
 8   maintaining that the accordion feature is now dead as a
 9   consequence of Your Honor's equitable mootness decision.  And
10   obviously we're not going to get our hands on that stock
11   without New GM putting up a fight.  And be it this Court or
12   Judge Furman, I presume, will give New GM all the time and due
13   process it needs and wants in order to ensure that its rights
14   are protected before it literally has to turn over 10 million
15   shares of New GM stock.
16              The issue on the plaintiff's side is quite a bit more
17   complicated.  There are any number of potential subclasses of
18   plaintiffs that may want a shot at the accordion feature should
19   it ever be triggered.  You have the easy subclass if one were
20   to think what are the classes, you have the ignition switch
21   defect plaintiffs as defined, that being the ones that were
22   subject of the first two recalls.  You have the other ignition
23   switch defect plaintiffs that were the subject of the
24   subsequent recalls.  You then have the non-ignition switch
25   defects.
```