# Exhibit A

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, IL 60654

Andrew B. Bloomer, P.C.
To Call Writer Directly:
(312) 862-2482
andrew.bloomer@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

October 18, 2017

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543

Dear Judge Furman:

New GM submits this letter to provide the Court with an overview of the relationship between the litigation in the Bankruptcy Court and MDL 2543, including the potential for settlement and rulings that could expedite resolution of the issues in dispute.  (Order No. 136 § II.)

There are several significant common issues arising out of the proceedings in the Bankruptcy Court and the MDL. Whether Co-Lead Counsel's alleged settlement with the GUC Trust is deemed binding or not, their simultaneous pursuit of economic loss claims against both Old GM/GUC Trust and New GM will present common, dispositive and vigorously contested questions of class certification, notice, the legal viability of plaintiffs' claims, and the validity of "expert" determinations.  Four big-picture points emerge from the confluence of these issues:  (1) if Co-Lead Counsel purport to implement a "settlement" that seeks recoveries on behalf of millions of non-parties or if they succeed in asserting late economic loss claims against the GUC Trust (following the Bankruptcy Court's decision on late claims issues), plaintiffs must seek certification of an economic loss class(es) against the GUC Trust; (2) any GUC Trust Rule 23 class certification and notice issues should be decided by this Court, given the identity of controlling legal and factual issues with those already before this MDL; (3) the Court's substantive legal rulings on economic loss claims (*e.g.*, manifest defect, benefit of the bargain, and claims by individuals who sold before the 2014 recalls) should control and be considered before the completion of the claims estimation process contemplated by the purported GUC Trust settlement; and (4) to facilitate the resolution of important open issues (and potential settlement discussions), this Court should grant New GM's summary judgment motion on successor liability with respect to the remaining nine states.

## I.   Summary Of Issues Before The Bankruptcy Court.

Under the Bankruptcy Court's October 11, 2017 Pretrial Stipulation and Scheduling Order, the issue in Phase 1 of the Bankruptcy Court litigation is whether Co-Lead Counsel's purported settlement with the GUC Trust "is a binding agreement."  (Ex. 1 ¶ 1.)  If there is no binding

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 18, 2017
Page 2

agreement (as we believe), the Bankruptcy Court will then decide in Phase 2 whether the GUC Trust's Forbearance Agreement with New GM should be approved. (*Id.* ¶ 2(b).)  In that event, the Bankruptcy Court would decide whether to allow the late claims of:  (i) 525 personal injury claimants and (ii) two individual economic loss claimants (Yvonne James-Bivins and Patricia Barker), who each also filed purported Rule 23 class claims for alleged economic loss damages on behalf of millions of non-parties.  For the reasons discussed in Section II, *infra*, if the Bankruptcy Court allows the economic loss late claims to proceed, then GUC Trust class issues and non-bankruptcy economic loss legal issues would be ripe for determination by this Court.

If the Bankruptcy Court determines the purported agreement is binding, then Phase 2 will address whether such an agreement should be approved and class issues will become ripe, as explained in Section II, *infra*. (*Id.* ¶ 2.)  This Court may then be asked to withdraw the reference and decide Old GM/GUC Trust class and non-bankruptcy issues, which (as discussed in Section II) are identical to issues relating to plaintiffs' claims against New GM.

Finally, regardless of the Bankruptcy Court's decision on the alleged GUC Trust settlement, this Court can and should grant New GM's motion for summary judgment on successor liability now.  As discussed in Section III, *infra*, and in New GM's prior briefs, successor liability is precluded as a matter of law for multiple reasons.  For example, as the recent late claims proceedings demonstrate, MDL plaintiffs have for more than three years had (and continue to have) the *potential* to recover from the GUC Trust given its substantial existing assets.[1]

## II.    There Are Critical Overlapping Issues This Court Should Decide.

### A.  Class Certification and Economic Loss Legal Issues Should Be Adjudicated By This Court Before Any Purported Settlement Is Considered For Approval.

In a potential Phase 2, unless and until a GUC Trust class is certified:  (1) the purported settlement cannot be approved, and (2) the "claims" estimation process contemplated by the purported settlement cannot occur.  Without a class and appointment to represent a class, Co-Lead Counsel cannot file claims on behalf of millions of non-parties, cannot bind those non-parties to any settlement, and cannot release their "claims" against the GUC Trust.[2]  (Dkt. No. 4639 at 6-7 n.11 (*citing, e.g., Hansberry v. Lee*, 312 U.S. 32 (1940).)

---

[1]    The fact that plaintiffs have had the *opportunity* to *pursue* GUC Trust claims does not mean that:  (i) they *will* pursue them (only 527 have filed late proofs of claim), or (ii) the claims will be *granted* after consideration of defenses including that the claims are untimely, *see* Bankr. Dkt. No. 13882 at 8 (discussing timeliness of claims).  Plaintiffs' admittedly "strategic" and "disingenuous" decision not to block GUC Trust distributions in 2014 further precludes their successor liability claims.  *See* Ex. 2, 2/17/2015 Bankr. Hr'g. Tr. at 111-112; *LaFountain v. Webb Industries*, 951 F.2d 544, 547 (3rd Cir. 1991) ("potential remedy" forecloses successor liability).

[2]    Under the purported settlement, non-parties would release claims against the GUC Trust for $21 million (including $5 million for notice) (Dkt. 4452, Berman Decl.)—under 5% of GUC Trust's $480 million net worth.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 18, 2017
Page 3

Notably, Co-Lead Counsel have changed positions on class certification. In both their late claims motion and proof of claim forms, plaintiffs Barker and James-Bivins expressly sought certification of Rule 23 economic loss classes against the GUC Trust. (Bankr. Dkt. No. 13806-2, -3.) But then later, Co-Lead Counsel purportedly told the GUC Trust that "plaintiffs would not agree to a Rule 23 settlement certification";[3] similarly, Co-Lead Counsel's draft settlement and related motion papers disavowed class certification. (Bankr. Dkt. No. 14092 ¶ 26.) Yet once the litigation started over the purported GUC Trust settlement, Co-Lead Counsel changed tack again, with Designated Counsel stating at the October 3, 2017 Bankruptcy Court hearing that class certification will "probably" be sought at some unspecified time to give potential claimants "an opportunity to object that says, here's your entitlement, if you like it, get ready to take the check. If you don't like it, show up at the hearing [to object]." (Ex. 3, 10/3/2017 Bankr. Tr. at 38-39.) In any event, regardless of whatever position currently suits plaintiffs, a GUC Trust class certification determination must be made *before* any settlement agreement or class-wide claims estimate order can be approved in a potential Phase 2 because Co-Lead Counsel cannot legally assert or release millions of non-parties' claims against the GUC Trust without a class. (Dkt. No. 4639 at 6-7.)

If the issues ever ripen, GUC Trust class certification should be decided by this Court. Any motion by Co-Lead Counsel to certify a GUC Trust class will raise the same issues as their potential motion to certify a class against New GM: predominance, typicality, adequacy of representation, *etc*.[4] Centralization of GUC Trust and New GM class issues in this Court will avoid the risk of inconsistent rulings and duplicative motion practice. In addition, other economic loss issues should be decided by this Court before any GUC Trust settlement or class-wide claims estimate order can be approved. The millions of purported claims that Co-Lead Counsel seek to "estimate" include claims and/or damages that are barred as a matter of law. For instance, (i) claims are barred because New GM has repaired claimants' vehicles free of charge (Dkt. No. 4681); (ii) damages are barred for individuals who sold their Old GM vehicles before the 2014 recalls (Dkt. No. 4416 at 3); and (iii) claims are barred due to the manifest defect rule (Dkt. No. 4499 ¶ 4) (setting schedule for addressing manifest defect issues in 35 states). Until such fundamental substantive legal issues are addressed, any late claims value "estimate" in connection with the purported settlement would be highly speculative and legally improper.

## B. This Court Should Decide Notice Issues Relating To Alleged MDL Class Members.

Co-Lead Counsel's purported GUC Trust settlement requires a non-Rule 23 notice to millions of non-parties. (Ex. 4, Motion to Approve Notice Procedures at 5-6.) But, as noted above, Co-Lead Counsel and their Designated Counsel *also* "probably" will seek certification of a Rule 23 class, which would require sending a *second* notice to the same individuals. (Ex. 3, 10/3/2017

---

[3]   *See* Dkt. No. 4639 Ex. 3, 8/17/2017 Bankr. Hr'g Tr. at 21:10–14; *see also id.* at Ex 4 ¶ 3.

[4]   As the Supreme Court has made clear, it does not matter that the GUC Trust class may be a settlement class. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Schoenbaum v. E.I. Dupont*, 2009 WL 4782082, at *10-12 (E.D. Mo. 2009) (related settlement and litigation classes should be addressed simultaneously).

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 18, 2017
Page 4

Bankr. Hrg. Tr. at 38-39). There is substantial overlap between the individuals to whom Co-Lead Counsel seek to provide non-Rule 23 notice and those alleged to be members of Rule 23 classes in the MDL. Before any such notices are approved, this Court should determine (among other things) whether the notices comply with this Court's existing Orders regarding communications with absent class members. (*See, e.g.,* Order Nos. 117 § IV, 119, 122 § V, Dkt. Nos. 3543, 3568, 3703.) Likewise, any notice under Rule 23 should be adjudicated by this Court.

### C. This Court Should Decide Representational Authority Issues That Involve Interpretation Of This Court's Orders.

To this day, Co-Lead Counsel have never directly answered this question: "Under what authority do MDL Plaintiffs' Co-Lead Counsel purport to negotiate a settlement on behalf of millions of non-parties, and then bind those millions of non-parties to a proposed settlement that does not seek class certification under Rule 23?" (Dkt. No. 4639 at 6.) While we recognize the Court suggested at the October 4 status conference that Co-Lead Counsel are not "purporting to represent absent parties but rather [are] proposing some sort of procedural mechanism via Rule 9019 by which notice can be provided and essentially bind absent parties" (Ex. 5, 10/4/2017 Hr'g Tr. at 5:22-25), that is not what the draft settlement papers actually say. Thus, depending upon how Co-Lead Counsel proceed and what they tell the Bankruptcy Court about who they represent, the representational authority issue could become ripe in Phase 1 or 2. New GM would then seek this Court's guidance, given Co-Lead Counsel's explicit reliance on this Court's Order No. 8.

### D. This Court Should Decide Expert Issues Relating to the GUC Trust Settlement.

Co-Lead Counsel's purported claims estimate ($10 billion) was based on a "conjoint analysis" by Mr. Stefan Boedeker for all putative class members alleged in the Barker and James-Bivins proposed late proof of class claim forms. New GM anticipates Boedeker will also be one of Co-Lead Counsel's MDL experts. Based on our experience in the related Orange County litigation, Boedeker's analysis in both proceedings will be seriously flawed and would contravene *Daubert* standards. In that event, we believe this Court should determine: (i) whether Boedeker is qualified to offer such expert opinions; and (ii) whether his so-called conjoint analysis meets the applicable standards.

## III. The Court Should Now Grant New GM Summary Judgment on Successor Liability.

This Court's summary judgment ruling with respect to economic loss claims in the remaining nine successor liability states will be helpful to the parties in resolving pre-Sale personal injury successor liability claims against New GM in these and other states with similar successor liability laws.[5] Recent Bankruptcy Court proceedings confirm that the Court can materially

---

[5]    While these rulings should also assist the disposition of pre-bankruptcy personal injury claims against New GM, they will not preclude the assertion of late personal injury claims against the GUC Trust/Old GM.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 18, 2017
Page 5

advance the litigation by granting New GM's motion. At the October 3 Bankruptcy Court hearing, economic loss Co-Lead Counsel stated that any recovery against the GUC Trust would preclude successor liability against New GM. (Ex. 3, 10/3/2017 Tr. at 33 (THE COURT: ". . . that you recover ten cents on the dollar against that the debtor doesn't mean you can sue somebody else for the 90 cents you didn't recover. You agree with that? MS. CABRASER: Yes, Your Honor.").) But the current facts already preclude plaintiffs' successor liability claims. Under the laws of the summary judgment states, it is not necessary that plaintiffs *actually* recover $21 million from the GUC Trust; what is critical is that plaintiffs have the *potential* to recover where the GUC Trust is not a "shell" and has had significant assets against which plaintiffs could have asserted late claims for over three years. (Dkt. No. 4453 at 5-7, 20-22.)

In their multiple successor liability briefs, Co-Lead Counsel failed to cite a single case in the remaining jurisdictions—and New GM has found none—denying summary judgment where, as here, the seller or its liquidating trust continued in existence after the sale *and* had significant, liquid, unencumbered assets even remotely comparable to the $21 million in consideration in the purported settlement.[6]

Finally, Co-Lead Counsel's admissions in the Bankruptcy Court confirm that their remaining successor liability arguments are meritless.[7] At the October 3 hearing, plaintiffs confirmed that "for all practical purposes" the GUC Trust and Old GM are the same.[8] (Ex. 3, 10/3/2017 Bankr. Tr. at 35). Thus, summary judgment should be granted.

---

[6] The GUC Trust's financial statements confirm that it has at least "$50 million in claim amount" "set aside" for "general claim contingency." (Dkt. No. 3857 at 8.) Moreover, in addition to the $21 million in consideration available to claimants in the purported GUC Trust settlement, the amounts potentially available to creditors such as plaintiffs include over $480 million in net GUC Trust assets. (Dkt. No. 4953 at 6.)

[7] Plaintiffs argue that the existence of a remedy is not dispositive as "Motors Liquidation Company GUC Trust" and "Motors Liquidation Company" are different entities. But they cite no case holding a debtor and its liquidating trust should be treated differently for successor liability purposes. By contrast, New GM cited cases that treat debtors and their trusts the same for those purposes. *See, e.g., Conway v. White*, 885 F.2d 90, 91-97 (3d Cir. 1989) (even without "notice of bankruptcy, the sale agreement, or the bar date," ability to seek late claims against "trust" barred successor liability; "if [plaintiff's] notice argument is meritorious, then he had a remedy."). Plaintiffs also failed to cite controlling cases denying summary judgment where the seller and subsequently its liquidating trust continued to exist in bankruptcy before, during, and after an arms' length transaction involving adequate consideration. *See Doktor v. Werner*, 762 F. Supp. 2d 494, 499 (E.D.N.Y. 2011) (under New York law, "corporate realities of the asset sale preclude a finding of liability under a 'defacto merger,' or 'mere continuation' theory of successor liability" where "Plaintiff cannot show dissolution of the seller" because "Old Ladder continues to exist as a distinct corporate entity, even after the consummation of the APA, as a liquidated trust").

[8] "Now, in a bankruptcy context, putting aside that we're settling issues like late proofs of claim, in a bankruptcy context under a 9019 compromise and settlement between the *debtor, who for all practical purposes is the GUC Trust*, they substituted for Old GM -- the GUC Trust is distributing part of the purchase price." (Ex. 3, 10/3/17 Bank. Hr'g Tr. at 35) (emphasis added).

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 18, 2017
Page 6

Respectfully submitted,

/s/ Richard C. Godfrey, P.C.
/s/ Andrew B. Bloomer, P.C.

*Counsel for Defendant General Motors LLC*

cc:    The Honorable Martin Glenn
        MDL Counsel of Record
        Plaintiffs' Bankruptcy Counsel of Record
        New GM Bankruptcy Counsel of Record

# Exhibit 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br>f/k/a General Motors Corp., *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 09-50026 (MG)<br>(Jointly Administered) |

<u>**PRE-TRIAL STIPULATION AND SCHEDULING ORDER**</u>

      **WHEREAS,** counsel representing certain personal-injury plaintiffs and counsel purporting to represent certain ignition-switch and non-ignition switch plaintiffs (collectively, "Plaintiffs") with alleged claims against the Motors Liquidation Company GUC Trust (the "GUC Trust") have filed a motion (Dkt. No. 14092) (the "Plaintiffs' Enforcement Motion") asserting that the unsigned Settlement Agreement appearing at Dkt. No. 14061-1 (the "Plaintiffs' Settlement Agreement") is a binding agreement with the GUC Trust;

      **WHEREAS,** the GUC Trust has filed a motion (Dkt. 14095) (the "Forbearance Agreement Approval Motion") seeking approval of a forbearance agreement (the "Forbearance Agreement") between the GUC Trust and General Motors LLC ("New GM"), and New GM filed a joinder thereto (Dkt. 14096) (the "New GM Joinder"). (The Forbearance Agreement Approval Motion and Plaintiffs' Enforcement Motion shall be referred to collectively as the "Motions");

      **WHEREAS,** the GUC Trust disputes and denies that it is bound by Plaintiffs' Settlement Agreement, and New GM opposes Plaintiffs' Settlement Agreement and Plaintiffs' Enforcement Motion;

      **WHEREAS,** certain unaffiliated unitholders whose counsel has represented hold approximately 65% of the GUC Trust Units (the "Participating Unitholders") oppose approval of the Forbearance Agreement, believe Plaintiffs' Settlement Agreement is a binding agreement and support Plaintiffs' Enforcement Motion;

      **WHEREAS,** a conference was held before the Court on August 17, 2017 concerning the

<div align="center">1</div>

disputes raised in connection with Plaintiffs' Settlement Agreement and the Forbearance Agreement, and in various letters filed with the Court by Plaintiffs, New GM, the GUC Trust, and the Participating Unitholders prior to the August 17, 2017 conference (hereinafter, the "Dispute");

WHEREAS, during the August 17, 2017 conference, the Court ordered Plaintiffs, New GM, the GUC Trust and the Participating Unitholders (subject to the reservations of rights set forth below and for definitional purposes only, the "Parties") to meet and confer concerning, among other things, discovery in connection with the Dispute;

WHEREAS, since August 17, 2017, Plaintiffs, New GM and the GUC Trust have served discovery requests and, as directed by the Court, counsel for the Parties have engaged in meet and confer discussions concerning the scope and timing of discovery, as well as the timing and scope of the Parties' respective pleadings, relating to the Dispute;

WHEREAS, on October 3, 2017, the Court held a further conference to address discovery and hearing procedures with respect to the Motions; and

WHEREAS, the Court has determined that with respect to the submission of the Dispute for adjudication that the following schedule shall govern the events leading up to and including the final pre-trial conference and evidentiary hearing.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      **Phase 1 Issues.**  The resolution of the Dispute shall be bifurcated as follows.  In the first phase ("Phase 1"), the topics of discovery, briefing, and decision shall be limited exclusively to the following issues:

(a)      whether Plaintiffs' Settlement Agreement is a binding agreement; and

(b)      whether New GM has standing to be heard on the issue described in (a) above.

2.      **Phase 2 Issues.**  The potential Phase 2 Issues may include, without limitation, the

following (collectively, the "Phase 2 Issues"):

        (a)        If the Court finds that Plaintiffs' Settlement Agreement is binding, whether the terms of Plaintiffs' Settlement Agreement should be approved under title 11 of the United States Code, 11 U.S.C. §§ 101-1532, and applicable bankruptcy and non-bankruptcy law by this Court (or by the United States District Court for the Southern District of New York);

        (b)        If the Court finds that Plaintiffs' Settlement Agreement is not binding, whether the Forbearance Agreement should be approved;

        (c)        Whether Plaintiffs or the Participating Unitholders interfered with the GUC Trust's performance of the Sale Agreement;

        (d)        Whether New GM interfered with Plaintiffs' Settlement Agreement;

        (e)        Whether Wilmington Trust Company ("Wilmington Trust") should be removed as trustee and trust administrator of the GUC Trust; and

        (f)        Whether Wilmington Trust breached its fiduciary duties to GUC Trust beneficiaries.

Phase 2 Issues are not being decided at this time. Any and all rights, claims, and defenses with respect to the Phase 2 Issues shall be, and hereby are expressly reserved. The Parties shall meet and confer regarding the discovery, briefing and trial schedule with respect to the applicable Phase 2 Issues once the Phase 1 Issues are resolved by the Court.

        3.     **Phase 1 Briefs.** In addition to Plaintiffs' Enforcement Motion, the following briefs shall be filed with respect to the Phase 1 Issues. On or before **November 13, 2017**, the following briefs or joinders shall be filed with the Court: (i) a brief in opposition to New GM's standing with respect to the Phase 1(a) Issue, not to exceed 25 pages, shall be filed jointly by Plaintiffs and the Participating Unitholders; (ii) a brief in support of New GM's standing with respect to the Phase 1(a) Issue, not to exceed 25 pages, shall be filed by New GM (collectively

with the brief described in the foregoing (i) the "**Opening Standing Briefs**"); and (iii) any

joinders to Plaintiffs' Enforcement Motion, not to exceed 10 pages.  The GUC Trust will not take

a position on the Phase 1(b) Issue.  On or before **November 28, 2017**, any objections to

Plaintiffs' Enforcement Motion, not to exceed 25 pages, or respective joinders thereto, not to

exceed 10 pages, shall be filed with the Court.  On or before **December 7, 2017**, the following

briefs shall be filed with the Court: (i) replies, not to exceed 10 pages, in further support of

Plaintiffs' Enforcement Motion (and any respective joinders thereto, not to exceed 5 pages); (ii)

responses, not to exceed 15 pages, to the Opening Standing Briefs shall be filed respectively by

New GM and jointly by Plaintiffs and the Participating Unitholders.  Each of the briefs described

in this paragraph shall be limited to the Phase 1 Issues.

      4.    **Phase 1 Discovery.**  The discovery referenced below at 4(a) through 4(g) shall be

limited in scope to the Phase 1(a) Issue.  New GM is permitted to participate in, and obtain

access to all such discovery involving any Party.  New GM's participation in such discovery, and

in the briefing described in the preceding paragraph, is without prejudice to the position

expressed by the Plaintiffs and the Participating Unitholders that New GM lacks standing in

connection with the Phase 1(a) Issue.

      a.    Requests for production of documents shall be served on or

before **October 16, 2017**.

      b.    The date range with respect to requests for the production

of documents shall be May 1, 2017 through August 17, 2017; document discovery

and written discovery concerning the Phase 1 Issues will be limited to

Wilmington Trust and outside counsel for Plaintiffs, the GUC Trust, and the

Participating Unitholders; subject to the following sentence regarding depositions

of Plaintiffs, depositions concerning the Phase I Issue shall be limited to (i)

Wilmington Trust, (ii) one Participating Unitholder under Fed. R. Civ. P. 30(b)(6)

or otherwise, subject to the right of New GM and the GUC Trust to seek additional discovery from the Participating Unitholders upon leave of Court in accordance with paragraph eight (¶ 8) (and the Participating Unitholders' right to object thereto), and (iii) outside counsel for Plaintiffs, the GUC Trust, and the Participating Unitholders; provided, however that the Parties reserve their rights to object to any of the forgoing depositions; and provided further that with respect to the deposition of the one Participating Unitholder in (ii) above, the objection shall be limited to the identity of the individual whose deposition is noticed and, if a deposition is noticed under Fed. R. Civ. P. 30(b)(6), the proposed topics of examination.  If deposition discovery of individual Plaintiffs occurs, there will be no more than three (3) individual Plaintiffs deposed (for a maximum of four (4) hours each), as determined jointly by the GUC Trust and New GM.  The parties will meet and confer on whether a stipulation can be reached in lieu of taking the depositions of individual Plaintiffs.  If a stipulation in lieu of depositions of the individual Plaintiffs cannot be reached, the Plaintiffs have advised that they will seek reconsideration regarding the taking of individual injury plaintiffs' depositions.  New GM (including its outside counsel) shall not be subject to discovery in Phase 1, and any discovery served on New GM to date in connection with the Dispute shall be withdrawn.  New GM shall withdraw its requests for the production of documents, interrogatories, and requests for admissions served on Patricia Barker and Yvonne James-Bivens.  Further, New GM shall withdraw its current requests for the production of documents served on the Participating Unitholders.  Nothing in this Order shall limit or preclude the written discovery served by the GUC Trust on outside counsel for Plaintiffs or New GM's requests for the production of documents served on outside counsel for the Participating

Unitholders.

        c.      The Parties shall use the format for production of documents, including electronically stored information, set forth in the GM MDL protocol (MDL Order No. 11, MDL Docket No. 295), provided however, that documents shall be produced to the Parties rather than  to the MDL 2543 Document Depository.

        d.      Document production shall be substantially complete by **October 30, 2017**.

        e.      The deadline to identify witnesses who either will be called to testify at trial or will submit a declaration shall be **October 30, 2017.**

        f.      Categorical privilege logs shall be served by **November 6, 2017**.  The Parties agree that internal communications among counsel representing the same Party and between counsel and their clients need not be logged.[1]  Notwithstanding the foregoing sentence, the Parties reserve all rights to challenge the assertion of privilege over internal communications between and among outside counsel and their clients (or any other document or communication over which privilege is asserted).

        g.      Depositions shall be completed by **November 20, 2017**.  The Parties agree to work together to schedule depositions at a time and place convenient to the witnesses.

        5.      **Joint Pretrial Conference Order.**  The Parties shall submit to the Court (i) a proposed Joint Pretrial Conference Order, (ii) deposition designations for individual Plaintiffs and (iii) direct testimony of trial witnesses in written narrative form, by **December 5, 2017.**

---

[1]      For purposes of this provision, (a) counsel representing Plaintiffs means Brown Rudnick LLP; Stuzman, Bromberg, Esserman & Plifka, P.C.; Hagens Berman Sobol & Shapiro LLP; Lieff Cabraser Heimann & Bernstein LLP; Hilliard Muñoz Gonzales LLP; Hillard & Shadowen LLP; The Law Offices of Thomas J. Henry; Goodwin Proctor LLP; and Andrews Myers, P.C. and (b) counsel representing New GM means Kirkland & Ellis LLP, King & Spalding LLP, and Quinn Emanuel Urquhart & Sullivan LLP.

6.     **Final Pretrial Conference**.  The Final Pretrial Conference will be held on **December 11, 2017 at 10:00 A.M.** in Courtroom 523.

7.     **Trial.**  The Court shall conduct an evidentiary hearing with respect to the Phase 1 Issue from December 18–20, 2017.  Wilmington Trust and New GM will not move to disqualify any law firm on the basis of the Rule 3.7 of the Model Rules of Professional Conduct, the witness advocate rule.  Counsel to the Parties will meet and confer in an attempt to resolve any issues in connection with any members or associates of trial counsel's respective firms serving as witnesses and will bring any disputes to the Court for resolution if they cannot agree.

8.     **Amendment.**  The deadlines set forth in paragraphs 3 and 4 above may be modified by agreement of the Parties without leave of Court.  Modifications to any other provision in this Stipulation and Order require leave of Court.  The Parties, separately or by agreement, may apply to the Court for modification of any part of the schedule.

<div style="display:flex">
<div>

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
Leonid Feller, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Tel:  312-862-2482

Arthur J. Steinberg
Scott Davidson
KING AND SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Tel:  212-556-2158

By:    _James C. Tecce_
Susheel Kirpalani
James C. Tecce
Julia M. Beskin
QUINN EMANUEL URQUHART &
SULLIVAN LLP
52 Madison Avenue
New York, NY  10010
Tel:  212-849-7100

*Counsel to New GM*

By:    _Mitchell A. Karlan_
Mitchell A. Karlan
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
Tel:  212-351-3800

*Counsel to GUC Trust*

</div>
<div>

By:    _Edward S. Weisfelner_
Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

By:    _Sander L. Esserman_
Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA,
A PROFESSIONAL CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*

By:    _Deborah J. Newman_
Daniel H. Golden
Deborah J. Newman
AKIN GUMP STRAUSS HAUER
   & FELD LLP
One Bryant Park
New York, NY  10036
Tel:  212-871-1002

*Counsel to Participating Unitholders*

</div>
</div>

8

By: _Steve W. Berman_                        By:  _Robert Hilliard_

      Steve W. Berman (admitted pro hac vice)     Robert Hilliard
      HAGENS BERMAN SOBOL &            HILLIARD MUÑOZ GONZALES LLP
      SHAPIRO LLP                           719 South Shoreline, Suite 500
      1918 Eighth Avenue, Suite 3300        Corpus Christi, Texas 78401
      Seattle, Washington 98101             Tel: 361-882-1612
      Tel: 206-623-7292                     bobh@hmglawfirm.com
      steve@hbsslaw.com

                                      *Counsel for Certain Ignition Switch Pre-*
                                      *Closing Accident Plaintiffs*

By:     _Elizabeth J. Cabraser_
      Elizabeth J. Cabraser
      LIEFF CABRASER HEIMANN &
      BERNSTEIN LLP                    By:  _Thomas J. Henry_
      275 Battery Street, 29th Floor        Thomas J. Henry, Esq.
      San Francisco, California 94111       THE LAW OFFICES OF THOMAS J.
      Tel: 414-956-1000                     HENRY
      ecabraser@lchb.com                    4715 Fredricksburg, Suite 507
                                San Antonio, TX 78229

*Co-Lead Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*     *Counsel to Certain Pre-Closing Accident*
*Plaintiffs in the MDL Court*                 *Plaintiffs*

By:     _William P. Weintraub_            By:  _Lisa M. Norman_
      William P. Weintraub                  Lisa M. Norman (admitted *pro hac vice*)
      Gregory W. Fox                        ANDREWS MYERS, P.C.
      GOODWIN PROCTER LLP                   1885 St. James Place, 15th Floor
      The New York Times Building           Houston, TX 77056
      620 Eighth Avenue                     Tel: 713-850-4200
      New York, New York 10018
      Tel: 212-813-8800                     *Counsel to Certain Pre-Closing Accident*
      wweintraub@goodwinlaw.com             *Plaintiffs*
      gfox@goodwinlaw.com

*Counsel to Ignition Switch Pre-Closing*
*Accident Plaintiffs Represented By Hilliard*
*Muñoz Gonzales L.L.P.*

**IT IS SO ORDERED.**

Dated:  October 11, 2017
      New York, New York

                                       **/s/ Martin Glenn**
                                        MARTIN GLENN
                           United States Bankruptcy Judge

# Exhibit 2

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 09-50026-reg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    MOTORS LIQUIDATION COMPANY, et al.,

7    f/k/a General Motors Corp., et al.

8

9             Debtors.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12

13                    U.S. Bankruptcy Court

14                    300 Quarropas Street

15                    White Plains, New York

16

17

18                    February 17, 2015

19                    9:02 AM

20

21   B E F O R E :

22   HON ROBERT E. GERBER

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  K. HARRIS

09-50026-mg    Doc 14135-1    Filed 10/19/17    Entered 10/19/17 15:15:37    Exhibit A
Pg 20 of 59
Case 1:14-md-02543-JMF    Document 4758    Filed 10/18/17    Page 3 of 5

Page 111

1          The barn door has been open for an awfully long

2     time. The amount of value in the GUC Trust has been

3     substantially dissipated. Our opportunity to get back into

4     the fold and realize the same pro rata distribution as other

5     affected general unsecured creditors doesn't exist through

6     no fault of our own.

7          THE COURT:  Well, when you say no fault of your

8     own, this is a good time for you to answer the question I

9     asked at the outset which is that when Ms. Rubin and her

10    clients made it pretty clear that there was going to be an

11    upcoming distribution you didn't act.

12         First of all, I assume that you're not disclaiming

13    notice or of the fact that there's court where you could

14    have made an application to me to block that distribution

15    and most likely gotten it in a heartbeat.

16         MR. WEISFELNER: And most likely have --

17         THE COURT:  Got me to tell Ms. Rubin to wait

18    before making further distributions in a heartbeat.

19         MR. WEISFELNER:  It wasn't an easy decision and

20    not one that was decided by me or my office. In point of

21    fact the fact of the impending distribution was first

22    brought to us, if I recall, by New GM's counsel and New GM's

23    counsel suggested that we may want to seek to hold up that

24    distribution and our reaction was well don't you have an

25    obligation as well since you're saying that the remedy that

1    the Court ought to fashion is against New GUC Trust, why

2    isn't it your obligation to seek the Court's intervention to

3    hold it up and in fact there was correspondence that was

4    crafted and sent to Ms. Rubin and her clients which

5    suggested that it would be inappropriate for her to make

6    that distribution.

7            And, your Honor, there was a consideration of what

8    the standards were for injunctive relief and I appreciate

9    after-the-fact your Honor telling us that we would got it in

10   a heartbeat, but there was concern about the cost and

11   expense associated with meeting the preliminary injunction

12   standards.

13           Now, I will also tell your Honor, lest you

14   continue to look at me like I have two heads, yes there was

15   a strategic element to the decision that was taken on our

16   side. That's my point of view. It's kind of disingenuous,

17   one would have argued within the confines of the attorney

18   client privilege, but you can assume that the argument went

19   something like we're taking the position that we're not

20   required, to pursue to the exclusion of every other remedy,

21   our claims against the GUC Trust. So now to prevent the GUC

22   Trust to making what amounts to a diminimous distribution in

23   light of the totality of the consideration that they ever

24   had and we had a very short window of time after they told

25   us that they weren't going to voluntarily stop, yes your

Page 171

1                          C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4       transcript is a true and accurate record of the proceedings.

5

6       Sonya                    Digitally signed by Sonya Ledanski
                                  Hyde
                                  DN: cn=Sonya Ledanski Hyde, o,
        Ledanski Hyde             ou, email=digital1@veritext.com,
7                                 c=US
                                  Date: 2015.02.19 16:19:40 -05'00'

8       Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  February 19, 2015

# Exhibit 3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 09-50026-mg |
|  | . | Chapter 11 |
|  | . |  |
| MOTORS LIQUIDATION COMPANY, | . | (Jointly administered) |
| et al., f/k/a GENERAL | . |  |
| MOTORS CORP., et al, | . | One Bowling Green |
|  | . | New York, NY 10004 |
| Debtors. | . |  |
|  | . | Tuesday, October 3, 2017 |
| . . . . . . . . . . . . . . . | . | 10:02 a.m. |

TRANSCRIPT OF HEARING REGARDING "PLAINTIFFS' ENFORCEMENT
MOTION" AND THE "FOREBEARANCE AGREEMENT APPROVAL MOTION."
(CC: DOC NOS. 14092, 14093, 14095, 14114, 14115, 14117)
BEFORE THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:            King & Spalding LLP
                           By:  ARTHUR STEINBERG, ESQ.
                                SCOTT DAVIDSON, ESQ.
                                DAVID M. FINE, ESQ.
                           1185 Avenue of the Americas
                           New York, New York 10036-4003
                           (212) 556-2158

For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs:                Brown Rudnick LLP
                           By:  EDWARD S. WEISFELNER, ESQ.
                                HOWARD S. STEEL, ESQ.
                           7 Times Square
                           New York, New York 10036
                           (212) 209-4917

Audio Operator:            Timothy Wilson, ECRO

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

Case 1:14-md-02543-JMF   Document 4758   Filed 10/18/17   Page 3 of 11

 1  Old GM.  And the issue now is are they going to be permitted to

 2  assert their claims in the bankruptcy court against Old GM with

 3  a billion dollars of value coming in from New GM.  And your

 4  view is they still have claims against New GM?  Why?

 5            MS. CABRASER:  They would still have claims against

 6  New GM for -- these would be the independent claims against New

 7  GM for New GM's --

 8            THE COURT:  Oh, independent claims, different issues.

 9            MS. CABRASER:  -- post-bankruptcy --

10            THE COURT:  Different issue.

11            MS. CABRASER:  Yes, Your Honor.

12            THE COURT:  Because I've already ruled on -- you

13  know, in a number of matters about independent claims, and I'm

14  not getting into that.  Okay?  But other -- do you agree that

15  other than independent claims, that either personal --

16  pre-closing personal injury plaintiffs or economic loss

17  plaintiffs, if they get allowed claims in the bankruptcy case,

18  they can't assert claims against New GM for that, only they --

19  maybe they have independent claims they can assert against New

20  GM, but they can't assert successor liability claims against

21  New GM based on the due process issue.  I'm short-handing that.

22            MS. CABRASER:  I think -- it's a complicated

23  question, but I think that's correct.  I certainly think if a

24  claim is paid and full value is given to a claim --

25            THE COURT:  Well, when we say full value, you know,

Case 1:14-md-02543-JMF Document 4758 Filed 10/18/17 Page 4 of 11

33

1  bankruptcy pays 10 cents on the dollar.  I'm using that as just

2  a hypothetical.  Full recovery doesn't usually -- it doesn't

3  usually happen in bankruptcy.  And, you know, the fact that you

4  don't recover -- that you recover ten cents on the dollar

5  against the debtor doesn't mean you can sue somebody else for

6  the 90 cents you didn't recover.  You agree with that?

7          MS. CABRASER:  Yes, Your Honor.  If the claim is an

8  Old GM claim, if it's a claim that the bankruptcy court has

9  jurisdiction over and is going to be determined and evaluated

10 and paid or not in the bankruptcy, that's the way it is.  The

11 claims that would remain are the non-bankruptcy claims against

12 New GM or for --

13         THE COURT:  Independent claims against New GM.

14         MS. CABRASER:  For New GM, we'd call them independent

15 claims.

16         THE COURT:  Okay.  All right.  Thank you.

17         Mr. Weisfelner, I -- you wanted to correct me on what

18 I said wrong this time.

19         MR. WEISFELNER:  No.  I did want to address a couple

20 of the bankruptcy aspects of the questions that you posed.

21 Your Honor, in the first place, jurisdiction.  Your Honor

22 properly raises the question of how does this Court have

23 jurisdiction over the unwashed masses of potential personal

24 injury or, for that matter, wrongful death claimants.

25         THE COURT:  Well, personal injury, those -- there

34

1   have been proposed late claims filed by a lot of personal

2   injury claimants.

3           MR. WEISFELNER:  Right.  But there are a lot of

4   potential personal injury/wrongful death claimants that aren't

5   represented by counsel at the table or in the courtroom.

6           THE COURT:  Okay.

7           MR. WEISFELNER:  So I want to address all of them.

8           THE COURT:  All right.

9           MR. WEISFELNER:  And I think from a jurisdictional

10  perspective, what we have to keep in mind is the so-called

11  accordion feature, whether it's triggered at the full

12  billion-dollar level or some lesser level, is part and parcel

13  of the purchase price that New GM paid to Old GM in connection

14  with the sale and confirmation of the plan back in 2009.  It is

15  denominated as additional purchase price to be triggered if and

16  only if the conditions are met.

17          THE COURT:  Allowed -- it has to be --

18          MR. WEISFELNER:  Let me --

19          THE COURT:  Isn't it allowed claims?

20          MR. WEISFELNER:  Let me sort of get there because

21  I'll address the allowed claim portion as well.  So from a

22  jurisdictional perspective, we view this as an in rem

23  proceeding.  Your Honor has jurisdiction over the property the

24  same way you had jurisdiction or would have had jurisdiction

25  over the initial portion of the sale price.  Likewise, you have

35

1  jurisdiction over the rem in connection with the accordion

2  feature.

3          Now, in a bankruptcy context, putting aside that

4  we're settling issues like late proofs of claim, in a

5  bankruptcy context under a 9019 compromise and settlement

6  between the debtor, who for all practical purposes is the GUC

7  Trust, they substituted for Old GM -- the GUC Trust is

8  distributing part of the purchase price.  Now, come all ye

9  claimants and tell me that you have an entitlement to a portion

10  of that purchase price.  And the way I perceive it gets done in

11  a bankruptcy -- and by the way, this is part and parcel of lots

12  of conversations we had with both the GUC Trust and the GUC

13  trust beneficiaries on just these same issues.

14          In our view, under a 9019 compromise and settlement,

15  you've got in rem jurisdiction over the corpus, or the

16  potential corpus represented by the accordion.  You give notice

17  sufficient to satisfy due process.  And at a $6 million price

18  tag, we thought we came up with the appropriate first stage

19  notice, first stage notice.

20          Now, Your Honor has asked a lot of questions about

21  what pieces of paper do people have to file.  Suppose you not

22  only grant the enforceability of this agreement, but you

23  approve the settlement portion and then you approve the

24  compromise and settlement, the claims estimation, here's where

25  I think, you know, we get to.

ACCESS TRANSCRIPTS, LLC            1-855-USE-ACCESS (873-2223)

Case 1:14-md-02543-JMF   Document 4758   Filed 10/18/17   Page 7 of 11

36

1          Understand that under the terms of the plan of

2    reorganization itself and all of the operative documents that

3    put the GUC Trust into its position of authority, they have the

4    exclusive and sole right -- and this is the key feature -- to

5    estimate claims.

6          The whole notion of estimating claims for allowance

7    purposes so as to share in the res is antithetical to the

8    notion that come all you people, file all ye claims, and now

9    I'm going to add them up after a multi-year process of figuring

10   out what the claim is worth, I'll come up with a dollar amount,

11   and that's the dollar amount we're going to use.  The wisdom,

12   we thought the elegance, of the 9019 is among the issues that

13   Your Honor would not have to cope with certainly in stage one

14   of this process is how do I add up all these claims, what is

15   the exact dollar amount I accord to Mary, Tom, Joe, Jane with

16   regard to their now many years late proof of claim.

17         There were lots of issues that are compromised and

18   settled as part of a claims estimation that the GUC Trust once

19   upon a time told us it was prepared to go forward with.  No

20   necessity for a Rule 23 class certification.  No necessity for

21   individual proofs of claim, late or otherwise.  No

22   consideration of the pioneer factors.  No consideration frankly

23   of due process violation beyond the capital -- initial capital

24   switch claimants.

25         But to the extent that there were arguments that said

37

1  that that due process violation applied equally as well to

2  non-ignition switch claimants as well as personal injury

3  claimants, we're settling the whole ball of wax.  From the

4  position of the bankruptcy court, lots of stuff that you would

5  otherwise have to do in terms of adjudicating late claims

6  motions already on file that could have taken years to finish

7  disappear.

8           THE COURT:  Well, let me --

9           MR. WEISFELNER:  And I think that was the

10  contemplation of the parties that negotiated, presented, and

11  had approved the plan and all the plan-related materials.

12           THE COURT:  So let me see.  Let's assume a billion

13  dollars comes into the GUC Trust and only a hundred economic

14  loss plaintiffs come and say, "Give me my slice of the pie."

15  What happens to the billion dollars?

16           MR. WEISFELNER:  Well, let me address that

17  specifically.  By the way, it's a billion plus the 15 million.

18           THE COURT:  I'm just --

19           MR. WEISFELNER:  So let me talk about how that gets

20  adjudicated.

21           THE COURT:  It's pocket change.

22           MR. WEISFELNER:  First of all, as Your Honor might

23  well imagine, there were discussions between economic loss

24  plaintiff types on the one hand and personal injury and

25  wrongful death types on the other hand who will tell you -- and

09-50026-mg   Doc 14135-1   Filed 10/19/17   Entered 10/19/17 15:15:27   Exhibit A
Case 1:14-md-02543-JMF   Document 4758   Filed 10/18/17   Page 79 of 111
Pg 31 of 59

38

 1  by the way, not to take issue with Your Honor's commentary, but

 2  I'm sure there are people on the personal injury/wrongful death

 3  equation that would say I don't need economic losses to make up

 4  the $40 billion; I'll trigger it all by myself.  There are

 5  people on the economic loss side that says I don't need

 6  personal injury; I can get there on my own.  But combined we

 7  get there.  But here's the process.  And the parties were wise

 8  enough to go to Magistrate Judge Cott to --

 9          THE COURT:  It's Cott.

10          MR. WEISFELNER:  Cott, to say we may very well need

11  your help not only in figuring out how to allocate the billion

12  dollars, but how do we determine now or any time in the future

13  who's eligible.  The good news is that we will have acquired

14  names and addresses of every single GM car owner that was the

15  subject of the recall, every single GM car owner who of record

16  bought the car.  And we have a $6 million notice procedure.

17          In that procedure, the long form, what people are

18  told is let's not knock ourselves out about how to distribute

19  nothing; let's knock ourselves out about how to distribute up

20  to a billion dollars.  And then your relative entitlement

21  versus someone else's relative entitlement, depending on the

22  facts and circumstances that relate to you specifically, will

23  be worked out with the help of the magistrate judge and, if

24  necessary, Judge Furman.  And an entire procedure will develop

25  probably under Rule 23 where notice goes out to the world with

39

1  an opportunity to object that says, here's your entitlement, if

2  you like it, get ready to get the check.  If you don't like it,

3  show up at the hearing --

4          THE COURT:  All right.

5          MR. WEISFELNER:  -- and tell us why you don't like

6  what you're getting.

7          THE COURT:  Well, just -- I think that was in the

8  letters I read.  To get the maximum shares from New GM, what do

9  allowed claims have to go up to?  It's 35 billion is the

10 bottom, but where do you hit the max?

11         MR. WEISFELNER:  I'm almost sure that the number is

12 42 billion, up from the current 33 billion depending, give or

13 take, on what happens with the avoidance action --

14         THE COURT:  Okay.  All right.

15         MR. WEISFELNER:  -- proceeding.

16         THE COURT:  Okay.  Thanks very much.

17         MR. WEISFELNER:  Thank you, Judge.

18         THE COURT:  Okay.  Who is going to speak -- are you

19 going -- are you --

20         MR. WEINTRAUB:  Just one point, Your Honor.

21         THE COURT:  I'm all set.  Go ahead.  Go ahead.

22         MR. WEINTRAUB:  And not wanting to get into an

23 extended colloquy, Your Honor.  Just for the record, the

24 personal injury plaintiffs do not concede that a claim against

25 the trust precludes a claim against New GM on successor

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 1:14-md-02543-JMF   Document 4758-3   Filed 10/16/17   Page 11 of 11

74

1                    **C E R T I F I C A T I O N**

2

3            I, Ilene Watson, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter, and to the best of my ability.

7

8

9

10  ILENE WATSON, AAERT NO. 447     DATE:  October 3, 2017

11  ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit 4

**HEARING DATE AND TIME: [ ], 2017 at [ ] (EST)**
**OBJECTION DEADLINE: [ ], 2017 at 4:00 p.m. (EST)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
:
In re:                                                    :               Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,  :               Case No.: 09-50026 (MG)
        f/k/a General Motors Corp., et al.,         :
                                                          :
                                Debtors.          :               (Jointly Administered)
-------------------------------------------------------------X

**MOTION FOR ORDER APPROVING NOTICE**
**PROCEDURES WITH RESPECT TO PROPOSED SETTLEMENT**
**BY AND AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST**

The Ignition Switch Plaintiffs,[1] certain Non-Ignition Switch Plaintiffs,[2] certain Pre-Closing Accident Plaintiffs[3] (collectively, the "**Signatory Plaintiffs**") and the Motors Liquidation Company GUC Trust (the "**GUC Trust**," together with the Signatory Plaintiffs, the "**Parties**") hereby submit this *Motion for Order Approving Notice Procedures with Respect to Proposed Settlement by and Among the Signatory Plaintiffs and the GUC Trust* (the "**Motion**"). In support of this Motion, the Parties respectfully state as follows:

---

[1]   The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047.

[2]   The term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540, and 14V-153.

[3]   The term "**Pre-Closing Accident Plaintiffs**" shall mean those plaintiffs asserting personal injury or wrongful death claims or persons who suffered a personal injury or wrongful death on or arising from an accident involving an Old GM vehicle that occurred prior to the closing of the Section 363 Sale. Collectively, all Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Pre-Closing Accident Plaintiffs are referred to as "**Plaintiffs**."

## PRELIMINARY STATEMENT

1.      On August [ ], 2017, after good faith, arm's-length negotiation, the Signatory Plaintiffs and the GUC Trust entered into the Settlement Agreement.

2.      Following the Court's consideration and approval of this Motion, the Parties intend to file and serve (in the manner contemplated by the proposed Notice Procedures herein) a motion (the "**9019 Motion**") requesting the Court's approval of the Settlement Agreement and Claims Estimate Order.

3.      The Settlement Agreement resolves numerous longstanding, disputed issues including, *inter alia*:  (i) whether Plaintiffs should be granted authority to file late proofs of claim (and whether such authority can be granted solely on due process grounds); (ii) whether Plaintiffs' asserted claims are equitably moot; (iii) whether additional grounds exist to object to Plaintiffs' asserted claims; and (iv) the allowable amount of the Signatory Plaintiffs' claims (if any).

4.      Generally, under the Settlement Agreement,[4] the GUC Trust agrees to irrevocably pay $15,000,000 (the "**Settlement Amount**") into a trust, fund or other vehicle (the "**Settlement Fund**") for the exclusive benefit of Plaintiffs.

5.      In exchange, upon payment of the Settlement Amount, all Plaintiffs with claims against the GUC Trust (whether asserted or unasserted, contingent, or otherwise) arising from New GM's 2014 recalls, including those who did not execute the Settlement Agreement, are deemed to irrevocably waive and release all claims (other than those arising under the Settlement Agreement) against Old GM, the Old GM estate, the GUC Trust, the GUC Trust Administrator,

---

[4]  This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent that there are any inconsistencies between the description of the Settlement Agreement contained in the Motion and the terms and provisions of the Settlement Agreement, the Settlement Agreement shall control.

holders of beneficial units in the GUC Trust (the "**Unitholders**") and the Motors Liquidation Company Avoidance Action Trust, including a release of any rights to prior or future distributions of or current GUC Trust assets and any rights to distributions by the Motors Liquidation Company Avoidance Action Trust.

6.    In addition, the GUC Trust agrees to provide reasonable assistance and cooperation in obtaining an order from the Court (the "**Claims Estimate Order**"): (i) finding that the estimated aggregate amount of Plaintiffs' claims, together with all other allowed claims, against the estates meet or exceed $42 billion, triggering the provision of the Sale Agreement[5] requiring New GM to issue additional New GM common stock (the "**Adjustment Shares**"); and (ii) directing that those Adjustment Shares be promptly delivered to the Settlement Fund by New GM.

7.    All Unitholders, all defendants in the action captioned *Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al.*, Adv. Pro. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009) (the "**Term Loan Avoidance Action**"), and all holders of Allowed General Unsecured Claims, other than Plaintiffs, will be deemed to irrevocably waive and release any and all rights to these Adjustment Shares, as well as the Settlement Amount.

8.    Subject to notice and an opportunity for Plaintiffs to object, the Signatory Plaintiffs will determine the overall allocation of the value of the Settlement Fund between economic loss claims and personal injury/wrongful death claims, and the eligibility and criteria for payment. Being defined as a Plaintiff will not assure any party that he, she, or it will receive

---

[5]    See *Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser*, dated as of June 26, 2009 (the "**AMSPA**"), § 3.2(c).

a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.

9.      Nothing in the Settlement Agreement is intended to waive any claims against New GM or to be an election of remedies against New GM; nor does the Settlement Agreement or any payments made in connection therewith represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full from every available source; provided, however, that in no event shall any Plaintiff be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares.  Except as mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any claims that any Plaintiff may have against New GM or constitute an election of remedies by any Plaintiff, and neither the Settlement Amount nor the Adjustment Shares (nor any distribution thereof to any Plaintiff) shall represent full and final satisfaction of any claim that any Plaintiff may have against New GM, all of which are expressly reserved. The Bankruptcy Court's estimate of the aggregate Allowed General Unsecured Claims in the Claims Estimate Order shall not operate as a cap on any of the claims of any of the Plaintiffs against New GM.

10.      As part of the Settlement Agreement, the Parties by this Motion, request that the Court enter an Order approving and establishing Notice Procedures for notice of the 9019 Motion.

## JURISDICTION

11.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

12.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## NOTICE PROCEDURES

13.    Pursuant to the Settlement Agreement, the Parties propose that they provide notice of the 9019 Motion, and the hearing date to consider approval of the Settlement Agreement and Claims Estimate Order, pursuant to the below "**Notice Procedures**":

    i.    paid media including (1) digital banner advertisements targeted specifically to owners or lessees of the defective vehicles manufactured by Old GM included in the Recalls; (2) pre-roll video ads placed on YouTube and other sites with YouTube embedded videos; (3) sponsored search listings on the three most highly-visited Internet search engines, Google, Yahoo! and Bing; (4) a party-neutral informational press release issued to online press outlets throughout the United States; and (5) a settlement website;

    ii.    notice by postcard in the form attached hereto as **Exhibit C** to: (A) all persons in the United States who, as of July 10, 2009, owned or leased a defective vehicle manufactured by Old GM included in the Recalls; and (B) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against New GM or filed or joined a motion for authority to file late claims against the GUC Trust, as of the date of the Settlement Agreement;[6]

    iii.    notice to all defendants in the Term Loan Avoidance Action via the Bankruptcy Court's ECF system and, to the extent a defendant is not registered to receive notice via the ECF system, via postcard in the form attached hereto as **Exhibit C**;

    iv.    notice via DTC's LENSNOTICE system to holders of beneficial units of the GUC Trust in the form attached hereto as **Exhibit D**; and

    v.    notice via ECF to all entities, including New GM, that receive electronic notice from the Court's ECF system.

14.    Pursuant to the Settlement Agreement, the GUC Trust shall be responsible for funding the cost of the notice contemplated hereby, up to an amount of $6,000,000 (the "**Notice**

---

[6]    The Parties request that the Court order New GM to turn over the names and addresses of individuals in category (ii).

5

**Cost Cap Amount**").[7]   As described further below, the GUC Trust respectfully requests authority to "hold back" and reallocate for use up to $6,000,000 from otherwise distributable assets of the GUC Trust for use in funding the Notice Procedures.

15.   The Parties request that this Court:  (i) schedule the hearing to consider approval of the 9019 Motion for [ ], 2017 at [ ] (EST) (the "**Hearing**"); and (ii) establish [ ], 2017 at [ ] (EST), as the deadline by which all responses and objections to the 9019 Motion must be filed and served.

16.   The Parties respectfully submit that the foregoing Notice Procedures, and requested hearing date and objection deadline, will provide comprehensive notice to all affected parties of the terms and the relief to be sought at the hearing to consider approval of the 9019 Motion, and that no other or further notice is necessary or required.

## RELIEF REQUESTED

17.   By this Motion, the Parties respectfully request that the Court enter an order approving the Notice Procedures substantially in the form attached to this Motion as **Exhibit A**.

## BASIS FOR RELIEF

18.   Bankruptcy Code Section 105(a) provides a bankruptcy court with broad powers in its administration of a case.  See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").  Pursuant to Section 105(a), the Bankruptcy Court has expansive equitable powers to achieve fairness and

---

[7]   Based upon proposals received from vendors, the cost of the notice contemplated hereby is approximately $6 million.  Specifically, the parties requested proposals for the notice program from three vendors: (1) Epiq Class Action & Claims Solutions, Inc./Hilsoft Notifications ("**Epiq/Hilsoft**"); (2) Rust Consulting/Kinsella Media; and (3) Kurtzman Carson Consultants.  Based on the responses, the parties selected Epiq as the Notice Administrator, based both on the cost estimate, as well as their comprehensive notice plan, which is explained in detail in the Declaration of Cameron R. Azari, Esq., on Implementation and Adequacy of General Motors Bankruptcy Settlement Class Notice Program ("**Azari Decl.**"), annexed hereto as **Exhibit E**.

justice in the reorganization process.  <u>See, e.g.</u>, <u>Croton River Club, Inc. v. Half Moon Bay</u>

<u>Homeowners Ass'n (In re Croton River Club, Inc.)</u>, 52 F.3d 41 (2d Cir. 1994) (holding that

bankruptcy courts have broad equity power to manage affairs of debtors).

19.     In addition, the Court has the authority and discretion under Bankruptcy Code

Section 105(d) to issue and prescribe procedures and conditions as the Court deems appropriate

to ensure that matters before it are handled expeditiously and economically.  <u>See</u> 11 U.S.C. §

105(d); <u>In re Fletcher Int'l, Ltd.</u>, 536 B.R. 551, 560 (S.D.N.Y. 2015), <u>aff'd</u>, 661 F. App'x 124

(2d Cir. 2016).  Under Bankruptcy Rule 2002, no less than 21 days' notice must be provided for

proposed settlements under Bankruptcy Rule 9019.  Epiq/Hilsoft estimates that it will take 35

days to complete the mailing of the postcard notice.

20.     Entry of the Proposed Order is appropriate under Bankruptcy Code Sections

105(a) and 105(d), as complemented by Bankruptcy Rule 9019, because it will allow the Parties

to:  (i) comply with the terms of the Settlement Agreement (which specifically require the Parties

to receive an order from this Court approving the Notice Procedures); and (ii) implement a

process in which appropriate notice will be given to all relevant parties in interest so that this

Court can consider the appropriateness of the 9019 Motion at the Hearing.

21.     To ensure that the Notice Procedures are sufficient, Eqip/Hilsoft, a firm that

specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal

notification plans, was engaged.[8]  Epiq/Hilsoft analyzed the individual notice options and the

media audience data to determine the most effective mixture of media required to reach the

greatest practicable number of included parties.[9]

---

[8]    <u>See</u> Azari Decl. ¶ 3.

[9]    <u>Id.</u> ¶ 8.

7

22.     Rather than incurring the prohibitive cost and expense of mailing a long form of notice to Plaintiffs, the Parties will serve the postcard notice attached hereto as **Exhibit C** (the "**Direct Mail Notice**") that clearly and concisely summarizes the Settlement.  The Direct Mail Notice will direct the recipients to a website dedicated specifically to the Settlement where they can access additional information.  The Direct Mail Notices will be sent by United States Postal Service first class mail.[10]

23.     This comprehensive individual notice effort will be supplemented by moderate paid media selected to both notify Plaintiffs who may not see the Direct Mail Notice and remind Plaintiffs to act if they so choose.  Paid media will include digital banner advertisements targeted specifically to owners and lessees of the vehicle makes and models included in the Settlement along with online video advertisements targeted to adults aged 18 and over.[11]

24.     To build additional reach and extend exposures, a party-neutral informational release will be issued to approximately 5,000 general media (print and broadcast) outlets and 5,400 online databases and websites throughout the United States.[12]

25.     A dedicated website will be created for the Settlement.  Plaintiffs will be able to obtain detailed information about the case and review documents including the Long Form Notice attached hereto as **Exhibit B** (in English and Spanish), Settlement Agreement, Settlement Order and answers to frequently asked questions and any other documents the Court may require.   Once the plan for allocation between economic loss claims and personal injury/wrongful death claims is determined it will be posted prominently on the Settlement website.  Any criteria on eligibility to recover from the Settlement Fund will also be posted

---

[10]  Id. ¶ 16.

[11]  Id. ¶¶ 20-25.

[12]  Id. ¶ 28.

prominently on the Settlement website. To facilitate locating the case website, sponsored search

listings will be acquired on the three most highly-visited internet search engines: *Google*,

*Yahoo!* and *Bing*.[13]

     26.    The Notice Procedures presented here are similar to the procedures proposed by

the debtors in In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bank. D. Del. July 7, 2017) to

provide notice to individuals who own, or may have owned, vehicles equipped with recalled

airbag inflators—serving a postcard via first-class mail, utilizing digital banner advertising and

paid internet search listings, distributing an informational release, and creating a dedicated

website.[14]

     27.    The Parties believe these Notice Procedures will keep costs reasonable under the

circumstances while also reaching the greatest practicable number of Plaintiffs.[15]

     28.    As noted above, the GUC Trust shall be responsible for funding the cost of the

Notice Procedures up to the Notice Cost Cap Amount. Pursuant to Section 6.1(b) of the Second

Amended and Restated GUC Trust Agreement dated as of July 30, 2015 (the "**GUC Trust**

**Agreement**"), the GUC Trust Administrator is afforded the flexibility to "hold back" from

distributions (with the approval of FTI Consulting, Inc. as monitor of the GUC Trust (in such

capacity, the "**GUC Trust Monitor**"))[16] otherwise distributable assets for the purposes of,

---

[13]  Id. ¶¶ 26, 29.

[14]  See Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants ¶¶ 24-28, In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. July 7, 2017).

[15]  Id. ¶ 12.

[16]  As required by Section 6.1 of the GUC Trust Agreement, the GUC Trust Administrator has consulted with the GUC Trust Monitor with respect to the proposed reallocation and use of distributable cash. GUC Trust Agreement § 6.1. The GUC Trust Monitor has indicated that it supports the relief requested herein.

among other things, funding fees, costs and expenses of the GUC Trust to the extent that such

fees, costs and expenses are not otherwise contemplated by the GUC Trust's budget. *See* GUC

Trust Agreement § 6.1(b). The GUC Trust Agreement further permits the GUC Trust

Administrator to seek Bankruptcy Court authority to reallocate and use the "held back" funds for

the purposes of satisfying such fees, costs and expenses as incurred (such funds, as reallocated,

"**Other GUC Trust Administrative Cash**"). *Id.* Section 6.13 of the GUC Trust Agreement

provides that to the extent any "expenses, costs, liabilities, obligations or fees [are] incurred by

the GUC Trust… in connection with the wind-down of the Debtors' affairs… [such liabilities]

shall be satisfied… from the applicable portion of Other GUC Trust Administrative Cash." *See*

GUC Trust Agreement § 6.13.

29.     The GUC Trust's agreement to pay up to $6 million for the notice contemplated

hereby is not currently budgeted by the GUC Trust and falls well within the types of "expenses,

costs, liabilities, obligations or fees" that may be "held back" and reallocated for use by the GUC

Trust pursuant to Section 6.13 of the GUC Trust Agreement. Accordingly, the GUC Trust

submits that, pursuant to Section 6.1(b) of the GUC Trust Agreement, the request to reallocate up

to $6 million of otherwise distributable assets for the purposes of funding the Notice Procedures

is warranted.

## NOTICE

30.     Notice of this Motion has been provided to all entities that receive electronic

notice from the Court's ECF system and otherwise in accordance with the *Sixth Amended Order*

*Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 1015(c) and 9007 establishing Notice and*

*Case Management Procedures*, dated May 5, 2011 (Bankr. Dkt. No. 10183).

31.    No previous application for the relief sought in this Motion has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE the Parties respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and equitable.

Dated: August [ ], 2017              Respectfully submitted,
      New York, New York

                                    */s/ Draft*
                                    Edward S. Weisfelner
                                    Howard S. Steel
                                    BROWN RUDNICK LLP
                                    Seven Times Square
                                    New York, New York 10036
                                    Tel: 212-209-4800
                                    eweisfelner@brownrudnick.com
                                    hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN
&PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO
LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

11

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing
Accident Plaintiffs Represented By Hilliard
Muñoz Gonzales L.L.P. and the Law Offices
of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to Certain Pre-Closing Accident
Plaintiffs*
Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J.
HENRY
4715 Fredricksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

12

Lisa M. Norman (admitted pro hac vice)
T. Joshua Judd (admitted pro hac vice)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Tel: 713-850-4200
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

Matthew Williams
Keith R. Martorana
Gabriel Gillett
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
Tel: 212-351-400

*Counsel for Wilmington Trust Company, as
Administrator and Trustee of the GUC Trust*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                           :

In re:                           :          Chapter 11

MOTORS LIQUIDATION COMPANY, et al.,   :          Case No.: 09-50026 (MG)

       f/k/a General Motors Corp., et al.,   :

                           :

                    Debtors.    :          (Jointly Administered)
------------------------------------------------------------X

**ORDER APPROVING NOTICE PROCEDURES**
**WITH RESPECT TO PROPOSED SETTLEMENT BY AND**
**AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST**

Upon the *Motion for Order Approving Notice Procedures with Respect to Proposed Settlement by and Among the Signatory Plaintiffs and the GUC Trust*, dated [ ], 2017 (the "**Motion**"),[17] of the Ignition Switch Plaintiffs, Certain Non-Ignition Switch Plaintiffs, Certain Pre-Closing Accident Plaintiffs and the GUC Trust (collectively the "**Parties**") for approval of the Notice Procedures with respect to the 9019 Motion, all as more fully described in the Motion; and the Bankruptcy Court having considered the Motion; and a hearing on the Motion having been held before this Bankruptcy Court on _____, 2017 (the "**Hearing**") to consider the relief requested in the Motion; and the Bankruptcy Court having found that it has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Plan; and the Bankruptcy Court having considered the statements of counsel on the record of the Hearing and the filings of the parties in connection the Motion; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record of the Hearing; and it appearing that proper and adequate notice of the Motion has been given and that

---

[17]  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

no other or further notice is necessary; and after due deliberation and sufficient cause appearing

therefor, it is

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that the Notice Procedures are approved; and it is further

**ORDERED** that notice of the 9019 Motion in accordance with the Notice Procedures

will be sufficient and effective notice in satisfaction of federal and state due process

requirements and other applicable law to put the parties in interest in these Chapter 11 cases, all

Plaintiffs, and others on notice of the 9019 Motion; and it is further

**ORDERED** that, pursuant to Section 6.1(b) of the GUC Trust Agreement, the GUC

Trust is authorized to reallocate and use up to $6,000,000 of otherwise distributable assets to

satisfy the costs of the Notice Procedures.

**ORDERED** that, no later than two (2) days after the entry of this Order, New GM shall

turn over to the Parties the names and addresses of (A) all persons in the United States who, as of

July 10, 2009, owned or leased a defective vehicle manufactured by Old GM included in the

Recalls; and (B) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against New GM as

of the date of this Order;

**ORDERED** that, all responses and objections to the 9019 Motion must be filed and

served so as to be received by [ ], 2017 at [ ] (EST); and it is further

**ORDERED** that the hearing on the 9019 Motion shall take place in the Bankruptcy Court

on [ ], 2017 at [ ] (EST); and it is further

**ORDERED** that notice of the 9019 Motion as provided herein shall be deemed good and

sufficient notice of the 9019 Motion; and it is further

**ORDERED** that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2017
             New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

# <u>EXHIBIT B</u>

**(Long Form Notice)**

# EXHIBIT C

**(Short Form Postcard Notice)**

09-50026-mg   Doc 14135-1   Filed 10/19/17   Entered 10/19/17 15:15:27   Exhibit A
Pg 54 of 59
Case 1:14-md-02543-JMF   Document 4758-4   Filed 10/16/17   Page 21 of 22

09-50026-mg   Doc 14093-16   Filed 09/11/17   Entered 09/11/17 18:46:54   Exhibit P -
Notice Procedures Motion   Pg 21 of 22

# EXHIBIT D

**(DTC Notice)**

# EXHIBIT E

**(Azari Declaration)**

# Exhibit 5

Ha41gmc

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE:  GENERAL MOTORS LLC
     IGNITION SWITCH LITIGATION,
4                                           14 MD 2543 (JMF)

5                                           Conference
     ------------------------------x
6                                           New York, N.Y.
                                            October 4, 2017
7                                           9:31 a.m.

8    Before:

9                         HON. JESSE M. FURMAN,

10                                          District Judge

11                              APPEARANCES

12   LIEFF CABRASER HEIMANN AND BERNSTEIN LLP
          Attorneys for Plaintiffs
13   BY:  ELIZABETH J. CABRASER, ESQ.

14   HAGENS BERMAN SOBOL SHAPIRO, LLP
          Attorneys for Plaintiffs
15   BY:  STEVE W. BERMAN, ESQ.

16   HILLIARD MUNOZ GONZALES LLP
          Attorneys for Plaintiffs
17   BY:  ROBERT C. HILLIARD, ESQ.

18   BROWN RUDNICK LLP
          Attorneys for Plaintiffs
19   BY:  EDWARD S. WEISFELNER, ESQ.

20   SUSMAN GODFREY LLP
          Attorneys for Plaintiffs
21   BY:  STEVEN M. SHEPARD, ESQ.

22   KIRKLAND & ELLIS, LLP
          Attorneys for Defendant
23   BY:  MIKE BROCK, ESQ.
          RENEE D. SMITH, ESQ.
24        RICHARD C. GODFREY, ESQ.
          ANDREW B. BLOOMER, ESQ.
25        WENDY L. BLOOM, ESQ.
```

Ha41gmc

1          THE COURT:  All right.  Well, to the extent that there

2     are any needs on that front or, for that matter, if there are

3     lawyers from Puerto Rico or Las Vegas or anywhere affected --

4     it seems like we're surrounded by a lot of awful things these

5     days -- let me know, I'll be as accommodating as I can, but my

6     thoughts are with the folks down there from the MDL and from

7     other places as well.  And I didn't mean to leave out Florida.

8     The list goes on.

9          All right.  You guys I think have all met at this

10    point my new law clerk, Kristen Loveland, who will be the GM

11    clerk, so to speak, for the next year or so.  So I think her

12    transition has largely been smooth, but give her a little bit

13    of a break because as she learns the ropes, there's a lot to

14    handle on our end, and you all know how things work better than

15    she does at the moment.  So to the extent that you can help her

16    out and help ensure that the transition is smooth, that would

17    be great.

18         Let's get to the agenda.  First item on the agenda is

19    the status of the bankruptcy proceedings.  I would have put

20    under this heading the representational issues that have been

21    raised in the letters over the last few days, although you guys

22    put that in the coordination and related actions item on the

23    agenda, but I'll address it now.  The long and short of it is,

24    I'm not going to opine on that myself, for two reasons.  One

25    is, I am firmly of the view that it is not ripe at the moment.

59

```
 1    I would note in that regard that in New GM's own letter, Quinn
 2    Emanuel letter of September 25th that was submitted to Judge
 3    Glenn, one of the arguments that New GM made to Judge Glenn
 4    with respect to how to proceed with respect to the issues
 5    before him was that addressing the enforcement of the
 6    settlement in the first instance would potentially obviate the
 7    need to get into and resolve all sorts of complicated issues,
 8    and among the list of issues that were flagged in that letter
 9    was the very representational issues that have been raised
10    before me.  All of which is to say I think, on New GM's own
11    view, those issues are only relevant or ripe in the event that
12    Judge Glenn decides that the settlement is enforceable, and for
13    that reason, I do think that it would be an advisory opinion
14    and/or is not ripe at this juncture.
15            On top of that, my inclination is to think -- and I
16    don't even need to get into this, really, but I will
17    nevertheless.  My inclination is to think that these are not
18    issues for me to decide, that they're for Judge Glenn to
19    decide.  I don't think, as I read plaintiff's counsel's papers,
20    I don't read them to be suggesting -- and there may be errant
21    lines here or there in the settlement papers or what have you.
22    I don't read them to be suggesting that they are purporting to
23    represent absent parties but rather proposing some sort of
24    procedural mechanism via Rule 9019 by which notice can be
25    provided and essentially bind absent parties.  To me that's an
```