# **Exhibit B**



October 18, 2017

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street
New York, NY 10007

      Re:   *In re: General Motors LLC Ignition Switch Litigation*,
              14-MD-2543 (JMF); 14-MC-2543

Dear Judge Furman:

      In accordance with the Court's instructions at the October 4, 2017 Status Conference, and Order No. 136, Co-Lead Counsel for Plaintiffs provide a status report on the proceedings in the Bankruptcy Court and how it impacts the MDL.

**Status of Proceedings.**

      In light of the Court's June 30, 2017 ruling dismissing the pre-sale purchasers' independent claims, the bulk of the economic loss claims going forward in the MDL are fairly described as the independent claims of post-sale purchasers. ECF 4175 at 18-21.

      As to pre-sale purchasers' claims against GM, summary judgment on successor liability is pending, and is likely the last major issue before the Court considers class certification.[1] Notably, the parties have already submitted their views on the impact of the late claims motions on successor liability. ECF 3856 at 5-6 (Plaintiffs' position); 3857 at 5-10 (GM's position). Plaintiffs' position that the ruling on summary judgment on successor liability claims need not await the resolution of the late claims issues applies equally to the effect of a *settlement* of the late claims motion as it does to its litigation.

      Although the GUC Trust Settlement, if enforced and approved, would have a meaningful impact on the proceedings in this Court, the specific implications would be the result of briefing

---

[1] GM moved for summary judgment on benefit of the bargain damages on October 6, 2017, and Plaintiffs' opposition is currently due on November 2. Plaintiffs' view continues to be that this motion, which largely repeats arguments (such as prudential mootness) on which GM has already lost, is another—and improper—bite at the apple on the motion to dismiss. To the extent that the motion is a summary judgment motion on damages, it is inextricably linked to expert analysis, and is thus a premature *Daubert* motion in another form.

1373814.2

The Honorable Jesse M. Furman
October 18, 2017
Page 2

when the issue is ripe, and do not affect anything now pending in either this Court or the Bankruptcy Court.

In the Bankruptcy Court, Judge Glenn will decide the *Motion to Enforce the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust*, dated Aug. 11, 2017 (Bankr. ECF No. 14092), likely early next year, following a three-day bench trial on December 18-20. *See Pre-Trial Stipulation and Scheduling Order*, dated Oct. 11, 2017 (Bankr. ECF No. 14130) available at: http://www.motorsliquidationdocket.com. Judge Glenn appropriately deferred consideration of, among other issues, what the GUC Trust has styled as a motion to authorize entry into the Forbearance Agreement between the GUC Trust and GM.

If the Bankruptcy Court finds that the Settlement Agreement is binding, then the Bankruptcy Court will consider whether to approve the Settlement Agreement and issue a Claims Estimate Order (defined below) under Bankruptcy Rule 9019. If the Bankruptcy Court finds that the Settlement Agreement is not binding, then the Bankruptcy Court may consider whether to approve the Forbearance Agreement, replace the GUC Trustee, and litigation may resume on the late claims issues.

The Settlement, if approved, would trigger GM's obligations under the Sale Agreement to issue additional shares of GM common stock (the "Adjustment Shares"), which represent the point of sale purchase price and a *res* under the jurisdiction of the Bankruptcy Court.[2] Section 3.2(c) of the Sale Agreement requires GM to issue Adjustment Shares as additional sale consideration when the Bankruptcy Court issues an order (a "Claims Estimate Order") estimating the allowed general unsecured claims against the Old GM estate to be an amount exceeding $35 billion, with a ceiling of issuing 30 million shares if the estimated amount equals or exceeds $42 billion.

Under the Plan and the GUC Trust Agreement, the GUC Trust has the exclusive authority to object to, settle, or seek estimation of general unsecured claims, and to seek issuance of the Adjustment Shares. *See* Plan §§ 7.1(b), 7.3; GUC Trust Agreement §§ 5.1, 2.3(d). Therefore, and notably, under the governing documents, GM lacks standing to object to, settle, or seek estimation of general unsecured claims, and is obligated to issue the Adjustment Shares once a Claims Estimate Order is entered.

GM remains obligated to pay additional sale consideration even when it has nothing to do with the conduct causing the shares to be triggered. The only effect this Settlement may have on the litigation in this Court is that GM will likely benefit from issuing Adjustment Shares in terms of a set-off in this litigation. In addition, if the Settlement Agreement is held to be binding, GM will likely seek to withdraw the reference in order to have this Court consider whether to approve the Settlement Agreement.

---

[2] This is not a class settlement under Rule 23. Specifically, the Settlement provides for a $15 million payment by the GUC Trust in exchange for a release of claims against the GUC Trust's remaining assets, any claims for priority of distributions from remaining funds, and a waiver of any rights to seek to clawback past distributions of GUC Trust Assets, and commits the GUC Trust to seek approval under Bankruptcy Rule 9019 of the Claims Estimate Order.

1373814.2

The Honorable Jesse M. Furman
October 18, 2017
Page 3

For these reasons, unless the parties make meaningful, good-faith progress at the mediation in looking at all of these issues together (and the question of the scope of the mediation is being resolved between the parties), the issues in the MDL Court are distinct from, and at present do not overlap with, those in the Bankruptcy Court.

**Economic Loss Co-Lead Counsel's Role in the Bankruptcy Proceedings and the Relevance of That Role in the Current Case Status.**

As the Court has recognized, Economic Loss Co-Lead Counsel have been heavily (and appropriately) involved in the bankruptcy proceedings and issues spinning out of the Bankruptcy Court and into this Court. Indeed, substantial litigation has been required to set the case on the tracks it is on, including: (i) litigating the merits of independent claims against GM in this Court (and, somewhat incredibly, continuing to litigate in the form of the appeals of the Bankruptcy Court's rulings on the second set of threshold issues to ensure that all plaintiffs can pursue independent claims); (ii) litigating successor liability claims in this Court; and (iii) litigating claims against the GUC Trust in the Bankruptcy Court.

As Co-Lead Counsel's October 2, 2017 letter on representational authority detailed (ECF 4657), Economic Loss Co-Lead Counsel have always been designated to represent the interests of defined groups of plaintiffs in the Bankruptcy Court, along with designated bankruptcy counsel. Notably, a number of sections of Order No. 13 reflect and require that involvement in the bankruptcy proceedings and settlement are both part of MDL counsel's role. *See* ECF 304 Section I(A) ("With respect to the common benefit claims and coordinated pretrial proceedings, Lead Counsel must: (12) ("perform all tasks necessary to carry out the functions of Lead Counsel and to properly coordinate Plaintiffs' pre-trial activities"); (16) ("negotiate settlements subject to Court approval on behalf of Plaintiffs"); (17) ("if there is a settlement, propose a plan of allocation"); I(B) ("Liaison Counsel shall coordinate activities and information exchange between the MDL proceedings and the bankruptcy proceedings, including meeting and conferring with New GM to provide the Court joint written updates of the bankruptcy proceedings as ordered by the Court about matters of significance, including hearings, schedules, and deadlines.").

Co-Lead Counsel's role in the Bankruptcy Court has been well known to GM and has allowed GM to enjoy the benefits of the organizational efficiencies this has created, as well as substantive advantages. Among other things, MDL counsel and GM worked to negotiate the stipulations that created the record for the original litigation on the threshold issues before Judge Gerber resulting in his June 1, 2015 decision and subsequent proceedings in the Second Circuit and the Supreme Court. In fact, GM represented to the Bankruptcy Court, and the procedure has been, that plaintiffs in cases pending outside of the MDL are presumptively bound by positions taken by Co-Lead Counsel in the absence of separate pleadings. *See* May 17, 2017 Hr'g Tr. 203:7-208:12 (Bankr. ECF No. 13943) (GM arguing that all plaintiffs served with a scheduling order identifying certain issues to be briefed in the Bankruptcy Court were bound by the rulings on those issues).

The Honorable Jesse M. Furman
October 18, 2017
Page 4

As relevant to the Court's questions about case status, the history of Co-Lead Counsel's involvement in the Bankruptcy Court thus shows that they continue to occupy the same role in those proceedings, and that status has not changed.

**No Action By This Court Is Necessary.**

Because the litigation in the Bankruptcy Court over the enforceability of the Settlement Agreement reached with the GUC Trust does not automatically or substantively impact the legal and factual issues before this Court at this time (and for the foreseeable future), no action by this Court is presently required.

Respectfully Submitted,

| | |
|---|---|
| Steve W. Berman | Elizabeth J. Cabraser |
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** |
| 1918 Eighth Ave. | 275 Battery Street |
| Suite 3300 | 29th Floor |
| Seattle, WA 98101 | San Francisco, CA 94111-3339 |
| -and- | -and- |
| 555 Fifth Avenue | 250 Hudson Street |
| Suite 1700 | 8th Floor |
| New York, NY 10017 | New York, NY 10013-1413 |

1373814.2