**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | FOR PUBLICATION |
| MOTORS LIQUIDATION COMPANY, *et al.*, | Case No. 09-50026 (MG) |
| f/k/a General Motors Corp*., et al.*, | (Jointly Administered) |
| Debtors. | |

**MEMORANDUM OPINION AND ORDER DENYING ROGER DEAN GILLISPIE'S**
**MOTION FOR LEAVE TO PURSUE CLAIMS AGAINST GENERAL MOTORS LLC,**
**AND, ALTERNATIVELY, TO FILE A POST-BAR-DATE PROOF OF CLAIM IN THE**
**MOTORS LIQUIDATION COMPANY BANKRUPTCY**

*A P P E A R A N C E S :*

LOEVY & LOEVY
*Attorney for Roger Dean Gillispie*
311 North Aberdeen Street, 3rd Floor
Chicago, IL 60607
By:     David B. Owens, Esq. (admitted pro hac vice)

KINGS & SPALDING LLP
*Attorney for General Motors LLC*
1185 Avenue of the Americas
New York, NY 10036
By:     Arthur Steinberg, Esq.
          Scott Davidson, Esq.

KIRKLAND & ELLIS LLP
*Attorney for General Motors LLC*
300 North LaSalle
Chicago, IL 60654
By:     Richard C. Godfrey, P.C. (admitted pro hac vice)
          Andrew B. Bloomer, P.C. (admitted pro hac vice)

*[Remainder of page intentionally left blank]*

GIBSON, DUNN & CRUTCHER LLP
*Attorney for Wilmington Trust Company, as Trustee for and Administrator of the Motors
Liquidation Company General Unsecured Creditors Trust*
200 Park Avenue
New York, NY 10166
By:     Adam H. Offenhartz, Esq.
        Matthew J. Williams, Esq.
        Aric H. Wu, Esq.
        Lisa H. Rubin, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Motion for Leave to Pursue Claims Against General
Motors LLC, and, Alternatively, to File a Post-Bar-Date Proof of Claim in the Motors
Liquidation Company Bankruptcy* (the "Motion," ECF Doc. # 12727), on behalf of Roger Dean
Gillispie (the "Movant," or "Gillispie").  The Motion is supported by several exhibits (ECF Doc.
## 12727-1–6), including the *Order (I) Authorizing Sale of Assets Pursuant to Amended and
Restated Master Sale and Purchase Agreement with NGMCO, Inc., A U.S. Treasury-Sponsored
Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and
Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief,* dated July 5,
2009 (the "Sale Order," ECF Doc. # 2968), approving the 363 sale (the "Sale") of substantially
all of  General Motors Corporation's ("Old GM") assets.  An objection to the Motion (the "New
GM Objection," ECF Doc. # 12863) was filed on behalf of General Motors LLC ("New GM").
A response to the Motion (the "GUC Trust Response," ECF Doc. # 12864) was filed on behalf of
Wilmington Trust Company ("Wilmington Trust"), as trustee for and administrator of the Motors
Liquidation Company General Unsecured Creditors Trust (the "GUC Trust") in the Old GM
bankruptcy proceeding.

On August 7, 2017, this Court entered an Order Requesting Status Letters (ECF Doc.
# 14028), ordering that the parties each file written status reports to "address whether any

intervening changes in the law or factual circumstances regarding [the Motion] have occurred

since November 2014, such that supplemental briefing would be helpful to this Court in deciding

the Motion." Status reports were filed on behalf of Gillispie (ECF Doc. # 14052), Wilmington

Trust (ECF Doc. # 14049), and New GM (ECF Doc. # 14050).

For the reasons explained below, the Motion is **DENIED**. Gillispie may not pursue any

claims against New GM, and he may not file a late claim in the Old GM bankruptcy case.

# I.    BACKGROUND

## A.    Case Background

In February 1991, Gillispie was convicted on nine counts of rape, three counts of

kidnapping, one count of aggravated robbery, and three counts of gross sexual imposition. *See*

*State v. Gillispie*, 2012 WL 1264496, at *3 (Ohio Ct. App. Apr. 13, 2012). He was subsequently

re-tried and convicted again in June 1991. *Id.* Between 1991 and 2008, Ohio state courts

affirmed Gillispie's conviction on eight different occasions.[1] As described further below,

following post-conviction proceedings in federal and Ohio state courts, Gillispie's conviction

was vacated, and his motion to dismiss the indictment was granted. By his current Motion,

Gillispie seeks to prosecute civil claims against New GM or Old GM, essentially alleging

complicity, in the case of Old GM, or, successor liability, in the case of New GM, for his

wrongful conviction.

---

[1]    *See State v. Gillispie*, 1993 WL 10927 (Ohio Ct. App. Jan. 21, 1993) (rejecting direct appeal), *leave to appeal denied*, 616 N.E.2d 504 (Ohio 1993); *State v. Gillispie*, 1995 WL 41334 (Ohio Ct. App. Feb. 1, 1995) (affirming trial court's dismissal of first post-conviction challenge), *appeal not allowed*, 650 N.E.2d 479 (Ohio 1995); *State v. Gillispie*, No. 1990 CR 02667 (Ohio Ct. C.P. Sept. 17, 1999), *aff'd*, 2002 WL 471866 (Ohio Ct. App. Mar. 29, 2002), *appeal not allowed*, 770 N.E.2d 1050 (Ohio 2002); *State v. Gillispie*, No. 1990 CR 02667 (Ohio Ct. C.P. July 9, 2008) (denying second motion for new trial based on due process violations and newly discovered evidence of an alternative suspect).

On June 1, 2009 (the "Petition Date"), Old GM and certain of its affiliates (collectively, the "Debtors") filed Chapter 11 petitions in this Court (the "Chapter 11 Cases"). On the same day, the Debtors sought approval to sell substantially all of their assets, pursuant to 11 U.S.C. § 363 of the Bankruptcy Code, to an entity that eventually became New GM. *In re GM Corp.*, 407 B.R. 463, 479–80 (Bankr. S.D.N.Y. 2009). On June 2, 2009, this Court entered an order approving procedures for the Sale, including giving notice of a hearing of the Sale to "all known creditors" by mail, as well as notice by publication in a number of global, national, and local newspapers.[2] (ECF Doc. # 274.) On June 5, 2009, Old GM's notice and claims agent, Garden City Group ("GCG"), mailed to Gillispie, at his last-known address, the notice of the bankruptcy proceedings and the hearing on the proposed sale of substantially all of Old GM's assets. (ECF Doc. # 973, Ex. C, part 17 at 351.) In a declaration dated August 19, 2014, the Vice President of Bankruptcy Operations for GCG declared that the notice that was sent to Gillispie was not returned as undeliverable. ("Ferrante Declaration," GUC Trust Response, Ex. A, Declaration of Angela Ferrante, dated August 19, 2014, § 2.) On July 5, 2009, this Court entered its Sale Order.

On September 16, 2009, the Court issued an order (the "Bar Date Order," ECF Doc. # 4079) setting November 30, 2009 at 5:00 p.m. (Eastern Time) as the deadline (the "Bar Date") for proofs of claim relating to prepetition claims against Old GM or any of its affiliated debtors. The Bar Date Order stated:

> [A]ny holder of a Claim against the Debtors that is required but fails to file a Proof of Claim in accordance with this Bar Date Order . . . shall be

---

[2]    The order provided that "[o]n the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall cause the Publication Notice to be published (i) once in (a) the global edition of *The Wall Street Journal*, (b) the national edition of *The New York Times*, (c) the global edition of *The Financial Times*, (d) the national edition of *USA Today*, (e) *Detroit Free Press/Detroit News*, (f) *Le Journal de Montreal*, (g) *Montreal Gazette*, (h) *The Globe and Mail*, and (i) *The National Post*, and (ii) on the website of the Debtors' proposed claims and noticing agent, The Garden City Group, Inc., at http:/www.gmcourtdocs.com." (ECF Doc. # 274 § 9(e).)

09-50026-mg  Doc 14138-1  Filed 10/26/17  Entered 10/26/17 02:06:26  Main Document
Pg 5 of 26

> forever barred, estopped and enjoined from asserting such Claim against
> each of the Debtors and their respective estates (or filing a Proof of Claim
> with respect thereto), and each of the Debtors and their respective chapter
> 11 estates, successors, and property shall be forever discharged from any
> and all indebtedness or liability with respect to such Claim . . . .

(Bar Date Order at 5.)  The Bar Date Order also required Old GM to publish notice of the Bar

Date in a number of global, national, and local newspapers.[3]  (*Id.* at 7.)  On September 25, 2009,

GCG served the Gillispie by mail, at his last-known address, with a notice establishing the Bar

Date (the "Notice of Bar Date") and a proof of claim form.  (ECF Doc. # 4238, Ex. B, part 27 at

583.)  In her declaration, Angela Ferrante declared that the Notice of Bar Date was not returned

as undeliverable, and that the Gillispie did not file a proof of claim prior to the Bar Date.

(Ferrante Declaration.)  But since Gillispie had been in jail since his conviction in 1991, it

doesn't appear that he received either of the mailed notices sent to his last known address shown

in GM's records (since he was Old GM's former employee).  As explained below, however,

Gillispie was an "unknown creditor" to Old GM for whom notice by publication was sufficient

to satisfy due process requirements.

Following a petition for a writ of habeas corpus filed by Gillispie on December 15, 2009,

the U.S. District Court for the Southern District of Ohio conditionally granted Gillispie's petition

and ordered the State of Ohio to either release him or retry him.  *Gillispie v. Timmerman-*

*Cooper*, 835 F. Supp. 2d 482, 508–09 (S.D. Ohio 2011).  On April 13, 2012, the Ohio Court of

Appeals vacated Gillispie's conviction and remanded the case for a new trial.  *Gillispie*, 2012

---

[3]      The Bar Date Order provided that "the Debtors shall publish the Bar Date Notice, with any necessary
modifications for ease of publication, once in each of Financial Times, The Wall Street Journal (Global Edition—
North America, Europe, and Asia), The New York Times (National), USA Today (Monday through Thursday,
National), Detroit Free Press/Detroit News, Le Journal de Montreal (French), Montreal Gazette (English), The
Globe and Mail (National), and The National Post at least thirty days prior to the General Bar Date, which
publication is hereby approved and shall be deemed good, adequate, and sufficient publication notice of the Bar
Date and the procedures for filing Proofs of Claim in these cases . . . ."

WL 1264496.  The court reversed the trial's court 2009 finding that certain newly discovered

evidence would be inadmissible and in any event insufficient to warrant a new trial.  *Id.* at *11–

12.  Gillispie's motion to dismiss the indictment was eventually granted, and affirmed on appeal.

*State v. Gillispie*, 2016 Ohio 76688 (2d App. Dist. Nov. 10, 2016).  The Ohio Supreme Court

declined review, and the decision became final.  (Gillispie's Status Report, ECF Doc.

# 14052.)

In December 2013, Gillispie filed a civil suit (the "Civil Action") for violations of 42

U.S.C. § 1983 and Ohio common law, namely, malicious prosecution, infliction of emotional

distress, and spoliation of evidence, by General Motors personnel, among others, in the U.S.

District Court for the Southern District of Ohio (the "First Amended Complaint," ECF Doc.

# 12727-1), alleging that his conviction was "the result of violations of his constitutional rights

and the result of a conspiracy among police officers and individuals working at GM to

maliciously prosecute him."  (Mot. at 2.)  The First Amended Complaint names both New GM

and Old GM as defendants ("GM"), and alleges that New GM is "the successor in interest and

owner of substantially all of [Old GM's] assets and bears liability for any judgement entered

against [Old GM] as a result of this lawsuit."  (First Am. Compl. at 4.)  The First Amended

Complaint alleges that GM itself is possibly liable for the actions of its employees under the

doctrine of *respondeat superior*, and that GM acted under color of law and is liable under section

1983 because the violation of Gillispie's rights was caused by GM's "policies, practices,

customs, and/or decisions of the policymakers."[4]  (First Am. Compl. at 19.)

---

[4]        This decision, preventing Gillispie from pursuing claims against Old GM or New GM, has no effect on
Gillispie's causes of action against the remaining defendants in his lawsuit pending in the Ohio District Court.

### B.    The Motion

In the Motion, Gillispie claims he should be granted leave to pursue his Civil Action against New GM.  (Mot. at 5–7.)  Gillispie argues that his Civil Action could not have been brought as a matter of state law before Gillispie's conviction was called into question in 2011 and 2012, so his civil causes of action are post-petition claims, or "future claims."  (*Id.* at 8.)  According to Gillispie, due process would demand that this Court's Sale Order does not bar Gillispie from asserting his claim against New GM, which allegedly admitted to being the same entity as Old GM and which should thus bear Old GM's liabilities.  (*Id.* at 14.)

Alternatively, Gillispie claims that "should the Court . . . hold that New GM cannot be a defendant" in Gillispie's Civil Action, Gillispie "must, at a minimum, be entitled to pursue relief from Old GM's estate."  (*Id.* at 16.)  Gillispie argues that he never had a prior opportunity to assert his claims, and that should he be barred from asserting them against New GM, due process requires he be provided with the opportunity to do so against Old GM.  (*Id.*)  The Motion further contends that, in addition to due process, the Court should grant leave to Gillispie based on Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure.  (*Id.* at 17.)  Gillispie's incarceration during the sale and confirmation of the Debtors' Chapter 11 Cases allegedly demonstrates Gillispie's "excusable neglect" in failing to comply with the Bar Date and entitling him to file a post-bar-date proof of claim against Old GM.  (*Id.* at 17–19.)

### C.    The Oppositions

#### 1.    *New GM Objection*

New GM objects to Gillispie's Motion with regards to its liability for Gillispie's civil claims.  New GM first argues that the scope and limitations of New GM's responsibilities and liabilities defined in the Sale Order bar Gillispie's Civil Action against New GM.  (New GM Objection at 14.)  The New GM Objection contends that New GM never admitted that it was the

same company as Old GM, regardless of Old GM's having retained some liabilities and not

compensating others.  (*Id*. at 22–29.)  New GM claims that "[e]very cause of action Movant

asserts in his civil action is based on the conduct of Old GM employees that occurred almost two

decades before New GM came into existence."  (*Id*. at 14.)  Since the Sale Order provided that

New GM ought not to be liable for Old GM's conduct, except with respect to the Retained

Liabilities expressly retained by New GM, which do not comprise Gillispie's civil claims,

Gillispie's successor liability allegations violate the Sale Order and his Motion should be

rejected as against New GM.  (*Id*. at 14–16.)  New GM further argues that Gillispie's Civil

Action relates to pre-petition claims, regardless of when they accrued for nonbankruptcy law

purposes.  (*Id*. at 16.)  As holder of a contingent claim against Old GM, Gillispie was an

"unknown creditor" only entitled to constructive notice of the Sale.  (*Id*. at 21–22.)  Since

Gillispie did not file a timely proof of claim despite receiving adequate constructive notice, he is

bound by the Sale Order and is barred from asserting his claims against either Old GM or New

GM.  (*Id*.)

2.      *GUC Trust Response*

The GUC Trust argues that Gillispie did not have a cognizable "claim" under the

Bankruptcy Code until years after entry of the Sale Order.  (GUC Trust Response at 15.)  The

GUC Trust contends that Gillispie's civil causes of action did not arise before his criminal

conviction was vacated in 2012, and that accordingly, Gillispie's Civil Action against New GM

could not be barred by the Sale Order without violating his due process rights.  (*Id.* at 15–24.)

The GUC Trust further argues that if Gillispie were deemed to have had a cognizable claim

under the Bankruptcy Code prior to the entry of the Sale Order in July 2009, New GM would be

the only possible defendant for Gillispie's Civil Action.  (*Id.* at 24.)  The GUC Trust contends

that Gillispie was provided with adequate notice.  Accordingly, Gillispie's failure to file a proof

of claim bars his claims against both New GM and Old GM's estate alike. (*Id.* at 24–25.) The

GUC Trust also argues that Gillispie's conduct does not satisfy the "excusable neglect" standard

since, *inter alia*, "the doctrine of excusable neglect has no application if the decision of a party

with a pre-sale claim to stay out of bankruptcy proceeding was based on a legal error." (*Id.* at

25–29.) According to the GUC Trust, if Gillispie had a pre-sale claim, but was not provided

with adequate notice, due process requires that Gillispie be allowed to pursue his claims against

New GM regardless of the provisions of the Sale Order. (*Id.* at 29–30.)

## II.     <u>LEGAL STANDARD</u>

### A.     The Scope and Effect of the Sale Order with Regards to Successor Liability

Section 363(f) of the Bankruptcy Code authorizes the debtor in certain circumstances to

sell the estate's interest in property "free and clear of any interest in such property of an entity

other than the estate." 11 U.S.C. § 363(f). "The Bankruptcy Code does not define 'any interest,'

and in the course of applying section 363(f) to a wide variety of rights and obligations related to

estate property, courts have been unable to formulate a precise definition." *Precision Indus., Inc.

v. Qualitech Steel SBQ, LLC,* 327 F.3d 537, 545 (7th Cir. 2003) (citing *Folger Adam Security,

Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 258 (3d Cir.2000)).

"Interests in property," as used in section 363(f), include "claims" that arise from the

assets being sold. *In re Chrysler LLC,* 576 F.3d 108, 126 (2d Cir. 2009) (citing *In re Trans

World Airlines, Inc.*, 322 F.3d 283, 290 (3d Cir. 2003)), *granting cert. & vacating judgment,

Indiana State Police Pension Trust v. Chrysler LLC,* 558 U.S. 1087 (2009). Although § 363(f) is

not limited to *in rem* interests in property, it affords only *in rem* relief similar to 11 U.S.C. §

1141(c). *See Chrysler LLC,* 576 F.3d at 125–26. "By its terms, § 363(f) cleanses the transferred

assets of any attendant liabilities, and allows the buyer to acquire them without fear that an estate

9

creditor can enforce its claim against those assets." *Morgan Olson Indus., LLC v. Frederico (In re Grumman Olson Industries, Inc.)*, 445 B.R. 243, 249 (Bankr. S.D.N.Y. 2011).

In addition, § 363(f) has been interpreted to authorize the bankruptcy court to grant *in personam* relief, similar to the discharge under Bankruptcy Code § 1141(d), that exonerates the buyer from successor liability, including liability for tort claims. *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43, 57–59 (S.D.N.Y. 2010).

The Sale Order in this case expressly provides that, with the exception of certain limited liabilities expressly assumed by New GM (the "Assumed Liabilities") under the Amended and Restated Master Sale and Purchase Agreement (the "Sale Agreement," ECF Doc. # 2968-2), the assets acquired by New GM were transferred "free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever . . . including rights or claims based on any successor liability . . . ." (Sale Order § 7.)  Similarly, the Sale Order provides the following:

> [A]ll persons and entities . . . holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against or in [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing . . . are forever barred, estopped, and permanently enjoined . . . from asserting against [New GM] . . . such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.

(*Id*. § 8.)

Further, the Sale Order states that "[t]his Order (a) shall be effective as a determination that, as of the Closing, (i) no claims other than Assumed Liabilities, will be assertable against [New GM] . . . (ii) the Purchased Assets shall have been transferred to [New GM] free and clear

of all claims (other than Permitted Encumbrances) . . . ." (*Id.* § 9.)  The Sale Order also

provides:

> Except for the Assumed Liabilities expressly set forth in the [Sale
> Agreement] . . . [New GM] . . . shall have [no] liability for any claim that
> arose prior to the Closing Date . . . or otherwise is assertable against the
> Debtors or is related to the Purchased Assets prior to the Closing Date.
> [New GM] shall not be deemed . . . to: (i) be a legal successor, or
> otherwise be deemed a successor to the Debtors (other than with respect to
> any obligations arising under the Purchased Assets from and after the
> Closing); (ii) have, de facto or otherwise, merged with or into the Debtors;
> or (iii) be a mere continuation or substantial continuation of the Debtors or
> the enterprise of the Debtors.  Without limiting the foregoing, [New GM]
> shall not have any successor, transferee, derivative, or vicarious liabilities
> of any kind or character for any claims, including, but not limited to, under
> any theory of successor or transferee liability, de facto merger or
> continuity . . . whether known or unknown as of the Closing, now existing
> or hereafter arising, asserted, or unasserted, fixed or contingent, liquidated
> or unliquidated.

(*Id.* § 46.)

"Effective upon the Closing . . . all persons and entities are forever prohibited and

enjoined from commencing or continuing in any manner any action . . . against [New GM] . . .

with respect to any (i) claim against [Old GM] other than the Assumed Liabilities." (*Id.* § 47.)

The Sale Order further provides that New GM did not assume any liabilities "arising in any way

in connection with any agreements, acts, or failure to act, of any of [Old GM] or any of [Old

GM's] predecessors or affiliates, whether known or unknown, contingent or otherwise, whether

arising prior to or subsequent to the commencement of these chapter 11 cases . . . including but

not limited to, claims otherwise arising under doctrines of successor or transferee liability." (*Id.*

§ AA.)

The Sale Agreement expressly defines the liabilities retained by Old GM (the "Retained

Liabilities") and those assumed by New GM.  Assumed Liabilities of New GM do not include

any category of liabilities applicable to this case.  (Sale Agreement § 2.3(a).)  On the other hand,
Retained Liabilities expressly include "all Liabilities of third parties for Claims based upon
Contract, tort, or any other basis."  (Sale Agreement § 2.3(b)(xi).)

> **B.    Contingent and Future Claims Within the Meaning of the Bankruptcy Code**

Under section 101(5)(A) of the Bankruptcy Code, a claim is defined as a "right to
payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,
contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."
11 U.S.C. § 101(5)(A).  Congress selected the broadest possible definition to ensure that "all
legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with
in the bankruptcy case."  *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997,
1003 (2d Cir. 1991) (quoting *H.R.Rep*. No. 95-595 at 309 (1978), 1978 U.S.C.C.A.N. 5963,
6266).

The Second Circuit has adopted the "fair contemplation" test to determine whether a
potential future claim is a claim within the meaning of section 101(5).  *Grumman Olson*, 445
B.R. at 252 (quoting *Chateaugay*, 944 F.2d at 1004).  Under the test, a contingent obligation is a
"claim" if the occurrence of the contingency or future event that would trigger liability was
"within the actual or presumed contemplation of the parties at the time the original relationship
between the parties was created."  *Chateaugay*, 944 F.2d at 1004 (quoting *In re All Media
Props., Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980), *aff'd mem.,* 646 F.2d 193 (5th Cir. 1981))
(explaining that if the right to payment is contingent on future events, the claim must "result
from pre-petition conduct fairly giving rise to that contingent claim").  In *Grumman*, the District
Court, in affirming the decision of the Bankruptcy Court, ruled that the Second Circuit's "fair
contemplation" test was consistent with the well-known "Piper test," as articulated by the
Eleventh Circuit in *Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft*

*Corp.)*, 58 F.3d 1573(11th Cir. 1995). *In re Grumman Olson Industries, Inc.*, 467 B.R. 694, 705

(S.D.N.Y. 2012). The court in *Piper Aircraft* explained:

> [A]n individual has a § 101(5) claim against a debtor manufacturer if (i) events occurring before confirmation create a relationship, such as contact, exposure, impact, or privity, between the claimant and the debtor's product; and (ii) the basis for liability is the debtor's prepetition conduct in designing, manufacturing and selling the allegedly defective or dangerous product. The debtor's prepetition conduct gives rise to a claim to be administered in a case only if there is a relationship established before confirmation between an identifiable claimant or group of claimants and that prepetition conduct.

*Piper Aircraft*, 58 F.3d at 1577.

In this case, although Gillispie's claims are not product liability claims as was true in

*Piper Aircraft* or *Grumman*, his claims squarely fall within *Chateaugay*'s "fair contemplation"

test or *Piper*'s prepetition "relationship" test. Gillispie was employed by Old GM when the

conduct giving rise to his claims occurred in 1991; and he seeks to blame Old GM for the

conduct of its other employees based on *respondeat superior*.

In the Motion, Gillispie asserts that his causes of action did not accrue until after the Sale,

and that accordingly, such action was not a "claim" within the meaning of the Bankruptcy Code.

(Mot. at 10–14.) The Motion implicitly relies on the "accrued state law claim theory," as

notably adopted by the Third Circuit in *Frenville*, which states that there is no claim for

bankruptcy purposes until a claim has accrued under state law. *Avellino & Bienes v. M.

Frenville Co. (In re M. Frenville Co.),* 744 F.2d 332, 337 (3d Cir. 1984). This test announced in

*Frenville* has since been rejected by a majority of courts, including in *PiperAircraft*, as imposing

too narrow an interpretation on the term "claim." *Piper*, 58 F.3d at 1576 n.2. In *In re Johns-

Manville Corp.*, 57 B.R. 680, 690 (Bankr. S.D.N.Y. 1986), this Court previously refused to

follow the "accrued state law claim theory," explaining that it did so "because it ignores the

13

congressional intent to define 'claim' broadly." The Second Circuit also articulated reservations

about following *Frenville*'s rationale. *See In re Baldwin-United Corp. Litigation,* 765 F.2d 343,

348 n. 4 (2d Cir. 1985) (noting that "[w]e are not as certain as the District Court that, if we

reached the issue, we would follow *Frenville*"). Indeed, the Third Circuit later repudiated the

much-criticized *Frenville* accrued state law claim theory in *Jeld-Wen, Inc., v. Van Brunt (In re

Grossman's Inc.)*, 607 F.3d. 114 (3d Cir. 2010).

The New GM Objection points to the *Stone* case, in which factual background is

comparable to the facts in this case. (New GM Objection at 18.) There, the plaintiff was

arrested and charged with theft from Kmart prior to the commencement of Kmart's chapter 11

case. *Stone v. Kmart Corp.*, 2007 WL 1034959 (M.D. Ala. Mar. 30, 2007). After the bar date

for asserting claims, "the [theft] charge against plaintiff was *nolle prosequi*, and [the plaintiff]

subsequently filed [an] action in state court . . . claiming the proceedings instituted by Kmart

were done maliciously and without probable cause." *Id.* at *1. The court in *Stone* followed the

Eleventh Circuit precedent and rejected the "accrued state law claim test." The court explained:

> The accrual time for Plaintiff's malicious prosecution claim under
> Alabama law does not control this action. The relevant inquiry is whether
> a claim has accrued under bankruptcy law based upon the statutory
> definition of a claim. The court finds that Plaintiff's claim accrued for
> purposes of bankruptcy law prior to the Bar Date. Applying the broad
> definition of claim to the facts of this case, Plaintiff, at the time of her
> arrest, had an arguably remote claim for malicious prosecution against
> Kmart. The scope of the term claim, as determined through the legislative
> history of the Bankruptcy Code, is more than broad enough to
> accommodate a malicious prosecution action, although the action has not
> accrued for purposes of state law. . . . The claim is contingent upon
> termination of the criminal case in favor of Plaintiff, which at least
> arguably would happen at some point during her criminal investigation or
> trial. That makes the claim at least "contingent" or "unmatured" in the
> context of the Code.

14

*Id.* at *3.

## C. Adequacy of Notice

It is long-held that known creditors must be afforded notice "reasonably calculated, under all the circumstances to apprise" them of the pendency of the Bar Date. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). If a debtor that files for chapter 11 bankruptcy protection does not give "reasonable notice" to a creditor of the bankruptcy proceeding and of the applicable bar date, the creditor's proof of claim cannot be constitutionally discharged. *In re U.S.H. Corp. of N.Y.*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998). For known creditors, adequate notice requires actual written notice of the bankruptcy filing and of the bar date. *See In re Drexel Burnham Lambert Grp., Inc.,* 151 B.R. 674, 680 (Bankr. S.D.N.Y. 1993). Notice of the debtor's bankruptcy proceeding is not enough to put creditors on notice of the claim bar date. *City of New York v. N.Y., N.H. & H.R. Co.,* 344 U.S. 293, 297 (1953) ("Nor can the bar order against [the creditor] be sustained because of the [creditor's] knowledge that reorganization of the [debtor] was taking place in the court. . . . [E]ven creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred.").

What type of notice is reasonable or adequate, however, depends on whether the creditor is "known" or "unknown" to the debtor. *U.S.H. Corp. of N.Y.,* 223 B.R. at 658. If a creditor is "known" to a debtor, actual notice of a debtor's bankruptcy filing and bar date must be given to the creditor in order to achieve a legally effective discharge of the creditor's claim. *See Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3d Cir. 1995) (citing *City of New York*, 344 U.S. at 296). If the creditor is "unknown" to the debtor, however, constructive notice is generally sufficient. *Id.* (citing *In re Thomson McKinnon Sec., Inc.,* 130 B.R. 717, 719–720 (Bankr.

15

S.D.N.Y. 1991)).  Constructive notice can be satisfied through publication notice since "in the

case of persons missing or unknown, employment of an indirect and even a probably futile

means of notification is all that the situation permits and creates no constitutional bar to a final

decree foreclosing their rights."  *Mullane,* 339 U.S. at 317.

The Supreme Court has explained that a "known" creditor includes both a claimant

whose identity is actually known to the debtor or a claimant whose identity is "reasonably

ascertainable" by the debtor.  *Chemetron,* 72 F.3d at 346 (explaining that claimants must be

reasonably ascertainable, not reasonably foreseeable).  The Second Circuit recently emphasized

the notice requirement where the asserted claims were contingent.  *Elliott v. General Motors

LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 160 (2d Cir. 2016) ("But contingent claims

are still claims . . . and claimants are entitled to adequate notice if the debtor knows of the

claims.").  An "unknown" creditor is a creditor whose identity or claim is not "reasonably

ascertainable" or is merely "conceivable, conjectural or speculative."  *Thomson*, 130 B.R. at 720

(citing *Charter Crude Oil Co. v. Petroleos Mexicanos (In re the Charter Co.)*, 125 B.R. 650, 655

(M.D. Fla. 1991); *see Mullane,* 339 U.S. at 317 (noting that it was reasonable to dispense with

more certain notice to claimants "whose interests are either conjectural or future or, although

they could be discovered upon investigation, do not in due course of business come to the

knowledge [of the debtor in possession]").

A creditor is "reasonably ascertainable" if the debtor can uncover the identity of that

creditor through "reasonably diligent efforts."  *Mennonite Bd. of Missions v. Adams,* 462 U.S.

791, 798 n.4 (1983).  Reasonable diligence does not require "impracticable and extended

searches . . . in the name of due process."  *Mullane,* 339 U.S. at 317–318.  A debtor does not

have a "duty to search out each conceivable or possible creditor and urge that person or entity to

make a claim against it." *In re Brooks Fashion Stores, Inc.,* 124 B.R. 436, 445 (Bankr. S.D.N.Y.

1991) (quoting *Charter Crude Oil Co.,* 125 B.R. at 654). "[W]hat is required is not a vast, open-

ended investigation." *Chemetron,* 72 F.3d at 346. Instead, "[t]he requisite search . . . focuses on

the debtor's own books and records. Efforts beyond a careful examination of these documents

are generally not required. Only those claimants who are identifiable through a diligent search

are 'reasonably ascertainable' and hence 'known' creditors." *Id.* at 347; *see also In re Best*

*Prods. Co.,* 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992) (citing *In re Waterman Steamship Corp.,*

59 B.R. 724, 727 (Bankr. S.D.N.Y. 1986)) ("Whereas a debtor must review its own books and

records to ascertain the identity of creditors, a debtor is not required to search elsewhere for

those who might have been injured."). This Court, in *Drexel,* further explained as follows:

> Reasonable diligence in ferreting out known creditors will, of course, vary
> in different contexts and may depend on the nature of the property interest
> held by the debtor. Applying *Mullane's* "reasonable under the
> circumstances" standard, due process requires a reasonable search for
> contingent or unmatured claims so that ascertainable creditors can receive
> adequate notice of the bar date. What is reasonable depends on the
> particular facts of each case. A debtor need not be omnipotent or
> clairvoyant. A debtor is obligated, however, to undertake more than a
> cursory review of its records and files to ascertain its known creditors.
>
> Known creditors are defined as creditors that a debtor knew of, or should
> have known of, when serving notice of the bar date. Among known
> creditors may be parties who have made a demand for payment against a
> debtor in one form or another before the compilation of a debtor's
> schedules. Typically, a known creditor may have engaged in some
> communication with a debtor concerning the existence of the creditor's
> claim. This communication by itself does not necessarily make the
> creditor known. Direct knowledge based on a demand for payment is not,
> however, required for a claim to be considered "known." A known claim
> arises from facts that would alert the reasonable debtor to the possibility
> that a claim might reasonably be filed against it.

*Drexel*, 151 B.R. at 680–81.

Similarly, in *In re XO Commc'n, Inc.*, 301 B.R. 782, 794–95 (Bankr. S.D.N.Y. 2003),

this Court found that a number of claimants were "unknown" creditors to whom the debtor was

only required to give constructive notice of the claims bar date where such claims were too

remote or conjectural. *Id.* ("[T]he prior relationship does not by itself make [creditor] a 'known'

creditor or [creditor's] Preference Claim 'reasonably ascertainable' by the Debtor . . . . [A]

preference claim is the type of liability that is created by the Bankruptcy Code and not the type

an entity 'generally' tracks on its books and records. Such a claim is merely "conceivable,

conjectural or speculative," that is, the claim is 'dependent' on whether a claimant will 'opt' to

pursue the claim."); *see also In re Enron Corp.*, 2006 WL 898031 (Bankr. S.D.N.Y. Mar. 29,

2006) (ruling that the claim, stemming from the Federal Energy Regulatory Commission (the

"FERC") proceedings, was "conceivable, conjectural or speculative" at the time the Debtors sent

the bar date notice to creditors, making the claimant an unknown creditor, since at that time "the

FERC was simply investigating the alleged price manipulation in the western market, [and]

FERC did not release any documents that indicated [the claimant] was a potential claimant in the

Debtor's bankruptcy . . . . In addition, there is nothing in the record showing that an

investigation by the Debtors of their business records would have demonstrated [the claimant]

held a claim. Although the FERC investigation . . . indicated that [the claimant] may hold a

potential claim, it does not establish that the Debtors could readily ascertain the existence of the

claim at the time they sent the bar date notice"); *In re Union Hosp. Ass'n of Bronx*, 226 B.R. 134,

139 (Bankr. S.D.N.Y. 1998) (holding that claimants seeking indemnity and contribution from

chapter 11 debtor, whose claims were dependent upon the outcome of the suit by the plaintiffs,

were not "known creditors," as their claims "were, at best, conjectural or future"); *U.S.H. Corp.

of New York*, 223 B.R. (finding that purchasers of townhomes that chapter 11 debtors had

constructed in alleged nonconformance with advisory guidelines were not "known creditors" of

debtors).

### D. Failure to File Proof of Claim and Excusable Neglect

In cases where creditors have failed to file claims before the bar date despite having

adequate notice, "Bankruptcy Rule 9006(b)(1) gives the court the discretion to enlarge the time

to file claims 'where the failure to act was the result of excusable neglect.'" *In re Lehman Bros.*

*Holdings Inc.,* 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (quoting FED. R. BANKR. P.

9006(b)(1)). "The Supreme Court has interpreted 'excusable neglect' to be a flexible standard—

one that can include 'inadvertence, mistake, or carelessness, as well as by intervening

circumstances beyond the party's control.'" *Id.* (quoting *Pioneer Inv. Services Co. v. Brunswick*

*Associates Ltd*, 507 U.S. 380, 395 (1993)). "However, 'the determination is at bottom an

equitable one' that must take 'account of all relevant circumstances surrounding the party's

omission.'" *Id.* The *Pioneer* Court established four factors to assist bankruptcy courts in

evaluating excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay

and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it

was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

*Pioneer,* 507 U.S. at 395. "The Second Circuit strictly observes bar dates and has adopted what

has been characterized as a 'hard line' in applying the *Pioneer* test," meaning that this Court

should focus its analysis "primarily on the reason for the delay, and specifically whether the

delay was in the reasonable control of the movant." *In re Lehman Bros.,* 433 B.R. at 119–20.

Courts have held that a claimant's neglect was not excusable where its failure to comply

with the rule was the result of a mistake of law. *Canfield v. Van Atta Buick/GMC Truck Inc.*,

127 F.3d 248, 251 (2d Cir. 1997) (citing *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931–932 (9th

Cir. 1994) ("[T]he general rule [is] that a mistake of law does not constitute excusable neglect.");

*see also In re DPH Holdings Corp.*, 434 B.R. 77, 83 (S.D.N.Y. 2010) ("*Pioneer* states that

'[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually

constitute excusable neglect, it is clear that excusable neglect . . . is a somewhat elastic concept.'

However, the Second Circuit has taken a hard line in finding excusable neglect.  Where a court

rule is entirely clear, . . . a party claiming excusable neglect will, in the ordinary course, lose

under the *Pioneer* test.") (internal footnotes omitted).

## III.   DISCUSSION

Gillispie may not assert his claims against New GM as his claims were not assumed

liabilities and successor liability is barred by the Sale Order.  Leave to file late claims against

Old GM is denied, as Gillispie has not established excusable neglect.

### A.   Gillispie Does Not Have Claims Against New GM

Gillispie's Motion with respect to his request to be granted leave to pursue the Civil

Action against New GM is denied.  The Movant's allegations that "New GM has admitted to

being the same corporation as [Old GM]" does not persuade the Court and do not bear on the

analysis, wherein the Sale Order and the Sale Agreement shield New GM from claims related to

Old GM's prepetition conduct.  Gillispie's Civil Action in the Southern District of Ohio is based

on violations of 42 U.S.C. § 1983 and on Ohio common law, namely, malicious prosecution,

infliction of emotional distress, and spoliation of evidence, in connection to Gillispie's

conviction in 1991.  A cause of action based on 42 U.S.C. § 1983 "creates 'a species of tort

liability.'"  *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 305 (1986).  It is

undisputed that malicious prosecution (*see, e.g.,* RESTATEMENT (SECOND) OF TORTS § 653

(1979)), the infliction of emotional distress (*see, e.g.,* RESTATEMENT (SECOND) OF TORTS § 46

(1979)), and the spoliation of evidence charges (*see, e.g.,* RESTATEMENT (SECOND) OF TORTS §

870 (1979)) are claims asserted under tort law.  Under the Sale Agreement, which defines the

scope of the *in personam* relief granted to New GM in relation to the Sale, Retained Liabilities of

Old GM include "all Liabilities of third parties for Claims based upon Contract, tort, or any other

bases."  (Sale Agreement § 2.3(b)(xi)).  Gillispie's tort causes of action in the Ohio state court

must therefore fall within the scope of Retained Liabilities.  Further, the Sale Order expressly

and clearly shields New GM from "any action . . .  with respect to any (i) claim against [Old

GM] other than the Assumed Liabilities," and all the more so against Retained Liabilities,

expressly retained by Old GM (Sale Order § 47) (*see also* Sale Order §§ 8, 9 ,46, AA).  It must

follow that that Gillispie's tort Civil Action cannot be pursued against New GM.

Gillispie argues that due process should not bar him from asserting his claim against New

GM.  However, there is nothing in the record to support a contention that Gillispie was a known

creditor of Old GM (or that Old GM concealed a known or reasonably expected liability).  In

June 2009, when Old GM filed for bankruptcy protection, Old GM had no basis to suspect that

Gillispie had any claim against Old GM relating to his February 1991 Ohio criminal conviction.

Gillispie filed his civil action asserting claims against Old GM and New GM based on wrongful

conviction in December 2013.  As an unknown creditor, notice by publication was

constitutionally sufficient, and Old GM did publish notice of the hearing of the Sale and of the

Claim Bar Date in a number of global, national, and local newspapers.  Gillispie thus has no

basis to argue that as a result of a due process violation because of inadequate notice, he is not

bound by the free and clear provisions of the Sale Order.

**B.    Gillispie Does Not Show Sufficient Cause to be Granted Leave to File a Post-Bar-Date, Late Proof of Claim in the Old GM Bankruptcy**

Gillispie's Motion with respect to his request to be granted leave to file a post-bar-date proof of claim in the Old GM bankruptcy is also denied.

*1.    Gillispie's Civil Claims Are Contingent Claims Within the Meaning of § 101(5)(A) of the Bankruptcy Code*

Gillispie's Civil Action is based on violations of 42 U.S.C. § 1983 and of Ohio common law arising out of the alleged misconduct of Old GM employees.  All of the events that formed the basis for his Civil Action occurred during or before calendar year 1991, and were related to testimony given by Old GM employees in connection with Gillispie's arrest and conviction.  The fact that Gillispie was not able as a matter of nonbankruptcy law to commence an action against Old GM and others before his conviction was vacated is irrelevant to the analysis.  As discussed, the "accrued state law claim theory" does not apply to the determination whether a creditor has a "claim" under section 101(5)(A) of the Bankruptcy Code.  Rather, for Gillispie's cause of action to be a claim under the Bankruptcy Code, this Court need only find that Gillispie's civil claims under 42 U.S.C. § 1983 and Ohio common law result from Old GM's prepetition conduct "fairly giving rise" to Gillispie's claim.  *See Chateaugay*, 944 F.2d at 1005.  The occurrence of the contingency event that would trigger Old GM's potential liability, namely the vacation of the conviction,[5] was within the actual or presumed contemplation of Gillispie at the time he was convicted allegedly as a result of the conduct of GM employees.  Gillispie surely knew (and

---

[5]    To bring a 42 U.S.C. § 1983 action alleging that the plaintiff's conviction is unconstitutional or otherwise invalid, the plaintiff's conviction must have been called into question or otherwise undermined.  *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) ( "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .") (footnote and citation omitted).

believed) that his conviction was not warranted based on Old GM's employees' testimony, and

as a result; Gillispie "has steadfastly maintained his innocence and labored tirelessly for over 20

years to clear his name." (Mot. at 2.)  Gillispie initiated proceedings to vacate or reverse his

conviction as soon as he was convicted.  For example, as soon as February 26, 1991—two weeks

after his conviction—Gillispie filed a motion in state court seeking a new trial.  *See Gillispie v.*

*Timmerman-Cooper*, 835 F. Supp. 2d at 487.

As previously mentioned, the court's reasoning in *Stone v. Kmart Corp.*, 2007 WL

1034959, is instructive.  In that case, the malicious prosecution event that gave rise to the

plaintiff's civil case occurred pre-petition, but the theft charge against the plaintiff was declared

*nolle prosequi* only after the bar date for asserting claims.  The court held that plaintiff's

malicious prosecution claim was "contingent upon termination of the criminal case in favor of

Plaintiff, which at least arguably would happen at some point during her criminal investigation

or trial.  That makes the claim at least 'contingent' or 'unmatured' in the context of the Code."

*Id.* at *3.  Similarly, in this case, the alleged false testimony by Old GM's employees occurred

pre-petition and Gillispie's conviction was vacated after the bar date for asserting claims.

Gillispie's claims were contingent upon the successful challenge of his conviction, as well as

disputed and unliquidated.

It follows that Gillispie's civil claims are contingent claims within the meaning of

section 101(5)(A) of the Bankruptcy Code.  To preserve the claims in this bankruptcy case,

Gillispie had to file a proof of claim before the Bar Date.

> 2.    *Gillispie was an Unknown Creditor of Old GM and He Received Adequate*
>        *Notice of the Bankruptcy Filing and the Claim Bar Date*

Gillispie's Civil Action relies on facts that occurred at the earliest eighteen years before

the start of Old GM's bankruptcy proceeding.  Gillispie's first effort to assert a claim against Old

GM occurred in December 2013, when he filed his action in the Ohio federal district court, more

than fourteen years after the Claim Bar Date.  Nowhere in his Motion does Gillispie claim that

the Old GM was aware of his attempt to vacate his conviction in state or federal courts at any

time before he filed his § 1983 Civil Action in December 2013.  Nor has Gillispie offered any

evidence that Old GM knew that Gillispie contended that Old GM was liable as a result of any

wrongful conviction.  For Old GM to "uncover the identity" of Gillispie's potential claims,

which arose eighteen years earlier, would therefore have required more than "reasonably diligent

efforts."  *See Mennonite*, 462 U.S. at 804.  Old GM's search needed only focus on its own books

and records, *Chemetron*, 72 F.3d at 347, and Old GM's schedules of assets and liabilities filed on

September 15, 2009, and amended on October 4, 2009.  Those schedules did not list a claim by

Gillispie.  (ECF Doc. ## 4061–4077, 4161).  Gillispie has provided no evidence that a

reasonable search of Old GM's books and records would have brought his claim to Old GM's

attention.  A contingent section 1983 claim based on alleged misconduct by other employees

eighteen years before is not "the type . . . an entity 'generally' tracks on its books and records."

*See XO Communications*, 301 B.R. at 794–95.  More generally, the remoteness of Gillispie's

prepetition contingent claim is the type of claim this Court has held to be unknown.  *See Union

Hosp. 226 B.R.* at 134 (holding that indemnity and contribution claims against debtor were

contingent to medical malpractice lawsuit and the plaintiffs were therefore unknown); *Enron*,

2006 WL 898031 (ruling that a creditor whose claim was contingent on the FERC's successful

investigations against the debtor was unknown).

The Court concludes that Gillispie was an unknown creditor.  It follows that Old GM was

only required to provide Gillispie with constructive notice of the bankruptcy filing and Claim

Bar Date though publication.  *See Mullane*, 339 at 317.  Pursuant to this Court's order dated June

2, 2009, "all unknown creditors and parties … [were provided] with proper notice of the
proposed sale of the Purchased Assets, the Sale Procedures, the 363 Transaction, and the Sale
Hearing" through publication in a number of global, national, and local newspapers.  (*See* ECF
Doc. # 274 § 9(e).)  Old GM also provided constructive notice to Gillispie of the Claim Bar
Order and the Claim Bar Date through publication in global, national, and local newspapers.
(*See* Bar Date Order at 7.)  Gillispie therefore received adequate notice of Old GM's bankruptcy
proceeding and of the Claim Bar Date, regardless whether he had actual notice thereof.

It follows that Gillispie's relief against Old GM can only be achieved through a showing
that his "excusable neglect" justified his failure to file a timely proof of claim.

### 3.   *Gillispie's Failure to File a Proof of Claim is Not Due to Excusable Neglect*

Gillispie's failure to file a timely proof of claim despite having received adequate notice
can only be excused under Bankruptcy Rule 9006(b)(1) if Gillispie's failure to act is the result of
"excusable neglect," as interpreted by the *Pioneer* Court.  The Motion argues that "[f]irst, and
most paramount is the fact that Mr. Gillispie . . . could not have brought his civil rights case"
before the Claim Bar Date because his state law claims had not accrued.  (Mot. at 17).  Gillispie
argues that he did not file a proof of claim in the bankruptcy court because he could not file a
lawsuit *as a matter of nonbankruptcy law* before his conviction was called into question in 2011
and 2012.  In arguing that his failure to file a proof of claim was the result of excusable neglect,
*Gillispie relies on a mistake of law*.  Gillispie's reasoning is based on the "accrued state law
claim test," rejected not only by courts in this Circuit and elsewhere, but even in the Third
Circuit that initially adopted that test in the now-discredited *Frenville* opinion.  However, "the
general rule [is] that a mistake of law does not constitute excusable neglect."  S*ee Canfield*, 127
F.3d at 251.  Therefore, Gillispie's failure to file a timely proof of claim cannot be excused under

Bankruptcy Rule 9006(b)(1).  It follows that Gillispie is barred from asserting any of his civil

claims against Old GM.

## IV.    CONCLUSION

For the reasons discussed above, the Motion is **DENIED.**

**IT IS SO ORDERED.**

Dated:    October 18, 2017
          New York, New York


_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge