

**DEBORAH NEWMAN**
+1 212.872.7481/fax: +1 212.872.1002
djnewman@akingump.com

November 13, 2017

VIA ELECTRONIC COURT FILING AND E-MAIL

The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

      Re:   *In re Motors Liquidation Company*, Case No. 09-50026 (MG)

Dear Judge Glenn:

We represent certain unaffiliated holders (the "**Participating Unitholders**") of approximately 65 percent of the beneficial units of the Motors Liquidation Company GUC Trust (the "**GUC Trust**").  Pursuant to the Court's directive at the teleconference held before it on November 7, 2017, we write regarding the request of the Wilmington Trust Company, as trustee of and administrator for the GUC Trust ("**Wilmington Trust**"), to disclose four documents (each, a "**Document**," and collectively, the "**Four Documents**") that are subject to the common interest privilege applicable to communications between counsel for Wilmington Trust and counsel for the Participating Unitholders.[1]  Wilmington Trust's request relates to discovery regarding the Motion to Enforce the Settlement Agreement by and among the Signatory Plaintiffs and the GUC Trust [ECF No. 14092] (the "**Motion to Enforce**").

      1.    **The Four Documents Are Subject to a Common Interest Privilege**

Since the specter of potential claims against the GUC Trust as a result of recalls issued by General Motors LLC ("**New GM**") first arose in 2014, the Participating Unitholders have worked hand-in-glove with Wilmington Trust in defending against, and attempting to resolve, any such claims.  On July 24, 2014, in order to ensure that their communications in this regard were protected to the fullest extent permitted by law, the Participating Unitholders and Wilmington Trust entered into a common interest agreement (the "**Common Interest Agreement**") that memorialized their common legal interests, and provided, among other things,

---

[1] Although Wilmington Trust originally sought the Court's guidance regarding six documents subject to the common interest privilege, it has withdrawn its request with respect to two of those documents.



November 13, 2017
Page 2

that (i) their outside counsel may share privileged communications and materials without waiving any privileges, and (ii) the parties may not unilaterally waive the privilege that apply to common interest materials, or disclose such materials, even if the common interest terminates and the parties become adverse.[2]

It is clear that communications between the Participating Unitholders and Wilmington Trust relating to actual or potential claims against the GUC Trust would be subject to the Common Interest Privilege, even if the GUC Trust and the Participating Unitholders had not memorialized the privilege in the Common Interest Agreement. The common interest doctrine is "an exception to the general rule that voluntary disclosure of confidential, privileged material to a third-party waives any applicable privilege." *Velo Holdings, Inc. v. Paymentech, LLC (In re Velo Holdings Inc.)*, 473 B.R. 509, 514 (Bankr. S.D.N.Y. 2012) (Glenn, J.) (internal citations omitted). "The rationale for the doctrine is that it 'permits persons who have common interests to coordinate their positions without destroying the privileged status of their communications with their lawyers.'" *Id.* (quoting Restatement (Third) of the Law Governing Lawyers § 76 cmt. b) (Am. Law Inst. 2000) (the "**Restatement**"). As parties with a common interest in safeguarding a trust's corpus, trustees and beneficiaries of a trust that is the subject of a legal challenge present a paradigmatic example of parties whose communications are entitled to protection under the doctrine. *See, e.g., ACE Sec. Corp. v. DB Structured Prods., Inc.*, 40 N.Y.S.3d 723, 737 (Sup. Ct. 2016) (denying motion to compel communications exchanged between trustee and beneficiary certificate-holders who coordinated a legal strategy regarding the enforcement of the trust's rights); *US Bank N.A. v. U.S. Timberlands Klamath Falls, LLC*, No. CIV.A. 112-N, 2005 WL 5775760 , at *2 (Del. Ch. June 2, 2005) (denying a motion to compel documents exchanged between an indenture trustee and noteholders based on a common interest privilege); *see also In re Velo Holdings Inc.*, 473 B.R. at 517-18 (sustaining objections to discovery requests based on a common interest privilege where the debtor and the agent to the first lien lenders shared communications to formulate a common legal strategy pursuant to an unwritten common interest arrangement).

Nevertheless, in its inexplicable zeal to defeat the Motion to Enforce so that it can enter into an agreement with New GM (the "**Forbearance Agreement**") that is far less favorable for the GUC Trust, Wilmington Trust is now seeking the Court's authority to disclose the Four Documents, all of which fall squarely within the scope of the common interest privilege. The Four Documents all relate to the settlement that is the subject of the Motion to Enforce (the "**Plaintiff Settlement**"), and all predate the GUC Trust's sudden disavowal of the Plaintiff Settlement on

---

[2] A copy of the Common Interest Agreement was provided to the Court on November 10, 2017.



November 13, 2017
Page 3

August 16, 2017.  One of the Four Documents is authored by counsel to the Participating Unitholders, Akin Gump Strauss Hauer & Feld LLP (the "**Akin Gump Document**"), and the remaining three are authored by counsel to Wilmington Trust, Gibson Dunn & Crutcher, LLP (the "**Gibson Dunn Documents**").

The Participating Unitholders do not agree that the Four Documents support Wilmington Trust's objection to the Motion to Enforce, and have no objection to Wilmington Trust's disclosure of these documents to the extent such disclosure does not result in a subject matter waiver of other documents subject to the parties' common interest privilege.  To the extent the Court rules that disclosure of the Four Documents would result in such a subject matter waiver, however, such disclosure could result in material prejudice to the GUC Trust in this or other proceedings.[3]  The Participating Unitholders respectfully submit that Wilmington Trust should not effect such a waiver under these circumstances, especially given that it is opposed by more than 65 percent of the beneficiaries to whom Wilmington Trust owes its fiduciary duties.

> **2.    Wilmington Trust Cannot Unilaterally Waive the Common Interest Privilege That Applies to the Akin Gump Document**

Wilmington Trust cannot unilaterally waive the common interest privilege that applies to the Akin Gump Document.  *See* Restatement § 76(1) cmt. g; Common Interest Agreement § 3; *In re Teleglobe* 493 F.3d 345, 363 (3d Cir. 2007) ("a client may unilaterally waive the privilege as to its own communications with a joint attorney, so long as those communications concern only the waiving client; it may not, however, unilaterally waive the privilege as to any of the other joint clients' communications or as to any of its communications that relate to other joint clients"); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 263 F.R.D. 142, 146 (D. Del. 2009) (same).  Additionally, the Restatement provides that parties to a common interest privilege may agree by contract that they may not use common interest materials against one another in subsequent adverse proceedings.  *See* Restatement § 76(2) cmt. f.  The Common Interest Agreement here so provides, and precludes Wilmington Trust from disclosing the Akin Gump Document without the Participating Unitholders' consent.  Common Interest Agreement § 3(ii).  The Participating Unitholders will not provide such consent, unless they are certain that disclosure of the Akin Gump Document will not result in the waiver of additional privileged documents.

---

[3] Pursuant to the Pre-Trial Stipulation and Scheduling Order entered by the Court [ECF No. 14130], the issue of whether the Plaintiff Settlement may be approved under Rule 9019 of the Federal Rules of Bankruptcy Procedure, and the Participating Unitholders' anticipated motion to remove Wilmington Trust as the administrator for and trustee of the GUC Trust (the "**Motion to Remove**"), have been deferred to a later date.



November 13, 2017
Page 4

Additionally, Wilmington Trust would likely be barred from using the Akin Gump Document in connection with the Motion to Enforce even in the absence of this provision in the Common Interest Agreement.  While it is true that certain cases suggest that parties to a common interest agreement may use communications exchanged pursuant to the agreement against one another in subsequent litigation in which they become adverse, these cases acknowledge that the communications remain privileged vis-à-vis third parties.  *Fogel v. Zell (In re Madison Mgmt. Grp., Inc.)*, 212 B.R. 894, 898 (Bankr. N.D. Ill. 1997) ("It is this Court's opinion that the joint defense privilege would be stripped of its purpose and effectiveness if one party could unilaterally waive the privilege in favor of a third party, even if the original defendants have become adverse."); *Static Control Components, Inc. v. Lexmark Int'l., Inc.*, 250 F.R.D. 575, 579 (D. Colo. 2007) ("Even if there is adversity between some of the parties to the common interest agreement, they still may invoke the joint defense privilege to protect communications from disclosure to third parties[.]"); *In re Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974*, 406 F. Supp. 381, 386 (S.D.N.Y. 1975) (holding that although materials otherwise covered by a common interest privilege may be used when the parties are subsequently adverse, "in relation to the rest of the world, the attorney-client communications issuing from such a joint conference are invested with an absolute secrecy.").  Thus, even if these cases applied here (which they do not, given Section 3(ii) of the Common Interest Agreement), the only way that Wilmington Trust can disclose the Akin Gump Document without the Participating Unitholders' consent is if Wilmington Trust can ensure that the document maintains its privileged nature with respect to all other parties, including the other parties to the Motion to Enforce.[4]

---

[4] The Participating Unitholders note, however, that such a restriction would not apply to the Motion to Remove, which would involve only Wilmington Trust and the Participating Unitholders as parties.  Indeed, the Participating Unitholders have notified Wilmington Trust that in connection with the Motion to Remove, the Participating Unitholders intend to invoke the fiduciary exception to the attorney client privilege and work product protection to seek Wilmington Trust's communications with its advisors, and its advisors' work product, regarding Wilmington Trust's decision to disavow the Plaintiff Settlement and enter into the Forbearance Agreement.  *See Riggs Nat'l Bank of Wash., D.C. v. Zimmer*, 355 A.2d 709, 712 (Del. Ch. 1976) (granting trust beneficiaries' motion to compel legal memorandum prepared for trustee based on the fiduciary exception to the attorney-client privilege and work-product doctrine because the beneficiaries were the "real clients" of the advice provided to the trustee); *see also Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291, 322 (S.D.N.Y. 1991) (granting motion to compel documents from the trustee of an employee stock ownership program that were furnished by outside counsel for the trustee because the documents related to the trust's potential liability arising from a government investigation, and were therefore intended to assist in the management of the trust).  Wilmington Trust has advised the Participating Unitholders that it does not believe that the fiduciary exception applies here.  The Participating Unitholders expect that this dispute will be the subject of motion practice in connection with the Motion to Remove.



November 13, 2017
Page 5

3.  **To the Extent that Wilmington Trust's Disclosure of the Gibson Dunn Documents Would Result in a Subject Matter Waiver, Wilmington Trust Should Not Disclose the Documents**

The Gibson Dunn Documents are also protected by the common interest privilege. Because these documents do not contain any communications by or work product of Akin Gump, however, Wilmington Trust may unilaterally waive the common interest privilege with respect to these documents. *See* Restatement § 76(1). As noted above, however, such disclosure would not advance Wilmington Trust's stated goal of defeating the Motion to Enforce. Additionally, if the Court finds that the disclosure of these documents would result in a subject matter waiver of other privileged documents,[5] the waiver could result in substantial prejudice to the GUC Trust and its beneficiaries. In the event that Wilmington Trust chooses to disclose the Gibson Dunn Documents notwithstanding a ruling that such disclosure will result in a subject matter waiver, the Participating Unitholders reserve all of their rights in connection with such a reckless decision by their purported fiduciary.

Respectfully Submitted,

/s/ Deborah J. Newman

Deborah J. Newman

---

[5] Any such waiver could not apply to documents authored by Akin Gump, given that the Participating Unitholders are not waiving the privilege applicable to any such communications.