# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

November 13, 2017

<u>VIA ECF & E-MAIL</u>

The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

Re:     <u>In re Motors Liquidation Company</u>, Case No. 09-50026 (MG)

Dear Judge Glenn:

Pending before Your Honor is a motion requesting an order declaring that negotiations last summer between counsel for the GUC Trust and counsel for a variety of interests ripened into a binding contractual obligation. While there remain some modest factual disputes, the motion largely presents a narrow issue on largely undisputed facts.

The written draft that the movants contend is the contract[1] contains Section 3.1, the first sentence of which states as follows:

> **3.1    Settlement Effective Date.**   This Agreement shall become effective and binding on the Parties on the date on which this Agreement is fully executed by each of the Parties.

There is no dispute that no intended signatory to the written contract ever signed it. Thus, the principal question for the Court is whether the contract became "binding" in light of the express terms of Section 3.1.[2]

---

[1]  *See* Exhibit H to the Declaration of Edward Weisfelner dated September 11, 2017 ("Proposed Settlement Agreement" or "Exhibit H"), at page 15.

[2]  The absence of signatures means that the contract never became "effective" as is evidenced by the fact that the "contract" proffered by the movants has a blank on page one where the effective date was to go.

The absence of an effective date renders other provisions of the alleged contract meaningless and unenforceable. For example, Section 3.2(B) of the alleged contract gives the GUC Trust a right to terminate if certain events do not occur within 30 days of the effective date. *See* Exhibit H, at page 15.

**GIBSON DUNN**

The Honorable Martin Glenn
November 13, 2017
Page 2

The movants contend that a binding contract arose as early as July 28 despite lack of signatures. The GUC Trust respectfully suggests that Section 3.1 means what it says.[3]

The evidence at trial will show that by mid-August, the counsel who were to become the signatories to the contract had largely reached consensus of the wording and substance of the documents, and, on August 14, sent near-final drafts of the document to counsel for New GM. The plan was to discuss the unsigned draft with Your Honor on August 17. The evidence at trial will show that counsel for the GUC Trust wanted to gauge the Court's reaction to the draft terms to assess whether those terms needed to be changed.

It is in that context that the GUC Trust wishes to use the four documents at issue on this application (the "Proposed Exhibits").[4]

I. **The GUC Trust Is Entitled to Introduce the Proposed Exhibits at Trial.**

The purpose of the common-interest privilege "is to encourage interparty communications such that the parties receive effective legal representation as well as to facilitate a just determination of the case." *In re Megan-Racine Assoc., Inc.*, 189 B.R. 562, 571 (Bankr. N.D.N.Y. 1995) (citing *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979)). "As there is no independent statutory provision that recognizes the joint-defense privilege, it is axiomatic that an interpretation of the joint-defense privilege conform with the purposes of its underlying privilege whenever possible." *Id.*[5]

The underlying privilege here is the attorney-client privilege, which "fosters the open dialogue between lawyer and client that is deemed essential to effective representation. It exists to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27

---

[3] The initial version of Section 3.1 appears in the draft contract on June 9, 2017, in a set of changes proposed by counsel for the GUC Trust. The relevant language of Section 3.1 remained the same in every draft starting on June 9 until August 16.

[4] Counsel for the Participating Unitholders reviewed and commented on all drafts during the relevant periods and attended several meetings and phone conferences during which the terms of the draft contract were discussed.

[5] Courts often use the term "common-interest privilege" interchangeably with "joint-defense privilege" to refer to the situation where parties have a common legal interest and retain separate counsel (as opposed to retaining the same counsel, as in a joint-client arrangement). *See id.* at 571 n.6.

GIBSON DUNN

The Honorable Martin Glenn
November 13, 2017
Page 3

N.Y.3d 616, 623 (2016) (citations omitted). "Because the privilege shields from disclosure pertinent information and therefore constitutes an obstacle to the truth-finding process, it must be narrowly construed." *Id.* at 624 (citation omitted).

First, the GUC Trust may waive the common-interest privilege with respect to all portions of the Proposed Exhibits containing communications made by its own counsel. Section 76 of the Restatement (3rd) of the Law Governing Lawyers ("Section 76") governs the "Privilege in Common-Interest Arrangements" and provides, in relevant part:

> (1) If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged [attorney-client communications] that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, ***unless it has been waived by the client who made the communication.***[6]

Similarly, the commentary in Section 76(g) (Standing to assert the privilege; waiver) further provides: "In the absence of an agreement to the contrary, ***any member may waive the privilege with respect to that person's own communications.***" *Id.* (emphasis added). Nothing in the Common Interest Agreement between the GUC Trust and the Unitholders changes the GUC Trust's right to disclose its own counsel's communications in the Proposed Exhibits. At a minimum, the GUC Trust may disclose at trial those parts of the Proposed Exhibits reflecting communications made by Gibson Dunn.

Second, the GUC Trust may introduce at trial the single communication from the Unitholders' counsel contained in the Proposed Exhibits because the common-interest privilege does not apply where there is an adversity of interests between the parties seeking and opposing disclosure. *See Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 213 B.R. 433, 439 (Bankr. S.D.N.Y. 1997). Section 76(2) of the Restatement provides: "Unless the clients have agreed otherwise, a communication described in Subsection (1) is not privileged as between clients described in Subsection (1) in a subsequent adverse proceeding between them." Restatement (Third) of the Law Governing Lawyers § 76. Courts do not require that there be an active litigation between such parties for an adversity of interests to exist that is sufficient to waive the common-interest privilege. *See, e.g.*, *In re Ginn-LA St. Lucie Ltd., LLLP*, 439 B.R. 801 (Bankr. S.D. Fla. 2010).

---

[6] Restatement (Third) of the Law Governing Lawyers § 76 (emphasis added).

**GIBSON DUNN**

The Honorable Martin Glenn
November 13, 2017
Page 4

Here, there is an adversity of interests between the GUC Trust and the Unitholders with respect to the motion to enforce the Proposed Settlement Agreement. That adversity of interests arose on August 16, 2017 at the latest, following the GUC Trust's decision not to enter into the Proposed Settlement Agreement. Tellingly, as soon as this adversity of interests arose on August 16, 2017, the Unitholders' counsel terminated the Common Interest Agreement.

## II.     Disclosing the Proposed Exhibits Would Not Trigger Broad Subject Matter Waiver.

The GUC Trust's disclosure of the Proposed Exhibits would not cause broad subject matter privilege waiver. To the extent the Court holds that disclosure of the Proposed Exhibits would effect a broad subject matter privilege waiver, then the GUC Trust will withdraw its request to introduce the Proposed Exhibits at trial.

"[U]nder the doctrine of 'subject matter waiver,' disclosure of specific communications *may* also lead to the disclosure of all other communications relating to the subject matter." *In re Megan-Racine*, 189 B.R. at 572 n.7. The doctrine is only applicable, however, "where the privilege holder has made some affirmative use of the disclosed material and it would be patently unfair to uphold a claim of privilege." *Id.*

Forfeitures of privilege should be determined on the basis of fairness. *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003). "This notion implicates only 'the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.'" *In re County of Erie*, 546 F.3d 222, 229 (2d. Cir 2008) (citing *John Doe Co.*, 350 F.3d at 306). Courts have "made it clear that 'whether fairness requires disclosure has been decided . . . on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.'" *Id.* (citation omitted).

Further, Federal Rule of Evidence 502(a) provides that where a party selectively waives privilege, the waiver extends to undisclosed communications only if "(1) the waiver [was] intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). The 2007 Advisory Committee Notes to Rule 502 explain that subject matter waiver "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502(a), advisory committee's note.

Here, the GUC Trust has produced over 13,900 pages of documents from the files of the Trustee and its outside counsel. The Participating Unitholders have produced over 6,700 pages. Counsel for each is being deposed. No unfairness will result if these four additional documents are disclosed.

GIBSON DUNN

The Honorable Martin Glenn
November 13, 2017
Page 5

Respectfully,

 */s/ Mitchell A. Karlan*

Mitchell A. Karlan

cc: Counsel of record, via CM/ECF