Hearing Date and Time: December 18, 2017 at 9:00 a.m. (EST)
Objection Deadline: December 7, 2017

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                              :
In re:                                                        :    Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                           :    Case No.: 09-50026 (MG)
       f/k/a General Motors Corp., et al.,                    :
                                                              :
                            Debtors.                          :    (Jointly Administered)
-------------------------------------------------------------X

**THE SIGNATORY PLAINTIFFS' AND PARTICIPATING UNITHOLDERS'**
**OPENING BRIEF REGARDING NEW GM'S PHASE 1 STANDING**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT ..........................................................................................................................4

    III.    Legal Standard. ........................................................................................................4

    IV.    New GM Lacks Prudential Standing Because It Is Neither A Party
            To The Settlement Agreement, Nor A Third-Party Beneficiary Thereof. ...........................6

    V.    New GM Lacks Constitutional Standing To Contest The Motion Because
          It Will Not Suffer Concrete And Particularized Injury If The Motion Is Granted. ............10

    VI.    New GM Is Not A Party In Interest Under Bankruptcy Code
           Section 1109 Because It Lacks A Direct Stake In The Phase 1 Dispute
           And Is Not A Creditor Or Holder Of An Equitable Claim Against The GUC Trust. .......11

CONCLUSION .....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Breeden v. Kirkpatrick & Lockhart, LLP,
  268 B.R. 704 (S.D.N.Y. 2001), aff'd sub nom. Breeden v. Kirkpatrick &
  Lockhart LLP (In re Bennett Funding Grp.), 336 F.3d 94 (2d Cir. 2003) ................................5

In re Caldor, Inc.–NY,
  193 B.R. 182 (Bankr. S.D.N.Y. 1996) ...............................................................................10, 11

Church Mut. Ins. Co. v. Am. Home Assurance Co. (In re Heating Oil Partners, LP),
  422 F. App'x 15 (2d Cir. 2011) ..................................................................................................6

Clapper v. Amnesty Int'l USA,
  568 U.S. 398 (2013) .................................................................................................................10

Cty. of Suffolk v. Long Island Lighting Co.,
  728 F.2d 52 (2d Cir. 1984) .........................................................................................................9

In re E.S. Bankest, L.C.,
  321 B.R. 590 (Bankr. S.D. Fla. 2005) .....................................................................................12

FW/PBS, Inc. v. Dallas,
  493 U.S. 215 (1990) ...................................................................................................................6

Gracie Tower Realty Assocs. v. Danos Floral Co.,
  538 N.Y.S.2d 680 (Civ. Ct. N.Y. Cty. 1989) .............................................................................7

Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n,
  747 F.3d 44 (2d Cir. 2014) ........................................................................................5, 7, 8, 10

Hirsch v. Arthur Andersen & Co.,
  72 F.3d 1085 (2d Cir. 1995) .......................................................................................................6

In re Innkeepers USA Tr.,
  448 B.R. 131 (Bankr. S.D.N.Y. 2011) .....................................................................................12

In re Ionosphere Clubs, Inc.,
  101 B.R. 844 (Bankr. E.D.N.Y. 1993) ...............................................................................11, 12

Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),
  843 F.2d 636 (2d Cir. 1988) ...................................................................................................4, 5

In re Lehman Bros. Holdings Inc.,
  No. 11 Civ. 3760, 2012 WL 1057952 (S.D.N.Y. March 26, 2012) ...........................................6

In re Martin Paint Stores,
    199 B.R. 258 (Bankr. S.D.N.Y. 1996), aff'd sub nom. S. Blvd., Inc. v. Martin
    Paint Stores, 207 B.R. 57 (S.D.N.Y. 1997) ...........................................................................12

In re Old Carco LLC,
    500 B.R. 683 (Bankr. S.D.N.Y. 2013).........................................................................4, 5, 7, 10

Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.),
    430 B.R. 65 (S.D.N.Y. 2010).................................................................................................5, 6

Premium Mortg. Corp. v. Equifax, Inc.,
    583 F.3d 103 (2d Cir. 2009)................................................................................................5, 7, 8

Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.),
    698 F.2d 571 (2d Cir. 1983)..............................................................................................11, 12

In re Saint Vincents Catholic Med. Centers of N.Y.,
    429 B.R. 139 (Bankr. S.D.N.Y. 2010) .....................................................................................12

Savage & Associates, P.C. v. Mandl (In re Teligent, Inc.),
    417 B.R. 197 (Bankr. S.D.N.Y. 2009), aff'd sub nom. Savage & Associates,
    P.C. v. K & L Gates LLP (In re Teligent, Inc.), 640 F.3d 53 (2d Cir. 2011) ....................10, 12

Scott v. Residential Capital, LLC (In re Residential Capital, LLC),
    No. 14 CIV. 761, 2015 WL 629416 (S.D.N.Y. Feb. 13, 2015)..........................................1, 11

Shea v. Royal Enters., Inc.,
    No. 09 Civ. 8709, 2011 WL 43460 (S.D.N.Y. Jan. 6, 2011)................................................7, 8

Spokeo, Inc. v. Robins,
    136 S. Ct. 1540 (2016)..............................................................................................................10

Tamir v. Bank of N.Y. Mellon,
    No. 12-CV-4780, 2013 WL 4522926 (E.D.N.Y. Aug. 27, 2013).........................................8, 9

Cty. of Tioga ex. rel. Tioga Cty. Solid Waste Dist. v. Solid Waste Indus. Inc.,
    577 N.Y.S.2d 922 (1991)............................................................................................................7

Warth v. Seldin,
    422 U.S. 490 (1975)....................................................................................................................5

**Statutes**

11 U.S.C. § 1109................................................................................................................. *passim*

The Signatory Plaintiffs[1] and Participating Unitholders hereby submit their brief regarding New GM's standing to be heard on the Phase 1(a) Issue,[2] and in support respectfully state as follows:

## PRELIMINARY STATEMENT

1. The narrow issue before the Court is whether New GM has standing to be heard on whether the Settlement Agreement[3] with the GUC Trust is a binding agreement, despite New GM being neither a party to, nor a third-party beneficiary of, the Agreement.

2. In order to have standing in Phase 1, New GM has the burden of demonstrating: (i) prudential standing; (ii) constitutional standing; *and* (iii) Bankruptcy Code Section 1109 standing. All three standing requirements must be met in order for New GM to have standing in Phase 1.[4] New GM cannot meet a single one of these three standards and thus lacks standing to be heard.

3. It is well-settled that third-party, non-beneficiaries of a contract lack prudential standing to challenge the binding nature of that contract. New GM is not a party to the Settlement Agreement or a party to the negotiations that resulted in it, nor is New GM an intended third-party beneficiary of the Agreement. It therefore lacks prudential standing in Phase 1. Although that alone settles this question, the answer would be the same under a constitutional or Section 1109 standing analysis.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Motion to Enforce the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust*, dated Sept. 11, 2017 [ECF No. 14092] (the "**Motion**").

[2] The Phase 1(a) Issue is "whether Plaintiffs' Settlement Agreement is a binding agreement." *Pre-Trial Stipulation and Scheduling Order*, dated Oct. 11, 2017 [ECF No. 14130].

[3] The Settlement Agreement By and Between the Signatory Plaintiffs and the GUC Trust [ECF No. 14093-8] (the "**Settlement Agreement**" or "**Agreement**").

[4] See Scott v. Residential Capital, LLC (In re Residential Capital, LLC), No. 14 CIV. 761, 2015 WL 629416, at *3 (S.D.N.Y. Feb. 13, 2015).

-1-

4.  The key consideration for constitutional standing is whether the party is asserting its own legal rights to protect itself from injury. Constitutional standing does not exist where, as here, a third-party attempts to assert the rights of another on the grounds that the third-party may suffer tangential or future economic harm. The Phase 1(a) Issue does not directly affect New GM. At best, New GM is trying to assert the rights of the GUC Trust because it fears the potential outcome should the Court find that the Settlement Agreement is binding. That is not enough.

5.  Finally, parties who do not fall within the enumerated categories of parties in interest listed in Bankruptcy Code Section 1109 must either be a creditor or have some equitable claim against the estate, and must have a direct financial stake in the dispute to be a party in interest under Bankruptcy Code Section 1109. New GM does not satisfy either of these elements, as it is not a creditor of, nor a holder of an equitable interest in the GUC Trust. Moreover, any financial interest New GM has related to the potential Claims Estimate Order is too far removed from the Phase 1 proceedings to constitute party-in-interest standing.

6.  That New GM may further down the road have to transfer approximately $1 billion in Adjustment Shares to the GUC Trust when and if a Claims Estimate Order is approved puts the merits cart before the standing horse. Whether New GM has to live up to its commitments under the Sale Agreement is at least a stage away from the narrow Phase 1(a) Issue of whether the unsigned Agreement is binding on the GUC Trust.[5]

---

[5] While not at issue in this stage, New GM will also lack standing in connection with a Rule 9019 Approval Motion of Plaintiffs' Settlement Agreement in Phase 2 as, *inter alia*, the governing documents bestow exclusive authority to the GUC Trust in settling and estimating Plaintiffs' claims. The Signatory Plaintiffs and Participating Unitholders reserve all rights to fully brief the issue of New GM's standing in Phase 2 at the appropriate time.

**BACKGROUND**

7. The Phase 1 Issues are: (a) whether the Settlement Agreement is binding on the GUC Trust; and (b) whether New GM has standing to be heard on this issue. See *Pre-Trial Stipulation and Scheduling Order*, dated Oct. 11, 2017 [ECF No. 14130].

8. The Settlement Agreement is governed by New York law. See Settlement Agreement § 3.16.

9. It is undisputed that New GM is not a party to or third party beneficiary of the Settlement Agreement. Settlement negotiations began in earnest between the Signatory Plaintiffs, the GUC Trust, and the Participating Unitholders after certain Plaintiffs filed motions seeking leave to assert late-filed claims against the GUC Trust.[6] The parties exchanged over 20 drafts of the Settlement Agreement over the course of more than two months, reaching agreement on all or virtually all core terms by the beginning of July 2017 and finalizing the Settlement Agreement, together with a slew of ancillary documents, in early August, in a valid exercise of the GUC Trust's exclusive authority to settle and estimate claims against the GUC Trust.

10. The negotiations that resulted in the Settlement Agreement were at arms-length, and lengthy, and culminated in a detailed and complete Agreement (with the Settlement Order and Claims Estimate Order as exhibits), and numerous additional documents:

- a motion pursuant to Bankruptcy Rule 9019 to approve: (i) the Settlement Agreement (which is not dependent on entry of a Claims Estimate Order); and (ii) the Claims Estimate Order;

- supporting declarations from Wilmington Trust Company, as administrator of the GUC Trust, and counsel to the Signatory Plaintiffs;

---

[6] See *Motion for an Order Granting Authority to File Late Class Proofs of Claim*, dated Dec. 22, 2016 [ECF No. 13806]; *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Dec. 22, 2016 [ECF No. 13807].

- a Notice Procedures Motion;

- a declaration from the notice provider in support; and

- forms of notices to Plaintiffs and Unitholders.

11. New GM is not listed as a party to the Settlement Agreement. See Settlement Agreement, p.1, § 1.41. The Agreement is neither binding upon nor inures to the benefit of New GM. See id. §§ 1.41, 2.10, 2.12, 3.10. No assignment of the rights and obligations under the Agreement could be made to New GM absent the consent of the Parties. See id. § 3.18.

12. The outcome of Phase 1 does not directly implicate any financial interest of New GM. Phase 1 solely deals with whether the Settlement Agreement is a binding agreement. If the Settlement Agreement is held to be binding, then the GUC Trust would be required to promptly file a joint motion for approval of the Settlement Agreement and the Claims Estimate Order under Bankruptcy Rule 9019, after obtaining an order approving notice procedures for this motion. See Motion Ex. A; Settlement Agreement §§ 2.2, 2.9.

13. New GM has not filed any proofs of claim against the GUC Trust/Old GM estate, is not a creditor of the GUC Trust, and does not hold an equitable claim against the GUC Trust/Old GM estate.

**ARGUMENT**

I. **Legal Standard.**

14. "To have standing in bankruptcy court, a party must meet three requirements: (1) Article III's constitutional requirements, (2) federal court prudential standing requirements, and (3) 'party in interest' requirements under Bankruptcy Code 1109(b)." In re Old Carco LLC, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013) (Bernstein, J.).

15. First and foremost, a party seeking to appear in federal court must demonstrate prudential standing. See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d

-4-

636, 644 (2d Cir. 1988) ("The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context."). The prudential standing requirement prevents third parties from asserting the rights of others. See id. In the case of a contract dispute, only parties to the contract and intended third-party beneficiaries of the contract have prudential standing to appear. See Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (non-party to a contract lacks standing in a contract proceeding unless unequivocal terms clearly evidence an intent to permit such standing). If a party lacks prudential standing, the inquiry ends, and the Court need not even consider the issues of constitutional or party-in-interest standing. See Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 48-49 (2d Cir. 2014); In re Old Carco LLC, 500 B.R. at 692.

16. Assuming a party meets prudential standing requirements, it then must prove that it has constitutional standing. Specifically, under the case or controversy requirement of Article III of the Constitution, a party "must have a 'personal stake in the outcome of the controversy'" to have standing. Breeden v. Kirkpatrick & Lockhart, LLP, 268 B.R. 704, 708 (S.D.N.Y. 2001) (citation omitted), aff'd sub nom. Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Grp.), 336 F.3d 94 (2d Cir. 2003). Similar to prudential standing requirements, "[a] party can only assert its own legal rights and cannot assert the rights of third-parties." Id. Furthermore, "[t]he Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." Warth v. Seldin, 422 U.S. 490, 499 (1975).

17. Finally, even if both constitutional and prudential standing are present, the Bankruptcy Code separately requires "party in interest" standing under Bankruptcy Code Section 1109 in order to appear in Bankruptcy Court. See 11 U.S.C. § 1109; Parker v. Motors

Liquidation Co. (In re Motors Liquidation Co.), 430 B.R. 65, 92 (S.D.N.Y. 2010); In re Lehman Bros. Holdings Inc., No. 11 Civ. 3760, 2012 WL 1057952, at *3 (S.D.N.Y. March 26, 2012) (Sullivan, J.).

18.  Bankruptcy Code Section 1109(b) does not abrogate prudential or constitutional standing requirements—a "party in interest must still demonstrate that it meets the general requirements of the standing doctrine, including whether it has alleged a personal stake in the outcome of the proceedings and whether it is asserting its own legal rights and remedies." Church Mut. Ins. Co. v. Am. Home Assurance Co. (In re Heating Oil Partners, LP), 422 F. App'x 15, 17 (2d Cir. 2011) (citing Etuk v. Slattery, 936 F.2d 1433, 1440 (2d Cir.1991)); see also Parker, 430 B.R. at 92 (finding that Bankruptcy Code Section 1109(b) does not satisfy or replace the constitutional and prudential limitations on standing, but rather requires the party to satisfy both).

19.  "The burden to establish standing remains with the party claiming that standing exists." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995); see also FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990). It is long settled that standing cannot be "inferred argumentatively from averments in the pleadings," but rather "must affirmatively appear in the record." See FW/PBS, 493 U.S. at 231 (internal citations omitted). It is the burden of the party asserting standing to be heard "to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." See id. (citing Warth, 422 U.S. at 518). "If [they] fai[l] to make the necessary allegations, [they have] no standing." Id. (citation omitted)

## II. New GM Lacks Prudential Standing Because It Is Neither A Party To The Settlement Agreement, Nor A Third-Party Beneficiary Thereof.

20.  It is well settled in this Circuit that a non-party to a contract that does not contain unambiguous language manifesting an intent to make the non-party a beneficiary thereof lacks

-6-

prudential standing to litigate issues related to that contract, including whether the contract is a binding agreement. See, e.g., Premium Mortg., 583 F.3d at 108 (explaining that "[a] non-party to a contract governed by New York law lacks standing" in a contract proceeding "in the absence of terms that clearly evidence an intent to permit" such standing) (citation omitted); Hillside Metro Assocs., 747 F.3d at 48-49 (plaintiff, "neither a party nor a third-party beneficiary" of the contract in question, "does not have prudential standing"); Shea v. Royal Enters., Inc., No. 09 Civ. 8709, 2011 WL 43460, at *3 (S.D.N.Y. Jan. 6, 2011) (holding that non-party lacked standing to challenge the enforceability of lease agreement); In re Old Carco LLC, 500 B.R. at 692 (holding that non-party to a stipulation lacked prudential standing to assert claims thereunder).

21. Courts applying federal common law and New York law are clear that third party non-beneficiaries may not adjudicate contractual issues even where a financial interest is at stake. See Shea v. Royal Enters., 2011 WL 43460, at *3 (holding that plaintiff had no standing to raise statute of frauds argument because plaintiff is not a party to the lease at issue); Premium Mortg., 583 F.3d at 108 (holding that plaintiff lacked standing, as it was not a party to the contracts, and there was an "absence of terms that clearly evidence an intent to permit enforcement" by plaintiff) (citation omitted); Hillside Metro Assocs., 747 F.3d at 50 (holding that the lessor "lack[ed] prudential standing to litigate whether WaMu's liabilities were assigned to [Chase] under the [purchase and assumption agreement] because it was neither a contracting party nor a third-party beneficiary under the Agreement"); Gracie Tower Realty Assocs. v. Danos Floral Co., 538 N.Y.S.2d 680, 682 (Civ. Ct. N.Y. Cty. 1989) (holding that landlord could not bring an affirmative defense of statute of frauds, as he was not a party to the agreement but was "a third-party stranger" to the contract); Cty. of Tioga ex. rel. Tioga Cty. Solid Waste Dist.

v. Solid Waste Indus. Inc., 577 N.Y.S.2d 922, 924 (1991) (holding that judgment creditor lacked standing because it was a "stranger" to the underlying contract).

22. Here, the Settlement Agreement contains no terms designating New GM as a party to or third-party beneficiary of the Settlement Agreement, and provides no expectation, defined or implicit, that New GM would be a proper party to a dispute over whether the Agreement is binding on the parties. Instead, New GM seeks standing in Phase 1 on the grounds that is has some future, contingent economic interest at stake. That is not enough.[7]

23. As the Shea, Premium, and Hillside courts correctly found, the respective third-parties lacked standing because parties with contractual privity have certain rights and obligations that non-parties to the contract lack. See Shea, 2011 WL 43460, at 3; Premium, 583 F.3d at 108; Hillside, 747 F.3d at 50. Similarly, here, there is simply no basis under the law for New GM to have standing to argue that the Settlement Agreement is not binding on the GUC Trust. Standing to contest the binding nature of the Settlement Agreement lies solely with the parties to the Agreement.

24. New GM also lacks Phase 1 standing because it is not a beneficiary of the Agreement. See Tamir v. Bank of N.Y. Mellon, No. 12-CV-4780, 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013) ("[A] non-party to a contract lacks standing to challenge an agreement in the absence of terms demonstrating that it is a third-party beneficiary."). Crucially, New GM would have to prove that it was an "intended beneficiary" of the Agreement. Showing that it was

---

[7] This is not the first time New GM has attempted to invade the contractual relationship between the GUC Trust and the Signatory Plaintiffs. Despite being neither a party to the Settlement Agreement nor a third-party beneficiary thereof, New GM purposefully interfered with the Settlement Agreement and induced the GUC Trust to renege on the Agreement. New GM's conduct gives rise to claims, including, without limitation, tortious interference with contract, that are one of the subjects of Phase 2. See Aug. 17, 2017 Hr'g Tr. 15:23-17:13 (counsel for the GUC Trust explaining that after one meeting with New GM that lasted two hours "at most" with no documents circulated in advance, the GUC Trust decided to abandon the Settlement Agreement that had been negotiated over the course of "about two months," even though "[i]n our view, as a fiduciary, we were initially willing to go forward with the deal, with the settlement as presented").

-8-

an "incidental beneficiary" is insufficient, even if it stands to suffer "economic loss." See Cty. of Suffolk v. Long Island Lighting Co., 728 F.2d 52, 62-63 (2d Cir. 1984).

25.    Here, New GM is a non-party that asserts potential future economic impact as a basis for standing, in order to intrude into a binary contract dispute. The Settlement Agreement is strictly between the Signatory Plaintiffs and the GUC Trust, with the Participating Unitholders clearly intended third-party beneficiaries, and does not contain language making New GM an intended beneficiary thereunder.

26.    Indeed, New GM admits that it is not a third party beneficiary of the Settlement Agreement, see Oct. 3, 2017 Hr'g Tr. 54:1-6,[8] underscoring New GM's lack of prudential standing.

27.    Furthermore, New GM cannot claim that its obligation to issue Adjustment Shares upon approval of the Claims Estimate Order grants it prudential standing. As the Second Circuit and the District Court clearly held in Suffolk Cty. and Tamir, respectively, economic loss is not a valid basis for prudential standing—absent a clear intent in the contract that the non-party was an intended beneficiary.[9]  Suffolk Cty., 728 F.2d at 63; Tamir, 2013 WL 4522926, at *3-4. That intent is wholly lacking here.

28.    It bears repeating that the Phase 1(a) Issue is limited to whether the Settlement Agreement is binding. The Court would still need to complete Phase 2 before any potential economic obligation of (or benefit to) New GM is triggered. Thus, Phase 1 does not directly implicate any financial interests of New GM.

---

[8] Oct. 3, 2017 Hr'g Tr. 54:1-6 (counsel to New GM: "The way Mr. Weisfelner said that we're not a third party beneficiary, and I hope that's the rubric that the Court adopts, because if that's the rubric, then certainly being a third-party payor should be an equal balance in the scales of justice.").

[9] This Court alluded to the difference between New GM's obligations under the Claims Estimate Order and prudential standing at the October 3, 2017 hearing. See Oct. 3, 2017 Hr'g Tr. 55:23-25 (THE COURT: "I understand the economic interest. Whether that gives you legal standing or not is a different issue.").

29.     New GM is attempting to challenge the binding nature of a contract to which it is not a party or third party beneficiary.  The laws of this State and this Circuit are clear that New GM lacks prudential standing to do so.  This Court should find the same, and need go no further.  See Hillside Metro Assocs,, 747 F.3d at 48-49; In re Old Carco LLC, 500 B.R. at 692.  New GM's lack of prudential standing sufficiently disposes of this question.

### III.    New GM Lacks Constitutional Standing To Contest The Motion Because It Will Not Suffer Concrete And Particularized Injury If The Motion Is Granted.

30.     Where a party lacks prudential standing, a court need not reach the question of Article III constitutional standing.  Regardless, New GM lacks constitutional standing in Phase 1.

31.     To prove constitutional standing, a party must, *inter alia*, establish "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) (quoting Lujan v. Defs. of Wildlife, 112 S. Ct. 2130, 2134 (1992)).  See also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 401-402 (2013) (explaining that theory of future injury is "too speculative to satisfy the well-established requirement that threatened injury must be certainly impending" and a party cannot "manufacture standing by choosing to make expenditures based on hypothetical future harm") (internal quotations omitted).

32.     Judge Garrity has applied the "concrete and particularized injury" requirement in denying standing to non-parties to a contract, with similar facts to this dispute.  See In re Caldor, Inc.–NY, 193 B.R. 182, 186 (Bankr. S.D.N.Y. 1996) (Garrity, Jr., J.) (bank that was lender to the landlord of a site leased to debtor lacked constitutional standing to contest debtor-in-possession's motion for order authorizing it to lease a new site); see also Savage & Associates, P.C. v. Mandl (In re Teligent, Inc.), 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009) (holding that non-party could not challenge settlement agreement because it lacked a direct stake in the outcome and thus

lacked Article III standing), aff'd sub nom. Savage & Associates, P.C. v. K & L Gates LLP (In re Teligent, Inc.), 640 F.3d 53 (2d Cir. 2011).

33. Here, like the bank in Caldor, New GM is attempting to participate in Phase 1 despite the fact that the outcome of Phase 1 will not have any direct effect on New GM. New GM cannot show a concrete and particularized injury caused by the determination of whether the Settlement Agreement is a binding agreement.

34. No direct obligation will be imposed on New GM in Phase 1. Any potential economic impact on New GM that may occur based on future contingencies is insufficient for Phase 1 standing. In keeping with Caldor, New GM lacks constitutional standing in Phase 1.

**IV. New GM Is Not A Party In Interest Under Bankruptcy Code Section 1109 Because It Lacks A Direct Stake In The Phase 1 Dispute And Is Not A Creditor Or Holder Of An Equitable Claim Against The GUC Trust.**

35. For Phase 1 standing, in addition to demonstrating prudential and constitutional standing (which are absolute requirements), New GM must show that it is a "party in interest" with a right to be heard under Bankruptcy Code Section 1109. See Scott v. Residential Capital, LLC (In re Residential Capital, LLC), No. 14 CIV. 761, 2015 WL 629416, at *3 (S.D.N.Y. Feb. 13, 2015).

36. In order to establish party-in-interest standing under Bankruptcy Code Section 1109, a proposed participant must either be a party enumerated in the statute or: (1) must have a "direct" stake in the proceeding and (2) "must . . . be a creditor of a debtor . . . or be able to assert an equitable claim against the estate." In re Ionosphere Clubs, Inc., 101 B.R. 844, 849 (Bankr. E.D.N.Y. 1993); Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.), 698 F.2d 571, 573-74 (2d Cir. 1983).

37. Furthermore, Bankruptcy Code Section 1109 "does not confer standing in the absence of a legally protected interest affected by the bankruptcy proceeding, and the party

asserting standing must show that he is a beneficiary of the bankruptcy provision that he invokes. He must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." In re Martin Paint Stores, 199 B.R. 258, 263-64 (Bankr. S.D.N.Y. 1996), aff'd sub nom. S. Blvd., Inc. v. Martin Paint Stores, 207 B.R. 57 (S.D.N.Y. 1997) (internal citations omitted).

38. It is well-settled that a party in interest under Bankruptcy Code Section 1109 must not have an attenuated or remote interest in the proceeding; its interest must be direct. See Teligent, 640 F.3d at 61 (interest "too remote" to support party-in-interest standing); Comcoach, 698 F.2d at 574 (same); In re Innkeepers USA Tr., 448 B.R. 131, 141 (Bankr. S.D.N.Y. 2011) (same) (Chapman, J.); In re Saint Vincents Catholic Med. Centers of N.Y., 429 B.R. 139, 149-50 (Bankr. S.D.N.Y. 2010) (same) (Morris, J.).

39. Here, New GM has no direct financial stake in the outcome of Phase 1. Rather, any future financial interest New GM may have is wholly indirect to Phase 1, and triggered via operation of governing documents under which the GUC Trust has exclusive authority—*i.e.*, the distribution of Adjustment Shares after a Claims Estimate Order is entered. The narrow relief sought in Phase 1 in no way affects or implicates any direct pecuniary interest of New GM, and thus New GM is not a party in interest under Bankruptcy Code Section 1109 for Phase 1.

40. "Parties in interest" not specifically listed under Bankruptcy Code Section 1109 must either be a "creditor of a debtor to invoke the court's jurisdiction or be able to assert an equitable claim against the estate." Ionosphere, 101 B.R. at 849 ("[O]ne purpose of the Code is to convert the bankrupt's estate into cash and distribute it among creditors. The term party in interest should be interpreted in light of this purpose.") (internal citations omitted); accord Comcoach, 698 F.2d at 573-74; see also In re E.S. Bankest, L.C., 321 B.R. 590, 595 (Bankr. S.D.

-12-

Fla. 2005) (citing to this Court's decision in <u>Ionosphere</u> and the Second Circuit's decision in <u>Comcoach</u> as persuasive precedent, and stating that "only creditors with some interest in a distribution from the estate or those parties with equitable claims against the estate qualify as parties in interest under section 1109(b).").

41.    Here, New GM is not a creditor of the GUC Trust, and has not asserted any proof of claim against the GUC Trust / Old GM estate.  Moreover, New GM holds no equitable interest in the GUC Trust or Old GM estate that would justify Phase 1 standing, nor does New GM have a direct financial stake in Phase 1.  Therefore, New GM is not a party in interest under Bankruptcy Code Section 1109 for Phase 1, and lacks Phase 1 standing.

## **CONCLUSION**

WHEREFORE, because New GM cannot prove any, let alone all, of the three requirements necessary to have standing in Phase 1: (i) prudential standing; (ii) constitutional standing; and (iii) Bankruptcy Code Section 1109 standing, the Signatory Plaintiffs and the Participating Unitholders respectfully request that this Court find that New GM lacks Phase 1 standing and grant such other and further relief as the Court deems appropriate.

Dated: November 13, 2017
   New York, New York

Respectfully submitted,

 /s/ Edward S. Weisfelner
Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Ste. 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing Accident Plaintiffs Represented By Hilliard Muñoz Gonzales L.L.P. and the Law Offices of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to certain Pre-Closing Accident Plaintiffs*

Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J. HENRY
4715 Fredricksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident Plaintiffs*

Lisa M. Norman (admitted *pro hac vice*)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Tel: 713-850-4200
Lnorman@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident Plaintiffs*

        Daniel H. Golden
Deborah J. Newman
AKIN GUMP STRAUSS
HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Tel: 212-871-1002
dgolden@akingump.com
djnewman@akingump.com

*Counsel to Participating Unitholders*