# EXHIBIT N

```
                      UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK


                                    .   Case No. 09-50026-mg
IN RE:                              .   Chapter 11
                                    .
MOTORS LIQUIDATION COMPANY,         .   (Jointly administered)
et al., f/k/a GENERAL               .
MOTORS CORP., et al,                .   One Bowling Green
                                    .   New York, NY 10004
             Debtors.               .
                                    .   Tuesday, October 3, 2017
. . . . . . . . . . . . . . .       .   10:02 a.m.


      TRANSCRIPT OF HEARING REGARDING "PLAINTIFFS' ENFORCEMENT
      MOTION" AND THE "FOREBEARANCE AGREEMENT APPROVAL MOTION."
         (CC: DOC NOS. 14092, 14093, 14095, 14114, 14115, 14117)
                   BEFORE THE HONORABLE MARTIN GLENN
                   UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:            King & Spalding LLP
                           By:  ARTHUR STEINBERG, ESQ.
                                SCOTT DAVIDSON, ESQ.
                                DAVID M. FINE, ESQ.
                           1185 Avenue of the Americas
                           New York, New York 10036-4003
                           (212) 556-2158

For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs:                Brown Rudnick LLP
                           By:  EDWARD S. WEISFELNER, ESQ.
                                HOWARD S. STEEL, ESQ.
                           7 Times Square
                           New York, New York 10036
                           (212) 209-4917




Audio Operator:            Timothy Wilson, ECRO


Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com

         Proceedings recorded by electronic sound recording,
             transcript produced by transcription service.
```

2

```
APPEARANCES (Continued):

For Personal Injury
Accident Plaintiffs:      Goodwin Procter LLP
                          By:  WILLIAM P. WEINTRAUB, ESQ.
                          The New York Times Building
                          620 Eighth Avenue
                          New York, NY 10018-1405
                          (212) 813-8839

For Participating
Unitholders:              Akin Gump Strauss Hauer & Feld LLP
                          By:  DANIEL GOLDEN, ESQ.
                               DEBORAH NEWMAN, ESQ.
                               NAOMI MOSS, ESQ.
                          One Bryant Park
                          New York, NY 10036-6745
                          (212) 872-1000

For Certain Personal
Injury/Death Plaintiffs:  Hilliard Munoz & Gonzales LLP
                          By:  ROBERT HILLIARD, ESQ.
                          719 South Shoreline Boulevard #500
                          Corpus Christi, Texas  78401
                          (361) 882-1612

For JPMorgan Chase
Bank, N.A.:               Wachtell, Lipton, Rosen & Katz
                          By:  HAROLD S. NOVIKOFF, ESQ.
                          51 West 52nd Street
                          New York, NY  10019-6150
                          (212) 403-1000

For New GM:               Quinn Emanuel
                          By:  SUSHEEL KIRPALANI, ESQ.
                               JAMES C. TECCE, ESQ.
                               JULIA BESKIN, ESQ.
                          51 Madison Avenue, 22nd Floor
                          New York, NY  10010
                          (212) 849-7199
```

```
APPEARANCES (Continued):

For Motors Liquidation
GUC Trust:                    Gibson, Dunn & Crutcher LLP
                              By:  MITCHELL KARLAN, ESQ.
                                   DAVID M. FELDMAN, ESQ.
                              200 Park Avenue
                              New York, NY 10166-0193
                              (212) 351-4000

For the Ignition Switch       Lieff, Cabraser, Heimann & Bernstein
Plaintiffs:                   By:  ELIZABETH J. CABRASER, ESQ.
                              275 Battery Street, 29th Floor
                              San Francisco, CA 94111-3339
```

1  and Your Honor and Ms. Cabraser got into a little bit of a
2  discussion about whether there's a chicken and egg issue, and
3  Your Honor said I'm not sure that there is one.  She said there
4  is one.  There's certainly not a chicken and egg issue because
5  those have no right answer.
6          What we have here is really a cart before the horse
7  situation the way I see it because what Mr. Weisfelner admitted
8  -- and again, in his candor, which I really did appreciate --
9  to the Court is that this settlement -- purported settlement
10 agreement or purported deal with the GUC Trust was the product
11 of what?  He said -- and I wrote it down -- "the collective
12 imagination of these very bright innovative plaintiffs'
13 counsel."  I don't begrudge them for that.  It is exactly the
14 case, but that doesn't make it --
15         THE COURT:  That's how most complicated cases get
16 settled --
17         MR. KIRPALANI:  That is true.
18         THE COURT:  -- Mr. Kirpalani.
19         MR. KIRPALANI:  That is true.  And but for the
20 plaintiffs' counsel to take the position that, well, New GM,
21 they're not a party in interest, they shouldn't have any role
22 here, this is a purported deal between the plaintiffs and the
23 GUC Trust, I would --
24         THE COURT:  They may be right.  We're going to have
25 briefing on that.

1          MR. KIRPALANI:  Yes.  And I'm happy to brief that.
2    The way Mr. Weisfelner said that we're not a third-party
3    beneficiary, and I hope that's the rubric that the Court
4    adopts, because if that's the rubric, then certainly being the
5    third-party payor should be an equal balance in the scales of
6    justice.
7          THE COURT:  New GM will be the beneficiary in my view
8    if the result, for hypothetically, is that economic loss claims
9    are resolved as part of the bankruptcy through the allowance of
10   late claims.  And the economic loss claims other than truly
11   independent claims can't go forward in the district court.
12         I remember seeing some time ago a letter brief
13   probably from Kirkland that took the position with Judge Furman
14   that that would be the result of allowing late claims in the
15   bankruptcy, that if the basis for -- putting aside independent
16   claims -- the basis for the successor liability claims was they
17   were denied due process.  They're not subject to the free and
18   clear sale provision.
19         And, you know, whether there are successful liability
20   claims is a matter of applicable non-bankruptcy law, but I
21   remember reading that in a letter.  So I'm -- obviously, that's
22   probably not going to be my call at the end of the day anyway.
23   It's probably Judge Furman's, but that's why I asked.  It did
24   strike me when I read these letters, and I asked Ms. Cabraser
25   about it.

1          If late claims are allowed for both personal
2   injury/wrongful death claims -- pre-closing personal
3   injury/wrongful death claims and economic loss claims, if
4   they're allowed in the Bankruptcy Court, you know, it pays in
5   bankruptcy dollars.  And, you know, it may be that there's a
6   substantial dispute in the estimation of what amount they ought
7   to be estimated at, putting that aside for a moment.
8          But there are some real potential benefits to New GM.
9   It'll decide what position you're taking in this Court about
10  it.  But that is something that struck me when I first read --
11  I don't know how many months ago, Mr. Steinberg, that letter --
12  I don't know -- I guess it must have been Kirkland because it
13  went to Judge Furman.
14         But I think I even commented about it at  a prior
15  hearing that, you know, it was like GM -- New GM doth protest
16  too loudly in this court when they're telling Judge Furman, oh,
17  by the way, if there are late claims in the bankruptcy case,
18  the claims before you, Judge Furman, are gone.  But we'll see.
19         MR. KIRPALANI:  Yeah.  And I agree with that, Your
20  Honor.  But the point is, whether we benefit or we suffer,
21  we're economically interested in the outcome and we're a party
22  in this --
23         THE COURT:  Oh, I understand the economic interest.
24  Whether that gives you legal standing or not is a different
25  issue.

1              MR. KIRPALANI:  Well --

2              THE COURT:  But let's talk about the discovery.

3              MR. KIRPALANI:  Sure.

4              THE COURT:  The briefing is going to be -- we're
5     going to have briefing.

6              MR. KIRPALANI:  Sure.  Okay.  With respect to the
7     discovery, Your Honor, whether or not -- I mean, I understood
8     Your Honor's tentative ruling at the outset not to consider the
9     competing motions at the same time, and obviously we respect
10    Your Honor's ruling on that.  In terms of why some of their --
11    maybe some of those issues leaking into the record, however, is
12    that it does go to what was happening in real time.

13             I understand that some parties want the Court to just
14    see kind of one-half of the conversations that were going on or
15    one-half of the emails.

16             THE COURT:  But Mr. Steinberg told me that, A, they
17    were cut out of the discussions, that he had a two-hour
18    meeting, and in the course of the two-hour meeting, Wilmington
19    Trust was persuaded not to go forward with the settlement.  And
20    Mr. Weisfelner and everyone on the other side of the courtroom
21    is saying what we're saying, Judge, is before that two-hour
22    meeting happened, there was a binding settlement agreement.

23             MR. KIRPALANI:  Right.  But when Mr. Steinberg
24    started that meeting, the first question out of his mouth was,
25    "Do you have a binding agreement or not?"  And it was only on

74

## **C E R T I F I C A T I O N**

1

2

3    I, Ilene Watson, court-approved transcriber, hereby

4 certify that the foregoing is a correct transcript from the

5 official electronic sound recording of the proceedings in the

6 above-entitled matter, and to the best of my ability.

7

8

9  _____

10 ILENE WATSON, AAERT NO. 447    DATE:  October 3, 2017

11 ACCESS TRANSCRIPTS, LLC

ACCESS TRANSCRIPTS, LLC    1-855-USE-ACCESS (873-2223)