# EXHIBIT E

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

# FORM 10-Q

---

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended June 30, 2017**

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**Commission File No. 001-00043**

---

# Motors Liquidation Company GUC Trust
**(Exact name of registrant as specified in its charter)**

---

| | |
|---|---|
| **Delaware** | **45-6194071** |
| **(State or other jurisdiction of incorporation or organization)** | **(IRS Employer Identification No.)** |

**c/o Wilmington Trust Company,**
**as trust administrator and trustee**
**Attn: Beth A. Andrews, Vice President**
**Rodney Square North**
**1100 North Market Street**
**Wilmington, Delaware**                                    **19890-1615**
**(Address of principal executive offices)**                **(Zip Code)**

**(302) 636-6019**
**(Registrant's telephone number, including area code)**

---

**(Former Name or Former Address, if Changed Since Last Report)**

---

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    Yes ☐    No ☒*

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).    Yes ☒    No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☐ |
| Non-accelerated filer | ☒ (Do not check if a smaller reporting company) | Smaller Reporting Company | ☐ |
| | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act.

Indicate by checkmark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐   No ☒

Indicate by check mark whether the registrant has filed all documents and reports required to be filed by Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934 subsequent to the distribution of securities under a plan confirmed by a court.   Yes ☐   No ☒*

* The registrant is not required to file reports pursuant to Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934, but has filed all reports required pursuant to the no-action letter of the Securities and Exchange Commission to the registrant dated May 23, 2012.

**MOTORS LIQUIDATION COMPANY GUC TRUST**
**FORM 10-Q TABLE OF CONTENTS**

Page

PART I—FINANCIAL INFORMATION

| | | |
|---|---|---:|
| Item 1. | Financial Statements | |
| | Condensed Statements of Net Assets in Liquidation (Liquidation Basis), June 30, 2017 (unaudited) and March 31, 2017 | 1 |
| | Condensed Statements of Changes in Net Assets in Liquidation (Liquidation Basis), Three Months Ended June 30, 2017 and 2016 (unaudited) | 2 |
| | Condensed Statements of Cash Flows (Liquidation Basis), Three Months Ended June 30, 2017 and 2016 (unaudited) | 3 |
| | Notes to Condensed Financial Statements (unaudited) | 4 |
| Item 2. | Management's Discussion and Analysis | 16 |
| Item 3. | Quantitative and Qualitative Disclosures About Market Risk | 38 |
| Item 4. | Disclosure Controls and Procedures | 38 |

PART II—OTHER INFORMATION

| | | |
|---|---|---:|
| Item 1. | Legal Proceedings | 39 |
| Item 1A. | Risk Factors | 43 |
| Item 2. | Unregistered Sales of Equity Securities and Use of Proceeds | 46 |
| Item 3. | Defaults Upon Senior Securities | 46 |
| Item 4. | Mine Safety Disclosures | 46 |
| Item 5. | Other Information | 46 |
| Item 6. | Exhibits | 47 |

**Table of Contents**

Motors Liquidation Company GUC Trust
CONDENSED STATEMENTS OF NET ASSETS IN LIQUIDATION (LIQUIDATION BASIS)
(Dollars in thousands)

|  | June 30, 2017 Unaudited | March 31, 2017 |
|---|---|---|
| **ASSETS** | | |
| Cash and Cash Equivalents (Note 3) | $ 3,316 | $ 4,320 |
| Marketable Securities (Note 3) | 509,840 | 522,452 |
| Other Assets and Deposits | 4,969 | 3,948 |
| **TOTAL ASSETS** | 518,125 | 530,720 |
| **LIABILITIES** | | |
| Accounts Payable and Other Liabilities | 2,456 | 13,433 |
| Liquidating Distributions Payable (Note 4) | 10,011 | 9,205 |
| Reserves for Expected Costs of Liquidation (Note 6) | 19,145 | 18,903 |
| Reserves for Residual Wind-Down Claims and Costs (Note 6) | 160 | 966 |
| **TOTAL LIABILITIES** | 31,772 | 42,507 |
| **NET ASSETS IN LIQUIDATION** (Note 3) | $ 486,353 | $ 488,213 |

See Accompanying Notes to Condensed Financial Statements.

1

**Table of Contents**

Motors Liquidation Company GUC Trust
CONDENSED STATEMENTS OF CHANGES IN NET ASSETS IN LIQUIDATION (LIQUIDATION BASIS) (UNAUDITED)
(Dollars in thousands)

| | Three Months Ended June 30, | |
| --- | --- | --- |
| | **2017** | **2016** |
| **Net Assets in Liquidation, beginning of period** | $488,213 | $611,773 |
| **Increase (decrease) in net assets in liquidation:** | | |
| Net (additions to) reductions in reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs (Note 6) | (3,046) | 272 |
| Liquidating distributions (Note 4) | (806) | (913) |
| Interest and dividend income (Note 3) | 1,992 | 244 |
| **Net decrease in net assets in liquidation** | (1,860) | (397) |
| **Net Assets in Liquidation, end of period** | $486,353 | $611,376 |

See Accompanying Notes to Condensed Financial Statements.

2

Table of Contents

Motors Liquidation Company GUC Trust
CONDENSED STATEMENTS OF CASH FLOWS (LIQUIDATION BASIS) (UNAUDITED)
(Dollars in thousands)

| | Three Months Ended June 30, | |
| --- | --- | --- |
| | 2017 | 2016 |
| **Cash flows from (used in) operating activities** | | |
| Cash receipts from interest and dividends | $ 946 | $ 457 |
| Cash paid for professional fees, governance costs and other administrative costs | (3,210) | (3,304) |
| Cash paid for Residual Wind-Down Claims and Costs | (11,544) | (2,556) |
| Cash receipts for refunds | 193 | — |
| Cash paid for distributions | (—) | (98) |
| Net cash flows used in operating activities | (13,615) | (5,501) |
| **Cash flows from (used in) investing activities** | | |
| Cash used to purchase marketable securities | (1,176,908) | (1,495,833) |
| Cash from maturities and sales of marketable securities | 1,189,519 | 1,502,643 |
| Net cash flows from investing activities | 12,611 | 6,810 |
| **Net (decrease) increase in cash and cash equivalents** | (1,004) | 1,309 |
| Cash and cash equivalents, beginning of period | 4,320 | 4,410 |
| **Cash and cash equivalents, end of period** | $ 3,316 | $ 5,719 |

The GUC Trust has not presented a reconciliation from net income to cash flow from operations. As an entity in liquidation, the GUC Trust does not have continuing operations that result in the measurement of net income as that term is used by generally accepted accounting principles to measure results of operations.

See Accompanying Notes to Condensed Financial Statements.

3

**Table of Contents**

Motors Liquidation Company GUC Trust
Notes to Condensed Financial Statements
June 30, 2017

**1.   Description of Trust and Reporting Policies**

The Motors Liquidation Company GUC Trust ("GUC Trust") is a successor to Motors Liquidation Company (formerly known as General Motors Corp.) ("MLC") for the purposes of Section 1145 of the United States Bankruptcy Code ("Bankruptcy Code"). The GUC Trust holds, administers and directs the distribution of certain assets pursuant to the terms and conditions of the Second Amended and Restated Motors Liquidation Company GUC Trust Agreement (the "GUC Trust Agreement"), dated as of July 30, 2015, and as amended from time to time, and pursuant to the Second Amended Joint Chapter 11 Plan (the "Plan"), dated March 18, 2011, of MLC and its debtor affiliates (collectively, along with MLC, the "Debtors"), for the benefit of holders of allowed general unsecured claims against the Debtors ("Allowed General Unsecured Claims").

The GUC Trust was formed on March 30, 2011, as a statutory trust under the Delaware Statutory Trust Act, for the purposes of implementing the Plan and distributing the GUC Trust's distributable assets. Wilmington Trust Company serves as trustee and trust administrator of the GUC Trust (in such capacity, and not in its individual capacity, the "GUC Trust Administrator"), and FTI Consulting, Inc. serves as trust monitor of the GUC Trust (in such capacity, and not in its individual capacity, the "GUC Trust Monitor"). Prior to the liquidation in July and August 2015 of all New GM Securities (as defined below) then held by the GUC Trust (pursuant to the Liquidation Order (as defined below)), the Plan (as qualified by the Liquidation Order) generally provided for the distribution of certain shares of common stock ("New GM Common Stock") of the new General Motors Company, formerly known as NGMCO, Inc. ("New GM") and any associated Dividend Cash (as defined below) and certain warrants for the purchase of shares of such stock (the "New GM Warrants," and, together with the New GM Common Stock, the "New GM Securities") to holders of Allowed General Unsecured Claims pro rata by the amount of such claims. Since such liquidation of the New GM Securities, distributions to holders of Allowed General Unsecured Claims consist entirely of cash distributions in lieu of New GM Securities. In addition, prior to the qualification by the Liquidation Order and the resulting subsequent liquidation of New GM Securities, the Plan provided that each holder of an Allowed General Unsecured Claim would obtain, in the form of GUC Trust Units (as defined below), a contingent right to receive, on a pro rata basis, additional shares of New GM Common Stock (and associated Dividend Cash) and New GM Warrants (if and to the extent such New GM Common Stock and New GM Warrants were not required for the satisfaction of previously Disputed General Unsecured Claims (as defined in Note 2), Term Loan Avoidance Action Claims (as defined in Note 2) or liquidation for the payment of the expenses and liabilities of the GUC Trust), and certain cash, if any, remaining at the dissolution of the GUC Trust. Since the aforementioned liquidation of all New GM Securities previously held by the GUC Trust, the holders of GUC Trust Units have a contingent right to receive additional cash, in lieu of New GM Securities, if any, remaining at the dissolution of the GUC Trust.

By order dated July 2, 2015 (the "Liquidation Order"), the Bankruptcy Court approved the conversion of the GUC Trust's holdings of New GM Securities into cash. To effect such conversion, on July 7, 2015, the GUC Trust converted all of its holdings of New GM Warrants into New GM Common Stock in a cashless exercise. In total, the GUC Trust converted (i) 10,352,556 New GM Series A Warrants (defined below) into 7,407,155 shares of New GM Common Stock, and (ii) 10,352,556 New GM Series B Warrants (defined below) into 4,953,635 shares of New GM Common Stock. Thereafter, the GUC Trust sold all of its holdings of New GM Common Stock for net proceeds aggregating $741.7 million, having completed all such sales on August 5, 2015. As a result, all distributions by the GUC Trust thereafter in respect of any Allowed General Unsecured Claims (including in respect of the GUC Trust Units) are made solely in cash. Pursuant to the Liquidation Order, the proceeds of such liquidations (net of applicable costs, fees, and expenses paid in respect thereof) were allocated to the beneficiaries of the GUC Trust on a pro rata basis in the following manner:

(a)   A GUC Trust beneficiary's entitlement to a particular number of New GM Warrants that were exercised was converted into an entitlement to receive the number of shares of New GM Common Stock into which such New GM Warrants were exercised. Such conversions were 0.71549 shares of New GM Common Stock for each New GM Series A Warrant and 0.47849 shares of Common Stock for each New GM Series B Warrant; and

(b)   A GUC Trust beneficiary's entitlement to a particular number of shares of New GM Common Stock that were liquidated (including the exercised New GM Warrants as set forth above), was converted into an entitlement to receive an amount of cash equal to the weighted average sales price (net of any applicable costs, fees, and expenses paid in respect thereof) of all of the New GM Common Stock sold, multiplied by the number of shares of New GM Common Stock to which such GUC Trust beneficiary would otherwise be entitled (including exercised New GM Warrants as set forth above). Such weighted average sales price for the GUC Trust's holdings of New GM Common Stock that were sold subsequent to June 30, 2015 was $31.23 per share.

Following the liquidation described above, the GUC Trust has invested most of the proceeds in certain marketable securities as permitted under the GUC Trust Agreement. The amount of cash and cash equivalents and marketable securities held for distribution to GUC Trust beneficiaries, including Dividend Cash, is referred to herein as Distributable Cash.

Table of Contents

The GUC Trust exists solely for the purpose of resolving claims, distributing Distributable Cash (following the aforementioned liquidation of all New GM Securities) and winding down the affairs of MLC, all in accordance with a plan of liquidation of MLC approved by the Bankruptcy Court and the Liquidation Order. Accordingly, the GUC Trust has prepared the accompanying financial statements on the liquidation basis of accounting in accordance with accounting principles generally accepted in the United States of America (U.S. GAAP). Under the liquidation basis of accounting, assets are stated at their estimated realizable value, which is the non-discounted amount of cash into which an asset is expected to be converted during the liquidation period, while liabilities continue to be recognized at the amount required by other U.S. GAAP, and are not remeasured to reflect any anticipation that an entity will be legally released from an obligation. Additionally, under the liquidation basis of accounting, a reserve is established for estimated costs expected to be incurred during the liquidation period. Such costs are accrued when there is a reasonable basis for estimation. Also, an accrual is made for estimated income or cash expected to be received over the liquidation period to the extent that a reasonable basis for estimation exists. These estimates are periodically reviewed and adjusted as appropriate. The valuation of assets at realizable value, the accrual for investment income on marketable securities expected to be received over the liquidation period, reserves for residual wind-down claims and costs and reserves for expected liquidation costs represent estimates, are based on present facts and circumstances known to the GUC Trust Administrator, and are subject to change.

As described above, the beneficiaries of the GUC Trust are future holders and, to the extent their liquidating distributions have not yet been paid to them, current holders of Allowed General Unsecured Claims and future and current holders of GUC Trust Units ("Trust Beneficiaries"). As Disputed General Unsecured Claims and Term Loan Avoidance Action Claims are resolved and allowed and thereby become Allowed General Unsecured Claims, the holders thereof become entitled to receive liquidating distributions of Distributable Cash (including Dividend Cash) and GUC Trust Units pro rata by the amount of such claims. Upon such occurrence, the GUC Trust incurs an obligation to distribute Distributable Cash and, accordingly, liquidating distributions payable are recorded in the amount of Distributable Cash (previously the fair value of New GM Securities) that the GUC Trust is obligated to distribute as of the end of the period in which the Disputed General Unsecured Claims and Term Loan Avoidance Action Claims are resolved as Allowed General Unsecured Claims. Prior to the resolution and allowance of Disputed General Unsecured Claims and Term Loan Avoidance Action Claims, liabilities are not recorded for the conditional obligations associated with Disputed General Unsecured Claims and Term Loan Avoidance Action Claims. Rather, the beneficial interests of GUC Trust beneficiaries in the residual assets of the GUC Trust are reflected in Net Assets in Liquidation of the GUC Trust in the financial statements.

The accompanying (a) condensed statement of net assets in liquidation at March 31, 2017, which has been derived from audited financial statements, and (b) the unaudited interim condensed financial statements have been prepared in accordance with the instructions to Form 10-Q and, therefore, do not include all information and footnotes required by U.S. GAAP for complete financial statements. The GUC Trust believes all adjustments, normal and recurring in nature, considered necessary for a fair presentation have been included. The changes in net assets in liquidation for the three months ended June 30, 2017 are not necessarily indicative of the changes in net assets that may be expected for the full year. The GUC Trust believes that, although the disclosures contained herein are adequate to prevent the information presented from being misleading, the accompanying interim condensed financial statements should be read in conjunction with the GUC Trust's financial statements for the year ended March 31, 2017 included in Form 10-K filed by the GUC Trust with the Securities and Exchange Commission on May 25, 2017.

The preparation of condensed financial statements in conformity with U.S. GAAP requires the GUC Trust Administrator to make estimates and assumptions that affect the reported amounts of assets and liabilities and are subject to change.

Changes to U.S. GAAP are made by the FASB in the form of accounting standards updates (ASU's) to the FASB's Accounting Standards Codification. The GUC Trust considers the applicability and impact of all ASU's. ASU's not noted herein were assessed and determined to be not applicable.

A reclassification of prior period balances in Note 6 was made to conform to their presentation at June 30, 2017 and March 31, 2017. The balance in the Reserve for Residual Wind-Down Costs was reclassified from Reserves for Expected Costs of Liquidation to Reserves for Residual Wind-Down Claims and Costs.

### 2. Plan of Liquidation

On March 31, 2011, the date the Plan became effective (the "Effective Date"), there were approximately $29,771 million in Allowed General Unsecured Claims. In addition, as of the Effective Date, there were approximately $8,154 million in disputed general unsecured claims which reflects liquidated disputed claims and a Bankruptcy Court ordered distribution reserve for unliquidated disputed claims ("Disputed General Unsecured Claims"), but does not reflect potential Term Loan Avoidance Action Claims. The total aggregate amount of general unsecured claims, both allowed and disputed, asserted against the Debtors, inclusive of the potential Term Loan Avoidance Action Claims, was approximately $39,425 million as of the Effective Date.

Pursuant to the GUC Trust Agreement, holders of Disputed General Unsecured Claims became entitled to receive a distribution of Distributable Cash from the GUC Trust if, and to the extent that, such Disputed General Unsecured Claims became Allowed General Unsecured Claims (such claims, "Resolved Disputed Claims"). Under the GUC Trust Agreement, the GUC Trust Administrator had

Table of Contents

the authority to file objections to such Disputed General Unsecured Claims and such claims could be prosecuted through alternative dispute resolution proceedings, including mediation and arbitration ("ADR Proceedings"), if appropriate. As of June 30, 2017, there were no remaining Disputed General Unsecured Claims. There remained $50.0 million in claim amount that is not associated with any particular claim, but which has been set aside by the GUC Trust Administrator as a general claim contingency. See "Allowed and Disputed Claims" below.

Only one avoidance action, captioned Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al., Adv. Pro. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009) (the "Term Loan Avoidance Action"), was commenced prior to the statutory deadline for commencing such actions. The Term Loan Avoidance Action was commenced by the Official Committee of Unsecured Creditors of Motors Liquidation Company (the "Committee"), and, among other things, seeks the return of approximately $1.5 billion that had been transferred by the Debtors (with funds advanced after the commencement of the Debtors' chapter 11 cases by the United States Treasury and Export Development Canada (together, the "DIP Lenders")) to a consortium of prepetition lenders pursuant to the terms of the order of the Bankruptcy Court. On December 15, 2011, in accordance with the Plan, upon the dissolution of MLC, the Term Loan Avoidance Action was transferred to the Avoidance Action Trust (as defined below). Pursuant to the GUC Trust Agreement, to the extent that Wilmington Trust Company, not in its individual capacity but solely in its capacity as the trustee and trust administrator of the Avoidance Action Trust (the "Avoidance Action Trust Administrator"), is successful in obtaining a recovery by way of judgment or settlement from the defendants to the Term Loan Avoidance Action, such defendants shall receive an Allowed General Unsecured Claim against the GUC Trust in the amount so disgorged to the Avoidance Action Trust (such general unsecured claims "Term Loan Avoidance Action Claims," and together with Resolved Disputed Claims, the "Resolved Allowed Claims").

As described in Part II, Item 1 ("Legal Proceedings"), the Committee, the DIP Lenders and the Avoidance Action Trust have reached a settlement agreement concerning, among other things, the allocation of potential distributable recoveries from the Term Loan Avoidance Action. The Bankruptcy Court approved the settlement agreement in an opinion and order entered on August 24, 2016 (the "Approval Order"). The Approval Order is in effect, but is the subject of an appeal pending before the U.S. District Court for the Southern District of New York. Regardless of the outcome of the pending appeal, no funds reclaimed from the pre-petition lenders in the Term Loan Avoidance Action will be transferred to or otherwise benefit the GUC Trust or be distributed on account of GUC Trust Units.

### GUC Trust Distributable Assets

Pursuant to the terms of the Plan, the Bankruptcy Court authorized the distribution by New GM of 150 million shares of New GM Common Stock, warrants to acquire 136,363,635 newly issued shares of New GM Stock with an exercise price set at $10.00 per share that expired on July 10, 2016 ("New GM Series A Warrants"), and warrants to acquire 136,363,635 newly issued shares of New GM Stock with an exercise price set at $18.33 per share, expiring July 10, 2019 ("New GM Series B Warrants"). Record ownership of the New GM Securities was held by MLC for the benefit of the GUC Trust until the dissolution of MLC on December 15, 2011, at which time record ownership was transferred to the GUC Trust.

As described above, pursuant to the Liquidation Order, during July and August 2015, all of the GUC Trust's holdings of New GM Securities were liquidated and, following such liquidation, the GUC Trust's Distributable Assets principally consist of Distributable Cash. Such Distributable Cash is primarily invested in certain marketable securities as permitted under the GUC Trust Agreement and the balance is held in cash and cash equivalents.

Prior to the liquidation of all its holdings of New GM Common Stock, the GUC Trust received dividends on such New GM Common Stock aggregating $24.7 million. Such dividends are required to be applied to the same purpose as the New GM Common Stock to which such dividends relate. If the portion of Distributable Cash applicable to the proceeds from the liquidation of New GM Common Stock is distributed to holders of subsequently allowed Disputed General Unsecured Claims and GUC Trust Units, then the dividends relating to such Distributable Cash will also be distributed to such holders. If, however, Distributable Cash is appropriated in accordance with the GUC Trust Agreement to fund the costs and liabilities of the GUC Trust, then, in that case, the dividends relating to such Distributable Cash will be applied to such costs and liabilities of the GUC Trust and (just like the appropriated Distributable Cash) will be maintained as Other Administrative Cash (as defined below). Because such dividends are applied to the same purposes as the associated Distributable Cash, any references in this Form 10-Q to Distributable Cash should be understood to include the dividends relating to such Distributable Cash, unless expressly indicated otherwise. The amount of cash and cash equivalents and marketable securities held by the GUC Trust that relates to dividends received by the GUC Trust on New GM Common Stock previously held by the GUC Trust is referred to as Dividend Cash and is included in the amount of cash and cash equivalents and marketable securities held for distribution to GUC Trust beneficiaries that is referred to herein as Distributable Cash (except to the extent of dividends relating to appropriated Distributable Cash that is classified as Other Administrative Cash following such appropriation).

6

Table of Contents

### Funding for GUC Trust Costs of Liquidation

The GUC Trust has incurred and will continue to incur certain costs to liquidate the trust assets and implement the Plan. On or about the Effective Date, pursuant to the Plan, MLC contributed approximately $52.7 million to the GUC Trust to be held and maintained by the GUC Trust Administrator (the "Administrative Fund") for the purpose of paying certain fees and expenses (including certain tax obligations) incurred by the GUC Trust (including fees of the GUC Trust Administrator and the GUC Trust Monitor and the fees and expenses for professionals retained by the GUC Trust), other than the Reporting Costs, as defined below ("Wind-Down Costs"). As of June 30, 2017, the remaining Administrative Fund aggregated $1.8 million (consisting of cash and cash equivalents and marketable securities). Such remaining amount of the Administrative Fund has been designated for the satisfaction of certain specifically identified costs and liabilities of the GUC Trust, and such amount may not be used for the payment of Trust Professionals fees and expenses or other Wind-Down Costs. Pursuant to the GUC Trust Agreement, cash or investments from the Administrative Fund, if any, which remain at the winding up and conclusion of the GUC Trust must be returned to the DIP Lenders.

The GUC Trust Agreement authorized the GUC Trust to liquidate approximately $5.7 million of New GM Securities (the "Initial Reporting Cash") shortly after the Effective Date for the purposes of funding certain fees and expenses of the GUC Trust (the "Reporting Costs"), including those directly or indirectly relating to (i) reports to be prepared and filed by the GUC Trust pursuant to applicable rules, regulations and interpretations of the Securities and Exchange Commission, (ii) the transfer, registration for transfer and certification of GUC Trust Units, (iii) the application by the Committee to the Internal Revenue Service for a private letter ruling regarding the tax treatment of the GUC Trust and the holders of Allowed General Unsecured Claims in respect to the distribution of New GM Securities, and (iv) certain legal proceedings relating to the Term Loan Avoidance Action. The GUC Trust Agreement provides that the Administrative Fund may not be utilized to satisfy any Reporting Costs.

The GUC Trust Agreement provides that, to the extent the GUC Trust Administrator determines that the Administrative Fund is not sufficient to satisfy the current or projected Wind-Down Costs or the Initial Reporting Cash is not sufficient to satisfy the current or projected Reporting Costs, the GUC Trust Administrator, with the approval of the GUC Trust Monitor, is authorized to set aside Distributable Cash from distribution for these purposes. The GUC Trust Administrator may then appropriate such Distributable Cash to fund the Wind-Down Costs and/or Reporting Costs with the required approval of the Bankruptcy Court. Distributable Cash that is set aside and/or appropriated in this manner will not be available for distribution to the beneficiaries of GUC Trust Units, and any appropriation of Distributable Cash (including related Dividend Cash) will be classified as "Other Administrative Cash" under the GUC Trust Agreement. The setting aside (or appropriation) of Distributable Cash, including Dividend Cash, itself is not, and has not been, reflected in the Statement of Net Assets in Liquidation or any of the other financial statements of the GUC Trust. Separate from this process of setting aside (or appropriating) Distributable Cash to satisfy unfunded projected costs and expenses of the GUC Trust, as a matter of financial reporting, the GUC Trust records reserves in its Statement of Net Assets in Liquidation (the source of funding of which is not addressed therein) for all expected costs of liquidation for which there is a reasonable basis for estimation. For this reason, among others, there is not a direct relationship between the amount of such reserves reflected in the Statement of Net Assets in Liquidation and the amount of any Distributable Cash that is set aside (or appropriated) for current or projected costs and expenses of the GUC Trust. Adjustments to the Reserves for Expected Costs of Liquidation as reported in the Statement of Net Assets in Liquidation are recorded only when there is a reasonable basis for estimation of the expected incurrence of additional costs or a reduction in expected costs. For more information regarding the Reserves for Expected Costs of Liquidation reflected in the accompanying Condensed Statement of Net Assets in Liquidation, see Note 6.

Prior to the aforementioned liquidation of all New GM Securities in July and August 2015, the GUC Trust was authorized, with the approval of the GUC Trust Monitor, to set aside from distribution New GM Securities for the funding purposes described above and to sell such set aside New GM Securities with the approval of the Bankruptcy Court. The Bankruptcy Court previously approved in March and December 2012, and again in January 2015, the sale of New GM Securities to fund the then current and projected costs and expenses of the GUC Trust. The March 2012 Bankruptcy Court order also authorized the sale of further New GM Securities aggregating $13.7 million for the purpose of funding certain fees, costs and expenses of the Avoidance Action Trust and the transfer of the sale proceeds to the Avoidance Action Trust (such sale proceeds were so transferred in May 2012). Prior to the aforementioned liquidation of all New GM Securities, sales of New GM Securities to fund projected Wind-Down Costs and Reporting Costs through calendar year 2015 aggregated approximately $61.7 million, including Dividend Cash of $0.2 million and the Initial Reporting Cash (which amounts comprised part of the GUC Trust's Other Administrative Cash). Such securities sold aggregated 1,043,801 shares of New GM Common Stock, 948,887 New GM Series A Warrants and 948,887 New GM Series B Warrants. In December 2015, and again in February 2017, the Bankruptcy Court approved the appropriation of Distributable Cash aggregating approximately $22.0 million to fund the projected costs and expenses of the GUC Trust through calendar year 2017. Such appropriation reduced Distributable Cash and increased Other Administrative Cash. As of June 30, 2017, Other Administrative Cash aggregated $12.3 million (consisting of cash and cash equivalents and marketable securities). To the extent that any of the Other Administrative Cash is not ultimately required and is held by the GUC Trust at the time of its dissolution, such remaining Other Administrative Cash will be distributed by the GUC Trust to holders of GUC Trust Units.

As of June 30, 2017, Distributable Cash of $30.1 million was set aside for projected GUC Trust fees, costs and expenses to be incurred beyond 2017. Accordingly, such Distributable Cash is not available for distribution to the beneficiaries of GUC Trust Units. Set aside and/or appropriated Distributable Cash is reflected in cash and cash equivalents and marketable securities in the Statement of Net Assets in Liquidation until expended.

Table of Contents

### *Funding for Potential Tax Liabilities on Dispositions of New GM Securities, Dividends on New GM Common Stock and Investment Income*

The GUC Trust is subject to U.S. federal income tax on realized net gains from the distribution and sale of New GM Securities (such taxes, "Taxes on Distribution"). The GUC Trust is also subject to U.S. federal income tax on dividends received on New GM Common Stock held by the GUC Trust (such taxes, "Dividend Taxes") and on investment income earned on Distributable Cash (such taxes, "Investment Income Taxes"). The GUC Trust Agreement provides that the Administrative Fund may not be utilized to satisfy any Taxes on Distribution, Dividend Taxes or Investment Income Taxes. As such, the GUC Trust Administrator is authorized, with the approval of the GUC Trust Monitor, to set aside from distribution Distributable Cash in amounts that would be sufficient to satisfy any potential Taxes on Distribution, Dividend Taxes or Investment Income Taxes. Any Distributable Cash that is set aside for Dividend Taxes and Investment Income Taxes is included in the set-aside for Wind-Down Costs described above in "Funding for GUC Trust Costs of Liquidation." The GUC Trust Administrator may appropriate such set aside Distributable Cash to fund any such Taxes on Distribution, Dividend Taxes or Investment Income Taxes with the approval of the GUC Trust Monitor and, with respect to Dividend Taxes and Investment Income Taxes only, with the approval of the Bankruptcy Court. Any Distributable Cash that is appropriated in this manner will not be available for distribution to the beneficiaries of GUC Trust Units, and the appropriation of Distributable Cash (including Dividend Cash) will be classified as "Other Administrative Cash" under the GUC Trust Agreement. Set aside and/or appropriated Distributable Cash is reflected in cash and cash equivalents and marketable securities until expended to pay any Taxes on Distribution, Dividend Taxes or Investment Income Taxes. While any set-aside or appropriated Distributable Cash (including Dividend Cash) is not available for distribution, there is no corresponding liability or reserve related to any such set-aside assets reflected in the Statement of Net Assets in Liquidation or any of the other financial statements of the GUC Trust.

Prior to the liquidation of all New GM Securities in July and August 2015 described above, the GUC Trust was authorized, with the approval of the GUC Trust Monitor, to set aside from distribution New GM Securities to fund potential Taxes on Distribution, Dividend Taxes and Investment Income Taxes and to sell such set aside New GM Securities to fund the Taxes on Distribution, Dividend Taxes or Investment Income Taxes with the approval of the GUC Trust Monitor and, with respect to Dividend Taxes and Investment Income Taxes only, with the approval of the Bankruptcy Court.

During the quarter ended June 30, 2017, the GUC Trust Administrator reviewed the potential Taxes on Distribution, Dividend Taxes and Investment Income Taxes. As a result of such review, the GUC Trust Administrator determined that no Distributable Cash should be set aside for potential Taxes on Distribution, Dividend Taxes or Investment Income Taxes. As a result of the application of Section 505(b) of the Bankruptcy Code, the GUC Trust's federal income tax returns for the year ended March 31, 2016, and all prior years, are no longer subject to examination by the Internal Revenue Service and no income taxes may be assessed for the year ended March 31, 2016, and all prior years. However, the GUC Trust's remaining capital loss carryovers and net operating loss carryovers are still subject to examination by the Internal Revenue Service in subsequent years if those losses, if any, are utilized. Such utilization is not expected as a result of the sale of all previously held New GM Securities in the year ended March 31, 2016, except potentially with respect to any recovery by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM as described in Part II, Item 1 ("Legal Proceedings"), which is not estimable at this time. Accordingly, no income taxes are expected to be paid in the future, except potentially with respect to any taxes due on any recovery on the proposed settlement of the securities class action against New GM, which is not estimable at this time. Any such recovery would only potentially generate an income tax liability in the unlikely event that the GUC Trust is required to recalculate its previously recognized capital gains and losses from the sale and distribution of New GM Securities in prior years using a tax basis determined on December 15, 2011 (when record ownership of the previously held New GM Securities transferred to the GUC Trust from MLC) rather than on March 31, 2011 (when beneficial ownership for a substantial majority of the previously held New GM Securities transferred to the GUC Trust from MLC). See Note 7 and "Critical Accounting Policies and Estimates – Income Taxes" in Item 2 ("Management's Discussion and Analysis") below for more information regarding income taxes and remaining capital and net operating loss carryovers generated in prior years that are still subject to examination by the Internal Revenue Service and which potentially could succeed to Claimants (as defined below pursuant to tax rules) and the material uncertainties associated therewith. The GUC Trust Administrator intends to continue to reevaluate the amount of Distributable Cash set aside on a quarterly basis.

For additional information regarding set aside Distributable Cash, see "Net Assets in Liquidation—Distributable Cash Set Aside from Distribution" in Item 2 ("Management's Discussion and Analysis of Financial Condition and Results of Operations") below.

### *Residual Wind-Down Claims and Costs*

Upon the dissolution of the Debtors, which occurred on December 15, 2011, the GUC Trust became responsible for resolving and satisfying (to the extent allowed) all remaining disputed administrative expenses, priority tax claims, priority non-tax claims and secured claims (the "Residual Wind-Down Claims"). On December 15, 2011, under the Plan, the Debtors transferred to the GUC

Table of Contents

Trust an amount of assets necessary (the "Residual Wind-Down Assets") to satisfy the ultimate allowed amount of such Residual Wind-Down Claims (including certain reasonable litigation defense costs related to the Term Loan Avoidance Action (the "Avoidance Action Defense Costs")), as estimated by the Debtors, and the costs, fees and expenses relating to satisfying and resolving the Residual Wind-Down Claims (the "Residual Wind-Down Costs"). The Residual Wind-Down Assets initially aggregated approximately $42.8 million (which amount consisted of approximately $40.0 million in cash, including approximately $1.4 million designated for the payment of Avoidance Action Defense Costs, and the transferred benefit of approximately $2.8 million in prepaid expenses). To the extent that the Residual Wind-Down Claims and the Residual Wind-Down Costs are less than the Residual Wind-Down Assets, any excess funds will be returned to the DIP Lenders. Also, while not expected at this time, if the GUC Trust Administrator determines that the Residual Wind-Down Assets are not adequate to satisfy the Residual Wind-Down Claims (including the actual amount of Avoidance Action Defense Costs) and Residual Wind-Down Costs, such costs will be satisfied by Other Administrative Cash. If there is no remaining Other Administrative Cash, the GUC Trust Administrator is authorized to, with GUC Trust Monitor approval, set aside and, with Bankruptcy Court approval, appropriate Distributable Cash to cover the shortfall. To the extent that Distributable Cash is set aside and/or appropriated to obtain funding to complete the wind-down of the Debtors, such Distributable Cash will not be available for distribution to the beneficiaries of the GUC Trust. Therefore, the amount of Residual Wind-Down Claims and Residual Wind-Down Costs could reduce the assets of the GUC Trust available for distribution. The setting aside or appropriation of Distributable Cash (including Dividend Cash) itself is not reflected in the Statement of Net Assets in Liquidation or any of the other financial statements of the GUC Trust. Rather, such set aside or appropriated Distributable Cash (including Dividend Cash) is reflected in cash and cash equivalents and marketable securities in the accompanying Condensed Statement of Net Assets in Liquidation until expended. After the GUC Trust has concluded its affairs, any funds remaining that were obtained from the sale of New GM Securities or appropriation of Distributable Cash to fund the wind-down process or the resolution and satisfaction of the Residual Wind-Down Claims will be distributed to the holders of the GUC Trust Units.

As of June 30, 2017, the amount of Avoidance Action Defense Costs incurred to date exceeds the corresponding cash of $1.4 million received by the GUC Trust from MLC on the Dissolution Date by approximately $30.2 million. As a result, new Residual Wind-Down Claims have arisen in the amount of such excess. In April 2017, the GUC Trust entered into a letter agreement with the administrative agent for the prepetition lenders who are the defendants in the Term Loan Avoidance Action, or the Administrative Agent. Such letter agreement provides that the GUC Trust's obligation to pay Avoidance Action Defense Costs of the Administrative Agent is limited to an amount approximating the remaining designated Residual Wind-Down Assets. Such cap on Avoidance Action Defense Costs shall remain in place unless and until the Term Loan Avoidance Action is resolved in full (by final court order or by settlement), which court order or settlement contains a determination that the Administrative Agent was oversecured with respect to the loan which is the subject of the Term Loan Avoidance Action, or otherwise contains a voluntary agreement with the GUC Trust with respect to payment of the Avoidance Action Defense Costs. Accordingly, at this time, the GUC Trust does not expect to incur additional Avoidance Action Defense Costs beyond the remaining designated Residual Wind-Down Assets.

As of June 30, 2017, Residual Wind-Down Assets aggregating $0.3 million were held by the GUC Trust and were recorded in cash and cash equivalents in the accompanying Condensed Statement of Net Assets in Liquidation as of June 30, 2017. There was approximately $0.2 million in expected Residual Wind-Down Claims and Costs against such assets as of June 30, 2017, which are recorded in accounts payable and accrued liabilities in the accompanying Condensed Statement of Net Assets in Liquidation as of June 30, 2017.

In addition to the Residual Wind-Down Assets, the GUC Trust also received on the Dissolution Date approximately $3.4 million in cash from MLC, which amount included: (i) $1.4 million in respect of certain costs, fees and expenses payable under the Plan to the indenture trustees and fiscal and paying agents for the previously outstanding debt of MLC (the "Indenture Trustee / Fiscal and Paying Agent Costs"), and (ii) $2.0 million in respect of Reporting Costs. The funds received were credited to the reserve for expected costs of liquidation. Any unused portion of the funds designated for the Indenture Trustee / Fiscal and Paying Agent Costs must be returned to the DIP Lenders and will not be available for distribution to the holders of GUC Trust Units at the winding up and conclusion of the GUC Trust. As of June 30, 2017, funds designated for the Indenture Trustee / Fiscal and Paying Agents Costs held by the GUC Trust approximated $0.2 million and are recorded in cash and cash equivalents and marketable securities in the accompanying Condensed Statement of Net Assets in Liquidation. None of the approximately $2.0 million in funds designated for Reporting Costs remained as of June 30, 2017.

3. Net Assets in Liquidation

*Description*

Under the GUC Trust Agreement and the Plan, as described more fully in Note 1, the beneficiaries of the GUC Trust are future and, to the extent their liquidating distributions have not yet been paid to them, current holders of Allowed General Unsecured Claims and future and current holders of GUC Trust Units. Assets of the GUC Trust consisting primarily of Distributable Cash (including Dividend Cash) as described in Note 1 are available to be distributed to the Trust Beneficiaries in accordance with the Plan and the GUC Trust Agreement, except to the extent that they are set aside or appropriated for funding the expected costs of liquidation and potential tax liabilities of the GUC Trust. The amounts of net assets in liquidation presented in the accompanying Condensed

Table of Contents

Statements of Net Assets in Liquidation correspond to the amounts of GUC Trust Distributable Assets as of the respective dates, after certain adjustments including reductions for the amounts of set aside Distributable Cash and any appropriated Distributable Cash. GUC Trust Distributable Assets aggregated approximately $466.2 million at June 30, 2017. For additional information, see "Net Assets in Liquidation—Distributable Assets" in Item 2 ("Management's Discussion and Analysis of Financial Condition and Results of Operations") below.

### Cash and Cash Equivalents and Marketable Securities

As of June 30, 2017, cash and cash equivalents and marketable securities aggregated $513.2 million and are comprised of the following:

| (in thousands) | |
|---|---:|
| Distributable Cash (including associated Dividend Cash) | $498,548 |
| Residual Wind-Down Assets | 320 |
| Other Administrative Cash | 12,341 |
| Administrative Fund | 1,735 |
| Funds for Indenture Trustee / Fiscal Paying Agent Costs | 212 |
| Total | $513,156 |

As described in Note 4, as of June 30, 2017, the GUC Trust had accrued liquidating distributions payable aggregating $10.0 million. Such amount includes $7.8 million that was distributable to holders of GUC Trust Units in respect of Excess GUC Trust Distributable Assets as of June 30, 2017. In addition, as described in Note 2, as of June 30, 2017, the amount of Distributable Cash reflected in the table above includes $30.1 million of amounts set aside for projected GUC Trust fees, costs and expenses to be incurred beyond 2017. The aggregate amount of Distributable Cash which was pending distribution or was set aside and was not available for distribution at June 30, 2017 was $40.1 million.

### Potential Recovery in New GM Shareholder Class Action Proposed Settlement

As described in Part II, Item 1 ("Legal Proceedings"), the GUC Trust has filed a proof of claim with the settlement administrator in connection with a proposed settlement of a securities class action against New GM. The amount of potential recovery for the GUC Trust, if any, from such proposed settlement is not estimable at this time.

### Accrued Investment Income on Cash Equivalents and Marketable Securities

As of June 30, 2017 and March 31, 2017, the GUC Trust has accrued approximately $4.5 million and $3.4 million, respectively, of investment income on cash equivalents and marketable securities expected to be earned over the remaining liquidation period in accordance with the liquidation basis of accounting. Such accrual is estimated principally based on forecasted cash outflows and expected returns based on recent yields on Treasury bills in which the marketable securities are invested.

### Potential Distributable Capital and Net Operating Loss Carryovers

As described in "Critical Accounting Policies and Estimates—Income Taxes" in Item 2 ("Management's Discussion and Analysis of Financial Condition and Results of Operations") below, the GUC Trust's unused capital and net operating loss carryovers potentially could succeed to Claimants (as defined below pursuant to tax rules) upon the termination of the GUC Trust. Reference is made thereto for information regarding such potential distributable loss carryovers and the material uncertainties associated therewith.

### Trust Units

As described in Note 1, under the Plan, each holder of an Allowed General Unsecured Claim retains a contingent right to receive, on a pro rata basis, additional Distributable Cash (if and to the extent not required for the satisfaction of previously Disputed General Unsecured Claims or potential Term Loan Avoidance Action Claims, or appropriation for the payment of the expenses or tax liabilities of the GUC Trust). The GUC Trust issues units representing such contingent rights ("GUC Trust Units") at the rate of one GUC Trust Unit per $1,000 of Allowed General Unsecured Claims to each holder of an Allowed General Unsecured Claim, subject to rounding pursuant to the GUC Trust Agreement, in connection with the initial recognition of each Allowed General Unsecured Claim.

The GUC Trust makes quarterly liquidating distributions to holders of GUC Trust Units to the extent that (i)(a) certain previously Disputed General Unsecured Claims asserted against the Debtors' estates or potential Term Loan Avoidance Action Claims are either disallowed or are otherwise resolved favorably to the GUC Trust (thereby reducing the amount of GUC Trust assets reserved for distribution in respect of such asserted or potential claims) or (b) certain Excess GUC Trust Distributable Assets (as defined in the

Table of Contents

GUC Trust Agreement) that were previously set aside from distribution are released in the manner permitted under the GUC Trust Agreement, and (ii) as a result of the foregoing, the amount of Excess GUC Trust Distributable Assets (as defined in the GUC Trust Agreement) as of the end of the relevant quarter exceeds thresholds set forth in the GUC Trust Agreement.

The following table presents the changes during the three months ended June 30, 2017, in the numbers of GUC Trust Units outstanding or which the GUC Trust was obligated to issue:

|  | Trust Units |
|---|---|
| Outstanding or issuable at March 31, 2017 | 31,854,103 |
| Issued during the period | 47 |
| Less: Issuable at beginning of period | (47) |
| Add: Issuable at end of period (1) | 1,350 |
| Outstanding or issuable at June 30, 2017 (2) | 31,855,453 |

(1) The number of GUC Trust Units issuable at any time represents GUC Trust Units issuable in respect of Allowed General Unsecured Claims that were newly allowed during the fiscal quarter.
(2) The number of GUC Trust Units outstanding at any time represents GUC Trust Units issued in respect of Allowed General Unsecured Claims that were allowed in prior periods, including GUC Trust Units held by the GUC Trust for the benefit of (a) holders of Allowed General Unsecured Claims who had not yet supplied information required by the GUC Trust in order to effect the initial distribution to which they are entitled and (b) governmental entities that are precluded by applicable law from receiving distributions of GUC Trust Units.
(3) The number of GUC Trust Units outstanding or issuable at end of the quarter does not equal the amount of Allowed General Unsecured Claims on a 1 to 1,000 basis at the corresponding date because of additional GUC Trust Units that were issued due to rounding.

### Allowed and Disputed Claims

The total cumulative pro rata liquidating distributions ultimately received by Trust Beneficiaries is dependent upon the current amount of Allowed General Unsecured Claims and final resolution of outstanding Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims (as described in Note 2). Disputed General Unsecured Claims at June 30, 2017 reflect a court ordered distribution "set aside" for certain claims filed without a claim amount and other adjustments as ordered by the court or permitted by the Plan. The Disputed General Unsecured Claims may settle at amounts that differ significantly from these amounts and at amounts that differ significantly from the historical pattern at which claims have been settled and allowed in proportion to claims resolved and disallowed. As described in Note 1, prior to the resolution and allowance of Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims, liabilities are not recorded for the conditional obligations associated with Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims. Liquidating distributions payable are recorded in the amount of Distributable Cash (previously the fair value of New GM Securities) to be distributed as of the end of the period in which the Disputed General Unsecured Claims and potential Term Loan Avoidance Claims are resolved as Allowed General Unsecured Claims.

The following table presents a summary of activity with respect to Allowed and Disputed General Unsecured Claims and Term Loan Avoidance Action Claims for the three months ended June 30, 2017:

| (in thousands) | Allowed General Unsecured Claims | Disputed General Unsecured Claims | Term Loan Avoidance Action Claims | Maximum Amount of Unresolved Claims (1) | Total Claim Amount (2) |
|---|---|---|---|---|---|
| Total, March 31, 2017 | $31,854,031 | $ 50,000 | $1,499,204 | $ 1,549,204 | $33,403,235 |
| New Allowed General Unsecured Claims | 1,350 | — | — | — | 1,350 |
| Term Loan Avoidance Action Claims resolved or disallowed | — | — | (3,972) | (3,972) | (3,972) |
| Total, June 30, 2017 | $31,855,381 | $ 50,000 | $1,495,232 | $ 1,545,232 | $33,400,613 |

(1) Maximum Amount of Unresolved Claims represents the sum of Disputed General Unsecured Claims and Term Loan Avoidance Action Claims.
(2) Total Claim Amount represents the sum of Allowed General Unsecured Claims and Maximum Amount of Unresolved Claims.

During the three months ended June 30, 2017, the Avoidance Action Trust reached settlements with certain defendants to the Term Loan Avoidance Action resulting in recoveries to the Avoidance Action Trust of approximately $1.4 million. As a result, corresponding Term Loan Avoidance Action Claims of approximately $1.4 million arose and were allowed under the GUC Trust Agreement.

Table of Contents

As described in Part II, Item 1 ("Legal Proceedings"), certain plaintiffs in litigation associated with General Motors product recalls have filed motions with the Bankruptcy Court seeking authority to file late proofs of claim against the GUC Trust. Were any late proofs of claim to be filed (following receipt of authority to do so from the Bankruptcy Court), additional Disputed General Unsecured Claims would arise.

### 4. Liquidating Distributions

Liquidating distributions in the three months ended June 30, 2017 consisted of the following:

| (in thousands) | Fair Value |
|---|---|
| Distributions during the three months ended June 30, 2017 | $ — |
| Less: Liquidating distributions payable at March 31, 2017 | (9,205) |
| Add: Liquidating distributions payable at June 30, 2017 | 10,011 |
| Total | $ 806 |

The GUC Trust was obligated at June 30, 2017 to distribute Distributable Cash of $10.0 million to the following: (1) holders of GUC Trust Units for excess distributions payable, (2) certain holders of Allowed General Unsecured Claims who had not then satisfied certain informational requirements necessary to effect the distribution to which they are entitled and (3) holders of certain Term Loan Avoidance Action Claims as described in Note 3.

### 5. Fair Value Measurements

Accounting standards require certain assets and liabilities be reported at fair value in the financial statements and provide a framework for establishing that fair value. The framework for determining fair value is based on a hierarchy that prioritizes the inputs and valuation techniques used to measure fair value. The GUC Trust's Cash Equivalents, Marketable Securities, and Liquidating Distributions Payable are presented as provided by this hierarchy.

*Level 1*—In general, fair values determined by Level 1 inputs use quoted prices in active markets for identical assets and liabilities that the GUC Trust has the ability to access.

*Level 2*—Fair values determined by Level 2 inputs use other inputs that are observable, either directly or indirectly. These Level 2 inputs include quoted prices for similar assets or liabilities in active markets, and other inputs such as interest rates and yield curves that are observable at commonly quoted intervals.

*Level 3*—Level 3 inputs are unobservable inputs, including inputs that are available in situations where there is little, if any, market activity for the related asset or liability. These Level 3 fair value measurements are based primarily on management's own estimates using pricing models, discounted cash flow methodologies, or similar techniques taking into account the characteristics of the asset or liability. The GUC Trust had no assets or liabilities that are measured with Level 3 inputs at June 30, 2017 and March 31, 2017.

In instances where inputs used to measure fair value fall into different levels in the above fair value hierarchy, fair value measurements in their entirety are categorized based on the lowest level input that is significant to the valuation. The GUC Trust's assessment of the significance of particular inputs to these fair value measurements requires judgment and considers factors specific to each asset or liability.

The GUC Trust also holds other financial instruments not measured at fair value on a recurring basis, including Accounts Payable and Other Liabilities. The fair value of these liabilities approximates the carrying amounts in the accompanying financial statements due to the short maturity of such instruments.

The following table presents information about the GUC Trust's assets and liabilities measured at fair value on a recurring basis at June 30, 2017 and March 31, 2017, and the valuation techniques used by the GUC Trust to determine those fair values.

**Table of Contents**

| (in thousands) | June 30, 2017 | | | |
| --- | --- | --- | --- | --- |
| | **Level 1** | **Level 2** | **Level 3** | **Total** |
| Assets: | | | | |
| Cash Equivalents: | | | | |
|     Money market funds | $ 1,074 | $ — | $ — | $ 1,074 |
| Marketable Securities: | | | | |
|     U.S. Treasury bills | — | 509,840 | — | 509,840 |
| Total Assets | $ 1,074 | $509,840 | $ — | $510,914 |
| Liabilities: | | | | |
| Liquidating distributions payable | $10,011 | $ — | $ — | $ 10,011 |

| (in thousands) | March 31, 2017 | | | |
| --- | --- | --- | --- | --- |
| | **Level 1** | **Level 2** | **Level 3** | **Total** |
| Assets: | | | | |
| Cash equivalents: | | | | |
|     Money market funds | $ 2,109 | $ — | $ — | $ 2,109 |
| Marketable Securities: | | | | |
|     U.S. Treasury bills | — | 522,452 | — | 522,452 |
| Total Assets | $ 2,109 | $522,452 | $ — | $524,561 |
| Liabilities: | | | | |
| Liquidating distributions payable | $ 9,205 | $ — | $ — | $ 9,205 |

The following are descriptions of the valuation methodologies used for assets and liabilities measured at fair value:

- Due to their short-term liquid nature, the fair value of cash equivalents approximates their carrying value.

- Marketable securities consist of U.S. Treasury bills. Due to their short-term maturities, the fair value of U.S. Treasury bills approximates their carrying value.

- Liquidating distributions payable are valued at the amount of cash that the GUC Trust is obligated to distribute.

The GUC Trust's policy is to recognize transfers between levels of the fair value hierarchy as of the actual date of the event of change in circumstances that caused the transfer. There were no such transfers during the three months ended June 30, 2017 and the year ended March 31, 2017.

## 6. Reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs

The following is a summary of the activity in the reserves for expected costs of liquidation for the three months ended June 30, 2017 and 2016:

| (in thousands) | Three months ended June 30, 2017 | | | |
| --- | --- | --- | --- | --- |
| | **Reserve for Expected Wind-Down Costs** | **Reserve for Expected Reporting Costs** | **Reserve for Indenture Trustee/Fiscal and Paying Agent Costs** | **Total Reserves for Expected Costs of Liquidation** |
| Balance, March 31, 2017 | $ 9,851 | $ 8,827 | $ 225 | $ 18,903 |
| Plus additions to reserves | 3,011 | 26 | — | 3,037 |
| Less liquidation costs incurred: | | | | |
|     Trust professionals | (823) | (742) | — | (1,565) |
|     Trust governance | (708) | (450) | (16) | (1,174) |
|     Other administrative expenses | (14) | (42) | — | (56) |
| Balance, June 30, 2017 | $ 11,317 | $ 7,619 | $ 209 | $ 19,145 |

13

Table of Contents

| (in thousands) | Three months ended June 30, 2016 | | | |
| | Reserve for Expected Wind-Down Costs | Reserve for Expected Reporting Costs | Reserve for Indenture Trustee/Fiscal and Paying Agent Costs | Total Reserves for Expected Costs of Liquidation |
|---|---|---|---|---|
| Balance, March 31, 2016 | $ 16,727 | $ 6,379 | $ 293 | $ 23,399 |
| Plus additions to (reductions in) reserves | (310) | 38 | — | (272) |
| Less liquidation costs incurred: | | | | |
|    Trust professionals | (616) | (518) | — | (1,134) |
|    Trust governance | (756) | (450) | (17) | (1,223) |
|    Other administrative expenses | (18) | (81) | — | (99) |
| Balance, June 30, 2016 | $ 15,027 | $ 5,368 | $ 276 | $ 20,671 |

During the three months ended June 30, 2017, estimates of expected Wind-Down Costs and estimates of expected Reporting Costs increased by $3.0 million and $26,000, respectively. During the three months ended June 30, 2016, estimates of expected Wind-Down Costs and estimates of expected Reporting Costs decreased by $0.3 million and increased by $38,000, respectively. Such revisions in the estimates were recorded as additions to (reductions in) the reserves for expected costs of liquidation in such periods. The GUC Trust has recorded reserves for expected costs of liquidation that represent amounts expected to be incurred over the estimated remaining liquidation period of the GUC Trust for which there was a reasonable basis for estimation as of June 30, 2017.

The amount of liquidation costs that will ultimately be incurred depends both on the time period and on the extent of activities required for the GUC Trust to complete its functions and responsibilities under the Plan and the GUC Trust Agreement. Significant uncertainty remains both as to that time period and as to the extent of those activities. As of June 30, 2017, the recorded reserves for expected costs of liquidation reflect estimated costs for a remaining liquidation period extending through January 2019, which has been estimated predominantly on a modified probability-weighted basis as permitted under U.S. GAAP and which the GUC Trust believes is the most appropriate measurement basis under the circumstances. Where an outcome is estimated to be likely, the likely outcome has been used as the best estimate and no weight has been given to the unlikely outcome. Beginning in the quarter ended December 31, 2016, the remaining liquidation period is dependent predominantly on the estimate of the remaining period of time for resolution of litigation involving certain General Motors vehicle recalls described in Part II, Item 1 ("Legal Proceedings"). During such quarter, developments in such vehicle recall litigation resulted in an extension in the estimated length of time for resolution of such litigation that now exceeds the estimate of the remaining period of time for resolution of the Term Loan Avoidance Action (which previously was the primary determinant). In addition, certain additional estimated time to wind down the GUC Trust following resolution of the litigation is included in the estimated liquidation period. It is possible that future developments in the General Motors vehicle recall litigation, as well as the Term Loan Avoidance Action, could extend the current estimate of such remaining period of time for resolution and, therefore, extend the estimated remaining liquidation period of the GUC Trust beyond January 2019. In addition, certain liquidation costs that are expected to be prepaid by the GUC Trust upon its dissolution have also been estimated and accrued. It is reasonably possible that the GUC Trust's estimates regarding the costs and remaining liquidation period will change in the near term.

The following is a summary of the activity in the reserves for Residual Wind-Down Claims and Costs for the three months ended June 30, 2017 and 2016:

| (in thousands) | 2017 | 2016 |
|---|---|---|
| Balance, beginning of period | $ 966 | $19,957 |
| Plus addition to reserves | 9 | — |
| Less claims allowed during the period | (815) | (2,437) |
| Less costs incurred by trust professionals | (—) | (1) |
| Balance, end of period | $ 160 | $17,519 |

As described in Note 2, in April 2017, the GUC Trust entered into a letter agreement with the Administrative Agent. Such letter agreement provides that the GUC Trust's obligation to pay Avoidance Action Defense Costs of the Administrative Agent is limited to an amount approximating the remaining designated Residual Wind-Down Assets. Such cap on Avoidance Action Defense Costs shall remain in place unless and until the Term Loan Avoidance Action is resolved in full (by final court order or by settlement), which court order or settlement contains a determination that the Administrative Agent was oversecured with respect to the loan which is the subject of the Term Loan Avoidance Action, or otherwise contains a voluntary agreement with the GUC Trust with respect to payment of the Avoidance Action Defense Costs. Accordingly, at this time, the GUC Trust does not expect to incur additional Avoidance Action Defense Costs beyond the remaining designated Residual Wind-Down Assets.

Table of Contents

7. **Income Taxes**

There was no current tax benefit or provision for the three months ended June 30, 2017 and 2016, due to cumulative net operating and capital losses, and no income taxes have been paid by the GUC Trust. There also was no deferred tax benefit or provision in such periods as a result of the establishment of a full valuation allowance against net deferred tax assets at the beginning and end of such periods.

Deferred taxes in the accompanying Condensed Statement of Net Assets in Liquidation at June 30, 2017 are comprised of the following components:

| | |
|---|---:|
| Deferred tax assets: | |
| Reserves for expected costs of liquidation and Residual Wind-Down Claims and Costs | $ 7,645 |
| Net operating and capital loss carryovers | 61,836 |
| Gross deferred tax assets | 69,481 |
| Less: Valuation allowance | (67,704) |
| Deferred tax asset, net of valuation allowance | 1,777 |
| Deferred tax liabilities: | |
| Accrued investment income | (1,777) |
| Gross deferred tax liabilities | (1,777) |
| Net deferred taxes | $ — |

As previously disclosed, during the quarter ended September 30, 2013, the GUC Trust made a determination to file its U.S. federal income tax returns taking the position that beneficial ownership for a substantial majority of New GM Securities was transferred from MLC to the GUC Trust on March 31, 2011, and that the tax basis of such New GM Securities should be determined with reference to the value of such securities on such date, instead of December 15, 2011, when record ownership of the remaining New GM Securities still held by MLC was transferred from MLC to the GUC Trust. For the remaining substantial minority of New GM Securities transferred from MLC to the GUC Trust, the GUC Trust determined that the transfer of beneficial ownership occurred on other dates for which the tax basis should be determined by reference to the value of such securities on such dates. This new tax position resulted in an increased tax basis of the New GM Securities from the prior tax position and, therefore, reduced taxable gains and increased taxable losses on distributions and sales of New GM Securities since March 31, 2011. The new tax position has not been sustained on examination by the Internal Revenue Service as of the date hereof. However, the GUC Trust believes, based on the available evidence and consultation with GUC Trust professionals, that it is more likely than not that the new tax position will be sustained on examination by the Internal Revenue Service based on the technical merits of the position. Accordingly, this new tax position has been recognized in the current and deferred income tax liabilities and the income tax provision in the GUC Trust's financial statements since the quarter ended September 30, 2013.

Following the GUC Trust's determination to utilize the new tax position set forth above, the GUC Trust filed its U.S. federal income tax returns for the years ended March 31, 2013, and thereafter, with the Internal Revenue Service using such new tax position. Such tax returns were accompanied by requests for prompt determination of tax liability pursuant to Section 505(b) of the Bankruptcy Code, and the 60-day statutory notification periods set forth in Section 505(b) of the Bankruptcy Code with respect to the GUC Trust's U.S. federal income tax returns for the year ended March 31, 2016, and prior years, have expired. Accordingly, the tax liabilities set forth in the GUC Trust's U.S. federal income tax returns for the year ended March 31, 2016, and prior years, are no longer subject to examination by the Internal Revenue Service and no income taxes can be assessed for such years. Also, no income taxes are expected to be paid in the future as a result of the liquidation of all the GUC Trust's holdings of New GM Securities during the year ended March 31, 2016, except potentially with respect to any taxes due on any recoveries by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM as described in Part II, Item 1 ("Legal Proceedings"), which is not estimable at this time. Any such recovery would only potentially generate an income tax liability in the unlikely event that the GUC Trust is required to recalculate its previously recognized capital gains and losses from the sale and distribution of New GM Securities in prior years using a tax basis determined on December 15, 2011 (when record ownership of the previously held New GM Securities transferred to the GUC Trust from MLC) rather than on March 31, 2011 (when beneficial ownership for a substantial majority of the previously held New GM Securities transferred to the GUC Trust from MLC).

On June 14, 2017, the GUC Trust filed its U.S. federal income tax return for the year ended March 31, 2017 with the Internal Revenue Service, and requested prompt determination of tax liability pursuant to Section 505(b) of the Bankruptcy Code that same day. As of the date of this Form 10-Q, the GUC Trust has not received notification from the Internal Revenue Service whether or not its income tax return for the year ended March 31, 2017 has been selected for examination.

15

Table of Contents

Remaining capital loss carryovers that were generated in prior years utilizing the new tax position, which aggregate $24.3 million (after expiration on March 31, 2017 of capital loss carryovers of $158.1 million attributable to the year ended March 31, 2012), along with net operating loss carryovers generated through June 30, 2017, aggregating $131.8 million, could be subject to examination by the Internal Revenue Service in subsequent years when those losses, if any, are utilized. The GUC Trust does not expect to utilize any capital or net operating loss carryovers in the future, except with respect to any recovery by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM as described in Part II, Item 1 ("Legal Proceedings"), which is not estimable at this time. The remaining capital loss carryovers begin to expire on March 31, 2018 and the net operating loss carryovers begin to expire on March 31, 2032. These loss carryovers in the aggregate result in a deferred tax asset of $61.8 million (reflected in the table above). As described in "Critical Accounting Policies and Estimates—Income Taxes" in Item 2 ("Management's Discussion and Analysis") below, such loss carryovers potentially could succeed to Claimants (as defined below pursuant to tax rules). Reference is made thereto for information regarding such potential distributable loss carryovers and the material uncertainties associated therewith.

A full valuation allowance against net deferred tax assets aggregating $67.7 million was established as of June 30, 2017 because, as a result of the liquidation of all of the GUC Trust's holdings of New GM Securities, it has been determined that such deferred tax assets are not realizable at this time. Such valuation allowance was increased by $0.4 million from the full valuation allowance against net deferred tax assets established as of March 31, 2017.

### 8. Related Party Transactions

In addition to serving as GUC Trust Administrator, Wilmington Trust Company continues to serve as trustee pursuant to the indentures for certain series of previously outstanding debt of MLC. Wilmington Trust Company has received and may receive in the future certain customary fees in amounts consistent with Wilmington Trust Company's standard rates for such service. The Bankruptcy Court previously approved the creation of a segregated fund for the purposes of funding such fees for Wilmington Trust Company, as well as the other indenture trustees and fiscal and paying agents for previously outstanding debt of MLC. There were no such fees for Wilmington Trust Company in the three months ended June 30, 2017 and 2016.

In addition, Wilmington Trust Company has also entered into certain arrangements with the GUC Trust pursuant to which it or its affiliates have previously received, and may in the future receive, reasonable and customary fees and commissions for services other than services in the capacity of GUC Trust Administrator. Such arrangements include the provision of custodial, investment advisory and brokerage services to the GUC Trust. During the three months ended June 30, 2017 and 2016, the total amount of such fees and commissions was approximately $65,000 and $82,000, respectively.

### Item 2.    Management's Discussion and Analysis

The following addresses material changes in the net assets in liquidation of the Motors Liquidation Company GUC Trust, or the GUC Trust, for its first fiscal quarter ended June 30, 2017. It is intended to be read in conjunction with the condensed financial statements of the GUC Trust included in Item 1 above, which we refer to as the financial statements. For additional information about the purpose and administrative operations of the GUC Trust, see the disclosure in the notes to the financial statements filed with this Form 10-Q and in the Form 10-K filed by the GUC Trust with the Securities and Exchange Commission on May 25, 2017. A glossary of defined terms used in this Form 10-Q is provided under the heading "Glossary" below.

### Overview

The GUC Trust is a successor to Motors Liquidation Company (which dissolved on December 15, 2011), or MLC, for the purposes of Section 1145 of title 11 of the United States Code, or the Bankruptcy Code. The GUC Trust was initially formed on March 30, 2011, for the purposes of implementing the Second Amended Joint Chapter 11 Plan, or the Plan, of MLC and its affiliated debtors-in-possession, or the Debtors, which was filed with the United States Bankruptcy Court for the Southern District of New York, or the Bankruptcy Court, on March 18, 2011. The Plan subsequently became effective on March 31, 2011, or the Effective Date, and, on April 18, 2013, the Bankruptcy Court entered an order granting the GUC Trust's request for entry of a final decree administratively closing each of the Debtors chapter 11 cases other than the chapter 11 case of MLC.

### Functions and Responsibilities of the GUC Trust

The functions and responsibilities of the GUC Trust are governed by the Plan and the Second Amended and Restated Motors Liquidation Company GUC Trust Agreement, dated as of July 30, 2015, or the GUC Trust Agreement. The GUC Trust is administered by Wilmington Trust Company, not in its individual capacity but solely in its capacity as trust administrator and trustee,

16

**Table of Contents**

or the GUC Trust Administrator. As set forth in the GUC Trust Agreement, the activities of the GUC Trust Administrator are overseen by FTI Consulting, Inc., solely in its capacity as trust monitor of the GUC Trust, or the GUC Trust Monitor. Although the GUC Trust has no officers, directors or employees, the GUC Trust Administrator is authorized by the GUC Trust Agreement to engage professionals and other service providers to assist the GUC Trust Administrator in the administration of the GUC Trust. Accordingly, the GUC Trust and GUC Trust Administrator rely on receiving accurate information, reports and other representations from such professionals and service providers and from the GUC Trust Monitor.

Among its other duties and obligations, the GUC Trust is obligated pursuant to the Plan and the GUC Trust Agreement to (i) distribute the assets comprising the corpus of the GUC Trust to satisfy the general unsecured claims against the Debtors that are allowed pursuant to the Plan, or the Allowed General Unsecured Claims, (ii) prosecute and resolve objections to the general unsecured claims against the Debtors that are disputed at a given time, or Disputed General Unsecured Claims, (iii) take all necessary actions to administer the wind-down of the affairs of the Debtors, and (iv) to resolve and satisfy (to the extent allowed) the Residual Wind-Down Claims (as defined below) assumed by the GUC Trust.

*Distributions and Distributable Assets of the GUC Trust*

As of June 30, 2017, the principal assets comprising the corpus of the GUC Trust are holdings of cash and cash equivalents and marketable securities resulting from the liquidation in July and August 2015 of the GUC Trust's previously held (i) shares of common stock of General Motors Company, or the New GM Common Stock, (ii) warrants to acquire shares of New GM Common Stock at an exercise price of $10.00 per share that expired on July 10, 2016, or the New GM Series A Warrants, and (iii) warrants to acquire shares of New GM Common Stock at an exercise price of $18.33 per share, expiring July 10, 2019, or the New GM Series B Warrants. The New GM Series A Warrants and the New GM Series B Warrants are referred to collectively as the New GM Warrants, and the New GM Common Stock and the New GM Warrants are referred to collectively as the New GM Securities.

By order dated July 2, 2015, or the Liquidation Order, the Bankruptcy Court approved the conversion of the GUC Trust's holdings of New GM Securities into cash. To effect such conversion, on July 7, 2015, the GUC Trust converted all of its holdings of New GM Warrants into New GM Common Stock in a cashless exercise. In total, the GUC Trust converted (i) 10,352,556 New GM Series A Warrants into 7,407,155 shares of New GM Common Stock, and (ii) 10,352,556 New GM Series B Warrants into 4,953,635 shares of New GM Common Stock. Thereafter, the GUC Trust sold all of its holdings of New GM Common Stock for net proceeds aggregating $741.7 million, having completed all such sales on August 5, 2015. As a result, all distributions by the GUC Trust thereafter in respect of any Allowed General Unsecured Claims (including in respect of the GUC Trust Units) are made solely in cash.

Pursuant to the Liquidation Order, the proceeds of such liquidations (net of applicable costs, fees, and expenses paid in respect thereof) were allocated to the beneficiaries of the GUC Trust on a pro rata basis in the following manner:

(a)  A GUC Trust beneficiary's entitlement to a particular number of New GM Warrants that were exercised was converted into an entitlement to receive the number of shares of New GM Common Stock into which such New GM Warrants were exercised. Such conversions were 0.71549 shares of New GM Common Stock for each New GM Series A Warrant and 0.47849 shares of Common Stock for each New GM Series B Warrant; and

(b)  A GUC Trust beneficiary's entitlement to a particular number of shares of New GM Common Stock that were liquidated (including the exercised New GM Warrants as set forth above), was converted into an entitlement to receive an amount of cash equal to the weighted average sales price (net of any applicable costs, fees, and expenses paid in respect thereof) of all of the New GM Common Stock sold, multiplied by the number shares of New GM Common Stock to which such GUC Trust beneficiary would otherwise be entitled (including exercised New GM Warrants as set forth above). Such weighted average sales price for the GUC Trust's holdings of New GM Common Stock that were sold subsequent to June 30, 2015 was $31.23 per share.

Following the liquidation described above, the GUC Trust has invested most of the proceeds in certain marketable securities as permitted under the GUC Trust Agreement. The amount of cash and cash equivalents and marketable securities held for distribution to GUC Trust beneficiaries, including Dividend Cash (as defined below) is referred to herein as Distributable Cash.

The Plan, as qualified by the Liquidation Order, generally provides for the distribution of Distributable Cash (including Dividend Cash) to holders of Allowed General Unsecured Claims pro rata by the amount of such claims. In that regard, the Plan provides that each holder of an Allowed General Unsecured Claim will obtain, in addition to an initial distribution of Distributable Cash (including Dividend Cash) in such amount as described below, a contingent right to receive, on a pro rata basis, additional Distributable Cash (including Dividend Cash) (only if and to the extent such Distributable Cash is not required to satisfy new Allowed General Unsecured Claims or to fund the liquidation and administrative costs or income tax liabilities of the GUC Trust) available for distribution to the holders of such rights. Such rights are represented by units of beneficial interests in the GUC Trust, or GUC Trust Units, distributed to holders of Allowed General Unsecured Claims in proportion to the amount of their claims, subject to certain rounding rules set forth in the Plan and the GUC Trust Agreement.

Table of Contents

Prior to the aforementioned liquidation of all its holdings of New GM Common Stock, the GUC Trust received dividends on the New GM Common Stock it held as of the respective record dates aggregating approximately $24.7 million. Such dividends are required to be applied to the same purpose as the New GM Common Stock to which such dividends relate. If the portion of Distributable Cash applicable to the proceeds from the liquidation of New GM Common Stock is distributed to holders of subsequently allowed Disputed General Unsecured Claims, allowed Term Loan Avoidance Action Claims, or GUC Trust Units, then the dividends relating to such Distributable Cash will also be distributed to such holders. If, however, Distributable Cash is appropriated by the GUC Trust in accordance with the GUC Trust Agreement to fund the costs and liabilities of the GUC Trust, then, in that case, the dividends relating to such Distributable Cash will be applied to such costs and liabilities of the GUC Trust and (just like the appropriated Distributable Cash) will be maintained in Other Administrative Cash (as defined below under the heading "Funding for the GUC Trust's Liquidation and Administrative Costs"). Because such dividends are applied to the same purpose as the associated Distributable Cash, any references in this Form 10-Q to Distributable Cash should be understood to include the dividends relating to such Distributable Cash, unless expressly indicated otherwise. The amount of cash and cash equivalents and marketable securities held by the GUC Trust that relates to dividends received by the GUC Trust on New GM Common Stock previously held by the GUC Trust is referred to as Dividend Cash and is included in the amount of cash and cash equivalents and marketable securities held for distribution to GUC Trust beneficiaries that is referred to herein as Distributable Cash (except to the extent of dividends relating to appropriated Distributable Cash that is classified as Other Administrative Cash following such appropriation).

Pursuant to the GUC Trust Agreement, the GUC Trust is required to make quarterly distributions to the holders of Allowed General Unsecured Claims that were allowed during the immediately preceding fiscal quarter. Under the terms of the Plan, the GUC Trust Agreement and the Liquidation Order (and subject to rounding under the Plan), and following the liquidation of the GUC Trust's holdings of New GM Securities in July and August 2015, each $1,000 in amount of such new Allowed General Unsecured Claims is entitled to receive (upon delivery of any information required by the GUC Trust) approximately $296 in cash (which dollar value shifts slightly due to rounding as required by the Plan), which represents the net cash value of the New GM Securities that otherwise would have been distributed to such claimant prior to entry of the Liquidation Order, together with associated cash in lieu of fractional shares and Dividend Cash, as well as one GUC Trust Unit. Such initial distribution includes a pro rata share of Distributable Cash associated with New GM Securities that were distributed as Excess GUC Trust Distributable Assets (as defined below) in respect of GUC Trust Units since the Effective Date of the Plan. Quarterly distributions are made to holders of newly Allowed General Unsecured Claims as promptly as practicable after the first day of the fiscal quarter following the periods ending each March 31, June 30, September 30 and December 31, during the life of the GUC Trust.

In addition to the foregoing, the GUC Trust is required to make quarterly distributions in respect of GUC Trust Units if Excess GUC Trust Distributable Assets at the end of the preceding fiscal quarter exceed certain thresholds set forth in the Trust Agreement. Such distributions in respect of GUC Trust Units, if any, are made as promptly as practicable after the periods ending each March 31, June 30, September 30 and December 31. Excess GUC Trust Distributable Assets means (i) Distributable Cash, including Dividend Cash (only if and to the extent such Distributable Cash (a) is not required for the satisfaction of new Allowed General Unsecured Claims and (b) has not been set aside from distribution to fund potential liquidation and administrative costs or income tax liabilities of the GUC Trust (as described below under "Net Assets in Liquidation—Distributable Cash Set Aside from Distribution") and (ii) Other Administrative Cash available, if any, for distribution to the holders of GUC Trust Units.

As described in "Critical Accounting Policies and Estimates—Income Taxes" below, the GUC Trust's unused Loss Carryovers (as defined below) potentially could succeed to Claimants (as defined below pursuant to tax rules) upon the termination of the GUC Trust. Reference is made thereto for information regarding such potential distributable Loss Carryovers and the material uncertainties associated therewith.

*Funding for the GUC Trust's Liquidation and Administrative Costs*

As of the Effective Date, pursuant to the Plan, MLC funded approximately $52.7 million in cash to the GUC Trust, or the Administrative Fund, to be held and maintained by the GUC Trust Administrator for the purpose of paying certain fees and expenses incurred by the GUC Trust (including the fees and expenses of the GUC Trust Administrator and the GUC Trust Monitor, the fees and expenses of other professionals retained by the GUC Trust, and certain tax obligations), which are referred to as the Wind-Down Costs. The United States Department of the Treasury and the Governments of Canada and Ontario (through Export Development Canada), which are referred to collectively as the DIP Lenders, maintain a lien on the Administrative Fund which relates to certain funds advanced at the commencement of the Debtors' insolvency proceedings. Consequently, pursuant to the GUC Trust Agreement, any cash or investments from the Administrative Fund which remain at the winding up and conclusion of the GUC Trust must be returned to the DIP Lenders. As of June 30, 2017, the remaining Administrative Fund aggregated $1.8 million (consisting of cash and cash equivalents and marketable securities). Such remaining amount of the Administrative Fund has been designated for the satisfaction of certain specifically identified costs and liabilities of the GUC Trust, and such amount may not be used for the payment of Trust Professionals fees and expenses or other Wind-Down Costs. As described above, any cash or investments in the Administrative Fund that remain at the winding up and conclusion of the GUC Trust must be returned to the DIP Lenders.

Table of Contents

The GUC Trust Agreement provides that the Administrative Fund may not be utilized to fund certain specified costs, fees and expenses, which are referred to as Reporting Costs, including those directly or indirectly relating to (i) reports to be prepared and filed by the GUC Trust pursuant to applicable rules, regulations and interpretations of the Securities and Exchange Commission, or the SEC, (ii) the transfer, registration for transfer and certification of GUC Trust Units, (iii) the application by the Committee to the Internal Revenue Service for a private letter ruling regarding the tax treatment of the GUC Trust and the holders of Allowed General Unsecured Claims in respect to the distribution of New GM Securities, and (iv) certain legal proceedings relating to the Term Loan Avoidance Action. In addition, the Administrative Fund cannot be used to fund any current or projected tax liabilities of the GUC Trust, other than those included in the Administrative Fund budget. However, the GUC Trust Agreement does provide the GUC Trust Administrator with the authority to set aside from distribution and appropriate Distributable Cash to fund such Reporting Costs and projected tax liabilities (other than those included in the budget), with the approval of the Bankruptcy Court and/or the GUC Trust Monitor, in each case as described below.

The GUC Trust Agreement affords the GUC Trust Administrator, with the approval of the GUC Trust Monitor, the authority to set aside from distribution Distributable Cash (previously New GM Securities were set aside) in amounts sufficient to satisfy (i) any current or projected Wind-Down Costs of the GUC Trust that exceed the amounts budgeted or were not budgeted in the Administrative Fund, including any U.S. federal income taxes on dividends received by the GUC Trust on New GM Common Stock previously held by the GUC Trust, which are referred to as Dividend Taxes, and any U.S. federal income taxes incurred on investment income earned on Distributable Cash, which are referred to as Investment Income Taxes, (ii) any current or projected Reporting Costs that exceed the then current Reporting and Transfer Cash, or (iii) any current or projected Taxes on Distribution (as defined below). This process is not related to, and is separate from, the process of recognizing any current and deferred income tax liabilities, as well as reserves for expected costs of liquidation in the Statement of Net Assets in Liquidation as a matter of financial reporting, which is only required for expected costs of liquidation for which there is a reasonable basis for estimation under applicable accounting standards. See "Critical Accounting Policies and Estimates — Reserves for Expected Costs of Liquidation" and "—Income Taxes" below. The GUC Trust Administrator reevaluates, on a quarterly basis, the amount of Distributable Cash needed to be set aside from distribution for purposes of funding projected liquidation and administrative costs (including projected Dividend Taxes and Investment Income Taxes) and potential Taxes on Distribution.

The GUC Trust Administrator may appropriate Distributable Cash (previously, New GM Securities were sold) that has been set aside from distribution to fund (with the required approval of the Bankruptcy Court) the current or projected Wind-Down Costs (including any Dividend Taxes and Investment Income Taxes) and Reporting Costs of the GUC Trust, and (with the required approval of only the GUC Trust Monitor) any current and projected Taxes on Distribution of the GUC Trust. The cash and cash equivalents and marketable securities associated with appropriated Distributable Cash (and, previously, sold set aside New GM Securities) are referred to as Other Administrative Cash. Pursuant to the GUC Trust Agreement, any cash and cash equivalents or marketable securities constituting Other Administrative Cash that remain at the winding up and conclusion of the GUC Trust will be distributed to the holders of GUC Trust Units.

Prior to the aforementioned liquidation of all New GM Securities in July and August 2015, the GUC Trust was authorized, with the approval of the GUC Trust Monitor, to set aside from distribution New GM Securities for the funding of Wind-Down Costs and Reporting Costs described above and to sell such set aside New GM Securities with the approval of the Bankruptcy Court. The Bankruptcy Court previously approved in March and December 2012, and again in January 2015, the sale of New GM Securities to fund certain accrued and projected Wind-Down Costs which were in excess of the amounts budgeted in the Administrative Fund for such costs, and certain projected Reporting Costs. Prior to the aforementioned liquidation of all the GUC Trust's holdings of New GM Securities, sales of New GM Securities to fund projected Wind-Down Costs and Reporting Costs through calendar year 2015 aggregated approximately $61.7 million, including Dividend Cash of $0.2 million and approximately $5.7 million expressly authorized by the GUC Trust Agreement to be liquidated shortly after the Effective Date for the purposes of funding certain Reporting Costs, which is referred to as the Initial Reporting Cash. In December 2015 and again in February 2017, the Bankruptcy Court approved the appropriation of Distributable Cash aggregating approximately $22.0 million to fund the projected costs and expenses of the GUC Trust through calendar year 2017. Such appropriations reduced Distributable Cash and increased Other Administrative Cash. As of June 30 2017, approximately $12.3 million remained in Other Administrative Cash and was recorded in cash and cash equivalents and marketable securities in the Condensed Statement of Net Assets in Liquidation as of June 30, 2017.

*Residual Wind-Down Claims and Costs*

In addition to resolving Disputed General Unsecured Claims, the GUC Trust Administrator was required to resolve and satisfy (to the extent allowed) certain disputed administrative expenses, priority tax claims, priority non-tax claims, and secured claims against the Debtors, or the Residual Wind-Down Claims. Upon the dissolution and winding up of MLC on December 15, 2011, or the Dissolution Date, the GUC Trust assumed responsibility for the resolution and satisfaction (to the extent allowed) of such Residual Wind-Down Claims. At that time, MLC transferred to the GUC Trust assets, or the Residual Wind-Down Assets, in an amount sufficient, based upon the Debtors' reasonable estimates, to satisfy the residual Wind-Down Claims and the costs, fees and expenses related to satisfying and resolving the Residual Wind-Down Claims, or the Residual Wind-Down Costs. The Residual Wind-Down

19

Table of Contents

Assets so transferred approximated $42.8 million consisting of approximately $40.0 million in cash (including approximately $1.4 million for the payment of certain defense costs related to the Term Loan Avoidance Action, or Avoidance Action Defense Costs) and the transferred benefit of approximately $2.8 million in prepaid expenses. As of June 30, 2017, the amount of Avoidance Action Defense Costs incurred to date exceeds the corresponding cash received by the GUC Trust from MLC on the Dissolution Date by approximately $30.2 million. As a result, new Residual Wind-Down Claims have arisen in the amount of such excess. In April 2017, the GUC Trust entered into a letter agreement with the administrative agent for the prepetition lenders who are defendants in the Term Loan Avoidance Action, or the Administrative Agent. Such letter agreement provides that the GUC Trust's obligation to pay Avoidance Action Defense Costs of the Administrative Agent is limited to an amount approximating the remaining designated Residual Wind-Down Assets. Such cap on Avoidance Action Defense Costs shall remain in place unless and until the Term Loan Avoidance Action is resolved in full (by final court order or by settlement), which court order or settlement contains a determination that the Administrative Agent was oversecured with respect to the loan which is the subject of the Term Loan Avoidance Action, or otherwise contains a voluntary agreement with the GUC Trust with respect to payment of the Avoidance Action Defense Costs. Accordingly, at this time, the GUC Trust does not expect to incur additional Avoidance Action Defense Costs beyond the remaining designated Residual Wind-Down Assets.

Pursuant to the GUC Trust Agreement and the Plan, the Residual Wind-Down Assets are to be administered in accordance with the GUC Trust Agreement and Plan and are to be used to satisfy and resolve the Residual Wind-Down Claims (including Avoidance Action Defense Costs) and to fund the Residual Wind-Down Costs. Any unused portions of the Residual Wind-Down Assets must be returned to the DIP Lenders and will not be available for distribution to the holders of GUC Trust Units at the winding up and conclusion of the GUC Trust. While not expected at this time, if, collectively, the actual amounts of Residual Wind-Down Claims allowed (including Avoidance Action Defense Costs in excess of the corresponding cash of $1.4 million received by the GUC Trust from MLC on the Dissolution Date) and the Residual Wind-Down Costs exceed the Residual Wind-Down Assets, the GUC Trust Administrator may be required to set aside from distribution and appropriate Distributable Cash to fund the shortfall. Any such appropriation would reduce the amount of Distributable Cash available for distribution to holders of GUC Trust Units.

As of June 30, 2017, Residual Wind-Down Assets aggregating $0.3 million were held by the GUC Trust and were recorded in cash and cash equivalents in the accompanying Condensed Statement of Net Assets in Liquidation as of June 30, 2017. There were approximately $0.2 million in expected Residual Wind-Down Claims and Costs against such assets as of June 30, 2017, which are recorded in accounts payable and accrued liabilities in the accompanying Condensed Statement of Net Assets in Liquidation as of June 30, 2017.

### Other Assets Received from MLC on the Dissolution Date

In addition to the Residual Wind-Down Assets, the GUC Trust also received on the Dissolution Date approximately $3.4 million in cash from MLC, which amount included: (i) approximately $2.0 million designated for Reporting Costs and (ii) approximately $1.4 million designated for reimbursements to indenture trustees and fiscal and paying agents under the Debtors prepetition debt issuances for costs associated with, among other things, administering distributions to registered holders of the debtors' prepetition debt issuances, or Indenture Trustee / Fiscal and Paying Agent Costs. Any unused portion of such funds designated for Indenture Trustee / Fiscal and Paying Agent Costs must be returned to the DIP Lenders and will not be available for distribution to the holders of GUC Trust Units at the winding up and conclusion of the GUC Trust. As of June 30, 2017, funds designated for the Indenture Trustee / Fiscal and Paying Agent Costs of $0.2 million were held by the GUC Trust and are recorded in cash and cash equivalents and marketable securities in the accompanying Condensed Statement of Net Assets in Liquidation as of June 30, 2017. A corresponding amount is recorded in the reserves for expected costs of liquidation in the accompanying Condensed Statement of Net Assets in Liquidation as of June 30, 2017. None of the approximately $2.0 million in funds designated for Reporting Costs remained as of June 30, 2017.

### Income Tax Liabilities for Certain Capital Gains, Investment Income and Dividends on New GM Common Stock

The GUC Trust incurs U.S. federal income tax liabilities on capital gains realized upon (a) the distribution of New GM Securities to holders of Allowed General Unsecured Claims or GUC Trust Units, (b) by sale of New GM Securities or (c) any recoveries by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM as described in Part II, Item 1 ("Legal Proceedings"), unless such capital gains are offset by capital losses, deductible expenses and accumulated net operating losses, which are referred to as Taxes on Distribution. The GUC Trust also incurs U.S. federal income tax liabilities on investment income and dividends received on New GM Common Stock previously held by the GUC Trust, unless such income is offset by deductible expenses and accumulated net operating losses (such income tax liabilities on dividends received on New GM Common Stock and investment income are referred to as Dividend Taxes and Investment Income Taxes, respectively). The GUC Trust records any current taxes payable from such realized net capital gains and interest and dividends (net of deductible operating losses and expenses) and records a deferred tax asset with a corresponding valuation allowance (resulting in no net deferred tax asset) for net capital loss carryovers from the disposition of New GM Securities, along with net operating loss carryovers. A full valuation allowance is recorded because, as a result of the liquidation of all of the GUC Trust's holdings of New

Table of Contents

GM Securities, it has been determined that such deferred tax assets are not realizable at this time. See "Critical Accounting Policies and Estimates —Income Taxes" below. As a result of cumulative capital and net operating losses utilizing the new tax position described below, the GUC Trust has not incurred or paid any income tax liabilities, and, as described below, the GUC Trust does not expect to incur any income tax liabilities in the future, except potentially with respect to any taxes due on any recovery by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM referred to above, which is not estimable at this time.

As previously disclosed, during the quarter ended September 30, 2013, the GUC Trust made a determination to file its U.S. federal income tax returns taking the position that beneficial ownership for a substantial majority of New GM Securities was transferred from MLC to the GUC Trust on March 31, 2011, and that the tax basis of such New GM Securities should be determined with reference to the value of such securities on such date, instead of December 15, 2011, when record ownership of the remaining New GM Securities still held by MLC was transferred from MLC to the GUC Trust. For the remaining substantial minority of New GM Securities transferred from MLC to the GUC Trust, the GUC Trust determined that the transfer of beneficial ownership occurred on other dates for which the tax basis should be determined by reference to the value of such securities on such dates. This new tax position resulted in an increased tax basis of the New GM Securities from the prior tax position and, therefore, reduced taxable gains and increased taxable losses on distributions and sales of New GM Securities since March 31, 2011. The new tax position has not been sustained on examination by the Internal Revenue Service as of the date hereof. However, the GUC Trust believes, based on the available evidence and consultation with GUC Trust professionals, that it is more likely than not that the new tax position will be sustained on examination by the Internal Revenue Service based on the technical merits of the position. Accordingly, this new tax position has been recognized in the current and deferred income tax liabilities and the income tax provision in the GUC Trust's financial statements since the quarter ended September 30, 2013.

Following the GUC Trust's determination to utilize the new tax position set forth above, the GUC Trust filed its U.S. federal income tax returns for the years ended March 31, 2013, and thereafter, with the Internal Revenue Service using such new tax position. Such tax returns were accompanied by requests for prompt determination of tax liability pursuant to Section 505(b) of the Bankruptcy Code, and the 60-day statutory notification periods set forth in Section 505(b) of the Bankruptcy Code with respect to the GUC Trust's U.S. federal income tax returns for the year ended March 31, 2016, and prior years, have expired. Accordingly, the tax liabilities set forth in the GUC Trust's U.S. federal income tax returns for the year ended March 31, 2016, and prior years, are no longer subject to examination by the Internal Revenue Service and no income taxes can be assessed for such years. On June 14, 2017, the GUC Trust filed its U.S. federal income tax return for the year ended March 31, 2017 with the Internal Revenue Service, and requested prompt determination of tax liability pursuant to Section 505(b) of the Bankruptcy Code that same day. As of the date of this Form 10-Q, the GUC Trust has not received notification from the Internal Revenue Service whether or not its income tax return for the year ended March 31, 2017 has been selected for examination. Also, no income taxes are expected to be paid in the future as a result of the liquidation of all the GUC Trust's holdings of New GM Securities during the year ended March 31, 2016, except potentially with respect to any taxes due on any recovery by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM referred to above, which is not estimable at this time. Any such recovery would only potentially generate an income tax liability in the unlikely event that the GUC Trust is required to recalculate its previously recognized capital gains and losses from the sale and distribution of New GM Securities in prior years using a tax basis determined on December 15, 2011 (when record ownership of the previously held New GM Securities transferred to the GUC Trust from MLC) rather than on March 31, 2011 (when beneficial ownership for a substantial majority of the previously held New GM Securities transferred to the GUC Trust from MLC).

### Term Loan Avoidance Action

On July 31, 2009, the Committee commenced a legal action against certain prepetition lenders of the Debtors, styled as Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al. (Adv. Pro. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009)), which is referred to as the Term Loan Avoidance Action. Among other things, the Term Loan Avoidance Action seeks the return of approximately $1.5 billion that had been transferred to a consortium of prepetition lenders of the Debtors, pursuant to the court order approving the debtor-in-possession loans made by the DIP Lenders to MLC. On the Dissolution Date, the Term Loan Avoidance Action was transferred to a trust established for the purpose of holding and prosecuting the Term Loan Avoidance Action, or the Avoidance Action Trust. As described in Part II, Item 1 ("Legal Proceedings"), litigation with respect to the Term Loan Avoidance Action is ongoing. The proper beneficiaries of the proceeds of the Term Loan Avoidance Action has been a matter of dispute, with both the DIP Lenders and the Committee, on behalf of the holders of Allowed General Unsecured Claims, claiming sole rights to such proceeds. Pursuant to the Approval Order (defined above), the Bankruptcy Court has now approved a settlement of this dispute according to which, after the repayment by the Avoidance Action Trust of certain cash advances, any distributable proceeds are to be allocated and paid as follows: 70% to holders of Allowed General Unsecured Claims and 30% to the DIP Lenders. The Approval Order remains subject to a pending appeal to the U.S. District Court for the Southern District of New York. Regardless of the outcome of the appeal, beneficial interests in the Avoidance Action Trust (if any) will remain with the DIP Lenders and the holders of Allowed General Unsecured Claims, rather than beneficiaries of GUC Trust Units.

21

Table of Contents

If Wilmington Trust Company, not in its individual capacity but solely in its capacity as the trustee and trust administrator of the Avoidance Action Trust, which is referred to as the Avoidance Action Trust Administrator, is successful in its prosecution of the Term Loan Avoidance Action, any amounts recovered by the Avoidance Action Trust will, pursuant to the Plan, give rise to Allowed General Unsecured Claims on behalf of the prepetition lenders from which such amounts were recovered (as beneficiaries of the GUC Trust), which we also refer to as Term Loan Avoidance Action Claims. (As used in this Form 10-Q, the amounts of "Disputed General Unsecured Claims" do not include any potential Term Loan Avoidance Action Claims.) During the quarter ended June 30, 2017, the Avoidance Action Trust reached settlements with certain defendants to the Term Loan Avoidance Action resulting in recoveries to the Avoidance Action Trust of approximately $1.4 million. As a result, corresponding Term Loan Avoidance Action Claims of approximately $1.4 million arose and were allowed by the GUC Trust pursuant to the Plan. Unless and until further Term Loan Avoidance Action Claims arise, the potential holders of such claims will not be entitled to receive a distribution from the GUC Trust. However, if and to the extent that such Term Loan Avoidance Action Claims do arise, the holders of such claims will be entitled to receive a distribution from the GUC Trust. As noted above, pursuant to the Plan, no funds reclaimed from the prepetition lenders will be transferred to the GUC Trust or be distributed to holders of GUC Trust Units in respect of such GUC Trust Units. Accordingly, in the event of the successful prosecution of the Term Loan Avoidance Action by the Avoidance Action Trust, a holder of a GUC Trust Unit that does not hold a corresponding Allowed General Unsecured Claim (because such holder received the GUC Trust Unit as a subsequent transferee and not in a direct distribution from the GUC Trust in satisfaction of an Allowed General Unsecured Claim) will potentially have its recovery diluted through the incurrence of Term Loan Avoidance Action Claims by the GUC Trust, without receiving the benefit of any cash recovered pursuant to the Term Loan Avoidance Action.

Pursuant to the Plan, the GUC Trust is obligated to satisfy reasonable Avoidance Action Defense Costs, subject to the right of the GUC Trust or the DIP Lenders to seek disgorgement in accordance with the terms of the Plan. As described under the heading "Residual Wind-Down Claims and Costs" above, the amount of Avoidance Action Defense Costs incurred to date exceeds the amount of Residual Wind-Down Assets received from MLC which was designated for this purpose by approximately $30.2 million. As a result, new Residual Wind-Down Claims have arisen in the amount of such excess. In April 2017, the GUC Trust entered into a letter agreement with the Administrative Agent. Such letter agreement provides that the GUC Trust's obligation to pay Avoidance Action Defense Costs of the Administrative Agent is limited to an amount approximating the remaining designated Residual Wind-Down Assets. Such cap on Avoidance Action Defense Costs shall remain in place unless and until the Term Loan Avoidance Action is resolved in full (by final court order or by settlement), which court order or settlement contains a determination that the Administrative Agent was oversecured with respect to the loan which is the subject of the Term Loan Avoidance Action, or otherwise contains a voluntary agreement with the GUC Trust with respect to payment of the Avoidance Action Defense Costs. At this time, the GUC Trust does not expect to incur additional Avoidance Action Defense Costs beyond the remaining designated Residual Wind-Down Assets.

## Critical Accounting Policies and Estimates

### Liquidation Basis of Accounting

The GUC Trust was created for the purposes described in Note 1 ("Description of Trust and Reporting Policies") to the financial statements and has a finite life. As a result, the GUC Trust has prepared its financial statements on the liquidation basis of accounting in accordance with accounting principles generally accepted in the United States of America (U.S. GAAP). Under the liquidation basis of accounting, assets are stated at their estimated realizable value, which is the non-discounted amount of cash into which an asset is expected to be converted during liquidation, while liabilities continue to be recognized at the amount required by other U.S. GAAP, and are not remeasured to reflect any anticipation that an entity will be legally released from an obligation. Additionally, under the liquidation basis of accounting, a reserve is established for estimated costs expected to be incurred during liquidation. Such costs are accrued when there is a reasonable basis for estimation. An accrual is also made for estimated income or cash expected to be received over the liquidation period to the extent that a reasonable basis for estimation exists. The valuation of assets at realizable value, reserves for Residual Wind-Down Claims and Costs, reserves for expected liquidation costs and the accrual for investment income from marketable securities represent estimates, based on present facts and circumstances known to the GUC Trust Administrator, and are subject to change. These estimates are periodically reviewed and adjusted as appropriate. As described below under the heading "Reserves for Expected Costs of Liquidation," it is reasonably possible that estimates for expected costs of liquidation could change in the near term.

As described in Note 1 ("Description of Trust and Reporting Policies") to the financial statements, the GUC Trust beneficiaries are future and, to the extent their liquidating distributions have not yet been paid to them, current holders of Allowed General Unsecured Claims and future and current holders of GUC Trust Units. As Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims are resolved and allowed and thereby become Allowed General Unsecured Claims, the holders thereof become entitled to receive liquidating distributions of Distributable Cash (including Dividend Cash) and GUC Trust Units pro rata by the amount of such claims. Upon such occurrence, the GUC Trust incurs an obligation to distribute Distributable Cash and, accordingly, liquidating distributions payable are recorded in the amount of Distributable Cash (previously the fair value of New GM Securities) that the GUC Trust is obligated to distribute as of the end of the period in which the Disputed General Unsecured Claims and Term Loan Avoidance Action Claims are resolved as Allowed General Unsecured Claims. Prior to the resolution and allowance

22

Table of Contents

of Disputed General Unsecured Claims and Term Loan Avoidance Action Claims, liabilities are not recorded for the conditional obligations associated with Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims. Rather, the beneficial interests of GUC Trust beneficiaries in the residual assets of the GUC Trust are reflected in Net Assets in Liquidation of the GUC Trust in the financial statements.

Under the liquidation basis of accounting, the GUC Trust presents two principal financial statements: a Statement of Net Assets in Liquidation and a Statement of Changes in Net Assets in Liquidation. In addition, although not required under the liquidation basis of accounting, the GUC Trust also presents a Statement of Cash Flows, in accordance with the requirements of the GUC Trust Agreement.

*Holdings of New GM Securities and Dividends on New GM Common Stock*

The GUC Trust previously held New GM Securities for future distribution in respect of Allowed General Unsecured Claims and the GUC Trust Units, of which some were previously set aside from distribution to fund potential administrative costs and income tax liabilities (including Taxes on Distribution, Dividend Taxes and Investment Income Taxes). The securities held consisted of shares of New GM Common Stock and New GM Warrants. As described above under "Functions and Responsibilities of the GUC Trust –Distributions and Distributable Assets of the GUC Trust," pursuant to the Liquidation Order, the GUC Trust liquidated all of its holdings of New GM Securities during July and August 2015. The GUC Trust valued its holdings in the securities at their fair value based on quoted closing market prices as of the last trading day of the fiscal period.

Dividends received on previously held New GM Common Stock are required to be applied to the same purpose as the New GM Common Stock to which such dividends relate. If the portion of Distributable Cash applicable to the liquidated New GM Common Stock is distributed to holders of subsequently Resolved Allowed Claims and GUC Trust Units, then the dividends relating to such Distributable Cash will also be distributed to such holders. If, however, Distributable Cash is appropriated by the GUC Trust in accordance with the GUC Trust Agreement to fund the costs and liabilities of the GUC Trust, then, in that case, the dividends relating to such appropriated Distributable Cash will be applied to such costs and liabilities of the GUC Trust and (just like the appropriated Distributable Cash) will be maintained in Other Administrative Cash. Because such dividends are applied to the same purpose as the associated Distributable Cash, any references to Distributable Cash should be understood to include the dividends relating to such Distributable Cash, unless expressly indicated otherwise. The amount of cash and cash equivalents and marketable securities held by the GUC Trust that relates to dividends received by the GUC Trust on New GM Common Stock previously held by the GUC Trust is referred to as Dividend Cash and is included in the amount of cash and cash equivalents and marketable securities held for distribution to GUC Trust beneficiaries that is referred to as Distributable Cash (except to the extent of dividends relating to appropriated Distributable Cash that is classified as Other Administrative Cash following such appropriation).

*Cash Equivalents, Marketable Securities and Accrued Investment Income on Cash Equivalents and Marketable Securities*

Cash equivalents consist of balances held in money market funds. Marketable securities consist of short-term investments in U.S. Treasury bills. The GUC Trust has valued these securities at fair value based on carrying value for U.S. Treasury bills where carrying value approximates fair value. Beginning in the quarter ended June 30, 2014, estimated investment income expected to be earned on cash equivalents and marketable securities over the remaining liquidation period is accrued under the liquidation basis of accounting to the extent that a reasonable basis for estimation exists.

*Reserves for Residual Wind-Down Claims and Residual Wind-Down Costs*

Upon the dissolution of MLC, which occurred on December 15, 2011, the GUC Trust became responsible for resolving and satisfying (to the extent allowed) all remaining Residual Wind-Down Claims. On the date of dissolution of the Debtors, the Debtors transferred to the GUC Trust Residual Wind-Down Assets in an amount necessary to satisfy the ultimate allowed amount of such Residual Wind-Down Claims (including certain Avoidance Action Defense Costs) and the Residual Wind-Down Costs, as estimated by the Debtors. A corresponding amount was recorded in the reserves for Residual Wind-Down Claims and Costs. Prior to execution of the letter agreement with the Administrative Agent described above, such reserves were increased for expected increases in Avoidance Action Defense for which there was a reasonable basis for estimation and that were expected to exceed the recorded reserves. Should the Residual Wind-Down Claims and the Residual Wind-Down Costs be less than the Residual Wind-Down Assets, any excess funds will be returned to the DIP Lenders. While not expected at this time, if, collectively, the actual amounts of Residual Wind-Down Claims allowed and the Residual Wind-Down Costs exceed the Residual Wind-Down Assets, the GUC Trust Administrator may be required to set aside from distribution and appropriate Distributable Cash to fund the shortfall. Any such appropriation would reduce the amount of Distributable Cash (including Dividend Cash) available for distribution to holders of GUC Trust Units.

Table of Contents

*Reserves for Expected Costs of Liquidation*

Under the liquidation basis of accounting, the GUC Trust is required to estimate and accrue the costs associated with implementing the Plan and distributing the GUC Trust's distributable assets. These costs, described as Wind-Down Costs and Reporting Costs in Note 2 ("Plan of Liquidation") to the financial statements, consist principally of professional fees, costs of governance, and other administrative expenses. These amounts may vary significantly due to, among other things, the time and effort required to complete all distributions under the Plan. The GUC Trust has recorded reserves for expected costs of liquidation that represent estimated costs to be incurred over the remaining liquidation period of the GUC Trust for which there is a reasonable basis for estimation. The amount of liquidation costs that will ultimately be incurred depends both on the period of time and on the extent of activities required for the GUC Trust to complete its functions and responsibilities under the Plan and the GUC Trust Agreement. Significant uncertainty remains both as to that time period and as to the extent of those activities. As of June 30, 2017, such remaining liquidation period extends through January 2019 and has been estimated predominantly on a modified probability-weighted basis, which the GUC Trust believes is the most appropriate measurement basis under the circumstances. Where an outcome is estimated to be likely, the likely outcome has been used as the best estimate and no weight has been given to the unlikely outcome. Beginning in the quarter ended December 31, 2016, the remaining liquidation period is dependent predominantly on the estimate of the remaining period of time for resolution of litigation involving certain General Motors vehicle recalls described in Part II, Item 1 ("Legal Proceedings"). During such quarter, developments in such vehicle recall litigation resulted in an extension in the estimated length of time for resolution of such litigation that now exceeds the estimate of the remaining period of time for resolution of the Term Loan Avoidance Action (which previously was the primary determinant). In addition, certain additional estimated time to wind down the GUC Trust following resolution of the litigation is included in the estimated liquidation period. It is possible that future developments in the General Motors vehicle recall litigation, as well as the Term Loan Avoidance Action, could extend the current estimate of such remaining period of time for resolution and, therefore, extend the estimated remaining liquidation period of the GUC Trust beyond January 2019. In addition, certain liquidation costs that are expected to be prepaid by the GUC Trust upon its dissolution have also been estimated and accrued.

As the GUC Trust incurs liquidation costs, the reserves are released to offset the costs incurred and a liability to the service provider is recognized as an accounts payable or accrued liability until paid. In addition, because the GUC Trust only records reserves for expected costs for which there is a reasonable basis for estimation under applicable U.S. GAAP, additional costs may be identified from time to time for which additional reserves must be recorded. As such costs are identified, the GUC Trust records an increase to its reserves and charges such increase as an addition to such reserves in the Condensed Statement of Changes in Net Assets in Liquidation.

The process of recording reserves for expected costs of liquidation as a matter of financial reporting is separate and distinct from the process by which Distributable Cash is set aside from distribution for the purposes of funding projected costs of liquidation. Such projected costs are generally estimated on a more conservative (i.e., more inclusive) basis and include contingencies that are not permitted to be accrued in reserves for expected costs of liquidation under applicable U.S. GAAP. For a more complete description of the process of setting aside Distributable Cash to fund projected costs and potential liabilities of the GUC Trust, see "Functions and Responsibilities of the GUC Trust—Funding for the GUC Trust's Liquidation and Administrative Costs" above and "Net Assets in Liquidation—Distributable Cash Set Aside from Distribution" below.

*Income Taxes*

The GUC Trust is considered to be a Disputed Ownership Fund pursuant to Treasury Regulation Section 1.468B-9. Because all of the assets that have been transferred to the GUC Trust are passive investments, the GUC Trust is taxed as a Qualified Settlement Fund (or QSF) pursuant to Treasury Regulation Section 1.468B-9(c)(1)(ii). The QSF tax status of the GUC Trust was approved by the Internal Revenue Service in a private letter ruling issued on March 2, 2011. In general, a QSF computes taxable income in the same manner as a corporation but pays Federal income tax using trust income tax rates on its modified gross income. Modified gross income includes gross income pursuant to Internal Revenue Code Section 61, less administrative expenses, certain losses from the sale, exchange or worthlessness of property, and net operating losses. In general, a Disputed Ownership Fund taxed as a QSF does not recognize gross income on assets transferred to it; therefore, the GUC Trust has not recognized gross income on the transfer of assets from MLC.

The GUC Trust generates gross income in the form of interest and dividend income (including dividends received on its previous holdings of New GM Common Stock) and recognizes capital gains and/or losses upon its disposition of New GM Securities and by any recovery by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM as described in Part II, Item 1 ("Legal Proceedings"), which are reduced by administrative expenses and accumulated net operating and capital losses, to compute modified gross income. As the GUC Trust is taxable for federal income tax purposes, a current income tax liability or asset, if any, is recognized for estimated taxes payable or receivable for the year. Deferred tax liabilities and assets are recognized for the estimated future tax effects of temporary differences between financial reporting and tax accounting. Deferred tax assets are reviewed for recoverability and valuation allowances are provided as necessary.

Table of Contents

The GUC Trust is not subject to state income taxes under current law. Accordingly, no current or deferred state income tax liabilities and assets are recorded.

The process of recognizing deferred tax assets and liabilities and any current income taxes payable as a matter of financial reporting is separate and distinct from the process by which any Distributable Cash is set aside from distribution for the purposes of funding potential income tax liabilities. Any such potential income tax liabilities are generally estimated on a more conservative (i.e., more inclusive) basis and may include amounts of potential income tax liabilities beyond the amounts that are permitted to be recorded under applicable accounting standards. For a more complete description of the process of setting aside Distributable Cash to fund projected costs and potential income tax liabilities of the GUC Trust, see "Net Assets in Liquidation—New GM Securities Set Aside from Distribution" below.

The GUC Trust recognizes the tax benefit from an uncertain tax position only if it is more likely than not that the tax position will be sustained on examination by the taxing authority, based on the technical merits of the position, review of available evidence and consultation with GUC Trust professionals. The GUC Trust's tax liability with respect to its federal income tax returns for the year ended March 31, 2016, and all prior years, are no longer subject to examination as a result of the application of Section 505(b) of the Bankruptcy Code. On June 14, 2017, the GUC Trust filed its U.S. federal income tax return for the year ended March 31, 2017 with the Internal Revenue Service, and requested prompt determination of tax liability pursuant to Section 505(b) of the Bankruptcy Code that same day. As of the date of this Form 10-Q, the GUC Trust has not received notification from the Internal Revenue Service whether or not its income tax return for the year ended March 31, 2017 has been selected for examination. However, the amounts shown in the schedule below, which include remaining capital loss carryovers as of March 31, 2017, along with net operating loss carryovers generated through March 31, 2017, could be subject to examination by the Internal Revenue Service in subsequent years if those losses are utilized. It is not expected that such losses will be utilized in the future, except potentially with respect to any recovery by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM referred to above, which is not estimable at this time. As of June 30, 2017, there are no known items which would result in a significant accrual for uncertain tax positions.

As of March 31, 2017, the GUC Trust had capital loss carryovers and net operating loss carryovers (or together, the Loss Carryovers) for which the GUC Trust had not taken a deduction in the amounts set forth below, scheduled by the year the losses were incurred. These amounts reflect the Loss Carryovers shown on the federal income tax returns filed by the GUC Trust, which have not been examined by the Internal Revenue Service, as follows:

| Taxable Year Ended | Net Operating Loss Carryovers | Capital Loss Carryovers |
|---|---|---|
| March 31, 2012 | $ 38,010,940 | $158,137,284 |
| March 31, 2013 | 32,127,804 | 22,634,652 |
| March 31, 2014 | 14,322,084 | — |
| March 31, 2015 | 1,760,845 | 1,673,927 |
| March 31, 2016 | 15,276,154 | — |
| March 31, 2017 | 27,596,235 | — |
| Total | $ 129,094,062 | $182,445,863 |

As of the quarter ended September 30, 2015, the GUC Trust had disposed of all of its capital assets. Accordingly, the GUC Trust does not expect to recognize any additional capital gains or losses going forward, except potentially with respect to any recovery by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM referred to above, which is not estimable at this time. In general, capital losses may be carried forward by corporations for five years after such losses were incurred (or the Five Year Rule) and may be carried forward indefinitely by non-corporate persons. The capital loss carryovers of $158,137,284 attributable to the year ended March 31, 2012 are no longer available for utilization by the GUC Trust under the Five Year Rule. Net operating losses generally may be carried forward for 20 years after such losses are incurred.

Loss Succession Rule

Under Treasury Regulations Section 1.468B-9(c)(6) (or the Loss Succession Rule), upon termination of the GUC Trust, each GUC Trust Claimant (as defined below pursuant to tax regulations) is entitled to succeed to and take into account a portion of any unused (vs. unexpired) Loss Carryovers of the GUC Trust. The Loss Succession Rule provides that, in order to determine the portion of such Loss Carryovers to which each Claimant will succeed, such Loss Carryovers must be allocated among GUC Trust Claimants in proportion to the value of the GUC Trust assets distributable to each such Claimant. For purposes of the rules that govern Disputed Ownership Funds, a claimant (or a Claimant) is defined as a person who claims ownership of, in whole or in part, property immediately before and immediately after such property is transferred to a Disputed Ownership Fund. Accordingly, under the Loss Succession Rule, a person is generally eligible to succeed to the GUC Trust's Loss Carryovers if the person (i) receives a distribution of GUC Trust assets upon the GUC Trust's termination and (ii) qualifies as a Claimant with respect to the GUC Trust.

Table of Contents

The mechanics of the Loss Succession Rule, as applied to the GUC Trust and the holders of GUC Trust Units, are unclear in several respects. The following discussion describes one possible interpretation of the rules. However, it is possible that the Internal Revenue Service will take a position that differs from that described below. As previously disclosed, the GUC Trust had initiated preliminary discussions with the Internal Revenue Service regarding the Loss Succession Rule, but, at this time, those discussions are not being pursued. Holders of GUC Trust Units should consult their own tax advisors about the application of the Loss Succession Rule upon the termination of the GUC Trust in light of their particular circumstances.

Termination of the GUC Trust

It is generally expected that all holders of GUC Trust Units on the final distribution date will receive a distribution of Excess GUC Trust Distributable Assets. The rules that govern Disputed Ownership Funds do not address when a Disputed Ownership Fund is considered to terminate for purposes of the Loss Succession Rule. One possible interpretation of the Loss Succession Rule is that the GUC Trust will be considered to terminate when the GUC Trust distributes all of its remaining assets to the holders of GUC Trust Units (i.e., on the final distribution date). Under this interpretation, all holders of GUC Trust Units would be considered to receive a distribution of GUC Trust assets upon the termination of the GUC Trust. At this time, the GUC Trust is not able to predict with any certainty when a final distribution may occur or when the GUC Trust will be terminated.

Allocation of Loss Carryovers

The rules that govern Disputed Ownership Funds do not address how the Loss Succession Rule should apply when Claimants are permitted to transfer their interests in a Disputed Ownership Fund. Because the GUC Trust Units are transferrable, it is not possible for the GUC Trust to determine which holders of GUC Trust Units may constitute Claimants for purposes of the Loss Succession Rule at any given time. Accordingly, upon its termination, the GUC Trust will not be in a position to provide an allocation of the GUC Trust's Loss Carryovers among GUC Trust Claimants and/or holders of GUC Trust Units. As of June 30, 2017, there were 31,855,453 GUC Trust Units outstanding and $31.9 billion of Allowed General Unsecured Claims.

In addition, because the GUC Trust computes its taxable income in the same manner as a corporation, it is unclear whether, and if so, to what extent, the Five Year Rule might affect the amount of unused capital loss carryovers to which GUC Trust Claimants may succeed under the Loss Succession Rule.

*Use of Estimates*

The preparation of financial statements on a liquidation basis in conformity with U.S. GAAP requires the use of estimates and assumptions that affect reported amounts of assets and liabilities. These estimates are subject to known and unknown risks, uncertainties and other factors that could materially impact the amounts reported and disclosed in the financial statements and related footnotes. Significant estimates include the anticipated amounts and timing of future cash flows for estimated investment income expected to be received, expected liquidation costs, expected Avoidance Action Defense Costs, and fair value of marketable securities. Actual results could differ from those estimates.

**Statement of Changes in Net Assets in Liquidation**

During the three months ended June 30, 2017, net assets in liquidation decreased by approximately $1.8 million, from approximately $488.2 million to approximately $486.4 million, principally as a result of additions of $3.0 million to the reserves for expected costs of liquidation and distributions of $0.8 million, partly offset by investment income of $2.0 million. As described in "Liquidation and Administrative Costs" below, the increase in the reserves for expected costs of liquidation of $3.0 million is associated with an addition of $3.0 million in estimated administrative expenses related to a potential settlement of litigation involving certain General Motors vehicle recalls described in Part II, Item 1 ("Legal Proceedings").

There was no income tax provision or benefit during the three months ended June 30, 2017, as a result of cumulative net operating and capital losses and the establishment of a full valuation allowance against net deferred tax assets at the beginning and end of such periods. As a result of the liquidation of all of the GUC Trust's holdings of New GM Securities, it has been determined that the deferred tax assets are not realizable at this time. See "Functions and Responsibilities of the GUC Trust—Income Tax Liabilities for Certain Capital Gains, Investment Income and Dividends on New GM Common Stock" above and Note 7 ("Income Taxes") to the financial statements.

Table of Contents

**Liquidation and Administrative Costs**

As discussed above under "Critical Accounting Policies and Estimates," under the liquidation basis of accounting, the GUC Trust was required upon its establishment to record reserves in respect of its expected costs associated with implementing the Plan and distributing the GUC Trust's distributable assets. These costs consist principally of professional fees, governance costs and other liquidation and administrative costs.

Under U.S. GAAP, these reserves may be established only to the extent there is a reasonable basis for their estimation. From time to time, as additional costs are identified and for which there is reasonable basis for estimation, the GUC Trust records an increase to its reserves for expected costs of liquidation and charges such increase as an addition to reserves for expected costs of liquidation in the Statement of Changes in Net Assets in Liquidation. As costs are actually incurred by the GUC Trust, such costs reduce the previously recorded reserves for expected costs of liquidation by the amount of such incurred costs, with no further effect on the Statement of Changes in Net Assets in Liquidation.

The GUC Trust's reserves for liquidation and administrative costs (recorded in conformity with U.S. GAAP) are allocable into the following categories:

- reserve for expected Wind-Down Costs, corresponding to expenditures to be made out of the Administrative Fund and, following the depletion of the Administrative Fund, Other Administrative Cash (see "Functions and Responsibilities of the GUC Trust—Funding for the GUC Trust's Liquidation and Administrative Costs");

- reserve for expected Reporting Costs, corresponding to expenditures to be made out of Other Administrative Cash (see "Functions and Responsibilities of the GUC Trust—Funding for the GUC Trust's Liquidation and Administrative Costs"); and

- reserve for Indenture Trustee / Fiscal and Paying Agent Costs, corresponding to expenditures to be made out of the cash received by the GUC Trust from MLC on the Dissolution Date (see "Functions and Responsibilities of the GUC Trust—Other Assets Received from MLC on the Dissolution Date").

In addition, the GUC Trust maintains reserves for Residual Wind-Down Claims and Costs, corresponding to expenditures to be made out of Residual Wind-Down Assets and, following the depletion of such assets, Other Administrative Cash (see "Functions and Responsibilities of the GUC Trust—Residual Wind-Down Claims and Costs."

As described in greater detail under "Functions and Responsibilities of the GUC Trust" above and "Liquidity and Capital Resources" below, unused portions of certain of the assets associated with the foregoing reserves are required to be returned to the DIP Lenders upon the winding up and dissolution of the GUC Trust. Therefore, such assets are not available to fund costs of liquidation and administration or any income tax liabilities of the GUC Trust, and are also not available for distribution to the holders of Allowed General Unsecured Claims or GUC Trust Units. See "Functions and Responsibilities of the GUC Trust—Funding for the GUC Trust's Liquidation and Administrative Costs," "Functions and Responsibilities of the GUC Trust—Residual Wind-Down Claims" and "Functions and Responsibilities of the GUC Trust—Other Assets Received from MLC on the Dissolution Date."

As of June 30, 2017, the GUC Trust had approximately $19.1 million in reserves for liquidation and administrative costs that are estimated to be incurred through the winding up and conclusion of the GUC Trust, compared to approximately $18.9 million in reserves as of March 31, 2017. The following table summarizes in greater detail the changes in such reserves during the three months ended June 30, 2017:

| (in thousands) | Reserve for Expected Wind-Down Costs | | Reserve for Expected Reporting Costs | | Reserve for Indenture Trustee/Fiscal and Paying Agent Costs | | Total Reserves for Expected Costs of Liquidation | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | Three months ended June 30, 2017 | | | | |
| Balance, March 31, 2017 | $ | 9,851 | $ | 8,827 | $ | 225 | $ | 18,903 |
| Plus additions to reserves | | 3,011 | | 26 | | — | | 3,037 |
| Less liquidation costs incurred: | | | | | | | | |
| Trust professionals | | (823) | | (742) | | — | | (1,565) |
| Trust governance | | (708) | | (450) | | (16) | | (1,174) |
| Other administrative expenses | | (14) | | (42) | | — | | (56) |
| Balance, June 30, 2017 | $ | 11,317 | $ | 7,619 | $ | 209 | $ | 19,145 |

Reserves for expected costs of liquidation were increased approximately $3.0 million during the three months ended June 30, 2017, in order to reflect increases in expected Wind-Down Costs of $3.0 million and expected Reporting Costs of $26,000.

**Table of Contents**

The increase in expected Wind-Down Costs during the three months ended June 30, 2017, is associated with an addition of $3.0 million in estimated administrative expenses related to a potential settlement of litigation involving certain General Motors vehicle recalls described in Part II, Item 1 ("Legal Proceedings"). In comparison, reserves were decreased approximately $0.3 million during the three months ended June 30, 2016, in order to reflect a decrease in expected Wind-Down Costs of $0.3 million and an increase in expected Reporting Costs of $38,000. The changes in expected Wind-Down Costs and expected Reporting Costs during the three months ended June 30, 2016, are primarily associated with estimated fee changes for ongoing costs of services provided by GUC Trust professionals.

Reserves for expected costs of liquidation were reduced by the amount of liquidation and administrative costs incurred during the three months ended June 30, 2017. Trust professional costs incurred during the three months ended June 30, 2017 were approximately $1.6 million, as compared to approximately $1.1 million for the three months ended June 30, 2016. The increase of $0.5 million from three-month period to period is due to increases in Wind-Down Costs and expected Reporting Costs charged to the reserve. Trust Governance Costs incurred were approximately $1.2 million during each of the three months ended June 30, 2017 and 2016. Other administrative costs during the three months ended June 30, 2017 were approximately $56,000, as compared to approximately $99,000 for the three months ended June 30, 2016. For additional information regarding the components of each category of costs, see "Functions and Responsibilities of the GUC Trust—Funding for the GUC Trust's Liquidation and Administrative Costs," "Functions and Responsibilities of the GUC Trust—Residual Wind-Down Claims" and "Functions and Responsibilities of the GUC Trust—Other Assets Received from MLC Trust on the Dissolution Date."

The foregoing reserves represent future costs of the GUC Trust for which there is a reasonable basis for estimation as of June 30, 2017, and, therefore, are recorded under the liquidation basis of accounting in accordance with U.S. GAAP. It is reasonably possible, however, that additional costs will be incurred, for which there was not a reasonable basis for estimation as of June 30, 2017. In particular, as of June 30, 2017, the recorded reserves for expected costs of liquidation reflect estimated costs for a remaining liquidation period extending through January 2019, which date, beginning in the quarter ended December 31, 2016, is dependent predominantly on the estimate of the remaining period of time for resolution of litigation involving certain General Motors vehicle recalls described in Part II, Item 1 ("Legal Proceedings"). During such quarter, developments in such vehicle recall litigation resulted in an extension in the estimated length of time for resolution of such litigation that now exceeds the estimate of the remaining period of time for resolution of the Term Loan Avoidance Action (which previously was the primary determinant). In addition, certain additional estimated time to wind down the GUC Trust following resolution of the litigation is included in the estimated liquidation period. This end date of the remaining liquidation period has been estimated predominantly on a modified probability-weighted basis as permitted under U.S. GAAP and which the GUC Trust believes is the most appropriate measurement basis under the circumstances. Where an outcome is estimated to be likely, the likely outcome has been used as the best estimate and no weight has been given to the unlikely outcome. In addition, certain liquidation costs that are expected to be prepaid by the GUC Trust upon its dissolution have also been estimated and accrued. It is possible that future developments in the General Motors vehicle recall litigation, as well as the Term Loan Avoidance Action, could extend the current estimate of such remaining period of time for resolution and, therefore, extend the estimated remaining liquidation period of the GUC Trust beyond January 2019.

The amount of liquidation costs that will ultimately be incurred depends both on the length of the remaining liquidation period and on the extent of activities required for the GUC Trust to complete its functions and responsibilities under the Plan and the GUC Trust Agreement. Significant uncertainty remains both as to that time period and as to the extent of those activities. It is reasonably possible that the GUC Trust's estimates regarding the remaining liquidation period and the expected costs of liquidation will change in the near term.

If the funds available for each of the foregoing categories of costs are not sufficient to satisfy any of the costs in that category, the GUC Trust will be required to appropriate a portion of Distributable Cash in order to meet its additional obligations for those costs. Any such appropriation will result in a lesser amount of Distributable Cash available for distribution to holders of GUC Trust Units.

The process of recognizing reserves for expected costs of liquidation as a matter of financial reporting is separate and distinct from the process by which Distributable Cash is set aside from distribution for the purposes of funding projected costs of liquidation, which are generally estimated on a more conservative (i.e., more inclusive) basis and include contingencies that are not permitted to be recognized under applicable accounting standards. As described in further detail below, certain amounts of Distributable Cash have already been set aside from distribution for the purposes of meeting such potential additional obligations, as well as expected additional Avoidance Action Costs. However, the amounts set aside from distribution are neither reflected in nor a part of the financial statements included elsewhere in this Form 10-Q because the process of setting aside such assets is not related to the process of recording, as a matter of financial reporting in the Statement of Net Assets in Liquidation, reserves for expected costs of liquidation or any current and deferred income tax liabilities. See "Critical Accounting Policies and Estimates—Income Taxes," "—Reserves for Expected Costs of Liquidation" above and "Net Assets in Liquidation—Distributable Cash Set Aside from Distribution" below.

Table of Contents

For additional information regarding the reserves described above, see Note 2 ("Plan of Liquidation") and Note 6 ("Reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs") to the financial statements.

**Net Assets in Liquidation**

*Disputed Claims*

The following table presents a summary of the activity in Allowed and Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims for the three months ended June 30, 2017:

| (in thousands) | Allowed General Unsecured Claims | Disputed General Unsecured Claims | Term Loan Avoidance Action Claims | Maximum Amount of Unresolved Claims (1) | Total Claim Amount (2) |
|---|---|---|---|---|---|
| Total, March 31, 2017 | $31,854,031 | $   50,000 | $1,499,204 | $ 1,549,204 | $33,403,235 |
| New Allowed General Unsecured Claims | 1,350 | — | — | — | 1,350 |
| Term Loan Avoidance Action Claims resolved or disallowed | — | — | (3,972) | (3,972) | (3,972) |
| Total, June 30, 2017 | $31,855,381 | $   50,000 | $1,495,232 | $ 1,545,232 | $33,400,613 |

(1)   Maximum Amount of Unresolved Claims represents the sum of Disputed General Unsecured Claims and Term Loan Avoidance Action Claims.

(2)   Total Claim Amount represents the sum of Allowed General Unsecured Claims and Maximum Amount of Unresolved Claims.

During the three months ended June 30, 2017, the Avoidance Action Trust reached settlements with certain defendants to the Term Loan Avoidance Action resulting in recoveries to the Avoidance Action Trust of approximately $1.4 million. As a result, corresponding Term Loan Avoidance Action Claims of approximately $1.4 million arose and were allowed under the GUC Trust Agreement.

As described in Part II, Item 1 ("Legal Proceedings"), certain plaintiffs in litigation associated with General Motors product recalls have filed motions with the Bankruptcy Court seeking authority to file late proofs of claim against the GUC Trust. Were any late proofs of claim to be filed (following receipt of authority to do so from the Bankruptcy Court), additional Disputed General Unsecured Claims would arise.

Table of Contents

*Distributable Assets*

The table below summarizes the activity in New GM Securities prior to their liquidation and Distributable Cash that comprises the GUC Trust's distributable assets, including the numbers of New GM Securities and amount of Distributable Cash previously distributed, as well as the amount of Distributable Cash available for distribution to holders of GUC Trust Units as of June 30, 2017 (in thousands):

| | New GM Common Stock | New GM Series A Warrants | New GM Series B Warrants | Distributable Cash (including Dividend Cash) |
|---|---|---|---|---|
| Distributable Assets as of Effective Date (March 31, 2011) | 150,000 | 136,364 | 136,364 | $ — |
| Dividends received on New GM Common Stock | — | — | — | 24,746 |
| Prior distributions (1) | (137,299) | (124,817) | (124,817) | (245,750) |
| Prior sales to fund GUC Trust costs and Avoidance Action Trust funding obligation | (1,313) | (1,194) | (1,194) | (170) |
| Prior liquidation of New GM Securities | (11,388) | (10,353) | (10,353) | 741,701 |
| Prior appropriation of Distributable Cash to fund GUC Trust liquidation and administrative costs | — | — | — | (21,978) |
| Holdings as of June 30, 2017 | — | — | — | 498,549 |
| Less: Distributions payable at June 30, 2017 (2) | | | | (10,011) |
| Add: Distributions payable to holders of GUC Trust Units as of June 30, 2017 | | | | 7,768 |
| Less: Amounts set aside from distribution to fund projected GUC Trust costs and Avoidance Action Defense Costs | | | | (30,128) |
| Distributable Assets as of June 30, 2017 (3) | | | | $ 466,178 |

(1) The numbers of New GM Securities and the amount of Distributable Cash shown as distributed include sales for (a) cash distributions to governmental entities to the extent such governmental entities requested such sales and demonstrated to the satisfaction of the GUC Trust Administrator that such governmental entities were precluded by applicable law from receiving distributions of New GM Securities and (b) fractional amounts of New GM Securities, in lieu of which the GUC Trust was required pursuant to the GUC Trust Agreement to distribute cash, subject to certain minimum thresholds.

(2) Distributions Payable includes Distributions Payable in respect of excess distributions payable to holders of GUC Trust Units and new Allowed General Unsecured Claims (including both (a) Allowed General Unsecured Claims that were newly allowed during the quarter ended June 30, 2017, and (b) Allowed General Unsecured Claims that were allowed in prior fiscal periods, but for which the holders of such claims had not yet supplied information required by the GUC Trust in order to effect the distribution to which they are entitled.

(3) Distributable Assets reflects the amounts of Distributable Cash and Dividend Cash shown as "GUC Trust Distributable Assets" on the report included as Exhibit 99.1 to the Form 8-K filed by the GUC Trust with the SEC on July 21, 2017. Such Distributable Cash and associated Dividend Cash have been set aside for potential distribution in respect of current Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims as of June 30, 2017. To the extent that such claims are resolved in favor of the GUC Trust, Distributable Cash and associated Dividend Cash may become available for distribution to holders of GUC Trust Units in future periods. The amount of Distributable Cash and associated Dividend Cash set out above as "Distributable Assets" does not directly relate to Net Assets in Liquidation or any other number appearing in the GUC Trust's financial statements prepared in accordance with U.S. GAAP.

As described above under the heading "Disputed Claims," as of June 30, 2017, there were approximately $31.9 billion in Allowed General Unsecured Claims. In respect of such claims, the GUC Trust had previously distributed in the aggregate 137,298,736 shares of New GM Common Stock, 124,817,263 New GM Series A Warrants and 124,817,263 New GM Series B Warrants and $245.8 million of Distributable Cash. In addition, the GUC Trust was obligated to distribute as of June 30, 2017, $10.0 million of Distributable Cash. Such amount includes $7.8 million that was distributable to holders of GUC Trust Units in respect of Excess GUC Trust Distributable Assets as of June 30, 2017.

*Distributable Cash Set Aside from Distribution*

Overview of Distributable Cash Set Aside from Distribution

In addition to distributions of Distributable Cash, which are reflected as reductions to the GUC Trust net assets in its financial statements, the GUC Trust also, from time to time, sets aside Distributable Cash for potential future appropriation to fund projected liquidation and administrative costs, as well as any potential income tax liabilities, including Dividend Taxes, Investment Income Taxes and Taxes on Distribution. Distributable Cash that is set aside from distribution by the GUC Trust is not deducted from the net assets in liquidation of the GUC Trust in its financial statements unless and until such set aside Distributable Cash is appropriated and expended. Distributable Cash set aside from distribution is segregated by the GUC Trust for such specific purposes and is not available for distribution to holders of GUC Trust Units or other claimants unless and to the extent that the GUC Trust later determines that the set aside Distributable Cash is no longer needed to fund those specific purposes.

Table of Contents

This process is not related to, and is separate from, the process of recording any current and deferred income tax liabilities and reserves for expected costs of liquidation in the Statement of Net Assets in Liquidation, as a matter of financial reporting. As a matter of financial reporting, income tax liabilities and reserves for expected costs of liquidation must be determined in accordance with generally accepted accounting principles applicable to the GUC Trust. By contrast, the estimates of projected costs and potential liabilities for which the GUC Trust may set aside Distributable Cash are generally made on a more conservative (i.e., more inclusive) basis and include contingencies and may include amounts of potential income tax liabilities that are not permitted to be recognized under applicable accounting standards. See "Critical Accounting Policies and Estimates—Income Taxes," "—Reserves for Expected Costs of Liquidation" above.

As of June 30 ,2017, the distributable assets of the GUC Trust available for distribution to holders of GUC Trust Units consisted of Distributable Cash of approximately $466.2 million (including Dividend Cash), after deducting the amounts of Distributable Cash (including Dividend Cash) (i) set aside from distribution to fund additional projected liquidation and administrative costs of the GUC Trust (as described below under the heading "Set Aside Calculations Relating to Projected Liquidation and Administrative Costs, Dividend Taxes and Investment Income Taxes") and (ii) set aside for distributions payable in respect of newly Allowed General Unsecured Claims and Allowed General Unsecured Claims that were allowed in prior fiscal periods, but for which the holders of such claims had not yet supplied information required by the GUC Trust in order to effect the distributions to which they are entitled. Such Distributable Cash has been set aside for potential distribution in respect of current Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims. To the extent such claims are resolved in favor of the GUC Trust, Distributable Cash (including Dividend Cash) may become available for distribution to holders of GUC Trust Units in future periods.

Prior to the liquidation of all the GUC Trust's holdings of New GM Securities in July and August 2015, New GM Securities were set aside to fund projected liquidation and administrative costs and potential income tax liabilities as described below.

<u>Set Aside Calculations Relating to Projected Liquidation and Administrative Costs, Including Dividend Taxes and Investment Income Taxes</u>

The GUC Trust Administrator reevaluates, on a quarterly basis, the amount of Distributable Cash (including Dividend Cash) needed to be set aside from distribution for purposes of funding projected liquidation and administrative costs, including any Dividend Taxes and Investment Income Taxes. This determination is made on a basis different than that used to calculate reserves for financial statement purposes. Under the current methodology, the amount to be set aside is equal to the estimates of unfunded projected liquidation and administrative costs (including any Dividend Taxes and Investment Income Taxes). Prior to the liquidation of all of the GUC Trust's holdings of New GM Securities, estimates of unfunded projected liquidation and administrative costs (including any Dividend Taxes and Investment Income Taxes) were converted into the number of New GM Securities to be set aside from distribution by dividing such estimates by the trailing twelve-month average closing prices for the New GM Securities. A corresponding amount of Dividend Cash associated with the set-aside New GM Securities was also set aside from distribution.

For the quarter ended June 30, 2017, as a result of the standard quarterly reevaluations described above, the estimate of unfunded projected liquidation and administrative costs (including Dividend Taxes and Investment Income Taxes) was increased by $0.3 million to $30.1 million. Such increase was primarily related to a net increase in expected Wind-Down Costs. Accordingly, as of June 30, 2017, the GUC Trust had set aside from distribution Distributable Cash of $30.1 million for the purposes of funding future projected liquidation and administrative costs of the GUC Trust. Such amount was sufficient to fully fund projected liquidation and administrative costs of the GUC Trust, as estimated by the GUC Trust Administrator at June 30, 2017.

<u>Set Aside Calculations Relating to Potential Taxes on Distribution</u>

In addition to reevaluating the amount of Distributable Cash (including Dividend Cash) to be set aside from distribution to fund projected liquidation and administrative costs, including any Dividend Taxes and Investment Income Taxes, the GUC Trust Administrator also reevaluates, on a quarterly basis, the amount of Distributable Cash needed to be set aside from distribution to fund potential income tax liabilities on net realized gains from the disposition of New GM Securities, which are referred to as Taxes on Distribution. The current methodology for calculating such set aside estimates potential Taxes on Distribution by applying the applicable U.S. federal income tax rate to net realized capital gains that are still subject to examination by the Internal Revenue Service, less current period tax deductible expenses and future tax deductible expenses. Such realized capital gains are computed using a tax basis for the New GM Securities based on the date of transfer of record ownership of the New GM Securities to the GUC Trust from MLC on December 15, 2011, and the tax basis of the New GM Common Stock received for the exercise of the New GM Warrants pursuant to the Liquidation Order. However, as a result of the application of Section 505(b) of the Bankruptcy Code, the GUC Trust's federal income tax returns for the year ended March 31, 2016, and all prior years, are no longer subject to examination and no income taxes may be assessed for the year ended March 31, 2016, and all prior years. In addition, while the GUC Trust's remaining capital losses (based on the tax basis of previously held New GM Securities for financial reporting purposes) and net operating losses are still subject to examination by the Internal Revenue Service in subsequent years if those losses are utilized, such utilization is not expected as a result of the sale of all New GM Securities in the year ended March 31, 2016, except potentially with respect to any recovery by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class

Table of Contents

action against New GM as described in Part II, Item 1 ("Legal Proceedings"), which is not estimable at this time. Accordingly, no income taxes are expected to be paid in the future, except potentially with respect to any income taxes due on any recovery on the proposed settlement of the securities class action against New GM, which is not estimable at this time. Any such recovery would only potentially generate an income tax liability in the unlikely event that the GUC Trust is required to recalculate its previously recognized capital gains and losses from the sale and distribution of New GM Securities in prior years using a tax basis determined on December 15, 2011 (when record ownership of the previously held New GM Securities transferred to the GUC Trust from MLC) rather than on March 31, 2011 (when beneficial ownership for a substantial majority of the previously held New GM Securities transferred to the GUC Trust from MLC). Further, if any income taxes on any such recovery were to become payable, it is anticipated that such income taxes would be funded from the proceeds of such recovery. As a result, beginning with the quarter ended September 30, 2016 and as of June 30, 2017, the GUC Trust Administrator determined that no Distributable Cash should be set aside for potential Taxes on Distribution (or Dividend Taxes and Investment Income Taxes) at this time.

The GUC Trust's calculation of the amount of any Distributable Cash needed to be set aside from distribution to fund such potential Taxes on Distribution was made using a different methodology than that used to calculate any current and deferred taxes for financial statement purposes. As described above, in estimating potential Taxes on Distribution, the current set aside methodology calculates realized capital gains using the tax basis of the New GM Securities on December 15, 2011 with respect to any tax return years that are still subject to examination. By contrast, in calculating any current and deferred taxes for purposes of financial reporting under applicable U.S. GAAP, the GUC Trust calculates realized capital gains using the tax basis of the New GM Securities for financial reporting purposes, which is based on the date of transfer of beneficial ownership of the New GM Securities to the GUC Trust from MLC (which occurred on March 31, 2011 for a substantial majority of the previously held New GM Securities).

It is the view of the GUC Trust Administrator, after consultation with the GUC Trust Monitor and other professionals retained by the GUC Trust, that the calculation methodologies described above, on the basis of which Distributable Cash (including Dividend Cash) is set aside from distribution, generally estimate a different projected liquidation and administrative costs and potential liabilities of the GUC Trust on a conservative basis. Accordingly, it is the view of the GUC Trust Administrator and the GUC Trust Monitor that the Distributable Cash currently set aside from distribution to fund such costs and liabilities would be sufficient to satisfy such obligations of the GUC Trust as of the date of this Form 10-Q. However, there can be no assurance that the amount of Distributable Cash set aside will be sufficient to fund such costs and liabilities as they are actually incurred. In addition, there can be no assurance that, as a result of future evaluations, additional Distributable Cash will not need to be set aside or appropriated to fund additional costs and liabilities, beyond those that are currently included in the GUC Trust's estimates, in particular as a result of changes in the GUC Trust's estimates of projected costs and potential liabilities. See "Liquidity and Capital Resources" below.

*GUC Trust Units*

The following table presents the changes during the three months ended June 30, 2017, in the numbers of GUC Trust Units outstanding or which the GUC Trust was obligated to issue:

|  | Trust Units |
|---|---:|
| Outstanding or issuable at March 31, 2017 | 31,854,103 |
| Issued during the period | 47 |
| Less: Issuable at beginning of period | (47) |
| Add: Issuable at end of period (1) | 1,350 |
| Outstanding or issuable at June 30, 2017 (2) (3) | 31,855,453 |

(1)   The number of GUC Trust Units issuable at any time represents GUC Trust Units issuable in respect of Allowed General Unsecured Claims that were newly allowed during the fiscal quarter.

(2)   The number of GUC Trust Units outstanding at any time represents GUC Trust Units issued in respect of Allowed General Unsecured Claims that were allowed in prior periods, including GUC Trust Units held by the GUC Trust for the benefit of (a) holders of Allowed General Unsecured Claims who had not yet supplied information required by the GUC Trust in order to effect the initial distribution to which they are entitled and (b) governmental entities that are precluded by applicable law from receiving distributions of GUC Trust Units and New GM Securities.

(3)   The number of GUC Trust Units outstanding or issuable at end of year does not equal the amount of Allowed General Unsecured Claims on a 1 to 1,000 basis at the corresponding date because of additional GUC Trust Units that were issued due to rounding.

**Liquidity and Capital Resources**

The GUC Trust's sources of liquidity are principally the funds it holds for the payment of liquidation and administrative costs, and to a significantly lesser degree, the earnings on such funds invested by it. In addition, as a result of the liquidation of all the GUC

Table of Contents

Trust's holdings of New GM Securities during the quarter ended September 30, 2015, the GUC Trust holds Distributable Cash for distribution to GUC Trust beneficiaries. The GUC Trust holds such funds primarily in U.S. Treasury bills, as permitted by the Plan and the GUC Trust Agreement.

During the three months ended June 30, 2017, the GUC Trust's holdings of cash and cash equivalents decreased approximately $1.0 million from approximately $4.3 million to approximately $3.3 million. The decrease was primarily due to cash paid for liquidation and administrative costs of $3.2 million, and cash paid for Residual Wind-Down Claims and Costs of $11.5 million, largely offset by cash from the sale of marketable securities in excess of reinvestments of $12.6 million and interest income received on such marketable securities of $0.9 million.

During the three months ended June 30, 2017, the funds invested by the GUC Trust in marketable securities decreased approximately $12.6 million, from approximately $522.4 million to approximately $509.8 million. The decrease was due primarily to the sale of marketable securities to fund the payments described above during the period. The GUC Trust earned approximately $0.9 million in interest income on such investments during the period.

As of June 30, 2017, the GUC Trust held approximately $513.2 million in cash and cash equivalents and marketable securities. Of such amount, approximately $498.6 million relates to Distributable Cash (including Dividend Cash), a portion of which the GUC Trust Administrator is permitted to set aside from distribution and to appropriate with the approval of the Bankruptcy Court or Trust Monitor, as applicable, in order to fund additional costs and any income tax liabilities (including Dividend Taxes, Investment Income Taxes and Taxes on Distribution) as they become due. Included in Distributable Cash at June 30, 2017, is approximately $12.9 million of Dividend Cash. As described above, Dividend Cash will be distributed to holders of subsequently Resolved Allowed Claims and GUC Trust Units in respect of Distributable Cash that they receive, except to the extent such dividends are in respect of Distributable Cash that is appropriated by the GUC Trust in accordance with the GUC Trust Agreement to fund the GUC Trust's liquidation and administrative costs, any income tax liabilities or shortfalls in Residual Wind-Down Assets.

As of June 30, 2017, Distributable Cash (including Dividend Cash) held by the GUC Trust was set aside as follows: (a) $10.0 million for liquidating distributions payable as of that date, and (b) $30.1 million to fund projected liquidation and administrative costs. See "Net Assets in Liquidation—Distributable Assets" above.

In addition to Distributable Cash (including Dividend Cash), the GUC Trust held $14.6 million in cash and cash equivalents and marketable securities at June 30, 2017, representing funds held for payment of costs of liquidation and administration and other liabilities. Of that amount, approximately $2.3 million (comprising approximately $0.3 million of the remaining Residual Wind-Down Assets, approximately $1.8 million of the remaining Administrative Fund and approximately $0.2 million in remaining funds designated for the Indenture Trustee / Fiscal and Paying Agent Costs) is required by the GUC Trust Agreement to be returned, upon the winding-up of the GUC Trust, to the DIP Lenders to the extent such funds are not utilized to satisfy designated Wind-Down Costs, Residual Wind-Down Claims and Costs, Avoidance Action Defense Costs and Indenture Trustee / Fiscal Paying Agent Costs. Cash and cash equivalents and marketable securities remaining in the Administrative Fund have been designated for the satisfaction of certain specifically identified costs and liabilities of the GUC Trust, and such amounts may not be used for the payment of GUC Trust professionals' fees and expenses or other Wind-Down Costs. Such amounts will not at any time be available for distribution to the holders of the GUC Trust Units. The balance of cash and cash equivalents and marketable securities of approximately $12.3 million is available for the payment of liquidation and administrative costs of the GUC Trust, and would be available in the future for distribution to the holders of the GUC Trust Units, if not otherwise used to satisfy those GUC Trust obligations. See "Functions and Responsibilities of the GUC Trust" above.

There is no assurance that additional amounts of Distributable Cash will not be required to be set aside from distribution and appropriated to fund additional costs and income tax liabilities, beyond what the GUC Trust Administrator has already set aside. Any appropriation of Distributable Cash that occurs to fund such obligations will result in a lesser amount of Distributable Cash available for distribution to holders of GUC Trust Units. In addition, as described above under the headings "Functions and Responsibilities of the GUC Trust—Other Assets Received from MLC on the Dissolution Date," a portion of the GUC Trust's assets are currently segregated pursuant to the GUC Trust Agreement for the satisfaction of certain other specified costs. If such assets are insufficient to fund such other specified costs for any reason, the GUC Trust Administrator will similarly be required to set aside from distribution and appropriate additional amounts of Distributable Cash in order to fund such shortfall.

## Forward-Looking Statements

This Form 10-Q contains forward-looking statements about the assets, financial condition and prospects of the GUC Trust. Actual results could differ materially from those indicated by the forward-looking statements because of various risks and uncertainties, including, without limitation, the resolution of the Disputed General Unsecured Claims, the outcome of and the ultimate recovery on the Term Loan Avoidance Action, any related incurrence of Allowed General Unsecured Claims, the ultimate outcome of the Motions to Enforce litigation, the GUC Trust's incurrence of professional fees, tax liabilities and other expenses in connection

Table of Contents

with administration of the GUC Trust, economic conditions, changes in tax and other governmental rules and regulations applicable to the GUC Trust, and other risks. Some of these risks and uncertainties are beyond the ability of the GUC Trust to control, and in many cases, risks and uncertainties that could cause actual results to differ materially from those indicated by the forward-looking statements cannot be predicted. When used in this Form 10-Q, the words "believes," "estimates," "plans," "expects," "intends," and "anticipates" and similar expressions are intended to identify forward-looking statements.

## Glossary

The capitalized terms used in this Form 10-Q but not otherwise defined shall have the respective meanings set forth below. For additional information on any of the matters relating to such terms, see the disclosure in the notes to the financial statements filed with this Form 10-Q and in the Form 8-K filed by the GUC Trust with the Securities and Exchange Commission on June 12, 2012.

"Administrative Agent" means JPMorgan Chase Bank, N.A. in its capacity as administrative agent for various lenders party to the Term Loan.

"Administrative Fund" means the cash contributed to the GUC Trust to be held and maintained by the GUC Trust Administrator for the purpose of paying the Wind-Down Costs.

"ADR Proceedings" means alternative dispute resolution proceedings, including mediation and arbitration.

"Allowed General Unsecured Claims" means the general unsecured claims against the Debtors that are allowed at any given time.

"Approval Order" means the opinion and order entered on August 24, 2016 by the Bankruptcy Court approving the settlement agreement reached by the Committee, the DIP Lenders and the Avoidance Action Trust concerning, among other things, the allocation of potential distributable recoveries from the Term Loan Avoidance Action.

"Avoidance Action Defense Costs" means certain reasonable costs, fees and expenses which the GUC Trust is obligated to satisfy relating to defending the Term Loan Avoidance Action, subject to the right of the GUC Trust to seek disgorgement in accordance with the terms of the Plan.

"Avoidance Action Trust" means the trust established under the Plan for the purpose of holding and prosecuting the Term Loan Avoidance Action.

"Avoidance Action Trust Administrator" means Wilmington Trust Company, not in its individual capacity but solely in its capacity as the trustee and trust administrator of the Avoidance Action Trust.

"Bankruptcy Code" means title 11 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

"Claimant" means, for purposes of the rules that govern Disputed Ownership Funds, a person who claims ownership of, in whole or in part, property immediately before and immediately after such property is transferred to a Disputed Ownership Fund.

"Closing Date" means July 10, 2009, the date on which the sale of substantially all of the assets of Old GM pursuant to the MSPA was completed.

"Committee" means the Official Committee of Unsecured Creditors of the Debtors appointed by the Office of the United States Trustee in the chapter 11 cases of the Debtors.

"Committee Summary Judgment Motion" means the Motion of Official Committee of Unsecured Creditors for Partial Summary Judgment (Docket No. 24) filed by the Committee on July 1, 2010, seeking a ruling in favor of the Committee with respect to the perfection of the UCC Collateral.

"Cross-Motions for Summary Judgment" means the Committee Summary Judgment Motion and the JPMorgan Summary Judgment Motion.

"Debtors" means MLC and its affiliated debtors and debtors-in-possession.

Table of Contents

"DIP Credit Agreement" means the Debtor-In-Possession Credit Agreement, dated as of July 10, 2009, by and among MLC, as borrower, the guarantors named therein, the U.S. Treasury, as lender, and the Governments of Canada and Ontario, through Export Development Canada, as lenders.

"DIP Lenders" means the United States Department of Treasury and the Governments of Canada and Ontario, through Export Development Canada.

"Disputed General Unsecured Claims" means the general unsecured claims against the Debtors that are disputed at a given time and does not include any potential Term Loan Avoidance Action Claims.

"Dissolution Date" means December 15, 2011, the date that MLC filed a Certificate of Dissolution with the Secretary of State of Delaware and was dissolved.

"Distributable Cash" means the amount of cash and cash equivalents and marketable securities held for distribution to GUC Trust beneficiaries and includes Dividend Cash.

"Dividend Cash" means the amount of cash and cash equivalents and marketable securities held by the GUC Trust that relates to dividends received by the GUC Trust on New GM Common Stock then held, or previously held, by the GUC Trust.

"Dividend Taxes" means federal income taxes incurred in respect of dividends received by the GUC Trust on New GM Common Stock previously held by the GUC Trust.

"Five Year Rule" means the five year period after capital losses are incurred for which such losses may be carried forward by corporations under U.S. tax rules.

"Effective Date" means March 31, 2011, the date that the Plan became effective.

"Equitable Mootness Finding" means the holding of the Bankruptcy Court in the Threshold Issues Decision and the Threshold Issues Judgment that the plaintiffs in the Ignition Switch Economic Loss Actions and the Ignition Switch Personal Injury Actions may seek authorization to file late claims in the bankruptcy cases of Old GM, but that any such claims as against the GUC Trust are "equitably moot" (that is, fashioning relief for the plaintiffs against the GUC Trust would be "impractical, imprudent and therefore inequitable"), and thus the assets of the GUC Trust cannot be used to satisfy such claims.

"Excess GUC Trust Distributable Assets" means (i) New GM Securities (or Distributable Cash) and Dividend Cash associated with such New GM Securities (only if and to the extent such New GM Securities (or Distributable Cash) and Dividend Cash (a) are not required for the satisfaction of new Allowed General Unsecured Claims and (b) have not been set aside from distribution to fund projected liquidation and administrative costs, Dividend Taxes or Taxes on Distribution of the GUC Trust) and (ii) Other Administrative Cash available, if any, for distribution to the holders of GUC Trust Units.

"GUC Trust" means the Motors Liquidation Company GUC Trust.

"GUC Trust Administrator" means Wilmington Trust Company, not in its individual capacity but solely in its capacity as trust administrator and trustee of the GUC Trust.

"GUC Trust Agreement" means the Second Amended and Restated Motors Liquidation Company GUC Trust Agreement, dated as of July 30, 2015.

"GUC Trust Monitor" means FTI Consulting, Inc., solely in its capacity as trust monitor of the GUC Trust.

"GUC Trust Units" means the units of beneficial interests in the GUC Trust distributed to holders of Allowed General Unsecured Claims in proportion to the amount of their claims subject to certain rounding rules set forth in the Plan and the GUC Trust Agreement. Each GUC Trust Unit represents the contingent right to receive a pro rata share of the Excess GUC Trust Distributable Assets.

"Ignition Switch Economic Loss Actions" means the various actions (including putative class actions) filed by various plaintiffs against New GM seeking compensatory and other damages for economic losses allegedly resulting from the Ignition Switch Recall, or the underlying condition of the subject vehicles.

35

Table of Contents

"Ignition Switch Personal Injury Actions" means the various actions (including putative class actions) filed by various plaintiffs against New GM seeking compensatory and other damages for personal injury and other claims allegedly arising from accidents that occurred as a result of the underlying condition of the vehicles subject to the Ignition Switch Recall.

"Ignition Switch Recall" means the recalls of vehicles due to defective ignition switches by New GM since the beginning of 2014.

"Indenture Trustee / Fiscal and Paying Agent Costs" means certain costs, fees and expenses payable under the Plan to the indenture trustees and fiscal and paying agents for the previously outstanding debt of MLC.

"Initial Reporting Cash" means the proceeds of approximately $5.7 million from the sale by the GUC Trust of New GM Securities shortly after the Effective Date, expressly authorized by the GUC Trust Agreement for the purposes of funding Reporting Costs.

"Investment Income Taxes" means federal income taxes incurred in respect of investment income earned by the GUC Trust on Distributable Cash held, or previously held, by the GUC Trust.

"Loss Succession Rule" means, under Treasury Regulation Section 1.468B-9(C)(6), each Claimant is entitled to succeed to and take into account a portion of any unused Loss Carryovers upon termination of the GUC Trust.

"JPMorgan Summary Judgment Motion" means the Motion of JPMorgan Chase Bank, N.A. for Summary Judgment (Docket No. 28) filed by JPMorgan Chase Bank, N.A. on July 1, 2010, seeking a ruling in favor of JPMorgan Chase Bank, N.A. with respect to the perfection of the UCC Collateral.

"Judgment" means the Bankruptcy Court's *Judgment* (Docket No. 73) dated March 1, 2013 in respect of the Cross-Motions for Summary Judgment.

"Liquidation Order" means the Bankruptcy Court's order dated July 2, 2015 pursuant to which the Bankruptcy Court approved the conversion of the GUC Trust's holdings of New GM Securities into cash.

"Loss Carryovers" means capital loss carryovers and net operating loss carryovers of the GUC Trust.

"MDL Court" means, with respect to case number 14-MD-2543 (JMF), the United States District Court for the Southern District of New York.

"MDL Proceeding" means the actions that have been transferred to and consolidated under the case number 14-MD-2543 (JMF) and are pending before the MDL Court, including certain Subject Recall-Related Actions.

"MLC" means Motors Liquidation Company, which dissolved on December 15, 2011.

"Motions to Enforce" means the series of motions filed by New GM with the Bankruptcy Court seeking to enjoin the Subject Recall-Related Actions and to enforce the Sale Order.

"MSPA" means the Master Sale and Purchase Agreement dated as of July 10, 2009, by and among Old GM, certain of its debtor subsidiaries and NGMCO, Inc., as amended.

"New GM" means General Motors Company, together with its consolidated subsidiaries.

"New GM Common Stock" means the common stock of General Motors Company, including with respect to New GM Common Stock that has been set aside from distribution or sold and any Dividend Cash related to such New GM Common Stock.

"New GM Securities" means the New GM Common Stock (including with respect to New GM Common Stock that has been set aside from distribution or sold, any Dividend Cash related to such New GM Common Stock) and the New GM Warrants.

"New GM Series A Warrants" means the warrants to acquire shares of New GM Common Stock at an exercise price of $10.00 per share, expiring July 10, 2016.

"New GM Series B Warrants" means the warrants to acquire shares of New GM Common Stock at an exercise price of $18.33 per share, expiring July 10, 2019.

**Table of Contents**

"New GM Warrants" means the New GM Series A Warrants and the New GM Series B Warrants.

"Order" means the Bankruptcy Court's Order on *Cross-Motions for Summary Judgment* (Docket No. 72) dated March 1, 2013 in respect of the Cross-Motions for Summary Judgment.

"Other Administrative Cash" means the cash proceeds from the sale of any New GM Securities (or appropriation of Distributable Cash) that have been set aside from distribution to fund the current or projected liquidation and other administrative costs or income tax liabilities of the GUC Trust, plus any Dividend Cash related to any New GM Common Stock (or Distributable Cash) so sold (or appropriated).

"Other Economic Loss Actions" means the various actions (including putative class actions) filed by various plaintiffs against New GM seeking compensatory and other damages for economic losses allegedly resulting from recalls of vehicles initiated by New GM (other than the Ignition Switch Recall), or the underlying condition of those vehicles.

"Other Personal Injury Actions" means the various actions (including putative class actions) filed by various plaintiffs against New GM seeking compensatory and other damages for personal injury and other claims allegedly arising from accidents that occurred as a result of the underlying condition of the vehicles subject to the recalls initiated by New GM other than the Ignition Switch Recall.

"Personal Injury Actions" means the various actions (including putative class actions) filed by various plaintiffs against New GM seeking compensatory and other damages for personal injury and other claims allegedly arising from accidents that occurred as a result of the underlying condition of the vehicles subject to the recalls initiated by New GM.

"Plan" means the Debtors' Second Amended Joint Chapter 11 Plan, filed with the Bankruptcy Court on March 18, 2011.

"Pre-Closing Accident Plaintiffs" means plaintiffs in the Ignition Switch Personal Injury Actions involved in pre-closing accidents.

"QSF" means Qualified Settlement Fund under applicable regulations of the United States Department of Treasury.

"Recall-Related Actions" means, collectively, the Ignition Switch Economic Loss Actions, the Other Economic Loss Actions and the Personal Injury Actions.

"Reporting Costs" means fees, costs and expenses of the GUC Trust directly or indirectly relating to (i) reports to be prepared and filed by the GUC Trust pursuant to applicable rules, regulations and interpretations of the SEC, (ii) the transfer, registration for transfer and certification of GUC Trust Units, (iii) the application by the Committee to the Internal Revenue Service for a private letter ruling regarding the tax treatment of the GUC Trust and the holders of Allowed General Unsecured Claims in respect of the distribution of New GM Securities and (iv) certain legal proceedings relating to the Term Loan Avoidance Action.

"Residual Wind-Down Assets" means the funds remaining of the approximately $42.8 million in cash and prepaid expenses transferred by MLC to the GUC Trust on the Dissolution Date to satisfy the Residual Wind-Down Claims and Residual Wind-Down Costs (which amount consisted of approximately $40.0 million in cash, including approximately $1.4 million for Avoidance Action Defense Costs, and the transferred benefit of approximately $2.8 million in prepaid expenses).

"Residual Wind-Down Claims" means all disputed administrative expenses, priority tax claims, priority non-tax claims, and secured claims against the Debtors that were remaining as of the Dissolution Date.

"Residual Wind-Down Costs" means certain costs, fees and expenses relating to satisfying and resolving the Residual Wind-Down Claims.

"Resolved Disputed Claims" means previously Disputed General Unsecured Claims that are subsequently allowed.

"Sale Order" means the Sale Order and Injunction entered by the Bankruptcy Court on July 5, 2009, approving the sale of substantially all of the assets of Old GM to New GM pursuant to Section 363(b) of the Bankruptcy Code.

"SEC" means the Securities and Exchange Commission.

"Second Circuit" means the United States Court of Appeals for the Second Circuit.

"Subject Recall-Related Actions" means the Recall-Related Actions that concern vehicles designed, manufactured or sold prior to the Closing Date, except for Personal Injury Actions related to accidents that occurred after the Closing Date.

Table of Contents

"Taxes on Distribution" means federal income taxes incurred in respect of any capital gains realized upon the sale or distribution of New GM Securities to holders of Allowed General Unsecured Claims or GUC Trust Units.

"Term Loan" means the syndicated loan facility evidenced by that certain Term Loan Agreement, dated as of November 29, 2006, among General Motors Corporation, Saturn Corporation and JPMorgan Chase Bank, N.A., as administrative agent, and the lenders party thereto from time to time (as amended, restated, supplemented or otherwise revised from time to time).

"Term Loan Avoidance Action" means the legal action styled as Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A., et al., Adv. Pro. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009).

"Term Loan Avoidance Action Claims" means the Allowed General Unsecured Claims that arise in the amount of any recovery of proceeds if the Avoidance Action Trust Administrator is successful in its prosecution of the Term Loan Avoidance Action. For the avoidance of doubt, as used in this Form 10-Q, the amounts of "Disputed General Unsecured Claims" do not include any potential Term Loan Avoidance Action Claims.

"Threshold Issues Appeal Decision" means the Second Circuit's decision in case number 15-2844, docket number 384, and related cross-appeals, dated July 13, 2016.

"Threshold Issues Decision" means the Bankruptcy Court's *Decision on Motion to Enforce Sale Order* (Docket No. 13109) dated April 15, 2015.

"Threshold Issues Judgment" means the Bankruptcy Court's *Judgment* (Docket No. 13177) dated June 1, 2015 with respect to the Threshold Issues Decision.

"Trust Beneficiaries" means the beneficiaries of the GUC Trust, who are future holders and, to the extent their liquidating distributions have not yet been paid to them, current holders of Allowed General Unsecured Claims and future and current holders of GUC Trust Units.

"UCC-3" means the UCC-3 termination statement filed prior to the date of the Debtors' bankruptcy filings which related to certain collateral owned by the Debtors on which the Administrative Agent asserted a lien in respect of the Term Loan.

"UCC Collateral" means the collateral owned by the Debtors on the date of their bankruptcy filings, which collateral was the subject of the UCC-3.

"Used Car Purchasers" means plaintiffs in the Ignition Switch Economic Loss Actions who bought used GM vehicles post-Sale.

"Wind-Down Costs" means certain fees and expenses incurred by the GUC Trust, including fees of the GUC Trust Administrator and the GUC Trust Monitor and the fees and expenses for other professionals retained by the GUC Trust, other than Reporting Costs.

**Item 3.    Quantitative and Qualitative Disclosures About Market Risk.**

Disclosure under this item is not required, pursuant to the no-action letter of the Securities and Exchange Commission to the GUC Trust dated May 23, 2012.

**Item 4.    Disclosure Controls and Procedures.**

During the fiscal period covered by this report, the management of the GUC Trust, with the participation of the Vice President of the GUC Trust Administrator, completed an evaluation of the effectiveness of the design and operation of the GUC Trust's disclosure controls and procedures (as defined in Rule 13a-15(e) of the Securities and Exchange Act of 1934, as amended). Based on this evaluation, the GUC Trust's management, including that Vice President of the GUC Trust Administrator, has concluded that, as of the end of the fiscal period covered by this report, the GUC Trust's disclosure controls and procedures were effective. There were no material changes in the GUC Trust's internal control over financial reporting during the fiscal period covered by this report.

38

Table of Contents

PART II—OTHER INFORMATION

**Item 1.     Legal Proceedings.**

*Term Loan Avoidance Action.*

On July 31, 2009, the Committee, on behalf of the Debtors, commenced the Term Loan Avoidance Action. Among other things, the Term Loan Avoidance Action seeks the return of approximately $1.5 billion that had been transferred to a consortium of prepetition lenders pursuant to the terms of the order approving the DIP Credit Agreement on the theory that the prepetition filing of a particular UCC-3 termination statement, or the UCC-3, had the effect of rendering such lenders' previously perfected security interest in certain assets of the Debtors, or the UCC Collateral, unperfected on the date of the Debtors' bankruptcy filings.

On July 1, 2010, the Committee filed a motion for partial summary judgment, or the Committee Summary Judgment Motion, seeking a ruling in favor of the Committee with respect to the perfection of the lenders' security interest in the UCC Collateral. Also on July 1, 2010, JPMorgan Chase Bank, N.A. filed its own summary judgment motion, or the JPMorgan Summary Judgment Motion (and, together with the Committee Summary Judgment Motion, the Cross-Motions for Summary Judgment), seeking a ruling in favor of JPMorgan Chase Bank, N.A., with respect to the perfection of the lenders' security interest in the UCC Collateral. On the Dissolution Date, while the Cross-Motions for Summary Judgment were still pending, the right to prosecute the Term Loan Avoidance Action was transferred to the Avoidance Action Trust. To the extent the Avoidance Action Trust Administrator is successful in obtaining and collecting a judgment against the defendant(s) therein, Term Loan Avoidance Action Claims will arise in the amount actually collected from the defendant(s), and in the name of such defendant(s).

On March 1, 2013, the Bankruptcy Court rendered a decision on the Cross-Motions for Summary Judgment, holding that JPMorgan Chase Bank, N.A., or the Administrative Agent, had not authorized the filing of the UCC-3, and thus the lenders' security interest in the UCC Collateral remained properly perfected on the date of the Debtors' bankruptcy filings. The Bankruptcy Court subsequently entered an order and a judgment on the Cross-Motions for Summary Judgment, which distilled the decision on Cross-Motions for Summary Judgment into an order denying the Committee Summary Judgment Motion and granting the JPMorgan Summary Judgment Motion. On March 7, 2013, the Avoidance Action Trust appealed the order and judgment, which appeal was heard directly by the Second Circuit.

On January 21, 2015, the Second Circuit reversed the Bankruptcy Court's grant of summary judgment for the Administrative Agent, holding that the Administrative Agent had authorized the filing of the UCC-3 and thereby extinguished the lenders' perfected security interest in the UCC Collateral. The Administrative Agent subsequently filed a petition for rehearing en banc, which petition was denied by the Second Circuit. On April 20, 2015, the Second Circuit issued a mandate instructing the Bankruptcy Court to enter partial summary judgment for the Committee, which judgment was entered by the Bankruptcy Court on June 12, 2015. Pursuant to a scheduling order entered by the Bankruptcy Court on May 19, 2015, the Avoidance Action Trust filed an amended complaint against the defendants to the Term Loan Avoidance Action on May 20, 2015.

Beginning on November 16, 2015, numerous defendants filed motions seeking to dismiss the amended complaint or to obtain a judgment on the pleadings. The Bankruptcy Court heard oral argument with respect to the motions to dismiss and motions for judgment on the pleadings on April 18, 2016. The Bankruptcy Court denied all of the motions to dismiss in an opinion and order dated June 30, 2016. A group of defendants filed a motion for leave to appeal from the Bankruptcy Court's opinion and order. That motion for leave to appeal was denied by the U.S. District Court for the Southern District of New York on March 24, 2017.

On November 9, 2016, the Avoidance Action Trust filed a stipulation and proposed order that was signed by counsel to the Avoidance Action Trust, counsel to the Administrative Agent and counsel to certain defendants to the Term Loan Avoidance Action, which stipulation had the effect of dismissing approximately $28.2 million in preference claims that were asserted by the Avoidance Action Trust in its amended complaint.

A trial on a number of the key issues in the Term Loan Avoidance Action (the "Representative Assets Trial") was conducted before the Bankruptcy Court from April 24, 2017 through May 5, 2017, followed by post-trial briefing and closing arguments on June 5, 2017. The Bankruptcy Court has not yet rendered its decision with respect to the Representative Assets Trial. The Bankruptcy Court's anticipated decision will not resolve all of the issues in the Term Loan Avoidance Action. The parties to the Term Loan Avoidance Action anticipate that, following the Bankruptcy Court's anticipated decision on the Representative Assets Trial, they will engage in mediation in an effort to reach a consensual resolution of the Term Loan Avoidance Action.

As described above in Note 2 ("Plan of Liquidation") to the financial statements, the successful prosecution of, and recovery under, the Term Loan Avoidance Action would result in the incurrence of additional Term Loan Avoidance Action Claims against the GUC Trust, the holders of which claims would be entitled to receive a distribution of Distributable Cash (including the related Dividend Cash) from the GUC Trust. It is not known, however, whether holders of Allowed General Unsecured Claims would benefit from any cash recovered under the Term Loan Avoidance Action. Moreover, beneficial interests in the Avoidance Action Trust (if any) remain with holders of Allowed General Unsecured Claims, rather than beneficiaries of GUC Trust Units. As such, a holder of a

Table of Contents

GUC Trust Unit that does not hold a corresponding Allowed General Unsecured Claim could potentially have its recovery diluted through the incurrence of Term Loan Avoidance Action Claims by the GUC Trust, without receiving the benefit of any cash recovered pursuant to the Term Loan Avoidance Action.

The Avoidance Action Trust was established under the Plan separate from the GUC Trust. The proper beneficiaries of the proceeds of the Term Loan Avoidance Action has been a matter of dispute, with both the DIP Lenders and the Committee, on behalf of the holders of Allowed General Unsecured Claims, claiming sole rights to such proceeds. On June 6, 2011, the Committee commenced an adversary proceeding seeking a declaratory judgment that (i) the DIP Lenders are not entitled to any proceeds of the Term Loan Avoidance Action and have no interests in the Avoidance Action Trust, and (ii) the holders of Allowed General Unsecured Claims have the exclusive right to receive any and all proceeds of the Term Loan Avoidance Action, and are the exclusive beneficiaries of the Avoidance Action Trust. On December 2, 2011, the Bankruptcy Court entered an order in favor of the Committee, denying the DIP Lenders' motions to dismiss and for summary judgment. On December 16, 2011, the DIP Lenders appealed this and other related rulings and decisions of the Bankruptcy Court. On July 3, 2012, the District Court for the Southern District of New York vacated the Bankruptcy Court's judgment and remanded the case to the Bankruptcy Court, with instructions for the Bankruptcy Court judge to dismiss the Committee's complaint without prejudice for want of subject matter jurisdiction. On July 16, 2016, the Committee and the Avoidance Action Trust filed a motion with the Bankruptcy Court seeking, among other relief, approval of a settlement between the DIP Lenders and the Committee resolving their dispute about the entitlement to proceeds of the Term Loan Avoidance Action. On August 24, 2016, the Approval Order was entered by the Bankruptcy Court. Pursuant to the Approval Order, the Bankruptcy Court has now approved a settlement of this dispute according to which, after the repayment by the Avoidance Action Trust of certain cash advances, any distributable proceeds are to be allocated and paid as follows: 70% to holders of Allowed General Unsecured Claims and 30% to the DIP Lenders. The Approval Order remains subject to a pending appeal to the U.S. District Court for the Southern District of New York. Regardless of the outcome of the appeal, beneficial interests in the Avoidance Action Trust (if any) will remain with the DIP Lenders and the holders of Allowed General Unsecured Claims, rather than beneficiaries of GUC Trust Units.

*General Motors Product Recalls*

Since the beginning of 2014, New GM has recalled millions of vehicles due to defective ignition switches, or the Ignition Switch Recall, and has recalled millions more vehicles to address certain electrical and other safety concerns, including other defects related to the ignition switch. Many of the vehicles affected by the foregoing recalls were manufactured or sold prior to July 10, 2009, or the Closing Date, the date on which the sale of substantially all of the assets of Old GM pursuant to the MSPA was completed.

In its quarterly report on Form 10-Q filed July 25, 2017, New GM also disclosed that, through July 17, 2017, over 100 putative class actions were pending against New GM in various federal and state trial courts in the United States seeking compensatory and other damages and other relief for economic losses allegedly resulting from one or more of the recalls announced in 2014 and/or the underlying condition of vehicles covered by those recalls. Certain of these over 100 cases, or the Ignition Switch Economic Loss Actions, concern the Ignition Switch Recall, certain other cases, or the Other Economic Loss Actions, concern recalls other than the Ignition Switch Recall, and yet others concern both the Ignition Switch Recall and one or more other recalls (such actions are described herein interchangeably as Ignition Switch Economic Loss Actions or Other Economic Loss Actions). In addition, New GM disclosed that, through July 17, 2017, several hundred actions were pending against New GM in various federal and state courts in the United States seeking compensatory and other damages and other relief for personal injury and other claims allegedly arising from accidents that occurred as a result of the underlying condition of the vehicles subject to the recalls initiated by New GM. Certain of these several hundred cases, or the Ignition Switch Personal Injury Actions, concern the Ignition Switch Recall, certain other cases, or the Other Personal Injury Actions, concern recalls other than the Ignition Switch Recall, and yet others concern both the Ignition Switch Recall and one or more other recalls (such actions are described herein interchangeably as Ignition Switch Personal Injury Actions or Other Personal Injury Actions).

Since June 2014, Recall-Related Actions in federal court have been transferred to the United States District Court of the Southern District of New York, or the MDL Court, and have been consolidated into a single case, case number 14-MD-2543 (JMF), or the MDL Proceeding. Recall-Related Actions pending in state court have been consolidated in a separate state multi-district litigation pending in Texas. Over time, New GM has reached various agreements with certain personal injury claimants regarding possible settlement of their claims. The MDL proceedings are ongoing.

Concurrently with the proceedings before the MDL Court, New GM took steps in the Bankruptcy Court to enjoin the Subject Recall-Related Actions. In that respect, beginning on April 21, 2014, New GM filed a series of motions with the Bankruptcy Court seeking to enjoin the Subject Recall-Related Actions and to enforce the Sale Order and Injunction entered on July 5, 2009, or the Sale Order (under which all product liability and property damage claims arising from accidents or incidents prior to the Closing Date were to remain with Old GM as general unsecured claims), or the Motions to Enforce.

40

Table of Contents

Beginning on May 16, 2014, the Bankruptcy Court entered a series of scheduling orders which identified a number of "threshold issues" to be resolved by the Bankruptcy Court, including (i) whether plaintiffs' procedural due process rights were violated in connection with the 363 Transaction, (ii) if such due process rights were violated, what is the appropriate remedy, (iii) whether any or all of the claims asserted in the Subject Recall-Related Actions are claims against Old GM and/or the GUC Trust, and (iv) whether any such claims against Old GM and/or the GUC Trust should be dismissed as equitably moot. The GUC Trust appeared as a party in interest with respect to New GM's Motions to Enforce and filed briefs in opposition thereto, asserting that none of the claims of the plaintiffs in the Subject Recall-Related Actions may be properly asserted against Old GM or the GUC Trust.

On April 15, 2015, the Bankruptcy Court rendered a decision, or the Threshold Issues Decision, on the threshold issues. The Bankruptcy Court found (among other things) that the plaintiffs in the Ignition Switch Economic Loss Actions and the Ignition Switch Personal Injury Actions may seek authorization to file late claims in the bankruptcy cases of Old GM, but that any such claims as against the GUC Trust are "equitably moot" (that is, fashioning relief for the plaintiffs against the GUC Trust would be "impractical, imprudent and therefore inequitable"), and thus the assets of the GUC Trust cannot be used to satisfy such claims. This finding is called the Equitable Mootness Finding.

On June 1, 2015, the Bankruptcy Court issued a judgment, or the Threshold Issues Judgment, which clarifies the terms of the Threshold Issues Decision and distills the Bankruptcy Court's holdings into a binding order. The Threshold Issues Judgment provides, in pertinent part, that:

(i) The plaintiffs in the Ignition Switch Economic Loss Actions suffered a due process violation with respect to the Sale Order, whereas the plaintiffs in the Ignition Switch Personal Injury Actions did not suffer a due process violation with respect to the Sale Order;

(ii) As a result of the due process violation, the provisions of the Sale Order which purport to shield New GM from any liability associated with its independent post-Sale actions can be modified, and the plaintiffs in the Ignition Switch Economic Loss Actions may proceed against New GM with respect to its independent post-Sale actions;

(iii) Any claims asserted in the Ignition Switch Economic Loss Actions and the Ignition Switch Personal Injury Actions that relate to actions of Old GM are enjoined from being pursued against New GM on successor liability grounds;

(iv) Given the Equitable Mootness Finding, the assets of the GUC Trust cannot be utilized to satisfy any claims that may be filed by plaintiffs in the Ignition Switch Economic Loss Actions and Ignition Switch Personal Injury Actions after the date of entry of the Threshold Issues Judgment; and

(v) Pursuant to section 502(j) of the Bankruptcy Code, assets of the GUC Trust may be used to satisfy previously allowed or disallowed claims that are reconsidered for cause. Hence, any person who holds a previously allowed or disallowed claim may seek to have that claim reconsidered by the Bankruptcy Court, and in the event that any such claimant prevails in an application for reconsideration, the resulting additional allowed claims could dilute the recoveries of holders of GUC Trust Units.

The Equitable Mootness Finding became binding on plaintiffs in the Other Economic Loss Actions and Other Personal Injury Actions pursuant to a decision and order of the Bankruptcy Court dated September 3, 2015.

Certain plaintiffs appealed the Threshold Issues Decision and Threshold Issues Judgment, and New GM and the GUC Trust each filed cross-appeals with respect to the Threshold Issues Decision and Threshold Issues Judgment. On September 22, 2015, the Second Circuit entered an order granting a direct appeal of the Threshold Issues Decision and Threshold Issues Judgment to the Second Circuit.

On July 13, 2016, after briefing and oral argument, the Second Circuit reached a decision in the appeal, or the Threshold Issues Appeal Decision. In the Threshold Issues Appeal Decision, the Second Circuit held, in pertinent part, that plaintiffs in the Ignition Switch Personal Injury Actions involved in pre-closing accidents, or the Ignition Switch Pre-Closing Accident Plaintiffs, and plaintiffs in the Ignition Switch Economic Loss Actions who acquired their vehicles pre-closing were entitled to, but did not receive, direct-mail notice of the Sale because Old GM "knew or reasonably should have known about the ignition switch defect prior to bankruptcy." The Second Circuit also noted that it could not say with fair assurance that the outcome of the Sale would have been the same had Old GM given plaintiffs adequate notice of the ignition switch defect and the Sale, and these plaintiffs voiced their objections to those provisions of the Sale Order barring their claims against New GM. Accordingly, the Second Circuit ruled that enforcing the Sale Order against the Ignition Switch Pre-Closing Accident Plaintiffs and the Ignition Switch Economic Loss Plaintiffs would violate their procedural due process rights in these circumstances, and therefore, they cannot be bound by the terms of the Sale Order. As a result, the court held that those plaintiffs are not enjoined from pursuing claims against New GM.

The Second Circuit further held that the Bankruptcy Court lacked subject-matter jurisdiction to issue its Equitable Mootness Finding because no plaintiff has asserted a claim against the GUC Trust. Therefore, the Second Circuit held, the Bankruptcy Court's Equitable Mootness Finding was purely advisory. The Second Circuit did not, however, express any opinion as to the merits of whether claims against the GUC Trust would be equitably moot if brought against the GUC Trust.

41

**Table of Contents**

In addition, the Second Circuit held that the Sale Order cannot enjoin independent claims relating to New GM's post-Sale conduct. It also held that claims by plaintiffs in the Ignition Switch Economic Loss Actions who bought used GM vehicles post-Sale, or Used Car Purchasers, are not bound by the Sale Order and, therefore, are not enjoined from pursuing claims against New GM for their losses, because those claimants lacked a pre-Sale connection to Old GM at the time Old GM filed its bankruptcy petition.

The Second Circuit remanded the case to the Bankruptcy Court for it to conduct further proceedings. Thereafter, the Second Circuit denied New GM's petition for rehearing, and, on April 24, 2017, the Supreme Court of the United States denied New GM's petition for a writ of certiorari.

Once jurisdiction over the case was returned to the Bankruptcy Court, that court held status conferences with the parties. On December 13, 2016, the Bankruptcy Court entered an Order to Show Cause directing the parties to address the following, the 2016 Threshold Issues: (1) whether the Ignition Switch Recall encompasses only claims stemming from NHTSA Recall No. 14v047, or whether it includes other recalls; (2) whether Other Economic Loss Actions asserting claims based solely on New GM's independent conduct may proceed; (3) whether and how Used Car Purchasers may proceed against New GM; (4) whether plaintiffs involved in post-Closing Date accidents may bring successor liability actions against New GM; and (5) whether any plaintiffs may file late proofs of claim against the GUC Trust. Plaintiffs and New GM submitted briefs and presented argument on topics one through four, but the GUC Trust opted not to brief or present argument on those topics. On July 12, 2017, the Bankruptcy Court issued its decision on the first four 2016 Threshold Issues, holding that "(i) only plaintiffs with the Ignition Switch Defect in a Subject Vehicle are Ignition Switch Plaintiffs; (ii) used car purchasers are bound by the Sale Order to the same extent as their predecessors in interest; and (iii) claims for punitive damages against New GM, based on Old GM conduct, are barred by the Bankruptcy Code's priority scheme." New GM and various plaintiffs have each filed notices of appeal to preserve the opportunity to challenge the decisions on the 2016 Threshold Issues.

Pursuant to the Order to Show Cause issued by the Bankruptcy Court, on December 22, 2016, various plaintiffs moved the Bankruptcy Court for permission to file late claims against the GUC Trust. Specifically, Ignition Switch Economic Loss Action plaintiffs filed a proposed class proof of claim on behalf of individuals whose vehicles were recalled in NHTSA Recall No. 14v047; Other Economic Loss Action plaintiffs filed a proposed class proof of claim on behalf of individuals whose cars were subject to other New GM recalls; and 175 Ignition Switch Pre-Closing Accident Plaintiffs each filed a proposed proof of claim. Together, these motions are the Late Claims Motions. On July 28, 2017, counsel for 171 so-called "Additional Pre-Closing Accident Plaintiffs" filed a motion with the Bankruptcy Court for authority to file late claims against the GUC Trust.

The Bankruptcy Court has not set a schedule for deciding the Late Claims Motions or for addressing the motion by the Additional Pre-Closing Accident Plaintiffs. In an Order dated March 2, 2017, the Bankruptcy Court gave permission to the GUC Trust and New GM to serve each of the plaintiffs in the Late Claims Motions related to the Ignition Switch Defect with interrogatories designed to elicit relevant facts related to the Late Claims Motions. In addition, the Bankruptcy Court ordered the GUC Trust, New GM, and the plaintiffs in the Late Claims Motions to file briefs addressing whether the plaintiffs must satisfy the standard set forth in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), to obtain authority to file late proofs of claim, and whether and as of when some or all of the proponents of the Late Claim Motions are the beneficiaries of a tolling agreement with respect to the time for filing the Late Claim Motions. The Bankruptcy Court has not yet scheduled oral argument to discuss those issues. Following briefing related to the Late Claims Motions, the GUC Trust has engaged in discussions with counsel for certain Ignition Switch Economic Loss Action and Other Economic Loss Action plaintiffs and certain Ignition Switch Pre-Closing Accident Plaintiffs regarding a potential settlement of certain issues underlying the Late Claims Motions. Such discussions have meaningfully progressed and remain ongoing.

*Other Matters*

In addition, the GUC Trust has been named a defendant in two actions by individual plaintiffs with separate personal claims against Old GM. One of these claimants is seeking, in light of the recalls by New GM, to vacate the terms of a previous settlement with Old GM for personal injuries/wrongful deaths that occurred prior to the Closing Date. The GUC Trust and New GM defeated an effort by that claimant to obtain relief from her settlement in the Bankruptcy Court and won an affirmance after the claimant appealed to the District Court for the Southern District of New York. The claimant took a further appeal to the Second Circuit. After oral argument on April 26, 2017, the Second Circuit affirmed the lower courts' decisions on May 3, 2017. The claimant's timely petition for rehearing *en banc* was denied on June 27, 2017. At present, the claimant has until September 25, 2017 to file a petition for a writ of certiorari with the United States Supreme Court.

The other claimant is seeking relief from the Bankruptcy Court to pursue tort claims against New GM, or in the alternative, to file a post-bar-date proof of claim against Old GM's bankruptcy estate. That claimant's motion has been pending in the Bankruptcy Court since late 2014, awaiting resolution of criminal charges against the claimant in the state of Ohio. On July 26, 2017, the Ohio Supreme Court denied the state's motion to appeal dismissal of criminal charges against the claimant. Argument on the pending motion before the Bankruptcy Court may occur in Fall 2017.

Table of Contents

*New GM Securities Class Action*

On March 21, 2014, a putative class action was initiated against New GM on behalf of all persons and entities that purchased or otherwise acquired New GM Common Stock during the period from November 17, 2010 through July 24, 2014, inclusive, and suffered damages. In November 2015, New GM reached a proposed settlement (subject to approval by the court in which the action is pending) of the class action. The proposed settlement amount is an aggregate of $300 million, plus earned interest, and, after deducting certain expenses, including attorneys' fees and costs and taxes on the earned interest, the settlement amount will be distributed in cash (pro rata by the relative size of their claims) to all members of the settlement class who submit a valid and timely claim form. The GUC Trust timely filed a proof of claim with the settlement administrator. However, the amount of the GUC Trust's potential recovery is not estimable at this time.

Other than the foregoing, during the quarter ended June 30, 2017 no material changes occurred with respect to any legal proceedings relating to the GUC Trust, as compared to the disclosures included in the GUC Trust's prior filings with the Securities and Exchange Commission.

## Item 1A.    Risk Factors.

*No assurance may be given that claims relating to accidents or other incidents, including recalls involving General Motors vehicles manufactured or sold prior to July 10, 2009, and/or settlements previously reached with plaintiffs asserting such claims, will not adversely affect the GUC Trust, its assets or the Plan.*

Since the beginning of 2014, New GM has recalled millions of vehicles due to defective ignition switches, or the Ignition Switch Recall, and has recalled millions more vehicles to address certain electrical and other safety concerns, including other defects related to the ignition switch. Many of the vehicles affected by the foregoing recalls were manufactured or sold prior to July 10, 2009, or the Closing Date, the date on which the sale of substantially all of the assets of Old GM pursuant to the MSPA was completed.

In its quarterly report on Form 10-Q filed July 25, 2017, New GM also disclosed that, through July 17, 2017, over 100 putative class actions were pending against New GM in various federal and state trial courts in the United States seeking compensatory and other damages and other relief for economic losses allegedly resulting from one or more of the recalls announced in 2014 and/or the underlying condition of vehicles covered by those recalls. Certain of these over 100 cases, or the Ignition Switch Economic Loss Actions, concern the Ignition Switch Recall, certain other cases, or the Other Economic Loss Actions, concern recalls other than the Ignition Switch Recall, and yet others concern both the Ignition Switch Recall and one or more other recalls (such actions are described herein interchangeably as Ignition Switch Economic Loss Actions or Other Economic Loss Actions). In addition, New GM disclosed that, through July 17, 2017, several hundred actions were pending against New GM in various federal and state courts in the United States seeking compensatory and other damages and other relief for personal injury and other claims allegedly arising from accidents that occurred as a result of the underlying condition of the vehicles subject to the recalls initiated by New GM. Certain of these several hundred cases, or the Ignition Switch Personal Injury Actions, concern the Ignition Switch Recall, certain other cases, or the Other Personal Injury Actions, concern recalls other than the Ignition Switch Recall, and yet others concern both the Ignition Switch Recall and one or more other recalls (such actions are described herein interchangeably as Ignition Switch Personal Injury Actions or Other Personal Injury Actions).

Since June 2014, Recall-Related Actions in federal court have been transferred to the United States District Court of the Southern District of New York, or the MDL Court, and have been consolidated into a single case, case number 14-MD-2543 (JMF), or the MDL Proceeding. Recall-Related Actions pending in state court have been consolidated in a separate state multi-district litigation pending in Texas. Over time, New GM has reached various agreements with certain personal injury claimants regarding possible settlement of their claims. The MDL proceedings are ongoing.

Concurrently with the proceedings before the MDL Court, New GM took steps in the Bankruptcy Court to enjoin the Subject Recall-Related Actions. In that respect, beginning on April 21, 2014, New GM filed a series of motions with the Bankruptcy Court seeking to enjoin the Subject Recall-Related Actions and to enforce the Sale Order and Injunction entered on July 5, 2009, or the Sale Order (under which all product liability and property damage claims arising from accidents or incidents prior to the Closing Date were to remain with Old GM as general unsecured claims), or the Motions to Enforce.

Beginning on May 16, 2014, the Bankruptcy Court entered a series of scheduling orders which identified a number of "threshold issues" to be resolved by the Bankruptcy Court, including (i) whether plaintiffs' procedural due process rights were violated in connection with the 363 Transaction, (ii) if such due process rights were violated, what is the appropriate remedy, (iii) whether any or all of the claims asserted in the Subject Recall-Related Actions are claims against Old GM and/or the GUC Trust, and (iv) whether any such claims against Old GM and/or the GUC Trust should be dismissed as equitably moot. The GUC Trust appeared as a party in interest with respect to New GM's Motions to Enforce and filed briefs in opposition thereto, asserting that none of the claims of the plaintiffs in the Subject Recall-Related Actions may be properly asserted against Old GM or the GUC Trust.

Table of Contents

On April 15, 2015, the Bankruptcy Court rendered a decision, or the Threshold Issues Decision, on the threshold issues. The Bankruptcy Court found (among other things) that the plaintiffs in the Ignition Switch Economic Loss Actions and the Ignition Switch Personal Injury Actions may seek authorization to file late claims in the bankruptcy cases of Old GM, but that any such claims as against the GUC Trust are "equitably moot" (that is, fashioning relief for the plaintiffs against the GUC Trust would be "impractical, imprudent and therefore inequitable"), and thus the assets of the GUC Trust cannot be used to satisfy such claims. This finding is called the Equitable Mootness Finding.

On June 1, 2015, the Bankruptcy Court issued a judgment, or the Threshold Issues Judgment, which clarifies the terms of the Threshold Issues Decision and distills the Bankruptcy Court's holdings into a binding order. The Threshold Issues Judgment provides, in pertinent part, that:

(i) The plaintiffs in the Ignition Switch Economic Loss Actions suffered a due process violation with respect to the Sale Order, whereas the plaintiffs in the Ignition Switch Personal Injury Actions did not suffer a due process violation with respect to the Sale Order;

(ii) As a result of the due process violation, the provisions of the Sale Order which purport to shield New GM from any liability associated with its independent post-Sale actions can be modified, and the plaintiffs in the Ignition Switch Economic Loss Actions may proceed against New GM with respect to its independent post-Sale actions;

(iii) Any claims asserted in the Ignition Switch Economic Loss Actions and the Ignition Switch Personal Injury Actions that relate to actions of Old GM are enjoined from being pursued against New GM on successor liability grounds;

(iv) Given the Equitable Mootness Finding, the assets of the GUC Trust cannot be utilized to satisfy any claims that may be filed by plaintiffs in the Ignition Switch Economic Loss Actions and Ignition Switch Personal Injury Actions after the date of entry of the Threshold Issues Judgment; and

(v) Pursuant to section 502(j) of the Bankruptcy Code, assets of the GUC Trust may be used to satisfy previously allowed or disallowed claims that are reconsidered for cause. Hence, any person who holds a previously allowed or disallowed claim may seek to have that claim reconsidered by the Bankruptcy Court, and in the event that any such claimant prevails in an application for reconsideration, the resulting additional allowed claims could dilute the recoveries of holders of GUC Trust Units.

The Equitable Mootness Finding became binding on plaintiffs in the Other Economic Loss Actions and Other Personal Injury Actions pursuant to a decision and order of the Bankruptcy Court dated September 3, 2015.

Certain plaintiffs appealed the Threshold Issues Decision and Threshold Issues Judgment, and New GM and the GUC Trust each filed cross-appeals with respect to the Threshold Issues Decision and Threshold Issues Judgment. On September 22, 2015, the Second Circuit entered an order granting a direct appeal of the Threshold Issues Decision and Threshold Issues Judgment to the Second Circuit.

On July 13, 2016, after briefing and oral argument, the Second Circuit reached a decision in the appeal, or the Threshold Issues Appeal Decision. In the Threshold Issues Appeal Decision, the Second Circuit held, in pertinent part, that plaintiffs in the Ignition Switch Personal Injury Actions involved in pre-closing accidents, or the Ignition Switch Pre-Closing Accident Plaintiffs, and plaintiffs in the Ignition Switch Economic Loss Actions who acquired their vehicles pre-closing were entitled to, but did not receive, direct-mail notice of the Sale because Old GM "knew or reasonably should have known about the ignition switch defect prior to bankruptcy." The Second Circuit also noted that it could not say with fair assurance that the outcome of the Sale would have been the same had Old GM given plaintiffs adequate notice of the ignition switch defect and the Sale, and these plaintiffs voiced their objections to those provisions of the Sale Order barring their claims against New GM. Accordingly, the Second Circuit ruled that enforcing the Sale Order against the Ignition Switch Pre-Closing Accident Plaintiffs and the Ignition Switch Economic Loss Plaintiffs would violate their procedural due process rights in these circumstances, and therefore, they cannot be bound by the terms of the Sale Order. As a result, the court held that those plaintiffs are not enjoined from pursuing claims against New GM.

The Second Circuit further held that the Bankruptcy Court lacked subject-matter jurisdiction to issue its Equitable Mootness Finding because no plaintiff has asserted a claim against the GUC Trust. Therefore, the Second Circuit held, the Bankruptcy Court's Equitable Mootness Finding was purely advisory. The Second Circuit did not, however, express any opinion as to the merits of whether claims against the GUC Trust would be equitably moot if brought against the GUC Trust.

In addition, the Second Circuit held that the Sale Order cannot enjoin independent claims relating to New GM's post-Sale conduct. It also held that claims by plaintiffs in the Ignition Switch Economic Loss Actions who bought used GM vehicles post-Sale, or Used Car Purchasers, are not bound by the Sale Order and, therefore, are not enjoined from pursuing claims against New GM for their losses, because those claimants lacked a pre-Sale connection to Old GM at the time Old GM filed its bankruptcy petition.

44

Table of Contents

The Second Circuit remanded the case to the Bankruptcy Court for it to conduct further proceedings. Thereafter, the Second Circuit denied New GM's petition for rehearing, and, on April 24, 2017, the Supreme Court of the United States denied New GM's petition for a writ of certiorari.

Once jurisdiction over the case was returned to the Bankruptcy Court, that court held status conferences with the parties. On December 13, 2016, the Bankruptcy Court entered an Order to Show Cause directing the parties to address the following, the 2016 Threshold Issues: (1) whether the Ignition Switch Recall encompasses only claims stemming from NHTSA Recall No. 14v047, or whether it includes other recalls; (2) whether Other Economic Loss Actions asserting claims based solely on New GM's independent conduct may proceed; (3) whether and how Used Car Purchasers may proceed against New GM; (4) whether plaintiffs involved in post-Closing Date accidents may bring successor liability actions against New GM; and (5) whether any plaintiffs may file late proofs of claim against the GUC Trust. Plaintiffs and New GM submitted briefs and presented argument on topics one through four, but the GUC Trust opted not to brief or present argument on those topics. On July 12, 2017, the Bankruptcy Court issued its decision on the first four 2016 Threshold Issues, holding that "(i) only plaintiffs with the Ignition Switch Defect in a Subject Vehicle are Ignition Switch Plaintiffs; (ii) used car purchasers are bound by the Sale Order to the same extent as their predecessors in interest; and (iii) claims for punitive damages against New GM, based on Old GM conduct, are barred by the Bankruptcy Code's priority scheme." New GM and various plaintiffs have each filed notices of appeal to preserve the opportunity to challenge the decisions on the 2016 Threshold Issues.

Pursuant to the Order to Show Cause issued by the Bankruptcy Court, on December 22, 2016, various plaintiffs moved the Bankruptcy Court for permission to file late claims against the GUC Trust. Specifically, Ignition Switch Economic Loss Action plaintiffs filed a proposed class proof of claim on behalf of individuals whose vehicles were recalled in NHTSA Recall No. 14v047; Other Economic Loss Action plaintiffs filed a proposed class proof of claim on behalf of individuals whose cars were subject to other New GM recalls; and 175 Ignition Switch Pre-Closing Accident Plaintiffs each filed a proposed proof of claim. Together, these motions are the Late Claims Motions. On July 28, 2017, counsel for 171 so-called "Additional Pre-Closing Accident Plaintiffs" filed a motion with the Bankruptcy Court for authority to file late claims against the GUC Trust.

The Bankruptcy Court has not set a schedule for deciding the Late Claims Motions or for addressing the motion by the Additional Pre-Closing Accident Plaintiffs. In an Order dated March 2, 2017, the Bankruptcy Court gave permission to the GUC Trust and New GM to serve each of the plaintiffs in the Late Claims Motions related to the Ignition Switch Defect with interrogatories designed to elicit relevant facts related to the Late Claims Motions. In addition, the Bankruptcy Court ordered the GUC Trust, New GM, and the plaintiffs in the Late Claims Motions to file briefs addressing whether the plaintiffs must satisfy the standard set forth in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), to obtain authority to file late proofs of claim, and whether and as of when some or all of the proponents of the Late Claim Motions are the beneficiaries of a tolling agreement with respect to the time for filing the Late Claim Motions. The Bankruptcy Court has not yet scheduled oral argument to discuss those issues. Following briefing related to the Late Claims Motions, the GUC Trust has engaged in discussions with counsel for certain Ignition Switch Economic Loss Action and Other Economic Loss Action plaintiffs and certain Ignition Switch Pre-Closing Accident Plaintiffs regarding a potential settlement of certain issues underlying the Late Claims Motions. Such discussions have meaningfully progressed and remain ongoing.

*Other Matters*

In addition, the GUC Trust has been named a defendant in two actions by individual plaintiffs with separate personal claims against Old GM. One of these claimants is seeking, in light of the recalls by New GM, to vacate the terms of a previous settlement with Old GM for personal injuries/wrongful deaths that occurred prior to the Closing Date. The GUC Trust and New GM defeated an effort by that claimant to obtain relief from her settlement in the Bankruptcy Court and won an affirmance after the claimant appealed to the District Court for the Southern District of New York. The claimant took a further appeal to the Second Circuit. After oral argument on April 26, 2017, the Second Circuit affirmed the lower courts' decisions on May 3, 2017. The claimant's timely petition for rehearing and rehearing *en banc* was denied on June 27, 2017. At present, the claimant has until September 25, 2017 to file a petition for a writ of certiorari with the United States Supreme Court.

The other claimant is seeking relief from the Bankruptcy Court to pursue tort claims against New GM, or in the alternative, to file a post-bar-date proof of claim against Old GM's bankruptcy estate. That claimant's motion has been pending in the Bankruptcy Court since late 2014, awaiting resolution of criminal charges against the claimant in the state of Ohio. On July 26, 2017, the Ohio Supreme Court denied the state's motion to appeal dismissal of criminal charges against the claimant. Argument on the pending motion before the Bankruptcy Court may occur in Fall 2017.

Other than the foregoing, there have been no material changes regarding risk factors from what was previously included in the Annual Report on Form 10-K filed with the Securities and Exchange Commission on May 25, 2017.

45

**Table of Contents**

**Item 2.        Unregistered Sales of Equity Securities and Use of Proceeds.**

Disclosure under this item is not required, pursuant to the no-action letter of the Securities and Exchange Commission to the GUC Trust dated May 23, 2012.

**Item 3.        Defaults Upon Senior Securities.**

Disclosure under this item is not required, pursuant to the no-action letter of the Securities and Exchange Commission to the GUC Trust dated May 23, 2012.

**Item 4.        Mine Safety Disclosures.**

Not applicable.

**Item 5.        Other Information.**

None.

46

**Table of Contents**

**Item 6.**        **Exhibits.**

| Exhibit No. | Description |
|---|---|
| 31 | Section 302 Certification. |
| 32 | Section 906 Certification. |
| 101 | The following financial statements and notes thereto from the quarterly report on Form 10-Q of Motors Liquidation Company GUC Trust, for the quarter ended June 30, 2017, formatted in XBRL (eXtensible Business Reporting Language): (i) Condensed Statements of Net Assets in Liquidation (Liquidation Basis) as of June 30, 2017 and March 31, 2017, (ii) Condensed Statements of Changes in Net Assets in Liquidation (Liquidation Basis) for the three months ended June 30, 2017 and 2016, (iii) Condensed Statements of Cash Flows (Liquidation Basis) for the three months ended June 30, 2017 and 2016 and (iv) Notes to Condensed Financial Statements. |

47

**Table of Contents**

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

Date: August 14, 2017

**MOTORS LIQUIDATION COMPANY GUC TRUST**

By:  Wilmington Trust Company, not in its individual
capacity, but solely in its capacity as trust
administrator and trustee of the Motors
Liquidation Company GUC Trust

By: _____ /s/ Beth A. Andrews
Name:                              Beth A. Andrews
Title:      Vice President of Wilmington Trust Company

**Table of Contents**

**EXHIBIT INDEX**

| Exhibit No. | Description |
|---|---|
| 31 | Section 302 Certification. |
| 32 | Section 906 Certification. |
| 101 | The following financial statements and notes thereto from the quarterly report on Form 10-Q of Motors Liquidation Company GUC Trust, for the quarter ended June 30, 2017, formatted in XBRL (eXtensible Business Reporting Language): (i) Condensed Statements of Net Assets in Liquidation (Liquidation Basis) as of June 30, 2017 and March 31, 2017, (ii) Condensed Statements of Changes in Net Assets in Liquidation (Liquidation Basis) for the three months ended June 30, 2017 and 2016, (iii) Condensed Statements of Cash Flows (Liquidation Basis) for the three months ended June 30, 2017 and 2016 and (iv) Notes to Condensed Financial Statements. |

**Exhibit 31**

**CERTIFICATION PURSUANT TO**
**RULE 13a-14(a) and 15d-14(a) UNDER THE SECURITIES EXCHANGE ACT OF 1934,**
**AS AMENDED**

I, Beth A. Andrews, in my capacity as Vice President of Wilmington Trust Company, in its capacity as trust administrator and trustee of Motors Liquidation Company GUC Trust (the "Trust"), certify that:

1.  I have reviewed this quarterly report on Form 10-Q of the Trust;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the net assets and changes in net assets under the liquidation basis of accounting of the Trust as of, and for, the periods presented in this report;

4.  I am responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the Trust and have:

    a.  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under my supervision, to ensure that material information relating to the Trust, including its consolidated subsidiaries, is made known to me by others within those entities, particularly during the period in which this report is being prepared;

    b.  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under my supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c.  Evaluated the effectiveness of the Trust's disclosure controls and procedures and presented in this report my conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d.  Disclosed in this report any change in the Trust's internal control over financial reporting that occurred during the Trust's most recent fiscal quarter (the Trust's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the Trust's internal control over financial reporting ; and

5.  I have disclosed, based on my most recent evaluation, to the Trust's auditors:

    a.  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Trust's ability to record, process, summarize and report financial information; and

    b.  Any fraud, whether or not material, that involves management or other employees who have a significant role in the Trust's internal control over financial reporting.

Date: August 14, 2017

By:     /s/ Beth A. Andrews
Name:  Beth A. Andrews
Title:    Vice President of Wilmington Trust Company

**Exhibit 32**

**Certification pursuant to 18 U.S.C. Section 1350,**
**as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002**

In connection with this quarterly report on Form 10-Q (the "Report") of Motors Liquidation Company GUC Trust (the "Trust"), as filed with the Securities and Exchange Commission on the date hereof, Beth A. Andrews, as Vice President of Wilmington Trust Company, in its capacity as trust administrator and trustee of the Trust, does hereby certify as of the date indicated below, pursuant to § 906 of the Sarbanes-Oxley Act of 2002 (18 U.S.C. § 1350), that to his knowledge:

(1)    The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2)    The information contained in the Report fairly presents, in all material respects, the financial condition and result of operations of the Trust.

Date: August 14, 2017


By:    /s/ Beth A. Andrews
Name:    Beth A. Andrews
Title:    Vice President of Wilmington Trust Company

| Document and Entity Information | 3 Months Ended Jun. 30, 2017 shares |
|---|---|
| **Document And Entity Information [Abstract]** | |
| Document Type | 10-Q |
| Amendment Flag | false |
| Document Period End Date | Jun. 30, 2017 |
| Document Fiscal Year Focus | 2018 |
| Document Fiscal Period Focus | Q1 |
| Trading Symbol | MTLQQ |
| Entity Registrant Name | Motors Liquidation Co |
| Entity Central Index Key | 0000040730 |
| Current Fiscal Year End Date | --03-31 |
| Entity Filer Category | Non-accelerated Filer |
| Entity Common Stock, Shares Outstanding | 0 |

| Condensed Statements of Net Assets in Liquidation (Liquidation Basis) - USD ($) $ in Thousands | Jun. 30, 2017 | Mar. 31, 2017 |
|---|---|---|
| **LIABILITIES** | | |
| Reserves for Expected Costs of Liquidation (Note 6) | $ 19,145 | $ 18,903 |
| Liquidation Basis of Accounting [Member] | | |
| **ASSETS** | | |
| Cash and Cash Equivalents (Note 3) | 3,316 | 4,320 |
| Marketable Securities (Note 3) | 509,840 | 522,452 |
| Other Assets and Deposits | 4,969 | 3,948 |
| TOTAL ASSETS | 518,125 | 530,720 |
| **LIABILITIES** | | |
| Accounts Payable and Other Liabilities | 2,456 | 13,433 |
| Liquidating Distributions Payable (Note 4) | 10,011 | 9,205 |
| Reserves for Expected Costs of Liquidation (Note 6) | 19,145 | 18,903 |
| Reserves for Residual Wind-Down Claims and Costs (Note 6) | 160 | 966 |
| TOTAL LIABILITIES | 31,772 | 42,507 |
| NET ASSETS IN LIQUIDATION (Note 3) | $ 486,353 | $ 488,213 |

| Condensed Statements of Changes in Net Assets in Liquidation (Liquidation Basis) - Liquidation Basis of Accounting [Member] - USD ($) $ in Thousands | 3 Months Ended | |
|---|---|---|
| | Jun. 30, 2017 | Jun. 30, 2016 |
| Net Assets in Liquidation, beginning of period | $ 488,213 | $ 611,773 |
| **Increase (decrease) in net assets in liquidation:** | | |
| Net (additions to) reductions in reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs (Note 6) | (3,046) | 272 |
| Liquidating distributions (Note 4) | (806) | (913) |
| Interest and dividend income (Note 3) | 1,992 | 244 |
| Net decrease in net assets in liquidation | (1,860) | (397) |
| Net Assets in Liquidation, end of period | $ 486,353 | $ 611,376 |

| Condensed Statements of Cash Flows (Liquidation Basis) - Liquidation Basis of Accounting [Member] - USD ($) $ in Thousands | 3 Months Ended | |
|---|---|---|
| | Jun. 30, 2017 | Jun. 30, 2016 |
| **Cash flows from (used in) operating activities** | | |
| Cash receipts from interest and dividends | $ 946 | $ 457 |
| Cash paid for professional fees, governance costs and other administrative costs | (3,210) | (3,304) |
| Cash paid for Residual Wind-Down Claims and Costs | (11,544) | (2,556) |
| Cash receipts for refunds | 193 | |
| Cash paid for distributions | | (98) |
| Net cash flows used in operating activities | (13,615) | (5,501) |
| **Cash flows from (used in) investing activities** | | |
| Cash used to purchase marketable securities | (1,176,908) | (1,495,833) |
| Cash from maturities and sales of marketable securities | 1,189,519 | 1,502,643 |
| Net cash flows from investing activities | 12,611 | 6,810 |
| Net (decrease) increase in cash and cash equivalents | (1,004) | 1,309 |
| Cash and cash equivalents, beginning of period | 4,320 | 4,410 |
| Cash and cash equivalents, end of period | $ 3,316 | $ 5,719 |

| Description of Trust and Reporting Policies | 3 Months Ended Jun. 30, 2017 |
|---|---|

**Accounting Policies [Abstract]**

Description of Trust and
Reporting Policies

### 1.    Description of Trust and Reporting Policies

The Motors Liquidation Company GUC Trust ("GUC Trust") is a successor to Motors Liquidation Company (formerly known as General Motors Corp.) ("MLC") for the purposes of Section 1145 of the United States Bankruptcy Code ("Bankruptcy Code"). The GUC Trust holds, administers and directs the distribution of certain assets pursuant to the terms and conditions of the Second Amended and Restated Motors Liquidation Company GUC Trust Agreement (the "GUC Trust Agreement"), dated as of July 30, 2015, and as amended from time to time, and pursuant to the Second Amended Joint Chapter 11 Plan (the "Plan"), dated March 18, 2011, of MLC and its debtor affiliates (collectively, along with MLC, the "Debtors"), for the benefit of holders of allowed general unsecured claims against the Debtors ("Allowed General Unsecured Claims").

The GUC Trust was formed on March 30, 2011, as a statutory trust under the Delaware Statutory Trust Act, for the purposes of implementing the Plan and distributing the GUC Trust's distributable assets. Wilmington Trust Company serves as trustee and trust administrator of the GUC Trust (in such capacity, and not in its individual capacity, the "GUC Trust Administrator"), and FTI Consulting, Inc. serves as trust monitor of the GUC Trust (in such capacity, and not in its individual capacity, the "GUC Trust Monitor"). Prior to the liquidation in July and August 2015 of all New GM Securities (as defined below) then held by the GUC Trust (pursuant to the Liquidation Order (as defined below)), the Plan (as qualified by the Liquidation Order) generally provided for the distribution of certain shares of common stock ("New GM Common Stock") of the new General Motors Company, formerly known as NGMCO, Inc. ("New GM") and any associated Dividend Cash (as defined below) and certain warrants for the purchase of shares of such stock (the "New GM Warrants," and, together with the New GM Common Stock, the "New GM Securities") to holders of Allowed General Unsecured Claims pro rata by the amount of such claims. Since such liquidation of the New GM Securities, distributions to holders of Allowed General Unsecured Claims consist entirely of cash distributions in lieu of New GM Securities. In addition, prior to the qualification by the Liquidation Order and the resulting subsequent liquidation of New GM Securities, the Plan provided that each holder of an Allowed General Unsecured Claim would obtain, in the form of GUC Trust Units (as defined below), a contingent right to receive, on a pro rata basis, additional shares of New GM Common Stock (and associated Dividend Cash) and New GM Warrants (if and to the extent such New GM Common Stock and New GM Warrants were not required for the satisfaction of previously Disputed General Unsecured Claims (as defined in Note 2), Term Loan Avoidance Action Claims (as defined in Note 2) or liquidation for the payment of the expenses and liabilities of the GUC Trust), and certain cash, if any, remaining at the dissolution of the GUC Trust. Since the aforementioned liquidation of all New GM Securities previously held by the GUC Trust, the holders of GUC Trust Units have a contingent right to receive additional cash, in lieu of New GM Securities, if any, remaining at the dissolution of the GUC Trust.

By order dated July 2, 2015 (the "Liquidation Order"), the Bankruptcy Court approved the conversion of the GUC Trust's holdings of New GM Securities into cash. To effect such conversion, on July 7, 2015, the GUC Trust converted all of its holdings of New GM Warrants into New GM Common Stock in a cashless exercise. In total, the GUC Trust converted (i) 10,352,556 New GM Series A Warrants (defined below) into 7,407,155 shares of New GM Common Stock, and (ii) 10,352,556 New GM Series B Warrants (defined below) into 4,953,635 shares of New GM Common Stock. Thereafter, the GUC Trust sold all of its holdings of New GM Common Stock for net proceeds aggregating $741.7 million, having completed all such sales on August 5, 2015. As a result, all distributions by the GUC Trust thereafter in respect of any Allowed General Unsecured Claims (including in respect of the GUC Trust Units) are made solely in cash. Pursuant to the Liquidation Order, the proceeds of such liquidations (net of applicable costs, fees, and expenses paid in respect thereof) were allocated to the beneficiaries of the GUC Trust on a pro rata basis in the following manner:

(a)    A GUC Trust beneficiary's entitlement to a particular number of New GM Warrants that were exercised was converted into an entitlement to receive the number of shares of New GM Common Stock to which such New GM Warrants were exercised. Such conversions were 0.71549 shares of New GM Common Stock for each New GM Series A Warrant and 0.47849 shares of Common Stock for each New GM Series B Warrant; and

(b)    A GUC Trust beneficiary's entitlement to a particular number of shares of New GM Common Stock that were liquidated (including the exercised New GM Warrants as set forth above), was converted into an entitlement to receive an amount of cash equal to the weighted average sales price (net of any applicable costs, fees, and expenses paid in respect thereof) of all of the New GM Common Stock sold, multiplied by the number of shares of New GM Common Stock to which such GUC Trust beneficiary would otherwise be entitled (including exercised New GM Warrants as set forth above). Such weighted average sales price for the GUC Trust's holdings of New GM Common Stock that were sold subsequent to June 30, 2015 was $31.23 per share.

Following the liquidation described above, the GUC Trust has invested most of the proceeds in certain marketable securities as permitted under the GUC Trust Agreement. The amount of cash and cash equivalents and marketable securities held for distribution to GUC Trust beneficiaries, including Dividend Cash, is referred to herein as Distributable Cash.

The GUC Trust exists solely for the purpose of resolving claims, distributing Distributable Cash (following the aforementioned liquidation of all New GM Securities) and winding down the affairs of MLC, all in accordance with a plan of liquidation of MLC approved by the Bankruptcy Court and the Liquidation Order. Accordingly, the GUC Trust has prepared the accompanying financial statements on the liquidation basis of accounting in accordance with accounting principles generally accepted in the United States of America (U.S. GAAP). Under the liquidation basis of accounting, assets are stated at their estimated realizable value, which is the non-discounted amount of cash into which an asset is expected to be converted during the liquidation period, while liabilities continue to be recognized at the amount required by other U.S. GAAP, and are not remeasured to reflect any anticipation that an entity will be legally released from an obligation. Additionally, under the liquidation basis of accounting, a reserve is established for estimated costs expected to be incurred during the liquidation period. Such costs are accrued when there is a reasonable basis for estimation. Also, an accrual is made for estimated income or cash expected to be received over the liquidation period to the extent that a reasonable basis for estimation exists. These estimates are periodically reviewed and adjusted as appropriate. The valuation of assets at realizable value, the accrual for investment income on marketable securities expected to be received over the liquidation period, reserves for residual wind-down claims and costs and reserves for expected liquidation costs represent estimates, are based on present facts and circumstances known to the GUC Trust Administrator, and are subject to change.

As described above, the beneficiaries of the GUC Trust are future holders and, to the extent their liquidating distributions have not yet been paid to them, current holders of Allowed General Unsecured Claims and future and current holders of GUC Trust Units ("Trust Beneficiaries"). As Disputed General Unsecured Claims and Term Loan Avoidance Action Claims are resolved and allowed and thereby become Allowed General Unsecured Claims, the holders thereof become entitled to receive liquidating distributions of Distributable Cash (including Dividend Cash) and GUC Trust Units pro rata by the amount of such claims. Upon such occurrence, the GUC Trust incurs an obligation to distribute Distributable Cash and, accordingly, liquidating distributions payable are recorded in the amount of Distributable Cash (previously the fair value of New GM Securities) that the GUC Trust is obligated to distribute as of the end of the period in which the Disputed General Unsecured Claims and Term Loan Avoidance Action Claims are resolved as Allowed General Unsecured Claims. Prior to the resolution and allowance of Disputed General Unsecured Claims and Term Loan Avoidance Action Claims, liabilities are not recorded for the conditional obligations associated with Disputed General Unsecured Claims and Term Loan Avoidance Action Claims. Rather, the beneficial interests of GUC Trust beneficiaries in the residual assets of the GUC Trust are reflected in Net Assets in Liquidation of the GUC Trust in the financial statements.

The accompanying (a) condensed statement of net assets in liquidation at March 31, 2017, which has been derived from audited financial statements, and (b) the unaudited interim condensed financial statements have been prepared in accordance with the instructions to Form 10-Q and, therefore, do not include all information and footnotes required by U.S. GAAP for complete financial statements. The GUC Trust believes all adjustments, normal and recurring in nature, considered necessary for a fair presentation have been included. The changes in net assets in liquidation for the three months ended June 30, 2017 are not necessarily indicative of the changes in net assets that may be expected for the full year. The GUC Trust believes that, although the disclosures contained herein are adequate to prevent the information presented from being misleading, the accompanying interim condensed financial statements should be read in conjunction with the GUC Trust's financial statements for the year ended March 31, 2017 included in Form 10-K filed by the GUC Trust with the Securities and Exchange Commission on May 25, 2017.

The preparation of condensed financial statements in conformity with U.S. GAAP requires the GUC Trust Administrator to make estimates and assumptions that affect the reported amounts of assets and liabilities and are subject to change.

Changes to U.S. GAAP are made by the FASB in the form of accounting standards updates (ASU's) to the FASB's Accounting Standards Codification. The GUC Trust considers the applicability and impact of all ASU's. ASU's not noted herein were assessed and determined to be not applicable.

A reclassification of prior period balances in Note 6 was made to conform to their presentation at June 30, 2017 and March 31, 2017. The balance in the Reserve for Residual Wind-Down Costs was reclassified from Reserves for Expected Costs of Liquidation to Reserves for Residual Wind-Down Claims and Costs.

**Plan of Liquidation**

**Organization, Consolidation and Presentation of Financial Statements [Abstract]**

Plan of Liquidation

### 2.  Plan of Liquidation

On March 31, 2011, the date the Plan became effective (the "Effective Date"), there were approximately $29,771 million in Allowed General Unsecured Claims. In addition, as of the Effective Date, there were approximately $8,154 million in disputed general unsecured claims which reflects liquidated disputed claims and a Bankruptcy Court ordered distribution reserve for unliquidated disputed claims ("Disputed General Unsecured Claims"), but does not reflect potential Term Loan Avoidance Action Claims. The total aggregate amount of general unsecured claims, both allowed and disputed, asserted against the Debtors, inclusive of the potential Term Loan Avoidance Action Claims, was approximately $39,425 million as of the Effective Date.

Pursuant to the GUC Trust Agreement, holders of Disputed General Unsecured Claims became entitled to receive a distribution of Distributable Cash from the GUC Trust if, and to the extent that, such Disputed General Unsecured Claims became Allowed General Unsecured Claims (such claims, "Resolved Disputed Claims"). Under the GUC Trust Agreement, the GUC Trust Administrator had the authority to file objections to such Disputed General Unsecured Claims and such claims could be prosecuted through alternative dispute resolution proceedings, including mediation and arbitration ("ADR Proceedings"), if appropriate. As of June 30, 2017, there were no remaining Disputed General Unsecured Claims. There remained $50.0 million in claim amount that is not associated with any particular claim, but which has been set aside by the GUC Trust Administrator as a general claim contingency. See "Allowed and Disputed Claims" below.

Only one avoidance action, captioned Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al., Adv. Pro. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009) (the "Term Loan Avoidance Action"), was commenced prior to the statutory deadline for commencing such actions. The Term Loan Avoidance Action was commenced by the Official Committee of Unsecured Creditors of Motors Liquidation Company (the "Committee"), and, among other things, seeks the return of approximately $1.5 billion that had been transferred by the Debtors (with funds advanced after the commencement of the Debtors' chapter 11 cases by the United States Treasury and Export Development Canada (together, the "DIP Lenders")) to a consortium of prepetition lenders pursuant to the terms of the order of the Bankruptcy Court. On December 15, 2011, in accordance with the Plan, upon the dissolution of MLC, the Term Loan Avoidance Action was transferred to the Avoidance Action Trust (as defined below). Pursuant to the GUC Trust Agreement, to the extent that Wilmington Trust Company, not in its individual capacity but solely in its capacity as the trustee and trust administrator of the Avoidance Action Trust (the "Avoidance Action Trust Administrator"), is successful in obtaining a recovery by way of judgment or settlement from the defendants to the Term Loan Avoidance Action, such defendants shall receive an Allowed General Unsecured Claim against the GUC Trust in the amount so disgorged to the Avoidance Action Trust (such general unsecured claims "Term Loan Avoidance Action Claims," and together with Resolved Disputed Claims, the "Resolved Allowed Claims").

As described in Part II, Item 1 ("Legal Proceedings"), the Committee, the DIP Lenders and the Avoidance Action Trust have reached a settlement agreement concerning, among other things, the allocation of potential distributable recoveries from the Term Loan Avoidance Action. The Bankruptcy Court approved the settlement agreement in an opinion and order entered on August 24, 2016 (the "Approval Order"). The Approval Order is in effect, but is the subject of an appeal pending before the U.S. District Court for the Southern District of New York. Regardless of the outcome of the pending appeal, no funds reclaimed from the pre-petition lenders in the Term Loan Avoidance Action will be transferred to or otherwise benefit the GUC Trust or be distributed on account of GUC Trust Units.

#### GUC Trust Distributable Assets

Pursuant to the terms of the Plan, the Bankruptcy Court authorized the distribution by New GM of 150 million shares of New GM Common Stock, warrants to acquire 136,363,635 newly issued shares of New GM Stock with an exercise price set at $10.00 per share that expired on July 10, 2016 ("New GM Series A Warrants"), and warrants to acquire 136,363,635 newly issued shares of New GM Stock with an exercise price set at $18.33 per share, expiring July 10, 2019 ("New GM Series B Warrants"). Record ownership of the New GM Securities was held by MLC for the benefit of the GUC Trust until the dissolution of MLC on December 15, 2011, at which time record ownership was transferred to the GUC Trust.

As described above, pursuant to the Liquidation Order, during July and August 2015, all of the GUC Trust's holdings of New GM Securities were liquidated and, following such liquidation, the GUC Trust's Distributable Assets principally consist of Distributable Cash. Such Distributable Cash is primarily invested in certain marketable securities as permitted under the GUC Trust Agreement and the balance is held in cash and cash equivalents.

Prior to the liquidation of all its holdings of New GM Common Stock, the GUC Trust received dividends on such New GM Common Stock aggregating $24.7 million. Such dividends are required to be applied to the same purpose as the New GM Common Stock to which such dividends relate. If the portion of Distributable Cash applicable to the proceeds from the liquidation of New GM Common Stock is distributed to holders of subsequently allowed Disputed General Unsecured Claims and GUC Trust Units, then the dividends relating to such Distributable Cash will also be distributed to such holders. If, however, Distributable Cash is appropriated in accordance with the GUC Trust Agreement to fund the costs and liabilities of the GUC Trust, then, in that case, the dividends relating to such Distributable Cash will be applied to such costs and liabilities of the GUC Trust and (just like the appropriated Distributable Cash) will be maintained as Other Administrative Cash (as defined below). Because such dividends are applied to the same purposes as the associated Distributable Cash, any references in this Form 10-Q to Distributable Cash should be understood to include the dividends relating to such Distributable Cash, unless expressly indicated otherwise. The amount of cash and cash equivalents and marketable securities held by the GUC Trust that relates to dividends received by the GUC Trust on New GM Common Stock previously held by the GUC Trust is referred to as Dividend Cash and is included in the amount of cash and cash equivalents and marketable securities held for distribution to GUC Trust beneficiaries that is referred to herein as Distributable Cash (except to the extent of dividends relating to appropriated Distributable Cash that is classified as Other Administrative Cash following such appropriation).

### *Funding for GUC Trust Costs of Liquidation*

The GUC Trust has incurred and will continue to incur certain costs to liquidate the trust assets and implement the Plan. On or about the Effective Date, pursuant to the Plan, MLC contributed approximately $52.7 million to the GUC Trust to be held and maintained by the GUC Trust Administrator (the "Administrative Fund") for the purpose of paying certain fees and expenses (including certain tax obligations) incurred by the GUC Trust (including fees of the GUC Trust Administrator and the GUC Trust Monitor and the fees and expenses for professionals retained by the GUC Trust), other than the Reporting Costs, as defined below ("Wind-Down Costs"). As of June 30, 2017, the remaining Administrative Fund aggregated $1.8 million (consisting of cash and cash equivalents and marketable securities). Such remaining amount of the Administrative Fund has been designated for the satisfaction of certain specifically identified costs and liabilities of the GUC Trust, and such amount may not be used for the payment of Trust Professionals fees and expenses or other Wind-Down Costs. Pursuant to the GUC Trust Agreement, cash or investments from the Administrative Fund, if any, which remain at the winding up and conclusion of the GUC Trust must be returned to the DIP Lenders.

The GUC Trust Agreement authorized the GUC Trust to liquidate approximately $5.7 million of New GM Securities (the "Initial Reporting Cash") shortly after the Effective Date for the purposes of funding certain fees and expenses of the GUC Trust (the "Reporting Costs"), including those directly or indirectly relating to (i) reports to be prepared and filed by the GUC Trust pursuant to applicable rules, regulations and interpretations of the Securities and Exchange Commission, (ii) the transfer, registration for transfer and certification of GUC Trust Units, (iii) the application by the Committee to the Internal Revenue Service for a private letter ruling regarding the tax treatment of the GUC Trust and the holders of Allowed General Unsecured Claims in respect to the distribution of New GM Securities, and (iv) certain legal proceedings relating to the Term Loan Avoidance Action. The GUC Trust Agreement provides that the Administrative Fund may not be utilized to satisfy any Reporting Costs.

The GUC Trust Agreement provides that, to the extent the GUC Trust Administrator determines that the Administrative Fund is not sufficient to satisfy the current or projected Wind-Down Costs or the Initial Reporting Cash is not sufficient to satisfy the current or projected Reporting Costs, the GUC Trust Administrator, with the approval of the GUC Trust Monitor, is authorized to set aside Distributable Cash from distribution for these purposes. The GUC Trust Administrator may then appropriate such Distributable Cash to fund the Wind-Down Costs and/or Reporting Costs with the required approval of the Bankruptcy Court. Distributable Cash that is set aside and/or appropriated in this manner will not be available for distribution to the beneficiaries of GUC Trust Units, and any appropriation of Distributable Cash (including related Dividend Cash) will be classified as "Other Administrative Cash" under the GUC Trust Agreement. The setting aside (or appropriation) of Distributable Cash, including Dividend Cash, itself is not, and has not been, reflected in the Statement of Net Assets in Liquidation or any of the other financial statements of the GUC Trust. Separate from this process of setting aside (or appropriating) Distributable Cash to satisfy unfunded projected costs and expenses of the GUC Trust, as a matter of financial reporting, the GUC Trust records reserves in its Statement of Net Assets in Liquidation (the source of funding of which is not addressed therein) for all expected costs of liquidation for which there is a reasonable basis for estimation. For this reason, among others, there is not a direct relationship between the amount of such reserves reflected in the Statement of Net Assets in Liquidation and the amount of any Distributable Cash that is set aside (or appropriated) for current or projected costs and

expenses of the GUC Trust. Adjustments to the Reserves for Expected Costs of Liquidation as reported in the Statement of Net Assets in Liquidation are recorded only when there is a reasonable basis for estimation of the expected incurrence of additional costs or a reduction in expected costs. For more information regarding the Reserves for Expected Costs of Liquidation reflected in the accompanying Condensed Statement of Net Assets in Liquidation, see Note 6.

Prior to the aforementioned liquidation of all New GM Securities in July and August 2015, the GUC Trust was authorized, with the approval of the GUC Trust Monitor, to set aside from distribution New GM Securities for the funding purposes described above and to sell such set aside New GM Securities with the approval of the Bankruptcy Court. The Bankruptcy Court previously approved in March and December 2012, and again in January 2015, the sale of New GM Securities to fund the then current and projected costs and expenses of the GUC Trust. The March 2012 Bankruptcy Court order also authorized the sale of further New GM Securities aggregating $13.7 million for the purpose of funding certain fees, costs and expenses of the Avoidance Action Trust and the transfer of the sale proceeds to the Avoidance Action Trust (such sale proceeds were so transferred in May 2012). Prior to the aforementioned liquidation of all New GM Securities, sales of New GM Securities to fund projected Wind-Down Costs and Reporting Costs through calendar year 2015 aggregated approximately $61.7 million, including Dividend Cash of $0.2 million and the Initial Reporting Cash (which amounts comprised part of the GUC Trust's Other Administrative Cash). Such securities sold aggregated 1,043,801 shares of New GM Common Stock, 948,887 New GM Series A Warrants and 948,887 New GM Series B Warrants. In December 2015, and again in February 2017, the Bankruptcy Court approved the appropriation of Distributable Cash aggregating approximately $22.0 million to fund the projected costs and expenses of the GUC Trust through calendar year 2017. Such appropriation reduced Distributable Cash and increased Other Administrative Cash. As of June 30, 2017, Other Administrative Cash aggregated $12.3 million (consisting of cash and cash equivalents and marketable securities). To the extent that any of the Other Administrative Cash is not ultimately required and is held by the GUC Trust at the time of its dissolution, such remaining Other Administrative Cash will be distributed by the GUC Trust to holders of GUC Trust Units.

As of June 30, 2017, Distributable Cash of $30.1 million was set aside for projected GUC Trust fees, costs and expenses to be incurred beyond 2017. Accordingly, such Distributable Cash is not available for distribution to the beneficiaries of GUC Trust Units. Set aside and/or appropriated Distributable Cash is reflected in cash and cash equivalents and marketable securities in the Statement of Net Assets in Liquidation until expended.

### *Funding for Potential Tax Liabilities on Dispositions of New GM Securities, Dividends on New GM Common Stock and Investment Income*

The GUC Trust is subject to U.S. federal income tax on realized net gains from the distribution and sale of New GM Securities (such taxes, "Taxes on Distribution"). The GUC Trust is also subject to U.S. federal income tax on dividends received on New GM Common Stock held by the GUC Trust (such taxes, "Dividend Taxes") and on investment income earned on Distributable Cash (such taxes, "Investment Income Taxes"). The GUC Trust Agreement provides that the Administrative Fund may not be utilized to satisfy any Taxes on Distribution, Dividend Taxes or Investment Income Taxes. As such, the GUC Trust Administrator is authorized, with the approval of the GUC Trust Monitor, to set aside from distribution Distributable Cash in amounts that would be sufficient to satisfy any potential Taxes on Distribution, Dividend Taxes or Investment Income Taxes. Any Distributable Cash that is set aside for Dividend Taxes and Investment Income Taxes is included in the set-aside for Wind-Down Costs described above in "Funding for GUC Trust Costs of Liquidation." The GUC Trust Administrator may appropriate such set aside Distributable Cash to fund any such Taxes on Distribution, Dividend Taxes or Investment Income Taxes with the approval of the GUC Trust Monitor and, with respect to Dividend Taxes and Investment Income Taxes only, with the approval of the Bankruptcy Court. Any Distributable Cash that is appropriated in this manner will not be available for distribution to the beneficiaries of GUC Trust Units, and the appropriation of Distributable Cash (including Dividend Cash) will be classified as "Other Administrative Cash" under the GUC Trust Agreement. Set aside and/or appropriated Distributable Cash is reflected in cash and cash equivalents and marketable securities until expended to pay any Taxes on Distribution, Dividend Taxes or Investment Income Taxes. While any set-aside or appropriated Distributable Cash (including Dividend Cash) is not available for distribution, there is no corresponding liability or reserve related to any such set-aside assets reflected in the Statement of Net Assets in Liquidation or any of the other financial statements of the GUC Trust.

Prior to the liquidation of all New GM Securities in July and August 2015 described above, the GUC Trust was authorized, with the approval of the GUC Trust Monitor, to set aside from distribution New GM Securities to fund potential Taxes on Distribution, Dividend Taxes and Investment Income Taxes and to sell such set aside New GM Securities to fund the Taxes on Distribution, Dividend Taxes or Investment Income Taxes with the approval of the GUC Trust Monitor and, with respect to Dividend Taxes and Investment Income Taxes only, with the approval of the Bankruptcy Court.

During the quarter ended June 30, 2017, the GUC Trust Administrator reviewed the potential Taxes on Distribution, Dividend Taxes and Investment Income Taxes. As a result of such review, the GUC Trust

Administrator determined that no Distributable Cash should be set aside for potential Taxes on Distribution, Dividend Taxes or Investment Income Taxes. As a result of the application of Section 505(b) of the Bankruptcy Code, the GUC Trust's federal income tax returns for the year ended March 31, 2016, and all prior years, are no longer subject to examination by the Internal Revenue Service and no income taxes may be assessed for the year ended March 31, 2016, and all prior years. However, the GUC Trust's remaining capital loss carryovers and net operating loss carryovers are still subject to examination by the Internal Revenue Service in subsequent years if those losses, if any, are utilized. Such utilization is not expected as a result of the sale of all previously held New GM Securities in the year ended March 31, 2016, except potentially with respect to any recovery by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM as described in Part II, Item 1 ("Legal Proceedings"), which is not estimable at this time. Accordingly, no income taxes are expected to be paid in the future, except potentially with respect to any taxes due on any recovery on the proposed settlement of the securities class action against New GM, which is not estimable at this time. Any such recovery would only potentially generate an income tax liability in the unlikely event that the GUC Trust is required to recalculate its previously recognized capital gains and losses from the sale and distribution of New GM Securities in prior years using a tax basis determined on December 15, 2011 (when record ownership of the previously held New GM Securities transferred to the GUC Trust from MLC) rather than on March 31, 2011 (when beneficial ownership for a substantial majority of the previously held New GM Securities transferred to the GUC Trust from MLC). See Note 7 and "Critical Accounting Policies and Estimates – Income Taxes" in Item 2 ("Management's Discussion and Analysis") below for more information regarding income taxes and remaining capital and net operating loss carryovers generated in prior years that are still subject to examination by the Internal Revenue Service and which potentially could succeed to Claimants (as defined below pursuant to tax rules) and the material uncertainties associated therewith. The GUC Trust Administrator intends to continue to reevaluate the amount of Distributable Cash set aside on a quarterly basis.

For additional information regarding set aside Distributable Cash, see "Net Assets in Liquidation— Distributable Cash Set Aside from Distribution" in Item 2 ("Management's Discussion and Analysis of Financial Condition and Results of Operations") below.

### Residual Wind-Down Claims and Costs

Upon the dissolution of the Debtors, which occurred on December 15, 2011, the GUC Trust became responsible for resolving and satisfying (to the extent allowed) all remaining disputed administrative expenses, priority tax claims, priority non-tax claims and secured claims (the "Residual Wind-Down Claims"). On December 15, 2011, under the Plan, the Debtors transferred to the GUC Trust an amount of assets necessary (the "Residual Wind-Down Assets") to satisfy the ultimate allowed amount of such Residual Wind-Down Claims (including certain reasonable litigation defense costs related to the Term Loan Avoidance Action (the "Avoidance Action Defense Costs")), as estimated by the Debtors, and the costs, fees and expenses relating to satisfying and resolving the Residual Wind-Down Claims (the "Residual Wind-Down Costs"). The Residual Wind-Down Assets initially aggregated approximately $42.8 million (which amount consisted of approximately $40.0 million in cash, including approximately $1.4 million designated for the payment of Avoidance Action Defense Costs, and the transferred benefit of approximately $2.8 million in prepaid expenses). To the extent that the Residual Wind-Down Claims and the Residual Wind-Down Costs are less than the Residual Wind-Down Assets, any excess funds will be returned to the DIP Lenders. Also, while not expected at this time, if the GUC Trust Administrator determines that the Residual Wind-Down Assets are not adequate to satisfy the Residual Wind-Down Claims (including the actual amount of Avoidance Action Defense Costs) and Residual Wind-Down Costs, such costs will be satisfied by Other Administrative Cash. If there is no remaining Other Administrative Cash, the GUC Trust Administrator is authorized to, with GUC Trust Monitor approval, set aside and, with Bankruptcy Court approval, appropriate Distributable Cash to cover the shortfall. To the extent that Distributable Cash is set aside and/or appropriated to obtain funding to complete the wind-down of the Debtors, such Distributable Cash will not be available for distribution to the beneficiaries of the GUC Trust. Therefore, the amount of Residual Wind-Down Claims and Residual Wind-Down Costs could reduce the assets of the GUC Trust available for distribution. The setting aside or appropriation of Distributable Cash (including Dividend Cash) itself is not reflected in the Statement of Net Assets in Liquidation or any of the other financial statements of the GUC Trust. Rather, such set aside or appropriated Distributable Cash (including Dividend Cash) is reflected in cash and cash equivalents and marketable securities in the accompanying Condensed Statement of Net Assets in Liquidation until expended. After the GUC Trust has concluded its affairs, any funds remaining that were obtained from the sale of New GM Securities or appropriation of Distributable Cash to fund the wind-down process or the resolution and satisfaction of the Residual Wind-Down Claims will be distributed to the holders of the GUC Trust Units.

As of June 30, 2017, the amount of Avoidance Action Defense Costs incurred to date exceeds the corresponding cash of $1.4 million received by the GUC Trust from MLC on the Dissolution Date by approximately $30.2 million. As a result, new Residual Wind-Down Claims have arisen in the amount of such excess. In April 2017, the GUC Trust entered into a letter agreement with the administrative agent for the prepetition lenders who are the defendants in the Term Loan Avoidance Action, or the

Administrative Agent. Such letter agreement provides that the GUC Trust's obligation to pay Avoidance Action Defense Costs of the Administrative Agent is limited to an amount approximating the remaining designated Residual Wind-Down Assets. Such cap on Avoidance Action Defense Costs shall remain in place unless and until the Term Loan Avoidance Action is resolved in full (by final court order or by settlement), which court order or settlement contains a determination that the Administrative Agent was oversecured with respect to the loan which is the subject of the Term Loan Avoidance Action, or otherwise contains a voluntary agreement with the GUC Trust with respect to payment of the Avoidance Action Defense Costs. Accordingly, at this time, the GUC Trust does not expect to incur additional Avoidance Action Defense Costs beyond the remaining designated Residual Wind-Down Assets.

As of June 30, 2017, Residual Wind-Down Assets aggregating $0.3 million were held by the GUC Trust and were recorded in cash and cash equivalents in the accompanying Condensed Statement of Net Assets in Liquidation as of June 30, 2017. There was approximately $0.2 million in expected Residual Wind-Down Claims and Costs against such assets as of June 30, 2017, which are recorded in accounts payable and accrued liabilities in the accompanying Condensed Statement of Net Assets in Liquidation as of June 30, 2017.

In addition to the Residual Wind-Down Assets, the GUC Trust also received on the Dissolution Date approximately $3.4 million in cash from MLC, which amount included: (i) $1.4 million in respect of certain costs, fees and expenses payable under the Plan to the indenture trustees and fiscal and paying agents for the previously outstanding debt of MLC (the "Indenture Trustee / Fiscal and Paying Agent Costs"), and (ii) $2.0 million in respect of Reporting Costs. The funds received were credited to the reserve for expected costs of liquidation. Any unused portion of the funds designated for the Indenture Trustee / Fiscal and Paying Agent Costs must be returned to the DIP Lenders and will not be available for distribution to the holders of GUC Trust Units at the winding up and conclusion of the GUC Trust. As of June 30, 2017, funds designated for the Indenture Trustee / Fiscal and Paying Agents Costs held by the GUC Trust approximated $0.2 million and are recorded in cash and cash equivalents and marketable securities in the accompanying Condensed Statement of Net Assets in Liquidation. None of the approximately $2.0 million in funds designated for Reporting Costs remained as of June 30, 2017.

**Net Assets in Liquidation**

**Text Block [Abstract]**

Net Assets in Liquidation

### 3.    Net Assets in Liquidation

*Description*

Under the GUC Trust Agreement and the Plan, as described more fully in Note 1, the beneficiaries of the GUC Trust are future and, to the extent their liquidating distributions have not yet been paid to them, current holders of Allowed General Unsecured Claims and future and current holders of GUC Trust Units. Assets of the GUC Trust consisting primarily of Distributable Cash (including Dividend Cash) as described in Note 1 are available to be distributed to the Trust Beneficiaries in accordance with the Plan and the GUC Trust Agreement, except to the extent that they are set aside or appropriated for funding the expected costs of liquidation and potential tax liabilities of the GUC Trust. The amounts of net assets in liquidation presented in the accompanying Condensed Statements of Net Assets in Liquidation correspond to the amounts of GUC Trust Distributable Assets as of the respective dates, after certain adjustments including reductions for the amounts of set aside Distributable Cash and any appropriated Distributable Cash. GUC Trust Distributable Assets aggregated approximately $466.2 million at June 30, 2017. For additional information, see "Net Assets in Liquidation—Distributable Assets" in Item 2 ("Management's Discussion and Analysis of Financial Condition and Results of Operations") below.

*Cash and Cash Equivalents and Marketable Securities*

As of June 30, 2017, cash and cash equivalents and marketable securities aggregated $513.2 million and are comprised of the following:

| (in thousands) | |
|---|---:|
| Distributable Cash (including associated Dividend Cash) | $498,548 |
| Residual Wind-Down Assets | 320 |
| Other Administrative Cash | 12,341 |
| Administrative Fund | 1,735 |
| Funds for Indenture Trustee / Fiscal Paying Agent Costs | 212 |
| Total | $513,156 |

As described in Note 4, as of June 30, 2017, the GUC Trust had accrued liquidating distributions payable aggregating $10.0 million. Such amount includes $7.8 million that was distributable to holders of GUC Trust Units in respect of Excess GUC Trust Distributable Assets as of June 30, 2017. In addition, as described in Note 2, as of June 30, 2017, the amount of Distributable Cash reflected in the table above includes $30.1 million of amounts set aside for projected GUC Trust fees, costs and expenses to be incurred beyond 2017. The aggregate amount of Distributable Cash which was pending distribution or was set aside and was not available for distribution at June 30, 2017 was $40.1 million.

*Potential Recovery in New GM Shareholder Class Action Proposed Settlement*

As described in Part II, Item 1 ("Legal Proceedings"), the GUC Trust has filed a proof of claim with the settlement administrator in connection with a proposed settlement of a securities class action against New GM. The amount of potential recovery for the GUC Trust, if any, from such proposed settlement is not estimable at this time.

*Accrued Investment Income on Cash Equivalents and Marketable Securities*

As of June 30, 2017 and March 31, 2017, the GUC Trust has accrued approximately $4.5 million and $3.4 million, respectively, of investment income on cash equivalents and marketable securities expected to be earned over the remaining liquidation period in accordance with the liquidation basis of accounting. Such accrual is estimated principally based on forecasted cash outflows and expected returns based on recent yields on Treasury bills in which the marketable securities are invested.

*Potential Distributable Capital and Net Operating Loss Carryovers*

As described in "Critical Accounting Policies and Estimates—Income Taxes" in Item 2 ("Management's Discussion and Analysis of Financial Condition and Results of Operations") below, the GUC Trust's unused capital and net operating loss carryovers potentially could succeed to Claimants (as defined below pursuant to tax rules) upon the termination of the GUC Trust. Reference is made thereto for information regarding such potential distributable loss carryovers and the material uncertainties associated therewith.

*Trust Units*

As described in Note 1, under the Plan, each holder of an Allowed General Unsecured Claim retains a contingent right to receive, on a pro rata basis, additional Distributable Cash (if and to the extent not required for the satisfaction of previously Disputed General Unsecured Claims or potential Term Loan Avoidance Action Claims, or appropriation for the payment of the expenses or tax liabilities of the GUC Trust). The GUC Trust issues units representing such contingent rights ("GUC Trust Units") at the rate of one GUC Trust Unit per $1,000 of Allowed General Unsecured Claims to each holder of an Allowed General Unsecured Claim, subject to rounding pursuant to the GUC Trust Agreement, in connection with the initial recognition of each Allowed General Unsecured Claim.

The GUC Trust makes quarterly liquidating distributions to holders of GUC Trust Units to the extent that (i) (a) certain previously Disputed General Unsecured Claims asserted against the Debtors' estates or potential Term Loan Avoidance Action Claims are either disallowed or are otherwise resolved favorably to the GUC Trust (thereby reducing the amount of GUC Trust assets reserved for distribution in respect of such asserted or potential claims) or (b) certain Excess GUC Trust Distributable Assets (as defined in the GUC Trust Agreement) that were previously set aside from distribution in the manner permitted under the GUC Trust Agreement, and (ii) as a result of the foregoing, the amount of Excess GUC Trust Distributable Assets (as defined in the GUC Trust Agreement) as of the end of the relevant quarter exceeds thresholds set forth in the GUC Trust Agreement.

The following table presents the changes during the three months ended June 30, 2017, in the numbers of GUC Trust Units outstanding or which the GUC Trust was obligated to issue:

|  | Trust Units |
|---|---:|
| Outstanding or issuable at March 31, 2017 | 31,854,103 |
| Issued during the period | 47 |
| Less: Issuable at beginning of period | (47) |
| Add: Issuable at end of period (1) | 1,350 |
| Outstanding or issuable at June 30, 2017 (2) | 31,855,453 |

(1)  The number of GUC Trust Units issuable at any time represents GUC Trust Units issuable in respect of Allowed General Unsecured Claims that were newly allowed during the fiscal quarter.

(2)  The number of GUC Trust Units outstanding at any time represents GUC Trust Units issued in respect of Allowed General Unsecured Claims that were allowed in prior periods, including GUC Trust Units held by the GUC Trust for the benefit of (a) holders of Allowed General Unsecured Claims who had not yet supplied information required by the GUC Trust in order to effect the initial distribution to which they are entitled and (b) governmental entities that are precluded by applicable law from receiving distributions of GUC Trust Units.

(3)  The number of GUC Trust Units outstanding or issuable at end of the quarter does not equal the amount of Allowed General Unsecured Claims on a 1 to 1,000 basis at the corresponding date because of additional GUC Trust Units that were issued due to rounding.

### *Allowed and Disputed Claims*

The total cumulative pro rata liquidating distributions ultimately received by Trust Beneficiaries is dependent upon the current amount of Allowed General Unsecured Claims and final resolution of outstanding Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims (as described in Note 2). Disputed General Unsecured Claims at June 30, 2017 reflect a court ordered distribution "set aside" for certain claims filed without a claim amount and other adjustments as ordered by the court or permitted by the Plan. The Disputed General Unsecured Claims may settle at amounts that differ significantly from these amounts and at amounts that differ significantly from the historical pattern at which claims have been settled and allowed in proportion to claims resolved and disallowed. As described in Note 1, prior to the resolution and allowance of Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims, liabilities are not recorded for the conditional obligations associated with Disputed General Unsecured Claims and potential Term Loan Avoidance Action Claims. Liquidating distributions payable are recorded in the amount of Distributable Cash (previously the fair value of New GM Securities) to be distributed as of the end of the period in which the Disputed General Unsecured Claims and potential Term Loan Avoidance Claims are resolved as Allowed General Unsecured Claims.

The following table presents a summary of activity with respect to Allowed and Disputed General Unsecured Claims and Term Loan Avoidance Action Claims for the three months ended June 30, 2017:

|  | Allowed General Unsecured | Disputed General Unsecured | Term Loan Avoidance Action | Maximum Amount of Unresolved | Total Claim |
|---|---|---|---|---|---|

| (In thousands) | Claims | Claims | Claims | Claims (1) | Amount (2) |
|---|---|---|---|---|---|
| Total, March 31, 2017 | $31,854,031 | $ 50,000 | $1,499,204 | $ 1,549,204 | $33,403,235 |
| New Allowed General Unsecured Claims | 1,350 | — | — | — | 1,350 |
| Term Loan Avoidance Action Claims resolved or disallowed | — | — | (3,972) | (3,972) | (3,972) |
| Total, June 30, 2017 | $31,855,381 | $ 50,000 | $1,495,232 | $ 1,545,232 | $33,400,613 |

(1)  Maximum Amount of Unresolved Claims represents the sum of Disputed General Unsecured Claims and Term Loan Avoidance Action Claims.

(2)  Total Claim Amount represents the sum of Allowed General Unsecured Claims and Maximum Amount of Unresolved Claims.

During the three months ended June 30, 2017, the Avoidance Action Trust reached settlements with certain defendants to the Term Loan Avoidance Action resulting in recoveries to the Avoidance Action Trust of approximately $1.4 million. As a result, corresponding Term Loan Avoidance Action Claims of approximately $1.4 million arose and were allowed under the GUC Trust Agreement.

As described in Part II, Item 1 ("Legal Proceedings"), certain plaintiffs in litigation associated with General Motors product recalls have filed motions with the Bankruptcy Court seeking authority to file late proofs of claim against the GUC Trust. Were any late proofs of claim to be filed (following receipt of authority to do so from the Bankruptcy Court), additional Disputed General Unsecured Claims would arise.

**Liquidating Distributions**

**3 Months Ended**

**Jun. 30, 2017**

**Text Block [Abstract]**

Liquidating Distributions

4.   **Liquidating Distributions**

Liquidating distributions in the three months ended June 30, 2017 consisted of the following:

| (in thousands) | Fair Value |
|---|---|
| Distributions during the three months ended June 30, 2017 | $        — |
| Less: Liquidating distributions payable at March 31, 2017 | (9,205) |
| Add: Liquidating distributions payable at June 30, 2017 | 10,011 |
| Total | $        806 |

The GUC Trust was obligated at June 30, 2017 to distribute Distributable Cash of $10.0 million to the following: (1) holders of GUC Trust Units for excess distributions payable, (2) certain holders of Allowed General Unsecured Claims who had not then satisfied certain informational requirements necessary to effect the distribution to which they are entitled and (3) holders of certain Term Loan Avoidance Action Claims as described in Note 3.

**Fair Value Measurements**

**3 Months Ended**

**Jun. 30, 2017**

**Fair Value Disclosures [Abstract]**

Fair Value Measurements

5. **Fair Value Measurements**

Accounting standards require certain assets and liabilities be reported at fair value in the financial statements and provide a framework for establishing that fair value. The framework for determining fair value is based on a hierarchy that prioritizes the inputs and valuation techniques used to measure fair value. The GUC Trust's Cash Equivalents, Marketable Securities, and Liquidating Distributions Payable are presented as provided by this hierarchy.

*Level 1*—In general, fair values determined by Level 1 inputs use quoted prices in active markets for identical assets and liabilities that the GUC Trust has the ability to access.

*Level 2*—Fair values determined by Level 2 inputs use other inputs that are observable, either directly or indirectly. These Level 2 inputs include quoted prices for similar assets or liabilities in active markets, and other inputs such as interest rates and yield curves that are observable at commonly quoted intervals.

*Level 3*—Level 3 inputs are unobservable inputs, including inputs that are available in situations where there is little, if any, market activity for the related asset or liability. These Level 3 fair value measurements are based primarily on management's own estimates using pricing models, discounted cash flow methodologies, or similar techniques taking into account the characteristics of the asset or liability. The GUC Trust had no assets or liabilities that are measured with Level 3 inputs at June 30, 2017 and March 31, 2017.

In instances where inputs used to measure fair value fall into different levels in the above fair value hierarchy, fair value measurements in their entirety are categorized based on the lowest level input that is significant to the valuation. The GUC Trust's assessment of the significance of particular inputs to these fair value measurements requires judgment and considers factors specific to each asset or liability.

The GUC Trust also holds other financial instruments not measured at fair value on a recurring basis, including Accounts Payable and Other Liabilities. The fair value of these liabilities approximates the carrying amounts in the accompanying financial statements due to the short maturity of such instruments.

The following table presents information about the GUC Trust's assets and liabilities measured at fair value on a recurring basis at June 30, 2017 and March 31, 2017, and the valuation techniques used by the GUC Trust to determine those fair values.

| (in thousands) | June 30, 2017 | | | |
|---|---|---|---|---|
| | Level 1 | Level 2 | Level 3 | Total |
| **Assets:** | | | | |
| Cash Equivalents: | | | | |
| Money market funds | $ 1,074 | $ — | $ — | $ 1,074 |
| Marketable Securities: | | | | |
| U.S. Treasury bills | — | 509,840 | — | 509,840 |
| Total Assets | $ 1,074 | $509,840 | $ — | $510,914 |
| **Liabilities:** | | | | |
| Liquidating distributions payable | $10,011 | $ — | $ — | $ 10,011 |

| (in thousands) | March 31, 2017 | | | |
|---|---|---|---|---|
| | Level 1 | Level 2 | Level 3 | Total |
| **Assets:** | | | | |
| Cash equivalents: | | | | |
| Money market funds | $ 2,109 | $ — | $ — | $ 2,109 |
| Marketable Securities: | | | | |
| U.S. Treasury bills | — | 522,452 | — | 522,452 |
| Total Assets | $ 2,109 | $522,452 | $ — | $524,561 |
| **Liabilities:** | | | | |
| Liquidating distributions payable | $ 9,205 | $ — | $ — | $ 9,205 |

The following are descriptions of the valuation methodologies used for assets and liabilities measured at fair value:

Due to their short-term bond nature, the fair value of cash equivalents approximates their carrying value.

- Marketable securities consist of U.S. Treasury bills. Due to their short-term maturities, the fair value of U.S. Treasury bills approximates their carrying value.

- Liquidating distributions payable are valued at the amount of cash that the GUC Trust is obligated to distribute.

The GUC Trust's policy is to recognize transfers between levels of the fair value hierarchy as of the actual date of the event of change in circumstances that caused the transfer. There were no such transfers during the three months ended June 30, 2017 and the year ended March 31, 2017.

**Reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs**

**3 Months Ended**

**Jun. 30, 2017**

**Text Block [Abstract]**

Reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs

6.  **Reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs**

The following is a summary of the activity in the reserves for expected costs of liquidation for the three months ended June 30, 2017 and 2016:

| (in thousands) | Reserve for Expected Wind-Down Costs | Reserve for Expected Reporting Costs | Reserve for Indenture Trustee/Fiscal and Paying Agent Costs | Total Reserves for Expected Costs of Liquidation |
|---|---|---|---|---|
| | *Three months ended June 30, 2017* | | | |
| Balance, March 31, 2017 | $ 9,851 | $ 8,827 | $ 225 | $ 18,903 |
| Plus additions to reserves | 3,011 | 26 | — | 3,037 |
| Less liquidation costs incurred: | | | | |
| Trust professionals | (823) | (742) | — | (1,565) |
| Trust governance | (708) | (450) | (16) | (1,174) |
| Other administrative expenses | (14) | (42) | — | (56) |
| Balance, June 30, 2017 | $ 11,317 | $ 7,619 | $ 209 | $ 19,145 |

| (in thousands) | Reserve for Expected Wind-Down Costs | Reserve for Expected Reporting Costs | Reserve for Indenture Trustee/Fiscal and Paying Agent Costs | Total Reserves for Expected Costs of Liquidation |
|---|---|---|---|---|
| | *Three months ended June 30, 2016* | | | |
| Balance, March 31, 2016 | $ 16,727 | $ 6,379 | $ 293 | $ 23,399 |
| Plus additions to (reductions in) reserves | (310) | 38 | — | (272) |
| Less liquidation costs incurred: | | | | |
| Trust professionals | (616) | (518) | — | (1,134) |
| Trust governance | (756) | (450) | (17) | (1,223) |
| Other administrative expenses | (18) | (81) | — | (99) |
| Balance, June 30, 2016 | $ 15,027 | $ 5,368 | $ 276 | $ 20,671 |

During the three months ended June 30, 2017, estimates of expected Wind-Down Costs and estimates of expected Reporting Costs increased by $3.0 million and $26,000, respectively. During the three months ended June 30, 2016, estimates of expected Wind-Down Costs and estimates of expected Reporting Costs decreased by $0.3 million and increased by $38,000, respectively. Such revisions in the estimates were recorded as additions to (reductions in) the reserves for expected costs of liquidation in such periods. The GUC Trust has recorded reserves for expected costs of liquidation that represent amounts expected to be incurred over the estimated remaining liquidation period of the GUC Trust for which there was a reasonable basis for estimation as of June 30, 2017.

The amount of liquidation costs that will ultimately be incurred depends both on the time period and on the extent of activities required for the GUC Trust to complete its functions and responsibilities under the Plan and the GUC Trust Agreement. Significant uncertainty remains both as to that time period and as to the extent of those activities. As of June 30, 2017, the recorded reserves for expected costs of liquidation reflect estimated costs for a remaining liquidation period extending through January 2019, which has been estimated predominately on a modified probability-weighted basis as permitted under U.S. GAAP and which the GUC Trust believes is the most appropriate measurement basis under the circumstances. Where an outcome is estimated to be likely, the likely outcome has been used as the best estimate and no weight has been given to the unlikely outcome. Beginning in the quarter ended December 31, 2016, the remaining liquidation period is dependent predominantly on the estimate of the remaining period of time for resolution of litigation involving certain General Motors vehicle recalls described in Part II, Item 1 ("Legal Proceedings"). During such quarter, developments in such vehicle recall litigation resulted in an extension in the estimated length of time for resolution of such litigation that now exceeds the estimate of the remaining period of time for resolution of the Term Loan Avoidance Action (which previously was the primary determinant). In addition, certain additional estimated time to wind down the GUC Trust following resolution of the litigation is included in the estimated liquidation period. It is possible that future developments in the General Motors vehicle recall litigation, as well as the Term Loan Avoidance Action,

could extend the current estimate of such remaining period of time for resolution and, therefore, extend the estimated remaining liquidation period of the GUC Trust beyond January 2019. In addition, certain liquidation costs that are expected to be prepaid by the GUC Trust upon its dissolution have also been estimated and accrued. It is reasonably possible that the GUC Trust's estimates regarding the costs and remaining liquidation period will change in the near term.

The following is a summary of the activity in the reserves for Residual Wind-Down Claims and Costs for the three months ended June 30, 2017 and 2016:

| (in thousands) | 2017 | 2016 |
|---|---:|---:|
| Balance, beginning of period | $ 966 | $19,957 |
| Plus addition to reserves | 9 | — |
| Less claims allowed during the period | (815) | (2,437) |
| Less costs incurred by trust professionals | (—) | (1) |
| Balance, end of period | $ 160 | $17,519 |

As described in Note 2, in April 2017, the GUC Trust entered into a letter agreement with the Administrative Agent. Such letter agreement provides that the GUC Trust's obligation to pay Avoidance Action Defense Costs of the Administrative Agent is limited to an amount approximating the remaining designated Residual Wind-Down Assets. Such cap on Avoidance Action Defense Costs shall remain in place unless and until the Term Loan Avoidance Action is resolved in full (by final court order or by settlement), which court order or settlement contains a determination that the Administrative Agent was oversecured with respect to the loan which is the subject of the Term Loan Avoidance Action, or otherwise contains a voluntary agreement with the GUC Trust with respect to payment of the Avoidance Action Defense Costs. Accordingly, at this time, the GUC Trust does not expect to incur additional Avoidance Action Defense Costs beyond the remaining designated Residual Wind-Down Assets.

**Income Taxes**

**3 Months Ended**

**Jun. 30, 2017**

**Income Tax Disclosure [Abstract]**

Income Taxes

7.   **Income Taxes**

There was no current tax benefit or provision for the three months ended June 30, 2017 and 2016, due to cumulative net operating and capital losses, and no income taxes have been paid by the GUC Trust. There also was no deferred tax benefit or provision in such periods as a result of the establishment of a full valuation allowance against net deferred tax assets at the beginning and end of such periods.

Deferred taxes in the accompanying Condensed Statement of Net Assets in Liquidation at June 30, 2017 are comprised of the following components:

| | |
|---|---:|
| Deferred tax assets: | |
| Reserves for expected costs of liquidation and Residual Wind-Down Claims and Costs | $  7,645 |
| Net operating and capital loss carryovers | 61,836 |
| Gross deferred tax assets | 69,481 |
| Less: Valuation allowance | (67,704) |
| Deferred tax asset, net of valuation allowance | 1,777 |
| Deferred tax liabilities: | |
| Accrued investment income | (1,777) |
| Gross deferred tax liabilities | (1,777) |
| Net deferred taxes | $     — |

As previously disclosed, during the quarter ended September 30, 2013, the GUC Trust made a determination to file its U.S. federal income tax returns taking the position that beneficial ownership for a substantial majority of New GM Securities was transferred from MLC to the GUC Trust on March 31, 2011, and that the tax basis of such New GM Securities should be determined with reference to the value of such securities on such date, instead of December 15, 2011, when record ownership of the remaining New GM Securities still held by MLC was transferred from MLC to the GUC Trust. For the remaining substantial minority of New GM Securities transferred from MLC to the GUC Trust, the GUC Trust determined that the transfer of beneficial ownership occurred on other dates for which the tax basis should be determined by reference to the value of such securities on such dates. This new tax position resulted in an increased tax basis of the New GM Securities from the prior tax position and, therefore, reduced taxable gains and increased taxable losses on distributions and sales of New GM Securities since March 31, 2011. The new tax position has not been sustained on examination by the Internal Revenue Service as of the date hereof. However, the GUC Trust believes, based on the available evidence and consultation with GUC Trust professionals, that it is more likely than not that the new tax position will be sustained on examination by the Internal Revenue Service based on the technical merits of the position. Accordingly, this new tax position has been recognized in the current and deferred income tax liabilities and the income tax provision in the GUC Trust's financial statements since the quarter ended September 30, 2013.

Following the GUC Trust's determination to utilize the new tax position set forth above, the GUC Trust filed its U.S. federal income tax returns for the years ended March 31, 2013, and thereafter, with the Internal Revenue Service using such new tax position. Such tax returns were accompanied by requests for prompt determination of tax liability pursuant to Section 505(b) of the Bankruptcy Code, and the 60-day statutory notification periods set forth in Section 505(b) of the Bankruptcy Code with respect to the GUC Trust's U.S. federal income tax returns for the year ended March 31, 2016, and prior years, have expired. Accordingly, the tax liabilities set forth in the GUC Trust's U.S. federal income tax returns for the year ended March 31, 2016, and prior years, are no longer subject to examination by the Internal Revenue Service and no income taxes can be assessed for such years. Also, no income taxes are expected to be paid in the future as a result of the liquidation of all the GUC Trust's holdings of New GM Securities during the year ended March 31, 2016, except potentially with respect to any taxes due on any recoveries by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM as described in Part II, Item 1 ("Legal Proceedings"), which is not estimable at this time. Any such recovery would only potentially generate an income tax liability in the unlikely event that the GUC Trust is required to recalculate its previously recognized capital gains and losses from the sale and distribution of New GM Securities in prior years using a tax basis determined on December 15, 2011 (when record ownership of the previously held New GM Securities transferred to the GUC Trust from MLC) rather than on March 31, 2011 (when beneficial ownership for a substantial majority of the previously held New GM Securities transferred to the GUC Trust from MLC).

On June 14, 2017, the GUC Trust filed its U.S. federal income tax return for the year ended March 31, 2017

with the Internal Revenue Service, and requested prompt determination of tax liability pursuant to Section 505(b) of the Bankruptcy Code that same day. As of the date of this Form 10-Q, the GUC Trust has not received notification from the Internal Revenue Service whether or not its income tax return for the year ended March 31, 2017 has been selected for examination.

Remaining capital loss carryovers that were generated in prior years utilizing the new tax position, which aggregate $24.3 million (after expiration on March 31, 2017 of capital loss carryovers of $158.1 million attributable to the year ended March 31, 2012), along with net operating loss carryovers generated through June 30, 2017, aggregating $131.8 million, could be subject to examination by the Internal Revenue Service in subsequent years when those losses, if any, are utilized. The GUC Trust does not expect to utilize any capital or net operating loss carryovers in the future, except with respect to any recovery by the GUC Trust as a member of a settlement class related to a proposed settlement of a securities class action against New GM as described in Part II, Item 1 ("Legal Proceedings"), which is not estimable at this time. The remaining capital loss carryovers begin to expire on March 31, 2018 and the net operating loss carryovers begin to expire on March 31, 2032. These loss carryovers in the aggregate result in a deferred tax asset of $61.8 million (reflected in the table above). As described in "Critical Accounting Policies and Estimates—Income Taxes" in Item 2 ("Management's Discussion and Analysis") below, such loss carryovers potentially could succeed to Claimants (as defined below pursuant to tax rules). Reference is made thereto for information regarding such potential distributable loss carryovers and the material uncertainties associated therewith.

A full valuation allowance against net deferred tax assets aggregating $67.7 million was established as of June 30, 2017 because, as a result of the liquidation of all of the GUC Trust's holdings of New GM Securities, it has been determined that such deferred tax assets are not realizable at this time. Such valuation allowance was increased by $0.4 million from the full valuation allowance against net deferred tax assets established as of March 31, 2017.

|  | 3 Months Ended |
|---|---|
| **Related Party Transactions** | **Jun. 30, 2017** |

**Related Party Transactions [Abstract]**

Related Party Transactions

8.  **Related Party Transactions**

In addition to serving as GUC Trust Administrator, Wilmington Trust Company continues to serve as trustee pursuant to the indentures for certain series of previously outstanding debt of MLC. Wilmington Trust Company has received and may receive in the future certain customary fees in amounts consistent with Wilmington Trust Company's standard rates for such service. The Bankruptcy Court previously approved the creation of a segregated fund for the purposes of funding such fees for Wilmington Trust Company, as well as the other indenture trustees and fiscal and paying agents for previously outstanding debt of MLC. There were no such fees for Wilmington Trust Company in the three months ended June 30, 2017 and 2016.

In addition, Wilmington Trust Company has also entered into certain arrangements with the GUC Trust pursuant to which it or its affiliates have previously received, and may in the future receive, reasonable and customary fees and commissions for services other than services in the capacity of GUC Trust Administrator. Such arrangements include the provision of custodial, investment advisory and brokerage services to the GUC Trust. During the three months ended June 30, 2017 and 2016, the total amount of such fees and commissions was approximately $65,000 and $82,000, respectively.

| **Net Assets in Liquidation (Tables)** | **3 Months Ended** |
| --- | --- |
| | **Jun. 30, 2017** |

**Text Block [Abstract]**

**Schedule of Cash and Cash Equivalent and Marketable Securities**

As of June 30, 2017, cash and cash equivalents and marketable securities aggregated $513.2 million and are comprised of the following:

| (in thousands) | |
| --- | --- |
| Distributable Cash (including associated Dividend Cash) | $498,548 |
| Residual Wind-Down Assets | 320 |
| Other Administrative Cash | 12,341 |
| Administrative Fund | 1,735 |
| Funds for Indenture Trustee / Fiscal Paying Agent Costs | 212 |
| Total | $513,156 |

**Schedule of GUC Trust Units**

The following table presents the changes during the three months ended June 30, 2017, in the numbers of GUC Trust Units outstanding or which the GUC Trust was obligated to issue:

| | **Trust Units** |
| --- | --- |
| Outstanding or issuable at March 31, 2017 | 31,854,103 |
| Issued during the period | 47 |
| Less: Issuable at beginning of period | (47) |
| Add: Issuable at end of period (1) | 1,350 |
| Outstanding or issuable at June 30, 2017 (2) | 31,855,453 |

(1) The number of GUC Trust Units issuable at any time represents GUC Trust Units issuable in respect of Allowed General Unsecured Claims that were newly allowed during the fiscal quarter.

(2) The number of GUC Trust Units outstanding at any time represents GUC Trust Units issued in respect of Allowed General Unsecured Claims that were allowed in prior periods, including GUC Trust Units held by the GUC Trust for the benefit of (a) holders of Allowed General Unsecured Claims who had not yet supplied information required by the GUC Trust in order to effect the initial distribution to which they are entitled and (b) governmental entities that are precluded by applicable law from receiving distributions of GUC Trust Units.

(3) The number of GUC Trust Units outstanding or issuable at end of the quarter does not equal the amount of Allowed General Unsecured Claims on a 1 to 1,000 basis at the corresponding date because of additional GUC Trust Units that were issued due to rounding.

**Allowed and Disputed General Unsecured Claims and Potential Term Loan Avoidance Action Claims**

The following table presents a summary of activity with respect to Allowed and Disputed General Unsecured Claims and Term Loan Avoidance Action Claims for the three months ended June 30, 2017:

| (in thousands) | **Allowed General Unsecured Claims** | **Disputed General Unsecured Claims** | **Term Loan Avoidance Action Claims** | **Maximum Amount of Unresolved Claims (1)** | **Total Claim Amount (2)** |
| --- | --- | --- | --- | --- | --- |
| Total, March 31, 2017 | $31,854,031 | $ 50,000 | $1,499,204 | $ 1,549,204 | $33,403,235 |
| New Allowed General Unsecured Claims | 1,350 | — | — | — | 1,350 |
| Term Loan Avoidance Action Claims resolved or disallowed | — | — | (3,972) | (3,972) | (3,972) |
| Total, June 30, 2017 | $31,855,381 | $ 50,000 | $1,495,232 | $ 1,545,232 | $33,400,613 |

(1) Maximum Amount of Unresolved Claims represents the sum of Disputed General Unsecured Claims and Term Loan Avoidance Action Claims.

(2) Total Claim Amount represents the sum of Allowed General Unsecured Claims and Maximum Amount of Unresolved Claims.

| **Liquidating Distributions** | **3 Months Ended** |
| **(Tables)** | **Jun. 30, 2017** |

**Text Block [Abstract]**

Schedule of Liquidating Distributions    Liquidating distributions in the three months ended June 30, 2017 consisted of the following:

| (in thousands) | Fair Value |
|---|---:|
| Distributions during the three months ended June 30, 2017 | $  — |
| Less: Liquidating distributions payable at March 31, 2017 | (9,205) |
| Add: Liquidating distributions payable at June 30, 2017 | 10,011 |
| Total | $  806 |

**Fair Value Measurements
(Tables)**

**3 Months Ended
Jun. 30, 2017**

**Fair Value Disclosures [Abstract]**

Assets and Liabilities Measured at Fair
Value on Recurring Basis

The following table presents information about the GUC Trust's assets and liabilities measured at fair value on a recurring basis at June 30, 2017 and March 31, 2017, and the valuation techniques used by the GUC Trust to determine those fair values.

| | June 30, 2017 | | | |
|---|---|---|---|---|
| (in thousands) | Level 1 | Level 2 | Level 3 | Total |
| Assets: | | | | |
| Cash Equivalents: | | | | |
|    Money market funds | $ 1,074 | $ — | $ — | $ 1,074 |
| Marketable Securities: | | | | |
|    U.S. Treasury bills | — | 509,840 | — | 509,840 |
| Total Assets | $ 1,074 | $509,840 | $ — | $510,914 |
| Liabilities: | | | | |
| Liquidating distributions payable | $10,011 | $ — | $ — | $ 10,011 |

| | March 31, 2017 | | | |
|---|---|---|---|---|
| (in thousands) | Level 1 | Level 2 | Level 3 | Total |
| Assets: | | | | |
| Cash equivalents: | | | | |
|    Money market funds | $ 2,109 | $ — | $ — | $ 2,109 |
| Marketable Securities: | | | | |
|    U.S. Treasury bills | — | 522,452 | — | 522,452 |
| Total Assets | $ 2,109 | $522,452 | $ — | $524,561 |
| Liabilities: | | | | |
| Liquidating distributions payable | $ 9,205 | $ — | $ — | $ 9,205 |

**Reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs (Tables)**

**3 Months Ended**

**Jun. 30, 2017**

**Text Block [Abstract]**

Summary of Activity in Reserves for Expected Costs of Liquidation

The following is a summary of the activity in the reserves for expected costs of liquidation for the three months ended June 30, 2017 and 2016:

| (in thousands) | Three months ended June 30, 2017 | | | |
| | Reserve for Expected Wind-Down Costs | Reserve for Expected Reporting Costs | Reserve for Indenture Trustee/Fiscal and Paying Agent Costs | Total Reserves for Expected Costs of Liquidation |
| --- | --- | --- | --- | --- |
| Balance, March 31, 2017 | $  9,851 | $  8,827 | $  225 | $  18,903 |
| Plus additions to reserves | 3,011 | 26 | — | 3,037 |
| Less liquidation costs incurred: | | | | |
| Trust professionals | (823) | (742) | — | (1,565) |
| Trust governance | (708) | (450) | (16) | (1,174) |
| Other administrative expenses | (14) | (42) | — | (56) |
| Balance, June 30, 2017 | $  11,317 | $  7,619 | $  209 | $  19,145 |

| (in thousands) | Three months ended June 30, 2016 | | | |
| | Reserve for Expected Wind-Down Costs | Reserve for Expected Reporting Costs | Reserve for Indenture Trustee/Fiscal and Paying Agent Costs | Total Reserves for Expected Costs of Liquidation |
| --- | --- | --- | --- | --- |
| Balance, March 31, 2016 | $  16,727 | $  6,379 | $  293 | $  23,399 |
| Plus additions to (reductions in) reserves | (310) | 38 | — | (272) |
| Less liquidation costs incurred: | | | | |
| Trust professionals | (616) | (518) | — | (1,134) |
| Trust governance | (756) | (450) | (17) | (1,223) |
| Other administrative expenses | (18) | (81) | — | (99) |
| Balance, June 30, 2016 | $  15,027 | $  5,368 | $  276 | $  20,671 |

Summary of Activity in Reserves for Residual Wind-Down Claims and Costs

The following is a summary of the activity in the reserves for Residual Wind-Down Claims and Costs for the three months ended June 30, 2017 and 2016:

| (in thousands) | 2017 | 2016 |
| --- | --- | --- |
| Balance, beginning of period | $ 966 | $19,957 |
| Plus addition to reserves | 9 | — |
| Less claims allowed during the period | (815) | (2,437) |
| Less costs incurred by trust professionals | (—) | (1) |
| Balance, end of period | $ 160 | $17,519 |

**Income Taxes (Tables)**

**3 Months Ended**

**Jun. 30, 2017**

**<u>Income Tax Disclosure [Abstract]</u>**

<u>Summary of Deferred Taxes</u>

Deferred taxes in the accompanying Condensed Statement of Net Assets in Liquidation at June 30, 2017 are comprised of the following components:

| | |
|---|---:|
| Deferred tax assets: | |
| Reserves for expected costs of liquidation and Residual Wind-Down Claims and Costs | $ 7,645 |
| Net operating and capital loss carryovers | 61,836 |
| Gross deferred tax assets | 69,481 |
| Less: Valuation allowance | (67,704) |
| Deferred tax asset, net of valuation allowance | 1,777 |
| Deferred tax liabilities: | |
| Accrued investment income | (1,777) |
| Gross deferred tax liabilities | (1,777) |
| Net deferred taxes | $ — |

| Description of Trust and Reporting Policies - Additional Information (Detail) - New GM Common Stock [Member] - USD ($) $ / shares in Units, $ in Millions | Aug. 05, 2015 | Jul. 07, 2015 |
|---|---|---|
| **Basis Of Presentation And Summary Of Significant Accounting Policies [Line Items]** | | |
| Number of converted New GM Series A Warrants | | 10,352,556 |
| Number of shares of New GM Common Stock received in conversion of New GM Series A Warrants | | 7,407,155 |
| Number of converted New GM Series B Warrants | | 10,352,556 |
| Number of shares of New GM Common Stock received in conversion of New GM Series B Warrants | | 4,953,635 |
| Net proceeds from the liquidation of New GM Securities | $ 741.7 | |
| Conversion rate for New GM Series A Warrants into New GM Common Stock | | 71.549% |
| Conversion rate for New GM Series B Warrants into New GM Common Stock | | 47.849% |
| Net weighted average sales price, net of expenses, for New GM Common Stock sold after June 30, 2015 | $ 31.23 | |

| Plan of Liquidation - Additional Information (Detail) - USD ($) | 3 Months Ended Jun. 30, 2017 | 15 Months Ended Feb. 28, 2017 | 52 Months Ended Aug. 05, 2015 | Mar. 31, 2012 | Dec. 15, 2011 | Mar. 31, 2011 |
|---|---|---|---|---|---|---|
| **Class of Warrant or Right [Line Items]** | | | | | | |
| Allowed General Unsecured Claims | | | | | | $ 29,771,000,000 |
| Disputed General Unsecured Claims | $ 0 | | | | | 8,154,000,000 |
| Total aggregate amount of general unsecured claims, both allowed and disputed inclusive of potential Term Loan Avoidance Action Claims | | | | | | 39,425,000,000 |
| Reserve for remaining Disputed General Unsecured Claims | 50,000,000 | | | | | |
| Amount of Term Loan Avoidance Action | | | | | | 1,500,000,000 |
| Dividends received | | | $ 24,700,000 | | | |
| Contribution from MLC | | | | | | 52,700,000 |
| Initial Reporting Cash | | | | | | $ 5,700,000 |
| Appropriated Distributable Cash | | $ 22,000,000 | | | | |
| Distributable Cash set aside for projected Trust fees, costs and expenses | 30,100,000 | | | | | |
| Distributable Cash set aside for potential Taxes on Distribution | 0 | | | | | |
| Residual Wind-Down Assets | 300,000 | | | $ 42,800,000 | | |
| Cash received to fund Avoidance Action Defense Costs | | | | 1,400,000 | | |
| Residual wind-down assets transferred benefit in prepaid expenses | | | | 2,800,000 | | |
| Avoidance action defense costs in excess of corresponding cash | 30,200,000 | | | | | |
| Expected Residual Wind-Down Claims and Costs | 200,000 | | | | | |
| Cash received for funding Indenture Trustee Fiscal and Paying Agent Costs and Reporting Costs | | | | 3,400,000 | | |
| Cash received for indenture trustee and paying agent costs | | | | 1,400,000 | | |
| Cash received for reporting cash | | | | 2,000,000 | | |
| **New GM Securities [Member]** | | | | | | |
| **Class of Warrant or Right [Line Items]** | | | | | | |
| Aggregate sales of new GM Securities to fund costs and expenses | | 61,700,000 | | | | |
| Aggregate dividend cash associated with sales of New GM Securities to fund costs | | $ 200,000 | | | | |
| **Cash and Cash Equivalents and Marketable Securities [Member]** | | | | | | |

| Class of Warrant or Right [Line Items] | | | |
|---|---|---|---|
| Remaining Administrative Fund aggregated | 1,735,000 | | |
| Aggregate Other Administrative Cash | 12,341,000 | | |
| Residual Wind-Down Assets | 320,000 | | $ 40,000,000 |
| Funds for Indenture Trustee/Fiscal Paying Agent Costs | $ 212,000 | | |
| **New GM Series A Warrants [Member]** | | | |
| **Class of Warrant or Right [Line Items]** | | | |
| Distributable assets number of securities called by warrants | | | 136,363,635 |
| Exercise price per share | | | $ 10.00 |
| Warrants expiration date | Jul. 10, 2016 | | |
| Number of securities sold to fund costs and expenses | | 948,887 | |
| **New GM Series B Warrants [Member]** | | | |
| **Class of Warrant or Right [Line Items]** | | | |
| Distributable assets number of securities called by warrants | | | 136,363,635 |
| Exercise price per share | | | $ 18.33 |
| Warrants expiration date | Jul. 10, 2019 | | |
| Number of securities sold to fund costs and expenses | | 948,887 | |
| **New GM Common Stock [Member]** | | | |
| **Class of Warrant or Right [Line Items]** | | | |
| Distributable assets number of securities | | | 150,000,000 |
| Securities authorized for sale | | $ 13,700,000 | |
| Number of securities sold to fund costs and expenses | | 1,043,801 | |

| Net Assets in Liquidation - Additional Information (Detail) | Mar. 31, 2011 USD ($) Unit | 3 Months Ended | |
|---|---|---|---|
| | | Jun. 30, 2017 USD ($) | Mar. 31, 2017 USD ($) |
| **Net Assets in Liquidation [Line Items]** | | | |
| Distributable Assets | | $ 466,200,000 | |
| Cash and cash equivalents and marketable securities | | 513,200,000 | |
| Liquidating distributions payable in Distributable Cash for Excess GUC Trust Distributable Assets | | 7,800,000 | |
| Distributable Cash set aside for projected Trust fees, costs and expenses | | 30,100,000 | |
| Distributable cash pending distribution or set aside and not available for distribution | | 40,100,000 | |
| Accrued investment income | | 4,500,000 | $ 3,400,000 |
| Number of Trust Units issued per thousand dollars of allowed general unsecured claims | Unit | 1 | | |
| Amount required to issue one Trust Unit per contingent rights | $ 1,000 | | |
| **Liquidation Basis of Accounting [Member]** | | | |
| **Net Assets in Liquidation [Line Items]** | | | |
| Liquidating distributions payable | | 10,011,000 | $ 9,205,000 |
| **Avoidance Action Trust Proposed Agreement [Member]** | | | |
| **Net Assets in Liquidation [Line Items]** | | | |
| Term loan avoidance action claims allowed | | $ 1,400,000 | |

| Net Assets in Liquidation - Schedule of Cash and Cash Equivalent and Marketable Securities (Detail) - USD ($) $ in Thousands | Jun. 30, 2017 | Dec. 15, 2011 |
|---|---|---|
| **Cash and Cash Equivalents [Line Items]** | | |
| Residual Wind-Down Assets | $ 300 | $ 42,800 |
| Total | 513,200 | |
| Cash and Cash Equivalents and Marketable Securities [Member] | | |
| **Cash and Cash Equivalents [Line Items]** | | |
| Distributable Cash (including associated Dividend Cash) | 498,548 | |
| Residual Wind-Down Assets | 320 | $ 40,000 |
| Other Administrative Cash | 12,341 | |
| Administrative Fund | 1,735 | |
| Funds for Indenture Trustee / Fiscal Paying Agent Costs | 212 | |
| Total | $ 513,156 | |

**Net Assets in Liquidation - Schedule of GUC Trust Units (Detail)**

**3 Months Ended**

**Jun. 30, 2017**

**Trust**

### Net Assets [Abstract]

| | |
|---|---|
| Outstanding or issuable at beginning of period | 31,854,103 |
| Issued during the period | 47 |
| Less: Issuable at beginning of period | (47) |
| Add: Issuable at end of period | 1,350 |
| Outstanding or issuable at end of period | 31,855,453 |

| Net Assets in Liquidation - Schedule of GUC Trust Units (Parenthetical) (Detail) | Mar. 31, 2011 USD ($) Unit | 3 Months Ended Jun. 30, 2017 |
|---|---|---|
| **Net Assets [Abstract]** | | |
| GUC Trust Units Outstanding or Issuable, description | | The number of GUC Trust Units outstanding or issuable at end of the quarter does not equal the amount of Allowed General Unsecured Claims on a 1 to 1,000 basis at the corresponding date because of additional GUC Trust Units that were issued due to rounding. |
| Number of Trust Units issued per thousand dollars of allowed general unsecured claims \| Unit | 1 | |
| Amount required to issue one Trust Unit per contingent rights \| $ | $ 1,000 | |

| Net Assets in Liquidation - Allowed and Disputed General Unsecured Claims and Potential Term Loan Avoidance Action Claims (Detail) | 3 Months Ended Jun. 30, 2017 USD ($) |
|---|---|
| **Loss Contingencies [Line Items]** | |
| Beginning balance | $ 33,403,235,000 |
| New Allowed General Unsecured Claims | 1,350,000 |
| Term Loan Avoidance Action Claims resolved or disallowed | (3,972,000) |
| Ending balance | 33,400,613,000 |
| Allowed General Unsecured Claims [Member] | |
| **Loss Contingencies [Line Items]** | |
| Beginning balance | 31,854,031,000 |
| New Allowed General Unsecured Claims | 1,350,000 |
| Ending balance | 31,855,381,000 |
| Disputed General Unsecured Claims [Member] | |
| **Loss Contingencies [Line Items]** | |
| Beginning balance | 50,000,000 |
| Ending balance | 50,000,000 |
| Term Loan Avoidance Action Claims [Member] | |
| **Loss Contingencies [Line Items]** | |
| Beginning balance | 1,499,204,000 |
| Term Loan Avoidance Action Claims resolved or disallowed | (3,972,000) |
| Ending balance | 1,495,232,000 |
| Maximum Amount of Unresolved Claims [Member] | |
| **Loss Contingencies [Line Items]** | |
| Beginning balance | 1,549,204,000 |
| Term Loan Avoidance Action Claims resolved or disallowed | (3,972,000) |
| Ending balance | $ 1,545,232,000 |

**Liquidating Distributions - Schedule of Liquidating Distributions (Detail) - Liquidation Basis of Accounting [Member] - USD ($)**
**$ in Thousands**

|  | 3 Months Ended | |
| --- | --- | --- |
|  | Jun. 30, 2017 | Jun. 30, 2016 |
| **Distribution Made to Limited Liability Company (LLC) Member [Line Items]** | | |
| Distributions during the period | $ 0 | |
| Less: Liquidating distributions payable at beginning of period | (9,205) | |
| Add: Liquidating distributions payable at end of period | 10,011 | |
| Total | $ 806 | $ 913 |

| Liquidating Distributions - Additional Information (Detail) $ in Millions | Jun. 30, 2017 USD ($) |
|---|---|
| **Equity [Abstract]** | |
| Cash distributions payable | $ 10.0 |

| Fair Value Measurements - Additional Information (Detail) - USD ($) | 3 Months Ended Jun. 30, 2017 | 12 Months Ended Mar. 31, 2017 |
|---|---|---|
| **Fair Value, Assets and Liabilities Measured on Recurring and Nonrecurring Basis [Line Items]** | | |
| Transfers between fair value amount | $ 0 | $ 0 |
| Level 3 [Member] | | |
| **Fair Value, Assets and Liabilities Measured on Recurring and Nonrecurring Basis [Line Items]** | | |
| Assets measured | 0 | 0 |
| Liquidating distributions payable | $ 0 | $ 0 |

| **Fair Value Measurements - Assets and Liabilities Measured at Fair Value on Recurring Basis (Detail) - Liquidation Basis of Accounting [Member] - USD ($)** <br> **$ in Thousands** | **Jun. 30, 2017** | **Mar. 31, 2017** |
|---|---|---|
| **Liabilities:** | | |
| Liquidating distributions payable | $ 10,011 | $ 9,205 |
| **Fair Value, Measurements, Recurring [Member]** | | |
| **Assets:** | | |
| Total Assets | 510,914 | 524,561 |
| **Liabilities:** | | |
| Liquidating distributions payable | 10,011 | 9,205 |
| **Fair Value, Measurements, Recurring [Member] \| Cash Equivalents [Member] \| Money Market Funds [Member]** | | |
| **Assets:** | | |
| Total Assets | 1,074 | 2,109 |
| **Fair Value, Measurements, Recurring [Member] \| Marketable Securities [Member] \| U.S. Treasury Bills [Member]** | | |
| **Assets:** | | |
| Total Assets | 509,840 | 522,452 |
| **Fair Value, Measurements, Recurring [Member] \| Level 1 [Member]** | | |
| **Assets:** | | |
| Total Assets | 1,074 | 2,109 |
| **Liabilities:** | | |
| Liquidating distributions payable | 10,011 | 9,205 |
| **Fair Value, Measurements, Recurring [Member] \| Level 1 [Member] \| Cash Equivalents [Member] \| Money Market Funds [Member]** | | |
| **Assets:** | | |
| Total Assets | 1,074 | 2,109 |
| **Fair Value, Measurements, Recurring [Member] \| Level 2 [Member]** | | |
| **Assets:** | | |
| Total Assets | 509,840 | 522,452 |
| **Fair Value, Measurements, Recurring [Member] \| Level 2 [Member] \| Marketable Securities [Member] \| U.S. Treasury Bills [Member]** | | |
| **Assets:** | | |
| Total Assets | $ 509,840 | $ 522,452 |

| Reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs - Summary of Activity in Reserves for Expected Costs of Liquidation (Detail) - USD ($) $ in Thousands | 3 Months Ended | |
|---|---|---|
| | Jun. 30, 2017 | Jun. 30, 2016 |
| **Restructuring Cost and Reserve [Line Items]** | | |
| Beginning Balance | $ 18,903 | $ 23,399 |
| Plus additions to (reductions in) reserves | 3,037 | (272) |
| **Less liquidation costs incurred:** | | |
| Ending Balance | 19,145 | 20,671 |
| Liquidation Basis of Accounting [Member] | | |
| **Restructuring Cost and Reserve [Line Items]** | | |
| Beginning Balance | 18,903 | |
| **Less liquidation costs incurred:** | | |
| Ending Balance | 19,145 | |
| Liquidation Basis of Accounting [Member] \| Trust Professionals [Member] | | |
| **Less liquidation costs incurred:** | | |
| Liquidation costs incurred | (1,565) | (1,134) |
| Liquidation Basis of Accounting [Member] \| Trust Governance [Member] | | |
| **Less liquidation costs incurred:** | | |
| Liquidation costs incurred | (1,174) | (1,223) |
| Liquidation Basis of Accounting [Member] \| Other Administrative Expenses [Member] | | |
| **Less liquidation costs incurred:** | | |
| Liquidation costs incurred | (56) | (99) |
| Reserve for Expected Wind-Down Costs [Member] | | |
| **Restructuring Cost and Reserve [Line Items]** | | |
| Beginning Balance | 9,851 | 16,727 |
| Plus additions to (reductions in) reserves | 3,011 | (310) |
| **Less liquidation costs incurred:** | | |
| Ending Balance | 11,317 | 15,027 |
| Reserve for Expected Wind-Down Costs [Member] \| Liquidation Basis of Accounting [Member] \| Trust Professionals [Member] | | |
| **Less liquidation costs incurred:** | | |
| Liquidation costs incurred | (823) | (616) |
| Reserve for Expected Wind-Down Costs [Member] \| Liquidation Basis of Accounting [Member] \| Trust Governance [Member] | | |
| **Less liquidation costs incurred:** | | |
| Liquidation costs incurred | (708) | (756) |
| Reserve for Expected Wind-Down Costs [Member] \| Liquidation Basis of Accounting [Member] \| Other Administrative Expenses [Member] | | |
| **Less liquidation costs incurred:** | | |
| Liquidation costs incurred | (14) | (18) |
| Reserve for Expected Reporting Costs [Member] | | |
| **Restructuring Cost and Reserve [Line Items]** | | |

| | | |
|---|---:|---:|
| Beginning Balance | 8,827 | 6,379 |
| Plus additions to (reductions in) reserves | 26 | 38 |
| **Less liquidation costs incurred:** | | |
| Ending Balance | 7,619 | 5,368 |
| Reserve for Expected Reporting Costs [Member] \| Liquidation Basis of Accounting [Member] \| Trust Professionals [Member] | | |
| **Less liquidation costs incurred:** | | |
| Liquidation costs incurred | (742) | (518) |
| Reserve for Expected Reporting Costs [Member] \| Liquidation Basis of Accounting [Member] \| Trust Governance [Member] | | |
| **Less liquidation costs incurred:** | | |
| Liquidation costs incurred | (450) | (450) |
| Reserve for Expected Reporting Costs [Member] \| Liquidation Basis of Accounting [Member] \| Other Administrative Expenses [Member] | | |
| **Less liquidation costs incurred:** | | |
| Liquidation costs incurred | (42) | (81) |
| Reserve for Indenture Trustee/Fiscal and Paying Agent Costs [Member] | | |
| **Restructuring Cost and Reserve [Line Items]** | | |
| Beginning Balance | 225 | 293 |
| **Less liquidation costs incurred:** | | |
| Ending Balance | 209 | 276 |
| Reserve for Indenture Trustee/Fiscal and Paying Agent Costs [Member] \| Liquidation Basis of Accounting [Member] \| Trust Governance [Member] | | |
| **Less liquidation costs incurred:** | | |
| Liquidation costs incurred | $ (16) | $ (17) |

| Reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs - Additional Information (Detail) - USD ($) $ in Thousands | | 3 Months Ended | |
| --- | --- | --- | --- |
| | Jun. 30, 2017 | Jun. 30, 2017 | Jun. 30, 2016 |
| **Restructuring Cost and Reserve [Line Items]** | | | |
| Net increase (decrease in) additions to reserves for Expected Costs of Liquidation | | $ 3,037 | $ (272) |
| Expected liquidation period | 2019-01 | | |
| Reserve for Expected Wind-Down Costs [Member] | | | |
| **Restructuring Cost and Reserve [Line Items]** | | | |
| Net increase (decrease in) additions to reserves for Expected Costs of Liquidation | | 3,011 | (310) |
| Reserve for Expected Reporting Costs [Member] | | | |
| **Restructuring Cost and Reserve [Line Items]** | | | |
| Net increase (decrease in) additions to reserves for Expected Costs of Liquidation | | $ 26 | $ 38 |

| Reserves for Expected Costs of Liquidation and Residual Wind-Down Claims and Costs - Summary of Activity in Reserves for Residual Wind-Down Claims and Costs (Detail) - Liquidation Basis of Accounting [Member] - USD ($) $ in Thousands | 3 Months Ended | |
| --- | --- | --- |
| | Jun. 30, 2017 | Jun. 30, 2016 |
| **Restructuring Cost and Reserve [Line Items]** | | |
| Balance, beginning of period | $ 966 | $ 19,957 |
| Plus addition to reserves | 9 | |
| Less claims allowed during the period | (815) | (2,437) |
| Less costs incurred by trust professionals | | (1) |
| Balance, end of period | $ 160 | $ 17,519 |

| Income Taxes - Additional Information (Detail) - USD ($) | 3 Months Ended | |
|---|---|---|
| | Jun. 30, 2017 | Jun. 30, 2016 |
| **Tax Credit Carryforward [Line Items]** | | |
| Current tax benefit or provision | $ 0 | $ 0 |
| Income taxes paid | 0 | 0 |
| Deferred tax benefit or provision | 0 | $ 0 |
| Capital losses carryovers | 24,300,000 | |
| Net operating loss carryovers | $ 131,800,000 | |
| Capital loss carryovers begin to expire | Mar. 31, 2018 | |
| Net operating loss carryovers begin to expire | Mar. 31, 2032 | |
| Deferred tax asset | $ 61,836,000 | |
| Deferred tax assets, valuation allowance | 67,704,000 | |
| Change in valuation allowance against net deferred tax assets | $ 400,000 | |
| Internal Revenue Service (IRS) [Member] | | |
| **Tax Credit Carryforward [Line Items]** | | |
| Statutory notification period | 60 days | |

**Income Taxes - Summary of**
**Deferred Taxes (Detail)**
**$ in Thousands**

**Jun. 30, 2017**
**USD ($)**

**Deferred tax assets:**

| | |
|---|---|
| Reserves for expected costs of liquidation and Residual Wind-Down Claims and Costs | $ 7,645 |
| Net operating and capital loss carryovers | 61,836 |
| Gross deferred tax assets | 69,481 |
| Less: Valuation allowance | (67,704) |
| Deferred tax asset, net of valuation allowance | 1,777 |

**Deferred tax liabilities:**

| | |
|---|---|
| Accrued investment income | (1,777) |
| Gross deferred tax liabilities | (1,777) |
| Net deferred taxes | $ 0 |

| **Related Party Transactions - Additional Information (Detail) - Wilmington Trust Company [Member] - USD ($)** | **3 Months Ended** | |
|---|---|---|
| | **Jun. 30, 2017** | **Jun. 30, 2016** |
| **Related Party Transaction [Line Items]** | | |
| Indenture trustee fees | $ 0 | $ 0 |
| Standard fees and commissions | $ 65,000 | $ 82,000 |