UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
|  | . | Case No. 09-50026-mg |
| IN RE: | . | Chapter 11 |
|  | . |  |
| MOTORS LIQUIDATION COMPANY, | . | (Jointly administered) |
| et al., f/k/a GENERAL | . |  |
| MOTORS CORP., et al, | . | One Bowling Green |
|  | . | New York, NY 10004 |
| Debtors. | . |  |
|  | . | Wednesday, November 15, 2017 |
| . . . . . . . . . . . . . . . | . | 9:08 a.m. |

TRANSCRIPT OF TELEPHONE CONFERENCE CALL, ON THE RECORD,
RE: DISCOVERY DISPUTES IN ADVANCE OF DECEMBER TRIAL.
BEFORE THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

For General Motors LLC:     King & Spalding, LLP
                           By:  ARTHUR J. STEINBERG, ESQ.
                           1185 Avenue of the Americas
                           New York, NY 10036
                           (212) 556-2158


For Certain Personal
Injury/Death Plaintiffs: Hilliard Munoz & Gonzales LLP
                           By:  ROBERT HILLIARD, ESQ.
                                KATRINA ASHLEY, ESQ.
                                ANNE K. FOMECKER, ESQ.
                                RUDY GONZALES, ESQ.
                           719 South Shoreline Boulevard #500
                           Corpus Christi, Texas  78401
                           (361) 882-1612



Audio Operator:            Court Personnel


Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

TELEPHONIC APPEARANCES (Continued):

For the GUC Trust:          Gibson, Dunn & Crutcher LLP
                            By:  MITCHELL A. KARLAN, ESQ.
                                 JONATHAN FORTNEY, ESQ.
                            200 Park Avenue #47
                            New York, New York 10166
                            (212) 351-3827


For Interested Party,
General Motors, LLC:        Quinn Emanuel Urquhart & Sullivan, LLP
                            By:  JAMES C. TECCE, ESQ.
                            51 Madison Avenue, 22nd Floor
                            New York, NY  10010
                            (212) 849-7199

For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs:                 Brown Rudnick LLP
                            By:  EDWARD S. WEISFELNER, ESQ.
                                 HOWARD S. STEEL, ESQ.
                            7 Times Square
                            New York, New York 10036
                            (212) 209-4917


For the Ignition
Switch Plaintiffs:          Hagens Berman Sobol Shapiro LLP
                            By: STEVE BERMAN, ESQ.
                            1918 8th Avenue, Suite 3300
                            Seattle, Washington 98101
                            (206) 623-7292

For Interested Party,
Ignition Switch
Plaintiffs and
Certain Non-Ignition
Switch Plaintiffs:          Lieff, Cabraser, Heimann & Bernstein
                            By:  ELIZABETH J. CABRASER, ESQ.
                            275 Battery Street, 29th Floor
                            San Francisco, CA 94111-3339
                            (415) 956-1000

TELEPHONIC APPEARANCES (Continued):

For Interested Party,
The Participating
Unitholders:                    Akin Gump Strauss Hauer & Feld
                                By:   DEBORAH J. NEWMAN, ESQ.
                                One Bryant Park
                                Bank of America Tower
                                New York, NY 10036-6745
                                (212) 872-7481

For Creditor, Additional
Ignition Switch
Pre-Closing Accident
Plaintiffs:                     Andrew Myers, P.C.
                                By:   LISA M. NORMAN, ESQ.
                                1885 Saint James Place, 15th Floor
                                Houston, TX 77056
                                (713) 850-4245

5

1          (Proceedings commenced at 9:08 a.m.)

2              THE COURT:  All right.  This is Judge Glenn.  We're

3    on the record in <u>Motors Liquidation Company</u>, 09-50026.

4              Who's going to begin?

5              MR. HILLIARD:  The two issues that I have with

6    Mr. Karlan are pretty short.

7              THE COURT:  I'm sorry, I didn't get a name.  Who's

8    speaking?  Who's speaking?

9              MR. HILLIARD:  Judge, good morning.  This is Bob

10   Hilliard.

11             THE COURT:  Okay.  Mr. Hilliard, go ahead.

12             MR. HILLIARD:  Judge, I have -- we have two issues,

13   Mr. Karlan and I, that need to be addressed and shouldn't take

14   too long.  By way of background, the deposition of Beth Andrews

15   is scheduled to begin in about an hour, and this issue is

16   pertinent to her deposition.  And as Mr. Karlan told me this

17   morning, he would like to get her back to Delaware as soon as

18   possible, so we're trying not to delay her deposition.

19             There is an email chain, Your Honor, that contains

20   some redactions that we believe shows that Ms. Andrews approved

21   -- or would show that Ms. Andrews approved the settlement.

22   Mr. Karlan has either sent the unredacted copies to the Court

23   already or has agreed to send them, if the Court requests them,

24   for the Court's review, in order to determine if those emails

25   should be immediately produced prior to the deposition.

6

1         And when you read the emails, Judge, it's clear that

2    the topic that's being discussed is whether there is an

3    approval of the settlement, and Beth Andrews' response is

4    redacted.  We acknowledge that this is communication between

5    counsel and client, and we (indiscernible) a case in the Second

6    Circuit that confirms that it is well-established that

7    communications between an attorney and his client, though made

8    privately, are not privileged, and it is -- and it was

9    understood that the information communicated in the

10   conversation was to be conveyed to others.

11        And I'll hold off on much argument except to say that

12   it seems that Ms. Andrews is conveying her decision as to the

13   approval of the GUC Trust's agreement, and we believe that she

14   is going to testify independently today that she did approve

15   it, and so we believe that under Second Circuit case law, we

16   are allowed to see the unredacted email showing, in real time,

17   her approval.  That's issue number one, Judge.  I'll let

18   Mr. Karlan respond.

19        THE COURT:  Let me say first that I think you had

20   attached the redacted emails to your email to my law clerk.

21   I've read the redacted emails.  I've not received the

22   unredacted emails, so obviously I haven't read those.

23        But why don't you describe the second issue as well,

24   Mr. Hilliard, and then we'll hear from Mr. Karlan.

25        MR. HILLIARD:  Thank you, Judge.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

7

1        The second issue is a little clearer.  It is an email

2   that was shared with David Vanaskey's -- I believe it's his

3   sons or his brothers.  If the Court has the redacted email, the

4   Court will see that a lawyer for Gibson Dunn sent to Beth

5   Andrews and David Vanaskey an email on August 11th at 8:07, and

6   that email, as produced to us, is redacted, but then David

7   Vanaskey forwarded the email chain to a gentleman named Trey

8   Vanaskey and Brett Vanaskey, who it's my understanding is

9   family members of Mr. David Vanaskey.

10        And so what we told Mr. Karlan is that if there is a

11  privilege, it's broken when the information is freely shared

12  with third parties who are not part of the privilege chain.

13  And the response is that, though that may be, this is not

14  relevant to Phase I, and therefore will not be produced.

15        So, again, saving much of our argument, it simply

16  seems that if the Court reviews the email unredacted, which

17  Mr. Karlan has agreed to produce to the Court, then this issue

18  can be resolved, as well.  But the email does not enjoy a

19  privilege anymore because of how it was shared.  The question

20  then becomes a relevant question under Phase I, which we have

21  no way to respond to since ours is redacted.

22        THE COURT:  Okay.  Go ahead, Mr. Karlan.

23        MR. KARLAN:  Good morning, Your Honor.

24        THE COURT:  Good morning.

25        MR. KARLAN:  Mitch Karlan, Gibson, Dunn & Crutcher,

8

1  for the GUC Trust.  I'll take the issues in reverse order that

2  Mr. Hilliard raised them.

3          In the Court's order of October 11th, in Paragraph 4

4  where Your Honor ordered that discovery shall be limited in

5  scope to the Phase I(a) issue, and the Phase I(a) issue on Page

6  2 of the order is whether plaintiffs' settlement agreement is a

7  binding agreement.  I have no objection to sending to Your

8  Honor the second of the documents that Mr. Hilliard referenced.

9  It is our position that there is nothing in the redacted

10 portion that falls within Phase I discovery.

11         I don't have any -- unless Your Honor has questions,

12 I don't have more to say on that.

13         THE COURT:  Well, it's hard for me to -- since the

14 content of the email is redacted, I have no clue what it

15 relates to.

16         MR. KARLAN:  Of course.  Of course, Your Honor, and

17 that's why I'm saying I have no objection to getting it down by

18 email to Your Honor now by -- in unredacted form.

19         THE COURT:  Let me ask you this, Mr. Karlan.  Do you

20 agree that --

21         MR. KARLAN:  It is not privileged, Judge.  I do

22 agree.  I shouldn't say that, I'm sorry.

23         THE COURT:  What's the subject -- without going into

24 the details of it, tell me generally what's the content --

25 what's the subject matter of the content.  We agree it's not

9

1  privileged.

2          MR. KARLAN:  The -- there was -- this is no secret,

3  Judge.  There was -- the email -- I think you have the redacted

4  version.  The email stated the 11th of August.  There was a

5  press report, copies of which have been produced by everybody

6  in this case, about certain events that took place in the

7  (indiscernible) proceeding.

8          And I've told -- I told counsel for the plaintiffs

9  and the movants that in Mr. Gillette's email of 8:07 a.m., he

10 forwards the link to that article, which everybody already had,

11 to the clients, and then adds six words, and it's the six words

12 that that we've not produced.  It is not the end of the world

13 if we end up producing it.  It's just not relevant.  I'm sorry

14 this has taken up so much of Your Honor's time, but it's a

15 commentary about the news article.

16         THE COURT:  Okay.  Email a PDF of an unredacted copy

17 of the email to -- do you have my law clerk's email address on

18 one of them?

19         MR. KARLAN:  We do, Your Honor.

20         THE COURT:  Okay.  Promptly have it emailed --

21         MR. KARLAN:  Yeah.

22         THE COURT:  -- to my law clerk.  I will look at it

23 and very quickly enter an order whether it has to be produced.

24         MR. KARLAN:  Will do, Your Honor.  Now --

25         THE COURT:  It sounds like you're making a lot of ado

10

1 about nothing, but we'll see.

2        Okay.  So that's how I'm going to deal with the

3 second issue which is -- relates to the email chain.  It's

4 Bates numbered GUC0013904.

5        MR. KARLAN:  Your Honor --

6        THE COURT:  Hold on.  Mr. Hilliard, are you satisfied

7 with the -- probably not satisfied, but that's how I'm going to

8 do it.  I'm going to look at it and I'll rule very promptly.

9        MR. HILLIARD:  Your Honor, this is Bob Hilliard.  I

10 was always under the belief that the Court really needed to

11 have the unredacted copies in order to make an informed

12 decision, so it's fine with me.

13        And if the Court decides that the Beth Andrews email

14 is to be produced, I would again just point out that her

15 deposition starts in about 45 minutes.  And my team, who is in

16 New York right now --

17        THE COURT:  As soon as it gets here and we end,

18 you'll get a ruling.

19        MR. HILLIARD:  Thank you, Judge.

20        THE COURT:  Okay.  Mr. Karlan, address the more

21 serious issue, that the email chain -- and I guess on that

22 email chain, two of the emails, one from a Gabriel Gillette to

23 David Vanaskey, content is shown, and that's on August 14th,

24 2017, it's shown as redacted, and the email below that is from

25 Keith Martorana to Beth Andrews and others, David Vanaskey,

1  it's got some Ccs, and that's on August -- at 6:51 p.m. on

2  August 4th.  The first of the two was at 7:16 p.m. on

3  August 14th.

4        The other -- there's nothing -- as I understand,

5  nothing else in that email chain is redacted, correct?

6        MR. HILLIARD:  That is correct, Your Honor.

7        THE COURT:  All right.  So go ahead and address that

8  email, that email chain.

9        MR. KARLAN:  Judge, on their face, they're

10  privileged.  I don't really understand the argument and I --

11        THE COURT:  Well, when you say "on the face, they're

12  privileged," I don't know what the content is.  I think I would

13  agree with -- because I've had this issue before, not all

14  communications -- let me just ask you, do you disagree with

15  this?

16        It's always been my understanding, and I've ruled on

17  this in the past, that not all communications between a lawyer

18  and his or her client are privileged.  What it reflects as a

19  business decision, it's not privileged.  Do you disagree with

20  that?

21        MR. KARLAN:  I definitely do not disagree that not

22  all communications between lawyers and clients are privileged.

23  I'm not sure I would accept exactly your wording about the

24  business decision point, but in general I don't disagree with

25  what you're saying.  And if the best -- if the most efficient

12

1  thing to do is for me to just send this down to you, I'm happy

2  to do that.

3        THE COURT:  It is.  Include it promptly on an email

4  to chambers.

5        What do you believe the correct rule is?  Because

6  you're not disagreeing that not all communications from a

7  client to a lawyer are privileged, why do you believe these

8  communications are privileged?

9        MR. KARLAN:  I believe when Your Honor reads the

10  emails, it will be clear that the general topic being discussed

11  is the ongoing negotiations concerning the alleged agreement

12  that the plaintiffs are seeking to enforce in this case.

13        THE COURT:  All right.  And let me ask Mr. Hilliard

14  -- let me switch to Mr. Hilliard.

15        Mr. Hilliard, do you agree that the sender of each of

16  these emails and the recipients of the emails would be covered

17  by attorney-client privilege, assuming that the content of the

18  emails was confidential lawyer-client communication?  Because I

19  don't know who all of the people are.  I can see email

20  addresses and who the Gibson Dunn lawyers are, et cetera, but

21  do you agree that privilege wouldn't be broken by virtue of who

22  the author and addressees of the two emails are?

23        MR. HILLIARD:  Your Honor, Bob Hilliard.  I do agree.

24        THE COURT:  Okay.  All right.  So the only issue then

25  is the content.  And I take it, Mr. Hilliard, would you agree

1  that if -- what the content is, is the request for or the

2  giving of legal advice with respect to entering into the

3  proposed settlement, that that would be covered by privilege?

4        MR. HILLIARD:  I do agree with that, as well, Judge.

5  The two of the three people in this discussion were just in the

6  dark about the contents of it, but once it's emailed, it either

7  says, approved, you can tell the plaintiffs we're signed off,

8  or it says, I have issues with it.  But whatever it says, it

9  will be clear that there is no privilege and this is simply a

10 direction that is intended to be forwarded to us, or if it is a

11 concern between a client and counsel, then it stays privileged.

12       THE COURT:  Okay.

13       MR. HILLIARD:  But one way or the other, we'd like

14 the Court to take a look.

15       THE COURT:  So the record's clear, the -- this --

16 it's the first issue that Mr. Hilliard raised relates to two

17 redactions on a page that's been Bates numbered GUC0013894.

18       And for completeness, Mr. Karlan, when you attach --

19 because it is a multi-page document, begins with 3894 and ends

20 with 3897 in the Bates numbers, although the last page is blank

21 except for a line across the top -- attach the full contents of

22 the email.  And I'm just going to enter a very short order

23 saying following this hearing, the Court has reviewed

24 unredacted copies of two email chains, and I'm just going to

25 indicate the Court sustains or overrules the objection as --

1 obviously, as to one as privileged, and as to the other, the

2 issue is relevance as to Phase I, the discovery on Phase I.

3 And that's what -- you'll have it very promptly.

4          Okay.  Anything else we need to talk about now?

5          MR. BERMAN:  Yes, Your Honor.  This is Steve Berman.

6          THE COURT:  Go ahead, Mr. Berman.

7          MR. BERMAN:  Your Honor, the issue I wanted to raise

8 with you is whether information about what happened at the

9 meeting between the GUC Trust lawyers, the Gibson Dunn lawyers,

10 and General Motors in which the GUC Trust decided to do an

11 about-face, whether that's Phase I or Phase II.  At

12 Mr. Williams' deposition, who was a lawyer for the GUC Trust,

13 there were instructions not to answer questions, at least some

14 of the questions that went to what was said at that meeting on

15 the grounds that this is Phase II material.

16          THE COURT:  All right.  Let me --

17          MR. BERMAN:  As Your Honor recalls --

18          THE COURT:  -- let me -- hold on, let me put --

19 because I've thought about this issue before in this case.

20 Okay.  No -- there are no instructions not to answer with

21 respect to who said what during that alleged two-hour meeting.

22 I want full discovery about it.  There is no division, well,

23 that statement was a Phase I issue, that statement's a Phase II

24 issue.  I want full discovery about who said what to whom at

25 that meeting.  What comes in as evident -- as evidence at the

15

1  trial, we'll see.  But I'm not going to get into this sentence

2  is Phase I, this sentence is Phase II.  So we're going to get a

3  complete -- as complete as possible a record about who said

4  what to whom during that meeting.  Okay.  That's the Court's

5  ruling.

6            MR. BERMAN:  Thank you, Your Honor.

7            THE COURT:  Any other issues I need --

8            MR. WEISFELNER:  Finally, Your Honor --

9            THE COURT:  Who's that?

10           MR. WEISFELNER:  It's Ed Weisfelner.

11           THE COURT:  Say it -- I'm sorry, I didn't hear it.

12           MR. WEISFELNER:  Your Honor, the final issue --

13           THE COURT:  Say it -- identify yourself again.

14           MR. WEISFELNER:  I apologize, Judge.  It's Ed

15  Weisfelner.

16           THE COURT:  Good morning, Mr. Weisfelner.

17           MR. WEISFELNER:  Good morning.  Your Honor,

18  Mr. Karlan has taken the position that I may not ask any

19  questions during discovery, and further has indicated his

20  intention to seek to disqualify my firm.

21           We understood this issue to have been addressed and

22  resolved in Paragraph 7 of the pretrial stipulation and

23  scheduling order, to wit, and I'm quoting now:

24           "Wilmington Trust and New GM will not move to

25           disqualify any law firm on the basis of the Rule 3.7

1             of the Model Rules of Professional Conduct, the

2             witness advocate rule."

3        The sentence goes on, or the paragraph, rather, goes

4   on to say:

5             "Counsel to the parties will meet and confer in an

6             attempt to resolve any issues in connection with any

7             members or associates of trial counsel's respective

8             firms serving as witnesses and will bring any

9             disputes to the Court for resolution if they cannot

10            agree."

11            Your Honor, I thought that we did have a subsequent

12   meet and confer and resolved remaining issues on the part of

13   the GUC Trust and/or New GM, although this is the GUC Trust

14   raising the issue, that no trial lawyer was going to

15   cross-examine any adverse witness on topics that involved

16   negotiations between trial counsel and the trial witness, an

17   agreement that we continue to be prepared to abide by.

18            But Mr. Karlan has taken the unilateral position that

19   I may not question any witnesses at depositions beyond the

20   question of what was the subject matter of our personal

21   negotiations.  And has further advised us, as of Monday, that

22   he was moving to disqualify my firm, and I think we need to

23   resolve both issues.

24            THE COURT:  Mr. Karlan?

25            MR. KARLAN:  Well, Your Honor, first of all,

1 Mr. Weisfelner is correct in what Paragraph 7 said, and

2 therefore we will not be making a motion to disqualify.  I

3 think I communicated that by email yesterday to everyone, but

4 perhaps he did not see it.

5         I also agree with Mr. Weisfelner that, after entry of

6 this order, there was a meet and confer, and I, too, as counsel

7 for New GM, all thought that we did have an agreement on the

8 subject of how we were going to handle the fact that

9 Mr. Weisfelner and Mr. Weintraub and Mr. Steel all appear on

10 the witness list.

11        My understanding, based on remarks made during that

12 meet and confer by the other side, was that the way this was

13 going to be handled is that Mr. Berman and Mr. Hilliard were

14 going to try the case, and that Mr. Weisfelner, Mr. Steel, and

15 Mr. Weintraub were not going to be trial counsel, and that was

16 acceptable to us.

17        Apparently, either I misheard or misunderstood or

18 there's been some change of heart.  It doesn't matter.  There's

19 clearly no agreement at the moment, and what the order provides

20 is that since there's no agreement, we're supposed to bring it

21 to you.  I would respectfully suggest -- I know Your Honor

22 doesn't like to be burdened with papers, but we'd like to put

23 in two or three pages in a letter explaining why it's

24 inappropriate in the particular circumstances of this case for,

25 let's just use as an example Mr. Weisfelner to be vouching for

18

1 his own credibility in opening or closing or conducting any

2 part of the trial when we did agree not to disqualify his firm

3 or anybody's firm.  I don't see any reason for doing that here.

4          But I do think that it would be unusual for lawyers

5 who are the key witnesses in the case -- and I'm including my

6 own firm -- to be conducting any part of the examinations or

7 the arguments.

8          THE COURT:  Mr. Karlan, let me ask this:  The issue

9 of -- it does seem to me that the issue of whether Weisfelner,

10 Steel, and Weintraub may be advocates at the trial, I don't

11 need to decide today.  Are you objecting -- and I don't have

12 the stipulations in front of me.  I -- you know, I'm not ruling

13 on that in the abstract.  Are you objecting to Mr. Weisfelner

14 conduct -- asking questions at depositions?

15          MR. KARLAN:  I won't object to him asking questions

16 today of Ms. Andrews because, to the best of my knowledge, the

17 two have never met and no part of the case involves their

18 face-to-face communications.

19          I did object since it's clear we're going to have to

20 resume Mr. Williams' deposition based on Your Honor's ruling

21 earlier from a few moments ago.  I do object and ask that he

22 not question Mr. Williams at deposition for all the same

23 reasons.

24          It -- and I thought -- I really thought we had

25 agreement on this, so I don't understand what the issue is.

19

1  There are 25 lawyers on the other side.

2        MR. WEISFELNER:  Your Honor, if I can?  It's Ed

3  Weisfelner again.

4        THE COURT:  Go ahead.

5        MR. WEISFELNER:  I believe that to the extent I were

6  propounding questions to a Gibson Dunn lawyer, or any other

7  lawyer with whom I negotiated on the subject matter of our

8  negotiations, Mr. Karlan would be right.  Mr. Karlan blanketly

9  refused to allow me to pose any questions before he heard the

10 questions.

11        We will live up to our agreement that no trial

12 witness from my firm or any of the plaintiffs' firms will ask

13 questions of parties with whom we negotiated about those

14 negotiations.  But to ask general questions, and in particular

15 the issues that I wanted to raise with Mr. Williams, was all

16 about his view of whether or not there was a binding agreement.

17 That doesn't involve our direct negotiations.

18        THE COURT:  Mr. Karlan?

19        MR. TECCE:  Your Honor, this is James Tecce of Quinn

20 Emanuel for New GM.  May I be heard for a minute?

21        THE COURT:  Go ahead.

22        MR. TECCE:  Thank you, Your Honor.

23        Just very briefly, I wanted the record to be clear

24 that it was not New GM's agreement to conduct the trial in the

25 way the plaintiffs have described.  With respect to

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

20

1  depositions, we don't take a position on that.

2          I would like to state, though, that for purposes of

3  conducting the trial, New GM would have an objection to any

4  attorney who is a witness being permitted to then participate

5  in oral argument, especially to the extent that it touches on

6  evidentiary issues that implicates that attorney's testimony.

7  We would be opposed to people being --

8          THE COURT:  Mr. Tecce?

9          MR. TECCE: -- permitted to testify from the podium.

10          THE COURT:  Mr. Tecce?

11          MR. TECCE:  That's not a today issue --

12          THE COURT:  Mr. Tecce?

13          MR. TECCE: -- but I do want our position on that to

14  be made clear.

15          THE COURT:  Mr. Tecce, that's not today's issue.

16          MR. TECCE:  Agreed.

17          THE COURT:  So I don't want to hear about it today.

18  I haven't decided whether you can participate in the trial yet,

19  and I don't know whether, when, or if I will, so let's make

20  clear you may not even have standing to object.  But Mr. Karlan

21  has indicated that -- I'm not deciding -- you all will have to

22  tee up this issue about what, if any, role any of the trial

23  witnesses may have as an advocate.

24          The issue for today, though, let me ask Mr. Karlan.

25  Mr. Weisfelner has stated that he does not intend to ask any

1  deponent about communications, discussions between

2  Mr. Weisfelner and the witness.  Is that satisfactory for

3  moving forward today?

4         What I don't like is in the middle of a dep -- you

5  know, a deposition starts in an hour and you are raising an

6  issue whether Weisfelner can ask questions at it.  You should

7  have known that this was an issue and you could have presented

8  it to me.  And if I needed letter briefs, I would have asked

9  for them.  I don't like at 9:35 in the morning with a

10 ten o'clock deposition and me having a ten o'clock calendar,

11 being told that you object Weisfelner asking questions.

12        Do you object to Weisfelner asking questions that

13 don't relate to any conversations he had with any of the

14 deponents?

15        MR. KARLAN:  Judge, the first time I knew -- the

16 answer to -- for today is the only deposition today is

17 Ms. Andrews, and I've already said, as clearly as I am able to

18 say, that I don't object to him asking questions of

19 Ms. Andrews.

20        THE COURT:  When is it next deposition scheduled in

21 which you do have an objection?

22        MR. KARLAN:  There may be a deposition on Monday of

23 Mr. Martonara [sic], and we'll have to resume -- we don't have

24 a date -- we'll have to resume Mr. Williams' deposition in

25 light of Your Honor's ruling.

22

1         THE COURT:  Well, you better make a motion -- if

2  you're going make a motion, you better do it by noon tomorrow,

3  and any opposition by noon on Friday.  And I'm going to limit

4  you to ten pages each.

5         You may be aware that I issued an opinion a couple of

6  weeks ago where I dealt with Rule 3.7, where I disqualified

7  counsel.  It's on appeal, but I did issue an opinion that dealt

8  with the lawyer advocate rule.  I'm not saying that it's

9  applicable here, but I just want to be sure you're all aware

10 that I did issue an opinion on this rule and did disqualify

11 counsel.

12        Anything else for today that needs to be -- because I

13 want to go look at -- are the emails sent, Mr. Karlan?  Did you

14 forward the email with the documents?

15        MR. KARLAN:  No, Judge, I've been on the phone with

16 you.  I will instantly as soon as we get --

17        THE COURT:  Well, you've got a lot of colleagues.

18 There's nobody else sitting there with you who could have done

19 this?

20        MR. KARLAN:  Judge, we'll do it right now.

21        THE COURT:  Do it right now.

22        Everybody stay on the line.  I'm going to look at it.

23 Get it out right now.  Everybody stay on the line.  I will look

24 at it.  I will rule before this call ends.

25        We're going to recess until I can look at the content

1  of the unredacted emails.

2          MR. KARLAN:  Judge, the --

3          MR. HILLIARD:  Your Honor --

4          MR. KARLAN:  Judge, may I have your email one more

5  time?  It's not in this room with us.  I'm sorry about that.

6          THE CLERK:  Hi, Mr. Karlan, Lauren --

7          THE COURT:  Wait.  Wait.  Send it to Lauren,

8  L-A-U-R-E-N, underscore, Wagner, W-A-G-N-E-R, at NYSB -- B, as

9  in boy -- dot UScourts.gov.

10         MR. KARLAN:  Lauren_Wagner at NYSB, like boy, dot

11 UScourts.gov.

12         THE COURT:  Correct.  Okay.  Everybody else stay on

13 -- everybody stay on the line.  You can put your phones on

14 mute.  Are you all together in the same room?

15         MR. WEISFELNER:  No, Your Honor, we're not.

16         If I could just trouble you for one more issue while

17 we wait for the transmittal to occur.  It'll be very quick.

18         THE COURT:  Go ahead.

19         MR. WEISFELNER:  Your Honor, I'm going to suggest

20 that Your Honor impose a rule that during the course of

21 depositions, lawyers for all parties refrain from dropping

22 F-bombs on the record.

23         THE COURT:  Let me just put it this way.  I take -- I

24 don't like anything going on in a deposition that is -- doesn't

25 involve questions, answers, non-speaking objections, and I

24

1   expect everybody to be engaging in professional conduct.  You

2   know, beyond that, Mr. Weisfelner, I just -- you know, you'll

3   all live with it.

4           MR. WEISFELNER:  Yes, sir.

5           THE COURT:  If there's abuse, you'll bring it to my

6   attention, but this I'm not going to do on the fly.  I'll be

7   back on the bench after I've reviewed the emails and I'll give

8   you an answer.

9       (Recess taken at 9:39 a.m.)

10      (Proceedings resumed at 9:45 a.m.)

11          THE COURT:  All right.  This is Judge Glenn.  We're

12  back on the record in Motors Liquidation, 09-50026.

13          The Court has reviewed the unredacted emails.  Let me

14  deal first with the email with two redactions, and it's -- the

15  Bates page is GUC0013894.  The Court rules that the redacted

16  matter is not protected by attorney-client privilege.  It

17  reflects a client's statement regarding the facts, not

18  privilege.  There's no request for or the giving of legal

19  advice.  Both the redactions that are made deal with whether

20  business people -- what their position was with respect to the

21  agreement.  There was no request for advice.  So the privilege

22  objections to the two redactions on GUC0013894 are overruled.

23          The second objection dealt with GUC0013904.  The

24  redacted email from David Vanaskey to Trey Vanaskey said, see

25  link on GM deal.  Below that was an email from Gabriel Gillette

25

1  at Gibson Dunn to several people, including David Vanaskey.

2  The content of that is redacted.

3          The objection that Mr. Karlan has stated is one of

4  relevance to Phase I discovery.  The objection is overruled.

5  When you see the content, it contains, in addition to one

6  declarative sentence from Gabriel Gillette to the recipients,

7  it has a link to a Bloomberg article that deals with this

8  matter.  I took a quick look at the Bloomberg article, and it

9  seems to me that the Bloomberg article deals in part with

10 whether there was a binding agreement, which is a Phase I

11 issue.  Consequently, the objection on relevance to Bates Page

12 GUC0013904 is also overruled.  The unredacted email needs to be

13 produced.  That's the Court's ruling.

14          I've indicated very short deadlines on any motion.

15 If you can't work out -- I think what I would suggest on the

16 issue of the lawyer as advocate -- the witness as advocate

17 rule, that you continue -- I give very short deadlines.  I'm

18 familiar with the law about Rule 3.7.  It's arising here in a

19 somewhat unusual context.  I would urge you all to see if you

20 can reach an agreement about how to deal with this.  If you

21 can't, I've given you the deadlines, very short deadlines on

22 filing briefs, and I will do my best to give you a ruling as

23 quickly as I can.  We're adjourned.

24          THE CLERK:  All rise.

25      (Proceedings concluded at 9:49 a.m.)

1      **C E R T I F I C A T I O N**

2

3          I, Ilene Watson, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter, and to the best of my ability.

7

8

9    _____

10   ILENE WATSON, AAERT NO. 447      DATE:  November 16, 2017

11   ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25



ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)