# Exhibit I

| Message |
|---|

| **From:** | Steel, Howard S. [HSteel@brownrudnick.com] |
|---|---|
| **Sent:** | 8/11/2017 15:09:10 |
| **To:** | Martorana, Keith R. [KMartorana@gibsondunn.com]; 'Weintraub, William P' [WWeintraub@goodwinlaw.com]; Forster, Jill L. [JForster@brownrudnick.com]; Daniel H. Golden - Akin Gump Strauss Hauer & Feld LLP (dgolden@akingump.com) [dgolden@akingump.com]; dnewman@akingump.com; Moss, Naomi [nmoss@akingump.com]; Williams, Matt J. [MJWilliams@gibsondunn.com]; Gillett, Gabriel K. [GGillett@gibsondunn.com]; Chorba, Christopher [CChorba@gibsondunn.com]; Fox, Gregory W. [GFox@goodwinlaw.com]; Bob Hilliard [bobh@hmglawfirm.com]; Steve Shadowen [steve@hilliardshadowenlaw.com]; Thomas J. Henry [tjh@tjhlaw.com]; Michael E. Henry [mehenry@thomasjhenrylaw.com]; Lnorman@andrewsmyers; kelly@hmglawfirm.com |
| **CC:** | Weisfelner, Edward S. [EWeisfelner@brownrudnick.com]; Steve Berman [Steve@hbsslaw.com]; Chris O'Hara (ChrisO@hbsslaw.com) [ChrisO@hbsslaw.com]; Elizabeth Cabraser (ecabraser@lchb.com) [ecabraser@lchb.com]; Geman, Rachel [rgeman@lchb.com]; esserman@sbep-law.com |
| **Subject:** | RE: Motors - GUC Settlement (FRE 408) |
| **Attachments:** | GM - GUC Trust Settlement Agreement.DOCX; Change-Pro Redline - 9019 Motion re GUC Trust Settlement.pdf; Motors - Settlement Order 8.11.17.DOCX; Motors - Claims Estimate Order 8.11.17.DOC; Change-Pro Redline - GM - Claims Estimate Order.pdf; Motors - 9019 Motion 8.11.17.DOCX; Change-Pro Redline - 9019 Motion re GUC Trust Settlement.pdf; Motors - Berman - Cabraser Declaration 8.11.17.DOCX; Motors - Notice Motion 8.11.17.DOCX; Change-Pro Redline - GM - Motion for Order Approving Notice Procedures - GUC Trust Settlement.pdf; Motors - Long Form Notice 8.11.17.docx; Motors - Short Form Notice 8.11.17.docx; Motors - Cam Azari Declaration re Notice Program 8.11.17.docx |

**SUBJECT TO FRE 408**

Updated docs per today's all-hands.  Hoping these are final and we can schedule signatures.  Please let us know if we missed anything.  Thanks and have a nice weekend.

1. Settlement Agreement and Redline
2. Settlement Order
3. Claims Estimate Order and redline
4. 9019 Motion and redline
5. Berman/Cabraser Declaration
6. Notice Motion and redline
7. Long Form Notice
8. Short Form Notice
9. Cam Azari Declaration

Howard S. Steel
Brown Rudnick LLP
Seven Times Square
New York, New York 10036
212.209.4917 (direct)
732.757.1898 (cell)
212.938.2806 (direct fax)
hsteel@brownrudnick.com

<table>
<tr><td>EXHIBIT</td></tr>
<tr><td>14</td></tr>
<tr><td>11/8/17 W/H</td></tr>
</table>

PENGAD 800-631-6989

**From:** Martorana, Keith R. [mailto:KMartorana@gibsondunn.com]
**Sent:** Tuesday, August 08, 2017 8:52 PM

CONFIDENTIAL

**To:** Steel, Howard S.; 'Weintraub, William P'; Forster, Jill L.; Daniel H. Golden - Akin Gump Strauss Hauer & Feld LLP (dgolden@akingump.com); dnewman@akingump.com; Moss, Naomi; Williams, Matt J.; Gillett, Gabriel K.; Chorba, Christopher; Fox, Gregory W.; Bob Hilliard; Steve Shadowen; Thomas J. Henry
**Cc:** Weisfelner, Edward S.; Steve Berman; Chris O'Hara (ChrisO@hbsslaw.com); Elizabeth Cabraser (ecabraser@lchb.com); Geman, Rachel; esserman@sbep-law.com
**Subject:** RE: Motors - GUC Settlement (FRE 408)

External E-mail. Use caution accessing links or attachments.

─────────────────────────────────────

**SUBJECT TO FRE 408**

All – attached please find combined GDC/AG comments to the following:

1.  Settlement Agreement
2.  Settlement Order
3.  Claims Estimate Order
4.  9019 Motion
5.  Notice Motion
6.  Long Form Notice
7.  Cam Azari Declaration

We had no comments to the short form notice or Berman / Cabraser / Hilliard Declaration (the most recent versions have been reattached for the sake of completeness). Please note that we have been engaged in discussions with Lisa Norman who is counsel to the "Additional Ignition Switch Pre-Closing Accident Plaintiffs," and we understand that they are amenable to becoming signatories to the Settlement Agreement. Accordingly, the attached Settlement Agreement includes her firm as a PIWD Counsel. In addition, we understand from Akin that BR will be providing the back-up for the new cost of the Noticing Plan – please provide this document when possible.

Please note that the attached remains subject to the ongoing review and comment of our clients. Please let us know if you would like to discuss the attached.


**Keith Martorana**
Of Counsel

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.3991 • Fax +1 212.351.6391
KMartorana@gibsondunn.com • www.gibsondunn.com

─────────────────────────────────────

**From:** Steel, Howard S. [mailto:HSteel@brownrudnick.com]
**Sent:** Monday, August 7, 2017 12:58 PM
**To:** Martorana, Keith R. <KMartorana@gibsondunn.com>; 'Weintraub, William P' <WWeintraub@goodwinlaw.com>; Forster, Jill L. <JForster@brownrudnick.com>; Daniel H. Golden - Akin Gump Strauss Hauer & Feld LLP (dgolden@akingump.com) <dgolden@akingump.com>; dnewman@akingump.com; Moss, Naomi <nmoss@akingump.com>; Williams, Matt J. <MJWilliams@gibsondunn.com>; Gillett, Gabriel K. <GGillett@gibsondunn.com>; Chorba, Christopher <CChorba@gibsondunn.com>; Fox, Gregory W. <GFox@goodwinlaw.com>; Bob Hilliard <bobh@hmglawfirm.com>; Steve Shadowen <steve@hilliardshadowenlaw.com>; Thomas J. Henry <tjh@tjhlaw.com>
**Cc:** Weisfelner, Edward S. <EWeisfelner@brownrudnick.com>; Steve Berman <Steve@hbsslaw.com>; Chris O'Hara (ChrisO@hbsslaw.com) <ChrisO@hbsslaw.com>; Elizabeth Cabraser (ecabraser@lchb.com)

GUC_0001559

<ecabraser@lchb.com>; Geman, Rachel <rgeman@lchb.com>; esserman@sbep-law.com
**Subject:** RE: Motors - GUC Settlement (FRE 408)


**SUBJECT TO FRE 408**

All - attached please find combined EL and PI comments to all docs.

Index:
1. Settlement Agreement
2. Settlement Order
3. Claims Estimate Order
4. 9019 Motion
5. Notice Motion
6. Short Form Notice
7. Long Form Notice
8. Berman / Cabraser / Hilliard Declaration
9. Cam Azari Declaration

Please let us know where we are final, and any comments / anything you would like to discuss.  Thanks.


Howard S. Steel
Brown Rudnick LLP
Seven Times Square
New York, New York 10036
212.209.4917 (direct)
732.757.1898 (cell)
212.938.2806 (direct fax)
hsteel@brownrudnick.com

---

**From:** Martorana, Keith R. [mailto:KMartorana@gibsondunn.com]
**Sent:** Thursday, August 03, 2017 3:22 PM
**To:** Steel, Howard S.; 'Weintraub, William P'; Forster, Jill L.; Daniel H. Golden - Akin Gump Strauss Hauer & Feld LLP (dgolden@akingump.com); dnewman@akingump.com; Moss, Naomi; Williams, Matt J.; Gillett, Gabriel K.; Chorba, Christopher; Fox, Gregory W.; Bob Hilliard; Steve Shadowen; Thomas J. Henry
**Cc:** Weisfelner, Edward S.; Steve Berman; Chris O'Hara (ChrisO@hbsslaw.com); Elizabeth Cabraser (ecabraser@lchb.com); Geman, Rachel; esserman@sbep-law.com
**Subject:** RE: Motors - GUC Settlement (FRE 408)

**External E-mail. Use caution accessing links or attachments.**

---

SUBJECT TO FRE 408

All – attached please find the following, each of which remains subject to the ongoing review and comment of our clients:

- A revised settlement agreement (new version incorporates the comments of GP and minor clean-ups);
- A revised settlement order (minor clean-ups);
- A revised claims estimate order (minor clean-ups);
- A revised long-form notice (slight changes);

- A revised short-form notice (slight changes);
- A revised Settlement Motion.

I believe that is all of the documents that GDC/AG held the pen on. I believe we are awaiting a return draft of the notice motion/order from you. Please let us know if you would like to discuss any of the attached.

**Keith Martorana**
Of Counsel

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.3991 • Fax +1 212.351.6391
KMartorana@gibsondunn.com • www.gibsondunn.com

---

**From:** Steel, Howard S. [mailto:HSteel@brownrudnick.com]
**Sent:** Thursday, August 3, 2017 10:35 AM
**To:** 'Weintraub, William P' <WWeintraub@goodwinlaw.com>; Martorana, Keith R. <KMartorana@gibsondunn.com>; Forster, Jill L. <JForster@brownrudnick.com>; Daniel H. Golden - Akin Gump Strauss Hauer & Feld LLP (dgolden@akingump.com) <dgolden@akingump.com>; dnewman@akingump.com; Moss, Naomi <nmoss@akingump.com>; Williams, Matt J. <MJWilliams@gibsondunn.com>; Gillett, Gabriel K. <GGillett@gibsondunn.com>; Chorba, Christopher <CChorba@gibsondunn.com>; Fox, Gregory W. <GFox@goodwinlaw.com>; Bob Hilliard <bobh@hmglawfirm.com>; Steve Shadowen <steve@hilliardshadowenlaw.com>; Thomas J. Henry <tjh@tjhlaw.com>
**Cc:** Weisfelner, Edward S. <EWeisfelner@brownrudnick.com>; Steve Berman <Steve@hbsslaw.com>; Chris O'Hara (ChrisO@hbsslaw.com) <ChrisO@hbsslaw.com>; Elizabeth Cabraser (ecabraser@lchb.com) <ecabraser@lchb.com>; Geman, Rachel <rgeman@lchb.com>; esserman@sbep-law.com
**Subject:** RE: Motors - GUC Settlement (FRE 408)


Please see attached updated notices (incorporating EL and PI comments) - cleans and blacklines from last GD / Akin circulation.

Happy to organize a page turn this afternoon or please send final comments / sign-off.

Leaving settlement agreement revisions per Bill's comments to GD. Thanks.

Howard S. Steel
Brown Rudnick LLP
Seven Times Square
New York, New York 10036
212.209.4917 (direct)
732.757.1898 (cell)
212.938.2806 (direct fax)
hsteel@brownrudnick.com

CONFIDENTIAL

**From:** Weintraub, William P [mailto:WWeintraub@goodwinlaw.com]
**Sent:** Thursday, August 03, 2017 8:07 AM
**To:** Martorana, Keith R.; Steel, Howard S.; Forster, Jill L.; Daniel H. Golden - Akin Gump Strauss Hauer & Feld LLP (dgolden@akingump.com); dnewman@akingump.com); Moss, Naomi; Williams, Matt J.; Gillett, Gabriel K.; Chorba, Christopher; Fox, Gregory W.; Bob Hilliard; Steve Shadowen; Thomas J. Henry
**Cc:** Weisfelner, Edward S.
**Subject:** RE: Motors - GUC Settlement (FRE 408)

---

External E-mail. Use caution accessing links or attachments.

---

FRE 408:

Whoops.  Items 3 and 4 resolve the EL / PIWD open issues with each other.  Bill

---

**From:** Weintraub, William P
**Sent:** Thursday, August 03, 2017 7:54 AM
**To:** 'Martorana, Keith R.'; Steel, Howard S.; Forster, Jill L.; Daniel H. Golden - Akin Gump Strauss Hauer & Feld LLP (dgolden@akingump.com); dnewman@akingump.com); Moss, Naomi; Williams, Matt J.; Gillett, Gabriel K.; Chorba, Christopher; Fox, Gregory W.; Bob Hilliard; Steve Shadowen; Thomas J. Henry
**Cc:** Weisfelner, Edward S.
**Subject:** RE: Motors - GUC Settlement (FRE 408)

---

**FRE 408**

Hello All:

For the sake of good order, I want to repeat here the edits the PIWD Plaintiffs want made to the Settlement Agreement and the two forms of Notice (short and long).  Items 2 and 3 under the heading "Settlement Agreement" resolve the gating issue between EL and PIWD and enables us to move ahead. EL has seen the language and it my understanding they have approved it.

**Settlement Agreement:**

1.   Section 1.43.  Please add the words "those certain" to the definition **PIWD Plaintiffs** means those certain Ignition Switch Pre-Closing Accident Plaintiffs represented by PIWD Counsel.  **[This was done yesterday.]**
2.   Section 2.8.  in the first sentence please add the underscored language as follows: "Notwithstanding Sections 157(b)(2)(B) and (b)(2)(O) of Title 28, in connection with the Settlement Motion, to the extent (if any)consent is required, the Pre-Closing Accident Plaintiffs represented by PIWD Counsel consent to the Bankruptcy Court....."
3.   Section 2.9(b).  Add a new first sentence as follows: "Allocation of the Settlement Amount, the Adjustment Shares (or their value), and any other consideration contained in the Settlement Fund between the Plaintiffs asserting economic loss claims and the Plaintiffs asserting PIWD claims shall be determined and approved in the first instance by District Judge Furman or Magistrate Cote, as applicable."
4.   Section 2.9(c).  Add a new first sentence as follows: "Approval of the qualifications and criteria for Plaintiffs to be eligible to receive distributions from the Settlement Amount, the Adjustment Shares (or their value), and any other consideration contained in the Settlement Fund shall be done by the Bankruptcy Court in the first instance."
5.   Section 2.9(c).  Add new last sentence as follows: "Being defined as a Plaintiff does not assure any party that he, she, or it will receive a distribution from the Settlement Amount, the

CONFIDENTIAL

Adjustment Shares (or their value), or any other consideration contained in the Settlement Fund."

**Forms of Notice:**

1.    Please add to both the long and short form notices the following: "Being defined as an Affected Party does not assure you will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), or any other consideration contained in the Settlement Fund.  Eligibility and criteria for payment will be approved by the Bankruptcy Court at a later date and will be subject to notice and an opportunity to object."

2.    Please be specific in the forms of Notice that the releases and waivers that are contemplated under the Settlement Agreement to go into effect upon entry of the Settlement Order, and the channeling of claims to the Settlement Fund and to any other settlement consideration that will be done as contemplated by the Waiver Provision, will be solely the function of entry of the Settlement Order.  **[We have shared a mark-up of the  Notices with Brown Rudnick in this regard.  It is our understanding that Brown Rudnick is drafting revisions to the Notices that will be circulated shortly.]**

We are ready to move ahead, subject to acceptance of these points and our review of any additional changes to the documents.

Bill

William P Weintraub

 GOODWIN

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
o  +1 212 813 8839
m  +1 917 861 7200
f  +1 212 419 0964
WWeintraub@goodwinlaw.com | goodwinlaw.com

*

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

********************************************************************************

********************************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

********************************************************************************

CONFIDENTIAL

EXECUTION VERSION

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "**Agreement**"), dated as of August __, 2017 among:

Wilmington Trust Company, solely in its capacity as trustee for and administrator of the Motors Liquidation Company General Unsecured Creditors Trust (the "**GUC Trust**")

-and-

The Signatory Plaintiffs, as hereinafter defined (the Signatory Plaintiffs and the GUC Trust, the "**Parties**").

## PREAMBLE[1]

### Background: The Old GM Bankruptcy.

A.      Beginning on June 1, 2009 (the "**Petition Date**"), Motors Liquidation Company f/k/a General Motors Corporation, a Delaware Corporation ("**Old GM**"), and certain of its affiliated companies (together with Old GM, the "**Debtors**") commenced cases (the "**Old GM Bankruptcy Case**") under chapter 11 of the Bankruptcy Code;

B.      Also on the Petition Date, Old GM and certain other affiliated entities (collectively, the "**Sellers**") entered into a Master Sale and Purchase Agreement (the "**MSPA**") pursuant to which certain assets of the Sellers, including the brand "General Motors," were to be sold to NGMCO, Inc., n/k/a General Motors LLC, a Delaware corporation ("**New GM**");

C.      As of July 5, 2009, the MSPA, which had been previously amended and restated, was further and finally amended pursuant to a Second Amendment to the Amended and Restated Master Sale and Purchase Agreement (the Master Sale and Purchase Agreement, as so amended and restated through the aforesaid Second Amendment, the "**AMSPA**") to, among other things, modify provisions in the AMSPA relating to the issuance by New GM of shares (the "**Adjustment Shares**") of New GM Common Stock in respect of Allowed General Unsecured Claims;

D.      Pursuant to the AMSPA, if the Bankruptcy Court issues an order estimating the aggregate Allowed General Unsecured Claims against the Sellers (the "**Claims Estimate Order**") at an amount exceeding thirty-five billion dollars ($35,000,000,000), then New GM must, within five (5) business days of entry of the Claims Estimate Order, issue the Adjustment Shares;

E.      If the Bankruptcy Court issues a Claims Estimate Order estimating the aggregate Allowed General Unsecured Claims against the Sellers at an amount at or exceeding forty-two

---

[1] Capitalized terms used, but otherwise not defined in the Preamble shall have the meanings ascribed to such terms in the Definitions section of this Agreement.

1

billion dollars ($42,000,000,000), New GM must issue the maximum amount of Adjustment Shares (30,000,000 shares);

F.    On July 5, 2009, the AMSPA was approved pursuant to a Bankruptcy Code section 363 order (the "**Sale Order**");

G.    Pursuant to the Sale Order, New GM became vested in substantially all of the material assets of the Sellers;

H.    On July 10, 2009 (the "**Closing Date**"), the transactions approved pursuant to the Sale Order were consummated (the "**363 Sale**");

I.    On September 16, 2009, the Bar Date Order was entered establishing November 30, 2009 (the "**Bar Date**") as the deadline to file proofs of claim against the Debtors;

J.    On March 29, 2011, the Bankruptcy Court issued an order (the "**Confirmation Order**") confirming the Debtors' Second Amended Joint Chapter 11 Plan (the "**Plan**");

K.    The Plan created the GUC Trust pursuant to an agreement, as it has been and may be further amended from time to time (the "**GUC Trust Agreement**"), as a post-confirmation successor to Old GM pursuant to Section 1145 of the Bankruptcy Code, to, *inter alia*, administer assets held or to be held by the GUC Trust (the "**GUC Trust Assets**");

L.    Pursuant to the Plan and a side letter (the "**Side Letter**"), attached hereto as Exhibit A, by and between the GUC Trust, the Debtors, New GM, and FTI Consulting (as trust monitor of the GUC Trust) dated September 23, 2011, the GUC Trust is exclusively authorized to seek the issuance of Adjustment Shares for satisfaction of Allowed General Unsecured Claims at any time; provided, however, that it was the GUC Trust's then intention to delay seeking issuance of the Adjustment Shares until such time (if any) that the GUC Trust determined, in its sole and absolute discretion, that the aggregate Allowed General Unsecured Claims were, in the GUC Trust's estimation, likely to exceed $35 billion, at which time the GUC Trust is entitled to seek the issuance of Adjustment Shares;

M.    The Plan, GUC Trust Agreement, and Side Letter provided the GUC Trust with the sole, exclusive right to object to General Unsecured Claims, pursue a Claims Estimate Order, and receive the Adjustment Shares;

N.    On March 31, 2011 (the "**Effective Date**"), the Plan was declared effective;

**The Recalls and the Multi-District Litigation.**

O.    In or around February and March of 2014, New GM issued a recall, NHTSA Recall Number 14V-047, pertaining to 2,191,525 vehicles with an ignition switch defect (the "**Ignition Switch Defect**");

2

GUC_0001566

P.    In or around June, July and September of 2014, New GM issued five additional recalls pertaining to over 10 million vehicles with defective ignition switches, NHTSA Recall Numbers 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540;

Q.    In or around March of 2014, New GM issued a recall, NHTSA Recall Number 14V-118, pertaining to approximately 1.2 million vehicles with defective side airbags;

R.    In or around March of 2014, New GM issued a recall, NHTSA Recall Number 14V-153, pertaining to over 1.3 million vehicles with defective power steering;

S.    Commencing after the issuance of the recalls, numerous lawsuits were filed against New GM, individually or on behalf of putative classes of persons, by, *inter alia*,:

a.    plaintiffs asserting economic loss claims who, as of July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047 (the "**Ignition Switch Plaintiffs**");

b.    plaintiffs asserting economic loss claims who, as of July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags, or power steering included in NHTSA Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346, 14V-540, 14V-118 and 14V-153 (the "**Non-Ignition Switch Plaintiffs**"); and

c.    plaintiffs asserting personal injury or wrongful death claims based on or arising from an accident involving an Old GM vehicle that occurred prior to the Closing Date (the "**Pre-Closing Accident Plaintiffs**"), including a subset asserting claims involving an Old GM vehicle with the Ignition Switch Defect (the "**Ignition Switch Pre-Closing Accident Plaintiffs**");

T.    Many of the cases commenced against New GM were consolidated in a multi-district litigation (the "**GM MDL**") pending in the United States District Court for the Southern District of New York before the Hon. Jesse M. Furman (the "**District Court**");

**The Motions to Enforce Litigation.**

U.    In or around April and August of 2014, New GM sought to enjoin such lawsuits against New GM by filing motions to enforce the Sale Order with respect to: (i) Ignition Switch Plaintiffs; (ii) Ignition Switch Pre-Closing Accident Plaintiffs; and (iii) Non-Ignition Switch Plaintiffs (the "**Motions to Enforce**");

V.    Following the filing of the Motions to Enforce, the Bankruptcy Court identified initial issues to be addressed on the Motions to Enforce with respect to the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs;

W.    Following briefing and argument, the Bankruptcy Court issued its decision (the "**Decision**") on April 15, 2015, and a judgment implementing the Decision (the "**Judgment**") on June 1, 2015;

3

CONFIDENTIAL                                                                    GUC_0001567

X.     In the Decision and the Judgment, the Bankruptcy Court ruled that "based on the doctrine of equitable mootness, in no event shall assets of the GUC Trust held at any time in the past, now or in the future (collectively, the 'GUC Trust Assets') (as defined in the Plan) be used to satisfy any claims of the Plaintiffs";

Y.     On July 13, 2016, the Second Circuit issued an opinion on direct appeal of the Decision and Judgment, vacating the Bankruptcy Court's equitable mootness ruling as an advisory opinion;

Z.     Following the issuance of the Second Circuit's mandate, the Bankruptcy Court identified initial issues to be addressed on remand, including whether the Pre-Closing Accident Plaintiffs, the Ignition Switch Plaintiffs and/or Non-Ignition Switch Plaintiffs satisfy the requirements for authorization to file late proof(s) of claim against the GUC Trust and/or are such claims equitably moot;

AA.     On December 22, 2016, the Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs and certain Pre-Closing Accident Plaintiffs filed motions for authority to file late proofs of claim, including late class proofs of claim (the "**Late Claims Motions**");

BB.     On or around February 16, 2017, counsel for the GUC Trust served counsel for the Ignition Switch Plaintiffs and counsel for certain Ignition Switch Pre-Closing Accident Plaintiffs with interrogatories (the "**Late Claims Interrogatories**") in connection with the Late Claims Motions;

CC.     An Ignition Switch Plaintiff and certain Ignition Switch Pre-Closing Accident Plaintiffs have responded to the Late Claims Interrogatories;

DD.     In or around March 2017, additional briefs were filed by Ignition Switch Plaintiffs, certain Ignition Switch Pre-Closing Accident Plaintiffs, New GM, and jointly by the GUC Trust and certain unaffiliated holders of beneficial units of the GUC Trust    (the "**Participating Unitholders**") on the Applicability of *Pioneer* Issue and the Tolling Issue (as those terms are defined in the *Order Establishing, Inter Alia, Briefing Schedule for Certain Issues Arising From Late Claim Motions Filed by Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Certain Ignition Switch Pre-Closing Accident Plaintiffs* [ECF No. 13869]);

EE.     On July 15, 2016 and June 30, 2017, Judge Furman issued opinions in the GM MDL explaining that the "benefit-of-the-bargain defect theory" of economic loss damages "compensates a plaintiff for the fact that he or she overpaid, at the time of sale, for a defective vehicle. That form of injury has been recognized by many jurisdictions." See In re General Motors LLC Ignition Switch Litig., 14-MD-2543 (JMF) (S.D.N.Y. June 30, 2017) [ECF Nos. 3119, 4175].

FF.     Counsel for the Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs and certain Pre-Closing Accident Plaintiffs have provided counsel for the GUC Trust with expert reports and proffers of evidence indicating that the amount of damages for the Ignition Switch Plaintiffs', certain Non-Ignition Switch Plaintiffs', and certain Pre-Closing Accident Plaintiffs' asserted claims, if ultimately determined to be Allowed General Unsecured Claims against Old

4

GM and/or the GUC Trust, would be greater than that amount necessary to trigger New GM's obligation to issue the Adjustment Shares in the maximum amount under the AMSPA;

GG.    The Signatory Plaintiffs, on the one hand, and the GUC Trust, on the other hand, disagree regarding whether the proponents of the Late Claims Motions satisfy the requirements for authorization to file late proof(s) of claim against the GUC Trust, and whether such asserted claims are equitably moot;

HH.    The Signatory Plaintiffs, on the one hand, and the GUC Trust, on the other hand, disagree regarding whether any GUC Trust Assets currently in the GUC Trust could be used to satisfy Plaintiffs' (as hereinafter defined) asserted claims against the GUC Trust and Old GM;

II.    The Signatory Plaintiffs, on the one hand, and the GUC Trust, on the other hand, disagree regarding whether any GUC Trust Assets previously distributed are subject to claw-back or recapture by the GUC Trust and/or the Plaintiffs to satisfy Plaintiffs' asserted claims against the GUC Trust and Old GM;

JJ.    The Signatory Plaintiffs, on the one hand, and the GUC Trust, on the other hand, disagree regarding the ultimate amount of Allowed General Unsecured Claims of the Plaintiffs;

KK.    The GUC Trust desires to complete the distribution of the GUC Trust Assets held by the GUC Trust as soon as practicable and, to such purpose, desires to resolve the Late Claims Motions and the Plaintiffs' asserted claims against the GUC Trust and Old GM;

LL.    The GUC Trust acknowledges the key objectives of the Signatory Plaintiffs in entering into this Agreement are to (i) achieve the funding of the Settlement Fund; (ii) avoid the risk, delay, uncertainty and costs of litigation with the GUC Trust; and (iii) take or to cause to be taken all steps necessary to require New GM to issue the maximum amount of Adjustment Shares and to make the value of the Settlement Fund and the Adjustment Shares available to satisfy, in part, the Plaintiffs' claims. In connection with those objectives, the GUC Trust, based upon its review of the expert report and proffer of evidence provided by Counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs and the expert report and proffer of evidence provided by certain Pre-Closing Accident Plaintiffs, agrees to provide the cooperation and assistance provided for herein relating to the issuance of a Claims Estimate Order, as provided for pursuant to Section 3.2(c) of the AMSPA and the Side Letter, and to seek to estimate for allowance purposes, and not dispute the amount of estimated claims thereunder;

MM.    The Signatory Plaintiffs acknowledge the key objectives of the GUC Trust in entering into this Agreement are: (i) to minimize any delay in the distribution of any remaining GUC Trust Assets; (ii) avoid any claw-back or recapture of prior distributions of GUC Trust Assets; and (iii) otherwise avoid the risk, delay, uncertainty and costs of litigation.

## AGREEMENT

The GUC Trust and the Signatory Plaintiffs propose to resolve their dispute as follows:

1.    **DEFINITIONS.**  The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

5

GUC_0001569

**1.1    Adjustment Shares** shall have the meaning ascribed to such term in the Preamble.

**1.2    Adjustment Shares Waiver Provision** shall have the meaning ascribed to such term in Section 2.3 hereto.

**1.3    Allowed General Unsecured Claims** means General Unsecured Claims against the Debtors that have been allowed through the date of entry of the Claims Estimate Order, including, to the extent such order is entered by the Bankruptcy Court, the claims in the Claims Estimate Order.

**1.4    AMPSA** shall have the meaning ascribed to such term in the Preamble.

**1.5    Bar Date Order** means that *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section 503(B)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice Thereof*, dated Sept. 16, 2009 [ECF No. 4079] entered by the Bankruptcy Court establishing the Bar Date.

**1.6    Bar Date** shall have the meaning ascribed to such term in the Preamble.

**1.7    Bankruptcy Code** means title 11 of the United States Code.

**1.8    Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York and shall have the meaning ascribed to such term in the Preamble.

**1.9    Claims Estimate Order** shall mean an order of the Bankruptcy Court estimating the aggregate Allowed General Unsecured Claims against the Sellers, inclusive of the claims of the Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, and certain Pre-Closing Accident Plaintiffs, entered pursuant to Section 3.2(c) of the AMSPA.

**1.10    Closing Date** shall have the meaning ascribed to such term in the Preamble.

**1.11    Co-Lead Counsel** means, for purposes of this Agreement, Steve W. Berman of Hagens Berman Sobol Shapiro LLP and Elizabeth Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP, who were individually and collectively appointed to represent all economic loss plaintiffs in the GM MDL by Order No. 8, In re Gen. Motors LLC Ignition Switch Litig., No. 14-MD-2543 (S.D.N.Y. Aug. 15, 2014) [ECF No. 249], or any other or replacement counsel appointed to represent any Ignition Switch or Non-Ignition Switch Plaintiffs in the GM MDL.

**1.12    Communication** shall have the meaning ascribed to such term in Section 3.15.

**1.13    Confirmation Order** shall have the meaning ascribed to such term in the Preamble.

**1.14    Debtors** shall have the meaning ascribed to such term in the Preamble.

6

CONFIDENTIAL

**1.15**    **Decision** means *Decision on Motion to Enforce Sale Order*, entered April 15, 2015 [ECF No. 13109] by Judge Robert E. Gerber in the Bankruptcy Court, published as In re Motors Liquidation Company, 529 B.R. 510 (Bankr. S.D.N.Y. 2015), as corrected in *Errata Order RE: Decision on Motion to Enforce Sale Order*, In re Motors Liquidation Co., No. 09-50026, dated July 13, 2015 [ECF No. 13290].

**1.16**    **District Court** shall have the meaning ascribed to such term in the Preamble.

**1.17**    **Effective Date** shall have the meaning ascribed to such term in the Preamble.

**1.18**    **Final Order** has the meaning ascribed to it in the Plan.

**1.19**    **General Unsecured Claim** has the meaning ascribed to it in the Plan.

**1.20**    **GM MDL** shall have the meaning ascribed to such term in the Preamble.

**1.21**    **GUC Trust** means the trust created by the GUC Trust Agreement in the form approved as Exhibit D to the Plan, as the same has been and may further be amended from time to time.

**1.22**    **GUC Trust Agreement** means the *Second Amended and Restated Motors Liquidation Company GUC Trust Agreement*, by and among Wilmington Trust Company, as trust administrator and trustee of the GUC Trust, and FTI Consulting, as trust monitor of the GUC Trust, dated July 30, 2015, as it may be amended from time to time.

**1.23**    **GUC Trust Assets** means assets that have been held, are held, or may be held in the future by the GUC Trust.  Solely in the event that the Bankruptcy Court enters the Claims Estimate Order, the term "GUC Trust Assets" as used herein shall be deemed to exclude the Adjustment Shares.

**1.24**    **GUC Waiver Provision** shall have the meaning ascribed to such term in Section 2.3 hereto.

**1.25**    **Ignition Switch Defect** shall have the meaning ascribed to such term in the Preamble.

**1.26**    **Ignition Switch Plaintiffs** shall have the meaning ascribed to such term in the Preamble.

**1.27**    **Ignition Switch Pre-Closing Accident Plaintiffs** shall have the meaning ascribed to such term in the Preamble.

**1.28**    **Judgment** means the Judgment, entered June 1, 2015 [ECF No. 13177] by Judge Robert E. Gerber in the Old GM Bankruptcy Case.

**1.29**    **Key Objectives** means the objectives of the Parties in entering into this Agreement as stated in Paragraphs LL and MM of the Preamble.

CONFIDENTIAL

GUC_0001571

**1.30    Late Claims Motions** shall have the meaning ascribed to such term in the Preamble.

**1.31    Motions to Enforce** means, collectively, the (i) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [ECF No. 12620]; (ii) *Motion of General Motors LLC Pursuant to 11 U.S.C §§ 105 and 363 to Enforce this Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [ECF No. 12807]; and (iii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 [ECF No. 12808].

**1.32    New GM** means General Motors LLC (F/K/A NGMCO, Inc.).

**1.33    New GM Common Stock** means the common stock of New GM (NYSE: GM).

**1.34    NHTSA** means the National Highway Traffic Safety Administration.

**1.35    Non-Ignition Switch Plaintiffs** shall have the meaning ascribed to such term in the Preamble.

**1.36    Notice Cost Cap Amount** shall have the meaning ascribed to such term in Section 2.9.

**1.37    Notice Order** shall have the meaning ascribed to such term in Section 2.9.

**1.38    Old GM** means Motors Liquidation Company, formerly known as General Motors Corporation.

**1.39    Old GM Bankruptcy Case** means those proceedings commenced on June 1, 2009 in the Bankruptcy Court captioned *In re Motors Liquidation Company, et al., f/k/a General Motors Corp.*, Bankr. No. 09-50026.

**1.40    Outside Date** shall have the meaning ascribed to such term in Section 3.2.

**1.41    Parties** means the Signatory Plaintiffs and the GUC Trust.

**1.42    PIWD** means claims for personal injury and wrongful death.

**1.43    PIWD Counsel** means (i) Robert C. Hilliard of Hilliard Muñoz Gonazlez, LLP and Thomas J. Henry of the Law Offices of Thomas J. Henry, but solely for the Pre-Closing Accident Plaintiffs represented by those two law firms; and (ii) Lisa M. Norman of Andrews Myers, P.C., but solely for the Pre-Closing Accident Plaintiffs represented by that law firm.

**1.44    PIWD Plaintiffs** means those certain Ignition Switch Pre-Closing Accident Plaintiffs represented by PIWD Counsel.

CONFIDENTIAL

GUC_0001572

**1.45** **Plaintiffs** means the Ignition Switch Plaintiffs, the Non-Ignition Switch Plaintiffs, and the Pre-Closing Accident Plaintiffs, including all plaintiffs (whether named or unnamed, including unnamed members of a putative class) covered by any of the Late Claims Motions, all plaintiffs represented by counsel that is signatory hereto and any other party who, (i) as of July 10, 2009, suffered an economic loss claim by reason of their ownership or lease of an Old GM vehicle with an ignition switch defect included in Recall No. 14V-047; (ii) as of July 10, 2009 suffered an economic loss claim by reason of their ownership or lease of an Old GM vehicle with defects in ignition switches, side airbags, or power steering included in NHTSA Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346, 14V-540, 14V-118 and 14V-153, and/or (iii) suffered a personal injury or wrongful death based on or arising from an accident involving an Old GM vehicle that occurred prior to the Closing Date; it being understood however that the covenants and agreements to be performed by the Signatory Plaintiffs are to be performed by Co-Lead Counsel and PIWD Counsel and that no action or failure to act by any Plaintiff (other than the Signatory Plaintiffs) shall constitute a breach of this Agreement or shall excuse the performance of any other Party.

**1.46** **Plan** means Debtors' Second Amended Joint Chapter 11 Plan, filed March 18, 2011 [ECF No. 9836] by Motors Liquidation Company in the Bankruptcy Proceeding.

**1.47** **Pre-Closing** means any time before July 10, 2009, the date on which the 363 Sale between Sellers and New GM closed.

**1.48** **Pre-Closing Accident Plaintiffs** shall have the meaning ascribed to such term in the Preamble.

**1.49** **Recalls** means NHTSA Recall Numbers 14V-047, 14V-355, 14V-394, 14V-400, 14V-346, 14V-540, 14V-118 and 14V-153.

**1.50** **Sale Order** means the *Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief*, dated July 5, 2009 [ECF No. 2968] and the supporting *Decision on Debtors' Motion for Approval of (1) Sale of Assets to Vehicle Acquisition Holdings, LLC; (2) Assumption and Assignment of Related Executory Contracts; and (3) Entry into UAW Retiree Settlement Agreement*, dated July 5, 2009 [ECF No. 2967].

**1.51** **Sellers** means Motors Liquidation Company, formerly known as General Motors Corporation, together with three of its debtor subsidiaries, Chevrolet-Saturn of Harlem, Inc.; Saturn, LLC; and Saturn Distribution Corporation.

**1.52** **Settlement** means the settlement of the Parties' disputes as provided for by this Agreement.

**1.53** **Settlement Amount** shall have the meaning ascribed to such term in Section 2.3 hereto.

**1.54** **Settlement Effective Date** shall have the meaning ascribed to such term in Section 3.1 hereto.

9

GUC_0001573

**1.55    Settlement Fund** shall have the meaning ascribed to such term in Section 2.3 hereto.

**1.56    Settlement Motion** shall have the meaning ascribed to such term in Section 2.2 hereto.

**1.57    Settlement Order** shall have the meaning ascribed to such term in Section 2.2.

**1.58    Signatory Plaintiffs** means PIWD Counsel on behalf of the PIWD Plaintiffs, and Co-Lead Counsel on behalf of the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs.

**1.59    Term Loan Avoidance Action** shall mean the action captioned *Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al.*, Adv. Pro. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009).

**1.60    Term Loan Avoidance Action Claims** shall have the meaning ascribed to such term in the GUC Trust Agreement.

**1.61    Waiver** shall have the meaning ascribed to such term in Section 2.3.

**1.62    Waiver Provision** shall have the meaning ascribed to such term in Section 2.3.

**2.    MUTUAL AGREEMENTS OF THE PARTIES.**

**2.1**    The Preamble constitutes an essential part of the Agreement and is incorporated herein.

**2.2**    As soon as practicable following the execution of this Agreement, the Parties shall prepare and file a motion in the Bankruptcy Court (the "**Settlement Motion**") seeking entry of (i) an order (the "**Settlement Order**") substantially in the form of Exhibit B attached hereto, and otherwise on terms acceptable to the GUC Trust, Co-Lead Counsel and PIWD Counsel, each in their sole and absolute discretion, approving the Settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and (ii) a Claims Estimate Order substantially in the form of Exhibit C attached hereto, and otherwise on terms acceptable to the GUC Trust, Co-Lead Counsel and PIWD Counsel, each in their sole and absolute discretion.

**2.3**    In furtherance of the Key Objectives and as an inducement to the GUC Trust's entry into this Agreement and willingness to be bound by the terms of the Settlement Order and the Claims Estimate Order, provided notice has been given in a form and manner approved by the Bankruptcy Court, the Signatory Plaintiffs agree that they shall support the entry of a Settlement Order that:

(a)    directs the GUC Trust to, within five (5) business days of the Settlement Effective Date, irrevocably pay fifteen million dollars ($15,000,000) in cash (the "**Settlement Amount**") to a trust, fund or other vehicle (the "**Settlement Fund**") established and designated by the Signatory Plaintiffs (for purposes of administration of Plaintiffs' claims reconciliation and/or distributions to Plaintiffs under a subsequent allocation

10

GUC_0001574

methodology); provided that, in the event the Signatory Plaintiffs have not designated such Settlement Fund within two (2) business days following the Settlement Effective Date, the GUC Trust shall place the Settlement Amount into an third party escrow account established by the GUC Trust;

(b)    contains a provision which, effective upon (i) the Settlement Order becoming a Final Order (unless the GUC Trust waives the requirement that the Settlement Order be a Final Order in accordance with Section 3.1 hereof) and (ii) payment of the Settlement Amount, imposes a complete and irrevocable waiver and release on the part of all Plaintiffs with respect to any and all rights, claims and causes of action (including but not limited to any claims and causes of action with respect to Allowed General Unsecured Claims of the Plaintiffs arising under, or that may arise under, the Claims Estimate Order), now existing or arising in the future, that any Plaintiff might directly or indirectly assert against the Debtors, their estates, the GUC Trust, the trust administrator of the GUC Trust, the GUC Trust Assets, the Motors Liquidation Company Avoidance Action Trust and the holders of beneficial units in the GUC Trust, and channels all such claims or potential claims to the Settlement Fund for administration and satisfaction (the "**Waiver Provision**," and the waiver and release contemplated thereby, the "**Waiver**");

(c)    contains a provision which, effective upon (i) the Settlement Order becoming a Final Order (unless the GUC Trust waives the requirement that the Settlement Order be a Final Order in accordance with Section 3.1 hereof) and (ii) payment of the Settlement Amount, imposes a complete and irrevocable waiver and release on the part of all holders of units of beneficial interest in the GUC Trust, all defendants in the Term Loan Avoidance Action, and holders of Allowed General Unsecured Claims, other than the Plaintiffs, with respect to any rights to the Settlement Fund, including the Settlement Amount (the "**GUC Waiver Provision**"); and

(d)    contains a provision which, effective upon (i) the Settlement Order becoming a Final Order (unless the GUC Trust waives the requirement that the Settlement Order be a Final Order in accordance with Section 3.1 hereof), (ii) payment of the Settlement Amount, and (iii) entry of the Claims Estimate Order by the Bankruptcy Court, imposes a complete and irrevocable waiver and release on the part of the GUC Trust, all holders of units of beneficial interest in the GUC Trust, all defendants in the Term Loan Avoidance Action, and all holders of Allowed General Unsecured Claims, other than the Plaintiffs, with respect to any rights to any Adjustment Shares (the "**Adjustment Shares Waiver Provision**").

2.4    In furtherance of the Key Objectives and as an inducement to the Signatory Plaintiffs' entry into this Agreement and willingness to be bound by the terms of Settlement Order, including but not limited to the Waiver Provision, the GUC Trust, based upon its review of the expert report and proffer of evidence provided by Counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs, and the expert report and proffer of evidence provided by the PIWD Plaintiffs, agrees that it shall support the entry of a Claims Estimate Order that:

11

GUC_0001575

(a)    estimates the aggregate Allowed General Unsecured Claims (inclusive of the claims of the Plaintiffs, but excluding Term Loan Avoidance Action Claims) against the Sellers and/or the GUC Trust pursuant to Section 7.3 of the Plan, Section 3.2(c) of the AMSPA and the Side Letter in an amount that, as of the date of the Claims Estimate Order, equals or exceeds $42 billion, thus triggering the issuance of the maximum amount of Adjustment Shares; and

(b)    directs that any such Adjustment Shares issued as a result of a Claims Estimate Order, or the value of such Adjustment Shares, be promptly delivered by New GM to the Settlement Fund.

2.5    Following the Settlement Order becoming a Final Order (unless the GUC Trust waives the requirement that the Settlement Order be a Final Order in accordance with Section 3.1 hereof), contemporaneously with the payment of the Settlement Amount by the GUC Trust to the Settlement Fund, the Waiver Provision shall become immediately and automatically effective and binding on all Plaintiffs, and the GUC Waiver Provision shall become immediately and automatically effective and binding on the GUC Trust, all holders of units of beneficial interest in the GUC Trust, all defendants in the Term Loan Avoidance Action, and holders of Allowed General Unsecured Claims, other than the Plaintiffs.

2.6    Provided that the Settlement Order has become a Final Order (unless the GUC Trust waives the requirement that the Settlement Order be a Final Order in accordance with Section 3.1 hereof), then, contemporaneously upon the entry of the Claims Estimate Order (i) the Adjustment Shares Waiver Provision shall become immediately and automatically effective and binding on the GUC Trust, all holders of units of beneficial interest in the GUC Trust, all defendants in the Term Loan Avoidance Action, and holders of Allowed General Unsecured Claims, other than the Plaintiffs, and (ii) the GUC Trust shall be prohibited from, at any time, objecting to the allowance of the estimated claims at the amount set forth in the Claims Estimate Order.

2.7    The Parties shall use commercially reasonable efforts to have the Claims Estimate Order entered on the same date as the Settlement Order, provided that, (i) regardless of whether or not the Claims Estimate Order is entered on or after such date (and regardless of whether the request to enter the Claims Estimate Order is approved or denied), this Agreement (including, but not limited to Sections 2.2, 2.3(a), 2.3(b), 2.3(c), and 2.5 hereof) and the Settlement Order shall remain binding upon the Parties; (ii) the Settlement Amount shall not be returned to the GUC Trust under any circumstances; and (iii) the GUC Trust shall not be required to incur costs (other than the costs of notice as set forth in Paragraph 2.9 hereof) in excess of a reasonable amount in connection with prosecuting the Settlement Motion with respect to the Claims Estimate Order, or any appeals thereof.

2.8    Notwithstanding Sections 157(b)(2)(B) and (b)(2)(O) of Title 28, in connection with the Settlement Motion, to the extent (if any) consent is required, the Pre-Closing Accident Plaintiffs represented by PIWD Counsel consent to the Bankruptcy Court estimating their personal injury and wrongful death claims against the Sellers and/or the GUC Trust for purposes of determining whether the Allowed General Unsecured Claims in the aggregate exceed thirty-five billion dollars ($35,000,000,000). The Pre-Closing Accident Plaintiffs represented by

12

GUC_0001576

PIWD Counsel do not consent to estimation of their personal injury and wrongful death claims by the Bankruptcy Court for any other purpose or in connection with any other proceeding. If further adjudication of their personal injury and wrongful death claims is necessary notwithstanding entry of the Claims Estimate Order, the Pre-Closing Accident Plaintiffs represented by PIWD Counsel expressly reserve their rights to have their claims tried (pursuant to Section 157(b)(5) of Title 28) or estimated in the district court in which Old GM's bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district court in which Old GM's bankruptcy case is pending.

**2.9    Notice.**

(a)    The Parties shall be responsible for providing notice in connection with the Settlement Motion in accordance with notice procedures approved by an order of the Bankruptcy Court. Based on notice plan proposals from leading notice administrators, the Parties have budgeted and the GUC Trust agrees to pay the reasonable costs and expenses for notice of the Settlement Motion in an amount up to $6,000,000 (the "**Notice Cost Cap Amount**"). As soon as practicable following the execution of this Agreement, the Parties shall seek an order (the "**Notice Order**") of the Bankruptcy Court approving the proposed notice procedures for notice of the Settlement Motion. The requested notice procedures shall include (i) publication notice by multimedia channels that may include social media, e-mail, online car and consumer publications, and a settlement website (which, for the avoidance of doubt, may be the GUC Trust's website at www.mlcguctrust.com) posting all relevant documents and long-form notice; (ii) notice by postcard to: (A) all persons in the United States who, as of July 10, 2009, owned or leased a vehicle manufactured by Old GM included in the Recalls; (B) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against New GM as of the date of this Agreement; and (C) all Pre-Closing Accident Plaintiffs who have filed or joined a motion for authorization to file late claims against the GUC Trust; (iii) notice to all defendants in the Term Loan Avoidance Action via the Bankruptcy Court's ECF system and, to the extent a defendant is not registered to receive notice via the ECF system, via postcard, and (iv) notice via DTC's LENSNOTICE system to holders of beneficial units of the GUC Trust. The Signatory Plaintiffs agree to pay any amounts in excess of the Notice Cost Cap Amount.

(b)    Allocation of the Settlement Amount, the Adjustment Shares (or their value), and any other consideration contained in the Settlement Fund between the Plaintiffs asserting economic loss claims and the Plaintiffs asserting PIWD claims shall be determined and approved by the District Court. Notice of any agreement as to the proposed allocation of the Settlement Amount, the Adjustment Shares (or their value), and any other consideration contained in the Settlement Fund as between the group of Plaintiffs asserting claims for economic loss, on the one hand, and the group of Plaintiffs asserting claims for personal injury and wrongful death, on the other hand, along with information about the hearing date and how and when to assert any objections, will be provided by, and at the sole cost of, Signatory Plaintiffs (and not the GUC Trust) via a settlement website to all known Plaintiffs whose rights might be affected by such allocation and such Plaintiffs shall have an opportunity to object to the proposed allocation at a hearing, as when and if such agreement is reached.

13

GUC_0001577

(c)    Approval of the qualifications and criteria for Plaintiffs to be eligible to receive distributions from the Settlement Amount, the Adjustment Shares (or their value), and any other consideration contained in the Settlement Fund shall be done by the Bankruptcy Court. Notice of any proposed criteria for determining the right or ability of each Plaintiff to receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), and any other consideration contained in the Settlement Fund on account of a claim against Old GM based upon economic loss or for personal injury or wrongful death arising or occurring before the Bar Date, along with information about the hearing date and how and when to assert any objections, will be provided by, and at the sole cost of, Signatory Plaintiffs (and not the GUC Trust) via a settlement website to all known Plaintiffs whose rights might be affected by the establishment of criteria for the payment of such claims and such Plaintiffs shall have an opportunity to object to the proposed criteria at a hearing, as when and if such criteria is developed. Being defined as a Plaintiff does not assure any party that he, she, or it will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), or any other consideration contained in the Settlement Fund.

2.10    The Parties agree that all of the value of the Settlement Fund shall be reserved for the exclusive benefit of the Plaintiffs, subject only to costs associated with the administration of the Settlement Fund. For the avoidance of doubt, the GUC Trust, any holders of beneficial units of the GUC Trust, defendants in the Term Loan Avoidance Action, or holders of Allowed General Unsecured Claims, other than the Plaintiffs (i) shall have no rights or entitlements with respect to the Settlement Fund (including, when and if deposited, the Adjustment Shares or the value thereof) or the funds therein, and (ii) solely to the extent that the Settlement Order has become a Final Order (or the requirement that the Settlement Order be a Final Order has been waived by the GUC Trust in accordance with Section 3.1 hereof) and the Claims Estimate Order is entered by the Bankruptcy Court, shall have no rights or entitlements to the Adjustment Shares issued pursuant to the Claims Estimate Order, or to the value of such Adjustment Shares.

2.11    The Signatory Plaintiffs or, in the alternative, an administrator appointed by the Signatory Plaintiffs, shall establish the Settlement Fund (at the sole cost of the Signatory Plaintiffs) and the procedures for the administration and allocation to Plaintiffs of the Settlement Fund, including the criteria for Plaintiffs to assert a claim against the Settlement Fund on account of an Allowed General Unsecured Claim, methodology for allocating the Settlement Fund to Plaintiffs, and procedures for payment of Plaintiffs' attorneys' fees.

2.12    Nothing in the Settlement Agreement is intended to waive any claims against New GM or to be an election of remedies against New GM; nor does the Settlement Agreement or any payments made in connection therewith represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full from every available source; provided, however, that in no event shall any Plaintiff be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares. Except as mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any claims that any Plaintiff may have against New GM or constitute an election of remedies by any Plaintiff, and neither the Settlement Amount nor the Adjustment Shares (nor any distribution thereof to any Plaintiff) shall represent full and final satisfaction of any claim that any Plaintiff may have against New GM, all

14

                                    GUC_0001578

of which are expressly reserved. The Bankruptcy Court's estimate of the aggregate Allowed General Unsecured Claims in the Claims Estimate Order shall not operate as a cap on any of the claims of any of the Plaintiffs against New GM.

## 3.    MISCELLANEOUS PROVISIONS APPLICABLE TO THIS AGREEMENT.

**3.1    Settlement Effective Date.**  This Agreement shall become effective and binding on the Parties on the date on which this Agreement is fully executed by each of the Parties.  The Settlement set forth in this agreement (including but not limited to the required payment of the Settlement Amount, the delivery of the Waiver as set forth herein, the GUC Waiver Provision, and to the extent provided in section 2.3(d) hereof, the Adjustment Shares Waiver Provision) shall become effective on the date that the Settlement Order becomes a Final Order (the "**Settlement Effective Date**"), provided, however, that from and after the date the Settlement Order is entered by the Bankruptcy Court, the GUC Trust may waive the requirement that the Settlement Order be a Final Order.

### 3.2    Termination.

(A) <u>Automatic Termination.</u>  This Agreement shall immediately terminate as to all Parties in the event that the Bankruptcy Court denies approval of the Notice Order (or enters a Notice Order different from that set forth in Section 2.9 hereof that is not otherwise reasonably acceptable to the Parties) or denies approval of the Settlement Motion as it relates to the Settlement Order (for the avoidance of doubt, this Agreement shall not immediately terminate if the Bankruptcy Court denies approval of the Settlement Motion solely as it relates to the Claims Estimate Order).  In the event of such automatic termination, this Agreement shall be null and void, and each of the Parties' respective interests, rights, remedies and defenses shall be fully restored without prejudice as if this Agreement (except as set forth in Sections 3.3, 3.4, 3.5, 3.13, 3.15, and 3.19) had never existed and the Parties shall be returned to their respective positions status quo ante.

(B) <u>Termination by the GUC Trust.</u>  This Agreement shall be terminable at the option of the GUC Trust in the event that (a) the Notice Order is not entered on or before 30 days after execution of this Settlement Agreement, or (b) the Settlement Effective Date does not occur on or before 60 days after notice of the Settlement Motion has been provided pursuant to Section 2.9 hereto and the Notice Order (each of (a) and (b) the "**Outside Date**").  Following the passage of the Outside Date, the GUC Trust shall be entitled to send a notice of termination to the Signatory Plaintiffs in accordance with Section 3.15 hereof, with the Agreement automatically terminating on the date that such notice is received by the Signatory Plaintiffs.  In the event of such termination, this Agreement shall be null and void, and each of the Parties' respective interests, rights, remedies and defenses shall be fully restored without prejudice as if this Agreement (except as set forth in Sections 3.3, 3.4, 3.5, 3.13, 3.15, and 3.19) had never existed and the Parties shall be returned to their respective positions status quo ante.

15

GUC_0001579

(C) <u>Termination by Any Party for Cause.</u> In the event of any material breach of the terms of this Agreement, the non-breaching Party may elect (in addition to any other remedies available to the non-breaching party hereunder or under applicable law) to terminate this Agreement by (i) providing a Communication to the breaching party as set forth in Section 3.15 below, and affording the breaching party a five (5) business day period in which to cure the purported breach, and (ii) absent such cure or the commencement of an action in the Bankruptcy Court with respect to the existence of any such breach, by providing a follow-up Communication to the breaching Party as set forth in Section 3.15 below, that declares the Agreement to be terminated. Following such termination for cause, the terms of the Agreement shall no longer be binding on the non-breaching Party (except as set forth in Sections 3.3, 3.4, 3.5, 3.13, 3.15, and 3.19).

**3.3    Attorneys' Fees.** Except as otherwise provided for herein, each of the Parties shall pay its own court costs, attorneys' fees, and all other expenses, costs, and fees incurred relating to this Agreement and any related litigation, including but not limited to the GM MDL and Motions to Enforce litigation. If any lawsuit or proceeding is required to enforce the terms of this Agreement, the prevailing party in any such lawsuit or proceeding shall be entitled to reasonable attorney's fees and costs.

**3.4    No Admission.** Nothing in this Agreement shall be deemed an admission of any kind. To the extent provided by Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than in support of the Settlement Motion and proposed entry of the Settlement Order and Claims Estimate Order or in a proceeding to enforce the terms of this Agreement.

**3.5    Remedies.** Each of the Parties retain all remedies available in law or equity for breach of this Agreement by any Party, including, without limitation, the right of a non-breaching Party to seek specific performance and injunctive or other equitable relief as a remedy for any such breach.

**3.6    No Litigation.** Except as may be necessary to enforce the terms of this Agreement, the Parties and any other person who is an intended beneficiary hereunder, agree that she or he shall not commence or proceed with any action, claim, suit, proceeding or litigation against any other Party, directly or indirectly, regarding or relating to the matters described in this Agreement, or take any action inconsistent with the terms of the Agreement.

**3.7    Further Assurances.** Each of the Parties covenant to, from time to time, execute and deliver such further documents and instruments and take such other actions as may be reasonably required or appropriate to evidence, effectuate, or carry out the intent and purposes of this Agreement or to perform its obligations under this Agreement and the transactions contemplated thereby.

**3.8    Cooperation.** The Parties agree to reasonably cooperate with one another to effectuate an efficient and equitable implementation of this Agreement.

CONFIDENTIAL                                                                 GUC_0001580

**3.9    Counterparts; Facsimile; Signatures.**  This Agreement may be executed in any number of counterparts and by different Parties to this Agreement on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement.  Any signature delivered by any of the Parties by facsimile or electronic transmission shall be as effective as delivery of a manually executed counterpart of this Agreement, shall be deemed to be an original signature hereto, and shall be admissible as such in any legal proceeding to enforce this Agreement.

**3.10    Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective agents, partners, attorneys, employees, representatives, officers, directors, shareholders, divisions, subsidiaries, affiliates, transferees, heirs, executors, administrators, personal representatives, legal representatives, successors, and assigns, consistent with the other provisions of this Agreement.

**3.11    Integration.**  This Agreement constitutes the entire agreement and understanding among the Parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements, representations and understandings between or among any of the Parties hereto relating to such subject matter.  In entering into this Agreement, the Parties and each of them acknowledge that they are not relying on any statement, representation, warranty, covenant or agreement of any kind made by any other party hereto or any employee or agent of any other party hereto, except for the representations, warranties, covenants and agreements of the Parties expressly set forth herein.

**3.12    Amendment.**  Except as otherwise specifically provided in this Agreement, no amendment, modification, rescission, waiver or release of any provision of this Agreement shall be effective unless the same shall be in writing and signed by the Parties.

**3.13    Interpretation.**  Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, and the Parties agree to take any and all steps which are necessary in order to enforce the provisions hereof.

**3.14    Severability.**  The terms and conditions of this Agreement are not severable. However, if any provision or part of any provision of this Agreement is for any reason declared or determined by a court to be invalid, unenforceable, or contrary to public policy, law, statute, or ordinance, the validity of the remaining parts, terms, or provisions of this Agreement shall not be affected thereby and shall remain valid and fully enforceable, and such invalid, unenforceable, or illegal part or provision shall not be deemed to be part of this Agreement.

**3.15    Notices.**  Any notice, demand, request, consent, approval, declaration or other communication (a "**Communication**") under this Agreement shall be in writing and shall be given or delivered (i) by a nationally recognized private overnight courier service addressed as indicated in Schedule 1 annexed hereto or to such other address as such party may indicate by a notice delivered to the other Parties hereto in accordance with the provisions hereof; or (ii) to the extent that such Communication has been filed with the Bankruptcy Court, via the electronic distribution means used by the Bankruptcy Court.  Any Communication shall be deemed to have been effectively delivered and received, if sent by a nationally recognized

17

CONFIDENTIAL

GUC_0001581

private overnight courier service, on the first business day following the date upon which it is delivered for overnight delivery to such courier service.

**3.16    Choice of Law and Forum; Consent to Jurisdiction.**  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to its conflict of laws principles.  The District Court and the Bankruptcy Court shall have jurisdiction to resolve any dispute arising out of, related to or in connection with this Agreement to the exclusion of any other court, and the Parties hereby consent to the jurisdiction of the District Court and the Bankruptcy Court for resolution of such disputes and agree that they shall not attempt to litigate any such dispute in any other court.

**3.17    Advice of Counsel.**  Each Party represents and acknowledges that it has been represented by an attorney with respect to this Agreement and any and all matters covered by or related to such Agreement.  Each Party further represents and warrants to each other that the execution and delivery of this Agreement has been duly authorized by each of the Parties after consultation with counsel, that the persons signing this Agreement on their behalf below have been fully authorized by their respective Parties to do so, and that the undersigned do fully understand the terms of this Agreement and have the express authority to enter into this Agreement.

**3.18    Assignment.**  No assignment of this Agreement or of any rights or obligations hereunder may be made by any party hereto without the prior written consent of the other Parties hereto, and any attempted assignment without such prior consent shall be null and void.  No assignment of any obligations hereunder shall relieve any of the Parties hereto liable therefore of any such obligations.

**3.19    Waiver.**  Except as otherwise specifically provided in this Agreement, any provision of this Agreement may be waived only by a written instrument signed by the Party against whom enforcement of such waiver is sought.

**3.20    Headings, Number, and Gender.**  The descriptive headings of the sections of this Agreement are included for convenience of reference only and shall have no force or effect in the interpretation or construction of this Agreement.  As used in this Agreement, the singular shall include the plural, and the masculine shall include the feminine and neutral genders, and vice versa.

**3.21    Waiver of Jury Trial.**  Each of the Parties hereby irrevocably waives its rights, if any, to a jury trial for any claim or cause of action based upon or arising out of this Agreement.

18

CONFIDENTIAL

GUC_0001582

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of the date first written above.

BROWN RUDNICK LLP

On behalf of the Plaintiffs

By: _____
Name:  Edward S. Weisfelner
Name:  Howard S. Steel

Title:  Designated Counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs in the Bankruptcy Court

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

On behalf of the Plaintiffs

By: _____
Name:  Sander L. Esserman

Title: Designated Counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs in the Bankruptcy Court

HAGENS BERMAN SOBOL SHAPIRO LLP

On behalf of the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs

By: _____
Name:  Steve W. Berman

Title: Co-Lead Counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs in the MDL Court

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

On behalf of the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs

By: _____
Name:  Elizabeth J. Cabraser

Title: Co-Lead Counsel for the Ignition Switch

GIBSON, DUNN & CRUTCHER, LLP

On behalf of the GUC Trust

By: _____
Name:  Matthew Williams
Name:  Keith R. Martorana
Name:  Gabriel Gillett

Title:  Counsel for Wilmington Trust Company, as Administrator and Trustee of the GUC Trust

19

GUC_0001583

Plaintiffs and certain Non-Ignition Switch
Plaintiffs in the MDL Court

GOODWIN PROCTER LLP

On behalf of the PIWD Plaintiffs Represented
By Hilliard Muñoz Gonzales L.L.P. and the
Law Offices of Thomas J. Henry

By: _____
Name:  William P. Weintraub
Name:  Gregory W. Fox

Title: Counsel to the PIWD Plaintiffs
Represented By Hilliard Muñoz Gonzales
L.L.P. and the Law Offices of Thomas J.
Henry

HILLIARD MUÑOZ GONZALES LLP

On behalf of the PIWD Plaintiffs

By: _____
Name:  Robert Hilliard

Title: Counsel to the PIWD Plaintiffs

THE LAW OFFICES OF THOMAS J.
HENRY

On behalf of the PIWD Plaintiffs

By: _____
Name:  Thomas J. Henry

Title: Counsel to the PIWD Plaintiffs

ANDREWS MYERS, P.C.

On behalf of the PIWD Plaintiffs

By: _____
Name:  Lisa M. Norman

Title: Counsel to the PIWD Plaintiffs

CONFIDENTIAL

GUC_0001584

**EXHIBIT A**

CONFIDENTIAL

**EXHIBIT B**

CONFIDENTIAL

# EXHIBIT C

CONFIDENTIAL

GUC_0001587

<u>Schedule 1</u>

<u>If to the GUC Trust</u>:

c/o Gibson Dunn & Crutcher, LLP
200 Park Avenue
New York, New York 10166
Attn: Matthew J. Williams, Esq.
      Keith R. Martorana, Esq.

<u>If to the PIWD Plaintiffs represented by Hilliard Muñoz Gonazlez, LLP and the Law Offices of
Thomas J. Henry</u>:

c/o Hilliard Muñoz Gonazlez, LLP                c/o The Law Offices of Thomas J. Henry
719 South Shoreline                             4715 Fredricksburg, Suite 507
Suite 500                                       San Antonio, TX 78229
Corpus Christi, TX 78401                        Attn: Thomas J. Henry, Esq.
Attn: Robert C. Hilliard, Esq.

c/o Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Attn: William P. Weintraub
      Gregory W. Fox

<u>If to the PIWD Plaintiffs represented by Andrews Myers, P.C.</u>:

c/o Andrews Myers, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Attn: Lisa M. Norman

<u>If to the Ignition Switch Plaintiffs and/or certain Non-Ignition Switch Plaintiffs (or Co-Lead
Counsel on their behalf)</u>:

c/o Hagens Berman Sobol Shapiro LLP             c/o Lieff Cabraser Heimann & Bernstein, LLP
1918 Eighth Avenue, Suite 3300                  275 Battery Street, 29th Floor
Seattle, WA 98101                               San Francisco, California 94111
Attn: Steve W. Berman, Esq.                     Attn: Elizabeth J. Cabraser, Esq.

c/o Brown Rudnick LLP                           c/o Stutzman, Bromberg, Esserman & Plifka,
Seven Times Square                              a Professional Corporation
New York, New York 10036                        2323 Bryan Street, Ste 2200
Attn: Edward S. Weisfelner                      Dallas, Texas 75201
      Howard S. Steel                           Attn: Sander L. Esserman

CONFIDENTIAL

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGG~~GP COMMENTS ~~8/8/17~~8/11/17

**HEARING DATE AND TIME: [ ], 2017 at [ ] (EST)**
**OBJECTION DEADLINE: [ ], 2017 at 4:00 p.m. (EST)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., | : | Case No.: 09-50026 (MG) |
| f/k/a General Motors Corp., et al., | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------X

**JOINT MOTION PURSUANT TO BANKRUPTCY
CODE SECTIONS 105, 363, 502(C) AND 1142 AND
BANKRUPTCY RULES 3020 AND 9019 TO APPROVE
THE SETTLEMENT AGREEMENT BY AND AMONG THE SIGNATORY
PLAINTIFFS AND THE GUC TRUST, AND TO ESTIMATE THE PLAINTIFFS'
AGGREGATE ALLOWED GENERAL UNSECURED CLAIMS AGAINST THE DEBTORS**

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~**BR** & ~~AG~~**GP** **COMMENTS** ~~8/8/17~~**8/11/17**

## TABLE OF CONTENTS

_____

GUC_0001590

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

**TABLE OF AUTHORITIES**

GUC_0001591

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDCBR~~ & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

By and through their undersigned counsel, the Ignition Switch Plaintiffs,[1] certain Non-Ignition Switch Plaintiffs,[2] certain Pre-Closing Accident Plaintiffs[3] (collectively, the "**Signatory Plaintiffs**"), and the GUC Trust[4] (together with the Signatory Plaintiffs, the "**Parties**") respectfully submit this *Joint Motion Pursuant to Bankruptcy Code Sections 105, 363, 502(c) and 1142 and Bankruptcy Rules 3020 and 9019 to Approve the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust, and to Estimate the Plaintiffs' Aggregate Allowed General Unsecured Claims Against the Debtors* (the "**Motion**").[5] In support of this Motion, the Parties respectfully state as follows:

## PRELIMINARY STATEMENT

1. Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs have sought leave to file late proposed class claims against the GUC Trust seeking relief for economic losses related to Old GM's alleged concealment of safety defects in ignition switches (including the Ignition Switch Defect and similarly defective ignition switches), side airbags, and power steering. Certain Ignition Switch Pre-Closing Accident Plaintiffs have likewise sought leave to

---

[1]   The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047 the "**Ignition Switch Defect**").

[2]   The term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540, 14V-118 and 14V-153.

[3]   The term "**Pre-Closing Accident Plaintiffs**" shall mean those plaintiffs asserting personal injury or wrongful death claims or persons who suffered a personal injury or wrongful death arising from an accident involving an Old GM vehicle that occurred prior to the closing of the Section 363 Sale. The Pre-Closing Accident Plaintiffs are comprised of a subset asserting claims or who suffered an injury or death involving an Old GM vehicle with an Ignition Switch Defect (the "**Ignition Switch Pre-Closing Accident Plaintiffs**"), and a subset asserting claims or who suffered an injury or death involving vehicles with other defects (the "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**"). Collectively, the Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Pre-Closing Accident Plaintiffs are the "**Plaintiffs**."

[4]   The term "**GUC Trust**" shall mean the Motors Liquidation Company GUC Trust.

[5]   Except where otherwise indicated, references to "ECF No. _" are to docket entries in the Bankruptcy Court proceedings: In re Motors Liquidation Co., Bankr. Case No. 09-50026 (MG).

1

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDCBR~~ & ~~AGGP~~ COMMENTS ~~8/3/17~~8/11/17

file late personal injury and wrongful death claims against the GUC Trust related to Old GM vehicles subject to the Recalls.

2.      These efforts implicate numerous complex, disputed issues, including, *inter alia*, whether Plaintiffs should be granted authority to file late proofs of claim (and whether such authority can be granted solely on due process grounds), whether Plaintiffs' asserted claims are equitably moot, whether additional grounds exist to object to Plaintiffs' asserted claims, and the allowable amount of said claims.

3.      Litigation related to these issues has been ongoing for several years, consuming large amounts of time, money and resources, and failing to resolve key disputes between the Parties. For example, in the April 2015 Decision, the Bankruptcy Court ruled that Old GM failed to provide Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs with constitutionally proper notice of the Bar Date.[6] While the Bankruptcy Court ruled that assets of the GUC Trust could not be tapped to pay any late claims that might be allowed under the doctrine of equitable mootness, the Second Circuit vacated this holding as an advisory opinion—leaving open the question of the applicability of equitable mootness.[7] In addition, there is an on-going dispute whether an additional showing under the Pioneer factors is required for Plaintiffs to obtain leave to file late claims. Continuation of protracted litigation on these issues will only serve to deplete remaining GUC Trust Assets and subject the Parties to uncertain results.

---

[6]      See In re Motors Liquidation Co., 529 B.R. 510, 573-74, 583 (Bankr. S.D.N.Y. 2015), aff'd in part, rev'd in part, vacated in part sub nom. Elliott v. General Motors LLC (In re Motors Liquidation Co.), 829 F.3d 135 (2d Cir. 2016) (the "**April 2015 Decision**").

[7]      See In re Motors Liquidation Co., 529 B.R. at 529; Elliott, 829 F.3d at 168-69.

2

GUC_0001593

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~ACGP~~ COMMENTS ~~8/8/17~~8/11/17

4.    The Settlement Agreement resulted from extensive, good faith negotiations between experienced counsel to reasonably resolve these issues in the interest of the estate.

5.    The Settlement Agreement provides for the GUC Trust to pay Plaintiffs $15 million (the "**Settlement Amount**"). In exchange for the Settlement Amount and the promise by the GUC Trust to ~~use its reasonable efforts to~~ support entry of the Claims Estimate Order as set forth below, and following extensive notice designed to reach every potentially affected Plaintiff and an opportunity to object and be heard, upon entry of the Settlement Order all Plaintiffs will be deemed to have waived and released any rights or claims against the GUC Trust, Wilmington Trust Company as trust administrator and trustee of the GUC Trust (the "**GUC Trust Administrator**"), the Motors Liquidation Company Avoidance Action Trust (the "**Avoidance Action Trust**") and holders of beneficial interest in the GUC Trust (the "**Unitholders**"), including a release of any rights to past or present GUC Trust Assets and to distributions by the Avoidance Action Trust. This waiver provides finality and certainty to the GUC Trust and Unitholders (regardless of whether or not the Claims Estimate Order is entered), protects against the risk of claw-back or recapture of prior distributions of GUC Trust Assets and eliminates delay in the wind-down process and distribution of assets.

6.    In addition to the payment of the Settlement Amount, the GUC Trust has agreed to support the entry of an order (the "**Claims Estimate Order**") estimating the amount of Plaintiffs' claims in an amount necessary to trigger New GM's obligation to issue the maximum amount of additional shares of New GM common stock (the "**Adjustment Shares**") under the terms of the Sale Agreement. Upon entry of the Claims Estimate Order, all Adjustment Shares will be placed in a fund for the exclusive benefit of Plaintiffs. The Signatory Plaintiffs will subsequently determine the allocation of the value of the Settlement Amount and the Adjustment

3

GUC_0001594

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

Shares between economic loss claims and personal injury/wrongful death claims and the eligibility and criteria for payment, subject to notice and an opportunity for Plaintiffs to object. Being defined as a Plaintiff does not assure any party that he, she, or it will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.

7.     Unitholders, defendants in the Term Loan Avoidance Action, and holders of Allowed General Unsecured Claims, other than Plaintiffs, waive any rights to the Settlement Amount and the Adjustment Shares.   In this way, the Settlement Agreement provides a streamlined process for allowing Plaintiffs' claims and providing a source of recovery from the Settlement Amount and the Adjustment Shares.  Notably, regardless of whether the Claims Estimate Order is ultimately entered, the waiver and releases set forth in the Settlement will be binding on all parties subject only to approval of the Settlement Order and payment of the Settlement Amount.

8.     The Settlement will massively reduce costs and resources, eliminate uncertain litigation outcomes, and prevent delay in distributions of remaining GUC Trust Assets, without disturbing recovery expectations of other creditors and Unitholders.  In light of the inherent risks and costs associated with litigation, the Settlement Agreement is fair and well within the range of reasonableness.

9.     Accordingly, the Court should approve the Settlement Agreement pursuant to Bankruptcy Rule 9019 as a fair and equitable resolution of the on-going litigation between the Parties.

10.    In addition, the Court should enter the Claims Estimate Order estimating the aggregate Allowed General Unsecured Claims, including Plaintiffs' claims, against the GUC

4

GUC_0001595

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

Trust in an amount equal to or exceeding $42 billion. The evidence and expert reports proffered by the Signatory Plaintiffs will demonstrate to the Court that the damages for Plaintiffs' claims could well exceed the amount required for this determination. Indeed, after reviewing those reports and considering the benefits provided by the Settlement as a whole, the GUC Trust – the sole entity charged with objecting to and resolving disputed claims in order to maximize recoveries to GUC Trust Beneficiaries pursuant to the Plan – fully supports entry of the Claims Estimate Order. The GUC Trust also believes that the Settlement is in the best interests of the estate and well within the lowest range of reasonableness as mandated by Rule 9019 of the Bankruptcy Code.

## JURISDICTION

11.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

12.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

13.    The statutory predicates for the relief sought in this Motion are Bankruptcy Code Sections 105(a), 363, 502(c) and 1142 and Bankruptcy Rules 3020 and 9019.

## BACKGROUND

**I.    Old GM's Bankruptcy And The Creation Of The GUC Trust.**

14.    On June 1, 2009, General Motors Corporation ("**Old GM**") and certain of its affiliates (collectively, "**Debtors**") filed for chapter 11 bankruptcy with this Court and entered into an agreement to sell substantially of its assets (the "**Sale Agreement**") to NGMCO, Inc. ("**New GM**") in exchange for, *inter alia*, New GM common stock and warrants. See In re Motors Liquidation Co., 529 B.R. at 535.

5

GUC_0001596

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

15.    The Sale Agreement was amended on July 5, 2009 to, *inter alia*, add a feature requiring New GM to provide additional New GM common stock in the event that the amount of allowed general unsecured claims against the Old GM estate exceeds a threshold amount. See AMSPA § 3.2(c).[8] Specifically, the AMSPA provides that if the Bankruptcy Court issues an order finding that the estimated aggregate allowed general unsecured claims against the Old GM estate exceeds $35 billion, then within five business days thereof New GM will issue Adjustment Shares to the GUC Trust. See id. If such order estimates the aggregate allowed general unsecured claims at or in excess of $42 billion, New GM must issue 30 million Adjustment Shares, the maximum amount of Adjustment Shares. See id.

16.    On July 5, 2009, the sale was approved by the Bankruptcy Court. See In re Motors Liquidation Co., 529 B.R. at 146-47.

17.    In September 2009, the Court established November 30, 2009 (the "**Bar Date**") as the deadline for filing proofs of claim against Old GM. See id. at 535.

18.    On March 29, 2011, the Court entered an order confirming the Plan, which, among other things, authorized the creation of the GUC Trust pursuant to the terms set forth in the GUC Trust Agreement. See id. at 536.

19.    Pursuant to the Plan and GUC Trust Agreement, the GUC Trust was granted exclusive authority to object to the allowance of general unsecured claims, seek estimation of the amount of allowed general unsecured claims, and seek Adjustment Shares from New GM. See Plan §§ 7.1(b), 7.3; GUC Trust Agreement § 5.1.

---

[8]    See *Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser, dated as of June 26, 2009* (the "**AMSPA**").

CONFIDENTIAL

GUC_0001597

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

20.    In addition, pursuant to the Plan and a side letter by and between the GUC Trust,
the Debtors, New GM, and FTI Consulting (as trust monitor of the GUC Trust) dated September
23, 2011 (the "**Side Letter**"), the GUC Trust is exclusively authorized to seek the issuance of
Adjustment Shares under the terms of the AMPSA for satisfaction of Allowed General
Unsecured Claims when the GUC Trust determines, in its sole and absolute discretion, that the
aggregate Allowed General Unsecured Claims are, in the GUC Trust's estimation, likely to
exceed $35 billion. See Side Letter; Plan, Background § E(i); GUC Trust Agreement § 2.3(d).

21.    In February 2012, the Court entered an order providing that any claims filed after
entry of the order would be deemed disallowed unless, *inter alia*, the claimant obtained leave of
the Court or written consent of the GUC Trust.[9]

22.    As of June 30, 2017, the total amount of Allowed General Unsecured Claims
against the Debtors' estate was $31,855,381,054, approximately $3.15 billion below the
threshold for triggering the issuance of Adjustment Shares under the AMSPA.[10]

II.    **The Recalls And Subsequent Proceedings
In The Bankruptcy Court And Second Circuit.**

23.    In February and March 2014, over four years after the Bar Date, New GM
publicly disclosed the existence of the Ignition Switch Defect and issued a recall, NHTSA Recall
Number 14V-047, impacting approximately 2.1 million vehicles.

---

[9]    See *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for
an Order Disallowing Certain Late Filed Claims*, dated February 8, 2012 [ECF No. 11394] (the "**Late Filed
Claims Order**").

[10]    See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(c) Report and Budget Variance Report as
of June 30, 2017*, dated July 21, 2017 [ECF No. 13994].

7

GUC_0001598

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

24.    After this first wave of recalls, New GM issued five additional recalls in June, July and September of 2014 concerning defective ignition switches affecting over 10 million vehicles, NHTSA Recall Numbers 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540.

25.    New GM issued a multitude of other recalls for safety defects throughout 2014. These included a recall issued in March pertaining to approximately 1.2 million vehicles with defective side airbags, NHTSA Recall Number 14V-118, and another recall issued in March pertaining to over 1.3 million vehicles with defective power steering, NHTSA Recall Number 14V-153.

26.    After the issuance of these recalls, owners and lessees of defective Old GM and New GM vehicles filed lawsuits against New GM, which New GM sought to enjoin by filing motions to enforce the Sale Order in the Bankruptcy Court.[11]  To resolve these motions, the Bankruptcy Court first identified four threshold issues (the "**2014 Threshold Issues**") to be determined.[12]  These issues included whether any of the claims in these actions were claims against Old GM and, if so, whether such claims should "nevertheless be disallowed/dismissed on grounds of equitable mootness . . . ." Id.

---

[11]   See Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, dated April 21, 2014 [ECF No. 12620] (the "**Ignition Switch Plaintiffs Motion to Enforce**"); Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits, dated Aug. 1, 2014 [ECF No. 12807] (the "**Ignition Switch Pre-Closing Accident Plaintiffs Motion to Enforce**"), Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions), dated Aug. 1, 2014 [ECF No. 12808] (the "**Non-Ignition Switch Plaintiffs Motion to Enforce**");

[12]   See Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14-01929, dated July 11, 2014 [ECF No. 12770].

CONFIDENTIAL                                    GUC_0001599

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

27.    In its April 2015 Decision on the 2014 Threshold Issues, the Bankruptcy Court held that the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs were known creditors who did not receive constitutionally adequate notice of the Sale or Bar Date.

28.    The Bankruptcy Court further held that while "late claims filed by the Plaintiffs might still be allowed, assets transferred to the GUC Trust under the Plan could not now be tapped to pay them" under the doctrine of equitable mootness. In re Motors Liquidation Co., 529 B.R. at 529; see also June 2015 Judgment ¶ 6.  On direct appeal, the Second Circuit vacated this equitable mootness ruling as an advisory opinion.  See Elliott, 829 F.3d at 168-69.  ~~The Second Circuit's reasoning also called into question the Bankruptcy Court's authority to make statements regarding due process as to the Bar Date.~~

29.    The Non-Ignition Switch Plaintiffs Motion to Enforce was deferred pending resolution of the Ignition Switch Plaintiffs' and Ignition Switch Pre-Closing Accident Plaintiffs' Motions to Enforce.  See In re Motors Liquidation Co., 529 B.R. at 523.  It has not yet been determined whether any Non-Ignition Switch Plaintiffs or Non-Ignition Switch Pre-Closing Accident Plaintiffs suffered a due process violation in connection with the Bar Date.

## III.    Developments In The Bankruptcy Court Following The Second Circuit Opinion.

30.    On remand from the Second Circuit's opinion vacating the equitable mootness ruling, the Bankruptcy Court issued an order identifying initial issues to be addressed (the "**2016 Threshold Issues**").  Relevant here is the issue of whether "the Ignition Switch Plaintiffs and/or Non-Ignition Switch Plaintiffs satisfy the requirements for authorization to file late proof(s) of

9

GUC_0001600

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

claim against the GUC Trust and/or are such claims equitably moot ('**Late Proof of Claim Issue**').[13]

31.    The procedures in the Order to Show Cause for resolution of the Late Proof of Claim Issue permitted Plaintiffs to file motions seeking authority to file late claims ("**Late Claims Motions**"). See Order to Show Cause at 5 ¶ 1.  No additional issues (such as class certification, discovery, or the merits of a late proof of claim) would be addressed in these motions. See id.  In addition, the procedures provided that briefing and adjudication of any Late Claims Motions filed by Non-Ignition Switch Plaintiffs would be stayed pending resolution of the other 2016 Threshold Issues. See id. at 5 ¶ 2.

32.    In accordance with the Order to Show Cause, on December 22, 2016, the Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, and certain Ignition Switch Pre-Closing Accident Plaintiffs filed Late Claims Motions.[14]  The motions attached proposed proofs of claim, including proposed class proofs of claim asserted on behalf of purported class representatives for Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs, and 175 individual proofs of claim on behalf of certain Ignition Switch Pre-Closing Accident Plaintiffs. See id.  Certain other Plaintiffs subsequently filed joinders to the Late Claims Motions pursuant to the terms of the Order to Show Cause.

33.    Thereafter, in connection with the Ignition Switch Plaintiffs' and Ignition Switch Pre-Closing Accident Plaintiffs' Late Claims Motions, the Parties participated in two status

---

[13]  *Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against General Motors LLC ("New GM") that Involve Vehicles Manufactured by General Motors Corporation ("Old GM")*, dated Dec. 13, 2016 [ECF No. 13802], at 2-3 (emphasis added).

[14]  See *Motion for an Order Granting Authority to File Late Class Proofs of Claim*, dated Dec. 22, 2016 [ECF No. 13806] (the "**Economic Loss Late Claim Motion**"); *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Dec. 22, 2016 [ECF No. 13807].

CONFIDENTIAL

GUC_0001601

conferences before the Bankruptcy Court, engaged in preliminary rounds of discovery, and filed briefs addressing two preliminary issues raised in the Late Claims Motion: (i) whether relief can be granted absent a showing of excusable neglect under the Pioneer factors; and (ii) the applicability of any purported agreements with the GUC Trust or other tolling arrangements to toll timeliness objections (the "**Initial Late Claims Motions Issues**").[15]    Subsequent to such briefing, certain Plaintiffs who had not previously appeared before the Bankruptcy Court filed motions seeking authority to file late proofs of claim.

## IV.    Plaintiffs' Claims Against Old GM.

34.    The Proposed Class Claims allege that Old GM knew about the Ignition Switch Defect, other defects in ignition switches, defects in side airbags, and defects in power steering for years prior to the Bar Date.[16]    The Proposed Class Claims further allege that Old GM concealed the existence of these defects, causing Plaintiffs to overpay for defective vehicles and bear the costs of repairs while Old GM reaped the benefit of selling defective vehicles at inflated prices and avoiding the costs of a recall.[17]

35.    Based on these allegations, the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs assert claims against the Old GM estate under the laws of each of the 50 states and the

---

[15]    See *Order Establishing, Inter Alia, Briefing Schedule for Certain issues Arising from Late Claim Motions Filed by Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Certain Ignition Switch Pre-Closing Accident Plaintiffs*, dated Mar. 2, 2017 [ECF No. 13869]; *Opening Brief by General Motors LLC with Respect to Initial Late Claim Motions Issues*, dated Mar. 6, 2017 [ECF No. 13871]; *The Ignition Switch Plaintiffs' Brief on the Initial Late Claim Motions Issues*, dated Mar. 6, 2017 [ECF No. 13872]; *Opening Brief of GUC Trust Administrator and Participating Unitholders on the Applicability of Pioneer and Tolling to Plaintiffs' Motions to File Late Claims*, dated Mar. 6, 2017 [ECF No. 13873]; *Brief on Applicability of Pioneer and Tolling Issues in Connection with Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Mar. 6, 2017 [ECF No. 13874].

[16]    See Exhibit A to the Economic Loss Late Claim Motion (the "**Proposed Ignition Switch Class Claim**"), ¶¶ 9-258; Exhibit B to the Economic Loss Late Claim Motion (the "**Proposed Non-Ignition Switch Class Claim**"), ¶¶ 9-146.

[17]    See, e.g., Proposed Ignition Switch Class Claim ¶ 332; Proposed Non-Ignition Switch Class Claim ¶ 249.

11

GUC_0001602

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGG~~P COMMENTS ~~8/8/17~~8/11/17

District of Columbia for: (i) fraudulent concealment; (ii) unjust enrichment; (iii) consumer protection claims; (iv) breach of the implied warranty of merchantability; and (v) negligence.[18]

36.      In turn, the Ignition Switch Pre-Closing Accident Plaintiffs assert personal injury and wrongful death claims arising from accidents ~~allegedly~~they assert were caused by the Ignition Switch Defect.[19]

37.      For over three years, New GM has consistently taken the position that any such claims are properly asserted against the GUC Trust and not against New GM.[20]

38.      Subsequent to filing the Late Claims Motions, the Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs and certain Pre-Closing Accident Plaintiffs provided the GUC Trust with materials and expert reports describing in detail the alleged viability of the asserted claims, the alleged violation of due process rights in connection with the Bar Date and the alleged amount of damages (the "**Proffered Evidence**").[21]

39.      The Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs provided a proffer of evidence laying out the factual background for their claims and the amount of damages alleged.  In addition, they provided a report by Stephen Boedeker, an expert on surveys and statistical sampling, analyzing the amount of alleged damages for the Ignition Switch

---

[18]   See Proposed Ignition Switch Class Claim ¶¶ 316-418; Proposed Non-Ignition Switch Class Claim ¶¶ 233-337.

[19]   See, e.g., *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Dec. 22, 2016 [ECF No. 13807].

[20]   The record is replete with attempts by New GM to saddle the Old GM estate with these potentially massive claims.  "To the extent Plaintiffs can prove that they are entitled to any relief, the appropriate remedy is to permit them to seek allowance of an unsecured claim against the Old GM bankruptcy estate."  Dkt. 12981 (New GM's 2014 Threshold Issues Br.) at 53; "To the extent they had any claim, it was against Old GM and they retained that claim after the 363 Sale."  Id. at 36; "Every one of their claims, the economic loss plaintiffs' claims, is a claim that's assertable against Old GM as it relates to an Old GM vehicle."  Hr'g Tr. Feb. 17, 2015 at 59:17-19 (New GM counsel Arthur Steinberg).

[21]   The Proffered Evidence is attached hereto as **Exhibit B**, **Exhibit C**, and **Exhibit D**.

12

Plaintiffs' and certain Non-Ignition Switch Plaintiffs' claims based on a conjoint analysis conducted by Mr. Boedeker and Berkeley Research Group.

40.    The Signatory Plaintiffs will show at a hearing on the Motion that conjoint analysis is a set of econometric and statistical techniques developed to study consumer preferences and is widely used as a market research tool.  In a conjoint analysis, study participants review a set of products with different attributes (such as a vehicle shown in different colors) and choose which product they would prefer to purchase.  The collected data can be used to determine market preferences and the value consumers place on particular attributes of a product.  Here, the alleged amount of damages for economic loss claims was determined by using a conjoint analysis to evaluate the difference in value that consumers placed on an Old GM vehicle without a defect as compared to an identical vehicle with a defect.

41.    Certain Pre-Closing Accident Plaintiffs provided materials describing the personal injury and wrongful death claims of certain plaintiffs and demonstrating the alleged value of these claims based on exemplar verdict amounts.  The valuation of damages was assessed and approved by W. Mark Lanier, an experienced trial attorney recognized as a leader in the field.  In addition, these Pre-Closing Accident Plaintiffs also provided an expert report of Dr. Keith Leffler in which he valued these plaintiffs' claims based on a conjoint analysis and data regarding market preferences and the value consumers place on the risk of being injured or killed in a vehicle.

42.    The valuation of these plaintiffs' asserted damages in the Proffered Evidence is well in excess of the amount necessary to trigger New GM's obligation to issue the maximum amount of Adjustment Shares under the AMSPA.  ~~Although~~ The GUC Trust ~~does not agree with~~

13

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

~~the allowability or amount of the damages asserted in the Proffered Evidence[22] and believes it~~ ~~has substantial defenses with respect to the merits of plaintiffs' asserted claims and their asserted~~ ~~damages,~~recognizes that it may, should it choose, contest the level of damages.  There is no guarantee that the GUC Trust would prevail and reduce or limit the damages.[22]  After reviewing the Proffered Evidence and considering the benefits of the Settlement as a whole to the Unitholders to whom it owes a fiduciary duty, the GUC Trust recognizes that there is a risk that, if such claims are allowed, the aggregate general unsecured claims (including already allowed claims) could well exceed $42 billion, and thus has agreed to fully support entry of the Claims Estimate Order as part of the Settlement that the GUC Trust believes is within the range of reasonableness.

## V.    The Settlement Agreement.

---

[22]  ~~For example, the Proffered Evidence provided by the Pre-Closing Accident Plaintiffs contains an estimate of punitive damages, which the GUC Trust believes would be disallowed in its entirety in a claims objection proceeding.  In addition, the Proffered Evidence does not identify which, if any, economic loss Plaintiffs who purchased their vehicles pre-Sale sold those vehicles prior to New GM's 2014 recalls.  There is an ongoing dispute about whether any economic loss Plaintiffs who sold their vehicles before those recalls suffered any cognizable economic loss.  Nonetheless, even discounting the damages calculations in the Proffered Evidence to account for the absence of punitive damages and economic loss Plaintiffs who sold their vehicles before the recalls, Plaintiffs' asserted damages are well in excess of the amount necessary to trigger New GM's obligation to issue the maximum amount of Adjustment Shares under the AMSPA.~~

[22]  For example, the Proffered Evidence provided by the Pre-Closing Accident Plaintiffs contains an estimate of punitive damages, which the GUC Trust believes would be disallowed in its entirety in a claims objection proceeding.  In addition, the Proffered Evidence does not identify which, if any, economic loss Plaintiffs who purchased their vehicles pre-Sale sold those vehicles prior to New GM's 2014 recalls.  There is an ongoing dispute about whether any economic loss Plaintiffs who sold their vehicles before those recalls suffered any cognizable economic loss.  See Memorandum Opinion and Order Regarding Plaintiffs' Motion for Reconsideration and/or Clarification of the Court's Order Dismissing the Claims of "Pre-Recall Plaintiffs", In re Gen. Motors LLC Ignition Switch Litig., Case Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF) (S.D.N.Y. Aug. 9, 2017).  Nonetheless, even discounting the damages calculations in the Proffered Evidence to account for the absence of punitive damages and economic loss Plaintiffs who sold their vehicles before the recalls, Plaintiffs' asserted damages are well in excess of the amount necessary to trigger New GM's obligation to issue the maximum amount of Adjustment Shares under the AMSPA.

CONFIDENTIAL
GUC_0001605

43.     Following the filing of the Late Claims Motions, the Parties engaged in extensive negotiations to resolve the numerous complex issues raised by Plaintiffs' claims against the Old GM estate and the assets held by the GUC Trust.[23]

44.     After good faith, arm's-length negotiations, the Parties entered into the Settlement Agreement resolving the Late Claims Motions (including the Initial Late Claim Motions Issues), the Late Proof of Claim Issue, the allowance of Plaintiffs' claims, and Plaintiffs' rights to GUC Trust Assets.  The key terms of the Settlement Agreement are as follows:[24]

a.     The GUC Trust agrees to pay the reasonable costs and expense for Court-approved notice of the Motion in an amount not to exceed $~~[6]~~ million.   The Signatory Plaintiffs agree to pay any amounts in excess of $~~[6]~~ million.

b.     The Settlement Agreement becomes effective on the date the order approving the Settlement pursuant to Bankruptcy Rule 9019 becomes a Final Order (the "**Settlement Effective Date**"), provided, however, that from and after the date the Settlement Order is entered by the Bankruptcy Court, the GUC Trust may waive the requirement that the Settlement Order be a Final Order.

c.     Within five (5) business days of the Settlement Effective Date, the GUC Trust will irrevocably pay $15,000,000 (the "**Settlement Amount**") into a trust, fund or other vehicle (the "**Settlement Fund**") for the exclusive benefit of Plaintiffs.  All Unitholders, all defendants in the Term Loan Avoidance Action, and all holders of Allowed General Unsecured Claims, other than the Plaintiffs, will be deemed to irrevocably waive and release any and all rights to the Settlement Amount (the "**GUC Waiver Provision**").

d.     Contemporaneously with payment of the Settlement Amount, the Plaintiffs will be deemed to irrevocably waive and release all claims against the GUC Trust, including a release of any rights to prior distributions of or current GUC Trust Assets and any rights to distributions by the Motors Liquidation Company Avoidance Action Trust (the "**Waiver Provision**").  For the avoidance of doubt,

---

[23]   See *Joint Declaration of Steve W. Berman and Elizabeth J. Cabraser in Joint Motion Pursuant to Bankruptcy Code Sections 105, 363, 502(c) and 1142 and Bankruptcy Rules 3020 and 9019 to Approve the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust, and to Estimate the Plaintiffs' Aggregate Allowed General Unsecured Claims Against the Debtors* (the "**Co-Lead Counsel Decl.**") ¶ 5; [Hilliard Decl.]; [Norman Decl.]; [GUC Trust Decl.].

[24]   This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent that there are any inconsistencies between the description of the Settlement Agreement contained in the Motion and the terms and provisions of the Settlement Agreement, the Settlement Agreement shall control.

15

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGG~~GP COMMENTS ~~8/8/17~~8/11/17

the Settlement Agreement and Settlement Order define "Plaintiffs" to include all persons who now have, or in the future could have, claims against the Old GM estate related to any of the recalls, such that the Waiver Provision shall be applicable to all such parties whether or not they have asserted any claims against the Old GM estate or the GUC Trust to date. However, being defined as a Plaintiff does not assure any party that he, she, or it will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.

e.    In light of the benefits of the Settlement and after the GUC Trust's review of the Proffered Evidence, the GUC Trust agrees to seek a Claims Estimate Order: (i) finding that the allowable amount of Plaintiffs' claims against Old GM and/or the GUC Trust, when combined with all of the other Allowed General Unsecured Claims against the Old GM bankruptcy estate, equals or exceeds $42,000,000,000, thus triggering the maximum amount of Adjustment Shares; and (ii) directing that the Adjustment Shares, or the value of the Adjustment Shares, be promptly delivered to the Settlement Fund. Certain Pre-Closing Accident Plaintiffs consent to estimation of their personal injury and wrongful death claims by this Court solely for the purposes of determining the aggregate Allowed General Unsecured Claims for a Claims Estimate Order.

f.    Contemporaneously with payment of the Settlement Amount, all Unitholders, all defendants in the Term Loan Avoidance Action, and all holders of Allowed General Unsecured Claims, other than the Plaintiffs, will be deemed to irrevocably waive and release any and all rights to the Adjustment Shares, provided that such waiver and release shall not become operative unless and until the Bankruptcy Court enters the Claims Estimate Order (the "**Adjustment Shares Waiver Provision**").

g.    Subject to notice and an opportunity for Plaintiffs to object, the Signatory Plaintiffs will determine the overall allocation of the value of the Settlement Fund between economic loss claims and personal injury/wrongful death claims, and the eligibility and criteria for payment. Notice of the proposed allocation and proposed eligibility and criteria for payment will be posted on a settlement website, along with information about the hearing date and how and when to assert any objections.

h.    Nothing in the Settlement Agreement is intended to waive any claims against New GM or to be an election of remedies against New GM; nor does the Settlement Agreement or any payments made in connection therewith represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full from every available source; provided, however, that in no event shall any Plaintiff be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares. Except as mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any claims that

16

GUC_0001607

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

any Plaintiff may have against New GM or constitute an election of remedies by any Plaintiff, and neither the Settlement Amount nor the Adjustment Shares (nor any distribution thereof to any Plaintiff) shall represent full and final satisfaction of any claim that any Plaintiff may have against New GM, all of which are expressly reserved. The Bankruptcy Court's estimate of the aggregate Allowed General Unsecured Claims in the Claims Estimate Order shall not operate as a cap on any of the claims of any of the Plaintiffs against New GM.

## RELIEF REQUESTED

45.    By this Motion, the Parties respectfully request that this Court enter orders approving the Settlement Agreement and claims estimation substantially in the forms attached to this Motion as **Exhibit E** and **Exhibit F**.

## BASIS FOR RELIEF REQUESTED

**I.    The Court Should Approve The Settlement
Agreement Pursuant To Bankruptcy Rule 9019.**

46.    Bankruptcy Rule 9019(a) provides, in part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This Court also has authority to approve a settlement under Bankruptcy Code Section 105(a), which empowers it to issue any order that is "necessary or appropriate." 11 U.S.C. § 105(a).

47.    The authority to approve a compromise or settlement is within the sound discretion of the Court. See Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972). The Court should exercise its discretion "in light of the general public policy favoring settlements." In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (citation omitted); see also Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact, encouraged . . . ." (citation omitted)).

17

48.    When exercising its discretion, the Court must determine whether the settlement is fair and equitable, reasonable, and in the best interests of the estate.  See, e.g., Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994); In re Purofied Down Prods. Corp., 150 B.R. 519, 523 (S.D.N.Y. 1993).  Where "the integrity of the negotiation process is preserved, a strong initial presumption of fairness attaches to the proposed settlement . . . ."  In re Hibbard, 217 B.R. at 46.

49.    The Court need not decide the numerous issues of law and fact raised in the underlying dispute, "but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'"  In re Adelphia Commn'cs Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (quoting In re W.T. Grant, Co., 699 F.2d 599, 608 (2d Cir. 1983)); see also Purofied, 150 B.R. at 522 ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying [dispute] . . . .").

50.    The Court evaluates whether the Settlement Agreement is fair and equitable based on "the probabilities of ultimate success should the claim be litigated," and "an educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

51.    Courts in this jurisdiction consider the following Iridium factors in determining whether approval of a settlement is warranted:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in

18

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478

F.3d 452, 462 (2d Cir. 2007) (citations omitted).

52.     The Settlement Agreement falls within the range of reasonableness and satisfies

the Iridium factors as set forth below.  Thus, the Settlement Agreement should be approved

under Bankruptcy Rule 9019.

### A.     The Settlement's Benefits Outweigh The Likelihood Of Success In Protracted Litigation Over Numerous, Complex Issues.

53.     The first two Iridium factors—(1) the balance between the litigation's likelihood

of success and the settlement's benefits; and (2) the likelihood of complex and protracted

litigation—are easily met.  As detailed below, continued litigation over Plaintiffs' claims raises

significant, complex issues, has an uncertain outcome, and would be costly and time consuming.

The benefits of near-term, certain resolution are clear.

### 1.     Litigation Over Plaintiffs' Claims Raises Numerous Complex Issues.

54.     One complex, contentious issue raised by the litigation over Plaintiffs' claims is

whether the Court should grant Plaintiffs authority to file late claims as permitted by the *Order*

*Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy*

*Code for an Order Disallowing Certain Late Filed Claims* [ECF No. 11394] (the "**Late Filed**

**Claims Order**").  See Late Filed Claims Order at 1-2.

19

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

55.     As an initial matter, there is a dispute over the standard for obtaining leave to file late claims. Certain Plaintiffs have argued that creditors may assert late claims based solely on a showing that they have suffered a due process violation related to the bar date.[25] The GUC Trust has taken the position that a demonstration of excusable neglect under the Pioneer factors is required regardless of a due process violation.[26]

56.     Then, there is a dispute whether leave should be granted under the appropriate standard. Most notably, in the April 2015 Decision, the Bankruptcy Court stated that the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs suffered a due process violation when they failed to receive constitutionally adequate notice of the Bar Date, and that leave to file late claims was the "obvious" remedy for this violation. See In re Motors Liquidation Co., 529 B.R. at 573-74, 583. The Plaintiffs assert that this statement is a binding ruling that is no longer subject to appeal, the GUC Trust asserts it is merely nonbinding *dicta* that the Second Circuit implicitly found was an advisory opinion.

57.     The Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs also assert that they can meet the Pioneer factors for demonstrating excusable neglect. Of the four Pioneer factors, the one given the most weight is the reason for the delay in filing claims, including whether the delay was in the reasonable control of the movant. See In re Residential Capital, LLC, Case No. 12-12020 (MG), 2015 WL 515387, at *5 (Bankr. S.D.N.Y. Feb. 6, 2015). The Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs will

---

[25]   See, e.g., The Ignition Switch Plaintiffs' Brief on the Initial Late Claim Motions Issues, dated Mar. 6, 2017 [ECF No. 13872]; Brief on Applicability of Pioneer and Tolling Issues in Connection with Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths, dated Mar. 6, 2017 [ECF No. 13874].

[26]   See Opening Brief of GUC Trust Administrator and Participating Unitholders on the Applicability of Pioneer and Tolling to Plaintiffs' Motions to File Late Claims, dated Mar. 6, 2017 [ECF No. 13873].

20

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDCBR~~ & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

argue that a debtor's failure to provide actual notice to a known creditor is evidence that any delay was not in control of the creditor. The GUC Trust, in turn, will argue that the delay here is attributable to Plaintiffs' voluntary strategic decision to pursue New GM and not the GUC Trust.

58. Although Non-Ignition Switch Plaintiffs and Non-Ignition Switch Pre-Closing Accident Plaintiffs have not yet demonstrated a due process violation, many of these plaintiffs allege that their claims are substantially similar to the Ignition Switch Defect—defects that involve the same condition (low torque switches that move out of the "run" position) and have the same effects (loss of power to steering, brakes, and airbags). The Plaintiffs will argue that these plaintiffs can demonstrate a violation of their due process rights in connection with the Bar Date.

59. Further, the Plaintiffs will argue that excusable neglect can exist in the absence of a due process violation. For example, Plaintiffs have asserted that excusable neglect can be found where the debtors failed to comply with bankruptcy procedures in providing notice of a bar date and where a claimant, through no fault of its own, was unaware of its claim prior to the bar date. See In re Arts de Provinces de France, Inc., 153 B.R. 144, 147 (Bankr. S.D.N.Y. 1993); In re PT-1 Commc'ns, Inc., 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003). This issue, too, would have to be litigated.

60. Another complex issue is whether the doctrine of equitable mootness is applicable to bar Plaintiffs' claims. See In re Chateaugay Corp., 10 F.3d 944, 952-53 (2d Cir. 1993).

61. In the April 2015 Decision, the Bankruptcy Court applied the five Chateaugay factors[27] and determined that if the Ignition Switch Plaintiffs' or Ignition Switch Pre-Closing

---

[27] These five factors are: (i) the court can still order some effective relief; (ii) such relief will not affect "the re-emergence of the debtor as a revitalized corporate entity"; (iii) such relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and

21

GUC_0001612

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

Accident Plaintiffs' late claims were allowed, GUC Trust Assets could not be tapped to pay them under the doctrine of equitable mootness. See In re Motors Liquidation Co., 529 B.R. at 598. The Bankruptcy Court found, *inter alia*, that any relief would "knock the props out" from the transactions under which Unitholders acquired their units. See id. at 587-88, 592.

62.    On appeal, the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs argued that the Bankruptcy Court erred because, *inter alia*, effective relief could be fashioned without disturbing any transactions or having an adverse impact on Unitholders by providing Plaintiffs with exclusive access to any Adjustment Shares that may be issued under the AMSPA.[28]  Plaintiffs will argue that where any relief is available, even partial relief, equitable mootness should not be applied. See, e.g., Chateaugay, 10 F.3d at 954. In addition, the Ignition Switch Plaintiffs argued that equitable mootness was only applicable in the context of bankruptcy appeals.[29]

63.    The Second Circuit vacated the Bankruptcy Court's equitable mootness ruling as advisory, neither affirming nor reversing that decision. The Second Circuit pointed out that all of the Circuit's equitable mootness cases to-date had involved an appellate court applying the doctrine in the first instance. See Elliott, 829 F.3d at 167 n.30. However, the Second Circuit

---

"create an unmanageable, uncontrollable situation for the Bankruptcy Court"; (iv) the "parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings;" and (v) the appellant "pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." In re Chateaugay Corp., 10 F.3d at 952-53.

[28]   See Br. for Appellant Ignition Switch Plaintiffs, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Nov. 16, 2015) (ECF No. 235), 49-52; Br. for Ignition Switch Pre-Closing Accident Plaintiffs, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Nov. 16, 2015) (ECF No. 183), 4, 52 n.18 (incorporating the arguments on the application of equitable mootness in the Ignition Switch Plaintiffs' brief).

[29]   See Response and Reply Br. for Appellant-Cross-Appellee Ignition Switch Plaintiffs, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Feb. 1, 2016) (ECF No. 315), at 40-43.

22

GUC_0001613

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

specified that it was not resolving whether it is appropriate for a bankruptcy court, as opposed to an appellate court, to apply the equitable mootness doctrine. See id.

64.    Additional complex issues would certainly arise from continued litigation of Plaintiffs' claims. The Bankruptcy Court would need to decide whether class certification for the economic loss Plaintiffs' proposed class proofs of claims would be appropriate. In addition, the GUC Trust could raise objections to allowance of these class claims, as well as to the separate proofs of claim filed by Ignition Switch Pre-Closing Accident Plaintiffs. This could lead to the need to resolve issues under the varied laws of the fifty states and the District of Columbia.

65.    Plaintiffs have also asserted that litigation over similar claims asserted by economic loss plaintiffs against New GM in the MDL Court demonstrates the viability of many of Plaintiffs' claims. For example, in the MDL Court, consumer fraud, common law fraud, and implied warranty claims considered under the laws of sixteen states largely survived partial motions to dismiss.[30] In addition, the MDL Court held that plaintiffs could assert injuries under the "benefit-of-the-bargain defect theory," *i.e.*, amounts plaintiffs overpaid at the time of sale for a defective vehicle, and injuries for lost time, to the extent such damages are available under state law. See FACC Opinion at 13-14, 18; TACC Opinion at 24. Many jurisdictions recognize damages under the benefit-of-the-bargain theory. See TACC Opinion at 24.

---

[30]    See Opinion and Order Regarding New GM's Partial Motion to Dismiss the Forth Amended Consolidated Complaint, In re General Motors LLC Ignition Switch Litig., Case No. 14-MD-2543 (JMF) (S.D.N.Y. June 30, 2017), 23 (the "**FACC Opinion**"); Opinion and Order Regarding New GM's Partial Motion to Dismiss the Third Amended Consolidated Complaint, In re General Motors LLC Ignition Switch Litig., Case No. 14-MD-2543 (JMF) (S.D.N.Y. July 15, 2016), 5-6 (the "**TACC Opinion**").

23

                                                                                          GUC_0001614

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

66.    In sum, while the GUC Trust believes that it has meritorious defenses to the claims of all Plaintiffs, the GUC Trust's likelihood of success in the resolution of the numerous, complex issues raised by the litigation over Plaintiffs' claims is uncertain.

### 2.    The Terms Of The Settlement Agreement Weigh The Risks Of Continued Litigation Against The Benefits Of A Consensual Resolution Of Plaintiffs' Claims.

67.    Litigation of these complex issues has been ongoing for years, consuming large sums of money and countless hours of labor.  In the absence of settlement, there is a high likelihood of even more expensive, protracted and contentious litigation that will consume significant estate funds and expose the estate to significant risks and uncertainty.  In addition, resolution of these issues may require the added time and expense of discovery.  For example, the Pioneer analysis is fact intensive and, to date, only limited discovery, restricted to a proposed class representative of the Ignition Switch Plaintiffs and certain Ignition Switch Pre-Closing Accident Plaintiffs, has occurred on this issue.

68.    By comparison, settling the litigation provides the Parties with greater certainty and eliminates the significant risk, cost and delay of litigation.  In addition, the Settlement Agreement provides several benefits beyond avoiding continued litigation.

69.    First, the Parties' determination to seek a Claims Estimate Order allowing and estimating Plaintiffs' claims in an amount, when combined with all of the other Allowed General Unsecured Claims against the Old GM estate, that equals or exceeds $42 billion, provides an efficient and reasonable resolution of the allowable amount of Plaintiffs' claims.   The reasonableness of this amount is supported by the Proffered Evidence.

70.    Under the Settlement, any Adjustment Shares issued by New GM under this Claims Estimate Order will be for the exclusive benefit of Plaintiffs.  Based on the amount of

24

allowed and disputed unsecured claims against Old GM, New GM's obligation to issue these shares would not be triggered absent allowance of Plaintiffs' claims.[31]  In other words, absent the Plaintiffs' claims, the Unitholders have no expectation to receive Adjustment Shares.  Thus, this provision potentially paves the way for Plaintiffs to obtain a recovery on their claims without disturbing other creditors' past or future recoveries.

71.    Second, the Settlement removes a major impediment to winding down the Old GM estate.  The resolution of Plaintiffs' claims and waiver of certain rights and claims eliminates the likelihood of complex and protracted litigation, prevents delay in distributing remaining GUC Trust Assets and protects Unitholders from the risk of claw-back or recapture of prior distributions.

72.    The terms of the Settlement Agreement reflect a reasonable assessment of the substantial time and expense of litigating Plaintiffs' claims, balanced against the benefits of more near term, efficient and certain resolution of the allowable amount of Plaintiffs' claims and sources of recovery.  The benefits of the Settlement in the near term outweigh the likelihood of long-term success in protracted litigation of complex issues.

## B.    The Settlement Agreement Is Beneficial To Creditors And Supported By Interested Parties.

73.    With respect to the third and fourth Iridium factors—the paramount interests of the creditors and whether other interested parties support the settlement—prolonging the litigation will increase costs and decrease the amount of GUC Trust Assets available to satisfy creditors.  Approving the Settlement Agreement, on the other hand, avoids the significant expense and uncertainty associated with continued litigation, and maximizes and expedites

---

[31]    See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(c) Report and Budget Variance Report as of June 30, 2017*, dated July 21, 2017 [ECF No. 13994].

25

GUC_0001616

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
GDCBR & AGGP COMMENTS 8/8/178/11/17

distributions to current GUC Trust beneficiaries. The release of Plaintiffs' rights and claims with respect to the GUC Trust's prior distributions and current GUC Trust Assets allows the GUC Trust to complete the orderly wind-down of the Old GM estate.

74.    Moreover, providing Plaintiffs with the exclusive right to proceed against a settlement fund containing the Settlement Amount and the Adjustment Shares potentially opens an avenue for Plaintiffs to recover on their claims against the GUC Trust without disturbing recovery expectations of other creditors or Unitholders. Plaintiffs' rights concerning the Adjustment Shares are protected because notice of any agreement by the Signatory Plaintiffs on proposed criteria to assert a claim against the Settlement Fund and a proposed methodology of allocation of the Settlement Fund between economic loss claims and personal injury/wrongful death claims will be provided to Plaintiffs, who will be provided with an opportunity to object.

75.    Not surprisingly, the key interested parties—the GUC Trust (who has sole authority under the Late Filed Claims Order to consent to late filed claims and is the only party under the Plan provided with standing to object to the allowance of claims), Signatory Plaintiffs and the Participating Unitholders—all support the Settlement Agreement. Accordingly, for all of the reasons set forth above, the Settlement easily meets the Iridium Factors and allows the GUC Trust to implement the express purpose of the GUC Trust Agreement. GUC Trust Agreement § 2.2 (stating that the "sole purpose of the GUC Trust is to implement the Plan on behalf of, and for the benefit of the GUC Trust Beneficiaries"); GUC Trust Agreement § 4.2 (stating that "in no event shall the GUC Trust Administrator unduly prolong the duration of the GUC Trust, and the GUC Trust Administrator shall, in the exercise of its reasonable business judgment and in the interests of all GUC Trust Beneficiaries, at all times endeavor to terminate the GUC Trust as

26

GUC_0001617

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDCBR~~ & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

soon as practicable in accordance with the purposes and provisions of this Trust Agreement and

the Plan.").

C.     **The Settlement Agreement Satisfies The Remaining *Iridium* Factors.**

76.     With respect to the sixth factor, "the nature and breadth of releases to be obtained

by officers and directors," in exchange for the payment of $15 million, the Settlement Agreement

releases any and all rights, claims and causes of action that any Plaintiff may assert against the

GUC Trust, the GUC Trust Administrator, the GUC Trust Assets, the Avoidance Action Trust

and Unitholders.

77.     With respect to the fifth and seventh Iridium factors, competent and experienced

counsel to the Parties who have been litigating these issues for years actively engaged in arms'

length, good faith negotiations to formulate the Settlement Agreement.[32]   The Parties, having

considered the uncertainties, delay and cost that would be incurred by further litigation, submit

that the Settlement Agreement is fair, reasonable and appropriate, and in the best interests of the

Parties.

78.     Based on the foregoing, the Settlement Agreement is in the best interests of the

estate and its creditors and falls well within the range of reasonableness.   Therefore, entry into

and approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019 is warranted and

the Settlement Agreement should be approved.[33]

II.     **The Court Should Approve The Parties' Estimation
Of The Aggregate Allowed General Unsecured Claims,
Including Plaintiffs' Claims, As Equal To Or Exceeding $42 Billion.**

---

[32]   See Co-Lead Counsel Decl. ¶ 5; [Hilliard Decl.]; [Norman Decl.]; [GUC Trust Decl.].

[33]   In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement does not
become binding and enforceable for any reason, the Parties reserve all their rights and nothing herein shall be
deemed or construed as an admission of any fact, liability, stipulation, or waiver, but rather as a statement made
in furtherance of settlement discussions.

27

GUC_0001618

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
GDCBR & AGGP COMMENTS 8/8/178/11/17

79.    As part of the Settlement, the Parties agree to support entry of a Claims Estimate

Order providing that the aggregate Allowed General Unsecured Claims, including Plaintiffs'

claims, against the Old GM estate equals or exceeds $42 billion.  Pursuant to the terms of the

AMSPA, the GUC Trust Agreement and the Side Letter, as well as Bankruptcy Rule 9019 and

Bankruptcy Code Sections 105(a) and 502(c), the Parties request that the Court approve the

Parties' estimation and enter a Claims Estimate Order estimating the aggregate Allowed General

Unsecured Claims at an amount equal to or exceeding $42 billion.

80.    A provision in the Sale Agreement requires New GM to issue Adjustment Shares

to the GUC Trust if and when the aggregate amount of Allowed General Unsecured Claims, as

estimated by the Bankruptcy Court, exceeds $35 billion.  See AMSPA § 3.2(c).  If the estimated

amount equals or exceeds $42 billion, then New GM must issue 30 million shares, the maximum

amount of Adjustment Shares.  See id.

81.    Under the AMSPA, GUC Trust Agreement, and Side Letter, the GUC Trust (and

only the GUC Trust) "may, at any time, seek an Order of the Bankruptcy Court . . . estimating

the aggregate allowed general unsecured claims" against the Old GM estate.  See AMSPA §

3.2(c); GUC Trust Agreement § 2.3(d); Side Letter.[34]

82.    Bankruptcy Code Section 502(c) authorizes the Court to estimate "any contingent

or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay

the administration of the case."   11 U.S.C. § 502(c).   Estimation "provides a means for a

bankruptcy court to achieve reorganization, and/or distributions of claims, without awaiting the

results of [potentially protracted] legal proceedings."   In re Adelphia Bus. Solutions, Inc., 341

---

[34]    In addition, the GUC Trust has the sole, exclusive authority to request that the Bankruptcy Court estimate any
contingent, unliquidated disputed claims pursuant to Bankruptcy Code Section 502(c).  See Plan § 7.3; GUC
Trust Agreement § 5.1(e).

28

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (citing In re Continental Airlines, Inc., 981 F.2d 1450,

1461 (5th Cir. 1993)); see In re Lionel LLC, No. 04-17324, 2007 WL 2261539, at *2 (Bankr.

S.D.N.Y. Aug. 3, 2007) (noting that, without estimation, lengthy proceedings result in "delayed

distributions, which in turn, greatly devalue the claim of all creditors as they cannot use the

assets until they receive them" (citation omitted)).

83.    In fact, "the Code requires estimation of all contingent or unliquidated claims

which unduly delay the administration of the case." In re Nat'l Gypsum Co., 139 B.R. 397, 405

(N.D. Tex. 1992) (internal quotes omitted).  Even absent a finding of undue delay, it is within a

court's sound discretion to estimate a claim.  See In re RNI Wind Down Corp., 369 B.R. 174,

191 (Bankr. D. Del. 2007).

84.    Here, it is within the sound discretion of the Court to estimate the aggregate

Allowed General Unsecured Claims, including Plaintiffs' claims, as contemplated by the

AMSPA, Plan, GUC Trust Agreement and the Settlement Agreement.[35]

85.    Estimation requires only "sufficient evidence on which to base a reasonable

estimate of the claim." Bittner v. Borne Chem. Co., 691 F.2d 134, 135 (3d Cir. 1982); see also

In re Windsor Plumbing Supply Co., 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994) (advocating use

of probabilities in estimation of claims).   The Bankruptcy Court has discretion to select the

valuation model that best suits the circumstances of the case at hand when estimating the value

of claims.  See In re Adelphia Commc'ns Corp., 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007);

Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co.), 160 B.R. 40, 41 (S.D.N.Y.

1993).

---

[35]    Counsel for certain Pre-Closing Accident Plaintiffs consent to estimation of their personal injury and wrongful
death claims by this Court solely for the purposes of determining whether the Allowed General Unsecured
Claims in the aggregate exceed $35 billion.

29

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/3/17~~8/11/17

86.    As of March 31, 2017, the total amount of Allowed General Unsecured Claims—exclusive of Plaintiffs' claims—was $31,855,381,054.[36]  Thus, if Plaintiffs' claims are allowable in an amount of approximately $3.145 billion, then New GM's obligation to issue Adjustment Shares is triggered.  If Plaintiffs' claims are allowable in an amount of approximately $10.145 billion, then the aggregate Allowed General Unsecured Claims will exceed $42 billion, requiring the issuance of the maximum amount of Adjustment Shares.

87.    Pursuant to the Settlement Agreement, the claims are being pursued with the consent of the GUC Trust, which has the sole authority to permit the filing of late claims.  See Late Filed Claims Order at 1-2.  In addition, the GUC Trust is the only party with standing to object to the allowance of claims and has the authority to settle, withdraw or otherwise resolve any objections to disputed claims.  See Plan §§ 7.1(b) ("[T]he GUC Trust Administrator shall have the exclusive right to object . . . to General Unsecured Claims . . . ."); GUC Trust Agreement § 5.1(d) ("[T]he GUC Trust Administrator shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Disputed General Unsecured Claims against the Debtors . . . .").  Accordingly, the GUC Trust's decision to seek entry of the Claims Estimate Order should be upheld by the Court under Bankruptcy Rule 9019 and Bankruptcy Code Section 502(c).

88.    In the course of negotiations, the GUC Trust was provided with the Proffered Evidence indicating that the damages for these plaintiffs' claims could exceed $10.15 billion.  Based on the evidence, the expense and delay of litigation, and the benefits of the Settlement as a whole, the GUC Trust agreed to support an estimate of the allowed amount of Plaintiffs'

---

[36]  See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(c) Report and Budget Variance Report as of June 30, 2017*, dated July 21, 2017 [ECF No. 13994].

CONFIDENTIAL

GUC_0001621

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

Allowed General Unsecured Claims against the Debtors and/or the GUC Trust, when combined with all of the other Allowed General Unsecured Claims against the Debtors, equal to or exceeding $42 billion. Accordingly, the requested Claims Estimate Order is well within the range of reasonableness and should be granted under Bankruptcy Rule 9019. See In re Iridium Operating LLC, 478 F.3d at 462; In re Adelphia Commn'cs Corp., 327 B.R. at 159.[37]

89.    Based on the foregoing, $42 billion is a reasonable estimate of the aggregate Allowed General Unsecured Claims against the GUC Trust.

## NOTICE

90.    Notice of this Motion has been provided in accordance with the Court-approved notice procedures. See [Order Approving Notice Procedures]. The Parties submit that no other or further notice need be provided.

## NO PRIOR REQUEST

No previous application for the relief sought in this Motion has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Parties respectfully request that the Court: (i) enter an order substantially in the form attached hereto as **Exhibit E** approving the Settlement Agreement, attached hereto as **Exhibit A**, pursuant to Bankruptcy Rule 9019; (ii) enter a Claims Estimate

---

[37]    Rulings in the MDL Court provide additional support for the viability of Plaintiffs' claims. Similar economic loss claims have been asserted in a consolidated class actions complaint in the MDL. Consumer fraud, common law fraud, and implied warranty claims largely survived partial motions to dismiss. See FACC Opinion at 23; TACC Opinion at 5-6. In addition, the MDL Court recognized that the laws of several jurisdictions permit the assertion of damages under the "benefit-of-the-bargain defect theory," i.e., amounts plaintiffs overpaid at the time of sale for a defective vehicle, and injuries for lost time. See FACC Opinion at 13-14, 18; TACC Opinion at 24.

31

GUC_0001622

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~**BR** & ~~AG~~**GP** COMMENTS ~~8/8/17~~**8/11/17**

Order substantially in the form attached hereto as **Exhibit F**, pursuant to Bankruptcy Rule 9019

and Bankruptcy Code Section 502(c); and (iii) grant such other relief as is just and equitable.

Dated: August [ ], 2017
New York, New York

Respectfully submitted,

*/s/ Draft*
Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com
*Designated Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, California 94111

32

GUC_0001623

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing*
*Accident Plaintiffs Represented By Hilliard*
*Muñoz Gonzales L.L.P. and the Law Offices*
*of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to certain Pre-Closing Accident Plaintiffs*

Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J. HENRY
4715 Fredricksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident Plaintiffs*

Lisa M. Norman (admitted *pro hac vice*)
T. Joshua Judd (admitted *pro hac vice*)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056

33

GUC_0001624

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/3/17~~8/11/17

Tel: 713-850-4200
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident Plaintiffs*

Matthew Williams
Keith R. Martorana
Gabriel Gillett
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
Tel: 212-351-400
mwilliams@gibsondunn.com
kmartorana@gibsondunn.com
ggillett@gibsondunn.com

*Counsel for Wilmington Trust Company, as*
*Administrator and Trustee of the GUC Trust*

62843904.v1

34

                                                                    GUC_0001625

| Summary report: Litéra® Change-Pro TDC 7.5.0.125 Document comparison done on 8/11/2017 2:24:44 PM | |
|---|---|
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 1- 9019 Motion re GUC Trust Settlement.DOCX | |
| **Modified filename:** 9019 Motion re GUC Trust Settlement.DOCX | |
| **Changes:** | |
| Add | 19 |
| Delete | 17 |
| Move From | 2 |
| Move To | 2 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 40 |

CONFIDENTIAL

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MOTORS LIQUIDATION COMPANY, *et al.*, | ) Bankruptcy Case No.: 09-50026 (MG) |
| f/k/a General Motors Corporation, *et al.*, | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

## ORDER PURSUANT TO SECTIONS 105, 363
## AND 1142 OF THE BANKRUPTCY CODE AND
## BANKRUPTCY RULES 3020 AND 9019, AUTHORIZING
## AND APPROVING THE SETTLEMENT AGREEMENT BY AND
## AMONG THE GUC TRUST AND THE SIGNATORY PLAINTIFFS

Upon the joint motion of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), PIWD Counsel[1] on behalf of the PIWD Plaintiffs, and Co-Lead Counsel on behalf of the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs (collectively, the "**Signatory Plaintiffs**") filed on August ___, 2017 [ECF No. _____] (the "**Motion**") for entry of an order authorizing and approving the settlement embodied in the agreement attached thereto as Exhibit 1 (the "**Settlement Agreement**"), by and among (i) the GUC Trust and (ii) the Signatory Plaintiffs; and the Bankruptcy Court having considered the Motion; and a hearing on the Motion having been held before this Bankruptcy Court on _____, 2017 (the "**Hearing**") to consider the relief requested in the Motion; and the Bankruptcy Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Plan; and the Bankruptcy Court having considered the statements of counsel on the record of the Hearing and the filings of the parties in connection with the Motion; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Settlement Agreement.

GUC_0001627

the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the

record of the Hearing; and it appearing that proper and adequate notice of the Motion has been

given in accordance with the *Order Approving Notice Procedures With Respect to Proposed*

*Settlement by and Among the Signatory Plaintiffs and the GUC Trust* [ECF No. _____] (the

"**Notice Order**") and that no other or further notice is necessary; and after due deliberation and

sufficient cause appearing therefor,

**THE BANKRUPTCY COURT HEREBY FINDS AND DETERMINES THAT:**[2]

      A.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

      B.     The statutory predicates for the relief requested in the Motion are Sections 105,

363 and 1142 of the Bankruptcy Code and Bankruptcy Rules 3020 and 9019.

      C.     As evidenced by the affidavits of service filed with this Court, and in accordance

with the Notice Order, notice has been given and a reasonable opportunity to object or be heard

with respect to the Motion and the relief requested therein has been afforded to (i) all persons in

the United States who, as of July 10, 2009, owned or leased a vehicle manufactured by Old GM

included in the Recalls; (ii) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against

New GM as of the date of the Settlement Agreement; (iii) all Plaintiffs who have filed or joined a

motion for authority to file late claims against the GUC Trust; (iv) holders of units of beneficial

interest in the GUC Trust; (v) the defendants to the Term Loan Avoidance Action; and (vi) the

parties in interest in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a)*

*and Bankruptcy Rules 1015(c) and 9007 Establishing Notice and Case Management Procedures,*

dated May 5, 2011 [ECF No. 10183]. Additional publication notice of the Motion has been

---

[2] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

CONFIDENTIAL

GUC_0001628

given by the GUC Trust as set forth in the Notice Order. The notice was good, sufficient and appropriate in light of the circumstances and the nature of the relief requested, and no other or further notice is or shall be required.

D.    The GUC Trust has demonstrated good, sufficient and sound business purposes, causes and justifications for the relief requested in the Motion and the approval of the Settlement Agreement and the transactions contemplated thereby.

E.    The GUC Trust has demonstrated that the relief requested in the Motion is necessary for the prompt and efficient administration of the Old GM Bankruptcy Case and is in the best interests of the GUC Trust, its beneficiaries and other parties-in-interest.

F.    After due diligence by the Parties, the Settlement Agreement was negotiated and entered into by and among the Parties in good faith and from arm's length bargaining positions.

G.    The GUC Trust has demonstrated that continued litigation of the matters resolved by the Settlement Agreement would be complex, costly and delay the closing of the Old GM Bankruptcy Case and the distribution of GUC Trust Assets in accordance with the Plan.

H.    The Settlement Agreement resolves multiple disputes, claims and issues to which the Parties are involved in varying degrees, and in related but not necessarily identical ways, such that each Party's overall obligations to one or more other Parties constitutes good and sufficient consideration for the overall benefits each Party is to receive from one or more of the other Parties.

I.    The settlements, compromises, releases and transfers contemplated in the Settlement Agreement are fair, reasonable and given in exchange for valuable and reasonably equivalent consideration.

-3-

CONFIDENTIAL

GUC_0001629

J.      The GUC Trust's entry into the Settlement Agreement, including the compromises and releases embodied therein, is a prudent and reasonable exercise of business judgment that is in the best interests of the GUC Trust and its beneficiaries.

K.      The Settlement Agreement represents a multi-party resolution of a number of complex factual and legal issues, and the releases and acknowledgments contained therein and herein, and the injunction and findings provided by this Order, are a necessary element of the consideration received by the Parties, and a condition to the effectiveness of the Settlement Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The relief requested by the Motion is GRANTED and the Settlement Agreement and each of its terms are approved in their entirety as set forth herein.

2.      Any and all objections to the Motion that have not been withdrawn, resolved, waived or settled as reflected on the record of the Hearing are overruled on the merits.

3.      In accordance with Paragraph 3.1 of the Settlement Agreement, the Settlement shall be effective and binding on all persons upon the Settlement Effective Date, including, but not limited to, all Plaintiffs, any past or present holder of units of beneficial interests in the GUC Trust, any past or present holder of an Allowed General Unsecured Claim, and all defendants in the Term Loan Avoidance Action.

4.      The GUC Trust is authorized to perform all of its obligations pursuant to the terms of the Settlement Agreement, and to take any and all actions necessary or appropriate to effectuate the Settlement Agreement and to enforce its terms.

5.      On or before the date that is five (5) business days following the Settlement Effective Date (the "**Cash Distribution Date**"), in full settlement of the Parties' disputes as contemplated in the Settlement Agreement, and in contemplation of, among other things, the

-4-

CONFIDENTIAL

releases and waivers set forth in Paragraph 2.3 of the Settlement Agreement and Paragraph 6 hereof (collectively, the "**Release and Waiver**"), the GUC Trust is hereby directed to pay the total sum of fifteen million U.S. Dollars (USD $15,000,000) (the "**Settlement Amount**") to an account established and designated by the Signatory Plaintiffs (the "**Settlement Fund**"); provided that, in the event that Signatory Plaintiffs have not established and designated such Settlement Fund within two (2) business days following the Settlement Effective Date, the GUC Trust shall place the Settlement Amount into a third party escrow account established by the GUC Trust.

6.      Provided that the Settlement Effective Date has occurred, contemporaneously with the payment of the Settlement Amount by the GUC Trust, and in consideration of the promises and covenants contained in the Settlement Agreement and/or the notice provided by the Settlement Agreement, all Plaintiffs, for themselves, and on behalf of their respective agents, employees, officers, directors, shareholders, successors, assigns, assignors, predecessors, members, beneficiaries, representatives (in their capacity as such) and any subsidiary or affiliate thereof (the "**Releasing Parties**"), shall be deemed to completely and irrevocably release, waive (including a waiver under California Civil Code Section 1542) and forever discharge the GUC Trust, the trust administrator and trustee of the GUC Trust, the Motors Liquidation Company Avoidance Action Trust, and the holders of beneficial units in the GUC Trust, and all of their subsidiaries and affiliates, and all of their respective past, present and future agents, attorneys, employees, officers, directors, shareholders, successors, assigns, members, representatives (in their capacity as such) (the "**Released Parties**"), from any and all, actions, attorneys' fees, charges, claims (including but not limited to General Unsecured Claims and claims for injunctive and/or declaratory relief), costs, demands, expenses, judgments, liabilities and causes of action of

-5-

GUC_0001631

any kind, nature or description, whether matured or unmatured, contingent or absolute, liquidated or unliquidated, known or unknown, direct or derivative, preliminary or final, which the Releasing Parties may now have, ever had, or may in the future have against the Released Parties, the GUC Trust Assets, the Debtors, or their estates, arising out of or based on any facts, circumstances, issues, services, advice, or the like, occurring from the beginning of time through the date hereof that relate to, could relate to, arise under, or concern the Recalls, the Old GM Bankruptcy Case, the GM MDL, the Plan, the Late Claims Motions, the AMPSA, the Sale Order or any matter associated with any of the foregoing (collectively, the "**Released Claims**"); provided, however, that the Releasing Parties shall retain all remedies available in law or equity for breach of the Settlement Agreement by the GUC Trust; and provided further that solely in the event that the Bankruptcy Court enters the Claims Estimate Order as contemplated by the Settlement Agreement, the foregoing Release and Waiver shall not apply to the Adjustment Shares, which shall be issued by New GM to the Settlement Fund for the exclusive benefit of Plaintiffs pursuant to the terms of the entered Claims Estimate Order (if any); and provided further that, nothing in the Settlement Agreement, Motion or this Order is intended to waive any claims against New GM or be an election of remedies against New GM; nor does the Settlement Agreement, Motion or this Order, or any payments made in connection therewith, represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full for every available source (provided, however, that in no event shall any Plaintiff be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares) and, except as mandated otherwise by applicable law, nothing in the Settlement Agreement, Motion or this Order shall waive or impair any claims that Plaintiffs may have against New GM, the Settlement

-6-

GUC_0001632

shall not be an election of remedies by any Plaintiff, and the Settlement Fund shall not represent

full and final satisfaction of any claims that Plaintiffs may have against New GM, which claims

are expressly reserved.  Nor shall the Settlement or any estimation or payment or distribution

made in connection therewith constitute a cap on any claims by any of the Plaintiffs against New

GM.  In addition, the Releasing Parties shall be deemed to have agreed not to make any claim,

commence or continue any action, lawsuit, adversary proceeding or other legal, equitable or

administrative proceeding that asserts any such Released Claims against the Released Parties, the

GUC Trust Assets, the Debtors, or their estates, or to seek any further funding from the Released

Parties in connection with the Released Claims, and the Released Parties are released and

discharged of any further obligation to provide such funding, it being the intent of the Parties that

(other than the rights of the Plaintiffs to the Adjustment Shares following entry of the Claims

Estimate Order) the payment of the Settlement Amount is the last and only payment the Released

Parties or any of their subsidiaries or affiliates will make to the Plaintiffs in connection with the

Released Claims.

   7.  The Releasing Parties shall be permanently stayed, restrained, enjoined and

forever barred from taking any action against any of the Released Parties, the GUC Trust Assets,

the Debtors, or their estates for the purpose of, directly or indirectly, collecting, recovering, or

receiving payment or recovery with respect to, relating to, arising out of, or in any way

connected with any Released Claim, whenever and wherever arising or asserted, all of which

shall be resolved and satisfied by the Settlement Fund as set forth in the Settlement Fund

Procedures (as defined below).

   8.  The Released Parties and FTI Consulting, Inc. as trust monitor of the GUC Trust

(in such capacity, the "**GUC Trust Monitor**"): (a) shall have no liability whatsoever to any

-7-

GUC_0001633

holder or purported holder of a claim, equity interest or unit of beneficial interest in the GUC Trust, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, or arising out of, the settlement of the claims addressed by the Settlement Agreement, or the pursuit of approval of the Settlement Agreement or the Claims Estimate Order, the administration of the Settlement Agreement, or any transaction contemplated by the Settlement Agreement, or in furtherance thereof, or any obligations that they have under or in connection with the Settlement Agreement or the transactions contemplated by the Settlement Agreement (collectively, the "**Exculpated Claims**"), except (i) for any act or omission that constitutes willful misconduct or gross negligence as determined by a final order, and (ii) for any contractual obligation that is owed to a Party under the Settlement Agreement or this Order; and (b) in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Settlement Agreement.  No holder of any claim, interest or unit of beneficial interest in the GUC Trust, or other party-in-interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Released Parties or the GUC Trust Monitor with respect to the Exculpated Claims.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties and the GUC Trust Monitor from liability.

9.    All of the value of the Settlement Fund, including the Settlement Amount (and, if issued pursuant to the Claims Estimate Order, the Adjustment Shares or their value), shall be

CONFIDENTIAL                                                                    GUC_0001634

reserved for the exclusive benefit of the Plaintiffs, subject only to costs associated with the administration of the Settlement Fund.

10.     Provided that the Settlement Effective Date has occurred, contemporaneously with the payment of the Settlement Amount by the GUC Trust, and in consideration of the promises and covenants contained in the Settlement Agreement, the GUC Trust, all holders of beneficial units of the GUC Trust, all defendants in the Term Loan Avoidance Action and all holders of Allowed General Unsecured Claims, other than Plaintiffs, for themselves, and on behalf of their respective agents, employees, officers, directors, shareholders, successors, assigns, assignors, predecessors, members, beneficiaries, representatives (in their capacity as such) and any subsidiary or affiliate thereof (the "**GUC Releasing Parties**"), shall be deemed to completely and irrevocably release and waive any and all rights or interests they may now have, ever had, or may in the future have with respect to the Settlement Amount.  In addition, the GUC Releasing Parties shall be deemed to have agreed not to make any claim, commence or continue any action, lawsuit, adversary proceeding or other legal, equitable or administrative proceeding that seeks to share in or recover from the Settlement Amount.  Further, the GUC Releasing Parties shall be enjoined and forever barred from directly or indirectly bringing, commencing, initiating, instituting, maintaining, prosecuting or otherwise aiding, in any action of any kind or nature, whether in the United States, Canada or elsewhere, that seeks to share in or recover from the Settlement Amount.

11.     Provided that the Settlement Effective Date has occurred, contemporaneously with the payment of the Settlement Amount by the GUC Trust and entry of the Claims Estimate Order by the Bankruptcy Court, and in consideration of the promises and covenants contained in the Settlement Agreement, the GUC Releasing Parties shall be deemed to completely and

CONFIDENTIAL

GUC_0001635

irrevocably release and waive any and all rights or interests they may now have, ever had, or may in the future have with respect to the Adjustment Shares, which shall be issued by New GM to the Settlement Fund for the exclusive benefit of Plaintiffs pursuant to the terms of the entered Claims Estimate Order (if any).  In addition, the GUC Releasing Parties shall be deemed to have agreed not to make any claim, commence or continue any action, lawsuit, adversary proceeding or other legal, equitable or administrative proceeding that seeks to share in or recover from the Adjustment Shares.  Further, the GUC Releasing Parties shall be enjoined and forever barred from directly or indirectly bringing, commencing, initiating, instituting, maintaining, prosecuting or otherwise aiding, in any action of any kind or nature, whether in the United States, Canada or elsewhere, that seeks to share in or recover from the Adjustment Shares.

12.    The Signatory Plaintiffs or, in the alternative, an administrator appointed by the Signatory Plaintiffs, shall establish the Settlement Fund (at the sole costs of the Signatory Plaintiffs).  Being defined as a Plaintiff does not assure any party that he, she, or it will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.  Subject to notice and an opportunity for Plaintiffs to object, the Signatory Plaintiffs will determine the overall allocation of the value of the Settlement Fund between economic loss claims and personal injury/wrongful death claims, and the eligibility and criteria for payment (the "**Settlement Fund Procedures**").  Notice of the proposed allocation and proposed eligibility and criteria for payment will be posted on a settlement website, along with information about the hearing date and how and when to assert any objections.

13.    Solely in the event that the Bankruptcy Court denies entry of the Claims Estimate Order or the Claims Estimate Order is entered but subsequently reversed by a reviewing court on

CONFIDENTIAL

a final basis, then the Late Claims Motions shall automatically be deemed withdrawn with prejudice, without any action required on the part of the GUC Trust, the Plaintiffs or any other party in interest. For the avoidance of doubt, this Order shall not be affected by the entry or non-entry of any Claims Estimate Order, or any subsequent reversal of any Claims Estimate Order on appeal or on remand.

14.     The Settlement Agreement, including any term, condition or other provision therein, may not be waived, modified, amended or supplemented, except as provided in the Settlement Agreement.

15.     The failure to specifically describe or include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Settlement Agreement be authorized and approved in its entirety.

16.     If there is any conflict between the terms of the Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control, and if there is any conflict between the terms of this Order and the Settlement Agreement, the terms of this Order shall control.

17.     Notwithstanding the possible applicability of Bankruptcy Rules 3020, 6004, 6006, 7062, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     The Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce the Settlement Agreement and to resolve any disputes relating to or concerning the Settlement Agreement.

-11-

CONFIDENTIAL

GUC_0001637

Dated: _____, 2017

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT

CONFIDENTIAL

GUC_0001638

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                    :

In re:                                :        Chapter 11

MOTORS LIQUIDATION COMPANY, et al.,   :       Case No.: 09-50026 (MG)
       f/k/a General Motors Corp., et al.,    :
                                         :

              Debtors.            :        (Jointly Administered)
-----------------------------------------------------------X

## CLAIMS ESTIMATE ORDER

Upon the motion (the "**Motion**")[1] of the Signatory Plaintiffs and the GUC Trust pursuant to Bankruptcy Code Section 502(c) and Bankruptcy Rule 9019 for entry of an order estimating the aggregate Allowed General Unsecured Claims for purposes of issuance of the Adjustment Shares by New GM under Section 3.2(c) of the AMSPA and the Side Letter; and due and proper notice of the Motion having been provided and it appearing that no other or further notice need be given; and the Court having found and determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED as provided herein.

2.     Any and all objections to the Motion that have not been withdrawn, resolved, waived or settled as reflected on the record of the hearing are overruled on the merits.

3.     The Pre-Closing Accident Plaintiffs' claims shall be estimated solely for the purposes of estimating the aggregate Allowed General Unsecured Claims in this Order. If further adjudication of their personal injury and wrongful death claims are necessary notwithstanding entry of this Order, the Pre-Closing Accident Plaintiffs' rights under Section

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

GUC_0001639

157(b)(5) of Title 28 to have their claims tried in the district court in which Old GM's

bankruptcy case is pending, or in the district court in which the claim arose, as determined by the

district court in which Old GM's bankruptcy case is pending, are expressly reserved.

4.    The aggregate Allowed General Unsecured Claims, including the allowed amount

of Plaintiffs' claims, are hereby estimated for purposes of the issuance of the Adjustment Shares

in an amount that is no less than $42 billion.[2]

5.    Within five (5) business days of entry of this Order, New GM shall issue 30 million

shares of New GM common stock (the "**Adjustment Shares**") or the value of the Adjustment

Shares, to an account designated by the Signatory Plaintiffs (the "**Settlement Fund**").

6.    Nothing in this Order is intended to waive any claims against New GM or to be an

election of remedies against New GM; nor does this Order or any payments made in connection

with this Order represent full satisfaction of any claims against Old GM, unless and until such

claims are in fact paid in full from every available source; provided, however, that in no event

shall any Plaintiff be permitted to seek any further payment or compensation from the GUC

Trust in respect of their claims or otherwise, other than the Settlement Amount and the

Adjustment Shares.  Except as mandated otherwise under applicable law, nothing in this Order

shall waive any claims that any Plaintiff may have against New GM or constitute an election of

remedies by any Plaintiff, and the Adjustment Shares (and any distribution thereof to any

Plaintiff) shall not represent full and final satisfaction of any claim that any Plaintiff may have

against New GM, all of which are expressly reserved.  The estimate of the aggregate Allowed

---

[2]    Notwithstanding anything to the contrary set forth herein, the estimation of the aggregate Allowed General Unsecured Claims is solely for the purposes of issuance of the Adjustment Shares, and shall not, among other things, constitute an estimation of any claims or potential claims of the defendants in the Term Loan Avoidance Action.

CONFIDENTIAL                                                                                                GUC_0001640

General Unsecured Claims herein shall not operate as a cap on any of the claims of any of the Plaintiffs against New GM.

7.    Provided that the Settlement Order has been entered and is a Final Order (or the GUC Trust has waived the requirement that the Settlement Order be a Final Order) (i) the Adjustment Shares, or the value thereof, shall be reserved for the exclusive benefit of the Plaintiffs, subject only to costs associated with the administration of the Settlement Fund, and (ii) the GUC Trust, holders of beneficial units of the GUC Trust, holders of Allowed General Unsecured Claims other than Plaintiffs, and the defendants in the Term Loan Avoidance Action, and all of their subsidiaries and affiliates, and all of their respective past, present and future agents, attorneys, employees, officers, directors, shareholders, successors, assigns, members, or representatives (in their capacity as such), shall have no rights or entitlements with respect to the Settlement Fund and are deemed to completely and irrevocably release and waive any and all rights or interests they may now have, ever had, or may in the future have with respect to the Settlement Fund.

8.    As provided under Sections 2.9(b), 2.9(c), and 2.11 of the Settlement Agreement, the Signatory Plaintiffs are specifically authorized and directed to establish an allocation methodology for the Settlement Fund and proposed criteria for determining the right or ability of each Plaintiff to receive a distribution from the Settlement Fund.  Notice of any agreement as to the proposed allocation of Adjustment Shares (or their value) and proposed criteria for eligibility, along with information about the hearing date and how and when to assert any objections, shall be provided via a settlement website to all known Plaintiffs whose rights might be affected by such allocation and such Plaintiffs shall have an opportunity to object at a hearing to be held before the appropriate court.  Being defined as a Plaintiff does not assure any party that he, she,

3

GUC_0001641

or it will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), or any other consideration contained in the Settlement Fund.

9.    The Signatory Plaintiffs are specifically authorized and directed to administer, allocate and distribute the proceeds of the Settlement Fund to Plaintiffs.    Proceeds from the Settlement Fund may be used to cover the costs associated with administration and distribution of the Settlement Fund.    The GUC Trust shall have no obligations associated with the funding (other than the payment of the Settlement Amount), administration, allocation and distribution of the Settlement Fund.

10.    Notwithstanding the possible applicability of Bankruptcy Rule 7062, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2017
          New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT

CONFIDENTIAL

GUC_0001642

~~GDC & AG 8/8/17 DRAFT~~

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------------X
                       :

In re:                               :       Chapter 11

MOTORS LIQUIDATION COMPANY, et al.,  :       Case No.: 09-50026 (MG)

      f/k/a General Motors Corp., et al.,  :

                               :

               Debtors.        :       (Jointly Administered)

------------------------------------------------------------X

## CLAIMS ESTIMATE ORDER

Upon the motion (the "**Motion**")[1] of the Signatory Plaintiffs and the GUC Trust pursuant to Bankruptcy Code Section 502(c) and Bankruptcy Rule 9019 for entry of an order estimating the aggregate Allowed General Unsecured Claims for purposes of issuance of the Adjustment Shares by New GM under Section 3.2(c) of the AMSPA and the Side Letter; and due and proper notice of the Motion having been provided and it appearing that no other or further notice need be given; and the Court having found and determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED as provided herein.

2.     Any and all objections to the Motion that have not been withdrawn, resolved, waived or settled as reflected on the record of the hearing are overruled on the merits.

3.     The Pre-Closing Accident Plaintiffs' claims shall be estimated solely for the purposes of estimating the aggregate Allowed General Unsecured Claims in this Order. If further adjudication of their personal injury and wrongful death claims are necessary notwithstanding entry of this Order, the Pre-Closing Accident Plaintiffs' rights under Section

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

CONFIDENTIAL

~~GDC & AG 8/8/17 DRAFT~~

157(b)(5) of Title 28 to have their claims tried in the district court in which Old GM's bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district court in which Old GM's bankruptcy case is pending, are expressly reserved.

4.      The aggregate Allowed General Unsecured Claims, including the allowed amount of Plaintiffs' claims, are hereby estimated for purposes of the issuance of the Adjustment Shares in an amount that is no less than $42 billion.[2]

5.      Within five (5) business days of entry of this Order, New GM shall issue 30 million shares of New GM common stock (the "**Adjustment Shares**") or the value of the Adjustment Shares, to an account designated by the Signatory Plaintiffs (the "**Settlement Fund**").

6.      Nothing in this Order is intended to waive any claims against New GM or to be an election of remedies against New GM; nor does this Order or any payments made in connection with this Order represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full from every available source; provided, however, that in no event shall any Plaintiff be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares.  Except as mandated otherwise under applicable law, nothing in this Order shall waive any claims that any Plaintiff may have against New GM or constitute an election of remedies by any Plaintiff, and the Adjustment Shares (and any distribution thereof to any Plaintiff) shall not represent full and final satisfaction of any claim that any Plaintiff may have against New GM, all of which are expressly reserved.  The estimate of the aggregate Allowed

---

[2]      Notwithstanding anything to the contrary set forth herein, the estimation of the aggregate Allowed General Unsecured Claims is solely for the purposes of issuance of the Adjustment Shares, and shall not, among other things, constitute an estimation of any claims or potential claims of the defendants in the Term Loan Avoidance Action.

2

GDC & AG 8/8/17 DRAFT

General Unsecured Claims herein shall not operate as a cap on any of the claims of any of the Plaintiffs against New GM.

7.    Provided that the Settlement Order has been entered and is a Final Order (or the GUC Trust has waived the requirement that the Settlement Order be a Final Order) (i) the Adjustment Shares, or the value thereof, shall be reserved for the exclusive benefit of the Plaintiffs, subject only to costs associated with the administration of the Settlement Fund, and (ii) the GUC Trust, holders of beneficial units of the GUC Trust, holders of Allowed General Unsecured Claims other than Plaintiffs, and the defendants in the Term Loan Avoidance Action, and all of their subsidiaries and affiliates, and all of their respective past, present and future agents, attorneys, employees, officers, directors, shareholders, successors, assigns, members, or representatives (in their capacity as such), shall have no rights or entitlements with respect to the Settlement Fund and are deemed to completely and irrevocably release and waive any and all rights or interests they may now have, ever had, or may in the future have with respect to the Settlement Fund.

8.    As provided under Sections 2.9(b), 2.9(c), and 2.11 of the Settlement Agreement, the Signatory Plaintiffs are specifically authorized and directed to establish an allocation methodology for the Settlement Fund and proposed criteria for determining the right or ability of each Plaintiff to receive a distribution from the Settlement Fund.  Notice of any agreement as to the proposed allocation of Adjustment Shares (or their value) and proposed criteria for eligibility, along with information about the hearing date and how and when to assert any objections, shall be provided via a settlement website to all known Plaintiffs whose rights might be affected by such allocation and such Plaintiffs shall have an opportunity to object at a hearing to be held before the appropriate court. Being defined as a Plaintiff does not assure any party that he, she,

3

CONFIDENTIAL

GUC_0001645

or it will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), or any other consideration contained in the Settlement Fund.

9.      The Signatory Plaintiffs are specifically authorized and directed to administer, allocate and distribute the proceeds of the Settlement Fund to Plaintiffs. Proceeds from the Settlement Fund may be used to cover the costs associated with administration and distribution of the Settlement Fund. The GUC Trust shall have no obligations associated with the funding (other than the payment of the Settlement Amount), administration, allocation and distribution of the Settlement Fund.

10.     Notwithstanding the possible applicability of Bankruptcy Rule 7062, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2017
         New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT

4

CONFIDENTIAL

GUC_0001646

| **Summary report:** | |
|---|---|
| **Litéra® Change-Pro TDC 7.5.0.125 Document comparison done on 8/11/2017 2:27:50 PM** | |
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 1_GM - Claims Estimate Order.DOC | |
| **Modified filename:** GM - Claims Estimate Order.DOC | |
| **Changes:** | |
| Add | 1 |
| Delete | 1 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 2 |

CONFIDENTIAL

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**BR & GP COMMENTS 8/11/17**

**HEARING DATE AND TIME: [ ], 2017 at [ ] (EST)**
**OBJECTION DEADLINE: [ ], 2017 at 4:00 p.m. (EST)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                    :
In re:                                              :          Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                 :          Case No.: 09-50026 (MG)
    f/k/a General Motors Corp., et al.,            :
                                                    :
                           Debtors.     :          (Jointly Administered)
-----------------------------------------------------------X

**JOINT MOTION PURSUANT TO BANKRUPTCY**
**CODE SECTIONS 105, 363, 502(C) AND 1142 AND**
**BANKRUPTCY RULES 3020 AND 9019 TO APPROVE**
**THE SETTLEMENT AGREEMENT BY AND AMONG THE SIGNATORY**
**PLAINTIFFS AND THE GUC TRUST, AND TO ESTIMATE THE PLAINTIFFS'**
**AGGREGATE ALLOWED GENERAL UNSECURED CLAIMS AGAINST THE DEBTORS**

GUC_0001648

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**BR & GP COMMENTS 8/11/17**

## TABLE OF CONTENTS

GUC_0001649

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

## TABLE OF AUTHORITIES

CONFIDENTIAL

GUC_0001650

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

By and through their undersigned counsel, the Ignition Switch Plaintiffs,[1] certain Non-Ignition Switch Plaintiffs,[2] certain Pre-Closing Accident Plaintiffs[3] (collectively, the "**Signatory Plaintiffs**"), and the GUC Trust[4] (together with the Signatory Plaintiffs, the "**Parties**") respectfully submit this *Joint Motion Pursuant to Bankruptcy Code Sections 105, 363, 502(c) and 1142 and Bankruptcy Rules 3020 and 9019 to Approve the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust, and to Estimate the Plaintiffs' Aggregate Allowed General Unsecured Claims Against the Debtors* (the "**Motion**").[5]  In support of this Motion, the Parties respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs have sought leave to file late proposed class claims against the GUC Trust seeking relief for economic losses related to Old GM's alleged concealment of safety defects in ignition switches (including the Ignition Switch Defect and similarly defective ignition switches), side airbags, and power steering.  Certain Ignition Switch Pre-Closing Accident Plaintiffs have likewise sought leave to

---

[1]   The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047 the "**Ignition Switch Defect**").

[2]   The term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540, 14V-118 and 14V-153.

[3]   The term "**Pre-Closing Accident Plaintiffs**" shall mean those plaintiffs asserting personal injury or wrongful death claims or persons who suffered a personal injury or wrongful death arising from an accident involving an Old GM vehicle that occurred prior to the closing of the Section 363 Sale.  The Pre-Closing Accident Plaintiffs are comprised of a subset asserting claims or who suffered an injury or death involving an Old GM vehicle with an Ignition Switch Defect (the "**Ignition Switch Pre-Closing Accident Plaintiffs**"), and a subset asserting claims or who suffered an injury or death involving vehicles with other defects (the "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**").  Collectively, the Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Pre-Closing Accident Plaintiffs are the "**Plaintiffs**."

[4]   The term "**GUC Trust**" shall mean the Motors Liquidation Company GUC Trust.

[5]   Except where otherwise indicated, references to "ECF No. _" are to docket entries in the Bankruptcy Court proceedings: In re Motors Liquidation Co., Bankr. Case No. 09-50026 (MG).

1

                                                                          GUC_0001651

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

file late personal injury and wrongful death claims against the GUC Trust related to Old GM vehicles subject to the Recalls.

2.     These efforts implicate numerous complex, disputed issues, including, *inter alia*, whether Plaintiffs should be granted authority to file late proofs of claim (and whether such authority can be granted solely on due process grounds), whether Plaintiffs' asserted claims are equitably moot, whether additional grounds exist to object to Plaintiffs' asserted claims, and the allowable amount of said claims.

3.     Litigation related to these issues has been ongoing for several years, consuming large amounts of time, money and resources, and failing to resolve key disputes between the Parties.  For example, in the April 2015 Decision, the Bankruptcy Court ruled that Old GM failed to provide Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs with constitutionally proper notice of the Bar Date.[6]  While the Bankruptcy Court ruled that assets of the GUC Trust could not be tapped to pay any late claims that might be allowed under the doctrine of equitable mootness, the Second Circuit vacated this holding as an advisory opinion—leaving open the question of the applicability of equitable mootness.[7]  In addition, there is an on-going dispute whether an additional showing under the Pioneer factors is required for Plaintiffs to obtain leave to file late claims.  Continuation of protracted litigation on these issues will only serve to deplete remaining GUC Trust Assets and subject the Parties to uncertain results.

---

[6]  See In re Motors Liquidation Co., 529 B.R. 510, 573-74, 583 (Bankr. S.D.N.Y. 2015), aff'd in part, rev'd in part, vacated in part sub nom. Elliott v. General Motors LLC (In re Motors Liquidation Co.), 829 F.3d 135 (2d Cir. 2016) (the "**April 2015 Decision**").

[7]  See In re Motors Liquidation Co., 529 B.R. at 529; Elliott, 829 F.3d at 168-69.

2

GUC_0001652

4.    The Settlement Agreement resulted from extensive, good faith negotiations between experienced counsel to reasonably resolve these issues in the interest of the estate.

5.    The Settlement Agreement provides for the GUC Trust to pay Plaintiffs $15 million (the "**Settlement Amount**"). In exchange for the Settlement Amount and the promise by the GUC Trust to support entry of the Claims Estimate Order as set forth below, and following extensive notice designed to reach every potentially affected Plaintiff and an opportunity to object and be heard, upon entry of the Settlement Order all Plaintiffs will be deemed to have waived and released any rights or claims against the GUC Trust, Wilmington Trust Company as trust administrator and trustee of the GUC Trust (the "**GUC Trust Administrator**"), the Motors Liquidation Company Avoidance Action Trust (the "**Avoidance Action Trust**") and holders of beneficial interest in the GUC Trust (the "**Unitholders**"), including a release of any rights to past or present GUC Trust Assets and to distributions by the Avoidance Action Trust. This waiver provides finality and certainty to the GUC Trust and Unitholders (regardless of whether or not the Claims Estimate Order is entered), protects against the risk of claw-back or recapture of prior distributions of GUC Trust Assets and eliminates delay in the wind-down process and distribution of assets.

6.    In addition to the payment of the Settlement Amount, the GUC Trust has agreed to support the entry of an order (the "**Claims Estimate Order**") estimating the amount of Plaintiffs' claims in an amount necessary to trigger New GM's obligation to issue the maximum amount of additional shares of New GM common stock (the "**Adjustment Shares**") under the terms of the Sale Agreement. Upon entry of the Claims Estimate Order, all Adjustment Shares will be placed in a fund for the exclusive benefit of Plaintiffs. The Signatory Plaintiffs will subsequently determine the allocation of the value of the Settlement Amount and the Adjustment

3

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

Shares between economic loss claims and personal injury/wrongful death claims and the eligibility and criteria for payment, subject to notice and an opportunity for Plaintiffs to object. Being defined as a Plaintiff does not assure any party that he, she, or it will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.

7.      Unitholders, defendants in the Term Loan Avoidance Action, and holders of Allowed General Unsecured Claims, other than Plaintiffs, waive any rights to the Settlement Amount and the Adjustment Shares.   In this way, the Settlement Agreement provides a streamlined process for allowing Plaintiffs' claims and providing a source of recovery from the Settlement Amount and the Adjustment Shares.   Notably, regardless of whether the Claims Estimate Order is ultimately entered, the waiver and releases set forth in the Settlement will be binding on all parties subject only to approval of the Settlement Order and payment of the Settlement Amount.

8.      The Settlement will massively reduce costs and resources, eliminate uncertain litigation outcomes, and prevent delay in distributions of remaining GUC Trust Assets, without disturbing recovery expectations of other creditors and Unitholders.   In light of the inherent risks and costs associated with litigation, the Settlement Agreement is fair and well within the range of reasonableness.

9.      Accordingly, the Court should approve the Settlement Agreement pursuant to Bankruptcy Rule 9019 as a fair and equitable resolution of the on-going litigation between the Parties.

10.      In addition, the Court should enter the Claims Estimate Order estimating the aggregate Allowed General Unsecured Claims, including Plaintiffs' claims, against the GUC

4

GUC_0001654

Trust in an amount equal to or exceeding $42 billion. The evidence and expert reports proffered by the Signatory Plaintiffs will demonstrate to the Court that the damages for Plaintiffs' claims could well exceed the amount required for this determination. Indeed, after reviewing those reports and considering the benefits provided by the Settlement as a whole, the GUC Trust – the sole entity charged with objecting to and resolving disputed claims in order to maximize recoveries to GUC Trust Beneficiaries pursuant to the Plan – fully supports entry of the Claims Estimate Order. The GUC Trust also believes that the Settlement is in the best interests of the estate and well within the lowest range of reasonableness as mandated by Rule 9019 of the Bankruptcy Code.

## JURISDICTION

11.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

12.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

13.    The statutory predicates for the relief sought in this Motion are Bankruptcy Code Sections 105(a), 363, 502(c) and 1142 and Bankruptcy Rules 3020 and 9019.

## BACKGROUND

**I.    Old GM's Bankruptcy And The Creation Of The GUC Trust.**

14.    On June 1, 2009, General Motors Corporation ("**Old GM**") and certain of its affiliates (collectively, "**Debtors**") filed for chapter 11 bankruptcy with this Court and entered into an agreement to sell substantially of its assets (the "**Sale Agreement**") to NGMCO, Inc. ("**New GM**") in exchange for, *inter alia*, New GM common stock and warrants. See In re Motors Liquidation Co., 529 B.R. at 535.

5

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

15.    The Sale Agreement was amended on July 5, 2009 to, *inter alia*, add a feature requiring New GM to provide additional New GM common stock in the event that the amount of allowed general unsecured claims against the Old GM estate exceeds a threshold amount. <u>See</u> AMSPA § 3.2(c).[8]  Specifically, the AMSPA provides that if the Bankruptcy Court issues an order finding that the estimated aggregate allowed general unsecured claims against the Old GM estate exceeds $35 billion, then within five business days thereof New GM will issue Adjustment Shares to the GUC Trust. <u>See</u> <u>id.</u>  If such order estimates the aggregate allowed general unsecured claims at or in excess of $42 billion, New GM must issue 30 million Adjustment Shares, the maximum amount of Adjustment Shares. <u>See</u> <u>id.</u>

16.    On July 5, 2009, the sale was approved by the Bankruptcy Court. <u>See</u> <u>In re Motors Liquidation Co.</u>, 529 B.R. at 146-47.

17.    In September 2009, the Court established November 30, 2009 (the "**Bar Date**") as the deadline for filing proofs of claim against Old GM. <u>See</u> <u>id.</u> at 535.

18.    On March 29, 2011, the Court entered an order confirming the Plan, which, among other things, authorized the creation of the GUC Trust pursuant to the terms set forth in the GUC Trust Agreement. <u>See</u> <u>id.</u> at 536.

19.    Pursuant to the Plan and GUC Trust Agreement, the GUC Trust was granted exclusive authority to object to the allowance of general unsecured claims, seek estimation of the amount of allowed general unsecured claims, and seek Adjustment Shares from New GM. <u>See</u> Plan §§ 7.1(b), 7.3; GUC Trust Agreement § 5.1.

---

[8]    <u>See</u> *Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser, dated as of June 26, 2009* (the "**AMSPA**").

CONFIDENTIAL

GUC_0001656

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

20.     In addition, pursuant to the Plan and a side letter by and between the GUC Trust, the Debtors, New GM, and FTI Consulting (as trust monitor of the GUC Trust) dated September 23, 2011 (the "**Side Letter**"), the GUC Trust is exclusively authorized to seek the issuance of Adjustment Shares under the terms of the AMPSA for satisfaction of Allowed General Unsecured Claims when the GUC Trust determines, in its sole and absolute discretion, that the aggregate Allowed General Unsecured Claims are, in the GUC Trust's estimation, likely to exceed $35 billion.  See Side Letter; Plan, Background § E(i); GUC Trust Agreement § 2.3(d).

21.     In February 2012, the Court entered an order providing that any claims filed after entry of the order would be deemed disallowed unless, *inter alia*, the claimant obtained leave of the Court or written consent of the GUC Trust.[9]

22.     As of June 30, 2017, the total amount of Allowed General Unsecured Claims against the Debtors' estate was $31,855,381,054, approximately $3.15 billion below the threshold for triggering the issuance of Adjustment Shares under the AMSPA.[10]

## II.     The Recalls And Subsequent Proceedings In The Bankruptcy Court And Second Circuit.

23.     In February and March 2014, over four years after the Bar Date, New GM publicly disclosed the existence of the Ignition Switch Defect and issued a recall, NHTSA Recall Number 14V-047, impacting approximately 2.1 million vehicles.

---

[9]    See *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims*, dated February 8, 2012 [ECF No. 11394] (the "**Late Filed Claims Order**").

[10]   See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(c) Report and Budget Variance Report as of June 30, 2017*, dated July 21, 2017 [ECF No. 13994].

CONFIDENTIAL

GUC_0001657

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

24.    After this first wave of recalls, New GM issued five additional recalls in June, July and September of 2014 concerning defective ignition switches affecting over 10 million vehicles, NHTSA Recall Numbers 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540.

25.    New GM issued a multitude of other recalls for safety defects throughout 2014. These included a recall issued in March pertaining to approximately 1.2 million vehicles with defective side airbags, NHTSA Recall Number 14V-118, and another recall issued in March pertaining to over 1.3 million vehicles with defective power steering, NHTSA Recall Number 14V-153.

26.    After the issuance of these recalls, owners and lessees of defective Old GM and New GM vehicles filed lawsuits against New GM, which New GM sought to enjoin by filing motions to enforce the Sale Order in the Bankruptcy Court.[11]    To resolve these motions, the Bankruptcy Court first identified four threshold issues (the "**2014 Threshold Issues**") to be determined.[12]    These issues included whether any of the claims in these actions were claims against Old GM and, if so, whether such claims should "nevertheless be disallowed/dismissed on grounds of equitable mootness . . . ." Id.

---

[11]    See *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [ECF No. 12620] (the "**Ignition Switch Plaintiffs Motion to Enforce**"); *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated Aug. 1, 2014 [ECF No. 12807] (the "**Ignition Switch Pre-Closing Accident Plaintiffs Motion to Enforce**"), *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated Aug. 1, 2014 [ECF No. 12808] (the "**Non-Ignition Switch Plaintiffs Motion to Enforce**");

[12]    See *Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14-01929*, dated July 11, 2014 [ECF No. 12770].

CONFIDENTIAL

GUC_0001658

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**BR & GP COMMENTS 8/11/17**

27.    In its April 2015 Decision on the 2014 Threshold Issues, the Bankruptcy Court held that the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs were known creditors who did not receive constitutionally adequate notice of the Sale or Bar Date.

28.    The Bankruptcy Court further held that while "late claims filed by the Plaintiffs might still be allowed, assets transferred to the GUC Trust under the Plan could not now be tapped to pay them" under the doctrine of equitable mootness. In re Motors Liquidation Co., 529 B.R. at 529; see also June 2015 Judgment ¶ 6.  On direct appeal, the Second Circuit vacated this equitable mootness ruling as an advisory opinion. See Elliott, 829 F.3d at 168-69.

29.    The Non-Ignition Switch Plaintiffs Motion to Enforce was deferred pending resolution of the Ignition Switch Plaintiffs' and Ignition Switch Pre-Closing Accident Plaintiffs' Motions to Enforce. See In re Motors Liquidation Co., 529 B.R. at 523.  It has not yet been determined whether any Non-Ignition Switch Plaintiffs or Non-Ignition Switch Pre-Closing Accident Plaintiffs suffered a due process violation in connection with the Bar Date.

**III.    Developments In The Bankruptcy Court Following The Second Circuit Opinion.**

30.    On remand from the Second Circuit's opinion vacating the equitable mootness ruling, the Bankruptcy Court issued an order identifying initial issues to be addressed (the "**2016 Threshold Issues**").  Relevant here is the issue of whether "the Ignition Switch Plaintiffs and/or Non-Ignition Switch Plaintiffs satisfy the requirements for authorization to file late proof(s) of claim against the GUC Trust and/or are such claims equitably moot ('**Late Proof of Claim Issue**')."[13]

---

[13]    *Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against General Motors LLC ("New GM") that Involve Vehicles Manufactured by General Motors Corporation ("Old GM"),* dated Dec. 13, 2016 [ECF No. 13802], at 2-3 (emphasis added).

9

31.    The procedures in the Order to Show Cause for resolution of the Late Proof of
Claim Issue permitted Plaintiffs to file motions seeking authority to file late claims ("**Late
Claims Motions**"). See Order to Show Cause at 5 ¶ 1. No additional issues (such as class
certification, discovery, or the merits of a late proof of claim) would be addressed in these
motions. See id. In addition, the procedures provided that briefing and adjudication of any Late
Claims Motions filed by Non-Ignition Switch Plaintiffs would be stayed pending resolution of
the other 2016 Threshold Issues. See id. at 5 ¶ 2.

32.    In accordance with the Order to Show Cause, on December 22, 2016, the Ignition
Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, and certain Ignition Switch Pre-Closing
Accident Plaintiffs filed Late Claims Motions.[14] The motions attached proposed proofs of claim,
including proposed class proofs of claim asserted on behalf of purported class representatives for
Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs, and 175 individual proofs of claim
on behalf of certain Ignition Switch Pre-Closing Accident Plaintiffs. See id. Certain other
Plaintiffs subsequently filed joinders to the Late Claims Motions pursuant to the terms of the
Order to Show Cause.

33.    Thereafter, in connection with the Ignition Switch Plaintiffs' and Ignition Switch
Pre-Closing Accident Plaintiffs' Late Claims Motions, the Parties participated in two status
conferences before the Bankruptcy Court, engaged in preliminary rounds of discovery, and filed
briefs addressing two preliminary issues raised in the Late Claims Motion: (i) whether relief can
be granted absent a showing of excusable neglect under the Pioneer factors; and (ii) the

---

[14]    See *Motion for an Order Granting Authority to File Late Class Proofs of Claim*, dated Dec. 22, 2016 [ECF No.
13806] (the "**Economic Loss Late Claim Motion**"); *Omnibus Motion by Certain Ignition Switch Pre-Closing
Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated
Dec. 22, 2016 [ECF No. 13807].

CONFIDENTIAL

GUC_0001660

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

applicability of any purported agreements with the GUC Trust or other tolling arrangements to toll timeliness objections (the "**Initial Late Claims Motions Issues**").[15] Subsequent to such briefing, certain Plaintiffs who had not previously appeared before the Bankruptcy Court filed motions seeking authority to file late proofs of claim.

## IV.    Plaintiffs' Claims Against Old GM.

34.    The Proposed Class Claims allege that Old GM knew about the Ignition Switch Defect, other defects in ignition switches, defects in side airbags, and defects in power steering for years prior to the Bar Date.[16] The Proposed Class Claims further allege that Old GM concealed the existence of these defects, causing Plaintiffs to overpay for defective vehicles and bear the costs of repairs while Old GM reaped the benefit of selling defective vehicles at inflated prices and avoiding the costs of a recall.[17]

35.    Based on these allegations, the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs assert claims against the Old GM estate under the laws of each of the 50 states and the District of Columbia for: (i) fraudulent concealment; (ii) unjust enrichment; (iii) consumer protection claims; (iv) breach of the implied warranty of merchantability; and (v) negligence.[18]

---

[15]    See *Order Establishing, Inter Alia, Briefing Schedule for Certain issues Arising from Late Claim Motions Filed by Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Certain Ignition Switch Pre-Closing Accident Plaintiffs*, dated Mar. 2, 2017 [ECF No. 13869]; *Opening Brief by General Motors LLC with Respect to Initial Late Claim Motions Issues*, dated Mar. 6, 2017 [ECF No. 13871]; *The Ignition Switch Plaintiffs' Brief on the Initial Late Claim Motions Issues*, dated Mar. 6, 2017 [ECF No. 13872]; *Opening Brief of GUC Trust Administrator and Participating Unitholders on the Applicability of Pioneer and Tolling to Plaintiffs' Motions to File Late Claims*, dated Mar. 6, 2017 [ECF No. 13873]; *Brief on Applicability of Pioneer and Tolling Issues in Connection with Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Mar. 6, 2017 [ECF No. 13874].

[16]    See Exhibit A to the Economic Loss Late Claim Motion (the "**Proposed Ignition Switch Class Claim**"), ¶¶ 9-258; Exhibit B to the Economic Loss Late Claim Motion (the "**Proposed Non-Ignition Switch Class Claim**"), ¶¶ 9-146.

[17]    See, e.g., Proposed Ignition Switch Class Claim ¶ 332; Proposed Non-Ignition Switch Class Claim ¶ 249.

[18]    See Proposed Ignition Switch Class Claim ¶¶ 316-418; Proposed Non-Ignition Switch Class Claim ¶¶ 233-337.

11

GUC_0001661

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

36.     In turn, the Ignition Switch Pre-Closing Accident Plaintiffs assert personal injury and wrongful death claims arising from accidents they assert were caused by the Ignition Switch Defect.[19]

37.     For over three years, New GM has consistently taken the position that any such claims are properly asserted against the GUC Trust and not against New GM.[20]

38.     Subsequent to filing the Late Claims Motions, the Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs and certain Pre-Closing Accident Plaintiffs provided the GUC Trust with materials and expert reports describing in detail the alleged viability of the asserted claims, the alleged violation of due process rights in connection with the Bar Date and the alleged amount of damages (the "**Proffered Evidence**").[21]

39.     The Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs provided a proffer of evidence laying out the factual background for their claims and the amount of damages alleged.  In addition, they provided a report by Stephen Boedeker, an expert on surveys and statistical sampling, analyzing the amount of alleged damages for the Ignition Switch Plaintiffs' and certain Non-Ignition Switch Plaintiffs' claims based on a conjoint analysis conducted by Mr. Boedeker and Berkeley Research Group.

---

[19]   See, e.g., *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Dec. 22, 2016 [ECF No. 13807].

[20]   The record is replete with attempts by New GM to saddle the Old GM estate with these potentially massive claims.  "To the extent Plaintiffs can prove that they are entitled to any relief, the appropriate remedy is to permit them to seek allowance of an unsecured claim against the Old GM bankruptcy estate."  Dkt. 12981 (New GM's 2014 Threshold Issues Br.) at 53; "To the extent they had any claim, it was against Old GM and they retained that claim after the 363 Sale."  Id. at 36; "Every one of their claims, the economic loss plaintiffs' claims, is a claim that's assertable against Old GM as it relates to an Old GM vehicle."  Hr'g Tr. Feb. 17, 2015 at 59:17-19 (New GM counsel Arthur Steinberg).

[21]   The Proffered Evidence is attached hereto as **Exhibit B**, **Exhibit C**, and **Exhibit D**.

CONFIDENTIAL                                                                                    GUC_0001662

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

40.    The Signatory Plaintiffs will show at a hearing on the Motion that conjoint analysis is a set of econometric and statistical techniques developed to study consumer preferences and is widely used as a market research tool.  In a conjoint analysis, study participants review a set of products with different attributes (such as a vehicle shown in different colors) and choose which product they would prefer to purchase.  The collected data can be used to determine market preferences and the value consumers place on particular attributes of a product.  Here, the alleged amount of damages for economic loss claims was determined by using a conjoint analysis to evaluate the difference in value that consumers placed on an Old GM vehicle without a defect as compared to an identical vehicle with a defect.

41.    Certain Pre-Closing Accident Plaintiffs provided materials describing the personal injury and wrongful death claims of certain plaintiffs and demonstrating the alleged value of these claims based on exemplar verdict amounts.  The valuation of damages was assessed and approved by W. Mark Lanier, an experienced trial attorney recognized as a leader in the field.  In addition, these Pre-Closing Accident Plaintiffs also provided an expert report of Dr. Keith Leffler in which he valued these plaintiffs' claims based on a conjoint analysis and data regarding market preferences and the value consumers place on the risk of being injured or killed in a vehicle.

42.    The valuation of these plaintiffs' asserted damages in the Proffered Evidence is well in excess of the amount necessary to trigger New GM's obligation to issue the maximum amount of Adjustment Shares under the AMSPA.  The GUC Trust recognizes that it may, should it choose, contest the level of damages.  There is no guarantee that the GUC Trust would prevail

13

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**BR & GP COMMENTS 8/11/17**

and reduce or limit the damages.[22]  After reviewing the Proffered Evidence and considering the

benefits of the Settlement as a whole to the Unitholders to whom it owes a fiduciary duty, the

GUC Trust recognizes that there is a risk that, if such claims are allowed, the aggregate general

unsecured claims (including already allowed claims) could well exceed $42 billion, and thus has

agreed to fully support entry of the Claims Estimate Order as part of the Settlement that the GUC

Trust believes is within the range of reasonableness.

### V.    The Settlement Agreement.

43.    Following the filing of the Late Claims Motions, the Parties engaged in extensive

negotiations to resolve the numerous complex issues raised by Plaintiffs' claims against the Old

GM estate and the assets held by the GUC Trust.[23]

44.    After good faith, arm's-length negotiations, the Parties entered into the Settlement

Agreement resolving the Late Claims Motions (including the Initial Late Claim Motions Issues),

---

[22]  For example, the Proffered Evidence provided by the Pre-Closing Accident Plaintiffs contains an estimate of punitive damages, which the GUC Trust believes would be disallowed in its entirety in a claims objection proceeding.  In addition, the Proffered Evidence does not identify which, if any, economic loss Plaintiffs who purchased their vehicles pre-Sale sold those vehicles prior to New GM's 2014 recalls.  There is an ongoing dispute about whether any economic loss Plaintiffs who sold their vehicles before those recalls suffered any cognizable economic loss.  See Memorandum Opinion and Order Regarding Plaintiffs' Motion for Reconsideration and/or Clarification of the Court's Order Dismissing the Claims of "Pre-Recall Plaintiffs", In re Gen. Motors LLC Ignition Switch Litig., Case Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF) (S.D.N.Y. Aug. 9, 2017).  Nonetheless, even discounting the damages calculations in the Proffered Evidence to account for the absence of punitive damages and economic loss Plaintiffs who sold their vehicles before the recalls, Plaintiffs' asserted damages are well in excess of the amount necessary to trigger New GM's obligation to issue the maximum amount of Adjustment Shares under the AMSPA.

[23]  See Joint Declaration of Steve W. Berman and Elizabeth J. Cabraser in Joint Motion Pursuant to Bankruptcy Code Sections 105, 363, 502(c) and 1142 and Bankruptcy Rules 3020 and 9019 to Approve the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust, and to Estimate the Plaintiffs' Aggregate Allowed General Unsecured Claims Against the Debtors (the "**Co-Lead Counsel Decl.**") ¶ 5; [Hilliard Decl.]; [Norman Decl.]; [GUC Trust Decl.].

CONFIDENTIAL

the Late Proof of Claim Issue, the allowance of Plaintiffs' claims, and Plaintiffs' rights to GUC

Trust Assets. The key terms of the Settlement Agreement are as follows:[24]

a.    The GUC Trust agrees to pay the reasonable costs and expense for Court-approved notice of the Motion in an amount not to exceed $6 million. The Signatory Plaintiffs agree to pay any amounts in excess of $6 million.

b.    The Settlement Agreement becomes effective on the date the order approving the Settlement pursuant to Bankruptcy Rule 9019 becomes a Final Order (the "**Settlement Effective Date**"), provided, however, that from and after the date the Settlement Order is entered by the Bankruptcy Court, the GUC Trust may waive the requirement that the Settlement Order be a Final Order.

c.    Within five (5) business days of the Settlement Effective Date, the GUC Trust will irrevocably pay $15,000,000 (the "**Settlement Amount**") into a trust, fund or other vehicle (the "**Settlement Fund**") for the exclusive benefit of Plaintiffs. All Unitholders, all defendants in the Term Loan Avoidance Action, and all holders of Allowed General Unsecured Claims, other than the Plaintiffs, will be deemed to irrevocably waive and release any and all rights to the Settlement Amount (the "**GUC Waiver Provision**").

d.    Contemporaneously with payment of the Settlement Amount, the Plaintiffs will be deemed to irrevocably waive and release all claims against the GUC Trust, including a release of any rights to prior distributions of or current GUC Trust Assets and any rights to distributions by the Motors Liquidation Company Avoidance Action Trust (the "**Waiver Provision**"). For the avoidance of doubt, the Settlement Agreement and Settlement Order define "Plaintiffs" to include all persons who now have, or in the future could have, claims against the Old GM estate related to any of the recalls, such that the Waiver Provision shall be applicable to all such parties whether or not they have asserted any claims against the Old GM estate or the GUC Trust to date. However, being defined as a Plaintiff does not assure any party that he, she, or it will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.

e.    In light of the benefits of the Settlement and after the GUC Trust's review of the Proffered Evidence, the GUC Trust agrees to seek a Claims Estimate Order: (i) finding that the allowable amount of Plaintiffs' claims against Old GM and/or the GUC Trust, when combined with all of the other Allowed General Unsecured Claims against the Old GM bankruptcy estate, equals or exceeds

---

[24]    This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement. To the extent that there are any inconsistencies between the description of the Settlement Agreement contained in the Motion and the terms and provisions of the Settlement Agreement, the Settlement Agreement shall control.

CONFIDENTIAL                    GUC_0001665

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**BR & GP COMMENTS 8/11/17**

$42,000,000,000, thus triggering the maximum amount of Adjustment Shares; and (ii) directing that the Adjustment Shares, or the value of the Adjustment Shares, be promptly delivered to the Settlement Fund. Certain Pre-Closing Accident Plaintiffs consent to estimation of their personal injury and wrongful death claims by this Court solely for the purposes of determining the aggregate Allowed General Unsecured Claims for a Claims Estimate Order.

f.     Contemporaneously with payment of the Settlement Amount, all Unitholders, all defendants in the Term Loan Avoidance Action, and all holders of Allowed General Unsecured Claims, other than the Plaintiffs, will be deemed to irrevocably waive and release any and all rights to the Adjustment Shares, provided that such waiver and release shall not become operative unless and until the Bankruptcy Court enters the Claims Estimate Order (the "**Adjustment Shares Waiver Provision**").

g.     Subject to notice and an opportunity for Plaintiffs to object, the Signatory Plaintiffs will determine the overall allocation of the value of the Settlement Fund between economic loss claims and personal injury/wrongful death claims, and the eligibility and criteria for payment. Notice of the proposed allocation and proposed eligibility and criteria for payment will be posted on a settlement website, along with information about the hearing date and how and when to assert any objections.

h.     Nothing in the Settlement Agreement is intended to waive any claims against New GM or to be an election of remedies against New GM; nor does the Settlement Agreement or any payments made in connection therewith represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full from every available source; provided, however, that in no event shall any Plaintiff be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares. Except as mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any claims that any Plaintiff may have against New GM or constitute an election of remedies by any Plaintiff, and neither the Settlement Amount nor the Adjustment Shares (nor any distribution thereof to any Plaintiff) shall represent full and final satisfaction of any claim that any Plaintiff may have against New GM, all of which are expressly reserved. The Bankruptcy Court's estimate of the aggregate Allowed General Unsecured Claims in the Claims Estimate Order shall not operate as a cap on any of the claims of any of the Plaintiffs against New GM.

16

GUC_0001666

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

## RELIEF REQUESTED

45.    By this Motion, the Parties respectfully request that this Court enter orders approving the Settlement Agreement and claims estimation substantially in the forms attached to this Motion as **Exhibit E** and **Exhibit F**.

## BASIS FOR RELIEF REQUESTED

I.    **The Court Should Approve The Settlement Agreement Pursuant To Bankruptcy Rule 9019.**

46.    Bankruptcy Rule 9019(a) provides, in part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This Court also has authority to approve a settlement under Bankruptcy Code Section 105(a), which empowers it to issue any order that is "necessary or appropriate." 11 U.S.C. § 105(a).

47.    The authority to approve a compromise or settlement is within the sound discretion of the Court. See Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972). The Court should exercise its discretion "in light of the general public policy favoring settlements." In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (citation omitted); see also Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact, encouraged . . . ." (citation omitted)).

48.    When exercising its discretion, the Court must determine whether the settlement is fair and equitable, reasonable, and in the best interests of the estate. See, e.g., Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994); In re Purofied Down Prods. Corp., 150 B.R. 519, 523 (S.D.N.Y. 1993). Where "the integrity of the negotiation process is preserved, a strong

17

GUC_0001667

initial presumption of fairness attaches to the proposed settlement . . . ." In re Hibbard, 217 B.R. at 46.

49.   The Court need not decide the numerous issues of law and fact raised in the underlying dispute, "but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" In re Adelphia Commn'cs Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (quoting In re W.T. Grant, Co., 699 F.2d 599, 608 (2d Cir. 1983)); see also Purofied, 150 B.R. at 522 ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying [dispute] . . . .").

50.   The Court evaluates whether the Settlement Agreement is fair and equitable based on "the probabilities of ultimate success should the claim be litigated," and "an educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

51.   Courts in this jurisdiction consider the following Iridium factors in determining whether approval of a settlement is warranted:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

18

GUC_0001668

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478

F.3d 452, 462 (2d Cir. 2007) (citations omitted).

52.    The Settlement Agreement falls within the range of reasonableness and satisfies

the Iridium factors as set forth below.    Thus, the Settlement Agreement should be approved

under Bankruptcy Rule 9019.

### A.    The Settlement's Benefits Outweigh The Likelihood Of Success In Protracted Litigation Over Numerous, Complex Issues.

53.    The first two Iridium factors—(1) the balance between the litigation's likelihood

of success and the settlement's benefits; and (2) the likelihood of complex and protracted

litigation—are easily met.    As detailed below, continued litigation over Plaintiffs' claims raises

significant, complex issues, has an uncertain outcome, and would be costly and time consuming.

The benefits of near-term, certain resolution are clear.

### 1.    Litigation Over Plaintiffs' Claims Raises Numerous Complex Issues.

54.    One complex, contentious issue raised by the litigation over Plaintiffs' claims is

whether the Court should grant Plaintiffs authority to file late claims as permitted by the *Order

Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy

Code for an Order Disallowing Certain Late Filed Claims* [ECF No. 11394] (the "**Late Filed

Claims Order**").    See Late Filed Claims Order at 1-2.

55.    As an initial matter, there is a dispute over the standard for obtaining leave to file

late claims.    Certain Plaintiffs have argued that creditors may assert late claims based solely on a

showing that they have suffered a due process violation related to the bar date.[25]    The GUC Trust

---

[25]    See, e.g., *The Ignition Switch Plaintiffs' Brief on the Initial Late Claim Motions Issues*, dated Mar. 6, 2017
[ECF No. 13872]; *Brief on Applicability of Pioneer and Tolling Issues in Connection with Omnibus Motion by
Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal
Injuries and Wrongful Deaths*, dated Mar. 6, 2017 [ECF No. 13874].

19

GUC_0001669

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

has taken the position that a demonstration of excusable neglect under the Pioneer factors is required regardless of a due process violation.[26]

56.    Then, there is a dispute whether leave should be granted under the appropriate standard. Most notably, in the April 2015 Decision, the Bankruptcy Court stated that the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs suffered a due process violation when they failed to receive constitutionally adequate notice of the Bar Date, and that leave to file late claims was the "obvious" remedy for this violation. See In re Motors Liquidation Co., 529 B.R. at 573-74, 583. The Plaintiffs assert that this statement is a binding ruling that is no longer subject to appeal, the GUC Trust asserts it is merely nonbinding *dicta* that the Second Circuit implicitly found was an advisory opinion.

57.    The Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs also assert that they can meet the Pioneer factors for demonstrating excusable neglect. Of the four Pioneer factors, the one given the most weight is the reason for the delay in filing claims, including whether the delay was in the reasonable control of the movant. See In re Residential Capital, LLC, Case No. 12-12020 (MG), 2015 WL 515387, at *5 (Bankr. S.D.N.Y. Feb. 6, 2015). The Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs will argue that a debtor's failure to provide actual notice to a known creditor is evidence that any delay was not in control of the creditor. The GUC Trust, in turn, will argue that the delay here is attributable to Plaintiffs' voluntary strategic decision to pursue New GM and not the GUC Trust.

58.    Although Non-Ignition Switch Plaintiffs and Non-Ignition Switch Pre-Closing Accident Plaintiffs have not yet demonstrated a due process violation, many of these plaintiffs

---

[26]    See *Opening Brief of GUC Trust Administrator and Participating Unitholders on the Applicability of Pioneer and Tolling to Plaintiffs' Motions to File Late Claims*, dated Mar. 6, 2017 [ECF No. 13873].

CONFIDENTIAL

GUC_0001670

allege that their claims are substantially similar to the Ignition Switch Defect—defects that involve the same condition (low torque switches that move out of the "run" position) and have the same effects (loss of power to steering, brakes, and airbags). The Plaintiffs will argue that these plaintiffs can demonstrate a violation of their due process rights in connection with the Bar Date.

59.    Further, the Plaintiffs will argue that excusable neglect can exist in the absence of a due process violation. For example, Plaintiffs have asserted that excusable neglect can be found where the debtors failed to comply with bankruptcy procedures in providing notice of a bar date and where a claimant, through no fault of its own, was unaware of its claim prior to the bar date. See In re Arts de Provinces de France, Inc., 153 B.R. 144, 147 (Bankr. S.D.N.Y. 1993); In re PT-1 Commc'ns, Inc., 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003). This issue, too, would have to be litigated.

60.    Another complex issue is whether the doctrine of equitable mootness is applicable to bar Plaintiffs' claims. See In re Chateaugay Corp., 10 F.3d 944, 952-53 (2d Cir. 1993).

61.    In the April 2015 Decision, the Bankruptcy Court applied the five Chateaugay factors[27] and determined that if the Ignition Switch Plaintiffs' or Ignition Switch Pre-Closing Accident Plaintiffs' late claims were allowed, GUC Trust Assets could not be tapped to pay them under the doctrine of equitable mootness. See In re Motors Liquidation Co., 529 B.R. at 598.

---

[27]    These five factors are: (i) the court can still order some effective relief; (ii) such relief will not affect "the re-emergence of the debtor as a revitalized corporate entity"; (iii) such relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and "create an unmanageable, uncontrollable situation for the Bankruptcy Court"; (iv) the "parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings;" and (v) the appellant "pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." In re Chateaugay Corp., 10 F.3d at 952-53.

CONFIDENTIAL

GUC_0001671

The Bankruptcy Court found, *inter alia*, that any relief would "knock the props out" from the transactions under which Unitholders acquired their units. See id. at 587-88, 592.

62.    On appeal, the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs argued that the Bankruptcy Court erred because, *inter alia*, effective relief could be fashioned without disturbing any transactions or having an adverse impact on Unitholders by providing Plaintiffs with exclusive access to any Adjustment Shares that may be issued under the AMSPA.[28]  Plaintiffs will argue that where any relief is available, even partial relief, equitable mootness should not be applied. See, e.g., Chateaugay, 10 F.3d at 954.  In addition, the Ignition Switch Plaintiffs argued that equitable mootness was only applicable in the context of bankruptcy appeals.[29]

63.    The Second Circuit vacated the Bankruptcy Court's equitable mootness ruling as advisory, neither affirming nor reversing that decision.  The Second Circuit pointed out that all of the Circuit's equitable mootness cases to-date had involved an appellate court applying the doctrine in the first instance. See Elliott, 829 F.3d at 167 n.30.  However, the Second Circuit specified that it was not resolving whether it is appropriate for a bankruptcy court, as opposed to an appellate court, to apply the equitable mootness doctrine. See id.

64.    Additional complex issues would certainly arise from continued litigation of Plaintiffs' claims.  The Bankruptcy Court would need to decide whether class certification for the economic loss Plaintiffs' proposed class proofs of claims would be appropriate.  In addition,

---

[28]  See Br. for Appellant Ignition Switch Plaintiffs, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Nov. 16, 2015) (ECF No. 235), 49-52; Br. for Ignition Switch Pre-Closing Accident Plaintiffs, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Nov. 16, 2015) (ECF No. 183), 4, 52 n.18 (incorporating the arguments on the application of equitable mootness in the Ignition Switch Plaintiffs' brief).

[29]  See Response and Reply Br. for Appellant-Cross-Appellee Ignition Switch Plaintiffs, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Feb. 1, 2016) (ECF No. 315), at 40-43.

22

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

the GUC Trust could raise objections to allowance of these class claims, as well as to the separate proofs of claim filed by Ignition Switch Pre-Closing Accident Plaintiffs. This could lead to the need to resolve issues under the varied laws of the fifty states and the District of Columbia.

65.    Plaintiffs have also asserted that litigation over similar claims asserted by economic loss plaintiffs against New GM in the MDL Court demonstrates the viability of many of Plaintiffs' claims. For example, in the MDL Court, consumer fraud, common law fraud, and implied warranty claims considered under the laws of sixteen states largely survived partial motions to dismiss.[30] In addition, the MDL Court held that plaintiffs could assert injuries under the "benefit-of-the-bargain defect theory," *i.e.*, amounts plaintiffs overpaid at the time of sale for a defective vehicle, and injuries for lost time, to the extent such damages are available under state law. See FACC Opinion at 13-14, 18; TACC Opinion at 24. Many jurisdictions recognize damages under the benefit-of-the-bargain theory. See TACC Opinion at 24.

66.    In sum, while the GUC Trust believes that it has meritorious defenses to the claims of all Plaintiffs, the GUC Trust's likelihood of success in the resolution of the numerous, complex issues raised by the litigation over Plaintiffs' claims is uncertain.

### 2. The Terms Of The Settlement Agreement Weigh The Risks Of Continued Litigation Against The Benefits Of A Consensual Resolution Of Plaintiffs' Claims.

67.    Litigation of these complex issues has been ongoing for years, consuming large sums of money and countless hours of labor. In the absence of settlement, there is a high

---

[30]    See Opinion and Order Regarding New GM's Partial Motion to Dismiss the Forth Amended Consolidated Complaint, In re General Motors LLC Ignition Switch Litig., Case No. 14-MD-2543 (JMF) (S.D.N.Y. June 30, 2017), 23 (the "**FACC Opinion**"); Opinion and Order Regarding New GM's Partial Motion to Dismiss the Third Amended Consolidated Complaint, In re General Motors LLC Ignition Switch Litig., Case No. 14-MD-2543 (JMF) (S.D.N.Y. July 15, 2016), 5-6 (the "**TACC Opinion**").

23

likelihood of even more expensive, protracted and contentious litigation that will consume significant estate funds and expose the estate to significant risks and uncertainty. In addition, resolution of these issues may require the added time and expense of discovery. For example, the Pioneer analysis is fact intensive and, to date, only limited discovery, restricted to a proposed class representative of the Ignition Switch Plaintiffs and certain Ignition Switch Pre-Closing Accident Plaintiffs, has occurred on this issue.

68.    By comparison, settling the litigation provides the Parties with greater certainty and eliminates the significant risk, cost and delay of litigation. In addition, the Settlement Agreement provides several benefits beyond avoiding continued litigation.

69.    First, the Parties' determination to seek a Claims Estimate Order allowing and estimating Plaintiffs' claims in an amount, when combined with all of the other Allowed General Unsecured Claims against the Old GM estate, that equals or exceeds $42 billion, provides an efficient and reasonable resolution of the allowable amount of Plaintiffs' claims. The reasonableness of this amount is supported by the Proffered Evidence.

70.    Under the Settlement, any Adjustment Shares issued by New GM under this Claims Estimate Order will be for the exclusive benefit of Plaintiffs. Based on the amount of allowed and disputed unsecured claims against Old GM, New GM's obligation to issue these shares would not be triggered absent allowance of Plaintiffs' claims.[31] In other words, absent the Plaintiffs' claims, the Unitholders have no expectation to receive Adjustment Shares. Thus, this provision potentially paves the way for Plaintiffs to obtain a recovery on their claims without disturbing other creditors' past or future recoveries.

---

[31]    See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(c) Report and Budget Variance Report as of June 30, 2017*, dated July 21, 2017 [ECF No. 13994].

CONFIDENTIAL

GUC_0001674

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

71.    Second, the Settlement removes a major impediment to winding down the Old GM estate.    The resolution of Plaintiffs' claims and waiver of certain rights and claims eliminates the likelihood of complex and protracted litigation, prevents delay in distributing remaining GUC Trust Assets and protects Unitholders from the risk of claw-back or recapture of prior distributions.

72.    The terms of the Settlement Agreement reflect a reasonable assessment of the substantial time and expense of litigating Plaintiffs' claims, balanced against the benefits of more near term, efficient and certain resolution of the allowable amount of Plaintiffs' claims and sources of recovery.    The benefits of the Settlement in the near term outweigh the likelihood of long-term success in protracted litigation of complex issues.

**B.    The Settlement Agreement Is Beneficial To
Creditors And Supported By Interested Parties.**

73.    With respect to the third and fourth Iridium factors—the paramount interests of the creditors and whether other interested parties support the settlement—prolonging the litigation will increase costs and decrease the amount of GUC Trust Assets available to satisfy creditors.    Approving the Settlement Agreement, on the other hand, avoids the significant expense and uncertainty associated with continued litigation, and maximizes and expedites distributions to current GUC Trust beneficiaries.    The release of Plaintiffs' rights and claims with respect to the GUC Trust's prior distributions and current GUC Trust Assets allows the GUC Trust to complete the orderly wind-down of the Old GM estate.

74.    Moreover, providing Plaintiffs with the exclusive right to proceed against a settlement fund containing the Settlement Amount and the Adjustment Shares potentially opens an avenue for Plaintiffs to recover on their claims against the GUC Trust without disturbing

25

GUC_0001675

recovery expectations of other creditors or Unitholders. Plaintiffs' rights concerning the Adjustment Shares are protected because notice of any agreement by the Signatory Plaintiffs on proposed criteria to assert a claim against the Settlement Fund and a proposed methodology of allocation of the Settlement Fund between economic loss claims and personal injury/wrongful death claims will be provided to Plaintiffs, who will be provided with an opportunity to object.

75.    Not surprisingly, the key interested parties—the GUC Trust (who has sole authority under the Late Filed Claims Order to consent to late filed claims and is the only party under the Plan provided with standing to object to the allowance of claims), Signatory Plaintiffs and the Participating Unitholders—all support the Settlement Agreement. Accordingly, for all of the reasons set forth above, the Settlement easily meets the _Iridium_ Factors and allows the GUC Trust to implement the express purpose of the GUC Trust Agreement. GUC Trust Agreement § 2.2 (stating that the "sole purpose of the GUC Trust is to implement the Plan on behalf of, and for the benefit of the GUC Trust Beneficiaries"); GUC Trust Agreement § 4.2 (stating that "in no event shall the GUC Trust Administrator unduly prolong the duration of the GUC Trust, and the GUC Trust Administrator shall, in the exercise of its reasonable business judgment and in the interests of all GUC Trust Beneficiaries, at all times endeavor to terminate the GUC Trust as soon as practicable in accordance with the purposes and provisions of this Trust Agreement and the Plan.").

C.    **The Settlement Agreement Satisfies The Remaining _Iridium_ Factors.**

76.    With respect to the sixth factor, "the nature and breadth of releases to be obtained by officers and directors," in exchange for the payment of $15 million, the Settlement Agreement releases any and all rights, claims and causes of action that any Plaintiff may assert against the

26

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

GUC Trust, the GUC Trust Administrator, the GUC Trust Assets, the Avoidance Action Trust and Unitholders.

77.    With respect to the fifth and seventh Iridium factors, competent and experienced counsel to the Parties who have been litigating these issues for years actively engaged in arms' length, good faith negotiations to formulate the Settlement Agreement.[32]    The Parties, having considered the uncertainties, delay and cost that would be incurred by further litigation, submit that the Settlement Agreement is fair, reasonable and appropriate, and in the best interests of the Parties.

78.    Based on the foregoing, the Settlement Agreement is in the best interests of the estate and its creditors and falls well within the range of reasonableness.  Therefore, entry into and approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019 is warranted and the Settlement Agreement should be approved.[33]

II.    **The Court Should Approve The Parties' Estimation
Of The Aggregate Allowed General Unsecured Claims,
Including Plaintiffs' Claims, As Equal To Or Exceeding $42 Billion.**

79.    As part of the Settlement, the Parties agree to support entry of a Claims Estimate Order providing that the aggregate Allowed General Unsecured Claims, including Plaintiffs' claims, against the Old GM estate equals or exceeds $42 billion.  Pursuant to the terms of the AMSPA, the GUC Trust Agreement and the Side Letter, as well as Bankruptcy Rule 9019 and Bankruptcy Code Sections 105(a) and 502(c), the Parties request that the Court approve the

---

[32]    See Co-Lead Counsel Decl. ¶ 5; [Hilliard Decl.]; [Norman Decl.]; [GUC Trust Decl.].

[33]    In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all their rights and nothing herein shall be deemed or construed as an admission of any fact, liability, stipulation, or waiver, but rather as a statement made in furtherance of settlement discussions.

27

GUC_0001677

Parties' estimation and enter a Claims Estimate Order estimating the aggregate Allowed General

Unsecured Claims at an amount equal to or exceeding $42 billion.

80.    A provision in the Sale Agreement requires New GM to issue Adjustment Shares

to the GUC Trust if and when the aggregate amount of Allowed General Unsecured Claims, as

estimated by the Bankruptcy Court, exceeds $35 billion.  See AMSPA § 3.2(c).  If the estimated

amount equals or exceeds $42 billion, then New GM must issue 30 million shares, the maximum

amount of Adjustment Shares.  See id.

81.    Under the AMSPA, GUC Trust Agreement, and Side Letter, the GUC Trust (and

only the GUC Trust) "may, at any time, seek an Order of the Bankruptcy Court . . . estimating

the aggregate allowed general unsecured claims" against the Old GM estate.  See AMSPA §

3.2(c); GUC Trust Agreement § 2.3(d); Side Letter.[34]

82.    Bankruptcy Code Section 502(c) authorizes the Court to estimate "any contingent

or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay

the administration of the case."  11 U.S.C. § 502(c).  Estimation "provides a means for a

bankruptcy court to achieve reorganization, and/or distributions of claims, without awaiting the

results of [potentially protracted] legal proceedings."  In re Adelphia Bus. Solutions, Inc., 341

B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (citing In re Continental Airlines, Inc., 981 F.2d 1450,

1461 (5th Cir. 1993)); see In re Lionel LLC, No. 04-17324, 2007 WL 2261539, at *2 (Bankr.

S.D.N.Y. Aug. 3, 2007) (noting that, without estimation, lengthy proceedings result in "delayed

distributions, which in turn, greatly devalue the claim of all creditors as they cannot use the

assets until they receive them" (citation omitted)).

---

[34]    In addition, the GUC Trust has the sole, exclusive authority to request that the Bankruptcy Court estimate any
contingent, unliquidated disputed claims pursuant to Bankruptcy Code Section 502(c).  See Plan § 7.3; GUC
Trust Agreement § 5.1(e).

CONFIDENTIAL                                                    GUC_0001678

83.    In fact, "the Code requires estimation of all contingent or unliquidated claims which unduly delay the administration of the case." In re Nat'l Gypsum Co., 139 B.R. 397, 405 (N.D. Tex. 1992) (internal quotes omitted). Even absent a finding of undue delay, it is within a court's sound discretion to estimate a claim. See In re RNI Wind Down Corp., 369 B.R. 174, 191 (Bankr. D. Del. 2007).

84.    Here, it is within the sound discretion of the Court to estimate the aggregate Allowed General Unsecured Claims, including Plaintiffs' claims, as contemplated by the AMSPA, Plan, GUC Trust Agreement and the Settlement Agreement.[35]

85.    Estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim." Bittner v. Borne Chem. Co., 691 F.2d 134, 135 (3d Cir. 1982); see also In re Windsor Plumbing Supply Co., 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994) (advocating use of probabilities in estimation of claims). The Bankruptcy Court has discretion to select the valuation model that best suits the circumstances of the case at hand when estimating the value of claims. See In re Adelphia Commc'ns Corp., 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007); Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co.), 160 B.R. 40, 41 (S.D.N.Y. 1993).

86.    As of March 31, 2017, the total amount of Allowed General Unsecured Claims— exclusive of Plaintiffs' claims—was $31,855,381,054.[36] Thus, if Plaintiffs' claims are allowable in an amount of approximately $3.145 billion, then New GM's obligation to issue Adjustment Shares is triggered. If Plaintiffs' claims are allowable in an amount of approximately $10.145

---

[35]    Counsel for certain Pre-Closing Accident Plaintiffs consent to estimation of their personal injury and wrongful death claims by this Court solely for the purposes of determining whether the Allowed General Unsecured Claims in the aggregate exceed $35 billion.

[36]    See Motors Liquidation Company GUC Trust Quarterly Section 6.2(c) Report and Budget Variance Report as of June 30, 2017, dated July 21, 2017 [ECF No. 13994].

CONFIDENTIAL                                                                                      GUC_0001679

billion, then the aggregate Allowed General Unsecured Claims will exceed $42 billion, requiring

the issuance of the maximum amount of Adjustment Shares.

87.    Pursuant to the Settlement Agreement, the claims are being pursued with the

consent of the GUC Trust, which has the sole authority to permit the filing of late claims.  See

Late Filed Claims Order at 1-2.  In addition, the GUC Trust is the only party with standing to

object to the allowance of claims and has the authority to settle, withdraw or otherwise resolve

any objections to disputed claims.  See Plan §§ 7.1(b) ("[T]he GUC Trust Administrator shall

have the exclusive right to object . . . to General Unsecured Claims . . . ."); GUC Trust

Agreement § 5.1(d) ("[T]he GUC Trust Administrator shall have the authority to compromise,

settle, otherwise resolve or withdraw any objections to Disputed General Unsecured Claims

against the Debtors . . . .").  Accordingly, the GUC Trust's decision to seek entry of the Claims

Estimate Order should be upheld by the Court under Bankruptcy Rule 9019 and Bankruptcy

Code Section 502(c).

88.    In the course of negotiations, the GUC Trust was provided with the Proffered

Evidence indicating that the damages for these plaintiffs' claims could exceed $10.15 billion.

Based on the evidence, the expense and delay of litigation, and the benefits of the Settlement as a

whole, the GUC Trust agreed to support an estimate of the allowed amount of Plaintiffs'

Allowed General Unsecured Claims against the Debtors and/or the GUC Trust, when combined

with all of the other Allowed General Unsecured Claims against the Debtors, equal to or

exceeding $42 billion.  Accordingly, the requested Claims Estimate Order is well within the

30

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
BR & GP COMMENTS 8/11/17

range of reasonableness and should be granted under Bankruptcy Rule 9019. See In re Iridium

Operating LLC, 478 F.3d at 462; In re Adelphia Commn'cs Corp., 327 B.R. at 159.[37]

89.    Based on the foregoing, $42 billion is a reasonable estimate of the aggregate

Allowed General Unsecured Claims against the GUC Trust.

## NOTICE

90.    Notice of this Motion has been provided in accordance with the Court-approved

notice procedures. See [Order Approving Notice Procedures]. The Parties submit that no other

or further notice need be provided.

## NO PRIOR REQUEST

No previous application for the relief sought in this Motion has been made to this or any

other Court.

## CONCLUSION

WHEREFORE, the Parties respectfully request that the Court: (i) enter an order

substantially in the form attached hereto as **Exhibit E** approving the Settlement Agreement,

attached hereto as **Exhibit A**, pursuant to Bankruptcy Rule 9019; (ii) enter a Claims Estimate

Order substantially in the form attached hereto as **Exhibit F**, pursuant to Bankruptcy Rule 9019

and Bankruptcy Code Section 502(c); and (iii) grant such other relief as is just and equitable.

---

[37]    Rulings in the MDL Court provide additional support for the viability of Plaintiffs' claims. Similar economic loss claims have been asserted in a consolidated class actions complaint in the MDL. Consumer fraud, common law fraud, and implied warranty claims largely survived partial motions to dismiss. See FACC Opinion at 23; TACC Opinion at 5-6. In addition, the MDL Court recognized that the laws of several jurisdictions permit the assertion of damages under the "benefit-of-the-bargain defect theory," *i.e.*, amounts plaintiffs overpaid at the time of sale for a defective vehicle, and injuries for lost time. See FACC Opinion at 13-14, 18; TACC Opinion at 24.

31

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**BR & GP COMMENTS 8/11/17**

Dated: August [ ], 2017
New York, New York

Respectfully submitted,

*/s/ Draft*
Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*

32

GUC_0001682

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**BR & GP COMMENTS 8/11/17**

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing*
*Accident Plaintiffs Represented By Hilliard*
*Muñoz Gonzales L.L.P. and the Law Offices*
*of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to certain Pre-Closing Accident Plaintiffs*

Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J. HENRY
4715 Fredricksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident Plaintiffs*

Lisa M. Norman (admitted *pro hac vice*)
T. Joshua Judd (admitted *pro hac vice*)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Tel: 713-850-4200
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident Plaintiffs*

33

GUC_0001683

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**BR & GP COMMENTS 8/11/17**

Matthew Williams
Keith R. Martorana
Gabriel Gillett
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
Tel: 212-351-400
mwilliams@gibsondunn.com
kmartorana@gibsondunn.com
ggillett@gibsondunn.com

*Counsel for Wilmington Trust Company, as*
*Administrator and Trustee of the GUC Trust*

34

GUC_0001684

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

**HEARING DATE AND TIME: [ ], 2017 at [ ] (EST)**
**OBJECTION DEADLINE: [ ], 2017 at 4:00 p.m. (EST)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., | : | Case No.: 09-50026 (MG) |
|     f/k/a General Motors Corp., et al., | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------X

**JOINT MOTION PURSUANT TO BANKRUPTCY
CODE SECTIONS 105, 363, 502(C) AND 1142 AND
BANKRUPTCY RULES 3020 AND 9019 TO APPROVE
THE SETTLEMENT AGREEMENT BY AND AMONG THE SIGNATORY
PLAINTIFFS AND THE GUC TRUST, AND TO ESTIMATE THE PLAINTIFFS'
AGGREGATE ALLOWED GENERAL UNSECURED CLAIMS AGAINST THE DEBTORS**

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~BR & ~~ACG~~GP COMMENTS ~~8/8/17~~8/11/17

**TABLE OF CONTENTS**

_____

CONFIDENTIAL

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~BR & ~~AGG~~P COMMENTS ~~8/8/17~~8/11/17

**TABLE OF AUTHORITIES**

GUC_0001687

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGG~~GP COMMENTS ~~8/8/17~~8/11/17

By and through their undersigned counsel, the Ignition Switch Plaintiffs,[1] certain Non-Ignition Switch Plaintiffs,[2] certain Pre-Closing Accident Plaintiffs[3] (collectively, the "**Signatory Plaintiffs**"), and the GUC Trust[4] (together with the Signatory Plaintiffs, the "**Parties**") respectfully submit this *Joint Motion Pursuant to Bankruptcy Code Sections 105, 363, 502(c) and 1142 and Bankruptcy Rules 3020 and 9019 to Approve the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust, and to Estimate the Plaintiffs' Aggregate Allowed General Unsecured Claims Against the Debtors* (the "**Motion**").[5] In support of this Motion, the Parties respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs have sought leave to file late proposed class claims against the GUC Trust seeking relief for economic losses related to Old GM's alleged concealment of safety defects in ignition switches (including the Ignition Switch Defect and similarly defective ignition switches), side airbags, and power steering. Certain Ignition Switch Pre-Closing Accident Plaintiffs have likewise sought leave to

---

[1]    The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047 the "**Ignition Switch Defect**").

[2]    The term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540, 14V-118 and 14V-153.

[3]    The term "**Pre-Closing Accident Plaintiffs**" shall mean those plaintiffs asserting personal injury or wrongful death claims or persons who suffered a personal injury or wrongful death arising from an accident involving an Old GM vehicle that occurred prior to the closing of the Section 363 Sale. The Pre-Closing Accident Plaintiffs are comprised of a subset asserting claims or who suffered an injury or death involving an Old GM vehicle with an Ignition Switch Defect (the "**Ignition Switch Pre-Closing Accident Plaintiffs**"), and a subset asserting claims or who suffered an injury or death involving vehicles with other defects (the "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**"). Collectively, the Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Pre-Closing Accident Plaintiffs are the "**Plaintiffs**."

[4]    The term "**GUC Trust**" shall mean the Motors Liquidation Company GUC Trust.

[5]    Except where otherwise indicated, references to "ECF No. _" are to docket entries in the Bankruptcy Court proceedings: In re Motors Liquidation Co., Bankr. Case No. 09-50026 (MG).

1

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
GDCBR & AGGP COMMENTS 8/8/178/11/17

file late personal injury and wrongful death claims against the GUC Trust related to Old GM vehicles subject to the Recalls.

2.    These efforts implicate numerous complex, disputed issues, including, *inter alia*, whether Plaintiffs should be granted authority to file late proofs of claim (and whether such authority can be granted solely on due process grounds), whether Plaintiffs' asserted claims are equitably moot, whether additional grounds exist to object to Plaintiffs' asserted claims, and the allowable amount of said claims.

3.    Litigation related to these issues has been ongoing for several years, consuming large amounts of time, money and resources, and failing to resolve key disputes between the Parties. For example, in the April 2015 Decision, the Bankruptcy Court ruled that Old GM failed to provide Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs with constitutionally proper notice of the Bar Date.[6]  While the Bankruptcy Court ruled that assets of the GUC Trust could not be tapped to pay any late claims that might be allowed under the doctrine of equitable mootness, the Second Circuit vacated this holding as an advisory opinion—leaving open the question of the applicability of equitable mootness.[7]  In addition, there is an on-going dispute whether an additional showing under the Pioneer factors is required for Plaintiffs to obtain leave to file late claims. Continuation of protracted litigation on these issues will only serve to deplete remaining GUC Trust Assets and subject the Parties to uncertain results.

---

[6]    See In re Motors Liquidation Co., 529 B.R. 510, 573-74, 583 (Bankr. S.D.N.Y. 2015), aff'd in part, rev'd in part, vacated in part sub nom. Elliott v. General Motors LLC (In re Motors Liquidation Co.), 829 F.3d 135 (2d Cir. 2016) (the "**April 2015 Decision**").

[7]    See In re Motors Liquidation Co., 529 B.R. at 529; Elliott, 829 F.3d at 168-69.

2

GUC_0001689

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

4.    The Settlement Agreement resulted from extensive, good faith negotiations between experienced counsel to reasonably resolve these issues in the interest of the estate.

5.    The Settlement Agreement provides for the GUC Trust to pay Plaintiffs $15 million (the "**Settlement Amount**"). In exchange for the Settlement Amount and the promise by the GUC Trust to ~~use its reasonable efforts to~~ support entry of the Claims Estimate Order as set forth below, and following extensive notice designed to reach every potentially affected Plaintiff and an opportunity to object and be heard, upon entry of the Settlement Order all Plaintiffs will be deemed to have waived and released any rights or claims against the GUC Trust, Wilmington Trust Company as trust administrator and trustee of the GUC Trust (the "**GUC Trust Administrator**"), the Motors Liquidation Company Avoidance Action Trust (the "**Avoidance Action Trust**") and holders of beneficial interest in the GUC Trust (the "**Unitholders**"), including a release of any rights to past or present GUC Trust Assets and to distributions by the Avoidance Action Trust. This waiver provides finality and certainty to the GUC Trust and Unitholders (regardless of whether or not the Claims Estimate Order is entered), protects against the risk of claw-back or recapture of prior distributions of GUC Trust Assets and eliminates delay in the wind-down process and distribution of assets.

6.    In addition to the payment of the Settlement Amount, the GUC Trust has agreed to support the entry of an order (the "**Claims Estimate Order**") estimating the amount of Plaintiffs' claims in an amount necessary to trigger New GM's obligation to issue the maximum amount of additional shares of New GM common stock (the "**Adjustment Shares**") under the terms of the Sale Agreement. Upon entry of the Claims Estimate Order, all Adjustment Shares will be placed in a fund for the exclusive benefit of Plaintiffs. The Signatory Plaintiffs will subsequently determine the allocation of the value of the Settlement Amount and the Adjustment

3

GUC_0001690

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGG~~GP COMMENTS ~~8/8/17~~8/11/17

Shares between economic loss claims and personal injury/wrongful death claims and the eligibility and criteria for payment, subject to notice and an opportunity for Plaintiffs to object. Being defined as a Plaintiff does not assure any party that he, she, or it will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.

7.    Unitholders, defendants in the Term Loan Avoidance Action, and holders of Allowed General Unsecured Claims, other than Plaintiffs, waive any rights to the Settlement Amount and the Adjustment Shares.    In this way, the Settlement Agreement provides a streamlined process for allowing Plaintiffs' claims and providing a source of recovery from the Settlement Amount and the Adjustment Shares.    Notably, regardless of whether the Claims Estimate Order is ultimately entered, the waiver and releases set forth in the Settlement will be binding on all parties subject only to approval of the Settlement Order and payment of the Settlement Amount.

8.    The Settlement will massively reduce costs and resources, eliminate uncertain litigation outcomes, and prevent delay in distributions of remaining GUC Trust Assets, without disturbing recovery expectations of other creditors and Unitholders.    In light of the inherent risks and costs associated with litigation, the Settlement Agreement is fair and well within the range of reasonableness.

9.    Accordingly, the Court should approve the Settlement Agreement pursuant to Bankruptcy Rule 9019 as a fair and equitable resolution of the on-going litigation between the Parties.

10.    In addition, the Court should enter the Claims Estimate Order estimating the aggregate Allowed General Unsecured Claims, including Plaintiffs' claims, against the GUC

4

GUC_0001691

Trust in an amount equal to or exceeding $42 billion. The evidence and expert reports proffered by the Signatory Plaintiffs will demonstrate to the Court that the damages for Plaintiffs' claims could well exceed the amount required for this determination. Indeed, after reviewing those reports and considering the benefits provided by the Settlement as a whole, the GUC Trust – the sole entity charged with objecting to and resolving disputed claims in order to maximize recoveries to GUC Trust Beneficiaries pursuant to the Plan – fully supports entry of the Claims Estimate Order. The GUC Trust also believes that the Settlement is in the best interests of the estate and well within the lowest range of reasonableness as mandated by Rule 9019 of the Bankruptcy Code.

## JURISDICTION

11.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

12.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

13.    The statutory predicates for the relief sought in this Motion are Bankruptcy Code Sections 105(a), 363, 502(c) and 1142 and Bankruptcy Rules 3020 and 9019.

## BACKGROUND

**I.    Old GM's Bankruptcy And The Creation Of The GUC Trust.**

14.    On June 1, 2009, General Motors Corporation ("**Old GM**") and certain of its affiliates (collectively, "**Debtors**") filed for chapter 11 bankruptcy with this Court and entered into an agreement to sell substantially of its assets (the "**Sale Agreement**") to NGMCO, Inc. ("**New GM**") in exchange for, *inter alia*, New GM common stock and warrants. See In re Motors Liquidation Co., 529 B.R. at 535.

5

15.    The Sale Agreement was amended on July 5, 2009 to, *inter alia*, add a feature requiring New GM to provide additional New GM common stock in the event that the amount of allowed general unsecured claims against the Old GM estate exceeds a threshold amount. See AMSPA § 3.2(c).[8]  Specifically, the AMSPA provides that if the Bankruptcy Court issues an order finding that the estimated aggregate allowed general unsecured claims against the Old GM estate exceeds $35 billion, then within five business days thereof New GM will issue Adjustment Shares to the GUC Trust.  See id.  If such order estimates the aggregate allowed general unsecured claims at or in excess of $42 billion, New GM must issue 30 million Adjustment Shares, the maximum amount of Adjustment Shares. See id.

16.    On July 5, 2009, the sale was approved by the Bankruptcy Court.  See In re Motors Liquidation Co., 529 B.R. at 146-47.

17.    In September 2009, the Court established November 30, 2009 (the "**Bar Date**") as the deadline for filing proofs of claim against Old GM.  See id. at 535.

18.    On March 29, 2011, the Court entered an order confirming the Plan, which, among other things, authorized the creation of the GUC Trust pursuant to the terms set forth in the GUC Trust Agreement. See id. at 536.

19.    Pursuant to the Plan and GUC Trust Agreement, the GUC Trust was granted exclusive authority to object to the allowance of general unsecured claims, seek estimation of the amount of allowed general unsecured claims, and seek Adjustment Shares from New GM.  See Plan §§ 7.1(b), 7.3; GUC Trust Agreement § 5.1.

---

[8]    See *Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser, dated as of June 26, 2009* (the "**AMSPA**").

CONFIDENTIAL

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDCBR~~ & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

20.    In addition, pursuant to the Plan and a side letter by and between the GUC Trust, the Debtors, New GM, and FTI Consulting (as trust monitor of the GUC Trust) dated September 23, 2011 (the "**Side Letter**"), the GUC Trust is exclusively authorized to seek the issuance of Adjustment Shares under the terms of the AMPSA for satisfaction of Allowed General Unsecured Claims when the GUC Trust determines, in its sole and absolute discretion, that the aggregate Allowed General Unsecured Claims are, in the GUC Trust's estimation, likely to exceed $35 billion. See Side Letter; Plan, Background § E(i); GUC Trust Agreement § 2.3(d).

21.    In February 2012, the Court entered an order providing that any claims filed after entry of the order would be deemed disallowed unless, *inter alia*, the claimant obtained leave of the Court or written consent of the GUC Trust.[9]

22.    As of June 30, 2017, the total amount of Allowed General Unsecured Claims against the Debtors' estate was $31,855,381,054, approximately $3.15 billion below the threshold for triggering the issuance of Adjustment Shares under the AMSPA.[10]

## II.    The Recalls And Subsequent Proceedings In The Bankruptcy Court And Second Circuit.

23.    In February and March 2014, over four years after the Bar Date, New GM publicly disclosed the existence of the Ignition Switch Defect and issued a recall, NHTSA Recall Number 14V-047, impacting approximately 2.1 million vehicles.

---

[9]    See *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims*, dated February 8, 2012 [ECF No. 11394] (the "**Late Filed Claims Order**").

[10]    See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(c) Report and Budget Variance Report as of June 30, 2017*, dated July 21, 2017 [ECF No. 13994].

7

GUC_0001694

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

24.     After this first wave of recalls, New GM issued five additional recalls in June, July and September of 2014 concerning defective ignition switches affecting over 10 million vehicles, NHTSA Recall Numbers 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540.

25.     New GM issued a multitude of other recalls for safety defects throughout 2014. These included a recall issued in March pertaining to approximately 1.2 million vehicles with defective side airbags, NHTSA Recall Number 14V-118, and another recall issued in March pertaining to over 1.3 million vehicles with defective power steering, NHTSA Recall Number 14V-153.

26.     After the issuance of these recalls, owners and lessees of defective Old GM and New GM vehicles filed lawsuits against New GM, which New GM sought to enjoin by filing motions to enforce the Sale Order in the Bankruptcy Court.[11]   To resolve these motions, the Bankruptcy Court first identified four threshold issues (the "**2014 Threshold Issues**") to be determined.[12]   These issues included whether any of the claims in these actions were claims against Old GM and, if so, whether such claims should "nevertheless be disallowed/dismissed on grounds of equitable mootness . . . ." Id.

---

[11]   See *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [ECF No. 12620] (the "**Ignition Switch Plaintiffs Motion to Enforce**"); *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated Aug. 1, 2014 [ECF No. 12807] (the "**Ignition Switch Pre-Closing Accident Plaintiffs Motion to Enforce**"), *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated Aug. 1, 2014 [ECF No. 12808] (the "**Non-Ignition Switch Plaintiffs Motion to Enforce**");

[12]   See *Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14-01929*, dated July 11, 2014 [ECF No. 12770].

CONFIDENTIAL

GUC_0001695

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

27.    In its April 2015 Decision on the 2014 Threshold Issues, the Bankruptcy Court held that the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs were known creditors who did not receive constitutionally adequate notice of the Sale or Bar Date.

28.    The Bankruptcy Court further held that while "late claims filed by the Plaintiffs might still be allowed, assets transferred to the GUC Trust under the Plan could not now be tapped to pay them" under the doctrine of equitable mootness. In re Motors Liquidation Co., 529 B.R. at 529; see also June 2015 Judgment ¶ 6. On direct appeal, the Second Circuit vacated this equitable mootness ruling as an advisory opinion. See Elliott, 829 F.3d at 168-69. ~~The Second Circuit's reasoning also called into question the Bankruptcy Court's authority to make statements regarding due process as to the Bar Date.~~

29.    The Non-Ignition Switch Plaintiffs Motion to Enforce was deferred pending resolution of the Ignition Switch Plaintiffs' and Ignition Switch Pre-Closing Accident Plaintiffs' Motions to Enforce. See In re Motors Liquidation Co., 529 B.R. at 523. It has not yet been determined whether any Non-Ignition Switch Plaintiffs or Non-Ignition Switch Pre-Closing Accident Plaintiffs suffered a due process violation in connection with the Bar Date.

**III.    Developments In The Bankruptcy Court Following The Second Circuit Opinion.**

30.    On remand from the Second Circuit's opinion vacating the equitable mootness ruling, the Bankruptcy Court issued an order identifying initial issues to be addressed (the "**2016 Threshold Issues**"). Relevant here is the issue of whether "the Ignition Switch Plaintiffs and/or Non-Ignition Switch Plaintiffs satisfy the requirements for authorization to file late proof(s) of

9

claim against the GUC Trust and/or are such claims equitably moot ('**Late Proof of Claim Issue**').”[13]

31.    The procedures in the Order to Show Cause for resolution of the Late Proof of Claim Issue permitted Plaintiffs to file motions seeking authority to file late claims (“**Late Claims Motions**”).  See Order to Show Cause at 5 ¶ 1.  No additional issues (such as class certification, discovery, or the merits of a late proof of claim) would be addressed in these motions.  See id.  In addition, the procedures provided that briefing and adjudication of any Late Claims Motions filed by Non-Ignition Switch Plaintiffs would be stayed pending resolution of the other 2016 Threshold Issues.  See id. at 5 ¶ 2.

32.    In accordance with the Order to Show Cause, on December 22, 2016, the Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, and certain Ignition Switch Pre-Closing Accident Plaintiffs filed Late Claims Motions.[14]  The motions attached proposed proofs of claim, including proposed class proofs of claim asserted on behalf of purported class representatives for Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs, and 175 individual proofs of claim on behalf of certain Ignition Switch Pre-Closing Accident Plaintiffs.  See id.  Certain other Plaintiffs subsequently filed joinders to the Late Claims Motions pursuant to the terms of the Order to Show Cause.

33.    Thereafter, in connection with the Ignition Switch Plaintiffs’ and Ignition Switch Pre-Closing Accident Plaintiffs’ Late Claims Motions, the Parties participated in two status

---

[13]    *Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against General Motors LLC (“New GM”) that Involve Vehicles Manufactured by General Motors Corporation (“Old GM”),* dated Dec. 13, 2016 [ECF No. 13802], at 2-3 (emphasis added).

[14]    See *Motion for an Order Granting Authority to File Late Class Proofs of Claim,* dated Dec. 22, 2016 [ECF No. 13806] (the “**Economic Loss Late Claim Motion**”); *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths,* dated Dec. 22, 2016 [ECF No. 13807].

GUC_0001697

conferences before the Bankruptcy Court, engaged in preliminary rounds of discovery, and filed

briefs addressing two preliminary issues raised in the Late Claims Motion: (i) whether relief can

be granted absent a showing of excusable neglect under the Pioneer factors; and (ii) the

applicability of any purported agreements with the GUC Trust or other tolling arrangements to

toll timeliness objections (the "**Initial Late Claims Motions Issues**").[15]    Subsequent to such

briefing, certain Plaintiffs who had not previously appeared before the Bankruptcy Court filed

motions seeking authority to file late proofs of claim.

### IV.    Plaintiffs' Claims Against Old GM.

34.    The Proposed Class Claims allege that Old GM knew about the Ignition Switch

Defect, other defects in ignition switches, defects in side airbags, and defects in power steering

for years prior to the Bar Date.[16]    The Proposed Class Claims further allege that Old GM

concealed the existence of these defects, causing Plaintiffs to overpay for defective vehicles and

bear the costs of repairs while Old GM reaped the benefit of selling defective vehicles at inflated

prices and avoiding the costs of a recall.[17]

35.    Based on these allegations, the Ignition Switch Plaintiffs and Non-Ignition Switch

Plaintiffs assert claims against the Old GM estate under the laws of each of the 50 states and the

---

[15]    See *Order Establishing, Inter Alia, Briefing Schedule for Certain issues Arising from Late Claim Motions Filed by Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Certain Ignition Switch Pre-Closing Accident Plaintiffs*, dated Mar. 2, 2017 [ECF No. 13869]; *Opening Brief by General Motors LLC with Respect to Initial Late Claim Motions Issues*, dated Mar. 6, 2017 [ECF No. 13871]; *The Ignition Switch Plaintiffs' Brief on the Initial Late Claim Motions Issues*, dated Mar. 6, 2017 [ECF No. 13872]; *Opening Brief of GUC Trust Administrator and Participating Unitholders on the Applicability of Pioneer and Tolling to Plaintiffs' Motions to File Late Claims*, dated Mar. 6, 2017 [ECF No. 13873]; *Brief on Applicability of Pioneer and Tolling Issues in Connection with Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Mar. 6, 2017 [ECF No. 13874].

[16]    See Exhibit A to the Economic Loss Late Claim Motion  (the "**Proposed Ignition Switch Class Claim**"), ¶¶ 9-258; Exhibit B to the Economic Loss Late Claim Motion (the "**Proposed Non-Ignition Switch Class Claim**"), ¶¶ 9-146.

[17]    See, e.g., Proposed Ignition Switch Class Claim ¶ 332; Proposed Non-Ignition Switch Class Claim ¶ 249.

CONFIDENTIAL

GUC_0001698

District of Columbia for: (i) fraudulent concealment; (ii) unjust enrichment; (iii) consumer protection claims; (iv) breach of the implied warranty of merchantability; and (v) negligence.[18]

36.    In turn, the Ignition Switch Pre-Closing Accident Plaintiffs assert personal injury and wrongful death claims arising from accidents ~~allegedly~~they assert were caused by the Ignition Switch Defect.[19]

37.    For over three years, New GM has consistently taken the position that any such claims are properly asserted against the GUC Trust and not against New GM.[20]

38.    Subsequent to filing the Late Claims Motions, the Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs and certain Pre-Closing Accident Plaintiffs provided the GUC Trust with materials and expert reports describing in detail the alleged viability of the asserted claims, the alleged violation of due process rights in connection with the Bar Date and the alleged amount of damages (the "**Proffered Evidence**").[21]

39.    The Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs provided a proffer of evidence laying out the factual background for their claims and the amount of damages alleged.  In addition, they provided a report by Stephen Boedeker, an expert on surveys and statistical sampling, analyzing the amount of alleged damages for the Ignition Switch

---

[18]    See Proposed Ignition Switch Class Claim ¶¶ 316-418; Proposed Non-Ignition Switch Class Claim ¶¶ 233-337.

[19]    See, e.g., *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Dec. 22, 2016 [ECF No. 13807].

[20]    The record is replete with attempts by New GM to saddle the Old GM estate with these potentially massive claims.  "To the extent Plaintiffs can prove that they are entitled to any relief, the appropriate remedy is to permit them to seek allowance of an unsecured claim against the Old GM bankruptcy estate."  Dkt. 12981 (New GM's 2014 Threshold Issues Br.) at 53; "To the extent they had any claim, it was against Old GM and they retained that claim after the 363 Sale."  Id. at 36; "Every one of their claims, the economic loss plaintiffs' claims, is a claim that's assertable against Old GM as it relates to an Old GM vehicle."  Hr'g Tr. Feb. 17, 2015 at 59:17-19 (New GM counsel Arthur Steinberg).

[21]    The Proffered Evidence is attached hereto as **Exhibit B**, **Exhibit C**, and **Exhibit D**.

CONFIDENTIAL                                                    GUC_0001699

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
GDCBR & AGGP COMMENTS 8/8/178/11/17

Plaintiffs' and certain Non-Ignition Switch Plaintiffs' claims based on a conjoint analysis conducted by Mr. Boedeker and Berkeley Research Group.

40.    The Signatory Plaintiffs will show at a hearing on the Motion that conjoint analysis is a set of econometric and statistical techniques developed to study consumer preferences and is widely used as a market research tool.   In a conjoint analysis, study participants review a set of products with different attributes (such as a vehicle shown in different colors) and choose which product they would prefer to purchase.  The collected data can be used to determine market preferences and the value consumers place on particular attributes of a product.  Here, the alleged amount of damages for economic loss claims was determined by using a conjoint analysis to evaluate the difference in value that consumers placed on an Old GM vehicle without a defect as compared to an identical vehicle with a defect.

41.    Certain Pre-Closing Accident Plaintiffs provided materials describing the personal injury and wrongful death claims of certain plaintiffs and demonstrating the alleged value of these claims based on exemplar verdict amounts.  The valuation of damages was assessed and approved by W. Mark Lanier, an experienced trial attorney recognized as a leader in the field.  In addition, these Pre-Closing Accident Plaintiffs also provided an expert report of Dr. Keith Leffler in which he valued these plaintiffs' claims based on a conjoint analysis and data regarding market preferences and the value consumers place on the risk of being injured or killed in a vehicle.

42.    The valuation of these plaintiffs' asserted damages in the Proffered Evidence is well in excess of the amount necessary to trigger New GM's obligation to issue the maximum amount of Adjustment Shares under the AMSPA.  Although The GUC Trust does not agree with

13

GUC_0001700

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

~~the allowability or amount of the damages asserted in the Proffered Evidence[22] and believes it~~

~~has substantial defenses with respect to the merits of plaintiffs' asserted claims and their asserted~~

~~damages,~~recognizes that it may, should it choose, contest the level of damages. There is no

guarantee that the GUC Trust would prevail and reduce or limit the damages.[22] After reviewing

the Proffered Evidence and considering the benefits of the Settlement as a whole to the

Unitholders to whom it owes a fiduciary duty, the GUC Trust recognizes that there is a risk that,

if such claims are allowed, the aggregate general unsecured claims (including already allowed

claims) could well exceed $42 billion, and thus has agreed to fully support entry of the Claims

Estimate Order as part of the Settlement that the GUC Trust believes is within the range of

reasonableness.

V.    **The Settlement Agreement.**

---

[22]  ~~For example, the Proffered Evidence provided by the Pre-Closing Accident Plaintiffs contains an estimate of punitive damages, which the GUC Trust believes would be disallowed in its entirety in a claims objection proceeding. In addition, the Proffered Evidence does not identify which, if any, economic loss Plaintiffs who purchased their vehicles pre-Sale sold those vehicles prior to New GM's 2014 recalls. There is an ongoing dispute about whether any economic loss Plaintiffs who sold their vehicles before those recalls suffered any cognizable economic loss. Nonetheless, even discounting the damages calculations in the Proffered Evidence to account for the absence of punitive damages and economic loss Plaintiffs who sold their vehicles before the recalls, Plaintiffs' asserted damages are well in excess of the amount necessary to trigger New GM's obligation to issue the maximum amount of Adjustment Shares under the AMSPA.~~

[22]  For example, the Proffered Evidence provided by the Pre-Closing Accident Plaintiffs contains an estimate of punitive damages, which the GUC Trust believes would be disallowed in its entirety in a claims objection proceeding. In addition, the Proffered Evidence does not identify which, if any, economic loss Plaintiffs who purchased their vehicles pre-Sale sold those vehicles prior to New GM's 2014 recalls. There is an ongoing dispute about whether any economic loss Plaintiffs who sold their vehicles before those recalls suffered any cognizable economic loss. See Memorandum Opinion and Order Regarding Plaintiffs' Motion for Reconsideration and/or Clarification of the Court's Order Dismissing the Claims of "Pre-Recall Plaintiffs", In re Gen. Motors LLC Ignition Switch Litig., Case Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF) (S.D.N.Y. Aug. 9, 2017). Nonetheless, even discounting the damages calculations in the Proffered Evidence to account for the absence of punitive damages and economic loss Plaintiffs who sold their vehicles before the recalls, Plaintiffs' asserted damages are well in excess of the amount necessary to trigger New GM's obligation to issue the maximum amount of Adjustment Shares under the AMSPA.

14

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

43.    Following the filing of the Late Claims Motions, the Parties engaged in extensive

negotiations to resolve the numerous complex issues raised by Plaintiffs' claims against the Old

GM estate and the assets held by the GUC Trust.[23]

44.    After good faith, arm's-length negotiations, the Parties entered into the Settlement

Agreement resolving the Late Claims Motions (including the Initial Late Claim Motions Issues),

the Late Proof of Claim Issue, the allowance of Plaintiffs' claims, and Plaintiffs' rights to GUC

Trust Assets.  The key terms of the Settlement Agreement are as follows:[24]

    a.    The GUC Trust agrees to pay the reasonable costs and expense for Court-approved notice of the Motion in an amount not to exceed $~~[6]~~ million.  The Signatory Plaintiffs agree to pay any amounts in excess of $~~[6]~~ million.

    b.    The Settlement Agreement becomes effective on the date the order approving the Settlement pursuant to Bankruptcy Rule 9019 becomes a Final Order (the "**Settlement Effective Date**"), provided, however, that from and after the date the Settlement Order is entered by the Bankruptcy Court, the GUC Trust may waive the requirement that the Settlement Order be a Final Order.

    c.    Within five (5) business days of the Settlement Effective Date, the GUC Trust will irrevocably pay $15,000,000 (the "**Settlement Amount**") into a trust, fund or other vehicle (the "**Settlement Fund**") for the exclusive benefit of Plaintiffs.  All Unitholders, all defendants in the Term Loan Avoidance Action, and all holders of Allowed General Unsecured Claims, other than the Plaintiffs, will be deemed to irrevocably waive and release any and all rights to the Settlement Amount (the "**GUC Waiver Provision**").

    d.    Contemporaneously with payment of the Settlement Amount, the Plaintiffs will be deemed to irrevocably waive and release all claims against the GUC Trust, including a release of any rights to prior distributions of or current GUC Trust Assets and any rights to distributions by the Motors Liquidation Company Avoidance Action Trust (the "**Waiver Provision**").  For the avoidance of doubt,

---

[23]    See *Joint Declaration of Steve W. Berman and Elizabeth J. Cabraser in Joint Motion Pursuant to Bankruptcy Code Sections 105, 363, 502(c) and 1142 and Bankruptcy Rules 3020 and 9019 to Approve the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust, and to Estimate the Plaintiffs' Aggregate Allowed General Unsecured Claims Against the Debtors* (the "**Co-Lead Counsel Decl.**") ¶ 5; [Hilliard Decl.]; [Norman Decl.]; [GUC Trust Decl.].

[24]    This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent that there are any inconsistencies between the description of the Settlement Agreement contained in the Motion and the terms and provisions of the Settlement Agreement, the Settlement Agreement shall control.

15

GUC_0001702

the Settlement Agreement and Settlement Order define "Plaintiffs" to include all persons who now have, or in the future could have, claims against the Old GM estate related to any of the recalls, such that the Waiver Provision shall be applicable to all such parties whether or not they have asserted any claims against the Old GM estate or the GUC Trust to date. However, being defined as a Plaintiff does not assure any party that he, she, or it will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.

e.   In light of the benefits of the Settlement and after the GUC Trust's review of the Proffered Evidence, the GUC Trust agrees to seek a Claims Estimate Order: (i) finding that the allowable amount of Plaintiffs' claims against Old GM and/or the GUC Trust, when combined with all of the other Allowed General Unsecured Claims against the Old GM bankruptcy estate, equals or exceeds $42,000,000,000, thus triggering the maximum amount of Adjustment Shares; and (ii) directing that the Adjustment Shares, or the value of the Adjustment Shares, be promptly delivered to the Settlement Fund. Certain Pre-Closing Accident Plaintiffs consent to estimation of their personal injury and wrongful death claims by this Court solely for the purposes of determining the aggregate Allowed General Unsecured Claims for a Claims Estimate Order.

f.   Contemporaneously with payment of the Settlement Amount, all Unitholders, all defendants in the Term Loan Avoidance Action, and all holders of Allowed General Unsecured Claims, other than the Plaintiffs, will be deemed to irrevocably waive and release any and all rights to the Adjustment Shares, provided that such waiver and release shall not become operative unless and until the Bankruptcy Court enters the Claims Estimate Order (the "**Adjustment Shares Waiver Provision**").

g.   Subject to notice and an opportunity for Plaintiffs to object, the Signatory Plaintiffs will determine the overall allocation of the value of the Settlement Fund between economic loss claims and personal injury/wrongful death claims, and the eligibility and criteria for payment. Notice of the proposed allocation and proposed eligibility and criteria for payment will be posted on a settlement website, along with information about the hearing date and how and when to assert any objections.

h.   Nothing in the Settlement Agreement is intended to waive any claims against New GM or to be an election of remedies against New GM; nor does the Settlement Agreement or any payments made in connection therewith represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full from every available source; provided, however, that in no event shall any Plaintiff be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares. Except as mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any claims that

16

any Plaintiff may have against New GM or constitute an election of remedies by any Plaintiff, and neither the Settlement Amount nor the Adjustment Shares (nor any distribution thereof to any Plaintiff) shall represent full and final satisfaction of any claim that any Plaintiff may have against New GM, all of which are expressly reserved. The Bankruptcy Court's estimate of the aggregate Allowed General Unsecured Claims in the Claims Estimate Order shall not operate as a cap on any of the claims of any of the Plaintiffs against New GM.

### RELIEF REQUESTED

45.    By this Motion, the Parties respectfully request that this Court enter orders approving the Settlement Agreement and claims estimation substantially in the forms attached to this Motion as **Exhibit E** and **Exhibit F**.

### BASIS FOR RELIEF REQUESTED

I.    **The Court Should Approve The Settlement Agreement Pursuant To Bankruptcy Rule 9019.**

46.    Bankruptcy Rule 9019(a) provides, in part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This Court also has authority to approve a settlement under Bankruptcy Code Section 105(a), which empowers it to issue any order that is "necessary or appropriate." 11 U.S.C. § 105(a).

47.    The authority to approve a compromise or settlement is within the sound discretion of the Court. See Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972). The Court should exercise its discretion "in light of the general public policy favoring settlements." In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (citation omitted); see also Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact, encouraged . . . ." (citation omitted)).

17

48.   When exercising its discretion, the Court must determine whether the settlement is fair and equitable, reasonable, and in the best interests of the estate.  See, e.g., Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994); In re Purofied Down Prods. Corp., 150 B.R. 519, 523 (S.D.N.Y. 1993).  Where "the integrity of the negotiation process is preserved, a strong initial presumption of fairness attaches to the proposed settlement . . . ."  In re Hibbard, 217 B.R. at 46.

49.   The Court need not decide the numerous issues of law and fact raised in the underlying dispute, "but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'"  In re Adelphia Commn'cs Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (quoting In re W.T. Grant, Co., 699 F.2d 599, 608 (2d Cir. 1983)); see also Purofied, 150 B.R. at 522 ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying [dispute] . . . .").

50.   The Court evaluates whether the Settlement Agreement is fair and equitable based on "the probabilities of ultimate success should the claim be litigated," and "an educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

51.   Courts in this jurisdiction consider the following Iridium factors in determining whether approval of a settlement is warranted:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in

CONFIDENTIAL

GUC_0001705

collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478

F.3d 452, 462 (2d Cir. 2007) (citations omitted).

52.    The Settlement Agreement falls within the range of reasonableness and satisfies

the Iridium factors as set forth below.  Thus, the Settlement Agreement should be approved

under Bankruptcy Rule 9019.

### A.    The Settlement's Benefits Outweigh The Likelihood Of Success In Protracted Litigation Over Numerous, Complex Issues.

53.    The first two Iridium factors—(1) the balance between the litigation's likelihood

of success and the settlement's benefits; and (2) the likelihood of complex and protracted

litigation—are easily met.  As detailed below, continued litigation over Plaintiffs' claims raises

significant, complex issues, has an uncertain outcome, and would be costly and time consuming.

The benefits of near-term, certain resolution are clear.

### 1.    Litigation Over Plaintiffs' Claims Raises Numerous Complex Issues.

54.    One complex, contentious issue raised by the litigation over Plaintiffs' claims is

whether the Court should grant Plaintiffs authority to file late claims as permitted by the *Order*

*Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy*

*Code for an Order Disallowing Certain Late Filed Claims* [ECF No. 11394] (the "**Late Filed**

**Claims Order**").  See Late Filed Claims Order at 1-2.

19

CONFIDENTIAL                                                                    GUC_0001706

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

55.    As an initial matter, there is a dispute over the standard for obtaining leave to file late claims. Certain Plaintiffs have argued that creditors may assert late claims based solely on a showing that they have suffered a due process violation related to the bar date.[25]  The GUC Trust has taken the position that a demonstration of excusable neglect under the Pioneer factors is required regardless of a due process violation.[26]

56.    Then, there is a dispute whether leave should be granted under the appropriate standard. Most notably, in the April 2015 Decision, the Bankruptcy Court stated that the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs suffered a due process violation when they failed to receive constitutionally adequate notice of the Bar Date, and that leave to file late claims was the "obvious" remedy for this violation. See In re Motors Liquidation Co., 529 B.R. at 573-74, 583. The Plaintiffs assert that this statement is a binding ruling that is no longer subject to appeal, the GUC Trust asserts it is merely nonbinding *dicta* that the Second Circuit implicitly found was an advisory opinion.

57.    The Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs also assert that they can meet the Pioneer factors for demonstrating excusable neglect. Of the four Pioneer factors, the one given the most weight is the reason for the delay in filing claims, including whether the delay was in the reasonable control of the movant. See In re Residential Capital, LLC, Case No. 12-12020 (MG), 2015 WL 515387, at *5 (Bankr. S.D.N.Y. Feb. 6, 2015). The Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs will

---

[25]    See, e.g., *The Ignition Switch Plaintiffs' Brief on the Initial Late Claim Motions Issues*, dated Mar. 6, 2017 [ECF No. 13872]; *Brief on Applicability of Pioneer and Tolling Issues in Connection with Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Mar. 6, 2017 [ECF No. 13874].

[26]    See *Opening Brief of GUC Trust Administrator and Participating Unitholders on the Applicability of Pioneer and Tolling to Plaintiffs' Motions to File Late Claims*, dated Mar. 6, 2017 [ECF No. 13873].

20

GUC_0001707

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
GDCBR & AGGP COMMENTS 8/8/178/11/17

argue that a debtor's failure to provide actual notice to a known creditor is evidence that any delay was not in control of the creditor. The GUC Trust, in turn, will argue that the delay here is attributable to Plaintiffs' voluntary strategic decision to pursue New GM and not the GUC Trust.

58.     Although Non-Ignition Switch Plaintiffs and Non-Ignition Switch Pre-Closing Accident Plaintiffs have not yet demonstrated a due process violation, many of these plaintiffs allege that their claims are substantially similar to the Ignition Switch Defect—defects that involve the same condition (low torque switches that move out of the "run" position) and have the same effects (loss of power to steering, brakes, and airbags). The Plaintiffs will argue that these plaintiffs can demonstrate a violation of their due process rights in connection with the Bar Date.

59.     Further, the Plaintiffs will argue that excusable neglect can exist in the absence of a due process violation. For example, Plaintiffs have asserted that excusable neglect can be found where the debtors failed to comply with bankruptcy procedures in providing notice of a bar date and where a claimant, through no fault of its own, was unaware of its claim prior to the bar date. See In re Arts de Provinces de France, Inc., 153 B.R. 144, 147 (Bankr. S.D.N.Y. 1993); In re PT-1 Commc'ns, Inc., 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003). This issue, too, would have to be litigated.

60.     Another complex issue is whether the doctrine of equitable mootness is applicable to bar Plaintiffs' claims. See In re Chateaugay Corp., 10 F.3d 944, 952-53 (2d Cir. 1993).

61.     In the April 2015 Decision, the Bankruptcy Court applied the five Chateaugay factors[27] and determined that if the Ignition Switch Plaintiffs' or Ignition Switch Pre-Closing

---

[27]     These five factors are: (i) the court can still order some effective relief; (ii) such relief will not affect "the re-emergence of the debtor as a revitalized corporate entity"; (iii) such relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and

21

GUC_0001708

Accident Plaintiffs' late claims were allowed, GUC Trust Assets could not be tapped to pay them under the doctrine of equitable mootness.  See In re Motors Liquidation Co., 529 B.R. at 598. The Bankruptcy Court found, *inter alia*, that any relief would "knock the props out" from the transactions under which Unitholders acquired their units.  See id. at 587-88, 592.

62.     On appeal, the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs argued that the Bankruptcy Court erred because, *inter alia*, effective relief could be fashioned without disturbing any transactions or having an adverse impact on Unitholders by providing Plaintiffs with exclusive access to any Adjustment Shares that may be issued under the AMSPA.[28]  Plaintiffs will argue that where any relief is available, even partial relief, equitable mootness should not be applied.  See, e.g., Chateaugay, 10 F.3d at 954.  In addition, the Ignition Switch Plaintiffs argued that equitable mootness was only applicable in the context of bankruptcy appeals.[29]

63.     The Second Circuit vacated the Bankruptcy Court's equitable mootness ruling as advisory, neither affirming nor reversing that decision.  The Second Circuit pointed out that all of the Circuit's equitable mootness cases to-date had involved an appellate court applying the doctrine in the first instance.  See Elliott, 829 F.3d at 167 n.30.  However, the Second Circuit

---

"create an unmanageable, uncontrollable situation for the Bankruptcy Court"; (iv) the "parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings;" and (v) the appellant "pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." In re Chateaugay Corp., 10 F.3d at 952-53.

[28]     See Br. for Appellant Ignition Switch Plaintiffs, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Nov. 16, 2015) (ECF No. 235), 49-52; Br. for Ignition Switch Pre-Closing Accident Plaintiffs, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Nov. 16, 2015) (ECF No. 183), 4, 52 n.18 (incorporating the arguments on the application of equitable mootness in the Ignition Switch Plaintiffs' brief).

[29]     See Response and Reply Br. for Appellant-Cross-Appellee Ignition Switch Plaintiffs, Elliott v. General Motors LLC (In re Motors Liquidation Co.), Appeal Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Feb. 1, 2016) (ECF No. 315), at 40-43.

22

GUC_0001709

specified that it was not resolving whether it is appropriate for a bankruptcy court, as opposed to an appellate court, to apply the equitable mootness doctrine. See id.

64.     Additional complex issues would certainly arise from continued litigation of Plaintiffs' claims. The Bankruptcy Court would need to decide whether class certification for the economic loss Plaintiffs' proposed class proofs of claims would be appropriate. In addition, the GUC Trust could raise objections to allowance of these class claims, as well as to the separate proofs of claim filed by Ignition Switch Pre-Closing Accident Plaintiffs. This could lead to the need to resolve issues under the varied laws of the fifty states and the District of Columbia.

65.     Plaintiffs have also asserted that litigation over similar claims asserted by economic loss plaintiffs against New GM in the MDL Court demonstrates the viability of many of Plaintiffs' claims. For example, in the MDL Court, consumer fraud, common law fraud, and implied warranty claims considered under the laws of sixteen states largely survived partial motions to dismiss.[30] In addition, the MDL Court held that plaintiffs could assert injuries under the "benefit-of-the-bargain defect theory," *i.e.*, amounts plaintiffs overpaid at the time of sale for a defective vehicle, and injuries for lost time, to the extent such damages are available under state law. See FACC Opinion at 13-14, 18; TACC Opinion at 24. Many jurisdictions recognize damages under the benefit-of-the-bargain theory. See TACC Opinion at 24.

---

[30] See Opinion and Order Regarding New GM's Partial Motion to Dismiss the Forth Amended Consolidated Complaint, In re General Motors LLC Ignition Switch Litig., Case No. 14-MD-2543 (JMF) (S.D.N.Y. June 30, 2017), 23 (the "**FACC Opinion**"); Opinion and Order Regarding New GM's Partial Motion to Dismiss the Third Amended Consolidated Complaint, In re General Motors LLC Ignition Switch Litig., Case No. 14-MD-2543 (JMF) (S.D.N.Y. July 15, 2016), 5-6 (the "**TACC Opinion**").

23

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

66.    In sum, while the GUC Trust believes that it has meritorious defenses to the claims of all Plaintiffs, the GUC Trust's likelihood of success in the resolution of the numerous, complex issues raised by the litigation over Plaintiffs' claims is uncertain.

> **2.    The Terms Of The Settlement Agreement
> Weigh The Risks Of Continued Litigation Against The
> Benefits Of A Consensual Resolution Of Plaintiffs' Claims.**

67.    Litigation of these complex issues has been ongoing for years, consuming large sums of money and countless hours of labor.  In the absence of settlement, there is a high likelihood of even more expensive, protracted and contentious litigation that will consume significant estate funds and expose the estate to significant risks and uncertainty.  In addition, resolution of these issues may require the added time and expense of discovery.  For example, the Pioneer analysis is fact intensive and, to date, only limited discovery, restricted to a proposed class representative of the Ignition Switch Plaintiffs and certain Ignition Switch Pre-Closing Accident Plaintiffs, has occurred on this issue.

68.    By comparison, settling the litigation provides the Parties with greater certainty and eliminates the significant risk, cost and delay of litigation.  In addition, the Settlement Agreement provides several benefits beyond avoiding continued litigation.

69.    First, the Parties' determination to seek a Claims Estimate Order allowing and estimating Plaintiffs' claims in an amount, when combined with all of the other Allowed General Unsecured Claims against the Old GM estate, that equals or exceeds $42 billion, provides an efficient and reasonable resolution of the allowable amount of Plaintiffs' claims.    The reasonableness of this amount is supported by the Proffered Evidence.

70.    Under the Settlement, any Adjustment Shares issued by New GM under this Claims Estimate Order will be for the exclusive benefit of Plaintiffs.  Based on the amount of

24

GUC_0001711

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

allowed and disputed unsecured claims against Old GM, New GM's obligation to issue these shares would not be triggered absent allowance of Plaintiffs' claims.[31]  In other words, absent the Plaintiffs' claims, the Unitholders have no expectation to receive Adjustment Shares.  Thus, this provision potentially paves the way for Plaintiffs to obtain a recovery on their claims without disturbing other creditors' past or future recoveries.

71.    Second, the Settlement removes a major impediment to winding down the Old GM estate.  The resolution of Plaintiffs' claims and waiver of certain rights and claims eliminates the likelihood of complex and protracted litigation, prevents delay in distributing remaining GUC Trust Assets and protects Unitholders from the risk of claw-back or recapture of prior distributions.

72.    The terms of the Settlement Agreement reflect a reasonable assessment of the substantial time and expense of litigating Plaintiffs' claims, balanced against the benefits of more near term, efficient and certain resolution of the allowable amount of Plaintiffs' claims and sources of recovery.  The benefits of the Settlement in the near term outweigh the likelihood of long-term success in protracted litigation of complex issues.

**B.    The Settlement Agreement Is Beneficial To Creditors And Supported By Interested Parties.**

73.    With respect to the third and fourth Iridium factors—the paramount interests of the creditors and whether other interested parties support the settlement—prolonging the litigation will increase costs and decrease the amount of GUC Trust Assets available to satisfy creditors.  Approving the Settlement Agreement, on the other hand, avoids the significant expense and uncertainty associated with continued litigation, and maximizes and expedites

---

[31]    See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(c) Report and Budget Variance Report as of June 30, 2017*, dated July 21, 2017 [ECF No. 13994].

25

GUC_0001712

distributions to current GUC Trust beneficiaries. The release of Plaintiffs' rights and claims with respect to the GUC Trust's prior distributions and current GUC Trust Assets allows the GUC Trust to complete the orderly wind-down of the Old GM estate.

74.    Moreover, providing Plaintiffs with the exclusive right to proceed against a settlement fund containing the Settlement Amount and the Adjustment Shares potentially opens an avenue for Plaintiffs to recover on their claims against the GUC Trust without disturbing recovery expectations of other creditors or Unitholders. Plaintiffs' rights concerning the Adjustment Shares are protected because notice of any agreement by the Signatory Plaintiffs on proposed criteria to assert a claim against the Settlement Fund and a proposed methodology of allocation of the Settlement Fund between economic loss claims and personal injury/wrongful death claims will be provided to Plaintiffs, who will be provided with an opportunity to object.

75.    Not surprisingly, the key interested parties—the GUC Trust (who has sole authority under the Late Filed Claims Order to consent to late filed claims and is the only party under the Plan provided with standing to object to the allowance of claims), Signatory Plaintiffs and the Participating Unitholders—all support the Settlement Agreement. Accordingly, for all of the reasons set forth above, the Settlement easily meets the Iridium Factors and allows the GUC Trust to implement the express purpose of the GUC Trust Agreement. GUC Trust Agreement § 2.2 (stating that the "sole purpose of the GUC Trust is to implement the Plan on behalf of, and for the benefit of the GUC Trust Beneficiaries"); GUC Trust Agreement § 4.2 (stating that "in no event shall the GUC Trust Administrator unduly prolong the duration of the GUC Trust, and the GUC Trust Administrator shall, in the exercise of its reasonable business judgment and in the interests of all GUC Trust Beneficiaries, at all times endeavor to terminate the GUC Trust as

26

GUC_0001713

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

soon as practicable in accordance with the purposes and provisions of this Trust Agreement and the Plan.").

C.    **The Settlement Agreement Satisfies The Remaining *Iridium* Factors.**

76.    With respect to the sixth factor, "the nature and breadth of releases to be obtained by officers and directors," in exchange for the payment of $15 million, the Settlement Agreement releases any and all rights, claims and causes of action that any Plaintiff may assert against the GUC Trust, the GUC Trust Administrator, the GUC Trust Assets, the Avoidance Action Trust and Unitholders.

77.    With respect to the fifth and seventh Iridium factors, competent and experienced counsel to the Parties who have been litigating these issues for years actively engaged in arms' length, good faith negotiations to formulate the Settlement Agreement.[32]    The Parties, having considered the uncertainties, delay and cost that would be incurred by further litigation, submit that the Settlement Agreement is fair, reasonable and appropriate, and in the best interests of the Parties.

78.    Based on the foregoing, the Settlement Agreement is in the best interests of the estate and its creditors and falls well within the range of reasonableness.    Therefore, entry into and approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019 is warranted and the Settlement Agreement should be approved.[33]

II.    **The Court Should Approve The Parties' Estimation Of The Aggregate Allowed General Unsecured Claims, Including Plaintiffs' Claims, As Equal To Or Exceeding $42 Billion.**

---

[32]    See Co-Lead Counsel Decl. ¶ 5; [Hilliard Decl.]; [Norman Decl.]; [GUC Trust Decl.].

[33]    In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all their rights and nothing herein shall be deemed or construed as an admission of any fact, liability, stipulation, or waiver, but rather as a statement made in furtherance of settlement discussions.

27

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

79.    As part of the Settlement, the Parties agree to support entry of a Claims Estimate Order providing that the aggregate Allowed General Unsecured Claims, including Plaintiffs' claims, against the Old GM estate equals or exceeds $42 billion.  Pursuant to the terms of the AMSPA, the GUC Trust Agreement and the Side Letter, as well as Bankruptcy Rule 9019 and Bankruptcy Code Sections 105(a) and 502(c), the Parties request that the Court approve the Parties' estimation and enter a Claims Estimate Order estimating the aggregate Allowed General Unsecured Claims at an amount equal to or exceeding $42 billion.

80.    A provision in the Sale Agreement requires New GM to issue Adjustment Shares to the GUC Trust if and when the aggregate amount of Allowed General Unsecured Claims, as estimated by the Bankruptcy Court, exceeds $35 billion.  See AMSPA § 3.2(c).  If the estimated amount equals or exceeds $42 billion, then New GM must issue 30 million shares, the maximum amount of Adjustment Shares.  See id.

81.    Under the AMSPA, GUC Trust Agreement, and Side Letter, the GUC Trust (and only the GUC Trust) "may, at any time, seek an Order of the Bankruptcy Court . . . estimating the aggregate allowed general unsecured claims" against the Old GM estate.  See AMSPA § 3.2(c); GUC Trust Agreement § 2.3(d); Side Letter.[34]

82.    Bankruptcy Code Section 502(c) authorizes the Court to estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."  11 U.S.C. § 502(c).  Estimation "provides a means for a bankruptcy court to achieve reorganization, and/or distributions of claims, without awaiting the results of [potentially protracted] legal proceedings."  In re Adelphia Bus. Solutions, Inc., 341

---

[34]    In addition, the GUC Trust has the sole, exclusive authority to request that the Bankruptcy Court estimate any contingent, unliquidated disputed claims pursuant to Bankruptcy Code Section 502(c).  See Plan § 7.3; GUC Trust Agreement § 5.1(e).

28

GUC_0001715

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (citing In re Continental Airlines, Inc., 981 F.2d 1450,

1461 (5th Cir. 1993)); see In re Lionel LLC, No. 04-17324, 2007 WL 2261539, at *2 (Bankr.

S.D.N.Y. Aug. 3, 2007) (noting that, without estimation, lengthy proceedings result in "delayed

distributions, which in turn, greatly devalue the claim of all creditors as they cannot use the

assets until they receive them" (citation omitted)).

83.    In fact, "the Code requires estimation of all contingent or unliquidated claims

which unduly delay the administration of the case." In re Nat'l Gypsum Co., 139 B.R. 397, 405

(N.D. Tex. 1992) (internal quotes omitted). Even absent a finding of undue delay, it is within a

court's sound discretion to estimate a claim. See In re RNI Wind Down Corp., 369 B.R. 174,

191 (Bankr. D. Del. 2007).

84.    Here, it is within the sound discretion of the Court to estimate the aggregate

Allowed General Unsecured Claims, including Plaintiffs' claims, as contemplated by the

AMSPA, Plan, GUC Trust Agreement and the Settlement Agreement.[35]

85.    Estimation requires only "sufficient evidence on which to base a reasonable

estimate of the claim." Bittner v. Borne Chem. Co., 691 F.2d 134, 135 (3d Cir. 1982); see also

In re Windsor Plumbing Supply Co., 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994) (advocating use

of probabilities in estimation of claims). The Bankruptcy Court has discretion to select the

valuation model that best suits the circumstances of the case at hand when estimating the value

of claims. See In re Adelphia Commc'ns Corp., 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007);

Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co.), 160 B.R. 40, 41 (S.D.N.Y.

1993).

---

[35]    Counsel for certain Pre-Closing Accident Plaintiffs consent to estimation of their personal injury and wrongful death claims by this Court solely for the purposes of determining whether the Allowed General Unsecured Claims in the aggregate exceed $35 billion.

29

GUC_0001716

86.    As of March 31, 2017, the total amount of Allowed General Unsecured Claims—

exclusive of Plaintiffs' claims—was $31,855,381,054.[36]  Thus, if Plaintiffs' claims are allowable

in an amount of approximately $3.145 billion, then New GM's obligation to issue Adjustment

Shares is triggered.  If Plaintiffs' claims are allowable in an amount of approximately $10.145

billion, then the aggregate Allowed General Unsecured Claims will exceed $42 billion, requiring

the issuance of the maximum amount of Adjustment Shares.

87.    Pursuant to the Settlement Agreement, the claims are being pursued with the

consent of the GUC Trust, which has the sole authority to permit the filing of late claims.  See

Late Filed Claims Order at 1-2.  In addition, the GUC Trust is the only party with standing to

object to the allowance of claims and has the authority to settle, withdraw or otherwise resolve

any objections to disputed claims.  See Plan §§ 7.1(b) ("[T]he GUC Trust Administrator shall

have the exclusive right to object . . . to General Unsecured Claims . . . ."); GUC Trust

Agreement § 5.1(d) ("[T]he GUC Trust Administrator shall have the authority to compromise,

settle, otherwise resolve or withdraw any objections to Disputed General Unsecured Claims

against the Debtors . . . .").  Accordingly, the GUC Trust's decision to seek entry of the Claims

Estimate Order should be upheld by the Court under Bankruptcy Rule 9019 and Bankruptcy

Code Section 502(c).

88.    In the course of negotiations, the GUC Trust was provided with the Proffered

Evidence indicating that the damages for these plaintiffs' claims could exceed $10.15 billion.

Based on the evidence, the expense and delay of litigation, and the benefits of the Settlement as a

whole, the GUC Trust agreed to support an estimate of the allowed amount of Plaintiffs'

---

[36]    See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(c) Report and Budget Variance Report as of June 30, 2017*, dated July 21, 2017 [ECF No. 13994].

CONFIDENTIAL

GUC_0001717

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AGGP~~ COMMENTS ~~8/8/17~~8/11/17

Allowed General Unsecured Claims against the Debtors and/or the GUC Trust, when combined with all of the other Allowed General Unsecured Claims against the Debtors, equal to or exceeding $42 billion. Accordingly, the requested Claims Estimate Order is well within the range of reasonableness and should be granted under Bankruptcy Rule 9019. See In re Iridium Operating LLC, 478 F.3d at 462; In re Adelphia Commn'cs Corp., 327 B.R. at 159.[37]

89.    Based on the foregoing, $42 billion is a reasonable estimate of the aggregate Allowed General Unsecured Claims against the GUC Trust.

## NOTICE

90.    Notice of this Motion has been provided in accordance with the Court-approved notice procedures. See [Order Approving Notice Procedures]. The Parties submit that no other or further notice need be provided.

## NO PRIOR REQUEST

No previous application for the relief sought in this Motion has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Parties respectfully request that the Court: (i) enter an order substantially in the form attached hereto as **Exhibit E** approving the Settlement Agreement, attached hereto as **Exhibit A**, pursuant to Bankruptcy Rule 9019; (ii) enter a Claims Estimate

---

[37]    Rulings in the MDL Court provide additional support for the viability of Plaintiffs' claims. Similar economic loss claims have been asserted in a consolidated class actions complaint in the MDL. Consumer fraud, common law fraud, and implied warranty claims largely survived partial motions to dismiss. See FACC Opinion at 23; TACC Opinion at 5-6. In addition, the MDL Court recognized that the laws of several jurisdictions permit the assertion of damages under the "benefit-of-the-bargain defect theory," *i.e.*, amounts plaintiffs overpaid at the time of sale for a defective vehicle, and injuries for lost time. See FACC Opinion at 13-14, 18; TACC Opinion at 24.

31

CONFIDENTIAL

GUC_0001718

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

Order substantially in the form attached hereto as **Exhibit F**, pursuant to Bankruptcy Rule 9019

and Bankruptcy Code Section 502(c); and (iii) grant such other relief as is just and equitable.

Dated: August [ ], 2017
      New York, New York

                         Respectfully submitted,

                         */s/ Draft*
                         Edward S. Weisfelner
                         Howard S. Steel
                         BROWN RUDNICK LLP
                         Seven Times Square
                         New York, New York 10036
                         Tel: 212-209-4800
                         eweisfelner@brownrudnick.com
                         hsteel@brownrudnick.com

                         Sander L. Esserman
                         STUTZMAN, BROMBERG, ESSERMAN &
                         PLIFKA, A PROFESSIONAL CORPORATION
                         2323 Bryan Street, Ste 2200
                         Dallas, Texas 75201
                         Tel: 214-969-4900
                         esserman@sbep-law.com
                         *Designated Counsel for the Ignition Switch*
                         *Plaintiffs and Certain Non-Ignition Switch*
                         *Plaintiffs in the Bankruptcy Court*

                         Steve W. Berman (admitted *pro hac vice*)
                         HAGENS BERMAN SOBOL SHAPIRO LLP
                         1918 Eighth Avenue, Suite 3300
                         Seattle, WA 98101
                         Tel: 206-623-7292
                         steve@hbsslaw.com

                         Elizabeth J. Cabraser
                         LIEFF CABRASER HEIMANN & BERNSTEIN,
                         LLP
                         275 Battery Street, 29th Floor
                         San Francisco, California 94111

32

GUC_0001719

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing*
*Accident Plaintiffs Represented By Hilliard*
*Muñoz Gonzales L.L.P. and the Law Offices*
*of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to certain Pre-Closing Accident Plaintiffs*

Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J. HENRY
4715 Fredricksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident Plaintiffs*

Lisa M. Norman (admitted *pro hac vice*)
T. Joshua Judd (admitted *pro hac vice*)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056

33

GUC_0001720

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/17~~8/11/17

Tel: 713-850-4200
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident Plaintiffs*


Matthew Williams
Keith R. Martorana
Gabriel Gillett
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
Tel: 212-351-400
mwilliams@gibsondunn.com
kmartorana@gibsondunn.com
ggillett@gibsondunn.com

*Counsel for Wilmington Trust Company, as*
*Administrator and Trustee of the GUC Trust*

62843904 v1

34

| Summary report: | |
| :-- | :-- |
| **Litéra® Change-Pro TDC 7.5.0.125 Document comparison done on 8/11/2017 2:24:44 PM** | |
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 1- 9019 Motion re GUC Trust Settlement.DOCX | |
| **Modified filename:** 9019 Motion re GUC Trust Settlement.DOCX | |
| **Changes:** | |
| Add | 19 |
| Delete | 17 |
| Move From | 2 |
| Move To | 2 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 40 |

CONFIDENTIAL

*PRIVILEGED AND CONFIDENTIAL*
*ATTORNEY WORK PRODUCT*
*BR DRAFT 7/27/2017*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., | : | Case No.: 09-50026 (MG) |
| f/k/a General Motors Corp., et al., | : |  |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------X

### JOINT DECLARATION OF STEVE W. BERMAN AND ELIZABETH J. CABRASER IN SUPPORT OF JOINT MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363, 502(C) AND 1142 AND BANKRUPTCY RULES 3020 AND 9019 TO APPROVE THE SETTLEMENT AGREEMENT BY AND AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST, AND TO ESTIMATE THE PLAINTIFFS' AGGREGATE ALLOWED GENERAL UNSECURED CLAIMS AGAINST THE DEBTORS

Steve W. Berman and Elizabeth J. Cabraser hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of their knowledge, information and belief:

1.    Steve W. Berman is a partner with the law firm of Hagens Berman Sobol Shapiro LLP.

2.    Elizabeth J. Cabraser is a partner with the law firm of Lieff Cabraser Heimann & Bernstein, LLP.

3.    We are Co-Lead Counsel appointed in the General Motors LLC Ignition Switch Litigation Multidistrict Litigation, currently pending in the United States District Court for the Southern District of New York, Judge Furman presiding, Case No. 14-MD-2543 (JMF).

4.    We submit this declaration in support of the *Joint Motion Pursuant to Bankruptcy Code Sections 105 and 502(c) and Bankruptcy Rule 9019 to Approve the Settlement Agreement by and Among the Signatory Plaintiffs and the GUC Trust, and to Estimate the Plaintiffs'*

GUC_0001723

*PRIVILEGED AND CONFIDENTIAL*
*ATTORNEY WORK PRODUCT*
*BR DRAFT 7/28/2017*

*Aggregate Allowed General Unsecured Claims Against the Debtors*, dated [ ], 2017 (the "**Motion**"). This declaration is based on our personal knowledge.

## I.    Settlement Agreement

5.    The Settlement Agreement was negotiated by the Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, certain Pre-Closing Accident Plaintiffs (collectively, the "**Signatory Plaintiffs**"), the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), and certain unaffiliated holders of beneficial units of the GUC Trust (the "**Participating Unitholders**") (together with the GUC Trust and Signatory Plaintiffs, the "**Parties**") in good faith and at arm's length.    After due diligence, the Signatory Plaintiffs and the GUC Trust entered into the Settlement Agreement.

6.    Continued litigation of the matters resolved by the Settlement Agreement would be complex and costly.

7.    The Settlement Agreement resolves multiple disputes, claims and issues to which the Parties are involved in varying degrees, and in related but not necessarily identical ways, such that each Party's overall obligations to one or more other Parties constitutes good and sufficient consideration for the overall benefits each Party is to receive from one or more of the other Parties.

8.    The settlements, compromises, releases and transfers contemplated in the Settlement Agreement are fair, reasonable and given in exchange for valuable and reasonably equivalent consideration.

## II.    Claims Estimate Order

9.    We provided the GUC Trust with a proffer of evidence and expert report concerning the claims of the Ignition Switch Plaintiffs and certain Non-Ignition Switch

2

*PRIVILEGED AND CONFIDENTIAL*
*ATTORNEY WORK PRODUCT*
*BR DRAFT 7/28/2017*

Plaintiffs.  Certain Pre-Closing Accident Plaintiffs also provided a proffer of evidence and expert report.

10.     Based upon the proffers of evidence and expert reports, Plaintiffs' claims, when combined with all of the other Allowed General Unsecured Claims against the Debtors' bankruptcy estates, equals or exceeds $42 billion.

Dated: [ ], 2017

*Draft*_____
Steve W. Berman

Dated: [ ], 2017

*Draft*_____
Elizabeth J. Cabraser

CONFIDENTIAL                                         GUC_0001725

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

**HEARING DATE AND TIME: [ ], 2017 at [ ] (EST)**
**OBJECTION DEADLINE: [ ], 2017 at 4:00 p.m. (EST)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
                                      :
In re:                                :      Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,   :      Case No.: 09-50026 (MG)
       f/k/a General Motors Corp., et al., :
                                      :
                                      :
                           Debtors.   :      (Jointly Administered)
                                      :
------------------------------------------------------------X
```

## MOTION FOR ORDER APPROVING NOTICE
## PROCEDURES WITH RESPECT TO PROPOSED SETTLEMENT
## BY AND AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST

The Ignition Switch Plaintiffs,[1] certain Non-Ignition Switch Plaintiffs,[2] certain Pre-Closing Accident Plaintiffs[3] (collectively, the "**Signatory Plaintiffs**") and the Motors Liquidation Company GUC Trust (the "**GUC Trust**," together with the Signatory Plaintiffs, the "**Parties**") hereby submit this *Motion for Order Approving Notice Procedures with Respect to Proposed Settlement by and Among the Signatory Plaintiffs and the GUC Trust* (the "**Motion**"). In support of this Motion, the Parties respectfully state as follows:

---

[1]  The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047.

[2]  The term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540, 14V-118 and 14V-153.

[3]  The term "**Pre-Closing Accident Plaintiffs**" shall mean those plaintiffs asserting personal injury or wrongful death claims or persons who suffered a personal injury or wrongful death on or arising from an accident involving an Old GM vehicle that occurred prior to the closing of the Section 363 Sale. Collectively, all Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Pre-Closing Accident Plaintiffs are referred to as "**Plaintiffs**."

1

CONFIDENTIAL

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

## PRELIMINARY STATEMENT

1.    On August [ ], 2017, after good faith, arm's-length negotiation, the Signatory Plaintiffs and the GUC Trust entered into the Settlement Agreement.

2.    Following the Court's consideration and approval of this Motion, the Parties intend to file and serve (in the manner contemplated by the proposed Notice Procedures herein) a motion (the "**9019 Motion**") requesting the Court's approval of the Settlement Agreement and Claims Estimate Order.

3.    The Settlement Agreement resolves numerous longstanding, disputed issues including, *inter alia*: (i) whether Plaintiffs should be granted authority to file late proofs of claim (and whether such authority can be granted solely on due process grounds); (ii) whether Plaintiffs' asserted claims are equitably moot; (iii) whether additional grounds exist to object to Plaintiffs' asserted claims; and (iv) the allowable amount of the Signatory Plaintiffs' claims (if any).

4.    Generally, under the Settlement Agreement,[4] the GUC Trust agrees to irrevocably pay $15,000,000 (the "**Settlement Amount**") into a trust, fund or other vehicle (the "**Settlement Fund**") for the exclusive benefit of Plaintiffs.

5.    In exchange, upon payment of the Settlement Amount, all Plaintiffs with claims against the GUC Trust (whether asserted or unasserted, contingent, or otherwise) arising from New GM's 2014 recalls, including those who did not execute the Settlement Agreement, are deemed to irrevocably waive and release all claims (other than those arising under the Settlement Agreement) against Old GM, the Old GM estate, the GUC Trust, the GUC Trust Administrator,

---

[4]    This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement.    To the extent that there are any inconsistencies between the description of the Settlement Agreement contained in the Motion and the terms and provisions of the Settlement Agreement, the Settlement Agreement shall control.

2

CONFIDENTIAL

GUC_0001727

holders of beneficial units in the GUC Trust (the "**Unitholders**") and the Motors Liquidation

Company Avoidance Action Trust, including a release of any rights to prior or future

distributions of or current GUC Trust assets and any rights to distributions by the Motors

Liquidation Company Avoidance Action Trust.

6.    In addition, the GUC Trust agrees to provide reasonable assistance and

cooperation in obtaining an order from the Court (the "**Claims Estimate Order**"): (i) finding

that the estimated aggregate amount of Plaintiffs' claims, together with all other allowed claims,

against the estates meet or exceed $42 billion, triggering the provision of the Sale Agreement[5]

requiring New GM to issue additional New GM common stock (the "**Adjustment Shares**"); and

(ii) directing that those Adjustment Shares be promptly delivered to the Settlement Fund by New

GM.

7.    All Unitholders, all defendants in the action captioned *Official Committee of

Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al.*, Adv. Pro.

No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009) (the "**Term Loan Avoidance Action**"), and all

holders of Allowed General Unsecured Claims, other than Plaintiffs, will be deemed to

irrevocably waive and release any and all rights to these Adjustment Shares, as well as the

Settlement Amount.

8.    Subject to notice and an opportunity for Plaintiffs to object, the Signatory

Plaintiffs will determine the overall allocation of the value of the Settlement Fund between

economic loss claims and personal injury/wrongful death claims, and the eligibility and criteria

for payment. Being defined as a Plaintiff will not assure any party that he, she, or it will receive

---

[5]    See *Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser*, dated as of June 26, 2009 (the "**AMSPA**"), § 3.2(c).

3

a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.

9.    Nothing in the Settlement Agreement is intended to waive any claims against New GM or to be an election of remedies against New GM; nor does the Settlement Agreement or any payments made in connection therewith represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full from every available source; provided, however, that in no event shall any Plaintiff be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares.  Except as mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any claims that any Plaintiff may have against New GM or constitute an election of remedies by any Plaintiff, and neither the Settlement Amount nor the Adjustment Shares (nor any distribution thereof to any Plaintiff) shall represent full and final satisfaction of any claim that any Plaintiff may have against New GM, all of which are expressly reserved. The Bankruptcy Court's estimate of the aggregate Allowed General Unsecured Claims in the Claims Estimate Order shall not operate as a cap on any of the claims of any of the Plaintiffs against New GM.

10.    As part of the Settlement Agreement, the Parties by this Motion, request that the Court enter an Order approving and establishing Notice Procedures for notice of the 9019 Motion.

**JURISDICTION**

11.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

12.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4

GUC_0001729

## NOTICE PROCEDURES

13.     Pursuant to the Settlement Agreement, the Parties propose that they provide notice of the 9019 Motion, and the hearing date to consider approval of the Settlement Agreement and Claims Estimate Order, pursuant to the below "**Notice Procedures**":

     i.    paid media including (1) digital banner advertisements targeted specifically to owners or lessees of the defective vehicles manufactured by Old GM included in the Recalls; (2) pre-roll video ads placed on YouTube and other sites with YouTube embedded videos; (3) sponsored search listings on the three most highly-visited Internet search engines, Google, Yahoo! and Bing; (4) a party-neutral informational press release issued to online press outlets throughout the United States; and (5) a settlement website;

     ii.    notice by postcard in the form attached hereto as **Exhibit C** to: (A) all persons in the United States who, as of July 10, 2009, owned or leased a defective vehicle manufactured by Old GM included in the Recalls; and (B) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against New GM or filed or joined a motion for authority to file late claims against the GUC Trust, as of the date of the Settlement Agreement;[6]

     iii.    notice to all defendants in the Term Loan Avoidance Action via the Bankruptcy Court's ECF system and, to the extent a defendant is not registered to receive notice via the ECF system, via postcard in the form attached hereto as **Exhibit C**;

     iv.    notice via DTC's LENSNOTICE system to holders of beneficial units of the GUC Trust in the form attached hereto as **Exhibit D**; and

     v.    notice via ECF to all entities, including New GM, that receive electronic notice from the Court's ECF system.

14.     Pursuant to the Settlement Agreement, the GUC Trust shall be responsible for funding the cost of the notice contemplated hereby, up to an amount of $6,000,000 (the "**Notice**

---

[6]  The Parties request that the Court order New GM to turn over the names and addresses of individuals in category (ii).

5

**Cost Cap Amount**").[7]   As described further below, the GUC Trust respectfully requests

authority to "hold back" and reallocate for use up to $6,000,000 from otherwise distributable

assets of the GUC Trust for use in funding the Notice Procedures.

15.    The Parties request that this Court:  (i) schedule the hearing to consider approval

of the 9019 Motion for [ ], 2017 at [ ] (EST) (the "**Hearing**"); and (ii) establish [ ], 2017 at [ ]

(EST), as the deadline by which all responses and objections to the 9019 Motion must be filed

and served.

16.    The Parties respectfully submit that the foregoing Notice Procedures, and

requested hearing date and objection deadline, will provide comprehensive notice to all affected

parties of the terms and the relief to be sought at the hearing to consider approval of the 9019

Motion, and that no other or further notice is necessary or required.

## RELIEF REQUESTED

17.    By this Motion, the Parties respectfully request that the Court enter an order

approving the Notice Procedures substantially in the form attached to this Motion as **Exhibit A**.

## BASIS FOR RELIEF

18.    Bankruptcy Code Section 105(a) provides a bankruptcy court with broad powers

in its administration of a case.  See 11 U.S.C. § 105(a) ("The court may issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of this title.").  Pursuant

to Section 105(a), the Bankruptcy Court has expansive equitable powers to achieve fairness and

---

7    Based upon proposals received from vendors, the cost of the notice contemplated hereby is approximately $6
million.  Specifically, the parties requested proposals for the notice program from three vendors: (1) Epiq Class
Action & Claims Solutions, Inc./Hilsoft Notifications ("**Epiq/Hilsoft**"); (2) Rust Consulting/Kinsella Media;
and (3) Kurtzman Carson Consultants.  Based on the responses, the parties selected Epiq as the Notice
Administrator, based both on the cost estimate, as well as their comprehensive notice plan, which is explained
in detail in the Declaration of Cameron R. Azari, Esq., on Implementation and Adequacy of General Motors
Bankruptcy Settlement Class Notice Program ("**Azari Decl.**"), annexed hereto as **Exhibit E**.

6

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

justice in the reorganization process.  See, e.g., Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.), 52 F.3d 41 (2d Cir. 1994) (holding that bankruptcy courts have broad equity power to manage affairs of debtors).

19.    In addition, the Court has the authority and discretion under Bankruptcy Code Section 105(d) to issue and prescribe procedures and conditions as the Court deems appropriate to ensure that matters before it are handled expeditiously and economically.  See 11 U.S.C. § 105(d); In re Fletcher Int'l, Ltd., 536 B.R. 551, 560 (S.D.N.Y. 2015), aff'd, 661 F. App'x 124 (2d Cir. 2016).  Under Bankruptcy Rule 2002, no less than 21 days' notice must be provided for proposed settlements under Bankruptcy Rule 9019.  Epiq/Hilsoft estimates that it will take 35 days to complete the mailing of the postcard notice.

20.    Entry of the Proposed Order is appropriate under Bankruptcy Code Sections 105(a) and 105(d), as complemented by Bankruptcy Rule 9019, because it will allow the Parties to:  (i) comply with the terms of the Settlement Agreement (which specifically require the Parties to receive an order from this Court approving the Notice Procedures); and (ii) implement a process in which appropriate notice will be given to all relevant parties in interest so that this Court can consider the appropriateness of the 9019 Motion at the Hearing.

21.    To ensure that the Notice Procedures are sufficient, Eqip/Hilsoft, a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans, was engaged.[8]  Epiq/Hilsoft analyzed the individual notice options and the media audience data to determine the most effective mixture of media required to reach the greatest practicable number of included parties.[9]

---

[8]    See Azari Decl. ¶ [3].

[9]    Id. ¶ [8].

CONFIDENTIAL

GUC_0001732

22.    Rather than incurring the prohibitive cost and expense of mailing a long form of notice to Plaintiffs, the Parties will serve the postcard notice attached hereto as **Exhibit C** (the "**Direct Mail Notice**") that clearly and concisely summarizes the Settlement.  The Direct Mail Notice will direct the recipients to a website dedicated specifically to the Settlement where they can access additional information.  The Direct Mail Notices will be sent by United States Postal Service first class mail.[10]

23.    This comprehensive individual notice effort will be supplemented by moderate paid media selected to both notify Plaintiffs who may not see the Direct Mail Notice and remind Plaintiffs to act if they so choose.  Paid media will include digital banner advertisements targeted specifically to owners and lessees of the vehicle makes and models included in the Settlement along with online video advertisements targeted to adults aged 18 and over.[11]

24.    To build additional reach and extend exposures, a party-neutral informational release will be issued to approximately 5,000 general media (print and broadcast) outlets and 5,400 online databases and websites throughout the United States.[12]

25.    A dedicated website will be created for the Settlement.  Plaintiffs will be able to obtain detailed information about the case and review documents including the Long Form Notice attached hereto as **Exhibit B** (in English and Spanish), Settlement Agreement, Settlement Order and answers to frequently asked questions and any other documents the Court may require.    Once the plan for allocation between economic loss claims and personal injury/wrongful death claims is determined it will be posted prominently on the Settlement website.  Any criteria on eligibility to recover from the Settlement Fund will also be posted

---

[10]    Id. ¶ [16].

[11]    Id. ¶¶ [20, 21].

[12]    Id. ¶ [28].

CONFIDENTIAL

GUC_0001733

prominently on the Settlement website. To facilitate locating the case website, sponsored search listings will be acquired on the three most highly-visited internet search engines: *Google*, *Yahoo!* and *Bing*.[13]

26.    The Notice Procedures presented here are similar to the procedures proposed by the debtors in In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bank. D. Del. July 7, 2017) to provide notice to individuals who own, or may have owned, vehicles equipped with recalled airbag inflators—serving a postcard via first-class mail, utilizing digital banner advertising and paid internet search listings, distributing an informational release, and creating a dedicated website.[14]

27.    The Parties believe these Notice Procedures will keep costs reasonable under the circumstances while also reaching the greatest practicable number of Plaintiffs.[15]

28.    As noted above, the GUC Trust shall be responsible for funding the cost of the Notice Procedures up to the Notice Cost Cap Amount. Pursuant to Section 6.1(b) of the Second Amended and Restated GUC Trust Agreement dated as of July 30, 2015 (the "**GUC Trust Agreement**"), the GUC Trust Administrator is afforded the flexibility to "hold back" from distributions (with the approval of FTI Consulting, Inc. as monitor of the GUC Trust (in such capacity, the "**GUC Trust Monitor**"))[16] otherwise distributable assets for the purposes of,

---

[13]    Id. ¶¶ [26, 29].

[14]    See Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants ¶¶ 24-28, In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. July 7, 2017).

[15]    Id. ¶ 12.

[16]    As required by Section 6.1 of the GUC Trust Agreement, the GUC Trust Administrator has consulted with the GUC Trust Monitor with respect to the proposed reallocation and use of distributable cash. GUC Trust Agreement § 6.1. The GUC Trust Monitor has indicated that it supports the relief requested herein.

9

GUC_0001734

among other things, funding fees, costs and expenses of the GUC Trust to the extent that such fees, costs and expenses are not otherwise contemplated by the GUC Trust's budget. *See* GUC Trust Agreement § 6.1(b). The GUC Trust Agreement further permits the GUC Trust Administrator to seek Bankruptcy Court authority to reallocate and use the "held back" funds for the purposes of satisfying such fees, costs and expenses as incurred (such funds, as reallocated, "**Other GUC Trust Administrative Cash**"). *Id.* Section 6.13 of the GUC Trust Agreement provides that to the extent any "expenses, costs, liabilities, obligations or fees [are] incurred by the GUC Trust… in connection with the wind-down of the Debtors' affairs… [such liabilities] shall be satisfied… from the applicable portion of Other GUC Trust Administrative Cash." *See* GUC Trust Agreement § 6.13.

29.    The GUC Trust's agreement to pay up to $6 million for the notice contemplated hereby is not currently budgeted by the GUC Trust and falls well within the types of "expenses, costs, liabilities, obligations or fees" that may be "held back" and reallocated for use by the GUC Trust pursuant to Section 6.13 of the GUC Trust Agreement. Accordingly, the GUC Trust submits that, pursuant to Section 6.1(b) of the GUC Trust Agreement, the request to reallocate up to $6 million of otherwise distributable assets for the purposes of funding the Notice Procedures is warranted.

## NOTICE

30.    Notice of this Motion has been provided to all entities that receive electronic notice from the Court's ECF system and otherwise in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 1015(c) and 9007 establishing Notice and Case Management Procedures*, dated May 5, 2011 (Bankr. Dkt. No. 10183).

10

GUC_0001735

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

31.    No previous application for the relief sought in this Motion has been made to this

or any other Court.

## **CONCLUSION**

WHEREFORE the Parties respectfully request entry of the Proposed Order, substantially

in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other

relief as is just and equitable.

Dated: August [ ], 2017              Respectfully submitted,
New York, New York

                                     */s/ Draft*
                                     Edward S. Weisfelner
                                     Howard S. Steel
                                     BROWN RUDNICK LLP
                                     Seven Times Square
                                     New York, New York 10036
                                     Tel: 212-209-4800
                                     eweisfelner@brownrudnick.com
                                     hsteel@brownrudnick.com

                                     Sander L. Esserman
                                     STUTZMAN, BROMBERG, ESSERMAN
                                     &PLIFKA, A PROFESSIONAL
                                     CORPORATION
                                     2323 Bryan Street, Ste 2200
                                     Dallas, Texas 75201
                                     Tel: 214-969-4900
                                     esserman@sbep-law.com

                                     *Designated Counsel for the Ignition Switch
                                     Plaintiffs and Certain Non-Ignition Switch
                                     Plaintiffs in the Bankruptcy Court*

                                     Steve W. Berman (admitted *pro hac vice*)
                                     HAGENS BERMAN SOBOL SHAPIRO
                                     LLP
                                     1918 Eighth Avenue, Suite 3300
                                     Seattle, WA 98101
                                     Tel: 206-623-7292
                                     steve@hbsslaw.com

11

CONFIDENTIAL

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing
Accident Plaintiffs Represented By Hilliard
Muñoz Gonzales L.L.P. and the Law Offices
of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to Certain Pre-Closing Accident
Plaintiffs*
Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J.
HENRY
4715 Fredricksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

12

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

Lisa M. Norman (admitted pro hac vice)
T. Joshua Judd (admitted pro hac vice)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Tel: 713-850-4200
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident*
*Plaintiffs*

Matthew Williams
Keith R. Martorana
Gabriel Gillett
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
Tel: 212-351-400

*Counsel for Wilmington Trust Company, as*
*Administrator and Trustee of the GUC Trust*

13

CONFIDENTIAL

GUC_0001738

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

# **EXHIBIT A**

CONFIDENTIAL

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------X

In re:                                          :        Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,   :        Case No.: 09-50026 (MG)
      f/k/a General Motors Corp., et al.,   :
                                :
                      Debtors.   :        (Jointly Administered)

--------------------------------------------------------------X

### ORDER APPROVING NOTICE PROCEDURES
### WITH RESPECT TO PROPOSED SETTLEMENT BY AND
### AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST

Upon the *Motion for Order Approving Notice Procedures with Respect to Proposed Settlement by and Among the Signatory Plaintiffs and the GUC Trust*, dated [ ], 2017 (the "**Motion**"),[17] of the Ignition Switch Plaintiffs, Certain Non-Ignition Switch Plaintiffs, Certain Pre-Closing Accident Plaintiffs and the GUC Trust (collectively the "**Parties**") for approval of the Notice Procedures with respect to the 9019 Motion, all as more fully described in the Motion; and the Bankruptcy Court having considered the Motion; and a hearing on the Motion having been held before this Bankruptcy Court on _____, 2017 (the "**Hearing**") to consider the relief requested in the Motion; and the Bankruptcy Court having found that it has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Plan; and the Bankruptcy Court having considered the statements of counsel on the record of the Hearing and the filings of the parties in connection the Motion; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record of the Hearing; and it appearing that proper and adequate notice of the Motion has been given and that

---

[17] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

1

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

no other or further notice is necessary; and after due deliberation and sufficient cause appearing therefor, it is

   **ORDERED** that the Motion is granted as set forth herein; and it is further

   **ORDERED** that the Notice Procedures are approved; and it is further

   **ORDERED** that notice of the 9019 Motion in accordance with the Notice Procedures will be sufficient and effective notice in satisfaction of federal and state due process requirements and other applicable law to put the parties in interest in these Chapter 11 cases, all Plaintiffs, and others on notice of the 9019 Motion; and it is further

   **ORDERED** that, pursuant to Section 6.1(b) of the GUC Trust Agreement, the GUC Trust is authorized to reallocate and use up to $6,000,000 of otherwise distributable assets to satisfy the costs of the Notice Procedures.

   **ORDERED** that, no later than two (2) days after the entry of this Order, New GM shall turn over to the Parties the names and addresses of (A) all persons in the United States who, as of July 10, 2009, owned or leased a defective vehicle manufactured by Old GM included in the Recalls; and (B) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against New GM as of the date of this Order;

   **ORDERED** that, all responses and objections to the 9019 Motion must be filed and served so as to be received by [ ], 2017 at [ ] (EST); and it is further

   **ORDERED** that the hearing on the 9019 Motion shall take place in the Bankruptcy Court on [ ], 2017 at [ ] (EST); and it is further

   **ORDERED** that notice of the 9019 Motion as provided herein shall be deemed good and sufficient notice of the 9019 Motion; and it is further

2

GUC_0001741

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

**ORDERED** that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2017
         New York, New York

                                    _____
                                    THE HONORABLE MARTIN GLENN
                                    UNITED STATES BANKRUPTCY JUDGE

3

GUC_0001742

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

# EXHIBIT B

**(Long Form Notice)**

CONFIDENTIAL

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

# EXHIBIT C

**(Short Form Postcard Notice)**

CONFIDENTIAL

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

# **EXHIBIT D**

**(DTC Notice)**

CONFIDENTIAL

*BR & GP COMMENTS 8/11/2017*
*DRAFT*

# EXHIBIT E

**(Azari Declaration)**

CONFIDENTIAL

GUC_0001746

**HEARING DATE AND TIME: [ ], 2017 at [ ] (EST)**
**OBJECTION DEADLINE: [ ], 2017 at 4:00 p.m. (EST)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., | : | Case No.: 09-50026 (MG) |
| f/k/a General Motors Corp., et al., | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------X

## MOTION FOR ORDER APPROVING NOTICE
## PROCEDURES WITH RESPECT TO PROPOSED SETTLEMENT
## BY AND AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST

The Ignition Switch Plaintiffs,[1] certain Non-Ignition Switch Plaintiffs,[2] certain Pre-Closing Accident Plaintiffs[3] (collectively, the "**Signatory Plaintiffs**") and the Motors Liquidation Company GUC Trust (the "**GUC Trust**," together with the Signatory Plaintiffs, the "**Parties**") hereby submit this *Motion for Order Approving Notice Procedures with Respect to Proposed Settlement by and Among the Signatory Plaintiffs and the GUC Trust* (the "**Motion**"). In support of this Motion, the Parties respectfully state as follows:

---

[1]  The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047.

[2]  The term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, as of July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540, 14V-118 and 14V-153.

[3]  The term "**Pre-Closing Accident Plaintiffs**" shall mean those plaintiffs asserting personal injury or wrongful death claims or persons who suffered a personal injury or wrongful death on or arising from an accident involving an Old GM vehicle that occurred prior to the closing of the Section 363 Sale. Collectively, all Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Pre-Closing Accident Plaintiffs are referred to as "**Plaintiffs**."

1

## PRELIMINARY STATEMENT

1.    On August [ ], 2017, after good faith, arm's-length negotiation, the Signatory Plaintiffs and the GUC Trust entered into the Settlement Agreement.

2.    Following the Court's consideration and approval of this Motion, the Parties intend to file and serve (in the manner contemplated by the proposed Notice Procedures herein) a motion (the "**9019 Motion**") requesting the Court's approval of the Settlement Agreement and Claims Estimate Order.

3.    The Settlement Agreement resolves numerous longstanding, disputed issues including, *inter alia*:  (i) whether Plaintiffs should be granted authority to file late proofs of claim (and whether such authority can be granted solely on due process grounds); (ii) whether Plaintiffs' asserted claims are equitably moot; (iii) whether additional grounds exist to object to Plaintiffs' asserted claims; and (iv) the allowable amount of the Signatory Plaintiffs' claims (if any).

4.    Generally, under the Settlement Agreement,[4] the GUC Trust agrees to irrevocably pay $15,000,000 (the "**Settlement Amount**") into a trust, fund or other vehicle (the "**Settlement Fund**") for the exclusive benefit of Plaintiffs.

5.    In exchange, upon payment of the Settlement Amount, all Plaintiffs with claims against the GUC Trust (whether asserted or unasserted, contingent, or otherwise) arising from New GM's 2014 recalls, including those who did not execute the Settlement Agreement, are deemed to irrevocably waive and release all claims (other than those arising under the Settlement Agreement) against Old GM, the Old GM estate, the GUC Trust, the GUC Trust Administrator,

---

[4]    This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent that there are any inconsistencies between the description of the Settlement Agreement contained in the Motion and the terms and provisions of the Settlement Agreement, the Settlement Agreement shall control.

2

GUC_0001748

holders of beneficial units in the GUC Trust (the "**Unitholders**") and the Motors Liquidation Company Avoidance Action Trust, including a release of any rights to prior or future distributions of or current GUC Trust assets and any rights to distributions by the Motors Liquidation Company Avoidance Action Trust.

6.    In addition, the GUC Trust agrees to provide reasonable assistance and cooperation in obtaining an order from the Court (the "**Claims Estimate Order**"): (i) finding that the estimated aggregate amount of Plaintiffs' claims, together with all other allowed claims, against the estates meet or exceed $42 billion, triggering the provision of the Sale Agreement[5] requiring New GM to issue additional New GM common stock (the "**Adjustment Shares**"); and (ii) directing that those Adjustment Shares be promptly delivered to the Settlement Fund by New GM.

7.    All Unitholders, all defendants in the action captioned *Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al.*, Adv. Pro. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009) (the "**Term Loan Avoidance Action**"), and all holders of Allowed General Unsecured Claims, other than Plaintiffs, will be deemed to irrevocably waive and release any and all rights to these Adjustment Shares, as well as the Settlement Amount.

8.    Subject to notice and an opportunity for Plaintiffs to object, the Signatory Plaintiffs will determine the overall allocation of the value of the Settlement Fund between economic loss claims and personal injury/wrongful death claims, and the eligibility and criteria for payment.  Being defined as a Plaintiff will not assure any party that he, she, or it will receive

---

[5] See *Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser*, dated as of June 26, 2009 (the "**AMSPA**"), § 3.2(c).

3

CONFIDENTIAL

a distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration contained in the Settlement Fund.

9.      Nothing in the Settlement Agreement is intended to waive any claims against New GM or to be an election of remedies against New GM; nor does the Settlement Agreement or any payments made in connection therewith represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full from every available source; provided, however, that in no event shall any Plaintiff be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares. Except as mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any claims that any Plaintiff may have against New GM or constitute an election of remedies by any Plaintiff, and neither the Settlement Amount nor the Adjustment Shares (nor any distribution thereof to any Plaintiff) shall represent full and final satisfaction of any claim that any Plaintiff may have against New GM, all of which are expressly reserved. The Bankruptcy Court's estimate of the aggregate Allowed General Unsecured Claims in the Claims Estimate Order shall not operate as a cap on any of the claims of any of the Plaintiffs against New GM.

10.     As part of the Settlement Agreement, the Parties by this Motion, request that the Court enter an Order approving and establishing Notice Procedures for notice of the 9019 Motion.

**JURISDICTION**

11.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

12.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4

*GDCBR & AGGP COMMENTS 8/8/20178/11/2017*
*DRAFT*

## NOTICE PROCEDURES

13.    Pursuant to the Settlement Agreement, the Parties propose that they provide

notice of the 9019 Motion, and the hearing date to consider approval of the Settlement

Agreement and Claims Estimate Order, pursuant to the below "**Notice Procedures**":

     i.    paid media including (1) digital banner advertisements targeted specifically to owners or lessees of the defective vehicles manufactured by Old GM included in the Recalls; (2) pre-roll video ads placed on YouTube and other sites with YouTube embedded videos; (3) sponsored search listings on the three most highly-visited Internet search engines, Google, Yahoo! and Bing; (4) a party-neutral informational press release issued to online press outlets throughout the United States; and (5) a settlement website;

    ii.    notice by postcard in the form attached hereto as **Exhibit C** to: (A) all persons in the United States who, as of July 10, 2009, owned or leased a defective vehicle manufactured by Old GM included in the Recalls; and (B) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against New GM or filed or joined a motion for authority to file late claims against the GUC Trust, as of the date of the Settlement Agreement;[6]

    iii.    notice to all defendants in the Term Loan Avoidance Action via the Bankruptcy Court's ECF system and, to the extent a defendant is not registered to receive notice via the ECF system, via postcard in the form attached hereto as **Exhibit C**;

    iv.    notice via DTC's LENSNOTICE system to holders of beneficial units of the GUC Trust in the form attached hereto as **Exhibit D**; and

    v.    notice via ECF to all entities, including New GM, that receive electronic notice from the Court's ECF system.

14.    Pursuant to the Settlement Agreement, the GUC Trust shall be responsible for

funding the cost of the notice contemplated hereby, up to an amount of $[6,000,000] (the "**Notice**

---

[6]    The Parties request that the Court order New GM to turn over the names and addresses of individuals in category (ii).

5

CONFIDENTIAL

GUC_0001751

*GDCBR & AGGP COMMENTS 8/8/20178/11/2017*
*DRAFT*

**Cost Cap Amount**").[7]  As described further below, the GUC Trust respectfully requests

authority to "hold back" and reallocate for use up to $[6,000,000] from otherwise distributable

assets of the GUC Trust for use in funding the Notice Procedures.

15.    The Parties request that this Court:  (i) schedule the hearing to consider approval

of the 9019 Motion for [  ], 2017 at [  ] (EST) (the "**Hearing**"); and (ii) establish [  ], 2017 at [  ]

(EST), as the deadline by which all responses and objections to the 9019 Motion must be filed

and served.

16.    The Parties respectfully submit that the foregoing Notice Procedures, and

requested hearing date and objection deadline, will provide comprehensive notice to all affected

parties of the terms and the relief to be sought at the hearing to consider approval of the 9019

Motion, and that no other or further notice is necessary or required.

## RELIEF REQUESTED

17.    By this Motion, the Parties respectfully request that the Court enter an order

approving the Notice Procedures substantially in the form attached to this Motion as **Exhibit A**.

## BASIS FOR RELIEF

18.    Bankruptcy Code Section 105(a) provides a bankruptcy court with broad powers

in its administration of a case.  See 11 U.S.C. § 105(a) ("The court may issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of this title.").  Pursuant

to Section 105(a), the Bankruptcy Court has expansive equitable powers to achieve fairness and

---

[7]    Based upon proposals received from vendors, the cost of the notice contemplated hereby is approximately $[6]
million.  Specifically, the parties requested proposals for the notice program from three vendors: (1) Epiq Class
Action & Claims Solutions, Inc./Hilsoft Notifications ("**Epiq/Hilsoft**"); (2) Rust Consulting/Kinsella Media;
and (3) Kurtzman Carson Consultants.  Based on the responses, the parties selected Epiq as the Notice
Administrator, based both on the cost estimate, as well as their comprehensive notice plan, which is explained
in detail in the Declaration of Cameron R. Azari, Esq., on Implementation and Adequacy of General Motors
Bankruptcy Settlement Class Notice Program ("**Azari Decl.**"), annexed hereto as **Exhibit E**.

6

justice in the reorganization process.  See, e.g., Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.), 52 F.3d 41 (2d Cir. 1994) (holding that bankruptcy courts have broad equity power to manage affairs of debtors).

19.    In addition, the Court has the authority and discretion under Bankruptcy Code Section 105(d) to issue and prescribe procedures and conditions as the Court deems appropriate to ensure that matters before it are handled expeditiously and economically.  See 11 U.S.C. § 105(d); In re Fletcher Int'l, Ltd., 536 B.R. 551, 560 (S.D.N.Y. 2015), aff'd, 661 F. App'x 124 (2d Cir. 2016).  Under Bankruptcy Rule 2002, no less than 21 days' notice must be provided for proposed settlements under Bankruptcy Rule 9019.  [Epiq/Hilsoft estimates that it will take [ ]35 days to complete the mailing of the postcard notice.[8]]

20.    Entry of the Proposed Order is appropriate under Bankruptcy Code Sections 105(a) and 105(d), as complemented by Bankruptcy Rule 9019, because it will allow the Parties to:  (i) comply with the terms of the Settlement Agreement (which specifically require the Parties to receive an order from this Court approving the Notice Procedures); and (ii) implement a process in which appropriate notice will be given to all relevant parties in interest so that this Court can consider the appropriateness of the 9019 Motion at the Hearing.

21.    To ensure that the Notice Procedures are sufficient, Eqip/Hilsoft, a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans, was engaged.[98]  Epiq/Hilsoft analyzed the individual notice options and the

---

[8]    [NTD - 45 days was used in Takata at the recommendation of Prime Clerk.  Does KCC recommend a 21 or 45 day period given the extensive mailing?].

[98]    See Azari Decl. ¶ [3].

CONFIDENTIAL

GUC_0001753

media audience data to determine the most effective mixture of media required to reach the greatest practicable number of included parties.[109]

22.    Rather than incurring the prohibitive cost and expense of mailing a long form of notice to Plaintiffs, the Parties will serve the postcard notice attached hereto as **Exhibit C** (the "**Direct Mail Notice**") that clearly and concisely summarizes the Settlement.  The Direct Mail Notice will direct the recipients to a website dedicated specifically to the Settlement where they can access additional information.  The Direct Mail Notices will be sent by United States Postal Service first class mail.[1110]

23.    This comprehensive individual notice effort will be supplemented by moderate paid media selected to both notify Plaintiffs who may not see the Direct Mail Notice and remind Plaintiffs to act if they so choose.  Paid media will include digital banner advertisements targeted specifically to owners and lessees of the vehicle makes and models included in the Settlement along with online video advertisements targeted to adults aged 18 and over.[1211]

24.    To build additional reach and extend exposures, a party-neutral informational release will be issued to approximately 5,000 general media (print and broadcast) outlets and 5,400 online databases and websites throughout the United States.[1312]

25.    A dedicated website will be created for the Settlement.  Plaintiffs will be able to obtain detailed information about the case and review documents including the Long Form Notice attached hereto as **Exhibit B** (in English and Spanish), Settlement Agreement, Settlement Order and answers to frequently asked questions and any other documents the Court may

---

[109] Id. ¶ [8].

[1110]    Id. ¶ [16].

[1211]    Id. ¶¶ [20, 21].

[1312]    Id. ¶ [28].

CONFIDENTIAL

GUC_0001754

require.    Once the plan for allocation between economic loss claims and personal

injury/wrongful death claims is determined it will be posted prominently on the Settlement

website.    Any criteria on eligibility to recover from the Settlement Fund will also be posted

prominently on the Settlement website.    To facilitate locating the case website, sponsored search

listings will be acquired on the three most highly-visited internet search engines:    *Google*,

*Yahoo!* and *Bing*.[14][13]

26.    The Notice Procedures presented here are similar to the procedures proposed by

the debtors in In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bank. D. Del. July 7, 2017) to

provide notice to individuals who own, or may have owned, vehicles equipped with recalled

airbag inflators—serving a postcard via first-class mail, utilizing digital banner advertising and

paid internet search listings, distributing an informational release, and creating a dedicated

website.[15][16][14]

27.    The Parties believe these Notice Procedures will keep costs reasonable under the

circumstances while also reaching the greatest practicable number of Plaintiffs.[17][15]

28.    As noted above, the GUC Trust shall be responsible for funding the cost of the

Notice Procedures up to the Notice Cost Cap Amount.    Pursuant to Section 6.1(b) of the Second

---

[14][13]    Id. ¶¶ [26, 29].

[15]    ~~See Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants ¶¶ 24-28, In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. July 7, 2017).~~

[16]    ~~[NTD – Takata motion has garnered significant objections.  Hearing is scheduled for 8/10 and should provide further clarity on potential revisions to this section].~~

[14]    See Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants ¶¶ 24-28, In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. July 7, 2017).

[17][15]    Id. ¶ 12.

CONFIDENTIAL                                                                    GUC_0001755

Amended and Restated GUC Trust Agreement dated as of July 30, 2015 (the "**GUC Trust**

**Agreement**"), the GUC Trust Administrator is afforded the flexibility to "hold back" from

distributions (with the approval of FTI Consulting, Inc. as monitor of the GUC Trust (in such

capacity, the "**GUC Trust Monitor**"))[1816] otherwise distributable assets for the purposes of,

among other things, funding fees, costs and expenses of the GUC Trust to the extent that such

fees, costs and expenses are not otherwise contemplated by the GUC Trust's budget. *See* GUC

Trust Agreement § 6.1(b).    The GUC Trust Agreement further permits the GUC Trust

Administrator to seek Bankruptcy Court authority to reallocate and use the "held back" funds for

the purposes of satisfying such fees, costs and expenses as incurred (such funds, as reallocated,

"**Other GUC Trust Administrative Cash**"). *Id.* Section 6.13 of the GUC Trust Agreement

provides that to the extent any "expenses, costs, liabilities, obligations or fees [are] incurred by

the GUC Trust... in connection with the wind-down of the Debtors' affairs... [such liabilities]

shall be satisfied... from the applicable portion of Other GUC Trust Administrative Cash." *See*

GUC Trust Agreement § 6.13.

29.    The GUC Trust's agreement to pay up to $[6] million for the notice contemplated

hereby is not currently budgeted by the GUC Trust and falls well within the types of "expenses,

costs, liabilities, obligations or fees" that may be "held back" and reallocated for use by the GUC

Trust pursuant to Section 6.13 of the GUC Trust Agreement.    Accordingly, the GUC Trust

submits that, pursuant to Section 6.1(b) of the GUC Trust Agreement, the request to reallocate up

to $[6] million of otherwise distributable assets for the purposes of funding the Notice

Procedures is warranted.

---

[1816]    As required by Section 6.1 of the GUC Trust Agreement, the GUC Trust Administrator has consulted with the GUC Trust Monitor with respect to the proposed reallocation and use of distributable cash.  GUC Trust Agreement § 6.1. The GUC Trust Monitor has indicated that it supports the relief requested herein.

CONFIDENTIAL

*GDCBR & AGGP COMMENTS 8/8/20178/11/2017*
*DRAFT*

## NOTICE

30.     Notice of this Motion has been provided to all entities that receive electronic

notice from the Court's ECF system and otherwise in accordance with the *Sixth Amended Order*

*Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 1015(c) and 9007 establishing Notice and*

*Case Management Procedures*, dated May 5, 2011 (Bankr. Dkt. No. 10183).

31.     No previous application for the relief sought in this Motion has been made to this

or any other Court.

## CONCLUSION

WHEREFORE the Parties respectfully request entry of the Proposed Order, substantially

in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other

relief as is just and equitable.

Dated: August [ ], 2017                          Respectfully submitted,
       New York, New York

                                                 */s/ Draft*
                                                 Edward S. Weisfelner
                                                 Howard S. Steel
                                                 BROWN RUDNICK LLP
                                                 Seven Times Square
                                                 New York, New York 10036
                                                 Tel: 212-209-4800
                                                 eweisfelner@brownrudnick.com
                                                 hsteel@brownrudnick.com

                                                 Sander L. Esserman
                                                 STUTZMAN, BROMBERG, ESSERMAN
                                                 &PLIFKA, A PROFESSIONAL
                                                 CORPORATION
                                                 2323 Bryan Street, Ste 2200
                                                 Dallas, Texas 75201
                                                 Tel: 214-969-4900
                                                 esserman@sbep-law.com

                                                 *Designated Counsel for the Ignition Switch*
                                                 *Plaintiffs and Certain Non-Ignition Switch*
                                                 *Plaintiffs in the Bankruptcy Court*

11

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO
LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing
Accident Plaintiffs Represented By Hilliard
Muñoz Gonzales L.L.P. and the Law Offices
of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

12

*GDCBR & AGGP COMMENTS 8/8/20178/11/2017*
*DRAFT*

*Counsel to Certain Pre-Closing Accident Plaintiffs*

Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J. HENRY
4715 Fredricksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident Plaintiffs*

Lisa M. Norman (admitted pro hac vice)
T. Joshua Judd (admitted pro hac vice)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Tel: 713-850-4200
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident Plaintiffs*

Matthew Williams
Keith R. Martorana
Gabriel Gillett
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
Tel: 212-351-400

*Counsel for Wilmington Trust Company, as Administrator and Trustee of the GUC Trust*

13

CONFIDENTIAL

# EXHIBIT A

CONFIDENTIAL

GUC_0001760

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
                                                    :
In re:                                              :          Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                 :          Case No.: 09-50026 (MG)
          f/k/a General Motors Corp., et al.,       :
                                                    :
                                    Debtors.         :          (Jointly Administered)
----------------------------------------------------------------X

### ORDER APPROVING NOTICE PROCEDURES
### WITH RESPECT TO PROPOSED SETTLEMENT BY AND
### AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST

Upon the *Motion for Order Approving Notice Procedures with Respect to Proposed Settlement by and Among the Signatory Plaintiffs and the GUC Trust*, dated [ ], 2017 (the "**Motion**"),[~~1~~917] of the Ignition Switch Plaintiffs, Certain Non-Ignition Switch Plaintiffs, Certain Pre-Closing Accident Plaintiffs and the GUC Trust (collectively the "**Parties**") for approval of the Notice Procedures with respect to the 9019 Motion, all as more fully described in the Motion; and the Bankruptcy Court having considered the Motion; and a hearing on the Motion having been held before this Bankruptcy Court on _____, 2017 (the "**Hearing**") to consider the relief requested in the Motion; and the Bankruptcy Court having found that it has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Plan; and the Bankruptcy Court having considered the statements of counsel on the record of the Hearing and the filings of the parties in connection the Motion; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record of the Hearing; and it appearing that proper and adequate notice of the Motion has been given and that

---

[~~1~~917]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

1

GUC_0001761

no other or further notice is necessary; and after due deliberation and sufficient cause appearing

therefor, it is

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that the Notice Procedures are approved; and it is further

**ORDERED** that notice of the 9019 Motion in accordance with the Notice Procedures

will be sufficient and effective notice in satisfaction of federal and state due process

requirements and other applicable law to put the parties in interest in these Chapter 11 cases, all

Plaintiffs, and others on notice of the 9019 Motion; and it is further

**ORDERED** that, pursuant to Section 6.1(b) of the GUC Trust Agreement, the GUC

Trust is authorized to reallocate and use up to $[6,000,000] of otherwise distributable assets to

satisfy the costs of the Notice Procedures.

**ORDERED** that, no later than two (2) days after the entry of this Order, New GM shall

turn over to the Parties the names and addresses of (A) all persons in the United States who, as of

July 10, 2009, owned or leased a defective vehicle manufactured by Old GM included in the

Recalls; and (B) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against New GM as

of the date of this Order;

**ORDERED** that, all responses and objections to the 9019 Motion must be filed and

served so as to be received by [ ], 2017 at [ ] (EST); and it is further

**ORDERED** that the hearing on the 9019 Motion shall take place in the Bankruptcy Court

on [ ], 2017 at [ ] (EST); and it is further

**ORDERED** that notice of the 9019 Motion as provided herein shall be deemed good and

sufficient notice of the 9019 Motion; and it is further

2

CONFIDENTIAL

GUC_0001762

**ORDERED** that this Court retains jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

Dated: _____, 2017
      New York, New York

                                       _____
                                       THE HONORABLE MARTIN GLENN
                                       UNITED STATES BANKRUPTCY JUDGE

3

GUC_0001763

~~GDC~~BR & ~~AG~~GP COMMENTS ~~8/8/2017~~8/11/2017
*DRAFT*

# <u>EXHIBIT B</u>

**(Long Form Notice)**

*GDC̶BR & AG̶GP COMMENTS 8/8/2017̶8/11/2017*
*DRAFT*

# EXHIBIT C

**(Short Form Postcard Notice)**

# EXHIBIT D

**(DTC Notice)**

~~GDC~~BR & ~~AGG~~P COMMENTS ~~8/8/2017~~8/11/2017
DRAFT

# EXHIBIT E

**(~~Anzari~~Azari Declaration)**

CONFIDENTIAL

GUC_0001767

| Summary report: | |
|---|---|
| **Litéra® Change-Pro TDC 7.5.0.125 Document comparison done on 8/11/2017 2:58:06 PM** | |
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 102340248_5 _GM - Motion for Order Approving Notice Procedures - GUC Trust Settlement.DOCX | |
| **Modified filename:** GM - Motion for Order Approving Notice Procedures - GUC Trust Settlement.DOCX | |
| **Changes:** | |
| Add | 34 |
| Delete | 45 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 81 |

CONFIDENTIAL

DRAFT
GDC & AG COMMENTS 8/8/17

# United States Bankruptcy Court for the Southern District of New York

## NOTICE OF PROPOSED SETTLEMENT AND ORDER

> **Current and former owners and lessees of certain General Motors vehicles may have their rights affected by a settlement and proposed order, including the release of claims, and may be entitled to a payment from the settlement.**

*The Bankruptcy Court authorized this Notice. This is not a solicitation from a lawyer.*

**If you are an Affected Person (as defined below), your legal rights may be affected whether you act or do not act.**

### Please Read this Notice Carefully

This Notice provides information about a proposed settlement (the "Settlement") and related proposed order ("Order") regarding claims in the bankruptcy cases titled *In re Motors Liquidation Company, et al., f/k/a General Motors Corp.*, Bankr. No. 09-50026, pending before Judge Martin Glenn of the United States Bankruptcy Court for the Southern District of New York (the "Old GM Bankruptcy Case") against the Motors Liquidation Company General Unsecured Creditors Trust (the "GUC Trust") by owners and lessees of General Motors Corporation ("Old GM") vehicles. The claims include allegations that consumers overpaid when they bought cars on or before July 10, 2009 with undisclosed defects in ignition switches, side airbags, or power steering that were included in certain National Highway Traffic Safety Administration ("NHTSA") recalls listed below. The claims also include allegations that consumers suffered personal injury or wrongful death based on or arising from an accident involving certain of these vehicles that occurred prior to July 10, 2009. A motion (the "Settlement Motion") seeking entry of the Order has been filed in the Bankruptcy Court, along with the Settlement Agreement, and can be found at the case website at **www.      .com** (the "Settlement Website").

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **The Settlement Agreement and Order** | • Affected Persons (defined below) can write to the Court about why you do not like the Settlement or the Order.<br><br>• More information about how to object can be found in paragraph ___ and at the Settlement Website at **www.   .com**.<br><br>• The Court will hold a hearing on _____ , 2017 at _____ to determine whether to approve the Settlement Agreement and enter the Order. Please note that the date and time of the hearing is subject to change without further notice other than an announcement on the Settlement Website. |

**QUESTIONS?  VISIT WWW.      .COM**

CONFIDENTIAL

DRAFT
GDC & AG COMMENTS 8/8/17

| | |
|---|---|
| **Distributions** | • The Settlement and Order provide Affected Persons with the exclusive benefit of the Settlement Fund (defined below). Procedures for the administration and allocation to Affected Persons of the Settlement Fund, including criteria for Affected Persons to assert a claim against the Settlement Fund and the allocation methodology, will be established, subject to notice and an opportunity for Affected Persons to object. |

## WHAT THIS NOTICE CONTAINS

### {INSERT TOC}

### BASIC INFORMATION

**1. What is this Notice and why should I read it?**

This Notice is to inform you of the proposed Settlement and Order regarding claims in the Old GM Bankruptcy Case. The Bankruptcy Court has scheduled a hearing on the Settlement Motion on _____, 2017 at  :  a.m./p.m. in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408, Courtroom 523. Please note that the date of the hearing may be changed without notice, other than an announcement on the Settlement Website. Affected Persons are encouraged to visit www._____.com for future updates.

This Notice explains the terms of the Settlement, the Order, and your legal rights.

**2. What are the Settlement and Order about?**

In the Old GM Bankruptcy Case, Ignition Switch Plaintiffs[1] and certain Non-Ignition Switch Plaintiffs[2] sought leave to file late proposed class claims against the GUC Trust seeking relief for alleged economic losses related to Old GM's alleged concealment of serious safety defects in ignition switches, side airbags, and power steering. Certain Pre-Closing Accident Plaintiffs[3] have likewise sought leave to file late personal injury and wrongful death claims against the GUC Trust related to Old GM vehicles.

The Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, certain Pre-Closing Accident Plaintiffs (collectively, the "Signatory Plaintiffs"), and the GUC Trust (together with the Signatory Plaintiffs, the "Parties") negotiated the Settlement Agreement to resolve these claims, and to provide a fund to pay for these and other claims that have been or may be

---

[1]  The term "Ignition Switch Plaintiffs" shall mean those plaintiffs asserting economic loss claims who, as of July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047.

[2]  The term "Non-Ignition Switch Plaintiffs" shall mean those plaintiffs asserting economic loss claims who, as of July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-346 and 14V-540, 14V-118 and 14V-153.

[3]  The term "Pre-Closing Accident Plaintiffs" shall mean those plaintiffs asserting personal injury or wrongful death claims based on or arising from an accident involving an Old GM vehicle that occurred prior to the closing of the Section 363 Sale.

QUESTIONS? VISIT WWW._____.COM

DRAFT
GDC & AG COMMENTS 8/8/17

asserted by other parties against the GUC Trust (which other claims will similarly be resolved by the Order).

The Settlement avoids the risk and cost of a trial, but still provides relief to the Affected Persons. The Signatory Plaintiffs and their attorneys think that the Settlement is in the best interests of Affected Persons and that it is fair, adequate, and reasonable.

## WHO IS INCLUDED IN THE SETTLEMENT AND ORDER?

To see if you are affected by the proposed Settlement or Order, you first have to determine if you are an Affected Person.

**3.  How do I know if I am part of the Settlement or Order?  What is the definition of Affected Person?**

If you fall under one of the categories below, you are an Affected Person whose claims against Old GM, the GUC Trust, the GUC Trust's current and previously distributed assets and certain other parties will be waived and released as part of the proposed Order (and in exchange you will be entitled to assert your claims against the Settlement Fund).

  A.  All persons in the United States who, as of July 10, 2009, owned or leased a vehicle manufactured by Old GM included in the following recalls:

  **(1)** Delta Ignition Switch Vehicles included in Recall No. 14v047: 2005-2010: Chevy Cobalt, 2006-2011 Chevy HHR, 2007-2010 Pontiac G5, 2007-2010 Saturn Sky, 2003-2007 Saturn ION, and 2006-2010 Pontiac Solstice;

  **(2)** Low Torque Ignition Switch Vehicles, which are included in Recall Nos. 14v355, 14v394, and 14v400: 2005-2009:  Buick Lacrosse, 2006-2014 Chevrolet Impala, 2000-2005 Cadillac Deville, 2006-2011 Cadillac DTS, 2006-2011 Buick Lucerne, and 2006-2008 Chevrolet Monte Carlo; 2003-2014 Cadillac CTS and the 2004-2006 Cadillac SRX; and 1997-2005 Chevrolet Malibu, 2000-2005 Chevrolet Impala, 2000-2005 Chevrolet Monte Carlo, 2000-2005 Pontiac Grand Am, 2004-2008 Pontiac Grand Prix, 1998-2002 Oldsmobile Intrigue, and 1999-2004 Oldsmobile Alero;

  **(3)** Other Vehicles with defective ignition switches in Recall Nos. 14V-346, and 14V-540: 2010-2014 Chevrolet Camaro, 2011-2013 Chevrolet Caprice, and 2008-2009 Pontiac G8;

  **(4)** Side Airbag Defect Vehicles included in Recall No. 14v118: 2008-2013 Buick Enclave, 2009-2013 Chevrolet Traverse, 2008-2013 GMC Acadia, and 2008-2010 Saturn Outlook; and

  **(5)** Power Steering Defect Vehicles included in Recall No. 14v153: 2004-2006 and 2008-2009 Chevrolet Malibu, 2004-2006 Chevrolet Malibu Maxx, 2009-2010 Chevrolet HHR, 2010 Chevrolet Cobalt, 2005-2006 and 2008-2009 Pontiac G6, 2004-2007 Saturn Ion, and 2008-2009 Saturn Aura.

  B.  All persons who have suffered personal injury or wrongful death claims based on or arising from an accident involving an Old GM vehicle that occurred prior to July 10, 2009.

QUESTIONS?  VISIT WWW._____.COM

CONFIDENTIAL

DRAFT
GDC & AG COMMENTS 8/8/17

## THE TERMS OF THE SETTLEMENT AGREEMENT AND ORDER

**4.  What would happen to my claim under the proposed Order?**

Under the proposed Order, each Affected Person will be deemed to have waived and released (the "Waiver") any claims that the Affected Person might otherwise directly or indirectly assert against the GUC Trust, the trust administrator of the GUC Trust, the current and previously distributed assets of the GUC Trust, the Motors Liquidation Company Avoidance Action Trust, the holders of beneficial units in the GUC Trust and certain other related parties (the "Released Parties").

If approved by the Bankruptcy Court, the Order will prohibit you from suing or being part of any other lawsuit or claim against the Released Parties that relate to the recalls, the Old GM Bankruptcy Case, or the multi-district litigation pending before Judge Furman in the United States District Court for the Southern District of New York, Case No. 14-md-2543 (JMF) (the "GM MDL"). The Released Parties do NOT include General Motors LLC ("New GM"). The specifics of the Waiver are set out in more detail in the proposed Order, which is posted at www._____.com. The proposed Order describes the Waiver in specific legal terminology. Talk to your own lawyer if you have questions about the Waiver or what it means.

Nothing in the Settlement Agreement is intended to waive any claims against New GM or to be an election of remedies against New GM; nor does the Settlement Agreement or any payments made in connection therewith represent full satisfaction of any claims against Old GM, unless and until such claims are in fact paid in full from every available source; provided, however, that in no event shall any Affected Person be permitted to seek any further payment or compensation from the GUC Trust in respect of their claims or otherwise, other than the Settlement Amount and the Adjustment Shares. Except as mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any claims that any Affected Person may have against New GM or constitute an election of remedies by any Affected Person.

**5.  What will I receive if the Bankruptcy Court enters the proposed Order?**

The proposed Order allows Affected Persons to assert claims against a Settlement Fund for administration and potential satisfaction. The Settlement Fund will consist of the Settlement Amount and may include the Adjustment Shares, as detailed below. Being defined as an Affected Person does not assure that you will receive a distribution from the Settlement Amount, the Adjustment Shares (or their value), or any other consideration contained in the Settlement Fund. Eligibility and criteria for payment will be approved by the Bankruptcy Court at a later date and will be subject to notice on the Settlement Website and an opportunity to object.

Neither the Settlement Amount nor the Adjustment Shares (nor any distribution thereof to any Affected Person) shall represent full and final satisfaction of any claim that any Affected Person may have against New GM, all of which claims are expressly reserved.

**A.  The Settlement Amount**

In exchange for the Waiver, the GUC Trust will pay $15,000,000 (the "Settlement Amount") to the Settlement Fund, subject to the Order becoming a final order (unless the GUC Trust waives the final order requirement).

QUESTIONS? VISIT WWW._____.COM

DRAFT
GDC & AG COMMENTS 8/8/17

## B.  The Adjustment Shares

The Amended Master Sale and Purchase Agreement pursuant to which New GM purchased substantially all of the assets of Old GM provides that if the Bankruptcy Court issues an order ("Claims Estimate Order") finding that the estimated aggregate allowed general unsecured claims against the Old GM estate exceeds $35 billion, then New GM must issue additional shares of New GM common stock (the "Adjustment Shares").  If the estimate reaches or exceeds $42 billion, New GM must issue the maximum amount of Adjustment Shares (30 million shares).

As part of the Settlement Agreement, the GUC Trust, following a review of evidence and expert reports provided by the Signatory Plaintiffs, agreed to support entry of a Claims Estimate Order: (i) finding that the allowable amount of Affected Persons' claims against the GUC Trust, when combined with all of the other allowed general unsecured claims against the Old GM bankruptcy estate, equals or exceeds $42 billion, thus triggering the maximum amount of Adjustment Shares (30 million shares); and (ii) directing that the Adjustment Shares, or the value of the Adjustment Shares, be promptly delivered to the Settlement Fund by New GM.

The Parties have sought entry of the Claims Estimate Order as part of the Settlement Motion. The current value of 30 million shares of New GM common stock is approximately $1.08 billion. Regardless of whether the Claims Estimate Order is entered, the Order would remain binding, including the Waiver and the payment of the Settlement Amount.

The Bankruptcy Court's estimate of the aggregate allowed claims in the Claims Estimate Order shall not operate as a cap on any of the claims of any of the Affected Persons against New GM.

## C.  How will the Settlement Fund be allocated and distributed?

The Settlement Fund is for the exclusive benefit of Affected Persons.  The allocation of the value of the Settlement Fund between the economic-loss claims and the personal injury/wrongful death claims will be done by the lawyers for the Signatory Plaintiffs with the assistance of a court-appointed mediator.  Thereafter, the economic loss lawyer lead counsel and the personal injury lawyer lead counsel will determine the specifics for distribution within each pool, including the criteria for determining eligibility for payment.  Any agreement on the allocation process and the distribution procedure will be described at www._____.com when determined and Affected Persons will be provided with an opportunity to object.

## LEGAL REPRESENTATION

### 6.  Do I have a lawyer in this case?

The counsel to the Signatory Plaintiffs, listed below, negotiated the Settlement Agreement and jointly filed the Settlement Motion.  You will not be charged for services performed by this counsel in negotiating the Settlement Agreement. If you want to be represented by your own lawyer, you may hire one at your own expense, but you do not need to have a lawyer to participate in the Settlement or exercise any of your options with respect to the Settlement.

QUESTIONS? VISIT WWW._____.COM

CONFIDENTIAL

DRAFT
GDC & AG COMMENTS 8/8/17

If you want to contact the counsel for the Signatory Plaintiffs, they can be reached by sending an email to **info@ _____ .com** or as follows:

| | |
|---|---|
| Steve W. Berman<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA 98101<br>Telephone: (206) 623-7292<br>steve@hbsslaw.com | Robert C. Hilliard<br>HILLIARD MUNOZ GONZALES LLP<br>719 S Shoreline Blvd., # 500<br>Corpus Christi, TX 78401<br>Telephone: (361) 882-1612<br>bobh@hmglawfirm.com |
| Elizabeth J. Cabraser<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN<br>275 Battery Street, 29th Floor<br>San Francisco, California 94111<br>Telephone: (414) 956-1000<br>ecabraser@lchb.com | Counsel for Certain Pre-Closing<br>Accident Plaintiffs<br><br>Thomas J. Henry, Esq.<br>THE LAW OFFICES OF THOMAS J.<br>HENRY<br>4715 Fredricksburg, Suite 507<br>San Antonio, TX 78229 |
| Co-Lead Counsel for the Economic Loss<br>Plaintiffs in the MDL Court | Counsel for Certain Pre-Closing<br>Accident Plaintiffs |
| Edward S. Weisfelner<br>BROWN RUDNICK LLP<br>BROWN RUDNICK LLP<br>Seven Times Square<br>New York, New York 10036<br>Tel: 212-209-4800<br>eweisfelner@brownrudnick.com | William P. Weintraub<br>GOODWIN PROCTER LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, New York 10018<br>Tel: 212-813-8800<br>wweintraub@goodwinlaw.com |
| Sander L. Esserman<br>STUTZMAN, BROMBERG, ESSERMAN &<br>PLIFKA, P.C.<br>2323 Bryan Street, Ste 2200<br>Dallas, Texas 75201<br>Tel: 214-969-4900<br>esserman@sbep-law.com | Counsel to Those Certain Pre-Closing<br>Accident Plaintiffs Represented By Hilliard<br>Muñoz Gonzales L.L.P. and the Law Offices<br>of Thomas J. Henry |
| Designated Counsel for the Economic Loss<br>Plaintiffs in the Bankruptcy Court | |

7. **How will the lawyers be paid?**

Procedures for the payment of attorneys' fees for counsel to the Signatory Plaintiffs from the Settlement Fund will be established, subject to notice and an opportunity for Affected Persons to object.

QUESTIONS? VISIT WWW. _____ .COM

CONFIDENTIAL

DRAFT
GDC & AG COMMENTS 8/8/17

## OBJECTING TO THE SETTLEMENT OR ORDER

**8. How do I tell the Court I do not like the Settlement or Order?**

If you are an Affected Person, you can object to the proposed Settlement or proposed Order if you don't like it. You can give reasons why you think the Court should not approve any or all of these items, and the Court will consider your views.

To object, you must file your objection with the Court. To be timely, your objection must be filed with the Court by no later than ＿＿＿＿, **2017 at 4:00 p.m. (Eastern Time)** at the following addresses:

| **The Court** | Judge Martin Glenn |
|---|---|
| | United States Bankruptcy Court for the Southern District of New York <br> One Bowling Green <br> New York, NY 10004-1408 <br> Courtroom: 523 |

**NOTE:** You may mail your objection to the Court, but it must be received by the Court and filed by ＿＿＿, **2017, at 4:00 p.m. (Eastern Time)**. See **www.＿＿＿＿.com** for more information on how to object to the Settlement.

## THE COURT'S APPROVAL HEARING

**9. When and where will the Court decide whether to approve the Settlement and issue the Order?**

The Court will hold a hearing to decide whether to approve the proposed Settlement and Order. The hearing will be on ＿＿＿, ＿, **2017, at ＿:＿ .m.** before Judge Martin Glenn, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408, Courtroom 523. Please note that the date of the hearing may be changed without notice other than an announcement on the Settlement Website. Affected Persons are encouraged to visit www.＿＿＿＿.com for future updates.

At the hearing, the Court will consider whether the proposed Settlement and all of its terms falls within the range of reasonableness required for approval of the Settlement and whether to issue the proposed Order. If there are objections, the Court will consider them. The Court may listen to people who have asked for permission to speak at the hearing and have complied with the other requirements for objections explained in Section ＿＿.

At or after the hearing, the Court will decide whether to approve the proposed Settlement and issue the Order. There may be appeals after that. There is no set timeline for either the Court's final approval decision, or for any appeals that may be brought from that decision, so it is impossible to know exactly when and if the Settlement and Order will become final.

The Court may change deadlines listed in this Notice without further notice. To keep up on any changes in the deadlines, please visit **www.＿＿＿＿.com**.

**10. Do I have to go to the hearing?**

No. Counsel to the Signatory Plaintiffs will appear at the hearing in support of the Settlement and Order and will answer any questions asked by the Court.

QUESTIONS? VISIT WWW.＿＿＿＿.COM

GUC_0001775

DRAFT
GDC & AG COMMENTS 8/8/17

If you send an objection, you don't have to come to Court to talk about it. So long as you filed your written objection on time and complied with the other requirements for a proper objection, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

## 11. May I speak at the hearing?

Yes. If you submitted a proper written objection to the Settlement or Order, you or your lawyer may, at your own expense, come to the hearing and speak.

## GETTING MORE INFORMATION

## 12. How do I get more information about the Settlement and Order?

This Notice summarizes the proposed Settlement and proposed Order. For the precise terms and conditions of the Settlement and Order, please see the Settlement Agreement and proposed Order, available at www.                 .com.

| YOU MAY OBTAIN ADDITIONAL INFORMATION BY | |
|---|---|
| **VISITING THE SETTLEMENT WEBSITE** | Please go to www.              .com, where you will find answers to common questions and other detailed information to help you. |
| **REVIEWING LEGAL DOCUMENTS** | You can review the legal documents that have been filed with the Clerk of Court in these cases at: United States Bankruptcy Court for the Southern District of New York One Bowling Green New York, NY 10004-1408. You can access the Court dockets in these cases through the court documents and claims register website at http://www.motorsliquidationdocket.com/ or through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov. |

**PLEASE DO NOT CALL THE JUDGE OR THE COURT CLERK TO ASK QUESTIONS ABOUT THE LAWSUITS, THE SETTLEMENT, THE PROPOSED ORDER OR THIS NOTICE.**

QUESTIONS? VISIT WWW.              .COM

CONFIDENTIAL

DRAFT
BR & GP COMMENTS 8/4/17

# If you owned or leased a GM vehicle on or before July 10, 2009 your rights may be affected by a proposed settlement and you may be entitled to a payment

A proposed settlement (the "Settlement") has been reached involving claims of owners and lessees of General Motors Corporation ("Old GM") vehicles. The claims include allegations that consumers overpaid when they bought cars on or before July 10, 2009 with undisclosed defects in ignition switches, side airbags, or power steering included in the following recalls: 14V-047, 4V-355, 14V-394, 14V-400, 14V-346, 14V-540, 14V-118 and 14V-153 (the "Recalls"). The claims also include allegations that consumers suffered personal injury or wrongful death from accidents involving Old GM vehicles that occurred before July 10, 2009. If approved, the Settlement will affect your right to bring your own lawsuit against Old GM about these claims and also will offer payments and other benefits. **The purpose of this notice is to inform you of the proposed Settlement and your legal rights.**

**Who is Included?  General Motors LLC's ("New GM") records indicate that you may be affected by the Settlement.** The Settlement includes all persons in the United States who, as of July 10, 2009, (i) owned or leased a vehicle manufactured by Old GM included in one of the Recalls involving Chevrolet, Pontiac, Saturn, Buick, Cadillac, Oldsmobile and GMC model vehicles; and/or (ii) suffered personal injury or wrongful death in an accident involving an Old GM vehicle. Those included are called an "Affected Person." You can go to the Settlement Website, www.XXXXXXXXXXX.com to confirm if your vehicle is included.

**What are the Settlement Terms?**  If the Settlement is approved and the related proposed Settlement Order is entered, each Affected Person will be deemed to provide a waiver and release of any claims they might otherwise directly or indirectly assert against the GUC Trust, the trust administrator of the GUC Trust, the past and present assets of the GUC Trust, the Motors Liquidation Company Avoidance Action Trust and/or the holders of beneficial units in the GUC Trust (collectively, the "Related Parties"). This means that if you have an existing lawsuit against Old GM or the Related Parties that includes the same claims that this Settlement resolves, your lawsuit will end. Also, you will not be able to bring a new lawsuit against Old GM or the Related Parties about these issues in the future. Except as mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any claims that any Affected Person may have against New GM or constitute an election of remedies by any Affected Person, and neither the Settlement Fund nor the Adjustment Shares (nor any distribution thereof to any Affected Person) shall represent full and final satisfaction of any claim that any Affected Person may have against New GM, all of which are expressly reserved. In exchange, the GUC Trust will pay $15 million into the Settlement Fund and support entry of an order estimating the aggregate allowed claims against the Old GM bankruptcy estate, including all Affected Persons' claims, at no less than $42 billion (the "Claims Estimate Order"). If the Claims Estimate Order is entered, New GM may be required to issue up to 30 million shares of New GM common stock to the Settlement Fund. The current value of 30 million shares of New GM common stock is approximately $1.08 billion. For details about the Settlement, the money that may be available to Affected Persons, your eligibility, how the money will be divided, and the waiver and release of claims, you should visit www.XXXXXXXXXX.com and review the Long Form Notice, Settlement Agreement and the proposed Settlement Order.

- 1 -

CONFIDENTIAL

DRAFT
BR & GP COMMENTS 8/4/17

**How Can I Get a Payment?** Being defined as an Affected Person does not assure you will receive a distribution from the Settlement Fund. Overall allocation between economic loss and personal injury plaintiffs will be negotiated by counsel to the Signatory Plaintiffs and approved by the appropriate court. Eligibility and criteria for payment will be approved by the Court. The details will be posted on the Settlement Website and you will be given an opportunity to object.

**Your Other Options.** You can object to the proposed Settlement and the proposed Settlement Order. The Long Form Notice available on the Settlement Website listed below explains how to object to the Settlement. The Court will hold a hearing **on** _____ __, **2017 at** _____[a][p]m to consider whether to approve the Settlement. You may appear at the hearing, either yourself or through an attorney hired by you, but you do not have to. Please note that the date and time of the hearing is subject to change without further notice other than an announcement on the Settlement Website. For more information, call or visit the Settlement Website below.

1-8xx-xxx-xxxx                                    **www._____.com**

[On the back of the postcard will be the plaintiff's name and address, and court logo:]

Important Court-Approved Legal Notice from the United States Bankruptcy Court for the Southern District of New York



Plaintiff John Doe
123 45th Street
Anytown, USA. _____

General Motors Bankruptcy Settlement Information

- 2 -

CONFIDENTIAL

GUC_0001778

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| IN RE: : | Chapter 11 |
| : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, : | No. 09-50026 (MG) |
| f/k/a GENERAL MOTORS CORP., *et al.*, : | |
| : | (Jointly Administered) |
| Debtors. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMENTATION AND ADEQUACY OF GENERAL MOTORS BANKRUPTCY SETTLEMENT NOTICE PROGRAM

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1.    My name is Cameron R. Azari, Esq.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.    I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3.    I am the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"); a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  Hilsoft is a business unit of Epiq Systems Class Action and Claims Solutions ("ECA").

4.    Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history.  With experience in more than 300 cases, notices prepared by Hilsoft have appeared in 53 languages with distribution in almost every country, territory and dependency in the world.  Judges, including in published decisions, have

DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMEATION AND ADEQUACY OF GENERAL
MOTORS BANKRUPTCY SETTLEMENT CLASS NOTICE PROGRAM

CONFIDENTIAL

recognized and approved numerous notice plans developed by Hilsoft, which decisions have always withstood collateral reviews by other courts and appellate challenges.

## EXPERIENCE RELEVANT TO THIS CASE

5.      I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in many of the largest and most significant cases, including: *In re Takata Airbag Products Liability Litigation,* Case No. 1:15-md-02599-FAM (Settlements with Toyota, BMW, Mazda and Subaru) (Comprehensive notice effort in the Takata airbag litigation with individual mailed notice to over 19.5 million vehicle owners/lessees and nationwide media campaign including radio, consumer print and online banner advertisements. Final approval pending); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.) (Comprehensive notice program within the Volkswagen Emissions Litigation that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email. A targeted internet campaign further enhanced the notice effort); *In re: Energy Future Holdings Corp., et. al. (Asbestos Claims Bar Date Notice)*, 14-10979 (CSS) (Bankr. D. Del.) (Large asbestos bar date notice effort, which included individual notice, national consumer publications and newspapers, hundreds of local newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience); *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL 1720 (E.D.N.Y.) ($7.2 billion settlement reached with Visa and MasterCard. The intensive notice program involved over 19.8 million direct mail notices together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications, as

DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMEATION AND ADEQUACY OF GENERAL
MOTORS BANKRUPTCY SETTLEMENT CLASS NOTICE PROGRAM
2

CONFIDENTIAL

well as online banner notices, which generated more than 770 million adult impressions and a case website in eight languages); *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179 (E.D. La.) (Dual landmark settlement notice programs to separate "Economic and Property Damages" and "Medical Benefits" settlement classes. Notice effort included over 7,900 television spots, over 5,200 radio spots, and over 5,400 print insertions and reached over 95% of Gulf Coast residents); *In Re American Express Anti-Steering Rules Antitrust Litigation (II)* ("Italian Colors"), MDL No. 2221 (E.D.N.Y.) (Momentous injunctive settlement regarding merchant payment card processing. Notice program provided individual notice to more than 3.8 million merchants as well as coverage in national and local business publications, retail trade publications and placement in the largest circulation newspaper in each of the U.S. territories and possessions); and *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.) (Multiple bank settlements between 2010-2016 involving direct mail and email to millions of class members and publication in relevant local newspapers. Representative banks include Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M & I Bank, Community Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, Bancorp, Whitney Bank, Associated Bank, and Susquehanna Bank).

6.      Numerous other court opinions and comments as to our testimony, and opinions on the adequacy of our notice efforts, are included in Hilsoft's curriculum vitae included as **Attachment 1**.

7.      In forming my expert opinion, I and my staff drew from our in-depth class action case experience, as well as our educational and related work experiences. I am an active

DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMEATION AND ADEQUACY OF GENERAL
MOTORS BANKRUPTCY SETTLEMENT CLASS NOTICE PROGRAM

3

GUC_0001781

member of the Oregon State Bar, receiving my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College. I have served as the Director of Legal Notice for Hilsoft since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs since that time. Prior to assuming my current role with Hilsoft, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising). Overall, I have over 17 years of experience in the design and implementation of legal notification and claims administration programs and have been personally involved in well over one hundred successful notice programs.

8. I have been directly and personally responsible for designing all of the notice planning here for notice to Plaintiffs, including analysis of the individual notice options and the media audience data and determining the most effective mixture of media required to reach the greatest practicable number of included parties. The facts in this declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Hilsoft and ECA.

9. I have been involved in reviewing or drafting the various forms of Notice described below. Each form is noticeable and written in plain language.

## OVERVIEW

10. This declaration will describe the Settlement Notice Plan ("Notice Plan" or "Plan") and notices (the "Notice" or "Notices") designed by Hilsoft Notifications and proposed here for providing notice of the Settlement in *In Re: Motors Liquidation Company, et al., f/k/a*

CONFIDENTIAL                                                           GUC_0001782

*General Motors Corp., et al.,* Case No. 09-50026 (MG) in the United States Bankruptcy Court for the Southern District of New York to Plaintiffs.

11.   Hilsoft has reviewed the lists of vehicles included in the Settlement. For the Notice Plan, data may need to be obtained from HIS Automotive, driven by Polk ("Polk") and New GM. All lists will be combined and de-duplicated in order to find the most likely current address for each Plaintiff. The individual notice effort will be supplemented by a targeted media campaign. The media potion of the Notice Plan outlined below is targeted to owners and lessees of the makes and models included in the Settlement.

12.   In my opinion, the proposed Notice Plan is designed to reach the greatest practicable number of Plaintiffs through the use of individual notice and paid and earned media. In my opinion, the Notice Plan is comprehensive, reasonable and satisfies the requirements of due process, including its "desire to actually inform" requirement.[1]

13.   Notice shall be disseminated pursuant to the plan and details set forth below and referred to as the "Notice Plan." The Notice Plan was designed to provide notice to the following included group of Plaintiffs:

A. All persons in the United States who, as of July 10, 2009, owned or leased a vehicle manufactured by GM included in the following recalls:

---

[1]  "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 315 (1950).

DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMEATION AND ADEQUACY OF GENERAL MOTORS BANKRUPTCY SETTLEMENT CLASS NOTICE PROGRAM

CONFIDENTIAL

GUC_0001783

**(1)** Delta Ignition Switch Vehicles included in Recall No. 14v047: 2005-2010: Chevy Cobalt, 2006-2011 Chevy HHR, 2007-2010 Pontiac G5, 2007-2010 Saturn Sky, 2003-2007 Saturn ION, and 2006-2010 Pontiac Solstice;

**(2)** Low Torque Ignition Switch Vehicles, which are included in Recall Nos. 14v355, 14v394, and 14v400: 2005-2009: Buick Lacrosse, 2006-2014 Chevrolet Impala, 2000-2005 Cadillac Deville, 2006-2011 Cadillac DTS, 2006-2011 Buick Lucerne, and 2006-2008 Chevrolet Monte Carlo; 2003-2014 Cadillac CTS and the 2004-2006 Cadillac SRX; and 1997-2005 Chevrolet Malibu, 2000-2005 Chevrolet Impala, 2000-2005 Chevrolet Monte Carlo, 2000-2005 Pontiac Grand Am, 2004-2008 Pontiac Grand Prix, 1998-2002 Oldsmobile Intrigue, and 1999-2004 Oldsmobile Alero;

**(3)** Other Vehicles with defective ignition switches in Recall Nos. 14V-346 and 14V-540: 2010-2014 Chevrolet Camaro, 2011-2013 Chevrolet Caprice, and 2008-2009 Pontiac G8;

**(4)** Side Airbag Defect Vehicles included in Recall No. 14v118: 2008-2013 Buick Enclave, 2009-2013 Chevrolet Traverse, 2008-2013 GMC Acadia, and 2008-2010 Saturn Outlook; and

**(5)** Power Steering Defect Vehicles included in Recall No. 14v153: 2004-2006 and 2008-2009 Chevrolet Malibu, 2004-2006 Chevrolet Malibu Maxx, 2009-2010 Chevrolet HHR, 2010 Chevrolet Cobalt, 2005-2006 and 2008-2009 Pontiac G6, 2004-2007 Saturn Ion, and 2008-2009 Saturn Aura.

CONFIDENTIAL
GUC_0001784

B. Plaintiffs asserting personal injury or wrongful death claims based on or arising from an accident involving a vehicle manufactured and sold by Old GM that occurred prior to July 10, 2009 who have (i) filed a lawsuit against New GM as of the date of the Settlement Agreement, or (ii) filed or joined a motion for authorization to file late claims against the GUC Trust.

## NOTICE PLAN

### *Individual Notice – Direct Mail*

14.     A Direct Mail Notice tailored to the potential owners/lessees of the included Old GM vehicles will be sent via First Class mail.  Address updating (both prior to mailing and on undeliverable pieces) and re-mailing protocols will meet or exceed those used in other complex litigation settlements.

15.     I understand that a comprehensive list of potential Plaintiffs exists – consisting of the current and former owners and lessees of the Old GM vehicles included in the Settlement. The database will be acquired from Polk and New GM and, if available, supplemented by other sources.  All data may be de-duplicated and updated in order to find the most likely current address for each current and former vehicle owner/lessee. This data will be used to provide individual notice to virtually all Plaintiffs.

16.     The mailed notice will consist of a large format, 2-image postcard notice (the "Direct Mail Notice") that clearly and concisely summarizes the Settlement.  The Direct Mail Notice will direct the recipients to a website dedicated specifically to the Settlement where they can access additional information and learn about how to participate.  The Direct Mail Notices will be sent by United States Postal Service ("USPS") first class mail.

CONFIDENTIAL

GUC_0001785

17.    Prior to mailing, all mailing addresses provided will be checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS").[2] Any addresses that are returned by the NCOA database as invalid will be updated through a third-party address search service.  In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

18.    Direct Mail Notices returned as undeliverable will be re-mailed to any new address available through postal service information, for example, to the address provided by the postal service on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the postal service returns the piece with the address indicated, or to better addresses that may be found using a third-party lookup service ("ALLFIND", maintained by LexisNexis).   Upon successfully locating better addresses, Notices will be promptly re-mailed.

19.    Additionally, a Long Form Notice will be mailed to all persons who request one via the toll-free phone number or by mail. The Long Form Notices will also be available for download or printing at the website (in both English and Spanish).  Copies of the proposed Direct Mail Notice and Long Form Notice are included with the materials filed by the Parties.

_____

[2] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years.  The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMEATION AND ADEQUACY OF GENERAL MOTORS BANKRUPTCY SETTLEMENT CLASS NOTICE PROGRAM

8

CONFIDENTIAL                                                                      GUC_0001786

*Paid Media*

20.    Due to the comprehensive individual notice effort described above only moderate supplemental paid media will be provided for the Settlement.  The media selected is designed to both notify Plaintiffs who may not see the Direct Mail Notice and also to support and remind Plaintiffs to act if they so choose.

21.    The Notice Plan will include digital banner advertisements targeted specifically to owners and lessees of the vehicle makes and models included in the Settlement along with online video advertisements targeted to adults 18+.  The Banner and Video Notice will provide Plaintiffs with additional opportunities to be apprised of the Settlement and their rights under it.  Anyone who sees the Banner or Video Notice can click on it and instantly be routed to the Settlement website for detailed information about the Settlement.

22.    The targeted internet campaign will include banner notices measuring 300x250 pixels, 728x90 pixels, and 320x50 pixels purchased through the *Conversant Ad Network*, which represents thousands of digital properties – including inventory on both desktop and mobile devices – across all major content categories.  Banner notices would be purchased through two hyper-targeted strategies and run for a 45-day period of time.

23.    First, banner notices will be targeted using a "list activation" strategy.  This is accomplished by matching the actual names and physical/email addresses of known Plaintiffs with current consumer profiles.  This strategy ensures individuals receiving direct notice are also provided reminder messaging online via banner ads.

DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMEATION AND ADEQUACY OF GENERAL
MOTORS BANKRUPTCY SETTLEMENT CLASS NOTICE PROGRAM
9

CONFIDENTIAL

GUC_0001787

24.   Second, banner notices will be targeted using household-level automotive data. This information will include purchasers/owners of specific vehicles makes, models, and years to which banner notices will then be served.  While this will be partially duplicative of the first strategy, this group of individuals would also include potential former owners and anyone for which an address is unknown.

25.   The online video advertisements include pre-roll video ads that will be viewable on *YouTube* and other sites with *YouTube* embedded videos. The video ads will appear prior to the viewer's main video. 15-second and 30-second video ads will be purchased and targeted to adults nationwide.

### *Internet Sponsored Search Listings*

26.   To facilitate locating the case website, sponsored search listings will be acquired on the three most highly-visited internet search engines:  *Google*, *Yahoo!* and *Bing*.  When search engine visitors search on common keyword combinations such as "GM Car Settlement," "General Motors Settlement," or "GM Ignition Settlement," the sponsored search listing will generally be displayed at the top of the page prior to the search results or in the upper right hand column.

27.   The Sponsored Search Listings will be provided to search engine visitors across the United States, and will assist Plaintiffs in finding and accessing the Case Website.

### *Informational Release*

28.   To build additional reach and extend exposures, a party-neutral Informational Release will be issued to approximately 5,000 general media (print and broadcast) outlets and 5,400 online databases and websites throughout the United States.  The Informational Release

DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMEATION AND ADEQUACY OF GENERAL
MOTORS BANKRUPTCY SETTLEMENT CLASS NOTICE PROGRAM
10

GUC_0001788

will serve a valuable role by providing additional notice exposures beyond that which will be provided by the paid media. There is no guarantee that any news stories will result, but if they do, potential Plaintiffs will have additional opportunities to learn that their rights are at stake in credible news media, adding to their understanding. The Informational Release will include the toll free number and Case Website address.

### *Case Website, Toll-free Telephone Number and Postal Mailing Address*

29. A dedicated website will be created for the Settlement. Plaintiffs will be able to obtain detailed information about the case and review documents including the Long Form Notices (in English and Spanish), Settlement Agreement, Settlement Order, and answers to frequently asked questions (FAQs) and any other documents the Court may require. Once the allocation plan is determined it will be posted prominently on the Settlement Website. If Plaintiffs will need to file a claim, the website may be configured to allow filing online. Any claim forms would also be available to download and print for filing via mail.

30. The Case Website address will be displayed prominently on all notice documents. The Banner Notices will link directly to the Case Website.

31. A toll-free phone number will be established to allow Plaintiffs to call for additional information, listen to answers to FAQs and request that a Long Form Notice be mailed to them. Live operators will be available as needed. The toll-free number will be prominently displayed in the Notice documents as appropriate.

32. A post office box will also be used for the Settlement, allowing Plaintiffs to contact the claims administrator by mail with any specific requests or questions.

### PLAIN LANGUAGE NOTICE DESIGN

DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMEATION AND ADEQUACY OF GENERAL
MOTORS BANKRUPTCY SETTLEMENT CLASS NOTICE PROGRAM
11

CONFIDENTIAL

33.     The proposed Notices are designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Plaintiffs. The Notices contain substantial, albeit easy-to-read, summaries of all of the key information about Plaintiffs' rights and options to encourage readership and comprehension.

34.     The Direct Mail Notice features a prominent headline and is clearly identified as a notice from the Bankruptcy Court. It includes a color logo from the Court to add credibility to the notice. The postcard is printed in a larger 8 by 5.5 inch size on heavier postcard stock. These design elements alert recipients and readers that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice.

35.     The Long Form Notices provide substantial information to Plaintiffs. It begins with a summary section, which provides a concise overview of important information about the Settlements. A table of contents, categorized into logical sections, helps to organize the information, while a question and answer format makes it easy to find answers to common questions by breaking the information into simple headings.

36.     The Direct Mail Notices and the Long Form Notices will be available in English and Spanish at the website.

## CONCLUSION

37.     In complex litigation notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice. In this matter we are operating under Federal Rules of Bankruptcy Procedure 2002 and 9008. The general premise set forth in Rule

DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMEATION AND ADEQUACY OF GENERAL
MOTORS BANKRUPTCY SETTLEMENT CLASS NOTICE PROGRAM

CONFIDENTIAL                                                    GUC_0001790

2002 is that notice must be provided by mail.  We are in full compliance with that here.  The supplemental media plan is in compliance with Rule 9008.

38.    The Notice Plan described above is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action."[3] The Notice Plan schedule will afford enough time to provide full and proper notice to Plaintiffs before the objection deadline.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August _____, 2017.

_____
Cameron R. Azari, Esq.

© 2017 Hilsoft Notifications

---

[3] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMEATION AND ADEQUACY OF GENERAL
MOTORS BANKRUPTCY SETTLEMENT CLASS NOTICE PROGRAM

13

CONFIDENTIAL

GUC_0001791