# Exhibit HH

Page 1

1  UNITED STATES BANKRUPTCY COURT
   SOUTHERN DISTRICT OF NEW YORK
2  _____
3  In re:
4  MOTORS LIQUIDATION COMPANY, et al.,
   f/k/a General Motors Corp., et al.,
5
                    Debtors.
6
   Cast No.: 09-50026 (MG)
7  _____
8
                    November 16, 2017
9                   10:01 a.m.
10
11
12
13       DEPOSITION of DANIEL GOLDEN,
14  held at the offices of AKIN GUMP
15  STRAUSS HAUER & FELD LLP, One Bryant
16  Park, New York, New York before Wayne
17  Hock, a Notary Public of the State of
18  New York.
19
20
21
22
23
24
25

Page 126

1 that there was a binding deal at that
2 time?
3     MR. ZENSKY: Objection.
4     THE WITNESS: I don't know
5 what Howard Steel meant to convey
6 by that. I know the circumstances
7 under which he wrote the letter.
8 The judge was pressing for a status
9 report and I think Howard was
10 trying to be careful in
11 unilaterally describing the status
12 of the discussions.
13     Q.    Do you think if there was a
14 binding deal he would have written
15 binding deal?
16     A.    I don't know what he would
17 have done.
18     Q.    When you saw this e-mail, did
19 you have any reaction to it one way or
20 the other?
21     A.    Other than I hoped that this
22 would satisfy the court in terms of
23 whether there should be a hearing or
24 not that you were insisted upon, I
25 didn't have any meaningfully reaction

Page 127

1 to that.
2     Q.    Did you see a draft of this
3 letter before it was submitted?
4     MR. STYANT-BROWN: Objection.
5     Asked and answered.
6     THE WITNESS: I don't recall
7 that.
8     (Whereupon, an e-mail dated
9 August 11, 2017 was marked Exhibit 56
10 for identification.)
11     MR. STEINBERG: What has been
12 marked as Exhibit 56 bears Bates
13 stamp GUC 1558 through 1588.
14     Q.    And I want to call your
15 attention to -- just bear with me a
16 second -- the e-mail that starts on the
17 bottom of 1558 from Keith Martorana
18 dated August 8, 2017 at 8:52 p.m. And
19 I note that you were one of the
20 directed parties, recipients to this
21 e-mail. So you can look at that and I
22 have a few questions about it.
23     A.    The Martorana 8:52 e-mail?
24     Q.    Yes.
25     A.    (Reviewing).

Page 128

1     Yeah, I read that.
2     Q.    All right.
3     So the e-mail states that, in
4 part, "that we understand that Akin" --
5 "we understand from Akin that Brown
6 Rudnick will be providing the backup
7 for the new cost of the noticing plan.
8 Please provide this document when
9 possible."
10     Do you know whether, as of
11 the time of this e-mail, August 8,
12 2017, that there was a binding
13 agreement between the parties?
14     MR. ZENSKY: Objection.
15     THE WITNESS: There was
16 certainly an agreement among the
17 parties on the economic terms. The
18 documentation to evidence that
19 agreement was very far along.
20 There may have been a couple of
21 open nits that were attempted to be
22 addressed but, in my view, I
23 certainly believed that the two
24 parties to the agreement, that is
25 the GUC Trust and the plaintiffs,

Page 129

1 had agreed to go forward on this
2 basis.
3     Q.    So do you think that this --
4 by August 8 there was a final signoff
5 on the documents?
6     A.    No, I said there wasn't.
7 That was a process that was being
8 undertaken through this e-mail and the
9 prior e-mail from Howard Steel
10 enclosing all of the documents right
11 after the all hands call.
12     MR. ZENSKY: I think you mean
13 the subsequent e-mail.
14     THE WITNESS: The subsequent
15 e-mail, sorry.
16     Q.    But this is dated as of
17 August 8.
18     Do you think that there was a
19 binding agreement as of August 8?
20     MR. ZENSKY: Objection. Asked
21 and answered literally thirty
22 seconds ago, not to mention other
23 times.
24     MR. STEINBERG: Yeah, but he
25 didn't answer that, that's why I

33 (Pages 126 - 129)

Page 130

1  asked the question again.
2      MR. ZENSKY: He answered it a
3  thousand percent.
4      Can you read his answer back,
5  please?
6      MR. KARLAN: "No, I said there
7  wasn't."
8      MS. NEWMAN: No, that was to a
9  different question, Mitch.
10     THE WITNESS: Look, I want to
11 progress. Ask the question, I'll
12 answer it again.
13  Q.  Is it your testimony that
14 there was a binding agreement among the
15 parties as of August 9?
16     MR. WEISFELNER: Objection.
17     MR. ZENSKY: Objection. Asked
18 and answered.
19  Q.  Yes or no.
20  A.  Yes.
21  Q.  So by August 9 there was a
22 binding agreement among the parties?
23  A.  Yes.
24     (Whereupon, an e-mail dated
25 August 10, 2017 was marked Exhibit 57

Page 131

1  for identification.)
2  Q.  I show you -- Dan, I show you
3  what has been marked Exhibit Number 59
4  which bears Bates stamp numbers 1904
5  through -- GUC 1904 through 1927.
6      MS. NEWMAN: I think this is
7  fifty-seven.
8      MR. STEINBERG: Fifty-seven?
9  Fifty-seven, I apologize.
10  Q.  And I want you to first focus
11 on the e-mail dated August 10, 2017 on
12 page 1904 from Ed Weisfelner to a
13 string of people including Debbie
14 Newman from your firm and I'm assuming
15 you're here, Dan, but I'm not sure. I
16 have to go through all the lines.
17     MS. NEWMAN: Which one are you
18 looking at?
19     MR. STEINBERG: The top one.
20     MS. NEWMAN: He's there.
21  Q.  You're in the top, you're in
22 the to.
23     So do you recall receiving
24 this e-mail?
25  A.  I do.

Page 132

1  Q.  So the e-mail says from Ed,
2  "boys, be nice, lots of hard work and
3  we're on the verge of being done."
4      This is dated two days after
5  the date that you thought there was a
6  binding agreement; correct?
7  A.  Uh-huh.
8      MR. ZENSKY: Objection.
9  Q.  Is your answer yes?
10  A.  Yes.
11  Q.  Okay.
12     And then on page 1912 there's
13 an e-mail from you which says -- and to
14 a bunch of people, it says, "all, I
15 would like to see if we can schedule an
16 all hands call for tomorrow to finalize
17 all of the settlement documents and
18 motions." And then it describes a
19 conversation that you had with me and
20 then you're asking for the time for the
21 call.
22     Do you see it?
23  A.  Yeah.
24  Q.  All right.
25     So this is the all hands

Page 133

1 meeting that you were referring to?
2      MR. ZENSKY: Objection. I
3  think you left part of the e-mail
4  out, but it will speak for itself.
5      MR. STEINBERG: He can read
6  it.
7      THE WITNESS: I'm sorry, what
8  was the question?
9  Q.  This was the all hands
10 meeting that you were referring to?
11  A.  All hands call.
12  Q.  All hands call?
13  A.  Yes.
14  Q.  But it's your testimony that
15 you had a binding agreement before you
16 had the all hands call to go over the
17 documents?
18     MR. ZENSKY: Objection.
19     THE WITNESS: Yes.
20  Q.  Do you know whether this all
21 hands call -- do you know whether the
22 discussion with me on August 9 had
23 anything to do with what was on the
24 calendar at the MDL conference on
25 August 11?