# Exhibit KK

```
                                                          Page 1

   IN RE:                      )
                               )
   MOTORS LIQUIDATION          )
   COMPANY, et al.,            )
   F/k/a General Motors        ) Chapter 11
   Corp., et al.,              ) Case No.: 09-50026 (MC)
                               )
        Debtors,               )
                               )
                               ) (Jointly Administered)
                               )
                               )
                               )
                               )
*************************************************************
            ORAL AND VIDEOTAPED DEPOSITION OF
                     MELANIE MOSLEY
                   November 22, 2017
                        Volume 1
*************************************************************
     ORAL AND VIDEOTAPED DEPOSITION OF MELANIE MOSLEY,
produced as a witness at the instance of the DEFENDANT,
was taken in the above-styled and numbered cause on
November 22, 2017 from 9:22 a.m. to 10:26 a.m., before
Toyloria Lanay Hunter, CSR in and for the State of
Texas, reported by machine shorthand, at the law offices
of Gibson Dunn & Crutcher, LLP, 1221 McKinney Street,
Houston, Texas 77010-2046, pursuant to the Federal Rules
of Civil Procedure and the provisions stated on the
record or attached hereto.
```

Page 14

1 whether it's Phase 1 or Phase 2, if it relates to a
2 document that Ms. Mosley has not seen, has not signed
3 and is not aware of, what is the purpose of -- of this
4 examination?
5        Again, I'm not -- I don't want to
6 interrupt you. I'm just -- I'm just saying, where does
7 it end?
8        MR. FORTNEY: I will try to make it end
9 quickly --
10        MR. STEINBERG: Excuse me. This is
11 Arthur Steinberg. May I suggest that the questions be
12 asked and at the point you want to stop the questions
13 you'll pose your objections and then you continue the
14 colloquy. But otherwise please ask your questions and
15 see how far we can go.
16        MR. FORTNEY: Rudy, I will not be going
17 paragraph by paragraph. I have some questions that
18 could be asked of the witness, for instance, whether she
19 knows two individuals that are separate and distinct
20 from this document. So I will try to stick to that.
21        MR. GONZALES: Okay.
22 BY MR. FORTNEY:
23    Q. All right. Ms. Mosley, do you believe you are
24 represented by Goodwin Proctor, LLP, as your attorneys?
25    A. No.

Page 15

1        MR. GONZALES: Objection to the form.
2 BY MR. FORTNEY:
3    Q. Ms. Mosley, you may answer.
4    A. I'm sorry. Rephrase the question? Ask the
5 question again?
6    Q. Sure. Do you believe that Goodwin Proctor,
7 LLP, are your attorneys?
8    A. No.
9    Q. Do you have any engagement agreement with
10 Goodwin Proctor?
11    A. No.
12    Q. Okay. Thank you.
13        Could you turn to Exhibit 83.
14        MR. FORTNEY: And for those on the line,
15 this is the proof of claim filed in connection -- or as
16 an exhibit to the motion that is Exhibit 81.
17 BY MR. FORTNEY:
18    Q. And if you could turn to page 74 of that
19 document, Ms. Mosley, my question will be, have you seen
20 this portion of the document that's pages 74 through 77
21 before?
22    A. (Reading.) Yes.
23    Q. You have seen this before; is that correct?
24    A. Yes.
25    Q. And when do you believe you first saw this?

Page 16

1    A. July 7th, 2015.
2    Q. And is that your signature at the bottom of
3 page 74?
4    A. Yes.
5    Q. And do you know what counsel represented you
6 in filing this document with the court?
7    A. Yes.
8    Q. And who was that counsel?
9    A. Hilliard, Munoz & Gonzales.
10    Q. Thank you. You can set those exhibits aside.
11        Could you please look at the document that
12 was previously marked as Exhibit 3. It's a thicker
13 document.
14        (Exhibit 3 marked.)
15        MR. HUNNICUTT: And, Rudy this is the
16 declaration of the Edward Weisfelner in support of the
17 motion to enforce.
18        MR. GONZALES: Roger that. Thank you.
19 BY MR. FORTNEY:
20    Q. Have you had a chance to review this document?
21 And I don't think you need to read the whole thing. I'm
22 going to point you to Exhibit H. But do you have the
23 document in front of you?
24    A. Yes.
25    Q. Could you turn about halfway through the --

Page 17

1 the stack of papers that makes up Exhibit 3 to
2 Exhibit H.
3    A. Okay.
4    Q. My question is, have you seen this document
5 before that is Exhibit H to the Weisfelner declaration?
6    A. No.
7    Q. Have you seen any portion of this document
8 before?
9    A. No.
10    Q. Can you turn to page 1 of the document, not
11 the Exhibit H, but page 1 of the actual document
12 entitled "Settlement Agreement"; do you see that?
13    A. (Reading.) The page with the --
14        MR. HUNNICUTT: You mean page 1 of
15 Exhibit H? She's on page 1 of the entire Exhibit 3.
16 BY MR. FORTNEY:
17    Q. Okay. Sorry. Page 1 of the Exhibit H?
18        MR. HUNNICUTT: To speed this up I'm
19 handing her the page that --
20        MR. FORTNEY: Sure. You want to enter a
21 flag there or a clip or something.
22    A. Okay.
23 BY MR. FORTNEY:
24    Q. Would you -- you see that it says "Settlement
25 Agreement" at the top?

Page 18

1  A.  Yes.
2  Q.  Did you participate in negotiating this
3 Settlement Agreement at all?
4  A.  No, I did not.
5  Q.  Were you aware that a settlement agreement was
6 being negotiated in this case?
7      MR. GONZALES:  I'm going to object.  And,
8 Ms. Mosley, just be aware that you had an
9 attorney/client relationship with my law firm.  So I
10 would not want you to disclose any specific
11 conversations or what you received from our law firm and
12 that of Mr. Henry.
13      So I think that you can speak generally
14 as to whether or not you were aware.  But do not
15 disclose any communications with your lawyers, okay?
16      THE WITNESS:  Okay.
17      MR. GONZALES:  And you might -- if you
18 don't mind, Jonathan, re-ask that specific question or
19 the court reporter can read it back.  I just wanted to
20 make sure that Ms. Mosley did not violate any
21 attorney/client privilege.
22 BY MR. FORTNEY:
23  Q.  Sure.  Happy to.
24      Ms. Mosley, the question is, were you
25 aware that a settlement agreement was being negotiated

Page 19

1 in this case?
2  A.  Yes, but upon hiring my attorneys, I gave them
3 the authority to handle any settlements or arrangements
4 for me.
5  Q.  When did you first become aware that there was
6 a settlement -- there were -- sorry.  Strike that.  Let
7 me start over.
8      When did you first become aware that your
9 attorneys were working to settlement this case?
10  A.  Approximately July 10th of 2017.
11  Q.  And before responding to this next question, I
12 don't want you to tell me the contents of any
13 communications you received.
14      But is -- did you receive the
15 communications about the negotiations of this -- of the
16 settlement in this case via a letter from your counsel?
17  A.  I'm sorry.  Ask the question again?
18  Q.  You testified that you became aware
19 approximately July 10th of 2017 that there was a
20 negotiation of a settlement in this action taking place,
21 correct?
22  A.  Correct.
23  Q.  And did you become aware of that via a letter
24 from your counsel?
25  A.  Yes.

Page 20

1  Q.  Have you reviewed that letter since July 2017?
2  A.  Do you mean have I reviewed it again?
3  Q.  Yes.
4  A.  No.
5  Q.  No, you've not reviewed that letter.  But you
6 know the letter was from July 10, 2017, correct?
7  A.  Yes.
8  Q.  And why do you have a specific recollection of
9 July 10, 2017?
10  A.  It's approximately July 10th of 2017.
11  Q.  What make that date stick out in your mind?
12  A.  Because I know that's when we first received
13 the letter.
14  Q.  Did you review that letter in preparation for
15 this deposition?
16  A.  No.
17  Q.  Did you have any other communications
18 regarding this Settlement Agreement that came in the
19 form of a letter from your counsel?
20  A.  Yes.
21      MR. GONZALES:  And, again, Ms. Mosley --
22 okay.  Yes, thank you.
23 BY MR. FORTNEY:
24  Q.  And when approximately did you receive
25 additional letters from your counsel?

Page 21

1  A.  Approximately September of 2017.
2  Q.  And any other letters after the September 2017
3 letter?
4  A.  Yes.  One more, but I'm not aware of the date.
5  Q.  Thank you.  Were you ever asked by your lawyer
6 for permission to sign the Settlement Agreement on your
7 behalf?
8      MR. GONZALES:  Ms. Mosley, I'm going to
9 instruct you not to answer that question.  It's
10 attorney/client privilege.
11 BY MR. FORTNEY:
12  Q.  Ms. Mosley, did you ever instruct a lawyer to
13 sign this Settlement Agreement on your behalf?
14      MR. GONZALES:  Ms. Mosley, I'm going to
15 instruct you not to answer that question.  It's an
16 attorney/client privilege.
17      MR. FORTNEY:  Rudy, I believe there's
18 been a ruling from the court that the communication of a
19 business decision to sign a settlement agreement or sign
20 off on a settlement agreement or authorize a settlement
21 agreement is not privileged and should be disclosed.
22      MR. GONZALES:  I think your -- I think
23 you are referring to the exhibit where Beth Andrews was
24 responding to an e-mail from Mr. Mark Pirrana where
25 Mr. Mark Pirrana was forwarding an e-mail from the --