# Exhibit LL

```
                                                          Page 1

 1
      IN RE:                       )
 2                                 )
      MOTORS LIQUIDATION           )
 3    COMPANY, et al.,             )
      F/k/a General Motors         )
 4    Corp., et al.,               )
                                   ) Chapter 11
 5           Debtors,              ) Case No.: 09-50026 (MC)
                                   )
 6                                 )
                                   )
 7                                 ) (Jointly Administered)
                                   )
 8                                 )
      **********************************************************
 9              ORAL AND VIDEOTAPED DEPOSITION OF
10                       JAMES BARTON
11                     November 22, 2017
12                         Volume 1
      **********************************************************
13       ORAL AND VIDEOTAPED DEPOSITION OF JAMES BARTON,
14    produced as a witness at the instance of the DEFENDANT,
15    was taken in the above-styled and numbered cause on
16    November 22, 2017 from 10:51 a.m. to 11:55 a.m., before
17    Toyloria Lanay Hunter, CSR in and for the State of
18    Texas, reported by machine shorthand, at the law offices
19    of Gibson Dunn & Crutcher, LLP, 1221 McKinney Street,
20    Houston, Texas 77010-2046, pursuant to the Federal Rules
21    of Civil Procedure and the provisions stated on the
22    record or attached hereto.
23
24
25
```

|  | Page 18 |  | Page 20 |
|---|---|---|---|
| 1 | MR. FORTNEY: So if he wants to page | 1 | Q. And my question is, when did you participate |
| 2 | through it, that will help with answering that question. | 2 | in negotiating this settlement agreement? |
| 3 | MS. NORMAN: Okay. | 3 | THE WITNESS: Was it August? |
| 4 | A. (Reading.) Okay. | 4 | MS. NORMAN: I -- I can't answer for you. |
| 5 | BY MR. FORTNEY: | 5 | A. Yeah. It was -- it was in the fall. |
| 6 | Q. Have -- do you recognize this document? | 6 | BY MR. FORTNEY: |
| 7 | A. No, I don't. | 7 | Q. It was in the fall? |
| 8 | Q. Have you ever seen this document before today? | 8 | A. Right. |
| 9 | A. No. | 9 | Q. Do you see on page 1 of the document, not |
| 10 | Q. Okay. Could you turn to Exhibit H? | 10 | Exhibit H page, but page 1? |
| 11 | A. Okay. | 11 | A. Yeah, right here where it says -- |
| 12 | MS. NORMAN: So that's the cover page and | 12 | Q. It says at the top: "Dated as of August, |
| 13 | then this is the settlement. | 13 | blank, 2017"? |
| 14 | BY MR. FORTNEY: | 14 | A. Right. |
| 15 | Q. Can you review the document that is at | 15 | MS. NORMAN: Here. Hold on. Let me take |
| 16 | Exhibit H? | 16 | this clip off. Hold on. |
| 17 | MS. NORMAN: He wants you to take a look | 17 | BY MR. FORTNEY: |
| 18 | at just Exhibit H. So let me -- | 18 | Q. Does that refresh your recognize -- |
| 19 | THE WITNESS: Oh, well, let me let you | 19 | MS. NORMAN: Hold on. Let me take the |
| 20 | look at it. | 20 | clip off of it because we can't see it. |
| 21 | MS. NORMAN: Yeah. Let me just see where | 21 | MR. FORTNEY: Sure. |
| 22 | it ends. All right. So this is Exhibit H, and you just | 22 | A. August of -- |
| 23 | flip through that. | 23 | MS. NORMAN: He's saying it's dated as of |
| 24 | A. (Reading.) All right. | 24 | August, blank, 2017. |
| 25 | BY MR. FORTNEY: | 25 | A. August 2017, yeah. |

|  | Page 19 |  | Page 21 |
|---|---|---|---|
| 1 | Q. Do you recognize this document? | 1 | BY MR. FORTNEY: |
| 2 | A. No, I don't. | 2 | Q. Does the line that reads: "Dated as of" -- |
| 3 | Q. Have you ever seen this document before today? | 3 | A. Yeah, I see that August 2017. |
| 4 | A. No. | 4 | Q. Does that refresh your recollection as to when |
| 5 | Q. Have you received any communications regarding | 5 | you may have participated in negotiating this document? |
| 6 | this document? | 6 | A. Well, it could have been. But I really |
| 7 | A. No. | 7 | can't -- I don't remember any of them. It's been. . . |
| 8 | Q. Did you participate in negotiating this -- any | 8 | Q. Okay. Now, as you -- have you ever seen any |
| 9 | portion of this settlement agreement? | 9 | version of this document before? |
| 10 | A. Yes. | 10 | A. No. |
| 11 | Q. And when did you participate in negotiating | 11 | Q. But you believe you participated in the |
| 12 | the settlement agreement? | 12 | negotiation of this document? |
| 13 | MS. NORMAN: It might be -- it might be | 13 | A. Well, my lawyer did. |
| 14 | helpful if you tell him what you mean by "negotiated." | 14 | Q. Okay. My question is, did you participate in |
| 15 | MR. FORTNEY: Let him ask the question. | 15 | negotiating this document; you personally, not your |
| 16 | He -- he understands, I think, because he responded that | 16 | lawyers? |
| 17 | he did participate in the negotiating the settlement. | 17 | A. No. |
| 18 | MS. NORMAN: Okay. | 18 | Q. Were you aware before today that this |
| 19 | A. Okay. What -- what do you -- do you exactly | 19 | settlement agreement existed? |
| 20 | mean when you say -- you've got to rephrase the question | 20 | A. Yes. |
| 21 | to me. | 21 | Q. And how did you come to be aware of this -- |
| 22 | BY MR. FORTNEY: | 22 | existence of this settlement agreement? |
| 23 | Q. You told me that you participated in | 23 | A. My lawyers. |
| 24 | negotiating this settlement agreement, correct? | 24 | Q. Okay. And when did you become aware of the |
| 25 | A. Right. | 25 | existence of this settlement agreement? |

|  | Page 22 |
|---|---|
| 1 | A. It was back in -- back in the fall. |
| 2 | Q. Could you turn to page 20 of the settlement |
| 3 | agreement? |
| 4 | A. Yes, okay. |
| 5 | Q. And do you see at the bottom, there's a |
| 6 | signature block for Andrews Myers on behalf of the PIWD |
| 7 | plaintiffs, and the name is Lisa M. Norman? |
| 8 | A. Right. |
| 9 | Q. Did you ever direct Ms. Norman or anyone at |
| 10 | Andrews Myers to sign this document? |
| 11 | A. Yes. |
| 12 | Q. And when did you direct them to do that? |
| 13 | A. When I -- I give them full -- full power when |
| 14 | I started my plaintiff -- started my case. |
| 15 | Q. Did you ever direct your counsel at Andrews |
| 16 | Myers to sign this document? |
| 17 | A. Yes. |
| 18 | Q. Did you use in words or phrase, "I'm directing |
| 19 | you to sign this document"? |
| 20 | MS. NORMAN: And I'm -- I'm going to |
| 21 | object right now on the basis of attorney/client |
| 22 | privilege. |
| 23 | Mr. Barton, I'm going to tell you -- I'll |
| 24 | let you answer generally, but don't get into the |
| 25 | specifics of our conversation -- |

|  | Page 23 |
|---|---|
| 1 | THE WITNESS: Right. |
| 2 | MS. NORMAN: -- because those are |
| 3 | privileged, okay? |
| 4 | THE WITNESS: Okay. |
| 5 | MS. NORMAN: But you can answer |
| 6 | generally. |
| 7 | MR. FORTNEY: I -- |
| 8 | THE WITNESS: What was the question |
| 9 | again? |
| 10 | BY MR. FORTNEY: |
| 11 | Q. Did you ever direct your counsel at Andrews |
| 12 | Myers to sign the settlement agreement? |
| 13 | A. Yes. |
| 14 | Q. Is it your testimony to the Court that you |
| 15 | told your counsel to sign this agreement? |
| 16 | A. Yes. |
| 17 | Q. And when did you tell your counsel to sign |
| 18 | this agreement? |
| 19 | A. Back in the fall. |
| 20 | Q. Can you be -- can you recollect anything |
| 21 | closer than back in the fall? |
| 22 | A. No, I think -- I can't remember that much. |
| 23 | Q. Do you know if it would have been -- |
| 24 | A. I know it was in the fall time. |
| 25 | Q. And how do you define "fall"? |

|  | Page 24 |
|---|---|
| 1 | A. Cold. |
| 2 | Q. That's -- |
| 3 | A. You asked me. I told you. |
| 4 | Q. That -- that's a fair -- fair response. Thank |
| 5 | you for that. |
| 6 | MS. NORMAN: I think -- I think he's in |
| 7 | New York, so we'll just let the record reflect that |
| 8 | "cold" is a relative term compared to Texas. |
| 9 | MR. FORTNEY: I agree with that. I'll |
| 10 | stipulate to it. |
| 11 | BY MR. FORTNEY: |
| 12 | Q. Mr. Barton, do you recall whether it might |
| 13 | have been in August, September, October? |
| 14 | A. In the -- |
| 15 | Q. -- that directed your -- |
| 16 | A. I just can't -- I can't -- I don't remember. |
| 17 | It's sometime in the fall. That's all I can tell you. |
| 18 | Q. Okay. How did you communicate to your |
| 19 | attorneys to -- at Andrews Myers to direct them to sign |
| 20 | this settlement agreement? |
| 21 | A. By phone. |
| 22 | Q. And do you recall what your directive was, |
| 23 | what words you used to directed your attorneys to sign |
| 24 | this agreement? |
| 25 | MS. NORMAN: And, again, I'm going to |

|  | Page 25 |
|---|---|
| 1 | object on the basis of attorney/client privilege. |
| 2 | Do not discuss the specific conversations |
| 3 | that we had. |
| 4 | THE WITNESS: Okay. |
| 5 | BY MR. FORTNEY: |
| 6 | Q. So my question is, just what did you say to |
| 7 | your attorneys in directing them to sign this agreement? |
| 8 | MS. NORMAN: And, again, I'm going to |
| 9 | object on the basis of attorney/client privilege and |
| 10 | instruct you not to tell them about the conversations |
| 11 | that we had. |
| 12 | THE WITNESS: All right. Okay. |
| 13 | MR. FORTNEY: Ms. Norman, are you aware |
| 14 | that we had a teleconference with the Court on this very |
| 15 | issue where the Court said that the -- a business |
| 16 | decision that's communicated to you and it's intended to |
| 17 | be communicated to a third-party -- |
| 18 | MS. NORMAN: I was on the -- |
| 19 | MR. FORTNEY: -- is not privileged? |
| 20 | MS. NORMAN: I was on the phone for the |
| 21 | conversation about whether or not those particular |
| 22 | e-mails needed to be turned over. |
| 23 | This witness has already told you that he |
| 24 | communicated and gave the authority for his attorneys to |
| 25 | execute the settlement agreement on his behalf. |