# Exhibit OO

```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK


                                   .    Case No. 09-50026-mg
IN RE:                             .    Chapter 11
                                   .
MOTORS LIQUIDATION COMPANY,        .    (Jointly administered)
et al., f/k/a GENERAL              .
MOTORS CORP., et al,               .    One Bowling Green
                                   .    New York, NY 10004
            Debtors.               .
                                   .    Thursday, August 17, 2017
. . . . . . . . . . . . . . . .    .    3:05 p.m.


                 TRANSCRIPT OF IN COURT CONFERENCE
                   (CC: DOC NOS. 14053, 14056)
                BEFORE THE HONORABLE MARTIN GLENN
                UNITED STATES BANKRUPTCY COURT JUDGE
```

APPEARANCES:

For the Debtor:            King & Spalding LLP
                           By:   ARTHUR STEINBERG, ESQ.
                                 SCOTT DAVIDSON, ESQ.
                           1185 Avenue of the Americas
                           New York, New York 10036-4003
                           (212) 556-2158

For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs:                Brown Rudnick LLP
                           By:   EDWARD S. WEISFELNER, ESQ.
                                 HOWARD S. STEEL, ESQ.
                           7 Times Square
                           New York, New York 10036
                           (212) 209-4917



Audio Operator:            Timothy Wilson, ECRO


Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com

       Proceedings recorded by electronic sound recording,
          transcript produced by transcription service.

1  release, was the agreement of the GUC Trust, supported by the
2  participating holders, to estimate the totality of the
3  plaintiffs' claims at somewhere around $10 billion, which would
4  have the effect of triggering what's known as the accordion
5  shares.  I know that's the part that GM doesn't like.  But they
6  would have every opportunity to object to that estimated
7  settlement of $10 billion.  We weren't looking to deprive them
8  of their ability to do that.
9       This conference, because Your Honor remarked that it
10 wasn't originally made clear to Your Honor what the purpose of
11 this conference was, was to preview that settlement proposal
12 with you.  We were certainly going to invite New GM, and we
13 thought it would be professionally courteous of us to advise
14 New GM in advance of the terms of our proposed settlement,
15 which Mr. Weisfelner and I did in a telephone call with
16 Mr. Steinberg and a partner whose name I forget at Kirkland and
17 Ellis last Wednesday.
18      Well, what did they do with that courtesy?  They
19 turned around, without any notice to us, and complained to
20 Judge Furman.  Why Judge Furman?  I'm not sure.  These matters
21 aren't before Judge Furman.  This settlement certainly wasn't
22 going to be before Judge Furman.  But it was their attempt, I
23 surmise, to attempt to start to poison the well.  Well, I was
24 very glad that Judge Furman's reaction was, take that up with
25 the bankruptcy court.

1    THE COURT: I should say I -- whenever I've had a
2 conversation with Judge Furman, I've disclosed that I have.
3 And I had a brief telephone conversation with Judge Furman on
4 Tuesday morning. He left a voicemail for me on Monday evening
5 and I -- we spoke on Tuesday. I -- he wanted me to be -- he
6 wanted to be sure that I knew that there had been a
7 presentation before him, or statements before him, that a
8 settlement had been reached. I told him that I read the
9 Bankruptcy 360 report about it. I told him that there had been
10 a request for a conference here, I had scheduled it, I hadn't
11 been informed at the time what the conference was about, but I
12 had scheduled it. And that was the substance of the phone
13 conversation that I had with Judge Furman.
14    So I've tried to make a point, whenever he and I have
15 spoken, I've put it on the record. We do not talk about the
16 merits of anything, but we informed --
17    MR. GOLDEN: So --
18    THE COURT: -- each other of procedural posture of
19 things.
20    MR. GOLDEN: So continuing, we had had the
21 conversation with Mr. Steinberg and his colleague. The purpose
22 of scheduling a status conference with you, Your Honor, was to
23 preview the settlement, not to argue the merits, but really to
24 preview the noticing procedures that we intend to follow
25 because this settlement contemplated a global release from all

1  the claims.  And we were going to do -- when I say "we," the
2  GUC Trust was going to do and spend $6 million on noticing to
3  make sure the plaintiffs -- something that Old GM never really
4  got around to doing, and that's why we find ourselves in this
5  mess.  But we were going to give direct notice to every party
6  who was the subject of a recall notice, so that's over
7  12 million parties, as well as notice to every party who has
8  started a lawsuit against Old GM/New GM based upon a presale
9  accident claim, so that nobody could complain this time that
10 the world has been put on notice as to the proposed settlement.
11           But we wanted to get a sense from Your Honor before
12 we went out and spent $6 million whether Your Honor thought
13 that would be an appropriate scope of notice.  That's all we
14 had originally intended to do at the status conference.  Well,
15 obviously events and facts have overtaken it, and we are where
16 we are.
17           Again, I'm here representing economic players.
18 They're not looking to go for the home run, as Mr. Martorana
19 said.  What they're looking for is peace in the valley.  They
20 want to get rid of the plaintiffs' claims and the plaintiffs'
21 claims against the trust for all time so that when the
22 avoidance action is settled or finally resolved, a final
23 distribution could be made.
24           THE COURT:  What's the face amount of the
25 approximately 65 percent of the unitholders -- of the claims of

1  the unitholders you represent?
2          MR. GOLDEN:  So it's not in dollar amount; it's
3  number of units.
4          THE COURT:  Units.
5          MR. GOLDEN:  Can I confer with my colleagues?
6          THE COURT:  Yeah, go ahead, sure.
7      (Counsel confer)
8          MR. GOLDEN:  It's 21 million units out of
9  approximately 31 million units.
10         THE COURT:  Okay.  All right.  Thank you, Mr. Golden.
11         MR. GOLDEN:  Thank you, Your Honor.
12         THE COURT:  Mr. Steinberg.
13         MR. STEINBERG:  Your Honor, Arthur Steinberg from
14 King & Spalding on behalf of New GM.
15         Mr. Weisfelner, in his presentation, said that he did
16 not want to speak prematurely until he gathered the facts, and
17 then he proceeded to speculate as to what the facts may be.
18 And there's a temptation that I have to be able to try to
19 respond to each and every time that he misstated what happened.
20 However --
21         THE COURT:  Let me say first, I thought your letter
22 to the Court was intemperate and inappropriate.  You could have
23 raised the issues that you raised.  So I know that there's very
24 strong feelings on -- there's more than two sides here -- on
25 all sides, but I didn't appreciate the tone of your letter.