```
                       UNITED STATES BANKRUPTCY COURT
                        SOUTHERN DISTRICT OF NEW YORK


                                      .    Case No. 09-50026-mg
     IN RE:                           .    Chapter 11
                                      .
     MOTORS LIQUIDATION COMPANY,      .
                                      .    One Bowling Green
                                      .    New York, NY 10004
                    Debtors.          .
                                      .    Tuesday, November 7, 2017
     . . . . . . . . . . . . . . .    .    4:03 p.m.


                    TRANSCRIPT OF TELEPHONE CONFERENCE
                   BEFORE THE HONORABLE MARTIN GLENN
                   UNITED STATES BANKRUPTCY COURT JUDGE



     TELEPHONIC APPEARANCES:

     For General Motors LLC:    King & Spalding LLP
                                By:  ARTHUR STEINBERG, ESQ.
                                1185 Avenue of the Americas
                                New York, NY  10036
                                (212) 556-2158

                                Quinn Emanuel Urquhart & Sullivan, LLP
                                By:  JAMES TECCE, ESQ.
                                51 Madison Avenue, 22nd Floor,
                                New York, NY 10010
                                (212)849-7199

     For GUC Trust:             Gibson Dunn
                                By:  MITCHELL KARLAN, ESQ.
                                200 Park Avenue
                                New York, NY 10166-0193
                                (212) 351-4000



     APPEARANCES CONTINUED.

     Audio Operator:            Court ECR Personnel

     Transcription Company:     Access Transcripts, LLC
                                517 Dell Road
                                Landing, NJ  07850
                                (855) 873-2223
                                www.accesstranscripts.com

          Proceedings recorded by electronic sound recording,
             transcript produced by transcription service.
```

```
APPEARANCES (Continued):

For Participating
Unitholders:              Akin Gump Strauss Hauer & Feld LLP
                          By:  DEBORAH J. NEWMAN, ESQ.
                          One Bryant Park
                          New York, NY 10036
                          (212) 872-7481

For Ignition Switch
Plaintiffs and certain
Non-Ignition Switch
Plaintiffs:               Hagens, Berman Sobol Shapiro LLP
                          By:  STEVE W. BERMAN, ESQ.
                          1918 8th Ave, Suite 3300
                          Seattle, WA 98101
                          (206)623-7292

For Ignition Switch
Plaintiffs and certain
Non-Ignition Switch
Plaintiffs:               Lieff, Cabraser, Heimann &
                            Bernstein, LLP
                          By:  ELIZABETH J. CABRASER, ESQ.
                          275 Battery Street, 29th Floor
                          San Francisco, CA 94111
                          (415)956-1000

For Creditor Additional
Ignition Switch
Pre-Closing Accident
Plaintiffs:               Andrew Myers, P.C.
                          By:  LISA M. NORMAN, ESQ.
                          1885 Saint James Place, 15th Floor
                          Houston, TX 77056
                          (713)850-4200

For Ignition Switch
Plaintiffs and certain
Non-Ignition Switch
Plaintiffs:               Brown Rudnick LLP
                          By:  HOWARD S. STEEL, ESQ.
                               EDWARD WEISFELNER, ESQ.
                          7 Times Square
                          New York, NY  10036
                          (212) 209-4800
```



1  (Proceedings commence at 4:03 p.m.)

2  THE COURT: All right. This is Judge Glenn. We're
3 on the record in Motors Liquidation, 09-50026. I have the list
4 of appearances in front of me. Who's going to begin?

5  MR. KARLAN: Your Honor, this is Mitch Karlan for the
6 GUC Trust. With Your Honor's permission, I'll begin. We asked
7 for this conference yesterday. At the time we asked for it,
8 there were perhaps as many as a half a dozen issues that we
9 thought would require Your Honor's attention. I'm pleased to
10 report that in the 24 or so hours that have elapsed, counsel
11 have worked out among themselves all but one of those. And
12 with Your Honor's permission, I'll describe it.

13  THE COURT: Go ahead.

14  MR. KARLAN: So, Your Honor, we -- GUC Trust is
15 requesting guidance from the Court and the opportunity to brief
16 the issue on an expedited basis with respect to certain
17 documents that are arguably covered by a written common
18 interest agreement entered into between Wilmington Trust and
19 certain of the unitholders back in 2014. There were document
20 requests served in this case both by the plaintiffs and by the
21 unitholders on the GUC Trust. And certain documents covered --
22 certain documents that were -- would have been responsive to
23 those document requests are covered by the common interest
24 agreement. And we did not produce those and identified those
25 -- or revealed that we were not producing those in our

1  privilege log which the parties served yesterday pursuant to
2  the scheduling order.  What prompts this call and my request
3  for guidance is the following, Judge.  There -- we have
4  identified about six documents that are arguably --
5            THE COURT:  Say that again, Mr. Karlan, you said six?
6            MR. KARLAN:  Six.
7            THE COURT:  Okay.
8            MR. KARLAN:  Six documents that are arguably covered
9  by the common interest agreement and which we have therefore
10 not produced but that we would like -- we, the GUC Trust, would
11 like to have the ability to introduce in evidence at trial.
12 The terms of the common -- of the common interest agreement do
13 not permit us to do that without the consent of the other side
14 to the agreement, and that consent has not been forthcoming.
15 We'd like guidance on two questions.
16           First, some of the document -- some of these six
17 documents were written by the GUC Trust lawyers not by the
18 unitholders lawyers.  We think that we have the right or should
19 be given the right to disclose those documents without the
20 permission of the unitholders.
21           Second, we would like Your Honor's guidance on
22 whether the unitholders can preclude us from using the
23 remaining six -- of the six documents that were written by
24 their side in a situation where the facts have changed and we
25 are now, at least with respect to this one issue, adverse to

1  each other with the unitholders taking a position different
2  than we're taking on the question on whether the agreement is
3  binding or not, the proposed agreement.
4        I don't pretend that these are easy issues to decide.
5  I don't pretend that they're clear, which is why I think Your
6  Honor would probably want briefing, and we would certainly ask
7  for permission to give it.  But this is a situation that is
8  somewhat fraught with a danger for the trustee, and we would
9  like to do whatever we do with the guidance of Your Honor.
10        THE COURT:  Okay.  How many of the documents, Mr.
11 Karlan, fall into the second category where they're offered or
12 prepared by unitholders counsel that you want to be able to
13 use?
14        MR. KARLAN:  Five.
15        THE COURT:  Okay.
16        MR. KARLAN:  I'm sorry.  I'm sorry, Judge.  I'm -- I
17 apologize.  That's not correct.  Excuse me just one second.
18 Let me --
19        THE COURT:  Sure.
20        MR. KARLAN:  Let me redo this.  I'm sorry.  Four,
21 Judge.
22        THE COURT:  Okay.  All right.  Let me hear from other
23 counsel who want to be heard on this issue.
24        MS. NEWMAN:  Good afternoon, Your Honor.  It's
25 Deborah Newman from Akin Gump Strauss Hauer & Feld on behalf of

1  the participating unitholder.  Your Honor, the documents that
2  Mr. Karlan is referring to were exchanged between counsel for
3  the GUC Trust and counsel for the participating unitholders in
4  connection with the plaintiff's claims against the trust and
5  the potential settlement of those claims.  And with the express
6  understanding -- not only because of the written agreement that
7  was signed between the participating unitholders and the GUC
8  Trust in 2014 but also because of the continued oral
9  understanding between the parties that their communications
10 were subject to a common interest privilege.  That's why we did
11 believe, both sides, both Gibson and Akin Gump, understood that
12 those communications were protected by a common interest
13 privilege and the documents that are written by Gibson Dunn
14 attorneys are actually expressly labeled "common interest
15 privilege" on the top in big, bold letters.
16         We understand that there is some case law holding
17 that parties to a common interest agreement may use otherwise
18 -- documents that would otherwise be subject to a common
19 interest privilege against one another when they become
20 adverse.  However, those instances involve direct adversity
21 between the two parties in two-party disputes.  They do not
22 have a situation we have here where the plaintiff -- there's a
23 multi-party dispute and it just so happens that the
24 participating unitholders disagree with the position that the
25 GUC Trust has taken.

1        But in fact we have not yet filed a joinder, and we
2   may not file a joinder.  We may rely on the plaintiffs to carry
3   the torch.  We normally file a joinder but we don't believe
4   actually that that would be the determining factor here.  This
5   is not the type of dispute that is contemplated in those cases
6   that allow common interest materials to be used against parties
7   to a common interest agreement.  So we don't believe that this
8   is the type of situation that would allow for that.  And even
9   if such adversity did exist, we don't think that the GUC Trust
10  could unilaterally waive the common interest privilege with
11  respect to third parties such as New GM and the plaintiffs.
12       And so while we don't actually have a problem were
13  the GUC Trust to use the six documents in question in
14  isolation, we don't actually believe that the documents are
15  helpful to the GUC Trust's position.  We're very concerned that
16  the GUC Trust desire to use these documents could result in an
17  argument by someone either in this proceeding or down the line
18  that there has been a subject matter waiver by the GUC Trust
19  and that all of the otherwise privileged documents could now be
20  subject to discovery in, again, either this matter or another.
21       And so we would object to the use of these documents
22  for that reason unless there was an order providing that the
23  use of the documents, those six documents, could not result --
24  you know, would not leave -- or that parties -- other parties
25  now or in the future would be precluded from arguing that the

1  GUC Trust use of those documents resulted in a waiver of any
2  other documents subject to the common interest privilege or if
3  the documents were somehow filed under seal and disclosed only
4  to the Court and the participating unitholders that's -- that
5  the privilege could be maintained.
6           THE COURT:  Ms. Newman, let me ask you a question.
7  With respect to the six documents that were written by the GUC
8  Trust lawyers, do any of those six contain information that was
9  provided to the GUC Trust lawyers by the unitholders lawyers?
10 Or it -- is it -- I'm just trying to understand.  I want to be
11 clear as to whether it reflects solely the analysis, views,
12 facts sourced from the GUC Trust counsel versus documents that
13 may have incorporated information they received pursuant to a
14 common interest agreement from the other parties to the
15 agreement.
16          MS. NEWMAN:  Uh-huh.  I understand the question, Your
17 Honor.  This is the first time we've heard Mr. Karlan
18 articulate that the -- one of the bases on which he's seeking
19 this relief or guidance is that some of the documents were
20 written by the GUC Trust, and so I would have to go back and
21 look more closely at the documents to answer that question.
22          THE COURT:  Okay.  Anybody else want to be heard?
23 Hearing nobody speaking up, I'm assuming not.
24          One of the sources that I used in trying to analyze
25 issues similar to these is the Restatement of Law Governing

1  Lawyers.  And I don't have it in front of me.  I -- I've got a
2  copy in my office, and I'm on the bench because this is -- this
3  is on the record.  And I don't know -- have either of you
4  looked to see whether the circumstances that you described are
5  covered in The Law Governing Lawyers?  I know there are things
6  on joint attorney-client privilege and what happens in the
7  event of adversity.  And I don't remember off the top of my --
8  I know there were provisions on common interest privilege.  I
9  don't remember whether they deal with this or not.  Has
10 somebody looked?
11         MR. KARLAN:  Your Honor, this is Mitch Karlan.  The
12 -- Section 76 of the Restatement, Third, of The Law Governing
13 Lawyers states, quote, "Any such client," -- and that's a
14 reference to a client who has entered into this kind of an
15 agreement.  "Any such client may invoke the privilege unless it
16 has been waived by the client who made the communication."  So
17 I think that would address some of the papers we're talking
18 about.
19         THE COURT:  That are -- yeah.  I don't have it in
20 front of me, but I mean that's kind of why I asked the question
21 whether as to the six documents, Mr. Karlan, that you say were
22 authored by either your firm or other counsel for Wilmington
23 Trust, whether it included -- if it was solely analysis, facts
24 derived from your client that's one thing.  If it's a part of a
25 common interest and included facts that the other parties to

the common interest agreement provided and included on the analysis it must present a different circumstance.

Ms. Newman, do you have anything? I am going to have you do letter briefs.

MS. NEWMAN: Okay. The only thing I would add is I'm sure Mr. Karlan and I could confer and come to some agreement. Perhaps not perfect agreement but some agreement as -- on your question as to whether or not these are purely communications that reflect the impressions of Gibson, Dunn or whether or not, you know, it did -- may reflect some Akin Gump input. We still have the concern that if the GUC Trust unilaterally waives its own privilege that it could result in arguments down the line that the GUC Trust has waived not only with respect to these documents but with respect to a more voluminous group of documents. But I suppose that the GUC Trust's decision to make. I'm -- as a beneficiary of the GUC Trust that's -- or the representative of a number of the majority of beneficiaries of the GUC Trust that causes me grave concern. But of course that's Mr. Karlan's decision to make.

MR. BERMAN: Your Honor, this is Steve Berman on behalf of the plaintiffs. May I make a comment?

THE COURT: Sure. Go ahead.

MR. BERMAN: We are very concerned by the notion that the GUC Trust has a privilege log and can selectively pick and choose what it wants to waive the privilege on. So at some

1  point, we're going to want to file a brief I think addressing
2  that issue and the issue of whether or not by doing so there is
3  a subject matter waiver.  And I don't know if the time would be
4  after they file these briefs so we understand it a little bit
5  more or -- I think that's the appropriate time but permit us to
6  see what it is they're proposing.  And again, we haven't seen
7  this agreement at all.  And I've asked for it, and it's not
8  being given to me.
9             THE COURT:  Well, let me ask Mr. Karlan and
10 Ms. Newman.  Is the common interest agreement itself subject to
11 privilege of protection?  I didn't think so.
12            MR. KARLAN:  It says that it is, Judge.  The
13 agreement contains an agreement among the signatories not to
14 disclose the existence of the agreement.  And we only put it in
15 our privilege log after first consulting with Ms. Newman and
16 getting her permission to do so.
17            THE COURT:  Okay.
18            MS. NEWMAN:  We have no problem -- subject to the GUC
19 Trust's agreement, we have no problem disclosing the agreement.
20            MR. KARLAN:  Nor do I.
21            THE COURT:  Well, let me ask you.  Mr. Karlan and
22 Ms. Newman and Mr. Berman, will you all agree that providing
23 copies of the common interest agreement does not constitute a
24 waiver of any privilege or protection with respect to any
25 documents or information that are arguably covered by the

1  agreement?
2           I -- what I want to do if -- it seems to me
3  reasonable to share the agreement.  I know cases where that --
4  I don't know precisely the law on this, but I certainly
5  remember in practice where those agreements were disclosed. I
6  just don't want anybody being able to argue that, well, you
7  produced the agreement, consequently, you waive privilege or
8  protection with respect to any underlying documents.
9           MR. BERMAN:  This is Steve Berman, and I will not
10 make that argument.
11          THE COURT:  Mr. Karlan, are you satisfied with that?
12          MR. KARLAN:  I mean I'm happy to enter -- you know,
13 put -- you know, put an --
14          THE COURT:  Here's what I suggest you do.  Let's not
15 do this totally on the fly.  You ought to confer and -- on this
16 issue.  If you're in agreement that it can be produced with a
17 -- no waiver or privilege, et cetera, see if you can do a form
18 of a stipulation, and I -- which I would so order to do that.
19 I do -- I just don't want to -- I don't want this coming back
20 to bite somebody by the fact that you made the agreement
21 available.  Because I think it's important in trying to sort
22 out these issues what the precise agreement is between the
23 parties' sort of common interest agreement.  See if you can
24 work it out.  If you can't let me know.  Okay?
25          MR. BERMAN:  Very good, Judge.

1                THE COURT:  Hang on.  I'm trying to look for
2  something else.  Bear with me a second.  I -- I'm going to run
3  back in chambers and get one of my books, okay?  I'll be right
4  back.  Okay.  I'm back on the bench.  I just want to look
5  something up.  Bear with me.
6           (Pause)
7                THE COURT:  Well, I can't find what I was looking
8  for.  I did pull out my copy of The Restatements.  I -- Section
9  -- I'm looking in Section 76 which I had bookmarked because
10 I've obviously looked at this before.
11           Mr. Karlan, how much time do you want to do a letter
12 brief?
13                MR. KARLAN:  Your Honor, the deposition of
14 Mr. Goldman is scheduled for the 16th.  I don't know whether
15 that's putting too much time pressure on Your Honor for a
16 decision, but we're prepared to brief it as quickly as
17 everybody else wants to go, fast.
18                THE COURT:  I'm away the rest of this week.  I'm
19 going to be back --
20                MR. KARLAN:  Ah, okay.
21                THE COURT:  I'll be back in on the 13th, Monday the
22 13th.  So the rest of this week I'm gone.
23                MR. KARLAN:  Then we'll submit whenever Your Honor
24 wishes it.
25                THE COURT:  Well, if -- Ms. Newman, how much time do

1 you want? I want these simultaneous. There's no reason to
2 have sequential.
3          I guess what I'd ask if you could both do this by
4 Monday morning the 13th, I'll endeavor to see if I can respond
5 -- get this resolved before Mr. Goldman's deposition on the
6 16th.
7          MR. KARLAN: That schedule works for us, Judge.
8          MS. NEWMAN: It works for us as well, Your Honor.
9          THE COURT: Okay. I don't intend to -- I'm sorry if
10 I'm messing up anybody's weekend. But I can make you do it by
11 Friday, but I'm not going to look at it until Monday when I get
12 back.
13          MS. NEWMAN: The schedule works fine for us. Thank
14 you. Thank you, Judge.
15          THE COURT: Okay. Look, I'm not going to impose a
16 page limit, but these -- I'm intending these to be relatively
17 succinct letter briefs, not voluminous briefs. I have -- you
18 know, on this common interest, the reason I have the page
19 bookmarked in -- on -- in the Restatement for Section 76 is
20 I've dealt with this before, so this is not -- you know, it's
21 not fresh in mind, but it will come back to me fairly quickly.
22 So I -- I'm not -- I've been exposed to some of these issues
23 before.
24          MR. BERMAN: Your Honor, this is Steve Berman. Do
25 you want my brief on the same day?

1      THE COURT: I -- yes, I would if possible. And I
2 know it's sometimes a little hard until you've seen what the
3 other side says but I really would like you to get it in in the
4 same time period. And you can --
5      MR. BERMAN: That's fine.
6      THE COURT: What I would request is is that you file
7 it on ECF but you also email a copy to chambers so we don't
8 have to go searching on the docket for it. My clerks can print
9 it out, and I'll be back in court very early Monday morning. I
10 usually get in around 6:30, 7:00 in the morning. So --
11      MR. BERMAN: Well, it's my birthday, so I assume it
12 will be a really cogent document from me.
13      THE COURT: Happy birthday.
14      MR. TECCE: Your Honor, this is James Tecce for New
15 GM. I just was -- wanted clarification as to what the subject
16 matter of Mr. Berman's brief will be.
17      MR. BERMAN: The subject matter is the propriety of a
18 party picking and choosing which documents it wants to waive
19 the privilege on.
20      MR. TECCE: Okay. Thank you for that.
21      THE COURT: Well, you know, Mr. Berman, I don't know
22 what these documents look like. If they're documents prepared
23 by counsel, they're more likely to be attorney work product.
24 And I'm not sure how any argument about subject matter waiver
25 works when you're talking about work product, but I'll leave it

1  to you to do what you feel is appropriate.
2           MR. BERMAN:  Okay.
3           THE COURT:  Just try and keep it succinct, okay?
4           MR. BERMAN:  I will, Your Honor.
5           THE COURT:  All right.  Anything else anybody needs
6  to raise today?
7           MR. KARLAN:  Not us, Your Honor.
8           THE COURT:  There is -- there's something lurking in
9  the back of my mind, and I can't remember where this -- I
10 thought there was an amendment.  But I don't remember whether
11 it was an amendment in the rules of evidence or amendment in
12 the rules of civil procedure dealing with the effect of
13 production in one proceeding and an argument about waiver in
14 any other proceeding.  Does anybody know what I'm talking
15 about?  I only have a vague recollection about this.  And I
16 realize you're all -- because these documents you're talking
17 about don't seem -- they weren't prepared with this case in
18 mind.  Maybe they were.  I don't know.  Any word I just said
19 ring a bell with any of you?
20          MR. KARLAN:  Not with me, Your Honor.  But if we find
21 anything like that we'll be sure to discuss it in our brief.
22          THE COURT:  I'm probably dreaming anyway.  Okay.  I
23 look forward to -- I'll do my best to see if I can get you in
24 -- let me ask you one other question.  We're talking about a
25 limited number of documents.

```
 1              I guess, Ms. Newman and Mr. Karlan, what is your view
 2   about in camera review about the documents?  I'm obviously
 3   going to be the trier of fact.  I'm always sensitive to this
 4   when I'm the trier of fact, but frequently with privileged
 5   documents it -- that's why I usually do insist on in camera
 6   review.  It's a lot more meaningful to me when I have the
 7   documents in front of me and I have to evaluate the parties'
 8   arguments.  What is your view with respect to in camera review?
 9              Mr. Karlan first and then Ms. Newman.
10              MR. KARLAN:  We would like you to review the
11   documents in camera, Judge.
12              THE COURT:  Ms. Newman?
13              MS. NEWMAN:  We have no objection to that, Your
14   Honor.
15              THE COURT:  Okay.  Deliver a -- we're talking about,
16   what, 12 documents or 11?
17              MR. KARLAN:  Six documents -- six documents, maybe 10
18   pages long in total.
19              THE COURT:  I thought there was six in category one
20   and four in category two.  That's why I got 10.
21              MR. KARLAN:  I'm sorry if I misspoke, Judge.  It's --
22   the universe is six.
23              THE COURT:  Okay.
24              MR. KARLAN:  And then you asked me what -- there was
25   a subset, and I said that subset is four.
```

1 THE COURT: Oh, okay. All right. So make sure you
2 put the appropriate ledger attorney-client privilege, attorney
3 work product on the documents, arrange to deliver one set in a
4 sealed envelope to the Court. If you could do that by Friday
5 so that I could look at the documents Monday morning when I
6 come in that would be helpful. And I will review them myself.
7 My law clerks won't review the in camera documents. That will
8 be helpful to me.
9 MR. KARLAN: Very good, Judge.
10 THE COURT: Okay?
11 MR. KARLAN: Very good.
12 THE COURT: All right. Thanks very much, everybody.
13 MR. KARLAN: Thank you, Your Honor.
14 THE COURT: We're adjourned.
15 MS. NEWMAN: Thank you, Your Honor.
16 (Proceedings concluded at 4:31 p.m.)
17 * * * * *

**C E R T I F I C A T I O N**

I, Sara Winkeljohn, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*[signature: Sara Winkeljohn]*

_____
SARA WINKELJOHN, AAERT NO. 808    DATE:  November 14, 2017
ACCESS TRANSCRIPTS, LLC

**C E R T I F I C A T I O N**

I, Lisa Luciano, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*[signature: Lisa Luciano]*

_____
LISA LUCIANO, AAERT NO. 327    DATE:  November 14, 2017
ACCESS TRANSCRIPTS, LLC