Susheel Kirpalani  
James C. Tecce  
Julia M. Beskin  
Jordan Harap  
**QUINN EMANUEL**  
 **URQUHART & SULLIVAN LLP**  
52 Madison Avenue  
New York, NY  10010  

Arthur J. Steinberg  
Scott Davidson  
**KING & SPALDING LLP**  
1185 Avenue of the Americas  
New York, New York  10036  

*Counsel to General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, et al.,<br>f/k/a General Motors Corp., et al.,<br><br>                                              Debtors. | Chapter 11<br>Case No. 09-50026 (MG)<br>(Jointly Administered) |

**GENERAL MOTORS LLC'S (A) REPLY IN FURTHER SUPPORT OF MOTION, PURSUANT TO 11 U.S.C. §§ 105(a) AND 1109(b), FED. R. BANKR. P. 2018 AND 3020, AND PRE-TRIAL ORDER, TO APPEAR AND BE HEARD WITH RESPECT TO PHASE 1 OF COURT'S CONSIDERATION OF PLAINTIFFS' MOTION TO ENFORCE UNEXECUTED SETTLEMENT AGREEMENT AND (B) RESPONSE TO SIGNATORY PLAINTIFFS' AND PARTICIPATING UNITHOLDERS' OPENING BRIEF REGARDING NEW GM'S PHASE 1 STANDING**

**TABLE OF CONTENTS**

| | | PAGE |
|---|---|---:|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ARGUMENT | 5 |
| | A. NEW GM HAS STANDING AS A PARTY IN INTEREST UNDER SECTION 1109(B) | 5 |
| | B. NEW GM HAS CONSTITUTIONAL STANDING | 9 |
| | C. NEW GM HAS PRUDENTIAL STANDING | 10 |
| | D. NEW GM HAS STANDING TO PARTICIPATE PURSUANT TO BANKRUPTCY RULE 2018 | 13 |
| III. | CONCLUSION | 15 |

# TABLE OF CONTENTS

**PAGE**

**Cases**

In re Amoskeag Bank Shares, Inc.,
    219 B.R. 653 (D.N.H. 1998) .............................................................................................. 12

In re Alterra Healthcare Corp.,
    353 B.R. 66 (Bankr. D. Del. 2006) ..................................................................................... 15

In re C.P. Hall Co.,
    750 F.3d 659 (7th Cir. 2014) ................................................................................................ 6

In re Caldor Inc.–NY,
    193 B.R. 182-86 (Bankr. S.D.N.Y. 1996) ..................................................................... 3, 10

Clapper v. Amnesty In'tl,
    133 S. Ct. 1138 (2015) ....................................................................................................... 10

City of Oakland v. Lynch,
    798 F.3d 1159 (9th Cir. 2015) ............................................................................................ 11

County of Suffolk v. Long Island Lighting Co.,
    729 F.2d 52 (2d Cir. 1984) ................................................................................................ 13

Cty. of Tioga ex. rel. Tioga Cty. Solid Waste Dist. v. Solid Waste Indus., Inc.,
    577 N.Y.S.2d (1991) ..................................................................................................... 4, 13

Decolator, Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer P.C.,
    756 N.Y.S.2d 147 (1st Dep't 2003) ................................................................................... 12

Duty Free Am., Inc. v. Estee Lauder Co.,
    797 F.3d 1248 (8th Cir. 2015) ............................................................................................ 11

Excel Willowbrook, LLC v. JPMorgan Chase Bank, N.A.,
    758 F.3d 592 (5th Cir. 2014) .............................................................................................. 11

In re First Interregional Equity Corp.,
    218 B.R. 731 (Bankr. D.N.J. 1997) ................................................................................... 14

In re Global Indus. Techs., Inc.,
    645 F.3d 201 (3d Cir. 2011) ..................................................................................... 3, 6, 7, 9

Gracie Tower Realty Assocs. v. Danos Floral Co.,
    538 N.Y.S.2d 680 (Civ. Ct. N.Y. Cty. 1989) .................................................................. 4, 13

In re Heating Oil Partners, LP,
    422 F. App'x 15 (2d Cir. 2011) ........................................................................................ 5

Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n,
    747 F.3d 44 (2d Cir. 2014) ........................................................................................ 3, 13

In re Innkeepers USA Trust,
    448 B.R. 131 (Bankr. S.D.N.Y. 2011) ............................................................................ 8

In re Ionosphere Clubs, Inc.,
    101 B.R. 844 (Bankr. S.D.N.Y. 1989) ..................................................................... 4, 7, 8

Lexmark In'tl, Inc. v. Static Control Components,
    134 S. Ct. 1377 (2014) ................................................................................................. 11

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ....................................................................................................... 9

Miller v. City of Wickliffe, Ohio,
    852 F.3d 497 (6th Cir. 2017) ........................................................................................ 11

In re Narcisse,
    2013 WL 1316706 (Bankr. E.D.N.Y. Mar. 29, 2013) .................................................. 15

In re Old Carco LLC,
    500 B.R. 683 (Bankr. S.D.N.Y. 2013) ............................................................... 3, 7, 9, 13

Premium Mortg. Corp. v. Equifax, Inc.,
    583 F.3d 103 (2d Cir. 2009) ........................................................................................ 3, 13

In re Residential Capital, LLC,
    2013 WL 6698365 (Bankr. S.D.N.Y. Dec. 19, 2013) .................................................... 7

Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.),
    698 F.2d 571 (2d Cir. 1983) ....................................................................................... 3, 8

In re Sapphire Development, LLC,
    523 B.R. 1 (D. Conn. 2014) .................................................................................... 5, 7, 9

Shea v. Royal Enters., Inc.,
    2011 WL 43460 (S.D.N.Y. Jan 6, 2011) ................................................................... 3, 13

Spokeo, Inc. v. Robins,
    136 S. Ct. 1540 (2016) ................................................................................................. 10

In re St. Vincent's Catholic Med. Centers Of New York,
    429 B.R. 139 (Bankr. S.D.N.Y. 2010) ............................................................................ 9

In re Standard Insulations, Inc.,
   138 B.R. 947 (Bank. W.D.Mo. 1992), abrogated on other grounds In re Broadmoor
   Country Club & Apt., 158 B.R. 146 (Bankr. W.D. Mo. 1993) .................................................. 5

In re Stone Barn Manhattan LLC,
   405 B.R. 68 (Bankr. S.D.N.Y. 2009) ................................................................................... 5, 7

Tamir v. Bank of N.Y. Mellon,
   2013 WL 4522926 (E.D.N.Y. Aug. 27, 2013) .................................................................. 3, 13

In re Teligent, Inc.,
   417 B.R. 197 (Bankr. S.D.N.Y. 2009), ................................................................. 3, 7, 8, 9, 10

In re The 1031 Tax Group, LLC,
   439 B.R. 47 (Bankr. S.D.N.Y. 2010 ................................................................................ 11, 12

In re Torrez,
   132 B.R. 924 (Bankr. E.D. Cal. 1991) ..................................................................................... 15

United States v. Under Seal,
   853 F. 3d 706 (4th Cir. 2017) ............................................................................................ 11, 15

In re Zhejiang Topoint Photovoltaic Co., Ltd.,
   2015 WL 2260647 (Bankr. D.N.J. May 12, 2015) ................................................................ 15

## Rules / Statutes

11 U.S.C. § 1109 ............................................................................................................... passim

Fed. R. Bankr. P. 2018 ....................................................................................... 1, 4, 14, 15

Fed. R. Bankr. P. 3020 ............................................................................................................. 1

## Additional Authorities

7 Collier on Bankruptcy ¶ 1109.04 ............................................................................................ 9

New GM hereby responds to the Signatory Plaintiffs' And Participating Unitholders' Opening Brief Regarding New GM's Phase 1 Standing ("**Movants' Brief**") (Dkt. 14150), and argues in further support of its Motion, Pursuant To 11 U.S.C. §§ 105(a) And 1109(b), Fed. R. Bankr. P. 2018 And 3020, And Pre-Trial Order, To Appear And Be Heard With Respect To Phase 1 Of Court's Consideration Of Plaintiffs' Motion To Enforce Unexecuted And Undated Settlement Agreement ("**New GM Standing Motion**") (Dkt. 14149).[1]

### I.    PRELIMINARY STATEMENT

1. Movants' attempt to stifle New GM's voice in this matter is premised upon a series of fictions—that somehow New GM is a "third party stranger," that New GM is an "intruder" to this dispute, and, most incredibly, that the outcome of Phase 1 will have no "direct effect on New GM."[2] Movants' desired outcome, however, is not supported by the undisputed facts and governing law.

2. New GM has standing to appear and be heard in connection with any and all litigation relating to the Unexecuted Settlement Agreement. If the Court finds the Unexecuted Settlement Agreement is binding and enforceable, New GM may be required to deliver the maximum amount of Adjustment Shares (30 million) under the Sale Agreement—even though the applicable threshold under the Sale Agreement cannot be triggered by the unsupportable $10

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the New GM Standing Motion. New GM refers to the parties that signed the Movants' Brief and the Joinder Of The Participating Unitholders In The Motion To Enforce (Dkt. No. 14175) collectively as "**Movants**."

[2] See Movants' Br. at 2 n.5 ("New GM will also lack standing in connection with a Rule 9019 Approval Motion … in Phase 2."). Plaintiffs, however, previously admitted New GM would have standing to contest the enforcement of the Unexecuted Settlement Agreement. See Ex. A (Tr., Jul. 16, 2015 MDL 2543 Hr'g 43:3-7 (Weisfelner: "[T]he only party that would be adversely affected would be New GM. It's New GM's stock that would have to be forked over were the accordion feature triggered. And I would assume that New GM has an economic interest in not having the accordion trigger[ed]."); 43:11-15 (Weisfelner: "And be it this Court or

billion claims estimate in the Unexecuted Settlement Agreement.[3]  Similarly, a finding that the alleged agreement is binding will result in the automatic termination of the Forbearance Agreement between New GM and the GUC Trust, and New GM will incur significant expenses in challenging the propriety of the agreement in Phase 2 litigation.  Conversely, a finding that the Unexecuted Settlement is not binding would pave the way for the Court's consideration of the GUC Trust-New GM Forbearance Agreement.  These are all significant and direct impacts on New GM from a possible Phase 1 decision.  New GM therefore is a party in interest under section 1109(b), and Movants' cited authorities do not compel a different result.

3.      Indeed, New GM stands in the same position as the insurance companies in the factually analogous Global Industries decision.  There, pursuant to an allegedly collusive chapter 11 plan negotiated by the debtors and asbestos claimants' attorneys, the debtors proposed to assign their insurers' policies to a trust to fund distributions on account of inflated asbestos claims through a channeling injunction.  Finding that the insurers were parties in interest under section 1109(b) with standing to object to plan confirmation, the Third Circuit correctly observed that "when a federal court gives its approval to a plan that allows a party to put its hands into

---

Judge Furman, I presume, will give New GM all the time and due process it needs and wants in order to ensure that its rights are protected before it literally has to turn over 10 million shares of New GM stock.")).

[3]   In particular, the $10 billion claims estimate is premised on amounts that have been asserted (and that may never be asserted) by millions of individuals (a) who never filed claims against the GUC Trust, (b) never sought permission to file late claims, (c) do not have allowed claims against the GUC Trust (which is a prerequisite for satisfying the Adjustment Shares threshold), and (d) who are not represented by counsel with respect to the Late Claims Motion.

other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed."[4]

4. Movants' challenges to New GM's constitutional and prudential standing are equally unsupportable. Should the Court find that the Unexecuted Settlement Agreement is binding, New GM's injury will be concrete and particularized, not speculative. Moreover, none of Movants' cited cases involve contractual disputes that purport to impose significant obligations on the entity seeking standing. Under the instant circumstances, contractual privity and third-party beneficiary status are irrelevant to the prudential standing analysis because the alleged contract imposes direct and significant obligations on the entity seeking standing to be heard (New GM).[5]

---

[4] In re Global Indus. Tech., Inc., 645 F.3d 201, 204-05 (3d Cir. 2011) (observing "to solicit the required votes, the debtors necessarily reached out to those asbestos claimants' attorneys …. The availability of hundreds of millions of dollars of insurance coverage was evidently assumed and ultimately featured prominently in the debtors' proposed Plan …. [which] called for a channeling injunction … pursuant to which asbestos claims that had or could be brought against the debtors instead would be channeled to a trust"); id. at 214 (noting "non-frivolous allegations of collusion between GIT [debtor] and the asbestos claimants' counsel in negotiating the establishment of the APG Silica Trust and Silica Injunction …. [asserting the debtors] sold out Hartford, Century, and similarly situated insurers by setting up a system in which they would pay for newly ginned-up silica claims in exchange for asbestos claimants casting their votes in favor of the GIT Plan").

[5] See Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44 (2d Cir. 2014) (landlord lacked standing to enforce terms of agreement between bank and FDIC which imposed no obligations on landlord); Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103 (2d Cir. 2009) (mortgage lender lacked standing to enforce contract between credit reporting agencies and intermediate reseller of consumer credit information that imposed no obligations on mortgage lender); Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.), 698 F.2d 571 (2d Cir. 1983) (lender had no obligations under lease agreement between assignee of original mortgagor and leasee of premises); In re Old Carco LLC, 500 B.R. 683 (Bankr. S.D.N.Y. 2013) (manufacturer TSW lacked standing to challenge stay-relief stipulation between plaintiff and Chrysler; stipulation imposed no obligations on TSW); Tamir v. Bank of N.Y. Mellon, 2013 WL 4522926 (E.D.N.Y. Aug. 27, 2013) (mortgagor lacked standing to contest assignment of mortgage from Countrywide to Bank of America; mortgagor had no obligations under assignment agreement); Shea v. Royal Enters., Inc., 2011 WL 43460 (S.D.N.Y. Jan 6, 2011) (plaintiff injured in bar accident had no standing to raise statute of frauds defense to landlord's claim against lessee for indemnification under lease; plaintiff had no obligations under lease); In re Teligent, Inc., 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009) (law firm lacked standing to object to settlement between former client and unsecured creditors' representative; settlement did not impose any obligation on law firm), aff'd, 640 F.3d 53, 61 (2d. Cir. 2011); In re Caldor, 193 B.R. 182 (Bankr. S.D.N.Y.

-3-

5. Moreover, the Court has discretion to allow New GM's participation in the upcoming trial pursuant to Bankruptcy Rule 2018(a). No party to the dispute has a greater economic interest in the outcome of Phase 1 than New GM. New GM's appearance will not result in delay or complicate the presentation of issues at trial. This is evidenced by New GM's participation in pre-trial discovery and briefing, which has not been duplicative or disruptive. New GM is committed to maintaining this same efficiency during the upcoming trial.

6. Finally, Movants' unfounded assertions that New GM is a "stranger" and "intruder" to Phase 1 are belied further by their discovery focus on New GM. Movants dedicated a significant portion of their deposition questioning to a number of issues relating to New GM: (1) New GM's mid-August discussions with the GUC Trust concerning the Unexecuted Settlement Agreement, (2) the GUC Trust's decision not to proceed with the Unexecuted Settlement Agreement, in light of New GM's and the GUC Trust's negotiation of the Forbearance Agreement, and (3) the relative merits of the Unexecuted Settlement Agreement as compared to the Forbearance Agreement.[6] That focus is further evidence that New GM is a party in interest with all accompanying rights of participation in any and all aspects of Phase 1.

---

1996) (bank had no standing to challenge debtor's motion to enter into separate lease under which bank had no obligations); In re Ionosphere Clubs, Inc., 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (nonprofit consumer advocacy group could not assert rights of pre-petition ticket holders of bankrupt airline); Cty. of Tioga ex. rel. Tioga Cty. Solid Waste Dist. v. Solid Waste Indus., Inc., 577 N.Y.S.2d 922 (1991) (creditor of mortgagor had no standing to assert defenses personal to mortgagor; creditor had no obligation under mortgage or underlying loan documents); Gracie Tower Realty Assocs. v. Danos Floral Co., 538 N.Y.S.2d 680 (Civ. Ct. N.Y. Cty. 1989) (landlord lacked standing to raise statute of frauds defense to oral agreement between court-appointed receiver of landlord's property and premises managing agent; landlord had no obligations under oral agreement).

[6] See, e.g., Williams Tr. 110:6-16 ([PLAINTIFFS' COUNSEL]: "I believe that the August 15 meeting sets the groundwork for things that Mr. Williams or others for the GUC Trust including Mr. Martorana and New GM would have discussed the fact that the deal was done and that an agreement had been made with the plaintiffs and things of that nature."); 113:20-114:11 ([PLAINTIFFS' COUNSEL]: "[I]t's our position there was an

## II.     ARGUMENT

### A.     New GM Has Standing As A Party In Interest Under Section 1109(b)

7.     New GM is the primary target of the Unexecuted Settlement Agreement, its interests are directly affected by the outcome of Phase 1, and that direct interest confers party-in-interest standing under section 1109(b) of the Bankruptcy Code.[7]  Plaintiffs' endorsement of the unitholders' right to participate illustrates New GM's point.  Plaintiffs purport to justify the unitholders' participation because, as alleged third-party beneficiaries, the unitholders are economically impacted by a determination that the agreement is binding.  That rationale applies with greater force to New GM, given that it is the primary intended target of, and funding source for, the alleged settlement.

8.     New GM's ability to participate in the Phase 1 trial is on firmer ground than the unitholders' for an additional reason.  During negotiations of the alleged settlement, the

---

agreement the documents would have otherwise been signed ... but for the fact that the GUC Trust changed its mind ... because of what they were told at the meeting with GM.  So I think as part and parcel of demonstrating that there was an enforceable agreement, issues of what caused the GUC Trust not to move forward with the documents in the form that they existed in are completely relevant and part of phase one.").

[7]  See, e.g., In re Heating Oil Partners, LP, 422 F. App'x 15, 16-17 (2d Cir. 2011) (liability insurer contractually obligated to indemnify debtor with respect to state court judgment entered against debtor had standing to seek declaration judgment was void: "AHA's pecuniary interest here is the default judgment … for which it will indemnify [debtor] in full or in part."); In re Stone Barn Manhattan LLC, 405 B.R. 68, at 74 (Bankr. S.D.N.Y. 2009) (purchaser of debtor's assets that (a) defaulted under purchase agreement and (b) asserted contingent administrative claim against debtor was party in interest because of contingent claim and reversionary interest in escrow account used to fund administrative expenses asserted against debtor); In re Sapphire Development, LLC, 523 B.R. 1, 5-6 (D. Conn. 2014) (judgment creditor of trustee of sole owner of debtor was a party in interest under section 1109 when "[a]n outcome of the bankruptcy proceeding that distributed any part of the property or proceeds therefrom to [debtor's] other creditors would … harm his interest[,]" and that interest is not "purely derivative of another party's rights"); In re Standard Insulations, Inc., 138 B.R. 947, 950 (Bankr. W.D.Mo. 1992), abrogated on other grounds In re Broadmoor Country Club & Apt., 158 B.R. 146 (Bankr. W.D. Mo. 1993) (insurers exposed to claims against debtor were "parties in interest" under section 1109(b) where "[d]ebtor's insurance [was] the only asset of consequence" and "[t]he insurers [were] responsible for payment of injury claims caused by exposure to debtor's products during covered periods").

unitholders' counsel declined plaintiffs' request to become a signatory to the alleged agreement, effectively electing "stranger" status (to use Movants' term). In contrast, as reflected in the GUC Trust's September 12 motion, New GM negotiated an alternative agreement with the GUC Trust that is directly conditioned on whether the alleged settlement agreement is binding, precisely the same issue presented by the Phase 1 trial. If the alleged agreement is not binding, then New GM and the GUC Trust will seek this Court's approval of the Forbearance Agreement; on the other hand, if the alleged settlement is binding, then the Forbearance Agreement will terminate. For this reason alone, New GM is directly impacted by a Phase 1 determination by this Court and has standing under the Bankruptcy Code.

9.     Movants are also incorrect that "any future financial interest New GM may have is wholly indirect to Phase 1." Notably, Global Industries involved two phases: plan confirmation, i.e., a "phase 1," and anticipated, post-plan litigation to determine whether the insurers could defend against the assertion of asbestos claims against the policies, i.e., a "phase 2." The Third Circuit rejected the argument that the insurers' interests were protected because they could "assert their coverage defenses and contractual rights [in phase 2] if ever faced with putative obligations;" instead, the court determined the insurers' "interests are affected by the GIT Plan such that they should have an opportunity to challenge it." In re Global Indus. Tech., Inc., 645 F.3d at 208, 215. Cf. In re C.P. Hall Co., 750 F.3d 659, 662 (7th Cir. 2014) (declining to follow Global Indus. because *excess* insurers, unlike *primary* insurers in Global Indus., were not "targets of a scheme between the debtor and its creditors" and only were effected if secondary-coverage obligation was triggered).

10.    Party-in-interest standing under section 1109(b) is interpreted broadly to allow the participation of parties, like New GM, that are affected by the litigation. See, e.g., In re

-6-

Residential Capital, LLC, 2013 WL 6698365, at *3 (Bankr. S.D.N.Y. Dec. 19, 2013) ("'Party in interest' is interpreted broadly to allow parties *affected* by the chapter 11 case to be heard." (emphasis added)); In re Old Carco LLC, 500 B.R. at 691 (recognizing Global Indus. is "in accord" with the proposition that party-in-interest standing means "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest *with respect to any issue to which it pertains*" (emphasis added)); In re Teligent, Inc., 417 B.R. at 210 (same); In re Stone Barn Manhattan LLC, 405 B.R. at 74 ("[C]ourts construe [party in interest] … broadly to insure fair representation of all constituencies *impacted in any significant way* by a Chapter 11 case." (emphasis added)).

11. Movants misconstrue Ionosphere, 101 B.R. at 849, to stand for the limited proposition that only debtors or creditors can be parties in interest for purposes of section 1109(b). Ionosphere does not establish any such bright-line rule, as demonstrated by subsequent cases finding entities that are impacted by a contract are parties in interest even if not specifically enumerated in section 1109(b). See In re Global Indus. Tech., Inc., 645 F.3d at 211 n.25 ("Without a contrary signal from Congress, we will not read a provision that confers a broad right of participation to be a restriction on access to bankruptcy proceedings"); In re Sapphire Dev. LLC, 523 B.R. at 5 ("[E]ven if McKay were not considered a 'creditor,' 11 U.S.C. § 1109 would still grant standing to McKay as a 'party in interest.'").

12. Moreover, New GM is a creditor in the bankruptcy cases, having filed an administrative claim, and it has a contingent administrative claim against the GUC Trust under the Sale Agreement.[8]

---

[8] See Ex. B (Proof of Claim No. 71111). Contrary to Movants' assertion, only a portion of New GM's proof of claim was withdrawn. The GUC Trust's claim register incorrectly notes that the entire claim was withdrawn.

13. Nor can Movants point to any authority limiting party-in-interest status under section 1109(b) to parties in contractual privity or alleged third-party beneficiaries. Even their authorities acknowledge "courts have long recognized that the meaning of the term ['party in interest'] must be determined on an <u>ad hoc</u> basis, and the categories mentioned in Section 1109 are not meant to exclude other types of interested parties from the purview of that section."[9] Movants' other section 1109(b) authorities are equally unavailing because New GM satisfies the standards enunciated under those cases, and the interests of the entities seeking standing in those cases were more attenuated that those of New GM.[10]

---

    As reflected in the Nova Scotia settlement agreement, however, a portion of New GM's administrative expense claim remains. <u>See</u> Ex. C (Settlement Agreement of Wind-Up Claim and Guarantee Claim and Disputes Related Thereto) at ¶ 10 (Dkt. 12531-1) (listing remaining administrative claims).

[9] <u>In re Teligent, Inc.</u>, 640 F.3d 53, 60 (2d Cir. 2011) (cited in Movants' Br. ¶ 32). <u>See also</u> <u>Ionosphere</u>, 101 B.R. at 849 (observing court "must determine a party's status ***on a case by case basis*** to see if this party has a sufficient stake in the proceeding which would require representation" (emphasis added)).

[10] <u>See, e.g.</u>, Movants' Br. ¶¶ 32, 35-41 (citing <u>In re Comcoach Corp.</u>, 698 F.2d at 572-74 (bank that initiated forclosure proceedings against property owner was not a party in interest in bankruptcy proceeding against property owner's tenant; observing "[b]ank has no right to payment from the bankrupt, since the bankrupt has no obligation on the mortgage, and the bankrupt's duty to pay rent on its lease runs only to [lessor], not the [b]ank"); <u>In re Residential Capital, LLC</u>, 2015 WL 629416, at *3 (defendant in a foreclosure proceeding brought by the subsidiary of a debtor was not a "party-in-interest" in the debtor's chapter 11 case because under § 1109(b), "the person or entity must have some type of direct relationship with the debtor, its property, or the process of administering the bankruptcy estate …. Scott's connection to the estate is patently indirect: he is a defendant in a foreclosure action involving a mortgage that was once serviced by the debtor."); <u>In re Innkeepers USA Trust</u>, 448 B.R. 131, 141-44 (Bankr. S.D.N.Y. 2011) (certificate holders in special purpose vehicle (securitization trust) were considered "creditor[s] of a creditor" and did not have standing to object to bidding procedures for § 363-sale;  observing "Courts in this District, while generally interpreting section 1109(b) broadly, have limited 'party in interest' standing where a party's interest in the proceeding is not a direct one," and "[holders'] right to payment comes from the cash generated by the assets, not from the debtor as the originator of the assets itself"); <u>In re St. Vincent's Catholic Med. Centers Of New York</u>, 429 B.R. 139, 149-52 (Bankr. S.D.N.Y. 2010) (plaintiffs (taxpayers) in state court action against New York State Department of Health seeking to enjoin further hospital closures were not parties in interest in hospital's chapter 11 case); <u>In re Old Carco LLC</u>, 500 B.R. at 691 ("Generally, a party in interest must have a financial or legal stake in the outcome of the particular matter."); <u>In re Teligent, Inc.</u>, 417 B.R. at 210 (noting section 1109(b) standing applies to "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding")).

-8-

### B. New GM Has Constitutional Standing

14. Movants' argument that New GM lacks constitutional standing is identical to its argument that New GM lacks party-in-interest standing, i.e., that the outcome of Phase 1 will not have any direct effect on New GM. Because there is substantial overlap between party-in-interest standing under section 1109(b) and constitutional standing, however, an entity satisfying section 1109(b) also has constitutional standing.[11] Moreover, New GM has (1) an injury in fact that is actual or imminent rather than conjectural or hypothetical, (2) an injury that is "fairly traceable" to the relevant conduct, and (3) an injury that will be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). A finding that the Unexecuted Settlement Agreement is binding presents the real economic consequences described above.

15. Movants' authorities do not compel an alternative conclusion. They involved circumstances where (a) **both** section 1109(b) standing **and** constitutional standing were found to be lacking, (b) the contract at issue did not impose any obligations or otherwise affect the pecuniary interests of the entity seeking standing, or (c) the relationship between the entity

---

[11] See, e.g., In re Global Indus. Techs., Inc., 645 F.3d at 211 ("Article III standing and standing under the Bankruptcy Code are effectively coextensive."); In re Sapphire Development, LLC, 523 B.R. at 6 (although "standing requirements of 11 U.S.C. § 1109 supplement rather than replace constitutional standing requirements[, …] where parties … have a clear financial stake in the outcome of a bankruptcy proceeding, they also meet the constitutional requirements of an injury in fact that can be fairly traced to the challenged conduct and is redressible by a favorable decision from the court"); In re Teligent, Inc., 417 B.R. at 210 ("Generally, a 'party in interest' with respect to a particular issue will also meet the requirement for Article III standing with respect to that issue.… Thus, the inquiries overlap."); 7 Collier on Bankruptcy ¶ 1109.04[4][a] ("In almost every instance, the outcome of any particular proceeding in a chapter 11 case will have a sufficient effect on the interests of stakeholders generally so that their participation in the proceeding will satisfy the standing aspect of the case or controversy requirement.").

seeking standing and the estate was more attenuated.[12]  Here, New GM has a direct financial stake in both (a) the Chapter 11 cases (pursuant to the Adjustment Shares provision in the Sale Agreement that depends on the total amount of allowed unsecured claims) and (b) an alleged agreement that purports to use unsupportable and premature claim estimates in an improper attempt to obtain a tender of New GM Adjustment Shares.

C. **New GM Has Prudential Standing**

16. Even though the Supreme Court and several Circuit Courts recently have questioned the continued vitality of the prudential standing doctrine,[13] the third party prudential

---

[12] See Movants' Br. ¶¶ 30-34 (citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1543 (2016) (consumer that brought action against website operator that purportedly published false information about him did not automatically have standing simply because operator violated statute—concrete injury must result; observing "risk of real harm [may] satisfy the requirement of concreteness"); Clapper v. Amnesty Int'l, 133 S. Ct. 1138, 1143 (2015) (attorneys, human rights, and media organizations challenged statute authorizing surveillance; allegation of future injury, i.e., "the risk of [authorized surveillance] … already has forced them to take costly and burdensome measures to protect the confidentiality of their international communications" was too speculative: "[R]espondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"); In re Caldor Inc.–NY, 193 B.R. at 182-86 (Bankr. S.D.N.Y. 1996) (bank, which was "creditor of a creditor," i.e., loaned money to the debtor's landlord (Northeast), lacked standing under both § 1109(b) and the Constitution to object to debtor's motion to enter into a ***separate*** lease with a third party: "The relief sought in the motion does not directly affect the Bank, and a denial of the motion will not redress any injury to the Bank…. At best, the bank is asserting rights belonging to Northeast."); In re Teligent, Inc., 417 B.R. at 210 (law firm (K&L) lacked standing under § 1109(b) and the Constitution when (a) K&L previously represented debtor's CEO in avoidance action and lost, (b) K&L was replaced by a new firm, (c) CEO (represented by new firm) entered into a settlement agreement with unsecured creditors' post-plan claims representative under which CEO assigned its rights to a malpractice claim against K&L to representative, and (d) K&L had no obligations under assignment agreement and therefore no standing to challenge motion to approve settlement: "the Settlement did not require K&L to pay any money to the Teligent estate or to [the CEO]"), aff'd, 640 F.3d at 61 (observing K&L "was merely a potential debtor of Teligent's debtor …. As such it has no financial state in the outcome of the bankruptcy case.  Further, it had no stake in the outcome of the 9019 Motion because the Settlement did not require K&L to pay any money to the Teligent estate").

[13] The Supreme Court recently examined the doctrine's continued viability.  See, e.g., Lexmark Intern., Inc. v. Static Control Components, Inc., 134 S.Ct. 1377, 1386-88 (2014) (request to decline to adjudicate claim on "grounds that are 'prudential' rather than constitutional … is in some tension with our reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging" and observing that a court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates."); Miller v. City of Wickliffe, 852 F.3d 497, 503 n.2 (6th Cir. 2017) ("Given the

-10-

standing doctrine is the centerpiece of Movants' standing challenge.  See Movants' Br. ¶¶ 20-29.  That doctrine serves as a "general prohibition against allowing litigants to enforce the rights of third parties" and directs that courts "shy away from adjudicating rights unnecessarily, specifically because the purported holders of those rights may choose not to enforce them or will be able to enjoy them regardless of whether the in-court litigant is successful or not."  In re The 1031 Tax Group, LLC, 439 B.R. 47, 60 (Bankr. S.D.N.Y. 2010) (noting rules ensure "that courts do not tap their constitutional power to adjudicate abstract questions other government entities may be better situated to address or to make rulings unnecessarily to protect individual rights").

17.     This prudential standing doctrine, however, does not apply to this case.  New GM is not asserting the rights of an absent third party and instead is asserting its own significant interest in avoiding the unwarranted obligations intended specifically for New GM under the Unexecuted Settlement Agreement.  And, New GM and the GUC Trust are seeking the same Phase 1 result.  See, e.g., In re The 1031 Tax Group, LLC, 439 B.R. at 60-61; see also In re Amoskeag Bank Shares, Inc., 239 B.R. 653, 658 (D. N.H. 1998) ("[Where] the court must decide the same issue regardless of whether or not the intervenor participates, the prudential limits on standing are less relevant").

---

Supreme Court's questioning of the continued vitality of the prudential standing doctrine … and the doubt that has been cast upon it by our own decisions, we are hesitant to ground our decision in prudential-standing principles."); United States v. Under Seal, 853 F.3d 706, 722 n.5 (4th Cir. 2017) ("We now expressly acknowledge … that the Supreme Court [in Lexmark] has recently pushed back on … 'prudential' language."); City of Oakland v. Lynch, 798 F.3d 1159, 1163 n.1 (9th Cir. 2015) (refusing to entertain government's argument "that Oakland should not be permitted to bring suit on the basis of prudential standing" in part because "the Supreme Court's recent decision in Lexmark … calls into question the viability of the prudential standing doctrine."); Duty Free Americas, Inc. v. Estee Lauder Cos., 797 F.3d 1248, 1273 n.6 (11th Cir. 2015) (same); Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, Nat'l Ass'n, 758 F.3d 592, 603 n.34 (5th Cir. 2014) (same).

18.     According to Movants' interpretation of prudential standing, New GM cannot participate in Phase 1 because it is neither a party to the Unexecuted Settlement Agreement nor a third-party beneficiary.  But, New GM is not seeking to enforce the Unexecuted Settlement Agreement; rather, it is challenging whether the alleged agreement was ever binding.  Contractual privity also is not a prerequisite to prudential standing, either in the bankruptcy context or under New York law.  Movants fail to cite any authority denying standing where direct harms would be imposed on the entity being heard.

19.     Indeed, it is a "well-settled" precept of New York law that "to have standing to challenge a contract, *a non-party to the contract must either suffer direct harm flowing from the contract or* be a third-party beneficiary thereof." Decolator, Cohen & DiPrisco, LLC v. Lysaght, Lysaght & Kramer, 756 N.Y.S.2d 147, 150 (1st Dep't 2003) (emphasis added).  Conveniently, Movants' authorities examine only the (irrelevant) issue of whether the entity is an intended third-party beneficiary.[14]

---

[14] See supra, n. 3.  See also Movants' Br. ¶¶ 20-29 (citing Premium Mortg., 583 F.3d at 108 (mortgage lender brought class-action lawsuit asserting consumer credit reporting agencies' sale of "trigger leads" violated Fair Credit Reporting Act; plaintiffs sought to *enforce* contract to which they were not a party between credit reporting agencies and intermediate reseller of trigger leads:  "[a] non-party governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence an intent to permit enforcement by a third party in question'"); Hillside, 747 F.3d at 48-50 (JPMorgan purchased WaMu's assets from FDIC pursuant to purchase agreement to which landlord (Hillside) was not a party; WaMu repudiated lease:  "[t]he sole issue is whether Hillside has standing to sue Chase for breach of the lease based on Hillside's own interpretation of the [purchase agreement] when it was neither a party nor an intended third-party beneficiary of the [purchase agreement];" observing Hillside was trying to assert FDIC's rights under purchase agreement); Shea, 2011 WL 43460, at *3 (landlord sued lessee for indemnification after plaintiff sustained injuries in bar and sued landlord; plaintiff lacked standing to raise statute of fraud as affirmative defense to landlord's indemnification claim because plaintiff was "not a party to the lease"); In re Old Carco, 500 B.R. at 691-92 (class-action plaintiffs obtained stipulated stay relief to bring claims against Chrysler's insurers; manufacturer of allegedly defective steering mechanism for Chrysler lacked prudential standing to challenge plaintiffs' attempt to use stipulation as a predicate to sue manufacturer because manufacturer was not third party beneficiary); Gracie, 538 N.Y.S.2d at 682 (landlord in receivership was "stranger" to oral agreement under which receiver authorized managing agent of property to enter into renewal lease and could not raise statute of frauds defense); Cty of Tioga, 577 N.Y.S.2d at 924 (creditor of defendant to mortgage foreclosure

20. If accepted, the proposition that standing is limited to parties in contractual privity or to third-party beneficiaries would undercut the broad right of participation conferred by section 1109(b). The Court therefore should decline Movants' invitation to make contractual privity and third-party beneficiary status a prerequisite to prudential standing to participate in bankruptcy cases—especially when the prudential standing doctrine's continued viability is uncertain.

### D. New GM Has Standing to Participate Pursuant to Bankruptcy Rule 2018

21. Alternatively, New GM satisfies each of the factors relevant to whether it can participate under Bankruptcy Rule 2018(a), i.e., "1) whether the moving party has an economic or similar interest in the matter; 2) whether the interests of the moving party are adequately represented by the existing parties; 3) whether the intervention will cause undue delay to the proceedings; and 4) whether the denial of the movants' request will adversely affect their interest." In re First Interregional Equity Corp., 218 B.R. 731, 736 (Bankr. D.N.J. 1997).

22. *First,* New GM has a significant interest in preventing (a) the impermissible issuance of the Adjustment Shares—even though the thresholds under the Sale Agreement have not been surpassed; (b) the costs associated with producing names and addresses of millions of vehicle purchasers dating back years (under the proposed order granting the draft Notice

---

action had no standing to assert lack of consideration as defense in foreclosure action (including mortgage to which creditor was not a party): "This affirmative defense is personal to the parties to the [mortgage and underlying contract]"); Tamir, 2013 WL 4522926, at *4 (mortgagor has no standing to challenge assignment of mortgage from Countrywide to Bank of America when mortgagor is not a party to assignment agreement or third-party beneficiary and could not establish injury from assignment because obligation to repay debt and terms and conditions of repayment were unaltered); Cty. of Suffolk v. Long Island Lighting Co., 728 F.2d 52, 63 (2d Cir. 1984) (county brought action behalf of rate payers against parties constructing power plant alleging breach of contracts among those parties for delivery of equipment and materials caused delays (and would increase rates) because they were not third-party beneficiaries of those contracts)).

Procedures Motion); (c) the automatic termination of the Forbearance Agreement (if the alleged settlement agreement is binding); (d) the costs and fees associated with Phase 2 litigation; and (e) the judicial declaration that the settlement would not waive any of plaintiffs' claims against New GM (as reflected in section 2.12 of the alleged settlement agreement).[15]  ***Second***, New GM's interests are not adequately represented by the existing parties, because no party has obligations commensurate with those sought against New GM.  ***Third***, New GM's participation will not cause delay because it will coordinate its efforts with the GUC Trust to ensure no duplication, and the bench trial is scheduled for three days regardless of whether New GM participates. Accordingly, Bankruptcy Rule 2018(a) authorizes New GM to participate in any and all aspects of Phase 1.  See In re Narcisse, 2013 WL 1316706, at *3 (Bankr. E.D.N.Y. Mar. 29, 2013) (City of New York permitted to appear under Rule 2018(a) in connection with motion to reopen a chapter 7 case, which was initiated to allow the prosecution of a personal injury action, because "the City may become indebted to th[e] bankruptcy estate if there is a recovery in the Personal Injury Action.").[16]

---

[15]  See Weisfelner Decl. Ex. J (Claims Estimate Order); Ex. P (Proposed Notice Procedures Motion).  As the Court is aware, New GM has argued in the MDL that Plaintiffs always had a remedy against Old GM and, therefore, it should not be liable to plaintiffs with the Ignition Switch Defect on a "mere continuation" successor liability theory.  The Late Claims Motion itself supports New GM's argument.  Section 2.12 of the Unexecuted Settlement Agreement, however, reflects Plaintiffs' attempt to nullify New GM's legal position in the MDL on successor liability issues, which is another reason why New GM has a direct interest in whether the alleged agreement is binding.

[16]  See also In re Zhejiang Topoint Photovoltaic Co., Ltd., 2015 WL 2260647, at *4–6 (Bankr. D.N.J. May 12, 2015) (granting creditor standing to appear under Rule 2018(a) because party with a direct interest in litigating dispute was "almost entirely owned and completely controlled by the Debtors" and, consequently, the creditor's interest "lack[ed] representation because the SPVs, which hold the direct rights against the Debtors, are sitting idly and will not enforce their own rights against the Debtors."); In re Alterra Healthcare Corp., 353 B.R. 66, 70–71 (Bankr. D. Del. 2006) (permitting Philadelphia Newspapers, LLC to appear under Bankruptcy Rule 2018(a) to oppose a Motion to File under Seal the Application to Approve Nine Settlements because the Newspaper asserted "an actual injury to itself" in that "the Seal Orders prevent[ed] it from obtaining access[,]" and "[t]he Reorganized Debtor ha[d] not articulated sufficient prejudice to it to warrant denial of the motion to

### III. CONCLUSION

For the foregoing reasons, the New GM Standing Motion should be granted.

Dated: New York, New York
December 7, 2017

Respectfully submitted,

By: **JAMES C. TECCE**

Arthur J. Steinberg
Scott Davidson
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York  10036
Tel:  212-556-2158

Susheel Kirpalani
James C. Tecce
Julia M. Beskin
Jordan Harap
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue
New York, New York  10010
(212) 849 7199

*Counsel to General Motors LLC*

---

intervene."); In re Torrez, 132 B.R. 924, 936–37 (Bankr. E.D. Cal. 1991) (allowing creditor, Northwestern Mutual Life Insurance Company, to appear under Bankruptcy Rule 2018(a) in a motion to reconvert case back to chapter 11 because "Debtors reconverted their case to Chapter 11 expressly to place themselves in a position allowing them to make a concerted effort to set aside the foreclosure by Northwestern" and, therefore, "[t]he proposed action reference setting aside the foreclosure may dramatically effect Northwestern's position" and "no other entity exists to adequately protect Northwestern's position.").