# Exhibit A

Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 09-50026-REG

4  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6  MOTORS LIQUIDATION COMPANY

7              Debtor.

8  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

9                          United States Bankruptcy Court

10                         One Bowling Green

11                         New York, New York   10004-1408

12

13                         July 16, 2015

14                         9:48 AM

15

16

17

18

19

20

21

22  B E F O R E:

23  HONORABLE ROBERT E. GERBER

24  U.S. BANKRUPTCY JUDGE

25  ECRO:  K. HARRIS

09-50026-mg    Doc 14187-1    Filed 12/07/17    Entered 12/07/17 19:40:36    Exhibit A
Pg 32 of 62
09-50026-mg    Doc 13399    Filed 07/30/15    Entered 08/27/15 13:52:04    Main Document
Pg 42 of 62

Page 42

1    have an opportunity to oppose that 9019, take the position that

2    as Your Honor indicated we've colluded in an effort to stick it

3    to New GM.  And they'll be entitled to be heard on the merits

4    with regard to that contention, and the settlement will not be

5    effective unless and until the Court overrules that objection.

6    And --

7            THE COURT:  The problem with that Mr. Weisfelner is

8    the different way which judges evaluate 9019s in part.  The

9    principal attention that a judge gives to the 9019 is whether

10   the estate is giving away the store.  And that would mean in

11   this context whether Mr. Martorana is prejudicing the interest

12   of the GUC Trust community and its unit holders, which if he

13   entered into the deal would be very hard to find because the

14   problem if there is a problem with any such deal is he's

15   helping his guys too much, not that he's helping them too

16   little.  Sometimes in evaluating 9019s, we also look to see

17   whether parties while acting in the interest of the estate are

18   nevertheless inappropriately adversely affecting parties who

19   aren't at the table, that's the more significant concern here.

20           MR. WEISFELNER:  Sure.  And, Your Honor, again the

21   only party --

22           THE COURT:  We have this in asbestos cases which you

23   have more than a little familiarity.

24           MR. WEISFELNER:  And, Your Honor, again I see the

25   analogy and you're right I think the only party that could

09-50026-mg    Doc 14187-1    Filed 12/07/17    Entered 12/07/17 19:40:36    Exhibit A
09-50026-mg    Doc 13399    Filed 07/30/15    Entered 08/27/15 13:52:04    Main Document
Pg 43 of 62
Pg 4 of 5

Page 43

1   stand up and say they're being adversely affected aside from
2   the plaintiffs which I want to get to in a minute to respond to
3   your question about how much time do I think this takes, the
4   only party that would be adversely affected would be New GM.
5   It's New GM's stock that would have to be forked over were the
6   accordion feature triggered.  And I would assume that New GM
7   has an economic interest in not having the accordion trigger in
8   maintaining that the accordion feature is now dead as a
9   consequence of Your Honor's equitable mootness decision.  And
10  obviously we're not going to get our hands on that stock
11  without New GM putting up a fight.  And be it this Court or
12  Judge Furman, I presume, will give New GM all the time and due
13  process it needs and wants in order to ensure that its rights
14  are protected before it literally has to turn over 10 million
15  shares of New GM stock.
16          The issue on the plaintiff's side is quite a bit more
17  complicated.  There are any number of potential subclasses of
18  plaintiffs that may want a shot at the accordion feature should
19  it ever be triggered.  You have the easy subclass if one were
20  to think what are the classes, you have the ignition switch
21  defect plaintiffs as defined, that being the ones that were
22  subject of the first two recalls.  You have the other ignition
23  switch defect plaintiffs that were the subject of the
24  subsequent recalls.  You then have the non-ignition switch
25  defects.

Page 44

1  THE COURT: What's your Weintraub [indiscernible]
2 because I would have thought that they should have, or could
3 make a decent argument that they should have first dibs on any
4 claims against the estate.
5  MR. WEISFELNER: Now Mr. Weintraub was careful I
6 think to represent only the presale accident victims who drove
7 ignition switch defect vehicles defined to be limited to the
8 first two recalls, the ones I think in February and March of
9 2014.
10  MR. STEINBERG: [indiscernible]
11  MR. WEISFELNER: That's my best recollection. He may
12 tell you otherwise, and we are working with Mr. Weintraub with
13 regard to this settlement that he represents pre-sale accident
14 victims that drove other vehicles. But my point is this, the
15 GUC Trust and unit holders want the broadest from of relief
16 possible. They want as many people to stand down from
17 challenging their exclusive rights to the cash that's gone out
18 the door and the billion or so dollars left to go out the door
19 based on the remaining securities that they've asked for and
20 Your Honor has given authority to liquidate but not distribute.
21 So they want all of us plaintiff types to say no mas, we're not
22 coming after you to ever dip into those assets.
23  We need to ensure that we're not prejudicing any
24 plaintiff rights with regard to the accordion feature should it
25 ever be triggered. And what we contemplate is a procedure that