**Hearing Date and Time: December 18, 2017 at 9:00 a.m. (EST)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                                            :
In re:                                                      :          Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                         :          Case No.: 09-50026 (MG)
        f/k/a General Motors Corp., et al.,                 :
                                                            :
                              Debtors.                      :          (Jointly Administered)
------------------------------------------------------------X

## THE SIGNATORY PLAINTIFFS' AND PARTICIPATING UNITHOLDERS' REPLY BRIEF REGARDING NEW GM'S PHASE 1 STANDING

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ................................................................................................................................ 3

I.    New GM Fails To Establish Prudential  Standing, Ending The Phase 1 Standing
      Inquiry .................................................................................................................................. 3

II.   New GM Does Not Have Phase 1 Standing Under Bankruptcy Code  Section 1109
      Because It Lacks A Direct Stake In The Phase 1 Dispute  And Is Not A Creditor Or
      Holder Of An Equitable Claim Against The GUC Trust ...................................................... 6

      A.    New GM Lacks A Sufficient Direct Interest For Phase 1 Standing. ...................... 6

      B.    Plaintiffs Have Not Conceded New GM's Status As A Party In Interest
            For Phase 1 ............................................................................................................. 11

      C.    New GM Should Not Be Permitted To Intervene In Phase 1 Because It
            Has Not Demonstrated Cause And Its Interests Are Adequately
            Represented ............................................................................................................. 12

III.  New GM Lacks Constitutional Standing In Phase 1 Because It Fails  To Show A
      Concrete And Particularized Injury Implicated In Phase 1. .............................................. 13

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re C.P. Hall Co.,
   750 F.3d 659 (7th Cir. 2014) ...........................................................................8, 9

In re Caldor, Inc.—NY,
   193 B.R. 182 (Bankr. S.D.N.Y. 1996) ..................................................................6

Church Mut. Ins. Co. v. Am. Home Assurance Co. (In re Heating Oil Partners,
   LP),
   422 F. App'x 15 (2d Cir. 2011) ...........................................................................9

Coalition of 9/11 Families, Inc. v. Rampe,
   No. 04 Civ. 6941, 2005 WL 323747 (S.D.N.Y. Feb. 8, 2005) ................................5

In re Glob. Indus. Techs., Inc.,
   645 F.3d 201 (3d Cir. 2011)..........................................................................8, 9, 14

Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, N.A.,
   747 F.3d 44 (2d Cir. 2014)..........................................................................4, 5, 13

In re Ionosphere Clubs, Inc.,
   101 B.R. 844 (Bankr. S.D.N.Y. 1989) ......................................................6, 7, 11, 13

Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),
   843 F.2d 636 (2d Cir. 1988)...........................................................................3, 4, 11

Kowalski v. Tesmer,
   543 U.S. 125 (2004)...........................................................................................3

Kyrs. v. Official Comm. of Unsecured Creditors of Refco, Inc. (In re Refco Inc.),
   505 F.3d 109 (2d Cir. 2007)...............................................................................7

Lazard v. Texaco, Inc. (In re Texaco Inc.),
   81 B.R. 820 (Bankr. S.D.N.Y. 1988) ..................................................................11

Levin v. Tiber Holding Corp.,
   277 F.3d 243 (2d Cir. 2002)................................................................................5

In re Old Carco LLC,
   500 B.R. 683 (Bankr. S.D.N.Y. 2013) ...........................................................3, 6, 13

Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.),
   430 B.R. 65 (S.D.N.Y. 2010)...............................................................................6

Premium Mortg. Corp. v. Equifax, Inc.,
    583 F.3d 103 (2d Cir. 2009).................................................................................................3

In re Quigley Co.,
    391 B.R. 695 (Bankr. S.D.N.Y. 2008) .................................................................................6

In re Residential Capital, LLC,
    Case No. 12-12020, 2013 WL 6698365 (Bankr. S.D.N.Y. Dec. 19, 2013),
    aff'd sub nom. Scott v. Residential Capital, LLC (In re Residential Capital,
    LLC), No. 14 Civ. 761, 2015 WL 629416 (S.D.N.Y. Feb. 13, 2015) ..................................6, 7

Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.),
    698 F.2d 571 (2d Cir. 1983).................................................................................................7

S. Blvd., Inc. v. Martin Paint Stores (In re Martin Paint Stores),
    207 B.R. 57 (S.D.N.Y. 1997)............................................................................................9, 13

In re Sapphire Dev., LLC v. McKay,
    523 B.R. 1 (D. Conn. 2014) .............................................................................................11, 14

Scott v. Residential Capital, LLC (In re Residential Capital, LLC),
    No. 14 Civ. 761, 2015 WL 629416 (S.D.N.Y. Feb. 13, 2015) .................................................11

Shea v. Royal Enters., Inc.,
    No. 09 Civ. 8709, 2011 WL 43460 (S.D.N.Y. Jan. 6, 2011)....................................................5

In re Standard Insulations, Inc.,
    138 B.R. 947 (Bankr. W.D. Mo. 1992).................................................................................9

Steffan v. Perry,
    41 F.3d 677 (D.C. Cir. 1994) ..............................................................................................3

In re Stone Barn Manhattan LLC,
    405 B.R. 68 (Bankr. S.D.N.Y. 2009)....................................................................................9

In re Suffolk Reg'l Off-Track Betting Corp.,
    462 B.R. 397 (Bankr. E.D.N.Y. 2011).................................................................................11

Tamir v. Bank of N.Y. Mellon,
    No. 12-CV-4780, 2013 WL 4522926 (E.D.N.Y. Aug. 27, 2013)............................................5

**Statutes**

11 U.S.C. § 1109...................................................................................................2, 6, 7, 12

**Other Authorities**

Fed R. Bankr P. 2018.....................................................................................................12

Fed. R. Bankr. P. 9013 ................................................................................................................. 12

Fed. R. Bankr. P. 9019 ............................................................................................................ 11, 12

Fed. R. Civ. P. 60 ........................................................................................................................ 12

U.S. Const., art. 3 ................................................................................................................. *passim*

The Signatory Plaintiffs and Participating Unitholders hereby submit this reply (the "**Reply**") in further support of their Opening Brief Regarding New GM's Phase 1 Standing, and in support respectfully state as follows:[1]

## PRELIMINARY STATEMENT

1.      New GM contends that it has Phase 1 standing because it has economic interests at stake in Phase 1, namely that the Settlement Agreement:  (i) contemplates notice procedures that, if approved, may require New GM to provide lists of Plaintiffs' names and addresses; and (ii) provides for the parties to seek a Claims Estimate Order that, if approved, would obligate New GM to issue additional shares of New GM common stock.

2.      New GM cannot meet its burden to establish Phase 1 standing because none of the hypothetical economic interests it identifies faces imminent, threatened invasion in the narrow Phase 1 issue of whether the Settlement Agreement is binding on the GUC Trust.  Indeed, courts have repeatedly found that where a threshold legal interpretation must come out a specific way before a party's interests are even at risk, the prospect of harm is not actual or imminent. Moreover, New GM does not need Phase 1 standing to contest any request after Phase 1 that New GM turn over notice information to the Signatory Plaintiffs.

3.      New GM lacks prudential standing in Phase 1 because it is neither a party to nor a third-party beneficiary of the Settlement Agreement and, thus, cannot enforce the Settlement Agreement.  Without standing to enforce the Settlement Agreement, it is only logical and fair that New GM lacks standing to oppose the Signatory Plaintiffs' enforcement of the Settlement

---

[1]     This Reply is in response to the *Motion of General Motors LLC, Pursuant to 11 U.S.C. §§ 105(a) and 1109(b), Fed. R. Bankr. P. 2018 and 3020, and Pre-Trial Order, to Appear and be Heard with Respect to Phase 1 of Court's Consideration of Plaintiffs' Motion to Enforce Unexecuted and Undated Settlement Agreement*, dated Nov. 13, 2017 [ECF No. 14149] ("**New GM Br.**").  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Signatory Plaintiffs' and Participating Unitholders' Opening Brief Regarding New GM's Phase 1 Standing*, dated Nov. 13, 2017 [ECF No. 14150] (the "**Opening Br.**").

Agreement against the GUC Trust.  Prudential standing limitations are designed to prevent third parties from asserting the rights of others—like New GM's attempts here to assert the defenses of the GUC Trust.  Because New GM lacks prudential standing the inquiry ends and the Court need not consider constitutional or party-in-interest standing.

4.      Nor does New GM meet Article III and Bankruptcy Code Section 1109 standing requirements because New GM cannot identify an immediate injury-in-fact, or direct interest in Phase 1.   Article III standing requires the party seeking standing to establish an actual or imminent, concrete injury to a legally protected interest.  New GM's proffered Phase 1 interests fall far short of the Supreme Court's constitutional standing requirement of "certainly impending" injury as the alleged interests have yet to crystallize and the outcome of Phase 1 may only lead to Phase 2 or resumption of the Late Claims Motion litigation.

5.      Likewise, New GM's proffered interests are too remote and indirect to confer party in interest standing under Bankruptcy Code Section 1109, which requires that a party have a *direct* financial interest in the proceedings.  Phase 1—an action by the Signatory Plaintiffs against the GUC Trust—is a narrow, binary dispute that cannot cause New GM an immediate injury-in-fact.  Like an investor of a creditor or an excess insurer, New GM does not have a direct financial interest at stake in Phase 1 that justifies standing.  New GM cannot even meet the requirement of being a creditor or holder of an equitable interest in the GUC Trust; indeed, while New GM points to a proof of claim filed in 2011, *that claim was withdrawn*.

6.      Finally, New GM contends it has Phase 1 standing because the Forbearance Agreement automatically terminates if the Settlement Agreement is held to be binding on the GUC Trust.  The termination of the Forbearance Agreement by operation of its agreed-upon terms is not a legally cognizable injury, let alone one sufficient to confer standing on New GM.

Standing in contract disputes must be established by reference to the contract at issue. Any rights or interests New GM may have manufactured under the Forbearance Agreement are irrelevant. For all of these reasons, New GM lacks Phase 1 standing.

## **ARGUMENT**

I.    **New GM Fails To Establish Prudential
      <u>Standing, Ending The Phase 1 Standing Inquiry</u>.**

7.    Prudential standing, like Article III standing, is a threshold, jurisdictional concept, and federal courts may consider third-party prudential standing even before Article III standing. <u>See</u> <u>Kowalski v. Tesmer</u>, 543 U.S. 125, 129 (2004).

8.    Here, New GM lacks prudential standing in Phase 1 because it was neither party to nor an intended third-party beneficiary of the Settlement Agreement. <u>See</u> <u>Premium Mortg. Corp. v. Equifax, Inc.</u>, 583 F.3d 103, 108 (2d Cir. 2009); <u>Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)</u>, 843 F.2d 636, 644 (2d Cir. 1988). If a party lacks prudential standing, the inquiry ends, and the Court need not even consider the issues of constitutional or party-in-interest standing. <u>See</u> <u>In re Old Carco LLC</u>, 500 B.R. 683, 692 (Bankr. S.D.N.Y. 2013) ("Since TRW has failed to demonstrate prudential standing, it is unnecessary to consider whether it has demonstrated Article III standing or that it is a party in interest under 11 USC 1109(b).").

9.    New GM acknowledges that prudential standing requirements "bar[] litigants 'from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves.'" New GM Br. ¶ 45 (citing <u>Kane</u>, 843 F.2d at 643). Insofar as New GM wishes to be heard on the specific question of whether the Settlement Agreement is binding on the GUC Trust, it is effectively seeking to enforce the rights of a third party (here, the GUC Trust), which the doctrine of prudential standing prohibits. <u>See</u> <u>Steffan v. Perry</u>, 41 F.3d 677, 697 (D.C. Cir. 1994) (en banc).

10.    In an attempt to circumvent this prohibition, New GM contends, without citing

any authority in support, that it has a "direct stake" in Phase 1 sufficient to confer prudential

standing because:   (i) the Claims Estimate Order "is the centerpiece" of the Settlement

Agreement; and (ii) if the Settlement Agreement is binding, "the Forbearance Agreement

terminates automatically." <u>See</u> New GM Br. ¶ 46.[2]  New GM's attempt fails as a matter of fact

and law.

11.    But before a Claims Estimate Order is entered, the Bankruptcy Court must take

several discrete steps.  First, in Phase 1, it must hold that the Settlement Agreement is binding.

Second, in Phase 2, it must approve notice procedures for the motion to approve the Settlement

Agreement and Claims Estimate Order under Bankruptcy Rule 9019.  Third, in Phase 2, it must

enter the Settlement Order, which is a predicate to the fourth step, entry of the Claims Estimate

Order.  <u>See</u> Settlement Agreement §§ 2.2, 2.9.  This can hardly be understood as a "direct

interest" in Phase 1.

12.    Whether New GM has an economic interest at stake is hardly at issue here,

however, because prudential standing only examines whether a party is asserting its own

"constitutional and statutory rights."  <u>See</u> <u>Kane</u>, 843 F.2d at 643.  As amply demonstrated in the

Opening Brief, a third-party, non-beneficiary of a contract, like New GM to the Settlement

Agreement, challenging the binding nature of that contract is asserting the rights of the

contractual parties—not its own rights—and, thus, lacks prudential standing, even if that third

party stands to suffer economic loss.  <u>See</u> Opening Br. Sec. II; <u>see also</u> <u>Hillside Metro Assocs.,</u>

---

[2]    New GM cites a single case on prudential standing and only to demonstrate the legal standard.  <u>See</u> New GM
Br. ¶ 45.  In that case, the Second Circuit held that a Class 4 creditor with an existing claim against the estate
who was present at the hearing where voting procedures were adopted did not have standing to assert the rights
of future claimants or to assert that other Class 4 creditors did not receive adequate notice of the hearing on
voting procedures.  <u>See</u> <u>Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)</u>, 843 F.2d 636, 643-45 (2d
Cir. 1988).  Here, like the creditor in <u>Kane</u>, New GM is attempting to assert the rights of another party—the
GUC Trust.

LLC v. JPMorgan Chase Bank, N.A., 747 F.3d 44, 49 (2d Cir. 2014) (quoting Suffolk Cty. v. Long Island Lighting Co., 728 F.2d 52, 63 (2d Cir. 1984) ("[A]bsent a contractual relationship there can be no contractual remedy.")).

13.    New GM attempts to distinguish cases applying this well-settled principle by stating that the third parties in those cases were not "targets" of the contract at issue.  See New GM Br. 18 n.35.  This distinction is irrelevant and nothing more than an attempt to distract the Court from the logical application of those cases:  New GM's purported economic interest is insufficient to meet prudential standing requirements.[3]  That the Settlement Agreement contemplates seeking a Claims Estimate Order that would require New GM to fulfill its commitment under the Sale Agreement to issue Adjustment Shares does not render New GM a party to or third party beneficiary of the Settlement Agreement.

14.    That the Forbearance Agreement automatically terminates if the Settlement Agreement is held to be binding does not change this result.  A party cannot manufacture its own standing by creating a separate contract that relates to an earlier contract that it is not a party to. In other words, prudential standing in contract disputes must be established by the express terms of the contract at issue.  See Levin v. Tiber Holding Corp., 277 F.3d 243, 249 (2d Cir. 2002) ("[T]he parties' intention to benefit the third party must be gleaned from the face of the contract.") (citation omitted); Coalition of 9/11 Families, Inc. v. Rampe, No. 04 Civ. 6941, 2005

---

[3]    See Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, N.A., 747 F.3d 44, 50 (2d Cir. 2014) (holding that lessor lacked prudential standing to litigate whether lessee's liabilities were assigned to bank under purchase and assignment agreement—and that, as result, the bank owed amounts due under the lease to the lessor— because lessor was neither a party to nor a third-party beneficiary of the agreement); Shea v. Royal Enters., Inc., No. 09 Civ. 8709, 2011 WL 43460, at *3 (S.D.N.Y. Jan. 6, 2011) (holding that plaintiff seeking damages for personal injuries sustained at a bar from the lessee and lessor of the bar had no standing to raise statute of frauds argument to challenge the lessee's obligation to indemnify the lessor because plaintiff was not a party to the lease containing the indemnity); Tamir v. Bank of N.Y. Mellon, No. 12-CV-4780, 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013) (holding that plaintiff asserting claims predicated on the assignment of her mortgage lacked standing to challenge the validity of the assignment because she was not a party to or third party beneficiary of the assignment agreement).

WL 323747, at *2 (S.D.N.Y. Feb. 8, 2005) ("[T]hird parties may sue to enforce rights or obtain benefits under a contract only to the extent that the contracting parties specifically intended to provide the third parties with such rights or benefits.").  The terms of the Forbearance Agreement are irrelevant to New GM's Phase 1 standing.

15.    Because New GM is neither a party to nor an intended third party beneficiary of the Settlement Agreement, New GM lacks prudential standing in Phase 1.[4]

## II.    New GM Does Not Have Phase 1 Standing Under Bankruptcy Code Section 1109 Because It Lacks A Direct Stake In The Phase 1 Dispute And Is Not A Creditor Or Holder Of An Equitable Claim Against The GUC Trust.

### A.    New GM Lacks A Sufficient Direct Interest For Phase 1 Standing.

16.    Bankruptcy standing is no broader than standing under Article III, and although the term "party in interest" under Bankruptcy Code Section 1109 is broadly construed, it is not without limits.  See In re Ionosphere Clubs, Inc., 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989); In re Old Carco, 500 B.R. at 690; Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.), 430 B.R. 65, 92-93 (S.D.N.Y. 2010); In re Quigley Co., 391 B.R. 695, 703 (Bankr. S.D.N.Y. 2008).

17.    For example, the party seeking standing must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.  See In re Caldor, Inc.—NY, 193 B.R. 182, 186 (Bankr. S.D.N.Y. 1996) (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 474 (1982)).

18.    The term "party in interest" refers to those with "some type of direct relationship with the debtor, his property or the process of administering his bankruptcy estate."  In re Residential Capital, LLC, Case No. 12-12020, 2013 WL 6698365, at *4 (Bankr. S.D.N.Y. Dec.

---

[4]    As discussed in our initial briefing, the inquiry can end here.  Once it is determined that a party lacks prudential standing, "it is unnecessary to consider whether it has demonstrated Article III standing or that it is a party in interest under 11 U.S.C. 1109(b)."  In re Old Carco, 500 B.R. 683, 692 (Bankr. S.D.N.Y. 2013).

19, 2013), aff'd sub nom. Scott v. Residential Capital, LLC (In re Residential Capital, LLC), No.

14 Civ. 761, 2015 WL 629416 (S.D.N.Y. Feb. 13, 2015); Kyrs. v. Official Comm. of Unsecured

Creditors of Refco, Inc. (In re Refco Inc.), 505 F.3d 109, 117 n.10 (2d Cir. 2007) ("[P]arty-in-

interest standing . . . does not arise if a party seeks to assert some right that is purely derivative of

another party's rights in the bankruptcy proceeding.").

19.    An entity that is "merely 'concerned' with the results of a debtor's bankruptcy

proceedings" does not qualify.  Residential Capital, 2013 WL 6698365, at *4 (citation omitted).

A "real party in interest" is generally "the one who, under the applicable substantive law, has the

legal right which is sought to be enforced or is the party entitled to bring suit."  Id. at *3 (citing

Coe. v. U.S. Dist. Ct. for the Dist. of Colo., 676 F.2d 411, 415 (10th Cir. 1982)).

20.    New GM recognizes the future, contingent nature of its purported economic

interest in Phase 1, stating that the "Settlement Agreement, *if enforced*, would impose significant

burdens on New GM," namely, the obligation under the Claims Estimate Order, "*if entered*," to

deliver the Adjustment Shares.  New GM. Br. ¶ 19 (emphases added).  Nonetheless, New GM

contends that it is a party in interest under Bankruptcy Code Section 1109 because it will be the

"primary funding source" if the Settlement Agreement "is approved and enforced after Phase 2."

See id. ¶ 27.

21.    This interest is too remote to support Phase 1 standing.  Any outcome in Phase 1

will not impose any imminent direct financial obligation on New GM.  See Ionosphere Clubs,

Inc., 101 B.R. at 849 (parties in interest under Bankruptcy Code Section 1109 must have a

"direct" stake in the proceeding); Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.),

698 F.2d 571, 572-73 (2d Cir. 1983) (holding that the bank-mortgagee's interest in the debtor's

case was too remote to meet the requirements of party in interest standing where the debtor

leased the premises but a third-party was obligated to pay the mortgage).[5]   The only resulting

obligation if the Settlement Agreement is held to be binding is on the parties to file a joint

motion for approval of the Settlement Agreement and the Claims Estimate Order under

Bankruptcy Rule 9019, after obtaining an order approving notice procedures for this motion.  See

Settlement Agreement §§ 2.2, 2.9.   New GM would then seek standing to be heard in Phase 2,

and would have standing to contest any request after Phase 1 that New GM turn over notice

information to the Signatory Plaintiffs.[6]

        22.      In New GM's view, they are more like the insurers in Global Industrial with

standing, than the excess insurer in C.P. Hall that lacked standing.  See New GM Br. ¶¶ 29-30.

Not so.   In Global Industrial, the Third Circuit held that the debtor's liability insurers had

standing to contest a plan of reorganization that would assign their policies to a trust created to

satisfy the debtor's liability for certain injury claims.  See In re Glob. Indus. Techs., Inc., 645

F.3d 201, 204-08, 212-14 (3d Cir. 2011).  The creation of the trust directly affected the insurers'

economic interests.  See id. at 212-14.  Moreover, the insurers raised "nonfrivolous allegations,"

with record support, of collusion between the debtors and claimants, asserting that the debtors set

up the trust to "pay for newly ginned-up" claims in exchange for claimants voting in favor of the

---

[5]   For the same reason, New GM's contention that its "interest in its own common stock . . . may be affected if the
Court determines in Phase 1 that the Unexecuted Settlement Agreement is binding," is unavailing.  New GM
Br. ¶ 34 (citing United States v. Veliotis, 586 F. Supp. 1512, 1521 (S.D.N.Y. 1984) (holding that the court
would exercise its discretion under § 1963(b) to hear fugitive's motion to remove restraining order prohibiting
fugitive from selling or disposing of stock and declining to rule on "whether due process requires a post-seizure
hearing whenever a restraining order is entered in a RICO prosecution")).  New GM's interest in its common
stock is not implicated in Phase 1.

[6]   Like the excess insurer in C.P. Hall, New GM has no right to "butt into" the dispute over whether the
Settlement Agreement is binding on the GUC Trust.  That New GM "may suffer collateral damage" from a
ruling in Phase 1 if the Claims Estimate Order is subsequently entered in Phase 2 does not provide it with a
sufficient direct interest for Phase 1 standing.  See In re C.P. Hall Co., 750 F.3d 659, 661 (7th Cir. 2014).

Plan.  See id. at 214.  As a result, no other party had an incentive to pursue the objections that the

insurers were raising, which implicated the integrity of the bankruptcy proceedings.  See id.

      23.     Here, on the other hand, New GM has not and cannot allege or provide record

support that the GUC Trust has engaged in a collusive scheme with the Signatory Plaintiffs.  The

GUC Trust could not and has not ever claimed that the Settlement was collusive, and every

aspect of the Settlement requires Court approval after notice and a hearing.  Also unlike the

insurers in Global Industrial, New GM does not contend that the GUC Trust is failing to properly

pursue its Phase 1 objections shared with the GUC Trust.  Accordingly, this case is nothing like

Global Industrial, and the better reasoning which this Court should follow is C.P. Hall.[7]

      24.     New GM's assertion that its interest in "consummating the Forbearance

Agreement" is sufficient for party in interest standing also fails.  See New GM Br. ¶¶ 2, 34.  Any

interest that New GM may have under the Forbearance Agreement is self-serving and irrelevant

to the issue of whether it has Phase 1 standing.  Cf. S. Blvd., Inc. v. Martin Paint Stores (In re

Martin Paint Stores), 207 B.R. 57, 60-62 (S.D.N.Y. 1997) (holding that company did not have

party in interest standing to challenge the debtor's assumption and assignment of lease because

possible breach would be under a different lease than the lease being assigned and the objector

---

[7]    The remaining cases cited by New GM do not support their Phase 1 standing.  See New GM Br. ¶¶ 27-28, 30,
32.  Several cases are irrelevant, as the parties' interests in the underlying dispute arose from contractual
obligations.  See Church Mut. Ins. Co. v. Am. Home Assurance Co. (In re Heating Oil Partners, LP), 422 F.
App'x 15, 17 (2d Cir. 2011) (holding that debtor's insurer had standing to move for an order declaring a default
judgment against the debtor void where insurer would be held responsible to satisfy the default judgment in
whole or in part); In re Standard Insulations, Inc., 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992) (holding that
debtor's insurers were "parties in interest" with standing to object to personal injury claims against the estate
where the insurers were contractually obligated to pay certain claims); In re Stone Barn Manhattan LLC, 405
B.R. 68, 73-74 (Bankr. S.D.N.Y. 2009) (holding that a party that established an escrow account to cover the
debtor's unpaid administrative claims and that had the right to receive all remaining funds in an escrow account
once all applicable claims had been satisfied had standing to challenge settlement of purported administrative
claim that would be paid from the escrow account).  Here, by contrast, New GM's obligation under the Sale
Agreement to issue Adjustment Shares is not implicated in Phase 1.

was not a party to the lease being assigned).  A party cannot manufacture its own standing by creating a separate contract that relates to an earlier contract that it is not a party to.

25.    Likewise, New GM cannot latch onto the Participating Unitholders' participation in Phase 1 to bootstrap standing.  New GM contends that "[i]t is inconsistent to maintain the Participating Unitholders should be granted standing, but not New GM," because, in New GM's view, "the only possible basis" for the Participating Unitholder's standing "is the same as New GM's:  an economic interest in the outcome of Phase 2."  New GM Br. ¶ 31; see also id. ¶ 2.  To the contrary, the Participating Unitholders are differently situated than New GM for numerous reasons, including that the Participating Unitholders:  (i) are not subject to a Phase 1 standing challenge under the Scheduling Order like New GM; (ii) are third-party beneficiaries of the Settlement Agreement; (iii) were part of the Settlement negotiation process; and (iv) are fact witnesses regarding the issue of whether the Settlement Agreement is binding.

26.    New GM also contends that "[t]he justifications for restricting standing arise in circumstances not present here" where "allowing numerous parties to inject themselves into the case on every issue . . . [would] thwart[] the goal of a speedy and efficient reorganization . . . ."  New GM Br. ¶ 36.  However, the absence of this justification does not demonstrate the existence of standing or that New GM's participation is not unduly burdensome and duplicative of the GUC Trust.  Moreover, New GM ignores other justifications for restricting standing, such as preventing a party from asserting the rights of others (here, the GUC Trust) because "third

-10-

09-50026-mg    Doc 14188    Filed 12/07/17    Entered 12/07/17 19:41:44    Main Document
Pg 16 of 22

parties themselves usually will be the best proponents of their own rights." <u>Kane</u>, 843 F.2d at

643 (citation omitted).[8]

27.    Finally, in addition to having no direct financial stake in Phase 1, New GM has

not demonstrated that it is a creditor or has an equitable claim against the estate. <u>See</u> <u>Ionosphere</u>

<u>Clubs, Inc.</u>, 101 B.R. at 849 ("[T]he party requesting standing must either be a creditor of a

debtor to invoke the court's jurisdiction or be able to assert an equitable claim against the

estate."). The only claim against the GUC Trust that New GM points to—Proof of Claim No.

71111—was withdrawn. <u>See</u> New GM Br. ¶ 26 n.31.

**B.    Plaintiffs Have Not Conceded New GM's
Status As A Party In Interest For Phase 1.**

28.    New GM's argument that the Signatory Plaintiffs have conceded New GM's

status as a party in interest for Phase 1 is no more than a collection of unrelated facts that does

not evince any such concession.

29.    New GM asserts that the Signatory Plaintiffs have conceded standing by pointing

to the transcript of the hearing held before Judge Gerber over two years ago on July 16, 2015.

<u>See</u> New GM Br. ¶ 41. However, the discussion before Judge Gerber was in the context of

Bankruptcy Rule 9019 settlement approval, an issue wholly separate from Phase 1. <u>See</u> Jul. 16,

2015 Hr. Tr. 41:22-42:1 (ECF No. 13399) (MR. WEISFELNER: "[I]t would be brought to the

---

[8]    New GM also cites cases where the court held that the movants lacked party in interest standing or stand for the
proposition, unrelated to Phase 1, that a creditor or party to an executory contract with the debtor has standing
to challenge the commencement of bankruptcy proceedings because of the direct and immediate effect of the
bankruptcy case and automatic stay on the creditor's state law enforcement rights. <u>See</u> <u>Lazard v. Texaco, Inc.</u>
<u>(In re Texaco Inc.)</u>, 81 B.R. 820, 828 (Bankr. S.D.N.Y. 1988) (movants who the debtors agreed were parties in
interest did not have standing to seek relief from the automatic stay on behalf of absent creditors); <u>Scott v.</u>
<u>Residential Capital, LLC (In re Residential Capital, LLC)</u>, No. 14 Civ. 761, 2015 WL 629416, *1-4 (S.D.N.Y.
Feb. 13, 2015) (defendant in foreclosure action involving a mortgage that was once serviced by the debtor did
not have standing to assert a violation of the automatic stay); <u>In re Sapphire Dev., LLC v. McKay</u>, 523 B.R. 1, 6
(D. Conn. 2014) (holding that a creditor whose state court action seeking to recover property from the debtor
was stayed by the commencement of the debtor's bankruptcy case had standing to move for the court to abstain
from the bankruptcy case); <u>In re Suffolk Reg'l Off-Track Betting Corp.</u>, 462 B.R. 397, 413-14 (Bankr.
E.D.N.Y. 2011) (holding that party to an executory contract had standing to be heard on whether debtor was
eligible for chapter 9 relief).

-11-

Court's attention under rule 9019. . . . And New GM will have an opportunity to oppose that 9019."). New GM's assertion of standing to contest the terms of the Settlement Agreement at a Rule 9019 approval hearing (part of Phase 2) is a separate issue from its Phase 1 standing, on a different record.[9]

30.    New GM also asserts that a 2011 order granting New GM standing to be heard in an earlier contested matter related to a claim objection "underscores the fact that New GM is a proper party in interest in Phase 1." Id. ¶ 43.    There, the parties in the contested matter consented to New GM's participation on the limited issue of whether Rule 60(b) relief should be granted to undo an aspect of the Sale Order following New GM's avowal that it was not seeking standing to be heard on the issue of allowance or disallowance of the claim. See Oct. 28, 2011 Hr'g Tr. 23:1-24:17 (ECF No. 11105). Here, New GM is seeking unfettered standing to be heard in Phase 1—an issue in which it has neither a direct interest nor the consent of the parties to participate. Accordingly, this prior order has no bearing on the current dispute.

### C.    New GM Should Not Be Permitted To Intervene In Phase 1 Because It Has Not Demonstrated Cause And Its Interests Are Adequately Represented.

31.    In the alternative to Bankruptcy Code Section 1109 standing, New GM contends that it should be granted permissive intervention under Bankruptcy Rule 2018(a). See New GM Brief ¶ 37.[10] New GM fares no better under the standards for permissive intervention.

---

[9]    Nor does the facts that New GM would receive notice of the motion to approve the Settlement Agreement under Bankruptcy Rule 9019 via ECF filing, see New GM Br. ¶ 44, has participated in briefing on motions seeking authority to file late claims against the GUC Trust, see id. ¶¶ 2, 15, 42, and was provided copies of the final Settlement documentation in advance of the August 17, 2017 status conference as a courtesy, see id. ¶ 40, create Phase 1 standing for New GM where it does not properly exist. The Signatory Plaintiffs submit that the record will show New GM lacks Phase 2 standing for a host of reasons, including that the governing documents provide the GUC Trust with exclusive authority to object to and settle Plaintiffs' claims against the GUC Trust.

[10]    As a preliminary matter, permissive intervention requires leave of the Court after the filing of a timely motion and a hearing. See Fed R. Bankr P. 2018; 9013. New GM has not satisfied these requirements.

32.     In determining whether to allow permissive intervention, the Court must consider whether the intervenor's interests are adequately represented by a party already present in the case.  See Martin Paint Stores, 207 B.R. at 62; see also Ionosphere Clubs, Inc., 101 B.R. at 853. The fact that a proposed intervenor may have interests adverse to a participating party does not provide grounds for intervention.  See Martin Paint Stores, 207 B.R. at 62 (denying permissive intervention to the tenant next door to the debtor to challenge the debtor's assumption and assignment of its lease because the tenant was seeking to assert similar objections as the lessor, even though the lessor did not share all of the same interests as the tenant).

33.     Here, New GM has not shown any reason why its indirect interests are not adequately represented in Phase 1.  The sole issue in Phase 1 is whether the Settlement Agreement is binding against the GUC Trust.  The GUC Trust, a contract party, is actively contesting that issue and seeking a finding that the Settlement Agreement is not binding.  New GM, who is seeking the same finding, has not alleged that the GUC Trust is not adequately litigating Phase 1 issue or that it seeks a different outcome from New GM.  Thus, New GM's interests are adequately represented and it should not be permitted to intervene in Phase 1.[11]

III.    **New GM Lacks Constitutional Standing In Phase 1 Because It Fails To Show A Concrete And Particularized Injury Implicated In Phase 1.**

34.     The case law is clear that if a party lacks prudential standing as New GM does here, the Court need not reach the question of Article III standing.  See Hillside Metro Assocs., 747 F.3d at 48-49; In re Old Carco LLC, 500 B.R. at 692.

---

[11]    New GM contends that denying New GM permissive intervention or party in interest standing will delay the proceedings "because such an order constitutes a final judgment that must be appealed before the commencement of trial."   New GM Br. ¶ 37 n.36.   The Signatory Plaintiffs and Participating Unitholders respectfully request that the Court rule on the standing issue at close of trial so as not to divest the Court of jurisdiction over the Motion in the event of an appeal.   The Court can monitor the degree of New GM's participation at trial.

35.    For the reasons set forth in the Opening Brief at ¶¶ 30-34 and Section II.(A) herein, New GM fails to prove Article III standing as it cannot show any imminent threatened harm by the outcome of Phase 1.[12]    Accordingly, New GM lacks Phase 1 standing.

## CONCLUSION

For the reasons set forth above and in the Opening Brief, the Signatory Plaintiffs and the Participating Unitholders respectfully request that this Court find that New GM lacks Phase 1 standing and grant such other and further relief as the Court deems appropriate.

---

[12]    In contrast to New GM's proffered indirect interests, the parties in the cases cited by New GM, see New GM Br. ¶ 39 n.38, had direct interests traceable to the challenged action.  See Sapphire Dev. LLC, 523 B.R. at 5-6 (holding that creditor alleging that property within the bankruptcy estate belonged to him had standing to move for the court to abstain from the Chapter 11 proceeding); Glob. Indus. Techs., 645 F.3d at 204-08, 212-14 (holding that liability insurers had standing to contest confirmation of a plan of reorganization that would assign their policies to a trust where it had been shown that the creation of the trust had exponentially increased the debtor's pre-petition liabilities and would impose new administrative burdens, all to be covered by the insurer).

Dated: December 7, 2017          Respectfully submitted,
       New York, New York

 /s/ Edward S. Weisfelner            
Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Ste. 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing
Accident Plaintiffs Represented By Hilliard
Muñoz Gonzales L.L.P. and the Law Offices
of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to certain Pre-Closing Accident
Plaintiffs*

Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J.
HENRY
4715 Fredricksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

Lisa M. Norman (admitted *pro hac vice*)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Tel: 713-850-4200
Lnorman@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

Daniel H. Golden
Deborah J. Newman

-16-

AKIN GUMP STRAUSS
HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Tel: 212-871-1002
dgolden@akingump.com
djnewman@akingump.com

*Counsel to Participating Unitholders*