**Hearing Date And Time: December 18, 2017 at 9:00 a.m. (EST)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                          :
In re:                                                    :       Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                       :       Case No.: 09-50026 (MG)
      f/k/a General Motors Corp., et al.,         :
                                                          :
                         Debtors.                :       (Jointly Administered)
-------------------------------------------------------------X

**REPLY IN SUPPORT OF MOTION TO ENFORCE THE SETTLEMENT AGREEMENT**
**BY AND AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I. The Parties Intended To Bind Themselves Prior To Execution Of The Settlement Agreement. ............................................................................................................. 1

    A. Section 3.1 Does Not Bar Enforcement Of The Settlement. .............................. 1

    B. The Parties Reached Agreement On All Material Terms No Later Than August 14, 2017, And There Was Nothing Left To Negotiate. ........................... 7

    C. The Parties Partially Performed Under The Settlement Agreement. .................. 7

    D. The Parties Reduced The Settlement Agreement To A Detailed Writing. ......... 8

II. N.Y. C.P.L.R. 2104 Does Not Apply To The Settlement Agreement And, In Any Event, Is Satisfied. ................................................................................................. 9

III. New GM's Representational Authority Argument Fails. ................................................ 10

CONCLUSION ......................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alli v. Warden of A.R.N.D.C*,
 No. 12 Civ. 3947, 2016 WL 7176979 (S.D.N.Y. Dec. 9, 2016), *report and
 recommendation adopted*, 2017 WL 118023 (S.D.N.Y. Jan. 11, 2017) ...................................9

*Alvarez v. City of N.Y.*,
 146 F. Supp. 2d 327 (S.D.N.Y. 2001) ......................................................................................8

*In re Artha Mgmt., Inc.*,
 91 F.3d 326 (2d Cir. 1996) ......................................................................................................10

*Berman v. Sugo LLC*,
 580 F. Supp. 2d 191 (S.D.N.Y. 2008) ......................................................................................6

*Ciaramella v. Reader's Digest Ass'n, Inc.*,
 131 F.3d 320 (2d Cir. 1997) ..................................................................................................4, 5

*Consarc Corp. v. Marine Midland Bank, N.A.*,
 996 F.2d 568 (2d Cir. 1993) ......................................................................................................2

*Conway v. Brooklyn Union Gas Co.*,
 236 F. Supp. 2d 241 (E.D.N.Y. 2002) ...................................................................................5, 9

*Delgrosso v. City of N.Y.*,
 No. 11–CV–4876, 2013 WL 5202581 (E.D.N.Y. Sept. 13, 2013) ...........................................4

*Figueroa v. N.Y.C. Dep't of Sanitation*,
 475 F. App'x 365 (2d Cir. 2012) ..............................................................................................9

*Guardian Life Ins. Co. of Am. v. Calkins*,
 No. 12 Civ. 8863, 2014 WL 61475 (S.D.N.Y. Jan. 6, 2014) ....................................................7

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*,
 No. 04 Civ. 1621, 2005 WL 1377853 (S.D.N.Y. June 9, 2005) ...............................................6

*Kowalchuk v. Stroup*,
 61 A.D.3d 118 (N.Y. App. Div. 2009) ...........................................................................2, 4, 5

*Langreich v. Gruenbaum*,
 775 F. Supp. 2d 630 (S.D.N.Y. 2011) ......................................................................................2

*In re Lehman Bros. Holdings, Inc.*,
 No. 17 Civ. 03424, 2017 WL 3278933 (S.D.N.Y. Aug. 2, 2017) .........................................4, 8

*Lindner v. American Express Corp.*,
  No. 06 Civ. 3834, 2007 WL 1623119 (S.D.N.Y. June 5, 2007) ................................................. 5

*Mone v. Park E. Sports Med. & Rehab., P.C.*,
  99 Civ. 4990, 2001 WL 1518263 (S.D.N.Y. Nov. 29, 2001) ................................................... 9

*Nieves v. Community Choice Health Plan of Westchester, Inc.*,
  N. 08 Civ. 0321, 2011 WL 5533328 (S.D.N.Y. Aug. 31, 2011) .............................................. 5

*Pearce v. Manhattan Ensemble Theatre, Inc.*,
  No. 06 CV 1535, 2009 WL 3152127 (S.D.N.Y. Sept. 30, 2009) ............................................. 4

*Powell v. Omnicom*,
  497 F.3d 124 (2d Cir. 2007) ................................................................................................. 7, 8

*Scheinmann v. Dykstra*,
  No. 16 CIV. 5446, 2017 WL 1422972 (S.D.N.Y. Apr. 21, 2017) ........................................... 9

*Searles v. Pompilio*,
  No. 02 Civ. 6567, 2010 WL 11507379 (S.D.N.Y. Jan. 28, 2010) ........................................... 8

*Smith v. Haag*,
  No. 08-CV-6360, 2015 WL 866893 (W.D.N.Y. Mar. 2, 2015) ............................................... 8

*Stewart v. City of N.Y.*,
  No. 15 Civ. 7652, 2017 WL 4769396 (S.D.N.Y. Oct. 20, 2017) ......................................... 7, 8

*Stonehill Capital Mgmt. LLC v. Bank of the W.*,
  28 N.Y.3d 439 (2016) ............................................................................................................. 4

*Villeroy & Boch S.a.r.l. v. THC Systems, Inc.*,
  No. 84 Civ. 8073, 1991 WL 102520 (S.D.N.Y. June 3, 1991) ............................................... 6

*Wesley v. Correction Officer Badge No. 9417*,
  No. 05 Civ. 5912, 2008 WL 41129 (S.D.N.Y. Jan. 2, 2008) .................................................. 8

*Winston v. Mediafare Entm't Corp.*,
  777 F.2d 78 (2d Cir. 1985) ............................................................................................. 2, 7, 8

**Other Authorities**

CPLR 2104 .................................................................................................................................. 9, 10

# INTRODUCTION

1. Public policy strongly favors—and New York law requires—finding that a settlement agreement is binding where, as here, the parties have reached complete agreement on all material terms and conditions of the settlement, including an agreement to be bound. The GUC Trust's[1] main defense is the boilerplate language in Section 3.1 of the Settlement Agreement that was inserted on June 9 and never discussed, much less negotiated. But Section 3.1 does not say that the parties will not be bound prior to execution, and cannot negate the legal impact of the GUC Trust's subsequent repeated and objective manifestations of intent to be bound to the Settlement regardless of whether the Settlement Agreement was signed. The evidence produced corroborates that agreement on all material and non-material terms had been reached and reduced to a final writing, the Settlement was "signed off," and the parties had begun taking steps to implement the Settlement Agreement.[2]

# ARGUMENT

**I.   The Parties Intended To Bind Themselves Prior To Execution Of The Settlement Agreement.**

   **A.   Section 3.1 Does Not Bar Enforcement Of The Settlement.**

2. The GUC Trust and New GM rely upon Section 3.1 of the Settlement Agreement, which states that the Settlement Agreement "shall become effective and binding on the Parties on the date on which this Agreement is fully executed by each of the Parties," and a handful of other provisions (such as the merger and amendment clauses) to argue that the Parties did not intend to

---

[1] Capitalized terms herein have the same meaning as defined in the *Motion to Enforce the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust*, dated Sept. 11, 2017 [ECF No. 14092] (the "**Motion**").

[2] The GUC Trust's claim that the words "signed-off" do not mean what they say is belied by the evidence (in that the GUC Trust frequently had documents finalized in this way) and finds no basis in law or common sense. There is simply no daylight between signing off on the *form* of a document and signing off to the document as complete.

be bound by the Settlement Agreement until it was signed.  *See* GUC Tr. Br. 12-14; New GM Br. ¶¶ 2-3.

3.     This contention misconstrues Section 3.1, which does *not* state that the Parties will not be bound until the Settlement Agreement is signed.  Additionally, the GUC Trust and New GM ignore that enforceability turns on intent, which courts discern by analyzing the parties' "words and deeds," *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985) (citation omitted), in "the context of the entire case," *Langreich v. Gruenbaum*, 775 F. Supp. 2d 630, 636 (S.D.N.Y. 2011).  New York courts recognize that even where a written agreement contains indicia that it is not intended to be binding, "subsequent actions of the [parties'] counsel" may nevertheless "render[] the agreement binding" notwithstanding the absence of a signature.  *Kowalchuk v. Stroup*, 61 A.D.3d 118, 124 (N.Y. App. Div. 2009); *see also Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 576 (2d Cir. 1993) (holding that intent should be gleaned "the time of contracting" and not from a single provision in the prelude to negotiations).

4.     Here, following the insertion of Section 3.1 into the Settlement Agreement on June 9, the GUC Trust repeatedly manifested its intent to be bound to the settlement.  Such manifestations include the following actions, among others:

    a.    On July 27, 2017, Keith Martorana of Gibson Dunn conveyed that the "Settlement Agreement, Settlement Order and Claims estimate order generally look fine from a GDC perspective" and that client-sign off on these three documents "will likely come tomorrow."  The next day, Mr. Martorana recirculated the Settlement Agreement and Settlement Order without any reservation of rights.

    b.    On August 9, 2017, with the permission of Gibson Dunn, Daniel Golden of Akin Gump and Ed Weisfelner of Brown Rudnick informed New GM about the Settlement.

    c.    On August 10, 2017, David Vanaskey of Wilmington Trust emailed Beth Andrews of Wilmington Trust an invite to a Corporate Trust Distressed Investing Roundtable regarding "Bankruptcy Rule 9019 settlements:  What the indenture trustee needs to know."  Vanaskey wrote:  "In light of the Ig Switch *settlement* may be something worth considering

attending. Also Debbie Newman [of Akin Gump] presenting." (Emphasis added.)

        d.    On August 11, 2017, Co-Lead Counsel Steve Berman previewed certain terms of the settlement in open court at the status conference before Judge Furman in the MDL. Gibson Dunn attended the MDL status conference telephonically and did not object to or complain about the preview of the Settlement after the status conference.

        e.    An "all hands call" took place on August 11, 2017 "to finalize all of the settlement documentation and motions" by having on the call "the requisite people necessary to bind your respective clients." On that call, Gibson Dunn conveyed that they were done with comments to the documents and had the requisite authority to bind the GUC Trust.

        f.    On August 12, 2017, after updated documents were circulated incorporating edits from the all hands call, Keith Martorana of Gibson Dunn confirmed that "[f]rom the GUC Trust perspective, all of the documents sent over by Howie [Steel] (subject to one item we are discussing with Akin in the Settlement Agreement) are fine." This email did not include any reservation that counsel's comments were subject to client review or approval. On August 14, 2017, Mr. Martorana confirmed that resolution of that open item had occurred without any reservations.

        g.    On August 12, 2017, Keith Martorana of Gibson Dunn circulated a draft of the declaration of Beth Andrews of Wilmington Trust in support of the motion to approve the Settlement Agreement. The declaration states that "the Settlement is a prudent and reasonable exercise of business judgment because it presents the best option for the GUC Trust to maximize recovery for the benefit of the GUC Trust Beneficiaries while minimizing the substantial risk posed by the Late Claims Motions" and "[t]he settlement is in the best interests of the GUC Trust, the Old GM estates and the GUC Trust Beneficiaries."

        h.    On August 14, 2017, Beth Andrews of Wilmington Trust sent an email to other Wilmington Trust employees to alert them to an article about the Settlement, stating: "Entering into the settlement is not an action we have taken without a great deal of thought and guidance from our legal advisors. We believe settling with the plaintiffs is in the best interest of the [GUC] Trust and will enable us to wind it down and make a final distribution to all of the unitholders sooner rather than later."

        i.    On August 14, 2017, each party (including the GUC Trust) provided consent to circulate the Settlement documentation to New GM without reservation. Before Keith Martorana provided authorization to send the documents to New GM, he informed Wilmington Trust that "FTI has signed off. Is the GUC Trust prepared to sign off? If at all possible, it would be better to send these documents to KS tonight," and Beth Andrews of Wilmington Trust responded, "yes, I took a look at these before I left the office, *signed off*." (Emphasis added.)

        j.    The parties scheduled the August 17, 2017 conference before Judge Glenn to preview the Settlement and proposed notice procedures.[3]

---

[3] *See Declaration of Edward S. Weisfelner in Support of Motion to Enforce the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust*, dated Sept. 11, 2017 [ECF No. 14093], ¶¶ 7-12; PX034; PX051;

5. In this context, Section 3.1 cannot possibly be understood as providing the Signatory Plaintiffs "forthright, reasonable signals" that "remove any doubt of the [GUC Trust's] intent not to be bound absent" signatures. *Stonehill Capital Mgmt. LLC v. Bank of the W.*, 28 N.Y.3d 439, 451 (2016). Indeed, New York courts have held that language similar to that found in Section 3.1 is *not* a reservation of the right not to be bound absent signatures. *See also Kowalchuk*, 61 A.D.3d at 124 (unsigned agreement stating agreement "is complete and binding upon its execution by all signatories" did not amount to reservation of right not to be bound); *In re Lehman Bros. Holdings, Inc.*, No. 17 Civ. 03424, 2017 WL 3278933, at *3 (S.D.N.Y. Aug. 2, 2017) (unsigned agreement stating agreement "shall become effective upon execution hereof by each of the Parties" did not amount to reservation of right not to be bound).

6. Contrary to the GUC Trust's contentions, the courts' decisions in *Kowalchuk* and *Lehman Brothers* do not turn on the timing of the insertion of the signature language. Instead, both courts focused on the ***absence of correspondence highlighting*** an express reservation not to be bound without a signature when the settlement was reached, and that the parties' subsequent actions indicated an intent to be bound absent a signature.[4]

7. The GUC Trust's reliance on *Ciaramella v. Reader's Digest Association, Inc.* in support of the proposition that Section 3.1 is dispositive here is misplaced. *See* GUC Tr. Br. 14. In determining whether or not the parties expressly reserved the right to be bound until after

---

PX047; PX063; PX073; PX063; PX066; PX077; PX081; PX085; PX088; PX089. At no time was it suggested that the planned conference with this Court was a condition precedent to the Settlement being finalized. *See, e.g.*, *Direct Testimony of Edward S. Weisfelner*, dated Dec. 5, 2017 [ECF No. 14184-1] ¶ 26.

[4] These cases are in accord with other authority and support the conclusion that this Settlement Agreement is binding despite the other provisions of the Settlement Agreement relied on by the GUC Trust and New GM. *See also Delgrosso v. City of N.Y.*, No. 11–CV–4876, 2013 WL 5202581, at *7–8 (E.D.N.Y. Sept. 13, 2013) (agreement binding despite provision stating plaintiff would "execute and deliver" settlement documentation because there was "no expressed reservation of the right not to be bound in the absence of a writing signed by the plaintiff"); *Pearce v. Manhattan Ensemble Theatre, Inc.*, No. 06 CV 1535, 2009 WL 3152127, at *6 (S.D.N.Y. Sept. 30, 2009) (inclusion of merger clause and signature lines in draft letter of agreement did "not constitute express statements that the parties would only be bound by a written agreement").

execution, the Second Circuit in *Ciaramella* focused almost entirely on the text of the parties' settlement agreement because there was very little else to examine. *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 325 (2d Cir. 1997) ("The sole communication which might suggest that the parties did not intend to reserve the right to be bound is [Plaintiff's counsel's] alleged statement to [Defendant's] counsel, 'We have a deal.'"). That is not the case here, as demonstrated by the many detailed manifestations of intent to be bound described above. *See Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 243, 249 (E.D.N.Y. 2002) ("Parties satisfy the first element of the *Winston* test when there has been no express reservation and when other circumstances and actions of the parties indicate no reservation of the right not to be bound outside a final written agreement.").

8.    Further, the language in the agreement in *Ciaramella* provides that: "This Settlement Agreement and General Release *shall not* become effective . . . until it is signed . . . . ." *Ciaramella*, 131 F.3d at 324 (emphasis added). Section 3.1, on the other hand, provides no such reservation; rather it is simply an affirmative statement that the Settlement Agreement will become binding and effective upon execution. It does not necessarily follow from the language of Section 3.1 that the Settlement Agreement will not be binding until executed. *See Kowalchuk*, 61 A.D.3d at 125 (explaining that a provision that "'the Agreement is complete and binding upon its execution by all signatories' is not the equivalent of a provision that it is *not* binding *until* it has been so executed").

9.    The GUC Trust's other cited authorities are also distinguishable. In *Nieves v. Community Choice Health Plan of Westchester, Inc.*, N. 08 Civ. 0321, 2011 WL 5533328, at *8 (S.D.N.Y. Aug. 31, 2011), and in *Lindner v. American Express Corp.*, No. 06 Civ. 3834, 2007 WL 1623119, at *6 (S.D.N.Y. June 5, 2007), the courts' decisions not to enforce the parties'

agreements rested in large part on the courts' findings that, unlike here, the parties had failed to reach agreement as to all material terms. In *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 203 (S.D.N.Y. 2008), the party seeking enforcement conceded that the defendant "expressed an intent not to be bound by the terms of the Operating Agreement until he signed it . . . ." Additionally, the alleged reservation language at issue in *Villeroy & Boch S.a.r.l. v. THC Systems, Inc.*, No. 84 Civ. 8073, 1991 WL 102520, at *5 (S.D.N.Y. June 3, 1991), unlike the language of Section 3.1, stated "[t]his Agreement shall be *effective only upon signature by all the parties*," and the parties' correspondence also reflected "the necessity for formal signature. . . ."

10.     Here, there is no evidence that the GUC Trust refused to enter into the Settlement Agreement during the negotiations. Just the opposite, the GUC Trust repeatedly expressed its eagerness to settle during negotiations, took necessary steps to achieve that end, and never conveyed that it was unwilling to settle prior to signing the Agreement. Permitting the GUC Trust to back out of the Settlement Agreement under these circumstances would be inconsistent not only with applicable law, but also with basic principles of equity.

11.     Finally, the GUC Trust's and New GM's newfound contention that the GUC Trust was waiting until after the August 17 conference to sign the Settlement Agreement, *see* GUC Tr. Br. 7, New GM Br. ¶ 5, is highly suspect and also irrelevant because the GUC Trust concedes that it never communicated this intention to the Signatory Plaintiffs. *See Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04 Civ. 1621, 2005 WL 1377853, at *6 (S.D.N.Y. June 9, 2005) ("In determining the parties' intent, a court must look, not to their after-the-fact professed subjective intent, but their objective intent as manifested by their expressed words and deeds at the time." (internal quotation marks and citation omitted)).[5]

---

[5] The GUC Trust and New GM's contention that the testimony of Daniel Golden, counsel to the Participating Unitholders, was somehow consistent with this mischaracterizes Mr. Golden's testimony. *See* GM Br. ¶ 5; GUC Tr.

**B.    The Parties Reached Agreement On All Material Terms No Later Than August 14, 2017, And There Was Nothing Left To Negotiate.**

12.    The GUC Trust acknowledges that enforcement is favored when "there [is] literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to." *See* GUC Tr. Br. 22-23 (citing *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 76 (2d Cir. 1984)).[6] Here, counsel to the GUC Trust has testified that the GUC Trust agreed to "all the terms in the document [the Settlement Agreement]." *See* M. Williams Dep. (Vol. I) at 94:1-2.[7] This is fatal to the GUC Trust's contention that this *Winston* factor is not met because the Settlement Agreement was not signed.

**C.    The Parties Partially Performed Under The Settlement Agreement.**

13.    In arguing that there was no partial performance, the GUC Trust mistakenly relies on *Stewart v. City of New York*, which held only that drafting a settlement agreement did not support a finding of partial performance of an oral contract and explicitly acknowledged that other courts in the same district had held otherwise. *See* GUC Tr. Br. 20; *Stewart v. City of N.Y.*,

---

Br. 8 n. 21. Mr. Golden testified that the purpose of the conference was three-fold: "advise the court of the existence of the settlement," "preview for the court the proposed noticing scheme," and because the "noticing scheme would require the assistance of New GM in providing the names and addresses of the parties who were subject to the recall and the parties who were subject to presale accidents and death claims, that we would see if we would have the opportunity to enlist the court's aid to prod New GM to turn over that information . . . ." Golden Dep. Tr. 160:6–25 (Nov, 16 2017). Any "preview" to the Court discussed by Mr. Golden was with respect to the *proposed noticing procedures* and not the deal itself—and even there Mr. Golden confirmed that the conference was not an opportunity for those procedures to be renegotiated. *Id.* at 208:4–24.

[6] *See also Guardian Life Ins. Co. of Am. v. Calkins*, No. 12 Civ. 8863, 2014 WL 61475, at *2 (S.D.N.Y. Jan. 6, 2014) (holding that this factor strongly favored enforcement where "[a]ll that remained to be done was for the parties to sign the documents").

[7] The GUC Trust suggests that an open term existed because the Settlement did not provide for a class action mechanism. *See* GUC Tr. Br. 6. Not so. This is purely an issue of implementation, not finality; the GUC Trust did not insist that the issue be addressed in the Settlement Agreement. *See Direct Testimony of Edward S. Weisfelner*, dated Dec. 5, 2017 [ECF No. 14184-1] ¶¶ 36-42. Even if the GUC Trust now has misgivings, a "court cannot relieve" a party of its choice to settle "simply because [its] assessment of the consequences was incorrect." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). The GUC Trust also suggests that because the 10Q did not state the Settlement was final, then the Settlement was not final. *See* GUC Tr. Br. 8. Yet the 10Q: (a) said nothing about obtaining the Court's imprimatur prior to signing; (b) pre-dated the sign-off by Ms. Andrews and Gibson Dunn (in that the document was filed on the early morning of August 14, and prepared at some point earlier than that); and (c) reported on a period that ended June 30 before agreement on all material terms. The conservative, caveat-laden language of an S.E.C. quarterly reporting form does not alter the legal standards or provide evidence of non-finality.

-7-

No. 15 Civ. 7652, 2017 WL 4769396, at *3 (S.D.N.Y. Oct. 20, 2017) (disagreeing with *Wesley v. Correction Officer Badge No. 9417*, No. 05 Civ. 5912, 2008 WL 41129, at *3 (S.D.N.Y. Jan. 2, 2008)).[8] Here, the Parties went beyond memorializing the terms of the Settlement and began performing contractual terms by preparing the motions required by Sections 2.2 and 2.9.[9] In addition, numerous steps were taken towards implementing the Settlement Agreement, such as sharing the final documents with New GM, announcing the agreement in the MDL, and scheduling the conference before the Bankruptcy Court.[10]

### D. The Parties Reduced The Settlement Agreement To A Detailed Writing.

14. Courts applying the *Winston* factors have found the writing factor to be satisfied where a settlement is reduced to a detailed but unsigned writing. *See Lehman Bros.*, 2017 WL 3278933, at *4 (enforcing written agreement that was unsigned due to party's own delay); *Alvarez v. City of N.Y.*, 146 F. Supp. 2d 327, 337 (S.D.N.Y. 2001) (enforcing unsigned agreement where terms "had been largely reduced to writing"). Counsel to the GUC Trust testified that the GUC Trust agreed to the final form of the Settlement Agreement. *See* M. Williams Dep. (Vol. I) at 94:1-2. To now contend that this factor is not met because the parties engaged in "substantial redrafting" of the Settlement Agreement in the course of negotiations and did not sign the document, *see* GUC Tr. Br. 19, is farcical. That sophisticated parties spent

---

[8] *Smith v. Haag*, No. 08-CV-6360, 2015 WL 866893 (W.D.N.Y. Mar. 2, 2015), relied on by New GM, *see* New GM Br. ¶ 7, is similarly inapposite because there the court held that the defendants' act of preparing a written stipulation memorializing the parties' oral agreement did not constitute partial performance of the terms of that oral agreement.

[9] *See Powell*, 497 F.3d at 130 (partial performance factor satisfied where employer drafted reference letter required under the settlement and only remaining detail was whether letter would describe former employee's performance as "fully satisfactory" or "exemplary"). For this reason, the GUC Trust's attempt to distinguish *Powell* as a case where "there was no partial performance of a contract term," *see* GUC Tr. Br. at 21, fails.

[10] Moreover, the parties ceased active litigation of the case, as evidenced by the fact that the Parties asked the Court to delay scheduling oral argument on the Initial Late Claims Motions Issues while negotiations were ongoing. *See* Letters [ECF Nos. 13962, 13981, 14027]; *Searles v. Pompilio*, No. 02 Civ. 6567, 2010 WL 11507379, at *5 (S.D.N.Y. Jan. 28, 2010) ("Courts in this Circuit have found that partial performance of a settlement agreement exists where the parties 'relying on the apparent settlement, did not resume active litigation of the case.'" (quoting *Alvarez v. City of N.Y.*, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001))). Under these circumstances, there was partial performance.

2.5 months polishing and finalizing numerous documents supports the notion that the documents were final.

## II. N.Y. C.P.L.R. 2104 Does Not Apply To The Settlement Agreement And, In Any Event, Is Satisfied.

15. Contrary to the GUC Trust's and New GM's arguments, *see* GUC Tr. Br. 24-25, New GM Br. ¶ 6, CPLR 2104 does not apply to settlements of federal actions because the rule "only 'govern[s] the procedure in civil judicial proceedings in all courts of the state,'" not federal courts, and CPLR 2104 "is a rather narrow, limited exception to New York's general rules of contract. . . ." *Mone v. Park E. Sports Med. & Rehab., P.C.*, 99 Civ. 4990, 2001 WL 1518263, at *4-5 (S.D.N.Y. Nov. 29, 2001) (alteration in original).[11]

16. Moreover, CPLR 2104 "is a rule 'of convenience'" that is not strictly applied. *See Mone*, 2001 WL 1518263, at *5 (explaining that unsigned settlement agreement reduced to a final writing was binding even if CPLR 2104 were applicable); *Figueroa v. N.Y.C. Dep't of Sanitation*, 475 F. App'x 365, 366-67 (2d Cir. 2012) (holding that "equity demands that the settlement agreement here be enforced notwithstanding any violation of Rule 2104," assuming that CPLR 2104 is applicable).[12]

17. In any event, courts recognize that emails with a counsel's signature block can satisfy CPLR 2104. *See Scheinmann v. Dykstra*, No. 16 CIV. 5446, 2017 WL 1422972, at *5, n.8 (S.D.N.Y. Apr. 21, 2017). Emails from Keith Martorana containing his signature block, including the August 12 communication by Mr. Martorana that "[f]rom the GUC Trust

---

[11] *See also Alli v. Warden of A.R.N.D.C*, No. 12 Civ. 3947, 2016 WL 7176979, at *2 (S.D.N.Y. Dec. 9, 2016), *report and recommendation adopted*, 2017 WL 118023 (S.D.N.Y. Jan. 11, 2017) ("some case law has applied federal principles regarding the enforcement of settlement agreements without regard—indeed, without even mentioning—N.Y. C.P.L.R. § 2104").

[12] *See also Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 251-52 (E.D.N.Y. 2002) (enforcing settlement agreement where, although under CPLR 2104 "settlements of any claim are generally required to be in writing," "the written draft of the settlement had essentially been finalized . . . with the exception of the final dollar amounts").

perspective, all of the documents sent over by Howie (subject to one item we are discussing with Akin in the Settlement Agreement) are fine" and August 14 communication by Mr. Martorana that this issue had been resolved, comply with CPLR 2104. *See* PX034. Moreover, Ms. Andrews wrote that she was "signed off" on the Settlement. *See* PX088.

### III. New GM's Representational Authority Argument Fails.

18. New GM (but not the GUC Trust) makes an additional argument about an issue not before this Court, namely, that the Signatory Plaintiffs lack authority to enter into this Settlement. *See* New GM Br. ¶ 4. New GM's lack of standing aside, the notion that MDL Lead Counsel and Designated Bankruptcy Counsel lack authority is both premature and incorrect.[13] In addition, this bare assertion cannot overcome the presumption of authority. *See In re Artha Mgmt., Inc.*, 91 F.3d 326, 328-29 (2d Cir. 1996) (consistent with public policy favoring settlements, courts are to "presume that an attorney-of-record who enters into a settlement agreement . . . had authority to do so" and must require the party challenging such authority to prove its absence by "affirmative evidence") (internal citations omitted).

19. New GM also asserts that because certain Pre-Closing Accident Plaintiffs' counsel "recently" ceased representing some of the clients for whom late claims motions were filed that this somehow effectuates a total change in parties. *See* New GM Br. ¶ 4. The motion to withdraw is irrelevant to the parties' mutual assent to enter the Agreement. Moreover, the goal of the parties, including the GUC Trust, was to use the settlement process to encompass affected individuals' applicable claims whether or not they had counsel.

---

[13] *See, e.g.*, Oct. 4, 2017 MDL Status Hr'g Tr. at 4:25–5:14 (Judge Furman "firmly of the view" that the representational issues would not be "ripe" until determination on the motion to enforce; noting New GM's own concessions on that point); *Plaintiffs' and Participating Unitholders' Contentions*, dated Dec. 5, 2017 [ECF No. 14183-2] ¶¶ 122-34.

## **CONCLUSION**

20. For the reasons set forth above and in the Motion, the Signatory Plaintiffs respectfully request that this Court enter an order enforcing the Settlement Agreement, awarding the Signatory Plaintiffs attorneys' fees and costs pursuant to Section 3.3 of the Settlement Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: December 7, 2017  
       New York, New York

Respectfully submitted,

/s/ Edward S. Weisfelner  
Edward S. Weisfelner  
Howard S. Steel  
BROWN RUDNICK LLP  
Seven Times Square  
New York, New York 10036  
Tel: 212-209-4800  
eweisfelner@brownrudnick.com  
hsteel@brownrudnick.com

Sander L. Esserman  
STUTZMAN, BROMBERG, ESSERMAN &  
PLIFKA, A PROFESSIONAL  
CORPORATION  
2323 Bryan Street, Ste. 2200  
Dallas, Texas 75201  
Tel: 214-969-4900  
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing Accident Plaintiffs Represented By Hilliard Muñoz Gonzales L.L.P. and the Law Offices of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to certain Pre-Closing Accident Plaintiffs*

Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J. HENRY
4715 Fredricksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident Plaintiffs*

Lisa M. Norman (admitted *pro hac vice*)
T. Joshua Judd (admitted *pro hac vice*)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Tel: 713-850-4200
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident Plaintiffs*