**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
Telephone: (212) 872-100
Facsimile: (212) 872-1002
Daniel H. Golden
Deborah J. Newman
Jennifer L. Woodson

*Attorneys for the Participating Unitholders*

Hearing Date: December 18, 2017

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>**MOTORS LIQUIDATION COMPANY, *et al.*,**<br>**f/k/a General Motors Corp., *et al.*,**<br><br>**Debtors.** | Chapter 11<br><br>Case No. 09-50026 (MG)<br><br>(Jointly Administered) |

**JOINDER OF THE PARTICIPATING UNITHOLDERS IN PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THE MOTION TO ENFORCE**[1]

Certain unaffiliated holders (the "Participating Unitholders") of more than 65 percent of the beneficial units of the Motors Liquidation Company GUC Trust (the "GUC Trust"), by and through their undersigned counsel, hereby join in the *Reply Brief in Further Support of the Motion to Enforce the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust* filed by the Signatory Plaintiffs and state as follows:

**ARGUMENT**

**I. The GUC Trust's Conduct in Agreeing to the Plaintiff Settlement Precludes Any Reliance on Section 3.1 of the Settlement Agreement**

1. In the face of overwhelming evidence that the GUC Trust agreed to the Plaintiff

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in *Motion to Enforce the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust*, [ECF No. 14092].

1

Settlement without reservation, Wilmington Trust and New GM premise their argument that the GUC Trust is nevertheless not bound by the Plaintiff Settlement primarily on boilerplate language in Section 3.1 of the Settlement Agreement ("Section 3.1"). Section 3.1 provides that "[t]his Agreement shall become effective and binding on the Parties on the date on which this Agreement is fully executed by each of the Parties."

2.      Wilmington Trust and New GM attempt to rewrite Section 3.1 as the inverse, arguing that the language amounts to an express reservation that "there is no contract unless and until the document is formally signed."[2] But this is not what the agreement says. Indeed, an affirmative provision like Section 3.1, providing that a contract is binding upon signature, "is not the equivalent of a provision that [the contract] is *not* binding *until* it has been executed." *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 49 (N.Y. App. Div. 2009) (finding that contract language providing that an "Agreement is complete and binding upon its execution by all signatories" is not an express reservation not to be bound absent signature); *cf Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 324 (2d Cir. 1997) (finding language providing that the agreement "shall ***not*** become effective . . . until it is signed" to be an express reservation) (emphasis added).

3.      Moreover, even *Ciaramella*, the principal case on which the GUC Trust and New GM rely—in which, unlike here, an express reservation not to be bound *did* actually exist— provides that a court seeking to determine whether a binding contract was formed must examine "the totality of the circumstances." *Id.* at 322. Where, as here, "the parties' conduct is inconsistent with inferences that might plausibly be drawn from the language of a memorialization, courts have held that the fact-finder may credit the conduct over the language of the agreement." *Personal Watercraft Prod. SARL v. Robinson*, 16-cv-9771 (AJN), 2017 WL

---

[2] *The Motors Liquidation Company GUC Trust's Pre-Hearing Memorandum of Law in Opposition to the Signatory Plaintiffs' Motion to Enforce Settlement Agreement and the Joinder of the Participating Unitholders in the Motion to Enforce*, at 4 [ECF No. 14170].

2

4329790, at *7 (S.D.N.Y. Sept. 1, 2017).

4.  The "totality of the circumstances" and "the parties' conduct" that will be established at trial here conclusively demonstrates that the GUC Trust evidenced an intent to be bound by the Plaintiff Settlement, notwithstanding Wilmington Trust's *post hoc* interpretation of the boilerplate language in Section 3.1. Indeed, the GUC Trust never once communicated to Plaintiffs that it would not be bound by the Plaintiff Settlement absent execution of the Settlement Agreement (and that is not what Section 3.1 says). Nor did they object when the Signatory Plaintiffs and/or the Participating Unitholders requested such sign off prior to execution. To the contrary, Wilmington Trust's counsel raised no objection whatsoever when asked on August 11, 2017 to "have the requisite people necessary ***to bind your respective client[]*** participate in an "all hands call" to finalize the documentation relating to the Plaintiff Settlement,[3] and proceeded to participate in such an "all hands call," during which it conveyed its consent to the documents memorializing the Plaintiff Settlement.[4]

5.  What's more, following that "all hands call," on August 12 and 14, respectively, Wilmington Trust's counsel notified the Signatory Plaintiffs that "[f]rom the GUC Trust perspective, all of the documents sent over by [Plaintiffs' counsel] (subject to one item we are discussing with Akin in the Settlement Agreement) are fine," and then confirmed that they were "ok" with that one item they were "discussing with Akin."[5] Unlike prior emails sent by counsel for Wilmington Trust over the course of the negotiations, these emails did not state that the consent set forth therein was subject to further client review or sign off.[6]

---

[3] PX-047 (emphasis added).
[4] *See* H. Steel Dep. Tr. 15:8–13 (Nov. 8, 2017).
[5] PX-063, PX-073.
[6] *Id.*

3

6.      Additionally, around this same time, Wilmington Trust's counsel consented to the scheduling of a chambers conference to apprise the Court of the Plaintiff Settlement,[7] and agreed that the Settlement Agreement and related documentation could be sent to New GM without reservation.[8] As will be shown at trial, counsel for the Signatory Plaintiffs and the Participating Unitholders would not have taken these steps had they not understood, based on the actions of Wilmington Trust's counsel, that the GUC Trust had agreed to the Plaintiff Settlement.[9]

7.      Further, Wilmington Trust's own contemporaneous internal communications show that by August 14, 2017, Wilmington Trust itself also believed that the GUC Trust had entered into the Plaintiff Settlement. On the morning of August 14, Beth Andrews, the "lead representative of [Wilmington Trust] in its capacity as trustee for and administrator of the GUC Trust,"[10] wrote to her superiors at Wilmington Trust that "*[e]ntering into the settlement is not an action we have taken without a great deal of thought and guidance from our legal advisors.*"[11] Consistent with this understanding, at 7:17 p.m that same day, Ms. Andrews confirmed to her counsel that Wilmington Trust was not only signed off on the Settlement Agreement and related documentation, but also agreed that the documents could be sent to counsel for New GM.[12]

8.      It is now clear, however, that at some point prior to 2:55 p.m. on August 14, Wilmington Trust's counsel was contacted by New GM,[13] and began taking steps to backtrack from their agreement to the Plaintiff Settlement as a result. Indeed, notwithstanding that he had given sign off on all of the settlement documents earlier that day, Mr. Martorana then sent

---

[7] *See* E. Weisfelner Dep. Tr. 90:20–91:4.
[8] *See* PX-089.
[9] *See* D. Golden Dep. Tr. 34:12–24 (Nov. 16, 2017).
[10] PX-065 ¶ 6.
[11] PX-066.
[12] PX-088.
[13] *See* PX-093.

4

another email to Brown Rudnick stating that he was "obtaining sign off from [his] client."[14] Later that day, at 7:26 p.m., Mr. Martorana wrote "[w]e are waiting for final approval from client, but unlikely to come tonight. You are, however, authorized to send current versions to New GM this evening,"[15] even though he had received Ms. Andrew's sign off to send the documents to New GM's counsel nine minutes earlier.[16] Further, over the course of the following day, while covertly agreeing with New GM that the GUC Trust would abandon the Plaintiff Settlement, Wilmington Trust's counsel sent an email to the Signatory Plaintiffs asking about class certification notwithstanding their prior agreement that it would not be a provision of the Settlement Agreement,[17] and referred to the Plaintiff Settlement for the first time as "non-binding" in a draft letter to the Court.[18]

9.      Remarkably, New GM points to these after-the-fact backtracking efforts as evidence that the GUC Trust never intended to be bound by the Plaintiff Settlement at all.[19] But "[i]t is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Galanis v. Harmonie Club of N.Y.C.,* 1:13-cv-4344, 2014 WL 4928962, at *7 (S.D.N.Y. Oct. 2, 2014) (citations omitted). Wilmington Trust's New GM-induced change of heart, and Gibson Dunn's *post hoc* efforts to paper it, cannot alleviate the GUC Trust of its obligations under the Plaintiff Settlement to which it had already agreed.

## CONCLUSION

For the reasons set forth above and in the Motion to Enforce, the Participating Unitholders respectfully request that the Court enter an order substantially in the form attached

---

[14] PX-078.
[15] PX-089.
[16] PX-088.
[17] PX-107; Williams Dep. Tr. 66:6-11 (Nov. 13, 2017).
[18] PX-106.
[19] *See* Joinder of New GM to GUC Trust Objection to Motion to Enforce ¶¶ 3, 5 [ECF No. 14172].

as Exhibit A to the Motion to Enforce, and grant such other and further relief as the Court deems just and proper.

Dated: December 7, 2017
      New York, New York

AKIN GUMP STRAUSS HAUER & FELD LLP

By:   */s/ Deborah J. Newman*
     Daniel H. Golden
     Deborah J. Newman
     Jennifer L. Woodson
     One Bryant Park
     New York, NY 10036
     (212) 872-1000 (Telephone)
     (212) 872-1002 (Facsimile)

*Attorneys for the Participating Unitholders*