```
                  UNITED STATES BANKRUPTCY COURT
                   SOUTHERN DISTRICT OF NEW YORK


                                  .     Case No. 09-50026-mg
IN RE:                            .     Chapter 11
                                  .
MOTORS LIQUIDATION COMPANY,       .     (Jointly administered)
Et al., f/k/a GENERAL             .
MOTORS CORP., et al,              .     One Bowling Green
                                  .     New York, NY 10004
          Debtors.                .
                                  .     Wednesday, December 6, 2017
. . . . . . . . . . . . . . . .         4:02 p.m.


         TRANSCRIPT OF HEARING RE: TELEPHONE CONFERENCE,
              ON THE RECORD, REGARDING DISCOVERY
             BEFORE THE HONORABLE MARTIN GLENN
             UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For General Motors LLC:   King & Spalding
                          By:  ARTHUR STEINBERG, ESQ.
                          1185 Avenue of the Americas
                          New York, NY  10036-4003
                          (212) 556-2158

For Certain Ignition
Switch Plaintiffs:        Hilliard Martinez Gonzales, LLP
                          By:  RUDY GONZALES, JR., ESQ.
                               ANNE K. FORNECKER, ESQ.
                          710 S Shoreline Boulevard
                          Corpus Christi, TX 78401
                          (361) 882-1612



TELEPHONIC APPEARANCES CONTINUED.


Audio Operator:           TL, ECR

Transcription Company:    Access Transcripts, LLC
                          517 Dell Road
                          Landing, NJ  07850
                          (855) 873-2223
                          www.accesstranscripts.com


     Proceedings recorded by electronic sound recording,
         transcript produced by transcription service.
```

TELEPHONIC APPEARANCES (Continued):

| | |
|---|---|
| For GUC Trust: | Gibson Dunn<br>By:  MITCHELL A. KARLAN, ESQ.<br>200 Park Avenue<br>New York, NY 10166-0193<br>(212) 351-3827 |
| For Participating<br>Unit Holders: | Akin Gump Strauss Hauer & Feld LLP<br>By:  DEBORAH J. NEWMAN, ESQ.<br>One Bryant Park<br>New York, NY 10036-6745<br>(212) 872-7481 |
| For Ignition Switch<br>Plaintiffs and Certain<br>Non-Ignition Switch<br>Plaintiffs: | Brown Rudnik, LLP<br>By:  EDWARD S. WEISFELNER, ESQ.<br>     HOWARD S. STEEL, ESQ.<br>7 Times Square<br>New York, NY 10036<br>(212) 209-4900 |
| For General Motors, LLC: | Quinn Emanuel Urquhart & Sullivan, LLP<br>By:  JAMES C. TECCE, ESQ.<br>     JULIA BESKIN, ESQ.<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000 |
| For Ignition Switch<br>Plaintiffs and Certain<br>Non-Ignition Switch<br>Plaintiffs: | Hagens Berman Sobol Shapiro, LLP<br>By:  STEVE W. BERMAN, ESQ.<br>1918 8th Avenue, Suite 3000<br>Seattle, WA 98101<br>(206) 623-7292<br><br>Lieff Cabraser Heimann & Bernstein<br>By:  ELIZABETH J. CABRASER, ESQ.<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br>(415) 956-1000 |



1         (Proceedings commence at 4:02 p.m.)
2              THE COURT:  All right.  This is Judge Glenn.  We're
3  on the record in Motors Liquidation Company, 09-50026.  I have
4  the list of appearances in front of me.  Who's going to begin?
5              MR. GONZALES:  Good afternoon, Judge Glenn.  This is
6  Rudy Gonzales.  I'm the partner of Bob Hilliard representing
7  the signatory plaintiffs.  With your permission, I just
8  would -- this is a very limited area of inquiry.
9              There was a meeting held on August the 15th between
10 the GUC Trust and New General Motors.  And at that meeting
11 there were different individuals. One of the individuals who
12 attended the meeting was a gentleman -- an attorney by the name
13 of Keith Martorana with the law firm of Gibson Dunn, the Gibson
14 Dunn law firm representing the GUC Trust.  And he testified in
15 his deposition that he took notes during the meeting.  And we
16 have asked for those notes, the plaintiffs have.  And I believe
17 that the trust is asserting a work product privilege to those
18 notes.
19             And the issue for today, Your Honor, is simply
20 whether or not the trust should turn over those notes taken
21 during the meeting to the plaintiffs.  And that's it in a
22 nutshell.  I'll stop for a moment in case the Court -- I mean,
23 I have an argument to make on why the notes should be produced,
24 but I'll stop for right now unless the Court wants me to
25 proceed.

1        THE COURT:  No.  Let me put a few facts on the
2  record.  At my request, Gibson Dunn delivered to chambers for
3  in-camera review six pages of handwritten notes which were
4  represented to be Mr. Martorana's notes from the August 15th
5  meeting.  And I've -- I guess I got that -- I think it was at
6  the end of last week.  Today, deposition transcripts and
7  exhibits and voluminous materials for the trial, both sides'
8  exhibits, copy of the joint -- proposed joint pretrial order
9  were delivered.  And among the materials is the deposition
10 transcript of Keith Martorana.  And it relates to the
11 deposition on November 20, 2017, of Mr. Martorana.  And it has
12 the designations and counter-designations of the parties
13 indicated -- highlighted in color.
14       I have -- this afternoon, I read the portions of the
15 transcript of Mr. Martorana that relate to the meeting with
16 Gibson Dunn as to which this controversy relates.  And I
17 certainly see in the transcript where Mr. Martorana
18 acknowledges that he took notes during the meeting.  So for
19 everybody's benefit, I have read -- I -- my focus in the
20 transcript was the portion of the transcript that related to
21 that meeting at Gibson Dunn.
22       And I also have reviewed the handwritten notes of
23 Mr. Martorana.  Written at the top of the first page is subject
24 to Federal Rule of Evidence 408, but -- so I had asked for and
25 did receive the -- those notes for in-camera review and I have

1  had the opportunity to do that.
2           Mr. Gonzales, why don't you go on and --
3           MR. GONZALES:  Yes.
4           THE COURT:  -- make your argument.
5           MR. GONZALES:  Yes, Your Honor.  Thank you.  And so
6  with that background, Your Honor, the reason that these notes
7  would not fall within the protected category is -- number one,
8  is that the GUC Trust simply would not be able to assert or
9  establish that these notes were taken in anticipation of
10 litigation.  The rule that the -- Federal Rules of Civil
11 Procedure 26(b)(3) specifically addresses when attorneys' notes
12 might be protected.  And they relate specifically to
13 anticipation of litigation.  And I'm sure the Court has heard
14 various arguments in that regard, but it's a very tight and
15 strict interpretation of what anticipation of litigation would
16 mean.  And it simply would not apply here.
17          This August 15th meeting was simply a meeting in the
18 regular course of business between the GUC Trust and New
19 General Motors presumably to discuss the settlement agreement
20 that we believe that the GUC Trust had met -- or had entered
21 into with the plaintiffs.  And of course there's a dispute
22 about the -- whether or not it's -- that agreement is a binding
23 agreement.  But nonetheless, that was the purpose of that
24 meeting.  It was not for the purpose or anything related to
25 anticipating litigation between the plaintiffs and the trust,

1  or anyone else for that matter.  New General Motors wanted to
2  attempt to dissuade the GUC Trust from holding on to the
3  agreement that they had entered into the -- with the plaintiffs
4  and that was the purpose of that meeting.  So we believe that
5  the first step -- the first requirement or proof requirement,
6  which would be by the party attempting to assert the privilege,
7  the work product privilege, cannot be met because that meeting
8  was not in anticipation of litigation.
9       If the Court were to believe or to hold that in fact
10 the meeting was in anticipation of litigation, there is a
11 second prong by which then we would ask the Court to perhaps
12 consider protecting the part of the notes which may contain
13 mental impressions, conclusions, opinions, or legal theories,
14 separate out those parts of the notes from parts which are
15 merely factual in nature.  For example, this person said this
16 or this person said this.  In other words, where the notes
17 simply indicate who is saying what in the meeting.  Because
18 that -- we -- it would be our -- you know, our position that
19 those would not be protected as mental impressions but simply a
20 statement of who was saying what in the meeting.
21      And frankly, Your Honor, that's where we are.  We
22 don't believe they're protected because this meeting was not in
23 anticipation of any litigation, much less any specific
24 litigation with the plaintiffs.  And second of all, if the
25 Court were not to agree on that position, then we would like

1  those portion of the notes which are not mental impressions of
2  Mr. Martorana.
3           THE COURT:  Let me ask you a couple of questions,
4  Mr. Gonzales.  Let's assume that I conclude that the notes were
5  prepared in anticipation of litigation.  And I appreciate what
6  you said about suggesting redaction of mental impressions,
7  opinions, et cetera.  But 26(b)(4) has a second prong that
8  requires, Romanette (ii):
9           "That the party shows that it has substantial need
10           for the materials to prepare its case and cannot,
11           without undue hardship, obtain their substantial
12           equivalent by other means."
13          So that -- assuming that the notes were prepared in
14 anticipation of litigation and the opinions, mental impressions
15 get excluded, redacted out, you would have to acknowledge that
16 you have to satisfy the second prong.  You have to show the
17 substantial need.  Do you agree with that?
18          MR. GONZALES:  Yes, Your Honor.  I believe that is
19 the correct analysis.  Although there are courts that -- some
20 courts and opinions that would even suggest that not all
21 mental impressions are necessarily protected.  It's not a carte
22 blanche absolute.  But under -- I think the Court is correct.
23 Under these circumstances, if the Court were to hold that the
24 notes were prepared in anticipation of litigation, then one
25 would then turn its analysis to the substantial need aspect

1  of -- you know, by the plaintiffs.
2           And of course, in this particular case the main issue
3  and the main dispute of this particular litigation or the main
4  dispute that we have is any comments or suggestions or
5  indications about the "binding agreement" or whether or not the
6  agreement was binding and what people were saying or commenting
7  about that.  And so that, of course, is of particular
8  importance.  It's very much relevant to the issue at hand.  And
9  we would certainly believe that that would be -- it would -- if
10 there are such notes about whether or not the agreement was
11 binding, well those -- that would be the best indication of
12 what GUC was thinking at the time that they were meeting with
13 New GM.
14          THE COURT:  Okay.  Anything else you want to add,
15 Mr. Gonzales?
16          MR. GONZALES:  Not right now, Your Honor.  Thank you.
17          THE COURT:  All right.  Who's going to argue in
18 support of protection for the notes?
19          MR. KARLAN:  With Your Honor's permission, I will,
20 Your Honor.  It's Mitch Karlan from Gibson Dunn & Crutcher.  On
21 the question of anticipation of litigation, Your Honor had
22 said -- advised everyone that the first line of the notes is
23 that the notes indicate that the parties agreed that the
24 conversation was being held under the Federal Rules of
25 settlement agreement -- the settlement negotiation rule.  I

1  suggest that that's the best and only necessary evidence that
2  we need.
3             And the entire meeting and certainly the notes were
4  taken in anticipation of litigation.  I think that also --
5             THE COURT:  Well, let me express my skepticism about
6  that, only because it's sort of common practice for people to
7  write that.  And I have to say, of course, I only have a copy
8  of the notes, but the "subject to FRE 408," which is
9  underlined, appears somewhat less dark than the rest of the
10 notes.  So I can't tell -- I'm not deciding this on the basis
11 of those notes.  I don't know when that was written on the
12 notes.  And I -- that -- I don't think that's going to make a
13 difference in where I come out.  So why don't you go on with
14 your argument, Mr. Karlan.
15            MR. KARLAN:  Okay.  I don't have Mr. Martorana's
16 deposition transcript in front of me, nor do I have
17 Mr. William's transcript in front of me.  But both of them were
18 examined extensively on the reasons for the meeting, the way in
19 which it was set up, what everyone's anticipation of the
20 meeting was before it took place, and then also what occurred
21 and was said at the meeting.  And my recollection -- I'm sure
22 Rudy will correct me if I'm misstating it -- my recollection is
23 the testimony was to the effect that there's been litigation
24 for many, many months involving the plaintiffs and the
25 GUC Trust about the late claims motions and the meeting was to

1  discuss that litigation and the publicly-announced intention of
2  New GM to further litigate objections if in fact the plaintiffs
3  and the GUC Trust were to proceed with the settlement that --
4  the draft, which had been by then disclosed to counsel for
5  New GM.
6         So I would respectfully suggest that there would be
7  no basis here for concluding that the notes were taken other
8  than in anticipation of litigation.  I don't know --
9  Mr. Gonzales made the remark that this meeting was in the
10 ordinary course.  I'm not aware that there's ever been a
11 meeting other than this between counsel for the GUC Trust and
12 counsel for New GM on this subject.  There's certainly nothing
13 in the record to suggest there's ever been such a meeting.  So
14 I don't -- I'm not sure what ordinary course he's referring to.
15         Unless Your Honor has more questions about that
16 prong, I'll proceed to the burden issue.  Mr. --
17         THE COURT:  Go ahead.
18         MR. KARLAN:  I'm sorry.  Go ahead, Judge.
19         THE COURT:  No.  Go ahead.
20         MR. KARLAN:  Mr. Matthews and Mr. Martorana were both
21 deposed at significant length about the content of this
22 meeting.  Your Honor may recall that the last time we were all
23 together Your Honor directed in response to certain questions
24 that had come up and instructions not to answer that I had
25 given at Mr. Matthew's deposition -- sorry, Mr. William's

1  deposition, excuse me -- that Your Honor wanted a full record
2  of what had happened at that meeting.  And so Mr. Williams was
3  deposed a second time.  And I -- and every question to my
4  memory was answered without any objections or instructions
5  about everything that was said at the meeting.
6           Again, Rudy, please correct me if I'm misstating
7  that.
8           I think under those circumstances there's no
9  possibility of demonstrating substantial need even as to any
10 portion of the notes that Your Honor were to conclude were not
11 mental impressions.  And I would respectfully suggest that
12 they're all mental impressions and so therefore the burden
13 issue is irrelevant, because if they're mental impressions
14 they're absolutely protected.
15          That's all I had, unless you had questions, Judge.
16          THE COURT:  No, I don't.
17          Does anybody else want to be heard?
18          Okay.  While I haven't had any briefing with respect
19 to the issue about the notes, I believe I'm reasonably familiar
20 with the applicable legal principles.  As I said earlier, I
21 reviewed the six pages of handwritten notes.  I also today
22 reviewed the deposition transcript of Keith Martorana.  And a
23 significant portion of the deposition involves questions of
24 Mr. Martorana about who said what to whom during the meeting
25 on August 15.  So I believe that I don't need any supplemental

1  briefing in order to resolve the issue.
2          So this is a discovery dispute relating to six pages
3  of handwritten notes prepared by Keith Martorana of Gibson
4  Dunn, one of the lawyers for the GUC Trust, during a meeting
5  with lawyers for New GM discussing the proposed settlement
6  agreement between the plaintiffs and the GUC Trust.  Who said
7  what to whom during the meeting is highly relevant and material
8  to the issues that will be the subject of the trial scheduled
9  for December 18, 19, and 20, 2017.
10         My review of the notes leads me to conclude that the
11 notes include a combination of verbatim or nearly verbatim
12 recording of what New GM's lawyers said during the meeting, as
13 well as less so what appears to be Mr. Martorana's mental
14 impressions and opinion work product about the legal issues
15 arising from the subjects discussed at the meeting.  Under
16 Rule 26(b)(3), a party may not discover documents prepared in
17 the anticipation of litigation unless:
18         "The party shows that it has substantial need for the
19         materials to prepare its case and cannot, without
20         undue hardship, obtain the substantial equivalent by
21         other means."
22         Federal Rule of Civil Procedure 26(b)(3)(A) provides:
23         "Ordinarily, a party may not discover documents and
24         tangible things that are prepared in anticipation of
25         litigation or for trial by or for another party or

|    |    |
|---|---|
| 1  | its representative (including the other party's |
| 2  | attorney, consultant, surety, indemnitor, insurer, or |
| 3  | agent).  But, subject to Rule 26(b)(4), those |
| 4  | materials may be discovered if" -- |
| 5  | And I'll skip Romanette (I).  Romanette (ii): |
| 6  | -- "the party shows that it has substantial need for |
| 7  | the materials to prepare its case and cannot, without |
| 8  | undue hardship, obtain their substantial equivalent |
| 9  | by other means. |
| 10 | "If the Court orders discovery of those materials, it |
| 11 | must protect against disclosure of mental |
| 12 | impressions, conclusions, opinions, or legal theories |
| 13 | of a party's attorney or other representative |
| 14 | concerning the litigation." |
| 15 | See Federal Rule of Civil Procedure 26(b)(3)(B). |
| 16 | At a minium, that would require a redaction of notes |
| 17 | if any of them must be produced.  Here, of course, the |
| 18 | participants in the meeting can be and probably already have |
| 19 | been -- certainly Mr. Martorana was -- deposed about who said |
| 20 | what to whom during the meeting.  Plaintiffs' counsel, who were |
| 21 | not present at the meeting, no doubt wants to use the notes in |
| 22 | an effort to impeach or cause witnesses at trial to elaborate |
| 23 | on their deposition testimony. |
| 24 | In the context in which the meeting took place, the |
| 25 | Court concludes that the notes were prepared in contemplation |

1  of litigation and would not have been prepared for any other
2  reason.  New GM had publicly announced and certainly had
3  indicated at the point when I was told that settlement
4  discussions were going on and Arthur Steinberg told me New GM
5  lawyers were excluded from it, he made clear that New GM would
6  oppose any settlement reached by the plaintiffs and the
7  GUC Trust.  So that and reading the deposition transcript and
8  reviewing the notes, the Court concludes that the meeting and
9  the purpose of preparing the notes was in anticipation of the
10 contemplation of litigation and would have not -- would not
11 have been prepared for any other reason.
12         Therefore, the Court concludes that the notes are
13 protected under the work product doctrine unless the protection
14 has been waived.  The issue then becomes whether some or all of
15 the notes other than mental impressions, conclusions, et
16 cetera, should nevertheless be required to be produced.  The
17 conversations between counsel for plaintiffs and the GUC Trust
18 recorded in the notes are not privileged.  The information is
19 discoverable if it is relevant to any party's claim or defense
20 as proportional to the needs of the case.  No issue of
21 proportionality is raised with respect to these six pages of
22 notes, nor could it in my view.  The notes of the meeting
23 therefore are not protected by attorney/client privilege.
24         To the extent the notes contain verbatim or nearly
25 verbatim recitation of who said what to whom during the

1 meeting, the notes are relevant and material and subject to
2 discovery unless protected by work product protection.  It is
3 expected that the GUC Trust will offer evidence at trial of its
4 version of who said what to whom during the meeting.  The
5 question arises whether such testimony waives work product
6 protection with respect to the notes.
7         With respect to the waiver analysis, the decision in
8 Granite Partners, LP v. Bear, Stearns & Co., 184 F.R.D. 49
9 (S.D.N.Y. 1999), appears to remain an accurate statement of the
10 law in this circuit.  The court in Granite Partners stated
11 that:
12         "The work product privilege is waived when a party to
13         a lawsuit uses it in an unfair way that is
14         inconsistent with the principles underlying the
15         doctrine of privilege."
16         It then goes on:
17         "It is well settled that waiver may be imposed when
18         the privilege holder has attempted to use privilege
19         as both sword and shield.  A privilege may be
20         impliedly waived where a party makes assertions in
21         the litigation or asserts a claim that in fairness
22         requires examination of protected communications."
23         Skipping forward, Judge Sweet said: "Waiver typically
24 occurs when the party asserting the privilege places the
25 protected documents at issue through some affirmative act

1  intended to assure [sic]" -- "to ensure to the [sic]" -- to
2  enure" -- there's a typo in the opinion -- "to enure to that
3  party's benefit or where the party makes selective use of the
4  privileged materials."
5     In our case, from what I've read, the GUC Trust has
6  not used and is not likely to use notes the notes offensively
7  or otherwise.  In Granite Partners, the court focused on
8  whether, quote, "The party's use of the document is unfair and
9  inconsistent with the claim of privilege."
10    Referring to the Granite Partners, Judge Sweet said:
11        "In case at bar, the unfairness rises out of the
12        LAB's possible use of allegedly privileged interview
13        notes to impeach witnesses by reference to testimony
14        they gave more than four years ago."
15    The court in Granite Partners emphasized that:
16        "Finally, pursuant to Rule 26(b)(3), to the extent
17        the documents come under the umbrella of work
18        product, they may be subject to discovery upon a
19        showing that the party seeking discovery has
20        substantial need of the materials in the preparation
21        of the party's case and that the party is unable
22        without undue hardship to obtain the substantial
23        equivalent of the materials by other means."
24    Back to this case.  At this stage of the litigation,
25 the plaintiffs have not demonstrated substantial need for

09-50026-mg    Doc 14205    Filed 12/08/17    Entered 12/21/17 11:44:10    Main Document
      Pg 17 of 19

1 production of the notes.  All of the participants at the
2 meeting have or can be deposed.  If the notes are used to
3 refresh recollection in preparing for deposition or for trial,
4 the work product protection will thereby be waived.
5           I must say, after reading the deposition transcript
6 of Mr. Martorana, frankly, I thought that his deposition
7 testimony was frankly more fulsome than the somewhat cryptic
8 notes he had.  Consequently, I have no difficulty in concluding
9 that the plaintiffs have not shown substantial need for
10 production of these notes.  Consequently, the work product
11 privilege is sustained and the objection is overruled.
12           Anything else for today?
13           MR. KARLAN:  Not from the GUC Trust.
14           THE COURT:  All right.  Anybody else?
15           MR. GONZALES:  No, Your Honor.  I believe that's it,
16 Your Honor.
17           THE COURT:  Okay.  So I've gotten -- obviously not
18 relating to this discovery dispute, I've gotten the proposed
19 joint pretrial order, which I've reviewed.  I still have a lot
20 of exhibits to review.  I was somewhat surprised and a little
21 taken aback by all of the objections that have been asserted by
22 each side.  I would certainly -- before we have the final
23 pretrial conference, I -- you know, I would suggest get real.
24 This is a bench trial.  It seems to me that, for example, a lot
25 of the hearsay exhibits -- it will very much depend on the

1  purpose for which exhibits are being offered.  So I would ask
2  that both sides confer before the pretrial, think through
3  whether each side wants to carry forward each of the objections
4  that have been asserted.  If necessary, I will rule on them,
5  obviously.
6          But, you know, I think -- on the whole, I think you
7  did a very good job with the pretrial order.  I still have to
8  go through some more of the exhibits to the pretrial order.
9  And I certainly have not been through all of the exhibits.  The
10 only deposition I've looked at is the transcript of Keith
11 Martorana.  I appreciate the way it was done, color coding the
12 designations and counter-designations.
13         So I will see you all at the final pretrial.  We're
14 adjourned.
15         MR. GONZALES:  Thank you, Your Honor.
16         MR. KARLAN:  Thank you, Judge.
17         THE COURT:  Okay.
18         MR. KARLAN:  Thank you.
19     (Proceedings concluded at 4:29 p.m.)
20                    * * * * *
21
22
23
24
25

19

**C E R T I F I C A T I O N**

I, Liesl Springer, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

_____
LIESL SPRINGER, AAERT NO. 685     DATE: December 8, 2017
ACCESS TRANSCRIPTS, LLC

**C E R T I F I C A T I O N**

I, Lisa Luciano, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____
LISA LUCIANO, AAERT NO. 327     DATE: December 8, 2017
ACCESS TRANSCRIPTS, LLC
