UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | . | Case No. 09-50026-mg |
| IN RE: | . | Chapter 11 |
| | . | |
| MOTORS LIQUIDATION COMPANY, | . | (Jointly administered) |
| et al., f/k/a GENERAL | . | |
| MOTORS CORP., et al, | . | One Bowling Green |
| | . | New York, NY 10004 |
| Debtors. | . | |
| | . | Monday, December 11, 2017 |
| . . . . . . . . . . . . . . . | . | 9:33 a.m. |

TRANSCRIPT OF PRETRIAL CONFERENCE REGARDING
PLAINTIFFS' ENFORCEMENT MOTION AND THE
FOREBEARANCE AGREEMENT APPROVAL MOTION
BEFORE THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For General Motors LLC:   King & Spalding, LLP
                          By:  ARTHUR J. STEINBERG, ESQ.
                               SCOTT DAVIDSON, ESQ.
                          1185 Avenue of the Americas
                          New York, NY 10036
                          (212) 556-2158


For Certain Personal
Injury/Death Plaintiffs: Hilliard Munoz & Gonzales LLP
                          By:  ROBERT HILLIARD, ESQ.
                          719 South Shoreline Boulevard #500
                          Corpus Christi, Texas  78401
                          (361) 882-1612


APPEARANCES CONTINUED.

Audio Operator:           TL


Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

For the GUC Trust:          Gibson, Dunn & Crutcher LLP
                            By:  MITCHELL A. KARLAN, ESQ.
                            200 Park Avenue #47
                            New York, New York 10166
                            (212) 351-3827


For Interested Party,
General Motors, LLC:        Quinn Emanuel Urquhart & Sullivan, LLP
                            By:  JAMES C. TECCE, ESQ.
                                 SUSHEEL KIRPALANI, ESQ
                            51 Madison Avenue, 22nd Floor
                            New York, NY  10010
                            (212) 849-7199

For the Ignition Switch
plaintiffs and certain
non-Ignition Switch
plaintiffs:                 Brown Rudnick LLP
                            By:  EDWARD S. WEISFELNER, ESQ.
                                 HOWARD S. STEEL, ESQ.
                            7 Times Square
                            New York, New York 10036
                            (212) 209-4917


For the Ignition
Switch Plaintiffs:          Hagens Berman Sobol Shapiro LLP
                            By: STEVE W. BERMAN, ESQ.
                            1918 8th Avenue, Suite 3300
                            Seattle, Washington 98101
                            (206) 623-7292

For Interested Party,
The Participating
Unitholders:                Akin Gump Strauss Hauer & Feld
                            By:  DEBORAH J. NEWMAN, ESQ.
                            One Bryant Park
                            Bank of America Tower
                            New York, NY 10036-6745
                            (212) 872-7481

```
APPEARANCES (Continued):

For Creditor, Additional
Ignition Switch
Pre-Closing Accident
Plaintiffs:                Andrew Myers, P.C.
                           By:  LISA M. NORMAN, ESQ.
                           1885 Saint James Place, 15th Floor
                           Houston, TX 77056
                           (713) 850-4245

TELEPHONIC APPEARANCES:

For Certain Personal
Injury/Death Plaintiffs: Hilliard Munoz & Gonzales LLP
                           By:  RUDY GONZALES, ESQ.
                           719 South Shoreline Boulevard #500
                           Corpus Christi, Texas  78401
                           (361) 882-1612
```

4

1          (Proceedings commenced at 10:05 a.m.)

2               THE COURT:  All right.  Please be seated.  We're her

3     in Motors Liquidation, 09-50026, here for the final pretrial

4     conference.

5               Let me hear from plaintiffs' counsel first.  Who's

6     going to speak?

7               MR. BERMAN:  I am, Your Honor.

8               THE COURT:  I have the list of appearances in front

9     of me.

10              MR. BERMAN:  Steve Berman on behalf of the

11    plaintiffs.

12              THE COURT:  Go ahead, Mr. Berman.

13              MR. HILLIARD:  Your Honor, Bob Hilliard on behalf of

14    plaintiffs.

15              THE COURT:  Thank you.  Yeah, I have everybody's

16    appearance, so --

17              MR. HILLIARD:  You just want to start?

18              THE COURT:  -- let me -- I want to hear from

19    plaintiffs' counsel first.  Don't all get up at once.

20              Go ahead, Mr. Berman.

21              MR. BERMAN:  Good morning, Your Honor.  Would you

22    like me to run down some of the issues we see?

23              THE COURT:  I would.  Yes, please.

24              MR. BERMAN:  I think we've made a lot of progress on

25    the objection to exhibits, and at this point in time, we're

1  down --

2          THE COURT:  Which I appreciate.  I saw the one

3  revised --

4          MR. BERMAN:  Yes.  So we're down to --

5          THE COURT:  -- exhibit today.

6          MR. BERMAN:  -- to just seven objections --

7          THE COURT:  Okay.  That's fine.

8          MR. BERMAN:  -- which we may or may not actually

9  persist when we get to trial and see how it goes.

10          THE COURT:  Okay.

11          MR. BERMAN:  One issue that we did want to raise with

12  you is we are going to object to the other side's designating

13  the deposition testimony of their own witnesses.  We believe

14  that's improper under Rule 32(a)(3), and we'd like to submit --

15          THE COURT:  You don't need to.  I mean, it clearly is

16  improper.  You can't -- I should say it's improper, but I've

17  had numerous cases where the parties just simply agree and

18  allow it, but where I've had objections to a party designating

19  testimony of its -- of people it controls or within the

20  subpoena power, I sustain those objections.  So if you can't

21  work it out, I'm not going to permit it, you know, unless

22  they're able to argue that it falls within one of the

23  recognized exceptions to the hearsay rule, I won't permit the

24  use of the deposition transcripts of your own witnesses.  But

25  sometimes people agree the testimony is, you know, not

6

1  controverted, it just speeds it up, but I'm -- so your point, I

2  take, Mr. Berman.  Okay?

3       MR. BERMAN:  Okay.  Thank you, Your Honor.  The

4  second issue, it's not a huge issue, but we do have some

5  objections to the direct testimony.

6       THE COURT:  Okay.

7       MR. BERMAN:  And I don't know how you want to handle

8  that.

9       THE COURT:  When I -- what would be helpful to me is

10  if you could put those objections into writing so I -- because

11  what I will try and do -- is it -- are they extensive, the

12  objections?

13       MR. BERMAN:  No, there's a tiny amount.

14       THE COURT:  Okay.  So I think it would be helpful --

15  when would you be able to file written objections to the direct

16  -- proposed direct testimony?  What I try to do is rule in

17  advance so that everybody knows, okay, this is what's coming

18  in, this is what's not coming in.  Okay.

19       MR. BERMAN:  I think we could do it by tomorrow.

20       THE COURT:  Okay.  And it would be helpful if the

21  defendants' counsel would respond -- could respond.  It doesn't

22  have to be an elaborate filing, but just so I know what the

23  arguments are, Mr. Karlan, and that way, either before the

24  trial, if I can get it done this week, I would enter a short

25  written order ruling on the objections, or I'll try and do it

7

1 at the start of the trial, but I want everybody to know what's

2 likely to come in and what's not going to come in.  Okay?

3          MR. BERMAN:  I think the third issue -- I don't know

4 if we actually submitted it to you or not -- is our time

5 allocations.

6          THE COURT:  That's -- I do want to hear today from

7 people about the time allocation.

8          MR. BERMAN:  I think we've agreed on nine hours a

9 side.

10          THE COURT:  Okay.

11          MR. BERMAN:  That would be inclusive of opening and

12 closing.

13          THE COURT:  How long do you anticipate being with an

14 opening?

15          MR. BERMAN:  What is your preference?  Do you have a

16 preference?

17          THE COURT:  I've read the briefs, okay, so you don't

18 need to repeat what you've put in writing.  What I do find

19 helpful is when, typically, in an opening, people kind of try

20 to focus me on what they really think are the core issues for

21 the trial.  I've read all the briefs already, okay.  Well, I

22 didn't read the reply briefs yet.  I guess they came in, they

23 were, what, attached to the -- one of the documents I -- I have

24 to read those today.

25          MR. BERMAN:  Okay.  So I would -- haven't consulted

8

1  with Mr. Hilliard, but I would think less than a half an hour

2  for our openings.

3          THE COURT:  That's fine.  Look, you've got the

4  nine-hour allocation per side that's agreed.  You'll use it as

5  you wish, okay.  I think I probably commented before that some

6  of you have been in other trials before me.  When I use time

7  allocations, we have never gotten to the end of the trial with

8  people saying, I've run out of time, I need more time.

9  Usually, everybody finishes earlier.

10         MR. BERMAN:  I think we are all anticipating we're

11 going to finish early, by the way.

12         THE COURT:  Okay.  When I read -- in light of

13 everything I've read, it seemed to me you were all going to

14 finish early, but you got the allocation.

15         MR. BERMAN:  The last question that we have on our

16 side, because we haven't been in a trial with you, is how do

17 you like to handle exhibits?  I mean, do you want notebooks?

18 Do you want the witness to have a notebook?

19         THE COURT:  So I usually get them -- are -- well,

20 I've got a couple questions.  Are you going to project the --

21 are you using PowerPoint or some other thing -- something else

22 to project the exhibits?

23         MR. BERMAN:  Well, we were going to ask you if you

24 would like that.

25         THE COURT:  That's fine.  A couple of the questions I

1   had was about -- and the courtroom, I believe -- you know, the

2   courtroom, they did some remodeling over the last two weeks.  I

3   started using the courtroom on Friday.  What they've done

4   doesn't look very different, but they've put the wires -- there

5   used to be wires in the floors.  They put them behind the

6   walls.  They haven't -- there are going to be cameras.  They

7   haven't put them back up because you've got to put them on

8   brackets.  There were cameras on stands before, and there were

9   two big -- or there was one big monitor in the back.  They

10  haven't mounted them yet.  I don't know whether they'll be up

11  before the trial.

12          But you do have the ability to plug a laptop into the

13  system.  I have two monitors.  You can display them on the

14  monitors.  Some of you have been in trials here before.

15          I don't -- Mr. Tecce, I don't think you were in this

16  courtroom, though.  I think -- were we in here or we -- I don't

17  remember.

18          MR. TECCE:  I thought we were, Judge, yes.

19          THE COURT:  It could be.  I'm losing track of time.

20  This used to be Judge Gerber's courtroom, Judge Gonzalez before

21  that.  So whether or not you display them on the monitor, I do

22  want paper copies.  Getting them in binders, as long as they're

23  clearly marked and tabbed and the binders are tabbed, I can

24  flip to them.  That way -- sometimes I write notes on the

25  exhibits.

10

1          So, you know, if it's not inconvenient, I would

2   suggest doing both.  Project the exhibits, you know.  All of

3   you can highlight -- simply highlight, if you have them up on

4   the screen, show me what's really important on it, what you

5   think is important on a page, et cetera.  Okay?

6          MR. BERMAN:  Okay.  Those are all the topics I wanted

7   to raise.

8          THE COURT:  Okay.

9          MR. HILLIARD:  I have one.

10         THE COURT:  Mr. Hilliard.

11         MR. HILLIARD:  Good morning, Your Honor.  It's my

12  understanding we were going to have our IT fellow come in and

13  meet with your clerk so that when we start Monday, we can be

14  sure to --

15         THE COURT:  You should.

16         MR. HILLIARD:  Okay.

17         THE COURT:  Yes.

18         MR. HILLIARD:  I'll arrange that with your clerk.

19         THE COURT:  Yes.

20         MR. HILLIARD:  Okay.

21         THE COURT:  And we'll get somebody from the IT

22  department to come down in addition to my courtroom deputy and

23  make sure that everything works --

24         MR. HILLIARD:  Great.

25         THE COURT:  -- the way you want it to.

1          MR. HILLIARD:  Thank you.  The second issue that we

2    have with the other side is closing.

3          THE COURT:  yes.

4          MR. HILLIARD:  GUC and GM believe that they want to

5    come back after the trial and do closing at a later date.  We

6    believe that there is a very clear and concise issue that

7    probably lends itself to whenever we're done, which will

8    probably be closer to Tuesday afternoon than Wednesday, I would

9    guess.

10         THE COURT:  Right.

11         MR. HILLIARD:  We'd be ready to closing, but that's

12   an issue that we're going to need the Court's assistance on,

13   likely.

14         THE COURT:  Sure.  With a trial of this length, which

15   I consider short, it seems to me that closings at the end of

16   the evidence is appropriate.  In longer trials where I really,

17   you know, prefer to see the transcript, I've scheduled closings

18   a couple of weeks later sometimes until the transcripts are

19   done.  So it does -- I'll listen to the other side before

20   making a final say on it, but it does seem to me let's just get

21   the evidence done and the -- evidence and argument done.

22         And I was going to ask, are you going to have -- have

23   you agreed on having a reporter for daily transcripts or you

24   talked about it?

25         MR. HILLIARD:  We intend to, Judge, and we're happy

12

1   to share with the other side.

2              THE COURT:  Okay.

3              MR. HILLIARD:  We have talked with them about that,

4   but as a matter of course now, we try to get that done so that

5   we can use it in closing if necessary.

6              THE COURT:  Yes.  And, you know, the last few trials

7   I've had where there's been daily, there's a -- you know, an

8   iPad on my bench so -- with realtime transcript.  I assume

9   you'll use a reporter that has that technology.  You know, the

10  advantage to me sometimes, if I haven't followed a question and

11  answer clearly, I might ask a followup question right then.  So

12  it helps me to be able to see the realtime transcript.

13             MR. HILLIARD:  We'll have a screen for the bench, as

14  well.

15             THE COURT:  That's fine.  And usually, it's just an

16  iPad sitting up here that's wired.  And we've usually had the

17  reporter sort of by the corner by the jury box, but you can --

18             MR. HILLIARD:  Okay.

19             THE COURT:  I'm pretty easy about that.  Okay?

20             MR. HILLIARD:  Speaking of easy, another issue that

21  probably just to make sure that we stay on the right side of

22  how you see things going is we're going to call some of GM's --

23  or GUC's witnesses adversely.

24             THE COURT:  Yes.

25             MR. HILLIARD:  And I was visiting with them this

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

13

1  morning about how they intend to do their direct or redirect,

2  whether they want to call back after we close, and I believe

3  that we've agreed that they'll just do it then.

4          THE COURT:  It's my preference that you just do your

5  full examination --

6          MR. HILLIARD:  Yeah.

7          THE COURT:  -- while the witness is there rather than

8  recalling the witness.  In a bench trial, particularly of this

9  length, it really doesn't seem to me to be warranted to wait

10  and have the witness recalled.  I don't -- so generally, I

11  don't sustain objections that it's beyond the scope.  Everybody

12  does their full examination.  You'll get your chance to

13  redirect and things like that.  But let's just get the

14  witnesses to tell their story in one sitting.

15          MR. HILLIARD:  Agreed, and I think the other side

16  agrees, too.

17          THE COURT:  Okay.

18          MR. HILLIARD:  Thank you, Judge.

19          THE COURT:  Mr. Berman.

20          MR. BERMAN:  I was reminded that I said we would file

21  our objections to the direct tomorrow.  We need to set a

22  response date for the other side, as well.

23          THE COURT:  One day later.  I mean, I really don't --

24  if, as you've said, it's only a limited number of objections

25  you have -- I mean, the written direct is not very lengthy, so

1 it should not be complicated to do.  Okay?

2          All right.  Mr. Karlan, I want to hear --

3          MR. BERMAN:  Thank you, Your Honor.

4          MR. KARLAN:  I'm trying to respond to some of what's

5 been said, Your Honor.  With respect to the designations of

6 deposition testimony, we have not designated as part of our

7 affirmative case any portion of the transcripts of the

8 depositions of any of our witnesses.  But we have, of course,

9 counter-designated --

10          THE COURT:  Yes.

11          MR. KARLAN:  -- substantial portions --

12          THE COURT:  That's fair.

13          MR. KARLAN:  That's all that's --

14          THE COURT:  Generally, I -- you know, I rather

15 loosely apply the rule of completeness.  So frequently when one

16 side designates, the other side thinks there's another portion

17 of the testimony that's relevant on the same subject.  I

18 generally allow that in.

19          What has been my practice with respect to objections

20 to designations, designations, cross-designations, et cetera,

21 is I usually have not ruled on that until the evidence is all

22 in.  I just haven't had a chance to review -- you know, review

23 it.  I've looked at some of the deposition transcripts.  When

24 we had the telephone hearing last week, I indicated that with

25 respect to the work product issue I had read the one deposition

15

1  transcript.  But I haven't read the others at this stage.

2          MR. KARLAN:  With respect to the objections to

3  documents, I heard counsel say that they were down to seven.  I

4  just wanted to draw Your Honor's attention to footnote one that

5  the plaintiffs have added to Exhibit F to the pretrial order,

6  which as I read it is an objection to --

7          THE COURT:  Tell me.  I don't -- you know, I can --

8          MR. KARLAN:  -- is an objection to everything.  I

9  don't know whether they're -- I don't know whether the

10 reference to seven documents means they're not really --

11         UNIDENTIFIED:  That's ours.

12         MR. KARLAN:  -- pressing the footnote, or --

13         UNIDENTIFIED:  That's ours.

14         MR. KARLAN:  That's ours?  Okay.  All right.  Well,

15 we're --

16         THE COURT:  Mr. Tecce objects to everything.

17         MR. KARLAN:  We're not -- we're -- yeah.  We're

18 withdrawing that.  All right.

19         UNIDENTIFIED:  Suddenly it seems more **10:19:02

20         THE COURT:  I think you got to have a talk --

21         MR. KARLAN:  No, no, no.  No.

22         THE COURT:  You better have a discussion with him.

23         MR. KARLAN:  That's totally unreasonable.  It's off.

24 It's out.  It's out.  That --

25         THE COURT:  You better have a discussion with your --

16

1          MR. KARLAN:  That footnote should not be in there.

2          MR. KARLAN:  So we are down to seven -- we're down to

3    seven objections from --

4       (Counsel confer)

5          MR. KARLAN:  So I'm not sure where the seven is

6    coming from then, Judge.

7          THE COURT:  Well --

8          MR. KARLAN:  Maybe Mr. Berman can speak to that when

9    he gets up.

10          THE COURT:  Hopefully you'll work this out.  Okay?

11          MR. KARLAN:  Okay.

12          THE COURT:  And you'll let me know if you can get it

13    worked out.

14          MR. KARLAN:  On the nine hours a side, I don't recall

15    agreeing to that, but it's perfectly fine.  And I'll be shocked

16    if this case takes 18 --

17          THE COURT:  They were engaging in mind reading and

18    they knew you would agree.

19          MR. KARLAN:  That's fine.  I'll be shocked if this

20    case goes 18 hours, Judge.

21          THE COURT:  I would be surprised.

22          MR. KARLAN:  Closings at the end of the evidence,

23    that's fine, Judge.  Is Your Honor going to either permit or

24    require or refuse to permit post-trial briefs?

25          THE COURT:  I won't decide that until I've heard the

1  evidence.  Okay?

2           MR. KARLAN:  All right.

3           THE COURT:  And it will depend on whether there's

4  some questions that I haven't thought about so far and I listen

5  to the evidence and I think it's not clear.  I may ask for

6  post-trial briefs.

7           MR. KARLAN:  Okay.

8           THE COURT:  Given when the trial is and the holidays,

9  if I ask for post-trial briefs, it'll probably be for a

10 mid-January date --

11          MR. KARLAN:  Okay.

12          THE COURT:  -- so your associates are not having to

13 work over the holidays.

14          MR. KARLAN:  Judge, I have been known to lift a pen.

15          THE COURT:  Mr. Kirpalani is smiling because he's

16 heard that same little talk before.  You know, I'm concerned

17 about the associates.  The partners, not so much.

18          MR. KARLAN:  And then, Judge, I think the last thing

19 I've got is with respect to the calling of our witnesses

20 adverse.  Here's what I understand is going to happen.  Please

21 tell me if I've got it wrong.

22          THE COURT:  Okay.

23          MR. KARLAN:  Your Honor has required that to the

24 extent anybody wants to put in direct testimony, it had to be

25 in sometime ago.  So in terms of telling the story, the story

1  has either been told or it ain't going to get told.  The

2  plaintiffs apparently want to do their cross-examination of

3  Mr. Williams and Ms. Andrews as part of their case in chief.

4  And they will do so and any further examination by me will be

5  limited to redirect.

6        THE COURT:  The one caveat I put to that is, you

7  know, you've -- I have the written direct from both sides.  And

8  so if you have the direct testimony of a witness and it hasn't

9  addressed issues that the other side's witnesses have put in --

10        MR. KARLAN:  Fair enough.

11        THE COURT:  -- yes, I'm going to permit that.

12        MR. KARLAN:  Fair enough.  And then to turn the coin

13  over, when the rest of the plaintiffs' case comes in, they will

14  call -- the -- I guess it's all gentlemen, it's not ladies and

15  gentlemen -- from whom they've put in direct testimony and

16  there will be no more direct testimony from those witnesses.  I

17  will either cross them or not.  And the trial might be over

18  really fast.

19        THE COURT:  Might be.

20        MR. KARLAN:  Okay.  Thank you, Judge.  Unless you

21  have questions for me --

22        THE COURT:  So I have a couple of questions --

23        MR. KARLAN:  Yeah.  Sure.

24        THE COURT:  -- for both of -- well, go ahead, Mr. --

25        MR. HILLIARD:  Okay.  As to that issue, Judge --

1          THE COURT:  Yes.

2          MR. HILLIARD:   -- just for clarification to be sure,

3  because I understood differently.  So we call Mr. Weinstein and

4  I put in his direct.  We pass the witness.  They do a

5  cross-examination.  It was my belief that depending on the

6  cross-examination, the Court would allow some oral redirect.

7          THE COURT:  Absolutely.

8          MR. HILLIARD:  Yeah.

9          THE COURT:  Absolutely.

10         MR. KARLAN:  I didn't mean to --

11         MR. HILLIARD:  Yeah.

12         THE COURT:  I don't think it was -- I don't think --

13         MR. KARLAN:  Yeah.  Absolutely.

14         THE COURT:  -- Mr. Karlan was saying anything

15 inconsistent with that.  That's typically -- so typically you

16 call the witness.  You offer the direct written testimony.  If

17 there are objections, I'll rule on it or will have ruled on it

18 before.  You tender the witness to the other side.  They

19 cross-examine.  Then you do a redirect.

20         MR. HILLIARD:  Right.

21         THE COURT:  Okay?

22         MR. HILLIARD:  Thank you.

23         THE COURT:  That's generally how I have proceeded.

24         MR. KARLAN:  And that was my understanding.

25         THE COURT:  Okay.  That's fair enough.  Okay.  So,

20

1  you know, I have a lot more work to do before the trial.  But a

2  couple of questions that I had that I would like to be sure

3  that there's evidence and argument addressing is did -- one,

4  did the unsigned agreement permit any party to withdraw from

5  the agreement if the Court requires the plaintiffs to seek

6  Rule 23 certification of one or more economic loss classes?

7          When I read the agreement, it seemed to me that

8  parties had a right to withdraw from the agreement if I didn't

9  approve the notice program.  But it just seemed to me that I

10 could approve the notice program, but nevertheless still

11 decide -- which I haven't -- I've not -- I don't expect to

12 decide now -- but could still decide that, no, Rule 23

13 certification is going to be required.  Okay?  But if that were

14 the decision of the Court, could a party withdraw?

15         And then another question, too, is did the unsigned

16 agreement permit any party to withdraw from the agreement if

17 the Court estimated the claim is at less than $10 billion?  My

18 reading of the agreement so far is, no, it didn't.  It required

19 the GUC Trust to support a motion to estimate the claims of

20 $10 billion, but it didn't seek to constrain the Court in what

21 it might conclude.

22         Mr. Karlan, I'll tell you why I'm asking these

23 questions.  And when I read your brief, it emphasized that the

24 GUC Trust hadn't made a decision to go ahead with the agreement

25 because it wanted to sort of run this trial balloon by the

1  Court before it decided that.  And I was puzzled because if the

2  agreement didn't allow somebody to withdraw, if I decided that

3  Rule 23 certification had to occur or that parties could

4  withdraw if I somehow estimated claims of other than

5  $10 billion, that's what puzzled me.  And it -- anyway.

6          So I didn't see that specifically addressed in the

7  briefs and I wanted to make sure that I raised that issue

8  today.  If before the start of the trial there are other issues

9  I want to be sure that you address, I'll raise them at the

10  start of the trial to give you a chance to -- you know, and if

11  it's not in the specific testimony, I'll let, you know, each

12  side put in additional evidence on it.  Okay?

13          Anything else anybody wants to raise at this point?

14          Mr. Karlan?

15          MR. KARLAN:  Judge, we've -- we're going to be, of

16  course, having Mr. Williams, Ms. Andrews, and Mr. Martorana in

17  court when they're needed.

18          THE COURT:  Yes.

19          MR. KARLAN:  And if I could just ask for a courtesy,

20  are they needed on the first day?

21          MR. HILLIARD:  That depends on the speed.  I can give

22  you the list and the order if --

23          MR. KARLAN:  Okay.  Sure.

24          THE COURT:  Yeah.  So --

25          MR. HILLIARD:  -- if that would help.

22

1            THE COURT:  And I didn't -- I don't think I raised

2    this with you all.  This is a -- going to be a short trial.

3    There are not that many witnesses.  I generally require that

4    each side disclose the order of witnesses so if you have

5    different lawyers who are going to do cross-examination, they

6    know when they have to be here.  And I've never had a problem

7    with lawyers doing that.  I haven't -- I've never -- I have --

8    I don't enter written orders.  Counsel usually agree that, yes,

9    they'll do that.  Not that many witnesses, not that many days

10   of trial, so it isn't that big a deal.

11           MR. HILLIARD:  Yeah.  And we've had that cooperation

12   so far, Judge.  But for the Court's edification, we're going to

13   call Mr. -- in this order, Mr. Weisfelner, Mr. Steel,

14   Mr. Weintraub, Mr. Golden, Ms. Andrews, Mr. Williams, and

15   Mr. Martorana.

16           THE COURT:  Okay.

17           MR. HILLIARD:  That would be it.

18           THE COURT:  Thank you.

19           MR. HILLIARD:  And I will give you the list.  You

20   don't have to scribble fast.

21           THE COURT:  All right.  Anything else anybody else

22   wants --

23           Mr. Karlan?

24           MR. KARLAN:  Sure.  I've been told that we may

25   have -- may have one or two very small objections to the direct

1  testimony.  May we be on the same schedule for --

2          THE COURT:  Yes.

3          MR. KARLAN:  Thank you.

4          THE COURT:  Please.

5          Mr. Berman?

6          MR. BERMAN:  The last issue -- I think we have an

7  agreement, and if we don't, we -- I want to raise anyway -- is

8  the exchange of demonstratives.  Twenty-four hours before --

9          MR. TECCE:  I think we said 3 p.m. Sunday we would

10  exchange a slide presentation of any opening --

11          THE COURT:  Thanks, Mr. Tecce.

12          No one has raised this issue, so I will raise it now.

13  Since no one has raised it, I'm assuming that neither side is

14  insisting that witnesses be excluded from the courtroom before

15  they testify.  Am I correct in that assumption?

16          Mr. Karlan?

17          MR. KARLAN:  We are not, Judge.

18          MR. HILLIARD:  Nor are we, Judge.

19          THE COURT:  Okay.  Thank you.

20          All right.  Any other housekeeping details you think

21  that I've left out?

22          Mr. Tecce?

23          MR. TECCE:  Yeah.  Just in terms of the closing, if

24  Wednesday afternoon was an option, that's something that we

25  would ask.  Even if we conclude on Tuesday --

24

```
 1            THE COURT:  Sure.

 2            Mr. TECCE:  -- to give time -- the parties time --

 3            THE COURT:  Yeah.

 4            MR. TECCE:  -- on the morning on Wednesday to

 5 prepare.

 6            THE COURT:  That's fine.  I've scheduled nothing

 7 else.  You know, the three days are blocked out, so I have no

 8 problem about doing the -- you know, assuming we finish the

 9 evidence on Tuesday, doing the closings on Wednesday is fine

10 with me.  You know, give everybody a chance to sort of reflect

11 what they want to say.

12            MR. HILLIARD:  If we do finish Tuesday, Judge, I

13 would just ask that we perhaps revisit doing it Wednesday

14 morning as --

15            THE COURT:  Okay.

16            MR. HILLIARD:  -- Texas is calling and --

17            THE COURT:  Yes.  I --

18            MR. HILLIARD:  -- it's the holidays.

19            THE COURT:  It is the holidays, Mr. Tecce, so --

20            MR. TECCE:  I understand, Your Honor.  But --

21            THE COURT:  We'll revisit --

22            MR. TECCE:  -- one of our team has a conflict --

23            THE COURT:  I'm sorry?

24            MR. KARLAN:  All of our team has a -- Bob and I

25 already agreed we're not going to go for Wednesday morning.
```

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

25

1  We -- you and I spoke --

2          THE COURT:  You'll work it out.  Okay?

3          MR. KARLAN:  Okay.

4          THE COURT:  Let's try and show --

5          MR. KARLAN:  Okay.

6          THE COURT:  -- some professional courtesies and the

7  fact that counsel want to return home for the holidays.  Okay?

8  All right.

9          All right.  I will -- I'm going to enter an order

10  approving the joint pretrial order.  I recognize that there may

11  be some further tinkering with the objections.  Hopefully

12  you'll be able to do that.  I'm glad you've been able to

13  resolve most of the objections at this point.  Okay?  Look

14  forward to seeing you next week.

15          MR. KARLAN:  Thank you, Judge.

16          MR. TECCE:  Thank you, Your Honor.

17          THE COURT:  Okay.

18          UNIDENTIFIED:  Thank you, Your Honor.

19          THE COURT:  You know we start at 9:00 each day?

20  Okay.  Thanks very much.  All right.  We're adjourned.

21      (Proceedings concluded at 10:29 a.m.)

22                          *  *  *  *  *

23

24

25

26

**C E R T I F I C A T I O N**

     I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


_____
ALICIA JARRETT, AAERT NO. 428     DATE:  December 11, 2017
ACCESS TRANSCRIPTS, LLC




**C E R T I F I C A T I O N**

     I, Liesl Springer, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


_____
LIESL SPRINGER, AAERT NO. 685     DATE:  December 11, 2017
ACCESS TRANSCRIPTS, LLC