# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com
Arthur Steinberg
Direct Dial: 212-556-2158
asteinberg@kslaw.com

February 8, 2018

**VIA E-MAIL TRANSMISSION**
**AND ECF FILING**
The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

    Re: **In re Motors Liquidation Company,** *et al.*
       Case No. 09-50026 (MG)

    **Proposed Schedule for Late Claims Motions**

Dear Judge Glenn:

  On January 18, 2018, the Court entered its *Memorandum and Order Regarding Motion to Enforce the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust* ("**Opinion**") [ECF No. 14212], wherein it held that the unexecuted settlement agreement among the Signatory Plaintiffs (as defined in the agreement) and the GUC Trust was not binding. At the conclusion of the Opinion, the Court directed the parties as follows:

> Counsel for the parties shall promptly meet and confer and draft a proposed schedule for completing discovery, briefing and hearings of the Late Claims Motions. Counsel shall file a proposed schedule on or before 5:00 p.m., February 9, 2018. If counsel cannot agree on a proposed schedule, they shall file separate proposed schedules.

Opinion, at 69.

  Late Claims Motions were defined in the Opinion at page 13 as follows: "On December 22, 2016, the Signatory Plaintiffs filed motions (the 'Late Claims Motions') for authority to file late proofs of claim (the 'Late Claims') . . . ." Pursuant to an *Order to Show Cause* entered by the Court on December 13, 2016 ("**December 2016 Show Cause Order**") [ECF No. 13802],

Honorable Martin Glenn
February 8, 2018
Page 2

"[t]he Late Claim Motions shall only address the authority to file late proof(s) of claim, and shall not address other issues, including without limitation issues relating to (i) whether a class proof of claim can be filed, (ii) class certification, (iii) discovery, or (iv) the merits of any late proof(s) of claim." December 2016 Show Cause Order, at 5.

### A.   Meet and Confer Summary

A representative of each of the parties met and conferred telephonically on Friday, January 26, 2018. Bankruptcy counsel for the economic loss plaintiffs stated they would not have any discussions on the Late Claims Motions while Wilmington Trust Company and its counsel, Gibson Dunn & Crutcher LLP, were still in the case. Counsel for the Participating Unitholders stated they would not have any discussions on the Late Claims Motions while Wilmington Trust Company was of the view that the unexecuted settlement agreement should not be signed. Gibson Dunn (then counsel for the GUC Trust) stated they had been prepared to discuss next steps with respect to the Late Claims Motion but it did not appear others wanted to engage in that discussion. Notwithstanding these statements, counsel for New GM described the specific issues that should be addressed by the Court, including potential discovery that may be needed with respect to certain of the issues. There were no substantive responses to New GM's comments, and the call ended shortly thereafter. During the following week, counsel for New GM (a) asked bankruptcy counsel for the economic loss plaintiffs whether their "meet and confer" position had changed, and was told no, and (b) asked new counsel for the GUC Trust (Drinker, Biddle & Reath) whether they had specific thoughts as to how the Late Claims Motion should proceed, and was essentially told they were still "getting up to speed." Accordingly, despite New GM's efforts to solicit views for an agreed-upon joint proposal, it is not in a position to do so. As a result, set forth below is New GM's proposed briefing and discovery plan for the Late Claims Motions.

### B.   The Late Claims Motions and Discovery Plan

The December 2016 Show Cause Order established deadlines for the filing of the Late Claims Motions and any joinders. The Late Claims Motions were required to be filed with the Court by December 22, 2016, and "[i]f other plaintiffs wish to join in a Late Claim Motion, they … [were required to] file a joinder (not to exceed two pages) with the Court by January 6, 2017." December 2016 Show Cause Order, at 5. After the Late Claims Motions were filed, the Court entered an *Order Establishing, Inter Alia, Briefing Schedule For Certain Issues Arising From Late Claim Motions Filed By Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs And Certain Ignition Switch Pre-Closing Accident Plaintiffs*, dated March 2, 2017 ("**Late Claims Scheduling Order**") [ECF No. 13869], which established a briefing schedule for the Initial Late Claim Motions Issues (as defined in the Late Claims Scheduling Order).[1] While briefing on the

---

[1]   The Initial Late Claim Motions Issues are: (i) whether the proponents of the Late Claims Motions must satisfy the standard set forth in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), in order to obtain authority to file late proofs of claim, and (ii) whether (and as of when) some or all of the proponents of the Late Claims Motions are the beneficiaries of a tolling agreement with respect to the time for filing the Late Claims Motions.

DMSLIBRARY01\31832553.v3

Honorable Martin Glenn
February 8, 2018
Page 3

Initial Late Claim Motions Issues concluded in March 2017, a hearing on the Initial Late Claim Motions Issues has not been scheduled.[2]

    Given the foregoing, New GM proposes the following briefing and discovery plan:

1.     The Court should schedule oral argument on the Initial Late Claim Motion Issues as soon as practicable.

2.     After the Court decides the Initial Late Claim Motions Issues, New GM suggests the following litigation schedule for the related issues described below:

    **(a)**     **The *Pioneer* Test**: Provided that the Court rules the *Pioneer* standard applies, do some or all of the late claimants satisfy the *Pioneer* standard for filing late proofs of claim?[3]

    Many of the claims would be untimely under the *Pioneer* test, given, *inter alia*: (a) the absence of tolling agreements with regard to Non-Ignition Switch claims (both economic loss and personal injury); (b) the failure of Ignition Switch Pre-Closing Accident claimants to get a tolling agreement until at least 20 months after the February/March 2014 recalls; (c) based on the Interrogatory responses provided by Goodwin Proctor, many pre-closing accident claimants retained an attorney before the 363 Sale, and most retained an attorney in early 2014 (after the recalls were announced);[4] (d) the untimely filing of late claims after the deadlines contained in the December 2016 Show Cause Order; and (e) the delays associated with hundreds of Ignition Switch and Non-Ignition Switch claims that were known about, and pursued in *other* courts, against *other* parties, years before late claims relief was sought in the bankruptcy court. For example, based on publicly available information alone, at the end of January 2018, there were 360 claimants that have filed their personal injury claims in both the MDL and this court, the overwhelming majority of these claims were strategically filed against New GM (and not Old GM) in the MDL, years before late claims were filed against Old GM. And of these claimants, 202 filed claims in the GM Ignition Compensation Claims Resolution Facility administered by Kenneth Feinberg in 2014, 198 of which had their claim denied by no later than July 2015.[5]

---

[2]     New GM submitted briefs for these issues as authorized by the Late Claims Scheduling Order.

[3]     The *Pioneer* factors include: (i) the danger of prejudice to the debtor; (ii) the length of delay and its impact on the judicial proceedings; (iii) the reason for the delay, including whether the delay was within the reasonable control of the movant; and (iv) whether the creditor acted in good faith.

[4]     Many (but not all) of the claimants identified in the Goodwin Proctor Late Claims Motion responded to the Interrogatories. The claimants who did not respond should do so within 10 days of the scheduling order to be entered by the Court.

[5]     On April 1, 2014, New GM announced that it had retained Kenneth Feinberg to develop and design an independent program (which became known as the GM Ignition Compensation Claims Resolution Facility) for the submission, evaluation, and settlement of death or physical injury claims resulting from accidents allegedly caused by the Defective Ignition Switch. New GM placed no cap on the aggregate amount the Facility could pay, had no say in final eligibility determinations, and agreed to pay whatever the Program deemed appropriate

Honorable Martin Glenn
February 8, 2018
Page 4

The dispositive facts relevant to the Pioneer analysis should be undisputed. Therefore, New GM proposes that the claimants abide by an MDL order to supply basic information about the nature of their claims and that the parties stipulate as to if and when claims were made against Old GM and/or New GM, as follows:

(1) Plaintiffs submit by a date certain all of the information required by MDL Order No. 108[6] with regard to each remaining personal injury claim;

(2) By a date certain, the parties stipulate to the dates that any personal injury claim was: (i) first made to Old GM or New GM, (ii) filed in the MDL or in state court, and/or (iii) submitted to the GM Ignition Compensation Claims Resolution Facility administered by Kenneth Feinberg (including facts related to the nature and timing of any decision or disposition issued by the GM Ignition Compensation Claims Resolution Facility).

Briefing for these *Pioneer* issues should be as follows: simultaneous briefs to be filed 30 days after the events referred to in 1-2 above are completed, and simultaneous reply briefs to be filed 21 days after the initial briefs are filed. Oral argument to be set by the Court.

**(b)** **Failure to Raise Due Process Issues**: Whether it is too late now for claimants without the Ignition Switch Defect (both economic loss and personal injury) to attempt to establish a due process violation with respect to Old GM's notice of the Claims Bar Date?

This is a dispositive threshold issue related to claimants who are not asserting an Ignition Switch Defect. Discovery should not be needed for this issue. While all but one of the claimants represented by Goodwin Proctor are Ignition Switch Pre-Sale Accident Plaintiffs, many of the claimants represented by Andrews Myers (at least 126) are Non-Ignition Switch Pre-Closing Accident Plaintiffs. Likewise, according to the late proof of claim filed by the economic loss claimant, approximately 86% of the claimants allegedly covered by the two putative class economic loss proofs of claim are claimants *without* the Ignition Switch Defect.[7]

---

in each case.

Hundreds of consumers who were involved in accidents relating to vehicles with the Ignition Switch Defect received compensation under the GM Ignition Compensation Claims Resolution Facility; many of them were represented by Co-Lead Counsel. The GM Ignition Compensation Claims Resolution Facility paid out approximately $600 million. Over 90% of the offers extended through the GM Ignition Compensation Claims Resolution Facility were accepted by eligible claimants.

[6] A copy of MDL Order No. 108 is attached as **Exhibit "A."**

[7] According to the late putative class proofs of claim filed by the economic loss claimants, approximately 1.6 million Old GM vehicles with the Ignition Switch Defect are at issue in the Ignition Switch Defect putative class proof of claim, and approximately 9.8 million Old GM vehicles are at issue in the Non-Ignition Switch putative class proof of claim. Both of these figures are overstated based on above-cited rulings already issued by Judge Furman in the MDL. It is anticipated that future rulings by Judge Furman (as described herein) will

Honorable Martin Glenn
February 8, 2018
Page 5

>Because of the partial overlap between this issue and the *Pioneer* issue (item (a) above), New GM suggests briefing for this issue be combined with the briefing for the *Pioneer* issues.
>
>**(c)    Late, Late Claims**: Whether the claimants ("**AM Claimants**") represented by Andrews Myers, P.C. ("**Andrews Myers**") are time-barred from seeking authority to file late proofs of claim because their motion and three supplements were filed months after the deadline in the December 2016 Show Cause Order to file joinders to the Late Claims Motions?[8]
>
>Andrews Myers is bankruptcy counsel for various personal injury counsel who represent the AM Claimants. It appears from the information provided by the AM Claimants that personal injury counsel for at least 195 of the AM Claimants were served with the December 2016 Show Cause Order, and thus received actual notice of the January 6, 2017 deadline to file joinders with respect to the Late Claims Motions.
>
>New GM believes that limited discovery is necessary to confirm which AM Claimants received notice of the December 2016 Show Cause Order. Also, unlike most of the Pre-Sale Accident Plaintiffs represented by Goodwin Proctor, the AM Claimants did not answer the interrogatories with respect to the Initial Late Claim Motions Issues. New GM believes that the AM Claimants should answer this Court-approved discovery, plus limited specific supplementary discovery geared towards when they became aware of the December 2016 Show Cause Order. The AM Claimants should be given 30 days to respond after the interrogatories are served.
>
>Briefing for this issue should be combined with the briefing for the *Pioneer* and other related issues, as set forth above.

C.    **The Forbearance Agreement**

While not expressly part of the Late Claims Motions, New GM notes that, on September 12, 2017, the GUC Trust filed a motion seeking approval of the Forbearance Agreement it entered into with New GM (*see* ECF No. 14095), and New GM filed a joinder thereto (*see* ECF No. 14096). A hearing on approval of the Forbearance Agreement has not been scheduled, and the Forbearance Agreement (pursuant to an amendment) will expire by its terms if no approval order is entered by February 28, 2018. New GM requests that this issue be addressed at the scheduling conference set for February 22, 2018.

---

further reduce these numbers.

[8] The AM Claimants filed their initial motion on July 28, 2017 [ECF No. 14018] (*i.e.*, over **six months after** the deadline in the December 2016 Show Cause Order to file joinders to the Late Claims Motions, and approximately **four months after** the briefing on the Initial Late Claim Motions Issues concluded); Andrews Myers filed supplements to that motion on August 10, 2017 [ECF No. 14046], September 19, 2017 [ECF No. 14112], and December 12, 2017 [ECF No. 14195].

DMSLIBRARY01\31832553.v3

Honorable Martin Glenn
February 8, 2018
Page 6

## D. Other Related Issues

### 1. Identifying Late Claimants

The number of personal injury claimants seeking authority to file late proofs of claim has changed over time. Specifically, on December 4, 2017, Goodwin Proctor filed a notice with the Court [ECF No. 14179] indicating its withdrawal as counsel for 30 of its Ignition Switch Pre-Closing Accident Plaintiffs that were part of its Late Claims Motion. Since that time, Lead Counsel in MDL 2543 for Pre-Closing Accident Plaintiffs has filed two other motions to withdraw as counsel for certain Pre-Closing Accident Plaintiffs in the MDL. It is unclear whether additional notices of withdrawal will be filed, impacting the claimants in the Late Claims Motion.

Moreover, it appears that certain of the personal injury claimants named in Goodwin Proctor's Late Claims Motion previously filed *timely* proofs of claim that ***were adjudicated***.[9] If so, such claimants never should have been included in the Late Claims Motions. Accordingly, counsel for the personal injury claimants should be directed to file with the Court, within five (5) business days of the scheduling order to be entered by the Court, a statement setting forth only those claimants that seek authority to file late proofs of claim, omitting all withdrawn and anticipated to be withdrawn claimants and those claimants that previously filed timely proofs of claim or had their claims resolved.

### 2. MDL Proceedings

Given the overlap of legal and factual issues between the late claims in this proceeding and the claims against New GM in MDL 2543, there are a number of issues that have been and will be determined in the MDL that should directly impact adjudication of late claims here.

---

[9] For example, according to information on the GUC Trust's website, it appears that Lisa Allen (who is one of the claimants listed in the Goodwin Proctor Late Claims Motion) timely filed proof of claim number 18841 in the amount of $6,750,000 ($6 million as a priority claim and $750,000 as an unsecured claim); that claim was ultimately allowed as an unsecured claim for $25,000. It also appears that Kally Surbeck (who is another claimant listed in the Goodwin Proctor Late Claims Motion) timely filed proof of claim number 13046 in the amount of $12,695 (secured); that claim was ultimately allowed as an unsecured claim for $3,000. It appears that Glenn Stanley (also a claimant in the Goodwin Proctor Late Claims Motion) accepted a sum from the GM Ignition Compensation Claims Resolution Facility. In order to receive compensation from the GM Ignition Compensation Claims Resolution Facility, the claimant was required to release all claims against, among others, Old GM. Other claimants that are part of the Goodwin Proctor Late Claims Motion that may have filed timely proofs of claim include: (i) Joseph Brooks, (ii) Robert Gillespie, and (iii) John Hairston.

Because of the limited information available with respect to the AM Claimants, it is not possible to confirm whether any of the AM Claimants filed timely proofs of claim. However, according to information on the GUC Trust's website, it appears that the following AM Claimants may have filed timely proofs of claim: (i) Howard Hale, (ii) David Hill, (iii) Jerry Richardson, and (iv) David Simmons.

Accordingly, at least some of the claimants seeking to now file late proofs of claim may have filed timely claims, and/or were compensated by the GM Ignition Compensation Claims Resolution Facility and released their claims against the Old GM estate.

DMSLIBRARY01\31832553.v3

Honorable Martin Glenn
February 8, 2018
Page 7

Specifically, with respect to the economic loss late proofs of claim, which were filed by the same Co-Lead Counsel who represent the economic loss plaintiffs in the MDL, Judge Furman has issued lengthy opinions addressing "the "manifest defect" defense, holding that plaintiffs in states requiring a manifest defect cannot recover any alleged economic losses if no defect manifested in their vehicles (*see* MDL 2543 ECF No. 221). Similarly, Judge Furman has ruled that plaintiffs who sold their vehicles before the 2014 recalls cannot seek benefit-of-the-bargain damages (*see* MDL 2543 ECF No. 4175). Also, Judge Furman has rejected plaintiffs "brand diminution" damages theory. *See* MDL 2543 ECF Nos. 221, 4175. These rulings significantly limit the allowable claims against Old GM.

Also, in October 2017, New GM filed a *Motion for Summary Judgment Against Plaintiffs' Claims for Benefit-of-the Bargain Damages* alleged in the economic loss plaintiffs' Fifth Amended Consolidated Complaint ("**5ACC**"). That motion, which is directed to the claims of named plaintiffs in 15 states and Washington, D.C., is fully briefed and pending decision by the MDL Court. In that motion, New GM argued, *inter alia*, that plaintiffs cannot seek damages if their vehicles were repaired by the recalls.

Furthermore, Judge Furman will adjudicate various other MDL economic loss issues over the next several months which also will impact which proofs of claim can actually proceed and what, if any, claims for alleged economic losses are legally recoverable. For example:

(i) Motion practice relating to other claims and damages issues (*i.e.*, unjust enrichment, lost time). Briefing in the MDL on these issues is scheduled to be concluded by the end of March 2018;

(ii) Summary judgment motion practice on the claims asserted by the named plaintiffs in three bellwether states: California, Missouri and Texas;

(iii) *Daubert* motion practice regarding plaintiffs' alleged experts and their opinions, including purported economic loss damages, which is anticipated to be concluded by June/July 2018. These proffered opinions include the same opinions plaintiffs provided to the GUC Trust as support for the estimate of their proofs of claim;

(iv) Whether MDL plaintiffs and Co-Lead Counsel can satisfy the requirements for class certification set forth in Federal Rule of Civil Procedure 23; if they cannot, the economic loss putative class proofs of claim should not be permitted to proceed. Class certification briefing will occur in the MDL from April to June 2018.[10]

---

[10] The Ignition Switch putative class proof of claim filed in this Court includes the same vehicle defect asserted against New GM in the MDL in the 5ACC under a successor liability theory. The Non-Ignition Switch putative class proof of claim filed in this Court includes all but one of the defects alleged against New GM in the 5ACC.

DMSLIBRARY01\31832553.v3

Honorable Martin Glenn
February 8, 2018
Page 8

## Conclusion

While this Court is addressing the timeliness issues associated with the Late Claims Motions, the MDL Court will be addressing important substantive and class certification issues. If this Court ultimately permits late proofs of claim to be filed, the rulings issued in the MDL Court will have a significant impact on the merits of those claims, and whether and to what extent they should be allowed against the Old GM bankruptcy estate.[11]

New GM prepared a form of scheduling order which is attached to this letter as **Exhibit "B."**

We are in receipt of Plaintiffs' letter dated February 8, 2018 which, among other things, seeks an adjournment of the scheduling conference set for February 22, 2018. New GM believes that there are numerous issues to be discussed with the Court, some of which are time-sensitive and, accordingly, the scheduling conference should remain on that date. New GM will be prepared to address all of the foregoing matters at that time.

Respectfully submitted,

*/s/ Arthur Steinberg*

Arthur Steinberg

---

[11] Most of the merits issues (both for economic loss and personal injury claims) are being addressed in the MDL Court. Fact discovery has concluded in the MDL.

DMSLIBRARY01\31832553.v3