**OBJECTION DEADLINE: March 19, 2018 at 5:00 p.m.**
**HEARING DATE AND TIME: March 29, 2018 at 10:00 a.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------X
In re                                          :    Chapter 11
                                               :
MOTORS LIQUIDATION COMPANY, et al.,            :    Case No.: 09-50026 (MG)
      f/k/a General Motors Corp., et al.       :
                                               :
                        Debtors.               :    (Jointly Administered)
                                               :
---------------------------------------------------------------x
```

**MOTION BY GENERAL MOTORS LLC TO ENFORCE THE
BANKRUPTCY COURT'S JULY 5, 2009 SALE ORDER
AND THE RULINGS IN CONNECTION THEREWITH,
<u>WITH RESPECT TO THE MOORE, *ET AL.* PLAINTIFFS</u>**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND FACTS ......................................................................................................... 3

    A.    The Sale Order and Sale Agreement ............................................................................ 3

    B.    The November 2015 Decision/December 2015 Judgment .......................................... 6

    C.    The June 2017 and July 2017 Opinions ....................................................................... 7

    D.    The Moore Lawsuit ...................................................................................................... 9

BASIS FOR RELIEF .............................................................................................................. 11

    A.    New GM Only Assumed Liabilities Arising Under Environmental Laws; It Did Not Assume Other Liabilities With Respect to Transferred Real Property ............... 11

    B.    The Moore Plaintiffs Have Not Asserted Valid Independent Claims ....................... 13

    C.    Any Request For Exemplary Damages Must Be Stricken ........................................ 15

    D.    The Moore Amended Complaint Contains Allegations That Are Expressly Barred by the December 2015 Judgment and Other Bankruptcy Court Rulings .................. 15

NOTICE ................................................................................................................................. 16

# **TABLE OF AUTHORITIES**

**Page(s)**

*Celotex Corp. v. Edwards,*
   514 U.S. 300 (1995) ................................................................................................. 2, 3, 11

*In re Gen. Motors Corp.*,
   407 B.R. 463 (Bankr. S.D.N.Y. 2009) *aff'd sub nom., In re Motors
   Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010) and 430 B.R. 65 (S.D.N.Y.
   2010); *aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.),
   *cert. denied*, 137 S.Ct. 1813 (2017) .......................................................................... 3, 11, 12

*In re Lehman Bros. Holdings, Inc.*,
   No. 15-149-BR, 2016 WL 1212079 (2d Cir. Mar. 29, 2016) ............................................. 3

*In re Motors Liquidation Co.*,
   513 B.R. 467 (Bankr. S.D.N.Y. 2014) .............................................................................. 11

*In re Motors Liquidation Co.*,
   541 B.R. 104 (Bankr. S.D.N.Y. 2015) ................................................................................ 6

*In re Motors Liquidation Co.*,
   549 B.R. 607 (Bankr. S.D.N.Y. 2016) .............................................................................. 16

*In re Motors Liquidation Co.*,
   568 B.R. 217 (Bankr. S.D.N.Y. 2017) ........................................................................ *passim*

*In re Motors Liquidation Co.*,
   571 B.R. 565 (Bankr. S.D.N.Y. 2017) ...................................................................... 8, 9, 13

*In re Motors Liquidation Co.*,
   576 B.R. 313 (Bankr. S.D.N.Y. 2017) .............................................................................. 14

*In re Motors Liquidation Co.*,
   829 F.3d 135 (2d Cir. 2016) ......................................................................................... 8, 13

*Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*,
   No. 12-09803 (REG), 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) ....................... 5

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this motion to enforce ("**Moore Motion to Enforce**") the Order entered by the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**") on July 5, 2009 ("**Sale Order**") that approved the sale of assets from Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**") to New GM,[1] and the decisions and judgments entered by the Bankruptcy Court in connection therewith, enjoining the plaintiffs ("**Moore Plaintiffs**") and their counsel in the lawsuit ("**Moore Lawsuit**") captioned *Terry Moore, et al. v. General Motors LLC* pending in the United States District Court for the Eastern District of Michigan ("**Michigan District Court**"), Case No. 2:17-cv-14226, from proceeding with certain allegations, claims and requests for damages contained in the *Plaintiff's [sic] First Amended Class Action Complaint and Jury Demand* ("**Moore Amended Complaint**")[2] until the Moore Amended Complaint is further modified so that it complies with the Sale Order and other Bankruptcy Court rulings.

## PRELIMINARY STATEMENT[3]

1.  The continued prosecution of the Moore Lawsuit, in its present form, violates the Sale Order and other applicable Bankruptcy Court rulings. The Moore Plaintiffs are seeking recovery against New GM based on alleged contamination of their groundwater arising from the Milford Proving Ground ("**MPG**" or the "**Site**"), real property that was previously owned by Old

---

[1] The full title of the Sale Order is *Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief.* A copy of the Sale Order and the accompanying Sale Agreement (as defined herein) is attached hereto as **Exhibit "A."**

[2] After discussions between counsel for New GM and counsel for the Moore Plaintiffs, the Moore Plaintiffs filed the Moore Amended Complaint on February 16, 2018. While New GM was hopeful, based on the discussions between counsel, that the Moore Plaintiffs would amend their complaint to adequately address the bankruptcy issues, that was not the case, as explained herein. A copy of the Moore Amended Complaint is attached hereto as **Exhibit "B."**

[3] Capitalized terms not otherwise defined in this Preliminary Statement are defined in later sections of this Moore Motion to Enforce.

1

GM and transferred to New GM pursuant to the 363 Sale.[4]  While New GM agreed to assume claims under Environmental Laws with respect to property transferred to it pursuant to the 363 Sale, the Sale Order, the Bankruptcy Court's December 2015 Judgment and other Bankruptcy Court rulings preclude certain of the allegations, claims and requests for damages asserted in the Moore Amended Complaint.

2. Specifically, the Moore Plaintiffs are asserting causes of action against New GM that do not arise under Environmental Laws and, thus, are Retained Liabilities of Old GM.  In addition, the Moore Plaintiffs assert that New GM is the successor to Old GM, and frequently lump the two entities together, in clear violation of previous Bankruptcy Court rulings.  And, the Moore Plaintiffs have not asserted valid independent claims against New GM, as any such claims appear to be based, at least in part, on Old GM conduct or are not sufficiently pled.  The Moore Plaintiffs also inappropriately seek exemplary damages in connection with certain of their alleged claims.

3. Counsel for the Moore Plaintiffs was notified of the bankruptcy issues shortly after the Moore Lawsuit was commenced.  Despite repeated warnings, the Moore Plaintiffs and their counsel have persisted in flouting applicable Bankruptcy Court rulings, thus necessitating the filing of the Moore Motion to Enforce.

4. The law is settled that a party subject to a court's injunction does not have the option simply to proceed in another court as if the injunction had not been issued.  As the United States Supreme Court explained in *Celotex Corp. v. Edwards*, the rule is "well-established" that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the

---

[4] New GM disputes that it is liable to the Moore Plaintiffs for any causes of action, claims and/or damages asserted in the Moore Amended Complaint.

2

order." 514 U.S. 300, 306 (1995). The continuation of the Moore Lawsuit is a violation of the Sale Order (and the injunction contained therein) and the other controlling Bankruptcy Court rulings.[5]

5.  As explained below, this Court should enjoin the Moore Plaintiffs from proceeding with the Moore Amended Complaint until their Amended Complaint is further modified so that it fully complies with the controlling rulings of the Bankruptcy Court.

## BACKGROUND FACTS

**A.  The Sale Order and Sale Agreement**

6.  On June 1, 2009, Old GM commenced a case under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. On that same day, it filed a motion seeking approval of the original version of a sale agreement (as subsequently amended, the "**Sale Agreement**"), pursuant to which substantially all of Old GM's assets were to be sold to New GM, a separate legal entity from Old GM. *See In re Gen. Motors Corp.*, 407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009). The Sale Order was entered on July 5, 2009, and the sale ("**363 Sale**") closed on July 10, 2009.

7.  The Sale Agreement provides that New GM assumed only certain categories of liabilities relating to Transferred Real Property. For purposes herein, among those liabilities assumed are "all Liabilities arising under any Environmental Law (A) relating to the Transferred Real Property, other than those Liabilities described in Section 2.3(b)(iv), (B) resulting from Purchaser's ownership or operation of the Transferred Real Property after the Closing or (C)

---

[5] New GM reserves all of its rights in connection with improper actions taken by the Moore Plaintiffs. *See In re Lehman Bros. Holdings, Inc.,* No. 15-149-BR, 2016 WL 1212079 (2d Cir. Mar. 29, 2016) (upholding a bankruptcy court order that imposed sanctions on a plaintiff who violated a bankruptcy sale order by commencing and continuing to prosecute a lawsuit against the purchaser of a debtor's assets where the purchaser bought the debtor's assets free and clear of claims and liens).

3

relating to Purchaser's failure to comply with Environmental Laws after the Closing[.]" Sale Agreement, § 2.3(a)(viii).[6]

8. As noted, certain liabilities are expressly carved out of this category of Assumed Liabilities. Specifically, Section 2.3(b)(iv) of the Sale Agreement provides that the following are Retained Liabilities:

> all Liabilities (A) associated with noncompliance with Environmental Laws (including for fines, penalties, damages and remedies); (B) arising out of, relating to, in respect of or in connection with the transportation, off-site storage or off-site disposal of any Hazardous Materials generated or located at any Transferred Real Property; (C) *arising out of, relating to, in respect of or in connection with third party Claims related to Hazardous Materials that were or are located at or that were Released into the Environment from Transferred Real Property prior to the Closing, except as otherwise required under applicable Environmental Laws*; (D) arising under Environmental Laws related to the Excluded Real Property, except as provided under Section 18.2(e) of the Master Lease Agreement or as provided under the "Facility Idling Process" section of Schedule A of the Transition Services Agreement; or (E) for environmental Liabilities with respect to real property formerly owned, operated or leased by Sellers (as of the Closing), which, in the case of clauses (A), (B) and (C), arose prior to or at the Closing, and which, in the case of clause (D) and (E), arise prior to, at or after the Closing; [emphasis added]

9. Retained Liabilities also include "Liabilities to third parties for Claims based on Contract, tort or any other basis[.]" Sale Agreement, § 2.3(b)(xi). The Site was sold free and clear of all claims (except Assumed Liabilities), including claims based on successor or transferee liability. *See, e.g.*, Sale Order, ¶¶ 7, 46.

---

[6] "Environmental Law" is defined in the Sale Agreement as "any Law in existence on the date of the Original Agreement relating to the management or Release of, or exposure of humans to, any Hazardous Materials; or pollution; or the protection of human health and welfare and the Environment." Sale Agreement, at 7.

The term "Law" is defined in the Sale Agreement as "any and all applicable United States or non-United States federal, national, provincial, state or local laws, rules, regulations, directives, decrees, treaties, statutes, provisions of any constitution and principles (including principles of common law) of any Governmental Authority, as well as any applicable Final Order." Sale Agreement, at 11. The common law claims asserted by the Moore Plaintiffs are not principles of a Governmental Authority. These are third party (non-Governmental Authority) claims.

4

10.     The Sale Order provides that New GM shall have no successor liability with respect to environmental claims. *See* Sale Order, ¶ 61 ("Nothing in this Order or the MPA releases, nullifies, or enjoins the enforcement of any Liability to a governmental unit under Environmental Laws or regulations (or any associated Liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, or operator of property after the date of entry of this Order. ***Notwithstanding the foregoing sentence, nothing in this Order shall be interpreted to deem the Purchaser as the successor to the Debtors under any state law successor liability doctrine with respect to any Liabilities under Environmental Laws or regulations for penalties for days of violation prior to entry of this Order*** . . . ." (emphasis added)).[7]

11.     The Sale Order is equally clear that, except for Assumed Liabilities, New GM is not liable for any claims arising in any way from Old GM's acts, or failures to act, whether known or unknown, contingent or otherwise, whether arising before or after Old GM's bankruptcy, including claims arising under doctrines of successor or transferee liabilities. *See* Sale Order, ¶ AA. This provision makes it evident that "New GM is not liable for Old GM's conduct . . . ." *Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 12-09803 (REG), 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013).

---

[7]   The Sale Order also provides:

> Except for the Assumed Liabilities expressly set forth in the [Sale Agreement] . . . [New GM] . . . shall [not] have any liability for any claim that arose prior to the Closing Date . . . or otherwise is assertable against [Old GM] . . . prior to the Closing Date . . . . Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity . . . , whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order, ¶ 46.

5

12. Paragraph 71 of the Sale Order provides for the Bankruptcy Court's exclusive jurisdiction over matters and claims regarding the 363 Sale, including jurisdiction to protect New GM against improper claims:

> This Court *retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement]*, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, . . ., in all respects, including, but not limited to, retaining jurisdiction to . . . (c) *resolve any disputes arising under or related to the [Sale Agreement], except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Retained Liabilities or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets . . . .*
> (Emphasis added.)

**B.     The November 2015 Decision/December 2015 Judgment**

13. On August 19, 2015, the Bankruptcy Court entered a Case Management Order [Dkt. No. 13383] that directed parties in interest to submit their views on how best to address various issues relating to the Sale Order. After a hearing before the Bankruptcy Court on August 31, 2015, the Bankruptcy Court entered a Scheduling Order on September 3, 2015 [Dkt. No. 13416] ("**September 3 Scheduling Order**") that set forth a briefing schedule to address, among other things, whether New GM assumed punitive damages for Old GM conduct, and whether certain causes of action or allegations in complaints filed against New GM were barred by the Sale Order.

14. On November 9, 2015, the Bankruptcy Court entered its Decision ("**November 2015 Decision**") with respect to the matters identified in the September 3 Scheduling Order. *See generally In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015). On December 4, 2015, the Bankruptcy Court entered a judgment ("**December 2015 Judgment**") memorializing the rulings set forth in the November 2015 Decision. Specifically, the December 2015 Judgment described the types of allegations that cannot be asserted by plaintiffs in pleadings against New

6

GM. Under the December 2015 Judgment, plaintiffs are prohibited from making allegations that (i) speak of New GM as the successor of Old GM (e.g. allegations that refer to New GM as the 'successor of,' a 'mere continuation of,' or a 'de facto successor of' of Old GM)" (December 2015 Judgment, ¶ 16), and (ii) "do not distinguish between Old GM and New GM . . ." (*id.*, ¶ 17). Such deficient pleadings "are and remain stayed, unless and until they are amended consistent with the [November 2015] Decision and this Judgment." December 2015 Judgment, ¶ 16.

15. In addition, pursuant to the December 2015 Judgment, the Bankruptcy Court ruled that New GM did not contractually assume liability for punitive damages based on Old GM knowledge or conduct or anything else that took place at Old GM. *See* December 2015 Judgment, ¶ 6.

16. The December 2015 Judgment further provides that, except as modified by other Bankruptcy Court rulings, the Sale Order remained "unmodified and in full force and effect, including, without limitation, paragraph AA of the Sale Order, which states that, except with respect to Assumed Liabilities, New GM is not liable for the actions or inactions of Old GM." *Id.*, ¶ 39.

C.  **The June 2017 and July 2017 Opinions**

17. On June 7, 2017, this Court entered an Opinion ("**June 2017 Opinion**")[8] that addressed certain issues arising out of New GM's 2014 recalls of Old GM's vehicles that were identified in this Court's December 13, 2016 Order to Show Cause ("**December 2016 Show Cause Order**"). The June 2017 Opinion specified the requirements for pleading independent claims against New GM. This Court, following Second Circuit guidance, held: "The Court

---

[8] The June 2017 Opinion is published at *In re Motors Liquidation Co.*, 568 B.R. 217 (Bankr. S.D.N.Y. 2017).

7

emphasizes that its analysis here applies only to claims based solely on New GM's alleged wrongful conduct. It is not acceptable . . . to base allegations on generalized knowledge of both Old GM and New GM. To pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." June 2017 Opinion, 568 B.R. at 231; *see also In re Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016) ("By definition, independent claims are claims based on New GM's own post-closing wrongful conduct. . . . These sorts of claims are based on New GM's post-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on prepetition conduct."). Deciding whether another complaint against New GM properly stated an independent claim, this Court held that "certain of the Pitterman Plaintiffs' claims do not sufficiently distinguish between conduct of Old GM or New GM. Those claims cannot go forward against New GM as drafted." June 2017 Opinion, 568 B.R. at 220 n.1. Accordingly, it is inappropriate to lump Old GM and New GM conduct together when purporting to allege an independent claim against New GM.

18. In addition, this Court confirmed that it would continue to be the gatekeeper to review complaints to determine if they violate the Sale Order and/or other Bankruptcy Court rulings. *See* June 2017 Opinion, 568 B.R. at 222 ("The Court's role, then, is a 'gatekeeper' role. It should be the court to decide what claims and allegations should get through the 'gate,' under the Sale Order and this Court's prior decisions." (citations omitted)).

19. Thereafter, on July 12, 2017, this Court entered another Opinion, which addressed certain other issues arising from the December 2016 Show Cause Order. *See In re Motors Liquidation Co.*, 571 B.R. 565 (Bankr. S.D.N.Y. 2017) ("**July 2017 Opinion**"). In the July 2017 Opinion, the Bankruptcy Court affirmed that "truly Independent Claims" are "claims based

8

solely on wrongful post-closing conduct of New GM . . . ." *Id.* at 569 n.2. The Bankruptcy Court also held that plaintiffs "may not assert claims against New GM for punitive damages based on conduct of Old GM." *Id.* at 580. In addition, this Court ruled in the July 2017 Opinion that "Judge Gerber's [December 2015] ruling therefore remains law of the case and New GM cannot be held liable for punitive damages on a contractual basis." July 2017 Opinion, 571 B.R. at 576.

### D. The Moore Lawsuit

20. On December 4, 2017, New GM was served with the Moore Original Complaint. On December 29, 2017, New GM removed the Moore Lawsuit to the Michigan District Court.

21. The Moore Lawsuit is a putative class action filed on behalf of all persons in the past 10 years who have resided in a home to which New GM sent a Notice of Migration on or about October 2014, and who claim damages from contamination of groundwater. The Moore Plaintiffs seek, *inter alia*, compensation for property damage and personal injury for (i) a violation of Part 201 of the Michigan Natural Resources and Environmental Protection Act, (ii) a violation of the Michigan Environmental Protection Act, (iii) fraud, (iv) negligence, (v) trespass, (vi) private nuisance, and (vii) public nuisance. *See generally* Moore Amended Compl.

22. On January 8, 2018, New GM sent counsel for the Moore Plaintiffs a letter ("**January 8 Letter**"), explaining how the Moore Original Complaint violated the Sale Order and other Bankruptcy Court rulings, and requested that they amend their complaint to address those issues.[9] Counsel for New GM and counsel for the Moore Plaintiffs had a conference call on February 14, 2018 to discuss the bankruptcy issues with the Moore Lawsuit.

---

[9]  A copy of the January 8 Letter is attached hereto as **Exhibit "C."**

9

23. Shortly thereafter, on February 16, 2018, the Moore Amended Complaint was filed with the Michigan District Court. Simply put, it did not adequately address the bankruptcy issues.[10] The Moore Amended Complaint continues to assert Retained Liabilities against New GM—*i.e.*, state law claims based on Old GM conduct for fraud, negligence, trespass, private nuisance, and public nuisance. *See* Moore Amended Complaint, Counts III-VII.

24. It also fails to properly assert independent claims; in particular, the Moore Amended Complaint does not specifically identify New GM conduct that would support such claims. *See id.*, Counts X-XIV.

25. The Moore Amended Complaint also continues to improperly seek exemplary damages in connection with its improper fraud claims.

26. In addition, the Moore Amended Complaint contains inappropriate allegations, such as (i) successor liability allegations (*see, e.g.*, Moore Amended Compl., ¶ 9 ("Defendant and its predecessor, Motors Liquidation Company, f/k/a General Motors Corporation ("Old GM") have owned and operated the MPG since 1924 . . ."); ¶ 40 ("After purchasing the MPG, Defendant operated as a continuing enterprise of Old GM . . ."); ¶ 45 ("Defendant has acted as a mere continuation of Old GM, after Old GM's 2009 bankruptcy."); ¶ 46 ("Defendant and its predecessor, Old GM, had actual knowledge of the Releases and the Contamination after 1985.")), and (ii) impermissible allegations that lump Old GM and New GM conduct together (*see, e.g., id.* ¶ 12 ("Defendant and Old GM released hundreds of thousands of tons of salt at the MPG over the last several decades . . . "); ¶ 15 ("Since 1985, at the latest, Defendant and Old GM were well-aware of the Releases and the Contamination."))).

---

[10] On the same day that the Moore Plaintiffs filed the Moore Amended Complaint, they filed in the Michigan District Court a motion to sever the claims based on Old GM conduct from the claims allegedly based on New GM conduct ("**Moore Motion to Sever**"). A copy of the Moore Motion to Sever is attached hereto as **Exhibit "D."** Severing the claims does not resolve the bankruptcy issues. As noted, the Moore Lawsuit cannot go forward in its current form until the bankruptcy infirmities are adequately addressed.

## **BASIS FOR RELIEF**

27. The Moore Plaintiffs cannot simply ignore the Bankruptcy Court's Sale Order and its effect on lawsuits filed against New GM. As the Supreme Court held in *Celotex*:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done. . . . Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law.

514 U.S. at 313; *see also In re Motors Liquidation Co.*, 513 B.R. 467, 478 (Bankr. S.D.N.Y. 2014) (quoting *Celotex*). These settled principles bind the Moore Plaintiffs. They are subject to the Sale Order and the Bankruptcy Court's other rulings, and are required to comply with them. The Moore Plaintiffs should be directed to further modify the Moore Amended Complaint as set forth herein.

### A. **New GM Only Assumed Liabilities Arising Under Environmental Laws; It Did Not Assume Other Liabilities With Respect to Transferred Real Property**

28. The terms of the Sale Order and the Sale Agreement limit New GM's liabilities relating to Old GM's real property transferred to New GM, and environmental claims arising therefrom. Specifically, environmental issues were addressed by the Bankruptcy Court in its Sale Decision in 2009. *See In re Gen. Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009), *aff'd sub nom., In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010), and 430 B.R. 65 (S.D.N.Y. 2010); *aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017). There, the Bankruptcy Court found:

> The Environmental Matters Objectors understandably would like New GM to satisfy cleanup obligations that were the responsibility of Old GM, on theories of successor liability. For reasons articulated in the Court's "Successor Liability Issues" discussion in Section 2 above, however, the property may be sold free and clear of such claims.

11

>    Indeed, further reinforcing that view (as well as the Court's decision to follow *Chrysler*) is this Court's decision, seven years ago, in *Mag. Corp.* There, upon the sale of property with substantial environmental issues, this Court was faced with the exact same issue—to what extent could that property be sold free and clear of environmental claims under 363(f). This Court ruled that one had to make a distinction. Under section 363(f), there could be no successor liability imposed on the purchaser for the seller MagCorp's monetary obligations related to cleanup costs, or any other obligations that were obligations of the seller. But the purchaser would have to comply with its environmental responsibilities starting with the day it got the property, and if the property required remediation as of that time, any such remediation would be the buyer's responsibility:
>
>    When you are talking about free and clear of liens, it means you don't take it subject to claims which, in essence, carry with the property. It doesn't absolve you from compliance with the law going forward.
>
>    Those same principles will be applied here. Any Old GM properties to be transferred will be transferred free and clear of successor liability, but New GM will be liable from the day it gets any such properties for its environmental responsibilities going forward.

*Gen. Motors Corp.*, 407 B.R. at 508.

29.    Accordingly, while New GM assumed certain liabilities arising under Environmental Laws (as defined in the Sale Agreement) with respect to real property purchased by it in the 363 Sale, and may be responsible for its own conduct after the closing of the 363 Sale, it did not agree to assume all liabilities associated with such real property.

30.    Counts III through VII of the Moore Amended Complaint are not claims arising under Environmental Laws, and are each claims explicitly based on Old GM conduct. *See, e.g.*, Moore Amended Compl., at 23 ("Count III – Fraud; New GM (For Claims *Relating to* Old GM) (emphasis in original)); at 24 ("Count IV – Negligence; New GM (For Claims *Relating to* Old GM) (emphasis in original); at 26 ("Count V – Trespass; New GM (For Claims *Relating to* Old GM) (emphasis in original); at 26 ("Count VI – Private Nuisance; New GM (For Claims *Relating to* Old GM) (emphasis in original); at 27 ("Count VII – Public Nuisance; New GM (For Claims *Relating to* Old GM) (emphasis in original). Each of these counts is expressly based on

12

Old GM conduct, are not claims based on Environmental laws, and are not part of any category of Assumed Liabilities set forth in the Sale Agreement. As stated above, with respect to claims arising from Transferred Real Property, Sections 2.3(a)(viii), 2.3(b)(iv) and 2.3(b)(xi) of the Sale Agreement, taken together, provide that New GM only assumed liabilities under Environmental Laws, and did not assume any other claims related to the Site. In fact, New GM expressly did not assume liabilities "arising out of, relating to, in respect of or in connection with third party Claims related to Hazardous Materials that were or are located at or that were Released into the Environment from Transferred Real Property prior to the Closing . . . ." Sale Agreement, § 2.3(b)(iv)(C). The causes of action cited above fall squarely within this category of Retained Liabilities.

31. Accordingly, Counts III through VII are therefore not Assumed Liabilities, but Retained Liabilities of Old GM. Those counts in the Moore Amended Complaint violate the Bankruptcy Court's rulings and must be stricken.

**B.      The Moore Plaintiffs Have Not Asserted Valid Independent Claims**

32. As set forth above, both the Second Circuit and this Court have ruled that independent claims must be based solely on New GM conduct, and cannot be based on Old GM conduct. *See Motors Liquidation Co.*, 829 F.3d at 157; *Motors Liquidation Co.*, 571 B.R. at 569 n.2; *Motors Liquidation Co.*, 568 B.R. at 224; December 2015 Judgment, at 2 n.3.

33. Independent claims must also specifically identify the New GM conduct upon which the claim is based. Deciding the propriety of a similar issue, this Court recently held that "[i]t is not acceptable . . . to base allegations on generalized knowledge of both Old GM and New GM. To pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." *Motors Liquidation Co.*, 568

13

B.R. at 231. In that matter, the Bankruptcy Court concluded that "[t]hose claims cannot go forward against New GM as drafted." *Id.* at 220 n.1. In another recent opinion, the Bankruptcy Court held that a proposed complaint did "not identify any specific New GM conduct upon which to base an Independent Claim," and did not allow the complaint to pass through the bankruptcy gate. *In re Motors Liquidation Co.*, 576 B.R. 313, 322-23 (Bankr. S.D.N.Y. 2017).

34.     Despite these clear rulings, the Moore Plaintiffs' so-called "independent" claims for fraud, negligence, trespass, private nuisance and public nuisance are either based on **both** alleged New GM conduct and Old GM conduct, or do not sufficiently identify any specific New GM conduct to appropriately allege an independent claim. *See generally* Counts IX through XIV.

35.     The Moore Amended Complaint contains numerous allegations that impermissibly intermingle Old GM conduct and New GM conduct, and the Moore Amended Complaint has numerous references to pre-363 Sale conduct of Old GM, and only a few generalized allegations regarding post-363 Sale conduct by New GM. Specifically, the allegations regarding pre-363 Sale conduct include: (i) allegations regarding Old GM conduct from 1985 regarding a Water Supply Study (*see* Moore Amended Complaint, ¶¶ 15-19), and (ii) events that took place from 1997 to 2007 (*see id.*, ¶¶ 21-33). In contrast, the allegations regarding New GM conduct—which do not describe with particularity any New GM conduct that may have contributed to the alleged contamination—are limited to (i) alleged "affirmative misrepresentations" regarding groundwater flow (which are lumped together with Old GM conduct), without identifying who made these statements, to whom, and when (*see id.*, ¶ 49), and (ii) the Notice of Migration issued by New GM in October 2014, which described elevated levels of sodium and chloride (*see id.*, ¶¶ 50-52).

36. Accordingly, the purported independent claims alleged by the Moore Plaintiffs in the Moore Amended Complaint are not properly stated and violate the Bankruptcy Court's rulings.

C. **Any Request For Exemplary Damages Must Be Stricken**

37. While the "Whereas" clause in the Moore Amended Complaint does not seek punitive or exemplary damages (*see* Moore Amended Complaint, at 35-36), there are two stray references to "exemplary damages" in the Moore Amended Complaint (*i.e.*, ¶¶ 81 and 121), both sought in connection with a fraud-based claim. To the extent the Moore Plaintiffs are actually seeking exemplary damages, both requests must be stricken. *First*, as explained above, any fraud claim based on Old GM conduct is not an Assumed Liability; it is a Retained Liability, and since this claim cannot be asserted against New GM, any request for exemplary damages similarly cannot be sought against New GM. *Second*, as also explained above, even if the Moore Plaintiffs could somehow assert a fraud claim as an Assumed Liability (it ***cannot***), New GM did not assume punitive damages based on Old GM conduct. And, *third* (as also explained above), the Moore Plaintiffs have not alleged sufficient facts to support their so-called "independent" fraud claim, which would also negate any request for exemplary damages based on such claim.

38. Accordingly, each of the Moore Plaintiffs' request for exemplary damages should be stricken.

D. **The Moore Amended Complaint Contains Allegations That Are Expressly Barred by the December 2015 Judgment and Other Bankruptcy Court Rulings**

39. In the December 2015 Judgment, the Bankruptcy Court expressly set forth what types of allegations could not be asserted against New GM. Among other things, plaintiffs are prohibited from making allegations that speak of New GM as the successor of Old GM and that

15

do not distinguish between Old GM and New GM.  In addition, it is inappropriate to lump Old GM conduct and New GM conduct together.  *See Motors Liquidation Co.*, 568 B.R. at 220 n.1.

40. The Moore Amended Complaint contains allegations that are prohibited by the December 2015 Judgment and other Bankruptcy Court rulings, requiring corrections or deletions.  As but one example, paragraph 9 of the Moore Amended Complaint alleges: "Defendant [New GM] and its predecessor, General Motors Corporation . . . have owned and operated the [Site] since 1924 . . . ."  Other paragraphs that allege or suggest that New GM is the successor to Old GM are paragraphs 1, 2, 39, 40, 41, 45, 46, 65, 67, 72, 116.  New GM is not the successor to Old GM.  *See In re Motors Liquidation Co.*, 549 B.R. 607, 609 (Bankr. S.D.N.Y. 2016) ("New GM is not a successor in interest to General Motors Corporation . . .; it is a completely separate legal entity from Old GM."); *see also* Sale Order, ¶ 61.  Thus, these allegations in the Moore Amended Complaint must be stricken.

41. In addition, the Moore Amended Complaint contains allegations that do not distinguish between Old GM and New GM conduct, or intermingle allegations with respect to Old GM and New GM in the same paragraph.  *See, e.g.*, Moore Amended Complaint ¶¶ 1, 2, 9, 12, 15, 46, 47, 48, 49, 52, 72, 88.  As explained above, these types of allegations are prohibited by previously rulings of the Bankruptcy Court.  Until appropriately amended, the Moore Plaintiffs should remain enjoined from proceeding with their lawsuit.

## **NOTICE**

42. Notice of this Moore Motion to Enforce has been provided to counsel for the Moore Plaintiffs, and all entities that receive electronic notice from the Bankruptcy Court's ECF system.  New GM submits that such notice is sufficient and no other or further notice need be provided.

43. No prior request for the relief sought in this Moore Motion to Enforce with respect to the Moore Plaintiffs has been made to this or any other court.

WHEREFORE, New GM respectfully requests that this Court enter an order, substantially in the form set forth in **Exhibit "E"** hereto, granting the relief sought herein, and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
February 27, 2018

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

*Attorneys for General Motors LLC*

17