**OBJECTION DEADLINE: March 19, 2018 at 5:00 p.m.**
**HEARING DATE AND TIME: March 29, 2018 at 10:00 a.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
|                                        |   |                          |
| In re:                                 | : | Chapter 11               |
|                                        | : |                          |
| MOTORS LIQUIDATION COMPANY, *et al.*,  | : | Case No.: 09-50026 (MG)  |
|      f/k/a General Motors Corp., *et al.* | : |                       |
|                                        | : | (Jointly Administered)   |
|                     Debtors.           | : |                          |
-------------------------------------------------------------x

**NOTICE OF MOTION BY GENERAL MOTORS LLC
TO ENFORCE THE BANKRUPTCY COURT'S SALE ORDER AND
COURT-APPROVED DEFERRED TERMINATION
(WIND-DOWN) AGREEMENT WITH RESPECT TO PAT BOMBARD**

PLEASE TAKE NOTICE that upon the annexed Motion, dated February 27, 2018 (the "**Motion**"),[1] of General Motors LLC ("**New GM**"), seeking the entry of an order to enforce the Sale Order, entered by the Bankruptcy Court on July 5, 2009, and a Court-approved Wind-Down Agreement, a hearing will be held before the Honorable Martin Glenn, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **March 29, 2018 at 10:00 a.m.,** or as soon thereafter as counsel may be heard.

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on King & Spalding LLP, 1185 Avenue of the Americas, New York, New York  10036 (Attn:  Arthur Steinberg and Scott Davidson) so as to be received no later than **March 19, 2018, at 5:00 p.m.** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no responses or objections are timely filed and served with respect to the Motion, New GM may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
      February 27, 2018

                              Respectfully submitted,


                           __/s/ Arthur Steinberg___
                           Arthur Steinberg
                           Scott Davidson
                           KING & SPALDING LLP
                           1185 Avenue of the Americas
                           New York, New York  10036
                           Telephone:    (212) 556-2100
                           Facsimile:    (212) 556-2222

                           *Attorneys for General Motors LLC*

**OBJECTION DEADLINE: March 19, 2018 at 5:00 p.m.**
**HEARING DATE AND TIME:  March 29, 2018 at 10:00 a.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:      (212) 556-2222
Arthur Steinberg
Scott Davidson

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **Case No.:  09-50026 (MG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

**MOTION BY GENERAL MOTORS LLC TO ENFORCE THE BANKRUPTCY
COURT'S SALE ORDER AND COURT-APPROVED DEFERRED TERMINATION
(WIND-DOWN) AGREEMENT WITH RESPECT TO PAT BOMBARD**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND FACTS ..........................................................................................................2

A.  The Sale Order and Sale Agreement .........................................................................2

B.  The Bombard WD Agreement ...................................................................................3

C.  Admissions by Mr. Bombard in His Subsequent Bankruptcy Filing .........................5

D.  The Bombard Adjudicatory Proceedings Request .....................................................6

BASIS FOR RELIEF .................................................................................................................8

NOTICE ....................................................................................................................................11

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Gen. Motors Corp.*,
    407 B.R. 463 (Bankr. S.D.N.Y. 2009)........................................................................................2

*In re Lehman Bros. Holdings, Inc.*,
    No. 15-149-BR, 2016 WL 1212079 (2d Cir. Mar. 29, 2016).....................................................2

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this motion to enforce ("**Bombard Motion to Enforce**") the Order entered by the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**") on July 5, 2009 ("**Sale Order**")[1] and a Court-approved Wind-Down Agreement ("**Bombard WD Agreement**") between Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**") and Bombard Car Co., Inc. ("**Bombard Car Co.**"),[2] by enjoining Pat Bombard and his counsel from proceeding with the *Franchised Motor Vehicle Dealer Request for Adjudicatory Proceedings* filed with the New York State Department of Motor Vehicles ("**NYDMV**") on December 19, 2017 ("**Adjudicatory Proceedings Request**").[3]

## PRELIMINARY STATEMENT

1.    Mr. Bombard, who is not and has not been an authorized GM dealer for almost *eight years*, improperly seeks to avoid his obligations under the Bombard WD Agreement by disregarding its broad release and covenant not to sue.  He also wants to ignore that Bombard Car Co. and Old GM agreed that this Court has exclusive jurisdiction to interpret, enforce, and adjudicate any dispute regarding the Bombard WD Agreement.  Instead, Mr. Bombard is proceeding with the Adjudicatory Proceedings Request in the NYDMV based upon what appears to be a doctored "Participation Agreement" not signed by Old GM.  He claims this document "reinstated" Bombard Car Co. as a GM-authorized dealership, contradicting his sworn admissions in the United States Bankruptcy Court for the Northern District of New York.  There

---

[1]    The full title of the Sale Order is *Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief*.  A copy of the Sale Order with the Sale Agreement (as defined herein) is attached as **Exhibit "A."**

[2]    A copy of the fully executed Bombard WD Agreement is attached as **Exhibit "B."**

[3]    A copy of Mr. Bombard's Adjudicatory Proceedings Request (with exhibits) is attached as **Exhibit "C."**

is no "Participation Agreement," Bombard Car Co. is not an authorized GM dealer, and the relationship between Old GM and Bombard Car Co. is controlled by the Bombard WD Agreement. This Court should enjoin Mr. Bombard from proceeding with the Adjudicatory Proceedings Request, direct Mr. Bombard to withdraw that proceeding with prejudice, and preclude Mr. Bombard from asserting any claims against New GM arising from, relating to, or concerning the Bombard WD Agreement and/or the Bombard Dealer Agreement.[4]

## BACKGROUND FACTS

### A.    The Sale Order and Sale Agreement

2.    On June 1, 2009 ("**Petition Date**"), Old GM commenced a case under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. That same day, it filed a motion seeking approval of the original version of a sale agreement (as amended, "**Sale Agreement**"), pursuant to which substantially all of Old GM's assets were to be sold to New GM. *See In re Gen. Motors Corp.*, 407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009). The Sale Order was entered on July 5, 2009, and the sale ("**363 Sale**") closed on July 10, 2009.

3.    As part of the transactions approved by the Sale Order, Old GM entered into and, thereafter, assigned to New GM certain Wind-Down and other Deferred Termination Agreements between Old GM and certain of its dealers. Old GM offered these agreements to dealers as an alternative to outright rejection of their General Motors Dealer Sales and Service Agreements ("**Dealer Agreement**") under Section 365 of the Bankruptcy Code. These agreements provided, among other things, that, in exchange for certain payments and other consideration, the Dealer Agreements would terminate no later than October 31, 2010.

---

[4]    New GM reserves all of its rights in connection with improper actions taken by Mr. Bombard. *See In re Lehman Bros. Holdings, Inc.*, No. 15-149-BR, 2016 WL 1212079 (2d Cir. Mar. 29, 2016) (upholding a bankruptcy court order that imposed sanctions on a plaintiff who violated a bankruptcy sale order by commencing and continuing to prosecute a lawsuit against the purchaser of a debtor's assets where the purchaser bought the debtor's assets free and clear of claims and liens).

4.      This Court, over objection by the Greater New York Automobile Dealers Association, approved the Wind-Down and other Deferred Termination Agreements, specifically finding, in Paragraph 31 of the Sale Order, that these agreement "represent valid and binding contracts, enforceable in accordance with their terms."   This Court also retained exclusive jurisdiction to enforce and implement these agreements in Paragraph 71 of the Sale Order:

> This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement], . . . and each of the agreements executed in connection therewith, including the **_Deferred Termination Agreements_**, in all respects, including, but not limited to, retaining jurisdiction to . . . (f) resolve any disputes with respect to or concerning the **_Deferred Termination Agreements_**.  [Emphasis added]

5.      In Recital JJ of the Sale Order, the term "Deferred Termination Agreements" is defined to include "Wind-Down Agreements."   Consistent with these provisions, the form of Wind-Down Agreement approved by the Court—and the Bombard WD Agreement itself— provides as follows in Section 13:

> Continuing Jurisdiction.   By executing this Agreement, Dealer hereby consents and agrees that the Bankruptcy Court shall retain, full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto.  The terms of this Section 13 shall survive the termination of this Agreement.

6.      To the extent a dealer asserts any claim that it is not required to comply with its obligations under the Wind-Down Agreement, it must assert that claim in this Court.

**B.      The Bombard WD Agreement**

7.      Before the Petition Date, Mr. Bombard, through his then-dealership, Bombard Car Co., was a party to a Dealer Agreement with Old GM ("**Bombard Dealer Agreement**").  On the Petition Date, Old GM sent Bombard Car Co. notice that the Bombard Dealer Agreement would

09-50026-mg    Doc 14243    Filed 02/27/18    Entered 02/27/18 17:41:26    Main Document
Pg 9 of 17

not continue but be wound down as a GM dealer.[5]  Bombard Car Co. was provided the Bombard
WD Agreement, which Mr. Bombard and Old GM executed in June 2009.  The Bombard WD
Agreement was subsequently assumed and assigned to New GM pursuant to the Sale Order and
Sale Agreement.  Pursuant to Section 3 of the Bombard WD Agreement, Bombard Car Co.
received certain wind-down payments ("**WD Payments**").

8.      Mr. Bombard later sought reinstatement, and New GM offered Bombard Car Co.
a Letter of Intent that Mr. Bombard executed on March 17, 2010 ("**Bombard LOI**").[6]  The
Bombard LOI had multiple conditions that had to be satisfied before Bombard Car Co. could be
reinstated, including (i) establishing and maintaining facilities in accordance with New GM's
facilities requirements, (ii) obtaining appropriate financing and maintaining appropriate net
working capital, and (iii) returning the WD Payments.  *See* Bombard LOI, ¶¶ 2, 7, 8 & 10.  By its
express terms, the Bombard LOI was set to "expire sixty (60) days after execution by Dealer
Company unless an extension is agreed to in writing by the Parties."  *Id.*, ¶ 12.

9.      Mr. Bombard and Bombard Car Co. did not comply with the terms and conditions
in the Bombard LOI.  Consequently, by letter dated July 16, 2010 ("**July 2010 Letter**"), New
GM notified Bombard Car Co. that the Bombard LOI had expired, so the terms of the Bombard
WD Agreement would govern the termination of Bombard Car Co. as a GM dealer.[7]

10.     Pursuant to the terms of the Bombard WD Agreement, the Bombard Dealer
Agreement was terminated on October 31, 2010.  New GM notified Mr. Bombard of this
termination by letter dated November 3, 2010 ("**November 2010 Letter**").[8]

---

[5]    A copy of Old GM's notice to Bombard Car Co. is attached as **Exhibit "D."**

[6]    A copy of the executed Bombard LOI is attached as **Exhibit "E."**

[7]    A copy of the July 2010 Letter is attached as **Exhibit "F."**

[8]    A copy of the November 2010 Letter is attached as **Exhibit "G."**

C.      **Admissions by Mr. Bombard in His Subsequent Bankruptcy Filing**

11.     Nearly three years later, Mr. Bombard commenced a Chapter 11 bankruptcy case on August 28, 2013, in the United States Bankruptcy Court for the Northern District of New York ("**Northern District Bankruptcy Court**"), Case No. 13-31479-5-mcr.[9]  In his petition,[10] Mr. Bombard made multiple admissions—under the penalty of perjury—relevant to this Bombard Motion to Enforce.  In his Schedule B – Personal Property, Mr. Bombard described Bombard Car Co. as an *inactive* franchise:  "Bombard Car Company Inc. doing business as 'Bombard Chevrolet' – Inactive Franchise – 100% owner. Closed and Inactive status."  Under "nature, location and name of business," he listed Bombard Car Co., but he confirmed that it was "no longer operating."  *Id.*  He did not list the Bombard Dealer Agreement as an executory contract in Schedule G to his petition, nor did he list any associated income in Schedule I.

12.     With his bankruptcy petition, Mr. Bombard also filed an "Affidavit Pursuant to LBR 2015-2" ("**LBR 2015-2 Affidavit**").[11]  In it, Mr. Bombard stated as follows:

> ¶ 3    "I formerly operated two businesses in Skaneateles, New York. Those businesses were Bombard Car Co . Inc., doing business as 'Bombard Chevrolet', and You Store it Skaneateles LLC.  However, the car dealership is no longer operational . . . ."

> * * *

> ¶ 5    "Since 1992, I operated Bombard Chevrolet, in Skaneateles New York. The primary business of Bombard Chevrolet was the sale and service of automobiles."

> * * *

---

[9]     In 2012, Mr. Bombard also commenced a bankruptcy case under Chapter 13 of the Bankruptcy Code in the Northern District Bankruptcy Court, but that case was voluntarily dismissed.

[10]    A copy of Mr. Bombard's Chapter 11 petition is attached as **Exhibit "H."**

[11]    A copy of the LBR 2015-2 Affidavit is attached as **Exhibit "I."**

¶¶ 7-8 "However, beginning in 2008, I could no longer effectively operate Bombard Chevrolet due to the problems General Motors faced at that time. The climate of the auto-industry, poor sales, and General Motors financial troubles ultimately closed a once successful family car business. The closing of Bombard Chevrolet substantially strained my ability to meet both my personal and business financial obligations."

\* \* \*

¶ 12 "The financial difficulties from the personal and business debt I accumulated over the years, pending legal actions, and the closing of my businesses, ultimately lead to the foreclosure sale of my former home . . . ."

13.     Mr. Bombard's Chapter 11 bankruptcy case was dismissed on September 19, 2013, at the request of the United States Trustee and Mr. Bombard's mortgage company.

**D.      The Bombard Adjudicatory Proceedings Request**

14.     On December 19, 2017—more than four years after his Chapter 11 proceedings were dismissed—Mr. Bombard filed his Adjudicatory Proceedings Request with the NYDMV. His Statement of Facts is replete with misrepresentations, including that Bombard Car Co. is an authorized GM dealer (a) despite being wound down in 2010, and (b) despite Mr. Bombard's confirmation of that fact—under penalty of perjury—in the Northern District Bankruptcy Court.

15.     For example, in his Statement of Facts for his Adjudicatory Proceedings Request, Mr. Bombard acknowledges executing the Bombard WD Agreement, but he falsely claims that it was "rescinded" within days and that he entered into a "Participation Agreement" with Old GM on June 1, 2009. This so-called "Participation Agreement" is annexed as Exhibit C to Mr. Bombard's Statement of Facts.[12] That document is ***not signed*** by Old GM or New GM. More troubling is that the document appears to have been modified without New GM's knowledge or

---

[12]     While the alleged Participation Agreement is attached as Exhibits C and E to the Adjudicatory Proceedings Request, a stand-alone copy is also attached as **Exhibit "J."**

consent.  All references to "Bombard Car Company" and "Pat Bombard" are in a different font and superimposed on top of the rest of the text.  Moreover, the person who modified the document neglected to modify the signature page, leaving the executing dealer named as "[DEALER ENTITY CORPORATE NAME]".

16.     There is no June 1, 2009 Participation Agreement between Old GM (or New GM) and Bombard Car Co.  Indeed, this Court should not consider anything beyond Mr. Bombard's own admissions—four years *after* he now claims to have executed the "Participation Agreement"—that no such agreement existed and that Bombard Car Co. was not (and had not been) operating.

17.     If there had been a "Participation Agreement" between Mr. Bombard and Old GM or New GM, then there would have been no reason for Mr. Bombard to execute the Bombard LOI in March 2010.  Indeed, the Bombard LOI references an amendment to the Bombard WD Agreement (not the Participation Agreement) upon satisfaction of the conditions listed in the Bombard LOI.[13]

18.     Mr. Bombard also claims in his Statement of Facts that Old GM "rejected summarily" a request for approval of a sale of Bombard Car Co. in 2009, but in its rejection letter dated June 11, 2009 (*i.e.*, Exhibit D to his Statement of Facts), Old GM explained to Mr. Bombard why that proposal was not approved, citing the Bombard WD Agreement:

> Based on GM's review of the Proposal and recent dealer network developments, GM believes that the objectives of the Proposal, as submitted, are not consistent with GM's long term plans for Chevrolet in the subject marketing area.  GM's plans in this regard are reflected in a Wind-Down Agreement dated June 1, 2009 (the "Wind-Down Agreement") for Chevrolet pursuant to which Seller was advised that the Chevrolet Dealer Agreements between it and

---

[13]    *See* Bombard LOI, attached as Exhibit "E," at 1.

GM (the "Dealer Agreement") will not be continued, by GM on a
long-term basis. Consequently, GM is not approving the Proposal.

19.     Next, Mr. Bombard asserts that the "Participation Agreement" expired on October

31, 2010, and a "new Dealership and Sales Agreement was entered by the parties, with an

automatic 5-year renewal term."  This "new" agreement is purportedly annexed as Exhibit F to

Mr. Bombard's Statement of Facts, but Exhibit F is the ***exact same*** document that he attached as

Exhibit C—the suspect 2009 "Participation Agreement" discussed in Paragraphs 15-17 above.

20.     Despite Mr. Bombard's allegations to the contrary, New GM has explained to him

on multiple occasions—first in its November 2010 Letter and, more recently, in a letter dated

January 5, 2016 ("**January 2016 Letter**")[14]—that the Bombard Dealer Agreement terminated

pursuant to the terms of the Bombard WD Agreement on October 31, 2010.

21.     After receiving the Adjudicatory Proceedings Request, New GM, by letter dated

February 6, 2018 ("**February 2018 Letter**"), notified Mr. Bombard that his request contained

legal and factual inaccuracies, specifically asking him to withdraw the Adjudicatory Proceedings

Request.[15]  By e-mail dated February 16, 2018 ("**February 2018 E-Mail**"), counsel for Mr.

Bombard refused, necessitating this motion.[16]

## BASIS FOR RELIEF

22.     Mr. Bombard's Adjudicatory Proceedings Request violates and contravenes the

Sale Order and Sections 2(a), 5 and 13 of the Bombard WD Agreement.  Specifically, Section

2(a) of the Bombard WD Agreement provides, in relevant part, that "Dealer hereby terminates

---

[14]   A copy of the January 2016 Letter is attached as **Exhibit "K."**

[15]   A copy of the February 2018 Letter is attached as **Exhibit "L."**

[16]   A copy of the February 2018 E-Mail is attached as **Exhibit "M."**

the Dealer Agreements by written agreement in accordance with Section 14.2 thereof, such

termination to be effective on October 31, 2010."

        23.      Section 5 of the Bombard WD Agreement contains broad release and covenant

not to sue provisions:

        (a)      Dealer, for itself, its Affiliates and any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors, and assigns (collectively, the 'Dealer Parties'), hereby releases, settles, cancels, discharges, and acknowledges to be fully satisfied any and all claims, demands, damages, debts, liabilities, obligations, costs, expenses, liens, actions, and causes of action of every kind and nature whatsoever (specifically including any claims which are pending in any court, administrative agency or board or under the mediation process of the Dealer Agreement), whether known or unknown, foreseen or unforeseen, suspected or unsuspected ("Claims"), which Dealer or anyone claiming through or under Dealer may have as of the date of the execution of this Agreement against GM, the 363 Acquirer, their Affiliates or any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors or assigns (collectively, the "GM Parties"), arising out of or relating to (i) the Dealer Agreement or this Agreement, (ii) any predecessor agreement(s), (iii) the operation of the dealership for the Existing Model Line, (iv) any facilities agreements, including without limitation, any claims related to or arising out of dealership facilities, locations or requirements, Standards for Excellence ("SFE") related payments or bonuses (except that GM shall pay any SFE payments due Dealer for the second (2nd) quarter of 2009 and neither GM nor the 363 Acquirer, as applicable, shall collect any further SFE related payments from Dealer for the third (3rd) quarter of 2009 or thereafter), and any representations regarding motor vehicle sales or profits associated with Dealership Operations under the Dealer Agreement, or (v) any other events, transactions, claims, discussions or circumstances of any kind arising in whole or in part prior to the effective date of this Agreement, provided, however, that the foregoing release shall not extend to (x) reimbursement to Dealer of unpaid warranty claims if the transactions giving rise to such claims occurred within ninety (90) days prior the date of this Agreement, (y) the payment to Dealer of any incentives currently owing to Dealer or any amounts currently owing to Dealer in its Open Account, or (z) any claims of Dealer pursuant to Section 17.4 of the Dealer Agreement, all of which amounts described in (x) - (z) above of this sentence shall be subject to setoff by GM or the 363 Acquirer, as applicable, of any amounts due or to become due to either or any of its Affiliates.  GM or the 363 Acquirer, as applicable, shall not charge back to Dealer any warranty claims approved and paid by GM or the 363 Acquirer, as applicable, prior to the effective date of termination, as described in Section 2 above, after the later to occur of (A) the date six (6) months following payment, or (B) the effective date of termination, except that GM or the 363 Acquirer, as

9

applicable, may make charge-backs for false, fraudulent or unsubstantiated claims within two (2) years of payment.

· · ·

(c)     Dealer, for itself, and the other Dealer Parties, hereby agrees not to, at any time, sue, protest, institute or assist in instituting any proceeding in any court or administrative proceeding, or otherwise assert (i) any Claim that is covered by the release provision in subparagraph (a) above or (ii) any claim that is based upon, related to, arising from, or otherwise connected with the assignment of the Dealer Agreement or this Agreement by GM to the 363 Acquirer in the 363 Sale, if any, or an allegation that such assignment is void, voidable, otherwise unenforceable, violates any applicable law or contravenes any agreement. As a result of the foregoing, any such breach shall absolutely entitle GM or the 363 Acquirer, as applicable, to an immediate and permanent injunction to be issued by any court of competent jurisdiction, precluding Dealer from contesting GM's or the 363 Acquirer's, as applicable, application for injunctive relief and prohibiting any further act by Dealer in violation of this Section 7 [sic].  In addition, GM or the 363 Acquirer, as applicable, shall have all other equitable rights in connection with a breach of this Section 7 [sic] by Dealer, including, without limitation, the right to specific performance.

24.     These provisions—contained in a Court-approved agreement—bar Mr. Bombard from (i) asserting claims against New GM based upon the Bombard Dealer Agreement or the Bombard WD Agreement, and (ii) pursuing his claims in the NYDMV.  Under Section 5(c) of the Bombard WD Agreement, New GM is entitled to seek injunctive relief prohibiting Mr. Bombard from maintaining his Adjudicatory Proceedings Request, and Mr. Bombard is precluded from contesting that injunctive relief.

25.     Under these circumstances, the Court should enforce the terms of the Sale Order and Section 5 of the Bombard WD Agreement by ordering Mr. Bombard to withdraw his Adjudicatory Proceedings Request with the NYDMV with prejudice, to cease and desist from all efforts to assert the claims asserted in the Adjudicatory Proceedings Request, and to cease and

desist from taking any action or attempting in any way to avoid the terms of the Bombard WD Agreement.[17]

26.     This Court retained exclusive jurisdiction "to enforce and implement the terms and provisions of this [Sale] Order, the [Sale Agreement], . . . and . . . *the Deferred Termination Agreements*."  Sale Order, ¶ 71 (emphasis added).  Moreover, under Section 13 of the Bombard WD Agreement, this Court retained "exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of [the Bombard WD Agreement] and any other matter related thereto."  Mr. Bombard's filing of his Adjudicatory Proceedings Request with the NYDMV, by itself, violated the Sale Order and Bombard WD Agreement.

27.     Under these facts and circumstances, the relief requested in this Bombard Motion to Enforce is appropriate and should be granted in all respects.

## NOTICE

28.     Notice of this Bombard Motion to Enforce has been provided to counsel for Mr. Bombard and all entities that receive electronic notice from the Bankruptcy Court's ECF system. New GM submits that such notice is sufficient and no other or further notice need be provided.

29.     No prior request for the relief sought in this Bombard Motion to Enforce with respect to Mr. Bombard or the Bombard Car Co. has been made to this or any other court.

WHEREFORE, New GM respectfully requests that this Court enter an order, substantially in the form set forth in **Exhibit "N,"** granting the relief sought herein, and for such other and further relief as this Court may deem just and proper.

---

[17]     For the reasons previously stated, there was no Participation Agreement between Bombard Car Co. (or Mr. Bombard) and Old GM or New GM after the Petition Date.  The Bombard WD Agreement is the controlling agreement.

Dated:  New York, New York
        February 27, 2018

                                    Respectfully submitted,


                                         /s/ Arthur Steinberg
                                    Arthur Steinberg
                                    Scott Davidson
                                    KING & SPALDING LLP
                                    1185 Avenue of the Americas
                                    New York, New York  10036
                                    Telephone:     (212) 556-2100
                                    Facsimile:     (212) 556-2222

                                    *Attorneys for General Motors LLC*