THE MEMMEN LAW FIRM, LLC
505 North LaSalle Drive, Suite 500
Chicago, Illinois 60654
Telephone: 312.878.2357
Facsime: 312.794.1813
Alexander McH. Memmen (*pro hac vice pending*)
Attorney for Moore, *et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                          :    Chapter 11
                                                                :
MOTORS LIQUIDATION COMPANY, *et al.*,                           :    Case No.: 09-50026 (MG)
         f/k/a General Motors Corp., *et al.*                   :
                                                                :    (Jointly Administered)
                        Debtors.                                :
-----------------------------------------------------------------x

OBJECTION TO GENERAL MOTORS' MOTION TO ENFORCE THE BANKRUPTCY
COURT'S JULY 2009 SALE ORDER AND THE RULINGS IN CONNECTION
THEREWITH, WITH RESPECT TO THE MOORE, *ET AL.* PLAINTIFFS

# **TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................1

FACTUAL BACKGROUND................................................................................................3

    I.     Old GM's Bankruptcy and Sale......................................................................3

          A. The Ignition Switch Claims..................................................................4

    II.    The Moore Lawsuit..........................................................................................6

OBJECTION........................................................................................................................7

    I.     Due Process Demands that the Moore Plaintiffs be Allowed

         to Proceed with their Claims.........................................................................7

         A. The Moore Plaintiffs were entitled to notice of the Old GM bankruptcy............8

         B. The Moore Plaintiffs were prejudiced by lack of actual notice.......................10

    II.   Because They Were Denied Due Process, The Moore Plaintiffs May Assert in The

         Michigan Trial Court That New GM Has Successor Liability.........................11

    III.  The Moore Plaintiffs' Independent Claims Must be Allowed to Continue

         Against New GM............................................................................................12

    IV.  The Moore Plaintiffs' Claims include Assumed Liabilities for Violations of

         Environmental Law and Remediation............................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

*Elliott, et al. v. General Motors LLC (In re: Motors Liquidation Company),*
    829 F.3d 135 (2d Cir. 2016). ........................................... 4, 5, 6, 7, 8, 9, 10, 11, 12

U.S. Const. amend V.................................................................................................. 8

*In re: Motors Liquidation,*
    541 B.R. 104 (S.D.N.Y. 2015)............................................................................ 9

In re Motors Liquidation Co.,
    568 B.R. 217 (Bankr. S.D.N.Y. 2017)............................................................... 10

In re: General Motors LLC Ignition Switch Litigation,
    2017 WL
6509256.................................................................................................................. 12

For their Response in Opposition to the Motion by General Motors LLC to Enforce the Bankruptcy Court's July 5, 2009 Sale Order and the Rulings in Connection Therewith, the Moore, et al. Plaintiffs [Dkt. No. 14242], Terry Moore, Ellen Moore, David O'Nions, Diane O'Nions, Joellen Pisarczyk, and Marvin Pisarczyk, and all others similarly situated (collectively the "Moore Plaintiffs"), as pleaded in the case captioned *Terry Moore, et al. v General Motors, LLC*, United States District Court for the Eastern District of Michigan, Case No. 2:17-cv-14226-NGE-SDD (the "Moore Lawsuit")[1], state as follows:

## INTRODUCTION

The Moore Plaintiffs are a group of homeowners who live in close proximity to the Milford Proving Grounds in Livingston County, Michigan. In the Moore Lawsuit, the Moore Plaintiffs allege that beginning at least as early as 1985 and through the July 10, 2009 (the "363 Sale Closing Date"), Old GM[2] deposited large amounts of sodium chloride onto the Milford Proving Grounds contrary to various environmental laws and in a negligent manner contaminating the groundwater beneath the Milford Proving Grounds and in the surrounding area. The Moore Plaintiffs also allege that after the 363 Sale Closing Date and through the present date, New GM continued to deposit large amounts of sodium chloride onto the Milford Proving Grounds contrary to various environmental laws and in a negligent manner contaminating the groundwater, and has, to date failed and refused to remediate the property. The Moore Plaintiffs further allege that Old GM and New GM fraudulently concealed the sodium chloride contamination. The Moore Plaintiffs allege

---

[1]   The class pleaded in the Moore Lawsuit has not yet been certified.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion to Enforce.

219423890.3 50304/185579

that the contamination "drifted" onto Plaintiffs' properties and caused pecuniary and personal injuries.[3]

Through the Motion to Enforce, New GM requests that the Court enforce the Sale Order by: (a) enjoining the Moore Plaintiffs from proceeding with the Moore Lawsuit until the Amended Complaint is further amended to remove references to New GM as a successor to Old GM and to reflect previous rulings of the Bankruptcy Court; (b) striking counts III, IV, V, VI and VII from the Moore Plaintiffs' Complaint; (c) requiring that the Moore Plaintiffs modify the independent fraud, negligence, trespass, private nuisance and public nuisance causes of action asserted against New GM; and, (d) requiring that the Moore Plaintiffs remove demands for exemplary and punitive damages from Plaintiffs' fraud-based claims.

The Court should deny the Motion to Enforce because (1) to the extent that the Sale Order could be construed as barring the Moore Plaintiffs' claims, the Moore Plaintiffs' rights to due process were violated because Old GM did not provide actual mailed notice of the 363 Sale, even though Old GM knew about the Moore Plaintiff's claims;[4] (2) the Sale Order does not prohibit the Moore Plaintiffs from pursuing the independent claims against New GM from the 363 Sale Closing Date to the present; and (3) New GM assumed liabilities for violations of environmental law and remediation

---

[3]   The Moore Plaintiff's Amended Complaint, attached hereto as Exhibit A, include a complete recitation of the claims and causes of action alleged in the Moore Lawsuit.

[4]   *Elliott, et al. v. General Motors LLC (In re: Motors Liquidation Company)*, 829 F.3d 135 (2d Cir. 2016).

2

## FACTUAL BACKGROUND

**I.     Old GM's Bankruptcy and Sale**

On June 1, 2009, Old GM filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

On July 5, 2009, the Bankruptcy Court entered the *Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief* (the "Sale Order"). The Sale Order approved the *Master Sale and Purchase Agreement* (the "Purchase Agreement"). The Sale closed on July 10, 2009 (the "363 Sale Closing Date").

Pursuant to the terms of the Purchase Agreement, Old GM sold the Transferred Real Property to New GM, which Transferred Real Property included the Milford Proving Grounds. Purchase Agreement at § 2.2(a)(vi).

Pursuant to the terms of the Purchase Agreement, New GM assumed certain identified Liabilities, including but not limited to:

> all Liabilities arising under any Environmental Law (A) relating to conditions present on the Transferred Real Property, other than those Liabilities described in Section 2.3(b)(iv), (B) resulting from Purchaser's ownership or operation of the Transferred Real Property after the Closing or (C) relating to Purchaser's failure to comply with Environmental Laws after the Closing;

Purchase Agreement at § 2.3(a)(viii).

In relevant part, Section 2.3(b)(iv) of the Purchase Agreement provides:

3

>   (b) Each Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability of any Seller, whether occurring or accruing before, at or after the Closing, other than the Assumed Liabilities. In furtherance and not in limitation of the foregoing, and in all cases with the exception of the Assumed Liabilities, neither Purchaser nor any of its Affiliates shall assume, or be deemed to have assumed, any Indebtedness, Claim or other Liability of any Seller or any predecessor, Subsidiary or Affiliate of any Seller whatsoever, whether occurring or accruing before, at or after the Closing, including the following (collectively, the "Retained Liabilities"):
>
>> (iv) all Liabilities (A) associated with noncompliance with Environmental Laws (including for fines, penalties, damages and remedies); (B) arising out of, relating to, in respect of or in connection with the transportation, off-site storage or off-site disposal of any Hazardous Materials generated or located at any Transferred Real Property; (C) arising out of, relating to, in respect of or in connection with third-party Claims related to Hazardous Materials that were or are located at or that migrated or may migrate from any Transferred Real Property, except as otherwise required under applicable Environmental Laws; (D) arising under Environmental Laws related to the Excluded Real Property; or (E) for environmental Liabilities with respect to real property formerly owned, operated or leased by Sellers (as of the Closing), which, in the case of clauses (A), B) and (C), arose prior to or at the Closing, and which, in the case of clause (D) and (E), arise prior to, at or after the Closing;

Purchase Agreement at § 2.3(b)(iv).

The Sale Order provides, in relevant part: "Except for the Assumed Liabilities, pursuant to sections 105(a) and 363 (f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser in accordance with the [Purchase Agreement], and, upon the Closing, shall be free and clear of all liens, claims, encumbrances . . . [.]" Sale Order at ¶ 7.

### A.     The Ignition Switch Claims

In February of 2014, New GM began recalling cars due to defects in their ignition switches. *Elliott v. General Motors, LLC (In the Matter of Motors Liquidation Company)*,

4

829 F.3d 135, 143 (2d. Cir. 2016). Many of these cars were built years before Old GM's bankruptcy, and notwithstanding the Sale Order, filed class action lawsuits against New GM asserting "successor liability" claims and requesting damages for losses and injuries arising from the ignition switch defect and other defects. *Id.* As described by the Second Circuit, New GM argued that because of the "free and clear" provisions of the Sale Order, the claims could only be brought against Old GM, not new GM. *Id.*

In *Elliott*, the Second Circuit first determined that the "free and clear" provisions of the Sale Order covered "pre-closing accident claims and economic loss claims based on the ignition switch and other defects" but "does not cover independent claims or Used Car Purchasers' claims" and affirmed the Bankruptcy Court's decision not to enjoin independent claims and reversed the Bankruptcy Court's decision to enjoined its decision to enjoin the Used Car Purchasers' claims. *Id.* at 157-158 (citations omitted). The *Elliott* Court thus noted that the "Sale Order, if enforced, would thus bar those claims." *Id.* at 158.

The *Elliott* Court affirmed the Bankruptcy Court's finding that Old GM knew or should have known with reasonable diligence about the defects and concluded that "[i]ndividuals with claims arising out of the ignition switch defect were entitled to notice by direct mail or some equivalent, as required by procedural due process." *Id.* at 161. After determining that it "need not decide whether prejudice is an element when there is inadequate notice of a proposed § 363 sale," finding that the plaintiffs had demonstrated prejudice, and concluding that the terms of the Sale Order and the Purchase Agreement may have been different had the ignitions switch plaintiffs had an opportunity to be heard during the bankruptcy case, the *Elliott* Court, "reverse[d] the bankruptcy court's decision insofar as it enforced the Sale Order to enjoin claims relating to the ignition switch defect.

... Because enforcing the Sale Order would violate procedural due process in these circumstances, the bankruptcy court erred in granting New GM's motion to enforce and these plaintiffs thus cannot be 'bound by the terms of the [Sale] Order[].'" *Elliott* at 161-166.

## II.    The Moore Lawsuit

The Moore Plaintiffs allege a course of conduct that encompasses actions by both New GM and Old GM. The Milford Proving Grounds (the "MPG") have been in use by Old GM and New GM since 1924. In 1985, GM commissioned an engineering firm, McNamee, Porter and Seeley to conduct a water supply study at the MPG. The study revealed concentrations of sodium chloride in the MPG wells above USEPA standards and that "[r]oad salts appear to be a major source of chloride at the proving grounds." See, Exhibit B.

In 1997, the Michigan Department of Environmental Quality (the "MDEQ") learned of the sodium chloride contamination after a developer reportedly found high chlorides in the shallow aquifer when it started drilling wells for homes to be built to the southwest of the Milford Proving Grounds. The MDEQ and the Livingston County Health Department did their own testing and found high levels of sodium chloride in the MPG and at The Oaks, a residential neighborhood to the southwest of the MPG and the location of the Moore Plaintiff's homes. See, Exhibit H, June 17, 1997 letter from MDEQ. The MDEQ provided testing results to Old GM on October 2, 1997. See, Exhibit C.

In May 1998, the MDEQ wrote letters to the developer of the Oaks advising of the high levels of sodium chloride and that the levels were above residential health-based drinking water criteria. Old GM was made aware of the MDEQ's letters to the developer of the Oaks and, during a meeting with the MDEQ on May 29, 1998, denied liability for the sodium chloride contamination

6

and demanded that the MDEQ retract the letters. At that time, Old GM knew or should reasonably have known: 1) that the sodium chloride contamination existed; 2) that the MDEQ believed Old GM was responsible; and 3) that the contamination had likely "migrated" into the Oaks development. Old GM never gave any notice to the residents of the Oaks, including the Moore Plaintiffs, that the MPG was the likely source of the sodium chloride contamination.

The Moore Plaintiffs complaint brings counts against New GM for: 1) the independent actions of New GM after the July 5, 2009 Sale Order; and 2) the actions of Old GM based on successor liability. The Amended Complaint separates the claims between those relating to Old GM (counts I through VII) and those independent of Old GM (counts VIII through XIV). The independent claims allege actions by New GM after the July 5, 2009 Sale Order. These claims are independent of actions by Old GM and do not implicate the Sale Order.

## **OBJECTION**

It is undisputed that the Moore Plaintiffs never received actual notice of the bankruptcy. The Moore Plaintiffs should be allowed to proceed with all claims against New GM, because, like the ignition switch plaintiffs, they were never given actual notice of the bankruptcy in violation of the Due Process Clause of the United States Constitution. As discussed, *infra*, the Moore Plaintiffs are analogous to the plaintiffs in *Elliott, et al. v. General Motors LLC (In re: Motors Liquidation Company)*, 829 F.3d 135 (2d Cir. 2016). "Because enforcing the Sale Order would violate procedural due process in these circumstances, [...] these plaintiffs thus cannot be 'bound by the terms of the [Sale] Order." *Id.* at 166.

**I.    Due Process Demands that the Moore Plaintiffs be Allowed to Proceed with their Claims.**

7

The Due Process Clause provides, "[n]o person shall [...] be deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. Due process requires that potential claimants be given adequate notice of a Chapter 11 bankruptcy proceeding. The type of notice required depends on whether Old GM knew about potential claimants and, potentially, whether those claimants were prejudiced by the lack of notice.

Due process analysis of notice of the 363 sale requires answers to two issues: 1) whether Plaintiffs were entitled to notice by direct mail; and 2) whether Plaintiffs were prejudiced by lack of adequate notice. Due process requires actual notice to claimants where Old GM knew of potential claims prior to the bankruptcy and where claimants had no previous contact or relationship with Old GM. *Elliott, et al. v. General Motors LLC (In re: Motors Liquidation Company)*, 829 F.3d 135 (2d Cir. 2016). Claimants were prejudiced where they were denied a seat at the negotiating table as a result of the lack of notice.

**A. The Moore Plaintiffs were entitled to actual notice of the Old GM Bankruptcy.**

The Second Circuit has already examined and decided the issue of what notice was required to satisfy due process for the Moore Plaintiffs. *Elliott, et al. v. General Motors LLC (In re: Motors Liquidation Company)*, 829 F.3d 135 (2d Cir. 2016). There, Plaintiffs were victims of faulty ignition switches produced by Old GM, where injuries took place before and after the §363 sale was completed. *Id.* at 148-150. Old GM produced cars with faulty ignition switches starting in the fall of 2002, despite knowledge that there were problems with the switch. *Id.* at 149. New GM first informed the National Highway Traffic Safety Administration of the defect on February 7, 2014 and did not begin recalls until that time. *Id.* at 150.

The court concluded that because Old GM knew or with reasonable diligence should have known of the ignition switch claims, plaintiffs were entitled to actual or direct mail notice, but

8

received only publication notice. *Id.* at 159-161. Old GM knew who purchased its cars, knew that there was a problem with the cars but gave no actual notice to potential claimants. *Id.*

There is no dispute in this case that the Moore Plaintiffs received only publication notice. The Moore Plaintiffs first learned of a possible claim against New GM in October 2014, when New GM abandoned previous denials and notified MDEQ and local residents, including the Moore Plaintiffs that sodium chloride contamination had been coming from the Milford Proving Grounds. See, Exhibit D. Old GM knew about the sodium contamination since at least 1985 and knew that it had migrated to neighboring properties since at least 1997 when the MDEQ informed them of the contamination. See, Exhibits B and C.

Knowledge of Old GM personnel can be imputed to New GM on claims to the extent that New GM had that knowledge as well. *In re: Motors Liquidation*, 541 B.R. 104, 114-116 (S.D.N.Y. 2015). To the extent as a matter of non-bankruptcy law that knowledge may be imputed as a consequence of documents in a company's files, documents in New GM's files may be utilized as predicate of that knowledge, even if they came into being before the sale from Old GM to New GM. *Id.*

Old GM knew of the sodium chloride contamination at the Milford Proving Grounds as early as 1985. See, Exhibit B. Old GM also knew at that time that the contamination was a problem, which would require remediation to ensure the safety of its own employees and the usability of its own water wells. See, Exhibit B.

Old GM knew that the sodium chloride contamination had migrated to surrounding properties prior to the 2009 bankruptcy because they were informed of the issue by the MDEQ as early as 1997. See, Exhibit C. Old GM vigorously denied the claims, but at a minimum, Old GM

knew or should have known that they were the – or at least one – source for sodium chloride contamination on surrounding properties.

"The facts paint a picture that Old GM did nothing, even as it knew that the ignition switch defect impacted consumers." *Elliott*, 829 F.3d at 159. Similarly, Old GM knew or should have known that residents living near the Milford Proving Grounds were potentially impacted by releases of sodium chloride onto their property. Worse still, Old GM took active measures to fight the MDEQ and to dispute the nature of the contamination: for seventeen years Old GM and then New GM fought the MDEQ on one hand while declining to inform its neighbors of the contamination and the likelihood that Old GM (and, later, New GM) was the source of the contamination. See, Exhibit E, Groundwater Quality Assessment Report. Old GM even filed suit against the MDEQ, seeking to end the MDEQ's investigation into Old GM's contamination of the property and to avoid any consequences of the contamination. See, Exhibit F, Complaint for Declaratory and Injunctive Relief, General Motors Corp. v. Michigan Department of Environmental Quality, No. 00-92551.

Inasmuch as Old GM knew or should have known about the sodium chloride contamination and migration prior to the 2009 bankruptcy, due process required that actual notice be given to potential claimants, including the Moore Plaintiffs. "[B]ecause parties holding future claims cannot possibly be identified and, thus, cannot be provided notice of the bankruptcy, courts consistently hold that, for due process reasons, their claims cannot be discharged by the bankruptcy courts' orders." *In re Motors Liquidation*, 568 B.R. 217, 229 (S.D.N.Y. June 7, 2017).

### B. The Moore Plaintiffs were prejudiced by lack of actual notice.

Prejudice is not a necessary factor in this analysis (*Elliott*, 829 F.3d at 161-62). Even if it were, the lack of actual notice prejudiced the Moore Plaintiffs. "[T]he relevant inquiry is whether

219423890.3 50304/185579

courts can be confident in the reliability of prior proceedings when there has been a procedural defect." "[I]f [the court] cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," then it must find a procedural due process violation. 829 F.3d 135 at 163. The Second Circuit in *Elliott*, assuming *arguendo* that prejudice was required to find a due process violation, found that the ignition switch plaintiffs were prejudiced by the lack of notice. "[W]e cannot say with fair assurance that the outcome of the § 363 sale proceedings would have been the same had Old GM disclosed the ignition switch defect and these plaintiffs voiced their objections to the "free and clear" provision. Because we cannot say with any confidence that no accommodation would have been made for them in the Sale Order, we reverse." *Id.* at 163.

Similarly, the Moore Plaintiffs were prejudiced when they missed the chance to sit at the negotiating table with other potential creditors. It cannot be known whether New GM would have made concessions for the Moore Plaintiffs in the same way concessions were made for other claimants, including claimants who lacked legal grounds to avoid the protections of the § 363 sale.

## II.    Because They Were Denied Due Process, The Moore Plaintiffs May Assert In The Michigan Trial Court That New GM Has Successor Liability

New GM cites to the Court's December 2015 Judgment in support of the argument that the Moore Plaintiffs may not proceed with claims relating to successor liability. However, that ruling did not include the Second Circuit's due process analysis, which is essential to the Moore Plaintiffs' argument here. As the Second Circuit held in *Elliott*, Old GM's failure to give adequate notice to the Moore Plaintiffs of the bankruptcy allows them to assert claims for successor liability here. *Elliott*, 829 F.3d at 163-66.

11

If the Court determines that the Moore Plaintiffs' due process rights were violated when Old GM failed to give them actual notice of the bankruptcy, the next question is whether New GM is a successor of Old GM under Michigan laws. This Court has previously held that questions regarding successor liability should be left to the state courts. "[T]he issue whether state law recognized a successor liability claim in the circumstances was left to the state court to decide." *In re Motors Litigation*, 568 B.R. 217 (S.D.N.Y. 2017). The Court has left such analysis to the trial court in the ignition switch proceedings. See *In re: General Motors LLC Ignition Switch Litigation*, 2017 WL 3382071 (S.D.N.Y. Aug. 3, 2017); *In re: General Motors LLC Ignition Switch Litigation*, 2017 WL 6509256 (S.D.N.Y. Dec. 19, 2017). Similarly, the Court should leave the question of successor liability in this case to the state or local district court in Michigan.

### III. The Moore Plaintiffs' independent claims must be allowed to continue against New GM

The Moore Plaintiffs allege a continuing course of conduct, beginning at least as early as 1985 and continuing through the present day and involving actions by both Old and New GM. At the very least, the Moore Plaintiffs' claims against New GM for the conduct of New GM should be allowed to continue as independent claims.

In an attempt to remedy New GM's objections to Plaintiff's Complaint, Plaintiffs filed an amended complaint attempting to distinguish between the wrongful acts of New GM and Old GM. Plaintiffs' Amended Complaint contains claims against both New and Old GM, separated out into separate counts. Counts I through VII allege claims against Old GM, while counts VIII through XIV allege claims specifically against New GM. As these are claims against New GM for the actions of New GM, they do not implicate the Sale Order and are not subject to the protections of the 2009 bankruptcy. The Moore Plaintiffs' Complaint specifically states that counts X, XI, XII,

XIII, and XIV are against New GM exclusively for the conduct of New GM after the Sale Order was entered. These claims have nothing to do with Old GM. At a minimum, these independent claims should be permitted to proceed.

### IV. The Moore Plaintiffs' Claims Include Assumed Liabilities for Violations of Environmental Law and Remediation.

As stated, supra, New GM assumed certain liabilities as part of the Purchase Agreement. Specifically,

> all Liabilities arising under any Environmental Law (A) relating to conditions present on the Transferred Real Property, other than those Liabilities described in Section 2.3(b)(iv), (B) resulting from Purchaser's ownership or operation of the Transferred Real Property after the Closing or (C) relating to Purchaser's failure to comply with Environmental Laws after the Closing;

The Moore Plaintiffs bring counts I, II, VIII and IX of their complaint for Old GM and New GM's failure to comply with Michigan environmental laws. Specifically, the Moore Plaintiffs claim that Old GM and New GM violated the Michigan Natural Resources and Environmental Protection Act (counts I and VIII) and the Michigan Environmental Protection Act (counts II and IX). Pursuant to the Purchase Agreement, these are assumed liabilities and the Moore Plaintiffs should be allowed to proceed with them as pleaded.

WHEREFORE, Terry Moore, *et al.* respectfully request that this Court enter an order denying New GM's motion to apply the July 5, 2009 Sale Order to the Moore Plaintiffs, and for such further relief as this Honorable Court deems just.

Dated: Chicago, Illinois
March 21, 2018

Respectfully submitted,

219423890.3 50304/185579

/s/Alexander McH. Memmen
Alexander McH. Memmen
THE MEMMEN LAW FIRM, LLC
505 North LaSalle, Suite 500
Chicago, Illinois 60654
P. 312.878.2357
F. 312.794.1813
E. amm@memmenlaw.com

14

219423890.3 50304/185579