# Exhibit A

1   Pat J. Bombard
    5 Wheeler Ave
2   Fayetteville, NY 13066
    (315) 382-9464
3   summerwinds@gmail.com

4

5   UNITED STATES BANKRUPTCY COURT

6   SOUTHERN DISTRICT OF NEW YORK

7

8   MOTORS LIQUIDATION COMPANY          Chapter 11

9   ET AL.,F/K/A GENERAL MOTORS.,ET AL,

10  DEBTORS.                            Case No.: 09-50026 (MG)

11  PLANTIFF

12  vs.                                 (Jointly Administered)

13  PAT J. BOMBARD,

              Defendant                 MOTION TO DISMISS

             Re: Notice Pursuant to NYS Vehicle and Traffic Law 471-a.  The defendant hereby

17  moves the court to dismiss Plaintiff's Complaint with prejudice.  Your attention is directed to the

18

19  automatic stay provisions, without bond, under Vehicle and Traffic Law Sections 463(2)(e)(1),

20  465(7) and CPLR 3211(a) (2) (4) (5).  The basis for this Motion are set forth in the accompanied

21  Memorandum.

22

23

24                                      Dated this 13th of March, 2018.

25

26

27                                      Pro Se
                                        Pat J. Bombard
28

1 – MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pat J. Bombard
5 Wheeler Ave
Fayetteville, NY 13066
(315) 382-9464
summerwinds@gmail.com

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOTORS LIQUIDATION COMPANY | Chapter 11 |
| ET AL.,F/K/A GENERAL MOTORS.,ET AL, | |
| DEBTORS. | Case No.: 09-50026 (MG) |
| PLAINTIFF | |
| vs. | (Jointly Administered) |
| PAT J. BOMBARD, | |
| Defendant | MOTION TO DISMISS |

## **FACTS**

I am providing the court copies of the following:

- A letter written to Deborah F. Collins, Esq., October 16, 2017.

- The NYS Department of Motor Vehicles, Request for Adjudicatory Proceeding, December 19, 2017.

- State of New York – Department of Motor Vehicles, Safety and Business Hearing Bureau, Notice of Hearing, in the matter of Pat J. Bombard DBA Bombard Car Company, Inc. Date of Hearing: April 23, 2018, Time of Hearing: 9:00 a.m.

- CPLR 3211 (a)(2) (4)(5) other action pending

2 - MOTION TO DISMISS

- **The United States Court of Appeals for the Second Circuit has ruled in the dealer franchise favor. I am providing a copy of the decision, Decided: December 29, 2016, Docket Nos. 13-4066, 13-4310.**

## ARGUMENT

Plaintiff's claim must be dismissed because it is without merit based upon all documents provided to the court. They are clearly trying to hurt the defendant by using bankruptcy court as a way to delay and cause financial and personal damage.

The United States Court of Appeals for the Second Circuit has ruled in the dealer franchise favor. I am providing a copy of the decision, Decided: December 29, 2016, Docket Nos. 13-4066, 13-4310.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss should be granted.

Dated this 13th of March, 2018.

Pro Se
Pat J. Bombard

3 - MOTION TO DISMISS

# The GUY LAW FIRM PLLC

October 16, 2017

Deborah F. Collins, Esq.
Counsel GM Legal Staff
300 Renaissance Center
Detroit, Michigan 48265

**Re: Notice Pursuant to NYS Vehicle and Traffic Law 471-a**

Dear Deb

Pursuant to Section 471-a of the NYS Vehicle and Traffic Law, I am writing on behalf of my client, Pat Bombard, to formally request mediation of the dispute that you have maintained against his demand for renewal of his Franchise Agreement with GM.

As you have not responded to my repeated requests that you agree to terms for mediation, I will rely on the procedure set in Section 471-a to request your response within seven days.

Thereafter, we will proceed with a request under Section 471-b of the NYS Vehicle and Traffic Law to have the Commissioner of the Department of Motor Vehicles adjudicate your dispute of our franchise rights.

Sincerely,

Frederick R. Guy, Esq.

**3596 PLEASANT VALLEY RD, SYRACUSE, NEW YORK 13215**
*Phone*: 315.314.7461 * *Fax*: 315.254.2126 * rickguy7@gmail.com * www.rickguy.com

# *The* GUY LAW FIRM *PLLC*

December 19, 2017

NYS Department of Motor Vehicles
Division of Safety and Business Hearings
6 Empire State Plaza
Albany, NY 12228

Re: Request of Pat Bombard for an Adjudicatory Hearing

Dear Commissioner,

Enclosed please find NYS Form AA-71 comprising a Statement of Facts supporting Mr. Pat Bombard's claim against General Motors Corporation for having repeatedly violating the provisions of Article 17-A of the NYS Franchised Motor Vehicle Dealer Act, together with the required documentation supporting his claim. The $2,000.00 fee is also enclosed.

We are requesting an adjudicatory hearing so his claim and witnesses in support of it may me be heard by the Commissioner as soon as practicable.

Please do not hesitate to contact me if any further information is required.

Sincerely,

Frederick R. Guy, Esq.

enc.
cc: GM Counsel Deb Collins

 **Department of Motor Vehicles**

**Franchised Motor Vehicle Dealer**
**REQUEST FOR ADJUDICATORY PROCEEDING**
Division of Safety & Business Hearings
Telephone: (518) 474-1509
Fax:  (518) 473-8505

## COMPLETE THE INFORMATION REQUESTED BELOW. PLEASE PRINT.

Name: **Pat J. Bombard**          AKA/DBA **Bombard Car Company, Inc.**

Address *(include number & Street)* **5 Wheeler Ave.**

City **Fayetteville**          State **NY**   Zip Code **13066**   Telephone # **( 315 ) 382-9464**

Dealer Certificate of Registration No.: **7058987**          Represented by: **Frederick R. Guy, Esq**

*Requests a New York State Department of Motor Vehicles Adjudicatory proceeding with:*

Franchisor **General Motors Corporation - Chevrolet**

Address *(include number & Street)* **General Motors Global Headquarters**

City **Detroit**          State **MI**   Zip Code **48625**   Telephone # **( 313 )667-9844**

Represented by *(if known):* **Deborah F. Collins, Esq.**

Address *(include number & Street)* **300 Renaissance Center**

City **Detroit**          State **MI**   Zip Code **48625**   Telephone # **( 313 ) 667-9844**

### INSTRUCTIONS FOR REQUEST

1) All documents relevant to the claim(s) made in this request, including all correspondence between the dealer and franchisor, must accompany this request when it is filed with the Commissioner. Include a copy of the current franchise agreement that exists between the dealer and the franchisor, and a copy of the certificate of service (see Instruction #2). Submit to:

> NYS Department of Motor Vehicles
> Div. Safety and Business Hearings, Room 424A
> 6 Empire State Plaza
> Albany, NY  12228

2) At the time this request is filed with the Commissioner, a true copy of this request, with copies of all documents filed with it, must be served upon the franchisor in any manner specifically permitted under the terms of the franchise agreement or, if no such manner is specified, then via certified mail, return receipt requested,  addressed to the officer or employee of the franchisor from whom the dealer has received correspondence relevant to the claims made in this request.

3) This request must be accompanied by a non-refundable filing fee of two thousand dollars ($2,000). Attach a certified check or money order payable to the Commissioner of Motor Vehicles.

4) In a short, plain statement present the facts that support your claim that the franchisor has violated one or more specific provisions of Article 17-A Franchised Motor Vehicle Dealer Act. Also, describe your request for a specific remedy other than damages. *(Use additional sheets as necessary.)*

**Please See Attached Statement of Facts and Supporting Documentation**

Your attention is directed to the automatic stay provisions, without bond, under Vehicle and Traffic Law Sections 463(2)(e)(1) and 465(7).

_____          **12/19/2017**
Please Sign Here          Date

AA-71 (2/15)

## STATE OF NEW YORK - DEPARTMENT OF MOTOR VEHICLES
### 6 Empire State Plaza, Albany, New York  12228

Division of Safety and Business Hearings   Tel: (518) 474-1509   Fax: (518) 473-8505

| | |
|---|---|
| SAFETY AND BUSINESS HEARING BUREAU<br>NOTICE OF HEARING<br><br>in the matter of<br>Pat J. Bombard DBA  Bombard Car Company, Inc.<br><br>Dealer/Franchisee<br>and<br>General Motors Corporation-Chevrolet<br><br>Franchisor<br><br>RESPONDENT | Case No.   FMD201801<br><br>Date of Hearing: April 23, 2018<br>Time of Hearing:        9:00 AM<br>Place of Hearing:<br>  NYS Dept. of Motor Vehicles<br>  Western Lights Plaza<br>  4671 Onondaga Blvd Suite #100B<br>  Syracuse, NY 13219<br><br>Presiding Officer: Jeffrey Leibo |

YOU ARE HEREBY GIVEN NOTICE that an Adjudicatory Hearing, conducted by the New York State Department of Motor Vehicles, in accordance with Vehicle and Traffic Law Section 471-a, and 15 N.Y.C.R.R., part 127.13, has been scheduled between the above parties before the assigned presiding officer.

This hearing is a result of a *Request for Adjudicatory Proceeding*, filed by the franchised motor vehicle dealer with the Commissioner of the Department of Motor Vehicles. The matters asserted by the dealer are as per the attached sheet. If you are hearing impaired, an interpreter will be available to you if you notify the Safety and Business Hearing Bureau in advance. An interpreter for the hearing impaired will be provided at no charge. It is your responsibility to bring an English translator if needed. You are permitted to appear with counsel. You should be prepared to present all evidence and witnesses at the hearing.

Adjournments are not granted except for good cause based on all the circumstances. Requests for adjournments should be made to the Safety and Business Hearing Bureau, Department of Motor Vehicles, 6 Empire State Plaza, Albany, NY 12228. Contact the bureau promptly. Do not assume an adjournment has been granted without specific confirmation. **In case of inclement weather such as a snow/ice storm please call Safety Hearing at (518) 474-1509 on the morning of hearing to see if hearing is still on.**

**Franchisor:** You have **20 Days** from receipt of this Hearing notice to deliver to the assigned presiding officer at the above address, and to the Dealer-Franchisee, a short and concise answering statement in response to the Dealer-Franchisee's allegations, and of the facts on which you rely upon in defense of such allegations, along with any supporting documents. **Your attention is directed to the automatic stay provisions, without bond, under Vehicle and Traffic Law Sections 463(2)(e)(1) and 465(7).**

**Dealer-Franchisee:** You have **20 Days** from receipt of the Franchisor's answering statement, to submit to the presiding officer at the above address, an additional statement of facts and documentary material but only to the extent of answering any new matter raised by the franchisor.
Date:   1/31/18

### THE HEARING WILL START PROMPTLY

| | | | |
|---|---|---|---|
| Dealer/Franchisee: | Pat J. Bombard DBA  Bombard Car Company, Inc. | Franchisor:<br>Address : | General Motors Corporation-Chevrolet<br>General Motors Global Headquarters<br>Detroit, MI 48625 |
| Address: | 5 Wheeler Avenue<br>Fayetteville, NY 13066 | | |
| Telephone #: | 315-382-9464 | Telephone #: | 313-667-9844 |
| Represented By: | Fredrick R. Guy, ESQ | Represented By: | Deborah F. Collins, Esq |
| Address: | The Guy Law Firm PLLC<br>3596 Pleasant Valley Road<br>Syracuse, NY 13215 | Address: | 300 Renaissance Center<br>Detroit, MI 48625 |
| Telephone #: | 315-314-7461 | Telephone #: | 313-667-9844 |

AA-70 (6/10)

13-4066 (L)
*Beck Chevrolet v. General Motors*

1    UNITED STATES COURT OF APPEALS
2    FOR THE SECOND CIRCUIT

3    August Term, 2014

4    (Argued:  October 6, 2014      Final Submission:  October 7, 2016

5    Decided:  December 29, 2016)

6    Docket Nos. 13-4066, 13-4310

7    ————————————————

8    Beck Chevrolet Co., Inc.,
9    Plaintiff–Appellant-Cross-Appellee,

10    v.

11    General Motors LLC,
12    Defendant–Appellee-Cross-Appellant.

13    ————————————————

14    Before:    SACK, LIVINGSTON, and LOHIER, *Circuit Judges*.

15    The plaintiff, a motor vehicle dealer, appeals from a July 13, 2012, order

16    granting summary judgment to the defendant, a motor vehicle manufacturer,

17    and a September 30, 2013, final judgment denying the plaintiff's two remaining

18    claims, both entered by the United States District Court for the Southern District

19    of New York (Alvin K. Hellerstein, *Judge*).  We previously concluded that the

20    plaintiff's appeal raised two important questions of unsettled New York law as to

21    the proper application of sections 463(2)(gg) and 463(2)(ff) of New York's

22    Franchised Motor Vehicle Dealer Act (the "Dealer Act"), and certified those

1    questions to the New York Court of Appeals. *Beck Chevrolet Co., Inc. v. Gen.*

2    *Motors LLC*, 787 F.3d 663, 682 (2d Cir. 2015). The Court of Appeals accepted the

3    certification and responded that: (1) the defendant's performance standard is

4    "unreasonable" and "unfair" under Dealer Act section 463(2)(gg) because it fails

5    to account for local brand popularity; and (2) a change to a dealer's Area of

6    Geographic Sales and Service Advantage ("AGSSA") constitutes a "modification"

7    to the franchise agreement, which is prohibited by Dealer Act section 463(2)(ff) if

8    it is "unfair" and "may substantially and adversely affect the . . . dealer's rights,

9    obligations, investment or return on investment." *Beck Chevrolet Co., Inc. v. Gen.*

10   *Motors LLC*, 27 N.Y.3d 379, 391-92, 396-97, 53 N.E.3d 706, 713-15, 717, 33 N.Y.S.3d

11   829, 836-38, 840 (2016) ("*Beck II*"), *reargument denied*, 27 N.Y.3d 1187, 59 N.E.3d

12   1208, 38 N.Y.S.3d 96 (2016).

13        In light of these rulings, we REVERSE the district court's judgment in favor

14   of the defendant on the plaintiff's section 463(2)(gg) claim, VACATE the district

15   court's judgment in favor of the defendant on the plaintiff's section 463(2)(ff)

16   claim, and REMAND for further proceedings and the entry of judgment.

17                                    RUSSELL P. MCRORY, Arent Fox LLP,
18                                    New York, New York, *for Plaintiff–*
19                                    *Appellant-Cross-Appellee.*

2

1   JAMES C. MCGRATH, Seyfarth Shaw LLP,
2   Boston, Massachusetts, *for Defendant—*
3   *Appellee-Cross-Appellant.*

4   PER CURIAM:

5       This is the second occasion on which we are called upon to address the

6   appeal of plaintiff-appellant Beck Chevrolet Co., Inc. ("Beck") from two

7   judgments by the United States District Court for the Southern District of New

8   York (Alvin K. Hellerstein, *Judge*) in favor of defendant-appellee General Motors

9   LLC ("GM").  The underlying facts and procedural history of this case are set

10   forth at length in *Beck Chevrolet Co., Inc. v. Gen. Motors LLC*, 787 F.3d 663, 666-71

11   (2d Cir. 2015) ("*Beck I*").  We repeat them here only insofar as we think it helpful

12   to the reader in understanding the discussion that follows.

13       Beck initially appealed from the district court's (1) grant of summary of

14   judgment for GM on Beck's claim seeking monetary relief under section 463(2)(a)

15   of New York's Franchised Motor Vehicle Dealer Act (the "Dealer Act"), codified

16   at N.Y. VEH. & TRAF. LAW §§ 460-473; (2) grant of summary judgment for GM on

17   Beck's claim seeking injunctive relief under section 463(2)(ff) of the Dealer Act;

18   (3) entry of judgment for GM, following a bench trial, on Beck's claim seeking

19   injunctive relief under section 463(2)(gg) of the Dealer Act; and (3) denial of

3

1  Beck's application for costs and attorney's fees. In our previous opinion in this

2  matter, we affirmed the district court's grant of summary judgment dismissing

3  Beck's section 463(2)(a) claim and its denial of Beck's fees application. *Beck I*, 787

4  F.3d at 678-79.[1] With respect to the district court's disposition of Beck's claims

5  under sections 463(2)(gg) (prohibiting the "use [of] an unreasonable, arbitrary or

6  unfair sales or other performance standard in determining a franchised motor

7  vehicle dealer's compliance with a franchise agreement") and 463(2)(ff)

8  (prescribing limits on the ability of a franchisor to "modify the franchise of a[]

9  franchised motor vehicle dealer"), however, we determined that "New York state

10  law is insufficiently developed in these areas to enable us to predict with

11  confidence how the New York Court of Appeals would resolve these questions."

12  *Id.* at 666; *see also id.* at 672-78. We therefore certified to the Court of Appeals two

13  questions concerning the proper scope and application of these Dealer Act

14  provisions. *Id.* at 682.

15      The Court of Appeals accepted our certified questions and, on May 3, 2016,

16  issued a response.[2] *Beck Chevrolet Co., Inc. v. Gen. Motors LLC*, 27 N.Y.3d 379, 53

---

[1] We also affirmed the district court's dismissal of GM's counterclaim for rescission and the various evidentiary rulings challenged by the parties. *Beck I*, 787 F.3d at 679-81.
[2] On October 7, 2016, the parties submitted supplemental letter briefs.

4

1  N.E.3d 706, 33 N.Y.S.3d 829 (2016) ("*Beck II*"), *reargument denied*, 27 N.Y.3d 1187,

2  59 N.E.3d 1208, 38 N.Y.S.3d 96 (2016). Equipped with this guidance, we now

3  return to the remaining issues on appeal.

4  **I.    Reasonableness of GM's Performance Standard**

5      Section 463(2)(gg) of the Dealer Act provides that "[i]t shall be unlawful for

6  any franchisor, notwithstanding the terms of any franchise contract . . . [t]o use

7  an unreasonable, arbitrary or unfair sales or other performance standard in

8  determining a franchised motor vehicle dealer's compliance with a franchise

9  agreement." N.Y. VEH. & TRAF. LAW § 463(2)(gg). Beck alleged that the statewide

10  average GM uses to determine expected sales performance for its dealers (the

11  "Retail Sales Index" or "RSI") is "unreasonable" and "unfair" because it adjusts for

12  certain local characteristics, but does not account for local variations in brand

13  popularity. The district court disagreed and, following a bench trial, ruled in

14  GM's favor on Beck's claim for injunctive relief under this section.[3]  Beck

15  appealed.

---

[3] The district court also granted GM's motion for summary judgment on Beck's claim
for damages under this section on the ground that Beck had not established damages in
connection with this claim. Beck conceded that its section 463(2)(gg) claim "sound[s] in
injunction, not money damages." Russell P. McCrory Decl. at ¶ 18, *Beck Chevrolet Co.,*

1    Recognizing the competing policy considerations at issue and the absence

2    of existing guidance from the New York Court of Appeals, we certified the

3    following question for its determination:

4        Is a performance standard that requires "average" performance
5        based on statewide sales data in order for an automobile dealer to
6        retain its dealership "unreasonable, arbitrary, or unfair" under New
7        York Vehicle & Traffic Law section 463(2)(gg) because it does not
8        account for local variations beyond adjusting for the local popularity
9        of general vehicle types?

10    *Beck I*, 787 F.3d at 676; *see also id.* at 682.

11    At GM's request, the Court of Appeals reformulated the question to read:

12        Is a performance standard that uses "average" performance based on
13        statewide sales data in order to determine an automobile dealer's
14        compliance with a franchise agreement "unreasonable, arbitrary or
15        unfair" under New York Vehicle and Traffic Law § 463(2)(gg)
16        because it does not account for local variations beyond adjusting for
17        the local popularity of general vehicle types?

18    *Beck II*, 27 N.Y.3d at 389, 53 N.E.3d at 712, 33 N.Y.S.3d at 835.

19    The Court of Appeals answered the question thus reformulated in the

20    affirmative.  It reasoned that, "[a]t a minimum, [section] 463(2)(gg) forbids the

21    use of standards not based in fact or responsive to market forces because

22    performance benchmarks that reflect a market different from the dealer's sales

---

*Inc. v. Gen. Motors LLC*, No. 11-cv-2856 (S.D.N.Y. Mar. 19, 2012), ECF No. 45.  We do not
understand it to challenge this ruling on appeal.

1 area cannot be reasonable or fair." *Id.* at 390–91, 53 N.E.3d at 713, 33 N.Y.S.3d at

2 836. Therefore, it instructed, "[t]o comply with the Dealer Act, if a franchisor

3 intends to measure a dealer's performance based on a comparison to statewide

4 data for other dealers, then the comparison data must take into account the

5 market-based challenges that affect dealer success." *Id.* at 392, 53 N.E.3d at 714,

6 33 N.Y.S.3d at 837.

7      Applying these principles to the facts of this case, the Court of Appeals

8 concluded that GM's RSI is unlawful:

9     [O]nce GM determined that statewide raw data must be adjusted to
10     account for customer preference as a measure of dealer sales
11     performance, GM's exclusion of local brand popularity or import
12     bias rendered the standard unreasonable and unfair because these
13     preference factors constitute market challenges that impact a dealer's
14     sales performance differently across the state. It is unlawful under
15     section 463(2)(gg) to measure a dealer's sales performance by a
16     standard that fails to consider the desirability of the Chevrolet brand
17     itself as a measure of a dealer's effort and sales ability.

18 *Id.* at 391, 53 N.E.3d at 714, 33 N.Y.S.3d at 837.

19      In light of this ruling, the district court's judgment in favor of GM on

20 Beck's section 463(2)(gg) claim must be reversed.[4] We therefore reverse the

---

[4] GM argues that the Court of Appeals's decision is "not dispositive" of this issue because the Court of Appeals concluded only that it would be unlawful for GM to determine a dealer's compliance with its sales performance obligations based *solely* on the RSI, whereas the district court found that GM considers the RSI as well as "other

1    district court's judgment and remand with a direction to enter judgment for Beck

2    on this claim and to order injunctive relief consistent with the New York Court of

3    Appeals's answer to our certified question. We leave it to the district court, in its

4    discretion, to determine whether this decision justifies reconsideration of its

5    denial of Beck's fees application.

6    **II.    Modification of the Franchise Agreement**

7        Beck also appeals from the district court's grant of summary judgment for

8    GM on Beck's claim that changes to its Area of Geographic Sales and Service

9    Advantage ("AGSSA") constituted an "unfair" "modification" of its franchise

---

relevant factors." Def. Supp. Letter Br. at 1-2, *Beck Chevrolet Co., Inc. v. Gen. Motors LLC*, No. 13-4066 (2d Cir. Oct. 7, 2016), ECF No. 159. But the Court of Appeals anticipated and rejected this argument by reformulating, and broadening, the question this Court certified to it. *See Beck II*, 27 N.Y.3d at 388-89, 53 N.E.3d at 712, 33 N.Y.S.3d at 835 (noting that "the first certified question [was] predicated on the incorrect presumption that GM terminates all dealers who have a below-average sales performance, when, in fact, GM bases termination on the RSI and other relevant factors"). Accordingly, the Court of Appeals determined that it is unlawful not only to terminate a dealer on the basis of a below-average RSI, but also to "use" that standard—alone or in connection with other metrics—to assess an automobile dealer's compliance with its franchise agreement. *Id.* at 389, 391, 53 N.E.3d at 712, 714, 33 N.Y.S.3d at 835, 837.

GM also argues that the district court's factual findings show that GM's use of the RSI was fair and reasonable "*in this case.*" Def. Supp. Letter Br. at 6, *Beck Chevrolet Co., Inc. v. Gen. Motors LLC*, No. 13-4066 (2d Cir. Oct. 7, 2016), ECF No. 159 (emphasis in original). But the Court of Appeals eschewed such an "as-applied" analysis, concluding that the RSI is "facially unreasonable, arbitrary or unfair without reference to facts particular to any individual dealer." *Beck II*, 27 N.Y.3d at 389, 53 N.E.3d at 712, 33 N.Y.S.3d at 835.

1    agreement, in violation of Dealer Act section 463(2)(ff).  That section provides

2    that it is

3        unlawful for any franchisor, notwithstanding the terms of any
4        franchise contract . . . [t]o modify the franchise of any franchised
5        motor vehicle dealer unless the franchisor notifies the . . . dealer, in
6        writing, . . . at least ninety days before the effective date thereof,
7        stating the specific grounds for such modification.

8    N.Y. VEH. & TRAF. LAW § 463(2)(ff)(1).  It defines "modification" as "any change or

9    replacement of any franchise if such change or replacement may substantially

10   and adversely affect the new motor vehicle dealer's rights, obligations,

11   investment or return on investment."  *Id.* § 463(2)(ff)(2).

12        The Dealer Act permits a franchisee, upon receiving notice of an intended

13   modification, to challenge the modification as "unfair," thereby shifting to the

14   franchisor "the burden of proving that such modification is fair and not

15   prohibited."  *Id.* § 463(2)(ff)(3).  "A modification is deemed unfair if it is not

16   undertaken in good faith; is not undertaken for good cause; or would adversely

17   and substantially alter the rights, obligations, investment or return on investment

18   of the franchised motor vehicle dealer under an existing franchise agreement."

19   *Id.*

1    The district court concluded that GM's revision of Beck's AGSSA did not

2    constitute a "modification" of the franchise agreement because that agreement

3    expressly reserved to GM the power to make such a revision.  It denied Beck's

4    claim for injunctive relief under section 463(2)(ff) on that basis.  On review, we

5    voiced skepticism as to whether the Dealer Act permits franchisors to thus

6    circumvent the Act's protections by retaining unilateral discretion to revise

7    specified elements of the franchise agreement.  *See Beck I*, 787 F.3d at 677.  Noting

8    the absence of any state appellate court decisions indicating how the New York

9    Court of Appeals would rule on this issue, we certified the following question for

10    its determination:

11        Does a change to a franchisee's Area of Primary Responsibility or
12        AGSSA constitute a prohibited "modification" to the franchise under
13        section 463(2)(ff), even though the standard terms of the Dealer
14        Agreement reserve the franchisor's right to alter the Area of Primary
15        Responsibility or AGSSA in its sole discretion?

16    *Id.* at 677-78; *see also id.* at 682.

17    The Court of Appeals responded that a change in the AGSSA constitutes a

18    "modification . . . to the franchise" within the meaning of section 463(2)(ff)

19    because it "has the potential to significantly impact the franchise agreement."

20    *Beck II*, 27 N.Y.3d at 395-96, 53 N.E.3d at 716-17, 33 N.Y.S.3d at 839-40.  The Court

21    of Appeals explained that "a franchisor may not insulate itself from the

1    requirements and proscriptions of section 463(2)(ff) by contractually reserving in

2    the [franchise agreement] the power to revise an AGSSA, as GM did in this case."

3    *Id.* at 396, 53 N.E.3d at 717, 33 N.Y.S.3d at 840.  "To the extent section 463(2)

4    makes unlawful certain franchisor abuses, 'notwithstanding the terms of any

5    franchise contract,' [it] abrogates contract principles which traditionally bind the

6    parties to their agreements."  *Id.* at 395, 53 N.E.3d at 716-17, 33 N.Y.S.3d at 839-40.

7    "Otherwise," the Court of Appeals reasoned, "a franchisor with superior

8    bargaining power could easily circumvent the purpose of the Dealer Act by

9    reserving the right to change franchise terms at will, even where a change results

10   in significant adverse [e]ffects on the dealer."  *Id.* at 396, 53 N.E.3d at 717, 33

11   N.Y.S.3d at 840.

12          That does not end the inquiry, however, because, as the Court of Appeals

13   emphasized, section 463(2)(ff) prohibits only those modifications that "'may

14   substantially and adversely affect the new motor vehicle dealer's rights,

15   obligations, investment or return on investment.'"  *Id.* (quoting N.Y. VEH. & TRAF.

16   LAW § 463(2)(ff)(2)).  Moreover, to be unlawful under the Dealer Act, a

17   modification "must be deemed unfair, meaning 'it is not undertaken in good

18   faith; is not undertaken for good cause; or would adversely and substantially

11

1    alter the rights, obligations, investment or return on investment of the franchised

2    motor vehicle dealer under an existing franchise agreement.'" *Id.* (quoting N.Y.

3    VEH. & TRAF. LAW § 463(2)(ff)(3)). Therefore, the Court of Appeals concluded, "a

4    revision of the AGSSA is not *perforce* violative of section 463(2)(ff). Rather, such

5    change must be assessed on a case-by-case basis, upon consideration of the

6    impact of the revision on a dealer's position." *Id.* at 397, 53 N.E.3d at 717, 33

7    N.Y.S.3d at 840 (emphasis added).

8        GM acknowledges that the Court of Appeals's answer to our certified

9    question undermines the legal basis for the district court's dismissal of Beck's

10   section 463(2)(ff) claim. *See* Def.'s Supp. Letter Br. at 7 n.3, *Beck Chevrolet Co., Inc.*

11   *v. Gen. Motors LLC*, No. 13-4066 (2d Cir. Oct. 7, 2016), ECF No. 159. GM argues

12   that we should nonetheless affirm the entry of summary judgment in its favor

13   because "Beck failed to offer any evidence suggesting that GM's [revision of its

14   AGSSA] . . . was undertaken in bad faith or without good cause, or would

15   substantially and adversely affect[] Beck's interests." *Id.* at 7. But because the

16   district court concluded that GM's revision of the AGSSA was not a franchise

17   "modification" within the meaning of the Dealer Act, it did not determine

18   whether that modification was "unfair" and thus prohibited by the statute. We

12

1    therefore vacate the district court's judgment and remand for it to resolve this

2    issue in the first instance, consistent with the legal principles set forth in the New

3    York Court of Appeals's answer to our second certified question. *See Prats v. Port*

4    *Auth. of N.Y. & N.J.*, 350 F.3d 58, 59 (2d Cir. 2003) ("As a general rule, 'a federal

5    appellate court does not consider an issue not passed upon' by the district court."

6    (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999))).

7    We express no view on how the district court should resolve this matter.

8    We merely conclude that, in light of the New York Court of Appeals's answer to

9    our certified question, the district court's judgment can no longer stand.  Should

10    this matter come before this Court again, the Court will review the district court's

11    decision under the ordinarily applicable standards of deference.

12    **CONCLUSION**

13    For the foregoing reasons, we REVERSE the district court's judgment in

14    favor of GM on Beck's section 463(2)(gg) claim, VACATE the district court's

15    judgment in favor of GM on Beck's section 463(2)(ff) claim, and REMAND to that

16    court for further proceedings and the entry of judgment consistent with this

17    opinion and the New York Court of Appeals's answers to our certified questions.

13

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

**Name of Debtor:**
*MOTORS LIQUIDATION COMPANY, ET AL.)
F/K/A GENERAL MOTORS CORP., ET AL.*

**Case Number:**
*09-50026
(MG)*

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor (the person or other entity to whom the debtor owes money or property):**
*PAT BOMBARD*

**COURT USE ONLY**

**Name and address where notices should be sent:**
*5 WHEELER AVE
FAYETTEVILLE NY 13066*

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

**Telephone number:** *315-382-9464*      **email:** *SUMMERWINDS LLC JNTLK.COM*

**Filed on:** _____

**Name and address where payment should be sent (if different from above):**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**Telephone number:**      **email:**

**1. Amount of Claim as of Date Case Filed:**      $ *10 MILLION*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** *FRANCHISE AWARD Chevrolet*
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** *9191*

**3a. Debtor may have scheduled account as:**
_____
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
_____
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$ *10 MILLION*

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☑ Other
**Describe:**

**Basis for perfection:** *FRANCHISE*

**Value of Property:** $ *10 MILLION*

**Amount of Secured Claim:** $ *10 MILLION*

**Annual Interest Rate** _____ % ☑ Fixed or ☐ Variable
(when case was filed)

**Amount Unsecured:** $ *0*

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

**Amount entitled to priority:**

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

$_____

*\*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                                                    2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  _PAT BOMBARD_
Title:  _PRESIDENT_
Company:  _BOMBARD CAR CO_
Address and telephone number (if different from notice address above):

_(Signature)_      _3/13/2018_  _(Date)_

Telephone number:                          email:

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.