**HEARING DATE AND TIME:  March 29, 2018 at 10:00 a.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------X
In re                                                        :    Chapter 11
                                                             :
MOTORS LIQUIDATION COMPANY, et al.,                          :    Case No.: 09-50026 (MG)
       f/k/a General Motors Corp., et al.                    :
                                                             :
                    Debtors.                                 :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x
```

**REPLY BY GENERAL MOTORS LLC TO OBJECTION TO
MOTION BY GENERAL MOTORS LLC TO ENFORCE THE BANKRUPTCY
COURT'S JULY 5, 2009 SALE ORDER AND THE RULINGS IN CONNECTION
THEREWITH WITH RESPECT TO THE MOORE, *ET AL.*, PLAINTIFFS**

32007466

## **TABLE OF CONTENTS**

                                                                                                                **Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

       A.      The Moore Plaintiffs Commenced the Moore Lawsuit In Violation of
               *Celotex* and this Court's Prior Rulings .................................................................. 3

       B.      The Moore Plaintiffs Have Not Established a Due Process Violation and
               are Bound by the Sale Order and Other Bankruptcy Court Rulings ....................... 4

             i.      The Second Circuit Opinion Was Limited to Ignition Switch
                     Plaintiffs and the Developed Factual Record Regarding the
                     Ignition Switch Defect ............................................................................ 4

             ii.     The Moore Plaintiffs Have Failed to Establish Prejudice ........................ 10

             iii.    To the Extent the Court Believes the Moore Plaintiffs' Due Process
                    Argument is Colorable, a Complete Factual Record Needs to be
                    Developed ............................................................................................... 11

       C.      The Moore Amended Complaint Does Not Assert Valid Independent
               Claims .................................................................................................................. 12

       D.      The Moore Plaintiffs Do Not Dispute That Their Request for Punitive
               Damages Is Improper and that the Moore Amended Complaint Contains
               Inappropriate Allegations..................................................................................... 13

CONCLUSION............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Am. Boat Co.*,
   No. 11 Civ. 6804, 2012 WL 527209 (S.D.N.Y. Feb. 17, 2012) ..............................11

*In re Agway, Inc.*,
   313 B.R. 31 (Bankr. N.D.N.Y. 2004) ........................................................................7

*In re Best Prods. Co.*,
   140 B.R. 353 (Bankr. S.D.N.Y. 1992) .......................................................................7

*Cedar Bluff Broad., Inc. v. Rasnake*,
   940 F.2d 651, 1991 U.S. App. LEXIS 17220, 1991 WL 141035 (4th Cir. Aug.
   1, 1991) ....................................................................................................................10

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995) ................................................................................................3, 4

*In re City Equities Anaheim, Ltd.*,
   22 F.3d 954 (9th Cir. 1994) .....................................................................................10

*Felske v. Hirchmann*,
   No. 10 Civ. 8899(RMB), 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ....................13

*In re Gen. Motors Corp.*,
   No. M 47(LAK), 2009 WL 2033079 (S.D.N.Y. July 9, 2009) ..................................7

*Johnston v. Town of Orangetown*,
   No. 10 Civ. 8763(GAY), 2013 WL 1189483 (S.D.N.Y. Mar. 22, 2013) ................13

*In re Motors Liquidation Co.*,
   513 B.R. 467 (Bankr. S.D.N.Y. 2014) .......................................................................3

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015), *aff'd in part, vacated in part, reversed
   in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017) .......................7

*In re Motors Liquidation Co.*,
   531 B.R. 354 (Bankr. S.D.N.Y. 2015) .......................................................................3

*In re Motors Liquidation Co.*,
   568 B.R. 217 (Bankr. S.D.N.Y. 2017) .....................................................................12

*In re Motors Liquidation Co.*,
   571 B.R. 565 (Bankr. S.D.N.Y. 2017) .....................................................................12

*In re Motors Liquidation Co.*,
    576 B.R. 313 (Bankr. S.D.N.Y. 2017) ................................................................................ 12

*In re Motors Liquidation Co.*,
    829 F.3d 135 (2d Cir. 2016) ............................................................................. 2, 9, 10, 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ................................................................ 7

*In re New Concept Hous., Inc.*,
    951 F.2d 932 (8th Cir. 1991) ............................................................................................ 10

*In re Parcel Consultants, Inc.*,
    58 F. App'x 946 (3d Cir. 2003) ........................................................................................ 10

*Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*,
    266 B.R. 575 (S.D.N.Y. 2001) ......................................................................................... 10

*Perry v. Blum*,
    629 F.3d 1 (1st Cir. 2010) ................................................................................................ 10

*In re Queen Elizabeth Realty Corp.*,
    Case No. 13-12335 (SMB), 2017 Bankr.LEXIS 793 (Bankr. S.D.N.Y. March
    24, 2017) ............................................................................................................................ 8

*Rapp v. U.S. Dep't of Treasury, Office of Thrift Supervision*,
    52 F.3d 1510 (10th Cir. 1995) ......................................................................................... 10

*Rosenblatt v. City of N.Y.*,
    No. 05 Civ. 5521(GEL), 2007 WL 2197835 (S.D.N.Y. July 31, 2007) ........................... 13

*In re Rosson*,
    545 F.3d 764 (9th Cir. 2008) ........................................................................................... 10

*Secs. Investor Prot. Corp. v. Blinder, Robinson & Co., Inc.*,
    962 F.2d 960 (10th Cir. 1992) ......................................................................................... 10

*In re U.S. Kids, Inc.*,
    178 F.3d 1297, 1999 WL 196509 (6th Cir. Mar. 25, 1999) ............................................. 10

General Motors LLC ("**New GM**") submits this reply brief ("**Reply**") in response to the Objection filed by the Moore Plaintiffs ("**Objection**"),[1] and in further support of the relief requested in the Moore Motion to Enforce.

## PRELIMINARY STATEMENT

1. The parties agree on many issues raised by the Moore Motion to Enforce. *First*, they agree that the claims arising under Environmental Laws (Counts I, II, VIII and IX of the Moore Amended Complaint) can proceed against New GM as Assumed Liabilities. *Second*, they agree that the Moore Plaintiffs can assert Independent Claims against New GM, provided that such claims are based solely on New GM conduct.[2] *Third*, they agree that Counts III through VII of the Moore Amended Complaint asserted against New GM are Retained Liabilities and barred by the Sale Order.

2. The parties disagree on the following three issues: (a) should the Moore Plaintiffs be able to pursue Retained Liabilities against New GM in violation of the Sale Order, (b) should the Moore Plaintiffs be able to assert Independent Claims that are *not* based solely on New GM conduct, and (c) should the Moore Plaintiffs be able to make allegations that violate the Sale Order and the December 2015 Judgment.

3. The Moore Plaintiffs have decided to act as both judge and jury, giving themselves permission to violate the Sale Order because they have determined that Old GM committed an alleged due process violation regarding the 363 Sale notice. That is not the law.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion By General Motors LLC To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And The Rulings In Connection Therewith With Respect To The Moore, Et Al., Plaintiffs*, filed by New GM on February 27, 2018 [ECF No. 14241] ("**Moore Motion to Enforce**").

[2] The Moore Plaintiffs acknowledged that the Moore Original Complaint did not adequately allege Independent Claims, and attempted to address the issue through the Moore Amended Complaint. New GM notified the Moore Plaintiffs that the Independent Claims, as amended, were still not properly pled, and there were allegation deficiencies, but the Moore Plaintiffs did not pursue discussions presumably because they do not believe they need to comply with the Sale Order.

As New GM explained in the Moore Motion to Enforce, the Moore Plaintiffs are subject to the injunction contained in the Sale Order, and they cannot willfully disregard it. A plaintiff confronted with an injunction must seek relief from the court that issued the injunction *before* commencing an action against the beneficiary of that injunction. The Moore Plaintiffs were required to seek relief in this Court *before* commencing the Moore Lawsuit if they disputed provisions of the Sale Order. Their failure to do so warrants granting the Moore Motion to Enforce on this basis alone.

4. The Moore Plaintiffs due process challenge to the Sale Order relies on the Second Circuit's opinion concerning the 2014 Threshold Issues. *In re Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016) ("**Second Circuit Opinion**"). However, as this Court knows, that Opinion addressed a completely different group of plaintiffs, under completely different facts, and under a completely different record. Suffice it to say, there has been no due process violation with respect to the Moore Plaintiffs because, as discussed below, (i) Old GM did not believe there were any liabilities associated with the MPG and, thus, publication notice of the 363 Sale to the Moore Plaintiffs was adequate, (ii) the Moore Plaintiffs do not dispute having knowledge of the Old GM bankruptcy and the 363 Sale, (iii) there was specific information made available to the Moore Plaintiffs before the 363 Sale that put them on notice of any salt-related issues with the area adjacent to the MPG, and (iv) the Michigan Department of Environmental Quality ("**MDEQ**") was well aware of the elevated salt levels allegedly relating to the MPG, appeared at the Sale Hearing, and ultimately supported the 363 Sale. Accordingly, the Moore Plaintiffs are bound by the Sale Order, and they should be ordered to dismiss Counts III through VII of the Amended Complaint because they are admitted Retained Liabilities of Old GM.

2

5. As demonstrated below (and in the Moore Motion to Enforce), the relief requested in the Moore Motion to Enforce with respect to Retained Liabilities, inadequately pled Independent Claims, barred allegations, and an improper punitive damages request, should be granted in its entirety.

## ARGUMENT

### A. The Moore Plaintiffs Commenced the Moore Lawsuit In Violation of *Celotex* and this Court's Prior Rulings

6. The Moore Plaintiffs admit that the Sale Order applies to certain of their claims, but they argue that they should not be subject to the injunction contained therein because they received publication notice, and not direct mail notice, of the 363 Sale. *See* Objection, at 2. Putting aside this issue for the moment, as New GM explained in the Moore Motion to Enforce, it is "well-established" that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995); *see also In re Motors Liquidation Co.*, 513 B.R. 467, 478 (Bankr. S.D.N.Y. 2014) (quoting *Celotex*). As Judge Gerber aptly ruled with respect to other plaintiffs who exercised self-help in violating the Sale Order: the reason for non-compliance, whether "out of arrogance; ignorance; their own perceptions of when orders should be complied with; or an apparent notion that orders of a United States Bankruptcy Court are unworthy of respect, is of no moment. Compliance with the Court's Sale Order was required, unless and until the Sale Order was vacated or modified by this or a higher court." *In re Motors Liquidation Co.*, 531 B.R. 354, 357 (Bankr. S.D.N.Y. 2015).

7. The Moore Plaintiffs were informed in New GM's January 8 Letter that the Moore Original Complaint violated the Sale Order and other Bankruptcy Court rulings. In addition, during a conference call on February 14, 2018, counsel for New GM specifically

3

directed the Moore Plaintiffs' counsel to the *Celotex* case, and stated that if he believed that the Sale Order should not apply to the Moore Plaintiffs, he was required to first seek relief in this Court. Instead of doing so, the Moore Plaintiffs disregarded the Court's prior rulings and filed the Moore Amended Complaint in the Michigan District Court; a complaint that the Moore Plaintiffs concede is contrary to provisions in the Sale Order (given that they do not dispute that Counts III through VII are Retained Liabilities).

8.      Simply put, the Moore Plaintiffs should have either withdrawn the Original Moore Complaint, or immediately stayed the Moore Lawsuit and sought appropriate relief from this Court. They did neither, requiring New GM to file the Moore Motion to Enforce. The Moore Plaintiffs actions were improper pursuant to *Celotex* and the Court's prior rulings, and their willful violation of the Court's prior injunction should not be tolerated.

**B.     The Moore Plaintiffs Have Not Established a Due Process Violation and are Bound by the Sale Order and Other Bankruptcy Court Rulings**

9.      The crux of the Objection is that the Moore Plaintiffs were denied due process in connection with the 363 Sale and, therefore, are not bound by the Sale Order. As support for this assertion, the Moore Plaintiffs rely exclusively on the Second Circuit Opinion. However, the due process issues in that case have nothing to do with the facts and circumstances of the Moore Lawsuit.

   *i.    The Second Circuit Opinion Was Limited to Ignition Switch Plaintiffs and the Developed Factual Record Regarding the Ignition Switch Defect*

10.     The Second Circuit Opinion was limited to whether "Ignition Switch Plaintiffs" were denied due process in connection with the notice that Old GM provided of the 363 Sale. The Moore Plaintiffs are not Ignition Switch Plaintiffs, and the Second Circuit Opinion is based on the particular facts of that case. As shown below, the situation here is not analogous.

4

11.   In contradistinction to the record before the Second Circuit, the facts as alleged in the Moore Amended Complaint paint a very different picture of what Old GM and others knew prior to its bankruptcy filing regarding environmental issues relating to the MPG, and Old GM's publicly announced position relating to such issues.  Specifically, the Moore Amended Complaint alleges:

- The MDEQ began an investigation in 1997 regarding the groundwater in the area surrounding the MPG.  *See* Moore Amended Complaint, ¶¶ 21-23.

- "[O]n May 29, 1998, [Old GM] ***denied liability*** for the Contamination and demanded that MDEQ retract" letters *it sent to a developer* [the seller of property to the Moore Plaintiffs] in the area regarding sodium and chloride levels in the groundwater.  *Id.*, ¶¶ 24-25 (emphasis added).

- In 1998, Old GM commissioned its own investigation into the groundwater, which found that groundwater flowing from the MPG was to the south-southeast [away from the Moore Plaintiffs' property]; testing commissioned by Old GM indicated that "groundwater quality at a downgradient monitoring well ***did not exceed*** the Act 451, part 201 Generic Residential Groundwater Criteria of 160 mg/l (or the Generic Industrial Groundwater Criteria of 450 mg/l) for sodium, and marginally exceeded the 250 mg/l aesthetic criteria for total chloride."  *Id.*, ¶ 26 (emphasis added).

- In 2000, Old GM and MDEQ engaged in correspondence regarding the MPG and the groundwater in the surrounding areas.  *Id.*, ¶¶ 29-30.

- In October 2000, Old GM commenced a civil action against MDEQ with respect to its actions regarding the MPG.  *Id.*, ¶ 31.

12.   Ultimately, Old GM and the MDEQ entered into an agreement with respect to Old GM's civil action and the MDEQ's investigations regarding salt usage at the MPG.  As detailed by the Moore Plaintiffs themselves:

> Pursuant to an April 26, 2001 Pollution Minimization Agreement ("PMA") Old GM and MDEQ agreed that: (1) GM would dismiss its complaint without prejudice; (2) MDEQ would withdraw its September 22, 2000 facility letter; (3) MDEQ would not issue another determination that the MPG is a "facility" without providing GM 30-days' notice; and (4) GM would implement a number of best management practices with respect to the use, management, and storage of road salt and monitor the effects of such measures. The PMA further

5

> provided that if a final five-year summary report to be prepared by GM did not document a statistically significant trend of decreasing ionic sodium and chloride concentrations in groundwater at the MPG, OLD GM must conduct a hydrological study to determine the known sources of salt in the groundwater and the impact on uses of groundwater at the MPG.
>
> In May 2007, Old GM submitted to MDEQ a Five Year Summary Report that stated that Old GM could not document a statistically significant trend of decreasing ionic sodium and chloride concentrations in ground water at the MPG. CRA, on Old GM's behalf, also asserted that groundwater flows vary and that the bedrock beneath the MPG "contains naturally occurring brines, which could be a source of sodium and chloride in the overburden groundwater due to the natural upward gradient, groundwater extraction from the overburden, or bedrock drilling activities (*i.e.*, installation of oil and gas production wells)." In addition, CRA, on behalf of Old GM, steadfastly denied that Old GM was responsible for the Contamination at The Oaks. Instead, CRA attributed salt contamination at The Oaks, at least in part, to offsite sources including (1) individual septic systems, (2) residential water softeners, (3) county road salting practices, and (4) naturally occurring brines.

Moore Amended Complaint, ¶¶ 32-33. Accordingly, based on the Moore Plaintiffs' own version of prepetition events, Old GM consistently and publicly took the position that it had no liability for salt usage at the MPG, and the MDEQ was fully aware of this position.

13.     In addition, as noted above, the developer of the Moore Plaintiffs' properties was made aware of the elevated salt levels in the groundwater of these properties, and Old GM denied all liability in connection with these issues. Moreover, these issues were not hidden from the Moore Plaintiffs. Among other things, the MDEQ wrote to the residents about sodium and chloride levels in their groundwater in June 2007 (*See* Objection, Exhibit H), and notice of chloride and sodium levels were recorded on the master deed for the Moore Plaintiffs' subdivision.[3]

14.     Old GM's books and records reflected its clearly announced, public position that it did not have liability relating to the environmental issues raised by the Moore Plaintiffs.

---

[3] *See* Relevant Page of the Restrictions for "The Oaks" at Beach Lake No. 2, at Liber 2245, Page 0143 (a copy of which is attached hereto as **Exhibit "A"**).

6

Generally, the information in a company's books and records determines whether an entity should be deemed a "known" creditor for bankruptcy notice purposes. *See, e.g., In re Agway, Inc.,* 313 B.R. 31 (Bankr. N.D.N.Y. 2004) (holding that the plaintiff's claims were not "known" claims on Agway's books and records even though Agway held significant information regarding the possibility of the claim being brought against it); *In re Best Prods. Co.,* 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992) (debtor not required to search beyond its own books and records to ascertain the identity of unknown creditors). Based on the admitted facts and circumstances noted herein, the Moore Plaintiffs were not "known" creditors who were entitled to direct mail notice.

15. When the Bankruptcy Court approved the 363 Sale notice, Judge Gerber was fully aware of (a) the substantial cost involved in sending direct mail notice to contingent creditors, (b) Old GM's dire liquidity, (c) the widely publicized media reporting with respect to the *Old GM* bankruptcy filing and the contemplated sale to a government-backed entity, (d) the massive size of Old GM's business operations, and (e) the challenging exercise of conducting the 363 Sale hearing on an expedited basis. Judge Gerber weighed all of those factors in determining the appropriate 363 Sale notice in accordance with *Mullane*.[4] *See In re Motors Liquidation Co.*, 529 B.R. 510, 524 (Bankr. S.D.N.Y. 2015), *aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017). The reality at that time is captured by Judge Kaplan's observation that "[n]o sentient American is unaware of the travails of the automobile industry in general and of General Motors Corporation . . . in particular." *In re Gen. Motors Corp.*, No. M 47(LAK), 2009 WL 2033079, at *1 (S.D.N.Y. July 9, 2009).

---

[4] *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

16.     Importantly, the Moore Plaintiffs have not taken the position that they were unaware of the Old GM bankruptcy or the 363 Sale and, given Judge Kaplan's observations, their silence is not surprising. Judge Bernstein analyzed a similar situation recently in the claims bar date context. In *In re Queen Elizabeth Realty Corp.*, Case No. 13-12335 (SMB), 2017 Bankr.LEXIS 793 (Bankr. S.D.N.Y. March 24, 2017), he held:

> The question is whether a creditor who never received actual or constructive notice of the bar date but nevertheless knows it is under a duty to act. The answer must be yes. A bankruptcy case is a collective proceeding that affects the rights of many. Although the debtor did not give All Points actual or constructive notice, *Espinosa* as well as the governing law regarding excusable neglect and laches, discussed below, imply that a creditor who independently acquires knowledge of a pending action that will affect its rights cannot sit idly by, let time pass and assert its rights at a later date when it may be impossible or impractical to unwind earlier actions that affect the rights of others.

*Id.* at *13. Here, given all of the information available to the Moore Plaintiffs, both prior to and after the 363 Sale regarding the MPG situation, the Court should not reward the Moore Plaintiffs for sitting idly by for years without doing anything.

17.     Two other things regarding the 363 Sale are relevant to the notice issue raised by the Moore Plaintiffs. *First*, there was a creditors committee actively involved in all phases of the 363 Sale. They had the fiduciary obligation to protect all unsecured creditors to the extent impacted by the 363 Sale. They supported the 363 Sale as being in the best interests of all unsecured creditors.

18.     *Second*, the States' Attorneys General were actively involved in all phases of the 363 Sale. In particular, MDEQ was provided mail notice of the 363 Sale. *See Certificate of Service*, dated June 15, 2009 [ECF No. 973-49], at 540. MDEQ filed a limited objection ("**MDEQ Objection**") to the 363 Sale (s*ee* MDEQ Objection, dated June 18, 2009 [ECF No. 1847]), which raised issues with the environmental liability and successor liability provisions in the Sale Agreement, as well as the "free and clear" provisions in the Sale Order. The MDEQ

8

filed its "limited objection to protect its interest in seeing that the environmental laws are complied with, environmental contamination is addressed, and any restrictions protective of public health, safety or welfare, or the environment at the Transferred Real Property are maintained." MDEQ Objection, ¶ 14. Counsel for the MDEQ, Celeste R. Gill, Assistant Attorney General in Michigan, appeared at all three days of the sale hearing ("**363 Sale Hearing**"), and ultimately MDEQ, like the other States' Attorneys General, supported the approval of the 363 Sale as being in the best interests of their constituencies.[5]

19. Accordingly, a critical distinction between this situation and the Ignition Switch Plaintiffs in the Second Circuit is that the MDEQ had full knowledge of the situation at the MPG, was provided notice of the Old GM bankruptcy and the 363 Sale, filed a limited objection to the 363 Sale, appeared at the Sale Hearing, and did not raise any objection that claims arising from alleged contamination at the MPG should be exempt from the Sale Order and the injunction. Moreover, as noted above, the Moore Plaintiffs, and their predecessor-developer, also had relevant information regarding the situation at the MPG prior to the 363 Sale.

20. Only known creditors are entitled to direct mail notice; publication notice is acceptable for contingent or unknown creditors like the Moore Plaintiffs. *See Motors Liquidation Co.*, 829 F.3d at 159 ("if the claims were unknown, publication notice suffices"); *see also* Sale Order, ¶ E ("With respect to parties who may have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors (including, but not limited to, potential contingent warranty claims against the Debtors), the Publication Notice was sufficient and reasonably calculated under the circumstances to reach such parties."). It is undisputed that extensive publication notice was provided by Old GM of the 363 Sale. *See Motors Liquidation*

---

[5] *See* July 2, 2009 Hr'g Tr., at 198:14-199:15 (statement by Karen Cordry regarding the agreement).

*Co.*, 829 F.3d at 146. The Moore Plaintiffs were, thus, provided due process in connection with the 363 Sale.

### ii. *The Moore Plaintiffs Have Failed to Establish Prejudice*

21. Contrary to the Moore Plaintiffs' argument (Objection, at 10), the Second Circuit never held that prejudice was an unnecessary factor in a due process analysis. The Second Circuit stated that it was not deciding whether prejudice was needed and actually assumed that it ***was required*** to establish a due process violation. *See Motors Liquidation Co.*, 829 F.3d at 162-63. There are seven Courts of Appeal that have found that prejudice is a requirement to the due process analysis.[6] None have found to the contrary. The burden is on the moving party to demonstrate that it was prejudiced by an alleged notice deficiency. *See Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 583 (S.D.N.Y. 2001) ("[E]ven if notice was inadequate, the objecting party must demonstrate prejudice as a result thereof."); *see also In re Parcel Consultants, Inc.*, 58 F. App'x 946, 950-51 (3d Cir. 2003) ("Proof of prejudice is a necessary element of a due process claim").

22. Here, the Moore Plaintiffs say nothing about prejudice and instead recite excerpts of the Second Circuit Opinion which applied to a different creditor group under unique

---

[6] *See, e.g., Perry v. Blum*, 629 F.3d 1, 17 (1st Cir. 2010) ("[A] party who claims to be aggrieved by a violation of procedural due process must show prejudice."); *Rapp v. U.S. Dep't of Treasury, Office of Thrift Supervision*, 52 F.3d 1510, 1520 (10th Cir. 1995) ("In order to establish a due process violation, petitioners must demonstrate that they have sustained prejudice as a result of the allegedly insufficient notice."); *In re New Concept Hous., Inc.*, 951 F.2d 932, 939 (8th Cir. 1991) (noting that while the failure to notify debtor of a hearing contravened the Bankruptcy Rules, "violation of these rules constituted harmless error, because the Debtor's presence at the hearing would not have changed its outcome"); *In re Parcel Consultants, Inc.*, 58 F. App'x 946, 951 (3d Cir. 2003) (unpublished) ("Proof of prejudice is a necessary element of a due process claim."); *Cedar Bluff Broad., Inc. v. Rasnake*, 940 F.2d 651 (Table), 1991 U.S. App. LEXIS 17220, at *7, 1991 WL 141035, at *2 (4th Cir. Aug. 1, 1991) (unpublished) (holding that creditor asserting deficient notice failed to demonstrate "that it was prejudiced by the lack of notice to general creditors"); *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 959 (9th Cir. 1994) (rejecting due process claim for lack of prejudice); *Secs. Investor Prot. Corp. v. Blinder, Robinson & Co., Inc.*, 962 F.2d 960, 967 (10th Cir. 1992); *In re U.S. Kids, Inc.*, 178 F.3d 1297 (Table), 1999 WL 196509, at *5 (6th Cir. Mar. 25, 1999) (unpublished); *see also In re Rosson*, 545 F.3d 764, 777 (9th Cir. 2008) ("Because there is no reason to think that, given appropriate notice and a hearing, Rosson would have said anything that could have made a difference, Rosson was not prejudiced by any procedural deficiency.").

10

circumstances. That type of conclusory argument falls far short of establishing prejudice. The Moore Plaintiffs do not set forth any arguments as to how, if they were given direct mail notice of the 363 Sale and a "seat at the table," they would have been able to achieve a better result than the one the MDEQ (which had full knowledge of the situation at the MPG) and the other States' Attorneys General received—*i.e.*, New GM agreeing to assume liabilities arising under Environmental Laws. They offer no arguments because they have none.

23. Finally, the Moore Plaintiffs should not be permitted to selectively enforce the Sale Agreement with respect to Assumed Liabilities, and ignore the other provisions of the Sale Agreement which bars the assertion of Retained Liabilities against New GM. *See, e.g.*, *American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Am. Boat Co.*, No. 11 Civ. 6804, 2012 WL 527209, at *4 (S.D.N.Y. Feb. 17, 2012) ("a party which is a non-signatory to a contract, but which nonetheless receives a direct benefit from that contract, is estopped from seeking exclusion from provisions of the contract").

### iii. *To the Extent the Court Believes the Moore Plaintiffs' Due Process Argument is Colorable, a Complete Factual Record Needs to be Developed*

24. New GM believes that, based on the Moore Plaintiffs' allegations and the record concerning the 363 Sale Hearing and the MDEQ's involvement, the Moore Plaintiffs' due process argument does not withstand scrutiny and should be rejected. However, if the Court disagrees, the Moore Plaintiffs should be required to withdraw the Moore Amended Complaint (or stay the Moore Lawsuit), and file in this Court—the Court that issued the injunction—an appropriate pleading seeking relief from the injunction contained in the Sale Order. New GM would then be entitled to contest that pleading in more detail and, if necessary, take all appropriate discovery.

11

**C.       The Moore Amended Complaint Does Not Assert Valid Independent Claims**

25.     As explained in the Moore Motion to Enforce, the purported independent claims alleged by the Moore Plaintiffs in the Moore Amended Complaint are not properly stated and violate the Bankruptcy Court's rulings.  They are either based on ***both*** alleged Old GM conduct and New GM conduct, or do not sufficiently identify any specific New GM conduct to properly allege a valid independent claim.

26.     The Objection does not, in any way, refute New GM's arguments.  The Moore Plaintiffs make no attempt to identify the alleged New GM conduct that is the ***sole*** basis for their purported independent claims.  The fact that they "attempted" to address the "independent claim" issue by amending their original complaint (Objection, at 12) is of no moment; the Moore Amended Complaint does not allege valid independent claims, and such claims should be stricken from the Moore Amended Complaint.

27.     Both the Second Circuit and this Court have ruled that valid Independent Claims must be based solely on New GM conduct, and cannot be based on Old GM conduct.  *See Motors Liquidation Co.*, 829 F.3d at 157; *In re Motors Liquidation Co.*, 571 B.R. 565, 569 n.2 (Bankr. S.D.N.Y. 2017); *In re Motors Liquidation Co.*, 568 B.R. 217, 224 (Bankr. S.D.N.Y. 2017).  But, as explained in the Moore Motion to Enforce, the Moore Amended Complaint contains numerous allegations that impermissibly intermingle Old GM conduct and New GM conduct,[7] and has numerous references to pre-363 Sale conduct of Old GM (which are all incorporated by reference into each count in the Moore Amended Complaint), and only a few generalized allegations regarding post-363 Sale conduct by New GM.

---

[7] The Objection actually demonstrates this impermissible "intermingling of conduct" point when it states the Moore Plaintiffs "allege[d] a continuing course of conduct, beginning at least as early as 1985 and continuing through the present day and involving actions by both Old and New GM."  Objection, at 12.

12

28. As previously explained by this Court, a complaint cannot pass the bankruptcy gate if "(i) it fails to clearly differentiate between Old GM and New GM; and (ii) it fails to identify specific conduct of New GM upon which the purportedly Independent Claims are based." *In re Motors Liquidation Co.*, 576 B.R. 313, 323 (Bankr. S.D.N.Y. 2017). The Moore Amended Complaint does just that and, accordingly, cannot pass through the bankruptcy gate.

D. **The Moore Plaintiffs Do Not Dispute That Their Request for Punitive Damages Is Improper and that the Moore Amended Complaint Contains Inappropriate Allegations**

29. In the Moore Motion to Enforce, New GM asserted that (i) any request for punitive damages must be stricken, and (ii) the Moore Amended Complaint contained inappropriate allegations that are barred by this Court's prior rulings (*e.g.*, inappropriate successor allegations, as well as inappropriate allegations that do not distinguish between Old GM and New GM conduct, or intermingle allegations with respect to Old GM and New GM in the same paragraph). *See* Moore Motion to Enforce, at ¶¶ 37-41. Despite acknowledging in their Objection that New GM sought this relief (*see* Objection, at 2), the Moore Plaintiffs never respond to New GM's arguments.

30. "A plaintiff effectively concedes a defendant's arguments by his failure to respond to them." *Felske v. Hirchmann,* No. 10 Civ. 8899(RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012); *see also Johnston v. Town of Orangetown*, No. 10 Civ. 8763(GAY), 2013 WL 1189483, at *7 n. 3 (S.D.N.Y. Mar. 22, 2013) ("Defendants moved for summary judgment on said claims. . . . Plaintiff failed to respond to defendants' arguments and, thus, apparently concedes defendants' points and waives said claims."); *Rosenblatt v. City of N.Y.,* No. 05 Civ. 5521(GEL), 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) ("Plaintiff effectively concedes defendants' other arguments . . . by her failure to respond to them.").

13

31. As the Moore Plaintiffs have not responded to New GM's arguments regarding the punitive damages request and inappropriate allegations in the Moore Amended Complaint, the Moore Plaintiffs should be deemed to have conceded these points and waived any objection thereto. This relief should therefore be granted as unopposed.

## CONCLUSION

32. For the foregoing reasons, and for the reasons set forth in the Moore Motion to Enforce, New GM respectfully requests that this Court enter the proposed order attached to the Moore Motion to Enforce as Exhibit "E," and grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
March 26, 2018

Respectfully submitted,

　　　/s/ Arthur Steinberg　　　
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

*Attorneys for General Motors LLC*