CONTINUED HEARING DATE AND TIME:  April 12, 2018 at 3:00 p.m.

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson
*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re:                                                       :    Chapter 11
                                                             :
MOTORS LIQUIDATION COMPANY, *et al.*,                        :    Case No.: 09-50026 (MG)
       f/k/a General Motors Corp., *et al*.                  :
                                                             :    (Jointly Administered)
                             Debtors.                        :
------------------------------------------------------------ x

**SUPPLEMENTAL MEMORANDUM IN FURTHER
SUPPORT OF MOTION BY GENERAL MOTORS LLC
TO ENFORCE THE BANKRUPTCY COURT'S SALE ORDER
AND COURT-APPROVED DEFERRED TERMINATION
(WIND-DOWN) AGREEMENT WITH RESPECT TO PAT BOMBARD**

1.     At the March 29, 2018 hearing ("**Hearing**") on the Bombard Motion to Enforce,[1]

the Court asked the parties to provide further information regarding (a) payments made pursuant

to the Bombard WD Agreement (as defined below), and (b) whether Bombard Car Co. timely

---

[1]    Capitalized terms not defined herein have the meanings ascribed in the *Motion By General Motors LLC To Enforce The Bankruptcy Court's Sale Order And Court-Approved Deferred Termination (Wind-Down) Agreement With Respect To Pat Bombard*, filed on February 27, 2018 [ECF No. 14243] ("**Bombard Motion to Enforce**").

1

performed the Bombard LOI (as defined below). Attached as **Exhibit "1"** is the Declaration of Marlin E. Gilliam ("**Gilliam Decl.**"), which responds to the Court's request.[2]

2. New GM is submitting this Supplemental Memorandum to put the Gilliam Decl. in a more fulsome context. Much of this information was already submitted as part of the Bombard Motion to Enforce.

3. Bombard Car Co. has not been an authorized dealer of GM vehicles since October 31, 2010—more than seven years ago.

4. On the Petition Date, Old GM sent Bombard Car Co. notice that the Bombard Dealer Agreement would not continue and that Bombard Car Co. would be wound down as a GM dealer.[3] Mr. Bombard and Bombard Car Co. were presented a Wind-Down Agreement ("**Bombard WD Agreement**"), which Mr. Bombard and Old GM executed in June 2009.[4] The Bombard WD Agreement was subsequently assumed and assigned to New GM pursuant to the Sale Order and Sale Agreement.

5. Pursuant to Section 3 of the Bombard WD Agreement, Bombard Car Co. was to receive certain wind-down payments ("**WD Payment**") totaling $128,163. *See* Bombard WD Agreement, ¶ 3(a). Mr. Bombard was to initially receive 25% of the WD Payment (*see id.*, ¶ 3(b)), with the balance to be made

> within ten (10) business days after all of the following have occurred: (i) Dealer has sold all of its new Motor Vehicle

---

[2] After the Hearing, counsel for New GM asked Mr. Bombard's counsel in the NYDMV to consent to the stay requested by New GM of that proceeding while this Court addresses the Bombard Motion to Enforce. *See* E-mail from Scott Davidson to Rick Guy, Esq., dated March 30, 2018, a copy of which is attached as **Exhibit "2."** To date, Mr. Guy has not respond to this e-mail, or consented to a stay of the proceeding in the NYDMV.

[3] A copy of Old GM's notice to Bombard Car Co. is attached as **Exhibit "3."**

[4] A copy of the Bombard WD Agreement is attached as Exhibit "A" to the Gilliam Decl.

inventory for the Existing Model Line prior to the termination of the Dealer Agreement, (ii) Dealer's compliance with all applicable bulk transfer, sales tax transfer or similar laws and the expiration of all time periods provided therein, (iii) Dealer's delivery to GM or the 363 Acquirer, as applicable, of certificates of applicable taxing authorities that Dealer has paid all sales, use, and other taxes or evidence reasonably satisfactory to GM or the 363 Acquirer, as applicable, that GM or the 363 Acquirer, as applicable, will have no liability or obligation to pay any such taxes that may remain unpaid, (iv) the effective date of termination of the Dealer Agreement in accordance with Section 2(a) above, (v) Dealer's compliance with the terms of Section 4(c) below, (vi) GM's or the 363 Acquirer's receipt of the fully executed Supplemental Wind-Down Agreement in substantially the form attached hereto as Exhibit A (subject to inclusion of information specific to Dealer's Dealership Operations), and (vii) GM's or the 363 Acquirer's, as applicable, receipt of any required Bankruptcy Court approvals. GM or the 363 Acquirer, as applicable, may, in its sole discretion, waive in writing any of the conditions for payment set forth in the preceding sentence.

6. Mr. Bombard was paid $32,040.75, which was the first installment of the WD Payment. *See* Gilliam Decl., ¶ 5. Mr. Bombard has acknowledged receiving this first installment. *See* March 29, 2018 Hr'g Tr. ("**March Tr.**"), at 14:19.

7. In his Adjudicatory Proceedings Request, Mr. Bombard claimed that the Bombard WD Agreement did not control because he had entered into a so-called "Participation Agreement" with Old GM in June 2009; however, at the Hearing, Mr. Bombard admitted that he did not have, and never received, either Old GM's or New GM's signature on that document. *See* March Tr., at 12:8-11.

8. Notably, after the date of the alleged Participation Agreement, Old GM sent a June 11, 2009 letter[5] to Mr. Bombard wherein it rejected a proposal to assign the Bombard

---

5  A copy of Old GM's June 11, 2009 Letter is attached as **Exhibit "4."**

3

dealership. The Old GM letter cited to the Bombard WD Agreement, and not the alleged "Participation Agreement", thus demonstrating that the only agreement that Mr. Bombard had with Old GM (or New GM) after the Old GM bankruptcy was the Bombard WD Agreement.

9. Mr. Bombard later sought reinstatement of his dealership, and New GM offered Bombard Car Co. a Letter of Intent that Mr. Bombard executed on or about March 17, 2010 ("**Bombard LOI**").[6] The Bombard LOI had multiple conditions that had to be satisfied before Bombard Car Co. could be reinstated, including (i) obtaining appropriate financing, and (ii) returning the first installment of the WD Payment. *See* Bombard LOI, ¶¶ 7, 10. The Bombard LOI would expire 60 days after its execution unless the parties agreed to an extension in writing. *Id.*, ¶ 12.

10. The Bombard LOI specifically references the Bombard WD Agreement, not Mr. Bombard's alleged "Participation Agreement" (*see* Bombard LOI, at 1), once again demonstrating that the only agreement Mr. Bombard had with Old GM (or New GM) after the Old GM bankruptcy was the Bombard WD Agreement. Moreover, if there had been a valid Participation Agreement in place at the time, as Mr. Bombard has claimed, there would have been no need for the Bombard LOI.

11. The business certificate for Bombard Car Co. expired on April 30, 2010, a few weeks before the expiration of the Bombard LOI.[7]

12. Mr. Bombard and Bombard Car Co. did not comply with the terms and conditions in the Bombard LOI. Consequently, by letter dated July 16, 2010 ("**July 2010 Letter**"),[8] New

---

[6] A copy of the Bombard LOI is attached as Exhibit "C" to the Gilliam Decl.

[7] A copy of Bombard Car Co.'s Official Business Certificate was attached to his Adjudicatory Proceedings Request as Exhibit I; a copy is attached as **Exhibit "5."**

GM notified Mr. Bombard and Bombard Car Co. that the Bombard LOI had expired, and the terms of the Bombard WD Agreement would govern the termination of the Bombard dealership. *See* Gilliam Decl., ¶¶ 8-11.

13. In accordance with the Bombard WD Agreement, the Bombard Dealer Agreement was terminated on October 31, 2010. New GM notified Mr. Bombard of this termination by letter dated November 3, 2010 ("**November 2010 Letter**").[9] As stated in the November 2010 Letter, Mr. Bombard did not comply with the terms of the Bombard LOI. Specifically, he "never provided GM with satisfactory evidence of compliance with all of the terms and conditions of the Letter of Intent, specifically, Wholesale Floorplan Financing or return of the Wind-down payment. As a result, pursuant to its terms, the Letter of Intent expired months ago." November 2010 Letter.

14. New GM has no record of Mr. Bombard returning the first installment of the WD Payment or obtaining Wholesale Floorplan financing. *See* Gilliam Decl., ¶¶ 9-10.

15. On August 28, 2013, Mr. Bombard commenced a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Northern District of New York ("**Northern District Bankruptcy Court**"), Case No. 13-31479-5-mcr.[10] Mr. Bombard's bankruptcy petition made multiple admissions—under the penalty of perjury—relevant to this matter. In his Schedule B – Personal Property, Mr. Bombard described Bombard Car Co. as an *inactive* franchise: "Bombard Car Company Inc. doing business as 'Bombard Chevrolet' – Inactive Franchise – 100% owner. Closed and Inactive status." Under "nature, location and name of business," he

---

[8]   A copy of the July 2010 Letter is attached as Exhibit "F" to the Gilliam Decl.

[9]   A copy of the November 2010 Letter is attached as Exhibit "G" to the Gilliam Decl.

[10]  A copy of Mr. Bombard's bankruptcy petition is attached as **Exhibit "6."**

5

listed Bombard Car Co., but he confirmed that it was "no longer operating." He did not list the Bombard Dealer Agreement as an executory contract in Schedule G to his petition, nor did he list any associated income in Schedule I.[11]

16. With his bankruptcy petition, Mr. Bombard also filed an "Affidavit Pursuant to LBR 2015-2" ("**LBR 2015-2 Affidavit**").[12] In it, Mr. Bombard stated as follows:

- ¶ 3    "I formerly operated two businesses in Skaneateles, New York. Those businesses were Bombard Car Co . Inc., doing business as 'Bombard Chevrolet', and You Store it Skaneateles LLC. However, the car dealership is no longer operational . . . ."

- ¶ 5    "Since 1992, I operated Bombard Chevrolet, in Skaneateles New York. The primary business of Bombard Chevrolet was the sale and service of automobiles."

- ¶¶ 7-8    "However, beginning in 2008, I could no longer effectively operate Bombard Chevrolet due to the problems General Motors faced at that time. The climate of the auto-industry, poor sales, and General Motors financial troubles ultimately closed a once successful family car business. The closing of Bombard Chevrolet substantially strained my ability to meet both my personal and business financial obligations."

- ¶ 12    "The financial difficulties from the personal and business debt I accumulated over the years, pending legal actions, and the closing of my businesses, ultimately lead to the foreclosure sale of my former home . . . ."

17. In the fall of 2014—four years after he ceased to be a GM dealer—Mr. Bombard sent New GM a fax[13] asking for a new contract: "Please forward to my e-mail all Dealership New Contract for 5 year renewal per your agreement on my Chevrolet store. I am excited about my new store and Chevrolet new product and breaking more sales records." New GM did not

---

[11] In addition, while Mr. Bombard asserted at the March 29, 2018 hearing that he had $8.9 million in assets at the time of his bankruptcy filing (*see* March Tr., at 10:22-25), his bankruptcy petition lists only $1.66 million in assets. *See* Exhibit "6" (Summary of Schedules).

[12] A copy of the LBR 2015-2 Affidavit is attached as **Exhibit "7."**

[13] A copy of the October 8, 2014 fax is attached as **Exhibit "8."**

send him a new Dealer Agreement, nor had New GM promised to do so, because Mr. Bombard had no Dealer Agreement "to renew." As noted, Bombard Car Co.'s Dealer Agreement had terminated on October 31, 2010.

18. New GM received several more communications from Mr. Bombard in 2015. *See* Reply Brief in Support of Motion to Enforce, Exh. "B." By letter dated January 5, 2016 ("**January 2016 Letter**"),[14] New GM informed Mr. Bombard—again—that he

> no longer ha[d] a General Motors Dealer Sales and Service Agreement for Chevrolet as a result of the Dealer Company's failure to comply with the March 11, 2010 Letter of Intent you executed on March 17th of that year. You received notice on both July 16, 2010 and November 3, 2010 of your failure to comply with the Letter of Intent, specifically, your failure to provide evidence of floorplan and the failure to return the initial wind-down payment within 60 days of your execution of the Letter of Intent.

19. New GM has not paid Mr. Bombard the balance of the WD Payment because he has not satisfied the conditions contained in the Bombard WD Agreement. *See* Gilliam Decl., ¶¶ 13-14. New GM explained these facts to Mr. Bombard in an email on March 5, 2016 ("**March 5, 2016 E-Mail**"),[15]

> As stated in my January letter and in the materials provided with that letter, you do not have a General Motors Dealer Sales and Service Agreement for Chevrolet. You do, however, have unclaimed wind down funds available upon completion of a number of outstanding requirements. I will be able to provide you a list of the remaining issues that must be resolved in order to receive the remainder of your wind down payment when I return to the office next week.

---

[14] A copy of the January 2016 Letter is attached as **Exhibit "9."**

[15] A copy of the March 5, 2016 E-Mail is attached as **Exhibit "10."**

20. Two days later ("**March 7, 2016 E-Mail**"),[16] Mr. Bombard was advised that there were "two forms that must be completed prior to releasing the remaining wind down funds being held on behalf of Bombard Motors. Once these are executed and provided to GM, we can complete the required sales tax compliance check. Let me know if you have any questions concerning these forms." Both forms – a Post Termination Notification (which is needed for a tax clearance process) and the Supplemental Wind-Down Agreement – were attached to this email. To date, Mr. Bombard has not completed and returned either form.

21. In sum, New GM has explained to Mr. Bombard on multiple occasions that the Bombard Dealer Agreement terminated pursuant to the terms of the Bombard WD Agreement on October 31, 2010. New GM has no record of Mr. Bombard paying back the first installment of the WD Payment. After Mr. Bombard completes the required forms and sends them to New GM, and assuming he otherwise complies with the terms of the Bombard WD Agreement (including the covenant not to sue New GM), the remaining portion of the WD Payment will be released to him. *See* Gilliam Decl., ¶ 14.

WHEREFORE, New GM respectfully requests that this Court enter an order, substantially in the form of order attached to the Bombard Motion to Enforce as Exhibit "N," granting the relief sought in the Bombard Motion to Enforce, and for such other and further relief as this Court may deem just and proper.

---

[16] A copy of the March 7, 2016 E-Mail is attached as **Exhibit "11."**

Dated: New York, New York
      April 5, 2018

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:   (212) 556-2100
Facsimile:    (212) 556-2222

*Attorneys for General Motors LLC*

9