# Exhibit 11

| | |
|---|---|
| **From:** | Deborah F. Collins <deborah.f.collins@gm.com> |
| **Sent:** | Monday, March 07, 2016 1:28 PM |
| **To:** | Pat |
| **Cc:** | Lynn Howard |
| **Subject:** | RE: Bombard |
| **Attachments:** | Bombard Post Term Notification_100713.docx; Bombard Supplemental Wind-Down Agreement (00872728).pdf |

Dear Mr. Bombard,
Attached are the two forms that must be completed prior to releasing the remaining wind down funds being held on behalf of Bombard Motors. Once these are executed and provided to GM, we can complete the required sales tax compliance check. Let me know if you have any questions concerning these forms.
Deb Collins
Deborah F. Collins
Attorney GM Legal Staff
313.665.7382 office
313.920.2880 cell


-----Original Message-----
From: Pat [mailto:summerwindsllc@gmail.com]
Sent: Saturday, March 05, 2016 5:35 PM
To: Deborah F. Collins <deborah.f.collins@gm.com>
Subject: Bombard

Ms Collins As I have Told You I Do Have A Chevrolet Franchise . Per The Facts and Law That Protects Me in New York and With Gm . U asked For Verication I provide Holly Martin A Gm Employee . She has Knowledge and Will Verify She Called me . Also Lynn Howard has Been fully In Agreement . So Once again I need You to Put in Writing I will Expect a answer Next Week Before Friday . Also I have asked You to Verify The Money on Deposit you have Not . This is Not a Game I will Win Gm needs To Honor The Agreement . As I Have As a Dealer and Man . So Let's do The Right Thing for Everyone And Move Forward in a Postive Way . Thank You Pat Bombard

Sent from my iPhone

1



## POST TERMINATION NOTIFICATION

### Terminating Dealer Company Information

Dealership Name: _____   BAC: _____

Physical Street Address: _____

City: _____   State: _____   Zip: _____

Phone Number: _____

---

### Terminating Dealer Operator Contact Information

(Please provide contact information where GM can reach the terminating Dealer Operator and an Alternate Contact for the foreseeable future)

**Dealer Operator Name:** _____

Contact street address same as the dealership address shown above? ☐ Y  ☐ N

Street Address: _____

City: _____   State: _____ Zip: _____

Contact phone number same as the dealership phone number shown above? ☐ Y  ☐ N

Phone Number: _____   Alternate Phone: _____

Email Address: _____

**Alternate Contact Name:** _____

Contact street address same as the dealership address shown above? ☐ Y  ☐ N

Street Address: _____

City: _____   State: _____ Zip: _____

Contact phone number same as the dealership phone number shown above? ☐ Y  ☐ N

Phone Number: _____   Alternate Phone: _____

Email Address: _____

**DEALER**: *Fax to your Dealer Contract Manager at*
*313-667-5461/5462*

## SUPPLEMENTAL WIND-DOWN AGREEMENT

THIS SUPPLEMENTAL WIND-DOWN AGREEMENT (this "Agreement") is made and entered into as of the 5th day of January, 2010, by BOMBARD CAR CO., INC. ("Dealer"), for the use and benefit of MOTORS LIQUIDATION COMPANY, f/k/a General Motors Corporation ("GM"), and GENERAL MOTORS LLC ("363 Acquirer").

### RECITALS

A. Dealer and GM are parties to a Dealer Sales and Service Agreement for Chevrolet motor vehicles (the "Dealer Agreement"). Dealer's dealership operations are located in Skaneateles, New York.

B. Dealer and GM are parties to that certain Wind-Down Agreement dated June 1, 2009 (the "Original Wind-Down Agreement"). All initially capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Original Wind-Down Agreement.

C. GM assigned all of its right, title and interest in the Dealer Agreement and the Original Wind-Down Agreement to the 363 Acquirer.

D. Pursuant to the Original Wind-Down Agreement, Dealer agreed to terminate and cancel the Dealer Agreement and all rights and continuing interests therein by written agreement and to release GM and its related parties from any and all liability arising out of or connected with the Dealer Agreement, any predecessor agreement(s) thereto, and the relationship between GM or the 363 Acquirer and Dealer relating to the Dealer Agreement, and any predecessor agreement(s) thereto, on the terms and conditions set forth herein, intending to be bound by the terms and conditions of this Agreement.

E. Dealer executes this Agreement in accordance with Section 3 of the Original Wind-Down Agreement.

### COVENANTS

NOW, THEREFORE, in consideration of the foregoing recitals and the premises and covenants contained herein, Dealer hereby agrees as follows:

1. Termination of Dealer Agreement.

    (a) Dealer hereby terminates the Dealer Agreement by written agreement in accordance with Section 14.2 thereof. The effective date of such termination shall be January 5, 2010.

    (b) Dealer shall timely pay all sales taxes, other taxes and any other amounts due to creditors, arising out of the operations of Dealer.

    (c) Dealer shall be entitled to receive the Final Payment Amount in accordance with the terms of the Original Wind-Down Agreement.

2. Release; Covenant Not to Sue; Indemnity.

    (a) Dealer, for itself, its Affiliates and any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors, and assigns (collectively, the "Dealer Parties"), hereby releases, settles, cancels, discharges, and acknowledges to be fully satisfied any and all claims, demands, damages, debts, liabilities, obligations, costs, expenses, liens, actions, and causes of action of every kind and

nature whatsoever (specifically including any claims which are pending in any court, administrative agency or board or under the mediation process of the Dealer Agreement), whether known or unknown, foreseen or unforeseen, suspected or unsuspected ("Claims"), which Dealer or anyone claiming through or under Dealer may have as of the date of the execution of this Agreement against GM, the 363 Acquirer, their Affiliates or any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors or assigns (collectively, the "GM Parties"), arising out of or relating to (i) the Dealer Agreement or this Agreement, (ii) any predecessor agreement(s), (iii) the operation of the dealership for the Existing Model Line, (iv) any facilities agreements, including without limitation, any claims related to or arising out of dealership facilities, locations or requirements, Standards for Excellence ("SFE") related payments or bonuses (except that the 363 Acquirer shall pay any SFE payments due Dealer for the second (2nd) quarter of 2009 and the 363 Acquirer shall not collect any further SFE related payments from Dealer for the third (3rd) quarter of 2009 or thereafter), and any representations regarding motor vehicle sales or profits associated with Dealership Operations under the Dealer Agreement, or (v) any other events, transactions, claims, discussions or circumstances of any kind arising in whole or in part prior to the effective date of this Agreement, provided, however, that the foregoing release shall not extend to (x) reimbursement to Dealer of unpaid warranty claims if the transactions giving rise to such claims occurred within ninety (90) days prior to the date of this Agreement, (y) the payment to Dealer of any incentives currently owing to Dealer or any amounts currently owing to Dealer in its Open Account, or (z) any claims of Dealer pursuant to Section 17.4 of the Dealer Agreement, all of which amounts described in (x) - (z) above of this sentence shall be subject to setoff by GM or the 363 Acquirer, as applicable, of any amounts due or to become due to GM or the 363 Acquirer, or any of their Affiliates. Neither GM nor the 363 Acquirer shall charge back to Dealer any warranty claims approved and paid by GM or the 363 Acquirer prior to the effective date of termination, as described in Section 1 above, after the later to occur of (A) the date six (6) months following payment, or (B) the effective date of termination, except that GM and the 363 Acquirer may make charge-backs for false, fraudulent or unsubstantiated claims within two (2) years of payment.

(b) Dealer, for itself, and the other Dealer Parties, hereby agrees not to, at any time, sue, protest, institute or assist in instituting any proceeding in any court or administrative proceeding, or otherwise assert (i) any Claim that is covered by the release provision in subparagraph (a) above or (ii) any claim that is based upon, related to, arising from, or otherwise connected with the assignment of the Dealer Agreement or the Original Wind-Down Agreement by GM to the 363 Acquirer in the 363 Sale, if any, or an allegation that such assignment is void, voidable, otherwise unenforceable, violates any applicable law or contravenes any agreement. Notwithstanding anything to the contrary, Dealer acknowledges and agrees that GM and the 363 Acquirer will suffer irreparable harm from the breach by any Dealer Party of this covenant not to sue and therefore agrees that GM and the 363 Acquirer shall be entitled to any equitable remedies available to them, including, without limitation, injunctive relief, upon the breach of such covenant not to sue by any Dealer Party.

(c) Dealer shall indemnify, defend and hold the GM Parties harmless, from and against any and all claims, demands, fines, penalties, suits, causes of action, liabilities, losses, damages, costs of settlement, and expenses (including, without limitation, reasonable attorneys' fees and costs) which may be imposed upon or incurred by the GM Parties, or any of them, arising from, relating to, or caused by Dealer's (or any other Dealer Parties') breach of this Agreement or Dealer's execution or delivery of or performance under this Agreement. "Affiliate" means, with respect to any Person (as defined below), any Person that controls, is controlled by or is under common control with such Person, together with its and their respective partners, venturers,

directors, officers, stockholders, agents, employees and spouses. "Person" means an individual, partnership, limited liability company, association, corporation or other entity. A Person shall be presumed to have control when it possesses the power, directly or indirectly, to direct, or cause the direction of, the management or policies of another Person, whether through ownership of voting securities, by contract, or otherwise.

3. Due Authority. Dealer and the individual(s) executing this Agreement on behalf of Dealer hereby jointly and severally represent and warrant to GM and the 363 Acquirer that this Agreement has been duly authorized by Dealer and that all necessary corporate action has been taken and all necessary corporate approvals have been obtained in connection with the execution and delivery of and performance under this Agreement.

4. Confidentiality. Dealer hereby agrees that, without the prior written consent of both GM and the 363 Acquirer, it shall not, except as required by law, disclose to any person (other than its agents or employees having a need to know such information in the conduct of their duties for Dealer, which agents or employees shall be bound by a similar undertaking of confidentiality), the terms or conditions of this Agreement or any facts relating hereto or to the underlying transactions.

5. Informed and Voluntary Acts. Dealer has reviewed this Agreement with its legal, tax, or other advisors, and is fully aware of all of its rights and alternatives. In executing this Agreement, Dealer acknowledges that its decisions and actions are entirely voluntary and free from any duress.

6. Binding Effect. This Agreement shall be binding upon any replacement or successor dealer as referred to in the Dealer Agreement and any successors or assigns, and shall benefit any of GM's and the 363 Acquirer's successors or assigns.

7. Continuing Jurisdiction. By executing this Agreement, Dealer hereby consents and agrees that the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto. The terms of this Section 7 shall survive the termination of this Agreement.

8. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the state of Michigan.

9. No Reliance. Dealer represents and agrees that, in delivering this Agreement, it has not relied upon any oral or written agreements, representations, statements, or promises, express or implied, not specifically set forth in this Agreement. No waiver, modification, amendment or addition to this Agreement is effective unless evidenced by a written instrument signed by an authorized representative of the parties, and each party acknowledges that no individual will be authorized to orally waive, modify, amend or expand this Agreement. The parties hereto expressly waive application of any law, statute, or judicial decision allowing oral modifications, amendments, or additions to this Agreement notwithstanding this express provision requiring a writing signed by the parties.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Dealer has executed this Agreement through its duly authorized representative as of the day and year first above written.

BOMBARD CAR CO., INC.

By:_____
Name:_____
Title:_____