**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Motors Liquidation Company, f/k/a General Motors Corporation, *et al.*,<br><br>                                    Debtors. | NOT FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 09-50026 (MG)<br>(Jointly Administered) |

**MEMORANDUM OPINION AND ORDER GRANTING GENERAL MOTORS LLC'S MOTION TO ENFORCE SALE ORDER WITH RESPECT TO PAT BOMBARD**

*A P P E A R A N C E S:*

KING & SPALDING LLP
*Attorneys for General Motors LLC*
1185 Avenue of the Americas
New York, NY 10036
By:    Arthur Steinberg, Esq.
         Scott Davidson, Esq.

PAT J. BOMBARD
*Pro Se*
5 Wheeler Avenue
Fayettville, NY 13066
By:    Pat Bombard

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is General Motors LLC's ("New GM") *Motion to Enforce the Bankruptcy Court's Sale Order and Court-Approved Deferred Termination (Wind-Down) Agreement with Respect to Pat Bombard* (the "Motion," ECF Doc. # 14243), seeking to enjoin Pat J. Bombard ("Bombard") from proceeding with the *Franchised Motor Vehicle Dealer Request for Adjudicatory Proceedings* filed with the New York State Department of Motor Vehicles ("NYDMV") on December 19, 2017 (the "Adjudicatory Proceedings Request"). Bombard filed a *pro se* response to the Motion (the "Objection," ECF Doc. # 14255), and New

GM filed a reply to the Objection (the "Reply," ECF Doc. # 14253). On March 29, 2018, the Court held a hearing (the "Hearing") on the Motion, during which the Court instructed the parties to provide further information with respect to (i) payments made pursuant to the Bombard WD Agreement (as defined below), and (ii) whether Bombard Car Co., Inc. ("Bombard Car Co.") timely performed the Bombard LOI (as defined below) (collectively, the "Outlined Issues"). New GM subsequently filed a supplemental memorandum in further support of the Motion (the "Supplemental Memorandum," ECF Doc. # 14268) on April 5, 2018. Attached to the Supplemental Memorandum as Exhibit 1 is the declaration of Marlin E. Gilliam in support of the Motion (the "Gilliam Declaration"). On that same day, Bombard filed a letter "[t]o present facts, exhibits, and proof outlining Chevrolet franchise owner Pat. J. Bombard per the March 29, 2018 request of the court" (the "Supplemental Letter," ECF Doc. # 14269).

For the reasons set forth below, New GM's Motion is **GRANTED**.

## I. BACKGROUND[1]

### A. The Sale Order and Sale Agreement

On June 1, 2009 (the "Petition Date"), General Motors Corporation ("Old GM") commenced a case under chapter 11 of the Bankruptcy Code in this Court. That same day, it filed a motion seeking approval of the original version of a sale agreement (as amended, the "Sale Agreement"), pursuant to which substantially all of Old GM's assets were to be sold to New GM. *See In re Gen. Motors Corp.*, 407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009). The order approving the sale (the "Sale Order," ECF Doc. # 2968) was entered on July 5, 2009, and the sale ("363 Sale") closed on July 10, 2009.

As part of the transactions approved by the Sale Order, Old GM entered into and, thereafter, assigned to New GM, certain Wind-Down and other Deferred Termination

---

[1] The following facts are taken from the Motion.

2

Agreements between Old GM and certain of its dealers. (Mot. ¶ 3.) Old GM offered these agreements to dealers as an alternative to outright rejection of their General Motors Dealer Sales and Service Agreements (each a "Dealer Agreement") under section 365 of the Bankruptcy Code. (*Id.*) These agreements provided, among other things, that, in exchange for certain wind-down payments and other consideration, the Dealer Agreement would terminate no later than October 31, 2010. (*Id.*)

The Sale Order approved the Wind-Down and other Deferred Termination Agreements to be entered with accepting dealers and retained exclusive jurisdiction to enforce and implement these agreements. (Sale Order ¶¶ 31, 71.)[2]

### B. The Bombard WD Agreement

Before the Petition Date, Bombard, through his dealership, Bombard Car Co., was a party to a Dealer Agreement with Old GM (the "Bombard Dealer Agreement"). (Mot. ¶ 7.) On the Petition Date, Old GM sent Bombard Car Co. notice that the Bombard Dealer Agreement would not continue but that Bombard Car Co. would be wound down as a GM dealer. (Mot. Ex. D.) Bombard Car Co. was provided a Wind-Down Agreement, which Bombard and Old GM executed on June 1, 2009 (the "Bombard WD Agreement," Mot. Ex. B), terminating the Bombard Dealer Agreement "no earlier than January 1, 2010 and no later than October 31,

---

[2] The Sale Order specifically provides that "Executed Deferred Termination Agreements represent valid and binding contracts, enforceable in accordance with their terms" (Sale Order ¶ 31) and that:

> This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement], . . . and each of the agreements executed in connection therewith, including the Deferred Termination Agreements, in all respects, including, but not limited to, retaining jurisdiction to . . . (f) resolve any disputes with respect to or concerning the Deferred Termination Agreements.

(*Id.* ¶ 71.) The Sale Order defines the term "Deferred Termination Agreements" to include "Wind-Down Agreements. (*Id.* ¶ JJ.)

2010." (*Id.* ¶ 2(a).) The Bombard WD Agreement also provided Bombard Car Co. certain wind-down payments (the "WD Payment") totaling $128,163.00. (*Id.* ¶ 3(a).) Bombard was to initially receive 25% of the WD Payment (*id.* ¶ 3(b)), with the balance to be made

> within ten (10) business days after all of the following have occurred: (i) Dealer has sold all of its new Motor Vehicle inventory for the Existing Model Line prior to the termination of the Dealer Agreement, (ii) Dealer's compliance with all applicable bulk transfer, sales tax transfer or similar laws and the expiration of all time periods provided therein, (iii) Dealer's delivery to GM or the 363 Acquirer, as applicable, of certificates of applicable taxing authorities that Dealer has paid all sales, use, and other taxes or evidence reasonably satisfactory to GM or the 363 Acquirer, as applicable, that GM or the 363 Acquirer, as applicable, will have no liability or obligation to pay any such taxes that may remain unpaid, (iv) the effective date of termination of the Dealer Agreement in accordance with Section 2(a) above, (v) Dealer's compliance with the terms of Section 4(c) below, (vi) GM's or the 363 Acquirer's receipt of the fully executed Supplemental Wind-Down Agreement in substantially the form attached hereto as Exhibit A (subject to inclusion of information specific to Dealer's Dealership Operations), and (vii) GM's or the 363 Acquirer's, as applicable, receipt of any required Bankruptcy Court approvals. GM or the 363 Acquirer, as applicable, may, in its sole discretion, waive in writing any of the conditions for payment set forth in the preceding sentence.

(*Id.*) The Bombard WD Agreement was assumed and assigned to New GM pursuant to the Sale Order and Sale Agreement. (Mot. ¶ 7.)

Bombard later sought reinstatement, and New GM offered Bombard Car Co. a letter of intent for that purpose. Bombard executed the letter of intent on March 17, 2010 (the "Bombard LOI," Mot. Ex. E). The Bombard LOI included conditions that had to be satisfied before Bombard Car Co. could be reinstated, including (i) obtaining appropriate financing, and (ii) returning the $32,040.75 first installment of the WD Payment. (*See* Bombard LOI, ¶¶ 1–10.) By its express terms, the Bombard LOI was set to "expire sixty (60) days after execution by Dealer Company [or by May 16, 2010] unless an extension is agreed to in writing by the Parties." (*Id.* ¶ 12.)

4

On July 16, 2010 (the "July 2010 Letter," Mot. Ex. F), New GM advised Bombard and Bombard Car Co. that it had not provided Old GM with satisfactory evidence of compliance with all the terms of the Bombard LOI within the 60 days period. Consequently, New GM notified Bombard Car Co. that the Bombard LOI had expired, so that the terms of the Bombard WD Agreement would govern the termination of Bombard Car Co. as a GM dealer. (Mot. ¶ 9.)

Under the terms of the Bombard WD Agreement, the Bombard Dealer Agreement was terminated on October 31, 2010. (WD Agreement ¶ 2; *see also* Mot. ¶ 10.) New GM notified Bombard of this termination by letter dated November 3, 2010 (the "November 2010 Letter," Mot. Ex. G). The November 2010 Letter provided, in relevant part, that Bombard Car Co. "never provided GM with satisfactory evidence of compliance with all the terms and conditions of the Letter of Intent, specifically, Wholesale Floorplan Financing or return of the Wind-down payment." (*See* Nov. 2010 Letter.)

### C. Bombard's Bankruptcy Filing

On August 28, 2013, Bombard filed a chapter 11 bankruptcy case in the United States Bankruptcy Court for the Northern District of New York, Case No. 13-31479-5-mcr. (Mot. ¶ 11.) Bombard's chapter 11 bankruptcy case was dismissed on September 19, 2013, at the request of the United States Trustee and Bombard's mortgage company. (*Id*. ¶ 13.)

### D. The Bombard Adjudicatory Proceedings Request

On December 19, 2017, Bombard filed his Adjudicatory Proceedings Request with the NYDMV. In a Statement of Facts, filed as part of the Adjudicatory Proceedings Request and attached to New GM's Motion (the "Statement of Facts," Adjudicatory Proceedings Request at 4–6), Bombard requested that "General Motors" fulfill the renewal of his franchise so that he can elect to either operate it or sell it in accordance with the terms of the Franchise Agreement."

5

Bombard further requested that "General Motors be directed to give due consideration and approval to any sale of the Franchise that Bombard may agree to with a capable and otherwise qualified purchaser." (*See* Statement of Facts.) In support of his request, Bombard argues that:

i. "GM" violated section 463(2)(ff)(1), *et seq*. of the Vehicle and Traffic Law by requiring Bombard to build a brand new facility as part of the Participation Agreement;

ii. "GM" violated sections 463.2(e)(2) and 463.2(d)(1) of the Vehicle and Traffic Law by refusing to renew in bad faith and without cause the Dealer Agreement; and

iii. GM's failure to renew Bombard's dealership and failure to approve the sale of the dealership violated section 466.1 of the Vehicle and Traffic Law as GM directly imposed unreasonable restrictions on the sale and on Bombard's right to renew the dealership.

(*See id.*)

After receiving the Adjudicatory Proceedings Request, New GM, by letter dated February 6, 2018, notified Bombard that his request contained legal and factual inaccuracies, specifically asking him to withdraw the Adjudicatory Proceedings Request. (*See* Mot. Ex. L.) By e-mail dated February 16, 2018, counsel for Bombard refused. (*See* Mot. Ex. M.) A hearing before the NYDMV is scheduled on April 23, 2018. (Obj. at 7.)

### E. The Motion

New GM seeks entry of an order, under the Sale Order and sections 2(a), 5 and 13 of the Bombard WD Agreement, ordering Bombard to withdraw his Adjudicatory Proceedings Request with the NYDMV with prejudice, to cease and desist from all efforts to assert the claims asserted in the Adjudicatory Proceedings Request, and to cease and desist from taking any action or attempting in any way to avoid the terms of the Bombard WD Agreement. (Mot. ¶ 25.)

New GM argues that Bombard, who is not and has not been an authorized GM dealer for almost eight years, improperly seeks to avoid his obligations under the Bombard WD Agreement

by disregarding its broad release and covenant not to sue. (*Id*. ¶ 1.) New GM also contends that Bombard ignores that Bombard Car Co. and Old GM agreed that this Court has exclusive jurisdiction to interpret, enforce, and adjudicate any dispute regarding the Bombard WD Agreement, instead proceeding with the Adjudicatory Proceedings Request in the NYDMV. (*Id*.)

New GM explains that Bombard relies on what appears to be a doctored "Participation Agreement" not signed by Old GM, which allegedly "reinstated" Bombard Car Co. as a GM-authorized dealership. New GM argues that Bombard's Statement of Facts is replete with misrepresentations, including:

  i. Bombard acknowledged executing the Bombard WD Agreement but falsely claims that it was "rescinded" within days and that he entered into a "Participation Agreement" with Old GM on June 1, 2009. (Statement of Facts at 4.) New GM emphasizes, however, that this document is not signed by Old GM or New GM, and that it appears to have been modified without New GM's knowledge or consent: All references to "Bombard Car Company" and "Pat Bombard" are in a different font and superimposed on top of the rest of the text, and the signature part still includes the executing dealer named as "[DEALER ENTITY CORPORATE NAME]." (Mot. ¶ 15.) New GM thus argues that there is no June 1, 2009 Participation Agreement between Old GM (or New GM) and Bombard Car Co.; (*Id*. ¶ 16)[3] and

  ii. Bombard asserts that the "Participation Agreement" expired on October 31, 2010, and a "new Dealership and Sales Agreement was entered by the parties, with an automatic 5-year renewal term." (Statement of Facts at 4–5.) But New GM explains that this "new" agreement, purportedly annexed as Exhibit F to Bombard's Statement of Facts, is the exact same document that Bombard attached as Exhibit C, *i.e.*, the so called "Participation Agreement" discussed above. (Mot. ¶ 19.)

New GM also argues that Bombard's assertions about the purported "Participation Agreement" are contradicted by Bombard's sworn admissions in the United States Bankruptcy

---

[3] In support of this contention, New GM also argues that had the "Participation Agreement" existed between the parties, Bombard would have had no reason to execute the Bombard LOI in March 2010 since the Bombard LOI references an amendment to the Bombard WD Agreement (not the Participation Agreement) upon satisfaction of the conditions listed in the Bombard LOI. (Mot. ¶ 17.)

7

Court for the Northern District of New York. Specifically, in Schedule B of Bombard's bankruptcy petition dated August 2013 (the "Petition," Mot. Ex. H), Bombard described Bombard Car Co. as an "Inactive Franchise . . . Closed and Inactive status" (Pet. at 12), and stated that Bombard Car Co. was "no longer operating." (*Id*. at 38.) Bombard also did not list the Bombard Dealer Agreement as an executory contract in Schedule G to his petition, nor did he list any associated income in Schedule I. (*Id*. at 25, 28.) With his Petition, Bombard also filed an "Affidavit Pursuant to LBR 2015-2" (the "LBR 2015-2 Affidavit," Mot. Ex. I), stating:

   i.   "I formerly operated two businesses in Skaneateles, New York. Those businesses were Bombard Car Co. Inc., doing business as 'Bombard Chevrolet', and You Store it Skaneateles LLC. However, the car dealership is no longer operational . . . ." (LBR 2015-2 Aff. ¶ 3);

   ii.  "Since 1992, I operated Bombard Chevrolet, in Skaneateles New York. The primary business of Bombard Chevrolet was the sale and service of automobiles." (*Id*. ¶ 5);

   iii. "However, beginning in 2008, I could no longer effectively operate Bombard Chevrolet due to the problems General Motors faced at that time. The climate of the auto-industry, poor sales, and General Motors financial troubles ultimately closed a once successful family car business. The closing of Bombard Chevrolet substantially strained my ability to meet both my personal and business financial obligations." (*Id*. ¶¶ 7–8); and

   iv.  "The financial difficulties from the personal and business debt I accumulated over the years, pending legal actions, and the closing of my businesses, ultimately lead to the foreclosure sale of my former home . . . ." (*Id*. ¶ 12.)

F.   **Bombard's Objection**

Bombard, appearing *pro se*, explains that "Plaintiff's claim must be dismissed because it is without merit based upon all documents provided to the court. They are clearly trying to hurt the defendant by using bankruptcy court as a way to delay and cause financial and personal damage." (Obj. at 1, 3.) Bombard cites to Vehicle and Traffic Law Sections 463(2)(e)(1), 465(7) and CPLR 3211(a)(2), (4) and (5), and attaches the *Beck Chevrolet v. General Motors*

*LLC*, 845 F.3d 68 (2d Cir. 2016) case, but does not explain how these authorities support his argument.

### G. New GM's Reply

New GM argues that under the governing Bombard WD Agreement, (a) the Bombard Dealership Agreement terminated in 2010, (b) Bombard and Bombard Car Co. granted Old GM and New GM broad releases that bar any claims, and (c) Bombard and Bombard Car Co. covenanted not to sue New GM. (Reply ¶ 1.) New GM further contends that the statutes that Bombard references do not control here, and that under both the Sale Order and the Bombard WD Agreement, which controls the relationship between Old GM (and New GM) and Bombard Car Co. and Bombard, this Court—not the NYDMV— has exclusive jurisdiction to entertain disputes relating to the Bombard WD Agreement. (*Id*. ¶ 2.)

### H. Bombard's Supplemental Letter

Following the Hearing held on March 29, 2018, Bombard filed a Supplemental Letter. The Supplemental Letter submits substantially the same allegations and directs, without further explanations, to the same authorities as those already submitted in the Objection. (*See* Suppl. Letter). Significantly, the Supplemental Letter attaches 75 pages of exhibits, with no explanation of their relevance to the Outlined Issues. None of the exhibits is relevant to the Outlined Issues.

### I. New GM's Supplemental Memorandum

The Supplemental Memorandum filed by New GM, addressing the Outlined Issues, argues that Bombard in fact received payment of $32,040.75 in satisfaction of the first installment of the WD Payment (Decl. in Supp. ¶ 4), which was acknowledged by Bombard at the Hearing. (Suppl. Mem. ¶ 6.) New GM produces a spreadsheet reflecting New GM's payment to Bombard. (Decl. in Supp., Ex. B.) New GM further contends that, according to its

9

records, Bombard never returned that first installment, and never satisfied the Wholesale Floorplan financing requirement of the Bombard LOI, so that Bombard failed to comply with at least two of the Bombard LOI requirements. (Decl. in Supp. ¶ 8; *see also* Nov. 2010 Letter.) New GM produces screenshots reflecting New GM's records documenting the non-repayment of the $32,040.75 first installment (Decl. in Supp., Ex. D) and Bombard's failure to provide evidence of the Wholesale Floorplan financing. (Decl. in Supp., Ex. E.)

New GM also explains that New GM has not paid Bombard the $96,122.25 balance of the WD Payment because Bombard has not satisfied the conditions contained in the Bombard WD Agreement. (Decl. in Supp. ¶ 13; *see also* Decl. in Supp., Ex. H.) As New GM explains, "[a]fter Mr. Bombard completes the required forms and sends them to New GM, assuming he otherwise complies with the terms of the Bombard WD Agreement (including the covenant not to sue New GM), the remaining portion of the WD Payment will be released to him." (Suppl. Mem. ¶ 21.)

## II.     LEGAL STANDARD

### A.   Jurisdiction

#### 1.   *Jurisdiction Over Disputes Relating to the Bombard WD Agreement*

The Sale Order granted exclusive jurisdiction to this Court to enforce and implement the provisions of the Sale Order, including Deferred Termination Agreements. Paragraph 71 of the Sale Order provides, in relevant part:

> This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement], . . . and each of the agreements executed in connection therewith, including the Deferred Termination Agreements, in all respects, including, but not limited to, retaining jurisdiction to . . . (f) resolve any disputes with respect to or concerning the Deferred Termination Agreements.

(Sale Order ¶ 71.) The Sale Order defines the term "Deferred Termination Agreements" as including "Wind-Down Agreements." Recital JJ of the Sale Order provides in relevant part that "[p]ursuant to Section 6.7(a) of the MPA, GM offered Wind-Down Agreements and Deferred Termination Agreements (collectively, the "Deferred Termination Agreements") in forms prescribed by the MPA to franchised motor vehicle dealers . . . ." (Sale Order ¶ JJ.)

The Bombard WD Agreement likewise granted exclusive jurisdiction to this Court to enforce the provisions of the Bombard WD Agreement:

> Continuing Jurisdiction. By executing this Agreement, Dealer hereby consents and agrees that the Bankruptcy Court shall retain, full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto. The terms of this Section 13 shall survive the termination of this Agreement.

(Bombard WD Agreement ¶ 13.)

### 2. *Jurisdiction Over Disputes Relating to Participation Agreements*

Pursuant to the Sale Order, this Court did not assume jurisdiction over disputes relating to Participation Agreements entered with dealers. Paragraph 32 of the Sale Order provides, in relevant part, that "[a]ny disputes that may arise under the Participation Agreements shall be adjudicated on a case by case basis in an appropriate forum other than this Court. (Sale Order ¶ 32.) Paragraph 71 of the Sale Order similarly provides, in relevant part:

> The Court does not retain jurisdiction to hear dispute arising in connection with the application of the Participation Agreements . . . which disputes shall be adjudicated as necessary under applicable law in other court or administrative agency competent.

(Sale Order ¶ 71.)

### B.   Releases and Covenant Not to Sue Under the Bombard WD Agreement

The Bombard WD Agreement terminated the Dealer Agreement with Bombard. Section 2(a) of the Bombard WD Agreement provides, in relevant part:

11

> Dealer hereby covenants and agrees to conduct the Subject Dealership Operations until the effective date of termination of the Dealer Agreement, which shall not occur earlier than January 1, 2010 or later than October 31, 2010, under and in accordance with the terms of the Dealer Agreement, as supplemented by the terms of this Agreement. Accordingly, Dealer hereby terminates the Dealer Agreement by written agreement in accordance with Section 14.2 thereof, such termination to be effective on October 31, 2010. . . .

(Bombard WD Agreement ¶ 2(a).)

Section 5 of the Bombard WD Agreement also contains release and covenant not to sue provisions, and provides, in relevant part:

> (a) Dealer, for itself, its Affiliates and any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors, and assigns (collectively, the "Dealer Parties"), hereby releases, settles, cancels, discharges, and acknowledges to be fully satisfied any and all claims, demands, damages, debts, liabilities, obligations, costs, expenses, liens, actions, and causes of action of every kind and nature whatsoever (specifically including any claims which are pending in any court, administrative agency or board or under the mediation process of the Dealer Agreement), whether known or unknown, foreseen or unforeseen, suspected or unsuspected ("Claims"), which Dealer or anyone claiming through or under Dealer may have as of the date of the execution of this Agreement against GM, the 363 Acquirer, their Affiliates or any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors or assigns (collectively, the "GM Parties"), arising out of or relating to (i) the Dealer Agreement or this Agreement, (ii) any predecessor agreement(s), (iii) the operation of the dealership for the Existing Model Line, (iv) any facilities agreements, . . . (v) any other events, transactions, claims, discussions or circumstances of any kind arising in whole or in part prior to the effective date of this Agreement . . . .
>
> (c) Dealer, for itself, and the other Dealer Parties, hereby agrees not to, at any time, sue, protest, institute or assist in instituting any proceeding in any court or administrative proceeding, or otherwise assert (i) any Claim that is covered by the release provision in subparagraph (a) above or (ii) any claim that is based upon, related to, arising from, or otherwise connected with the assignment of the Dealer Agreement or this Agreement by GM to the 363 Acquirer in the 363 Sale, if any, or an allegation that such assignment is void, voidable, otherwise unenforceable, violates any applicable law or contravenes any agreement. As a result of the foregoing, any such breach shall absolutely entitle GM or the 363 Acquirer, as

12

>applicable, to an immediate and permanent injunction to be issued by any court of competent jurisdiction, precluding Dealer from contesting GM's or the 363 Acquirer's, as applicable, application for injunctive relief and prohibiting any further act by Dealer in violation of this Section 7 [sic]. In addition, GM or the 363 Acquirer, as applicable, shall have all other equitable rights in connection with a breach of this Section 7 [sic] by Dealer, including, without limitation, the right to specific performance.

(Bombard WD Agreement ¶ 5.)

### III.    DISCUSSION

First, Bombard produced almost no papers in this case. Bombard's Opposition and Supplemental Letter contain no contentions of fact or law, does not include any legal argument in support of Bombard's position, and fails to refute any of New GM's argument presented in its Motion. The Court concludes that New GM's arguments properly support granting the relief requested.

Further, neither Old GM nor New GM entered into a "Participation Agreement" with Bombard or Bombard Car Co. Bombard's claim that "GM" violated section 463(2)(ff)(1), *et seq*. of the Vehicle and Traffic Law by requiring Bombard to build a new facility under the "Participation Agreement" therefore need not be examined. While the Sale Order provides that this Court did not assume jurisdiction over disputes relating to Participation Agreements entered with dealers (*see* Sale Order ¶¶ 32, 71), New GM has shown, and Bombard has failed to show, that a Participation Agreement with Bombard ever existed.[4] Particularly significant is the absence of any Old GM authorized representative's signature on the document that Bombard submitted to support his contention that there is a binding Participation Agreement. As outlined in the Motion, all references to "Bombard Car Company" and "Pat Bombard" are in a different font and superimposed on top of the rest of the text. Additionally, the signature blocks include

---

[4] In the remote possibility that Bombard rather refers to the Bombard LOI, while the Bombard LOI did include facility and locations requirements (*see* Bombard LOI ¶¶ 2–3), nowhere in that letter nor in any document provided to the Court did New GM require Bombard to build a new facility for the exploitation of the franchise.

13

the executing dealer named as "[DEALER ENTITY CORPORATE NAME]."  The Bombard WD Agreement, signed by both parties, does not contain similar irregularities.  Finally, Bombard's contention that he remained a General Motors franchised car dealer is directly contradicted by his sworn statements in his bankruptcy case in the Bankruptcy Court for the Northern District of New York.

Under the unambiguous provisions of the Sale Order and the Bombard WD Agreement, this Court has exclusive jurisdiction with respect to the remainder of Bombard's claims.  The Sale Order granted exclusive jurisdiction to this Court to enforce and implement the provisions of the Sale Order, including the Wind-Down Agreements.  (*See* Sale Order ¶¶ 71, JJ.)  By executing the Bombard WD Agreement, Bombard expressly agreed that this Court retains exclusive jurisdiction to adjudicate disputes "concerning the terms of [the Bombard WD Agreement] and any other matter related thereto."  (Bombard WD Agreement ¶ 13.)  It is unclear what claims Bombard seeks to asserts against Old GM or New GM—referring to "GM" or "General Motors" without distinguishing between the two entities.  Bombard's claims based on sections 463(2)(e)(2) and (2)(d)(1) and 466(1) of the Vehicle and Traffic Law for imposing unreasonable restrictions on Bombard's right to and refusing to renew the Bombard Dealer Agreement relate to the termination of the Bombard Dealer Agreement.  The Bombard Dealer Agreement was expressly terminated by the Bombard WD Agreement.  (*See* Bombard WD Agreement ¶ 2(a).)  Bombard's claims under these provisions are thus covered by the jurisdiction clause of the Bombard WD Agreement and must exclusively be dealt with in this Court.

Bombard agreed to the release and covenant not to sue provisions when he entered the Bombard WD Agreement.  The Bombard WD Agreement provides that Bombard Car Co. and all of its members, including Bombard, released any claim they may have had as of the date of the

14

execution of the Bombard WD Agreement against Old GM or New GM arising out of or relating to, among others, the Bombard Dealer Agreement or the Bombard WD Agreement. They also agreed not to sue Old GM or New GM for any of those claims. (*See* Bombard WD Agreement ¶ 5.) The Bombard WD Agreement thus precludes Bombard from asserting any claims against Old GM or New GM arising under or relating to the Bombard Dealer Agreement or the Bombard WD Agreement. Bombard's claims against New GM before the NYDMV under sections 463(2)(e)(2) and (2)(d)(1) and 466(1) of the Vehicle and Traffic Law are barred by the release and covenant not to sue. Therefore, Bombard must withdraw his Adjudicatory Proceedings Request with the NYDMV with prejudice.

Additionally, Bombard has failed to establish that Bombard or Bombard Car Co. returned the $32,040.75 first installment WD Payment (as he contended at the first hearing), or that the other requirements under the Bombard LOI were satisfied. During the resumed hearing on April 12, 2018, Bombard pointed to an exhibit attached to his Supplemental Letter, arguing that it supported his contention that he had repaid the $32,040.75 to New GM. (*See* Suppl. Letter at 19–20.) The exhibit includes a blank check of Bombard Car Co. that is marked "VOID"; the check does not include any date or dollar amount; it includes the Bombard Car Co. account number. The next page of the same exhibit includes a deposit slip, showing a deposit of $31,093.04 *into a different account*. These documents fail to show that Bombard or Bombard Car Co. repaid the $32,040.75 to New GM. The amount of the deposit does not correspond to the amount Bombard was supposed to repay to New GM. And Bombard offered no evidence that any funds were actually paid or transferred to New GM, something that Bombard said he would do when the question arose at the March 29, 2018 Hearing. Bombard also failed to show that he complied with the other requirements of the Bombard LOI.

On the other hand, New GM provided the Gilliam Declaration and business records showing that Bombard received the first installment of the WD Payment, a fact that is not contested. The Gilliam Declaration and the business records are admissible to show that New GM did not receive any repayment. (*See* Gilliam Decl. ¶ 9 and Ex. D.) The Gilliam Declaration also shows that Bombard failed to satisfy other requirements of the Bombard LOI by providing evidence of the Wholesale Floorplan financing. (*See id.* ¶ 8; *id.* Ex. D, E.) The absence from a record of regularly conducted business activity is admissible to prove that the matter does not exist. *See* Fed. R. Evid. 803(7).

Finally, New GM acknowledges that the $96,122.25 balance of the WD Payment has not been paid to Bombard because Bombard has not satisfied the requirements contained in the Bombard WD Agreement. (Decl. in Supp. ¶ 13.) New GM acknowledged that it would release the remaining portion of the WD Payment, *provided that* the terms of the Bombard WD Agreement, including the covenant not to sue New GM, are satisfied. (Suppl. Mem. ¶ 21.)

## IV.  CONCLUSION

For the foregoing reasons, New GM's Motion to enforce is **GRANTED**. Bombard is **ENJOINED** from proceeding with a hearing before the NYDMV, and he is **ORDERED** to withdraw all of his claims filed with the NYDMV within fourteen (14) days from the date of this Opinion and Order.

**IT IS SO ORDERED.**

Dated: April 13, 2018

                                                    *Martin Glenn*
                                           MARTIN GLENN
                                  United States Bankruptcy Judge