KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
In re:                                                        :    Chapter 11
                                                              :
MOTORS LIQUIDATION COMPANY, *et al.*,                         :    Case No.: 09-50026 (MG)
        f/k/a General Motors Corp., *et al.*                  :
                                                              :    (Jointly Administered)
                    Debtors.                                  :
------------------------------------------------------------- x

**SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF
MOTION BY GENERAL MOTORS LLC TO ENFORCE THE BANKRUPTCY
COURT'S JULY 5, 2009 SALE ORDER AND THE RULINGS IN CONNECTION
<u>THEREWITH, WITH RESPECT TO THE MOORE, *ET AL.* PLAINTIFFS</u>**

1

TABLE OF CONTENTS

A.  The Sale Decision And The Sale Order Provide The Context For Construing The Sale Agreement ........................................................................................................................ 3

B.  The Sale Agreement Provides That New GM Did Not Assume Third Party Claims Relating To A Pre-Sale Release of Hazardous Materials From Transferred Real Property Except To The Extent Such Claims Are Based On New GM's Conduct Or Ownership Of Such Property ................................................................................................................... 6

    1.  The Relevant Term Is "Environmental Law"—Not "Law" .................................. 8

    2.  The Language Of The Sale Agreement Demonstrates That The Scope Of Assumed Environmental Liabilities Is Much Narrower Than The Scope Of Retained Environmental Liabilities ..................................................................... 10

    3.  The Clause Uses Words Of Limitation ................................................................ 11

C.  Principles Of Contract Construction And New York Law Support The Argument That The Moore Plaintiffs' Common Law Claims Are Retained Liabilities ........................... 12

    1.  Common Law Claims Were Not Specifically Assumed By New GM ................. 12

    2.  The Sale Agreement Should Not Be Interpreted To Have An Exception That Would Swallow The General Rule ....................................................................... 14

DMSLIBRARY01\21600\230002\32096365.v1-4/20/18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1031 Lapeer L.L.C. v. Rice*,
  290 Mich. App. 225 (2010) ..................................................................................................11

*Am. Honda Fin. Corp. v. Simao*,
  526 F. App'x 112 (2d Cir. 2013) ..........................................................................................13

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust*,
  93 F.3d 1064 (2d Cir. 1996)..................................................................................................13

*Comm'r of Internal Revenue v. Nat'l Carbide Corp.*,
  167 F.2d 304 (C.A.2 1948) .....................................................................................................9

*Corral v. Outer Marker LLC*,
  No. 10-CV-1162 (SJF)(ARL), 2012 WL 243318 (E.D.N.Y. Jan. 24, 2012)..........................13

*In re Gen. Motors Corp.*,
  407 B.R. 463 (Bankr. S.D.N.Y. 2009) *aff'd sub nom., In re Motors
  Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010) and 430 B.R. 65 (S.D.N.Y.
  2010); *aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.),
  *cert. denied*, 137 S.Ct. 1813 (2017) ...............................................................................1, 4, 5

*Hillside Metro Assoc., LLC v. JP Morgan Chase Bank*,
  No. 10–CV–1772 (JG)(SMG), 2011 WL 5008368 (E.D.N.Y. Oct., 20, 2011) ........................8

*Hooper Assocs., Ltd. v. AGS Computs., Inc.*,
  74 N.Y.2d 487 (1989) ...........................................................................................................13

*IBM Poughkeepsie Emps. Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*,
  590 F. Supp. 769 (S.D.N.Y. 1984)........................................................................................12

*Metz v. U.S. Life Ins. Co.*,
  No. 09 Civ. 10250(BSJ), 2010 WL 3703810 (S.D.N.Y. Sept. 21, 2010) ................................8

*In re Motors Liquidation Co.*,
  428 B.R. 43 (S.D.N.Y. 2010)................................................................................................14

*In re Motors Liquidation Co.*,
  541 B.R. 104 (Bankr. S.D.N.Y. 2015)........................................................................6, 9, 10

*In re Motors Liquidation Co.*,
   549 B.R. 607 (Bankr. S.D.N.Y. 2016) ........................................................................................6

*Quadrant Structured Prods. Co.*,
   23 N.Y.3d. 549 (2014) ............................................................................................................12

*Symbol Technologies, Inc. v. Voicenet (Aust.) Ltd.*,
   No. CV-03-6010 (SJF)(ARL), 2008 WL 89626 (E.D.N.Y. Jan. 4, 2008) ..............................13

*Terwilliger v. Terwilliger*,
   206 F.3d 240 (2d Cir. 2000) ..............................................................................................7, 14

**Other Authorities**

Fed. R. Bankr. P. 7052 .....................................................................................................................3

Fed. R. Bankr. P. 9014 .....................................................................................................................3

At the March 29, 2018 hearing ("**Hearing**") on the Moore Motion to Enforce,[1] the Court asked the parties to brief the "question whether Michigan common law claims for damages for personal injury or property damage from environmental contamination are among the assumed liabilities" (the "**Common Law/Retained Liability Issue**").[2] The short answer is *no*.

Section 2.3(b)(iv)(C) makes clear that third-party common law claims for personal injury or property damages based on a pre-363 Sale Release of Hazardous Materials from the Transferred Real Property (and not based on New GM's post-363 Sale conduct or ownership of the Transferred Real Property) are Retained Liabilities. To the extent the Court was concerned that there might be an ambiguity raised by the clause "except as otherwise required under applicable Environmental Laws" as used in in Section 2.3(b)(iv)(C) of the Sale Agreement (the "**Clause**"), New GM responds as follows:

- The Sale Order and Judge Gerber's Sale Decision[3] provide the necessary context to assess which environmental liabilities New GM agreed to assume. The Clause was added to Section 2.3(b)(iv)(C) as a matter of draftsmanship to make clear that the other categories of Assumed Liabilities in Section 2.3(a)(viii)(B) and (C) would not be negated. In other words, third-party claims (which could include

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the *Motion By General Motors LLC To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And The Rulings In Connection Therewith, With Respect To The Moore, Et Al. Plaintiffs*, filed on February 27, 2018 [ECF No. 14242] ("**Moore Motion to Enforce**").

[2] March 29, 2018 Hr'g Tr. ("**March 29 Tr.**"), at 81:23-25. This Supplemental Memorandum only addresses the issue that the Court asked the parties to address: the Common Law/Retained Liability Issue. Because there is simultaneous briefing, New GM reserves the right to file an additional pleading if the Moore Plaintiffs' supplemental brief addresses issues other than what was requested by the Court.

[3] The Sale Decision is published at *In re Gen. Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) *aff'd sub nom., In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010) and 430 B.R. 65 (S.D.N.Y. 2010); *aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017).

1

Governmental Authority claims) based on a pre-Sale Release of Hazardous Materials from the Transferred Real Property would be Assumed Liabilities but only to the extent such claims resulted from (a) New GM's post-363 Sale ownership of the Transferred Real Property, or (b) New GM's post-363 Sale failure to comply with Environmental Laws.

- The Sale Agreement was carefully drafted with words of limitation to ensure that the Clause did not otherwise negate the Retained Liabilities enumerated in Section 2.3(b)(iv). The clear intention was for New GM to comply with Environmental Laws after the 363 Sale related to the Transferred Real Property, but not otherwise be liable for third party claims based on Old GM conduct. The Clause in Section 2.3(b)(iv)(C) carves out, as an exception, only those ***applicable Environmental Laws*** that New GM would ***otherwise*** **be** ***required*** to comply with. Common law claims are generalized causes of action; unlikely statutory-based claims, they do not require compliance.

- The Moore Plaintiffs agree with New GM's interpretation of the Clause. In their response to the Moore Motion to Enforce, as well as at the Hearing, they admitted that their common law claims based on Old GM conduct (*i.e.*, Counts III through VII) are Retained Liabilities.[4]

---

[4] *See* Moore Plaintiffs' Objection, at 7-12; *see e.g.*, March 29 Tr., at 59:10-13 ("There are certain counts I think in this case, Your Honor, that it doesn't apply to, but we'd certainly agree that the sale order applies regarding claims that are relating to old General Motors."). The causes of action in the Moore Amended Complaint that are labeled as "For Claims Relating to Old GM" are Counts I and II (which are Assumed Liabilities) and Counts III-VII (which are Retained Liabilities). Counts VIII-XIV are labeled "For Claims Independent of Old GM."

After the Hearing, at the request of New GM, the Moore Plaintiffs stipulated in the Michigan District Court to an order staying the Moore Lawsuit until this Court issues a ruling resolving the Moore Motion to Enforce, subject to the right of either party to seek to lift the stay if a ruling is not issued within 60 days.

- Contract construction principles also support New GM's interpretation of the Sale Agreement because:

    (a)  New GM voluntarily agreed to assume specific Old GM liabilities; the extent of a party's voluntary assumption of claims is construed narrowly;

    (b)  Interpreting the Clause more broadly would swallow the purpose of Section 2.3(b)(iv)(C), which is contrary to contract construction principles.

In addition, Section 2.3(b)(iv)(A) of the Sale Agreement provides that Old GM's Liabilities "associated with noncompliance with Environmental Laws" are Retained Liabilities. The common law claims asserted by the Moore Plaintiffs are associated with Old GM's non-compliance with Environmental Laws and are thus Retained Liabilities.

Accordingly, as demonstrated below and in the Moore Motion to Enforce, Counts III through VII in the Moore Amended Complaint are Retained Liabilities of Old GM that cannot be asserted against New GM.

**A.    The Sale Decision And The Sale Order Provide
The Context For Construing The Sale Agreement**

The starting point in understanding the context of what Old GM and New GM agreed to in respect of environmental responsibilities relating to Transferred Real Property is the Sale Decision and the Sale Order. Paragraph A of the Sale Order states: "The findings and conclusions set forth herein and in the Court's Decision dated July 5, 2009 (the 'Decision') constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014." Paragraph 3 of the Sale Order provides, in part: "If there is any conflict between the [Sale Agreement], the Sales Procedures Order, and this Order, this Order shall govern."

3

### Sale Decision/Sale Order

In addressing the environmental issue objections, Judge Gerber noted in the Sale Decision:

> Certain objectors—most notably, New York's Attorney General (the "**New York AG**"), who enforces New York's environmental laws, and the St. Regis Mohawk Tribe (the "**Tribe**"), in upstate New York (together, the "**Environmental Matters Objectors**")—have voiced concerns as to whether any approval order would too broadly release either Old GM or New GM from their respective duties to comply with environmental laws and cleanup obligations. Objections of this character were a matter of concern to this Court as well, but they were addressed—very well, in this Court's view—by amendments to the proposed order that were made after objections were due.

Sale Decision, 407 B.R. at 507.

The additional, amended language that Judge Gerber was referring to is found in paragraphs 61 and 62 of the Sale Order:

- Paragraph 61: "Nothing in this Order or the MPA releases, nullifies, or enjoins the enforcement of any Liability to a governmental unit under Environmental Laws or regulations (or any associated Liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, or operator of property after the date of entry of this Order. Notwithstanding the foregoing sentence, nothing in this Order shall be interpreted to deem the Purchaser as the successor to the Debtors under any state law successor liability doctrine with respect to any Liabilities under Environmental Laws or regulations for penalties for days of violation prior to entry of this Order. Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law."

- Paragraph 62: "Nothing contained in this Order or in the MPA shall in any way (i) diminish the obligation of the Purchaser to comply with Environmental Laws, or (ii) diminish the obligations of the Debtors to comply with Environmental Laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. The definition of Environmental Laws in the MPA shall be amended to delete the words 'in existence on the date of the Original Agreement.' For purposes of clarity, the exclusion of asbestos liabilities in section 2.3(b)(x) of the MPA shall not be deemed to affect coverage of asbestos as a Hazardous Material with respect to the Purchaser's remedial obligations under Environmental Laws."

4

Sale Decision, 407 B.R. at 507-508.

While these provisions of the Sale Order addressed many of the objections related to environmental issues, Judge Gerber found that they did not address all objections; he overruled the remaining objections for the following reasons:

> The Environmental Matters Objectors understandably would like New GM to satisfy cleanup obligations that were the responsibility of Old GM, on theories of successor liability. For reasons articulated in the Court's "Successor Liability Issues" discussion in Section 2 above, however, the property may be sold free and clear of such claims.
>
> Indeed, further reinforcing that view (as well as the Court's decision to follow *Chrysler*) is this Court's decision, seven years ago, in *Mag. Corp.* There, upon the sale of property with substantial environmental issues, this Court was faced with the exact same issue—to what extent could that property be sold free and clear of environmental claims under 363(f). This Court ruled that one had to make a distinction. Under section 363(f), there could be no successor liability imposed on the purchaser for the seller MagCorp's monetary obligations related to cleanup costs, *or any other obligations that were obligations of the seller*. But the purchaser would have to comply with its environmental responsibilities starting with the day it got the property, and if the property required remediation as of that time, any such remediation would be the buyer's responsibility: ***When you are talking about free and clear of liens, it means you don't take it subject to claims which, in essence, carry with the property***. It doesn't absolve you from compliance with the law going forward.
>
> Those same principles will be applied here. Any Old GM properties to be transferred will be transferred free and clear of successor liability, but New GM will be liable from the day it gets any such properties for its environmental responsibilities going forward.

Sale Decision, 407 B.R. at 508 (emphasis added).

Synthesizing these principles, it is evident that the Bankruptcy Court construed the environmental provisions of the Sale Agreement to require New GM to comply with the Environmental Laws relating to the Transferred Real Property, but that New GM was not assuming claims relating to the Transferred Real Property based on Old GM conduct. Such

5

claims are, in essence, successor liability-type claims which were expressly *not* assumed by New GM. *See In re Motors Liquidation Co.*, 549 B.R. 607, 613 (Bankr. S.D.N.Y. 2016) ("the record in this bankruptcy case and the prior decisions of this Court make it abundantly clear that New GM is *not* a successor in interest to Old GM"). The Sale Order and Sale Agreement must be interpreted with these over-arching principles.

B.     **The Sale Agreement Provides That New GM Did Not Assume Third Party Claims Relating To A Pre-Sale Release of Hazardous Materials From Transferred Real Property Except To The Extent Such Claims Are Based On New GM's Conduct Or Ownership Of Such Property**

Pursuant to the Sale Agreement, New GM purchased assets of Old GM and agreed to assume only specifically-identified liabilities of Old GM. *See* Sale Agreement § 2.3(a) ("The "Assumed Liabilities" shall consist only of the following Liabilities of Sellers . . ."). ***All other liabilities***, whether specifically identified or not, were "Retained Liabilities" of Old GM. *See* Sale Agreement § 2.3(b) ("Each Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability of any Seller, whether occurring or accruing before, at or after the Closing, other than the Assumed Liabilities."). That was the fundamental basis of New GM's agreement to purchase Old GM's assets. The 363 Sale was "free and clear" of all liens and claims against Old GM, including successor liability claims, other than contractually-defined Assumed Liabilities. "[U]nder this drafting structure, unless a liability was covered as an Assumed Liability under Section [2.3(a)], New GM did *not* assume it" (emphasis in original)). *In re Motors Liquidation Co.*, 541 B.R. 104, 108 (Bankr. S.D.N.Y. 2015).

Pursuant to Section 2.3(a)(viii) of the Sale Agreement (as amended), New GM agreed to assume "all Liabilities arising under any Environmental Law (A) relating to the Transferred Real

6

Property, ***other than those Liabilities described in Section 2.3(b)(iv)***, (B) resulting from Purchaser's ownership or operation of the Transferred Real Property after the Closing or (C) relating to Purchaser's failure to comply with Environmental Laws after the Closing[.]" (Emphasis added).

The Moore Plaintiffs' common law claims fit within Section 2.3(b)(iv) of the Sale Agreement, which includes as Retained Liabilities the following:

> all Liabilities (A) ***associated with noncompliance with Environmental Laws (including for fines, penalties, damages and remedies)***; (B) arising out of, relating to, in respect of or in connection with the transportation, off-site storage or off-site disposal of any Hazardous Materials generated or located at any Transferred Real Property; ***(C) arising out of, relating to, in respect of or in connection with third party Claims related to Hazardous Materials that were or are located at or that were Released into the Environment from Transferred Real Property prior to the Closing, except as otherwise required under applicable Environmental Laws;*** (D) arising under Environmental Laws related to the Excluded Real Property, except as provided under Section 18.2(e) of the Master Lease Agreement or as provided under the "Facility Idling Process" section of Schedule A of the Transition Services Agreement; or (E) for environmental Liabilities with respect to real property formerly owned, operated or leased by Sellers (as of the Closing), which, in the case of clauses (A), (B) and (C), arose prior to or at the Closing, and which, in the case of clause (D) and (E), arise prior to, at or after the Closing;

Sale Agreement, § 2.3(b)(iv) (as amended) (emphasis added).

The Moore Plaintiffs' common law claims based on Old GM conduct are Liabilities barred by Section 2.3(b)(iv)(C) of the Sale Agreement. Section 2.3(a)(viii)(A) of the Sale Agreement carved out from Assumed Liabilities "all Liabilities arising under Environmental Law (A) relating to the Transferred Real Property, ***other than those Liabilities described in Section 2.3(b)(iv)*** . . . ." (Emphasis added). Because of this cross-reference, Section 2.3(a)(viii) must be given a meaning consistent with Section 2.3(b)(iv). As the Second Circuit cautioned in *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000), "the entire contract must be

7

considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency." *See also Hillside Metro Assoc., LLC v. JP Morgan Chase Bank,* No. 10–CV–1772 (JG)(SMG), 2011 WL 5008368, at *9 (E.D.N.Y. Oct. 20, 2011); *Metz v. U.S. Life Ins. Co.,* No. 09 Civ. 10250 (BSJ), 2010 WL 3703810, at *3 (S.D.N.Y. Sept 21, 2010).

When Section 2.3(a)(viii)(A) is analyzed in conjunction with Section 2.3(b)(iv)(C) of the Sale Agreement, what was assumed by New GM can be described as follows: all Liabilities arising under Environmental Law relating to the Transferred Real Property, except third party Claims arising out of, related to, in respect of, or in connection with Hazardous Materials that were Released into the Environment from Transferred Real Property prior to the Closing, with the only exception being the Clause. Federal and state governments are "third parties" who can have claims related to Hazardous Materials that are Released into the Environment.[5] As demonstrated below, the Clause was inserted to make clear that the other environmental liabilities being assumed in subparagraphs (B) and (C) of Section 2.3(a)(viii) would be adhered to.

Pursuant to Section 2.3(b)(iv)(A) of the Sale Agreement, New GM also did not assume Old GM's Liabilities "associated with noncompliance with Environmental Laws." The Moore Plaintiffs assert that their common law claims are *associated* with Old GM's non-compliance with Environmental Laws, thus falling within this example of Retained Liabilities.

### 1.     The Relevant Term Is "Environmental Law"—Not "Law"

At the Hearing, the Court noted that the term "Law" was used in the definition of "Environmental Law," and that part of the definition of "Law" concerns principles of common

---

[5] *See* Sale Agreement, § 2.4 (if a contract is not capable of being assigned without the "consent of another party thereto, the issuer thereof or any third party (including a Governmental Authority) . . .").

8

law.  However, how that defined term is used in the Sale Agreement is the important inquiry, as the term "Law" is used frequently throughout the Sale Agreement, not just within the term "Environmental Law."  *Cf. In re Motors Liquidation Co.*, 541 B.R. 104, 119 (Bankr. S.D.N.Y. 2015) (finding that words used in the Sale Agreement "do not exist in isolation" and the words that follow are important); *see also Comm'r of Internal Revenue v. Nat'l Carbide Corp.,* 167 F.2d 304, 306 (2d Cir. 1948) ("words are chameleons, which reflect the color of their environment").

Here, the term "Law" was used within the definition of "Environmental Law," which was defined to mean any Law "relating to the management or Release of, or exposure of humans to, any Hazardous Materials; or pollution; or the protection of human health and welfare and the Environment."  Sale Agreement, at 7.  Accordingly, "Law," as used in the definition of "Environmental Law," must ***relate to*** those conditions that are identified in the remainder of the definition.  Stated otherwise, the "Law" itself must relate to the Release of Hazardous Materials. Principles of common law are not "related to" the Release of Hazardous Materials.  As contrasted with statutory-based Environmental Laws, common law claims are generalized torts that are not understood to be related to any particular area of law.[6]

Judge Gerber addressed a similar issue when deciding what types of claims are included within assumed Product Liabilities.  Section 2.3(a)(ix) of the Sale Agreement defines "Product Liabilities" to include "all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public

---

[6] It was not New GM's general intention to assume tort claims (like the common law claims asserted by the Moore Plaintiffs).  For example, Section 2.3(b)(xi) of the Sale Agreement provides that a Retained Liability of Old GM includes "all Liabilities to ***third parties*** for Claims based upon Contract, ***tort*** or any other basis" (emphasis added).

9

roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers . . . ." While the defined term "Liabilities" includes the defined term "Law," Judge Gerber found that liabilities based on certain laws were not included within the definition of Product Liabilities. Reviewing the language of Section 2.3(a)(ix) in its entirety, Judge Gerber found:

> Claims based on fraud and consumer protection statutes are not for "death" or "personal injury," and their nexus to any death or personal injury that might thereafter follow is too tangential; many might be victimized by fraud or consumer protection violations without subsequent death or injury. And claims for fraud and violations of consumer protection statutes might somewhat plausibly be argued to be for "other injury to Persons," but they still would not be "caused by motor vehicles." They would be caused by the statements or omissions under which the fraud and consumer protection claims arose. These claims cannot be regarded as Assumed Liabilities, and do not get through the gate.

*Motors Liquidation Co.*, 541 B.R. at 128. The same contract construction principle applies here. Just as fraud claims were not included within the definition of Product Liabilities (even though the term "Laws" was implicated), common law claims are not included within the definition of Assumed Environmental Law Liabilities.

### 2. The Language Of The Sale Agreement Demonstrates That The Scope Of Assumed Environmental Liabilities Is Much Narrower Than The Scope Of <u>Retained Environmental Liabilities</u>

Section 2.3(a)(viii) of the Sale Agreement uses words of limitation to narrow the scope of what was to be included within assumed environmental liabilities. Specifically, the section provides that Assumed Liabilities includes (except for those environmental liabilities carved out in Section 2.3(b)(iv) of the Sale Agreement) "all Liabilities *arising under* Environmental Law (A) *relating to* the Transferred Real Property . . . ."

In contrast, the Retained Liability language of Section 2.3(b)(iv)(C) uses much broader phrases to describe the scope of the Retained Liabilities. Specifically, the proscribed third party claims in Section 2.3(b)(iv)(C) are those that "*arise out of, relate to, in respect of or in connection with third party Claims* . . . ." The difference in terminology clearly demonstrates the contractual intent of the parties that Assumed Liabilities be narrowly construed, and Retained Liabilities be broadly interpreted to include the common law claims at issue here.

### 3.     The Clause Uses Words Of Limitation

In the Clause, New GM did not agree to assume *all* liabilities under Environmental Law. It agreed to assume liabilities arising from third party Claims only with respect to those *applicable* Environmental Laws that it is *required* to adhere to. Examples of those types of third party Claims that were intended to be carved out of Old GM's Retained Liabilities (and thus assumed by New GM) include:

- A private third party Claim arising from failure to provide the written notice required under Section 16 of Part 201 of the Michigan Natural Resources and Environmental Protection Act. Under Section 16, an owner that knows its property is contaminated (*i.e.*, is a "facility") is required to provide written notice to a purchaser or a transferee of an interest in the property disclosing the general nature of the nature and extent of the hazardous substance release. *See* MCL 324.20116(1); *1031 Lapeer L.L.C. v. Rice*, 290 Mich. App. 225 (2010)(lease void in absence of required notice).

- An action by the Michigan Department of Environmental Quality to enforce other requirements of Part 201 and the administrative rules promulgated thereunder, such as the requirement that an owner of property with reason to believe that contamination is migrating beyond the boundary of his or her property notify adjacent property owners. Admin. R 299.51017.

Common law liability is not an Environmental Law that New GM would be *required* to *comply* with. Although duties can arise under principles of common law, one is not generally "required to" comply with common law; rather one can be "liable under" common law principles

11

for actions taken in a tortious manner causing damages. Thus, the phrasing of the Clause supports the conclusion that it does not preserve third party common law claims except to the extent otherwise covered in Section 2.3(a)(viii)(B) and (C) of the Sale Agreement.

## C. Principles Of Contract Construction And New York Law Support The Argument That The Moore Plaintiffs' Common Law Claims Are Retained Liabilities

### 1. Common Law Claims Were Not Specifically Assumed By New GM

As noted, the structure of the Sale Agreement was based on the principle that liabilities are Retained Liabilities unless they are specifically listed as Assumed Liabilities. This structure is the doctrine of *expressio unius est exclusio alterius*, *i.e.*, the expression of one thing is the exclusion of the other. *See IBM Poughkeepsie Emps. Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 590 F. Supp. 769, 773 n. 19 (S.D.N.Y. 1984) ("Under the doctrine of *expressio unius est exclusio alterius*, when certain persons or categories are specified in a contract, an intention to exclude all others may be inferred."); *Quadrant Structured Prods. Co.,* 23 N.Y.3d. 549, 560 (N.Y. 2014).

This doctrine is found throughout New York law.[7] Third parties who voluntarily assume certain liabilities are generally shielded from additional exposure. For example, with respect to indemnitors:

> [w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed. Where 'the language of the parties is not clear enough to enforce an obligation to indemnify,' the Court will not 'rewrite the contract and supply a specific obligation the parties themselves did not spell out.'

---

[7] The Sale Agreement (§ 9.12) provides that New York law governs if the Bankruptcy Code is not applicable.

12

*Corral v. Outer Marker LLC*, No. 10-CV-1162 (SJF) (ARL), 2012 WL 243318, at *3 (E.D.N.Y. Jan. 24, 2012); *Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 74 N.Y.2d 487, 491–92 (1989) ("[T]he promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances.").

In the analogous guarantor context, New York law provides that

> [a] guarantor's obligation must be narrowly construed and cannot be extended by construction beyond the plain and explicit language of the contract. Guarantees are strictly construed because the guarantor cannot be held responsible to guarantee a performance different from that which he intended or specified in the guaranty.

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust*, 93 F.3d 1064, 1073–74 (2d Cir. 1996) (interpreting New York law); *Am. Honda Fin. Corp. v. Simao*, 526 F. App'x 112, 115 (2d Cir. 2013) ("[W]e interpret guaranty obligations 'in the strictest manner'"); *Symbol Technologies, Inc. v. Voicenet (Aust.) Ltd.*, No. CV-03-6010 (SJF) (ARL), 2008 WL 89626, at *2 (E.D.N.Y. Jan. 4, 2008) (noting that guaranties are interpreted in favor of the guarantor).

Here, the very purpose of the Sale Agreement was for New GM to obtain Old GM's assets free and clear of liens and claims. Without any legal obligation to do so,[8] New GM voluntarily assumed certain, specific Old GM liabilities. General common law claims relating to environmental issues are not expressly set forth anywhere in the Assumed Liabilities section of

---

[8] The fact that New GM was not obligated to assume ***any*** environmental liabilities was addressed by the Debtors in their reply to the objections to the 363 Sale: "With respect to objections raised as to environmental liabilities or obligations, a purchaser under section 363 has no obligation to assume environmental liabilities and, as set forth above, can purchase assets free and clear of such liabilities, including successor liability. Of course, to the extent the Purchaser becomes the owner and operator of any purchased property, it will be responsible for environmental claims in respect of such property, and the 363 Transaction in no way seeks to shield the Purchaser from such liability." *See Amended And Supplemented Omnibus Reply Of The Debtors To Objections To Debtors' Motion Pursuant To 11 U.S.C. §§ 105, 363(B), (F), (K), And (M), And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006, To Approve (A) The Sale Pursuant To The Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (B) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (C) Other Relief*, dated June 29, 2009 [ECF No. 2681], at 28 n.12.

the Sale Agreement. Such omission demonstrates that these types of claims were never meant to be assumed under the Sale Agreement. And, New York law does not permit a rewriting of the Sale Agreement to impose specific obligations to which the parties did not explicitly agree. *See, e.g.*, *In re Motors Liquidation Co.*, 428 B.R. 43, 53 n. 13 (S.D.N.Y. 2010) ("We cannot rewrite the terms of the negotiated MPA and Sale Order, in which the 'free and clear' provisions were critical and nonseverable terms of the bargained-for transaction.").

### 2. The Sale Agreement Should Not Be Interpreted To Have An Exception That Would Swallow The General Rule

A broader interpretation of the Clause would cause the exception to swallow the overarching principle articulated by Judge Gerber in the Sale Decision—*i.e.*, that New GM would not be liable to third parties (such as the Moore Plaintiffs) for environmental claims arising from Old GM conduct. Such an interpretation would run counter to general contractual rules of construction. *See Terwilliger*, 206 F.3d at 245 ("the entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency").

Viewing the language in the Sale Decision, the Sale Order and the Sale Agreement collectively leads to the conclusion that New GM was ***not*** agreeing to assume ***all*** environmental liabilities. Those Retained Liabilities included common law claims based on Old GM conduct that are not tied to New GM's responsibility to ***comply*** with statutory-based Environmental Laws after the 363 Sale. While New GM must comply with laws that require it to remediate or clean up a Transferred Real Property, even if the contamination was caused by Old GM, New GM did not assume liability for off-site (third party) damages resulting from Old GM conduct. New GM Assumed Liabilities would include requirements to comply with environmental statutes like the ones referenced in Counts I and II of the Moore Amended Complaint (which New GM agrees are

14

Assumed Liabilities referenced in Section 2.3(a)(viii) of the Sale Agreement).  They would ***not*** include, however, the common law claims identified in Counts III through VII of the Moore Amended Complaint, which are labeled as "Claims Relating to Old GM."  Those counts seek ***damages*** from New GM based on Old GM conduct, and do not in any way seek ***compliance*** with "applicable Environmental Laws."  *See* Moore Amended Complaint, Count III, ¶ 80 ("As a direct and proximate result of Old GM's fraud, Plaintiffs and those similarly situated have suffered damages . . ."); Count IV, ¶ 85 ("As a direct and proximate result of Old GM's breaches of duties, Plaintiffs and those similarly situated have suffered damages . . ."); Count V, ¶ 87 (seeking damages relating to Old GM conduct concerning "Releases prior to the Sale Date [that] constituted an unauthorized direct and immediate invasion of land over which Plaintiffs and those similarly situated at all relevant times had a right of exclusive possession"); Count VI, ¶ 91 ("As a direct and proximate result of Old GM's interference with Plaintiffs' use and enjoyment of property, Plaintiffs and those similarly situated have suffered substantial damages."); Count VII, ¶ 97 ("Plaintiffs have incurred legal expenses as a result of Old GM's fraudulent and unlawful conduct.").  As noted, the Moore Plaintiffs concede that Counts III-VII are Retained Liabilities under the Sale Agreement.

      WHEREFORE, New GM respectfully requests that this Court enter an order, substantially in the form of order attached to the Moore Motion to Enforce as Exhibit "E," granting the relief sought in the Moore Motion to Enforce, and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 20, 2018

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:     (212) 556-2222

*Attorneys for General Motors LLC*

16