THE MEMMEN LAW FIRM, LLC
505 North LaSalle Drive, Suite 500
Chicago, Illinois 60654
Telephone: 312.878.2357
Facsime: 312.794.1813
Alexander McH. Memmen (*pro hac vice pending*)
Attorney for Moore, *et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.* | Case No.: 09-50026 (MG) |
| | (Jointly Administered) |
| Debtors. | |

-------------------------------------------------------------x

### NOTICE OF SUPPLEMENTAL BRIEF IN OPPOSITION TO GENERAL MOTORS' MOTION TO ENFORCE THE BANKRUPTCY COURT'S JULY 2009 SALE ORDER, WITH RESPECT TO THE MOORE, *ET AL.* PLAINTIFFS

PLEASE TAKE NOTICE that on April 20, 2018, the undersigned attorney caused to be filed with the United States Bankruptcy Court for the Southern District of New York the following documents: Supplemental Brief in Opposition to General Motors' Motion to Enforce the Bankruptcy Court's July 2009 Sale Order and the Rulings in Connection Therewith, with Respect to the Moore, et al. Plaintiffs.

Dated: April 20, 2018

Respectfully Submitted,

/s/ Alexander McH. Memmen
Alexander McH. Memmen
*Pro Hac Vice Pending*
The Memmen Law Firm, LLC
505 North LaSalle Drive, Suite 500
Chicago, Illinois 60654
P. 312.878.2357
F. 312.794.1813

i

THE MEMMEN LAW FIRM, LLC
505 North LaSalle Drive, Suite 500
Chicago, Illinois 60654
Telephone: 312.878.2357
Facsime: 312.794.1813
Alexander McH. Memmen (*pro hac vice pending*)
Attorney for Moore, *et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                       :    Chapter 11
                                                             :
MOTORS LIQUIDATION COMPANY, *et al.*,                        :    Case No.: 09-50026 (MG)
      f/k/a General Motors Corp., *et al.*               :
                                                             :    (Jointly Administered)
              Debtors.                          :
------------------------------------------------------------x

# SUPPLEMENTAL BRIEF IN OPPOSITION TO GENERAL MOTORS' MOTION TO ENFORCE THE BANKRUPTCY COURT'S JULY 2009 SALE ORDER AND THE RULINGS IN CONNECTION THEREWITH, WITH RESPECT TO THE MOORE, *ET AL.* PLAINTIFFS

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

ARGUMENT........................................................................................................................1

    I.      NEW GM ASSUMED LIABILITY FOR NEGLIGENTLY FAILING TO COMPLY WITH MICHIGAN STATE ENVIRONMENTAL LAWS

    II.     NEW GM ASSUMED LIABILITY FOR PUBLIC AND PRIVATE NUISANCE AND TRESPASS IN VIOLATION OF ENVIRONMENTAL LAWS

    III.    NEW GM ASSUMED LIABILITY FOR FERAUD RELATING TO COMPLIANCE WITH ENVIRONMENTAL LAWS

    IV.    PUNITIVE OR EXEMPLARY DAMAGES SHOULD BE ALLOWED IF PLAINTIFFS CAN DEMONSTRATE THAT OLD GM'S KNOWEDGE CAN BE IMPUTED TO NEW GM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Capital Ventures Intern. v. Republic of Argentina,*
    652 F.3d 266, 271 (2d Cir. 2011)..................................................................5

*Cipri v. Bellingham Frozen Foods, Inc.,*
    596 N.W.2d 620, 628-29 (App.Ct. 1999)....................................................4, 5

*In re: Motors Liquidation,*
    460 B.R. 603 (S.D.N.Y. November 28, 2011)................................................3

*In re: Metaldyne Corp.,*
    409 B.R. 671, 677 (S.D.N.Y. August 12, 2009)..............................................3

*MHR Capital Partners LP v. Presstek, Inc.,*
    12 N.Y.3d 643, 645 (2009) ...........................................................................3

*Opal Lake Ass'n v. Michaywe Ltd. Partnership,*
    47 Mich. App. 354, 364 (App.Ct. 1973).........................................................6

*Wayne County Department of Health v. Olsonite Corp.,*
    79 Mich.App. 668, 688 (App. Ct. 1977).........................................................6

**Other Authorities**

MCL 324.1701...................................................................................................5

MCL 324.20107a................................................................................................5

MCL 324.20114..................................................................................................5

MCL 324.21324..................................................................................................7

MCL 324.3109e..................................................................................................5

MCL 600.2919................................................................................................6, 7

For their Supplemental Brief in Opposition to the Motion by General Motors LLC to Enforce the Bankruptcy Court's July 5, 2009 Sale Order and the Rulings in Connection Therewith, the Moore, et al. Plaintiffs [Dkt. No. 14242], Terry Moore, Ellen Moore, David O'Nions, Diane O'Nions, Joellen Pisarczyk, and Marvin Pisarczyk, and all others similarly situated (collectively the "Moore Plaintiffs"), as pleaded in the case captioned *Terry Moore, et al. v General Motors, LLC*, United States District Court for the Eastern District of Michigan, Case No. 2:17-cv-14226-NGE-SDD (the "Moore Lawsuit")[1], state as follows:

## INTRODUCTION

This matter was previously before the Court on March 29, 2017. During that proceeding the Court requested that the parties brief the matter of "is New GM liable for violation of Michigan common law? Has it assumed liability for Michigan common law with respect to environmental claims?"

The Moore Plaintiffs' Amended Complaint alleges tortious claims against New GM for the conduct of Old GM. Specifically, counts III (fraud), IV (negligence), V (trespass), VI (private nuisance), and VII (public nuisance) relate to the conduct of Old GM. Each count relates to emissions of sodium chloride at the Milford Proving Grounds that have migrated onto the Moore Plaintiffs' properties and contaminated their water table.

## ARGUMENT

It does not appear that this specific issue has been dealt with previously in the GM bankruptcy. The Court has dealt with similar issues – e.g. issues of compliance with environmental regulations involving clean-up costs for superfund sites – but not with this specific issue.

---

[1] The class pleaded in the Moore Lawsuit has not yet been certified.

1

Plaintiffs' counts III through VII should stand as claims against New GM for the assumed liabilities of Old GM.

The Sale Order covers retained and assumed liabilities in paragraphs 2.3(a) and (b). "Assumed Liabilities" include "(viii) all liabilities arising under any Environmental Law (A) relating to conditions present on the Transferred Real Property, other than those Liabilities described in section 2.3(b)(iv)."

Section 2.3(b)(iv) carves out as "Retained Liabilities" "all Liabilities (A) associated with non-compliance with Environmental Laws [...]; (C) arising out of [...] third-party Claims related to Hazardous Materials that were or are located at or that migrated or may migrate from any Transferred Real Property, except as otherwise required under applicable Environmental Laws."

Section 2.3(b)(xi) carves out as "Retained Liabilities" "all Liabilities to third parties for Claims based upon Contract, tort or any other basis."

Section 1.1 defines the following terms:

> "Environmental Law" as "any Law in existence on the date of the Original Agreement relating to the management or Release of, or exposure of humans to, any Hazardous Materials; or pollution; or the protection of human health and the welfare of the Environment."
>
> "Environment" as "any surface water, groundwater, drinking water supply, land surface or subsurface soil or strata, ambient air, natural resource or wildlife habitat."
>
> "Law" as "any and all applicable United States or non-United States federal, national, provincial, state or local laws, rules regulations, directives, decrees, treaties, statutes, provisions of any constitution and principles (including principles of common law) of any Governmental Authority, as well as any applicable Final Order."
>
> "Governmental Authority" as "any United States or non-United States federal, national, provincial, state or local government or other political subdivision thereof, any entity, authority, agency or body exercising executive, legislative, judicial, regulatory or

2

administrative functions of any such government or political subdivision [...]"

## I. NEW GM ASSUMED LIABILITY FOR NEGLIGENTLY FAILING TO COMPLY WITH MICHIGAN STATE ENVIRONMENTAL LAWS

The Moore Plaintiffs' Amended Complaint alleges that Old GM negligently engaged in a course of conduct in violation of Michigan Environmental Law. Specifically, the Moore Plaintiffs allege that Old GM had duties under Michigan law to: 1) refrain from polluting the environment; 2) report ongoing releases to the MDEQ and to notify the Moore Plaintiffs of potential migration of contaminants; 3) prevent ongoing releases of hazardous substances into the groundwater and/or diligently pursue remediation; and 4) take action to mitigate the Moore Plaintiffs' exposure to hazardous substances. The Moore Plaintiffs contend that Old GM breached its these duties in contravention of Michigan environmental laws, specifically the Michigan Environmental Protection Act ("MEPA") and the Michigan Natural Resources Environmental Protection Act ("NREPA").

A cardinal rule of contract interpretation is to ascertain and "give effect to the expressed intentions of the parties." *In re: Motors Liquidation Co.*, 460 B.R. 603 (S.D.N.Y. November 28, 2011). "It is well settled that a contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *In re: Metaldyne Corp.*, 409 B.R. 671, 677 (S.D.N.Y. August 12, 2009) (quoting *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 643, 645 (2009)). "If unambiguous language is present, a court may not look further than the four corners of a contract." *Id.*

3

The Sale Agreement's unambiguous (though, admittedly, complicated) language states that New GM assumed liability for the tort of negligently failing to comply with environmental laws. The Sale Agreement states that Retained Liabilities **do not include** liabilities "as otherwise required under applicable Environmental Laws." The Agreement defines "Environmental Laws" to include "any Law in existence on the date of the Original Agreement relating to the management or Release of […] any Hazardous Materials; or pollution; or the protection of human health and the welfare of the environment." The Agreement defines "Law" as including "any and all applicable United States […] state or local law […] **(including principles of common law)** of any Governmental Authority" (emphasis added). The Agreement defines Governmental Authority as including "any agency or body exercising […] judicial […] functions of any such government or political subdivision […]"

The definitions contained in the plain wording of the Sale Agreement state that New GM assumed liability for Michigan common law with respect to claims under Environmental Law. New GM assumes liability for violations of Environmental Law under principles of common law as set by the judiciary of the State of Michigan (a "Government Authority" under the Sale Agreement). New GM's assumption of liability for Michigan common law claims under Environmental Law includes claims like the Moore Plaintiff's allegations of negligence.

Additionally, the Moore Plaintiffs' common law negligence claim duties are established under statutory Environmental Law under the MEPA and NREPA. The MEPA authorizes courts to prevent conduct that harms the environment based on evidence presented in litigation. Under MEPA, private parties may protect the environment in much the same way as they have historically protected property and contract rights. The MEPA imposes a duty of care actionable in tort because liability flows to any member of the public whose natural resources are injured by

4

contamination. *Cipri v. Bellingham Frozen Foods, Inc.*, 596 N.W.2d 620, 628-29 (App.Ct. 1999). In addition to the Moore Plaintiff's statutory claims, they also found their negligence claims on the duties prescribed under Michigan Environmental Law as outlined in the MEPA and NREPA. The Amended Complaint alleges a duty to refrain from polluting the environment as per MCL 324.1701, a duty to report ongoing releases to the MDEQ and the Moore Plaintiffs as per MCL 324.20114, a duty to prevent ongoing releases of hazardous substances as per MCL 324.20107a; and a duty to take action to mitigate unacceptable exposure to hazardous substances as per MCL 324.20107a. The MEPA also governs how much sodium Old GM could release into the water. MCL 324.3109e.

Seemingly contrary to the above, Section 2.3(b)(xi) of the Sale Agreement includes as a Retained Liability "all Liabilities to third parties for Claims based upon Contract, tort or any other basis." This more general definition should not be favored over the specific language relating to claims stemming from Environmental Law. Section 9.12 of the Sale Agreement expressly adopts the law of New York for issues outside the Bankruptcy Code. "New York [...] follows the common (and commonsensical) rule that a specific provision [...] governs the circumstances to which it is directed, even in the face of a more general provision [...]" *Capital Ventures Intern. v. Republic of Argentina*, 652 F.3d 266, 271 (2d Cir. 2011). The Sale Agreement's more specific clauses are those in which New GM assumes liability for claims relating to Environmental Law, including those arising under state common law.

The environmental carve-out included in the Sale Agreement is limited in scope to statutory and common law claims that implicate Old GM's duties under "applicable Environmental Laws." The carve-out does not "swallow" the exception to GM's retained liabilities. Instead, it carves out

5

*specific* claims that New GM has assumed relating to Old GM's violations of Michigan Environmental Law.

## II. NEW GM ASSUMED LIABILITY FOR PUBLIC AND PRIVATE NUISANCE AND TRESPASS IN VIOLATION OF ENVIRONMENTAL LAWS

Apart from claims arising under the MEPA and the NREPA, the Sale Agreement also allows for Environmental Law claims arising "under principals of common law." In Michigan, nuisance claims frequently include claims of environmental contamination, as do the Moore Plaintiffs' claims. See, e.g.

Claims for nuisance in Michigan are closely related to, and governed by, the MEPA. "By [the MEPA], the Legislature defined the standards to be used and the method to be determined by the Court in deciding cases where there is a claim of environmental pollution. The standards set out in the statue are clear and unequivocal, and to the extent that the prior law relating to nuisance varies from the statute, the statute must control." *Wayne County Department of Health v. Olsonite Corp.*, 79 Mich.App. 668, 688 (1977).

The Moore Plaintiffs' nuisance claims are based on both "principles of common law" and applicable state Environmental Laws established by the "Governmental Authority" of the state of Michigan under the MEPA. The MEPA is a "legislative recognition of the ancient powers of a court to hear nuisance cases, balance equities, and fashion suitable remedies." *Opal Lake Ass'n v. Michaywe Ltd. Partnership*, 47 Mich. App. 354, 364 (App.Ct. 1973). Specifically, New GM assumed these liabilities under the Sale Agreement.

The Moore Plaintiff's trespass claims are also claims arising under Environmental Law. Trespass is an extremely common claim in cases involving Environmental Law. Furthermore, Michigan statute provides for treble damages in some kinds of environmental trespass. MCL

600.2919. Under that statute, "[a]ny person who: [...] despoils or injures any trees on another's lands [...] is liable to the owner of the land or the public corporation for 3 times the amount of actual damages." The Moore Plaintiffs have not pleaded a claim under MCL 600.2919. However, Michigan law clearly allows for claims of common law trespass in cases involving Environmental Law (i.e. cases involving the "release of Hazardous Materials, or pollution"). If allowed, Plaintiffs would also amend their complaint to include a count under MCL 600.2919 for damage to trees that have died as a result of sodium chloride contamination.

## III. NEW GM ASSUMED LIABILITY FOR FRAUD RELATING TO COMPLIANCE WITH ENVIRONMENTAL LAWS

New GM also assumed liability for claims for fraud arising under Environmental Laws. Michigan statutes contemplate fraud in the context of Environmental Law. Fraud, like trespass and nuisance, can fall under the umbrella of Environmental Law. For instance, MCL 324.21324 contains statutory punishments for "fraudulent practice" including "(2)(f) [a]ny intentional act or act of gross negligence that causes or allows contamination to spread at a site."

While MCL 324.21324 does not expressly create a private cause of action for fraud in the context of Environmental Law, it does provide context for the idea that fraud can be a employed as an Environmental Law. For instance, the Moore Plaintiffs allege that Old GM engaged in the fraudulent concealment of the "Release of [...] any Hazardous Materials; or pollution." This claim, alleging fraudulent conduct that would be potentially actionable under Michigan common law as well as under MCL 324.213.24 falls under the definition of Environmental Law under the Sale Agreement.

WHEREFORE, Terry Moore, *et al.* respectfully request that this Court enter an order denying New GM's motion to apply the July 5, 2009 Sale Order to the Moore Plaintiffs, and for such further relief as this Honorable Court deems just.

Dated: Chicago, Illinois
April 20, 2018

Respectfully submitted,

/s/Alexander McH. Memmen
Alexander McH. Memmen
THE MEMMEN LAW FIRM, LLC
505 North LaSalle, Suite 500
Chicago, Illinois 60654
P. 312.878.2357
F. 312.794.1813
E. amm@memmenlaw.com

8