**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------------

|   |   |   |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No. 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |

------------------------------------------------------------------------------

### NOTICE OF FILING OF ANNUAL REPORT AND ACCOUNT OF THE
### MLC ASBESTOS PI TRUST FOR THE FISCAL YEAR ENDING DECEMBER 31, 2017

The MLC Asbestos PI Trust (the "Trust") hereby files its Annual Report, Financial

Statements, and Claims Summary for the fiscal year ending December 31, 2017.  The Annual

Report and Financial Statements are attached hereto as Exhibit 1.

Pursuant to the provisions of the MLC Asbestos PI Trust Agreement (the "Trust

Agreement"), the Trust is providing copies of the Annual Report and the Financial Statements to

the Trust Advisory Committee, the Future Claims Representative, and the Office of the United

States Trustee.

Dated:  New York, New York
        April 30, 2018

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Counsel to the MLC Asbestos PI Trust

By: /s/ *Brendan M. Scott*
        Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
Tel:  (212) 972-3000
Fax: (212) 972-2245

CAMPBELL & LEVINE, LLC
Counsel to the MLC Asbestos PI Trust
Kathleen Campbell Davis
222 Delaware Avenue, Suite 1620
Wilmington, DE 19801
Tel: (302) 426-1900
Fax: (302) 426-9947

                -and-

Douglas A. Campbell
Stanley E. Levine
1700 Grant Building
Pittsburgh, PA 15219
Tel: (412) 261-0310
Fax: (412) 261-5066

# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| In re: MOTORS LIQUIDATION COMPANY, *et al.*,<br>f/k/a General Motors Corp., *et al.*, | ) Chapter 11 Case No.<br>)<br>) 09-50026 (REG)<br>)<br>) (Jointly Administered) |

ANNUAL REPORT AND ACCOUNT OF THE
MLC ASBESTOS PI TRUST
FOR THE FISCAL YEAR ENDING DECEMBER 31, 2017

Kirk Watson, the Asbestos Trust Administrator and Trustee of the MLC Asbestos PI Trust (the "Trust"), created pursuant to the Debtors' Second Amended Joint Chapter 11 Plan (the "Plan") submits this Annual Report, Financial Statements, and Claims Summary for the fiscal year ending December 31, 2017.

## I.    INTRODUCTION

The purpose of this Annual Report is to fulfill the reporting requirements of the MLC Asbestos PI Trust Agreement (the "Trust Agreement") and to report to the Court on the actions taken by the Trustee on behalf of the Trust during the period January 1, 2017 to December 31, 2017 (the "Reporting Period").

Section 2.2(c) of the Trust Agreement provides:

The Trustee shall timely account to the Bankruptcy Court as follows:

(i)        The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "Annual Report") containing financial statements of the PI Trust (including, without limitation, a balance sheet of the PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustee and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the

financial statements with generally accepted accounting principles. The Trustee shall provide a copy of such Annual Report to the TAC and the Futures Representative when such reports are filed with the Bankruptcy Court.

(ii)        Simultaneously with the filing of the Annual Report, the Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustee shall provide a copy of such report to the TAC and the Futures Representatives when such report is filed.

(iii)       All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee").

The Trust Agreement further provides for the inclusion of a description of the amounts paid to the Trustees, TAC, and FCR in the accounts filed with the Bankruptcy Court. See Sections 4.5(c), 5.6, and 6.5.

II.    BACKGROUND

On June 1, 2009,[1] Motors Liquidation Company ("MLC") and its affiliated debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* in the United States District Court for the Southern District of New York (the "Bankruptcy Court"). On March 29, 2011, the Bankruptcy Court entered an order confirming the Plan. On March 31, 2011 (the "Effective Date"), the Plan became effective and the Trustee began to operate the Trust.

The purpose of the Trust is to assume the liabilities of MLC and its affiliated debtors for all Asbestos Personal Injury Claims, as defined in the Plan, and to use the Trust's assets and the proceeds and income from such assets to pay both present and future asbestos claimants in

---

[1] Remediation and Liability Management Company, Inc. and Environmental Corporate Remediation Company, Inc filed voluntary petitions on October 9, 2009.

accordance with the Trust Agreement and the Trust Distribution Procedures (the "Trust Documents"), in such a way that holders of Asbestos Personal Injury Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims.

On or after the Effective Date, the Trust was funded as provided for in Section 6.3 (d) of the Plan and the Stipulation and Order Fixing Asbestos Trust Claim and Resolving Debtors' Estimation Motion approved by this Court on February 14, 2011.

III.    TRUST ADMINISTRATION

A.    Trustee

Kirk Watson served as the Trustee of the Trust during the Reporting Period.  Wilmington Trust served as the Delaware Trustee during the Reporting Period.

1.    Meetings

During the Reporting Period, the Trustee held formal meetings, or obtained waivers of the formal meeting requirement, in accordance with the requirements of the Trust Agreement.  In addition to these formal meetings, the Trustee communicated with TAC Members, the FCR, and their respective counsel, and met individually with Trust advisors, held special purpose meetings, and devoted time to Trust matters outside of scheduled meetings.  Activities included receiving and deploying trust assets with investment managers, ensuring compliance with the Trust Documents, communicating with claimants, responding to discovery requests directed to the Trust, consideration of the Payment Percentage, and monitoring the processing and payment of claims pursuant to the Trust Distribution Procedures.

2.    Compensation

The compensation and expenses paid to the Trustee during the Reporting Period are set forth in the Trust's financial statements attached hereto as Exhibit "A."  The inclusion of this

information in the Trust's financial statements satisfies the requirements of Section 4.5 of the Trust Agreement. All distributions related to Trustee compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines.

B.      Trust Officer

B. Thomas Florence served as the Trust's Executive Director and John Brophy served as the Trust's Assistant Executive Director during the Reporting Period.

C.      Trust Advisory Committee

Steven Kazan, John Cooney, and Perry Weitz served as Members of the Trust Advisory Committee ("TAC Members") during the Reporting Period. The compensation and expenses paid to the TAC Members during the Reporting Period are set forth in the Trust's financial statements. The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 5.6 of the Trust Agreement. All distributions related to TAC Member compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines.

D.      Legal Representative for Future Claimants

Hon. Dean M. Trafelet (Ret.) served as the Legal Representative for Future Claimants (the "FCR") during the reporting period. The compensation paid to the FCR during the Reporting Period is set forth in the Trust's financial statements. The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 6.5 of the Trust Agreement. All distributions related to FCR compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines.

E.      Claims Processing

The Trust continued to use MFR Claims Processing, Inc. as claims processor for the Trust during the Reporting Period.

F.      Investment Management

Cambridge Associates, LLC of Boston, Massachusetts served as the Trust's investment advisor. Cambridge Associates represents other asbestos settlement trusts and has experience advising such trusts regarding investment management.  Cambridge Associates advises the Trustee on the single stock holding/warrants, asset allocation, meeting liquidity needs, and the selection and oversight of individual investment managers for the investable portions of the Trust's portfolio.  The Trust Agreement sets forth certain general investment guidelines, primarily addressing credit quality and asset diversification.  The asset allocation at the end of the reporting period is as follows:  53% of the Trust's invested assets are committed to fixed income, 12% to hedge funds, and 18% to equities.  At year-end, the Trust also had 14% in cash, and 3% in GM-related securities.

The Trust retains the following investment managers:  Northern Trust as equity manager; BlueMountain Capital, ESG Cross Border Equity, Force Capital, Governors Lane, Luxor Capital, Och-Ziff Capital, Sachem Head Capital, Taconic Capital, Tilden Park, and Valinor Capital as hedge funds; Breckinridge Capital and Income Research & Management as bond managers.

The Northern Trust Bank serves as custodian for the Trust's separately-managed investment accounts.  The Trust utilizes custodian accounts, wire transfers and zero-balance banking accounts to reduce its exposure to systemic banking system risk.

During the reporting period, the Trustee regularly met with Cambridge Associates to review investment performance and strategy, as well as to receive an update on the current market environment.

G.    General Counsel

Campbell & Levine, LLC of Pittsburgh, Pennsylvania and Wilmington, Delaware served as general counsel to the Trust.

IV.    ANNUAL REPORT AND ACCOUNT

A.    Summary of Claims

The Trust began accepting and processing Unliquidated claims on April 30, 2012.  As of December 31, 2017, the Trust had received 28,829 Unliquidated Claims and paid a total of 4,033 claims since the date of inception of the Trust.  Of the claims paid, there were 2,424 malignancy claims and 1,609 non-malignancy claims.   The Trust paid approximately $31.9 million to asbestos victims in settlement of their Unliquidated Claims since the date of inception of the Trust.

During the Reporting Period, the Trust had received 3,567 Unliquidated Claims and paid a total of 1,432 claims.   Of the claims paid during the Reporting Period, there were 731 malignancy claims and 701 non-malignancy claims.  The Trust paid approximately $8.8 million to asbestos victims in settlement of their Unliquidated Claims during the Reporting Period.

A summary of the claims processing procedures and policies may be found at the Trust website at http://mlc.mfrclaims.com.

V.    FINANCIAL INFORMATION

The Trust's audited financial statements for the Reporting Period are attached hereto as

Exhibit "A."  The financial statements were audited by BDO USA, LLC.


Date:   April 30, 20187                          KLESTADT WINTERS JURELLER SOUTHARD
                                                 & STEVENS, LLP

                                                 By: /s/ *Brendan M. Scott*
                                                      Brendan M. Scott
                                                 200 West 41st Street, 17th Floor
                                                 New York, New York 10036
                                                 Tel:  (212) 972-3000
                                                 Fax: (212) 972-2245


                                                 CAMPBELL & LEVINE, LLC
                                                 Kathleen Campbell Davis
                                                 222 Delaware Avenue, Suite 1620
                                                 Wilmington, DE 19801
                                                 Tel. 302.426.1900
                                                 Fax 302.426.9947

                                                 -and-

                                                 Douglas A. Campbell
                                                 Stanley E. Levine
                                                 1700 Grant Building
                                                 Pittsburgh, PA 15219
                                                 Tel. 412.261.0310
                                                 Fax 412.261.5066

                                                 *Counsel to MLC Asbestos PI Trust*

# EXHIBIT A

# MLC Asbestos PI Trust

Audited Special-Purpose Financial
Statements with Supplementary Information
Years Ended December 31, 2017 and 2016

The report accompanying these financial statements was issued by
BDO USA, LLP, a Delaware limited liability partnership and the U.S. member
of BDO International Limited, a UK company limited by guarantee.



# MLC Asbestos PI Trust

Audited Special-Purpose Financial Statements
with Supplementary Information
Years Ended December 31, 2017 and 2016

# MLC Asbestos PI Trust

## Contents

| | |
|---|---|
| **Independent Auditor's Report** | 1-2 |
| **Special-Purpose Financial Statements** | |
| Special-Purpose Statements of Assets, Liabilities and Net Assets Available for the Payment of Claims | 3 |
| Special-Purpose Statements of Changes in Net Assets Available for the Payment of Claims | 4 |
| Special-Purpose Statements of Cash Flows | 5 |
| Notes to the Special-Purpose Financial Statements | 6-15 |
| **Supplementary Information** | |
| Independent Auditor's Report on Supplementary Information | 16 |
| Supplementary Schedules of Operating Expenses | 17 |



Tel:  703-893-0600          8401 Greensboro Drive
Fax:  703-893-2766         Suite 800
www.bdo.com                McLean, VA 22102

**Independent Auditor's Report**

Trustee
MLC Asbestos PI Trust
Wilmington, Delaware

We have audited the accompanying special-purpose financial statements of MLC Asbestos PI Trust, (the Trust) (a statutory Trust created under the laws of the State of Delaware), which comprise the special-purpose statements of assets, liabilities, and net assets available for the payment of claims as of December 31, 2017 and 2016, and the related special-purpose statements of changes in net assets available for the payment of claims and the special-purpose statements of cash flows for the years then ended, and the related notes to the special-purpose financial statements.

*Management's Responsibility for the Special-Purpose Financial Statements*

Management is responsible for the preparation and fair presentation of these special-purpose financial statements in accordance with the basis of accounting as described in Note 2 to the special-purpose financial statements. Management is also responsible for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of special-purpose financial statements that are free from material misstatement, whether due to fraud or error.

*Auditor's Responsibility*

Our responsibility is to express an opinion on these special-purpose financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the special-purpose financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the special-purpose financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the special-purpose financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the special-purpose financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the special-purpose financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.



*Opinion*

In our opinion, the special-purpose financial statements referred to above present fairly, in all material respects, the assets and liabilities of MLC Asbestos PI Trust as of December 31, 2017 and 2016, and the additions, deductions and cash flows for the years then ended, in accordance with the basis of accounting described in Note 2 to the special-purpose financial statements.

*Basis of Accounting*

We draw attention to Note 2 of the special-purpose financial statements, which describes the basis of accounting. As described in Note 2, these special-purpose financial statements were prepared on a special-purpose basis of accounting which is a basis of accounting other than accounting principles generally accepted in the United States of America. Our opinion is not modified with respect to this matter. The special-purpose basis of accounting has been used in order to communicate the amount of net assets presently available to fund current and future claims.

*Restriction of Use*

Our report is intended solely for the information and use of the Trust and is not intended to be and should not be used by anyone other than the specified party. This restriction is not intended to limit the distribution of this report which, upon filing with the United States Bankruptcy Court for the Southern District of New York and with the United States Trustee for the Southern District of New York, is a matter of public record.

*BDO USA, LLP*

McLean, Virginia
April 20, 2018

2

# Special-Purpose Financial Statements

# MLC Asbestos PI Trust

## Special-Purpose Statements of Assets, Liabilities and Net Assets Available for the Payment of Claims

| December 31, | 2017 | 2016 |
|---|---|---|
| **Assets** | | |
| Cash and cash equivalents | $ 26,661,803 | $ 5,906,438 |
| Investments, at fair value | | |
| Equity securities | 30,019,436 | 53,005,138 |
| Bonds | 95,251,049 | 91,188,035 |
| GUC Trust | 5,843,750 | 5,250,000 |
| Alternative investments | 21,141,828 | 20,350,547 |
| Income taxes receivable | 1,432,726 | - |
| Interest receivable | 1,243,302 | 1,121,035 |
| **Total assets** | 181,593,894 | 176,821,193 |
| **Liabilities** | | |
| Accrued expenses and accounts payable | 482,554 | 647,333 |
| **Total liabilities** | 482,554 | 647,333 |
| **Net assets available for the payment of claims** | $ 181,111,340 | $ 176,173,860 |

*See accompanying notes to the special-purpose financial statements.*

# MLC Asbestos PI Trust

## Special-Purpose Statements of Changes in Net Assets Available for the Payment of Claims

| Years Ended December 31, | 2017 | 2016 |
|---|---|---|
| **Additions** | | |
| Funding under joint plan of reorganization | $          - | $   2,201,900 |
| Net increase in fair value of alternative investments | 1,729,561 | 494,575 |
| Net appreciation in fair value of investment securities | 11,498,634 | - |
| Interest and dividend income | 2,912,400 | 2,506,103 |
| Income tax refund | - | 717,799 |
| **Total additions** | 16,140,595 | 5,920,377 |
| **Deductions** | | |
| Net depreciation in fair value of investment securities | - | 3,027,889 |
| Operating expenses | 1,913,863 | 1,532,201 |
| Income tax expense, net of refund | 417,274 | - |
| Personal injury claims expense | 8,766,041 | 17,760,537 |
| Claims processing expenses | 105,937 | 82,648 |
| **Total deductions** | 11,203,115 | 22,403,275 |
| **Increase (decrease) in net assets available for the payment of claims** | 4,937,480 | (16,482,898) |
| **Net assets available for the payment of claims** | | |
| Beginning of the year | 176,173,860 | 192,656,758 |
| End of the year | $ 181,111,340 | $ 176,173,860 |

*See accompanying notes to the special-purpose financial statements.*

# MLC Asbestos PI Trust

## Special-Purpose Statements of Cash Flows

| Years Ended December 31, | 2017 | 2016 |
|---|---:|---:|
| **Cash flows from operating activities:** | | |
| Increase (decrease) in net assets available for the payment of claims | $ 4,937,480 | $ (16,482,898) |
| Adjustments to reconcile increase (decrease) in net assets available for the payment of claims to net cash used in operating activities: | | |
| Net (appreciation) depreciation in fair value of investments | (11,498,634) | 3,027,889 |
| Net change in fair value of alternative investments | (1,729,561) | (494,575) |
| Amortization of premiums on bonds, net | 1,964,888 | 2,077,414 |
| Changes in operating assets and liabilities | | |
| Interest receivable | (122,267) | (16,813) |
| Income taxes receivable | (1,432,726) | - |
| Accrued expenses and accounts payable | (164,779) | 73,613 |
| Total adjustments | (12,983,079) | 4,667,528 |
| **Net cash used in operating activities** | (8,045,599) | (11,815,370) |
| **Cash flows from investing activities:** | | |
| Sales of equity securities | 41,270,961 | 8,499,261 |
| Sales and maturities of bonds | 13,177,245 | 19,178,256 |
| Liquidations of alternative investments | 938,280 | - |
| Purchases of equity securities | (8,575,481) | (9,131,892) |
| Purchases of bonds | (18,010,041) | (17,922,119) |
| **Net cash provided by investing activities** | 28,800,964 | 623,506 |
| Net increase (decrease) in cash and cash equivalents | 20,755,365 | (11,191,864) |
| Cash and cash equivalents at the beginning of the year | 5,906,438 | 17,098,302 |
| **Cash and cash equivalents at the end of the year** | $ 26,661,803 | $ 5,906,438 |

*See accompanying notes to the special-purpose financial statements.*

# MLC Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

### 1. Description of the Trust

On June 1, 2009, Motors Liquidation Company (MLC) (formerly known as General Motors Corporation) and certain of its subsidiaries (collectively, the Debtors), filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code (Bankruptcy Code) in the United States Bankruptcy Court for the Southern District of New York (Bankruptcy Court).  On October 9, 2009, two additional Debtors, Remediation and Liability Management Company, Inc. (REALM) and Environmental Corporate Remediation Company, Inc. (ENCORE) filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

On December 7, 2010, the Debtors filed a Disclosure Statement (the Disclosure Statement) with the Bankruptcy Court describing the Debtors' Amended Joint Chapter 11 Plan.  On March 29, 2011, the Bankruptcy Court confirmed the Second Amended Joint Chapter 11 Plan (the Plan).  The Plan is final and can no longer be appealed.

The essential elements of the Plan include, among other things, the creation of the MLC Asbestos PI Trust (the Trust) on March 31, 2011, pursuant to which the Trust assumes all liabilities for Asbestos Personal Injury Claims in accordance with the Plan.  Governance of the Trust is dictated by the terms and provisions of the Trust Agreement, which provides, inter alia, for the appointment of the Asbestos Trust Administrator and Trustee (the Trustee).  The processing and payment of Asbestos Personal Injury Claims is, in turn, determined by reference to the detailed provisions of the Trust Distribution Procedures (the TDP).

The Trustee is responsible for supervising and administering the Trust and utilizing the Trust's assets and income to pay the holders of all Asbestos Personal Injury Claims in accordance with the Trust Agreement and the TDP in such a way that holders of such claims are treated fairly, equitably, and reasonably in light of the limited assets available to satisfy such claims.

### 2. Summary of Significant Accounting Policies

#### *Basis of Presentation*

The Trust's financial statements are prepared using special-purpose accounting methods adopted by the Trust, which differ from accounting principles generally accepted in the United States of America (GAAP).  The special-purpose accounting methods were adopted in order to communicate to the beneficiaries of the Trust the net assets available for the payment of claims and the related operating expenses of the Trust.  Since the accompanying special-purpose financial statements and transactions are not based upon GAAP, the accounting treatment by other parties for these same transactions may differ as to timing and amount.  The special-purpose accounting methods include the following:

- Assets are generally recorded when they are received by the Trust and are available for the payment of asbestos claims.

- Future fixed liabilities under contractual obligations and other agreements entered into by the Trust are recorded as deductions from net assets available for the payment of claims in the same period that such contractual obligations or agreements are signed.  Under GAAP, liabilities and contractual obligations are recorded over the period that is benefited by the underlying contract or agreement.

## MLC Asbestos PI Trust

### Notes to the Special-Purpose Financial Statements

- The full amounts of claims will be expensed in the period in which the confirmed claims are settled. A settled claim is a claim that has been allowed by the Trust and accepted by the claimant, with an approved release. Under GAAP, a liability would be recorded for an estimate of the amount to be paid for claims that have been incurred but not yet reported, and for those claims that have been submitted but not yet approved for payment by the Trust. There were settled but unpaid claims of $391,950 and $503,448 for the years ended December 31, 2017 and 2016, respectively, which are included in accrued expenses and accounts payable in the special-purpose statements of assets, liabilities, and net assets available for the payment of claims. Total claims paid during the years ended December 31, 2017 and 2016 aggregated $8,877,539 and $17,742,886. During 2016, the Trust increased the payment percentage for all prior and future claims. As a result, the Trust paid claimants a supplemental payment representing the difference between the amount paid under the original claims payment percentage and the amount paid under the revised payment percentage. Supplemental claims payments totaled $0 and $13,665,345 for the years ended December 31, 2017 and 2016.

- Payments for services to be received over an extended period in the future are expensed as paid because these amounts are no longer available for the payment of claims. Under GAAP, an asset would be recorded and amortized over the period in which the related benefits are received.

- Payments for property and equipment are expensed as incurred. Under GAAP, payments for property and equipment are capitalized and depreciated over the useful lives of the assets. To date, the Trust has incurred no expenses related to purchases of property and equipment.

- Income tax expense is estimated and recorded as incurred in the period in which certain income and expense items affect current federal income taxes payable. Under GAAP, the provision for income taxes is recorded based upon income reported for financial statement purposes, and federal and state income taxes both currently payable and changes in deferred taxes due to differences between financial reporting and tax bases of assets and liabilities. Under GAAP, deferred taxes include a provision for taxes attributable to changes in unrealized gains and losses on investments.

- Under GAAP, for financial statement disclosure purposes all investments would be categorized based on the priority of inputs used to measure fair value. Under GAAP, inputs used in measuring fair value are categorized into three levels. Level 1 includes inputs that are based upon quoted prices for identical instruments traded in active markets. Level 2 includes inputs that are based upon quoted prices for similar instruments in active markets, quoted prices for identical or similar investments in markets that are not active, or models based on valuation techniques for which all significant assumptions are observable in the market or can be corroborated by observable market data for substantially the full term of the investment. Level 3 includes inputs that are generally unobservable and typically reflect management's estimates of assumptions that market participants would use in pricing the asset or liability. The fair values are therefore determined using model-based techniques that include option pricing models, discounted cash flow models, and similar techniques. The accompanying special-purpose financial statements do not categorize investments into these levels.

7

## MLC Asbestos PI Trust

### Notes to the Special-Purpose Financial Statements

#### Use of Estimates

The preparation of financial statements in conformity with the special-purpose accounting methods described above requires the Trust to make estimates and assumptions that affect the reported amounts of certain assets and liabilities and the disclosures of contingent assets and liabilities at the date of the special-purpose financial statements, as well as the reported amounts of additions and deductions to the net assets available for the payment of claims during the reporting period. Actual results could differ from those estimates and such differences could have a material effect on the net assets available for the payment of claims.

#### Cash Equivalents

The Trust considers all highly liquid instruments with original maturities of three months or less to be cash equivalents.

#### Investments

Investment securities are stated at fair market value. Fair market values for investment securities, other than alternative investments, are based on quoted market prices for identical or similar instruments traded in active markets as of the date of the special-purpose financial statements. The fair market value for alternative investments is based on the Trust's proportionate share of each fund's net assets, as reported as of the date of the special-purpose financial statements. The net appreciation or depreciation in fair market value of investments in the accompanying special-purpose statements of changes in net assets available for the payment of claims consists of realized gains or losses on sales of investments and the changes in unrealized gains or losses on investments held. Investment income is recognized when earned. All interest and dividend income, net of investment expenses, are included in interest and dividend income in the accompanying special-purpose statements of changes in net assets available for the payment of claims. Gains and losses on sales of investment securities are determined using the average cost method.

#### Accrued Expenses and Accounts Payable

Accrued expenses and accounts payable consist of accruals and outstanding invoices associated with managing and operating the Trust.

#### Operating Expenses

Operating expenses of the Trust are paid from the net assets available for the payment of claims when invoices are received.

#### Claims Processing Expenses

Claims processing expenses are paid from net assets available for the payment of claims when invoices are received.

# MLC Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

### Income Taxes

The Trust is classified as a Qualified Settlement Fund pursuant to the Internal Revenue Code and Regulations thereunder (the Code). The Trust is subject to federal income taxes based on modified gross income, as defined by the Code. In the opinion of the Trustee and advisors, the Trust is not subject to state income taxes and, therefore, the special-purpose financial statements do not include any provision or liability for state income taxes.

Income tax expense is estimated and includes amounts payable or receivable under current federal income taxes. The Trust records income tax expense (or benefit) associated with amounts payable (or receivable) under current federal income taxes and does not record a provision for (or benefit from) deferred taxes. Accordingly, there is no provision for deferred taxes associated with changes in cumulative unrealized gains and losses on investments (see Note 4). The income taxes associated with gains on investments will be recorded in the Trust's special-purpose financial statements when the net gains are realized (i.e. the securities are sold) and the taxes become currently payable.

### Risks and Uncertainties

The Trust's assets that are exposed to credit risk consist primarily of cash and cash equivalents and investments in equity securities, municipal bonds, and alternative investments. Cash and cash equivalents are maintained at financial institutions and, at times, balances may exceed federally insured limits. The Trust has never experienced any losses related to these balances. Amounts on deposit in excess of federally insured limits at December 31, 2017 approximate $1.6 million.

The Trust invests in a professionally managed portfolio that contains municipal bonds and Treasury bills, common shares of publicly traded companies, money market funds, and alternative investments. Such investment securities are exposed to various risks such as interest rate and credit risks. Due to the level of risk associated with certain investment securities, it is at least reasonably possible that changes in the values of investment securities will occur in the near term and that such changes could materially affect the Trust's account balance and the amounts reported in the special-purpose statements of assets, liabilities and net assets available for the payment of claims.

### 3. Funding Under Joint Plan of Reorganization

In accordance with the Plan and Stipulation and Order Fixing Asbestos Trust Claim and Resolving Debtor's Estimation Motion (the Stipulation) entered by the Bankruptcy Court on February 14, 2011, the Trust was funded with the Asbestos Trust Assets that are comprised of cash in the amount of $2,000,000 and an allowed general unsecured claim of $625,000,000. The Plan provides that general unsecured creditors, including the Trust, shall receive a pro rata share of New GM Securities (a combination of General Motors Company common stock, stock rights, and stock warrants) and General Unsecured Trust (the GUC Trust) Units in accordance with the terms of the Motors Liquidation Company GUC Trust Agreement (the GUC Trust Agreement). The initial distribution on the Trust's general unsecured claim was made directly to the Trust rather than through the GUC Trust pursuant to the terms of the Stipulation. All subsequent distributions were made in accordance with the Plan. The first distribution in accordance with the Plan occurred in 2012 whereby the Trust received 625,000 units in the GUC Trust with a fair market value of $7,875,000 on the date the securities were transferred to the Trust. During the year ended December 31, 2013, the Trust received distributions from the GUC Trust consisting of equity

## MLC Asbestos PI Trust

### Notes to the Special-Purpose Financial Statements

securities with a fair value of $11,974,066 as of the date the securities were transferred to the Trust. During the year ended December 31, 2014, the Trust received distributions from the GUC Trust consisting of equity securities and warrants with a fair value of $4,697,578. During the year ended December 31, 2015, the Trust received distributions from the GUC Trust consisting of equity securities and warrants with a fair value of $2,545,266. During the years ended December 31, 2017 and 2016, the Trust received a cash distribution in the amount of $0 and $2,201,900 from the GUC Trust, respectively.

### 4. Investments

Investment securities consist of the following at December 31:

|  | 2017 | | | |
| Description | Amortized Cost | Gross Unrealized Gains | Gross Unrealized Losses | Fair Market Value |
| --- | --- | --- | --- | --- |
| Equity securities | $ 21,667,114 | $ 8,352,322 | $ - | $ 30,019,436 |
| Bonds | 94,400,062 | 850,987 | - | 95,251,049 |
| GUC Trust | 7,875,000 | - | (2,031,250) | 5,843,750 |
|  | $ 123,942,176 | $ 9,203,309 | $ (2,031,250) | $ 131,114,235 |

|  | 2016 | | | |
| Description | Amortized Cost | Gross Unrealized Gains | Gross Unrealized Losses | Fair Market Value |
| --- | --- | --- | --- | --- |
| Equity securities | $ 48,413,583 | $ 4,591,555 | $ - | $ 53,005,138 |
| Bonds | 91,535,333 | - | (347,298) | 91,188,035 |
| GUC Trust | 7,875,000 | - | (2,625,000) | 5,250,000 |
|  | $ 147,823,916 | $ 4,591,555 | $ (2,972,298) | $ 149,443,173 |

Net appreciation (depreciation) in the fair value of investment securities of $11,498,634 and $(3,027,889) for the years ended December 31, 2017 and 2016, respectively, consists of the net change in unrealized gains (losses) and net realized gains (losses) from investment sales.

# MLC Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

### *Net unrealized gains and losses*

The net change in unrealized gains (losses) from market appreciation (depreciation) of investment securities consist of the following as of December 31:

|  | 2017 | 2016 |
|---|---|---|
| Equity securities | $  3,760,767 | $  4,849,848 |
| Bonds | 1,198,285 | (1,579,332) |
| GUC Trust | 593,750 | (3,843,750) |
|  | $  5,552,802 | $  (573,234) |

### *Realized gains and losses*

Net realized gains (losses) from investment sales consist of the following as of December 31:

|  | 2017 | 2016 |
|---|---|---|
| Equity securities | $  5,949,011 | $  (2,242,492) |
| Bonds | (3,179) | (212,163) |
|  | $  5,945,832 | $  (2,454,655) |

### *Summary of changes in alternative investments*

The table below sets forth a summary of changes in the Trust's alternative investments for the years ended December 31:

|  | 2017 | 2016 |
|---|---|---|
| **Balance, beginning of the year** | $  20,350,547 | $  19,855,972 |
| Liquidation of alternative investments | (938,280) | - |
| Net change in fair value | 1,729,561 | 494,575 |
| **Balance, end of the year** | $  21,141,828 | $  20,350,547 |

# MLC Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

The major categories of the Trust's alternative investments, including general information related to each category, are as follows:

| | Fair Value | | Redemption Frequency (if Currently Eligible) | First/Next Redemption | Notice Period (days) | Gate |
|---|---|---|---|---|---|---|
| | 2017 | 2016 | | | | |
| **(a)** | | | | | | |
| Long/short fund | $   828,462 | $   848,148 | Quarterly | March 31, 2018 | 60 | 0% |
| Long/short fund | 2,140,041 | 1,879,095 | Quarterly | March 31, 2018 | 60 | 0% |
| Long/short fund | 2,218,490 | 1,964,292 | Quarterly | March 31, 2018 | 65 | 0% |
| Long/short fund | 2,241,708 | 2,055,422 | Quarterly | March 31, 2018 | 90 | 0% |
| | 7,428,701 | 6,746,957 | | | | |
| **(b)** | | | | | | |
| Multi-strategy fund | 1,961,349 | 1,833,441 | Annually | December 31, 2018 | 60 | 10% |
| Multi-strategy fund | 821,742 | 657,506 | Quarterly | March 31, 2018 | 90 | 0% |
| Multi-strategy fund | 4,428,276 | 3,935,595 | Annually | December 31, 2018 | 45 | 0% |
| Multi-strategy fund | 23,283 | 973,086 | ** | ** | ** | ** |
| Multi-strategy fund | 2,309,340 | 2,172,621 | Quarterly | March 31, 2018 | 67 | 0% |
| | 9,543,990 | 9,572,249 | | | | |
| **(c)** | | | | | | |
| Credit opportunities fund | 2,405,091 | 2,287,234 | Quarterly | March 31, 2018 | 95 | 0% |
| Credit opportunities fund | 1,764,046 | 1,744,107 | Quarterly | March 31, 2018 | 95 | 0% |
| | 4,169,137 | 4,031,341 | | | | |

$ 21,141,828  $ 20,350,547

*\*\*This fund has started to return liquid capital, thus only eligible for redemption of remaining amount.*

(a)    This category includes alternative investments that hold securities traded primarily in the U.S. equity market.  The investment strategy is managed by engaging in short-sale equity transactions based on individual company fundamentals and, to a far lesser extent, by shorting broad market and sector indices. The fair value of the alternative investments in this category was estimated based on the Trust's proportionate share of each funds' net assets, as reported on the respective funds' financial statements for the years ended December 31, 2017 and 2016.

(b)    This category includes alternative investments that focus on event-driven investing which is defined as investing in securities and instruments of companies undergoing extraordinary events that affect the value of one or more securities of a company.  Mergers and acquisitions, corporate restructurings and spin-offs, credit investments, and capital structure arbitrage are the primary focuses of the alternative investments in this category. The fair value of the alternative investments in this category was estimated based on the Trust's proportionate share of each funds' net assets, as reported on the respective funds' financial statements for the years ended December 31, 2017 and 2016.

## MLC Asbestos PI Trust

### Notes to the Special-Purpose Financial Statements

(c)      This category includes alternative investments that focus on generating risk adjusted returns through a multi-disciplinary investment approach using a broad array of securities and strategies, primarily through active leveraged trading and investments in mortgage securities, related financial instruments, and North American, European, and Asian credit markets. The funds seek to make investments with capital preservation as a primary investment objective. The investment managers seek to accomplish this strategy through investing in distressed securities, long/short securities, relative value securities and macro securities and by taking long or short positions in credit derivatives, equity derivatives, corporate and convertible bonds, loans, public equities, private equities, real estate related assets, collateralized debt obligations, and other asset-backed securities. The fair value of the alternative investments in this category was estimated based on the Trust's proportionate share of each funds' net assets as reported on the respective funds' financial statements for the years ended December 31, 2017 and 2016.

### 5. Income Taxes

During the year ended December 31, 2017, the Trust made estimated tax payments totaling $1,850,000. As of December 31, 2017, the Trust recorded an income tax receivable in the amount of $1,432,726, which was paid in February 2018. During the year ended December 31, 2016, the Trust received a tax refund of $717,799 related to overpayments from previous years. These amounts have been recorded as income tax expense and income tax refund, respectively, in the accompanying special-purpose statements of changes in net assets available for the payment of claims.

The estimated deferred tax liability associated with cumulative unrealized gains on investments held is approximately $2,700,000 as of December 31, 2017. As disclosed in Note 2 to the special-purpose financial statements, the Trust does not record a provision for (or benefit from) deferred taxes. Accordingly, there is no provision for deferred taxes associated with cumulative unrealized gains and losses on investments.

### 6. Contingent Liabilities

The Plan Documents (as defined in the Confirmed Plan) subject the Trust to certain reimbursement and indemnification obligations that may result in future claims against the Trust.

The probability of such claims cannot be reasonably determined. Accordingly, no associated liability has been recorded in the accompanying special-purpose financial statements. Such claims, if any, are not expected to be material. The Trust has obtained insurance for purposes of supporting its obligation to indemnify the Trustee.

### 7. Liability for Asbestos Claims

The settled but unpaid claims liability at December 31, 2017 and 2016 consists of personal injury claims that were settled and approved for payment by the Trust, but unpaid as of December 31, 2017 and 2016.   These amounts have been included in accrued expenses and accounts payable in the accompanying special-purpose statements of assets, liabilities and net assets available for the payment of claims and in personal injury claims expense in the accompanying special-purpose statements of changes in net assets available for the payment of claims for the years ended December 31, 2017 and 2016.

## MLC Asbestos PI Trust

### Notes to the Special-Purpose Financial Statements

The ultimate number of Asbestos Personal Injury Trust Claims to be filed and the liability for all such claims are uncertain at this time. The net assets available for the payment of claims at December 31, 2017 and 2016 represents funding available for all Asbestos Personal Injury Trust Claims for which no fixed liability has yet been established. The net assets available for the payment of claims at December 31, 2017 and 2016 may or may not be sufficient to meet all future obligations of the Trust.

### 8. Trust Liability Insurance

The Trust purchased liability insurance requiring a premium of $79,089 and $80,970 for the years ended December 31, 2017 and 2016, respectively. The current policy term is from March 3, 2016 through March 3, 2018. The Trust's accounting policy is to expense in the current period any amounts that will not be available to pay future Asbestos Personal Injury Trust Claims or expenses of the Trust.   Accordingly, $79,089 and $80,970 was recorded as a deduction in net assets available for the payment of claims for each of the years ended December 31, 2017 and 2016, respectively.

### 9. Trustee, Trust Advisory Committee, and Future Claimants Representative

Fees and expenses of the Trustee, Trust Advisory Committee, Trust Advisory Committee Counsel, Future Claimants' Representative, and Future Claimants' Representative Counsel for the years ended December 31, 2017 and 2016 were as follows:

|  | 2017 | | | |
|---|---|---|---|---|
|  | Fees | Retainer | Expenses | Total |
| Trustee | $ 46,904 | $ 81,103 | $ 2,944 | $ 130,951 |
| Trust Advisory Committee Counsel | 383,193 | - | 14,586 | 397,779 |
| Trust Advisory Committee | 1,595 | - | 297 | 1,892 |
| Future Claimants' Representative | 37,125 | - | 3,574 | 40,699 |
| Future Claimants' Representative Counsel | 25,883 | - | - | 25,883 |
|  | $ 494,700 | $ 81,103 | $ 21,401 | $ 597,204 |

14

# MLC Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

|  | 2016 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | Fees | | Retainer | | Expenses | | Total | |
| Trustee | $ | 58,062 | $ | 82,254 | $ | 4,343 | $ | 144,659 |
| Trust Advisory Committee Counsel |  | 34,397 |  | - |  | 1,459 |  | 35,856 |
| Trust Advisory Committee |  | 1,685 |  | - |  | 333 |  | 2,018 |
| Future Claimants' Representative |  | 37,313 |  | - |  | 2,539 |  | 39,852 |
| Future Claimants' Representative Counsel |  | 30,663 |  | - |  | - |  | 30,663 |
|  | $ | 162,120 | $ | 82,254 | $ | 8,674 | $ | 253,048 |

The above amounts are included in operating expenses in the special-purpose statements of changes in net assets available for the payment of claims for the years ended December 31, 2017 and 2016.

## 10. Subsequent Events

The Trust has evaluated its December 31, 2017 special-purpose financial statements for subsequent events through April 20, 2018, the date the special-purpose financial statements were available to be issued. The Trust is not aware of any subsequent events which would require recognition or disclosure in the special-purpose financial statements.

# MLC Asbestos PI Trust

## Supplementary Information
Years Ended December 31, 2017 and 2016



Tel:  703-893-0600
Fax:  703-893-2766
www.bdo.com

8401 Greensboro Drive
Suite 800
McLean, VA 22102

**Independent Auditor's Report on Supplementary Information**

Trustee
MLC Asbestos PI Trust
Wilmington, Delaware

Our audits of the special-purpose financial statements included in the preceding section of this report were conducted for the purpose of forming an opinion on those special-purpose statements as a whole.  The supplementary information presented in the following section of this report is presented for purposes of additional analysis and is not a required part of the special-purpose financial statements.  Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the special-purpose financial statements.  The information has been subjected to the auditing procedures applied in the audits of the special-purpose financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the special-purpose financial statements or to the special-purpose financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America.  In our opinion, the information is fairly stated in all material respects in relation to the special-purpose financial statements as a whole.

*BDO USA, LLP*

April 20, 2017

BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.

# MLC Asbestos PI Trust

## Supplementary Schedules of Operating Expenses

| Years Ended December 31, | 2017 | 2016 |
|---|---:|---:|
| Investment management fees | $ 831,073 | $ 706,004 |
| Administration and reporting | 234,494 | 236,836 |
| Consulting expenses | 94,404 | 184,663 |
| Trustee fees and expenses | 130,951 | 144,659 |
| Trust liability insurance | 79,089 | 80,970 |
| General legal fees | 51,910 | 42,098 |
| Future claimants' representative | 40,699 | 39,852 |
| TAC counsel fees | 397,779 | 35,856 |
| Future claimants' representative counsel | 25,883 | 30,663 |
| Trust meetings and expenses | 15,933 | 19,228 |
| Office expenses | 9,756 | 9,354 |
| TAC fees and expenses | 1,892 | 2,018 |
| **Total operating expenses** | $ 1,913,863 | $ 1,532,201 |