**HEARING DATE AND TIME: June 4, 2018 at 11:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: May 25, 2018 at 4:00 p.m. (Eastern Time)**

**DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas, 41st Floor
New York, New York  10036-2714
Telephone:  (212) 248-3140
Facsimile:  (212) 248-3141
E-mail: kristin.going@dbr.com;
       marita.erbeck@dbr.com;
Kristin K. Going
Marita S. Erbeck

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                  :

| | |
|---|---|
| **In re** : | **Chapter 11 Case No.** |
| : | |
| : | **09-50026 (MG)** |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, : | |
| **f/k/a General Motors Corp.**, *et al.* : | **(Jointly Administered)** |
| : | |
| **Debtors.** : | |

----------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION FOR ORDER: (1) GRANTING AUTHORITY TO REALLOCATE AND USE DISTRIBUTABLE CASH FOR NOTICE PROCEDURES; (2) APPROVING NOTICE PROCEDURES WITH RESPECT TO (A) THE PROPOSED SETTLEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2002(m) AND (B) THE ESTIMATION MOTION; AND (3) DIRECTING THE PRODUCTION OF INFORMATION HELD BY GENERAL MOTORS LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 AND BANKRUPTCY CODE SECTION 105(a)**

      **PLEASE TAKE NOTICE** that on May 2, 2018, Wilmington Trust Company,

solely in its capacity as trust administrator and trustee (in such capacity, the "**GUC Trust**

**Administrator**"), of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed

by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors'

Second Amended Joint Chapter 11 Plan dated March 18, 2011, the Ignition Switch Plaintiffs,[1]

---

[1]   Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion (defined herein).

certain Non-Ignition Switch Plaintiffs and certain Pre-Closing Accident Plaintiffs (collectively, the "**Movants**") filed a motion (the "**Motion**") for an order (1) granting authority to reallocate and use Distributable Cash to fund notice procedures, pursuant to section 6.1 of the Second Amended and Restated Motors Liquidation Company GUC Trust Agreement dated as of July 30, 2015, (2) approving notice procedures with respect to proposed settlement pursuant to Federal Rule of Bankruptcy Procedures 2002(m) and a motion to estimate claims, and (3) directing the production of information held by General Motors LLC pursuant to Federal Rule of Bankruptcy Procedure 2004 and Bankruptcy Code Section 105(a), all as more fully described in the Motion, and that a hearing will be held before the Honorable Judge Martin Glenn, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **June 4, 2018 at 11:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to this Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Drinker Biddle & Reath LLP, attorneys for Wilmington Trust Company as GUC Trust Administrator, 1177 Avenue of the Americas, 41st Floor, New York, New York 10166 (Attn: Kristin K. Going, Esq. & Marita S. Erbeck, Esq.); (ii) FTI Consulting, as the GUC Trust Monitor, 3 Times Square, 11th Floor New York, NY 10036 (Attn: Conor Tully); (iii) Paul, Weiss, Rifkind,

92515019.2

Wharton & Garrison LLP, attorneys for the United States Department of the Treasury, 1285
Avenue of the Americas, New York, New York (Attn: Douglas R. Davis, Esq. and Lauren
Shumejda, Esq.); (iv) the United States Department of the Treasury, 1500 Pennsylvania
Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Erik Rosenfeld); (v) Vedder Price,
P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New
York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vi) Brown Rudnick
LLP, designated counsel in the Bankruptcy Court for the Ignition Switch Plaintiffs and Certain
Non-Ignition Switch Plaintiffs, Seven Times Square, New York, New York 10036 (Attn:
Edward S. Weisfelner, Esq. & Howard S. Steel, Esq.); (vii) Stutzman, Bromberg, Esserman &
Plifka, a Professional Corporation, designated counsel in the Bankruptcy Court for the Ignition
Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs, 2323 Bryan Street, Suite 2200,
Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq.); (viii) Hagens Berman Sobol Shapiro
LLC, co-lead counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch
Plaintiffs in the MDL Court, 1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
(Attn: Steve W. Berman, Esq.); (ix) Lieff Cabraser Heimann & Bernstein, LLP, co-lead counsel
for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs in the MDL Court,
275 Battery Street, 29th Floor, San Francisco, California 94111 (Attn: Elizabeth J. Cabraser,
Esq.); (x) Goodwin Procter LLP, counsel to those certain Pre-Closing Accident Plaintiffs
represented by Hilliard Munoz Gonzales L.L.P. and the Law Offices of Thomas J. Henry, The
New York Times Building, 620 Eighth Avenue, New York, New York 10018 (Attn: William
P. Weintraub, Esq. & Gregory W. Fox, Esq.); (xi) Hilliard Martinez Gonzales LLP, counsel to
certain Pre-Closing Accident Plaintiffs, 719 South Shoreline, Suite 500, Corpus Christi, Texas
78401 (Attn: Robert Hilliard, Esq.), (xii) The Law Offices of Thomas J. Henry, counsel to
certain Pre-Closing Accident Plaintiffs, 4715 Fredericksburg Road, Suite 507, San Antonio,
Texas 78229 (Attn: Thomas J. Henry, Esq.); (xiii) Andrews Myers, P.C., counsel to certain

Pre-Closing Accident Plaintiffs, 1885 St. James Place, 15th Floor, Houston, Texas 77056 (Attn:

Lisa M. Norman, Esq. & T. Joshua Judd, Esq.) and (xiv) the Office of the United States Trustee

for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room

1006, New York, New York 10014 (Attn: William K. Harrington, Esq.), so as to be received

no later than **May 25, 2018 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

> **PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed
and served with respect to the Motion, Movants may, on or after the Objection Deadline, submit
to the Bankruptcy Court an order substantially in the form of the proposed order annexed to
the Motion, which order may be entered with no further notice or opportunity to be heard
offered to any party.

Dated:   New York, New York
        May 2, 2018

DRINKER BIDDLE & REATH LLP

By:      /s/   Kristin K. Going
           Kristin K. Going
           Marita S. Erbeck
           1177 Avenue of the Americas
           41st Floor
           New York, NY 10036-2714
           Tel: (212) 248-3140
           E-mail: kristin.going@dbr.com;
                  marita.erbeck@dbr.com;

           *Attorneys for the Motors Liquidation*
           *Company GUC Trust Administrator*

4

**HEARING DATE AND TIME: June 4, 2018 at 11:00 a.m. (EDT)**
**OBJECTION DEADLINE: May 25, 2018 at 4:00 p.m. (EDT)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                              :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., | : | Case No.: 09-50026 (MG) |
|     f/k/a General Motors Corp., et al., | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------X

**MOTION FOR ORDER:  (1) GRANTING AUTHORITY**
**TO REALLOCATE AND USE DISTRIBUTABLE CASH FOR**
**NOTICE PROCEDURES; (2) APPROVING NOTICE PROCEDURES WITH**
**RESPECT TO (A) THE PROPOSED SETTLEMENT PURSUANT TO FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 2002(m) AND (B) THE ESTIMATION**
**MOTION; AND (3) DIRECTING THE PRODUCTION OF INFORMATION**
**HELD BY GENERAL MOTORS LLC PURSUANT TO FEDERAL RULE OF**
**<u>BANKRUPTCY PROCEDURE 2004 AND BANKRUPTCY CODE SECTION 105(a)</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

JURISDICTION ................................................................................................................... 3

BACKGROUND .................................................................................................................. 3

    I.     PLAINTIFFS' CLAIMS AGAINST THE GUC TRUST .................................... 3

    II.    THE SETTLEMENT AGREEMENT ................................................................. 4

    III.   NOTICE PROCEDURES ................................................................................... 7

RELIEF REQUESTED ........................................................................................................ 8

BASIS FOR RELIEF ........................................................................................................... 8

    IV.   THE BANKRUPTCY COURT SHOULD APPROVE THE NOTICE
         PROCEDURES .................................................................................................. 8

    V.    THE BANKRUPTCY COURT SHOULD APPROVE AND
         AUTHORIZE THE REALLOCATION OF GUC TRUST ASSETS ................ 11

    VI.   THE BANKRUPTCY COURT SHOULD REQUIRE NEW GM TO
         PRODUCE THE RECALL DATA UNDER BANKRUPTCY RULE 2004
         AND BANKRUPTCY CODE SECTION 105(A ............................................... 12

NOTICE ............................................................................................................................. 15

CONCLUSION .................................................................................................................. 15

92549152.1

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*In re Drexel Burnham Lambert Group, Inc.*,
   123 B.R. 702 (Bankr. S.D.N.Y. 1991) ...................................................................12

*Fletcher v. Davis (In re Fletcher Int'l, Ltd.)*,
   536 B.R. 551 (S.D.N.Y. 2015), *aff'd*, 661 F. App'x 124 (2d Cir. 2016) .................9

*In re Ionosphere Clubs, Inc.*,
   156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ........................13

*In re Recoton Corp.*,
   307 B.R. 751 (Bankr. S.D.N.Y. 2004) ...................................................................12

*In re SunEdison, Inc.*,
   562 B.R. 243 (Bankr. S.D.N.Y. 2017) ...................................................................12

*In re TK Holdings Inc.*,
   Case No. 17-11375 (BLS) (Bank. D. Del. July 7, 2017) ...................................10, 11

*In re W.R. Grace & Co.*,
   No. 01-1139 (Bankr. D. Del. Oct. 3, 2007), ECF No. 16979 ................................15

**STATUTES, RULES & REGULATIONS**

49 C.F.R. §§ 577.5(a), 577.7(a) .......................................................................13, 14

28 U.S.C. § 157 ...............................................................................................3, 1

28 U.S.C. § 157(b)(2) ............................................................................................2

28 U.S.C. § 157(b)(2)(A) .......................................................................................3

28 U.S.C. § 1334 ............................................................................................3, 1

28 U.S.C. § 1408 ............................................................................................3, 2

28 U.S.C. § 1409 ............................................................................................3, 2

49 U.S.C. § 30117(b) ..........................................................................................14

49 U.S.C. § 30119(d) .....................................................................................13, 14

United States Code Title 49 § 30117(b) ...........................................................2, 13

Bankruptcy Code § 105 ........................................................................................4

92549152.1

Bankruptcy Code § 105(a) ............................................................................................ *passim*

Bankruptcy Code § 105(d) ...........................................................................................8, 9

Bankruptcy Code § 363 ....................................................................................................4

Bankruptcy Code § 524(g), (II) ....................................................................................14

Bankruptcy Code § 1142 .................................................................................................4

Bankruptcy Rule (III) ......................................................................................................4

Bankruptcy Rule 1015(c) ..............................................................................................15

Bankruptcy Rule 2002(m) ............................................................................................8, 9

Bankruptcy Rule 2004(a) ..............................................................................................12

Bankruptcy Rule 3002 ......................................................................................................4

Bankruptcy Rule 9007 ....................................................................................................15

Bankruptcy Rule 9019 ...................................................................................................4, 9

Fed. R. Bankr. P. 45 .......................................................................................................15

Fed. R. Bankr. P. 2002 ..................................................................................................9, 11

Fed. R. Bankr. P. 2002(m) and (B) ................................................................................1, 1

Fed. R. Bankr. P. 2004 ................................................................................................. *passim*

Fed. R. Bankr. P. 2004(b) ..............................................................................................12

Fed. R. Bankr. P. 3003(c)(3) .........................................................................................11

Fed. R. Bankr. P. 5005 ...................................................................................................11

Fed. R. Bankr. P. 9007 ...................................................................................................11

Rule 2002-1(e) ................................................................................................................11

Rule 2004 ........................................................................................................................13

Rule 3001-1 .....................................................................................................................11

Rule 3003-1 .....................................................................................................................11

92549152.1

The Ignition Switch Plaintiffs,[1] certain Non-Ignition Switch Plaintiffs,[2] certain Pre-Closing Accident Plaintiffs[3] (collectively, the "**Signatory Plaintiffs**"), and the Motors Liquidation Company GUC Trust (the "**GUC Trust**," together with the Signatory Plaintiffs, the "**Parties**") hereby submit this *Motion for Order: (1) Granting Authority to Reallocate and Use Distributable Cash for Notice Procedures; (2) Approving Notice Procedures with Respect to (A) the Proposed Settlement Pursuant to Federal Rule of Bankruptcy Procedure 2002(m) and (B) the Estimation Motion; and (3) Directing the Production of Information Held by General Motors LLC Pursuant to Federal Rule of Bankruptcy Procedure 2004 and Bankruptcy Code Section 105(a)* (the "**Motion**"), and in support thereof, respectfully state as follows:

## PRELIMINARY STATEMENT

On April 25, 2018, the Signatory Plaintiffs and the GUC Trust entered into a Settlement Agreement ("**Settlement Agreement**") to resolve the myriad of disputes that have already spanned three years of litigation, all emanating from the disclosures in 2014 that General Motors Corporation ("**Old GM**") knew about, but concealed, certain vehicle safety defects. In order to provide all parties affected by the Settlement Agreement and Estimation Motion (as defined below) with appropriate notice and an opportunity to be heard, the Parties intend, as described herein, to give broad notice of the Settlement Agreement and Estimation Motion to all persons in the United

---

[1]    The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, prior to July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047 (the "**Ignition Switch Defect**").

[2]    The term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, prior to July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118 and 14V-153.

[3]    The term "**Pre-Closing Accident Plaintiffs**" shall mean those plaintiffs asserting personal injury or wrongful death claims or persons who suffered a personal injury or wrongful death arising from an accident that occurred prior to the Closing Date involving an Old GM vehicle subject to the Recalls, including a subset asserting claims involving an Old GM vehicle with the Ignition Switch Defect (the "**Ignition Switch Pre-Closing Accident Plaintiffs**"). Collectively, all Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Pre-Closing Accident Plaintiffs are referred to as "**Plaintiffs**."

States who, prior to July 10, 2009, purchased or leased a defective vehicle manufactured by Old GM included in the relevant recalls (the "**Recalls**").  In order to effectuate this notice program, the Parties require the names and addresses of these car owners and lessors (the "**Recall Data**").

As part of the Settlement Agreement, the GUC Trust has agreed, subject to Court approval, to pay up to $6 million for noticing costs associated with the Settlement Agreement and Estimation Motion.  Pursuant to the GUC Trust Agreement, the GUC Trust Administrator must obtain Court approval to distribute funds to any party other than GUC Trust Beneficiaries.  Thus, the GUC Trust seeks the Court's approval to reallocate $6 million of GUC Trust distributable cash to finance the notice procedures contemplated in the Settlement Agreement.

As a manufacturer of motor vehicles subject to the Recalls, Old GM was required under Federal law, specifically under Section 30117(b) of Title 49 of the United States Code and attendant Federal regulations, to maintain in its business records the names and addresses of the first purchaser of each vehicle it produced ("**First Purchaser Information**").  On information and belief, Old GM complied with the law and maintained the First Purchaser Information.  The First Purchaser Information is a subset of the Recall Data.

In 2009, substantially all of Old GM's assets were sold to General Motors, LLC ("**New GM**") pursuant to that certain Amended and Restated Master Sale and Purchase Agreement dated as of June 26, 2009 (the "**MSPA**").  Among the assets sold to New GM were Old GM's business records, which included the First Purchaser Information.  Following the sale, New GM has been obligated to preserve the First Purchaser Information under applicable motor vehicle safety law and the terms of the MSPA.  On information and belief, New GM is in compliance with these laws. Further, Section 30119(d) of Title 49 of the United States Code and attendant Federal regulations required New GM to provide notification of the Recalls to each registered owner, and New GM

92549152.1

satisfied this obligation by obtaining contact information from R.L. Polk and Company. Consequently, New GM is likely in possession of the Recall Data, including the First Purchaser Information.

Accordingly, by this Motion, the Parties request that the Court enter an Order: (i) granting the GUC Trust authority to reallocate $6 million in otherwise distributable cash to fund the approved Notice Procedures; (ii) approving and establishing Notice Procedures for notice of (a) the 9019 Motion (as defined below) and (b) the Estimation Motion; and (iii) compelling New GM's production of the Recall Data under Bankruptcy Code Section 105(a), Bankruptcy Rule 2004, and the terms of the MSPA so that once approved, the notice procedures can be implemented.

## JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### I.    Plaintiffs' Claims Against The GUC Trust.

In February and March 2014, over four years after the Old GM bar date for filing proofs of claim (the "**Bar Date**"), New GM first publicly disclosed the existence of an ignition switch defect and issued a recall, NHTSA Recall Number 14V-047, impacting approximately 2.1 million vehicles. New GM subsequently issued four additional recalls in June, July, and September 2014, concerning defective ignition switches affecting approximately 10 million additional vehicles, NHTSA Recall Numbers 14V-355, 14V-394, 4V-400, and 14V-540, and other recalls for safety defects including a recall pertaining to approximately 1.2 million vehicles with defective side airbags, NHTSA Recall Number 14V-118, and another recall issued in March pertaining to over

92549152.1

1.3 million vehicles with defective power steering, NHTSA Recall Number 14V-153 (collectively, the "**Safety Defects**").

Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs have sought leave to file proposed class claims (as amended) against the GUC Trust seeking relief for economic losses related to the concealment of safety defects in ignition switches (including the Ignition Switch Defect and similarly defective ignition switches), side airbags, and power steering by Old GM (the "**Proposed Class Claims**").

The Proposed Class Claims allege that Old GM knew about the Safety Defects for years prior to the Bar Date.[4] The Proposed Class Claims further allege that Old GM concealed the existence of these defects, causing Plaintiffs to overpay for defective vehicles and bear the costs of repairs while Old GM reaped the benefit of selling defective vehicles at inflated prices and avoiding the costs of a recall.[5]

Certain Ignition Switch Pre-Closing Accident Plaintiffs have likewise sought leave to file late personal injury and wrongful death claims against the GUC Trust related to Old GM vehicles with the Safety Defects.

## II.    The Settlement Agreement.

Following extensive, arms-length, good faith negotiations between the Signatory Plaintiffs and the GUC Trust, the parties have entered into the Settlement Agreement.[6]

---

[4]    *See* Proposed Ignition Switch Class Claim ¶¶ 57-285; Proposed Non-Ignition Switch Class Claim ¶¶ 38-175.

[5]    *See, e.g.*, Proposed Ignition Switch Class Claim ¶ 374; Proposed Non-Ignition Switch Class Claim ¶ 278.

[6]    *See* concurrently-filed *Motion of Motors Liquidation Company GUC Trust to (I) Approve the GUC Trust Administrator's Actions, (II) Approve the Settlement Agreement by and among the Signatory Plaintiffs and the GUC Trust  Pursuant To Bankruptcy Code Sections 105, 363, and 1142 And Bankruptcy Rules 3002 and 9019 and (III) Authorize the Reallocation of GUC Trust Assets* (the "**9019 Motion**").

92549152.1

The Settlement Agreement resolves numerous longstanding, disputed issues including, *inter alia*:  (i) whether Plaintiffs asserting claims for economic loss should be granted authority to file late class proofs of claim or plaintiffs asserting personal injury or wrongful death claims should be granted authority to file late proofs of claim (and whether such authority can be granted solely on due process grounds); (ii) whether Plaintiffs' asserted claims are equitably moot; (iii) whether additional grounds exist to object to Plaintiffs' asserted claims; and (iv) the allowable amount of Plaintiffs' claims.

Generally, under the Settlement Agreement,[7] the GUC Trust agrees to (i) fund up to $6,000,000 in noticing costs; and (ii) irrevocably pay $15,000,000 (the "**Settlement Amount**") into a trust, fund or other vehicle (the "**Settlement Fund**") for the exclusive benefit of Plaintiffs.

In exchange, after notice and an opportunity to be heard for Plaintiffs and other parties-in-interest, and upon approval of the Settlement and payment of the Settlement Amount, all Plaintiffs with claims against the GUC Trust (whether asserted or unasserted, contingent, or otherwise) arising from the Recalls, including those who did not execute the Settlement Agreement, are deemed to irrevocably waive and release all claims (other than those arising under the Settlement Agreement) against Old GM, the Old GM estate, the GUC Trust, the GUC Trust Administrator, holders of beneficial units in the GUC Trust (the "**Unitholders**") and the Motors Liquidation Company Avoidance Action Trust, including a release of any rights to prior or future distributions of GUC Trust assets and any rights to distributions by the Motors Liquidation Company Avoidance Action Trust (the "**Release and Waiver**").

---

[7] This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent that there are any inconsistencies between the description of the Settlement Agreement contained in the Motion and the terms and provisions of the Settlement Agreement, the Settlement Agreement shall control.

92549152.1

In addition, the GUC Trust agrees to file a motion (the "**Estimation Motion**") seeking an estimation of Plaintiffs' claims. In the event the Bankruptcy Court estimates the aggregate amount of Plaintiffs' claims, together with all other previously allowed claims against the Old GM estate, at an amount exceeding $35 billion, thus triggering the provision of the Sale Agreement[8] requiring New GM to issue additional New GM common stock (the "**Adjustment Shares**"), the GUC Trust further agrees to promptly direct the Adjustment Shares to the Settlement Fund.

Upon approval of the 9019 Motion, all Unitholders, all defendants in the action captioned *Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al.*, Adv. Pro. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009) (the "**Term Loan Avoidance Action**"), the GUC Trust and the Motors Liquidation Avoidance Action Trust will be deemed to irrevocably waive and release any and all rights to any Adjustment Shares, as well as the Settlement Amount.

There is no guarantee that the Estimation Motion will result in the issuance of any Adjustment Shares, let alone the maximum number of Adjustment Shares. Regardless of whether the Estimation Motion results in the issuance of any Adjustment Shares, the Release and Waiver will remain effective.

Subject to additional notice and an opportunity for Plaintiffs to object at a later stage, the Signatory Plaintiffs will determine the overall allocation of the value of the Settlement Fund between economic loss claims and personal injury/wrongful death claims, and the eligibility and criteria for payment. Being defined as a Plaintiff will not assure any party that they will receive a

---

[8]     *See Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser*, dated as of June 26, 2009 (the "**MSPA**"), § 3.2(c). In the event that the estimate is at or exceeding $42 billion, New GM will be required to issue the maximum number of Adjustment Shares (30 million).

6

distribution from the Settlement Amount, the Adjustment Shares (or their value), if any, or any other consideration in the Settlement Fund.

## III.    Notice Procedures.

In order to provide the most comprehensive notice, particularly in light of (i) Old GM's failure to provide actual notice prior to the bar date to individuals subject to the Safety Defects; and (ii) the Release and Waiver contained in the Settlement Agreement, the Parties propose the following "**Notice Procedures**":

> notice by postcard in the form attached hereto as **Exhibit A** (the "**Direct Mail Notice**") to: (A) all persons in the United States who, prior to July 10, 2009, purchased or leased a defective vehicle manufactured by Old GM included in the Recalls; and (B) all Pre-Closing Accident Plaintiffs who have filed a lawsuit against New GM or filed or joined a motion for authority to file late claims against the GUC Trust, as of the date of the Settlement Agreement;

> notice via DTC's LENSNOTICE system to Unitholders of the GUC Trust in the form attached hereto as **Exhibit B**;

> notice via ECF to all entities, including New GM and the defendants in the Term Loan Avoidance Action, that receive electronic notice from the Court's ECF system; and

> paid media including:  (1) digital banner advertisements targeted specifically to owners or lessees of the defective vehicles manufactured by Old GM included in the Recalls; (2) pre-roll video ads placed on YouTube and other sites with YouTube embedded videos; (3) sponsored search listings on the three most highly-visited Internet search engines, Google, Yahoo! and Bing; (4) a party-neutral informational press release issued to online press outlets throughout the United States; and (5) a settlement website where individuals will be able to obtain detailed information about the case and review documents including the Long Form Notices (in English and Spanish), Settlement Agreement, Settlement Order, and the Estimation Motion and answers to frequently asked questions (FAQs) and any other documents the Court may require.

Pursuant to the Settlement Agreement, the GUC Trust is responsible for funding the cost of the notice contemplated hereby, up to an amount of $6,000,000 (the "**Notice Cost Cap**

**Amount**").[9]    As described further below, the GUC Trust respectfully requests authority to reallocate $6,000,000 from otherwise distributable assets of the GUC Trust for use in funding the Notice Procedures.

The Parties respectfully submit that the foregoing Notice Procedures will provide, in accordance with due process, comprehensive notice to all affected parties of the relief to be sought under the 9019 Motion and the Estimation Motion, and that no other or further notice is necessary or required.

## RELIEF REQUESTED

By this Motion, the Parties respectfully request that the Court enter an Order, substantially in the form attached to this Motion, authorizing the reallocation of GUC Trust assets, approving the Notice Procedures and compelling New GM to produce the Recall Data.

## BASIS FOR RELIEF

### IV.    The Bankruptcy Court Should Approve The Notice Procedures.

Pursuant to Bankruptcy Rule 2002(m), the Parties request an order designating the form and manner of notice of the Settlement Agreement, the motion to approve the Settlement Agreement and the Estimation Motion.

Additionally, the Court has the authority and discretion under Bankruptcy Code Section 105(d) to issue and prescribe procedures and conditions as the Court deems appropriate to ensure that matters before it are handled expeditiously and economically.  *See* 11 U.S.C. § 105(d);

---

[9]    Based upon proposals received from vendors, the cost of the notice is approximately $6 million.  Specifically, the Parties requested proposals for the notice program from three vendors: (1) Epiq Class Action & Claims Solutions, Inc./Hilsoft Notifications ("**Epiq/Hilsoft**"); (2) Rust Consulting/Kinsella Media; and (3) Kurtzman Carson Consultants.  Based on the responses, the Parties selected Epiq as the Notice Administrator, based both on the cost estimate, as well as their comprehensive notice plan, which is explained in detail in the Declaration of Cameron R. Azari, Esq., on Implementation and Adequacy of General Motors Bankruptcy Settlement Notice Program ("**Azari Decl.**"), annexed hereto as **Exhibit C**.

92549152.1

*Fletcher v. Davis (In re Fletcher Int'l, Ltd.)*, 536 B.R. 551, 560 (S.D.N.Y. 2015), *aff'd*, 661 F.

App'x 124 (2d Cir. 2016).

Under Bankruptcy Rule 2002, no less than 21 days' notice must be provided for proposed

settlements under Bankruptcy Rule 9019.  Entry of the Proposed Order is appropriate under

Bankruptcy Rule 2002(m) and Bankruptcy Code Section 105(d), because it will allow the Parties

to: (i) comply with the terms of the Settlement Agreement (which specifically require the Parties

to obtain an order from this Court approving the Notice Procedures); and (ii) implement a process

in which appropriate notice, in accordance with due process, will be given to all Plaintiffs and

parties-in-interest so that this Court can consider the relief sought under the 9019 Motion,

including the Release and Waiver provisions, as well as the Estimation Motion.

To ensure that the Notice Procedures are sufficient, Epiq/Hilsoft, a firm that specializes in

designing, developing, analyzing and implementing large-scale, un-biased, legal notification

plans, was engaged.[10]  Epiq/Hilsoft analyzed the individual notice options and the media audience

data to determine the most effective mixture of media required to reach the greatest practicable

number of parties.[11]

Rather than incurring the prohibitive cost and expense of mailing a long form of notice to

Plaintiffs, the Parties will serve the Direct Mail Notice, which clearly and concisely summarizes

the Settlement and Release and Waiver.  The Direct Mail Notice will direct the recipients to a

website dedicated specifically to the Settlement where they can access additional information.  The

---

[10]  *See* Azari Decl. ¶ 3.

[11]  *Id.* ¶ 8.

Direct Mail Notices will be sent by United States Postal Service first class mail.[12]  Epiq/Hilsoft estimates that it will take 35 days to complete the mailing of the postcard notice.

The comprehensive Direct Mail Notice effort will be supplemented by paid media selected to both notify persons who may not see the Direct Mail Notice and remind persons to act if they so choose.  Paid media will include digital banner advertisements targeted specifically to owners and lessees of the vehicles subject to the Recalls, along with online video advertisements targeted to adults aged 18 and over.[13]

To build additional reach and extend exposures, a party-neutral informational release will be issued to approximately 5,000 general media (print and broadcast) outlets and 5,400 online databases and websites throughout the United States.[14]

A dedicated website will be created for the Settlement and the Estimation Motion. Plaintiffs will be able to obtain detailed information about the case and review documents including the Long Form Notice attached hereto as **Exhibit D** (in English and Spanish), Settlement Agreement, Settlement Order and answers to frequently asked questions and any other documents the Court may require.[15]  To facilitate locating the case website, sponsored search listings will be acquired on the three most highly-visited internet search engines:  *Google*, *Yahoo!* and *Bing*.

The Notice Procedures presented here are substantially similar to the notice procedures approved by Judge Shannon in Takata (*In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bank. D. Del. July 7, 2017)), attached hereto as **Exhibit E**, to provide notice to individuals who own, or

---

[12]  *Id.* ¶ 16.

[13]  *Id.* ¶¶ 20-25.

[14]  *Id.* ¶ 28.

[15]  Once the plan for allocation between economic loss claims and personal injury/wrongful death claims is determined it will be posted prominently on the Settlement website.  Any criteria on eligibility to recover from the Settlement Fund will also be posted prominently on the Settlement website.

92549152.1

may have owned, vehicles equipped with recalled airbag inflators (*i.e.*, serving a postcard via first-class mail, utilizing digital banner advertising and paid internet search listings, distributing an informational release, and creating a dedicated website).[16]

## V.    **The Bankruptcy Court Should Approve and Authorize the Reallocation of GUC Trust Assets.**

As noted above, the GUC Trust shall be responsible for funding the cost of the Notice Procedures up to the Notice Cost Cap Amount.  Pursuant to Section 6.1(b) of the Second Amended and Restated GUC Trust Agreement dated as of July 30, 2015 (the "**GUC Trust Agreement**"), the GUC Trust Administrator is afforded the flexibility to "hold back" from distributions (with the approval of FTI Consulting, Inc. as monitor of the GUC Trust (in such capacity, the "**GUC Trust Monitor**"))[17] otherwise distributable assets for the purposes of, among other things, funding fees, costs and expenses of the GUC Trust to the extent that such fees, costs and expenses are not otherwise contemplated by the GUC Trust's budget.  *See* GUC Trust Agreement § 6.1(b).  The GUC Trust Agreement further permits the GUC Trust Administrator to seek Bankruptcy Court authority to reallocate and use the "held back" funds for the purposes of satisfying such fees, costs and expenses as incurred (such funds, as reallocated, "**Other GUC Trust Administrative Cash**"). *Id.*  Section 6.13 of the GUC Trust Agreement provides that to the extent any "expenses, costs, liabilities, obligations or fees [are] incurred by the GUC Trust… in connection with the wind-down

---

[16]    *See Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants*, *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Oct. 4, 2017), ECF No. 959.

[17]    As required by Section 6.1 of the GUC Trust Agreement, the GUC Trust Administrator has consulted with the GUC Trust Monitor with respect to the proposed reallocation and use of distributable cash.  GUC Trust Agreement § 6.1.  The GUC Trust Monitor has indicated that it supports the relief requested herein.

of the Debtors' affairs… [such liabilities] shall be satisfied… from the applicable portion of Other GUC Trust Administrative Cash." *See* GUC Trust Agreement § 6.13.

The GUC Trust's agreement to pay up to $6 million for the notice contemplated under the Notice Procedures falls well within the types of "expenses, costs, liabilities, obligations or fees" that may be "held back" and reallocated for use by the GUC Trust pursuant to Section 6.13 of the GUC Trust Agreement. The Parties believe these Notice Procedures will keep costs reasonable under the circumstances while also providing Plaintiffs with notice in accordance with due process requirements.

Accordingly, the GUC Trust submits that, pursuant to Section 6.1(b) of the GUC Trust Agreement, the request to reallocate up to $6 million of otherwise distributable assets for the purposes of funding the notice under the Notice Procedures is warranted.

## VI.    The Bankruptcy Court Should Require New GM To Produce the Recall Data Under Bankruptcy Rule 2004 and Bankruptcy Code Section 105(a).

Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity" on the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ." Fed. R. Bankr. P. 2004(b). The decision whether to authorize the requested discovery rests within the sound discretion of the bankruptcy court. *See In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017).

The scope of Bankruptcy Rule 2004 discovery is "very broad, broader even than discovery under the Federal Rules of Civil Procedure." *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citing *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991)). "[A]ny third party who can be shown to have a relationship with the debtor can

92549152.1

be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

Here, the Parties request that New GM produce the Recall Data to the Parties, information that is in the possession, custody, or control of New GM, as required under applicable motor vehicle safety laws.

Pursuant to the Motor Vehicle Safety Act, a manufacturer of motor vehicles is required to maintain the First Purchaser Information for each vehicle it manufactures. *See* 49 U.S.C. § 30117(b).[18] Moreover, vehicle manufacturers must be able to notify each registered owner of defective vehicles "within a reasonable time" after NHTSA determines that a safety issue exists. *See* 49 U.S.C. § 30119(d); 49 C.F.R. §§ 577.5(a), 577.7(a). On occasions prior to the Sale when Old GM decided to recall vehicles, its ordinary practice and method for doing so was to outsource the task of obtaining owner contact information to R.L. Polk and Company, as service provider.[19]

In 2009, substantially all of Old GM's assets, including Old GM's books and records, were sold to New GM, pursuant to the MSPA approved by the Bankruptcy Court.[20] Thus, New GM obtained the First Purchaser Information from Old GM. Like Old GM, New GM is required by

---

[18]   49 U.S.C. § 30117(b) ("A Manufacturer of a motor vehicle or tire . . . shall cause to be maintained a record of the name and address of the first purchaser of each vehicle or tire it produces and, to the extent prescribed by regulations of the Secretary, shall cause to be maintained a record of the name and address of the first purchaser of replacement equipment (except a tire) that the manufacturer produces.").

[19]   *See General Motors LLC's Agreed-Upon Stipulations of Fact in Connection with the Four Threshold Issues Identified in This Court's July 11, 2014 Supplemental Scheduling Order*, dated Aug. 8, 2014 [ECF No. 12826-1], ¶ 18.

[20]   *See Amended and Restated Master Sale and Purchase Agreement*, dated June 26, 2009 [ECF No. 2968-1], §2.2(a)(xiv) (defining the "Purchased Assets" to include "all books, records, ledgers, files, documents, correspondence, lists, plats, specifications, surveys, drawings, advertising and promotional materials, reports and other materials (in whatever form or medium), including Tax books and records and Tax Returns used or held for use in connection with the ownership or operation of the Purchased Assets or Assumed Liabilities, including the Purchased Contracts, customer lists, customer information and account records, computer files, data processing records, employment and personnel records, advertising and marketing data and records, credit records, records relating to suppliers, legal records and information and other data.")

law to maintain the First Purchaser Information and have procedures in place enabling it to notify owners of defective vehicles.  *See* 49 U.S.C. §§ 30117(b), 30119(d); 49 C.F.R. §§ 577.5(a), 577.7(a).  This requirement is reinforced under the Sale Agreement.[21]  Indeed, the procedures that New GM had in place to comply with these obligations were employed in 2014 to notify owners and lessees of the Recalls.

Furthermore, Section 6.23 of the MSPA provides:

> Preservation of Records.  The Parties shall preserve and keep all books and records that they own immediately after the Closing relating to the Purchased Assets, the Assumed Liabilities and Sellers' operation of the business related thereto prior to the Closing for a period of six (6) years following the Closing Date **or for such longer period as may be required by applicable Law**, unless disposed of in good faith pursuant to a document retention policy. During such retention period, duly authorized Representatives of a Party shall, upon reasonable notice, have reasonable access during normal business hours to examine, inspect and copy such books and records held by the other Parties for any proper purpose . . . .

Based upon the terms of the MSPA, New GM is obligated to allow inspection and copying of the Recall Data.  Because New GM has previously indicated that it would oppose any request for such Recall Data, the Parties have sought relief under Bankruptcy Rule 2004.

Turnover of the Recall Data is well within the scope of discovery permitted under Bankruptcy Rule 2004, and even under the Federal Rules of Civil Procedure.  *See Order Pursuant to Bankruptcy Rule 2004 Authorizing the Official Committee of Unsecured Creditors of Motors Liquidation Company to Obtain Discovery from (I) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), (II) the Trusts, and (III) General*

---

[21]  "From and after the Closing, Purchaser shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller." Sale Agreement at § 6.15(a); <u>see also</u> § 6.23 (requiring New GM to preserve all such records).

14

*Motors LLC and the Debtors*, dated Aug. 24, 2010 [ECF No. 6749] (requiring New GM to turnover names and social security number information from its pre-petition asbestos claims database); Order Regarding W.R. Grace & Company's Motions to Compel Discovery Materials from the Celotex Asbestos Settlement Trust, *In re W.R. Grace & Co.*, No. 01-1139 (Bankr. D. Del. Oct. 3, 2007), ECF No. 16979 (compelling production of data regarding holders of pre-petition tort claims, including names, dates of birth, and last four digits of social security numbers pursuant to subpoena *duces tecum* served under Federal Rule of Civil Procedure 45).

The production of the Recall Data is necessary to enable the Parties to provide notice of the Settlement Agreement to all Plaintiffs. Accordingly, the circumstances warrant an Order pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 2004 requiring New GM to produce the Recall Data to the Parties.

## NOTICE

Notice of this Motion has been provided to all entities that receive electronic notice from the Court's ECF system and otherwise in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 1015(c) and 9007 establishing Notice and Case Management Procedures*, dated May 5, 2011 [ECF No. 10183]. Notice of this Motion has also been provided to any other required notice parties under Section 6.1(b)(iv) of the GUC Trust Agreement.

No previous application for the relief sought in this Motion has been made to this or any other Court.

## CONCLUSION

WHEREFORE the Parties respectfully request entry of the Proposed Order, substantially in the form attached hereto, approving the Notice Procedures and compelling New GM to produce the Recall Data.

15

Dated: May 2, 2018                      Respectfully submitted,
       New York, New York

*/s/ Kristin K. Going*_____
Kristin K. Going
DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036
Tel: (212) 248-3273
kristin.going@dbr.com

*Counsel for Wilmington Trust Company, as
Administrator and Trustee of the GUC
Trust*

Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN
& PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO
LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

92549152.1

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing
Accident Plaintiffs Represented By Hilliard
Martinez Gonzales L.L.P. and the Law
Offices of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MARTINEZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J.
HENRY
4715 Fredericksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

17

Lisa M. Norman (admitted pro hac vice)
T. Joshua Judd (admitted pro hac vice)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Tel: 713-850-4200
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

92549152.1