**DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas
41ˢᵗ Floor
New York, New York 10036-2714
Telephone:  (212) 248-3140
Facsimile:  (212) 248-3141
E-mail: kristin.going@dbr.com
        clay.pierce@dbr.com
        marita.erbeck@dbr.com
Kristin K. Going
Clay J. Pierce
Marita S. Erbeck

HEARING DATE AND TIME: [ ], 2018 @ [ ](ET)
OBJECTION DEADLINE: [ ], 2018 @ _:00 p.m.
                                                        (ET)

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                    :
**In re**                                                           :         **Chapter 11 Case No.**
                                                                    :
                                                                    :
**MOTORS LIQUIDATION COMPANY, *et al.*,**                           :         **09-50026 (MG)**
**f/k/a General Motors Corp., *et al.***                            :
                                                                    :         **(Jointly Administered)**
                                        **Debtors.**                :
-----------------------------------------------------------------x

**MOTION OF MOTORS LIQUIDATION COMPANY GUC TRUST TO ESTIMATE
VEHICLE RECALL ECONOMIC LOSS AND PERSONAL INJURY CLAIMS FOR
ALLOWANCE PURPOSES AND TO ESTABLISH A SCHEDULE FOR THE
CLAIMS ESTIMATION PROCEEDING**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ii

RELIEF REQUESTED ....................................................................................................... 1

JURISDICTION ................................................................................................................ 3

BACKGROUND ................................................................................................................ 3

    A.    Old GM's Bankruptcy and the Creation of the GUC Trust .............................. 3

        B.    The Recalls and Subsequent Proceedings  In the Bankruptcy Court and Second Circuit .................................................................................. 5

        C.    Developments in the Bankruptcy Court Following the Second Circuit Opinion ......................................................................................... 7

        D.    Plaintiffs' Alleged Claims Against Old GM ......................................... 9

RELIEF REQUESTED ..................................................................................................... 12

BASIS FOR RELIEF ....................................................................................................... 12

    A.    The Court Has Broad Authority Under Section 502 To Estimate Claims ........................................................................................................ 12

    B.    Estimation of the Plaintiffs' Claims Will Substantially Expedite the Resolution of this Case ................................................................................. 16

    C.    The Court Should Adopt the Requested Estimation Procedures ................... 17

NOTICE .......................................................................................................................... 18

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*In re A.H. Robins Co., Inc.,*
  88 B.R. 742 (E.D. Va. 1988) ........................................................................................... 13

*In re Adelphia Business Solutions, Inc.,*
  341 B.R. 415 (Bankr. S.D.N.Y. 2003) ................................................................. 13, 14, 15

*In re Baldwin-United Corp.,*
  55 B.R. 885 (Bankr. S.D. Ohio 1985) ............................................................................. 15

*Bittner v. Borne Chem. Co.,*
  691 F.2d 134 (3d Cir. 1982) ........................................................................................... 15

*In re Chateaugay Corp.,*
  10 F.3d 944 (2d Cir. 1993) . Bankruptcy ................................................................. 12, 15

*In re Chemtura Corp.,*
  448 B.R. 635 (Bankr. S.D.N.Y. 2011) ................................................................. 13, 14, 15

*In re Cont'l Airlines, Inc.,*
  981 F.2d 1450 (5th Cir. 1993) ................................................................................. 13, 16

*In re Continental Airlines, Inc.,*
  57 B.R. 842 (Bankr. S.D. Tex. 1985) ....................................................................... 13, 14

*In re Dow Corning Corp.,*
  215 B.R. 346 (Bankr. E.D. Mich. 1997) .......................................................................... 15

*Elliott v. Gen. Motors LLC,*
  829 F.3d 135 (2d Cir. 2016) ......................................................................................... 4, 7

*In re Gen. Motors LLC Ignition Switch Litig.,*
  14-MD-2543 (JMF) (S.D.N.Y. Apr. 3, 2018), ECF No. 5310 .......................................... 16

*In re Motors Liquidation Co.,*
  529 B.R. 510 (Bankr. S.D.N.Y. 2015) ..................................................................... *passim*

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.,*
  507 U.S. 380 (1993) ......................................................................................................... 8

*In re Thomson McKinnon Sec., Inc.,*
  143 B.R. 612 (Bankr. S.D.N.Y. 1992) ............................................................................. 13

**STATUTES, RULES & REGULATIONS**

28 U.S.C. § 157 ..................................................................................................................... 3

28 U.S.C. § 157(b)(2)(B) ....................................................................................................... 3

28 U.S.C. § 157(c)(1) .................................................................................................. 3

28 U.S.C. § 1334 ......................................................................................................... 3

28 U.S.C. § 1408 ......................................................................................................... 3

28 U.S.C. § 1409 ......................................................................................................... 3

11 U.S.C. § 105(a) ............................................................................................. 3, 5, 18

11 U.S.C. § 502 ......................................................................................................... 12

11 U.S.C. § 502(c) ................................................................... 1, 3, 5, 12, *passim*

11 U.S.C. § 502(h) ...................................................................................................... 5

92125462.10

By and through its undersigned counsel, the GUC Trust Administrator[1] of the Motors

Liquidation Company GUC Trust (the "GUC Trust"), as established under the Debtors' Second

Amended Joint Chapter 11 Plan dated as of March 18, 2011 [ECF No. 9836] (as confirmed,

the "Plan") of the above-captioned post-effective date debtors (the "Debtors"), respectfully

submits this *Motion to Estimate Vehicle Recall Economic Loss and Personal Injury Claims for*

*Allowance Purposes and to Establish a Schedule for the Claims Estimation Proceeding* (the

"Estimation Motion").  In support of the Estimation Motion, the GUC Trust Administrator

respectfully represents as follows:

## **RELIEF REQUESTED**

1.     By this Estimation Motion, the GUC Trust asks this Court to estimate the

aggregate value of Claims asserted by personal injury and economic loss plaintiffs based on

ignition switch, power steering and airbag defects affecting millions of cars initially sold by

the Debtors.

2.     Bankruptcy Code Section 502(c) vests this Court with broad discretion to

estimate contingent or unliquidated claims "where the fixing or liquidation of [the claims], as

the case may be, would unduly delay the administration of the case."  11 U.S.C. § 502(c)(1).

As detailed in the GUC Trust's motion for approval of the Settlement between Plaintiffs and

the GUC Trust (the "Settlement Motion"), since the 2014 Recalls were issued, the Court and

the parties have been mired in litigation to determine the rights and merits of a multitude of

claims asserted by Plaintiffs—the underlying facts of which were revealed years after the Bar

Date.  Liquidation of the Claims on an individual basis would require years of litigation, would

---

[1]     Capitalized terms not defined in the Preliminary Statement shall have the meaning ascribed to them the Settlement Agreement, the Plan or the GUC Trust Agreement, as applicable. Any description herein of the terms of the Settlement Agreement, the Plan or the GUC Trust Agreement is qualified in its entirety by the terms of the Settlement Agreement, the Plan or the GUC Trust Agreement, as applicable.

deplete the remaining assets of the Estate, and substantially delay any potential final distribution of the Estate's assets to creditors.

3.     Estimation is also appropriate in this matter based on the express terms of the AMSPA negotiated by the Debtors and New GM at the outset of the bankruptcy.  In Section 3.2(c) of the AMSPA, New GM specifically agreed to a purchase price adjustment whereby the GUC Trust would be empowered to seek the estimation of allowed general unsecured claims against the Estate and, if those claims exceeded certain pre-set thresholds, New GM would contribute Adjustment Shares into the GUC Trust for distribution to creditors.  This purchase price adjustment ensured that, if the universe of general unsecured claims against the Estate exceeded the amounts estimated by the parties at the time the bankruptcy was filed, there was a mechanism by which New GM would contribute additional value to the estate in the form of a purchase price adjustment.  That is exactly the situation faced by the parties today. When New GM first announced the ignition switch recalls in 2014, millions of new prospective claimants appeared in this bankruptcy, dramatically altering the landscape faced by the Court, the GUC Trust, and its beneficiaries.  Estimation pursuant to Section 502(c) will allow the Court to determine on an expedited basis whether New GM should be required to contribute Adjustment Shares, thereby expediting the resolution of this case.

4.     For the reasons set forth below and in the Settlement Motion, the estimation proceedings requested by this Estimation Motion will promote the fair and equitable resolution of millions of claims against the Estate.  Accordingly, the Court should grant the Motion.

92125462.10

## JURISDICTION

5.      With respect to the claims of Ignition Switch Plaintiffs[2] and certain Non-Ignition Switch Plaintiffs,[3] the Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this Estimation Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Estimation of their claims is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

6.      With respect to claims of Pre-Closing Accident Plaintiffs,[4] estimation will be governed by 28 U.S.C. § 157(c)(1).

7.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory predicates for the relief sought in this Estimation Motion are sections 105(a) and 502(c) of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

### A.      Old GM's Bankruptcy and the Creation of the GUC Trust

9.      On June 1, 2009, General Motors Corporation ("Old GM") and certain of its affiliates (collectively, the "Debtors") filed for chapter 11 bankruptcy protection in this Court and entered into an agreement (the "Sale Agreement") to sell substantially all of its assets to NGMCO, Inc. ("New GM") in exchange for, *inter alia*, New GM common stock and warrants. See In re Motors Liquidation Co., 529 B.R. 510, 535 (Bankr. S.D.N.Y. 2015).

---

[2]     The term "Ignition Switch Plaintiffs" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, prior to July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047 the "Ignition Switch Defect").

[3]     The term "Non-Ignition Switch Plaintiffs" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, prior to July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118 and 14V-153.

[4]     The term "Pre-Closing Accident Plaintiffs" shall mean those plaintiffs asserting personal injury or wrongful death claims or persons who suffered a personal injury or wrongful death that occurred prior to the Closing Date involving an Old GM vehicle that was later subject to the Recalls.  The Pre-Closing Accident Plaintiffs are comprised of a subset asserting claims or who suffered an injury or death involving an Old GM vehicle with an Ignition Switch Defect (the "Ignition Switch Pre-Closing Accident Plaintiffs"), and a subset asserting claims or who suffered an injury or death involving vehicles with other defects (the "Non-Ignition Switch Pre-Closing Accident Plaintiffs").  Collectively, the Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Pre-Closing Accident Plaintiffs are the "Plaintiffs."

10.     The Sale Agreement was amended on July 5, 2009 to, *inter alia*, add a feature requiring New GM to provide additional New GM common stock in the event that the amount of allowed general unsecured claims against the Old GM estate exceeds a threshold amount (the "Purchase Price Adjustment").  See AMSPA § 3.2(c).[5]  Specifically, the Purchase Price Adjustment provides that if the Bankruptcy Court issues an order finding that the estimated aggregate allowed general unsecured claims against the Old GM estate exceeds $35 billion, then within five business days thereof New GM will issue Adjustment Shares to the GUC Trust. See id.  If such order estimates the aggregate allowed general unsecured claims at or in excess of $42 billion, New GM must issue 30 million Adjustment Shares, the maximum amount of Adjustment Shares that may be required under the AMSPA.  See id.

11.     On July 5, 2009, the Sale was approved by the Bankruptcy Court.  See Elliott v. Gen. Motors LLC, 829 F.3d 135, 146-47 (2d Cir. 2016).

12.     In September 2009, the Court established November 30, 2009 (the "Bar Date") as the deadline for filing proofs of claim against Old GM.  See id. at 535.

13.     On March 29, 2011, the Court entered an order confirming the Plan, which, among other things, authorized the creation of the GUC Trust pursuant to the terms set forth in the GUC Trust Agreement.  See id. at 536.

14.     Pursuant to the Plan, the GUC Trust Agreement, and a side letter by and between the GUC Trust, the Debtors, New GM, and FTI Consulting (as trust monitor of the GUC Trust) dated September 23, 2011 (the "Side Letter"), the GUC Trust was granted exclusive authority to object to the allowance of general unsecured claims, seek estimation of the amount of allowed general unsecured claims, and seek Adjustment Shares from New GM.  See Plan §§ 7.1(b), 7.3; GUC Trust Agreement § 5.1.

---

[5]     See *Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser, dated as of June 26, 2009* (the "AMSPA").

15.    In February 2012, the Court entered an order providing that any claims filed after its entry would be deemed disallowed unless, *inter alia*, the claimant obtained leave of the Court or written consent of the GUC Trust.[6]

16.    As of March 31, 2018, the total amount of Allowed General Unsecured Claims against the Debtors' estate was $31,855,431,837.00, approximately $3.14 billion below the threshold for triggering the issuance of Adjustment Shares under the AMSPA.[7]

17.    The only remaining unresolved, contingent liabilities of the GUC Trust are the potential claims arising from the Recalls that are the subject of this Settlement, and a potential, contingent claim arising as a result of the avoidance action litigation, pursuant to Bankruptcy Code § 502(h) (the "Avoidance Action Unsecured Claim").

18.    The GUC Trust Administrator has reserved an amount sufficient to pay any Avoidance Action Unsecured Claim pro rata with allowed General Unsecured Claims.

**B.    The Recalls and Subsequent Proceedings
In the Bankruptcy Court and Second Circuit**

19.    In February and March 2014, over four years after the Bar Date, New GM publicly disclosed the existence of the Ignition Switch Defect and issued a recall, NHTSA Recall Number 14V-047, impacting approximately 2.1 million vehicles.    New GM subsequently issued four additional recalls—in June, July and September of 2014—concerning defective ignition switches affecting approximately 10 million additional vehicles, NHTSA Recall Numbers 14V-355, 14V-394, 14V-400 and 14V-540.

20.    New GM issued numerous additional recalls for safety defects throughout 2014. These included a recall issued in March pertaining to approximately 1.2 million vehicles with

---

[6]    See *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims*, dated February 8, 2012 [ECF No. 11394] (the "Late Filed Claims Order").

[7]    See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(c) Report and Budget Variance Report as of March 31, 2018*, dated April 30, 2018 [ECF No. 14290].

92125462.10

defective side airbags, NHTSA Recall Number 14V-118, and another recall issued in March

pertaining to over 1.3 million vehicles with defective power steering, NHTSA Recall Number

14V-153.

21.      After the issuance of the recalls described above (collectively, the "Recalls"),

owners and lessees of Old GM and New GM vehicles subject to the Recalls filed lawsuits

against New GM, which New GM sought to enjoin by filing motions to enforce the Sale Order

in the Bankruptcy Court.[8]  To resolve these motions, the Bankruptcy Court first identified four

threshold issues (the "2014 Threshold Issues") to be determined.[9]  These issues included

whether any of the claims in these actions were claims against Old GM and, if so, whether such

claims should "nevertheless be disallowed/dismissed on grounds of equitable mootness . . . ."

Id.

22.      In its April 2015 Decision on the 2014 Threshold Issues, the Bankruptcy Court

held that the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs

were known creditors who did not receive constitutionally adequate notice of the Sale or Bar

Date.

23.      The Bankruptcy Court further held that while "late claims filed by the Plaintiffs

might still be allowed, assets transferred to the GUC Trust under the Plan could not now be

tapped to pay them" under the doctrine of equitable mootness.  In re Motors Liquidation Co.,

---

[8]      See Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, dated Apr. 21, 2014 [ECF No. 12620] (the "Ignition Switch Plaintiffs Motion to Enforce"); Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits, dated Aug. 1, 2014 [ECF No. 12807] (the "Ignition Switch Pre-Closing Accident Plaintiffs Motion to Enforce"), Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions), dated Aug. 1, 2014 [ECF No. 12808] (the "Non-Ignition Switch Plaintiffs Motion to Enforce").

[9]      See Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14-01929, dated July 11, 2014 [ECF No. 12770].

529 B.R. at 529; see also June 2015 Judgment ¶ 6.  On direct appeal, the Second Circuit vacated this equitable mootness ruling as an advisory opinion.  See Elliott, 829 F.3d at 168-69.

24.    The Non-Ignition Switch Plaintiffs Motion to Enforce, which only covered economic loss plaintiffs, was deferred pending resolution of the Ignition Switch Plaintiffs Motion to Enforce and the Ignition Switch Pre-Closing Accident Plaintiffs Motion to Enforce (which was limited to accidents involving vehicles with the Ignition Switch Defect).  See In re Motors Liquidation Co., 529 B.R. at 523.  It has not yet been determined whether any Non-Ignition Switch Plaintiffs or Pre-Closing Accident Plaintiffs other than Ignition Switch Pre-Closing Accident Plaintiffs have suffered a due process violation in connection with the Sale Order or Bar Date Order.

## C.    Developments in the Bankruptcy Court Following the Second Circuit Opinion

25.    On remand from the Second Circuit's opinion vacating the equitable mootness ruling, the Bankruptcy Court issued an order identifying initial issues to be addressed (the "2016 Threshold Issues").  Among these issues was whether Ignition Switch Pre-Closing Accident Plaintiffs, the Ignition Switch Plaintiffs and/or Non-Ignition Switch Plaintiffs (defined in the order to include plaintiffs asserting both economic loss and personal injury or wrongful death claims) satisfy the requirements for authorization to file late proof(s) of claim against the GUC Trust and/or are such claims equitably moot (the "Late Proof of Claim Issue").[10]

26.    The procedures in the Order to Show Cause for resolution of the Late Proof of Claim Issue permitted Pre-Closing Accident Plaintiffs, Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs to file motions seeking authority to file late claims ("Late Claims Motions").  See Order to Show Cause at 5 ¶ 1.  Specifically, no additional issues (such as class

---

[10]    *Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against General Motors LLC ("New GM") that Involve Vehicles Manufactured by General Motors Corporation ("Old GM"),* dated Dec. 13, 2016 [ECF No. 13802], at 2-3 (emphasis added).

certification, discovery, or the merits of a late proof of claim) would be addressed in these

motions. See id. In addition, the procedures provided that briefing and adjudication of any

Late Claims Motions filed by Non-Ignition Switch Plaintiffs would be stayed pending

resolution of the other 2016 Threshold Issues. See id. at 5 ¶ 2.

27.    In accordance with the Order to Show Cause, on December 22, 2016, the

Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, and certain Ignition Switch

Pre-Closing Accident Plaintiffs filed Late Claims Motions.[11]  The motions attached proposed

class proofs of claim asserted on behalf of purported class representatives for Ignition Switch

Plaintiffs and Non-Ignition Switch Plaintiffs, and 175 individual proofs of claim on behalf of

certain Ignition Switch Pre-Closing Accident Plaintiffs. See id.[12]  Certain other Plaintiffs

subsequently filed joinders to the Late Claims Motions pursuant to the terms of the Order to

Show Cause.

28.    Thereafter, in connection with the Ignition Switch Plaintiffs' and Ignition

Switch Pre-Closing Accident Plaintiffs' Late Claims Motions, the Parties participated in two

status conferences before the Bankruptcy Court, engaged in preliminary rounds of discovery,

and filed briefs addressing two preliminary issues raised in the Late Claims Motions: (i)

whether relief can be granted absent a showing of excusable neglect under the factors

articulated in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394-95 (1993);

and (ii) the applicability of any purported agreements with the GUC Trust or other tolling

arrangements to toll timeliness objections (the "Initial Late Claims Motions Issues").[13]

---

[11]    See *Motion for an Order Granting Authority to File Late Class Proofs of Claim*, dated Dec. 22, 2016 [ECF No. 13806] (the "Economic Loss Late Claim Motion"); *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Dec. 22, 2016 [ECF No. 13807].

[12]    On April 24, 2018, the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs filed amended proposed class proofs of claim.  See *Notice of Filing of Amended Exhibits to Motion for an Order Granting Authority to File Late Class Proofs of Claim*, dated Apr. 25, 2018 [ECF No. 14280].

[13]    See *Order Establishing, Inter Alia, Briefing Schedule for Certain issues Arising from Late Claim Motions Filed by Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Certain Ignition Switch Pre-Closing Accident Plaintiffs*, dated Mar. 2, 2017 [ECF No. 13869]; *Opening Brief by General Motors LLC with Respect*

Subsequent to such briefing, certain Plaintiffs who had not previously appeared before the Bankruptcy Court because of the lack of notice filed motions seeking authority to file late proofs of claim.

29.     Further, certain Pre-Closing Accident Plaintiffs injured or killed in crashes that occurred before July 10, 2009, involving vehicles subject to Recall Nos. 14V-355, 14V-394, 14V-400, or  14V-540 (and who are identified by name and Recall Number in Schedule 1 to the Settlement Agreement as among the Signatory Plaintiffs) have informed the GUC Trust that they intend to file a Supplemental Late Claims Motion on or before May 31, 2018, seeking allowance of their late claims based on due process violations relating to the foregoing Recalls.

**D.    Plaintiffs' Alleged Claims Against Old GM**

30.     The proposed class claims addressed in the Ignition Switch Plaintiffs' and certain Non-Ignition Switch Plaintiffs' Late Claims Motions (the "Proposed Class Claims") allege that Old GM knew about the Ignition Switch Defect, other defects in ignition switches, defects in side airbags, and defects in power steering for years prior to the Bar Date.[14]  The Proposed Class Claims further allege that Old GM concealed the existence of these defects, causing Plaintiffs to overpay for defective vehicles and bear the costs of repairs while Old GM reaped the benefit of selling or leasing defective vehicles at inflated prices and avoiding the costs of a recall.[15]

---

*to Initial Late Claim Motions Issues*, dated Mar. 6, 2017 [ECF No. 13871]; *The Ignition Switch Plaintiffs' Brief on the Initial Late Claim Motions Issues*, dated Mar. 6, 2017 [ECF No. 13872]; *Opening Brief of GUC Trust Administrator and Participating Unitholders on the Applicability of Pioneer and Tolling to Plaintiffs' Motions to File Late Claims*, dated Mar. 6, 2017 [ECF No. 13873]; *Brief on Applicability of Pioneer and Tolling Issues in Connection with Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Mar. 6, 2017 [ECF No. 13874].

[14]    See Amended Exhibit A to the Economic Loss Late Claim Motion (the "Proposed Ignition Switch Class Claim"), ¶¶ 57-285; Amended Exhibit B to the Economic Loss Late Claim Motion (the "Proposed Non-Ignition Switch Class Claim") ¶¶ 38-175.

[15]    See, e.g., Proposed Ignition Switch Class Claim ¶ 374; Proposed Non-Ignition Switch Class Claim ¶ 278.

31.    Based on these allegations, the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs assert claims against the GUC Trust/Old GM estate under the laws of each of the 50 states and the District of Columbia for: (i) fraudulent concealment; (ii) unjust enrichment; (iii) consumer protection claims; (iv) breach of the implied warranty of merchantability; and (v) negligence.[16]

32.    The Ignition Switch Pre-Closing Accident Plaintiffs assert personal injury and wrongful death claims arising from accidents they assert were caused by the Ignition Switch Defect (the "Personal Injury Claims," and together with the Proposed Class Claims, the "Claims").[17]

33.    New GM has consistently taken the position that any such claims are properly asserted against the GUC Trust and not against New GM.[18]

34.    Subsequent to filing the Late Claims Motions, counsel for the proposed class representatives for the Ignition Switch Plaintiffs, the proposed class representatives for certain Non-Ignition Switch Plaintiffs and certain Pre-Closing Accident Plaintiffs provided the GUC Trust with materials and expert reports describing in detail the factual and legal background for the claims, alleged viability of the asserted claims and the alleged amount of damages (the "Proffered Evidence").[19]

---

[16]    See Proposed Ignition Switch Class Claim ¶¶ 358-1697; Proposed Non-Ignition Switch Class Claim ¶¶ 262-1744.

[17]    See, e.g., *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Dec. 22, 2016 [ECF No. 13807].

[18]    The record is replete with attempts by New GM to saddle the Old GM estate with these potentially massive claims. "To the extent Plaintiffs can prove that they are entitled to any relief, the appropriate remedy is to permit them to seek allowance of an unsecured claim against the Old GM bankruptcy estate." Dkt. No. 12981 (New GM's 2014 Threshold Issues Br.) at 53; "To the extent they had any claim, it was against Old GM and they retained that claim after the 363 Sale." Id. at 36; "Every one of their claims, the economic loss plaintiffs' claims, is a claim that's assertable against Old GM as it relates to an Old GM vehicle." Hr'g Tr. Feb. 17, 2015 at 59:17-19 (New GM counsel Arthur Steinberg).

35.     In addition, they provided a report by Stefan Boedeker, an expert on surveys and statistical sampling, analyzing the amount of alleged damages for the Ignition Switch Plaintiffs' and certain Non-Ignition Switch Plaintiffs' claims based on a conjoint analysis conducted by Mr. Boedeker and Berkeley Research Group.

36.     Conjoint analysis is a set of econometric and statistical techniques developed to study consumer preferences and is widely used as a market research tool.  In a conjoint analysis, study participants review a set of products with different attributes (such as a vehicle shown in different colors) and choose which product they would prefer to purchase.  The collected data can be used to determine market preferences and the value consumers place on particular attributes of a product.  Here, the alleged amount of damages for economic loss claims was determined by using a conjoint analysis to evaluate the difference in value that consumers placed on an Old GM vehicle without a defect as compared to an identical vehicle with a defect.

37.     Certain Pre-Closing Accident Plaintiffs provided materials describing the personal injury and wrongful death claims of certain plaintiffs and demonstrating the alleged value of these claims based on exemplar verdict amounts.  The valuation of damages was assessed and approved by W. Mark Lanier, an experienced trial attorney recognized as a leader in the field.

38.     The combined total of Plaintiffs' asserted damages in the Proffered Evidence is well in excess of the amount necessary to trigger New GM's obligation to issue the Adjustment Shares under the AMSPA.

39.     Likewise, New GM has presented the GUC Trust Administrator with expert reports and other evidence attempting to discredit the Proffered Evidence and also support its position in these bankruptcy cases and other related litigation ("New GM Evidence").  New GM does not challenge the damage valuation method, rather New GM alleges that there is simply no basis for economic loss or personal injury damages.

11

40.     After consideration of the Proffered Evidence and the New GM Evidence, the GUC Trust has determined that the Settlement is in the best interest of, among others, its beneficiaries.

41.     While the GUC Trust believes there are legal and factual arguments that refute the damages asserted in the Proffered Evidence, it recognizes that there is no guarantee that it would be able to defeat or reduce such damages claims if the issues were litigated.  Thus, after reviewing the Proffered Evidence, the New GM Evidence, and in consultation with the GUC Trust Monitor, and considering the benefits of the Settlement as a whole to the Unitholders to whom it owes its fiduciary duty, the GUC Trust has concluded that the Settlement falls well within the range of reasonableness, and has agreed, as part of the Settlement, to file this Estimation Motion.

**RELIEF REQUESTED**

42.     By this Estimation Motion, the GUC Trust respectfully request that this Court enter the Claims Estimate Order substantially in the form attached to this Estimation Motion as **Exhibit A**.

**BASIS FOR RELIEF**

A.     **The Court Has Broad Authority Under Section 502 To Estimate Claims**

43.     Under section 502 of the Bankruptcy Code, this Court is required to estimate contingent or unliquidated claims "where the fixing or liquidation of [the claims], as the case may be, would unduly delay the administration of the case."  11 U.S.C. § 502(c)(1); *see also In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir. 1993) (bankruptcy courts may estimate claims in order "to avoid undue delay in the administration of bankruptcy proceedings").  Bankruptcy courts shall estimate claims under section 502(c)(1) in order to: (i) "avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions;" and (ii) "promote a

92125462.10

fair distribution to creditors through a realistic assessment of uncertain claims." *In re Adelphia Business Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (citing *In re Cont'l Airlines, Inc.*, 981 F.2d 1450, 1461 (5th Cir. 1993)). Thus, claims arising out of pending litigation are among the types of claims that shall be estimated pursuant to section 502(c).

44.     The bankruptcy court may estimate claims for any number of reasons, including to determine the likely aggregate amount of a related series of claims. *See In re Chemtura Corp.*, 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011) (citing *In re Motors Liquidation Company*, Case No. 09-50026, *Debtors' Motion to Estimate Debtors' Aggregate Asbestos Liability and Establish a Schedule for Estimation*, Docket No. 7782 (Bankr. S.D.N.Y. Nov. 15, 2010)); s*ee also*, *generally*, *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555, *Bench Decision Regarding Estimation of RMBS Claims Pursuant to RMBS Settlement Agreement*, Docket No. 57785 ("Bench Decision") (Bankr. S.D.N.Y. Mar. 15, 2018). The principal consideration when estimating the value of a claim is "to promote a fair distribution to creditors through a realistic assessment of uncertain claims." *Cont'l Airlines*, 981 F.2d at 1461; *see also In re Enron Corp.*, Ch. 11 Case No. 01-16034, 2006 WL 544463, at *4 (Bankr. S.D.N.Y. Jan. 17, 2006) ("[T]he estimation of claims promotes the purpose of establishing the amount of claims that are to receive distribution shares") (citing *In re Thomson McKinnon Sec., Inc.*, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992))).

45.     Critical for this case, claims need not be estimated on an individual basis, and the bankruptcy court has broad discretion to estimate groups of claims. *See, e.g.*, *In re Continental Airlines, Inc.*, 57 B.R. 842 (Bankr. S.D. Tex. 1985); *In re A.H. Robins Co., Inc.*, 88 B.R. 742 (E.D. Va. 1988); *Lehman Brothers*, Case No. 08-13555, Bench Decision. For example, in *Continental Airlines*, the bankruptcy court considered whether estimation of over 13,000 individual labor claims should be estimated for plan purposes. The court concluded that estimation was reasonable and the most appropriate, efficient and equitable method of

92125462.10

concluding the chapter 11 proceeding. *See Continental Airlines*, 57 B.R. at 844. The court noted that to liquate the individual claims by litigation "would involve the unnecessary expenditure of enormous amounts of time, effort and money . . . [and] would hamper the estate." *Id.* at 844-45. Whether the claims could or should be estimated was not affected by difficulty of the estimation process itself. The court recognized that "[e]ach claims issue appears to have different legal theories and obviously, different parties, and no fixed rule can be applied at this point on the estimation methodology because of this diversity." *Id.* at 845. Nevertheless, the court determined that estimation of employee claim groups on a group-by-group basis was the methodology best suited to the circumstances. *See id.*

46.    In fact, estimation of asbestos personal injury claims have already been requested and authorized in this case. *See, Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 502(c) Authorizing Estimation of Debtors' Aggregate Liability for Asbestos Personal Injury Claims and Establishing Schedule for Estimation Proceeding* [Dkt. ECF No. 7782]; *Order Pursuant to 11 U.S.C. § 502(c) Authorizing Estimation of Debtors' Aggregate Liability for Asbestos Personal Injury Claims and Establishing Schedule for Estimation Proceeding* [Dkt. ECF No. 8121].

47.    However, neither the Bankruptcy Code nor the Bankruptcy Rules contain procedures or offer guidance on the claims estimation process; instead, bankruptcy courts have "wide discretion in accomplishing it." *Chemtura*, 448 B.R. at 648. Thus, when estimating claims, bankruptcy courts may use whatever method is best suited to the contingencies of the case, so long as the procedure is consistent with the fundamental policy of chapter 11 that a reorganization "must be accomplished quickly and efficiently." *Adelphia*, 341 B.R. at 422; *see also Chemtura*, 448 B.R. at 649-50 (noting that a court's authority to estimate claims and fashion appropriate relief is only limited by "the legal rules that may govern the ultimate value

14

of the claim" and "those general principles which should inform all decisions made pursuant to the [Bankruptcy] Code").

48.    Many courts have adopted a procedure akin to a summary trial, with a one witness per party rule, shortened discovery, and a hearing lasting 1-2 days. *See In re Baldwin-United Corp.*, 55 B.R. 885, 911-12 (Bankr. S.D. Ohio 1985).

49.    Consideration of applicable law is relevant, as the bankruptcy court must determine the number and amount of claims that have validity under applicable law. *See, e.g., In re Dow Corning Corp.*, 215 B.R. 346, 354 (Bankr. E.D. Mich. 1997) (noting that estimation "includes the determination of whether the debtor is liable on the claim—that is, whether the claim is valid"); *Lehman Brothers*, Case No. 08-13555, Bench Decision at 36:8-14 (citing *Chemtura*, 488 B.R. at 648-49); 37:3-12; 37:15-17.  Within that framework, the court may "estimate the expected value of [the claims] based on the probability of the success of various potential outcomes if decided on the merits." *Chemtura*, 448 B.R. at 650.  This analysis does not, however, require claim by claim review.  Estimation requires only "sufficient evidence on which to base a *reasonable estimate* of the claim." *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982) (emphasis added).  "The court need not don the garb of the clairvoyant; rather, all that is required is a 'rough estimate.'" *Chemtura*, 448 B.R. at 649 (quoting *Adelphia*, 341 B.R. at 424).

50.    The Second Circuit has opined that courts should make a "speedy and rough estimation of claims for purposes of determining [claimants] voice in the chapter 11 proceedings." *Chateaugay Corp.*, 10 F.3d at 1006.

51.    Here, given the procedural posture of the litigation in the Bankruptcy Court related to the Recalls, along with the history of the MDL proceeding, this Court may estimate damages using the conjoint analysis for economic loss claims as a whole, and also determine the range of personal injury damages.

15

**B.      Estimation of the Plaintiffs' Claims
Will Substantially Expedite the Resolution of this Case**

52.      The facts and circumstances of this case strongly support estimation of the Claims for allowance and distribution purposes.

53.      First, estimation will substantially shorten the life of this bankruptcy. Liquidation of each individual claim would require years of litigation and would consume enormous resources, from both the Court and the parties.  A review of the docket in the MDL proceeding underscores this fact.  Although the MDL litigation has now been ongoing for four years, the parties are still engaged in both fact and expert discovery, and there is no prospect of any near term disposition of either the personal injury or the economic loss litigations. Notably, Judge Furman denied without prejudice New GM's recent motion for summary judgment on the "benefit of the bargain" theory underlying the economic loss claims, instead requiring the parties to complete class wide discovery.[20]

54.      Based on the MDL proceedings, it is highly likely that litigating the Claims in this case would delay closure of this case well past 2020.  In contrast, estimation will permit the Court to immediately assess the likely value of the Claims on a class wide basis, dramatically reducing the amount of work required from the Court and the parties and substantially shortening the life of the case.

55.      Second, estimation is entirely consistent both with the policy objectives underlying the Bankruptcy Code and the mechanisms expressly built into the Plan and AMSPA.  Estimation promotes the fair distribution to creditors contemplated by section 502(c) of the Bankruptcy Code.  *See Cont'l Airlines*, 981 F.2d at 1461.  And, critical for this Estimation Motion, estimation of Claims was specifically built into the Plan and AMSPA where necessary to determine whether New GM should contribute additional value into the estate.

---

[20]      *See* Memorandum Opinion and Order Regarding New GM's Motion for Summary Judgment with Respect to Plaintiffs' Claims for Benefit-of-the-Bargain Damages, *In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF) (S.D.N.Y. Apr. 3, 2018), ECF No. 5310.

92125462.10

56.    For the reasons set forth herein, estimation will provide significant benefits to the GUC Trust and all its current beneficiaries, Plaintiffs, and this Court.

**C.    The Court Should Adopt the Requested Estimation Procedures**

57.    In order to streamline the process in a manner that will not prejudice any party in interest, the GUC Trust proposes the following procedures and schedule for the Recall Plaintiffs estimation proceeding:

(a)    The economic loss and personal injury plaintiffs shall each be permitted no more than three (3) damages experts.  The same limitations will apply to New GM should the Court determine that New GM is entitled to participate in the proceedings related to this Estimation Motion.

(b)    All fact discovery demands, if permitted by the Court, shall be served no later than thirty (30) days after entry of the Settlement Order, all responses in connection with any such fact discovery demands shall be filed no later than 30 days thereafter, and all fact depositions shall be completed within ninety (90) days after entry of the Settlement Order.

(c)    Those parties permitted to participate shall file and serve opening expert reports regarding the estimated amount of Old GM liability resulting from the Recalls no later than thirty (30) days after entry of the Settlement Order.

(d)    Those parties permitted to participate shall file and serve rebuttal reports regarding the estimated amount of Old GM's liability resulting from the Recalls by sixty (60) days after entry of the Settlement Order.

(e)    Each party permitted to participate shall make its expert available to be deposed, with any such depositions to be completed within ten (10) days following the deadline to file rebuttal reports.

(f)    Any pre-trial briefs shall be filed no later than eight (8) days following the deadline to complete depositions of the parties' respective experts.

92125462.10

(g)    The parties permitted to participate shall exchange copies of all exhibits offered at the hearing on the estimation of Old GM's aggregate liability resulting from Recalls and provide copies of any such exhibits to the Court by 4:00 p.m. (Eastern Time) five business days prior to the commencement of the estimation hearing.

(h)    The GUC Trust will schedule a hearing to estimate Old GM's aggregate liability resulting from the Recalls for purposes of allowance and determination of whether Section 3.2(c) of the AMSPA is triggered, which the GUC Trust proposes be a date in September 2018.

### NOTICE

58.    The GUC Trust Administrator has served notice of this Estimation Motion on (a) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014, (b) the parties in interest in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May 5, 2011 [ECF No. 10183], and (c) any other required notice parties under Section 6.1(b)(iv) of the GUC Trust Agreement.  The GUC Trust Administrator respectfully submits that no other or further notice need be provided.

[*Remainder of the page intentionally left blank*]

92125462.10

## CONCLUSION

WHEREFORE, the GUC Trust Administrator respectfully requests that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u>, estimating the Claims for allowance and distribution purposes, and (ii) granting such other and further relief as may be deemed just and proper.

Dated:  New York, New York
       May 3, 2018

DRINKER BIDDLE & REATH LLP
By:     /s/   *Kristin K. Going*
      Kristin K. Going
      Clay J. Pierce
      Marita S. Erbeck
      1177 Avenue of the Americas
      41st Floor
      New York, NY 10036-2714
      Tel: (212) 248-3140
      E-mail: kristin.going@dbr.com
           clay.pierce@dbr.com
             marita.erbeck@dbr.com

*Attorneys for the Motors Liquidation*
*Company GUC Trust Administrator*

92125462.10