```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK


                                     .   Case No. 09-50026-mg
IN RE:                               .   Chapter 11
                                     .
MOTORS LIQUIDATION COMPANY,          .   (Jointly administered)
et al., f/k/a GENERAL                .
MOTORS CORP., et al,                 .   One Bowling Green
                                     .   New York, NY 10004
             Debtors.                .
                                     .   Thursday, April 12, 2018
. . . . . . . . . . . . . . .        .   3:05 p.m.


    TRANSCRIPT OF MOTION TO AUTHORIZE BY GENERAL MOTORS LLC
         TO ENFORCE THE BANKRUPTCY COURT'S SALE ORDER AND
         COURT-APPROVED DEFERRED TERMINATION (WIND-DOWN)
              AGREEMENT WITH RESPECT TO PAT BOMBARD
                  BEFORE THE HONORABLE MARTIN GLENN
                UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For General Motors LLC:   King & Spalding, LLP
                          By:   ARTHUR J. STEINBERG, ESQ.
                                SCOTT DAVIDSON, ESQ.
                          1185 Avenue of the Americas
                          New York, NY 10036
                          (212) 556-2158

TELEPHONIC APPEARANCES:

For Pat Bombard:          PAT BOMBARD (Pro Se)
                          5 Wheeler Avenue
                          Fayetteville, New York 13066
                          (315) 382-9464



Audio Operator:           Jonathan, ECRO


Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

```
 1         (Proceedings commenced at 3:05 p.m.)
 2              THE COURT:  All right, please be seated.  We're here
 3   in Motors Liquidation Company, 09-50026.  This is the motion --
 4   new GM, General Motors, LLC motion to enforce the sale motion
 5   with respect to Pat Bombard.  May I have the appearances,
 6   please, first in the courtroom.
 7              MR. STEINBERG:  Good afternoon, Your Honor.  Arthur
 8   Steinberg and Scott Davidson from King & Spalding on behalf of
 9   New General Motors.
10              THE COURT:  Thank you.
11              On telephone, Mr. Bombard?  Mr. Bombard, are you on
12   the phone?
13              MR. BOMBARD:  (Telephonically)  Yes, I am, Your
14   Honor.
15              THE COURT:  All right.  Thank you very much.
16              MR. BOMBARD:  Thank you.
17              THE COURT:  All right.  This is the date and time set
18   for the resumption of the hearing on New GM's motion to enforce
19   the sale order.  We had prior hearing on March 29th, 2018.  At
20   that time, based on statements by Mr. Bombard at the hearing,
21   the Court directed that additional papers be filed by both
22   Mr. Bombard and by New GM, and those papers were filed.  So the
23   Court has reviewed both the supplemental papers filed by
24   Mr. Bombard and also the supplemental papers filed by New GM.
25              Mr. Steinberg, why don't you start.
```

1          MR. STEINBERG:  Thank you, Your Honor.  Your Honor,
2   the two questions that you asked to address in the supplemental
3   papers to complete the record were what were the payments made
4   by New GM pursuant to the wind-down agreement, and the second
5   was whether the Bombard Car companies timely performed the
6   Bombard letter of intent.  And we submitted the declaration of
7   Marlin Gilliam from General Motors to address specifically both
8   of those questions.  And with regard to the wind-down
9   agreement, Mr. Gilliam declared that New GM had paid 25 percent
10  of the wind-down amount, which was --
11         THE COURT:  That's the 32,000, uh-huh.
12         MR. STEINBERG:  -- $32,040.75, and not paid the
13  balance of it and had not gotten, according to its record, the
14  $32,040.75 returned to it.  The balance of $96,122.25 has not
15  been paid to Mr. Bombard for the reasons explained in the March
16  5 and 7, 2016 emails, which were attached to our papers, which
17  there were two additional documents under the wind-down
18  agreement that Mr. Bombard had to sign.  One was the
19  post-termination notification, which dealt with -- was needed
20  for tax plans.  And the second was the supplemental wind-down
21  agreement, and neither had been signed.  And Mr. Bombard was
22  told that once those documents were submitted, he would get the
23  balance.  Instead, we got sued.
24         The second question about the performance under the
25  Bombard letter of intent was they had 60 days to do certain

1  things.  The two things that he did not do was to return the
2  money and to provide evidence of financing.  And the Gilliam
3  declaration provided the snapshots from GM's books and records,
4  which show that according to its records, after the termination
5  of the letter of intent, after the October 31, 2010 termination
6  of the wind-down agreement, those two things were still
7  outstanding.  And we submitted the letters that we had sent to
8  Mr. Bombard in November of 2010, after the dealer agreement had
9  terminated, saying that the letter of intent doesn't expire and
10 you hadn't performed and specifically said what hadn't been
11 performed.  And none of Mr. Bombard's declaration addressed the
12 infirmities of the performance of the LOI or frankly addressed
13 and evidenced any payment to GM of the $32,040.75.
14         Your Honor gave us a lot of time at the prior
15 hearing, so I'm prepared to rest on our papers with regard to
16 why we believe the unsigned participation agreement is not
17 effective and the operative agreement is the wind-down
18 agreement.  We referenced the expired business certificate as
19 of April 30, 2010, the statements Mr. Bombard made in his
20 bankruptcy proceeding that he filed in 2013 that said that the
21 Bombard Company was an inactive franchise, closed, no longer
22 operating and dormant.  Your Honor was made aware at the last
23 hearing that there was an April 23 DMV hearing on this, and
24 Your Honor had indicated that he would rule before that period
25 of time.

1           THE COURT:  Thank you very much, Mr. Steinberg.
2           Mr. Bombard, go ahead.  It's your turn.
3           MR. BOMBARD:  Yes, Your Honor.  Thank you.  I'd like
4  to, first of all, state that General Motors has raced to the
5  courthouse in order to create more difficulties and delays when
6  they were well aware in October of 2017 of the Department of
7  Motor Vehicle hearing.  At the time, General Motors requested
8  that I perform and present all the documents.  They were
9  presented in a timely fashion, and they met all the
10 requirements.
11          Also, their letter -- and I've never spoken to this
12 Mr. Gilliam, and I've never had the ability to have any
13 conversations with him.  I state that the own testimony of this
14 gentleman states that I am an authorized General Motors dealer,
15 and that is Exhibit Number 17, which is a General Motors
16 Corporation Dealer Sales and Service Agreement, and it's signed
17 by General Motors, and it talks about that I am a dealer.
18          I also want to again let the Court know that I
19 presented to General Motors on October a letter requesting
20 mediation, which they ignored.  We then presented to the New
21 York State Department of Motor Vehicle on December 19th under
22 the Dealer Franchise Act, Article 17A, that we would like to be
23 heard there.  The New York State Department of Motor Vehicles
24 accepted us and clearly prove that we are a dealer and we have
25 rights, and we clearly have, in exhibits, a letter from the

6

1  State of New York dated -- I'm sorry, it doesn't have a date on
2  it, but it says that the Safety Bureau Hearing, the Bureau
3  notice of hearing, Pat J. Bombard, Bombard Company, against
4  General Motors/Chevrolet franchise, April 23rd, 2018 at 9 a.m.,
5  a hearing in Syracuse, New York.
6         The requirements that the Court asked that I provided
7  were more than one thing, and I did provide the Court
8  insurance, licensing.  And at that time, everything was renewed
9  and clearly operating as a GM dealer, as a Chevrolet dealer,
10 more importantly, as an authorized dealer in New York State
11 with the Department of Motor Vehicle.
12         THE COURT:  Mr. Bombard, at the last hearing, you had
13 indicated that you had repaid the $32,000 to New GM.  We had a
14 discussion about it at the last hearing, and I specifically
15 asked if you had any evidence to show that you had repaid that.
16 I went through your papers carefully that you submitted, and I
17 find no reference whatsoever to repaying the $32,000.
18         MR. BOMBARD:  Judge, I -- under Exhibit 8, there is a
19 copy of a check marked "void" and proof of the money that was
20 taken out of my retirement in a bank deposit slip with KeyBank.
21 General Motors, since the day I started in 1992, operates under
22 an open account, where they had the ability to pay me and I had
23 the ability to pay them weekly, monthly, and quarterly for
24 parts, cars, tools, invoices, and at that time, that's how we
25 did business.

|   |   |
|---|---|
| 1 | THE COURT: Mr. Bombard -- |
| 2 | MR. BOMBARD: There's never been a check -- yes? |
| 3 | THE COURT: Mr. Bombard, please tell me -- |
| 4 | MR. BOMBARD: Yes, Your Honor. |
| 5 | THE COURT: -- precisely which exhibit you believe |
| 6 | shows that you repaid the $32,000. I have your papers in front |
| 7 | of me. I want to look specifically at what you're pointing at. |
| 8 | MR. BOMBARD: At Number 8, it has a copy of a blank, |
| 9 | void check, which was how electronically -- |
| 10 | THE COURT: A blank, void -- |
| 11 | MR. BOMBARD: -- transferred money -- |
| 12 | THE COURT: Mr. Bombard, a blank, void check -- |
| 13 | MR. BOMBARD: Yes. |
| 14 | THE COURT: -- undated is not evidence of anything. |
| 15 | Do you have any evidence of a check or wire transfer or any |
| 16 | form of payment that you made to New GM of the $32,000? Giving |
| 17 | me an entirely blank, void -- an entirely blank check, number |
| 18 | 22531, undated, no amount, no payee, handwritten across it is |
| 19 | the word "void" is not evidence of a payment to New GM. So |
| 20 | where -- do you have -- I looked through your exhibits, and I |
| 21 | find nothing in the exhibits. Because this was something when |
| 22 | we specifically discussed at the last hearing, you told me that |
| 23 | you were able to provide evidence that you had made the |
| 24 | payment. New GM has put in evidence that they never received |
| 25 | any payment, and you haven't provided any evidence that you did |

1  make the payment.  Is there an exhibit among what you provided
2  that you believe shows that you made -- that you repaid the
3  $32,000 and when you did it?
4           MR. BOMBARD:  Your Honor, I believe that the copy of
5  the 2010 $38,866.30 and the deposit slip to KeyBank, which is
6  electronically transferred to GM --
7           THE COURT:  Which exhibit --
8           MR. BOMBARD:  -- with other money that was in my open
9  account.
10          THE COURT:  Which --
11          MR. BOMBARD:  And that's all I have at the present,
12 Your Honor.
13          THE COURT:  Which exhibit?
14          MR. BOMBARD:  I requested -- Number 8.
15          THE COURT:  Hold on, let me look again.  What I have
16 as your Exhibit 8 does not include any documents from KeyBank
17 whatsoever.
18          Mr. Steinberg, do you have it?  Why don't you bring
19 it up, show me.  It's not included in the papers that I've been
20 provided, least I don't think so.  The only thing that I --
21 just a second.  The only thing -- just to make clear, the
22 second page of this exhibit is a Form 1099-R.  Is that what
23 you're going to show me, Mr. Steinberg?
24          MR. STEINBERG:  Yes, and then a deposit slip.
25          THE COURT:  Okay.  All right.  Let me -- I see what

1  you're referring to.  Let me look at that.  Did you ask the
2  bank, Mr. Bombard, for any evidence that they electronically
3  transferred a little money to New GM?
4          MR. BOMBARD:  Your Honor, I did, and I'm still
5  waiting for it to return.  They're in Cleveland, Ohio, and
6  unfortunately, I have not received it back.  But I'd like to
7  say that GM has an open account that has statements that were
8  produced weekly and monthly that they did not provide to the
9  Court.  The one statement saying that they didn't receive it
10 when there was many, many things that had to be taken care of
11 is proof.
12         THE COURT:  All right.  Anything else you want to
13 indicate, Mr. Bombard?
14         MR. BOMBARD:  No, Your Honor, not at this time.
15         THE COURT:  Mr. Steinberg, you want to respond?
16         MR. STEINBERG:  Yes, just very briefly, Your Honor.
17 On that check and that 1099 statement, you'll note that the
18 check has a -- has numbers on the bottom of the void check,
19 which is the Bombard Car Company check.
20         THE COURT:  Yes.
21         MR. STEINBERG:  So it has 149 on one, and if you look
22 at the deposit slip, it's being deposited into a different
23 account, not the Bombard Car Company account, presumably.  It's
24 account numbers ends in 8439.  The other thing is when
25 Mr. Bombard report to -- that he said he -- that we recognize

1  that he was a valid dealer and he referenced Tab 17, Tab 17 is
2  a 2005 agreement with Old GM.
3             THE COURT:  Yes, thank you.
4             All right.  I'm going to take the matter under
5  submission.  I understand the importance of getting this
6  decided quickly, and I expect probably tomorrow, I'll enter a
7  decision.
8             MR. STEINBERG:  Thank you.
9             THE COURT:  Thank you very much.  We're adjourned.
10            MR. BOMBARD:  Thank you, Your Honor.
11       (Proceedings concluded at 3:20 p.m.)
12                          * * * * *

11

## C E R T I F I C A T I O N

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____
ALICIA JARRETT, AAERT NO. 428      DATE:  May 10, 2018
ACCESS TRANSCRIPTS, LLC

