KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036

———

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

May 22, 2018

**VIA E-MAIL
AND ECF FILING**
The Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

    Re: **In re Motors Liquidation Company,** *et al.*
       **Case No. 09-50026 (MG)**

       **Proposed Schedule for Motions filed by the GUC Trust
       With Respect to a Proposed Settlement With Signatory Plaintiffs**

Dear Judge Glenn:

  General Motors LLC ("New GM") writes in regard to the May 8, 2018 *Order Scheduling a Case Management Conference Regarding Proposed Settlement Between the GUC Trust and Signatory Plaintiffs* [ECF No. 14298], wherein, among other things, the Court directed New GM to submit by May 22, 2018 a proposed schedule for the three motions (collectively, the "GUC Trust Motions") filed by the GUC Trust with respect to a proposed settlement ("Proposed Settlement") with the Signatory Plaintiffs.[1]

**A. New GM's Position On The Schedule For The GUC Trust Motions.**

1. While presented as three separate motions, the GUC Trust Motions are interdependent with each other. Infirmities in one motion affect the other two motions. For example, as set forth in New GM's *Objection to the Notice Procedures Motion* (the "Notice Procedures Objection," filed contemporaneously herewith), consideration of the Proposed Notice Procedures raises fundamental issues concerning the Proposed Settlement itself, such as application of Rule 23 of the Federal Rules of Civil Procedure

---

1 Terms used herein and not otherwise defined shall have the meanings ascribed to them in the GUC Trust Motions.

Honorable Martin Glenn
May 22, 2018
Page 2

(as incorporated by Bankruptcy Rule 7023, "Rule 23").[2]

2. The threshold issue underlying the Proposed Settlement—and squarely raised in the Notice Procedures Motion itself—is whether the Proposed Class Claims purportedly resolved by the Proposed Settlement satisfy Rule 23. That is an outcome-determinative and threshold issue that implicates each of the GUC Trust Motions, and should be determined before the Court addresses notice or other issues relating to the Proposed Settlement.

3. In MDL 2543, Judge Furman has already established a discovery and briefing schedule to address certain Rule 23 issues and summary judgment, with that schedule likely culminating in a hearing on the Rule 23 and summary judgment issues in October or November of this year. (*See* MDL No. 2543 [ECF No. 5386].) For the reasons set forth in New GM's *Motion to Stay* (the "Stay Motion," filed contemporaneously herewith), the Court should stay certain proceedings related to the Proposed Settlement until such time as Judge Furman decides these threshold Rule 23 and summary judgment issues.[3]

4. Assuming the Court agrees to stay proceedings until the MDL Court decides certain Rule 23 issues, the Court should hold a status conference within 30 days of the MDL Court's ruling on class certification and summary judgment to assess the parties' positions as to the next steps in this process, including appropriate discovery on any remaining issues.

5. As set forth in New GM's Stay Motion (pp. 8-10), there are other actions that can be completed to foster resolution of the issues raised in the Proposed Settlement while the Court awaits Judge Furman's ruling on class certification and summary judgment.

6. Should the Court deny New GM's Stay Motion, or to the extent the Proposed Settlement remains viable after the MDL Court issues its decision on Rule 23 class certification and summary judgment, then New GM requests discovery concerning the merits of the Proposed Settlement.

   a. New GM would seek discovery regarding, without limitation, the following

---

[2] The Notice Procedures Objection also summarizes other structural flaws with the Proposed Settlement that mandate the Court's denial of the Settlement Motion. (*See* Notice Procedures Objection pp. 35-39.) Those threshold issues should be determined *before* the Notice Procedures are approved by the Court and sent to all Plaintiffs.

[3] Currently in the MDL, there are important economic loss issues being litigated in the next few months that will impact the Proposed Settlement. Similarly, there is an ongoing MDL Court-ordered process involving discovery and motion practice for Pre-Sale Accident cases (many of which are the same late claims filed in this Court). New GM's views with respect to mediation of Pre-Sale personal injury and economic loss claims are set forth in pages 9-10 of New GM's Stay Motion.

Honorable Martin Glenn
May 22, 2018
Page 3

    topics:

        i. From the Signatory Plaintiffs on, among other things, (a) the nature and extent of the claims asserted in the late proofs of claim, (b) their proffered experts, and (c) their authority to enter into settlement negotiations on behalf of "Plaintiffs."

        ii. From the GUC Trust Administrator and the GUC Trust Monitor on, among other things, (a) their investigation into, and evaluation of, the underlying merits of Plaintiffs' claims, (b) the extent to which they independently assessed the merits and admissibility of Signatory Plaintiffs' proffered experts, (c) the consideration, if any, given to prior rulings of the MDL Court on the merits of Plaintiffs' claims, (d) their determination to allow late-filed claims, including additional personal injury claims that are expected to be filed on or before May 31, 2018, (e) whether, and if so on what basis, they have concluded that aggregate allowed general unsecured claims are likely to exceed $35 billion in the aggregate, (f) whether their actions in connection with agreeing to the Proposed Settlement were reasonable or in good faith under the circumstances, and (g) their determination to propose an estimation trial without any fact discovery.

    b. This discovery should take, at a minimum, four months to complete considering, among other things, the number of Signatory Plaintiffs and the numerous issues raised by their claims.

**B.    <u>The Movants' Proposed Schedule For The GUC Trust Motions</u>.**

Movants' May 18th Proposed Schedule is inconsistent with their own motion papers and reflects a transparent effort to further abbreviate an estimation process with as little information concerning Plaintiffs' claims as possible.

1. The GUC Trust Motions provide for the following schedule, assuming the Court enters the orders requested:

    a. New GM would be required to provide customer information within 20 days of entry of the Notice Procedures Order [**June 25, 2018**]. (Proposed Notice Procedures Order p. 2.)

    b. Movants would require 35 days to complete mailing to Plaintiffs **[July 30, 2018]**. (Notice Procedures Motion p. 10.)

    c. A hearing on the Settlement Motion would take place 21 days after Plaintiffs gave notice [**August 20, 2018**]. (*See* F.R.B.P. 2002(a)(3).)

    d. Opening expert reports would be filed 30 days after entry of the Settlement Order [**September 19, 2018**]. (Estimation Motion ¶ 57(c).)

Honorable Martin Glenn
May 22, 2018
Page 4

    e. Rebuttal expert reports would be filed 30 days after the filing of opening expert reports [**October 19, 2018**].  (*Id.* ¶ 57(c).)

    f. Fact depositions to be completed "within ninety (90) days after entry of the Settlement Order" [**November 19, 2018**].  (*Id.* ¶ 57(b).)

    g. Assuming that pre-trial briefing would take place *after* fact discovery was completed, it was clear that an estimation hearing could occur no sooner than **December 2018,** and most likely later.

2. The schedule Movants proposed in the GUC Trust Motions was already one-sided and aggressive.  For example, it contemplated that fact and expert discovery would take place simultaneously (implying that the experts would not have the benefit of the facts) and that briefing would take place prior to the completion of discovery.  (*Id.* ¶ 57.)

3. Movants' May 18th Proposed Schedule is even more abbreviated.  For example:

    a. Rather than provide New GM 20 days to provide requested customer information, Movants unilaterally decide to require New GM to provide such information in 10 days.  As set forth in New GM's Objection to the Notice Procures Motion, it is not reasonable to require New GM, a non-party to the Proposed Settlement, to provide information concerning millions of individuals regarding transactions that in some cases are over 20 years old on such short order.  To the extent the Court is inclined to grant Movants' request, the parties should negotiate in good faith to establish a reasonable and practical timeframe for obtaining, producing, and protecting the requested customer information.

    b. Although "Epiq/Hilsoft estimates that it will take 35 days to complete the mailing of the postcard notice" (Notice Procedures Motion p. 10), and Plaintiffs must have 21 days' notice of the Settlement Hearing—requiring that the Settlement Hearing occur at least 56 days after noticing commences—Movants now say they will commence noticing by July 5th and ask the Court to approve the Proposed Settlement on August 13th (only 39 days after noticing commences).

    c. Remarkably, having previously contemplated that "all fact depositions shall be completed within ninety (90) days after entry of the Settlement Order," (Estimation Motion ¶ 57(b)), Movants now take the opposite position and say that "no fact discovery will take place." (May 18th Proposed Schedule ¶ 9.) Movants provide no explanation for how the Court can estimate, for example, hundreds of personal injury claims or determine whether the GUC Trust's conduct violates the Sale Agreement without the parties having conducted fact discovery.

    d. Whereas they previously contemplated that opening expert reports would be filed 30 days after entry of the Settlement Order and rebuttal reports 30 days

Honorable Martin Glenn
May 22, 2018
Page 5

       thereafter (Estimation Motion ¶ 57), Movants now propose that those deadlines be reduced to 20 days. (May 18th Proposed Schedule ¶¶ 11, 12.)

    e.  Movants continue to suggest that pre-trial briefs be filed eight days following the completion of expert discovery, an unreasonably short period for the parties to prepare briefs regarding the number and amount of purported claims at issue.

4. In short, with no explanation (or acknowledgment), Movants have decided to significantly compress the schedule they proposed only two weeks ago. There is no rationale for Movants' proposed schedule or their proposal to eliminate fact discovery.[4] The perfunctory process now advocated by Movants would deprive New GM of its ability to prove that the GUC Trust's conduct (*i.e.*, its failure to evaluate the value of the late claims or insist upon the filing of lawful claims) and indeed the Proposed Settlement violate the agreement between the GUC Trust and New GM relating to the Adjustment Shares.

5. The Court, however, should only consider or approve procedures for conducting an estimation hearing ***after*** the Court approves the Notice Procedures and the Proposed Settlement. Movants have requested that the Court approve estimation procedures in connection with the Estimation Motion, which will not be considered until after the Settlement Motion. (Estimation Motion ¶ 57.) Among other issues, it is not feasible to propose (or respond to) estimation procedures without knowing whether the Court will be estimating certified class claims (covering millions of individuals) or the individual claims of a few hundred Signatory Plaintiffs. These issues, therefore, are not ripe.

New GM will be prepared to expand on these arguments, and to respond to any further questions the Court may have, including those raised in the May 10, 2018 Order, at the May 25, 2018 status conference.

---

[4] The very cases that Movants cite in their Estimation Motion prove that courts in this district do not apply such summary and underdeveloped procedures when estimating purported multi-billion dollar claims. For example, Movants cite the recent estimation trial in the *Lehman Brothers* case involving multi-billion dollar claims arising from the alleged breach of approximately 72,500 mortgage-related contracts. *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555, *Order Estimating Allowed Claim Pursuant to RMBS Settlement Agreement*, ECF No. 57785 (Bankr. S.D.N.Y. Mar. 15, 2018). That estimation trial, however, took 22 days and followed ***years*** of informal and formal fact and expert discovery. Movants ask this Court to estimate an even larger number of different types of claims while devoting a tiny fraction of the same process or time.

Honorable Martin Glenn
May 22, 2018
Page 6

Respectfully submitted,

*/s/ Paul M. Basta*_____
Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*and*

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Counsel for General Motors LLC*