**Hearing Date: June 4, 2018 at 11:00 A.M. E.T.**

Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Counsel for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br>f/k/a General Motors Corp., *et al.*,<br><br><div align="right">Debtors.</div> | Chapter 11<br><br>Case No. 09-50026 (MG)<br><br>(Jointly Administered) |

**OBJECTION OF GENERAL MOTORS LLC TO THE MOTION FOR ORDER
(1) GRANTING AUTHORITY TO REALLOCATE AND USE DISTRIBUTABLE CASH
FOR NOTICE PROCEDURES; (2) APPROVING NOTICE PROCEDURES WITH
RESPECT TO (A) THE PROPOSED SETTLEMENT PURSUANT TO FEDERAL RULE
OF BANKRUPTCY PROCEDURE 2002(M) AND (B) THE ESTIMATION MOTION;
AND (3) DIRECTING THE PRODUCTION OF INFORMATION HELD BY
GENERAL MOTORS LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 2004 AND BANKRUPTCY CODE SECTION 105(A)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 11

ARGUMENT .......................................................................................................................... 15

I.      Movants Must Comply with Rule 23 ............................................................................. 15

      a.      A Proposed Class Proof of Claim Is *Only* Permitted if the Bankruptcy
Court First Determines That It Complies with Rule 23. ....................................... 15

      b.      The GUC Trust Cannot Avoid Rule 23 Certification By Purportedly
"Settling" the Certification Issue with the Signatory Plaintiffs. ........................... 18

      c.      Neither Co-Lead Counsel Nor this Court Have Authority to Settle or
Release the Claims of 11.4 Million Individuals Who Are Not Represented
by Co-Lead Counsel or Subject to the Jurisdiction of this Court. ........................ 22

      d.      The Notice Procedures Are Intentionally Designed to Avoid Application
of Rule 23 and Do Not Provide Due Process. ...................................................... 27

      e.      New GM Has a Contractual, Direct and Concrete Pecuniary Interest in
Ensuring that Rule 23 Is Correctly Applied. ........................................................ 32

II.     Approving the Notice Procedures Is Futile and Wasteful Because the Proposed
Settlement Cannot Be Approved. ...................................................................................... 35

III.    The GUC Trust Cannot Use Bankruptcy Rule 2004 to Obtain New GM's
Confidential Customer Information. .................................................................................. 38

CONCLUSION ...................................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 20/20 Sport, Inc.*,
200 B.R. 972 (Bankr. S.D.N.Y. 1996) ....................................................................25

*In re Adelphia Commc'ns Corp.*,
307 B.R. 404 (Bankr. S.D.N.Y. 2004) ....................................................................5

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ....................................................................................21

*Amchem Prods., Inc.* v. *Windsor*,
521 U.S. 591 (1997) ......................................................................................8, 19, 20, 22

*In re Anderson*,
357 B.R. 473 (Bankr. W.D. Mich. 2006) ...............................................................26

*In re Arotech Corp. Sec. Litig.*,
2010 WL 2301195 (E.D.N.Y. June 7, 2010) .........................................................24

*In re Bally Total Fitness of Greater N.Y., Inc.*,
402 B.R. 616 (Bankr. S.D.N.Y. 2009) ...................................................................16

*In re BGI, Inc.*,
465 B.R. 365 (Bankr. S.D.N.Y. 2012) ...............................................................5, 20

*Breeden* v. *Kirkpatrick & Lockhart, LLP*,
268 B. R. 704 (S.D.N.Y. 2001) ..............................................................................34

*In re Chassix Holdings, Inc.*,
533 B.R. 64 (Bankr. S.D.N.Y. 2015) .....................................................................30

*Colesberry* v. *Ruiz Food Prods., Inc.*,
2006 WL 1875444 (E.D. Cal. June 30, 2006) .......................................................19

*In re CommonPoint Mortgage Co.*,
283 B.R. 469 (Bankr. W.D. Mich. 2002) ...............................................................16

*In re Craft*,
321 B.R. 189 (Bankr. N.D. Tex. 2002) ..................................................................16

*In re Elec. Books Antitrust Litig.*,
14 F. Supp. 3d 525 (S.D.N.Y. 2014) ......................................................................27

*In re EOS Airlines, Inc.*,
    2008 WL 8820257 (Bankr. S.D.N.Y. Sept. 4, 2008) ............................................................21

*In re Ephedra Prod. Liab. Litig.*,
    231 F.R.D. 167 (S.D.N.Y. 2005) ........................................................................................20

*In re Ephedra Prods. Liability Litig.*,
    329 B.R. 1 (S.D.N.Y. 2005) ................................................................................................16

*In re FIRSTPLUS Fin., Inc.*,
    248 B.R. 60 (Bankr. N.D. Tex. 2000) ................................................................................23

*In re Flores*,
    2013 WL 6186262 (Bankr. C.D. Cal. Nov. 25, 2013) .........................................................26

*Fulco* v. *Continental Cablevision, Inc.*,
    789 F. Supp. 45 (D. Mass. 1992) ........................................................................................23

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. 2017) .................................................................................38

*In re Genco Shipping & Trading Ltd.*,
    513 B.R. 233 (Bankr. S.D.N.Y. 2014) ...............................................................................30

*Gentry* v. *Siegel*,
    668 F.3d 83 (4th Cir. 2012) ................................................................................................16

*In re Global Indus. Techs., Inc.*,
    645 F.3d 201 (3d Cir. 2011) ...............................................................................................34

*In re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ........................................................................................20

*Hecht* v. *United Collection Bureau, Inc.*,
    691 F.3d 218 (2d Cir. 2012) ...............................................................................................27

*In re Herald*,
    540 Fed. App'x 19 (2d Cir. 2013) .......................................................................................24

*In re Hyundai and Kia Fuel Econ. Litig.*,
    881 F.3d 679 (9th Cir. 2018) ..............................................................................................17

*In re Infotechnology, Inc.*,
    89 F.3d 825 (2d Cir. 1995) .................................................................................................27

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................................................19

iii

*In re Johns-Manville Corp.*,
   600 F.3d 135 (2d Cir. 2010)..............................................................................27

*Keech* v. *Young*,
   200 A.D.2d 559 (N.Y. App. Div. 1994) .............................................................25

*Knutson* v. *Blue Cross & Blue Shield of Minn.*,
   254 F.R.D. 553 (D. Minn. 2008).........................................................................39

*In re Kong*,
   2016 WL 3267588 (9th Cir. B.A.P. June 6, 2016) ..............................................27

*Lan Sang* v. *Ming Hai*,
   951 F. Supp. 2d 504 (S.D.N.Y. 2013)..................................................................25

*In re Literary Works in Electronic Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011)................................................................................20

*Litty* v. *Merrill Lynch & Co., Inc.*,
   2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) .....................................................19

*In re Magna Corp.*,
   2003 WL 22078082 (Bankr. M.D.N.C. Aug. 29, 2003).......................................27

*Maywalt* v. *Parker & Parsley Petrol. Co.*,
   67 F.3d 1072 (2d Cir. 1995)................................................................................23

*In re MF Global Inc.*,
   2013 WL 74580 (Bankr. S.D.N.Y. Jan. 8, 2013).................................................39

*In re Motors Liquidation Co.*,
   447 B.R. 150 (Bankr. S.D.N.Y. 2011)..............................................................5, 16

*In re Motors Liquidation Co.*,
   571 B.R. 565 (Bankr. S.D.N.Y. 2017).................................................................38

*In re Motors Liquidation Co.*,
   580 B.R. 319 (Bankr. S.D.N.Y. 2018).................................................................33

*In re Musicland Holding Corp.*,
   362 B.R. 644 (Bankr. S.D.N.Y. 2007)....................................................16, 17, 23

*Oladapo* v. *Smart One Energy, LLC*,
   2017 WL 5956907 (S.D.N.Y. Nov. 9, 2017)........................................................20

*Oppenheimer Fund, Inc.* v. *Sanders*,
   437 U.S. 340 (1978).......................................................................................38, 39

iv

*In re Optical Techs. Inc.*,
    425 F.3d 1294 (11th Cir. 2005) .......................................................................27

*In re Partsearch Techs., Inc.*,
    453 B.R. 84 (Bankr. S.D.N.Y. 2011) ...........................................................20, 21

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016) ..........................................................................20

*Ramirez* v. *DeCoster*,
    142 F.Supp.2d 104 (D. Me. 2001) ................................................................19

*Riedel* v. *Acqua Ancien Bath N.Y. LLC*,
    2016 WL 3144375 (S.D.N.Y. May 19, 2016) .................................................19

*Schoenbaum* v. *E.I. Dupont De Nemours and Co.*,
    2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ..................................................19

*Scott* v. *Residential Capital, LLC (In re Residential Capital, LLC)*,
    2015 WL 629416 (S.D.N.Y. Feb. 13, 2015) ...................................................34

*In re SportStuff, Inc.*,
    430 B.R. 170 (8th Cir. B.A.P. 2010) ..............................................................26

*In re Standard Insulations, Inc.*,
    138 B.R. 947 (Bankr. W.D. Mo. 1992) ..........................................................34

*In re Stone Barn Manhattan LLC*,
    405 B.R. 68 (Bankr. S.D.N.Y. 2009) .............................................................34

*In re Sullivan*,
    567 B.R. 348 (Bankr. N.D. Ill. 2017) ............................................................27

*In re SunEdison, Inc.*,
    576 B.R. 453 (Bankr. S.D.N.Y. 2017) ...........................................................30

*Taylor* v. *Sturgell*,
    553 U.S. 880 (2008) ......................................................................................25

*Turkmen* v. *Ashcroft*,
    2010 WL 3398965 (E.D.N.Y. June 30, 2010) ................................................24

*In re USA United Fleet Inc.*,
    496 B.R. 79 (Bankr. E.D.N.Y. 2013) .............................................................27

*In re W.R. Grace & Co.*,
    2009 WL 230138 (Bankr. D. Del. Jan. 16, 2009) ..........................................21

*Wal-Mart Stores, Inc.* v. *Dukes*,
  564 U.S. 338 (2011) ................................................................................................27

*In re WorldCom, Inc.*,
  347 B.R. 123 (Bankr. S.D.N.Y. 2006) ....................................................................21

STATUTES

11 U.S.C. § 501 ..........................................................................................2, 6, 23, 33, 35

11 U.S.C. § 502 ............................................................................................... *passim*

11 U.S.C. § 1109 ....................................................................................................34, 35

28 U.S.C. § 157(b) ...................................................................................................7, 37

28 U.S.C. § 1715 ..........................................................................................................30

OTHER AUTHORITIES

Fed. R. Bankr. P. 3003(c)(2) .......................................................................................23

Fed. R. Bankr. P. 9019 ..................................................................................... *passim*

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Fed. R. Civ. P. 26(b)(1) ...............................................................................................40

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC ("**New GM**") submits this objection (the "**Objection**") to the *Motion for Order Approving Notice Procedures with Respect to the Proposed Settlement*, ECF No. 14292 (Bankr. S.D.N.Y. May 2, 2018) (the "**Notice Procedures Motion**") and respectfully represents:[1]

## PRELIMINARY STATEMENT

1.      The GUC Trust and Signatory Plaintiffs (together, the "**Movants**") seek approval of a settlement (the "**Proposed Settlement**"), the "key objective" of which is to allow $10 billion in hypothetical and unfiled general unsecured claims for the express purpose of requiring New GM to issue "the maximum amount of Adjustment Shares."  (Settlement Agreement ¶ NN.)  To create $10 billion in additional general unsecured claims, Movants propose to settle and "allow" all economic loss and personal injury claims allegedly asserted by the "*Plaintiffs*" without defending against or determining the likely value of such claims.  The term "Plaintiffs" is broadly defined in the Proposed Settlement to include all of the 11.4 million individuals included in the proposed nationwide classes asserted by Patricia Barker and Yvonne James-Bivins in the Proposed Class Claims, as well as "any party . . . whether named or unnamed" that suffered a personal injury based on a pre-Sale accident involving an Old GM vehicle subject to the Recalls.  These "claims," though, are a fiction; they have never been filed and therefore cannot be estimated or allowed.

2.      New GM's objections to Movants' Proposed Settlement are many and well-founded on principles of federal procedure, bankruptcy law, and contract law.  Its standing to make

---

[1]  Capitalized terms not defined herein shall have the meanings given to them in the Notice Procedures Motion, New GM's *Motion Pursuant to Section 105(a) of the Bankruptcy Code to Stay Certain Proceedings Relating to the Proposed Settlement* (the "**Stay Motion**," filed concurrently herewith), or the *Motion of the GUC Trust to Approve (I) The GUC Trust Administrator's Actions and (II) The Settlement Agreement and to (III) Authorize the Reallocation of GUC Trust Assets*, ECF No. 14293 (Bankr. S.D.N.Y. May 3, 2018) (the "**Settlement Motion**"), as applicable.

all of these objections should be unquestioned: as the party allegedly required to pay for these newly "allowed" "claims," New GM is entitled to a process that is consistent with applicable laws and the relevant Adjustment Share provisions of the Sale Agreement and Plan.

3.      Movants must follow the rules at each stage of the Proposed Settlement.  For example, the Court should only estimate proofs of claim that actually have been filed in accordance with sections 501 and 502 of the Bankruptcy Code.  And, where a claim was filed as a proposed class claim, the Court must determine whether that proposed class claim satisfies the standards of Rule 23 of the Federal Rules of Civil Procedure (as incorporated by Bankruptcy Rule 7023, "**Rule 23**"), even if such class claims are proposed to be settled.  Following these baseline, mandatory rules will ensure a fair and accurate process for all parties, consistent with the law and their contractual obligations, including the GUC Trust Administrator's obligation under the Sale Agreement and GUC Trust Agreement to use good faith judgment and only seek Adjustment Shares "when and as appropriate" and, in particular, when it determines that "allowed eligible claims are *likely* to exceed $35 billion." (GUC Trust Agreement § 2.3(d); Side Letter p. 2.)

4.      Unfortunately, the Notice Procedures set up a process that deprives New GM of basic procedural and contractual protections, and therefore should not be approved.  The Notice Procedures raise two key questions:  *can* the Court approve sending the Proposed Notice without first certifying a class under Rule 23, and *should* the Court approve the Notice Procedures in light of the Proposed Settlement's numerous structural defects?  The answer to both questions is no.

The Notice Procedures Violate Rule 23

5.      The Proposed Settlement is a nationwide class action settlement that purports to resolve, among other things, the "Proposed Class Claims."  As the name indicates, the Proposed Class Claims refer to two proofs of claim, one filed by Patricia Barker and one filed by Yvonne

James-Bivins "on behalf of a ***proposed*** nationwide class under B.R. 7023." The Proposed Class Claims assert claims on behalf of 11.4 million individuals, and Movants themselves concede that "continued litigation of Plaintiffs' claims" would require this Court to "decide whether class certification for . . . Plaintiffs' proposed class proofs of claims would be appropriate." (Settlement Motion ¶ 77.) Movants, however, never ask this Court to certify any class under Rule 23.

6.      Instead, the Proposed Settlement represents an unprecedented and improper attempt by Co-Lead Counsel (representing two individuals) to negotiate a settlement on behalf of 11.4 million individuals that have never filed proofs of claim in this Court, are not subject to this Court's jurisdiction, and have not retained Co-Lead Counsel to represent them. The Proposed Settlement purports to resolve the alleged claims of all "Plaintiffs," *i.e.*, all of the 11.4 million individuals in the nationwide classes alleged in the Proposed Class Claims, plus "any person" who may assert a Personal Injury Claim. Rather than seek certification of a class under Rule 23, Movants propose something entirely different: they ask this Court to exercise authority and jurisdiction it does not have and order that all 11.4 million individuals "***will be deemed to agree***" to the Proposed Settlement. (Vanaskey Decl. ¶ 30 (emphasis added).) In particular, they seek an order from the Court providing that the "Settlement shall be effective and binding on all persons . . . including, but not limited to, all Plaintiffs" and that "all Plaintiffs . . . shall be deemed to completely, unconditionally and irrevocably . . . discharge and release the GUC Trust . . . ." (Proposed Settlement Order ¶¶ 5, 7.)

7.      Approval of the Notice Procedures is a critical and expensive first step in Movants' improper attempt to avoid Rule 23. The purpose of the Notice Procedures is to "put Plaintiffs and other parties-in-interest on notice" of the Proposed Settlement. (Proposed Notice Procedures Order p. 2.) The reason for doing so, of course, is so the Court can subsequently "deem" them

3

parties to the Proposed Settlement and bind them to releases in favor of the GUC Trust and the

GUC Trust Beneficiaries.  (*Id.*)  If Movants complied with Rule 23, the Notice Procedures would

not be necessary or permissible at this stage.

8.      The Court should deny the Notice Procedures Motion and require Movants to

comply with Rule 23.  Class claims—both in and out of bankruptcy—are governed by Rule 23.  A

prerequisite to maintaining any class action (or class claim in bankruptcy) is that the court must

determine whether a class can properly be certified under Rule 23(c).  Co-Lead Counsel plainly

understood the need to seek certification under Rule 23:

> Accordingly, this Court should grant Plaintiffs leave to file the Proposed
> Class Claims.  ***Thereafter, the Plaintiffs intend to seek application of
> Federal Rule of Civil Procedure 23 to the Proposed Class Claims and to
> certify the proposed classes and subclasses at the appropriate time after
> the conclusion of any necessary discovery, including the discovery taking
> place in [MDL 2543]***.

(Late Claims Motion ¶ 16.)  Rather than seek application of Rule 23 before this Court—as Co-

Lead Counsel are currently doing in the MDL—Movants simply assume that *de facto* nationwide

classes exist.[2]

9.      This incorrect and improper presumption extends to all three "stages" of the

Proposed Settlement.  The Notice Procedures Motion seeks permission to "provide notice of the

Settlement Agreement to ***all Plaintiffs***" and refers throughout to "***Plaintiffs' claims***." (Notice

Procedures Motion ¶¶ 5, 9 (emphasis added).)  Likewise, the first paragraph of the Settlement

Motion states that the Proposed Settlement resolves "piecemeal litigation of ***Plaintiffs' claims***"

and "establishes a streamlined process for ***allowing Plaintiffs' Claims***."  (Settlement Motion ¶¶ 1,

12 (emphasis added).)  Finally, the Estimation Motion seeks an order estimating "***Plaintiffs'***

---

[2]      As set forth in the Stay Motion, this Court should stay certain proceedings related to the Proposed Settlement and
await the MDL Court's determination of class certification issues and summary judgment.

aggregate *allowed* General Unsecured Claims" "on a *class wide basis*" and directing that the Adjustment Shares "be reserved for the *exclusive benefit of the Plaintiffs*." (Estimation Motion ¶ 54; Proposed Estimation Order ¶¶ 4, 8 (emphasis added).)

10.    However, the law does not permit either Movants or this Court to *presume* certification of a nationwide class.  Unless and until the Court certifies a class under Rule 23, the Proposed Class Claims are nothing more than the asserted economic loss claims of two individuals. *See, e.g.*, *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011) (Gerber, J.) (holding that "the claim can be asserted as a class claim *if, but only if,* . . . the class claim proponent has shown compliance with the requirements of Civil Rule 23") (emphasis added).[3]  That Movants seek to settle the Proposed Class Claims in bankruptcy does not change anything:  the Court must still find that the Proposed Class Claims satisfy Rule 23.  *See, e.g.*, *In re BGI, Inc.*, 465 B.R. 365, 378 (Bankr. S.D.N.Y. 2012) (Glenn, J.) ("For the Settlement to be approved in bankruptcy court, the Settlement must be *both procedurally* and substantively fair under Rule 23 *and* Federal Rule of Bankruptcy Procedure 9019.") (emphasis added).

11.    Movants must seek—and obtain—certification *before* they proceed to provide notice of the Proposed Settlement.  Rule 23 certification will determine whether the Proposed Class Claims assert claims on behalf of a few individuals or 11.4 million individuals.  Failure to address certification under Rule 23 at the outset of the Proposed Settlement will taint the entire process.  Without class certification, there are only a few hundred—and certainly not millions— proofs of claim before the Court.  Without class certification, the Proposed Settlement falls apart, including the Notice Procedures.

---

[3]    On April 24, 2018, Co-Lead Counsel filed a pleading purporting to amend these Proposed Class Claims to, among other things, add dozens of additional proposed class representatives, many of whom are also MDL plaintiffs. New GM reserves all rights to object to Co-Lead Counsel's purported amendments to the Proposed Class Claims.

## The Proposed Settlement Cannot Be Approved

12.     The Court should also deny the Notice Procedures because they represent the first step down a lengthy dead-end road.  The Proposed Settlement cannot cause New GM to issue any Adjustment Shares, does not actually resolve "Plaintiffs' claims," and suffers from numerous other structural defects.  The Proposed Settlement will not accomplish anything other than giving the GUC Trust and current GUC Trust Beneficiaries much-desired releases from 11.4 million individuals while ring-fencing the GUC Trust Assets for their sole benefit.  The GUC Trust should not be authorized to waste $6 million on notice of a Proposed Settlement that cannot be approved.

13.     The Proposed Settlement cannot meet the conditions necessary to trigger New GM's contractual obligations to issue any Adjustment Shares.  The Sale Agreement provides that New GM must issue Adjustment Shares if this Court enters an order "estimating the aggregate allowed general unsecured claims" in excess of $35 billion.  The Sale Agreement therefore requires that the Court only consider "claims" and further estimate the "allowed" amount of such claims. The Proposed Settlement, however, does not settle "claims" that have actually been filed, and the procedures proposed by Movants do not permit the Court or New GM to ascertain the "allowed" amount of those non-filed claims.  The Proposed Settlement is untethered from the contractual requirements of the Sale Agreement and seeks to estimate hypothetical liabilities (not filed proofs of claim) and then estimate the "allowed" amount of such hypothetical liabilities without determining the rights of any person holding an "allowed" claim to actually receive a distribution.

14.     *First*, a prerequisite to *any* claim being estimated *or* allowed is that a proof of claim *first* be filed.  (*See* 11 U.S.C. §§ 501, 502.)  In asking the Court to estimate "Plaintiffs' claims" without first certifying a class under Rule 23, Movants ask the Court to estimate fictional and unfiled proofs of claim.  Section 502(c), however, only authorizes the Court to estimate a

6

"contingent or unliquidated *claim*," and the Sale Agreement is similarly limited to the estimation

of "allowed general unsecured claims."  The only proofs of claim that have been filed—and

therefore potentially subject to estimation for allowance purposes—are two economic loss claims

filed by Patricia Barker and Yvonne James-Bivins and several hundred Personal Injury Claims.

This Court cannot estimate "Plaintiffs' claims" until it determines whether those Plaintiffs are

properly covered by Rule 23 class claims filed by others without their consent.

15.    *Second*, the Proposed Settlement fails to address how the Court can estimate or

allow Personal Injury Claims.  As the Court recently noted, the personal injury Plaintiffs have not

consented to this Court's jurisdiction, and therefore only the MDL Court can determine the allowed

amount of their claims.  (*Order re Case Management Conference Regarding Proposed Settlement

Between the GUC Trust and Signatory Plaintiffs*, ECF No. 14301 (Bankr. S.D.N.Y. May 10, 2018)

(the "**May 10 Order**"); *see also* 28 U.S.C. § 157(b)(5).)[4]

16.    *Third*, the Proposed Settlement does not actually estimate the allowed amount of

*any* claim.  Although Movants assert that the Proposed Settlement will estimate claims for

---

[4]    New GM recognizes that, on the date hereof, Movants filed proposed amendments to the Settlement Agreement, which provide that (i) Pre-Closing Accident Plaintiffs represented by PIWD Counsel shall consent to the Court's estimation of their claims "in connection with" the Proposed Settlement but "do not consent to estimation of their personal injury and wrongful death claims by the Bankruptcy Court for any other purpose other than implementation" of the Proposed Settlement, and (ii) all other Plaintiffs asserting personal injury claims or economic loss claims also waive any right to a jury trial and shall be deemed to have consented to the Court's jurisdiction "as a condition to any Plaintiff's ability to receive a distribution from the . . . Settlement Fund." (Revised Settlement Agreement §2.9.)  New GM reserves its right to file a supplemental objection with respect to these proposed amendments, but notes initially that the proposed amendments confirm the Constitutional infirmities in the Proposed Settlement and make them worse.  First, the Court lacks *in personam* jurisdiction and Signatory Plaintiffs' counsel lack representational authority to deprive unidentified personal injury and economic loss plaintiffs of their rights, including the right to assert a claim against the GUC Trust, the right to a jury trial, and the right to opt-out.  Second, the proposed amendment makes matters worse, not better, by forcing unidentified personal injury plaintiffs (who have already been deprived of fundamental rights) to "consent" to the Constitutional violations that have already occurred "as a condition to any Plaintiff's ability to receive a distribution from the . . . Settlement Fund."  Third, the changes do not address the Court's concern that personal injury plaintiffs could still seek to have the merits of their claim liquidated in the district court, which may result in an amount that differs from the Court's estimation.  Fourth, if a personal injury claim is "allowed" in the Bankruptcy Court, then Plaintiffs should not be entitled to a "second bite at the apple" in the district court on the same claim.  Fifth, the proposed revisions highlight the inherent conflicts of interest arising from Signatory Plaintiffs' counsel negotiating a settlement on behalf of millions of individuals they do not represent.

"allowance and distribution purposes" (Estimation Motion ¶ 52), the Proposed Settlement does nothing of the sort. Movants acknowledge that—*after* the Court enters the Claims Estimate Order—Signatory Plaintiffs will "establish . . . procedures for the administration and allocation to Plaintiffs of the Settlement Fund, *including the criteria for Plaintiffs to assert a claim against the Settlement Fund*, the methodology for allocating the Settlement Fund to Plaintiffs, and procedures for payment of Plaintiffs' attorneys' fees." (Settlement Agreement § 2.11 (emphasis added).) During a prior status conference, Co-Lead Counsel provided additional clarity on these otherwise vague procedures: "an entire process will develop *probably under Rule 23* where notice goes out to the world with an opportunity to object that says, here's your entitlement, if you like it, get ready to get the check. If you don't like it, show up at the hearing." (*See Oct. 3, 2017 Hr'g Tr.*, ECF No. 14134 (Bankr. S.D.N.Y. Oct. 3, 2017) (the "**10/3/2017 Hr'g Tr.**") (emphasis added).)

17.    It is only this later procedure—"probably under Rule 23"—that will determine if Plaintiffs are "eligible to receive *distributions* from the Settlement Amount [and], *any Adjustment Shares*." (*Id*. § 2.11(b).) Thus, while the Proposed Estimation Order asks the court to estimate Plaintiffs' claims "for allowance purposes," the quantum of those claims and the individuals—or classes of individuals—covered by those "allowed" claims will not be determined until after the Claims Estimate Order is entered. The obvious implication is that the Court would not be estimating the allowed amount of claims per the Proposed Settlement, which is contrary to the plain language of Section 3.2(c) of the Sale Agreement and which negates the GUC Trust's entitlement to Adjustment Shares.

18.    In sum, Movants improperly ask the Court to estimate "Plaintiffs' claims" for "allowance and distribution purposes" (Estimation Motion ¶ 52), but they ignore (i) the fact that

millions of claims have never been filed (and therefore cannot be estimated), (ii) serious questions about whether two proposed nationwide classes can be certified under Rule 23, (iii) that the Court cannot estimate Personal Injury Claims that either have not been filed or where the plaintiff has not consented to this Court's jurisdiction, and (iv) that the claims estimate sought in the Proposed Settlement "for allowance and distribution purposes" is illusory because the Signatory Plaintiffs must *subsequently* seek approval of an "allocation methodology" and "claims reconciliation" process for determining which Plaintiffs are entitled to distributions. (*Id.*; Settlement Agreement § 2.4(a).) Without answering these critical questions, Movants ask this Court to approve Notice Procedures and commence a process designed to force New GM to issue the maximum number of Adjustment Shares based on a provision in the Sale Agreement tied to the estimated amount of "allowed general unsecured claims."

19.     Movants' request to force New GM to fund the Proposed Settlement *before* the Court knows which Plaintiffs have claims that can be estimated and who will be entitled to receive distributions raises a host of concerns. What if Movants are later unable to meet Rule 23's class certification requirements? What if—having received confusing notices that do not describe what (if anything) individual Plaintiffs may receive under the Proposed Settlement—only a fraction of the 11.4 million Plaintiffs make a claim on the Settlement Fund? What if Plaintiffs are not able to satisfy the "criteria" later established for receiving distributions? Do Signatory Plaintiffs and Co-Lead Counsel receive a windfall? Do the GUC Trust Beneficiaries get to keep $485 million in distributions that could have otherwise satisfied this fraction of Plaintiffs without resort to the Adjustment Shares? As these questions demonstrate, the "key objective" of the Proposed Settlement—to force New GM to issue the Adjustment Shares—cannot be obtained if the Proposed Settlement violates the contractual provisions that New GM agreed to in the Sale Agreement.

9

20.     The GUC Trust Administrator is a fiduciary and must only seek the Adjustment Shares "when and as appropriate," and in the exercise of its good faith judgment. (GUC Trust Agreement §§ 2.3(d), 2.4, 8.1(b).)   Further in its agreement with New GM, the GUC Trust Administrator is only permitted to ask the Court to enter a Claims Estimate Order if it believes— in the exercise of its good faith judgment—that "allowed eligible claims are *likely* to exceed $35 billion in the aggregate." (*Letter Agreement Dated September 23, 2011*, ECF No. 14095 (Bankr. S.D.N.Y. Sept. 12, 2017) (the "**Side Letter**").)

21.     The Proposed Settlement violates these basic requirements.   The GUC Trust Administrator is seeking the maximum number of Adjustment Shares without knowing which individual Plaintiffs have actually filed proofs of claim, or which alleged claims have been effectively disallowed based on rulings by the MDL Court.   Further, when the GUC Trust Administrator seeks to estimate Plaintiffs' claims, it (and the other GUC Trust Beneficiaries) will have already received a broad release from the Plaintiffs, destroying any incentive to accurately value the claims.   Instead, the GUC Trust Administrator intends that the estimation of Plaintiffs' claims will be a non-adversarial process in which the Court is only told one side of the story and, remarkably, will proceed without any fact discovery. (*Proposed Schedule* ECF No. 14309 (Bankr. S.D.N.Y. May 18, 2018) ¶ 9.)   Relatedly, nowhere in the various motions does the GUC Trust Administrator state that it believes aggregate allowed claims are *likely* to exceed $35 billion; rather, the GUC Trust Administrator equivocates and states that Plaintiffs' claims "*could* equal or exceed $10 billion" (Settlement Motion ¶ 30), a meaningless assertion that has no relevance under the Sale Agreement or section 502(c) of the Bankruptcy Code.  The claims *could* be worth nothing, as the GUC Trust Administrator also concedes. (*Id*. at ¶ 70.)   The Sale Agreement, Side Letter, Plan, and GUC Trust Agreement never contemplated the rigged process Movants ask this Court to

10

approve; specifically, that a GUC Trust Administrator with no "skin in the game" could ask New

GM to issue 30 million Adjustment Shares without any fact discovery on account of hypothetical

claims that "could" exceed $10 billion.

22.    Movants should either comply with Rule 23 or start over.  Accordingly, New GM

respectfully requests that the Court deny the Notice Procedures Motion.

## **BACKGROUND**[5]

23.    Under the Plan, the GUC Trust is the successor to Old GM.  (Plan § 6.2(b).)  The

GUC Trust Administrator may seek to receive the Adjustment Shares only "when and as

appropriate." (GUC Trust Agreement § 2.3(d).)  The GUC Trust Administrator is only empowered

to take actions that are "in the GUC Trust Administrator's good faith judgment, in the best interests

of the GUC Trust Beneficiaries and in furtherance of the purpose of the GUC Trust." (*Id.* § 8.1(b).)

Pursuant to the Side Letter, the GUC Trust Administrator agreed to only seek a Claims Estimate

Order if "allowed eligible claims are likely to exceed $35 billion in the aggregate."  (Side Letter.)

24.    The Proposed Settlement purportedly resolves "Plaintiffs' claims" (*i.e.*, the claims

of 11.4 million individuals), even though only a few hundred proofs of claim actually have been

filed.  (*See, e.g.*, Notice Procedures Motion pp. 5-6; Settlement Motion ¶¶ 1, 7, 9, 10-12, 49-50.)

"Plaintiffs" is broadly defined in the Proposed Settlement to include:

> the Ignition Switch Plaintiffs, the Non-Ignition Switch Plaintiffs, and the Pre-
> Closing Accident Plaintiffs, including all plaintiffs (whether named or unnamed,
> including unnamed members of a putative class) covered by any of the Late Claims
> Motions, all plaintiffs represented by counsel that is signatory hereto and any other
> party who (i) prior to July 10, 2009, suffered an economic loss claim by reason of
> . . . ownership or lease of an Old GM vehicle with an Ignition Switch Defect
> included in Recall No. 14V-047; (ii) prior to July 10, 2009 suffered an economic
> loss claim by reason of their ownership or lease of an Old GM vehicle with defects
> in ignition switches, side airbags, or power steering included in NHTSA Recall
> Nos. 14V-355, 14V-394, 14V-400, 14V-118 or 14V-153, and/or (iii) suffered a
> personal injury or wrongful death based on or arising from an accident that occurred

---

[5]    New GM respectfully refers the Court to the Stay Motion for additional background.

11

prior to the Closing Date that involved an Old GM vehicle that was later subject to
NHTSA Recall Nos. 14V-047, 14V-355, 14V-394, or 14V-400 . . .

(Settlement Agreement § 1.52.)  This definition not only mirrors the purported classes in the

Proposed Class Claims (*see* Proposed Class Claims, Ex. A ¶ 2; Ex. B ¶ 2), but also includes

Personal Injury Claimants who have never filed proofs of claim.

25.    The Proposed Settlement consists of three integrated components: the Notice

Procedures Motion [ECF No. 14292], the Settlement Motion [ECF No. 14293] and the Estimation

Motion [ECF No. 14294].

26.    As an initial step, Movants have proposed certain notice procedures

(the "**Notice Procedures**") whereby the GUC Trust would "provide notice of the Settlement

Agreement to *all Plaintiffs*" so that the GUC Trust can "put Plaintiffs . . . on notice of the

[Settlement] Motion and the Estimation Motion."  (Notice Procedures Motion p. 9.)  The sole

purpose of providing notice to all Plaintiffs in advance of the Court's consideration of the

Settlement Motion is "so that this Court can consider the relief sought under the [Settlement]

Motion, including the Release and Waiver Provisions."  (*Id.*)  More precisely, notice to "those who

did not execute the Settlement Agreement," is necessary so that the Court can deem the Proposed

Settlement "binding on all persons" and that the recipients will be "deemed to irrevocably waive

and release all claims . . . against Old GM, the Old GM estate, the GUC Trust . . . and holders of

beneficial units in the GUC Trust . . . ."  (*See id.* p. 5.)  The Proposed Notice states that "[n]othing

in the Settlement Agreement is intended to waive any claims against New GM" and "except as

mandated otherwise under applicable law, nothing in the Settlement Agreement shall waive any

claims that any Affected Person may have against New GM."  (Proposed Long Form Notice, 6.)

27.    If the Notice Procedures are approved, Movants next request a hearing before this

Court to approve the Proposed Settlement pursuant to which the GUC Trust will pay Plaintiffs $15

million—roughly 3% of the GUC Trust's $485 million net assets[6]—in settlement of Plaintiffs'

claims. The Proposed Settlement purports to settle and resolve the Late Claims Motions, which

included a request to file the Proposed Class Claims under Rule 23. (*See* Notice Procedures

Motion p. 5 ("The Settlement Agreement resolves numerous longstanding, disputed issues

including . . . whether Plaintiffs asserting claims for economic loss should be granted authority to

file late class proofs of claim"); *see also* Settlement Motion ¶ 50.)

      28.     Movants ask the Court to make the Proposed Settlement binding on 11.4 million

individuals: "the ***Settlement shall be effective and binding on all persons*** upon the Settlement

Effective Date, ***including, but not limited to, all Plaintiffs***." (Proposed Settlement Order ¶ 5

(emphasis added).) Upon approval of the Settlement Agreement, all Plaintiffs would be deemed

to release their claims against the GUC Trust, the GUC Trust Beneficiaries, and the GUC Trust

Assets. The Proposed Settlement Order provides:

> [A]ll Plaintiffs . . . shall be deemed to completely, unconditionally and irrevocably
> release, waive . . . discharge and release the GUC Trust, the GUC Trust
> Administrator, the GUC Trust Monitor . . . and the holders of beneficial units in the
> GUC Trust, and all of their subsidiaries and affiliates . . . from any and all, actions,
> obligations, suits, damages, attorneys' fees, charges, claims . . . liabilities and
> causes of action of any kind, nature or description . . . which the Releasing Parties
> may now have, ever had, or may in the future have against the Released Parties, the
> GUC Trust Assets, the Debtors, or their estates, arising out of or based on any facts,
> circumstances, issues . . . occurring from the beginning of time through the date
> hereof that relate to, could relate to, arise under, or concern the Recalls, the Old
> GM Bankruptcy Case, the GM MDL, the Plan, the Late Claims Motions, the
> AMPSA, the Sale Order or any matter associated with any of the foregoing.

(*Id*. ¶ 7.) The Proposed Settlement Order also provides that all Plaintiffs "are deemed to have

agreed" not to pursue, and are permanently enjoined from pursuing, further action against the GUC

Trust or other Released Parties. (*Id*. ¶ 8.) Finally, the Proposed Settlement provides that Plaintiffs

---

[6]    The GUC Trust reported net assets of approximately $485 million in its 10-Q filing for the period ending
December 31, 2017.

shall not be considered GUC Trust Beneficiaries under the GUC Trust Agreement, and therefore

the GUC Trust Administrator does not owe them fiduciary duties, and they are not entitled to any

GUC Trust Assets (other than the Settlement Fund).  (Settlement Agreement § 1.25.)

29.    If the Proposed Settlement is approved, Movants would then ask this Court to

estimate "Plaintiffs' aggregate allowed General Unsecured Claims" "on a ***class wide basis***"

(Estimation Motion ¶ 54; Proposed Estimation Order ¶¶ 4, 8), in "an amount that ***could*** equal or

exceed $10 billion."  (Settlement Motion ¶ 30 (emphasis added).)

30.    Assuming the Court entered the Proposed Estimation Order and concluded that

Plaintiffs' claims exceeded $10 billion, Movants ask the Court to direct New GM to issue the

maximum amount of Adjustment Shares to a "Settlement Fund" designated and controlled by the

Signatory Plaintiffs.  (Proposed Estimation Order ¶ 6.)  After the Adjustment Shares are transferred

into the Settlement Fund, the Signatory Plaintiffs are authorized to:

> establish an allocation methodology for the Settlement Fund and proposed criteria
> for determining the right or ability of each Plaintiff to receive a distribution from
> the Settlement Fund, which shall be approved by the Bankruptcy Court.  Notice of
> any agreement as to the proposed allocation of Adjustment Shares (or their value)
> and proposed criteria for eligibility, along with information about the hearing date
> and how and when to assert any objections, shall be provided via a settlement
> website to all known Plaintiffs whose rights might be affected by such allocation
> and such Plaintiffs shall have an opportunity to object at a hearing to be held before
> the Bankruptcy Court.

(*Id*. ¶ 9.)  The Settlement Agreement specifies that Signatory Plaintiffs will establish "criteria for

Plaintiffs to assert a claim against the Settlement Fund," to determine which "Plaintiffs [are]

eligible to receive distributions."  (Settlement Agreement § 2.1.)  Accordingly, the Bankruptcy

Court would subsequently need to approve the allocation of the Settlement Fund and a subsequent

claims process for determining individual Plaintiffs' entitlement to the Settlement Fund.

31.     Neither the Notice Procedures Motion, Settlement Motion nor Estimation Motion seek certification of the nationwide classes alleged in the Proposed Class Claims or address whether the requirements for class certification under Rule 23 are met.

## ARGUMENT

### I.      Movants Must Comply with Rule 23.

#### a.      A Proposed Class Proof of Claim Is *Only* Permitted if the Bankruptcy Court First Determines that It Complies with Rule 23.

32.     Any consideration of the Proposed Settlement must start with the actually filed proofs of claim the Proposed Settlement purports to resolve.  Movants acknowledge throughout their pleadings that the James-Bivins Proposed Class Claim and the Barker Proposed Class Claim are "***Proposed*** Class Claims."  (Notice Procedures Motion p. 4.)  Movants also acknowledge that "continued litigation of Plaintiffs' claims" would require the Bankruptcy Court "to decide whether class certification for the economic loss Plaintiffs' proposed class proofs of claims would be appropriate."  (Settlement Motion ¶ 77.)  But what Movants fail to acknowledge (and make no effort to address) is that there cannot be a class proof of claim (or a settlement of a class proof of claim) unless the court first certifies a class under Rule 23.  And, even then, the class proof (or proofs) of claim must match or fit the class (or classes) the court certifies, if any.

33.     Rule 23 itself requires that a court must enter an order certifying a class.  *See* F.R.C.P. 23(c)(1)(A) ("[A]t an early practicable time after a person sues or is sued as a class representative, ***the court must determine by order*** whether to certify the action as a class action.") (emphasis added).  Rule 23 also separately provides that a court must enter an order that defines the class and appoints class counsel.  *See* F.R.C.P. 23(c)(1)(B) ("***An order*** that certifies a class action ***must*** define the class and the class claims, issues, or defenses, and ***must*** appoint class counsel under Rule 23(g).") (emphasis added).

15

34.    The Rule 23 requirements apply with equal force in bankruptcy.  Notwithstanding a bankruptcy court's inherent equitable powers, bankruptcy courts in this district and across the country consistently require a class claim proponent to meet the requirements of Rule 23 before permitting a class claim to be asserted.  *See, e.g.*, *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011) (Gerber, J.) ("[T]he claim can be asserted as a class claim *if, but only if*, (1) the class claim proponent has shown compliance with the requirements of Civil Rule 23, and (2) after consideration of consistency with bankruptcy needs and concerns, the bankruptcy court directs that Rule 23 should apply.") (emphasis added); *accord Gentry* v. *Siegel*, 668 F.3d 83, 91 (4th Cir. 2012) ("[S]uch class proofs of claim serve their function only on a conditional basis.  If the court approves class representation, the approval will function retroactively to legitimize the class proof of claim . . . ."); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 620 (Bankr. S.D.N.Y. 2009) (noting that request for a class proof of claim must "satisfy the Rule 23 requirements"); *In re Musicland Holding Corp.*, 362 B.R. 644, 652 (Bankr. S.D.N.Y. 2007) ("[I]f the court declines to apply Rule 23 to the proof of claim, the putative agent never obtains the requisite authority. . . . Until certification, the claim is in limbo."); *In re Ephedra Prods. Liability Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) ("Rule 23 may be invoked against the debtor *only if* the bankruptcy court first makes a discretionary ruling under Rule 9014 to apply Rule 23 to the proof of claim.") (emphasis added).[7]

35.    The reasoning in *Musicland* is particularly instructive with respect to the degree of scrutiny that bankruptcy courts apply to class proofs of claim.  In *Musicland*, two individuals filed

---

[7]    *See also In re Craft*, 321 B.R. 189, 198 (Bankr. N.D. Tex. 2002) ("In those cases in which a Rule 23 determination is not made timely in another court, the bankruptcy court must, *first* . . . *decide* whether or not . . . a class should be certified and whether the putative representatives are appropriate to act as fiduciaries for their class.") (emphasis added); *In re CommonPoint Mortgage Co.*, 283 B.R. 469, 475-76 (Bankr. W.D. Mich. 2002) ("[F]or a class proof of claim to proceed, the class claimants *must* timely request that the bankruptcy court apply the provisions of Bankruptcy Rules 9014 and 7023 and certify the class. . . . This court *must* [also] determine whether the requirements for obtaining class certification have been met.") (emphasis added).

a class proof of claim, and later a class certification motion in connection therewith, on behalf of similarly situated store managers alleging certain violations of California labor laws. The court first observed that "[w]hile class proofs of claim in bankruptcy are not prohibited . . . the right to file one is not absolute." *Musicland*, 362 B.R. at 650. The *Musicland* court also noted that certification is necessary to "ratif[y] the agent's authority *nunc pro tunc* . . . [because] if the court declines to apply Rule 23 to the proof of claim, the putative agent never obtains the requisite authority . . . and [u]ntil certification, the claim is in limbo . . . and . . . may not even be a 'filed' claim within the meaning of 11 U.S.C. § 502(a)." *Id.* at 652. After observing that the class proponents' failure to timely seek class certification "bears on the exercise of the [court's] discretion whether to apply Rule 23," the court ultimately denied the class claim proponents' class certification motion. *Id.*

36.    Of course, Signatory Plaintiffs have not sought class certification in this Court, notwithstanding that they filed purported nationwide class claims under Rule 23 in December 2016.[8] When they filed their Proposed Class Claims, Co-Lead Counsel stated that they "intend to seek application of Federal Rule of Civil Procedure 23 to the Proposed Class Claims and to certify the proposed classes and subclasses at the appropriate time after the conclusion of any necessary discovery, including the discovery taking place in [the MDL]." (Late Claims Motion ¶ 16.) But Co-Lead Counsel no longer appear to believe that such action is necessary, even though they ask the Court to estimate the claims on a "class wide basis." (Estimation Motion ¶ 54.)

---

[8]    Co-Lead Counsel's request for a ***nationwide*** class is notable given the "grave concerns about the viability of a nationwide class" in similar situations. *In re Hyundai and Kia Fuel Econ. Litig.*, 881 F.3d 679, 705 (9th Cir. 2018). Indeed, in the MDL, Co-Lead Counsel originally sought a nationwide class but, following certain rulings by the MDL Court on motions to dismiss and briefing on choice-of-law issues, abandoned certification of a nationwide class to pursue class certification in certain "bellwether" states.

37.     Movants' failure to seek class certification is even more curious in light of this Court's discussion of the issue at the October 3, 2017 status conference. (10/3/2017 Hr'g Tr. 28:14-28:16.) At that status conference, this Court asked whether Co-Lead Counsel "believe there's authority that people who haven't filed claims and are not part of a certified class will, pursuant to an order I enter, get distributions." (*Id.*) Seven months later, however, Co-Lead Counsel leave this same question unanswered.

38.     The Court's question lies at the heart of the Proposed Settlement: are Movants seeking to settle the claims of two individuals asserting economic loss claims, or 11.4 million individuals asserting economic loss claims? Are Movants also presuming a *de facto* nationwide class of Personal Injury Claimants? As set forth above, the law clearly provides that a proposed class claim covers only the individuals that filed the claim until the court certifies the class under Rule 23. Until this Court or the MDL Court (which is set to address class certification in the coming months) certifies one or more classes, the Proposed Settlement is illusory because there are simply no class proofs of claim to settle.

**b.     The GUC Trust Cannot Avoid Rule 23 Certification by Purportedly "Settling" the Certification Issue with the Signatory Plaintiffs.**

39.     The Supreme Court has **emphasized** that Rule 23's requirements cannot be loosened or ignored in the settlement context. *See Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 621 (1997) ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, **we emphasize**, are not impractical impediments—checks shorn of utility—in the settlement-class context.") (emphasis added). Indeed, the Supreme Court ruled that "[f]ederal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a settlement is 'fair,' then certification is proper." *Id.* at 622. Rather, Rule 23(e) provides the exclusive, non-waivable means to settle a proposed class action, and the plain language of Rule

18

23(e) makes clear that "[t]he claims, issues, or defenses of a ***certified class*** may be settled . . . or compromised only with the court's approval." F.R.C.P. 23(e) (emphasis added). Accordingly, a court must determine whether class certification is appropriate, even if counsel proposes to immediately settle the claims of that purported class.

40.    The requirements for certifying a settlement class are no less rigorous than for certifying a litigation class. *Amchem*, 521 U.S. at 620 (noting that Rule 23 "demand[s] undiluted, ***even heightened***, attention in the settlement context . . . for a court asked to certify a settlement class will lack the opportunity, [which is] present when a case is litigated, to adjust the class . . . .") (emphasis added); *accord Schoenbaum* v. *E.I. DuPont De Nemours and Co*., 2009 WL 4782082, at *11 (E.D. Mo. Dec. 8, 2009) ("These arguments seem to presuppose that settlement class certification is less rigorous than litigation class certification . . . a position that the Supreme Court has clearly refuted.") (*citing Amchem*); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005) ("A settlement-only class must meet all the requirements of Rule 23, with one important exception:  because the case will never go to trial, the court need not consider the manageability of the proceedings should the case or cases proceed to trial.").[9]

41.    Similarly, parties cannot simply stipulate that a certifiable class exists because courts have an "independent responsibility to make a determination that every Rule 23 requirement is met." *Riedel* v. *Acqua Ancien Bath N.Y. LLC*, 2016 WL 3144375, at *3 (S.D.N.Y. May 19, 2016) (conducting a "rigorous analysis" under Rule 23, notwithstanding the parties' agreement that the proposed class satisfied Rule 23 for settlement purposes) (citations and internal quotation marks omitted); *see also Litty* v. *Merrill Lynch & Co., Inc.*, 2015 WL 4698475, at *3 (C.D. Cal.

---

[9]    *Accord Colesberry* v. *Ruiz Food Prods., Inc.*, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (conditionally certifying settlement class under "heightened attention" standard set forth in *Amchem* and *then* reviewing and approving the form of notice); *Ramirez* v. *DeCoster*, 142 F.Supp.2d 104, 116 (D. Me. 2001) ("It should go without saying that the settlement agreement still must secure court approval under the strictures of Rule 23.").

Apr. 27, 2015) ("[T]he court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement.") (citations and internal quotation marks omitted).  It is not uncommon for courts to reject putative class settlements when there are concerns about noncompliance with Rule 23's requirements, and a court may not use equitable principles to justify such noncompliance.  *See In re Ephedra Prod. Liab. Litig.*, 231 F.R.D. 167, 169-70 (S.D.N.Y. 2005) (declining to certify proposed settlement class and commenting that "the *Amchem* decision was expressly intended to **curb 'judicial inventiveness'** of the kind requested here, and to **restrict district judges' discretion to do equity under the guise of Rule 23**") (internal citation omitted) (emphasis added).[10]

42.    Movants' reliance on Bankruptcy Rule 9019 to approve the Proposed Settlement does not alter Rule 23's requirements.  When confronted with Bankruptcy Rule 9019 settlements of class claims, bankruptcy courts—including this Court—have made it clear that application of Rule 9019 does not immunize settlement of a class proof of claim from scrutiny under Rule 23. *See, e.g.*, *In re BGI, Inc.*, 465 B.R. 365, 378 (Bankr. S.D.N.Y. 2012) (Glenn, J.) ("For the Settlement to be approved in bankruptcy court, the Settlement must be **both** procedurally and substantively fair under Rule 23 **and** Federal Rule of Bankruptcy Procedure 9019.") (emphasis added); *In re Partsearch Techs., Inc.*, 453 B.R. 84, 98 (Bankr. S.D.N.Y. 2011) (Glenn, J.) (same);

---

[10]    *See also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* 827 F.3d 223, 231 (2d Cir. 2016) (overturning class settlement where "class members of the [Rule 23(b)(2)] class were inadequately represented in violation of . . . Rule 23(a)(4)"); *In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242, 254-55 (2d Cir. 2011) (vacating class settlement order that failed to comply with Rule 23 because "the district court abused its discretion in certifying the class based on its finding that class representation was adequate."); *Oladapo* v. *Smart One Energy, LLC*, 2017 WL 5956907, at *8 (S.D.N.Y. Nov. 9, 2017) (denying conditional approval of a stipulated settlement class because the settlement, among other things, did not adequately satisfy the numerosity, commonality, and typicality requirements) (citations and internal quotation marks omitted); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 162 (S.D.N.Y. 2008) (concluding that it was necessary to decertify previously certified settlement class that did not meet Rule 23 requirements despite the court's recognition that "the parties expended great time and resources in reaching the Settlement, providing notice to the Settlement Class, and processing claims").

*In re W.R. Grace & Co.*, 2009 WL 230138, at *2-3 (Bankr. D. Del. Jan. 16, 2009) (preliminarily approving class certification in connection with proposed class settlement); *In re EOS Airlines, Inc.*, 2008 WL 8820257, at *2 (Bankr. S.D.N.Y. Sept. 4, 2008) (noting that the court will conduct a hearing to "consider whether the proposed Settlement is fair, reasonable and adequate to the Class under Civil Rule 23 *and* in the best interests of the Debtor's estate, pursuant to Bankruptcy Rule 9019 . . . ."); *In re WorldCom, Inc.*, 347 B.R. 123, 140 (Bankr. S.D.N.Y. 2006) ("It is also possible that the Settlement will fall within the appropriate range of reasonableness or fairness as is required for each party and therefore warrant approval under both Rule 23 and Rule 9019.").

43.     *Partsearch* illustrates the proper approach to settlement of a proposed class proof of claim. *First*, the court scrutinized whether the proposed class satisfied the requirements of Rules 23(a) and (b). *In re Partsearch Techs., Inc.*, 453 B.R. at 93-97. *Next*, the court evaluated the proposed notice to the class, noting that it was important that "the Notice includes each Class Member's projected recovery under the Settlement." *Id.* at 97-98. *Finally*, at the same time as it reviewed the proposed class notice, the court evaluated whether the settlement was procedurally and substantively fair under ***both*** Bankruptcy Rule 9019 and Rule 23. *Id.* at 98-104.

44.     If Movants followed Rule 23, the Court would not (indeed, could not) ***start*** with sending the Proposed Notice to 11.4 million individuals. Rather, the Court would ***first*** determine based upon a mature record whether to certify a class under Rule 23. Even then, the Court would not authorize sending the Proposed Notice to class members until ***after*** it had preliminarily determined that the Proposed Settlement did not contain obvious deficiencies and was capable of being approved as fair, reasonable, and adequate. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) ("Before approving a class settlement agreement . . . the district court

must separately evaluate whether the settlement agreement is fair, reasonable, and adequate under Rule 23(e).") (internal quotation marks omitted); *accord Amchem*, 521 U.S. at 620-21.

45.     Curiously, Movants do not mention Rule 23 *once* in their Notice Procedures Motion which, of course, seeks the approval of this Court to provide notice of a proposed settlement of ***proposed class claims*** to ***putative class members***.  Tellingly, Movants fail to cite any authority supporting their proposition that the Court can approve a settlement of 11.4 million individuals who did not file proofs of claim in the bankruptcy without complying with Rule 23.  Even more telling, Co-Lead Counsel previously told the Court that their intention was to use Rule 23 *after* the Proposed Settlement was approved and the Adjustment Shares issued to the Settlement Fund. When asked how Movants would allocate the Settlement Fund, Co-Lead Counsel responded:

> what people are told is ***let's not knock ourselves out about how to distribute nothing; let's knock ourselves out about how to distribute up to a billion dollars***. And then your relative entitlement versus someone else's relative entitlement, depending on the facts and circumstances that relate to you specifically, will be worked out with the help of the magistrate judge and, if necessary, Judge Furman. ***And an entire procedure will develop probably under Rule 23 where notice goes out to the world*** with an opportunity to object that says, here's your entitlement, if you like it, get ready to get the check.  If you don't like it, show up at the hearing.

(10/3/17 Hr'g Tr. 38:17-25 (emphasis added).)

   **c.     Neither Co-Lead Counsel Nor this Court Have Authority to Settle or Release the Claims of 11.4 Million Individuals Who Are Not Represented by Co-Lead Counsel or Subject to the Jurisdiction of this Court.**

46.     The Proposed Settlement presumes that Co-Lead Counsel have authority to negotiate a settlement on behalf of 11.4 million individuals who have not retained Co-Lead Counsel, and that this Court has jurisdiction to estimate the claims they did not file and order those 11.4 million individuals to release and waive their claims against the GUC Trust and the GUC Trust Beneficiaries.  Neither assumption is valid, and this Court should not approve Notice Procedures built on such faulty premises.

47.    Section 502 of the Bankruptcy Code, which governs the allowance of claims, refers exclusively to "a claim or interest, *proof of which is filed* under section 501 of this title . . . ." 11 U.S.C. § 502 (emphasis added). Bankruptcy Rule 3003(c)(2), in turn, provides that "any creditor who fails to [file a proof of claim] *shall not be treated as a creditor* with respect to such claim for the purposes of voting *and distribution*." F.R.B.P. 3003(c)(2) (emphasis added). Where class certification has not been obtained—and here, it has not even been sought—any suggestion that the James-Bivins Proposed Class Claim and Barker Proposed Class Claim represent claims of anyone other than James-Bivins and Barker, respectively, must be rejected. *See, e.g.*, *Musicland*, 362 B.R. at 652 ("[I]f the court declines to apply Rule 23 to the proofs of claim, the putative agent never obtains the requisite authority. . . . Until certification, the claim is in limbo . . . [and] may not even be a filed claim within the meaning of 11 U.S.C. § 502(a)."). [11]

48.    *If* a class were certified under Rule 23, then *court-appointed* class counsel *would* represent *all* class members. *See Maywalt* v. *Parker & Parsley Petrol. Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) ("The attorneys themselves have an obligation to *all* of the class members . . . .") (emphasis added); *Fulco* v. *Continental Cablevision, Inc.*, 789 F. Supp. 45, 47 (D. Mass. 1992) ("[O]nce the court enters an order certifying a class, an attorney-client relationship arises between all members of the class and class counsel.") (citations and quotation marks omitted). But until then, as Judge Furman reminded Co-Lead Counsel at the November 10, 2016 hearing, they do not represent absent putative class members. [12]

---

[11]    *See also In re FIRSTPLUS Fin., Inc.*, 248 B.R. 60, 70 (Bankr. N.D. Tex. 2000) ("A proof of claim filed by a party who is not a creditor is not a properly filed proof of claim. . . . A proof of claim filed by one who purports to be an agent, but is not, is flawed in a similar fashion as one that is filed by a noncreditor.").

[12]    *See MDL Hr'g Tr. 11/10/2016*, MDL ECF No. 3535, 20:19-21 (S.D.N.Y. Nov. 17, 2016) ("Well, strictly speaking, I don't think that you represent them because they're absent class members and there is no class yet.").

49.    Absent certification under Rule 23, neither Co-Lead Counsel nor Signatory Plaintiffs can bind the 11.4 million individuals whose rights are purportedly settled and released in the Proposed Settlement.  No lawyer can anoint himself or herself "class counsel."  *See* F.R.C.P. 23(g) (noting that "a ***court*** that certifies a class ***must*** appoint class counsel" and describing any aspiring class counsel as an "applicant") (emphasis added).  As a result, ***only*** certification of a settlement class that complies with the notice and opt-out requirements of Rule 23 can bind absent class members.  *See, e.g.*, *Turkmen* v. *Ashcroft*, 2010 WL 3398965, at *2 (E.D.N.Y. June 30, 2010) (Gold, M.J.), *report and recommendation adopted*, 2010 WL 3398968 (E.D.N.Y. Aug. 26, 2010) ("[W]hile a putative class action complaint was pending at the time the settlement agreements were made, no class had been certified.  Accordingly, the actions of the named plaintiffs could not bind absent class members . . . ."); *In re Herald*, 540 Fed. App'x 19, 29 (2d Cir. 2013) (observing that a settlement that would bind absent class members should only be approved if it satisfies Rule 23(e), among other things); *In re Arotech Corp. Sec. Litig.*, 2010 WL 2301195, at *5 (E.D.N.Y. June 7, 2010) (same).

50.    Here, class counsel has ***not*** been appointed, a class has ***not*** been certified, and, to the best of New GM's knowledge, Co-Lead Counsel have ***not*** been retained by any of the 11.4 million individuals except Signatory Plaintiffs.  The Proposed Settlement also purports to bind any person asserting a personal injury claim arising from a pre-Sale accident, not just the Personal Injury Claims asserted by Signatory Plaintiffs.  As a result, Co-Lead Counsel lack the representational authority to settle or release the claims of millions of absent and unrepresented individuals in this Court.  It is axiomatic that a lawyer cannot represent a person who has not retained him or her.  *See* Restatement (Third) of the Law Governing Lawyers § 22 (2000) (a lawyer has no right or authority to represent or settle a case on behalf of a person who has not retained

him or her).  The Court should therefore reject Co-Lead Counsel's attempt to bind millions of individuals to the Proposed Settlement.  *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 1.2(a) (a lawyer shall abide by a client's decision whether to settle a matter); Restatement (Third) of the Law Governing Lawyers § 14 (2000) ("A relationship of client and lawyer arises when: (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person . . . ; or (2) a tribunal with power to do so appoints the lawyer to provide the services."); *id.* cmt. (b) ("A client ordinarily should not be forced to put important legal matters into the hands of another or to accept unwanted legal services"); *Lan Sang* v. *Ming Hai*, 951 F. Supp. 2d 504, 529 (S.D.N.Y. 2013) ("[An attorney-client] relationship arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services.") (citations and internal quotation marks omitted); *Keech* v. *Young*, 200 A.D.2d 559, 559 (N.Y. App. Div. 1994) (granting defendant's motion to vacate judgment where she "did not authorize any attorney . . . to act on her behalf in this litigation").[13]

51.     Even if Co-Lead Counsel had authority to negotiate the Proposed Settlement on behalf of 11.4 million individuals, this Court would not have jurisdiction to bind those individuals to the Proposed Settlement.  Absent certification of a nationwide class, those individuals have not filed proofs of claim, and therefore have not submitted to this Court's jurisdiction.  *See Taylor* v. *Sturgell*, 553 U.S. 880, 892-93 (2008) ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit.  The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'"); *accord In re Adelphia Commc'ns Corp.*, 307

---

[13]     This Court previously raised concerns about the potential *ultra vires* actions of Co-Lead Counsel, stating that "[l]awyers need authority from their clients to go ahead and settle. . . . [L]awyers just don't go off and negotiate settlements without authority from their clients, at least I hope not."  (10/3/2017 Hr'g Tr. 21:16-21:23.)

B.R. 404, 418 (Bankr. S.D.N.Y. 2004) (noting that *when* the party filed a proof of claim, it submitted to the jurisdiction of the bankruptcy court); *In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("There is no dispute that if Sara Lee or any of its divisions had not filed a proof of claim, this court would be without jurisdiction to hear the action . . . .").

52.     Nor does Bankruptcy Rule 9019 provide Movants or this Court with the ability to bind individuals who are not a party to the Proposed Settlement.  The case of *In re SportStuff, Inc.*, 430 B.R. 170 (8th Cir. B.A.P. 2010) highlights the limits of Bankruptcy Rule 9019.  In *SportStuff*, the debtor filed an adversary complaint seeking, among other things, declaratory relief to stay lawsuits arising from its inflatable watercraft products.  Insurers intervened and named certain vendors of the debtor's products as defendants.  The debtor and the insurers then reached a settlement agreement whereby the insurers would contribute the full policy amounts to the debtor's estate in exchange for an injunction barring all related claims against the insurers, notwithstanding that the vendors were "additional insureds" under the policies.  The Eighth Circuit Bankruptcy Appellate Panel reversed the bankruptcy court's approval of the settlement agreement, holding, among other things, that Bankruptcy Rule 9019 "cannot be used to impose an injunction on the non-settling parties."  *See id.* at 181 ("The opportunity to object to a settlement does not take the place of a trial on the merits."); *see also In re Flores*, 2013 WL 6186262, at *7 (Bankr. C.D. Cal. Nov. 25, 2013) (noting that it would violate due process to use "Rule 9019 . . . [to] impos[e] results on parties who were not party to the [settlement] agreement"); *In re Anderson*, 357 B.R. 473, 476 (Bankr. W.D. Mich. 2006) (noting that Bankruptcy Rule 9019 "cannot be used to countenance [such] an *ultra vires* activity regardless of how advantageous the proposed settlement might otherwise be to the bankruptcy estate").[14]  Notably, the same infirmity exists with respect to those

---

[14]    When briefing these issues in the MDL, the only cases Co-Lead Counsel cited regarding the ability to bind third parties pursuant to Bankruptcy Rule 9019 involved either confirmation of a chapter 11 plan or circumstances

Personal Injury Claimants captured by the definition of "Plaintiffs" who are not Signatory

Plaintiffs and therefore are neither represented by Signatory Plaintiffs' counsel nor subject to the

jurisdiction of this Court.

53.     Whether viewed through the lens of representational authority or the limits of

Bankruptcy Rule 9019, Movants have no legal basis to impose (or ask this Court to impose) the

Proposed Settlement on millions of unrepresented and unidentified individuals in violation of their

due process rights.

> **d.      The Notice Procedures Are Intentionally Designed to Avoid Application of
> Rule 23 and Do Not Provide Due Process.**

54.     The class action mechanism is "an exception to the usual rule that litigation is

conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc.* v. *Dukes*,

564 U.S. 338, 348 (2011) (citations and internal quotation marks omitted).  Rule 23 is specifically

designed to ensure that absent class members receive due process of law in the exceptional

circumstance of class litigation.  *See In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 536

(S.D.N.Y. 2014) ("Rule 23's own provisions are grounded in due process . . . .").  Accordingly,

"[a]bsent class members have a due process right to notice and an opportunity to opt out of class

litigation . . . Rule 23 protects that right by providing a parallel statutory requirement of notice and

the opportunity to opt out for classes certified under subdivision (b)(3)[.]"  *Hecht* v. *United*

---

where notice is used to dispose of estate property, situations that are easily distinguishable from the present ones. *See In re Johns-Manville Corp.*, 600 F.3d 135, 141, 147 (2d Cir. 2010) (settlement tied to confirmation of plan); *In re Optical Techs. Inc.*, 425 F.3d 1294, 1301 (11th Cir. 2005) ("The confirmation order and the provisions of the Fourth Amended Plan are therefore res judicata."); *In re Infotechnology, Inc.*, 1995 WL 723099, at *1 (2d Cir. 1995) (relief granted "expressly conditioned upon confirmation of the plan"); *In re Kong*, 2016 WL 3267588, at *3, 7–9 (9th Cir. B.A.P. June 6, 2016) (court erred when it dispensed with notice regarding "property of the estate"); *In re Sullivan*, 567 B.R. 348, 353–55 (Bankr. N.D. Ill. 2017) (concerning exemption of estate property); *In re USA United Fleet Inc.*, 496 B.R. 79, 89 (Bankr. E.D.N.Y. 2013) (party was on notice of sale of "estate property"); *In re Magna Corp.*, 2003 WL 22078082, at *1, 6 (Bankr. M.D.N.C. Aug. 29, 2003) (approving Rule 9019 notice in connection with settlement of estate's claim to account).  Further, the cases outside the confirmation context do not include broad releases of all claims against the debtor's estate.

*Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012). Thus, in the context of a purported class settlement, compliance with Rule 23 is a functional prerequisite to compliance with the Constitutional guarantee of due process of law.

55.    The Notice Procedures are transparently designed to avoid application of Rule 23. If Movants first sought and obtained certification of a nationwide class, then Co-Lead Counsel (*if* designated as class counsel pursuant to Rule 23) would have authority under Rule 23(e) to negotiate a class settlement on behalf of all class members, and Rule 23 would supply the binding mechanism that Movants seek to fashion out of whole cloth with the Notice Procedures.

56.    Instead, Movants seek to bind 11.4 million individuals that are not represented by Co-Lead Counsel and that have not signed the Proposed Settlement. Recognizing that they cannot bind these 11.4 million individuals by fiat alone, Movants instead seek to "put Plaintiffs . . . on notice" of the Proposed Settlement. (Proposed Notice Procedures Order p. 2.)[15] Having put these individuals "on notice," Movants then ask the Court to somehow "deem" such individuals parties to the Settlement Agreement and to have consented to the Release and Waiver. (*See* Proposed Settlement Order ¶ 5 (the "Settlement shall be effective and binding on all persons . . . including, but not limited to, all Plaintiffs"); *id.* ¶ 7 ("all Plaintiffs . . . shall be deemed to completely, unconditionally and irrevocably . . . discharge and release the GUC Trust . . . .").) In the words of the GUC Trust Administrator: "all Plaintiffs agree (*or will be deemed to agree*) to waive all current and future claims against the GUC Trust." (Vanaskey Decl. ¶ 30 (emphasis added).)

57.    The undeniable purpose of the Notice Procedures is thus to circumvent the procedural protections of Rule 23 by concocting a non-class method of binding 11.4 million

---

[15]    (*See also* Notice Procedures Motion p. 7 (arguing that the Notice Procedures are necessary "particularly in light of . . . the Release and Waiver contained in the Settlement Agreement . . . ."); *id.* p. 9 (noting that entry of the Notice Procedures Order is "so that this Court can consider the relief sought under the [Settlement] Motion, including the Release and Waiver Provisions").)

individuals who are not before the Court and over whom the Court lacks jurisdiction.  Indeed, Co-

Lead Counsel previously admitted that it intentionally sought to avoid Rule 23:

> [A]nd there were a lot of reasons **to pick 9019 over a Rule 23 class settlement** and those reasons included but unlimited [sic] to Danny and I are bankruptcy lawyers, what do we know about class settlements.  ***More specifically, we understood that the MDL had as an open issue class certification and we didn't want to start confusing class certification for the purposes of the MDL and class certifications for the purpose of bankruptcy settlement***.

(Dec.   18,   2017   Hr'g   Tr.,   151:18-152:7   (Bankr.   S.D.N.Y.   Dec.   18,   2017)

(the "**12/18/2017 Hr'g Tr.**").)  As set forth above, Movants cannot choose between Rule 9019 and

Rule 23; rather, they must satisfy ***both*** rules.

58.    Because Movants seek to bind 11.4 million individuals without complying with

Rule 23, they ask this Court to just declare that the Notice Procedures satisfy "federal and state

due process obligations and other applicable law to put Plaintiffs and other parties-in-interest on

notice."  (Proposed Notice Procedures Order p. 2.)  This Court should not "bless" Movants'

unprecedented efforts to avoid Rule 23—the very rule that is, in fact, designed to protect the due

process rights of putative class members.

59.    Movants' proposed non-class procedures do not satisfy the requirements of due

process.  First, Movants (and the GUC Trust Beneficiaries) seek to impose a mandatory Release

and Waiver on 11.4 million individuals, without providing them a right to opt out of the Proposed

Settlement (and releases contained therein) as required under Rule 23(c)(2)(B)(v).  That the Notice

Procedures "allow" individuals "an opportunity and right to be heard by the Court" by filing an

objection is irrelevant; no individual should be required to file and successfully prosecute an

objection rather than exercise his or her due process rights to opt out of a proposed class settlement.

60.    Moreover, the release Movants seek—from individuals this Court does not have

jurisdiction over—is considerably broader than the third-party releases that can be approved during

plan confirmation.  *See, e.g.*, *In re SunEdison, Inc.*, 576 B.R. 453, 460 (Bankr. S.D.N.Y. 2017) (holding that silence does not provide consent when creditors had no identifiable "duty to speak"); *In re Chassix Holdings, Inc.*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015) ("Charging all inactive creditors with full knowledge of the scope and implications of the proposed third party releases, and implying a 'consent' to the third party releases based on the creditors' inaction, is simply not realistic or fair, and would stretch the meaning of 'consent' beyond the breaking point."); *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 268-71 (Bankr. S.D.N.Y. 2014) (rejecting non-consensual release as to equity holders who were not given an opportunity to vote and therefore could not opt out).  Here, no plan is being confirmed.  Moreover, Movants not only seek releases of the GUC Trust (*i.e.*, the debtor), but also seek broad non-consensual releases of a litany of other third-parties, including all past and present GUC Trust Beneficiaries.  Movants' failure to provide an opt-out right is a level of coercion unattainable under Rule 23 or confirmation of a plan.  This Court should not bless an unfair and inequitable approach that **grants** the GUC Trust and the GUC Trust Beneficiaries **greater** protections while simultaneously **eroding** the **preexisting and Constitutionally-mandated** protections available to absent class members.

61.    Movants' non-class procedures fall short of Rule 23's due process protections in other ways too.  For example, Rule 23(e) also requires a court to hold a preliminary hearing to determine whether the proposed settlement terms contain no obvious deficiencies and are capable of being approved as fair, reasonable, and adequate **before** sending any notice of the settlement to members of a certified class.[16]

---

[16]    The Notice Procedures also fail to comply with the Class Action Fairness Act (28 U.S.C. § 1715), which requires that the proponents of a class settlement notify "appropriate State officials" in every state in which a class member resides of the proposed settlement's terms so that appropriate state officials may determine whether applicable state due process obligations are satisfied.  Movants simply request that this Court find that the Notice Procedures "satisfy federal and state due process obligations" without ever notifying the appropriate state officials.

62.     Finally, in addition to providing insufficient information concerning Plaintiffs' projected recoveries under the Proposed Settlement, the Proposed Notice provides misleading information regarding successor liability claims against New GM.  The Proposed Notice states that "[n]othing in the Settlement Agreement is intended to waive any claims against New GM or to be an election of remedies against New GM." (Proposed Long Form Notice p. 6; Proposed Settlement Order ¶ 7.)  However, Co-Lead Counsel acknowledged to this Court that having recourse against Old GM will extinguish Plaintiffs' ability to pursue successor liability claims against New GM. (10/3/2017 Hr'g Tr. 31:7-33:7.)[17]  It is unreasonable to expect millions of individuals—virtually none of whom are represented by counsel—to make legal determinations with respect to successor liability claims, especially when the legal effect that receiving distributions under the Proposed Settlement may have on Plaintiffs' successor liability claims is already before Judge Furman (who in August 2017 requested briefing regarding "any effect [on successor liability claims] of the settlement negotiations or potential settlement between Plaintiffs and the GUC Trust," *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 3382071, at *19 (S.D.N.Y. Aug. 3, 2017)) as part of the MDL. (10/3/2017 Hr'g Tr. 40:1-2 (noting that whether claims against the trust would preclude a successor liability claim is an issue "probably for another judge").)[18]  This Court should not approve a Proposed Notice that fails to inform Plaintiffs of the potential consequences that

---

[17]   "THE COURT:  [I]f the Court permits late claims either individually filed or class claims for personal injury plaintiffs or economic loss plaintiffs, does that mean they don't have claims against New GM? . . . .  MS. CABRASER:  They would still have claims against New GM for -- these would be the independent claims against New GM . . . .  THE COURT:  but they can't assert successor liability claims against New GM based on the due process issue. . . .  MS. CABRASER:  I think -- it's a complicated question, but I think that's correct. . . .  THE COURT:  [T]he fact that you don't recover -- that you recover ten cents on the dollar against the debtor doesn't mean you can sue somebody else for the 90 cents you didn't recover.  You agree with that?  MS. CABRASER:  Yes, Your Honor."

[18]   *See, e.g.*, *Robbins v. Physicians for Women's Health*, LLC, 90 A.3d 925, 929-36 (Conn. 2014) (summarizing law from various jurisdictions on derivative nature of successor liability claim; holding that plaintiff's post-sale settlement with seller containing covenant not to sue barred successor liability claims against buyer).

participation in the Proposed Settlement may have on their successor liability claims against New

GM and fails to inform them that such issues will be determined separately by Judge Furman.

> **e.    New GM Has a Contractual, Direct and Concrete Pecuniary Interest in Ensuring that Rule 23 Is Correctly Applied.**

63.    As the party being asked to pay for the "claims" being "allowed" under the

Proposed Settlement, New GM has a contractual, direct and concrete pecuniary interest in ensuring

that the Notice Procedures are consistent with and meet the standards of applicable law, including

Rule 23.  New GM is entitled to know whether the Proposed Class Claims cover two individuals

or 11.4 million individuals.  If this Court grants the relief requested in the Notice Procedures

Motion, such order will set in motion a process that *assumes* 11.4 million individuals have filed

proofs of claim against Old GM, and therefore can be estimated for the purpose of triggering the

Adjustment Shares, in violation of contractual provisions to which New GM is a party.

64.    Initially, the GUC Trust concedes that New GM is a party to the dispute:

> After the Court issued the Settlement Decision, and after the expiration of
> the forbearance agreement between the GUC Trust and New GM, the GUC
> Trust conducted extensive additional negotiations with both the Plaintiffs
> and New GM.  The Trust also reviewed voluminous materials regarding the
> ***merits and potential value of Plaintiffs' claims that were provided by each
> side of the dispute (i.e., Plaintiffs and New GM)***."

(Settlement Motion ¶ 49 (emphasis added).)  New GM necessarily represents one key side of the

dispute, because without New GM's participation, the estimation hearing would be entirely non-

adversarial (since the party seeking estimation has already settled with the alleged claimant) and

the Court would only hear one side of the story.  Here, the "merits and potential value of Plaintiffs'

claims"—the critical element to New GM's "side"—are inextricably tied to the Notice Procedures,

which seek to engineer a nationwide class consisting of 11.4 million unidentified individuals

without complying with Rule 23.

65.     New GM also has a direct contractual interest, as Section 3.2(c) of the Sale Agreement provides that New GM's obligation to issue Adjustment Shares depends upon a finding by this Court that the estimated aggregate *allowed* general unsecured *claims* against Old GM exceed $35 billion.[19]    The Court can only estimate or allow proofs of claim that have been properly filed under section 501 of the Bankruptcy Code.    Whether the Proposed Class Claims constitute properly filed proofs of claim that can be estimated or allowed depends on whether they meet the requirements of Rule 23.    New GM has an obvious interest in ensuring that the Court only estimate the allowed amounts of properly filed proofs of claim—not *hypothetical* claims.

66.     This Court raised similar concerns at the October 3, 2017 status conference when it asked Co-Lead Counsel:

> [H]ow is it that you propose that . . . potential economic loss claims who haven't filed a late proof of claim, who are not part of a certified class . . . what do they have to do to get any recovery if they're not part of a class, they haven't filed a proof of claim, they haven't filed any pleadings before me? . . . [Is there] authority that people who haven't filed claims and are not part of a certified class will, pursuant to an order I enter, get distributions?

(10/3/2017 Hr'g Tr. 27:20-28:2, 28:14-28:16.)  Co-Lead Counsel answered that such distributions "would happen in a plan of reorganization" (*id.* at 28:18), but only creditors with *allowed* claims receive distributions under a chapter 11 plan.  *See* F.R.B.P. 3021 ("[A]fter a plan is confirmed, distribution shall be made to creditors *whose claims have been allowed* . . . .") (emphasis added).

67.     Separately, New GM has a direct pecuniary interest in the Proposed Settlement.  A "key objective" of the Proposed Settlement is forcing New GM to issue the maximum number of Adjustment Shares.  (Proposed Settlement ¶ NN; *see also In re Motors Liquidation Co.*, 580 B.R. 319, 349 (Bankr. S.D.N.Y. 2018) ("New GM undisputedly has a financial interest in the final

---

[19]    Additionally, New GM has a contractual right under the Side Letter to ensure that the GUC Trust Administrator only seek a Claims Estimate Order under appropriate circumstances, including when it determines that allowed claims are likely to exceed $35 billion (not "could" exceed $35 billion).

outcome or approval of the Settlement Agreement . . . .").)[20]  Because New GM has a "personal

stake in the outcome of the controversy," *Breeden* v. *Kirkpatrick & Lockhart, LLP*, 268 B. R. 704,

708 (S.D.N.Y. 2001) (citations omitted), and the Notice Procedures are integral to the outcome

contemplated by the Proposed Settlement, New GM has a direct and personal stake in the

adjudication of the Notice Procedures Motion.[21]

68.    New GM must therefore have an opportunity to be heard at every stage of these

proceedings, including in connection with the Notice Procedures Motion, which rests on the

improper assumption of a *de facto* nationwide class.  Courts have allowed parties a seat at the table

in similar situations.  *See, e.g.*, *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 204 (3d Cir. 2011)

("[W]hen a federal court gives its approval to a plan that allows a party to put its hands into other

people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate

objections addressed."); *Scott* v. *Residential Capital, LLC (In re Residential Capital, LLC)*, 2015

WL 629416, at *3 (S.D.N.Y. Feb. 13, 2015) ("[C]ourts in this Circuit have held that a party in

interest is one that has a sufficient interest in the outcome of the case that would require

representation, or a pecuniary interest that will be directly affected by the case.").[22]

---

[20]    The Court also stated that "New GM very likely would have a 'personal stake in the outcome of the proceedings' with respect to 'Phase 2' issues, which includes 'whether the Settlement Agreement should be approved under the Bankruptcy Code and applicable bankruptcy and non-bankruptcy law.'"  *Id.* at 350.

[21]    New GM also has standing to be heard on the Proposed Settlement under section 1109(b) of the Bankruptcy Code as a creditor of Old GM.  11 U.S.C. § 1109(b).  New GM timely filed an administrative proof of claim in these chapter 11 cases on April 29, 2011 (proof of claim No. 71111).  On October 21, 2013, the Court entered the *Order Authorizing and Approving the Global Settlement Agreement by and Among the GUC Trust, the GUC Trust Monitor, the Nova Scotia Trustee, New GM, GM Canada and the Representative Noteholders*, ECF No. 12531 (Bankr. S.D.N.Y. Oct. 21, 2013) (the "**Nova Scotia Settlement**") whereby New GM's administrative proof of claim was deemed *partially* withdrawn, but preserved New GM's administrative claim against the GUC Trust for "obligations still owed to or to be performed by the GUC Trust in favor of New GM under the Sale Approval Order, the [Sale Agreement], the Plan, the Confirmation Order, and/or the Transition Services Agreement."  (Nova Scotia Settlement ¶ 13.)

[22]    *See also In re Stone Barn Manhattan LLC*, 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2009) (stating that the law is well settled "that a pecuniary interest directly affected by the bankruptcy proceeding provides standing under § 1109(b)") (citations and internal quotation marks omitted); *In re Standard Insulations, Inc.*, 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992) (holding that insurers exposed to claims against debtor were "parties in interest" under

69.     Finally, because Movants seek to compel New GM to produce voluminous amounts of confidential customer information on an expedited basis—the cost of which Movants ask New GM to bear—New GM has a direct and concrete pecuniary interest in ensuring that the Notice Procedures are proper (*i.e.*, approved on the basis of sound legal authority).  Given the expense and burden on the parties to effectuate the notice program contemplated by the Notice Procedures Motion, all parties have an interest in getting it right on the first try.

## II.     Approving the Notice Procedures Is Futile and Wasteful Because the Proposed Settlement Cannot Be Approved.

70.     Even if this Court determines that Movants could send notice to 11.4 million putative class members without first satisfying Rule 23, the Court should nonetheless decline to do so because the Proposed Settlement is fundamentally and structurally flawed.  As New GM will more fully demonstrate (if necessary) in its opposition to the Settlement Motion and Estimation Motion, the Proposed Settlement is incurably flawed for the following reasons (among others):

Estimation and Allowance of Fictional Claims Cannot Trigger New GM's Obligation to Issue Adjustment Shares

- New GM's obligation to issue Adjustment Shares is tied to this Court's entry of an order that estimates the "aggregate **allowed** general unsecured **claims**" in an amount greater than $35 billion.  The Court can only estimate or allow proofs of claim that have been properly filed.  11 U.S.C. §§ 501, 502.  As set forth herein, the Court cannot estimate "Plaintiffs' claims" without first determining whether the Proposed Class Claims satisfy the standards of Rule 23 or whether it has jurisdiction over the Personal Injury Claims.

- The Proposed Settlement **releases** Plaintiffs' claims against the GUC Trust upon approval of the Settlement Motion and **before** estimation.  Once that release occurs, there will no longer be any "general unsecured claims against Sellers' estates" left for the Court to "estimate" or "allow" pursuant to the Sale Agreement.

- Although Movants assert that the Proposed Settlement estimates claims for "allowance and distribution purposes" (Estimation Motion ¶ 52), it in fact accomplishes neither.  Rather, **after** the Court orders New GM to issue the Adjustment Shares, the Signatory Plaintiffs would establish new procedures to (i) allocate the Settlement Fund between the economic

section 1109(b) where the debtor's "insurance [was] the only asset of consequence" and such insurers were "responsible for payment of injury claims caused by exposure to debtor's products during covered periods").

loss and personal injury Plaintiffs, (ii) allow Plaintiffs to "assert a claim against the Settlement Fund," and (iii) set "criteria" to determine which claims (if any) are "eligible to receive distributions." (Settlement Agreement § 2.11.) If the claims were truly estimated for purposes of allowance (*i.e.*, the only way to trigger the issuance of Adjustment Shares), then these procedures would not be necessary.

<u>The Proposed Settlement Violates the GUC Trust Agreement and Plan</u>

- The GUC Trust Administrator is a fiduciary and must exercise its power in a manner that is consistent with the purpose of the GUC Trust Agreement, including to only seek the Adjustment Shares "when and as appropriate," and when the GUC Trust is "so entitled." (GUC Trust Agreement §§ 2.3(d), 2.4.) The GUC Trust must exercise good faith judgment. (*Id*. § 8.1(b).) The GUC Trust Administrator further agreed with New GM that it would only seek a Claims Estimate Order if it determined that "allowed *eligible claims are likely to exceed*" $35 billion. (Side Letter.) The GUC Trust Administrator's request for Adjustment Shares under the Proposed Settlement violates these contractual requirements. It does not know which claims have been properly filed, seeks to estimate Plaintiffs' claims without *any* factual discovery, and—tellingly—has not said that it believes claims are *likely* to exceed $35 billion. The GUC Trust is of the mistaken belief that, like an interpleader action, it can throw the ball in the air and ask the Court to sort through the issues rather than taking a position itself.

- The GUC Trust and GUC Trust Beneficiaries will have received a release from all Plaintiffs *before* they seek to estimate their claims. As a result, the GUC Trust will have no incentive to ensure that only meritorious claims are allowed. The GUC Trust Administrator has abdicated its duty to evaluate claims and assert meritorious defenses.

- The Proposed Settlement purportedly settles the issues in the Late Claims Motions (*i.e.*, late claims, laches, equitable mootness), but the result of the Proposed Settlement is that all of these issues are decided in favor of Plaintiffs (*e.g.*, all late claims are allowed to be filed). The Proposed Settlement therefore unrealistically reflects Signatory Plaintiffs having a 100% chance of success on each of the issues being "settled."

- Under the GUC Trust Agreement, Adjustment Shares can only be issued to GUC Trust Beneficiaries. (GUC Trust Agreement § 5.4(b).) The Proposed Settlement explicitly provides that Plaintiffs are not GUC Trust Beneficiaries. (Settlement Agreement § 1.25.) Accordingly, the Proposed Settlement would require New GM to issue Adjustment Shares to individuals that are not entitled to them under the GUC Trust Agreement.

- As the GUC Trust Administrator previously acknowledged, Plaintiffs were never GUC Trust Beneficiaries (and therefore never entitled to Adjustment Shares), because that term is defined only to include holders of Disputed Claims *as of the Plan's effective date*. (GUC Trust Agreement ¶ F; *GUC Trust Administrator Letter, Dated December 13, 2016*, MDL ECF No. 3588 (S.D.N.Y. Dec. 13, 2016) ("GUC Trust Beneficiaries . . . do[] not include the holders of claims filed *after* the effective date."); Side Letter (noting that parties intended to delay estimation given "ongoing litigation with respect to Disputed Claims").)

36

- The GUC Trust Administrator is required to distribute GUC Trust Assets (including the Adjustment Shares) "on a pro rata basis" to GUC Trust Beneficiaries. (GUC Trust Agreement § 5.4(b).) The Proposed Settlement, however, provides that Plaintiffs will receive the Adjustment Shares on a non-pro rata basis. It further provides that the remaining $485 million in net GUC Trust Assets will be distributed on a non-pro rata basis to the GUC Trust Beneficiaries (and not Plaintiffs). Because the Plan has been substantially consummated, Movants lack authority to implement these modifications to the Plan, the GUC Trust Agreement and the Sale Agreement.

- Pursuant to the Plan, once a disputed claim is "allowed," the GUC Trust Administrator must make a distribution on the claims on the next applicable distribution date equal to "the distributions, if any, that such holder would have received had its Claim been allowed on the Effective Date." (Plan § 7.4.) The Proposed Settlement "allows" the Plaintiffs' claims but then requires them to submit to an additional claims reconciliation process developed by Signatory Plaintiffs, which is also an improper Plan modification.

Jurisdictional Defects

- As addressed above, counsel for the Signatory Plaintiffs do not represent and cannot bind 11.4 million individuals to the Proposed Settlement. Similarly, this Court does not have jurisdiction over 11.4 million individuals because they have not filed claims or been included in a certified class.

- Absent Pre-Closing Accident Plaintiffs' consent, the Court cannot liquidate or estimate personal injury or wrongful death claims. *See* 28 U.S.C. § 157(b). The Pre-Closing Accident Plaintiffs have not consented to estimation of their personal injury claims by this Court. (Settlement Motion ¶ 51(e).) The Proposed Settlement further seeks to resolve the personal injury claims of any party who suffered a personal injury based on or arising from an accident that occurred prior to the Closing Date. None of these unnamed personal injury plaintiffs have consented to the Court's jurisdiction to estimate and liquidate their claims.

There Is No Basis for Estimating Claims under Section 502(c)

- Movants do not request estimation for the purpose of expediting case administration (since, as discussed above, Signatory Plaintiffs still have to approve allocation and claim procedures for Plaintiffs to make claims on the Settlement Fund), but instead improperly rely on section 502(c) of the Bankruptcy Code to deprive the Court and New GM of a robust factual record on which to evaluate Plaintiffs' claims.

- Because the Plan has already been confirmed, there is no need to estimate claims when the Pre-Sale Accident Claims have to be resolved in the District Court anyway (see above) and the Proposed Class Claims will be timely resolved in the MDL.

37

<u>The Value of the Plaintiffs' Claims Is Not Sufficient to Trigger the Adjustment Shares</u>

▪   The report of Co-Lead Counsel's purported expert, Stefan Boedeker, which relies upon a scientifically and economically invalid methodology that will be subject to *Daubert* briefing in the MDL Court next month, will be the principal evidence that Movants ask this Court to evaluate at the estimation hearing with respect to the Proposed Class Claims. (Settlement Motion ¶¶ 43-44.)  New GM will soon seek to exclude Boedeker's analysis in MDL 2543.

▪   The valuation of personal injury damages by Personal Injury Plaintiffs' purported expert, W. Mark Lanier, is likewise inadmissible.  Mr. Lanier's report includes cases where no proof of claim was filed, the values given are grossly excessive, and some of the data is wrong.  Contrary to Mr. Lanier's report, punitive damages are not available for plaintiffs' claims against the GUC Trust.  *See In re Motors Liquidation Co.*, 571 B.R. 565, 580 (Bankr. S.D.N.Y. 2017) ("Old GM was deeply insolvent, and it would have never been liable for punitive damages . . . .").

▪   The economic loss claims are subject to the same legal defects in this Court that the MDL Court has already decided—or will shortly decide—for various jurisdictions, such as being barred by the manifest defect rule or the benefit of the bargain doctrine.  For example, Judge Furman has already ruled that certain states require a manifest defect.  *See, e.g., In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 430-31, 452 (S.D.N.Y. 2017) (so holding under New York and Texas law).  Nonetheless, individuals from those states are included in the Proposed Settlement regardless of whether they have proved a manifest defect, and Movants propose to allow their claims without ***any*** fact discovery.

## III.    <u>The GUC Trust Cannot Use Bankruptcy Rule 2004 to Obtain New GM's Confidential Customer Information.</u>

71.    Movants incorrectly claim that the discovery rules, and in particular, Bankruptcy Rule 2004, permit them to force New GM to provide the customer information that they need to send the Proposed Notice.  But just as Movants improperly attempt to use the Proposed Notice to bind non-parties without the due process protections of Rule 23, they likewise improperly rely on the discovery rules and Bankruptcy Rule 2004, even though "Rule 23 . . . deals comprehensively with class actions, and thus is the natural place to look for authority for orders regulating the sending of notice."  *Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 354 (1978).  Again, Movants' reliance on Rule 2004 only underscores the extent to which they seek to avoid application of Rule 23.

72.     In contrast to Rule 23, "Rule 2004 is intended to permit the debtor and other estate fiduciaries and court-appointed officers, as needed, to determine the extent of the estate's assets and recover those assets for the benefit of creditors." *In re MF Global Inc.*, 2013 WL 74580, at *1 (Bankr. S.D.N.Y. Jan. 8, 2013); F.R.B.P. 2004(b) (examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge"). Indeed, an examination under Bankruptcy Rule 2004 "cannot stray into matters which are not relevant to the basic inquiry." *In re MF Global Inc.*, 2013 WL 74580, at *1 (citations and internal quotation marks omitted).  The federal discovery rules, in turn, permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." F.R.C.P. 26(b)(1).  While Rule 2004 permits discovery regarding the "liabilities" of the debtor, Movants claim to have ***already settled*** all Plaintiffs' claims.  Movants cannot possibly maintain that they need Rule 2004 discovery to ascertain the nature or extent of Old GM's liabilities ***after*** they have entered into a settlement that purportedly resolves such liabilities.  What Movants seek instead is Rule 23 notice information.

73.     The Supreme Court has rejected the argument that discovery procedures may be used as a tool to obtain information for a class action notice—which, as discussed above, is the only type of notice that could potentially be used to legally bind the millions of non-parties here:

> Although respondents' request resembles discovery in that it seeks to obtain information, we are convinced that it more properly is handled under Rule 23(d). The critical point is that the information is sought to facilitate the sending of notice rather than to define or clarify issues in the case.

*Oppenheimer Fund, Inc.*, 437 U.S. at 350; *see also Knutson* v. *Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 557 (D. Minn. 2008) (denying plaintiff's request to obtain contact information for other potential plaintiffs because "the discovery [plaintiff] seeks does not fall within the ambit of

Federal Rule of Civil Procedure 26(b) (1). That Rule authorizes discovery only of matters that are 'relevant to any party's claim or defense.' Discovery sought solely for the purpose of inviting others to join this litigation would not achieve this purpose and would not be not relevant to the particular claims and defenses currently asserted in this case."). Similarly, here, Rule 23 provides the only possible source of authority—following a formal request for class certification and preliminary findings on the appropriateness of a class and on the fairness of the proposed settlement—for an order requiring New GM to produce customer information for notice purposes.

74.    Moreover, Movants' request would place an undue burden on New GM, which does not have all of the responsive historical information sought by Movants. While it does have a record of persons who received the recall notices in 2014, it does not keep records related to the complete ownership history of the millions of vehicles subject to those recalls, much less for the period up to July 10, 2009. To the extent such historical information is available (in some cases it would relate to transactions that are over 20 years old), New GM must obtain it from a vendor, which will cause New GM to incur significant costs. New GM respectfully submits that such a project should not be commenced until a court first determines the appropriate Rule 23 class or classes (if any) that are entitled to receive notice of the Proposed Settlement. If this Court is inclined to grant the relief requested in the Notice Procedures Motion, then New GM respectfully requests that it be allowed to coordinate in good faith with its vendor and Movants to establish a reasonable timeframe for obtaining, producing, and protecting the requested customer information.

## CONCLUSION

WHEREFORE, for all of the reasons stated above, New GM respectfully requests that this Court (a) deny the relief requested in the Notice Procedures Motion and (b) grant such other and further relief as is just and proper.

40

Dated: May 22, 2018
      New York, New York

                                        */s/ Paul M. Basta*    _____
Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*and*

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Counsel for General Motors LLC*