Objection Deadline: [To Be Determined]
Hearing Date:  [To Be Determined]

Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Counsel for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.*, | Case No. 09-50026 (MG) |
| Debtors. | (Jointly Administered) |

**GENERAL MOTORS LLC'S MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE TO (A) STAY CERTAIN PROCEEDINGS RELATING TO THE PROPOSED SETTLEMENT AND (B) GRANT RELATED RELIEF**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 13

I.      The Sale Agreement And Adjustment Shares Provisions................................... 13

II.     The MDL 2543 Litigation................................................................................... 15

III.    The Late-Filed Claims. ...................................................................................... 17

IV.     The Proposed Settlement. ................................................................................... 20

JURISDICTION ............................................................................................................ 24

RELIEF REQUESTED.................................................................................................. 24

ARGUMENT ................................................................................................................. 24

I.      A  Temporary Stay of Proceedings Promotes Judicial Economy and Avoids
        Potentially Inconsistent Results. ........................................................................ 26

        A.      A Stay Will Prevent Duplicative and Potentially Inconsistent Rule 23
                Class Certification Determinations. ....................................................... 29

        B.      A Stay Is Necessary To Prevent Simultaneous and Misleading Notices. ............. 32

        C.      A Stay Will Prevent Conflicting Legal and Factual Determinations
                Relating to Economic Loss Claims......................................................... 34

        D.      A Stay Likely Will Prevent Unnecessary Proceedings in This Court. ................. 36

        E.      A Stay Is Warranted Due to the Overlap Between The Same Personal
                Injury Claims Filed in Both Courts......................................................... 36

II.     A Stay Will Not Unduly Prejudice Any Party. .................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Ahead By A Length, Inc.*,
   78 B.R. 708 (Bankr. S.D.N.Y. 1987) ..................................................................25

*Amchem Prods., Inc.* v. *Windsor*,
   521 U.S. 591 (1997) ..........................................................................................30

*In re Bally Total Fitness of Greater N.Y., Inc.*,
   402 B.R. 616 (Bankr. S.D.N.Y. 2009) ..............................................................29

*In re Bird*,
   229 B.R. 90 (Bankr. S.D.N.Y. 1999) ................................................................25

*In re Delphi Corp.*,
   Case No. 05-44481 (RDD), ECF No. 9105 (Bankr. S.D.N.Y. Aug. 16, 2007) ......25

*In re Enron Corp.*,
   2006 WL 544463 (Bankr. S.D.N.Y. January 17, 2006) .........................................33

*In re Enron Corp.*,
   Case No. 01-16034 (AJG), ECF No. 18230 (Bankr. S.D.N.Y. May 5, 2004) ........25

*In re Fed.-Mogul Glob., Inc.*,
   330 B.R. 133 (D. Del. 2005) .............................................................................34

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) ....................................................6

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2017 WL 2839154 (S.D.N.Y. June 30, 2017) ..............................................6, 34

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2018 WL 1638096 (S.D.N.Y. Apr. 3, 2018) .....................................................28

*In re Gen. Motors LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017) ...............................................................28

*In re Gen. Motors LLC Ignition Switch Litig.*,
   MDL ECF No. 4838 (S.D.N.Y. Nov. 11, 2017) ................................................16

*In re Gen. Motors LLC Ignition Switch Litig.*,
   MDL ECF No. 4905 (S.D.N.Y. Dec. 28, 2017) ............................................27, 37

*In re Gen. Motors LLC Ignition Switch Litig.*,
    MDL ECF No. 5385 (S.D.N.Y. Apr. 15, 2018)........................................................31

*In re Hagerstown Fiber Ltd. P'ship*,
    277 B.R. 181 (Bankr. S.D.N.Y. 2002) ...........................................................24, 25

*In re Hyundai and Kia Fuel Econ. Litig.*,
    881 F.3d 679 (9th Cir. 2018) .........................................................................5, 30

*Landis* v. *N. Am. Co.*,
    299 U.S. 248 (1936)..................................................................................10, 24

*In re Lehman Bros. Holdings Inc.*,
    Case No. 08-13555 (SCC), ECF No. 42417 (Bankr. S.D.N.Y. Jan. 31, 2014) ......................25

*In re MF Global Holdings, Ltd.*,
    464 B.R. 619 (Bankr. S.D.N.Y. 2012) ...................................................................25

*In re Motors Liquidation Co.*,
    447 B.R. 150 (Bankr. S.D.N.Y. 2011) ...................................................................29

*In re Motors Liquidation Co.*,
    829 F.3d 135 (2d Cir. 2016).............................................................................15

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007)....................................................................29

*In re Parmalat Finanziaria S.p.A.*,
    320 B.R. 46 (S.D.N.Y. 2005).............................................................................11

*In re Partsearch Techs., Inc.*,
    453 B.R. 84 (Bankr. S.D.N.Y. 2011).....................................................................30

*Robbins* v. *Physicians for Women's Health, LLC*,
    90 A.3d 925 (Conn. 2014) ...............................................................................33

*In re Rosenblum*,
    545 B.R. 846 (Bankr. E.D. Pa. 2016) ...................................................................25

*In re S.W. Bach & Co.*,
    425 B.R. 78 (Bankr. S.D.N.Y. 2010)................................................................10, 25

*Schoenbaum* v. *E.I. Dupont De Nemours and Co.*,
    2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ..........................................................30, 31

*In re Siegmund Strauss, Inc.*,
    2013 WL 3784148 (Bankr. S.D.N.Y. July 17, 2013) .......................................................34

*In re WorldCom, Inc.*,
    347 B.R. 123 (Bankr. S.D.N.Y. 2006) ................................................................................30

**STATUTES**

28 U.S.C. § 105(a) ...........................................................................................................24

28 U.S.C. § 157.........................................................................................7, 12, 24, 37, 38

28 U.S.C. § 1334 ..............................................................................................................24

28 U.S.C. § 1408 ..............................................................................................................24

28 U.S.C. §1409................................................................................................................24

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3002.......................................................................................................1

Fed. R. Bankr. P. 9019.....................................................................................................30

Fed. R. Civ. P. 23................................................................................................... *passim*

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC ("**New GM**") submits this motion (the "**Motion**") and respectfully

represents:[1]

## INTRODUCTION

1.      Beginning on May 2, 2018, the GUC Trust filed three related motions seeking

approval of a settlement (the "**Proposed Settlement**"), with the support of the Signatory Plaintiffs

(together with the GUC Trust, the "**Movants**").   Many of the issues raised in the Proposed

Settlement and related motions substantially overlap with and duplicate issues before the District

Court for the Southern District of New York (the "**MDL Court**") overseeing multi-district

litigation 2543 (the "**MDL**").  If the Court proceeds to consider or approve the Proposed Settlement

now, it risks the real possibility that the MDL Court, which is considering identical or closely

related issues based on a more complete record, may subsequently conclude that key tenets

underlying the Proposed Settlement are not valid, thereby creating additional complex and time

consuming legal issues.   The best way to avoid this risk of inconsistent outcomes, while also

ensuring that this Court only estimates actually filed and meritorious claims in connection with the

Proposed Settlement, is for this Court to stay certain proceedings related to the Proposed

Settlement.   In particular, while the Court should proceed to decide the substantive issues raised

by the Notice Procedures Motion, such as whether Movants must comply with the requirements

for class certification under Rule 23 of the Federal Rules of Civil Procedures ("**Rule 23**"), the

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the *Motion of the Motors Liquidation GUC Trust to Approve (I) The GUC Trust Administrator's Actions and (II) The Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002 and 9019 and to (III) Authorize the Reallocation of GUC Trust Assets*, ECF No. 14293 (Bankr. S.D.N.Y. May 3, 2018) (the "**Settlement Motion**").

Court should stay further proceedings related to the Proposed Settlement to the extent they overlap with issues that the MDL Court will soon decide.

<u>The Proposed Settlement</u>

2.      A "***key objective***" of the Proposed Settlement is to allow $10 billion in general unsecured claims against the GUC Trust, most of which are hypothetical and have never been filed, for the sole and express purpose of requiring New GM to issue "the maximum amount of Adjustment Shares." (Settlement Agreement ¶ NN.) The GUC Trust's entitlement to "Adjustment Shares" arises out of New GM's agreement, as part of the July 2009 Sale Agreement, to issue additional common stock for the benefit of ***all*** Old GM general unsecured creditors once this Court has determined "that the estimated aggregate allowed general unsecured claims" exceed $35 billion.  The GUC Trust Administrator is obligated under the Sale Agreement and GUC Trust Agreement to use good faith judgment and only seek the issuance of the Adjustment Shares "when and as appropriate" and, in particular, when it determines that "allowed eligible claims are ***likely*** to exceed $35 billion."[2] Currently, allowed general unsecured claims against Old GM total $31.86 billion, and therefore an estimated $10 billion in additional unsecured claims must be allowed before the maximum amount of Adjustment Shares can be triggered.

3.      To meet its objective of allowing $10 billion in additional claims, the Proposed Settlement is structured so that the GUC Trust "consents to the late filing of the Proofs of Claim," which includes proofs of claim filed by:  (1) 519 individual Pre-Closing Accident Plaintiffs[3] asserting Personal Injury Claims, and (2) Patricia Barker and Yvonne James-Bivins, who sought

---

[2]    (*Letter Agreement Dated Sept. 23, 2011*, ECF No. 14095 (Bankr. S.D.N.Y. Sept. 12, 2017) (the "**<u>Side Letter</u>**").)

[3]    While Schedule 2 to the Settlement Agreement lists 549 personal injury Signatory Plaintiffs, the Late Claims Motions that contained proofs of claim as exhibits only seek leave to file late proofs of claim for 519 personal injury claimants (after accounting for 7 personal injury claimants who withdrew their claims).

leave to file Proposed Class Claims "on behalf of a proposed Nationwide Class under B.R. 7023" for Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs, respectively.[4]  (Settlement Agreement § 2.5.)  The putative nationwide classes, which would include approximately 11.4 million individuals if ever certified, are critical to the attempt to reach the contractual threshold to trigger the Adjustment Shares because the Personal Injury Claims alone do not come close to exceeding $3 billion.

4.     For this reason, each "stage" of the Proposed Settlement ***presumes the certification*** and existence of nationwide classes of 11.4 million individuals, even though no court has certified any class under Rule 23.[5]  Indeed, the fatal flaw of the Proposed Settlement is the GUC Trust's unprecedented attempt to settle and release the claims of 11.4 million putative class members, most of whom never filed proofs of claim, never consented to the jurisdiction of this Court, are not parties to the Proposed Settlement, and are not represented by Co-Lead Counsel.  To accomplish this feat, the GUC Trust, instead of first asking this Court to certify under Rule 23 the putative class claims that were actually filed, seeks instead to send notice to 11.4 million individuals and then have this Court "deem" them bound to the Proposed Settlement, without the protections afforded by Rule 23, including the right to know, in sufficient detail, how the Proposed Settlement actually impacts them and the right to opt out of the Proposed Settlement.  According to the GUC

---

[4]   On April 24, 2018, Co-Lead Counsel filed a pleading purporting to amend these Proposed Class Claims to, among other things, add dozens of additional proposed class representatives, many of whom are also named plaintiffs in the MDL.  New GM reserves all rights to object to, or raise any arguments or defenses in respect of, Co-Lead Counsel's purported amendments to the Proposed Class Claims.

[5]   (*See* Notice Procedures Motion p. 15 (seeking permission to "provide notice of the Settlement Agreement to all Plaintiffs"); Settlement Motion ¶ 1 (Proposed Settlement resolves "piecemeal litigation of Plaintiffs' claims"); Estimation Motion ¶ 54; Proposed Estimation Order ¶¶ 4, 8 (seeking an order estimating "Plaintiffs' aggregate allowed General Unsecured Claims" "on a class wide basis" and directing that the Adjustment Shares "be reserved for the exclusive benefit of the Plaintiffs").)  "Plaintiffs" is broadly defined in the Settlement Agreement to include all 11.4 million putative members of the nationwide classes alleged in the Proposed Class Claims.  (Settlement Agreement § 1.52.)

Trust, once these 11.4 million individuals are "deemed" bound, then the GUC Trust will ask this

Court to estimate the claims they did not file, and conclude that such hypothetical claims "could"

exceed $10 billion, purportedly triggering the maximum number of Adjustment Shares.

<u>The Overlap with the MDL Proceedings</u>

5.      At every stage of the Proposed Settlement, this Court will be asked to decide issues

that are identical to or overlap substantially with the MDL proceedings.

6.      In considering the Notice Procedures Motion and Settlement Motion, this Court

will be required to address whether nationwide classes exist under Rule 23, as Movants plainly

assume but no court has decided.  As set forth in New GM's opposition to the Notice Procedures

Motion, filed concurrently herewith, Movants have not only put the proverbial cart (*i.e.*, settling

the claims of 11.4 million individuals) before the horse (*i.e.*, certifying nationwide classes of 11.4

million individuals under Rule 23), they have abandoned the horse altogether.  But, under well-

settled law, Movants cannot propose—and this Court cannot approve—a settlement affecting 11.4

million individuals without *first* deciding whether such classes can properly be certified and, if so,

actually certifying those classes under Rule 23.  Otherwise, the only claims capable of being settled

are those of the individually-named plaintiffs that filed proofs of claim.

7.      Thus, notwithstanding Movants' clear efforts to avoid it, the class certification

question is a substantial issue that affects consideration of the Notice Procedures Motion, the

Settlement Motion and the Estimation Motion.  It cannot be ignored.  Specifically, the Court will

have to determine (i) whether the GUC Trust can and should send a notice to all Plaintiffs *before*

a class is certified, class counsel is appointed and a preliminary finding is made that the Proposed

Settlement terms are fair, reasonable and adequate and (ii) whether this Court can deem 11.4

million individuals to be parties to the Proposed Settlement that have released their claims against

the GUC Trust and the GUC Trust Beneficiaries, without first certifying a class under Rule 23.

Ultimately, the Court will be required to address the same Rule 23 issues that the MDL Court will

soon address.  In particular:

- The Proposed Settlement presumes the certification of putative economic loss classes containing 11.4 million purportedly "common" claims of the **same** economic loss claimants who are putative class members in the MDL.

- The two individuals who initially sought authorization to file Proposed Class Claims are both putative class representatives in the MDL.  The individuals that Signatory Plaintiffs purported to add through their recent amendments to the Proposed Class Claims are also current or former named plaintiffs in the MDL.

8.      In the MDL, plaintiffs originally sought a nationwide class but, following certain

rulings by the MDL Court on motions to dismiss and briefing on choice-of-law issues, abandoned

certification of a nationwide class to pursue class certification in certain "bellwether" states.[6]  Class

certification in three major states (California, Missouri and Texas) is squarely presented to the

MDL Court and will be briefed based upon a detailed factual record over the next few months.  On

June 29, 2018, Signatory Plaintiffs will file their motion for Rule 23 class certification in the MDL

Court, New GM will file its opposition on August 24, 2018, briefing will be complete by

September 21, 2018, and the MDL Court will hold a class certification hearing shortly thereafter.

Despite this schedule, Movants improperly ask this Court to approve the Notice Procedures Motion

and send notice of the Proposed Settlement to 11.4 million "Plaintiffs" before the MDL Court has

an opportunity to determine what (if any) classes are proper.  It is inappropriate and does not make

sense to approve the Notice Procedures Motion or the Settlement Motion—both of which are

---

[6]      Co-Lead Counsel's request for a ***nationwide*** class before this Court is notable given the "grave concerns about the viability of a nationwide class" in similar situations.  *In re Hyundai and Kia Fuel Econ. Litig.*, 881 F.3d 679, 705 (9th Cir. 2018).

premised on the assumption of *de facto* certified nationwide classes—before the MDL Court determines compliance with Rule 23.[7]

9.    Next, in considering the Estimation Motion, this Court will be asked to estimate "Plaintiffs' claims" for "allowance and distribution purposes."    (Estimation Motion ¶ 52.) Movants envision that this Court would hold an estimation hearing on October 31, 2018 (although the deadlines set forth in the Notice Procedures Motion and Settlement Motion require that the estimation hearing would not occur until **December 2018** (*see* New GM's *Proposed Schedule for Motions filed by the GUC Trust with respect to a Proposed Settlement with Signatory Plaintiffs* dated May 22, 2018 ("**New GM's Proposed Schedule**"), filed concurrently herewith).    In estimating Plaintiffs' claims for purposes of allowance, the Court will be asked to adjudicate numerous factual and legal issues that are simultaneously before the MDL Court.  For example:

- The same Recalls at issue in "Plaintiffs' claims" are also at issue in the MDL.[8]

- Most of the same counsel that filed the Personal Injury Claims and Proposed Class Claims in this Court and executed the Proposed Settlement are also actively involved in the MDL and for years have been litigating many of the same issues for the MDL plaintiffs.  In fact, most are the Lead Counsel for plaintiffs in the MDL, appointed by the MDL Court to serve that administrative purpose.

- The personal injury claimants include 302 individuals that first filed their personal injury and wrongful death claims in the MDL and then, years later, filed the exact same Personal Injury Claims in this Court.  These 302 personal injury claims allegedly arise from the same alleged defects and involve the same legal theories, and New GM has several of the same defenses to these claims.  Moreover, these personal injury claimants have not consented to this Court's jurisdiction over their

---

[7]    In fact, the MDL Court already has reached conclusions that preclude nationwide classes, particularly given the fundamental variances in state law.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *16 (S.D.N.Y. July 15, 2016) (the "**TACC Order**") (dismissing plaintiffs' proposed nationwide RICO claim); *see generally id.*; *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2839154 (S.D.N.Y. June 30, 2017) (analyzing the different common law and statutes in various states).

[8]    These recalls are: (a) Recall No. 14-V-047 (Ignition Switch); (b) Recall Nos. 14-V-355, 14-V-394, 14-V-540 and 14-V-400 (Key Bump and Inadvertent Rotation); (c) Recall No. 14-V-118 (Side Airbags); and (d) Recall No. 14-V-153 (Power Steering).

Personal Injury Claims, insisting that their claims must be tried in the MDL Court pursuant to 28 U.S.C. § 157(b)(5).

- The MDL Court has approved and ordered motion practice addressing the merits of the Personal Injury Claims that would be settled and estimated by the Proposed Settlement. As part of that process in the MDL Court, the parties and the MDL Court will consider and apply New GM's recognized defenses relating to, among other things, pleading requirements, airbag deployment, lack of or alternative causation, statute of limitations, and statute of repose. Notably, a similar process in the MDL in connection with post-Sale accident plaintiffs has recently resulted in the dismissal of more than 310 MDL plaintiffs.

- The Proposed Class Claims include the same economic loss causes of action asserted in the MDL, including: (i) fraudulent concealment; (ii) unjust enrichment; (iii) consumer protection claims; (iv) breach of the implied warranty of merchantability; and (v) negligence. And the Proposed Class Claims are subject to the same legal defenses in this Court that the MDL Court has already decided for certain jurisdictions, such as being barred by the manifest defect rule or the benefit of the bargain doctrine.

- The Ignition Switch Defect claims being litigated against New GM in the MDL Court are based on a successor liability theory. These successor liability claims overlap with the claims asserted in this Court and subject to the Proposed Settlement (both claims require proof of Old GM's underlying liability).

- The report of Co-Lead Counsel's purported expert, Stefan Boedeker—which relies upon a scientifically and economically rejected methodology that will be subject to *Daubert* briefing in the MDL Court—will be the principal evidence that Movants ask this Court to evaluate at the estimation hearing with respect to the Proposed Class Claims. (Settlement Motion ¶¶ 43-44.)

10.    The above issues are squarely presented to the MDL Court and will be briefed this summer. On June 29, 2018, New GM will file its *Daubert* motion regarding Mr. Boedeker's expert reports and opinions as well as its summary judgment motion as to various of the above claims. On August 24, 2018, Signatory Plaintiffs will file their opposition to the motions, briefing will be complete by October 12, 2018 and the MDL Court will hold hearings following the completion of briefing. Accordingly, the MDL Court will decide fundamental issues that directly affect the validity and amount of "Plaintiffs' claims." Importantly, and as New GM will explain in connection with its opposition to the Settlement Motion, the inputs for determining the estimated

7

amount of "Plaintiffs' claims" will come from the decisions of the MDL Court on these overlapping issues. Estimating the amount of "Plaintiffs' claims" will not expedite matters when Movants' proposed estimation hearing would occur almost simultaneously with the MDL Court's hearing on the same issues.

11.    The overlap of issues raised by the Proposed Settlement and in the MDL is undeniable, and begins with consideration of the Notice Procedure Motion and continues through Movants' proposed estimation.

<u>The Proposed Stay</u>

12.    Given the overlap of issues raised by the Proposed Settlement with the issues in the MDL Court, New GM respectfully requests that this Court stay certain proceedings related to the Proposed Settlement until such time that the MDL Court addresses certain threshold issues such as class certification, summary judgment, and the admissibility and validity of Signatory Plaintiffs' expert reports. New GM, however, does not seek a stay of all proceedings and recognizes that this Court can adjudicate certain issues raised in or related to the Proposed Settlement that will not be decided by the MDL Court. For example:

- This Court could decide New GM's objections to the Notice Procedures Motion, including whether Signatory Plaintiffs or this Court have authority to bind 11.4 million individuals, nearly all of whom have never filed a claim, to the Proposed Settlement without first seeking class certification under Rule 23. This issue will not be addressed in the MDL because the MDL plaintiffs have already acknowledged that Rule 23 certification is required. If the Court agrees with New GM that Movants must first seek certification of a class, then the Court should defer to the MDL Court's adjudication of that issue, as set forth herein.

- This Court may decide whether Signatory Plaintiffs are entitled to file late claims, or whether the Proposed Class Claims and Personal Injury Claims are barred by laches or pursuant to prior rulings of this Court (including the deadlines for filing claims in the 2016 Threshold Issues Order).

- This Court may proceed to adjudicate other issues implicated by the Proposed Settlement, such as the GUC Trust's compliance with obligations under the Sale

Agreement, the Plan and GUC Trust Agreement, the propriety of the releases in the Proposed Settlement, or whether the Proposed Settlement constitutes an impermissible modification to the substantially consummated Plan.

13.     Further, the Court could order the parties to attend mediation even if the Court agrees to stay certain proceedings, as the Court recently suggested.  (*Order re Case Management Conference Regarding Proposed Settlement*, ECF No. 14301 (Bankr. S.D.N.Y. May 10, 2018) (the "**May 10th Order**").)  Consistent with New GM's successful settlements in these matters— starting with the GM Ignition Compensation Claims Resolution Facility administered by Kenneth Feinberg in 2014, and continuing in the MDL—New GM would agree to participate in mediation with Movants and work in good faith to consensually resolve as many issues as possible, focusing initially on certain personal injury claims and using the factual information that hundreds of them have already been ordered to produce in the MDL.  (*See MDL Order 148 [Amended]*, MDL ECF No. 5373 (S.D.N.Y. Apr. 12, 2018) Section II ¶ 3 (requiring pre-Sale personal injury plaintiffs to produce to New GM specified categories of information and documents relating to their vehicles and claims by July 2018).)  Movants have spent more than a year devising settlement structures to compel New GM's issuance of Adjustment Shares while ensuring that the GUC Trust makes only a *de minimis* contribution to the claims asserted against it.  Instead of tying personal injury claims to putative economic loss class claims in an artificial, complex and uncertain manner, New GM would commit to having meaningful and substantive settlement discussions with the GUC Trust and certain pre-Sale personal injury claimants on legally viable claims that are informed by the evidence relating to the facts and circumstances of the individual crashes and damages claims, allowing all parties to evaluate the settlement values, if any, of each claim.[9]  As for the putative

---

[9]     169 of the 302 pre-Sale claims by personal injury claimants who have claims in both the MDL and this Court were filed with and rejected by the GM Ignition Compensation Claims Resolution Facility administered by Kenneth Feinberg.  11 of the 192 pre-Sale personal injury claims pending only in this Court were also rejected.

economic loss class claimants, it would be productive to fold their mediation into the existing

MDL-ordered mediation, after the MDL Court issues important *Daubert*, substantive summary

judgment and class certification rulings later this year, to the extent any such claims remain.

14.     In short, the Court can approve the proposed stay and still ensure that meaningful

progress is made in this Court.  To be sure, while the stay is in effect, progress in resolving issues

in this Court will also be made by the ongoing proceedings in the MDL Court.  It is axiomatic that

every court has "the power to stay proceedings . . . to control the disposition of the cases on its

docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis* v. *N. Am.

Co.*, 299 U.S. 248, 254 (1936).  Bankruptcy courts routinely decide to stay matters when doing so

will "promote judicial economy, avoidance of confusion and possible inconsistent results without

working an undue hardship or prejudice against the plaintiff."  *In re S.W. Bach & Co.*, 425 B.R.

78, 98 (Bankr. S.D.N.Y. 2010) (Glenn, J.) (citations and internal quotation marks omitted).  A

temporary stay is appropriate in the unique circumstances of this case for several reasons:

15.     *First*, a stay would significantly promote judicial economy.  Although this Court is

quite familiar with Old GM's restructuring, the MDL Court has lived with the specific factual,

technical and legal issues raised by the claims that form the core foundation of the Proposed

Settlement for nearly four years, overseen massive discovery and motion practice, conducted

bellwether trials, and developed expertise on the exact same underlying personal injury/wrongful

death and economic loss claims Movants purport to settle.  The MDL Court has also ruled on over

200 motions, including *Daubert* and summary judgment motions, building up an extensive

knowledge of the relevant facts and law that underlie the claims at issue.  It would be an inefficient

use of judicial resources and an unnecessary burden on all parties to have two courts—the MDL

Court and this Court—decide the same factual and legal issues one after the other (or at substantially the same time).

16.     *Second*, a stay will allow this Court and all parties in interest to benefit from work already accomplished (and soon to be accomplished) in the MDL Court.  The parties will be far better equipped to proceed with and expeditiously resolve the Late Claims Motions and the underlying claims if they first know whether any classes can be certified in the MDL Court and whether the Signatory Plaintiffs' expert reports are admissible, legally relevant and reliable.

17.     *Third*, a stay will prevent the MDL Court and this Court from issuing inconsistent rulings.  It does not make sense for this Court to approve the Proposed Settlement or enter the Proposed Estimation Order based on a premise or assumption that the MDL Court may reject or materially limit in only a few months.  As discussed, the MDL Court has already issued numerous rulings predicated on the same state law claims and defenses relevant to the subject late claims and will soon decide Rule 23 issues for three bellwether states.  The Proposed Settlement, on the other hand, presumes *de facto* nationwide classes.

18.     *Fourth*, a stay may prevent entirely unnecessary proceedings before this Court based on events in the MDL Court.  Many of the late claims asserted in this Court are the exact same claims asserted against New GM years earlier in the MDL Court on a successor liability theory.  This creates an overlap of the same claims in two courts with the MDL Court being the court charged with the responsibility of resolving common issues that implicate proceedings in various proceedings throughout the country.[10]  New GM submits that the Bankruptcy Court should

---

[10]    *In re Gen. Motors LLC Ignition Switch Litig.*, MDL ECF No. 1 (S.D.N.Y. June 12, 2014) ("Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary."); *see also In re Parmalat Finanziaria S.p.A.*, 320 B.R. 46, 50–51 (S.D.N.Y. 2005) (noting that district court overseeing multi-district litigation had "unique responsibility" to oversee proceedings overlapping with bankruptcy court proceedings).

first allow the MDL Court to issue its important substantive and class certification rulings on the common issues facing both courts.  This process would avoid inefficiency, the risk of inconsistent outcomes and unnecessary complexity.

19.      *Fifth,* a stay is consistent with the position of those Plaintiffs asserting Personal Injury Claims (the "**Personal Injury Claimants**").[11]  This Court lacks jurisdiction to adjudicate Personal Injury Claims without their consent.  *See* 28 U.S.C. § 157(b)(5) ("The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court . . . .").  But the Personal Injury Claimants "consent" to this Court's jurisdiction "solely for the purpose of estimating the aggregate allowed General Unsecured Claims," but not with respect to final estimation or allowance of their claims.  (*See* Proposed Estimation Order ¶ 3 ("Pre-Closing Accident Plaintiffs' rights under Section 157(b)(5) of Title 28 . . . are expressly reserved.").)  Absent unconditional consent, this Court cannot "allow" their claims, and instead can only submit proposed findings of fact and law for the MDL Court to review *de novo*.  As the Court noted in the May 10th Order, under the framework of the Proposed Settlement, the Personal Injury

---

[11]    New GM recognizes that, on the date hereof, Movants filed proposed amendments to the Settlement Agreement, which provide that (i) Pre-Closing Accident Plaintiffs represented by PIWD Counsel shall consent to the Court's estimation of their claims "in connection with" the Proposed Settlement but "do not consent to estimation of their personal injury and wrongful death claims by the Bankruptcy Court for any other purpose other than implementation" of the Proposed Settlement, and (ii) all other Plaintiffs asserting personal injury claims or economic loss claims also waive any right to a jury trial and shall be deemed to have consented to the Court's jurisdiction "as a condition to any Plaintiff's ability to receive a distribution from the . . . Settlement Fund."  (Revised Settlement Agreement §2.9.)  New GM reserves its right to file a supplemental objection with respect to these proposed amendments, but notes initially that the proposed amendments confirm the Constitutional infirmities in the Proposed Settlement and make them worse.  First, the Court lacks *in personam* jurisdiction and Signatory Plaintiffs' counsel lack representational authority to deprive unidentified personal injury and economic loss plaintiffs of their rights, including the right to assert a claim against the GUC Trust, the right to a jury trial, and the right to opt-out.  Second, the proposed amendment makes matters worse, not better, by forcing unidentified personal injury plaintiffs (who have already been deprived of fundamental rights) to "consent" to the Constitutional violations that have already occurred "as a condition to any Plaintiff's ability to receive a distribution from the . . . Settlement Fund."  Third, the changes do not address the Court's concern that personal injury plaintiffs could still seek to have the merits of their claim liquidated in the district court, which may result in an amount that differs from the Court's estimation.  Fourth, if a personal injury claim is "allowed" in the Bankruptcy Court, then Plaintiffs should not be entitled to a "second bite at the apple" in the district court on the same claim.  Fifth, the proposed revisions highlight the inherent conflicts of interest arising from Signatory Plaintiffs' counsel negotiating a settlement on behalf of millions of individuals they do not represent.

Claimants could demand jury trials in the district court to determine the amount of their damages, the ultimate results of which may conflict with this Court's estimated amount of their claims or the proposed allocation of the Settlement Fund which has yet to be proposed by the Signatory Plaintiffs. The Personal Injury Claimants cannot have it both ways, and therefore only the MDL Court can determine the validity of their claims.

20.     *Finally*, a temporary stay to obtain the MDL Court's rulings and guidance will not unduly prejudice any party. Signatory Plaintiffs have already consented to the schedule in the MDL Court, which calls for the resolution of certain threshold issues in the upcoming months. Indeed, the **Signatory Plaintiffs** recently proposed a two-month extension for deadlines to file class certification briefs and *Daubert* motions, a schedule to which New GM agreed. Additionally, the benefits to the GUC Trust and GUC Trust Beneficiaries described above would outweigh a modest delay (if any) in this Court, especially considering that further distributions from the GUC Trust are already stalled pending resolution of the Term Loan Avoidance Action and distributions to Plaintiffs will not be made until an allocation procedure is developed and approved sometime after the Estimation Order is entered.

21.     Accordingly, New GM respectfully requests a temporary stay of certain proceedings related to the Proposed Settlement.

## BACKGROUND

## I.     THE SALE AGREEMENT AND ADJUSTMENT SHARES PROVISIONS.

22.     In July 2009, pursuant to the Sale Agreement, New GM purchased substantially all of Old GM's assets for $45 billion plus the assumption of certain specifically defined liabilities. Section 3.2(c)(i) of the Sale Agreement (as amended by the Second Amendment to the Sale Agreement) provides that an adjustment may be made to the purchase price only under certain limited circumstances:

Sellers may, at any time, seek an Order of the Bankruptcy Court (the "Claims Estimate Order"), which Order may be the Order confirming Sellers' Chapter 11 plan, estimating the aggregate allowed general unsecured claims against Sellers' estates.  If in the Claims Estimate Order, the Bankruptcy Court makes a finding that the estimated aggregate allowed general unsecured claims against Sellers' estates exceed $35,000,000,000, then Purchaser will, within five (5) Business Days of entry of the Claims Estimate Order, issue additional shares of Common Stock (the "Adjustment Shares") to Parent, as an adjustment to the Purchase Price, based on the extent by which such estimated aggregate general unsecured claims exceed $35,000,000,000 (such amount, the "Excess Estimated Unsecured Claim Amount;" in the event this amount exceeds $7,000,000,000 the Excess Estimated Unsecured Claim Amount will be reduced to a cap of $7,000,000,000).   The number of Adjustment Shares to be issued will be equal to the number of shares, rounded up to the next whole share, calculated by multiplying (i) 10,000,000 shares of Common Stock (adjusted to take into account any stock dividend, stock split, combination of shares, recapitalization, merger, consolidation, reorganization or similar transaction with respect to the Common Stock, effected from and after the Closing and before issuance of the Adjustment Shares) and (ii) a fraction, (A) the numerator of which is Excess Estimated Unsecured Claim Amount (capped at $7,000,000,000) and (B) the denominator of which is $7,000,000,000.

23.    Under the Plan, the GUC Trust is the successor to Old GM and responsible for distributing estate assets.[12]  (Plan § 6.2(b).)  The GUC Trust Administrator may seek to receive the Adjustment Shares only "when and as appropriate and in consultation with the GUC Trust Monitor" and to the extent the GUC Trust "is so entitled." (GUC Trust Agreement § 2.3(d).)  The GUC Trust Administrator in only empowered to take actions that are "in the GUC Trust Administrator's good faith judgment, in the best interests of the GUC Trust Beneficiaries and in furtherance of the purpose of the GUC Trust."  (*Id*. § 8.1(b).)  Pursuant to the GUC Trust Agreement, the GUC Trust Administrator may only seek the Adjustment Shares as a result of the aggregate amount of Allowed General Unsecured Claims exceeding $35 billion.  (*Id*. § 2.3(d).)

---

[12]    (*See also* Side Letter ("[T]he GUC Trust Administrator (*as successor to MLC*) (i) may seek the Claims Estimate Order (or continue the prosecution of any Claims Estimate Order previously sought by the Debtors), and (ii) shall be entitled to receive the Adjustment Shares, in each case in accordance with Section 3.2(c) of the MSPA as if it were MLC.") (emphasis added).)

Pursuant to the Side Letter, the GUC Trust Administrator agreed to only seek a Claims Estimate Order if "allowed eligible claims are likely to exceed $35 billion in the aggregate." (Side Letter.)

24.      Approximately two months after the Sale, this Court entered an order establishing November 30, 2009 as the deadline for general unsecured creditors to file proofs of claims against Old GM's bankruptcy estate.

25.      Following the ruling in *In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016) (the "**Second Circuit Decision**"), this Court ordered that any late claims motions related to recalls must be filed by December 22, 2016, and "[i]f other plaintiffs wish to join in a Late Claim Motion, they . . . [were required to] file a joinder (not to exceed two pages) with the Court by January 6, 2017."[13]

26.      According to the Estimation Motion, the current total amount of Allowed General Unsecured Claims asserted against the GUC Trust is $31,855,431,837.00, approximately $3.14 billion less than the amount necessary to trigger New GM's Adjustment Shares obligation and approximately $10.14 billion less than the amount necessary to cause New GM to issue the maximum number of Adjustment Shares.

## II.      THE MDL 2543 LITIGATION.

27.      In 2014, the Judicial Panel on Multidistrict Litigation established MDL 2543, a multi-district litigation in the Southern District of New York under Judge Furman to centralize proceedings on claims related to ignition switch and other alleged defects in vehicles manufactured by Old GM and New GM that are subject to certain recalls.  The MDL plaintiffs include those who

---

[13]      (*Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against General Motors LLC ("New GM") That Involve Vehicles Manufactured by General Motors Corporation ("Old GM")*, ECF No. 13802, at 5 (Bankr. S.D.N.Y. Dec. 13, 2016) (the "**2016 Threshold Issues Order**").)

purchased or leased vehicles both before and after the Sale, alleging either economic harm or personal injuries purportedly caused by the defects.

28.      The Fifth Amended Consolidated Complaint ("**5ACC**")[14] filed in September 2017 by the MDL plaintiffs alleges economic loss class claims against New GM on behalf of those who purchased or leased Old GM or New GM vehicles.[15]  The 5ACC also alleges a subclass comprised of pre-Sale (*i.e.*, before July 10, 2009) owners or lessors of Old GM vehicles with the "Delta Ignition Switch" defect who assert successor liability claims against New GM as the alleged successor of Old GM.

29.      There has been substantial motion practice on previous iterations of the 5ACC, and such motion practice continues.  The MDL plaintiffs originally sought a nationwide class. However, following certain of the MDL Court's rulings on motions to dismiss and briefing on choice-of-law issues, the MDL plaintiffs abandoned their nationwide class claim to pursue class certification only in certain bellwether states.  In the coming months, the parties will brief issues related to class certification and summary judgment in California, Missouri and Texas, and qualification and admissibility of expert submissions under the *Daubert* standard.[16]

30.      Personal injury claims arising from pre-Sale and post-Sale accidents allegedly involving the Ignition Switch Defect have been proceeding on a separate track in the MDL.  The MDL Court has been conducting individual bellwether trials of certain post-Sale cases since 2016, and two additional bellwether trials are scheduled for 2019.  The parties have been and are also

---

[14]   *In re Gen. Motors LLC Ignition Switch Litig.*, MDL ECF No. 4838 (S.D.N.Y. Nov. 11, 2017).

[15]   (*See* 5ACC ¶¶ 34-35 (general definition of class includes "[a]ll persons who bought or leased (i) a Delta Ignition Switch Vehicle on or before February 14, 2014; (ii) a Low Torque Ignition Switch Vehicle prior to July 3, 2014; (iii) a Knee-to-Key Camaro Defect Vehicle prior to July 3, 2014; (iv) a Side Airbag Defect Vehicle prior to March 17, 2014; and/or (v) a Power Steering Defect Vehicle prior to April 1, 2014").)

[16]   The letter that contains the current economic loss schedule approved by the MDL Court is attached hereto as Exhibit B.

engaged in voluminous motion practice to identify and eliminate meritless personal injury claims (both post-Sale and pre-Sale accident cases).

### III.    THE LATE-FILED CLAIMS.

31.    After the 2014 recalls were announced, Co-Lead Counsel chose not to sue the GUC Trust (as successor to Old GM) in either this Court or the MDL Court and focused instead on asserting successor liability claims against New GM.   In February 2015, Co-Lead Counsel explained their admittedly "strategic" decision not to previously block the GUC Trust's distribution of assets to other creditors.[17]

32.    While the economic loss plaintiffs asserting the Ignition Switch Defect obtained a tolling agreement to assert late claims in May 2014, the Ignition Switch Pre-Closing Accident Plaintiffs did not receive a tolling agreement from the GUC Trust until approximately 20 months after the recalls were announced, and the Non-Ignition Switch Plaintiffs never received a tolling agreement.

33.    More than two years after the 2014 recalls were first announced, in late December 2016, a limited number of individuals (528 in total) sought authorization to file late proofs of claim against the GUC Trust following the Second Circuit Decision and pursuant to the 2016 Threshold Issues Order.[18]   These claimants include:  (i) 526 personal injury claimants; and (ii) Patricia Barker and Yvonne James-Bivins, who sought leave to file Proposed Class Claims "on behalf of a

---

[17]    (*See Transcript Regarding Hearing Held on 2/17/2015*, ECF No. 13602 112:14-16 (Bankr. S.D.N.Y. Jan. 28, 2016) (the "**2/17/2015 Hr'g Tr.**") ("[Y]es[,] there was a strategic element to the decision that was taken on our side.").)

[18]    Thus, there are currently 519 Pre-Closing Accident Plaintiffs that have sought authority from this Court to file late proofs of claim.  After the MDL Court entered an order granting a motion to withdraw as counsel filed by Mr. Hilliard and his co-counsel, Mr. Weintraub withdrew as counsel for 30 of Pre-Closing Accident Plaintiffs seeking to assert late proofs of claim since they were no longer represented by Mr. Hilliard.  (*See Notice of Withdrawal as Counsel*, ECF No. 14179 (Bankr. S.D.N.Y. Dec. 4, 2017).)  On April 25, 2018, Mr. Weintraub withdrew as counsel for an additional 23 claimants.  (*See Second Notice of Withdrawal as Counsel*, ECF No. 14282 (Bankr. S.D.N.Y. Apr. 25, 2018).)  Of these 53 claimants that are no longer represented by Mr. Weintraub, seven of them agreed to the withdrawal of their claims.  (*See id.*)

proposed Nationwide Class under B.R. 7023" for Ignition Switch Plaintiffs and Non-Ignition

Switch Plaintiffs, respectively.  Of the 519 personal injury claimants who have not withdrawn their

claims themselves, 351 claimants (the Andrews Meyers group) sought authority to file late proofs

of claim between July and December 2017—well after the deadline established by this Court's

2016 Threshold Issues Order.  302 of these personal injury claimants are also currently pursuing

the same claims against New GM in the MDL, and 54 others previously pursued MDL claims.

According to the Settlement Motion, additional personal injury claimants who have not previously

sought authority to file late proofs of claim intend to file supplemental late claims motions before

May 31, 2018 and also intend to be subject to the Settlement Agreement.  (Settlement Motion

¶ 40.)

34.    One economic loss class proof of claim, filed initially by Patricia Barker

(the "**Barker Proposed Class Claim**"), is asserted pursuant to Rule 23 on behalf of a purported

nationwide class of approximately 1.6 million owners or lessees of certain vehicles with the Delta

Ignition Switch Defect covered by Recall 14-V-047.  The Barker Proposed Class Claim asserts a

purported nationwide class that is a strict subset of the putative Delta Ignition Switch class asserted

against New GM in the 5ACC in the MDL (*i.e.*, every individual purportedly represented by the

Barker Proposed Class Claim is also covered by the putative class alleged in the MDL).[19]

35.    The other economic loss class proof of claim, filed by Yvonne James-Bivins

(the "**James-Bivins Proposed Class Claim**," and together with the Barker Proposed Class Claim,

the "**Proposed Class Claims**"), is asserted pursuant to Rule 23 on behalf of a purported nationwide

class of approximately 9.8 million owners or lessees of certain vehicles impacted by five separate

---

[19]    (*Compare* 5ACC ¶ 942 ("All persons who bought or leased a Delta Ignition Switch Vehicle on or before February 14, 2014"); *with Motion for an Order Granting Authority to File Late Class Proofs of Claim*, ECF No. 13806 (Bankr. S.D.N.Y. Dec. 22, 2016) (the "**Late Claims Motion**"), Ex. A ¶ 2 ("All persons in the United States who, as of November 30, 2009, either owned or leased a Delta Ignition Switch Vehicle").)

Non-Ignition Switch Defects (grouped into three categories): the "Low Torque Ignition Switch Defect Recalls" (Recall Nos. 14-V-355, 14-V-394, 14-V-400), the "Side Airbag Defect Recall" (Recall No. 14-V-118), and the "Power Steering Defect Recall" (Recall No. 14-V-153). (*See* Late Claims Motion, Ex. B ¶ 4.) The James-Bivins Proposed Class Claim asserts a purported nationwide class that is also a strict subset of the putative Non-Ignition Switch classes asserted against New GM in the MDL (*i.e.*, every individual purportedly represented by the James-Bivins Proposed Claim is also covered by the putative class alleged in the MDL).[20] Ms. James-Bivins' vehicle was only involved in one of the recalls, making her an inappropriate class representative with respect to the other recalls identified in the James-Bivins Proposed Class Claim. Together, the Proposed Class Claims cover nearly 11.4 million putative class members.

36.   The Proposed Class Claims allege "claims of fraudulent concealment, unjust enrichment and consumer protection violations on behalf of the … proposed Class **pursuant to B.R. 7023**." (*Id.*, Ex. B ¶ 2 (emphasis added).) Pursuant to the Economic Loss Late Claims Motion (*id.* ¶ 16), after the Court grants leave to file the Proposed Class Claims:

> The Plaintiffs intend to seek application of Federal Rule of Civil Procedure 23 to the Proposed Class Claims and to certify the proposed classes and subclasses at the appropriate time after the conclusion of any necessary discovery, including the discovery taking place in [the MDL].

37.   On April 24, 2018, a day before signing the Proposed Settlement, Co-Lead Counsel purported to amend these Proposed Class Claims to, among other things, add dozens of additional proposed class representatives, all of whom are present or former named plaintiffs in the MDL,

---

[20]   (*Compare* 5ACC ¶¶ 942, 947, 950, 953, 956 (defining respective classes as "[a]ll persons in the United States who bought or leased a Delta Ignition Switch Vehicle . . . a Low Torque Ignition Switch Vehicle . . . a Knee-to-Key Camaro Defect Vehicle . . . a Side Airbag Defect Vehicle . . . [or] a Power Steering Defect Vehicle"); *with* James-Bivins Proposed Class Claim ¶ 2 ("All persons in the United States who, as of November 30, 2009, either owned or leased a Defective GM Vehicle," which is defined as any Low Torque Ignition Switch Defect Vehicle, Side Airbag Defect Vehicle, or Power Steering Defect Vehicle).)

and continue to assert nationwide class claims under Rule 23.[21]  New GM reserves all rights to

object to, or raise any defenses in respect of, Co-Lead Counsel's purported amendments to the

Proposed Class Claims.

## IV.    THE PROPOSED SETTLEMENT.

38.    Beginning on May 2, 2018, the GUC Trust sought this Court's approval of the

Proposed Settlement.  The Proposed Settlement purportedly resolves "Plaintiffs' claims" (*i.e.*, the

claims of 11.4 million individuals). "Plaintiffs" is defined in the Proposed Settlement to include:

> the Ignition Switch Plaintiffs, the Non-Ignition Switch Plaintiffs, and the Pre-
> Closing Accident Plaintiffs, including all plaintiffs (whether named or unnamed,
> including unnamed members of a putative class) covered by any of the Late Claims
> Motions, all plaintiffs represented by counsel that is signatory hereto and any other
> party who (i) prior to July 10, 2009, suffered an economic loss claim by reason of
> his, her or its ownership or lease of an Old GM vehicle with an Ignition Switch
> Defect included in Recall No. 14V-047; (ii) prior to July 10, 2009 suffered an
> economic loss claim by reason of their ownership or lease of an Old GM vehicle
> with defects in ignition switches, side airbags, or power steering included in
> NHTSA Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118 or 14V-153, and/or
> (iii) suffered a personal injury or wrongful death based on or arising from an
> accident that occurred prior to the Closing Date that involved an Old GM vehicle
> that was later subject to NHTSA Recall Nos. 14V-047, 14V-355, 14V-394, or 14V-
> 400 . . .

(Settlement Agreement § 1.52.)  The Proposed Settlement therefore seeks to resolve the claims of

"***any party . . . named or unnamed***" that suffered an economic loss claim ***or*** a personal injury

arising prior to the Sale from their ownership of an Old GM vehicle affected by the Recalls.

Notably, this definition of "Plaintiffs" is actually ***broader*** than the putative classes set forth in the

Proposed Class Claims and the proofs of claim filed by personal injury claimants because it also

includes ***any individual*** asserting a personal injury or wrongful death claim, regardless of whether

---

[21]    (*See Notice of Filing of Amended Exhibits to Motion for an Order Granting Authority to File Late Class Proofs of Claim*, ECF 14280 (Bankr. S.D.N.Y. April 24, 2018).)

that individual has filed a proof of claim in this Court.  The definition of "Plaintiffs" includes the same individuals covered by the putative classes alleged in the MDL.

39.      The GUC Trust proposes to settle all Plaintiffs' claims, which the GUC Trust believes "could" exceed $10 billion, by paying Plaintiffs only $15 million.   In addition, the GUC Trust would seek to trigger New GM's obligations under the Sale Agreement to issue the maximum number of Adjustment Shares, which would be held for the exclusive benefit of Plaintiffs.

40.      The Proposed Settlement, if approved, would be funded almost entirely by New GM, whereas the GUC Trust's contributions are *de minimis*.  While the GUC Trust has $485 million in net assets,[22] it proposes to pay only $15 million—roughly 3% of its assets—to settle Plaintiffs' alleged claims against the Old GM estate.  The GUC Trust Beneficiaries, on the other hand, would receive—***in addition*** to releases from 11.4 million individuals who do not have the right to opt out of the Proposed Settlement—the remaining $470 million of GUC Trust Assets (roughly 97% of assets).

41.      The Proposed Settlement consists of three interrelated components, which Movants ask the Court to consider in "successive stages."  (Settlement Motion ¶ 7.)  First, Movants seek approval of the Notice Procedures, whereby the GUC Trust would "provide notice of the Settlement Agreement to ***all Plaintiffs***" so that the GUC Trust can allegedly "put Plaintiffs and other parties-in-interest on notice of the 9019 Motion and the Estimation Motion." (Notice Procedures Motion p. 9; Proposed Notice Procedures Order p. 2 (emphasis added.))  The sole purpose of providing this notice is to allegedly bind those Plaintiffs "who did not execute the

---

[22]    The GUC Trust reported net assets of approximately $485 million in its 10-Q filing for the period ending December 31, 2017.

Settlement Agreement" to the Waiver and Release provisions therein.  As set forth in New GM's opposition to the Notice Procedures Motion, approval of the Notice Procedures is a critical and expensive first step in Movants' improper attempt to avoid class certification under Rule 23.

42.     Next, the GUC Trust will request a hearing before this Court on August 13, 2018 to approve the Proposed Settlement.[23]  Movants will ask the Court to make the Proposed Settlement binding on approximately 11.4 million individuals:  "the ***Settlement shall be effective and binding on all persons*** upon the Settlement Effective Date, ***including, but not limited to, all Plaintiffs***."  (Proposed Settlement Order ¶ 5 (emphasis added).)

43.     The Proposed Settlement Order further provides that "all Plaintiffs . . . shall be deemed" to unconditionally release the GUC Trust, and GUC Trust Beneficiaries from "any and all" claims related to "the Recalls, the Old GM Bankruptcy Case, the GM MDL, the Plan, the Late Claims Motions, the [Sale Agreement]" and any related matters.  (*Id*. ¶ 7.)  Further, the Proposed Settlement Order provides that all Plaintiffs, including those that did not sign the Settlement Agreement, "are deemed to have agreed" not to pursue further action against the GUC Trust or other Released Parties.  (*Id.*)  Finally, the Proposed Settlement Order asks this Court to permanently enjoin all "Plaintiffs" from "taking any action" against the Released Parties or the GUC Trust Assets.  (*Id.* ¶ 8.)

44.     In the event the Proposed Settlement were approved in August 2018, the GUC Trust would then ask this Court to estimate "Plaintiffs' aggregate allowed General Unsecured Claims" "on a ***class wide*** basis," (Estimation Motion ¶ 54 (emphasis added); Proposed Estimation Order ¶ 4), in "an amount that ***could*** equal or exceed $10 billion."  (Settlement Motion ¶ 30 (emphasis added).)  Movants have proposed that briefing and expert discovery/depositions can

---

[23]   Movants' proposed schedule is inconsistent with their motion papers.  As set forth in New GM's Proposed Schedule, Movants' motion papers provided that the hearing could not occur until August 20, 2018.

be completed in approximately two months after approval of the Settlement Motion, with an estimation hearing occurring at the end of October 2018 at the earliest.  (Movants' Proposed Schedule, Art. III.)[24]

45.    Assuming the Court entered the Proposed Estimation Order in November 2018 and concluded that Plaintiffs' claims exceeded $10 billion, the GUC Trust will ask the Court to direct New GM to issue the Adjustment Shares to a "Settlement Fund" designated and controlled by the Signatory Plaintiffs.  (Proposed Estimation Order ¶ 6.)  As described in New GM's opposition to the Notice Procedures Motion, the Proposed Settlement does not estimate claims for "allowance and distribution purposes."  (Proposed Estimation Order ¶ 6.)  Rather, after the Adjustment Shares are transferred into the Settlement Fund, the Signatory Plaintiffs are authorized and directed to establish procedures "for Plaintiffs to assert a claim against the Settlement Fund."  (Settlement Agreement § 2.11.)

46.    Accordingly, this Court would subsequently need to approve the allocation of the Settlement Fund and the criteria for determining individual Plaintiffs' entitlement to the Settlement Fund, which will involve a separate claim-filing process.  (*Id.*)  Notice of these subsequent procedures would ***again*** be sent to 11.4 million individuals (although, notably, this is one of the few places where Movants refer to ***known*** Plaintiffs, suggesting that notice would not go to all Plaintiffs) and those "known Plaintiffs" would then need to submit claims against the Settlement Fund for Signatory Plaintiffs to resolve.  Movants do not provide any timeline or additional details on these procedures.

---

[24]    Movants' Proposed Schedule is inconsistent with their own motion papers and significantly compresses the schedule initially proposed in the Estimation Motion.  (*See* New GM's Proposed Schedule, Sec. B.)

47.    Nonetheless, at a prior status conference before the Court (10/3/17 Hr'g Tr. 38:17-25), Co-Lead Counsel suggested that Movants would use Rule 23 under this later procedure to allocate Settlement Proceeds to individual Plaintiffs:

> what people are told is ***let's not knock ourselves out about how to distribute nothing; let's knock ourselves out about how to distribute up to a billion dollars.*** And then your relative entitlement versus someone else's relative entitlement, depending on the facts and circumstances that relate to you specifically, will be worked out with the help of the magistrate judge and, if necessary, Judge Furman. ***And an entire procedure will develop probably under Rule 23 where notice goes out to the world*** with an opportunity to object that says, here's your entitlement, if you like it, get ready to get the check.  If you don't like it, show up at the hearing.

## JURISDICTION

48.    This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

49.    Pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), New GM requests an order, substantially in the form of the proposed order attached hereto as <u>Exhibit A</u> (the "**Proposed Order**") granting a temporary stay of certain proceedings related to the Proposed Settlement.

## ARGUMENT

50.    "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936).  Bankruptcy courts also have this inherent power.  *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002); *accord In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (SCC), ECF No.

42417 (Bankr. S.D.N.Y. Jan. 31, 2014) (granting motion brought pursuant to section 105(a) to stay

certain pending actions).

51.    The court should enter a stay if it will "promote judicial economy, avoidance of

confusion and possible inconsistent results without working an undue hardship or prejudice against

the plaintiff." *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. at 199 (citations and internal quotation

marks omitted).  A stay is particularly appropriate where "there [are] common questions of fact

. . . , or when the [other proceeding is] likely to dispose of issues common to the claims" in the

two proceedings.  *In re S.W. Bach & Co.*, 425 B.R. at 98.  Bankruptcy courts routinely decide to

"hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or

be dispositive of the issues."  *See In re Rosenblum*, 545 B.R. 846, 874 (Bankr. E.D. Pa. 2016)

(staying numerous matters in the debtor's bankruptcy, including plan confirmation, pending

outcome of state litigation).[25]

52.    Similar relief has been granted in other large chapter 11 cases in bankruptcy courts

in this district.  *See, e.g.*, *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (SCC), ECF No.

42417 (Bankr. S.D.N.Y. Jan. 31, 2014) (order continuing previously granted stays of certain

avoidance actions to, among other reasons, allow alternative dispute resolution process to unfold);

*In re Delphi Corp.*, Case No. 05-44481 (RDD), ECF No. 9105 (Bankr. S.D.N.Y. Aug. 16, 2007)

(order authorizing stay of approximately 740 avoidance actions and granting other related relief,

including ability to amend complaints during pendency of stay and extending deadline for service

of process); *In re Enron Corp.*, Case No. 01-16034 (AJG), ECF No. 18230 (Bankr. S.D.N.Y. May

---

[25]    *Accord In re MF Global Holdings, Ltd.*, 464 B.R. 619, 623-24 (Bankr. S.D.N.Y. 2012) (Glenn, J.) (using power
to "stay or dismiss a [duplicative] suit" to dismiss class action adversary proceeding that was "entirely duplicative
. . . and did not add any claims or issues"); *In re Bird*, 229 B.R. 90, 95 (Bankr. S.D.N.Y. 1999) (noting that an
adversary proceeding may be "suspended until such time as it were more likely that its adjudication would not be
an empty gesture"); *In re Ahead By A Length, Inc.*, 78 B.R. 708, 710 (Bankr. S.D.N.Y. 1987) (ordering a six-
month stay on discovery and noting that "it is incumbent upon [the court] to control disposition of the cases on
our docket so as to preserve judicial economy as well as permit the most effective means of relief to the parties").

5, 2004) (order issuing 90-day stay of discovery in approximately 1,100 avoidance actions to enable the debtors to craft procedures for conducting discovery in a coordinated, efficient manner).

## I.    A    TEMPORARY STAY OF PROCEEDINGS PROMOTES JUDICIAL ECONOMY AND AVOIDS POTENTIALLY INCONSISTENT RESULTS.

53.    The substantial overlap in substance between issues raised by or relating to the Proposed Settlement and issues already (or soon to be) decided in the MDL cuts strongly in favor of a temporary stay of proceedings in this Court.  A stay will result in the most efficient use of judicial resources and avoid inconsistent results.

54.    Here, the overlap of issues between the Proposed Settlement and the MDL is overwhelming and undeniable.  If this Court approves the Notice Procedures, Proposed Settlement or Estimation Motion, it may very well undermine or conflict with the proceedings and decisions of the four-year-old MDL.   In addition to the overlapping recalls, counsel, personal injury claimants and expert report issues described in paragraph 9 above, the overlapping issues between the MDL and the Proposed Settlement include, but are not limited to:

- Overlapping Putative Economic Loss Classes.  The "Plaintiffs" included in the Proposed Settlement (*i.e.*, the "presumed" nationwide classes asserted in the Proposed Class Claims) overlap with the putative class members in the MDL.[26]

- Overlapping Class Representatives.  The two individuals who initially sought authorization to file the Proposed Class Claims—Patricia Barker and Yvonne James-Bivins—are both putative class representatives named in the MDL.[27]  The individuals that Signatory Plaintiffs purported to add through their recent

---

[26]    (*Compare* Proposed Settlement § 1.52 ("[A]ll plaintiffs represented by counsel that is signatory hereto and any other party who (i) prior to July 10, 2009, suffered an economic loss claim by reason of his, her or its ownership or lease of an Old GM vehicle with an Ignition Switch Defect included in Recall No. 14V-047; [and] (ii) prior to July 10, 2009 suffered an economic loss claim by reason of their ownership or lease of an Old GM vehicle with defects in ignition switches, side airbags, or power steering included in NHTSA Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118 or 14V-153"); *with* 5ACC ¶ 34 (general definition of class includes "All persons who bought or leased (i) a Delta Ignition Switch Vehicle on or before February 14, 2014; (ii) a Low Torque Ignition Switch Vehicle prior to July 3, 2014; (iii) a Knee-to-Key Camaro Defect Vehicle prior to July 3, 2014; (iv) a Side Airbag Defect Vehicle prior to March 17, 2014; and/or (v) a Power Steering Defect Vehicle prior to April 1, 2014").)

[27]    The MDL Court has dismissed Ms. James-Bivins' claims, but the 5ACC still includes her claims "for the purpose of preserving [her] claims on appeal."  (5ACC ¶ 33 n.11.)

amendments to the Proposed Class Claims are likewise current or former named plaintiffs in the MDL who are represented by the same counsel in both courts.

- <u>Overlapping Class Certification Issues</u>.  The *de facto* nationwide classes of 11.4 million individuals that Movants presume for all purposes of the Proposed Settlement raise the same issues under Rule 23 that the MDL Court will be addressing in the coming months, including whether:  (a) individual questions predominate over any common questions of law or fact; (b) the named plaintiffs are typical of the potentially millions of class members in the putative classes; (c) the named plaintiffs are adequate representatives; and (d) plaintiffs can obtain a Rule 23(b)(2) class for injunctive relief.

- <u>Overlapping Economic Loss Factual Issues</u>.  The overlapping factual issues include Signatory Plaintiffs' (or, if a class is certified, Plaintiffs') particular experiences (or not) of a defect, what assertions were allegedly made about Plaintiffs' vehicles, whether Plaintiffs relied on those alleged assertions, and whether Plaintiffs sold their vehicle before any recall.  The MDL Court has applied and continues to apply its legal rulings to the factual circumstances of specific MDL plaintiffs.  *See, e.g.*, TACC Order, at *24 (dismissing the D.C. Consumer Protection Procedures Act claims brought by plaintiff who did not allege reliance on any representation by New GM).

- <u>Overlap With Respect to Run-Accessory-Run Theory</u>.  In December 2017, Judge Furman ruled that the proposed expert opinions supporting Co-Lead Counsel's "run-accessory-run" theory—for personal injury plaintiffs involved in accidents in which their airbags had deployed—were inadmissible under *Daubert*.  *In re Gen. Motors LLC Ignition Switch Litig.*, MDL ECF No. 4905 (S.D.N.Y. Dec. 28, 2017).  To the extent individuals asserting run-accessory-run theories are personal injury claimants, Judge Furman's rulings preclude those claims from being estimated at anything more than $0.

- <u>Overlapping Service Parts Recall Issue</u>.  The Proposed Settlement includes Old GM vehicles that are subject to the Service Parts Recall.  (*General Motors LLC Letter to NHTSA* (Mar. 28, 2014), https://static.nhtsa.gov/odi/rcl/2014/RCDNN-14V047-8089.pdf.)  These vehicles do not contain a defective ignition switch, unless one was installed while the vehicle was being serviced.  The MDL Court held that "if [the owners of these vehicles] are ultimately to succeed on their claims with respect to the ignition switch, they will have to show that their cars in fact contained that defect."  TACC Order, at *20 n.15.  The Proposed Settlement includes the purported damages of vehicle owners included in the Service Parts Recall who have not proved that they each in fact received a defective replacement ignition switch.

- <u>Overlapping Causes of Action</u>.  The Proposed Class Claims include the same causes of action that are asserted in the MDL and raise exactly the same legal issues being addressed in the MDL, including, among others:

o  <u>Manifest Defect Rule</u>.  The MDL Court has held, or MDL plaintiffs agree, that a manifest defect is required for making claims in various jurisdictions. For example, the MDL Court ruled that New York and Texas require a manifest defect as a predicate for bringing a claim.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 430-31, 452 (S.D.N.Y. 2017), *modified on reconsideration*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017).  The MDL plaintiffs also agree that at least the following states require a manifest defect: Arkansas, New Hampshire, North Carolina, North Dakota, South Carolina and Utah.[28]  Consequently, the Proposed Settlement includes persons whose claims would be barred altogether in many states and limited in other states by the prior (and likely future) rulings of the MDL Court.

o  <u>Benefit of the Bargain</u>.  In its Order on New GM's Motion to Dismiss certain economic loss claims, the MDL Court dismissed substantially all economic loss claims brought by MDL plaintiffs who had sold, traded in, or returned their allegedly defective vehicles prior to the recalls.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 403.  The MDL Court granted the MDL plaintiffs' motion for reconsideration of its order, 2017 WL 3443623, which the MDL Court granted on the narrow grounds that failure to plead damages for "***some*** claims in ***some*** states" does not warrant dismissal.  *But see id.* at \*2 (notwithstanding the grant of reconsideration, noting Signatory Plaintiffs' continued failure to "articulate a coherent theory" for how to "logically, if not legally, prove . . . damages" for these claims).

o  <u>The Effect of New GM's Recall Repairs</u>.  In its April 2018 Order on New GM's Motion for Summary Judgment with Respect to Plaintiffs' Claims for Benefit-of-the-Bargain Damages, the MDL Court addressed the issue of New GM's recall repairs, holding that while it had "not exhausted its research on the question of whether and to what extent evidence of post-sale mitigation would affect the availability or calculation of damages in the sixteen jurisdictions at issue," it "has done enough research to conclude that many, if not most (or even all), states would factor such evidence into the analysis." *In re Gen. Motors LLC Ignition Switch Litig.*, 2018 WL 1638096, at \*2 (S.D.N.Y. Apr. 3, 2018).  The MDL Court thus "surmise[d] … that the viability of Plaintiffs' claims for benefit-of-the-bargain damages is likely to turn on the question of whether New GM actually fixed the recalls at issue in its many recalls," which the MDL Court will address.  *Id.*

---

[28]  The MDL Court has also ruled that Oklahoma requires a manifest defect for consumer fraud and breach of implied warranty claims, *see* TACC Order, at \*36-37, that Pennsylvania requires a manifest defect for fraudulent concealment and breach of implied warranty claims, 257 F. Supp. 3d at 438-440; and that Missouri requires a manifest defect for breach of implied warranty claims, TACC Order at \*35.

A.    A Stay Will Prevent Duplicative and Potentially Inconsistent Rule 23 Class Certification Determinations.

55.    As New GM explains in its opposition to the Notice Procedures Motion, there is no precedent for Movants' attempt to **settle or allow** the claims of 11.4 million individuals without a court first determining whether to certify a class under Rule 23.  *See, e.g.*, *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011) ("[T]he claim can be asserted as a class claim ***if, but only if***, (1) the class claim proponent has shown compliance with the requirements of Civil Rule 23, and (2) after consideration of consistency with bankruptcy needs and concerns, the bankruptcy court directs that Rule 23 should apply.") (emphasis added); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 620 (Bankr. S.D.N.Y. 2009) (noting that request for a class proof of claim must "satisfy the Rule 23 requirements"); *In re Musicland Holding Corp.*, 362 B.R. 644, 652 (Bankr. S.D.N.Y. 2007) ("[I]f the court declines to apply Rule 23 to the proof of claim, the putative agent never obtains the requisite authority. . . . Until certification, the claim is in limbo.").  Movants concede that "continued litigation of Plaintiffs' claims" would require the Bankruptcy Court "to decide whether class certification for the economic loss Plaintiffs' proposed class proofs of claims would be appropriate."  (Settlement Motion ¶ 77.)  The same is true in the instant situation where Movants seek to settle Plaintiffs' claims:  they must first comply with the requirements of Rule 23.

56.    Movants' steadfast efforts to side-step Rule 23 certification do not make the overlap with the MDL Court disappear.  In considering the Notice Procedures Motion—the very first "stage" of the Proposed Settlement—the Court must decide whether it can send notice to 11.4 million individuals (before any class is certified) for the sole purpose of "putting them on notice" that the Court may subsequently "deem" their "claims" (almost all of which have never been filed) against the GUC Trust released.

57.     The governing law, however, is clear:  Movants must seek, and the Court must

agree, to certify the classes before they can seek to settle (or approve a settlement of) proposed

class claims.  *See In re Partsearch Techs., Inc.*, 453 B.R. 84, 98 (Bankr. S.D.N.Y. 2011) (Glenn,

J.) ("In order for a class action settlement to be approved in bankruptcy court, the settlement must

be ***both*** procedurally and substantively fair under Rule 23 and Bankruptcy Rule 9019.") (emphasis

added).  It makes no difference that Movants seek to "settle" the Proposed Class Claims.  As the

Supreme Court and other courts have made abundantly clear, federal courts cannot waive or short-

circuit the Rule 23 certification process, and the requirements for certifying a settlement class are

no less rigorous than for a litigation class.  *See Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591,

622 (1997) ("Federal courts, in any case, lack authority to substitute for Rule 23's certification

criteria a standard never adopted—that if a settlement is 'fair,' then certification is proper."); *In re*

*WorldCom, Inc.*, 347 B.R. 123, 141 (Bankr. S.D.N.Y. 2006) ("[S]ettlement classes must satisfy

the four criteria enunciated in Fed. R. Civ. P. 23(a) and one of the three alternatives set forth in

Fed. R. Civ. P. 23(b)."); *accord In re Hyundai and Kia Fuel Econ. Litig.*, 881 F.3d 679, 703-04

(9th Cir. 2018) (decertifying proposed settlement class when, among other things, district court

had issued opinion making "it clear that it would be unlikely to certify the same class for litigation

purposes"); *Schoenbaum* v. *E.I. Dupont De Nemours and Co.*, 2009 WL 4782082, at *11 (E.D.

Mo. Dec. 8 2009) ("These arguments seem to presuppose that settlement class certification is less

rigorous than litigation class certification[, which is] a position that the Supreme Court has clearly

refuted.") (*citing Amchem*).  Further, where, as here, the proposed settlement and litigation classes

overlap, adjudication of the settlement classes should await the litigation classes.  *See, e.g.*, *id.* at

*12 (holding that separate determinations of litigation and settlements classes "would only serve

to draw out this litigation further" and "lead to inconsistent results" and that adjudication of settlement class issues should await adjudication of litigation class).[29]

58.    The class certification questions are implicated at the outset of this contested matter, and the Proposed Settlement cannot proceed (if at all) until the Rule 23 issues first are resolved. Moreover, the class certification issues are indistinguishable from those before the MDL Court, such as whether individual questions predominate over common questions of law or fact, the named representatives are adequate and have claims typical of the alleged class, *etc.*[30] The millions of individuals included in the Proposed Settlement—pre-Sale owners or lessees of vehicles involved in seven recalls—are also included in putative classes in the MDL.

59.    The MDL Court has already established a process and schedule relating to class certification. Bellwether class certification briefing will occur from June to September 2018, and the MDL Court will hold a class certification hearing shortly thereafter. In fact, Signatory Plaintiffs recently asked New GM to *extend* this schedule, to which New GM agreed. *See In re Gen. Motors LLC Ignition Switch Litig.*, MDL ECF No. 5385 (S.D.N.Y. Apr. 15, 2018). Absent Signatory Plaintiffs' request, opening briefs on certification would have already been filed on May 4, 2018. Having sought such an extension only weeks ago, Signatory Plaintiffs cannot now be heard to complain that adjudication in the MDL Court will cause undue delay. Further, awaiting

---

[29]    In *Schoenbaum*, the court rejected plaintiffs' contention that evaluation of the propriety of a litigation class would unduly delay class certification and approval of a settlement-only class. *Id.* at *11 (citing *Amchem* to refute plaintiffs' argument that "settlement class certification could take place immediately, but not litigation class certification"). The *Schoenbaum* court further stated: "It is the Court's duty to balance the often competing goals of resolving matters promptly and resolving matters by the most accurate means possible. The Court finds that these goals are best served by *requiring Plaintiffs to demonstrate that they will be able to certify classes for both settlement and litigation*, instead of permitting Plaintiffs to proceed solely on settlement-related issues and address litigation class certification at a later stage." *Id.* at *12 (emphasis added).

[30]    These issues include, but certainly are not limited to, whether (a) all economic loss plaintiffs or subgroups thereof are subject to class certification; (b) the named plaintiffs are typical of the potentially millions of class members in the putative classes; (c) differences between the recalls and vehicle models make class treatment inappropriate; and (d) the named plaintiffs adequately represent the putative classes and/or subclasses.

the MDL Court's decision on certification would not cause undue delay; Movants' own proposed

schedule does not contemplate estimation of Plaintiffs' claims until late October 2018 (at the

earliest).  A ruling from the MDL Court on class certification that could undermine the central (but

unspoken) premise of the Proposed Settlement—*de facto* nationwide classes—could erase months

of litigation over the Proposed Settlement in this Court.

60.    The class certification presumed by the Proposed Settlement requires the same

degree of scrutiny from this Court as the certification issues being litigated in the MDL Court.  The

MDL Court has been developing factual expertise through extensive discovery and contemplating

class certification issues for years, and formal adjudication of such issues is scheduled to occur in

the near term.  While the MDL Court has set aside several months to brief and adjudicate these

issues, Movants ask this Court to simply assume that *de facto* nationwide classes exist.  This Court

should decline that invitation and stay proceedings relating to the Proposed Settlement while class

certification litigation proceeds in the MDL Court.

B.    A Stay Is Necessary To Prevent Simultaneous and Misleading Notices.

61.    Even if this Court agreed that Movants could send the Proposed Notice to 11.4

million individuals without first certifying a class, the Court should nonetheless exercise its

discretion to stay sending such notice until the MDL Court resolves the Rule 23 and summary

judgment issues presented to it.  As set forth in New GM's opposition to the Notice Procedures

Motion, the Proposed Notice is nearly identical to a Rule 23 class notice, but removes the words

"class" and "Rule 23" (and does not contain an opt-out right).  Sending the Proposed Notice now

to 11.4 million individuals may lead to significant confusion, especially in the (unlikely) event that

the MDL Court were to certify similar classes in the next few months, at which time the individuals

would receive a new and substantially similar notice.  The confusion would only increase given

that, under the Proposed Settlement, individuals are not given any right to opt-out, whereas they

would undoubtedly have the right to opt-out of any class that was actually certified under Rule 23.

62.    In addition, the Proposed Notice misleads putative class members concerning the

effect of the Proposed Settlement.  The Proposed Notice tells individuals that "[u]nless applicable

law says otherwise, the Settlement or any payment you may receive under it does not affect any

claim you may have against New GM."  (Notice Procedures Motion, Ex. A p. 1.)  However, Co-

Lead Counsel acknowledged to this Court that having recourse against Old GM will extinguish

Plaintiffs' ability to pursue claims against New GM on the grounds of successor liability.

(10/3/2017 Hr'g Tr. 31:7-33:7.)[31]  Such comments followed the MDL Court's August 2017 request

for briefing regarding "any effect [on successor liability claims] of the settlement negotiations or

potential settlement between Plaintiffs and the GUC Trust."  *In re Gen. Motors LLC Ignition

Switch Litig.*, 2017 WL 3382071, at *19 (S.D.N.Y. Aug. 3, 2017).

63.    It is unreasonable to expect millions of individuals—virtually none of whom are

represented by counsel—to make legal determinations with respect to successor liability claims,

especially when the legal effect that receiving distributions under the Proposed Settlement may

have on Plaintiffs' successor liability claims in the MDL will be decided by Judge Furman as part

of the MDL.[32]  (10/3/2017 Hr'g Tr. 40:1-2 (noting that whether claim against the trust would

---

[31]    "THE COURT:  [I]f the Court permits late claims either individually filed or class claims for personal injury
plaintiffs or economic loss plaintiffs, does that mean they don't have claims against New GM? . . . .  MS.
CABRASER:  They would still have claims against New GM for -- these would be the independent claims against
New GM . . . .  THE COURT:  but they can't assert successor liability claims against New GM based on the due
process issue. . . .  MS. CABRASER:  I think -- it's a complicated question, but I think that's correct. . . .  THE
COURT:  [T]he fact that you don't recover -- that you recover ten cents on the dollar against the debtor doesn't
mean you can sue somebody else for the 90 cents you didn't recover.  You agree with that?  MS. CABRASER:
Yes, Your Honor."

[32]    *See, e.g.*, *Robbins v. Physicians for Women's Health*, LLC, 90 A.3d 925, 929-36 (2014) (summarizing law from
various jurisdictions on derivative nature of successor liability claim; holding that plaintiff's post-sale settlement
with seller containing covenant not to sue barred successor liability claims against buyer).

preclude a successor liability claim is an issue "probably for another judge").)  Rather than ask

11.4 million individuals to assess the likelihood that the Proposed Settlement precludes their

asserted claims against New GM, this Court should stay Movants' request to send the Proposed

Notice until the MDL Court determines the requisite successor liability issues.  It would needlessly

and improperly prejudge the MDL Court's consideration of successor liability issues if this Court

authorized sending the Proposed Notice, particularly when such notice is principally intended to

assure Plaintiffs that the Proposed Settlement will not affect their successor liability claims against

New GM.

        C.      <u>A Stay Will Prevent Conflicting Legal and Factual Determinations Relating to Economic Loss Claims.</u>

64.      In the final stage of the Proposed Settlement, Movants ask this Court to "estimate

the aggregate value of Claims asserted by personal injury and economic loss plaintiffs based on

ignition switch, power steering and airbag defects affecting millions of cars initially sold by the

Debtors." (Estimation Motion ¶ 1.)  In estimating the claims of 11.4 million Plaintiffs under state-

law causes of action, the Court must analyze the merits of these claims pursuant to the laws of 51

jurisdictions.[33]

65.      Here, because Movants presume (but have not legally obtained) nationwide classes

(a position they abandoned in the MDL), this Court must apply applicable state law governing

economic loss claims in each of the 50 states (plus the District of Columbia).[34]  Further, as the

---

[33]    *See In re Siegmund Strauss, Inc.*, 2013 WL 3784148, at *8 (Bankr. S.D.N.Y. July 17, 2013) (Glenn, J.) (in estimating claims, "[t]he court is only bound by the legal rules that may govern the ultimate value of the claim") (citations and internal quotation marks omitted); *In re Enron Corp.*, 2006 WL 544463, at *4 (Bankr. S.D.N.Y. January 17, 2006) (same); *accord In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133, 155 (D. Del. 2005) ("For example, when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law.")  *See also generally* TACC Order; *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2839154 (analyzing validity of plaintiffs' claims under different common law and statutes of various states).

[34]    Moreover, because of differences in the laws of these 51 jurisdictions, the economic loss claimants (or, in the MDL, the economic loss plaintiffs) face an impossible task in certifying a nationwide class.  This is why in the

economic loss claimants assert five different causes of action, this Court will have to evaluate the merits of those causes of action in each of the 51 applicable jurisdictions. Additionally, the Court will need to consider the merits of various defenses and other important legal and factual issues for economic loss claims, a subset of which are set forth above, and some of which the MDL Court has already begun to address. Movants appear to take conflicting positions on the need for the Court to analyze the gamut of issues raised by the Proposed Class Claims. In the Settlement Motion, they argue that settlement of the Proposed Class Claims is superior because objecting to the claims "could lead to the need to resolve issues under the varied laws of the fifty states and the District of Columbia." (Settlement Motion ¶ 77.) In contrast, in the Estimation Motion, Movants acknowledge that "the bankruptcy court must determine the number and amount of claims that have validity under applicable law." (Estimation Motion ¶ 49.)

66.     Analyzing the complex issues raised by the Proposed Class Claims under the law of every state is an enormous endeavor, but one which the MDL Court has been addressing for four years. It would be grossly inefficient and risk numerous inconsistent and uncertain outcomes to attempt to resolve them on a separate, accelerated track in this Court. Movants previously acknowledged the glaring overlap. In connection with the Initial Settlement, the GUC Trust Administrator stated that "***the ultimate resolution of the Late Claims Motions may be impacted by the overlay of multiple additional complex legal and factual questions that are at issue before the multi-district litigation that is currently pending before Judge Furman***."[35] Although the GUC Trust was careful to remove the same candid admission from the Declaration of David A.

---

MDL, in addition to the MDL Court's prior rulings, the economic loss MDL plaintiffs abandoned any effort to certify any nationwide class, and are instead pursuing only statewide classes.

[35]     (*See Declaration of Beth Andrews in Support of the Joint Motion Pursuant to Bankruptcy Code Sections 105, 363, 502(c) and 1142 and Bankruptcy Rules 3020 and 9019 to Approve the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust, and to Estimate the Plaintiffs' Aggregate Allowed General Unsecured Claims Against the Debtors* ¶ 23 (emphasis added).)

Vanaskey Jr. in support of the Proposed Settlement, the same "overlay" of MDL issues is undeniably presented by the current Proposed Settlement.

      D.      <u>A Stay Likely Will Prevent Unnecessary Proceedings in This Court.</u>

67.     Allowing litigation to proceed in the MDL Court may render further proceedings in this Court unnecessary.  This is because Signatory Plaintiffs' claims—whether brought in this Court or the MDL Court—involve the same underlying claimed injuries and alleged damages.  If New GM were to prevail in the MDL Court and prove that Signatory Plaintiffs' claims are meritless, then this Court would not need to estimate the amount of such claims.  It is therefore likely that near-term proceedings in the MDL Court will render proceedings relating to the Proposed Settlement moot, further weighing in favor of a stay.

      E.      <u>A Stay Is Warranted Due to the Overlap Between The Same Personal Injury Claims Filed in Both Courts.</u>

68.     A temporary stay is also appropriate here because 302 of the personal injury claimants who filed proofs of claim included in the Proposed Settlement are also plaintiffs in the MDL.  These 302 claims involve the same 302 accidents, injuries, and/or deaths at issue in the MDL.  The overlapping personal injury factual issues include various facts that were relevant to the bellwether trials that the MDL Court presided over, including, but certainly not limited to: the specific defect at issue, weather and road conditions at the time of the accident, the condition of the vehicle at the time of the accident, contributory negligence, the claimant's speed, whether the claimant was intoxicated, the role of other drivers, the credibility of witnesses, accident causation, injury causation, the impact of the plaintiff's injuries, spoliation of evidence and damages.

69.     The MDL Court will oversee additional motion practice in the coming months addressing the claims of some of the very same economic loss and personal injury claims at issue

in the Proposed Settlement.  A similar process applied to post-Sale personal injury MDL plaintiffs has already resulted in the dismissal of the claims of 310 such MDL plaintiffs.

70.    As discussed above, Judge Furman ruled that the proposed expert opinions supporting Co-Lead Counsel's "run-accessory-run" theory (supporting personal injury claims involving airbag deployment) were inadmissible under *Daubert*.  *In re Gen. Motors LLC Ignition Switch Litig.*, MDL ECF No. 4905 (S.D.N.Y. Dec. 28, 2017).  On the basis of that ruling, the parties have dismissed 50 airbag deployment claims from the MDL.  Judge Furman's run-accessory-run ruling similarly precludes airbag deployment claims from being allowed or estimated in this Court.

71.    Critically, the Personal Injury Claimants have not consented to this Court's adjudication of their claims, and therefore the MDL Court is the *only* court that can resolve such claims on the merits.  (*See* Settlement Agreement § 2.9 ("[T]he Pre-Closing Accident Plaintiffs represented by PIWD Counsel expressly reserve their rights to have their claims tried (pursuant to Section 157(b)(5) of Title 28 of the United States) or estimated in the District Court, or in the district court in which the claim arose, as determined by the District Court."); 28 U.S.C. § 157(b)(5) (requiring that personal injury and wrongful death claims be tried in district court absent plaintiff consent).)  The Personal Injury Claimants purportedly consent to this Court's jurisdiction "solely for the purpose of estimating the aggregate allowed General Unsecured Claims," but not with respect to final estimation or allowance of their claims.  (Proposed Estimation Order ¶ 3.)

72.    The Personal Injury Claimants cannot have it both ways.  The Estimation Motion asks this Court to estimate "Plaintiffs' Claims," which includes the Personal Injury Claimants, for "*allowance and distribution purposes*."  (Estimation Motion ¶ 52 (emphasis added).)  On the other

hand, the GUC Trust states that estimation of Pre-Closing Accident Plaintiffs' claims "will be governed by 28 U.S.C. § 157(c)(1)," which requires the bankruptcy judge to submit proposed findings of fact and conclusions of law to the district judge to be reviewed *de novo*. (*Id.* ¶ 6.) Absent consent to this Court's jurisdiction, the Court must defer to the MDL Court's determination of personal injury claims, further demonstrating the need for a stay of proceedings.

## II.    A STAY WILL NOT UNDULY PREJUDICE ANY PARTY.

73.    The proposed stay will not cause any party undue prejudice.  First and most importantly, there is no reason to believe that deferring to the MDL Court will lead to any delay related to the Proposed Settlement.  As discussed above, the MDL Court is *already* in the process of adjudicating the very issues raised by the Proposed Settlement, and such determinations by the MDL Court are likely to be made close to the same time that Movants ask this Court to rule on Signatory Plaintiffs' claims.  Under the current MDL schedule, briefing on class certification, summary judgment and *Daubert* motion practice will occur over the summer, and the MDL Court will hold a hearing on such motions as early as October or November 2018.  Under Movants' Proposed Schedule, the Court would not consider the Settlement Motion until August 13, 2018, and the estimation hearing would not commence until, at the earliest, October 31, 2018. Distributions to actual "Plaintiffs" pursuant to the yet-to-be-developed and approved allocation procedures are unlikely to occur until sometime in 2019 (at the earliest).[36]  And even if proceedings in this Court could progress more quickly than in the MDL Court, a difference of a few months is hardly sufficient to justify the inefficiencies and the possibility of inconsistent rulings that may arise from simultaneous proceedings in both courts.

---

[36]    The GUC Trust is not presently making distributions in light of the pending Term Loan Avoidance Action, and there is no basis to conclude that such issues would be resolved during the period in which the MDL Court would decide threshold issues such as class certification.

74.    In addition, Co-Lead Counsel cannot claim to be prejudiced by following a schedule that they agreed to and sought to extend only weeks ago.  Co-Lead Counsel also made a concededly "strategic" decision four years ago not to press pre-Sale claims here in this Court.  (*See* 2/17/2015 Hr'g Tr. 112:14-16.)  After failing to press claims against the GUC Trust for *years*, Co-Lead Counsel admitted that "depending on the resolution of [New GM's successor liability summary judgment motion], one could anticipate that the vim and vigor with which the plaintiffs prosecute" their claims against the GUC Trust "may change."[37]  Now that New GM has prevailed on successor liability summary judgment motions in 10 of 16 states litigated to date (and with more such MDL successor liability motions to come), the Signatory Plaintiffs have changed course and strategically decided to pursue their claims in this Court.  Having pressed their claims for years in the MDL Court while limiting their activity in this Court, the Signatory Plaintiffs cannot reasonably expect that proceedings in this Court should now proceed at warp speed.

Nor will the proposed stay prejudice the GUC Trust or its beneficiaries.  For the reasons discussed above, the Proposed Settlement does not establish a schedule that will progress faster than the MDL, and even a delay of a few months does not cause undue prejudice, especially in the unique circumstances of these complex cases.  Furthermore, deferring proceedings here in favor of the MDL will allow the GUC Trust to ascertain—before it proceeds with a settlement premised on two nationwide classes of 11.4 million individuals asserting tens of billions of dollars in

---

[37]    (*See Transcript of January 12, 2017 Status Conference*, ECF No. 13826 10:19-11:11 (Bankr. S.D.N.Y. Jan. 13, 2017) ("MR. WEISFELNER: Yes. Beyond that, Your Honor, Judge Furman is currently in the process of adjudicating motions for, I think a summary judgment as opposed to motions to dismiss, motions for summary judgment on the theories behind the plaintiffs' request to hold New GM liable as the successor.  And depending on the resolution of that motion, one could anticipate that the vim and vigor with which the plaintiffs prosecute and the adversaries defend the late claims motion may change.  THE COURT: Are those summary judgment motions fully briefed at this point?  MR. WEISFELNER: I think they're in the process of being finalized.  We anticipate they'll be fully briefed before the end of January.  And, of course, we don't have a schedule for when the judge is going to rule, but if the past is any prologue, we suspect that within this 90-day period, the parties will further be able to assess the nature and value of their respective claims and defenses.").)

aggregate late-filed claims—whether any class can be certified at all and whether the Signatory Plaintiffs' expert valuations withstand scrutiny under *Daubert* and its progeny, as well as the law. Additional precision concerning the quantum of Signatory Plaintiffs' claims can only inure to the benefit the GUC Trust, which has significant reserves from which to satisfy an additional $3 billion in allowed general unsecured claims.

WHEREFORE, New GM respectfully requests for all of the reasons stated above that this Court (a) grant the proposed stay as described herein and in the Proposed Order, and (b) grant such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: May 22, 2018
  New York, New York

/s/ Paul M. Basta

Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

and

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

Counsel for General Motors LLC

## **EXHIBIT A**

**FORM OF PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.*, | Case No. 09-50026 (MG) |
| Debtors. | (Jointly Administered) |

### [PROPOSED] ORDER GRANTING STAY OF CERTAIN PROCEEDINGS AND RELATED RELIEF PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE

Upon the motion (the "**Motion**"),[1] dated May 18, 2018 of General Motors LLC

("**New GM**"), pursuant to section 105 of title 11 of the United States Code

(the "**Bankruptcy Code**") to stay certain proceedings relating to that certain *Motion of the Motors*

*Liquidation GUC Trust to Approve (I) The GUC Trust Administrator's Actions and (II) The*

*Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust Pursuant to*

*Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002 and 9019 and to*

*(III) Authorize the Reallocation of GUC Trust Assets*, ECF No. 14293 (Bankr. S.D.N.Y. May 3,

2018) (the "**Settlement Motion**," and the settlement contemplated thereby,

the "**Proposed Settlement**") and grant related relief, all as more fully described in the Motion;

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-

431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

been provided in accordance with the procedures set forth in that certain *Sixth Amended Order*

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

*Pursuant to 11 U.S.C. § 105(a) and Fed. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures*, ECF No. 10183 (Bankr. S.D.N.Y. May 5, 2011); and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that any objections to the Motion are (if not already withdrawn) hereby overruled; and it is further

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that proceedings in this Court relating to the Proposed Settlement are hereby stayed until further order by the Court or the MDL Court; *provided*, *however*, that such stay shall not limit this Court's adjudication of the Notice Procedures Motions; and *provided further* that a party in interest may request for good cause termination or modification of this stay from this Court at any time on no less than twenty-one (21) days' notice, and the Court may at such hearing grant any relief it deems appropriate; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this order.

Dated: [      ], 2018
     New York, New York

                                              THE HONORABLE MARTIN GLENN
                                              UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

## **MDL COURT ECONOMIC LOSS SCHEDULE**

  

April 15, 2018

*VIA ELECTRONIC COURT FILING*

The Honorable Jesse M. Furman
United States District Court
Southern District of New York

  Re: *In re: General Motors LLC Ignition Switch Litig.*,
    14-MD-2543 (JMF); 14-MC-2543

Dear Judge Furman:

  Pursuant to Order No. 131 ¶ 11 (Docket No. 4499), Co-Lead Counsel for the Economic Loss Plaintiffs and counsel for New GM, having met and conferred, write jointly to request a further short extension on certain deadlines relating to the economic loss schedule. This request is necessary as the parties continue to work in good faith to complete expert discovery.

  First, the parties propose to adjust the current expert discovery deadlines as follows: moving the deadline for Plaintiff expert rebuttal reports from April 20, 2018 to **Friday, May 18, 2018**, and the deadline to depose New GM's experts and Plaintiffs' rebuttal experts from May 4, 2018, to **Friday, June 22, 2018**.

  Second, and flowing from the parties' proposed adjustment to the completion of expert discovery, the parties propose to adjust the current summary judgment, class certification, and *Daubert* motion practice deadlines by moving the deadline for opening briefs from May 4, 2018 to **Friday, June 29, 2018**; opposition briefs from June 22, 2018 to **Friday, August 24, 2018** (including any *Daubert* motions that Plaintiffs may file in connection with New GM's summary judgment motion and any remaining *Daubert* motions that New GM may file limited to plaintiffs' class certification motion); reply briefs from July 20, 2018 to **Friday, September 21, 2018**; and certain replies in support of *Daubert* briefing from August 10, 2018 to **Friday, October 12, 2018**.

  Third, the parties propose to change the hearing on summary judgment and class certification contemplated in Order No. 131 from "September or October 2018 or as soon thereafter as is reasonably practicable" to "October or November 2018 or as soon thereafter as reasonably practicable."

  This is the parties' third request for an extension of the deadlines in Order No. 131, and, if granted, would only modestly extend the timing of resolving summary judgment and bellwether class certification motions in the economic loss case. Consistent with Order No. 131, the parties have attached as Exhibit 1 hereto a revised economic loss deadline chart incorporating the parties' proposed extension request.

The Honorable Jesse M. Furman
April 15, 2018
Page 2

Respectfully,

/s/ Steve W. Berman
Steve W. Berman
**Hagens Berman Sobol Shapiro LLP**
1918 Eighth Ave.
Suite 3300
Seattle, WA  98101

-and-

555 Fifth Avenue
Suite 1700
New York, NY 10017

/s/ Elizabeth J. Cabraser
Elizabeth J. Cabraser
**Lieff Cabraser Heimann & Bernstein, LLP**
275 Battery Street
29th Floor
San Francisco, CA  94111-3339

-and-

250 Hudson Street
8th Floor
New York, NY  10013-1413

cc:  MDL Counsel of Record

# Exhibit 1

## [PROPOSED] ECONOMIC LOSS DEADLINES

| Deadline | Submission | Party or Parties |
|---|---|---|
| May 18, 2018 | Plaintiff Expert Rebuttal Reports | Lead Counsel |
| June 22, 2018 | Deadline to Depose New GM's Experts and Plaintiffs' Rebuttal Experts | Both Parties |
| June 29, 2018 | Summary Judgment Motion | New GM |
| June 29, 2018 | New GM's *Daubert* Motions (if any) in connection with its Summary Judgment Motion | New GM |
| June 29, 2018 | Class Certification Motion | Lead Counsel |
| August 24, 2018 | Summary Judgment Opposition Brief | Lead Counsel |
| August 24, 2018 | Plaintiffs' Daubert Motions (if any) in connection with GM's Motion for Summary Judgment | Lead Counsel |
| August 24, 2018 | Plaintiffs' response to GM's June 29 *Daubert* Motions | Lead Counsel |
| August 24, 2018 | Class Certification Opposition Brief | Lead Counsel |
| August 24, 2018 | New GM's remaining *Daubert* Motions (if any) limited to Plaintiffs' Motion for Class Certification (motions must not duplicate arguments as to any experts already the subject of GM's June 29 *Daubert* Motions) | New GM |
| September 21, 2018 | Summary Judgment Reply Brief | New GM |
| September 21, 2018 | New GM's reply in support of June 29 *Daubert* Motions and Opposition to Plaintiff's *Daubert* Motions | New GM |
| September 21, 2018 | Class Certification Reply Brief | Lead Counsel |
| September 21, 2018 | Plaintiffs' opposition to New GM's August 24 *Daubert* Motions | Lead Counsel |
| October 12, 2018 | New GM's reply in support of its August 24 *Daubert* Motions | New GM |

| Deadline | Submission | Party or Parties |
|---|---|---|
| October 12, 2018 | Plaintiffs' reply in support of their August 24 *Daubert* Motions | Lead Counsel |
| October or November 2018 (or as soon thereafter as is reasonably practicable) | Class Certification/ Summary Judgment Hearing | Both Parties |