**HEARING DATE & TIME: To be determined**
**OBJECTION DEADLINE: To be determined**

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
T: 212-813-8800
E: wweintraub@goodwinlaw.com
E: gfox@goodwinlaw.com

*Counsel for Pre-Closing Accident Plaintiffs*
*Represented by Hilliard Martinez Gonzales*
*L.L.P. and The Law Offices of Thomas J. Henry*
*Listed on Exhibit A o the Motion*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                           :
In re:                                                     :          Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,        :          Case No.: 09-50026 (MG)
            f/k/a General Motors Corp., et al.,       :
                                                           :
                              Debtors.        :          (Jointly Administered)
-----------------------------------------------------------X

**SUPPLEMENTAL OMNIBUS MOTION BY**
**CERTAIN PRE-CLOSING ACCIDENT PLAINTIFFS FOR AUTHORITY**
**TO FILE LATE PROOFS OF CLAIM FOR PERSONAL INJURIES AND**
**WRONGFUL DEATHS IN CONNECTION WITH SETTLEMENT WITH**
**THE MOTORS LIQUIDATION COMPANY GUC TRUST**

# TABLE OF CONTENTS

**Page**

**BACKGROUND** ................................................................................................................. 1

**ARGUMENT** ..................................................................................................................... 6

A.     When the Bankruptcy Court's Equitable Mootness Ruling was Vacated, Plaintiffs with Due Process Violations Were Freed to File and Prosecute Late Proofs of Claim Against the GUC Trust, Which, in Turn, Facilitated the Negotiation of the GUC Trust Settlement ......................................................... 6

1.     *Ignition Switch Pre-Closing Accident Plaintiffs and the Initial Late Claims Motion* ........ 6

2.     *Pre-Closing Accident Plaintiffs and the Supplemental Late Claims Motion*.................... 12

B.     Because the Movants Meet the Requisite Standard for Seeking Allowance of their Proofs of Claim Notwithstanding the Passage of the Bar Date, the Proposed Settlement of this Dispute with the GUC Trust Easily Meets the Applicable Factors for Approving a Compromise and Settlement ...................................................... 14

1.     *Permission to File Late Claims Would be Warranted  Even in the Absence of the GUC Trust Settlement* ...................................................................................................... 14

2.     *Settlement of the Movants' Claims by  Folding this Supplemental Motion into the Pending  Settlement is Appropriate Under Bankruptcy Rule 9019* ................................. 20

**CONCLUSION** ................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AMR Corp.*,
   492 B.R. 660 (Bankr. S.D.N.Y. 2013) ......................................................................7

*In re Best Prods. Co., Inc.*,
   140 B.R. 353 (Bankr. S.D.N.Y. 1992) ......................................................................7

*City of New York v. New York, New Haven & Hartford R.R. Co.*,
   344 U.S. 293, 73 S. Ct. 299, 97 L. Ed. 2d 333 (1953) ............................................7

*Cty. of Suffolk v. Stone & Webster Eng'g Corp.*,
   106 F.3d 1112 (2d Cir. 1997)..................................................................................10

*In re Dana Corp.*,
   No. 06-10354 (BRL), 2007 WL 1577763 (Bankr. S.D.N.Y. May 30, 2007) ....................7, 16

*Elliott v. General Motors LLC (In re Motors Liquidation Co.)*,
   829 F.3d 135 (2d Cir. 2016)............................................................... *passim*

*In re First Magnus Fin. Corp.*,
   415 B.R. 416 (Bankr. D. Ariz. 2009) .....................................................................17

*Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*,
   419 F.3d 115 (2d Cir. 2005)....................................................................................16

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015), *aff'd in part, rev'd in part and vacated*
   *in part sub nom.* ................................................................................. *passim*

*In re Motors Liquidation Co.*,
   580 B.R. 319 (Bankr. S.D.N.Y. 2018)......................................................................5

*N. River Ins. Co. v. Philadelphia Reinsurance Corp.*,
   63 F.3d 160 (2d Cir. 1995)......................................................................................11

*In re Pettibone Corp.*,
   162 B.R. 791 (Bankr. N.D. Ill. 1994) ....................................................................16

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993)............................................................................................4, 16

*In re Residential Capital, LLC*,
   No. 12-12020 (MG), 2015 WL 2256683 (Bankr. S.D.N.Y. May 11, 2015) ....................7, 15

*Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,
  600 F.3d 135 (2d Cir. 2010) (*per curiam*) ..............................................................................15

*U.S. v. Cardinal Mine Supply, Inc.*,
  916 F.2d 1087 (6th Cir. 1990) ..............................................................................................7

*In re William B. Wilson Mfg. Co.*,
  59 B.R. 535 (Bankr. W.D. Tex. 1986) ..................................................................................16

*In re XO Commc'ns, Inc.*,
  301 B.R. 782 (Bankr. S.D.N.Y. 2003) ...................................................................................6

*In re Yoder Co.*,
  758 F.2d 1114 (6th Cir. 1985) ..............................................................................................16

**Statutes**

11 U.S.C. § 105(a) .......................................................................................................................1

Bankruptcy Code section 502(a)....................................................................................................9

Federal Rule of Bankruptcy Procedure 9006(b)(1) ............................................................1, 15, 16

The Pre-Closing Accident Plaintiffs[1] listed on the attached <u>Exhibit A</u> (the "<u>Movants</u>"), by and through their undersigned counsel, hereby move (the "Supplemental <u>Motion</u>") pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), 11 U.S.C. § 105(a), the April 2015 Decision, the June 2015 Judgment, and the February 8, 2012 Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims [Dkt. No. 11394] (the "<u>Late Filed Claims Order</u>"), for an order permitting the Movants to file late claims against the estate of Motors Liquidation Company, *et al.* (the "<u>Debtors</u>") and for those claims to be deemed timely as part of and in connection with the pending settlement between the Signatory Plaintiffs and the GUC Trust.[2]  The proofs of claim of the Movants are attached as <u>Exhibit B</u>.  In support of this Supplemental Motion, the Movants respectfully state as follows:

## **BACKGROUND**

In April 2015,[3] the Bankruptcy Court held that Old GM's knowledge of the Ignition Switch Defect, its failure to initiate a recall of the Subject Vehicles or "send out *any* recall notices" even though such recall was required, and its failure to "provide *any* alternative form of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement attached to the GUC Trust Settlement Motion [Dkt. No. 14293] (as defined in the prefixed Notice of this Motion).  For the avoidance of doubt, "<u>Pre-Closing Accident Plaintiffs</u>" means persons asserting personal injury or wrongful death claims arising from accidents occurring before July 10, 2009, involving vehicles manufactured by Old GM that were later recalled by New GM in 2014 pursuant to Recall Nos. 14V-355, 14V-394, and 14V-400.  Pre-Closing Accident Plaintiffs do not include **Ignition Switch** Pre-Closing Accident Plaintiffs injured or killed in accidents occurring before July 10, 2009, involving vehicles manufactured by Old GM that contained the Ignition Switch Defect and that were later recalled in Recall No. 14V-047.

[2] Each of the Movants is a Signatory Plaintiff to the Settlement Agreement.  On May 2, 2018, the GUC Trust filed the GUC Trust Settlement Motion and the Estimation Motion [Dkt. Nos. 14293 and 14294, respectively] seeking approval and implementation of the GUC Trust Settlement.  The terms of the GUC Trust Settlement are more particularly described in those motions.  The Settlement Agreement is attached to the GUC Trust Settlement Motion as an exhibit.  The Settlement Agreement was amended on May 22, 2018, and the Settlement Agreement, as amended, (the "<u>Amended Settlement Agreement</u>") was filed with the Bankruptcy Court on May 22, 2018 [Dkt. No. 14312].  All references to the Settlement Agreement shall include the Amended Settlement Agreement unless otherwise stated.

[3] *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015), *aff'd in part, rev'd in part and vacated in part sub nom. Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016) (hereinafter, the "<u>April 2015 Decision</u>").

notice to those with Ignition Switch Defects," effectively prevented the Ignition Switch Pre-Closing Accident Plaintiffs from timely asserting claims against Old GM arising from the Ignition Switch Defect. *April 2015 Decision*, 529 B.R. at 574 n.214. These claimants were known creditors of Old GM at the time it filed for bankruptcy but Old GM did not apprise them of the existence of the Ignition Switch Defect before the November 30, 2009 bar date (the "Bar Date") and, consequently, those claimants were not able to file timely proofs of claim based upon the Ignition Switch Defect.

On July 13, 2016, the Second Circuit held that "Old GM knew or should have known with reasonable diligence about the [Ignition Switch Defect]" and, thus, upheld the Bankruptcy Court's determination that the Ignition Switch Pre-Closing Accident Plaintiffs were known creditors who did not receive constitutionally sufficient notice in connection with Old GM's chapter 11 case. *See Second Circuit Decision*, 829 F.3d at 161.

The Bankruptcy Court also held in its April 2015 Decision that the denial of constitutionally sufficient notice of the Bar Date prejudiced the Ignition Switch Pre-Closing Accident Plaintiffs and that the "obvious" remedy for that due process violation would be granting such claimants leave to file late claims. *See April 2015 Decision*, 529 B.R. at 573-74, 583 ("the failure to send out Ignition Switch Defect recall notices . . . resulted in the denial of the notice that due process requires"; "the denial of timely notice of the Old GM Bar Date prejudiced the Plaintiffs with respect to any claims they might have filed against Old GM"; "The remedy with respect to the denial of notice sufficient to enable the filing of claims before the Bar Date is obvious. That is leave to file late claims."). The Bankruptcy Court's rulings with respect to the

prejudice suffered in connection with the improper notice of the Bar Date and the proper remedy for that due process violation were not appealed and remain law of the case.[4]

Although the Bankruptcy Court ruled in its April 2015 Decision that the Ignition Switch Pre-Closing Accident Plaintiffs' due process rights were violated in connection with the Bar Date and that they should be allowed to file late claims, the Bankruptcy Court concurrently ruled in that decision that any late proofs of claim that Ignition Switch Pre-Closing Accident Plaintiffs filed against the GUC Trust would be barred pursuant to the doctrine of equitable mootness. *Id.* at 592. Simply put, the Bankruptcy Court negated its due process ruling and rendered any request to file late claims a futile act by effectively and preemptively denying any motion for leave to file late claims by ruling that such a motion would be barred by equitable mootness.

On appeal, the Second Circuit vacated the Bankruptcy Court's equitable mootness holding as an advisory opinion. *See Second Circuit Decision*, 829 F.3d at 166-68.[5] Because the Second Circuit confirmed that the Ignition Switch Pre-Closing Accident Plaintiffs had suffered an actionable due process violation with respect to the Bar Date and that it was, therefore, premature to determine that any claims they may assert against the GUC Trust might be equitably moot, the Ignition Switch Pre-Closing Accident Plaintiffs (in coordination with the other parties in interest) determined it was appropriate to file proofs of claim to seek to recover what amounts may be available to them from the GUC Trust (in addition to pursuing successor liability claims against New GM pursuant to the *Second Circuit Decision* and any other claims

---

[4] Two of the "Four Threshold Issues" briefed in the Bankruptcy Court were the "Remedies Threshold Issue" and the "Old GM Claim Threshold Issue." *See Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect Thereto, and (III) Adversary Proceeding No. 14-01929*, entered on July 11, 2014 [Dkt. No. 12770] (the "July 11 Scheduling Order")

[5] It is worth noting that the Second Circuit declined to resolve "whether it is appropriate for a bankruptcy court – as opposed to an appellate court – to apply equitable mootness, which appears to be a recent phenomenon," but noted that the Second Circuit's equitable mootness cases "have all involved an appellate body applying the doctrine in the first instance." *Id.* at 167 n.30.

that may be available to them).  Accordingly, on December 22, 2016, certain Ignition Switch Pre-Closing Accident Plaintiffs represented by the undersigned law firms filed an *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [Dkt. No. 13807] (the "Initial Late Claims Motion"), seeking a ruling on an omnibus basis that they may file their proofs of claim and seek to prosecute such claims as if they were timely filed.[6]  Notably, because at that time, there had not yet been an adjudicated due process violation or similar determination for any defects other than the Ignition Switch Defect, plaintiffs with claims arising from Pre-Closing accidents involving other defects (even defects similar to the Ignition Switch Defect, but subject to a different recall) were not, at that time, in a position to file a similar motion.[7]

After the Ignition Switch Pre-Closing Accident Plaintiffs filed the Initial Late Claims Motion, both New GM and the GUC Trust opposed the Initial Late Claims Motion, limited written discovery was taken of the moving claimants.  The parties also briefed such questions as whether the "*Pioneer* factors"[8] applied to a situation in which proper notice of the bar date was not given to a known claimant, and if they did, whether issues of "tolling" impacted whether the Initial Late Claims Motion should be granted.[9]

Following the conclusion of briefing, but before this Court ruled on the Initial Late Claims Motion, settlement discussions commenced between (x) the GUC Trust (supported by a

---

[6] The Initial Late Claims Motion was limited to accidents involving vehicles with the Ignition Switch Defect.

[7] As will be discussed in greater detail below, Movants did not file late proofs of claim before the deadline set by this Court in its Order to Show Cause [Dkt. No. 13802] because (1) the Movants did not, at that time, have the benefit of an adjudicated due process violation; (2) the Order to Show Cause continued in place a long-standing stay of discovery in the Bankruptcy Court; and (3) unlike the present circumstances (*i.e.*, the recent entry into the GUC Trust Settlement with the GUC Trust), at that time, the GUC Trust would have opposed any late claims motion by the Movants.

[8] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

[9] *See* Brief on Applicability of *Pioneer* and Tolling Issues In Connection with [Initial Late Claims Motion], filed on March 6, 2017 [Dkt. No. 13874].

majority of GUC Trust Unitholders), one the one hand, and (y) certain Ignition Switch Pre-Closing Accident Plaintiffs and the representatives of persons who asserted economic loss claims on account of defects in certain recalled vehicles, on the other hand.[10]

The foregoing discussions resulted in a settlement embodied in a settlement agreement that was not executed by the parties, which was later disavowed by the GUC Trust after the settlement had been publicly announced. This dispute resulted in a trial in December 2017 over whether the unsigned settlement agreement could be enforced against the GUC Trust by the settling claimants. Following a two-day trial, on January 18, 2018, this Court held the unsigned settlement agreement was not enforceable.[11]

Undeterred, the parties tried again to settle the Initial Late Claims Motion and the Economic Loss Claimants' Late Claims Motion with the GUC Trust. This time, the GUC Trust, represented by new counsel, executed the Settlement Agreement on April 25, 2018. The terms of the GUC Trust Settlement are outlined in the GUC Trust Settlement Motion. The same Ignition Switch Pre-Closing Accident Plaintiffs that were parties to the aborted settlement agreement were again "Signatory Plaintiffs" to the revived and revised Settlement Agreement. In addition, certain Pre-Closing Accident Plaintiffs (who are the Movants here) were also "Signatory Plaintiffs" to the Settlement Agreement. The late claims of the Movants are being settled as part of the GUC Trust Settlement. *See* Settlement Agreement at ¶ MM and § 2.9.

Each of the Movants (as Signatory Plaintiffs to the Settlement Agreement) contends that he or she suffered personal injuries or wrongful deaths in Pre-Closing accidents involving vehicles manufactured by Old GM and that were later recalled by New GM in 2014 in Recall

---

[10] At the same time as certain Ignition Switch Pre-Closing Accident Plaintiffs filed their Initial Late Claims Motion, persons asserting economic losses resulting from their overpayment for vehicles manufactured by Old GM that were later recalled by New GM filed a late claims motion, *Motion for an Order Granting Authority to File Late Class Proofs of Claim* [Dkt. No.13806] (the "Economic Loss Claimants' Late Claims Motion").

[11] This Court's written decision is reported at *In re Motors Liquidation Co.*, 580 B.R. 319 (Bankr. S.D.N.Y. 2018).

Nos. 14V-355, 14V-394, and 14V400.  These Pre-Closing Accident Plaintiffs contend they were

victims of the same due process violation and the same prejudice relative to the Bar Date as the

Ignition Switch Pre-Closing Accident Plaintiffs, whose rights were vindicated by the Bankruptcy

Court and the Court of Appeals.  Accordingly, the GUC Trust agreed to fold the Movants into

the Settlement Agreement.  The Settlement Agreement contemplates the Signatory Plaintiffs that

were Pre-Closing Accident Plaintiffs would file this Motion.  *See* Settlement Agreement at ¶¶

GG, II, MM.

As stated in the Settlement Agreement and herein, the Movants (as Pre-Closing Accident

Plaintiffs) contend the due process violations concerning known defects in Old GM vehicles

covered by Recall Nos. 14V-355, 14V-394, and 14V-400 (which are all ignition switch-related

defects that are virtually identical in nature to the Ignition Switch Defect) are substantially

similar to the adjudicated due process violation concerning Old GM vehicles covered by Recall

No. 14V-047 (which concerns the infamous Ignition Switch Defect).  Even if the GUC Trust

does not concede the contentions of the Movants regarding the due process violations they now

assert, this dispute is appropriate for resolution as part of the GUC Trust Settlement.

## ARGUMENT

**A.      When the Bankruptcy Court's Equitable Mootness Ruling was Vacated,
         Plaintiffs with Due Process Violations Were Freed to File and Prosecute Late
         Proofs of Claim Against the GUC Trust, Which, in Turn, Facilitated the
         Negotiation of the GUC Trust Settlement**

### 1.      *Ignition Switch Pre-Closing Accident
            Plaintiffs and the Initial Late Claims Motion*

"[T]he Due Process Clause of the Fifth Amendment dictates that a debtor's creditors

receive notice of the debtor's bankruptcy case and applicable bar date so that creditors have an

opportunity to make any claims they may have against the debtor's estate."  *In re XO Commc'ns,
Inc.*, 301 B.R. 782, 791-92 (Bankr. S.D.N.Y. 2003) (citing *In re Drexel Burnham Lambert Grp.*

6

*Inc.*, 151 B.R. 674, 679 (Bankr. S.D.N.Y. 1993)).  It is well-established that if a known creditor

has not received the actual notice of a claims bar date that due process requires, its claim cannot

be barred as untimely.  *See City of New York v. New York, New Haven & Hartford R.R. Co.*, 344

U.S. 293, 73 S. Ct. 299, 97 L. Ed. 2d 333 (1953); *In re Residential Capital, LLC*, No. 12-12020

(MG), 2015 WL 2256683, at *6 (Bankr. S.D.N.Y. May 11, 2015) ("'[I]f a debtor who files for

chapter 11 bankruptcy protection does not give 'reasonable notice' to a creditor of the

bankruptcy proceeding and the applicable bar date(s), the creditor's proof of claim cannot be

constitutionally discharged.'"); *In re AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) ("a

known creditor must receive proper, adequate notice before its claim is barred forever"); *In re

Dana Corp.*, No. 06-10354 (BRL), 2007 WL 1577763, at *3 (Bankr. S.D.N.Y. May 30, 2007)

(same); *In re Best Prods. Co., Inc.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992) (same).  Indeed,

courts have held that due process requires that when a creditor does not receive adequate notice,

it "must be permitted to file [a claim] tardily. . . ."  *U.S. v. Cardinal Mine Supply, Inc.*, 916 F.2d

1087, 1089 (6th Cir. 1990).

In its April 2015 Decision, the Bankruptcy Court found that the notice of the Bar Date

provided to Ignition Switch Pre-Closing Accident Plaintiffs was deficient for at least two

reasons.  <u>First</u>, as "known creditors," the Ignition Switch Pre-Closing Accident Plaintiffs were

entitled to *actual* notice of the Bar Date.  *See April 2015 Decision*, 529 B.R. at 525, 560.

<u>Second</u>, because there was no recall prior to the Bar Date that alerted Ignition Switch Pre-

Closing Accident Plaintiffs to the existence of the Ignition Switch Defect and the notice did not

mention the existence of the Ignition Switch Defect, the notices themselves were insufficient to

put the Ignition Switch Pre-Closing Accident Plaintiffs on notice that they had Ignition Switch

Defect-related claims.  *See id.* at 525, 556-57; *see also id.* at 574, n.214 ("Old GM failed to send

out any recall notices, or provide any alternative form of notice to those with Ignition Switch

Defects."). Specifically, the Bankruptcy Court wrote:

> [b]y reason of its failure to provide the Plaintiffs with either the
> notice required under the Safety Act or any other form of written
> notice, Old GM failed to provide the Plaintiffs with the notice that
> due process requires. And because that failure prejudiced them in
> filing timely claims, the Plaintiffs were prejudiced as a result. The
> failure to give the Plaintiffs the notice that due process requires,
> coupled with the prejudice to them that resulted, denied the
> Plaintiffs the requisite due process.

*Id.* at 574.

As such, each Ignition Switch Pre-Closing Accident Plaintiff was entitled to actual notice

of the Bar Date by first class mail. Moreover, regardless of whether notice of the Bar Date was

sent by first class mail or was published in a newspaper of general circulation, the content of the

notice was deficient. This is because the form of notice did not mention the Ignition Switch

Defect and there was no other information about the existence of the Ignition Switch Defect

(such as a recall notice) disseminated to the Movants that could be determined to have

supplemented the information contained in the notice.

Because it determined there was a due process violation that prejudiced the Ignition

Switch Pre-Closing Accident Plaintiffs, the Bankruptcy Court held that that group of claimants

"may petition the Bankruptcy Court (on motion and notice) for authorization to file a late or

amended proof of claim against the Old GM bankruptcy estate." June 2015 Judgment at 2; *April

2015 Decision*, 529 B.R. at 583 ("[t]he remedy with respect to the denial of notice sufficient to

enable the filing of claims before the Bar Date is obvious. That is leave to file late claims.").

However, prior to its April 2015 Decision, the Bankruptcy Court had already put into

place another impediment that prevented the Ignition Switch Pre-Closing Accident Plaintiffs

from filing late proofs of claim. Well before February-March 2014 when the existence of the

Ignition Switch Defect (and the other defects cataloged in Recall Nos. 14V-355, 14V-394, and 14V-400) finally came to light, on February 8, 2012 the Bankruptcy Court entered the Late Filed Claims Order.  That order reversed the statutory presumption of Bankruptcy Code section 502(a) that proofs of claim are deemed allowed unless objected to[12] and instead provided that claims filed after February 8, 2012 were deemed <u>disallowed</u>.  Specifically, pursuant to the Late Filed Claims Order, all claims filed after February 8, 2012 were deemed disallowed unless such claim (i) amended a timely filed claim, (ii) was filed with the consent of the GUC Trust, or (iii) was the subject of a Bankruptcy Court order deeming such late claim timely filed. *See Late Filed Claims Order at* 1-2.

The practical effect of the Late Filed Claims Order was to disallow any late claim <u>until</u> the claimant had a basis to seek allowance.  Until such time as the Bankruptcy Court determined in its April 2015 Decision that there had been a due process violation as to the Ignition Switch Pre-Closing Accident Plaintiffs, not only were the Ignition Switch Pre-Closing Accident Plaintiffs unaware that they had a basis to file a late claim against the GUC Trust, but even if they had filed a late claim before the April 2015 Decision, the filing of such claim would have been a futile act.  This is because such claims would have been deemed invalid pursuant to the Late Filed Claims Order and, absent consent from the GUC Trust (which was not forthcoming), before the April 2015 Decision there was no earlier basis for the Ignition Switch Pre-Closing Accident Plaintiffs to seek allowance of late claims.[13]

In addition to the impediment presented by the Late Filed Claims Order, the Bankruptcy Court ruled in its April 2015 Decision that any late claim filed by an Ignition Switch Pre-Closing

---

[12] "A claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest…objects."  11 U.S.C. § 502(a).

[13] In the absence of a due process violation, the Pre-Closing crash victims almost certainly would be considered <u>unknown</u> creditors that could be bound to the Bar Date by mere publication notice.

Accident Plaintiff would be barred as equitably moot. *April 2015 Decision*, 529 B.R. at 592.

The combined effect of the Bankruptcy Court's equitable mootness ruling and the Late Filed

Claims Order was to render the act of seeking permission to file a late proof of claim relating to

the Ignition Switch Defect a waste of time and resources. Given the twelve year concealment of

the Ignition Switch Defect,[14] followed by the August 2014 Motion to Enforce and the April 2015

Decision on equitable mootness, no basis existed to seek allowance of late claims relating to the

Ignition Switch Defect until July 2016 when the Second Circuit vacated the Bankruptcy Court's

equitable mootness ruling. Simply put, until the due process violation was adjudicated, the Late

Filed Claims Order and the Bar Date Order barred an untimely proof of claim; and even then, the

equitable mootness ruling in the April 2015 Decision was a further bar until July 2016.

Things have now changed. The Second Circuit affirmed the Bankruptcy Court's ruling

that the Ignition Switch Pre-Closing Accident Plaintiffs were known creditors who did not

receive proper notice in connection with Old GM's bankruptcy. *Second Circuit Decision*, 829

F.3d at 160-61. The Bankruptcy Court's ruling that the due process violation vis-à-vis the Bar

Date prejudiced the Ignition Switch Pre-Closing Accident Plaintiffs and that the appropriate

remedy for that violation was granting leave to file a late proof of claim was never appealed and

is now law of the case. *See General Motors LLC's Statement of Issues to Be Presented on*

*Appeal and Designation of Additional Items to Be Included in the Record on Appeal* [Dkt. No.

13261]; *[GUC Trust's and Participating Unit Holders'] Statement of Issues on Cross-Appeal*

*and Designation of Items to Be Included in the Record on Appeal* [Dkt. No. 13264]; *Cty. of*

*Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) ("a decision made

---

[14] *See Second Circuit Decision*, 829 F.3d at 148-50 (chronicling history of the Ignition Switch Defect from 2002, when "prototypes consistently failed to meet technical specifications" and almost immediately after production "customers complained of moving stalls, sometimes at highway speeds," to February 2014, when New GM began its Ignition Switch Defect related recalls).

at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case."); *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir. 1995) ("a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.") (internal quotes omitted).

When the Second Circuit vacated the Bankruptcy Court's equitable mootness ruling as an improper advisory opinion, *see Second Circuit Decision*, 829 F.3d at 166-68, the last impediment to Ignition Switch Pre-Closing Accident Plaintiffs pursuing the remedy the Bankruptcy Court proposed in its April 2015 Decision – seeking authority to file late proofs of claim and to have those claims allowed and paid from GUC Trust assets – was removed.  As a result, certain Ignition Switch Pre-Closing Accident Plaintiffs now had an actionable due process violation and now were able to file the Initial Late Claims Motion without the risk of summary disallowance based upon publication notice (which is only sufficient notice to known claimants) or equitable mootness.

After certain Ignition Switch Pre-Closing Accident Plaintiffs filed the Initial Late Claims Motion, briefed several issues concerning the timeliness and propriety of their late claims, and responded to written discovery, but before any rulings were issued by this Court, at the urging of this Court, settlement discussions commenced.  These discussions eventually yielded the pending GUC Trust Settlement as embodied and described in the GUC Trust Settlement Motion and the Estimation Motion.

2.    *Pre-Closing Accident Plaintiffs
and the Supplemental Late Claims Motion*

Each of the foregoing arguments applies with equal force to the Movants here.  The

Movants are Signatory Plaintiffs to the Settlement Agreement and are also Pre-Closing Accident

Plaintiffs seeking damages for claims for personal injuries or wrongful deaths arising from

accidents involving Old GM that occurred before July 10, 2009, involving vehicles with defects

other than the Ignition Switch Defect.

As more particularly outlined and argued in the Settlement Motion, the GUC Trust, as

one of the Parties to the Settlement Agreement, and as the moving party under the GUC Trust

Settlement Motion, believes settlement of the Initial Late Claims Motion (and this Motion as

well) is fair, reasonable, and appropriate for the reasons described in the GUC Trust Settlement

Motion.

Specifically, the Movants contend there was sufficient knowledge within Old GM of the

defects in Recall Nos. 14V-355, 14V-394, and 14V-400 that the same concealment/non-

disclosure, the same due process failures, and, consequently, the same prejudice as was

determined for the Ignition Switch Pre-Closing Accident Plaintiffs with respect to Recall No.

14V-047, would be provable by the Movants for Recall Nos. 14V-355, 14V-394, and 14V-400.

As discussed above, although the Order to Show Cause set a deadline for filing late

claims, at the time of the deadline, the Movants were not yet ready to prove a due process

violation concerning notice of the Bar Date, the stay of discovery in the Bankruptcy Court was

still in effect, and the GUC Trust was a determined opponent of any late proofs of claim.  But

since that time, things have changed: (1) information analyzed from discovery in the GM MDL

solved any serious questions of proof regarding Old GM's knowledge of certain defects; and (2)

12

the GUC Trust has agreed to settle both the Initial Late Claims Motion and this Supplemental

Motion pursuant to the Settlement Agreement.

In addition, the Movants here had two further impediments that the Pre-Closing Ignition

Switch Plaintiffs did not.  First, no Motion to Enforce was ever filed against the Pre-Closing

Accident Plaintiffs by New GM, so their issues were held in abeyance for years.[15]  Second, the

Motion to Enforce that was filed against the Ignition Switch Pre-Closing Accident Plaintiffs was

filed <u>after</u> Motions to Enforce were filed against economic loss claimants.[16]  As a result of the

timing of the filings of the Motions to Enforce, the path for briefing the "Four Threshold Issues"

was already laid in the May 16 and the July 11 Scheduling Orders before the Ignition Switch

---

[15] Three Motions to Enforce were filed by New GM in connection with the "Four Threshold Issues" that were decided in the April 2015 Decision: (i) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [Dkt. No. 12620]; (ii) *Motion of General Motors LLC Pursuant to 11 U.S.C §§ 105 and 363 to Enforce this Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [Dkt. No. 12807] (the "<u>August 2014 Motion to Enforce</u>"); and (iii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 [Dkt. No. 12808].  The first Motion to Enforce was limited to economic loss claims involving the Ignition Switch Defect; the second Motion to Enforce was limited to Ignition Switch Pre-Closing Accident Plaintiffs; and the third Motion to Enforce was limited to economic loss claim involving defects other than the Ignition Switch Defect.  The first two Motions to Enforce raised issues that were addressed in the "Four Threshold Issues" briefing.  The third Motion to Enforce was expressly held in abeyance.  As stated, no Motion to Enforce was ever filed addressing the claims of Pre-Closing Accident Plaintiffs.  Consequently, there never was a due process ruling on other defects.  Notably, this Court held, in a different but related context, that no clear opportunity had been signaled to accident victims other than those with the Ignition Switch Defect that the time had come and passed to prove a due process violation for <u>other</u> defects.  *See Memorandum Opinion and Order Granting in Part New GM's Motion to Enforce Sale Order Against Pitterman Plaintiffs and Resolving 2016 Threshold Issue Two: Whether Non-Ignition Switch Plaintiffs are Barred from Asserting Independent Claims Against New GM*, entered on June 7, 2017 [Dkt. No. 13959], at 14-15 ("[F]or present purposes, the Court considers footnote 70 as dicta only.").

[16] As shown in footnote 15, *supra*, there was a gap of more than three (3) months between New GM's filing of the first Motion to Enforce on April 21, 2014 and second Motion to Enforce on August 1, 2014.  The "Four Threshold Issues" to be briefed were already set by the time the August 2014 Motion to Enforce was filed.  Likewise, several scheduling orders had already been entered by the Bankruptcy Court before the August 2014 Motion to Enforce was filed.  *See Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed By Certain Plaintiffs In Respect Thereto, and (III) Adversary Proceeding No. 14-01929*, entered May 16, 2014 [Dkt. No. 12697] (the "<u>May 16 Scheduling Order</u>"); and the July 11 Scheduling Order, defined in footnote 4, *supra*.  Consequently, the scheduling order applicable to the August 2014 Motion to Enforce (*See Scheduling Order Regarding Motion of General Motors LLC to Enforce this Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, entered September 15, 2014 [Dkt. No. 12897] (the "<u>Sept. 15 Scheduling Order</u>")) simply incorporated the prior scheduling orders.

13

Pre-Closing Accident Plaintiffs arrived on August 1, 2014, by virtue of the August 2014 Motion

to Enforce – which was limited to **Ignition Switch** Pre-Closing Accident Plaintiffs.  The bedrock

of that path was the "Stipulated Facts" (*See Agreed and Disputed Stipulations of Fact Pursuant

to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014

[Dkt. No. 12826]) that were developed by New GM and the economic loss claimants prior to the

arrival of the Ignition Switch Pre-Closing Accident Plaintiffs to address (without discovery or

trial) due process issues that were expressly limited to the Ignition Switch Defect.  The

Stipulated Facts were keyed only to the Ignition Switch Defect and no other defect.  As a result,

due process issues for other defects remained in limbo in this Court.

The Movants believe they can demonstrate a due process violation with respect to the

notice given by Old GM of the Bar Date Order using evidence developed and analyzed in the

GM MDL proceedings in part because the ignition switch defects that were finally disclosed in

Recall Nos. 14V-355, 14V-394, and 14V-400 were virtually identical in nature to the Ignition

Switch Defect disclosed in Recall No. 14V-047.[17]

**B.    Because the Movants Meet the Requisite Standard for Seeking Allowance of their Proofs of Claim Notwithstanding the Passage of the Bar Date, the Proposed Settlement of this Dispute with the GUC Trust Easily Meets the Applicable Factors for Approving a Compromise and Settlement**

**1.    *Permission to File Late Claims Would be Warranted Even in the Absence of the GUC Trust Settlement***

Because there is a credible dispute over whether the Movants were denied due process in

connection with the Bar Date, and thus whether they should be permitted to assert their late

---

[17] There have been more than 22 Million pages of documents produced by New GM in the GM MDL.  Pursuant to Order No. 34, entered in the GM MDL on February 6, 2015 [Dkt. No. 573], the focus of the proceedings in the GM MDL up through the date given in the Order to Show Cause for filing late claims motions was on Recall No. 14V-047 (the "Ignition Switch") and Bellwether Trials concerning Post-Closing accidents in vehicles with the Ignition Switch Defect. The focus in the GM MDL on the Ignition Switch Defect in combination with a similar focus in the Bankruptcy Court on the Ignition Switch Defect impeded the assimilation of information on potential due process violations for other recalls.

claims, the Movants should not be required to prove they must be permitted to file "late" claims

in order to settle their late claims under the Settlement Agreement.  Because of the GUC Trust

Settlement, Movants no longer have to pursue an adjudication (and possibly appeals) of whether

a due process violation occurred as to them.  That said, neglect (excusable or otherwise) had

nothing to do with the Movants missing the Bar Date.  The reason the Movants missed the Bar

Date was the concealment of the existence of the subject defects captured by Recall Nos. 14V-

355, 14V-394, and 14V-400 until years after the Bar Date had passed.  The failure to file timely

proofs of claim was the result of the due process violation advanced by the Movants.  Indeed,

under the Second Circuit's 2010 *Manville* decision, the remedy is clear:  the Movants should not

be bound by the Bar Date Order.  *Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re

Johns-Manville Corp.)*, 600 F.3d 135, 157-58 (2d Cir. 2010) (*per curiam*) ("Manville IV").[18]

However, even if the "excusable neglect" standard typically applied in situations where

the party seeking to act outside of a deadline is applicable here, the Movants believe that in the

absence of their settlement with the GUC Trust, they would easily meet the requirement that the

"lateness" of their proofs of claim is excusable.  Therefore, at a minimum, the Movants raise a

dispute which can appropriately be settled with the GUC Trust as part of the GUC Trust

Settlement Agreement.  In this regard, "[w]hen creditors fail to file claims before a bar date

despite having constitutionally sufficient notice to do so," Federal Rule of Bankruptcy Procedure

9006(b)(1) provides courts with the discretion to deem the claims timely filed if the failure to act

was the result of excusable neglect.  *Residential Capital*, 2015 WL 2256683 at *9 (emphasis

---

[18] In *Manville IV*, in connection with a settlement, the bankruptcy court entered orders in 1986 (as well as a "clarifying order" in 2004) that enjoined claims against certain settling insurers.  *Id*. at 141-42.  Years after entry of the 1986 orders, Chubb Indemnity Insurance Co. ("Chubb"), one of the parties purportedly subject to the injunction, argued that it could not be bound by the 1986 orders because, among other reasons, "it was not given constitutionally sufficient notice of the 1986 Orders."  *Id*. at 137, 142.  The Second Circuit, agreed that Chubb did not receive constitutionally sufficient notice of the 1986 orders and held that  because Chubb's due process rights were violated, it was "not bound by the terms of the 1986 Orders."  *Id*. at 158.  The Bar Order here serves the same injunctive purpose as the 1986 orders in *Manville IV*.

added); *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d

115, 121 (2d Cir. 2005) ("*Enron*").  Specifically, Rule 9006(b)(1) provides:

> [w]hen an act is required or allowed to be done at or within a
> specified period . . . by order of court, the court for cause shown
> may at any time in its discretion . . . on motion made after the
> expiration of the specified period permit the act to be done where
> the failure to act was <u>the result of excusable neglect</u>.

FED. R. BANKR. P. 9006(b)(1) (emphasis added).

In determining whether the failure to timely file a proof of claim is the result of

"excusable neglect," courts apply a four part test first articulated by the Supreme Court in

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395, 123 L. Ed. 2d 74, 113 S.

Ct. 1489 (1993) ("*Pioneer*"): (i) the danger of prejudice to the debtor; (ii) the length of the delay

and impact thereof on the proceedings; (iii) the reason for the delay, including whether it was

within the reasonable control of the movant, and (iv) whether the movant acted in good faith.

While courts have recognized that the inquiry is an equitable one and that "all relevant

circumstances surround the party's omission" must be considered, courts in the Second Circuit

accord particular weight to the third factor – the reason for the delay.  *Enron*, 419 F.3d at 122-23

(citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)); *Dana Corp.*, 2007

WL 1577763 at *4 (quoting *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y.

2006)).

In addition, courts have routinely "found excusable neglect where the creditor fails to

comply with the bar date because, through no fault of its own, it had no notice of that date."  *In

re William B. Wilson Mfg. Co.*, 59 B.R. 535, 538 (Bankr. W.D. Tex. 1986); *In re Yoder Co.*, 758

F.2d 1114, 1118 (6th Cir. 1985) ("nonreceipt of notice would clearly constitute excusable

neglect."); *In re Pettibone Corp.*, 162 B.R. 791, 814 (Bankr. N.D. Ill. 1994) (quotations omitted)

("[c]ourts have consistently found the lack of notice to 'known' creditors to constitute the

16

paradigm example of excusable neglect and freely grant motions to file late claims on behalf of known creditors who through no fault of their own, had no notice of the bar date.").

The Movants easily satisfy all four factors of the *Pioneer* test and should be permitted to prosecute their proofs of claim notwithstanding the passage of the Bar Date.

First, there can be no prejudice to the Debtors where, as here, Old GM has been liquidated and the delay in filing these claims is the result of Old GM's own due process violation (and New GM's concealment of the existence of the Ignition Switch Defect from the closing of the sale from Old GM in the summer of 2009 until February-March 2014). *See In re First Magnus Fin. Corp.*, 415 B.R. 416, 423 (Bankr. D. Ariz. 2009) ("[t]he Liquidating Trustee's argument that the late claim will cause judicial inefficiency and prejudice to the estate rings hollow in light of [the claimant's] right to due process and the Debtor's duties to provide adequate notice of the bar date to known creditors."). It is also worth noting that the vast majority of the GUC Trust's assets was distributed to Old GM creditors before New GM admitted to the existence of the defects captured by Recall Nos. 14V-355, 14V-394, and 14V-400 in early 2014. *See Second Circuit Decision*, 829 F.3d at 148 ("As of March 31, 2014, GUC Trust had distributed roughly ninety percent of its New GM securities and nearly 32 million units of GUC Trust"; "On February 7, 2014, New GM first informed the National Highway Traffic Safety Administration ('NHTSA') that it would be recalling, among other vehicles, the 2005 Chevrolet Cobalt. A defect in the ignition switch could prevent airbags from deploying."). To date, the due process violations have resulted in a windfall to Old GM's other creditors because those creditors have been paid (and may receive future payments) without dilution by the Movants' legitimate claims. In other words, it is the Movants and the other plaintiffs denied due process who have been prejudiced to date, not the Debtors or their other stakeholders.

09-50026-mg    Doc 14325    Filed 05/25/18    Entered 05/25/18 14:09:39    Main Document
Pg 22 of 26

By reason of the GUC Trust Settlement, however, there is a powerful new factor at play. As the Court is aware, because of the terms of the GUC Trust Settlement, the Additional Shares that might result from the so-called "accordion feature" of the AMPSA are exclusively reserved for the Signatory Plaintiffs and certain others denied due process; while all other creditors and the GUC Trust are being released, thus eliminating any prejudice to the Debtors or their other creditors. There is no prejudice to other creditors because, but for the late filed claims, the threshold trigger for the accordion feature of the AMPSA would not be reached.

Second, the length of the delay in filing the claims is appropriate here in light of the circumstances surrounding the delay. As discussed above, the Movants' delay in filing their proofs of claim resulted, first, from Old GM's failure to provide the Movants with appropriate and constitutionally mandated notice of the Bar Date and the subsequent concealment of the defects covered by the Recalls by New GM, and, second, from the circuitous, but highly controlled, Bankruptcy Court (and appeal) proceedings that focused on the Ignition Switch Defect to the exclusion of other defects.[19] Here, Movants diligently monitored the progress of the handling of the Ignition Switch Defect and acted when the evidence of due process violations

---

[19] The Bankruptcy Court's May 16, 2014 Scheduling Order tolled the Ignition Switch Plaintiffs' (*i.e.*, the "Economic Loss Plaintiffs") time to seek authority to file late proofs of claim until a final resolution on the "Four Threshold Issues," including appeals. *See* May 16 Scheduling Order, at 3. At the time the Bankruptcy Court entered the May 16 Scheduling Order, no motion to enforce the Sale Order had been filed with respect to either the Ignition Switch Pre-Closing Accident Plaintiffs or the Pre-Closing Accident Plaintiffs. After New GM filed its August 2014 Motion to Enforce against the Ignition Switch Pre-Closing Accident Plaintiffs, the Bankruptcy Court entered a supplemental order that "[u]ntil further order of the Court, the schedule governing New GM's Ignition Switch Motion to Enforce . . . shall govern the schedule for the Pre-Closing Accident Motion to Enforce." *See* Sept. 15 Scheduling Order, at 2. This provision tolled the time for the Ignition Switch Pre-Closing Accident Plaintiffs to seek to file late claims. The Sept. 15 Scheduling Order also required the Ignition Switch Pre-Closing Accident Plaintiffs to coordinate their efforts with each other and with the Economic Loss Plaintiffs in order to avoid repetition and duplicative arguments. *Id.* The Ignition Switch Pre-Closing Accident Plaintiffs coordinated with Designated Counsel for the Economic Loss Plaintiffs so that those parties moved ahead in tandem. Notably, however, no timetable for filing claims was ever set for the Pre-Closing Accident Plaintiffs, in part because the Bankruptcy Court was preoccupied with the Ignition Switch Defect and consistently prevented any new or different issues from interfering with the Court's focus on the Ignition Switch Defect, in part because New GM had not filed a Motion to Enforce against Pre-Closing Accident Plaintiffs, and in part because the Bar Date continued to prevent assertion of the late claims by the Movants and other similarly situated accident victims.

for Recall Nos. 14V-355, 14V-394, and 14V-400 had been developed and analyzed <u>and</u> the

ability to settle the "late claim dispute" with the GUC Trust finally materialized.

<u>Third</u>, the Movants' delay was not within their reasonable control; it was the result of the

Debtors' failure to provide appropriate notice of the Bar Date to its known creditors with claims

relating to the subject defects – defects that Movants believe they can credibly and forcefully

contend Old GM was aware of at the time it filed bankruptcy.  The Movants were unaware of the

existence of their ignition switch-related claims until after the recall notices were issued in 2014.

Almost immediately thereafter, the Ignition Switch Pre-Closing Accident Plaintiffs (but not the

Movants – who asserted different defects) were swept into highly structured proceedings in the

Bankruptcy Court that culminated in the April 2015 Decision and the June 2015 Judgment.

Because the April 2015 Decision provided that any claim that the Movants could have filed

against the GUC Trust would have been equitably moot, it was futile and wasteful for the

Movants to file proofs of claim prior to the Second Circuit overturning that ruling on appeal.

Once the Second Circuit vacated the equitable mootness ruling, the Movants were still stymied

by the problem that existed back in 2016 as to the strength of their due process claims.  However,

using both the evidence developed and analyzed in the GM MDL proceedings <u>and</u> the GUC

Trust's willingness to settle Movants' claims as part of the GUC Trust Settlement, the time was

ripe for Movants to be folded into the Settlement Agreement as Signatory Plaintiffs – as in fact

occurred.

<u>Fourth</u>, the Movants are merely seeking to have their legitimate claims deemed timely

filed as would have been the case absent the due process violation inflicted upon them.  But here,

because of the GUC Trust Settlement and the mechanism under the AMPSA for issuance of the

Additional Shares, the Movants' late claims do not impact the timely filed proof of claim of other creditors that, unlike Movants, were given due process.

Accordingly, the *Pioneer* factors are satisfied here and, even in the absence of the GUC Trust Settlement, the Movants should be permitted to file and prosecute their late proofs of claim.

2. ***Settlement of the Movants' Claims by Folding this Supplemental Motion into the Pending Settlement is Appropriate Under Bankruptcy Rule 9019***

The Movants, who are Signatory Plaintiffs to the Settlement Agreement, believe it is entirely appropriate for their late filed claims to be settled as part of the GUC Trust Settlement along with the late filed claims of the Ignition Switch Pre-Closing Accident Plaintiffs, who are also Signatory Plaintiffs to the Settlement Agreement.

The Movants contend they were denied due process in connection with the Bar Date. They also contend that, under the facts and circumstances of this case, any earlier assertion of their late claims would have required litigation over whether the due process violation had occurred at a time when (i) discovery in the Bankruptcy Court was still stayed, (ii) the focus in the GM MDL was still principally on the Ignition Switch Defect, and (iii) evidence in the GM MDL concerning other recalls was still being developed and analyzed. The pending settlement avoids the expense and uncertainty of litigation over whether the Movants should be permitted to file late claims.

As more expansively set forth in the GUC Trust Settlement Motion, and based upon the arguments made by the GUC Trust in that motion, settlement of this Supplemental Motion as part of the GUC Trust Settlement is supportable under Bankruptcy Rule 9019 for the same reasons that support the settlement of the Initial Late Claims Motion and the Economic Loss Claimants' Late Claims Motions as part of the GUC Trust Settlement.

20

The Movants hereby incorporate the arguments made in the GUC Trust Settlement Motion in support of the GUC Trust Settlement.

Based upon the foregoing, the Movants respectfully submit that the settlement of their late filed claims and any attendant issues is fair and equitable and falls within the lowest range of reasonableness.

## CONCLUSION

For the foregoing reasons, the Movants respectfully request entry of an order deeming the

Movants' proofs of claim timely filed and such other and further relief as this Court finds just

and proper.


Dated: May 25, 2018                                      Respectfully submitted,

                                                         /s/ *William P. Weintraub*
                                                         William P. Weintraub
                                                         Gregory W. Fox
                                                         GOODWIN PROCTER LLP
                                                         The New York Times Building
                                                         620 Eighth Avenue
                                                         New York, NY 10018
                                                         Tel.: 212.813.8800
                                                         Fax:  212.355.3333
                                                         wweintraub@goodwinlaw.com
                                                         gfox@goodwinlaw.com

                                                         *Counsel for Pre-Closing Accident Plaintiffs*
                                                         *Represented by Hilliard Martinez Gonzales*
                                                         *L.L.P. and The Law Offices of Thomas J. Henry*
                                                         *Listed on Exhibit A to the Motion*