**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------X
                                              :
In re:                                        :        Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,           :        Case No.: 09-50026 (MG)
         f/k/a General Motors Corp., et al.,  :
                                              :
                            Debtors.          :        (Jointly Administered)
------------------------------------------------------------X
```

<br>

**BRIEF OF THE SIGNATORY PLAINTIFFS AND GUC TRUST**
**ADDRESSING THE APPLICATION OF FED. R. CIV. PROC. 23 TO**
<u>**THE PENDING SETTLEMENT APPROVAL AND CLAIMS ESTIMATE MOTIONS**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .....................................................................................................................3

ARGUMENT ..........................................................................................................................6

I.   The Court May Approve The Notice Procedures And Settlement Agreement
     Without Certifying A Class Under Federal Rule 23..........................................................6

     A.   The Court Has Exclusive *In Rem* Jurisdiction To
          Determine All Rights Related To The Bankruptcy
          Estate, Including The Rights Of Absent Plaintiffs. ................................................7

     B.   The Proposed Notice Procedures Easily
          Satisfy Plaintiffs' Due Process Rights. .................................................................9

     C.   New GM Cites No Authority Requiring Rule 23 Certification For
          Approval Of A Bankruptcy Settlement Under Rule 9019. ...................................14

II.  The Court May Estimate Plaintiffs' Claims For Allowance And
     Distribution Purposes Without Certifying A Class Under Rule 23...................................17

     A.   The Plan, The GUC Trust Agreement And The Bankruptcy
          Code Provide For The Estimation Of Claims, Not Proofs Of Claims. .................17

     B.   Bankruptcy Courts May Estimate Unfiled Claims. ..............................................19

     C.   Rule 23 Certification Is Not Required For The Court
          To Estimate The "Allowed" Amount Of Plaintiffs' Claims
          And, Even If It Were, Plaintiffs Can Satisfy Its Requirements...........................21

III. New GM Does Not Have Standing To Object
     To The Settlement Stage On Rule 23 Grounds.............................................................23

CONCLUSION.....................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re A.H. Robins Co.,
    88 B.R. 742 (E.D. Va. 1988), aff'd, 880 F.2d 694 (4th Cir. 1989)....................................9, 17

Abeles v. Infotechnology, Inc. (In re Infotechnology, Inc.),
    89 F.3d 825, 1995 WL 723099 (2d Cir. 1995) ....................................................................10

In re Adelphia Bus. Sols., Inc.,
    341 B.R. 415 (Bankr. S.D.N.Y. 2003) ................................................................................17

In re Am. Reserve Corp.,
    840 F.2d 487 (7th Cir. 1988) .........................................................................................7, 15

Amchem Prods., Inc. v. Windsor,
    521 U.S. 591 (1997) ...........................................................................................................23

Baker v. Wash. Mut. Fin. Grp., LLC,
    193 F. App'x 294 (5th Cir. 2006) .......................................................................................12

In re Blockbuster Inc.,
    441 B.R. 239 (Bankr. S.D.N.Y. 2011) ................................................................................15

Breeden v. Kirkpatrick & Lockhart, LLP,
    268 B.R. 704 (S.D.N.Y. 2001), aff'd sub nom. Breeden v. Kirkpatrick &
    Lockhart, LLC (In re Bennett Funding Grp.), 336 F.3d 94 (2d Cir. 2003) ...........................24

Brophy v. Salkin,
    550 B.R. 595 (S.D. Fla. 2015) .............................................................................................8

In re Chemtura Corp.,
    448 B.R. 635 (Bankr. S.D.N.Y. 2011) ................................................................................19

Clapper v. Amnesty Int'l USA,
    568 U.S. 398 (2013) ....................................................................................................24, 25

In re Cont'l Airlines, Inc.,
    57 B.R. 842 (Bankr. S.D. Tex. 1985)..................................................................................17

In re Dial-A-Mattress Operating Corp.,
    No. 1-09-41966-DEM, 2009 WL 1851059 (Bankr. E.D.N.Y. June 24, 2009) ......................20

In re Eagle-Picher Indus., Inc.,
    189 B.R. 681 (Bankr. S.D. Ohio 1995) ....................................................................18, 20, 22

In re Elec. Books Antitrust Litig.,
    14 F. Supp. 3d 525 (S.D.N.Y. 2014) .................................................................. 15

In re Ephedra Prods. Liab. Litig.,
    329 B.R. 1 (S.D.N.Y. 2005) ................................................................................ 15

In re Fed.-Mogul Glob., Inc.,
    330 B.R. 133 (D. Del. 2005) ......................................................................... 20, 22

Finova Capital Grp. v. Larson Pharmacy Inc. (In re Optical Techs., Inc.),
    425 F.3d 1294 (11th Cir. 2005) ......................................................................... 11

In re Flores,
    No. 1:08–bk–19869–MT, 2013 WL 6186262 (Bankr. C.D. Cal. Nov. 25,
    2013) .................................................................................................................. 16

In re Glob. Indus. Techs., Inc.,
    645 F.3d 201 (3d Cir. 2011) .............................................................................. 25

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,
    530 U.S. 1 (2000) .............................................................................................. 19

In re Hibbard Brown & Co.,
    217 B.R. 41 (Bankr. S.D.N.Y. 1998) ................................................................... 6

In re Hoffinger Indus., Inc.,
    307 B.R. 112 (Bankr. E.D. Ark. 2004) ............................................................... 20

In re Johns-Manville Corp.,
    57 B.R. 680 (Bankr. S.D.N.Y. 1986) .................................................................... 7

In re Johns-Manville Corp.,
    581 B.R. 38 (Bankr. S.D.N.Y. 2018) .................................................................... 9

Juris v. Inamed Corp.,
    685 F.3d 1294 (11th Cir. 2012) ......................................................................... 12

Leber v. Citigroup 401(k) Plan Inv. Comm.,
    323 F.R.D. 145 (S.D.N.Y. 2017) ....................................................................... 12

Levy v. Lewis,
    635 F.2d 960 (2d Cir. 1980) ................................................................................ 7

MacArthur Co. v. Johns-Manville Corp.,
    837 F.2d 89 (2d Cir. 1988) .................................................................................. 8

In re Mandukich,
    87 B.R. 296 (Bankr. S.D.N.Y. 1988) .................................................................... 9

Martin v. Wilks,
    490 U.S. 755 (1989), superseded on other grounds by statute, Civil Rights Act
    of 1991, Pub. L. 102-166, 105 Stat. 1072................................................................14

In re Motors Liquidation Co.,
    447 B.R. 150 (Bankr. S.D.N.Y. 2011) ................................................................15

In re Motors Liquidation Co.,
    580 B.R. 319 (Bankr. S.D.N.Y. 2018) ...................................................... 23, 24, 25

Mullane v. Cent. Hanover Bank & Tr.,
    339 U.S. 306 (1950) ........................................................................................9, 10

Munford v. Munford, Inc. (In re Munford, Inc.),
    97 F.3d 449 (11th Cir. 1996) ................................................................................8

In re Musicland Holding Corp.,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ................................................................15

In re N. Am. Health Care, Inc.,
    544 B.R. 684 (Bankr. C.D. Cal. 2016) ................................................................19

Nellis v. Shugrue,
    165 B.R. 115 (S.D.N.Y. 1994)...............................................................................6

In re New Century TRS Holding, Inc.,
    612 F. App'x 147 (3d Cir. 2015) ........................................................................24

Newman v. Stein,
    464 F.2d 689 (2d Cir. 1972) .................................................................................6

Ohio v. Kovacs,
    469 U.S. 274 (1985) ............................................................................................17

Olson v. Anderson (In re Anderson),
    357 B.R. 473 (Bankr. W.D. Mich. 2006) ............................................................16

Overton's Inc. v. Interstate Fire & Cas. Ins. Co. (In re SportStuff, Inc.),
    430 B.R. 170 (8th Cir. B.A.P. 2010)....................................................................16

Pinsker v. Borders, Inc. (In re BGI, Inc.),
    465 B.R. 365 (Bankr. S.D.N.Y. 2012) ................................................................14

In re Residential Capital, LLC,
    497 B.R. 720 (Bankr. S.D.N.Y. 2013) ................................................................11

Russello v. United States,
    464 U.S. 16 (1983) ..............................................................................................19

Sayles v. Pac. Eng'rs & Constructors, Ltd.,
　　No. 08-cv-676S, 2009 WL 791332 (W.D.N.Y. Mar. 23, 2009) ...........................................24

In re Specialty Prod. Holding Corp.,
　　No. BR 10-11779-JKF, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013) ........................20

 In re Standard Insulations, Inc.,
　　138 B.R. 947 (Bankr. W.D. Mo. 1992, abrogated on other grounds by In re
　　Broadmoor Country Club & Apt., 158 B.R. 146 (W.D. Mo. 1993) .....................................25

In re Stone Barn Manhattan LLC,
　　405 B.R. 68 (Bankr. S.D.N.Y. 2009) ................................................................................25

Tenn. Student Assistance Corp. v. Hood,
　　541 U.S. 440 (2004) ..........................................................................................................8

In re TK Holdings Inc.,
　　Case No. 17-11375 (BLS), 2018 WL 1306271 (Bankr. D. Del. Mar. 13, 2018).....................9

Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),
　　600 F.3d 135 (2d Cir. 2010) ..............................................................................................11

UNARCO Bloomington Factory Workers v. UNR Indus. Inc.,
　　124 B.R. 268 (N.D. Ill. 1990) ............................................................................................8

United States v. LTV Corp. (In re Chateaugay Corp.),
　　944 F.2d 997 (2d Cir. 1991) ..............................................................................................17

In re USA United Fleet Inc.,
　　496 B.R. 79 (Bankr. E.D.N.Y. 2013) ................................................................................11

Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.),
　　157 B.R. 220 (S.D.N.Y. 1993).............................................................................................10

Wenzel v. Partsearch Techs., Inc. (In re Partsearch Techs., Inc.),
　　453 B.R. 84 (Bankr. S.D.N.Y. 2011) ................................................................................14

In re WorldCom, Inc.,
　　347 B.R. 123 (Bankr. S.D.N.Y. 2006) ................................................................................14

**Statutes**

11 U.S.C. § 101......................................................................................................................17

11 U.S.C. § 105...................................................................................................................1, 8

11 U.S.C. § 502.................................................................................................................*passim*

11 U.S.C. § 541........................................................................................................................7

11 U.S.C. § 1109 ..........................................................................................................25

28 U.S.C. § 1334 ............................................................................................................7

**Other Authorities**

Fed. R. Bankr. P. 3001 ................................................................................................18

Fed. R. Bankr. P. 7004 ..................................................................................................9

Fed. R. Bankr. P. 9019 .........................................................................................*passim*

Fed. R. Civ. P. 23 .................................................................................................*passim*

H.R. Rep. No. 95-595 (1978) ......................................................................................17

The Signatory Plaintiffs[1] and the GUC Trust respectfully submit this brief addressing the applicability of Federal Rule of Civil Procedure 23 to the pending notice approval, settlement approval, and claims estimate motions.

## PRELIMINARY STATEMENT

The Court has ordered the parties to brief whether class certification is necessary prior to approval of the Settlement.[2]  For the reasons set forth herein, the answer to the Court's question is plainly no.

This Court is empowered to approve the proposed Settlement and determine the rights of all parties with respect to the GUC Trust's assets pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and the Court's inherent powers under the Bankruptcy Code.  Every bankruptcy court has the authority, after appropriate notice to potential creditors, to determine the rights of parties to the assets of the estate, to limit or terminate non-meritorious claims against the estate's assets, and to bind absent parties.  The bankruptcy court's authority derives from its exclusive *in rem* jurisdiction over the assets of the bankruptcy estate.  Based on this jurisdiction, bankruptcy courts issue orders that terminate the rights of non-settling parties (including absent claimants) where necessary to effectuate settlements that will speed the administration of the estate.  The Settlement proposed in this matter may be undertaken using the foregoing procedures, and the Court has the authority to proceed under both Rule 9019 and Section 105(a) of the Bankruptcy Code.

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Settlement Agreement, dated May 22, 2018, annexed as Exhibit A to *Letter*, dated May 22, 2018 [ECF No. 14312-1].

[2]  Consistent with the Court's instructions, this brief addresses only whether Rule 23 should be applied in this matter, not whether class certification is appropriate under Rule 23.  To the extent that the Court finds that compliance with Rule 23 is necessary, the Parties respectfully request that the Court set a date on which the Signatory Plaintiffs should file their Settlement Preliminary Approval brief under Rule 23(e).  See Section  II.C (discussing Rule 23).

What due process requires in this and every other bankruptcy case is that proper notice and the opportunity to be heard is afforded to all potential claimants. The proposed notice procedures here easily meet that standard. Assuming due process is satisfied, bankruptcy court orders, as a matter of course, have preclusive, binding effect. For these reasons, Rule 23 is not required to bind Plaintiffs to the Settlement Order. Rather, all Plaintiffs will be bound because they will receive notice and an opportunity to be heard in accordance with due process. New GM has acknowledged this principle at earlier points in this action, including in connection with the December 2016 Order to Show Cause, and September 2015 Scheduling Order.

Critically, New GM cites no authority finding that class certification under Rule 23 is an absolute requirement and pre-condition to approval of the notice program, the Settlement Agreement, and the Waiver (the "**Settlement Stage**"), in addition to the estimation of Plaintiffs' claims (the "**Estimation Stage**"). To *require* Rule 23 certification, in particular its opt-out provisions, would contravene the fundamental principle that bankruptcy is a collective proceeding and would impose unnecessary restrictions on how the Parties and the Court may proceed that are entirely inconsistent with the Bankruptcy Code.

Class certification under Rule 23 also is not required for the Estimation Stage. New GM incorrectly argues that only *filed* proofs of claim are subject to estimation and that the Proposed Class Claims are "unfiled" until a class is certified under Rule 23. In fact, the Plan and the GUC Trust Agreement allow for the estimation of "claims," a term that is more expansive than "proofs of claim." Similarly, Bankruptcy Code Section 502(c) calls for the estimation of "claims" without qualification. Juxtaposed against Bankruptcy Code Section 502(a), which contains an explicit proof of claim requirement, it is clear that Bankruptcy Code Section 502(c) permits the estimation of unfiled claims – a practice bankruptcy courts in this jurisdiction have undertaken

2

on numerous occasions, including recently by Judge Lane in the <u>MSR Resort Golf</u> cases.[3]

New GM also contends that, absent Rule 23, the Court cannot issue a Claims Estimate Order estimating the "aggregate allowed general unsecured claims" as required to trigger the issuance of Adjustment Shares. However, Bankruptcy Code Section 502(c) clearly provides for the estimation of claims for allowance purposes. Because unfiled claims can be estimated under Bankruptcy Code Section 502(c), they necessarily can be allowed thereunder as appropriate in connection with the Estimation Stage, and in accordance with the AMSPA. Accordingly, Rule 23 is not necessary at either the Settlement Stage or the Estimation Stage.

Finally, the Court should disregard New GM's Rule 23 objections to the proposed Settlement because New GM lacks standing to assert the defenses it has raised—*i.e.*, that more is owed to Plaintiffs than the due process proposed in connection with the Settlement, or that the Court lacks the personal jurisdiction necessary to bind Plaintiffs that have yet to appear. Even if these objections had merit (and they do not), the parties that would be impacted would be Plaintiffs, not New GM. For that reason, New GM is not the proper party to interpose its objections, and the Court should give New GM's views on these issues no weight.

## <u>BACKGROUND</u>

On April 25, 2018, the Signatory Plaintiffs and the GUC Trust entered into a Settlement Agreement, as amended on May 22, 2018. The Settlement Agreement resolves a myriad of disputes that have spanned years of litigation relating to claims emanating from the disclosures in 2014 that Old GM (and then New GM) knew about, but concealed, certain vehicle safety defects. The Parties to the Settlement Agreement include the PIWD Plaintiffs identified on Schedule 2 to the Settlement Agreement and the Economic Loss Plaintiffs identified on Schedule 3 to the Settlement Agreement. The Settlement Agreement seeks to address not only the claims of the

---

[3]    <u>See</u> *infra* n.18.

Parties to the Settlement Agreement, but also the claims of millions of Plaintiffs related to the Recalls by providing due process notice and an opportunity to be heard on the Settlement Stage before Plaintiffs' claims are channeled to the Settlement Fund, and due process and an opportunity to be heard on the Estimation Stage and subsequent allocation and distribution criteria methodology.

Under the Settlement Agreement, the GUC Trust agrees to: (i) fund up to $6,000,000 in notice costs following entry of the Notice Order; and (ii) irrevocably pay $15,000,000 into the Settlement Fund when the Settlement Order becomes a final order (or the GUC Trust waives the final order requirement).[4] In exchange, the Settlement Order, which will be entered after Plaintiffs have received notice and an opportunity to be heard, will contain a Waiver provision that irrevocably waives and releases all Plaintiffs' claims (other than those arising under the Settlement Agreement) against Old GM, the Old GM estate, the GUC Trust, the GUC Trust Administrator, Unitholders, and the Motors Liquidation Company Avoidance Action Trust, including a release of any rights to prior or future distributions of GUC Trust Assets and any rights to distributions by the Motors Liquidation Company Avoidance Action Trust.

The Settlement Agreement also commits the GUC Trust to seek entry of a Claims Estimate Order estimating the aggregate allowed general unsecured claims of Plaintiffs. In the event the Bankruptcy Court estimates the aggregate allowed general unsecured claims of Plaintiffs, together with all other previously allowed general unsecured claims against the Old GM estate, at an amount exceeding $35 billion, the provision of the AMSPA requiring New GM to issue Adjustment Shares will be triggered and the GUC Trust will promptly direct the

---

[4]    To the extent that there are any inconsistencies between the description of the Settlement Agreement contained in this Brief and the terms and provisions of the Settlement Agreement, the Settlement Agreement shall control.

4

Adjustment Shares to the Settlement Fund.  See AMSPA § 3.2(c).[5]

The Settlement Amount and Adjustment Shares, if any, will be reserved for the exclusive benefit of Plaintiffs.   The Signatory Plaintiffs, with the initial oversight and assistance of Magistrate Judge Cott and subject to approval by this Court, will determine the overall allocation of the value of the Settlement Fund between economic loss claims and personal injury/wrongful death claims, and the eligibility criteria for payment to Plaintiffs from the Settlement Fund. Plaintiffs will get notice of same via the Settlement Website and an opportunity to object.

On May 2, 2018, the GUC Trust filed the Notice Motion seeking approval of proposed notice procedures.[6]   On May 3, 2018, the GUC Trust filed the Settlement Motion seeking approval of the Settlement Agreement,[7] and the Estimation Motion seeking estimation of Plaintiffs' claims.[8]  On May 22, 2018, New GM filed its Objection to the Notice Motion.[9]

On May 25, 2018, the Court held a case management conference regarding the three pending motions, at which the parties addressed the Court's May 10, 2018 Order raising

---

[5]   In the event that the estimate is at or exceeding $42 billion, New GM will be required to issue the maximum number of Adjustment Shares (30 million).  The value of 30 million shares is currently $1.3 billion.

[6]   *Motion for Order: (1) Granting Authority to Reallocate and Use Distributable Cash for Notice Procedures; (2) Approving Notice Procedures with Respect to (A) the Proposed Settlement Pursuant to Federal Rule of Bankruptcy Procedure 2002(m) and (B) the Estimation Motion; and (3) Directing The Production Of Information Held By General Motors LLC Pursuant To Federal Rule of Bankruptcy Procedure 2004 and Bankruptcy Code Section 105(a)*, dated May 2, 2018 [ECF No. 14292] (the "**Notice Motion**").

[7]   *Motion of Motors Liquidation Company GUC Trust to Approve (I) the GUC Trust Administrator's Actions and (II) the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002 and 9019 and to (III) Authorize the Reallocation of GUC Trust Assets*, dated May 3, 2018 [ECF No. 14293] (the "**Settlement Motion**").

[8]   *Motion of Motors Liquidation Company GUC Trust to Estimate Vehicle Recall Economic Loss and Personal Injury Claims for Allowance Purposes and to Establish a Schedule for Claims Estimation Proceeding*, dated May 3, 2018 [ECF No. 14294] (the "**Estimation Motion**").

[9]   *Objection of General Motors LLC to the Motion for Order (1) Granting Authority to Reallocate and Use Distributable Cash for Notice Procedures; (2) Approving Notice Procedures with Respect to (A) the Proposed Settlement Pursuant to Federal Rule of Bankruptcy Procedure 2002(m) and (B) the Estimation Motion; and (3) Directing The Production Of Information Held By General Motors LLC Pursuant To Federal Rule of Bankruptcy Procedure 2004 and Bankruptcy Code Section 105(a)*, dated May 22, 2018 [ECF No. 14314] (the "**Objection**" or "**Obj.**").

questions regarding the Settlement Agreement.[10]  Specifically, the Court focused on the impact

of PIWD Plaintiffs' jury trial rights on the Settlement Agreement, and on confirming that the

proposed settlement was not "illusory."[11]  To address the Court's concerns, the Parties amended

the Settlement Agreement to clarify that Plaintiffs will consent to the Bankruptcy Court's

estimation of their claims and waive any jury trial rights with respect to the estimation,

allowance, or payment of their claims.[12]

At the conference, the Court instructed the Parties and New GM to brief the issue of

"whether rule 23 has to be applied to any proposed settlement presented to the Court."  See May

25, 2018 Hr'g Tr. 73:23-25.

## ARGUMENT

### I.    The Court May Approve The Notice Procedures And Settlement Agreement Without Certifying A Class Under Federal Rule 23.

Rule 9019 vests this Court with broad discretion to approve settlements between adverse

parties, which are favored as a matter of public policy.  See In re Hibbard Brown & Co., 217

B.R. 41, 46 (Bankr. S.D.N.Y. 1998); Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972); Nellis

v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are

favored and, in fact, encouraged . . . .").  Recognizing it stands little chance of blocking the

proposed settlement under the applicable standard, New GM argues that the Court is barred from

exercising its authority under Rule 9019 until it certifies an Economic Loss Plaintiff class

pursuant to Rule 23.  As set forth below, New GM's argument ignores the Court's broad

---

[10]  See Order Scheduling a Case Management Conference Regarding Proposed Settlement Between the GUC Trust and Signatory Plaintiffs, dated May 8, 2018 [ECF No. 14298].

[11]  See Order Re Case Management Conference Regarding Proposed Settlement Between the GUC Trust and Signatory Plaintiffs, dated May 10, 2018 [ECF No. 14301].

[12]  This renders New GM's argument that the Court cannot "estimate or allow Personal Injury Claims" because "personal injury Plaintiffs have not consented to this Court's jurisdiction," see Obj. ¶ 15, moot.  In any event, this argument does not concern Rule 23.

discretion to bind all parties claiming an interest in the bankruptcy estate—including absent Plaintiffs—as well as the substantial due process being afforded to absent Plaintiffs in this case pursuant to the proposed notice procedures. Critically, New GM fails to identify any authority requiring class certification under Rule 23 in the context of a settlement between a debtor and bankruptcy claimants. For these reasons, the Court is not required to certify a Rule 23 class in order to effectuate the Settlement and estimate Plaintiffs' claims.

### A. The Court Has Exclusive *In Rem* Jurisdiction To Determine All Rights Related To The Bankruptcy Estate, Including The Rights Of Absent Plaintiffs.

Bankruptcy proceedings are, by their nature, collective proceedings aimed at consolidating all claims against a debtor in one forum and providing a simplified process to administer those claims. See, e.g., Levy v. Lewis, 635 F.2d 960, 964 (2d Cir. 1980) (bankruptcy proceedings enable the consolidation of all assets and all claims against those assets in a single forum under the supervision of a single court, which "serve[s] an economical, efficient, and orderly distribution of the assets . . . for the benefit of all creditors"); In re Johns-Manville Corp., 57 B.R. 680, 690 (Bankr. S.D.N.Y. 1986) (noting Congress's intent under the Bankruptcy Code "to channel claims toward one forum"); In re Am. Reserve Corp., 840 F.2d 487, 489 (7th Cir. 1988) ("The principal function of bankruptcy law is to determine and implement in a single collective proceeding the entitlements of all concerned.").

The Court's powers derive from its exclusive authority over the assets of the bankruptcy estate. See 28 U.S.C. § 1334(e) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate"); 11 U.S.C. § 541. Because the bankruptcy court has *in rem* jurisdiction over the assets of the estate, it is empowered to determine the rights of all parties with respect to the *res* of the estate. As stated

7

by the Supreme Court, a bankruptcy proceeding is "one against the world" because "[a] bankruptcy court's *in rem* jurisdiction permits it to 'determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question.'" Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 447-48 (2004).

Based on their exclusive jurisdictional authority, bankruptcy courts are empowered to issue bar orders and enjoin claims under Bankruptcy Code Section 105(a). See 11 U.S.C. § 105(a) ("The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title[,] . . . to enforce or implement court orders or rules, or to prevent an abuse of process."). This authority includes the ability to bar the claims of non-settling parties where necessary to aid a settlement, even where the settlement occurs outside of plan confirmation. See Munford v. Munford, Inc. (In re Munford, Inc.), 97 F.3d 449, 454-55 (11th Cir. 1996) (holding that Section 105(a) grants the bankruptcy court authority to issue an injunction barring claims of non-parties to the settlement, recognizing that "bar orders play an integral role in facilitating settlement"); Brophy v. Salkin, 550 B.R. 595, 598 (S.D. Fla. 2015) (approving settlement of D&O litigation against former director that, in exchange for a payment to the estate, would release D&O insurer and issue bar order prohibiting non-settling third party from pursuing a suit seeking to recover from D&O insurance policy); UNARCO Bloomington Factory Workers v. UNR Indus. Inc., 124 B.R. 268, 277 (N.D. Ill. 1990) (upholding injunction barring claims against insurer who reached good faith settlement with debtor).

Important for the purposes of this case, courts often issue injunctions and bar orders to channel claims in mass tort cases. See, e.g., MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 93 (2d Cir. 1988) (holding that, where third parties sought to collect from proceeds of debtor's insurance coverage, court properly exercised *in rem* jurisdiction over debtor's assets to

8

channel claims to proceeds from settlement with insurance carriers); <u>In re A.H. Robins Co.</u>, 88 B.R. 742, 753 (E.D. Va. 1988) (exercising equitable powers under 11 U.S.C. § 105 to channel personal injury claims to trusts to prevent interference with the administration of the estate and limit future litigation that could frustrate the plan), <u>aff'd</u>, 880 F.2d 694 (4th Cir. 1989); <u>In re TK Holdings Inc.</u>, Case No. 17-11375 (BLS), 2018 WL 1306271, at *38 (Bankr. D. Del. Mar. 13, 2018) (channeling personal injury claims to a trust under Bankruptcy Code Section 105(a) "[i]n order to preserve and promote the settlements contemplated by and provided for in the Plan").

In this matter, the Waiver included in the proposed Settlement Agreement provides for the release of claims to a bankruptcy *res*—*i.e.*, GUC Trust Assets—and the channeling of those claims to the Settlement Fund. Thus, the Court has jurisdiction to resolve all claims to the GUC Trust Assets under the Settlement Agreement. In addition, the resolution of the Estimation Stage will determine rights, if any, to another bankruptcy *res*—the Adjustment Shares. As a result, this Court has *in rem* jurisdiction over the Settlement and Estimation Stages irrespective of Rule 23 (which is applied to obtain *in personam* jurisdiction).[13]

### B. The Proposed Notice Procedures Easily Satisfy Plaintiffs' Due Process Rights.

"[D]ue process in any proceeding which is to be accorded finality [requires] notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Mullane v.</u>

---

[13] In any event, a court can establish *in personam* jurisdiction over a litigant through service of process. <u>See</u> <u>In re Johns-Manville Corp.</u>, 581 B.R. 38, 50 (Bankr. S.D.N.Y. 2018) (explaining that serving a summons is effective to obtain personal jurisdiction over a defendant); Nov. 16, 2016 Hr'g Tr. 40:20-42:18 (explaining that the Court can adjudicate the rights of individuals served with an order to show cause); <u>In re Mandukich</u>, 87 B.R. 296, 298-300 (Bankr. S.D.N.Y. 1988) (holding that scheduled claims of creditor were discharged where creditor received notice of bankruptcy proceedings by mail). Here, all Plaintiffs will receive notice of the Settlement. <u>See</u> Azari Decl. ¶ 16, attached as Exhibit C to the Notice Motion. This complies with the requirements for service of summons. <u>See</u> Fed. R. Bankr. P. 7004 (providing that service of summons upon an individual may be made within the United States by first class mail postage prepaid to the individual's home or place of business). Thus, *in personam* jurisdiction is established and Rule 23 is not required to obtain jurisdiction over Plaintiffs.

Cent. Hanover Bank & Tr., 339 U.S. 306, 314 (1950).  The type of notice depends on whether an

interested party is reasonably ascertainable, taking into account the information available and the

burden of a search.  See id. at 317-18 ("[I]mpracticable and extended searches are not required in

the name of due process."); Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.), 157

B.R. 220, 222 (S.D.N.Y. 1993) (explaining that claimants who cannot be personally identified

with reasonable effort are not entitled to actual personal notice).

As detailed in the Settlement Motion, the proposed notice procedures contemplate direct

mail notice to individuals who, *inter alia*, owned or leased vehicles subject to the Recalls prior to

the Sale, supplemented with publication notice (utilizing, *inter alia*, digital banner advertising,

paid internet search listings, and an informational release) and a dedicated Settlement Website.[14]

These procedures are substantially similar to the notice procedures approved by Judge Shannon

in In re TK Holdings Inc. to provide notice of the bar date to individuals who own, or may have

owned, vehicles equipped with recalled airbag inflators.[15]    The mailed notice will inform

Plaintiffs of the terms of the Settlement Agreement, the hearing to be held on whether the Court

should approve the Settlement Agreement, and how to object.  The mailed notice will also direct

Plaintiffs to the Settlement Website, where Plaintiffs can obtain more detailed information on the

Settlement.  Plaintiffs will receive further notice of the Estimation Stage via the Settlement

Website and be provided an opportunity to be heard in those proceedings and in connection with

allocation criteria for distributions from the Settlement Fund.

The proposed notice procedures clearly satisfy due process.  See, e.g., Abeles v.

---

[14]    See Azari Decl. ¶¶ 16, 20-28, attached as Exhibit C to the Notice Motion.

[15]    See *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants,* In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bank. D. Del. Oct. 4, 2017), ECF No 959.

Infotechnology, Inc. (In re Infotechnology, Inc.), 89 F.3d 825, 1995 WL 723099 (Table), at *1

(2d Cir. 1995) (unpublished) (rejecting objections of former directors of the debtor when notice

of the settlement was provided to the former directors well in advance of the final plan

confirmation hearing and holding that "compliance with Rule 9019 provides all the process that

is due"); In re Residential Capital, LLC, 497 B.R. 720, 744-45, 747 (Bankr. S.D.N.Y. 2013)

(holding that due process rights of investors in trusts were satisfied where notices were

distributed to investors and published on a website which described the terms of settlement

between the trustees and the debtors and the process by which investors could object).

Where potential claimants are provided with due process, bankruptcy court orders are

deemed to have preclusive, binding effect as to all claimants at issue, regardless of whether they

appear in the case.  See May 25, 2018 Hr'g Tr. 7:4-5 ("If proper notice is given, people are

bound by what happens in a bankruptcy case."); Finova Capital Grp. v. Larson Pharmacy Inc. (In

re Optical Techs., Inc.), 425 F.3d 1294, 1301 (11th Cir. 2005) (finding that creditors who were

served with a confirmation plan and disclosure statement but made no objection to confirmation

waived their objections to the terms of the confirmation plan); In re USA United Fleet Inc., 496

B.R. 79, 89 (Bankr. E.D.N.Y. 2013) (holding that "party on notice" of proposed sale of assets

was bound by the sale order); Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re Johns-

Manville Corp.), 600 F.3d 135, 147 (2d Cir. 2010) (party who failed to raise argument in first

round of appeal forfeited that argument).

Here, if Plaintiffs do not object after receiving due process notice, or have their

objections overruled, their rights to seek GUC Trust Assets or to claw back past distributions of

GUC Trust Assets will be waived pursuant to the Settlement Order.[16]  The Waiver is given in

---

[16]  Notably, any claims asserted against the GUC Trust assets after notice of the Settlement has been provided
would almost certainly be deemed late absent extraordinary circumstances.

exchange for a considerable benefit—the Settlement Fund with $15 million and the potential triggering of the Adjustment Shares, to which Plaintiffs' claims are channeled. Binding Plaintiffs to the Waiver is well within the Court's authority because all Plaintiffs will receive due process notice and an opportunity to be heard.

Although New GM argues that due process cannot be satisfied if Plaintiffs are not given the right to opt-out of the Settlement, see Obj. ¶¶ 49, 54, that is clearly not the case. Indeed, opt-out rights are not even required by Rule 23 in the context of a "limited fund" class action where many litigants have claims against a single fund and the fund's total value is unlikely to satisfy all of the claims in full. See Baker v. Wash. Mut. Fin. Grp., LLC, 193 F. App'x 294, 297 (5th Cir. 2006); see also Juris v. Inamed Corp., 685 F.3d 1294, 1333 (11th Cir. 2012) (explaining that opt-out rights address a court's jurisdiction over class members without minimum contacts with the forum and, thus, opt-out rights are not required where *in rem* jurisdiction exists). Because the Settlement is the functional equivalent of a limited fund class action under Rule 23(b)(1)(B), opt out rights would not be required even if Rule 23 were applied in this case. In fact, and notably, opt-out rights are more than simply not required in such cases: they are held to contravene the statutory purpose behind a collective proceeding. See Leber v. Citigroup 401(k) Plan Inv. Comm., 323 F.R.D. 145 (S.D.N.Y. 2017) ("When a class is eligible for certification under both Rules 23(b)(1) and (b)(3), courts find that Rule 23(b)(1) controls. To hold otherwise would 'directly contraven[e]' the stated purpose of Rule 23(b)(1)(B) and could open the door to separate litigation by individual members of the class. 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1772 (3d ed. 2017).") (internal citations omitted).

Notably, New GM took an entirely different position on the notice issue at prior points in this proceeding—for example, when it argued that all Plaintiffs who received notice regarding

the briefing schedule for the Late Claims Motions should be deemed bound to the Court's rulings on that issue. See Nov. 16, 2016 Hr'g Tr. 21:18-20 [ECF No. 13796]; *Order to Show Cause Regarding Certain Issues Arising From Lawsuits with Claims Asserted Against General Motors LLC ("New GM") That Involve Vehicles Manufactured by General Motors Corporation ("Old GM")*, dated Dec. 13, 2016 [ECF No. 13802] (explaining that the rulings on the 2016 Threshold Issues, including the issue of whether Plaintiffs should be granted authority to file late claims, would be binding on all persons receiving notice by first class mail); see also May 17, 2017 Hr'g Tr. at 203:7-208:12 [ECF No. 13943] (asserting that all plaintiffs served with a scheduling order identifying certain issues to be briefed were bound by the rulings on those issues and had waived any arguments that were not raised in connection with that briefing). Where it stood to benefit from the Court's rulings, New GM never argued that binding Plaintiffs who received notice required class certification under Rule 23. In light of the foregoing, New GM's contrary position on the settlement and claims estimate motions is simply not credible.

Indeed, the notice program and forms of notice under the Settlement were designed to match the type of notice given in a typical class action. While New GM will likely argue that notices often provide information on opting out, this is irrelevant (because opt-out rights do not exist in bankruptcy), and misleading (because only Rule 23(b)(3) requires opt-out rights). New GM may also emphasize that projected recoveries cannot be provided here because there is no *res* capable of distribution at this time, but that is not categorically inconsistent with a class notice. Recoveries in class cases may be uncertain when, for example, there are claims-based settlements, when there is a statutory cap on class statutory damages (as exists under various federal statutes such as the Fair Debt Collection Practices Act), or for other reasons. Because of the comprehensive Rule 9019 notice in accordance with due process, Rule 23 is not necessary.

### C.    New GM Cites No Authority Requiring Rule 23 Certification
### For Approval Of A Bankruptcy Settlement Under Rule 9019.

In its Objection, New GM argues that "where a claim was filed as a proposed class claim, the Court must determine whether that proposed class claim satisfies the standards of Rule 23 . . . even if such class claims are proposed to be settled."  Obj. ¶ 32; see id. ¶ 3.  In support of this proposition, New GM cites several cases in which courts applied Bankruptcy Rule 9019 and Rule 23 to proposed settlements at the request of the movants.  See Obj. ¶¶ 42-43.  However, ***none of those cases hold that Rule 23 certification is required to settle a group of Plaintiffs' claims***.  See, e.g., Wenzel v. Partsearch Techs., Inc. (In re Partsearch Techs., Inc.), 453 B.R. 84, 98 (Bankr. S.D.N.Y. 2011); Pinsker v. Borders, Inc. (In re BGI, Inc.), 465 B.R. 365, 378 (Bankr. S.D.N.Y. 2012); In re WorldCom, Inc., 347 B.R. 123, 140 (Bankr. S.D.N.Y. 2006).

The reality is that certification of a class under Rule 23 is only one avenue for binding absent individuals to a court order—not the exclusive method.  As recognized by the Supreme Court, "where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate, legal proceedings may terminate pre-existing rights if the scheme is otherwise consistent with due process."  Martin v. Wilks, 490 U.S. 755, 762 n.2 (1989), superseded on other grounds by statute, Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1072.  Although New GM contends that absent Plaintiffs are not subject to the Court's jurisdiction until a class is certified under Rule 23 because they have not filed proofs of claim, see Obj. ¶ 51, that argument ignores the Court's *in rem* jurisdiction over the assets of the estate (here, the GUC Trust assets) and the rights of all parties to those assets.

New GM's argument that "compliance with Rule 23 is a functional prerequisite to compliance with the Constitutional guarantee of due process of law" fails for similar reasons.  Obj. ¶ 54.  That Rule 23 complies with due process does not mean that due process can only be

14

satisfied through Rule 23. Cf. In re Elec. Books Antitrust Litig., 14 F. Supp. 3d 525, 536 (S.D.N.Y. 2014) (rejecting argument that, absent compliance with Rule 23, procedures permitting a state to prosecute antitrust abuses on behalf of consumers would necessarily violate due process). To the contrary, and as Judge Rakoff has found, "[b]ankruptcy notice directed specifically at class members" is a proper substitute for the protections provided by the notice requirements of Rule 23. See In re Ephedra Prods. Liab. Litig., 329 B.R. 1, 9 (S.D.N.Y. 2005) (Rakoff, J.).

Although New GM argues that "[t]he Rule 23 requirements apply with equal force in bankruptcy," see Obj. ¶ 34, courts routinely find class certification to be unnecessary based on the "greater procedural advantages" available in bankruptcy proceedings. See In re Musicland Holding Corp., 362 B.R. 644, 650 & n.8 (Bankr. S.D.N.Y. 2007) (explaining that "class certification may be 'less desirable in bankruptcy than in ordinary civil litigations'" given that bankruptcy provides greater procedural advantages than class actions); accord In re Motors Liquidation Co., 447 B.R. 150, 163 (Bankr. S.D.N.Y. 2011) (Gerber, J.) (explaining that because of "matters unique to bankruptcy," the court could not find that the class action mechanism is preferable to bankruptcy); In re Blockbuster Inc., 441 B.R. 239, 241 (Bankr. S.D.N.Y. 2011) (finding that the "superiority of the class action" as a method for fair and efficient adjudication of a controversy may "vanish[]" in the bankruptcy context). Indeed, "[s]ince superiority of the class actions is lost in bankruptcy, only compelling reasons for allowing a particular opt-out class claim can justify applying Rule 23." Ephedra Prods. Liab., 329 B.R. at 9; see also In re Am. Reserve Corp., 840 F.2d at 493 (directing the bankruptcy judge to consider features of bankruptcy proceedings that "might make class certification unnecessary," including the court's "control of the bankrupt's affairs").

15

The cases cited by New GM for the proposition that Rule 9019 does not provide "the ability to bind individuals who are not a party to the Proposed Settlement," <u>see</u> Obj. ¶ 52, are inapt.   In <u>In re SportStuff, Inc.</u>, the court found that it lacked subject matter jurisdiction to approve a settlement between the debtor and insurers that would bar claims of actively litigating vendors who had non-derivative rights under the insurance policies where the vendors received no compensation and objected to the settlement.  <u>See</u> <u>Overton's Inc. v. Interstate Fire & Cas. Ins. Co. (In re SportStuff, Inc.)</u>, 430 B.R. 170, 175-79 (8th Cir. B.A.P. 2010).  Here, the Settlement stems from Plaintiffs' claims against the GUC Trust.  These claims are not extinguished, but channeled to the Settlement Fund, which is reserved exclusively for the benefit of Plaintiffs.  Next, in <u>In re Flores</u>, the court expressed that where a trustee or debtor "is seeking to bind others, Rule 9019 requires a notice and hearing, followed by approval of the court"—not that Rule 9019 can never bind non-parties to a settlement.  <u>See</u> <u>In re Flores</u>, No. 1:08–bk–19869–MT, 2013 WL 6186262, at *7-8 (Bankr. C.D. Cal. Nov. 25, 2013) (holding that stipulation of settlement filed without a notice of motion or a hearing did not bind third party).  New GM's final case does not concern binding parties whatsoever.  <u>See</u> <u>Olson v. Anderson (In re Anderson)</u>, 357 B.R. 473, 476 (Bankr. W.D. Mich. 2006) (denying approval of settlement agreement that sought to convey property that the Chapter 7 trustee had no authority to convey).

In sum, New GM fails to identify any case requiring Rule 23 certification in order to bind absent parties to a proposed settlement between the Debtor and claimants against the estate.  As such, Rule 23 does not apply in this matter, and the Court should proceed to adjudicate the Notice Motion and other Settlement-related motions.

## II.    The Court May Estimate Plaintiffs' Claims For Allowance And Distribution Purposes Without Certifying A Class Under Rule 23.

The Settlement Agreement contemplates that this Court will estimate the Plaintiffs' claims for allowance and distribution purposes.  See Settlement Agreement §§ 2.5. 2.9; *Letter*, dated May 22, 2018 [ECF No. 14312].  Bankruptcy courts regularly estimate claims under Bankruptcy Code Section 502(c) to avoid delay in "determin[ing] issues of liability or amount owed" and to "promote a fair distribution to creditors through a realistic assessment of uncertain claims."  In re Adelphia Bus. Sols., Inc., 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (quoting In re Cont'l Airlines, Inc., 981 F.2d 1450, 1461 (5th Cir. 1993)).  Claims need not be estimated on an individual basis, and the bankruptcy court has broad discretion to estimate groups of claims. See, e.g., In re Cont'l Airlines, Inc., 57 B.R. 842, 844-45 (Bankr. S.D. Tex. 1985); In re A.H. Robins Co., Inc., 88 B.R. 742, 746-47 (E.D. Va. 1988); Order Estimating Allowed Claim Pursuant to RMBS Settlement Agreement, In re Lehman Bros. Holdings Inc., Case No. 08-13555 (Bankr. S.D.N.Y. Mar. 15, 2018), ECF No. 57785.

### A.    The Plan, The GUC Trust Agreement And The Bankruptcy Code Provide For The Estimation Of Claims, Not Proofs Of Claims.

A claim is defined in the Plan by reference to the Bankruptcy Code.  See Plan § 1.36 ("**Claim** has the meaning set forth in section 101 of the Bankruptcy Code").  The Bankruptcy Code, in turn, defines "claim" as, in relevant part, a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5).  Congress broadly defined "claim" to ensure "that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case."  H.R. Rep. No. 95-595, at 309 (1978); see Ohio v. Kovacs, 469 U.S. 274, 279 (1985); United States v. LTV Corp. (In re Chateaugay Corp.), 944 F.2d 997, 1003 (2d Cir. 1991).

17

A proof of claim, on the other hand, is a creation of the Bankruptcy Rules described as "a written statement setting forth a creditor's claim." Fed. R. Bankr. P. 3001(a). Thus, a "claim" is distinct from a "proof of claim." New GM ignores this distinction by contending that "[t]he Court can only estimate or allow proofs of claim that have been properly filed under section 501 of the Bankruptcy Code." Obj. ¶ 65; ¶ 13 ("The Proposed Settlement . . . seeks to estimate hypothetical liabilities (not filed proofs of claim) . . . ."). New GM thus asserts that class proofs of claim "may not even be a 'filed' claim within the meaning of 11 U.S.C. § 502(a)" until a class is certified under Rule 23 and, as a result, application of Rule 23 is a prerequisite to estimating Plaintiffs' claims. See Obj. ¶¶ 14, 35, 65. Because the premise is wrong, New GM's whole argument crumbles.

The constitutional documents of the GUC Trust call for the estimation of "claims," not proofs of claim. See Plan § 7.3 ("[T]he GUC Trust Administrator . . . may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code . . . ."); GUC Trust Agreement § 5.1(e) ("The GUC Trust Administrator may at any time request that the Bankruptcy Court estimate any contingent claim, unliquidated claim or Disputed General Unsecured Claim pursuant to Section 502(c) of the Bankruptcy Code . . . .").

Likewise, Bankruptcy Code Section 502(c) provides for estimation of claims, not exclusively proofs of claims. See 11 U.S.C. § 502(c) ("There shall be estimated for purpose of allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or (2) any right to payment arising from a right to an equitable remedy for breach of performance."); see also In re Eagle-Picher Indus., Inc., 189 B.R. 681, 683 (Bankr. S.D. Ohio 1995) ("The Bankruptcy Code

18

at § 502(c) makes it clear that we are estimating claims, and the term 'claim' is defined in the Bankruptcy Code at § 101(5)(A) . . . ."). The plain language of the statute does not require a proof of claim for estimation. See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) ("[W]e begin with the understanding that Congress says in a statute what it means and means in a statute what it says there.").[17]

Had the legislature wanted to require the filing of a proof of claim before estimation, it knew how to do so. See 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed . . . ."). The inclusion of a proof of claim requirement in Section 502(a) precludes inferring a proof of claim requirement in Section 502(c). See Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Estimation of Plaintiffs' claims without Rule 23 certification is consistent with the broad scope of authority given the Court under Bankruptcy Code Section 502(c) and given the GUC Trust under the Plan and GUC Trust Agreement.

### B.    Bankruptcy Courts May Estimate Unfiled Claims.

A bankruptcy court may estimate claims for any number of reasons, including determining the likely aggregate amount of a related series of claims, or setting distribution reserves. See In re Chemtura Corp., 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011) (collecting examples of estimation proceedings); In re N. Am. Health Care, Inc., 544 B.R. 684, 689 (Bankr. C.D. Cal. 2016) (ordering estimation of personal injury claims in the aggregate that are not

---

[17] Counsel for New GM argued at the case management conference that "I don't believe that in a case in which no schedules have been filed and no proof of claim has been filed, that Your Honor can treat it as a claim for purposes of estimation." May 25, 2018 Hr'g Tr. 62:1-4. This limitation on the term claim does not appear in Bankruptcy Code Section 502(c).

settled through mediation or otherwise).    Nothing limits the bankruptcy court's estimation

authority to proofs of claims that were filed.    For example, in In re MSR Resort Golf Course

LLC, Case No. 11-10372 (Bankr. S.D.N.Y.),    Judge Lane entered an Order scheduling the

estimation of a rejection damages claim on an expedited basis, prior to the executory contract

being rejected.    The estimation was requested by the debtors to provide "a clear understanding of

[the debtors'] potential liability under the [executory contract]" and enable the evaluation of

competing bids for the debtors' assets.[18]

    Indeed, courts often engage in estimation of unfiled claims in the mass tort context with

respect to creditors whose claims arise from a debtor's pre-petition conduct but whose injuries

have not yet manifested.    See, e.g., In re Hoffinger Indus., Inc., 307 B.R. 112, 121 (Bankr. E.D.

Ark. 2004) (holding that estimation of claims of creditors who had used debtor's products and

been injured pre-confirmation, but had not filed claims, was appropriate); In re Specialty Prod.

Holding Corp., No. BR 10-11779-JKF, 2013 WL 2177694, at *1 (Bankr. D. Del. May 20, 2013)

(estimating present and future mesothelioma claims under Bankruptcy Code Section 502(c)(1));

In re Eagle-Picher Indus., Inc., 189 B.R. 681 (Bankr. S.D. Ohio 1995) (estimating future

asbestos-related personal injury claims in the aggregate for the purposes of determining the

appropriate distributions to creditor classes under a plan); In re Fed.-Mogul Glob., Inc., 330 B.R.

133, 154 (D. Del. 2005) (estimating pending and future asbestos liability claims for purposes of

creation of a trust, where liquidation of each claim by trial would unduly delay administration in

---

[18]    See Motion of MSR Resort Golf Course LLC, et al., for Entry of an Order Authorizing Rejection of the Marriott
Management Agreement and Owner Agreement and Approving the Schedule for Estimating Damages Resulting
from Rejection of the Marriott Management Agreement and Owner Agreement, dated Nov. 7, 2011 [ECF No.
842]; Order Setting a Schedule for the Estimation of Damages Resulting from Rejection of the Marriott
Management Agreement and Owner Agreement, dated Dec. 1, 2011 [ECF No. 875]; see also In re Dial-A-
Mattress Operating Corp., No. 1-09-41966-DEM, 2009 WL 1851059, at *3 (Bankr. E.D.N.Y. June 24, 2009)
(estimating potential rejection damages claims for the purpose of allowing the debtors to exercise their business
judgment regarding whether or not to proceed with a sale because the damages could outweigh the value of the
sale).

debtors' cases).[19]

Likewise, here, the Court can estimate Plaintiffs' claims under Bankruptcy Code Section 502(c) regardless of whether the Proposed Class Claims are deemed "filed" or the Rule 23 requirements for class certification are met.

### C. Rule 23 Certification Is Not Required For The Court To Estimate The "Allowed" Amount Of Plaintiffs' Claims And, Even If It Were, Plaintiffs Can Satisfy Its Requirements.

Pursuant to Section 3.2(c) of the AMSPA, New GM is required to issue Adjustment Shares if the Court issues an order "estimating the aggregate allowed general unsecured claims against Sellers' estates" that includes "a finding that the estimated aggregate allowed general unsecured claims against Sellers' estates exceed" $35 billion.  AMSPA § 3.2(c).  New GM contends that the Court cannot "estimate the 'allowed' amount of [Plaintiffs'] claims" as required by the AMSPA without first determining whether the requirements of Rule 23 are met.  See Obj. ¶ 13 ("[T]he procedures proposed by Movants do not permit the Court or New GM to ascertain the 'allowed' amount of those unfiled claims."); id. ¶ 65 ("Whether the Proposed Class Claims constitute properly filed proofs of claim that can be estimated or allowed depends on whether they meet the requirements of Rule 23. . . .  [T]he Court [can] only estimate the allowed amounts of properly filed proofs of claim—not *hypothetical* claims.").

To the contrary, Bankruptcy Code Section 502(c) provides for the estimation of claims for allowance purposes.  As explained *supra*, this statute does not limit estimation to proofs of claims.  As a result, the statute necessarily permits the estimation of unfiled claims for allowance purposes.  Substantively, it is entirely unclear how class certification would enable the Court to better "ascertain the 'allowed' amount" of Plaintiffs' claims.  The universe of economic loss

---

[19]    Nothing in the Bankruptcy Code or case law limits the estimation of unfiled claims to the circumstances of creating a claims reserve or voting on a plan.

Plaintiffs is known—those who owned or leased vehicles subject to the relevant recalls prior to July 10, 2009—and their claims will be tested in the Estimation Stage.  The Court need not undertake class certification to estimate the allowable amount of Plaintiffs' claims.

New GM also contends that "the claims estimate sought . . . is illusory because the Signatory Plaintiffs must subsequently seek approval of an 'allocation methodology' and 'claims reconciliation' process for determining which Plaintiffs are entitled to distributions," meaning "the quantum of those claims and the individuals—or classes of individuals—covered by those 'allowed' claims will not be determined until after the Claims Estimate Order is entered."  Obj. ¶¶ 17-18.  As with New GM's argument about "hypothetical claims," this position rings hollow. New GM conflates the Court's estimation of the allowable amount of Plaintiffs' claims for purposes of triggering the Adjustment Shares and the subsequent determination of distributions to Plaintiffs from the Settlement Fund.  The later creation of distribution procedures does not change the Court's prior estimation or render it illusory.

This type of process is commonly used in the mass tort context where "practical difficulties" require that the allowed amount of claims be estimated prior to creation of a post-confirmation trust overseeing distributions.  See In re Fed.-Mogul Glob., 330 B.R. at 155 (estimating aggregate allowable amount of all personal injury liability claims for the purposes of creating a trust); In re Eagle-Picher Indus., 189 B.R. at 682 (estimating "future" asbestos-related personal injury claims "so that a proper allocation of plan funding assets can be made as between the unsecured creditors and the [trust] created by the plan").  Rule 23 has no place in that distribution process, and nothing about the process proposed by the GUC Trust and Signatory Plaintiffs renders the Settlement ineffectual or illusory.

Accordingly, neither a filed proof of claim nor certification of a class under Rule 23 is a

prerequisite to the Court's estimation of the aggregate allowable amount of Plaintiffs' claims against the Old GM estate. However, even if Rule 23 were required, it is satisfied, and if required Plaintiffs will submit papers demonstrating that the economic loss claims can be certified under Rule 23(b)(1)(B) or Rule 23(b)(3) for settlement purposes as part of a Preliminary Approval Motion. And, because the issues here are distinct from those in the MDL bellwether class certification process, this Court could certify a settlement class without fear of conflict with the major rulings that Judge Furman might make in the bellwether certification process. The key differences arise because: (i) there is very little overlap between the Settlement's Economic Loss Plaintiffs and the MDL class Plaintiffs[20]; (ii) only the Settlement Plaintiffs can obtain "limited fund" certification because New GM is not a limited fund; and (iii) even if the Court considers Rule 23(b)(3) in lieu of using Rule 23(b)(1)(B) for a limited fund, certification will be decided under the settlement-mandated structure that does not consider trial manageability factors, see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).

## III.    New GM Does Not Have Standing To Object To The Settlement Stage On Rule 23 Grounds.

New GM lacks standing to argue that Rule 23 must be met before proceeding with the Settlement. It is well-settled law that, in order to have standing before this Court, New GM has the burden of demonstrating: (i) prudential standing; (ii) constitutional standing; and (iii) Bankruptcy Code Section 1109 standing. See In re Motors Liquidation Co., 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018). New GM cannot satisfy any of these requirements.

---

[20]  The economic loss claimants covered by the Settlement all owned their Old GM cars prior to the Closing Date of the Sale (July 10, 2009), and no cars sold by New GM are at issue in the bankruptcy proceedings or the Settlement Agreement. Thus, the bankruptcy claims brought by pre-Sale purchasers necessarily focus exclusively on the conduct of Old GM, whereas the live claims in the MDL concern almost exclusively consumers who purchased their cars after the closing date and focus on the conduct of New GM. The only exception is that some Ignition Switch Plaintiffs retain successor liability claims against New GM based on Old GM's conduct, but the District Court has ruled that 11 of 16 jurisdictions considered so far would not recognize a successor liability claim.

Prudential standing "bars litigants 'from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves.'" Id. (quoting Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 643 (2d Cir. 1988)). Here, New GM is arguing that the Settlement Agreement cannot proceed absent certification of a class under Rule 23 based on the purported lack of personal jurisdiction and violation of due process rights. These defenses, however, belong not to New GM, but to its victims. See, e.g., Sayles v. Pac. Eng'rs & Constructors, Ltd., No. 08-cv-676S, 2009 WL 791332, at *7 (W.D.N.Y. Mar. 23, 2009) (holding defendant lacked standing to raise lack of personal jurisdiction over co-defendant); In re New Century TRS Holding, Inc., 612 F. App'x 147, 149 (Mem.) (3d Cir. 2015) (holding that known creditors lack standing to appeal the sufficiency of notice as to unknown creditors). New GM, therefore, fails the prudential standing requirement because it seeks to assert the rights and defenses of third parties in furtherance of its own self-interest.

New GM also cannot establish constitutional standing because it lacks "a personal stake in the outcome of the current controversy," i.e., whether this Court may approve the notice procedures and Settlement Agreement without certifying a class under Rule 23. See Breeden v. Kirkpatrick & Lockhart, LLP, 268 B.R. 704, 708 (S.D.N.Y. 2001), aff'd sub nom. Breeden v. Kirkpatrick & Lockhart, LLC (In re Bennett Funding Grp.), 336 F.3d 94 (2d Cir. 2003). As with prudential standing, "[a] party can only assert its own legal rights and cannot assert the rights of third-parties." In re Motors Liquidation Co., 580 B.R. at 341 (quoting Breeden, 268 B.R. at 708). Constitutional standing requires an injury "that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 341 (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016)). A mere possibility of future injury is insufficient to confer constitutional standing. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 401-402 (2013)

24

(explaining that theory of future injury is "too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending'").

New GM does not have a direct stake in the Settlement Stage because any interest it has in the Adjustment Shares is not implicated by approval of the notice procedures or Settlement Agreement.   There is no "actual or imminent" injury that confers standing to object to the Settlement, simply the potential for future injury, which is plainly insufficient.  See Clapper, 568 U.S. at 401-02.[21]

Finally, New GM cannot demonstrate party in interest standing under Bankruptcy Code Section 1109(b).  "Party in interest" standing under Bankruptcy Code Section 1109(b) requires New GM to show that it is either a party enumerated in the statute or "(1) have a 'direct' stake in the proceeding and (2) 'be a creditor of a debtor . . . or be able to assert an equitable claim against the estate.'"  In re Motors Liquidation Co., 580 B.R. at 342 (internal quotation omitted). New GM is not a creditor or holder of an equitable claim against the estate, nor does it have a direct stake in the Settlement Stage, which does not implicate any economic interest of New GM.[22]  As a result, New GM cannot establish party in interest standing.

Because New GM cannot establish any of the requirements for standing, let alone all three, New GM lacks standing to argue that Rule 23 must be met before proceeding with the Settlement and its views on the Rule 23 issue should not be given any weight.

---

[21] For this reason, the cases cited by New GM, see Obj. ¶ 68, are inapposite.  See In re Glob. Indus. Techs., Inc., 645 F.3d 201, 204-08, 212-14 (3d Cir. 2011) (holding that the debtor's liability insurers had standing to contest a plan of reorganization that would assign their policies to a trust created to satisfy the debtor's liability for certain injury claims); In re Standard Insulations, Inc., 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992) (insurers had standing to challenge disallowance procedure for asbestos claims where insurers were responsible for payment of claims), abrogated on other grounds by In re Broadmoor Country Club & Apt., 158 B.R. 146 (W.D. Mo. 1993); In re Stone Barn Manhattan LLC, 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2009) (party with reversionary right to funds in account had standing to object to settlement to be funded from account).

[22] Despite New GM's contention to the contrary, see Obj. ¶ 67 n.21, this Court has already ruled that "New GM is no longer a creditor, as its proof of claim has been withdrawn."  In re Motors Liquidation Co., 580 B.R. at 350.

## CONCLUSION

WHEREFORE the Parties respectfully request that the Court enter an Order: (i) finding that class certification under Federal Rule of Civil Procedure 23 is not required in connection with the Settlement or Estimation Stages; (ii) finding that New GM lacks standing to assert the due process and jurisdictional objections it has raised; and (iii) granting such other and further relief as the Court deems appropriate.


Dated: June 12, 2018
     New York, New York

Respectfully submitted,

*/s/ Edward S. Weisfelner*
Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN
& PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO
LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

26

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: 212-813-8800
wweintraub@goodwinlaw.com
gfox@goodwinlaw.com

*Counsel to Those Certain Pre-Closing
Accident Plaintiffs Represented By Hilliard
Martinez Gonzales L.L.P. and the Law
Offices of Thomas J. Henry*

Robert Hilliard, Esq.
HILLIARD MARTINEZ GONZALES LLP
719 South Shoreline
Suite 500
Corpus Christi, TX 78401
Tel: 361-882-1612
bobh@hmglawfirm.com

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

Thomas J. Henry, Esq.
THE LAW OFFICES OF THOMAS J.
HENRY
4715 Fredericksburg, Suite 507
San Antonio, TX 78229

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

27

Lisa M. Norman (admitted pro hac vice)
T. Joshua Judd (admitted pro hac vice)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
Tel: 713-850-4200
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel to Certain Pre-Closing Accident
Plaintiffs*

Kristin K. Going
DRINKER BIDDLE
1177 Avenue of the Americas, 41st Floor
New York, New York 10036
Tel: (212) 248-3273
kristin.going@dbr.com

*Counsel for Wilmington Trust Company, as
Administrator and Trustee of the GUC Trust*