HEARING DATE & TIME: To be determined
OBJECTION DEADLINE: To be determined

**COLE SCHOTZ P.C.**
Mark Tsukerman, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
mtsukerman@coleschotz.com

*Bankruptcy Counsel for Certain Ignition Switch
Pre-Closing Accident Plaintiffs Represented by
The Cooper Firm and Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*<br>       f/k/a General Motors Corp., *et al.*,<br><br>                     Debtors. | Chapter 11<br><br>Case No.: 09-50026 (MG)<br><br>(Jointly Administered) |

**NOTICE OF MOTION BY CERTAIN IGNITION SWITCH PRE-CLOSING
ACCIDENT PLAINTIFFS FOR AUTHORITY TO FILE LATE PROOFS OF CLAIM
FOR PERSONAL INJURIES AND WRONGFUL DEATHS IN CONNECTION WITH
<u>SETTLEMENT WITH THE MOTORS LIQUIDATION COMPANY GUC TRUST</u>**

**PLEASE TAKE NOTICE** that upon the annexed *Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths in Connection with Settlement with the Motors Liquidation Company GUC Trust* (the "**Motion**") the Ignition Switch Pre-Closing Accident Plaintiffs identified in the proofs of claim attached the Motion (the "**Movants**") seek an order authorizing them to file late claims against the estate of Motors Liquidation Company and deeming their claims to be timely as part of and in connection with *the Motion of Motors Liquidation Company GUC Trust to Approve (I)*

1

*the GUC Trust Administrator's Actions and (II) the Settlement Agreement by and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002 and 9019, and (III) Authorize the Reallocation of GUC Trust Assets* filed on May 3, 2018 [Docket No. 14293] (the "**Settlement Motion**") and *Motion of Motors Liquidation Company GUC Trust to Estimate Vehicle Recall Economic Loss and Personal Injury Claims for Allowance Purposes and to Establish a Schedule for the Claims Estimation Proceeding* filed on May 3, 2018 [Docket. No. 12494] (the "**Estimation Motion**").

    PLEASE TAKE FURTHER NOTICE that the hearing date and time and the objection deadline with respect to the Motion shall be set for the same hearing date and time and same objection deadline as for the Settlement Motion.

Dated July 27, 2018

                                         Respectfully submitted,

                                         */s/ Mark Tsukerman*
                                         Mark Tsukerman
                                         COLE SCHOTZ P.C.
                                         1325 Avenue of the Americas, 19th Floor
                                         New York, NY 10019
                                         Telephone: (212) 752-8000
                                         Facsimile: (212) 752-8393
                                         mtsukerman@coleschotz.com

                                         *Bankruptcy Counsel for Certain Ignition Switch*
                                         *Pre-Closing Accident Plaintiffs Represented by The*
                                         *Cooper Firm and Beasley, Allen, Crow, Methvin,*
                                         *Portis & Miles, P.C*

**HEARING DATE & TIME: To be determined**
**OBJECTION DEADLINE: To be determined**

**COLE SCHOTZ P.C.**
Mark Tsukerman, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
mtsukerman@coleschotz.com

*Bankruptcy Counsel for Certain Ignition Switch
Pre-Closing Accident Plaintiffs Represented by
The Cooper Firm and Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*<br>f/k/a General Motors Corp., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No.: 09-50026 (MG)<br><br>(Jointly Administered) |

**MOTION BY CERTAIN IGNITION SWITCH PRE-CLOSING ACCIDENT
PLAINTIFFS FOR AUTHORITY TO FILE LATE PROOFS OF CLAIM FOR
PERSONAL INJURIES AND WRONGFUL DEATHS IN CONNECTION WITH
<u>SETTLEMENT WITH THE MOTORS LIQUIDATION COMPANY GUC TRUST</u>**

The Ignition Switch Pre-Closing Accident Plaintiffs[1] (collectively, the "**Movants**") identified in the proofs of claim attached hereto as **Exhibit A** (the "**Proofs of Claim**"), by and through their undersigned counsel, hereby file this motion (the "**Motion**") pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9006(b)(1) of the

---

[1] Capitalized terms not defined herein shall have the meanings assigned to them in the Settlement Agreement, dated as of April 25, 2018 (as amended on Mary 22, 2018) (the "**Settlement Agreement**," and the agreement contemplated therein, the "**Settlement**"), which was filed with the Bankruptcy Court on May 22, 2018 under Docket No. 14312. The Movants executed the Settlement Agreement prior to the filing of this Motion and are Signatory Plaintiffs thereto.

1

57986/0001-16064386v3

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the February 8, 2012 *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims* [Docket No. 11394] (the "**Late Filed Claims Order**"), for an order permitting the Movants to file the Proofs of Claim against the estate of Motors Liquidation Company, *et al.* (the "**Debtors**") and deeming their claims to be timely as part of and in connection with the GUC Trust's Settlement Motion and Estimation Motion. In support of the Motion, the Movants respectfully state as follows:

## JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought in this Motion are Bankruptcy Code section 105 and Bankruptcy Rule 9006.

## RELIEF REQUESTED

As reflected in the Proofs of Claim, each of the Movants holds a personal injury and wrongful death claim against Old GM based on a pre-closing accident involving the Ignition Switch Defect in a vehicle manufactured by Old GM which was later recalled by New GM in 2014 under Recall No. 14V-047. Like the other Ignition Switch Pre-Closing Accident Plaintiffs who have filed Late Claim Motions and are Signatory Plaintiffs, the Movants assert that they were denied due process in connection with the Bar Date and should be allowed to prosecute "late" proofs of claim against the Debtors.

Prior to filing this Motion, the Movants informed the GUC Trust of their claims and contentions, and the GUC Trust has agreed to fold the Movants into the Settlement Agreement. The Movants have executed the Settlement Agreement and are Signatory Plaintiffs. By filing this Motion, the Movants seek an order, substantially in the form of the proposed order attached

2

hereto as **Exhibit B**, granting them leave to file their Proofs of Claim against the Debtors and deeming their claims timely as part of and in connection with the GUC Trust's Settlement Motion and Estimation Motion.

## BACKGROUND

For sake of brevity, the Movants shall not fully restate the extensive background to this matter already set out in the Settlement Motion and in Late Claim Motions filed by other Plaintiffs.[2] A brief background discussion is provided to give context to the argument that follows.

A.  **The Bankruptcy Court's April 2015 Decision and the Second Circuit's Decision**

In April 15, 2015, this Court issued its decision with respect to the Motions to Enforce, *see In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015) (Gerber, J.) (hereinafter, the "*April 2015 Decision*") and on June 1, 2015, entered a Judgment (the "*June 2015 Judgement*") implementing that decision. The Court held, in relevant part, that:

(a) The Ignition Switch Pre-Closing Accident Plaintiffs were known creditors of Old GM at the time it filed for bankruptcy but Old GM did not apprise them of the existence of the Ignition Switch Defect before the November 30, 2009 bar date (the "**Bar Date**") and, consequently, the Ignition Switch Pre-Closing Accident Plaintiffs were not able to file timely proofs of claim based upon the Ignition Switch Defect. *April 2015 Decision*, 529 B.R. at 574. Old GM's knowledge of the Ignition Switch Defect, its failure to initiate a recall of the Subject

---

[2] *See, e.g.*, *Motion for an Order Granting Authority to File Late Class Proofs of Claim*, filed on December 22, 2016 [Docket No. 13806]; *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injury and Wrongful Deaths*, filed on December 22, 2016 [Docket No. 13807]; *Motion by Additional Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, filed on July 28, 2017 [Docket No. 14018]; *Supplemental Omnibus Motion by Certain Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths in Connection with Settlement with the Motors Liquidation Company GUC Trust*, filed on May 25, 2018 [Docket No. 14325].

3

Vehicles or "send out *any* recall notices" even though such recall was required, and its failure to "provide *any* alternative form of notice to those with Ignition Switch Defects," effectively prevented the Ignition Switch Pre-Closing Accident Plaintiffs from timely asserting claims against Old GM arising from the Ignition Switch Defect. *Id*. at 574 n.214.

(b) The Ignition Switch Pre-Closing Accident Plaintiffs were prejudiced by the denial of constitutionally sufficient notice of the Bar Date and the "obvious" remedy for that due process violation would be granting them leave to file late claims. *See id.* at 573-74. 583 ("The remedy with respect to the denial of notice sufficient to enable the filing of claims before the Bar Date is obvious. That is leave to file late claims.").

(c) Notwithstanding the denial of constitutionally sufficient notice and resulting prejudice to the Ignition Switch Pre-Closing Accident Plaintiffs, however, any late proofs of claim they may file against the GUC Trust would be barred pursuant to the doctrine of equitable mootness. *See id.* at 592. As practical matter, the latter ruling essentially negated the Court's due process ruling by rendering any request to file late claims a futile act.

On July 13, 2016, the Second Circuit issued *Elliott v. General Motors LLC* (*In re Motors Liquidation Co.*), 829 F.3d 135 (2d Cir. 2016) which affirmed in part, reversed in part, and vacated in part the April 2015 Decision. In *Elliott*, the Second Circuit held, in relevant part, that:

(a) "Old GM knew or should have known with reasonable diligence about the [Ignition Switch Defect]" and, thus, upheld this Court's determination that the Ignition Switch Pre-Closing Accident Plaintiffs were known creditors who did not receive constitutionally sufficient notice in connection with Old GM's chapter 11 case. *Elliott*, 829 F.3d at 161.

(b) The Ignition Switch Pre-Closing Accident Plaintiffs had suffered an actionable due process violation with respect to the Bar Date and it was, therefore, premature to determine that

4

any claims they may assert against the GUC Trust might be equitably moot.[3] The Second Circuit, thus, vacated this Court's equitable mootness holding as an advisory opinion. *See id.* at 166-68.

Furthermore, this Court's rulings in the April 2015 Decision regarding the prejudice suffered by Ignition Switch Pre-Closing Accident Plaintiffs in connection with the improper notice of the Bar Date and the proper remedy for that due process violation were not appealed and, thus, remain law of the case.

### B. Post-Second Circuit Decision Late Claim Litigation

Following the Second Circuit's *Elliott* decision, this Court issued an *Order to Show Cause*, dated December 13, 2016 [Docket No. 13802], identifying five threshold issues to be addressed on remand, including "whether the Pre–Closing Accident Plaintiffs, the Ignition Switch Plaintiffs and/or Non–Ignition Switch Plaintiffs satisfy the requirements for authorization to file late proof(s) of claim against the GUC Trust and/or whether such claims are equitably moot." (Settlement Agreement at ¶ Z) (the "**Late Claim Issue**"). With respect to the Late Claim Issue, the *Order to Show Cause* required Brown Rudnick LLP and Goodwin Proctor LLP to file motions (collectively referred to as "**Late Claim Motions**") on behalf of their respective clients seeking authority to file late proofs of claim by December 22, 2016. (*See Order to Show Cause* at fourth Ordered paragraph, ¶ 1). Plaintiffs wishing to join a Late Claim Motion were required to file a joinder by January 6, 2017.[4] (*See id.*).

---

[3] It is worth noting that the Second Circuit declined to resolve "whether it is appropriate for a bankruptcy court – as opposed to an appellate court – to apply equitable mootness, which appears to be a recent phenomenon," but noted that the Second Circuit's equitable mootness cases "have all involved an appellate body applying the doctrine in the first instance." *Id*. at 167 n.30.

[4] Notably, by its plain terms, the *Order Show to Cause* did not technically establish a deadline for any and all Ignition Switch Pre-Closing Accident Plaintiffs to file late claim motions. Nevertheless, Movants' counsel was not engaged by the Movants in connection with these matters (or, for two the Movants, reengaged) until 2017, after

5

57986/0001-16064386v3

On December 22, 2016, Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, and certain Ignition Switch Pre-Closing Accident Plaintiffs filed Late Claim Motions. [*See* Docket Nos. 13806, 13807]. On July 28, 2017, certain other Ignition Switch Pre-Closing Accident Plaintiffs filed a Late Claim Motion (which was supplemented to add additional Plaintiffs on September 19, 2017 and again on December 12, 2017). [*See* Docket Nos. 14018, 14112, 14195]. Thereafter, the parties participated in conferences with the Court, engaged in preliminary rounds of discovery, and filed briefs addressing two preliminary issues raised in the Late Claim Motions: (i) whether relief can be granted absent a showing of excusable neglect under the *Pioneer* factors; and (ii) the applicability of any purported agreements with the GUC Trust or other tolling arrangements to toll timeliness objections (the "**Initial Late Claims Motions Issues**"). (*See* Settlement Motion at ¶ 36). Subsequent to such briefing, certain Plaintiffs who had not previously appeared before this Court filed motions seeking authority to file late proofs of claim. (*See id.*).

Following the conclusion of briefing but before any rulings on the Initial Late Claim Motions Issues were made, the GUC Trust and the parties to the filed Late Claim Motions on file reached a settlement agreement. That agreement, however, was not executed by the parties and was later disavowed by the GUC Trust after the settlement had been publicly announced. The dispute resulted in a trial in December 2017 over whether the unsigned settlement agreement could be enforced against the GUC Trust by the settling claimants. On January 18, 2018, this Court held the unsigned settlement agreement was not enforceable. *See In re Motors Liquidation Co.*, 580 B.R. 319 (Bankr. S.D.N.Y. 2018). Thereafter, the GUC Trust, represented by the new counsel, and representatives for Plaintiffs who were party to the aborted settlement agreement,

---

the *Order to Show Cause* was issued. Counsel, and upon belief, the Movants, did not receive notice of that order and have not otherwise been receiving notice of the filings in these bankruptcy proceedings.

renewed settlement negotiations which culminated in the execution of the current Settlement Agreement on April 25, 2018.

Subject to the Court's approval, the Settlement Agreement is intended to globally resolve the Late Claim Issue and Initial Late Claim Motions Issues, the Late Claim Motions, the allowance of Plaintiffs' claims, and Plaintiffs' rights to GUC Trust Assets, all of which remain unresolved, disputed issues. To implement and seek approval of the Settlement, on May 2 and 3, 2018, the GUC Trust filed three motions in this Court – the Notice Motion [Docket No. 14292], the Settlement Motion [Docket No. 14293] and the Estimation Motion [Docket No. 14294] – to be considered by the Bankruptcy Court for approval in successive stages.[5] On May 22, 2018, New GM filed an objection to the Notice Motion [*see* Docket no. 14314] and separately moved to stay the Settlement proceedings in this Court pending the adjudicating of allegedly related issues in the multi-district litigation pending in the District Court for the Southern District of New York. On July 19, 2018 the Court heard oral argument on an issue raised in New GM's objection – whether Rule 23 of the Federal Rules of Civil Procedure must apply to any proposed settlement of economic loss claims presented to the Court – which the court determined was a gating issue to be decided prior to granting the relief sought in the Notice Motion. That gating issue is *sub judice*, and as of the filing of this Motion, a hearing on the Notice Motion (and thereafter [as contemplated by the Settlement], on the Settlement Motion and then the Estimation Motion) has not been set, nor the relief sought therein granted.[6]

---

[5] The terms of the Settlement are more particularly described in those motions, and in particular, the Settlement Motion. For purposes of this Motion, the Movants assume familiarity with each of those filings and refer to those pleadings for a more detailed discussion of the relief sought by the GUC Trust therein.

[6] After the Notice Motion, Settlement Motion, and Estimation Motion were filed, on May 25, 2018, counsel for certain Pre-Closing Accident Plaintiffs supplemented its prior filed Late Claim Motion to add requests to file late proofs of claim on behalf certain additional Pre-Closing Accident Plaintiffs. [*See* Docket No. 14325]. Subsequently, on July 19, 2018, counsel to certain "Additional Ignition Switch Pre-Closing Accident Plaintiffs"

7

# BASIS FOR RELIEF[7]

### A. The Movants Should be Permitted to File and Prosecute Late Proofs of Claim Against the GUC Trust

[T]he Due Process Clause of the Fifth Amendment dictates that a debtor's creditors receive notice of the debtor's bankruptcy case and applicable bar date so that creditors have an opportunity to make any claims they may have against the debtor's estate." *In re XO Commc'ns, Inc.*, 301 B.R. 782, 791-92 (Bankr. S.D.N.Y. 2003) (citing *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 679 (Bankr. S.D.N.Y. 1993)). It is well-established that if a known creditor has not received the actual notice of a claims bar date that due process requires, its claim cannot be barred as untimely. *See City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293 (1953); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 2256683, at *6 (Bankr. S.D.N.Y. May 11, 2015) ("'[I]f a debtor who files for chapter 11 bankruptcy protection does not give 'reasonable notice' to a creditor of the bankruptcy proceeding and the applicable bar date(s), the creditor's proof of claim cannot be constitutionally discharged.'"); *In re AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) ("a known creditor must receive proper, adequate notice before its claim is barred forever"); *In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 1577763, at *3 (Bankr. S.D.N.Y. May 30, 2007) (same); *In re Best Prods. Co., Inc.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992) (same). Indeed, courts have held that due process requires that when a creditor does not receive adequate notice, it "must be permitted to file [a claim] tardily. . . ." *U.S. v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1089 (6th Cir. 1990).

---

filed a supplement to a prior filed Late Claim Motion to join forty-two additional Ignition Switch Pre-Closing Accident Plaintiffs to the relief sought in that motion. [*See* Docket No. 14346].

[7] To avoid duplication, to the extent not addressed herein, the Movants incorporate by reference herein the arguments and authorities relied upon in the Late Claim Motions filed by other Pre-Closing Accident Plaintiffs (*see, e.g.*, footnote 2, *supra*) which apply with equal force to the Movants, who are similarly situated.

8

57986/0001-16064386v3

In its April 2015 Decision, this Court found that the notice of the Bar Date provided to Ignition Switch Pre-Closing Accident Plaintiffs was deficient for at least two reasons. First, as "known creditors," the Ignition Switch Pre-Closing Accident Plaintiffs were entitled to actual notice of the Bar Date. *See April 2015 Decision*, 529 B.R. at 525, 560. Second, because there was no recall prior to the Bar Date that alerted Ignition Switch Pre-Closing Accident Plaintiffs to the existence of the Ignition Switch Defect and the notice did not mention the existence of the Ignition Switch Defect, the notices themselves were insufficient to put the Ignition Switch Pre-Closing Accident Plaintiffs on notice that they had Ignition Switch Defect-related claims. *See id.* at 525, 556-57; *see also id.* at 574, n.214 ("Old GM failed to send out any recall notices, or provide any alternative form of notice to those with Ignition Switch Defects."). Specifically, the Court wrote:

> [b]y reason of its failure to provide the Plaintiffs with either the notice required under the Safety Act or any other form of written notice, Old GM failed to provide the Plaintiffs with the notice that due process requires. And because that failure prejudiced them in filing timely claims, the Plaintiffs were prejudiced as a result. The failure to give the Plaintiffs the notice that due process requires, coupled with the prejudice to them that resulted, denied the Plaintiffs the requisite due process.

*Id.* at 574.

As such, each Ignition Switch Pre-Closing Accident Plaintiff was entitled to actual notice of the Bar Date by first class mail. Moreover, regardless of whether notice of the Bar Date was sent by first class mail or was published in a newspaper of general circulation, the content of the notice was deficient. This is because the form of notice did not mention the Ignition Switch Defect and there was no other information about the existence of the Ignition Switch Defect (such as a recall notice) disseminated to the Movants that could be determined to have supplemented the information contained in the notice.

9

Because of the due process violation that prejudiced the Ignition Switch Pre-Closing Accident Plaintiffs, the Court held that that group of claimants "may petition the Bankruptcy Court (on motion and notice) for authorization to file a late or amended proof of claim against the Old GM bankruptcy estate." *June 2015 Judgment* at 2; *April 2015 Decision*, 529 B.R. at 583 ("[t]he remedy with respect to the denial of notice sufficient to enable the filing of claims before the Bar Date is obvious. That is leave to file late claims."). At the same time, however, the Court also ruled that any late claim filed by an Ignition Switch Pre-Closing Accident Plaintiff would be barred as equitably moot. *April 2015 Decision*, 529 B.R. at 592. The effect of the Court's equitable mootness ruling was to render the act of seeking permission to file a late proof of claim relating to the Ignition Switch Defect a waste of time and resources. Given the twelve year concealment of the Ignition Switch Defect,[8] followed by New GM's Motions to Enforce and the April 2015 Decision on equitable mootness, no basis existed to seek allowance of late claims relating to the Ignition Switch Defect until July 2016 when the Second Circuit vacated the Court's equitable mootness ruling.

The Second Circuit's decision in *Elliott* changed the analysis. The Second Circuit affirmed this Court's ruling that the Ignition Switch Pre-Closing Accident Plaintiffs were known creditors who did not receive proper notice in connection with Old GM's bankruptcy. *See Elliott*, 829 F.3d at 160-61. Further, this Court's ruling that the due process violation vis-à-vis the Bar Date prejudiced the Ignition Switch Pre-Closing Accident Plaintiffs and that the appropriate remedy for that violation was granting leave to file a late proof of claim was never appealed and is now law of the case. *Cty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d

---

[8] *See Elliott*, 829 F.3d at 148-50 (chronicling history of the Ignition Switch Defect from 2002, when "prototypes consistently failed to meet technical specifications" and almost immediately after production "customers complained of moving stalls, sometimes at highway speeds," to February 2014, when New GM began its Ignition Switch Defect related recalls).

10

1112, 1117 (2d Cir. 1997) ("a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case."); *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir. 1995) ("a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." (internal quotes omitted)). Thus, by vacating the Court's equitable mootness ruling as an improper advisory opinion, *see Elliott*, 829 F.3d at 166-68, the Second Circuit cleared the way for Ignition Switch Pre-Closing Accident Plaintiffs to pursue the remedy this Court proposed in its April 2015 Decision – seeking leave to file late proofs of claim and to have those claims allowed and paid from GUC Trust assets.

      **B.**    **The Movants Easily Meet the Requisite Standard for Seeking Allowance of their Proofs of Claim Notwithstanding the Passage of the Bar Date**

            **1.**    **The Movants are Not Bound by the Bar Date Order and, Therefore, Should Not Be Barred from Filing Proofs of Claim against the Debtors**

Having established that they were denied due process in connection with the Bar Date, the Movants should not be required to make any showing in order to be permitted to file "late" claims. Neglect (excusable or otherwise) had nothing to do with the Ignition Switch Pre-Closing Accident Plaintiffs missing the Bar Date. Rather, the cause was the concealment of the existence of the Ignition Switch Defect until years after the Bar Date has passed. The failure to file timely proofs of claim was the result of the due process violation found by this and the Second Circuit. Under the Second Circuit's 2010 *Manville* decision, the remedy for that due process violation is clear: the Movants should not be bound by the Bar Date Order. *Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co.* (*In re Johns-Manville Corp.*), 600 F.3d 135, 157-58 (2d Cir. 2010) (per

11

curiam) (hereinafter, "*Manville IV*").[9] Accordingly, the Movants should be permitted to file and prosecute their "late" Proofs of Claim.

> **2. Even if the Deadline Imposed by the Bar Date Order Applied to the Movants, Their Failure to File Claims by the Bar Date is the Result of Excusable Neglect and, Pursuant to Bankruptcy Rule 9006(b)(1), They Should be Permitted to File "Late" Claims**

However, even if the "excusable neglect" standard typically applied in situations where the party seeking to act outside of a deadline is applicable here, the Movants believe that in the absence of their settlement with the GUC Trust, they would easily meet the requirement that the "lateness" of their proofs of claim is excusable. Therefore, at a minimum, the Movants raise a dispute which can appropriately be settled with the GUC Trust as part of the Settlement Agreement. In this regard, "[w]hen creditors fail to file claims before a bar date <u>despite having constitutionally sufficient notice to do so</u>," Federal Rule of Bankruptcy Procedure 9006(b)(1) provides courts with the discretion to deem the claims timely filed if the failure to act was the result of excusable neglect. *Residential Capital*, 2015 WL 2256683 at *9 (emphasis added); *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 121 (2d Cir. 2005). Specifically, Rule 9006(b)(1) provides:

> [w]hen an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).

---

[9] In *Manville IV*, in connection with a settlement, the bankruptcy court entered orders in 1986 (as well as a "clarifying order" in 2004) that enjoined claims against certain settling insurers. *Id.* at 141-42. Years after entry of the 1986 orders, Chubb Indemnity Insurance Co. ("Chubb"), one of the parties purportedly subject to the injunction, argued that it could not be bound by the 1986 orders because, among other reasons, "it was not given constitutionally sufficient notice of the 1986 Orders." *Id.* at 137, 142. The Second Circuit agreed that Chubb did not receive constitutionally sufficient notice of the 1986 orders and held that because Chubb's due process rights were violated, it was "not bound by the terms of the 1986 Orders." *Id.* at 158. The Bar Date Order here serves the same injunctive purpose as the 1986 orders in *Manville IV*.

12

In determining whether the failure to timely file a proof of claim is the result of "excusable neglect," courts apply a four part test first articulated by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993):  (i) the danger of prejudice to the debtor; (ii) the length of the delay and impact thereof on the proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant, and (iv) whether the movant acted in good faith.  While courts have recognized that the inquiry is an equitable one and that "all relevant circumstances surrounding the party's omission" must be considered, courts in the Second Circuit accord particular weight to the third factor – the reason for the delay.  *Enron*, 419 F.3d at 122-23 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)); *Dana Corp.*, 2007 WL 1577763 at *4 (quoting *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006)).

In addition, courts have routinely "found excusable neglect where the creditor fails to comply with the bar date because, through no fault of its own, it had no notice of that date." *In re William B. Wilson Mfg. Co.*, 59 B.R. 535, 538 (Bankr. W.D. Tex. 1986); *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985) ("nonreceipt of notice would clearly constitute excusable neglect."); *In re Pettibone Corp.*, 162 B.R. 791, 814 (Bankr. N.D. Ill. 1994) (quotations omitted) ("[c]ourts have consistently found the lack of notice to 'known' creditors to constitute the paradigm example of excusable neglect and freely grant motions to file late claims on behalf of known creditors who through no fault of their own, had no notice of the bar date.").

The Movants easily satisfy all four factors of the *Pioneer* test and should be permitted to prosecute their proofs of claim notwithstanding the passage of the Bar Date.

<u>First</u>, there can be no prejudice to the Debtors where, as here, Old GM has been liquidated and the delay in filing these claims is the result of Old GM's own due process

13

violation (and New GM's concealment of the existence of the Ignition Switch Defect from the closing of the sale from Old GM in the summer of 2009 until February-March 2014). *See In re First Magnus Fin. Corp.*, 415 B.R. 416, 423 (Bankr. D. Ariz. 2009) ("[t]he Liquidating Trustee's argument that the late claim will cause judicial inefficiency and prejudice to the estate rings hollow in light of [the claimant's] right to due process and the Debtor's duties to provide adequate notice of the bar date to known creditors."). It is also worth noting that the vast majority of the GUC Trust's assets was distributed to Old GM creditors before New GM admitted to the existence of the Ignition Switch Defect in February 2014. *See Elliott*, 829 F.3d at 148 ("As of March 31, 2014, GUC Trust had distributed roughly ninety percent of its New GM securities and nearly 32 million units of GUC Trust"; "On February 7, 2014, New GM first informed the National Highway Traffic Safety Administration ('NHTSA') that it would be recalling, among other vehicles, the 2005 Chevrolet Cobalt. A defect in the ignition switch could prevent airbags from deploying."). To date, the due process violations have resulted in a windfall to Old GM's other creditors because those creditors have been paid (and may receive future payments) without dilution by the Movants' legitimate claims. In other words, it is the Movants and the other plaintiffs denied due process who have been prejudiced to date, not the Debtors or their other stakeholders.

By reason of the Settlement, however, there is a powerful new factor at play. As the Court is aware, because of the terms of the Settlement Agreement, the Additional Shares that might result from the so-called "accordion feature" of the AMPSA are exclusively reserved for the Plaintiffs, while all other creditors and the GUC Trust are being released, thus eliminating any prejudice to the Debtors or their other creditors. There is no prejudice to other creditors

14

because, but for the late filed claims, the threshold trigger for the accordion feature of the AMPSA would not be reached.

Second, the length of the delay in filing the claims is appropriate here in light of the circumstances surrounding the delay. The Movants' delay in filing their proofs of claim resulted from Old GM's failure to provide the Movants with appropriate and constitutionally mandated notice of the Bar Date and the subsequent concealment of the defects covered by the Recalls by New GM. The Movants' claims only became viable after the Second Circuit vacated the Court's equitable mootness ruling. Following the Second Circuit's decision, this Court identified the Late Claim Issue as one of the threshold issues to be addressed on remand. But that issue has yet to be determined even though it has been, as discussed above, the subject of some litigation. Given that, *inter alia*, none of the prior filed Late Claim Motions have been adjudicated (and indeed, the Late Claim Issue and Initial Late Claim Motion Issues remain unresolved) and in light of the Settlement, which seeks to globally resolve these issues and (if approved) will obviate the need for the Court to determine the Late Claim Issues, the Movants submit it is entirely appropriate for them to participate in the Settlement and for their Proofs of Claim to be deemed timely in connection therewith. Indeed, they are parties to the Settlement Agreement.

Third, the Movants' delay was not within their reasonable control; it was the result of the Debtors' failure to provide appropriate notice of the Bar Date to its known creditors with claims relating to the Ignition Switch Defect – a defect of which Old GM was well aware at the time it filed bankruptcy. The Movants were unaware of the existence of the Ignition Switch Defect until after the recall notices were issued in 2014. However, because the April 2015 Decision provided that any claim that the Movants could have filed against the GUC Trust would have been equitably moot, it was futile and wasteful for the Movants to file proofs of claim prior to the

15

Second Circuit overturning that ruling on appeal. Since the Second Circuit's decision and upon the learning and assessing the late claim litigation in these proceedings, including the proposed waiver, discharge and release of their claims against the Debtors contemplated by the Settlement, the Movants determined it was appropriate for them to assert their claims in these proceedings, participate in the Settlement and file this Motion.

Fourth, the Movants are merely seeking to have their legitimate claims deemed timely filed as would have been the case absent the due process violation inflicted upon them. But here, because of the Settlement Agreement and the mechanism under the AMPSA for issuance of the Additional Shares, the Movants' late claims do not impact the timely filed claims of other creditors that, unlike Movants, were given due process. Furthermore, given the structure of the Settlement and the contemplated waiver and release of the Movants' claims against the Debtors and GUC Trust, the Movants are acting in good faith by filing this Motion and seeking to have their claims considered and estimated together with the claims that are sought to be filed by other Pre-Closing Accident Plaintiffs that have filed Late Claim Motions.

Accordingly, the *Pioneer* factors are satisfied here and, even in the absence of the Settlement, the Movants should be permitted to file and prosecute their Proofs of Claim.

### C. Settlement of the Movants' Claims by Folding this Motion into the Pending Settlement is Appropriate Under Bankruptcy Rule 9019

The Movants, as Signatory Plaintiffs to the Settlement Agreement, believe it is entirely appropriate for their claims to be settled as part of the Settlement. The Settlement avoids the expense and uncertainty of litigation over whether the Movants should be permitted to file late claims. As more expansively set forth in the Settlement Motion, and based upon the arguments made by the GUC Trust in that motion, settlement of this Motion as part of the Settlement

16

Motion is supportable under Bankruptcy Rule 9019 for the same reasons that support the settlement of the other Late Claim Motions that have been filed to date.

The Movants hereby incorporate the arguments made in the Settlement Motion in support of approval of the Settlement Agreement. Based upon the foregoing, the Movants respectfully submit that the settlement of their claims and any attendant issues is fair and equitable and falls within the lowest range of reasonableness.

## CONCLUSION

For the foregoing reasons, the Movants respectfully request entry of an order authorizing the Movants to file the Proofs of Claim against the Debtors, deeming those claims to be timely as part of and in connection with the GUC Trust's Settlement Motion and Estimation Motion, and granting such other and further relief as this Court finds just and proper.

Dated: July 27, 2018

          Respectfully submitted,

          /s/ *Mark Tsukerman*
          Mark Tsukerman
          COLE SCHOTZ P.C.
          1325 Avenue of the Americas, 19th Floor
          New York, NY 10019
          Telephone: (212) 752-8000
          Facsimile: (212) 752-8393
          mtsukerman@coleschotz.com

          *Bankruptcy Counsel for Certain*
          *Ignition Switch Pre-Closing Accident*
          *Plaintiffs Represented by The*
          *Cooper Firm and Beasley, Allen,*
          *Crow, Methvin, Portis & Miles, P.C.*