KING & SPALDING LLP
1185 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

_____

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019

July 30, 2018

**VIA E-MAIL**
**AND ECF FILING**
The Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

Re:    **In re Motors Liquidation Company, *et al.***
       **Case No. 09-50026 (MG)**

       **Response by New GM to Letter from Signatory Plaintiffs Dated July
       26, 2018, Regarding a Proposed Settlement in the *GenOn* Bankruptcy**

Dear Judge Glenn:

General Motors LLC ("New GM") writes in response to the letter filed by the Signatory
Plaintiffs, dated July 26, 2018 [ECF No. 14348], regarding a recent settlement in the *GenOn*
bankruptcy case.  (*In re GenOn Energy, Inc.*, Case No. 17-33695 (DRJ) [Dkt. No. 1776]
(Bankr. S.D. Tex. July 25, 2018) (the "GenOn Settlement," and the motion to approve the
*GenOn* Settlement, the "GenOn 9019 Motion").)

At the July 19, 2018 hearing, counsel for certain economic loss late claimants described
the *GenOn* Settlement as "[a] settlement, again, of class action proofs of claim that are being
resolved by the bankruptcy court without reference to Rule 23."  (7/19/2018 Hr'g Tr. 65:4-6.)
The *GenOn* Settlement, however, did not involve a settlement of putative class claims without a
Rule 23 decision and is not a blueprint for avoiding application of Rule 23 to the Proposed
Settlement before this Court.  As explained below, the *GenOn* parties had ***twice*** attempted (and
failed) to certify classes; thus, the *GenOn* Settlement was, in the parties' own words, "***not a class
settlement***," and diverged from a "traditional Rule 23 settlement" in material ways.  (*See In re
W. States Whole Natural Gas Antitrust Litig.*, Case No. 03-1431 [Dkt. No. 3009] (June 28, 2018)
(the "GenOn MDL Status Report") (emphasis added).)[1]

_____

[1]    The *GenOn* MDL Status Report is attached hereto as **Exhibit A**, and the *GenOn* Settlement and *GenOn* 9019
      Motion are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

Honorable Martin Glenn
July 30, 2018
Page 2

The individual[2] proofs of claim resolved in the *GenOn* Settlement included claims for damages first sought in MDL proceedings pending before the United States District Court for the District of Nevada (the "GenOn MDL Court").  On March 30, 2017 (before GenOn filed for bankruptcy), the GenOn MDL Court denied certification of two putative statewide classes (one each for Kansas and Missouri plaintiffs), citing a lack of commonality and finding that the claims required "individualized examination."  (*See In re W. States Whole Natural Gas Antitrust Litig.*, Case No. 03-1431 [Dkt. No. 2832] (Mar. 30, 2017).)  After GenOn filed for bankruptcy, but prior to execution of the *GenOn* Settlement, the GenOn bankruptcy court, citing the GenOn MDL Court's previous ruling, also denied class certification of the same claims.[3]  Accordingly, the *GenOn* Settlement was executed ***after*** two courts considered and ***denied*** class certification.

As a result of the putative class representative's failure to obtain class certification of the proposed class claims in the bankruptcy court, the *GenOn* Settlement did not (and could not) settle the proposed class claims asserted in that case.  Rather, it resolved only the five ***actually filed*** proofs of claim of the "Named Claimants" in the aggregate amount of $3.85 million.  (*GenOn* 9019 Motion ¶ 21(a).)  The Named Claimants were the individuals who filed actual proofs of claims.  It is true that the Named Claimants ***voluntarily*** chose to share the settlement proceeds with other putative members of the denied classes; but that does not translate into "[a] settlement . . . of class action proofs of claim that are being resolved by the bankruptcy court without reference to Rule 23."  (7/19/2018 Hr'g Tr. 65:4-6.)

Critically, the unnamed claimants who did not sign the *GenOn* Settlement are not obligated to release any claims based on a notice alone or have their claims adjudicated without their consent (as millions of persons would be in the Proposed Settlement here).  Rather, releases would be provided only by those unnamed claimants who "opt in" to the *GenOn* Settlement by submitting claims to the bankruptcy court by a specified deadline or who participated in prior settlements in the MDL.  (*GenOn* 9019 Motion ¶ 21(b)(ii)-(iii).)  The *GenOn* Settlement does not provide for nonconsensual releases because it "is ***not*** a class settlement" (*GenOn* MDL Status Report p.1 (emphasis added)); indeed, the *GenOn* MDL Status Report notes that "***because*** the Bankruptcy Court previously denied without prejudice plaintiffs' motion for leave to file class proofs of claim in the bankruptcy, ***Debtors will not receive a release from absent class members*** that take no action with respect to this settlement (as they would in a traditional Rule 23 settlement)."  (*GenOn* MDL Status Report p.3 (emphasis added).)

Here, by contrast, Movants seek a settlement of "class action proofs of claim . . . without reference to Rule 23" (7/19/2018 Hr'g Tr. 65:4-6), and releases of claims against the GUC Trust by approximately 11.4 million individuals who are not parties to the Proposed Settlement.

---

[2]    Although two of the seven proofs of claim subject to the *GenOn* Settlement are the proposed class claims for which certification was denied, the law is clear that any such uncertified class claim thereafter "reflect[s] only their individual claims."  *In re Thomas McKinnon Securities, Inc.*, 150 B.R. 98, 102 (Bankr. S.D.N.Y. 1992).

[3]    At the November 1, 2017 *GenOn* hearing, Judge Jones noted that "I am faced with a situation where a United States District Judge has denied class certification.  By definition there is no class, there is no class counsel."  (*See* 11/1/2017 Hr'g Tr. 64:8-11, *In re GenOn Energy, Inc.*, Case No. 17-33695 (DRJ) [Dkt. No. 1165] (Bankr. S.D. Tex. Nov. 13, 2017), attached hereto as **Exhibit D**.)

Honorable Martin Glenn
July 30, 2018
Page 3

(*See, e.g.*, Proposed Settlement Order [ECF No. 14293-2] ¶ 7.)  That relief simply cannot be granted without meeting the standards of a "traditional Rule 23 settlement."  Moreover, a settlement with the named late claimants alone—whether they choose to share their recoveries with the unnamed late claimants or not—could not possibly trigger the Adjustment Shares.  In any event, the *GenOn* Settlement certainly does not provide legal support for the estimation and allowance of millions of unfiled, hypothetical claims without application of Rule 23.

Ironically, if the mechanics of the *GenOn* Settlement were applied to the Proposed Settlement here, only the small number of ***actually filed*** claims would be estimated for allowance, and the resulting proceeds—which would come only from the GUC Trust's assets (and not the Adjustment Shares)—would then be split among potentially millions of putative claimants.  Simply put, the *GenOn* Settlement does not support what Movants seek to accomplish in the Proposed Settlement.

*[Remainder of Page Intentionally Left Blank]*

Honorable Martin Glenn
July 30, 2018
Page 4

Respectfully submitted,


*/s/ Paul M. Basta*
Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*and*

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Counsel for General Motors LLC*

# EXHIBIT A

## THE *GENON* MDL STATUS REPORT

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| IN RE: WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION. | ) ) ) ) | MDL DOCKET NO. 1566<br><br>Base Case File No.<br>2:03-CV-S-1431-RCJ-PAL |
| _____ | ) ) | |
| THIS DOCUMENT RELATES TO: | ) ) | |
| *Learjet Inc., et al. v. ONEOK, et al.* | ) ) | 2:06-CV-00233-RCJ-PAL |
| *Heartland Regional Medical Center, et al. v. ONEOK, Inc., et al.* | ) ) ) | 2:07-CV-00987-RCJ-PAL |

## <u>NOTICE OF SETTLEMENT AND STATUS REPORT</u>

The Missouri and Kansas plaintiffs in the above-captioned cases submit this notice and status report to advise the Court of a settlement agreement reached with defendant RRI Energy Services, Inc. (f/k/a Reliant Energy Services, Inc.). The settlement was achieved as part of the ongoing bankruptcy proceedings in *In re GenOn Energy, Inc.*, Case No. 1733695 (DRJ), pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). Because the settlement was achieved to resolve various bankruptcy-related disputes, including claims presented to the bankruptcy court for the damages first sought in this Court, the Bankruptcy Court is currently overseeing the settlement terms and procedures. The parties have asked the Bankruptcy Court to approve the settlement, authorize and supervise distribution of settlement proceeds, and approve requested attorneys' fees and expenses. This is not a class settlement.

# PRINCIPAL SETTLEMENT TERMS

The principal terms of the settlement provide that Debtors in *In re GenOn Energy, Inc.* (collectively, the "Debtors") will pay an aggregate amount of $3,850,000 (the "Settlement Amount") to counsel for the named plaintiffs in the above-captioned cases for further distribution to putative class members in Missouri and Kansas. Counsel will provide mailed notice to the lists of potential claimants – all of whom are putative class members in Missouri and Kansas -- created and updated through the prior settlement processes approved in this Court. Those claimants will then have the opportunity to make a claim for a pro rata share of the Settlement Amount based on their qualifying volume of purchases of natural gas during the relevant time period.[1]

Claimants that make a claim to and receive a share of the Settlement Amount will release Debtors according to the following mutual release (the "Settlement Release"):

> Effective as of the payment of the Settlement Amount, or as of the
> Settlement Claims Bar Date for Settlement Claimants who submit
> a valid Settlement Claim after the payment of the Settlement
> Amount but before the Settlement Claims Bar Date, in
> consideration of the covenants undertaken in this Settlement
> Agreement, the Debtors, on the one hand, and each Settlement
> Claimant, on the other hand, each on behalf of themselves and (i)
> each of their respective current and former, direct and indirect,
> parent companies, subsidiaries, and affiliates; (ii) the respective
> assigns, predecessors, successors, and related entities of the entities
> in subsection (i) hereof; and (iii) all current and former employees,
> agents, directors, officers, managers, members, stockholders,
> partners, limited partners, equity holders, professionals, staff,
> principals, owners, and other representatives of the Parties and of
> the individuals and entities in subsections (i) and (ii) hereof
> (collectively, (i) through (iii) are the "Related Parties"), for good
> and valuable consideration, receipt and sufficiency of which is
> hereby acknowledged, and having been represented by counsel and

---

[1] Those claimants that have previously made allowed claims in prior settlements in Missouri or Kansas will be presumptively included as claimants in this settlement. Those existing claimants will have the opportunity to submit additional information in conjunction with this settlement if they want to try to increase their pro rata share of the Settlement Amount.

2

Case 2:05-cv-01431-RCJ-PAL    Document 3009    Filed 06/28/18    Page 9 of 9

having been fully and adequately informed as to the facts, circumstances and consequences of this Settlement Agreement, each hereby irrevocably and unconditionally release, acquit, and forever discharge the other, and all of the other's respective Related Parties, contractors, and attorneys (all of which and whom are collectively referred to as "<u>Releasees</u>"), with respect to and from, any and all claims, demands, charges, additional costs, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, arbitration, tax assessments, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, indemnities, variances, trespasses, damages, compensation, fines, penalties, losses, orders and liabilities, of whatever kind or nature in law, equity or otherwise, whether now known or unknown, compulsory or permissive, sounding in tort, contract, statutory or regulatory violation or otherwise, suspected or unsuspected, discovered or undiscovered, foreseen or unforeseen, vested or contingent, accrued or unaccrued, liquidated or unliquidated, asserted or unasserted, matured or unmatured, direct or indirect, derivative or subrogated, individual, class, representative, or other capacity, that the Parties and their respective Related Parties now own or hold, or have at any time heretofore owned or held, or may in the future hold against said Releasees, or any of them, arising out of or in any way relating to any of the facts alleged in each of the Kansas and Missouri Actions, including but not limited to facts alleged in the Kansas Complaint and Missouri Complaint, and the Settlement Agreement, ***provided however*** that the foregoing release does not, shall not, and is not intended to release any claims, causes of action, or other rights of any Party arising out of or related to any breach of, or to enforce the terms of, this Settlement Agreement

Importantly, claimants that do not receive a share of the Settlement Amount will not be subject to the terms of the Settlement Release.  Because these actions have not yet been certified as class actions, and because the Bankruptcy Court previously denied without prejudice plaintiffs' motion for leave to file class proofs of claim in the bankruptcy, Debtors will not receive a release from absent class members that take no action with respect to this settlement (as they would in a traditional Rule 23 settlement). Those claimants may nevertheless be barred from bringing claims against Debtors in the future by operation of the Claims Bar Date under the confirmed plan in the bankruptcy proceeding.

Case 2:03-cv-01431-RCJ-PAL   Document 3009   Filed 06/28/18   Page 4 of 6

## SETTLEMENT PROCEDURE AND TIMING

On June 22, 2018, Debtors filed a motion for approval of the parties' settlement under Federal Rule of Bankruptcy Procedure 9019. That motion, which attaches the parties' settlement agreement, is available on the Bankruptcy Court's docket at ECF No. 1682. Based on the parties' settlement agreement and the Rule 9019 motion, the following are the key dates and timing for the proposed settlement process:

- July 13, 2018 – hearing on Rule 9019 motion for approval of the settlement

- August 15, 2018[*] – Notice mailed to potential claimants

- September 14, 2018[*] – Last day to make a claim to the Settlement Amount

Under this schedule, absent unexpected delays, settlement claimants should receive their pro rata share of the Settlement Amount before the end of the calendar year.

The Rule 9019 motion for approval of the settlement in the Bankruptcy Court also contains a request for approval of attorneys' fees and reimbursement of a portion of counsel's advanced expenses. That request follows the same formula this Court has approve twice before in conjunction with the two previous class settlements achieved here. Consistent with prior fee and expense awards here, counsel seeks reimbursement of five percent of advanced expenses (not to exceed $425,000), and seeks approval of a fee of no more than 32% of the gross Settlement Amount.

Finally, once the Bankruptcy Court has approved the settlement under Rule 9019, and once Debtors have paid the Settlement Amount to plaintiffs' counsel, Plaintiffs will request dismissal with prejudice of the Missouri and Kansas plaintiffs' claims against RRI Energy

---

[*] If the Court has not approved the settlement under Rule 9019 by August 15, 2018, notice will be mailed within three days of the approval order. The corresponding 30-day claims period will run from the date notice is mailed.

64292879.1

Services, Inc. in this Court.  Absent delay in settlement approval in the Bankruptcy Court, that motion will be filed in this Court in the next 30 to 45 days.

## CONCLUSION

The parties anticipate that the Bankruptcy Court will approve the settlement as presented. If so, plaintiffs will request dismissal of their claims against RRI Energy Services, Inc. in this court based on the fair and reasonable settlement achieved in the Bankruptcy Court.  Should the Court wish to inquire further about the settlement, plaintiffs' counsel will be present at the Court's scheduled Status Conference on July 9, 2018.

.          Dated:  June 28, 2018                    Respectfully submitted,

                                         _/s/ Andrew J. Ennis_____
                                          Russell S. Jones
                                          Jennifer G. Bacon
                                          Gregory M. Bentz
                                          Andrew J. Ennis
                                          POLSINELLI PC
                                          900 W. 48th Place, Suite 900
                                          Kansas City, MO  64112
                                          Telephone:     (816) 753-1000
                                          Facsimile:     (816) 753-1536

                                          Donald D. Barry
                                          BARRY LAW OFFICES, LLC
                                          5340 SW 17th Street, P.O. Box 4816
                                          Topeka, KS  66604
                                          Telephone:     (785) 273-3151
                                          Facsimile:     (785) 273-5115

                                          Brian Blakley
                                          LEWIS ROCA ROTHGERBER CHRISTIE  LLP
                                          3993 Howard Hughes Parkway, Suite 600
                                          Las Vegas, NV  89169

                                          *Counsel for Plaintiffs Learjet Inc., et al.,*
                                          *Heartland Health, et al.,*

                                          Gary D. McCallister
                                          MCCALLISTER LAW GROUP, LLC
                                          120 North LaSalle Street, Suite 2800

Chicago, IL  60602
Telephone:      (312) 345-0611
Facsimile:      (312) 345-0612

Eric I. Unrein
CAVANAUGH, BIGGS & LEMON, P.A.
2942A S.W. Wanamaker Dr., Ste. 100
Topeka, KS 66614
Telephone:      (785) 440-4000
Facsimile:      (785) 440-3900

*Counsel for Plaintiffs Learjet, Inc., et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June 2018, a true and correct copy of the foregoing was electronically served on counsel for all parties properly registered to receive notice via the Court's CM/ECF system.

 */s/ Andrew J. Ennis*

6

## EXHIBIT B

**THE *GENON* SETTLEMENT**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENON ENERGY, INC., *et al.*,[1] | ) | Case No. 17-33695 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 1682, 1773** |

**NOTICE OF FILING OF PROPOSED AMENDED ORDER APPROVING
DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
THE PROPOSED KANSAS AND MISSOURI AGREEMENT AND RELEASE
PURSUANT TO BANKRUPTCY RULE 9019 AND (II) GRANTING RELATED RELIEF**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091). The Debtors' service address is: 804 Carnegie Center, Princeton, New Jersey 08540.

PLEASE TAKE NOTICE that on June 22, 2018, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of an Order: (I) Approving the Proposed Kansas and Missouri Settlement Agreement and Release Pursuant to Bankruptcy Rule 9019 and (II) Granting Related Relief* [Docket No. 1682] (the "Motion") with the United States Bankruptcy Court for the Southern District of Texas (the "Court").

PLEASE TAKE FURTHER NOTICE that a hearing to consider the Motion was held on July 25, 2018, at 10:00 a.m. (prevailing Central Time), before the Honorable David R. Jones, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Texas, Courtroom 400, 515 Rusk Street, Houston, Texas 77002.

PLEASE TAKE FURTHER NOTICE that on July 25, 2018, the Court entered the *Order Approving Debtors' Motion for Entry of an Order (I) Approving the Proposed Kansas and Missouri Agreement and Release Pursuant to Bankruptcy Rule 9019 and (II) Granting Related Relief* [Docket No. 1773] (the "Order"), which did not include a copy of Exhibit 1 thereto.

PLEASE TAKE FURTHER NOTICE that the Debtors hereby file an amended proposed order, the *Amended Order Approving Debtors' Motion for Entry of an Order (I) Approving the Proposed Kansas and Missouri Agreement and Release Pursuant to Bankruptcy Rule 9019 and (II) Granting Related Relief* (the "Amended Proposed Order"), attached hereto as **Exhibit A**, which includes a copy of Exhibit 1 thereto.

PLEASE TAKE FURTHER NOTICE that copies of the Motion, the Order, the Amended Proposed Order, and all documents filed in these chapter 11 cases are available free of charge by visiting http://dm.epiq11.com/GenOn or by calling U.S. toll free: (888) 729-1597; International: (503) 597-5606. You may also obtain copies of any pleadings by visiting the Court's website at https://ecf.txsb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

2

Dated:  July 25, 2018          /s/ Zack A. Clement
Houston, Texas                 Zack A. Clement (Texas Bar No. 04361550)
                               **ZACK A. CLEMENT PLLC**
                               3753 Drummond Street
                               Houston, Texas 77025
                               Telephone:     (832) 274-7629
                               Email:         zack.clement@icloud.com

                               -and-

                               James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
                               David R. Seligman, P.C. (admitted *pro hac vice*)
                               Steven N. Serajeddini (admitted *pro hac vice*)
                               W. Benjamin Winger (admitted *pro hac vice*)
                               **KIRKLAND & ELLIS LLP**
                               **KIRKLAND & ELLIS INTERNATIONAL LLP**
                               300 North LaSalle
                               Chicago, Illinois 60654
                               Telephone:     (312) 862-2000
                               Facsimile:     (312) 862-2200
                               Email:         james.sprayregen@kirkland.com
                                              david.seligman@kirkland.com
                                              steven.serajeddini@kirkland.com
                                              benjamin.winger@kirkland.com

                                -and-

                                AnnElyse Scarlett Gibbons (admitted *pro hac vice*)
                               **KIRKLAND & ELLIS LLP**
                               **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                655 Fifteenth Street, N.W.
                                Washington, District of Columbia 20005
                                Telephone:     (202) 879-5000
                                Facsimile:     (202) 879-5200
                                Email:         annelyse.gibbons@kirkland.com

                                -and-

                               Mark McKane, P.C. (admitted *pro hac vice*)
                               Ashley E. Littlefield (admitted *pro hac vice*)
                               **KIRKLAND & ELLIS LLP**
                               **KIRKLAND & ELLIS INTERNATIONAL LLP**
                               555 California Street
                               San Francisco, California 94104
                               Telephone:     (415) 439-1400
                               Facsimile:     (415) 439-1500
                               Email:         mark.mckane@kirkland.com
                                              ashley.littlefield@kirkland.com

                               *Co-Counsel to the Debtors and Debtors in Possession*

## Certificate of Service

I certify that on July 25, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Zack A. Clement*
One of Counsel

**Exhibit A**

**Amended Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GENON ENERGY, INC., *et al.*,[1] | ) | Case No. 17-33695 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 1682** |

## AMENDED ORDER APPROVING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE PROPOSED KANSAS AND MISSOURI AGREEMENT AND RELEASE PURSUANT TO BANKRUPTCY RULE 9019 AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned Debtors for entry of an order

(this "Order") approving the Kansas and Missouri Settlement Agreement, attached hereto as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091).  The Debtors' service address is:  804 Carnegie Center, Princeton, New Jersey 08540.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

**Exhibit 1**, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the submissions by the parties and having heard the statements in support of the relief requested by each of them at the Hearing; and this Court having determined that the legal and factual bases set forth in the submissions and at the Hearing establish just cause for the relief granted in this Order; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Kansas and Missouri Settlement Agreement and Release and the relief requested therein is hereby approved pursuant to Bankruptcy Rule 9019.

3.      Named Claimants' Counsel shall be reimbursed in the amount of $1,618,590.00, consisting of $417,062.00 on account of expenses advanced to date in the MDL Litigation and these chapter 11 cases, and $1,201,528.00 in attorneys' fees (the "Fees and Expenses Reimbursement").

4.      The Fees and Expenses Reimbursement shall be paid solely from the Settlement Amount.

5.      The Court finds that the Kansas and Missouri Settlement Agreement is fair, reasonable, and in the best interest of the estate given the probability of success regarding the MDL

Litigation, the complexity and duration of the litigation, the interest of creditors, and the responses

to the Motion, and the fact that the Kansas and Missouri Settlement Agreement is the product of

arm's length bargaining between the Parties.

6.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order

are immediately effective and enforceable upon its entry.

7.    The Parties are authorized to take all actions necessary or appropriate to effectuate

the relief granted herein.

8.    This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.


Dated: _____, 2018
Houston, Texas                                            _____
                                                         THE HONORABLE DAVID R. JONES
                                                         UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**Kansas and Missouri Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Mutual Release (this "Settlement Agreement") is made and entered into as of June 22, 2018 by and among:

i.   The debtors and debtors in possession (collectively, the "Debtors")[1] in the jointly administered chapter 11 cases captioned *In re GenOn Energy, Inc., et al.*, Case No. 17-33695 (DRJ) (Bankr. S.D. Tex.) (Jointly Administered) (the "Chapter 11 Cases");

ii.  Heartland Regional Medical Center ("Heartland"), Northwest Missouri State University ("Northwest Missouri"), Prime Tanning Corporation ("Prime Tanning"), and the putative class proposed in the *Amended Complaint for Damages* filed in *In re Western States Wholesale Natural Gas Antitrust Litigation*, Case No. 2:03-cv-01431-PMP-PAL [MDL Docket No. 1863] attached as Exhibit B [Docket No. 767-4] to the *Motion and Memorandum of Law of the Natural Gas Litigation Midwest Class Plaintiffs in Support of Allowance of Class Proofs of Claim* (the "Class Proofs of Claim Allowance Motion") [Docket No. 767] (the "Missouri Putative Class", and, together with Heartland, Northwest Missouri, and Prime Tanning, the "Missouri Claimants");

iii. Learjet, Inc. ("Learjet"), Topeka Unified School District 501 ("Topeka", and together with Learjet, Heartland, Northwest Missouri, and Prime Tanning, the "Named Claimants"), and the putative class proposed in the *Second Amended*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091). The Debtors' service address is: 804 Carnegie Center, Princeton, New Jersey 08540.

*Complaint* filed in *In re Western States Wholesale Natural Gas Antitrust Litigation*, Case No. 2:03-cv-01431-PMP-PAL [MDL Docket No. 1857] attached as Exhibit A [Docket No. 767-3] to the Class Proofs of Claim Allowance Motion (the "Kansas Putative Class", and, together with Learjet and Topeka, the "Kansas Claimants"); and

iv.   Debtors together with the Named Claimants collectively constitute the "Parties," and individually, each constitutes a "Party."

## RECITALS

**WHEREAS**, on March 22, 2007, Heartland and Prime Tanning initiated an action, on behalf of themselves and all others similarly situated, in the Circuit Court of Buchanan County, Missouri, captioned *Heartland Regional Medical Center, et al. v. Oneok Inc., et al.,* Case No. 07BU CV 01316, which was removed to the United States District Court for the Western District of Missouri on April 27, 2007, Case No. 07-cv-06048 (the "Heartland Action");

**WHEREAS**, on November 4, 2005, Learjet and Topeka initiated an action, on behalf of themselves and all others similarly situated, in the District Court of Wyandotte County, Kansas, captioned *LearJet, Inc., et al. v. v. Oneok Inc., et al.,* Case No. 05-cv-1500, which was removed to the United States District Court for the District of Kansas on December 7, 2005, Case No. 05-cv-02513 (the "Learjet Action");

**WHEREAS**, each of the Kansas and Missouri Actions was transferred to the United States District Court for the District of Nevada (the "MDL Court") and consolidated in a multi-district litigation captioned *In re Western States Wholesale Natural Gas Antitrust Litigation*, Case No. 2:03-cv-01431-PMP-PAL, MDL No. 1566 (the "MDL Litigation");

**WHEREAS**, on November 17, 2009, Learjet and Topeka filed the *Second Amended Complaint* in the MDL Litigation [MDL Docket No. 1857], asserting claims on behalf of themselves and the Kansas Putative Class (the "Kansas Complaint");

**WHEREAS**, on November 19, 2009, Heartland and Prime Tanning filed the *Amended Complaint for Damages* in the MDL Litigation [MDL Docket No. 1863], on behalf of themselves and the Missouri Putative Class, adding Northwest Missouri as a party (the "Missouri Complaint");

**WHEREAS**, on June 14, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), thereby commencing the Chapter 11 Cases, and automatically staying the MDL Litigation;

**WHEREAS**, on August 2, 2017, the Court entered the *Agreed Order Lifting the Automatic Stay* [Docket No. 449] (the "Lift-Stay Order"), lifting the automatic stay as to the MDL Litigation;

64204460.1

**WHEREAS**, the Named Claimants filed proofs of claim on their own behalf premised on the Kansas Complaint and Missouri Complaint, including but not limited to the proofs of claim numbered 1220, 1221, 1222, 1223, 1224, 1225, and 1226.  The Named Claimants also filed a *Motion and Memorandum of Law of the Natural Gas Litigation Midwest Class Plaintiffs in Support of Allowance of Class Proofs of Claim* [Docket No. 767], requesting authorization to file purported class proofs of claim on behalf of putative classes alleged in the MDL Litigation, proofs of claim numbered 1222 and 1224 (along with proofs of claim numbered 1220, 1221, 1222, 1223, 1224, 1225, and 1226, and any other proofs of claim filed by the Kansas Claimants or Missouri Claimants, the "Proofs of Claim"), which was denied without prejudice [Docket No. 1165];

**WHEREAS**, on November 6, 2017, the Named Claimants filed the *Heartland Regional Medical Center, Northwest Missouri State University, Prime Tanning Corporation, Learjet, Inc., Topeka Unified School District 501, NewPage Wisconsin System Inc. (N/K/A Verso Minnesota Wisconsin LLC), Arandell Corp., Merrick's Inc., Sargento Foods, Inc., Ladish Co., Inc. (N/K/A ATI Ladish LLC), Carthage College, and Briggs & Stratton Corporation's Limited Objection to Confirmation of Debtors' Chapter 11 Plan* [Docket No. 1085] (the "Release Opt-Out");

**WHEREAS**, on December 12, 2017, this Court entered an order (the "Confirmation Order") confirming the *Third Amended Joint Chapter 11 Plan of Reorganization of GenOn Energy, Inc. and its Debtor Affiliates* [Docket No. 1250, Ex. A.] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");

**WHEREAS**, on February 26, 2018, the Debtors filed the *Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1481] (the "Objection"), seeking to disallow and expunge the Proofs of Claim;

**WHEREAS**, on March 21, 2018, the Named Claimants filed the *Expedited Motion of the Natural Gas Litigation Midwest Plaintiffs to Stay or Deny Debtors' Claim Objection* [Docket No. 1521] (the "Stay-or-Deny Motion"), and the *Expedited Motion of the Natural Gas Litigation Midwest Plaintiffs to Enforce the Agreed Order Lifting the Automatic Stay* [Docket No. 1522] (the "Lift-Stay Motion");

**WHEREAS**, on March 26, 2018,  the Named Claimants filed the *Midwest Plaintiffs' Opposition to Debtors' Motion to Schedule Certain Dates and Deadlines and Establish Certain Protocols in Connection with Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation) [Docket Nos. 1481, 1482]* [Docket No. 1529] (the "Response") in response to the Objection;

**WHEREAS**, on May 14, 2018, the Debtors filed the *Debtors' Opening Memorandum in Further Support of their Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1623], and the Named Claimants filed the *Midwest Plaintiffs' Brief Regarding Jurisdiction, Authority, Prior Pending Case Doctrine, Due Process, Comity, Abstention or Collateral Impact of the Court's Decisions in Connection with Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1622];

3

**WHEREAS**, on May 25, 2018, the Debtors filed the *Debtors' Reply Memorandum in Further Support of their Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1628], and the Named Claimants filed the *Midwest Plaintiffs' Response Brief to Debtors' Opening Memorandum in Further Support of their Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1629] (together with Docket Nos. 1622, 1623, and 1628, the "Supporting Briefs");

**WHEREAS**, on May 31, 2018, the Parties filed a *Notice of Filing of Agreed Order and Stipulation Resolving Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket Nos. 1646] (the "Stipulation");

**WHEREAS**, the Parties have agreed to resolve the Proofs of Claim, the Objection, the Stay-or-Deny Motion, and the Lift-Stay Motion, the Response, and the Supporting Briefs, on the terms and conditions set forth in this Settlement Agreement;

**NOW, THEREFORE**, in consideration of the representations, acknowledgements promises, recitals, mutual covenants, terms and conditions contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. **Conditions to Effectiveness**.

   (a)    Notwithstanding anything to the contrary herein, the Parties acknowledge and agree that the effectiveness of this Settlement Agreement is expressly conditioned upon: (i) entry of a final, non-appealable order by the Bankruptcy Court approving the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 9019 (the "Approval Order"); (ii) entry of a final, non-appealable order by the MDL Court dismissing, with prejudice, the Debtors from each of the Kansas and Missouri Actions, including but not limited to the Kansas Complaint and Missouri Complaint (the "Dismissal Order"); and (iii) payment of the Settlement Amount.  If any of these three conditions do not occur for any reason other than breach of this Settlement Agreement by a Party, this Settlement Agreement shall be of no force and effect, and the Parties shall have all rights, claims, and defenses they possessed prior to entering into this Settlement Agreement.

   (b)    The date on which this Settlement Agreement shall become effective is the date that is seven (7) days after the conditions set forth in Sections 1(a)(i)-(iii) are satisfied (the "Settlement Effective Date").

   (c)    The Parties' obligations with respect to this Settlement Agreement, except for the Debtors' obligation to seek entry of the Approval Order by this Court, the Kansas Claimants and Missouri Claimants' obligation to seek entry of the Dismissal Order by the MDL Court, and payment of the Settlement Amount, are subject to the occurrence of the Settlement Effective Date.  Within ten (10) days of execution of this Settlement Agreement, counsel for the Debtors ("Debtors'

4

Counsel") shall prepare and file all papers necessary to obtain the Approval Order, including a motion for same (the "Approval Motion"), which (along with the form of the Approval Order) shall be in a form reasonably satisfactory to Claimants' Counsel. Within fourteen (14) days of the Debtors' payment in full of the Settlement Amount, counsel for the Kansas Claimants and Missouri Claimants ("Claimants' Counsel") shall file all papers necessary to seek entry of the Dismissal Order. If the MDL Court does not enter the Dismissal Order, this Settlement Agreement shall have no force or effect, and the Kansas Claimants and Missouri Claimants shall return the Settlement Amount to the Debtors within ten (10) days of entry of an order denying the request for entry of the Dismissal Order.

2. **Agreed Claims**.

(a)     The Proofs of Claim shall be allowed in the aggregate amount of $3,850,000.00 (the "Settlement Amount"), and classified as Class 6 General Unsecured Claims (as defined in the Plan). Upon the Settlement Effective Date, the Proofs of Claim shall be deemed withdrawn and expunged with prejudice.

(b)     Proceeds from the Settlement Amount shall be shared *pro rata* among the following entities and/or individuals (each a "Settlement Claimant"):

(i)     The Named Claimants;

(ii)     Members of the Kansas Putative Class and Missouri Putative Class who have previously submitted valid claims for settlement proceeds to Claimants' Counsel in connection with prior settlements[2];

(iii)     Members of the Kansas Putative Class and Missouri Putative Class who make a valid claim in this Court for funds from the Settlement Amount by the date that is thirty (30) days after Claimants' Counsel provides the notice contemplated under Paragraph 4(a) herein (the "Settlement Claims Bar Date", and each claim submitted by such Settlement Claimant, a "Settlement Claim").

(c)     Any Kansas Claimant or Missouri Claimant who is not a Settlement Claimant shall not be entitled to any share of the Settlement Amount, and shall be subject to the Claims Bar Date, subject to applicable law.

---

[2] On July 12, 2018, Claimants' Counsel shall provide, subject to a confidentiality agreement, a list of members of the Kansas Putative Class and the Missouri Putative Class that previously made a claim to settlement funds in prior settlements in the MDL Litigation. The Parties expressly acknowledge that this list of claimants represents only those entities that made a claim to funds in previous settlements in Missouri and Kansas, and in no way limits the ability of others to make claims to settlement funds or otherwise represents or limits the size of the Kansas Putative Class or the Missouri Putative Class.

(d)    The Settlement Amount shall be paid by wire transfer within four days of entry of the Approval Order to Claimants' Counsel. Claimants' Counsel will provide wire instructions and a Form W-9 to Debtors' Counsel no later than July 6, 2018.

(e)    Claimants' Counsel or their designee, not the Debtors, shall be solely responsible for distributing the *pro rata* portions of the Settlement Amount, less attorneys' fees and expenses (as described herein), to each Settlement Claimant. All settlement payments to each Settlement Claimant, attorneys' fees, legal expenses, and costs of processing, mailing, and accounting for settlement distributions shall be paid exclusively from the Settlement Amount.

(f)    The Approval Motion shall contain a request for approval of Claimants' Counsel's attorneys' fees and legal costs. That request shall specify the amount of attorneys' fees requested based on Claimants' Counsel's contingent fee contracts with the Named Claimants, and shall specify the amount of Claimants' Counsel's advanced expenses sought to be reimbursed from the Settlement Amount. Debtors' Counsel shall work in good faith with Claimants' Counsel to draft the request for approval of attorneys' fees and expenses, and shall not file the Approval Motion without Claimants' Counsel's approval of the portion of the Approval Motion containing that request, such approval not to be unreasonably withheld. Notwithstanding anything to the contrary herein, the Court's consideration and determination on Claimants' Counsel's request for approval of attorneys' fees and expense reimbursement shall not prevent or delay the entry of an order otherwise granting the Approval Motion. For the avoidance of doubt, this Settlement Agreement shall have full force and effect regardless of the Court's grant or denial of Claimants' Counsel's request for approval of fees and expense reimbursement.

(g)    The Approval Motion shall also contain a request for the Bankruptcy Court to authorize Claimants' Counsel to communicate with the Missouri Putative Class and the Kansas Putative Class regarding this Settlement Agreement and the opportunity to make claims to a *pro rata* portion of the Settlement Amount. Debtors' Counsel shall work in good faith with Claimants' Counsel to draft the request for authority to communicate with the putative class members, and shall not file the Approval Motion without Claimants' Counsel's approval, such approval not to be unreasonably withheld, of the portion of the Approval Motion containing that request.

(h)    The Settlement Amount shall be reflected on the Bankruptcy Court's official claims register.

(i)    The Named Claimants will give further notice of the Settlement Agreement by filing a notice of the Settlement Agreement and this Order on the docket for the MDL Litigation. The Parties agree that they will work cooperatively to provide all notice necessary and follow all appropriate procedures, including under Fed. R. Civ. P. 23, as applicable, to protect the Parties, the Kansas Claimants, the Missouri Claimants, the Court, the MDL Court, and all involved counsel;

6

3.  **Dismissal of Kansas and Missouri Actions**.  Upon the Approval Order becoming final and non-appealable, and upon full and final payment of the Settlement Amount on the terms outlined herein, Kansas Claimants and Missouri Claimants shall voluntarily dismiss, with prejudice, the Debtors from each respective Kansas and Missouri Action, including but not limited to the Kansas Complaint and Missouri Complaint.  A file-stamped copy of the Dismissal Order shall be sent to counsel for the Debtors at the following address:

> Mark McKane, P.C.
> Kirkland & Ellis LLP
> 555 California Street, Fl. 29
> San Francisco, CA 94104

4.  **Further Notice of Settlement and Rule 9019 Motion**.

(a)  Upon the later of  August 15, 2018, or within three (3) days of entry of the Approval Order, Claimants' Counsel, at their own expense, shall provide further notice of (i) this Settlement Agreement, (ii) the Approval Order, (iii) the Settlement Claims Bar Date, and (iv) the specific language of the Mutual Release and Covenant Not to Sue (described below), by mail to the previously identified lists of potential members of the Kansas Putative Class and Missouri Putative Class, and on the docket for the MDL Litigation.  Such notice to the Kansas Putative Class and the Missouri Putative Class shall specifically list the Settlement Claims Bar Date.

5.  **Mutual Release and Covenant Not to Sue**.

(a)  Effective as of the payment of the Settlement Amount, or as of the Settlement Claims Bar Date for Settlement Claimants who submit a valid Settlement Claim after the payment of the Settlement Amount but before the Settlement Claims Bar Date, in consideration of the covenants undertaken in this Settlement Agreement, the Debtors, on the one hand, and each Settlement Claimant, on the other hand, each on behalf of themselves and (i) each of their respective current and former, direct and indirect, parent companies, subsidiaries, and affiliates; (ii) the respective assigns, predecessors, successors, and related entities of the entities in subsection (i) hereof; and (iii) all current and former employees, agents, directors, officers, managers, members, stockholders, partners, limited partners, equity holders, professionals, staff, principals, owners, and other representatives of the Parties and of the individuals and entities in subsections (i) and (ii) hereof (collectively, (i) through (iii) are the "Related Parties"), for good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, and having been represented by counsel and having been fully and adequately informed as to the facts, circumstances and consequences of this Settlement Agreement, each hereby irrevocably and unconditionally release, acquit, and forever discharge the other, and all of the other's respective Related Parties, contractors, and attorneys (all of which and whom are collectively referred to as "Releasees"), with respect to and from, any and all claims, demands, charges,

additional costs, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, arbitration, tax assessments, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, indemnities, variances, trespasses, damages, compensation, fines, penalties, losses, orders and liabilities, of whatever kind or nature in law, equity or otherwise, whether now known or unknown, compulsory or permissive, sounding in tort, contract, statutory or regulatory violation or otherwise, suspected or unsuspected, discovered or undiscovered, foreseen or unforeseen, vested or contingent, accrued or unaccrued, liquidated or unliquidated, asserted or unasserted, matured or unmatured, direct or indirect, derivative or subrogated, individual, class, representative, or other capacity, that the Parties and their respective Related Parties now own or hold, or have at any time heretofore owned or held, or may in the future hold against said Releasees, or any of them, arising out of or in any way relating to any of the facts alleged in each of the Kansas and Missouri Actions, including but not limited to facts alleged in the Kansas Complaint and Missouri Complaint, and the Settlement Agreement, ***provided however*** that the foregoing release does not, shall not, and is not intended to release any claims, causes of action, or other rights of any Party arising out of or related to any breach of, or to enforce the terms of, this Settlement Agreement;

(b)    Effective upon the occurrence of the Settlement Effective Date, each of the Parties, on behalf of itself and its respective Related Parties, covenants and agrees not to pursue or prosecute any suit, claim, action, or proceeding seeking recovery against or from any one or more of the Releasees arising out of or relating to any one or more of the claims released hereunder, ***provided, however***, that the foregoing covenant does not, shall not, and is not intended to preclude any Party from asserting or prosecuting any claim or cause of action arising out of or related to any breach of, or to enforce the terms of, this Settlement Agreement.

(c)    Upon the later of the Settlement Effective Date or the Settlement Claims Bar Date, the Response, Supporting Briefs, Lift-Stay Motion, the Stay-or-Deny Motion, and the Objection shall be deemed resolved as to each Settlement Claimant, the Release Opt-Out shall be deemed withdrawn as to each Settlement Claimant, and each Settlement Claimant shall be deemed a Releasing Party for all purposes under the Plan and Confirmation Order.

(d)    For the avoidance of doubt, NewPage Wisconsin System, Inc. (n/k/a Verso Minnesota Wisconsin LLC), Arandell Corp., Merrick's, Inc., Sargento Foods, Inc., Ladish Co., Inc. (n/k/a ATI Ladish LLC), Carthage College, and Briggs & Stratton Corporation, as well as any putative class members in the Wisconsin actions (together, the "Wisconsin Plaintiffs") pending in the MDL Litigation (the "Wisconsin Actions"), shall not be considered Releasing Parties under the terms of this Settlement Agreement, the Response, Supporting Briefs, Lift-Stay Motion, Stay or Deny Motion, Class Proof of Claim Allowance Motion, and the Objection, shall not be deemed withdrawn as to the Wisconsin Plaintiffs, and nothing in this Agreement or any pleadings or orders contemplated in this

8

Settlement Agreement shall affect the Wisconsin Actions or the Wisconsin Plaintiffs in any way.

(e)     The Approval Order shall contain self-effectuating provisions to implement the foregoing.

6.     **Representations and Warranties**.

(a)     Each of the Parties acknowledges, agrees, represents and warrants that:

(i)     It has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity any claim or cause of action released pursuant to this Settlement Agreement;

(ii)     There are no liens or claims of lien, or assignments in law or equity or otherwise, of or against any claim or cause of action released pursuant to this Settlement Agreement;

(iii)     It has duly executed and delivered this Settlement Agreement and is fully authorized to enter into and perform this Settlement Agreement and every term hereof and has the authority to bind the entity on whose behalf it has executed the Settlement Agreement;

(iv)     It has been represented by legal counsel in the negotiation and joint preparation of this Settlement Agreement, has received advice from legal counsel in connection with this Settlement Agreement and is fully aware of this Settlement Agreement's provisions and legal effect; and

(v)     It enters into this Settlement Agreement freely, without coercion, and based on its own judgment and not in reliance upon any representations or promises made by the other Parties, apart from those set forth in this Settlement Agreement.

(b)     Each of the Parties acknowledges the materiality of the foregoing representations and warranties.

7.     **Waiver of California Civil Code Section 1542 and Analogous Statutes**.     This Settlement Agreement is the result of a compromise and shall not be deemed an admission of the truth or correctness of the claims or contentions of any Party to this Settlement Agreement against any other Party.  It is understood by the Parties that there is a risk that subsequent to the execution of this Settlement Agreement the claims of any Party with respect to the subject matter hereof may be discovered to be greater or less than any Party now expects or anticipates.  Each Party assumes this risk and the releases contained herein shall apply to all unknown, undiscovered, or unanticipated results, as well as those known, discovered and anticipated.  The Parties expressly waive and relinquish all rights and benefits afforded by Section 1542 of the California Civil Code and analogous statutes, and any law of any state or territory of the United States, or principle of common law, or the law of any foreign jurisdiction, that is similar,

64204460.1

comparable or equivalent to Section 1542 of the California Civil Code with respect to all claims and other rights released pursuant to this Settlement Agreement, and do so understanding and acknowledging the significance and consequence of such specific waiver of Section 1542. Section 1542 of the California Civil Code states as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Each Party has read and understands the provisions of California Civil Code Section 1542 and acknowledges and agrees that, although it may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the claims released pursuant to the provisions of this Settlement Agreement, it hereby expressly waives the benefits of California Civil Code Section 1542 and analogous statutes, and any law of any state or territory of the United States, or principle of common law, or the law of any foreign jurisdiction, that is similar, comparable or equivalent to Section 1542 of the California Civil Code, and fully, finally and forever settles and releases any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claims related to those claims and other rights released pursuant to this Settlement Agreement, without regard to the subsequent discovery or existence of such different or additional facts.

8. **Governing Law and Construction of Agreement**.

    (a)    This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas without regard to its internal choice of law rules.

    (b)    Any ambiguity in or dispute regarding the interpretation of this Settlement Agreement shall not be resolved by any rule of interpretation providing for interpretation against the drafting Party.

9. **Jurisdiction**.

    (a)    The Parties consent to the non-exclusive jurisdiction of the Bankruptcy Court over the approval, implementation, administration, interpretation, and enforcement of this Settlement Agreement.

    (b)    The Parties acknowledge and agree that the MDL Court retains non-exclusive jurisdiction over all aspects of the MDL Litigation. In the event the MDL Court has transferred the respective Kansas and Missouri Actions from the MDL Court to the United States District Courts for the Districts of Kansas or Missouri, respectively, before entry of the Dismissal Order, the Parties acknowledge and

agree that each such courts shall have non-exclusive jurisdiction over all aspects of the respective Kansas and Missouri actions pending therein.

10. **No Admission or Acknowledgement**.  Each of the Parties understands, acknowledges, and agrees that this Settlement Agreement constitutes a compromise and settlement of certain disputed claims arising from or relating to the Kansas and Missouri Actions, and that this Settlement Agreement shall not constitute an admission of or stipulation to any fact or liability by any of them regarding any claim or cause of action, including but not limited to the claims and causes of action released hereunder, and neither the terms hereof, nor the fact of this Settlement Agreement itself, shall be evidence of any kind in any proceeding other than a proceeding to enforce the terms of this Settlement Agreement or any instrument executed in furtherance hereof or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.  No action taken by the Parties, or any of them, either previously or in connection with this Settlement Agreement, shall be deemed to be or construed to be (a) an admission of the truth or falsity of any of the claims made and/or raised in connection with such disputed claims or of any question of law or fact; or (b) an acknowledgment or admission by any Party of any fault, wrongdoing or liability whatsoever.

11. **Cooperation**.  RRI Energy Services, LLC and its successors and assigns, agree as follows:

(a)   For use in the potential trial of the Heartland Action or the Learjet Action under Federal Rule of Evidence 901(a), RRI Energy Services, LLC agrees to authenticate by stipulation documents or materials it previously produced to Named Claimants in the MDL 1566 Actions and which Claimants' Counsel will identify with reasonable specificity, including by Bates number where applicable; provided, however that Claimants' Counsel shall limit the requested stipulation to a reasonable number of documents and materials that are reasonably necessary to the potential trial of the Heartland Action or the LearJet Action.  RRI Energy Services, LLC agrees that the stipulation will be finalized as to form and content between the parties by the Settlement Effective Date, or 60 days after Debtors' Counsel receives the draft stipulation from Claimants' Counsel, whichever is later.

(b)   The completed stipulation will be held by Debtors' Counsel until the entry of an order from the Judicial Panel on Multidistrict Litigation remanding the claims in Heartland Action or the Learjet Action against non-settling defendants to their respective transferor courts, and RRI Energy Services, LLC will sign the stipulation and Debtors' Counsel (or RRI Energy Services, LLC) will deliver it to Class Counsel within two weeks of that remand order.

12. **Entire Agreement; Amendment; Waiver**.  This Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof.  The Parties have executed this Settlement Agreement voluntarily, after having obtained the

11

advice of legal counsel, and with a full and free understanding of its terms, which may not be changed except by a writing signed by all of the Parties.

13. **Binding Effect**. This Settlement Agreement, in all of its particulars, is binding on and for the benefit of all Parties and their respective agents, employees, officer, directors, successors, affiliates, subsidiaries, assigns and representatives.

14. **Severability**. If any provision of this Settlement Agreement is declared illegal or unenforceable by a Final Order (as defined in the Plan) of a court of competent jurisdiction or an arbitrator or regulatory agency, such provision shall be deemed severable to the extent necessary to eliminate the illegality or unenforceability thereof, and all other terms and provisions shall remain valid and binding on the Parties and their respective agents, employees, officer, directors, successors, affiliates, subsidiaries, assigns and representatives.

15. **Agreement Costs and Expenses**. Each Party will pay its own legal and other costs and expenses incident to this Settlement Agreement, except as expressly provided otherwise herein.

16. **Counterpart Execution and Use of Photocopies**. This Settlement Agreement may be executed by signature of each of the Parties hereto, or their authorized representatives, on multiple copies of this Settlement Agreement, including copies transmitted by facsimile machine or electronically, and upon being so executed by all Parties hereto, shall be effective as if all signatures appeared on a single original of this Settlement Agreement.

17. **Additional Documents and Acts**. Each of the Parties agrees to execute or cause its counsel to execute any additional documents and take any further action that may reasonably be required to consummate this Settlement Agreement, or otherwise fulfill the obligations of the Parties hereunder, including but not limited to obtaining the Approval Order, Dismissal Order, and notify members of the Kansas Putative Class and Missouri Putative Class of this Settlement Agreement and the motion for entry of the Approval Order. The Parties shall bear their own costs and attorneys' fees incurred in connection with any such additional action, unless expressly provided otherwise herein.

18. **Recitals, Acknowledgement & Consent to Terms**. The Parties acknowledge that the recitals contained in this Settlement Agreement are true and correct to the best of their knowledge, and are made a part of this Settlement Agreement and incorporated by reference. The Parties acknowledge that they have read this Settlement Agreement, understand the promises, recitals, mutual covenants, representations, terms and conditions contained herein, and voluntarily consent thereto.

19. **Attorneys' Fees**. If any action is brought to enforce this Settlement Agreement, the prevailing party shall be entitled to recover its expenses and costs relating thereto, including but not limited to its reasonable attorneys' fees, from the non-prevailing individuals and/or entities who are party to the enforcement action. For the avoidance of doubt, neither Named Claimants nor Claimants' Counsel shall be liable or responsible under this provision for actions taken by or the inaction of any individuals or entities

other than the Named Claimants, and neither Debtors nor Debtors' Counsel shall be liable or responsible under this provision for actions taken by or the inaction of any individuals or entities other than the Debtors.

20. **Full and Final Settlement.**  The Parties acknowledge and agree that this Settlement Agreement represents the full and final settlement of all claims and causes of action arising from or relating to the Kansas and Missouri Actions and the Proofs of Claim, with respect to each of the Parties hereto in accordance with the terms hereof.

21. **Headings**.  Section headings in this Settlement Agreement are included for convenience of reference only and shall not constitute a part of this Settlement Agreement for any other purpose.

*[signature pages follow]*

13

**IN WITNESS WHEREOF**, the Parties hereto, intending to be legally bound hereby, have executed this Settlement Agreement.

**Counsel for Named Claimants**

**Counsel for GenOn Energy, Inc.**
**RRI Energy Services, Inc.**

_____
Name: Andrew J. Ennis
Title: Shareholder

_____
Name:
Title:

**IN WITNESS WHEREOF**, the Parties hereto, intending to be legally bound hereby, have
executed this Settlement Agreement.

**Counsel for Named Claimants**          **Counsel for GenOn Energy, Inc.**
                                         **RRI Energy Services, Inc.**

                                         *Ashley E. Littlefield*

_____          Name:  Ashley E. Littlefield
Name:                                    Title:  Partner, Kirkland & Ellis LLP
Title:

14

64204460.1

# EXHIBIT C

**THE *GENON* 9019 MOTION**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GENON ENERGY, INC., *et al.*,[1] | ) | Case No. 17-33695 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER: (I) APPROVING THE PROPOSED KANSAS AND MISSOURI SETTLEMENT AGREEMENT AND RELEASE PURSUANT TO BANKRUPTCY RULE 9019 AND (II) GRANTING RELATED RELIEF

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 13, 2018 AT 2:00 PM PREVAILING CENTRAL TIME IN COURTROOM 400, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091). The Debtors' service address is: 804 Carnegie Center, Princeton, New Jersey 08540.

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING.  YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion").

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) approving the settlement agreement attached hereto as **Exhibit 1** to **Exhibit A** (the "Kansas and Missouri Settlement Agreement") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (b) granting related relief.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Motion are sections 105(a), 363(b), and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy

Rule 9019, and rule 9013-1(b) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

4.      On June 14, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 4]. As of the date hereof, no party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committee has been appointed under section 1102 of the Bankruptcy Code. A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Mark A. McFarland in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed on June 14, 2017 [Docket No. 19].

## **Background**[2]

### I.      THE UNDERLYING LITIGATION

5.      On November 4, 2005, Learjet, Inc. ("Learjet") and Topeka Unified School District 501 ("Topeka") initiated an action, on behalf of themselves and all others similarly situated, in the District Court of Wyandotte County, Kansas, captioned *LearJet, Inc., et al. v. v. Oneok Inc., et al.*, Case No. 05-cv-1500, which was removed to the United States District Court for the District of Kansas on December 7, 2005, Case No. 05-cv-02513 (the "Learjet Action").

6.      On March 22, 2007, Heartland Regional Medical Center ("Heartland") and Prime Tanning Corporation ("Prime Tanning") initiated an action, on behalf of themselves and all

---

2   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Third Amended Joint Plan of Reorganization of Genon Energy, Inc. and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") [Docket No. 1213].

others similarly situated, in the Circuit Court of Buchanan County, Missouri, captioned *Heartland Regional Medical Center, et al. v. Oneok Inc., et al.*, Case No. 07BU CV 01316, which was removed to the United States District Court for the Western District of Missouri on April 27, 2007, Case No. 07-cv-06048 (the "Heartland Action").

7.    The Heartland and Learjet Actions were transferred to the United States District Court for the District of Nevada (the "MDL Court") and consolidated in a multi-district litigation captioned *In re Western States Wholesale Natural Gas Antitrust Litigation*, Case No. 2:03-cv-01431-PMP-PAL, MDL No. 1566 (the "MDL Litigation").[3]

8.    On November 17, 2009, Learjet and Topeka filed the *Second Amended Complaint* in the MDL Litigation [MDL Docket No. 1857] (the "Kansas Complaint"), attached as Exhibit A [Docket No. 767-3] to the *Motion and Memorandum of Law of the Natural Gas Litigation Midwest Class Plaintiffs in Support of Allowance of Class Proofs of Claim* (the "Class Proofs of Claim Allowance Motion") [Docket No. 767], asserting claims on behalf of themselves and a proposed putative class (the "Kansas Putative Class").

9.    On November 19, 2009, Heartland and Prime Tanning filed the *Amended Complaint for Damages* in the MDL Litigation [MDL Docket No. 1863] (the "Missouri Complaint"), attached as Exhibit B [Docket No. 767-4] to the Class Proofs of Claim Allowance Motion, on behalf of themselves and a proposed putative class (the "Missouri Putative Class",

---

[3]    The MDL Litigation also includes: (i) Arandell Corp., (ii) Merrick's, Inc., (iii) Sargento Foods, Inc., (iv) ATI Ladish, LLC (f/k/a Ladish Co., Inc.), (v) Carthage College, (vi) Verso Minnesota Wisconsin LLC (f/k/a NewPage Wisconsin System, Inc.), and (vii) Briggs Stratton Corporation (together, the "Wisconsin Claimants") as well as any putative class members in the Wisconsin actions pending in the MDL Litigation (together with the Wisconsin Claimants, the "Wisconsin Plaintiffs").  Pursuant to Paragraph 5(d) of the Settlement Agreement (defined *infra*) nothing in the Settlement Agreement and nothing in the any of the pleadings or orders contemplated under the Settlement Agreement shall affect the Wisconsin Plaintiffs, including this Motion or the Order.

Case 17-30635    Document 1682    Filed in TXSB on 08/22/18    Page 5 of 20

and together with the Kansas Putative Class, the "Settlement Class"), adding Northwest Missouri State University ("Northwest Missouri") as a party.

## II.    LITIGATION FOLLOWING THE DEBTORS' CHAPTER 11 FILING.

10.    On the Petition Date each Debtor filed a voluntary petition for relief under the Bankruptcy Code thereby commencing these chapter 11 cases and, pursuant to section 362(a) of the Bankruptcy Code, gave rise to a stay, applicable to all entities, of, among other things, the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors (i) that was or could have been commenced before the commencement of the chapter 11 cases or (ii) to recover a claim against the Debtors that arose before the commencement of the chapter 11 cases, and automatically stayed the MDL Litigation.

11.    On August 2, 2017, the Court entered the *Agreed Order Lifting the Automatic Stay* [Docket No. 449] (the "Lift-Stay Order"), lifting the automatic stay as to the MDL Litigation.

12.    Heartland, Northwest Missouri, Prime Tanning (the "Missouri Claimants") along with Learjet, and Topeka (the "Kansas Claimants", and, together with the Missouri Claimants, the "Named Claimants") filed proofs of claim on their own behalf and on behalf of the Kansas Putative Class and Missouri Putative Class, premised on the Kansas Complaint and Missouri Complaint, including but not limited to the proofs of claim numbered 1220, 1221, 1222, 1223, 1224, 1225, and 1226 (along with any other proofs of claim filed by the Named Claimants, the "Proofs of Claim").[4]

---

[4]    The Claims Bar Date occurred on September 15, 2017.  The Parties are not aware of any plaintiffs or putative plaintiffs from the MDL Litigation who submitted proofs of claim prior to the Claims Bar Date, other than the Kansas Claimants, Missouri Claimants, Wisconsin Claimants, and Reorganized FLI, Inc.

13.     On November 6, 2017, the Named Claimants filed the *Heartland Regional Medical Center, Northwest Missouri State University, Prime Tanning Corporation, Learjet, Inc., Topeka Unified School District 501, NewPage Wisconsin System Inc. (N/K/A Verso Minnesota Wisconsin LLC), Arandell Corp., Merrick's Inc., Sargento Foods, Inc., Ladish Co., Inc. (N/K/A ATI Ladish LLC), Carthage College, and Briggs & Stratton Corporation's Limited Objection to Confirmation of Debtors' Chapter 11 Plan* [Docket No. 1085] (the "Release Opt-Out").

14.     On December 12, 2017, this Court entered an order (the "Confirmation Order") confirming the Plan.

15.     On February 26, 2018, the Debtors filed the *Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1481] (the "Objection"), seeking to disallow and expunge the Proofs of Claim.

16.     On March 21, 2018, the Named Claimants filed the *Expedited Motion of the Natural Gas Litigation Midwest Plaintiffs to Stay or Deny Debtors' Claim Objection* [Docket No. 1521] (the "Stay-or-Deny Motion"), and the *Expedited Motion of the Natural Gas Litigation Midwest Plaintiffs to Enforce the Agreed Order Lifting the Automatic Stay* [Docket No. 1522] (the "Lift-Stay Motion").

17.     On March 26, 2018, the Named Claimants filed the *Midwest Plaintiffs' Opposition to Debtors' Motion to Schedule Certain Dates and Deadlines and Establish Certain Protocols in Connection with Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation) [Docket Nos. 1481, 1482]* [Docket No. 1529] (the "Response") in response to the Objection.

## III.    SETTLEMENT AGREEMENT

18.     On May 15, 2018, the Named Claimants and the Debtors (collectively, the "Parties") held a settlement conference in Chicago, Illinois.  While the Parties were unable to

Case 17-30635   Document 1682   Filed in TXSB on 08/21/18   Page 7 of 19

resolve the Proofs of Claim and related issues on that date, they continued arms-length settlement discussions over the subsequent weeks. As a result of these discussions, on May 31, 2018, the Parties reached a settlement resolving the Proofs of Claim, the Objection, the Stay-or-Deny Motion, the Lift-Stay Motion, and the Response on the terms and conditions specified in the term sheet attached hereto as **Exhibit B** (the "Term Sheet").

19.     That same day, May 31, 2018, the Parties filed a *Notice of Filing of Agreed Order and Stipulation Resolving Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1646] (the "Stipulation").

20.     On June 1, 2018, this Court entered the *Agreed Order and Stipulation Resolving Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1652].

21.     The Parties subsequently drafted the Kansas and Missouri Settlement Agreement, consistent with the Term Sheet. The Kansas and Missouri Settlement Agreement (the "Settlement Agreement") provides in key part as follows[5]:

    (a)     the Proofs of Claim are allowed in an aggregate amount of $3,850,000 (the "Settlement Amount");

    (b)     the Settlement Amount will be shared pro rata among:

        (i)      the Named Claimants;

        (ii)     members of the Settlement Class who have previously submitted valid claims for settlement proceeds in previous settlements in the MDL Litigation; and

        (iii)    members of the Settlement Class who make a valid claim in this Court for funds from the Settlement Amount within thirty days of counsel for the Named Claimants providing notice of the Settlement (the "Settlement Claims Bar Date")  (collectively with those identified in subsection (i) and (ii), the "Settlement Claimants");

---

[5]   This list of key terms is provided by way of summary. To the extent there is a discrepancy between the description of the Settlement Agreement in this Motion and the terms of the Settlement Agreement, the Settlement Agreement shall control.

(c)     the counsel for the Named Claimants will be responsible for providing notice of the Settlement and the Settlement Claims Bar Date to the Settlement Class to allow them the opportunity to make a claim in the settlement and receive a pro rata share of the Settlement Amount;

(d)     the counsel for the Named Claimants will give further notice of the Settlement Agreement by filing a notice of the Settlement Agreement and this Order on the docket for the MDL Litigation. The Parties will work cooperatively to provide all notice necessary and follow all appropriate procedures, including under Fed. R. Civ. P. 23, as applicable, to protect the Parties, the Settlement Class, the Court, the MDL Court, and all involved counsel;

(e)     the Settlement Claimants agree (expressly or by operation of making a claim to and/or receiving settlement funds) that, with respect to the Settlement Claimants, the Response shall be deemed resolved in its entirety, the Release Opt-Out shall be deemed withdrawn, and the Settlement Claimants shall be deemed Releasing Parties for all purposes under the Plan and Confirmation Order;

(f)     subject to the Court's approval, the Debtors will pay the Settlement Amount to the counsel for the Named Claimants;

(g)     upon payment of the Settlement Amount (or as of the Settlement Claims Bar Date for Settlement Claimants who submit a valid Settlement Claim after the payment of the Settlement Amount but before the Settlement Claims Bar Date), the Debtors and each Settlement Claimant shall release, acquit, and forever discharge all claims against one another in any way relating to the facts alleged in each of the Kansas and Missouri Actions;

(h)     the Kansas Claimants and Missouri Claimants shall voluntarily dismiss, with prejudice, the Debtors from each respective Kansas and Missouri Action;

(i)     the settlement outlined in the Settlement Agreement (the "Settlement") becomes effective seven days after the last of the following events: (i) entry of a final, non-appealable order by the Bankruptcy Court approving the Settlement Agreement, (ii) the Debtors pay the Settlement Amount, and (iii) the entry of a final, non-appealable order by the MDL Court dismissing, with prejudice, the Debtors from each of the Kansas and Missouri Actions,

(j)     once the Settlement becomes effective, the Debtors and Settlement Claimants (expressly or by operation of making a claim to settlement funds and/or receiving settlement funds) agree to settle any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, regarding or arising out of the Proofs of Claim or claims raised in the MDL Litigation; and

8

(k)   members of the Settlement Class who are not Settlement Claimants shall not be entitled to any share of the Settlement Agreement or any other recovery from the Debtors and shall be subject to the Claims Bar Date;

22.   Counsel for the Named Plaintiffs will also seek, and the Debtors do not oppose, this Court's approval of attorneys' fees and expense reimbursement to be paid to counsel for the Named Claimants from the Settlement Amount.   Counsel for the Named Plaintiffs seek reimbursement of five percent of their out-of-pocket expenses advanced to date in the MDL Litigation and this Bankruptcy proceeding, not to exceed $425,000.   Counsel for the Named Plaintiffs further seek approval of their attorneys' fees based on the contingency fee contracts with the Named Plaintiffs, not to exceed 32% of the aggregate settlement amount.   Counsel for the Named Plaintiffs will file a supplement to this Motion providing the amount of expense reimbursement and attorneys' fees sought and the basis for this Court to approve their request.

**Basis for Relief**

### I.   THE PROPOSED KANSAS AND MISSOURI SETTLEMENT AGREEMENT SATISFIES THE REQUIREMENTS OF BANKRUPTCY RULE 9019.

23.   Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

24.   "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996);  *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in bankruptcy]"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006) (same); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348

(Bankr. D. Del. 2007) (same). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

25.    Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, "approval of a compromise is within the sound discretion of the bankruptcy court." *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Jackson Brewing*, 624 F.2d at 602–03.

26.    In *Jackson Brewing*, the United States Court of Appeals for the Fifth Circuit set forth a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors the Court must consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise. *See In re Age Ref. Inc.*, 801 F.3d at 540 (internal citations omitted).

27.    Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the court should consider the "extent to which

10

the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *In re Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

28.   Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).  Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

29.   The proposed Kansas and Missouri Settlement Agreement resolves a host of complex issues between the Named Claimants and the Debtors without the costs and uncertainty of lengthy litigation, in a manner that is favorable to all Parties.

30.   Continuing the ongoing litigation between the Debtors and the Named Claimants would create considerable expense, inconvenience, and delay.    Resolving these issues consensually allows the Debtors' estate to receive a substantial benefit by avoiding protracted litigation.  These costs and time savings inure to all parties in interest in these chapter 11 cases.

31.   The Learjet Action and Heartland Action have been pending for thirteen and eleven years, respectively.   The MDL Litigation is currently stayed, and no trial dates are scheduled for either action.  The Debtors believe that liquidating the Proofs of Claim through the MDL Litigation process will take ***at least*** two more years and could cost millions of dollars in legal expenses and related costs.  While the Proofs of Claim could be liquidated in a streamlined process in this Court, rather than through the MDL Litigation, even this more efficient process will still take time and cause all Parties to incur legal fees.  These substantial expenses to the estate can be avoided should the Debtors obtain entry of the Order.  As this Court is aware, the Objection has been pending for more than three months and has already been the subject of

extensive briefing. Undoubtedly, the Parties are saving significant time and costs by resolving the Proofs of Claim through the Kansas and Missouri Settlement Agreement, rather than liquidating them, whether through the MDL Litigation or in this Court.

32. The Kansas and Missouri Settlement Agreement further benefits all Parties by providing the litigants certainty. While the Debtors are confident in the strength of their factual and legal defense to each of the Named Claimants' claims, the outcome of any lawsuit, particularly litigation that has been contested for over a decade, is uncertain. The size of the potential exposure here will vary materially based on numerous separate issues, including whether a class is certified, whether full consideration damages are available to the plaintiffs, whether the plaintiffs' claims are time-barred by the applicable statutes of limitations, and whether a jury will ultimately find that the Debtors participated in an antitrust conspiracy. The outcome of each of these issues remains undecided and vigorously contested, even after more than a decade of litigation. Ultimately, the hypothetical damages were this litigation to continue range from $0 to more than a hundred million dollars. This settlement reflects a reasonable compromise that allays these significant uncertainties and allows all parties to move forward with clarity.

33. Lastly, the proposed Kansas and Missouri Settlement Agreement is fair and equitable as the result of extensive arms-length negotiations between the Debtors and the Named Claimants.

34. For all of the foregoing reasons, the Debtors respectfully request the Court approve the proposed Kansas and Missouri Settlement Agreement, which represents a reasonable compromise of the claims presented by the Named Claimants in the Proofs of Claim, the MDL Litigation, and the Kansas and Missouri Complaints.

12

### Notice

35.     The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Trust Company, as indenture trustee for the GenOn Energy, Inc. 7.875% Senior Notes due 2017, 9.50% Senior Notes due 2018, and 9.875% Senior Notes due 2020 (collectively, the "GenOn Notes"), and counsel thereto; (d) Wilmington Savings Fund Society, FSB, as successor indenture trustee for the GenOn Americas Generation, LLC 8.50% Senior Notes due 2021 and 9.125% Senior Notes due 2031 (collectively, the "GAG Notes"), and counsel thereto; (e) NRG Energy, Inc., as administrative agent under the Debtors' secured prepetition revolving facility due 2018 (the "Revolver"), and counsel thereto; (f) U.S. Bank National Association, as collateral trustee under the Revolver; (g) Davis Polk & Wardwell LLP, as counsel to the GenOn Ad Hoc Group (as defined in the Plan); (h) Quinn Emanuel Urquhart & Sullivan, LLP, as counsel to the GAG Ad Hoc Group (as defined in the Plan); (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; (n) Milbank, Tweed, Hadley & McCloy LLP, as counsel to the Owner Lessor Plaintiffs; (o) Kohner, Mann & Kailas, S.C., as counsel to Arandell Corporation, Briggs & Stratton Corporation, Carthage College, ATI Ladish LLC (f/k/a Ladish Co., Inc.), Merrick's, Inc. Verso Minnesota Wisconsin LLC (f/k/a NewPage Wisconsin Systems, Inc.), and Sargento Foods, Inc.; (p) Charles Rubio, Diamond McCarthy LLP, as counsel to Reorganized FLI, Inc.; (q) Andrew Nazar, as counsel to Heartland Regional Medical Center,

Learjet, Inc., Northwest Missouri State University, Prime Tanning Corp., and Topeka Unified

School District 501; and (r) any party that has requested notice pursuant to Bankruptcy Rule

2002. The Debtors submit that, in light of the nature of the relief requested, no other or further

notice is required.

### **No Prior Request**

36.     No prior request for the relief sought in this Motion has been made to this or any

other court.

*[Remainder of this page intentionally left blank]*

WHEREFORE, the Debtors request entry of an order, substantially in the form attached

hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and

proper.

<table>
<tr>
<td>Dated: June 22, 2018<br>Houston, Texas</td>
<td>/s/ Zack A. Clement</td>
</tr>
</table>

Zack A. Clement (Texas Bar No. 04361550)
**ZACK A. CLEMENT PLLC**
3753 Drummond Street
Houston, Texas 77025
Telephone:    (832) 274-7629
Email:        zack.clement@icloud.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
David R. Seligman, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
W. Benjamin Winger (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
                david.seligman@kirkland.com
                steven.serajeddini@kirkland.com
                benjamin.winger@kirkland.com

-and-

Mark McKane, P.C. (admitted *pro hac vice*)
Ashley E. Littlefield (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500
Email:        mark.mckane@kirkland.com
                ashley.littlefield@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

### Certificate of Service

I certify that on June 22, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Zack A. Clement
Counsel

**Exhibit A**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GENON ENERGY, INC., *et al.*,[1] | ) | Case No. 17-33695 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No.** |

## ORDER APPROVING DEBTORS' MOTION FOR ENTRY
## OF AN ORDER (I) APPROVING THE PROPOSED KANSAS AND MISSOURI
## AGREEMENT AND RELEASE PURSUANT TO BANKRUPTCY RULE 9019 AND (II)
## GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned Debtors for entry of an order

(this "Order") approving the Kansas and Missouri Settlement Agreement, attached hereto as

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091).  The Debtors' service address is: 804 Carnegie Center, Princeton, New Jersey 08540.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Case 17-33695-350    Document 1062-2    Filed in TXSB on 08/22/18    Page 3 of 20

**Exhibit 1**, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the submissions by the parties and having heard the statements in support of the relief requested by each of them at the Hearing; and this Court having determined that the legal and factual bases set forth in the submissions and at the Hearing establish just cause for the relief granted in this order (this "Order"); and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor it is HEREBY ORDERED THAT:

1.  The Motion is granted as set forth herein.

2.  The Kansas and Missouri Settlement Agreement and Release and the relief requested therein is hereby approved pursuant to Bankruptcy Rule 9019.

3.  The Court finds that the Kansas and Missouri Settlement Agreement and Release are fair, reasonable, and in the best interest of the estate given the probability of success regarding the MDL Litigation, the complexity and duration of the litigation, the interest of creditors, and the responses to the Motion, and the fact that the Settlement is the product of arm's length bargaining between the Parties.

4.  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

5.      The Parties are authorized to take all actions necessary or appropriate to effectuate

the relief granted herein.

6.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2018
Houston, Texas                                    _____
                                                   THE HONORABLE DAVID R. JONES
                                                   UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A-1

**Kansas and Missouri Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Mutual Release (this "Settlement Agreement") is made and entered into as of June 22, 2018 by and among:

i. The debtors and debtors in possession (collectively, the "Debtors")[1] in the jointly administered chapter 11 cases captioned *In re GenOn Energy, Inc., et al.*, Case No. 17-33695 (DRJ) (Bankr. S.D. Tex.) (Jointly Administered) (the "Chapter 11 Cases");

ii. Heartland Regional Medical Center ("Heartland"), Northwest Missouri State University ("Northwest Missouri"), Prime Tanning Corporation ("Prime Tanning"), and the putative class proposed in the *Amended Complaint for Damages* filed in *In re Western States Wholesale Natural Gas Antitrust Litigation*, Case No. 2:03-cv-01431-PMP-PAL [MDL Docket No. 1863] attached as Exhibit B [Docket No. 767-4] to the *Motion and Memorandum of Law of the Natural Gas Litigation Midwest Class Plaintiffs in Support of Allowance of Class Proofs of Claim* (the "Class Proofs of Claim Allowance Motion") [Docket No. 767] (the "Missouri Putative Class", and, together with Heartland, Northwest Missouri, and Prime Tanning, the "Missouri Claimants");

iii. Learjet, Inc. ("Learjet"), Topeka Unified School District 501 ("Topeka", and together with Learjet, Heartland, Northwest Missouri, and Prime Tanning, the "Named Claimants"), and the putative class proposed in the *Second Amended*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091). The Debtors' service address is: 804 Carnegie Center, Princeton, New Jersey 08540.

*Complaint* filed in *In re Western States Wholesale Natural Gas Antitrust Litigation*, Case No. 2:03-cv-01431-PMP-PAL [MDL Docket No. 1857] attached as Exhibit A [Docket No. 767-3] to the Class Proofs of Claim Allowance Motion (the "<u>Kansas Putative Class</u>", and, together with Learjet and Topeka, the "<u>Kansas Claimants</u>"); and

iv.   Debtors together with the Named Claimants collectively constitute the "Parties," and individually, each constitutes a "Party."

## <u>RECITALS</u>

**WHEREAS**, on March 22, 2007, Heartland and Prime Tanning initiated an action, on behalf of themselves and all others similarly situated, in the Circuit Court of Buchanan County, Missouri, captioned *Heartland Regional Medical Center, et al. v. Oneok Inc., et al.,* Case No. 07BU CV 01316, which was removed to the United States District Court for the Western District of Missouri on April 27, 2007, Case No. 07-cv-06048 (the "<u>Heartland Action</u>");

**WHEREAS**, on November 4, 2005, Learjet and Topeka initiated an action, on behalf of themselves and all others similarly situated, in the District Court of Wyandotte County, Kansas, captioned *LearJet, Inc., et al. v. v. Oneok Inc., et al.,* Case No. 05-cv-1500, which was removed to the United States District Court for the District of Kansas on December 7, 2005, Case No. 05-cv-02513 (the "<u>Learjet Action</u>");

**WHEREAS**, each of the Kansas and Missouri Actions was transferred to the United States District Court for the District of Nevada (the "<u>MDL Court</u>") and consolidated in a multi-district litigation captioned *In re Western States Wholesale Natural Gas Antitrust Litigation*, Case No. 2:03-cv-01431-PMP-PAL, MDL No. 1566 (the "<u>MDL Litigation</u>");

**WHEREAS**, on November 17, 2009, Learjet and Topeka filed the *Second Amended Complaint* in the MDL Litigation [MDL Docket No. 1857], asserting claims on behalf of themselves and the Kansas Putative Class (the "<u>Kansas Complaint</u>");

**WHEREAS**, on November 19, 2009, Heartland and Prime Tanning filed the *Amended Complaint for Damages* in the MDL Litigation [MDL Docket No. 1863], on behalf of themselves and the Missouri Putative Class, adding Northwest Missouri as a party (the "<u>Missouri Complaint</u>");

**WHEREAS**, on June 14, 2017 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>"), thereby commencing the Chapter 11 Cases, and automatically staying the MDL Litigation;

**WHEREAS**, on August 2, 2017, the Court entered the *Agreed Order Lifting the Automatic Stay* [Docket No. 449] (the "<u>Lift-Stay Order</u>"), lifting the automatic stay as to the MDL Litigation;

**WHEREAS**, the Named Claimants filed proofs of claim on their own behalf premised on the Kansas Complaint and Missouri Complaint, including but not limited to the proofs of claim numbered 1220, 1221, 1222, 1223, 1224, 1225, and 1226.  The Named Claimants also filed a *Motion and Memorandum of Law of the Natural Gas Litigation Midwest Class Plaintiffs in Support of Allowance of Class Proofs of Claim* [Docket No. 767], requesting authorization to file purported class proofs of claim on behalf of putative classes alleged in the MDL Litigation, proofs of claim numbered 1222 and 1224 (along with proofs of claim numbered 1220, 1221, 1222, 1223, 1224, 1225, and 1226, and any other proofs of claim filed by the Kansas Claimants or Missouri Claimants, the "Proofs of Claim"), which was denied without prejudice [Docket No. 1165];

**WHEREAS**, on November 6, 2017, the Named Claimants filed the *Heartland Regional Medical Center, Northwest Missouri State University, Prime Tanning Corporation, Learjet, Inc., Topeka Unified School District 501, NewPage Wisconsin System Inc. (N/K/A Verso Minnesota Wisconsin LLC), Arandell Corp., Merrick's Inc., Sargento Foods, Inc., Ladish Co., Inc. (N/K/A ATI Ladish LLC), Carthage College, and Briggs & Stratton Corporation's Limited Objection to Confirmation of Debtors' Chapter 11 Plan* [Docket No. 1085] (the "Release Opt-Out");

**WHEREAS**, on December 12, 2017, this Court entered an order (the "Confirmation Order") confirming the *Third Amended Joint Chapter 11 Plan of Reorganization of GenOn Energy, Inc. and its Debtor Affiliates* [Docket No. 1250, Ex. A.] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");

**WHEREAS**, on February 26, 2018, the Debtors filed the *Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1481] (the "Objection"), seeking to disallow and expunge the Proofs of Claim;

**WHEREAS**, on March 21, 2018, the Named Claimants filed the *Expedited Motion of the Natural Gas Litigation Midwest Plaintiffs to Stay or Deny Debtors' Claim Objection* [Docket No. 1521] (the "Stay-or-Deny Motion"), and the *Expedited Motion of the Natural Gas Litigation Midwest Plaintiffs to Enforce the Agreed Order Lifting the Automatic Stay* [Docket No. 1522] (the "Lift-Stay Motion");

**WHEREAS**, on March 26, 2018,  the Named Claimants filed the *Midwest Plaintiffs' Opposition to Debtors' Motion to Schedule Certain Dates and Deadlines and Establish Certain Protocols in Connection with Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation) [Docket Nos. 1481, 1482]* [Docket No. 1529] (the "Response") in response to the Objection;

**WHEREAS**, on May 14, 2018, the Debtors filed the *Debtors' Opening Memorandum in Further Support of their Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1623], and the Named Claimants filed the *Midwest Plaintiffs' Brief Regarding Jurisdiction, Authority, Prior Pending Case Doctrine, Due Process, Comity, Abstention or Collateral Impact of the Court's Decisions in Connection with Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1622];

WHEREAS, on May 25, 2018, the Debtors filed the *Debtors' Reply Memorandum in Further Support of their Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1628], and the Named Claimants filed the *Midwest Plaintiffs' Response Brief to Debtors' Opening Memorandum in Further Support of their Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1629] (together with Docket Nos. 1622, 1623, and 1628, the "Supporting Briefs");

WHEREAS, on May 31, 2018, the Parties filed a *Notice of Filing of Agreed Order and Stipulation Resolving Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket Nos. 1646] (the "Stipulation");

WHEREAS, the Parties have agreed to resolve the Proofs of Claim, the Objection, the Stay-or-Deny Motion, and the Lift-Stay Motion, the Response, and the Supporting Briefs, on the terms and conditions set forth in this Settlement Agreement;

NOW, THEREFORE, in consideration of the representations, acknowledgements promises, recitals, mutual covenants, terms and conditions contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. **Conditions to Effectiveness**.

    (a)    Notwithstanding anything to the contrary herein, the Parties acknowledge and agree that the effectiveness of this Settlement Agreement is expressly conditioned upon: (i) entry of a final, non-appealable order by the Bankruptcy Court approving the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 9019 (the "Approval Order"); (ii) entry of a final, non-appealable order by the MDL Court dismissing, with prejudice, the Debtors from each of the Kansas and Missouri Actions, including but not limited to the Kansas Complaint and Missouri Complaint (the "Dismissal Order"); and (iii) payment of the Settlement Amount. If any of these three conditions do not occur for any reason other than breach of this Settlement Agreement by a Party, this Settlement Agreement shall be of no force and effect, and the Parties shall have all rights, claims, and defenses they possessed prior to entering into this Settlement Agreement.

    (b)    The date on which this Settlement Agreement shall become effective is the date that is seven (7) days after the conditions set forth in Sections 1(a)(i)-(iii) are satisfied (the "Settlement Effective Date").

    (c)    The Parties' obligations with respect to this Settlement Agreement, except for the Debtors' obligation to seek entry of the Approval Order by this Court, the Kansas Claimants and Missouri Claimants' obligation to seek entry of the Dismissal Order by the MDL Court, and payment of the Settlement Amount, are subject to the occurrence of the Settlement Effective Date. Within ten (10) days of execution of this Settlement Agreement, counsel for the Debtors ("Debtors'

4

Counsel") shall prepare and file all papers necessary to obtain the Approval Order, including a motion for same (the "Approval Motion"), which (along with the form of the Approval Order) shall be in a form reasonably satisfactory to Claimants' Counsel.  Within fourteen (14) days of the Debtors' payment in full of the Settlement Amount, counsel for the Kansas Claimants and Missouri Claimants ("Claimants' Counsel") shall file all papers necessary to seek entry of the Dismissal Order.  If the MDL Court does not enter the Dismissal Order, this Settlement Agreement shall have no force or effect, and the Kansas Claimants and Missouri Claimants shall return the Settlement Amount to the Debtors within ten (10) days of entry of an order denying the request for entry of the Dismissal Order.

2. **Agreed Claims**.

(a)     The Proofs of Claim shall be allowed in the aggregate amount of $3,850,000.00 (the "Settlement Amount"), and classified as Class 6 General Unsecured Claims (as defined in the Plan).  Upon the Settlement Effective Date, the Proofs of Claim shall be deemed withdrawn and expunged with prejudice.

(b)     Proceeds from the Settlement Amount shall be shared *pro rata* among the following entities and/or individuals (each a "Settlement Claimant"):

(i)      The Named Claimants;

(ii)     Members of the Kansas Putative Class and Missouri Putative Class who have previously submitted valid claims for settlement proceeds to Claimants' Counsel in connection with prior settlements[2];

(iii)    Members of the Kansas Putative Class and Missouri Putative Class who make a valid claim in this Court for funds from the Settlement Amount by the date that is thirty (30) days after Claimants' Counsel provides the notice contemplated under Paragraph 4(a) herein (the "Settlement Claims Bar Date", and each claim submitted by such Settlement Claimant, a "Settlement Claim").

(c)     Any Kansas Claimant or Missouri Claimant who is not a Settlement Claimant shall not be entitled to any share of the Settlement Amount, and shall be subject to the Claims Bar Date, subject to applicable law.

---

[2] On July 12, 2018, Claimants' Counsel shall provide, subject to a confidentiality agreement, a list of members of the Kansas Putative Class and the Missouri Putative Class that previously made a claim to settlement funds in prior settlements in the MDL Litigation.  The Parties expressly acknowledge that this list of claimants represents only those entities that made a claim to funds in previous settlements in Missouri and Kansas, and in no way limits the ability of others to make claims to settlement funds or otherwise represents or limits the size of the Kansas Putative Class or the Missouri Putative Class.

64204460.1

(d)     The Settlement Amount shall be paid by wire transfer within four days of entry of the Approval Order to Claimants' Counsel.  Claimants' Counsel will provide wire instructions and a Form W-9 to Debtors' Counsel no later than July 6, 2018.

(e)     Claimants' Counsel or their designee, not the Debtors, shall be solely responsible for distributing the *pro rata* portions of the Settlement Amount, less attorneys' fees and expenses (as described herein), to each Settlement Claimant.  All settlement payments to each Settlement Claimant, attorneys' fees, legal expenses, and costs of processing, mailing, and accounting for settlement distributions shall be paid exclusively from the Settlement Amount.

(f)     The Approval Motion shall contain a request for approval of Claimants' Counsel's attorneys' fees and legal costs.  That request shall specify the amount of attorneys' fees requested based on Claimants' Counsel's contingent fee contracts with the Named Claimants, and shall specify the amount of Claimants' Counsel's advanced expenses sought to be reimbursed from the Settlement Amount. Debtors' Counsel shall work in good faith with Claimants' Counsel to draft the request for approval of attorneys' fees and expenses, and shall not file the Approval Motion without Claimants' Counsel's approval of the portion of the Approval Motion containing that request, such approval not to be unreasonably withheld.  Notwithstanding anything to the contrary herein, the Court's consideration and determination on Claimants' Counsel's request for approval of attorneys' fees and expense reimbursement shall not prevent or delay the entry of an order otherwise granting the Approval Motion.  For the avoidance of doubt, this Settlement Agreement shall have full force and effect regardless of the Court's grant or denial of Claimants' Counsel's request for approval of fees and expense reimbursement.

(g)     The Approval Motion shall also contain a request for the Bankruptcy Court to authorize Claimants' Counsel to communicate with the Missouri Putative Class and the Kansas Putative Class regarding this Settlement Agreement and the opportunity to make claims to a *pro rata* portion of the Settlement Amount. Debtors' Counsel shall work in good faith with Claimants' Counsel to draft the request for authority to communicate with the putative class members, and shall not file the Approval Motion without Claimants' Counsel's approval, such approval not to be unreasonably withheld, of the portion of the Approval Motion containing that request.

(h)     The Settlement Amount shall be reflected on the Bankruptcy Court's official claims register.

(i)     The Named Claimants will give further notice of the Settlement Agreement by filing a notice of the Settlement Agreement and this Order on the docket for the MDL Litigation. The Parties agree that they will work cooperatively to provide all notice necessary and follow all appropriate procedures, including under Fed. R. Civ. P. 23, as applicable, to protect the Parties, the Kansas Claimants, the Missouri Claimants, the Court, the MDL Court, and all involved counsel;

6

3.    **Dismissal of Kansas and Missouri Actions**.  Upon the Approval Order becoming final and non-appealable, and upon full and final payment of the Settlement Amount on the terms outlined herein, Kansas Claimants and Missouri Claimants shall voluntarily dismiss, with prejudice, the Debtors from each respective Kansas and Missouri Action, including but not limited to the Kansas Complaint and Missouri Complaint.  A file-stamped copy of the Dismissal Order shall be sent to counsel for the Debtors at the following address:

> Mark McKane, P.C.
> Kirkland & Ellis LLP
> 555 California Street, Fl. 29
> San Francisco, CA 94104

4.    **Further Notice of Settlement and Rule 9019 Motion**.

(a)    Upon the later of  August 15, 2018, or within three (3) days of entry of the Approval Order, Claimants' Counsel, at their own expense, shall provide further notice of (i) this Settlement Agreement, (ii) the Approval Order, (iii) the Settlement Claims Bar Date, and (iv) the specific language of the Mutual Release and Covenant Not to Sue (described below), by mail to the previously identified lists of potential members of the Kansas Putative Class and Missouri Putative Class, and on the docket for the MDL Litigation.  Such notice to the Kansas Putative Class and the Missouri Putative Class shall specifically list the Settlement Claims Bar Date.

5.    **Mutual Release and Covenant Not to Sue**.

(a)    Effective as of the payment of the Settlement Amount, or as of the Settlement Claims Bar Date for Settlement Claimants who submit a valid Settlement Claim after the payment of the Settlement Amount but before the Settlement Claims Bar Date, in consideration of the covenants undertaken in this Settlement Agreement, the Debtors, on the one hand, and each Settlement Claimant, on the other hand, each on behalf of themselves and (i) each of their respective current and former, direct and indirect, parent companies, subsidiaries, and affiliates; (ii) the respective assigns, predecessors, successors, and related entities of the entities in subsection (i) hereof; and (iii) all current and former employees, agents, directors, officers, managers, members, stockholders, partners, limited partners, equity holders, professionals, staff, principals, owners, and other representatives of the Parties and of the individuals and entities in subsections (i) and (ii) hereof (collectively, (i) through (iii) are the "Related Parties"), for good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, and having been represented by counsel and having been fully and adequately informed as to the facts, circumstances and consequences of this Settlement Agreement, each hereby irrevocably and unconditionally release, acquit, and forever discharge the other, and all of the other's respective Related Parties, contractors, and attorneys (all of which and whom are collectively referred to as "Releasees"), with respect to and from, any and all claims, demands, charges,

7

additional costs, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, arbitration, tax assessments, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, indemnities, variances, trespasses, damages, compensation, fines, penalties, losses, orders and liabilities, of whatever kind or nature in law, equity or otherwise, whether now known or unknown, compulsory or permissive, sounding in tort, contract, statutory or regulatory violation or otherwise, suspected or unsuspected, discovered or undiscovered, foreseen or unforeseen, vested or contingent, accrued or unaccrued, liquidated or unliquidated, asserted or unasserted, matured or unmatured, direct or indirect, derivative or subrogated, individual, class, representative, or other capacity, that the Parties and their respective Related Parties now own or hold, or have at any time heretofore owned or held, or may in the future hold against said Releasees, or any of them, arising out of or in any way relating to any of the facts alleged in each of the Kansas and Missouri Actions, including but not limited to facts alleged in the Kansas Complaint and Missouri Complaint, and the Settlement Agreement, ***provided however*** that the foregoing release does not, shall not, and is not intended to release any claims, causes of action, or other rights of any Party arising out of or related to any breach of, or to enforce the terms of, this Settlement Agreement;

(b)     Effective upon the occurrence of the Settlement Effective Date, each of the Parties, on behalf of itself and its respective Related Parties, covenants and agrees not to pursue or prosecute any suit, claim, action, or proceeding seeking recovery against or from any one or more of the Releasees arising out of or relating to any one or more of the claims released hereunder, ***provided, however***, that the foregoing covenant does not, shall not, and is not intended to preclude any Party from asserting or prosecuting any claim or cause of action arising out of or related to any breach of, or to enforce the terms of, this Settlement Agreement.

(c)     Upon the later of the Settlement Effective Date or the Settlement Claims Bar Date, the Response, Supporting Briefs, Lift-Stay Motion, the Stay-or-Deny Motion, and the Objection shall be deemed resolved as to each Settlement Claimant, the Release Opt-Out shall be deemed withdrawn as to each Settlement Claimant, and each Settlement Claimant shall be deemed a Releasing Party for all purposes under the Plan and Confirmation Order.

(d)     For the avoidance of doubt, NewPage Wisconsin System, Inc.  (n/k/a Verso Minnesota Wisconsin LLC), Arandell Corp., Merrick's, Inc., Sargento Foods, Inc., Ladish Co., Inc. (n/k/a ATI Ladish LLC), Carthage College, and Briggs & Stratton Corporation, as well as any putative class members in the Wisconsin actions (together, the "Wisconsin Plaintiffs") pending in the MDL Litigation (the "Wisconsin Actions"), shall not be considered Releasing Parties under the terms of this Settlement Agreement, the Response, Supporting Briefs, Lift-Stay Motion, Stay or Deny Motion, Class Proof of Claim Allowance Motion, and the Objection, shall not be deemed withdrawn as to the Wisconsin Plaintiffs, and nothing in this Agreement or any pleadings or orders contemplated in this

8

Settlement Agreement shall affect the Wisconsin Actions or the Wisconsin Plaintiffs in any way.

(e)     The Approval Order shall contain self-effectuating provisions to implement the foregoing.

6.     **Representations and Warranties**.

(a)     Each of the Parties acknowledges, agrees, represents and warrants that:

(i)     It has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity any claim or cause of action released pursuant to this Settlement Agreement;

(ii)     There are no liens or claims of lien, or assignments in law or equity or otherwise, of or against any claim or cause of action released pursuant to this Settlement Agreement;

(iii)     It has duly executed and delivered this Settlement Agreement and is fully authorized to enter into and perform this Settlement Agreement and every term hereof and has the authority to bind the entity on whose behalf it has executed the Settlement Agreement;

(iv)     It has been represented by legal counsel in the negotiation and joint preparation of this Settlement Agreement, has received advice from legal counsel in connection with this Settlement Agreement and is fully aware of this Settlement Agreement's provisions and legal effect; and

(v)     It enters into this Settlement Agreement freely, without coercion, and based on its own judgment and not in reliance upon any representations or promises made by the other Parties, apart from those set forth in this Settlement Agreement.

(b)     Each of the Parties acknowledges the materiality of the foregoing representations and warranties.

7.     **Waiver of California Civil Code Section 1542 and Analogous Statutes**.     This Settlement Agreement is the result of a compromise and shall not be deemed an admission of the truth or correctness of the claims or contentions of any Party to this Settlement Agreement against any other Party.  It is understood by the Parties that there is a risk that subsequent to the execution of this Settlement Agreement the claims of any Party with respect to the subject matter hereof may be discovered to be greater or less than any Party now expects or anticipates.  Each Party assumes this risk and the releases contained herein shall apply to all unknown, undiscovered, or unanticipated results, as well as those known, discovered and anticipated.  The Parties expressly waive and relinquish all rights and benefits afforded by Section 1542 of the California Civil Code and analogous statutes, and any law of any state or territory of the United States, or principle of common law, or the law of any foreign jurisdiction, that is similar,

9

comparable or equivalent to Section 1542 of the California Civil Code with respect to all claims and other rights released pursuant to this Settlement Agreement, and do so understanding and acknowledging the significance and consequence of such specific waiver of Section 1542.  Section 1542 of the California Civil Code states as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Each Party has read and understands the provisions of California Civil Code Section 1542 and acknowledges and agrees that, although it may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the claims released pursuant to the provisions of this Settlement Agreement, it hereby expressly waives the benefits of California Civil Code Section 1542 and analogous statutes, and any law of any state or territory of the United States, or principle of common law, or the law of any foreign jurisdiction, that is similar, comparable or equivalent to Section 1542 of the California Civil Code, and fully, finally and forever settles and releases any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claims related to those claims and other rights released pursuant to this Settlement Agreement, without regard to the subsequent discovery or existence of such different or additional facts.

8.    **Governing Law and Construction of Agreement**.

(a)    This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas without regard to its internal choice of law rules.

(b)    Any ambiguity in or dispute regarding the interpretation of this Settlement Agreement shall not be resolved by any rule of interpretation providing for interpretation against the drafting Party.

9.    **Jurisdiction**.

(a)    The Parties consent to the non-exclusive jurisdiction of the Bankruptcy Court over the approval, implementation, administration, interpretation, and enforcement of this Settlement Agreement.

(b)    The Parties acknowledge and agree that the MDL Court retains non-exclusive jurisdiction over all aspects of the MDL Litigation.  In the event the MDL Court has transferred the respective Kansas and Missouri Actions from the MDL Court to the United States District Courts for the Districts of Kansas or Missouri, respectively, before entry of the Dismissal Order, the Parties acknowledge and

64204460.1

agree that each such courts shall have non-exclusive jurisdiction over all aspects of the respective Kansas and Missouri actions pending therein.

10.   **No Admission or Acknowledgement**.  Each of the Parties understands, acknowledges, and agrees that this Settlement Agreement constitutes a compromise and settlement of certain disputed claims arising from or relating to the Kansas and Missouri Actions, and that this Settlement Agreement shall not constitute an admission of or stipulation to any fact or liability by any of them regarding any claim or cause of action, including but not limited to the claims and causes of action released hereunder, and neither the terms hereof, nor the fact of this Settlement Agreement itself, shall be evidence of any kind in any proceeding other than a proceeding to enforce the terms of this Settlement Agreement or any instrument executed in furtherance hereof or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.  No action taken by the Parties, or any of them, either previously or in connection with this Settlement Agreement, shall be deemed to be or construed to be (a) an admission of the truth or falsity of any of the claims made and/or raised in connection with such disputed claims or of any question of law or fact; or (b) an acknowledgment or admission by any Party of any fault, wrongdoing or liability whatsoever.

11.   **Cooperation**. RRI Energy Services, LLC and its successors and assigns, agree as follows:

(a)   For use in the potential trial of the Heartland Action or the Learjet Action under Federal Rule of Evidence 901(a), RRI Energy Services, LLC agrees to authenticate by stipulation documents or materials it previously produced to Named Claimants in the MDL 1566 Actions and which Claimants' Counsel will identify with reasonable specificity, including by Bates number where applicable; provided, however that Claimants' Counsel shall limit the requested stipulation to a reasonable number of documents and materials that are reasonably necessary to the potential trial of the Heartland Action or the LearJet Action.  RRI Energy Services, LLC agrees that the stipulation will be finalized as to form and content between the parties by the Settlement Effective Date, or 60 days after Debtors' Counsel receives the draft stipulation from Claimants' Counsel, whichever is later.

(b)   The completed stipulation will be held by Debtors' Counsel until the entry of an order from the Judicial Panel on Multidistrict Litigation remanding the claims in Heartland Action or the Learjet Action against non-settling defendants to their respective transferor courts, and RRI Energy Services, LLC will sign the stipulation and Debtors' Counsel (or RRI Energy Services, LLC) will deliver it to Class Counsel within two weeks of that remand order.

12.   **Entire Agreement; Amendment; Waiver**.  This Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof.  The Parties have executed this Settlement Agreement voluntarily, after having obtained the

11

64204460.1

advice of legal counsel, and with a full and free understanding of its terms, which may not be changed except by a writing signed by all of the Parties.

13. **Binding Effect**.  This Settlement Agreement, in all of its particulars, is binding on and for the benefit of all Parties and their respective agents, employees, officer, directors, successors, affiliates, subsidiaries, assigns and representatives.

14. **Severability**.  If any provision of this Settlement Agreement is declared illegal or unenforceable by a Final Order (as defined in the Plan) of a court of competent jurisdiction or an arbitrator or regulatory agency, such provision shall be deemed severable to the extent necessary to eliminate the illegality or unenforceability thereof, and all other terms and provisions shall remain valid and binding on the Parties and their respective agents, employees, officer, directors, successors, affiliates, subsidiaries, assigns and representatives.

15. **Agreement Costs and Expenses**.  Each Party will pay its own legal and other costs and expenses incident to this Settlement Agreement, except as expressly provided otherwise herein.

16. **Counterpart Execution and Use of Photocopies**.  This Settlement Agreement may be executed by signature of each of the Parties hereto, or their authorized representatives, on multiple copies of this Settlement Agreement, including copies transmitted by facsimile machine or electronically, and upon being so executed by all Parties hereto, shall be effective as if all signatures appeared on a single original of this Settlement Agreement.

17. **Additional Documents and Acts**.  Each of the Parties agrees to execute or cause its counsel to execute any additional documents and take any further action that may reasonably be required to consummate this Settlement Agreement, or otherwise fulfill the obligations of the Parties hereunder, including but not limited to obtaining the Approval Order, Dismissal Order, and notify members of the Kansas Putative Class and Missouri Putative Class of this Settlement Agreement and the motion for entry of the Approval Order.  The Parties shall bear their own costs and attorneys' fees incurred in connection with any such additional action, unless expressly provided otherwise herein.

18. **Recitals, Acknowledgement & Consent to Terms**.  The Parties acknowledge that the recitals contained in this Settlement Agreement are true and correct to the best of their knowledge, and are made a part of this Settlement Agreement and incorporated by reference.  The Parties acknowledge that they have read this Settlement Agreement, understand the promises, recitals, mutual covenants, representations, terms and conditions contained herein, and voluntarily consent thereto.

19. **Attorneys' Fees**.  If any action is brought to enforce this Settlement Agreement, the prevailing party shall be entitled to recover its expenses and costs relating thereto, including but not limited to its reasonable attorneys' fees, from the non-prevailing individuals and/or entities who are party to the enforcement action.  For the avoidance of doubt, neither Named Claimants nor Claimants' Counsel shall be liable or responsible under this provision for actions taken by or the inaction of any individuals or entities

12

other than the Named Claimants, and neither Debtors nor Debtors' Counsel shall be liable or responsible under this provision for actions taken by or the inaction of any individuals or entities other than the Debtors.

20.  **Full and Final Settlement.**  The Parties acknowledge and agree that this Settlement Agreement represents the full and final settlement of all claims and causes of action arising from or relating to the Kansas and Missouri Actions and the Proofs of Claim, with respect to each of the Parties hereto in accordance with the terms hereof.

21.  **Headings**.  Section headings in this Settlement Agreement are included for convenience of reference only and shall not constitute a part of this Settlement Agreement for any other purpose.

*[signature pages follow]*

64204460.1

**IN WITNESS WHEREOF**, the Parties hereto, intending to be legally bound hereby, have executed this Settlement Agreement.

**Counsel for Named Claimants**

                   **Counsel for GenOn Energy, Inc.**
                   **RRI Energy Services, Inc.**

_____
Name: Andrew J. Ennis
Title: Shareholder

                   _____
                   Name:
                   Title:

14

64204460.1

**IN WITNESS WHEREOF**, the Parties hereto, intending to be legally bound hereby, have executed this Settlement Agreement.

**Counsel for Named Claimants**

**Counsel for GenOn Energy, Inc.
RRI Energy Services, Inc.**

_Ashley E. Littlefield_

Name: _____

Name:  Ashley E. Littlefield

Title: _____

Title:  Partner, Kirkland & Ellis LLP

14

64204460.1

Case 17-39695    Document 1682-2    Filed in TXSB on 06/22/18    Page 1 of 9

# EXHIBIT B

## Settlement Term Sheet

<u>SETTLEMENT AGREEMENT TERM SHEET FOR KANSAS AND MISSOURI
CLAIMANTS</u>

The following term sheet (the "<u>Term Sheet</u>") summarizes the principal terms and conditions of a proposed settlement of the disputes currently pending between the Debtors, the Kansas Claimants, and Missouri Claimants (all as defined below) in connection with the Debtors' jointly-administered chapter 11 cases in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") under the caption *In re GenOn Energy, Inc., et. al.*, No. 17-33695 (DRJ) (collectively, the "<u>Chapter 11 Proceedings</u>").

This Term Sheet is provided in the nature of potential settlement proposal in furtherance of settlement discussions. Accordingly, this Term Sheet is intended to be entitled to the protections of Rule 408 of the Federal Rules of Evidence and any other applicable statutes or doctrines protecting the use or disclosure of confidential information and information exchanged in the context of settlement discussions. Nothing in this Term Sheet shall be an admission of fact or liability.

| Overview | |
|---|---|
| **Debtors** | "<u>Debtors</u>" shall mean GenOn Energy, Inc.; GenOn Americas Generation, LLC; GenOn Americas Procurement, Inc.; GenOn Asset Management, LLC; GenOn Capital Inc.; GenOn Energy Holdings, Inc.; GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC; GenOn Fund 2001 LLC; GenOn Mid-Atlantic Development, LLC; GenOn Power Operating Services MidWest, Inc.; GenOn Special Procurement, Inc.; Hudson Valley Gas Corporation; Mirant Asia-Pacific Ventures, LLC; Mirant Intellectual Asset Management and Marketing, LLC; Mirant International Investments, Inc.; Mirant New York Services, LLC; Mirant Power Purchase, LLC; Mirant Wrightsville Investments, Inc.; Mirant Wrightsville Management, Inc.; MNA Finance Corp.; NRG Americas, Inc.; NRG Bowline LLC; NRG California North LLC; NRG California South GP LLC; NRG California South LP; NRG Canal LLC; NRG Delta LLC; NRG Florida GP, LLC; NRG Florida LP; NRG Lovett Development I LLC; NRG Lovett LLC; NRG New York LLC; NRG North America LLC; NRG Northeast Generation, Inc.; NRG Northeast Holdings, Inc.; NRG Potrero LLC; NRG Power Generation Assets LLC; NRG Power Generation LLC; NRG Power Midwest GP LLC; NRG Power Midwest LP; NRG Sabine (Delaware), Inc.; NRG Sabine (Texas), Inc.; NRG San Gabriel Power Generation LLC; NRG Tank Farm LLC; NRG Wholesale Generation GP LLC; NRG Wholesale Generation LP; NRG Willow Pass LLC; Orion Power New York GP, Inc.; Orion Power New York LP, LLC; Orion Power New York, L.P.; RRI Energy Broadband, Inc.; RRI Energy Channelview (Delaware) LLC; RRI Energy Channelview (Texas) LLC; RRI Energy Channelview LP; RRI Energy Communications, Inc.; RRI Energy Services Channelview LLC; RRI Energy Services Desert Basin, LLC; RRI Energy Services, LLC; |

| | RRI Energy Solutions East, LLC; RRI Energy Trading Exchange, Inc.; and RRI Energy Ventures, Inc. |
|---|---|
| **Kansas Claimants** | "Kansas Claimants" shall mean Learjet, Inc. and Topeka Unified School District 501. |
| **Missouri Claimants** | "Missouri Claimants" shall mean Heartland Regional Medical Center, Northwestern Missouri State University, and Prime Tanning Corporation. |
| **Kansas Putative Class** | "Kansas Putative Class" shall mean the putative class proposed in the *Second Amended Complaint* filed in *In re Western States Wholesale Natural Gas Antitrust Litigation*, 2:03-cv-01431-PMP-PAL [MDL Docket No. 1857], attached as Exhibit A [Docket No. 767-3] to the *Motion and Memorandum of Law of the Natural Gas Litigation Midwest Class Plaintiffs in Support of Allowance of Class Proofs of Claim* (the "Class Proofs of Claim Allowance Motion") [Docket No. 767]. |
| **Missouri Putative Class** | "Missouri Putative Class" shall mean the putative class proposed in the *Amended Complaint for Damages* filed in *In re Western States Wholesale Natural Gas Antitrust Litigation*, 2:03-cv-01431-PMP-PAL [MDL Docket No. 1863] attached as Exhibit B [Docket No. 767-4] to the Class Proofs of Claim Allowance Motion. |
| **Settlement Class** | "Settlement Class" shall mean the putative members of the Kansas Putative Class and the Missouri Putative Class. |
| **Proofs of Claim** | "Proofs of Claim" shall mean all proofs of claim filed by the Kansas and Missouri Claimants, including, but not limited to, Claim Nos. 1220, 1221, 1223, 1225, and 1226, and all proofs of claim filed by the Kansas and Missouri Putative Class, including, but not limited to, Claim Nos. 1222 and 1224. |
| **Effective Date** | "Effective Date" shall mean seven (7) days after an order from the Bankruptcy Court approving the Rule 9019 Motion becomes final and non-appealable. |
| **Settlement Amount** | "Settlement Amount" shall mean $3,850,000.00. |
| **Settlement Claims Bar Date** | "Settlement Claims Bar Date" shall mean a date to be defined later by which members of the Settlement Class must make a claim to funds from the Settlement in order to be entitled to a pro rata share of the Settlement Amount, and after which they shall not be entitled to any share of the Settlement Amount—or any other recovery from the Debtors—and shall be subject to the Claims Bar Date. |
| **Settlement** | Subject to the terms of this Term Sheet and approval by the Bankruptcy Court, the Debtors, the Kansas Claimants, the Missouri Claimants, and potential members of the Settlement Class that make a claim in this Settlement agree to settle any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, regarding or arising out of the Proofs of Claim or the claims raised in *In re Western States Wholesale Natural Gas Antitrust Litigation*, 2:03-cv-01431-PMP-PAL, in exchange for the consideration described *infra*. This Settlement will be |

2

|  | formalized and effected with full releases in a forthcoming settlement agreement. The parties acknowledge that this Settlement Agreement Terms Sheet reflects the parties' agreement in principle to resolve disputed claims. The parties will ultimately be bound by the terms of the forthcoming settlement agreement. |
|---|---|
| **Settlement Terms** | |
| **Allowed General Unsecured Claims** | In consideration for the releases to be embodied in the Settlement, the Proofs of Claim shall be allowed in an aggregate amount not to exceed the Settlement Amount, to be shared pro rata among the Kansas Claimants, Missouri Claimants, and members of the Settlement Class that make claims in the Settlement by the Settlement Claims Bar Date. Subject to Court approval, the Settlement Amount shall be paid upon the Effective Date to Counsel to the Kansas Claimants and Missouri Claimants, and counsel to the Kansas Claimants and Missouri Claimants, and not the Debtors, shall be solely responsible for distributing the Settlement Amount to the Kansas Claimants, Missouri Claimants, and members of the Settlement Class that make claims in the Settlement by the Settlement Claims Bar Date in accordance with the terms of the Settlement. |
| **Jurisdiction of the Bankruptcy Court** | The parties agree that the Bankruptcy Court, and not the United States District Court for the District of Nevada, the court in which *In re Western States Wholesale Natural Gas Antitrust Litigation*, 2:03-cv-01431-PMP-PAL is ongoing, maintains jurisdiction to approve and administer the formal settlement agreement memorializing the provisions described herein. |
| **Rule 9019 Motion** | Following the parties' execution of a formal settlement agreement memorializing the provisions described herein, the Debtors will submit the settlement agreement to the Bankruptcy Court for approval with a Rule 9019 Motion filed on the Debtors' main docket and noticed on regular notice. |
| **Further Notice** | The Kansas Claimants and Missouri Claimants shall give further notice of this Settlement by filing a notice of the Settlement and the Rule 9019 Motion on the docket for *In re Western States Wholesale Natural Gas Antitrust Litigation*, 2:03-cv-01431-PMP-PAL. The parties further agree that they will work cooperatively to provide all notice necessary, and follow all appropriate procedures, including under Fed. R. Civ. P. 23, as applicable, to protect the parties, the Kansas Putative Class, the Missouri Putative Class, the Bankruptcy Court, the MDL Court, and all involved counsel. |
| **Claims Process For Putative Class Members** | Counsel for the Kansas Claimants and Missouri Claimants will be responsible for providing notice of the Settlement and Settlement Claims Bar Date to the Settlement Class to allow them the opportunity to make a claim in the Settlement and receive a pro rata share of the Settlement Amount. The notices to the Settlement Class will specifically list the Settlement Claims Bar Date by which members of |

| | |
|---|---|
| | the Settlement Class must make a claim in the Settlement and after which members of the Settlement Class that have failed to make such a claim shall not be entitled to any share of the Settlement Amount—or any other recovery from the Debtors—and shall be subject to the Claims Bar Date. |
| **Claims Bar Date and Plan Discharge Provisions** | The Kansas Claimants, Missouri Claimants, and any member of the Settlement Class that makes a claim in the Settlement by the Settlement Claims Bar Date agree that the Claims Bar Date occurred on September 15, 2017, and agree that the Confirmation Order and Plan contain provisions discharging the Debtors of any liability associated with potential claims arising out of or relating to *In re Western States Wholesale Natural Gas Antitrust Litigation*, 2:03-cv-01431-PMP-PAL, for which claimants failed to file timely proofs of claim. The Kansas Claimants, Missouri Claimants, and any member of the Settlement Class that makes a claim in the Settlement by the Settlement Claims Bar Date further agree that such claimants are barred from pursuing those discharged claims against the Debtors pursuant to the provisions in the Confirmation Order and Plan. |
| **Releasing Parties** | The settlement agreement shall contain customary, mutual releases.<br><br>In addition, upon consummation of the Settlement, the Kansas Claimants, Missouri Claimants, and any member of the Settlement Class that makes a claim in the Settlement by the Settlement Claims Bar Date agree that, with respect to the Kansas Claimants, Missouri Claimants, and any member of the Settlement Class that opts in to the Settlement by the Settlement Claims Bar Date, the Response [Docket No. 1528] shall be deemed resolved in its entirety, the Release Opt-Out [Docket No. 1085] shall be deemed withdrawn, and the Kansas Claimants, Missouri Claimants, and any member of the Settlement Class that makes a claim in the Settlement by the Settlement Claims Bar Date shall be deemed Releasing Parties for all purposes under the Plan and Confirmation Order. For the avoidance of doubt, NewPage Wisconsin System Inc. (n/k/a Verso Minnesota Wisconsin LLC), Arandell Corp., Merrick's, Inc., Sargento Foods, Inc., Ladish Co., Inc. (n/k/a ATI Ladish LLC), Carthage College, and Briggs & Stratton Corporation (together, the "Wisconsin Plaintiffs"), as well as any putative class members in the Wisconsin actions pending in the MDL Court, shall not be considered Releasing Parties under the terms of this settlement. The Rule 9019 Order shall contain self-effectuating provisions to implement the foregoing. |

## **EXHIBIT D**

**THE *GENON* NOVEMBER 1, 2017 HEARING TRANSCRIPT**

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 17-33695   Document 1079   Filed in TXSB on 11/06/17   Page 1 of 69
Pg 80 of 148

1

1          IN THE UNITED STATES BANKRUPTCY COURT

2          FOR THE SOUTHERN DISTRICT OF TEXAS

3                  HOUSTON DIVISION

| | | |
|---|---|---|
4  IN RE: | § | CASE NO. 17-33695-H2-11 |
| | § | HOUSTON, TEXAS |
5  GENON ENERGY, INC., ET AL, | § | WEDNESDAY, |
| | § | NOVEMBER 1, 2017 |
6                    DEBTORS. | § | 3:40 P.M. TO 5:13 P.M. |

7

8            MOTION TO ALLOW CLAIMS HEARING

9        BEFORE THE HONORABLE DAVID R. JONES
            UNITED STATES BANKRUPTCY JUDGE

10

11                  APPEARANCES:

12      FOR THE PARTIES:    SEE NEXT PAGE

13      COURT RECORDER:    LINHTHU DO

14

15

16

17

18

19

20            TRANSCRIPTION SERVICE BY:

21      JUDICIAL TRANSCRIBERS OF TEXAS, LLC
            935 ELDRIDGE ROAD, #144
22          SUGAR LAND, TEXAS 77478
        Tel: 281-277-5325 ▼ Fax: 281-277-0946
23          www.judicialtranscribers.com

24

25   Proceedings recorded by electronic sound recording;
        transcript produced by transcription service.

Case 17-30635    Document 7079    Filed in TXSB on 11/06/17    Page 2 of 69

2

```
 1                              APPEARANCES:

 2
        FOR THE DEBTORS:                 ANNA ROTMAN, ESQ.
 3                                       ZACK CLEMENT, ESQ.
                                         JEREMY EVANS, ESQ.
 4                                       RACHEL MORGAN, ESQ.
                                         KIRKLAND & ELLIS, LLP
 5                                       600 TRAVIS ST. STE. 3300
                                         HOUSTON, TEXAS  77002
 6                                       713-835-3748

 7      FOR THE DEBTORS:                 DAVID R. SELIGMAN, ESQ.
                                         KIRKLAND & ELLIS, LLP
 8                                       300 N. LaSalle
                                         Chicago, IL  60654
 9                                       312-862-2000

10      FOR THE DEBTORS:                 MARK ROEBECK, ESQ.
                                         KELLEY DRYE & WARREN
11                                       Washington Harbour
                                         Suite 400
12                                       3050 K Street, N.W.
                                         Washington, D.C.  20007
13                                       (202) 342-8400

14      FOR THE NATURAL GAS
        LITIGATION MIDWEST
15      CLASS PLAINTIFFS:                TREY A. MONSOUR, ESQ.
                                         RUSSELL S. JONES, JR., ESQ.
16                                       POLSINELLI PC
                                         1000 Louisiana Street
17                                       53rd Floor
                                         Houston, TX  77002
18                                       713-374-1643

19

20

21

22

23

24

25
```

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 17-30695   Document 1079   Filed in TXSB on 11/06/19   Page 3 of 89
Pg 82 of 148

3

```
 1                          INDEX

 2                                                     PAGE

 3   Court's ruling                                     63

 4

 5   EXHIBITS:                          Offered   Received

 6   Class Claimants:

 7       3                                  8          8
         4                                  8          8
 8       5                                  8          8
         6                                  8          8
 9       7                                  8          8

10   Debtor's:

11       1-4                               47         47
         14                                48         48
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

09-50026-mg    Doc 14354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 17-33695    Document 1079    Filed in TXSB on 11/06/17    Page 4 of 69
Pg 83 of 148

4

```
 1        HOUSTON, TEXAS; WEDNESDAY, NOVEMBER 1, 2017; 3:40 P.M.

 2             THE COURT:  Let me call Case No. 37-33695, GenOn

 3    Energy, Inc.  And, folks, whenever you're ready I'll take

 4    your appearances.  We'll start first in the courtroom.

 5             MR. CLEMENT:  Good afternoon, Your Honor.  For

 6    GenOn Energy here in the courtroom Zach Clement and from

 7    Kirkland & Ellis Anna Rotman, Jeremy Evans, and Rachel

 8    Morgan.  Also on the phone, David Seligman.  I believe he's

 9    on the phone.  And also Mark Roebeck of Kelley Drye,

10    litigation counsel for GenOn.

11             THE COURT:  All right.  Thank you.  Folks on the

12    telephone, just given the sheer number of people that are on

13    the line, although a number of them are getting off, I've

14    activated the hand raising feature.  If you wish to speak,

15    you need to use the star five on your telephone.  We'll

16    continue with appearances in the courtroom.

17             MR. JONES:  Thank you, Your Honor, good afternoon,

18    Russell Jones and Trey Monsour of Polsinelli on behalf of

19    the Midwestern Class Plaintiffs and the individual

20    claimants.

21             THE COURT:  All right.  Thank you, sir.  Good

22    afternoon, gentlemen.

23             All right.  Anybody on the telephone wish to make

24    an appearance?

25             If you do, press star five on your telephone.  All
```

 1    right.

 2         (No audible response.)

 3              THE COURT:  Have you all talked about how you

 4    would like to proceed to or are we just -- Mr. Jones, you're

 5    just going to start firing?

 6              MR. JONES:  We've not talked since last week, Your

 7    Honor, I propose -- I think we're still talking about one of

 8    our motions so we thought we would go first.

 9              THE COURT:  Fair enough.

10              MS. ROTMAN:  That's fine.

11              THE COURT:  Do you wish to make any opening

12    remarks or do you want to go straight to the presentation?

13              MR. JONES:  The only -- I guess I would.  The

14    opening remarks are simply this, we have provided counsel

15    with the witness and exhibit list.  Because of the nature of

16    the proceedings today in accordance with what we talked

17    about on the phone last week, we don't have any witnesses.

18    We do have exhibits to be offered.  These are certified

19    copies of pleadings that were filed in the Nevada MDL

20    matter.  We have a notebook for the Court and copies for the

21    other side.

22              And if it'd please the Court, we'd offer those

23    into evidence and tender them now.

24              THE COURT:  All right.

25              MR. JONES:  I can --

```
 1              THE COURT:  Let me go ahead and get a copy and see
 2   what we're looking at.
 3              MR. MONSOUR:  Let me explain the white notebook,
 4   Your Honor.
 5              THE COURT:  It's thick and it's big, I get that.
 6              MR. JONES:  Right.  Well, there's -- I'll let
 7   Mr. Monsour explain that.
 8              THE COURT:  Okay.
 9              MR. MONSOUR:  The first -- the thick part --
10   actually it might be simpler just to go to the black
11   notebook.
12              THE COURT:  Okay.
13              MR. MONSOUR:  But the reason for the white
14   notebook is the exhibits that we are relying on are
15   declarations that were attached to a pleading.  And so in
16   order for it to be admitted, we thought we needed to admit
17   the entire document, not just excerpts from it.
18              But for purposes of the argument, we're using the
19   excerpts, but the white notebook is the complete set of the
20   pleading that's been certified with all of the excerpts.
21              THE COURT:  All right.
22              MR. MONSOUR:  If that makes sense.
23              THE COURT:  It does.  And so let me -- the --
24              MR. MONSOUR:  So behind tab 1 is the same tab 1 as
25   in the black notebook and all the stuff before that is the
```

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 17-30693   Document 1079   Filed in TXSB on 11/06/17   Page 7 of 69
Pg 86 of 148

7

```
1    pleading that we're not using, but it's the complete set.
2              THE COURT:  I got it, all right.  Thank you.
3              All right.  So I've got -- we'll just call --
4    well, we'll call the class claimants I think that's actually
5    how it's titled Exhibits 1 through 14, correct?
6              MR. MONSOUR:  14, correct.
7              THE COURT:  Are there any objections, Ms. Rotman,
8    to Exhibits 1 through 14?
9              MS. ROTMAN:  Yes.  So --
10             THE COURT:  All right.
11             MS. ROTMAN:  I guess I don't have the white
12   notebook so I'm not sure exactly I'm going to get the same
13   thing as you all, but with respect to Exhibit 1 which was
14   provided to us here --
15             THE COURT:  Right.
16             MS. ROTMAN:  -- this is a declaration of Jeffrey
17   Daugh (phonetic) with respect to the settlement notice plan.
18   And so we would object to the admissibility of the
19   declaration not having the opportunity to cross-examine
20   Mr. Dahl.
21             THE COURT:  All right.
22             MS. ROTMAN:  We have the same objection to
23   Exhibit 2, which is the declaration of Mark Fellows
24   (phonetic) with respect to execution of the settlement
25   notice plan.
```

8

1          THE COURT:  All right.

2          MS. ROTMAN:  Same objection, that we haven't had

3  the opportunity to cross-examine him.  If he's here, we're

4  happy to do so.  And we can then get it in that way.

5          So then with respect to Nos. I guess 3, 4, 5, 6,

6  7, so all of these I would actually have to -- let me see.

7  Okay.  I don't think we have any objection to 3.

8          THE COURT:  All right.  So I will admit by

9  agreement, Exhibit 3.

10     (Class Claimants' Exhibit No. 3 received in evidence.)

11         MS. ROTMAN:  And then with respect to Exhibit 4, I

12 don't think we have any objections to that.

13         THE COURT:  All right.  4 is admitted.

14     (Class Claimants' Exhibit No. 4 received in evidence.)

15         MS. ROTMAN:  Exhibit 5, I don't think we have any

16 objections.

17         THE COURT: 5's admitted.

18     (Class Claimants' Exhibit No. 5 received in evidence.)

19         MS. ROTMAN:  Exhibit 6, I don't think we have any

20 objections.

21         THE COURT:  All right.  6 is admitted.

22     (Class Claimants' Exhibit No. 6 received in evidence.)

23         MS. ROTMAN:  Exhibit 7, I don't think we have any

24 objections.

25         THE COURT:  7 is admitted.

```
 1        (Class Claimants' Exhibit No. 7 received in evidence.)

 2            MS. ROTMAN:  Exhibit 8, we would object to the

 3    declaration --

 4            THE COURT:  All right.

 5            MS. ROTMAN:  -- for the same reason.  But I'm

 6    actually not even sure Exhibit 8 is relevant to today's

 7    hearing, but in any event.

 8            Okay.  So with respect to Exhibit 9, 10, 11, 12,

 9    13 and 14, so the issue with these is that the language in

10    these exhibits states, and I can direct the Court for

11    example, just on Exhibit 9 to paragraph 12.  That in

12    paragraph 12, which is on page 7, the very last line says by

13    its own terms of this document that it shall not be used as

14    an exhibit in any proceeding.  I'm sorry, it shall not be

15    offered as evidence.  I'm not sure if the Court's there, I'm

16    on the last sentence of paragraph 12 on page 7 of Exhibit 9.

17            THE COURT:  I'm right there.

18            MS. ROTMAN:  "Neither the agreement, nor any of

19    the negotiations or proceeding connected with it seeking

20    forth shall be offered as evidence or received in evidence

21    in any proceeding," except in a proceeding to enforce the

22    agreement, which would not be the case here or "to defend

23    against the assertion of released claims or as otherwise

24    required by law."

25            Now, I want to make clear that we, in our own
```

1   argument, intended to draw the Court's attention to this

2   exhibit and to that language for purposes of pointing that

3   it is not supposed to be evidence of anything.

4          So to the extent they are pointing to it as

5   evidence of I think you'll hear from the argument implied

6   authority, it by its own terms, is not -- deserve such a

7   purpose.  So we are in the situation where we don't want

8   something admitted as evidence because it said it shouldn't

9   be evidence, but look, I'm going to refer to it in the same

10  way.  And so I would defer to the Court on how you want to

11  handle it, but that's what our issue is.

12          THE COURT:  Let me ask, what is the purpose of

13  Exhibits 9, 10, 11, 12, 13?  I mean, they are -- I guess and

14  14 as well.

15          MR. JONES:  And 14.

16          THE COURT:  Yeah.

17          MR. JONES:  The purpose, Your Honor, is to prove

18  that the MDL court has entered preliminary and final orders

19  appointing our named plaintiffs as class representatives for

20  the settlements described in those orders, that it has also

21  appointed us and our co-counsel in Kansas and Missouri and

22  Wisconsin as class counsel for the purpose of those

23  settlements.

24          THE COURT:  Right.

25          MR. JONES:  And that has approved those

1    settlements.  The point is that these were -- that these --

2    if we need evidence that we have, in fact, done what we

3    talked about three weeks ago --

4              THE COURT:  Sure.

5              MR. JONES:  -- this is the evidence.

6              THE COURT:  All right.

7              MR. JONES:  The reference to not to be used in

8    another proceeding --

9              THE COURT:  Yeah, we'll come back to that.

10             MR. JONES:  Okay.  All right.  But that is the

11   point, Your Honor.

12             THE COURT:  So --

13             MR. JONES:  These are the orders that did what we

14   say, which is appoint our named plaintiffs as class

15   representatives and appointed us as class counsel.

16             THE COURT:  All right.  And you qualified it the

17   first time we went around you said the -- and I just haven't

18   read them --

19             MR. JONES:  Yeah.

20             THE COURT:  -- so I don't know what they say.  You

21   said that they appointed you, for instance, as class counsel

22   for purpose of the settlement.

23             MR. JONES:  Yes, Your Honor.

24             THE COURT:  So is there language in this order

25   that limits the scope of your authority or specifies or how

1   do I figure out what your status is or isn't from these

2   orders or can I?

3            MR. JONES:  The point, Your Honor, we're not

4   arguing that we've been appointed class counsel for all

5   purposes for all things.

6            THE COURT:  Okay.

7            MR. JONES:  All right.  These are for the purposes

8   of the settlements that we talked to the Court about last

9   time very briefly.

10           THE COURT:  Okay.

11           MR. JONES:  Our point is that we're being told

12  that we have absolutely no authority to proceed in these

13  bankruptcy proceedings on behalf of these people.

14           THE COURT:  Right.

15           MR. JONES:  Of these entities that we're

16  representing.

17           THE COURT:  Right.

18           MR. JONES:  And we believe that it is our position

19  that the fact that the MDL District Court has, in fact, and

20  first of all heard us for a dozen years litigating these

21  cases on behalf of these entities, and did, in fact, appoint

22  us as class counsel and did appoint our 14 individual

23  plaintiff, named plaintiffs as class representatives at

24  least for that purpose --

25           THE COURT:  Okay.

1          MR. JONES:  -- is relevant to the issue of whether

2     or not we have authority to proceed here.

3          THE COURT:  All right.

4          MR. JONES:  So that's the purpose of the offer.

5          THE COURT:  And so let me -- I just want to make

6     sure I understand because I'm -- this is somewhat different

7     than what I thought the lay of the land was.

8          So you're telling me that the MDL Court appointed

9     a class rep, appointed you as class counsel for purposes of

10    consummating these half dozen or so settlements.  But you

11    have not been appointed as what I'm going to call general

12    class counsel, and in fact, there is no general class.  Is

13    that a fair summary?

14         MR. JONES:  I would only qualify that as by saying

15    not yet, Your Honor.  Yes, that is --

16         THE COURT:  Well, let me tell you and I thought

17    about our status conference the other day.  And I came to

18    the conclusion, you hear me say all the time that, you know,

19    I believe in transparency, I believe in the process and for

20    it to work, it's got to be absolutely transparent.

21         And my guess is, is that I was probably less than

22    transparent on that status conference.  I mean, I told you

23    what we were going to do, but I didn't really tell you why.

24    And let me be -- let me tell you where I'm really, really

25    hung up.  I've read all the cases and I understand what they

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 1:17-cv-09695   Document 10-29   Filed 11/08/17   Page 14 of 69
Pg 93 of 148

14

1   say, and you know, I get the concept that, you know, where

2   you have a pending class action with no ruling, nothing

3   tried, I get what at least one circuit court thinks the law

4   is.  I get that.

5           Where I have difficulty is where I have an order

6   from a district court that while it may be appealable it is

7   a final order under federal law.  And effectively, at least

8   from my perspective and I'm very happy to hear why I'm

9   wrong, effectively what I'm being asked to do is to

10  undermine that order, which is something I will not do.

11          And when I very much limited what we were going to

12  do today, that single issue in a large part drives sort of

13  where I'm headed.  The last thing that I'm about to do,

14  because I wouldn't want it done to me, is to have an order

15  that I had entered that was final, believing it to be the

16  right decision, believing it to be a just decision for

17  someone then to go to another court and effectively, and I'm

18  not suggesting that you've done anything wrong or anything

19  like that.  I'm just telling you how I look at it.  And

20  effectively ask me to start collaterally attacking that

21  order.

22          And if you're going to get it reversed by the 9th

23  Circuit, great, get it reversed by the 9th Circuit.  At that

24  point, we don't have a final order anymore.  But I am really

25  reluctant to say, okay, I'm going to go ahead and entertain

09-50026-mg    Doc 13354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 1:17-cv-09695    Document 10-2    Filed 11/16/17    Page 18 of 89
Pg 94 of 148

15

```
 1  effectively a second bite at the apple, when an Article 3
 2  Court has entered a final order saying, you know, no.

 3          And that's -- I'm really hung up about that, and
 4  the reason why I was unwilling to entertain anything more
 5  than what I told you we were going to do today really is
 6  driven by that issue.  It is -- it just seems to me to be
 7  incredibly inappropriate for me to be effectively
 8  substituting my judgment for that of a court that I think
 9  everybody agrees is a court of competent jurisdiction that
10  has already entered a decision.

11          That's the way I reconcile the arguments that say
12  even if you don't have a ruling, but you've got a pending
13  matter that again you have a court saying, well, you should
14  go ahead and entertain that.  And I know it's more than one
15  court, I just picked one because I'm focused on the circuit
16  decision.

17          You know, that's how I sort of reconcile all of
18  that.  And it makes sense to me.  I mean, if it's put to me
19  first and I have both the jurisdiction and the authority to
20  do it, fair enough.  Then if I enter a decision, I would
21  expect, and again a district court looking at a bankruptcy
22  court decision is slightly different than a bankruptcy court
23  looking at a district court decision and I appreciate all
24  those differences.  I get reminded of them every day.

25          That's just a different animal and I apologize to
```

Case 17-03695    Document 1072    Filed in TXSB on 11/08/17    Page 18 of 89

 1   all of you that I wasn't more clear in why I was -- I don't

 2   generally like to be so limiting and define the issues.  But

 3   that really was what was driving -- I didn't want a

 4   transcript to exist that said, okay, you know, fine, I know

 5   the District Court in Nevada has done something, ah, I don't

 6   really care, we'll go ahead and revisit again.  And I wasn't

 7   going to have that out there.  Please.

 8            MR. JONES:  Thank you, Your Honor.

 9            First, of course, we have the additional factor

10   here of the fact that we did, in fact, ask the 9th Circuit

11   for permission to appeal --

12            THE COURT:  Uh-huh.

13            MR. JONES:  -- Judge -- the other Judge Jones'

14   order.  And that that motion was granted by the 9th Circuit

15   over arguments made by the other side, all the other sides,

16   not just the Reliant people but others here.

17            THE COURT:  Sure.  But I don't know what that

18   means.

19            MR. JONES:  And it was, the standard is, we can

20   only take this if we think it's manifest error.

21            THE COURT:  I know what the standard means.

22            MR. JONES:  Likely to be reversed.

23            THE COURT:  I also know that circuit judges do

24   what circuit judges want to do.

25            MR. JONES:  Right.  And --

09-50026-mg    Doc 14354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 1:17-cv-05913    Document 10-29    Filed 11/XX/19 on 11/06/19    Page 17 of 80
Pg 96 of 148

17

1          THE COURT:  And I don't have -- I don't know why

2    they did what they did.  I, you know, very much invited a --

3    some direction from the circuit.

4          MR. JONES:  And I can tell you what we've tried to

5    do, Your Honor.

6          THE COURT:  No, no, and I'm not complaining at

7    all.  I'm just telling you I am not about to try and peer

8    into the heads, the collective heads of, and I don't

9    remember whether that was just a panel or en banc, but

10   whatever it was, I'm not about to peer into the collective

11   heads of a set of circuit judges that why they decided to do

12   something and why they didn't decide to do something.

13          What I am very comfortable in is that as we sit

14   here today, I have a final order from a district court, a

15   final but appealable order, and I certainly appreciate those

16   distinctions, but I do think -- and I think it couldn't be

17   any other way, that a final order is to be treated as a

18   final order until it's reversed.

19          And so if you want to move me from my current way

20   of thinking and my desire to show the utmost respect for

21   another federal court, you need to find a way to reconcile

22   all of that for me.

23          MR. JONES:  And again I think I would start out by

24   pointing out this was not a final order.

25          THE COURT:  Sure it is.

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 17-03695   Document 107-29   Filed in TXSB on 11/06/17   Page 18 of 89
Pg 97 of 148

18

1          MR. JONES:  That was subject to a final appeal,

2    but final for purposes of appeal.  It would not have been

3    appealable but for the particular provisions in the federal

4    rules that allows an appeal in the discretion of the

5    appellate court an interlocutory decision denying class

6    certification.

7          THE COURT:  Okay.

8          MR. JONES:  The standard, as the other side argue

9    vehemently is manifest error, which means high likelihood

10   that error, reversible error has occurred.

11         THE COURT:  So we ought to be getting an order

12   just any day now reversing it, right?

13         MR. JONES:  Unfortunately the 9th Circuit doesn't

14   working that way, Your Honor.  What they have done is given

15   us permission to appeal.  Our brief on appeal is due within

16   the month and our -- and it'll go on from there.

17         So the fact that this -- we do think this is a

18   meaningful difference between a final order that just gets

19   appealed, which is appealed as of right, and an order that

20   cannot be appealed as of right, but can only be appealed

21   with the permission of the circuit court.  And the circuit

22   court adopts the manifest error standard and says, okay, we

23   think this is probably wrong, that's the only way to

24   interpret their order, and so we're going to take a look at

25   it.

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Pg 98 of 148
Case 17-09695   Document 1029   Filed in TXSB on 11/06/17   Page 19 of 89

19

```
 1              So we think that is a meaningful difference.  So
 2    there's one answer.
 3              THE COURT:  Okay.
 4              MR. JONES:  The -- we're not asking -- I guess
 5    there is this.  We're not asking this court to second guess
 6    the other Judge Jones' decision.  That's never been what
 7    we've been trying to do here, as we discussed at great
 8    length I believe during the status conference.
 9              Our goal has been one -- has been one goal and
10    remains one goal.  And that is to ensure to do everything we
11    possibly can to ensure that the rights of these claimants
12    creditors are not extinguished by virtue of what happens in
13    the GenOn bankruptcy.
14              THE COURT:  Okay.
15              MR. JONES:  And so we have done what we believe
16    and the cases say the rules say we should do.  We filed a
17    motion for permission to file a class claim.  We attached
18    the class proofs of claim with them.  The motion was filed
19    not by us as lawyers, but it was filed on behalf of our
20    individual named clients, that is, I believe Document No.
21    767 if you want to take a look at that.
22              There's some comment made recently that we didn't
23    -- that we're just a bunch of lawyers filing these things.
24    This was filed by and on behalf of our clients, who are
25    asking to or the clients are asking that the Court allow
```

1   them to pursue the claims of the bankruptcy on behalf of the
2   class members that they would like to represent.

3           Again, the point is one of preservation and one of
4   time.  If we did not try to file a class proof of claim, if
5   we are held not to have authority to file a class proof of
6   claim, then what we risk is this bankruptcy proceeds, the
7   confirmation occurs, and that's all fine.  And then 18
8   months from now or 12 months from now the 9th Circuit
9   reverses and they put us back in business as representing
10  these members of these three classes and Reliant says, ha-
11  ha, can't touch me.

12          That is what we have been trying to figure out a
13  way to not let happen.  We are not asking this Court to
14  substitute its judgment for the District Court in Nevada.
15  If the 9th Circuit rules against us ultimately, ultimately
16  then we would not ask this Court to go against the decision
17  of the 9th Circuit.

18          What we've been asking, we asked in the motion to
19  stay which we already talked about, what we've been asking
20  for is essentially the opportunity to freeze things in
21  place, so that whatever the 9th Circuit does can become
22  effective as to -- equally effective as to Reliant as it is
23  to any of the other remaining defendants in these cases.

24          And so our analysis has been designed to
25  effectuate that one single only goal.  Either to leave

1    things as they are, that's what we thought we were doing

2    when the stay order was lifted.  That's what we thought we

3    were doing when we filed the motion for permission to file

4    the class proofs of claims.

5         As Your Honor has said, there are -- you know, the

6    issue today is supposed to be only that of authority.

7    You've read the cases.  I would point out there are at least

8    four Circuit Courts of Appeals that have agreed with the 7th

9    Circuit in *American Reserve*.  Courts in this circuit have

10   agreed with the *American Reserve* standard, both bankruptcy

11   and district courts have agreed with that standard.

12        Nobody -- sorry, shouldn't say that.  The only

13   cases the other side cites to the contrary are the old 10th

14   Circuit standard in *Standard Metals* and two of Judge

15   Abramson's decisions in this court, one of which was called

16   into rather substantial question by the district court on

17   appeal, where the district court said, well, it wasn't a

18   class proof of claim, it was a group proof of claim.  And

19   had it been a class proof of claim we probably would have

20   followed the decisions, the more recent opinions that

21   reached a contrary result.  So we don't think there's much

22   weight to be given to those cases.

23        THE COURT:  And just so we're clear, he wasn't

24   this court, Northern District of Texas.

25        MR. JONES:  Oh, I'm sorry, I apologize, you're

09-50026-mg   Doc 13454   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Pg 101 of 148
Case 17-03695   Document 1029   Filed in TXSB on 11/06/17   Page 22 of 89

22

1    right, you're right.  I'm not sure why I had that in my

2    head.

3              THE COURT:  That's all right.  I spent enough time

4    making that trip.  I remember it all too well.

5              MR. JONES:  It's a long way.

6              So on that issue, we think it's really very clear.

7    What we have here are 14 individual defendants with

8    unliquidated claims, who seek to protect the rights and

9    interests of the other several thousand claimants with

10   unliquidated claims.  None of whom got notice of the

11   bankruptcy because Reliant has said they didn't know who

12   they are.  We would posit now and the point of Exhibits 1

13   and 2, by the way, Your Honor, these are the declarations

14   from the people at Dahl, that's D-A-H-L, Administration,

15   these are the settlement administrators.

16             And these are the declarations that recite the

17   work that has been done to notify the possible claimants

18   against the settlement funds.  And they talk about the

19   thousands and thousands and thousands of things they've

20   done, websites, letters, e-mails, publication notices, et

21   cetera including regional newspapers in Kansas, Missouri and

22   Wisconsin, which was not done by the regular GenOn notices.

23   And notices in the natural gas trade press, which we

24   understand was not done by the GenOn notices.

25             What we are trying to do very simply is preserve

09-50026-mg    Doc 13754    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 17-03695    Document 107-29    Filed in TXSB on 11/06/17    Page 23 of 89
Pg 102 of 148

23

1    those claims, such that then and if the 9th Circuit

2    reverses, and when and if district courts, whoever have

3    these cases then, we think by then they'll actually be back

4    in Wisconsin, Missouri and Kansas, those cases go forward as

5    class claims.

6          They should go forward as class claims if the 9th

7    Circuit does what they think and if the district courts

8    adhere to that, we'll have class claims in those three

9    states.  Those class claims in Wisconsin will be against six

10   defendants, including Reliant.  Those class claims in

11   Missouri and Kansas will be against four defendants

12   including Reliant.

13         It seems neither right, nor consistent with the

14   Bankruptcy Code, at least the cases I've seen, that Reliant

15   should be able somehow to set itself apart and undermine

16   through the use of this proceeding the 9th Circuit decision

17   and the decision of the district courts on remand, which

18   will be the places that these claims actually do get

19   liquidated.

20         THE COURT:  Tell me how you think that occurs.  So

21   you walk through this, I mean, if things are the way that

22   you tell me that they are.

23         MR. JONES:  Uh-huh.

24         THE COURT:  So we go through the bankruptcy case,

25   and if there is all of this work that's been done, then you

1   know, the standard for notice is knew or should have known

2   and what efforts did you make.  I mean, I don't think the

3   debtors will stand up and say that someone that we should

4   have sent the plan to or made them aware of but didn't is

5   bound by the terms of that plan.  Maybe they will, I don't

6   know, we'll -- I'm going to ask that question.

7              MR. JONES:  Right, right.

8              THE COURT:  But if that's the case, I mean,

9   certainly -- I mean, take the easy example, if there is

10  someone that the debtor knows has a claim and they go about

11  intentionally making sure that they don't know about the

12  bankruptcy case, that all comes pretty clear.  I mean, the

13  plan's just ineffective and not binding on them.

14             You know, then you get into that category of, you

15  know, knew, but shouldn't known; knew, could've known, you

16  know, what efforts were made.  You know, you've done an

17  awful lot in terms of increasing the pressure on the debtor

18  to figure out who these people are, in order to give them an

19  opportunity to come forward and do whatever it is that they

20  believe should be done.

21             MR. JONES:  And not to interrupt --

22             THE COURT:  No, no.

23             MR. JONES:  -- but, Your Honor, in the cases that

24  we've cited, even in the 10th Circuit case, even in *Standard*

25  *Metals* and a number of other cases that we cited, one of the

Case 17-09595   Document 1029   Filed in TXSB on 11/06/17   Page 28 of 89

1  reasons -- well, one of the things that happens is if a

2  class proof of claim is denied, if the Court holds that you

3  simply can't file a class proof of claim then the debtors

4  are required to give new notices.

5       And in a sense we're trying to speed things up,

6  not gum things up, because by allowing the class proof of

7  claim, there wouldn't have to be those extra notices.  We

8  know now through the notice process in the settlements, we

9  know now who probably 1,500 of these people are, because

10 those are the people that -- they're generally businesses or

11 schools that have made claims against the settlement.  Those

12 would people, entities that could be noticed, should be

13 noticed according to virtually every case that we've seen.

14      That's -- as you've observed, I suppose it's the

15 debtor's risk if they choose not to do that, I would be very

16 curious as will the Court, to hear the answer to the Court's

17 question are you going to try to foreclose these folks, and

18 if the answer is no, well, okay maybe we're one place.  But

19 if the -- I don't think you're going to get that answer

20 today.  I may be surprised, I hope I am.

21      But the alternative to not allowing class --

22 alternative to a class claim has got to be giving those

23 individual claimants fair notice and a fair opportunity to

24 submit claims.  And again, we don't know whether all 1,500

25 or 2,000 of them will, but those are the people that came

Case 1-17-03695   Document 1029-1   Filed in TXSB on 11/06/17   Page 26 of 69

26

1   forward into the settlement funds and made a claim, so we

2   suspect that the large majority of them will also

3   participate here.

4           THE COURT:  Let me ask you this.  So we've got --

5   given all the work that's been done, you've actually got a

6   database of 2,000 -- I'm just rounding off.  You've got a

7   database with 2,000 names and addresses already compiled.

8           MR. JONES:  I believe our settlement

9   administrators do have that, yes, Your Honor.

10          THE COURT:  Okay.  And was any effort made to

11  contact those 2,000 people about the class proof of claim in

12  this case?

13          MR. JONES:  I'm not aware of any specific effort

14  to tell them of that.  We believed that the appropriate way

15  to do this was through the class proof of claim.

16          THE COURT:  Well, no, I'm just trying to practical

17  about it.  I mean, if you --

18          MR. JONES:  Right.

19          THE COURT:  -- you know, you certainly had a fair

20  amount of time.  I was just curious as to why, and I'm

21  guessing your settlement data probably includes name,

22  address and maybe even e-mail address, you know, why -- you

23  know, if something was done to tell people about this issue

24  and --

25          MR. JONES:  We -- well.  The bankruptcy was filed,

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 1-17-03695   Document 1029-1 Filed in TXSB on 11/06/17   Page 24 of 89
Pg 106 of 148

27

```
 1   as I recall, in June.

 2              THE COURT:  Uh-huh.

 3              MR. JONES:  We looked at things and did them the

 4   way we thought we needed to do them to protect all these

 5   entities in the bankruptcy court.

 6              THE COURT:  Sure.  But you could have done this

 7   last week.

 8              MR. JONES:  We could have done this last week and

 9   so could the debtor have asked for the names last week and

10   so.

11              THE COURT:  The debtor's going to have their

12   moment, I promise you.  But I'm still focused on -- and

13   here's what I'm caught up in and I'm struggling to get

14   through it.  Is I've got a decision by an Article 3 Court.

15   And of all of the things that you could do to make this more

16   palatable to me if I were standing in your shoes, you've

17   done none of them.

18              And I'm just -- and I'm confused by this sort of

19   hide the ball, and I don't mean anything negative by it,

20   you're going to react negatively with that, I don't mean

21   that.  But I'm bothered by these sort of hide the ball

22   approach.  You want to tell me that we're actually doing

23   this so the debtors have an easier way, and of course, I

24   don't believe that for a second.

25              You know, the one thing that I understand after 27
```

1    years of practicing law, I understand greed.  I believe in

2    greed.  Greed motivates me like you would not believe when I

3    was a practicing lawyer, I get it.  You know, you can do

4    anything for the good of the debtors.  You're doing what you

5    think you need to do for your clients, I applaud that, I

6    agree with it.  But I'm really bothered by these sort of --

7    you know, these issues have now been raised for a long

8    period of time.  And for something that would be so easy to

9    do and so relatively inexpensive, I'm just -- I'm confused

10   as to why something hasn't been done given that you all are

11   so skilled at what you do, I would have thought that you

12   would have done a number of things to make this easier for

13   me.  And I'm confused as to why it hasn't been.

14          MR. JONES:  I can promise the Court that there was

15   never any conversation amongst counsel that in which the

16   question was raised, should we tell all these individual

17   claimants and the answer was no.

18          As far as I know, Your Honor, and there's co-

19   counsel involved, and I can't speak for every single person

20   --

21          THE COURT:  Sure.

22          MR. JONES:  -- but as far as I know, the answer to

23   the Court's question why didn't we provide individual -- why

24   didn't we go reach out to these folks ourselves to do

25   individual notices would be, gee, a) before September 15th

1    we didn't think of it and that was the bar date.  And until

2    and unless -- I mean, I suppose you're right.  Had we

3    thought of it before today we could have asked the Court for

4    leave to extend the bar date and go let us go file some late

5    claims.

6            THE COURT:  I don't even know that it's a bar

7    date.  I mean, I can think of a very simple notice that

8    says, hey, we have this issue down in Houston, there's a

9    bankruptcy case, we want to file a proof of claim and you're

10   members of the settlement group, reply to this e-mail and,

11   you know, give me your authority to file something on your

12   behalf.

13           I agree that that's problematic potentially from

14   all sorts of do I have a binding contract or not.  But it

15   really would have been -- it would have mattered a lot to

16   me, just to know that I've got a knowledgeable well-informed

17   group of folks who are saying, yeah, I really do want my

18   rights protected, I don't know what to do in a bankruptcy

19   case.  Because at the end of the day, as well you know, I

20   have an awful lot of equitable discretion.

21           And, you know, I tend to exercise that where I

22   feel like parties have made an effort and, you know, come up

23   short for one reason or another and I use that equitable

24   discretion to kind of fill the gap.

25           What I get the sense of, and I'm putting this on

09-50026-mg    Doc 14354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 17-03695    Document 90-29    Filed in TXSB on 11/06/17    Page 30 of 89
Pg 109 of 148

30

1  the collective group as a whole.  I get the distinct

2  impression that I don't yet really know what the game is.

3  And I am struggling with that, simply because the things

4  that make sense to me just haven't been done.  And I'm

5  genuinely convinced that I don't really understand what the

6  real issues are because I haven't been told.

7          MR. JONES:  Two things.  First --

8          THE COURT:  Sure.

9          MR. JONES:  Again, Your Honor, hindsight's 20/20.

10          THE COURT:  Uh-huh.

11          MR. JONES:  And as I said, the Court's suggestion

12  of a few minutes ago is the first time that suggestion has

13  been put into my head.

14          THE COURT:  That's interesting.

15          MR. JONES:  And I -- you know, maybe we're not as

16  good as we think we are, but --

17          THE COURT:  I know.  I spent a lot of time dealing

18  with the breast implant cases and trying to sort through all

19  of those issues and I get it.  But to me that's just an easy

20  -- it's just an easy thing.

21          MR. JONES:  Perhaps.  The second answer is, could

22  I let Mr. Monsour respond to that?

23          THE COURT:  Of course.

24          MR. MONSOUR:  Your Honor, it came into our head,

25  and in fact, it wasn't until late August that we identified

Case 17-33695 Document 1073 Filed in TXSB on 11/06/17 Page 31 of 69

the 1,500 claimants that participated in the settlement. So nobody would have known. And two weeks before, we felt as though there would be -- it would be meaningless to get them to file the proofs of claim. So we thought, why should we be -- and let me I'll get to your question. Why should we bearing the cost of providing these people with notice of the bar dates so that they can protect their interest individually. And --

THE COURT: It's not a bar date issue for me.

MR. MONSOUR: I know, but let me --

THE COURT: Okay.

MR. MONSOUR: Please indulge me.

THE COURT: Sure.

MR. MONSOUR: So then we looked at the issue of authorization and we looked at all of the prevailing authority and we saw what the 5th Circuit hadn't ruled on that issue, and we looked at all the cases in the 5th Circuit that had, we followed that protocol thinking that was the appropriate protocol to follow, as opposed to going and getting -- because let's say we would've gone out and gotten a thousand out of the 1,500 say yes, be our counsel and 500 would not have responded.

THE COURT: Right.

MR. MONSOUR: You still would have had this issue with anyone that wouldn't have responded.

```
 1              THE COURT:  See, I disagree.  But --

 2              MR. MONSOUR:  But it wasn't -- it's not to hide

 3    the ball it's just we looked at it from a practical

 4    perspective of costs and --

 5              THE COURT:  In any of those cases, is there any

 6    decision where certification had actually been denied?

 7              MR. MONSOUR:  No.

 8              THE COURT:  See, that's a big difference to me.

 9              MR. MONSOUR:  And our -- and it goes back to the

10    notice issue and why we had filed the stay motion.

11              THE COURT:  Right.

12              MR. MONSOUR:  We're not asking you to change the

13    existence and the lay of the land.  But if you look at Rule

14    3008 it only gives us one year to ask this Court to

15    reconsider.  And if we don't do it within that year, we're

16    forever barred.  And we have the excusable neglect standard

17    but if you look at 3008 and you look at 9024 and Rule 60(c)

18    which it references, we don't have an unlimited period of

19    time and that's a problem.  Because what if the 9th Circuit

20    doesn't rule until 13 months, that's what we're trying to

21    protect against, is not letting the bankruptcy be some sort

22    of trick process that's going to impact those claimants.

23              THE COURT:  I mean, at some point doesn't it have

24    to?  I mean, at some point the bankruptcy has to have an

25    effect.  I mean, this doesn't just simply stay out there
```

Case 17-03695   Document 102-9   Filed in TXSB on 11/06/17   Page 38 of 89

1 | forever.

2 |         MR. MONSOUR:  But the claim liquidation -- let's

3 | assume there wasn't the class, let's assume the class is

4 | denied and the 14 claims are allowed.  They're not going to

5 | be adjudicated until the Court, not the bankruptcy court,

6 | liquidates the claims.

7 |         So isn't -- that's the final determination date

8 | for liquidation and then we come back to this Court for

9 | allowance.  So if the class certification issue were to have

10 | occurred before that, this Court's not going to make a

11 | determination on those proofs of claim until after it's

12 | liquidated anyway.  And quite candidly the case could be

13 | very well closed before the district court actually

14 | liquidate the claims.

15 |         THE COURT:  So let me go back to what you said,

16 | which was just news to me.  I want to understand because I

17 | think you're wrong.

18 |         So do we agree that 3008 itself makes no reference

19 | to any time period at all?

20 |         MR. JONES:  That's right.  It says --

21 |         MR. MONSOUR:  It's 9340, Your Honor.

22 |         THE COURT:  If you would just go with me, I

23 | promise you I don't open my mouth without having gone

24 | through this.

25 |         MR. JONES:  It says reasonable time, that's

34

1    correct, right.

2         THE COURT:  So 9024 says Rule 60 applies in cases

3    under the code except that a motion to reopen a case under

4    the code or for the reconsideration of an order allowing or

5    disallowing a claim against the estate entered without a

6    contest is not subject to the one year limitation prescribed

7    in Rule 60(c).  You just told me that it was.  Unless I

8    misunderstood.

9         MR. MONSOUR:  9024.  9024 says --

10        THE COURT:  I just read it to you.

11        MR. MONSOUR:  I know, but I have to read it.

12        THE COURT:  But you don't have to read it to me.

13        MR. MONSOUR:  It says 60(c) applies, okay.

14        THE COURT:  No, it doesn't.

15        MR. MONSOUR:  And it says a motion --

16        THE COURT:  It doesn't say that at all.  It says,

17   "is not subject to the one year limitation prescribed in

18   Rule 60(c)."

19        MR. MONSOUR:  60(c) says and for the reasons 1, 2,

20   and 3 no more than a year after entry of a judgment order.

21        THE COURT:  Right.  And it says it doesn't apply.

22        MR. MONSOUR:  No.

23        THE COURT:  I read the words.

24        MR. MONSOUR:  I'm trying to stay with you, Judge.

25        THE COURT:  "A motion for the reconsideration of

1  an order allowing or disallowing a claim against the estate

2  entered without a contest is not subject to the one year

3  limitation prescribed in Rule 60(c)."

4          MR. MONSOUR:  Right, I agree with that.

5          THE COURT:  Well, you said that it was.

6          MR. MONSOUR:  For the 14 claimants it is.  We're

7  contesting the claim today.  I mean, the claim is being

8  contested -- I would -- for the --

9          THE COURT:  Go ahead.

10          MR. MONSOUR:  For the claimants --

11          THE COURT:  That's not what you told me.

12  That's --

13          MR. MONSOUR:  You're right, that's not what I told

14  you, that is not what I told you.  That's what I meant, and

15  I'm sorry, Judge.  9024 for those claimants who haven't

16  appeared, who haven't got notice, they can come back in to

17  this court, for those of us that have and who have fought

18  this process we're barred within the year.

19          THE COURT:  Okay.  You lost me.  Go ahead,

20  Mr. Jones.

21          MR. JONES:  I'll try.  I'm not a bankruptcy

22  lawyer, Your Honor, I'll see if I can harmonize what I think

23  I just heard.

24          THE COURT:  No, don't try.

25          MR. JONES:  Okay.

09-50026-mg Doc 14354 Filed 07/30/18 Entered 07/30/18 10:49:14 Main Document
Case 1-17-03695 Document 1072 Filed in TXSB on 11/06/17 Page 38 of 89
Pg 115 of 148

36

1          THE COURT:  It'll hurt you.

2          MR. JONES:  All right.  I don't want to do

3   anything to make it worse.

4          THE COURT:  See, this only reinforces everything

5   that I've just said.  I don't understand the game that's

6   being played, and I'm just -- to the extent that you want me

7   to give you the equitable benefit of the doubt, I've said it

8   a thousand times, I demand transparency, I demand complete

9   honesty and complete forthrightness and I'm not getting it.

10         MR. JONES:  And, Your Honor, I --

11         THE COURT:  You know, I came --

12         MR. JONES:  -- regret --

13         THE COURT:  It came very -- I've known some --

14   I've known your co-counsel for almost 30 years.  And he came

15   darn close to flat out lying to me, and I -- you know, I'm

16   going to assume that it was just an error in judgment and

17   we're going to move on.  But I'm just telling you I have a

18   very murky picture and it's only getting murkier.

19         MR. JONES:  Let me try to clear it up.

20         THE COURT:  Okay.

21         MR. JONES:  I'm terribly disappointed to hear the

22   Court say that it does not think we have been transparent

23   because it --

24         THE COURT:  You haven't thus far.

25         MR. JONES:  It has been our intention and I

1   believe -- well, it's been our intention to be transparent.

2          THE COURT:  All right.

3          MR. JONES:  Which is why we filed the motion with

4   the class proof of claims and asked to do it the way that we

5   thought the cases said it was supposed to be done.  That is

6   why when we were here for the stay argument, I think we were

7   very clear, very transparent as to why we were asking the

8   Court to stay, because we wanted to just keep everything in

9   the same place.

10         We have one interest and one interest only in

11   this, and everything we've been doing without hiding any

12   ball has been designed in our judgment to get us to the one

13   place, which is let the bankruptcy do what it's going to do,

14   but let our clients and the entities that they have been

15   representing or trying to represent as class members for the

16   last dozen years, let those entities have the right, should

17   the 9th Circuit and the district courts give them the right

18   to pursue the class claims against Reliant, as they have and

19   are going to keep doing against the other defendants.

20         That's all we're after, that's all we've been

21   after.  And as I said, everything we've done has been a good

22   faith effort to try to get us to that place.  We've been

23   transparent with the other side.  And, Your Honor, I know

24   you don't know me, but I think if you ask the lawyers in the

25   Kansas City area who do know me, they will tell you that I

09-50026-mg   Doc 13754   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 1-17-09595   Document 107-9   Filed 11/08/19   Entered 03/11/06/19   Page 38 of 69
Pg 117 of 148

38

1   am a transparent person and that my word is my bond.

2           THE COURT:  All right.

3           MR. JONES:  Again, I'm not sure what else -- what

4   more there is to say.  We did believe -- do believe that if

5   you read the -- our reading of the cases has been, ask for

6   permission to file a class proof of claim.  The Court can

7   decide that on the authority issue more likely virtually

8   every court for the last 19 years, more likely the court

9   decides it on the 7023 issues, you know, in the Court's

10  discretion should you allow the claim to go forward as a

11  class.  And you look at all the things that are in the cases

12  on that issue, but we're not here to talk about those today.

13          If it is denied, for either of the authority

14  reason or the 7023 reason, the remedy, at least one of the

15  remedies in the cases is to give some time for some

16  additional notices and additional claims to come in.

17          That is what we read in the cases, that is what we

18  thought was the right thing to do, and that's what we set

19  out to do.  And that's all we've set out to do.

20          So I think that's really kind of where we are.

21  There's a number of other things I could talk about, but I

22  don't think they are particularly germane to the Court's

23  analysis as it's been expressed.

24          We do believe that should the Court deny our

25  request today, on the authority issue, that -- and the order

09-50026-mg    Doc 13454    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 17-03695    Document 1029-1    Filed in TXSB on 11/06/17    Page 39 of 85
Pg 118 of 148

39

1    should be without prejudice so that we can, in fact, take

2    advantage of whatever the rules allow us to do henceforth.

3    We would also ask the Court to -- if going the other way, to

4    give us that time, whatever time the Court deems appropriate

5    to do individual notices and get claims in on as many of

6    these people as we can so that we can try to protect them.

7             And third, I guess there's four things, we would

8    ask the Court to certify to the 5th Circuit, and we would

9    ask the Court to let us have a hearing on the 7023 factors

10   so that we can take up a full record.  Those are the only

11   other things I would ask of the Court if the Court's

12   inclined to go against us on the authority issue.

13            THE COURT:  All right.

14            MR. JONES:  Unless the Court has further questions

15   I will stop.

16            THE COURT:  No, fair enough.  And I -- we started

17   this with effectively opening comments.  Have you made what

18   you intended to be your presentation in the context of the

19   opening comments or -- since you have the podium, you might

20   as well use it to your full advantage to --

21            MR. JONES:  The only other thing I would do, Your

22   Honor, is I would -- I do believe that all of the exhibits

23   should be admitted into evidence as part of the record.

24            THE COURT:  So let me ask you, on the declarations

25   --

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 17-09695   Document 10-29   Filed in TXSB on 11/06/17   Page 40 of 89
Pg 119 of 148

40

```
 1              MR. JONES:  Yes.

 2              THE COURT:  -- which are clearly hearsay --

 3              MR. JONES:  They are.

 4              THE COURT:  -- how do they come in?

 5              MR. JONES:  These are declarations that were

 6  filed, prepared and filed with the District Court in Nevada.

 7              THE COURT:  Sure.

 8              MR. JONES:  They are under penalty of perjury,

 9  they were attached to and filed with the applications for

10  final approval.

11              THE COURT:  Right.  How do they fit then to one of

12  the exceptions under 803 or if you want to argue the

13  doctrine of independent legal significance?

14              MR. JONES:  I --

15              THE COURT:  I don't quite understand how you get

16  there, but I'm happy to hear.

17              MR. JONES:  I have a hard time with the

18  independent legal significance to the extent that they're

19  offered for the truth and the truth appears being that we

20  sent out these notices and that we didn't get any

21  objections.

22              THE COURT:  Right.

23              MR. JONES:  They are -- I guess I would -- the

24  Court's order I believe, final approval orders note, that

25  there were no objections.  These are corroborative of the
```

1    Court's note that there were no objections and no opt-outs.

2              THE COURT:  Right.

3              MR. JONES:  Corroboration is an exception to the

4    hearsay rule.  I would also invoke the catch-all exception

5    to the hearsay rule which is that of, you know, reliable --

6    has all the attributes of reliability.

7              THE COURT:  Did you send the required notice?

8              MR. JONES:  They've had this for months.

9              THE COURT:  So the answer is no?

10             MR. JONES:  No.  For today's purposes, no, I did

11   not.

12             THE COURT:  I really don't understand, because you

13   know I know the answers to this before I ask them.  I'm

14   really surprised --

15             MR. JONES:  I do.

16             THE COURT:  -- especially given what just

17   happened, why you continue to do this.

18             MR. JONES:  I'm sorry, Your Honor, I'm not

19   intending to do anything wrong.  That's not my style.

20             THE COURT:  And so where is the corroboration

21   exception under 803?  I teach evidence, I generally know the

22   rules.  I'm not aware of such a --

23             MR. JONES:  Corroboration?

24             THE COURT:  -- is an exception to 803?

25             MR. JONES:  I think it's not a specific hearsay

09-50026-mg   Doc 13454   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 17-03695   Document 10-29   Filed in TXSB on 11/06/17   Page 42 of 89
Pg 121 of 148

42

1 | objection and it's not an exception under 803, Your Honor,

2 | it's considered not offering it for the truth under 801.

3 | It's offered to corroborate.

4 | THE COURT:  So it's offered to -- so the

5 | statements of these individuals are offered to corroborate

6 | what?

7 | MR. JONES:  What the district court observed in

8 | its orders, noting that there were no objections and no opt-

9 | outs.

10 | THE COURT:  All right.

11 | MR. JONES:  We think it's important that there

12 | were no objections.

13 | THE COURT:  Fair enough.

14 | MR. JONES:  Okay.

15 | THE COURT:  I didn't really -- I never appreciated

16 | that a federal judge's order needed corroboration.  I mean,

17 | that's interesting.  All right.  With respect to the offer

18 | has been made of -- let me see if I can go through these.

19 | The declarations, Exhibits 1, 2 -- I guess 1 and

20 | 2, there is an objection, I think the objection's proper, I

21 | will not -- I will deny the admission of 1 and 2.

22 | Then we had -- I never quite frankly understood

23 | the offer and then the debtor's argument with respect to

24 | Exhibits 9, 10, 11, 12, 13 and 14.  What I will do -- let me

25 | propose this.  I'll simply take judicial notice of the fact

Case 17-03695   Document 1029-14   Filed in TXSB on 11/06/17   Page 43 of 69

1   that they exist.  I won't take judicial notice of any

2   specific fact within the order, I think that would be

3   improper.  But I do think that I can take judicial notice of

4   the fact that these orders exist.  Does anybody have any

5   objection to that?

6          MS. ROTMAN:  No objection, Your Honor.

7          THE COURT:  All right.  Mr. Jones, any specific

8   objection?

9          MR. JONES:  No, Your Honor.

10          THE COURT:  Then I will take judicial notice of

11   Exhibits 9, 10, 11, 12, 13 and 14.

12          All right.  Anything else, Mr. Jones?

13          MR. JONES:  No, Your Honor, no.

14          THE COURT:  All right.  Thank you.

15          MR. JONES:  Thank you.

16          THE COURT:  Ms. Rotman, do you or whoever is

17   taking the lead, do you wish to make any statement or make

18   any offer?  I kind of took it all at once, which is probably

19   unfair but I did it anyway.

20          MS. ROTMAN:  Your Honor, I -- Anna Rotman of

21   Kirkland & Ellis on behalf of the debtors.  I actually think

22   I will go ahead and go through my presentation for appellate

23   purposes --

24          THE COURT:  All right.

25          MS. ROTMAN:  -- given what counsel has said.  And

09-50026-mg    Doc 14354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 1-17-93695    Document 1029-11    Filed in TXSB on 11/06/17    Page 44 of 89
Pg 123 of 148

44

1    so in that vein, let me just hand up a notebook to you as

2    well as to opposing counsel.

3            THE COURT:  All right.  And I assume Mr. Jones and

4    Mr. Monsour have a copy of these?

5            MS. ROTMAN:  They have a copy.

6            THE COURT:  All right.  Thank you.

7            MS. ROTMAN:  So we could start by going just

8    through the documents that we intend to show to the Court.

9    Some are exhibits, but then others are just things that you

10   would take -- that you've already taken judicial notice of.

11           So, in particular, tabs 5 through 10 are the

12   documents that you just took judicial notice of.

13           THE COURT:  All right.

14           MS. ROTMAN:  And, in fact, they have the same

15   label as Class Claimants' Exhibit.

16           THE COURT:  All right.  So that we just have a

17   good clean record, Mr. Jones, on the representation that the

18   Debtor's Exhibits 5, 6, 7, 8, 9 and 10 are duplicates of

19   yours for which I took judicial notice, any objection to my

20   simply taking judicial notice again?

21           MR. JONES:  No, Your Honor.

22           THE COURT:  All right.  Then I will take judicial

23   notice of Debtor's Exhibits 5, 6, 7, 8, 9 and 10.

24           MS. ROTMAN:  Okay.  And so then Tabs 1 through 4

25   here, Your Honor, are the proofs of claim that have been

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 17-03695   Document 1029   Filed in TXSB on 11/06/17   Page 48 of 89
Pg 124 of 148

45

 1 filed by the purported classes.  These are on the court's

 2 docket and we would ask that they be admitted as well.  It's

 3 proof of claim 732, proof of claim 13, proof of claim 24 and

 4 proof of claim 26.

 5          THE COURT:  All right.  So, Mr. Jones, I want to

 6 make sure that I understand.  So I'm looking at Exhibits 1,

 7 2, 3 and 4 and they're more or less the same form.  So I

 8 thought that you told me, and perhaps I just misunderstood,

 9 that the proofs of claim were filed -- I think your words by

10 or on behalf of the class members.  And they are titled --

11 where it says, "Who is the current creditor," it says "with

12 Conson (phonetic) class members," I'm looking at 1.  In

13 fact, there is no class.

14          MR. JONES:  Okay.  What I believe I said, Your

15 Honor, was that the motion, Docket No. 767 was filed on --

16 by and on behalf of the named plaintiffs as representatives

17 of its class.

18          THE COURT:  I got it.  All right.  So the motion

19 was filed by or on behalf of the individuals, the proofs of

20 claims themselves, best I can tell, were filed by lawyers on

21 behalf of classes that have been denied; is that correct?

22          MR. JONES:  That is correct.

23          THE COURT:  Okay.

24          MR. JONES:  But if I may?

25          THE COURT:  Sure.

09-50026-mg    Doc 14354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 17-03695    Document 1022-11    Filed in TXSB on 11/06/17    Page 48 of 89
Pg 125 of 148

46

```
 1              MR. JONES:  These were filed contemporaneous with
 2    the motion, that was the idea.  I also would note, Your
 3    Honor, that if you look at, for example, the bottom of page
 4    3 of Exhibit No. 3.
 5              THE COURT:  You said page 3 --
 6              MR. JONES:  Of Exhibit 3.
 7              THE COURT:  -- of Exhibit 3, okay.
 8              MR. JONES:  The -- first of all in part 3, the box
 9    is checked and the creditor's attorney or authorized agent
10    with an asterisk and the asterisk directs the Court and
11    everybody else's attention to the bottom of the page, which
12    says authority on behalf of the putative class is being
13    sought per the motion that is being filed along with these
14    proofs of claim.
15              THE COURT:  Got it.  Is that in all of them?
16              MR. JONES:  It is supposed to be.
17              THE COURT:  I do not see it.  I figured there was
18    a reason that you pointed me to 3 instead of 1.
19              MR. JONES:  It's in Exhibits 3 and 4.
20              THE COURT:  Right.  Not 1 and 2.
21              MR. JONES:  Not I do see it at the bottom of 1 and
22    2.  Ah, I'm sorry, Your Honor --
23              THE COURT:  It is?
24              MR. JONES:  -- in a different place in 1 and 2.
25    It's in a different place at 1 and 2.  It's not at the very
```

09-50026-mg    Doc 14354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 17-03695-Document 107-9    Filed-in-TXSB on 11/06/17    Page 47 of 69
Pg 126 of 148

47

 1  bottom of the page, it's sort of over to the right in

 2  Section 3.

 3           THE COURT:  I see that.  Okay.  Thank you.

 4           All right.  Any objection to my admitting Exhibits

 5  1, 2, 3 and 4?

 6           MR. JONES:  No.

 7           THE COURT:  All right.  Then Exhibits 1, 2, 3 and

 8  4 are admitted.

 9           All right.  Ms. Rotman, that takes us to --

10       (Debtor's Exhibits Nos. 1 through 4 received in

11  evidence.)

12           MS. ROTMAN:  Tab 7, I would direct the Court to.

13           THE COURT:  All right.

14           MS. ROTMAN:  Ah, I apologize, Your Honor, I do not

15  want to go to tab 7.

16           THE COURT:  So we take judicial notice of --

17           MS. ROTMAN:  Yes.

18           THE COURT:  -- 5, 6, 7, 8, 9 and 10.

19           MS. ROTMAN:  Correct, I apologize.

20           THE COURT:  All right.  So we go to 11?

21           MS. ROTMAN:  So I'm going to go to -- actually I'm

22  going to skip and go to tab 13.

23           THE COURT:  Okay.

24           MS. ROTMAN:  This is the Nevada District Court's

25  order denying the motions for class certification.  We would

1 | ask the Court to take judicial notice of under Rule 201.

2 |         THE COURT:  All right.  Any objection, Mr. Jones?

3 |         MR. JONES:  No objection, Your Honor.

4 |         THE COURT:  All right.  Then I'll take judicial

5 | notice of Exhibit 13.

6 |         MS. ROTMAN:  And then the last one behind tab 14

7 | that we'd like to discuss is the verified statement of

8 | Polsinelli pursuant to Federal Rule of Bankruptcy Procedure

9 | 2019.  It's Docket 461 in this case, and we would ask that

10 | it come into evidence.

11 |         THE COURT:  Any objection?

12 |         MR. JONES:  No, Your Honor.

13 |         THE COURT:  All right.  Then I will admit Exhibit

14 | 14.

15 |     (Debtor's Exhibit No. 14 received in evidence.)

16 |         MS. ROTMAN:  Thank you, Your Honor.  Those are the

17 | only exhibits and documents that we would cover.

18 |         THE COURT:  All right.  Thank you.

19 |         MS. ROTMAN:  Okay.  So with that, I've handed up

20 | to the Court and to opposing counsel the presentation that

21 | we'll go through.  And I'll start with the first slide.

22 | Mr. Jones spoke a lot but there was not a lot of mention of

23 | authority.

24 |         And, of course, the point here is that if they do

25 | not have the authority, then they don't have authority to go

1    forward with anything further here.  Bankruptcy Rule 3001(b)

2    insists that a proof of claim shall be executed by the

3    creditor's authorized agent.  And there is a case here out

4    of the Southern District that I think Judge Bohm wrote,

5    where he makes the point that the use of the qualification

6    authorized is important.  It reflects the Supreme Court's

7    intention that an entity that files a proof of claim on

8    another's behalf have expressed, not merely implied

9    permission to do so.

10        And, you know, it's not surprising a proof of

11    claim has been analogized as I understand it to a verified

12    complaint.  It's significant, the weight that's being placed

13    on it is important in the context of a restructuring.

14        And so in the class action context, what we find

15    is that a putative class representative must have expressed

16    authorization from the class members.  And there is a

17    Southern District of Texas bankruptcy case that says that,

18    *In Re North Bay General Hospital*, and also the Northern

19    District of Texas case, *In Re First Class Financial*.  Both

20    talk about the Court needing to not allowing a class proof

21    of claim on behalf of a group of creditors without

22    authorization from each creditor.

23        And if we just take a step back and think why that

24    makes sense.  Express authorization protects creditors.

25    There's even the language that discusses it in terms of a

1 fiduciary relationship.  And I would refer to the *In Re*

2 *Ionosphere Clubs* case that is a Southern District of New

3 York, 1989 but it has this fiduciary relationship language

4 in talking about what the relationship is between the

5 creditor and its agent, the lawyer or whoever is filing the

6 proof of claim on its behalf.

7    In that case, the Court noted that the fiduciary

8 relationship results from a manifestation of consent by one

9 person to another, that the other shall act on its behalf

10 and subject to the control and consent of the person to act.

11 It's critical in the agency relationship that there is this

12 manifestation by the principal to the agent, that the agent

13 may act on its account.

14    And here it's particularly important because I've

15 called out here this is some language from the order denying

16 the motion for class certification, which I believe we

17 admitted as Exhibit 7.

18    So in this exhibit what we see is that the Court

19 in noting part of the reason why it was denying class

20 certification is that the plaintiff's own experts had used

21 different methods to calculate injury resulting in disparate

22 estimations of what percentage of class members were harmed.

23    So in this situation where you have unnamed

24 plaintiffs that may not have the same damages according to

25 the plaintiff's own experts, express authorization is

1    critical to give the unnamed plaintiffs an opportunity to

2    decide if they want such a relationship to exist with

3    respect to their proof of claim in this proceeding.  Of

4    course, express authorization also ensures that the interest

5    of the principals are adequately addressed by the agent.

6          In the 10th Circuit case that we've referred to *In*

7    *Re Standard Metals Corp.*, what you see is that creditors can

8    decide to file a proof of claim and instruct an agent to do

9    so.  But Bankruptcy Rule 3001(b) does not allow an agent to

10   decide to file a proof of claim and then inform the creditor

11   after the fact, because that is contrary to the notion that

12   the interest of the principal need to be adequately

13   addressed by the agent.

14         And, of course, it also means that express

15   authorization relays the confusion and conflict that may

16   subject the claimant to sanctions or other forms of

17   liability in this court.  I mean, we know that as soon as

18   someone files a proof of claim in this court, the debtor can

19   object to it, take action against the claimant.  And so

20   there needs to be some notification and authorization before

21   someone is brought within the purview of this Court.  And

22   therefore, we have the express authorization requirement.

23         Okay.  It's critical to point out now that the MDR

24   counsel, not the MDR plaintiffs seek to act on behalf of all

25   the purported class members.  That's who is claiming that

1   they have authorization here.

2          And it's important because in the cases that they

3   rely on from other circuits, they admitted from the 7th

4   Circuit and the 11th Circuit what's being analyzed there is

5   whether purported class representatives may be an agent for

6   others.  They don't discuss whether purported class counsel

7   can be an agent.

8          So in that sense, those cases are not relevant to

9   the inquiry here.  Here, we've heard the presentation from

10  opposing counsel and they have not admitted or they have not

11  provided any evidence of express authorization to act on

12  behalf of each of the purported class members here.

13         We would also point out that in the MDL's counsel

14  2019 statement, and that is the last exhibit that Your Honor

15  entered, there they expressly limit their representation to

16  the parties that are below, and the parties that are below

17  are the named plaintiffs in the class representatives in

18  those cases.

19         This is critical because this was their

20  opportunity to put their money where the mouth is, or

21  whatever the expression is, by submitting under oath

22  everyone whom they represent.  It would've been their

23  opportunity and also potentially their obligation to set

24  forth the name of each entity that they represent.

25         And what you see again in their 2019 statement is

1   the names of the individual class members, the plaintiffs,

2   but not even a reference to that they were also seeking to

3   represent the unnamed class representative or the unnamed

4   class members.

5           So this basically means we're in a situation where

6   the class hasn't been certified, class counsel haven't been

7   certified, class reps haven't been certified, and without

8   authority, they've submitted thousands of unnamed creditors

9   to this court without -- admittedly without their knowledge.

10          I also point out that the proofs of claim and this

11  seems to have been addressed, so I don't want to gild the

12  lily here, but as your noted in looking at the proofs of

13  claim, they filed them on behalf of the Wisconsin class

14  members for example, or the Kansas class members.

15          And, yes, they did put in their asterisk with an

16  explanation as to why, but to be clear, they were filing the

17  proofs of claim on behalf of non-existent classes.  Like

18  when we filed this restructuring and we started these cases,

19  there was no class.  That's the status quo.

20          So if we take a step back, at the time of the

21  bankruptcy case was filed, by the time of the general bar

22  date they didn't get the district court to say they

23  represented a class.  They didn't get the bankruptcy court

24  to apply Rule 7023 to say they represented a class.  Instead

25  at the last hearing, they called their 7023 motion a

 1  placeholder and they filed a proof of claim that they

 2  weren't authorized to file either by the district court or

 3  by their clients, referring to classes that haven't been

 4  certified.

 5          So that's sort of the procedural swamp, I guess,

 6  that we find ourselves in.  And if we're just looking to

 7  having express authorization, it's their burden to prove it.

 8  Because at this point, we have put forth evidence, and they

 9  have on their own admission put forth evidence that they

10  don't have express authorization.

11          So they do direct the Court's attention to this

12  case called *Wilson*.  It is a case out of the Eastern

13  District of Louisiana in 1992, and it is a case that

14  discusses whether -- what has to happen for class counsel to

15  be able to have authority to represent purported class

16  members.

17          What it doesn't address is how putative class

18  counsel establishes express authorization whereas is the

19  case here, authorization from the MDL court has been denied,

20  and authorization is being challenged in the bankruptcy

21  court.  So that's the situation here.

22          In that situation as the Northern District of

23  Texas tells us in the *In Re Great Western Cities* case, at

24  this point it becomes their burden.  They now need to

25  provide evidence establishing their agency.  And they must

55

1  prove it by a preponderance of the evidence.

2         Now, the MDL points -- I mean, at this point

3  actually we could just stop because they are purporting I

4  believe to have express authorization or to have

5  authorization on behalf of the MDL counsel, but I'm going to

6  go forward with just this tangent in terms of whether the

7  MDL plaintiffs could prove express authorization, because

8  the cases that they rely on so heavily in the 7th Circuit

9  and the 11th Circuit are in that procedural posture.

10        And to be clear, we're already outside of our

11  facts, but again, if we look at whether the MDL plaintiffs

12  have express authorization, they do not.  The Nevada

13  District Court already rejected the purported class action,

14  and the Supreme Court has written that neither a proposed

15  class action nor a rejected class action may bind non-

16  parties.

17        What does have this effect is a class action

18  approved under Rule 23.  Well, we don't have that.  So we

19  have a rejected class action.  It can't bind non-parties.

20        They make much of the fact that the 9th Circuit,

21  in its discretion, that's the standard, that's what the

22  order says, has decided to hear this interlocutory appeal,

23  and of course we agree with Your Honor that it is not for us

24  to try to get into the heads of the 9th Circuit and surmise

25  why they decided to do this.

09-50026-mg    Doc 14354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 17-03695    Document 70-29    Filed in TXSB on 11/06/17    Page 58 of 69
Pg 135 of 148

56

1          I would point out that it's not evidence of

2    anything relevant here.  Because if the inquiry here is

3    authorization, the fact that the 9th Circuit is going to

4    hear this interlocutory appeal isn't evidence of class

5    certification, let alone express authorization of unnamed

6    class members that they can file this proof of claim on

7    their behalf.

8          Yes, they've appealed.  I will say they're in no

9    rush to get a decision.  My -- the counsel who has been

10   representing the debtors who are parties to this, has

11   informed me that they exercised their right to an additional

12   30 days to file their brief.  So it's not as if this is

13   going -- moving forward with alacrity.

14         And, you know, again the 9th Circuit has affirmed

15   orders denying class certification after granting an

16   interlocutory appeal.

17         So here the divisions test must be satisfied.

18   They must show that they have express authorization.  The

19   cases in the Northern District of Texas and the Southern

20   District of Texas say so.  And they haven't provided any

21   evidence that they have done so.

22         Instead they have these allegations of implied

23   authorization and I'll touch on them briefly, not because

24   Mr. Jones argued them very much, but just because that was I

25   think what they were trying to get at in their briefing.

1          The Bankruptcy Rule 3001(b) doesn't permit implied

2     authorization.  That language is not in there.  And the MDR

3     counsel cite no cases in support of their theory that

4     implied authorization here or that it would suffice.

5          So they're just basically saying, well, we've been

6     representing them for 15 years, so of course everyone

7     understands that we've been representing them, sort of a

8     circular thing where when you look at the evidence, to the

9     extent that they're saying well, we were certified as

10     settlement counsel, therefore we must sort of by analogy

11     also eventually be certified as class counsel with respect

12     to these particular debtors.

13          You know, if you look at the MDL settlement order,

14     which you've taken judicial notice of, first it cannot be

15     offered as or received into evidence and it repeatedly says

16     throughout the document that this is for settlement

17     purposes, for settlement purposes, for settlement purposes.

18          So it's not evidence of anything with respect to

19     whether they have express authorization here.  The debtors

20     weren't defendants in those settlements.

21          The scope of those settlements and the authority

22     that was received there certainly did not include each

23     purported unnamed class member authorization MDL counsel to

24     file proofs of claim against these debtors in these Chapter

25     11 cases, which is what they would need to show in order to

Case 17-03695    Document 102-9    Filed in TXSB on 11/06/17    Page 58 of 69

58

1    meet their burden.

2         So where does this leave us?  It leaves us with a

3    defective proof of claim, because they can't establish the

4    requisite express agency.  And in this context, the Northern

5    District of Texas has characterized the proof of claim as

6    being defective.  Implied agency, they also don't get there,

7    and it wouldn't suffice anyway.

8         So the motion to certify the class proof of claim

9    should be denied with prejudice.

10        Now, I will -- I want to acknowledge what the

11   Court has said.  We know we have the burden of proof on

12   notice, and they've alleged lack of notice like eight times

13   during their presentation.  They've also acknowledged they

14   have no idea who those people are, and we've actually, as I

15   understand it again from Mr. Roebeck, we've made an effort

16   or have asked the other side to have a list of the 1,500

17   folks from their database, they haven't provided it.

18        But I just want -- as the Court had mentioned in

19   our status conference last week we are very aware of the

20   burden.  We know this is something that we will have to deal

21   with at confirmation, and we will deal with it there and

22   we're confident with what we've done.

23        That's my presentation, Your Honor, I'll take any

24   questions.

25             THE COURT:  All right.  Thank you.  I don't have

1    questions.

2              MS. ROTMAN:  Okay.  Thank you.

3              THE COURT:  All right.  Mr. Jones, I'll give you

4    the last word.

5              MR. JONES:  Thank you, Your Honor.

6              THE COURT:  Uh-huh.

7              MR. JONES:  There's a number of things that I

8    think I do need to respond to.

9              THE COURT:  Okay.

10             MR. JONES:  But I'll keep it short.  If a party

11   needs expressed authorization in order to proceed on behalf

12   of a class of creditors, then the *American Reserve* case is

13   wrong --

14             THE COURT:  Yeah, I get that.

15             MR. JONES:  -- the *Charter* case is wrong, all

16   those cases are wrong.

17             THE COURT:  I get that.

18             MR. JONES:  The cases on which they have relied

19   *First Plus, Great Western*, those are the cases that the

20   Northern District in *In Re Craft* said we're not going to

21   follow those, they are the minority rule, they're not

22   persuasive.  The right rule is *American Reserve*.

23             So really I think as the Court has phrased it, the

24   issue is not we have to have express authorization or

25   implied, the question I think for the Court is do we have

Case 17-03695   Document 1079   Filed in TXSB on 11/06/17   Page 60 of 89

60

1    implied authorization if under the facts of this case we

2    don't have a final order, there is an order of the district

3    court saying that we're not class counsel because there

4    isn't a class.

5            We believe your court can get to implied

6    authorization from the other factors that have been set

7    forth.  The fact that we've been representing these parties

8    for more than decade, the fact that nobody has opted out of

9    these class settlements, despite being noticed about them

10   twice.  There are plenty of opportunities for people to

11   protect themselves in members of a purported class,

12   primarily by the ability to opt out of the classes.

13           THE COURT:  So let me ask you this, because I'm

14   struggling with the actual proofs of claim themselves.  I

15   mean, you do agree that there is no class as we sit here

16   today.  There was no class at the time the proof of claim

17   was filed.  And I'm curious and I'll just look at Exhibit 1,

18   and I don't know Wizo Tosky (phonetic), whoever that is.

19           MR. JONES:  Yes, he's one of the -- the bankruptcy

20   attorney at our -- co-counsel up in Wisconsin, Your Honor.

21           THE COURT:  I'm curious as to how he could have

22   signed a proof of claim with the representations that go

23   with signing a proof of claim when he knew that the class

24   didn't exist.  I'm just -- I'm very puzzled by that.

25           I mean, it would have been one thing to say, I

```
 1  filed this proof of claim on behalf of Jim Smith and Adam
 2  Jones as the class representatives of the putative class,
 3  you know, in case blah, blah, blah, which has been denied
 4  but is now on appeal.  That would've been transparency.
 5          I mean, you read this proof of claim and it says
 6  who is the current creditor, and I'm looking at 1, says
 7  "Wisconsin class members in 2:03-CV-SS1431" and I assume
 8  those are the judge's initials.  And when he signed this on
 9  September the 14th, 2017, he knew that there was no class.
10          MR. JONES:  Your Honor, I -- in our view,
11  separating the proofs of claim from the motion that was
12  filed with those proofs of claim --
13          THE COURT:  Uh-huh.
14          MR. JONES:  -- and when the proofs of claim
15  specifically referenced the motion --
16          THE COURT:  Uh-huh.
17          MR. JONES:  -- and the motion very fully said,
18  these named plaintiffs are seeking leave to file these
19  proofs of claim on behalf of the members of the putative
20  classes, that's -- we think that was clear as to what was
21  happening.
22          In hindsight, again, it might have been better for
23  the actual proofs of claim to have mirrored the same
24  language.
25          THE COURT:  You do know that there's a docket for
```

09-50026-mg    Doc 14354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 17-03695    Document 102-9    Filed in TXSB on 11/06/19    Page 62 of 69
Pg 141 of 148

62

```
 1   pleadings and then there's a different separate docket for
 2   proofs of claim, right?
 3            MR. JONES:  I take the Court's word for that, Your
 4   Honor.
 5            THE COURT:  And so --
 6            MR. JONES:  The --
 7            THE COURT:  -- you know --
 8            MR. JONES:  The --
 9            THE COURT:  -- honesty is not just a commodity
10   that gets bought and traded.
11            MR. JONES:  I --
12            THE COURT:  I mean, it just --
13            MR. JONES:  I'm -- Your Honor, I'm --
14            THE COURT:  Did you wish to say something,
15   Mr. Monsour?  And I'd be very careful, given what you just
16   did.  Is there something you wish to say other than I
17   apologize for being disrespectful?
18            MR. MONSOUR:  I apologize for being disrespectful,
19   Your Honor, but there's no attempt to be dishonest, and I
20   apologize.  I think that is being interpreted as --
21            THE COURT:  Well, I saw and heard what you just
22   did.  That is incredibly disrespectful and I know that you
23   think you can get away with things because we've been
24   friends for a long time --
25            MR. MONSOUR:  No, sir, that's not the intent.
```

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 17-03695   Document 97-29   Filed in TXSB on 11/06/17   Page 63 of 89
Pg 142 of 148

63

```
 1              THE COURT:  -- I will just tell you -- well, what
 2   was the intent in being disrespectful?  I both heard you and
 3   saw you.
 4              MR. MONSOUR:  In my mind I was thinking excusable
 5   neglect.
 6              THE COURT:  Okay.  And so why would that justify
 7   what you just did?  Making the sound and the gesture, I saw
 8   both of them.  I saw one and heard the other.  What could
 9   possibly justify what you just did?
10              MR. MONSOUR:  Obviously --
11              THE COURT:  What could possibly justify as a
12   lawyer licensed to practice before the federal courts in the
13   Southern District of Texas, what could possibly justify what
14   you just did?  I know of no answer other than nothing.
15              Mr. Jones, you just used up your time.
16              MR. JONES:  Thank you, Your Honor.
17              THE COURT:  Yes, sir.
18                           COURT'S RULING
19              THE COURT:  All right.  I have before me the
20   motion and memorandum of law of the Natural Gas Litigation
21   Midwest Class Plaintiffs in support of allowance of class
22   proofs of claim filed at Docket No. 767.
23              I do find that I have jurisdiction over the matter
24   pursuant to 28 U.S.C. Section 1334.  I find that resolution
25   of the motion constitutes a core proceeding under 28 U.S.C.
```

09-50026-mg    Doc 14354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 17-03695    Document 10-29    Filed in TXSB on 11/06/17    Page 64 of 69
Pg 143 of 148

64

1  Section 157.  I further find that I have the requisite

2  constitutional authority to enter a final order with respect

3  to the motion.  Further, I find to the extent that I am

4  wrong in that conclusion, that the parties have consented

5  and that under the *Executive Benefits* decision, I therefore

6  have the requisite authority to enter a final order.

7       The issue is limited by the Court for the reasons

8  that I expressed earlier.  I'll reiterate them again.  I am

9  faced with a situation where a United States District Judge

10  has denied class certification.  By definition there is no

11  class, there is no class counsel.

12       I have heard no substantive evidence that would

13  suggest that for a class that doesn't exist pursuant to a

14  final order, it is a final order, although I acknowledge

15  that the order is on appeal, federal law is unambiguous.  A

16  final order is to be treated as a final order until such

17  time as it is reversed or modified.

18       There simply isn't a credible argument that there

19  is the requisite authority to file proofs of claim.  To do

20  so would undermine the order of the district court entered

21  in the Nevada case.  As I expressed earlier that I'm not

22  able to allow a collateral attack on a final order entered

23  by another federal court.

24       If that order is to be undone, it is for the 9th

25  Circuit or the United States Supreme Court to do.  It is not

09-50026-mg   Doc 13454   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 1:17-cv-09695   Document 10-29   Filed 11/29/19 in NYSD on 11/06/17   Page 68 of 89
Pg 144 of 148

65

1   for a bankruptcy court in another jurisdiction to permit.

2   Therefore, with respect to the issue of authority, I find

3   there is no authority.  There is no class.

4          The proofs of claim themselves are troubling.

5   I'll reiterate I still don't believe that I have the

6   accurate picture as to what's really going on.  I have

7   further witnessed an obscurity today in the form of some

8   troubling statements that I can conclude were intended for

9   no other reason than to mislead me.  And I think that I've

10  earned more than that, I certainly think that the position

11  is entitled to more than that.  Personal relationships don't

12  justify that type of behavior.  I'm not going to do anything

13  about it, because I know that the lawyers know better.  Why

14  they chose to push the envelope, I don't know.

15         But to the extent that I've granted a Mulligan, as

16  in golf, there is only one.  I wouldn't try it again.  And

17  that's all I'm going to say with respect to the matter.

18         So I am going to find there is no authority for

19  the reasons that I've expressed, there is no class, there is

20  no evidence that there is any authority by the folks signing

21  the proofs of claim or proceeding with the motion today.

22         I will also go one step further and tell you until

23  I get -- until I feel comfortable that I've been told the

24  truth, to the extent that I have discretion, I would not

25  exercise it.  Discretion is intended to achieve equity.

Case 17-03695   Document 10-29   Filed in TXSB on 11/06/17   Page 88 of 89

1  Equity demands transparency and absolute honesty.  I would

2  not exercise discretion in this case based on what I've been

3  told.

4          Mr. Jones, you asked me to do a couple of

5  different things.  You asked me -- I want to make sure I got

6  them all.  You asked me to deny the motion without

7  prejudice, that was number one, correct?

8          MR. JONES:  Yes, Your Honor.

9          THE COURT:  This denial is without prejudice.  I

10 think Rule 3008 does that, but to the extent that there's

11 any question because I do not want there to be any confusion

12 about that issue, the denial is without prejudice.

13         The other thing that you asked me to do is you

14 asked me to certify this direct to the 5th Circuit, is that

15 what you asked?

16         MR. JONES:  Yes, Your Honor.

17         THE COURT:  That I decline to do.  There's been no

18 showing of the required standard for a direct appeal to the

19 5th Circuit.  In my mind, this is an issue that is easily

20 addressed by a district court looking at the same record

21 that I looked at.  I don't -- I quite honestly don't

22 understand how there could be a different conclusion based

23 on what I've been shown.  But I see no compelling reason

24 that the normal appellant process should not be followed.

25 And again, I've received no evidence which would justify a

09-50026-mg    Doc 14354    Filed 07/30/18    Entered 07/30/18 10:49:14    Main Document
Case 17-03695    Document 70-29    Filed in TXSB on 11/06/17    Page 67 of 89
Pg 146 of 148

67

 1   direct appeal.

 2          Did I -- did you ask me to do something else that

 3   I omitted?

 4          MR. JONES:  The only other thing we asked, Your

 5   Honor, is in the case you denied us on the basis of

 6   authority, that we be allowed nonetheless to have a hearing

 7   on the Rule 7023 discretionary practice so that to whichever

 8   court we take an appeal, if we do, they would have a full

 9   record.

10          THE COURT:  All right.

11          MR. JONES:  So that's the other ask that we had.

12          THE COURT:  I got it.  In order to do that, I

13   would have to feel differently about the authority question

14   than I do.  So I will deny that request.

15          Ms. Rotman, what I would like for you to do is to

16   prepare hopefully will be a short and direct order that is

17   consistent with my ruling, run that by Mr. Jones and

18   Mr. Monsour for approval as to form only, and I will put on

19   the record that by approving this to form, you're not

20   waiving any right of review or appeal that you may have.

21   You are simply confirming that the form of order is

22   consistent with the ruling that I've made on the record

23   today.  Does that give you enough comfort, Mr. Jones?

24          MR. JONES:  Yes, Your Honor.

25          THE COURT:  All right.  Thank you, sir.

```
 1              It seems to me this isn't too terribly difficult.
 2    I think we can -- today is Wednesday.  I think we can get
 3    that by maybe next Wednesday?
 4              MS. ROTMAN:  Absolutely, Your Honor.
 5              THE COURT:  All right.  With respect to the notice
 6    issue, given -- you know, just given the circumstances I
 7    quite frankly don't know how to have a hearing from members
 8    of -- even members of the putative class when the class has
 9    been denied, I have trouble in my mind trying to figure out
10    what good that would do, because I could very well turn out
11    to be wrong in my definition of the class.
12              The debtor has got an issue for confirmation.  You
13    already know that.  We'll certainly take that up.  I want to
14    be very clear, Mr. Jones, so long as you have authority from
15    the individuals that you tell me that you represent, you
16    certainly have standing to participate in the confirmation
17    process, raise any objections, or to point out to me any
18    deficiencies or non-compliance with Section 1129 or 1125
19    that you think are appropriate.
20              I will certainly take those up.  I certainly think
21    that you have raised an issue that will be at the forefront
22    of my examination of the confirmation process, and we'll
23    just have to wait and see where that goes.  All right?
24              Anything else we need to do today?
25              MS. ROTMAN:  No, Your Honor.
```

09-50026-mg   Doc 14354   Filed 07/30/18   Entered 07/30/18 10:49:14   Main Document
Case 17-03695   Document 1029   Filed in TXSB on 11/06/17   Page 69 of 69
Pg 148 of 148

69

```
1              THE COURT:  All right.  Thank you, everyone, safe
2    travels.
3              MR. JONES:  Thank you, Your Honor.
4              THE CLERK:  All rise.
5         (Proceedings concluded at 5:13 p.m.)
6                        *  *  *  *  *
7              I certify that the foregoing is a correct
8    transcript to the best of my ability produced from the
9    electronic sound recording of the proceedings in the above-
10   entitled matter.
11   /S/ MARY D. HENRY
12   CERTIFIED BY THE AMERICAN ASSOCIATION OF
13   ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**D-337
14   JUDICIAL TRANSCRIBERS OF TEXAS, LLC
15   JTT TRANSCRIPT #57539
16   DATE:  NOVEMBER 5, 2017
17
18
19
20
21
22
23
24
25
```