UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 09-50026-mg |
|  | . | Chapter 11 |
|  | . |  |
| MOTORS LIQUIDATION COMPANY, | . | (Jointly administered) |
| et al., f/k/a GENERAL | . |  |
| MOTORS CORP., et al, | . | One Bowling Green |
|  | . | New York, NY 10004 |
| Debtors. | . |  |
|  | . | Thursday, July 19, 2018 |
|  | . | 2:09 p.m. |

. . . . . . . . . . . . . . .

TRANSCRIPT OF (CC: DOC# 14338, 14331, 14332, 14340, 14344)
ORAL ARGUMENT REGARDING THE APPLICATION OF FED.R.CIV.PROC. 23
TO THE PENDING SETTLEMENT APPROVAL AND CLAIMS ESTIMATE MOTION
BEFORE THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For General Motors LLC: | King & Spalding, LLP<br>By:  ARTHUR J. STEINBERG, ESQ.<br>     SCOTT DAVIDSON, ESQ.<br>1185 Avenue of the Americas<br>New York, NY 10036<br>(212) 556-2158 |
| For the GUC Trust: | Drinker, Biddle & Reath LLP<br>By:  KRISTIN K. GOING, ESQ.<br>1177 Avenue of the Americas<br>41st Floor<br>New York, New York 10036-2714<br>(212) 248-3140 |
| For the Ignition Switch<br>Plaintiffs and Certain<br>Non-Ignition Switch<br>Plaintiffs: | Brown Rudnick LLP<br>By:  EDWARD S. WEISFELNER, ESQ.<br>     HOWARD S. STEEL, ESQ.<br>7 Times Square<br>New York, New York 10036<br>(212) 209-4917 |

APPEARANCES CONTINUED.

| | |
|---|---|
| Audio Operator: | Karen, ECR |
| Transcription Company: | Access Transcripts, LLC<br>10110 Youngwood Lane<br>Fishers, IN 46038<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

```
APPEARANCES (Continued):

For Personal Injury        Goodwin Procter LLP
Accident Plaintiffs:       By:  WILLIAM P. WEINTRAUB, ESQ.
                           The New York Times Building
                           620 Eighth Avenue
                           New York, NY 10018-1405
                           (212) 813-8839

For New GM:                Paul, Weiss, Rifkind, Wharton &
                           Garrison LLP
                           By:  KYLE J. KIMPLER, ESQ.
                                PAUL M. BASTA, ESQ.
                           1285 Avenue of the Americas
                           New York, NY 10019-6064
                           (212) 373-3023

                           Kirkland & Ellis LLP
                           By:  MARK J. NOMELLINI, SR, ESQ.
                           300 North LaSalle Street
                           Chicago, IL 60654
                           (312) 862-2410

TELEPHONIC APPEARANCES:

For the Ignition Switch    Lieff, Cabraser, Heimann & Bernstein
Plaintiffs and Certain     By:  ELIZABETH J. CABRASER, ESQ.
Non-Ignition Switch        275 Battery Street, 29th Floor
Plaintiffs:                San Francisco, CA 94111-3339
                           (415) 956-1000

For Certain Personal       Hilliard Munoz & Gonzales LLP
Injury/Death Plaintiffs:   By:  ROBERT HILLIARD, ESQ.
                           719 South Shoreline Boulevard #500
                           Corpus Christi, Texas  78401
                           (361) 882-1612

For Creditor, Additional   Andrews Myers, P.C.
Ignition Switch            By:  LISA M. NORMAN, ESQ.
Pre-Closing Accident       1885 Saint James Place, 15th Floor
Plaintiffs:                Houston, TX 77056
                           (713) 850-4245
```

3

1          (Proceedings commences at 2:09 p.m.)

2          THE COURT:  Please be seated.  We're here in Motors

3  Liquidation Company, 09-50026.  I have the list of appearances

4  in front of me.  Let's begin with New GM's argument.

5          MR. BASTA:  Good afternoon, Your Honor.  Paul Basta

6  from Paul Weiss on behalf of New GM.  Your Honor, I have an

7  outline to guide my argument.

8          THE COURT:  Okay.

9          MR. BASTA:  It will appear on your screen, and we'll

10  hand copies to our friends on the right here.  Would you like a

11  hard copy, as well?

12          THE COURT:  I will because I sometimes make notes on

13  it.

14          MR. BASTA:  Okay.

15          THE COURT:  Thank you.

16          MR. BASTA:  Your Honor, we have organized our

17  argument today in three sections.  We're happy to go in

18  whatever order Your Honor would like, but we can jump around

19  and answer questions.  The first section is our primary case as

20  to why we believe Rule 23 must be applied to the proposed

21  settlement agreement.  The second section addresses the

22  movants' proposed workaround to Rule 23 and why we believe the

23  workaround does not work.  The third section covers, well, what

24  would happen if Your Honor agreed with us.  We outlined where

25  we are on mediation with the personal injury/wrongful death

4

1   claims, and we can give Your Honor views as to where we could

2   go from here if Your Honor were to agree with us that Rule 23

3   applied.

4        Let me begin with why we believe Rule 23 must be

5   applied to the proposed settlement.  Three distinct threads:

6   First, there's no question that the proposed settlement seeks

7   to assert class claims, and we believe that that violates

8   Musicland, Blockbuster, and the Motors Liquidation case.

9   There's no question that after the settlement agreement is

10  approved, that the class claims are deemed authorized to be

11  filed and filed, and we believe that that violates the agency

12  requirement laid out in American Reserve and Musicland.

13       And then, third, the proposed settlement agreement,

14  without question, seeks to settle class certification issues,

15  and that happens at the settlement agreement approval stage,

16  and we believe that violates Amchem, Borders, and Partsearch.

17  So let's take each one of those in turn.

18       It's crystal clear that the economic loss plaintiffs

19  seek to assert class claims.  Back in 2016, before the Court

20  entered the scheduling order, the plaintiffs told the Court

21  that they would pursue class claims in the bankruptcy.  On

22  December 22nd, the plaintiffs filed their late claims motion

23  seeking to file proposed class claims, and that's laid out in

24  the very beginning of that late claims motion, and they seek to

25  assert class claims on a proposed nationwide basis.

5

1          The plaintiffs argued that they met the requirements

2    for class certification.  They said that individual joinders of

3    all class and sub-class members is impracticable, the class can

4    be readily identified, and the questions of law, in fact,

5    common to the class predominate.  The plaintiffs told the Court

6    that they would seek certification at the appropriate time

7    after the conclusion of discovery in the MDL.

8          This year, one -- in April, one day before signing

9    the proposed settlement agreement, the plaintiffs amended the

10   proposed class claims and continued to proposed nationwide

11   treatment.  In the revised filing, they said that there were no

12   obstacles to proceeding on a class basis and that they believed

13   that class-action treatment was superior to other methods of

14   dealing with the situation.

15         The case law is clear, Your Honor, that absent class

16   certification, a proposed class claim cannot assert claims on

17   behalf of anyone other than the named plaintiffs.  That's laid

18   out in Judge Gerber's decision in Motors Liquidation Company,

19   where the Court said that the claim can be asserted as a class

20   claim if, but only if, it has shown compliance with Rule 23.

21   Blockbuster court held that in determining whether to permit

22   the filing of a class claim, bankruptcy courts must determine

23   that class certification requirements have been met.  Similar

24   rulings in Musicland and in White Motor Company and Chaparral.

25         Second thread:  What is the status of a proposed

6

1  class claim prior to certification?  Does it count as a filed

2  claim?  And, Your Honor, I think that the -- you know, the two

3  most important cases that drive the outcome here are American

4  Reserve Corp. and Amchem.  And American Reserve Corp. is the

5  first case which authorized class claims in bankruptcy.  And in

6  that case, all prior courts that had addressed class claims in

7  bankruptcy got caught up on Section 501 of the Bankruptcy Code

8  that said to file a claim, it has to be filed by the creditor.

9  And Judge Easterbrook, in American Reserve, said that that's

10  not exactly true, that under Rule 3001(b), a claim can be filed

11  either by a creditor or by the creditor's authorized agent, and

12  that the process of certifying the class creates the agency

13  relationship that allows the claim to be an authorized filed

14  claim.

15        The Court says in the middle -- classes are -- excuse

16  me, Your Honor -- not every effort to represent a class will

17  succeed.  The representative agent is an agent only if the

18  class is certified.  And it's this language that ties the whole

19  body of law together because, prior to certification, the class

20  claim is not even a filed claim because there has been no

21  agency authority for the filing of that claim.  And that's why

22  we believe that it's a gating item.

23        The movants take the position that the class claim

24  can be estimated, even though it has not been certified and

25  therefore has not been filed, and that is inconsistent with two

7

1  cases that we found, Your Honor, <u>American Solar King</u> and

2  <u>Lehman</u>, both of which hold that unless you have a filed claim,

3  there is nothing to estimate.

4          THE COURT:  Don't courts in asbestos cases estimate

5  -- I don't know what to call it -- potential claims?

6          MR. BASTA:  Yes.

7          THE COURT:  I mean, they're not filed claims.  Future

8  claims.  They're not even claims under 101.

9          MR. BASTA:  Yes.

10          THE COURT:  But yet bankruptcy courts -- there's

11  quite a few decisions where they -- cases where they do

12  estimate those claims.

13          MR. BASTA:  In -- I can get that a little bit later

14  in the outline, Your Honor, but the --

15          THE COURT:  I gave -- later, all right.

16          MR. BASTA:  No, no, no.  The -- I've done estimation

17  of mass tort cases before.  In those cases, the question is

18  what are you estimating for, and you can estimate for the

19  purposes of creating a reserve or saying I need to set aside

20  this amount of money for the asbestos class, but that's not

21  estimation for allowance purposes.

22          THE COURT:  What happens in most cases, the mass tort

23  cases, where it's been estimated for reserve purposes?  How is

24  it later dealt with?

25          MR. BASTA:  Either there's a settlement or -- a class

8

1  settlement or there is a -- there is an actual allowance

2  process for the claims or on how those claims will actually be

3  allowed, but distributions do not go unless there has been an

4  allowance mechanism.

5         THE COURT:  And procedurally have you dealt with

6  cases where they've been estimated for reserve purposes, and

7  later on you said they are settled on a class basis?

8         MR. BASTA:  They're settled on a class basis, yes.

9         THE COURT:  And when they're settled on a class

10  basis, explain to me how that occurs.

11         MR. BASTA:  Then you would go through the class

12  certification process at that time to determine class

13  certification so that the claims can be allowed.

14         THE COURT:  And have any of those class -- have you

15  been personally involved where there has been a settlement of

16  the class claims that were previously estimated for reserve

17  purposes?

18         MR. BASTA:  I have not, Your Honor.

19         THE COURT:  But has that occurred to your knowledge?

20         MR. BASTA:  I do not know, Your Honor.  I cannot

21  recall.  But I know that the way that this settlement

22  agreement --

23         THE COURT:  I'm not interested in this --

24         MR. BASTA:  I know.

25         THE COURT:  This is what it is, but I'm trying to

 1  understand because I read some of the asbestos cases, for

 2  example.  I didn't read -- I may have read some of the other

 3  mass tort cases, but I definitely read the asbestos cases where

 4  they've estimated.  Yes, it sets up a reserve, but it was

 5  unclear to me what happens later about how claims -- are

 6  individual claims filed?  Are class claims filed?  Does class

 7  certification occur?  How has that been done?

 8          MR. BASTA:  Your Honor, in that scenario, unlike this

 9  scenario where the debtor is still in possession, there would

10  be more tools available to the debtor, I believe, to implement

11  the settlement because, once the debtor had reached an

12  agreement, the debtor could file claims.  There could be an

13  agreement that claims would actually be filed to -- and then

14  they would be allowed through that process.  One of the things

15  that makes this unique is that we are beyond that period of

16  time.

17          THE COURT:  Why can't -- here there is a proposed

18  settlement between the GUC Trust, which is standing in the

19  shoes of Old GM.

20          MR. BASTA:  Right.

21          THE COURT:  Why can't it settle with the signatory

22  plaintiffs to provide for claims of all economic -- we're not

23  -- and you agree that we're not dealing today with personal

24  injury/wrongful death, right?

25          MR. BASTA:  Right.

10

1              THE COURT:  So why can't the GUC Trust agree with the

2      signatory plaintiffs to allow claims or allow the -- in effect

3      treat them as filing the claim?  I understand the amount is

4      still uncertain and they propose an estimation as a way of

5      resolving that.  So, I mean, in -- I guess in the asbestos

6      cases I've read, for example, there was no agreement between

7      the debtor or a successor trust and putative plaintiffs.  Here

8      there is.

9              MR. BASTA:  Right.

10             THE COURT:  Why doesn't that make a difference?

11             MR. BASTA:  Well, I guess the -- I still think the

12     question is they can reach that agreement.  They could reach

13     that agreement with the plaintiffs that have actually filed

14     claims, the two class representatives.  They could reach that

15     agreement, but I don't know how they could reach an agreement

16     to file claims on behalf of the eleven and a half million class

17     representatives.  There still needs to be an agency link so

18     that those people out there in the world that have the eleven

19     and a half, that they're giving the authority for the filing of

20     the claim.

21             Why is that so?  Because it may have been an

22     inapposite question I asked last time, but at the last hearing,

23     I think I asked the question, if a debtor had scheduled claims,

24     they would be deemed allowed unless objected to.  Why couldn't

25     the trust, in effect, schedule the claims but identify them as

11

1    disputed and then resolve through a settlement that they will

2    be -- that the amounts of the claims will be fixed through an

3    estimation process?  Why doesn't that work?

4          MR. BASTA:  I'm just going to move to that section.

5    Could you give me one minute, Your Honor?  I'll move to that --

6          THE COURT:  If you want to -- Mr. Basta, I'm

7    perfectly happy just -- if you can come back to my question,

8    your organization may make more sense than what I've asked.

9    I'm happy to let you go on.

10          MR. BASTA:  I appreciate that, Your Honor.  I have a

11    section on why we don't believe that that works that's more

12    linear, and I think I could get it in a more organized way if I

13    get to it then.

14          THE COURT:  That's fine.

15          MR. BASTA:  Thank you.

16          THE COURT:  You can do that then.

17          MR. BASTA:  Thank you.  So if it's clear under

18    American Reserve that there's no agency relationship and

19    therefore there's no filed claim without certification.  What

20    is the movants' argument that a class claim can proceed without

21    class certification?  And, interestingly, they cite really the

22    same cases that we cite.  They cite Musicland and they cite

23    Motors Liquidation for the proposition that there are greater

24    procedural advantages in bankruptcy, and therefore you don't

25    need to do class certification.

12

1        But all of those cases hold for the proposition that

2   you either have to have a filed claim by the creditor itself or

3   you need class certification to create the agency relationship

4   so that there are claims on file on behalf of everybody who's a

5   putative member of the class.  We haven't found any case that

6   stands for the proposition that you can just treat the eleven

7   and a half million as-filed claims without an actual agency or

8   are properly processed.

9        It's also absolutely clear that this is a settlement

10  of the proposed class claim issues.  The settlement motion,

11  which seeks to approve the settlement, says very squarely that

12  the settlement agreement resolves the late claims motions, the

13  late proof of claim issues, and the allowance of plaintiffs'

14  claims.  By the time we get through the settlement agreement

15  phase, as Your Honor just pointed out, the only thing that

16  would be left to estimation would be to quantify the amount of

17  the claim.

18        THE COURT:  Some of them may be at zero.  If -- and I

19  think Mr. Weisfelner said at the last hearing that they

20  appeared -- well, let me just say they appear to agree that

21  state law continues to apply.  They acknowledged variations in

22  state law, as already determined by Judge Gerber.  And if the

23  state -- if the law of a particular state where someone

24  purchased a vehicle and claims economic loss requires

25  manifestation and they haven't had manifestation, they appear

13

1  to agree that that would be the law that applied, and it might

2  result in the claim being estimated at zero.

3       MR. BASTA:  But -- and Mr. Weisfelner did mention

4  that at the last hearing, and I do think that is what's being

5  worked out right now in the MDL.  And when we get to

6  estimation, what's happening in the MDL will translate into the

7  estimation in this court.

8       THE COURT:  But, of course, the MDL relates to claims

9  against New GM, not against Old GM.

10      MR. BASTA:  It is true that the MDL relates to New GM

11  and not Old GM, but the elements of the claims against New GM

12  are the same as the elements of the claim against Old GM, plus

13  successor liability.  So what the district court is handling is

14  many of the same issues that would be addressed here.

15      I mean, we actually believe that what Mr. Weisfelner

16  said at the last hearing where he -- he gave the example that

17  the class is eleven and a half million and that he did some

18  math and said, based upon Judge Furman's manifest defect

19  rulings already, that he suspected that two million may have

20  already dropped out of the class.  We think that that's an

21  example of why class certification is so necessary.

22      I mean, if two million vehicles are already dropping

23  out, I think we need class certification to decide, you know,

24  who represents those two million vehicles, why are they being

25  dropped out, and that's why the class certification rules are

14

1  so important.  And that's why Amchem, which is the key to this

2  section of our argument, said that, in the settlement context,

3  you know, you even need heightened scrutiny around class

4  certification issues to make sure there's adequate

5  representation and that everybody is aligned.

6        It's clear that the settlement agreement itself is

7  proposing to resolve all of plaintiffs' claims, and it includes

8  a resolution of all putative class members, even though they

9  have not participated yet in the bankruptcy proceeding.  And

10  it's also clear, Your Honor -- I think this is a very important

11  slide for the Court to see what is occurring at the settlement

12  stage and what is occurring at the estimation stage.

13        At the settlement stage, the GUC Trust is consenting

14  to the authorized filing of the proposed class claims, and we

15  submit that that's inconsistent with Amchem.  In exchange for

16  the $15 million settlement payment, all of the disputes,

17  including the propriety of Rule 23 certification, are settled

18  at the settlement stage, not at the estimation stage.  And the

19  estimation stage, as Your Honor has asked questions, is where

20  Your Honor sees it applying the different state law rules.

21        But here the class certification issues would be

22  resolved in advance of all those rules.  And at the settlement

23  stage, all eleven and a half million plaintiffs will be bound

24  by the settlement agreement and will be delegating to signatory

25  plaintiffs the right to adjudicate their relative recovery to

1    other members of the groups.

2          So if someone is in a state that requires manifest

3    defect, there is no process to come back to this Court to say,

4    well, those people are out and these people are in and this

5    criteria would allow somebody to get 12 cents and this criteria

6    would allow somebody to get 18 cents.  All of that is being

7    done without any allowance process and without any delegation

8    of representational authority to the signatory plaintiffs to

9    negotiate that differentiated outcome on their behalf.  And so

10   by the time you get to the estimation stage, you will have a

11   class-wide claim, and the only thing that's -- will have waived

12   any right to object on Rule 23 grounds, and the only thing that

13   will be left will be to quantify things.

14          This is the details of how this is implemented.

15   Section 2.5 of the settlement agreement says that the

16   settlement agreement, not the estimation trial, authorizes the

17   filing.  That's in 2.5(x).  The settlement motion expressly

18   says that class certification is being settled.  It says in the

19   absence of the settlement, the Court would need to decide

20   whether class certification for the economic loss plaintiffs'

21   proposed class proof of claims would be appropriate.  This

22   could lead for the need to resolve issues under the very laws

23   of the 50 states and the District of Columbia.  So they're

24   clearly seeking to settle class certification rather than show

25   that class certification requirements have been satisfied.

1          THE COURT:  Although I understood the plaintiffs to

2    agree that, as part of the estimation process, the Court would

3    consider applicable state law from each state in which the cars

4    were purchased.  I'm right about that.  I mean --

5          MR. BASTA:  I think that's correct, Your Honor.

6          THE COURT:  So they're not -- they haven't settled

7    that issue.  They acknowledge that that's an issue for the

8    Court to determine as to what is the applicable state law in

9    which relevant jurisdiction.

10          MR. BASTA:  But they're not coming in here and

11   saying, let's do it on a class-wide basis and let's ignore all

12   the differences in state law.  They're saying, let's use the

13   estimation to replicate what class certification would

14   otherwise do, and we're here saying that no court has ever done

15   that, and that when you go through the requirements of what

16   claims can be estimated in the language of the agreement, that

17   that's not what it provides for.  You need to actually be

18   estimating claims.

19          But I agree with Your Honor.  I don't believe that

20   they're taking the position that at estimation, they would

21   ignore differences in law.  The proposed settlement makes it

22   clear that all parties' disputes are resolved.  And so by the

23   time it gets to estimation, all objections to the class claims

24   will have been withdrawn or settled.

25          Movants say that when we get to the estimation, there

17

1  will be millions of claims to estimate, and that we should do

2  the claims on a class-wide basis.  I would note that it is my

3  understanding in the MDL that, based upon Judge Furman's

4  rulings on manifest defect, that the plaintiffs are not seeking

5  a -- no longer seeking a nationwide claim treatment in the MDL,

6  but they continue to seek it here.

7          The law is absolutely clear from the Supreme Court

8  that the Court does not have authority to settle proposed

9  class-action issues without certification, and Amchem we

10  believe is the -- along with American Reserve is the second

11  most important decision here.  The Court said federal courts

12  lack authority to substitute for Rule 23 certification criteria

13  a standard never adopted, that if the settlement is fair and

14  certification is proper, quote:

15          "The safeguards provided by the Rule 23(a) and (b)

16          class qualifying criteria, we emphasize, are not

17          impractical impediments -- checks shorn of utility --

18          in the settlement class context."

19          But other specifications of the rule -- those

20  designated to protect absentees by blocking unwarranted or

21  overbroad class definitions -- demand undiluted, even

22  heightened, attention in the settlement context.

23          And every bankruptcy court that we have found has

24  followed Amchem -- Worldcom, Partsearch, and BGI Group all --

25  when conducting settlement of class certification issues,

18

1  conducts an analysis under both Rule 23 and under 9019.  We

2  note that co-lead counsel in this situation in the W.R. Grace

3  matter argued that where a class is not already -- a Court has

4  not already certified a class, the Court, at the preliminary

5  approval stage, must determine whether the class satisfies the

6  requirements of Rule 23.

7          THE COURT:  What does that mean -- what does that

8  require a Court to do at the preliminary approval stage?

9          MR. BASTA:  It requires the Court to determine class

10 certification.

11         THE COURT:  For settlement purposes?

12         MR. BASTA:  For settlement.

13         THE COURT:  The difficulty of litigating a case with

14 eleven and a half million plaintiffs, that drops out.

15         MR. BASTA:  It drops out.  And that's what happened

16 in Amchem.  In Amchem, the Supreme Court -- the district court

17 looked at the impracticality of the situation and allowed the

18 fairness of the settlement and the need for the settlement to

19 be a factor when considering whether the Rule 23 prongs had

20 been met, and the Third Circuit and then the Supreme Court --

21 the Third Circuit overturned it.  The Supreme Court affirmed

22 the Third Circuit and said it's not about impracticality.

23 These rules are foundational.  You have to follow them.

24         THE COURT:  And am I correct that if a proposed class

25 settlement is presented to the Court, notice to the putative

19

1  class members has to be given at that stage, and they have an

2  opportunity to appear and object if they wish or support the

3  settlement?

4          MR. BASTA:  Yes.

5          THE COURT:  Okay.

6          MR. BASTA:  Yes.  So what is the basis for the

7  movants' argument that a class claim can be settled without

8  class certification?  Again, we go back to the same cases.

9  They say that New GM cites several cases in which courts

10  applied Bankruptcy Rule 9019 and Rule 23 to proposed

11  settlements at the request of the movants.  However, none of

12  these cases hold that Rule 23 certification is required to

13  settle a group of plaintiffs' claims.  But that's not true,

14  Your Honor.  Every case that is cited stands for the

15  proposition that, as a gating item, you have to find that

16  Rule 23 has been satisfied.  And earlier on, I believe that the

17  movants had argued that you either went under a 9019 route or

18  you went down on a Rule 23 route.

19          It doesn't appear that they're continuing to make

20  that argument because we believe the law is crystal clear that

21  you have to do Rule 23 up front.  And we don't believe that

22  they have any response to Amchem, and that to comply with due

23  process, Rule 23 requires prior notice to putative class

24  members of the settlement and an opportunity to object or opt

25  out before approval of the settlement that binds them.

20

1          Can I just take some water, Your Honor?

2          THE COURT:  Yeah.

3          MR. BASTA:  Your Honor, I received a note from

4  Mr. Nomellini on the asbestos cases where he wanted me to

5  clarify that in asbestos cases, there's always future claimants

6  and there's always a future claims committee, and it's always

7  arising in the plan context, not outside of the --

8          THE COURT:  But those estimations -- according to my

9  understanding, including not only future claims, which are not

10 claims --

11         MR. BASTA:  But a --

12         THE COURT:  -- but also current prepetition claims,

13 as well.  So they've usually estimated both at the same time.

14         MR. BASTA:  Right.

15         THE COURT:  I'm pretty sure that's true.

16         MR. BASTA:  And that estimation in those cases has

17 arisen in the context of plan feasibility.  So that's our main

18 case as to why we think that Rule 23 has to be satisfied.  We

19 want to address what the workaround that the movants have

20 proposed -- and we note, Your Honor, that we think that, you

21 know, Rule 23 is being viewed as this incredible obstacle to

22 getting to a resolution of this entire situation.

23         THE COURT:  Well, when I read their brief, it doesn't

24 seem that way because Mr. Weisfelner and the signatory

25 plaintiffs argued that they do satisfy.

ACCESS TRANSCRIPTS, LLC              1-855-USE-ACCESS (873-2223)

21

1        MR. BASTA:  And they do argue that, but I think that

2   the reason why we -- they are not -- in prior appearances, they

3   said they were going to seek class certification here, and

4   they're not now.

5        THE COURT:  Well, that was before they had a

6   settlement with the GUC Trust.

7        MR. BASTA:  And that was before they had a

8   settlement.

9        THE COURT:  That's the big difference.

10       MR. BASTA:  It was before they had settlement, but

11   it's also looking at what's happening in the MDL and wanting to

12   get things going here, and I understand that.  But Rule 23 is

13   -- could -- if it applied, would solve a lot of the problems in

14   the structure of the settlement.  It would allow the class

15   claims to proceed.  It would provide a mechanism to bind the

16   millions of individuals that they seek to bind to the

17   settlement, and it would provide for the millions of people who

18   would be now represented to provide the consensual releases to

19   the trust -- GUC Trust beneficiaries.

20       THE COURT:  It sounds like you're arguing how they

21   ought to certify the classes -- class or classes and -- so we

22   can get this on its way and bind all of the economic loss --

23       MR. BASTA:  Your Honor, we're --

24       THE COURT:  So you're not going to oppose class

25   certification.  Is that correct?

1          MR. BASTA:  No, we just -- we're saying that it is

2    the mechanism that needs to be followed.  That's what we're

3    arguing.

4          THE COURT:  What is -- do you intend to -- if I

5    require class certification, do you intend to oppose class

6    certification of economic loss plaintiffs?  Yes or no?

7          MR. BASTA:  We -- yes.  And we intend to say that the

8    district court's resolution of the class --

9          THE COURT:  Well, I -- my question is, if they seek

10   class certification in the bankruptcy court for economic loss

11   plaintiffs who purchased their vehicles with defects, not just

12   the -- capital I -- Ignition switch defects, but the other

13   defects that they're seeking to settle, they purchased them

14   before the sale to New GM.  It's New GM's intention to oppose

15   certification of one or more classes.  Am I correct?

16         MR. BASTA:  Yes.  Yes, Your Honor.  So what is the

17   plaintiffs' proposed workaround?  First, they take the position

18   that the Court can allow claims on behalf of millions of

19   individuals who did not file proof of claim through estimation

20   under 502(c).  They argue that they can send out a notice and,

21   through a notice, they can deem all these individuals to be a

22   party to the settlement agreement.  And they argue that they

23   can deem all of these individuals to provide a release to the

24   GUC Trust beneficiaries.  They say that this approach is the

25   functional equivalent of a Rule 23 settlement, but we submit

23

1  that they need to show that each of their three prongs work as

2  a matter of law.  And if they don't work, we submit that Rule

3  23 has to be followed.

4        And we start with why the Court cannot estimate

5  unfiled claims.  What's the movants' argument?  Movants'

6  argument is 502(c) necessarily permits the estimation of

7  unfiled claims for allowance purposes.  What is our argument?

8  The sale agreement, the plan, the GUC Trust agreement requires

9  that the Court estimate claims that are capable of being

10 allowed.  We argue that no court has ever estimated the allowed

11 amount of a claim that was never filed and that movants cite no

12 case holding -- providing for that.

13       We argue that Rule 3002 requires that creditor must

14 file a proof of claim for the claim to be allowed, and since

15 the -- without class certification, the creditor is not filing

16 the claim.  It's not capable of being allowed and therefore

17 cannot count against the adjustment shares threshold, as we

18 previously pointed out, unless it's certified the class

19 members' claims as an unfiled claim.

20       Both sides, Your Honor -- and this is very important

21 -- agree that the Court needs to estimate plaintiffs' claims

22 for allowance purposes.  It's in their Rule 23 brief.  It says

23 the settlement agreement contemplates that this Court will

24 estimate the plaintiffs' claims for allowance and distribution

25 purposes.  That necessarily means the claim has to be capable

24

1  of being allowed.  The language -- we believe that the reason

2  it's structured this way stems from the language in the sale

3  agreement where the highlighted language says estimating the

4  aggregate allowed general unsecured claims against seller's

5  estate.

6           THE COURT:  So if you have allowed general unsecured

7  claims, the amount of the claim is fixed.  What is there to

8  estimate?  A claim is allowed in a specific amount.  If the

9  claim is filed and -- or scheduled as disputed or unliquidated,

10 it's not an allowed claim.  An allowed claim is only the result

11 of either a contested claim proceeding, or if it's estimated --

12 I have trouble with the phrasing of estimating the aggregate

13 allowed general unsecured claims.

14          MR. BASTA:  So I have a slide on this.  Let me go up

15 to that because I think that's one of the key issues here.  So

16 the language as Your Honor just read, and in my first bullet,

17 it says the Court can estimate aggregate allowed general

18 unsecured claims.  And we differ on what that language means.

19 And there are three words: aggregate, allowed -- estimate,

20 aggregate, allowed, three words.  And you could -- we could sit

21 here and say to Your Honor, that means that you have to allow

22 every single claim, and I think at the last hearing, Your Honor

23 asked me questions whether that was really GM's position, that

24 we were going to sit there and allow every single one of the

25 claims because -- and if that was the reading, then you would

25

1  arguably not be giving effect to aggregate because you would do

2  every single claim.

3        Now, plaintiffs take the opposite view and they say,

4  well, what that just means is you can just estimate even

5  unfiled claims, and our argument is that if that's the reading,

6  Your Honor's giving no effect to the word "allowed."  And what

7  the word "allowed" in the agreement means is that Your Honor

8  should estimate claims that are capable of being allowed.  And

9  our argument is that for a claim to be capable of being

10 allowed, you need to look at whether it's complied with the

11 bankruptcy rules for being an allowed claim.

12       Under 501, you can only make distributions to an

13 allowed claim.  And so in the absence of that filing

14 requirement, it can never be allowed and it can never count

15 against adjustment shares.  But it is not our position, Your

16 Honor, that we have to sit there with a -- you know, for 48

17 years, trying to add up all of these allowed claims.

18       Let me go back, Your Honor.  So we were -- I was in

19 the middle, and we just skipped ahead on what the language

20 means.  We think that it's also supported -- our view of giving

21 effect to the word "allowance" is supported by the language in

22 the plan and the GUC Trust agreement.  And the language in the

23 plan on estimation says that the Court -- if the Court can't

24 estimate any contingent, unliquidated, or disputed claim, and

25 that should constitute either the allowed amount of such claim

26

or a maximum limitation on such claim, i.e. a reserve.  I think
that's what the plan says, and the GUC Trust has similar
language.

And so it's also clear that there can be no
distribution under the plan unless a claim has been allowed,
and that's also consistent with the bankruptcy court.  The way
that this has been structured, the only time that there will be
allowance is at the settlement stage.  And at the settlement
stage, Your Honor, there's nothing to allow because there's no
claims that have been filed.

Now, could they argue that this maximum limitation
language in the plan authorizes the Court to do an estimation
for reserve purposes?  We think they could argue that, but we
don't think that would go anywhere because, once you've
estimated for reserve purposes, there still needs to be some
allowance process somewhere down the road.  And if Your Honor's
going to do a reserve and then an allowance later, it doesn't
make -- we don't believe that that, under the contract, would
trigger the adjustment shares or advance the ball.  And when
you had a later class certification ruling, you could have
inconsistent outcomes between the reserve methodology and the
allowance methodology.

So what claims -- and this is, Your Honor, where I
promised to get back to when Your Honor asked me why they
couldn't just settle and deem the claims to be allowed.  And

27

1  let me walk through it.  We're going to start with

2  Rule 3002(a):  An unsecured creditor must file a proof of claim

3  for the claim allowed.  If they don't file it, it's not

4  allowed.

5          Who must file?  Any creditor whose claim or interest

6  is not scheduled or is scheduled as disputed, contingent, or

7  unliquidated shall file a proof of claim.  Any creditor who

8  fails to do so shall not be treated as a creditor with respect

9  to such claim for voting and distribution purposes.

10         When I was here last time, Your Honor, Your Honor

11 said, well, couldn't the debtor have filed the claims as

12 disputed, contingent, or unliquidated?  If they had, it would

13 not get them to where they need to be because they still need

14 to file a proof of claim.

15         Rule 3021 says, distribution shall be made to

16 creditors whose claims have been allowed, and 502(a) says a

17 claim or interest, proof of which is filed, is deemed allowed.

18 Section 1111(a), a proof of claim is deemed filed under

19 Section 501 that appears in the schedules, but then there is an

20 exception -- unless that is disputed as -- is scheduled as

21 disputed, contingent, and unliquidated.  And we certainly know

22 this is disputed, contingent, and unliquidated, or at least

23 disputed and unliquidated.

24         Section 1.54 of the plan:  If no proof of claim has

25 been filed by the applicable deadline, such claim shall not be

28

1  valid and shall be disregarded.  It's consistent with Colliers,

2  it's consistent with cases, so that's the basis for our view.

3          We -- movants do not cite a single case where a Court

4  has estimated an unfiled claim for purposes of allowance, and

5  we cite <u>Solar King</u> and <u>Lehman</u>.  The Court says, it's quite

6  another matter to assume that 502(c) alone can operate to

7  render a contingent or unliquidated claim allowable when

8  there's no proof of claim on file and the claim is not

9  scheduled.

10          The cases cited by the movants, as Your Honor and I

11  just discussed, go to estimation for purposes other than

12  allowance.  I will not go through each of the cases, but you

13  have them.

14          There are two cases -- one of them was my case, which

15  was <u>MSR Resorts</u> -- where estimation was done for the purposes

16  of assisting in a sale transaction.  In MS Resorts, we had a

17  hotel.  We were thinking of rejecting a Marriott contract.  We

18  were working with Marriott.  We agree on an estimation so we

19  could estimate rejection claims for the purposes of deciding

20  whether it was a good business judgment for the debtor to sell

21  the property free of the management agreement or with the

22  management agreement rejected.  They cite that for the

23  proposition that you could estimate for other purposes, but

24  that's very different than here, where the purpose is really

25  being done for allowance.

29

1          THE COURT:  One of the things that strikes me is

2   estimation has been used for purposes other than what 502(c),

3   by its express terms, provides.  So, for example, there have

4   been cases that have used estimation on administrative claims.

5   There's nothing in 502(c) that would suggest that.  So one way

6   or another, courts have used estimation beyond the four corners

7   of the terms of the code.  Would you agree with that?

8          MR. BASTA:  I would agree with that.

9          THE COURT:  You did it in MSR.

10         MR. BASTA:  I did it in MSR, but I would just say the

11  link here is the language that says that "allow claims."  And

12  so it seems to me -- our view is that in order for it to really

13  count, in order for us to be separated from the billion plus of

14  adjustment shares, there needs to be a showing that what's

15  going to trigger that is a view from the Court that these

16  claims can be allowed.  We think that that's what was bargained

17  for in that language.

18         We've covered this already.  They argue that Rule 23

19  is unnecessary based on the greater procedural advantages, but

20  every case that they cite supports for the proposition that you

21  either have to have a creditor proof of claim or you have to

22  have a class proof of claim.  They don't support the

23  proposition that the Court can estimate unfiled claims.

24         If Your Honor looks at some of their quotations, they

25  cite Motors Liquidation.  It says, because of matters unique to

1   bankruptcy, class action may not be preferable, but if you keep

2   reading, a few sentences later, it says because individual

3   claimants could just fill out a proof of claim.  They cite

4   Ephedra to say superiority of class actions is lost in

5   bankruptcy.  Only compelling reason for allowing an opt-out

6   class can justify Rule 23.  We'd point out that they add a few

7   sentences later that because it allows plaintiffs to file

8   proofs of claim without counsel and at virtually no cost, we

9   think that it's -- that they -- we understand Your Honor's

10  point that their prior conduct was before they reached a

11  settlement on the class claims, but I think it was clear from

12  their prior conduct that they anticipated trying to reach a

13  settlement.

14          I mean, they amended their class claim two days

15  before the settlement agreement was signed, and they amended

16  the class claim and it was clear even then that they were

17  trying to proceed and that they believed that they are

18  proceeding on a class basis.  And again the structure of the

19  settlement agreement is to proceed on a class basis and to go

20  into estimation as a class basis.  So they've not adjusted

21  their approach to say, we're not going down class

22  certification.  Their approach is, we are doing class

23  certification, but we're just settling it.

24          Let's turn to in rem jurisdiction.  What does it get

25  them?  We don't think it's a substitute for Rule 23.  So they

1  are that -- because the bankruptcy court has in rem

2  jurisdiction over the assets of the estate, it is empowered to

3  determine the rights of all parties with respect to the res of

4  the estate, and therefore may issue bar orders and enjoin

5  claims under Section 105.

6          What is our argument?  It does more than just release

7  claims against the estate.  It binds 11.4 million individuals

8  to a settlement agreement that they're not a party and

9  delegates authority to the signatory plaintiffs to adjudicate

10  their claims.

11          With respect to the release and waiver, the

12  segregation of the assets, our view is that's an improper plan

13  modification.  And that's an important point, Your Honor, and

14  it really does hurt GM because, if the GUC Trust assets were

15  not segregated for the benefit of the existing beneficiaries,

16  they could be used to pay down the plaintiffs' claims, which

17  means that the damages asserted against New GM in the MDL would

18  be less.  And so the fact that these --

19          THE COURT:  You lost me on this point.  Just go back

20  over it.

21          MR. BASTA:  Sorry, Your Honor.  Under the

22  settlement --

23          THE COURT:  I want to make sure I'm understanding.

24          MR. BASTA:  Yes, I need to do it more slowly.  Under

25  the settlement agreement, the 500 million or so potential GUC

32

1   Trust assets are segregated for the benefit of existing GUC

2   Trust beneficiaries, unit holders.  That violates the plan.

3   The plan provides for pro rata treatment for everybody.  It

4   is --

5              THE COURT:  I'm aware of that.  Go ahead.

6              MR. BASTA:  Right.  It provides for pro rata

7   treatment.  The reason why we're harmed by that is that if that

8   $500 million was available to pay plaintiffs' claims, the

9   plaintiffs in the MDL have recognized they can't get more than

10  100 cents.  So if that $500 million could be used to pay down

11  their claims, the amount of damages that are asserted against

12  New GM in the MDL would be less.  But since those -- that

13  $500 million is being segregated for the benefit of trust

14  beneficiaries, it's not available to us, so we suffer an

15  economic harm.  And we believe we're a party to the plan, and

16  we believe the statute is clear that a substantially

17  consummated plan cannot be modified.  And we don't believe that

18  in rem jurisdiction gives them an ability to modify a

19  substantially consummated plan.

20             And I would point -- and I doubt this is a popular

21  argument, but that we think this pervades everything.  In other

22  words, even if Your Honor certified the class, we would be

23  still back here at the approval of the settlement stage,

24  arguing that that segregation of those assets is an improper

25  plan modification.

33

1          We also, Your Honor, believe that it's improper,

2     through a notice, to bind parties to a settlement agreement.

3     It's absolutely clear that that's what the settlement agreement

4     does.  It mandates that every plaintiff consent to the

5     adjudication of their claim, and it binds them.  It says in

6     paragraph 5 of the settlement order, the settlement shall be

7     effective and binding on all parties.

8          So it's not a situation where you're just sending out

9     a notice and saying to somebody, you need to release your

10    claim.  This is actually binding them to an agreement to which

11    they're not a party.  And we have cited cases, SportsStuff, and

12    other cases in our papers that we don't believe there's -- that

13    a settlement agreement is binding between the parties that

14    execute the settlement agreement and that you cannot, through a

15    notice, force somebody to be a party to that settlement

16    agreement.

17         We note that this also hits on Amchem, where one of

18    the elements on Amchem and why Rule 23 is required, is that it

19    -- the Court can assure itself that when parties are being

20    bound, that they're represented adequately in connection with

21    that process.

22         I've already covered the substantially consummated

23    plan modification, so I'll move that quickly.  We cite here the

24    elements of the plan that require pro rata treatment.  The

25    settlement agreement also provides for a channeling injunction

34

1  outside of the plan, and we don't believe that that works

2  either.  If you take an example, assume that before GM's plan

3  confirmed, GM sent out a notice and said, we're going to put

4  half of our assets over here, and you can only look at those

5  assets, and we're going to put half of our assets over there,

6  and you can only go against those assets, and we're sending out

7  a notice, and anyone who can object, you can object, but after

8  that, we're divvying up the assets.

9          Well, that wouldn't work.  That would be a sub rosa

10 plan.  Your Honor commented on that in the Dewey LeBoeuf

11 matter, and we believe that if you're really going to segregate

12 asset and pool creditors into one asset, that it can't be done

13 in the context of a settlement.  And channeling injunctions,

14 under Adelphia and other Second Circuit case law, are really

15 necessary for a reorganization.

16         THE COURT:  How do you reconcile your arguments about

17 prohibition on a material plan modification with the

18 consequences of a due process violation by which the --

19 certainly as to those where there's been determined to be a due

20 process violation, the ignition switch defect plaintiffs.

21 They're not bound by the plan, are they?  I mean, that, I

22 thought, was the -- it's one of the conundrums we face is that

23 the Second Circuit determined they're not bound by -- they

24 can't be bound.  They weren't given proper notice.

25         MR. BASTA:  Well --

1          THE COURT:  So how can your arguments about no

2  material plan modification apply to dealing with the people for

3  whom there was due process violation?

4          MR. BASTA:  Your Honor, the GUC Trust agreement

5  itself contemplates what happens if a late claim comes in, and

6  it provides a catch-up distribution mechanism in the GUC Trust

7  agreement.  And it doesn't say that if a late claim that needs

8  to now come into the pool, that you can segregate the assets.

9  In fact, it's the opposite.  It basically says that the -- the

10  way it works is that the next assets that come in need to catch

11  up the people who have been left behind until they reach the

12  pro rata status.

13          And that is one of our points here, which is that

14  under the settlement agreement, the reality is, is that we

15  think these people, as the adjustment shares are issued, would

16  be the only people that would get the adjustment shares because

17  of the catch-up mechanism.  All the value would have to go to

18  get them up to the 30-cent recovery that everybody else

19  received.  But we don't believe that the fact that -- that

20  because of the procedural due process violation, that that

21  creates a license to force people into one set of assets and

22  not into another.

23          THE COURT:  If the economic loss plaintiffs and

24  personal injury/wrongful death plaintiffs, if their recovery

25  did not exceed the recovery of all other GM creditors, how

1  would New GM be adversely affected by the fact that this

2  agreement provides for the segregation?  I could see your point

3  if the result could be that the -- while personal

4  injury/wrongful death plaintiffs and economic loss plaintiffs

5  together wound up with a greater recovery than all other

6  creditors.  Maybe I'm missing something in there.

7        MR. BASTA:  So let me try it this way.  The -- we

8  have to issue adjustment shares based on the aggregate amount

9  of general unsecured claims.  That's indifferent to whether

10 somebody gets 30 cents and somebody gets 20 cents.  If the

11 claims are above a certain amount, we have to issue the

12 adjustment shares.

13       THE COURT:  But how are you hurt?

14       MR. BASTA:  We are hurt in the following respect,

15 which is that if there's $500 million of claims -- of assets

16 that could satisfy plaintiffs' claims, then the damages against

17 us in the MDL are greater than they otherwise would be if the

18 creditors could first seek recourse.

19       THE COURT:  If all other creditors recovered 30

20 cents, and even after receiving the aggregate -- even after

21 New GM issued the aggregate shares, and all of these additional

22 new claims had a recovery of 25 cents, how are you -- how is

23 New GM hurt by that?  You have not wound up -- they -- no

24 creditor has received more than they otherwise would.

25       MR. BASTA:  If -- okay.  Let's do the mathematical

 1  example.  Let's say that after -- let's say that the 500

 2  million of GUC Trust assets go to existing GUC Trust

 3  beneficiaries.  In the -- and then, as a result of the issuance

 4  of the adjustment shares, the signatory plaintiffs end up with

 5  25 cents.

 6             THE COURT:  Yeah, they wound up getting less.

 7             MR. BASTA:  They get -- so now they get 25 cents.

 8  Now there's a 75-cent claim against New GM under --

 9             THE COURT:  I don't know whether there's a claim

10  against New GM or not.

11             MR. BASTA:  Well, asserted claim against New GM.

12             THE COURT:  I don't know whether there's going to be

13  a -- the position that New GM has taken previously is that if

14  economic loss plaintiffs can recover against Old GM, they have

15  no claim against New GM.  That's been the position they've

16  taken.

17             MR. BASTA:  And I'm certainly not --

18             THE COURT:  That was before you came in.

19             MR. BASTA:  And I'm certainly not waiving that

20  argument, Your Honor.  I'm just making the point that the

21  question here is -- if you have modifying substantially --

22  modifying a substantially consummated plan, there's a

23  prohibition.  In prior arguments, it has been said, you guys

24  should not care about that, you should not care.  And -- well,

25  I disagree that that's the standard.  I think we're a party to

1  the plan, we're a party to the sale agreement that's embedded

2  in the plan, and so I think we have standing to argue that you

3  can't do an improper plan modification.  But even if you ask

4  me, what is your economic interest in that issue, I would say

5  we have an economic interest because plaintiffs are getting

6  less from Old GM and seeking more from New GM, and the standard

7  in Global Industries on standing is that we have to have a

8  trifle of an economic interest to have standing, and that's

9  certainly an economic interest to basically voice our

10 opposition to the plan modification.

11           THE COURT:  Okay.  Go ahead.

12           MR. BASTA:  We point out channeling injunctions are

13 not appropriate outside of plan confirmation.  They cite a

14 number of bar order cases that arise in the settlement -- in

15 the insurance context, when an insurer contributes money to a

16 debtor and obtains a release of claims that are derivative of

17 the estate claims.  There -- those are really falling under,

18 like, contribution.  That's not at all what is happening here.

19 They say nothing about the ability to force individual

20 creditors to be a party to a settlement.

21           Here it's the debtor or the GUC Trust itself, not

22 some third party, that's making a contribution.  The GUC Trust

23 is not contributing to itself to justify getting the release,

24 and here we go through the math, Your Honor, to show that, at

25 the end of the day, we think that the existing plaintiffs, the

39

1  plaintiffs that are here that we're addressing today, are the

2  ones that are actually going to end up getting the $15 million

3  and the adjustment shares if they were ever to be issued.

4         So what is the contribution of the GUC Trust to

5  justify it getting the release?  We don't think that its

6  concession that it's allowing the late-filed claims and its not

7  objecting to class certification is a contribution that

8  justifies a release.  That's a legal conclusion.

9         THE COURT:  That you haven't persuaded me about, but

10 -- I'm not saying you persuaded me on other things, but you

11 definitely haven't persuaded me about this one.

12        MR. BASTA:  Our final argument, Your Honor, is that

13 they'll try to justify the third-party releases to the GUC

14 Trust beneficiaries.  There is no contribution that's occurring

15 by the GUC Trust beneficiaries to support a non-consensual,

16 non-debtor release.

17        THE COURT:  Sure.  A knockdown, drag-out battle over

18 the next however many years.

19        MR. BASTA:  Your Honor, that is the body of our

20 argument.  If I could turn Your Honor to where we would go from

21 here.

22        THE COURT:  Sure.

23        MR. BASTA:  And I know it's not part of today, but I

24 wanted to update the Court on what we're doing on personal

25 injury and wrongful death claims.  We requested and were in the

40

1  process of obtaining MDL order 148 information for personal

2  injury/wrongful death plaintiffs with the intention of

3  mediating and settling those personal injury claims.

4     THE COURT:  And I read Mr. Weintraub's motion with an

5  additional 69 plaintiffs.  How many personal injury/wrongful

6  death plaintiffs have asserted claims against the GUC Trust

7  against -- in the Old GM case?

8     MR. BASTA:  576.

9     THE COURT:  Okay.  All right.

10     MR. BASTA:  And what we have said -- Mr. Weintraub

11  sent me a note and said that he would give us the information,

12  but he wanted New GM to commit that it had an intent to mediate

13  in good faith to settle those claims.  And I responded and told

14  him that he has that commitment with two caveats.  One is that

15  we wanted to receive the date -- the Rule 148 date from all of

16  the 576 so we could look at it holistically, and that, second,

17  there were some timing issues because New GM has a process to

18  evaluate that data.  And then it goes into the mediation like

19  it has done successfully in the district court having analyzed

20  that data, and we needed time to analyze that data.

21     And we've gotten some great cooperation.  450 of the

22  576 plaintiffs have agreed and are in the process of providing

23  us that information.  There is a set of -- I can't do the math

24  -- 125 claims that are considering the request, but have not

25  yet decided to give us that info.

 1            THE COURT:  Does that mean you won't go forward with

 2    mediation unless the 125 agree?

 3            MR. BASTA:  Your Honor, we're waiting -- expect them

 4    to come back and agree to provide us the information.

 5            THE COURT:  Are you prepared to go into mediation if

 6    you don't receive affirmative responses from the other 125?

 7            MR. BASTA:  Not at the moment, Your Honor.  We would

 8    much prefer to deal with this on a holistic basis.

 9            So what is our approach and suggested approach, Your

10    Honor, if the Court were to conclude that Rule 23 is a gating

11    item?  Where do things stand in the MDL?  We expect in the next

12    few months, and I have a timeline, that the district court is

13    going to rule on class certification in the three bellwether

14    states, manifest defect in the remaining 35 states, summary

15    judgment on benefit of the bargain in the three bellwether

16    states, and on the Daubert challenge.  The summary judgment

17    covers a number of other issues including implied warranty,

18    unjust enrichment, consumer protection, ignition switch repair,

19    and fraudulent concealment.

20            We believe that following these rulings, that the

21    bankruptcy court and the parties will have much better guidance

22    from the MDL.  If you look at this timeline, on the top part of

23    the timeline -- excuse me for one second, Your Honor.

24            THE COURT:  Sure.

25            MR. BASTA:  If you look at the top of the timeline,

42

1    that is the proposed schedule that's based upon the filings by

2    the movants for this settlement process.  They filed on -- the

3    notice -- as soon as the Court approved the notice procedures

4    on August 1st.  We've had to meet and confer with them about

5    coming up with the customer information for the notice.  It's

6    not a "push-the-button" exercise.  They have to go to IHS Polk

7    to obtain the customer information.  We believe that's a four

8    to six week process.  We've built in five weeks here.  We

9    assume once that happens, we could be at settlement here on

10   October 31st.

11          Your Honor indicated previously that if the Court

12   approved the settlement, that there would be court-ordered

13   mediation in advance of an estimation hearing.  We built that

14   in.  There needs to be fact discovery in advance of estimation.

15   So we're looking at -- if there was no objection to class

16   certification, we're looking at -- on its own terms, at dealing

17   with estimation around March.

18          If you look at what's happening in the MDL, the

19   briefing is complete on manifest defect in 35 states, and we're

20   awaiting decision.  By October 12th, the briefing will be

21   complete on a class certification and summary judgment and

22   benefit of the bargain.  By November 2nd, there will be

23   briefing complete on Daubert motions.

24          So our recommendation, Your Honor, is that we allow

25   the district court to do these rulings.  Your Honor started the

43

1  day -- I have the quote from Mr. Weisfelner where he recognized

2  that what is happening in the district court would have an

3  impact on the buckets of claims that would be the subject of an

4  estimation hearing.  And so our approach would be to allow that

5  to proceed, and we would be back before the Court after those

6  issues are resolved.

7          THE COURT:  Okay.  I see some irony in the fact that

8  New GM has taken the position -- I raised this before, that if

9  economic loss plaintiffs recover -- can recover in the

10  bankruptcy court, they have no claim against New GM.  That puts

11  aside the -- putting aside the whole successor liability issue,

12  they have no claim against New GM, and yet you want to litigate

13  this in the district court where you say they wouldn't be able

14  to recover.

15          MR. BASTA:  I understand the irony, Your Honor.  I

16  think that what -- our position is as follows, which makes this

17  case unique.  Normally, in a bankruptcy claim context, we'd go

18  to the bankruptcy court and ask the bankruptcy court to rule on

19  Class 23, or they would ask the bankruptcy court to rule on

20  Class 23.  This is complicated because plaintiffs first sought

21  class certification in the district court and --

22          THE COURT:  No.  That was before there was a

23  settlement in the GUC Trust.

24          MR. BASTA:  And before there was a -- but they are

25  proceeding --

44

1          THE COURT:  Which is a -- you know, changes the

2   posture rather dramatically.

3          MR. BASTA:  I understand, Your Honor.  But we do have

4   a class certification process happening in the district court

5   already.

6          THE COURT:  If the claims were -- if the cases, not

7   claims -- if the cases were going to be litigated to judgment

8   in the district court, that all makes perfect sense to me.  But

9   in the context in which the GUC Trust and the signatory

10  plaintiffs are seeking to settle, even if I conclude that

11  Rule 23 applies, it seems to me fundamentally different the

12  issue that the -- issues that the bankruptcy court would need

13  to resolve than the district court would need to resolve if

14  claims against New GM are litigated to judgment.

15         MR. BASTA:  I would like to address that, Your Honor,

16  because we believe that there's substantial overlap between the

17  class --

18         THE COURT:  You said that in your papers, and they

19  say they don't think there's substantial overlap.

20         MR. BASTA:  And they don't.  But if Your Honor would

21  like to hear more about -- when we started, we had filed a stay

22  motion.  In that stay motion, we argued why Your Honor should

23  not decide class certification.  You should let the MDL do the

24  class certification.  That motion was predicated on the

25  substantial overlap on class certification issues.

1          One of the reasons Mr. Nomellini is here from

2    Kirkland is that I think he can, if Your Honor would like to

3    get into it, explain, if we were going to get into class

4    certification in this court, what would be entailed and how

5    much overlap and long it would take vis-a-vis what's happening

6    in the MDL.

7          And so I don't know where Your Honor is going to come

8    out on today's hearing.  And Your Honor in the order this

9    morning said you wanted to hear from the parties about what

10   next steps are, and we're prepared to discuss that.  We would

11   like to put a marker down and say we think that class

12   certification here would be highly duplicative on the issues of

13   common issues of law and common issues of fact, and it's highly

14   intertwined between benefit of the bargain, manifest defect,

15   and Daubert, issues that are already being decided.  Because

16   the resolution of that substantive issues go to whether there

17   are common issues of law across the board.

18          THE COURT:  I'll wait to hear that.

19          MR. BASTA:  Okay.  Any further questions for me at

20   this time, Your Honor?

21          THE COURT:  Not at this time.

22          MR. BASTA:  Thank you.

23          THE COURT:  Thank you very much.  All right.  I don't

24   know how the argument among the GUC Trust and participating

25   signatory is going to be divided or not.  I purposely didn't

46

1   address that issue.

2           MS. GOING:  My son did that for me.

3           THE COURT:  I'm impressed.

4           MS. GOING:  I am, too.  Good afternoon, Your Honor.

5   Kristin Going, Drinker Biddle on behalf of the GUC Trust.

6           Your Honor, I thought I would do a little bit of

7   reverse order and start with just three points of rebuttal to

8   Mr. Basta's presentation.  The first one -- and I'm not going

9   to belabor this point, but as far as the consideration for the

10  release, there is $21 million of real money that the GUC trust

11  is contributing to the settlement.  And that might not be

12  significant to New GM, but it's certainly significant to the

13  GUC Trust, particularly in light of the fact that, as you know

14  all too well, the avoidance action litigation is now going to

15  go forward so that --

16          THE COURT:  Are you telling me something I didn't

17  know?

18          MS. GOING:  No.  I've read the same papers you have.

19  But to us, that means that this could be the last $21 million

20  in the GUC Trust if we end up having to pay out the full amount

21  of the avoidance action claim.

22          Second, while I appreciate Mr. Basta raising the MSR

23  Resorts case, I am going to disagree with his analysis that

24  this was not seeking estimation of an unfiled claim for

25  allowance.  It certainly reads like that is exactly what they

47

1  sought and, in fact, the settlement provides for a specific

2  claim amount.  And so I don't know how it could be anything

3  else but for allowance.  I think --

4          THE COURT:  But it was still a two-party dispute

5  fundamentally, wasn't it?

6          MS. GOING:  It was, Your Honor.  But I'm not sure

7  how --

8          THE COURT:  I mean, my comment to Mr. Basta,

9  estimation has been used, including by me, to estimate -- I use

10 the claim -- I use the term "claims" loosely because it's been

11 used for administrative claims, which aren't really claims.

12 Administrative expense, that's probably -- the statute doesn't

13 provide for it.  Judges have used it, used estimation.

14 Estimation has been used in a number -- because it's very

15 practical.  It cuts through a lot of things and can resolve a

16 lot of issues that otherwise could take years sometimes.

17         But MSR was not -- was fundamentally a two-party

18 dispute.  Both parties agreed to the procedure the Judge Lang

19 used.  Am I right in that?

20         MS. GOING:  No.  In fact, Marriott objected to this

21 notion.  Ironically, they called it -- the objected on the

22 grounds that it was an attempt by the debtor to estimate a

23 hypothetical claim.  I've heard that before.  But I'm not sure

24 -- and I'll certainly get into it in my presentation.  But

25 nothing in 502(c) or any estimation cases that I've seen has

48

1  made that distinction that somehow estimation is allowed to be

2  used when it's a two-party dispute, but not when it's a multi

3  party dispute or a class action.  And again, that's going to go

4  to the point that we believe it's claims, which is a right to

5  payment, not a proof of claim that is being estimated.

6          That brings me to my next point, which is that I got

7  the sense that New GM either believes or is trying to argue

8  that the settlement agreement somehow allows the proofs of

9  claim.  And that's not the case at all.  If you look at section

10 2.5 of the settlement agreement, what we are agreeing to is we

11 are consenting to the late filing of the proofs of claim and

12 agreeing to seek an estimation order that would estimate the

13 aggregated allowed amount.  So all we are agreeing to is to

14 allow those late claims to be filed.

15         And I think this idea that New GM continues to focus

16 on the proofs of claim is a red herring, because in effect, we

17 could estimate -- and I'm going to go through the contracts

18 that show.  We could estimate without the settlement.  We could

19 estimate without proofs of claim.  I think New GM is really

20 seizing on the procedural morass that has occurred in this case

21 to try to argue the fact that we have to go through this entire

22 process to determine whether or not late claims can be allowed

23 before we can move forward.

24         But the reality is, the reason why we even have this

25 notion of whether or not late claims can be allowed is because

49

1  we have claimants who didn't receive notice of when they could

2  file a claim timely.  So I don't think that they should be

3  allowed to use this procedural process as a shield and argue

4  that there are all these steps that must be jumped through,

5  when really, what the settlement is trying to do is resolve

6  years and years of problems that arise from the fact that these

7  claims weren't in the original bankruptcy and not --

8          THE COURT:  Putting aside the terms of this specific

9  settlement, could the GUC Trust agree that the -- all of the

10 late claims could be filed and then essentially object to large

11 groups of the claims because these people are in states where

12 manifestation is required and they're -- they didn't manifest.

13 All of the arguments, which essentially would have to be dealt

14 with in an estimation proceeding, the GUC Trust has the ability

15 to agree to the filing of the late claims.

16         MS. GOING:  Absolutely.  Absolutely.  So now I'm

17 going to start with, I think, the one area where we agree with

18 New GM, and that is really how they framed the question that's

19 before Your Honor.  And this was paragraph 4 of their brief

20 where they said, "The first question, the gating question is

21 whether or not you can estimate proofs of claim, or can you

22 estimate claims as defined in 101(5) of the Bankruptcy Code."

23 And then they said -- sorry.

24         UNIDENTIFIED:  That's okay.

25         MS. GOING:  And I think this is important.  They

1  said, "If the answer to that question is no, then can you

2  estimate these claims without deciding whether or not rule

3  certification is necessary?"  And it's important here, because

4  they recognized the problem that if, in fact, you decide that

5  you can estimate claims, then you don't even need to get to the

6  question of Rule 23 certification.  Because it's only if you

7  decide that a court can only estimate proofs of claim that you

8  start going down the "rabbit hole," as I'll call it, of Rule

9  23.

10         THE COURT:  But I understood Mr. Basta's argument to

11 say that the statute in the rules only permits distributions to

12 people who will file proofs of claim, and that the agency

13 principle requires that for -- to file proofs of claim on

14 anybody's behalf you either certify the class, or they,

15 themselves, file a proof of claim.

16         So you can't -- do you believe that there can be

17 distributions to economic loss plaintiffs who either haven't

18 filed proofs of claims themselves or a class claim hasn't been

19 filed on their behalf?

20         MS. GOING:  Yes, I do.

21         THE COURT:  What's the basis?

22         MS. GOING:  Because --

23         THE COURT:  Mr. Basta has gone through statutory

24 sections, rule section, et cetera at some length to say the

25 code and the rules only permit distributions to people who have

51

 1  allowed claims.  They have to allowed claim.  You have to

 2  either -- it's schedule and is not -- you know, it's not

 3  disputed, it's not unliquidated, all that, or you've filed a

 4  proof of claim.

 5        MS. GOING:  Absolutely.  But, interestingly enough,

 6  the one section that Mr. Basta didn't put up there was 502(c),

 7  which is the mechanism by which you can estimate to -- in order

 8  to create an allowed claim that would then be paid.  And I'm

 9  getting there with my statute.

10        THE COURT:  Go ahead.

11        MS. GOING:  So 502(c) states that there will be

12  estimated for purposes of allowance.  And the phrase "estimated

13  for purposes of allowance" means that you're determining

14  through the estimation process what the allowed amount of the

15  claim is.  New GM has consistently made this unbelievable

16  argument that a proof of claim must be filed and allowed before

17  it can be estimated.

18        THE COURT:  Well, it can't be allowed because then

19  that's the whole point -- you can't -- if it's allowed --

20        MS. GOING:  You can't estimate an --

21        THE COURT:  -- a fixed amount, there's nothing to

22  estimate.

23        MS. GOING:  That's right.  Right.  And then our

24  second point regarding the statute is: What can be estimated?

25  And 502(c) answers that question by saying it's any contingent

52

1   or unliquidated claim.  Again, noticeably absent is proof of

2   claim, or claim, proof of which has been filed under section

3   501.

4        So here we have the difference between a claim and a

5   proof of claim.  And as the legislative history has told us,

6   Congress intended "claim," as defined under the Bankruptcy

7   Code, to have the broadest possible definition.  And they use

8   that broad definition when setting forth the process and

9   procedure for estimation in 502(c).

10       In their brief, New GM has made this analogy with

11  1129(b), cramdown section.  And they were citing that as an

12  argument as to why you, Judge, should interchange proof of

13  claim with claim in the Bankruptcy Code.  But I think when I

14  actually went through that myself, I thought, you know, this

15  actually proves our point because 1129(b) provides that you

16  have to pay the present value of a secured creditor's claim,

17  right.

18       If you exchange that for proof of claim -- if claim

19  really meant proof of claim in 1129(b), then you could easily

20  have a situation where a secured debt gets schedule.  Secured

21  creditor then wouldn't have to file a proof of claim.  And the

22  debtor would turn around and say, aha, under 1129(b), I only

23  have to pay the present value of your proof of claim.  And

24  because you didn't file a proof of claim, I don't have to pay

25  you anything.  And I think if that's the case, I really believe

53

1 Mr. Basta, being an excellent debtor's lawyer, he would've

2 exploited that loophole a long time ago.

3          THE COURT:  Do you have a hard copy of your slides --

4          MS. GOING:  I do.

5          THE COURT:  -- for me?

6          MS. GOING:  I'm sorry, Your Honor.  If you want me

7 to --

8          THE COURT:  Just because I do make --

9          MS. GOING:  -- hand it up.

10          THE COURT:  -- notes on them (indiscernible).  Thank

11 you.

12          MR. BASTA:  Thank you.

13          MS. GOING:  New GM's entire argument about claim and

14 proof of claim and the fact that every time you read claim, you

15 really have to read the words "proof of claim," that flies in

16 the face of basic contract interpretation principles.  And

17 again, if you look at, in contrast, 502(c) and 502(a), you can

18 see that when Congress intended to talk about a proof of claim

19 in the Bankruptcy Code, it knew how to do so.  And that the

20 words "proof of claim" cannot be read into and exchanged for

21 every instance where the Bankruptcy Code says "claim."

22          I'm going to turn now to the various contracts and

23 agreements where the estimation process is contemplated.  And

24 so first the sale agreement.  New GM has literally twisted

25 themselves into a pretzel trying to contort the language of

54

1  this first sentence of 3.2.  They consistently failed to cite

2  the first phrase of this sentence, which says, "At any time."

3  And I believe that that's because they realized that that is

4  particularly problematic if you consider the history and when

5  this agreement was actually entered into, because the sale

6  agreement was entered into in July of 2009.  And it says, "At

7  any time, we can -- the sellers can seek an order -- a claims

8  estimate order."

9         At that point, not only was there not a bar date, but

10  there hadn't even been a motion to set a bar date.  The motion

11  to set the bar date was filed on September 2nd, and the bar

12  date for all proofs of claim was November 30th.

13         So what this language actually contemplates, the

14  sellers, Old GM, could have literally gone the very next day

15  and filed a motion seeking to estimate the entirety of the

16  claims against the estate before any of them had been filed.

17  So regardless of what 502(c) says -- and we believe it also

18  authorizes the estimation of claims -- the sale agreement that

19  New GM entered into specifically allows for the estimation of

20  something other than just proofs of claim.

21         THE COURT:  So what would the purpose of the

22  estimation had been at that very early stage of the case?

23         MS. GOING:  So the purpose would be -- I mean, we've

24  understood that to be a purchase price adjustment.  That at the

25  time the sale was agreed to, there was, you know, a belief that

55

1  claims would be in X amount, and if it ended up being that the

2  claims were higher than X amount, then New GM would pay an

3  additional value.  And so that provision --

4        THE COURT:  But that wouldn't be an estimation for

5  distribution purposes.  It would be an estimation for the

6  purposes of determining what New GM had to pay.  Am I right in

7  that?  I mean, because your point that this is all before there

8  even is a bar date.  You have no idea what the amount of the

9  proofs of claim that'll be filed.  And yet the agreement

10  provided that there -- Old GM could've requested an estimation.

11        MS. GOING:  But it's not --

12        THE COURT:  And the purchase price would be adjusted

13  if the estimation was over $35 billion.  But that wouldn't

14  determine any of the amounts that would be paid for

15  distribution.

16        MS. GOING:  I don't believe that actually is the

17  case, Your Honor.

18        THE COURT:  Why not?

19        MS. GOING:  Because if you read the words --

20        THE COURT:  How could it be otherwise?

21        MS. GOING:  Because it's -- because that's what they

22  agreed to, estimating the aggregate allowed general unsecured

23  claims against the seller's estates.

24        THE COURT:  Yeah.  But that doesn't say anything

25  about distribution, who gets what.  And how could it?

56

1          MS. GOING:  You're right.  Okay.  It doesn't say

2    anything about distribution, but it certainly establishes what

3    the total amount of allowed unsecured claims are.

4          THE COURT:  For the purposes of how much new GM had

5    to pay for Old GM, correct?

6          MS. GOING:  That language isn't in there, either.

7          THE COURT:  You're the one who told me that this is,

8    in effect, a provision that deals with a purchase price

9    adjustment.  If you estimate the claims and they're above $35

10   billion, New GM has got to pay more than it previously agreed.

11         MS. GOING:  Absolutely, Your Honor.  But if you're

12   estimating the aggregate allowed amount of general unsecured

13   claims, then you have actually established --

14         THE COURT:  Show me where it says something about --

15   anything about distribution.

16         MS. GOING:  It does not.

17         THE COURT:  Okay.  Go on.

18         MS. GOING:  Turning to the language in the plan.

19   Again, it is consistent with the sale agreement, which provides

20   that the GUC Trust administrator may, at any time, request that

21   the bankruptcy court estimate the contingent, undisputed,

22   unliquidated claims under 502(c) of the Bankruptcy Code.

23   Again, this is -- no mention of estimating proofs of claim, and

24   also indicating that the GUC Trust administrator has the

25   ability to do this at any time.

57

1                And the GUC Trust agreement, again, mirrors the other

2    two documents to provide that the estimation can occur at any

3    time, and it is an estimation of claims, of rights to payment.

4    It's not an estimation of proofs of claim.

5                THE COURT:  Okay.  Isn't that the equivalent of what

6    happens in the asbestos cases when claims are estimated for

7    reserve purposes, not distribution purposes?  Would you agree?

8                MS. GOING:  I do agree.  But -- even --

9                THE COURT:  And here, this settlement contemplates

10   estimating claims for distribution purposes.

11               MS. GOING:  I -- no.

12               THE COURT:  Mr. Weisfelner's shaking his head no.

13               MS. GOING:  I don't agree, because I think it's no

14   different in the asbestos cases.

15               THE COURT:  But it's estimating the aggregate amount

16   that would be paid subject to a plan that would have to be

17   approved by the Court for how it would be distributed.  It caps

18   the amount that's going to be paid for allowed claims.  The

19   part's correct.  Do you agree?

20               MS. GOING:  Exactly.

21               THE COURT:  Okay.

22               MS. GOING:  Yes.  Just like section 3.2 of the sale

23   agreement.

24               THE COURT:  On the asbestos cases.  In fact, because

25   of the jury trial rights, et cetera, the courts have said no,

58

1  this is not for distribution purposes.  It's purposes of

2  reserve, and maybe there's -- you know, a question I've never

3  quite understood is: What happens if there's not enough money

4  in the reserve at the end of the day?

5          MS. GOING:  But that's exactly what we have here with

6  section 3.2 of the sale agreement where it would be capping --

7  seeking estimation to cap the total amount of generalized

8  secured claims.  The reason why I say it's not for distribution

9  purposes is because you -- as you outlined, the resolution of

10 the estimation doesn't actually delineate who gets X dollars.

11 There's an additional process, right?  You are estimating the

12 total amount --

13         THE COURT:  So maybe Mr. Basta's partly correct and

14 partly incorrect that a settlement with the GUC Trust can

15 provide for estimation of the aggregate amount and determine

16 how much, if any, New GM has to -- how many additional shares

17 it has to come forward with.  And that is separate from the

18 issue of distribution.

19         And it may be that class certification for

20 distribution purposes has to happen, but the -- a settlement --

21 not this settlement.  A settlement could provide for estimation

22 for purposes of determining whether New GM has to contribute

23 additional shares.  And some different procedure may have to be

24 followed, including Rule 23 certification to determine who gets

25 what.

59

1            MS. GOING:  I agree with that, Your Honor.

2            THE COURT:  Okay.  Go ahead.

3            MS. GOING:  The last point I just wanted to touch on,

4    the side letter, because it is also consistent with the other

5    agreements.  And again, this is an agreement that New GM signed

6    and is bound by.  And they agreed that we may, at any time,

7    seek a claims estimate order as such term is defined under the

8    sale agreement.  So again, there is consistency throughout

9    these documents.  We're entitled to seek a claims estimate

10   order at any time, and we're entitled to seek an estimate of a

11   right to payment, not just proofs of claim.  There's no

12   limiting language in any of the agreements, nor in the statute.

13           THE COURT:  Okay.

14           MS. GOING:  And I'm going to turn the podium over to

15   Mr. Weisfelner now to address the Rule 23 issues.

16           THE COURT:  Okay.  Thank you very much, Ms. Going.

17           MS. GOING:  Thank you.

18           MR. WEISFELNER:  Good afternoon, Judge.  For the

19   record, Edward Weisfelner together with my partner, Howard

20   Steel.  And on the phone I believe is our co-designated

21   counsel, Sander Esserman, as well as the co-lead counsels,

22   Steve Berman and Elizabeth Cabraser.

23           Your Honor, I apologize we are the only lawyer to

24   address you today who didn't come with a PowerPoint

25   presentation.  I want you to be assured that that's not because

60

1  I'm the only lawyer who's not getting paid by the hour.  It's

2  just that we didn't think the PowerPoint presentation was

3  necessary.  I can assure you that I have prepared remarks that

4  I'd like to ultimately go through.  But I do want to take an

5  opportunity out of sequence, and I will highlight the points

6  again in my prepared remarks to address at least some of the

7  issues that were raised during the colloquy between Your Honor

8  and Mr. Basta.

9          Your Honor asked a question on asbestos cases.  And

10 in particular you asked what happens assuming that the

11 estimation procedures that occur in those cases are for reserve

12 purposes.  And as far as I'm aware, typically once you set the

13 reserve, it's not all over and done with.  What happens, I

14 think in every one of those cases, is the parties then

15 negotiate over and produce what's known as a trust distribution

16 procedure, otherwise known as the TDP.  It's typically

17 negotiated as between the futures representative or futures

18 committee, the current tort committee with or without debtor's

19 involvement.  And it's that trust distribution procedure, which

20 is put out on a notice to all affected parties, that determines

21 who gets what out of the reserve that was set aside.

22         So to the extent that Your Honor still had that

23 question, I wanted to address it.  And it's not unlike what we

24 contemplate in this case.  Assuming that the settlement is

25 approved, assuming there is then an estimation proceeding that

61

1  triggers all or any portion of the adjustment shares, there

2  will be a subsequent procedure negotiated as between lead

3  counsel for the economic loss plaintiffs and lead counsel for

4  the personal injury/wrongful death claims to the extent they

5  still exist after they're mediated and settled by GM.  It will

6  be under the auspices of Judge Cote, and will ultimately be

7  presented to Your Honor on notice to --

8            THE COURT:  Not Judge Cote.  Who's the mediator?

9            MR. WEISFELNER:  I thought it was Cote.

10           THE COURT:  No.

11           MR. WEISFELNER:  Cote.  I'm mispronouncing it.  Cote.

12  And will ultimately be presented to Your Honor --

13           THE COURT:  I have nothing wrong -- I think Judge

14  Cote probably would want nothing to do with this, but --

15           MR. WEISFELNER:  On notice again, Your Honor, to the

16  world.  And, Your Honor, I don't want to prejudge that stage of

17  the proceeding, but were we obligated, required, or suggested

18  that Rule 23 apply at this state, we'll consider it.  But by

19  that time, the adjustment shares having been triggered, GM may

20  be out of our collective hairs then and forever.

21           THE COURT:  Never.

22           MR. WEISFELNER:  But you're probably right.  It's

23  never.  Now, there was a concern, and again, I'll touch upon

24  this in my prepared remarks, about agency and the agency

25  length.  Who's --

62

1          THE COURT:  Well, it's <u>American Reserve</u>.  I mean,

2    this -- I understand -- it's not out of thin air.  I mean, it's

3    case law.

4          MR. WEISFELNER:  Well, sure.  But they're talking

5    about who's going to protect -- for example, Weisfelner has

6    cited for the proposition that we acknowledge 2 million cars

7    can't possibly be part of the estimation.  That's not what

8    Weisfelner said, but let's assume for the purpose of this

9    argument.  Mr. Basta then argues, oh, my God, who's going to

10   protect the 2 million that Weisfelner just threw under the bus?

11         These people on this side of the courtroom reflecting

12   the plaintiff's side had no agency to resolve these issues in

13   favor of any of the plaintiffs who aren't before you, let alone

14   these poor individuals we threw under the bus.

15         Your Honor has posed in the past a hypothetical

16   about, well, why couldn't I do what the settlement in the

17   estimation motion asked me to do in a situation where the

18   debtor scheduled the claims.  And it's been pointed out, well,

19   but if they scheduled it as contingent and unliquidated, it

20   doesn't really get you very far.

21         I think of a different hypothetical that I think

22   addresses the agency point of view.  Imagine, if you would, a

23   situation where you have an ad hoc committee that's very active

24   in the case.  Even an official committee that's very active in

25   the case.  That committee settles a dispute with a debtor in

63

1  possession.  And the resolution of that dispute goes out on

2  notice to the world, the absent creditors, claimholders that

3  the ad hoc or official committee purported to represent, for

4  their consideration and objection.  No objection, or the

5  objections are overruled.

6        That settlement's approved under the court's auspices

7  using 9019, using 105 of the Bankruptcy Code.  No suggestion

8  that you need a class in order to protect the interest of the

9  absent claimants who are invested in the agency of their

10 official or ad hoc committee.

11        Now, Your Honor, I'm sort of glad that I heard Mr.

12 Nomellini -- is that your name?

13        MR. NOMELLINI: Nomellini from Kirkland is here

14 because we're all searching for cases that one could cite to as

15 authority for different propositions.  And I think we quite

16 rightly cited to Mr. Basta's case, MSR Resources.  I think an

17 even more compelling case is a Kirkland case called GenOn.  And

18 I don't know, Paul, if you were involved in GenOn before you

19 left, but you've got to listen to this case.  And I have copies

20 of the pleadings I'd like to hand up to you, and we have a set

21 available for your clerk and one for opposing counsel.  But I

22 think this is a powerfully important case.

23        There were anti-trust actions pending in two

24 different jurisdictions, pre-petition, those anti-trust actions

25 were moved to an MDL.  There were class proofs of claim filed

64

on behalf of two MDL classes.  Those class proofs of claim, the

claims of the underlying class members were resolved between

the debtor represented by Kirkland and the class action

plaintiff's lawyers.

THE COURT:  Had there been a certified class?

MR. WEISFELNER:  No.  And the methodology for giving

notice of the settlement, and an opportunity to be heard and

object was under, gee, I don't know, 9019 of the bankruptcy

rules and Bankruptcy Code section 105.  Not a mention of

section -- Rule 23.  Not a reference to it even though there's

a pending MDL.  Even though the class was never certified.  So

the notion that you can't resolve potentially contested class

claims that are filed as class claims before there's a

settlement without application of Rule 23 is belied by New GM's

counsel's own activities in the GenOn case.  Not to mention --

THE COURT:  Was the settlement approved?

MR. WEISFELNER:  Your Honor, it's interesting.  The

hearing on that settlement was originally scheduled for July

11th.  This hearing, GM's side sought to adjourn.  You weren't

aware of it, but they asked all of us if we could come up with

different dates and propose different dates to you for reasons

that were never made clear to us as to why they needed a

different date.

Once it was clear that we weren't going to move

today's hearing ate, coincidentally or not, I don't know, but

1  the <u>GenOn</u> hearing was kicked to the 25th of July, a couple of

2  days from that.  But I'll tell you, you look at the docket

3  sheet, not one objection to the proposed settlement.  Not one.

4  A settlement, again, of class action proofs of claim that are

5  being resolved by the bankruptcy court without reference to

6  Rule 23.

7            That's to say nothing of the fact, by the way -- and

8  again, I'll stress it when I go through my prepared remarks.

9  Rule 23 applies in accordance with Rule 9014 in an adversary

10 proceeding, X versus Y.  It does not apply to a contested

11 matter.  The late claims motion is a contested matter.  The

12 settlement motion is a contested matter.  The estimation motion

13 is a contested matter, not an adversary proceeding.  And by its

14 terms, that being 9014, Rule 23 does not apply unless the court

15 orders otherwise.

16           THE COURT:  Yeah.  And what <u>American Reserve</u> and

17 other cases have said is that as applied to a proof of -- a

18 class claim, it's a two-step inquiry.  One, whether the court,

19 in the exercise of its discretion, applies Rule 23.  And if the

20 court applies Rule 23, then you have to go on and satisfy the

21 requirements of Rule 23, whether it's a settlement or

22 litigated.  You agree with that?

23           MR. WEISFELNER:  Yes, I do.  And, Your Honor, in

24 particular, we cite for the proposition Your Honor just

25 mentioned.  And the cases that Mr. Basta relied on in his own

1  presentation, the three cases that just said what you said;

2  <u>Musicland</u>, <u>Blockbuster</u>, and Judge Gerber's decision in <u>GM</u>

3  having to do with GM's liability for apartheid.  I didn't

4  really get the connection until I read the case in some detail.

5        But what each of those cases say is we're not going

6  to apply Rule 23 in this matter or trigger its application

7  under 9014 because we have a better mechanism under bankruptcy.

8        THE COURT:  Sure.  If there were potentially 100

9  claimants or 200 claimants, have them file proofs of claim.

10  They don't need a lawyer.  They file a proof of claim.  The

11  Court can deal with it efficiently.  Those situations don't

12  involve 11.4 million potential claimants.

13        MR. WEISFELNER:  Exactly right.  Your Honor, the last

14  point I want to make, and I'll dive into it in greater detail

15  when I get through my prepared remarks, is the reliance on

16  <u>Amchem</u> for the proposition that contested issues involving

17  class certification can't be settled.  That's not what Amchem

18  stands for.  I think we all know by now what the circumstances

19  of <u>Amchem</u> was.  It was a consorted effort among the asbestos

20  plaintiffs' class with large, and the members of the CRV, I

21  think it was called, the various defendant law firms that were

22  part of the -- again, a collective that were dealing with

23  asbestos claims.

24        And the problem that <u>Amchem</u> had was the claims that

25  were being settled and asserted outside of a class context were

67

1  future claims, present claims, broken up into a variety of

2  present claims, asbestosis, mesothelioma, lung cancer, no

3  reference or provision for fear of cancer or a lot of other

4  claims that, in the history of asbestos litigation, weren't

5  getting compensated.  And the argument that was made is, well,

6  wait a second, how could you ever certify this class into the

7  four theories of certification?  Numericity, we'll give you

8  that one.  But commonality.  What's the commonality between

9  someone who died from asbestos and someone who's got pleural

10  thickening?

11          That's why Amchem denied certification and said that

12  if you're going to try and settle the issue of certification,

13  you have to do it under a heightened degree of scrutiny.  It

14  does not stand for the proposition that New GM keeps touting

15  that you can never settle Rule 23 certification issues in the

16  context of a settlement.

17          THE COURT:  I don't think they've taken that

18  position, but maybe you read it that way.  I don't.  I think

19  their position is that a settlement doesn't permit you to

20  ignore the requirements for certification of a class.

21          MR. WEISFELNER:  I agree with that.

22          THE COURT:  You agree with that proposition.

23          MR. WEISFELNER:  I think to the extent that --

24          THE COURT:  That's what I understood their argument

25  to be.

68

1          MR. WEISFELNER:  Yeah.  Well, I think they went a

2    little above board, if not in their paper, certainly in today's

3    presentation.  Where I thought I saw the case cited for the

4    proposition that you can't settle, period, class

5    certifications.

6          THE COURT:  Well, I reject that position.  I don't

7    think that was their position.  But I would reject that

8    position.

9          MR. WEISFELNER:  Good.  Then I'll skip that part of

10   my prepared --

11         THE COURT:  Mr. Basta, go ahead.  (Indiscernible) on

12   this point.

13         MR. BASTA:  I hate to agree with Mr. Weisfelner, but

14   that is --

15         THE COURT:  Sometimes it's worthwhile to -- that's

16   the argument share.

17         MR. BASTA:  Yeah.  Usually it's in another context.

18   But it is our argument, and I can address it now or in --

19         THE COURT:  No.

20         MR. BASTA:  There is case law, Your Honor.  It's not

21   Amchem.  But we cited in our brief cases that stand for the

22   proposition that courts have an independent responsibility to

23   make a determination that every Rule 23 requirement is met, and

24   therefore parties may not settle or stipulate that a

25   certifiable class exists outside of Rule 23.  And there's a

1  body of law that stands for that proposition.

2         THE COURT:  All right.  Go ahead, Mr. Weisfelner.

3         MR. WEISFELNER:  Okay.  Then maybe I will stress it

4  when I come to it.  In any event, let me tell you by way of

5  introduction that --

6         THE COURT:  Well, I read a bankruptcy court decision

7  yesterday which certified a class based on a stipulation of the

8  parties because there had been a state court certification --

9  class certification beforehand, and the bankruptcy court

10 concluded that that was satisfactory, that the stipulation that

11 was entered into was -- basically satisfied the requirements

12 for class certification based on what had been decided in the

13 state court on certification.

14        MR. WEISFELNER:  Your Honor, look, I'm hoping never

15 to go down that rabbit hole with you and Mr. Basta because --

16        THE COURT:  Well, your brief argued at some length

17 that of course you can satisfy Rule 23.

18        MR. WEISFELNER:  Well, you're right, because one

19 always likes to have a fallback position.  But our primary

20 position is that neither the settlement motion nor the

21 estimation motion requires certification of the class in order

22 to protect the interest of absent claims.  And I think that's

23 really the first question, whether the rights of absent

24 claimants are being properly protected in the settlement

25 motion, the estimation motion in our proposed notice.

1          To a lesser extent, and to be generous, I guess the

2   second question is whether New GM's rights are being properly

3   protected in this context, assuming that, one, we're concerned

4   about New GM's rights.

5          Look, it's our position that the proposed notice of

6   settlement and the estimation proceedings utilizing Bankruptcy

7   Rule 9019 and section 105 of the Code is both procedurally and

8   substantively proper and sufficient, and that compliance with

9   Rule 23 is not necessary.  New GM contends, and I have to

10  stress this, without a single case support its position, that

11  this court may not settle or estimate unfiled claims, and that

12  compliance with Rule 23 is mandatory.  No court has ever held a

13  compliance with Rule 23 is required.

14         THE COURT:  Are there any cases that approve

15  distribution to putative claimants that have not filed proofs

16  of claim or are not part of a certified class?

17         MR. WEISFELNER:  Yes, Your Honor.  Every single one

18  of the asbestos claims that had estimation for reserve

19  purposes, and then subsequently had the court's approval of a

20  TDP, a trust distribution procedure.  There were separate

21  procedures for how people put in, for lack of a better term, a

22  "claim" against that trust, and how those claims were

23  ultimately going to be resolved.  And some of the TDPs afforded

24  people the opportunity to opt out into a trial court system.

25  Many of them didn't.

1           THE COURT:  Are there reported decisions that approve

2    distribution to putative creditors, claimants who have not

3    filed proofs of claims or been part of a certified -- I'm not

4    questioning that you say that's what's been done.  But my

5    question is, are there reported decisions that have addressed

6    whether that is a appropriate or not.  I don't remember seeing

7    any.

8           MR. WEISFELNER:  I'm not aware of any.  And one

9    would've thought that the researchers on my end would've found

10   them if they existed.  And I think that the inherent authority

11   of distributions being made through the TDP process was

12   inherent in the original reserve orders that set up the

13   reserve.  But, Your Honor, I can't (indiscernible) find it.

14          THE COURT:  All right.  Go ahead.

15          MR. WEISFELNER:  As I said before, there is no single

16   decision that held that compliance of Rule 23 is required

17   alongside a 9019 procedure.  Now, that's not to say that some

18   courts haven't applied them simultaneously.  Your Honor applied

19   them simultaneously.  My only point is it's not required, and

20   in the context of this case, ought not be required.

21          And let's understand what it is that --

22          THE COURT:  Was Partsearch your case?

23          MR. WEISFELNER:  Say again.

24          THE COURT:  Was Partsearch your case?

25          MR. WEISFELNER:  It may have been my firm's, but it

1 wasn't mine personally, no.

2          THE COURT:  Okay.  I thought it was your firm.

3          MR. WEISFELNER:  Let's remember what we're talking

4 about in this case.  We are talking about what happens to the

5 so-called "adjustment shares" and who's going to get a part of

6 those adjustment shares.  The adjustment shares, at maximum, is

7 worth $1 billion.  We hope to be able to demonstrate to Your

8 Honor that at $1 billion, you're not going to get economic loss

9 claimants, let alone economic loss and personal injury

10 claimants compensated either in full, or compensated consistent

11 with what Mr. Golden's clients got as trust beneficiaries in

12 the past.

13          So in that context, I think we have to remember that

14 we are taking about not planned distributions that otherwise

15 affect other general unsecured creditors.  Here, we're talking

16 about access to a purchase price adjustment that, by design,

17 doesn't injure the trust beneficiaries.  They get to keep what

18 they got, and they get exclusive access to what's left without

19 us crawling up their backs or seeking claw back.  And, in

20 exchange, we get whatever is there when Your Honor considers

21 whether the adjustment shares ought to be satisfied.

22          I want to start with, first, principals.  Absent

23 claimants did not file timely proofs of claim in this case.

24 That's absolutely true.  But I think you have to take into

25 account why.  It was because they didn't receive due process

1  notice of the bar date in the first place, or any indication

2  that they were sold and were operating dangerously defective,

3  life-threatening cars.

4       It's also the case that Old GM didn't bother

5  scheduling the plaintiff's claims, neither as an allowed amount

6  or a contingent amount, or an unliquidated amount.  And that's

7  because Old GM didn't acknowledge that the defects existed,

8  even though they should have known.  It simply pretended that

9  the defects didn't exist.

10       Now, in response to this fairly unique set of

11 circumstances, this court already determined that the proper

12 recourse was for the plaintiffs to seek authority to file late

13 proofs of claim.  In that context, co-leads and designated

14 counsel filed an appropriate late claims motion seeking

15 authority to file a late claim.  And we attached to our late

16 claims motion a proposed class proof of claim, which, as Mr.

17 Basta indicated, we later amended.

18       Interestingly enough, neither the New GM or our

19 adversary at the time, the GUC Trust, insisted at that point

20 that all absent claimants had to file either an individual

21 joinder to our motion, or, for that matter, individual proofs

22 of claim.  Instead, they were happy to rely on the proposed

23 class claim that was filed by designated counsel and co-lead

24 counsel.  Why would they have to rely on the class claim and

25 the late claims motion that we filed?  Because to insist

74

1  otherwise would've cost them millions of dollars to effect due

2  process notice to the absent members that, hey, you better file

3  either a joinder to the late claims motion that Weisfelner

4  filed, or come up with your own proof of claim, because we're

5  never going to acknowledge that you, as a punitive member of

6  this class, filed the claim.

7        They didn't do that because they were happy to rely

8  on the agency, or the representative capacity, of designated

9  counsel.  In fact, New GM has consistently relied on the

10  actions of co-lead and designated counsel in order to have a

11  binding effect on absent claimants.  They did it throughout

12  these proceedings.

13        Just a couple of examples.  In April of 2017, the

14  hearing of -- April 20th hearing, Mr. Steinberg is quoted

15  saying that at the August 31 status conference, designated

16  counsel said, "We perceive ourselves as having taken the mantel

17  of preserving and protecting the rights of non-ignition-switch

18  plaintiffs in this court."  Judge Gerber was looking for

19  someone to be the representative counsel.  And then if anybody

20  wanted to get and effect supplement, what it is that we had to

21  say, he was giving them the right to do that on their own.  He

22  was saying, who is going to -- because we litigated the 2014

23  threshold issues.  We had designated counsel as well, too.

24        And basically, the designated counsel in the

25  bankruptcy court are here.  They're the representatives of the

75

lead counsel in the MDL.  So the Brown Rudnick firm basically,
as I said, is Hagens Berman and Lieff Cabraser's lawyer, and
Mr. Weintraub is Bob Hilliard's lawyer.  And the lead counsel
in the MDL have a responsibility to be the representative
counsel for the economic loss claims and the presale and
post-sale accident claims.

I think that disposes of the agency argument by
waiver.  It goes beyond that.  New GM's opening brief on the
2016 threshold issues at page 34, it's the ECF Number 13865,
quote, "There's no question that non-ignition-switch plaintiffs
and non-ignition-switch post-closing accident plaintiffs are
among those bound by the November 2015 decision, December 2015
judgment.  Designated counsel actively participated in all
bankruptcy court proceedings through the issuance of the
December 15th judgment."  And the point was therefore absent
members were bound.

November 16, 2016, order to show cause.  This is
13-802 in the ECF system explaining that the rulings on the
2016 threshold issues, including the issue of whether plaintiff
should be granted authority to file late claims, would be
binding on all persons.

May 17th, and this is the last example, the hearing
transcript at 203 through 208, New GM's counsel asserts that
all plaintiffs served with a scheduling order identifying
certain issues to be briefed were bound by the rulings on those

76

1 issues and had waived any arguments that were not raised in

2 connection with that briefing.

3         Now, for the first time, GM is saying we've got to

4 really be careful and protect the rights of absent creditors

5 who didn't file claims, because we can't trust the

6 representatives to serve their best interest.  Let's remember,

7 by the way, that the motion --

8         THE COURT:  Well, that's what Rule 23 certification

9 does.  It determines whether the class representatives

10 adequately represent the unnamed, unserved class members.

11 Isn't that correct?

12         MR. WEISFELNER:  Well, you're right.  But, Your

13 Honor, let's talk about what happens in a Rule 23 context

14 versus the paradigm that we presented which is 9019, 105, and

15 notice.  So the difference is, if there is any, every member of

16 our class on whose behalf we proffered a claim as part of the

17 class proof of claim gets a notice that says we settled under

18 Rule 9019 and 105.  Here's exactly what the settlement

19 provides, here's what's going to happen, we're hoping for an

20 estimation proceeding but there's no guarantee.

21         If the estimation proceeding triggers the maximum

22 adjustment shares, we're talking about a lot of money, and that

23 lot of money is going to get divided up pursuant to a

24 subsequent proceeding on notice to you at an opportunity to be

25 heard in front of the bankruptcy court.  Speak now or forever

1  hold your peace.  That's the notice that we contemplate.

2          What's the notice that's contemplated under Rule 23

3  that's better or different?  Listen, folks, there's a class --

4  actually, there are a bunch of subclasses.  The representative

5  members of those class have entered into a single identical

6  settlement across the classes.  To the extent that you think

7  that you're not being properly treated vis-à-vis any other

8  subclass member when you don't even know how much money there

9  is to openly be divided, speak now or forever hold your peace.

10  That's the same notice they're going to get.

11          How is it that compliance with Rule 23, assuming it's

12  required, and we don't think it is, serves the interests of the

13  absent creditors any better than the notice that we're

14  professing?  And there are a lot of reasons, by the way, why we

15  didn't go the Rule 23 route, including most specifically, I'm

16  telling you under Rule 23 there's a settlement.  Don't ask me

17  how much the settlement's for, don't ask me how much you're

18  going to get out of it, you've just got to trust me.

19          And in the Rule 23 context, we thought that was going

20  to be a lot harder to demonstrate.  Maybe not impossible,

21  certainly not impossible, as opposed to telling them under

22  bankruptcy where you have in rem jurisdiction and it's a

23  proceeding against the world, and you have jurisdiction against

24  everyone to say speak now or forever hold your peace because

25  we're asking to give a waiver and a release in favor of

78

1  triggering the estimation procedure which may or may not get

2  you anything.  But if we're successful, it could get you quite

3  a lot to be determined.  The "to be determined" part doesn't

4  really fit the contours of Rule 23 notice as easily as 9019 and

5  105.

6        Now, you've got to remember that our late claims

7  motion wasn't embraced by the GUC Trust.  It was opposed by the

8  GUC Trust, and opposed pretty vigorously.  It was also opposed

9  by the GUC Trust beneficiaries represented by Akin, and it was

10  opposed by New GM.  It was only after discovery and preliminary

11  motion practice that we actually reached a settlement.  Well,

12  we reached a settlement, we had the settlement reneged on, we

13  had the settlement resurrected --

14        THE COURT:  Let's pass over that part of this.

15        MR. WEISFELNER:  Okay.  But now GM contends that the

16  Court can adjudicate the rights of absent claimants without

17  class certification and they're wrong.  Again, I want to go

18  over some of the applicable fundamental principles.

19        We all know that bankruptcy favors settlement.  I

20  don't have to go through all the cites.  They're in our brief.

21  We also know that bankruptcy is a collective proceeding.  Levy

22  v. Lewis, (2nd Cir. 1980).  The bankruptcy court has authority

23  to determine all claims, be they filed or not, to estate

24  property, whether held by present or absent claimants.  The

25  cite to that is both 28 U.S.C. Section 1334(e), as construed by

1    Optical Techs at the Eleventh Circuit, 2005, and the Supreme

2    Court's ruling in Tennessee Student Assistance, 541 U.S. 440,

3    where the Court held, and I'm quoting:  "A bankruptcy

4    proceeding is one against the world."  And that court's in rem

5    jurisdiction permits to determine all claims that anyone,

6    whether named in the action or not, has the property or thing

7    in question.

8            It's in this context the bankruptcy court can issue

9    bar orders under Section 105 to assist in settlements.  It's

10   the Munford case at Eleventh Circuit.  And the bankruptcy court

11   can channel claims to a settlement fund.  That's the

12   Johns-Manville case, Second Circuit 1988, and that's exactly

13   the framework that we're utilizing here.

14           There is a res, the adjustment shares, as when and if

15   they're triggered, Your Honor has in rem jurisdiction to

16   determine everyone in the world's rights as to those adjustment

17   shares.  Once they exist, and only after they exist, we will

18   present Your Honor with a mechanism for how to distribute the

19   adjustment shares, and Your Honor will approve it on notice to

20   everyone that's affected, and everyone will have an opportunity

21   to step forward and claim that the distribution procedure

22   somehow isn't fair or equitable.

23           THE COURT:  So you argue in your brief, and I'm

24   saying the alternative, that class certification is easily

25   achievable here and non-opt-out class because it's a limited

80

1    fund case.  And so if there were a structured settlement that

2    provided for an estimation of the potential allowed amount, and

3    I think Mr. Basta talked about the term has to be potentially

4    allowable.  It was an estimation of the potentially allowable

5    claims and estimation went forward and it determined that GM

6    has to pay 750 million in value, and then the question is, who

7    gets that?

8            I know you say that it's been done in the asbestos

9    cases through a separate trust and there are procedures about

10   how distributions are -- claims against the trust,

11   distributions from the trust.  That's why I ask were there any

12   cases that support that construct.

13           The settlement that's before me as part of the

14   questions I asked this morning -- sorry they were so late --

15   but about does this settlement terminate if the Court requires

16   Rule 7023 certification, really for distribution purposes?

17   Okay.  And I don't know -- I'm sure New GM would be even less

18   thrilled if the Court determined that the potentially allowable

19   claims total a billion dollars and then a year later it turns

20   out, well, there really are only 750 million who are entitled

21   to receive a distribution, what happens to that extra $250

22   million?  New GM is required not to wait until the end of the

23   day, but if the GUC Trust --

24           MR. WEISFELNER:  Well, see, that's where we think

25   GM's rights are going to be protected in the context of the

81

1  estimation proceeding.

2          THE COURT:  I'm sure they're thrilled and very warmed

3  by your saying that.

4          MR. WEISFELNER:  No, I know.  But that's opposed to

5  them standing up and telling Your Honor that we need to protect

6  the rights of the absent class members.  Now, to the extent

7  that they're talking about their rights, listen, I don't want

8  to pay a billion dollars' worth of value, and somehow you're

9  going to come up with a distribution procedure that's only

10 going to allocate 750.  What do we -- think about the logic of

11 that.  We have to convince Your Honor in estimating the claims

12 in order to hit the maximum that we're 10 billion above the

13 current threshold.  So having put on that case that we're

14 10 billion above the threshold, triggering the billion dollars,

15 we then have to apply the billion dollars to, by definition,

16 $10 billion worth of claims.  It's a ten-cent-on-the-dollar

17 maximum distribution.

18          I can assure Your Honor, on penalty of being

19 disbarred, we're not going to have $250 million left over to

20 return to Mr. Basta's client.  That concept makes no sense.

21          THE COURT:  I know I'm taking this out of order, but

22 the questions I asked in the order I entered this morning, can

23 you tell me whether this settlement terminates if the Court

24 concludes that 7023 certification of economic loss claimants is

25 required?

82

1           MR. WEISFELNER:  Okay.  Your Honor, I've had an

2    opportunity to consult with one of my lead counsel.  I've had

3    an opportunity to think about the question.  I've had an

4    opportunity to talk to Drinker Biddle.  My understanding is

5    they haven't had an opportunity to consult with their client.

6    My view and the view of the people I've been able to consult

7    with so far is that the settlement lives.  We may have to go

8    through it on a line-by-line basis to see what, if any, changes

9    need to be made to it.  But the concept of the settlement, the

10   purpose of the settlement, the benefits of the settlement we

11   think lives whether Your Honor requires certification of the

12   class or not.

13          Your second question is, suppose Your Honor openly

14   denies certification of the class, and I can give you my

15   informed, thoughtful --

16          THE COURT:  I don't think I asked that.

17          MR. WEISFELNER:  Yeah, I thought you asked what

18   happens if Your Honor applies Rule 23 and we can't comply with

19   it.  All right.  The thing the signatory plaintiffs prepared to

20   modify to provide the settlement terminates only if the Court

21   does not certify one or more of the classes.

22          THE COURT:  By that question, what I thought I was

23   asking is, so if the GUC Trust and the signatory plaintiffs

24   agree that either the current settlement or as modified would

25   require, if the Court determined, required 7023 certification

83

1   of classes.  If at the end -- I was I guess expressing that if

2   a condition is -- if certification's not given, either side has

3   the right to terminate the agreement.  It's not, you know, back

4   to the drawing board.

5           I was really -- the second question followed from the

6   first.  Does the proposed settlement terminate if the Court

7   concludes settlement approval of economic loss claimants

8   require certification of one or more classes?

9           MR. WEISFELNER:  And I think the answer to that is

10  no.

11          THE COURT:  Well, you say no, but you -- justifiably,

12  I only asked the question this morning.

13          MR. WEISFELNER:  Right.

14          THE COURT:  And if, at the end of the day, I conclude

15  I can't certify the class, does the GUC Trust as signatory

16  plaintiffs have the right to declare the agreement terminated?

17          THE WITNESS:  I haven't thought about it, but I would

18  think we'd all want to reserve the right if Your Honor doesn't

19  certify the class to think about whether or not there's any

20  basis to go forward.  If you've required Rule 23 to apply and

21  we can't comply with Rule 23, then I'm not sure the question is

22  anything other than moot.

23          THE COURT:  All right.

24          MR. WEISFELNER:  I mean, let me quickly try and --

25          THE COURT:  Go ahead.  Go back to your prepared

84

1  argument.

2        MR. WEISFELNER:   -- and complete this.   Your Honor,

3  GM takes the position that the bankruptcy court can approve

4  this settlement of class proofs of claim without first

5  certifying the class.   However, as I've indicated, counsel for

6  New GM is seeking to do just that in the (indiscernible)

7  bankruptcy case.   And Your Honor can read it for yourself, but

8  that's --

9        THE COURT:   Not tonight.

10        MR. WEISFELNER:   But that's exactly what is going on

11  there.

12        THE COURT:   Did they file a brief in support of what

13  they were doing?

14        MR. WEISFELNER:   Just the motion, no brief.   And,

15  again, I don't think they anticipate and the docket doesn't

16  reflect any objections.   As an aside, we should also point out,

17  as I think I have already, that Rule 23 doesn't even apply

18  unless the Court orders otherwise.

19        By the way, I want to go back to the presentation

20  that New GM gave you, and in particular I want to point to

21  page 42 where you are taken through all of the applicable

22  rules.

23        THE COURT:   I actually turned over that page 42,

24  turned over the corner of it to go back and look at it, so go

25  ahead.

85

1          MR. WEISFELNER:  Yeah, they talk about 302(a),

2    303(c)(2), 321, 502.  What they didn't reference is Bankruptcy

3    Rule 3004.  3004 provides in relevant part that the debtor or

4    trustee may file a proof of claim on behalf of a creditor that

5    has failed to file a timely claim.  Let's do that again.  That

6    rule provides that a debtor can file a claim on behalf of a

7    creditor that missed the bar date.

8          Well, as a practical matter, what does our settlement

9    with the GUC trust do?

10          THE COURT:  Yeah.  The rule provides that they file a

11    proof of claim within 30 days after the expiration of the time

12    for filing claims.

13          MR. WEISFELNER:  Right.  But let's remember this

14    case, okay?

15          THE COURT:  You say that time hasn't run because of

16    the due process notice.

17          MR. WEISFELNER:  There was no effective bar date.

18          THE COURT:  Okay.  All right.

19          MR. WEISFELNER:  So my point is, if the debtor, which

20    is now being represented by the GUC Trust, could otherwise file

21    a proof of claim on behalf of all the absent members, and then

22    could settle those claims -- and this is not in the context of

23    a plan.  This is in the context of whacking up a price

24    adjustment.  That seems to be the construct of what we're

25    asking for.

1           THE COURT:  Well, that's kind of what I inartfully,

2    without going to the rules, was basically what I was asking

3    about at the last hearing.  I did it inartfully, but what

4    you're suggesting is is that Rule 3004 would permit the GUC

5    Trust to file them as unliquidated proofs of claim for all

6    economic loss claimants.  Is that -- am I --

7           MR. WEISFELNER:  That's my point, that, you know, it

8    sort of does away with their agency argument.  They didn't like

9    us as an agent in this context.  They liked us as agents every

10   time they were looking to bind the absent members, but now they

11   don't like us as agent.  Well, do you like the debtor as an

12   agent consistent with the bankruptcy rules itself?  Your

13   Honor --

14          THE COURT:  Have you looked at what the law is with

15   respect to Rule 3004 and how it's been applied?

16          MR. WEISFELNER:  I have not.  But, you know, again,

17   it contemplates debtor's filing of late claims if the creditor

18   has blown a bar date by 30 days.  So then applicable to our

19   case, you know, the creditor blew a bar date through no fault

20   of its own by a period of a couple of years.  All I'm saying

21   is, if you think about it conceptually, you know, if a debtor

22   can file a claim --

23          THE COURT:  I don't know what the --

24          MR. WEISFELNER:  -- can't the debtor's representative

25   file a claim?

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

87

1          THE COURT:  Yeah, I don't know.  That's why I asked

2    you whether you actually researched it, but I don't know

3    whether or how it's been applied, but go ahead.

4          MR. WEISFELNER:  In any event, you know, I look at

5    the due process notice, and again, you know, sort of thinking

6    about what greater rights are we affording the absent creditors

7    here if we do Rule 23 or we do Bankruptcy Rule 9019?

8          THE COURT:  Well, yeah.  Sometimes the Supreme Court

9    insists that procedures be followed precisely, if the rules

10   require, in order to distribute from a debtor, debtor's estate

11   to a creditor, that there be an allowed proof of claim.

12         MR. WEISFELNER:  Sure.

13         THE COURT:  Maybe there is a way you think you could

14   do it without it.  But if the rules require it, sometimes the

15   Supreme Court requires you do it that way.

16         MR. WEISFELNER:  Right.  But I don't --

17         THE COURT:  The bankruptcy court can't deviate from

18   what the code and the rules provide.

19         MR. WEISFELNER:  Your Honor, I don't disagree.  But

20   not only don't we have a Supreme Court decision that says that,

21   we don't have a district court case that says that.  We don't

22   have --

23         THE COURT:  Well, but Mr. Basta cites a number of

24   code sections that say you have to have -- there has to be a

25   claim that's been asserted.

1           MR. WEISFELNER:  Right.  But we can also -- and the

2    plan provides and the sale agreement provides that Your Honor

3    can estimate claims for allowance purposes.  Once the claim is

4    estimated for allowance purposes, the only operative then issue

5    is for distribution purposes.  And the Code sections talk about

6    distributions in the context of a plan of reorganization.

7           The distributions we're talking about is in the

8    context, not of the plan of reorganization, but of the sale

9    agreement and the triggering of the additional sale proceeds

10   because the claims were above a certain threshold amount.  So

11   it's outside the context, I would suggest, Your Honor, of the

12   code provisions that New GM cites to where we've talked about

13   though shalt not get a distribution under a plan of

14   reorganization unless and until your claim is allowed.  Well

15   that's nice.  We didn't have an opportunity to have our claims

16   allowed together with everyone else's back in 2009.

17           THE COURT:  And the answer to that is that, if you're

18   permitted to file late claims, you'll get your chance now.

19   It's not equitably moot because there is this accordion feature

20   that would require New GM to pony up a lot more value.

21           MR. WEISFELNER:  I sort of agree and disagree for the

22   following reason.  Had I been allowed way back when, before

23   distributions started to be made to anybody else, and we're

24   talking about distributing the extra billion dollars worth of

25   claims, everyone would have had a pari-passu distribution of

89

1  some dollar amount.  By definition, the GUC Trust beneficiaries

2  would have gotten less cents on the dollar than what they've

3  already received.  And by definition, if I get 100 percent of

4  the adjustment shares worth a billion dollars on account of

5  $10 billion worth of claims, by definition, my constituent

6  doesn't get more than ten cents on the dollar.

7       So the general rule that says you've got to comply

8  with the code provisions that talk about allowance of claims

9  for a distribution I suggest have already been violated, not by

10 us, but by GM --

11      THE COURT:  But Judge Gerber recognized that -- he

12 gave with one hand, he said the remedy is motion for late

13 claim, and he took away with the other by saying equitable

14 mootness.  Second Circuit vacates equitable mootness.  And

15 there is certainly nothing in what Judge Gerber said that

16 indicated -- and I didn't see anything in the arguments that

17 were made to him, because I did look.  There was nothing in the

18 arguments that suggest that he was made aware that there was

19 this accordion feature that potentially required New GM to

20 contribute an additional $1 billion.

21      MR. WEISFELNER:  Well, I can assure Your Honor that

22 Judge Gerber was very much aware.

23      THE COURT:  I'm not so sure about that.

24      MR. WEISFELNER:  It was in the papers and it was in

25 oral argument.  But neither here nor there, my point is this:

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

1  To slavishly adhere to the code provisions that talk about the

2  filing of claims, the allowance of claims for distribution

3  purposes is really outside the context of what this set of

4  motions is all about.

5       THE COURT:  You know, like or not, Mr. Weisfelner,

6  the Supreme Court has limited the power of bankruptcy judges to

7  depart from express provisions of the code.  I can't use 105

8  because I think it would be more fair to folks to simply

9  disregard what express code provisions require.

10      I feel quite constrained by that, particularly if the

11 code and rules provide an avenue to potentially allow the

12 signatory plaintiffs to accomplish exactly what they want.

13 Maybe not the way they want to do it, but it does provide

14 provisions that could get you there.

15      MR. WEISFELNER:  And I guess all I'm saying is, if I

16 take a look at 502 and I think about the allowance of claims as

17 mandated by the bankruptcy code, and I talk about who can file

18 a claim under the bankruptcy rules, and I think about the

19 purpose for which the settlement and estimation motions are

20 going forward, and it's not for distribution under a plan.  And

21 in particular, you know, their argument under Section 3.2 of

22 the sale agreement, you've got to take a look at the

23 legislative history of the sale agreement.

24      And I think this sort of plays into my argument on

25 the statute and where I think Your Honor does have authority to

1  estimate these claims for purposes of triggering the adjustment

2  shares subject to Your Honor's enforcement of whatever

3  distributive mechanism we put forward before you, which may or

4  may not require some additional protections.  But 3.2 was

5  designed in order to avoid improper dilution to the GUC Trust

6  beneficiaries.

7          Well, you think about it, this is exactly what our

8  settlement achieves.  You get and keep everything that you were

9  given before under the plan.  We get and keep only what we can

10  demonstrate on the back of our own claims, not yours, would

11  trigger the adjustment shares.  The claims and the allowance of

12  claims up to this point in the case is done.  It's below the

13  threshold to trigger the adjustment shares.

14          They ain't never going to get triggered unless you

15  allow the people who were deprived of the right of filing

16  proofs of claim and who relied because everyone wanted them to

17  rely on us filing a class proof of claim on their behalf.  Your

18  Honor, you're not allowing these claims for distribution

19  purposes pursuant to a plan.  You're allowing these claims for

20  subsequent consideration of distribution pursuant to procedures

21  that will be developed and presented to you with an opportunity

22  to consider them and object down the road.

23          And for those reasons, I think it's the height of

24  irony that New GM would force a Rule 23 compliance here so that

25  we can then argue about whether or not we comply with Rule 23.

92

1  This thing will drag on for another period of time, which is

2  not the be-all and end-all of whether or not you've got to

3  comply with the law.  I get that.  But again, Your Honor, I

4  suggest to you, with all humility and respect, that there's

5  nothing in the code or the rules --

6        THE COURT:  That's like saying with all due respect

7  Your Honor, but --

8        MR. WEISFELNER:  I guess it is like that, so maybe

9  I'll just say it straight out.

10       THE COURT:  Why don't you drop that part.

11       MR. WEISFELNER:  Listen, Judge, I think that

12 construction of the statutes that provides that anytime you

13 have a proof of claim that has been settled in terms of whether

14 or not it represents allowed or allowable claims, and the

15 debtor is simply saying I don't have any objection to the

16 allowance of the claims, but I don't know how much the claims

17 are worth so I'm asking the Court to please estimate them.

18       THE COURT:  Well, you know, I'm wondering would the

19 GUC Trust by itself have standing to tell the Court we are

20 going to permit the filing of late claims for both personal

21 injury, wrongful death, and economic loss plaintiffs, and we

22 request pursuant to the sale agreement and the side letter that

23 we go forward now and estimate the expected allowed amount of

24 general unsecured claims, and no Rule 23 certification is

25 required to do any of that.

1          Once you have determined the estimated aggregate

2    allowed amount of the claims and the amount of additional

3    shares that New GM is required to give us, the Court will then

4    be asked to determine how it should be distributed.  And it is

5    possible that the Court will have -- that it will require

6    certification of classes of economic loss claimants in order to

7    do the distribution.

8          But there is nothing in the Code or in the sale

9    agreement or the side letter that requires certification of

10   classes or class for distribution purposes in order to

11   authorize the Court to go ahead and estimate the claims.  And

12   let's say I go through and do that and determine that

13   $750 million, and GM's going to appeal and do whatever it's

14   going to do, and if it prevails, you know, if the GUC Trust

15   prevails, GM better come up with the value.

16         And the issue about -- because nobody is presenting

17   me with a plan of distribution.  It's all subject to further

18   negotiation agreement and ultimately approval of the Court.

19   And I would commend Magistrate Judge Cott for trying to hammer

20   that out.

21         What about what I just said doesn't work?

22         MR. WEISFELNER:  Well, I'll let Your Honor into the

23   thought processes when we were negotiating this not with

24   Drinker Biddle but with their predecessor.  And among the

25   alternatives that were being suggested is a single solitary

1  motion along the lines that Your Honor suggested.  We'd like

2  Your Honor to estimate the aggregate allowed amount of claims

3  to determine whether or not the adjustment shares are

4  triggered.

5          The problem with that is that you have some embedded

6  issues that we thought the settlement was required for.  For

7  example, we have a determination by a variety of courts,

8  including the Second Circuit, that there was a depravation of

9  due process as it related to the ignition switch defect cars

10 cap letters.  This settlement also resolves whether or not the

11 non-ignition switch defect claimants suffered a due process

12 right such that they too should have their claims estimated.

13         Notice I didn't use the word ability to file late

14 claims but have their claims estimated.  And there were other

15 discrete issues that were settled.

16         THE COURT:  And it would seem to me on that specific

17 issue that the GUC Trust could also say, yes, we recognize that

18 there are unadjudicated issues regarding due process violations

19 for other than these few recalls.  And we have decided in

20 consultation with the signature plaintiffs that we will permit

21 late claims to be filed on behalf of all putative claimants

22 where there have been all of the -- they're going to have the

23 burden of showing if there's been the ignition switch defects

24 that -- not the ignition, this other kind of defect; a lot of

25 them were related to the ignition switch -- resulted in

95

1  economic loss or was the cause of personal injury and wrongful

2  death.

3         MR. WEISFELNER:  But you already said that they'd

4  have to file punitive claims.  Who's filing?  What claims?

5         THE COURT:  No, I didn't say that.  I'm clearing up

6  putative claimants, okay, as opposed to filed claimants.  And I

7  guess the reason I'm, you know, anticipating that New GM's

8  going to argue, but this group of plaintiffs don't have the

9  authority to go ahead and negotiate with the GUC Trust, and so

10 I'm trying to cut that part out.  It seems to me everything

11 I've suggested the GUC Trust could have decided on its own.

12        It could have decided, yes, we recognize that there

13 are these additional potential due process violations, and we

14 have decided not to contest that.  We've decided to permit late

15 claims on behalf of economic loss claimants who can show that

16 the value was affected by all of these other recalls, as well.

17        MR. WEISFELNER:  Well, Your Honor, certainly I will

18 assure Your Honor that if Your Honor were to, unfortunately

19 from our prospective, rule that Rule 23 does apply, we will go

20 back to the drawing board and determine a mechanism that either

21 avoids it or complies with it.  But we think this settlement,

22 as negotiated between us, the GUC Trust, and the GUC Trust

23 beneficiaries makes imminent sense.

24        THE COURT:  You know, I could be wrong about this and

25 then go back and read a lot of materials again.  It strikes me

1  that the Rule 23 issue really only comes into play with respect

2  to distribution.

3            MR. WEISFELNER:  And, Your Honor, it strikes us the

4  same way, that it certainly doesn't apply to the settlement or

5  estimation and may in fact apply down the road to distribution.

6  Not that I'm conceding it will, but I certainly believe that

7  the Court's power under 9019 and 105 is sufficient to get us

8  through --

9            THE COURT:  Look, Mr. Basta talked about potentially

10 allowable general unsecured claims.  He says the claim has to

11 be filed for it to be potentially allowable.  I'm not reading

12 the sale agreement or the side letter as for the purposes of

13 requiring estimation to determine how much in value from

14 additional shares should be considered as requiring that.

15           MR. WEISFELNER:  Your Honor, we agree.  And if you

16 don't have to have a filed claim, then I don't think you have

17 to worry about certifying --

18           THE COURT:  Well, I may have to worry about it before

19 I can approve distribution.

20           MR. WEISFELNER:  And, Your Honor, I'm prepared to

21 concede that solely for purposes of today because I think we

22 can get through settlement and estimation.

23           THE COURT:  But ere is the question, and this was the

24 reason for my order.

25           MR. WEISFELNER:  Okay.

97

1           THE COURT:  If you enter into a -- hypothetically, if

2   you enter into a proposed settlement that requires A, B, and C,

3   and the Court concludes I can't agree with C, does the

4   settlement agreement fail and is it thereby terminated?  Okay.

5   I might agree with this construct that there's a settlement

6   agreement, it requires estimation, and those go forward, but I

7   don't agree that I can approve distributions without 7023, you

8   know, class certification.

9           So that's why I asked the question.  Does this

10  settlement agreement in effect provide that, if I conclude

11  Rule 7023 class certification is required for distribution, the

12  settlement's terminated?

13          MR. WEISFELNER:  And, Your Honor, I don't believe it

14  is terminated.  I believe we can --

15          THE COURT:  I've read it four times in the last

16  couple of days and it's unclear.

17          MR. WEISFELNER:  Well, to the extent it's unclear, we

18  will make it crystal clear if we're lucky in our negotiations

19  with the parties.  I believe that's our intent.  I do believe

20  that Your Honor could move forward to the settlement and

21  estimation motion even after telling all of us that we will

22  never get to distributions absent fill in the blank, whatever

23  Your Honor ultimately tells us you're going to fill in.  To our

24  mind, the hard part --

25          THE COURT:  I haven't made up my mind.  I want to

98

1   make that clear, Mr. Weisfelner.

2           MR. WEISFELNER:  And I know that.  And all I'm

3   suggesting, much in the way that people try and figure out what

4   the way forward is, I think we set a date for notice, figure

5   out if the notice is appropriate.  Because if we do have some

6   issues that have cropped up based on our meet and confer, which

7   I won't go into today --

8           THE COURT:  You'll solve those.

9           MR. WEISFELNER:  We may or may not solve those.  We

10  may need Your Honor's approval on the methodology of resolution

11  that we've temporarily come up with.  I will just tell you that

12  it looks like it's going to cost many, many millions of dollars

13  above the $6 million budget to give actual notice to everyone

14  because GM claims that they don't have the information, you

15  have to go to Polk to get.

16          Polk will take four to six months to get it at a

17  price of 11 cents per registration.  And if the car's flipped

18  over multiple times, it could be 11 cents, not times 11.4

19  million vehicles, but 11 cents time a multiple of 11.4.

20          THE COURT:  Let me ask, and I -- my notes are buried

21  under here, and I intended to ask this -- I wanted to ask this

22  question.  It's unclear to me whom you believe -- what is the

23  scope of -- I know you use the small C class as opposed to the

24  big C class, certified class.  Who are the claimants who you

25  are seeking to have compensated on the economic loss claims?

1  Is it only those people who owned their vehicles at the time of

2  the sale to New GM?  What about used car purchasers who

3  purchased post-sale to GM pre-recalls?  So the sale is 2009,

4  the first recall is 2014.  What about people who bought used

5  cars between 2009 and the first recall in 2014?

6         MR. WEISFELNER:  Your Honor, that's why you were

7  right and Mr. Basta was wrong when you talked about the

8  differences between the MDL and the bankruptcy.  The answer to

9  your specific question about who we purport to bind in this

10  settlement and benefit through this settlement is anybody who

11  suffered an economic loss because of their acquisition of a GM

12  car up through and including the date of the sale, July of

13  2009.  That would include the original purchasers, whatever

14  year they bought their cars, and any subsequent owners of those

15  same vehicles by virtue of used car sales, be they --

16         THE COURT:  Up to 2009.

17         MR. WEISFELNER:  Right.  Be they direct or

18  certified --

19         THE COURT:  Not post-2009.

20         MR. WEISFELNER:  Not post-2009.  I hope I got that

21  right.  Someone throw something at me if I'm wrong.  I got it

22  right.

23         Your Honor, I just want to flip through my notes

24  quickly to make sure I haven't left anything off.

25         Again, we cited any number of different decisions

1  including the Supreme Court in Martin v. Wilks, a 1989

2  decision, that where you have a special remedial scheme that

3  forecloses successive litigation by non-litigants, for example,

4  in bankruptcy or probate, legal proceedings may terminate

5  preexisting rights if the scheme is otherwise consistent with

6  due process.

7         Ephedra which my adversary cited, it does stand for

8  the proposition that the superiority of class action is lost in

9  bankruptcy.  That's the quotation.  Judge Rakoff stated that

10 bankruptcy notice directed specifically at class members is a

11 proper substitute for the protections provided by the notice

12 requirements of Rule 23.

13        We talked about how we view the Amchem decision.  It

14 doesn't say you can never settle the issue of Rule 23, only

15 that if you do try and settle it, the Court has to deal with

16 heightened scrutiny.  Estimation according to New GM is only

17 done in the plan context.  You only have to look at Chemtura

18 out of the Southern District 2011 to see all the collected

19 cases there where estimation was done for a variety of

20 purposes -- reserves, voting, channeling claims, and a bunch of

21 other stuff.

22        And we think MEASURE is a good example of a court in

23 this jurisdiction estimating a claim without a proof of claim

24 having been filed.

25        THE COURT:  Channeling claims, doesn't that require

101

1  that at some point in time, as specified in whatever the

2  agreement is, people have to come forward and put in their

3  claim?

4         MR. WEISFELNER:  Well, Your Honor, again, there's

5  going to be a mechanism devised by virtue of discussions

6  between plaintiffs' lawyers, both economic loss and personal

7  injury, that affords everyone an opportunity to assert their

8  entitlement to adjustment shares in a manner that is as

9  efficient and fair as possible.  And, Your Honor, or the

10 mediation judge, if you don't like the way we propose to give

11 notice, you don't like the way people stand up and say here's

12 what I'm entitled to and here's why, you'll let us know and

13 there will be no distribution until it's all approved.

14        THE COURT:  Tell me, if you assume that I conclude

15 that 7023 class certification is required and that the

16 agreement is not terminated, it's either modified or does not

17 terminate, how would you propose to proceed?

18        MR. WEISFELNER:  Your Honor, I'm not sure.  And I

19 want to take an -- and the reason I say that is because I have

20 some definitive ideas.  I don't want to be so forward as to

21 assume what the GUC Trust is going to agree or not agree to,

22 and especially, you know, without some input from the GUC Trust

23 beneficiary.

24        THE COURT:  Okay.  Fair enough.

25        MR. WEISFELNER:  Your Honor, I'd also request that

1  the Court take careful consideration of the <u>Hoffinger</u> case.

2  That was the pool case where the Court concluded there were

3  likely to be other claims that arose in the future because of -

4  - I don't remember if it was bad construct of the pools or

5  whatnot.  And in that case, the Court estimated claims, future

6  claims, without having the benefit of any proof of claim having

7  been filed.

8           <u>Owens Corning</u>, <u>USG</u> are two of the asbestos cases --

9           THE COURT:  Yeah, but people don't collect unless

10  they --

11          MR. WEISFELNER:  Unless they make --

12          THE COURT:  The asbestos is future claims and --

13          MR. WEISFELNER:  That's right.  And there's some

14  mechanism in the trust beneficiary documentation that gets

15  people their entitlement to the distribution.

16          THE COURT:  Does that -- are there any cases that

17  excuse the filing of prepetition collections and provide for

18  distributions to injured people who suffered injury

19  prepetition --

20          MR. WEISFELNER:  Yes.

21          THE COURT:  -- and didn't file proofs of claim?

22          MR. WEISFELNER:  Yes.  Many of the asbestos cases, as

23  Your Honor may or may not know, are typically divided up into

24  different disease categories.  The diseases, some of the most

25  significant diseases, don't manifest themselves, so you had the

1  injury but it hasn't manifested itself yet.  This goes to the

2  whole issue of triggering insurance coverage is that the

3  claimants made policies that covered you during exposure or

4  during manifestation, and we've got the ruling that applies to

5  everybody.

6          But in any event, if you've got pleural plaques,

7  you're entitled to a certain level of distribution.  That's a

8  prepetition claim.  But what the trust distribution procedures

9  provide for is if your pleural plaques ultimately result down

10 the road in the manifestation of cancer or more serious

11 mesothelioma, then there are provisions in the trust

12 distribution mechanism for your claim to be accorded additional

13 funding.

14         Let's remember that what's different about this case

15 than all of the other asbestos cases is your economic losses

16 aren't getting any worse.  They ain't getting any better, but

17 they're not getting any worse over time.  So the complexity of

18 the trust distribution procedures in some of these mass tort

19 cases where exposure and manifestation can be years apart are

20 very, very complicated.

21         I know we're working on the Takata case and coming up

22 with distribution methodologies for people who suffered an

23 injury based on the Takata air bags.  And, again, it's a more

24 streamlined process because we're not talking about the

25 injuries getting any worse.

1        THE COURT:  You know, I've never had to apply 524(g),

2   but is there anything in 524(g) that deals with people who've

3   suffered prepetition injury but didn't file a proof of claim

4   able to be paid in the trust?

5        MR. WEISFELNER:  Well, yeah.  I mean, what 524(g)

6   says, and I acknowledge that it is specific to the asbestos

7   arena, is that whatever prepetition claims you have against the

8   debtor are channeled to the fund that we've established.

9   Remember the fund is typically made up primarily of insurance

10  proceeds, so the channeling channels your claims to that fund

11  and typically releases the contributing insurance carriers.

12       THE COURT:  You know, my question is are people who

13  are injured prepetition but didn't file a proof of claim, does

14  524(g) cover them as well?

15       MR. WEISFELNER:  It does, but some would argue that

16  the guaranty of 524(g) comes in the fact that you need a

17  75 percent vote in favor.  And then questions do arise if we

18  don't know who has a prepetition claim.  Do we count them as

19  part of the 75 percent or not?  But otherwise the asbestos

20  cases and other cases do estimate prepetition claims without

21  the benefit of a filed proof of claim.

22       Chemtura collects those cases, and there are plenty

23  of other cites in our brief, not to mention MEASURE, where

24  prepetition claims get estimated without the benefit of a filed

25  proof of claim.  In fact, in MEASURE, they were estimating

1 rejection damages.  The debtor hadn't even filed the motion to

2 reject yet.  It was just trying to estimate it so it understood

3 whether or not it should sell the asset with or without the

4 contract attaching to it.

5          THE COURT:  Right.

6          MR. WEISFELNER:  I'm just going to go through the

7 last pages of my notes.  I don't think I've missed anything.

8          Obviously, Your Honor discerned when you were getting

9 all these arguments about what we said in our late claims

10 motion, what we said in our proof of claim about the class

11 actions was all done before we settled.

12          THE COURT:  Briefly, Mr. Weisfelner, can you go

13 ahead --

14          MR. WEISFELNER:  Your Honor, I have nothing else.

15          THE COURT:  Could you briefly address the issue of

16 overlap between class certification in the district court and

17 what's happening here?

18          MR. WEISFELNER:  I can, Your Honor.

19          First and foremost, I think you have to understand

20 the defendant.  The defendant in this matter is Old GM, as

21 represented by the GUC Trust.  The defendant before Judge

22 Furman is New General Motors.  And putting aside the claims

23 that sound in the nature of successor liability, New GM is

24 being pursued for what is commonly referred to as independent

25 claims.

1        What is it that New GM did, or failed to do, that

2   caused the injury either to economic loss parties or personal

3   injury wrongful death parties, having nothing to do with what

4   it is Old GM did or failed to do, with the exception of

5   successor liability, and having everything to do with duty to

6   warn, failure to recall in a timely fashion, and other

7   independent claims?

8        THE COURT:  So your view of it is the MDL concerned

9   successor liability and independent claims?

10        MR. WEISFELNER:  Not only that, but it's considering

11   and the timeline that you've seen for certification is

12   certification for trial purposes and not certification for

13   settlement purposes.  And there are other --

14        THE COURT:  All right.  We're going to end here.  I

15   am likely to speak with Judge Furman about the class

16   certification issues that he is being asked to or is likely to

17   address and what, if any, because if I conclude Rule 7023

18   certification is not required, there won't be any.  But if I

19   can conclude 7023 certification is required, to what extent is

20   there overlap?  New GM deals with that extensively in their

21   motion for stay which we're not arguing today.

22        But I just want to put everybody here on notice that

23   I am going to be away part of -- I'll be back next Thursday.

24   After I return, I expect to speak with Judge Furman about

25   what's been happening here today and what the path forward is

107

1  likely to be.

2          Mr. Basta, I don't want to hear any further argument

3  today.

4          MR. BASTA:  Understood, Your Honor.  I was just going

5  to try to respond to Mr. Weisfelner's points, but I understand.

6          THE COURT:  Okay.  I've read a lot of paper and I

7  appreciate the arguments that have been made, and the

8  PowerPoints from Mr. Basta and Ms. Going.  Mr. Weisfelner likes

9  to talk it rather than show it.

10          Okay.  Thank you, very much.  We're adjourned.

11      (Proceedings concluded at 5:03 p.m.)

12                          *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25

108

## C E R T I F I C A T I O N

I, Ilene Watson, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

ILENE WATSON, AAERT NO. 447     DATE:  July 21, 2018

ACCESS TRANSCRIPTS, LLC

## C E R T I F I C A T I O N

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

ALICIA JARRETT, AAERT NO. 428     DATE:  July 21, 2018

ACCESS TRANSCRIPTS, LLC