**OBJECTION DEADLINE:  September 24, 2018 at 5:00 p.m.**
**HEARING DATE AND TIME:  October 2, 2018 at 3:00 p.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                                      :        Chapter 11
                                                            :
MOTORS LIQUIDATION COMPANY, *et al.*,     :        Case No.: 09-50026 (MG)
                  f/k/a General Motors Corp., *et al.*    :
                                                            :        (Jointly Administered)
                        Debtors.                            :
---------------------------------------------------------------x

## NOTICE OF MOTION BY GENERAL MOTORS LLC
## TO ENFORCE THE BANKRUPTCY COURT'S JULY 5, 2009
## SALE ORDER AND INJUNCTION AND THE RULINGS IN
## <u>CONNECTION THEREWITH, WITH RESPECT TO THE FINCH PLAINTIFF</u>

PLEASE TAKE NOTICE that upon the annexed Motion, dated September 7, 2018 (the

"**Motion**"),[1] of General Motors LLC ("**New GM**"), seeking the entry of an order to enforce the Sale

Order, entered by the Bankruptcy Court on July 5, 2009, and the Bankruptcy Court's rulings in

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

connection therewith, a hearing will be held before the Honorable Martin Glenn, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **October 2, 2018 at 3:00 p.m.,** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036 (Attn: Arthur Steinberg and Scott Davidson), and (ii) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654 (Attn: Richard C. Godfrey and Andrew B. Bloomer) so as to be received no later than **September 24, 2018, at 5:00 p.m.** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no responses or objections are timely filed and served with respect to the Motion, New GM may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
   September 7, 2018

          Respectfully submitted,


          \_\_ /s/ Arthur Steinberg\_\_\_
          Arthur Steinberg
          Scott Davidson
          KING & SPALDING LLP
          1185 Avenue of the Americas
          New York, New York  10036
          Telephone: (212) 556-2100
          Facsimile: (212) 556-2222

          KIRKLAND & ELLIS LLP
          300 North LaSalle
          Chicago, IL 60654
          Telephone: (312) 862-2000
          Facsimile: (312) 862-2200
          Richard C. Godfrey, P.C. (admitted *pro hac vice*)
          Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

          *Attorneys for General Motors LLC*

**OBJECTION DEADLINE: September 24, 2018, 2018 at 5:00 p.m. (Eastern Time)**
**HEARING DATE AND TIME: October 2, 2018 at 3:00 p.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
In re                                                   :        Chapter 11
                                                        :
**MOTORS LIQUIDATION COMPANY,** *et al.,*               :        Case No.:  09-50026 (MG)
        **f/k/a General Motors Corp.,** *et al.*        :
                                                        :
                **Debtors.**                            :        (Jointly Administered)
                                                        :
---------------------------------------------------------------x


**MOTION BY GENERAL MOTORS LLC TO ENFORCE THE BANKRUPTCY
COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION AND THE RULINGS IN
CONNECTION THEREWITH, WITH RESPECT TO THE FINCH PLAINTIFF**

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ............................................................................... 1

**BACKGROUND FACTS** ...................................................................................... 5

A.      **The Sale Order and Injunction; June 2015 Judgment; and Second Circuit Opinion**........................................................................................................ 5

B.      **The November 2015 Decision/December 2015 Judgment** ........................... 6

C.      **The December 2016 Show Cause Order, and the June 2017 and July 2017 Opinions** ...................................................................................................... 7

D.      **The District Court's Affirmance of this Court's Punitive Damages Ruling** ............... 9

E.      **The Finch Lawsuit** ......................................................................................... 9

**BASIS FOR RELIEF**........................................................................................... 12

A.      **To Address Any Confusion That May Occur At Trial, This Court Should Confirm That Finch Cannot Seek Punitive Damages from New GM Based on Old GM Conduct**........................................................................................ 13

B.      **Finch May Not Assert that New GM Manufactured or Designed The Finch Subject Vehicle; Finch Has Not Asserted Valid Independent Claims** ...................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp. v. Edwards,*
514 U.S. 300 (1995)............................................................................................4, 13

*In re Gen. Motors Corp.*,
407 B.R. 463 (Bankr. S.D.N.Y. 2009), *aff'd in part, vacated in part, reversed
in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017) .......................5

*Mack v. Carmack*,
79 So.3d 597 (Sup. Ct. of Ala. 2011)........................................................................2

*In re Motors Liquidation Co..*,
17-CV-6083, 17-CV-6088, and 17-CV-8294, 2018 WL 2416567 (S.D.N.Y.
May 29, 2018)...................................................................................................1, 9, 13

*In re Motors Liquidation Co.*,
513 B.R. 467 (Bankr. S.D.N.Y. 2014)......................................................................13

*In re Motors Liquidation Co*.,
541 B.R. 104 (Bankr. S.D.N.Y. 2015)..................................................................7, 13

*In re Motors Liquidation Co.*,
571 B.R. 565 (Bankr. S.D.N.Y. 2017)........................................................................6

*In re Motors Liquidation Co.*,
576 B.R. 313 (Bankr. S.D.N.Y. 2017)................................................................13, 16

*In re Motors Liquidation Co.*,
Case No. 09-50026 (MG), 2017 WL 2457881 (Bankr. S.D.N.Y. June 7, 2017)...........8, 14, 15

*In re Motors Liquidation Co.*,
Case No. 09-50026 (MG), 2017 WL 2963374 (Bankr. S.D.N.Y. July 12,
2017) ..............................................................................................................9, 13, 14

*In re Motors Liquidation Co.*,
829 F.3d 135 (2d Cir. 2016)..........................................................................6, 8, 14

*Trott v. Brinks, Inc.*,
972 So.2d 81 (Sup. Ct of Ala. 2007).........................................................................2

*Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*,
Adv. Proc. No. 09-09803 (REG), 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19,
2013) ......................................................................................................................5, 16

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this motion to enforce ("**Finch Motion to Enforce**") the Order entered by the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**" or "**Court**") on July 5, 2009 ("**Sale Order and Injunction**") that approved the sale of assets from Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**") to New GM,[1] and the related decisions, opinions and judgments entered by the Court, with respect to the plaintiff ("**Finch**") and his counsel in the lawsuit ("**Finch Lawsuit**") captioned *Kruuz Finch, as the Guardian and Representative of Lamar Hough v. General Motors LLC* pending in the Circuit Court for Bullock County, Alabama ("**Alabama Court**"), Case No. CV-2017-900053.80, in connection with certain of the claims and requests for damages contained in his *Second Amended Complaint* ("**Finch SAC**").[2]

## **PRELIMINARY STATEMENT**[3]

1.    This Court, on several occasions, has found that New GM is not liable for punitive damages based on Old GM conduct.  That ruling was recently affirmed by the District Court.[4]  In short, while New GM assumed compensatory damages in connection with Old GM's "Product Liabilities" as defined in the Sale Agreement, it did not assume punitive damages in connection with those liabilities.

---

[1]    The full title of the Sale Order and Injunction is *Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief.*  A copy of the Sale Order and Injunction, and the accompanying Sale Agreement (as defined therein), is attached hereto as **Exhibit "A."**

[2]    A copy of the Finch SAC is attached hereto as **Exhibit "B."**

[3]    Capitalized terms not otherwise defined in this Preliminary Statement are defined in later sections of this Finch Motion to Enforce.

[4]    *See In re Motors Liquidation Co.*., 17-CV-6083, 17-CV-6088, and 17-CV-8294, 2018 WL 2416567, at *14-15 (S.D.N.Y. May 29, 2018) ("**DC May 29 Opinion**").  Judge Furman's punitive damages ruling is presently on appeal in the Second Circuit Court of Appeals ("**Second Circuit**").

1

2.     The Finch Lawsuit, which is scheduled to go to trial on October 9, 2018, concedes this punitive damages point.  Finch asserts claims against New GM based on an accident that took place after the 363 Sale that involved a 1998 Chevrolet Blazer ("**Finch Subject Vehicle**").[5] The Finch SAC makes explicit in its opening paragraph that it is not seeking "any claim for punitive damages based on Old GM conduct . . . ."  Finch SAC, at 1.

3.     Thereafter, Finch expressly disclaims seeking punitive damages from New GM based on Old GM conduct in Counts 1, 3 and 5.  *See* Finch SAC, p. 4 (Wherefore Clause to Count 1), and ¶¶ 24 (Count 3), 42 (Count 5).   However, Finch does not include a similar disclaimer in Count 4 for his claim under the Alabama Wrongful Death Statute. Without using the words "punitive damages", he seeks relief in Count 4 for "those damages that a jury might assess" under the Alabama Wrongful Death Statute.  Under Alabama law, the only recoverable damages for wrongful death are punitive damages.[6]  Since, as noted, Finch has expressly stated in an overriding paragraph that pertains to *all* of his claims that he is not seeking punitive damages against New GM based on Old GM conduct, New GM requests that the Court enter an order confirming this legal principle as it applies to the Finch Lawsuit so "the goal post are clearly marked" when this matter is tried in the Alabama Court in October of this year.

4.     New GM's concerns are not ill-founded.  In a recent pleading filed by Finch in the Alabama Court, Finch alleged that New GM "designed and manufactured" the 1998 Finch

---

[5]   Based on definitions established in other decisions, the Old GM vehicle at issue in the Finch Lawsuit is *not* a Subject Vehicle with the Ignition Switch Defect as defined by the Court.  The Finch Subject Vehicle was manufactured and sold by Old GM *more than 10 years prior* to the 363 Sale.

[6]   *See, e.g., Mack v. Carmack*, 79 So.3d 597, 605 (Sup. Ct. of Ala. 2011) ("our wrongful-death statutes provide for punitive damages to punish the tortfeasor"); *Trott v. Brinks, Inc.*, 972 So.2d 81, 84 (Sup. Ct of Ala. 2007) (in actions for wrongful death in Alabama, "the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions—not to compensate the plaintiff").

Subject Vehicle.[7]  These types of allegations that conflate Old GM and New GM are violations of this Court's Judgment dated December 4, 2015 Order [ECF No. 13563] ("**December 2015 Judgment**").[8]  *See id.*, ¶ 18 ("Allegations that allege or suggest that New GM manufactured or designed an Old GM vehicle, or performed other conduct relating to an Old GM Vehicle before the Sale Order are proscribed by the Sale Order, April Decision and June Judgment").  Finch's improper allegations were apparently made to buttress his ill-founded legal arguments.

5.      Moreover, the alleged Independent Claims asserted by Finch are inconsistent with the Sale Order and Injunction, and this Court's June 7 and July 12, 2017 Opinions, as well as other rulings, because they are not based ***solely*** on specific and identifiable New GM conduct— in fact, they are not based on any expressly stated New GM conduct, or any identified post-363 Sale event.  Finch's "duty to warn" contention is premised on the erroneous proposition that New GM manufactured the 1998 Finch Subject Vehicle and, ***as the manufacturer***, it had a post-vehicle sale duty to warn.   *See* Finch Sum. J. Opp., at 10-12.  Finch does not allege ***any*** New GM conduct that would establish it had agreed to perform its own a duty to warn with respect to a vehicle that it did not manufacture, design or sell to Finch.

6.      Many plaintiffs, like Finch, have improperly tried to dress up an Assumed Liability under the Sale Agreement as an Independent Claim to assert an otherwise proscribed punitive damage claim against New GM.  As this Court has done on other occasions when presented with the issue, these self-styled "Independent Claims" are first scrutinized by the Bankruptcy Court in its "gate-keeper" capacity to assess whether they run afoul of the Sale Order and Injunction, before the product liability lawsuit is allowed to proceed to trial.  As shown

---

[7]     *See Plaintiffs' Opposition to GM's Motion for Summary Judgment*, dated August 31, 2018 ("**Finch Sum. J. Opp.**"), at 1-2.  A copy of the Finch Sum. J. Opp. is annexed hereto as **Exhibit "C."**

[8]     A copy of the December 2015 Judgment is annexed hereto as **Exhibit "D."**

below, the Finch so-called Independent Claims should not be allowed to pass through the bankruptcy gate.

7.     Finch also impermissibly seeks to buttress his negligence *per se* claim (which could be an assumed Product Liability) on the ground that Old GM did not recall an Old GM vehicle.   However, this Court previously held that an assumed Product Lability does not include Old GM's duty to recall an Old GM vehicle.   Thus, Finch cannot establish an assumed liability for New GM based on an alleged recall duty that it never assumed as to Finch.

8.     A party subject to an injunction (like the one present in the Sale Order and Injunction) does not have the option simply to proceed in another court as if the injunction had not been issued.   As the United States Supreme Court explained in *Celotex Corp. v. Edwards*, the rule is "well-established" that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'"  514 U.S. 300, 306 (1995).   Here, the continuation of the Finch Lawsuit without regard to and in violation of existing Bankruptcy Court rulings constitutes a violation of the Sale Order and Injunction.

9.     New GM recently attempted to resolve all issues in the Finch Lawsuit.   The parties took part in mediation on August 28, 2018.  When settlement efforts failed, New GM sent Finch a letter identifying the bankruptcy-related issues with the Finch SAC that Finch had failed to address.   Finch ostensibly agreed to resolve one issue (the withdrawal of his duty to recall claim based on Old GM conduct),[9] but the recent Finch Sum. J. Opp. Shows that he is improperly relying on Old GM's failure to recall to try and defeat summary judgment on his negligence *per se* claim.   *See* Finch Sum. J. Opp., at 12-14.   Finch also did not address New

---

[9]     In the Finch Sum. J. Opp. (at p.14), Finch conceded that it has no separate duty to recall cause of action, whether it be based on Old GM conduct or New GM conduct.

GM's concerns with punitive damages and Independent Claims.  To fully resolve these issues, New GM is seeking a hearing on this Finch Motion to Enforce before the upcoming October 9, 2018 trial.

10.    Based on the foregoing, and as set forth below, this Finch Motion to Enforce should be granted in all respects.

## BACKGROUND FACTS

### A.    The Sale Order and Injunction; June 2015 Judgment; and Second Circuit Opinion

11.    On the same day it filed for bankruptcy (June 1, 2009), Old GM filed a motion to sell substantially all of its' assets to New GM.  *See In re Gen. Motors Corp.*, 407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009), *aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017).  The Sale Order and Injunction was entered on July 5, 2009, and the sale ("**363 Sale**") closed on July 10, 2009.   Under the Sale Agreement, New GM assumed Product Liabilities for Old GM vehicles (*i.e.*, claims arising out of post-363 Sale accidents).  *See* Sale Agreement, § 2.3(a) (as amended).  Certain of Finch's claims are assumed Product Liabilities; others are not.

12.    The Sale Order and Injunction provides that, except for Assumed Liabilities, New GM is not liable for claims based on Old GM conduct, including successor liability claims.  *See, e.g*., Sale Order and Injunction, ¶ AA; *Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.*), Adv. Proc. No. 09-09803 (REG), 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013). Paragraph 71 of the Sale Order and Injunction affirms the Bankruptcy Court's exclusive jurisdiction over matters regarding the 363 Sale.

13.      In 2014, New GM announced a number of recalls relating to Old GM vehicles.[10]

Thereafter, lawsuits were filed against New GM asserting personal injury and economic loss

claims allegedly arising from defects in Old GM vehicles.   New GM filed three motions to

enforce the Bankruptcy Court's Sale Order and Injunction.   On June 1, 2015, the Bankruptcy

Court entered its Judgment [ECF No. 13177] ("**June 2015 Judgment**") holding, among other

things, that the Sale Order and Injunction would be modified because Ignition Switch Plaintiffs[11]

(but not other plaintiffs, such as Finch) established a due process violation (and were prejudiced)

in connection with Old GM's notice of the 363 Sale.   As a result, Ignition Switch Plaintiffs were

allowed to assert Independent Claims against New GM.

14.      After an appeal of the June 2015 Judgment, the Second Circuit entered an

Opinion on July 13, 2016 ("**Second Circuit Opinion**") wherein it ruled that, because of a due

process violation committed by Old GM, Ignition Switch Plaintiffs would not be bound by the

Sale Order and Injunction.   The Second Circuit defined Independent Claims as those "sorts of

claims [that] are based on New GM's *post*-petition conduct, and are not claims that are based on

a right to payment that arose before the filing of petition or that are based on pre-petition

conduct."   *In re Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016) (emphasis in

original).

**B.      The November 2015 Decision/December 2015 Judgment**

15.      After the June 2015 Judgment, but before the Second Circuit Opinion, the

Bankruptcy Court made further rulings (a decision dated November 9, 2015 ("**November 2015**

---

[10]      The Finch Subject Vehicle was not subject to any recalls for the alleged defect set forth in the Finch SAC.

[11]      The June 2015 Judgment defines the term Ignition Switch Plaintiffs as those plaintiffs who assert claims against
New GM based on the first three ignition switch recalls issued by New GM in February/March 2014.   *See* June
2015 Judgment, at 1 n.1; *see also In re Motors Liquidation Co.*, 571 B.R. 565, 578 (Bankr. S.D.N.Y. 2017)
("'Ignition Switch Plaintiffs' includes only those plaintiffs asserting economic losses arising from the Ignition
Switch Defect in the Subject Vehicles.").   Finch is not an "Ignition Switch Plaintiff."

**Decision**")[12] and the December 2015 Judgment) relating to the enforcement of the Sale Order and Injunction. Pursuant to the December 2015 Judgment, the Bankruptcy Court ruled that, *inter alia*, (a) New GM did not contractually assume liability for punitive damages based on Old GM knowledge or conduct, or anything else that took place at Old GM (*see* December 2015 Judgment, ¶ 6), and (b) a "duty to recall or retrofit is not an assumed Liability, and New GM is not responsible for any failure of Old GM to do so" (*see id.* ¶ 21).

16.     The December 2015 Judgment also held plaintiffs that improperly conflate the separate identity of New GM with Old GM are stayed from proceeding with their case. *See* December 2015 Judgment, ¶¶ 16-18. In particular, plaintiffs were proscribed from alleging that New GM manufactured or designed an Old GM vehicle. *Id.*, ¶ 18.

**C.     The December 2016 Show Cause Order, and the June 2017 and July 2017 Opinions**

17.     On December 13, 2016, this Court entered an Order to Show Cause ("**December 2016 Show Cause Order**"), identifying certain threshold issues ("**2016 Threshold Issues**") that the Bankruptcy Court would address after the Second Circuit Opinion, and the procedures for resolving same.[13]

18.     On June 7, 2017, the Court decided Threshold Issue No. 2 via its *Memorandum Opinion And Order Granting In Part New GM's Motion To Enforce Sale Order Against The Pitterman Plaintiffs And Resolving 2016 Threshold Issue Two: Whether Non-Ignition Switch Plaintiffs Are Barred From Asserting Independent Claims Against New GM* [ECF No.

---

[12]    The November 2015 Decision is published at *In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015).

[13]    While Finch was not specifically served with the December 2016 Show Cause Order because the Finch Lawsuit had not yet been commenced, his counsel (Beasley Allen) was served with it because that law firm represents other plaintiffs asserting claims against New GM based on Old GM vehicles.

13959]("**June 2017 Opinion**").[14]    While the June 2017 Opinion provides that Post-Closing

Accident Plaintiffs (*e.g.*, Finch) can assert Independent Claims against New GM, this Court

followed Second Circuit guidance and held:

> The Court emphasizes that its analysis here applies only to claims based solely on *New GM's alleged wrongful conduct*. It is not acceptable . . . ***to base allegations on generalized knowledge of both Old GM and New GM***. To pass the bankruptcy gate, ***a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct***."

June 2017 Opinion, 2017 WL 2457881, at *10 (italicized emphasis in original; italicized and

bold emphasis added); *see also Motors Liquidation Co.*, 829 F.3d at 157 ("By definition,

independent claims are claims based on New GM's own post-closing wrongful conduct. . . .

These sorts of claims are based on New GM's *post*-petition conduct, and are not claims that are

based on a right to payment that arose before the filing of petition or that are based on pre-

petition conduct."). Deciding whether a similar complaint properly stated an Independent Claim,

this Court held that "certain of the Pitterman Plaintiffs' claims do not sufficiently distinguish

between conduct of Old GM or New GM. Those claims cannot go forward against New GM as

drafted." June 2017 Opinion, 2017 WL 2457881, at *1 n.1.

19.    In addition, the Court confirmed that it would continue to be the gatekeeper to

review complaints to determine if they violate the Sale Order and Injunction and/or other

Bankruptcy Court rulings. *See* June 2017 Opinion, 2017 WL 2457881, at *3 ("The Court's role,

then, is a 'gatekeeper' role. It should be the court to decide what claims and allegations should

get through the 'gate,' under the Sale Order and this Court's prior decisions." (citations

omitted)).

---

[14]    The June 2017 Opinion is published at *In re Motors Liquidation Co.*, Case No. 09-50026 (MG), 2017 WL 2457881 (Bankr. S.D.N.Y. June 7, 2017).

20.     Thereafter, on July 12, 2017, this Court entered another Opinion, which addressed 2016 Threshold Issues Nos. 1, 3 and 4.  *See In re Motors Liquidation Co.*, Case No. 09-50026 (MG), 2017 WL 2963374 (Bankr. S.D.N.Y. July 12, 2017) ("**July 2017 Opinion**").  In the July 2017 Opinion, the Court affirmed that "truly Independent Claims" are "claims based solely on wrongful post-closing conduct of New GM . . . ."  *Id* at *2 n.2.  The Court also held that "Post-Closing Accident Plaintiffs may not assert claims against New GM for punitive damages based on conduct of Old GM."  *Id.* at *11.  In addition, the Court ruled in the July 2017 Opinion that "Judge Gerber's [December 2015] ruling therefore remains law of the case and New GM cannot be held liable for punitive damages on a contractual basis."  July 2017 Opinion, 2017 WL 2963374, at *7.

**D.      The District Court's Affirmance of this Court's Punitive Damages Ruling**

21.     The July 2017 Opinion was appealed to the District Court by certain plaintiffs. One of the issues appealed was whether New GM could be liable for punitive damages based on Old GM conduct.[15]  In the DC May 29 Opinion, the District Court "affirm[ed] the Bankruptcy Court's decision precluding punitive damages claims against New GM based on Old GM conduct." *Motors Liquidation Co.*, 2018 WL 2416567, at *15. The DC May 29 Opinion also acknowledged the Bankruptcy Court's gate-keeper role.  *See e.g., id.* at *4, *5.

**E.      The Finch Lawsuit**

22.     According to the Finch SAC, on May 6, 2017, the Finch Subject Vehicle allegedly developed an engine/transmission fluid leak, and then shut off and caught fire.  Finch SAC, ¶¶ 8-9.  The decedent did not immediately exit the Finch Subject Vehicle and suffered

---

[15]  Another issue addressed in the July 2017 Opinion that was appealed was whether Non-Ignition Switch Plaintiffs could assert Independent Claims against New GM.  The District Court affirmed this Court's ruling that such plaintiffs could assert Independent Claims against New GM if those claims are "predicated solely on New GM conduct." *Motors Liquidation Co.*, 2018 WL 2416567, at *13.

significant burns to his body; he passed away approximately two months later. *Id.* at ¶ 11. The Finch Subject Vehicle was manufactured, sold and delivered by Old GM over 10 years prior to the closing of the 363 Sale. The affirmative conduct alleged in the Finch SAC (except conclusory, general allegations regarding a failure to warn and/or recall) are focused on an Old GM vehicle and are related to Old GM actions or inactions years before the 363 Sale. The Finch SAC contains no specific allegations regarding a post-363 Sale relationship between New GM and Finch, and no post-363 Sale events giving rise to a duty to warn. The Finch SAC is devoid of any allegations regarding New GM conduct with respect to the Finch Subject Vehicle. As noted, the Finch Sum. J. Opp. makes clear that Finch's post-vehicle sale negligence *per se* claim (duty to warn) is premised on the erroneous proposition that New GM (as compared to Old GM) manufactured and designed the Finch Subject Vehicle.

23.     The Finch Lawsuit was commenced on July 12, 2017 in the Alabama Court, prior to the decedent's death. The original version of the Finch complaint contained one count against New GM based on the Alabama Extended Manufacturer's Liability Doctrine ("**AEMLD**"). After the decedent passed away, the complaint was amended to add a wrongful death count as well as a negligence/wantonness count.

24.     Because the amended Finch complaint asserted a cause of action based on wrongful death and plaintiffs in Alabama may only recover punitive damages based on wrongful death claims, New GM sent Finch a letter on November 27, 2017 informing Finch that New GM did not assume punitive damages based on Old GM conduct. Finch responded by informing New GM that he amended his complaint "to request punitive damages based solely on New GM's conduct . . . ." In this regard, the first sentence of the Finch SAC asserts as follows:

Plaintiff incorporates the original and first amended complaints and ***amends such complaints to strike any claim for punitive damages based on Old GM conduct*** and to assert claims for punitive damages based on New GM conduct.

Finch SAC, at 1 (emphasis added).

25.     The Finch SAC contains four counts against New GM:

(i)     Count 1 is based on the AEMLD, which appears to be a strict liability count based on Old GM conduct seeking compensatory damages for the decedent's post-incident pain and suffering prior to his death.  Finch expressly asserts that he "does not seek punitive damages from New GM based on the conduct of Old GM." Finch SAC, at 4.  This count appears to fit within the definition of assumed Product Liabilities, and is not barred by the Sale Order and Injunction.

(ii)    Counts 3 and 5 (which appear to be substantially the same) are based on negligence/wantonness and appear to assert an assumed Product Liability, as well as an Independent Claim.  The alleged assumed Product Liability includes a reference to a failure to recall, which is not an assumed Product Liability.[16]  In addition, the alleged Independent Claim does not contain any reference to specific New GM conduct and is thus not viable on its face.  Finch expressly asserts that he "does not seek punitive damages from New GM based on the conduct of Old GM."  Finch SAC, at ¶¶ 24,42.

(iii)   Count 4 is based on the Wrongful Death Statute.  It references Old GM conduct (and has one passing reference to New GM).  Unlike the other causes of action, it does not use the phrase that New GM is liable for "its own independent wrongdoing," and it does not refer to "punitive damages".  Rather, the phrase used in the WHEREFORE clause for this count is "damages that a jury might assess."

26.     On August 28, 2018, Finch and New GM participated in a mediation that did not result in a settlement.  The Finch Lawsuit is scheduled to go to trial on October 9, 2018.

27.     On or about August 31, 2018, Finch served the Finch Sum. J. Opp.  On that same day—shortly after the mediation concluded—New GM sent Finch a letter ("**New GM August**

---

[16]   As noted in the September 2018 Finch Letter, Finch expressly agreed to withdraw the duty to recall claim to the extent it is based on Old GM conduct.  New GM reserves all of its rights in the event that Finch seeks to proceed on, *inter alia*, his claim based on a failure to recall by Old GM.  This Court has previously held that such a claims is not an assumed Product Liability.  *See* December 2015 Judgment, ¶ 21 ("a duty to recall or retrofit is not an Assumed Liability, and New GM is not responsible for any failures of Old GM to do so"); see id., ¶ 29 ("Obligations, if any, that New GM had to recall or retrofit Old GM Vehicles were not Assumed Liabilities, and New GM is not responsible for any failures of Old GM to do so.").  Also, as noted, as a general matter, Finch agreed in the Finch Sum. J. Opp. that there is no recognized duty to recall cause of action under Alabama law.

11

**2018 Letter**") setting forth the bankruptcy-related issues with the Finch SAC.[17]  Specifically,

New GM informed Finch that (i) a failure to recall claim that is based on Old GM conduct is not

an assumed Product Liability and that Finch cannot proceed to trial on this claim; and (ii) the

Finch SAC does not appropriately plead Independent Claims.  In addition, in the New GM

August 2018 Letter, New GM requested that Finch confirm that he is not seeking punitive

damages from New GM based on Old GM conduct in connection with Count 4 in the Finch SAC

(wrongful death).

28.    Finch responded to the New GM August 2018 Letter on September 6, 2018

("**Finch September 2018 Letter**"),[18] and confirmed that he is not pursuing a claim against New

GM for failure to recall based on Old GM conduct.  Finch, however, did not adequately address

the remaining issues identified by New GM in the New GM August 2018 Letter.  While Finch

asserts that the Finch SAC "adequately gives notice to" New GM about Independent Claims (*see*

Finch September 2018 Letter, at 1), neither the Finch SAC nor the Finch Sum. J. Opp. contains

any specific allegations regarding New GM conduct upon which to base any Independent Claim.

In addition, Finch did not confirm that he will not do so in connection with Count 4 in the Finch

SAC.  Accordingly, this Finch Motion to Enforce was filed to address these bankruptcy-related

issues.

## BASIS FOR RELIEF

29.    Finch cannot ignore the Bankruptcy Court's Sale Order and Injunction and its

related rulings regarding claims filed and damages sought against New GM.  As the Supreme

Court held in *Celotex*:

---

[17]    A copy of the New GM August 2018 Letter is attached hereto as **Exhibit "E."**

[18]    A copy of the Finch September 2018 Letter is attached hereto as **Exhibit "F."**

> If respondents believed the Section 105 Injunction was improper, they should
> have challenged it in the Bankruptcy Court, like other similarly situated bonded
> judgment creditors have done. . . .  Respondents chose not to pursue this course of
> action, but instead to collaterally attack the Bankruptcy Court's Section 105
> Injunction in the federal courts in Texas.  This they cannot be permitted to do
> without seriously undercutting the orderly process of the law.

514 U.S. at 313; *see also In re Motors Liquidation Co*., 513 B.R. 467, 478 (Bankr. S.D.N.Y.
2014) (quoting *Celotex*).  These settled principles bind Finch.  He is subject to the Sale Order
and Injunction and the Bankruptcy Court's other rulings, and is required to comply with them.

A.    **To Address Any Confusion That May Occur At Trial, This Court Should Confirm
      That Finch Cannot Seek Punitive Damages from New GM Based on Old GM
      Conduct**

30.    In the July 2017 Opinion, the Court ruled that Post-Closing Accident Plaintiffs
(like Finch) cannot seek punitive damages based on Old GM conduct.  *See* July 2017 Opinion,
2017 WL 2963374 at *7-*8, *10-*11; *see also* December 2015 Judgment, ¶ 6.[19]  In addition, the
Court ruled in the July 2017 Opinion that Judge Gerber's ruling on punitive damages set forth in
the December 2015 Judgment—that New GM did not contractually assume punitive damages—
is the law of the case.  *See* July 2017 Opinion, 2017 WL 2963374 at *7; *see also In re Motors
Liquidation Co.*, 576 B.R. 313, 324 (Bankr. S.D.N.Y. 2017) ("**Reichwaldt Opinion**").

31.    The Court's punitive damages rulings were recently upheld on appeal by the
District Court.  *See Motors Liquidation Co.*, 2018 WL 2416567, at *15 ("the Court affirms the
Bankruptcy Court's decision precluding punitive damages claims against New GM based on Old
GM conduct"); *see id.* at *18 ("The Bankruptcy Court's conclusions that it is law of the case that
New GM did not contractually assume liability for punitive damages claims based on Old GM

---

[19]    *See also* November 2015 Decision, 541 B.R. at 117 ("The Post–Closing Accident Plaintiffs first argue that New
GM contractually assumed claims for punitive damages. The Court finds that contention unpersuasive.  It can't
agree with the Post–Closing Accident Plaintiffs' contention that the Sale Agreement unambiguously so
provides. And once it looks at the totality of the contractual language, and extrinsic evidence, and employs
common sense, it must agree with New GM's contention that New GM neither agreed to, nor did, contractually
take on Old GM's punitive damages liability.").

13

conduct and that punitive damages against New GM based on Old GM conduct are not available as a matter of federal bankruptcy law are AFFIRMED").

32.     Certain of the claims asserted by Finch fall within the definition of assumed Product Liabilities.  While Finch can proceed with those claims against New GM, he can only seek compensatory damages and is barred from seeking punitive damages on such claims.

33.     Finch concedes that he cannot seek punitive damages based on the conduct of Old GM as he specifically filed the Finch SAC "to strike any claim for punitive damages based on Old GM conduct . . . ."  Finch SAC, at 1; *see also id.*, at 4 (Wherefore Clause) (Finch is "not seek[ing] punitive damages from New GM based on the conduct of Old GM"); ¶ 24 (same) ¶ 42 (same).  To avoid any confusion at trial, especially given the way Count 4 of the Finch SAC is pled (and Finch's "non-response" in the Finch September 2018 Letter), New GM seeks an order from this Court confirming that Finch cannot obtain punitive damages against New GM based on Old GM conduct in connection with any claim set forth in the Finch SAC, including Count 4.

**B.     Finch May Not Assert that New GM Manufactured or Designed The Finch Subject Vehicle; Finch Has Not Asserted Valid Independent Claims**

34.     Both the Second Circuit and this Court (as well as the District Court) have ruled that Independent Claims must be based solely on New GM conduct, and cannot be based on Old GM conduct.  *See Motors Liquidation Co.*, 829 F.3d at 157; July 2017 Opinion, 2017 WL 2963374 at *2, n.2 ("truly Independent Claims" are "claims based solely on wrongful post-closing conduct of New GM . . ."); *Order Granting In Part And Denying In Part General Motors LLC's Motion To Enforce The Ruling In The Bankruptcy Court's June 7, 2017 Opinion With Respect To The Pitterman Plaintiffs*, dated July 10, 2017 [ECF No. 13991], at 2 ("the Pitterman Plaintiffs are precluded from relying on conduct of Old GM in support of their alleged Independent Claims against New GM"); June 2017 Opinion, 2017 WL 2457881, at *10

(defining "Independent Claims" as "claims against New GM *based solely on New GM's post-closing wrongful conduct*" (emphasis in original)); December 2015 Judgment, at 2 n.3 ("'Independent Claim' shall mean a claim or cause of action asserted against New GM that is based solely on New GM's own independent post-Closing acts or conduct.").

35.     Finch's alleged Independent Claims are not *solely* based on New GM conduct; the Finch SAC contains no allegations regarding New GM conduct related to Finch or the Finch Subject Vehicle. The only allegations regarding New GM conduct are general and conclusory, and are contained in three out of 48 paragraphs in the Finch SAC: (i) in paragraphs 25 and 43, which are essentially identical, Finch asserts that New GM "negligently and wantonly failed to warn or recall the subject 1998 Chevrolet Blazer starting in 2009 until the date of the accident on May 6, 2017. Because New GM is liable for its own independent wrongdoing, Plaintiff seeks compensatory and punitive damages based on the conduct listed in this paragraph"; and (ii) in paragraph 38, where Finch asserts that Old GM and New GM should have known about the design flaws of the vehicle long before the fire occurred yet took no actions to eliminate the dangerous design, to warn/recall the subject Chevy Blazer containing the dangerous design."

36.     Deciding the propriety of a similar complaint, this Court ruled in the June 2017 Opinion that "[i]t is not acceptable . . . to base allegations on generalized knowledge of both Old GM and New GM. To pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." June 2017 Opinion, 2017 WL 2457881, at *10. This Court concluded that "[t]hose claims cannot go forward against New GM as drafted." *Id.* at *1 n.1. Similarly, in the Reichwaldt Opinion, this Court ruled that reliance on general public statements made by New GM (like general statements made by New GM's CEO Mary Barra to Congress) or allegations that New GM purchased Old GM's books

15

and records are not sufficient to support an Independent Claim. *See Motors Liquidation Co.*, 576 B.R. at 322-23. This Court ruled in Reichwaldt that since a proposed complaint did "not identify any specific New GM conduct upon which to base an Independent Claim," such claim could not proceed as pled. *Id.* at 322.

37.    The same result applies here. Finch has completely failed to plead any specific New GM conduct with respect to him or the Finch Subject Vehicle, and there are ***no*** allegations in the Finch SAC that (a) Finch had any relationship with New GM, or (b) there was any New GM post-Sale conduct that would give rise to post-Sale legal duties to him. New GM is not liable for design flaws of an Old GM vehicle, which is essentially what the Finch SAC alleges as an Independent Claim. *Trusky*, 2013 WL 620281, at *2 ("claims for design defects may not be asserted against New GM, as New GM did not assume liabilities of that character"). Indeed, Finch premises his Independent Claim for duty to warn on the groundless proposition that New GM manufactured the Finch Subject Vehicle; Finch knows that assertion is not true.

38.    In short, the ***only*** allegation of specific conduct in the Finch SAC concerns Old GM, and much of that conduct took place years before the closing of the 363 Sale when the Finch Subject Vehicle was designed and manufactured. In the December 2015 Judgment, the Bankruptcy Court expressly held that "[a] duty to recall or retrofit is not an Assumed Liability, and New GM is not responsible for any failures of Old GM to do so." December 2015 Judgment, ¶ 21; *see also id.*, ¶ 29. Finch has not made any allegation of specific conduct of New GM in the Finch SAC which would establish that New GM agreed to a new duty to recall or warn with respect to the Finch Subject Vehicle. If Finch had facts to support his alleged Independent Claims, he would have included them in the Finch SAC or, at a minimum, referenced them in the Finch Sum. J. Opp. or the Finch September 2018 Letter.

16

39.     Based on the foregoing, Finch's so-called Independent Claims are not appropriately pled and Finch should be precluded from asserting such claims at trial. In particular, Finch may not assert that New GM manufactured the Finch Subject Vehicle or rely on allegations allegedly demonstrating that Old GM failed to recall the Finch Subject Vehicle.

## NOTICE

40.     Notice of this Finch Motion to Enforce has been provided to counsel for Finch, and all entities that receive electronic notice from the Court's ECF system.  New GM submits that such notice is sufficient and no other or further notice need be provided.

41.     Except to the extent expressly noted herein, no prior request for the relief sought in this Finch Motion to Enforce has been made to this or any other Court.

WHEREFORE, New GM respectfully requests that this Court enter an order, substantially in the form set forth in **Exhibit "G"** hereto, granting the relief sought herein, and for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
            September 7, 2018

Respectfully submitted,


    /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222

-and-

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Attorneys for General Motors LLC*