UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Motors Liquidation Company, et al.,

    Debtors,

Motors Liquidation Company Avoidance Action Trust,

    Appellant,

-v-

JPMorgan Chase Bank, N.A., et al.,
    Appellees.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP. 0 7 2018

17-cv-8712 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    On November 9, 2017, Plaintiff Motors Liquidation Company Avoidance Action Trust ("the Trust") filed a notice of appeal from Judge Martin Glenn's September 26, 2017 Memorandum Opinion Regarding Fixture Classification and Valuation ("Glenn Op."), in Bankruptcy Court Case Number 09-504. *See* Dkt. No. 1; Dkt. No. 1 Ex. A. And on November 13, 2017, Plaintiff filed a motion for leave to appeal. Dkt. No. 4. On November 13, 2017, Defendants moved to oppose Plaintiff's motion, and in the alternative, submitted a conditional motion for cross-appeal. Dkt. No. 10. For the following reasons, the Court denies Plaintiff's motion.

**I. Background**

    The Court assumes familiarity with this nine-year litigation, and therefore only briefly summarizes the facts related to the issue on appeal. This case arises from the bankruptcy proceedings of the General Motors Corporation, often referred to as "Old GM." *See* Glenn Op.

at 6. In 2009, Old GM filed for chapter 11 reorganization, and simultaneously filed a motion in Bankruptcy Court seeking approval to sell substantially all of its assets to a Government-sponsored entity in an expedited sale under Section 363 of the Bankruptcy Code. Glenn Op. at 13. The Government-sponsored entity purchasing Old GM's assets was a new company, NGMCO, Inc. ("New GM"). *Id.* The sale was approved by the Bankruptcy Court. *See In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009).

Prior to the bankruptcy proceedings, in 2006, Old GM had received a term loan (the "Term Loan") of approximately $1.5 billion from Defendants, a group of creditors. Glenn Op. at 7-8. The Term Loan was secured by a collateral agreement that included a security interest in certain equipment and fixtures. Glenn Op. at 7. A UCC-1 financing statement was filed in the State of Delaware, perfecting the lenders' security interest in the collateral. *Id.*

In a separate transaction, in 2001, Old GM had obtained $300 million in financing from a syndicate of financial institutions by entering into a synthetic lease. Glenn Op. at 8. The outstanding amounts of the synthetic lease were paid off, and the synthetic lease was terminated in 2008. *Id.* Therefore, on October 30, 2008, Old GM's counsel, filed a UCC-3 termination statement with respect to the lease. *Id.* As part of that filing, counsel erroneously authorized the filing of a UCC-3 termination statement terminating the UCC-1 statement securing the Term Loan. *Id.*

This error went unnoticed until Old GM commenced the bankruptcy proceedings in 2009. *See In re Motors Liquidation Co.*, 777 F.3d 100, 102 (2d Cir. 2015). JPMorgan informed the Committee of Unsecured Creditors of Motors Liquidation (the "Committee"), the predecessor to the Trust, that a UCC–3 termination statement relating to the Term Loan had been inadvertently filed in October 2008. *Id.* JPMorgan explained that it had intended to terminate only liens

2

related to the synthetic lease and stated that the filing was therefore unauthorized and ineffective. The Committee sought a determination that, despite the error, the UCC–3 termination statement was effective to terminate the Term Loan security interest and render JPMorgan an unsecured creditor on par with the other General Motors unsecured creditors. *Id.* The issue was appealed to the Second Circuit, which held that the UCC-1 Statement was no longer effective, as the Term Loan had been terminated. *Id.* at 105.

However, although the UCC-1 Statement no longer served to perfect a security interest for the Defendants, there were still fixture filings that had been filed in the offices of the County Clerks for the counties where certain Old GM facilities were located. Glenn Op. at 14. The security interest in fixtures covered by these twenty-six filings were unaffected by the UCC-3 Termination Statement filed in Delaware. *Id.*

After the appeal was resolved, Plaintiff amended its original complaint and asserted that the assets covered by those fixture filings are of inconsequential value. Glenn Op. at 15. Plaintiff disputed that most of the assets were actually fixtures, and if they were, argued that they should be valued at a liquidation value. Glenn Op at 1. Defendants argued that those fixtures should be valued as part of a going-concern business.[1] *Id.* This necessitated findings by the Bankruptcy Court on these assets. There are over 200,000 disputed assets in GM plants. *Id.* Accordingly, Judge Glenn recognized the near impossibility of judicially resolving all of the disputed assets, and directed the parties to designate forty representative assets to be the subject of a trial. *Id.*

The trial took place in April and May 2017. *See* Dkt. No. 11. at 4. Thirty-one witnesses testified, and over a thousand exhibits were entered into evidence. *See id.* Prior to the trial,

---

[1] Going-concern value "implies that the actual sale price is the appropriate benchmark for the court's valuation." Glenn Op. at 149.

Judge Glenn also conducted site visits to the GM Lansing Delta Township facility, and the GM Warren Transmission facility, in Michigan. Glenn Op. at 15. This allowed him to directly view some of the representative assets. *Id.* at 16.

Following the trial, Judge Glenn drafted a 196-page opinion that methodically discussed each of the forty representative assets, and whether each one was a fixture. *See* Glenn Op. 107-46. Judge Glenn found that thirty of the assets were fixtures, five were not, and one was held part fixture and part not. *See* Glenn Op.[2]

Judge Glenn then carefully explained how he would value the fixtures. He explained the legal standards regarding valuation. Glenn Op. at 146-52. Judge Glenn then discussed his findings of fact regarding valuation in this case. Glenn Op. at 152-185. Rather than agreeing with Plaintiff or Defendants on the proper valuation, Judge Glenn determined that the best option was to value the fixtures primarily based on a KPMG report drafted pre-litigation. Glenn Op at 152. KPMG had been hired by New GM to provide an opinion regarding the fair value of certain assets, including the representative assets that were the subject of the trial. *Id.* Finally, Judge Glenn then explained his conclusions of law regarding the valuation. Glenn Op. at 185-196.

Following the decision, the Trust filed a notice of appeal. Dkt. No. 1. The Trust argues the Court should exercise its discretion to grant leave to appeal Judge Glenn's Opinion. *See* Dkt. No 5. The Trust disagrees with Judge Glenn's valuation approach, as a matter of law. *See id.* Defendants argue that the Opinion is not appealable, and, even if it is, it does not meet the requisite standards for a Court to grant interlocutory review. *See* Dkt. No. 11. Defendants also

---

[2] The parties each conceded on two of the forty fixtures. Glenn Op. at 74-75, 107-108.

4

argue that if Plaintiff's motion is granted, their conditional cross-motion for leave to appeal should also be granted, so that they can present their valuation position as well. *See id.*

## II. Standard

Section 158(a)(3) grants a United States District Court jurisdiction over appeals from interlocutory orders of Bankruptcy Court "with leave of the court." 28 U.S.C. § 158(a)(3). Whether to grant an interlocutory appeal from a Bankruptcy Court order lies with the District Court's discretion. *In re Enron Corp.*, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006). In deciding whether to grant leave to appeal, District Courts apply the standards of 28 U.S.C. § 1292(b), which governs interlocutory appeals from district court orders. *See, e.g., In re Lehman Bros. Holdings Inc.*, 2010 WL 10078354, at *6 (S.D.N.Y. Sept. 23, 2010). Interlocutory review is warranted under § 1292(b) if: (1) the order being appealed "involves a controlling question of law," (2) there is "substantial ground for difference of opinion" as to that question, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

"All three requirements set forth in section 1292(b) must be met for a Court to grant leave to appeal." *In re Coudert Bros. LLP Law Firm Adversary Proceedings*, 447 B.R. 706, 711 (S.D.N.Y. 2011). The movant bears the burden of demonstrating that all three prongs of § 1292(b) are met. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2017 WL 4417701, at *3 (S.D.N.Y. Oct. 3, 2017). This standard is "strictly applied as interlocutory appeals from bankruptcy courts' decisions are disfavored in the Second Circuit." *In re Madoff*, 2010 WL 3260074, at *3 (S.D.N.Y. Aug. 6, 2010). In addition, district courts grant leave to appeal "only when the movant demonstrates the existence of exceptional circumstances" that require a departure from the normal course of litigation. *Id.* And even when the three prongs are met,

5

district courts retain "unfettered discretion to deny certification if other factors counsel against it." *Bernard L. Madoff Inv. Sec. LLC*, 2017 WL 4417701, at *3.

### III. Plaintiff's Motion

Having reviewed the September 26, 2017 Memorandum Opinion Regarding Fixture Classification and Valuation, there are no circumstances to warrant granting Plaintiff's motion for leave to appeal an interlocutory order. Accordingly, within the Court's discretion, Plaintiff's motion for leave to appeal is DENIED. This resolves Docket Numbers 4 and 10. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED:

Dated: September 7, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge