Hearing Date: February 5, 2019 at 2:00 p.m.<br>
Objection Deadline: January 29, 2019 at 4:00 p.m.

HODGSON RUSS LLP
James C. Thoman, Esq.
Jeffrey C. Stravino, Esq.
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000
*Attorneys for American Axle &*
*Manufacturing, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 09-50026 (REG) |
| MOTORS LIQUIDATION COMPANY, *et al.,* ) | Chapter 11 |
|    f/k/a General Motors Corp., *et. al.,* ) | (Jointly Administered) |
| ) | |
|    Debtors ) | |
| ) | |

**DECLARATION OF MARK WILLIAMS IN SUPPORT OF**
**AMERICAN AXLE & MANUFACTURING, INC.'S MOTION TO INCLUDE**
**THE TONAWANDA FORGE SITE IN THE RACER TRUST OR, IN THE**
**ALTERNATIVE, FOR AUTHORITY TO FILE A LATE CLAIM AGAINST THE**
**DEBTORS TO PARTICIPATE IN DISTRIBUTIONS**
**<u>FROM THE GUC TRUST</u>**

Mark Williams, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares the following to be true and correct.

1. I am a Senior Manager of Environmental, Health and Safety for American Axle & Manufacturing, Inc., headquartered in Detroit, Michigan ("**American Axle**"). I previously held the position of Environmental Manager from 2004 to 2014.

- 2 -

2. I make this declaration in support of American Axle's motion (the "**Motion**") to have the Tonawanda Forge Site (the "**Site**") included in the Revitalizing Auto Communities Environmental Response Trust ("**RACER Trust**") or alternatively, if the Court does not grant the above requested relief a ruling that American Axle may file a late claim against the Debtors to participate in distributions from Old GM General Unsecured Creditor's Trust ("**GUC Trust**") for environmental contamination caused by Old GM at the Site.

### History of Ownership and Operations at the Site

3. The Site is located at 2390 and 2392 Kenmore Avenue in Tonawanda, New York.

4. Upon information and belief, Old GM owned the Site, and conducted operations at the Site, from approximately 1954 until 1994.

5. In 1994, American Axle purchased the Site from Old GM. American Axle then sold the Site to Lewis Bros., LLC ("**Lewis Bros.**") in 2008.

6. Upon information and belief, Lewis Bros. stills owns the Site.

7. Upon information and belief, Lewis Bros. conducted operations, including widespread demolition activities, at the Site after purchase, but is no longer in business.

### American Axle Did Not Have Notice of Potential Liability Until December 2017

8. On December 19, 2017, more than nine years after American Axle had sold the Site to Lewis Bros, and more than eight years after Old GM had filed for bankruptcy, the

- 3 -

New York State Attorney General ("**AG**") sent a letter to American Axle noting "significant contamination from industrial processes conducted by the former owners of the site." ("**December 2017 Letter**").

9.  The December 2017 Letter was the first notice provided to American Axle of any potential liability at the Site.

10. After receiving the December 2017 Letter, American Axle learned that the Site had been listed as a Class 2 site in the State Registry of Inactive Hazardous Waste Sites (list of State Superfund sites) since May 2013. A copy of the New York State Department of Environmental Conservation ("**NYSDEC**") Environmental Site Remediation Database Search Details is attached hereto as **Exhibit A**.

11. According to the NYSDEC, PCBs are the contaminant of concern at the Site. Notably, the manufacture of PCBs was banned in 1979, and most PCB uses were phased out. Upon information and belief, American Axle did not use PCBs at the Site during its operations from 1994 through 2008.

### NYSDEC's own documents state that Old GM is Responsible for PCBs, the Contaminant of Concern

12. Upon information and belief, American Axle did not use PCBs during its operations at the Site, and the only PCBs that American Axle was aware were present at the Site during American Axle's ownership were in transformers and capacitors dating back to Old GM's ownership and operation at the Site. The level of PCBs present in these devices could not have significantly contributed to the level of PCB contamination at the Site.

- 4 -

13. NYSDEC's own documents confirm that during American Axle's tenancy, Old GM investigated and remediated contaminants disposed by Old GM that pre-dated American Axle. Old GM's remedial activities generated hazardous waste at the Site, and Old GM disputed hazardous waste regulatory fees that it paid for its waste. A NYSDEC administrative law judge ("**ALJ**") initially presiding over the dispute held a pre-hearing conference and determined that there were no disputed issues of fact, but only issues of law and regulation. The ALJ referred the matter to the General Counsel of NYSDEC for a declaratory ruling and issued a "Report" dated March 27, 2003 summarizing the undisputed material facts and the disputed issues for the General Counsel's consideration. The "Report" is attached hereto as **Exhibit B**.

14. Significantly, the ALJ found that as an undisputed material fact that "[h]istorically, GM used PCBs in the foundry complex and the forge," and confirmed that Old GM undertook investigations and remedial actions including removing PCB-contaminated soil and other debris, which were then sent off-site as hazardous waste. The Report found that "GM conducted the work that generated the hazardous wastes in dispute from the AAM [American Axle] facility, and GM paid the regulatory fees that DEC Staff alleges were due from AAM [American Axle]." The Report also noted that "DEC Staff asserts that GM . . . was responsible for the contamination at the site."

15. Three years after the Report, the NYSDEC Deputy Commissioner and General Counsel issued a Declaratory Ruling on the dispute. The "Ruling" is a Declaratory Ruling by James Ferreira, NYSDEC Deputy Commissioner and General Counsel dated May 12, 2006, and is attached hereto as **Exhibit C**.

- 5 -

16. Consistent with the Report, the Ruling described Old GM's investigations and remedial actions, and found that Old GM had a "legal duty to perform the cleanup, as both an owner of the site and generator of the hazardous waste." The Ruling noted that "Department staff further believe GM has a legal duty to respond to the waste produced in the demolition" and ruled that "[a]s both the owner of the complex and generator of the hazardous waste, it was GM's responsibility to remove the waste and ensure the waste was disposed of properly."

17. Upon information and belief, NYSDEC never ordered, or even suggested, that American Axle conduct any cleanup at the Site during its tenancy. In other words, the only party that NYSDEC ever ordered, or even suggested, to conduct cleanup procedures for contamination at the site was Old GM.

Dated: December 21, 2018

                                              /s/ Mark Williams
                                              Mark Williams

021218.00002 Litigation 14954851v7