Hearing Date February 5, 2019 at 2:00 pm
Objection Deadline: January 29, 2019 at 4:00 pm

HODGSON RUSS LLP
James C. Thoman, Esq.
Jeffrey C. Stravino, Esq.
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000
*Attorneys for American Axle &
Manufacturing, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 09-50026 (REG) |
| MOTORS LIQUIDATION COMPANY, *et al.*, ) | Chapter 11 |
| f/k/a General Motors Corp., *et. al.*, ) | (Jointly Administered) |
| ) | |
| Debtors ) | |
| ) | |

# MEMORANDUM OF LAW IN SUPPORT OF AMERICAN AXLE & MANUFACTURING, INC.'S MOTION TO INCLUDE THE TONAWANDA FORGE SITE IN THE RACER TRUST OR, IN THE ALTERNATIVE, FOR AUTHORITY TO FILE A LATE CLAIM AGAINST THE DEBTORS TO PARTICIPATE IN DISTRIBUTIONS FROM THE GUC TRUST

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..................................................................................................1

**BACKGROUND** ..........................................................................................................................2

**The RACER Trust** ........................................................................................................................3

**ARGUMENT**................................................................................................................................7

    A.    American Axle Should Be Permitted To File and Prosecute a Late Proof of Claim Against Old GM for Releasing Contaminants at the Tonawanda Forge Site, Because, as a Matter of Law, American Axle Lacked Sufficient Notice of Its Interest in the Initial Bankruptcy Proceedings and Thus to Bar its Claim Would Violate American Axle's Due Process Rights ................................................................................................7

    B.    American Axle Easily Meets the Requisite Standard for Seeking Allowance to File its Proof of Claim Notwithstanding the Passage of the Bar Date.......................................10

    C.    The Appropriate Remedy for American Axle's Claims is for the Tonawanda Forge Site to be Included in the RACER Trust. ......................................................................13

    D.    Alternatively, if the Site is not Included in the RACER Trust, American Axle should be Permitted to File its Claim Against the GUC Trust ..................................................14

**CONCLUSION** ..........................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Connecticut v. Doehr*,
   501 U.S. 1 (1991)...........................................................................................................7

*in re First Magnus Fin. Corp.*,
   415 B.R. 416 (Bankr. D. Ariz 2009).............................................................................11

*In re Grumman Olson Industries*,
   467 B.R. 694 (Bankr. S.D.N.Y. 2012)............................................................................8

*In re Johns-Manville Corp.*
   551 B.R. 104 (S.D.N.Y 2016).........................................................................................8

*Lemelle v. Universal Mfg. Corp.*,
   18 F.3d 1268 (5th Cir. 1994) .........................................................................................7

*Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*,
   419 F.3d 115 (2d Cir. 2005).....................................................................................10, 11

*In re. Motors Liquidation Co.*,
   829 F.3d 135 (2d Cir. 2016)............................................................................................7

*In re Musicland Holding Corp.*,
   356 B.R. 603 (Bankr. S.D.N.Y. 2006)..........................................................................11

*Pioneer Inv. Servs Co. v. Brunswick Assocs. L.P.*,
   507 U.S. 380 (1993).................................................................................................11, 13

*Silivanch v. Celebrity Cruises, Inc.*,
   333 F.3d 355 (2d Cir. 2003)..........................................................................................11

*Travelers Cas. & Sur. Co. v. Chubb Indm. Ins. Co. (in re Johns-Manville Corp.)*,
   600 F.3d 135 (2d Cir. 2010) (per curiam)............................................................7, 8, 9, 10

**Rules**

Federal Rule of Bankruptcy 9006(b)(1)..................................................................................10, 11

**Regulations**

Bar Date Order. *Travelers,* 600 F.3d at 157-58 ..........................................................................10

**Constitutional Provisions**

U.S. Const. amend. V..................................................................................................................7

**Other Authorities**

Budget Variance Report as of September 30, 2018 on the GUC Trust's website at
 https://www.mlcguctrust.com/KeyDocuments.aspx..................................................3

https://www.mlcguctrust.com/FAQDocuments.aspx ...................................................................3

## PRELIMINARY STATEMENT

American Axle seeks a ruling that its valid claim against Old GM is appropriately remedied by the inclusion of the Tonawanda Forge Site as a property in the RACER Trust. Alternatively, American Axle also requests permission from this Court to prosecute a late proof of claim against Old GM and participate in distributions from the Old GM General Unsecured Creditors Trust as a general unsecured creditor following the determination of the amount of its claim.

From 1994 to 2008, American Axle & Manufacturing, Inc. ("**American Axle**") owned real property located at 2390 and 2392 Kenmore Avenue, Tonawanda, New York and conducted operations there (the "**Tonawanda Forge Site**" or the "**Site**"). American Axle purchased the site from General Motors Corporation ("**Old GM**") in 1994, and sold the Site to Lewis Bros., LLC ("**Lewis Bros.**") in 2008. On June 1, 2009, after American Axle had sold the Site to Lewis Bros., Old GM filed for Chapter 11 Bankruptcy. On or about March 31, 2011, the Revitalizing Auto Communities Environmental Response Trust ("**RACER Trust**") was formed. In May 2013, the New York State Department of Environmental Conservation ("**NYSDEC**") listed the Site as a Class 2 site on the State Registry of Inactive Hazardous Waste Sites (list of State Superfund sites).[1]

By letter dated December 19, 2017, the Office of the New York State Attorney General ("**AG**") requested that American Axle meet with the Attorney General to discuss

---

[1] Declaration of Mark Williams, dated December 21, 2018 ("Williams Declaration") Exhibit A to the Motion.

American Axle's "potential liability for the cleanup" of the Site. Over the past year, American Axle has learned that the cost for the cleanup of the Site is currently unknown, but that New York State has spent more than $2 million to date, and the ultimate amount may be greater. Despite not being the party responsible for the Site's contamination, absent the relief requested in this motion, American Axle is unable to pursue apportioning fault to Old GM, the party responsible for the contamination. In addition, absent granting the relief requested, the party most responsible for the Site's contamination—Old GM—will shoulder no responsibility in paying for the Site's cleanup. American Axle, and possibly others, will be faced with defending against remediating an environmental hazard that it did not create.

## BACKGROUND

As a result of the Old GM bankruptcy proceedings, a newly formed company ("**New GM**") acquired all of Old GM's business "free and clear" of most existing Old GM liabilities. Old GM remained in bankruptcy, and over several years proceeded to satisfy its liabilities that were not acquired by New GM. As part of this process, the Bankruptcy Court for the Southern District of New York set a "bar date" of November 30, 2009, to file a proofs of claim as to Old GM's remaining assets. After claims were filed, Old GM proposed a Chapter 11 liquidation plan to pay off its liabilities (the "**Plan**"). The Plan was confirmed by order of this Court dated March 29, 2011(the "**Confirmation Order**").[2]

---

[2] Docket No. 9941

Pursuant to the Plan, unsecured claims against Old GM would be handled through the General Unsecured Claims Trust ("**GUC Trust**"). The GUC Trust would hold certain assets including New GM stock that could be used to purchase shares at fixed prices. Creditors with unsecured claims against Old GM would receive these units on a pro rata basis in satisfaction of their claims. As of August 2015, the GUC Trust has sold all of its holdings of New GM Common Stock for net proceeds aggregating $741.7 million, having completed all such sales on August 5, 2015. As a result, all distributions by the GUC Trust thereafter in respect of any Allowed General Unsecured Claims (including in respect of the GUC Trust Units) are made solely in cash. Claimholders who are allowed to pursue their claims against the GUC Trust can receive $296 for every $1,000 that their claim is worth.[3]

### The RACER Trust

Notably, part of Old GM's plan created a trust to deal with Old GM's environmental liabilities throughout the country. The payment of Old GM's environmental liabilities was made possible by the creation of an environmental response trust (i.e., the RACER Trust). The RACER Trust was created in March 2011, via a settlement agreement entered into by Old GM, the United States Government, 14 separate state governments including New York State, and the St. Regis Mohawk Tribe.[4] The RACER Trust took on the responsibility of cleaning up and selling environmentally contaminated properties formerly owned by Old GM.

---

[3]    *See* GUC Trust's website in FAQ section https://www.mlcguctrust.com/FAQDocuments.aspx.

[4]    *See* RACER Trust Settlement Agreement [Docket No. 9941].

- 3 -

The RACER Trust is still in existence today, and continues to fund clean-up efforts in areas where Old GM is responsible for environmental contamination.

Included in the RACER Trust were three kinds of properties. First, the RACER Trust took on liability from properties that were owned by Old GM. However, Old GM's ownership was not the sole factor considered in determining which properties the Trust would encompass. Properties not owned by Old GM, but for which clean up orders had already been issued against GM, were included in the RACER Trust. Also included were non-owned contaminated sites without significant potentially responsible parties ("**PRPs**") other than Old GM.

Throughout the process of the creation of the RACER Trust, New York State had not notified American Axle of potential liability, much less formal charges, relating to contamination at the Site. Furthermore, as explained in more detail below, American Axle could not have known that New York State may pursue it for Old GM's environmental liability during the bankruptcy proceedings. Unfortunately, New York State did not seek to have the Site included in RACER, and American Axle's lack of notice of any claim by New York State rendered it unable to file a proof of claim against Old GM relating to environmental contamination at the Site.

Things have since changed. In May 2013, NYSDEC listed the Site as a Class 2 Site in the State Registry of Inactive Hazardous Waste Sites (list of State Superfund sites). However, even at that time, American Axle did not have any notice that it may potentially be held liable for contamination at the Site. That is, according to the NYSDEC, PCBs are the

- 4 -

contaminant of concern at the Site. Notably, the manufacture of PCBs was banned in 1979, and most PCB uses were phased out. Upon information and belief, American Axle did not use PCBs at the Site during its operations from 1994 through 2008.[5]

NYSDEC's own documents state that Old GM is responsible for the PCBs at the Site. As stated in more detail in the declaration of Mark Williams, and the attached documents from NYSDEC, the NYSDEC's ALJ found that as an undisputed material fact that "[h]istorically, GM used PCBs in the foundry complex and the forge," and confirmed that Old GM undertook investigations and remedial actions including removing PCB-contaminated soil and other debris, which were then sent off-site as hazardous waste.[6] The Report found that "GM conducted the work that generated the hazardous wastes in dispute from the AAM [American Axle] facility, and GM paid the regulatory fees that DEC Staff alleges were due from AAM [American Axle]."[7] The Report also noted that "DEC Staff asserts that GM . . . was responsible for the contamination at the site."[8]

Three years after the Report, the NYSDEC Deputy Commissioner and General Counsel issued a Declaratory Ruling on the dispute.[9] Consistent with the Report, the Ruling described Old GM's investigations and remedial actions, and found that Old GM had a "legal duty to perform the cleanup, as both an owner of the site and generator of the hazardous

---

[5]   Williams Declaration, ¶ 12.

[6]   *Id*. ¶ 14.

[7]   *Id.* ¶ 14.

[8]   *Id.* ¶14.

[9]   *Id.* ¶ 15.

waste."[10] The Ruling noted that "Department staff further believe GM has a legal duty to respond to the waste produced in the demolition" and ruled that "[a]s both the owner of the complex and generator of the hazardous waste, it was GM's responsibility to remove the waste and ensure the waste was disposed of properly."[11]

Upon information and belief, NYSDEC never ordered, or even suggested, that American Axle conduct any cleanup at the Site during its tenancy.[12] In other words, the only party that NYSDEC ever ordered, or even suggested, to conduct cleanup procedures for contamination at the site was Old GM. That is, until a letter dated December 19, 2017, from the Office of the New York State Attorney General ("**AG**") that requested that American Axle meet with the Attorney General to discuss American Axle's "potential liability for the cleanup" of the Site.[13]

Despite not being responsible for disposal of PCBs at the Site, absent the relief requested in this motion, American Axle is unable to pursue the option of apportioning fault to Old GM, the party responsible for the disposal of PCBs at the Site. And absent the relief requested, New York State is unable to hold Old GM responsible for its contribution to the contamination. In other words, the party responsible for the Site's contamination -- Old GM --

---

[10]   *Id.* ¶ 16.

[11]   *Id.* ¶ 16.

[12]   *Id.* ¶ 17.

[13]   *Id.* ¶ 9.

will shoulder no responsibility in paying for the Site's cleanup. American Axle will be asked to remediate an environmental hazard it did not create.

## ARGUMENT

A. **American Axle Should Be Permitted To File and Prosecute a Late Proof of Claim Against Old GM for Releasing Contaminants at the Tonawanda Forge Site, Because, as a Matter of Law, American Axle Lacked Sufficient Notice of Its Interest in the Initial Bankruptcy Proceedings and Thus to Bar its Claim Would Violate American Axle's Due Process Rights**

Due process requires that this Court should allow American Axle to file a late proof of claim. The Due Process Clause provides, "[n]o person shall be deprived of life liberty or property without due process of law. U.S. Const. amend. V. Certain procedural protections attach when due process is triggered. *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991). Generally, legal claims are sufficient to constitute property such that a deprivation would trigger due process scrutiny. *In re. Motors Liquidation Co.*, 829 F.3d 135, 158 (2d Cir. 2016). In the context of having one's legal claim resolved through a court-approved settlement agreement, courts look to whether a particular claim was contemplated and accounted for throughout the negotiations to determine whether an interested party has been afforded due process. *See Travelers Cas. & Sur. Co. v. Chubb Indm. Ins. Co. (in re Johns-Manville Corp.)*, 600 F.3d 135, 156 (2d Cir. 2010) (per curiam).

An important component of due process is whether a party was aware of their claims against a debtor at the time bankruptcy proceedings take place. *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994) (holding that plan of reorganization for mobile home manufacturer did not discharge claims against successor company for injury caused by

- 7 -

mobile home manufactured pre-petition).  Courts will find that a party did not receive due process in bankruptcy proceedings where a debtor's pre-bankruptcy conduct causes harm to a claimant after the bankruptcy has closed.  *In re Johns-Manville Corp.* 551 B.R. 104, 114 (S.D.N.Y 2016); *In re Grumman Olson Industries*, 467 B.R. 694, 708-10 (Bankr. S.D.N.Y. 2012) (holding creditor's claim could not be barred for due process reasons because pre-bankruptcy conduct of debtor did not cause any harm until after bankruptcy closed).

The *Johns-Manville* case is instructive.  There, the Southern District of New York discussed the challenges associated with the long saga of *Johns-Manville's* bankruptcy proceedings.  551 B.R. at 114.  Particularly, the Court discussed the challenge of asbestos cases, where unknown individuals may not manifest injuries and therefore may not know they have a right to recovery against a debtor until after the debtor's bankruptcy plan has been confirmed. *Id.* at 115.  Furthermore, the Court noted that without the appointment of a future claims representative ("**FCR**") in certain bankruptcy proceedings, it is "doubtful that injunction provisions binding [claim holders] would be found to comply with the due process clause." *Id.* (internal citations and quotations omitted).  During the bankruptcy proceedings discussed in *Johns-Manville,* an FCR was present. *Id.*  However, there was still a question of whether the individual plaintiff was adequately represented by the FCR. *See id.* at 117-24.  The court accordingly remanded proceedings back to the Bankruptcy Court to determine whether the plaintiff had been afforded due process. *Id.* at 124.

Here, American Axle had no reason to be aware of any potential environmental liability for Old GM's contamination during the time period prior to the creation of the RACER Trust in March 2011.  This weighs in favor of a finding that American Axle should not be barred

- 8 -

from asserting a claim against Old GM, because barring such a claim would violate due process. Furthermore, New York State was not pursuing American Axle for cleanup of environmental contamination at the Tonawanda Forge Site during the negotiation of the RACER Trust. American Axle was also unaware of any potential claims it had against Old GM regarding contamination at the Site during the formation of RACER, and the earliest any information was given about the site being listed as a Superfund site was not until May 2013. This also weighs in favor of a finding that barring American Axle from bringing its claim against Old GM would constitute a deprivation of due process.

Finally, in the instant case, the environmental contamination at the Tonawanda Forge Site was caused by Old GM's pre-bankruptcy activity as explained in more detail in the declaration of Mark Williams, American Axle's Environmental Manager. American Axle did not have full or complete knowledge of the contamination caused by Old GM until much after Old GM's bankruptcy plans had been confirmed and the RACER Trust was established. This weighs in favor of a finding that barring American Axle from filing a claim against Old GM would constitute a deprivation of due process.

Here, like the plaintiffs afflicted by asbestos in the *Johns-Manville* cases, who did not know of their right to recovery until after the bankruptcy proceedings had ended, American Axle did not know of its right to recovery until well-after the RACER Trust was established. *See Johns-Manville*, at 115. Furthermore, were it not for the FCR at the bankruptcy proceedings in *Johns-Manville,* future claims holders afflicted by asbestos would have likely been denied due process. *See id.* In the instant case, upon information and belief, like in *Johns-Mansville*, it is clear that American Axle's interests were not accounted for while the RACER Trust was

- 9 -

negotiated and formed. Therefore, as noted by the *Johns-Manville* court, barring American Axle's environmental claim as late violates due process. *See id.* at 117-24.

Based upon the foregoing, legal precedent and principles of justice and fairness support this Court finding that American Axle may file a late proof of claim against Old GM and participate in the RACER Trust. Denying the motion would deprive American Axle of due process.

### B. **American Axle Easily Meets the Requisite Standard for Seeking Allowance to File its Proof of Claim Notwithstanding the Passage of the Bar Date.**

Having established that it was denied due process, American Axle should not be required to make any additional showing in order to file late proof of claims. The failure to file a timely proof of claim was the result of American Axle's lack of sufficient notice regarding its interest in the initial bankruptcy proceedings. Because American Axle lacked sufficient notice and was therefore deprived of due process, Second Circuit precedent dictates that it is not bound by the Bar Date Order. *Travelers,* 600 F.3d at 157-58.

However, even if the "excusable neglect" standard typically applied in situations where a party seeking to act outside the bar date is applicable here, American Axle easily demonstrates that it meets the requirement of excusable lateness. In other words, even if American Axle had constitutionally sufficient notice of its interest in the initial bankruptcy proceedings, Federal Rule of Bankruptcy 9006(b)(1) provides courts with the discretion to deem claims timely filed if the failure to act was the result of "excusable neglect." *Residential Capital*, 2015 WL 2256683 at *9 (emphasis added); *Midland Cogeneration Venture Ltd. P'ship v. Enron*

*Corp. (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005). Specifically, Rule 9006(b)(1) provides:

> [w]hen an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b)(1) (emphasis added).

In determining whether the failure to timely file a proof of claim is the result of excusable neglect, courts apply a four part test, articulated by the Supreme Court. *Pioneer Inv. Servs Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993). The four factors set forth by *Pioneer* are: (1) the danger of prejudice to the debtor; (2) the length of delay and impact thereof; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* Courts in the Second Circuit give particular weight to the third factor, the reason for the delay. *Enron,* 419 F.3d at 122-23 (citing *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366 (2d Cir. 2003)); *Dana Corp.*, 2007 WL 1577763 at *4 (quoting *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006)). American Axle easily satisfies all four factors of the *Pioneer* test and should be permitted to prosecute its proof of claim notwithstanding the passage of the bar date.

<u>First</u>, any prejudice suffered by Old GM pales in comparison to the deprivation of due process American Axle would suffer if not allowed to pursue this claim. Where a creditor's right to due process outweighs the prejudice suffered by a creditor, courts will not bar the creditor from bringing a late proof of claim. *See in re First Magnus Fin. Corp.*, 415 B.R. 416,

423 (Bankr. D. Ariz 2009) ("[t]he liquidating trustee's argument that the late claim will cause judicial inefficiency rings hollow in light of [the claimant's] right to do process . . ."). Here, American Axle faces defending claims that it is responsible for environmental contamination which it did not cause. In contrast, there is little prejudice to Old GM where the remedy American Axle seeks is to have its claim resolved by including the Site in the RACER Trust. In other words, American Axle is the party who will be prejudiced if this claim is barred, not Old GM.

<u>Second</u>, the length in delay in filing the claim is appropriate in light of the circumstances. American Axle did not own the Site when the RACER Trust was being formed. Furthermore, American Axle did not know the extent of contamination at the Site when RACER was created, and it was not until December 2017 that New York State contacted American Axle and suggested it may face formal liability for the Site's contamination. Accordingly, the length of delay should not bar it from prosecuting its claim.

<u>Third</u>, any delay by American Axle was not within its reasonable control. Between 2008 and now, American Axle has not owned or operated the Site. American Axle had no control over New York State investigations, procedures, and decisions regarding contamination at the Site. American Axle was unaware of the extent to which the Site was contaminated until December of 2017, when it received the letter from the AG. Before then, American Axle did not even know of its potential claim against Old GM, and certainly had no control over whether or not the claim could be timely filed.

Fourth, American Axle is acting in good faith by filing its proof of claim after it was notified of the extent of the environmental contamination at the site. American Axle is seeking a fair and just remedy in that it is attempting to have Old GM's environmental liability for the Tonawanda Forge Site handled in the same manner other environmental labilities were handled during the its bankruptcy proceedings. Accordingly, the *Pioneer* factors are satisfied and American Axle should be permitted to file and prosecute a late proof of claim.

### C. The Appropriate Remedy for American Axle's Claims is for the Tonawanda Forge Site to be Included in the RACER Trust.

The appropriate remedy should be the inclusion of the Site into the RACER Trust. The original properties included in the Trust had been identified by government entities through claims and causes of action alleging the violation of environmental laws.[14] Specifically, state governments, including New York, alleged Old GM was liable for response costs under CERCLA.[15] Therefore, timely proofs of claim involving Old GM's environmental liability under CERCLA were dealt with and handled through the creation of the RACER Trust.

Moreover, the Site meets the same criteria as the RACER Trust's initial properties. Although Old GM did not own the Site at the time when was RACER was created, Old GM was responsible for environmental contamination at the Site and Old GM had been performing remedial activities at the Site before it filed for bankruptcy. At the time of the bankruptcy filing, Old GM was the only party responsible for the Site's contamination. There was, and still is, no evidence that American Axle caused the contamination, and Lewis Bros. is

---

[14] *See* RACER Trust Settlement Agreement [Docket 9941] at 5.

[15] *Id.* at 3.

not viable PRP to cover cleanup costs. Thus, Old GM is liable under CERCLA for contamination at the Tonawanda Forge Site, this liability should be handled through the RACER Trust.

### D. Alternatively, if the Site is not Included in the RACER Trust, American Axle should be Permitted to File its Claim Against the GUC Trust

Alternatively, if the Site is not included in the RACER Trust, American Axle should be permitted to seek a remedy from the GUC Trust. As stated above in Sections A and B of this motion, American Axle lacked constitutionally sufficient notice of its claim against Old GM. Thus, barring American Axle from filing a late proof of claim against the GUC Trust would constitute a deprivation of due process.

### CONCLUSION

The historical information and documentation demonstrates that American Axle did not have notice that NYSDEC may seek to hold American Axle responsible for contamination at the Site for the period prior to Old GM filing for bankruptcy on June 1, 2009, the November 9, 2009 Bar Date for claims and prior to the formation of the RACER Trust on or about March 31, 2011. It is also undisputed that the Site was not added to the New York State Registry of Inactive Hazardous Waste Sites (list of State Superfund sites) until May 2013. Therefore, for the reasons stated above and in the accompanying papers, American Axle respectfully submits that this Court should grant American Axle's motion to have the Site included in the RACER Trust. In the alternative, if the Site is not included in the RACER Trust, then the Motion requests permission for American Axle to file a late claim against Old GM to enable it to participate in distributions from the GUC Trust.

Dated: December 21, 2018

**HODGSON RUSS LLP**
*Attorneys for American Axle &
Manufacturing, Inc.*

By: s/James C. Thoman
    James C. Thoman
    Jeffrey C. Stravino
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
716.856.4000
*jthoman@hodgsonruss.com*
*jstravino@hodgsonruss.com*

- 15 -