UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY, *et al*., f/k/a General Motors Corp., *et al.*** | : | **09-50026 (REG)** |
| **Debtors.** | : | **(Jointly Administered)** |

CERTIFICATE OF PUBLICATION

I, Angela Ferrante, certify as follows:

1. I am a Director of the Business Reorganization Department of the Melville office of The Garden City Group, Inc., the claims and noticing agent for the debtors and debtors-in-possession (the "Debtors") in the above-captioned proceeding. The business address for the Melville office is 105 Maxess Road, Melville, New York 11747

2. On October 15, 2009, at the direction of Weil, Gotshal & Manges LLP, counsel for the Debtors, I caused publication of the **Notice of Deadlines for Filing Proofs of Claim (Including Claims Under Section 503(b)(9) of the Bankruptcy Code)** in the following publications:

Publication Name

*Financial Times*, Worldwide

*The Wall Street Journal*, Global

*The New York Times*, National

*USA Today*, (Mon-Thurs) National

*Detroit Free Press/Detroit News*

*Le Journal de Montreal* (French) [1]

*Montreal Gazette* (English)

*The Global and Mail*, National

*The National Post*

[1] The Certificate of Translation is attached hereto.

3. I certify under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Dated: Melville, New York
October 23, 2009

/s/ Angela Ferrante
Angela Ferrante

# US hunkers down in arduous search for Mideast peace

**Regional solution**

The administration has begun to talk in terms of a long and difficult process, write **Harvey Morris** and **Vita Bekker**

The Obama administration has reached an impasse in its Middle East peace strategy as it this week assesses progress – or rather the lack of it – in nine months of intensive diplomacy aimed at reviving stalled Israeli-Palestinian talks.

In the face of rigid positions adopted by both sides, the administration has begun to talk in terms of a long and difficult process towards the peace settlement that Barack Obama, president, made a high policy priority from his first day in the Oval Office last January.

"We're under no illusions here that even when a formal negotiation begins, it is going to be arduous," according to Philip Crowley, US Department of State spokesman. "It's going to take a considerable amount of time. How much? Who knows?"

An already negative atmosphere has been further soured by a human rights report from a United Nations panel chaired by Richard Goldstone, a South African judge, that focused on alleged Israeli war crimes during the invasion of Gaza at the turn of the year. The report called for a full investigation of atrocities claimed to have been committed by both Israel and Hamas.

Israeli fury at the report's findings entrenched public opinion behind the right-wing government of Benjamin Netanyahu in resisting pressure from the US to compromise on the terms for reopening peace talks.

Mishandling of the Palestinian response to the Goldstone report by Mahmoud Abbas, the Palestinian Authority president, meanwhile provoked an outcry at home that threatens his political future.

He bowed to US and Israeli pressure to defer discussion of the report's findings at the Human Rights Council, which ordered the Goldstone investigation, and then backtracked in the face of domestic opposition that has been exploited by his Hamas rivals.

The Geneva-based HRC will now vote today on whether to endorse a report that could theoretically lead to Israeli politicians and soldiers facing indictments at the International Criminal Court.

Mr Abbas's about-face on the Goldstone report further fuelled domestic dissent provoked by his decision to meet Mr Netanyahu in New York last month, at the invitation of Mr Obama, after he said he would do so only if Israel announced in advance a freeze on settlement activity.

Michael Warschawski, founder of the Alternative Information Centre, an Israeli-Palestinian advocacy group in Jerusalem, says Mr Obama's bid to renew peace talks would be undermined by Mr Abbas's weakness.

He adds: "Abu Mazen [Abbas] does not have the trust of the people right now to protect their rights in negotiations with Israel."

George Mitchell, who is Mr Obama's special envoy to the Middle East, will this week report back to Hillary Clinton, secretary of state, after his seventh and apparently inconclusive visit to the region and Mrs Clinton will, in turn, report to the president.

"Those who are stonewalling are hoping that the Obama administration will give up and go away," says Hussein Ibish of the Washington-based American Task Force on Palestine. "But there's no sign of a let-up by the administration in the push [for peace]. There's a sense though that they're hunkering down for the long haul."

Hard sell: this year Indians have been minding the price tag on gold, with demand falling rapidly because of a weak economy and high rupee prices Reuters

# Golden words to tempt Indian buyers

**Bullion sales**

**By Joe Leahy and James Fontanella-Khan in Mumbai**

"Only gold is divine. You can't really put a price tag on something so divine," gushes the advertisement on the cover of HT Café, an English-language lifestyle magazine.

As India prepares to celebrate Diwali this Saturday, gold industry groups have stepped up marketing campaigns to persuade Indians to indulge in their love affair with the precious metal.

The problem for industry groups, such as the World Gold Council, author of the "gold is divine" advert, is that this year Indians have very much been minding the price tag on gold.

A weak economy and high rupee prices for gold in India, the world's largest importer of bullion, pushed demand down 83 per cent from a year earlier to 17.7m tonnes in the January-March quarter. In the next quarter demand was down 38 per cent year on year, though recently there have been signs of a rebound.

The problem for the gold industry is that even during normal price fluctuations, Indian sales suffer from lumpy demand.

India's main gold-buying season usually kicks off in October or November with Dussehra, a festival celebrating the triumph of good over evil, and Diwali, when Hindus pray to the goddess Lakshmi for prosperity and buy gold for family members. People also buy during the wedding season, mainly in November and December.

To try to spread buying more evenly through the year, the World Gold Council strategy is to encourage gold buying during more of India's ancient religious festivals.

These include Baisakhi, the Punjabi harvest festival in April and Pitru Paksha, a period when Hindus honour their ancestors. "In a way, it would be a tribute to your ancestors to show them you are prosperous. So gold buying during [Pitru Paksha] is not bad at all," says Dharmesh Sodah, director of the World Gold Council in Mumbai.

Other initiatives include gold savings schemes at post offices, micro-finance schemes to enable peasant farmers to save gold, and retail marketing schemes such as the "Great Indian Gold Rush".

Regardless of these efforts, near Zaveri market, Janhavi, a housewife, admits during some frantic pre-Diwali shopping that she is buying stuff other than gold this season. She plans to shop for gold when it becomes cheaper. In the meantime she has bought some pens and toys for her children and is looking for a wallet.

"I will also be buying imitation jewellery that I will wear for Diwali. A lot of my friends are doing the same."

**Video: Keyur Shah, of India's World Gold Council**
**www.ft.com/indiagold**

## Legal Notices

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY** | : | **09-50026 (REG)** |
| **f/k/a GENERAL MOTORS CORPORATION, *et al.*,** | : | |
| **Debtors.** | : | **(Jointly Administered)** |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(b) Your claim has been paid in full;

(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided, however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;

(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);

(g) You are a Debtor in these cases having a claim against another Debtor;

(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;

(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or

(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

If by first-class mail, to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
P.O. Box 9386
Dublin, Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at
www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

***Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred, estopped, and enjoined from asserting such claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.***

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company, P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**

DATED: September 16, 2009
New York, New York
BY ORDER OF THE COURT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

# Debt-burdened Dubai begins to exorcise its economic demons

**Emirate's rally**

Traffic congestion in the city state points to a growth in commercial activity, writes **Simeon Kerr**

It is a strange, but telling, reaction: some commuters in Dubai are breathing a sigh of relief when they hit traffic jams.

"I rejoice when I grind to a halt," says one businessman, who watched with growing unease over the past year as vehicles disappeared from the roads as building activity fell silent and companies downsized their workforces.

The gloom after the crash that followed Dubai's period of petro-dollar and credit-driven growth is starting to clear, and residents have returned from the extended summer and Ramadan lull to a city that feels as though it is expelling its economic demons.

The first post-break test has been cleared: schools have not seen marked reductions in returning pupils. Analysts had feared that an expatriate exodus would dampen domestic consumption and slash demand for real estate.

Several schools surveyed by the Financial Times have reported strong new-year enrolments, from the high-end Repton School Dubai, a boarding school outpost of the English public school, to the cross-cultural educational empire of GEMS, which has seen numbers rise 5 per cent this year.

"Not many children have left, the school is bustling," said Debbie Watson, head teacher at King's School Dubai, where demand has spiked after a strong performance in last year's debut schools inspections.

Real estate remains in the doldrums, with values half of their peak last year and an overhang of soon-to-be-completed properties, but there are glimmers of hope.

Dubai can now fight back as a competitive city: its infrastructure and lifestyle are now bolstered by reasonable prices, says Blair Hagkull, regional managing director for Jones Lang Lasalle, the global property agent.

Plummeting rents have also allowed workers to upgrade the size and location of their accommodation and agents say some residential areas are seeing a rise in sales inquiries, possibly presaging a price rise. Many of those finding work in booming Abu Dhabi are using the western end of more relaxed Dubai as a dormitory, commuting up to three hours a day.

"The mood is changing and I can feel confidence strengthening as those that tried to suggest Dubai would be hollowed out by a summer expatriate exodus or brought to its knees by a drop in property prices have been proved wrong," said Simon Williams, senior economist with HSBC in Dubai.

He argues that as the regional economy strengthens, demand for the business services that are Dubai's forte will return, while domestic deflation will help the city to compete more effectively.

Already the stock market has rallied, insurance against a government default is easing and markets assume the Dubai government will clear developer Nakheel's $4.05bn (€2.72bn, £2.54bn) Islamic bond maturing in December.

"Dubai still has very serious challenges to overcome," says Mr Williams. "I expect the next 12 months to be an awful lot better but don't confuse this with a return to the boom days."

Yet despite the newly-found optimism, the emirate continues to face several hurdles in its path to growth, from an overbearing debt mountain to a huge upcoming overhang in property supply against questionable demand.

And in the meantime, Dubai-based expatriates continue to lose their jobs.

Nakheel is shedding at least 300 more staff, as it continues to shrink its once-huge workforce towards a third of its peak.

One employee recently made redundant says he is seeking other work before his resident's visa elapses in two months, but fears for the ability of the developer to carry on effectively with such a skeleton staff.

For now, he keeps himself busy at the mall, in between meetings and interviews for new jobs. And such jobs are generally on offer in the new centres of growth, such as Abu Dhabi, Doha and Saudi Arabia.

"I like this area and want to stay, but will there be something for me here?" he asks.

**Dubai downturn**

Total population (m) | Annual % change
1.7 1.6 1.5 1.4 1.3 1.2 1.1 0 | 12 10 8 6 4 2 0 -2 -4 -6 -8
2006 08 09 10 Forecasts

Residential property prices (emirati dirham per sq ft)
2000 1800 1600 1400 1200 1000 800
Asking
Achieved
Q2 2008 Q1 2009

Source: Jones Lang LaSalle

**MORE ON FT.COM**

Abu Dhabi is emerging as the Middle East bond capital, with $12bn issued so far this year
**www.ft.com/world**

# Eurozone optimism as output rises again

EU figures extend V-shaped recovery

**By Ralph Atkins in Frankfurt**

Eurozone industry has reported a fourth consecutive monthly rise in production, pointing to a robust third-quarter growth rebound right across the 16-country region.

Industrial production in August was 0.9 per cent higher than the previous month, reported Eurostat. The European Union's statistical office also revised up July's data to show a 0.2 per cent rise rather than a 0.3 per cent fall, as reported originally.

The latest data extended the V-shaped recovery in eurozone industrial production since April. Just as the region was worse hit than other parts of the world from repercussions of last year's Lehman Brothers failure, the eurozone was benefiting disproportionately from the subsequent revival in global growth prospects, analysts said.

Much of the region's industrial sector was highly cyclical, said Robert Barrie, European economist at Credit Suisse. "In a downswing, that is a big problem, but as things start to recover it makes for a lot of upside."

The latest upbeat data did not ease fears, however, that the pace of economic recovery would slow later this year and in 2010, as the effects globally of emergency stimulus measures wore off, and eurozone exports were hit by the strength of the euro. At the same time, the eurozone is still a long way off pre-crisis levels of activity: industrial production in August was still 15.4 per cent lower than a year ago.

Recent months' production data have been volatile, perhaps distorted by summer factory shutdowns. But the eurozone's revival appears to be widespread. Italy reported a 7 per cent rise in production in August alone, compared with the 1.5 per cent rise in Germany and 1.9 per cent increase in France.

The eurozone recovery might also assist Spain, which was badly hit by falling house prices and high unemployment. Spanish industrial production was up by 1 per cent in August. However, Ireland, where data have been volatile, saw production fall by almost 17 per cent month on month.

# LEGAL NOTICES

## BANKRUPTCIES

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**In re** : **Chapter 11 Case No.**
**MOTORS LIQUIDATION COMPANY** : **09-50026 (REG)**
**f/k/a GENERAL MOTORS CORPORATION, *et al.*,** :
**Debtors.** : **(Jointly Administered)**

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;
(b) Your claim has been paid in full;
(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;
(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;
(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;
(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);
(g) You are a Debtor in these cases having a claim against another Debtor;
(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;
(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or
(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

If by first-class mail, to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
P.O. Box 9386
Dublin,Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

***Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.***

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**

DATED: September 16, 2009 BY ORDER OF THE COURT
New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

Be
in the
Legal Loop

Legal Notices
in
The Wall Street Journal.

To advertise, call
44-20-7842-9600
or 49-69-971-4280.

THE WALL STREET JOURNAL.
EUROPE

Bookshelf / *By Alexander Theroux*

# Urban Ardor, Urban Angst

'My childhood fame had made me impossible to cast, and relieved me of the burden of ambition." This is one of the early confessions of the narrator of "Chronic City," a hapless 40-year-old man named Chase Insteadman who is for no strongly apparent reason drawn deeper and deeper into the "pocket universe" of a New York City—specifically, the Upper East Side—that is as random, antic and oddly peopled as any party that Holly Golightly ever threw.

**Chronic City**
*By Jonathan Lethem*
(Doubleday, 467 pages, $27.95)

In a way, Insteadman plays the role of Everyman in "Chronic City," an entertaining novel devoted to a kind of loopy urban sociology. He is even called "Chase Unperson" by one of his friends, as if to point up his role as random *raisonneur*. A former child-actor who lives off the residuals of a long-ago TV show, Insteadman has plenty of time to involve himself with a number of bizarre marginals, both rich and poor.

There is, for instance, the young, cheeky, mysterious, always-black-attired Oona Laszlo, a mercurial ghostwriter. Or the runty, roosterish Richard Abneg, "like a cartoon Communist in his wide-legged charcoal suit," a hip fixer for New York's billionaire mayor. Most notably, there is Insteadman's sweetheart and fiancée, Janice Turnbull, an astronaut on the International Space Station whom we encounter in the book solely through the loving letters she writes to him from beyond the stratosphere.

If this all sounds a bit comic and satirical, it is, though the satire is gentle—these are sweet, if unstable, urban types—and the flaky confusion cannot hide, at times, a portentous Quest for Meaning. The search becomes chronic in Mr. Lethem's focal character, the bohemian Perkus Tooth, a wall-eyed rock critic and rumpled misfit—a "fugitive ecstatic"—who experiences no end of obsessive compulsions and comic "intertextual eurekas" as he collects books, scuffed LPs and rare ceramics. He is disconnected from society, the duke of his own domain. He smokes high-grade marijuana. He wears suits. He lives alone and solely for his heroes, among whom are Norman Mailer, G.I. Gurdjieff, the Russian mystic, and Marlon Brando.

"Chronic City" is, then, a prosopographical investigation of New York City by way of a handful of strange, unclassifiable characters (and some remarkable writing). But it is Tooth's fate that commands the book's attention. He is troubled, and caring for him seems to be inexplicably the self-appointed hobby of all those who know him. "Perkus had thrown a lot of himself, too much, down a rabbit-hole leading into no Wonderland whatsoever," Insteadman says, assessing his friend. What this odd duck represents, if anything, is anyone's guess. I opt for dogged—not rugged—individualism. Perkus Tooth seems to combine two previous Lethem characters: rock journalist Dylan Ebdus in "The Fortress of Solitude," a lonely, confused soul wishing for invisibility, and Lionel Essrog, the protagonist of "Motherless Brooklyn," who with Tourette's Syndrome has his own obsessions, one of them language itself.

Insteadman pursues Tooth and what he "means" as, say, Ishmael does Ahab, though the comparison is extravagant: "Chronic City" has not a jot of the weight of such a classic. There is nothing deeply philosophical at stake in any of these pages. It is mostly whimsy, interrupted by splendidly observed if sardonic evaluations and support-group-like gatherings in 24-hour cafés.

The individual portraits remain the book's best features. There is no urgency to the plot, however, because there is no plot. At best, the arc of the book traces Tooth's brief, varied and not always convincing life. Entire chapters of "Chronic City" could be expunged without changing the book at all. The narration is open-ended, going off in arbitrary directions—at one moment the "embedded" histories of words, at another the questionable drama of a detailed online auction for a rare object.

It is New York City itself, "a puzzletrap for anonymous encounters," that takes pride of place here—or provides the place of pathos. One could draw a street grid from the citations in "Chronic City." And yet it is an unmappable city, too: "Our sphere of the real (call it Manhattan) was riddled with simulations, yet was the world at hand," Insteadman says at one point. "Or the simulation was riddled through with the real. . . . The world was ersatz and actual, forged and fake, by ourselves and unseen others. Daring to attempt to absolutely sort fake from real was a folly that would call down tigers or hiccups to cure us of our recklessness."

That reference to "simulation"—suggesting a surface reality that is not real—is telltale. The work of Thomas Pynchon inevitably comes to mind. Like Mr. Pynchon, Mr. Lethem loves crazy names—we encounter (along with Insteadman and Tooth) Sadie Zapping, Laird Noteless, Rossmoor Danzig and Strabo Blandiana, among many others. Like Mr. Pynchon, Mr. Lethem revels in a goofy, puzzling randomness, as well as in the presentation of enthusiastic arcana. But beneath it all beats a pulse of paranoia. With the narrator, readers of Mr. Lethem's novel travel on a lively and learned odyssey of their own, trying to sort through information, flirting with chaos and running into wing-nuts, oddballs and dead ends.

*Mr. Theroux's latest novel is "Laura Warholic: Or, The Sexual Intellectual" (Fantagraphics).*

**Pepper . . . and Salt**
THE WALL STREET JOURNAL

"Well, what do you know — I guess this was my ideal weight."

# The Message of Dollar Disdain

**By Judy Shelton**

Unprecedented spending, unending fiscal deficits, unconscionable accumulations of government debt: These are the trends shaping America's financial future. And since loose monetary policy and a weak U.S. dollar are part of the mix, apparently, it's no wonder people around the world are searching for an alternative form of money in which to calculate and preserve their own wealth.

It may be too soon to dismiss the dollar as an utterly debauched currency. It remains the most used for international transactions and constitutes over 60% of other countries' official foreign-exchange reserves. But the dollar's reputation is being severely compromised.

Funny how words normally used to address issues of morality come to the fore when judging the dollar. Perhaps it's because the U.S. has long represented the virtues of democratic capitalism. To be "sound as a dollar" is to be deemed trustworthy, dependable, and in good working condition.

It used to mean all that, anyway. But as the dollar is increasingly perceived as the default mechanism for out-of-control government spending, its role as a reliable standard of value is destined to fade. Who wants to accumulate assets denominated in a shrinking unit of account? Excess government spending leads to inflation, and inflation plays dollar savers for patsies—both at home and abroad.

A return to sound financial principles in Washington would signal that America still believes it can restore the integrity of the dollar and provide leadership for the global economy. But for all the talk from the Obama administration about needing to exert fiscal discipline—the president's 10-year budget is subtitled "A New Era of Responsibility: Renewing America's Promise"—the projected numbers anticipate a permanent pattern of deficit spending and vastly higher levels of outstanding federal debt.

Even with the optimistic economic assumptions implicit in the Obama administration's budget, it's a mathematical impossibility to reduce debt if you continue to spend more than you take in. Mr. Obama promises to lower the deficit from its current 9.9% of gross domestic product to an average 4.8% of GDP for the years 2010-2014, and an average 4% of GDP for the years 2015-2019. All of this presupposes no unforeseen expenditures such as a second "stimulus" package or additional costs related to health-care reform. But even if the deficit shrinks as a percentage of GDP, it's still a deficit. It adds to the amount of the nation's outstanding indebtedness, which reflects the cumulative total of annual budget deficits.

By the end of 2019, according to the administration, the federal debt will reach $23.3 trillion, compared to $11.9 trillion today. To put it in perspective: U.S. federal debt equalled 61.4% of GDP in 1999; it grew to 70.2% in 2008 (under the Bush administration); it will climb to an estimated 90.4% this year and touch the 100% mark in 2011, after which the projected debt will continue to equal or exceed America's entire annual economic output through 2019.

The U.S. is thus slated to join the ranks of those countries—Zimbabwe, Japan, Lebanon, Jamaica—with the highest government debt-to-GDP ratio (which measures debt against a nation's capacity to repay). In 2008, the U.S. ranked 23rd on the list—crossing the 100% threshold vaults the country into seventh place.

If you were a foreign government, would you increase your holdings of Treasury securities knowing the U.S. has no plans to balance its budget in the next decade, let alone achieve a surplus?

European Union countries wishing to adopt the euro must first limit government debt to 60% of GDP. It's the reference criterion for "soundness and sustainability of public finances." Politicians find it all too tempting to print money—something Europeans have understood since the Weimar Republic—and excessive government borrowing poses a threat to monetary stability.

Valuable lessons also emerge from Japan's unsuccessful experiment with quantitative easing in the aftermath of its ruptured 1980s bubble economy. The Bank of Japan's desperate efforts to fight deflation through a zero-interest rate policy aimed at bailing out zombie companies, along with massive deficit spending, only contributed to a decade of stagnant growth. Japan's government debt-to-GDP ratio escalated to more than 170% now from 65% in 1990.

Over the same period, the yen's use as an international reserve currency went from comprising 10.2% of official foreign-exchange reserves to 3.3% today.

The U.S. has long been the world's "indispensable nation" and the dollar's role in the global economy has likewise seemed to testify to American exceptionalism. But Washington's passivity toward the nation's dismal fiscal future, and its inevitable toll on U.S. economic influence, suggests that American leadership is no longer a priority and that U.S. money cannot be trusted.

If money is a moral contract between government and its citizens, Americans are being violated. The rest of the world, meanwhile, simply wants to avoid being duped. That is why China and Russia—large dollar holders—are angling for some new kind of global currency for denominating reserve assets. It's why oil-producing Gulf States are fretting over whether to continue pricing energy exports in depreciated dollars. It's why central banks around the world are dumping dollars for alternative currencies, even as reduced demand exacerbates the dollar's decline. Until the U.S. sends convincing signals that it believes in a strong dollar—rhetorical assertions ring hollow—the world has little reason to hold dollar-denominated securities.

Sadly, due to the fiscal quagmire, the Federal Reserve may be forced to raise interest rates to draw foreign capital even if it hurts the domestic economy. That's the price of having already succumbed to symbiotic fiscal and monetary policy. If Washington could genuinely commit to private-sector growth by reducing taxes, while significantly cutting future spending, it might be able to turn things around. Under President Reagan, the Fed slashed inflation and strengthened the dollar by dramatically tightening credit. It was a painful process, but the economy ultimately boomed.

Whether the U.S. can once more summon the resolve to address its problems is an open question. But the world's growing dollar disdain conveys a message: Issuing more promissory notes is not the way to renew America's promise.

*Ms. Shelton, an economist, is author of "Money Meltdown: Restoring Order to the Global Currency System" (Free Press, 1994).*

# CORPORATE NEWS

## GM expects strong growth in China in 2009

*Sales should rise 47% from a year ago, company says, but end of government incentives could pose problem*

By Patricia Jiayi Ho

BEIJING— **General Motors** Co.'s sales in China this year will likely exceed 1.6 million vehicles, said Kevin Wale, president and managing director of GM China Group.

The forecast represents an increase of about 47% from last year, when GM's total vehicle sales in China rose 6.1% to 1.09 million. GM in September forecast its China sales growth would exceed 40% this year.

GM sold 1.29 million vehicles in China in the January-September period this year, up 56% from the same period last year. GM counts sales of Wuling commercial vans, produced by a joint venture in which GM owns a third, as part of its overall sales.

By comparison, **Toyota Motor** Corp.'s sales in China have suffered this year after a failure to anticipate the demand for smaller cars. The Japanese auto maker's China sales from January through August rose 9% from a year earlier to 415,000 vehicles. Toyota has said it seeks to raise its 2009 sales in China slightly from 2008 levels, when its sales rose 17% to 585,000.

Car makers in China have benefited from Beijing's policies to boost sales, including tax incentives for purchases of vehicles with engines of 1.6 liters or smaller, and subsidies to encourage sales of some autos in rural areas. Both policies are set to expire at the end of the year.

GM's sales performance in China could prove especially vulnerable to changes in government policy, as all of the vehicles sold by its Wuling joint venture with **SAIC Motor** Corp. and Wuling Automobile Co. qualify for the small-engine tax cut. Sales by the venture accounted for more than 60% of GM's volume in China in the January-September period.

Mr. Wale said he is confident the Chinese government will take appropriate actions next year to maintain stability in the country's auto market, which is on track to overtake the U.S. as the world's largest car market this year.

Mr. Wale also said demand from smaller cities "should ensure some growth momentum."

GM aims to increase its Chinese sales volume next year at a slightly faster rate than that of the overall auto industry, he said.

Tuesday, GM Chief Executive Frederick "Fritz" Henderson, on his first trip to China since GM emerged from bankruptcy in July, said China plays an increasingly important role in GM's global operations.

Associated Press

◄ General Motors CEO Fritz Henderson at a Chinese dealership in Shanghai

**Speeding up**
GM automobile sales in China
2.0 million
1.5
1.0
0.5
0
Forecast
2003 '04 '05 '06 '07 '08 '09
Source: the company

GM executives have repeatedly extolled China's significance but haven't quantified how much revenue comes from the country.

The China Association of Automobile Manufacturers said Tuesday that vehicle sales from January through September rose 34% from a year earlier to 9.66 million. The association expects overall auto sales for the whole year to exceed 12 million.

Mr. Henderson said Tuesday that GM plans to launch a new Chevrolet Sail by the Lunar New Year in mid-February, designed and developed primarily by the Pan-Asia Technical Automotive Center Co., or Patac, an automotive design and development joint venture between GM and SAIC Motor in Shanghai.

Mr. Henderson said the compact Sail "has been developed for customers in China and has great potential for other customers in emerging markets."

GM said in August that its Wuling joint venture will expand exports of two micro-minivans designed and produced in China, apparently part of a wider strategy to use China as an export hub.

Other auto makers have come up with small no-frills cars targeted at emerging markets. GM's Sail follow such cars as **Ford Motor** Co.'s recently unveiled Figo, to be made in India and exported to South Africa and other countries, as well as **Renault** SA's low-cost Dacia models.

Separately, GM's Thai subsidiary said it has reached an agreement with striking assembly workers that will allow production to resume Thursday, the Associated Press reported.

Its factory in the eastern Thailand seaboard province of Rayong, which makes one-ton pickup trucks and passenger cars, had halted production Oct. 5 when several hundred of its 1,700 workers began striking for higher pay and better conditions.

## Intel quarterly results bolster hopes for PC rebound

By Don Clark

**Intel** Corp. served up evidence that the computer market is healthier than many people suspected, reporting third-quarter results that were well above upbeat projections it issued several weeks ago.

The chip giant predicted business conditions will improve even more in the current quarter, including a jump in its closely watched gross profit margin to the highest level since late 2005.

It predicted revenue of about $10.1 billion, up about 7% from the third period.

Intel, maker of the chips that act as electronic brains in personal computers, is seen as an early proxy for changes in PC demand because manufacturers typically stock up on chips to prepare for sales to their customers.

Intel executives said they saw signs of strong purchasing of laptop PCs, led by back-to-school purchases in the U.S. and demand from consumers in China.

The company's third-quarter profit and revenue remained about 8% lower than the same quarter in 2008, before the recession took hold.

But revenue was up 17% from the second quarter, and profit—excluding a $1.45 billion antitrust fine levied by the European Union—was up 77% over the same period.

Associated Press

**Ups and downs**
Intel's gross profit margin, by quarter
50%
40
30
20
10
0
3Q 2008 4Q 1Q '09 2Q 3Q
Source: the company

"It's a nice indication of what we can achieve when the market is cooperating and we are executing well," said Stacy Smith, Intel's chief financial officer, in an interview.

Intel reported income for the period ended Sept. 26 of $1.86 billion, or 33 cents a share, compared to profit in the year-earlier period of $2.01 billion, or 35 cents a share.

Revenue declined to $9.39 billion from $10.22 billion.

Intel in late August predicted that its third-quarter revenue would be about 6% higher than it estimated the prior month, citing improving chip demand. The numbers reported Wednesday were 4% higher than the revised projection, and also higher than analysts' average estimates.

The improvement in profitability was more striking. Intel had projected in August that its third-quarter gross profit margin would be in the upper half of its prior prediction of 53% "plus or minus two percentage points."

Instead, the company said its profit margin hit 57.6%, and projected it would likely rise to 62% in the current quarter. It predicted revenue would rise about 7% from the third period.

"People have been underestimating demand for a long time," said Unni Narayanan, chief executive of Primary Global Research. Among other things, he said, PC makers are placing orders on the expectation that **Microsoft** Corp.'s Windows 7 operating system—to be formally released Oct. 22—will get customers buying.

Paul Otellini, Intel's chief executive officer, told analysts that the company was seeing unit sales of chips for conventional notebook PCs growing at a faster rate than sales of its Atom chip for popular low-end portable computers called netbooks.

Fears that demand for netbooks would cannibalize sales from Intel's more profitable chip lines have dogged the company since last year.

Mr. Otellini also reported strong demand for chips used in server systems, based on a new technology line called Nehalem, despite the sour economy.

In Nasdaq trading midday Wednesday, the shares were up 2.6%, or 54 cents, at $21.03.

"The market had set high expectations for Intel this quarter, and Intel delivered," said Bill Kreher, an analyst at Edward Jones.

## ASML posts first quarterly profit in year as chip demand rises

By Archibald Preuschat

Semiconductor-equipment maker **ASML Holding** NV Wednesday reported a profit in the third quarter after three consecutive quarters of losses, as demand from the chip industry improved after months of underinvestment.

ASML, based in the Netherlands, posted a net profit of €19.7 million ($29.2 million) in the quarter ended Sept. 30, down 73% from a net profit of €73.3 million a year earlier. The company posted a net loss of €104 million in the second quarter.

Sales slipped 20% to €555.3 million from €696.5 million.

ASML Chief Financial Officer Peter Wennink said in an interview posted on the company's Web site that the first half of 2010 looks good, but he added that ASML needs a recovery in the world economy for the second half.

Mr. Wennink said ASML had experienced nine months of underinvestment. There is now higher-than-expected end-demand for chips used in personal computers and wireless phones, Mr. Wennink said, but he cautioned that customers buy new technology to drive down their costs—not to scale up capacity.

The company's order intake in the third quarter was €777 million, and its backlog stood at €1.35 billion as of Sept. 30.

The company expects order intake in the fourth quarter be "at least" level with the third quarter, with net sales of about €550 million and a gross margin of about 37%.

The results beat analyst expectations for net profit of €13.5 million on sales of €526 million, according to a Dow Jones Newswires poll of five analysts.

ASML is the world's largest maker of lithography systems, which map out tiny electronic circuits on silicon wafers. It counts Intel Corp., Samsung Electronics Co. and Taiwan Semiconductor Manufacturing Co. among its customers.

Late Tuesday, Intel—the world's largest semiconductor maker—reported a 7.8% decline in profit but said revenue and gross margin exceeded the company's guidance.

# LEGAL NOTICES

## BANKRUPTCIES

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY** | : | **09-50026 (REG)** |
| **f/k/a GENERAL MOTORS CORPORATION, *et al.*,** | : | |
| **Debtors.** | : | **(Jointly Administered)** |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(b) Your claim has been paid in full;

(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;

(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);

(g) You are a Debtor in these cases having a claim against another Debtor;

(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;

(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or

(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

If by first-class mail, to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
P.O. Box 9386
Dublin,Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

***Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.***

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**

DATED: September 16, 2009
New York, New York

BY ORDER OF THE COURT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

Be
in the
Legal Loop

Legal Notices
in
The Wall Street Journal.

To advertise, call
(852) 2831-2553
or (65) 6415-4279.

THE WALL STREET JOURNAL.
ASIA

# LEGAL NOTICES

GLOBAL, NATIONAL, REGIONAL
TO ADVERTISE CALL 1.800.366.3975
FAX: 214.640.7900
ADVERTISING.WSJ.COM

## BANKRUPTCIES

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**In re : Chapter 11 Case No.**
**MOTORS LIQUIDATION COMPANY : 09-50026 (REG)**
**f/k/a GENERAL MOTORS CORPORATION, *et al.*, :**
**Debtors. : (Jointly Administered)**

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;
(b) Your claim has been paid in full;
(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided, however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;
(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "...there shall be allowed administrative expenses...including...(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;
(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;
(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);
(g) You are a Debtor in these cases having a claim against another Debtor;
(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;
(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or
(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

If by first-class mail, to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
P.O. Box 9386
Dublin,Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

***Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.***

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company, P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**

DATED: September 16, 2009
New York, New York
BY ORDER OF THE COURT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

## BANKRUPTCIES

Delphi Legal Information Hotline: Toll Free: (800) 718-5305 International: (248) 813-2698
Delphi Legal Information Website: http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re ) Chapter 11
DELPHI CORPORATION, et al., ) Case No. 05-44481 (RDD)
Debtors. ) (Jointly Administered)

NOTICE OF (A) ORDER APPROVING MODIFICATIONS TO FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION AND (B) OCCURRENCE OF EFFECTIVE DATE

1. **Confirmation Of The Plan.** On January 25, 2008 (the "Confirmation Date"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order confirming the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, dated January 25, 2008 (the "Confirmed Plan"), in the Chapter 11 Cases of Delphi Corporation and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").

2. **Approval Of Modifications To The Confirmed Plan.** On July 30, 2009 (the "Modification Approval Date"), the Bankruptcy Court entered an order (the "Modification Approval Order") approving certain modifications to the Confirmed Plan embodied in the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan"), attached as Exhibit A to the Modification Approval Order. Unless otherwise defined in this Notice Of (A) Order Approving Modifications To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession And (B) Occurrence Of Effective Date, capitalized terms and phrases used herein have the meaning(s) given to them in the Modified Plan and the Modification Approval Order.

3. **Effective Date.** On October 6, 2009, the Effective Date of the Modified Plan occurred. The Modified Plan was substantially consummated at a closing that occurred at the offices of Skadden, Arps, Slate, Meagher & Flom LLP in New York City, New York; provided however, that all of the transactions contemplated by the Master Disposition Agreement and related agreements to occur at the closing are effective for tax and accounting purposes as of 11:58 p.m., local time, on the Closing Date as defined in the Master Disposition Agreement.

4. **Discharge Of Claims And Termination Of Interests.** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Modified Plan, Confirmation Order, or Modification Approval Order, the distributions and rights that are provided in the Modified Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Modified Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted the Modified Plan. Due to the occurrence of the Effective Date, the Modification Approval Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors.

5. **Injunctions.**
(a) Subject to Article 11.13 of the Modified Plan, the satisfaction, release, and discharge pursuant to Article XI of the Modified Plan shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under the Modified Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.
(b) By accepting distributions pursuant to the Modified Plan, each Holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth in Article XI of the Modified Plan.

6. **Release By Debtors Of Certain Parties.** Pursuant to section 1123(b)(3) of the Bankruptcy Code, but subject to Article 11.13 of the Modified Plan, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Modified Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Cases. The Reorganized Debtors, including Reorganized DPH Holdings, and any newly-formed entities that will be continuing the Debtors' businesses after the Effective Date, shall be bound, to the same extent the Debtors are bound, by the releases and discharges set forth above. Notwithstanding the foregoing, nothing in the Modified Plan shall be deemed to release (i) any of the Debtors or GM from their obligations under the Delphi-GM Definitive Documents or the transactions contemplated thereby, except to the extent set forth in the Master Disposition Agreement, (ii) any of the Debtors, the Unions, or GM from their obligations under the Union Settlement Agreements or the transactions contemplated thereby, (iii) any of the Buyers from their obligations under the Master Disposition Agreement, or (iii) any of the Debtors or the Plan Investors or their affiliates from their obligations under the Investment Agreement or the transactions contemplated thereby.

7. **Release By Holders Of Claims And Interests.** On the Effective Date, (a) each Person who votes to accept the Modified Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor) which has held, holds, or may hold a Claim against or Interest in the Debtors, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Modified Plan and Cash, General Unsecured MDA Distribution, and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Modified Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any claim or Cause of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transaction or event giving rise to, the claim of such Release Obligor, the business or contractual arrangements between any Debtor and Release Obligor or any Released Party, the restructuring of the claim prior to the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, obligation, restructuring, or the Chapter 11 Cases, including, but not limited to, any claim relating to, or arising out of the Debtors' Chapter 11 Cases, the negotiation and filing of the Modified Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Modified Plan, the Disclosure Statement, the Plan Exhibits, the Delphi-PBGC Settlement Agreement, the Credit Bid, the Master Disposition Agreement, the Union Settlement Agreements, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with either the Modified Plan or any other agreement with the Unions, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 Cases; provided, however, that (A) Article 11.5 of the Modified Plan is subject to and limited by Article 11.13 of the Modified Plan and (B) 11.5 of the Modified Plan shall not release any Released Party from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city, or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security. Notwithstanding the foregoing, all releases given by GM to (i) the Debtors and the Debtors' Affiliates shall be as set forth in the Delphi-GM Global Settlement Agreement and (ii) the Unions shall be as set forth in the Union Settlement Agreements.

8. **Assumption And Assignment Of Executory Contracts And Unexpired Leases.** Subject to the terms of the Modified Plan, Modification Approval Order, and any related Bankruptcy Court orders, upon the occurrence of the Effective Date, each executory contract or unexpired lease assumed, or assumed and assigned, as applicable, pursuant to Article VIII of the Modified Plan, shall vest in and be fully enforceable by the applicable Reorganized Debtor or its assignee in accordance with its terms. On the Effective Date, all executory contracts and unexpired leases as to which any Debtor is a party are deemed automatically assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such executory contracts or unexpired leases (a) have been previously rejected by the Debtors by Final Order of the Bankruptcy Court, (b) are the subject of a motion to reject, or that otherwise authorizes rejection, filed on or before the Modification Approval Date, (c) have been rejected or assumed pursuant to a motion to sell or transfer property or assets filed by the Debtors prior to the Effective Date, (d) have expired or terminated on or prior to the Effective Date (and were not otherwise extended) pursuant to their own terms, (e) are listed on the schedule of rejected contracts on Exhibit 8.1(a) to the Modified Plan, or (f) are otherwise rejected pursuant to the terms of the Modified Plan and/or upon the direction of either Buyer pursuant to the Master Disposition Agreement. Subject to the foregoing sentences, entry of the Modification Approval Order by the Bankruptcy Court approved the rejections, assumptions, and assumptions and assignments contemplated by the Modified Plan, the Modification Approval Order, the Master Disposition Agreement, and related documents pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

9. **Bar Dates**
(a) **Administrative Bar Date.** Requests for payment of an Administrative Claim (other than as set forth in Article X of the Modified Plan), must be filed with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than November 5, 2009 or shall be disallowed automatically without the need for any objection from the Debtors or Reorganized Debtors. Unless the Debtors or the Reorganized Debtors object to an Administrative Claim on or prior to May 4, 2010 (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.
(b) **Professional Claims And Final Fee Applications.** All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Statutory Committees must be filed no later than December 31, 2009. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Claims and expenses shall be determined by the Bankruptcy Court. Pursuant to the Bankruptcy Court's prior orders, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered terminated on the Confirmation Date, and the Reorganized Debtors have employed and paid Professionals in the ordinary course of business thereafter.
(c) **Substantial Contribution Bar Date.** Except as otherwise provided in the Modification Approval Order, any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code shall file an application with the clerk of the Bankruptcy Court on or before November 20, 2009, and serve such application on counsel for the Debtors, the Creditors' Committee, the United States Trustee for the Southern District of New York, and such other parties as may be decided by the Bankruptcy Court and the Bankruptcy Code on or before November 20, 2009, or be forever barred from seeking such compensation or expense reimbursement.

Dated: New York, New York, October 6, 2009

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr. , John K. Lyons, Ron E. Meisler, 155 North Wacker Drive, Chicago, Illinois 60606, (312) 407-0700

By: /s/ Kayalyn A. Marafioti
Kayalyn A. Marafioti, Four Times Square, New York, New York 10036, (212) 735-3000

Attorneys for Delphi Corporation, et al., Debtors and Debtors-in-Possession

## BANKRUPTCIES

**NOTICE OF VOTING RIGHTS AND HEARING TO CONSIDER WHETHER TO CONFIRM THE PLAN OF REORGANIZATION OF PITTSBURGH CORNING CORPORATION**

**PITTSBURGH CORNING CORPORATION ("PCC")** has proposed a Modified Third Amended Plan of Reorganization (the "Plan"). Those with claims against PCC; those with asbestos personal injury claims (as defined in the Plan) against PCC or its parent corporations, **PPG INDUSTRIES, INC. ("PPG")** or **CORNING INCORPORATED ("Corning")** can vote to accept or reject the Plan by **November 16, 2009**. The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") will consider whether to confirm the Plan at a hearing starting **January 11, 2010**.

A Solicitation Package containing detailed information and ballots for voting on the Plan has been sent to all known claimants or their lawyers, and is available as described below.

**KEY ELEMENTS OF THE PLAN**

The Plan proposes to create a trust to pay asbestos personal injury claims arising from exposure to a former PCC product called Unibestos. An injunction under section 524(g) of the Bankruptcy Code will result in the permanent channeling of asbestos personal injury claims against PCC or any Asbestos Protected Party (as defined in the Plan). This injunction will prohibit people with asbestos personal injury claims from suing the parties protected by the injunction. If you think you may have such an asbestos personal injury claim, you should read the Disclosure Statement and Plan carefully for details about how your rights may be affected.

**VOTING ON THE PLAN**

There is information in the Solicitation Package that describes exactly who can vote and how to vote. You do not have to vote, but you are encouraged to do so if you are eligible. To be counted, a ballot **must be received by the Voting Agent by 5:00 p.m. (Eastern Time) on November 16, 2009.**

**THE HEARING ON THE PLAN**

A hearing to consider confirmation of the Plan will begin before Judge Judith K. Fitzgerald at the **U.S. Bankruptcy Court, Western District of Pennsylvania, in Courtroom A, U.S. Steel Tower, 54th Floor, 600 Grant Street, Pittsburgh PA on January 11, 2010 at 9:30 a.m. (Eastern Time)**. You may attend the hearing but you are not required to do so. Objections, if any, must be **submitted in writing and filed with the Court by November 11, 2009**, as described in the Solicitation Package.

**ADDITIONAL INFORMATION**

If you believe that you have a claim against PCC, and you or your lawyer did not receive a Solicitation Package, you may obtain a Solicitation Package by calling the Voting Agent at (973) 509-3190, visiting www.asbestos-pcc.com or www.loganandco.com, or writing to Logan & Company at 546 Valley Road, Upper Montclair, NJ 07043.

## CLASS ACTIONS

**NOTICE OF PUBLIC AUCTION**

Please take notice that Morgan Stanley & Co. Incorporated ("Morgan Stanley") will be conducting a public auction on October 30, 2009, at 3:00 p.m. (EDT) at 1585 Broadway, Conference Room 6C, New York, NY 10036 of Limited Partnership Interests in (1) the Stillwater Market Neutral Fund II, L.P. formed under the Second Amended and Restated Partnership Agreement dated September 1, 2004 and (2) the Stillwater Asset Backed Fund II, L.P. formed under the Limited Partnership Agreement dated June 3, 2004 (together, the "Auction Assets").

Bidders must register by 5:00 p.m. on October 29, 2009, by sending their name, firm or institution name, address, phone number and e-mail address to Morgan Stanley Auctions by fax: 212-507-0717 and/or e-mail: scpauctions@morganstanley.com.

Initial bids must be submitted by October 30, 2009, at 1:00 p.m. to Morgan Stanley & Co. Incorporated, Attention: Morgan Stanley Auctions; fax: 212-507-0717; e-mail: scpauctions@morganstanley.com.

Each qualified bidder must be a financial institution or other entity that has the financial wherewithal to purchase the Auction Assets at the purchase price for the Auction Assets in immediately available U.S. funds no later than the sixth business day following the public sale.

A purchaser of the Auction Assets must be a Qualified Purchaser as defined in the Investment Company Act of 1940, as amended, an "eligible contract participant" under the Commodity Exchange Act, as amended, and an Accredited Investor as defined in the Securities Act of 1933, as amended, and will be required to provide satisfactory representations to that effect.

The Auction Assets are being sold "AS IS, WHERE IS" with no representations or warranties.

Any purchaser must (i) in all events be acceptable to Morgan Stanley in its reasonable discretion and (ii) complete and return to the General Partner of each of the Stillwater Market Neutral Fund II, L.P. and the Stillwater Asset Backed Fund II, L.P., subscription documents for such fund.

Morgan Stanley reserves the right to bid for and purchase the Auction Assets or any portion thereof. Morgan Stanley further reserves the right prior to the public auction to sell all or any portion of the Auction Assets in a private sale, or to adjourn the auction or withdraw any portion of the Auction Assets from the public sale, without further publication.

For additional information please send a fax to: Morgan Stanley Auctions at 212-507-0717. The fax must include the name of the interested institution and the name, address, phone number and e-mail address of the person at such institution that Morgan Stanley may contact in order to provide further information regarding the Auction Assets and the auction.

Get Noticed.

Legal Notices. Advertise Today.
Call 1-800-845-9720

# Anxiety in Canada Over Near Parity With U.S. Dollar

By IAN AUSTEN

OTTAWA — For Canadians looking to escape winter's premature arrival in many parts of the country by visiting the United States, the equally unexpected movement of the Canadian dollar toward parity with its American counterpart is welcome news. For corporate Canada, however, the development is less inspiring.

At Cascades, a producer of cardboard used to make boxes and tissue paper, every cent the Canadian dollar gains shaves 4 million Canadian dollars from its operating earnings.

With 40 percent of the Canadian economy dependent on trade, mostly with the United States, the prospect of the two currencies being at par for the second time since 2007 probably creates more anxiety than joy in Canada. And while currencies around the world have been rising against the United States dollar, many are laggards compared with Canada's. Since mid-March the Canadian dollar has risen 27 percent, closing on Wednesday at 97.30 cents, up from 76.53 cents.

"The Canadian dollar is a strong threat to the economy," said David Watt, a vice president and senior currency strategist at the Royal Bank of Canada. "Once the Canadian dollar starts getting to levels like parity, the recovery scenario goes from assured to dicey."

Most economists and businesses had forecast that the Canadian dollar would appreciate this year and had set their budgets and, in the case of large corporations, their currency hedging strategies appropriately. But few if any of them anticipated that the rise would be as rapid and that the result would most likely be parity.

Mr. Watt was among the surprised. He cites the usual reasons for the Canadian dollar's rise: increased prices for oil and other Canadian commodities as well as the worldwide disfavor that has fallen upon the United States dollar. But the speed and rate of the change, he said, came from unexpectedly high demand from China for Canadian commodities.

Thomas J. Velk, an economics professor at McGill University in Montreal, said he believes that the Canadian currency's movement also reflects the perceptions by the currency markets of the economic prospects of the United States.

*The Canadian dollar has risen 27% since the middle of March.*

"It's a very loud and clear statement about the failure of Obama's policies," he said. That dissatisfaction is causing some capital movement from the United States to Canada, in Professor Velk's analysis. And that trend, he added, is amplified by recent investments in Canadian mining and energy companies by their Chinese customers.

In 2007, exports were strong when Canadian companies were confronted by a high dollar. That, however, is no longer the case partly because Canada's manufacturing sector is particularly dependent on the American automotive industry.

Since July 2008, Canadian exports have fallen 21.3 percent by volume, and export prices are down 16.3 percent, according to Statistics Canada, a government agency.

Economists looking for good news two years ago said that the strong dollar would make it easier for Canadian companies to increase their productivity, which lags behind that of the United States, by reducing the cost of new machinery and systems. About 80 percent of machinery and computer systems used in Canada are imported, Craig Alexander, an economist with the Toronto-Dominion Bank estimates, and most of that is priced in United States dollars regardless of its country of origin.

That investment generally did not happen, however. Capital investment by Canadian companies rose 4.38 percent in 2007, compared with 10 percent the year earlier. The increase was just 0.5 percent last year as companies struggled with the recession, Mr. Alexander said.

Not every company, however, avoided adjustments. Didier Filion, the director of investor relations for Cascades, which is based in Kingsey Falls, Quebec, said that the previous move of the dollar to parity prompted the company to permanently close underperforming mills and expand automation in those that remained.

Cascades also shifted production of some products it mainly sold in the United States to mills in that country. Still the United States accounts for about 45 percent of the sales of Cascades but only 33 percent of its production.

"The first time in 2007 was a practice round," Mr. Filion said. "This time we're ready to face it."

In speeches over the last several months, Mark J. Carney, the governor of the Bank of Canada, has warned currency markets that he will take action if the Canadian dollar, as he put it in a recent interview with the Canadian Broadcasting Corporation "appears to move away from fundamentals."

If and when that time comes, Mr. Carney said he may resort to "quantitative easing, the printing of money" given that he has effectively exhausted interest rate cuts.

Mr. Carney has avoided defining what exchange rate might prompt action.

But several business groups in Canada argue that the time has come.

"The recent movements up and down look more like a penny stock than a currency," said Avrim Lazar, the president and chief executive of the Forest Products Association of Canada. "The time for talking the dollar down has passed. This is the sort of thing that will just suck the life out of the recovery."

TAKE THEM FOR
A WALK TEST.

J&M WALK TEST
To see how comfortable our shoes are, take our 10-day Walk Test. Try any of our select styles for 10 days during the month of October. If for any reason you're not completely satisfied, return the shoes with the receipt to the original store they were purchased from, and we'll give you a full refund. After all, we want you to be comfortable.
JOHNSTON & MURPHY.
johnstonmurphy.com/walktest
800.213.5259
STRICKLIN MOC $140
SHULER SIDE GORE $125
©2009 A GENESCO COMPANY. JOHNSTON & MURPHY® AND J&M® ARE REGISTERED TRADEMARKS OF GENESCO INC.

# Obama Seeks $250 Check For Retirees And Veterans

By JACKIE CALMES

WASHINGTON — President Obama urged Congress on Wednesday to authorize a second $250 stimulus check to be sent early next year to an estimated 57 million Social Security recipients, veterans and people with disabilities.

In effect, the payment would be in lieu of a cost-of-living increase for Social Security beneficiaries next year. The White House request, and receptive statements from Congressional Democratic leaders, anticipated an announcement on Thursday from the Social Security Administration that there would be no cost-of-living adjustment for 2010 because the inflation rate has been negative as the recession has driven down prices.

By contrast, a year ago the cost of living adjustment was 5.8 percent, reflecting strong inflation and high energy prices.

White House officials put the cost of the checks at $13 billion.

*Money in lieu of a cost-of-living increase in Social Security.*

The first $250 checks went out in May as part of the $787 billion two-year stimulus package. As with that package, the officials said Mr. Obama would not ask Congress to offset the cost with other savings because the checks were intended to stimulate the economy, and budget cuts or tax increases would defeat that.

The money would go to all Social Security beneficiaries, regardless of their income, as well as disabled veterans, those eligible for railroad retirement payments and people who receive federal and state government pensions instead of Social Security.

Mark Zandi, chief economist of Moody's Economy.com, said the checks would not add a lot to economic growth early next year. But, he added, "This is symbolic of policy makers' willingness to provide more temporary help to the economy, which I believe is appropriate."

Support for the additional payments is certain to be bipartisan, given the political influence of older Americans, but Republicans will almost certainly seize the opportunity to draw attention to persistent economic woes.

"This regrettably shows that families and seniors continue to struggle in this severe economic downturn, and that the 'stimulus' has failed to live up to its billing," said Antonia Ferrier, a spokeswoman for John A. Boehner, Republican of Ohio and the House minority leader.

No day is complete without The New York Times.

Delphi Legal Information Hotline: Toll Free: (800) 718-5305 International: (248) 813-2698
Delphi Legal Information Website: http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re DELPHI CORPORATION, et al., Debtors. | Chapter 11 Case No. 05-44481 (RDD) (Jointly Administered) |

NOTICE OF (A) ORDER APPROVING MODIFICATIONS TO FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION AND (B) OCCURRENCE OF EFFECTIVE DATE

1. **Confirmation Of The Plan.** On January 25, 2008 (the "Confirmation Date"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order confirming the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, dated January 25, 2008 (the "Confirmed Plan"), in the Chapter 11 Cases of Delphi Corporation and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").

2. **Approval Of Modifications To The Confirmed Plan.** On July 30, 2009 (the "Modification Approval Date"), the Bankruptcy Court entered an order (the "Modification Approval Order") approving certain modifications to the Confirmed Plan embodied in the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan"), attached as Exhibit A to the Modification Approval Order. Unless otherwise defined in this Notice Of (A) Order Approving Modifications To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession And (B) Occurrence Of Effective Date, capitalized terms and phrases used herein have the meaning(s) given to them in the Modified Plan and the Modification Approval Order.

3. **Effective Date.** On October 6, 2009, the Effective Date of the Modified Plan occurred. The Modified Plan was substantially consummated at a closing that occurred at the offices of Skadden, Arps, Slate, Meagher & Flom LLP in New York City, New York; provided however, that all of the transactions contemplated by the Master Disposition Agreement and related agreements to occur at the closing are effective for tax and accounting purposes as of 11:58 p.m., local time, on the Closing Date as defined in the Master Disposition Agreement.

4. **Discharge Of Claims And Termination Of Interests.** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Modified Plan, Confirmation Order, or Modification Approval Order, the distributions and rights that are provided in the Modified Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Modified Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted the Modified Plan. Due to the occurrence of the Effective Date, the Modification Approval Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors.

5. **Injunctions.**

(a) Subject to Article 11.13 of the Modified Plan, the satisfaction, release, and discharge pursuant to Article XI of the Modified Plan shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under the Modified Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

(b) By accepting distributions pursuant to the Modified Plan, each Holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth in Article XI of the Modified Plan.

6. **Release By Debtors Of Certain Parties.** Pursuant to section 1123(b)(3) of the Bankruptcy Code, but subject to Article 11.13 of the Modified Plan, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all Claims or Causes of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transaction or event giving rise to, the Claim of any Debtor, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Cases. The Reorganized Debtors, including Reorganized DPH Holdings, and any newly-formed entities that will be continuing the Debtors' businesses after the Effective Date, shall be bound, to the same extent the Debtors are bound, by the releases and discharges set forth above. Notwithstanding the foregoing, nothing in the Modified Plan shall be deemed to release (i) any of the Debtors or GM from their obligations under the Delphi-GM Definitive Documents or the transactions contemplated thereby, except to the extent set forth in the Master Disposition Agreement, (ii) any of the Debtors, the Unions, or GM from their obligations under the Union Settlement Agreements or the transactions contemplated thereby, (iii) any of the Buyers from their obligations under the Master Disposition Agreement, or (iv) any of the Debtors or the Reorganized Debtors or their affiliates from their obligations under the Investment Agreement or the transactions contemplated thereby.

7. **Release By Holders Of Claims And Interests.** On the Effective Date, (a) each Person who votes to accept the Modified Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor) which has held, holds, or may hold a Claim against or Interest in the Debtors, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Modified Plan and Cash, General Unsecured MDA Distribution, and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Modified Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any claim or Cause of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transaction or event giving rise to, the claim of such Release Obligor, the business or contractual arrangements between any Debtor and Release Obligor or any Released Party, the restructuring of the claim prior to the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, obligation, restructuring, or the Chapter 11 Cases, including, but not limited to, any claim relating to, or arising out of the Debtors' Chapter 11 Cases, the negotiation and filing of the Modified Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Modified Plan, the Disclosure Statement, the Plan Exhibits, the Delphi-PBGC Settlement Agreement, the Credit Bid, the Master Disposition Agreement, the Union Settlement Agreements, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with either the Modified Plan or any other agreement with the Unions, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 Cases; provided, however, that (A) Article 11.5 of the Modified Plan is subject to and limited by Article 11.13 of the Modified Plan and (B) 11.5 of the Modified Plan shall not release any Released Party from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city, or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security. Notwithstanding the foregoing, all releases given by GM to (i) the Debtors and the Debtors' Affiliates shall be as set forth in the Delphi-GM Global Settlement Agreement and (ii) the Unions shall be as set forth in the Union Settlement Agreements.

8. **Assumption And Assignment Of Executory Contracts And Unexpired Leases.** Subject to the terms of the Modified Plan, Modification Approval Order, and any related Bankruptcy Court orders, upon the occurrence of the Effective Date, each executory contract or unexpired lease assumed, or assumed and assigned, as applicable, pursuant to Article VIII of the Modified Plan, shall vest in and be fully enforceable by the applicable Reorganized Debtor or its assignee in accordance with its terms. On the Effective Date, all executory contracts and unexpired leases as to which any Debtor is a party are deemed automatically assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such executory contracts or unexpired leases (a) have been previously rejected by the Debtors by Final Order of the Bankruptcy Court, (b) are the subject of a motion to reject, or that otherwise authorizes rejection, filed on or before the Modification Approval Date, (c) have been rejected or assumed pursuant to a motion to sell or transfer property or assets filed by the Debtors prior to the Effective Date, (d) have expired or terminated on or prior to the Effective Date (and were not otherwise extended) pursuant to their own terms, (e) are listed on the schedule of rejected contracts on Exhibit 8.1(a) to the Modified Plan, or (f) are otherwise rejected pursuant to the terms of the Modified Plan and/or upon the direction of either Buyer pursuant to the Master Disposition Agreement. Subject to the foregoing sentences, entry of the Modification Approval Order by the Bankruptcy Court approved the rejections, assumptions, and assumptions and assignments contemplated by the Modified Plan, the Modification Approval Order, the Master Disposition Agreement, and related documents pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

9. **Bar Dates**

(a) **Administrative Bar Date.** Requests for payment of an Administrative Claim (other than as set forth in Article X of the Modified Plan), must be filed with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than November 5, 2009 or shall be disallowed automatically without the need for any objection from the Debtors or Reorganized Debtors. Unless the Debtors or the Reorganized Debtors object to an Administrative Claim on or prior to May 4, 2010 (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

(b) **Professional Claims And Final Fee Applications.** All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Statutory Committees must be filed no later than December 31, 2009. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Claims and expenses shall be determined by the Bankruptcy Court. Pursuant to the Bankruptcy Court's prior orders, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered terminated on the Confirmation Date, and the Reorganized Debtors have employed and paid Professionals in the ordinary course of business thereafter.

(c) **Substantial Contribution Bar Date.** Except as otherwise provided in the Modified Plan or Modification Approval Order, any Person who requests compensation or expense reimbursement for making a substantial contribution to the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code shall file an application with the clerk of the Bankruptcy Court on or before November 20, 2009, and serve such application on counsel for the Debtors, the Creditors' Committee, the United States Trustee for the Southern District of New York, and such other parties as may be decided by the Bankruptcy Court and the Bankruptcy Code on or before November 20, 2009, or be forever barred from seeking such compensation or expense reimbursement.

Dated: New York, New York, October 6, 2009

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

| | |
|---|---|
| By: /s/ John Wm. Butler, Jr. | By: /s/ Kayalyn A. Marafioti |
| John Wm. Butler, Jr., John K. Lyons, Ron E. Meisler, 155 North Wacker Drive, Chicago, Illinois 60606, (312) 407-0700 | Kayalyn A. Marafioti, Four Times Square, New York, New York 10036, (212) 735-3000 |

Attorneys for Delphi Corporation, et al., Debtors and Debtors-in-Possession

## NOTICE OF VOTING RIGHTS AND HEARING TO CONSIDER WHETHER TO CONFIRM THE PLAN OF REORGANIZATION OF PITTSBURGH CORNING CORPORATION

**PITTSBURGH CORNING CORPORATION ("PCC")** has proposed a Modified Third Amended Plan of Reorganization (the "Plan"). Those with claims against PCC; those with asbestos personal injury claims (as defined in the Plan) against PCC or its parent corporations, **PPG INDUSTRIES, INC. ("PPG")** or **CORNING INCORPORATED ("Corning")** can vote to accept or reject the Plan by **November 16, 2009**. The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") will consider whether to confirm the Plan at a hearing starting **January 11, 2010**.

A Solicitation Package containing detailed information and ballots for voting on the Plan has been sent to all known claimants or their lawyers, and is available as described below.

**KEY ELEMENTS OF THE PLAN**

The Plan proposes to create a trust to pay asbestos personal injury claims arising from exposure to a former PCC product called Unibestos. An injunction under section 524(g) of the Bankruptcy Code will result in the permanent channeling of asbestos personal injury claims against PCC or any Asbestos Protected Party (as defined in the Plan). This injunction will prohibit people with asbestos personal injury claims from suing the parties protected by the injunction. If you think you may have such an asbestos personal injury claim, you should read the Disclosure Statement and Plan carefully for details about how your rights may be affected.

**VOTING ON THE PLAN**

There is information in the Solicitation Package that describes exactly who can vote and how to vote. You do not have to vote, but you are encouraged to do so if you are eligible. To be counted, a ballot **must be received by the Voting Agent by 5:00 p.m. (Eastern Time) on November 16, 2009.**

**THE HEARING ON THE PLAN**

A hearing to consider confirmation of the Plan will begin before Judge Judith K. Fitzgerald at the **U.S. Bankruptcy Court, Western District of Pennsylvania, in Courtroom A, U.S. Steel Tower, 54th Floor, 600 Grant Street, Pittsburgh PA on January 11, 2010 at 9:30 a.m. (Eastern Time).** You may attend the hearing but you are not required to do so. Objections, if any, must be **submitted in writing and filed with the Court by November 11, 2009**, as described in the Solicitation Package.

**ADDITIONAL INFORMATION**

If you believe that you have a claim against PCC, and your or your lawyer did not receive a Solicitation Package, you may obtain a Solicitation Package by calling the Voting Agent at (973) 509-3190, visiting www.asbestos-pcc.com or www.loganandco.com, or writing to Logan & Company at 546 Valley Road, Upper Montclair, NJ 07043.

The New York Times Knowledge Network
nytimes.com/knowledge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re **MOTORS LIQUIDATION COMPANY f/k/a GENERAL MOTORS CORPORATION, et al.**, **Debtors.** | **Chapter 11 Case No. 09-50026 (REG)** **(Jointly Administered)** |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation; GMC Truck Division; NAO Fleet Operations; GM Corporation; GM Corporation-GM Auction Department; National Car Rental; National Car Sales; Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC; Saturn Corporation; Saturn Motor Car Corporation; GM Saturn Corporation; Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.; CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009 at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;
(b) Your claim has been paid in full;
(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;
(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;
(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;
(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);
(g) You are a Debtor in these cases having a claim against another Debtor;
(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;
(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or
(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

| If by overnight courier or hand delivery to: | If by first-class mail, to: |
|---|---|
| The Garden City Group, Inc. Attn: Motors Liquidation Company Claims Processing 5151 Blazer Parkway, Suite A Dublin, Ohio 43017 | The Garden City Group, Inc. Attn: Motors Liquidation Company Claims Processing P.O. Box 9386 Dublin, Ohio 43017-4286 |

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

***Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.***

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company, P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**

DATED: September 16, 2009
New York, New York

BY ORDER OF THE COURT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

## Cover story

# 'Generalized' farce keeps Python relevant

**Continued from 1D**

awards.' Otherwise, you're stuck with these extremely tedious things where people tell you about yourself," says Idle, who isn't necessarily keen about reminiscing. "It's like talking about sex. It's more fun to do than to talk about."

Others would think awards are fitting for a group that hasn't performed together in more than 25 years yet remains popular across cultures and generations. "I keep bumping into people with children and they all keep saying, 'Oh, my kid, he just discovered Python.' And I say, 'How old is he?' And, invariably, 11 is the number," Gilliam says.

In addition to the original show and films including *The Life of Brian*, *Monty Python and the Holy Grail*, and *And Now for Something Completely Different*, Python fans have seen comic bits reassembled in the Tony-winning *Spamalot* and a limited run of *An Evening Without Monty Python*, testament to the timeless stew of absurdity, whimsy and farce with sides of edge and erudition.

Idle, with composer John Du Prez, was behind both shows. Of the original works in *Evening*, he says: "We decided to put them out there and see if they were still funny. The answer is yes." Gilliam's fatalistic take: "If we're going to be ripped off, it might as well be one of us doing it."

Hank Azaria became a Python fan at 11; later, he starred in *Spamalot*. "I think it's fair to call their stuff timeless and classic," says the actor, noting that *Holy Grail* bits in the musical drew a great audience response. "Good writing really holds up."

**Interviews, films, sketches**

The six-hour *Almost the Truth* tracks the six from their youth — five hail from the U.K., Gilliam from Minnesota — to the four-season TV series, *Monty Python's Flying Circus*, to the films. The IFC "Python-a-thon" also will feature *Holy Grail*, *Brian* and *Monty Python Live at the Hollywood Bowl*.

The documentary contains extensive interviews with surviving members, archival footage of Chapman and comments by Jimmy Fallon, Eddie Izzard, Stephen Merchant, Lorne Michaels and others. It shows the collaboration — and the conflicts and troubles, such as Gilliam's and Jones' directorial struggles on *Holy Grail* and Chapman's alcohol problem.

DVD and Blu-ray versions, out Oct. 27, include some legendary sketches, including The Parrot Sketch, The Cheese Shop, Spanish Inquisition, The Fish Slapping Dance, The Lumberjack Song and the Ministry of Silly Walks.

What made them classics? "The dead parrot became a classic because of the brilliance of my writing, and the Silly Walk sketch became a classic because of the brilliance of my performance, in spite of Michael Palin's performances," Cleese harrumphs in an e-mail interview.

Four Pythons will continue to celebrate the Ruby Jubilee (as Idle calls it) when Gilliam, Jones and Palin join Idle for the oratorio *Not the Messiah (He's a Very Naughty Boy)*, rooted in *Brian*, on Oct. 23 at London's Royal Albert Hall. They will be missing Cleese. "Well, maybe not," Idle says. "He can be a bit grumpy on those occasions."

Any get-together is a rare event. Jones, Palin and Gilliam, now a British citizen, live in England, Idle and Cleese in California. "There's a balance in nature, clearly," Gilliam says. "One American equals two Englishmen."

Says Cleese, "I still contact my Python friends, whenever I remember their names — some are more difficult than others, but none of them is easy."

Jones is surprised at Python's durability. "I don't think any of us thought when we made the TV shows that we would still be doing interviews about the show and films 40 years later. It's a bit of luck it's happened."

**No current events, 'just antics'**

Specifically, he says, Pythonmania almost ended before it started. *Flying Circus* premiered just after BBC1 switched to color, Jones says. A black-and-white series could have quickly become dated and lost appeal to later generations, he says. More significantly, the videotapes containing the shows were scheduled to be erased and reused.

"So we smuggled the tapes out of the BBC and made VCR tapes of them," Jones says. "For six months, I thought the only record of the shows was going to be in my cellar." But after the British run ended in 1974, Python found a huge new audience on U.S. public television.

Cleese attributes Python's longevity to a combination of original work and comic stereotypes recognizable in other cultures.

Python tweaked a still-stuffy British society but avoided topical humor, which lets today's fans enjoy it without having a knowledge of, say, English politics in the 1970s. "We followed a satire boom in England, and therefore, we couldn't do satire," Idle says. "Our humor had to be generalized, so it was satire about generalized comedy figures rather than particular names" future generations might not recognize.

Says Palin: "There was a lot of pure farce, just antics. You didn't have to know anything about the Spanish Inquisition. You'd just see guys coming in at the wrong time and getting the words wrong."

Save for some precincts of cable (along with Fox's *Family Guy*), Gilliam says performers today don't have as much creative room. "Here were six guys doing what they wanted," he says. "No managers, no agents, no studio executives, no marketing people saying, 'Go for this demographic, go for that audience.' Six guys making each other laugh and having the freedom to do so, and the BBC's willingness to put it on the air."

Test your Python IQ and see a clip from *Almost the Truth* at life.usatoday.com.

As far as Pythonic signs in today's performers, Gilliam sees kinship with *Family Guy* and *South Park*. *South Park* creators Trey Parker and Matt Stone "say they're my children in animation. They continue to be far more outrageous than Python."

Conversely, Jones says there is much comic talent today but no Python descendants. "I don't really see it. I think we kind of stultified other people. They'd say, 'Oh well, they've done that.' "

Cleese doesn't, either, "but that's because I don't watch much comedy these days, as I get better laughs from Sean Hannity's show."

For all the silliness, the Oxford- and Cambridge-heavy troupe has eclectic skills and interests, too. Palin, the host of numerous travel documentaries, is president of the Royal Geographical Society. Gilliam's latest directorial effort, *The Imaginarium of Dr. Parnassus* with Heath Ledger, Johnny Depp, Jude Law and Colin Farrell, opens at Christmas.

Jones, a writer and lecturer who feels "a burning need" to restore the reputation of King Richard II, says his interest in the Middle Ages dovetailed with *Holy Grail*. "In the original screenplay, half took place in medieval times and half took place in the present day. I think they found the Holy Grail in Harrods because that's the store that has everything," Jones says. "I suggested to the others, 'Why don't we set it all in the Middle Ages?' And to my surprise, everybody agreed."

They didn't always; Cleese and Jones could agitate each other. "I think John knew he could wind me up because I tended to explode, and he liked playing games with people," Jones says. But "because we all thought a lot of what each other did, everybody had a respect for the other writers. So if they said it's not funny, well, you thought, 'Oh, it's not funny.' "

But one endeavor they could all agree on: "We all enjoyed getting into drag," Palin says. "Whatever they might say, we enjoyed slipping a dress on and wrestling in the mud."

## The original troupers: Pythonesque to this day

The founding members of the Monty Python troupe — who they are, what they like, and what they're doing today:

IFC

### Terry Jones, 67

**Favorite Python moment:** Pianist Sviatoslav Richter playing a concerto while escaping from a straitjacket, six padlocks and a sack. "In the end, it was the films I enjoyed most, and directing the movies."

**Comedy favorites:** Eddie Izzard, Ricky Gervais. "I think the genius of the cinema is Woody Allen."

**Projects and releases:** Working on a screenplay from 2001 that he once gave up on; writing an opera for the Royal Opera House. "It's quite a departure for the Royal Opera House."

IFC

### John Cleese, 69

**Best Python moments:** "The nature documentary (in the pantomime horse episode); reading Cheese Shop and causing Michael Palin to fall off his chair laughing."

**Comedy favorites:** Jerry Seinfeld, Eddie Izzard, Bill Bailey, Jay Leno, Bill Maher.

**Projects and releases:** Tuesday's release of the remastered *Fawlty Towers* DVD (favorite scene: Fire Bell sequence in the "Germans" episode); a musical version of *A Fish Called Wanda* he's writing with daughter Camilla; a movie script with Lisa Hogan.

IFC

### Michael Palin, 66

**Favorite Python sketch:** "I think The Fish-Slapping Dance is quintessential Python. It's short, silly, but it has a certain formality that makes it funny each time."

**Comedy curiosity:** "The comedy of observation like *The Office* and Steve Coogan, who does the *Alan Partridge* shows. They take a different tack from Python."

**Projects and releases:** *Halfway to Hollywood*, his diaries of the 1980s, which include *Monty Python Live at the Hollywood Bowl*, *Life of Brian* and *Meaning of Life*; writing follow-up to 1994 novel.

By Todd Plitt, USA TODAY

### Eric Idle, 66

**Favorite Python scenes:** Playing jailer (Gilliam) and jailer's assistant (Idle) in *Life of Brian*; sketches included in *An Evening Without Monty Python*: The Spanish Inquisition and The Argument.

**Comedy favorites:** The Mighty Boosh; *Flight of the Conchords*; *Nurse Jackie*.

**Projects and releases:** *Not the Messiah (He's a Very Naughty Boy)*, an oratorio to be performed with three other Pythons Oct. 23; edited the book *Monty Python Live!*; *Spamalot*, created with John Du Prez, is finishing its tour.

IFC

### Terry Gilliam, 68

**Favorite Python sketch:** The one in which Cleese drags a bag with his dead mother into a funeral home, trying to cremate, bury or possibly eat her. It's the most outrageous, offensive, horrible kind of idea, and I'm proud we got that through."

**TV favorites:** *South Park*, *Family Guy*, *Dexter*, *The Simpsons*.

**Projects and releases:** The director has *The Imaginarium of Dr. Parnassus* in December. Upcoming film project: *The Man Who Killed Don Quixote*.

By Joe Mahoney, AP

### Graham Chapman, died 1989

Thoughts on Chapman:

**Palin.** "I look at the work he did, especially the central performances in *Grail* and *Brian*, and I think there's some of the best, if not the best, sustained acting in any of the Python shows."

**Idle.** "He was the empathetic one. He brought a certain peaceful quality. Graham was the interpreter or the glue who kept people together. . . . He absolutely had his personal issues, which were difficult. When he cleared up, he was wonderful."

USA TODAY usatoday.com **MARKETPLACE TODAY**

www.rja-ads.com/usatoday | Hours of operation: Mon. - Fri., 8:30 am - 6:00 pm [EST] | To advertise call **1.800.397.0070** Toll-free in the U.S. only

**NOTICES**

**LEGAL NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| **MOTORS LIQUIDATION COMPANY** | : | **09-50026 (REG)** |
| **f/k/a GENERAL MOTORS CORPORATION, *et al.*,** | : | |
| **Debtors.** | : | **(Jointly Administered)** |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(b) Your claim has been paid in full;

(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "...there shall be allowed administrative expenses...including...(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;

(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);

(g) You are a Debtor in these cases having a claim against another Debtor;

(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;

(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or

(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

| If by overnight courier or hand delivery to: | If by first-class mail, to: |
|---|---|
| The Garden City Group, Inc.<br>Attn: Motors Liquidation Company Claims Processing<br>5151 Blazer Parkway, Suite A<br>Dublin, Ohio 43017 | The Garden City Group, Inc.<br>Attn: Motors Liquidation Company Claims Processing<br>P.O. Box 9386<br>Dublin,Ohio 43017-4286 |

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

***Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.***

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company, P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**

DATED: September 16, 2009 BY ORDER OF THE COURT
New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

## IMPORTS

TOYOTA '03 Matrix - Power equip., CD, cruise $7550 Page Toyota 248-352-8580

TOYOTA '03 MR2 Spyder only 46k mi. Call for details LaFontaine D. 866-514-5779

TOYOTA '04 CAMRY LE A/C, CD, power equip $9550 Page Toyota 248-352-8580

TOYOTA '05 CAMRY senior, 1 owner, 23K $11995 McInerneyToy586-463-9000

TOYOTA '05 Corolla - "31K" senior, new cond. $11,995 McInerneyToy586-463-9000

TOYOTA '07 Camry CE Power equipment, cruise $14,988 Suburban Hyundai 248.341.9900

TOYOTA '08 Corolla LE - 12K, auto, full pwr $14,990 **Troy Honda866.695.6647**

TOYOTA '08 PRIUS - "24K" 2 to choose Monday $19995 McInerneyToy586-463-9000

TOYOTA '08 YARIS 4 door, auto, low mi, cert CT677 only $1,290 SUBURBAN TOYOTA 888-292-9491

TOYOTA '09 Avalon XL - 29K, full pwr, sharp! $21,590 **Troy Honda866.695.6647**

TOYOTA '09 Camry LE Auto, cert, low mi $16,900 SUBURBAN TOYOTA 888-292-9491

TOYOTA '09 Corolla - 35K, LE, new style. Mon. $13,995 McInerneyToy586-463-9000

TOYOTA '09 Pirus Edge Pk, Great MPG $16,993 Massey Cadillac 800-572-2087

TOYOTA '95 Camry 1 owner clean,fully serviced $3995 TAMAROFF 800-605-3953

TOYOTA '96 Avalon XLS Only $7995 LaFontaine D. 866-514-5779

TOYOTA '96 COROLLA power, auto,73k,clean $4,500 SUBURBAN TOYOTA 888-292-9491

TOYOTA '97 CAMRY LE $6995 LaFontaine D. 866-514-5779

VOLVO '01 S40 1.9T only $5995 LaFontaine D. 866-514-5779

**VW '05 Beetle - Convt GLS Turbo** Mint Cond 53k miles, leather, black on black $13,750 Long Auto (800) 801-LONG

VW '06 PASSAT 2.0T- low miles, 5 passenger $15,988 Suburban Hyundai 248.341.9900

VW '06 PASSAT 4 dr, stick $11,991 Suburban Imports of Troy 866.353.1293

VW '07 Beetle Convert - low mile, lthr, alum whls $16,944 **Tamaroff 800-939-7145**

VW '07 JETTA 2.5- power sunroof, leather, alloys $17,925 Suburban Hyundai 248.341.9900

VW '07 JETTA Blk, 28k mi., auto, vw cert. $13,995 Vyletel Buick 866-277-8982

VW '08 BEETLE-full power very clean $12,999 Glassman 888-303-5121

VW '09 Routan 9k blk/blue dvd SAVE co. demo $24,995 Vyletel Buick 866-277-8982

## SPORTS CARS

Porsche '00 Carrera 57000 miles, excellent condition, newer tires,6 speed manual transmission $23,500 (517)749-1170

VIEW PHOTOS ONLINE AT CARS.COM

PORSCHE '08 BOXSTER Fly Yellow/Blk, 6spd $34995 **Erhard BH 888-273-9711**

## HOT RODS/ CLASSICS

1955 Chevy BELAIR: Pristine, classic 55, always garaged, Blue, 6 cyl. 4 door, automatic low miles, like new, $30,000 OBO (774 )216-1118

## HOT RODS/ CLASSICS

ANTIQUE 1929 ERSKINE Excellent shape, new chrome, new upholstery needs some cosmetic. 989-742-3485

**BUICK '84 Riveria** Convertible. above average cond. $5.800 or best offer 734-649-0406

**CASH PAID - XK or XKE Jaguar, MGA or MGB, other British? Unusual muscle cars. Any condi - tion. 989-473-2913**

**WANTED 67-69 Camaro or any year Chevelle or any MUSCLE CAR 810-252-9194**

Bulletin Board

## CEMETERIES & MONUMENTS

**WHITE CHAPEL** Cemetery 1 plot, Garden of Meditation. $1280. (610)213-5212

## LOST & FOUND

### NOTICE

All advertising published is subject to the applicable rate card, copies of which are available from our Advertising Department. All ads are subject to approval before publication. We reserve the right to edit, refuse, reject, or cancel any ad at any time. Errors must be reported in the first day of publication. We shall not be liable for any loss or expense that results from the publication (whether published correctly or not) or omission of an advertisement.

## ANNOUNCEMENTS

**ADOPTION -** A happily married, loving couple wish to love , cherish & provide a wonderful life for a newborn. Expenses paid. Please call Andrea & Rodney at 1-877-353-1020.

## LEGAL NOTICE/ BIDS/PROPOSALS

WASHTENAW COUNTY BOARD OF COMMISSIONERS PUBLIC NOTICE OF HEARING ON THE PROPOSED 2010/2011 BUDGET

PLEASE TAKE NOTICE, that the Washtenaw County Board of Commissioners will hold a Public Hearing on the Proposed 2010/2011 Budget.

The Hearing will be held on Thursday, October 22, 2009, in the Board Room, County Administration Building, 220 North Main Street, Ann Arbor, Michigan at 6:00 PM.

All citizens of Washtenaw County shall have an opportunity to provide written and oral comments and to ask questions concerning the entire proposed budget. A copy of the 2010/2011 budget is available at the County Clerk/Register Office.

The property tax millage rate proposed to be levied to support the proposed budget will be a subject of this hearing.

Spring cleaning? Call 800-WANT ADS to sell your stuff.

## LEGAL NOTICE/ BIDS/PROPOSALS

**PUBLIC NOTICE PROPOSED AUTHORIZATION OF MICHIGAN'S HAZARDOUS WASTE MANAGEMENT PROGRAM REVISIONS**

**What is United States Environmental Protection Agency (U.S. EPA) doing through this notice?** In accordance with Title 40 of the United States Code of Federal Regulations, Part 271.21, the U.S. EPA Regional Administrator is giving notice of this preliminary determination, subject to public review and comment, that the State of Michigan's revised hazardous waste management program satisfies all of the requirements for authorization under the Resource Conservation and Recovery Act (RCRA), as amended by the Hazardous and Solid Waste Amendments of 1984 (HSWA).

**What changes to the State of Michigan authorization are included in this revision?** The State program revisions include the following provisions: NESHAP: Surface coating of automobiles and light-duty trucks; Non-wastewaters from dyes and pigments; Uniform hazardous waste manifest; Methods Innovation, SW-846; Mercury containing equipment; Headworks exemption; NESHAP: Phase I final replacement standards; Burden reduction rule; CFR corrections rule I; and CRT exclusion.

**Why are the revisions necessary?** These State program revisions are necessary to maintain equivalency of state and federal programs due to changes in U.S. EPA's regulations.

**Where can the public review copies of the Michigan application?** Copies of Michigan's revised program application are available from 9:00 am to 4:00 p.m. at the following addresses for inspection and copying: Waste and Hazardous Materials Division, Michigan Department of Environmental Quality, Constitution Hall - Atrium North, Lansing, Michigan. Phone: Ronda Blayer (517) 373-9548; and RCRA Programs Section, Land and Chemicals Division, U.S. Environmental Protection Agency, 77 W. Jackson Blvd., Chicago, Illinois. Phone: Judy Greenberg, (312) 886-4179.

**Where can the public send comments to? And by when?** Submit your comments, identified by Docket ID No. EPA-05-RCRA-2009-0762, by one of the following methods: www.regulations.gov: follow the on-line instructions for submitting comments; email comments to greenberg.judith@epa.gov; or mail comments to Ms. Judy Greenberg, RCRA Programs Section (LR-8J), Land and Chemicals Division, U.S. Environmental Protection Agency, 77 W. Jackson Blvd., Chicago, IL 60604. Comments on this proposed rule must be received on or before November 16, 2009.

**More about Michigan's program:** Michigan has been operating the hazardous waste management program under the Resource Conservation and Recovery Act (RCRA) since October 30, 1986. Michigan has appropriately revised their program several times in past applications. The State of Michigan rules covering the RCRA federal regulations are found at MAC (Michigan Administrative Code) R 299.9101 et seq.

## DATING SERVICES

**THE NIGHT EXCHANGE Private Erotic Talk. Enjoy hours of explicit chat with sexy locals. CALL NOW! 313.254.4304 The Night Exchange. Must be 18+. *Phone company charges may apply"**

## DATING SERVICES

**A+ LOCAL AND SINGLE! SF 23 yrs., cute, blonde. I love a guy with a great sense of humor, cute smile and warm heart. Are YOU the one? I'm waiting. Call me NOW! 313-406-7475 Must be 18+**

Intimate Encounters
1-313-976-9000 .79
1-800-371-TALK .69
1-313-976-4444 2.95
Ladies 1-313-961-MEET

**MEET FULL FIGURED & LOVELY LADIES !** (248) 232-7082 (313) 442-0790 (586) 799-8032 (734) 786-9942 APC INC. (18+)

**CHAT, MEET, AND FLIRT** Call 313-668-1000 FREE Trial Use Code 5578 or 800-210-1010

**Flint Locals** 810-597-0500 Browse & Reply FREE! 810-597-0597 Curious Use Free Code 7267. 18+

**LANSING SINGLES** 517-318-0440 Gay/Bi 517-318-0333 Use Free Code 7266 18+

**Meet Locals** 313-963-0000 Listen & Reply FREE! Use Free Code 7218, 18+

**HOT** Singles. 313-963-0000 Browse & Respond FREE Free Code 7370 18+

**HOT GUYS** 313-962-5000 ! Browse & Respond Free ! Use Free Code 5744 18+

**FELLAS get your GIRLS** Call 313-668-1000 Enter FREE code 2618

**Women Seeking Women** Call 313-483-4080 FREE Trial! Use Code: 7281

**TALK IS CHEAP & DIRTY** Call 313-668-1010 Enter FREE code: 9576

apartments.com

Find the perfect apartment right from my phone?

Another reason why it's always a good move with apartments.com.

featuring apartments.com™

09ap0010apco_f

## ADULT ENTERTAINMENT

*** HOT ENCOUNTERS *** Canadian Beauties adlt en **519.944.2000** (#09501383)

**S.A.B. Classy Ladies 888-488-2244 Ad. Ent**

**BEST of Both Worlds** TS Sky 36D+ extra. Adult ent 313-686-4857

**CLASSY BLONDE** For Upscale gentlemen Adult ent. 810-845-1323

**SAMANTHA** 36DD-24-34 Adult Ent. 734-778-4128

**CAMILLE - 36DD.22.34** Black 18 yr old. East Side 313-595-4894. Adult Ent.

**VANESSA 38DD Open Minded, Foxy @ 40** Adlt Ent. **586-420-0814**

**A GENTLEMEN'S LADY CALL JAMIE & FRIENDS 734-444-5767 Adlt. Ent.**

**MUST SEE!! Sexy Model** Type Blonde 36C-25-34. Adult ent. 517.749.5227

**Mature Sexy Woman** Credit Cards accepted Adult Ent. 313-282-2998

**FOXY ROXY - 5'9, 36DD For a good time call adult ent. 586-447-6486**

**KELLY EARLY MORNING FUN 586-222-2376 Adult ent.**

**Stunning Brooklyn** Exotic Ebony Model Adult Ent.586-871-7634

**GORGEOUS ITALIAN! & Friends. Call Lisa adult ent (313) 704-3757**

**~Absolutely Stunning~ ******* ALANA 19 ******* 586-610-8924 adult ent**

******BARBIE DOLLS**** 313-492-9134 adult ent**

**TESS** -23 yr, old 34B 23-32 never rushed Adult Ent. 734-469-8003.

## ANNOUNCEMENTS

WIN $5,000 IN GAS
$2,500 GRAND PRIZE
+5 WEEKLY WINNERS OF $100 (25 total)

To enter, fill out the form and send it in. Watch the Detroit Free Press and The Detroit News until Nov. 15 for more chances to enter! All entries received by Nov. 19 will be entered in the drawings.

Name ______
Address ______
City ______ St. ___ ZIP ______
Phone ______ E-mail ______
Are you a home delivery subscriber? ❑ Yes ❑ No
Did you purchase this newspaper at a gas station? ❑ Yes ❑ No
Name of station ______
Location ______ City ______

Mail to: GAS UP!, PO BOX 31-0198 Detroit, MI 48231

Detroit Free Press

NO PURCHASE NECESSARY. ALL FEDERAL, STATE, LOCAL AND MUNICIPAL LAWS AND REGULATIONS APPLY. VOID WHERE PROHIBITED. GAS UP! is open to Michigan, Ohio and Canada residents only who are 18 years or older at the time of entry. Sweepstakes begins 12:01 a.m EST on Oct. 12, 2009 and ends at 11:59 p.m. EST on Nov. 19, 2009. All entries must be received no later than Nov. 19, 2009. Odds of winning depend on the number of eligible entries received. Complete Official Rules available at www.detroitmedia.com/contests.

09oc0021cmfp.kv_A

N1981311pdf

## LEGAL NOTICE/ BIDS/PROPOSALS

**UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **: Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY** | **: 09-50026 (REG)** |
| **f/k/a GENERAL MOTORS CORPORATION, *et al.*,** | **:** |
| **Debtors.** | **: (Jointly Administered)** |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(b) Your claim has been paid in full;

(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;

(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);

(g) You are a Debtor in these cases having a claim against another Debtor;

(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;

(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or

(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

| If by overnight courier or hand delivery to: | If by first-class mail, to: |
|---|---|
| The Garden City Group, Inc.<br>Attn: Motors Liquidation Company<br>Claims Processing<br>5151 Blazer Parkway, Suite A<br>Dublin, Ohio 43017 | The Garden City Group, Inc.<br>Attn: Motors Liquidation Company<br>Claims Processing<br>P.O. Box 9386<br>Dublin,Ohio 43017-4286 |

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

***Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.***

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**

DATED: September 16, 2009 BY ORDER OF THE COURT
New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

N1981492pdf

# Fur, Fins & Feathers

To advertise call 1-800-WANT-ADS

## Pets

## BIRDS

**BIRD SHOW Sat. Oct. 17 10-6 & Sun Oct 18 10-3** Quality Inn, Plymouth Rd., Livonia, Adults $4 Children under 12 FREE.. Call for information **313-247-5900**

## CATS

MAINE COON - Kittens, Sweetest Day!! Call 734-748-4370

## DOGS & KENNELS

**ADO RABLE S mall breed** AKC pups Morkies Shorkies, Maltese, Teddybears non shed. $450-$700 **www.puppy-place.net** 517.404-3045 517.404-1028

Airedale Pups, AKC/OFA, Non-Shed (810)223-4667

AKITA Pups, AKC, Ch. lines, Big Heads, males, $500-$700, 734-847-8447

**ALL- SMALL BREED &** designer puppies, $175+, 313-615-8514

**AMERICAN BULL DOG** PUPPIES ABA reg., $500. (734)469-2420

AMERICAN PIT BULL100 % TERRIER ADBA PAPERED 9 WKS, ALLSETS/SHOTS, WORMED 2X, GHCH&CH BRED! PEDS 2 PROVE $650 or best (734)306-5625

**ATTENTION PET LOVERS** Detroit Newspapers discourages ads which offer pets for free. These ads may draw responses from individuals who might use your animal for research, breeding or other purposes. We recommend asking a nominal price for your pet. Please be sure to screen respondents carefully. **Your pet will thank you!**

**Awesome** designer breed pups $199+ 734-487-0800 (Ypsilanti ) and new store Wyandotte (734-281-3800). **view available pups at www.petcitypets.com**

**BELGIUM MALINIOS** Pups UKC reg., 9wks., 5 males 1 female, well socialized. good promise to work in any dog sport. $500. 989.375.2377

**BICHON FRISE PUPS** AKC $450-550. guaranteed. 616-842-8729

BOXER PUPPIES - AKC, health guar. top quality! 32 year breeder. 810-631-5221

## DOGS & KENNELS

**BRITTANY PUPS** champ bloodline, orange & white shots wormed, guaranteed. 810-667-3274 810.614.9362

**CANE CORSO PUP** - 5 month old female, ICCF, $900. Call 586-469-2488

**CAVALIER King Charles** Spaniel pups, calm & sweet 810.358-8972 989.843.5444

**CHIHUAHUA AKC Pups** - Long hair, vet chk'd, shots, $350 cash. 586-795-2016.

**CHIHUAHUA - AKC** pups, shots and wormed $250. Teenie adults available $500-up. 734-355-6405

**CHIHUAHUA pups** shots wormed $325. must sell 586.945-4218 586.945-1310

**CHIHUAHUA TINY PUPS** males & females. $350 up Cash 248-379-0041

Chinese Crested toy pups, non shed, $200.00. also Parti Yorkies (734)572-5849

Cockapoo Puppies 4 males 8 weeks old $350.00 shots, Wormed, (989) 235-6120

**COCKAPOOS** - 4 males, white w/brown markings, 9 wks., $500. 734-649-3729

**COCKER SPANIEL AKC** pups $450/up 810.648.4591 **FREE DELIVERY lambsonkennels.com**

**DACHSHUND AKC** mini pups, Adorable! health guaranteed. $400. 586-942-0209

DACHSHUND Pups-true miniatures, AKC, shots, males only, black/tan $375, dapple $400, double dapples $450. 810-364-7729. 810-931-1343

DACHSHUNDS AKC mini many colors inc. Eng. cream & choc. shots, 517.552.9849

**DACHSHUND smooth** standard AKC pups shots, vet ck'd 586-296-5406

**DACHSHUNDS TOY** pups long hair, dabbles, all colors $350 + CASH 248-379-0041

**Doberman Pinscher Pups** 6 wks, AKC, shots, wormed, ch bld. $600. 810.488.5043

English **"Mini"** Bulldog Pups 11wks, cute, shots, under 20 lb. $700. 810-523-9452.

## DOGS & KENNELS

**ENGLISH SETTERS & Pointers** ready for FALL Hunting. $300-$800 269-279-7599 nr Kalamazoo

**German Shep. AKC pups** Lifetime health guarantee www.german-shepherd.com Whistledown Kennel. 810-794-4104

**GERMAN SHEPHERD** AKC PUPS parents on site $450. (810) 580-9468

**GERMAN SHEPHERD PUPS** AKC/OFA, Top German bloodlines, professionally bred. This week only $400. 734-992-2040

GERMAN SHEPHERDS AKC OFA, ID chip, females Fam. raised $600 **586.727.7852**

GERMAN SHEPHERDS WANTED - 2-4 years old, 228-9215; 586-201-6443

**German Shorthair Pups** - 9 wks, shots, $300. 810-275-3029, 586-907-7337.

**GOLDEN DOODLES** - Mini and standard, reds and creams, shots, vet checked, OFA guaranteed. www.windmerekennels.com. 989-865-6408

**GOLDEN RET AKC Ch.** ped pups $900-up **OLDER Dogs avail** 248.369.8400 www.chiendorgoldens.com

**GREAT DANE** - large black pups, 8wks, vet ckd. $350+. 313.819.1409 after 12 noon

Great Dane pups, AKC home raised, UTD medical, 2 yr health guar. $650+ (248)854-6923

**HAVANESE AKC** gorgeous non-shed pups guaranteed 616-842-8729

**HAVANESE AKC pups** & teens .Quality, home raised, 734-772-4822 feed the best, healthypetnet.com/havanese

HAVANESE PUPS beaut. quality, home raised, hypo-allergenic 313.999.6447 Millions of pets need your help Feed your pet the best. longpetlife.com

**LAB** pups AKC World class Hunting Pedigree. hips eyes eic guar. 989.600.8690

**MALTESE-POODLE P ups** 8 wks, shots, wormed, adorable, $350 248-896-1033

**MALTESE** Pups CKC 10 wks. Beautiful $395.-$495. & Malti-Poos $295-$395. Can Deliver 517.869.2440

**MALTESE/SHIH-TZU** 4 mo's. female. shots, very sweet $350 810-523-9452.

MALTI- POO, SHIH-TZU, POMERANIAN + other pups $150. & up 517-467-5555

**MINIATURE PINCHERS** AKC, ready to go! all shots, $200 & up, 231-893-6431 oakviewkennels.com

PEKINGESE Pups AKC 8-10 lb. $250-350. also Shih Tzu pup $300 419. 273.2673

**PIT BULL Puppies -** $150 Up.- 2 liters to choose. Blue Line & Red Line. UKC, 1st shot wormed 313.208.8002

**PIT BULL** PUPS ABDA Reg., shots/wormed, taking deposits $500 313.736.7419

## DOGS & KENNELS

**POMERANIAN PUPS** Small adorable $350+ CASH 248-379-0041

POODLE - AKC Pups, Toy, red/blk 248-391-0793. www.biloutoypoodles.com

POODLE AKC Standard, pups. Red, blk & wht. Adult dogs also 248.391.1358

**POODLES Standard** AKC, red & apricot, females $1200. males $1000. (260)347-0307

Rat Terrier Puppies Adorable UKCI great colors $250 810.333.9901/810-333-9902

ROTTWEILER AKC/OFA pups ch.lines, guaranteed $750-up. **(517)202-1128**

Rottweiler Pups AKC/UKC/OFA champion, health cert parents. Big Bold Beauties show quality $750.00 up (517)589-9241

**SHELTIE AKC Regal** pups Perfect pet. Family raised ! shot Give love 734.340.5083

**SHELTIE pups AKC** fems. smart, great family pets. 989.823.2969; 989.823.7814

**Shih Tzu AKC & Shih Poo** pups, small, home raised. shot, $300+. 810-378-2552 www.hurpurrcattery.com

**SHIH TZU PUPS** -8 wks, 1st shots/wormed, adorable, $350 248-863-6782

SHIH TZU pure bred, expert breeder, Loveable Female Male $325+ **248.682-3380**

Shih-Tzus M $300.F $400. meet/deliver 810.679.0283 shihtzupuppys.tripod.com

SHIH TZUs & SHI POOS CKC 7 & 9 wks. dewormed Shots $350. **313.740.3171**

**SMALL BREED PUPPIES** PUGGLES, SHIH-TZU, Malti-Poos, Poms $200 up CASH 248-379-0041

SOUTH AFRICAN BOERBOELS: PUPPIES DUE OCT.21,2009, Taking deposits now ($250) Great family companion, good with children, parents on site, shots, show quality, Wormed, fawn, black, bridle, RESERVE YOUR PUP TODAY! $1350 plus S&H (517) 937-2461

## DOGS & KENNELS

St. Bernard Puppies-8 wks, purebred, shots, adorable, $350-$375. 989-587-3162. 517-256-3623

WESTI PUPS $500. Westie-Snoos & Chihuahua toys $300. Shots 810.496.3697

**YORKIE - AKC, male,** 8 weeks old $550. 810-359-2071 or 810-705-1879

YORKIE/MALTESE MIX - Non-shed, shots/wormed, $290. 586-557-8971

**YORKIE Puppies** AKC 8 wk. Shots, wormed 2 fem, 2 male $500+ 313.414.3202

YORKIES - 9 wks., males & females, t-cup, shots $650 & up. 313-740-3171

**YORKIES - AKC** , male, tiny, shots and wormed $550. 734-428-7729

Yorkies, Yorkie-Poos & Morkies T-cup, Toy size, no shed $375. + 989-225-1367

**YORKIE TEACUP** Puppies Tiny, CKC 9 wks. $650. Can Deliver 517.869.2440

**YORKIE, YORKIE POO MIX** Adorable $375 + CASH 248-379-0041

Yorkie & York-Tzu-2 litters, shots, vet chk'd, guar, parents on site, 586-755-3207.

**YORKSHIRE Terriers** CKC 3 mos. Beautiful silvers $300 Can Deliver 517.869.2440

Find one or sell one cars.com



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**(Tribunal fédéral des faillites pour le district Sud de New York)**

En l'affaire
Motors Liquidation Company
anciennement connu sous le nom de
GENERAL MOTORS CORPORATION et consorts,
Débiteurs.

Chapitre 11, affaire n°
09-50026 (REG)

(Administré conjointement)

**AVIS DE DÉLAIS DE DÉPOSE DE PREUVE DE RÉCLAMATION (Y COMPRIS DES RÉCLAMATIONS AU TITRE DE LA SECTION 503(b)(9) DU CODE DES FAILLITES)**

À L'ATTENTION DE TOUTE PERSONNE, PHYSIQUE ET MORALE, AYANT DES RÉCLAMATIONS (Y COMPRIS DES RÉCLAMATIONS AU TITRE DE LA SECTION 503(b)(9) DU CODE DES FAILLITES) À L'ENCONTRE D'UN DÉBITEUR INDIQUÉ CI-DESSOUS :

| Nom du Débiteur | Numéro de l'affaire | Numéro d'identification fiscale | Autres noms utilisés par les Débiteurs au cours des 8 dernières années |
|---|---|---|---|
| Motors Liquidation Company (anciennement connu sous le nom de **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (anciennement connu sous le nom de **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (anciennement connu sous le nom de **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (anciennement connu sous le nom de **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**VEUILLEZ NOTER QUE**, le 16 septembre 2009, le United States Bankruptcy Court for the Southern District of New York (Tribunal fédéral des faillites pour le district Sud de New York) (le « Tribunal »), ayant compétence pour statuer sur les instances relevant du chapitre 11 de Motors Liquidation Company (anciennement connu sous le nom de Général Motors Corporation) et de ses débiteurs affiliés, en qualité de débiteurs en possession (collectivement, les « **Débiteurs** »), a rendu une ordonnance (l'« **Ordonnance de date limite** ») établissant (i) le **30 novembre 2009 à 17 h 00 (heure normale de l'Est)** comme les date et heure limites auxquelles toute personne, physique ou morale, (y compris et de manière non limitative, les personnes physiques, les sociétés de personnes, les sociétés par actions, les coentreprises et les fiducies) doit déposer une preuve de réclamation (« **Preuve de réclamation** ») basée sur les réclamations antérieures à la demande de mise en faillite, y compris une réclamation au titre de la section 503(b)(9) du Code des faillites, comme décrit de façon plus détaillée ci-après (une « **Réclamation au titre de la section 503(b)(9)** »), à l'encontre des Débiteurs (la « **Date limite générale** »); et (ii) le **30 novembre 2009 à 17 h 00 (heure normale de l'Est)** comme les date et heure limites auxquelles chaque entité gouvernementale (telle que définie dans la section 101(27) du Code des faillites) doit déposer une Preuve de réclamation basée sur les réclamations antérieures à la demande de mise en faillite à l'encontre des Débiteurs (la « **Date limite applicable au gouvernement** » et, conjointement avec la Date limite générale, les « **Dates limites** »).

L'Ordonnance de date limite, les Dates limites et les procédures indiquées ci-dessous pour le dépôt de Preuves de réclamation s'appliquent à toutes les réclamations à l'encontre des Débiteurs (autres que celles indiquées ci-dessous comme étant spécifiquement exclues) qui sont nées avant le 1er juin 2009, date à laquelle les Débiteurs ont entamé leurs instances dans le cadre du chapitre 11 du titre 11 du Code des États-Unis (le « **Code des faillites** »).

**Pour toute question relative à cet Avis, veuillez contacter AlixPartners au 1-800-414-9607 ou par courriel à l'adresse claims@motorsliquidation.com. En outre, vous pouvez contacter le Comité officiel des créanciers ordinaires par l'intermédiaire de son site Web à l'adresse www.motorsliquidationcreditorscommittee.com ou au 1-212-715-3275.**

**NOUS VOUS RECOMMANDONS DE CONSULTER UN AVOCAT POUR LUI SOUMETTRE TOUTE QUESTION, Y COMPRIS LE POINT DE SAVOIR SI VOUS DEVRIEZ DÉPOSER UNE PREUVE DE RÉCLAMATION.**

**1. QUI DOIT DÉPOSER UNE PREUVE DE RÉCLAMATION?**

Vous **DEVEZ** déposer une **Preuve de réclamation** pour voter sur un plan au titre du chapitre 11 déposé par les Débiteurs ou pour participer au partage de tout patrimoine des Débiteurs si vous avez une réclamation née avant le **1er juin 2009**, y compris une Réclamation au titre de la section 503(b)(9), et qu'elle ne constitue pas une réclamation d'un autre type, décrite dans la Section 2 ci-dessous. Les faits et omissions des Débiteurs antérieurs au **1er juin 2009** peuvent donner lieu à des réclamations à l'encontre des Débiteurs qui doivent être déposées au plus tard à la Date limite applicable, nonobstant le fait que de telles réclamations peuvent ne pas être échues, déterminées ou liquides ou certaines avant le **1er juin 2009**.

En application de la section 101(5) du Code des faillites et tel qu'utilisé dans cet Avis, le terme « réclamation » signifie : (a) un droit à paiement, qu'un tel droit soit ou non réduit par un jugement, liquide, non liquide, déterminé, conditionnel, échu, non échu, contesté, incontesté, légal, équitable, garanti ou non garanti; ou (b) un droit à une juste réparation au titre d'une inexécution si une telle inexécution donne lieu à un droit à paiement, qu'un tel droit à une juste réparation soit réduit par un jugement, déterminé, conditionnel, échu, non échu, contesté, incontesté, garanti ou non garanti. En outre, les réclamations comprennent les créances non garanties, les créances garanties, les créances prioritaires et les Réclamations au titre de la section 503(b)(9) (telles que définies dans la Section 2(d) ci-dessous).

**2. QUI N'EST PAS TENU DE DÉPOSER UNE PREUVE DE RÉCLAMATION?**

Vous n'êtes pas tenu de déposer une Preuve de réclamation si :

(a) Votre réclamation est inscrite sur les Inventaires (tels que définis ci-dessous) et (i) **n'est pas** décrite dans les Inventaires comme « contestée », « conditionnelle » ou « non liquide », (ii) vous **ne** contestez **pas** le montant ou la nature de la réclamation inscrite sur les Inventaires et (iii) vous **ne** contestez **pas** que la réclamation est une obligation du Débiteur spécifique à l'encontre duquel la réclamation est inscrite sur les Inventaires;

(b) Votre réclamation a été intégralement payée;

(c) Vous détenez une participation dans un quelconque Débiteur et ladite participation est exclusivement basée sur la propriété d'actions ordinaires ou privilégiées, des participations de membre, des participations dans la société ou des garanties ou des droits d'acheter, de vendre ou de souscrire de telles actions ou participations; **sous réserve**, **toutefois**, que les détenteurs de participations qui souhaitent faire valoir à l'encontre d'un quelconque Débiteur des réclamations (à la différence de participations) découlant de ou relatives à la propriété ou l'achat d'une participation, y compris des réclamations découlant de ou relatives à la vente, l'émission ou la distribution de la participation, doivent déposer des Preuves de réclamation au plus tard à la Date limite applicable, sauf si une autre exception identifiée dans les présentes s'applique;

(d) Vous détenez une réclamation admise en tant que réclamation administrative dans le cadre des sections 503(b) et 507(a)(2) du Code des faillites; **sous réserve**, **toutefois**, **que les Réclamations au titre de la section 503(b)(9) soient sujettes à la Date limite générale comme indiqué ci-dessus**. La section 503(b)(9) dispose notamment : «... il doit exister des charges administratives admises... y compris... (9) la valeur de tout bien, reçu par le débiteur dans les 20 jours précédents la date de l'ouverture d'une instance en vertu de ce titre, à laquelle le bien a été vendu au débiteur dans le cadre normal des affaires d'un tel débiteur. » **En conséquence, si vous avez une Réclamation au titre de la section 503(b)(9), vous devez déposer une Preuve de réclamation au plus tard à la Date limite générale**;

(e) Vous détenez une réclamation qui a été admise par une ordonnance du Tribunal rendue au plus tard à la Date limite applicable;

(f) Vous détenez une réclamation à l'encontre d'un quelconque Débiteur pour laquelle un délai distinct est fixé par le Tribunal (après quoi vous serez requis de déposer une Preuve de réclamation dans ce délai distinct);

(g) Vous êtes un Débiteur dans ces instances ayant une réclamation à l'encontre d'un autre Débiteur;

(h) Vous êtes un affilié (au sens de la section 101(2) du Code des faillites) d'un quelconque Débiteur à la Date limite;

(i) Vous détenez une réclamation pour laquelle vous avez déjà valablement déposé une Preuve de réclamation à l'encontre d'un quelconque Débiteur auprès du greffier du Tribunal ou de The Garden City Group, Inc., l'agent des réclamations des Débiteurs, en utilisant un formulaire de réclamation substantiellement conforme au formulaire de Preuve de réclamation (tel que défini ci-dessous) ou au formulaire officiel 10; ou

(j) Vous détenez une réclamation exclusivement limitée au remboursement du principal, des intérêts et d'autres frais et charges à valoir sur ou en vertu de tout contrat ( une « **Créance** ») régissant tout titre de créance émis par un quelconque Débiteur en vertu d'un contrat synallagmatique (conjointement, les « **Titres de créance** ») si le fiduciaire désigné par l'acte constitutif ou un représentant similaire dans le cadre du contrat synallagmatique applicable ou d'un contrat d'agence fiscale et de paiement dépose une Preuve de réclamation à l'encontre du Débiteur concerné, au plus tard à la Date limite, au titre de toutes les Créances à l'encontre d'un tel Débiteur en vertu des Titres de créance applicables, **sous réserve**, **toutefois**, qu'il soit exigé de tout détenteur d'une Créance souhaitant faire valoir une réclamation découlant d'un Titre de créance ou relative à un tel Titre de créance, autre qu'une Créance, qu'il dépose une Preuve de réclamation relative à une telle réclamation au plus tard à la Date limite, sauf si une autre exception identifiée dans les présentes s'applique. Les Titres de créance comprennent les contrats énumérés à la fin de cet Avis.

**VOUS NE DEVEZ PAS DÉPOSER UNE PREUVE DE RÉCLAMATION SI VOUS N'AVEZ AUCUNE RÉCLAMATION À L'ENCONTRE DES DÉBITEURS.**

**3. CONTRATS À EXÉCUTER ET BAUX EN COURS**

Si vous détenez une réclamation découlant du rejet d'un contrat à exécuter ou d'un bail en cours, vous devez déposer une Preuve de réclamation basée sur un tel rejet au plus tard (i) à la Date limite applicable ou (ii) à la date correspondant au **trentième jour** suivant l'ordonnance approuvant un tel rejet, à la dernière échéance. À défaut, il vous sera définitivement interdit de déposer une telle preuve. Nonobstant ce qui précède, si vous êtes partie à un contrat à exécuter ou un bail en cours et que vous souhaitez faire valoir une réclamation au titre de sommes impayées accumulées et dues en date du 1er juin 2009 en vertu dudit contrat à exécuter ou bail en cours (autre qu'une réclamation en dédommagement du rejet), vous devez déposer une Preuve de réclamation pour de telles sommes au plus tard à la Date limite, sauf si une exception identifiée ci-dessus s'applique.

**4. QUAND ET OÙ EFFECTUER LE DÉPÔT?**

Toutes les Preuves de réclamation doivent être déposées de sorte à être **effectivement reçues** au plus tard à la Date limite applicable à l'adresse suivante :

Si par service de messagerie de 24 h ou remise en main propre, à :

The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

Si par courrier de première classe, à :

The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
P.O. Box 9386
Dublin, Ohio 43017-4286

Ou, si par remise en main propre, à :

United States Bankruptcy Court, SDNY
One Bowling Green
Room 534
New York, New York 10004

Les Preuves de réclamation seront réputées déposées dans les délais uniquement si elles sont **effectivement reçues** par The Garden City Group, Inc. ou le Tribunal au plus tard à la Date limite applicable. Les Preuves de réclamation **ne** peuvent **pas** être délivrées par fac-similé, télécopie ou courrier électronique.

**5. QUOI DÉPOSER?**

Si vous déposez une Preuve de réclamation, celle-ci doit : (i) être écrite en anglais; (ii) être libellée dans la monnaie légale des États-Unis; (iii) être substantiellement conforme au formulaire officiel des faillites n° 10 (« **Formulaire de preuve de réclamation** »); (iv) indiquer le Débiteur à l'encontre duquel elle est déposée; (v) invoquer de manière détaillée les fondements légaux et factuels de la réclamation alléguée; (vi) inclure des pièces justificatives ou un exposé des raisons pour lesquelles de telles pièces ne sont pas disponibles; et (vii) être **signée** par le réclamant ou, si le réclamant n'est pas une personne physique, par un représentant autorisé du réclamant.

SI VOUS FAITES VALOIR UNE RÉCLAMATION À L'ENCONTRE DE PLUSIEURS DÉBITEURS, DES PREUVES DE RÉCLAMATION DISTINCTES DOIVENT ÊTRE DÉPOSÉES À L'ENCONTRE DE CHAQUE DÉBITEUR ET VOUS DEVEZ IDENTIFIER LE DÉBITEUR PARTICULIER À L'ENCONTRE DUQUEL VOTRE RÉCLAMATION EST ÉMISE, AINSI QUE LE NUMÉRO DE L'AFFAIRE DE L'INSTANCE DE FAILLITE DE CE DÉBITEUR, SUR VOTRE PREUVE DE RÉCLAMATION. UNE LISTE DES NOMS DES DÉBITEURS ET DE LEURS NUMÉROS D'AFFAIRE EST COMMUNIQUÉE CI-DESSUS.

Des Formulaires de preuve de réclamation supplémentaires peuvent être obtenus à l'adresse www.uscourts.gov/bkforms/ ou www.motorsliquidation.com.

**NOUS VOUS RECOMMANDONS DE JOINDRE À VOTRE FORMULAIRE DE PREUVE DE RÉCLAMATION COMPLÉTÉ DES COPIES DE TOUS LES DOCUMENTS SUR LESQUELS VOTRE RÉCLAMATION EST FONDÉE. NOUS VOUS RECOMMANDONS DE JOINDRE UN RÉSUMÉ SI LES DOCUMENTS SONT VOLUMINEUX.**

**6. CONSÉQUENCE D'UN DÉFAUT DE DÉPÔT DE PREUVE DE RÉCLAMATION AU PLUS TARD À LA DATE LIMITE**

***À l'exception des réclamations du type décrit dans la Section 2 ci-dessus, tout créancier qui ne dépose pas une Preuve de réclamation au plus tard à la Date limite sous la forme appropriée et conformément aux procédures décrites dans cet Avis pour toute réclamation qu'un tel créancier détient ou souhaite faire valoir à l'encontre de chacun des Débiteurs, sera à jamais proscrit, c'est-à-dire se verra interdit, de faire valoir la réclamation à l'encontre de chacun des Débiteurs et de leur patrimoine respectif (ou de déposer une Preuve de réclamation relative à la réclamation) et chacun des Débiteurs et leur patrimoine, successeurs et propriété respectifs au titre du chapitre 11 seront à jamais déchargés de tout endettement ou de toute responsabilité quant à la réclamation. Par ailleurs le détenteur de la réclamation ne sera pas autorisé à voter pour accepter ou rejeter tout plan au titre du chapitre 11 déposé dans le cadre de ces instances au titre du chapitre 11, à participer à une quelconque répartition dans le cadre d'une quelconque instance au titre du chapitre 11 des Débiteurs au titre de la réclamation ou à recevoir des avis supplémentaires portant sur une quelconque instance au titre du chapitre 11 des Débiteurs.***

**7. LES INVENTAIRES DES DÉBITEURS, LEUR ACCÈS ET LES CONSÉQUENCES DE LEUR MODIFICATION**

Vous pouvez être mentionné comme le détenteur d'une réclamation à l'encontre d'un ou plusieurs Débiteurs dans les Inventaires des actifs et passifs et/ou les Inventaires des contrats à exécuter et des baux en cours (collectivement, les « **Inventaires** »). Si vous vous reposez sur les Inventaires des débiteurs, vous assumez la responsabilité de déterminer si la réclamation est inscrite avec exactitude dans les Inventaires.

Comme indiqué ci-dessus, si vous acceptez la classification et le montant de votre réclamation telle qu'elle est inscrite dans les Inventaires des débiteurs et si vous ne contestez pas le fait que votre réclamation ne s'applique qu'à l'encontre du Débiteur spécifié et si votre réclamation n'est pas décrite comme « contestée », « conditionnelle » ou « non liquide », il n'est pas nécessaire que vous déposiez une Preuve de réclamation. Autrement, ou si vous décidez de déposer une Preuve de réclamation, vous devez agir avant la Date limite, conformément aux procédures exposées dans cet Avis.

Des copies des Inventaires peuvent être consultées par les parties intéressées sur le rôle électronique du Tribunal pour les instances au titre du chapitre 11 des Débiteurs. Ce rôle est publié sur Internet aux adresses www.motorsliquidation.com et www.nysb.uscourts.gov (une ouverture de cession et un mot de passe PACER sont requis et peuvent être obtenu auprès du Centre de service PACER à l'adresse www.pacer.psc.uscourts.gov). Des copies des Inventaires peuvent aussi être consultées par les parties intéressées entre 9 h 00 et 16 h 30 (heure normale de l'Est) au bureau du greffier du Tribunal des faillites, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Des copies des Inventaires des Débiteurs peuvent aussi être obtenues sur demande écrite auprès de l'agent des réclamations des Débiteurs à l'adresse et au numéro de téléphone indiqués ci-dessous :

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

Dans l'éventualité d'une modification des inventaires par les Débiteurs pour (a) désigner une réclamation comme contestée, conditionnelle, non liquide ou indéterminée, (b) changer le montant d'une réclamation qui y est reflétée, (c) changer la classification d'une réclamation qui y est reflétée ou (d) ajouter une réclamation non inscrite sur les Inventaires, les Débiteurs vous notifieront de la modification. En pareil cas, le délai que vous devrez respecter pour déposer une Preuve de réclamation au titre d'une telle réclamation est (a) la Date limite applicable ou (b) la date correspondant au **trentième jour** suivant la délivrance d'un avis de modification par les Débiteurs, à la dernière échéance.

**Il est recommandé au titulaire d'une réclamation éventuelle à l'encontre des Débiteurs de consulter un avocat à propos à tout sujet non couvert par cet Avis, tel que la question de savoir si le titulaire doit déposer une Preuve de réclamation.**

LE : 16 septembre 2009
New York, New York

SUR L'ORDRE DU TRIBUNAL

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Téléphone : (212) 310-8000
Fax : (212) 310-8007

AVOCATS DES DÉBITEURS ET DÉBITEURS EN POSSESSION

D000054993

**Certains Titres de créance**

| | Titre de créance | Numéros CUSIP, ISIN ou de sécurité suisse |
|---|---|---|
| 1 | Contrat synallagmatique daté du 15 novembre 1990, entre GM et Citibank en qualité de fiduciaire désigné par l'acte constitutif | n° CUSIP 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Contrat synallagmatique, daté du 7 décembre 1995, entre GM et Citibank en qualité de fiduciaire désigné par l'acte constitutif | n° CUSIP 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Acte de fiducie daté du 1er juillet 1995, entre Michigan Strategic Fund et Dai-Ichi Kangyo Trust Company of New York (obligation-recettes de conversion relatives au contrôle de la pollution à taux interchangeables combinés de 58 800 000 $) | n° CUSIP 594693AQ6 |
| 4 | Acte de fiducie daté du 1er juillet 1994, entre la ville de Moraine, Ohio et Dai-Ichi Kangyo Trust Company of New York (obligation-recettes relatives à l'élimination des déchets solides de 12 500 000 $) | n° CUSIP 616449AA2 |
| 5 | Acte de fiducie daté du 1er juillet 1999, entre la ville de Moraine, Ohio et Dai-Ichi Kangyo Trust Company of New York (obligation-recettes relatives à l'élimination des déchets solides de 10 000 000 $) | n° CUSIP 616449AB0 |
| 6 | Acte de fiducie daté du 1er décembre 2002, entre la ville de Fort Wayne, Indiana, JPMorgan Chase Bank et Bank One Trust Company, N.A., (obligation-recettes de conversion relatives au contrôle de la pollution de 31 000 000 $) | n° CUSIP 349272AT1 |
| 7 | Acte de fiducie daté du 1er mars 2002, entre Ohio Water Development Authority et JPMorgan Chase Bank (obligation-recettes de conversion relatives au contrôle de la pollution de l'État de l'Ohio de 20 040 000 $) | n° CUSIP 667596AU2 |
| 8 | Acte de fiducie daté du 1er décembre 2002, entre Ohio Water Development Authority et JPMorgan Chase Bank (obligation-recettes relatives à l'élimination des déchets solides de l'État de l'Ohio de 46 000 000 $) | n° CUSIP 67759ABC2 |
| 9 | Acte de fiducie daté du 1er avril 1984, entre la ville d'Indianapolis, Indiana, Bankers Trust Company et The Indiana National Bank (obligation-recettes relatives au contrôle de la pollution de 1 400 000 $) | n° CUSIP 455329AB8 |
| 10 | Contrat d'agence fiscale et de paiement daté du 3 juillet 2003, entre GM, Deutsche Bank AG London, en qualité d'agent fiscal et d'agent payeur et la Banque Générale du Luxembourg S.A., en qualité d'agent payeur | n° ISIN XS0171942757, XS0171943649 |
| 11 | Contrat d'agence fiscale et de paiement daté du 10 juillet 2003, entre GM Nova Scotia Finance Company, GM, en qualité de garant, Deutsche Bank Luxembourg S.A., en qualité d'agent fiscal et de paiement et Banque Générale du Luxembourg S.A., en qualité d'agent de paiement | n° ISIN XS0171922643, XS0171908063 |
| 12 | Contrat d'achat d'obligations et d'agence de paiement daté du 28 mai 1986, entre GM et Credit Suisse | n° de sécurité suisse 876 926 |

300 SERVICES FINANCIERS

ENDETTÉ ? Libérez-vous! Proposition ou faillite, vous pourriez :
● Arrêter le harcèlement des créanciers
● Éliminer les intérêts/réduire le capital
● Faire un seul paiement mensuel
Rendez-vous flexible
Visionnez nos vidéos d'information www.dettes.ca
514 938-2870 ou 1 877 961-0008
Groupe Leblanc Syndic Inc.

302 OCCASIONS D'AFFAIRES

DEVENEZ MILLIONNAIRE www.clubmillionnaires.com 1-866 671-9932

LE PROPRIÉTAIRE d'une usine réfrigérée et certifiée, H.A.C.C.P. de 25,000pi/c., cherche à s'associer avec propriétaire d'une usine en surcapacité avec fort potentiel de croissance ou une personne ayant des contrats potentiels et ayant besoin d'un tel établissement pour la production. Appeler Jack Lamba 514 824-2432

NOUVEAU CONCEPT DE GOUTTIÈRE. Brevet à vendre. Tél: 450 836-0867 Gilberte & Réal

WWW.MONSIEURCALFEUTRAGE.CA Léger investissement, très $$$, travail manuel facile. Rod :514 248-6284

WWW.MSD2003.COM 0$ investissement, très payant, succès garantie, 514 838-1137

314 ENTREPOSAGE

BÂTIMENT isolé, , 120x40, 4 800pi. ca., pour autos, motos ou autres, à louer 800$/mois, 450 793-2964

ENTREPOSAGE autos ou motos, local neuf, chauffé, éclairé avec alarme, 75$/mois. 514 817-8637.

ENTREPOSAGE extérieur clôturé, pour machinerie lourde ou autres , 6000 pi ca., 400$/mois, 514-494-0852

ENTREPOSAGE intérieur pour auto, camion ou autre, chauffé, 100$/mois, réservez dès maintenant! 514-494-0852

316 CAMIONNAGE TRANSPORT

DÉMÉNAGEMENTS PERFECTO 514 266-7813, local/long.dist.

Déménagement Dénommé Richer inc. 16p, 28p. Carte de crédit acceptée. couverture, assurance 514 354 7179

GAÉTAN déménagements Assurance comprise 514 257-9201

LEBRUN transport, déménagement 25$/hres, local/longue dist., couverture et ass. complète. 514 816-3294.

TRANSPORTEUR MARTIN, remorque plateforme, 40 pi., 32 pi. basculaire, 12 t, local/ longue distance, 514 824-0515

336 ASTROLOGIE CARTOMANCIE

✱ MÉDIUM QUÉBEC ✱ Les meilleures voyantes du Québec vous parlent au 514 524-6000
✱ GRATUIT ✱ www.MediumQuebec.com Abonnés Rogers,Bell, ou fido faites le # (carré) 4676

MR. BARRY GRAND VOYANT MÉDIUM PRÉDIT Amour,Travail, Affaire, résous vos problèmes d'amour, retour immédiat de l'être aimé. Résultat 72 hres, 100% garanti. Sérieux, efficace. Paiement après résultat ✱ (514) 948-4752 ✱

VOYANCEQUÉBEC.COM Bell Mobilité, Fido & Rogers faites le # futur (38887) Gratuit le 514 768-0000 accès direct : ( 1 900 451-0088 )

✱ TARO GRAND MÉDIUM ✱ SPÉCIALISTE EN AMOUR,RETOUR IMMÉDIAT ET DÉFINITIF DE L'ÊTRE AIMER EN 3 JOURS. ✱ (514) 966-9170 ✱

POUR trouver des solutions à tous vos problèmes, même les cas les plus difficiles. - Retour être, ami-chance au jeu -affaires-désenvoûtement-impuissance sexuel-protection-etc. Résultats 72 h. Paiement après résultats. 514 625-7454

340 ESCORTES

FANTASME
XXX enr.
agencefantasme-xxx.com
514- 944-9545
JOUR: Patrick et ses jolies félines attendent votre appel ...
SOIR: Sabrina - Kina - Sarah- Melissa- Emilie - Maria - Malicia - Maxime - Chanel - Barbara- Alex - Dhana -Alisia- Daisy-Leyla - Mélanie - Chloé - Emma - Brittany - Allison - Jennifer - Malika - Stacey - Vanessa - Destiny - Pamela - Alicia - Jessy - Mya - Kella - Cléopatre
BIENVENUE NOUVELLES VENUES
VIPxxx 24 / 24 VIPxxx
514- 944-9545

VIP
FERRARY SERVICE D'ESCORT SERVICE
ESCORTES XXX enr.
WWW.MONTREALXXX.CA
Bienvenue aux nouvelles venues
OUVERT 7 JOURS 24/24
514 220-0222

PARADISE XXX enr.
514 588-3644
Le meilleur service
514 588-3644
Nous essayer c'est nous adopter
Bienvenue aux nouvelles venues

DOUCE FOLIE XXX
$120$
514 497-4836
www.doucefolie.com
Enr Top modèle 150$-V.I.P 200$
Bienvenue à nos nouvelles venues.

SATISFACTION XXX enr.
$120$
24/7 V.I.P. NATIONALITÉ, COUPLE
++SÉLECTION même tôt le MATIN
514 -991-4272
✱V.I.P ✱ FILLES #1 DISCRÉTION

WEEK-END GIRLS
514-467-9336
enr. déplacement seulement
514-467-9336
Même tôt le matin

High Class
Enr. Recoit / Déplace
Voir photos sur notre site: www.hc-escorts.com
514 569-3695

MERRILL BRINK
INTERNATIONAL

State of Minnesota )
) ss:
County of Ramsey )

**Certificate of Accuracy**

This is to certify that the content/substance of the following document:

*Bar Date Notice Revisions*

originally written in *English* is, to the best of our knowledge and belief, a true, accurate and complete translation into *French-Canadian*..

Dated: *October 20, 2009*

Leo Lipnik
Project Manager
Merrill Brink International

Sworn to and signed before
Me this 20th day of
October, 2009
Lori A. Wietman
Notary Public

LORI A WIETMAN
NOTARY PUBLIC – MINNESOTA
MY COMMISSION EXPIRES 1-31-2010

Merrill Brink International Corporation
One Merrill Circles, Building #1455, St. Paul, MN 55108
Phone 651-646-4501, Fax 651-632-4781

09-50026-mg Doc 14399-3 Filed 01/21/19 Entered 01/21/19 23:18:26 Exhibit
EXHIBIT 2 Certificate of Publication Pg 12 of 14

# CRITICS ‘We pay the money back’

CONTINUED FROM B1

"It's not provocation. There simply is no viable aircraft being produced in that specific market niche – that's all," Beaudoin said.

Besides, he noted, despite all the talk about putting a new and more efficient engine on Airbus 320s and Boeing 737s, it would not work.

"They're much, much heavier planes and could not match the 20 per cent operating cost savings (the CSeries expects to offer after its scheduled launch in 2013.)"

As for Brazilian rival **Embraer,** whose president, Frederico Fleury Curado, told The Gazette last week that he would scrutinize CSeries launch aid Bombardier received from the British government, Beaudoin said succinctly: "There are many things about Embraer that are not well-known."

Regarding Boeing, Beaudoin turned the table around.

"If we in Canada had anything remotely resembling a fraction of the military contracts given to (companies like Boeing), we wouldn't begin to need any government aid. Everyone in the world does it – everyone, no matter what they say.

"These military contracts in the U.S. pay for the totality of aircraft programs. They're totally paid for (by government). And then the commercial side gets the benefits of the (defence contracts). Airbus (in Europe) does the same thing."

Besides, he added, the investment formula of one-third, one-third, one-third (shouldered by companies, suppliers and governments for launching new aircraft programs), under which the CSeries was financed, is legal and accepted by all trade organizations that regulate the aerospace industry.

"And we pay the money back," Beaudoin said.

"It's pretty funny, all this focus by companies on their competitors," he concluded. "There's a place in the sun for everyone."

fshalom@thegazette.canwest.com

# Bombardier gets on track for rail modernization in Europe

## Lands $383M deal for locomotives

**Bombardier Inc.** is strengthening its role in Europe's massive rail-modernization program with the help of technology acquired with the 2001 takeover of Germany's **Adtranz** from **Daimler AG.**

Bombardier Transportation, its Berlin-based rail equipment subsidiary and the world's biggest builder of electric locomotives, yesterday pulled in a $383-million U.S. follow-up contract for 100 of its E464 line for **Trenitalia** (Italian Railways), together with an option for 50 more.

Trenitalia already has ordered 638 of the E464 locos, of which 480 are in commercial service. It recently announced a $3-billion U.S. program to modernize and expand its regional system.

The latest order guarantees delivery from 2010 to 2012 and Trenitalia will boast one of Europe's largest single-type fleets and benefit from the E464's lower operating and maintenance costs, and environmental performance.

Bombardier said the new order will strengthen its manufacturing presence in Italy. The loco bodies and propulsion systems will be supplied from specialized Bombardier plants in Poland and Spain for assembly at Vado Liguri in Italy.

Bombardier's diesel/electric TRAXX locos are operating in several European countries. More than 4,000 Bombardier locomotives have been sold worldwide.

Bombardier was a rail-car builder in Europe before buying Adtranz – the deal brought it locomotive technology, including propulsion and control systems, besides research and design facilities and manufacturing plants, analysts said.

## In the NEWS

### PORTER FLYING AGAIN TO MONT TREMBLANT

Toronto's **Porter Airlines** is returning to the Mont Tremblant resort north of Montreal for the third winter skiing season. There will be eight flights weekly, up from five last year, and available Wednesday through Sunday starting Dec. 19 and running to April 4, 2010. Porter said flight time from Toronto City Centre Airport is just over one hour. Flights also will be available from Thunder Bay, Ont., Boston, Chicago and New York. Porter said in December there will be three round-trip flights, in January/February 2010 five weekly round-trip flights and in February to April 4 eight weekly round trips. "We expect the strongest demand since we started the service two years ago," said Porter CEO Robert Deluce in a statement. Porter is partnering with **Ultimate Ski Vacations** to provide all-inclusive packages, including lift tickets and accommodation, starting at $329 per person (double occupancy). Ski Magazine has rated **Intrawest's** Mont Tremblant as the leading ski resort in eastern North America for the 13th consecutive year.

### MINER HIRES GENIVAR FOR IMPACT STUDY

**Canada Lithium Corp.,** which is developing a lithium mining operation 60 kilometres north of Val d'Or, said yesterday it has hired Montreal-based engineering consultants **Genivar** to carry out the project's environmental impact study. The environmental work will be done in conjunction with a pre-feasibility study already begun by **BBA Inc.,** said Canada Lithium. Both have to be completed in time for construction to begin at the target date of 2011. A drilling program is under way at the former **Sullivan Mines** lithium property. Mine engineering starts in the first quarter next year and the final "bankable" feasibility study is due for completion late in 2010. The mine, assuming approval, will produce battery-grade lithium carbonate for sale to makers of new-generation batteries for all-electric cars and hybrid cars.

BREAKING NEWS
WEATHER
SPORTS
Log on to **montrealgazette.com**

CANADA LANDS COMPANY

Cameron Charlebois

Canada Lands Company CLC Limited (CLC) President and CEO Mark Laroche is pleased to announce the appointment of Cameron Charlebois as Vice-President, Real Estate, Québec.

In this role, Mr. Charlebois will be responsible for the company's real estate activities in the Province of Québec. Mr. Charlebois possesses more than 30 years of experience in architecture, real estate development, municipal management and governance in the voluntary sector. He holds degrees in architecture and management from McGill University, as well as a Doctor of Management degree from the University of Hertfordshire in the UK.

Canada Lands Company CLC Limited is a Crown corporation created by the Government of Canada with a mandate to ensure the commercially oriented, orderly disposition of selected surplus federal real properties with optimal financial and community values to Canadians, and the holding of certain properties. For more information, visit www.clc.ca.

www.clc.ca Canada

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY** | : | **09-50026 (REG)** |
| **f/k/a GENERAL MOTORS CORPORATION,** ***et al.*****,** | : | |
| **Debtors.** | : | **(Jointly Administered)** |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(b) Your claim has been paid in full;

(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;

(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);

(g) You are a Debtor in these cases having a claim against another Debtor;

(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;

(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or

(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those instruments listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

If by first-class mail, to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
P.O. Box 9386
Dublin,Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

***Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.***

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment. **A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**

DATED: September 16, 2009
New York, New York

BY ORDER OF THE COURT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

.swen eht dniheB

Complete daily election coverage in
The Gazette and online at www.montrealgazette.com

The Gazette
Words matter



The Wall Street Journal

DOW JONES
WSJ.COM
©2009 DOW JONES & CO., INC. REPRINTED WITH PERMISSION

LITIGATION

## Two New York investors sue SEC over losses incurred in Madoff scandal

BY KARA SCANNELL

Two New York investors are suing the U.S. government, alleging the federal agency responsible for overseeing Bernard Madoff's business failed in its duty to protect investors.

The investors, who filed a lawsuit in federal court in Manhattan, allege the Securities and Exchange Commission was negligent for failing to detect the fraud by Mr. Madoff despite receiving many tips that something was amiss.

The investors, Phyllis Molchatsky, a retired office worker, and Steven Schneider, a physician, invested with Mr. Madoff years ago. After the fraud was discovered in December, 2008, Ms. Molchatsky lost $1.7-million (U.S.) from her retirement savings, while Dr. Schneider lost $750,000, according to the lawsuit.

"Bernard Madoff is obviously the chief culprit in the scheme that imploded so shockingly in December, 2008. However, the SEC must be held accountable and responsible for its own negligent actions and inactions that directly and proximately caused the loss of billions of investor funds," the lawsuit states.

SEC spokesman John Heine said, "Based on our initial understanding of the matter, we believe there is no merit to the complaint."

The lawsuit follows an administrative claim Ms. Molchatsky filed against the SEC in December. The SEC didn't negotiate to settle the administrative claim, opening the door for a lawsuit.

The doctrine of sovereign immunity limits the kind of cases in which a U.S. citizen can sue the government for damages. In an attempt to get around those limits, the lawsuit cites a report by the SEC's inspector general, who found the agency's staff didn't follow up on tips and didn't verify basic data on trades that Mr. Madoff purportedly made.

The report found no evidence that the SEC staff had been influenced by Mr. Madoff or any of his family members.

SEC chairman Mary Schapiro has said she regrets the failure to detect the fraud and has taken steps to address problems, including rules aimed at tightening regulatory holes that Mr. Madoff used.

The lawsuit accuses the SEC of failing to follow its own procedures and says the agency "cannot evade accountability with a shield of immunity that is designed to be reserved for policy decisions."

## LEGALS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY** | : | **09-50026 (REG)** |
| **f/k/a GENERAL MOTORS** | : | |
| **CORPORATION,** ***et al.*****,** | : | |
| **Debtors.** | : | **(Jointly Administered)** |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM**
**(INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(b) Your claim has been paid in full;

(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;

(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);

(g) You are a Debtor in these cases having a claim against another Debtor;

(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;

(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or

(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

| If by overnight courier or hand delivery to: | If by first-class mail, to: |
|---|---|
| The Garden City Group, Inc.<br>Attn: Motors Liquidation Company Claims Processing<br>5151 Blazer Parkway, Suite A<br>Dublin, Ohio 43017 | The Garden City Group, Inc.<br>Attn: Motors Liquidation Company Claims Processing<br>P.O. Box 9386<br>Dublin,Ohio 43017-4286 |

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

***Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.***

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**

DATED: September 16, 2009
New York, New York

BY ORDER OF THE COURT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

CONGLOMERATES

GE expects to lose up to $2-billion from 2008 to 2010 on its subprime U.K. mortgages. BLOOMBERG NEWS

## GE's bottom line hit by U.K. subprime losses

15.8% of $23-billion mortgage portfolio 90 days behind payment

BY PAUL GLADER

One of the biggest hits to **General Electric Co.'s** earnings tomorrow will likely be its ongoing losses on subprime British mortgages. But unlike its quick exit from U.S. mortgages, GE plans to hold steady in Britain in the hope of capitalizing on a projected housing shortage.

The looming losses on British mortgages highlight ongoing weakness in GE's finance unit, known as GE Capital, which investors will be watching tomorrow when GE reports third-quarter financial results.

Losses and writedowns at GE Capital have hobbled the conglomerate in the past two years.

Analyst Scott Davis of Morgan Stanley expects quarterly profit at GE Capital to fall 94 per cent from a year ago, contributing to a projected 57-per-cent decline in GE earnings.

GE said it expects to lose as much as $2-billion (U.S.) between 2008 and 2010 on subprime U.K. mortgages.

As of July 28, 15.8 per cent of its $23-billion British mortgage portfolio value was 90 days behind payment, the company said.

That's more than six times the 2.4-per-cent delinquency rate on all U.K. mortgages, according to the Council of Mortgage Lenders.

But it is lower than other British subprime lenders.

GE's industrial businesses, meanwhile, which make such things as gas turbines, wind turbines and aircraft engines, have kept the frim earning money despite major losses at GE Capital, which in addition to mortgage losses has taken hits on its private-label credit cards and $80-billion commercial real estate portfolio.

GE's stock price, dragged down by the finance unit, has rebounded from a low of $6 in March to trade at $16.84 at yesterday's close, near the price it started the year.

The company is also expected to be one of the biggest recipients of money from the U.S. government's stimulus plan, aiming for as much as $100-billion from stimulus spending in the next three years for big-ticket items such as building a "smart" power grid, health-care technology and renewable energy.

GE Capital's consumer finance unit, GE Money, acquired a series of British lenders beginning in 2001. The U.K. became GE's largest market for mortgage lending, accounting for roughly half its $60-billion global portfolio by 2008.

The British operation dwarfed GE's move into U.S. mortgages, where it bought subprime lender WMC Mortgage in 2004, before selling it in 2007 after about $1-billion in losses. GE says it has a more conservative model in the U.K., where regulation is stricter on brokers and lenders.

Britain's property boom matched that of the U.S. Mortgage debt as a per cent of gross domestic product in the U.K. topped 80 per cent in 2007, similar to the U.S., and was up from 40 per cent in 1987.

In 2007, 45 per cent of British mortgage borrowers didn't have to verify their income, according to the Financial Services Authority.

The subsequent 25-per-cent plunge in British home prices effectively wiped out lenders such as Northern Rock PLC, now controlled by the U.K. government; HBOS PLC, now part of Lloyds Banking Group PLC; and Abbey National PLC, now part of Santander Group.

The companies GE Money acquired were aggressive lenders, specializing in loans to borrowers with patchy credit histories, loans where borrowers didn't have to verify income and mortgages for rental property, according to several mortgage experts in the U.K. GE says it improved the companies' lending practices.

"We compare very favourably" to other subprime lenders, says GE spokesman Russell Wilkerson.

Fitch Ratings says 25 per cent of mortgages to U.K. borrowers with impaired credit histories were more than 90 days delinquent in June, up from 13 per cent in December.

GE says it employs sophisticated risk-management practices and was among the first British lenders to consider borrowers' previous debts, as well as income, in making loans.

Mr. Wilkerson says GE limited its self-certification loans to self-employed borrowers, and subjected those to some reviews.

Earlier this year, GE ramped up foreclosures to get delinquent mortgages off its books.

Nonetheless, Mr. Wilkerson says GE is "committed to maintaining a presence in the U.K.," even as competitors such as Citigroup Inc. and several British lenders have scaled back new business.

"We believe the specialist mortgage market will recover, and this will be helped by the housing shortage in the U.K.," he says.

Analysts are mixed on the outlook for the British market.

"Home prices appear to have stabilized … and [U.K.] repossessions are already close to peaking," wrote JPMorgan analyst Bruce Kasman in a recent report.

But analysts at Fitch Ratings say "rising unemployment in Europe has not yet worked through" to delinquencies and foreclosures, particularly for subprime and nonconforming portfolios.

GE issued $26-million in U.K. mortgages in the first half of this year, compared with $5-billion in all of 2008. Worldwide, GE said it plans to originate $1-billion or less in mortgages this year, down from $13.8-billion in 2008 and $25.4-billion in 2007.

ANIMAL HEALTH MARKET

## FTC sees no competition concerns, gives Pfizer green light to buy Wyeth

BY BRENT KENDALL WASHINGTON

The Federal Trade Commission yesterday cleared Pfizer Inc.'s $68-billion cash-and-stock deal to acquire rival Wyeth, but required the companies to divest assets in the animal-health market as a condition of government approval.

With the antitrust clearance, Pfizer said it expects to close the transaction today.

The FTC said the divestitures will protect competition in the market for animal vaccines and other animal-health products.

The commission found no competitive concerns about the merger's effect on human-health products, saying the deal likely wouldn't harm consumers in any prescription-drug market.

The FTC said the two companies' product portfolios are highly complementary.

"Although the commission, based on the evidence gathered, determined that this transaction did not raise anticompetitive concerns in the markets for human pharmaceuticals, the commission remains dedicated to ensuring that pharmaceutical markets are competitive," the commission said in a written statement.

The Pfizer-Wyeth deal, disclosed in January, received approval from the European Commission and from Wyeth stockholders in July.

"We are pleased to have received all of the requisite regulatory approvals for our combination with Wyeth," said Jeffrey Kindler, Pfizer's chief executive.

"We now look forward to combining the two companies so that we can achieve meaningful results for patients, customers and the communities we serve, as well as for our shareholders," he said.

Pfizer has said it expects a 15-per-cent reduction in the combined entity's work force.

A spokesman for Wyeth, of Madison, N.J., said the company was making preparations for the deal's closing.

As part of its settlement with the commission, Pfizer has agreed to sell half of Wyeth's Fort Dodge U.S. animal-health business to Boehringer Ingelheim Vetmedica Inc. within 10 days of the acquisition.

Pfizer and Wyeth set the animal-health agreement with Boehringer Ingelheim last month.

Assets to be sold include vaccines for cattle, dogs and cats.

TAX EVASION

# Thousands of U.S. citizens reveal overseas assets to avoid prosecution

**Some 7,500 wealthy Americans** turned over information about hidden overseas assets, including some valued at more than US$100-million, ahead of a tax amnesty program's deadline today, the top U.S. tax collector said. Doug Shulman, commissioner of the Internal Revenue Service, said his agency would expand its crackdown on offshore tax evasion and will open new criminal investigation offices in Beijing, Panama and Sydney, Australia. "You add all of this up and it means increased risk for anyone still hiding assets offshore," Mr. Shulman said yesterday. Under the amnesty program that began in September, tax cheats can declare offshore accounts and income, pay reduced fines and, in general, get immunity from criminal prosecution. The program turned up undeclared offshore accounts ranging from US$10,000 to more than US$100-million, Mr. Shulman said. *Reuters*

SOURCE: BLOOMBERG NEWS JONATHON RIVAIT / NATIONAL POST

BRENDAN MCDERMID / REUTERS

**Trader Theodore Weisberg wears a hat from March 1999, the first time the Dow Jones industrial average rose above 10,000, at the New York Stock Exchange yesterday.**

# *The punch bowl's out until it's taken away*

FOLK

*Continued from Page FP1*

Despite all the good news, it is hard not to feel jaded about yesterday's event because it represents the fourth time that the Dow has breached 10,000 with an air of permanence to the move. The sad truth is that in the 10 years before the Dow first crossed 10,000 in March 1999, the index had more than quadrupled. In the 10½ years since, it has returned nothing.

Much like during past rallies, the Dow's latest 10,000-point moment is proof that low interest rates will lift equity markets while risking inflating an asset bubble. The U.S. Federal Reserve has cut interest rates to less than 0.25% and the U.S. federal budget deficit is estimated at more than 11% of gross domestic product this year and 9.6% in 2010.

It's a case of history repeating itself.

The first time that the almighty Dow went through 10,000 the technology bubble was nearing its peak. Like so many other financial manias, irrational expectations by investors were fostered by real technological innovation, and the market eventually succumbed when the Fed eventually hiked rates.

Again, in December 2003, amid an economic recovery that was vigorously taking hold, the Dow burst through the 10,000 barrier for what may have seemed like the last time. A look back at the news offers an eerie parallel to the current market rally. Investors responded favourably to minutes of the Federal Reserve Open Market Committee (FOMC) that stated Fed members would wait for "definitive signs" of economic recovery before they raised interest rates.

This decision to put off monetary tightening played a major part in inflating the housing bubble and creating the current mess we are in. It is also very similar to the current justification by investors for the current Dow 10,000 redux.

Investors are buying the market because they believe that the FOMC will once again sit on its hands and wait for definitive signs that economic recovery is taking hold. Indeed, unless the current economic recovery is stronger than expected, interest rates are likely to stay put until well into 2010, and the market rally could continue.

The early stage of an economic recovery enabled by low interest rates is typically a good time to get invested in the market, and the current policy mix is a cocktail that investors are willing to drink.

William McChesney Martin, former chairman of the Federal Reserve, once said that his job was to take away the punch bowl just as the party gets going. The trick for investors will be to take leave of the party before the Fed cuts them off.

*Financial Post*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY** | : | **09-50026 (REG)** |
| **f/k/a GENERAL MOTORS CORPORATION, *et al.*,** | : | |
| **Debtors.** | : | **(Jointly Administered)** |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009**.

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(b) Your claim has been paid in full;

(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided**, **however**, **503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date;**

(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);

(g) You are a Debtor in these cases having a claim against another Debtor;

(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor or as of the Bar Date;

(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or

(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided**, **however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

If by first-class mail, to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
P.O. Box 9386
Dublin,Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

***Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.***

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**

DATED: September 16, 2009
New York, New York

BY ORDER OF THE COURT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

# NATIONAL REPORT

## SHELL ENDS MAINTENANCE AT SCOTFORD REFINERY

**Royal Dutch Shell PLC** is starting units at its Scotford refinery in Alberta following a scheduled maintenance turnaround, according to a message on a community hotline. The 100,000-barrel-a-day plant, about 40 kilometres northeast of Edmonton, may have intermittent flaring over the next 48 hours, the company said. The Scotford refinery processes so-called synthetic crude oil produced by Shell's upgrader. The upgrader uses hydrogen-addition technology to break bitumen, or high-viscosity oil sands, into light, sweet synthetic crude. *Bloomberg News*

## NEW-VEHICLE SALES SLIDE LOWER IN AUGUST

New-vehicle sales fell in August as consumers pulled back on purchases of passenger cars, Statistics Canada said yesterday. Sales declined 0.3% to 126,401 units during the month, the agency said, after rising by a revised 5.2% in July. Most economists had expected sales to be flat in August. "Sales of new motor vehicles have generally been rising since the beginning of 2009, following a sharp decline at the end of 2008," Statscan said. "On a year-over-year basis, sales in August were 6.6% lower than in August 2008." Declines occurred in six provinces, with the biggest drop in Saskatchewan, a 5.7% slide to 3,710 units. The largest increase was realized in New Brunswick, a 3.8% advance to 3,068 units. Passenger-car sales totalled 62,425 units in August, a 1% decline, while sales of North American-built cars fell 9.3% to 33,853 units. Overseas-built passenger cars rose 11% to 28,572, offsetting declines in the previous three months. Truck sales, which have exceeded passenger-car sales since May, rose 0.4% to 63,976 units, including minivans, sport-utility vehicles, light and heavy trucks, vans and buses. *Financial Post*

## BOMBARDIER WINS US$383M ITALIAN TRAIN DEAL

**Bombardier Inc.** won a contract yesterday to supply Italy's **Trenitalia SpA** with an additional 100 electric locomotives in a deal valued at US$383-million. The order adds to the 638 of the so-called E464 electric locomotives that the Italian railway has already ordered, 480 of which have already been delivered. "We are really proud that our locomotives are the first acquisition decided on by Trenitalia under the recently announced €2-billion (US$2.99-billion) investment plan to reinforce its regional passenger fleet," said Roberto Tazzioli, Bombardier's representative in the country. The locomotives will be manufactured at Bombardier's plant in Vado Ligure, Italy, while the car bodies and propulsion systems will be built in Poland and Spain. The company said it expects the locomotives to delivered between 2010 and 2010. *Scott Deveau, Financial Post*

## $779M COMMITTED TO CARBON-CAPTURE PROJECT

The Alberta and federal governments have announced they will spend $779-million over 15 years to help kick-start a carbon-dioxide capture project west of Edmonton — the kind of effort that's been offered as the answer to international concerns over emissions from the province's energy sector. The funding was announced for **TransAlta Corp.**'s project for its Keephills 3 coal-fired electricity generation plant near Wabamun Lake. Called Project Pioneer, it is intended to capture and store up to one million tonnes of $CO_2$ a year. Last week, the two governments laid down their first big bet in the fight to limit $CO_2$ by promising Shell Energy a total of $865-million for its Quest project near Fort Saskatchewan. The Pioneer Project will utilize leading-edge technology to capture $CO_2$. The $CO_2$ will be used for enhanced oil recovery in nearby conventional fields, or stored almost three kilometres underground. *Financial Post*