# **EXHIBIT I**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                              :
In re:                                                        :    Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                           :    Case No.: 09-50026 (MG)
    f/k/a General Motors Corp., et al.,                    :
                                                              :
                          Debtors.          :    (Jointly Administered)
-------------------------------------------------------------X

**DECLARATION OF ELIZABETH J. CABRASER IN SUPPORT OF THE ECONOMIC LOSS PLAINTIFFS' MOTION TO:  (1) EXTEND BANKRUPTCY RULE 7023 TO THESE PROCEEDINGS; (2) APPROVE THE FORM AND MANNER OF NOTICE; (3) GRANT CLASS CERTIFICATION FOR SETTLEMENT PURPOSES UPON FINAL SETTLEMENT APPROVAL; (4) APPOINT CLASS REPRESENTATIVES AND CLASS COUNSEL FOR SETTLEMENT PURPOSES; AND (5) APPROVE THE SETTLEMENT AGREEMENT BY AND AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST PURSUANT TO RULE 23**

I, Elizabeth J. Cabraser, declare under penalty of perjury as follows:

       1.     I am a founding partner of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") and have personal knowledge of the facts set forth herein and could competently testify to them if called as a witness.

       2.     Pursuant to Order No. 8, <u>In re Gen. Motors LLC Ignition Switch Litig.</u>, Case No. 14-md-02543-JMF (S.D.N.Y. 2014), I serve as Plaintiffs' Co-Lead Counsel with particular responsibility for the Economic Loss part of the MDL Action.[1]  I respectfully submit this declaration in support of the Motion.

       3.     It is my belief that I, along with Mr. Berman, have and will continue to adequately represent the interests of the proposed Classes.  Below is a discussion demonstrating why we

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the accompanying *The Economic Loss Plaintiffs' Motion to: (1) Extend Bankruptcy Rule 7023 to These Proceedings; (2) Approve the Form and Manner of Notice; (3) Grant Class Certification for Settlement Purposes Upon Final Settlement Approval; (4) Appoint Class Representatives and Class Counsel for Settlement Purposes; and (5) Approve the Settlement Agreement by and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Rule 23* (the "**Motion**").

- 1 -

satisfy the requirements of Rule 23(g), as well as an explanation on why the Motion should be approved.

**I.    The Court Should Appoint Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") As Class Counsel For Settlement Purposes.**

    **A.    LCHB's And My Background And Experience.**

4.    LCHB is one of the largest law firms in the country that represents plaintiffs exclusively, with an emphasis on class actions and other group and aggregate litigation. LCHB is a national law firm with offices in San Francisco, New York, Nashville, and Seattle. LCHB's practice focuses on complex and class action litigation involving product liability, consumer, employment, financial, securities, environmental, and personal injury matters. It is frequently recognized as one of the top plaintiffs' law firms in the country and was last year recognized as by *Benchmark Litigation* as one of the "Top 10 Plaintiff Firms in America." The National Law Journal has recognized LCHB as one of the nation's top plaintiffs' law firms for 14 years, and the firm is a member of its Plaintiffs' Hot List Hall of Fame. LCHB has extensive experience in the litigation, trial, and settlement of class actions in complex economic injury, consumer fraud, and product defect cases. Additional details regarding LCHB's history and accomplishments are available at https://www.lieffcabraser.com/about-us/.

5.    I have represented individual plaintiffs and plaintiff classes in financial, consumer, employment, civil rights/human rights, and tort cases since my admission to the bar in 1978. I have served as court appointed counsel in multidistrict litigation ("MDLs") since 1981. Over the last two decades, I have been appointed to a lead role in eight significant nationwide automobile defect/consumer fraud class actions, including the *Volkswagen "Clean Diesel"* litigation and the *Chrysler-Dodge-Jeep EcoDiesel* litigation. As a lead counsel in auto-related cases, I negotiated and achieved settlements in *Volkswagen "Clean Diesel,"*

- 2 -

*Bridgestone/Firestone*, *Toyota Unintended Acceleration*, *Ford Explorer*, *GM Pickups*, *Sears Auto Center*, and *Hanlon v. Chrysler*, among others. The Ninth Circuit recently upheld the *Volkswagen "Clean Diesel"* settlement I negotiated, noting that the "settlement is highly unusual" because "[m]ost class members' compensation—buybacks, fixes, or lease terminations *plus* some cash—is as much as, perhaps more than, they could expect to receive in successful suit litigated to judgment." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.,* — F.3d ---, 2018 WL 3340398, at *8 (9th Cir. July 9, 2018) (emphasis in original); *see also id.* at *15 ("[T]he settlement delivered tangible, substantial benefits to class members, seemingly the equivalent of—or superior to—those obtainable after successful litigation, and was arrived at after a momentous effort by the parties, the settlement master, and the district court.").

6. I have served as lead counsel, as class counsel, and on plaintiffs' executive committees in approximately 50 MDLs and coordinated or consolidated proceedings. In March 2018, I was inducted into the National Trial Lawyers Association's Trial Lawyer Hall of Fame, and in 2017 I received the *National Law Journals* Lifetime achievement Award. In 2018 I received the Public Justice "Champion of Justice" award for my work in consumer rights. I have had a career-long interest in promoting the integrity and effectiveness of our civil justice system, and have devoted substantial time to the work of the American Law Institute, on whose Council I serve; to service as a member of the Advisory Committee for Federal Civil Rules; to teaching complex litigation, class actions, and consumer law as an adjunct professor at Columbia and Berkeley Law Schools, and as an active member of the American Academy of Arts and Sciences.

7. In addition to my own experience as a class-action litigator in vehicle-related cases, the partners and associates in my firm working on this matter also have extensive experience in class-action and/or vehicle-related litigation. This team includes Rachel Geman, a partner at LCHB who has served as co-lead class counsel in other MDL consumer litigation, including *In Bank of America Credit Protection Marketing and Sales Practices Litig.*, MDL 2268 (N.D. Cal. TEH), and as plaintiffs' counsel in various types of complex class action. She has served as an adjunct law professor and has taught numerous seminars on issues relevant to this case, including statistics in litigation, class action litigation, and Rule 23 settlements. She is an AV-Preeminent rated attorney, and has been recognized by *Best Lawyers* (2012-2017), *Law 500* (2013), and *Super Lawyers* (2011, 2013-2017). Other members of the team at LCHB who have played crucial rules in and/or assisted in this litigation include LCHB partners Richard M. Heimann, Kevin R. Budner, Annika K. Martin, and Phong-Chau G. Nguyen and associates Michael F. Decker, Michelle Lamy, Laura Heimann, and Darsana Srinivasan.

8. LCHB has a decades-long history of serving as court-appointed lead class counsel in large vehicle-related class and complex MDL and other actions. In addition to serving as one of three Court-appointed Co-Lead Counsel in this litigation, LCHB is currently serving as lead counsel in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.), lead counsel in *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales, Practices & Products Liability Litigation*, MDL No. 2777 (N.D. Cal.), one of three court-appointed lead counsel *In re Navistar Maxxforce Engines Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2590 (N.D. Ill.) and one of five Court-appointed lead counsel in *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, No. 10-ML-02151 (C.D. Cal.). Other examples of such cases

- 4 -

in which LCHB served as one of the court-appointed lead counsel include *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, MDL No. 1373 (S.D. Ind.); *In re Mercedes-Benz Tele Aid Contract Litigation*, MDL No. 1914 (D.N.J.); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998); and *In re Whirlpool Corporation Front-Loading Washer Products Liability Litigation*, 678 F.3d 409 (6th Cir. 2012), reh'g en banc denied, 2012 U.S. App. LEXIS 12560 (June 18, 2012), vacated, 133 S. Ct. 1722 (2013), reinstated, 722 F.3d 838 (6th Cir. 2013); *see also Butler v. Sears, Roebuck and Co.*, 2012 U.S. App. LEXIS 23284 (7th Cir. Nov. 13, 2012), reh'g en banc denied, 2012 U.S. App. LEXIS 26202 (Dec. 19, 2012), vacated, 133 S. Ct. 2768 (2013), reinstated, 2013 U.S. App. LEXIS 17748 (7th Cir. Aug. 22, 2013), cert. denied, 2014 U.S. LEXIS 1507 (U.S. Feb. 24, 2014).

**B.    The Litigation.**

9.    LCHB has represented Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs in this litigation and the MDL Action for over four years. LCHB filed one of the first consumer class actions regarding the Ignition Switch Defect, *Esperanza Ramirez, et al v. General Motors*, and took a leading role in coordinating the litigation with other counsel across the country during the MDL petition phase, culminating in the centralization of these proceedings. On June 24, 2014, I was appointed one of the Temporary Co-Lead Economic Loss Plaintiffs' Counsel in the MDL Action, and on August 15, 2014, I was appointed Co-Lead Economic Loss Plaintiffs' Counsel in the MDL Action.

10.    As Co-Lead Economic Loss Plaintiffs' Counsel, my LCHB team and I have continued to be involved in all aspects of case prosecution and management in this litigation and the MDL Action. Our efforts include, among other things: the preparation of filing of the Proposed Class Claims; development of an extensive factual record from New GM and third

parties; working with designated counsel in the Bankruptcy Court; litigating a number of dispositive and non-dispositive issues in the MDL Court and in the Bankruptcy Court, including appeals of same; the negotiation of the Settlement Agreement; and extensive work on expert and damage valuation matters.

11. Co-Lead Economic Loss Plaintiffs' Counsel will continue to adequately represent the Classes. Each Co-Lead participated in a competitive leadership application process in the MDL Action during which we established, and the MDL Court recognized, our qualifications, experience, and commitment to the litigation. Indeed, the criteria the MDL Court considered in appointing Co-Lead Counsel was substantially similar to the considerations set forth in Rule 23(g). *Compare* Order Nos. 5 & 8, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 14-md-02543-JMF (S.D.N.Y. 2014), *with Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 130-31 (S.D.N.Y. 2011) (quoting Fed. R. Civ. P. 23(g)).

12. LCHB is committed to dedicating the necessary resources and working together with Co-Lead Economic Loss Plaintiffs' Counsel for the benefit of the Classes. The firm has paid $3,250,000 in assessments to the Cost Fund in the MDL Action, incurred additional, unreimbursed out-of-pocket costs in the prosecution of the case, and has devoted more than 37,000 hours to the MDL Action.

**II.    The Settlement Is Fair, Adequate, And Reasonable: As Required
By Fed. R. Civ. P. 23(e)(2)(A) & (B), The Class Representatives
And Class Counsel Have Adequately Represented The Class;
The Proposal Was Negotiated At Arm's Length; The Relief Is Adequate;
And The Proposal Treats Class Members Equitably Relative To Each Other.**

13. The Settlement Agreement was negotiated by the Signatory Plaintiffs, the GUC Trust, and Participating Unitholders in good faith and at arm's length. After due diligence, the Signatory Plaintiffs and the GUC Trust entered into the Settlement Agreement.

14. The Settlement resolves a host of complex issues arising from the Late Claim Motions, including, but not limited to, whether Plaintiffs should be granted authority to file late proofs of claim (and whether such authority can be granted solely on due process grounds), whether the Plaintiffs' claims are equitably moot, whether additional grounds exist to object to the Plaintiffs' claims, and the amount of said claims in the event that they are allowed.

15. Litigation of these issues has been ongoing for several years, and has consumed significant time, money, and resources from the Parties and the Court. Continued litigation of the matters resolved by the Settlement Agreement would be complex and costly, depleting remaining GUC Trust Assets, and subjecting the Parties to uncertain results. The Settlement, on the other hand, will substantially reduce costs and the expenditure of resources and eliminate the risk of uncertain litigation outcomes. The relief is adequate.

16. The Settlement Agreement resolves multiple disputes, claims and issues to which the Parties are involved in varying degrees, and in related but not necessarily identical ways, such that each Party's overall obligations to one or more other Parties constitutes good and sufficient consideration for the overall benefits each Party is to receive from one or more of the other Parties.

17. The settlements, compromises, releases and transfers contemplated in the Settlement Agreement are fair, reasonable and given in exchange for valuable and reasonably equivalent consideration.

18. In light of the inherent risks and costs associated with litigation, the Settlement Agreement is fair, reasonable, and adequate, and clearly falls above the lowest rung in the range of reasonableness. Moreover, the Settlement Agreement treats Class members equitably and was the result of good faith, arm's length negotiations.

- 8 -

I declare under penalty of perjury that the forgoing is true and correct.

Executed in San Francisco, California, this 31st day of January 2019.

                                              Elizabeth J. Cabraser