# **EXHIBIT J**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            :
In re:                                                      :   Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                         :   Case No.: 09-50026 (MG)
    f/k/a General Motors Corp., et al.,    :
                                                            :
                    Debtors.    :   (Jointly Administered)
------------------------------------------------------------X

**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF THE
ECONOMIC LOSS PLAINTIFFS' MOTION TO: (1) EXTEND BANKRUPTCY
RULE 7023 TO THESE PROCEEDINGS; (2) APPROVE THE FORM AND MANNER
OF NOTICE; (3) GRANT CLASS CERTIFICATION FOR SETTLEMENT
PURPOSES UPON FINAL SETTLEMENT APPROVAL; (4) APPOINT CLASS
REPRESENTATIVES AND CLASS COUNSEL FOR SETTLEMENT PURPOSES;
AND (5) APPROVE THE SETTLEMENT AGREEMENT BY AND AMONG
<u>THE SIGNATORY PLAINTIFFS AND THE GUC TRUST PURSUANT TO RULE 23</u>**

I, Steve W. Berman, declare under penalty of perjury as follows:

      1.    I am an attorney duly admitted *pro hac vice* in this litigation, am the managing partner of the law firm of Hagens Berman Sobol Shapiro LLP, and have personal knowledge of the matters described in this declaration and am competent to testify thereto.

      2.    Pursuant to Order No. 8, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 14-md-02543-JMF (S.D.N.Y. 2014), I serve as Plaintiffs' Co-Lead Counsel with particular responsibility for the Economic Loss part of the MDL Action.[1]  I respectfully submit this declaration in support of the Motion.

      3.    It is my belief that I, along with Ms. Cabraser, have and will continue to adequately represent the interests of the proposed Classes.  Below is a discussion demonstrating

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the accompanying *The Economic Loss Plaintiffs' Motion to: (1) Extend Bankruptcy Rule 7023 to These Proceedings; (2) Approve the Form and Manner of Notice; (3) Grant Class Certification for Settlement Purposes Upon Final Settlement Approval; (4) Appoint Class Representatives and Class Counsel for Settlement Purposes; and (5) Approve the Settlement Agreement by and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Rule 23* (the "**Motion**").

- 1 -

why we satisfy the requirements of Rule 23(g), as well as an explanation on why the Motion should be approved.

### I. The Court Should Appoint Hagens Berman Sobol Shapiro LLP As Class Counsel For Settlement Purposes.

#### A. Work Done In Identifying, Investigating, And Prosecuting The Claims.

4. I have been diligently discharging my duties as Co-Lead Counsel and have played a very "hands-on" role in this litigation and the MDL Action for more than four years, personally attending to the following tasks, among many others:

- Engaging in fact investigation and drafting of the Proposed Class Claims;

- Supervising all discovery, including discovery motions, depositions of GM personal and third parties, and depositions of class representatives;

- Personally attending a plethora of expert meetings;

- Leading the development of the damage model;

- Participating in, and coordinating, all bankruptcy-related issues (including drafting letter briefs, conferring with counsel, attending select hearings, arguing in the Second Circuit, working on proofs of claim, participating in settlement negotiations with the GUC Trust relating to the initial GUC Trust settlement, attending the evidentiary hearings on the motion to enforce that settlement, and renegotiating the current Settlement Agreement); and

- Reviewing and editing all substantive briefing relating to the economic loss class action in the MDL Action.

5. As outlined in my application to serve as Interim Lead Counsel, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 14-md-02543-JMF (S.D.N.Y. 2014) (Dkt. No. 170), my firm conducted substantial work to identify and investigate potential claims in the MDL Action. We filed seven class actions against New GM,[2] six of which focused on ignition switch

---

[2] *Benton v. GM LLC,* No. 5:14-CV-590 (C.D. Cal.); *Dinco v. GM LLC,* No. 2:14-cv-3638 (C.D. Cal.); *Heuler v. GM LLC,* No. 14-cv-492 (C.D. Cal.); *McConnell v. GM LLC,* No. 8:14-cv-424 (C.D. Cal.); *Ratzlaff v. GM LLC,* No. 2:14-cv-2424 (C.D. Cal.); *Satele v. GM LLC,* No. 14-cv-485 (C.D. Cal.); and *Andrews v. GM LLC,* No. 5:14-cv- 1239 (C.D. Cal.).

defects. These detailed complaints demonstrate that we conducted a thorough investigation before filing. We closely monitored GM recalls and the Congressional investigation, and analyzed the Valukas Report (identifying its shortcomings).

6. We have maintained extensive contacts with members of the proposed Classes, maintaining a database that tracked vehicle trends and helps us communicate with consumers. It contains hundreds of putative class members from across the country, and each one has been contacted by a Hagens Berman attorney or staff member. We have logged several hundred calls from putative class members and have coordinated the depositions of the class representatives, the majority of which have been Hagens Berman clients.

### B. Our Experience In Handling Class Actions And Other Complex Litigation.

7. Hagens Berman's focus is the litigation of complex class actions and MDLs on behalf of plaintiffs throughout the country. We have been appointed lead or co-lead counsel in many of the largest consumer fraud, product liability, securities, and antitrust cases in history. I have dedicated myself to complex class-action work for over 30 years.

8. The dozens of MDLs and multi-state class actions in which our firm has held leadership positions include many—such as this one—where several types of claims are consolidated for prosecution. We become experts in the facts, the law, and the science of the case and marshal a counsel team committed to doing the same.

9. Our leadership has achieved substantial, often unprecedented, results for class members. The following are just a few examples (the balance can be found on our website and in our resume):

- *Volkswagen "Clean Diesel" MDL* (N.D. Cal.). As lead counsel for the Volkswagen Franchise Dealers, we received final approval of a settlement of $1.2 billion, representing a result of nearly full damages for the class. I also serve on the Plaintiffs' Steering Committee and played a role in obtaining a settlement of

$14.7 billion on behalf of consumers that included injunctive relief in the form of an optional buyback of the affected vehicles.

- *In re Stericycle, Inc. Steri-Safe Contract MDL* (N.D. Ill.). As lead counsel in this contract-based case involving pricing for medical-waste services, we recovered $295 million for the class after intensive discovery, litigation, and economic modeling. The late Judge Milton Shadur, a true lion of the bench, deeply honored my firm and me by observing: "[I]t must be said that the track record of Hagens Berman and its lead partner Steve Berman is . . . impressive, having racked up such accomplishments as a $1.6 billion settlement in the *Toyota Unintended Acceleration Litigation* and a substantial number of really outstanding big-ticket results." *In re Stericycle, Inc.,* 2013 WL 5609328, at *2 (N.D. Ill. Oct. 11, 2013).

- *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, *Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML2151 JVS (C.D. Cal.). As co-lead counsel for the economic loss classes in this successful, complex MDL, I and the firm challenged a defect causing dozens of models spanning an 8-year period to undergo sudden, unintended acceleration. The resulting $1.6 billion settlement included $500 million in cash payments to class members, many of whom received checks for thousands of dollars; installation of a safety- enhancing brake override system on millions of vehicles; and a program that substantially extended warranties for millions of consumers.

- *In re Elec. Books Antitrust Litig.*, No. 11-md-2293 DLC (S.D.N.Y.). We pioneered this litigation as lead counsel against Apple and the largest brick- and-mortar publishers for antitrust violations. We worked in novel partnership with the Department of Justice and 33 State Attorneys General, representing purchasers of e-books in 19 states and four U.S. territories. The case settled for $560 million on single damages of $270 million.

- *In re Charles Schwab Corp. Sec. Litig.*, No. 08-cv-1510 WHA (N.D. Cal.). Appointed sole lead counsel in this class action, we alleged Schwab falsely marketed its YieldPlus Fund as a safe money market alternative. A $235 million class settlement was reached shortly before we began trial—with checks mailed directly to members for the first time in a securities case, that we are aware of.

- *New England Carpenters Health & Benefit Fund v. McKesson Corp., et al.*, No. 1:05-cv-11148 PBS (D. Mass.). As co-lead we pioneered these racketeering cases alleging a conspiracy to increase by 4% the list price on most brand-name drugs. After certification of a nationwide class, the case settled for $350 million and a roll back of drug prices for all brand-name drugs. Our work led to follow-on litigation by federal, state and local governments that netted another $500 million in recoveries. The States we represented in those actions received three to nine times the settlement amounts received by States not represented by us.

- *In re Pharm. Indus. Avg. Wholesale Pricing Litig. (AWP)*, No. 01-cv-12257 PBS (D. Mass.). As co-lead counsel in this MDL, and myself as lead trial counsel, we proved that the nation's major pharmaceutical companies fraudulently inflated their prices by billions of dollars. A bellwether trial resulted in a plaintiffs' verdict against three of the four defendants. The cases concluded with $338 million in settlements and consumers received three times actual damages (unprecedented, to our knowledge).

- *Attorneys General Tobacco Litigation*: In the historic litigation against the tobacco industry, we represented 13 states and advanced groundbreaking legal claims to secure a global settlement worth $260 billion, still the largest recovery in history. Only two law firms, including Hagens Berman, went to trial in these Attorneys General actions, and I served as co-lead trial counsel.

10. We appreciate the many court acknowledgements of our class action leadership. Recently, Judge Griesa lauded Hagens Berman's commitment through ten years of litigation where the risk of non-recovery was "extremely high:" "Even when recovery seemed unlikely. . . , Hagens Berman steadfastly continued to represent the class. Hagens Berman's willingness to take this case on a contingency basis in spite of the risks involved, and to continue to represent the class even when success appeared unlikely, is a testament to its commitment." *Brecher v. Argentina,* No. 1:06-cv-15297, ECF No. 148 (S.D.N.Y. Apr. 27, 2017). In *Toyota*, Judge Selna commented: "Class counsel has consistently demonstrated extraordinary skill and effort." DE # 3933 at 12. Former Chief Judge Vaughn Walker, in selecting our firm as sole lead in *In re Optical Disk Drive Prod. Antitrust Litig.*, 10-md-2143, DE # 96 at 4-5 (N.D. Cal.) found, "[a] clear choice emerges. That choice is the Hagens Berman firm."

11. My firm and I have also received several industry honors. I am honored to have been named to *Law360's* Titans of the Plaintiffs' Bar for 2018 and to have been named MVP of the Year for 2017. I also received *The National Law Journals* 2017 Plaintiffs' Trailblazer Award, which highlighted my work in corporate reform, groundbreaking cases, and novel settlement-distribution methods. I have been named a member of the 2014-2015 Lawdragon 500

Leading Lawyers in America; voted one of the 100 most influential attorneys in America by *The National Law Journal* three times; voted most powerful lawyer in the State of Washington by *The National Law Journal;* and, along with my team was selected as a Finalist for Public Justice's 2014 Trial Lawyer of the Year. Additionally, our firm has been recognized on numerous occasions for its outstanding accomplishments. For example, it was named a firm of Elite Trial Lawyers by *The National Law Journal* in 2016. It also has been chosen as Global Law Experts' Class Actions (Plaintiff) Law Firm of the Year for two years running. These awards, among others, speak to our dedication to, and outstanding results on behalf of, those we have served.

12. Attached as Exhibit A is a true and correct copy of the first pages of Hagens Berman's current firm resume. The full resume is over 200 pages long. We will be happy to submit the entire resume to the Court very promptly should the Court wish to review it. Attached as Exhibit B is a true and correct copy of my current resume, which includes an attachment listing leadership and committee roles in certain notable cases.

    **C.**    **Counsel's Knowledge Of The Applicable Law.**

13. We know this area of law very well and have successfully litigated class actions across a range of defective products. In the auto defect arena alone, we have represented putative or certified classes against Toyota (unintended acceleration defects); Ford (defects in dashboard computers,[3] engine defects, and transmission defects); Chrysler (rear lift-gate and paint delamination defects); Nissan (defects in a throttle acceleration system[4]); Hyundai (misrepresentation of fuel economy and horsepower metrics,[5] air bag defects, and defects in sub-

---

[3]    *In reMyFord Touch Consumer Litig.,* No. 13-cv-03072-EMC (N.D. Cal.).

[4]    *Daffin v. Ford Motor Co.,* No. C-1-00-458 (S.D. Ohio).

[5]    *In re Hyundai & Kia Fuel Economy Litig.,* No. 13-ml-02424-GW (C.D. Cal.).

- 6 -

frames and rear trailing arms); Kia (defective gas tanks); and Volkswagen, Mercedes, Fiat-Chrysler, and GM in diesel emissions fraud cases.[6]

14. In *Toyota,* as lead counsel, we extensively researched and briefed, *inter alia,* Article III standing; federal preemption; the Magnuson-Moss Act (15 U.S.C. § 2301); the TREAD Act (49 U.S.C. § 30101, *et seq.);* arbitration clauses; notice, presentment, and privity requirements under various state warranty laws; consumer protection laws of every jurisdiction in the U.S.; proximate causation; and multiple forms of equitable and monetary relief. We are also well-versed in the regulations governing NHTSA and auto manufacturer recall obligations. We also prepared the class certification motion, although the case settled shortly before the deadline for filing it.

15. We have long-standing relationships with a stable of leading automotive experts in mechanical engineering, electrical engineering, "embedded" computer hardware and software, accident reconstruction, and economic losses and have worked with several of them in this MDL.

**D.    Resources That Counsel Will Commit To Representing the Classes.**

16. Our track record demonstrates that we regularly commit our national resources of our 65+ lawyer firm in complex multi-state class actions to prosecute in a timely manner. We are fortunate to have the ability to fund litigation costs over many years of litigation and trial, often alone, although here we also have the additional resources of the Lieff Cabraser firm and the Executive Committee members.

17. As discussed above, I have devoted a substantial amount of time to serving as Co-Lead Counsel in the MDL Action and this litigation. I have personally devoted over 2,900 hours

---

[6] *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* MDL No. 2672 (N.D. Cal.); *In re Mercedes-Benz Emissions Litig.,* No. 16-cv-00881-JLL (D.N.J.); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.,* No. 3:17-md-02777-EMC (N.D. Cal.); *Counts v. General Motors LLC,* No. 1:16-cv-12541-TLL-PTM (E.D. Mich.); *In re Duramax Diesel Litig.,* No. 1:17-cv-11661-TLL-PTM (E.D. Mich.).

to carrying out my Co-Lead Counsel duties in this MDL Action, helped try the first personal injury case in the MDL, and participated on the team that moved to enforce the initial GUC Trust settlement in this Court.

18. Other senior partners of the Hagens Berman team have played critical roles in this case and include Sean Matt, Andrew Volk, and Craig Spiegel. All told, 19 Hagens Berman attorneys (excluding contract lawyers) have assisted me in prosecuting this case. As a firm, we have collectively recorded over 50,000 hours of attorney, contract attorney, and paralegal time.

19. My firm has already advanced more than $3,550,000 in assessments to the Cost Fund in the MDL Action and incurred additional, unreimbursed out-of-pocket costs in the prosecution of the case.

20. In sum, we have devoted substantial resources to pursuing the interests of the putative Classes and will continue to do so for the long-haul. We will take this action to trial, if need be, and beyond.

## II.    The Settlement is Fair, Adequate, And Reasonable.

21. The Settlement Agreement was negotiated by the Signatory Plaintiffs, the GUC Trust, and Participating Unitholders in good faith and at arm's length. After due diligence, the Signatory Plaintiffs and the GUC Trust entered into the Settlement Agreement.

22. The Settlement resolves a host of complex issues arising from the Late Claim Motions, including, but not limited to, whether Plaintiffs should be granted authority to file late proofs of claim (and whether such authority can be granted solely on due process grounds), whether the Plaintiffs' claims are equitably moot, whether additional grounds exist to object to the Plaintiffs' claims, and the amount of said claims in the event that they are allowed.

23. Litigation of these issues has been ongoing for several years, and has consumed significant time, money, and resources from the Parties and the Court. Continued litigation of the matters resolved by the Settlement Agreement would be complex and costly, depleting remaining GUC Trust Assets, and subjecting the Parties to uncertain results. The Settlement, on the other hand, will substantially reduce costs and the expenditure of resources and eliminate the risk of uncertain litigation outcomes.

24. The Settlement Agreement resolves multiple disputes, claims and issues to which the Parties are involved in varying degrees, and in related but not necessarily identical ways, such that each Party's overall obligations to one or more other Parties constitutes good and sufficient consideration for the overall benefits each Party is to receive from one or more of the other Parties.

25. The settlements, compromises, releases and transfers contemplated in the Settlement Agreement are fair, reasonable and given in exchange for valuable and reasonably equivalent consideration.

26. In light of the inherent risks and costs associated with litigation, the Settlement Agreement is fair, reasonable, and adequate, and clearly falls above the lowest rung in the range of reasonableness. Moreover, the Settlement Agreement treats Class members equitably and was the result of good faith, arm's length negotiations

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States.

Executed this 31st day of January, 2019 at Seattle, Washington.

_____
Steve W. Berman

- 9 -