# Exhibit F

*Execution Version*

SECURITY AGREEMENT

# TABLE OF CONTENTS

1.  Definitions ........................................................................................................1

    1.1  **LW Capital Provision Agreement and UCC Terms** ...........................1

    1.2  **General Definitions** ...................................................................1

    1.3  **Interpretation** ...........................................................................3

2.  Grant of Security ..............................................................................................3

    2.1  **Grant of Security – General** .......................................................3

3.  Security for Obligations; Grantor Remains Liable ............................................3

    3.1  **Security for Obligations** ..............................................................3

    3.2  **Continuing Liability Under Collateral** ........................................4

4.  Certain perfection requirements, etc. ..............................................................4

5.  Representations and Warranties ......................................................................5

    5.1  **Grantor Information and Status, Authority, etc.** ...........................5

    5.2  **Ownership of Collateral and Absence of Other Liens** ..................5

    5.3  **Status of Security Interest** ..........................................................5

6.  Covenants and Agreements ..............................................................................6

    6.1  **Grantor Information and Status** ..................................................6

    6.2  **Ownership of Collateral, Absence of Other Adverse Claims, and Further Duties** ...........................................................................6

    6.3  **Status of Security Interest** ..........................................................7

    6.4  **Reliance** ....................................................................................7

    6.5  **Enforcement Costs** ....................................................................7

7.  Access; Right of Inspections and Further Assurances .......................................7

    7.1  **Access; Right of Inspection** ........................................................7

    7.2  **Further Assurances** ....................................................................8

8.    remedies ................................................................................................9

    8.1    **Generally** ...........................................................................................9

    8.2    **Application of Proceeds** ................................................................11

    8.3    **Cash Proceeds** ...............................................................................11

9.    Continuing Security Interest .................................................................11

10.    Standard of Care; Secured Parties may Perform ...............................11

11.    Notices .....................................................................................................12

    11.1    **Effectiveness of Notices** ...............................................................12

    11.2    **Change of Details** ..........................................................................12

12.    miscellaneous .........................................................................................12

    12.1    **Remedies Cumulative** ...................................................................12

    12.2    **Covenants Independent** ................................................................12

    12.3    **Successors and Assigns** ...............................................................13

    12.4    **No Transfer** ....................................................................................13

    12.5    **Amendments** ...................................................................................13

    12.6    **Entire Agreement** .........................................................................13

    12.7    **Counterparts** .................................................................................13

    12.8    **No Waiver** .......................................................................................13

    12.9    **Severability** ....................................................................................14

13.    Applicable Law and Jurisdiction .........................................................14

14.    Intentionally Omitted. ...........................................................................15

15.    Subordination Agreement .....................................................................15

## SCHEDULE 1 TO

## SECURITY AGREEMENT

*This Schedule forms a part of the Security Agreement between the Parties.*

**1.    GRANTOR**

1.1    Name(s) of Grantor (as set forth in the most recent instrument submitted for filing to the Secretary of State of the jurisdiction of formation or equivalent in non-U.S. jurisdictions):

Motors Liquidation Company Avoidance Action Trust

1.2    Jurisdiction of formation:

State of Delaware

1.3    Address:

Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, Delaware, 19890-1615

Notices to the attention of:

Corporate Trust Administration

Fax:

(302) 636-4140

E-mail:

bandrews@WilmingtonTrust.com

**2.    SECURED PARTY**

2.1    Name of Secured Party:

LW Holdco VI LLC
(**"Secured Party"**)

2.2    Jurisdiction of formation:

State of Delaware

2.3    Address:

1350 Avenue of the Americas, 2nd Floor
New York, New York 10019

Notices to the attention of:

Boaz Weinstein

Fax:

(646) 389-1032

E-mail:                                        [weinstein@lakewhillans.com](mailto:weinstein@lakewhillans.com)

## 3.    CLAIM

Any litigation commenced by the Grantor, including In re: Motors Liquidation Company, et al., Chapter 11 Case No. 09-50026 (REG) (Jointly Administered), including but not limited to (i) Motors Liquidation Co. Avoidance Action Trust, by and through the Wilmington Trust Company, solely in its capacity as Trust Administrator and Trustee v. J.P. Morgan Chase Bank, N.A., individually and as administrative Agent for various lenders party to the Term Loan Agreement, et al., Adversary Proceeding Case No. 0900504 (REG), U.S.B.C. S.D.N.Y.; (ii) the action commenced in the Court of Chancery of the State of Delaware against Oaktree Loan Fund, LP, including any related actions; (iii) the action commenced in the Court of Chancery of the State of Delaware against SSS Funding II, LLC; and (iv) any other actions or proceedings brought by the Grantor.

The Claim also includes any variations or expansions of the above claims by the addition of any claims and/or parties from time to time, as well as the following:

(i)    any and all related pre- and post-trial proceedings or processes (or pre- and post-hearing proceedings or processes, where applicable) in or in connection with such claim(s), including the pursuit of costs or post-judgment or post-arbitral award remedies;

(ii)    all proceedings seeking to appeal, challenge, confirm, enforce, modify, correct, vacate or annul a judgment or award, as well as proceedings on remand or retrial or rehearing;

(iii)    all ancillary, parallel or alternative dispute resolution proceedings and processes arising out of or related to the acts or occurrences alleged in such claim(s) (including conciliation or mediation or court filings seeking discovery for or filed in aid of a contemplated or pending arbitration);

(iv)    re-filings or parallel filings of such claim(s) and any other legal, diplomatic or administrative proceedings or processes founded on the underlying facts giving rise to or forming a basis for such claim(s);

(v)    ancillary or enforcement proceedings related to the facts or claims alleged from time to time or that could have been alleged in such claim(s) at any time;

(vi)    all arrangements, settlements, negotiations, or compromises made between the Counterparty and any adverse party having the effect of resolving any of the Counterparty's claims against any adverse party that are or could be or could have been brought in such claim(s); and

(vii)    all rights of the Counterparty to collect any damages or awards or otherwise exercise remedies in connection with any of the foregoing.

**4.     EFFECTIVE DATE OF THIS AGREEMENT**

January 24, 2019

# SCHEDULE 2 TO

# SECURITY AGREEMENT

*This Schedule forms a part of the Security Agreement between the Parties.*

<u>Complete for each entity Grantor:</u>

(A)    Full Legal Name, Type of Organization, Jurisdiction of Organization, Chief Executive Office/Sole Place of Business and Organizational Identification Number of each entity Grantor:

| <u>Full Legal Name</u> | Type of <u>Organization</u> | Jurisdiction of <u>Organization</u> | Chief Executive Office/Sole Place <u>of Business</u> | <u>Organization I.D.#</u> |
|---|---|---|---|---|
| Motors Liquidation Company Avoidance Action Trust | Statutory trust | State of Delaware | Wilmington Trust Company Rodney Square North 1100 North Market Street Wilmington, Delaware, 19890-1615 | Delaware File No. 4961460 |

(B)    Other Names (including any Trade Name or Fictitious Business Name) under which each entity Grantor currently conducts business:

| <u>Trade Name or Fictitious Business Name</u> |
|---|
| None. |
|  |
|  |

(C)    Changes in Name, Jurisdiction of Organization, Chief Executive Office or Sole Place of Business and Corporate Structure within past five (5) years:

| <u>Date of Change</u> | <u>Description of Change</u> |
|---|---|
| None. |  |
|  |  |

This **SECURITY AGREEMENT**, dated as of the date set forth on Schedule 1 hereof (as it may be amended, restated, supplemented or otherwise modified from time to time, this "**Agreement**"), between the grantor(s) whose name, organizational details and address are set out in Schedule 1 hereof (if more than one, collectively, and jointly and severally, "**Grantor**"), and the secured party whose name, organizational details and address are set out in Schedule 1 hereof ("**Secured Party**").

## RECITALS:

**WHEREAS**, reference is made to that certain capital provision agreement, dated as of January 21, 2019 (as it may be amended, restated, supplemented or otherwise modified from time to time, the "**LW Capital Provision Agreement**"), by and between Grantor as the "Counterparty" thereunder and Secured Party as the Capital Provider thereunder;

**WHEREAS**, in consideration of the payment of the amounts set forth in the LW Capital Provision Agreement and other accommodations of Secured Party, Grantor has agreed to secure its obligations to Secured Party under the LW Capital Provision Agreement as set forth herein; and

**NOW**, **THEREFORE**, in consideration of the premises and the agreements, provisions and covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor and Secured Party agree as follows:

**1.    DEFINITIONS**

**1.1    LW Capital Provision Agreement and UCC Terms**

(a)    Capitalized terms used herein but not defined shall have the meaning given to them in the LW Capital Provision Agreement, unless such terms are defined in the UCC, in which case they shall be governed by clause (b) of this Section 1.1.

(b)    Capitalized terms not defined in this Agreement shall have the meaning given to them in the UCC (and, if defined in more than one Article of the UCC, shall have the meaning given in Article 9 thereof).

**1.2    General Definitions**

In this Agreement, the following terms shall have the following meanings:

"**Agreement**" shall have the meaning set forth in the preamble.

"**Avoidance Action Proceeds**" shall have the meaning set forth in the Trust Agreement.

"**Bankruptcy Code**" means Title 11 of the United States Code entitled

"**Bankruptcy**", as now and hereafter in effect, or any successor statute.

"**Claim**" means the claim(s) described on Schedule 1 to this Agreement. If only one claim is set forth on Schedule 1, it shall be referred to herein as "the Claim" or "a Claim". If two or more claims are set forth on Schedule 1, each claim shall be referred to individually as "a Claim" and all such claims together shall be referred to collectively as "the Claim".

"**Claim Proceeds**" shall mean "Proceeds" as such term is defined in the LW Capital Provision Agreement.

"**Collateral**" shall have the meaning set forth in Section 2.

"**Enforcement Costs**" shall have the meaning set forth in Section 6.5.

"**Insolvency Proceedings**" shall mean any assignment for the benefit of creditors or other proceedings intended to liquidate or rehabilitate the estate of a Person or any other legal procedure under any law of any jurisdiction having a similar or analogous nature or effect.

"**Intellectual Property**" shall mean the collective reference to all rights, priorities and privileges relating to intellectual property, whether arising under the laws of the United States of America, multinational or foreign laws or otherwise, including without limitation, copyrights, copyright licenses, patents, patent licenses, trademarks, trademark licenses, trade secrets, and trade secret licenses, and the right to sue or otherwise recover for any past, present and future infringement, dilution, misappropriation, or other violation or impairment thereof, including the right to receive all Proceeds, including without limitation license fees, royalties, income, payments, claims, damages and proceeds of suit, now or hereafter due and/or payable with respect thereto.

"**LW Capital Provision Agreement**" shall have the meaning set forth in the recitals.

"**Material Breach**" shall have the meaning set forth in Section 9.1(a).

"**Proceeds**", when used herein as an uncapitalized term, shall have the meaning given in ordinary English usage. (The capitalized terms "Proceeds" and "Cash Proceeds" shall have the meanings given in Article 9 of the UCC, and the capitalized term "Claim Proceeds" shall have the meaning set forth above in this Section 1).

"**Reimbursable Amounts**" shall mean all amounts, other than Enforcement Costs, for which Secured Party is entitled to indemnification, reimbursement, recoupment or recompense hereunder in its capacity as Secured Party, and advances made by Secured Party hereunder for the account of Grantor.

"**Secured Obligations**" shall have the meaning set forth in Section 3.1.

"**Secured Party**" shall have the meaning set forth in the preamble.

"**Subordination Agreement**" shall mean the subordination agreement, dated January 24, 2019, among the DIP Lenders, Secured Party and Grantor.

"**Trust Agreement**" shall have the meaning set forth in the LW Capital Provision Agreement.

"**UCC**" shall mean the Uniform Commercial Code as in effect from time to time in the State of New York; *provided, however*, that in the event that, by reason of mandatory provisions of law, the rules governing perfection, the effect of perfection or nonperfection and the priority of a security interest in the Collateral are governed by the Uniform Commercial Code as enacted and in effect in a jurisdiction other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code as enacted and in effect in such other jurisdiction solely for purposes of such mandatory provisions.

## 1.3    Interpretation

Any of the terms defined herein may refer to the singular or plural, as the context may require. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.   References herein to any Section, Appendix, Schedule or Exhibit shall be to a Section, an Appendix, a Schedule or an Exhibit, as the case may be, of this Agreement unless otherwise specifically provided.   The use herein of the words "include" or "including", when following any general statement, term or matter, shall not be construed to limit such statement, term or matter to the specific items or matters set forth immediately following such word or to similar items or matters, whether or not non-limiting language (such as "without limitation" or "but not limited to" or words of similar import) is used with reference thereto, but rather shall be deemed to refer to all other items or matters that fall within the broadest possible scope of such general statement, term or matter.   The terms "lease" and "license" shall include sub-lease and sub-license, as applicable.   This Agreement relates solely to the security interest described herein, and the rights and obligations of the parties with respect thereto, and shall not be interpreted to alter, amend, or modify any of the terms and provisions of the LW Capital Provision Agreement.   All references herein to provisions of the UCC shall include all successor provisions under any subsequent version or amendment to any Article of the UCC.

## 2.    GRANT OF SECURITY

## 2.1    Grant of Security – General

Grantor hereby grants to Secured Party a security interest in and continuing lien on all of Grantor's right, title and interest in the following, in each case whether now or hereafter existing or in which Grantor now has or hereafter acquires an interest and wherever the same may be located: (i) the Avoidance Action Proceeds and (ii) the Capital Provider Funding Account and all Supplemental Capital therein (hereinafter collectively referred to as the "**Collateral**").

## 3.    SECURITY FOR OBLIGATIONS; GRANTOR REMAINS LIABLE

## 3.1    Security for Obligations

This Agreement secures, and the Collateral is collateral security for, the prompt and complete payment or performance in full when due, whether at declaration, demand or otherwise (including the payment of amounts that would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a) (and any successor provision thereof)), of all obligations of Grantor under the LW Capital Provision Agreement and

this Agreement, including any Enforcement Costs and Reimbursable Amounts (collectively, the "**Secured Obligations**").

## 3.2    Continuing Liability Under Collateral

Notwithstanding anything herein to the contrary, (i) Grantor shall remain liable for all obligations to third parties in respect of the Collateral, and nothing contained herein is intended or shall be a delegation of duties to Secured Party, (ii) Grantor shall remain liable under each agreement included in the Collateral to perform all of its obligations thereunder in accordance with, and pursuant to, the terms and provisions thereof, and Secured Party shall not have any obligation or liability under any such agreement by reason of, or arising out of, this Agreement or any other document related thereto prior to its acquisition thereof by enforcement of its rights under this Agreement or transfer in lieu of such enforcement, nor shall Secured Party have any obligation to make any inquiry as to the nature or sufficiency of any payment received by it or have any obligation to take any action to collect or enforce any rights under any agreement included in the Collateral, and (iii) the exercise by Secured Party of any of its rights hereunder shall not release Grantor from any of its duties or obligations under the contracts and agreements included in the Collateral.

## 4.    CERTAIN PERFECTION REQUIREMENTS, ETC.

(a)    Grantor shall (i) accept amounts provided by Secured Party, in its capacity as Capital Provider, to Grantor pursuant to the LW Capital Provision Agreement; (ii) receive any funds paid as the result of a Claim Resolution and to promptly pay to Secured Party, in its capacity as Secured Party, any amounts owed to Secured Party in accordance with the LW Capital Provision Agreement; and (iii) irrevocably instruct the Nominated Lawyers, by means of instructions in the form attached hereto as <u>Exhibit 1</u>, to keep the Secured Party informed about developments in the Claim, notify the Secured Party upon becoming aware of the receipt of any Claim Proceeds and notify the Secured Party of any change in their representation of Grantor.

(b)    The Grantor hereby agrees to establish the Capital Provider Funding Account as defined in the LW Capital Provision Agreement, and to accept therein (and maintain therein in accordance with the LW Capital Provision Agreement) all amounts provided by Secured Party, in its capacity as Capital Provider, for use by the Grantor pursuant to the LW Capital Provision Agreement and the Trust Agreement.

(c)    Subject to applicable law, the Nominated Lawyers hereby waive their right to take any action (or assist others in so doing) to: (i) contest or challenge the attachment, perfection, or priority of any security interest of Secured Party in any Collateral, whether through settlement, arbitration, or court resolution; (ii) contest or challenge any action taken by Secured Party to enforce its rights in any recovery in the Claim or to dispose of the same; or (iii) otherwise hinder any exercise of remedies by Secured Party, which remedies may be undertaken by Secured Party in its sole discretion, as authorized by this Agreement or Article 9 of the UCC.

5.    **REPRESENTATIONS AND WARRANTIES**

**Grantor hereby makes all the representations and warranties set forth in the LW Capital Provision Agreement as if such representations and warranties were set forth herein, and Grantor further represents and warrants that:**

**5.1    Grantor Information and Status, Authority, etc.**

(a)    Schedule 2 (as such schedule may be amended or supplemented from time to time) is true and accurate in all respects; and except as provided thereon, Grantor has not changed its name, identity, jurisdiction of organization or of principal residence, type of organization, corporate or company structure (e.g., by merger, consolidation, change in organizational form or otherwise), or sole place of business or chief executive office, in each case, within the past five (5) years.

**5.2    Ownership of Collateral and Absence of Other Liens**

(a)    With respect to the Claim, Grantor is the sole legal and beneficial owner of and has good title to (A) such Claim; (B) if applicable, all Intellectual Property and other rights underlying such Claim; and (C) all Collateral related to such Claim; in each case free and clear of any Adverse Claims, except for any lien of the Nominated Lawyers on Claim Proceeds pursuant to an Engagement Agreement with the Nominated Lawyers or pursuant to the Litigation Cost Advance Agreement, the Settlement Agreement, Section 6.1(d) of the Trust Agreement, or the Security Agreement dated as of June 2, 2017 (the "2017 Security Agreement") made by Grantor in favor of Cynthiana LLC and Earlham LLC, each a Delaware limited liability company (collectively the "CE Capital Providers").

(b)    Other than financing statements filed in favor of Secured Party, the DIP Lenders or the CE Capital Providers, no effective financing statement, notice of tax lien or other instrument similar in effect under any applicable law covering all or any part of the Collateral is on file in any filing office or registry where such documents could be filed, including without limitation the United States Patent and Trademark Office, the United States Copyright Office, the various Secretaries of State, and the foreign counterparts of any of the foregoing.

**5.3    Status of Security Interest**

(a)    Except for any lien of the Nominated Lawyers on Claim Proceeds pursuant to an Engagement Agreement with the Nominated Lawyers or pursuant to the Litigation Cost Advance Agreement, Settlement Agreement, Section 6.1(d) of the Trust Agreement or the 2017 Security Agreement, the security interest of Secured Party in the Collateral shall constitute a valid, perfected lien upon the Collateral, third and junior in priority to the liens of the DIP Lenders and the CE Capital Providers in the Collateral and senior in priority to any lien of any other party upon (i) the filing of a financing statement naming Grantor as "debtor" and Secured Party as "secured party" and describing the Collateral in the office of the Secretary of State of the appropriate jurisdiction and/or any foreign counterpart thereof, at Secured Party's election, and (ii) the entry by the Bankruptcy

Court of the order described in Section 2.1(d)(iii) of the LW Capital Provision Agreement.

(b)     Except as set forth in the Litigation Cost Advance Agreement, Settlement Agreement and Trust Agreement, no authorization, consent, approval or other action by, and no notice to or filing with, any Governmental Authority or any other Person is required for either (i) the pledge or grant by Grantor of the security interest hereby created in favor of Secured Party hereunder or (ii) the exercise by Secured Party of any rights or remedies in respect of any Collateral (whether specifically granted or created hereunder or created or provided for by applicable law), except (A) for the filings contemplated by clause (a) above and (B) as may be required in connection with the disposition of any securities, by laws generally affecting the offering and sale of securities.

## 6.    COVENANTS AND AGREEMENTS

Grantor hereby covenants and agrees that:

## 6.1    Grantor Information and Status

(a)     Grantor shall not change its name, identity, jurisdiction of organization or of principal residence, type of organization, corporate or company structure (e.g., by merger, consolidation, change in organizational form or otherwise), or sole place of business or chief executive office, unless it shall have (i) notified Secured Party in writing at least thirty (30) Business Days prior to any such change, identifying such change and providing such other information in connection therewith as Secured Party may reasonably request, and (ii) taken all actions reasonably requested by Secured Party to maintain the continuous validity, perfection and priority of Secured Party's security interest in the Collateral granted or intended to be granted and agreed to hereby which, in the case of any merger or other change in corporate structure shall include, without limitation, executing and delivering to Secured Party a supplement hereto (in form and substance satisfactory to Secured Party) upon completion of such merger or other change in corporate structure confirming the grant of the security interest hereunder.

(b)     Grantor shall maintain its existence at all times in good standing (as a Registered Organization if applicable) in its jurisdiction of organization and shall remain qualified to do business in each other jurisdiction in which the nature of its business so requires.

## 6.2    Ownership of Collateral, Absence of Other Adverse Claims, and Further Duties

(a)     Except for the security interest created by this Agreement, any lien of the Nominated Lawyers on Claim Proceeds pursuant to an Engagement Agreement with the Nominated Lawyers or pursuant to the Litigation Cost Advance Agreement, Settlement Agreement, Section 6.1(d) of the Trust Agreement or the 2017 Security Agreement, (i) Grantor shall not create or suffer to exist any Adverse Claim upon or with respect to any of the Collateral, and (ii) Grantor shall defend the Collateral against all Persons and Governmental Authorities at any time claiming any interest therein.

(b)     Upon Grantor's obtaining knowledge thereof, it shall promptly notify Secured Party in writing of any event that could reasonably be expected to have a material adverse effect on the value of the Collateral or any portion thereof, the ability of Grantor or Secured Party to dispose of the Collateral or any portion thereof, or the rights and remedies of Secured Party in relation thereto, including, without limitation, the levy of any legal process against the Collateral or any portion thereof or, if applicable, a material change in the status or enforceability of any Intellectual Property relevant to the Claim.

(c)     Grantor shall not sell, transfer or assign (by operation of law or otherwise) to any Person any portion of the Collateral unless and to the extent permitted by the LW Capital Provision Agreement.

## 6.3     Status of Security Interest

Grantor shall maintain the security interest of Secured Party hereunder in all Collateral as a valid, perfected lien, third in priority to the liens of the DIP Lenders and the CE Capital Providers in the Collateral and superior in priority to any security interest of any other party.

## 6.4     Reliance

Grantor agrees and acknowledges that the duties contained in Sections 6.1 through 6.3 above are a material inducement for Secured Party to enter into this Agreement, and that Secured Party may, if such covenants are breached, immediately exercise all of the remedies provided herein or under law.  Grantor further agrees that a breach of any of the covenants contained in Sections 6.1 through 6.3 will cause irreparable injury to Secured Party, that Secured Party has no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in Sections 6.1 through 6.3 shall be specifically enforceable against Grantor, and Grantor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that no default has occurred by virtue of a violation of Section 6.1, 6.2 or 6.3 above.  Nothing in this Section shall in any way limit the rights of Secured Party hereunder.

## 6.5     Enforcement Costs

Grantor agrees to pay or reimburse Secured Party for all reasonable costs and expenses incurred by Secured Party in a substantially successful enforcement of any of their rights and remedies hereunder or under the LW Capital Provision Agreement, including but not limited to attorneys' fees and all other costs and expenses of any sale of, collection from or other realization upon all or any part of the Collateral (all costs and expenses described in this Section 6.5, collectively, "**Enforcement Costs**").

## 7.     ACCESS; RIGHT OF INSPECTIONS AND FURTHER ASSURANCES

## 7.1     Access; Right of Inspection

Secured Party shall at all times have full and free access during normal business hours upon three (3) Business Days' prior written notice and during business hours to those books, correspondence and records of Grantor that relate to the Collateral, and Secured Party and its

representatives may examine the same, take extracts there from and make photocopies thereof, and Grantor agrees to render to Secured Party, at Secured Party's cost and expense such clerical and other assistance as may be reasonably requested with regard thereto. Notwithstanding the foregoing, Grantor is not obliged to provide to Secured Party any information that is subject to attorney-client privilege; <u>provided</u> that if Grantor withholds from Secured Party information otherwise required by this Agreement on the basis of attorney-client privilege or any similar doctrine of confidentiality, it shall provide prompt notice thereof to Grantor.

## 7.2    Further Assurances

(a)    Grantor agrees that from time to time, at the expense of Grantor, it shall promptly execute and deliver all further instruments and documents and take all further action, that may be necessary or desirable, or that Secured Party may reasonably request, in order to create and/or maintain the validity, perfection or priority of, and protect, any security interest granted or purported to be granted hereby or to enable Secured Party to exercise and enforce its rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, Grantor shall:

(i)    file, or authorize the filing of, such financing or continuation statements, or amendments thereto, and execute and deliver such other agreements, stock certificates and other tangible financial assets, instruments, mortgages, endorsements, stock powers, powers of attorney or notices, or take such other actions as may be necessary or desirable, or as Secured Party may reasonably request, in order to effect, reflect, perfect and preserve the security interests granted or purported to be granted hereby;

(ii)    at Secured Party's request, appear in and defend any action or proceeding that may affect Grantor's title to, or Secured Party's security interest in, all or any part of the Collateral;

(iii)    furnish Secured Party with such information regarding the Collateral, including, without limitation, the location thereof, as Secured Party may reasonably request from time to time; and

(iv)    upon request by Secured Party, join with Secured Party in notifying any Opponent or issuer of a Supporting Obligation of Secured Party's security interest hereunder.

(b)    Grantor hereby authorizes Secured Party to file a Record or Records, including financing or continuation statements, other security agreements and amendments, and supplements to any of the foregoing, in any jurisdictions and with any filing offices as Secured Party may determine, in its sole discretion, are necessary or advisable to perfect or otherwise protect the security interest granted to Secured Party herein; and Grantor hereby ratifies such actions if taken by Secured Party prior to execution and delivery of this Agreement. Such financing statements may describe the Collateral in the same manner as described herein or may contain an indication or description of the Collateral that describes such property in any other manner as Secured Party may determine, in its sole discretion, is

necessary, advisable or prudent to ensure the perfection of the security interest in the Collateral granted to Secured Party herein.  Grantor shall furnish to Secured Party from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as Secured Party may reasonably request, all in reasonable detail.

**8.**    REMEDIES

**8.1    Generally**

Subject to the rights of the DIP Lenders to exercise their remedies pursuant to the Litigation Cost Advance Agreement and the rights of the CE Capital Providers to exercise their remedies pursuant to the 2017 Security Agreement:

(a)    If (i) Grantor has breached Section 4 hereof, (ii) Grantor has materially breached any provision hereof other than Section 4, or any provision of the LW Capital Provision Agreement, and any such breach remains in existence for five (5) days following notice thereof (a breach as described in the foregoing clause (i) or an uncured breach as described in this clause (ii), a "**Material Breach**"), (iii) a Remedy Event under the LW Capital Provision Agreement occurs or (iv) an Insolvency Proceeding has been commenced by or against Grantor and has not been dismissed within thirty (30) days, then Secured Party may exercise in respect of the Collateral, in addition to all other rights and remedies provided for herein or otherwise available to it at law or in equity, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral) to collect, enforce or satisfy any Secured Obligations then owing, whether by acceleration or otherwise, and also may pursue any of the following separately, successively or simultaneously:

(A)    notify the Account Debtor or other Person obligated on the Collateral to make payment or otherwise render performance to or for the benefit of Secured Party;

(B)    prior to the disposition of the Collateral, prepare the Collateral for disposition in any manner to the extent Secured Party deems appropriate; and

(C)    without notice except as specified below or under the UCC, sell, assign, transfer or otherwise dispose of the Collateral or any part thereof in one or more parcels at public or private sale, at any office of Secured Party or elsewhere, for cash, on credit or for future delivery, at such time or times and at such price or prices and upon such other terms as Secured Party may deem commercially reasonable.

(b)    Secured Party may be the purchaser of any or all of the Collateral at any public or private (to the extent the portion of the Collateral being privately sold is of a kind that is customarily sold on a recognized market or the subject of widely distributed standard price quotations) sale in accordance with the UCC, and Secured Party shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all

or any portion of the Collateral sold at any such sale made in accordance with the UCC, to use and apply any of the Secured Obligations as a credit on account of the purchase price for any Collateral payable by Secured Party at such sale; *provided, however, that* any bid by Secured Party may not include a "credit bid" in respect of any Secured Obligations unless the cash proceeds of such bid are sufficient to satisfy in full the Senior Obligations and the Second Ranking Obligations (as each such term is defined in the Subordination Agreement). Each purchaser at any such sale shall hold the property sold absolutely free from any claim or right on the part of Grantor, and Grantor hereby waives (to the extent permitted by applicable law) all rights of redemption, stay and/or appraisal which it now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted. Grantor agrees that, to the extent notice of sale shall be required by law, at least ten (10) days' notice to Grantor of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification.

(c)    Secured Party shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed there for, and such sale may, without further notice, be made at the time and place to which it was so adjourned. Grantor agrees that it would not be commercially unreasonable for Secured Party to dispose of the Collateral or any portion thereof by using internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets. Grantor hereby waives any claims against Secured Party arising by reason of the fact that the price at which any Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale, even if Secured Party accepts the first offer received and does not offer such Collateral to more than one offeree. If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all the Secured Obligations, Grantor shall be liable for the deficiency and the fees of any attorneys employed by Secured Party to collect such deficiency.

(d)    Grantor further agrees that a breach of any of the covenants contained in this Section will cause irreparable injury to Secured Party, that Secured Party has no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this Section shall be specifically enforceable against Grantor, and Grantor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that no default has occurred giving rise to the Secured Obligations becoming due and payable prior to their stated maturities. Nothing in this Section shall in any way limit the rights of Secured Party hereunder.

(e)    Secured Party may sell the Collateral without giving any warranties as to the Collateral. Secured Party may specifically disclaim or modify any warranties of title or the like. This procedure shall not be considered to adversely affect the commercial reasonableness of any sale of the Collateral.

(f)    Secured Party shall have no obligation to marshal any of the Collateral.

**8.2     Application of Proceeds**

Except as expressly provided elsewhere in this Agreement, all proceeds received by Secured Party in respect of any sale of, any collection from, or other realization upon all or any part of the Collateral shall be applied in full or in part by Secured Party in the following order of priority: first, against secured obligations of the DIP Lenders; second, against secured obligations of the CE Capital Providers; third, against the Secured Obligations; fourth, to the extent of any excess of such proceeds, to the payment to any subordinate secured party of all amounts to which such subordinate secured party is lawfully entitled; and fifth, to the extent of any further excess of such proceeds, to the payment to or upon the order of Grantor or as a court of competent jurisdiction may direct.

**8.3     Cash Proceeds**

Upon the occurrence of a Material Breach, proceeds of any Collateral received by Grantor consisting of Cash Proceeds shall be held by Grantor in trust for Secured Party, segregated from other funds of Grantor, and shall, forthwith upon receipt by Grantor, be turned over to Secured Party in the exact form received by Grantor (duly indorsed by Grantor to Secured Party, if required) and held by Secured Party. Any Cash Proceeds received by Secured Party (whether from Grantor or otherwise) may, in the sole discretion of Secured Party, (A) be held by Secured Party as collateral security for the Secured Obligations (whether matured or unmatured) and/or (B) then or at any time thereafter may be applied by Secured Party against the Secured Obligations then due and owing.

**9.     CONTINUING SECURITY INTEREST**

This Agreement shall create a continuing security interest in the Collateral and shall remain in full force and effect until the payment in full of all Secured Obligations, be binding upon Grantor, its successors and assigns, and inure, together with the rights and remedies of Secured Party hereunder, to the benefit of Secured Party and its successors, transferees and assigns. Upon the payment in full of all Secured Obligations, this Agreement, and the security interest granted hereby, shall automatically terminate without any further action by any Person and all rights to the Collateral shall revert to Grantor.   Upon any such termination Secured Party shall execute and deliver to Grantor or otherwise authorize the filing of such documents as Grantor shall reasonably request to evidence such termination, including UCC termination statements.

**10.     STANDARD OF CARE; SECURED PARTY MAY PERFORM**

The powers conferred on Secured Party hereunder are solely to protect their interest in the Collateral and shall not impose any duty upon Secured Party to exercise any such powers. Except for the exercise of reasonable care in the custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, Secured Party shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral.   Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of Collateral in its possession if such Collateral is accorded treatment substantially equal to that which Secured Party accords its own property.   Secured Party shall not, and each of its directors, officers, employees and agents shall

not, be liable for failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so, and shall not be under any obligation to sell or otherwise dispose of any Collateral upon the request of Grantor or otherwise.  If Grantor fails to perform any agreement contained herein, Secured Party may itself perform, or cause performance of, such agreement, and the expenses of Secured Party incurred in connection therewith shall be payable by Grantor.

## 11.    NOTICES

### 11.1    Effectiveness of Notices

Any notice or other communication in respect of this Agreement shall be in writing and may be given in any manner described below to the address or number provided for the recipient on Schedule 1 and shall be deemed effective as indicated:

(a)    if delivered in person or by courier, on the date it is received;

(b)    if sent by certified or registered mail or the equivalent (return receipt requested), on the date it is received;

(c)    if sent by facsimile transmission, on the date the sender receives an acknowledgement from the recipient; or

(d)    if sent by e-mail, on the date the sender receives an acknowledgement from the recipient, unless the date of receipt is not a Business Day or the communication is received after the close of business on a Business Day, in which case such communication shall be deemed given and effective on the first following day that is a Business Day.  Notices to Grantor shall be copied to the Nominated Lawyers, and the time of effectiveness of each such notice shall be the effective time of receipt by either Grantor or the Nominated Lawyers, whichever occurs earlier.

### 11.2    Change of Details

Either party may by notice to the other in accordance with Section 11.1 change the address, facsimile number or e-mail details at which notices or other communications are to be given to it.

## 12.    MISCELLANEOUS

### 12.1    Remedies Cumulative

The rights, powers, remedies and privileges provided in this Agreement are cumulative; may be exercised singularly, concurrently or successively at the Secured Party's option; and may be exercised or enforced without constituting a bar to the exercise or enforcement of any other such rights, powers, remedies and privileges.

### 12.2    Covenants Independent

All covenants hereunder shall be given independent effect so that if a particular action or condition is not permitted by any of such covenants, the fact that it would be permitted by an

exception to, or would otherwise be within the limitations of, another covenant shall not avoid the occurrence of a breach if such action is taken or condition exists.

## 12.3    Successors and Assigns

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

## 12.4    No Transfer

Grantor shall not transfer or delegate any right or obligation in or under this Agreement without the prior written consent of Secured Party, except that with thirty (30) days' advance written notice to Secured Party, Grantor may make a transfer of all (but not less than all) of its rights and obligations under this Agreement pursuant to a consolidation or amalgamation with, or merger with or into, or transfer of all or substantially all its assets to, another entity (but without prejudice to any other right or remedy of Secured Party hereunder), provided that such transfer would not cause a Material Adverse Effect.   Secured Party may assign its rights and obligations under this Agreement, in whole or in part, to another Person without the consent of Grantor. Secured Party may also appoint a servicing entity to administer this Agreement.   Any purported transfer that is not in compliance with this Section shall be void.

## 12.5    Amendments

No amendment, modification or waiver in respect of this Agreement shall be effective unless in writing and executed by each of the parties.

## 12.6    Entire Agreement

This Agreement and the other Transaction Documents collectively constitute the entire agreement and understanding of the parties with respect to their subject matter and supersede all oral communication and prior writings with respect thereto.

## 12.7    Counterparts

This Agreement (and each amendment, modification and waiver in respect of it) may be executed and delivered in counterparts (including by facsimile or digital transmission), each of which shall be deemed an original.

## 12.8    No Waiver

A failure or delay in exercising any right, power or privilege in respect of this Agreement shall not be presumed to operate as a waiver, and a single or partial exercise of any right, power or privilege shall not be presumed to preclude any subsequent or further exercise, of that right, power or privilege or the exercise of any other right, power or privilege.

**12.9    Severability**

If any term of this Agreement, or the application thereof to either party or any circumstance, is held to be unenforceable, invalid or illegal (in whole or in part) for any reason (in any relevant jurisdiction), the remaining terms, modified by the deletion of the unenforceable, invalid or illegal portion, shall continue in full force and effect, and such unenforceability, invalidity, or illegality shall not otherwise affect that of the remaining terms, so long as this Agreement as so modified continues to express, without material change, the original intentions of the parties as to the subject matter hereof and the deletion of such portion of this Agreement shall not substantially impair the respective expectations or reciprocal obligations of the parties or the practical realization of the benefits that would otherwise be conferred upon the parties.  The parties shall endeavour in good faith negotiations to replace any prohibited or unenforceable provision with a valid provision, the economic effect of which comes as close as possible to that of the prohibited or unenforceable provision.

**13.    APPLICABLE LAW AND JURISDICTION**

**THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER AND ALL CLAIMS AND CONTROVERSIES ARISING OUT OF THE SUBJECT MATTER HEREOF WHETHER SOUNDING IN CONTRACT LAW, TORT LAW OR OTHERWISE SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW PROVISIONS THAT WOULD RESULT IN THE APPLICATION OF ANY OTHER LAW (OTHER THAN ANY MANDATORY PROVISIONS OF THE UCC RELATING TO THE LAW GOVERNING PERFECTION, THE EFFECT OF PERFECTION OR NONPERFECTION AND THE PRIORITY OF THE SECURITY INTEREST).**

**SUBJECT TO CLAUSE (E) OF THE FOLLOWING SENTENCE, AND SOLELY FOR THE PURPOSES OF ENFORCEMENT OF THIS AGREEMENT AND NO OTHER PURPOSE, ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST ANY PARTY ARISING OUT OF OR RELATING HERETO, OR ANY OF THE OBLIGATIONS, SHALL BE BROUGHT EXCLUSIVELY IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.  IF THE BANKRUPTCY COURT DECLINES JURISDICTION, THE JUDICIAL PROCEEDING MAY BE BROUGHT IN ANOTHER COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK, CITY OF NEW YORK, BOROUGH OF MANHATTAN.  BY EXECUTING AND DELIVERING THIS AGREEMENT, GRANTOR IRREVOCABLY (A) ACCEPTS GENERALLY AND UNCONDITIONALLY THE EXCLUSIVE JURISDICTION AND VENUE OF SUCH COURTS; (B) WAIVES ANY DEFENSE OF FORUM NON CONVENIENS; (C) AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE GRANTOR AT ITS ADDRESS PROVIDED IN ACCORDANCE WITH THIS AGREEMENT; (D) AGREES THAT SERVICE AS PROVIDED IN CLAUSE (C) ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER THE APPLICABLE PARTY IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES**

EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT; AND (E) AGREES THAT SECURED PARTY RETAINS THE RIGHT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW.

EACH OF THE PARTIES HERETO HEREBY AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING HEREUNDER OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER HEREOF.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER HEREOF, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  EACH PARTY HERETO ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS AGREEMENT, AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS.  EACH PARTY HERETO FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED THIS WAIVER WITH COUNSEL AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH COUNSEL.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING OTHER THAN BY A MUTUAL WRITTEN WAIVER SPECIFICALLY REFERRING TO THIS SECTION AND EXECUTED BY EACH OF THE PARTIES HERETO, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS HERETO.  IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

14.    INTENTIONALLY OMITTED.

15.    SUBORDINATION AGREEMENT

The terms and conditions of this Agreement are expressly subject to the terms and conditions of the Subordination Agreement.

*[Remainder of this page intentionally left blank.]*

<u>Signature Page to Security Agreement</u>

IN WITNESS WHEREOF, Grantor and Secured Party have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**SECURED PARTY**:

**NOMINATED LAWYERS**:

Accepted and Agreed (as to Section 4 only):

**LW Holdco VI LLC**

**Binder & Schwartz LLP**

By _____

By: _____, a Partner

Name: Boaz Weinstein

Title: Authorized Signatory

_____
Print Name

**GRANTOR:**

**TRUST MONITOR:**

Motors Liquidation Company Avoidance

Acknowledged and approved: Action Trust

By: Wilmington Trust Company, as Trust Administrator and Trustee

_____
Arthur Gonzalez, as Trust Monitor

By _____

Name:

Title:

Signature Page to Security Agreement

IN WITNESS WHEREOF, Grantor and Secured Party have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**SECURED PARTY:**

**LW Holdco VI LLC**

By _____
Name:
Title:

**NOMINATED LAWYERS:**

Accepted and Agreed (as to Section 4 only):

**Binder & Schwartz LLP**

By: _____, a Partner

_Neil S. Binder_
Print Name

**GRANTOR:**

Motors Liquidation Company Avoidance

By: Wilmington Trust Company, as Trust Administrator and Trustee

By _____
Name: _Beth Andrews_
Title: _Vice President_

**TRUST MONITOR:**

Acknowledged and approved: Action Trust

_____
Arthur Gonzalez, as Trust Monitor

Signature Page to Security Agreement

IN WITNESS WHEREOF, Grantor and Secured Party have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**SECURED PARTY:**

**LW Holdco VI LLC**

By _____
Name:
Title:

**NOMINATED LAWYERS:**

Accepted and Agreed (as to Section 4 only):

**Binder & Schwartz LLP**

By: _____, a Partner

_____
Print Name

**GRANTOR:**

Motors Liquidation Company Avoidance

By: Wilmington Trust Company, as Trust Administrator and Trustee

By _____
Name: Beth Andrews
Title: Vice President

**TRUST MONITOR:**

Acknowledged and approved: Action Trust

_____
Arthur Gonzalez, as Trust Monitor

**EXHIBIT 1**

**IRREVOCABLE INSTRUCTIONS TO COUNSEL**

As of January 24, 2019

Binder & Schwartz LLP
366 Madison Avenue
6th Floor
New York, NY 10017
Attention: Neil Binder

As you know, the Motors Liquidation Company Avoidance Action Trust ("**Us**" "**We**", or "**Client**") has retained Binder & Schwartz LLP ("**You**" or "**Counsel**") to represent Us in claims against the Opponent.  We are entering into a capital provision agreement (the "**LW Capital Provision Agreement**") and a Security Agreement (the "**Security Agreement**") (together with the LW Capital Provision Agreement, the "**Agreements**") with LW Holdco VI LLC (the "**LW Capital Provider**").   Copies of the Agreements are attached to this letter.   All capitalized terms not defined in this letter refer to defined terms in each Agreement.

Except as may be otherwise provided in an order of the Bankruptcy Court entered after the date hereof, in connection with the Agreements, We hereby give You the following irrevocable instructions:

1.    We instruct You to keep the LW Capital Provider reasonably informed about developments in the Claim, and about developments in efforts to monetize the Claim.  We further permit and instruct You, pursuant to the LW Capital Provision Agreement, to share information with LW Capital Provider as provided therein.

2.    We instruct You to promptly inform the LW Capital Provider in writing upon your becoming aware of the receipt by Grantor, or any other party on behalf of Grantor, of any funds that would arguably be part of the Claim Proceeds (as defined in the Security Agreement).

3.    We instruct You to promptly notify the LW Capital Provider in writing in the event Your representation of Us terminates or changes in a material way, including but not limited to any modification of any Engagement Agreement or any other agreement relating to Your compensation.   Such notification shall include all specific details of the change.

The provisions of these Irrevocable Instructions to Counsel are for the benefit of Client, and also for the benefit of the LW Capital Provider and its Affiliates, permitted successors and assigns (collectively, the "**Third Parties**").   The LW Capital Provider would not have entered into the Agreements without these Irrevocable Instructions and Your acknowledgement hereof, and the Agreements are of significant economic value to Us.   Client and Counsel explicitly agree that the Third Parties are express third-party beneficiaries hereunder, and the Third Parties shall be permitted to enforce this letter agreement as if they were a party hereto.

*[Remainder of this page intentionally left blank.]*

Please note that the directions contained in this Irrevocable Instruction to Counsel are irrevocable from the date hereof except in the event the LW Capital Provider grants Us written permission to make such revocation.

Very truly yours,

**MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST**

By:    Wilmington Trust Company, as Trust Administrator and Trustee

By
Name:    *Beth Andrews*
Title:    *Vice President*

Address:    Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1615
Attn: Corporate Trust Administration
Telephone: (302) 651-1000
Fax: (302) 636-4145
Email: bandrews@wilmingtontrust.com

Accepted and agreed,

BINDER & SCHWARTZ LLP

By
Name:
Title:    Partner

Acknowledged and approved:

ARTHUR GONZALEZ, as Trust Monitor

Please note that the directions contained in this Irrevocable Instruction to Counsel are irrevocable from the date hereof except in the event the LW Capital Provider grants Us written permission to make such revocation.

Very truly yours,

**MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST**

By:    Wilmington Trust Company, as Trust Administrator and Trustee

By
Name:    *Beth Andrews*
Title:    *Vice President*

Address:    Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1615
Attn: Corporate Trust Administration
Telephone: (302) 651-1000
Fax: (302) 636-4145
Email: bandrews@wilmingtontrust.com

Accepted and agreed,

BINDER & SCHWARTZ LLP

By
Name:    *Neil S. Binder*
Title:    Partner

Acknowledged and approved:

_____

ARTHUR GONZALEZ, as Trust Monitor