# Exhibit G

09-50026-mg    Doc 14413-7    Filed 02/04/19    Entered 02/04/19 15:31:37    Exhibit G
Pg 2 of 19

*Execution Version*

# SUBORDINATION AGREEMENT

Among

**UNITED STATES DEPARTMENT OF TREASURY AND EXPORT DEVELOPMENT CANADA,**
as DIP Lenders

**CYNTHIANA LLC AND EARLHAM LLC,**
as CE Capital Providers

**LW HOLDCO VI LLC,**
as LW Capital Provider

and

**MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST,**
a Delaware Statutory Trust
Dated as of January 24, 2019

4538427_13

4538427.13

# SUBORDINATION AGREEMENT

This SUBORDINATION AGREEMENT (this "***Agreement***") is made as of January 24, 2019, by and among (i) the United States Department of Treasury and Export Development Canada, as lenders under the DIP Credit Agreement (collectively, the "***DIP Lenders***"); (ii) Cynthiana LLC, a limited liability company formed under the laws of the State of Delaware, and Earlham LLC, a limited liability company formed under the laws of the State of Delaware (collectively, the "***CE Capital Providers***"); (iii) LW Holdco VI LLC, a limited liability company formed under the laws of the State of Delaware (the "***LW Capital Provider***"); and (iv) Motors Liquidation Company Avoidance Action Trust, an entity formed under the laws of Delaware (the "***Trust***", and together with the DIP Lenders, the CE Capital Providers and the LW Capital Provider, the "***Parties***").  Capitalized terms not defined herein shall have the meaning ascribed thereto in the Fourth Amended and Restated Motors Liquidation Company Avoidance Action Trust Agreement (the "***Trust Agreement***").

## RECITALS

WHEREAS, prior to August 2016, there was a dispute between the Official Committee of Unsecured Creditors of Motors Liquidation Company (the "***Committee***") and the DIP Lenders as to entitlements to Avoidance Action Proceeds, which dispute was resolved by mutual agreement (the "***Litigation Settlement***") pursuant to which, among other things, (i) the DIP Lenders provided the Litigation Cost Advance and (ii) the DIP Lenders shall be entitled to be repaid the Litigation Cost Advance out of Distributable Trust Assets; and

WHEREAS, the Trust Administrator and the Trust Monitor determined that the Avoidance Action Trust Administrative Cash and Supplemental Avoidance Action Trust Cash held at the time of the Litigation Settlement by the Trust was insufficient to satisfy projected fees, costs and expenses of the Trust, and, as an integral part of the Litigation Settlement, the DIP Lenders agreed to provide the Litigation Cost Advance to the Trust on the terms set forth in that certain agreement, dated July 14, 2016, executed by the Trust and the DIP Lenders (the "***Litigation Cost Advance Agreement***"), which included, among other things, that the DIP Lenders would provide the Litigation Cost Advance to fund the prosecution of the Avoidance Action; and

WHEREAS, on August 24, 2016, the Bankruptcy Court entered an order approving the Settlement Agreement and the Litigation Cost Advance Agreement; and

WHEREAS, one of the preconditions to the DIP Lenders' provision of the Litigation Cost Advance was the Trust's agreement, as reflected in Article 6.1(d)(i) of the Second Amended and Restated Trust Agreement, that any additional litigation funding provided to the Trust would be (i) junior and subordinate to the Litigation Cost Advance and any other amounts owed to the DIP Lenders on account of prior funding of the Trust and (ii) subject to a form of subordination acceptable to the DIP Lenders in all respects; and

WHEREAS, subsequent to entering into the Litigation Cost Advance Agreement, the Trust Administrator and the Trust Monitor determined that the Avoidance Action Trust Administrative Cash and Supplemental Avoidance Action Trust Cash held by the Trust remained insufficient to satisfy projected fees, costs and expenses of the Trust; and

4538427_13

WHEREAS, with the consent of the DIP Lenders, the Trust Administrator and Trust Monitor entered into that certain capital provision agreement, dated June 2, 2017 (including any related security agreement, the "***CE Capital Provision Agreement***"), with the CE Capital Providers, pursuant to which, among other things, the CE Capital Providers agreed to provide up to $15,000,000 in additional funding to the Trust (the "***CE Supplemental Capital***") as Other Supplemental Cash; and

WHEREAS, on or prior to the date hereof, the Trust Administrator and the Trust Monitor have determined that the Avoidance Action Trust Administrative Cash and Supplemental Avoidance Action Trust Cash currently held by the Trust remain insufficient to satisfy projected fees, costs and expenses of the Trust; and

WHEREAS, with the consent of the DIP Lenders, the Trust Administrator and Trust Monitor entered into a capital provision agreement, dated January 21, 2019 (including any related security agreement, the "***LW Capital Provision Agreement***"), with the LW Capital Provider, pursuant to which, among other things, the LW Capital Provider agreed to provide up to $10,000,000 in additional funding to the Trust (the "***LW Supplemental Capital***") as Other Supplemental Cash; and

WHEREAS, pursuant to the DIP Lenders' consent rights under Article 6.1(d)(i) of the Third Amended and Restated Trust Agreement, the Trust's and the LW Capital Provider's entry into a form of subordination acceptable to the DIP Lenders is a condition of the DIP Lenders' consent to (i) the Trust's entry into the LW Capital Provision Agreement and (ii) the LW Capital Provider's provision of the LW Supplemental Capital to the Trust.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the adequacy and legal sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

**SECTION 1.1**    General Definitions.  As used in this Agreement, the terms defined in the Preamble and Recitals hereto shall have the respective meanings specified therein, and the following terms shall have the following meanings:

"Distribution Proceeding" means and includes any distribution of all or substantially all of the assets of the Trust or any liquidation, dissolution, winding up or reorganization of the Trust or its business whether by judicial or court proceedings or otherwise, including, without limitation, any sale, receivership, insolvency, arrangement, reorganization, bankruptcy, assignment for the benefit of creditors, marshalling of assets and liabilities or other proceedings by or against the Trust under any federal or state bankruptcy, reorganization, insolvency or other law or laws relating to the relief of debtors, readjustment of indebtedness, reorganization or composition.

"Governmental Authority" shall mean and include any federal, state, municipal, national, or other government, governmental department, commission, board, bureau, court, agency, or

- 2 -

instrumentality, or political subdivision thereof, or any entity or officer exercising executive, legislative, judicial, regulatory, or administrative functions of or pertaining to any government or any court, in each case whether associated with a state of the United States, the United States, another domestic government, or a foreign entity or government.

"LW Capital Provider's Entitlement" has the meaning ascribed to it in the LW Capital Provision Agreement.

"Paid in Full" or "Payment in Full" shall mean the payment in full in cash of all Senior Obligations, Second Ranking Obligations or LW Capital Provider's Entitlement, as applicable.

"Person" or "person" shall mean and include a natural person, a company, a partnership, a joint venture, a trust, an unincorporated organization or association or a government or any department or agency thereof.

"Second Ranking Obligations" means collectively and includes all present indebtedness, liabilities, and obligations of the Trust to the CE Capital Providers of any kind and nature whatsoever now existing under, or as a result of, the CE Capital Provision Agreement.

"Senior Obligations" means collectively and includes all present and future indebtedness, liabilities, and obligations of the Trust to the DIP Lenders of any kind and nature whatsoever both now existing and hereafter arising under, or as a result of, the Litigation Cost Advance Agreement, the Settlement Agreement and the Trust Agreement.

"Standstill Notice" means a written notice from the LW Capital Provider to the DIP Lenders and the CE Capital Providers identified by its terms as a "Standstill Notice" for purposes of this Agreement and stating that a default under the LW Capital Provision Agreement has occurred and is continuing and that, as a consequence thereof, the LW Capital Provider has declared all of the Subordinated Obligations to be immediately due and payable.

"Standstill Period" means the period of 90 days commencing on the date on which the DIP Lenders and the CE Capital Providers receive the applicable Standstill Notice.

"Subordinated Obligations" means collectively and includes all present and future indebtedness, liabilities, and obligations of the Trust to the LW Capital Provider of any kind and nature whatsoever both now existing and hereafter arising under, or as a result of, the LW Capital Provision Agreement and the Trust Agreement.

**SECTION 1.2**    Other Definitional Provisions.  The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and section, subsection, schedule and exhibit references are references to sections or subsections of, or schedules or exhibits to, as the case may be, this Agreement unless otherwise specified.   As used herein, the singular number shall include the plural, the plural the singular and the use of the masculine, feminine or neuter gender shall include all genders, as the context may require.

## ARTICLE II
## SUBORDINATION

**SECTION 2.1** <u>Subordination of Subordinated Obligations</u>. The Trust and the LW Capital Provider hereby subordinate the payment of all of the Subordinated Obligations to the prior Payment in Full of the Senior Obligations and the Second Ranking Obligations and agree that all of the right, title and interest of the LW Capital Provider in and to the payment of the Subordinated Obligations shall at all times be subject, junior and subordinate to the right, title and interest of the DIP Lenders in and to the Payment in Full of the Senior Obligations and to the right, title and interest of the CE Capital Providers in and to the Payment in Full of the Second Ranking Obligations.

**SECTION 2.2** <u>Payments on Subordinated Obligations Etc</u>. The LW Capital Provider will not take, demand or receive, and the Trust will not make, pay, distribute, give or otherwise permit, directly or indirectly, by set-off, redemption, purchase, distribution or otherwise, any payment or prepayment (whether as principal, interest or otherwise, and whether in cash, securities or property) on all or any part of the Subordinated Obligations, until and unless (a) all of the Senior Obligations have been Paid in Full in accordance with the Litigation Cost Advance Agreement, the Settlement Agreement and the Trust Agreement, including, without limitation, payment of any interest at the applicable contract rates accruing after the institution of any Distribution Proceeding, whether or not allowed as a claim in any such Distribution Proceeding and (b) all of the Second Ranking Obligations have been Paid in Full in accordance with the CE Capital Provision Agreement and the Trust Agreement, including, without limitation, payment of any interest at the applicable contract rates accruing after the institution of any Distribution Proceeding, whether or not allowed as a claim in any such Distribution Proceeding.

In the event that any payment, recovery or distribution of the Subordinated Obligations of any kind or character, whether in cash, property or securities, and whether directly, by exercise of any right of set-off, exercise of any remedy with respect to collateral, or otherwise, shall be received by the LW Capital Provider, such payment, recovery or distribution will be received by the LW Capital Provider solely in trust as agent for the DIP Lenders and the CE Capital Providers, and the LW Capital Provider will immediately turn the same over to the DIP Lenders for application to the Senior Obligations, and to the extent the Senior Obligations have been Paid in Full, to the CE Capital Providers for application to the Second Ranking Obligations, in each case in the form received except for the endorsement(s) of the LW Capital Provider where appropriate, which endorsement(s) the LW Capital Provider agrees to make forthwith. Until so turned over, the LW Capital Provider shall hold such payment in trust for the DIP Lenders and the CE Capital Providers. If the LW Capital Provider fails to so endorse any such payment where necessary or appropriate, the LW Capital Provider hereby irrevocably constitutes and appoints the DIP Lenders (or if the Senior Obligations have been Paid in Full, the CE Capital Providers) as attorneys-in-fact for the LW Capital Provider with full power to make any such endorsement, and with full power of substitution.

**SECTION 2.3** <u>Distribution Proceeding</u>. Upon any Distribution Proceeding by or against the Trust, any payment, recovery or distribution of any kind or character, whether in cash, property or securities which, but for the provisions of this Agreement, would be payable or deliverable to the LW Capital Provider upon or in respect of the Subordinated Obligations, shall

be paid or delivered by the LW Capital Provider or any person making such payment, recovery or distribution (whether a trustee in bankruptcy, debtor in possession, a receiver, custodian, liquidating trustee or otherwise) directly to the DIP Lenders for application by the DIP Lenders as a payment or prepayment on account of the Senior Obligations (and to the extent the Senior Obligations have been Paid in Full, to the CE Capital Providers for application by the CE Capital Providers as a payment or prepayment on account of the Second Ranking Obligations), and the LW Capital Provider shall not receive any such payment, recovery or distribution or any benefit therefrom unless and until the Senior Obligations and the Second Ranking Obligations have been Paid in Full.  In the event that, notwithstanding the foregoing, any payment, recovery or distribution of the assets of the Trust of any kind or character, whether in cash, property or securities, and whether directly, by exercise of any right of set-off or otherwise, shall be received by the LW Capital Provider before all of the Senior Obligations and Second Ranking Obligations have been Paid in Full, such payment, recovery or distribution will be received by the LW Capital Provider solely as agent for the DIP Lenders and the CE Capital Providers, and the LW Capital Provider will immediately turn the same over to the DIP Lenders for application to the Senior Obligations (and to the extent the Senior Obligations have been Paid in Full, to the CE Capital Providers for application to the Second Ranking Obligations) in the form received except for the endorsement(s) of the LW Capital Provider where appropriate, which endorsement(s) the LW Capital Provider agrees to make forthwith.  Until so turned over, the LW Capital Provider shall hold such payment, recovery or distribution in trust for the DIP Lenders and the CE Capital Providers.  If the LW Capital Provider fails to so endorse any such payment, recovery or distribution where necessary or appropriate, the LW Capital Provider hereby irrevocably constitutes and appoints the DIP Lenders (or if the Senior Obligations have been Paid in Full, the CE Capital Providers) as attorneys-in-fact for the LW Capital Provider with full power to make any such endorsement, and with full power of substitution.

**SECTION 2.4** <u>Enforcement</u>.

(a) The LW Capital Provider irrevocably authorizes and empowers the DIP Lenders to demand, sue for, collect and receive any payment or distribution of any kind or character to which the LW Capital Provider may be entitled with respect to any Distribution Proceeding and give acquittance therefor, and to file claims and proofs of claims in any Distribution Proceeding, vote such claims and take such other actions in the DIP Lenders' name, or in the LW Capital Provider's name or otherwise, as the DIP Lenders may deem necessary or advisable for the enforcement of the provisions of this Agreement.  Upon any Distribution Proceeding, the LW Capital Provider hereby agrees to properly take such action as may be reasonably requested at any time and from time to time by the DIP Lenders to collect the Subordinated Obligations for the DIP Lenders' account (including, without limitation, to declare all of the Subordinated Obligations to be due and payable), to file appropriate proofs of claims in respect thereof, to file motions for relief from any applicable bankruptcy stays, and to execute and deliver such powers of attorney, assignments or other instruments as the DIP Lenders may request in order to enable the DIP Lenders to enforce any and all claims upon or in respect of the Subordinated Obligations and to collect and receive all payments, recoveries or distributions which may be payable or deliverable at any time upon or in respect of the Subordinated Obligations, or, alternatively, to permit the DIP Lenders to take such actions in the LW Capital Provider's name. Any and all moneys so collected or received by the DIP Lenders shall be retained indefeasibly by the DIP Lenders for application to the Senior Obligations (whether matured or unmatured);

provided, that upon the indefeasible payment to the DIP Lenders of moneys collected or received on account of the Subordinated Obligations, the Senior Obligations, and the Second Ranking Obligations (if any) in an aggregate amount in excess of the matured and unmatured Senior Obligations, the DIP Lenders will (x) first, pay over to the CE Capital Providers the portion of such excess to which the CE Capital Providers are entitled on account of the Second Ranking Obligations, if any, and (y) second, pay over to the LW Capital Provider the portion of such excess to which the LW Capital Provider is entitled on account of the Subordinated Obligations, if any.

(b)     If the Senior Obligations have been indefeasibly Paid in Full, the rights of the DIP Lenders pursuant to the foregoing clause (a) shall be deemed to be rights of the CE Capital Providers, *mutatis mutandis*; provided that any and all moneys collected or received by the CE Capital Providers as a result of their exercise of such rights shall be retained indefeasibly by the CE Capital Providers for application to the Second Ranking Obligations (whether matured or unmatured), provided that upon the indefeasible payment to the CE Capital Providers of moneys collected or received on account of the Subordinated Obligations and the Second Ranking Obligations (if any) in an aggregate amount in excess of the matured and unmatured Second Ranking Obligations, the CE Capital Providers will pay over to the LW Capital Provider the portion of such excess to which the LW Capital Provider is entitled on account of the Subordinated Obligations, if any.

**SECTION 2.5**     <u>Matters Concerning Subordinated Obligations</u>.  Until the Senior Obligations and the Second Ranking Obligations have been Paid in Full, the LW Capital Provider, without the prior written consent of the DIP Lenders and the CE Capital Providers, will not (i) accelerate the maturity of any of the Subordinated Obligations; (ii) exercise any rights or remedies or take any action or proceeding to collect or enforce in any manner whatsoever any of the Subordinated Obligations, other than to file a claim and otherwise exercise its rights in a Distribution Proceeding, consistent with the other terms of this Agreement; (iii) join with any other creditors of the Trust in filing any petition commencing any Distribution Proceeding against or in respect of the Trust; or (iv) exercise any remedy with respect to any collateral securing the Subordinated Obligations; provided, that after the expiration of the Standstill Period, the LW Capital Provider may take any of the foregoing actions if the exercise of remedies with respect to the Senior Obligations and the Second Ranking Obligations is not being diligently pursued by the DIP Lenders and/or the CE Capital Providers at such time.

**SECTION 2.6**     <u>Amendments to LW Capital Provision Agreement</u>.  The Trust and the LW Capital Provider agree that neither the LW Capital Provision Agreement, nor any other instrument or agreement evidencing, creating, or executed and delivered in connection with all or any part of the Subordinated Obligations, without the prior written consent of the DIP Lenders and the CE Capital Providers, will be modified or amended in any way that has a material adverse effect on the Trust's operations or financial condition, or the Senior Obligations or the Second Ranking Obligations, or otherwise inconsistent with the terms of this Agreement.

**SECTION 2.7**     <u>Amendments to Litigation Cost Advance Agreement and the Settlement Agreement</u>.  The Trust and the DIP Lenders agree that, without the prior written consent of the LW Capital Provider, no new agreement will be entered into by the Trust and DIP Lenders providing, nor will any instrument or agreement evidencing, creating, or executed and delivered in connection with all or any part of the Senior Obligations be modified or amended to

provide, for any increase in the amount of the Senior Obligations prior to the Payment in Full of the LW Capital Provider's Entitlement. The Trust and the CE Capital Providers agree that, without the prior written consent of the LW Capital Provider, no new agreement will be entered into by the Trust and the CE Capital Providers providing, nor will any instrument or agreement evidencing, creating, or executed and delivered in connection with all or any party of the Second Ranking Obligations be modified or amended to provide, for any increase in the amount of the Second Ranking Obligations prior to the Payment in Full of the LW Capital Provider's Entitlement.

## ARTICLE III
## GENERAL PROVISIONS

**SECTION 3.1** <u>Representations and Warranties of LW Capital Provider</u>. The LW Capital Provider represents and warrants that (i) it is duly organized or formed and validly existing under the laws of the jurisdiction of its organization or formation and, if relevant under such laws, in good standing; (ii) is qualified to do business in each jurisdiction in which the nature of its business so requires except to the extent that the failure to be so qualified would not reasonably be expected to have a material adverse effect on the operations of the LW Capital Provider; (iii) assuming proper execution and delivery by the other parties hereto, this Agreement constitutes the valid and binding obligation of the LW Capital Provider enforceable in accordance with its terms, subject as to enforcement, to applicable bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting the LW Capital Provider's rights generally; and (iv) neither the execution and delivery of this Agreement by the LW Capital Provider, the consummation of the transactions herein contemplated, nor the compliance with the terms and provisions hereof by the LW Capital Provider will conflict with or result in the breach of any of the terms, conditions or provisions of the organizational documents of the LW Capital Provider or of any applicable law or regulation or of any agreement or material instrument to which the LW Capital Provider is a party or by which it or its property is bound or constitutes a default thereunder.

**SECTION 3.2** <u>Default</u>. The breach or the failure of the DIP Lenders, the CE Capital Providers, the LW Capital Provider or the Trust in the due observance or performance of any of the provisions of this Agreement shall constitute a default under this Agreement.

**SECTION 3.3** <u>Enforceability of the Provisions of this Agreement and Waivers</u>. (i) All rights and interests of the DIP Lenders and the CE Capital Providers hereunder, and all agreements and obligations of the LW Capital Provider or the Trust under this Agreement shall remain in full force and effect and shall in no way be affected, limited, modified or released by the Trust or the LW Capital Provider, and may be enforced by the DIP Lenders until the Senior Obligations shall have been Paid in Full and by the CE Capital Providers until the Second Ranking Obligations shall have been Paid in Full, as applicable, irrespective of (a) any act or failure to act on the part of the LW Capital Provider or the Trust or any noncompliance by the LW Capital Provider or the Trust with the provisions of this Agreement; (b) any attempt, pursuit, enforcement or exhaustion of any rights and remedies the DIP Lenders or the CE Capital Providers may at any time have to collect the Senior Obligations or the Second Ranking Obligations, as applicable, from the Trust or any other maker, guarantor, endorser, surety or other person directly or contingently liable therefor or from any collateral and security for the Senior Obligations or the Second Ranking Obligations; (c) any release or non-perfection of any collateral and security for any or all of the

- 7 -

Senior Obligations or the Second Ranking Obligations; or (d) any other circumstance that might otherwise constitute a defense available to, or discharge of, the Trust in respect of the Senior Obligations (other than Payment in Full of the Senior Obligations) or the Second Ranking Obligations (other than Payment in Full of the Second Ranking Obligations).

(ii)     Without notice to, or consent of, the LW Capital Provider, and without in any way affecting, limiting, modifying, discharging or releasing the right of the DIP Lenders or the CE Capital Providers to enforce this Agreement or the liabilities and obligations of the parties hereto, the DIP Lenders and the CE Capital Providers may, to the extent consistent with the Trust Agreement, at any time and from time to time (subject to the relative rights between the DIP Lenders and the CE Capital Providers as set forth in this Agreement) (a) extend, renew, accelerate, modify, amend, restate, change, decrease, substitute, subordinate, exchange, sell, assign, compromise, settle, waive, terminate, release, discharge, grant indulgences with respect to, or otherwise deal with in any manner satisfactory to the DIP Lenders or the CE Capital Providers, as applicable, all or any part of the Senior Obligations or the Second Ranking Obligations, as applicable, any collateral and security therefor, the Trust or any other maker, guarantor, endorser, surety or other person directly or contingently liable or obligated for all or any part of the Senior Obligations or the Second Ranking Obligations, as applicable; (b) fail, omit, lack diligence or delay to perfect, maintain, enforce, assert or exercise any lien, encumbrance, right or remedy conferred on the DIP Lenders or the CE Capital Providers, as applicable; or (c) take or omit to take any other action, whether similar or dissimilar to the foregoing, which may or might in any manner or to any extent constitute a defense available to, or discharge of, the Trust in respect of the Senior Obligations or the Second Ranking Obligations, as applicable, or of the Trust or the LW Capital Provider in respect of this Agreement.

(iii)    The DIP Lenders, the CE Capital Providers and/or the LW Capital Provider may demand specific performance of this Agreement, and the Trust, the DIP Lenders, the CE Capital Providers and the LW Capital Provider acknowledge that there is no adequate remedy at law for a breach of this agreement and expressly waive any defense based on the adequacy of a remedy at law and any other defense that might be asserted to bar any remedy of specific performance requested by the DIP Lenders, the CE Capital Providers and/or the LW Capital Provider in any action or proceeding, including any Distribution Proceeding.

(iv)    The Parties acknowledge that this Agreement, in its entirety, constitutes a "subordination agreement" under section 510(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and section 9-339 of the Uniform Commercial Code, which subordination agreement will be effective before, during, and after the commencement of a Distribution Proceeding.  This Agreement shall remain enforceable and in full force and effect in any and all courts and tribunals or other Governmental Authorities notwithstanding that any bankruptcy court declines to give effect to this Agreement or any provision hereof in any Distribution Proceeding, whether pursuant to section 1129(b) of the Bankruptcy Code or otherwise.  All references in this Agreement to the Trust and the LW Capital Provider includes such person as a debtor-in-possession and any receiver or trustee for such person, including in any Distribution Proceeding.

## ARTICLE IV
## MISCELLANEOUS

**SECTION 4.1** <u>Course of Dealing; Amendment</u>.  No course of dealing between the DIP Lenders, the CE Capital Providers, the LW Capital Provider or the Trust shall be effective to amend, modify or change any provision of this Agreement.  The DIP Lenders, the CE Capital Providers, and the LW Capital Provider shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the provisions hereof, notwithstanding any conduct or custom on the part of the DIP Lenders, the CE Capital Providers or the LW Capital Provider in refraining from so doing at any time or times.  The failure of the DIP Lenders, the CE Capital Providers or the LW Capital Provider at any time or times to enforce their rights under the provisions hereof, strictly in accordance with the same, shall not be construed as having created a custom in any way or manner contrary to specific provisions of this Agreement or as having in any way or manner modified or waived the same.  This Agreement may not be amended, modified, or changed in any respect except by an agreement in writing signed by the DIP Lenders, the CE Capital Providers, the LW Capital Provider and the Trust.

**SECTION 4.2** <u>Waiver of Default</u>.  The DIP Lenders may, at any time and from time to time, execute and deliver to the Trust, the CE Capital Providers and/or the LW Capital Provider a written instrument waiving, on such terms and conditions as the DIP Lenders may specify in such written instrument, any of the requirements of this Agreement, provided that any such waiver shall be for such period and subject to such conditions as shall be specified in any such instrument.  To the extent that the CE Capital Providers have enforcement rights under this Agreement, the CE Capital Providers may, at any time and from time to time, execute and deliver to the DIP Lenders, the Trust and/or the LW Capital Provider a written instrument waiving, on such terms and conditions as the CE Capital Providers may specify in such written instrument, any such rights, provided that any such waiver shall be for such period and subject to such conditions as shall be specified in any such instrument.  Each such waiver shall be effective only in the specific instance and for the specific purpose for which given.

**SECTION 4.3** <u>Consent to Jurisdiction</u>.  Each of the DIP Lenders, the CE Capital Providers, the LW Capital Provider and the Trust (i) consent and submit to the jurisdiction and venue of any state or federal court sitting in the State of New York over any suit, action or proceeding arising out of or relating to this Agreement; (ii) waive, to the fullest extent permitted by law, any objection that the DIP Lenders, the CE Capital Providers, the Trust or the LW Capital Provider may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum; and (iii) consent to the service of process in any such suit, action or proceeding in any such court by such means as is provided for by the jurisdiction in which such suit, action or proceeding is filed.

**SECTION 4.4** <u>Waiver of Trial by Jury</u>.  The Trust, the LW Capital Provider, the CE Capital Providers and the DIP Lenders hereby voluntarily and intentionally waive any rights they may have to trial by jury in any action or proceeding to which the Trust, the LW Capital Provider, the CE Capital Providers or the DIP Lenders may be parties, arising out of, under or in any way pertaining to this Agreement.  This waiver constitutes a waiver of trial by jury of all

- 9 -

claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Agreement.

**SECTION 4.5** <u>Severability</u>. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable laws, but if any provision contained in this Agreement shall be invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein shall remain effective and binding on the parties hereto and shall not be affected or impaired thereby.

**SECTION 4.6** <u>Continuing Agreement</u>. This Agreement shall be a continuing one and shall be binding upon the parties hereto regardless of how long before or after the date hereof any of the Senior Obligations or the Second Ranking Obligations were or are incurred. This Agreement shall continually exist in full force and effect as between all Parties until all of the Senior Obligations have been Paid in Full and no commitments therefor are outstanding, and shall continually exist in full force and effect thereafter as between all Parties (other than the DIP Lenders) until all of the Second Ranking Obligations have been Paid in Full and no commitments therefor are outstanding. This Agreement shall continue to be effective, or be reinstated, as the case may be, as to the DIP Lenders if at any time any payment, or any part thereof, of any of the Senior Obligations is rescinded or must otherwise be restored or returned by the DIP Lenders, and as to the CE Capital Providers if at any time any payment, or any part thereof, of any of the Second Ranking Obligations is rescinded or must otherwise be restored or returned by the CE Capital Providers, in each case upon, under or as a result of any Distribution Proceeding by or against the Trust or otherwise, all as though such payment had not been made.

**SECTION 4.7** <u>Binding Effect</u>. This Agreement shall be binding upon the DIP Lenders, the CE Capital Providers, the Trust and the LW Capital Provider and their respective successors, assigns, heirs, personal representatives, executors, administrators and estate and shall inure to the benefit of the DIP Lenders, the CE Capital Providers and the LW Capital Provider and their successors and assigns; provided that the LW Capital Provider will not sell, assign, transfer or otherwise dispose in any manner whatsoever of all or any part of the Subordinated Obligations unless such assignee agrees to be bound by the terms of this Agreement.

**SECTION 4.8** <u>Applicable Law</u>. This Agreement and the rights and obligations of the parties hereunder shall be construed and interpreted in accordance with the laws of the State of New York (without reference to any conflict of law principles or choice of law doctrine that would have the effect of causing this Agreement to be construed in accordance with or governed by the law of any other jurisdiction).

**SECTION 4.9** <u>Duplicate Originals and Counterparts</u>. This Agreement may be executed in any number of duplicate originals or counterparts, and each of such duplicate originals or counterparts shall be deemed to be an original and all taken together shall constitute but one and the same instrument.

**SECTION 4.10** <u>Headings</u>. Article and Section headings in this Agreement are included herein for convenience of reference only, shall not constitute a part of this Agreement for

any other purpose and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

**SECTION 4.11** <u>Conflicts</u>.  In the event of any conflict between the terms of this Agreement and the terms of the LW Capital Provision Agreement, the terms of this Agreement shall govern and control.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

IN WITNESS WHEREOF, each of the Parties has executed and delivered this Agreement as of the day and year first written above.

**LW HOLDCO VI LLC, as**
**LW Capital Provider**

By: _____
Name: Boaz Weinstein
Title: Authorized Signatory

**UNITED STATES DEPARTMENT OF**
**THE TREASURY, as DIP Lender**
**GEOFFREY S. BERMAN**
**United States Attorney for the Southern**
**District of New York**
**Counsel for the United States Department of**
**the Treasury**

By: _____
Name:
Title:

**EXPORT DEVELOPMENT CANADA, as**
**DIP Lender**

By: _____
Name:
Title:

By: _____
Name:
Title:

**CYNTHIANA LLC, as CE Capital Provider**

By: _____
Name:
Title:

IN WITNESS WHEREOF, each of the Parties has executed and delivered this Agreement as of the day and year first written above.

**LW HOLDCO VI LLC**, as
LW Capital Provider

By:. _____
Name:
Title:

**UNITED STATES DEPARTMENT OF
THE TREASURY**, as DIP Lender
GEOFFREY S. BERMAN
United States Attorney for the Southern
District of New York
Counsel for the United States Department of
the Treasury

By:. *David S. Jones*    Jan. 24, 2019
Name: DAVID S. JONES
Title: Assistant U.S. Attorney, SDNY

**EXPORT DEVELOPMENT CANADA**, as
DIP Lender

By: _____
Name:
Title:

By: _____
Name:
Title:

**CYNTHIANA LLC**, as CE Capital Provider

By: _____
Name:
Title:

IN WITNESS WHEREOF, each of the Parties has executed and delivered this Agreement as of the day and year first written above.

**LW HOLDCO VI LLC, as**
**LW Capital Provider**

By:_____
Name:
Title:

**UNITED STATES DEPARTMENT OF**
**THE TREASURY, as DIP Lender**
**GEOFFREY S. BERMAN**
**United States Attorney for the Southern**
**District of New York**
**Counsel for the United States Department of**
**the Treasury**

By:_____
Name:
Title:

**EXPORT DEVELOPMENT CANADA, as**
**DIP Lender**

By: _[signature]_
Name: Brian Craig
Title: Sr. Special Risks Manager

By: _[signature]_
Name: Essya Lamouchi
Title: Sr. Special Risk Manager

**CYNTHIANA LLC, as CE Capital Provider**

By: _____
Name:
Title:

IN WITNESS WHEREOF, each of the Parties has executed and delivered this Agreement as of the day and year first written above.

**LW HOLDCO VI LLC,** as
**LW Capital Provider**

By:._____
Name:
Title:

**UNITED STATES DEPARTMENT OF
THE TREASURY, as DIP Lender
GEOFFREY S. BERMAN
United States Attorney for the Southern
District of New York
Counsel for the United States Department of
the Treasury**

By:._____
Name:
Title:

**EXPORT DEVELOPMENT CANADA,** as
**DIP Lender**

By: _____
Name:
Title:

By: _____
Name:
Title:

**CYNTHIANA LLC, as CE Capital Provider**

By: *[signature]*
Name:
Title: Authorized Signatory

**EARLHAM LLC, as CE Capital Provider**

By: _____
Name:
Title: Authorized Signatory

Acknowledged and approved:                    **MOTORS LIQUIDATION COMPANY**
                                              **AVOIDANCE ACTION TRUST,**
                                              a Delaware Statutory Trust

                                              By: _____
_____
**ARTHUR J. GONZALEZ, as**                       Name:
**Trust Monitor**                                Title:

**EARLHAM LLC**, as CE Capital Provider

By: _____
Name:
Title:

Acknowledged and approved:

*[signature]*

ARTHUR J. GONZALEZ, as
Trust Monitor

**MOTORS LIQUIDATION COMPANY
AVOIDANCE ACTION TRUST,**
a Delaware Statutory Trust

By: _____
Name: Beth Andrews
Title: Vice President