**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                                              Debtors.

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

---------------------------------------------------------------x

MOTORS LIQUIDATION COMPANY AVOIDANCE
ACTION TRUST, by and through the Wilmington Trust
Company, solely in its capacity as Trust Administrator and
Trustee,

                                              Plaintiff,

                        against

JPMORGAN CHASE BANK, N.A., *et al.*,

                                              Defendants.

Adversary Proceeding

Case No. 09-00504 (MG)

---------------------------------------------------------------x

**DECLARATION OF ARTHUR J. GONZALEZ IN SUPPORT OF MOTORS
LIQUIDATION COMPANY AVOIDANCE ACTION TRUST'S MOTION FOR
ENTRY OF ORDER PURSUANT TO SECTIONS 105 AND 1142 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 3020(d) (I) APPROVING
AMENDMENTS TO THE THIRD AMENDED AND RESTATED AVOIDANCE
ACTION TRUST AGREEMENT AND AUTHORIZING THE AVOIDANCE ACTION
TRUST TO ENTER INTO THE FOURTH AMENDED AND RESTATED AVOIDANCE
ACTION TRUST AGREEMENT (II) AUTHORIZING THE AVOIDANCE
ACTION TRUST TO ENTER INTO THE LW CAPITAL PROVISION
AGREEMENT AND TO GRANT A LIEN TO THE LW CAPITAL PROVIDER**

I, Arthur J. Gonzalez, declare as follows:

      1.    I am the trust monitor (the "**Trust Monitor**") of the Motors Liquidation Company Avoidance Action Trust (the "**Trust**" or the "**Avoidance Action Trust**"), and I have served in that role since the Bankruptcy Court approved my appointment on June 19, 2015 [Bankr. Dkt. 13229]. I make this declaration in support of the Avoidance Action Trust's

motion (the "**Motion**") seeking Bankruptcy Court approval of the litigation funding agreement (the "**LW Capital Provision Agreement**") that the Avoidance Action Trust has entered into with LW Holdco VI LLC (the "**LW Capital Provider**").

2. In addition to acting as the Trust Monitor, and among other professional commitments, I am currently a Senior Fellow at New York University School of Law, where I teach courses in bankruptcy law. I previously served as a United States Bankruptcy Judge in this District for nearly seventeen years.

3. As Trust Monitor, in accordance with Section 11.1 of the Third Amended And Restated Motors Liquidation Company Avoidance Action Trust Agreement, I oversee the activities of Wilmington Trust Company, as trust administrator for the Avoidance Action Trust (the "**Trust Administrator**").

4. As this litigation progressed during 2018, building towards a potential second trial before the Court later this year, the Trust Administrator, in consultation with me and with counsel, determined that the Trust's available cash would be insufficient to meet the needs of the Trust if this case were to continue to a litigated resolution. Specifically, the Trust Administrator determined that the Trust would likely run out of funds by the spring of this year. As of January 31, 2019, the Trust had $2 million in undrawn funds remaining on the current litigation finance facility plus approximately $2.5 million of cash in its accounts. Thus, after accounting for billed and estimated unbilled fees and expenses in excess of approximately $1.2 million, the Trust has less than $3.3 million available to fund the fees and costs associated with prosecution of the Term Loan Avoidance Action, the administrative expenses of the Avoidance Action Trust, and the fees of the Trust Administrator and Trust Monitor.

5. As the Court is aware, this case has been vigorously and intensively defended

by well-resourced defendants, requiring the Trust's counsel, in conjunction with a team of experts, to mount a tremendous effort as part of the Trust's continuing duty to attempt to realize value from this litigation for the benefit of the Trust's beneficiaries, which include the unsecured creditors of this bankruptcy estate, United States Treasury, and Export Development Canada.

6. As the Court was advised by letter dated February 1, 2019, with the help of a sustained and demanding mediation process, all parties have succeeded in reaching an agreement in principle to settle this case subject to the negotiation of definitive settlement documents and the Court's approval. It was important for the Trust to enter into the LW Capital Provision Agreement because, at the time the agreement was executed by the Trust, it was uncertain that the parties would be able to find a way to resolve this case, and the Trust had to ensure that it would have the financial wherewithal to see the case through to completion. Further, the Trust's ability to demonstrate to defendants that it had the financial capability to meet the demands of the case was necessary to negotiate for the best possible settlement for the Trust. Finally, the LW Capital Provision Agreement is critical because it provides a source of funding to the Trust in the unlikely and unexpected event that the settlement in principle that has been reached does not ultimately come to fruition.

7. I understand that approval of the Motion will commit the Trust to drawing $1.5 million from the LW Capital Provider and, thus, even if this case is resolved without the need of such funds the LW Capital Provider would be entitled to its return on that draw amount. (On a net basis, that draw would cost the Trust $1.3 million to be paid from litigation proceeds, because the Trust has already committed to pay $200,000 to the LW Capital Provider, subject to Court approval, in the event the Motion is not approved.) However, the Trustee, its counsel,

Pg 4 of 4

and I have determined that the benefit of securing $10 million in funding at this point in the litigation outweighs the cost of such commitment.

8. I was kept apprised of developments throughout the solicitation of litigation funding proposals that was undertaken by the Avoidance Action Trust and participated in the decision to enter into the LW Capital Provision Agreement and the other LW Transaction Documents with the LW Capital Provider.

9. I believe that the LW Capital Provision Agreement provides necessary funding for the Avoidance Action Trust on the most favorable economic terms available to the Trust. The key terms of the LW Capital Provision Agreement are summarized in the Motion.

10. Accordingly, I support the Avoidance Action Trust's Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 4, 2019

Arthur J. Gonzalez