Hearing Date and Time:  To Be Determined

Objection Deadline:  February 11, 2019

Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Counsel for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

------------------------------------------------------------ x

### JOINDER OF GENERAL MOTORS LLC TO OBJECTION OF WILMINGTON TRUST COMPANY, AS GUC TRUST ADMINISTRATOR, TO THE ELLIOTTS' MOTION TO LIFT BAR DATE AND FILE PROPOSED LATE PROOF OF CLAIM

General Motors LLC ("**New GM**") hereby joins in the arguments made in the *Objection Of Wilmington Trust Company, As GUC Trust Administrator, To The Elliotts' Motion To Lift Bar Date And File Proposed Late Proof Of Claim* ("**GUC Trust Objection**"), filed by the Motors Liquidation Company GUC Trust Administrator ("**GUC Trust**") on February 11, 2019.  In support of this Joinder, New GM states as follows:

1.      In the *Elliotts' Motion to Lift Bar Date and Proposed [Late] Proof of Claims* ("**Elliott Late Claim Motion**"), filed by Celestine Elliott and Lawrence Elliott (the "**Elliotts**") on January 21, 2019 [ECF No. 14399], the Elliotts seek authority to file a late proof of claim in the Old GM[1] bankruptcy case in their individual capacity on account of an alleged economic loss claim related to their Old GM vehicle (*i.e.*, a 2006 Chevrolet Trailblazer, the "**2006 Trailblazer**"). If that were all that the Elliotts sought in their Late Claim Motion, New GM's response would have been limited to a generalized joinder in support of the GUC Trust Objection, and a reservation of rights that all objections relating to other potential late claims be preserved. This would have reflected the practical reality that the value of their proposed late claim for purported economic loss relating to a 12 year-old vehicle (where the recall repair was provided), would essentially be zero.

2.      However, the Elliott Late Claim Motion potentially seeks more and, thus, a greater response is required. The Elliott Late Claim Motion also suggests that they will request, by separate motion, authority to file a late proof of claim on behalf of a proposed class of claimants defined as "[a]ll residents of the District of Columbia who, prior to June 2009, either owned or leased a GM vehicle subject to Recall No. 14V-404" ("**Proposed Class**"). *Rider to Proof of Claim of Lawrence & Celestine Elliott* ("**Elliott POC Rider**"), ¶ 2.[2] This class action aspect of the potential relief suggested in the Elliott Late Claim Motion requires New GM to respond further.

3.      To be clear, New GM agrees with the arguments set forth in the GUC Trust Objection and, by this pleading, supports each of the arguments asserted in the GUC Trust

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the GUC Trust Objection.

[2]    The Elliotts acknowledge that they are "Non-Ignition Switch Plaintiffs" as defined by this Court, referring to themselves by that classification. *See* Peller Joinder, at 1 ("Celestine Elliott and Lawrence Elliott ('Non-Ignition Switch Plaintiffs,' or 'Plaintiffs'), hereby submit . . .").

Objection and requests that the Court enter an Order denying the relief requested in the Elliott Late Claim Motion. This pleading is intended to amplify the GUC Trust's argument relating to the Elliot Late Claim Motion's reference to a potential class-related claim.

**A.**     **The Elliotts Did Not Preserve The Ability To Seek To File A Late Proposed Class Proof Of Claim**

4.     In the *Order To Show Cause Regarding Certain Issues Arising From Lawsuits With Claims Asserted Against General Motors LLC ("New GM") That Involve Vehicles Manufactured By General Motors Corporation ("Old GM")* entered on December 13, 2016 [ECF No. 13802] ("**December 2016 Show Cause Order**"), this Court authorized Brown Rudnick LLP and Goodwin Procter LLP (on behalf of their clients) to file by December 22, 2016 Late Claim Motions seeking authority to file late proofs of claim. *See* December 2016 Show Cause Order, at 5. Brown Rudnick and Goodwin Procter filed Late Claims Motion on or before such date.

5.     The December 2016 Show Cause Order also provided that, "[i]f other plaintiffs wish to join in a Late Claim Motion, they shall file a joinder (not to exceed two pages) with the Court by January 6, 2017." *Id.* On January 3, 2017, Gary Peller filed a *Joinder Of Certain Ignition Switch, Non-Ignition Switch, And Pre-Sale Accident Plaintiffs To The Pending Motions For Leave To File Late Proofs Of Claim* [ECF No. 13811] ("**Peller Joinder**") on behalf of five individual claimants.[3] With respect to the Elliotts and the 2006 Trailblazer, the Peller Joinder stated that "Mr. and Mrs. Elliott also seek to recover for economic loss they suffered in [sic] from a non-ignition switch safety hazard in another GM vehicle they purchased prior to the Sale." Peller Joinder, at 1.

6.     While the Peller Joinder preserved the Elliotts' ability to seek to file a late proof of claim *in their individual capacity,* it never raised, let alone preserved, the right to seek authority

---

[3]     The five individual claimants listed in the Peller Joinder were (i) Sharon Bledsoe, (ii) Celestine Elliott, (iii) Lawrence Elliott, (iv) Tina Farmer, and (v) Dierra Thomas.

to file a late proof of claim on behalf of a Proposed Class. Clearly, the Elliotts and their counsel

(Mr. Peller) were on notice of the terms of the December 2016 Show Cause Order and, specifically,

the deadline to file a joinder thereto. They did not comply with the express terms of the December

2016 Show Cause Order in connection with any proposed late class proof of claim. For this reason

alone, the Elliotts' request for authority to file a late class proof of claim must be denied.

7.      Importantly, this is not a situation where the Elliotts were unaware of potential class

issues at the time of the December 2016 Show Cause Order. On September 19, 2014—*over two*

*years* before the entry of the December 2016 Show Cause Order—the Elliotts, among others, filed

a class action complaint against New GM in the United States District Court for the Southern

District of New York. *See Sharon Bledsoe, et al. v. General Motors LLC*, Case No.: 1:14-cv-7631-

JMF (S.D.N.Y.) ("**Bledsoe Lawsuit**").[4] *Neither Old GM nor the GUC Trust are named as*

*defendants in the Bledsoe Lawsuit.* The Bledsoe Lawsuit seeks to assert class claims against New

GM only based on, among others, the *exact same recall* (*i.e.*, Recall No. 14V-404) that is the focus

of the Elliotts' proposed late class proof of claim. An amended complaint was filed in the Bledsoe

Lawsuit on December 20, 2016[5]—*seven days after* the entry of the December 2016 Show Cause

Order and approximately *two weeks before* the Peller Joinder was filed—which continued to assert

the putative class claims based on Recall No. 14V-404 against New GM only; no relief was sought

against Old GM or the GUC Trust.

8.      The Elliotts obviously were aware of the class issues surrounding their claims when

the Peller Joinder was filed. They have no excuse for their failure to include in the Peller Joinder

the right to file a late class proof of claim against the GUC Trust.

---

[4]     The Bledsoe Lawsuit is one of the many lawsuits that are part of MDL 2543.

[5]     *See* Bledsoe Lawsuit, 1:14-cv-7631-JMF (S.D.N.Y.), ECF No. 176.

9.      Until the Elliott Late Claim Motion was filed in January 2019, the Elliotts had not raised the prospect of seeking to file a proposed late *class* proof of claim *against the GUC Trust*. As recently as December 12, 2018, the Elliotts were still asserting individual, as opposed to class, claims against the GUC Trust.  *See Letter by Gary Peller to the Honorable Martin Glenn*, dated December 12, 2018 [ECF No. 14382] ("**Peller December 2018 Letter**"), at 1 ("*Mr. and Mrs. Elliott* additionally seek compensation for economic loss *they* suffered in connection with *their* pre-Sale purchase of another GM vehicle, one containing non-ignition switch hazards."  (emphasis added)); *see id.* ("With respect to *Mr. and Mrs. Elliott's non-ignition switch related claims, they* have long awaited an opportunity to demonstrate that *their* non-ignition switch claims are not precluded by the Sale Order." (emphasis added)).  The Peller December 2018 Letter never once mentioned the possibility of a proposed class proof of claim.

10.      A class proof of claim also was never discussed at the status conference held by the Court on December 20, 2018.  At that conference, the Elliotts' claims and the filing of the Elliott Late Claim Motion were discussed, but again only in the context of *individual* claims. Specifically, counsel for the GUC Trust stated at the conference:  "So with regard to the Elliotts and the 2006 Trailblazer, which I believe they are alleging a door handle defect, Mr. Peller did file a joinder to the motion to file a late claim *on behalf of the Elliotts and their Trailblazer*." December 20, 2018 Hr'g Tr., at 18:8-11 (emphasis added).  Later at the conference, counsel for the GUC Trust added:

> But procedurally here, all we have is Mr. Peller joining the late-claimed motion that was filed by the economic loss plaintiffs, and it attached, you know, their proof of claim that was for ignition switch defects.  So we've asked Mr. Peller to *actually file something on behalf of the Elliotts* specifically addressing the Trailblazer and the door handle and their allegations for why they would be entitled to file a late claim.  And he has agreed to do that, and then we would respond.

5

*Id.*, at 18:22-19:5 (emphasis added). When Mr. Peller was given the opportunity to speak, he initially stated "I don't have anything to add, Your Honor" (*id.*, at 25:10-11), but then said "[t]he only issue that may pose a future scheduling issue is whether there needs to be discovery with respect to ***Old GM's knowledge of the Elliotts' non-ignition switch door module defect***. But my understanding is by the 21st we'll file a proposed late proof of claim and that that issue can be addressed later" (*id.*, at 25:20-25 (emphasis added)). Consistent with the Peller Joinder, the Peller December 2018 letter and the colloquy at the December 20, 2018 conference all concerned the Elliotts' individual claims; they never mentioned or referred to a proposed class proof of claim.

11.      In short, seeking authority to file a late class proof of claim ***over two years after the deadline set forth in the December 2016 Show Cause Order***—when the Elliotts were clearly aware of such deadline and its implications—is patently too late. Accordingly, the Elliott Late Claim Motion, including that portion which seeks authority to file a late class proof of claim, should be denied in its entirety.

**B.      The Elliotts Offer No Reason—Let Alone A Valid One—For
Their Delay In Seeking Authority To File A Late Class Proof Of Claim
After Becoming Aware Of The Alleged Defect And Old GM's Bankruptcy Case**

12.      The Elliotts readily acknowledge that, when considering the *Pioneer* factors, the "Second Circuit places considerable weight on the reason for delay and weighs less equally the other factors." Elliott Late Claim Motion, at 19 (citing *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004) ("[I]t is the third factor-the reason for delay-that predominates, and the other three are significant only in close cases."); *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.N.Y. 2010) (explaining the Second Circuit's "hard line" approach to Pioneer, which "focuses primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant."); *In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL

6

1577763, at *4 (Bankr. S.D.N.Y. 2007) ([T]he Second Circuit . . . focus[es] on the reason for delay as the predominate factor.")).

13.    While the Elliotts recognize that the reason for the delay is the most important factor to consider when analyzing late claims, they focus their argument solely on the Bar Date in 2009, and give short shrift to their failure to take any action against Old GM on behalf of a putative class after they allegedly became aware of the purported defect in their vehicle.

14.    For the reasons set forth in the GUC Trust Objection, the Elliotts offer absolutely no reason why they waited until January 2019 to suggest that a late class proof of claim against Old GM would be sought.

15.    As the Elliotts admit in the Elliott POC Rider, (i) the first recall regarding the 2006 Trailblazer was issued by New GM in August 2012 (which was expanded in June 2013) (*see* Elliott POC Rider, ¶¶ 33-35), (ii) their 2006 Trailblazer was serviced pursuant to the recalls in September 2013 (*see id.*, ¶ 36), (iii) the Elliotts filed a *pro se* lawsuit against New GM only regarding the alleged defect in April 2014 (*see id.*, ¶ 37), and (iv) New GM issued another recall regarding the 2006 Trailblazer in July 2014 (*see id.*, ¶ 38).  Even if they were not aware of the  alleged defect in their vehicle before August 2012, they became aware of it at or around that time, which was ***many years*** before suggesting class relief against the GUC Trust.

16.    Where a reason for the delay is a self-imposed strategic decision (*i.e.*, suing New GM only), even a "quite short" delay may be too long.  *See In re Enron Corp.*, 419 F.3d 115, 122-24 (2d Cir. 2005) (noting that filing "one day late" may be inexcusable if the reason is insufficient).

17.    In addition, the length of delay in seeking late claim relief, after full knowledge of the operative facts, will cause the denial of such relief.  *See In re Tronox Inc.*, 09-10156 (ALG), 2014 WL 5801058, at *2 (Bankr. S.D.N.Y. Nov. 7, 2014) (denying motion to file late claims where

claimant's "delay even after it learned the key facts on which it relies is substantial and insufficiently explained"); *cf. United States v. Cardinal Mine Supply*, 916 F.2d 1087, 1089 (6th Cir. 1990) (finding insufficiently notified creditor "must be permitted to file tardily when the creditor does so promptly after learning of the bankruptcy").

18.    The Elliotts waited too long before seeking to preserve their ability to file a late class proof of claim.  Simply put, the case law is clear that waiting more than *six years* after knowledge of the alleged defect, before seeking late claim relief, is far too long of an interval.  *See, e.g.*, *In re Drexel Burnham Lambert Grp.*, 157 B.R. 532, 538-39 (S.D.N.Y. 1993) (applying laches to reject late claims by known creditor that did not receive notice of the bar date, due to movants' "dilatory conduct and the prejudice resulting from these delays"); *see also In re Hunt*, 146 B.R. 178, 184 (Bankr. N.D. Tex. 1992) (plaintiffs, who did not seek leave to file a late proof of claim until approximately two and one-half years after admittedly learning of the existence of the debtors' bankruptcies, were barred from doing so by laches; "a creditor cannot wait indefinitely to file a claim"); *In re Decko Prods., Inc.*, 73 B.R. 275, 276 (Bankr. N.D. Ohio 1987) (late claim barred by laches where creditor waited 23 months after receiving notice of the bankruptcy, and after a plan had been confirmed).

19.    In *Drexel*, the bankruptcy court rejected a late filed claim by a known creditor who did not get due process because "[e]ven with general knowledge of Debtor's bankruptcy, Claimant failed without excuse to undertake any action that would preserve its right[s]…, such as filing a protective proof of claim."  *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 684 (Bankr. S.D.N.Y 1993).  The *Drexel* district court affirmed the bankruptcy court's ruling, highlighting the movant's "dilatory conduct" and failure "to proffer any reasonable excuse for its lackadaisical behavior" while it had simultaneously sought relief in other ways.  *Drexel*, 157 B.R. at 538-39.

"[E]quity aids the vigilant, not those [like the Elliotts] who sleep on their rights." *Ikelionwu v. United States*, 150 F.3d 233, 236-37 (2d Cir. 1998).

20.    Here, the Elliotts offer *no* excuse—let alone a reasonable one—for their years-long delay in seeking authority to file a late class proof of claim after they were on notice of all relevant facts.  The Elliott Late Claim Motion should therefore be denied in its entirety.[6]

## **RESERVATION OF RIGHTS**

21.    New GM reserves its rights to be heard at the hearing on the Elliott Late Claim Motion on any of the grounds set forth herein or in the GUC Trust Objection.

WHEREFORE, New GM respectfully requests that (i) the relief requested in the Elliott Late Claim Motion be denied in all respects; and (ii) it be granted such other and further relief as is just and proper.

---

[6]    The Elliotts assert that they are the beneficiaries of a toll that was contained in the May 2014 Scheduling Order. *See* Elliott Late Claim Motion, at 3-5.  As self-described Non-Ignition Switch Plaintiffs, the Elliotts are not beneficiaries of that toll as it only applies to Ignition Switch Plaintiffs.  On its face, the alleged defect with respect to the recall at issue in the Elliot Late Claim Motion has nothing to do with the ignition switch in their vehicle.

Dated: February 11, 2019
      New York, New York

/s/ Paul M. Basta
Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

and

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Counsel for General Motors LLC*