# Exhibit 1

```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK


                                    .    Case No. 09-50026-mg
IN RE:                              .    Chapter 11
                                    .
MOTORS LIQUIDATION COMPANY,         .    (Jointly administered)
et al., f/k/a GENERAL               .
MOTORS CORP., et al,                .    One Bowling Green
                                    .    New York, NY 10004
            Debtors.                .
                                    .    Thursday, December 20, 2018
. . . . . . . . . . . . . . . .     .    2:00 p.m.


              TRANSCRIPT OF CASE MANAGEMENT CONFERENCE
                 BEFORE THE HONORABLE MARTIN GLENN
                 UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For General Motors LLC:   King & Spalding, LLP
                          By:  ARTHUR J. STEINBERG, ESQ.
                          1185 Avenue of the Americas
                          New York, NY 10036
                          (212) 556-2158

                          Paul, Weiss, Rifkind, Wharton &
                           Garrison, LLP
                          By:  PAUL BASTA, ESQ.
                               KYLE J. KIMPLER, ESQ.
                          1285 Avenue of the Americas
                          New York, NY  10019-6064
                          (212) 373-3253

For Hilliard Munoz        Goodwin Procter LLP
Gonzales LLP and          By:  WILLIAM WEINTRAUB, ESQ.
Thomas J. Henry           The New York Times Building
Injury Attorney:          620 Eighth Avenue
                          New York, NY  10018
                          (212) 813-8839

APPEARANCES CONTINUED.

Audio Operator:           TL, ECRO

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

09-50026-mg   Doc 14434-1   Filed 02/22/19   Entered 02/22/19 21:15:28   Exhibit 1 - Transcript of Case Management Conference   Pg 3 of 9

4

1 consistent with Your Honor's September 25th decision.  The
2 parties are very cautious that, charging up the hill for the
3 third time, this time we need to get it right.
4          And just to give Your Honor a sense of what the delay
5 has been, first and foremost, we had to get a thorough handle
6 on the path forward, as was outlined in Your Honor's September
7 25th opinion, understanding through all of the various class
8 action gurus employed by each of our respective firms what the
9 rulings in <u>Manville</u> and the subsequent <u>Ortiz</u> decision means for
10 our path forward and ultimately what the support was for a
11 limited-fund, non-opt-out class or classes.
12          To complicate matters, as I'm sure Your Honor is
13 aware, there are brand new amendments to Rule 23.
14          THE COURT:  I referenced them in the opinion.
15          MR. WEISFELNER:  And in particular, amendment to Rule
16 23(e)(2)(B), which requires that the first step is to seek a
17 finding from this Court, that this Court will likely be able to
18 approve the settlement and our settlement purposes class
19 certification.
20          Which brings us to the next issue, which is notice
21 and notice costs.  And, Your Honor, to fully appreciate that,
22 there are two potential universes of class members.  In
23 universe one, we are looking at all Old GM registration holders
24 up to the bar date.  Our best estimate is that's over
25 26 million registrants.  Not cars, because the cars may have

09-50026-mg    Doc 14434-1    Filed 02/22/19    Entered 02/22/19 21:15:28    Exhibit 1 - Transcript of Case Management Conference    Pg 4 of 9

5

1  been owned or leased by multiple parties, but 26 million
2  registrants.  And the cost of updating those registrations and
3  getting enough information to be able to do mail notices and
4  subsequent email notices or just the mail notices, our best
5  estimate is $13 million.
6          Conversely, there's an alternative universe, and that
7  is one where you would take out or subtract anyone who sold
8  their car before the bar date on the theory that you, by
9  definition, therefore sold the car before the recall notices.
10 That's a universe that shrinks down to some 12 million
11 registrants, and the cost of updating all those registrations
12 from the original loan or through as many successive purchasers
13 up until the person who owned the car as of the bar date is
14 estimated at some $7 million.
15         And again, Your Honor, that's just the cost of
16 updating the registrations.  There's additional cost for
17 mailing, additional cost for establishing and maintaining a
18 website.
19         The other factor is the timing of updating the
20 registration materials.  For most states, we are told by the
21 vendor involved that it's a four-to-six-week process.  There
22 are, however, a handful of states where you can add yet another
23 six weeks to the time frame because there are a lot more hoops
24 to jump through in those jurisdictions in order to obtain
25 updated registrations.

09-50026-mg    Doc 14434-1    Filed 02/22/19    Entered 02/22/19 21:15:28    Exhibit 1 - Transcript of Case Management Conference    Pg 5 of 9

9

1    THE COURT: I think you're right. It said January
2 3rd. I think you've now pushed that further.
3    MR. WEISFELNER: Yeah. I'm not sure the letter ever
4 said the 3rd. I think the letter clearly said the end of -- I
5 think it said 31, actually.
6    THE COURT: Okay. I misremember then. Go ahead.
7    MR. WEISFELNER: So here's the process as we envision
8 it and when we think we get on file. By the end of January, if
9 not sooner, we will embark on what we refer to as "stage one."
10 In stage one, we will be asking the Court to approve our form
11 of notice, which will be state-of-the-art notice under Rule
12 23(e)(1); in other words, direct-mail notice. And there will
13 be one of two universes of people who are going to get the
14 notice, depending on what Judge Furman ultimately rules.
15    We'll ask Your Honor, in stage one, to make a
16 determination that you are likely to approve the settlement
17 under both Rule 9019 and Rule 7023. And once that's
18 accomplished, and we have all the information we need to
19 conduct the notice, the notice will begin.
20    Now, it will take us, as I indicated before, a period
21 of time to collect the registration data from the vendor and to
22 do the notice itself. So it may very well be that if we're in
23 and out of court in the month of January, early February, we're
24 not back in court probably until May seeking final approval of
25 both the settlement and the certification.

09-50026-mg    Doc 14434-1    Filed 02/22/19    Entered 02/22/19 21:15:28    Exhibit 1 -
Transcript of Case Management Conference    Pg 6 of 9

11

1  sometime after we file our stage-one pleadings, for their view
2  on those three topics: discovery, which we think there ought
3  not be any until we get the estimation; withdraw the reference;
4  continue motion to stay.
5             The fourth and final stage, once the estimation is
6  completed, and assuming that there is any trigger of the
7  accordion feature, would be for the plaintiff's side, working
8  together with a mediator or judicial monitor, to come up with
9  what I refer to as "trust distribution procedures," and to
10 present all of that to the Court on notice to affected parties.
11            There is a possibility, at that stage, that the class
12 could be decertified, re-jiggered, you know, if any party in
13 interest felt that their interests weren't being adequately
14 protected in terms of the allocation methodology that the
15 parties ultimately put forward that Your Honor will be asked to
16 approve.
17            THE COURT:  Come back to stage one.
18            MR. WEISFELNER:  Yes, sir.
19            THE COURT:  Do you contemplate one or more classes or
20 subclasses?
21            MR. WEISFELNER:  We contemplate one or more.  And not
22 to be cute about it, the current contemplation is that there
23 will be a class consisting of people who owned or leased the
24 initial defect cars.  I'm forgetting my recall numbers, but I
25 think it was 047.  And the other class will be all of those

09-50026-mg    Doc 14434-1    Filed 02/22/19    Entered 02/22/19 21:15:28    Exhibit 1 -
Transcript of Case Management Conference    Pg 7 of 9

14

1         MR. WEISFELNER:  For the same exact reason that the
2  last time GM sought to withdraw the reference from the
3  bankruptcy court, the district court denied the withdraw.  And
4  those are breaking them down to their two respective groupings.
5  The only summary judgment issue that could at all impact
6  proceedings before this Court is the one that speaks to the
7  size of the universe.
8         As to the merits decisions that he's made, and is not
9  likely to make any more before we get to estimation, but if he
10 were, all of those merits determinations will be -- will impact
11 our trial preparation.  So there's not a decision that Judge
12 Furman has made that won't be reflected in how we try the
13 estimation case.
14        THE COURT:  From your letter, I take it you agree
15 that to the extent proceedings continue in this Court, and
16 Judge Furman has issued decisions and may issue additional
17 decisions that I'll refer to as "merits," those would -- you
18 would agree those would apply in further proceedings here?
19        MR. WEISFELNER:  Absolutely.  Either in connection
20 with -- as we plotted out, his near-term decisions are likely
21 to involve summary judgment on the pending papers, which could
22 dramatically impact the size of the universe, therefore who
23 gets noticed, therefore the cost of notice.  It makes sense to
24 most of us that we ought to be awaiting that determination
25 before we blow X number of millions of dollars on costs of

09-50026-mg    Doc 14434-1    Filed 02/22/19    Entered 02/22/19 21:15:28    Exhibit 1 - Transcript of Case Management Conference    Pg 8 of 9

15

1  notice for people that Judge Furman has decided are entitled to
2  notice.  There are some countervailing concerns among some of
3  the folks within the beneficiary and GUC class about just how
4  ironclad a series of protections they want, but I think it'll
5  resolve itself that way.
6      Any merits-based issues that the judge has previously
7  made or will make in the future will be reflected by necessity
8  as part of the estimation proceedings.  Your Honor is not
9  likely to put in the column of adding up to hopefully
10 $10 billion, any dollar amount that reflects damages that Judge
11 Furman has already said, sorry, doesn't fly.  So we will be
12 careful, and GM will hold us to our promise to be careful not
13 to try anything that's already been determined.  And in that
14 fashion, I think all of Judge Furman's past and future
15 determinations will be reflected in all of the proceedings that
16 Your Honor will be asked to engage in.
17      THE COURT:  New GM's letter, which is ECF 14384, very
18 briefly addressed, because I requested it be addressed, the
19 issue of mediation.  And my takeaway from that portion of the
20 letter is that they've been reasonably successful in resolving
21 personal injury/wrongful death -- presale personal
22 injury/wrongful death cases.  How, if at all, does that affect
23 the -- your achieving the threshold to trigger the accordion?
24      MR. WEISFELNER:  Your Honor, our co-leads, together
25 with all of our experts, have assured me that we easily get to

09-50026-mg    Doc 14434-1    Filed 02/22/19    Entered 02/22/19 21:15:28    Exhibit 1 -
Transcript of Case Management Conference    Pg 9 of 9

45

1 **C E R T I F I C A T I O N**

3     I, Lisa Luciano, court-approved transcriber, hereby
4 certify that the foregoing is a correct transcript from the
5 official electronic sound recording of the proceedings in the
6 above-entitled matter, and to the best of my ability.

9 _____
10 LISA LUCIANO, AAERT NO. 327    DATE:   December 21, 2018
11 ACCESS TRANSCRIPTS, LLC

