# Exhibit 4

Requested Hearing Date: March 11, 2019 at 10:00 a.m. (EDT)
Objection Deadline: March 4, 2019 at 4:00 p.m. (EST)

Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
Dan Youngblut
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Counsel for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br>f/k/a General Motors Corp., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (MG)<br><br>(Jointly Administered) |

**NOTICE OF HEARING ON GENERAL MOTORS LLC'S MOTION PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE TO (A) STAY PROCEEDINGS
RELATING TO THE PROPOSED SETTLEMENT AND (B) GRANT RELATED RELIEF**

**PLEASE TAKE NOTICE** that upon the annexed *General Motors LLC's Motion Pursuant to Section 105(a) of the Bankruptcy Code to (A) Stay Proceedings Relating to the Proposed Settlement and (B) Grant Related Relief* (the "Motion"), a hearing has been requested before the Honorable Martin Glenn, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on March 11, 2019, at 10:00 a.m. (EDT), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to this Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Drinker Biddle & Reath LLP, attorneys for Wilmington Trust Company as GUC Trust Administrator, 1177 Avenue of the Americas, 41st Floor, New York, New York 10166 (Attn: Kristin K. Going, Esq. & Marita S. Erbeck, Esq.); (ii) FTI Consulting, as the GUC Trust Monitor, 3 Times Square, 9th Floor New York, NY 10036 (Attn: Conor Tully); (iii) Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys for General Motors LLC, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta, Esq. & Kyle J. Kimpler, Esq.); (iv) King & Spalding LLP, attorneys for General Motors LLC, 1185 Avenue of the Americas, New York, New York 10036 (Attn: Arthur Steinberg, Esq. & Scott Davidson, Esq.); (v) the United

States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Erik Rosenfeld); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 31th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Brown Rudnick LLP, designated counsel in the Bankruptcy Court for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs, Seven Times Square, New York, New York 10036 (Attn: Edward S. Weisfelner, Esq. & Howard S. Steel, Esq.); (vii) Stutzman, Bromberg, Esserman & Plifka, a Professional Corporation, designated counsel in the Bankruptcy Court for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq.); (ix) Hagens Berman Sobol Shapiro LLC, co-lead counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs in the MDL Court, 1301 2nd Ave., Suite 2000, Seattle, WA 98101 (Attn: Steve W. Berman, Esq.); (x) Lieff Cabraser Heimann & Bernstein, LLP, co-lead counsel for the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs in the MDL Court, 275 Battery Street, 29th Floor, San Francisco, California 94111 (Attn: Elizabeth J. Cabraser, Esq.); (xi) Andrews Myers, P.C., counsel to certain Pre-Closing Accident Plaintiffs, 1885 St. James Place, 15th Floor, Houston, Texas 77056 (Attn: Lisa M. Norman, Esq. & T. Joshua Judd, Esq.); (xii) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: William K. Harrington, Esq.); and (xiii) Cole Schotz, P.C., counsel for Certain Ignition Switch Pre-Closing Accident Plaintiffs Represented by The Cooper Firm and Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., 1325 Avenue of the Americas, 19th Floor, New York, New York 10019 (Attn: Mark Tsukerman, Esq.) so as to be received no later than March 4, 2019, at 4:00 p.m. (EST) (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served with respect to the Motion, New GM may, on or before the Objection Deadline, submit to the Court an order substantially in the form of the proposed order attached to the Motion, which order may be entered with no further notice or opportunity to be heard.

Dated: February 22, 2019
      New York, New York

    *Paul M. Basta*
    Paul M. Basta
    Aidan Synnott
    Kyle J. Kimpler
    Sarah Harnett
    Dan Youngblut
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    1285 Avenue of the Americas
    New York, New York 10019
    Telephone:  (212) 373-3000
    Facsimile:  (212) 757-3990

    Arthur Steinberg
    Scott Davidson
    KING & SPALDING LLP
    1185 Avenue of the Americas
    New York, New York 10036
    Telephone:  (212) 556-2100
    Facsimile:  (212) 556-2222

    *Counsel for General Motors LLC*

**Requested Hearing Date: March 11, 2019 at 10:00 a.m. (EDT)**
**Objection Deadline: March 4, 2019 at 4:00 p.m. (EST)**

Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
Dan Youngblut
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Counsel for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.*, | Case No. 09-50026 (MG) |
| Debtors. | (Jointly Administered) |

**GENERAL MOTORS LLC'S MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE TO (A) STAY PROCEEDINGS RELATING TO THE PROPOSED SETTLEMENT AND (B) GRANT RELATED RELIEF**

<u>**TABLE OF CONTENTS**</u>

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ............................................................................................... 10

    I.     THE MDL 2543 LITIGATION. ............................................... 10

    II.    THE PRIOR SETTLEMENT. .................................................. 11

    III.   THE PROPOSED SETTLEMENT. .......................................... 11

JURISDICTION ............................................................................................... 15

RELIEF REQUESTED....................................................................................... 16

ARGUMENT ................................................................................................... 16

    I.     PRELIMINARY APPROVAL UNDER RULE 23(e) REQUIRES THIS
         COURT TO HAVE A SUITABLE BASIS IN THE RECORD AT THE
         MARCH 11 HEARING TO FIND THAT IT CAN LIKELY CERTIFY
         THE PROPOSED CLASSES. ............................................... 16

         A.    Amended Rule 23(e) Sets Forth the Process the Movants Must
             Follow and the Record this Court Must Have to Preliminarily
             Certify the Proposed Classes. ............................................ 16

         B.    This Court's Determination of the Prospects for Certification
             Requires Analysis of the Likelihood that the Movants' Proposed
             Classes Satisfy All Aspects of Rule 23 and Related Certification
             Prerequisites. ................................................................. 19

             1.    This Court's Rule 23(e) Determination of the Prospects
                   for Certification Requires Analysis of the Likelihood that
                   the Movants' Proposed Classes Satisfy Rule 23(a) and
                   Certification Prerequisites. ............................................. 20

             2.    This Court's Rule 23(e) Determination of the Prospects
                   for Certification Also Requires Analysis of the
                   Likelihood that the Movants' Proposed Classes Satisfies
                   Rule 23(b)(1)(B) and *Ortiz*. .......................................... 21

    II.    TO SATISFY RULE 23(E), THIS COURT MUST DEVELOP A SOLID
         RECORD THAT WOULD SIGNIFICANTLY OVERLAP WITH THE
         MDL COURT. ................................................................. 23

         A.    This Court Must Find it Likely that the Proposed Classes Satisfy
             Certain Necessary Conditions of Limited Fund Classes Set Forth in
             *Ortiz*. ......................................................................... 23

             1.    This Court Cannot Determine Whether it Is Likely that
                   the Value of the Liquidated Claims Exceeds the Value of

the Settlement Fund Without Considering Issues Being
Decided in the MDL Court. ............................................................ 24

2.    This Court Cannot Determine Whether it Is Likely that
the Proposed Classes Comprise Plaintiffs Sharing a
Common Theory of Recovery Without Considering
Issues Being Decided in the MDL Court. .................................... 27

B.    This Court Cannot Find it Is Likely that the Proposed Class
Representatives Adequately Represent the Proposed Classes
Without Considering Issues Being Decided in the MDL Court. .............. 30

C.    This Court Cannot Find it Is Likely that the Relief Provided to the
Plaintiffs in the Proposed Classes Is Adequate Without Considering
Issues Being Decided in the MDL Court. ................................................... 32

D.    This Court Cannot Find it Is Likely that the Millions of Plaintiffs
Have Article III Standing Without Considering Issues Being
Decided in the MDL Court. ...................................................................... 35

1.    This Court Must Have a Suitable Basis in the Record at
the March 11 Hearing to Find it Likely that the
Constitutional Issues in Boedeker's Methodology Will
Be Resolved in Favor of the MDL Plaintiffs. .............................. 35

2.    This Court Must Have a Suitable Basis in the Record at
the March 11 Hearing to Find it Likely that New GM's
Recall Repairs Do Not Preclude the Plaintiffs' Claims. ............... 37

E.    This Court Cannot Find it Is Likely that the Claims in the Non-
Ignition Switch Class Satisfy the Commonality Requirement Set
Forth in Rule 23(a)(2) Without Considering Issues Being Decided
in the MDL Court. ..................................................................................... 39

III.    THE MOVANTS CONCEDE THE OVERLAP WITH THE MDL
PROCEEDINGS. ................................................................................................ 40

IV.    THIS COURT SHOULD NOT ORDER AN EXTENSIVE AND
EXPENSIVE NOTICE CAMPAIGN FOR A CLASS ACTION
SETTLEMENT THAT WILL SOON BE DRAMATICALLY RESHAPED
BY THE MDL COURT'S RULINGS. ............................................................... 41

V.    THIS COURT'S ORDER OF A STAY OF PROCEEDINGS RELATED
TO THE PROPOSED SETTLEMENT PENDING THE MDL COURT'S
RULINGS WILL NOT PREJUDICE ANY PARTY. ......................................... 43

CONCLUSION ................................................................................................................ 48

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraham* v. *WPX Energy Prod., LLC*,
   322 F.R.D. 592 (D.N.M. 2017)...........................................................................................39

*Amchem Prods., Inc.* v. *Windsor*,
   521 U.S. 591 (1997)................................................................................................. passim

*In re Beacon Assocs. Litig.*,
   2012 WL 1372145 (S.D.N.Y. Mar. 19, 2012)..................................................21, 38

*In re Bird*,
   229 B.R. 90 (Bankr. S.D.N.Y. 1999)......................................................................44

*In re Blood Reagents Antitrust Litig.*,
   783 F.3d 183 (3d Cir. 2015).....................................................................................26

*De Leon* v. *Bank of Am., N.A.*,
   2011 WL 13137935 (M.D. Fla. Aug. 31, 2011) ....................................................17

*In re Delphi Corp.*,
   Case No. 05-44481 (RDD), ECF No. 9105 (Bankr. S.D.N.Y. Aug. 16, 2007) ......44

*Denney* v. *Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)...............................................................................21, 35

*In re Deutsche Bank AG Securities Litig.*,
   2018 WL 4771525 (S.D.N.Y. Oct. 2, 2018) .....................................................20, 21

*In re Diet Drugs Prod. Liab. Litig.*,
   1999 WL 782560 (E.D. Pa. Sept. 27, 1999) ...........................................................27

*Fleischman* v. *Albany Med. Ctr.*,
   2008 WL 2945993 (N.D.N.Y. July 28, 2008) .......................................................36

*Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   174 F.R.D. 332 (D.N.J. 1997)................................................................................36

*In re Gen. Motors LLC Ignition Switch Litig.*
   [MDL ECF No. 4838].............................................................................................10

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) .........................................5, 28, 29, 46

*In re Gen. Motors LLC Ignition Switch Litig.*,
    2017 WL 2839154 (S.D.N.Y. June 30, 2017) ........................................................29

*In re Gen. Motors LLC Ignition Switch Litig.*,
    2018 WL 1638096 (S.D.N.Y. Apr. 3, 2018)............................................................38

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F.Supp.3d 372 (S.D.N.Y. 2017)........................................................................46

*In re Hagerstown Fiber Ltd. P'ship*,
    277 B.R. 181 (Bankr. S.D.N.Y. 2002)......................................................................43

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)..................................................................................................19

*Hays* v. *Eaton Grp. Attorneys, LLC*,
    2019 WL 427331 (M.D. La. Feb. 4, 2019).........................................................17, 18

*Landis* v. *N. Am. Co.*,
    299 U.S. 248 (1936)..................................................................................................43

*In re Lehman Bros. Holdings Inc.*,
    Case No. 08-13555 (SCC), ECF No. 42417 (Bankr. S.D.N.Y. Jan. 31, 2014) .......44

*Lujan* v. *Defenders of Wildlife*,
    504 U.S. 555 (1992)...............................................................................................6, 35

*In re MF Global Holdings, Ltd.*,
    464 B.R. 619 (Bankr. S.D.N.Y. 2012) (Glenn, J.)...................................................44

*In re Motor Fuel Temp. Sales Prac. Litig.*,
    2011 WL 4431090 (D. Kan. Sept. 22, 2011) ...........................................................47

*In re Motors Liquidation Co.*,
    580 B.R. 319 (Bankr. S.D.N.Y. 2018) .....................................................................11

*In re Motors Liquidation Co.*,
    591 B.R. 501 (Bankr. S.D.N.Y. 2018)..........................................................3, 11, 20

*In re Nickels Midway Pier, LLC*,
    450 B.R. 58 (D.N.J. 2011) .......................................................................................25

*Oladapo* v. *Smart One Energy, LLC*,
    2017 WL 5956907 (S.D.N.Y. Nov. 9, 2017).............................................................17

*Opperman* v. *Path, Inc.*
    2016 WL 3844326, at *14 (N.D. Cal. July 15, 2016)..............................................36

*Ortiz* v. *Fibreboard, Corp.*,
    527 U.S. 815 (1999)..................................................................................... passim

*In re Payment Card Interchange Fee Litig.*,
    2019 WL 359981 (E.D.N.Y. Jan. 28, 2019) ....................................................3, 17

*In re Payment Card Interchange Fee Litig*,
    827 F.3d 223 (2d Cir. 2016)........................................................................27

*In re Rosenblum*,
    545 B.R. 846 (Bankr. E.D. Pa. 2016) .............................................................43

*In re S.W. Bach & Co.*,
    425 B.R. 78 (Bankr. S.D.N.Y. 2010)...............................................................43

*Schoenbaum* v. *E.I. Dupont De Nemours & Co.*,
    2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ................................................20, 46

*Sykes* v. *Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015)..........................................................................36

*Toney–Dick* v. *Doar*,
    2013 WL 5295221 (S.D.N.Y. Sept. 16, 2013)....................................................12

*Wal-Mart Stores, Inc.* v. *Dukes*,
    564 U.S. 338 (2011)....................................................................26, 30, 39, 40

## STATUTES

11 U.S.C. § 105(a) ......................................................................................16, 44

28 U.S.C. § 157(b) ...........................................................................................15

28 U.S.C. § 1334 ..............................................................................................15

28 U.S.C. § 1408 ..............................................................................................15

28 U.S.C. § 1409 ..............................................................................................15

## OTHER AUTHORITIES

2018 Adv. Comm. Notes to 2018 Amend. Fed R. Civ. P. 23(e) ........................... passim

Fed. R. Civ. P. 23 ........................................................................................ passim

United States Constitution Article III ................................................................ passim

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC ("New GM") submits this motion (the "Motion") and respectfully represents as follows.[1]  On February 1, 2019, certain individuals asserting late-filed economic loss claims (the "Signatory Plaintiffs") filed the Rule 23 Motion.[2]  At the same time, the GUC Trust (together with the Signatory Plaintiffs, the "Movants") filed the Rule 9019 Motion,[3] for approval of a proposed class-action settlement (the "Proposed Settlement"), which seeks to resolve both late-filed Rule 23 class claims and late-filed individual non-class claims.  The Settlement Motions ask this Court to (1) preliminarily certify two nationwide limited fund settlement classes (the "Proposed Classes") of economic loss claimants (the "Plaintiffs") through an unprecedented "hybrid" limited fund, non-opt structure, (2) appoint class representatives and class counsel, and (3) approve and direct notice to the Proposed Classes and personal injury and wrongful death claimants, even if such individuals did not file claims (the "PIWD Plaintiffs"), all by March 11, 2019.  For the reasons set forth below, New GM respectfully requests a stay of proceedings related to the Proposed Settlement and the Settlement Motions.

## PRELIMINARY STATEMENT

1.      The key issue before this Court is whether it should, within a few weeks, develop an extensive record sufficient to support a finding that it is **likely to certify two nationwide**

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Rule 23 Motion.

[2]     *The Economic Loss Plaintiffs' Motion to:  (1) Extend Bankruptcy Rule 7023 to These Proceedings; (2) Approve the Form and Manner of Notice; (3) Grant Class Certification for Settlement Purposes Upon Final Settlement Approval; (4) Appoint Class Representatives and Class Counsel for Settlement Purposes; and (5) Approve the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Rule 23* [Docket No. 14408] (the "Rule 23 Motion").

[3]     *Motion of Motors Liquidation Company GUC Trust to Approve (I) The GUC Trust Administrator's Actions, (II) The Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002, 9014, and 9019, and (III) Authorize the Reallocation of GUC Trust Assets* [Docket No. 14409] (the "Rule 9019 Motion," and together with the Rule 23 Motion, the "Settlement Motions").

**limited fund classes** comprising, in the Movants' various estimations, somewhere between 9.5 million and 26 million individuals,[4] while the MDL Court, which has spent years developing a voluminous record, has **not yet certified even one statewide class**.  New GM and the MDL economic loss plaintiffs (the "<u>MDL Plaintiffs</u>") have already completed briefing (the "<u>MDL Briefing</u>") on class certification (the "<u>Class Certification Briefing</u>"), summary judgment (the "<u>Summary Judgment Briefing</u>"), and *Daubert* (the "<u>Daubert Briefing</u>").  The Movants recently acknowledged that the MDL Court's rulings on the MDL Briefing are "anticipated by June 2019"[5] and may affect the "size, scope or composition of the classes" (and the cost of notice), thus requiring the parties to "engage in good faith negotiations" regarding the "impacted" provisions of the Proposed Settlement.  (Settlement Agreement § 4.5.)  But rather than wait for these "impacts," the Movants ask this Court to jump ahead of the MDL Court and move forward **now**.  To accommodate the Movants' schedule, this Court would have to evaluate issues that have already been fully briefed in the MDL Court, for which rulings are anticipated by June 2019, and that bear directly on class certification (and other issues) in both courts.  In addition, this Court would have to rule that it is **likely** that there will be two nationwide limited fund classes, even though differences in state law and controlling limited fund case law make this unlikely.

2. Recent amendments to Rule 23(e) dictate the standard by which the Court must determine whether to preliminarily certify the Proposed Classes.  As amended, Rule 23(e) provides that "giving notice is justified by the parties' showing that the court will **likely** be able to . . . **certify the class for purposes of judgement** on the proposal."  (FED. R. CIV. P. 23(e)(1)(B)(ii)

---

[4]    *Compare Tr. of Case Mgmt. Conference Before the Hon. Martin Glenn* (Dec. 20, 2018) ("<u>Hr'g Tr. 12/20/2018</u>") at 4-5 (noting that approximately 11.4 million vehicles are subject to the Recalls at issue involving between 11.4 and 26 million individuals, but that the number may substantially decrease based on rulings from the MDL Court); *with Tr. of Case Mgmt. Conference Before the Hon. Martin Glenn* (May 25, 2018) ("<u>Hr'g Tr. 5/25/2018</u>") at 24 ("[D]on't hold me to the exact numbers, but I think we're down to . . . nine-and-a-half million cars.").

[5]    Plaintiffs' Letter dated 2/13/2019 [Docket No. 14424] ("<u>Plaintiffs' Feb. 13 Letter</u>").

(emphasis added).)  Whether certification is likely is not a "sneak peek" that delays the hard work

of class certification until a later date.  Indeed, amended Rule 23(e) is a "more exacting" standard

than before[6] and now makes clear that:

> The decision to give notice of a proposed settlement to the class is an **important event**.  It should be based on a **solid record** supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object. . . .  At the time they seek notice to the class, the proponents of the settlement should ordinarily **provide the court with all available materials** they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members.[7]

3.      The mandatory process set forth by amended Rule 23(e) dovetails with two key

Supreme Court cases.  In *Amchem Prods., Inc.* v. *Windsor*, the Supreme Court held that class

certification requires "undiluted, **even heightened**, attention in the settlement context."  521 U.S.

591, 620 (1997) (emphasis added).[8]  In *Ortiz* v. *Fibreboard Corp.*, the Supreme Court noted that

"certification of a mandatory settlement class, however provisional technically, effectively

concludes the proceeding save for the final fairness hearing," and therefore requires "**rigorous

adherence**" to Rule 23.  527 U.S. 815, 849 (1999) (emphasis added).  As a result, parties settling

limited fund classes "must present not only their agreement, but **evidence** on which the district

court may ascertain the limit and the insufficiency of the fund, with support in **findings of fact**

following a proceeding in which the **evidence is subject to challenge**."  *Id.* (emphasis added).

Notably, *Ortiz* also cautioned courts against "**uncritical adoption** . . . of figures agreed upon by

---

[6]     *In re Payment Card Interchange Fee Litig.*, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019).

[7]     2018 Advisory Committee Notes to the 2018 Amendments to Federal Rule of Civil Procedure 23(e) (the "Rule 23(e) Adv. Comm. Notes") (emphasis added).

[8]     *Amchem* undermines the Signatory Plaintiffs' misleading statement that "a *settlement* class under Rule 23(e) . . . involves considerations different from a litigation class . . . ."  (Plaintiffs' Feb. 13 Letter (emphasis in original).)  *See also In re Motors Liquidation Co.*, 591 B.R. 501, 526 (Bankr. S.D.N.Y. 2018) ("Rule 23's standards for class certification—apart from consideration of whether the case would be manageable to try as a class action—are equally applicable and rigorous in the settlement context.") (citations omitted).

the parties in defining the limits of the fund and demonstrating its inadequacy." *Id.* at 848-54
(emphasis added).

4.      In sum, to comply with amended Rule 23(e), *Amchem*, and *Ortiz*, this Court must

develop by the March 11 hearing a "solid record" supported by "specific evidentiary findings" and

conclude that the Movants will "likely" satisfy, on a final basis, each of the requirements under

Rule 23(a), Rule 23(b), *Ortiz*, and Rule 23(e) with respect to the Proposed Classes.  This is a

gargantuan task, one that would require this Court to make specific and detailed findings regarding

the likely outcome of critical threshold issues that are subsumed in the MDL Briefing and pending

before the MDL Court.  Even a cursory review of the MDL Briefing, attached hereto as Exhibits

B through E, demonstrates the number and complexity of issues that bear on class certification in

both courts, including, but not limited to, the following:

- **The aggregate liquidated amount of the Plaintiffs' claims**.  Under *Ortiz*, the
  lodestar case on limited fund class action settlements, a limited fund class cannot
  be certified unless "the totals of the aggregated liquidated claims and the fund
  available for satisfying them, set definitely at the maximums, demonstrate the
  inadequacy of the fund to pay all claims."  Here, the Proposed Settlement does not
  contemplate liquidation of any of the Plaintiffs' claims until the estimation stage,
  which occurs after final certification of the Proposed Classes.  The Movants have
  also conceded that estimation (*i.e.*, liquidation) of the Plaintiffs' claims will be
  inextricably tied to the MDL Court's rulings on the MDL Briefing and other future
  rulings: "rulings on economic loss claims for each state that have been rendered by
  Judge Furman in the MDL Action have been and will continue to be taken into
  account when we get to the estimation phase."  (Plaintiffs' Feb. 13 Letter.)
  Additionally, the Plaintiffs' claims are based on the methodologies and reports of
  their key expert, Stefan Boedeker, and will remain wholly unliquidated until the
  MDL Court rules on whether Boedeker's methodology satisfies *Daubert* and, even
  if it does, whether it proves class-wide damages.  Similarly, the value of the
  Settlement Fund (the "limited" fund here), which may be zero, will be unknown
  until estimation (long after the Proposed Classes are supposed to be finally certified
  and the releases provided).  This Court cannot find the likely amount of the
  Plaintiffs' unliquidated claims or the likely size of the "limited" fund without
  making findings that anticipate and preempt the MDL Court's rulings on the MDL
  Briefing.

- **Whether the Plaintiffs in the Proposed Classes share a common theory of recovery**. Under Rule 23(b)(1)(B), Rule 23(e)(2)(D), and *Ortiz*, the Plaintiffs must be "identified by a common theory of recovery [must be] treated equitably among themselves." *Ortiz*, 527 U.S. at 839. Although the Proposed Classes are nationwide classes, the Movants concede that the Plaintiffs assert claims under the laws of every state and D.C. for: "(i) fraudulent concealment; (ii) unjust enrichment, (iii) consumer protection claims; (iv) breach of the implied warranty of merchantability; and (v) negligence." (Rule 23 Motion ¶ 35.) Given that the claims in the Proposed Classes involve 255 different causes of action, six separate Recalls, and approximately 120 vehicle models, the Plaintiffs cannot have a common theory of recovery, particularly where the MDL Court has held that "subtle differences in state law can dictate different results for plaintiffs in different jurisdictions." *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *18 (S.D.N.Y. July 15, 2016). These issues are all presently in front of the MDL Court. Moreover, the MDL Court will rule on whether Boedeker's methodology (if admissible) proves class-wide (rather than individualized) damages. This Court cannot assess the likelihood that the Plaintiffs share a common theory of recovery under such facts without making findings that anticipate and preempt the MDL Court's rulings on the MDL Briefing. And if the Plaintiffs do not share a common theory of recovery, the Court cannot determine whether they are treated equitably among themselves.

- **The adequacy of the (as-yet unidentified) representatives of the Proposed Classes**. Under Rule 23(a)(3), the class representatives must have "typical" claims and defenses, and under Rules 23(a)(4) and 23(e)(2)(A), the representatives must adequately represent the interests of the class. Yet, the Movants have not identified any proposed class representatives. Even if they had, the likely "adequacy" of these as-yet-unidentified representatives raises myriad questions. If a proposed representative leased a vehicle subject to Recall 14V-355 (Impala Key Rotation) and asserts a claim under the Texas Deceptive Trade Practices Consumer Protection Act, is that representative's claim typical of a Plaintiff that owned a different model vehicle subject to Recall 14V-153 (Electronic Power Steering) asserting a negligence claim under Missouri common law? Can a representative asserting claims under the California Song-Beverly Consumer Warranty Act adequately represent the interests of Plaintiffs asserting unjust enrichment claims under Missouri or Texas common law? If New GM has unique defenses to the claims of the representatives, how can they adequately represent the Proposed Classes? Do differences among applicable state laws, causes of action, the various Recalls, and the many vehicle models at issue require subclasses (which, per Second Circuit law, must be decided for certification of any class action settlement) in order to comply with Rule 23(a) and *Ortiz*? Every one of these questions is before the MDL Court now. This Court cannot assess the likely answers to these questions without making findings that anticipate and preempt the MDL Court's rulings on the MDL Briefing.

- **The adequacy of the "relief" provided to the Proposed Classes**. Under Rule 23(e)(2)(C), the relief provided to the putative class members under the Proposed Settlement must be "adequate." The likely adequacy of the relief also raises myriad questions. Under Rule 23(e)(2)(C)(i), what are the costs, risks, and delay associated

with waiting a few months for key rulings from the MDL Court?  Under Rule 23(e)(2)(C)(ii), what is the effectiveness of the proposed method of distributing relief to the class, which the Movants do not plan to share with this Court until after final certification?  Under Rule 23(e)(2)(C)(iii), what are the terms of any proposed award of attorneys' fees, which will not be disclosed until after certification?  How can the "adequacy" of the relief be considered at all without first knowing the liquidated amount of the Plaintiffs' claims and the amount of the Settlement Fund?  This Court cannot assess the likely answers to these questions without making findings that anticipate and preempt the MDL Court's rulings on the MDL Briefing.

- **<u>Whether millions of Plaintiffs lack Article III standing to assert claims</u>**.  Under Article III of the United States Constitution, the Plaintiffs must have suffered injuries-in-fact and have legally cognizable claims.  *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Otherwise, this Court has no subject-matter jurisdiction over the Plaintiffs and their claims, and thus lacks the power to certify the Proposed Classes.  If the MDL Court rules Boedeker inadmissible under *Daubert*, that ruling would control here, and the Plaintiffs' claims would fail, thus depriving the Plaintiffs of Article III standing.  Moreover, the MDL Court may soon rule that all (or some) of New GM's Recall repairs were effective and that, as a result, some (or all) of the Plaintiffs will not have any legally cognizable claims.  This Court cannot assess whether the Plaintiffs have standing under Article III or whether New GM's Recall repairs fixed the alleged defects without making findings that anticipate and preempt the MDL Court's rulings on the MDL Briefing.

- **<u>Whether there are common questions of law and fact in the Non-Ignition Switch Class</u>**.  Under Rule 23(a)(2), no class may be certified unless there are questions of law or fact common to the class.  The Plaintiffs in the Non-Ignition Switch Class assert 255 different causes of action involving five separate Recalls.  Some of the five Recalls are completely unrelated, which is why the MDL Plaintiffs have sought separate putative classes for each Recall in the Class Certification Briefing.  If the MDL Plaintiffs needed separate statewide classes, how can millions of Plaintiffs be classified together here in the proposed nationwide Non-Ignition Switch Class?  This Court cannot assess the likelihood that there are common questions of law and fact for the Non-Ignition Switch Class without making findings that anticipate and preempt the MDL Court's rulings on the MDL Briefing.

5.    The Movants have failed to provide this Court with **<u>any</u>** record, let alone the required "solid record" on which it could determine any of the complex issues above that bear on whether certification of the Proposed Classes is likely.  The Settlement Motions refer vaguely to the "Proffered Evidence," but the Movants have not presented any such "evidence" to this Court, and it appears that such evidence is simply material that is currently subject to challenge in the MDL Briefing.  The Movants are left with two options.  First, they can rely on the MDL Court's

record, which they acknowledge will continue to develop based on rulings on the MDL Briefing. Second, they can ask this Court to independently develop its own record.

6.        Neither suggestion is tenable.  Either way, the Movants ask this Court to predict rulings by the MDL Court and make specific findings that may conflict with the MDL Court's future rulings.  Instead, this Court should stay proceedings relating to the Proposed Settlement pending the MDL Court's rulings on the issues raised in the MDL Briefing.  Such rulings are inextricably tied to, and will provide controlling direction on, the findings this Court is required to make under Rule 23(e) to preliminarily certify the Proposed Classes.

7.        The Movants seek to avoid confronting these difficult and clearly overlapping issues at the outset by suggesting that the Court can deal with them after having certified the Proposed Classes.  According to the Movants, **after** the Proposed Settlement and Proposes Classes have been finally approved, this Court could somehow "decertif[y]" or "re-jigger[]" the Proposed Classes (Hr'g Tr. 12/20/2018 at 11) because the "Class members may be differently situated" at Stage Three requiring "additional or different subclasses" (Rule 23 Motion ¶ 117).  Contrary to these assertions, however, consideration of these complex issues cannot be shelved until after the Proposed Classes have been finally certified.  Among other things, whether the Proposed Classes can "likely" be certified as limited fund classes is wholly dependent on whether the Plaintiffs' claims will have been liquidated, and the limited fund will have been established, before any certification.  Any suggestion that the myriad Rule 23 issues may be resolved piecemeal and in distinct stages is fundamentally flawed.

8.        Moreover, the MDL Court has spent years developing an extensive record (which will be supplemented by rulings on the *Daubert* Briefing and the Summary Judgment Briefing) to **carefully consider all factual and legal issues that bear on class certification prior to the**

**certification of any classes**.  Both proceedings involve many of the same vehicles, many of the same Recalls, many of the same legal issues, many of the same Plaintiffs, and the exact same experts.  That the Plaintiffs seek certification of settlement classes under Rule 23(b)(1) rather than litigation classes under Rule 23(b)(3) does not justify a backwards process or minimize the substantial overlap between the two proceedings.  The MDL Court has served for over four years as the lead court on these issues, and an attempt to reverse that course of dealing should be rejected.

9.     In fact, the Movants have repeatedly acknowledged the overlap between issues in the MDL Court and issues in the Proposed Settlement, having:

- stated that the MDL Court's "**near-term decisions**" on the MDL Briefing will "dramatically impact the size of the universe" of class members (and thus notices that need to be sent) and will "be reflected in all of the proceedings that [this Court] will be asked to engage in" (Hr'g Tr. 12/20/2018 at 14-15);

- linked the fate of the Proposed Settlement to proceedings in the MDL Court, acknowledging that the MDL Court's summary judgment decision may affect "**the size, scope or composition of the classes**" (Settlement Agreement § 4.5);

- provided the GUC Trust with the unilateral right to terminate the Proposed Settlement Agreement if Co-Lead Counsel appeals the **MDL Court's** summary judgment decision (*Id.* § 10.2);

- dismissed the need to "develop an evidentiary record" in this Court because "the extensive record" in the MDL Court means there "is no need for this Court to retread **ground covered in the MDL Action**" (Plaintiffs' Feb. 13 Letter); and

- noted that "rulings on economic loss claims for each state that have been rendered by Judge Furman in the MDL Action **have been and will continue to be taken into account** when we get to the estimation phase" (*Id.*).

10.    The Movants' request to have this Court approve a form of notice at the March 11 hearing is also premature.  As recently as December 20, 2018, the Movants recognized that future rulings from the MDL Court "could very well implicate whether we're talking about 26 million registrations or 11- or 12-million registrations; a cost would be the 13 million or 7 million."  (Hr'g Tr. 12/20/2018 at 6.)  Although they still expect such rulings in a matter of months, the Movants

have decided to spend up to $13.72 million and send notice to potentially millions of individuals that may not be eligible class members.  The Movants' approach of sending notice to everyone now only to sort out the details later cannot be squared with the Advisory Committee's declaration that "[t]he decision to give **notice** of a proposed settlement to the class is an **important event**" and the fact that "**a court asked to certify a settlement class will lack the opportunity**, present when a case is litigated, **to adjust the class** . . . ."  *Amchem*, 521 U.S. at 620 (emphasis added).

11.     Finally, as New GM will demonstrate in its forthcoming objection to the Settlement Motions, the Proposed Classes violate **every** requirement set forth in *Ortiz*.  The Movants ask this Court to certify, under a hybrid limited fund theory, non-opt-out classes that are comprised of (1) wholly unliquidated claims that (2) share with non-class members (*i.e.*, all PIWD Plaintiffs, regardless of whether they filed claims) a "limited" fund that may never have any assets (3) by design excludes more than 95% of the GUC Trust's assets, even though (4) the confirmed Plan provides for pro rata distributions to holders of allowed general unsecured claims so that no Plaintiff could ever recover at the expense of other Plaintiffs.  That the Proposed Settlement is an "adventurous application of Rule 23(b)(1)(B)" that *Ortiz* "counsel[ed] against" is a vast understatement, especially where the Supreme Court has made it "clear that the Advisory Committee did not contemplate that the mandatory class action codified in subdivision (b)(1)(B) would be used to aggregate unliquidated tort claims on a limited fund rationale."  527 U.S. at 843.

12.     Accordingly, to avoid the serious and unnecessary risk of inconsistent rulings and waste of resources, and to accord appropriate deference to the MDL Court, New GM respectfully requests a stay of proceedings related to the Proposed Settlement.  For the same reasons, New GM is simultaneously filing a motion to withdraw the reference (the "Motion to Withdraw").  For the avoidance of doubt, as New GM stated in its February 11, 2019 letter [Docket No. 14419], New

GM prefers the narrower stay relief requested herein, and any relief sought in the Motion to Withdraw would be unnecessary should this Court enter the Proposed Order or grant similar relief.

## BACKGROUND

### I.     THE MDL 2543 LITIGATION.

13.     In 2014, the Judicial Panel on Multidistrict Litigation established the multidistrict litigation proceeding (the "MDL") in the Southern District of New York under Judge Furman (the "MDL Court") to centralize proceedings on claims related to ignition switch and other alleged defects in vehicles manufactured by Old GM and New GM that are subject to certain recalls. The MDL Plaintiffs (many of whom are also Signatory Plaintiffs in this Court) include those who purchased or leased vehicles both before and after the sale of Old GM's assets to New GM, alleging economic harm and/or personal injuries purportedly caused by the defects.

14.     More specifically, the Fifth Amended Consolidated Complaint (the "5ACC")[9] filed in November 2017 by the MDL Plaintiffs alleges economic loss class claims against New GM on behalf of those who purchased or leased certain Old GM or New GM vehicles. There has been substantial motion practice on the 5ACC, including the Class Certification Briefing (attached hereto as Exhibit B) for certification of alleged classes in California, Missouri, and Texas (the "Bellwether States"),[10] the Summary Judgment Briefing (Exhibit C) on a wide array of critical issues, the *Daubert* Briefing (Exhibit D) on admissibility of the parties' expert testimony, and ongoing supplemental letter briefing (Exhibit E) to address newly decided cases relevant to the myriad class certification issues. Given the intertwined nature of the issues, the MDL Court

---

[9]     *In re Gen. Motors LLC Ignition Switch Litig.* [MDL ECF No. 4838] (S.D.N.Y. Nov. 27, 2017).

[10]    The MDL Court has utilized briefing on the Bellwether States to provide the parties appropriate guidance as to how such issues may be resolved for other states. That same rationale underlies the stay requested herein, as the MDL Court's rulings will provide guidance to this Court, New GM, and the Movants.

scheduled proceedings so that issues raised in the Summary Judgment Briefing and the *Daubert*

Briefing could be resolved simultaneously with the issue of certification.

## II.      THE PRIOR SETTLEMENT.

15.      On May 3, 2018, the GUC Trust filed a motion in this Court seeking approval of a

settlement (the "Prior Settlement"), which, like the Proposed Settlement here, purportedly resolved

all of the Plaintiffs' claims.[11]  The Prior Settlement sought to resolve class claims asserted under

Rule 23(b)(3) without complying with Rule 23.  The Plaintiffs filed a notice of amended Class

Claims on April 24, 2018, with hundreds of pages of allegations regarding their (b)(3) class

claims.[12]  At the status conference on May 25, 2018, this Court requested briefing on the "gating

issue" of whether the Prior Settlement required compliance with Rule 23 and noted that "[i]f the

issue was whether . . . economic loss classes should be certified, and that issue is in the process of

being briefed in discovery or whatever before Judge Furman, I'm strongly disinclined to try and

jump the gun and decide the issue before Judge Furman does."  (Hr'g Tr. 5/25/2018 at 22.)

Following a hearing on July 19, 2018, this Court held that the Prior Settlement required compliance

with Rule 23.  *In re Motors Liquidation Co.*, 591 B.R. 501 (Bankr. S.D.N.Y. 2018).

## III.      THE PROPOSED SETTLEMENT.

16.      On February 1, 2019, the Movants filed the Settlement Motions.  Like the Prior

Settlement, the Proposed Settlement seeks to settle all the Plaintiffs' and PIWD Plaintiffs' claims

---

[11]      *See Motion of Motors Liquidation Company GUC Trust to Approve (I) The GUC Trust Administrator's Actions and (II) The Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002 and 9019 and to (III) Authorize the Reallocation of GUC Trust Assets* [Docket No. 14293] (May 3, 2018).  On January 18, 2018, this Court ruled that a still earlier unexecuted settlement agreement that was negotiated by Plaintiffs and the GUC Trust was not enforceable.  *See In re Motors Liquidation Co.*, 580 B.R. 319, 364 (Bankr. S.D.N.Y. 2018).

[12]      *See Amended Exhibits A and B to Motion For An Order Granting Authority To File Late Class Proofs Of Claim, Dkt. No. 13806* [Docket No. 14280] (Apr. 24, 2018) (the "Proposed Class Claims").

11

(regardless of whether such claims were filed), which the GUC Trust allegedly continues to believe "could" or "may" in the aggregate exceed $10 billion. (Rule 9019 Motion ¶ 50(d).)

17.     Unlike the Prior Settlement, the Plaintiffs no longer assert class claims under Rule 23(b)(3) (though the Proposed Class Claims are still predicated on Rule 23(b)(3)). Instead, the centerpiece of the Proposed Settlement is certification of the Proposed Classes, *i.e.*, two nationwide non-opt-out "limited fund" classes pursuant to Rule 23(b)(1)(B) (or Rule 23(b)(1)(A) in the alternative).[13]  The first of the two Proposed Classes is for those owners and lessees of vehicles asserting late-filed economic loss claims against the GUC Trust related to the Delta Ignition Switch Defect (Recall No. 14V-047) (such putative class, the "Ignition Switch Class"). (Rule 23 Motion ¶ 41.) Notably, the Plaintiffs in the Ignition Switch Class are all asserting claims against New GM on a theory of successor liability in the MDL Court, which likewise requires proof of Old GM's liability. The second of the two Proposed Classes is for those owners and lessees of vehicles asserting late-filed economic loss claims against the GUC Trust related to various Non-Ignition Switch Defects (Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118, and 14V-153) (together with Recall 14V-047, the "Recalls") (such putative class, the "Non-Ignition Switch Class"). (Rule 23 Motion ¶ 41.) The Movants are unclear as to how many members are intended to be in the Proposed Classes. While they state there were approximately 11.4 million Old GM vehicles involved in the Recalls, they seek to send notice to multiple owners of the same vehicle. At the same time, the Signatory Plaintiffs recognize that (a) based on MDL rulings already made, it has been determined that many of the 11.4 million vehicle owners have not suffered damages, and (b)

---

[13]   The Movants' alternative Rule 23(b)(1)(A) theory does not work as a matter of law because "[c]ourts in this Circuit have repeatedly recognized that certification under Rule 23(b)(1)(A) is limited to claims for equitable relief." *See Toney–Dick* v. *Doar*, 2013 WL 5295221, at *4 (S.D.N.Y. Sept. 16, 2013) (citing as examples a utility acting toward customers, a government imposing a tax, and a riparian owner using water that would otherwise flow to the downriver owners) (citations omitted). As a result, this Motion focuses on the Movants' request to certify the Proposed Classes under Rule 23(b)(1)(B).

based on the MDL Briefing, a substantial number of the Old GM vehicle owners may not have suffered damages. For example, as part of the MDL Briefing, the MDL Court has been asked to determine whether millions of individuals who disposed of their vehicles prior to the Recalls (and before disclosure of the alleged defects in their vehicles) have incurred an economic loss or have a valid claim of some sort. (Rule 23 Motion ¶ 10; Hr'g Tr. 12/20/2018 at 6.) The Proposed Settlement also seeks to resolve all claims by PIWD Plaintiffs (regardless of whether they filed claims), many of whom are also MDL Plaintiffs, even though the PIWD Plaintiffs who support the Proposed Settlement are not part of either of the two Proposed Classes and will recover from the same "limited" fund that is for the Proposed Classes.

18. The Proposed Settlement also seeks to resolve the claims of "Pre-Closing Accident Plaintiffs," defined broadly in the agreement as "plaintiffs asserting personal injury or wrongful death clams based on or arising from an accident that occurred before the closing Date involving an Old GM vehicle that was later subject to [the same recalls specified in connection with the economic loss claims]." (Settlement Agreement, Preamble ¶ S.) A subset of such plaintiffs are represented by counsel who signed the agreement, and these 442 plaintiffs are specifically identified in the agreement, and expressly included in the Release Provision. (*See* Settlement Agreement § 5.3.)[14] However, the proposed settlement provides that the Adjustment Shares will be distributed to "Plaintiffs," defined to include "Pre-Closing Accident Plaintiffs" (*i.e.*, including all persons asserting pre-closing personal injury/wrongful death claims). (*See* Settlement

---

[14]    Of the 442 plaintiffs specifically identified in the agreement, 152 are eligible for settlements based on agreements in principle reached with New GM in the last several months. Of the remaining 290 named in the agreement, 245 filed or attempted to file proofs of claims in the Bankruptcy Court (albeit well after the deadline set forth in this Court's December 2016 Scheduling Order), and 45 have never even attempted to file claims in this Court. Of the 245 individuals who filed claims in this Court, 136 of them have also filed the same claims in the MDL Court.

Agreement § 2.5.)  Furthermore, it appears that the claims of *all* Pre-Closing Accident Plaintiffs are being released, regardless of whether they have asserted claims.[15]

19.     The Movants envision three primary "stages" of proceedings with respect to the Proposed Settlement.  (Rule 23 Motion ¶ 116.)

20.     *First*, the Movants ask this Court to  preliminarily approve the Proposed Settlement and certify the Proposed Classes under Rule 23(e) ("Stage One").  (Rule 9019 Motion ¶ 53; Rule 23 Motion ¶ 116.)  Thereafter, the GUC Trust will ask the Court for authorization to spend up to $13.72 million for a "state of the art notice program."  The Movants anticipate that the hearing to approve this relief will occur on March 11, and that the actual notice will be mailed a few weeks thereafter.  (Hr'g Tr. 12/20/2018 at 11.)  After an unstated period of time (presumably months), the Movants will then seek the Court's final certification of the Proposed Classes and approval of the Proposed Settlement, which includes full releases (with no opt out provision) for the GUC Trust and certain non-parties (*i.e.*, the GUC Trust Beneficiaries, the Avoidance Action Trust, and the defendants in the term loan litigation).

21.     *Second*, the Movants intend, only after the releases have been obtained, to pursue an estimation ("Stage Two") of the Plaintiffs' and PIWD Plaintiffs' claims.  (Rule 9019 Motion ¶ 9.)  The procedures for Stage Two (which determine what relief, if any, is available to the Plaintiffs) will presumably be spelled out in the Estimation Motion, which was not filed concurrently with the Settlement Motions.  (Rule 9019 Motion ¶ 9.)  The Movants acknowledge

---

[15]     As New GM will describe in more detail in its forthcoming objection to the Settlement Motions, the Rule 23 Motion and its exhibits contain different, conflicting definitions with respect to the PIWD Plaintiffs purportedly covered by the Agreement, which (at least in the proposed notices) appear to improperly release the claims of **all** PIWD Plaintiffs, regardless of whether they have asserted claims or are signatories to the Proposed Settlement. *See, e.g.*, Rule 23 Motion Ex. C, Final Order ¶ 9 (release applies to "All Plaintiffs"); Ex. D, Short Form Notice (the Settlement includes 'Affected Persons' in the United States who, prior to July 10, 2009, bought or leased certain Old GM vehicles or suffered personal injury or wrongful death in an accident involving certain Old GM vehicles."); Ex. G, Long Form Notice at 5 ("Under the Settlement, each Affected Person will be deemed to have forever waived and released (the 'Waiver') any claims . . . .").

09-50026-mg    Doc 14431-4    Filed 02/22/19    Entered 02/22/19 00:53    Main Document
Pg 25 of 63

that the Stage Two estimation proceeding will leave the Plaintiffs and PIWD Plaintiffs with **no recovery** at all if this Court's estimation proceeding, which will be guided by the MDL Court's rulings, does not trigger the Adjustment Shares (even though 95% of the GUC Trust's assets, and assets in the Avoidance Action Trust, could be available to the Plaintiffs and PIWD Plaintiffs but for the Proposed Settlement).  (*See, e.g.*, Rule 23 Motion Ex. D.)  Thus, it is not until Stage Two (or later)—after the Proposed Classes have been finally certified and the comprehensive releases granted—that any of the Plaintiffs' claims become liquidated and the number of Adjustment Shares (if any) in the Settlement Fund becomes known.

22.      *Third*, the Movants anticipate seeking this Court's approval of "allocation and distribution procedures" ("Stage Three").  (Rule 23 Motion ¶ 116.)  Stage Three will therefore determine how to allocate the value (if any) in the Settlement Fund among the Proposed Classes and the PIWD Plaintiffs, and will be "guided by, and flow from, the Court's determinations in the estimation proceedings."  (Rule 23 Motion ¶ 117.)  Such allocation may require "additional or different subclasses [to] be created at [Stage Three], if necessary."  (Rule 23 Motion ¶ 117.)  Accordingly, although virtually nothing is disclosed about such allocation procedures, the Movants concede that events in Stage Three may undo any certification obtained in Stage One.  (*See* Hr'g Tr. 12/20/2018 at 11 ("There is a possibility . . . that the class could be decertified, re-jiggered."); *but see Amchem*, 521 U.S. at 620 ("[A] court asked to certify a **settlement class will lack the opportunity, present when a case is litigated, to adjust the class** . . . .") (emphasis added).)

## **JURISDICTION**

23.      With respect to New GM's request for a stay, (i) this Court has subject-matter jurisdiction to consider and determine the relief requested pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

24.     Pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), New GM requests an order, substantially in the form of the proposed order attached hereto as Exhibit A (the "Proposed Order") granting a stay of proceedings related to the Proposed Settlement and the Settlement Motions and such other relief as is just and proper. Alternatively, New GM requests a stay of proceedings related to the Proposed Settlement pending the MDL Court's resolution of New GM's Motion to Withdraw.

## ARGUMENT

**I.     PRELIMINARY APPROVAL UNDER RULE 23(e) REQUIRES THIS COURT TO HAVE A SUITABLE BASIS IN THE RECORD AT THE MARCH 11 HEARING TO FIND THAT IT CAN LIKELY CERTIFY THE PROPOSED CLASSES.**

**A.     Amended Rule 23(e) Sets Forth the Process the Movants Must Follow and the Record this Court Must Have to Preliminarily Certify the Proposed Classes.**

25.     To provide the Plaintiffs and PIWD Plaintiffs with notice of the Proposed Settlement, the Movants must obtain preliminary approval of the Proposed Settlement under Rule 23(e), which sets forth the mandatory process for approving a settlement class and states:

> (e) SETTLEMENT, VOLUNTARY DISMISSAL, OR COMPROMISE.  The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> *   *   *
>
> (B) *Grounds for a Decision to Give Notice.*  The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will *likely* be able to:
>
> > (i) approve the proposal under Rule 23(e)(2); and
>
> > (ii) certify the class for purposes of judgment on the proposal.

26.     On December 1, 2018, Rule 23(e) was amended to "alter the standards that guide a court's preliminary approval analysis."  *In re Payment Card*, 2019 WL 359981, at *11. Specifically, the standard for such approval is now "more exacting than the prior requirement." *Id.* at *12.  Thus, Rule 23(e) now makes clear that a court reviewing a proposed class action settlement "must **assess** whether the parties have **shown** that the court will **likely** be able to grant final approval and **certify the class**."  *Id.* at *12, n.21 (emphasis added); *see also Hays* v. *Eaton Grp. Attorneys, LLC*, 2019 WL 427431, at *3 (M.D. La. Feb. 4, 2019) ("The recent amendment to Rule 23(e) makes **clear** that its procedural safeguards apply to a 'class proposed to be certified for purposes of settlement' and requires the Court to **conclude** that it will **likely** be able, after final hearing, to certify the class.") (emphasis added).  Even before the changes to Rule 23(e), however, courts had an "independent responsibility to ensure that the requirements of Rule 23(a) and (b) have been met."  *See Oladapo* v. *Smart One Energy, LLC*, 2017 WL 5956907, at *8-11 (S.D.N.Y. Nov. 9, 2017) (concluding "[o]n the present record" that it "cannot recommend that the Class be preliminarily certified for settlement purposes," where, among other things, the movants had not presented "one iota" of evidence on the numerosity, typicality, and commonality requirements); *De Leon* v. *Bank of Am., N.A.*, 2011 WL 13137935, at *3 (M.D. Fla. Aug. 31, 2011) ("[T]he Court finds that the evidence and legal authority presented is insufficient . . . until the requirements for class certification are met, preliminary approval of the Settlement Agreement would be premature.").

27.     Under amended Rule 23(e), therefore, the Movants must provide this Court with a "solid record" sufficient to determine that "the court will *likely* be able to" both (a) certify the Proposed Classes under Rule 23(a), Rule 23(b)(1)(B) (or Rule 23(b)(1)(A) in the alternative), and applicable law and (b) pursuant to Rule 23(e)(2), find that the Proposed Settlement is "fair,

reasonable, and adequate." The criteria that bear on whether a class settlement is fair, reasonable,

and adequate include, among other things, whether representatives and counsel have adequately

represented the class, whether the relief provided under the settlement is adequate, and whether

the proposal treats class members equitably relative to each other. And even if "both parties desire

settlement, this Court is not at liberty to merely rubberstamp approval." *See Eaton Grp. Attorneys,*

*LLC*, 2019 WL 427331, at *8 (applying amended Rule 23(e)).

28.     The Advisory Committee Notes to amended Rule 23(e) reinforce the holdings in

*Amchem* and *Ortiz*. In *Amchem*, the Supreme Court made clear that class certification requires

"undiluted, **even heightened**, attention in the settlement context." *Amchem* 521 U.S. at 620

(emphasis added). In *Ortiz*, the Supreme Court held that threshold limited fund issues should be

evaluated "**independent of the agreement** of defendants and conflicted class counsel . . .

following a proceeding in which the **evidence is subject to challenge**" rather than the "**uncritical**

**adoption** . . . of figures agreed upon by the parties in defining the limits of the fund and

demonstrating its inadequacy." *Id.* at 848-53. Rule 23(e) combines and reinforces these holdings:

> The decision to give notice of a **proposed settlement** to the class is an **important event**.
> It should be based on a **solid record** supporting the conclusion that the proposed settlement
> will likely earn final approval after notice and an opportunity to object. . . . **At the time**
> **they seek notice to the class, the proponents of the settlement should ordinarily**
> **provide the court with all available materials they intend to submit to support**
> **approval under Rule 23(e)(2)** and that they intend to make available to class members.
> (Rule 23(e) Adv. Comm. Notes (emphasis added).)

29.     Rule 23(e) goes further: "if a class has not been certified, the [settling] parties must

ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to

certify the class. . . . [T]he court cannot make the decision regarding the prospects for certification

without **a suitable basis in the record**." (Rule 23(e) Adv. Comm. Notes (emphasis added).)

Moreover, under amended Rule 23(e), a court can direct notice to the class "**only after**

**determining** that the prospect of class certification and approval of the proposed settlement

justifies giving notice."  (Rule 23(e) Adv. Comm. Notes (emphasis added).)

30.      In short, Rule 23(e) requires this Court to develop a "solid record **now** to support

the likelihood of certification of the Proposed Classes.  It cannot simply be deferred until after the

preliminary approval stage.  The Movants concede that proceedings in the MDL Court will impact

the scope and viability of the Proposed Settlement, but they also take the position that any decisions

from the MDL "will be reflected by necessity as part of the estimation proceedings."  (Hr'g Tr.

12/20/2018 at 15; *accord* Plaintiffs' Feb. 13 Letter.)  This is backwards, clearly at odds with the

Advisory Committee Notes, and conflicts with the approach adopted by the MDL Court to not

defer consideration of issues raised in the Summary Judgment Briefing and the *Daubert* Briefing

until after certification.  The rulings from the MDL Court, even if they relate to damages or affect

the Stage Two estimation, **also** bear directly on this Court's mandatory assessment under Rule

23(e) of the likelihood of class certification in connection with preliminarily approving the

Proposed Settlement.  The Movants' position also directly conflicts with *Ortiz* and *Amchem*, which

prohibit the Movants from punting such questions to estimation at Stage Two (although their

impermissible desire to punt explains the Movants' admission that their Proposed Classes may

have to be "decertified" and "re-jiggered" during Stage Three).  (Hr'g Tr. 12/20/2018 at 11; Rule

23 Motion ¶ 117 ("Class members may be differently situated" at Stage Three requiring

"additional or different subclasses").)

**B.      This Court's Determination of the Prospects for Certification Requires
        Analysis of the Likelihood that the Movants' Proposed Classes Satisfy All
        Aspects of Rule 23 and Related Certification Prerequisites.**

31.      As demonstrated by the MDL Briefing, certification of a class (whether pursuant to

a limited fund theory or otherwise), requires the Movants to "actually *prove*—not simply plead—

that their proposed class satisfies each requirement of Rule 23 . . . ."  *Halliburton Co.* v. *Erica P.*

*John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original). Further, it makes no difference that Movants are "settling" class certification issues. Notwithstanding the well-established principle that certification of settlement classes requires the same scrutiny as certification of litigation classes, the Signatory Plaintiffs have repeatedly stated that the two standards are "a lot different." (Hr'g Tr. 12/20/2018 at 7; *see also* Plaintiffs' Feb. 13 Letter (arguing that there was no overlap with the MDL Court because "Your Honor is being asked to consider a *settlement* class under Rule 23(e), which involves considerations different from a litigation class . . . ." (emphasis in original).) However, a court "[c]onfronted with a request for settlement-only class certification" must apply "**undiluted, even heightened, attention** in the settlement context." *Amchem*, 521 U.S. at 620. This Court also recognized that "Rule 23's standards for class certification—apart from consideration of whether the case would be manageable to try as a class action—are equally applicable and rigorous in the settlement context." *In re Motors Liquidation Co.*, 591 B.R. 501, 526 (Bankr. S.D.N.Y. 2018) (citation omitted).[16]

> **1.      This Court's Rule 23(e) Determination of the Prospects for Certification Requires Analysis of the Likelihood that the Movants' Proposed Classes Satisfy Rule 23(a) and Certification Prerequisites.**

32.      "To qualify for class certification," the Movants "must first demonstrate that" the Proposed Classes satisfy the "four requirements of Rule 23(a)." *In re Deutsche Bank AG Securities Litig.*, 2018 WL 4771525, at *4 (S.D.N.Y. Oct. 2, 2018). Rule 23(a) provides as follows:

> (a) PREREQUISITES. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

---

[16]  *See also Schoenbaum* v. *E.I. Dupont De Nemours & Co.*, 2009 WL 4782082, at *12 (E.D. Mo. Dec. 8, 2009) (denying approval of a proposed class settlement, noting that settlement "does not justify less rigorous—and potentially less accurate—class certification proceedings . . . .").

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

33.     In addition to Rule 23(a)'s express prerequisites (numerosity, commonality, typicality, and adequacy of representation), the Movants must also establish that the alleged injuries in the Proposed Classes can be shown by common evidence because "no class may be certified that contains members lacking Article III standing," which requires each member-Plaintiff to "have suffered an 'injury in fact.'" *Denney* v. *Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).  In fact, because all class members must have a cognizable legal injury, a court determining the propriety of class certification may also need to assess the merits of the underlying claims.  "[W]hen a claim cannot succeed as a matter of law, the Court should not certify a class on that issue." *In re Beacon Assocs. Litig.*, 2012 WL 1372145, at *2 (S.D.N.Y. Mar. 19, 2012) (citation omitted).  As set forth below, these precise issues are being decided by the MDL Court.

> **2.      This Court's Rule 23(e) Determination of the Prospects for Certification Also Requires Analysis of the Likelihood that the Movants' Proposed Classes Satisfies Rule 23(b)(1)(B) and *Ortiz*.**

34.     Next, the Movants "must demonstrate that" the Proposed Classes satisfy "Rule 23(b) in one of three ways." *Deutsche Bank*, 2018 WL 4771525, at *4.  The Movants seek to certify the Proposed Classes under Rule 23(b)(1), which provides as follows:

(b) TYPES OF CLASS ACTIONS.  A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

35.     Because the Movants seek to certify the Proposed Classes as limited fund classes under Rule 23(b)(1)(B), *Ortiz* controls.  Pursuant to *Ortiz*, a fund is "limited" only if: (1) "the totals of the aggregated **liquidated** claims and the fund available for satisfying them, set definitely at the maximums, demonstrate the inadequacy of the fund to pay all claims," (2) "the **whole** of the inadequate fund [is] to be devoted to the overwhelming claims," and (3) "the claimants identified by a **common** theory of recovery [are] treated **equitably** among themselves."  *Ortiz*, 527 U.S. at 838-39 (emphasis added).  As set forth below, issues raised in the MDL Briefing will impact this Court's assessment of the likelihood that these necessary characteristics are satisfied.

36.     Although this Court's evaluation of the likelihood that the Proposed Settlement satisfies the first and third criteria of *Ortiz* depends on rulings from the MDL Court, the Proposed Settlement on its face violates the second criterion—that the "the whole of the inadequate fund . . . be devoted to" the Plaintiffs' class claims.  Here, the proposed limited fund is an unprecedented hybrid, because the limited fund (if any) would be available not only (i) to the proposed Rule 23 economic loss classes (*i.e.*, the Proposed Classes) but also to (ii) non-class claimants (*i.e.*, the PIWD Plaintiffs, regardless of whether they have filed claims).  *See Ortiz* v. *Fibreboard Corp.*, 827 U.S. 815, 864-65 (1999) ("Assuming, arguendo, that a mandatory, limited fund rationale could under some circumstances be applied to a settlement class of tort claimants, it would be essential that the fund be shown to be limited independently of the agreement of the parties to the action, and **equally essential under Rules 23(a) and (b)(1)(B) that the class include all those with claims unsatisfied at the time of the settlement negotiations**, with intraclass conflicts addressed by recognizing independently represented subclasses.") (emphasis added).

## II.    TO SATISFY RULE 23(E), THIS COURT MUST DEVELOP A SOLID RECORD THAT WOULD SIGNIFICANTLY OVERLAP WITH THE MDL COURT.

37.    In order to satisfy Rule 23(e)'s requirements and find that the Proposed Classes are likely to be certified, the Court must address various legal and factual issues that have already been briefed in the MDL Court.  For this reason, this Court should stay proceedings relating to the Proposed Settlement to await any rulings from the MDL Court that impact the determinations this Court must make as to whether, among other things:  (1) the Proposed Classes likely satisfy Rule 23(b)(1)(B) and *Ortiz* and its progeny; (2) the proposed representatives (currently unidentified) likely assert typical and common claims and are otherwise likely to be adequate representatives; (3) the relief provided to the Plaintiffs is likely to be adequate; (4) millions of Plaintiffs lack Article III standing or are otherwise unable to assert legally cognizable claims; (5) the Plaintiffs classified together in the Ignition Switch Class have sufficiently related legal and factual issues to avoid the need for subclasses or separate classes, considering many of them had the newer, non-"defective" ignition switch originally installed in their vehicle, but their vehicle was subject to the Recall because there was some uncertainty as to whether a relatively small number had their vehicle repaired with the older, "defective" ignition switch, and (6) the millions of Plaintiffs classified together in the proposed Non-Ignition Switch Class based on five Recalls have sufficiently related legal and factual issues to avoid the need for subclasses or separate classes.

### A.    This Court Must Find it Likely that the Proposed Classes Satisfy Certain Necessary Conditions of Limited Fund Classes Set Forth in *Ortiz*.

38.    The Movants here seek to certify the Proposed Classes under Rule 23(b)(1)(B) as "limited fund classes."  Accordingly, to apply the Rule 23(e) standard to the Proposed Settlement, this Court must find at the requested March 11 hearing that it can likely certify the Proposed Classes under the requirements set forth by the Supreme Court in *Ortiz*.  Determining that these requirements are likely met necessarily requires evaluating issues squarely before the MDL Court.

> **1.** **This Court Cannot Determine Whether it Is Likely that the Value of the Liquidated Claims Exceeds the Value of the Settlement Fund Without Considering Issues Being Decided in the MDL Court.**

39.     One necessary characteristic of a limited fund class that is better assessed after the MDL Court rules on the MDL Briefing is that the "totals of the aggregated **liquidated claims** and the fund available for satisfying them, set definitely at the maximums, demonstrate the inadequacy of the fund to pay all claims." *Ortiz*, 527 U.S. at 838 (emphasis added). Therefore, this Court must find that the Plaintiffs have asserted liquidated claims and that the likely value of the aggregated **liquidated** claims asserted by the Plaintiffs exceeds the likely value of the proposed Settlement Fund, which will not become known until the estimation stage. To make a finding as to the liquidated amount of the Plaintiffs' claims and the value of the Settlement Fund, this Court would have to speculate on March 11 as to the outcome of estimation (Stage Two), when the Plaintiffs' claims become liquidated and the value of the Settlement Fund becomes known. The Movants are therefore asking this Court to certify classes first and then determine later whether the requirements of class certification have been met. The Court cannot make even these speculative findings, however, without also predicting the outcome of the MDL proceedings.

40.     <u>First</u>, the Movants have already conceded that "the key rulings on economic loss claims for each state that have been rendered by Judge Furman in the MDL Action have been and will continue to be taken into account by the Settlement Parties when we get to the estimation phase." (Plaintiffs' Feb. 13 Letter.) For this Court to determine the liquidated amount of the Plaintiffs' claims and the value of the Settlement Fund, as it is required to do under *Ortiz* and amended Rule 23(e), the Court must necessarily consider the outcome of the estimation phase, which depends on "key rulings" from the MDL Court. Therefore, whether the Court concludes on March 11 that it is likely that the Plaintiffs' claims will be liquidated in the aggregate amount of

$0, $96 billion,[17] or any other amount, the Court will necessarily be guessing at the MDL Court's "key rulings" that bear on the liquidation of the Plaintiffs' claims (including, but not limited to, upcoming rulings on the effectiveness of New GM's Recall repairs and the validity and applicability of the Plaintiffs' various state law causes of action under 51 separate jurisdictions). The Movants have neither identified these key rulings nor submitted any evidence regarding the likely outcome of these key rulings.

41.    Second, the liquidated amount of the Plaintiffs' claims, which then dictates the value (if any) of the Settlement Fund, depends entirely on whether the "Proffered Evidence" (which appears to be nothing more than materials from the MDL Court) is admissible under *Daubert* and can demonstrate a class-wide injury.  The centerpiece of the Proffered Evidence appears to be Boedeker's conjoint survey methodology.  The Plaintiffs would have no claims without Boedeker, as Boedeker's report is their "proof" that the "fund is wholly inadequate to satisfy these claims" as required by *Ortiz*.  (Rule 23 Motion ¶ 107.)  And if Boedeker's opinions are not admissible or fail to reliably demonstrate legally cognizable damages that are measurable on a class-wide (rather than individualized) basis (issues presently before the MDL Court), then the Plaintiffs have no evidence to support any liquidation of their claims.  Simply put, this Court cannot find that it can "likely" certify proposed limited fund classes without, among other things, making a detailed finding on the likely outcome of estimation at Stage Two, and this Court cannot do that without a full *Daubert* analysis.[18]

---

[17]    If Boedeker's report (which was not submitted to this Court in connection with the Settlement Motions) continues to use "median damages" estimates that range from $88 to $8,094 per vehicle, total aggregate damages for 11.96 million vehicles could range from between $1 billion to $96 billion—an absurdly imprecise range that is the antithesis of a "liquidated" amount.

[18]    *See, e.g.*, *In re Nickels Midway Pier, LLC*, 450 B.R. 58, 66-67 (D.N.J. 2011) (remanding issue because of bankruptcy court's failure, as part of a claims estimation proceeding, to "conduct[] a . . . *Daubert* analysis of the admissibility of the expert reports and testimony of [the experts]" and noting that "nothing . . . supports a

42.     This same reasoning underscores why courts routinely resolve *Daubert* issues prior

to or in connection with certification issues.  *See In re Blood Reagents Antitrust Litig.*, 783 F.3d

183, 187 (3d Cir. 2015) (citing cases adopting that approach); *see also Wal-Mart Stores, Inc.* v.

*Dukes*, 564 U.S. 338, 354 (2011) ("doubt[ing]" a court's "conclu[sion] that *Daubert* did not apply

to expert testimony at the certification stage of class-action proceedings.").   Pre-certification

resolution of *Daubert* issues is particularly critical in the limited fund context because, according

to one treatise, "after *Ortiz*, no decision . . . has certified a 'limited fund' class involving

unliquidated damages, while numerous courts have either denied (b)(1)(B) certification or

decertified (b)(1)(B) classes that had been certified under pre-*Ortiz* law."  (McLaughlin on Class

Actions § 5:10 (Oct. 2018).)  As shown in the *Daubert* Briefing, the MDL Court will address the

*Daubert* issues before certification.   Importantly, the rulings on Boedeker go beyond the

Bellwether States and affects the claims of **all** Plaintiffs.   Because "plaintiff[s] cannot rely on

challenged expert testimony, when critical to class certification, to demonstrate conformity with

Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony

satisfies the standard set out in *Daubert*."  *In re Blood Reagents*, 783 F.3d at 187.

43.     Instead of waiting for the MDL Court's critical rulings which bear on the viability

of the Plaintiffs' claims, however, the Movants ask this Court to defer consideration of the

admissibility of expert testimony to Stage Two (estimation) when the Proposed Classes will have

already been finally certified and releases granted.   But the admissibility of Boedeker under

*Daubert* and the determination of what Boedeker's report proves (if anything) are critical to

demonstrating the existence of both injury and damages, without which the Plaintiffs have no

---

conclusion that a Bankruptcy Court may estimate claims based on potentially unreliable expert evidence, over the
expression objection of a party").

claims to certify.  Because limited fund classes require proof of the amount of liquidated claims prior to certification, the MDL Court's rulings on these issues unquestionably impact the Movants' likelihood of certifying the Proposed Classes.

> **2.    This Court Cannot Determine Whether it Is Likely that the Proposed Classes Comprise Plaintiffs Sharing a Common Theory of Recovery Without Considering Issues Being Decided in the MDL Court.**

44.    Another necessary characteristic of a limited fund class that is better assessed after the MDL Court rules on the MDL Briefing is that the class members must share a "common theory of recovery" and be "treated equitably among themselves." *Ortiz*, 527 U.S. at 839.  To apply Rule 23(e) to the Proposed Settlement, this Court must have a suitable basis in the record at the March 11 hearing to determine that both of the Proposed Classes contain only Plaintiffs who share a "common theory of recovery" and are "treated equitably among themselves."  And to the extent that the Plaintiffs do not share a common theory of recovery or would not be treated equitably among themselves, then the Court would need to create subclasses at the preliminary approval stage. *See Amchem*, 521 U.S. at 620 ("[A] court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.").  Indeed, "where differences among members of a class are such that subclasses must be established, **we know of no authority that permits a court** to approve a settlement . . . on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups." *In re Payment Card Interchange Fee Litig*, 827 F.3d 223, 235 (2d Cir. 2016) (internal quotations omitted).  Moreover, limited fund class certification often requires subclasses represented by separate and independent counsel.[19]

---

[19]    *See Ortiz*, 527 U.S. at 864 (requiring class to include "all those with claims unsatisfied at the time of the settlement negotiations, with intra-class conflicts addressed by recognizing independently recognized subclasses"); *see also In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 1999 WL 782560, at *9 (E.D. Pa. Sept. 27, 1999) ("To the extent that the causation analysis would be different for those with valvular damage

45.     For this Court to find at the March 11 hearing that the Plaintiffs share a common

theory of recovery and are treated equitably among themselves, it must, at the very least, canvass

the laws of 51 jurisdictions as well as the facts relating to six different Recalls involving

approximately 120 different vehicle models.  By way of example only, with respect to the Non-

Ignition Switch Class, this Court must find it likely that the claims of Plaintiffs who owned a new

2004 Chevrolet Monte Carlo subject to Recall 14V-355 (Impala Key Rotation Recall) under the

Alaska Unfair Trade Practices and Consumer Protection Act share a "common theory of recovery"

with Plaintiffs who leased a 2004 Chevrolet Malibu subject to Recall 14V-153 (Electronic Power

Steering Recall) under the South Carolina Regulation of Manufacturers, Distributors, and Dealers

Act, and Plaintiffs who owned a used 2008 Buick Enclave subject to Recall 14V-118 (Side Impact

Airbag Recall) under the law of warranty of implied merchantability in North Dakota.

46.     These determinations are necessary because, to the extent differences among

applicable state laws and the factual circumstances of the various Recalls require the creation of

subclasses within the Non-Ignition Switch Class, the Court must find that it can likely certify such

subclasses at the March 11 hearing.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL

3920353, at *18 (S.D.N.Y. July 15, 2016) ("[T]he Court will separately address each claim with

respect to each jurisdiction, as subtle differences in state law can dictate different results for

plaintiffs in different jurisdictions.").  If the MDL Plaintiffs need separate classes for each of the

Recalls (which is their approach in the MDL Class Certification Briefing and an issue that  will be

further clarified by the MDL Court's rulings on the MDL Briefing), then similarly situated

---

as opposed to the more rare PPH condition, there is a fundamental difference in the theory of liability and the
grounds for recovery between these two classes . . . The individual question of whether a class member ingested
Pondimin and for how long is one that would complicate the claims administration process and, absent a costly
individual causation analysis, it would be difficult to ensure that those with a common theory of recovery are
treated equitably among themselves.").

Plaintiffs in this Court would also need classes. Pursuant to *Ortiz*, 527 U.S. at 864, any such subclasses would likely require separate counsel, and pursuant to *Amchem*, 521 U.S. at 620, the need for subclasses must be evaluated now. But notwithstanding *Ortiz*, *Amchem*, Rule 23(e), and their own admission that "Class members may be differently situated," the Movants ask this Court to defer consideration of the need for "additional or different subclasses" until the allocation stage, *i.e.*, **well after** this Court has already certified two nationwide classes. (Rule 23 Motion ¶ 117.)

47.    As reflected in the Class Certification Briefing and the Summary Judgment Briefing attached as <u>Exhibits B</u> and <u>C</u>, the MDL Court has already begun this strenuous process by requesting substantial briefing on the laws of the Bellwether States. In fact, it should give this Court considerable pause that the Plaintiffs seek nationwide classes, even though the MDL Plaintiffs are pursuing statewide classes for the Bellwether States because the MDL Court has already identified distinctions among state laws that make nationwide classes impossible.[20]

48.    For this Court to preliminarily determine, pursuant to Rule 23(e) and *Ortiz*, that all Plaintiffs share a "common theory of recovery," and that all Plaintiffs will be treated equitably without needing subclasses, this Court will need to make findings regarding the "subtle differences in state law [which] can dictate different results for plaintiffs in different jurisdictions." *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *18. The MDL Court has already begun to analyze those differences, however, and its rulings with respect to the Bellwether States (and other future filings) will provide controlling direction for this Court.

---

[20]    *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *16 (S.D.N.Y. July 15, 2016) (dismissing MDL Plaintiffs' proposed nationwide RICO claim); *id.* at *18 ("[D]espite the repetition it entails— the Court will separately address each claim with respect to each jurisdiction, as subtle differences in state law can dictate different results for plaintiffs in different jurisdictions."); *see generally In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2839154 (S.D.N.Y. June 30, 2017) (analyzing common law and statutes in various states).

09-50026-mg Doc 14431-4 Filed 02/22/19 Entered 02/22/19 00:53:41 Main Document
Pg 41 of 63

**B. This Court Cannot Find it Is Likely that the Proposed Class Representatives Adequately Represent the Proposed Classes Without Considering Issues Being Decided in the MDL Court.**

49. Even assuming that nationwide classes without any subclasses are appropriate (an assumption largely foreclosed by rulings from the MDL Court), this Court must still have a "suitable basis" in the record at the March 11 hearing to determine that each of the proposed class representatives "fairly and adequately protect the interests of the class." (FED. R. CIV. P. 23(a)(4).) A proposed representative is more likely to be adequate if he or she has a typical claim susceptible to common class-wide proof, so the "requirements [commonality and typicality] therefore also tend to merge with the adequacy-of-representation requirement . . . ." *Wal-Mart Stores*, 564 U.S. at 349 n.5. Rule 23(e)(2)(A) similarly requires an upfront evaluation of whether "the class representatives and class counsel have adequately represented the class." Accordingly, this Court's evaluation of the adequacy of the proposed representatives invokes issues arising under Rule 23(a)(2) (commonality), Rule 23(a)(3) (typicality), and Rules 23(a)(4) and (e)(2)(A) (adequacy of representation).

50. Because the "adequacy of the representation of the class is the **linchpin** to securing the preclusive effect of the class proceedings as to absent members" (McLaughlin on Class Actions § 4:26 (Oct. 2018) (emphasis added)), it is remarkable that the Proposed Settlement does not even identify the representatives of the Proposed Classes. Therefore, at present, this Court has **zero basis**—let alone a "suitable basis" or a "solid record"—to evaluate the likelihood that it will find the proposed representatives to be adequate.[21]

---

[21] The Rule 23 Motion defines the "Ignition Switch Class Representatives" as the "prospective class representatives for the Ignition Switch Plaintiffs" and the "Non-Ignition Switch Class Representatives" as the "prospective class representatives for the Non-Ignition Switch Plaintiffs" (Rule 23 Motion p. 1.) To add to the confusion, the Ignition Switch Class Representatives and the Non-Ignition Switch Class Representatives are together defined as the "Economic Loss Plaintiffs," a term that is defined in the Settlement Agreement to include all putative members of the Proposed Classes. (Settlement Agreement Preamble § S.b.) Section 2.67 of the Settlement Agreement

51.     But assuming for the moment that the proposed representatives are simply the named claimants in the Proposed Class Claims filed before the Prior Settlement, seven of the named claimants in the Proposed Class Claims are also proposed class representatives in the MDL Court, where New GM has argued that such individuals are subject to unique defenses or otherwise assert claims that are not typical of the proposed statewide classes.  To the extent that the MDL Court rules that any of the individuals who may be class representatives here cannot adequately represent the MDL classes, it is hard to fathom how they could adequately represent any of the Proposed Classes in these proceedings.

52.     The Rule 23(a) elements of commonality and typicality, which (as noted above) necessarily inform whether the proposed representatives are adequate, are also already fully briefed and set to be decided by the MDL Court with respect to the Bellwether States.  The rulings for the Bellwether States, combined with any other certification proceedings that may occur in the MDL Court, will determine how many class representatives are necessary to ensure the adequate representation that Rules 23(a) and 23(e) require.  That number could be as few as two (one for each of the two Proposed Classes) or could be significantly more (if variations in state law and the number of Recalls at issue, among other things, create a need for subclasses).  The MDL Court will also decide other issues relating to the adequacy of representation, including whether individuals are capable of being adequate representatives of classes if they, among other things: (a) disposed of their vehicles prior to the Recalls, (b) cannot show a manifest defect and thus have no claims as a matter of law (a ruling the MDL Court has already made with respect to eight states),

provides that the proposed class representatives are identified on Schedule 3 thereto, but Schedule 3 instead appears to identify three PIWD Plaintiffs represented by two specific law firms.

(c) testified that they did not factor safety into purchase decisions, or (d) cannot demonstrate that their vehicles were unmerchantable.

53.     In the absence of rulings from the MDL Court, this Court would be forced to establish a suitable record to determine whether the unidentified proposed representatives are likely adequate, an inquiry rendered even more difficult by the fact that the named claimants in the Proposed Class Claims do not come from all 51 applicable jurisdictions.  The Proposed Class Claims, for example, list Frances Howard of Jackson, Mississippi as a named claimant, but do not include any named claimants from certain other states (*e.g.*, Alaska).  As a result, this Court would have to find it likely at the March 11 hearing that Ms. Howard (or some other claimant in the Proposed Class Claims) is an adequate representative of the Plaintiffs from Alaska because, among other things, her claims under Mississippi law are typical of claims under Alaska law (including for claims relating to different Recalls).  The Movants have failed to provide this Court with any basis—let alone a suitable basis grounded in fact and law—to make such a determination.  The MDL Court's rulings will fill in at least some of the gaps left by the Movants' omissions.

54.     Of course, without knowing the identities of the proposed representatives, it is hard to say precisely how rulings from the MDL Court will impact this Court's mandated assessment under Rule 23(e).  But this Court can only benefit from the MDL Court's rulings on the foregoing issues, all of which bear on whether the proposed representatives (once known) are likely adequate.

**C.     This Court Cannot Find it Is Likely that the Relief Provided to the Plaintiffs in the Proposed Classes Is Adequate Without Considering Issues Being Decided in the MDL Court.**

55.     To apply Rule 23(e) to the Proposed Settlement, this Court must have a "suitable basis" in the record at the March 11 hearing to determine that the relief provided to the Plaintiffs under the Proposed Settlement is adequate.  (FED. R. CIV. P. 23(e)(2)(C).)  Therefore, to determine that the relief is likely adequate, this Court must predict the outcome of the Stage Two estimation

procedure as well as the allocations in Stage Three, which, of course, depend on an allocation methodology that the Movants promise to provide at some later date. Predicting the outcome of the Stage Two estimation procedure, however, necessarily entails predicting the outcome of the MDL Court's ruling on the admissibility of Boedeker's expert reports and damages analysis, along with myriad other issues raised in the MDL Briefing.

56.     For their part, the Movants effectively concede that this Court cannot evaluate the adequacy of relief at the March 11 hearing without further rulings from the MDL Court. First, the proposed notice forthrightly states that there is "no guarantee that the claims estimate order will require New GM to issue **any** shares," even though the Plaintiffs "will be prevented from pursuing [their] own lawsuit" because of the non-opt-out release. (Rule 23 Motion Ex. D (emphasis added).) Here, the proposed notice provides neither this Court nor the notice recipients of critical information such as whether the notice recipient is eligible to make a claim for, much less receive, any compensation from the Adjustment Shares. The likelihood of a notice recipient being an eligible claimant who can receive Adjustment Shares depends entirely on future rulings from this Court (through Stage Two estimation and Stage Three allocation) **and** the MDL Court.

57.     Second, the Signatory Plaintiffs readily admit that the adequacy of the relief in the Proposed Settlement is tied to future MDL Court rulings: "[a]ny merits-based issues that the [MDL Court] has previously made or will make in the future will be reflected by necessity as part of the estimation proceedings." (Hr'g Tr. 12/20/2018 at 15.) The Signatory Plaintiffs reiterated this position in their letter to the court on February 13, 2019, noting that such rulings "will be taken into account at the estimation proceeding stage." (Plaintiffs' Feb. 13 Letter.) Moreover, the Signatory Plaintiffs stated confidently that rulings on the MDL Briefing are "anticipated by June 2019" and in any event are "very likely" to be issued "long before the estimation proceedings

begin." (Plaintiffs' Feb. 13 Letter.)  It is impossible to predict today the output of the Stage Two estimation hearing without engaging in pure speculation.  But without even an inkling as to that output, this Court has no suitable basis in the record to determine that the relief provided for millions of Plaintiffs is "likely" to be adequate and sufficient to justify the mandatory releases proposed to be binding on millions of individuals.

58.     In addition, Section 4.5 of the Settlement Agreement provides that if the MDL Court "issues an Opinion or Order on [the Summary Judgment Briefing] . . . that impacts the size, scope or composition of the classes of Economic Loss Plaintiffs, the Parties shall, within five (5) business days . . . engage in good faith negotiations regarding the applicable provisions of this Settlement Agreement impacted by said decision."  This provision would be wholly unnecessary if, as counsel to the Signatory Plaintiffs stated, the Proposed Classes and the proposed MDL classes "don't overlap" and the impact of such rulings could simply be deferred to estimation.  (Hr'g Tr. 12/20/2018 at 7.)  Instead, Section 4.5 is an acknowledgement by the Movants that the Summary Judgment Briefing directly impacts the relief available to the Proposed Classes, and that they (and this Court) will have no insight into the adequacy of that relief prior to the MDL Court's rulings.

59.     Furthermore, two termination rights afforded to the GUC Trust in the Settlement Agreement cement the connection between the Proposed Settlement and the Summary Judgment Briefing before the MDL Court.  First, the GUC Trust may unilaterally terminate the Settlement Agreement if the Preliminary Approval Order is not entered on or before September 15, 2019, more than six months after the requested hearing date.  (Settlement Agreement § 10.2(a).)  This termination right clearly anticipates that this Court may wait for relevant developments in the MDL Court.  Second, the GUC Trust may unilaterally terminate the Settlement Agreement if Co-Lead Counsel appeals the MDL Court's summary judgment decision.  (Settlement Agreement

§ 10.2(b).)  Again, this termination right, which could make the Preliminary Approval Order advisory, would be pointless if events in the MDL Court were unrelated to approval of the Proposed Settlement.  It is hard to square these termination rights based purely on developments in the MDL Court with the Signatory Plaintiffs' insistence that the Proposed Settlement "does not involve substantial overlap with proceedings before the MDL Court."  (Plaintiffs' Feb. 13 Letter.)

60.    Accordingly, this Court cannot evaluate whether the relief in the Proposed Settlement is likely adequate without evaluating the likely outcome of the Stage Two estimation here, which, by the Movants' own design, is inextricably bound to the MDL Court's rulings.

> **D.    This Court Cannot Find it Is Likely that the Millions of Plaintiffs Have Article III Standing Without Considering Issues Being Decided in the MDL Court.**
>
> **1.    This Court Must Have a Suitable Basis in the Record at the March 11 Hearing to Find it Likely that the Constitutional Issues in Boedeker's Methodology Will Be Resolved in Favor of the MDL Plaintiffs.**

61.    To apply Rule 23(e) to the Proposed Settlement, this Court must have a "suitable basis" in the record at the March 11 hearing to determine that the Proposed Classes do not contain Plaintiffs who lack Article III standing, an issue that the MDL Court is poised to decide.  Even if this Court was comfortable that Boedeker satisfied the *Daubert* standard—an issue that required months of briefing from New GM and the MDL Plaintiffs—this Court must also grapple with whether Boedeker's analysis shows that the Plaintiffs satisfy the "irreducible constitutional minimum of standing" under Article III.  *See Lujan*, 504 U.S. at 560 (noting that a plaintiff must have an injury in fact).  In a class action, this means that the "class must … be defined in such a way that *anyone* within it would have standing" and "no class may be certified that contains members lacking Article III standing."  *Denney*, 443 F.3d at 264 (2d Cir. 2006).  As a result, preliminary approval of the Proposed Settlement requires this Court to assess whether the Proposed Classes likely contain non-negligible numbers of Plaintiffs without standing to bring claims.

62.     Among other things, as discussed in the Class Certification Briefing and *Daubert* Briefing, Boedeker's "conjoint survey" methodology shows that between 26.6% and 39.1% of the proposed class members—*i.e.*, millions of people—have no injury.  This is fatal to any effort to certify any classes because Rule 23 does not permit certification of classes where there is no "common evidence to show all class members suffered some injury."  *Sykes* v. *Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (citations omitted).  Evaluating such a "conjoint survey" approach must therefore take place prior to certification.  For instance, in *Opperman* v. *Path, Inc.*, 2016 WL 3844326, at *14 (N.D. Cal. July 15, 2016), the court rejected the plaintiffs' attempt to "prove" the class members' value of privacy in smartphone applications with a conjoint survey, noting that "[n]o damages number arising from this model will apply to all class members, particularly since some of the class members, by this measure, will not have been injured at all."[22]

63.     Similarly, individual differences in reliance frequently defeat class certification.  In the *Ford Ignition Switch* litigation, for instance, plaintiffs argued that a defective ignition switch found in vehicles had a propensity to short circuit and cause smoke or fires in over 2,000 vehicles.  *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 336-37 (D.N.J. 1997).  The *Ford* plaintiffs moved to certify classes with fraudulent concealment and state consumer fraud claims.  *Id.* at 338.  The court denied certification because of individual differences in reliance and causation, noting that the "plaintiffs must persuade the finder of fact that disclosure of the allegedly dangerous nature of the ignition switches would have affected the purchaser's decision whether to purchase the vehicle.  Obviously, this determination could not be accurately and fairly made on a class-wide basis . . . ."  *Id.* at 346.

---

[22]   Other courts have similarly rejected a proposed "single formula capable of assessing all damages among class members" based on "averages" where such a formula ignored "vast differences" in the circumstances facing each plaintiff.  *Fleischman* v. *Albany Med. Ctr.*, 2008 WL 2945993, at *7 (N.D.N.Y. July 28, 2008).

64.     The MDL Court did not postpone resolution of these issues until after class certification precisely because such issues are fundamental to establishing that the MDL Plaintiffs have Article III standing, a prerequisite for certification of classes containing millions of putative class members' claims.  These critical, Constitutional concerns are just as relevant for the Plaintiffs and for this Court's determination under Rule 23(e) of the likelihood of certifying the Proposed Classes.  In fact, the Movants ask this Court to confront the issue by stating in the Preliminary Approval Order that the Court has "subject matter . . . jurisdiction over the Classes."  (Preliminary Approval Order ¶ 4.)  Because substantial numbers of Plaintiffs have no standing under Article III, this Court cannot exercise subject-matter jurisdiction over their claims (or the Proposed Classes under which their claims are purportedly subsumed).

65.     Accordingly, to apply Rule 23(e) to the Proposed Settlement, this Court would not only have to find it likely (with a suitable basis in the record at the March 11 hearing) that Boedeker's methodology is admissible under *Daubert*, but also that such methodology does not necessarily imply that vast numbers of Plaintiffs lack Article III standing and therefore cannot be included in the Proposed Classes.  The challenges to Boedeker's methodology raise Constitutional issues that cannot be "estimated" and must be carefully considered by this Court and the MDL Court.  Because the MDL Court will soon rule on the MDL Briefing, however, there is no need for this Court to leapfrog the MDL Court on assessing these Constitutional issues.

**2.     This Court Must Have a Suitable Basis in the Record at the March 11 Hearing to Find it Likely that New GM's Recall Repairs Do Not Preclude the Plaintiffs' Claims.**

66.     Two critical issues in the Summary Judgment Briefing are whether New GM's recall repairs were effective and, if they were effective, whether such repairs negate the MDL Plaintiffs' claims.  As the MDL Court stated in a recent opinion, "many, if not most (or even all) states would factor such evidence [of post-sale mitigation] into the analysis" of whether the MDL

Plaintiffs have suffered any cognizable damages.  *In re Gen. Motors LLC Ignition Switch Litig.*,
2018 WL 1638096, at *2 (S.D.N.Y. Apr. 3, 2018).  As a result, the "viability of Plaintiffs' claims
for benefit-of-the-bargain damages is likely to turn on the question of whether New GM actually
fixed" the alleged defects through the Recalls.  *Id.*  "[W]hen a claim cannot succeed as a matter of
law, the Court should not certify a class on that issue."  *In re Beacon Assocs. Litig.*, 2012 WL
1372145, at *2.  To frame the issue into Constitutional terms, a Plaintiff for whom New GM
provided a successful Recall repair likely does not have Article III standing to be a member of the
Proposed Classes.

67.     To apply Rule 23(e) to the Proposed Settlement, therefore, this Court must review
the comprehensive, peer-reviewed testing regime that the MDL Court is already reviewing to
determine the efficacy of New GM's Recall repairs.  The Virginia Tech Transportation Institute
("VTTI"), an independent and well-respected engineering organization, concluded that New GM's
testing regime was "robust" and "acceptable" for assessing the condition regarding inadvertent key
rotation.  By asking this Court to determine that it can likely certify the Proposed Classes **now**, the
Plaintiffs effectively ask this Court to also determine that the conclusions reached by VTTI (which,
if true, would force the Movants to substantially reorganize the Proposed Classes) are likely false.

68.     The Signatory Plaintiffs admit that the effectiveness of New GM's Recall repairs
will be "taken into account at the estimation proceeding stage" (Plaintiffs' Feb. 13 Letter), but the
MDL Court's resolution of this disputed issue is critical to determining whether the Plaintiffs have
legally cognizable claims (and thus standing under Article III) at all, an issue that must be
evaluated prior to this Court preliminarily certifying the Proposed Classes.  These issues will be
resolved by rulings from the MDL Court, which the Signatory Plaintiffs "anticipate[] by June
2019."  (Plaintiffs' Feb. 13 Letter.)  This Court should not permit the Plaintiffs to leapfrog the

MDL Court, which will rule on the effectiveness of New GM's Recall repairs in due course, particularly where the MDL Plaintiffs have conceded the effectiveness of at least New GM's Recall repair for Recall 14V-153 (power steering), which is part of the Proposed Settlement.[23]

> **E.  This Court Cannot Find it Is Likely that the Claims in the Non-Ignition Switch Class Satisfy the Commonality Requirement Set Forth in Rule 23(a)(2) Without Considering Issues Being Decided in the MDL Court.**

69.     To apply Rule 23(e) to the Proposed Settlement, this Court must have a "suitable basis" in the record at the March 11 hearing to determine that the claims in the Non-Ignition Switch Class (which arise under five separate Recalls) likely share "questions of law or fact common to the class" even though the MDL Plaintiffs have established separate classes for each Recall in the MDL Court.  Under Rule 23(a)(2), there must be "questions of law or fact common to the class." "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Wal-Mart Stores*, 564 U.S. at 350 (citations omitted).  While the commonality requirement was "widely perceived to lack teeth before the Supreme Court's decision in *Wal–Mart*," that changed when *Wal-Mart* "grafted the following requirements onto rule 23(a)(2): (i) that the common question is central to the validity of each claim that the proposed class brings; and (ii) that the common question is capable of a common answer."  *Abraham* v. *WPX Energy Prod., LLC*, 322 F.R.D. 592, 642 (D.N.M. 2017).

70.     Here, the Non-Ignition Switch Class classifies together Plaintiffs asserting state law causes of action under 51 jurisdictions regarding five different Recalls affecting many different

---

[23]     *See* <u>Exhibit C-2</u> (MDL Plaintiffs' Opp. to GM's Summ. Judg. Motion) at 4 n.1 ("Regarding Recall Nos. 14v188 (side-impact airbags) and 14v153 (power steering) . . . Plaintiffs acknowledge that the evidence now demonstrates that the remedies offered under those recalls are effective in repairing the defects.").

vehicle models.  The alleged defects and Recalls vary significantly.  Some involve ignition switch

rotation, while others do not.  Some involve alleged airbag non-deployment, while others do not.

That the Movants identified only a few potentially common issues of law and fact (Rule 23 Motion

¶ 81) is unsurprising given that the MDL Plaintiffs have sought different classes for each Recall,

implicitly conceding that the different Recalls negate "the capacity of a classwide proceeding to

generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores*, 564 U.S.

at 350.  In any event, the MDL Court will soon rule on the propriety of the Bellwether State classes,

which rulings must be taken into account for evaluating the Proposed Settlement to ensure that

only claims satisfying the commonality requirement are lumped into the same class or subclass.

Because the MDL Court is making progress on this issue, a stay is warranted.

## III.    THE MOVANTS CONCEDE THE OVERLAP WITH THE MDL PROCEEDINGS.

71.    The overlap between issues that this Court must consider when developing a

suitable record and issues that will likely be decided soon by the MDL Court is sufficient to warrant

a stay.  And to dispel any lingering doubts, the Movants' Settlement Motions and the letter filed

by the Signatory Plaintiffs on February 13, 2019, confirm the overlap.

72.    First, neither counsel for the Signatory Plaintiffs nor counsel for the GUC Trust

responded to the Court's statement at the December 20, 2018 status conference that "the notion of

the stay seems almost moot because ***he's*** [Mr. Weisfelner's] suggesting that the class certification

doesn't go forward here until Judge Furman has decided the summary judgment motions."

(Hr'g Tr. 12/20/2018 at 34.)  If the Movants intended then for certification to proceed prior to the

MDL Court's decisions, they should have corrected the record.

73.    But putting that aside, the Settlement Agreement is tied in multiple ways to the

MDL Court's rulings on the Summary Judgment Briefing.  Such impacts cannot just "be taken

into account . . . when we get to the estimation phase."  (Plaintiffs' Feb. 13 Letter.)  Instead, the

Settlement Agreement provides that such rulings may affect "the size, scope or composition of the *classes*." (Settlement Agreement § 4.5 (emphasis added).) Perhaps the most notable aspect of the Plaintiffs' February 13 letter was its failure to address Section 4.5 of the Settlement Agreement, which codifies the link between the Proposed Classes and rulings from the MDL Court (as New GM discussed in its February 11 letter to this Court). Additionally, the Movants state that: (i) "rulings by Judge Furman in the MDL Action" led to "refined estimates of the amount of damages" (Rule 23 Motion ¶ 40); (ii) "[e]xtensive discovery regarding the Plaintiffs' claim has been completed in the MDL Action" (Rule 23 Motion ¶ 53); (iii) Co-Lead Counsel adequately represent the Proposed Classes because of their work "in the MDL Court for over four years" (Rule 23 Motion ¶ 88); (iv) the Proposed Settlement was reached by "Parties who have been litigating these issues for years in the MDL Action" (Rule 23 Motion ¶ 131); and (v) "Magistrate Judge Cott as mediator in the MDL Action" will assist Stage Three (Rule 23 Motion ¶ 148).

## IV. THIS COURT SHOULD NOT ORDER AN EXTENSIVE AND EXPENSIVE NOTICE CAMPAIGN FOR A CLASS ACTION SETTLEMENT THAT WILL SOON BE DRAMATICALLY RESHAPED BY THE MDL COURT'S RULINGS.

74. Setting aside the overwhelming overlap with the MDL Court, New GM respectfully submits that authorizing and directing a very expensive nationwide notice campaign is unwise without a "solid record" to support the Proposed Classes. At the December 20, 2018 status conference, counsel to the Signatory Plaintiffs admitted that the MDL Court's "near-term decisions" will "dramatically impact the size of the universe" of class members (in addition to "be[ing] reflected in all of the proceedings that [this Court] will be asked to engage in"). (Hr'g Tr. 12/20/2018 at 14-15.) The scope or composition of the Proposed Classes may also change because whether the Proposed Classes "include prior owners of the same vehicles or prior lessees of the same vehicles[,] is [an] issue that, among others, is up for determination by Judge Furman." (Hr'g Tr. 12/20/2018 at 7.)

75.     Therefore, all parties agree that the MDL Court's rulings have—and will continue to have—a significant impact on who is entitled to receive notice of the Proposed Settlement.  The Movants' acknowledgement of the overlap traces back (at the very least) to the May 25, 2018 status conference, where counsel to the Signatory Plaintiffs noted that the MDL Court's *prior* rulings had already reduced the number of vehicles at issue in the Recalls from 11.4 million to 9.5 million.  (Hr'g Tr. 5/25/2018 at 24.)  Now, the Plaintiffs appear to have abandoned this concession and suggest that the MDL Court's *pending* "summary judgment ruling could very well implicate whether we're talking about 26 million registrations or 11- or 12 million registrations; a cost would be the 13 million or 7 million.  We expect that ruling fairly soon."  (Hr'g Tr. 12/20/2018 at 6.)  It is clear that counsel has no idea today whether the approximate number of notices is 9.5 million, 11 million, 12 million, 26 million, or some other number—a range of approximately **16.5 million**. To be fair, New GM agrees with at least two statements made by counsel at the December 20 status conference:  (1) "depending on what Judge Furman ultimately rules," there could be a "dramatic[] impact [on] the size of the universe, **therefore who gets noticed, therefore the cost of notice**" (Hr'g Tr. 12/20/2018 at 9, 14 (emphasis added)); and (2) "[i]t makes sense to most of us that we ought to be awaiting" decisions from the MDL Court "before we blow **X number of millions of dollars on costs of notice**" (Hr'g Tr. 12/20/2018 at 14-15 (emphasis added)).

76.     The risk of a wasteful notice campaign is at the heart of Rule 23(e)(1)(B), which states that the court should only direct notice if "giving notice is justified by the parties' **showing** that the court will **likely** be able to . . . **certify** the class . . ." (emphasis added).  The Advisory Committee Notes amplify the link between the decision to approve notice and the prospects for certification: "[t]he decision to give notice of a proposed settlement to the class is an **important event**.  It should be based on a **solid record** . . . ." (emphasis added).  If a court rubber-stamped

preliminary certification, but later exercised "undiluted, **even heightened**, attention" (as required

by *Amchem*, 521 U.S. at 620) and found that certification was not appropriate, the notice campaign

would have been a waste. Such a result here would harm the Plaintiffs and PIWD Plaintiffs (many

of whom may not end up in the Proposed Class; in the end, Plaintiffs may well become hopelessly

confused by a prematurely sent and inaccurate notice), the GUC Trust (which would have wasted

up to $13.72 million on ineffective notice), and this Court (which would have wasted its time).

77.     In light of the above, New GM respectfully submits that this Court should not

authorize an extensive and expensive notice program until, at the very least, the MDL Court issues

rulings that New GM and the Movants agree impact the number of notice recipients.

## V.     THIS COURT'S ORDER OF A STAY OF PROCEEDINGS RELATED TO THE PROPOSED SETTLEMENT PENDING THE MDL COURT'S RULINGS WILL NOT PREJUDICE ANY PARTY.

78.     "[T]the power to stay proceedings is incidental to the power inherent in every court

to control the disposition of the cases on its docket with economy of time and effort for itself, for

counsel, and for litigants." *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936). The court should

enter a stay if it will "promote judicial economy, avoidance of confusion and possible inconsistent

results without working an undue hardship or prejudice against the plaintiff." *In re Hagerstown*

*Fiber Ltd. P'ship*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002) (citations omitted). A "broad stay"

is particularly appropriate where "there [are] common questions of fact . . . , or when the [other

proceeding is] likely to dispose of issues common to the claims" in the two proceedings. *In re*

*S.W. Bach & Co.*, 425 B.R. 78, 98 (Bankr. S.D.N.Y. 2010). Bankruptcy courts routinely decide to

"hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or

be dispositive of the issues." *See In re Rosenblum*, 545 B.R. 846, 874 (Bankr. E.D. Pa. 2016)

(staying numerous matters in the debtor's bankruptcy, including plan confirmation, pending

09-50026-mg    Doc 14431-4    Filed 02/22/19    Entered 02/22/19 00:21:15:29    Main Document
Pg 54 of 63

outcome of state litigation that, although not "the dipositive factor . . . will certainly impact this Court's determination" of a pending motion).[24]

79.     Additionally, pursuant to 11 U.S.C. § 105(a), the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  It is unsurprising, therefore, that bankruptcy courts in this district routinely issue stays pursuant to section 105(a).  *See, e.g.*, *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (SCC), ECF No. 42417 (Bankr. S.D.N.Y. Jan. 31, 2014) (order continuing previously granted stays of certain avoidance actions to allow alternative dispute resolution process to unfold); *In re Delphi Corp.*, Case No. 05-44481 (RDD), ECF No. 9105 (Bankr. S.D.N.Y. Aug. 16, 2007) (order authorizing stay of approximately 740 avoidance actions and granting other related relief).

80.     Here, a stay of proceedings related to the Proposed Settlement will not prejudice any party.  The MDL Court is already positioned to decide both: (1) identical or substantially similar Rule 23(a) class certification issues; and (2) other key factual, legal, and expert issues that directly bear on this Court's assessment of the likelihood of class certification.  As a result, the MDL Court's rulings will affect the scope and viability of the Proposed Classes and the fate of the Proposed Settlement.  And even if this Court could move at warp speed to build a record sufficient to preliminarily certify the Proposed Classes, it is hard to justify duplicative proceedings and the concomitant risk of inconsistent rulings where the Movants anticipate the MDL Court's rulings will come in a few months.

81.     The proposed stay does not prejudice the Plaintiffs.  Co-Lead Counsel has already confirmed that the Plaintiffs' entitlement to any recoveries depends on "merits-based issues that

---

[24]     *Accord In re MF Global Holdings, Ltd.*, 464 B.R. 619, 623-24 (Bankr. S.D.N.Y. 2012) (Glenn, J.) (using power to "stay or dismiss a [duplicative] suit"); *In re Bird*, 229 B.R. 90, 95 (Bankr. S.D.N.Y. 1999) (noting that an adversary proceeding may be "suspended until such time as it were more likely that its adjudication would not be an empty gesture").

the [MDL Court] has previously made or will make in the future [that] will be reflected by necessity as part of the estimation proceedings." (Hr'g Tr. 12/20/2018 at 15.) Thus, the Plaintiffs will not be prejudiced by a stay of proceedings related to the Proposed Settlement pending such rulings, which they anticipate before June 2019. In fact, failure to wait for the MDL Court's rulings may significantly prejudice the Plaintiffs because, if the MDL Court issues rulings after the Proposed Settlement is approved on a final basis that make it very unlikely that the aggregate value of the Plaintiffs' and PIWD Plaintiffs' claims will be sufficient to trigger the Adjustment Shares, the Plaintiffs and PIWD Plaintiffs (regardless of whether they have asserted claims or support the Proposed Settlement) will have already released their claims. And where such rulings are "anticipated by June 2019" and "very likely" to be issued "long before the estimation proceedings begin," a stay of proceedings does not prejudice any Plaintiff. (Plaintiffs' Feb. 13 Letter.)

82.    The proposed stay also does not prejudice the GUC Trust or the GUC Trust Beneficiaries. The GUC Trust's right to terminate the Settlement Agreement based on this Court's failure to enter the Preliminary Approval Order does not arise until September 15, 2019, indicating that the Movants were aware of the possibility of a stay at the time they executed the Proposed Settlement. (Settlement Agreement § 10.2(a).) If the GUC Trust truly believed that a stay would be prejudicial, it would have insisted upon a termination right that vests much closer to the hearing date of March 11, 2019 rather than September 15, 2019.

83.    Conversely, it is easy to see the prejudice that may result from *not* granting a stay of proceedings related to the Proposed Settlement. Absent such a stay, there is substantial risk that decisions made by this Court in connection with the Proposed Settlement will be inconsistent with past or future rulings from the MDL Court. For example, while the Movants seek to have this Court approve the Proposed (*nationwide*) Classes of Plaintiffs, the MDL Plaintiffs have abandoned

efforts to certify nationwide classes and instead are seeking to certify *statewide* classes in the MDL

Court.[25]  This inconsistency is particularly puzzling given that the Plaintiffs and the MDL Plaintiffs

assert claims based on *identical* state law-based economic loss theories.  Here, if the MDL Court

rules that the MDL Plaintiffs cannot satisfy the Rule 23(a) certification prerequisites for even one

of the three Bellwether States, for example, then it would seem highly unlikely (if not impossible)

for this Court to find that the Proposed (nationwide) Classes satisfy Rule 23(a).  A similar concern

animated denial of a proposed class-action settlement in *Schoenbaum* v. *E.I. Dupont De Nemours

& Co.*, where the court noted that proceeding simultaneously with settlement certification and

litigation certification "would only serve to draw out this litigation further and could potentially

lead to inconsistent results."  2009 WL 4782082, at *16 (E.D. Mo. Dec. 8, 2009).

84.     Here, if the MDL Court issues rulings after this Court certifies the Proposed Classes

(either preliminarily or finally) that cast doubt on (or preclude) the certification of the Proposed

Classes or require subclasses to comply with Rule 23, the Movants will need to re-notice the

millions of Plaintiffs bound to the mandatory, non-opt-out Proposed Settlement.  The proposed

notice is expensive, and no party will benefit from having to redo a notice campaign.

85.     For their part, the Movants concede that the certification of classes they seek in the

near term from this Court accomplishes basically nothing.  As counsel stated at the December 20,

2018 status conference:  "it's possible . . . that we may very well have to – and I don't know the

exact methodology – **decertify the original settlement class[ and] re-certify subclasses to take**

---

[25]     Indeed, given variations in underlying state law, the MDL Court *has already* reached conclusions that effectively
preclude nationwide classes.  *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *16
(S.D.N.Y. July 15, 2016) (dismissing MDL Plaintiffs' proposed nationwide RICO claim); *id.* at *18 ("In their
briefs, the parties largely addressed these claims together on an issue-by-issue basis.  By contrast—and despite
the repetition it entails—the Court will separately address each claim with respect to each jurisdiction, as subtle
differences in state law can dictate different results for plaintiffs in different jurisdictions."); *see generally id.*; *In
re Gen. Motors LLC Ignition Switch Litig.*, 257 F.Supp.3d 372 (S.D.N.Y. 2017) (analyzing the different common
law and statutes in various states).

**into account people's different expectation levels**."  (Hr'g Tr. 12/20/2018 at 13 (emphasis added).)  Likewise, the Rule 23 Motion states that "Class members may be differently situated in the third stage (approval of allocation and distribution procedures), [so] additional or different subclasses can be created at that time, if necessary."  (Rule 23 Motion ¶ 117.)  In fact, the Movants expressly acknowledge that the Settlement Agreement itself may change if the MDL Court "issues an Opinion or Order on [New GM's summary judgment motion] . . . that impacts the size, scope or composition of the classes of Economic Loss Plaintiffs . . . ."  (Settlement Agreement § 4.5 (in such case, "the Parties shall, within five (5) business days . . . engage in good faith negotiations regarding the applicable provisions of this Settlement Agreement impacted by said decision").)

86.       In light of such positions, the Movants should not ask this Court for preliminary certification of the Proposed Classes *now* while simultaneously acknowledging that the Proposed Classes may change in "size, scope or composition" or need to be "decertif[ied]" and "re-jiggered" based on rulings from the MDL Court.  Post-hoc reconfiguration of settlement classes is not permitted without essentially restarting the certification process.[26]  As a result, New GM agrees with the Movants that "we ought to be awaiting" such "near-term" rulings from the MDL Court "before we blow X number of millions of dollars on costs of notice for people that Judge Furman has decided" may not be included in the Proposed Settlement.  (Hr'g Tr. 12/20/2018 at 14-15.)

87.       Ultimately, every affected party will be potentially prejudiced if proceedings go forward on parallel tracks.  The GUC Trust risks spending $13.72 million on notice up to 26 million individuals, many or all of which may not be putative class members following the MDL

---

[26]   *See Amchem*, 521 U.S. at 620 ("[A] court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."); *accord In re Motor Fuel Temp. Sales Prac. Litig.*, 2011 WL 4431090, at *7 (D. Kan. Sept. 22, 2011) (rejecting argument by settling parties that notice need not be redone where previously noticed settlement involved one class with five representatives and restructured settlement involved 21 subclasses with 17 new representatives).

Court's rulings.  The Plaintiffs and PIWD Plaintiffs (including those who have not asserted claims or signed the Proposed Settlement) risk releasing their rights under a non-opt-out class settlement before they know what—if anything—they stand to gain under the Proposed Settlement.  Finally, all parties (and the Court) bear the risk of inconsistent adjudications of key issues that arise in both courts and the concomitant waste of private and judicial resources that duplicative litigation entails.  Where all parties acknowledge that the proceedings in the MDL Court and this Court are inextricably intertwined, there is no reason to assume these risks, and a stay should be issued.

## **CONCLUSION**

88.     The Movants' desire to push forward with the Proposed Settlement in this Court now, notwithstanding whether critical near-term rulings from the MDL Court will impact this Court's review of the Proposed Settlement under Rule 23(e), is an inefficient and potentially conflicting path forward.  This Court should decline the invitation and should instead stay proceedings relating to the Proposed Settlement.  As the Movants concede, and the Settlement Motions and Settlement Agreement reflect, rulings from the MDL Court will provide persuasive if not dispositive guidance on the Plaintiffs' ability to satisfy the requirements of Rule 23 or other aspects of class certification.  These class certification issues cannot be delayed until the later stages of the Proposed Settlement, as preliminary approval under Rule 23(e) requires this Court to assess the likelihood of class certification **now**.  In circumstances where judicial economy is served and no prejudice results to any party, a stay is appropriate.

*   *   *

WHEREFORE, New GM respectfully requests for all of the reasons stated above that this Court (a) grant the proposed stay as described herein and in the Proposed Order (or, in the alternative, a stay pending the MDL Court's determination of the Motion to Withdraw) and (b) grant such other and further relief as is just and proper.

Dated: February 22, 2019
New York, New York

*Paul M. Basta*           
Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
Dan Youngblut
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Counsel for General Motors LLC*

## EXHIBIT A

**FORM OF PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br>f/k/a General Motors Corp., *et al.*,<br><br>                    Debtors. | Chapter 11<br><br>Case No. 09-50026 (MG)<br><br>(Jointly Administered) |

**[PROPOSED] ORDER GRANTING STAY OF PROCEEDINGS RELATED TO THE**
**PROPOSED SETTLEMENT PURSUANT SECTION 105(a) OF THE**
**BANKRUPTCY CODE**

Upon *General Motors LLC's Motion Pursuant to Section 105(a) of the Bankruptcy Code to (A) Stay Proceedings Relating to the Proposed Settlement and (B) Grant Related Relief* (the "Motion"),[1] dated February 22, 2019; and the Court having jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in that certain *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures* [Docket No. 10183]; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of all parties and that the legal and factual bases set forth in the Motion establish just

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that objections to the Motion are hereby overruled; and it is further

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that proceedings in this Court relating to the Proposed Settlement or any relief

otherwise sought in connection with the Settlement Motions are hereby stayed until further order

of this Court;

ORDERED that notice of the Motion as provided therein shall be deemed good and

sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or

related to the implementation of this order.

Dated:    _____ 2019
         New York, New York                    _____
                                               THE HONORABLE MARTIN GLENN
                                               UNITED STATES BANKRUPTCY JUDGE