HEARING DATE:  MARCH 5, 2019, 10:00 A.M.

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By: DAVID S. JONES
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel:    (212) 637-2739
Fax:   (212) 637-2730
E-mail:david.jones6@usdoj.gov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――X

| | |
|---|---|
| In re: | Chapter 11 Case |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/ka General Motors Corp., *et al.*, | Case No. 09-50026 (MG) |
| | (Jointly Administered) |
| Debtors, | |

―――――――――――――――――――――X

### OBJECTION OF THE UNITED STATES OF AMERICA TO AMERICAN AXLE & MANUFACTURING, INC.'S MOTION TO INCLUDE THE TONAWANDA FORGE SITE IN THE RACER TRUST OR, IN THE ALTERNATIVE, FOR AUTHORITY TO FILE A LATE CLAIM AGAINST THE DEBTORS TO PARTICIPATE IN DISTRIBUTIONS FROM THE GUC TRUST

The United States of America, by its attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this objection to the December 21, 2018 motion (the "**Motion**," ECF No. 14392-93) of American Axle & Manufacturing, Inc. ("**American Axle**") seeking two alternative forms of relief regarding a site in Tonawanda, New York, at which American Axle may bear at least partial liability for environmental remediation costs (the "**Tonawanda Forge Site**").  The United States objects to American Axle's primary request for relief, which is to impose cleanup burdens for the Tonawanda Forge Site on an environmental response trust that was established for the specific, unrelated purpose of taking over ownership of, and cleaning up, 89 specific properties that Old

GM owned on the Petition Date. The trust's responsibilities do not include the property at issue in American Axle's Motion. The trust, known as the "**RACER Trust**," was created pursuant to an extensively negotiated, Court-approved "Environmental Response Trust Consent Decree and Settlement Agreement" (the "**ERT Consent Decree**," Exhibit C to MLC's confirmed Plan of Liquidation (ECF No. 9836)) among Debtors, the RACER Trust's trustee, the United States, the Saint Regis Mohawk Tribe, and 14 states. The ERT Consent Decree resulted from intensive efforts to estimate the environmental response and other costs associated with long-term ownership and repurposing of 89 separate Old GM properties, as a result of which RACER Trust was provided with limited funds to own and perform extensive environmental remediation and other actions, potentially indefinitely, with respect to those 89 properties. Further, the Consent Decree included extensive protections designed to ensure that RACER Trust assets would not be diverted to serve any purpose other than those with which the Trust was charged.

American Axle's proposal to add an entirely new site to RACER Trust's portfolio or the Trust's remediation responsibilities is contrary to the purposes of the Consent Decree, and is contrary to the legal standards governing modification of consent decrees. Adding another site to the RACER Trust's responsibilities risks diluting and diverting assets from specified uses that the Consent Decree's signatories carefully negotiated to ensure the Trust's long-term success, and, even apart from the immediate effects of adding the Tonawanda Forge Site, doing so risks longer-term precedential harm as persons with interests at other sites allegedly affected by Old GM activities might well demand similar treatment. The Motion therefore should be denied insofar as it seeks to make RACER Trust responsible in any way for the Tonawanda Forge Site.

09-50026-mg    Doc 14435    Filed 02/25/19    Entered 02/25/19 12:29:04    Main Document
Pg 3 of 13


The United States takes no position, however, as to American Axle's alternative request for leave to file a late claim against the estate—although it is unclear how American Axle has satisfied the applicable requirements or exercised due diligence to determine whether it had a claim, either at the time of the initial bankruptcy or after it was initially contacted by New York State environmental officials about possible liability in connection with the Tonawanda Forge Site. The request to allow a late-asserted claim does not directly implicate the United States's interests, and we presume will be addressed by the GUC Trust.

## BACKGROUND

A.    The RACER Trust

Prior to and in the early stages of this bankruptcy, "Old GM" faced the serious problem of how to dispose of numerous company-owned properties, many seriously polluted, that "New GM" management did not wish to assume or acquire, and that Old GM was legally responsible for remediating.  Meanwhile, the United States and numerous states and localities where these facilities were located insisted that Old GM take adequate steps to ensure that the company's environmental obligations would be met, in a manner that was judicially enforceable and protected.  Toward that end, numerous parties embarked on lengthy negotiations to identify and determine the probable estimated current and future costs of remediation at 89 Old GM properties, and then to create a trust that was to take title to those properties, clean them up where needed, and sell or repurpose them so that they would promote jobs and other beneficial uses in the communities where they were located. *See generally* ECF No. 9311 (United States' Statement in Support of Environmental Provisions of Debtors' Plan of Liquidation, Response to

Public Comment and Joinder in Debtors' Request for Approval of the Environmental Response Trust Consent Decree and Settlement Agreement) (Feb, 18, 2011) (describing and supporting focus of ERT Consent Decree on GM-owned properties and specified adjacent sites with clean-up orders).

These negotiations culminated in the ERT Consent Decree. On March 29, 2011, the Court entered an order (the "**Confirmation Order**," ECF No. 9941) that confirmed the Debtors' Plan of Liquidation, and, as part of that order, approved the ERT Consent Decree. *See* ECF No. 9941 ¶ 7 at 19-20). The ERT Consent Decree provided for the establishment of the environmental response trust now known as RACER Trust, funded by the Debtors using approximately $641 million of funds (the "**Trust Funding**") that were provided to Debtors, in part, by the United States Department of Treasury as a debtor-in-possession lender. *See* ERT Consent Decree ¶ 32 at 15. The ERT Consent Decree resolved, among other things, the disposition of 89 properties that were listed in its Attachment A, providing that RACER Trust would take title to these Debtor-owned properties; that the Trust's purpose would be, among other things, to conduct, manage, and/or fund Environmental Actions in accordance with the provisions of the ERT Consent Decree; that the Trust would carry out administrative and property management functions related to the properties and pay associated administrative costs; and that the Trust would try to sell or transfer the properties in ways that would benefit the communities in which the properties were located. *See* ERT Consent Decree ¶ 29 at 11-12. The ERT Consent Decree specifies that the RACER Trust "is formed for the purposes expressly set forth herein," ERT Consent Decree ¶¶ 29 at 12; those purposes do not include remediating the

Tonawanda Forge Site.  The Debtors' confirmed Plan of Liquidation became effective on March 31, 2011, and pursuant to the terms of the Confirmation Order, the ERT Consent Decree likewise became effective on that date and the Debtor-owned properties and Trust Funding were transferred to the RACER Trust.  *See* ECF No. 10056 (notice of entry of confirmation order and occurrence of effective date).

The ERT Consent Decree strictly controls use of the Trust's funds, among other things dividing that funding into funds for Trust administration (*see* ERT Consent Decree ¶¶ 32, 33, 36(b), 52-54) and separate funds for the purpose of funding Environmental Actions (*see* ERT Consent Decree  ¶¶ 32, 33, 36(a), 55-63), and providing that funds for either purpose are not to be used for the other purpose.  *Id.*  Further, the ERT Consent Decree includes provisions concerning the disposition of Trust funds that eventually prove unneeded, including that any unneeded Trust administrative funds are to be returned in specified circumstances to the United States Treasury and its co-DIP lender Export Development Canada ("**EDC**") (*see* ERT Consent Decree ¶¶  53, 54), while any remaining environmental response funds are to be transferred in specified circumstances to the Hazardous Substances Superfund if they are not needed and used for other environmental purposes as specified in the ERT Consent Decree (*see* ERT Consent Decree ¶ 77).  Further, the ERT Consent Decree strictly limits the repurposing of funds provided for use at any specific site, while also including an "Administrative Funding Reserve Account" (Approval Order ¶ 7, at 20-21; ERT Consent Decree  ¶ 53), the  purpose of which  was to fund actual or projected shortfalls in the Administrative Funding Account identified by the

Administrative Trustee prior to the third anniversary of the Effective Date.[1] The ERT Consent Decree also provides for a Cushion Funding Account to provide portfolio-wide backup funding with respect to any of the properties owned by the Trust where funding for an Environmental Action has been exhausted and additional funding is necessary, under certain limitations set forth in the ERT Consent Decree, to undertake or complete the Environmental Action; the Cushion Funding Account also provides funding with respect to properties owned by the Trust where no funding is allocated and unforeseeable conditions are discovered or arise which require funding to undertake an Environmental Action (*see* ERT Consent Decree ¶ 55).

In response to concerns among several state signatories to the Consent Decree that a shortfall in cushion funding may have been developing, which led those parties to contemplate moving to modify the ERT Consent Decree to permit certain administrative funds now in the Administrative Funding Reserve Account to be re-designated or re-purposed as environmental funds, the parties negotiated a Court-approved Consent Decree modification permitting certain administrative reserve funds to be made available, if needed, to replenish the Trust's Cushion Funding Account. *See* ECF No. 13101-1. That modification also delayed until 2030 the point at which unneeded administrative reserve funds within the Trust are required to be returned to Treasury. *Id.* All other provisions of the ERT Consent Decree remain in effect.

Importantly, RACER Trust did not take responsibility for Old GM's environmental liabilities overall as that would have severely interfered with the purpose of the Trust to clean up the 89 owned properties. Rather, Old GM and environmental agencies entered into numerous

---

[1] Capitalized terms not otherwise defined in this document have the same meaning as

separate agreements relating to pollution at numerous sites that Old GM did not own as of the petition date. *See, e.g.*, ECF Nos. 9943, 10453, 11564, 11881 (orders approving proof of claim settlements between Debtors and the United States for various non-owned sites). Debtors and the New York State Department of Environmental Conservation ("**NYSDEC**") and a New York State municipality likewise resolved liabilities for certain non-owned site claims. *See* ECF No. 12067.

RACER Trust has performed its duties admirably, has completed significant cleanup work, and has repurposed a large number of properties. It continues to do substantial remediation work and to pursue sale or repurposing of properties that it continues to own, and it is expected to have significant ongoing site maintenance and monitoring responsibilities for quite some time if not indefinitely.

B.  American Axle's Motion

American Axle's Motion represents that, in and since December 2017, New York State environmental officials have informed the company that American Axle has "potential liability for the cleanup" of the Tonawanda Forge Site, which American Axle bought from Old GM in 1994 and owned through 2008. *See* American Axle Mem. Law (Ex. B to ECF 14393), at 1-2. In 2008, American Axle allegedly sold the Site to an entity called Lewis Bros., *id.* at 1, and the Site is neither owned by RACER Trust nor covered by the ERT Consent Decree.

American Axle's Motion describes the RACER Trust as "continu[ing] to fund clean-up efforts in areas where Old GM is responsible for environmental contamination," and inaccurately

---

stated in the ERT Consent Decree.

7

contends without support or elaboration that certain non-owned sites were also "included in the RACER Trust." *Id.* at 3. Again, the ERT Consent Decree addressed only GM-owned sites and certain specified, immediately adjacent sites. *See* ERT Consent Decree; ECF No. 9311 (motion of United States in support of approval of ERT Consent Decree). Even American Axle's Motion acknowledges, however, that "New York State did not seek to have the Site included in RACER." *Id.* The Motion also asserts that American Axle had no notice of any claim against it by New York State, and therefore was "unable to file a proof of claim against Old GM relating to environmental contamination at the Site." According to the Motion, NYSDEC listed the Tonawanda Forge Site in a state hazardous waste site registry in May 2013 due to asserted PCB contamination, *id.* at 4, and American Axle alleges that any PCBs on the Site did not originate with American Axle, and likely originated at least in part with Old GM. *See id.* at 5.

American Axle seeks leave to file a late proof of claim against the estate, *See* Mem. Law at 7, and asserts that an "appropriate remedy is for the Tonawanda Forge Site to be included in the RACER Trust." *Id.* at 13. The Motion further incorrectly asserts that including the Site in RACER Trust "meets the same criteria as the RACER Trust's initial properties," *id.* at 13, notwithstanding that the Site was not owned by Old GM as of the Petition Date and was not included in the list of 89 specific properties for which RACER assumed responsibility, nor was the Tonawanda Forge Site made RACER's responsibility in any other way.

8

# ARGUMENT

## THE COURT SHOULD NOT INCLUDE THE TONAWANDA FORGE SITE IN THE RACER TRUST OR OTHERWISE ASSIGN RACER TRUST RESPONSIBILITY FOR REMEDIATING THAT SITE

### A. Applicable Legal Standards

RACER's responsibilities and activities are assigned and limited by the ERT Consent Decree, which was approved by the Court both under the Court's power to approve settlements entered into by the estate, and also under the Court's power to approve proposed resolutions of obligations arising under federal environmental laws. *See* ECF No. 9941 ¶ 7 at 19-22. American Axle's Motion therefore seeks a modification of the governing ERT Consent Decree insofar as it seeks to make RACER Trust take responsibility for cleanup or liability in connection with the Tonawanda Forge Site. The Motion therefore must satisfy the legal requirements for modification of a consent decree.

"Consent decrees have elements of both contracts and judicial decrees." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Firefighters v. Cleveland*, 478 U.S. 501, 519 (1986)). At least in general, Rule 60(b) of the Federal Rules of Civil Procedure authorizes a court to modify a consent decree where, *inter alia*, "applying it prospectively is no longer equitable," or "any other reason . . . justifies relief" from its operation. Fed. R. Civ. P. 60(b)(5)-(6); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992) (a consent decree is "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.") (citations omitted). A court that enters a consent decree "retains the authority, and the

9

responsibility, to make further amendments to [an] existing order or any modified decree it may enter as warranted by the exercise of its sound discretion." *Brown v. Plata*, 563 U.S. 493, 542 (2011).

There is at least some law suggesting that non-parties to the litigation giving rise to a consent decree may not collaterally attack it or appeal from it without intervening. *See Marin v. Ortiz*, 806 F.2d 1144, 1146 (2d Cir. 1986), *aff'd by equally divided court*, 484 U.S. 301 (1987) ("collateral attacks on consent decrees entered in Title VII actions are not permitted"; the "proper course . . . would have been to intervene in the lawsuit from which the consent decree issued").

Moreover, when an appropriate party moves the court to modify a consent decree pursuant to Rule 60(b), the "party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383; *see also Barcia v. Sitkin*, 367 F.3d 87, 99 (2d Cir. 2004) ("the party seeking an alteration bears the initial burden of establishing that a significant change in circumstances warrants the modification. This burden may be met by showing that there has been a significant change either in factual conditions or in law. If the party seeking modification meets this burden, the court then must consider whether the modification proposed is suitably tailored to the changed circumstance." (citations and quotation marks omitted)). Further, "equity countenances the modification of a[n] injunctive decree" if "a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." *Philip Morris USA, Inc. v. Otamedia Ltd.*, 331

10

F. Supp. 2d 228, 244 (S.D.N.Y. 2004) (Lynch, J.) (quoting *King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 418 F.2d 31, 35 (2d Cir. 1969) (internal quotation marks omitted)).

    B.    **American Axle Does Not Satisfy the Requirements for Modifying Consent Decrees, and Its Proposed Modification Would Be Contrary to the Purposes of the ERT Consent Decree**

Even assuming without conceding that American Axle has standing to seek to modify the ERT Consent Decree despite its nonparty status, and is not mounting an impermissible collateral attack on that Court-approved agreement, its motion should be denied to the extent it seeks to make the RACER Trust responsible for the Tonawanda Forge Site. Contrary to American Axle's broad statement that RACER Trust has accepted responsibility for Old GM environmental liabilities at non-owned sites, RACER's purpose is to remediate and restore to productive use 89 former GM properties that remained estate property as of the Petition date. *See supra* at 5-6; ECF No. 9311. Moreover, the ERT Consent Decree did not make RACER Trust generally responsible for environmental liabilities at sites that GM no longer owned as of the Petition Date. Rather, the United States and its environmental agencies filed one or more proofs of claim or protective proofs of claim with respect to those liabilities, and settled its proofs of claim in a separate series of settlements under the Bankruptcy Code and the environmental laws. *See supra* at 6; ECF Nos. 9943, 10453, 11564, 11881 (orders approving settlements between Debtors and the United States on account of federal environmental proofs of claim).

Thus, contrary to American Axle's assertion, the asserted late discovery of contamination at a site that Old GM last owned in 1994 does not in any way justify the site's inclusion in the

11

ERT Consent Decree, or in RACER Trust; in the wording of *Rufo*, American Axle has not identified "significant change in circumstances [that] warrant[] the modification." Rather, formerly GM-owned sites like the Tonawanda Forge Site that were considered during this bankruptcy were resolved in separate settlements that had nothing to do with the Trust.

American Axle thus cannot establish that "a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." *Philip Morris USA, Inc.*, 331 F. Supp. 2d at 244. Indeed, the opposite is true. The United States and all other signatories to the ERT Consent Decree negotiated the consent decree including its funding amounts and allocations so as to ensure that RACER Trust could take over Old GM's obligations at its *owned* sites, and remedy whatever contamination existed at those sites, all of which were specifically identified in the ERT Consent Decree. *Cf. United States v. County of Nassau*, 733 F. Supp. 563, 569 (E.D.N.Y. 1990), *aff'd*, 907 F.2d 397 (2d Cir. 1990) (denying County's motion to modify consent decree restricting its ocean dumping where, among other things, the County "failed to demonstrate that the proposed modification would further the purpose of the decree"). Any departure from or expansion of the RACER Trust's critical mission would divert RACER Trust's assets and risk undermining its success in its assigned tasks. Further, granting such treatment for the Tonawanda Forge Site risks creating a precedent favoring similar accommodations for any number of other sites at which claimants could assert that GM caused contamination that should be remediated by RACER Trust, notwithstanding the narrowly delineated responsibilities under the ERT Consent Decree – thus seriously interfering with the trust's ability to perform its assigned work. RACER Trust has no new sources of

funding, but rather must shepherd its resources to ensure that it will be able to carry out its assigned tasks into the distant future. Adding an unowned site and unquantified liability to RACER's portfolio risks undermining the functioning of the ERT Consent Decree by diverting Trust resources to address contamination that is outside the scope of its negotiated mandate. Doing thus so would be inimical to the purposes of the ERT Consent Decree, and to the law governing modification of consent decrees.

## CONCLUSION

The Motion should be denied to the extent it seeks to make the RACER Trust responsible in any way for remediation or any other action with respect to the Tonawanda Forge Site. The United States takes no position with respect to American Axle's motion for leave to file a late proof of claim.

New York, New York
February 25, 2019

                                                          GEOFFREY S. BERMAN
                                                          United States Attorney
                                                          Southern District of New York
                                                          *Attorney for the United States of America*

By:       s/ David S. Jones
                    DAVID S. JONES
                    Assistant United States Attorney
                    86 Chambers Street, Third Floor
                    New York, New York 10007
                    Telephone: (212) 637-2739
                    David.jones6@usdoj.gov