Hearing Date: March 5, 2019 at 10:00 a.m.<br>
Objection Deadline: February 25, 2019 at 4:00 p.m.<br>
Reply Deadline: March 1, 2019 at 4:00 p.m.

HODGSON RUSS LLP
James C. Thoman, Esq.
Jeffrey C. Stravino, Esq.
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000
*Attorneys for American Axle & Manufacturing, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 09-50026 (MG) |
| MOTORS LIQUIDATION COMPANY, *et al.,* ) | Chapter 11 |
| f/k/a General Motors Corp., *et. al.,* ) | (Jointly Administered) |
| ) | |
| Debtors ) | |
| ) | |

**REPLY BY AMERICAN AXLE & MANUFACTURING, INC.
IN FURTHER SUPPORT OF ITS MOTION TO INCLUDE
THE TONAWANDA FORGE SITE IN THE RACER TRUST
OR, IN THE ALTERNATIVE, FOR AUTHORITY TO
FILE A LATE CLAIM AGAINST THE DEBTORS TO
<u>PARTICIPATE IN DISTRIBUTIONS FROM THE GUC TRUST</u>**

**TABLE OF CONTENTS**

                                                                                 **Page**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .........................................................................................................................1

        A.        RACER did not only include Old GM owned properties. .......................................1

        B.        American Axle has standing to seek modification of the consent decree creating RACER. ................................................................................................2

        C.        American Axle's Claim did not exist in 2009, so it is not a pre-petition claim. .............................................................................................................4

        D.        American Axle's Claim is not barred by 11 U.S.C. § 502(e)(1)(b). ........................8

CONCLUSION ....................................................................................................................10

## TABLE OF AUTHORITIES

                                                                                                       **Page(s)**

**Federal Cases**

*In re Allegheny Int.*,
   126 B.R. 919 (W.D. Pa. 1991)..................................................................................................8

*AM Intern v. Data Card Corp.*,
   146 B.R. 391 (N.D. Ill. 1992)....................................................................................................6

*In re Chateaugay*,
   944 F.2d 997 (2d Cir. 1991).......................................................................................................7

In re *Chemtura Corp.*,
   443 B.R. 601 (Bankr. S.D.N.Y. 2011)..................................................................................9, 10

*In re Chicago, Milwaukee, & Pacific R. Co*,
   974 F.2d 775 (7th Cir. 1992) .....................................................................................................6

*DMJ Associates v. Cappasso*,
   565 B.R. 27 (E.D.N.Y. 2016) ....................................................................................................7

*Dunlop v. Pan American World Airways Inc.*,
   672 F.2d 1044 (2d Cir. 1982)................................................................................................2, 3

*Emerson Enterprises v. Kenneth Crosby N.Y., LLC*,
   781 F. Supp. 166 (W.D.N.Y. 2011) ..........................................................................................2

*Grace v. Bank Leumi Trust Co.*,
   443 F.3d 180 (2d Cir. 2006)......................................................................................................3

*In re Laidlaw USA, Inc.*,
   287 B.R. 603 (Bankr. W.D.N.Y. 2002) ................................................................................8, 9

*In re Lyondell Chemical Co.*,
   442 B.R. 236 (Bankr. S.D.N.Y. 2011)..................................................................................9, 10

*In re Motors Liquidation Co.*,
   576 B.R. 761 (Bankr. S.D.N.Y. 2017)......................................................................................5

*In re National Gypsum Co.*,
   139 B.R. 397 (N.D. Tex. 1992).................................................................................................6

*Phillip Morris USA, Inc. v. Otamedia Ltd.*,
   331 F. Supp. 2d 228 (S.D.N.Y. 2004).......................................................................................3

*Route 21 Associates of Belleville, Inc. v. MHC, Inc.*,
   486 B.R. 75 (S.D.N.Y. 2012)......................................................................................9, 10

*Rufo v. Inmates of Suffolk County Jail*,
   502 U.S. 367 (1992)..............................................................................................................3

*Sylvester Bros v. Burlington Northern*,
   133 B.R. 648 (D. Minn. 1991)..............................................................................................6

**Federal Statutes**

11 U.S.C. § 502(e)(1)(b) ...............................................................................................1, 2, 8, 9, 10

**Rules**

Fed. R. Civ. Pro. 60(b).............................................................................................................2, 3

**Regulations**

HR. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977) ...................................................................8

**PRELIMINARY STATEMENT**

The United States asserts that the RACER Trust ("RACER" or the "Trust") was created only for contaminated properties owned by General Motors Corporation ("Old GM") at the time it filed for bankruptcy on June 1, 2009. However, the United States acknowledges that certain properties not owned by Old GM at the time of the bankruptcy filing were included in RACER. Moreover, the reasons supporting inclusion of the Tonawanda Forge Site ("the Site") in RACER are similar to the reasons former Old GM properties were originally included. As demonstrated below, this Court should allow the Site's inclusion into RACER because American Axle has standing, has made the requisite showing of a change in circumstances to seek modification of the consent decree creating RACER, and will be prejudiced if the Site is not included in RACER.

As for American Axle's request for alternative relief to participate in distributions from the GUC Trust, American Axle's right to payment is not firmly rooted in the contract entered into when Old GM sold the Site to American Axle in 1994, but rather derived from applicable environmental law well-after American Axle's purchase of the Site. As further explained below, American Axle's claim did not arise pre-petition. Finally, contrary to the arguments by the GUC Trust, this claim is not barred by 11 U.S.C. 502(e)(1)(b).

**ARGUMENT**

A.  **RACER did not only include Old GM owned properties.**

When this Court confirmed the establishment of the RACER Trust, it considered a document cited on multiple occasions by the United States in its initial papers. This document is the United States' initial Statement in Support of the "environmental provisions" of Old GM's bankruptcy. Dkt. No. 9311. This Statement was submitted in 2011, and sheds light on the process that led to the establishment of RACER. The Statement shows that properties included

in RACER were not limited to properties owned at the time by Old GM. Specifically, "**certain adjacent real properties, and one recently sold property**" were included in the Trust. Id. at 2 (emphasis added). In discussing why some of these unowned properties were included in the Trust, the United States expressly focused on certain factors. Id. at 12-13. Notably, the United States emphasized that contamination at these sites stemmed from the adjacent GM-owned properties **and Old GM was essentially the sole PRP in connection with the hazardous substances at issue**. Id. at (emphasis added).

Here, the Site fits the relevant criteria listed by the United States in 2011 for the unowned properties included in the Trust. Publicly filed documents indicate that it is undisputed that contamination at the Site is due to Old GM's use of PCBs. Further, Old GM is the *only* viable PRP connected to the PCBs, the hazardous substance at the Site whose manufacture was banned in 1979.[1] As such, inclusion of the Site in RACER would further RACER's purpose of remediating contamination at sites where Old GM is the only viable PRP.

### B. **American Axle has standing to seek modification of the consent decree creating RACER.**

Although American Axle was not originally a party to the consent decree creating RACER, it still has standing to seek the consent decree's modification. Contrary to the position taken by the United States, the Second Circuit has held that, in certain instances, Federal Rule of Civil Procedure 60(b) can confer standing on non-parties like American Axle. *Dunlop v. Pan American World Airways Inc.*, 672 F.2d 1044, 105-52 (2d Cir. 1982) (holding that non-parties had standing to modify judgment where non-parties were sufficiently connected with initial

---

[1] American Axle is an intervening landowner and not liable under CERCLA because there is no evidence that American Axle disposed or released hazardous substances during its ownership and operation from approximately 1994 through 2008. *See Emerson Enterprises v. Kenneth Crosby N.Y., LLC*, 781 F. Supp. 166, 176 (W.D.N.Y. 2011) (dismissing CERCLA cause of action where the record created a reasonable inference that PCB dumping stopped before defendant began operations).

2

lawsuit); *see also Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 188-89 (2d Cir. 2006) (applying standard set forth in *Dunlop* in determining party had standing under Fed. R. Civ. Pro. 60(b)(6)). The key determination under this line of cases is whether the non-party's interests are strongly affected by a legal instrument like a judgment or consent decree. *See Grace*, 443 F.3d at 188 (citing *Dunlop*, 672 F.2d at 1052).

Here, it is undisputed that American Axle's interest is greatly affected by the consent decree creating RACER. If the Site was included in the Trust like other properties not owned by Old GM at the time of the Trust's creation, then American Axle would not be faced with the potential prejudice currently before it. New York State filed a lawsuit in late 2017 against American Axle requesting cleanup costs for alleged oil spills at the Site, and has threatened to file a second lawsuit under CERCLA to recover costs for cleanup activities under Superfund. The prejudice to American Axle greatly affects its interest and establishes the standing required to seek modification of the consent decree.

Having established standing under Rule 60(b), American Axle acknowledges that it must establish a significant change in circumstances to warrant modification of the consent decree. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992). Here, a significant change in circumstances has arisen in that New York State has filed a lawsuit against American Axle under the Oil Spill Act, and threatened to file a second lawsuit under CERCLA because American Axle is essentially the only owner in the Site's history that remains financially viable. As such, given that inclusion of the Site in the Trust will further RACER's purpose, it is clear that "equity countenances modification of . . . [the consent decree]." *See Phillip Morris USA, Inc. v. Otamedia Ltd.,* 331 F. Supp. 2d 228, 244 (S.D.N.Y. 2004) (internal citations and quotations omitted).

3

### C. American Axle's Claim did not exist in 2009, so it is not a pre-petition claim.

Contrary to the GUC Trust's position, American Axle's claim did not exist prior to the bar date of November 30, 2009. As such, if the Site is not included in the RACER Trust, American Axle should be permitted to adjudicate its claim against the GUC Trust.

The GUC Trust asserts that American Axle's claim arose before Old GM filed for bankruptcy on June 1, 2009. In taking this position, the GUC Trust argues that American Axle's claim satisfies the requirements of both the "pre-petition relationship" test and the "fair contemplation test," and therefore existed before the bar date. However, the GUC Trust misstates that the basis for American Axle's claim against Old GM lies in contract, when it is instead under environmental law. The facts demonstrate that American Axle's claim did not accrue until years after the bar date.

First, GUC cannot establish that American Axle's claim satisfies the second prong of the "pre-petition" relationship test, which requires that the pre-petition relationship between the parties be of the type that gives rise to the claim at issue. *See Johns-Manville Corp.*, 552 B.R. 221, 233-34 (Bankr. S.D.N.Y 2016) ("a claim will be deemed pre-petition when it arises out of a relationship recognized in . . . the law of contract or tort").

The GUC Trust asserts that the contractual relationship between American Axle and Old GM is what gives rise to American Axle's claim. However, American Axle's claim does not arise under its contract with Old GM in 1994. Rather, it is based upon American Axle's right to pursue Old GM for Old GM's CERCLA liability.[2] This right did not exist at any time

---

[2] The GUC Trust argues that the 1994 contract "also obligated General Motors to indemnify American Axle for liabilities, damages, penalties, or fines related to various environmental claims, with some indemnities remaining in effect in perpetuity." However, the Contract specifically provided, in relevant part, that: "[u]pon expiration of the ten (10) year period after the date of Closing, the indemnification requirements of this Section 6.12.2 will terminate and AAM [American Axle] will have no right of action against GM for environmental

4

during the parties' dealings, nor when Old GM filed for bankruptcy. In short, the pre-petition "relationship" between the parties has nothing to do with CERCLA liability, and the GUC Trust's argument therefore fails under the second prong of the pre-petition relationship test.

American Axle's claim also does not meet the requirements of the "fair contemplation test." The GUC Trust points out that, under this test, a claim exists where "the occurrence of the contingency or future event that would trigger liability was within the actual or presumed contemplation of the parties **at the time the original relationship between the parties was established**." *In re Motors Liquidation Co.*, 576 B.R. 761, 771 (Bankr. S.D.N.Y. 2017) (emphasis added). However, when the original relationship between the parties was established in 1994, it was impossible for American Axle to pursue Old GM under CERCLA. This is because American Axle was not responsible for any contamination at the Site, the Site had not been listed as a Superfund site, New York State had not sued American Axle to recover for alleged oil spilled, and NYSDEC had not alleged that American Axle was responsible in any way for contamination at the Site. Thus, it was **impossible** in 1994 for either American Axle or Old GM to have contemplated that one day American Axle could pursue Old GM for CERCLA liability relating to the Site's contamination.

The GUC Trust also asserts that by 2003, American Axle knew that liability for clean-up was a vital concern. Again, the GUC Trust misses the point. In 2003, for the same reasons stated above, the relief American Axle now seeks was not available. That is, publicly available documents show that the dispute with NYSDEC in 2003 was over Old GM's payment of a hazardous waste tax, not over failure by a party to remediate contamination at the Site.

---

matters or conditions relating to the Real Property, as defined in Section 1.1.1, the Assets or the business under contract (including this Agreement), Environmental Laws, other laws, or the common law or in equity. . . ."

5

Thus, because it is an impossibility that American Axle's claim was ever in the actual or presumed contemplation of the parties at any point during their relationship, the "fair contemplation test" is not satisfied.

The relevant inquiry here is when a private party's CERCLA claims against a debtor can be deemed to have accrued for bankruptcy purposes. Importantly, many of the cases that discuss this issue focus on whether a creditor has **knowledge** of its CERCLA claim. *See In re Chicago, Milwaukee, & Pacific R. Co*, 974 F.2d 775, 782-86 (7th Cir. 1992) (canvassing case law on the issue and determining that creditors whose claims have arisen "knew they had potential CERCLA claims before the close of bankruptcy proceedings); *Sylvester Bros v. Burlington Northern*, 133 B.R. 648, 653 (D. Minn. 1991) (CERCLA claim had not accrued because creditor did not have "actual knowledge of its potential claim"). Other cases analyzing the issue apply certain factors to determine whether the claim meets the requirements of the "fair contemplation test." *AM Intern v. Data Card Corp.*, 146 B.R. 391, 406-07 (N.D. Ill. 1992) (citing *In re National Gypsum Co.*, 139 B.R. 397, 406 (N.D. Tex. 1992)).

For example, in *AM Intern*, the court discussed relevant factors in determining whether a CERCLA claim was in the "fair contemplation" of parties before bankruptcy proceedings had closed. 146 B.R. at 407. The factors discussed include: (1) knowledge by the parties of a site in which a PRP may be liable; (2) listing of the site on the National Priority List; (3) notification by the [relevant regulating agency] of PRP liability; and (4) commencement of investigation and cleanup activities and incurrence of response costs. *Id.* In applying these factors, the court held that there were at least issues of fact as to whether or not certain parties "fairly contemplated" the CERCLA claim at issue. *Id.* at 409.

6

Here, it is undisputed that American Axle did not have actual knowledge of a CERCLA claim against Old GM when Old GM filed for bankruptcy, at the time of the bar date, or when the RACER Trust was established.  Further, when the relevant factors are applied, it is clear that American Axle's claim was not within the fair contemplation of the parties until well after the bar date in Old GM's bankruptcy.  The Site was not listed on the Superfund list until well after the bar date.  New York State did not file a lawsuit against American Axle until late 2017 for recovery of costs to clean up an alleged oil spill, and thereafter New York State threatened to sue American Axle for recovery of Superfund cleanup costs.  Notably, NYSDEC did not begin clean-up efforts of the alleged oil spill until November 23, 2011, and the Site was not listed as a Superfund Site until May 2013.  These facts favor a finding that American Axle could not fairly contemplate its claim prior to Petition Date.

The case of *DMJ Associates v. Cappasso*, 565 B.R. 27 (E.D.N.Y. 2016) is instructive.  There, the court rejected a debtor's argument that the occurrence and discovery of environmental contamination prior to the filing of the debtor's bankruptcy petition discharged CERCLA claims against it.  *Id.* at 34-35.  The court held that the creditor's claim arose not when it was aware of contamination, but rather when its CERCLA claim became available.  *Id.*  The court also distinguished the facts before it from the facts of *In re Chateaugay*, 944 F.2d 997 (2d Cir. 1991), a case heavily relied on by the GUC Trust.  *Id.* at 35.  Unlike the creditor in *Chateaugay*, who already had incurred remediation costs and sought reimbursement at the time of the bankruptcy's confirmation, the creditor in *GMG Associates* "lacked knowledge as to the existence of any claim whatsoever at the time the debtor filed for bankruptcy." *Id.* (emphasis added).  Accordingly, the court ruled that the creditor's claims were not pre-petition claims.  *Id.*

7

Like the creditor in *DMJ Associates*, who lacked knowledge as to the existence of any claim whatsoever at the time the debtor filed for bankruptcy, American Axle lacked any knowledge of its CERCLA claims at the time Old GM filed for bankruptcy on June 1, 2009. Just as the *DMJ Associates* court ruled that the creditor's claim was not a prepetition claim, this Court should rule that American Axle's claim is not a pre-petition claim.

This Court should consider the implications of accepting the argument put forth by the GUC Trust. Essentially, in accepting the GUC Trust's argument, this Court would be creating an insurmountable barrier for parties in American Axle's position. The GUC Trust is asserting that in 2009, American Axle should have had the foresight to contemplate the possibility that: (1) environmental contamination at a site American Axle **no longer owned or operated had not yet been remediated**; (2) this contamination could lead to NYSDEC pursuing American Axle under CERCLA; (3) American Axle had a potential CERCLA claim against Old GM **if** NYSDEC were in fact to pursue American Axle in the future; (4) that the current owner of the Site (Lewis Bros.) would become insolvent after Old GM's bankruptcy; and (5) all of this information would support a coherent proof of claim that would have survived objections. In short, this Court should not accept the inequitable result proffered by the GUC Trust.

D. **American Axle's Claim is not barred by 11 U.S.C. § 502(e)(1)(b).**

Contrary to the arguments by the GUC Trust, if American Axle's claim is not a pre-petition claim, it is not futile nor is it barred by 11 U.S.C. § 502(e)(1)(b). Section 502(e)(1)(b) was enacted to "prevent . . . competition between a creditor and [its] guarantor for limited proceeds of the estate." HR. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977). Thus, where a creditor's claims against a debtor are not based on common-liability to a third-party, the claims will not be barred by § 502(e)(1)(b). *See In re Allegheny Int.*, 126 B.R. 919, 923-24 (W.D. Pa. 1991) (holding debtor was not co-liable to creditor and EPA and therefore creditor's

8

claim was not barred by § 502(e)(1)(b)). Specifically, in the context of environmental liability, precedent suggests that § 502(e)(1)(b) will not bar a private creditor's claim where the relevant government entity does not file a claim against the debtor. *In re Laidlaw USA, Inc.*, 287 B.R. 603, 605 (Bankr. W.D.N.Y. 2002).

In *Laidlaw*, the State of New York sued a private party under CERCLA. *Id.* at 604. The private party then filed a claim seeking reimbursement from a debtor whose pre-bankruptcy activity gave rise to liability under CERCLA. *Id.* New York, however, never filed a claim against the debtor. *Id.* The court held that by not filing a claim, the State had "released" the debtor of liability to the State, and the private party's claims for contribution under CERCLA stood on their own. *Id.* at 605. Therefore, despite arguments put forth by the debtor, the private party's claims were not barred by § 502(e)(1)(b), as the debtor and creditor were not co-liable to New York. *Id.*

Here, as in *Laidlaw*, New York did not file a proof of claim against Old GM for contamination at the Site.[3] Just as New York had "released" the debtor in *Laidlaw*, New York has released Old GM of its liability with respect to the Site. Therefore, like the private party in *Laidlaw*, whose claims stood alone and were not based on the debtor's co-liability, American Axle's claim against Old GM stands alone and is not based in any co-liability shared with Old GM. Because American Axle's claim stands alone, it is not barred by § 502(e)(1)(b).

Although many of the decisions within this District suggest that claims for contribution under CERCLA are prevented by § 502(e)(1)(b), those cases are distinguishable

---

[3] In fact, NYSDEC filed separate proofs of claim against Old GM for contamination at numerous properties throughout New York. See e.g. MLC-0050830, MLC-0050832. However, NYSDEC did not seek recovery costs for contamination at the Site. This begs the question: if, in 2009, an environmental regulatory agency did not anticipate that the Site would be added to the Superfund List, how can a private party like American Axle be expected to have had this kind of foresight?

9

from the facts presented here. For example, in both *In re Lyondell Chemical Co.*, 442 B.R. 236 (Bankr. S.D.N.Y. 2011) and *Route 21 Associates of Belleville, Inc. v. MHC, Inc.*, 486 B.R. 75 (S.D.N.Y. 2012), the relevant government agencies had filed proofs of claim against the debtors. This was also the case in In re *Chemtura Corp.*, 443 B.R. 601, 606 (Bankr. S.D.N.Y. 2011). In *Lyondell*, it was the EPA who filed a proof of claim against the debtors before the creditor sought contribution under CERCLA. 442 B.R. at 238. Similarly, in *Chemtura*, the EPA and state environmental agencies filed proofs of claim against the debtors. 443 B.R. at 606. Further, in *Route 21 Associates*, the New Jersey Environmental Protection Agency had filed proof of claim, which barred creditors from seeking contribution under CERCLA.

Here, unlike the government agencies in the cases cited above, New York has not filed a claim in Old GM's bankruptcy concerning contamination at the Site. Therefore, while the co-liability element of § 502(e)(1)(b) may have been present in those cases, it is not present here because American Axle's claim against Old GM stands alone. Therefore, there is no risk of double recovery here, and the concern addressed by § 502(e)(1)(b) is therefore not present. For these reasons, this Court should hold that American Axle's claim is not futile, and that § 502(e)(1)(b) does not apply to its claim.

## CONCLUSION

Based upon the foregoing, the law, equity, and good conscience dictate that the Tonawanda Forge Site should be included in the RACER Trust. If the Court does not grant this relief, then it should permit American Axle to file a late claim against the debtors and adjudicate its claim against the GUC Trust.